FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

JAN 1 1 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN RE AMERIQUEST MORTGAGE CO.
MORTGAGE LENDING PRACTICES
LITIGATION

MDL No. 1715

Lead Case No. 05-cv-07097

THIS DOCUMENT RELATES TO: ALL
ACTIONS

(Centralized before the Honorable
Marvin E. Aspen)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION ON BEHALF OF THE PROPOSED RESCISSION
CLASS**

## I.     INTRODUCTION

The Plaintiffs in these transferred actions are homeowners who obtained mortgage

loans from Defendant Ameriquest Mortgage Company ("Ameriquest").[1] The Plaintiffs

allege that Ameriquest engaged in a pattern of deceit and misrepresentation to induce

them to enter into loans characterized by high points and fees or high interest rates. On a

nationwide basis, Ameriquest implemented a bait and switch marketing scheme and other

deceptions, by which Ameriquest misrepresented or failed to fully disclose important

aspects of the loan terms until closing. Moreover, Ameriquest routinely failed to provide

borrowers with accurate information concerning their right to cancel their loans, as

required under the Truth-in-Lending Act, 15 U.S.C §1635 ("TILA").

---

[1] This Motion is brought by Plaintiffs in the three of the transferred MDL actions that contain,
*inter alia*, claims under the Truth in Lending Act. A motion to appoint the undersigned counsel
as interim class counsel has been filed separately.

Three of the transferred actions contain virtually identical class claims grounded in rescission under TILA: *Murphy et al. v. Ameriquest Mortgage Co.*, C.A. No. 1:04-12651-RWZ (D. Mass 2004) (on behalf of a Massachusetts class); *Williams et al. v. Ameriquest Mortgage Co.*, C.A. No. 8:05-01036-EAK-EAJ (M.D. Fla. 2005) (Florida class); and *Williams et al. v. Ameriquest Mortgage Co.*, C.A. No. 05 cv 6189 (S.D. N.Y. 2005) (nationwide class). By a contemporaneous motion, Plaintiffs have sought provisional certification of a class of Ameriquest borrowers with rescission claims under TILA (the "Rescission Class").

By this Motion, Plaintiffs seek preliminary injunctive relief on behalf of the Rescission Class. There are three reasons why injunctive relief is necessary at this early stage in the proceedings.

First, the Supreme Court has held that the three-year extended right to cancel under TILA is a statutory right that is fully extinguished at the end of a three-year period following the date of the loan transaction. *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998). Absent early notice, some Class members will lose the legal rights at issue. Second, Plaintiffs believe that several state Attorneys General are very close to entering into a settlement agreement under which certain Class members may be required to release claims, including federal Truth in Lending rights, in exchange for limited cash compensation. *See* Declaration of Gena Wiltsek, Esq. at ¶ 5. Early notice describing the availability of rescission is necessary so that Class members may evaluate the rights being released if they accept a payment in the Attorney General settlement. Third, certain named Plaintiffs and many members of the Rescission Class are facing actual or potential mortgage foreclosure. *See* Declarations of Shennan Kavanagh at ¶¶4, 14-17, 20-21, 24-27, 30-31. Daniel Blinn at ¶4, and Terry Smiljanich at ¶5. Because rescission *voids*

the mortgage pursuant to 15 U.S.C. § 1635(b), individuals who retain a right to cancel need early

notice of their rescission rights (and a temporary stay of foreclosure pending notice) in order to

understand their potential (and very significant) defenses to foreclosure.

## II.     BACKGROUND

### A.  Nature of the Case

Each of the actions transferred to this Court allege that Ameriquest engaged in

predatory mortgage lending practices. *See generally* Declaration of Gena Wiltsek. For

the purposes of this Motion, Plaintiffs pursue only the TILA-based claim (present in three

of the transferred cases as noted above) that Ameriquest routinely failed to give

borrowers accurate information required by TILA concerning their right to cancel.

Plaintiffs allege Ameriquest routinely gave borrowers rescission notices that were

incomplete, failing to disclose the deadline for cancellation. This deficiency plainly

violates 12 C.F.R. § 226.23(b)(1)(v). Ameriquest also consistently gave refinancing

borrowers the wrong form of Notice of Right to Cancel in violation of 15 U.S.C. §

1635(h) and the applicable Federal Reserve Board regulation, 12 C.F.R. § 226.23(b)(2).

In a Notice of Right to Cancel, either the failure to disclose the last date to cancel or to

provide the correct form of notice is a material violation of TILA. A material violation entitles

the borrower to rescind the transaction for up to three years from the date of the transaction in

every state (except Massachusetts where the identical right extends for four years.[2]) 15 U.S.C. §

1635(h); 12 C.F.R. § 226.23(a)(3), (b)(1). If the transaction is rescinded, the mortgage is *void*

---

[2] M.G.L. c. 140D, § 10(f). *See Belini v. Washington Mut. Bank, FA*, 412 F.3d 17 (1st Cir. 2005)
(describing the interplay between Massachusetts and federal TILA).

and the borrower has no obligation for finance charges. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d). Instead, the borrower must tender any unpaid principal. *Id.*

## B. The Requested Injunctive Relief

At this stage in the proceeding, Plaintiffs seek only limited injunctive relief. Most importantly, they seek an injunction requiring that Ameriquest give notice to the Rescission Class of the potential existence of the extended right to cancel. Plaintiffs request that the proposed notice inform the borrower of the nature and consequences of the extended right to cancel, including that the right may expire three years from the date of the transaction (four years in Massachusetts). In the alternative to granting injunctive relief on this issue, the Court would be well within its discretion to order the Defendant to provide such Notice pursuant to Fed. R. Civ. P. 23(d)(2). "[I]interim litigation costs, including class notice costs, may be shifted to defendant after plaintiff's showing of some success on the merits, whether by preliminary injunction, partial summary judgment, or other procedure." Alba Conte & Herbert Newberg, 3 Newberg on Class Actions § 8.6 at 180 (4th ed.2002). *See Hook v. Baker*, No. C2-02-CV-901, 2004 WL 3113717 (S.D. Ohio, Sept. 1, 2004) (citing Newberg).

Because rescission voids the mortgage, it is a powerful defense to mortgage foreclosure. Plaintiffs thus request that Ameriquest be enjoined from initiating or continuing any mortgage foreclosures on Rescission Class members until 30 days following the date on which notice goes out. This will allow Plaintiffs an opportunity to determine if rescission is a viable foreclosure defense.

Finally, certain named Plaintiffs and identified Class members have already exercised their right to rescind, in response to a pending foreclosure, by sending notice of cancellation. Ameriquest has refused to honor their rescissions. These individuals seek an injunction to

4

prevent Ameriquest from commencing or continuing foreclosure actions on their property pending resolution of their rescission claims. *Lopez v. Delta Funding Corp.*, No. CV 98-7204 CPS, 1998 WL 1537755 (E.D. N.Y., Dec. 23, 1998) (Sifton C.J.) (granting a similar injunction).

Plaintiffs do not seek rescission itself for the Class. Nor do they seek a final determination at this stage in the case that any Class member has a rescindable loan. This is largely a request for a notice of rights with a time-limited accompanying stay of any potential foreclosures, which is well within this Court's discretion to order on this record.

## III.    APPLICABLE LEGAL STANDARD

In considering a motion for a preliminary injunction, the Court must evaluate whether the moving party has shown (1) a reasonable likelihood of success on the merits of the underlying claim; (2) no adequate remedy at law; and (3) irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir.2001). If an evaluation of these points indicates that an injunction is proper, the court then weighs the harms to the parties and takes into account public interest considerations. *Id.*

The standard for showing likelihood of success is not strict. *Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir.1986). "It is enough if the plaintiff's chances are better than negligible." *Id.* It is also well-settled that as the balance of harm to the plaintiff increases, the plaintiff's burden of showing success on the merits inversely decreases. *Id.*

## IV. STATEMENT OF THE CASE

There are two bases for potential rescission on behalf of the Rescission Class: "Incomplete Notice" claims and "Wrong Form of Notice" claims. Each will be described in turn.

### A. *Incomplete Notice Claims*

Plaintiffs have submitted evidence that at least 158 Ameriquest borrowers[3] received a notice that was not completed with the expiration date of the right to rescind.[4] Kavanagh Decl. at ¶¶ 10-42, Exhibits A-N, Blinn Decl. at ¶¶ 9-11, Exhibits A and B; Smiljanich Decl. at ¶¶ 11-16, Exhibit A-F. 12 C.F.R. 226.23(b)(1)(v) requires that a Notice of Right to Cancel state the date on which the right to cancel expires.

### B. *"Wrong Form of Notice" Claims*

Plaintiffs have submitted evidence that at least 43 borrowers[5] received an incorrect form of the Notice of Right to Cancel, based on the TILA and Federal Reserve Board regulations.[6] Kavanagh Decl. at ¶¶ 45-54, Exhibits O-W, Blinn Decl. at ¶¶ 13-14, Exhibits C and D; Smiljanich Decl. at ¶¶ 19-21, Exhibit G-I. On all residential mortgages other than purchase money mortgages, TILA requires creditors to provide borrowers with a notice that explains that

---

[3] Because the identified borrowers were found from a review of documents sent to counsel by putative class members rather than by discovery, it is reasonable to infer that there are many more individuals who received the same incomplete notice.

[4] Named Plaintiffs Lynn Gay, David and Janet Wakefield, William and Daisybel Tolbert, and Duval Naughton are among the borrowers who received incomplete forms.

[5] Again, these were compiled from documents sent to counsel by putative class members rather than from discovery.

[6] Named Plaintiffs Lynn Gay and David and Janet Wakefield are among the borrowers who received the wrong form.

they have the right to rescind the transaction, how to rescind, and the effect of rescinding. 15 U.S.C. § 1635(a); 12 CFR 226.23(b)(1).

In an initial transaction, *i.e.*, a transaction where a borrower is refinancing his or her loan with a new lender, the borrower is entitled to rescind the entire loan, subject to the requirements of 15 USC § 1635. However, when a borrower refinances his or her loan with the same lender (i.e. borrower has a loan with lender A and refinances it with lender A), the right of rescission is limited to the amount, if any, of new credit extended in the refinancing. The debt carried over from the earlier loan is not rescindable. 12 C.F.R. § 226.23(f)(2).

The Board of Governors of the Federal Reserve System ("the FRB") designed two model notices of right to rescind which lenders can provide borrowers: the "H-8" form for "general" usage (for new loans), and the "H-9" form notice specifically designed for "refinancings" with the same lender.[7] The H-8 notice informs the borrower that he or she may rescind "this transaction," meaning the entire loan, while the H-9 states that the borrower may rescind only moneys newly advanced in the "refinancing but amounts presently owed are not affected." A lender can avoid liability for failure to accurately disclose rescission rights by using the "the appropriate form of written notice published and adopted by the Board." 11 U.S.C. § 1635(h); 12 C.F.R. § 226.23(b)(2).

---

[7] The H-9 (refinancing) form specifically provides, in relevant part, that:

You are entering into a new transaction to *increase the amount of credit provided to you*. We acquired a security interest in your home under the original transaction and will retain that security interest in the new transaction. You have a legal right under federal law *to cancel the new transaction* ...

If you cancel the new transaction, your cancellation will apply only to the increase in the amount of credit. It will not affect the amount that you presently owe or the security interest we already have in your home. If you cancel, the *security interest as it applies to the increased amount is also cancelled.* (emphasis added).

### C. *Individuals Who Have Actually Rescinded Need Temporary Relief from Foreclosure.*

Certain named Plaintiffs and putative class members have already rescinded their

mortgages by providing notice of cancellation to Ameriquest. Ameriquest has refused to honor

their requests and is proceeding with foreclosure. These individuals include William and

Daisybel Tolbert, Harriet Holder, Frank and Martha White, and Christopher Bourassa.

Kavanagh Decl. at ¶¶ 12-31.

These individuals need additional injunctive relief to prevent foreclosure while their

rescission claims are being adjudicated here.[8] Absent such relief, these individuals are at risk of

losing their homes despite valid rescissions that have voided their mortgages.

## ARGUMENT

### I. UNDER THE APPLICABLE STATUTORY SCHEME, PLAINTIFFS ARE VIRTUALLY CERTAIN TO SUCCEED ON THE MERITS.

#### A. The Legal Violations at Issue are Beyond Dispute.

Plaintiffs' claim for rescission is statutorily derived. 15 U.S.C. § 1635. Congress

has expressly provided that certain types of violations, including the violations present

here, give rise to the rescission remedy. Specifically, 15 U.S.C. § 1635(h) provides:

> An obligor shall have no rescission rights arising solely from the form of written notice used by the creditor to inform the obligor of the rights of the obligor under this section, *if the creditor provided the obligor the appropriate form of written notice published and adopted by the Board*, or a comparable written notice of the

---

[8] In the case transferred from Massachusetts, *Murphy et al. v. Ameriquest*, Ameriquest disputed the rescission of certain named Plaintiffs, but nevertheless agreed to stay any foreclosure while the merits of the rescission claim are being addressed. This agreement was incorporated in a Court order by Judge Zobel in the District Court for the District of Massachusetts. *See* Kavanagh Decl at ¶56, Exhibit X. A similar order should be entered in favor of Plaintiffs and class members in the MDL proceeding who have actually rescinded.

rights of the obligor, that was properly completed by the creditor, and otherwise complied with all other requirements of this section regarding notice.

(Emphasis added.)

Under the plain language of the statute, the form of notice must be "properly completed by the creditor." 15 U.S.C. § 1635(h). The regulation amplifies the statute. 12 C.F.R. § 226.23(a)(1)(v) makes clear that proper completion of the form includes providing "the date the rescission period expires." *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980) (Unless demonstrably irrational, Federal Reserve Board regulations are dispositive).

Incomplete notice gives rise to an extended right to rescind. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3). *See, e.g., Semar v. Platte Valley Fed. Sav. & Loan Assn.*, 791 F.2d 699, 701 (9th Cir. 1986) (violation to provide a notice that does not include the last date to cancel); *Williamson v. Lafferty*, 698 F.2d 767, 768 (1983) (incomplete notice of right to cancel violates TILA); *Conner v. Moss, Codilis, Stawiarski Morris, Schneider & Prior, LLP*, NO. 03 C 904, 2003 WL 21267093, *2 (N.D.Ill. Jun 02, 2003) (incomplete notice); *Basnight v. Diamond Developers, Inc.*, 146 F.Supp.2d 754, 761 (M.D.N.C. 2001) (incomplete notice creates TILA liability).

Similarly, under the plain language of the statute, the creditor must give the "appropriate form of written notice published and adopted by the Board." The applicable regulation reinforces this point. 12 C.F.R. § 226.23(b)(2). Ameriquest improperly gave various Rescission Class members H-9 forms when they should have received H-8 forms. This also gives rise to an extended right to rescind. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3). *See, e.g., In re Porter*, 961 F.2d 1066, 1077 (3rd Cir. 1992) (providing the

wrong form of notice violates TILA); *In re Botelho*, 195 B.R. 558, 568 (Bankr. D. Mass. 1996) (wrong form of notice); *In re Stanley*, 315 B.R. 602 (Bankr. D. Kans. 2004) (use of form which provides information in a checkbox format applicable to both Form H-8 and H-9 violates TILA when neither box is checked).

## B. A Finding of Liability is  Consistent with TILA's Purpose

### 1. TILA Overview

The federal Truth in Lending Act was enacted in 1968 to regulate the disclosure of the terms of consumer credit transactions. *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 363-69 (1973). By requiring a set of uniform disclosures of credit terms, the Act allows consumers to compare different financing options and their costs. 15 U.S.C. §1601; *Ford Motor Credit v. Millhollin,* 444 U.S. 555, 559 (1980).

Courts have held that TILA must be broadly and liberally construed in favor of protecting consumers. *Bagala v. PNC Bank, Ohio, N.A.,* 163 F.3d 948, 950 (6th Cir. 1998); *Bizier v. Globe Financial Services, Inc.,* 654 F.2d 1 (1st Cir. 1981). To encourage compliance, violations are measured by a strict liability standard: "strict liability in the sense that absolute compliance is required and even technical violations will form the basis for liability." *Shepeard v. Quality Siding & Window Factory, Inc.,* 730 F. Supp. 1295, 1299 (D. Del. 1990). Accordingly, the Seventh Circuit has concluded that even "hypertechnical" violations form the basis for liability under the TILA statutory scheme. *Smith v. The Cash Store Management, Inc.,* 195 F.3d 325, 328 (7th Cir. 1999). *See also Mayo v. Key Financial Services, Inc.,*

424 Mass. 862, 678 N.E.2d 1311, 1313 (1997) ($28 misdisclosure is not *de minimus* for the purposes of TILA and therefore gives rise to the right to rescind).

### 2. The Rescission Remedy Protects Consumers And Provides TILA With A Self-Enforcement Mechanism To Ensure The Act's Viability

TILA subjects violators to claims for statutory damages, actual damages and attorneys' fees for disclosure violations. 15 U.S.C. § 1640(a). In addition, where a non-purchase money security interest is taken in the borrower's home (as in a home equity loan transaction), the borrower has the unqualified right to "rescind," or cancel the loan for three days after the transaction. A creditor's failure to accurately disclose this right to rescind, or to accurately make any of the "material disclosures" or to provide a proper form of notice of right to cancel gives the borrower an extended right to rescind the transaction. 15 U.S.C. § 1635(a), (h).

When a consumer rescinds a loan, the TILA requires the creditor to perform its statutory obligation (i.e., discharge the mortgage and return all monies paid on the loan) before the borrower's duty to return the net proceeds of the loan is engaged. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d). *See generally Belini v. Washington Mutual Bank, F.A,* 412 F.3d 17, 20 (1st Cir. 2005). When a creditor fails to perform its statutory obligations, the consumer can sue to enforce the statute and a damage remedy is available under 15 U.S.C. § 1640(a). *Id.* As a result, "because rescission is such a painless remedy under the statute, placing all burdens on the creditor, it acts as an important enforcement tool, insuring creditor compliance with

TILA disclosure requirements." *Williams v. Homestake Mortgage Co.*, 968 F. 2d

1137, 1140 (11th Cir. 1992). [9]

### C. TILA Provides Special Protections for Individuals Facing Foreclosure That Are Consistent with the Preliminary Injunctive Relief Sought Here

Congress considered the extended right to rescind so important to the

preservation of people's homes, that when the TILA was amended in 1995,[10] special

rules were created to govern rescission claims asserted as a defense to foreclosure.

These special rules provide a federal rescission defense to foreclosure for both Wrong

Form of Notice claims and Incomplete Notice claims. 15 U.S.C. §1635(i)(1)(b).[11] In

accordance with these provisions, the rescission remedy is being raised here by

certain named Plaintiffs and identified Rescission Class members as a response to

Ameriquest's pursuit of foreclosure remedies. Thus, Plaintiffs ask the Court to enjoin

pending foreclosures for these individuals. Similarly, Plaintiffs request that

---

[9] Under the statute, if rescission is available against the originating lender, it is always available as to any subsequent assignee of that lender. 15 U.S.C. § 1641(c). Consequently, it is immaterial for the purposes of this motion if loans originated by Ameriquest within the class period have been assigned by it to other entities.

[10] The Truth in Lending Act Amendments of 1995, Pub. L. No. 014-29 (Sept. 30, 1995).

[11] The relevant portion of §1635(i) is as follows:

(i) (1) Notwithstanding the provisions of section thirty-five, and subject to the time period provided in subsection (f), in addition to any other right of rescission available under this section for a transaction, *after the initiation of any judicial or nonjudicial foreclosure process on the primary dwelling of an obligor securing an extension of credit*, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if:

        * * *

(b) the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the commissioner or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.

15 U.S. §1635(i) (emphasis added).

Ameriquest be enjoined from foreclosing on any member of the Rescission Class until at least 30 days after sending notice of the potential extended right to rescind.

## II.   OTHER PREREQUISITES TO INJUNCTIVE RELIEF ARE EASILY MET.

### A. Plaintiffs Have No Adequate Remedy At Law And Would Be Irreparably Injured Absent Notice Of Their Extended Right To Rescind.

To demonstrate this requisite for preliminary injunctive relief, Plaintiffs "must show that [they] will suffer harm that cannot be prevented or fully rectified by the final judgment after trial." *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001). That standard is easily met here.

Because the Supreme Court has held that the rights at issue expire at the end of three years, absent early notice of the existence of the right, many members of the Rescission Class would irretrievably lose the Congressionally mandated opportunity to rescind. In addition, many Plaintiffs and members of the Rescission Class would lose the opportunity to defend foreclosures and thereby to prevent loss of their home.

Indeed, potential foreclosures in the face of a valid defense constitute irreparable harm. Interference with the enjoyment or possession of land is considered 'irreparable' since land is viewed as a unique commodity for which monetary compensation is an inadequate substitute. *Pelfresne v. Williams Bay*, 865 F.2d 877, 883 (7th Cir. 1989); *Shammas v. Merchants Nat'l Bank*, C.A. No. 90-12217, 1990 WL 354452, *6 (D.Mass. Nov. 9, 1990); *See also United Church of the Medical Center v. Medical Center Com.*, 689 F.2d 693, 701(7th Cir. 1982) ("It is settled beyond the need for citation...that a given piece of property is considered to be unique, and its loss is always an irreparable injury.")

## B. **Balance of Hardships**

Plaintiffs are seeking notice to Members of the Rescission Class that they have an extended right to rescind in order to allow those individuals a fair opportunity to evaluate their options. There is little hardship to Ameriquest in providing notice other than the potential that its customers might actually investigate and consider enforcing their federally-mandated consumer protections. Being held to account by the law is not a cognizable hardship in the context of injunctive relief. *See Marshall v. Lane Processing, Inc.*, 606 F.2d 518, 520 (8th Cir. 1979) (financial costs incident to compliance with the law are not cognizable hardships subject to being balanced).

Although Plaintiffs are also seeking temporary stays of foreclosure, such stays will have minimal impact because they are time-limited[12] and because Ameriquest is a secured lender. The equity in the borrowers' property protects against the possibility that additional claims for interest will accrue. *See Shammas v. Merchants Nat'l Bank, supra*, 1990 WL 354452 at *6 (collateral mitigates lender's potential harm caused by stay of foreclosure). Only in the rare circumstance that Ameriquest is actually undersecured will Ameriquest suffer any injury at all. On the other hand, members of the Class who lose their residences without notice of their potential legal rights will suffer grave and irreparable hardship.

Moreover, in circumstances like these, the Court has discretion to determine that an injunction bond is unnecessary, because there is limited risk of monetary loss to the party enjoined. *Aoude v. Mobil Oil Corp.*, 862 F. 2d 890 (1st Cir. 1988). In rescission-

---

[12] Plaintiffs also believe that there need not be a long delay between issuance of an injunction and resolution of the underlying issues. The rescindability of the loans held by Rescission Class members is an issue that can be resolved by an early motion for summary judgment.

based foreclosure defense cases, courts have waived the bond requirement because of the adequate security provided by the home's equity. *See, e.g., Thomas v. F.F. Financial, Inc.*, No. 88 Civ. 7178, 1989 WL 37658 (S.D.N.Y. April 12, 1989) (preliminary injunction based on rescission defense to foreclosure; court held no bond was required, since rescission voided the mortgage, and equity in home provided adequate security against any damages arising from injunction for creditor-defendant even if it prevailed on merits).

### C. The Public Interest Favors Protections from Predatory Lending

Here, Congress has spoken legislatively as to the public interest, expressing in the strongest terms that the public should be protected from predatory lending and be given an opportunity to evaluate loan terms, particularly in refinance transactions that put a consumers' home at risk. The expression of that interest is obvious not just from the strict liability nature of the statute, but also from 15 U.S.C. § 1635(i), which reinforces the availability of the extended right to rescind in the context of foreclosure. In this case, Plaintiffs will demonstrate that Ameriquest has engaged in overwhelming misconduct designed to line it own pockets at the expense of vulnerable American homeowners. Preservation of the opportunity to rescind by preliminary injunctive relief is consistent with providing Ameriquest's borrowers a fair opportunity to protect themselves from exploitive and predatory practices.

### V.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that a preliminary injunction be entered on behalf of the Rescission Class.

Respectfully submitted,

Dated: January 9, 2006

Kelly M. Dermody
Caryn Becker
LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Gary Klein
Elizabeth Ryan
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA 021111-2810
Telephone: (617) 357-5500
Facsimile: (617) 357-5030

Terry Smiljanich
JAMES, HOYER, NEWCOMBER
 & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL 33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

*Co-Lead Counsel for Plaintiffs Cheryl Williams, et al.*