

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS** F I L E D

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO.<br>MORTGAGE LENDING PRACTICES<br>LITIGATION | JAN 1 1 2006 |
| | MDL No. 1715    MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |
| | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO: ALL<br>ACTIONS | (Centralized before the Honorable<br>Marvin E. Aspen) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PROVISIONAL
CERTIFICATION OF RESCISSION CLASS FOR PURPOSES OF PRELIMINARY
INJUNCTIVE RELIEF**

### I.    INTRODUCTION

The Plaintiffs in these transferred actions allege that Ameriquest Mortgage Company

("Ameriquest") engaged in a pattern of deceit and misrepresentation to induce them to enter into

home mortgage loans characterized by high points and fees or high interest rates. Plaintiffs claim

that Ameriquest implemented standardized bait and switch marketing practices designed to hide

the true cost of its loans to consumers. Additionally, Ameriquest routinely failed to provide

borrowers with Notices of Right to Cancel that comply with express requirements of the Truth in

Lending Act, 15 U.S.C. § 1635 ("TILA"). This failure gives rise to an ongoing statutory Right to

Cancel.

By this motion, Plaintiffs seek provisional certification of a Class of borrowers who

retain their cancellation rights under TILA (the "Rescission Class"). Early provisional

certification is sought because time is of the essence for Class members to exercise their rights.

Rescission rights expire after three years and are not generally subject to tolling. Some

Rescission Class members are already facing potential foreclosure. By separate motion,

Plaintiffs therefore seek a Preliminary Injunction, requiring immediate notice to Class members

regarding the extended right to cancel. Plaintiffs also seek a temporary stay of foreclosures on Class members' homes pending notice and an opportunity to cancel. For the reasons discussed below, the proposed Rescission Class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(2).

## II.    BACKGROUND

### A.    Nature of the Case

Each of the class actions transferred to this Court allege that Ameriquest engaged in various common predatory mortgage lending practices. Ameriquest has been accused of misleading borrowers through uniform methods, to induce them to enter into mortgage loans on predatory terms. *See* Declaration of Gena Wiltsek, Esq. ("Wiltsek Decl."), at ¶ 4. Among other things, Ameriquest has been accused of pressuring its employees, by a system of unreasonable quotas and excessive commissions, to close loans quickly and voraciously. Wiltsek Decl., at ¶ 7, Exhibit B. As a result, Class members are assessed thousands or tens of thousands of dollars in so-called "discount points," and they receive loans with misleading interest rate provisions that are guaranteed to lead to escalating payments over time, large undisclosed prepayment penalties, or sub-prime rates despite excellent credit. Wiltsek Decl. at ¶ 4. Ameriquest's practices have lead to the filing of multiple class actions by consumers, as well as investigations by state Attorneys General. Ameriquest recently announced this it has set aside 325 million dollars to settle regulatory claims pursued by state Attorneys General. Wiltsek Decl. at ¶ 5.

The transferred cases before this Court predate or were filed contemporaneously with the Attorney General investigation. Many of the Plaintiffs in the transferred cases and many of the members of the Class they seek to represent are facing substantial financial hardship in making payments on their Ameriquest loans. Many are at risk of foreclosure and loss of the family home.

In addition, several of the transferred cases include claims, brought on behalf of a class, that Ameriquest routinely failed to give borrowers accurate information concerning their right to cancel their loans, as required by the federal Truth in Lending Act, 15 U.S.C. § 1635(h), Reg. Z, 12 C.F.R. § 226.23(b)(1), (2). *See Murphy, et al. v. Ameriquest Mortgage Company,* C.A. No. 04-cv-12651RWZ (D. Mass.) (filed on behalf of class of Massachusetts borrowers); *Williams, et al. v. Ameriquest Mortgage Company et al.,* C.A. No. 8:05-01036-EAK-EAJ (M.D. Fla. 2005) (filed on behalf of a class of Florida borrowers); *Williams, et al. v. Ameriquest Mortgage Company,* Case No. 05-CV-6189 (S.D. N.Y) (filed on behalf of nationwide class).[1]

The failure to accurately disclose a borrower's right to cancel is material violation of TILA that entitles the borrower to rescind the transaction for up to three years from the date of the transaction. Reg. Z, 12 C.F.R. 226.23(a)(3), (b)(1).[2]

## B. The Purpose of the Instant Motion

The Plaintiffs recognize that these actions have only recently been transferred and that this Court is not yet familiar with the range of issues at the heart of this Multi-District Litigation. They believe, however, that there is an urgent need for immediate provisional class certification on one important and discreet aspect of the case: certification of the class of borrowers who have an extended right to rescind their loans. Plaintiffs seek provisional certification of the Rescission Class pursuant to Fed. R. Civ. P. 23(b)(2) as a prerequisite to their separately filed Motion for Preliminary Injunction on Behalf of Proposed Rescission Class. As described more fully in the

---

[1] This Motion is brought by certain Plaintiffs in these transferred actions who are representative plaintiffs for the purposes of this claim. *See,* Section III, *infra.* A motion to appoint interim class counsel has been submitted separately.

[2] In Massachusetts, based on state law, the same right extends for four years. M.G.L. c. 140D, § 10(f); *Belini v. Washington Mut. Bank, FA,,* 412 F.3d 17, 28, n.8 (1st Cir. 2005). Plaintiffs have proposed a separate subclass to address this difference.

accompanying motion for preliminary injunction, certification of this claim is time sensitive and therefore must be addressed at this relatively early stage of the litigation.

In their Motion for Preliminary Injunction on Behalf of the Proposed Rescission Class, Plaintiffs seek declaratory relief applicable to the Class mandating that each class member receive immediate notice of the extended right to rescind and of the consequences and conditions for exercising that right. Class members would then have the opportunity to evaluate whether the benefits of rescission, i.e., voiding the mortgage and eliminating the liability for all finance charges offset the disadvantages, i.e., the obligation to tender the balance due (generally by refinance or sale). *See* 15 U.S.C. § 1635(b). Plaintiffs also seek an injunction that would prevent foreclosure cases from going forward until Class members receive notice and an opportunity to evaluate whether rescission is an appropriate defense to foreclosure.

## C.     *Status of Discovery on the Issue Before the Court*

At an appropriate stage in this proceeding, Plaintiffs expect to establish that Ameriquest has been dilatory in responding to class-wide discovery requests in the underlying cases where discovery is pending. Among other things, in several of the transferred cases, Ameriquest has objected to providing any discovery as to class issues at all. Nevertheless, by coordinating their efforts across cases, Plaintiffs' counsel have obtained more than sufficient evidence to support the existence and certifiability of the Rescission Class.

## III.     THE PROPOSED CLASS DEFINITIONS

Plaintiffs Gay, Wakefield, Tolbert, LaTonya Williams, and Naughton seek provisional certification[3] on behalf of a nationwide Class (the "Rescission Class" or the "Class") consisting

---

[3] Plaintiffs reserve their right to seek a modification or extension of any certification granted, including to obtain certification pursuant to Rule 23(b)(3).

4

of all Ameriquest borrowers who on or after July 1, 2002, entered into a non-purchase money,

residential mortgage loan transaction with Ameriquest, and:

> 1. received a Notice of Right to Cancel ("Notice") in which the date of expiration of the right to cancel was blank, or

> 2. received an incorrect form of Notice of Right to Cancel because their loan paid off a prior loan with Ameriquest, and their Notice did not accurately describe the effect of canceling such a loan.

> 3. Excluded from the Class are individuals who have previously released their claims against Ameriquest.

Plaintiffs Lynn Gay and Janet and David Wakefield also seek certification of the

following subclass (the "Subclass"), of Ameriquest borrowers who on or after November 3,

2000, entered into a non-purchase money, residential mortgage loan transaction with Ameriquest

in Massachusetts, and

> 1. received a Notice of Right to Cancel in which the date of expiration of the right to cancel was blank, or

> 2. received an incorrect form of Notice of Right to Cancel because their loan paid off a prior loan with Ameriquest, and their Notice did not accurately describe the effect of canceling such a loan.

> 3. Excluded from the Subclass are individuals who have previously released their claims against Ameriquest.

The individuals comprising this Class and Subclass are easily identifiable because they

either received a form Notice which, on its face, was either incomplete or was the wrong form of

Notice for a refinancing loan.

## IV.  APPLICABLE LAW AND REGULATIONS

In any transaction subject to rescission, the creditor is required to give each borrower a

notice of right to cancel, which clearly and conspicuously discloses the right to rescind, how to

exercise the right to rescind, the effects of rescission, *and the date the rescission right expires.* 15

U.S.C. § 1635(a), (h); 12 C.F.R. 26.23(b)(1) (emphasis added). The creditor must use the correct form of notice based on TILA and Federal Reserve Board regulations: either the H-8 Model Form (for initial transactions), or the H-9 Model Form (for refinancings with the same lender). 15 U.S.C. § 1635(h), 12 C.F.R. 26.23(b)(2).

Failure to disclose the deadline for rescission, as well as failure to use the proper form of notice, are material violations of TILA, giving rise to an extended right to rescind. 15 U.S.C. § 1635(h). *See Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699 (9th Cir. 1986) (rescission notice which omitted expiration date violated TILA and entitled borrower to rescind); *In re Porter*, 961 F.2d. 1066, 1077 (3rd Cir. 1992) ("a lender violates TILA by providing the H-8 notice when the borrower's right to rescind is limited by the refinancing exemption").[4]

## V. THE ILLEGAL PRACTICES AFFECTING THE CLASS

### A. *Ameriquest's Use of Incomplete Rescission Notices*

Plaintiffs have also submitted evidence that at least 158 Ameriquest borrowers received a Notice that was not completed with the expiration date of the right to rescind *See* Declarations of Shennan Kavanagh at ¶ 43, Daniel Blinn at ¶¶ 10, 11, and Terry Smiljanich at ¶¶ 11-16, 24-27. For example, when proposed Class Representatives Daisybel and William Tolbert, Plaintiffs in *Williams, et al. v. Ameriquest Mortgage Company et al.*, C.A. No. 8:05-01036-EAK-EAJ (M.D. Fla. 2005)), refinanced their home mortgage loan with Ameriquest on January 7, 2004, they were given an incomplete Notice of Right to Cancel. *See* Kavanagh Decl. at ¶ 22. Ameriquest's form Notice contains a box in the section titled "How to Cancel" which is labeled "Enter Final Date to Cancel." On the Tolberts' Notice no date was entered. *See* Exhibit D to Kavanagh Decl. As

---

[4] There is a fuller discussion of the legal issues underlying Plaintiffs' TILA claims in Plaintiffs accompanying Motion for Preliminary Injunction on Behalf of Proposed Rescission Class.

discussed above, 12 C.F.R. 226.23(b)(1)(v) requires that a notice of right to cancel state the date on which the three day right to cancel expires.

Similarly, Latonya Williams, also a Plaintiff in *Williams, et al. v. Ameriquest Mortgage Company et al.,* Case No. C.A. No. 8:05-01036-EAK-EAJ (M.D. Fla. 2005), was given a form Notice of Right to Cancel at closing in which the final date to cancel was blank. *See* Kavanagh Decl. at ¶ 32. Duval Naughton, a Plaintiff in *Williams, et al. v. Ameriquest Mortgage Company,* Case No. 05-CV-6189 (S.D. N.Y), received an incomplete Notice when he refinanced with Ameriquest in September, 2004. *See* Kavanagh Decl. at ¶ 38.

Because, even absent discovery on this issue, Plaintiffs have submitted evidence that at least 158 Ameriquest borrowers have received incomplete forms, there is an indisputable inference that many others have received incomplete Notices. Even if Ameriquest continues to resist discovery, with appropriate notice, it is easy for Ameriquest borrowers to review and evaluate their loan documents to determine whether they are a member of the Class.

**B.      Ameriquest Uses the Wrong Form of Rescission Notice in its Refinance Transactions**

Plaintiffs have submitted evidence that at least 43[5] individuals received the wrong Notice of Right to Cancel, based on TILA and Federal Reserve Board regulations. *See* Declarations of Shennan Kavanagh at ¶ 55, Daniel Blinn at ¶¶ 13, 14, and Terry Smiljanich at ¶¶ 19 - 21, 24 - 27. For example, proposed Class Representative Lynn Gay, a Plaintiff in *Murphy, et al. v. Ameriquest Mortgage Company,* C.A. No. 04-cv-12651RWZ (D. Mass.), refinanced her Ameriquest mortgage with a new mortgage from Ameriquest on September 2, 2003. Although Ms. Gay was refinancing an Ameriquest loan with Ameriquest, she received a Notice that

---

[5] Four of these borrowers also received incomplete Notices of Right to Cancel, and are also included in the 158 borrowers identified as receiving incomplete Notices.

explained her right to cancel an *initial* transaction, a Model Form H-8. *See* Kavanagh Decl. at ¶ 45.

Proposed Class Representatives Janet and David Wakefield, also Plaintiffs in *Murphy, et al. v. Ameriquest Mortgage Company,* C.A. No. 04-cv-12651RWZ (D. Mass.), refinanced an Ameriquest loan with Ameriquest, and received a Model Form H-8 Notice, the wrong form of Notice for their transaction. *See* Kavanagh Decl. at ¶ 47.

Plaintiffs' counsel has submitted documents from 43 refinance transactions involving the wrong form of Notice. It is an indisputable inference that there are many other Ameriquest borrowers who also received the wrong form of Notice. Certainly, Ameriquest can, from its records, easily identify other borrowers who received the wrong form. Alternatively, with appropriate notice, consumers can review their own loan documents and determine their membership in the Class by evaluating whether they received the proper form.

## VI.    A CLASS ACTION IS APPROPRIATE TO ADJUDICATE A TILA RESCISSION CLAIM FOR DECLARATORY RELIEF.

Plaintiffs, by motion for preliminary injunction, seek declaratory relief applicable to the Class, mandating that each Class member receive immediate notice of the extended right to rescind and of the consequences and conditions for exercising that right. Class members would then have the opportunity to evaluate whether the benefits of rescission, *i.e.*, voiding the mortgage and eliminating the liability for all finance charges, offset the disadvantages, *i.e.*, the obligation to tender the balance due (generally by refinance or sale). *See* 15 U.S.C. § 1635(b). Plaintiffs also seek a temporary stay of foreclosure proceedings pending this notice, and an injunction preventing foreclosure for any Class member who has already rescinded, pending resolution of their rescission claims. The Plaintiffs do not seek to rescind every Class member's loan.

8

Judges in this and other courts have routinely concluded that class certification is appropriate when the proposed class members are seeking declaratory relief related to the rescission right under TILA. *See Hickey v. Great Western Mortgage Corporation,* 158 F.R.D. 603 (N.D. Ill. 1994) (Conlon , J.) (certifying nationwide class of borrowers seeking declaration that class members have continuing right to rescind based on alleged misdisclosure of finance charge); *Latham v. Residential Loan Ctrs. of America, Inc.,* No. 03 C 7094, 2004 WL 1093315 *3 (N.D. Ill. May 6, 2004) (Plunkett, J.) (class claim seeking declaration of right to rescind can be maintained, denying motion to dismiss claim); *Rodrigues v. Members Mortgage Co., Inc.,* 226 F.R.D. 147, 153 (D. Mass. 2005) (certifying class of borrowers who received wrong notice of right to cancel for purposes of declaratory relief); *McIntosh v. Irwin Union Bank & Trust, Co.,* 215 F.R.D. 26, 32-33 (D. Mass.2003) (class action appropriate for rescission claim, especially when plaintiffs seek only declaratory relief); *Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 435-36 (E.D. Pa. 1998) (conditionally certifying class seeking declaration of the right to seek rescission); *McKenna v. First Horizon Home Loan Corporation,* Civil Action No. 04-10370-RCL (D. Mass. November 10, 2005) (Dein, M.J.) (recommending certification of class seeking declaration that "any class member who so desires may rescind their transaction" noting that "infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission") (attached as Appendix A). *See also, Tower v. Moss,* 625 F.2d 1161 (5th Cir. 1980) (class certified and class members allowed to elect rescission or opt out of class); *Mount v. LaSalle Bank Lake View,* 1994 WL 731006 (N.D. Ill., March 31, 1994) (Gottschall, M.J.) (recommending certification of class in action seeking declaration that borrowers had right to rescind under TILA).

These courts distinguish cases where plaintiffs seek to rescind the loans of a class of

borrowers from cases, such as this one, where only a *declaration* of rights is sought:

> However, the instant case is distinguishable from cases in which courts have refused to certify a class which sought rescission as a remedy in that, in this case, plaintiffs do not seek to rescind each contract as a remedy. Rather, plaintiffs only seek a declaration that the notices of rescission in the sales and financing contracts violate TILA, and thus that each member of the class is entitled to seek rescission. Should the Court declare that, indeed, plaintiffs are entitled to seek rescission because of certain infirmities in the TILA disclosure documents, then each class member, individually, and not as a member of the class, would have the option to exercise his or her right to seek rescission. As to any member of the class who triggered the statutory right to rescission, Empire defendants would have, in turn, the opportunity to exercise their rights to cure under TILA.

*Williams v. Empire Funding, supra,* 183 F.R.D. at 435.

Declaratory rescission relief involves no individual considerations: "[t]here is nothing in the language of TILA which precludes the use of the class action mechanism provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission." *Williams,* 183 F.R.D. at 435-436. *See also, McIntosh v. Irwin Bank & Trust Co.,* 215 F.R.D. 26, 33 (D. Mass. 2003), *cited with approval, Latham v. Residential Loan Ctrs. of America, Inc.,* No. 03 C 7094, 2004 WL 1093315 *3 (N.D. Ill. May 6, 2004).

The *Latham* court, like other courts, rejected the argument that because the statute allows the creditor an opportunity to respond to a borrower's rescission demand, rescission is essentially a personal claim that cannot be raised in a class claim for injunctive relief. The court noted that: "[i]f the court found in plaintiff's favor on the TILA [rescission] claim, then each class member, as an individual, would have the option to seek rescission and defendant would have the opportunity to exercise its rights to cure under TILA." *Latham,* at *3, *citing, Williams* 183 F.R.D. at 435. This is exactly what the Plaintiffs seek here. [6]

---

[6] In *Quinn v. Ameriquest Mortgage Company,* No. 03-CV-5059, 2004 WL 316408 (N.D. Ill. Jan. 26, 2004) this court granted a motion to dismiss in a class action seeking rescission under TILA; however, in

## VII. THE PROPOSED CLASS SHOULD BE PROVISIONALLY CERTIFIED

### A. *The Standard for Class Certification*

Class certification is governed by the requirements of Fed. R. Civ. P. 23 ("Rule 23"). *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). In order to obtain class certification, a plaintiff must meet the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation, and at least one of the elements of Rule 23(b). In this case, the Plaintiffs seek certification pursuant to Rule 23(b)(2) which requires a showing that the defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

### B. *The Class Meets the Requirements Of Rule 23 (a)*

#### 1. *Numerosity*

Rule 23(a)(1) requires that "the class [be] so numerous the joinder of all members is impracticable." The issue is not the numerical size of the class, but, as explicitly stated in Rule 23(a)(1), that joinder is impracticable. *Hatisberry v. Lee*, 311 U.S. 32, 41 (1941); *In re Neopharm, Inc. Securities Litigation*, 225 F.R.D. 563, 565 (N.D. Ill. 2004). A plaintiff need not establish the exact number of class members to satisfy numerosity. *Johnson v. Rohr-Ville Motors, Inc.* 189 F.R.D. 363, 368 (N.D. Ill. 1999). Where the membership of the proposed class is at least 40, joinder is impracticable, and the numerosity requirement is generally satisfied. *Neopharm*, 225 F.R.D. at 565 (40 sufficient); *Swanson v. American Consumer Indus.*, 415 F.2d

---

that decision the court did not address the merits of whether a rescission class can be certified because it concluded that the plaintiffs' TILA claims had no merit.

1326, 1333 n. 9 (7th Cir.1969) (40 sufficient); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill.1986) (29 sufficient).

Although at this stage it is impossible to know the precise number of Class members, counsel has already identified at least 197 known Class members, based simply on their review of loan documents sent to them by Ameriquest borrowers across the county. *See*, Sections V.A, V.B, *supra*. While there are undoubtedly many more Class members than those identified by counsel, a class of this size is sufficient to satisfy numerosity. This number of Class members, dispersed nationally, demonstrates that joinder is simply a logistical impossibility.

### 2. *Commonality*

Rule 23(a)(2) requires that the action contain questions of law or fact that are common to the class. The party seeking certification must demonstrate that there is at least one common question of law or fact. *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill.1988). Where a question of law refers to standardized conduct by a defendant toward members of the proposed class, a common nucleus of operative facts is typically presented, and commonality is usually met. *Id., citing, Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984). A "[c]ommon nuclei of fact are typically manifest where, like in the case *sub judice*, the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998).

The legal issue in this litigation is identical for all Class members: whether Ameriquest's form Notice of Right to Cancel violates TILA. More specifically, the common questions include: (1) whether Ameriquest gave borrowers incomplete form Notices; (2) whether Ameriquest failed to use the appropriate form of Notice, or failed to accurately describe the effects of rescinding a loan; (3) whether the defects in Ameriquest's Notice entitle borrowers to

12

rescind their loans; and (4) whether proposed class members are entitled to a declaration that they have the right to rescind their loans. All of these claims are based on the same factual and legal theories because Ameriquest uses standard forms to disclose borrowers' rights, and because each borrower has the same cancellation rights.

### 3. Typicality

The third prerequisite to certification is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class...". Fed. R. Civ. P. 23(a)(3). A claim is typical if it has the "same essential characteristics as the claims of the class at large," it arises from the same event or course of conduct that gives rise to claims of other class members, and is based on the same legal theory. *Hickey,* 158 F.R.D. at 609, *citing, De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983).

The claims of the Plaintiffs and the proposed Class arise from the same course of conduct and the same legal theories. The form Notices of Right to Cancel used in the Plaintiffs' and Class members' transactions were essentially identical. The legal theories on which the Plaintiffs base their claims - that Ameriquest violated the disclosure requirements of TILA - are identical to those of Class members.

### 4. Adequacy Of Representation

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This element is generally characterized as an inquiry into whether the attorneys, together with the named plaintiffs, will act diligently on behalf of the class. *Amchem Products v. Windsor,* 521 U.S. 591, 626, n. 20 (1997). Such diligence involves two factors: (1) the plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the plaintiff must

vigorously pursue the litigation and must not have interests antagonistic to those of the class. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir. 1993).

The Plaintiffs are willing and able to serve as Class Representatives. To date, all have been readily available for initial disclosures, discovery responses, and depositions, and have otherwise kept abreast of developments in the case. Each of the Plaintiffs sought counsel to redress the wrongs they challenge and have retained counsel experienced in class action litigation involving violations of consumer protection laws. *See* Declaration of Kelly Dermody, Esq., and Declarations of Gary Klein and Terry Smiljanich, filed with Plaintiffs' Motion for Appointment of Interim Class Counsel.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named Plaintiffs are coincident with the general interests of the Class. In this case, Plaintiffs and Class members have received the same Notices. Given the significant similarity of claims between the Plaintiffs and Class members, there is no potential for conflicting interests and there are no competing or inconsistent claims.

## C. *The Class Meets All Requirements Of Rule 23(b)(2)*

In addition to meeting the Rule 23(a) requirements, courts will certify a class action if it also satisfies the requirements of one of the subsections of Rule 23(b). *Amchem,* 521 U.S. at 614. Rule 23(b)(2) requires a showing that the defendant "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). *See Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("When a suit seeks to define the relationship between the defendant(s) and the world at large, . . . (b)(2) certification is appropriate.") (internal citation and quotation omitted). Acting on grounds generally applicable

to all class members does not mean that the conduct need be directed at all class members or that it even damaged all class members. *Baby Neal*, 43 F.3d at 58. *See also Griffin v. Burns*, 570 F.2d 1065, 1073 (1st Cir. 1978) ("[N]ot all class members need be aggrieved by or desire to challenge defendant's conduct in order for some to seek relief under (b)(2).") (citations and quotations omitted). Injunctive relief is considered appropriate even where the defendant, subsequent to the filing of the action, changed its policy or practice. *Mack v. County of Suffolk*, 191 F.R.D. 16 (D. Mass. 2000).

Courts have found that this requirement is almost automatically satisfied in actions seeking injunctive relief, where the relief sought will benefit the entire class. *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58-59 (3d cir. 1994), *citing*, 1 H. Newberg & A. Conte, Newberg on Class Actions § 4.11, at 4-39 (1992)).

In this case, the Plaintiffs and Class members all received common form Notices from Ameriquest. Plaintiffs allege that the Notices violated TILA in the same way as to each Class member. The defects in the Notices are obvious from the face of the documents. In addition, a declaration of the existence of a right to rescind would benefit the Class as a whole. Class members will have notice of a right that may allow them to void the mortgage, eliminate liability for finance charges and to defend mortgage foreclosures. Ameriquest has "acted or refused to act on grounds generally applicable to the class." Fed. R. Civ. P. 23(b)(2). *See Williams*, 183 F.R.D. at 436-437 (class claim for declaration of rescission rights satisfied Rule 23(b)(2)).

## VIII.    CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court provisionally certify the proposed Class and Subclass for purposes of injunctive relief.

15

Respectfully submitted,

Dated: January 9, 2006

Kelly M. Dermody
Caryn Becker
LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Terry Smiljanich
JAMES, HOYER, NEWCOMBER
   & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL 33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

Gary Klein
Elizabeth Ryan
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA 021111-2810
Telephone: (617) 357-5500
Facsimile: (617) 357-5030

*Co-Lead Counsel for Plaintiffs Cheryl Williams, et al.*

16

*APPENDIX A*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RALPH G. MCKENNA, | ) | |
| GLENROY A. DEANE, | ) | |
| ILENE WILGOREN-DEANE, | ) | |
| and LAURA A. LILLIE, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| v. | ) | NO. 04-10370-RCL |
| | ) | |
| FIRST HORIZON HOME LOAN ) | | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION ON
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

November 10, 2005

DEIN, U.S.M.J.

### I.  INTRODUCTION

Plaintiffs Ralph G. McKenna, Glenroy A. Deane, Ilene Wilgoren-Deane,

Christopher J. Lillie and Laurie A. Lillie have brought this action against defendant First

Horizon Home Loan Corporation ("First Horizon") for alleged violations of the Federal

Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"), the Massachusetts Consumer

Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D ("CCCDA"), and the

Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A.  The plaintiffs claim

that First Horizon violated these statutes by issuing confusing and legally defective

notices to customers regarding the right to rescind their mortgage loans.  Presently before

the court is the motion of plaintiffs Ralph McKenna ("McKenna") and Laurie Lillie

("Lillie") for class certification ("Motion") (Docket No. 19). By their Motion, McKenna

and Lillie are seeking certification, pursuant to Fed. R. Civ. P. 23(b)(3), of a class

consisting of "(a) all natural persons (b) who obtained non-purchase money loans that

were secured by their Massachusetts residences, (c) on or after April 1, 2003, (d) for

purposes other than the initial construction or acquisition of those residences, (e) where

the person received a [Notice of Right to Cancel] in the form represented by Exhibit D"

to the Amended Complaint.[1] (Motion at 1). The relief sought for this proposed class is a

"declaration that any class member who so desires may rescind their transaction" along

with "[s]tatutory damages for all persons who rescind" and attorneys' fees, expenses and

costs. (Amended Complaint ("Compl.") (Docket No. 2) at prayers for relief following

¶¶ 41-51).

The issue presented by this case, namely whether a class action is appropriate in

an equitable action seeking a declaration of the right to rescind, has divided the courts.

As set forth in detail below, this court finds persuasive those cases in which courts have

allowed such class actions to proceed against the lender, where the plaintiffs otherwise

have satisfied their burden of establishing that class certification is appropriate under Fed.

R. Civ. P. 23. However, this court also finds that the proposed class is much too broad in

that it includes persons for whom the challenged notice admittedly is not inaccurate, as

---

[1] The plaintiffs have limited their class claims to Massachusetts residents and have waived
their request for a broader class which included all borrowers. (See Plaintiffs' Reply
Memorandum ("Pls.' Reply") (Docket No. 29) at 1).

well as those who are not entitled to rescission as a matter of law. Consequently, this

court recommends to the District Judge to whom this case is assigned that the plaintiffs'

Motion for Class Certification be ALLOWED IN PART and DENIED IN PART, and that

the following class be certified:

> All natural persons who obtained non-purchase money loans from
> First Horizon Home Loan Corporation on or after April 1, 2003 and
> who received a Notice of Right to Cancel in the form represented by
> Exhibit D to the Amended Complaint where: (1) the loans were
> secured by the borrower's Massachusetts residence; (2) the loan was
> for purposes other than the initial construction or acquisition of the
> residence; and (3) all or part of the loan proceeds were used to
> refinance a loan made by someone other than First Horizon Home
> Loan Corporation, which prior loan was secured by an interest in the
> Massachusetts residence.
>
> The class shall not include any person whose legal right to rescind
> has been extinguished for any reason, including by written waiver of
> the right to rescind, the sale or transfer of all ownership interests in
> the property that served as security for the loan transaction, or by
> foreclosure, personal bankruptcy, or other loan workout settlement.
>
> The declaratory judgment sought shall be a "declaration that any
> class member who so desires may seek to rescind their transaction."

## II.  **FACTUAL BACKGROUND**

The following facts are relevant to McKenna's and Lillie's motion for class

certification.[2]  On June 25, 2003, plaintiff McKenna received a $244,600 mortgage loan

from First Horizon.  (Compl. ¶ 7).  The loan was secured by McKenna's home in

---

[2] Since Glenroy A. Deane and Ilene Wilgoren-Deane are suing individually, and do not
seek to bring their claims on behalf of a class, the facts relating to their loans will not be
discussed.  (See Compl. ¶ 48).

Braintree, Massachusetts. (Id. ¶ 10, Ex. B). McKenna obtained the loan for personal,

family or household purposes, including to pay most of a prior mortgage loan from

another lender. (Id. ¶¶ 8, 9). One of the documents that McKenna received from First

Horizon in connection with the June 25 transaction was a Notice of Right to Cancel

advising McKenna of his rescission rights under TILA. (Id. ¶ 10, Ex. D).

Similarly, on August 27, 2003, Lillie, along with plaintiff Christopher J. Lillie,

obtained a $112,500 mortgage loan from First Horizon that was secured by the Lillies'

home in Pittsfield, Massachusetts.[3] (Id. ¶ 23, Ex. J). Like McKenna, the Lillies obtained

the loan for personal, family or household purposes, and used most of the loan to pay off

a prior mortgage loan from another lender. (Id. ¶¶ 24, 25). Among the documents that

First Horizon furnished to the Lillies in connection with their loan was a Notice of Right

to Cancel advising the Lillies of their right to rescind the transaction under TILA. (Id.

¶ 26, Ex. L). This form was substantially similar to the one given to McKenna.

The Federal Reserve Board, as part of the regulations implementing TILA, has

prepared model forms providing notice of the right to rescind. See 12 C.F.R. § 226,

Appendix H. There are two proposed forms, one which involves refinancing with a new

lender (Form H-8) and one which involves refinancing with the same creditor who issued

the original loan (Form H-9). Pursuant to the federal regulations implementing TILA and

---

[3] On August 27, 2003, the Lillies also obtained a $9,600 home equity line from First
Horizon. (Compl. ¶ 23). The equity line is not relevant to this case. (See Plaintiffs' Memoran-
dum in Support of Their Motion for Class Certification ("Pls.' Mem.") (Docket No. 20) at 2 n.1).

the Massachusetts regulations implementing the CCCDA, a creditor is not required to use

the Federal Reserve Board's model forms as long as the creditor provides a notice of the

right to rescind that is "substantially similar" to the Board's forms. 12 C.F.R. §

226.23(4)(b)(2); 209 C.M.R. § 32.23(2)(b). First Horizon did not use the Federal

Reserve Board's model form, but instead provided McKenna and the Lillies with its own

form of notice. (Compl. ¶¶ 11-14). This form, Exhibit D to the Amended Complaint,

was created after plaintiffs' counsel complained to First Horizon about an earlier version

of the document. (See Defendant's Opposition to Plaintiffs' Motion for Class

Certification ("Def.'s Opp.") (Docket No. 27) at 3). Plaintiffs contend that this new

version is confusing as well.

## The Challenged Provision

Federal Reserve Board Form H-8 is meant for consumers who are entering into

loan transactions with a different lender than the one that financed a previous loan

secured by the borrower's home. 12 C.F.R. § 226, Appendix H. That form provides in

relevant part as follows:

> Notice of Right to Cancel
>
> Your Right to Cancel
>
> You are entering into a transaction that will result in a (mortgage
> /lien/security interest) (on/in) your home. You have a legal right
> under federal law to cancel this transaction, without cost, within
> three business days from whichever of the following events occurs
> last:
>
> (1)    the date of the transaction ...; or
> (2)    the date you received your Truth in Lending disclosures; or

-5-

(3)    the date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage /lien/security interest) is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage /lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

Federal Reserve Board Form H-9 is intended for consumers who are entering into

loan transactions with the same creditor who financed the borrower's prior mortgage

loan. Id. That form provides in relevant part as follows:

Notice of Right to Cancel

Your Right to Cancel

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last:

(1)    the date of this new transaction...; or
(2)    the date you received your new Truth in Lending disclosures; or
(3)    the date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation

-6-

> of this new transaction, we must take the steps necessary to reflect
> the fact that your home does not secure the increase of credit. We
> must also return any money you have given to us or anyone else in
> connection with this new transaction.
>
> You may keep any money we have given you in this new transaction
> until we have done the things mentioned above, but you must then
> offer to return the money at the address below.
>
> If we do not take possession of the money within 20 calendar days of
> your offer, you may keep it without further obligation.

Plaintiffs challenge First Horizon's notice. The notice applies both to transactions

in which First Horizon is refinancing a prior loan from a different lender as well as to

transactions in which First Horizon is refinancing a prior loan that First Horizon made to

the borrower. (Compl. ¶¶ 11, 14). The First Horizon notice states in relevant part:

> You are entering into a transaction that will result in a mortgage
> /deed of trust on your home. You have a legal right under federal
> law to cancel this transaction, without cost, within three business
> days from whichever of the following events occur last: (1) the date
> of the transaction, which is [date]; or (2) the date you received your
> Truth-in-Lending disclosures; or (3) the date which you received this
> notice of your right to cancel.
>
> If you cancel the transaction, the mortgage/deed of trust is also
> canceled. Within 20 calendar days after we receive your notice, we
> must take the steps necessary to reflect the fact that the mortgage
> /deed of trust on your home has been canceled, and we must return
> to you any money or property you have given to us or to anyone else
> in connection with this transaction.
>
> For new transactions involving us, if you cancel the new transaction,
> your cancellation will apply only to the increase in the amount of
> credit. It will not affect the amount that you presently owe or the
> mortgage lien, or security interest we already have on your home. If
> you cancel[,] the mortgage, lien, or security interest as it applies to
> the increased amount is also canceled. Within 20 calendar days after
> we receive your notice of cancellation of the new transaction, we
> must take the steps necessary to reflect the fact that the mortgage,

> lien, or security interest on your home no longer applies to the
> increase of credit. We must also return any money you have given
> to us or anyone else in connection with this transaction.

(Id., Exs. D and L, emphasis added).

According to the plaintiffs, First Horizon's notice is legally defective under the

disclosure provisions of TILA and the CCCDA[4] because "there is no explanation of what

a 'new transaction involving us' might be. The limited right to rescind, applicable to the

additional amount of the loan, applies where a loan issued by creditor A is refinanced by

creditor A. This distinction is not apparent on First Horizon's form." (Motion ¶ 9).

Thus, according to the plaintiffs, the parties harmed are those who were refinancing loans

originally made by another lender. (Motion ¶ 14; Compl. ¶¶ 38, 51 (common question is

whether First Horizon used the challenged form "in connection with the refinancing of

loans made by someone else" and "[w]hether doing so violates TILA")).

---

[4] TILA § 1635(a) entitled "Disclosure of obligor's right to rescind," provides: "[e]xcept
as otherwise provided in this section, in the case of any consumer credit transaction (including
opening or increasing the credit limit for an open end credit plan) in which a security interest,
including any such interest arising by operation of law, is or will be retained or acquired in any
property which is used as the principal dwelling of the person to whom credit is extended, the
obligor shall have the right to rescind the transaction until midnight of the third business day
following the consummation of the transaction or the delivery of the information and rescission
forms required under this section together with a statement containing the material disclosures
required under this subchapter, whichever is later, by notifying the creditor, in accordance with
regulations of the [Federal Reserve] Board, of his intention to do so. *The creditor shall clearly
and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a
transaction subject to this section the rights of the obligor under this section. The creditor shall
also provide, in accordance with regulations of the Board, appropriate forms for the obligor to
exercise his right to rescind any transaction subject to this section.*" 15 U.S.C. § 1635(a)
(emphasis added). The Massachusetts CCCDA contains nearly identical language. See Mass.
Gen. Laws ch. 140D, § 10(a).

-8-

The named plaintiffs have notified First Horizon of their wish to rescind their loans. (Compl. ¶ 30). As noted above, the relief sought for the proposed class members includes a "declaration that any class member who so desires may rescind the transaction." In connection with a rescission action, First Horizon would be obligated to refund all finance charges paid, including interest and certain closing costs, statutory damages of up to $2,000 per violation, recovery of costs and an award of attorney's fees. 15 U.S.C. §§ 1635, 1640. (Def.'s Opp. (Docket No. 27) at 19 n.17). First Horizon estimates that the named plaintiffs could be entitled to recover between $15,000 and $25,000, plus attorney's fees, if they were to rescind their loans. (Def.'s Opp. at 19; Declaration of Edward Hyne (Docket No. 27) at ¶¶ 4-5). First Horizon also estimates that between April 2003 and February 2004 (when use of the form ceased), it provided loans in the principal amount of more than $1.7 billion involving 8,908 transactions of Massachusetts properties. (Declaration of Jose Iglesias (Docket No. 27) at ¶ 4). Assuming all these borrowers were eligible to and elected to rescind their loans, First Horizon could be liable for approximately $190 million. (Id. at ¶ 10; Def.'s Opp. at 13 and n.13).

Additional facts will be provided below where appropriate.

## III.  ANALYSIS

### A.    Standard of Review

#### 1.    Class Actions

Class certification is governed by Fed. R. Civ. P. 23. "To obtain class certifica-

tion, the plaintiff must establish the four elements of Rule 23(a) and one of several

elements of Rule 23(b)." Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38

(1st Cir. 2003).  Pursuant to Rule 23(a), the plaintiffs must demonstrate:

> (1) the class is so numerous that joinder of all members is imprac-
> ticable, (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of
> the claims or defenses of the class, and (4) the representative parties
> will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  If the plaintiffs are able to meet these prerequisites to class certifi-

cation, they still must satisfy one of the requirements of Rule 23(b).  Here, McKenna and

Lillie seek class action status pursuant to Rule 23(b)(3), which requires "that the ques-

tions of law or fact common to the members of the class predominate over any questions

affecting only individual members, and that a class action is superior to other available

methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P.

23(b)(3).  Matters relevant to the court's analysis of the predominance and superiority

requirements include:

> (A) the interest of members of the class in individually controlling
> the prosecution or defense of separate actions; (B) the extent and
> nature of any litigation concerning the controversy already
> commenced by or against members of the class; (C) the desirability

> or undesirability of concentrating the litigation of the claims in a
> particular forum; (D) the difficulties likely to be encountered in the
> management of a class action.

Id. This list of factors is "nonexhaustive." Amchem Prods., Inc. v. Windsor, 521 U.S.

591, 615, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689 (1997).

Although the district court's decision on certification is discretionary, the "court

must conduct a rigorous analysis of the prerequisites established by Rule 23 before

certifying a class." Smilow, 323 F.3d at 38. In doing so, the court may find it "necessary

to probe behind the pleadings before coming to rest on the certification question." Gen.

Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d

740 (1982). Thus, in evaluating the plaintiffs' motion to allow the case to proceed as a

class action, the court may assess "the allegations in the complaint in light of the entire

record presented . . . on the motion for class certification." Swack v. Credit Suisse First

Boston, 230 F.R.D. 250, 257 (D. Mass. 2005).

### 2.    Law Governing Rescission Action

The plaintiffs are seeking a declaration that class members have the right to

rescind their loans. Initially, the plaintiffs sought this relief under TILA and the CCCDA,

both of which allow for rescission where a borrower "whose loan is secured by his

principal dwelling . . . has been denied the requisite disclosures. . . ." Fidler v. Central

Coop. Bank, 226 B.R. 734, 736 (D. Mass. 1998) (citing 15 U.S.C. § 1635, Mass. Gen.

Laws ch. 140D, § 10). However, at oral argument the parties agreed, correctly, that

because the plaintiffs are seeking certification of a class of Massachusetts borrowers

-11-

whose loan transactions were secured by their Massachusetts residences, the CCCDA and not TILA, governs the proposed class members' rescission claims. See id. (credit transactions within Massachusetts that are subject to the CCCDA are exempted from various provisions of TILA, including § 1635 regarding the right to rescind). Accord Desrosiers v. Transamerica Fin. Corp., 212 B.R. 716, 722 n.6 (D. Mass. 1997) ("a Massachusetts resident can bring a claim for damages under § 1640 of TILA, but cannot rescind a credit transaction under § 1635 of that statute; he or she can pursue that remedy only under CCCDA."); Belini v. Washington Mutual Bank, Nos. 04-2532, 04-2533, 2005 U.S. App. Lexis 11256, at *25-26 (1ˢᵗ Cir., June 15, 2005) (because of the Massachusetts exemption, disclosure requirements and mechanics of rescission governed by state law, not TILA).

The Massachusetts courts have not directly addressed whether class certification is appropriate where the proposed class members are seeking declaratory rescission relief under the CCCDA. "Because TILA was the model on which CCCDA was based, federal court decisions construing TILA are instructive in construing parallel provisions of CCCDA." Fidler, 226 B.R. at 726. See also Desrosiers, 212 B.R. at 722 ("Because the provisions of CCCDA parallel those of TILA, CCCDA should be construed in accordance with federal law" (internal quotations and citation omitted)); Mayo v. Key Fin. Servs., Inc., 424 Mass. 862, 864, 678 N.E.2d 1311, 1313 (1997) (since Mass. Gen. Laws ch. 140D was "closely modeled" on TILA, "Federal court decisions are instructive in construing [the] parallel State statutes and State regulations."). The relevant provisions

of CCCDA § 10 regarding the right to rescind closely parallel the federal counterpart,

TILA § 1635. Compare Mass. Gen. Laws ch. 140D, § 10 with 15 U.S.C. § 1635.

Therefore, it is appropriate for this court, in evaluating whether to certify the proposed

class in this matter, to rely on federal case law addressing the certification issues under

TILA.

### B.    **Availability of Class Action Relief**

First Horizon's threshold argument which must be addressed is that a class action

is not available to the plaintiffs because they are seeking the right to rescind. As First

Horizon argues:

> TILA does not allow certification of a class action for rescission.
> Rescission under TILA is a highly individualized, purely personal
> remedy, which, like common law rescission, is intended to restore
> parties to the *status quo ante*. For that reason, and because TILA
> allows for class actions for damages but not for rescission, the
> weight of authority holds that rescission classes should not be
> certified. Contrary authority, including in this District, is wrongly
> decided and distinguishable.

(Def.'s Opp. (Docket No. 27) at 2). This court disagrees and concludes that the mere fact

that a declaration regarding rescission rights is being sought does not preclude the

certification of a class as a matter of law.

"The availability of the class action mechanism under TILA is a matter of debate."

Williams v. Empire Funding Corp., 183 F.R.D. 428, 435 (E.D. Pa. 1998). The First

Circuit has not addressed the appropriateness of class actions seeking either actual

rescission or a declaratory judgment that the class members are entitled to rescission

-13-

under TILA.  There is a line of federal cases which find that Congress did not intend to

allow class-wide rescission actions under TILA.  See, e.g., James v. Home Constr. Co. of

Mobile, Inc., 621 F.2d 727, 730 (5th Cir. 1980); Murry v. America's Mortgage Banc, Inc.,

Nos. 03 C 5811, 03 C 6186, 2005 WL 1323364 *10-11 (N.D. Ill. May 5, 2005); Gibbons

v. Interbank Funding Group, 208 F.R.D. 278, 285-86 (N.D. Cal. 2002); Jefferson v. Sec.

Pac. Fin. Servs., 161 F.R.D. 63, 68-69 (N.D. Ill. 1995).  These decisions are based

primarily on the fact that § 1635(b), which governs rescission claims, does not expressly

provide for class actions while § 1640, which governs damages claims, was amended in

1970 to expressly allow for class actions and to cap damage recovery.  See Jefferson, 161

F.R.D. at 68.  While § 1635 was subsequently amended, it did not add a reference to

class actions.  Id.  Furthermore, these courts find that rescission is an individual remedy

which is designed to restore the status quo ante.  According to these courts, "[t]his

purpose "would be undone by allowing a class of plaintiffs to rescind their agreements

against an individual defendant when the cost of recovery would exceed the harm done

by the technical violation."  Id. at 69.  See also James, 621 F.2d at 730-31.  This would,

in effect, "turn Section 1635(b) into a penal provision."  Id.  See also Gibbons, 208

F.R.D. at 286.  Finally, courts denying rescission class certification under TILA have

questioned whether the proposed class members have standing if they have not previously

demanded rescission.  See Gibbons, 208 F.R.D. at 285 ("Without any rescission requests,

nor subsequent denials by defendants, it is not at all clear that a justiciable controversy

exists between the class and defendants."); Jefferson, 161 F.R.D. at 69 (lack of

-14-

allegations "that the purported class members have gone through the steps of rescission with [the creditor or] have requested or even desire rescission . . . indicates that the purported class members lack standing.").

These arguments have been rejected by a second line of cases, including two recent cases in this district, where the courts have certified class actions or determined that class status is appropriate in cases in which the plaintiffs were seeking a declaration of the right to rescind under TILA. See, e.g., Rodrigues v. Members Mortgage Co., Inc., 226 F.R.D. 147, 153 (D. Mass. 2005); Latham v. Residential Loan Ctrs. of America, Inc., No. 03 C 7094, 2004 WL 1093315 *3 (N.D. Ill. May 6, 2004); McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 33 (D. Mass. 2003); Williams v. Empire Funding Corp., 183 F.R.D. 428, 435-36 (E.D. Pa. 1998). This court finds this second line of cases persuasive.

As an initial matter, "there is nothing in the language of TILA which precludes the use of the class action mechanism provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission." Rodrigues, 226 F.R.D. at 153 (quoting Williams, 183 F.R.D. at 436). This court does not find it significant that Congress expressly referred to class actions in connection with setting a damages cap, but did not make a comparable amendment to the rescission statute. It is just as likely that Congress did not intend to in any way limit rescission claims which are designed to put

-15-

the consumer back in the same position as before the inaccurate information was
provided.

Similarly, this court is not persuaded that by allowing class actions seeking a
declaration that consumers have the right to seek rescission improperly converts § 1635
into a penal provision. First of all, as Judge Young held in McIntosh, "[t]o achieve its
remedial purpose, TILA *is* penal in nature and builds in incentives for litigation to protect
classes of plaintiffs who, individually injured, would never sue to recover modest
damages." McIntosh, 215 F.R.D. at 33 (emphasis in original). Moreover, in view of the
fact that the class has been limited to only those who were potentially injured, and the
fact that the class plaintiffs are only seeking declaratory relief, this court does not find the
defendant's fear of a catastrophic penalty to be persuasive. See id. As the Williams court
held:

> Plaintiffs only seek a declaration that the notices of rescission ...
> violate TILA, and thus that each member of the class is entitled to
> seek rescission. Should the Court declare that, indeed, plaintiffs are
> entitled to seek rescission because of certain infirmities in the TILA
> disclosure documents, then each class member, individually, and not
> as a member of the class, would have the option to exercise his or
> her right to seek rescission. As to any member of the class who
> triggered the statutory right to rescission, the defendants would have,
> in turn, the opportunity to exercise their rights to cure under TILA.

Williams, 183 F.R.D. at 435-36. Accord McIntosh, 215 F.R.D. at 33; Latham, 2004 WL
1093315, at *3; Rodrigues, 226 F.R.D. at 136. But see Gibbons, 208 F.R.D. at 285
(rejecting distinction between class action suit seeking rescission and one seeking
declaration of right to rescind).

-16-

Finally, this court does not agree that the potential class members lack standing to maintain an action if they did not previously request rescission. The Supreme Court has long recognized that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . ." Havens Realty Corp. v. Coleman, 455 U.S. 363, 373, 102 S. Ct. 1114, 1121, 71 L. Ed. 2d 214 (1982) (punctuation in original) (quotations and citations omitted). Section 10 of the CCCDA establishes an enforceable right to the clear and conspicuous disclosure of the right to rescind. See White v. Arlen Realty & Dev. Corp., 540 F.2d 645, 649 (4th Cir. 1975) (Congress, in the disclosure requirements of TILA, "gave the debtor a right to specific information and therefore defined 'injury in fact' as the failure to disclose such information."). Therefore, the proposed class members who received the allegedly unlawful notice have standing to sue for improper disclosure under the CCCDA.[5] In any event, "the filing of the complaint constitutes statutory notice of rescission" pursuant to TILA and the CCCDA. Taylor v. Domestic Remodeling, Inc., 97 F.3d 96, 100 (5th Cir. 1996); McIntosh, 215 F.R.D. at 32, and cases cited.

---

[5] The case of Highsmith v. Chrysler Credit Corp., 18 F.3d 434 (7th Cir. 1994), on which First Horizon relies to argue against standing, in fact supports standing in this case. In Highsmith, the court determined that under the Consumer Leasing Act, the failure to disclose any portion of the formula that a lessor uses to calculate an early termination charge will give rise to a technical violation of the statute's disclosure provision. 18 F.3d at 439. Consequently, by claiming that the lessor did not disclose an unearned finance charge reduction as part of its formula, the plaintiff was able to state a claim for relief. Id.

-17-

For these reasons, a class action seeking a declaration of rights to rescind is not precluded as a matter of law. Consequently, this analysis will now turn to the requirements of Rule 23.

## C.    Application of Rule 23 to the Record

### 1.    Rule 23 (b)(3)

First Horizon's principal arguments against class certification relate to the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3), so these elements will be addressed first.

#### Predominance

The plaintiffs are challenging the language of a form document, and assert that First Horizon violated the CCCDA because its Notice of Right to Cancel contained confusing language regarding the scope of the plaintiffs' rescission rights. The language appears on the face of the Notice. The fundamental issues in this case include whether First Horizon had a standard practice of using the challenged form to refinance loans made by another lender and whether the description in the form "clearly and conspicuously" discloses the borrower's rescission rights, as required by the CCCDA. Thus, "[t]he common factual basis is found in the terms of the [Notice], which are identical for all class members." Smilow, 323 F.3d at 39. Similarly, the common questions of law include whether the Notice was misleading and violates the CCCDA. Under such circumstances, common issues predominate and the plaintiffs have satisfied

-18-

this prong of Rule 23(b)(3).  See also Rodrigues, 226 F.R.D. at 153 (plaintiffs' claim that

notice of right to cancel misstated the scope of the plaintiffs' rescission rights satisfied

the predominance requirement of Rule 23).

First Horizon argues that the predominance requirement cannot be met because the

determination as to whether the Notice of Right to Cancel was clear and conspicuous

under the CCCDA necessitates "close scrutiny of the totality of the circumstances in each

transaction" to determine whether the individual class members were in fact confused by

the Notice. (Def.'s Mem. (Docket No. 27) at 15-16).  First Horizon also argues that its

defenses to individual claims, such as defenses that certain borrowers have paid off their

loans, have waived their rescission rights, or have sold or transferred all ownership

interests in the property that serves as security for the transaction, will require an

evaluation of the particular circumstances of each loan transaction.  (See id. at 16-17).

It is not clear whether the events surrounding the circumstances of each closing

where the Notice was signed will be relevant to the instant litigation.  It has been held

that "[a]n objective standard is used to determine violations of the TILA, based on the

representations contained in the relevant disclosure documents; it is unnecessary to

inquire as to the subjective deception or misunderstanding of particular consumers."

Zamarippa v. Cy's Car Sales, Inc., 674 F.2d 877, 879 (11th Cir. 1982).  That is because

the court "cannot allow" lenders "to evade the requirements of the TILA . . . on the

fortuity that some consumers are better able to evaluate the information than others."  Id.

(fact that consumers did not read, speak or understand English did not protect seller who

-19-

provided inadequate disclosure statements). See also Smilow, 323 F.3d at 39 n.7 (defendants "wisely withdrew the argument that oral representations made by sales representatives to potential customers would vary the contract terms by customer and so defeat commonality" where contract contained integration clause).[6]  However, assuming, arguendo, that the specific circumstances are relevant, class-wide treatment is still warranted.  There is, at minimum, a common legal question which would warrant class certification — namely, "whether the subjective understanding of the borrowers with respect to their rights negates a prima facie TILA violation." Rodrigues, 226 F.R.D. at 152.

The plaintiffs have alleged, and asserted as a common question of fact, that First Horizon had a standard closing practice using the challenged form in connection with the refinancing of mortgage loans which had been made by a different lender. (Compl. ¶¶ 38, 51).  If First Horizon demonstrates that this was not its practice, and that the individual circumstances are relevant, it may then move to decertify the class. Rodrigues, 226 F.R.D. at 152. But see Smilow, 323 F.3d at 39-40 (fact that, as defendant contends, it

---

[6]  At oral argument, First Horizon relied on the case of Mechanics Nat'l Bank of Worcester v. Killeen, 377 Mass. 100, 384 N.E.2d 1231 (1979) to support its argument that the borrower's subjective understanding of the creditor's notice is relevant to determine whether the notice violated the CCCDA.  In Mechanics, the court found that the absence of a bank's name from one form, as required by law, was "insignificant and unintended" and did not allow for penalties based on a failure to disclose information since the information had otherwise been disclosed.  384 N.E.2d at 1238.  The case does not address the situation where the consumer's fundamental right to rescind was confusing.  Nor does it specifically address whether the legality of a rescission notice under the CCCDA must be evaluated using an objective or a subjective standard.

may be able to prove that individual plaintiffs waived their claims does not defeat class

certification — "Courts traditionally have been reluctant to deny class action status under

Rule 23(b)(3) simply because affirmative defenses may be available against individual

members"). The standard at that time would still be whether common issues predomi-

nate. Rule 23(b)(3) does not require that "all issues be common to the class." Smilow,

323 F.3d at 39.

## Superiority

This court also finds that a class action is a superior means of adjudicating the

controversy. One of the purposes of Rule 23 is to "achieve economies of time, effort, and

expense, and promote . . . uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results." Amchem,

521 U.S. at 615, 117 S. Ct. at 2246 (quotations and citation omitted). In light of the

common issues in this case, class certification will further these goals. Additionally,

class certification will advance both the fundamental policy of Rule 23(b)(3) and the

remedial purpose of the CCCDA "to protect classes of plaintiffs who, individually

injured, would never sue to recover modest damages." McIntosh, 215 F.R.D. at 33. See

also Smilow, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the

claims of consumers and other groups of people whose individual claims would be too

small to warrant litigation."). Although, as First Horizon contends, some borrowers may

be entitled to as much as $25,000 or more if they are allowed to rescind their

transactions, this court is not convinced that most consumers, when faced with the cost of

-21-

retaining counsel, the effort required to pursue litigation, and the risk of failing to achieve a desirable outcome, would consider it worthwhile to pursue these claims individually.[7]

The court's conclusion regarding superiority is not altered by First Horizon's argument that the class would be unmanageable due to the effort that would be required to identify class members and the complexity of administering the rescission remedy, which "frequently requires court supervision and modification of the rescission procedures in order to protect lenders' interests and to do equity." (Def.'s Opp. at 17-18). Since the parties filed their briefs, the plaintiffs have limited the proposed class to Massachusetts residents, which has reduced substantially the number of loans at issue. Additionally, the plaintiffs have volunteered to review First Horizon's files and identify class members if the process is too burdensome for the defendant. Furthermore, notwithstanding First Horizon's conclusory argument to the contrary, there is no evidence that the rescission remedy would be so unmanageable that it should justify the denial of class certification. "The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)." Smilow, 323 F.3d at 40. Any potential difficulties with the administration of a remedy are outweighed by the efficiencies of litigating the plaintiffs' claims as a class action.

---

[7] The court is aware of plaintiffs' counsel's letter advertising a client's $50,000 savings from the rescission of his mortgage loan, as well as the three individual rescission demands from Rhode Island consumers that followed. See First Horizon's Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Docket No. 32), Exs. A & B. However, this information does not indicate whether the potential plaintiffs would be willing to proceed on an individual basis.

-22-

Furthermore, although First Horizon could face significant liability if the proposed class members are able to establish a right to rescind, that possibility must be balanced against the policy considerations underlying Rule 23(b)(3) and the CCCDA. If First Horizon's notice is, in fact, defective, a class action is the most efficient means of enabling consumers to vindicate their rights under the CCCDA. The customers, in fact, were supposed to have the right to rescind under the statute — it is not a right being created by this litigation. Whether the individual plaintiffs still actually seek to rescind remains an open question. Accordingly, this court concludes that a class action is a superior means of adjudicating the present controversy.

### 2.    Requirements of Rule 23(a)

#### Numerosity

This court also concludes that the plaintiffs have met the four prerequisites of Fed. R. Civ. P. 23(a). The first of those requirements "is satisfied when the class is 'so numerous that joinder of all members is impracticable.'" Swack, 230 F.R.D. at 258 (quoting Fed. R. Civ. P. 23(a)(1)). "Other courts in this district have noted that a 40 person class is 'generally found to establish numerosity.'" McLaughlin v. Liberty Mut. Ins. Co., 224 F.R.D. 304, 307 (D. Mass. 2004) (quoting In re Relafen Antitrust Litig., 218 F.R.D. 337, 342 (D. Mass. 2003)). First Horizon does not dispute, and the record supports the plaintiffs' argument that the size of the proposed class is sufficient. Although the plaintiffs have not specified the number of class members, "district courts may draw reasonable inferences from the facts presented to find the requisite

-23-

numerosity." McCuin v. Sec'y of Health & Human Servs., 817 F.2d 161, 167 (1ˢᵗ Cir.
1987). In view of the large number of loan transactions and the fact that the plaintiffs are
challenging the use of a form, it may be inferred that the proposed class includes well
over forty individuals and is sufficiently numerous to satisfy Rule 23(a).

### Commonality

The second, "commonality" prong of "Rule 23(a)(2) requires that questions of law
or fact be shared by the prospective class, but does not require that every question be
common." McLaughlin, 224 F.R.D. at 309. In fact, "[b]ecause '[a] *single* common legal
or factual issue can suffice' to satisfy the 23(a)(2) requirement, 'the commonality
requirement ordinarily is easily met.'" Swack, 230 F.R.D. at 259 (quoting Payne v.
Goodyear Tire & Rubber Co., 216 F.R.D. 21, 25 (D. Mass. 2003)). "Commonality and
predominance are closely related" and, as a general statement, "a finding of one will
satisfy the other." Jefferson, 161 F.R.D. at 68 n.13. "Similarly, commonality and
typicality are closely related and a finding of one generally compels a finding of the
other." Id. Here, for many of the reasons described above, the prospective class shares
common questions of law or fact. For example, one of the significant factual questions
raised by the plaintiffs' claims is whether First Horizon had a practice of issuing to its
customers the form Notice of Right to Cancel, exemplified by Exhibit D to the Amended
Complaint, in connection with the refinancing of loans made by another lender. This
question is common to the proposed class members. Common legal questions include
whether the Notice of Right to Cancel that First Horizon issued violates the CCCDA and

-24-

if so, whether that constitutes a violation of Mass. Gen. Laws ch. 93A. These questions establish the existence of commonality required by Rule 23.

**Typicality**

The third prong of Rule 23(a) requires that the lead plaintiffs' claims or defenses are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class." McLaughlin, 224 F.R.D. at 310 (quotations and citations omitted). The requirement is satisfied where the plaintiffs "show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members." Id. (quotations and citation omitted). See also Rodrigues, 226 F.R.D. at 151. In this case, McKenna's and Lillie's claims arise from First Horizon's and its agents' use of the challenged forms at loan closings. This is the same course of conduct from which the claims of the absent Massachusetts class members arise. Accordingly, this court finds that McKenna's and Lillie's claims are typical of the claims of the class.

**Adequacy of Representation**

The fourth and final prong of Rule 23(a) requires that the named plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This "adequacy" requirement focuses on "the named plaintiffs' ability to prosecute the action vigorously through qualified counsel and their lack of conflicting interest with unnamed class members." McLaughlin, 224 F.R.D. at 310 (quotations and citations omitted). See

-25-

also Swack, 230 F.R.D. at 265. Plaintiffs' counsel in this matter have significant

experience in consumer class representation, see Pls.' Mem., Appendix C, and the court

is satisfied that they are qualified to vigorously prosecute this case. Additionally, the

plaintiffs are seeking a declaration of the right to rescind, which would allow both the

named plaintiffs and the absent class members to cancel their loan transactions with the

defendant only if they choose to do so. Therefore, the plaintiffs have no conflict of

interest with the unnamed class members. See Rodrigues, 226 F.R.D. at 151 ("The fact

that [plaintiff], if she prevails, may rescind her loan while other plaintiffs may not creates

no conflict because all she is seeking in this action is a declaration of the right to

rescind.").

## IV.  CONCLUSION

This court finds that the plaintiffs have satisfied all of the prerequisites to class

certification set forth in Fed. R. Civ. P. 23(a), and that they also have met the require-

ments of Fed. R. Civ. P. 23(b)(3). However, the class sought to be certified is overly-

broad. Therefore, this court recommends to the district judge to whom this case is

assigned that the plaintiffs' Motion for Class Certification (Docket No. 19) be

ALLOWED IN PART and DENIED IN PART,[8] and that the following class be certified:

---

[8] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommenda-tion. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly

All natural persons who obtained non-purchase money loans from First Horizon Home Loan Corporation on or after April 1, 2003 and who received a Notice of Right to Cancel in the form represented by Exhibit D to the Amended Complaint where: (1) the loans were secured by the borrower's Massachusetts residence; (2) the loan was for purposes other than the initial construction or acquisition of the residence; and (3) all or part of the loan proceeds were used to refinance a loan made by someone other than First Horizon Home Loan Corporation, which prior loan was secured by an interest in the Massachusetts residence.

The class shall not include any person whose legal right to rescind has been extinguished for any reason, including by written waiver of the right to rescind, the sale or transfer of all ownership interests in the property that served as security for the loan transaction, or by foreclosure, personal bankruptcy, or other loan workout settlement.

The declaratory judgment sought shall be a "declaration that any class member who so desires may seek to rescind their transaction."


        / s / Judith Gail Dein
        Judith Gail Dein
        United States Magistrate Judge


---

indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).