# Exhibit B



**Joint Release from ATTORNEY GENERAL ROB MCKENNA and DEPARTMENT OF FINANCIAL INSTITUTIONS**

FOR IMMEDIATE RELEASE
January 23, 2006

# Washington Homeowners to Receive Millions in Ameriquest Settlement

- Final Settlement Agreement
- Ameriquest Settlement Facts

A national media briefing conference was held Jan. 23 in Los Angeles. Attorney General Rob McKenna, Assistant Attorney General Dave Huey, and Chuck Cross, director of Consumer Services for the Department of Financial Institutions, participated with representatives of six other states. Click here to listen.

OLYMPIA – Attorney General Rob McKenna and the state Department of Financial Institutions (DFI) today announced a $325 million nationwide settlement with Ameriquest Mortgage Company. The agreement resolves allegations of widespread fraud by the company as part of a high-pressure scheme to sell mortgages that trapped consumers into debt and put them at risk of losing their homes.

Today's announcement is the result of a two-year investigation and one year of settlement negotiations. Washington was one of six states that led negotiations. As a result, thousands of Washington homeowners will share approximately $6.5 million in restitution. The Attorney General's Office and DFI will also receive $2.5 million for legal and investigative costs.

"Ameriquest's technique of misleading consumers preyed on some our most vulnerable families – those in the sub-prime lending market," said Scott Jarvis, director of the Department of Financial Institutions. "This investigation puts the mortgage industry on alert that unfair and deceptive practices will not be tolerated in Washington."

Ameriquest made nearly 13,500 loans totaling $2.7 billion to Washington residents between 1999 and 2005, the period covered by the settlement. DFI received more than 100 complaints about the company's business practices.

The multi-state investigation turned up what appeared to be a battery of predatory lending practices by Ameriquest that played out like a Hollywood movie. Ameriquest managers allegedly encouraged loan officers to watch the movie "Boiler Room" in order to hone high-pressure sales tactics.

The states alleged that Ameriquest deceived consumers, inflated home appraisals, and fabricated employment and income information in order to make the largest possible profit. Consumers were tied into loan balances

514084.1

significantly higher than the true value of their homes, which ultimately blocked them from refinancing with other lenders or selling without taking a substantial loss.

McKenna, Assistant Attorney General David Huey and Chuck Cross, DFI's director of Consumer Services, flew to Los Angeles, Calif., to announce the settlement on Monday. They were joined by attorneys general and financial investigators from six of the 48 other states that participated in the settlement.

McKenna said the settlement not only is a victory for consumers, but for the entire free-market economic system.

"Ameriquest can be commended for coming to the table to negotiate a pact that should transform the company into a model for other lenders," McKenna said. "Ameriquest's prominence among mortgage providers makes this a particularly important case for establishing tough, new standards for the home financing industry. Financial companies and consumer advocates should seize the opportunity to educate homebuyers about ethical lending practices."

The $325 million payment ranks as the second-largest state or federal consumer protection settlement in history.

"The Attorney General's Office and the Department of Financial Institutions have a history of working together to enforce Washington's consumer protection laws," Governor Chris Gregoire said. "Just two years ago, Washington led the nation in similar actions against Household Financial. Now, we firmly repeat our message to the industry – when companies take advantage of Washingtonians, we take action."

In the agreement, Ameriquest denied all allegations raised by the states but agreed to:

- Pay $295 million in restitution to consumers in participating states who obtained mortgages between Jan. 1, 1999, and Dec. 31, 2005. An additional $30 million will be paid to the states for legal costs, consumer education and programs to enforce consumer protection laws.
- Provide full disclosure regarding interest rates, discount points and penalties; and provide the same interest rates and discount points for similarly situated consumers.
- Revise its compensation system to eliminate employee incentives for prepayment penalties or other fees. Also limit prepayment penalty periods on certain variable rate mortgages.
- Not encourage borrowers to falsify income sources or levels.
- Not solicit customers with refinancing offers within 24 months of the start of their original loan.
- Use independent loan closers and appraisers, and initiate a review process to ensure appraisals are accurate.
- Adopt policies to protect whistle-blowers and facilitate reporting of improper conduct.
- Pay for an independent monitor who will oversee compliance with the settlement terms and submit compliance reports to attorneys general during the next five years.

514084.1

Ameriquest has headquarters in Orange, Calif., and is the nation's largest privately held retail mortgage lender. The company has more than 270 branches, including 26 in Washington. Ameriquest-operated businesses in Washington include Ameriquest Mortgage Company, Town & Country Corporation, and AMC Mortgage Service (also known as Bedford Home Loans).

Consumers do not need to take any action at this point to pursue recoveries. Those eligible for restitution will be notified by letter within the next year as specific recovery terms and plans are determined. Consumers are asked to be patient; administration of a settlement of this size is a complex and time-consuming task.

Additional information about the Ameriquest settlement is available online at www.atg.wa.gov and www.dfi.wa.gov.

Consumers are encouraged to order a free copy of DFI's Guide to Home Loans, a CD-ROM explaining the home loan process and providing tips to avoid predatory lending. The guide is available online at http://dfi.wa.gov/consumers/home_loans.htm or by calling 1-877-746-4334 to request a copy.

– 30 –

**Media Contacts:** Scott Kinney, Director of Communications, DFI, 360-902-0517
Kristin Alexander, Public Information Officer, Attorney General's Office, (206) 464-6432.

Join **Attorney General Rob McKenna's Listserv** for the latest news from the AG's office or visit our Web site at **www.atg.wa.gov**

Index

**Ameriquest Settlement Facts**

- Ameriquest Mortgage Company is the largest privately held retail mortgage lender in America and the largest subprime lender by volume. The company is headquartered in Orange County, California and has over 270 branches in 46 states.

- Ameriquest has 26 locations licensed to do business in Washington State.
    - Ameriquest Mortgage Company: 17
    - Town & Country Credit Corporation: 1
    - AMC Mortgage Services, Inc. f/k/a Bedford Home Loans: 8

- Ameriquest is settling with 49 states and the District of Columbia (the company has never done business in Virginia) over allegations of unfair and deceptive lending practices. Ameriquest denies all allegations but has agreed to implement tough new standards to prevent the alleged practices from occurring in the future.

- Ameriquest will pay $295 million to consumers in restitution. Each state's share depends on the value of loans held by that state's consumers.

- The states involved in the settlement case will also share $30 million for attorneys' fees and costs involved in the investigation and settlement negotiations.

- The settlement impacts Ameriquest loans taken out between January 1999 and December 2005. In Washington, Ameriquest made 13,495 loans to residents totaling $2,706,469,252. This is roughly 2.54% of the $106 billion in loans made nationally during this time period.

- Washington's share of the settlement is approximately $6.5 million. The exact number will not be known until a settlement administrator has been selected and began work on distributing these sums.

- The company will reimburse Washington State approximately $2.5 million for investigative and legal costs. A significant portion of this money will be added to the restitution pool for Washington consumers harmed by Ameriquest's actions.

- Ameriquest will pay for a monitor and report on compliance with the settlement through December 31, 2010.

- <u>Consumers do not need to do anything at this time</u>. If they are eligible for restitution they will be notified by letter at a later date (likely 9-12 months from now) by the settlement administrator. We ask that consumers be patient because administration of a settlement of this size is a complex and time consuming task.

- Ameriquest will institute significant changes in its business practices and relations with consumers.

514084.1

**Allegations**

The states alleged that Ameriquest:

- **Fraudulently inflated appraisals.**
  Ameriquest account executives pressured appraisers to fraudulently inflate the market value of homes of potential borrowers in order to make loans, or make loans larger. Consumers were stuck with loan balances significantly higher than the true value of their homes, which ultimately blocked them from refinancing with other lenders or selling without taking a substantial loss.
- **Fabricated borrower income.**
  Ameriquest falsified borrower income and employment records in order to qualify borrowers for larger loans than their actual income would support. Homeowners were allegedly told to use occupations that are difficult to trace, such as a housecleaner or interior designer, and to declare income from non-existent renters.
- **Misrepresented loan terms.**
  Ameriquest misrepresented loan terms by promising borrowers the best, lowest interest rate for which they qualify, while providing salespeople with strong incentives to charge the highest possible rate.
- **Rushed closings and hid interest rates.**
  Ameriquest rushed closings and hid interest terms until as late in the process as possible, forcing potential borrowers, to financially and emotionally commit themselves and make it difficult for them to back out once they discovered the high rates.
- **Used high-pressure sales tactics.**
  Ameriquest used a highly skewed compensation system, accompanied by intense pressure by management to reach desired sales levels and monthly quotas – even to the extent of belittling loan officers who didn't measure up to expectations. This combination drove many loan officers to pressure and mislead consumers into accepting unfavorable loans that generated substantial commissions for loan officers and their managers.
- **Provided untimely funding.**
  Ameriquest closed loans before it had completed appraisals. In some cases, despite the fact that homeowners have completed a closing, Ameriquest reneged on its obligation to fund the loan.
- **Provided disparaging disclosures.**
  Laws require that homeowners receive both a Truth in Lending Act (TILA) disclosure featuring the annual percentage rate of the proposed loan and a Good Faith Estimate of the costs of the loan, as required by the Real Estate Settlement Procedures Act (RESPA). Ameriquest account executives regularly told homeowners that they should ignore the TILA/RESPA disclosures and that these disclosures were not representative of the actual loan terms they would receive, or would otherwise belittle the accuracy and relevance of the TILA/RESPA disclosures.

514084.1

**Significant Injunctive Provisions**
Under the agreement, Ameriquest is required to:

- Provide full disclosure regarding interest rates, discount points, prepayment penalties, and other loan or refinancing terms. The agreement provides for both written and oral disclosures.
- Ensure that employees do not defeat the purpose of these disclosures by criticizing or playing down the accuracy or importance of the disclosures.
- Provide the same interest rates and discount points for similarly situated consumers.
- Ensure that every loan benefits not only Ameriquest and its commissioned employees, but also the borrower.
- Substantially revise its compensation system to eliminate incentives for employees to deceive borrowers. This new system may not provide incentives to include prepayment penalties or any other fees or charges in the mortgages.
- Retrain their employees to comply with the terms of the settlement agreement.
- Monitor their employees more closely to ensure they comply with the settlement agreement and do not otherwise break the law.
- Overhaul the company's appraisal practices by removing branch offices and sales personnel from the appraiser selection process, prohibiting them from pressuring appraisers for higher values and instituting a system of periodic review to ensure the independence of appraisers and the accuracy and integrity of the appraisals. Not encourage prospective borrowers to falsify income sources or income levels.
- Limit prepayment penalty periods on certain variable rate mortgages.
- Not solicit their borrowers to refinance during the first 24 months of their loan, unless the borrower initiates it.
- Use independent loan closers.
- Adopt policies to protect whistle-blowers and facilitate reporting of improper conduct.

514084.1