IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | [Opposition to Motion for Preliminary Injunction; Brief Re: Mailing of Notice of Possible Rescission Rights; Declarations of Michael Gibson, Vicky Camacho and Bernard E. LeSage; Request for Judicial Notice; and Evidentiary Objections filed concurrently herewith] |

## DEFENDANT AMERIQUEST MORTGAGE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION

### I.    INTRODUCTION

By their Motion for Provisional Class Certification ("Motion"), plaintiffs in three of five cases ("Plaintiffs") recently transferred to this Court by the Judicial Panel on Multidistrict Litigation ("MDL Panel") seek certification of two classes of borrowers of defendant Ameriquest Mortgage Company ("Ameriquest").[1]  Both classes purportedly are comprised of borrowers who allegedly received: (1) a Notice of Right to Cancel ("NORTC") in which the date of expiration of the right to cancel was left blank; or (2) an incorrect form of NORTC because the loan paid off a prior Ameriquest loan.  [Motion, pp. 4-5.]  One class purportedly includes all borrowers nationwide who entered into non-purchase money residential mortgage loans since July 1, 2002 ("Class"); the other purports to be comprised only of Massachusetts borrowers who entered into non-purchase money residential mortgage loans since November 3, 2000 ("Subclass").  [*Id.*]

Both putative classes are based on the contention that providing a borrower with an incomplete NORTC and/or a NORTC in the wrong form violates the Truth in Lending Act, 15 U.S.C. Section 1601, *et seq.* ("TILA"), and entitles each borrower to an "extended" right to

---

[1] The three cases are: *Cheryl Williams, et al. v. Ameriquest Mortgage Company*; *Latonya Williams, et al. v. Ameriquest Mortgage Company, et al*; and *Murphy, et al. v. Ameriquest Mortgage Company.*  [Motion, p. 3.]  Plaintiffs are: Daisybel and William Tolbert, and Latonya Williams (*Latonya Williams*); Lynn Gay, David and Janet Wakefield (*Murphy*); and Duval Naughton (*Cheryl Williams*).  [*Id.*, pp. 4-5.]

1

rescind their loan.  [*Id.*, p. 6.][2] Plaintiffs concurrently have filed a Motion for Preliminary Injunction ("Injunction Motion"), in which they seek an order requiring that Ameriquest give unspecified notice to all class members of their supposed potential "extended" rescission rights.

As demonstrated below, Plaintiffs' Motion is flawed on many levels, and class certification is not warranted here.  In particular, the Motion fails for the following reasons:

(1)     The Motion is premature.  This multidistrict litigation is in its infancy and only a few of the potential cases at issue presently are before the Court.  Further, the MDL Panel explicitly left it to this Court to determine the status of cases upon transfer (*e.g.*, whether they should be consolidated or coordinated).  However, given the unsettled scope of this litigation, this Court understandably has yet to rule on any case management issues.[3]  Nevertheless, Plaintiffs have determined, without the Court's input or order, that the transferred actions are deemed consolidated (hence, the filing of single Motion covering all cases), their counsel should be "lead counsel," and the Court should rule on discrete class certification and injunctive relief issues before any other issue.  These and other decisions are to be made by the Court after all matters and parties are before it.  Moreover, much of this multidistrict litigation has been, or will be, resolved by the recent settlement between Ameriquest and the Attorneys General of each of the 49 states in which Ameriquest has done business over the last six years ("AG Settlement"), and by various other class action settlements and court orders.

(2)     None of Plaintiffs' Complaints in the underlying cases seeks certification of the classes they seek to certify in the Motion.  Therefore, any ruling by the Court on the Motion would be an improper advisory opinion as to hypothetical claims and a non-existent controversy.

(3)     The relief requested by Plaintiffs in the Motion is unavailable as a matter of law. Courts in this District and beyond consistently have held that TILA does not permit class actions seeking actual rescission or a declaration as to rescission rights.

(4)     Class certification is improper under Federal Rule of Civil Procedure 23(b)(2) because resolution of Plaintiffs' claims on a class basis will require the Court to make an individualized, fact-based analysis of each class member's transaction with Ameriquest, thereby

---

[2] The Subclass also seeks rescission under TILA, and supposedly only accounts for Massachusetts law that extends the time to rescind to four years in the event of improper disclosure of rescission rights. [Motion, p. 3 n. 2.]  As detailed below, however, Massachusetts residents cannot seek rescission under TILA, but must do so under Massachusetts law.  *See*, *infra*, § II.G.2.

[3] The Court has set a mid-June 2006 deadline for the parties to file a joint case management report.

rendering this action completely unmanageable. Among other things, the Court will have to determine whether each class member has standing to pursue a rescission claim against Ameriquest, as TILA requires a borrower, prior to filing suit, to demand rescission from the lender and allow the lender 20 days to respond to the demand. Similarly, the Court must reach the merits of each borrower's claim in order to determine whether the borrower is within Plaintiffs' putative classes because mere receipt of an incomplete NORTC and/or one in an incorrect form does not amount to a TILA violation. At best, it creates a case-by-case dispute of facts regarding whether, among other things, the borrower: (a) was entitled to notice of his or her rescission rights; (b) also received a completed NORTC and/or one in the correct form;[4] and/or (c) otherwise received clear and conspicuous disclosure of his or her rescission rights.

(5)     Plaintiffs' claims are not typical of the classes they seek to represent because: (a) Plaintiffs allege different injuries than many potential class members; and (b) Plaintiffs lack standing to bring TILA claims on behalf of many class members, who must seek such relief under state law. For these reasons, Plaintiffs also are not adequate representatives.

(6)     Plaintiffs' attorneys have submitted declarations attesting to the facts concerning Ameriquest's dealings with Plaintiffs and supposed class members. Plaintiffs' counsel therefore are material witnesses and cannot serve as class counsel. For these reasons, the Court should deny the Motion.[5]

## II.     ARGUMENT

### A.     The Motion Is Premature.

On December 13, 2005, the MDL Panel issued an order ("MDL Transfer Order") transferring five separate class actions against Ameriquest and other entities to this Court pursuant to 28 U.S.C. Section 1407 for coordinated or consolidated pretrial proceedings. [Request for Judicial Notice ("RJN"), Ex. 1.] Shortly thereafter, the MDL Panel identified seven other class actions against these defendants as potential "tag-along" actions under consideration for transfer. [Declaration of Bernard E. LeSage ("LeSage Decl."), ¶ 2, Ex. 1.] In addition, in accordance with their obligations under the Rules of Procedure of the Judicial Panel on

---

[4] As further detailed below, in the short time since receipt of the Motion, Ameriquest has determined that nearly all of the borrowers identified by Plaintiffs in their supporting papers who supposedly did not receive a properly completed NORTC actually received a fully compliant NORTC and acknowledged this fact in writing. [Declaration of Michael Gibson ("Gibson Decl."), ¶ 5, Ex. A.]

[5] Because the instant Motion fails in its entirety, the Court also should deny the Injunction Motion.

Multidistrict Litigation, defendants have advised the MDL Panel of 54 potential "tag-along" actions. [*Id.*, ¶ 3, Ex. 2.] Plaintiffs also have designated at least one potential "tag-along" case. [*Id.*, ¶ 3, Ex. 3.] The MDL Panel has not ruled or issued any conditional transfer orders in connection with any of the potential "tag-along" cases. [*Id.*, ¶ 3.] Accordingly, the number and identity of the cases that ultimately will be transferred to this Court is uncertain at this time.

Furthermore, the MDL Panel did not rule as to whether those actions identified in the MDL Transfer Order – let alone those under consideration for transfer – are to be consolidated or coordinated for pretrial purposes. Rather, the MDL Transfer Order expressly provides that actions are transferred to this Court for coordinated or consolidated pretrial proceedings, as to be determined by this Court. [*See* RJN, Ex. 1.] Understandably, given the unsettled scope of this litigation, the Court has yet to rule in this regard, or resolve any case management issues.

Against this background, the Motion plainly is premature, and Plaintiffs offer no justifiable reason for this Court to rush to judgment on weighty issues of class certification, injunctive relief and overall case management. While Plaintiffs contend that "time is of the essence for class members to exercise their rights" [Motion, p. 1], no Plaintiff ever sought to certify a TILA rescission class prior to transfer. [LeSage Decl., ¶ 4.] Plaintiffs certainly have had sufficient time to do so. *Murphy*, for example, was filed in December 2004.[6]

Plaintiffs and their counsel also make several improper presumptions in the Motion without the Court's input or approval, including that the transferred actions are consolidated and their counsel should be "lead counsel." These and other decisions relevant to managing this litigation are to be made by the Court after all matters and parties are before it. *See, e.g.*, Manual Complex Litigation, § 21.11, p. 284 (4th ed. 2005) (stating that courts should address several threshold issues prior to class certification).

Moreover, much of this MDL proceeding has been, or will be, resolved by the AG Settlement. [LeSage Decl., ¶ 5.][7] The AG Settlement was publicly announced on January 23, 2006 and resolves all claims by borrowers in the operative 49 states regarding the lending practices of Ameriquest and its related entities, including claims relating to the failure to provide

---

[6] In their recent Status Conference Statement ("Statement"), Plaintiffs argued that they have not sought class certification in the underlying cases "solely because of discovery delays engineered by Ameriquest." [Statement, pp. 9-10.] Not only is Plaintiffs' contention factually baseless, it contradicts their position in the Motion that they have sufficient evidence to support certification of the classes. [Motion, p. 4.]

[7] Various other class action settlements and court orders will also resolve many of the claims at issue.

the requisite disclosures to borrowers and the closing of loans. $295,000,000 in restitution will
be provided to borrowers who opt to participate in the AG Settlement.[8] Each such borrower will
sign a broad release of liability in exchange for a share of the restitution. [*Id.*]

Counsel for Plaintiffs in at least some of the transferred actions apparently are hoping to
reduce participation in the AG Settlement through the guise of the Motion. Among other things,
Ameriquest's counsel is informed that the firms of Lieff Cabraser Heimann & Bernstein, LLP
and Roddy, Klein & Ryan issued their own press release in which they expressed concern that
the AG Settlement "will not resolve all claims of consumers alleged in various private actions
against Ameriquest, including at least twelve (12) pending class actions." [*Id.*, ¶ 6.] This
statement, however, is patently wrong, as the AG Settlement will result in a release of
Ameriquest for most, if not all, of the claims at issue before this Court. [*Id.*, ¶ 6, Ex. 5.] Based
on the foregoing, Ameriquest respectfully requests that the Court deny the Motion.

**B.**     **The Motion Improperly Seeks An Advisory Opinion Of This Court.**

None of Plaintiffs' respective Complaints seek certification of the Class or Subclass.
[*See Murphy* First Amended Complaint, ¶¶ 161 and 211-226 (seeking relief under Massachusetts
law only); *Cheryl Williams* Complaint, ¶¶ 63-64; and *Latonya Williams* First Amended
Complaint, ¶ 102.] Thus, there is no operative pleading in which Plaintiffs seek the relief they
seek in the Motion, and any ruling on the Motion would be an improper advisory opinion. U.S.
Const., Art. 3, § 2, cl. 1; *see also Foster v. Center Township of LaPorte County*, 798 F.2d 237,
242 (7th Cir. 1986) ("The case-or-controversy requirement of Article III applies with equal force
to actions for declaratory judgments as it does to actions seeking traditional coercive relief.").[9]

**C.**     **TILA Does Not Permit Class Actions Seeking Rescission.**

Plaintiffs contend that courts have "routinely concluded that class certification is
appropriate when the proposed class members are seeking declaratory relief related to the
rescission right under TILA." [Motion, p. 9.] The weight of authority on this issue in this Court

---

[8] The total settlement amount is $325,000,000.

[9] Plaintiffs cannot amend their Complaints through the Motion. *See Auston v. Schubnell*, 116 F.3d 251,
255 (7th Cir. 1997) (holding that a later-filed brief cannot amend a complaint). Attempting to controvert
this settled principal of law, Plaintiffs argued in Statement that this Court is not bound by the class
definitions in the underlying Complaint. [Statement, p. 9.] Yet, the cases cited by Plaintiffs do not
support this contention. In *Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993), the court only held that a
court may narrow an overly broad class definition in the complaint. *Id.* at 937. *Harris v. General
Development Corporation*, 127 F.R.D. 655, 659 (N.D. Ill. 1989), stands for the same proposition.

and other federal courts, however, rejects certification of class actions seeking actual rescission or a declaration as to rescission rights. *See, e.g., James v. Home Const. Co. of Mobile, Inc.*, 621 F.2d 727, 730-31 (5th Cir. 1980); *Gibbons v. Interbank Funding Group*, 208 F.R.D. 278, 285-86 (N.D. Cal. 2002); *Jefferson v. Security Pac. Fin. Servs.*, 161 F.R.D. 63, 69 (N.D. Ill. 1995); *Nelson v. United Credit Plan, Inc.*, 77 F.R.D. 54, 58 (E.D. La. 1977); *Murry v. America's Mortg. Banc, Inc.*, No. 03 C 5811, 03 C 6186, 2005 WL 1323364, at *10-11 (N.D. Ill. May 5, 2005).

Several sound reasons support these holdings. To begin with, TILA's statutory scheme evidences that rescission thereunder is a "purely personal remedy" that belongs to the individual. *James*, 621 F.2d at 730-31; *accord Gibbons*, 208 F.R.D. at 285; *Jefferson*, 161 F.R.D. at 69. A party seeking rescission under TILA must notify the lender of his or her intent to rescind. 15 U.S.C. § 1635(b). The lender then has 20 days to respond to that demand. *Id.* Thus, under TILA, "individuals must choose to assert the right to rescind, on an individual basis and within individual time frames, before filing suit." *Jefferson*, 161 F.R.D. at 69.[10]

The plain language of TILA also evidences Congress's intent to prohibit class-wide rescission claims. Section 1635(b) does not provide for class actions. Conversely, Section 1640, which governs damages, was amended by Congress in 1970 to expressly include class actions and to cap damage recovery. *See* Pub. L. 93-495, 88 Stat. 1500. "Congress' failure to amend Section 1635(b) in 1974 evidences a Congressional intent to treat rescission as a purely personal remedy, which is not subject to class action." *Murry*, 2005 WL 1323364, at *10 (*citing Jefferson*, 161 F.R.D. at 68; internal quotation marks omitted). *Accord Gibbons*, 208 F.R.D. at 285. Additionally, Congress amended Section 1635 in 1980 to give courts equitable authority to tailor the rescission steps to meet the needs of each borrower and creditor. *See* Pub. L. 96-212, 94 Stat. 175, 176. "[T]he 1980 amendment is an indication that rescission is a personal, rather than a class, remedy." *Murry*, 2005 WL 1323364, at *10. *Accord Gibbons*, 208 F.R.D. at 285.

Furthermore, the purpose of rescission is to restore the parties to the *status quo ante*. *James*, 621 F.2d at 730; *accord Gibbons*, 208 F.R.D. at 285; *Jefferson*, 161 F.R.D. at 69. This purpose would be undone by allowing a class of persons to rescind their loans when the cost of recovery would exceed the harm done by the technical violation. *Id.* Indeed, "[a] declaratory

---

[10] As further evidence of the personal nature of the rescission remedy, TILA requires borrowers to return any proceeds they have received from the lender. 15 U.S.C. § 1635(b). Thus, a borrower must be ready, willing and able to return essentially all of the funds he or she obtained from the lender.

judgment permitting classwide rescission ... would turn Section 1635(b) into a penal provision, a result certainly never explicitly authorized by Congress." *Jefferson*, 161 F.R.D. at 70.

Finally, TILA provides for recovery of costs and an award of attorneys' fees in a successful action to enforce rescission rights. 15 U.S.C. § 1640(a)(3). The availability of such relief "means it is feasible for individual consumers to bring their own actions." *Gibbons*, 208 F.R.D. at 286 (*citing James*, 621 F.3d at 731 n. 7). *See also Jefferson*, 161 F.R.D. at 69.

In an attempt to evade TILA's bar to class-wide rescission, Plaintiffs cite cases in which courts allegedly certified claims seeking declarations as to rescission rights. [Motion, p. 9.] All of these cases, however, have been rejected by this District and other courts for the reasons outlined above. *See, e.g., Gibbons*, 208 F.R.D. at 285-86; *Murry*, 2005 WL 1323364, at \*10-11. Further, none of the cases cited by Plaintiffs involved certification of a rescission class based on the alleged provision of an incomplete NORTC or one in the wrong form.

In contrast, *Gibbons* is directly on point. There, plaintiff borrower alleged that defendant lender (1) provided plaintiff with a NORTC in the incorrect form, and (2) included the wrong date of the rescission deadline in plaintiff's NORTC. 208 F.R.D. at 279-81. Plaintiff sought to pursue his claims on a class basis and requested a declaration that each class member had a right to rescind their loan under TILA. *Id.* at 284. The district court denied plaintiff's request. *Id.* at 285-87. In so holding, the court rejected the cases relied on by Plaintiffs here and specifically held that any distinction between a declaration authorizing rescission and an order enforcing rescission rights was "one of form more than substance." *Id.* at 285. This Court should follow *Gibbons* and related authority and deny Plaintiffs' Motion.[11]

**D.    Resolving Plaintiffs' Claims On A Class Basis Will Require The Court To Examine Each Borrower's Transaction.**

Before certifying a class, a court must conduct a rigorous analysis of the requirements set out in Federal Rule of Civil Procedure 23. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161

---

[11] Plaintiffs argue that in *Latham v. Residential Loan Centers of America, Inc.*, No. 03 C 7094, 2004 WL 1093315 (N.D. Ill. May 6, 2004), and *Hickey v. Great Western Mortgage Corporation*, 158 F.R.D. 603 (N.D. Ill. 1994), courts in this District certified classes seeking declarations as to rescission rights. [Motion, p. 9.] Plaintiffs, however, mischaracterize these holdings. *Latham* involved a motion to dismiss and the court specifically held that it did "not certify a class at this time" and, "[s]hould Latham move to certify a class under Rule 23, Latham will need to satisfy all of the requirements of Rule 23." 2004 WL 1093315, at \*3. Plaintiffs further fail to inform the Court that the *Hickey* court later decertified the class. *See Hickey v. Great Western Mortg. Corp.*, No. 94 C 3638, 1995 WL 121534 (N.D. Ill. Mar. 17, 1995).

(1982). To obtain class certification, Plaintiffs have the burden of establishing that the proposed classes each satisfy all four elements of Rule 23(a) (numerosity, commonality, typicality and adequacy of representation) and one of the three subsets of Rule 23(b). *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Implicit in Rule 23 are two additional requirements: (1) Plaintiffs must show that the proposed class definitions are "precise, objective and presently ascertainable"; and (2) Plaintiffs must establish that Plaintiffs and the class they seek to represent have standing. *In re Copper Antitrust Litigation*, 196 F.R.D. 348, 353 (W.D. Wis. 2000).

In this case, Plaintiffs seek certification of both classes under Rule 23(b)(2). [Motion, pp. 14-15.] Plaintiffs therefore must demonstrate that Ameriquest "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

The underlying premise of a Rule 23(b)(2) class is that class members suffer from a common injury that can be addressed by classwide relief; its hallmark is homogeneity and cohesiveness. *Allison v. Citgo Petroleum*, 151 F.3d 402, 413 (5th Cir. 1998); *see also Barnes v. American Tobacco Co.*, 161 F.3d 127, 142-44 (3d Cir. 1998) (Cohesiveness is required "because unnamed class members are bound by the action without the opportunity to opt out"). The existence of individual issues and manageability concerns therefore must be considered in determining whether to certify a class under Rule 23(b)(2). *Barnes*, 161 F.3d at 142-44 (citation omitted); *see Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981), *cert. denied*, 456 U.S. 917 (1982) (citations omitted) ("Some of the problems which arise in all of the subdivisions of Rule 23(b) are common to all forms of class action identifying a class, cost of notice of settlement, and administrative burdens on the court in managing the litigation. This is especially true because the purpose of Rule 23 is to allow an efficient mechanism for disposing of multiple claims.") (citations omitted). As demonstrated below, the prevalence of individual issues and resulting manageability concerns preclude certification of the Class or Subclass under Rule 23(b)(2).

1. **Each Transaction Would Have To Be Examined To Determine If A Borrower Has Standing To Seek Rescission.**

In pertinent part, 15 U.S.C. Sections 1635(a) and (b) provide as follows:

(a) The obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section . . . whichever

is later, by notifying the creditor, in accordance with the regulations of the board, of his intention to do so.

*     *     *

(b)  Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

The above provisions establish that, to have standing to seek rescission under TILA, a person must first have (1) demanded rescission from the creditor, and (2) provided the creditor with 20 days to respond to the demand. *Id.*; *see Jefferson*, 161 F.R.D. at 69; *Jefferson v. Security Pac. Fin. Servs.*, 162 F.R.D. 123, 125-26 (N.D. Ill. 1995) ("[T]he notice and waiting period prescribed by Section 1635(b) must be satisfied before this Court can conclude that a class member has standing."). Furthermore, one person's compliance with Sections 1635(a) and (b) cannot be used to establish another person's standing to seek rescission. *James*, 458 F. Supp. at 56 (denying class certification where there was no showing that absent class members complied with § 1635); *Gibbons*, 208 F.R.D. at 285 (same); *Jefferson*, 161 F.R.D. at 69 (same).

Thus, if the Court certifies either class, it will have to determine whether each class member has complied with Sections 1635(a) and (b), and thus has standing. *See In re Copper*, 196 F.R.D. at 353. Such a burden on the Court and the parties would completely undermine the benefits of class litigation. *See Jefferson*, 161 F.R.D. at 69 ("The individual issues with respect to the court's jurisdiction over each class member's entitlement to rescission, alone, preclude a finding that this case can be managed better as a class, rather than as an individual, action.").[12]

**2.      Each Transaction Would Have To Be Examined To Determine If A Borrower Is Properly Part Of The Class And/Or Subclass.**

Plaintiffs must establish that an objectively identifiable "class" exists. *Simer*, 661 F.2d at 669. Class definitions which require the court to determine the merits of every individual's claim to determine if they are within the class do not meet this requirement. *See, e.g., Crosby v. Social Security Admin.*, 796 F.2d 576, 580 (1st Cir. 1986) (denying class certification because the proposed definition made class members "impossible to identify prior to individualized fact-

---

[12] In effect, Plaintiffs are requesting this Court to issue an improper advisory opinion with respect to the absent class members who have not expressed any desire to rescind. *See Gibbons*, 208 F.R.D. at 285 (noting that, without a request for rescission from each class member and a subsequent denial of the request, "it is not at all clear that a justiciable controversy exists").

finding and litigation"). Here, Plaintiffs' class definitions allege only a potential wrong that must be analyzed on a transaction-by-transaction basis to determine if an actual wrong occurred and the borrower is entitled rescind his or her loan, and thus part of the Class and/or Subclass.

### a. Mere Receipt Of An Incomplete NORTC Is Not A Violation Of TILA.

Plaintiffs' putative classes consist of Ameriquest borrowers who supposedly received a NORTC in which the date of expiration of the right to cancel was left blank. [Motion, pp. 4-5.] A borrower's mere receipt of an incomplete NORTC, however, is not a violation of TILA. At best, it creates a potential claim, dependent upon, among other facts, whether the borrower also received a completed NORTC.

This is not mere hyperbole. In his Declaration in support of the Motion, Daniel Blinn identified 134 borrowers who supposedly received an incomplete NORTC and are members of the Class. [Declaration of Daniel Blinn, ¶ 10, Ex. A.] As demonstrated in the Gibson Declaration, however, 132 of these 134 borrowers (98.5%) acknowledged in writing that they all received fully compliant NORTCs forms. [Gibson Decl., ¶ 5, Ex. A.][13] The written acknowledgements establish a rebuttable presumption that Ameriquest complied with TILA as to these borrowers. *See* 15 U.S.C. § 1635(c); *Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738, 751 (D.C. Cir. 2000). To rebut this presumption, each of the 132 borrowers must present competent evidence to the contrary. *Williams*, 225 F.3d at 751; *Whitlock v. Midwest Acceptance Corp.*, 76 F.R.D. 190, 191 (D. Mo. 1977), *rev'd on other grounds*, 575 F.2d 652 (8th Cir. 1978) (plaintiffs' failure to controvert the presumption created by TILA entitled defendants to summary judgment). This alone would require this Court to oversee 132 "mini-trials" just to determine if these borrowers are even members of the putative Class.[14]

### b. Mere Provision Of A Wrong NORTC Form Is Not A TILA Violation.

Plaintiffs' classes also consist of borrowers who allegedly received the wrong NORTC form in a transaction in which the borrower's loan paid off a prior loan with Ameriquest. [Motion, pp. 4-5.] A borrower's mere receipt of an "incorrect" form in such a transaction,

---

[13] Ameriquest provided these documents to Mr. Blinn. [*Id.*] Mr. Blinn, however, has failed to inform the Court of this fact. Instead, Plaintiffs contend there is an "indisputable inference" that many borrowers other than those identified by Mr. Blinn have received incomplete NORTCs. [Motion, p. 7.] This obviously is untrue.

[14] Given sufficient time to review its files, Ameriquest is confident that it will locate similar evidence for the remaining borrowers at issue, necessitating the need for even more "mini-trials."

however, is not a TILA violation. Whether it is a violation of TILA depends upon, among other things, Ameriquest was required to provide the borrower with a notice of rescission rights.

TILA expressly exempts several transactions from its rescission requirements. 15 U.S.C. § 1635(e). As relevant here, Section 1635(e)(2) sets forth the "refinancing" exemption and provides that Section 1635 does not apply to "a transaction which constitutes a refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property." The Board of Governors of the Federal Reserve System ("Board") has interpreted this exemption to mean that the right of rescission applies only "to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amount attributed solely to the costs of the refinancing or consolidation." 12 C.F.R. § 226.23(f). Thus, a borrower may rescind only the "new money" portion of a refinancing by the same creditor, and when a refinancing by the same creditor does not involve "new money," no disclosure of the (nonexistent) right to rescind is necessary. *In re Porter*, 961 F.2d 1066, 1074 (3d Cir. 1992).

Plaintiffs' class definitions include persons whose "loan paid off a prior loan with Ameriquest" – *i.e.*, same creditor transactions. [Motion, p. 5.] Plaintiffs' class definitions therefore fall squarely within the "refinancing" exemption and Ameriquest was not required to provide notice of rescission rights to the class members unless it advanced "new money" in the transaction. 12 C.F.R. § 226.23(f); *In re Porter*, 961 F.2d at 1074. Accordingly, the Court must review every loan file in which a class member's loan paid off a prior loan with Ameriquest to determine whether the refinancing exemption is applicable (*i.e.*, whether the new amount financed exceeded the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amount attributed solely to the costs of the refinancing or consolidation). *Id.*

### c.     Provision Of An Incomplete NORTC Or One In The Wrong Form Is Not, Per Se, A Violation Of TILA.

Plaintiffs' entire Motion is premised on the false notion that a technical failure to comply with TILA's requirements as to notice of rescission rights unquestionably amounts to a TILA violation. While TILA requires creditors to "clearly and conspicuously disclose" the right of rescission in transactions that afford borrowers that right, 15 U.S.C. § 1635(a), it "does not require perfect notice." *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 581 (11th Cir. 1996). There is no

mandated form; a lender may use any form it wishes as long as the disclosures are "reasonably understandable." *See* 15 U.S.C. § 1635(h); 12 C.F.R. § 226, Supp. I, ¶ 17(a)-1 (2003).

Furthermore, determining whether notice of rescission rights was clear and conspicuous in a given transaction requires close scrutiny of all circumstances surrounding the transaction. *See, e.g., Rodash v. AIB Mortg. Co.*, 16 F.3d 1142, 1146 (11th Cir. 1994) ("determination of clear and conspicuous notice of rescission rights under TILA is intensely fact-based") (*citing In re Porter*, 961 F.2d at 1076); *accord Smith v. Highland Bank*, 108 F.3d 1325, 1327 (11th Cir. 1997) (holding that judging a lender's compliance with the rescission notice provision is not mechanical and involves scrutinizing the totality of the circumstances); *Gibbons*, 208 F.R.D. at 287 (refusing to certify a class based on defendant's purported provision of NORTCs in the wrong form; "The relevant inquiry is not the number on the form received by each borrower – it is whether the language in the form adequately informs the recipient of his/her rights."). In sum, this Court and the parties would have to delve into the details of every closing transaction to determine whether each borrower received clear and conspicuous notice of the right to rescind. Such a patently onerous burden on the parties and the Court only serves to exhibit that Plaintiffs' claims may not be resolved on a class basis.

### d. The Court Would Have To Consider Ameriquest's Defenses And Each Borrower's Circumstances.

Even if it were possible to determine, on a class basis, whether the notice of rescission rights provided to borrowers was adequate, individual issues still would render this putative class action unmanageable because Ameriquest is entitled to inquire into the individual circumstances of each borrower's transaction to determine whether it has a defense to the borrower's right of rescission, including those based on each borrower's personal circumstances. *See, e.g., Gibbons*, 208 F.R.D. at 287 (denying certification of a TILA rescission class because disclosures, while on wrong form, may have been sufficient to certain borrowers based on their own circumstances). Borrowers vary on several grounds, including individual financial circumstances, sophistication and familiarity with mortgage loans (including rescission rights) through previous transactions.

For instance, even if some borrowers did not receive adequate written notice of their rescission rights (a point Ameriquest thoroughly contests), any borrower who had actual knowledge of their right to rescind should be excluded from any class because they cannot have suffered any harm. *See, e.g., Contimortgage v. Delawder*, 2001 WL 884085, at *6 (Ohio Ct.

App. July 30, 2001) (holding that TILA should not be applied in a "rote and technical fashion which penalizes lenders in instances in which no harm has occurred"); *Mackey v. Household Bank, F.S.B.*, 677 So. 2d 1295, 1298 (Fla. Dist. Ct. App. 1996) (discussing TILA and noting that "[l]aws should be enforced with common sense and applied without losing sight of the legislative purpose behind their enactment"). In this regard, the Court must consider the oral instructions and explanations, if any, provided by the different closing agents at each particular closing.[15] TILA rescission rights also do not apply to any borrower who used the loan for business use must be excluded from the class because TILA does not apply to a loan that is primarily for business purposes, *see* 15 U.S.C. § 1603(1), or if the refinance is secured by a second-home or non-primary residence, *see id.* § 1635(a).[16] In short, the Court would have to closely examine the circumstances of each loan, including the awareness of each borrower and the use of each loan, to determine whether a borrower actually should be entitled to rescind his or her loan.

E.      **Plaintiffs' Claims Are Not Typical Of The Classes They Seek To Represent.**

Rule 23(a)(3) requires Plaintiffs to prove that their claims "are typical of the claims or defenses of the class." To this end, Plaintiffs must show that they are "part of the class and possess the same interest and suffer the same injury as the class members." *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotation marks omitted). *See Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164-65 (7th Cir. 1974) (holding that the typicality requirement is not satisfied where defendant "arguably" has unique defenses to the claims of the named plaintiff or a small subset of the plaintiff class). Applying these standards here, Plaintiffs cannot represent either the Class or the Subclass.

1.      **Plaintiffs Allege Different Injuries Than Many Potential Class Members.**

Typicality is lacking here because Plaintiffs' purported harm admittedly differs from the classes they seek to represent. *East Texas*, 431 U.S. at 403. For instance, Plaintiff Gay contends that Ameriquest failed to provide her with the proper form of NORTC. [*Murphy* Complaint, ¶¶ 78-80.] However, she seeks to represent persons who allege that they received a NORTC in

---

[15] Ameriquest has utilized closing agents in all states since July 2004. [Declaration of Vicky Camacho, ¶ 2.] In the State of Connecticut alone, Ameriquest engaged 14 separate closing agents to close the loans identified by Mr. Blinn in Exhibit A to his Declaration. [Gibson Decl., ¶ 14.]

[16] There are numerous other defenses to a rescission claim, including that a borrower does not have the right to rescind a loan that has been paid off. *King v. California*, 784 F.2d 910, 912 (9th Cir. 1986); *accord Coleman v. Equicredit Corp.*, No. 01 C 2130, 2002 WL 88750, at *2 (N.D. Ill. Jan. 22, 2002).

which the date to cancel was left blank. [Motion, pp. 4-5.] Likewise, the Tolberts contend that they received a NORTC in which the date to cancel was left blank. [*Latonya Williams* Complaint, ¶ 179.] However, they seek to represent classes of persons who allege that Ameriquest failed to provide them with an NORTC in the proper form. [Motion, pp. 4-5.]

    **2.**    **Certain Plaintiffs And Numerous Class Members Cannot Seek Rescission Under TILA, But Rather Must Seek Such Relief Under State Law.**

The Board has exempted credit transactions subject to several state laws from Chapter 2 of TILA. *See* 48 Fed. Reg. 14882, 14890 (1983) (stating that Massachusetts, Maine, Connecticut, Oklahoma and Wyoming are exempt from Chapter 2 of TILA). Chapter 2 of TILA includes Section 1635. As a result, residents of the exempted states cannot rescind a credit transaction under TILA; they can pursue that remedy only under their respective state law. *See, e.g., Robey-Harcourt v. Bencorp Fin. Co.*, 326 F.3d 1140, 1143 (10th Cir. 2003); *In re Desrosiers*, 212 B.R. 716, 722 n. 6 (Bankr. D. Mass. 1997); *Robinson v. Olin Fed. Credit Union*, 48 B.R. 732, 738 (D. Conn. 1984).

Plaintiffs Gay and the Wakefields purport to be representatives of the Class and Subclass. [Motion, pp. 4-5.] Further, the Class and the Subclass purport to seek rescission pursuant to TILA. [*Id.*, pp. 5-6.] However, Plaintiffs Gay and the Wakefields allege to be Massachusetts residents. [*Murphy* Complaint, ¶¶ 10, 11.] Thus, they cannot rescind their loans under TILA; they can pursue that remedy only under Massachusetts law. *Desrosiers*, 212 B.R. at 722 n. 6. Plaintiffs Gay and the Wakefields therefore lack standing to assert claims for rescission under TILA and cannot serve as class representatives for any class seeking such relief. *See, e.g., Magnuson v. City of Hickory Hills*, 730 F. Supp. 1439, 1443 (N.D. Ill. 1990) (holding that typicality requirement is not met where named plaintiff does not have standing to pursue claims).

As to the other exempted states, Plaintiffs do not seek to assert any claims under such states' laws (nor could they as none of them are residents of these states). Accordingly, Plaintiffs' claims are not typical of these class members. *Magnuson*, 730 F. Supp. at 1443.

**F.**    **Plaintiffs Are Not Adequate Representatives Of Either Of The Classes.**

Rule 23(a)(4) requires Plaintiffs to show that there is no conflict between them and the proposed class members. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), *cert. denied*, U.S. 113 S. Ct. 972 (1993). Plaintiffs also must have standing to sue on behalf of the classes. *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). Here, Plaintiffs' interests conflict with the

interests of potential class members because Plaintiffs state different injuries than the proposed class members. *See*, *supra*, § II.G.1. Further, as detailed above, Plaintiffs do not have standing to pursue claims on behalf of all class members. *See*, *supra*, §§ II.G.2 and II.G.3.

**G.      Plaintiffs' Counsel Are Not Adequate Representatives Of Either Of The Classes.**

Class counsel is inadequate if they are material witnesses to the claims at issue. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 119 F.R.D. 344, 349 (S.D. N.Y. 1988) (class certification denied where attorney was a potential witness in the case); *see also* N.D. Ill. L.R. 83.53.7 (authorizing disqualification of attorneys who act as counsel in a case in which attorney may be called as a fact witness). Certain of Plaintiffs' attorneys have submitted declarations attesting to the factual events underlying Ameriquest's purported failure to provide proper NORTCs and Plaintiffs' and putative class members' requests for rescission. [*See generally* Declarations of Daniel S. Blinn, Shennan Kavanagh and Terry Smiljanich.] Ameriquest is entitled to – and intends to – take the depositions of these attorneys to test the veracity of their statements. Moreover, so long as these attorneys remain material fact witnesses to the claims at issue, they cannot serve as class counsel. *Gary Plastic*, 119 F.R.D. at 349.

### III.      CONCLUSION

For the foregoing reasons, Ameriquest respectfully requests that the Court deny the Motion in its entirety. If the Court is inclined to grant the Motion, Ameriquest requests that it be permitted to conduct class discovery and supplement this Opposition after completion of such discovery. *See Chateau de Ville Prods., Inc. v. Tams-Witmark Music Library Inc.*, 586 F.2d 962, 966 (2d Cir. 1978). Notwithstanding this request, Ameriquest submits that the Court has more than sufficient bases to deny the Motion at this time.

DATED: February 14, 2006                       Respectfully submitted,

                                                BUCHALTER NEMER
                                                A Professional Corporation


                                                By: /s/  Bernard E. LeSage

                                                *Attorneys for Defendants Ameriquest Mortgage*
                                                *Company, Ameriquest Capital Corporation and*
                                                *Argent Mortgage Company*