## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before the Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | [Opposition to Motion for Class Certification; Brief Re: Mailing of Nationwide Notice of Possible Rescission Rights; Declarations of Michael Gibson, Vicky Camacho and Bernard LeSage; Request for Judicial Notice; and Evidentiary Objections filed concurrently herewith] |

### DEFENDANT AMERIQUEST MORTGAGE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### I.     SUMMARY OF OPPOSITION

In an attempt to stake a claim to the lead counsel position in this newly established Multidistrict Litigation ("MDL Action"), counsel for plaintiffs ("Movants") in three of the cases recently transferred to this Court[1] filed motions for: (a) provisional class certification, and (b) a preliminary injunction. This Opposition addresses the Motion for Preliminary Injunction only.

Specifically, Movants seek an order compelling Defendant Ameriquest Mortgage Company[2] ("Ameriquest") to send an unidentified notice to a so-called "rescission class" advising them "of the potential existence of the extended right to cancel", and a corresponding 30-day stay of any pending foreclosure sales ostensibly to give the recipients time to consider the

---

[1]   The three identified actions are: *Cheryl Williams, et al. v. Ameriquest Mortgage Company,* Case No. 05-CV-6189; *La Tonya Williams, et al. v. Ameriquest Mortgage Company, et al.,* Case No. 8:05-01036-EAK-EAJ (M.D. Fla.); and *Murphy, et al. v. Ameriquest Mortgage Company*, Case No. 04-cv-12651RWZ (D. Mass.). [Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction ("Memorandum"), p. 2.]

[2]   Although other defendants are subject to the Panel's Order, Ameriquest Mortgage Company is the only defendant against whom the present relief is sought.

notice and "determine if rescission is a viable foreclosure defense"[3]. [Memorandum, p. 4.] Notably, other than the quoted language, Movants do not specify the substance of the notice or otherwise attach a sample of what it is precisely that they want sent[4]. Movants contend that this relief is authorized pursuant to their claims that Ameriquest violated the federal Truth in Lending Act ("TILA") by failing to provide borrowers with fully completed Notice of Right to Cancel forms ("NORTC") or, alternatively, providing borrowers with an incorrect NORTC form. [Memorandum, p. 3.]

The foregoing relief constitutes a disfavored *mandatory* injunction that will disrupt – not maintain – the status quo. Movants do not, and cannot, meet their burden of establishing a reasonable likelihood of success on the merits of the underlying claim because, *inter alia*, they: (a) fail to offer a shred of admissible evidence to support the merits of their claim, but rather submit declarations of counsel that consist of nothing more than inadmissible hearsay, and (b) even if they prevail on the merits they cannot obtain the relief they seek[5]. Movants likewise cannot establish that there is no adequate remedy at law because TILA itself offers a multitude of remedies for its violation. No irreparable harm will result in the absence of the injunction the Movants seek because both TILA and each borrower's state laws provide an abundance of due process before a foreclosure sale can be held. Finally, both the balance of hardships and public policy considerations weigh heavily in Ameriquest's favor. As such, Ameriquest respectfully requests that this Motion be denied with prejudice.

---

[3] In their Motion, however, Movants appear to inconsistently seek a notice that advises borrowers of the "existence of the extended right to rescind" rather than the "potential existence" and also vaguely state that the notice should describe "the nature and extent of the right, its expiration date, and how to exercise it". [Motion, p. 1.]

[4] In their Motion, however, Movants appear to inconsistently seek a notice that advises borrowers of the "existence of the extended right to rescind" rather than the "potential existence" and also vaguely state that the notice should describe "the nature and extent of the right, its expiration date, and how to exercise it". [Motion, p. 1.]

[5] It is important to remember that the express purpose of TILA, as set forth in more detail in section III(B) below, is to "assure a meaningful disclosure of credit terms". 15 U.S.C. §1601. Congress and the Federal Reserve Board have provided a comprehensive statutory scheme and remedy provisions that do not authorize the type of notice Plaintiffs seek but do provide ample remedies at law for its violations. 12 C.F.R. §226.23; 15 U.S.C. §1635, 1640. Moreover, Ameriquest's files demonstrate that there was no widespread failure to comply with TILA. In fact, the opposite is true. [See, Declaration of Michael Gibson filed herewith.]

## II.    AN INJUNCTION CANNOT LIE ABSENT CERTIFICATION AND CERTIFICATION MUST BE DENIED

Certification of a rescission class is a prerequisite to Movants' success on the present Motion. For the reasons set forth in Ameriquest Mortgage Company's concurrently filed Opposition to Plaintiffs' Motion for Provisional Class Certification, which is incorporated by reference herein in its entirety[6], Movants cannot prevail in obtaining certification. Accordingly, the instant Motion must be denied.

## III.    THE REQUESTED RELIEF DOES NOT MAINTAIN THE STATUS QUO

It is elementary that an injunction must maintain the status quo. *Lacassagne v. Chapuis,* 144 U.S. 119, 124 (1892); *see also, Illinois Bell Tel. Co. v. Worldcom Techs., Inc.,* 157 F.3d 500, 503 (7th Cir. 1998). An injunction cannot be used to redress a wrong that has allegedly already been committed. *Id.* Here, the parties' rights are already established – either each purported class member has an extended right to rescind his or her loan, or he or she does not have that right. Whether or not that right exists depends on whether or not Ameriquest *previously* gave a proper notice of right to rescind. While the propriety of notice will have to be tried individually as to each purported class member, nothing in the notice Movants hope to mail will affect whether that right exists. Thus, Movants are not trying to maintain the status quo, but rather are trying to redress alleged past wrongs. Accordingly, Movants' attempted use of the injunctive relief process is improper and must be denied.

## IV.    MOVANTS CANNOT MEET THE HEIGHTENED BURDEN OF PROOF REQUIRED TO OBTAIN A MANDATORY INJUNCTION

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Boucher v. School Bd. of Greenfield,* 134 F.3d. 821, 823 (7th Cir. 1998) (emphasis in original); *see also, Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1044 (7th Cir. 2000) ("A preliminary injunction is a very serious remedy, 'never to be indulged in except in a case clearly demanding it.'"). As a result, a preliminary injunction will only be issued if the moving party proves: (1) a reasonable likelihood of success on the merits of the underlying claim; (2) no adequate remedy at law; and (3) irreparable harm in the absence of an injunction. *Lucini Italia Co. v. Grappolini,* 288 F.3d 1035, 1038 (7th Cir. 2002). If plaintiff fails to show any one of those three elements,

---

[6]    Ameriquest also incorporates herein by reference its concurrently filed Brief Regarding the Mailing of Nationwide Notice of Possible Rescission Rights.

the Court's inquiry should end and the injunction should be denied. *See American Soc'y of Consultant Pharmacists v. Garner,* 180 F.Supp.2d 953, 968 (N.D. Ill. 2001) (citing *Abbot Labs v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)).

Only if the moving party can satisfy its initial burden will the court proceed to weigh the potential harm to each party and the public interest in deciding whether to grant the injunction. *See Lucini,* 288 F.3d at 1038. To prevail, the movant's burden is substantial, and it is required to establish that the balance of harms tips *decidedly* in its favor. *Boucher,* 134 F.3d at 826 n. 5. The less likely a movant is to prevail on the merits, the more strongly it must show that the balance of harm weighs in its favor. *Ferrell v. U.S. Dept. of Housing and Urban Dev.,* 186 F.3d 805, 811 (7th Cir. 1999).

Moreover, the movant's burden is much stricter where, as here, a *mandatory* injunction is sought. The Seventh Circuit holds that "mandatory preliminary writs are ordinarily cautiously viewed and sparingly issued." *Jordan v. Wolke,* 593 F.2d 772, 774 (7th Cir. 1978); *see also, W.A. Mack, Inc. v. General Motors Corp.,* 260 F.2d 886, 890 (7th Cir. 1958) (finding that "mandatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds"). Mandatory injunctions are "subject to a heightened scrutiny and should not be issued unless the facts and law *clearly favor the moving party.*" *Dahl v. HEM Pharmaceuticals Corp.,* 7 F.3d 1399, 1403 (9th Cir. 1993) (emphasis added); *see O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 976 (10th Cir. 2004) (en banc) (strong showing required both as to likelihood of success on the merits and balance of harms).

Facing these significant hurdles, Movants are simply not entitled to the preliminary mandatory injunction they seek. They cannot demonstrate that they are likely to prevail on the merits since they fail to offer any admissible evidence in support of their claims and, since even if they did prevail, the relief sought is not a remedy they would be entitled to under TILA. Movants similarly cannot show that they will be irreparably harmed if their request for injunctive relief is denied because the relief sought is adequately protected by state laws governing foreclosure sales. Moreover, should Movants prevail, they have an adequate remedy at law in the form of all remedies available under TILA – regardless of whether the mandatory injunction issues, Movants' remedies remain the same. Finally, even assuming that Movants can overcome

the first three requirements for injunctive relief, the hardships and public policy considerations do not tip – decidedly or otherwise – in Movants' favor.

### A.      Movants Cannot Establish Any Likelihood of Prevailing on the Merits

#### 1.      Movants Offer No Admissible Evidence In Support of Their Motion

When attempting to demonstrate a likelihood of prevailing on the merits, a movant cannot simply rely on an unverified complaint or inadmissible evidence. *Zemaitis v. DuPage County Board of Election Commissioners*, No. 88 C 6301, 1988 U.S. Dist. Lexis 9469, *12 (N.D. Ill. Aug. 19, 1988) (denying injunction where "plaintiffs' complaint [was] unverified and no parties . . . submitted affidavits in support of their respective position"). Rather, "[e]vidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented . . ." *Id.* (citations omitted); *Illinois Council on Long Term Care v. Bradley*, 957 F.2d 305, 307 (7th Cir. 1992) (movant's burden is not a mere formality); *Kowalski v. Chicago Tribune Co.,* 854 F.2d 168, 170 (7th Cir. 1988).

Hearsay offered by a movant's counsel cannot be used to support a preliminary injunction. *Eyler v. Babcox,* 582 F. Supp. 981, 986 (D.C. Ill. 1983) ("As presented to the court by plaintiff's attorney, these allegations are no more than hearsay and therefore wholly insufficient to support the issuance of a preliminary injunction"). Extensive use of hearsay with respect to disputed factual issues supports denial of an injunction. *Marshall Durbin Farms, Inc. v. National Farmers Org., Inc.*, 446 F.2d 353, 357 (5th Cir. 1972) ("While we do not rule out the possibility that hearsay may form the basis for, or contribute to, the issuance of a preliminary injunction, the district courts have shown appropriate reluctance to issue such orders where the moving party substantiates his side of a factual dispute on information and belief").

***Here, Plaintiffs have offered no admissible evidence to establish the merits of their claims.*** As set forth in detail in the concurrently filed Evidentiary Objections, which are incorporated herein by reference in their entirety, Movants do not offer a single affidavit or declaration by *any* Ameriquest borrower regarding *any* topic, let alone any testimony that demonstrates that any Ameriquest borrower is entitled to rescission. To the contrary, Movants offer nothing more than hearsay declarations of counsel to support their attempt to demonstrate that they have a probability of prevailing on the merits. This lack of even a shred of evidence mandates denial of the extraordinary relief sought. Nonetheless, in an abundance of caution, Ameriquest will demonstrate that Movants' unsupported allegations are simply wrong.

### a.    Purported Blank NORTC Forms

Movants first argue – without admissible evidentiary support – that Ameriquest did not properly fill out the NORTC forms with respect to certain putative class members. In particular, Movants claim that in certain instances borrowers were given NORTCs that did not set forth the date that the rescission period expires as required by 12 C.F.R. §226.23(b)(1)(v). As "evidence", Movants offer a handful of unauthenticated, incomplete NORTC forms. Even if properly authenticated, however, these forms do not meet Movants' burden. Specifically, it is Ameriquest's policy and practice to comply with 12 C.F.R. §226(b)(1) by providing each borrower with two completed copies of the NORTC. [Declaration of Michael Gibson, ¶ 5.] As Movants' counsel should be well-aware, yet opted not to share with the Court, *Ameriquest has already provided declarant-attorney Daniel Blinn with 130[7] completed and signed* NORTC forms that correspond to the borrowers whose loan documents are attached to the attorney declarations offered by Movants. [*Id.*, Ex. 1.] By signing these documents, Movants admit that they have received two *completed* NORTCs. [*Id.*] Given sufficient time to review its files, Ameriquest is confident that it will locate signed NORTCs for the remaining borrowers at issue.

Moreover, the borrowers to whom Plaintiffs seek to send notice are those whose rescission rights have not yet expired. As of the filing of this Opposition, this would include only borrowers whose loans closed in mid-February 2003 forward. However, Ameriquest mandated the use of third party closing agents to conduct the signing of loan documents, including the NORTC, since September 2004. [Declaration of Vicky Camacho, ¶2.] Prior to that time, third party closing agents were used in the states of Texas and Georgia and as convenient to the parties in other states. [*Id.*] These independent agents have their own obligations to follow all applicable Federal and State laws in connection with the loan closings, and are paid for their services regardless of whether a loan closes. [*Id.*] Thus, their livelihood depends on proper and legal conduct and they have no incentive to provide blank NORTCs – to the contrary, their only incentive is to ensure full compliance with the law.

In short, Movants have not met their burden of demonstrating any probability of prevailing on the merits individually, or on a class-wide basis, as to the so-called "Incomplete Notice" borrower.

---

[7]   Ameriquest located 132 forms, but two of them were not provided to Mr. Blinn.

#### b.    Purported Incorrect NORTC Forms.

Movants also claim to need class-wide injunctive relief because Ameriquest allegedly issued an incorrect form of NORTC to 43 borrowers. Movants contend that these 43 borrowers were entitled to receive the TILA model form H-9 because they refinanced with the same lender, but instead received the H-8 form for use in initial transactions. Based on the use of the H-8 form, Movants argue that these 43 borrowers are entitled to rescind their loans.

In addition to the fact that Movants again offer no admissible evidence to support their claim that certain borrowers received one form or the other, they do not even address – through hearsay or otherwise – many of the prerequisites to each borrower having a right to cancel in the first place. For example, TILA provides a right to cancel only where the property secured by the mortgage is the borrower's "principal dwelling". 12 C.F.R. 226.23(a). Movants make no attempt to establish that the subject loans were secured by each borrower's principal dwelling. There is likewise no right to rescind where, as Movants argue was the case here, a lender refinances its own loan, unless the new loan amount "exceeds the unpaid principal balance, any earned unpaid finance charge . . . and amounts attributed solely to the costs of the refinancing . . ." 12 C.F.R. §226.23(f)(1). Movants again make no effort to establish that any new money was lent in connection with the 43 loans at issues.

However, even accepting as true that some or all of the 43 borrowers were issued an H-8 form where they:  (a) had a right to rescind, (b) the loan was an internal Ameriquest refinance loan, and (c) new funds were advanced (and there is no admissible evidence of any of this), use of the H-8 form alone does not give rise to a violation of TILA. *Veale v. Citibank, F.S.B.,* 85 F.3d 577 (11th Cir. 1996); *see also ContiMortgage Corp. v. Delawder*, 2001 Ohio App. LEXIS 3410 (Ohio Ct. App. 2001) ("TILA does not require perfect notice; rather, it requires a clear and conspicuous notice of rescission rights."); *Smith v. Highland Bank,* 108 F.3d 1325 (11th Cir. 1997). In *Veale, supra,* the borrowers obtained a mortgage loan from Citibank that paid off a loan previously owed to Citibank and two other mortgages from other lenders. After Citibank sued to foreclose, the borrowers attempted to rescind the loan under TILA. Citibank rejected the demand. After the foreclosure sale, plaintiffs sued in federal court alleging that Citibank violated TILA by, among other things, incorrectly providing them with an H-8 form at the time of loan closing. The district court entered judgment in Citibank's favor and the Eleventh Circuit affirmed, holding that issuance of the H-8 form did not violate TILA because the statute only

requires clear and conspicuous disclosure of rescission rights – which the H-8 form provided. *Id.* at 580. The Court reasoned that the contents of the form provided sufficient notice to plaintiffs that the current transaction could be canceled, and thus clearly and conspicuously advised plaintiffs of their rescission rights under TILA.

Here, as in *Veale*[8], the 43 borrowers who allegedly received the H-8 form were nonetheless clearly and conspicuously notified of their right to rescind their transaction with Ameriquest. Each was given sufficient notice that the current transaction could be canceled. Thus, under the well-reasoned holding in *Veale*, no violation of TILA occurred.

### B.      Movants Have An Adequate Remedy At Law.

By way of background, one of the primary purposes of TILA is to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit. 15 U.S.C. §1601(a). The Federal Reserve Board ("FRB") was empowered by Congress to carry out the purposes of TILA and did so through Regulation Z, found at 12 C.F.R. §226. The FRB determined the type of notices of the right to rescind that must be provided to satisfy TILA, when they must be provided, in what format, and how precisely the right to rescind must be exercised. These detailed procedures are set out clearly and comprehensively at 12 C.F.R. §226.23. There is *no* requirement that a borrower in foreclosure be given notice that there "*might*" have been a TILA violation in connection with their loan and that the borrower "*might*" have a right to rescind and that the borrower might want to pay an attorney to make this determination[9]. Put simply, the notice Plaintiffs seek to send is not authorized by TILA.

This is not to say that TILA does not provide remedies. To the contrary, Congress ensured that when a lender violates TILA, there are ample remedies available to the borrower. In

---

[8]   The two bankruptcy cases cited by Movants for a contrary proposition are distinguishable. *See In re Botelho,* 195 B.R. 558 (D. Mass. 1996) (borrower was given form H-9 instead of H-8, which may have discouraged rescission as it was not clear that borrower had the right to rescind the whole loan); *In re Stanley*, 315 B.R. 602 (Kan. 2004) (arguably no notice was given because lender used a form containing check-boxes for both H-8 and H-9 language and neither box was checked; case was remanded for a trial as to the equities of allowing rescission). Ameriquest acknowledges that the *Porter* case cited by Movants demonstrates a split of authority with *Veale*, but this split precludes Movants from demonstrating they are likely to succeed on the merits.

[9] Also, as set forth in the following section and the attached Appendix of State Law Foreclosure Protections, each state requires that ample notice be provided to defaulted borrowers before a foreclosure sale can take place. This double safe-harbor, created by both the federal and state legislatures, ensures that no foreclosure sale can take place without a borrower being given significant notice and incentive to act to protect their rights, if any.

addition to rescission rights, the benefits available include: *(a) actual damages, and (b) statutory damages*. 15 U.S.C. §§ 1635 & 1640. Thus, should Plaintiffs prevail at trial, they will have an adequate remedy at law in the form of actual and statutory damages, *and* if their subject loan was consummated within the prior three years, still retain an extended right to rescind. All of these remedies, are available to Plaintiffs whether or not the present relief is granted. Accordingly, Plaintiffs have adequate remedies – in fact they have the very same remedies – if this relief is denied.

Moreover, these remedies preclude Plaintiffs from obtaining injunctive relief. The civil remedies available under TILA do not include injunctive relief. 15 U.S.C. §§1635 and 1640. The exclusion of injunctive relief from the remedies enumerated in Sections 1635 and 1640 is conclusive that Congress did not intend to provide plaintiffs with this remedy for a TILA violation. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) ("where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."). By analogy, courts throughout the country have uniformly held that the federal Fair Credit Reporting Act ("FCRA"), which likewise contains no provision for injunctive relief, contains a "clear command" that FCRA does not allow private plaintiffs to seek injunctive relief under the provisions of that Act. *See Washington v. CSC Credit Services Inc.*, 199 F.3d 263 (5th Cir. 2000); *Baumgardner v. Lite Cellular, Inc.,* 996 F. Supp. 525, 527 (E.D. Va. 1998); *see also Zanni v. Lippold*, 119 F.R.D. 32 (C.D. Ill. 1988) (denying class certification for injunctive relief claim under the federal Fair Debt Collection Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act because no private remedy of injunctive relief under those acts).

In *Baumgardner, supra*, after obtaining a jury verdict in his favor on a FCRA claim, Plaintiff sought injunctive relief, demanding that the defendant company, among other things, implement certain policies and procedures to avoid the same wrongdoing in the future. The court held that it was not authorized to order injunctive relief under FCRA because injunctive relief was not expressly permitted by the Act. "While the FCRA does not expressly prohibit injunctive relief," the court explained, "Congress's failure to include injunctive relief as a potential remedy, combined with Congress's express delegation of enforcement of the FCRA to the FTC, clearly indicates that Congress did not intend injunctive relief as a remedy". *Id.* at 527.

The court further ruled that the request was for an order that defendant comply with the FCRA, which provides an adequate remedy at law for violations of that Act. *Id.* at 528.

TILA, like FCRA, does not authorize injunctive relief and the exclusion of this remedy is likewise a clear indication that Congress did not intend injunctive relief as a potential remedy. As in *Baumgardner*, TILA provides an adequate remedy at law for any violations and the absence of injunctive relief in the statutory scheme mandates denial of injunctive relief. This conclusion is even more compelling in the instant proceeding where – unlike in *Baumgardner* where the movant had already prevailed on the merits – Movants have not offered any admissible evidence in support of their claims.

### C.   Movants Cannot Establish That "Irreparable Injury" Will Result If The Unidentified Notice They Seek Is Not Mailed To Class Members.

It is beyond dispute that a movant must demonstrate "irreparable injury" in order to obtain injunctive relief. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 286 (7th Cir. 1984); *American Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980). Irreparable injury is that which cannot be prevented by final judgment after trial. *Id.* Here, as set forth in the preceding section, the relief sought does not prevent any harm that cannot be prevented by a final judgment in the unlikely event that Movants prevail at trial. The test is far more stringent where, as here, Movants seek issuance of a class-wide injunction. Specifically, Movants cannot obtain class-wide injunctive relief where they fail to demonstrate that *all* class members will be harmed absent the injunction. *Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3rd Cir. 2000).

In *Adams*, retirees brought ERISA claims against their employer alleging that it had misled them into thinking they would never have to pay premiums for health insurance and then later switched to a plan requiring payment of premiums. Movants moved for a preliminary injunction to require the company to continue funding the existing health plan pending trial. At the preliminary injunction hearing, 11 of the 136 plaintiffs testified that they would be harmed by the change of health care plans. *Id.* at 483-485. On the basis of this testimony, the district court concluded that "several" of the plaintiffs established immediate and irreparable harm and issued a preliminary injunction in favor of all of the plaintiffs. Defendants appealed.

Observing that "the law does not take judicial notice of matters of 'common sense,' and common sense is no substitute for evidence," the Third Circuit reversed the district court's ruling on the grounds that plaintiffs had failed to lay a foundation from which one could draw

inferences that the testifying plaintiffs are similarly situated in terms of irreparable harm. Because only a few plaintiffs testified that they had been harmed by the change in health care plans, there was insufficient grounds for issuance of a preliminary injunction protecting *all* plaintiffs. *Id.* at 487-88 (based on the "extraordinary nature of the preliminary injunction power" the court found that "in the absence of a foundation from which one could infer that all (or virtually all) members of a group are irreparably harmed, we do not believe that a court can enter a mass preliminary injunction.").

Similarly, in *Cooper v. TWA Airlines, LLC,* 274 F.Supp.2d 231, 242 (E.D. N.Y. 2003), flight attendants sought a class-wide preliminary injunction prohibiting defendant airline from implementing an agreement to furlough 1800 flight attendants. The Court denied the motion, concluding that class-wide relief was inappropriate without evidence that virtually all of the class members had been irreparably harmed. *Id.* at 242.

Here, the evidence is far less compelling than that in *Adams* or *Cooper*. Not even the named Movants have demonstrated that irreparable harm will result absent the mailing of the notice they hope to compel. First, Movants offer no admissible evidence to demonstrate anything – let alone irreparable harm. Second, the Movants from the *Murphy* case admit (albeit through hearsay) that any foreclosure sales of their property have been stayed. Third, by filing their respective lawsuits, the named Movants have admitted that the notice they seek to compel will have no effect on them – their alleged rights are being protected.

Moreover, with respect to each class loan, Ameriquest either violated section 12 C.F.R. §226.23(b) or it did not. If, after trial, it is determined that there was a violation with respect to any particular loan, and all other prerequisites to rescission are met, that loan must be rescinded. 12 C.F.R. §226.23(a)(3). Whatever notice Movants seek to compel will have no effect on whether any particular borrower has an extended right to rescind. Put another way, any purported harm will have occurred at the time the allegedly improper rescission notice was provided. Movants merely hope to advise class members of this purported harm – not to stop it. Thus, there is no "injury" – let alone an "irreparable injury" – that any notice will alleviate and Movants cannot satisfy their burden of demonstrating this element on a class-wide basis or otherwise.

1.    **The Foreclosure Laws of Each State Provide Overwhelming Due Process Protections.**

Movants apparently contend that irreparable injury will occur because, absent the unspecified notice they seek to send, class members "will lose the opportunity to defend foreclosures". [Opposition, p. 13.] While Movants do not identify any borrower facing imminent foreclosure (again belying any claim of likely injury), they further do not explain how the absence of the notice they seek to send will cause borrowers "to lose the opportunity to defend foreclosures". There is not a state in the nation that allows foreclosure sales without notice to the borrower. To the contrary, borrowers are well-protected by state law and have ample notice and opportunity to investigate and assert any and all defenses they may have against foreclosure.

For example, in California, a borrower must receive at least 110 days and multiple notices before a non-judicial foreclosure sale may take place. *Cal. Code Civ. Pro.* §§2924c & 2924f, *et seq*. In the case of a judicial foreclosure sale, the borrower not only receives notice and an opportunity to defend through the ordinary judicial process, but further has a full year within which to redeem the loan. *Id.* at §580.03. In Michigan, a judicial foreclosure cannot take place earlier than six months after the filing of the complaint and the borrower then has six months from the sale to redeem the loan. MCLA §§600.3115 & 600.3140. A nonjudicial foreclosure sale requires four advertised notices, posting of the notices on the property and, with limited exceptions, a full year right of redemption. *Id.* §§3201-3280. Many states require that a formal lawsuit be filed and brought to judgment before a foreclosure sale can be held. A summary of the protections afforded by each state's foreclosure laws is set forth in the attached Appendix of State Law Foreclosure Protections.

If a borrower chooses to sit on his rights in the face of these multiple legal notices, that borrower is not going to be moved by yet another notice. And are Plaintiffs really arguing that application of these comprehensive statutory schemes results in imminent and irreparable harm to borrowers? Given the notices required by various state laws, every borrower facing foreclosure has ample incentive to investigate whether they have defenses to a pending foreclosure and whether their rights are protected. Thus, any additional notice – while wholly unauthorized under any statute or common law – does not add anything to the rights borrowers already have and its mailing will not prevent any harm, irreparable or otherwise, that was not already prevented by state law.

### D. THE HARDSHIPS DO NOT TIP – DECIDEDLY OR OTHERWISE – IN MOVANTS' FAVOR

While Movants argue that there will be "little hardship" to Ameriquest if an injunction is granted, they notably do not specify *any* hardship that will be suffered by class members if injunctive relief is denied. [Motion, p. 14.] Instead, Movants assert that the class should receive their proposed notice "in order to allow those individuals a fair opportunity to evaluate their options". [Motion, p. 14.] As set forth above, however, any class member who is facing foreclosure will receive ample notice and opportunity pursuant to their own states' laws to assert any defenses to that foreclosure. If injunctive relief is denied, class members will not lose any rights – all defenses to foreclosure will remain. Movants cannot argue that a borrower who sits on his or her rights in the face of state law foreclosure notices will somehow be harmed by not receiving yet another notice that is wholly unauthorized by any state or federal law.

Ameriquest, on the other hand, will suffer multiple hardships if the requested relief is granted – particularly since Movants have offered no admissible evidence to support the merits of their allegations. First, Ameriquest is likely to see a rash of improper requests for rescission, placing an extreme burden on its employees to investigate and respond to meritless requests. Second, Ameriquest will suffer negative publicity and lose goodwill with otherwise happy customers if a blanket notice is sent out advising borrowers to rescind their loans for possible TILA violations. Third, if foreclosure sales are delayed for 30 days, Ameriquest will suffer a financial burden in that it will incur holding costs. In light of the foregoing, Plaintiff has not, and cannot establish that the balance of hardships tips in its favor at all and, again, the requested relief should be denied.

### E. PUBLIC POLICY

Movants argue that the public policy reason for granting injunctive relief is the "preservation of the opportunity to rescind", a policy that they argue arises from 15 U.S.C. section 1635(i). Ameriquest does not disagree that TILA affords a right of rescission in appropriate cases, however, Movants ignore the fact that TILA very deliberately and comprehensively proscribes when, how and under what circumstances, that right may be exercised. If Congress had wanted TILA to afford the type of injunctive relief that Movants now seek, it would have included a provision for that in the statutory scheme. *See, e.g., Transamerica Mortgage Advisors, supra*, 444 U.S. at 20.

To the contrary, particularly since Movants have not offered any admissible evidence to support the merits of their claim, the notice Movants hope to send will do nothing than cause confusion among Ameriquest borrowers. As demonstrated by Section III above, Ameriquest is likely to prevail on the merits and encouraging borrowers to rescind when they do not have the right to do so will only create confusion and place an undue burden on Ameriquest in administering to meritless rescission requests. It may also encourage borrowers who are current on their loans to stop making payments, putting them in a worse position than they would have been in the absence of the requested injunctive relief. Or worse yet, paying for a lawyer to tell them that they do not have any rescission rights. Thus, rather than purportedly protecting borrowers from foreclosure, Movants' injunctive relief may very well result in additional foreclosures and borrower expense. As such, public policy dictates a denial of injunctive relief.

## V.    **CONCLUSION**

For the foregoing reasons, Ameriquest respectfully requests that the Court deny the Motion in its entirety.

DATED: February 14, 2006                     BUCHALTER NEMER
                                           A Professional Corporation


                                           By: /s/ Bernard E. LeSage
                                               *Attorneys for Defendants Ameriquest*
                                               *Mortgage Company, Ameriquest Capital*
                                                 *Corporation and Argent Mortgage Company*

**Appendix 1**

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| ALABAMA | 30 days if the mortgage document is silent as to character or mode of notice | 4 | Publish notice once a week for four consecutive weeks in a newspaper published in the county wherein the property is situated | Alabama Statute §35-10-2 |
| ALASKA | Not less than 30 days after the default and not less than 3 months before the sale | 1 | Within 10 days after recording the notice of default, the trustee shall mail a copy of the notice by certified mail or deliver personally | Alaska Statute §34.20.070 |
| ARIZONA | 90 days | 1 | Not later than 30 days after recording the notice of sale, the trustee must mail, by certified or registered mail, postage prepaid, a copy of the notice reflecting the recording date. Within 5 business days after recording the notice of sale, the trustee must mail by certified or registered mail, postage prepaid, a copy of the notice to each party to the trust deed other than the trustee | Arizona Statute §§33-807(D), 33-809(B), (C). |
| ARKANSAS | 60 days after recording notice of default | 1 | Within 30 days of recording, the notice of default and intention to sell must be mailed by certified mail, postage prepaid, and by first-class mail, postage prepaid | Arkansas Code §§15-50-103, 15-50-104(b) |
| CALIFORNIA | 3 months after recording notice of default | 1 | Within 10 business days after recording the notice of default, the trustee or mortgagee must send, by registered or certified mail, postage prepaid, the notice of default with the recording date. At least 20 days before the sale, the trustee or mortgagee must send by registered or certified mail, postage prepaid, a copy of the notice of time and place of sale. Within 1 month after recording the notice of default, the mortgagee or trustee must send by registered or certified mail, postage prepaid, a copy of the notice of default with the recording date thereon. | Cal. Civ. Code §§2924, 2924b |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | | | When trustee or mortgagee mails the notices to the trustor or mortgagor by registered or certified mail, trustor or mortgagee must simultaneously mail them by first-class U.S. mail, postage prepaid to the same address(es). The trustee or mortgagee must execute and retain an affidavit that identifies the notice mailed, shows the name and address of the affiant that he or she is over 18 years old, the date of mailing, the name and address of the trustor or mortgagor to whom sent, and states that the envelope was sealed and deposited in the mail with postage fully prepaid. | |
| **COLORADO** | For mortgages recorded after January 1, 2002, no more than 55 days after recording notice of demand or initiation of a suit for foreclosure and at least twenty days prior to the recording | 1 | Provide written notice of the default and an opportunity to cure | Colo. Rev. Stat. §38-38-102.5(2) |
| **CONNECTICUT** | Connecticut is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | Conn. Statutes §§49-31d – 49-31i |
| **DELAWARE** | In Delaware, foreclosure is conducted pursuant to a writ of scire facias, rather than pursuant to a power-of- | | | 25 Del. Code §§2101 et seq. |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | sale clause | | | |
| **DISTRICT OF COLUMBIA** | 30 days before the sale date a copy of the notice must be sent to the Mayor of the District of Columbia | 1 | Written notice by certified mail, return receipt requested of the sale to the owner of the property encumbered by the deed of trust or mortgage | D.C. Code Ann. § 42-815(b). |
| **FLORIDA** | Florida is a judicial foreclosure state | n/a | Petitioner or petitioner's attorney's responsibility to place advertisement, publication, or notice relating to a foreclosure in a newspaper. | Florida Statute § 702.035 |
| **GEORGIA** | No later than 15 days before the date of the proposed foreclosure | 1 | Notice shall be in writing and shall be sent by registered or certified mail or statutory overnight delivery with the return receipt requested. The notice required by subsection (a) of this Code section shall be given by mailing or delivering to the debtor a copy of the published legal advertisement or a copy of the notice of sale submitted to the publisher | Ga. Code Ann. § 44-14-162.2 |
| **HAWAII** | Not less than 30 days before the day of sale | 3 | By publication of the notice once in each of three successive weeks, in a newspaper having a general circulation in the county in which the mortgaged property lies. Copies of the notice shall be filed with the state director of taxation and shall be posted on the premises not less than 21 days before the day of sale. | Haw. Stat. §§667-5, 667-22 |
| | | | Alternate Power of Sale Foreclosure: Written notice of default to borrower | |
| **IDAHO** | Subsequent to recording notice of default and at least 120 days before the day of sale | Three good faith attempts shall be made on different days | Notice shall be given by registered or certified mail with return receipt requested. The notice must also be posted and published | Idaho Statutes §§ 45-1505, 45-1506 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|-------|------------------|---------------|----------------|---------|
| | | over a period of not less than seven days each, which attempts must be made at least 30 days prior to the day of the sale | | |
| ILLINOIS | Illinois is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | 735 ILCS 5/15-1101 et seq. |
| INDIANA | Indiana is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | Ind. Code 32-30-10-1 et seq. |
| IOWA | 30 day notice | | Written notice | Iowa Code § 655A.3 |
| KANSAS | Kansas is a judicial foreclosure state | | All foreclosure sales conducted through ordinary judicial process | |
| KENTUCKY | n/a. In Kentucky the remedy for default is an action to enforce a lien | | | |
| LOUISIANA | Louisiana is a judicial foreclosure | | All foreclosure sales conducted through ordinary judicial process | |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | state | | | |
| **MAINE** | Maine is a judicial foreclosure state | | All foreclosure sales conducted through ordinary judicial process | |
| **MARYLAND** | Foreclosure in Maryland requires judicial action. | | All foreclosure sales conducted through ordinary judicial process | |
| **MASSACHUSETTS** | 30 days | 3 | Publish the notice once in three successive weeks with the first publication to be not less than 21 days before the day of the sale in a newspaper which is published in the town where the land lies or in a newspaper with general circulation in the town where the land lies. The notice must be sent by registered mail 30 days prior to the date of sale. Notice needs to be mailed at least 14 days prior to the date of sale. | Mass. Gen. Laws Ch. 244 § 14 |
| **MICHIGAN** | 4 weeks | 4 | Notice by publishing for 4 successive weeks at least once in each week, in a newspaper published in the county where the premises intended to be sold. Within 15 days after the first publication of the notice, a true copy shall be posted in a conspicuous place upon any part of the premises described in the notice. | Mich. Comp. Laws §600.3208 |
| **MINNESOTA** | 4 weeks | 1 | Notice shall be served in like manner as a summons in a civil action by 6 weeks' published notice and at least 4 weeks before the appointed time of sale. A foreclosure advice notice must be served simultaneously with the notice of foreclosure. | Minn. Stat. §§580.03, 580.041 |
| **MISSISSIPPI** | 3 weeks | 3 | Advertised for 3 consecutive weeks in a newspaper published in the county and by posting one notice at the courthouse of the county where the land is situated. | Miss Code § 89-1-55 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| MISSOURI | 20 days | 20 | By advertising at least 20 times, and continuing to the day of the sale in daily newspaper. Sending notice of sale by certified mail not less than 20 days prior to the scheduled date of the sale. | Mo. Stat §§443.310, 443.320 , 443.325 |
| MONTANA | 120 days | 1 | A copy of the recorded notice of sale shall be mailed by registered or certified mail . At least 20 days before the date fixed for the trustee's sale, a copy of the recorded notice of sale shall be posted in some conspicuous place on the property to be sold. Notices of sale must also be served personally at least 30 days before the sale date on the occupant of the property, the mortgagor (if in Montana), and every other person having or claiming an interest of record. | Mont. Stat §§71-1-315, 71-1-224. |
| NEBRASKA | Prior to sale and not less than one month before giving notice of sale, the trustee must file for record a notice of default. | 1 | Not later than 10 days after recording the notice of default, the trustee must mail by registered or certified mail, postage prepaid, to each person who is party to the trust deed (at the address provided in the trust deed) and to each person who has properly recorded a request for notice (to the address identified in the request). At least 20 days before the sale date, the trustee must mail by registered or certified mail, postage prepaid, a copy of the notice of the time and place of sale to each party to the trust deed and to each person who has properly recorded a request. | Neb. Rev. Stat §76-1006 §76-1008(2) and (3) |
| NEVADA | Not less than 3 months before the sale, the trustee must record a notice of breach and his or her election to sell the property to satisfy the obligation | 1 | 35 days from the day on which the notice of default is recorded and a copy is mailed by registered or certified mail, return receipt requested, postage prepaid, to the trustor and to the person who holds the title of record, to their respective addresses, if known, otherwise to the property address. | Nev. Rev. Stat §107.080(2) §107.080(3) §107.080(4) §107.085(2) & (3) |
| | | | Within 10 days after recording and mailing the notice of default as described above, the trustee must send by registered | §107.085(3) |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|-------|------------------|---------------|----------------|---------|
| | | | or certified mail, return receipt requested, postage prepaid, a copy of the notice to each person who has properly recorded a request therefore and to each person with an interest subordinate to the deed of trust. | §107.090(3) §107.090(4) §107.095 |
| | | | At least 15 days before the expiration of the 35-day period or any extension of that period, the notice of default must also be sent by registered or certified mail, return receipt requested, postage prepaid, to each guarantor or surety of the debt. | |
| | | | After the 3-month period following the recording of the notice of breach, and before the sale, the trustee must give notice of the time and place of the sale by recording the notice and by providing it to each trustor and any other person entitled thereto by personal service or mailing by registered or certified mail to the last known address. | |
| | | | At least 20 days before the sale date, the trustee must send by registered or certified mail, return receipt requested, postage prepaid, a copy of the notice of time and place of sale to each person who has properly recorded a request therefore and to each person with an interest subordinate to the deed of trust. | |
| **NEW HAMPSHIRE** | 25 days before the sale to the mortgagor. 30 days before the sale to any holder of a lien of record on the property, provided that the lien is recorded. | 1 | A copy of a notice of sale must be sent by registered or certified mail | N.H. Rev. Stat §479:25(II) |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| NEW JERSEY | New Jersey is a judicial foreclosure state | | All foreclosure sales conducted through ordinary judicial process | |
| NEW MEXICO | New Mexico is a judicial foreclosure state | | All foreclosure sales conducted through ordinary judicial process | |
| NEW YORK | Notice of Intention to foreclose: 10 days prior to the first service of the notice of sale, and 10 days after commencing the non-judicial proceeding by filing the notice of pendency. Notice of Sale: 30 days before the date of sale. | 1 | Notice of Intention: Registered mail or certified mail and ordinary first class mail or by personal service. Notice of Sale: by delivering a copy or by mailing an additional copy by first class mail in an envelope bearing "personal and confidential" and not indicating on the outside, by return address or otherwise, that the communication is from an attorney. | NY CLS RPAPL §1402 §1406 |
| NORTH CAROLINA | At least 20 days before the date of sale | 1 | Mailed, by first-class mail to (1) any person to whom the security instrument directs that notice to be sent, (2) any person obligated to repay the indebtedness against whom the holder intends to assert liability, and (3) every record owner of the property whose interest is of record. Notice must also be sent by first-class mail to anyone who has properly made a request for notice. Notice of the hearing before the Clerk of Court may satisfy these requirements if it contains the information required to be included in a notice of sale. | N.C. Gen. Stat §45-21.16 §45-21.17(4) |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| NORTH DAKOTA | North Dakota is a judicial foreclosure state | | All foreclosure sales conducted through ordinary judicial process | |
| OHIO | Ohio is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | |
| OKLAHOMA | Foreclosure under a power-of-sale clause is not permitted if, at least 10 days before the sale, the mortgagor sends the mortgagee written notice that the property is his/her homestead and that he or she has elected judicial foreclosure | 1 | Notice of intention to foreclose must be given to the mortgagor by certified mail directed to his or her last-known address | 46 Okla. Stat. §§43, 44 |
| OREGON | After recording the notice of default and at least 120 days before the sale | | Notice of sale must be served or mailed by first-class and certified mail, return receipt requested, to the last-known address of the grantor, any successor in interest to the grantor whose interest appears of record or of which the trustee has actual notice, any person (including the Department of Revenue or other state agency) who has a lien or interest subsequent to the trust deed if the lien or interest appears of record or the beneficiary has actual notice and any person who has properly requested the notice.

The notice of sale must also be served on the occupant of the property at least 120 | Or. Rev. Stat. §86.740(1) §86.735 §86.750 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | | | days before the sale. | |
| PENNSYLVANIA | Pennsylvania is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | |
| RHODE ISLAND | At least 20 days (for mortgagors other than individual consumer mortgagors) and 30 days (for individual consumer mortgagors) before the first publication of notice of sale | 1 | A written notice of the time and place of sale must be mailed to the mortgagor by certified mail, return receipt requested, directed to the property address and, if different, the mortgagor's address listed with the tax assessor's office | R.I. Gen. Laws §34-27-4 |
| SOUTH CAROLINA | South Carolina is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | |
| SOUTH DAKOTA | At least 21 days before the sale date | 1 | Serve the notice of foreclosure on the mortgagor and any lien holder whose interest will be affected by the foreclosure | S.D. Dodified Laws §21-48-6 |
| TENNESSEE | Foreclosure under the power of sale is by advertisement. The First publication shall be made at least 20 days prior to the sale | 3 | Publication | Tenn. Code Ann §35-5-101 |
| TEXAS | At least 21 days before the sale date | 1 | Notice of the sale must be given by posting at the courthouse door, filing with the county clerk, and serving the written notice by certified mail on each debtor | Tex. Prop. Code §51.002 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | | | obligated to pay the debt | |
| UTAH | Not later than 10 days after recording the notice of default,<br><br>At least 20 days before the sale date | | Notice of default: the trustee must mail a signed copy of the notice, by certified or registered mail, postage prepaid, with the recording date shown to each person who has properly requested notice.<br><br>The trustee must mail a signed copy of the notice of time and place of sale, by certified or registered mail, return receipt requested, postage prepaid, to each person who has properly requested notice.<br><br>The trust deed may include a request that a copy of notices of default and notice of sale be mailed to any person who is a party to the trust deed. Copies of such notices must be mailed to these persons at the same time and in the same manner as set forth above, except that the trustee must include with the signed copy of the notice of default and the signed copy of a notice of sale, the following: (1) trustee's name, (2) trustee's mailing address, (3) if the trustee has a bona fide office in the state, the address of that office, (4) the hours when the trustee may be contacted about the notices, and (5) a phone number to contact the trustee.<br><br>If the trustor's address is not included in the trust deed and no request for notice by the trustor has been recorded, then no later than 15 days after recording the notice of default, a copy of that notice must be mailed to the address of the property described in the notice or posted on the property | Utah Code Ann. §57-1-24<br><br>§57-1-26 |
| VERMONT | At least 30 days prior to publication of a notice of sale, notice of intention to | | Notice of intention to foreclose in writing must be sent to the mortgagor by registered or certified mail at his or her last known address | 12 Vermont Stat. Ann. §4532 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | foreclose and in must be sent to the mortgagor | | | |
| WASHINGTON | At least 90 days before the sale, the trustee must record the notice of sale. At least 30 days before recording, transmitting, or serving a notice of sale, the trustee must send the borrower and grantor a notice of default. | | | Wash. Rev. Code § 61.24.030(7). §61.24.040(1)(b) §61.24.040(1)(d) §61.24.040(1)(f) |
| WEST VIRGINIA | The notice must also be served at least 20 days before the sale | 1 | A copy of the notice of sale must be served on the grantor, by certified mail, return receipt requested, at the address shown on the trust deed or such other address given to the beneficiary in writing by the grantor. The notice must also be served at least 20 days before the sale, by certified mail, on any subordinate lien-holder who has previously notified the primary lien-holder of the existence of the subordinate lien. | West. Va. § 38-1-4. |
| WISCONSIN | Wisconsin is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | |
| WYOMING | At least 10 days before publication of | 4 | A written notice of intent to foreclose by advertisement and sale must be served on | Wyo. Stat. Ann § 34-4-105 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | notice of sale | | the record owner and the person in possession of the property by certified mail, return receipt requesting directed to the last known address | § 34-4-103. § 34-4-104(a) |
| | | | Also, prior to the first date of publication, a copy of the notice of sale must be served by certified mail, return receipt requested, on the record owner, person in possession of the property, and all holders of recorded subordinate mortgages and liens. This notice must be sent to the last known address, which is deemed the address in the mortgage or lien filed of record unless another address has been recorded or provided to the foreclosing mortgagee or lien-holder. | |