## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before the Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | [Oppositions to Motions for Class Certification and Preliminary Injunction; Declarations of Michael Gibson, Vicky Camacho and Bernard LeSage; Request for Judicial Notice; and Evidentiary Objections filed concurrently herewith] |

### DEFENDANT AMERIQUEST MORTGAGE COMPANY'S BRIEF REGARDING THE MAILING OF NATIONWIDE NOTICE OF POSSIBLE RESCISSION RIGHTS

### I.     SUMMARY OF AMERIQUEST'S POSITION

At the April 7, 2006 Status Conference in this Multi-District Litigation ("MDL Action"), the Court initially indicated that it would forego ruling on substantive issues until the status of the approximately 60 (and growing) potential tag-along actions had been determined so that all effected parties could be heard before significant global issues are decided.

Plaintiffs, however, had previously filed a motion for provisional certification of a "rescission class" and a motion for mandatory injunctive relief pursuant to which an unspecified notice would be sent to the "rescission class" and Ameriquest would stay its foreclosure sales for 30 days.  At the urging of counsel for some of the Plaintiffs, the Court then ordered that the parties meet and confer over the relief sought and report back to the Court later that day.

Plaintiffs' counsels' purported concern was that borrowers who are not before this Court *might* have a right to rescind their Ameriquest loans because Ameriquest *might* have violated the Truth in Lending Act ("TILA") by providing some borrowers with (a) a TILA Notice of Right to Cancel form ("NORTC") that did not have the last day to cancel the loan filled-in; or (b) in the case of internal Ameriquest refinance loans, a NORTC in a form that Plaintiffs contend was

1

case of internal Ameriquest refinance loans, a NORTC in a form that Plaintiffs contend was incorrect[1]. Plaintiffs argued that the extended three-year rescission right afforded for actual TILA violations (as opposed to the unproven TILA violations alleged here) might expire before the Court makes a substantive ruling[2].

As an initial matter, Plaintiffs' sense of urgency is belied by the fact that they could have sought this very same relief at any time over the last *fourteen months* in the transferred case of *Murphy v. Ameriquest* which raises these very same issues and was filed in December *2004*. Nonetheless, in an effort to address Plaintiffs' concerns, Ameriquest offered significant concessions at the Status Conference and stipulated that no rescission rights would expire due to a lapse of TILA's three-year statute of limitation pending a ruling on the merits of Plaintiffs' Motion for Preliminary Injunction ("Motion"). This standstill agreement was read into the record on February 7, 2006.

Although the Stipulation addresses Plaintiffs' concern and maintains the status quo pending a ruling on the Motion, Plaintiffs seek the extraordinary additional relief of the mailing of a notice – wholly unauthorized by TILA – to borrowers not before this Court who are in foreclosure whether or not they have a valid right to rescind. To the best of Ameriquest's knowledge, Plaintiffs want the notice to advise borrowers that they *might* have the right to rescind their loan. While this smacks more of marketing than consumer protection – particularly in light of the timing – there is simply no basis for affording Plaintiffs this type of mandatory injunctive relief on behalf of an uncertified class.

In fact, once mailed, the notice sought by Plaintiffs cannot be recalled, even if the Court ultimately determines that Plaintiffs' motion for a mandatory preliminary injunction is without

---

[1]  Moreover, Ameriquest's files demonstrate that there was no widespread failure to comply with TILA. In fact, the opposite is true.  [See, Declaration of Michael Gibson filed concurrently herewith.]

[2] It is important to remember that the express purpose of TILA, as set forth in more detail in section III(B) below, is to "assure a meaningful disclosure of credit terms". 15 U.S.C. §1601. Congress and the Federal Reserve Board have provided a comprehensive statutory scheme and remedy provisions that do not authorize the type of notice Plaintiffs seek but do provide ample remedies at law for its violations. 12 C.F.R. §226.23; 15 U.S.C. §1635, 1640.

merit. In that case, it would be Ameriquest who would suffer the irreparable harm in the form of a disparaging notice, a rash of meritless rescission requests and the significant attendant costs of administering to such requests. Borrowers are likely to suffer as well. Those who might otherwise have properly brought their loan payments current to stop a foreclosure might opt instead for a meritless rescission only to find themselves either deeper in debt or foreclosed upon. Moreover, the notice is likely to encourage borrowers to pay for an attorney to advise them that, as Ameriquest already knows, they do not have any right to rescind.

Since, if Plaintiffs' request is granted, the bell cannot be unrung, Ameriquest requests that the Court turn directly to the merits of the Motion for Preliminary Injunction. To this end, the parties stipulated that Ameriquest's Opposition should be filed concurrently with the present briefs and Ameriquest incorporates its Opposition to Plaintiffs' Motion for Provisional Class Certification and Opposition to Plaintiffs' Motion for Preliminary Injunction herein by reference as if set forth in full and respectfully requests that each of Plaintiffs' requests be denied in their entirety. Should the Court decline to consider the merits of the Motion for Preliminary Injunction, Ameriquest nonetheless requests that the present request for interim relief be denied.

## II. APPLICABLE STANDARD

What Plaintiffs essentially seek here is a temporary restraining order pending a ruling on their Motion for Preliminary Injunction. Regardless of whether characterized as a temporary restraining order or a preliminary injunction, Plaintiffs' burden is the same. Plaintiffs must demonstrate: (a) a reasonable likelihood of prevailing on the merits, (b) no adequate remedy at law, (c) irreparable harm if the relief is not granted, (d) the balance of hardships tips in Plaintiffs' favor, and (e) that the relief will not harm the public interest. *Pattern Makers' Pension Trust Fund v. The Erler Corporation*, 1992 U.S. Dist. LEXIS 10193, *2-3 (N.D. Ill. 1992) (applying same standard to both temporary restraining order and preliminary injunction); *Caterpillar Inc. v. The Walt Disney Company,* 287 F.Supp.2d 913, 916 (C.D. Ill. 2003) (same).

Plaintiffs do not, and cannot, meet their burden of establishing a reasonable likelihood of success on the merits of the underlying claim because, *inter alia*, their Motion: (a) fails to offer a

shred of admissible evidence to support the merits of their claim, and (b) even if they prevail on the merits they cannot obtain the relief they seek. Plaintiffs likewise cannot establish that there is no adequate remedy at law because TILA itself offers a multitude of remedies for its violation. No irreparable harm will result in the absence of the injunction the Plaintiffs seek because both TILA and each borrower's state laws provide an abundance of due process before a foreclosure sale can be held. Finally, both the balance of hardships and public policy considerations weigh heavily in Ameriquest's favor. As such, Ameriquest respectfully requests that any temporary relief be denied.

## III.   PLAINTIFFS CANNOT MEET THE HEIGHTENED BURDEN OF PROOF REQUIRED TO OBTAIN A TEMPORARY RESTRAINING ORDER THAT COMPELS MANDATORY RELIEF

### A.     Plaintiffs Cannot Establish Any Likelihood of Prevailing on the Merits

To begin with, Plaintiffs have not offered any admissible evidence in support of their Motion for Preliminary Injunction. Assuming their simultaneously filed brief regarding the present relief likewise fails to offer any admissible evidence, their request must be denied on that ground alone for the reasons set forth in Ameriquest's Opposition to that Motion. *Zemaitis v. DuPage County Board of Election* Commissioners, 1988 U.S. Dist. Lexis 9469, *12 (1988 N.D, Ill.) (denying injunction where "plaintiffs' complaint [was] unverified and no parties . . . submitted affidavits in support of their respective position"); *Illinois Council on Long Term Care v. Bradley,* 957 F.2d 305, 307 (7th Cir. 1992) (movant's burden is not a mere formality); *Kowalski v. Chicago Tribure Co.,* 854 F.2d 168, 170 (7th Cir. 1988).

Moreover, disregarding the evidentiary flaws, Plaintiffs' allegations, even if true, would not result in a finding of liability either with respect to the purportedly blank NORTCs or the purportedly "incorrect" NORTCs.

### 1.     Purported Blank NORTC Forms

Plaintiffs argue that Ameriquest did not properly fill out the NORTC forms with respect to certain borrowers who are not before this Court – i.e. borrowers who Plaintiffs contend should

be a part of a class or subclass in this case. In particular, Plaintiffs claim that in certain instances borrowers were given NORTCs that did not set forth the date that the rescission period expires as required by 12 C.F.R. §226.23(b)(1)(v). Plaintiffs then contend that these borrowers are entitled to an extended three-year rescission period under TILA and that an unspecified notice should be provided prior to any foreclosure sale so that they can determine whether or not they have a right to rescind their loans and, if so, whether to exercise that right.

Plaintiffs have not, and cannot, prove that Ameriquest systematically violated TILA and have offered no admissible evidence of this allegation. Rather, in their Motion, Plaintiffs offer a handful of unauthenticated, incomplete NORTC forms. As set forth in Ameriquest's concurrently filed Opposition, it is Ameriquest's policy and practice to comply with TILA by providing each borrower with two completed NORTC forms. [Declaration of Michael Gibson, ¶ 5.] Ameriquest located completed NORTCs in 132 of the 134 files at issue. [Id., Ex. 1.] And, by signing these documents, each borrower acknowledged receipt of two *completed* NORTCs in compliance with TILA. [Id.] Given sufficient time to review its files, Ameriquest is confident that it will locate signed NORTCs for each relevant borrower.

Moreover, the borrowers to whom Plaintiffs seek to send notice are those whose rescission rights have not yet expired. As of the filing of this Opposition, this would include only borrowers whose loans closed in mid-February 2003 forward. However, Ameriquest implemented the mandatory use of third party closing agents to conduct the signing of loan documents, including the NORTC, in September 2004. [Declaration of Vicky Camacho, ¶2.] Prior to that time, third party agents were used in the states of Texas and Georgia and as convenient to the parties in other states. [Id.] These independent agents have their own obligations to follow all applicable Federal and State laws in connection with the loan closings, and are paid for their services regardless of whether a loan closes. Thus, their livelihood depends on proper and legal conduct and they have no incentive to provide blank NORTCs – to the contrary, their only incentive is to ensure full compliance with the law. [Id.] In addition, each closing agent would have to be deposed before there could be a finding that any particular loan

5

suffers from this type of TILA defect. This practice belies any claim of a systemic flaw in Ameriquest's lending practices.

In short, Plaintiffs have not met their burden of demonstrating any probability of prevailing on the merits individually, or on a class-wide basis, as to the so-called "Incomplete Notice" borrower.

### b.    Purported Incorrect NORTC Forms

Plaintiffs also claim to need injunctive relief because Ameriquest allegedly issued an incorrect form of NORTC to 43 borrowers. Plaintiffs contend that these 43 borrowers were entitled to receive the TILA model form H-9 because they refinanced with the same lender, but instead received the H-8 form for use in initial transactions. Based on the use of the H-8 form, Plaintiffs argue that these 43 borrowers are entitled to rescind their loans.

First, disregarding the fact that Plaintiffs have offered no admissible evidence to establish that any borrower received an allegedly incorrect form, Plaintiffs outright ignore many of the prerequisites to these borrowers having a right to cancel in the first place. For example, TILA provides a right to cancel only where the property secured by the mortgage is the borrower's "principal dwelling". 12 C.F.R. 226.23(a). Plaintiffs make no attempt to establish that the subject loans were secured by each borrower's principal dwelling. There is likewise no right to rescind where, as Plaintiffs argue was the case here, a lender refinances its own loan, ***unless*** the new loan amount "exceeds the unpaid principal balance, any earned unpaid finance charge . . . and amounts attributed solely to the costs of the refinancing . . ." 12 C.F.R. §226.23(f)(1). Plaintiffs again make no effort to establish that any new money was lent in connection with the 43 loans they presented in their moving papers.

However, even accepting as true that some or all of the 43 borrowers were issued an H-8 form where they (a) had a right to rescind, (b) the loan was an internal Ameriquest refinance loan, and (c) new funds were advanced (and there is no admissible evidence of any of this), use of the H-8 form alone does not give rise to a violation of TILA. *Veale v. Citibank*, 85 F.3d 577 (11th Cir. 1996); *see also ContiMortgage Corp. v. Delawder*, 2001 Ohio App. LEXIS 3410

(Ohio Ct. App. 2001) ("TILA does not require perfect notice; rather, it requires a clear and conspicuous notice of rescission rights."); *see also Smith v. Highland Bank*, 108 F.3d 1325 (11th Cir. 1997). In *Veale, supra*, the Eleventh Circuit considered this very issue and held that issuance of the H-8 form did not violate TILA because the statute only requires clear and conspicuous disclosure of rescission rights – which the H-8 form provided. *Id.* at 580.

Here, as in *Veale*, any borrower who allegedly improperly received the H-8 form was nonetheless clearly and conspicuously notified of the right to rescind the transaction and under the well-reasoned holding in *Veale,* no violation of TILA occurred.

### B.    Plaintiffs Have An Adequate Remedy At Law

By way of background, one of the primary purposes of TILA is to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit. 15 U.S.C. §1601(a). The Federal Reserve Board ("FRB") was empowered by Congress to carry out the purposes of TILA and did so through Regulation Z, found at 12 C.F.R. §226. The FRB determined the type of notices of the right to rescind that must be provided to satisfy TILA, when they must be provided, in what format, and how precisely the right to rescind must be exercised. These detailed procedures are set out clearly and comprehensively at 12 C.F.R. §226.23. There is *no* requirement that a borrower in foreclosure be given notice that there "*might*" have been a TILA violation in connection with their loan and that the borrower "*might"* have a right to rescind and that the borrower might want to pay an attorney to make this determination[3]. Put simply, the notice Plaintiffs seek to send is not authorized by TILA.

This is not to say that TILA does not provide remedies. To the contrary, Congress ensured that when a lender violates TILA, there are ample remedies available to the borrower. In

---

[3] Also, as set forth in the following section and the attached Appendix of State Law Foreclosure Protections, each state requires that ample notice be provided to defaulted borrowers before a foreclosure sale can take place. In fact, many states require a formal lawsuit be filed and brought to judgment before a foreclosure sale can take place. This double safe-harbor, created by both the federal and state legislatures, ensures that no foreclosure sale can take place without a borrower being given significant notice and incentive to act to protect their rights, if any.

addition to rescission rights, the benefits available include: *(a) actual damages, and (b)*
*statutory damages*. 15 U.S.C. §§ 1635 & 1640. Thus, should Plaintiffs prevail at trial, they will
have an adequate remedy at law in the form of actual and statutory damages, *and* if their subject
loan was consummated within the prior three years, still retain an extended right to rescind. All
of these remedies, are available to Plaintiffs whether or not the present relief is granted.
Accordingly, Plaintiffs have adequate remedies – in fact they have the very same remedies – if
this relief is denied.

Moreover, these remedies preclude Plaintiffs from obtaining injunctive relief. The civil
remedies available under TILA do not include injunctive relief. 15 U.S.C. §§1635 and 1640.
The exclusion of injunctive relief from the remedies enumerated in Sections 1635 and 1640 is
conclusive that Congress did not intend to provide plaintiffs with this remedy for a TILA
violation. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979) ("where a
statute expressly provides a particular remedy or remedies, a court must be chary of reading
others into it.").

## C. Plaintiffs Cannot Establish That "Irreparable Injury" Will Result If The Unidentified Notice They Seek Is Not Mailed To Class Members.

It is beyond dispute that a movant must demonstrate "irreparable injury" in order to
obtain injunctive relief. *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 286 (7th Cir.
1984); *American Hosp. Ass'n v. Harris,* 625 F.2d 1328, 1331 (7th Cir. 1980). As set forth in
detail in Ameriquest's Opposition, class-wide injunctive relief cannot be granted where there is
no showing that *all* class members will be harmed absent the injunction. *Adams v. Freedom
Forge Corp.*, 204 F.3d 475 (3rd Cir. 2000) (denying a "mass preliminary injunction" where there
was a showing that only some class members would be harmed); *Cooper v. TWA Airlines, LLC*,
274 F.Supp.2d 231, 242 (D.N.Y. 2003) (concluding that class-wide relief was inappropriate
without evidence that virtually all of the class members had been irreparably harmed).

Moreover, Plaintiffs appear to argue that delinquent borrowers need a notice so that they
will know to seek legal advice before their loans are foreclosed. In fact, in their moving papers,

Plaintiffs argue that injury will occur because, absent the unspecified notice they seek to send, class members "will lose the opportunity to defend foreclosures". [Opposition, p. 13.] While Plaintiffs do not identify any borrower facing imminent foreclosure (again belying any claim of likely injury), there is not a state in the nation that allows foreclosure sales without notice to the borrower. To the contrary, borrowers are well-protected by state law and have ample notice and opportunity to investigate and assert any and all defenses they may have against foreclosure.

For example, in California, a borrower must receive at least 110 days before a non-judicial foreclosure sale may take place. *Cal. Code Civ. Pro.* §§2924c & 2924f, *et seq.* In the case of a judicial foreclosure sale, the borrower not only receives notice and an opportunity to defend through the ordinary judicial process, but further has a full year within which to redeem the loan. *Id.* at §580.03. In Michigan, a judicial foreclosure cannot take place earlier than six months after the filing of the complaint and the borrower then has six months from the sale to redeem the loan. *MCLA* §§600.3115 & 600.3140. A nonjudicial foreclosure sale requires four advertised notices, posting of the notices on the property and, with limited exceptions, a full year right of redemption. *Id.* §§3201-3280. Many states require that a lawsuit be filed and brought to judgment before a foreclosure sale can be held. A summary of the protections afforded by each state's foreclosure laws is set forth in the attached Appendix of State Law Foreclosure Protections.

If a borrower chooses to sit on his rights in the face of these multiple legal notices, that borrower is not going to be moved by yet another notice. And are Plaintiffs really arguing that application of these comprehensive statutory schemes results in imminent and irreparable harm to borrowers? Given the notices required by various state laws, every borrower facing foreclosure has ample incentive to investigate whether they have defenses to a pending foreclosure and whether their rights are protected. Thus, any additional notice – while wholly unauthorized under any statute or common law – does not add anything to the rights borrowers already have and its mailing will not prevent any harm, irreparable or otherwise, that was not already prevented by state law.

### D. THE HARDSHIPS DO NOT TIP – DECIDEDLY OR OTHERWISE – IN PLAINTIFFS' FAVOR

While Plaintiffs argue that there will be "little hardship" to Ameriquest if an injunction is granted, they notably do not specify *any* hardship that will be suffered by class members if injunctive relief is denied. [Motion, p. 14.] Instead, Plaintiffs assert that the class should receive their proposed notice "in order to allow those individuals a fair opportunity to evaluate their options". [Id.] As set forth above, however, any class member facing foreclosure will receive ample notice and opportunity under their own states' laws to assert any defenses thereto.

Ameriquest, on the other hand, will suffer multiple hardships if the requested relief is granted – particularly since Plaintiffs have offered no admissible evidence to support the merits of their allegations. First, Ameriquest is likely to see a rash of improper requests for rescission, placing an extreme burden on its employees to investigate and respond to meritless requests. Second, Ameriquest will suffer negative publicity and lose goodwill with otherwise happy customers if a blanket notice is sent out advising borrowers that they might be entitled to rescind their loans for possible TILA violations. Third, if foreclosure sales are delayed for 30 days, Ameriquest will suffer a financial burden in that it will incur holding costs.

Finally, this notice is likely to cause confusion among borrowers and cause borrowers to hire lawyers – and incur attorneys' fees – when they do not have a right to rescind in the first place. Considering that these are borrowers who have failed to make mortgage payments for at least several months, this would not be money well-spent.

In light of the foregoing, Plaintiffs have not, and cannot, establish that the balance of hardships tips in their favor at all and, again, the requested relief should be denied.

### E. PUBLIC POLICY.

Plaintiffs argue in their Motion that the public policy reason for granting injunctive relief is the "preservation of the opportunity to rescind", a policy that they argue arises from 15 U.S.C. section 1635(i). Ameriquest does not disagree that TILA affords a right of rescission in appropriate cases, however, Plaintiffs ignore the fact that TILA very deliberately and

comprehensively proscribes when, how and under what circumstances, that right may be exercised. If Congress had wanted TILA to afford the type of injunctive relief that Plaintiffs now seek, it would have included a provision for that in the statutory scheme. *See, e.g., Transamerica Mortgage Advisors, supra* at 20.

To the contrary, particularly since Plaintiffs have not offered any admissible evidence to support the merits of their claim, the notice Plaintiffs hope to send will do nothing more than cause confusion among Ameriquest borrowers. As demonstrated above, Ameriquest is likely to prevail on the merits and encouraging borrowers to rescind when they do not have the right to do so will only create confusion and place an undue burden on Ameriquest in administering to meritless rescission requests. It may also encourage borrowers who are current on their loans to stop making payments, placing them in a worse position than they would have been in the absence of the requested injunctive relief. Or worse yet, paying for a lawyer to tell them that they do not have any rescission rights. Thus, rather than purportedly protecting borrowers from foreclosure, Plaintiffs' injunctive relief may very well result in additional foreclosures and additional expenses to both Ameriquest and its borrowers. As such, public policy dictates a denial of injunctive relief.

## IV.    CONCLUSION

For the foregoing reasons, Ameriquest respectfully requests that the Court deny the requested relief in its entirety.

DATED: February 14, 2006                      Respectfully submitted,

                                              BUCHALTER NEMER
                                              A Professional Corporation


                                              By: /s/ Bernard E. LeSage_____
                                                   BERNARD E. LESAGE
                                              *Attorneys for Defendants Ameriquest Mortgage*
                                              *Company, Ameriquest Capital Corporation and*
                                              *Argent Mortgage Company*

**Appendix 1**

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| ALABAMA | 30 days if the mortgage document is silent as to character or mode of notice | 4 | Publish notice once a week for four consecutive weeks in a newspaper published in the county wherein the property is situated | Alabama Statute §35-10-2 |
| ALASKA | Not less than 30 days after the default and not less than 3 months before the sale | 1 | Within 10 days after recording the notice of default, the trustee shall mail a copy of the notice by certified mail or deliver personally | Alaska Statute §34.20.070 |
| ARIZONA | 90 days | 1 | Not later than 30 days after recording the notice of sale, the trustee must mail, by certified or registered mail, postage prepaid, a copy of the notice reflecting the recording date. Within 5 business days after recording the notice of sale, the trustee must mail by certified or registered mail, postage prepaid, a copy of the notice to each party to the trust deed other than the trustee | Arizona Statute §§33-807(D), 33-809(B), (C). |
| ARKANSAS | 60 days after recording notice of default | 1 | Within 30 days of recording, the notice of default and intention to sell must be mailed by certified mail, postage prepaid, and by first-class mail, postage prepaid | Arkansas Code §§15-50-103, 15-50-104(b) |
| CALIFORNIA | 3 months after recording notice of default | 1 | Within 10 business days after recording the notice of default, the trustee or mortgagee must send, by registered or certified mail, postage prepaid, the notice of default with the recording date. At least 20 days before the sale, the trustee or mortgagee must send by registered or certified mail, postage prepaid, a copy of the notice of time and place of sale. Within 1 month after recording the notice of default, the mortgagee or trustee must send by registered or certified mail, postage prepaid, a copy of the notice of default with the recording date thereon. | Cal. Civ. Code §§2924, 2924b |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | | | When trustee or mortgagee mails the notices to the trustor or mortgagor by registered or certified mail, trustor or mortgagee must simultaneously mail them by first-class U.S. mail, postage prepaid to the same address(es). The trustee or mortgagee must execute and retain an affidavit that identifies the notice mailed, shows the name and address of the affiant that he or she is over 18 years old, the date of mailing, the name and address of the trustor or mortgagor to whom sent, and states that the envelope was sealed and deposited in the mail with postage fully prepaid. | |
| COLORADO | For mortgages recorded after January 1, 2002, no more than 55 days after recording notice of demand or initiation of a suit for foreclosure and at least twenty days prior to the recording | 1 | Provide written notice of the default and an opportunity to cure | Colo. Rev. Stat. §38-38-102.5(2) |
| CONNECTICUT | Connecticut is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | Conn. Statutes §§49-31d – 49-31i |
| DELAWARE | In Delaware, foreclosure is conducted pursuant to a writ of scire facias, rather than pursuant to a power-of- | | | 25 Del. Code §§2101 et seq. |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|-------|------------------|---------------|----------------|---------|
| | sale clause | | | |
| DISTRICT OF COLUMBIA | 30 days before the sale date a copy of the notice must be sent to the Mayor of the District of Columbia | 1 | Written notice by certified mail, return receipt requested of the sale to the owner of the property encumbered by the deed of trust or mortgage | D.C. Code Ann. § 42-815(b). |
| FLORIDA | Florida is a judicial foreclosure state | n/a | Petitioner or petitioner's attorney's responsibility to place advertisement, publication, or notice relating to a foreclosure in a newspaper. | Florida Statute § 702.035 |
| GEORGIA | No later than 15 days before the date of the proposed foreclosure | 1 | Notice shall be in writing and shall be sent by registered or certified mail or statutory overnight delivery with the return receipt requested. The notice required by subsection (a) of this Code section shall be given by mailing or delivering to the debtor a copy of the published legal advertisement or a copy of the notice of sale submitted to the publisher | Ga. Code Ann. § 44-14-162.2 |
| HAWAII | Not less than 30 days before the day of sale | 3 | By publication of the notice once in each of three successive weeks, in a newspaper having a general circulation in the county in which the mortgaged property lies. Copies of the notice shall be filed with the state director of taxation and shall be posted on the premises not less than 21 days before the day of sale.<br><br>Alternate Power of Sale Foreclosure: Written notice of default to borrower | Haw. Stat. §§667-5, 667-22 |
| IDAHO | Subsequent to recording notice of default and at least 120 days before the day of sale | Three good faith attempts shall be made on different days | Notice shall be given by registered or certified mail with return receipt requested. The notice must also be posted and published | Idaho Statutes §§ 45-1505, 45-1506 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|-------|------------------|---------------|----------------|---------|
| | | over a period of not less than seven days each, which attempts must be made at least 30 days prior to the day of the sale | | |
| ILLINOIS | Illinois is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | 735 ILCS 5/15-1101 et seq. |
| INDIANA | Indiana is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | Ind. Code 32-30-10-1 et seq. |
| IOWA | 30 day notice | | Written notice | Iowa Code § 655A.3 |
| KANSAS | Kansas is a judicial foreclosure state | | All foreclosure sales conducted through ordinary judicial process | |
| KENTUCKY | n/a. In Kentucky the remedy for default is an action to enforce a lien | | | |
| LOUISIANA | Louisiana is a judicial foreclosure | | All foreclosure sales conducted through ordinary judicial process | |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | state | | | |
| **MAINE** | Maine is a judicial foreclosure state | | All foreclosure sales conducted through ordinary judicial process | |
| **MARYLAND** | Foreclosure in Maryland requires judicial action. | | All foreclosure sales conducted through ordinary judicial process | |
| **MASSACHUSETTS** | 30 days | 3 | Publish the notice once in three successive weeks with the first publication to be not less than 21 days before the day of the sale in a newspaper which is published in the town where the land lies or in a newspaper with general circulation in the town where the land lies. The notice must be sent by registered mail 30 days prior to the date of sale. Notice needs to be mailed at least 14 days prior to the date of sale. | Mass. Gen. Laws Ch. 244 § 14 |
| **MICHIGAN** | 4 weeks | 4 | Notice by publishing for 4 successive weeks at least once in each week, in a newspaper published in the county where the premises intended to be sold. Within 15 days after the first publication of the notice, a true copy shall be posted in a conspicuous place upon any part of the premises described in the notice. | Mich. Comp. Laws §600.3208 |
| **MINNESOTA** | 4 weeks | 1 | Notice shall be served in like manner as a summons in a civil action by 6 weeks' published notice and at least 4 weeks before the appointed time of sale. A foreclosure advice notice must be served simultaneously with the notice of foreclosure. | Minn. Stat. §§580.03, 580.041 |
| **MISSISSIPPI** | 3 weeks | 3 | Advertised for 3 consecutive weeks in a newspaper published in the county and by posting one notice at the courthouse of the county where the land is situated. | Miss Code § 89-1-55 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|-------|------------------|---------------|----------------|---------|
| MISSOURI | 20 days | 20 | By advertising at least 20 times, and continuing to the day of the sale in daily newspaper. Sending notice of sale by certified mail not less than 20 days prior to the scheduled date of the sale. | Mo. Stat §§443.310, 443.320 , 443.325 |
| MONTANA | 120 days | 1 | A copy of the recorded notice of sale shall be mailed by registered or certified mail . At least 20 days before the date fixed for the trustee's sale, a copy of the recorded notice of sale shall be posted in some conspicuous place on the property to be sold. Notices of sale must also be served personally at least 30 days before the sale date on the occupant of the property, the mortgagor (if in Montana), and every other person having or claiming an interest of record. | Mont. Stat §§71-1-315, 71-1-224. |
| NEBRASKA | Prior to sale and not less than one month before giving notice of sale, the trustee must file for record a notice of default. | 1 | Not later than 10 days after recording the notice of default, the trustee must mail by registered or certified mail, postage prepaid, to each person who is party to the trust deed (at the address provided in the trust deed) and to each person who has properly recorded a request for notice (to the address identified in the request). At least 20 days before the sale date, the trustee must mail by registered or certified mail, postage prepaid, a copy of the notice of the time and place of sale to each party to the trust deed and to each person who has properly recorded a request. | Neb. Rev. Stat §76-1006 §76-1008(2) and (3) |
| NEVADA | Not less than 3 months before the sale, the trustee must record a notice of breach and his or her election to sell the property to satisfy the obligation | 1 | 35 days from the day on which the notice of default is recorded and a copy is mailed by registered or certified mail, return receipt requested, postage prepaid, to the trustor and to the person who holds the title of record, to their respective addresses, if known, otherwise to the property address. Within 10 days after recording and mailing the notice of default as described above, the trustee must send by registered | Nev. Rev. Stat §107.080(2) §107.080(3) §107.080(4) §107.085(2) & (3) §107.085(3) |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | | | or certified mail, return receipt requested, postage prepaid, a copy of the notice to each person who has properly recorded a request therefore and to each person with an interest subordinate to the deed of trust. | §107.090(3) §107.090(4) §107.095 |
| | | | At least 15 days before the expiration of the 35-day period or any extension of that period, the notice of default must also be sent by registered or certified mail, return receipt requested, postage prepaid, to each guarantor or surety of the debt. | |
| | | | After the 3-month period following the recording of the notice of breach, and before the sale, the trustee must give notice of the time and place of the sale by recording the notice and by providing it to each trustor and any other person entitled thereto by personal service or mailing by registered or certified mail to the last known address. | |
| | | | At least 20 days before the sale date, the trustee must send by registered or certified mail, return receipt requested, postage prepaid, a copy of the notice of time and place of sale to each person who has properly recorded a request therefore and to each person with an interest subordinate to the deed of trust. | |
| **NEW HAMPSHIRE** | 25 days before the sale to the mortgagor.<br><br>30 days before the sale to any holder of a lien of record on the property, provided that the lien is recorded. | 1 | A copy of a notice of sale must be sent by registered or certified mail | N.H. Rev. Stat §479:25(II) |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|-------|------------------|---------------|----------------|---------|
| **NEW JERSEY** | New Jersey is a judicial foreclosure state | | All foreclosure sales conducted through ordinary judicial process | |
| **NEW MEXICO** | New Mexico is a judicial foreclosure state | | All foreclosure sales conducted through ordinary judicial process | |
| **NEW YORK** | Notice of Intention to foreclose: 10 days prior to the first service of the notice of sale, and 10 days after commencing the non-judicial proceeding by filing the notice of pendency.<br><br>Notice of Sale: 30 days before the date of sale. | 1 | Notice of Intention: Registered mail or certified mail and ordinary first class mail or by personal service.<br><br>Notice of Sale: by delivering a copy or by mailing an additional copy by first class mail in an envelope bearing "personal and confidential" and not indicating on the outside, by return address or otherwise, that the communication is from an attorney. | NY CLS RPAPL §1402 §1406 |
| **NORTH CAROLINA** | At least 20 days before the date of sale | 1 | Mailed, by first-class mail to (1) any person to whom the security instrument directs that notice to be sent, (2) any person obligated to repay the indebtedness against whom the holder intends to assert liability, and (3) every record owner of the property whose interest is of record. Notice must also be sent by first-class mail to anyone who has properly made a request for notice. Notice of the hearing before the Clerk of Court may satisfy these requirements if it contains the information required to be included in a notice of sale. | N.C. Gen. Stat §45-21.16 §45-21.17(4) |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| NORTH DAKOTA | North Dakota is a judicial foreclosure state | | All foreclosure sales conducted through ordinary judicial process | |
| OHIO | Ohio is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | |
| OKLAHOMA | Foreclosure under a power-of-sale clause is not permitted if, at least 10 days before the sale, the mortgagor sends the mortgagee written notice that the property is his/her homestead and that he or she has elected judicial foreclosure | 1 | Notice of intention to foreclose must be given to the mortgagor by certified mail directed to his or her last-known address | 46 Okla. Stat. §§43, 44 |
| OREGON | After recording the notice of default and at least 120 days before the sale | | Notice of sale must be served or mailed by first-class and certified mail, return receipt requested, to the last-known address of the grantor, any successor in interest to the grantor whose interest appears of record or of which the trustee has actual notice, any person (including the Department of Revenue or other state agency) who has a lien or interest subsequent to the trust deed if the lien or interest appears of record or the beneficiary has actual notice and any person who has properly requested the notice. The notice of sale must also be served on the occupant of the property at least 120 | Or. Rev. Stat. §86.740(1) §86.735 §86.750 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | | | days before the sale. | |
| PENNSYLVANIA | Pennsylvania is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | |
| RHODE ISLAND | At least 20 days (for mortgagors other than individual consumer mortgagors) and 30 days (for individual consumer mortgagors) before the first publication of notice of sale | 1 | A written notice of the time and place of sale must be mailed to the mortgagor by certified mail, return receipt requested, directed to the property address and, if different, the mortgagor's address listed with the tax assessor's office | R.I. Gen. Laws §34-27-4 |
| SOUTH CAROLINA | South Carolina is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | |
| SOUTH DAKOTA | At least 21 days before the sale date | 1 | Serve the notice of foreclosure on the mortgagor and any lien holder whose interest will be affected by the foreclosure | S.D. Dodified Laws §21-48-6 |
| TENNESSEE | Foreclosure under the power of sale is by advertisement. The First publication shall be made at least 20 days prior to the sale | 3 | Publication | Tenn. Code Ann §35-5-101 |
| TEXAS | At least 21 days before the sale date | 1 | Notice of the sale must be given by posting at the courthouse door, filing with the county clerk, and serving the written notice by certified mail on each debtor | Tex. Prop. Code §51.002 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | | | obligated to pay the debt | |
| UTAH | Not later than 10 days after recording the notice of default,<br><br>At least 20 days before the sale date | | Notice of default: the trustee must mail a signed copy of the notice, by certified or registered mail, postage prepaid, with the recording date shown to each person who has properly requested notice.<br><br>The trustee must mail a signed copy of the notice of time and place of sale, by certified or registered mail, return receipt requested, postage prepaid, to each person who has properly requested notice.<br><br>The trust deed may include a request that a copy of notices of default and notice of sale be mailed to any person who is a party to the trust deed. Copies of such notices must be mailed to these persons at the same time and in the same manner as set forth above, except that the trustee must include with the signed copy of the notice of default and the signed copy of a notice of sale, the following: (1) trustee's name, (2) trustee's mailing address, (3) if the trustee has a bona fide office in the state, the address of that office, (4) the hours when the trustee may be contacted about the notices, and (5) a phone number to contact the trustee.<br><br>If the trustor's address is not included in the trust deed and no request for notice by the trustor has been recorded, then no later than 15 days after recording the notice of default, a copy of that notice must be mailed to the address of the property described in the notice or posted on the property | Utah Code Ann. §57-1-24 §57-1-26 |
| VERMONT | At least 30 days prior to publication of a notice of sale, notice of intention to | | Notice of intention to foreclose in writing must be sent to the mortgagor by registered or certified mail at his or her last known address | 12 Vermont Stat. Ann. §4532 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|---|---|---|---|---|
| | foreclose and in must be sent to the mortgagor | | | |
| WASHINGTON | At least 90 days before the sale, the trustee must record the notice of sale.<br><br>At least 30 days before recording, transmitting, or serving a notice of sale, the trustee must send the borrower and grantor a notice of default. | | | Wash. Rev. Code<br><br>§ 61.24.030(7).<br><br>§61.24.040(1)(b)<br>§61.24.040(1)(d)<br><br>§61.24.040(1)(f) |
| WEST VIRGINIA | The notice must also be served at least 20 days before the sale | 1 | A copy of the notice of sale must be served on the grantor, by certified mail, return receipt requested, at the address shown on the trust deed or such other address given to the beneficiary in writing by the grantor. The notice must also be served at least 20 days before the sale, by certified mail, on any subordinate lien-holder who has previously notified the primary lien-holder of the existence of the subordinate lien. | West. Va.<br><br>§ 38-1-4. |
| WISCONSIN | Wisconsin is a judicial foreclosure state. | | All foreclosure sales conducted through ordinary judicial process | |
| WYOMING | At least 10 days before publication of | 4 | A written notice of intent to foreclose by advertisement and sale must be served on | Wyo. Stat. Ann<br><br>§ 34-4-105 |

## STATE LAW FORECLOSURE PROTECTIONS

| STATE | AMOUNT OF NOTICE | NO OF NOTICES | MODE OF NOTICE | STATUTE |
|-------|------------------|---------------|----------------|---------|
| | notice of sale | | the record owner and the person in possession of the property by certified mail, return receipt requesting directed to the last known address | § 34-4-103. |
| | | | | § 34-4-104(a) |
| | | | Also, prior to the first date of publication, a copy of the notice of sale must be served by certified mail, return receipt requested, on the record owner, person in possession of the property, and all holders of recorded subordinate mortgages and liens. This notice must be sent to the last known address, which is deemed the address in the mortgage or lien filed of record unless another address has been recorded or provided to the foreclosing mortgagee or lien-holder. | |