**Exhibit 1**

Judicial Panel on Multidistrict Litigation - Case Listing Report

Docket: 1715 - In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation

Status: Transferred on 12/13/2005

Transferee District: ILN    Judge: Aspen, Marvin E.

| Civil Action | Short Caption | CTO | Judge | Initiation | - Date | Transferee Civil # | Disposition | - Date | Termination - Date |
|---|---|---|---|---|---|---|---|---|---|
| **ALABAMA SOUTHERN** | | | | | | | | | |
| 1-05-78 | Mitchell, et al. v. Ameriquest Mortgage Co., et al. | | DuBose | Awaiting Info | 01/31/2006 | | | | |
| **CALIFORNIA CENTRAL** | | | | | | | | | |
| 2-04-9715 | Burggraff v. Ameriquest Capital Corp., et al. | | Morrow | Motion | 07/13/2005 | 2005-7099 | Transfer | 12/13/2005 | |
| 2-05-1426 | Quarterman v. Ameriquest Capital Corp., et al. | | Morrow | Related Case | 08/15/2005 | | | | |
| 2-05-4982 | Morrison, et al. v. Ameriquest Mortgage Co., et al. | | Otero | Awaiting Info | 01/30/2006 | | | | |
| 8-05-285 | Brown, et al. v. Ameriquest Capital Corp., et al. | | Stotler | Related Case | 07/25/2005 | | | | |
| 8-05-907 | Van Gorp, et al. v. Ameriquest Mortgage Co., et al. | | Carney | Awaiting Info | 12/20/2005 | | | | |
| 8-05-1117 | Juillerat v. Ameriquest Mortgage Co. | | Carter | Awaiting Info | 01/30/2006 | | | | |
| **CALIFORNIA NORTHERN** | | | | | | | | | |
| 3-05-240 | Knox, et al. v. Ameriquest Mortgage Co., et al. | | Conti | Motion | 07/13/2005 | 2005-7100 | Transfer | 12/13/2005 | |
| 5-05-2905 | Medina v. Argent Mortgage Co., et al. | | Seeborg | Awaiting Info | 01/31/2006 | | | | |
| **CONNECTICUT** | | | | | | | | | |
| 3-05-452 | Bailey, et al. v. Ameriquest Mortgage Co. | | Droney | Awaiting Info | 01/26/2006 | | | | |
| 3-05-1296 | Sievers, et al. v. Ameriquest Mortgage Co., et al. | | Chatigny | Awaiting Info | 01/31/2006 | | | | |
| 3-05-1653 | Suia v. Alpha Mortgage Lending, LLC, et al. | | Chatigny | Awaiting Info | 01/31/2006 | | | | |
| **FLORIDA MIDDLE** | | | | | | | | | |
| 3-04-1296 | Barker, et al. v. Ameriquest Capital Corp., et al. | | Corrigan | Related Case | 08/02/2005 | | | | |
| 8-05-1036 | Williams, et al. v. Ameriquest Mortgage Co. | | Kovachevich | Motion | 07/13/2005 | 2005-7098 | Transfer | 12/13/2005 | |
| 8-05-1849 | Ungar v. Ameriquest Mortgage Co. | | Whittemore | Awaiting Info | 01/31/2006 | | | | |
| **FLORIDA SOUTHERN** | | | | | | | | | |
| 1-05-21103 | Almaguer v. Argent Mortgage Co., LLC, et al. | | Jordan | Awaiting Info | 01/25/2006 | | | | |
| **GEORGIA MIDDLE** | | | | | | | | | |
| 1-05-107 | Campbell v. Johnnie Ross, et al. | | Sands | Awaiting Info | 01/31/2006 | | | | |
| **ILLINOIS NORTHERN** | | | | | | | | | |
| 1-04-7627 | Furgason v. Ameriquest Mortgage Co., et al. | | Manning | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-389 | Hubbard v. Ameriquest Mortgage Co., et al. | | Filip | XYZ Case | 01/30/2006 | | NTN | 01/30/2006 | |
| 1-05-432 | Jones v. Ameriquest Mortgage Co. | | Coar | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-648 | Smith, et al. v. Ameriquest Mortgage Co., et al. | | Andersen | XYZ Case | 01/27/2006 | | NTN | 01/27/2006 | |
| 1-05-1007 | Washington, et al. v. Ameriquest Mortgage Co., et al. | | Coar | XYZ Case | 01/27/2006 | | NTN | 01/27/2006 | |
| 1-05-1099 | Jimenez, et al. v. Ameriquest Mortgage Co., et al. | | Moran | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-1077 | Key v. Ameriquest Mortgage Co. | | Andersen | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-1078 | Treadwell, et al. v. Ameriquest Mortgage Co., et al. | | Gettleman | XYZ Case | 01/27/2006 | | NTN | 01/27/2006 | |
| 1-05-1080 | Talley, et al. v. Ameriquest Mortgage Co., et al. | | Darrah | XYZ Case | 01/27/2006 | | NTN | 01/27/2006 | |
| 1-05-1218 | Murray, et al. v. Ameriquest Mortgage Co. | | Andersen | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-1402 | Wertepny, et al. v. Ameriquest Mortgage Co., et al. | | Nordberg | XYZ Case | 01/27/2006 | | NTN | 01/27/2006 | |
| 1-05-3976 | Mills v. Ameriquest Mortgage Co., et al. | | Leinenweber | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |

(Docket 1,715 Case Listing Cont'd)

| Civil Action | Short Caption | Judge | CTO | Initiation | - Date | Transferee Civil # | Disposition | - Date | Termination - Date |
|---|---|---|---|---|---|---|---|---|---|
| 1-05-4162 | Salazar, et al. v. Ameriquest Mortgage Co. | Guzman | | XYZ Case | 01/27/2006 | | NTN | 01/27/2006 | |
| 1-05-4664 | Luedtke, et al. v. Ameriquest Mortgage Co., et al. | Nordberg | | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-4696 | Zarate v. Ameriquest Mortgage Co., et al. | Conlon | | XYZ Case | 01/30/2006 | | NTN | 01/30/2006 | |
| 1-05-4709 | Lemmons v. Ameriquest Mortgage Co., et al. | St. Eve | | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-4723 | Brown v. Ameriquest Mortgage Co., et al. | Coar | | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-5024 | Payne v. Ameriquest Mortgage Co., et al. | Lindberg | | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-5033 | Doolittle, et al. v. Ameriquest Mortgage Co., et al. | Bucklo | | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-5035 | Pintsak, et al. v. Ameriquest Mortgage Co., et al. | Guzman | | XYZ Case | 01/27/2006 | | NTN | 01/27/2006 | |
| 1-05-5111 | Brown, et al. v. Ameriquest Mortgage Co., et al. | Kennelly | | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-5911 | Holzmeister v. Ameriquest Mortgage Co., et al. | Norgle | | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-6172 | Perry v. Ameriquest Mortgage Co., et al. | Moran | | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| 1-05-6517 | Polydoros, et al. v. Town & County Credit Corp., et al. | Zagel | | XYZ Case | 01/27/2006 | | NTN | 01/27/2006 | |
| 1-05-6808 | Buckner v. Ameriquest Mortgage Co., et al. | Gottschall | | XYZ Case | 01/26/2006 | | NTN | 01/26/2006 | |
| **INDIANA NORTHERN** | | | | | | | | | |
| 2-05-411 | Mikowski, et al. v. Ameriquest Mortgage Co., et al. | Simon | | Awaiting Info | 01/31/2006 | | | | |
| **INDIANA SOUTHERN** | | | | | | | | | |
| 1-05-1618 | Purdy-Roth, et al. v. Argent Mortgage Co., LLC, et al. | Hamilton | | Awaiting Info | 01/31/2006 | | | | |
| **LOUISIANA EASTERN** | | | | | | | | | |
| 2-05-3067 | Powell, et al. v. Ameriquest Mortgage Co. | Lemmon | | Awaiting Info | 01/31/2006 | | | | |
| **MASSACHUSETTS** | | | | | | | | | |
| 1-04-12651 | Murphy, et al. v. Ameriquest Mortgage Co. | Zobel | | Motion | 07/13/2005 | 2005-7101 | Transfer | 12/13/2005 | 12/13/2005 |
| **MINNESOTA** | | | | | | | | | |
| 0-05-589 | Doherty, et al. v. Town & County Credit Corp. | Tunheim | | Awaiting Info | 01/26/2006 | | | | |
| 0-05-1214 | Ricci, et al. v. Ameriquest Mortgage Co. | Tunheim | | Related Case | 08/02/2005 | | | | |
| **NEW YORK EASTERN** | | | | | | | | | |
| 2-05-3987 | Machazo v. Ameriquest Mortgage Co. | Korman | | Awaiting Info | 01/31/2006 | | | | |
| **NEW YORK SOUTHERN** | | | | | | | | | |
| 1-05-6189 | Williams, et al. v. Ameriquest Mortgage Co. | Swain | | Motion | 07/13/2005 | 2005-7102 | Transfer | 12/13/2005 | 12/13/2005 |
| **OHIO NORTHERN** | | | | | | | | | |
| 1-05-1126 | Saunders, et al. v. Ameriquest Mortgage Co., et al. | Boyko | | Awaiting Info | 01/31/2006 | | | | |
| **PENNSYLVANIA EASTERN** | | | | | | | | | |
| 2-05-1096 | Reuty, et al. v. WM Specialty Mortgage, LLC, et al. | Fullam | | Awaiting Info | 01/30/2006 | | | | |
| 2-05-4427 | D'Ambrozi, et al. v. Ameriquest Mortgage Co. | Rufe | | Awaiting Info | 01/25/2006 | | | | |
| 2-05-6112 | Godwin v. Argent Mortgage Co., LLC, et al. | DuBois | | Awaiting Info | 01/30/2006 | | | | |
| **PENNSYLVANIA WESTERN** | | | | | | | | | |
| 2-05-391 | Kahrer v. Ameriquest Mortgage Co. | Standish | | Awaiting Info | 01/30/2006 | | | | |
| **RHODE ISLAND** | | | | | | | | | |
| 1-05-153 | Melendez v. Ameriquest Mortgage Co. | Smith | | Awaiting Info | 01/26/2006 | | | | |
| 1-05-527 | Pena v. Ameriquest Mortgage Co. | Smith | | Awaiting Info | 01/26/2006 | | | | |
| 1-05-528 | Dareau v. Ameriquest Mortgage Co. | Torres | | Awaiting Info | 01/26/2006 | | | | |
| 1-05-529 | Eyre v. Ameriquest Mortgage Co. | Lisi | | Awaiting Info | 01/26/2006 | | | | |
| 1-05-530 | Parisi v. Ameriquest Mortgage Co. | Torres | | Awaiting Info | 01/26/2006 | | | | |

Page 3

*(Docket 1,715 Case Listing Cont'd)*

| Civil Action | Short Caption | Judge | CTO | Initiation | – Date | Transferee Civil # | Disposition | – Date | Termination | – Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 1-05-531 | Frost v. Ameriquest Mortgage Co. | Smith | | Awaiting Info | 01/26/2006 | | | | | |
| 1-05-532 | Silvia v. Ameriquest Mortgage Co. | Lisi | | Awaiting Info | 01/26/2006 | | | | | |
| 1-05-533 | Creamer v. Ameriquest Mortgage Co. | Lisi | | Awaiting Info | 01/26/2006 | | | | | |
| 1-05-538 | Leclerc v. Ameriquest Mortgage Co. | Smith | | Awaiting Info | 01/30/2006 | | | | | |
| **TENNESSEE MIDDLE** | | | | | | | | | | |
| 3-05-793 | Reese v. Ameriquest Mortgage Co., et al. | Echols | | Awaiting Info | 01/31/2006 | | | | | |

**REPORT SUMMARY and FILTERS**

Docket: 1715 - Ameriquest Mortgage Co. Mortgage
Lending Practices
For Open Cases

There are 65 Cases on this Report.

25 XYZ Actions    5 Transferred Actions

0 Suspense Actions    0 Terminated Actions

**Exhibit 2**



**BuchalterNemer**
A Professional Law Corporation

1000 WILSHIRE BOULEVARD, SUITE 1500, LOS ANGELES, CALIFORNIA 90017-2457
TELEPHONE (213) 891-0700 / FAX (213) 896-0400

File Number: L7526.0683
Direct Dial Number: (213) 891-5230
Direct Facsimile Number: (213) 630-5715
E-Mail Address: *blesage@buchalter.com*

January 23, 2006

**VIA FEDERAL EXPRESS**

Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Room G-255, North Lobby
Washington, D.C. 20002-8004

  **Re:**  ***In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation***
     **MDL Docket No. 1715**

Dear Clerk of the Panel:

  On or about December 13, 2005, the Judicial Panel on Multidistrict Litigation (the "Panel") issued a Transfer Order, pursuant to which it granted the motion to transfer pursuant to 28 U.S.C. § 1407 (the "Motion") filed by plaintiffs in *Cheryl Williams and Duvall Naughton v. Ameriquest Mortgage Company*, Case No. 05-CV-6189 (S.D. N.Y.) ("*Williams*"). The Panel therefore ordered each identified action in the Motion transferred to the United States District Court for the Northern District of Illinois, The Honorable Marvin E. Aspen presiding (the "Transferee Court"), for pretrial proceedings.

  Defendants Ameriquest Mortgage Company ("Ameriquest Mortgage"), Ameriquest Capital Corporation ("Ameriquest Capital") and Argent Mortgage Company ("Argent") (collectively, "Defendants") opposed the Motion, and by this letter, reconfirm that they do not waive, but rather expressly preserve (for all purposes, including any appeals), all arguments raised in opposition to the Motion and all objections to the Transfer Order. These arguments and objections include, without limitation, those based on Federal and State Constitutional grounds, including but not limited to Due Process and Equal Protection under the law.

  Nevertheless, pursuant to Rules 1.1, 7.4 and 7.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Rules") Defendants are compelled to identify the following actions as potential "Tag Along" actions as such actions are defined by the Rules.

BuchalterNemer

Clerk of the Panel
Judicial Panel on Multidistrict Litigation
January 23, 2006
Page 2

Also pursuant to the Rules, copies of the potential "Tag Along" complaints are enclosed
herewith in folders labeled with the corresponding numbers for your convenience.

1. *Miguel Almaguer, v. Argent Mortgage Co., et al.,* United States District Court for
   the Southern District of Florida Miami Division, Case No. 05-CV-21103
   (*"Almaguer"*)

2. *Michele D'Ambrogi, et al., v. Ameriquest Mortgage Co.,* United States District
   Court for the Eastern District of Pennsylvania, Case No. 97CV04427
   (*"Ambrogi"*)

3. *Wray Bailey, et al. v. Ameriquest Mortgage Co.,* United States District Court for
   the District of Connecticut, Case No. 305CV452 CFD (*"Bailey"*).

4. *Kenneth Brown, et al. v. Ameriquest Mortgage Co., et al.,* United States District
   Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-
   05111 (*"Brown"*).

5. *Dorothy Brown, v. Ameriquest Mortgage Co., et al.,* United States District Court
   for the Northern District of Illinois Eastern Division, Case No. 05-CV-04723
   (*"Brown"*)

6. *Jacqueline Buckner v. Ameriquest Mortgage Co., et al.,* United States District
   Court for the Northern District of Illinois Eastern Division, Case No. 05C-V-6808
   (*"Buckner"*)

7. *Joseph F. Creamer, III, v. Ameriquest Mortgage Co.,* United States District Court
   for the District of Rhode Island, Case No. 05-CV-00533 ML DLM (*"Creamer"*)

8. *Richard Daneau v. Ameriquest Mortgage Co.,* United States District Court for the
   District of Rhode Island, Case No. 05-CV-528 T (*"Daneau"*)

9. *Thomas B. Doherty, et al., v. Town & Country Credit Corp.,* United States District
   Court for the Fourth Judicial District of the State of Minnesota, Case No. 05-CV-
   00589 JRT-JJG (*"Doherty"*)

10. *Edward Doolittle, et al., v. Ameriquest Mortgage Co., et al.,* United States District
    Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-
    05033 (*"Doolittle"*)

11. *Maria S. Eyre v. Ameriquest Mortgage Co.,* United States District Court for the
    District of Rhode Island, Case No. 05-CV-0529 ML-DLM (*"Eyre"*)

Buchalter Nemer
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
January 23, 2006
Page 3

12. *Karleen M. Frost v. Ameriquest Mortgage Co.*, United States District Court for the District of Rhode Island, Case No. 05-CV-00532 S-DLM *("Frost")*

13. *Marie Furgeson, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 04-CV-07627 *("Furgeson")*

14. *Jeanette Stokes Godwin, v. Argent Mortgage Co., et al.,* United States District Court for the Eastern District of Pennsylvania, Case No. 05-CV-6112 *("Godwin")*

15. *Michael Holzmeister, v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-05911 *("Holzmeister")*

16. *Thomas Hubbard, v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-00389 *("Hubbard")*

17. *Nelson Jimenez, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-01009 *("Jimenez")*

18. *Shirley Jones, v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-00432 *("Jones")*

19. *Deborah Juillerat, v. Ameriquest Mortgage Co., et al.,* United States District Court for the Central District of California Case No. SACV05-1117 DOC (RNBx) *("Juillerat")*

20. *Karen M. Kahrer, v. Ameriquest Mortgage Co.,* United States District Court for the Western District of Pennsylvania, Case No. 05-CV0391 *("Kahrer")*

21. *Earl E. Key, v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-1077 *("Key")*

22. *Renee O. LeClerc, v. Ameriquest Mortgage Co.,* United States District Court for the District of Rhode Island, Case No. 05CV-00538 S-LDA *("LeClerc")*

23. *James Lemmons, v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-04709 *("Lemmons")*

BuchalterNemer

Clerk of the Panel
Judicial Panel on Multidistrict Litigation
January 23, 2006
Page 4

24.    *Roger R. Luedtke, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-04644 *("Luedtke")*

25.    *Richard A. Madrazo, v. Ameriquest Mortgage Co.,* United States District Court for the Eastern District of New York, Case No. 05-CV-03987 BRK-MLO *("Madrazo")*

26.    *Juan Medina, et al. v. Argent Mortgage Company, et al.,* United States District Court for the Northern District of California Case San Jose Division, Case No., 05-02905 RS ("*Medina")*

27.    *Lillian Melendez,, v. Ameriquest Mortgage Co.,* United States District Court for the District of Rhode Island, Case No. 05 CV-153 S-LDA *("Melendez")*

28.    *Joseph A. Mikowski, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Indiana Hammond Division, Case No. 05-CV-00411 PPS-PRC ("*Mikowski")*

29.    *Delois Mills v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-03976 *("Mills")*

30.    *Valerie Lund Mitchell, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Southern District of Alabama Southern Division, Case No. 05-CV-00078 KD-B ("*Mitchell")*

31.    *Maria Morrison, et al. v. Ameriquest Mortgage Co., et al.,* United States District Court for the Central District of California Case No. CV05-4982 SJO (FMOx) ("*Morrison")*.

32.    *Charles F. Parisi v. Ameriquest Mortgage Co.,* United States District Court for the District of Rhode Island, Case No. 05-CV-00530 T-LDA *("Parisi")*

33.    *James Payne v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-05024 *("Payne")*

34.    *Eddy G. Pena v. Ameriquest Mortgage Co.,* United States District Court for the District of Rhode Island, Case No. 05-CV-00527 S *("Pena")*

BuchalterNemer
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
January 23, 2006
Page 5

35.   *Judy Perry v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-06172 *("Perry")*

36.   *William Pintsak, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-05035 *("Pintsak")*

37.   *Spyros J. Polydoros, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-06517 *("Polydoros")*

38.   *John Darious Powell, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Eastern District of Louisiana, Case No. 05-CV-03067 MVL-JCW *("Powell")*

39.   *Rickie Ann Reese v. Ameriquest Mortgage Co., et al.,* United States District Court for the Middle District of Tennessee, Case No. 3-05 CV-0793 *("Reese")*

40.   *Scott T. Reuter, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Eastern District of Pennsylvania, Case No. 05-CV-1096 *("Reuter")*

41.   *Johnnie Ross,, et al., v. Ameriquest Mortgage Co., et al.,* In the Superior Court of Dougherty County State of Georgia, Case No. 05-CV-1466-3 *("Ross")*

42.   *Katrina D. Purdy-Roth, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Southern District of Indiana Indianapolis Division, Case No. 05-CV-01618 DFH-VSS *("Roth")*

43.   *Sergio A. Salazar, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-04162 *("Salazar")*

44.   *Pegi Saunders, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court for the Northern District of Ohio, Case No. 05-CV-01126 CAB *("Saunders")*

45.   *Jerome L. Sievers, et al., v. Ameriquest Mortgage Co.,* et al., United States District Court District of Connecticut, Case No. 05-CV-01296 RNC ("Sievers")

46.   *Richard J. Silvia v. Ameriquest Mortgage Co.,* United States District Court for the District of Rhode Island, Case No. 05 CV-0532 ML *("Silvia")*

BuchalterNemer

Clerk of the Panel
Judicial Panel on Multidistrict Litigation
January 23, 2006
Page 6

47.     *Eric Smith, et al., v. Ameriquest Mortgage Co., et al.,* United States District Court
        for the Northern District of Illinois Eastern Division, Case No. 05-CV-00648
        *("Smith")*

48.     *Wetzer Surin, v. Argent Mortgage Co., et al.,* United States District Court District
        of Connecticut (New Haven), Case No. 05-CV-001653 RNC ("*Surin*")

49.     *Terry Talley, et al., v. Ameriquest Mortgage Co., et al.,* United States District
        Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-
        01080 *("Talley")*

50.     *Gilbert Treadwell, et al., v. Ameriquest Mortgage Co., et al.,* United States
        District Court for the Northern District of Illinois Eastern Division, Case No. 05-
        CV-01078 *("Treadwell")*

51.     *Steven H. Ungar v. Ameriquest Mortgage Co.,* United States District Court for the
        Middle District of Florida Tampa Division, Case No. 05 CV-01849 JDW-TBM
        *("Ungar")*

52.     *Rochelle Washington, et al., v. Ameriquest Mortgage Co., et al.,* United States
        District Court for the Northern District of Illinois Eastern Division, Case No. 05-
        CV-01007 *("Washington")*

53.     *Brett Wertepny, et al., v. Ameriquest Mortgage Co., et al.,* United States District
        Court for the Northern District of Illinois Eastern Division, Case No. 05-CV-
        01402 *("Wertepny")*

54.     *Ramona Zarate, v. Ameriquest Mortgage Co., et al.,* United States District Court
        for the Northern District of Illinois Eastern Division, Case No. 05-CV-04696
        *("Zarate")*

Finally, Defendants are still in the process of identifying additional potential "Tag
Along" actions and will supplement this letter shortly. As always, please feel free to contact me
with any questions.

                        Very truly yours,

                        BUCHALTER NEMER
                        A Professional Corporation

                        By   *Bernard E. LeSage*
                        Bernard E. LeSage

Enclosures

**Exhibit 3**



LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

ATTORNEYS AT LAW

780 THIRD AVENUE, 48TH FLOOR
NEW YORK, NEW YORK 10017-2024
TELEPHONE: (212) 355-9500
FACSIMILE: (212) 355-9592
mail@lchb.com
www.lchb.com

SAN FRANCISCO
WASHINGTON, D.C.
BEVERLY HILLS
NASHVILLE

January 17, 2006

**VIA FEDERAL EXPRESS**

Michael J. Beck
Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Room G-255, North Lobby
Washington, D.C. 20002

Re:     *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation,*
        MDL No. 1715
        Client-Matter No. 2320-0003

Dear Mr. Beck:

        Enclosed for the Judicial Panel's consideration please find an original and four copies of the following documents:

1.      Plaintiffs Williams' and Naughton's Notice of Related "Tag-Along" Action;

2.      Proof of Service Pursuant to Rule 5.2.

        Thank you for your assistance in this matter. Please do not hesitate to contact me if you require additional information.

                        Very truly yours,

                        Gena E. Wiltsek

GEW:av
Enclosures

510286.1

BEFORE THE JUDICIAL PANEL ON

MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re:<br><br>AMERIQUEST MORTGAGE CO.<br>MORTGAGE LENDING PRACTICES<br>LITIGATION | MDL No. 1715 |

## PLAINTIFFS WILLIAMS' AND NAUGHTON'S NOTICE OF RELATED "TAG-ALONG" ACTION

Elizabeth J. Cabraser
Kelly M. Dermody
Caryn Becker
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:     (415) 956-1000
Facsimile:     (415) 956-1008

 -and-

Gena E. Wiltsek
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Ave., 48th Floor
New York, NY 10017
Telephone:     (212) 355-9500
Facsimile:     (212) 355-9592

*Attorneys for Plaintiffs Cheryl Williams and
Duvall Naughton*

Plaintiffs Williams and Naughton, through the undersigned counsel and pursuant to Rules 7.4 and 7.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML"), 199 F.R.D. 425 (2001), hereby notify the JPML Clerk of the following case:

A. *George Barber, Crisella Barber, Debra Holloway, and Laurence Osten, on behalf of themselves and all others similarly situated v. Ameriquest Capital Corp. and Ameriquest Mortgage Co.*, Case No. 3:04-cv-01296-TJC-TEM, pending in the United States District Court for the Middle District of Florida

As Plaintiffs noted in their motion for transfer (*see* Plaintiffs Williams' and Naughton's Motion For Transfer Pursuant to 28 U.S.C. § 1407, at 1 n.1 (July 5, 2005)), the *Barber* Action was originally filed in state court and removed to federal court. On January 9, 2006, the United States District Court for the Middle District of Florida denied Plaintiffs' Motion for Remand. Consequently, the *Barber* Action will remain in federal court.

The *Barber* Action shares common questions of fact with the cases the Panel recently transferred to the Northern District of Illinois for coordinated pretrial proceedings before Judge Marvin Aspen (*see* Transfer Order dated Dec. 13, 2005), and is therefore a potential "tag-along" or related action. Like the actions previously transferred, the *Barber* Action challenges Ameriquest's predatory lending practices in soliciting and closing residential mortgage transactions and involves nearly identical allegations regarding Ameriquest's bait and switch tactics and its failure to disclose material loan terms. A true and correct copy of plaintiffs' complaint in the *Barber* Action is attached hereto as Exhibit A.

For the foregoing reasons, Plaintiffs Williams and Naughton respectfully request that the Barber case be transferred to the Northern District of Illinois for coordinated pretrial proceedings.

Dated: January 17, 2006

Respectfully submitted,

By: _____

Gena E. Wiltsek

Elizabeth J. Cabraser
Kelly M. Dermody
Caryn Becker
LIEFF, CABRASER,
HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

-and-

Gena E. Wiltsek
780 Third Ave., 48th Floor
New York, NY 10017
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

*Attorneys for Plaintiffs Cheryl Williams and
Duvall Naughton*

10 /22/04

IN THE CIRCUIT COURT OF THE THIRD
JUDICIAL CIRCUIT IN AND FOR
COLUMBIA COUNTY, FLORIDA

GEORGE BARBER, CRISELLA BARBER,
DEBRA HOLLOWAY, AND LAURENCE
OSTEN, on behalf of themselves and all others
similarly situated,

                Plaintiffs,

    v.

AMERIQUEST CAPITAL CORPORATION
AND AMERIQUEST MORTGAGE
COMPANY,

              Defendants.

_____/

CASE NO.   D4 - 492 - CA

CLASS REPRESENTATION

## CLASS ACTION COMPLAINT

    Plaintiffs, George Barber, Crisella Barber, Debra Holloway, and Laurence Osten,

allege upon information and belief, based upon inter alia the investigation made by Plaintiffs and

by and through their attorneys, as follows:

## I.   NATURE OF THE CASE

    1.     Ameriquest Capital Corporation, through its wholly owned subsidiary

Ameriquest Mortgage Company (together, hereinafter "Ameriquest" or "Defendants"), has

engaged and is engaged in uniform unfair, unconscionable, deceptive, and unlawful business

practices in systematically soliciting and closing residential mortgage transactions in the State of

Florida. Defendants, who are based in Orange, California, target Florida residents for predatory,

"subprime" equity loans. By its predatory loan practices, Ameriquest routinely causes borrowers

to enter into unfair and deceptive residential mortgages without regard for the homeowners'

interests or ability to pay. Ameriquest charges excessive and deceptive fees and interest rates,

344850.3

- 1 -

**Exhibit A**

and includes unfavorable terms, such as an adjustable interest rate and a three-year prepayment penalty, while failing to provide required disclosures to borrowers about the loan terms.

2.      According to the 2003 and 2004 Mortgage Market Statistical Annuals, Ameriquest was the third largest subprime lender by volume during the period October 1999 through December 2003, with $61.8 billion in total originations during the period. Based on estimates from Ameriquest's securitization-filing, Ameriquest has risen to be the top "direct to consumer" subprime mortgage originator, with an estimated $16.84 billion in loan originations for the first 6 months of 2004, a 76% rise over the same period in 2003, and accounting for nearly 25% of the entire subprime retail market. This growth has occurred as a result of Ameriquest's unfair and predatory practices, as alleged herein.

3.      While Ameriquest claims that its philosophy is "Do the Right Thing," Ameriquest's conduct begs the question – the right thing for whom? Ameriquest's policies and common conduct are designed exclusively to unfairly and unlawfully increase its own profits at the expense of the homeowners Ameriquest purports to assist.

4.      Ameriquest trains and encourages its salespersons ("Account Executives" or "AEs") to close as many loans as possible, in the shortest amount of time and with the highest possible principal and excessive fees. In order to accomplish this, Ameriquest engages in unfair, unconscionable, unlawful, and deceptive conduct, including failing to disclose loan terms, failing to provide loan documents prior to closing, engaging in "bait and switch" tactics, concealing unfavorable terms such as prepayment penalties, inflating appraisal values, fabricating income statements, and forging documents.

5.      By virtue of this conduct, Plaintiffs and the Class have been harmed and continue to incur damages and suffer harm. Through this action, Plaintiffs seek, on behalf of

344850.3                                              - 2 -

themselves and all others similarly situated, damages, restitution, injunctive and declaratory relief, and such other relief as is appropriate.

## II.   JURISDICTION AND VENUE

6.   Defendants do business in the State of Florida, and in Columbia County. A substantial portion of the transactions between Plaintiffs and Defendants occurred in Columbia County, State of Florida, in that some of the Plaintiffs reside in Columbia County and their mortgage loans that are the subject of this Complaint were closed in Columbia County.

7.   The amount in controversy exceeds the $15,000.00 jurisdictional minimum of this Court.

## III.   THE PARTIES

### A.   Plaintiffs

8.   Plaintiffs George and Crisella Barber are residents of Lake City, Florida, and have been victims of Ameriquest's practices, as alleged herein.

9.   Plaintiff Debra Holloway is a resident of Tampa, Florida, and has been a victim of Ameriquest's practices, as alleged herein.

10.   Plaintiff Laurence Osten is a resident of Fort White, Florida, and has been a victim of Ameriquest's practices, as alleged herein.

11.   Plaintiffs bring this class action against Defendants pursuant to Florida Rule of Civil Procedure 1.220(b)(1)(A), on behalf of themselves and all persons (i) who presently own, or during the Class Period owned, Florida property (including mobile homes), and (ii) who entered into a mortgage loan transaction relating to such Florida property with any named Defendant or their predecessors, directly or indirectly, at any time between October 21, 2000, and the present (the "Class"). Excluded from the Class are any judicial officer assigned to this matter; Defendants; the parents, subsidiaries and affiliates, officers and directors of

Defendants or any entity in which Defendants have a controlling interest; and the legal representatives, successors, or assigns of any such excluded persons.

**B.     Defendants**

12.     Defendant Ameriquest Mortgage Company is a wholly owned subsidiary of Ameriquest Capital Corporation and has its principal place of business in Orange, California.

13.     Defendant Ameriquest Capital Corporation is a privately held Delaware corporation with its principal place of business in Orange, California.

14.     Defendant Ameriquest Mortgage Company has more than 270 offices nationwide, with 21 branch offices in Florida.

15.     At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of the other Defendants and, in doing the acts alleged herein, were acting within the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of the other Defendants, and ratified, approved, joined in, acquiesced, and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

16.     Defendants, and each of them, aided, abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their fiduciary obligations to Plaintiffs and the Class, as alleged herein. In taking action, as particularized herein, to aid, abet, and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

17.     Defendants are referenced collectively herein as "Ameriquest" or "Defendants."

344850.3                                          - 4 -

## IV. AMERIQUEST'S PATTERN AND PRACTICE OF UNFAIR, UNCONSCIONABLE, UNLAWFUL, AND DECEPTIVE PRACTICES

18. Ameriquest has engaged in and continues to engage in a uniform common plan and scheme to prey upon unsuspecting Florida residents by routinely causing borrowers to enter into inappropriate residential loans with high and adjustable interest rates; unfavorable terms, including a three-year prepayment penalty provision and misleading and inappropriate "discount" fees; and excessive loan principal compared to equity and ability to pay. Defendants train and encourage their Account Executives to engage in any conduct necessary to close the greatest number of loans as quickly as possible and to maximize the total loan principal.

19. Ameriquest routinely pushes borrowers into its standard "228" mortgage loan that includes the following terms: (1) a high initial interest rate; (2) an adjustable interest rate that is fixed for two years and then adjusts upward based on the LIBOR (the London Inter-Bank Offer Rate, *i.e.*, the interest rate that banks charge each other for loans, and which is officially fixed once a day by a small group of large London banks); (3) a "discount" fee of 4-5% or more that does not lower the interest rate; (4) additional excessive closing fees; and (5) a three-year prepayment penalty provision.

20. Ameriquest AEs across the country, including those in Florida, receive daily leads on new customers that are generated by software at Ameriquest's Orange, California, headquarters. These leads target homeowners who are carrying both a mortgage and significant credit card and/or other consumer debt; persons who have mobile home mortgages; persons with less than perfect credit; and other financially vulnerable persons. These Florida homeowners are solicited through repeated mailers, telephone calls, and/or personal visits by Ameriquest sales personnel, all inviting these homeowners to consolidate their debts or to obtain money for expenses, with false and misleading promises of more favorable loan terms and/or reduced

monthly payments. Ameriquest profits by obtaining high fees upfront and high interest rates in the interim, and then by selling its loan portfolios to other companies.

21.     Ameriquest also targets current customers, thereby "flipping" the existing loan by adding to the principal amount due, and, more importantly, tacking on additional high loan generation fees (for instant profit), and even collecting prepayment penalties for a refinance of its own loan, and adding that penalty to the principal of the borrowers' loan, stripping additional equity from the property.

22.     Because Ameriquest profits from the origination and "flipping" of loans, and the subsequent sale of those loans to investment bankers and others as assets for mortgage-based securities, Ameriquest has little concern for the actual risk that the loans might default or with the continued profitability of the loans after origination, except to the extent that Ameriquest can induce existing borrowers to borrow more.

A.     **Bait And Switch Practices of Ameriquest**

23.     Ameriquest engages in "bait and switch" tactics in regard to its residential loan transactions. Ameriquest systematically baits customers into residential mortgage loan transactions with promises of fixed interest rates, low or no fees, low interest rates, lower monthly payments compared to then current payments, no or short-term prepayment penalties, and/or the existence or absence of particular terms. When the paperwork is presented to customers for signature at closing, the terms are contrary to the terms promised.

24.     This practice goes hand in hand with Ameriquest's uniform practice of failing to make disclosures and misrepresenting or concealing loan terms, as well as its aggressive and unfair sales tactics. While each separately is unlawful and unfair, in tandem these practices allow Ameriquest to systematically close loans that benefit Ameriquest to the detriment and misfortune of Plaintiffs and the Class.

344850.3                                              - 6 -

25.     After presenting new or different loan terms, Ameriquest engages in scare and pressure tactics to cause customers to proceed with the transaction, at an adjustable rate instead of a fixed rate, and/or with higher fees and higher interest rates or with terms other than those previously represented.

26.     Ameriquest also has a regular uniform practice of removing certain documents, such as those relating to the prepayment penalty, before presenting the documents to the customer for signing. For this reason and others, customers are systematically denied any meaningful opportunity to discover that the terms on the final documents do not match the prior representations. Accordingly, only after closing the loan and subsequently receiving bills and statements for payment, or when attempting to refinance or sell the property, do these customers ultimately discover that the terms are contrary to the representations.

**B.      Ameriquest's Sales and Marketing Scheme**

27.     Ameriquest has a business practice of using oppressive and harassing marketing techniques to prey upon low income Florida homeowners. Ameriquest employs unfair, unconscionable, deceptive, and high-pressure tactics on a uniform basis to cause borrowers to enter into unfavorable residential loan transactions with it, deliberately upselling the loans to amounts so high in relation to the value of the borrower's home that the borrower will be unable to sell or refinance with Ameriquest's competitors. At all times relevant to this action, Ameriquest's uniform and fundamental business strategy with respect to the sale of home-secured loans has been to:

a.      target homeowners who are carrying both a mortgage and significant credit card and/or other consumer debt;

b.      uniformly hold out to all prospective customers, through the use of misleading promotions and material omissions regarding loan terms, that refinancing and/or

consolidating their debts with Ameriquest will be beneficial and will save them money when in fact it will not;

   c. employ aggressive, misleading, and unfair high-pressure sales tactics to obfuscate loan terms both prior to closing and at closing, if and when customers question loan terms, in order to force the customers to close the loan;

   d. force borrowers into its standard "228" mortgage loan that includes the following terms: (1) a high initial interest rate; (2) an adjustable interest rate that is fixed for two years and then adjusts upward based on the LIBOR (the London Inter-Bank Offer Rate, *i.e.*, the interest rate that banks charge each other for loans, and which is officially fixed once a day by a small group of large London banks); (3) a "discount" fee of 4-5% or more that does not lower the interest rate; (4) additional excessive closing fees; and (5) a three-year prepayment penalty provision;

   e. sell loans to these homeowners in amounts so high in relation to the value of their homes that the resulting debt-to-value ratio (coupled with prepayment penalties and other restrictions) effectively strips their homes of equity and prevents the borrowers from refinancing their loans with Ameriquest's competitors; and

   f. engage in "flipping," or aggressive solicitation of targeted borrowers, including existing Ameriquest customers, to refinance existing loans without benefit to the homeowner and where Ameriquest's sole purpose is to include additional debt and incorporate new costs and fees into the principal of the loan.

   28. Ameriquest systematically trains its sales personnel through standardized sales Presentations (videos), developed under the control of Defendants' corporate headquarters in Orange, California. These videos describe how to engage in high-pressure mortgage sales,

while failing to train employees on the legal requirements and regulations for mortgage lending. Ameriquest trains its sales personnel to routinely rush borrowers through the lengthy, complex documentation of the regulated closing process so as to divert the borrowers' attention from the documented terms of the loans. Moreover, Ameriquest trains its Account Executives to overcome objections raised by borrowers at closing by such tactics as threatening delay or cancellation of the closing, by offering immediate cash pending the closing of the loan, and by assuring borrowers that they can refinance with better terms after improving their credit score, without disclosing that they would be subject to the prepayment penalty and other fees if they did so.

       29.     Ameriquest unfairly and deceptively holds out its mortgage loans as sound financial transactions that will save borrowers money. Ameriquest fails to disclose prior to closing and/or intentionally obfuscates and/or conceals before and at closing the following:

          a.     the high and adjustable interest rates charged on its loans, as well as the risks associated with adjustable rate mortgage ("ARM") loans;

          b.     the high and deceptive "discount" fees and closing fees routinely added to the loan principal;

          c.     the existence of a three-year prepayment penalty, and that such prepayment penalty would make refinancing impossible and/or highly unfavorable for the borrower;

          d.     the fact that the borrowers would have to pay, out of pocket, the cost of homeowners' insurance and property taxes that legitimate lenders include in monthly escrow payments, instead implying or allowing borrowers to believe that the monthly payment includes these costs; and

e.     the fact that far from saving borrowers money (as Ameriquest

systematically claims), the Ameriquest loans would cost borrowers more money overall.

### C.     Ameriquest's Compensation System

30.     Ameriquest has designed its compensation system to reward its AEs for

"upselling" customers' loans, providing incentives for AEs to aggressively sell products in order

to increase the amounts loaned to the maximum permitted by Ameriquest's underwriting goals,

irrespective of the amounts requested by borrowers or supported by the actual value of the home.

The effect of these "upsells" has been to "close the back door" on Ameriquest's customers by

making loans that cannot be refinanced by Ameriquest's competitors.

31.     Ameriquest's compensation scheme also rewards AEs based on quantity

of loans closed per month. The minimum monthly quotas have risen consistently over time,

reaching levels that are significantly higher than the number of loans closed by sales personnel at

other companies. Given that Ameriquest's AEs must reach the minimum quotas in order to be

paid at any reasonable rate, and that the quotas are very high, Ameriquest's policy all but ensures

that its AEs will systematically engage in unfair and deceptive tactics to meet company quotas,

with company knowledge of this widespread practice.

## V.     THE TRANSACTIONS WITH PLAINTIFFS

### A.     George and Crisella Barber

32.     In or about January 2003, Ameriquest contacted George and Crisella

Barber regarding refinancing their existing mortgage loan. Mr. Barber is an older African

American gentleman who is totally disabled and whose income is limited to $1,300.00 per month

in disability and Social Security payments. At the time of the call from Ameriquest, the Barbers'

monthly mortgage obligation was $880.00. Ameriquest offered the Barbers a lower monthly

payment with an initial interest rate of 8.5%.

33.     Ameriquest failed to provide the Barbers with any documents or disclosures prior to closing.  Ameriquest did not provide the Barbers with a good faith estimate or any ARM disclosures.

34.     Within three days of the initial contact, an Ameriquest AE came to the Barbers' residence to close the loan.  There was no notary present at the closing.  The AE did not review the documents with the Barbers.  Ameriquest has not sent the Barbers copies of the signed closing documents.

35.     Instead of the 8.5% that the Barbers were promised, the closing documents reflected an ARM with an initial interest rate of 9.75%.  The Barbers were then told that the increase was due to their poor credit score.

36.     The mortgage also included a three-year prepayment penalty that was not disclosed to the Barbers at or before the time the Barbers signed the documents.

37.     The cost of the mortgage included excessive fees for a "discount" which did not affect the interest rate charged, excessive loan processing fees, and excessive notary fees.

38.     The Barbers' mortgage included the following closing costs:

| FEE/CHARGE | AMOUNT |
| --- | --- |
| Loan Discount Fee | 4% ($5,093.20) |
| Appraisal Fee | $300 |
| Tax Related Service Fee | $70 |
| Flood Search Fee | $16 |
| Lenders Processing Fee | $626 |
| Admin | $239 |
| Application Fee | $360 |
| Settlement/Closing Fee (Title Costs) | $100 |
| Abstract or Title Search (Title Costs) | $50 |
| Title Examination (Title Costs) | $75 |
| Notary Fees (Title Costs) | $300 |
| Title Insurance (Title Costs) | $833.65 |
| Recording Fees | $91.50 |
| State Tax/Stamps | $445.90 |
| State Specific Fee | $254.80 |

| Fee/Charge | Amount |
|---|---|
| Courier Fee | $111.00 |
| **TOTAL** | **$8,966.05**<br>**(7% of total loan)** |

39.     The AE used Mr. Barber's pre-disability profession, as owner of a lawn care business, to "verify" income that no longer existed in order to close the loan. The Barbers' monthly payment under the Ameriquest loan is $1,093.97, compared to their prior monthly payment of $880.00.

40.     The prepayment penalty is preventing the Barbers from seeking relief from the predatory Ameriquest loan with another lender. Ameriquest has since solicited the Barbers to refinance the loan, even though they would have to pay the prepayment penalty, and despite the fact that refinancing would result in further stripping the Barbers' already diminished equity in their residence.

**B.     Debra Holloway**

41.     In or around the middle of 2003, Ameriquest contacted Debra Holloway by phone to inquire whether she had an interest in refinancing her then existing mortgage with U.S. Bank. Ameriquest made representations during this initial conversation that it could lower her monthly mortgage payment by $100.00 per month. The Ameriquest representative also told Ms. Holloway that the lower payment would include her existing *ad valorem* tax obligation, thereby making funds available to her for the payment of the appraisal fee.

42.     Ameriquest did not provide Plaintiff Holloway with any documents or disclosures, including a good faith estimate or any ARM disclosures, prior to closing.

43.     At the closing, Debra Holloway discovered that contrary to the express verbal assurances and representations made by Ameriquest during that initial telephone conversation, her monthly mortgage payment to Ameriquest would be approximately $100.00

more than her prior monthly payment with U.S. Bank. In addition, Ameriquest failed to include Plaintiff Holloway's *ad valorem* taxes in the refinance loan.

44.     Ameriquest inserted a three-year prepayment penalty in Plaintiff Holloway's mortgage loan. Ameriquest did not disclose or explain the prepayment penalty provision.

45.     Upon information and belief, Plaintiff Holloway's mortgage included excessive fees for a "discount" which did not affect the interest rate charged, excessive loan processing fees, and excessive notary fees.

46.     In April 2004, Plaintiff Holloway refinanced her mortgage with Chase Bank. In the process, she had to pay approximately $2,300.00 for an escrow fee to Ameriquest that represented the amount of monies held in escrow for the insurance coverage on her home even though she had paid for coverage separately. Moreover, Plaintiff Holloway was obligated to pay a prepayment penalty of approximately $6,000.00.

### C.     Laurence Osten

47.     In December 2003, Mr. Osten contacted Ameriquest in response to an Ameriquest advertisement for the purpose of refinancing his residence. Ameriquest offered Mr. Osten a loan with an interest rate of 4.5%.

48.     Ameriquest did not provide Plaintiff Osten with any documents or disclosures prior to closing. Ameriquest did not provide Plaintiff Osten with a good faith estimate or any ARM disclosures.

49.     Shortly after the initial contact, a notary arrived at Plaintiff Osten's residence to close the loan. At the time of the closing, no explanations or disclosures were given to Plaintiff Osten.

50.    Plaintiff Osten became aware at closing that the initial interest rate for the loan was 8.5%, not the promised 4.5%. Plaintiff Osten could not back out of the loan because he had already made firm commitments to pay other obligations through the mortgage with Ameriquest.

51.    Ameriquest inserted a three-year prepayment penalty in Plaintiff Osten's mortgage loan. Ameriquest did not disclose or explain the prepayment penalty provision. Plaintiff Osten was not aware of the prepayment penalty until a realtor with whom he had dealings regarding the partial sale of his lot told him that the provision was there. Plaintiff Osten's monthly payments do not include escrow payments for insurance and taxes as was originally represented.

52.    The cost of the mortgage included excessive fees for a "discount" which did not affect the interest rate charged, excessive loan processing fees, and excessive notary fees.

53.    Plaintiff Osten's mortgage included the following closing costs:

| FEE/CHARGE | AMOUNT |
|---|---|
| Loan Discount Fee | 5% ($5,850.00) |
| Appraisal Fee | $300 |
| Tax Related Service Fee | $70 |
| Flood Search Fee | $16 |
| Lenders Processing Fee | $628 |
| Admin | $239 |
| Application Fee | $369 |
| Settlement/Closing Fee (Title Costs) | $150 |
| Abstract or Title Search (Title Costs) | $150 |
| Title Examination (Title Costs) | $150 |
| Notary Fees (Title Costs) | $250 |
| Title Insurance (Title Costs) | $660.00 |
| Recording Fees | $100.50 |
| State Tax/Stamps | $234 |
| State Specific Fee | $409.50 |
| Courier Fee | $50.00 |
| Settlement/Disbursement Fee (Title Costs) | $116.00 |
| TOTAL | $9,742 (8.3% of total loan) |

54. Plaintiff Osten is unable to secure gainful employment due to his disability. Plaintiff Osten's ability to generate income to pay the loan, however, was fabricated by Ameriquest to enable the closing of the loan.

55. Plaintiff Osten is unable to seek relief from another reputable lender due to the prepayment penalty provision of the contract.

## VI. PLAINTIFF CLASS ACTION ALLEGATIONS

56. This lawsuit is brought on behalf of a Class consisting of:

> All persons (i) who presently own, or during the Class Period owned, property (including mobile homes) in Florida, and (ii) who entered into a mortgage loan transaction relating to such Florida property with any named Defendant or their predecessors, directly or indirectly, at any time between October 21, 2000, and the present (the "Class").

> Excluded from the Class are any judicial officer assigned to this matter; Defendants; the parents, subsidiaries and affiliates, officers and directors of Defendants or any entity in which a Defendant has a controlling interest; and the legal representatives, successors, or assigns of any such excluded persons.

57. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs believe that there are tens of thousands of Class members. Detailed information on the Class can be ascertained through appropriate discovery and from records maintained by Defendants and their agents.

58. Plaintiffs' claims are typical of the claims of the members of the Class, as Plaintiffs and all other members of the Class sustained damages arising out of Defendants' wrongful conduct. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and have retained counsel competent and experienced in class action and consumer litigation.

344850.3

59.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Plaintiffs foresee no significant difficulties in managing this action as a class action.

60.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a.      Whether documents, contracts, and practices relating to the transactions between members of the Class and Defendants were unfair, unconscionable, deceptive, untrue, misleading, or omitted material facts and disclosures;

b.      Whether Defendants misrepresented, concealed, and/or failed to disclose loan terms;

c.      Whether Defendants systematically failed to make the disclosures required by law;

d.      Whether Defendants misled Plaintiffs and the Class in connection with marketing, solicitation, sale, operation, and administration of the mortgage loans; and

e.      Whether Plaintiffs and the Class are entitled to the imposition of a constructive trust as a result of, among other things, Defendants' unjust enrichment.

## COUNT I
### (Unfair and Unconscionable Trade Practices)

61.     Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

62.     This is an action for damages pursuant to § 501.211, Fla. Stat. By its wrongful conduct as set forth above, Ameriquest has engaged in unfair methods of competition,

unconscionable acts or practices, and/or unfair or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act ("DUTPA").

   63. Ameriquest's mortgage practices are unfair trade practices in violation of one or more of the following:

   a. The Standards of Unfairness set forth and interpreted by the Federal Trade Commission or by the federal courts, as set forth in DUTPA, §§ 501.203(3)(b) and 501.204;

   b. The law against unfair and deceptive trade practices set forth in 15 U.S.C. §§ 45(a)(1) and incorporated into DUTPA, §§ 501.203(3)(c) and 501.204;

   c. Florida law proscribing unfair methods of competition, unconscionable acts or practices, or unfair acts and practices, as set forth in DUTPA, § 501.204(1), and the decisions of Florida courts; and

   d. Florida law proscribing unlawful mortgage practices, as set forth in §§ 494.0025, 494.0067 and 494.0068, Fla. Stat., as incorporated into DUTPA, § 501.203(3)(c).

   64. Ameriquest routinely engages in unfair and/or unconscionable acts or practices, including the following:

   a. Marketing and selling mortgage loans to Plaintiffs and the Class in a manner intended to hide the true cost of various loan terms and the true disadvantages of those loan terms to Plaintiffs;

   b. Failing to provide customers with good faith estimates of the closing costs prior to closing;

   c. Concealing or failing to disclose loan terms including, but not limited to, the disclosure of the risks and ramifications of an ARM, including: (a) the possible

increase in monthly payments after a certain period of time; and (b) that there is no guarantee that the property value of their residence will increase to allow the option to refinance at a later date; and failing to disclose or recommend that an ARM should not be chosen by a homeowner who will stay in the mortgaged residence for more than 10 years due to the escalation in future payments;

      d.      Marketing and selling mortgage loans to Plaintiffs and the Class using bait and switch practices;

      e.      Fabricating income and employment information so as to achieve mortgage loan closings even when the borrower does not have the ability to pay;

      f.      Presenting incomplete or misleading information related to the cost of loans, particularly in comparison with existing obligations;

      g.      Concealing the existence of prepayment penalty provisions;

      h.      Utilizing unfair, unconscionable, and/or punitive prepayment penalty provisions to discourage and/or prevent Plaintiffs and the Class from refinancing their loans at lower rates with Defendants' competitors;

      i.      Charging discount points that are not justified by any discount provided to Plaintiffs and the Class; and

      j.      Failing to act in good faith and deal fairly in its interactions with Plaintiffs and the Class, including, without limitation, in its form documents.

      65.      Ameriquest's routine practice of charging excessive and deceptive fees and interest rates, including unfavorable loan terms, such as an adjustable interest rate and a three-year prepayment penalty, while failing to provide required disclosures to borrowers about the loan terms, has unfairly affected Plaintiffs and the Class by locking them into high-cost loans

they cannot afford, stripping their homes of equity, and preventing them from refinancing with other lenders.

66.     Ameriquest's unfair and unconscionable practices have caused a substantial cumulative injury to Plaintiffs and the Class.

67.     Plaintiffs derived no benefit from Ameriquest's unfair and unconscionable practices.

68.     Because Ameriquest's practices were dishonest and secret, Plaintiffs had no reasonable opportunity to avoid them.

69.     As a result of Ameriquest's unfair and unconscionable trade practice, Plaintiffs have suffered a loss of money through excess fees, interest paid, and loss of equity.

70.     Plaintiffs and the Class have suffered actual damages as a result of Ameriquest's unfair and unconscionable trade practices and are entitled to a judgment for damages.

71.     Plaintiffs are obligated to pay their attorneys for their services and are entitled to an award of attorneys' fees pursuant to DUTPA, § 501.2105, if they prevail.

### COUNT II
### (Deceptive Trade Practices)

72.     Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

73.     This is an action for damages pursuant to DUTPA, § 501.211. Ameriquest's sales and billing practices are deceptive trade practices in violation of one or more of the following:

    a.      The Standards of Deception set forth and interpreted by the Federal

Trade Commission and by the federal courts, as set forth in DUTPA, §§ 501.203(3)(b) and

501.204;

    b.      The law against deceptive trade practices set forth in 15 U.S.C.

§ 45(a)(1) and incorporated into DUTPA, §§ 501.203(3)(c) and 501.204; and

    c.      Florida law proscribing deceptive acts and practices as set forth in

DUTPA, § 501.204(1), and the decisions of Florida courts.

    74.      Ameriquest systematically engages in the following deceptive acts and/or

practices:

    a.      Marketing and selling mortgage loans to Plaintiffs and the Class in

a manner intended to hide the true cost of various loan terms and the true disadvantages of those

loan terms to Plaintiffs;

    b.      Failing to provide customers with good faith estimates of the

closing costs prior to closing;

    c.      Concealing or failing to disclose loan terms including, but not

limited to, the disclosure of the risks and ramifications of an ARM, including: (a) possible

increase in monthly payments after a certain period of time; (b) no guarantee that the property

value of their residence will increase thereby foreclosing an option to refinance at a later date;

and (c) the recommendation that an ARM should not be chosen by a homeowner who will stay in

the mortgaged residence for more than 10 years due to the escalation in future payments;

    d.      Presenting incomplete or misleading information related to the cost

of loans, particularly in comparison with existing obligations;

    e.      Concealing the existence of prepayment penalty provisions; and

f.      Charging discount points that are not justified by any discount provided to Plaintiffs and the Class.

75.     These practices are likely, or have a tendency or capacity, to mislead Ameriquest's customers or prospective Ameriquest customers acting reasonably under the circumstances.

76.     As a result of Ameriquest's deceptive trade practices, Plaintiffs and the Class suffered a loss and are entitled to recover actual damages.

77.     Plaintiffs are obligated to pay Plaintiffs' attorneys fees for their services and are entitled to an award of attorneys' fees pursuant to DUTPA, § 501.2105, if they prevail.

**COUNT III**
**(Declaratory Judgment and Injunctive Relief**
**Under the Florida Deceptive and Unfair Trade Practices Act)**

78.     Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

79.     This is an action to obtain declaratory relief that Ameriquest's trade practices alleged herein are unfair, unconscionable, or deceptive in violation of DUTPA and to enjoin Ameriquest's further and continuing violations of DUTPA.

80.     As consumers who entered into unfair and deceptive mortgages with Ameriquest, Plaintiffs are aggrieved consumers who have suffered a loss as a result of Ameriquest's unfair or deceptive trade practices and they have standing to seek declaratory relief and an injunction against Ameriquest, both individually and on behalf of the Class.

81.     Plaintiffs and the Class are entitled to declaratory and injunctive relief pursuant to DUTPA, § 501.211, because Ameriquest's trade practices violate one or more of the following:

344850.3                          - 21 -

a.      The Standards of Unfairness and The Standards of Deception set forth and interpreted by the Federal Trade Commission, as set forth in DUTPA, §§ 501.203(3)(b) and 501.204;

b.      The Standards of Unfairness and The Standards of Deception set forth by the Federal Trade Commission and interpreted by the federal courts, as set forth in DUTPA, §§ 501.203(3)(b) and 501.204;

c.      The law against unfair and deceptive trade practices set forth in 15 U.S.C. §§ 45(a)(1) and 45(n) and incorporated into DUTPA, §§ 501.203(3)(c) and 501.204; and

d.      Florida law proscribing unfair methods of competition, unconscionable acts or practices, or unfair or deceptive acts and practices, as set forth in DUTPA, § 501.204(1), and the decisions of Florida courts.

82.     Without a declaration as to the illegality or impropriety of Ameriquest's practices under DUTPA, Ameriquest will continue to cheat unsuspecting consumers who have no reason to suspect that Ameriquest is acting unfairly or unlawfully. Without an injunction, Ameriquest will have no disincentive to engage in similar unconscionable, unfair, or deceptive conduct toward consumers, given the massive potential for profit and market advantage.

83.     Plaintiffs are obligated to pay their attorneys for their services and are entitled to an award of attorneys' fees pursuant to DUTPA, § 501.2105, if they prevail.

84.     Plaintiffs seek the entry of an order declaring Ameriquest's trade practices illegal, enjoining Ameriquest from engaging in such practices in the future, and awarding reasonable attorneys' fees to Plaintiffs.

344850.3

## COUNT IV
### (Violation of Florida Mortgage Lending Act, § 494.0025, Fla. Stat.)

85.     Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

86.     Through the conduct described herein, Ameriquest has systematically violated the Florida Mortgage Brokers Act by:

a.     knowingly and willfully concealing material facts from Plaintiffs and the Class;

b.     engaging in a course of business which operates and continues to operate an unfair, unconscionable, and deceptive trade practice upon Plaintiffs and the Class through the concealment of material terms in connection with the sale of mortgage loans; and

c.     making or using false writings or documents, knowing them to contain false statements or entries.

87.     Such violations by Ameriquest include the following conduct:

a.     Selling mortgage loans to Plaintiffs and the Class in a manner intended to hide the true cost of various loan terms and the true disadvantages of those loan terms to Plaintiffs and the Class;

b.     Failing to provide customers with good faith estimates of the closing costs prior to closing;

c.     Misrepresenting, concealing, or failing to disclose loan terms including, but not limited to, the disclosure of the risks and ramifications of an ARM, including: (a) possible increase in monthly payments after a certain period of time; (b) no guarantee that the property value of their residence will increase thereby foreclosing an option to refinance at a later date; and (c) the recommendation that an ARM should not be chosen by a homeowner who

344850.3                                      - 23 -

will stay in the mortgaged residence for more than 10 years due to the escalation in future payments;

        d.      Inflating property appraisal values to qualify borrowers for loans they cannot afford and/or to maximize loan amounts, resulting in excessive loan-to-value ratios;

        e.      Fabricating income and employment information so as to achieve mortgage loan closings even when the borrower does not have the ability to pay;

        f.      Presenting incomplete or misleading information related to the cost of loans, particularly in comparison with existing obligations;

        g.      Concealing the existence or length of prepayment penalty provisions;

        h.      Utilizing unfair and/or punitive prepayment penalty provisions to discourage and/or prevent Plaintiffs and the Class from refinancing their loans at lower rates with Defendants' competitors;

        i.      Charging discount points that are not justified by any discount provided to Plaintiffs and the Class; and

        j.      Failing to act in good faith and deal fairly in its interactions with Plaintiffs and the Class, including, without limitation, in its form documents.

        88.      As a result of Defendants' wrongful conduct, Plaintiffs and the members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including, but not limited to, the monies paid to Defendants, loss of equity, funds spent to mitigate economic losses, and harm to credit, all in an amount to be determined according to proof at time of trial.

## COUNT V
### (Unjust Enrichment)

89.     Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

90.     By their wrongful acts and omissions, Defendants, and each of them, were unjustly enriched at the expense of Plaintiffs and the Class.

91.     Through their mortgage payments on the predatory and unfair mortgage loans described herein, Plaintiffs and Class members have conferred benefits on Defendants.

92.     Defendants have knowledge of the benefits in the form of mortgage payments that Plaintiffs and the Class have conferred and continue to confer upon them; and Defendants have accepted and retained such mortgage payments.

93.     Due to the circumstances described herein, it would be unjust and unfair for Defendants to retain the benefits conferred upon Defendants by Plaintiffs and the Class.

94.     Plaintiffs and the Class seek restitution from Defendants, and each of them, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, from their wrongful, conduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

1.     Damages;

2.     Restitution and disgorgement according to proof;

3.     Declaratory judgment that Defendants' conduct is unlawful;

4.     Injunctive relief against enforcement of mortgage contracts;

5.     Injunctive relief preventing Defendants from continuing their unfair and unlawful conduct and such other injunctive relief as the Court finds appropriate;

6.     Prejudgment interest at the maximum legal rate;

7.     Costs of the proceedings herein;

8.     Reasonable attorneys' fees; and

9.     All such other and further relief as the Court deems just.

### REQUEST FOR JURY TRIAL

Plaintiffs request trial by jury on all claims so triable.

Dated: October  22 , 2004       Respectfully submitted,

W. Roderick Bowdoin
Florida Bar No. 172237
DARBY PEELE BOWDOIN & PAYNE
P.O. Drawer 1707
Lake City, FL 32056
Telephone: (836) 752-4120
Facsimile: (826) 755-4569

Douglas Bowdoin
Florida Bar No. 310360
DOUGLAS BOWDOIN, P.A.
P.O. Box 2254
Orlando, FL 32802-2254
Telephone: (407) 422-0025
Facsimile: (407) 843-2448

J. Craig Bourne
Florida Bar No. 999466
1520 East Livingston Street
Orlando, FL 32801
Telephone: (407) 894-6750
Facsimile: (407) 894-4735

3448503

- 26 -

Elizabeth J. Cabraser
Kelly M. Dermody
Caryn Becker
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1100
Facsimile: (415) 956-1008

Laurence Tien
Kamran Mashayekh
THE TIEN LAW FIRM, LLP
10235 West Little York Road, Suite 470
Houston, TX 77040
Telephone: (713) 937-0223
Facsimile: (713) 937-0220

*Attorneys for Plaintiffs and the Class*