IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | **Reply to Plaintiffs' Memorandum Concerning Potential Foreclosures; Declaration of Elizabeth Smith; Evidentiary Objections filed concurrently herewith** |

### DECLARATION OF CRAIG VARGA IN SUPPORT OF DEFENDANT AMERIQUEST MORTGAGE COMPANY'S REPLY TO PLANTIFFS' MEMORANDUM CONCERNING POTENTIAL FORECLOSURES

I, Craig Varga, declare as follows:

1.     I am an attorney licensed to practice in the State of Illinois and am a shareholder of the firm Varga Berger Ledsky Hayes & Casey, A Professional Corporation ("Varga Berger"). I am the attorney at Varga Berger primarily responsible for representing Ameriquest Mortgage Company ("Ameriquest") in many of the cases that have been designated by Ameriquest as potential "tag-along" actions to this Multi-District Litigation proceeding. The Plaintiffs in many of these potential "tag-along" actions are represented by the firm of Edelman, Combs, Latturner & Goodwin, LLC.

2.     Attached as Exhibits A and B are excerpts of Ameriquest's Local Rule 56.1(a)(3) Statements of Uncontested Material Facts and the plaintiffs' responses thereto filed in the cases of Hamm v. Ameriquest Mortgage Co., Case No. 05 C 0277, and Jones v. Ameriquest Mortgage Co., et al., Case No. 05 C 0432, which establish that the Edelman firm sent solicitation letters to Ameriquest borrowers in these instances. See, Exhibit A, statement no. 33 and the referenced materials attached hereto and plaintiffs' response to same; Exhibit B, statement no. 29 and the

1

referenced materials attached hereto and plaintiffs' response to same. Further, attached as Exhibit C is an excerpt from Ameriquest's Local Rule 56.1(a)(3) Statement of Uncontested Material Facts in the case of <u>Jimenez v. Ameriquest Mortgage Co., et al.</u>, Case No. 05 C 0277, which establishes that the Edelman firm sent the Ameriquest borrowers a solicitation letter in this case as well. <u>See</u>, Exhibit C, statement no. 31 and the referenced materials attached hereto and plaintiffs' response to same.

3.     If called as a witness, I would and could competently testify to all of the above as within my personal knowledge except as to those matters stated on information and belief and as to those matters, I believe them to be true.

I declare under penalty of perjury under all applicable laws that the foregoing is true and correct and that this Declaration was executed at Chicago, Illinois on February 17, 2006.

Craig A. Varga

2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SARAH HAMM, )
)
        Plaintiff, )
)
    v. )    No. 05 C 0277
)
AMERIQUEST MORTGAGE COMPANY, )    Judge Der-Yeghiayan
)
        Defendant. )

### DEFENDANT'S LOCAL RULE 56.1(a)(3) STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Ameriquest Mortgage Company ("Ameriquest"), pursuant to Local Rule 56.1(a)(3), submits the following as its statement of material facts as to which there is no genuine issue of material fact that prevents the entering of judgment as a matter of law for Ameriquest and against Plaintiff Sarah Hamm ("Plaintiff").

#### Parties, Jurisdiction, and Venue

1.    Plaintiff resides at 12630 St. Louis Avenue, Markham, IL 60428. Hamm dep. transcript, p. 4, l. 14-19, Appendix A.

2.    Ameriquest does not contest subject matter jurisdiction, personal jurisdiction, or venue. Ameriquest's Answer to Amended Complaint ("Answer"), ¶ 2, Appendix B.

3.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. § 1640 (Truth in Lending Act). The plaintiff resides in the District and the transaction occurred here. Plaintiff's Amended Complaint ("Amended Complaint"), ¶¶ 2, 3, Appendix C.

#### Statement of Uncontested Material Facts

4.    Plaintiff filed her original Complaint on January 13, 2005. Plaintiff's Complaint, Appendix D. Plaintiff then filed an Amended Complaint on February 10, 2005. Amended Complaint, Appendix C. Plaintiff's Amended Complaint seeks rescission, statutory damages, attorney's fees and costs for alleged violations of the federal Truth in Lending Act ("TILA"). Amended Complaint, p. 5, Appendix C.

33.     Prior to filing suit, Plaintiff received a solicitation letter from Plaintiff's counsel.

Hamm dep. transcript, pp. 163, l. 6-21, Solicitation Letter, Appendix R.

**Dated: July 22, 2005**                                        Respectfully submitted,

**Ameriquest Mortgage Company,**
Defendant

_____
One of Its Attorneys

Craig A. Varga
Jonathan N. Ledsky
Jaime S. Roginski-Kord
VARGA BERGER LEDSKY HAYES & CASEY
224 South Michigan Avenue, Suite 350
Chicago, Illinois  60604
(312) 341-9400

8

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SARAH HAMM,                            )
                                       )
                 Plaintiff,            )
                                       )
          vs.                          )    No.  05 C 0227
                                       )
AMERIQUEST MORTGAGE COMPANY,           )
                                       )
                 Defendant.            )


The deposition of SARAH BURNETTA HAMM, called by

the Defendant for examination, taken pursuant to the

Federal Rules of Civil Procedure of the United States

District Courts pertaining to the taking of

depositions, taken before MARGARET R. BEDDARD, a

Notary Public within and for the County of Kane,

State of Illinois, and a Certified Shorthand Reporter

of said state, at Suite 350, 224 South Michigan

Avenue, Chicago, Illinois, on the 22nd day of June,

A.D. 2005, at 10:21 a.m.

HAMM vs. AMERIQUEST                    SARAH BURNETTA HAMM, 06/2

Page 162

1 complaint to Ameriquest?
2    A. Well, no, because if you ever talk to
3 anyone they never give you any top brass. You just
4 get a service representative.
5    Q. Have you ever communicated any complaint to
6 a service representative at Ameriquest?
7    A. Yes. But they're so obnoxious.
8    Q. What complaints have you communicated to a
9 service representative?
10    A. When I was late and I was going to tell
11 them that I would pay it at a certain time, pay the
12 late fee or whatever, they were just nasty. They're
13 just nasty people.
14    Q. Okay. And have you ever communicated any
15 other complaint to an Ameriquest service
16 representative?
17    A. No.
18    Q. Other than the time you were late?
19    A. Except stop being nasty. Then when they do
20 that I just won't answer the phone when I know it's
21 them.
22    Q. So they've called you on occasion when you
23 have missed a payment or late?
24    A. Yeah. But the payment will go in. But

Page 163

1 they just be so nasty.
2    Q. During any of those telephone conversations
3 have you ever communicated a complaint to Ameriquest?
4    A. I don't talk to the people anymore because
5 they're nasty talking people.
6    Q. How is it that you came to file this
7 lawsuit?
8    MR. HOFELD: Objection as to form. Vague and
9 ambiguous.
10 BY THE WITNESS:
11    A. I was contacted.
12 BY MR. LEDSKY:
13    Q. Contacted by who?
14    A. From my attorneys.
15    Q. How were you contacted?
16    A. Through a letter.
17    Q. They sent you a letter?
18    A. Yes.
19    Q. Had you called them or asked them to send
20 you a letter?
21    A. No. But I was trying to figure out
22 something with Ameriquest anyway.
23    Q. Had you solicited a letter from them at
24 all?

Page

1    A. No. I'm a former client of theirs. I am a
2 former client of theirs.
3    Q. Regarding this class action with the
4 dentist?
5    A. Right.
6    Q. Okay. What did the letter say?
7    A. I don't remember right offhand.
8    Q. What do you think it said?
9    A. That there was some problems with
10 Ameriquest, which I had heard from other finance
11 people that I know that do work with finance about
12 Ameriquest company. But at that time I paid no
13 attention to it.
14    Q. When you said you had heard it from other
15 people, from who?
16    A. From other individuals that work with
17 finance companies.
18    Q. And who are they?
19    A. Just other real estate people that I don't
20 know right off the bat per conversation in the
21 surroundings and people that talk.
22    Q. And what did they say about Ameriquest?
23    A. That it's one of the worst mortgage
24 companies that exist now.

Page

1    Q. And what about them was so terrible?
2    A. About the way that they finance and how
3 they do people.
4    Q. Were there any specifics?
5    A. In the conversation, you know. Just
6 listening because I would be around the circle.
7 People talk.
8    Q. What did they say other than in general
9 that they were the worst? What did they say
10 specifically about what Ameriquest did wrong?
11    MR. HOFELD: If you know. If you remember.
12 BY THE WITNESS:
13    A. Number one, they spoke about how Amerique
14 had jumped so large and then they jumped from state
15 to state. They're all over now. They was, like,
16 "They come out and they exploit the smaller people
17 and taking their loans. They don't actually always
18 divulge everything that they should to them."
19    I'm just on the outside. I'm an Ameriquest
20 customer. When you're sitting around, they're just
21 talking about mortgages and someone is buying a
22 house. They're just talking. And they were just
23 talking about Ameriquest in that they're one of the
24 worst mortgage companies that there is as of today.

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
### 120 S. LaSalle Street, 18th floor
### Chicago, Illinois  60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email:  edcombs@aol.com
### www.edcombs.com

*Hamm*

**ADVERTISEMENT**

We are writing to you because you obtained a subprime residential mortgage loan during the last three years.  Our firm represents a number of borrowers who have lawsuits against subprime and non-prime lenders. The lawsuits allege that the lenders violated the Truth in Lending Act  as well as state laws protecting borrowers.  Specific claims include:

1.    Failure to provide proper Truth in Lending disclosures and notices of right to cancel (often the latter are not filled out completely).

2.    Illegal points and prepayment penalties.

3.    Adding phony or inflated charges at closing.

4.    Computing interest in a manner that increases the cost to the borrower and is not consistent with their notes and mortgages.

5.    Untimely posting of monthly payments.

If there is a violation, it is possible that you might be able to recover substantial damages.  If you are interested in further information about your potential claims, please contact us at the above address/ telephone number.  We would need to see the documents you received when you obtained the loan.  If you have an adjustable rate loan, we would also like the notice of interest rate changes.

If a violation exists, we would be willing to take the case on a wholly contingent basis (you don't have to pay fees or expenses).

Sincerely yours,

Daniel A. Edelman

**ADVERTISEMENT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RECEIVED

AUG - 5 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| SARAH HAMM, | ) | |
| | ) | |
| Plaintiff, | ) | 05 C 0227 |
| | ) | |
| v. | ) | Judge Der-Yeghiayan |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | Magistrate Judge Nolan |
| | ) | |
| Defendant. | ) | **JURY DEMANDED** |

## I. PLAINTIFF'S RULE 56.1(b)(3) RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTESTED MATERIAL FACTS

Pursuant to Local Rule 56.1(a)(3) of the Rules of the U.S. District Court for the Northern District of Illinois, Plaintiff Sarah Hamm submits the following Response to the Defendant's Statement of Uncontested Material Facts:

### Parties, Jurisdiction, and Venue

1.      Plaintiff resides at 12630 St. Louis Avenue, Markham, IL 60428.  Hamm dep. transcript, p. 4, l. 14-19, Appendix A.

RESPONSE:  Admitted.


2.      Ameriquest does not contest subject matter jurisdiction, personal jurisdiction, or venue.  Ameriquest's Answer to Amended Complaint ("Answer"), ¶ 2, Appendix B.

RESPONSE:  Admitted.


3.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. § 1640 (Truth in Lending Act).

1

in fact plaintiff is not responsible for preparing or evaluating budgets. Plaintiff has only

an eighth grade education.


32.    Plaintiff also previously held a position as a financial advisor with Met Life.

Hamm dep. transcript, p. 23, l. 16-17, Appendix A.

RESPONSE:  Plaintiff objects to the allegations of this paragraph as vague and

immaterial but admits them.


33.    Prior to filing suit, Plaintiff received a solicitation letter from Plaintiff's counsel.

Hamm dep. transcript, pp. 163, l. 6-21, Solicitation Letter, Appendix R.

RESPONSE:  Plaintiff objects to the allegations of this paragraph as immaterial but

admits them.


## II.    PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTESTED MATERIAL FACTS THAT REQUIRE DENIAL OF SUMMARY JUDGMENT/ SUMMARY JUDGMENT FOR PLAINTIFF[1]

---

[1]In her proposed Second Amended Complaint, Ms. Hamm attempted to add allegations that constitute a third ground for rescission under TILA. She attempted to allege that, at her January, 2002, closing, Ameriquest did not provide her with copies of any closing documents whatsoever to keep and that her copies were sent via Fedex two days later. On June 20, 2005, the Court denied her motion for leave to file a Second Amended Complaint. The Court also denied plaintiff's request, in the same motion, to join the current owner and servicer of Ms. Hamm's loan, even though defendant had just disclosed, for the first time on June 9, 2005, that ownership and servicing rights had changed, and plaintiff filed the motion promptly on June 14, 2005.

On July 22, 2005, defendant then filed a statement of material facts and a summary judgment memorandum makes sweeping statements that suggest that defendant's TILA disclosures were proper in every way. For example, defendant argues, slyly, that plaintiff "undisputedly sign[ed] and received the Federal Reserve Board prepared Rescission Model Form H-8, entitled Notice of Right to Cancel...." and that she was "provided with" a Truth in Lending Disclosure Statement. Def's Mem. at 5, 1; Def's SMF, ¶ 25, p.5; Def's Mem. at 12.

Believing that statements such as these "opened the door" by arguing opposite of what

14

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED

SEP 1 4 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

SHIRLEY JONES, )
)
  Plaintiff, )
)
vs. )
) No. 05 C 0432
AMERIQUEST MORTGAGE COMPANY, )
AMERIQUEST MORTGAGE SECURITIES, ) Judge Coar
INC., and AMC MORTGAGE SERVICES, )
INC., )
)
  Defendants. )

**DEFENDANTS' RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1(a)(3)
STATEMENT OF UNCONTESTED MATERIAL FACTS AND
STATEMENT OF ADDITIONAL FACTS THAT REQUIRE DENIAL
OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants, Ameriquest Mortgage Company ("Ameriquest") and Ameriquest Mortgage

Securities, Inc., by their attorneys, respond to Plaintiff's Local Rule 56.1(a)(3) Statement of

Uncontested Material Facts as follows:

　　　　1.　　　This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal
question), 1337 (interstate commerce) and 15 U.S.C. §1640 (Truth in Lending Act). (Amended
Complaint, ¶ 2, attached hereto as <u>Appendix A</u>; Answer to Plaintiff's Complaint, ¶ 2, attached
hereto as <u>Appendix B</u>).

　　　　<u>RESPONSE:</u> Uncontested.

　　　　2.　　　Plaintiff owns and resides in a house at 6151 South Wolcott in Chicago, IL 60426.
Plaintiff owned and resided in the home during March, 2002. (Affidavit of Shirley Jones, ¶ 2,
attached hereto as <u>Appendix C</u>). Plaintiff had no other residence at that time. (<u>Id.</u>, ¶ 3).

　　　　<u>RESPONSE:</u> Contested. Plaintiff co-owns the property with her brother, Timothy Jones.

<u>See,</u> Tab A, Jones dep. transcript, pp. 16-17, l. 19-15.

　　　　3.　　　Defendant Ameriquest Mortgage Company ("Ameriquest") does business in Illinois
(Answer to Plaintiff's Complaint, ¶ 4, <u>Appendix B</u>).

　　　　<u>RESPONSE:</u> Uncontested.

1

amount of $480.01 beginning May 1, 2002 and 1 payment of $462.79 on April 1, 2032. Tab E, Disclosure Form.

22. Upon looking at the Disclosure Form, Plaintiff understood that she was to pay 359 payments beginning on May 1, 2002 and on payment on April 1, 2032. Tab A, Jones dep. transcript, pp. 219-20, l. 15-22.

23. Upon looking at the Disclosure Form, Plaintiff understood that the 359 payments plus one payment equals 360 payments due under the loan which coincides with the 360 month period of the loan. Tab A, Jones dep. transcript, pp. 220-21, l. 23-4.

24. Plaintiff understood both prior to, and after, her loan closing that her payment would be due monthly. Tab A, Jones dep. transcript, p. 137, 7-9, p. 147, l. 7-20; p. 194, l. 4-10; p. 219, l. 11-14.

25. Prior to entering into the loan transaction at issue in this case, Plaintiff's credit history included the payment of monthly credit card, mortgage, and car payments. Tab A, Jones dep. transcript, p. 44-45, l. 23-21; p. 46, l. 12-20; p. 53, l. 16-24; pp. 59-60, l. 10-19; pp. 67-68, 18-3; pp. 73-74, l. 23-1.

26. Plaintiff determined how much she could afford to pay for her loan based on her monthly payment obligations. Tab A, Jones dep. transcript, p. 101, l. 9-17, pp. 103-04, l. 11-6.

27. Plaintiff currently owns and operates her own day care business. Tab A, Jones dep. transcript, p. 27, l. 7-9.

28. Prior to filing suit or retaining her current counsel, Plaintiff received a solicitation phone call followed by a letter from Plaintiff's counsel. Tab A, Jones dep. transcript, pp. 257-260, l. 23-23; Tab S, Solicitation Letter.

10

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHIRLEY JONES,                          )
                                        )
                    Plaintiff,          )
                                        )
          vs.                           )   No. 05 C 0432
                                        )
AMERIQUEST MORTGAGE COMPANY;            )
AMERIQUEST MORTGAGE SECURITIES, INC.;   )
and AMC MORTGAGE SERVICES, INC.,        )
                                        )
                    Defendants.         )


          The deposition of SHIRLEY JONES, called by the

Defendant for examination, taken pursuant to the

Federal Rules of Civil Procedure of the United States

District Courts pertaining to the taking of

depositions, taken before MARGARET R. BEDDARD, a

Notary Public within and for the County of Kane,

State of Illinois, and a Certified Shorthand Reporter

of said state, at Suite 350, 224 South Michigan

Avenue, Chicago, Illinois, on the 2nd day of

September, A.D. 2005, at 10:14 a.m.

Page 258

1   A. I was given a phone call.
2   Q. By who?
3   A. By Al.
4      Well, the company. I don't know if it was
5 Al. It was by the company.
6   Q. Your present law firm called you on the
7 telephone?
8   A. Yes.
9   Q. And what was the purpose of that call?
10   A. They said that I might have a case against
11 Ameriquest because they had some kind of class act
12 lawsuit against Ameriquest.
13   Q. What's a class action lawsuit?
14   A. I don't know.
15   Q. You used that term though.
16   A. That's the term that was given to me.
17   Q. Had you received any kind of written
18 communication from this law firm before they called
19 you?
20   A. No, I hadn't.
21   Q. Do you recall ever receiving any kind of an
22 advertisement from the law firm?
23   A. No, I haven't.
24   Q. The best of your recollection is you never

Page 259

1 got an advertisement from the Edelman firm?
2   A. No.
3   Q. You're agreeing with me, correct?
4   A. You said what now?
5   Q. Do you agree that you never — you don't
6 recall ever getting an advertisement from the Edelman
7 firm?
8   A. No, I haven't.
9   Q. And your best recollection is that your
10 first contact with them is they called you?
11   A. Yes.
12     (WHEREUPON, said document was marked
13     Jones Deposition Exhibit No. 4, for
14     identification, as of 9-2-05.)
15 BY MR. LEDSKY:
16   Q. Ms. Jones, the court reporter's handed you
17 what's been marked as Exhibit 4. If you'd look at
18 the second page of that exhibit.
19     Do you recall ever receiving this letter
20 from the Edelman firm?
21   A. Yes.
22   Q. I thought your testimony was you don't
23 recall ever receiving an advertisement from the
24 Edelman firm?

Page ...

1   A. I didn't know this was an advertisement.
2   Q. What do you call this?
3   A. I thought it was just a letter letting me
4 know about the class act after someone contact m
5 telephone.
6   Q. But you stick with your testimony that th
7 first contact with the Edelman firm was the ph
8 call?
9   A. Yes.
10   Q. And you might have gotten this letter afte
11 the phone call?
12   A. Yes, I did.
13   Q. And do you remember who you spoke to
14 first telephone call?
15   A. No, I do not.
16   Q. Do you remember if it was a man or a woman
17   A. I don't remember.
18   Q. Do you remember if you retained the Edel
19 firm as your lawyer during that first telephone
20   A. Pardon me?
21   Q. Do you remember if you hired the Edelma
22 firm as a lawyer during that first telephone call
23   A. No, I don't remember.
24   Q. Do you remember when you retained — wh

Page ...

1 you hired the Edelman firm to be your lawyer?
2   A. I don't remember.
3   Q. Okay. Do you remember — Have you beco
4 involved in a class action lawsuit?
5   A. What do you mean?
6   Q. You said they contacted you to become
7 involved in a class action lawsuit?
8   A. Yes.
9   Q. Is that the terminology you used?
10   A. Yes, that is the terminology I used.
11   Q. My question is, have you become involved
12 a class action lawsuit?
13   A. I became involved in this lawsuit.
14   Q. This lawsuit —
15   A. Yes.
16   Q. — that we're here on today?
17   A. Yes.
18   Q. Jones versus Ameriquest Mortgage Compa
19   A. Yes.
20   Q. Have you become involved in any other
21 lawsuit?
22   A. Yes.
23   Q. What other lawsuit?
24   A. I guess the subprime residential mortgage

**Jonathan Ledsky**

| | |
|---|---|
| **From:** | Michelle Teggelaar [mteggelaar@edcombs.com] |
| **Sent:** | Wednesday, August 31, 2005 3:01 PM |
| **To:** | Jonathan Ledsky |
| **Subject:** | Jones v. Ameriquest |
| **Attachments:** | jones ad letter.pdf |

Jon:

Attached please find a pdf of the advertisement letter mailed to Ms. Jones, which we are producing prior to the deposition, as agreed. The letter was mailed on October 4, 2004.

MRT

## EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
### 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email: edcombs@aol.com
### www.edcombs.com

ADVERTISEMENT

We are writing to you because you obtained a subprime residential mortgage loan during the last three years. Our firm represents a number of borrowers who have lawsuits against subprime and non-prime lenders. The lawsuits allege that the lenders violated the Truth in Lending Act as well as state laws protecting borrowers. Specific claims include:

1. Failure to provide proper Truth in Lending disclosures and notices of right to cancel (often the latter are not filled out completely).

2. Illegal points and prepayment penalties.

3. Adding phony or inflated charges at closing.

4. Computing interest in a manner that increases the cost to the borrower and is not consistent with their notes and mortgages.

5. Untimely posting of monthly payments.

If there is a violation, it is possible that you might be able to recover substantial damages. If you are interested in further information about your potential claims, please contact us at the above address/ telephone number. We would need to see the documents you received when you obtained the loan. If you have an adjustable rate loan, we would also like the notice of interest rate changes.

If a violation exists, we would be willing to take the case on a wholly contingent basis (you don't have to pay fees or expenses).

Sincerely yours,

Daniel A. Edelman

ADVERTISEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | 05 C 0432 |
| v. | ) | |
| | ) | Judge David H. Coar |
| AMERIQUEST MORTGAGE COMPANY; | ) | |
| AMERIQUEST MORTGAGE SECURITIES, INC. | ) | Magistrate Judge Schenkier |
| and AMC MORTGAGE SERVICES, INC., | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

**PLAINTIFF'S AMENDED RESPONSE TO "DEFENDANTS' STATEMENT OF
ADDITIONAL UNCONTESTED MATERIAL FACTS"**

1.    Plaintiff filed her original Complaint on January 25, 2005. Tab I,

Plaintiff's Complaint, Appendix A. Plaintiff then filed an Amended Complaint on July 28, 2005.

Tab J, Amended Complaint. Plaintiff's Amended Complaint seeks rescission, statutory damages,

attorney's fees and costs for alleged violations of the federal Truth in Lending Act ("TILA").

Tab

J, Amended Complaint, pp.6-7.

    **RESPONSE:**    Undisputed.


2.    In March of 2002, Plaintiff obtained a loan, to be secured by a mortgage

from Ameriquest. Plaintiff's Local Rule 56.1(a)(3) Statement of Material Facts, ¶ 8.

    **RESPONSE:**    Undisputed.


3.    Plaintiff admits that she had an opportunity to read all of the loan

1

28.    Prior to filing suit or retaining her current counsel, Plaintiff received a

solicitation phone call followed by a letter from Plaintiff's counsel. Tab A, Jones dep. transcript,

pp. 257-260, 1. 23-23; Tab S, Solicitation Letter.

**RESPONSE:**    Plaintiff objects that this statement is compound.  Plaintiff

does not dispute that she received a letter.  Plaintiff's counsel disputes that his firm ever placed a

solicitation phone call to Ms. Jones.  Further, plaintiff objects on the ground that

this statement is not material.


29.    Plaintiff believes her current lawsuit contains allegations that Ameriquest

quoted her a fixed payment amount of $600 that has since increased and does not remember it

containing any other claims. Tab A, Jones dep. transcript, p. 264, 1. 5-21.

**RESPONSE:**    Undisputed.  Plaintiff objects on the ground that this

statement is not material.

Respectfully submitted,


s/Al Hofeld, Jr.
Al Hofeld, Jr.


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

11

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NELSON JIMENEZ and MELINDA JIMENEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05 C 1009 |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | Judge Moran |
| WASHINGTON MUTUAL BANK, FA, and | ) | |
| AMC MORTGAGE SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S LOCAL RULE 56.1(a)(3) STATEMENT
OF UNCONTESTED MATERIAL FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Ameriquest Mortgage Company ("Ameriquest"), pursuant to Local Rule 56.1(a)(3), submits the following as its statement of material facts as to which there is no genuine issue of material fact that prevents the entering of judgment as a matter of law for Ameriquest and against Plaintiffs Nelson and Melinda Jimenez ("Plaintiffs").

**Parties, Jurisdiction, and Venue**

1.      Plaintiffs reside at 270 Lilac Drive, Romeoville, IL. Nelson Jimenez dep. transcript, p. 4, l. 13-19, Appendix A; Melinda Jimenez dep. transcript, p. 4, l, 11-13, Appendix B.

2.      Ameriquest does not contest subject matter jurisdiction, personal jurisdiction, or venue. Ameriquest's Answer to Amended Complaint ("Answer"), ¶ 2, Appendix C.

3.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. § 1640 (Truth in Lending Act). The Plaintiffs reside in the District and the transaction occurred here. Plaintiffs' Amended Complaint ("Amended Complaint"), ¶¶ 2, 3, Appendix D.

**Statement of Uncontested Material Facts**

4.      Plaintiffs filed their original Complaint on February 18, 2005. Plaintiffs' Complaint, Appendix E. Plaintiffs then filed an Amended Complaint on August 11, 2005. Amended Complaint, Appendix D. Plaintiffs' Amended Complaint seeks rescission, statutory damages,

Q:    So 359 payments, plus one payment, is 360 payments; is that right?
A:    Yes.
Q:    So you knew that you were going to make 360 payments under the loan?
A:    Yes.
Q:    And that those payments would be due monthly?
A:    Yes.
Q:    And this document summarizes that information?
A:    Yes.

Melinda Jimenez dep. transcript, p. 209, l. 5-16, Appendix B.

27.    Plaintiffs understood both prior to, during, and after their loan closing that their payment would be due monthly. Melinda Jimenez dep. transcript, pp. 107-109, l. 6-1; pp. 140-41, l. 19-13; pp. 173-74, l. 1-19; p. 185, l. 14-17; pp. 192-93, l. 23-12; p. 209, l. 5-16, Appendix B; Nelson Jimenez dep. transcript, pp. 115-17, l. 21-19; p. 121, l. 3-10; p. 124, l. 15-20; p. 126, l. 5-7; p. 127-29, l. 24-7; p. 141, l. 8-19; pp. 169-70, l. 12-20, Appendix A.

28.    Prior to entering into the loan transaction at issue in this case, Plaintiffs' credit history included the payment of monthly credit card, mortgage, and car payments. Melinda Jimenez dep. transcript, pp. 37-38, l. 9-24; pp. 46-48, l. 19-3; pp. 52-53, l. 9-1; pp. 54-56, l. 19-9; p. 79, l. 10-20, Appendix B; Nelson Jimenez dep. transcript, pp. 23-4, l. 17-8; p. 35, l. 9-14; p. 42-5, l. 5-4; p. 48-51, l. 19-9; p. 65, l. 16-24, Appendix A.

29.    Plaintiffs determined how much they could afford to pay for their loan based on their monthly payment obligations. Melinda Jimenez dep. transcript, pp. 110-11, l. 15-15, Appendix B; Nelson Jimenez dep. transcript, p. 170, l. 5-16, Appendix A.

30.    Plaintiff Melinda Jimenez has a Bachelor of Science in Business Administration Accounting. Melinda Jimenez dep. transcript, pp. 6-7, l. 23-3, Appendix B. She formerly worked as an accounting assistant at Amundson Enterprises. Melinda Jimenez dep. transcript, p. 15, l. 1-6, Appendix B.

31.    Prior to filing suit, Plaintiffs received a solicitation letter from Plaintiffs' counsel. Melinda Jimenez dep. transcript, p. 209-11, l. 17-3, Appendix B; Nelson Jimenez dep. transcript, pp. 161-63, l. 5-9, Appendix A; Solicitation Letter, Appendix Q.

**Dated: October 11, 2005**                    Respectfully submitted,

                                               **Ameriquest Mortgage Company,**
                                               Defendant

                                               /s/ Jonathan Ledsky
                                               One of Its Attorneys

Case: 1:05-cv-07097 Document #: 49 Filed: 02/17/06 Page 23 of 29 PageID #:1030

Case 1:05-cv-01009    Document 25    Filed 10/11/2005    Page 2 of 29
JIMENEZ vs. AMERIQUEST                                   NELSON JIMENEZ, 08/30/05

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


NELSON JIMENEZ and MELINDA JIMENEZ, )
                                     )
                Plaintiffs,          )
                                     )
        vs.                          )   No. 05 C 1009
                                     )
AMERIQUEST MORTGAGE COMPANY,         )
WASHINGTON MUTUAL BANK, FA, and      )
AMC MORTGAGE SERVICES, INC.,         )
                                     )
                Defendants.          )


        The deposition of NELSON JIMENEZ, called by the

Defendants for examination, taken pursuant to the

Federal Rules of Civil Procedure of the United States

District Courts pertaining to the taking of

depositions, taken before MARGARET R. BEDDARD, a

Notary Public within and for the County of Kane,

State of Illinois, and a Certified Shorthand Reporter

of said state, at Suite 350, 224 South Michigan

Avenue, Chicago, Illinois, on the 30th day of August,

A.D. 2005, at 10:31 a.m.

NELSON JIMENEZ, 08/30/05                                    JIMENEZ vs. AMERIQUEST

**Page 158**

1  Q. I'm just trying to understand your answer.
2  Did you decide against canceling the loan?
3  A. Because I talked to my wife, you know. I
4 talked to her.
5  Q. So the answer is yes?
6  A. Yes.
7  Q. Okay. And did you look at this Notice of
8 Right to Cancel again?
9  A. Yes.
10  Q. When was the next time you looked at it?
11  A. Maybe on the 23rd of December 2002.
12  Q. So this was going to be the third time you
13 looked at the document?
14  A. Yes.
15  Q. And why did you look at it a third time?
16  A. Considering to cancel it.
17  Q. So you considered canceling it several
18 times?
19  A. Yes.
20  Q. And what did you decide the third time you
21 looked at the document?
22  A. Keep the loan.
23  Q. To keep the loan?
24  A. Yes.

**Page 159**

1  Q. Did you look at it any other time, the
2 Notice of Right to Cancel?
3  A. No.
4  Q. While you were thinking of canceling the
5 loan did you ever look at the document which is 38,
6 the One-Week Cancellation Period document?
7  A. No, because I know I got only three days.
8  Q. So you never looked at the One-Week
9 Cancellation Period document; is that correct?
10  A. He never told me about one-week
11 cancellation.
12  Q. I just want you to answer my question.
13  While you were thinking about canceling
14 after the loan closing, did you ever look at the
15 One-Week Cancellation Period document?
16  A. No.
17  Q. After the loan closing, when was the next
18 time you looked at the One-Week Cancellation Period
19 document?
20  A. I guess never.
21  Q. Never?
22  A. No.
23  Q. Before today?
24  A. Oh, before today?

**Page 160**

1  Q. We looked at it today, right?
2  A. Yeah.
3  Q. Between the loan closing and today did you
4 ever look at this document, the One-Week Cancellation
5 Period?
6  A. Yes.
7  Q. When was that?
8  A. Just probably today.
9  Q. Just today?
10  A. Yeah.
11  Q. So between the loan closing and today,
12 today's the only day you've looked at this document?
13  A. Yes.
14  Q. Yes?
15  A. Yes.
16  Q. Okay. Before today did you ever look at
17 the One-Week Cancellation Period document and put it
18 up next to the Notice of Right to Cancel document and
19 compare the two documents?
20  MR. HOFELD: Objection. Asked and answered.
21  THE WITNESS: Can you repeat that?
22 BY MR. LEDSKY:
23  Q. Sure.
24  Before today did you ever put these two

**Page 161**

1 documents side by side, the Notice of Right to Cancel
2 and the One-Week Cancellation Period document, and
3 ever compare what the two documents said?
4  A. I don't remember, no.
5  Q. How did you come to hire your present
6 lawyer?
7  A. Through the mail.
8  Q. What do you mean through the mail?
9  A. Some ad.
10  Q. They sent you an ad?
11  A. Yes.
12  (WHEREUPON, said document was marked
13  Jimenez Deposition Exhibit No. 4,
14  for identification, as of 8-30-05.)
15 BY MR. LEDSKY:
16  Q. Mr. Jimenez, the court reporter's handed
17 you what's been marked as Exhibit 3. This is — If
18 you look at the second page of Exhibit 3, this is the
19 advertisement letter that your lawyer has represented
20 to me that was sent to you.
21  Could you take a moment and look at this
22 document and see if you agree that this is the letter
23 that you received from them?
24  A. Yes.

Page 158 - Page 161            WICHMANN-KLAWITTER REPORTING LTD., CHICAGO
                                        800 - 803-7900 / 312 - 368-1228

JIMENEZ vs. AMERIQUEST                                    NELSON JIMENEZ, 08/30/05

| Page 162 | Page 164 |
|---|---|
| 1  Q. You agree that this is the letter that you<br>2 received from them?<br>3  A. Yes.<br>4  Q. Have you received more than one letter --<br>5 more than one advertisement letter from the Edelman<br>6 firm?<br>7  A. This is the only one.<br>8  Q. And what did you do when you received this<br>9 letter, if anything?<br>10  A. It mentioned Ameriquest.<br>11  Q. So what did you do, if anything?<br>12  A. I just followed what the letter said.<br>13  Q. What's the letter say? Did you call them?<br>14 Did you write to them?<br>15  A. I believe I called them.<br>16  Q. You called the Edelman firm?<br>17  A. Yes.<br>18  Q. Do you remember who you spoke to?<br>19  A. I don't remember.<br>20  Q. Do you remember if it was a man or a woman?<br>21  A. We send the documents. The documents that<br>22 we had we send to them.<br>23  Q. Before you had received this advertisement<br>24 letter in the mail had you contacted any lawyer with | 1  I mean, if you look through the documents<br>2 that your attorney's produced to me, there are many<br>3 different loan statements that have been produced; is<br>4 that correct?<br>5  A. Yes.<br>6  Q. This one says that your monthly payment<br>7 amount is $1,551.84; is that correct?<br>8  A. Yes.<br>9  Q. And yet it looks like under the column --<br>10 or the section Activity Since Your Last Statement<br>11 that your last payment was for $1,600.<br>12  Do you see that?<br>13  A. Yes.<br>14  Q. Okay. When I reviewed many of these loan<br>15 statements -- monthly loan statements, it looks to me<br>16 that you've at times, and not infrequently at times,<br>17 paid more than what's required under the loan.<br>18  A. I always put extra.<br>19  Q. You always put extra; is that right?<br>20  A. Yes.<br>21  Q. And my question is to you why?<br>22  A. Well, you put more on your principal. It<br>23 may help to lower my interest computation every<br>24 month. |
| **Page 163** | **Page 165** |
| 1 regard to Ameriquest?<br>2  A. No.<br>3  Q. Had you expressed any disappointment to<br>4 Ameriquest with any aspect of your loan?<br>5  A. No.<br>6  Q. Had you thought about filing a lawsuit<br>7 against Ameriquest before receiving this<br>8 advertisement letter from this law firm?<br>9  A. No.<br>10  Q. If you could turn to Exhibit 1, page 179.<br>11 These are the documents that you produced.<br>12  This page 179 appears to be a loan<br>13 statement; is that correct?<br>14  A. Yes.<br>15  Q. And how often do you receive these from<br>16 Ameriquest -- or from AMC Mortgage Services?<br>17  A. Every month.<br>18  Q. Okay. If I'm looking at this one, this<br>19 one's dated April 5, 2005; is that correct?<br>20  A. Yes.<br>21  Q. I just picked this one. Although there are<br>22 many just like it; is that correct?<br>23  A. Page 179?<br>24  Q. Yes. | 1  Q. And how do you know if you put extra that<br>2 it goes to principal and not interest?<br>3  A. Because the scheduled payments is 1551. If<br>4 I added more, the rest then would go to principal.<br>5  Q. And you know that to be true?<br>6  A. Yes.<br>7  Q. Okay. And how long have you been making<br>8 payments in an amount greater than required?<br>9  A. Many times. Most of the time, I believe.<br>10  Q. And did you do this before you even --<br>11 before you had a loan with Ameriquest? Did you do<br>12 this with other loans as well?<br>13  A. Yes.<br>14  Q. And how do you decide whether to pay more<br>15 than is required or not?<br>16  A. Well, it will help to save us money. It<br>17 will help to lower our interest payment.<br>18  Q. And do you recall where you learned that?<br>19  A. Through reading.<br>20  Q. Are you in the habit of reading information<br>21 about consumer finance?<br>22  A. I guess so, yes.<br>23  Q. And what do you read?<br>24  A. I rely on the newspaper most of the time. |

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


NELSON JIMENEZ and MELINDA JIMENEZ, )
                                    )
                   Plaintiffs,      )
                                    )
         vs.                        )   No. 05 C 1009
                                    )
AMERIQUEST MORTGAGE COMPANY,        )
WASHINGTON MUTUAL BANK, FA, and     )
AMC MORTGAGE SERVICES, INC.,        )
                                    )
                   Defendants.      )


    The deposition of MELINDA JIMENEZ, called by the

Defendants for examination, taken pursuant to the

Federal Rules of Civil Procedure of the United States

District Courts pertaining to the taking of

depositions, taken before MARGARET R. BEDDARD, a

Notary Public within and for the County of Kane,

State of Illinois, and a Certified Shorthand Reporter

of said state, at Suite 350, 224 South Michigan

Avenue, Chicago, Illinois, on the 1st day of

September, A.D. 2005, at 10:31 a.m.

JIMENEZ VS. AMERIQUEST

MELINDA JIMENEZ, 09/01/05

| Page 206 | Page 208 |
|---|---|
| 1   A. Yeah, that one too. | 1 Percentage Rate, Finance Charge, Amount Financed, and |
| 2   Q. These two documents; is that right? | 2 Total Payments? |
| 3   A. Yes. | 3   A. Yes. |
| 4   Q. The credit card payoff documents and this | 4   Q. Did you look anywhere else in the document? |
| 5 Notice of Right to Cancel? | 5   A. The amount of payment. |
| 6   A. Yes. | 6   Q. Okay. You told me earlier that you knew |
| 7   Q. And I want to be clear. | 7 the loan was going to be 360 months; is that right? |
| 8    You've looked at no other documents, is | 8   A. Right. |
| 9 that correct, between the time Mr. Gonzalez was at | 9   Q. Okay. And there's a box here that says |
| 10 your house and today? | 10 Your Payment Schedule Will Be. |
| 11   A. Correct. | 11    Do you see that box? |
| 12   Q. Including the document at page 38, the | 12   A. Yes. |
| 13 One-Week Cancellation Period document? You never | 13   Q. And it's got you're going to make 359 |
| 14 look at that since Mr. Gonzalez was at your house | 14 payments. Then it has an amount of the payments, and |
| 15 until today? | 15 then it has when the payments are due. |
| 16   A. Correct. | 16    Do you see that? |
| 17   Q. And your husband never gave it to you to | 17   A. Yes. |
| 18 look at while he was considering canceling the loan; | 18   Q. So it says here your first payment's due |
| 19 is that correct? | 19 February 1, 2003? |
| 20   A. Correct. | 20   A. Yes. |
| 21   Q. And you never read in the One-Week | 21   Q. Which you understood beforehand because you |
| 22 Cancellation Period document beyond the first | 22 looked at the note, right? |
| 23 sentence of the document; is that correct? | 23   A. Yes. |
| 24   A. Correct. | 24   Q. And you -- It's got a final payment of -- |

| Page 207 | Page 209 |
|---|---|
| 1   Q. If we could look at page 24 within | 1 one final payment at January 1, 2033, which you also |
| 2 Exhibit 2. This is entitled Truth-in-Lending | 2 knew because you said you looked at it when you |
| 3 Disclosure Statement. | 3 looked at the note, correct? |
| 4    Is that your signature in the lower, | 4   A. Yes. |
| 5 right-hand corner? | 5   Q. So 359 payments, plus one payment, is 360 |
| 6   A. Yes. | 6 payments; is that right? |
| 7   Q. Okay. Is that your husband's signature to | 7   A. Yes. |
| 8 the left of yours? | 8   Q. So you knew that you were going to make 360 |
| 9   A. Yes. | 9 payments under the loan? |
| 10   Q. Whose handwriting is that with the date? | 10   A. Yes. |
| 11   A. My husband's. | 11   Q. And that those payments would be due |
| 12   Q. Okay. Did you review this document before | 12 monthly? |
| 13 you signed it? | 13   A. Yes. |
| 14   A. No. | 14   Q. And this document summarizes that |
| 15   Q. Did you look at it at all? | 15 information? |
| 16   A. I looked at it. I didn't read everything. | 16   A. Yes. |
| 17   Q. Okay. You glanced at it? | 17   Q. Can you tell me how it is that you hired a |
| 18   A. Yes. | 18 lawyer in this lawsuit -- what the circumstances were |
| 19   Q. Do you remember what portions you did read? | 19 when you hired a lawyer? |
| 20   A. The top portion. | 20   A. Why we hired a lawyer? To represent us. |
| 21   Q. What's the top portion? | 21   Q. Do you know how it is you came to find your |
| 22   A. The percentage rate and the finance | 22 lawyer? |
| 23 charges, total payments. | 23   A. We received a letter. |
| 24   Q. Did you look at the top four blocks, Annual | 24   Q. You received a letter? |

JIMENEZ VS. AMERIQUEST

MELINDA JIMENEZ, 09/01/05

**Page 210**

1  A. Yeah.
2  Q. Do you remember who you received the letter
3 from?
4  A. From Edelman, Combs.
5  Q. From your present law firm?
6  A. Yes.
7  Q. Okay.  And before you received this letter
8 had you ever contacted any lawyer about any possible
9 claim against Ameriquest?
10  A. No.
11  Q. Had you ever thought of suing Ameriquest
12 before you received this letter?
13  A. No.
14  Q. Did you have any complaint with Ameriquest
15 before you received this letter?
16  A. Yeah.  My husband, he complained.
17  Q. What did your husband complain about?
18  A. Because he was late for one payment and he
19 received a letter of foreclosure.
20  Q. Did your husband resolve that?
21  A. Yes.
22  Q. On his own?
23  A. Yes.
24  Q. Other than that one instance, did you have

**Page 211**

1 any complaints against Ameriquest before you received
2 this letter?
3  A. No.
4  Q. Do you recall what the letter said?
5  A. I can't remember.
6      (WHEREUPON, said document was marked
7      Jimenez Deposition Exhibit No. 3,
8      for identification, as of 9-1-05.)
9 BY MR. LEDSKY:
10  Q. Ms. Jimenez, I'm going to -- the court
11 reporter's handed you what's been marked as
12 Exhibit 3.  If you'd look at the second page of this
13 exhibit.  I'll represent to you that your attorney
14 has produced this to me and represented that this is
15 the letter that they sent to you.
16     Why don't you take a moment to read it, if
17 you would.
18  A. Read it out loud?
19  Q. No, no.  Just to yourself.
20     Do you recall receiving the letter from
21 this law firm?
22  A. Yes.
23  Q. Did you review the letter when you received
24 it?

**Page 212**

1  A. Yes.
2  Q. Did your husband review the letter when he
3 received it?
4  A. Yes.
5  Q. You both reviewed it?
6  A. Yes.
7  Q. And do you remember discussing it with your
8 husband?
9  A. Yes.
10  Q. And what did you discuss?
11  A. That we could -- That we going to go ahead.
12  Q. You were going to go ahead and do what?
13  A. To file a lawsuit.
14  Q. You got this letter and you decided
15 immediately you were going to file a lawsuit?  You
16 didn't decide you were going to call a lawyer or
17 anything?  You decided a lawsuit?
18  A. Wait a minute.
19     Yeah.  I think he called.  My husband, he
20 called them.
21  Q. Did you call them?
22  A. No.  It was my husband.
23  Q. Okay.  So you must have decided with your
24 husband that you would at least call the law firm

**Page 213**

1 that had written to you?
2  A. Yes.
3  Q. Before today have you ever spoken to a
4 lawyer at Edelman, Combs, Latturner & Goodwin?
5  A. Yes.
6  Q. How many times?
7  A. Over the phone?
8  Q. Yes.
9  A. Probably three.
10  Q. Can you confirm after reviewing Exhibit 3
11 that this is, in fact, the letter that you received
12 from the Edelman firm?
13  A. Yes.
14  Q. Okay.  Did you receive any other
15 advertisements from the Edelman firm?
16  A. No.
17  Q. Before receiving this letter from the
18 Edelman firm had you ever contacted any lawyer with
19 regard to making a complaint against Ameriquest?
20  A. No.
21  Q. Had you ever thought about contacting a
22 lawyer to make a complaint about Ameriquest?
23  A. No.
24  Q. If you'd look at the first paragraph of

**EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.**
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603-3403
(312) 739-4200
(800) 644-4673
(312) 419-0379 (FAX)
Email: edcombs@aol.com
www.edcombs.com

**ADVERTISEMENT**

Dear Borrower:

We are writing because you obtained a refinancing loan with a company that we have sued on behalf of other borrowers. Our clients claim that they did not receive proper Truth in Lending disclosures.

You may have such a claim. If there is a violation, it is possible that you might be able to cancel the loan, applying all payments made to principal and none to interest. The benefits from canceling a loan depend on its size, the number of payments made, and other factors, but can be $20,000 or more.

In order to qualify: (1) the loan must have been for non-business purposes, (2) you must live in the property securing the loan; (3) the loan must not have been used to buy the property (refinancings and home improvement and cashout loans are OK); and (4) possibly, you must still have the loan outstanding. We also have to find a violation, of course.

If you are interested in further information about your potential claims, please contact us at the above address/ telephone number. We would need to see the documents you received when you obtained the loan.

If a violation exists, we would be willing to take the case on a wholly contingent basis (we get paid part of the benefit you get from canceling the loan).

Sincerely yours,

Daniel A. Edelman

**ADVERTISEMENT**