## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

IN RE AMERIQUEST MORTGAGE CO.
MORTGAGE LENDING PRACTICES
LITIGATION

_____

THIS DOCUMENT RELATES TO: ALL
ACTIONS

MDL No. 1715

Lead Case No. 05-cv-07097

(Centralized before the Honorable
Marvin E. Aspen)

## PLAINTIFFS' REPLY MEMORANDUM
## IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiffs seek limited preliminary injunctive relief that is hardly extraordinary in light of the fact that this litigation involves sub-prime lending abuses in home mortgage transactions. Plaintiffs seek notice to class members of important legal remedies that may expire shortly by operation of law, together with a limited stay of foreclosures, designed to preserve the *status quo*. Temporary and narrowly tailored injunctive relief will allow Plaintiffs an opportunity to organize a management structure for this MDL proceeding, to obtain appropriate discovery, and to formally seek declaratory relief on significant federal rescission claims expressly authorized by Congress. Absent injunctive relief, existing rights are likely to expire by operation of law before a dispositive determination of relevant legal issues by the Court. 15 U.S.C. § 1635(f).

In an apparently unsuccessful attempt to keep the issues simple, Plaintiffs seek notice relief by preliminary injunction rather than more aggressive relief, such as a stay

1

of Ameriquest foreclosures.  Indeed, under Fed. R. Civ. P. 23, the Court need not even certify a class or enter a preliminary injunction to order notice. Rule 23(d)(2) applies in "the conduct of actions to which this rule applies" and provides authority for the Court to require notice to some or all members of the class "for the protection of the members of the class or otherwise for the fair conduct of the action."  Notice may be given "of any step in the action" or to allow individuals "to intervene and present claims or defenses." Fed. R. Civ. P. 23(d)(2).

Ameriquest correctly notes that Plaintiffs propose to send notice that putative class members "may" have the right to cancel their loans, but incorrectly asserts that Plaintiffs' proposal reflects uncertainty about whether class members have the right to cancel.  Plaintiffs have precisely and narrowly defined the class of individuals entitled to injunctive relief.  Plaintiffs propose to send notice that putative class members "may" have the right to cancel only because they do not presume to tell class members how the Court will ultimately rule on this claim.  Plaintiffs do, however, want putative class members to have information necessary to make an informed and timely decision about exercising their rights.

Ameriquest also asserts incorrectly that counsel has requested notice to class members as a type of "marketing" ploy.  This is untrue.  Plaintiffs seek to represent a class because vast numbers of homeowners have been affected by Ameriquest's practices.  Class actions always require notice.  Class notice is mandated under the federal rules, before claims are finally adjudicated, to provide class members with information necessary to protect their legal rights.  Here, counsel seeks early notice because one of the most powerful claims available to the putative class may be lost by

some class members in the face of the inevitable delays attendant to organizing a complicated MDL proceeding.

Finally, Ameriquest asserts that the Court cannot enter the requested preliminary injunction on the record before it. This is incorrect under Seventh Circuit precedent for the reasons discussed in Plaintiffs' opening brief and as further demonstrated below.

**ARGUMENT**

I. **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.**

   **A. The Factual Record is More than Adequate for Preliminary Injunctive Relief**

Plaintiffs have submitted Declarations of Counsel in support of the pending motions. Declarations of Daniel Blinn, Terry Smiljanich and Shennan Kavanagh [Docket Nos. 16, 18, and 19]. By these declarations, Plaintiffs have proffered documents from 197 loan files received from Ameriquest customers and maintained by counsel.[1] Ameriquest argues that the Court cannot order a preliminary injunctive relief based on these affidavits. Ameriquest Mortgage Company's Opposition to Plaintiffs' Motion for Preliminary Injunction, ("Opposition"), pp. 5-6. Ameriquest is wrong.

"Affidavits … are fully admissible in summary proceedings, including preliminary injunction proceedings." *Ty, Inc. v. GMA Accessories*, 132 F.3d 1167, 1171 (7th Cir.1997) (citations omitted). *See also University of Texas v. Camentsch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed. 2d 175 (1981) ("A preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is

---

[1] The alternative to affidavits by counsel is, of course, 197 declarations of named plaintiffs and putative class members. In light of the uniformity of the factual issues and the identical nature of the forms at issue, counsel concluded that proceeding by declaration of counsel would be less duplicative and would provide a cleaner record.

less complete than in a trial on the merits"); *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)("[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings"); *Levi Strauss v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction...."). C*f. Heideman v. South Salt Lake City,* 348 F.3d 1182, 1188 (10th Cir. 2003) ("The Federal Rules of Evidence do not apply to preliminary injunction hearings.")

   "An evidentiary hearing [on a motion for preliminary injunction] is required if the nonmoving party raises genuine issues of material fact in response to a motion for a preliminary injunction...  However, the party seeking the evidentiary hearing must demonstrate that it has 'and intends to introduce evidence that if believed will so weaken the moving party's case as to affect the judge's decision on whether to issue the injunction.'" *Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002) *citing Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997)).

   In an attempt to manufacture a factual dispute where none exists, Ameriquest asserts that is has in its possession completed copies of Notices of Right to Cancel in some cases that differ from those proffered by Plaintiffs' Counsel to the Court. Opposition, p. 6. Even if Ameriquest's assertion is true, the documents Ameriquest presents are legally irrelevant.  Because the Truth in Lending Act is a disclosure statute, the documents delivered to the consumer are required to be complete and accurate, not the documents in Ameriquest's files.  15 U.S.C. § 1635(a) (requiring "delivery" of the appropriate form); 12 C.F.R. § 226.23(b)(1) (delivered documents must contain, *inter alia*, the date the rescission period expires).  *See also* 12 C.F.R. § 226.17(a) (disclosures

4

must be made "in a form that the consumer may keep.")  Indeed, it is disturbing that
Ameriquest or its agents would alter documents after their delivery to borrowers and that
Ameriquest now seeks to present such altered documents to the Court.

Moreover, the evidence submitted by Ameriquest showing completed Notices of
Right to Cancel in their files does not meaningfully rebut the Plaintiffs' evidence that
they received incomplete notices.  Certainly, the evidence Ameriquest submits does not
"so weaken the moving party's case as to affect the judge's decision on whether to issue
the injunction.'" *Promatek Indus., LTD v. Equitrac Corp.,* 300 F.3d 808, 814 (7th Cir.
2002).  Plaintiffs submitted evidence on behalf of 158 borrowers that demonstrates that
those borrowers received incomplete notices – *in the form of the incomplete notices
themselves.*  Ameriquest's factual contention that all the borrowers who have come
forward, and whose incomplete forms have been submitted by counsel, actually received
completed notice flies in the face of common sense.  To accept Ameriquest's contention
that these borrowers actually received completed notices, the court would have to believe
either 1) that 158 borrowers independently and consistently altered their loan files by
removing documents or deleting the last date to cancel before seeking counsel; or 2) that
three different law firms have violated their ethical obligations and put their law licenses
at risk by altering or misrepresenting 158 documents presented to the Court.[2]  Both
scenarios are ridiculous and should be dismissed out of hand.

In order to resolve any lingering doubt on these issues, Plaintiffs have also now
submitted representative declarations from 15 individual Ameriquest customers to

---

[2] *See generally Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983)
(court may rely on the responsibility of lawyers to conduct themselves within the bounds
of professional responsibility).

reinforce the point that customers were not receiving completed copies of the Notice of Right to Cancel. *See* Plaintiff and Class Member Declarations [Docket Nos. 60-74]. If necessary for the Courts' consideration, Plaintiffs can obtain similar declarations from other affected Ameriquest customers whose Notices of Right to Cancel were originally proffered by counsel declaration. Plaintiffs submit only 15 representative declarations at this time in order to avoid unnecessary proliferation of documents filed of record and based on their belief that in the circumstances of the pending motions counsel declarations are sufficient.

Ameriquest also argues that Plaintiffs did not present necessary evidence that the 197 transactions for which Plaintiffs submitted Notices of Right to Cancel were transactions to which the right to cancel applies. Ameriquest contends, without foundation, that the properties involved were not the principal residences of the affected individuals. Opposition, p. 7. Ameriquest ignores its burden under *Ty, supra,* to present evidence rather than argument to put this fact at issue for the purpose of the court's review of the appropriateness of preliminary injunctive relief. Ameriquest indisputably has underwriting documents, including appraisals and loan applications, in each of its files. These underwriting documents would uniformly show the home address of the affected borrowers. If there were truly a factual question about whether Ameriquest has a security interest in the principal residence of the affected customers, Ameriquest could easily have presented records to support their claims on this issue.

Moreover, Ameriquest was not obligated to give a Notice of Right to Cancel to any customer unless the property involved was that customers' principal residence. 15 U.S.C. § 1635(a). The fact that Ameriquest provided a Notice of Right to Cancel is thus

itself evidence that the right exists under federal law.  Finally, this issue is addressed by the additional declarations of named Plaintiffs and putative class members described above. [Docket Nos. 60-74].  These declarations establish that their transactions with Ameriquest included a mortgage on their principal residences – and thus that the right to cancel is applicable to the transactions.[3]

## B. Ameriquest Has Not Made A Legal Argument That Undermines The Plaintiffs' Likelihood Of Success On The Merits.

### 1. *Incomplete Notice*

Ameriquest appears to concede, as it must, that a borrower who receives an incomplete notice of right to cancel retains an extended right to cancel, until that right is terminated by operation of 15 U.S.C. § 1635(f) by sale of the property or expiration of three years.  Under the plain language of the statute and the regulation, the Notice of Right to Cancel form must be "properly completed by the creditor."  15 U.S.C. § 1635(h). Completeness includes providing the last date available to cancel. 12 C.F.R. § 226.23(a)(1)(v). *See Semar v. Platte Valley Fed. Sav. & Loan Assn.,* 791 F.2d 699, 701 (9th Cir. 1986) (violation to provide a notice that does not include the last date to cancel); *Williamson v. Lafferty*, 698 F.2d 767, 768 (1983) (incomplete notice of right to cancel

---

[3] Similarly, Ameriquest argues, without presenting evidence, that Plaintiffs have not met their burden of presenting evidence that money was advanced in connection with refinance transactions.  Again, the fact that the Ameriquest provided the affected borrowers with Notice of Right to Cancel forms is substantial evidence that the statutory right exists, since absent the advance of additional funds, the cancellation forms would not have been necessary.  15 U.S.C. ¶ 1635(e).  Moreover, Ameriquest certainly knows based on its records whether money was advanced in particular transactions and could have presented rebuttal evidence on this issue if there were a legitimate factual basis. Finally, the declarations of Harriet Holder, David and Janet Wakefield, Christopher Bourassa, Lynn Gay and Frank and Martha White [Docket Nos. 60, 65, 67, 69 and 72], by attesting that new money was advanced, provide further factual foundation to the extent the Court believes an open factual issue exists.

violates TILA); *Conner v. Moss, Codilis, Stawiarski Morris, Schneider & Prior, LLP*,

NO. 03 C 904, 2003 WL 21267093, *2 (N.D.Ill. Jun 02, 2003) (incomplete notice).

Ameriquest cites no cases and makes no legal argument to the contrary.

### 2. *Wrong Form of Notice*

Although Ameriquest does attempt to argue that providing the wrong form of

notice is not a fatal defect, it does so only by ignoring the express statutory language of

15 U.S.C. § 1635(h):

> An obligor shall have no rescission rights arising solely from the form of written notice used by the creditor to inform the obligor of the rights of the obligor under this section, *if the creditor provided the obligor the appropriate form of written notice published and adopted by the Board*, or a comparable written notice of the rights of the obligor, that was properly completed by the creditor, and otherwise complied with all other requirements of this section regarding notice.

This statutory language creates the inescapable negative inference that if the creditor

gives the wrong form of written notice published and adopted by the Board, the borrower

retains rescission rights. Section 1635(h) had not yet gone into effect and was therefore

not considered by the court in *Veale vs. Citibank*, 85 F.3rd 577 (11th Cir. 1996), the only

relevant case cited by Ameriquest. The *Veale* court evaluated a transaction that occurred

in July, 1989. 15 U.S.C. § 1635(h) did not go into effect until September, 1995. Publ. L.

No. 204-29, 109 Stat. 274 (September 30, 2005). Thus, *Veale* cannot be considered

precedent that supports Ameriquest's position here.

The other cases Ameriquest cites are inapposite. *Smith v. Highland Bank*, 108

F.3d 1325 (11th Cir. 1997) is wholly irrelevant to the issues before this Court, because it

involves a certificate of confirmation extraneous to the required disclosures rather than a

wrong form or incomplete notice. The unreported case of *ContiMortgage Corp. v.

Delawder*, 2001 WL 884085 (Ohio App. 4 Dist. 2001) is not on point because it involved

a lender providing the wrong number of copies of a completed Notice of Right to Cancel.

Ameriquest cannot point to a single case involving a transaction subsequent to the

enactment of 15 U.S.C. § 1635(h) in which a Court has held that the a creditor can give

the wrong form of Notice promulgated by the Federal Reserve Board, but nevertheless

avoid an extended right to cancel. *See, e.g., In re Porter*, 961 F.2d. 1066, 1077 (3rd Cir.

1992) (providing the wrong form of notice violates TILA and gives rise to the extended

right to cancel).

### 3. *Declaratory and Injunctive Relief Are Available in the Circumstances Present Here.*

Ameriquest argues that the Truth in Lending Act makes no provision for

declaratory or injunctive relief and that therefore such relief is unavailable. Opposition, p.

9. Ameriquest is simply wrong on the law on this issue.

It has long been the law that a statute cannot be read to circumscribe or alter a

District Court's inherent equitable authority absent legislative language in the statute

clearly expressing that intent. *Porter v. Warner Holding Co*., 328 U.S. 395 (1946). The

Seventh Circuit recently acknowledged the vitality of the *Porter* holding. *Bedrossian v.

Northwestern Memorial Hosp.,* 409 F.3d 840 (7th Cir. 2005). A declaratory judgment is

within the equitable authority of the Court and is also available under the Declaratory

Judgment Act.[4]  Nothing in TILA purports to limit the Court's authority with respect to

---

[4] The Declaratory Judgment Act, 28 U.S.C. § 2201 provides:

> In a case of actual controversy within its jurisdiction, except with respect to
> Federal taxes, any Court of the United States, upon the filing of an appropriate
> pleading, may declare the rights and other legal relations of any interested party
> seeking such declaration, *whether or not further relief is or could be sought*.

either equitable remedies or declaratory judgments. *Latham v. Residential Loan Ctrs. of America, Inc.*, No. 03 C 7094, 2004 WL 1093315 *3 (N.D. Ill. May 6, 2004) (Plunkett, J.); *McIntosh v. Irwin Union Bank & Trust, Co.*, 215 F.R.D. 26, 32-33 (D.Mass.2003) (holding class action appropriate for TILA rescission claim, especially when "the plaintiffs seek only declaratory relief"); *Williams v. Empire Funding Corp.*, 183 F.R.D. 428, 435-36 (E.D. Pa. 1998) (granting motion for class certification, conditionally certifying the general class seeking a declaration of the right to seek rescission under TILA pursuant to Rule 23(b)(2)). Indeed, enforcement of a borrower's rescission rights is generally by declaratory judgment. Damages are then available under 15 U.S.C. § 1640. *See, e.g., Jenkins v. Landmark Mortgage*, 696 F. Supp. 1089 (W.D. Va. 1988) (declaratory judgment entered under TILA in favor of enforcement of borrower's rescission).

Virtually since TILA was passed, Courts have held that they have equitable authority to act upon a request of a creditor to condition rescission upon tender of loan proceeds by the borrower. *See, e.g., Williams v. Homestake Mortgage Co.*, 968 F. 2d 1137, 1140 (11th Cir. 1992); *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 254 (6th Cir.1980); *Rachbach v. Cogswell,* 547 F.2d 502, 505 (10th Cir.1976); *Powers v. Sims and Levin,* 542 F.2d 1216, 1222 (4th Cir.1976); *La Grone v. Johnson,* 534 F.2d 1360, 1362 (9th Cir.1976). Additionally, creditors routinely seek declaratory judgments under TILA that they are not required to comply with a borrower's demand for rescission. *See e.g., In re Webster*, 300 B.R. 787, (Bankr.W.D.Okla., Aug 07, 2003); *New Maine Nat. Bank v.*

---

(Emphasis added). Nothing prevents entry of a declaratory judgment in a case grounded in federal statutory rights and the precedents for doing so are too numerous to cite.

*Gendron*, 780 F.Supp. 52 (D.Me., 1991). It would be truly anomalous if creditors could obtain declaratory and equitable relief under TILA, but debtors could not.[5]

## II. THE BALANCE OF HARDSHIPS ARE IN THE PLAINTIFFS' FAVOR AND OTHER REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF ARE ALSO MET.

The Notice sought here would prevent putative class members from losing their rescission rights by operation of law while the Court is considering their well-founded claims. Permanent termination of the statutory legal protections being litigated-- by factors external to the Court's decision-making process such as the passage of time or involuntary transfer of the property-- is plainly a preventable and irreparable harm.

Remarkably, Ameriquest asserts that Plaintiffs "do not specify any hardship that will be suffered by class members if injunctive relief is denied." Opposition, p. 13. If the preventable loss of a class member's home is not a hardship, it is unclear what would be. The Court should reject Ameriquest's invitation to ignore the dual hardship of termination of legal rights intended to prevent foreclosure under 15 U.S.C. § 1635(i) and loss of shelter due to *foreclosure of a home*.

On Ameriquest's side, hardship is limited to payment of the costs of notice. Potentially meritorious rescission claims are not the type of hardship that are appropriate to balance. Ameriquest's bald assertion that it would be harmed by non-meritorious rescission claims is little more than an attempt to bootstrap issues related to likelihood of success on the merits which, in any event, Plaintiffs have demonstrated.

---

[5] The cases Ameriquest cites under the Fair Credit Reporting Act are inapposite because the FCRA provides a more limited grant of jurisdiction than TILA. *Compare* 15 U.S.C. 1681p (limited to enforcement of *liabilities* created under the FCRA *with* 15 U.S.C. § 1640(e) (plenary jurisdictions over "any action under this section.")

Ameriquest also asserts that the generalized consumer protections contained in state foreclosure law are sufficient to protect the *status quo* here. Opposition, p. 12. Ameriquest does not argue, because it cannot, that any of the general provisions at issue provide any notice whatsoever that might alert a borrower to the potential termination of the federal rights at issue in this case. Nor does Ameriquest explain how state law provisions in non-judicial foreclosure states, requiring only pre-foreclosure notice of sale, provide any notice to a consumer that they may have an extended right to cancel or the affirmative right to seek a stay of foreclosure on that basis.

Finally, notice under Fed. R. Civ. P. 23(d) is a virtually certainty at some point in this action. There can be little hardship to Ameriquest if notice to some of its borrowers is required now rather than later. On the other hand, the balance tips decisively in Plaintiffs' favor where, as here, a delay in notice is likely to lead to irretrievable loss of legal rights or shelter.

## III.    THE ATTORNEY GENERAL SETTLEMENT IS NOT A REASON TO DENY PRELIMINARY INJUNCTIVE RELIEF.

Ameriquest and a consortium of state Attorneys General recently announced a settlement that provides $295 million in partial restitution to 725,000 Ameriquest customers. *See* Exhibit A to Supplemental Declaration of Gena E. Wilsek, ("Attorney General Settlement Agreement" at § III. B.) [Docket No. 26]. The settlement is an "opt-in" settlement. Id. at § 7. Thus, each Ameriquest customer will be required to decide whether to accept a payment in exchange for a release of claims. Put simply, individuals who do not accept a settlement payment will retain their right to proceed here or in other

forums. As such, the settlement resolves only the claims of the state entities and the claims of those borrowers who choose to accept a payment and provide a release.

Though the proposed distribution formula is not yet available, simple mathematics indicates that Ameriquest customers will be offered an average payment of $407.[6] Under the settlement agreement, the Attorneys General are gathering data necessary to establish distribution formulae. *See* Attorney General Settlement Agreement at V. Estimates of the earliest date on which notice and claims forms will be mailed range up to one year from the date of settlement. Wiltsek Supp. Decl. at ¶ 3. The Settlement does not even become effective until March 16, 2006. *Id.*

The Attorney General settlement plainly cannot resolve the cases before this Court. Many of the named Plaintiffs have already expressed an intention to decline monetary relief available from the Attorneys General and to proceed with their cases. These individuals are entitled to their day in court. Furthermore, it is inconceivable that all 725,000 eligible homeowners will accept settlement benefits and release their claims. If even 20%[7] of Ameriquest customers decline a settlement payment, they would form a group of 145,000 people eligible for relief in class litigation. This is far more than would be necessary to satisfy the numerosity requirement of Fed. R. Civ. P. 23(a)(1). *Swanson*

---

[6] $295 million divided by 725,000 yields $407. This amount is obviously far less than the value of a remedy which cancels the obligation to pay finance charges. 15 U.S.C. § 1635(b). In addition, the Attorney General settlement has no special provisions for relief to delinquent borrowers who are facing foreclosure.

[7] A recent $525 million predatory lending settlement between the state Attorneys General and Household International resulted in a higher average restitution payment then contemplated under the Ameriquest settlement to a larger group of homeowners (900,000). Nevertheless, approximately 20% of those individuals declined to accept a settlement payment from their state Attorney General to release their claims. The separately filed private class actions then settled for additional benefits to the class valued at more than $150 million. *See* Supplemental Declaration of Shennan Kavanagh at ¶3 and 7-9 [Docket No. 27].

*v. American Consumer Indus.,* 415 F.2d 1326, 1333 n.9 (7th Cir.1969) (40 class members sufficient to satisfy numerosity).

If anything, the pending Attorney Settlement provides an additional reason for the Court to enter the requested injunctive relief.  Borrowers should have full information about their powerful potential rescission remedy before they are asked to decide whether to accept a small payment and release their claims.

IV.     **THE REQUESTED INJUNCTION IS NECESSARY TO MAINTAIN THE** *STATUS QUO*

Ameriquest's effort to characterize the proposed notice as requiring a "disfavored mandatory injunction" is untenable.  As the Seventh Circuit has made clear, the issue is whether the injunction preserves the *status quo*, not simply whether it requires an action by the enjoined party.   *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978).

Ameriquest's attack on the Plaintiffs' notice proposal as "mandatory relief" is particularly ironic.  Under Ameriquest's distinction, a more drastic flat prohibition of foreclosures on putative class members to preserve the *status quo* would be non-mandatory and therefore "favored" over the limited notice option proposed here.

By the requested preliminary injunction, the Plaintiffs do not seek to redress the wrong that has already been committed.  The *status quo* is that members of the putative class have a potential legal right under TILA and they have their homes.  Plaintiffs seek notice so that when the Court is prepared to address the merits of those legal claims, members of the putative class will not already have lost their rights or the homes that the rights are designed to protect.

14

## CONCLUSION

For the foregoing reasons and for those stated in the Plaintiffs' opening brief,

Plaintiffs respectfully request that a preliminary injunction be entered on behalf of the

Rescission Class to preserve the *status quo*.

Respectfully submitted,

Dated: March 1, 2006                                 /s/ Gary Klein

Kelly M. Dermody                                     Gary Klein
Caryn Becker                                         Elizabeth Ryan
LIEFF, CABRASER, HEIMANN                             Shennan Kavanagh
  & BERNSTEIN, LLP                                   RODDY KLEIN & RYAN
Embarcadero Center West                              727 Atlantic Avenue
275 Battery Street, 30th Floor                       Boston, MA  021111-2810
San Francisco, CA  94111-3339                        Telephone:  (617) 357-5500
Telephone:  (415) 956-1000                           Facsimile:  (617) 357-5030
Facsimile:  (415) 956-1008                           klein@roddykleinryan.com


Terry Smiljanich
JAMES, HOYER, NEWCOMBER
  & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL  33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174