# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## DEFENDANTS' SUPPLEMENTAL APPENDIX OF RELATED CASES IN SUPPORT OF AMENDED MOTION FOR REASSIGNMENT OF RELATED CASES

Defendants Ameriquest Mortgage Company, Ameriquest Capital Corporation, Argent Mortgage Company and Town and Country Credit Corporation hereby submit this Supplemental Appendix of Related Cases cited in their Amended Motion for Reassignment of Related Cases for the Court's ease of reference.

///

///

///

| Exh. No. | Case Name | Case No. | Date Original Complaint Filed | Judge | Case Designation |
|---|---|---|---|---|---|
| 1. | *Abercrombie v. Argent Mortgage Co., et al.* | 05C-1687 | 03/22/05 | Filip | TILA |
| 2. | *Castella Williams Harris v. Ameriquest Mortgage Co., et al.* | 05C-4025 | 09/06/05 | Der-Yeghiayan | TILA |
| 3. | *Tammerello v. Ameriquest Mortgage Co., et al.* | 04L-14268 | 12/22/04 | Coar | TILA |

DATED: March 23, 2006

Respectfully submitted,

BUCHALTER NEMER
A Professional Corporation

By: /s/ Bernard E. LeSage
    *Attorneys for Defendants Ameriquest*
    *Mortgage Company, Ameriquest Capital*
    *Corporation, Argent Mortgage Company and*
    *Town and Country Credit Corporation*

Bernard E. LeSage (California Bar No. 61870)
Sarah K. Andrus (California Bar No. 174323)
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

**Exhibit 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED

MAR 2 2 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| LUCILLE ABERCROMBIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ARGENT MORTGAGE COMPANY, LLC and | ) |
| AMERIQUEST MORTGAGE COMPANY, | ) |
| | ) |
| Defendant. | ) |

05C 1687

JURY DEMANDTRATE JUDGE ASHMAN

JUDGE FILIP

## COMPLAINT

### INTRODUCTION

1.     Plaintiff Lucille Abercrombie brings this action against a "subprime" mortgage lender to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA).   Defendants do business in the District and are deemed to reside here.

### PARTIES

3.     Plaintiff owns and resides in a home at 7710 S. Colfax, Chicago, IL 60649.

4.     Defendant Argent Mortgage Company, LLC ("Argent") is a foreign corporation which maintains offices in and does business in Illinois.  Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.   It is engaged in the business

1

of originating "subprime" mortgages and makes more than 26 loans per year.

5.    Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606. It is engaged in the business of originating "subprime" mortgages and makes more than 26 loans per year. It is under common ownership with Argent.

## FACTS RELATING TO PLAINTIFF

6.    Prior to June 5, 2003, plaintiff applied for a mortgage with Argent, through a broker.

7.    Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

8.    The loan was closed on June 5, 2003.

9.    Argent paid the broker $1,696 to increase the interest rate charged to plaintiff above the lowest rate to which she was entitled under Agent's rate structure.

10.    On June 5, 2003, plaintiff signed or received the following documents relating to the loan:

    a.    Note, Exhibit A;

    b.    Mortgage, Exhibit B;

    c.    A Truth in Lending disclosure statement, Exhibit C;

    d.    A notice of right to cancel, Exhibit D;

    e.    A settlement statement on form HUD-1A, Exhibit E, and another on form HUD-1A, Exhibit F .

2

11.     Defendant Ameriquest Mortgage Company has acquired the loan or servicing of the loan.  Plaintiff has been directed to make and has made her payments to Ameriquest. Ameriquest claims an interest in the loan and/ or rights under the loan.

## RIGHT TO RESCIND

12.     Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

(a) **Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**

**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

3

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

## GROUND FOR RESCISSION

13.     The payment schedule is not fully and completely disclosed on <u>Exhibit C</u>.

14.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

## VIOLATIONS ALLEGED

15.     The failure to fully and completely disclose the payment schedule violates 15 U.S.C. §1638 and 12 C.F.R. §226.28.

4

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a.  A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on defendants;

b.  Statutory damages for the underlying disclosure violation;

c.  If appropriate, statutory damages for failure to rescind;

d.  Attorney's fees, litigation expenses and costs.

e.  Such other or further relief as the Court deems appropriate.

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**JURY DEMAND**

Plaintiff demands trial by jury.

_____
Daniel A. Edelman

i:\case\Argent-Aber13.857\pleading\cmplt.wpd

5

# EXHIBIT A

Loan No. 0048059497 - 97,

# FIXED RATE NOTE

June 5, 2003                    Rolling Meadows                    IL
[Date]                              [City]                         [State]

7710 S. COLFAX AVE, CHICAGO, IL 60649
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 169,600.00 (this amount is called "principal"),
interest, to the order of the Lender. The Lender is    Argent Mortgage Company, LLC .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and wh
entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest a
yearly rate of  7.600 %.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6
of this Note.

3. **PAYMENTS**
   **(A)  Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    August 1, 2003.
I will make these payments every month until I have paid all of the principal and interest and any other charg
described below that I may owe under this Note. My monthly payments will be applied to interest before principal.
on  ,  July 1, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called
"Maturity Date."

I will make my monthly payments at:  505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

   **(B)   Amount of Monthly Payments**
My monthly payments will be in the amount of U.S. $1,197.51.

4. **BORROWER'S RIGHT TO PREPAY**
I may repay this Note at any time without a penalty.

5. **LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
other loan charges collected or to be collected in connection with this loan exceed the permitted limits; then; (i) a
such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) a
sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choc
to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refu
reduces principal, the reduction will be treated as a partial prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A)  Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of   fifteen  calendar days a
the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000 % of my over
payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   **(B)   Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   **(C)   Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount
certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been
and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the noti
delivered or mailed me.

Initials: _____

Loan No. 0048059497 - 9701

(D)  No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as describ
above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right
be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law
Those expenses include, for example, reasonable attorney's fees.

7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give th
Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to th
Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that differen
address.

8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises mad
in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser o
this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations o
a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Not
Holder may enforce its rights under this Note against each person individually or against all of us together. This mean
that any one of us may be required to Pay all of the amounts owed under this Note.

9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor
means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the
Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the sam
date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that
make in this Note. That Security Instrument describes how and under what conditions I may be required to mak
immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in
is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person
without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secure
by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of th
date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide
period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sum
secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lende
may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.


WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED


_Lucille Abercrombie_ _____ (Seal)
Borrower:   LUCILLE ABERCROMBIE
SSN:  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

_____ (Sea
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

_____ (Sea
Borrower:
SSN:

Initials

06/05/2003 9:25:50 AM

# EXHIBIT B

Return To:

Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

Prepared By:Argent Mortgage Company, LLC

Janine Iuliano
2550 Golf Road, East Tower
Floor #10,Rolling Meadows,
IL 60008

———————————————[Space Above This Line For Recording Data]———————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 5, 2003
together with all Riders to this document.
(B) "Borrower" is LUCILLE ABERCROMBIE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Corporation
organized and existing under the laws of Delaware

0048059497-9701

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014 1/01

-6(IL) (0005)
Page 1 of 15          Initials
VMP MORTGAGE FORMS - (800)521-7291

06/05/2003 9:25:50 AM

Lender's address is One City Boulevard West  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated June 5, 2003
The Note states that Borrower owes Lender one hundred sixty-nine thousand six hundred
and 00/100                                                                        Dollars
(U.S. $ 169,600.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 1, 2033

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.



(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the

County                                                                                    [Type of Recording Jurisdiction]
of COOK                                                      [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 21303210150000                          which currently has the address of
7710 S. COLFAX AVE                                                                        [Street]
CHICAGO                                                [City], Illinois 60649            [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0048059497 - 9701
Initials [signature]

-6(IL) (0005)                        Page 3 of 15   06/05/2003 9:25:50 AM Form 3014  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0048059497 - 9701
Initials: _____



due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



0048059497 - 9701
Initials:

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

0048059497 - 9701
Initials

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
LUCILLE ABERCROMBIE                    -Borrower

_____

_____ (Seal)
                                       -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                                       -Borrower

0048059497 - 9701

-6(IL) (0005)                Page 14 of 15  06/05/2003 9:25:50 AM  Form 3014  1/01

STATE OF ILLINOIS,                    County ss: *Cook*

I, *Carol A Jegerski* _____ a Notary
Public in and for said county and in said state, hereby certify that

_____ *LUCILLE ABERCROMBIE* _____
_____ *Single person* _____

_____

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing
instrument, appeared before me this day in person, and acknowledged that he/she/they signed
and delivered the said instrument as his/her/their free and voluntary act, for the uses and
purposes therein set forth.

Given under my hand and official seal of this *June 5, 2003*

My Commission Expires: *6/25/03*


*Carol A Jegerski*
Notary Public

"OFFICIAL SEAL"
Carol A. Jegerski
Notary Public, State of Illinois
My Commission Exp. 06/25/2003

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 5th       day of June, 2003      ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to Argent Mortgage Company, LLC

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
7710 S. COLFAX AVE, CHICAGO, IL  60649

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

0048059497

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Initials
Page 1 of 4                           Form 3170 1/01
-57R (0008)        VMP MORTGAGE FORMS - (800)521-7291    06/05/2003 9:25:50 AM

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

06/05/2003 9:25:50 AM
0048059497

Initials

**LMP** -57R (0008)            Page 2 of 4            Form 3170 1/01

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

06/05/2003 9:25:50 AM

0048059497

Initials:

-57R (0008)          Page 3 of 4          Form 3170 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_Lucille Abercrombie_ _____ (Seal)  
LUCILLE ABERCROMBIE                -Borrower

_____ (Seal)  
                                    -Borrower

_____ (Seal)  
                                    -Borrower

_____ (Seal)  
                                    -Borrower

_____ (Seal)  
                                    -Borrower

_____ (Seal)  
                                    -Borrower

_____ (Seal)  
                                    -Borrower

_____ (Seal)  
                                    -Borrower

0048059497

VMP-57R (0008)          Page 4 of 4          Form 3170 1/01  
                                 06/05/2003 9:25:50 AM

# EXHIBIT C

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary    ☒ Final

LENDER: Argent Mortgage Company, LLC
2550 Golf Road, East Tower Floor #10
Rolling Meadows, IL 60008
(847)640-0116

Broker License: 4644

Borrowers: LUCILLE ABERCROMBIE

Type of Loan: FIXED RATE
Date: June 5, 2003

Address:    7710 S. COLFAX
City/State/Zip:   CHICAGO,IL 60649

Loan Number: 0048059497 - 9701

Property:    7710 S. COLFAX AVE, CHICAGO, IL 60649

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.900 % | $ 267,093.15 | $ 164,000.49 | $ 431,093.64 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $1,197.51 | 08/01/2003 | | | |
| 1 | $1,187.55 | 07/01/2033 | | | |

**VARIABLE RATE FEATURE:**
☐ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 7710 S. COLFAX AVE, CHICAGO, IL 60649

**ASSUMPTION:** Someone buying this property ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to Argent Mortgage Company, LLC

**LATE CHARGES:** If a payment is late, you will be charged 5.000% of the overdue payment .

**PREPAYMENT:** If you pay off your loan early, you
☐ may ☒ will not have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Lucille Abercrombie_    6-5-03
Borrower LUCILLE ABERCROMBIE    Date     Borrower     Date

Borrower     Date     Borrower     Date

# EXHIBIT D

## NOTICE OF RIGHT TO CANCEL

LENDER:  Argent Mortgage Company, LLC

DATE:  June 5, 2003
LOAN NO.:  0048059497 - 9701
TYPE:  FIXED RATE

BORROWER(S): LUCILLE ABERCROMBIE

ADDRESS:  7710 S. COLFAX
CITY/STATE/ZIP:  CHICAGO,IL 60649

PROPERTY:  7710 S. COLFAX AVE
CHICAGO,  IL  60649

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
| JUNE 5, 2003 |

; or

2.  The date you received your Truth in Lending disclosures; or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Argent Mortgage Company, LLC**
**One City Boulevard West**
**Orange, CA 92868**

ATTN:  FUNDING
PHONE:  (888)311-4721
FAX:      (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
| JUNE 9, 2003 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____          _____
SIGNATURE                                                          DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_Lucille Abercrombie_          6-5-03
BORROWER/OWNER LUCILLE ABERCROMBIE          Date          BORROWER/OWNER          Date

_____          _____
BORROWER/OWNER          Date          BORROWER/OWNER          Date

1004-NRC (Rev 6/99)

LENDER COPY

## NOTICE OF RIGHT TO CANCEL

LENDER:  Argent Mortgage Company, LLC

DATE:  June 5, 2003
LOAN NO.:  0048059497 - 9701
TYPE:  FIXED RATE

BORROWER(S): LUCILLE ABERCROMBIE

ADDRESS:       7710 S. COLFAX
CITY/STATE/ZIP:  CHICAGO, IL 60649

PROPERTY:  7710 S. COLFAX AVE
           CHICAGO, IL 60649

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

**ENTER DOCUMENT SIGNING DATE**

_June 5, 2003_                              ; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Argent Mortgage Company, LLC**          ATTN:  FUNDING
**One City Boulevard West**               PHONE: (888)311-4721
**Orange, CA 92868**                      FAX:    (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**

_June 9, 2003_

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____          _____
SIGNATURE                              DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_Lucille C. Abercrombie_          _6-5-03_
BORROWER/OWNER LUCILLE ABERCROMBIE    Date    BORROWER/OWNER                 Date

_____          _____
BORROWER/OWNER                    Date    BORROWER/OWNER                 Date

1064-NRC (Rev 6/99)

**BORROWER COPY**                                    06/05/2003 9:25:50 AM

## NOTICE OF RIGHT TO CANCEL

LENDER:  Argent Mortgage Company, LLC

DATE:  June 5, 2003
LOAN NO.:  0048059497 - 9701
TYPE:  FIXED RATE

BORROWER(S): LUCILLE ABERCROMBIE

ADDRESS:       7710 S. COLFAX
CITY/STATE/ZIP:  CHICAGO, IL 60649

PROPERTY:  7710 S. COLFAX AVE
            CHICAGO, IL 60649

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

   ENTER DOCUMENT SIGNING DATE
   _June 5, 2003_                                       ; or

2.  The date you received your Truth in Lending disclosures; or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Argent Mortgage Company, LLC**          ATTN:  **FUNDING**
**One City Boulevard West**               PHONE: **(888)311-4721**
**Orange, CA 92868**                      FAX:    **(714)347-1575**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

   ENTER FINAL DATE TO CANCEL
   _June 9, 2003_

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____          _____
SIGNATURE                         DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_Lucille Abercrombie_              _6 5-03_         _____         _____
BORROWER/OWNER LUCILLE ABERCROMBIE    Date         BORROWER/OWNER                   Date

_____            _____           _____         _____
BORROWER/OWNER                      Date           BORROWER/OWNER                   Date

1064-NRC (Rev 6/99)

**BORROWER COPY**

06/05/2003 9:25:50 AM

# EXHIBIT E

## A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

| B. Type of Loan | | |
|---|---|---|
| 1.☐ FHA    2.☐ FmHA    3.☒ Conv. Unins.    4.☐ VA    5.☐ Conv. Ins. | 6. File Number<br>031658 | 7. Loan Number<br>0048059487-9701 | 8. Mortgage Insurance Case Number |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| LUCILLE ABERCROMBIE<br>7710 S. COLFAX AVENUE<br>CHICAGO, IL 60649 | | ARGENT MORTGAGE COMPANY, LLC<br>2550 W.GOLF ROAD EAST TOWER FLOOR #10<br>ROLLING MEADOWS, IL 60008 |

| G. Property Location | H. Settlement Agent |
|---|---|
| 7710 S. COLFAX AVENUE<br>CHICAGO, IL 60649 | CITY SUBURBAN TITLE SERVICES COMPANY |

| | Place of Settlement<br>1000 Skokie Boulevard<br>Wilmette, IL 60091 | I. Settlement Date<br>05/05/03<br>DD: 05/10/03 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 9,642.14 | 403. | |
| 104. PAYOFF HOMEQ | 154,682.61 | 404. | |
| 105. PAY CAPITAL ONE BANK | 1,909.00 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes            to | | 406. City/town taxes            to | |
| 107. County taxes              to | | 407. County taxes              to | |
| 108. Assessments              to | | 408. Assessments              to | |
| 109. PAY CAPITAL ONE BANK | 1,203.00 | 409. | |
| 110. PAY MBG/JC PENNEY | 681.00 | 410. | |
| 111. TI HOLDBACK FEE/PAY 2000, 1999 SOLD TAXES | 4,000.00 | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 172,127.75 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 169,600.00 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loans taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes            to | | 510. City/town taxes            to | |
| 211. County taxes              to | | 511. County taxes              to | |
| 212. Assessments              to | | 512. Assessments              to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY / FOR BORROWER | 169,600.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 172,127.75 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 169,600.00 | 602. Less reduction amount due to seller (line 520) | |
| 303. CASH        FROM      BORROWER | 2,527.75 | 603. CASH        TO        SELLER | 0.00 |

05-05-2003 at 3:56 PM.

RESPA, HB 4305.2 - REV. HUD1(3/86)

File Number: 031658

PAGE 2

| L. SETTL. ... CHARGES: | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL ...ES/BROKER'S COMMISSION based on price $ ( = | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ to INVENTIVE MORTGAGE | | | |
| 702. $ to | | | |
| 703. Commission paid at Settlement | | | |
| 704. BALANCE DUE COMMISSION | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | P.O.C. | | |
| 801. Loan Origination Fee % INVENTIVE MORTGAGE | | 3,352.00 | |
| 802. Loan Discount % | | | |
| 803. Appraisal Fee to | | | |
| 804. Credit Report to INVENTIVE MORTGAGE | | 50.00 | |
| 805. Lender's Inspection Fee to | | | |
| 806. Mtg. Ins. Application Fee to | | | |
| 807. Assumption Fee to | | | |
| 808. FLOOD SEARCH FEE ARGENT MORTGAGE COMPANY, LLC | | 16.00 | |
| 809. TAX SERVICE CONTRACT ARGENT MORTGAGE COMPANY, LLC | | 70.00 | |
| 810. UNDERWRITING FEE ARGENT MORTGAGE COMPANY, LLC | | 375.00 | |
| 811. ADMINISTRATION FEE ARGENT MORTGAGE COMPANY, LLC | | 175.00 | |
| 812. PROCESSING FEE INVENTIVE MORTGAGE | | 500.00 | |
| 813. PREMIUM YIELD ADJUSTMENT INVENTIVE MORTGAGE | 1695L | | |
| 814. | | | |
| 815. | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest from 06/10/03 to 07/01/03 @$ 35.31 /day 21 day(s) | | 741.51 | |
| 902. Mortgage Insurance Premium to | | | |
| 903. Hazard Insurance Premium yrs. to AMERICAN FAMILY INSURANCE | | 785.14 | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. Hazard Insurance 7 mo. @$ 97.33 /mo. | | 681.31 | |
| 1002. Mortgage Insurance mo. @$ /mo. | | | |
| 1003. City property taxes mo. @$ /mo. | | | |
| 1004. County property taxes 7 mo. @$ 250.24 /mo. | | 1,751.68 | |
| 1005. Annual Assessments mo. @$ /mo. | | | |
| 1006. mo. @$ /mo. | | | |
| 1007. mo. @$ /mo. | | | |
| 1008. Aggregate Reserve for Hazard/Flood Ins. City/County Prop Taxes, Mortgage Ins & Annual Assessments | | 0.00 | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement or closing fee to CITY SUBURBAN TITLE SERVICES COMPANY | | 150.00 | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title Insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| (includes above Item No: ) | | | |
| 1108. Title Insurance to CITY SUBURBAN TITLE SERVICES COMPANY | | 500.00 | |
| (includes above Item No: ) | | | |
| 1109. Lender's coverage 169,600.00 — 500.00 | | | |
| 1110. Owner's coverage | | | |
| 1111. EPA Endorsement CITY SUBURBAN TITLE SERVICES COMPANY | | 50.00 | |
| 1112. Location Endorsement CITY SUBURBAN TITLE SERVICES COMPANY | | 50.00 | |
| 1113. | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording fees Deed $ ; Mortgage $ 64.00 ; Releases $ 30.50 | | 94.50 | |
| 1202. City/county/stamps Deed $ ; Mortgage $ | | | |
| 1203. State tax/stamps Deed $ ; Mortgage $ | | | |
| 1204. CITY/VILLAGE TRANSFER TAX - | | | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey to | | | |
| 1302. Pest Inspection to | | | |
| 1303. Express Mail Payoff CITY SUBURBAN TITLE SERVICES COMPANY | | 20.00 | |
| 1304. Express Mail Lender's Package CITY SUBURBAN TITLE SERVICES COMPANY | | 30.00 | |
| 1305. TI HOLDBACK FEE CITY SUBURBAN TITLE SERVICES COMPANY | | 100.00 | |
| 1306. | | | |
| 1307. TITLE UPDATE FEE CITY SUBURBAN TITLE SERVICES COMPANY | | 50.00 | |
| 1308. COURIER FEE CITY SUBURBAN TITLE SERVICES COMPANY | | 60.00 | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | 9,842.14 | 0.00 |

PLEASE NOTE: THE RECORDING FEES AS LISTED IN SECTION 1200 OF THE SETTLEMENT STATEMENT ARE AN ESTIMATE OF WHAT WILL BE CHARGED BY THE COUNTY RECORDER'S OFFICE. THEY MAY OR MAY NOT INCLUDE A SERVICING OR PROCESSING FEE WHICH WILL BE RETAINED BY CITY SUBURBAN TITLE. ANY OVERAGE (OR SHORTAGE) OF THE ACTUAL COST TO RECORD THE DOCUMENTS INCLUDING ANY RELEASES WE ANTICIPATE RECEIVING AND ANY UNUSED OR UNEARNED PORTION OF THE RECORDING FEES WILL NOT BE REFUNDED TO (OR COLLECTED FROM) THE PARTIES TO THE TRANSACTION.

RESPA, HB 4305.2 - REV. HUD1(3/85)

## HUD-1 SETTLEMENT STATEMENT

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Please Note: The recording fees as listed in section 1200 of this Settlement Statement are an estimate of what will be charged by the county recorder's office. They may or may not include a servicing or processing fee which will be retained by City Suburban Title. Any overage (or shortage) of the actual cost to record the documents including any releases we anticipate receiving and any unused or unearned portion of the recording fees, will not be refunded to (or collected from) the parties to the transaction.

_Lucille Abercrombie_

LUCILLE ABERCROMBIE

To the best of my knowledge the HUD-1 Settlement statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

By: _Carol Jagersta_                 Date: June 5, 2003

CITY SUBURBAN TITLE, Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For detail see: Title 18: U.S. Code Section 1001 and Section 1010.

### SUBSTITUTE FORM 1099

SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on Line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide CITY SUBURBAN TITLE with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

CERTIFICATION: Under penalties of perjury, I certify that the taxpayer identification number(s) and address(es) shown on this page of the Settlement Statement are correct.

Gross Proceeds:

Social Security Number                            Social Security Number

Forwarding Address                               Forwarding Address

Telephone                                      Telephone

**CITY SUBURBAN TITLE SERVICE COMPANY, INC.**
1000 Skokie Boulevard, Suite 120, Wilmette, Illinois 60091
Telephone: 847-256-6220 Fax: 847-256-0414

# EXHIBIT F

| Settlement Statement | U.S. Department of Housing | OMB Approval No. 2502-0491 |
|---|---|---|

Optional Form for
Transactions without Sellers
and Urban Development
WLI

| Name & Add. Borrower: | | Address of Lender: |
|---|---|---|
| LUCILLE ABERCROMBIE | | Mortgage Company, LLC |
| | | 2550 Golf Road, East Tower Floor #10 |
| 7710 S. COLFAX  CHICAGO, IL 60649 | | Rolling Meadows, IL 60008 |
| Property Location: (If different from above) | | Settlement Agent: CITY SUBURBAN TITLE |
| 7710 S. COLFAX AVE, CHICAGO, IL 60649 | | Place of Settlement: 1000 SKOKIE BLVD |
| | | Wilmette, IL 60091 |

| L. Settlement Charges | | | Loan Number: 0048059497 - 9701 | Settlement Date: Estimate 06/10/2003 |
|---|---|---|---|---|

| 800. Items Payable in Connection with Loan | | M. Disbursement to Others | | |
|---|---|---|---|---|
| 801. Loan origination fee  % to | | | | |
| 802. Loan discount  % to | | 1501. CAPITAL ONE BANK | (W) | $1,9 |
| 803. Appraisal fee to | $0.00 | | | |
| 804. Credit report to | | 1502. CAPITAL ONE BANK | (W) | $1,2 |
| 805. Inspection fee to | | | | |
| 806. | | 1503. HOMEQ | (W) | $157.1 |
| 807. | | | | |
| 808. Yield Spread Premium to INVENTIVE MORTGAGE | *L $1,696.00 | 1504. MBGA/JC PENNEY | (W) | $6 |
| 809. | | | | |
| 810. Tax Related Service Fee to Argent Mortgage Company, | $70.00 | 1505. 99 and 00 sold taxes | (W) | $8,5 |
| 811. Flood Search Fee to Argent Mortgage Company, LLC | $16.00 | | | |
| 812. Lenders Processing Fee to | | 1506. AMERICAN FAMILY | (W) | $7 |
| 813. Admin to Argent Mortgage Company, LLC | $175.00 | | | |
| 814. Doc. Prep. Fee to | | 1507. | | |
| 815. Credit Report Fee to INVENTIVE MORTGAGE | $50.00 | | | |
| 816. Origination Fee 2.000 % to INVENTIVE MORTGAGE | $3,392.00 | 1508. | | |
| 817. Application Fee to | | | | |
| 818. Underwriting Fee to | | 1509. | | |
| 819. Service Provider Fee to | | | | |
| 820. Processing Fee to INVENTIVE MORTGAGE | $500.00 | 1510. | | |
| 821. Underwriting Fee to Argent Mortgage Company, LLC | $375.00 | | | |
| 822. Appraisal Fee to | | 1511. | | |
| 900. Items Required by Lender to be Paid in Advance | | | | |
| 901. Interest from 06/10/2003 to 07/01/2003 @ $35.31 per day | $741.51 | 1512. | | |
| 902. Mortgage insurance premium for  months to | | | | |
| 903. Hazard ins prem to | $0.00 | 1513. | | |
| 904. Flood ins prem to | | | | |
| 1000. Reserves Deposited with Lender | | 1514. | | |
| 1001. Hazard insurance 7 months @ $ 97.33 per month | $681.31 | | | |
| 1002. Mortgage insurance  months @  per month | | 1515. | | |
| 1003. Earthquake ins  months @ $  per month | | | | |
| 1004. County prop. taxes 7 months @ $ 250.24 per month | $1,751.68 | 1520. TOTAL DISBURSED (enter on line 1603) | | $165,37 |
| 1005. Annual assess.  months @ $  per month | | | | |
| 1006. Flood  months @ $  per month | | Deposit at Escrow/Title: | $0.00 | |
| 1007. Windstorm ins  months @ $  per month | | Subordinate Financing: | $0.00 | |
| 1008. | | Lender Cost Center Charge: | $0.00 | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee to CITY SUBURBAN TITLE | $250.00 | Total Wire: | $0.00 | |
| 1102. Abstract or title search to | | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| 1108. Title insurance to CITY SUBURBAN TITLE | $500.00 | | | |
| 1109. Lender's coverage $ | | | | |
| 1110. Owner's coverage $ | | | | |
| 1111. Settlement/Disbursement fee to | | | | |
| 1112. Escrow Fee to | | L = Lender Paid | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Recording fees | $54.00 | | | |
| 1202. City/county tax/stamps | | N. NET SETTLEMENT | | |
| 1203. State tax/ stamps | | | | |
| 1204. State specific fee | | | | |
| 1205. State specific fee | | 1600. Loan Amount | | 169,5 |
| 1300. Additional Settlement Charges | | | | |
| 1301. Demand to | | 1601. Plus Cash/Check from Borrower | | |
| 1302. Pest inspection to | | | | |
| 1303. Survey Fee | | 1602. Minus Total Settlement Charges (line 1400) | | $8,5 |
| 1304. | | | | |
| 1305. Reconveyance Fee to | | 1603. Minus Total Disbursements to Others (line 1520) | | $165,3 |
| 1306. | | | | |
| 1307. Apprsl/Prop Val Fee to | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | | -$4,2 |
| 1308. Courier Fee | $30.00 | | | |
| 1400. Total Settlement Charges (enter on line 1602) | $8,596.50 | | | |

Borrower(s) Signature(s):

Lucille Abercrombie

Approved for Funding by:  Approved:  Branch: Rolling Meadows, IL 60008

Public repo    burden       for this collection of information is estimated to    rage 0.35 hours per response, including the time for review
instructions,          hing existing data sources, gathering and maintaining the data         ad, and completing and reviewing the collection of informa
Send comm         .egarding this burden estimate or any other aspect of this collec    i information, including suggestions for reducing this burden,
the Reports Management Officer, Office of Information Policies and Systems, U.S. ..   .partment of Housing and Urban Development, Washington, D
20410-3600 and to the Office of Management and Budget, Paperwork Reduction Project (2502-0491), Washington, D.C. 20503. Do not send i
completed form to either of these addresses.

## Instructions for completing form HUD-1A

**Note:** This form is issued under authority of the Real Estate Settlement Procedures Act (RESPA). 12 U.S.C. *2601 et seq.* The regulation for RESPA is Regulation X, codified as 24 CFR 3500, and administered by the Department of Housing and Urban Development (HUD). Regulation Z referred to in the next paragraph is the regulation implementing the Truth in Lending Act (TILA), 15 U.S.C. 1601 *et seq.* and codified as 12 CFR part 226.

HUD-1A is an optional form that may be used for refinancing and subordinate lien federally related mortgage loans, as well as for any other one-party transaction that does not involve the transfer of title to residential real property. The HUD-1 form may also be used for such transactions, by utilizing the borrower's side of the HUD-1 and following the relevant parts of the instructions set forth in Appendix A of Regulation X. The use of either the HUD-1 or HUD-1A is not mandatory for open-end lines of credit (home-equity plans), as long as the provisions of Regulation Z are followed.

### Background

The HUD-1A settlement statement is to be used as a statement of actual charges and adjustments to be given to the borrower at settlement. The instructions for completion of the HUD-1A are for the benefit of the settlement agent who prepares the statement; the instructions are not a part of the statement and need not be transmitted to the borrower. There is no objection to using the HUD-1A in transactions in which it is not required, and its use in open-end lines of credit transactions (home-equity plans) is encouraged. It may not be ·used as a substitute for a HUD-1 in any transaction in which there is a transfer of title and a first lien is taken as security.

Refer.to the "definitions" section of Regulation X for specific definitions of terms used in these instructions.

### General Instructions

Information and amounts may be filled in by typewriter, hand printing, computer printing, or any other method producing clear and legible results. Additional pages may be attached to the HUD-1A for the inclusion of customary recitals and information used locally for settlements or if there are insufficient lines on the HUD-1A.

The settlement agent shall complete the HUD-1A to itemize all charges imposed upon the borrower by the lender, whether to be paid at settlement or outside of settlement, and any other charges that the borrower will pay for at settlement. In the case of "no cost" or "no point" loans, these charges include any payments the lender will make to affiliated or independent settlement service providers relating to this settlement. These charges shall be included on the HUD-1A, but marked "P.O.C." for "paid outside of closing," and shall not be used in computing totals. Such charges also include indirect payments or back-funded payments to mortgage brokers that arise from the settlement transaction. When used, "P.O.C." should be placed in the appropriate lines next to the identified item, *not in the columns themselves.*

Blank lines are provided in Section L for any additional settlement charges. Blank lines are also provided in Section M for recipients of all or portions of the loan proceeds. The names of the recipients of the settlement charges in Section L and the names of the recipients of the loan proceeds in Section M should be set forth on the blank lines.

### Line item instructions

The identification information at the top of the HUD-1 should be completed as follows:

The borrower's name and address is entered in th space provided. If the property securing the loan different from the borrower's address, the address or oth location information on the property should be entered the space provided. The loan number is the lender identification number for the loan. The settlement date the date of settlement in accordance with §3500.2 Regulation X, not the end of any applicable rescissi period. The name and address of the lender should b entered in the space provided.

**Section L. Settlement Charges.** This section of th HUD-1A is similar to section L of the HUD-1, with th deletion of lines 700 through 704, relating to real estat broker commissions. The instructions for filling out th HUD-1 as set forth in Appendix A of Regulation X prove additional information regarding Section L, if needed.

**Line 1400** in the HUD-1A is for the total settlemer charges charged to the borrower. Enter this total on lin 1602 as well. This total should include Section L amount from additional pages, if any are attached to this HUD-1A.

**Section M. Disbursement to Others.** This section i used to list payees, other than the borrower, of all p portions of the loan proceeds (including the lender, if th loan is paying off a prior loan made by the same lender) when the payee will be paid directly out of the settlemer proceeds. It is not used to list payees of settlemer charges, nor to list funds disbursed directly to th borrower, even if the lender knows the borrower' intended use of the funds.

For example, in a refinancing transaction, the loar proceeds are used to pay off an existing loan. The nam of the lender for the loan being paid off and the pay-of balance would be entered in Section M. In a home improvement transaction when the proceeds are to b paid to the home improvement contractor, the name of th contractor and the amount paid to the contractor would b entered in Section M. In a consolidation loan, or wher part of the loan proceeds is used to pay off other creditors the name of each creditor and the amount paid to tha creditor would be entered in Section M. If the proceed are to be given directly to the borrower and the borrowe will use the proceeds to pay off existing obligations, thi would not be reflected in Section M.

**Section N. Net Settlement.** Line 1600 normally set forth the principal amount of the loan as it appears on th related note for this loan. In the event this form is used fc an open-ended home equity line whose approved amoun is greater than the initial amount advanced at settlemen the amount shown on Line 1600 will be the loan amoun advanced at settlement. Line 1601 is used for a settlement charges that are both included in the totals fc lines 1400 and 1602 and are not financed as part of th principal amount of the loan. This is the amount normall received by the lender from the borrower at settlemen which would occur when some or all of the settlemen charges were paid in cash by the borrower at settlemen instead of being financed as part of the principal amoun of the loan. Failure to include any such amount in lin 1601 will result in an error in the amount calculated on lin 1604. P.O.C. amounts should not be included in line 160

Line 1602 is the total amount from line 1400.
Line 1603 is the total amount from line 1520.
Line 1604 is the amount disbursed to the borrower. This is determined by adding together the amounts for lines 1600 and 1601, and then subtracting any amounts listed on lines 1602 and 1503.

**Exhibit 2**

**FILED**

*L'AL'*

JUL 1 2 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CASTELLA WILLIAMS HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     05C  4025 |
| | ) |
| AMERIQUEST MORTGAGE COMPANY, | )     JUDGE DER-YEGHIAYAN |
| AMC MORTGAGE SERVICES, INC., | ) |
| and JOHN DOES 1-5, | )     JURY DEMANDED |
| | ) |
| Defendants. | ) . |
| | )     MAGISTRATE JUDGE LEVIN |

### COMPLAINT

### INTRODUCTION

1.      Plaintiff Castella Williams Harris brings this action against a "subprime" mortgage lender and others to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants do business in the District and are deemed to reside here.

### PARTIES

3.      Plaintiff owns and resides in a home at 6922 S. Winchester, Chicago, IL 60636.

4.      Defendant Ameriquest Mortgage Company (hereinafter "Ameriquest") is a

1

Case: 1:05-cv-07097 Document #: 96 Filed: 03/23/06 Page 48 of 173 PageID #:2354

foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606. It is engaged in the business of originating "subprime" mortgages and makes more than 26 loans per year.

5.      Defendant AMC Mortgage Services, Inc., formerly known as Ameriquest Newco, Inc., is a Delaware corporation that does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606. It is an affiliate of Ameriquest.

6.      Defendants John Does 1-5 are natural or artificial persons who claim or may have an ownership interest in plaintiff's note and mortgage.

### FACTS RELATING TO PLAINTIFF

7.      Prior to July 8, 2002, plaintiff applied for a mortgage with Ameriquest.

8.      Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

9.      The loan was closed on or about July 8, 2002.

10.      Immediately prior to the closing, plaintiff was informed that the loan terms were being altered to her detriment, as set forth on Exhibit A.

11.      On or about July 8, 2002, plaintiff signed or received the following documents relating to the loan, among others:

   a.      An adjustable rate mortgage, a copy of which is attached as Exhibit B;

   b.      A Truth in Lending disclosure statement, Exhibit C;

   c.      Several incomplete copies of the TILA notice of right to cancel, Exhibit D; and

2

d.    A settlement statement on form HUD-1, <u>Exhibit E</u>.

12.    Plaintiff has been instructed to make payments to AMC Mortgage Services,

Inc. (<u>Exhibit F</u>), which claims the right to receive payments under the loan or otherwise claims an

interest in it.

## <u>RIGHT TO RESCIND</u>

13.    Because the transaction was secured by plaintiff's home, and was not entered

into for purposes of the initial acquisition or construction of that home, it was subject to the right to

cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

**(a) <u>Consumer's right to rescind.</u>**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**

**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to**

3

all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

## GROUNDS FOR RESCISSION

14.     The TILA notices of right to cancel furnished to plaintiff were incomplete.

15.     The payment schedule is not fully and completely disclosed on <u>Exhibit C</u>.

## VIOLATIONS ALLEGED

16.     The failure to fully and completely disclose the payment schedule violates 15

U.S.C. §1638 and 12 C.F.R. §226.28.

17.     The provision of incomplete notices of right to cancel violates 15 U.S.C.

§1635 and 12 C.F.R. §226.23.

4

18.    15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

19.    Plaintiff further requests an accounting of the loan proceeds and her payments, as she has been notified at various times that Ameriquest has made payments of taxes and insurance, which plaintiff believes may be incorrect.

20.    On June 13, 2005, plaintiff sent notice of her intent to rescind. A copy is attached hereto as Exhibit G.

21.    Defendant received plaintiff's notice but refused to rescind her loan. See Exhibit H.

22.    TILA's three-year statute of limitations was tolled by the filing on July 1, 2005, of Williams v. Ameriquest Mortgage Co., 05 CV 6189 (S.D.N.Y.). Ms. Harris is a member of the TILA rescission class in the Williams case. See American Pipe & Constr. Co. V. Utah, 414 U.S. 538, 552-53 (1974)("the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class...."); Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350-52 (1983)("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied....").

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendant for:

a.    A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on defendant;

5

b.     Statutory damages for the underlying disclosure violations;

c.     An accounting and declaration concerning what if anything plaintiff

owes Ameriquest;

d.     Statutory damages for failure to rescind;

e.     Attorney's fees, litigation expenses and costs.

f.     Such other or further relief as the Court deems appropriate.

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)


**JURY DEMAND**

Plaintiff demands trial by jury.

_____
Daniel A. Edelman

i:\case\ameriquest14.673\pleading\cmplt.wpd

6

# EXHIBIT A

Ameriquest Mortgage Company
8 Skyline Drive
Hawthorne, NY 10532

866-345-6334

# BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

CASTELLA WILLIAMS HARRIS

Date: July 8, 2002

Notice: [X] Delivered    [ ] Mailed

Loan Number: 0037122883 - 9701

Description of Credit Request:

8922 SOUTH WINCHESTER
CHICAGO, IL 60636

[X] 1st Trust Deed/Mortgage    [ ] 2nd Trust Deed/Mortgage

[ ] Other:

Property Address: 8922 SOUTH WINCHESTER

CHICAGO, IL 60636                     County of COOK

---

## TYPE OF TRANSACTION:

[ ] Purchase    [X] Refinance    [ ] Other

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [ ] Fixed Rate Loan  [X] Adjustable Rate Loan | [ ] Fixed Rate Loan  [X] Adjustable Rate Loan |
| Amount Financed: $ 48,564.80 | Amount Financed: $ 46,935.60 |
| Settlement Charges: $ 1,760.20 (Includes all Prepaid Finance Charges) | Settlement Charges: $ 3,701.90 (Includes all Prepaid Finance Charges) |
| Loan Amount: $ 49,500.00 | Loan Amount: $ 49,500.00 |
| Annual Percentage Rate: 11.202 % | Annual Percentage Rate: 11.600 %* |
| Term: 360 | Term: 360 |
| Initial Interest Rate: 11.000 % | Initial Interest Rate: 11.000 % |
| Margin: 6.500 % | Margin: 6.500 % |
| Prepayment Penalty: [X] YES  [ ] NO | Prepayment Penalty: [X] YES  [ ] NO |

Borrower(s) and Ameriquest Mortgage Company hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

Borrower CASTELLA WILLIAMS HARRIS          Date          Borrower          Date

Borrower          Date          Borrower          Date

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.

# EXHIBIT B

Return To:

Ameriquest Mortgage Company
P.O. Box 11507
Santa Ana, CA 92711

Prepared By:Ameriquest Mortgage Company

Not Assigned
8 Skyline Drive,Hawthorne,
NY 10532

——————————————[Space Above This Line For Recording Data]——————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 8, 2002 together with all Riders to this document.
(B) "Borrower" is CASTELLA WILLIAMS HARRIS

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

0037122983 - 9701

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3014 1/01

(VMP) -6(IL) (0005)

Page 1 of 15          Initials:_____          07/09/2002 7:04:44 AM

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 1100 Town and Country Rd, Ste 900
Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated July 8, 2002
The Note states that Borrower owes Lender forty-nine thousand five hundred and 00/100
Dollars

(U.S. $ 49,500.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than August 1, 2032

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

0037122983 - 9701
Initials: _____

VMP®-6(IL) (0005)          Page 2 of 15          07/09/2002 7:04:44          Form 3014   1/01

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the County [Type of Recording Jurisdiction] of COOK [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 20194160200000                              which currently has the address of
6922 SOUTH WINCHESTER                                                                [Street]
CHICAGO                                    [City], Illinois 60636                    [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

     1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0037122983 - 9701
Initials:_____

-6(IL) (0005)                    Page 3 of 15   07/09/2002 7:04:44 AM   Form 3014  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds For Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0037122983 - 9701

Initials:

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0037122983 - 9701
Initials:

-6(IL) (0005)                    Page 7 of 15      07/09/2002 7:04:44   Form 3014  1/01

10-Jul-2002 12:56PM   From-                                    T-914  P.011/074  F-517

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

0037122983 - 9701
Initials:

VMP -6(IL) (0005)    Page 8 of 15    07/09/2002 7:04:44    Form 3014    1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

0037122983 - 9701

Initials: ____

-6(IL) (0005)    Page 8 of 15    07/09/2002 7:04:44    Form 3014 1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0037122983 - 9701
Initials:

10-JUL-2002 12:57pm    From-                    T-814  P.014/074  F-517

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0037122983 - 9701
Initials: _____

-6(IL) (0005)    Page 11 of 15    07/09/2002  7:04:44    Form 3014  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

0037122983 - 9701

Initials: _____

-6(IL) (0005)

Page 13 of 15     07/09/2002 7:04:44     Form 3014   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           CASTELLA WILLIAMS HARRIS       -Borrower


_____          _____ (Seal)
                                                                          -Borrower


                              _____ (Seal)   _____ (Seal)
                                      -Borrower                            -Borrower


                              _____ (Seal)   _____ (Seal)
                                      -Borrower                            -Borrower


                              _____ (Seal)   _____ (Seal)
                                      -Borrower                            -Borrower


                                                           0037122983 - 9701

VMP -6(IL) (0005)                         Page 14 of 15  07/09/2002  7:04:44 AM  Form 3014  1/01

STATE OF ILLINOIS,                                    County ss:

I, _____ a Notary
Public in and for said county and in said state, hereby certify that

_____

_____

_____

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing
instrument, appeared before me this day in person, and acknowledged that he/she/they signed
and delivered the said instrument as his/her/their free and voluntary act, for the uses and
purposes therein set forth.

   Given under my hand and official seal of this


My Commission Expires:

                                    _____
                                    Notary Public




## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 8th day of July , 2002   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

6922 SOUTH WINCHESTER, CHICAGO, IL  60636
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  11.000 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of  August, 2004  , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as  published in the Wall Street Journal.  The most recent index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0037122983 - 9701

610-1 (Rev 1/01)                          Page 1 of 3

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding six and one-half percentage points ( 6.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **13.000%** or less than **11.000%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one( **1.000 %**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **17.000%** or less than **11.000%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number: 0037122983 - 9701

07/09/2002 7:04:44 AM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
Borrower CASTELLA WILLIAMS HARRIS          Borrower

_____ (Seal)    _____ (Seal)
Borrower                                    Borrower

Loan Number: 0037122983 - 9701

810.3 (Rev 1/01)                 Page 3 of 3

07/09/2002 7:04:44 AM

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 8th            day of July, 2002              ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to Ameriquest Mortgage Company

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
6922 SOUTH WINCHESTER, CHICAGO, IL  60636

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

0037122983

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Initials:
Page 1 of 4                                                     Form 3170 1/01
-57R (0008)          VMP MORTGAGE FORMS - (800)521-7291   07/09/2002  7:04:44 AM

Case: 1:05-cv-07097 Document #: 96 Filed: 03/23/06 Page 75 of 173 PageID #:2381

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

07/09/2002 7:04:44 AM
0037122983

Initials:_____

VMP-57R (0008)            Page 2 of 4            Form 3170 1/01

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**1. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

07/09/2002  7:04:44 AM

0037122983

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
CASTELLA WILLIAMS HARRIS          -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                    -Borrower


_____ (Seal)          _____ (Seal)
                                  -Borrower                                    -Borrower

0037122983

VMP-57R (0008)                    Page 4 of 4                    Form 3170 1/01
                                                                  07/09/2002 7:04:44 AM

# EXHIBIT C

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary      ☒ Final

LENDER: Ameriquest Mortgage Company
8 Skyline Drive
Hawthorne, NY 10532
866-345-6334

Borrowers: CASTELLA WILLIAMS HARRIS

Type of Loan:  ADJUSTABLE RATE
Date:  July 8, 2002

Address:      6922 SOUTH WINCHESTER
City/State/Zip:  CHICAGO, IL 60636

Loan Number: 0037122963 - 9701

Property:    6922 SOUTH WINCHESTER, CHICAGO, IL 60636

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 11.600 % | $ 122,744.18 | $ 46,935.60 | $ 169,679.78 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $471.41 | 09/01/2002 | | | |
| 1 | $443.59 | 08/01/2032 | | | |

VARIABLE RATE FEATURE:
☒  Your loan has a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at:  6922 SOUTH WINCHESTER, CHICAGO, IL 60636

ASSUMPTION:  Someone buying this property  ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES:    If a payment is late, you will be charged  5.000%  of the overdue payment .

PREPAYMENT:  If you pay off your loan early, you
☒ may     ☐ will not     have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower  CASTELLA WILLIAMS HARRIS                    Date          Borrower                                    Date

Borrower                                    Date          Borrower                                    Date

**Original**

TIL1 (Rev 7/01)

Case: 1:05-cv-07097 Document #: 96 Filed: 03/23/06 Page 80 of 173 PageID #:2386

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary    ☒ Final

LENDER: Ameriquest Mortgage Company
8 Skyline Drive
Hawthorne, NY 10532
866-345-6334

Borrowers: CASTELLA WILLIAMS HARRIS

Type of Loan: ADJUSTABLE RATE
Date: July 8, 2002

Address:    6922 SOUTH WINCHESTER
City/State/Zip:    CHICAGO, IL 60636

Loan Number: 0037122983 - 9701

Property:    6922 SOUTH WINCHESTER, CHICAGO, IL 60636

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 11.600    % | $ 122,744.18 | $ 46,935.60 | $ 169,679.78 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $471.41 | 09/01/2002 | | | |
| 1 | $443.59 | 08/01/2032 | | | |

VARIABLE RATE FEATURE:
☒ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at: 6922 SOUTH WINCHESTER, CHICAGO, IL 60636

ASSUMPTION:    Someone buying this property    ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

LATE CHARGES:    If a payment is late, you will be charged  5.000%  of the overdue payment .

PREPAYMENT:  If you pay off your loan early, you
☒ may    ☐ will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower CASTELLA WILLIAMS HARRIS _____ Date _____    Borrower _____ Date _____

Borrower _____ Date _____    Borrower _____ Date _____

TIL1 (Rev. 1/01)

**Borrower Copy**

Jul-08-02  05:48    From-Ameriquest Mortgage    6848183822    T-633  P.032/060  F-845

# EXHIBIT D

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   July 8, 2002
LOAN NO.:   0037122983 - 9701
TYPE:   ADJUSTABLE RATE

BORROWER(S): CASTELLA WILLIAMS HARRIS

ADDRESS:      6922 SOUTH WINCHESTER
CITY/STATE/ZIP:   CHICAGO, IL 60636

PROPERTY:   6922 SOUTH WINCHESTER
          CHICAGO, IL   60636

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is [ENTER DOCUMENT SIGNING DATE] ; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company      ATTN:   FUNDING
1100 Town and Country Rd, Suite 900     PHONE:   (714) 479-0358
Orange, California 92868           FAX:     (714) 347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of    [ENTER FINAL DATE TO CANCEL]

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____          _____
SIGNATURE                      DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____      _____      _____      _____
BORROWER/OWNER CASTELLA WILLIAMS HARRIS    Date      BORROWER/OWNER           Date

_____      _____      _____      _____
BORROWER/OWNER          Date      BORROWER/OWNER           Date

1004390C (Rev 5-03)

**LENDER COPY**

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   July 8, 2002
LOAN NO.:   0037122983 - 9701
TYPE:   ADJUSTABLE RATE

BORROWER(S): CASTELLA WILLIAMS HARRIS

ADDRESS:     6922 SOUTH WINCHESTER
CITY/STATE/ZIP:   CHICAGO, IL 60636

PROPERTY:   6922 SOUTH WINCHESTER
CHICAGO, IL 60636

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is     [ENTER DOCUMENT SIGNING DATE]     ; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company      ATTN:   FUNDING
1100 Town and Country Rd, Suite 900     PHONE: (714) 479-0358
Orange, California 92868      FAX:    (714) 347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must     [ENTER FINAL DATE TO CANCEL]
send the notice no later than MIDNIGHT of

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____      _____
SIGNATURE                             DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____   Date    _____   Date
BORROWER/OWNER CASTELLA WILLIAMS HARRIS       BORROWER/OWNER

_____   Date    _____   Date
BORROWER/OWNER                         BORROWER/OWNER

1004-NRC (Rev 6/99)

### BORROWER COPY

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   July 8, 2002
LOAN NO.:   0037122983 - 9701
TYPE:   ADJUSTABLE RATE

BORROWER(S): CASTELLA WILLIAMS HARRIS

ADDRESS:       6922 SOUTH WINCHESTER
CITY/STATE/ZIP:   CHICAGO, IL 60636

PROPERTY:   6922 SOUTH WINCHESTER
CHICAGO, IL  60636

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is | ENTER DOCUMENT SIGNING DATE | ; or

2.  The date you received your Truth in Lending disclosures; or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company            ATTN:  FUNDING
1100 Town and Country Rd, Suite 900    PHONE: (714) 479-0358
Orange, California 92868               FAX:   (714) 347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of | ENTER FINAL DATE TO CANCEL |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____              _____
SIGNATURE                                     DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____  ____    _____  ____
BORROWER/OWNER CASTELLA WILLIAMS HARRIS    Date    BORROWER/OWNER                     Date

_____  ____    _____  ____
BORROWER/OWNER                             Date    BORROWER/OWNER                     Date

164-NRC (rev 6/00)

## BORROWER COPY

# EXHIBIT E

Case 1:05-cv-04025     Document 1     Filed 07/12/2005     Page 40 of 49

OMB NO. 2502-0265

| A. | | | B. TYPE OF LOAN: | | | | |
|---|---|---|---|---|---|---|---|
| **U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT** | | 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ CONV. UNINS. | 4. ☐ VA | 5. ☐ CONV. INS. | |
| **SETTLEMENT STATEMENT** | | 6. FILE NUMBER: 143777M | | 7. LOAN NUMBER: 0037122983-9701 | | | |
| | | 8. MORTGAGE INS CASE NUMBER: | | | | | |

C. NOTE:   *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

1.0  3/98   (143777M.PFD/143771M/)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| CASTELLA WILLIAMS HARRIS<br>6922 SOUTH WINCHESTER<br>CHICAGO, IL 60636 | | AMERIQUEST MORTGAGE COMPANY<br>8 SKYLINE DRIVE<br>HAWTHORNE, NY 10532 |

| G. PROPERTY LOCATION:<br>6922 SOUTH WINCHESTER<br>CHICAGO, IL 60636<br>COOK County, Illinois<br>0037122983-9701 | H. SETTLEMENT AGENT:     36-3871344<br>Law Title Insurance Company, Inc.<br><br>PLACE OF SETTLEMENT<br>4747 Lincoln Mall Drive, Suite 604<br>Matteson, IL  60443 | I. SETTLEMENT DATE:<br><br>July 9, 2002<br><br>Disburse:07/15/02 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 17,091.33 | 403. | |
| 104. Payoff First Mortgage to FAIRBANKS CAPITAL CORP. | 28,930.11 | 404. | |
| 105. Payoff Second Mortgage | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes          to | | 406. City/Town Taxes          to | |
| 107. County Taxes          to | | 407. County Taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| *120.  GROSS AMOUNT DUE FROM BORROWER* | 46,021.44 | *420.  GROSS AMOUNT DUE TO SELLER* | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 49,500.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes          to | | 510. City/Town Taxes          to | |
| 211. County Taxes          to | | 511. County Taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| *220.  TOTAL PAID BY/FOR BORROWER* | 49,500.00 | *520.  TOTAL REDUCTION AMOUNT DUE SELLER* | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 46,021.44 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 49,500.00) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| *303. CASH ( FROM ) ( X TO ) BORROWER* | 3,478.56 | *603. CASH ( TO ) ( FROM ) SELLER* | 0.00 |

## L. SETTLEMENT CHARGES

| | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** | | $ | @ % | | |
| Division of Commission (line 700) as Follows: | | | | | |
| 701. $ | to | | | | |
| 702. $ | to | | | | |
| 703. Commission Paid at Settlement | | | | | |
| 704. | | to | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | | |
| 801. Loan Origination Fee | 1.0000 % | to SAB MORTGAGE | | 495.00 | |
| 802. Loan Discount | 1.0000 % | to AMERIQUEST MORTGAGE COMPANY | | 495.00 | |
| 803. Appraisal Fee | | to PAUL T. DEMOS | | 500.00 | |
| 804. Credit Report | | to ADVANTAGE CREDIT | | 40.00 | |
| 805. PROCESSING FEE | | to SAB MORTGAGE | | 100.00 | |
| 806. Mortgage Ins. App. Fee | | to | | | |
| 807. ADMIN FEE | | to AMERIQUEST MORTGAGE COMPANY | | 175.00 | |
| 808. BROKER FEE | | | | | |
| 809. TAX SERVICE FEE | | to AMERIQUEST MORTGAGE COMPANY | | 70.00 | |
| 810. FLOOD CERTIFICATION FEE | | to AMERIQUEST MORTGAGE COMPANY | | 16.00 | |
| 811. UNDERWRITING FEE | | to AMERIQUEST MORTGAGE COMPANY | | 375.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | |
| 901. Interest From 07/12/02 to 08/01/02 | @ $ 14.920000/day | ( 20 days %) | | 298.40 | |
| 902. Mortgage Insurance Premium for | months to | | | | |
| 903. Hazard Insurance Premium for 1.0 years to | | | | | |
| 904. | | | | | |
| 905. | | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | | |
| 1001. Hazard Insurance | | months @ $ | per month | | |
| 1002. Mortgage Insurance | | months @ $ | per month | | |
| 1003. City/Town Taxes | | months @ $ | per month | | |
| 1004. County Taxes | | months @ $ | per month | | |
| 1005. Assessments | | months @ $ | per month | | |
| 1006. | | months @ $ | per month | | |
| 1007. | | months @ $ | per month | | |
| 1008. | | months @ $ | per month | | |
| **1100. TITLE CHARGES** | | | | | |
| 1101. Settlement or Closing Fee | | to Law Title Insurance Company, Inc. | | 210.00 | |
| 1102. TI SET UP | | to Law Title Insurance Company, Inc. | | 125.00 | |
| 1103. Title Examination | | to | | | |
| 1104. Title Insurance Binder | | to | | | |
| 1105. Document Preparation | | to | | | |
| 1106. Notary Fees | | to | | | |
| 1107. Attorney's Fees | | to | | | |
| (includes above item numbers: | | | ) | | |
| 1108. Title Insurance | | to Law Title Insurance Company | | 586.00 | |
| (includes above item numbers: | | | ) | | |
| 1109. Lender's Coverage | | $ | | | |
| 1110. Owner's Coverage | | $ | | | |
| 1111. Overnight courier for payoff | | to Law Title Insurance Company, Inc. | | 40.00 | |
| 1112. EPA/LOC NOTE ENDORSEMENT | | to Law Title Insurance Company, Inc. | | 160.00 | |
| 1113. LATER DATE | | to Law Title Insurance Company, Inc. | | 70.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | |
| 1201. Recording Fees: Deed $ | ; Mortgage $ 51.50; | Releases $ 23.50 | | 75.00 | |
| 1202. City/County Tax/Stamps: Deed | | ; Mortgage | | | |
| 1203. State Tax/Stamps: Revenue Stamps | | ; Mortgage | | | |
| 1204. City Transfer Tax | | | | | |
| 1205. | | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301. Survey | | to | | | |
| 1302. Pest Inspection | | to | | | |
| 1303. PAYMENT | | to BENFCL/HFC | | 1,924.00 | |
| 1304. PAYMENT | | to PEOPLES GAS LIGHT | | 1,691.00 | |
| 1305. See addit'l disb. exhibit | | | | 9,645.93 | |
| **1400. TOTAL SETTLEMENT CHARGES** (Enter on Lines 103, Section J and 502, Section K) | | | | 17,091.33 | |

Certified to be a true copy.

Case 1:05-cv-04025    Document 1    Filed 07/12/2005    Page 42 of 49

# AMERIQUEST
# MORTGAGE COMPANY

Summary of Debts and Disburseme
(Refinance Loans O

Borrower: CASTELLA WILLIAMS HARRIS

Date:  July 8, 2002
Broker:

Loan Number:  0037122983 - 9701

S.A. Enterprises, Inc.
8213 South Richmond St.,
Chicago, IL 60652
Short to Close

| Fees | | |
|---|---|---|
| Loan Discount Fee | 1.000% | $495.00 |
| Lender Retained  Fees | | $836.00 |
| Prepaid Interest | | $298.40 |
| Fees Paid to Others | | $1,637.50 |
| Broker Fees | | $140.00 |
| Loan Origination Fee | 1.000% | $495.00 |

Total Payoffs          $32,589.69

Cash to Borrower       $13,208.41

Total Points & Fees          $3,701.90

| CREDITORS DEBTS | BALANCE | PAYOFFS | PAYMENTS |
|---|---|---|---|
| SEARS | $250.00 | | $10.00 |
| ACCUCHEK | $7.00 | | $7.00 |
| ARROW FINANCIAL SERV | $321.00 | | $15.00 |
| ASSET ACCEPTANCE COR | $488.00 | | $30.00 |
| BENFCL/HFC | $1,924.00 | | |
| BENFCL/HFC | | $1,924.00 | |
| CAPITAL ONE BANK | $1,105.00 | | $21.00 |
| COMPUTER CREDIT SVC | $275.00 | | $30.00 |
| EQUIFAX CK | $65.00 | | $30.00 |
| FAIR BANKS CAPITAL C | | $28,974.69 | |
| FRANKLIN COLLECTION | $1,183.00 | | $30.00 |
| MBGA/JC PENNEY | $283.00 | | $14.00 |
| MWARD/MBGA | $376.00 | | $46.00 |
| NBGL-CARSONS | $495.00 | | $25.00 |
| PEOPLESGAS | $1,372.00 | | $30.00 |
| PROFESSNL ACCT MGMT | $228.00 | | $15.00 |
| RISK MANAGEMENT ALTE | $351.00 | | $15.00 |
| SUPERIOR RECOVERY SY | $287.00 | | $15.00 |
| PEOPLES GAS LIGHT | | $1,691.00 | |
| PEOPLES GAS LIGHT & C 08/99 | | | |
| PEOPLES GAS LIGHT | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT F



**MORTGAGE SERVICES**

RETAIN THIS PORTION FOR YOUR RECORDS

| STATEMENT DATE | 05/16/05 |
| LOAN NUMBER | 0037122983 |
| PROPERTY ADDRESS | 6922 S WINCHESTER CHICAGO IL 60636 |

CASTELLA WILLIAMS HARRIS
6922 S WINCHESTER AVE
CHICAGO IL  60636-3216



**Thinking About Refinancing?**
For information, please call toll-free
**(800) 325-1493**

## TOTAL AMOUNT DUE

| | |
|---|---|
| ...rance Balance: | $.00 |
| Amount Past Due: | $.00 |
| ...ent Due on 06/01/05 | $872.07 |
| ...enses Paid by AMC: | $.00 |
| ...paid Late Charges: | $28.28 |
| ...her Fees & Charges: | $.00 |
| ...l Expenses/Fees Due: | $28.28 |
| ...l Amount Due: | $900.35 |

...void late charges of $28.28 we must receive
...payment by 06/16/05 during business hours.

## MONTHLY PAYMENT FACTORS
(For Payment Due: 06/01/05)

| | |
|---|---|
| Interest Rate: | 11.000000% |
| Monthly Payment: | $471.40 |
| Escrow: | $400.67 |
| Optional Products/Misc: | $.00 |
| Monthly Total: | $872.07 |
| Next Monthly Payment Change Date: | 09/01/05 |

Visit www.myamcloan.com.

## BALANCES

| | |
|---|---|
| Principal Balance: | $49,823.18 |
| Escrow Balance: | $2,989.39- |
| **Amounts Paid Year-To-Date** | |
| Principal | $116.06 |
| Interest: | $2,240.94 |
| Late Charges: | $.00 |
| Hazard Insurance: | $.00 |
| Taxes/Liens: | $474.08 |

## ACTIVITY SINCE YOUR LAST STATEMENT

| E | DESCRIPTION | AMOUNT | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS/MISC | LATE CHARGES/ CORP ADV/FEES | SUSPENSE |
|---|---|---|---|---|---|---|---|---|
| 3 | PMT 05/01/05 | $525.00 | $23.64 | $447.76 | $53.60 | | | |

## IMPORTANT MESSAGES

...penses/fees paid will be applied in the following order: expenses paid by AMC, outstanding fees, late charges, and escrow advances, then
...ditional principal. Outstanding expenses/fees will be paid before any funds are applied towards additional principal.

### Detach And Return This Portion With Your Payment

**MORTGAGE SERVICES**

LOAN NUMBER: 0037122983

CASTELLA WILLIAMS HARRIS

☐ Check box if interested in refinancing your current loan.

...lake Check Payable To:

AMC MORTGAGE SERVICES
P O BOX 5926
CAROL STREAM IL  60197-5926

| | | |
|---|---|---|
| Date Due: | 06/01/05 | |
| Past Due Monthly Payments: | $.00 | |
| Payment Due On  06/01/05 | $872.07 | |
| Total Expenses/Fees Due: | $28.28 | |
| **TOTAL AMOUNT DUE:** | **$900.35** | |
| Late Charge Due after:06/16/2005 | $28.28 | |
| (Optional) Additional Principal: | | |
| (Optional) Additional Escrow Advance: | | |
| (Optional) Additional Payment: | | |
| TOTAL AMOUNT ENCLOSED: | | |

0874000371229830000000000872070000003500

# EXHIBIT G

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
### Chicago, Illinois  60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email:  edcombs@aol.com
### www.edcombs.com

**BY MESSENGER**

Ameriquest Mortgage Corporation
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

> Re:   Notice of rescission, claim and lien, Castella Williams Harris, 6922
> S. Winchester, Chicago, IL 60636, loan of July 8, 2002

Ladies/ Gentlemen:

The above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than yourself, please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: client

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on June 13, 2005.

_____

Daniel A. Edelman

I:\case\ameriquest14.673\pleading\demand.wpd

# EXHIBIT H

# VARGA BERGER LEDSKY HAYES & CASEY
A Professional Corporation

## ATTORNEYS AT LAW

SANTA FE BUILDING
224 SOUTH MICHIGAN AVENUE
SUITE 350
CHICAGO, ILLINOIS 60604-2535

TELEPHONE: 312-341-9400
FACSIMILE: 312-341-2900

June 29, 2005

JONATHAN N. LEDSKY
(312) 341-9840

jledsky@vblhc.com

**VIA FACSIMILE & U.S. MAIL**

Mr. Al Hofeld
Edelman, Combs, Latturner & Goodwin, LLC
120 South LaSalle Street
18th Floor
Chicago, Illinois 60603

> Re:   Notice of rescission, claim, and lien on behalf of Castella Williams Harris,
> 5922 South Winchester, Chicago, IL 60636,
> Ameriquest Mortgage Company loan dated July 8, 2002

Dear Al:

We are in receipt of your law firm's letter served on the registered agent of our client, Ameriquest Mortgage Company ("Ameriquest"). The letter seeks rescission of a loan made by Ameriquest to Castella Williams Harris.

The letter asserts, as the basis of the rescission demand, "noncompliance with the Truth in Lending Act," and nothing more. The letter, conspicuously, omits any identification of how you contend Ameriquest has failed to comply with the Truth in Lending Act. Typically, your law firm's letters seeking rescission on behalf of a particular borrower identify the alleged violations of the Truth in Lending Act. Without such a statement in your rescission letter on behalf of Castella Williams Harris, Ameriquest cannot evaluate the bona fides of the rescission demand. Please advise us as to the basis of the rescission request on behalf of Castella Williams Harris. We will, then, immediately communicate Ameriquest's position regarding the rescission request. Thank you.

Very truly yours,

Jonathan N. Ledsky

JNL:sto

**Exhibit 3**

FILED

JAN 2 6 2005  NF

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GAVIONE TAMMERELLO )
)
        Plaintiff, )
)
  vs. )
)
AMERIQUEST MORTGAGE COMPANY, )
a foreign corporation, and GREEN TREE )
SERVICING, LLC, a foreign corporation )
)
        Defendants. )

# 05C 0466

No.

(Circuit Court of Cook County,
Illinois No. 04 L 14268)

JUDGE COAR

MAGISTRATE JUDGE DENLOW

## NOTICE OF REMOVAL

Defendants, Ameriquest Mortgage Company ("Ameriquest") and Green Tree Servicing

LLC ("Green Tree Servicing")  (collectively "Defendants"), by their counsel, submit this Notice of

Removal, pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1441, and 1446.  As grounds for removal of this

action from the Circuit Court of Cook County, Illinois, to the United States District Court for the

Northern District of Illinois, Defendants state as follows:

### Procedural History

1.    On December 22, 2004, Plaintiff filed the complaint in the Circuit Court of Cook

County, Illinois.  A copy of Plaintiff's complaint is attached hereto as Exhibit A.  The complaint

purports to assert various federal claims against Defendants under the Home Ownership and Equity

Protection Act ("HOEPA") (Count I), the Truth in Lending Act ("TILA") (Counts II and IX), and

the Real Estate Settlement Procedures Act ("RESPA") (Counts III and X).  The complaint also

purports to assert various state law causes of action against Defendants under the Illinois Interest

Act (Counts IV and XI) and the Illinois Consumer Fraud Act (Counts V and VII), as well as for

fraud (Counts VI and XIII), breach of fiduciary duty (Counts VII and XIV), and breach of duty of

good faith and fair dealing (Counts VIII and XV).

2.        Ameriquest was served via its registered agent, National Registered Agents, Inc., on

January 3, 2005.  Green Tree Servicing was served via its registered agent, CT Corporation System,

on December 27, 2004.  Pursuant to 28 U.S.C. §1446(b), this Notice of Removal is timely filed

within 30 days after the receipt of a copy of Plaintiff's complaint.

## Basis for Removal

3.        This Court has federal question jurisdiction pursuant to 28 U.S.C. 1331, as well as

subject matter jurisdiction, pursuant to 28 U.S.C. § 1332(a).

## Federal Question Jurisdiction

4.        Removal is proper pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims

against Green Tree Servicing under HOEPA, 15 U.S.C. §§ 1602(aa) & 1639, and against both

Defendants under TILA, 15 U.S.C. § 1601 et seq., and RESPA, 12 U.S.C. § 2607.  See Complaint,

Counts I, II, III, IX, and X.

## Diversity Jurisdiction

5.        Removal is also proper pursuant to 28 U.S.C. § 1332(a), since there is complete

diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000,

exclusive of interest and costs.

6.        Plaintiff is a citizen of Illinois.  See Complaint, ¶ 1.

7.        Defendants are each citizens of states other than Illinois.  Ameriquest is a Delaware

corporation whose principal place of business is in Orange, California.  See Complaint, ¶ 2; see also

affidavit of Carol Melber, ¶ 3, attached hereto as Exhibit B.  Green Tree Servicing is a Delaware

limited liability company whose principal place of business is in St. Paul, Minnesota.  See Complaint,

¶ 3; see also affidavit of Wanda Lamb-Lindow, ¶ 3, attached hereto as Exhibit C.

2

8.      According to the complaint, Plaintiff seeks various damages against Defendants, including statutory damages under the Illinois Interest Act. See Complaint, Counts IV and XI. Under Section 6 of the Illinois Interest Act, 815 ILCS 205/6, statutory damages are equal to "twice the total of all interest, discounts, and charges determined by the loan contract or paid by the obligor, whichever is greater." The Truth in Lending Disclosure Statement for Plaintiff's loan transaction with Ameriquest, attached hereto as Exhibit 1 to the affidavit of Carol Melber (and, thus Exhibit 1 to Exhibit B), discloses a "finance charge" in the amount of $1,209,124.99. Therefore, Plaintiff's alleged statutory damages against Ameriquest, under the Illinois Interest Act, could arguably total $2,418,249.98. The Truth in Lending Disclosure Statement for the loan transaction with Conseco Bank, Inc., attached hereto as Exhibit D, which is the subject of Plaintiff's claims against Green Tree Servicing, discloses a "finance charge" in the amount of $159,831.00. Therefore, Plaintiff's alleged statutory damages against Green Tree Servicing, under the Illinois Interest Act, could arguably total $319,662.00. These possible statutory penalties under the Illinois Interest Act far exceed the $75,000 jurisdictional requirement for diversity jurisdiction.[1]

9.      Plaintiff additionally seeks damages against both Defendants for purported violations of the Illinois Consumer Fraud Act, as well as for fraud, breach of fiduciary duty, and breach of duty of good faith and fair dealing. See Complaint, Counts V, VI, VII, VIII, XII, XIII, XIV and XV. Plaintiff's prayer for relief for each of these state law claims seeks at least $500,000 in damages. See Id.

10.      Accordingly, removal predicated on subject matter jurisdiction is proper, as diversity of citizenship exists and the amount in controversy well exceeds $75,000.

---

[1] Defendants deny any liability whatsoever, deny any liability specifically under the Illinois Interest Act, and deny that any statutory damages under the Illinois Interest Act are owing to Plaintiff. Defendants reserve the right to argue that lesser statutory damages could be awarded under the Illinois Interest Act, but note that removal jurisdiction is to be adjudged on the basis of the complaint as pled by Plaintiff.

3

## Conclusion

11.    Pursuant to 28 U.S.C. § 1446(d), Defendants will provide written notice of this removal to counsel for Plaintiff and will file a copy of this notice of removal with the Clerk of the Circuit Court of Cook County, Illinois.

12.    Payment of the appropriate fees and costs for removal and docketing of this action in federal court, if any, are tendered with this notice of removal.

Dated: January 26, 2005

Respectfully submitted,

AMERIQUEST MORTGAGE COMPANY and
GREEN TREE SERVICING LLC,
Defendants

By: _____
One of Their Attorneys

Craig A. Varga
Jonathan N. Ledsky
Julie F. Grosch
VARGA BERGER LEDSKY HAYES & CASEY
A Professional Corporation
224 South Michigan Avenue
Suite 350
Chicago, Illinois 60604
(312) 341-9400
(312) 341-2900 (facsimile)

4

## CERTIFICATE OF SERVICE

I, Jonathan N. Ledsky, an attorney, hereby certifies that a true and correct copy of the

foregoing Notice of Removal was served upon:

Thomas Haught
Gardi & Associates
1450 E. American Lane, Suite 1400
Schaumburg, IL  60173

by placing same in the United States mail chute located at 224 South Michigan Avenue, Chicago,

Illinois 60604, properly addressed and postage fully prepaid, this 26th day of January 2005, on or

before the hour of 5:00 p.m.

_____
Jonathan N. Ledsky

Exhibit A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

GAVIONE TAMMERELLO,              )
                                 )
        Plaintiff,               )
                                 )
    v.                           )    No.
                                 )    **04L    14268**
AMERIQUEST MORTGAGE              )
COMPANY, a foreign corporation,  )    *Cal  Q*
and GREEN TREE SERVICING,        )
LLC, a foreign corporation       )
                                 )    **JURY TRIAL DEMANDED**
        Defendants.              )



## COMPLAINT

NOW COMES the Plaintiff, Gavione Tammerello, by and through his Attorneys,

Gardi & Associates, Ltd., and complaining of the Defendants, Ameriquest Mortgage

Company and Green Tree Servicing, a foreign corporation, states and alleges as follows:

## NATURE OF THE CASE

## INTRODUCTION

Plaintiff brings this action against the Defendants for engaging in predatory,

fraudulent, and unlawful conduct in connection with the Plaintiff's mortgage and home

equity line of credit. Plaintiff seeks redress for violations of the Illinois Interest Act, 815

ILCS 205/4.1a, the Truth in Lending Act, 15 U.S.C. § 1601, the Illinois Consumer Fraud

and Deceptive Business Practices Act, ("Consumer Fraud Act") 815 ILCS 505/1 et seq.,

The Real Estate Settlement Procedures Act, ("RESPA") 12 U.S.C. § 2605 and for

common law fraud, breach of fiduciary duty and breach of the duty of good faith and fair

dealing resulting from the illegal practices used in the Plaintiff's home loan transactions.

1

## PARTIES

1.      Plaintiff is an individual residing at 19 W. 136 Woodcreek Place, Downers Grove, IL.

2.      Defendant AMERIQUEST is a Delaware corporation that has offices and does business in the State of Illinois.

3.      Defendant GREEN TREE is a Delaware corporation that has offices and does business in the State of Illinois.

## VENUE

4.      That venue is appropriate in the County of Cook pursuant to Section 2-101 of the Illinois Code of Civil Procedure (735 ILCS 5/2-101) in that Cook is the county of residence of the Defendants and the transaction, or some part thereof, giving rise to this cause of action, occurred within the county of Cook.

## JURISDICTION

5.      That jurisdiction is appropriate in this State pursuant to Section 2-209 of the Illinois Code of Civil Procedure (735 ILCS 5/2-209), which states, inter alia, that a party is subject to Illinois Jurisdiction in the event the party, 1) transacted business within the State of Illinois, 2) entered into a contract which is substantially connected with the State of Illinois.

## FACTS

6.      Plaintiff had built a single family home in the year 1998, in which he still currently resides. The interest rate on his original mortgage was approximately 10.6%.

2

7.    In or about December, 1999, Plaintiff received a "cold call" from an agent of Defendant AMERIQUEST and said agent advised Plaintiff that Plaintiff was eligible to refinance his mortgage at a much better rate, not exceed 8%.

8.    Plaintiff agreed to such a refinance.  Plaintiff also agreed to a home equity loan, in the amount of $25,000.00, from Defendant GREEN TREE, to make some home repairs.

9.    During the next several weeks, Defendants had Plaintiff execute several loan documents.

10.    On some of said loan documents, Plaintiff noticed interest rates in excess of 8%.

11.    When Plaintiff inquired as to said interest rates, Defendants advised that those rates were merely estimates and that Plaintiff's actual interest rate would not exceed 8% on the primary loan and on the home equity loan.

12.    Defendants repeatedly assured the Plaintiff that Plaintiff would get an interest rate not exceeding 8% and that Plaintiff's monthly payments would decrease because of the lower interest rate.

13.    Plaintiff did sign loan application paperwork, only after repeatedly being assured by Defendants that his rate would not exceed 8%.

14.    Prior to the actual closing, the Plaintiff was never given a copy of his loan applications, nor did the Plaintiff receive any written documentation regarding the loans. Prior to the actual closing the Defendants failed to provide the Plaintiff with any of the following:  the total amount financed; an itemization of the amount financed; the finance charge; the interest rate being charged; the amount of their monthly mortgage payment;

3

the annual percentage rate, the costs involved in obtaining the loan; the actual amount they would receive; or any pre-conditions associated with their obtaining the loan.

## (The Closing)

15.    When the Plaintiff arrived at the closing he was advised that although some of the numbers on the paperwork indicated his interest rate was in excess of 10%, that his actual rate would not exceed 8%, as previously promised by Defendants.

16.    On information and belief, the Defendants or its agents prepared the mortgage papers for the loan transactions.

17.    When the Plaintiff was at the closing he was given a stack of papers to sign. The Plaintiff was instructed to sign these and was rushed through the process. The Plaintiff was not given time to review or read through the documents. No one present during the closing provided any explanation regarding the documents to the Plaintiff other than to say they were "standard forms."

18.    The Plaintiff was not represented by counsel and had no understanding of the meaning or purpose of the documents that were presented to them. The Plaintiff reasonably relied on Defendants and its agents, who prepared the papers and instructed Plaintiff what to sign and how to proceed.

19.    After the closing, the Plaintiff was provided with copies of only some of the closing documents.

**(The Terms of the Loan and the Loan Documents)**

20.    Plaintiff's interest rate on his new primary loan from Defendant AMERIQUEST is 10.25% and could get as high as 16.25%. Plaintiff's interest rate on his home equity loan with GREEN TREE is 15.65%.

21.    Unbeknownst to Plaintiff, he also paid costs on the primary loan of approximately $18,000.00 and on the home equity loan of approximately $25,000.00.

22.    Unbeknownst to Plaintiff, his home equity loan, which he believed was for $25,000.00, was actually for $52,500.00.

23.    Plaintiff also had an escrow account with his new primary loan to pay his property taxes.

24.    The Plaintiff discovered the fraudulent conduct of the Defendants as a result of the investigation conducted by their attorneys after Plaintiff received several notices that his loans were in default, his escrow account was in the negative and that his property taxes had been sold at tax sales.

25.    The settlement statements that Plaintiff received at the closing are attached hereto.

## COUNT I

## HOEPA VIOLATIONS AGAINST DEFENDANT GREEN TREE

26.    Plaintiff realleges and incorporates herein paragraphs 1 through 25 as if fully set forth herein.

27.    In 1994 Congress amended TILA to add the Home Ownership and Equity Protection Act ("HOEPA") to prevent predatory lending practices targeted at vulnerable consumers.  15 U.S.C. § 1639 and Regulation Z §§ 226.31 and 226.32.

28.    HOEPA created a special class of regulated closed-end loans made at high annual percentage rates or with excessive costs and fees.  15 U.S.C. § 1602(aa).

29    The above-mentioned consumer credit transaction was a high rate mortgage within the meaning of HOEPA, 15 U.S.C. § 1602(aa)(1)(B), in that the total "points and fees" Defendant charged Plaintiffs exceeded eight percent of the total loan.

30.    The term" points and fees" as it relates to the requirements for certain closed end home mortgages is defined as:

(i)    All items included in the finance charge (Reg. Z §(a) and (b), except interest or the time-price differential;

(ii)    All compensation paid to mortgage brokers; and

(iii)    All items listed in Reg. Z § 224.4(c)(7) (other than amounts held for future payment of taxes) unless the charge is reasonable, the creditor receives no direct or indirect compensation in connection with the charge, and the charge is not paid to an affiliate of the creditor.

31.    The amount of points and fees paid by the Plaintiff on the home equity loan totaled $24,644.

32.    The official commentary to Reg. Z states:

[F]or purposes of the "points and fees" test, the **total loan** amount is calculated by taking the amount financed, as determined according to section 226.18(b), and deducting any cost listed in section 226.32(b)(1)(iii) that is both included as points and fees under section 226.32(b)(1) (cited above) and financed by the creditor.  Official commentary to § 226.32

33.    The HUD-1 settlement statement lists the amount financed as $52,500.00.

6

34.    Even subtracting arguable legitimate fees, the loan charges exceed eight percent of the total loan many times over.

35.    Defendant has extended credit to the Plaintiff under high rate mortgages, as defined by 15 U.S.C. § 1602(aa), based on their collateral without regard to their repayment ability, including their current and expected income, current obligations and employment in violation of 17 U.S.C. § 1639(h).

36.    Because the transaction described herein met the HOEPA definition of a high rate mortgage, the transaction was subject to additional disclosure requirements providing that TILA disclosures must be provided three days in advance of the consummation of the transaction along with additional notices to the consumer concerning the nature of the transaction.  15 U.S.C. § 1639 (b).

37.    Creditors must provide new disclosures when a change in terms makes disclosures previously provided under section 226.32(c) inaccurate, including disclosures based on and labeled as an estimate.  15 U.S.C. §1639 (b)(2)(A).

38.    Defendant did not furnish the required HOEPA disclosures to the Plaintiff three days prior to the closing.

39.    The Plaintiff has suffered damages from this transaction including but not limited to, payments made far in excess of what they would have paid if they had never done business with the Defendant, as well as severe physical and emotional distress related to the stress of potential imminent loss of his home to foreclosure.

WHEREFORE, Plaintiff prays for the following relief, pursuant to 15 U.S.C. § 1635, 1639, 1640(a), 1641(d)(1).

7

A.    Statutory damages of $ 2000 for each violation of HOEPA;

B.    Additional damages pursuant to 15 U.S.C. § 1640(a)(4) in the amount of all finance charges and fees paid by plaintiffs;

C.    Forfeiture of return of loan proceeds;

D.    Actual damages in an amount to be determined at trial;

E.    An award of reasonable attorney's fees and costs; and

F.    Such other relief at law or equity as this Court may deem just and proper.

## COUNT II

## TRUTH IN LENDING ACT VIOLATIONS
## AGAINST DEFENDANT GREEN TREE

40.    Plaintiff realleges and incorporates herein paragraphs 1 through 25 as if fully set forth herein.

41.    In the course of this consumer credit transaction, the Defendant violated 15 U.S.C. §1635 (a) and Regulation Z §226.23(b) by failing to deliver to the Plaintiff two copies of the notice of right to rescind.

42.    The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following and other respects:

a.    By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17 (b);

b.    By failing to properly and accurately disclose the "finance charge," using that term in violation of Regulation Z §§ 226.4 and 226.18(d) and 15 U.S.C. § 1638(a)(4).

c.    By failing to properly and accurately disclose in violation of 15 U.S.C. §1638 (a)(2) and Regulation Z § 226.18(b).

d.    By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Regulation Z § 226.22, the defendant understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638 (a)(4) and Regulation Z § 226.18(c).

WHEREFORE, Plaintiffs respectfully prays that this Court:

A.    Award actual damages to be established at trial pursuant to 15 U.S.C. § 1640 (a)(1);

B.    Award statutory damages in the amount of $1000 in accordance with 15 U.S.C. § 1640 (a)(2);

C.    Award plaintiffs costs and reasonable attorney's fees in accordance with 15 U.S.C. § 1640;

D.    Award such other relief as this court may deem just and appropriate.

## COUNT III

### RESPA CLAIMS AGAINST GREEN TREE

43.    As against Defendant Green Tree, the Plaintiff realleges and incorporates herein by reference paragraphs 1 through 25 as if the same were fully set forth herein.

45.    RESPA is designed to prevent the payment of fees in a real estate transaction to persons who do nothing but refer a customer to a certain lender. The purpose of this is to protect unknowing consumers from paying fees and commissions to people who claim to render services but in fact operate by merely passing customers through to pre-selected lenders or agents.

Section 2607 or RESPA provides in relevant part:

(a)    No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service

9

involving a federally related mortgage loan shall be referred to any person; and

(b)     No person shall give and no person shall accept any portion split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. §2607(a)and (b).

46.     The loan transactions described herein is a federally related mortgage as defined by RESPA.

47.     Defendant paid sums for undeterminable reasons to two entities.

48.     $22,062.97 was paid to Residential Title Services (line 1502), and $2,582.00 was paid to GTE Florida (line 1503) by Defendant on behalf of Plaintiff in violation of the RESPA.  12 U.S.C. § 2607 (a).

WHEREFORE, plaintiff respectfully prays for the following relief, pursuant to 12 U.S.C. § 2607 (a) and (b):

A.     An amount equal to three times the amount paid for any charges in violation of this act;

B.     Attorneys fees and court costs; and,

C.     Penalties and fines as provided by law.


## COUNT IV

## INTEREST ACT VIOLATIONS AGAINST GREEN TREE

49.     As against Defendant Green Tree, Plaintiff incorporates herein by reference paragraphs 1 through 25, of this complaint, as if the same were fully set forth herein.

10

50.    At all relevant times, the Illinois Interest Act limited the amount of any "charge in addition to the stated rate of interest payable directly or indirectly by the borrower and imposed directly or indirectly by the lender as a consideration of the loan, or for or in connection with the loan of money....whether denominated 'points', 'service charge', 'discount', 'commission', or otherwise...." 815 ILCS 205/4.1a(f). With certain exceptions not relevant here, the statute provided that "in the case of a loan with an interest rate in excess of 8% per annum secured by residential real estate," such charges "shall not exceed 3% of such principal amount." 815 ILCS 205/4.1a(f).

51.    The Plaintiff's loan was a non-purchase money mortgage, obtained for the purpose of re-financing, therefore, the Illinois Interest Act is not pre-empted by section 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA). Hence, the following provisions of the Illinois Interest Act apply to this loan.

52.    The Plaintiff's equity loan with Defendant carried a 15.650% per annum adjustable interest rate, thus being in excess of 8% per annum. Therefore, the maximum amount that could be charged as a consideration of the loan for or in connection with this loan, pursuant to the Illinois Interest Act was 3% of $52,500.00, or $1,575.00. Again, Plaintiff believed the equity line of credit was for only $25,000.00.

53.    The Plaintiff was charged $24,644.97 in undeterminable fees "in connection with the loan," which exceeds the 3% amount that was allowable under the Illinois Interest Act.

54.    Defendant imposed and/or charged unlawful interest upon the Plaintiff as consideration for the loan and/or in connection with the loan.

11

55.    The actions of Defendant were intentional and "knowing" within the meaning of Section 6 of the Illinois Interest Act, entitling the Plaintiff to damages in an amount equal to twice the total of all interest, discount and charges determined by the loan.

WHEREFORE, the Plaintiff respectfully request that the Court enter judgment in their favor and grant the following relief:

1.    All damages as allowed by law;

2.    All permissible and accrued pre-judgment and post-judgment interest;

3.    Attorney's fees, plus the costs and expenses of suit; and

4.    Such other relief as the Court deems just and appropriate.

## COUNT V

## CONSUMER FRAUD ACT VIOLATIONS AGAINST GREEN TREE

56.    As against Defendant, Green Tree, Plaintiff realleges and incorporates herein as though fully set forth paragraphs 1 through 25 of this claim.

57.    Defendant's acts and omissions were unfair, unscrupulous, oppressive, and amounted to fraudulent and deceptive practices in violation of the Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1-2.

58.    The Consumer Fraud Act states the following:

Unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of

12

any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act [".] approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

59.    The Consumer Fraud Act also provides that any person damaged by a violation of the Act may bring an action to seek damages, an injunction, and any other appropriate relief from the person who violated the Act, including reasonable attorney fees and costs. 815 ILCS 505/ 10a.

60.    The Defendant is a "person" as that term is defined in Section 1(c) of the Consumer Fraud Act. 815 ILCSA 505/1(c).

61.    The Defendant was acting in the course of trade and commerce when they engaged in the conduct described herein.

62.    The Defendant engaged in unfair or deceptive practices in connection with the Plaintiff's home mortgage loan by engaging in misrepresentations and concealment of material facts, deception, fraud and false promises as alleged above, and including, but not limited to the following:

a.    misrepresenting that Defendants would get the Plaintiff a rate not to exceed 8% on his loan;

b.    rushing the Plaintiff through the closing to conceal from them the true costs and nature of the transaction;

c.    charging unlawful interest in connection with the Plaintiff's loan in violation of the Illinois Interest Act.

d.    telling Plaintiff that the interest rates noted on the loan documentation were just estimates and that Plaintiff's actual interest rate would not exceed 8%.

13

e.      failed to accurately and timely disclose the amount financed;

f.      failed to accurately and timely disclose the finance charges;

g.      failed to accurately and timely disclose the annual percentage rate;

h.      prepared loan documents charging unlawful interest in violation of the Illinois Interest Act;

i.      charged the Plaintiff unlawful interest in violation of the Illinois Interest Act;

j.      failed to provide accurate disclosures to the Plaintiff three days prior to consummation of the loan;

k.      failed to provide the additional notice provisions as required by HOEPA;

63.    The conduct, set forth above, constitutes unfair or deceptive acts and practices in violation of the Consumer Fraud Act, in that, in the course of the transaction, Defendant engaged in the following unfair or deceptive acts and practices:

a.      misrepresented material facts as set forth above, with the intent that the Plaintiff would rely on these facts;

b.      concealed and omitted material facts as set forth above, with the intent that the Plaintiff would rely on these facts;

c.      made false promises, as set forth above, with the intent that Plaintiff would rely on these false promises.

64.    The above-described actions were committed by Defendant willfully, wantonly and with reckless disregard of the rights of the Plaintiff.

65.    The Plaintiff believed and relied upon the misrepresentations, omissions and false promises made by the Defendant, as set forth above, and so believing and relying was induced to and did refinance his home which the Plaintiff would not have

14

done had he known of the misrepresentations, omissions and false promises committed by Defendant.

66.     The Defendant engaged in unauthorized and deceptive lending practices in connection with the Plaintiff's home mortgage loan intending for the Plaintiff to rely upon their misrepresentations and concealments in violation of the Consumer Fraud and Deceptive Practices Act.

67.     The Plaintiff has been, and continues to be, damaged by this conduct in that they were deprived of the equity in their home, required to pay usurious interest rates and late fees.

68.     Defendant acted oppressively, fraudulently, and with malice.  Therefore, the Plaintiff is entitled to punitive damages for the sake of example and by way of punishing the Defendant.

**WHEREFORE,** the Plaintiff prays for the following relief :

A.     A finding that Defendant has engaged in and are engaging in unfair or deceptive acts and practices in violation of the Consumer Fraud Act;

B.     A finding that Defendant has engaged in and are engaging in unfair or deceptive acts and practices in violation of the Illinois Deceptive Trade Practices Act;

C.     An order preliminarily and permanently enjoining Defendant from the use of practices that violate the Consumer Fraud Act including, but not limited to the unlawful acts and practices specified above;

D.     An order requiring Defendant to pay to Plaintiff an amount found by the Court to be due for compensatory damages;

E.     An order requiring Defendant to pay to Plaintiff an amount not less than $500,000.00 as and for punitive damages;

F.     An order requiring Defendant to pay Plaintiff's reasonable attorneys fees and costs; and

G.    An order granting such further relief as the Court deems just and equitable under the circumstances.


## COUNT VI

## COMMON LAW FRAUD AGAINST GREEN TREE

69.    Plaintiff realleges and incorporate herein paragraphs 1 through 25 of this claim as though fully set forth herein:

70.    In order to induce Plaintiff to refinance his mortgage, and to conceal from him the true cost of the transaction, Defendant, with the intent that Plaintiff would rely thereon, committed the fraudulent conduct, misrepresentations and/or failures to disclose as set forth above, and Plaintiff did in fact justifiably rely on them to his detriment.

71.    Defendant willfully and intentionally, or in reckless disregard of the truth or falsity of said misrepresentations or failures to disclose and with the intent that Plaintiff would rely thereon, withheld information or failed to disclose information of a material nature as set forth above in order to induce the Plaintiff to refinance his mortgage, and to conceal from him the true cost of the transaction.

72.    The Plaintiff believed and relied upon the misrepresentations and omissions made by Defendant, as set forth above, and so believing and relying was induced to and did refinance his mortgage which Plaintiff would not have done had he known of the misrepresentations and omissions committed by Defendant.

73.    As a result of the Defendant's fraudulent conduct, misrepresentations and/or failures to disclose as set forth above, Plaintiff has suffered various damages and losses.

74.    In doing the acts alleged herein, Defendant acted with oppression, fraud and malice and Plaintiff is entitled to punitive damages for the sake of example and by way of punishing Defendant.

WHEREFORE, the Plaintiff prays for judgment against Defendant in an amount found by the Court to be due for compensatory damages and for punitive damages in an amount of not less than $500,000.00. The Plaintiff further prays for such other and further relief, as this Court shall deem just and equitable, including an award of attorney's fees and costs.

## COUNT VII

## BREACH OF FIDUCIARY DUTY AGAINST GREEN TREE

75.    As against Defendant Green Tree, the Plaintiff realleges and incorporates herein by reference paragraphs 1 through 25, of this claim, as if the same were fully set forth herein.

76.    Defendant, as the lenders of funds, had the fiduciary duty of due care in the proper handling of any and all instruments or other documents which they prepared for this transaction. Defendant also owed the Plaintiff the duties of loyalty and good faith.

17

77.    Defendant failed to act honestly, with diligence and in the Plaintiff's best interests and breached the fiduciary duty they owed to the Plaintiff when the committed the acts alleged herein.

78.    As a result of the actions of Defendant, the Plaintiffs have been damaged and will continue to be damaged in that they have suffered financially, their credit rating has been adversely affected, and as a result of an impending mortgage foreclosure action, they are in danger of losing their home.

79.    In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud and malice thereby entitling the Plaintiffs to punitive damages for the sake of example and by way of punishment.

WHERFORE, the Plaintiff pray for judgment against Defendant in an amount found by the Court to be due for compensatory damages and for punitive damages in an amount not less than $500,00.00. The Plaintiff further prays for such further relief, as this Court shall deem just, including an award of attorney's fees and costs.

## COUNT VIII

### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING AGAINST GREEN TREE

80.    As against Defendant the Plaintiff realleges and incorporates herein by reference paragraphs 1 through 25, of this claim, as if the same were fully set forth herein.

81.    An implied duty of good faith and fair dealing existed with respect to Defendant's contracts with the Plaintiff.

82.    Defendant breached its implied duty of good faith and acted arbitrarily, capriciously and in a manner inconsistent with the reasonable expectations of the Plaintiff when they performed the following acts: (a) it failed to provide the Plaintiff with TILA disclosures in a timely manner; (c) it failed to provide the enhanced disclosures required under HOEPA; (d) it charged the Plaintiff excessive fees and charges associated with the loan; (e) it prepared false and/or misleading loan documents; (f) it unnecessarily refinanced the loan for the express purpose of depriving the Plaintiff of the equity in his home and providing the Plaintiff with a lesser amount than that to which he was entitled to from his loan proceeds.

83.    As a result of the actions of Defendant, Plaintiff has been damaged and will continue to be damaged in that he has suffered financially, his credit rating has been adversely affected and, as a result of the threatened mortgage foreclosure action, he is in danger of losing their home.

84.    In doing the acts herein alleged, Defendant acted intentionally with oppression, fraud and malice, thereby entitling the Plaintiff to punitive damages for the sake of example and by way of punishment.


WHEREFORE, the Plaintiff prays for judgment against Defendant in an amount found by the Court to be due for compensatory damages and for punitive damages in an amount of not less than $500,000.00. The Plaintiff further prays for such other and

further relief, as this Court shall deem just, including an award of attorney's fees and costs.

## COUNT IX

### TRUTH IN LENDING ACT VIOLATIONS AGAINST AMERIQUEST

85.    Plaintiff realleges and incorporates herein paragraphs 1 through 25 as if fully set forth herein.

86.    The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following respects:

a.    By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17 (b);

b.    By failing to properly and accurately disclose the "finance charge," using that term in violation of Regulation Z §§ 226.4 and 226.18(d) and 15 U.S.C. § 1638(a)(4).

c.    By failing to properly and accurately disclose in violation of 15 U.S.C. §1638 (a)(2) and Regulation Z § 226.18(b).

d.    By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Regulation Z § 226.22, the defendant understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638 (a)(4) and Regulation Z § 226.18(c).

WHEREFORE, Plaintiffs respectfully prays that this Court:

A.    Award actual damages to be established at trial pursuant to 15 U.S.C. § 1640 (a)(1);

B.    Award statutory damages in the amount of $1000 in accordance with 15 U.S.C. § 1640 (a)(2);

20

C.    Award plaintiffs costs and reasonable attorney's fees in accordance with 15 U.S.C. § 1640;

D.    Award such other relief as this court may deem just and appropriate.

## COUNT X

## RESPA CLAIMS AGAINST AMERIQUEST

87.    As against Defendant, Ameriquest, the Plaintiff realleges and incorporates herein by reference paragraphs 1 through 25 as if the same were fully set forth herein.

88.    RESPA is designed to prevent the payment of fees in a real estate transaction to persons who do nothing but refer a customer to a certain lender. The purpose of this is to protect unknowing consumers from paying fees and commissions to people who claim to render services but in fact operate by merely passing customers through to pre-selected lenders or agents.

Section 2607 or RESPA provides in relevant part:

(a)    No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person; and

(b)    No person shall give and no person shall accept any portion split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. §2607(a)and (b).

89.    The loan transactions described herein is a federally related mortgage as defined by RESPA.

90.    Defendant paid sums to an entity for undeterminable reasons.

21

91.    $2,582.00 was paid to KCA Financial (line 1502) by Defendant on behalf of Plaintiff in violation of the RESPA.  12 U.S.C. § 2607 (a).

WHEREFORE, plaintiff respectfully prays for the following relief, pursuant to 12 U.S.C. § 2607 (a) and (b):

A.    An amount equal to three times the amount paid for any charges in violation of this act;

B.    Attorneys fees and court costs; and,

C.    Penalties and fines as provided by law.

## COUNT XI

## INTEREST ACT VIOLATIONS AGAINST AMERIQUEST

92.    As against Defendant, Plaintiff incorporates herein by reference paragraphs 1 through 25, of this complaint, as if the same were fully set forth herein.

93.    At all relevant times, the Illinois Interest Act limited the amount of any "charge in addition to the stated rate of interest payable directly or indirectly by the borrower and imposed directly or indirectly by the lender as a consideration of the loan, or for or in connection with the loan of money....whether denominated 'points', 'service charge', 'discount', 'commission', or otherwise...." 815 ILCS 205/4.1a(f).  With certain exceptions not relevant here, the statute provided that "in the case of a loan with an interest rate in excess of 8% per annum secured by residential real estate," such charges "shall not exceed 3% of such principal amount." 815 ILCS 205/4.1a(f).

94.    The Plaintiff's loan was a non-purchase money mortgage, obtained for the purpose of re-financing, therefore, the Illinois Interest Act is not pre-empted by section

22

501 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA). Hence, the following provisions of the Illinois Interest Act apply to this loan.

95.    The Plaintiff's primary loan with Defendant carried a 10.25% per annum adjustable interest rate, thus being in excess of 8% per annum. Therefore, the maximum amount that could be charged as a consideration of the loan for or in connection with this loan, pursuant to the Illinois Interest Act was 3% of $420,000, or $12,600.00.

96.    The Plaintiff was charged $17,720.232 in fees "in connection with the loan," which exceeds the 3% amount that was allowable under the Illinois Interest Act.

97.    Defendant imposed and/or charged unlawful interest upon the Plaintiff as consideration for the loan and/or in connection with the loan.

98.    The actions of Defendant were intentional and "knowing" within the meaning of Section 6 of the Illinois Interest Act, entitling the Plaintiff to damages in an amount equal to twice the total of all interest, discount and charges determined by the loan.


WHEREFORE, the Plaintiff respectfully request that the Court enter judgment in their favor and grant the following relief:

5.    All damages as allowed by law;

6.    All permissible and accrued pre-judgment and post-judgment interest;

7.    Attorney's fees, plus the costs and expenses of suit; and

8.    Such other relief as the Court deems just and appropriate.


23

## COUNT XII

### CONSUMER FRAUD ACT VIOLATIONS AGAINST AMERIQUEST

99.    As against Defendant, Plaintiff realleges and incorporates herein as though fully set forth paragraphs 1 through 25 of this claim.

100.    Defendant's acts and omissions were unfair, unscrupulous, oppressive, and amounted to fraudulent and deceptive practices in violation of the Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1-2.

101.    The Consumer Fraud Act states the following:

> Unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act ["] approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

102.    The Consumer Fraud Act also provides that any person damaged by a violation of the Act may bring an action to seek damages, an injunction, and any other appropriate relief from the person who violated the Act, including reasonable attorney fees and costs. 815 ILCS 505/ 10a.

103.    The Defendant is a "person" as that term is defined in Section 1(c) of the Consumer Fraud Act. 815 ILCSA 505/1(c).

24

104.    The Defendant was acting in the course of trade and commerce when it engaged in the conduct described herein.

105.    The Defendant engaged in unfair or deceptive practices in connection with the Plaintiff's home mortgage loan by engaging in misrepresentations and concealment of material facts, deception, fraud and false promises as alleged above, and including, but not limited to the following:

a.    misrepresenting that Defendant would get the Plaintiff a rate not to exceed 8% on his loan;

b.    misrepresenting to the Plaintiff that the loan Defendant procured would be at a significantly lower APR than Plaintiff's original mortgage;

c.    misrepresenting to the Plaintiff that they would get them the best rate possible when in fact they sold to the Plaintiff a loan at an above market rate of interest in order to maximize their profit;

d.    rushing the Plaintiff through the closing to conceal from them the true costs and nature of the transaction;

e.    charging unlawful interest in connection with the Plaintiff's loan in violation of the Illinois Interest Act.

f.    telling Plaintiff that the interest rates noted on the loan documentation were just estimates and that Plaintiff's actual interest rate would not exceed 8%.

g.    failed to accurately and timely disclose the amount financed;

h.    failed to accurately and timely disclose the finance charges;

i.    failed to accurately and timely disclose the annual percentage rate;

j.    prepared loan documents charging unlawful interest in violation of the Illinois Interest Act;

k.    charged the Plaintiff unlawful interest in violation of the Illinois Interest Act;

25

l.   failed to provide accurate disclosures to the Plaintiff three days prior to consummation of the loan;

m.   failed to provide the additional notice provisions as required by HOEPA;

106.   The conduct, set forth above, constitutes unfair or deceptive acts and practices in violation of the Consumer Fraud Act, in that, in the course of the transaction, Defendant engaged in the following unfair or deceptive acts and practices:

a.   misrepresented material facts as set forth above, with the intent that the Plaintiff would rely on these facts;

b.   concealed and omitted material facts as set forth above, with the intent that the Plaintiff would rely on these facts;

c.   made false promises, as set forth above, with the intent that Plaintiff would rely on these false promises.

107.   The above-described actions were committed by Defendant willfully, wantonly and with reckless disregard of the rights of the Plaintiff.

108.   The Plaintiff believed and relied upon the misrepresentations, omissions and false promises made by the Defendant, as set forth above, and so believing and relying was induced to and did refinance his home which the Plaintiff would not have done had he known of the misrepresentations, omissions and false promises committed by Defendant.

109.   The Defendant engaged in unauthorized and deceptive lending practices in connection with the Plaintiff's home mortgage loan intending for the Plaintiff to rely upon their misrepresentations and concealments in violation of the Consumer Fraud and Deceptive Practices Act.

26

110.    The Plaintiff has been, and continues to be, damaged by this conduct in that they were deprived of the equity in their home, required to pay usurious interest rates and late fees and his property taxes were not paid by the Defendant.

111.    Defendant acted oppressively, fraudulently, and with malice. Therefore, the Plaintiff is entitled to punitive damages for the sake of example and by way of punishing the defendants.

**WHEREFORE,** the Plaintiff prays for the following relief :

A.    A finding that Defendant has engaged in and are engaging in unfair or deceptive acts and practices in violation of the Consumer Fraud Act;

B.    A finding that Defendant has engaged in and are engaging in unfair or deceptive acts and practices in violation of the Illinois Deceptive Trade Practices Act;

C.    An order preliminarily and permanently enjoining Defendant from the use of practices that violate the Consumer Fraud Act including, but not limited to the unlawful acts and practices specified above;

D.    An order requiring Defendant to pay to Plaintiff an amount found by the Court to be due for compensatory damages;

E.    An order requiring Defendant to pay to Plaintiff an amount not less than $500,000.00 as and for punitive damages;

F.    An order requiring Defendant to pay Plaintiff's reasonable attorneys fees and costs; and

G.    An order granting such further relief as the Court deems just and equitable under the circumstances.

27

## COUNT XIII

## COMMON LAW FRAUD AGAINST AMERIQUEST

112.    Plaintiffs reallege and incorporate herein paragraphs 1 through 25 of this claim as though fully set forth herein:

113.    In order to induce Plaintiff to refinance his mortgage, and to conceal from him the true cost of the transaction, Defendant, with the intent that Plaintiff would rely thereon, committed the fraudulent conduct, misrepresentations and/or failures to disclose as set forth above, and Plaintiff did in fact justifiably rely on them to his detriment.

114.    Defendant willfully and intentionally, or in reckless disregard of the truth or falsity of said misrepresentations or failures to disclose and with the intent that Plaintiff would rely thereon, withheld information or failed to disclose information of a material nature as set forth above in order to induce the Plaintiff to refinance his mortgage, and to conceal from him the true cost of the transaction.

115.    The Plaintiff believed and relied upon the misrepresentations and omissions made by Defendant, as set forth above, and so believing and relying was induced to and did refinance his mortgage which Plaintiff would not have done had he known of the misrepresentations and omissions committed by Defendants.

116.    As a result of the Defendant's fraudulent conduct, misrepresentations and/or failures to disclose as set forth above, Plaintiff has suffered various damages and losses.

117.    In doing the acts alleged herein, Defendant acted with oppression, fraud and malice and Plaintiff is entitled to punitive damages for the sake of example and by way of punishing Defendant.

28

WHEREFORE, the Plaintiff prays for judgment against Defendant in an amount found by the Court to be due for compensatory damages and for punitive damages in an amount of not less than $500,000.00. The Plaintiff further prays for such other and further relief, as this Court shall deem just and equitable, including an award of attorney's fees and costs.

## COUNT XIV

## BREACH OF FIDUCIARY DUTY AGAINST AMERIQUEST

118.    As against Defendant, Ameriquest, the Plaintiff realleges and incorporates herein by reference paragraphs 1 through 25, of this claim, as if the same were fully set forth herein.

119.    Defendant, as the lenders of funds, had the fiduciary duty of due care in the proper handling of any and all instruments or other documents which they prepared for this transaction. Defendant also owed the Plaintiff the duties of loyalty and good faith.

120.    Defendant failed to act honestly, with diligence and in the Plaintiff's best interests and breached the fiduciary duty they owed to the Plaintiff when the committed the acts alleged herein.

121.    As a result of the actions of Defendant, the Plaintiff has been damaged and will continue to be damaged in that they have suffered financially, their credit rating has been adversely affected, and as a result of an impending mortgage foreclosure action, they are in danger of losing their home.

29

122.    In doing the acts herein alleged, Defendant intentionally acted with oppression, fraud and malice thereby entitling the Plaintiff to punitive damages for the sake of example and by way of punishment.

WHERFORE, the Plaintiff pray for judgment against Defendant in an amount found by the Court to be due for compensatory damages and for punitive damages in an amount not less than $500,00.00. The Plaintiff further prays for such further relief, as this Court shall deem just, including an award of attorney's fees and costs.

## COUNT XV

## BREACH OF DUTY OF GOOD FAITH AND
## FAIR DEALING AGAINST AMERIQUEST

123.    As against Defendant the Plaintiff realleges and incorporates herein by reference paragraphs 1 through 25, of this claim, as if the same were fully set forth herein.

124.    An implied duty of good faith and fair dealing existed with respect to Defendant's contracts with the Plaintiff.

125.    Defendant breached its implied duty of good faith and acted arbitrarily, capriciously and in a manner inconsistent with the reasonable expectations of the Plaintiff when they performed the following acts:  (a)  it failed to provide the Plaintiff with TILA disclosures in a timely manner; (c)  it failed to provide the enhanced disclosures required under HOEPA; (d)  it charged the Plaintiff excessive fees and charges associated with the

30

loan; (e) it prepared false and/or misleading loan documents; (f) it unnecessarily refinanced the loan for the express purpose of depriving the Plaintiff of the equity in his home and providing the Plaintiff with a lesser amount than that to which he was entitled to from his loan proceeds.

126.    As a result of the actions of Defendant, Plaintiff has been damaged and will continue to be damaged in that he has suffered financially, his credit rating has been adversely affected and, as a result of the threatened mortgage foreclosure action, he is in danger of losing their home.

127.    In doing the acts herein alleged, Defendant acted intentionally with oppression, fraud and malice, thereby entitling the Plaintiff to punitive damages for the sake of example and by way of punishment.

WHEREFORE, the Plaintiff prays for judgment against Defendant in an amount found by the Court to be due for compensatory damages and for punitive damages in an amount of not less than $500,000.00. The Plaintiff further prays for such other and further relief, as this Court shall deem just, including an award of attorney's fees and costs.

Respectfully submitted,

Thomas Haught

Thomas Haught
Gardi & Associates
1450 E. American Lane, Suite 1400
Schaumburg, IL 60173
847 330-6355    Fax 847 330-6356

31

Case 3:05-cv-07097 Document # 96 Filed: 03/23/06 Page 134 of 173 PageID #:2440

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

Name & Address of Borrower
GAVIONE TANNERILLO

19 W. 134 WOODCREEK PLACE
DOWNERS GROVE, IL 60616

Name & Address of Lender
AMERIQUEST MORTGAGE COMPANY
1100 TOWN & COUNTRY RD., STE. 200
ORANGE, CA 92868

Property Location
19 W 134 WOODCREEK PLACE
DOWNERS GROVE, IL 60616

Loan Number
14464-3270-8798

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 801. Loan Origination Fee 1.000 % to | | 1301. LOAN BROKER | 410,279.77 |
| 802. Loan Discount 2.750 % to AMERIQUEST MORTGAGE COMPANY | 12,636.00 | 1302. | |
| 803. Appraisal Fee to VERZON, JOHN M. | 550.00 | 1303. | |
| 804. Credit Report to | | 1304. | |
| 805. Inspection Fee to | | 1305. | |
| 806. | | 1306. | |
| 807. | | 1307. | |
| 808. Processing Fee | 435.00 | 1308. | |
| 810. Flood Search Fee | 30.00 | 1309. | |
| 811. | | 1310. | |
| 901. Interest Rate 12/13/99 to 01/01/00 @ $ 130.19 per day | 2,343.22 | 1311. | |
| 902. Mortgage Insurance Premium for months to | | 1312. | |
| 903. Hazard Insurance Premium for years to | | 1313. | |
| 1001. Hazard Insurance months @ $ per month | | 1314. | |
| 1002. Mortgage Insurance months @ $ per month | | 1315. | |
| 1004. City property taxes months @ $ per month | | 1320. TOTAL DISBURSED (enter on line L) | 410,279.77 |
| 1101. Settlement or closing fee to | 130.00 | | |
| 1102. Abstract or title search to | 704.00 | Total Wires  411,765.77 | |
| 1108. Title insurance to RESIDENTIAL TITLE SERVICES | 1,138.00 | | |
| 1201. Recording Fee | 34.00 | N. NET SETTLEMENT | |
| 1302. TAX RELATED SERVICE FEE | 80.00 | 1600. Loan Amount | 436,000.00 |
| 1306. ADMINISTRATION FEE | 700.00 | 1602. Minus Total Settlement Charges (line 1400) | 17,729.23 |
| 1307. APPLICATION FEE | 975.00 | 1603. Minus Total Disbursements to Others (line 1520) | 410,279.77 |
| 1400. Total Settlement Charges (enter on line 1602) | 17,729.23 | 1604. Equals Disbursements to Borrower | 0.00 |

X _____  12-10-99

Settlement Statement
Optional Form for
Transactions without Sellers

| Name & Address of Borrower: | Name & Address of Lender: |
|---|---|
| GAVIONE IANNONELLO | AMERIQUEST MORTGAGE COMPANY |
| | 1100 TOWN & COUNTRY RD., STE. 200 |
| 19 W 136 WOODCREEK PLACE | ORANGE, CA 92868 |
| DOWNERS GROVE, IL 60516 | |

| Property Location: (if different from above) | Settlement Agent: |
|---|---|
| 19 W 136 WOODCREEK PLACE | |
| DOWNERS GROVE, IL 60516 | Place of Settlement: |

| Loan Number | Settlement Date: |
|---|---|
| 14080070-5798 | |

| L. Settlement Charges | | M. DISBURSEMENT TO OTHERS | | |
|---|---|---|---|---|
| 800. Items Payable in Connection with Loan | | 1501. LONG BEACH | 410,279.77 | 467,407.77 |
| 801. Loan origination fee 0.000 % to | | | | |
| 802. Loan discount 2.950 % to AMERIQUEST MORTGAGE COMPANY | 12,626.00 | 1502. NCA FINANCIAL ...to ( ) | | 2,582.00 |
| 803. Appraisal fee to PERDUE, JOHN R. | 560.00 | | | |
| 804. Credit report to | | 1503. | | |
| 805. Inspection fee to | | 1504. | | |
| 806. | | | | |
| 807. | | | | |
| 808. PROCESSING FEE | 425.00 | 1505. | | |
| 809. FLOOD SEARCH FEE | 30.00 | 1506. | | |
| 811. | | | | |
| 900. Items Required by Lender to be Paid in Advance | | 1507. | | |
| 901. Interest from 12/15/99 to 01/01/00 @ $ 120.19 per day | 2,043.23 | | | |
| 902. Mortgage insurance premium for months to | | 1508. | | |
| 903. Hazard insurance premium for years to | | 1509. | | |
| 904. | | 1510. | | |
| 1000. Reserves Deposited with Lender | | 1511. | | |
| 1001. Hazard insurance months @ $ per month | | | | |
| 1002. Mortgage insurance months @ $ per month | | 1512. | | |
| 1003. City property taxes months @ $ per month | | | | |
| 1004. County property taxes months @ $ per month | | 1513. | | |
| 1005. Annual assessments months @ $ per month | | | | |
| 1006. months @ $ per month | | 1514. | | |
| 1007. months @ $ per month | | | | |
| 1008. | | 1515. | | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee to | 196.00 | 1520. TOTAL DISBURSED (enter on line 1603) | 410,279.77 | |
| 1102. Abstract or title search to | 140.00 | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| 1108. Title insurance to RESIDENTIAL TITLE SERVICES | 1,735.00 | Total Wires= 409,363.77 | | |
| 1109. Lender's coverage $ | | | | |
| 1110. Owner's coverage $ | | | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| 1200. Government Recording and Transfer Charges | | N. NET SETTLEMENT | | |
| 1201. Recording fees | 36.00 | | | |
| 1202. City/county tax/stamps | | 1600. Loan Amount | $428,000.00 |
| 1203. State tax/stamps | | 1601. Plus Cash/Check from Borrower | $ |
| 1204. State Specific Fee | | | | |
| 1204. Additional Settlement Charges | | 1602. Minus Total Settlement Charges (line 1400) | $ 17,728.23 |
| 1301. Survey to | | | | |
| 1302. Pest inspection to | | 1603. Minus Total Disbursements to Others | $410,279.77 |
| 1303. TAX RELATED SERVICE FEE | 69.00 | (line 1520) | | |
| 1304. | | | | |
| 1305. | | | | |
| 1306. ADMINISTRATION FEE | 196.00 | 1604. Equals Disbursements to Borrower | $ 0.00 |
| 1307. APPLICATION FEE | 275.00 | (after expiration of any applicable rescission | |
| 1308. | | period required by law) | | |
| 1309. | | | | |
| 1400. Total Settlement Charges (enter on line 1602) | 17,728.23 | | | |

BORROWER(S) SIGNATURE(S)

X

HUD-1A (REV 3/93)                    POWER OF ATTORNEY                    APPROVED                    BRANCH: ITASCA, IL

Case 1:05-cv-00466    Document 1    Filed 01/26/2005    Page 46 of 77

COPY

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

Loan #: 6906003022

OMB No. 2502-0491

Name & Address of Borrower: **Gaviona Tammarello**
180 Woodcreek
Downers Grove, IL  60516

Name & Address of Lender: **Comsco Bank, Inc.**
Cottonwood Corporate Center
1035 E Cottonwood Prkwy 230
Salt Lake City, UT 84121

Property Location (if different from above):
180 Woodcreek
Downers Grove, IL  60516

Settlement Agent: **COMERCO FINANCE SERVICING CORP.**

Place of Settlement: 1501 WOODFIELD RD
Schaumburg IL 60173

Loan Number: 6906003022

Settlement Date: 12/27/99   Disb. Date: 12/31/99

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800. Items Payable in Connection With Loan | | 1501. | |
| 801. Loan origination fee to Comsco Bank, Inc. | 2,625.00 | Lombardi  1910  620.440 | |
| 802. Loan discount  % to Comsco Bank, Inc. | | | |
| 803. Appraisal fee to EQUIFAX AND ASSOCIATES | 3675.00 | 1502. Serra RESIDENTIAL TITLE SERVICES | 22,062.97 |
| 804. Credit report to Equifax/Trans Union (P.O.C.) | | | |
| 805. Inspection fee to | | 1503. GTE FLORIDA | 2,582.00 |
| 806. Mortgage insurance application fee to | | | |
| 807. Mortgage broker fee to | | | |
| 808. Application Fee to Comsco Bank, Inc. | | 1504. | |
| 809. Flood Cert/Life of Loan to sts (P.O.C.) | 9.00 | 1505. | |
| 810. Points to Comsco Bank, Inc. | | | |
| 811. Courier Fee | | | |
| 900. Items Required By Lender To Be Paid In Advance | | | |
| 901. Interest from 00/00 to 00/00 @ $ per day | | COPY | |
| 902. Mortgage insurance premium for month periods to | | | |
| 903. Hazard insurance premium for 0.0 allowable mos. to ROYAL & SUNALLIANCE | 255.00 | & Explain | |
| 904. Flood Insurance Premium years to | | 1507. | |
| 905. Credit Ins. Premium to Comsco Agency, Inc. | | | |
| 1000. Reserves Deposited With Lender | | | |
| 1001. Hazard insurance pymt. period @ $ per period | | 1508. | |
| 1002. Mortgage insurance pymt. period @ $ per period | | | |
| 1003. City property taxes pymt. period @ $ per period | | | |
| 1004. County property taxes pymt. period @ $ per period | | 1509. | |
| 1005. Annual assessments pymt. period @ $ per period | | | |
| 1006. pymt. period @ $ per period | | | |
| 1007. pymt. period @ $ per period | | 1510. | |
| 1008. | | | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee to | | 1511. | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | 1512. | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | 1513. | |
| 1107. Attorney's fees to | | | |
| (includes above item numbers) | | | |
| 1108. Title insurance to RESIDENTIAL TITLE SERVICES | | 1514. | |
| (includes above item numbers 1102-1104) | 500.00 | | |
| 1109. Lender's coverage $ 82,500.00 | | | |
| 1110. Owner's coverage $ | | 1515. | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| 1200. Government Recording And Transfer Charges | | 1516. TOTAL DISBURSED (enter on line 1602) | |
| 1201. Recording fees | | | 26,564.97 |
| 1300. Diplomacy to/above | | N. NET SETTLEMENT | |

DEC. 23. 1999 2:05PM    AMERIQUEST MORTGAGE SCRATCHBORD 01/26/2005    Page 4469    NO. 2




# Long Beach Mortgage Company

P.O. Box 6149 Orange, CA 92863
(800) 690-2014 08:30 a.m. - 04:30 p.m. PST

PAYOFF STATEMENT

December 22, 1999
Requested By: Pamela Mccraney
Ameriquest Mortgage CO.

Fax #: (630) 773-9330

RE: LOAN NO.: 008471146
LOAN TYPE: Uninsured
BORROWER: Gaviche Tammarello
PROPERTY ADDRESS: 19 W 136 Woodcreek Place
Downers Grove, IL 50816

CURRENT INTEREST RATE: 10.6000
INTEREST FROM DATE: 12/01/1999
ESCROW AMOUNT: 0.00

THIS STATEMENT WILL EXPIRE TEN DAYS FROM THE DATE OF ISSUE

CURRENT LOAN INFORMATION

| | |
|---|---|
| Principal | $ 427,665.63 |
| Interest Thru 01/01/2000 | 3,901.91 |
| Corporate Fees - Accrued | 15.00 |
| Payoff Fax Fee | 15.00 |
| Total Funds Due For Pay Off: | $ 431,597.54 |

FUNDS RECEIVED AFTER THE INTEREST THRU DATE WILL REQUIRE AN ADDITIONAL $124.20 INTEREST PER DAY. FIGURES ARE SUBJECT TO CHANGE AND LATE CHARGES WILL BE ASSESSED ON THE LOAN BASED ON THE TERMS OF THE NOTE. PLEASE VERIFY FIGURES 24 HOURS IN ADVANCE OF PAYOFF.

ISSUANCE OF THIS STATEMENT DOES NOT SUSPEND THE CONTRACT REQUIREMENT TO MAKE THE MORTGAGE PAYMENTS WHEN DUE.

RECEIPT OF PAYOFF FUNDS WILL BE ACCEPTED ON A CONDITIONAL BASIS, SUBJECT TO CHECK CLEARANCE AND VERIFICATION OF THE CORRECT REMITTANCE. ALL FIGURES ARE SUBJECT TO THE CLEARANCE OF FUNDS IN TRANSIT AND CONFIRMATION BY THE MORTGAGE HOLDER. PLEASE HOLD $ 3947.12 IN ESCROW FOR 21 DAYS UNLESS YOU HAVE VERIFICATION THAT THE LAST PAYMENT MADE HAS CLEARED. IF A RETURNED ITEM OCCURS ON THE LOAN, THE ESCROW/TITLE COMPANY WILL BE HELD LIABLE FOR ANY SHORTAGES.

ALL PAYOFF CHECKS MUST BE RECEIVED BY 3:00 PM IN OUR OFFICE AT: 1100 TOWN & COUNTRY 9TH FLR, ORANGE, CA. 92868, OR ADDITIONAL INTEREST WILL BE CHARGED. IF PROPERTY IS SOLD, PLEASE PROVIDE THE SELLER'S

1100 TOWN & COUNTRY ROAD, ORANGE, CALIFORNIA 92868  (714) 568-0700

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 12,916.67 | $ | $ 12,916.67 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 3,850.00 | $ 902.36 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 12,916.67 | $ | $ 12,916.67 | Total | $ 3,850.00 | $ 902.36 |

* Self Employed Borrowers (s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | |
| | | |
| | | |

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this financial and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS | Cash or Market Value | | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|---|
| Description | | | LIABILITIES | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
| Cash deposit toward purchase held by: | $ | | Name and address of Company | $ Pmt./Mos. | |
| | | | DP OF EDUC | | |
| List checking and savings accounts below | | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| Bridgeview Bannk Group | | | | | |
| | | | Acct. no. 11997040013729010 | .00/ | 2,262.00 |
| | | | Name and address of Company | $ Pmt./Mos. | |
| | | | AT&T WS | | |
| Acct. no. | $ .00 | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | | Acct. no. 2500000022035703 | .00/ | 6,058.00 |
| | | | Name and address of Company | $ Pmt./Mos. | |
| | | | GTE    FLORID | | |
| Acct. no. | $ | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | | Acct. no. 36007458 | .00/ | 2,582.00 |
| | | | Name and address of Company | $ Pmt./Mos. | |
| | | | GTE    FLORID | | |
| Acct. no. | $ | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | | Acct. no. 37489759 | .00/ | 2,582.00 |
| | | | Name and address of Company | $ Pmt./Mos. | |
| Acct. no. | $ | | PROVIDIAN | | |
| Stocks & Bonds (Company name/number & description) | $ | | | | |
| | | | Acct. no. 4031171000407845 | 22.00/35 | 757.00 |
| | | | Name and address of Company | $ Pmt./Mos. | |
| | | | FRD MOTOR CR | | |
| Life insurance net cash value | $ | | | | |
| Face amount $ | | | | | |
| Subtotal Liquid Assets | $ | | Acct. no. APA9007QC2 | 759.00/55 | 41,743.00 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 570,000.00 | | Name and address of Company | $ Pmt./Mos. | |
| Vested interest in retirement fund | $ | | ~~████████████~~ | * | To Be Paid Off |
| Net worth of business(es) owned (attach financial statement) | $ | | ~~████ BOX 6148~~ ~~Or████ LA 71008~~ | | |
| Automobiles owned (make and year) | $ | | | | |
| | | | Acct. no. | .00/ | |
| | | | Alimony/Child Support/Separate Maintenance Payments Owed to: | | ~~███████████~~ |
| Other Assets (itemize) | $ | | A/CB/6M Total pymt. $ | | |
| | | | Job Related Expense (child care, union dues, etc.) | | |
| | | | JR Exp Combined Total pymt. | | |
| | | | Total Monthly Payments | $ 781.00 | |
| Total Assets a. | $ 570,000.00 | | Net Worth (a minus b) → $ 488,296.00 | Total Liabilities b. | $ 81,704.00 |

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

Freddie Mac Form 65 10/92

~~∩∩∩∩∩31 (02/93) ██~~

Page 2 of 4

1st Application printed.

Not signed. Just a draft.

letters in file.

Case 1:05-cv-00466    Document 1    Filed 01/26/2005    Page 42 of 77

Application # 9912221740
Loan # 6906003022

## SECTION 32 DISCLOSURE

Date Delivered: *12-22-99*    Loan Closing Date: December 27, 1999

Borrower(s): Gavione Tammerello

Property Address: 180 Woodcreek

Downers Grove, IL 60516

**You are not required to complete the loan agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligation under the loan. (Regulation Z, Section 226.32(c)(1))**

**The ANNUAL PERCENTAGE RATE (APR) on your loan is**          16.542 **%.**

**The NOMINAL INTEREST RATE on your loan is**          15.650 **%.**

**The amount of your regular** monthly **payment is**     $    699.02 .

**The balloon payment on your loan (if applicable) is**     $    N/A .

**Your loans is (check one):**

☑    **Fixed Rate**
             or
☐    **Variable Rate**

**Variable Rate Loans: The interest rate and _____ payment on your loan may increase. The amount of your maximum _____ payment, based on the maximum interest rate that may be imposed during the term of your loan is $_____ .**

By signing below, I/we acknowledge that I/we received a copy of this disclosure by
*12-22-99*          pursuant to Regulation Z, 226.31(c)(1).
*(3 business days before the closing date)*

Gavione Tammerello

*12-27-99*
Date

_____
Date

11/16/99                                    Section 32 Disclosure

100018

| APPLICATION SUBMITTED TO (AND THESE DISCLOSURES MADE BY): | APPLICANT'S NAME AND CURRENT ADDRESS | |
|---|---|---|
| Conseco Bank, Inc. <br> Cottonwood Corporate Center <br> 2825 E Cottonwood Prky 320 <br> Salt Lake City, UT 84121 | Gavione Tammerello <br> 180 Woodcreek <br> Downers Grove, IL 60515 | Application Received December 22, 1999 <br> Date of Disclosure December 22, 1999 <br> Proposed Date of Closing December 20, 1999 <br> Date of Delivery December 22, 1999 <br> By ☒ Mail ☐ In Person |

### GOOD FAITH ESTIMATE OF SETTLEMENT COSTS

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed.

The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| ITEM | | AMOUNT OR RANGE | | | |
|---|---|---|---|---|---|
| 801. | Loan Origination Fee 5.0 % | $ 2,825.00 | 1107. | Attorney's Fee | $ _____ |
| 802. | Loan Discount Fee % | $ _____ | | includes items | |
| 803. | Appraisal Fee | $ 325.00 | 1108. | Title Insurance | $ 325.00 |
| 804. | Credit Report Fee (P.O.C.) | $ 3.89 | | includes items | |
| 805. | Inspection Fee | $ _____ | 1109. | Lender's Coverage | $ 56,500.00 |
| 806. | Mortgage Insurance Application Fee | $ _____ | 1110. | Owner's Coverage | $ _____ |
| 807. | Assumption Fee | $ _____ | 1201. | Recording Fees | |
| * | Mortgage Broker Fee % | $ _____ | | Deed | $ _____ |
| * | CLO Access Fee | $ _____ | | Mortgage | $ _____ |
| * | Tax Related Service Fee | $ _____ | | Release | $ _____ |
| 901. | Interest for 10 days | | 1202. | City/County Tax/Stamps | |
| | at $ 29.980 per day | $ 299.76 | | Deed | $ _____ |
| 902. | Mortgage Insurance Premium | | | Mortgage | $ _____ |
| | | $ _____ | 1203. | State Tax/Stamps | |
| 903. | Hazard Insurance Premium (P.O.C.) | $ 250.00 | | Deed | $ _____ |
| 1001. | Hazard Insurance Reserves | | | Mortgage | $ _____ |
| | pymt. @ $ _____ /pymt. | $ _____ | 1301. | Survey | $ _____ |
| 1002. | Mortgage Insurance Reserves | | 1302. | Pest Inspection | $ _____ |
| | pymt. @ $ _____ /pymt. | $ _____ | 817 Flood Cert (life of loan) (P.O.C.) | $ 9.00 |
| 1003-1005. Tax and Assessment Reserves | | | | | |
| | pymt. @ $ _____ /pymt. | $ _____ | | | $ _____ |
| 1101. | Settlement or Closing Fee | $ _____ | | | $ _____ |
| 1102. | Abstract or Title Search | $ _____ | | | $ _____ |
| 1103. | Title Examination | $ _____ | | | $ _____ |
| 1104. | Title Insurance Binder | $ _____ | | | $ _____ |
| 1105. | Document Preparation | $ _____ | | | $ _____ |
| 1106. | Notary Fees | $ _____ | | | $ _____ |

* These items would appear on a blank line in the 800 section.

Items marked "poc" will be paid outside of closing.

| | | | TOTAL | | $ 3,774.76 |

**REQUIRED PROVIDER** - Lender requires the use of the following provider(s) of settlement services and the estimate is based on the charges of the designated provider.

| Item No. | Name, Address, Telephone Number, and Nature of Relationship (if any) |
|---|---|
| 803 | HAMMER APPRAISAL GROUP, 5124 LINCOLN <br> LISLE, IL 60058 Phone: (630) 515-1130 Relationship: 6 |
| 1102 | NETCO, 415 N. LaSalle <br> Chicago, IL 60610 Phone: (312) 644-8000 Relationship: 6 |
| 817 | FIDS, 520 East Main Street <br> Carnegie, PA 15106 Phone: (800) 841-0662 Relationship: 6 |
| | |
| | |

☐ The Lender will require a particular provider from a lender-controlled or lender-approved list for the following item(s): _____. The estimates above are based on the range of charges for the providers on the list. These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.

Codes for Nature of Relationship - 1. Lender controls provider; 2. Provider controls lender; 3. Lender and provider are under common control; 4. Provider has maintained a deposit account with lender in the past 12 months; 5. Provider has had an outstanding loan balance with lender in the past 12 months; 6. Lender has repeatedly used or required borrowers to use the provider in the past 12 months; 7. Provider is an officer of the lender; 8. Provider is a director of the lender; 9. Other. (specify above)

"S" designates those costs to be paid by Seller.

© 1992, 1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form RESPA/GFE-LAZ 9/16/97 _____ _____ (page 1 of 2)

**ADDITIONAL INFORMATION**

You have submitted a written application for a federally related mortgage loan to be secured by real estate located at the address listed below. These disclosures are not an approval of your application and do not constitute an agreement to lend you the money you request. We may still deny your application entirely or make a counteroffer.

ADDRESS ___180 Woodcreek  Downers Grove, IL  60516_____

LOAN AMOUNT $ ___$56,500.00___ INITIAL INTEREST RATE 19.100 % ☐ ARM

| ESTIMATED FUNDS TO CLOSE | | ESTIMATED PAYMENT ☒ monthly ☐ ___ | |
|---|---|---|---|
| Downpayment | $ _____ | Principal and Interest | $ ___902.36 |
| Closing Costs (from page 1) | $ _____ | Real Estate Taxes | $ _____ |
| Other ___ | $ _____ | Flood/Hazard Insurance | $ _____ |
| MINUS EARNEST DEPOSIT | $ _____ | Mortgage Insurance | $ _____ |
| MINUS CASH RECEIVED | $ _____ | Other _____ | $ _____ |
| TOTAL ESTIMATED FUNDS TO CLOSE | $ _____ | TOTAL ESTIMATED PAYMENT | $ ___902.36 |

**APPRAISAL** - You have the right to a copy of the appraisal report used in connection with your application for credit. If you wish a copy, please write to us at the mailing address we have provided on page 1. We must hear from you no later than 90 days after we notify you about the action taken on your credit application or you withdraw your application. In your letter, give us the following information: Loan or application Number (if known), date of application, name(s) of loan applicant(s), property address, and current mailing address.

☐ **SPECIAL INFORMATION BOOKLET** - You have received a copy of the Special Information Booklet, which is required if your application is to purchase residential real property secured by a first lien on the property.

BY SIGNING BELOW - APPLICANT(S) ACKNOWLEDGE RECEIPT OF THIS DISCLOSURE ON THE DATE OF DELIVERY INDICATED ON PAGE 1.

X _____     X _____
   Gavione Tammarello

Conseco Finance Corp. and corporations related by common ownership or affiliated by
corporate control may share information about you among themselves.  Under the
federal Fair Credit Reporting Act, you have a right to prevent this sharing of
information, except for the sharing of information relating solely to your
transaction with us or our experiences with you.  You may direct us not to share
information about you by sending a written request to Conseco Finance Corp., P.O.
Box 64135, St. Paul, MN  55164-0135.  The request must contain your name, address,
social security number (if issued), and a specific request to be excluded from
affiliate information sharing.

Commonwealth Land Title Insurance Company

# RESIDENTIAL TITLE SERVICES, INC.

1910 S. Highland Ave. Suite #202
Lombard, IL 60148
(630) 620-4400
(630) 620-9855

**File No.: RI113582B**

## COMMITMENT

### SCHEDULE A

1. EFFECTIVE DATE: 12/20/1999 AT 8:00 am

2. POLICY TO BE ISSUED:

   ALTA LOAN POLICY - 10/17/92                    AMOUNT: $52,500.00

   PROPOSED INSURED:

   CONSECO BANK, INC., ITS SUCCESSORS AND/OR ASSIGNS

3. THE ESTATE OR INTEREST IN THE LAND DESCRIBED OR REFERRED TO IN THIS COMMITMENT AND COVERED HEREIN IS FEE SIMPLE, AND TITLE THERETO IS AT THE EFFECTIVE DATE HEREOF VESTED IN:

   GAVIONE TAMMERELLO

4. THE LAND REFERRED TO IN THE COMMITMENT IS DESCRIBED AS FOLLOWS:

   LOT 32 IN MALLARD LANDING, BEING A SUBDIVISION OF PART OF SECTION 32, TOWNSHIP 38 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 3, 1996 AS DOCUMENT R96-054538, IN DUPAGE COUNTY, ILLINOIS.

RESIDENTIAL TITLE SERVICES, INC.

BY: _____
     STACEY MCMAHON

THIS COMMITMENT IS INVALID UNLESS THE INSURING PROVISIONS AND SCHEDULES A AND B ARE ATTACHED.

Case: 1:05-cv-07097 Document #: 96 Filed: 03/23/06 Page 143 of 173 PageID #:2449

## COMMITMENT

### SCHEDULE B - SECTIONS I AND II

FILE NO.: RI113582B

1. RIGHTS OR CLAIMS OF PARTIES IN POSSESSION NOT SHOWN BY THE PUBLIC RECORDS.

2. EASEMENTS OR CLAIMS OF EASEMENTS NOT SHOWN BY THE PUBLIC RECORDS.

3. DISCREPANCIES, CONFLICTS IN BOUNDARY LINES, SHORTAGES IN AREA, ENCROACHMENTS, AND ANY FACTS WHICH A CORRECT SURVEY AND INSPECTION OF THE PREMISES WOULD DISCLOSE AND WHICH ARE NOT SHOWN BY THE PUBLIC RECORDS.

4. ANY LIEN, OR RIGHT TO LIEN, FOR SERVICES, LABOR OR MATERIAL HERETOFORE OR HEREAFTER FURNISHED, IMPOSED BY LAW AND NOT SHOWN BY THE PUBLIC RECORDS.

5. DEFECTS, LIENS, ENCUMBRANCES, ADVERSE CLAIMS, OR OTHER MATTERS, IF ANY, CREATED, FIRST APPEARING IN THE PUBLIC RECORDS OR ATTACHING SUBSEQUENT TO THE EFFECTIVE DATE HEREOF BUT PRIOR TO THE DATE THE PROPOSED INSURED ACQUIRES FOR VALUE OF RECORD THE ESTATE OR INTEREST OR MORTGAGE THEREON COVERED BY THIS COMMITMENT.

6. GENERAL TAXES DUE AND PAYABLE IN THE YEAR(S) 1999 AND SUBSEQUENT YEARS, AND SPECIAL ASSESSMENTS THAT BECOME A LIEN AFTER THE DATE HEREOF.
   TAX ID #: 09-32-221-065-0000

   NOTE: THE 1998 TAXES ARE PAID IN FULL IN THE AMOUNT OF $4,718.28.

   NOTE: THE 1999 TAXES ARE NOT YET DUE/OR PAYABLE

7. MORTGAGE DATED: JANUARY 29, 1998
   RECORDED ON: FEBRUARY 11, 1998
   AS DOCUMENT NO.: R98-025064
   MORTGAGOR: VIRGIL MCINTOSH
   MORTGAGEE: NEW CENTURY MTG.
   AMOUNT: $40,900.00

8. MORTGAGE DATED: SEPTEMBER 29, 1999
   RECORDED ON: OCTOBER 7, 1999
   AS DOCUMENT NO.: R99-212750
   MORTGAGOR: GAVIONE TAMMERILLO
   MORTGAGEE: LONG BEACH MTG. CO.
   AMOUNT: $428,000.00

9. THE SPOUSE, IF ANY, OF THE PERSON(S) LISTED IN SCHEDULE "A", MUST JOIN IN THE EXECUTION OF THE SECURITY INSTRUMENT TO BE INSURED, IN ORDER TO RELEASE ANY MARITAL INTEREST

END OF SCHEDULE B

Case 1:05-cv-00466   Document 1   Filed 01/26/2005   Page 48 of 77

COMMITMENT

SCHEDULE B - SECTIONS I AND II

FILE NO.: RI113582B

**RESIDENTIAL TITLE SERVICES, INC.**
1910 S. Highland Ave. #202
Lombard, IL 60148
(630) 620-4400
(630) 620-9855

DATE TYPED: 01/04/2000
FILE NO.: RI113582B

CONSECO BANK
2115 BUTTERFIELD ROAD
OAKBROOK, IL, 60523

TO:

MORTGAGEE INSURANCE AMOUNT: $52,500.00
LOAN/APPLICATION NO.:

| | |
|---|---:|
| MORTGAGE TITLE INSURANCE PREMIUM | $175.00 |
| RECORDING COSTS | $19.00 |
| AGENCY CLOSING FEE | $150.00 |
| MISC. FEES/ENDORSEMENTS | $0.00 |
| COURIER FEES | $20.00 |
| TOTAL TITLE CHARGES | $364.00 |

PROPERTY ADDRESS: 180 WOODCREEK
DOWNERS GROVE, Illinois 60516

BUYER/BORROWER: TAMMERELLO

RESIDENTIAL TITLE SERVICES, INC. APPRECIATES YOUR BUSINESS.
PLEASE CALL WITH ANY QUESTIONS ABOUT THIS COMMITMENT

DEC-10-1999 FRI 11:00 am                    FAX NO.                    P. 02

Stewart Title Guaranty Company

## RESIDENTIAL TITLE SERVICES, INC.
1910 S. Highland Ave. Suite #202
Lombard, IL 60148
(630) 620-4400
(630) 620-9855

File No.: RH 13582

## COMMITMENT
### SCHEDULE A

1. EFFECTIVE DATE: 12/02/1999 AT 8:00 AM

2. POLICY TO BE ISSUED:

   ALTA LOAN POLICY - 10/17/92                    AMOUNT: $490,000.00

   PROPOSED INSURED:

   AMERIQUEST MORTGAGE COMPANY, SACREMENTO, ITS' SUCCESSORS AND/OR ASSIGNS

3. THE ESTATE OR INTEREST IN THE LAND DESCRIBED OR REFERRED TO IN THIS COMMITMENT AND COVERED HEREIN IS FEE SIMPLE, AND TITLE THERETO IS AT THE EFFECTIVE DATE HEREOF VESTED IN:

   GAVIONE TAMMERELLO

4. THE LAND REFERRED TO IN THE COMMITMENT IS DESCRIBED AS FOLLOWS:

   LOT 32 IN MALLARD LANDING, BEING A SUBDIVISION OF PART OF SECTION 32, TOWNSHIP 38 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED APRIL 3, 1996 AS DOCUMENT R96-054538, IN DUPAGE COUNTY, ILLINOIS.

RESIDENTIAL TITLE SERVICES, INC.

BY: _____
    ROBERT M. CARUSO

THIS COMMITMENT IS INVALID UNLESS THE INSURING PROVISIONS AND SCHEDULES A AND B ARE ATTACHED.

DEC-10-1999 FRI 11:01 A                    FAX NO.                    P. 03

FILE NO.: RI113582

## SCHEDULE B SECTIONS I AND II
## REQUIREMENTS

THE FOLLOWING ARE THE REQUIREMENTS TO BE COMPLIED WITH:

A. INSTRUMENT CREATING THE ESTATE OR INTEREST TO BE INSURED MUST BE EXECUTED AND FILED FOR RECORD, TO-WIT: MORTGAGE, EXECUTED BY THE MORTGAGORS, SECURING THE LOAN TO BE INSURED.

B. PAY ALL TAXES, CHARGES, ASSESSMENTS, LEVIED AND ASSESSED AGAINST THE SUBJECT PREMISES, WHICH ARE DUE AND PAYABLE.

C. SCHEDULE B OF THE POLICY TO BE ISSUED WILL CONTAIN EXCEPTIONS TO THE FOLLOWING MATTERS UNLESS THE SAME ARE DISPOSED OF TO THE SATISFACTION OF THE COMPANY:

1. RIGHTS OR CLAIMS OF PARTIES IN POSSESSION NOT SHOWN BY THE PUBLIC RECORDS.

2. EASEMENTS OR CLAIMS OF EASEMENTS NOT SHOWN BY THE PUBLIC RECORDS.

3. DISCREPANCIES, CONFLICTS IN BOUNDARY LINES, SHORTAGES IN AREA, ENCROACHMENTS, AND ANY FACTS WHICH A CORRECT SURVEY AND INSPECTION OF THE PREMISES WOULD DISCLOSE AND WHICH ARE NOT SHOWN BY THE PUBLIC RECORDS.

4. ANY LIEN, OR RIGHT TO LIEN, FOR SERVICES, LABOR OR MATERIAL HERETOFORE OR HEREAFTER FURNISHED, IMPOSED BY LAW AND NOT SHOWN BY THE PUBLIC RECORDS..

5. DEFECTS, LIENS, ENCUMBRANCES, ADVERSE CLAIMS, OR OTHER MATTERS, IF ANY, CREATED, FIRST APPEARING IN THE PUBLIC RECORDS OR ATTACHING SUBSEQUENT TO THE EFFECTIVE DATE HEREOF BUT PRIOR TO THE DATE THE PROPOSED INSURED ACQUIRES FOR VALUE OF RECORD THE ESTATE OR INTEREST OR MORTGAGE THEREON COVERED BY THIS COMMITMENT.

6. GENERAL TAXES DUE AND PAYABLE IN THE YEAR(S) 1999 AND SUBSEQUENT YEARS, AND SPECIAL ASSESSMENTS THAT BECOME A LIEN AFTER THE DATE HEREOF. TAX ID #: 09-32-221-065

NOTE: THE 1998 TAXES ARE PAID IN FULL IN THE AMOUNT OF $4,718.28.

NOTE: THE 1999 TAXES ARE NOT YET DUE/OR PAYABLE

(CONTINUED ON NEXT PAGE)

DEC-10-1999 FRI 11:01          FAX NO.                    P. 04

FILE NO.: RI113582

SCHEDULE B SECTIONS I AND II
(CONTINUED)

7. MORTGAGE DATED: JANUARY 29, 1998
   RECORDED ON: FEBRUARY 11, 1998
   AS DOCUMENT NO.: R98-025064
   MORTGAGOR: VIRGIL MCINTOSH
   MORTGAGEE: NEW CENTURY MTG.     *our title company is being released prior born*
   AMOUNT: $40,900.00

8. MORTGAGE DATED: SEPTEMBER 29, 1999
   RECORDED ON: OCTOBER 7, 1999
   AS DOCUMENT NO.: R99-212750
   MORTGAGOR: GAVIONE TAMMERELLO
   MORTGAGEE: LONG BEACH MTG. CO.
   AMOUNT: $428,000.00

9. THE SPOUSE, IF ANY, OF THE PERSON(S) LISTED IN SCHEDULE "A", MUST JOIN IN THE EXECUTION OF THE
   SECURITY INSTRUMENT TO BE INSURED, IN ORDER TO RELEASE ANY MARITAL INTEREST.

10. EASEMENT
    RECORDED ON: APRIL 3, 1996
    AS DOCUMENT NO.: R96-54358

11. COVENANTS, CONDITIONS, RESTRICTIONS, AND BUILDING SETBACK LINES CONTAINED IN INSTRUMENT
    FILED AS DOCUMENT NO. R96-54358

    NOTE: WE HAVE NOT MADE AN EXAMINATION OF THE COVENANTS, CONDITIONS, RESTRICTIONS, AND
    BUILDING SETBACK LINES AS TO REVERTER, FORFEITURE CLAUSES, OR ANY VIOLATIONS, IF ANY.

THE FOLLOWING TWO ITEMS ARE SHOWN FOR INFORMATIONAL PURPOSES ONLY AND NOT FOR THE PURPOSE
OF INSURING: TITLE TO THE ESTATE OR INTEREST SHOWN IN SCHEDULE "A" WAS ACQUIRED BY WARRANTY
DEED RECORDED OCTOBER 7, 1999 AS DOCUMENT NO. R99-212750 TO GAVIONE TAMMERELLO. WITHIN THREE
YEARS OF THE EFFECTIVE DATE OF THIS COMMITMENT THERE HAVE BEEN NO DEFAULT NOTICES FILED WITHIN
THE COUNTY RECORDERS OFFICE IN WHICH THE PROPERTY IN QUESTION IS LOCATED AS TO MORTGAGE(S) OF
RECORD. THE ABOVE WILL BE DELETED FROM THE POLICY TO BE ISSUED.

THE MORTGAGE POLICY WHEN ISSUED, WILL CONTAIN THE FOLLOWING ENDORSEMENT(S):

1. EPA ENDORSEMENT
2. ARM ENDORSEMENT
3. LOCATION NOTE ENDORSEMENT
4. COMPREHENSIVE ENDORSEMENT

END OF SCHEDULE B SECTION I AND II

FAX NO.                                    P. 05

## RESIDENTIAL TITLE SERVICES, INC.
### 1910 S. HIGHLAND AVE, #202
### LOMBARD, IL 60148

### LOCATION NOTE ENDORSEMENT

FILE NO.: RI113582

ATTACHED TO THE COMMITMENT Of Stewart Title Guaranty Company.

THIS COMPANY ASSURES THAT AT THE DATE OF THIS COMMITMENT THERE IS LOCATED ON SAID LAND:

A RESIDENTIAL STRUCTURE

KNOWN AS: 19W136 WOODCREEK PLACE, DOWNERS GROVE, ILLINOIS 60516

SIGNED THIS: 12/10/1999

COUNTERSIGNED BY:

ROBERT M. CARUSO

LENDER:    Conseco Bank, Inc.
BORROWER(S):    Gavione Tammerello

PROPERTY ADDRESS:    180 Woodcreek, Downers Grove, IL 60516
LOAN NO.:  6906003022

## ERROR AND OMISSIONS / COMPLIANCE AGREEMENT

STATE OF  Illinois
COUNTY OF  Du Page

The undersigned borrower(s) for and in consideration of the above-referenced Lender this date funding the closing of this loan agrees, if requested by Lender or Closing Agent for Lender, to fully cooperate and adjust for clerical errors, any or all loan closing documentation if deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Federal Housing Authority or the Department of Veterans Affairs, or any Municipal Bonding Authority.

The undersigned borrower(s) agree(s) to comply with all above noted requests by the above-referenced Lender within 30 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned borrower(s) do hereby so agree and covenant in order to assure that this loan documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest in and to said loan documentation, and to assure marketable title in the said borrower(s).

DATED effective this        27th        day of        December        . 1999

_____        /2.27 99        _____
Gavione Tammerello        (Borrower)        (Borrower)

_____        _____
(Borrower)        (Borrower)

Sworn to and subscribed before me this        27th day of December 1999

OFFICIAL SEAL
KATRINA MARTINEZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/02/03

_____
(Notary Public)

My Commission Expires:  07/02/03

-14 (9411)
FORM ID#: 067401        VMP MORTGAGE FORMS - (800)521-7291        11/94



Case 1:05-cv-00466     Document 1     Filed 01/26/2005     Page 55 of 77

Prepared by: _Marla M Marshall_     App#: _9912221740_
Date: _____12/27/99_____

# Section 32 Worksheet

**A. Rate Test**
1. Annual Percentage Rate of Loan          _16.542%_

2. Loan Term in months          _300_

3. Date application is received (even if incomplete)     _12/22/99_

4. Using chart determine cutoff rate based on term of loan
(Be sure to use rate as of the 15th of previous month)     _16.370%_

**If the APR entered in step 1 is higher than the rate entered in step 4, the loan is subject to Section 32 disclosure requirements.**

**B. Points and fees test**     801 Loan Origination Fee     $2,625.00
1. Prepaid finance charges:

2. Total points and fees          _$2,625.00**_
                   **Total Points and fees are based on final HUD figures.

3. Loan amount          _$52,500.00_

4. Total prepaids (step 2)          _$2,625.00_

5. Amount financed (step 3 minus step 4)     _$49,875.00_

6. Amount financed (step 5) times 8% - enter result     $3,990.00

**If the result entered in step 6 is greater than $441:**
   If the step 2 figure is higher than the step 6 figure, then **Section 32 applies.**
   If the step 2 figure is lower than the step 6 figure, then **Section 32 does not apply.**

**If the result entered in step 6 is less than $441:**
   If the step 2 figure is higher than $441, then **Section 32 applies.**
   If the step 2 figure is lower than $441, then **Section 32 does not apply.**

[x] This **IS** a Section 32 transaction. The Section 32 TIL Mortgage Disclosure form **MUST** be submitted to the borrower.

[ ] This is **NOT** a Section 32 transaction.

100006

1/25/99
For Office Use Only:
Sys Amt Fin: $49,875.00
Sys Fin Chrg: $159,831.00

## ILLINOIS
## APPLICATION DISCLOSURE & BORROWER INFORMATION DOCUMENT

This document is being provided to you pursuant to the Residential Mortgage License Act of 1987 and the Rules promulgated thereunder (38 Ill Admin Code 1050). The purpose of this document is to set forth those exhibits and materials you should receive or be receiving in connection with your residential mortgage loan application with Conseco Bank, Inc. ("the Bank"), through it's affiliate, Conseco Finance Servicing Corp., holder of a license number 4400 and regulated by the State of Illinois Office of the Commissioner of Banks and Real Estate under the aforesaid Act.

1.   THINGS THAT COULD SIGNIFICANTLY IMPACT THE PROCESSING OF YOUR LOAN

    a.   An appraisal value different from that estimated by the borrower;
    b.   Credit obligations which the borrower fails to report;
    c.   A change in the borrower's financial circumstances which would result in his or her ineligibility for the loan; or
    d.   A material change or discontinuation of a loan program by an investor or other entity, such as HUD, the VA, or a private investor.

2.   INFORMATION YOU WILL RECEIVE WITH YOUR APPLICATION

    a.   A good faith estimate of the costs that will be paid in connection with this loan;
    b.   A copy of the loan application, or equivalent form, that you will have signed and returned to the Bank in order to obtain the loan;
    c.   A copy of the Illinois Escrow Account Disclosure Agreement & the Illinois Mortgage Escrow Account Act (IMEAA) - unless you are not required to maintain a tax escrow account or you are applying for an FHA-insured or VA-guaranteed loan. In these cases the IMEAA will not apply to you; and
    d.   If you are applying for an Adjustable Rate Mortgage (ARM), you will receive a copy of "THE CONSUMERS HANDBOOK ON ADJUSTABLE RATE MORTGAGES;" this booklet will describe the special features of an ARM.

3.   UPON REQUEST YOU ARE ENTITLED TO RECEIVE THE FOLLOWING ITEMS

    a.   A sample of the form of note and mortgage that will be executed if the loan applied for is approved;
    b.   A sample copy of the commitment letter; and
    c.   A general description of underwriting standards that will be considered in evaluating the application.

I (we) hereby acknowledge receipt of this document and each of the items listed under number 2 above.

_____   12·27·99
Gavione Tammerello         Date                    Date

_____                          _____
Date                                               Date

100194

11/01/99

Case 1:05-cv-00466  Document 1  Filed 01/26/2005  Page 57 of 77

Application #: 9912221740
Loan #: 6906003022

## NOTICE OF RIGHT OF RESCISSION
### (FOR REFINANCING BY A DIFFERENT LENDER OR ORIGINATOR OF A NEW RESCINDABLE LOAN)

This Notice relates to a consumer credit transaction dated, ___December 27, 1999___ between the Creditor named below and

Gavione Tammerello

_____ (Consumer(s)).

**NOTICE OF RIGHT TO CANCEL**
Your Right to Cancel
You are entering into a transaction that will result in a mortgage/lien/security on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is _____
    ___December 27, 1999___ ; or
(2) the date you received your Truth-in-Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address at right. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

How to Cancel
If you decide to cancel this transaction, you may do so by notifying us in writing , at

Conseco Bank, Inc.
_____
(Name of Creditor)
565 Lakeview Parkway, Suite 150,
Vernon Hills, IL 60061
(Creditor's Business Address)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of ___December 30, 1999___
                                                    (date)
(or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address not later than that time.

**I WISH TO CANCEL**

_____     _____
Consumer's Signature                 Date

---

### RECEIPT

Each of the undersigned acknowledges receipt of two (2) copies of this Notice and warrants that the undersigned are all the persons who are a party to the credit transaction who have or may have an interest in the home at _____

___180 Woodcreek, Downers Grove, IL 60516___

Consumer(s):

Date ___December 27, 1999___              X _____
                                            Gavione Tammerello

                                          X _____

                                          X _____

                                          X _____

111104

IN #: 690600
SN: 180-58-...19

| Conseco Bank, Inc.<br>Cottonwood Corporate Center<br>2825 E Cottonwood Pkwy 230<br>Galt Lake City, UT 84121<br><br>LENDER'S NAME AND ADDRESS | Gavione Tammerello<br><br>180 Woodcreek<br>Downers Grove, IL 60516<br>BORROWER'S NAME AND ADDRESS | Loan Number 6906003022<br>Date December 27, 1999<br>Mat. Date January 15, 2025<br>Loan Amount $ 52,500.00 |

## TRUTH-IN-LENDING DISCLOSURES
### "I" MEANS THE BORROWER AND "YOU" MEANS THE LENDER

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid when I have made all scheduled payments. | I have the right to receive at this time an itemization of the Amount Financed |
|---|---|---|---|---|
| 16.542 % | $ 159,831.00 | $ 49,875.00 | $ 209,706.00 | ( X do do not want an itemization. |

**My Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 300 | $ 699.02 | Monthly beginning February 15, 2000 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |

**N/A Demand:** ☐ This loan has a demand feature. ☐ This loan is payable on demand and all disclosures are based on an assumed maturity of one year.

**N/A Variable Rate:** (check one below)
☐ My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
☐ The annual percentage rate may increase during the term of this transaction if _____

Any increase will take the form of _____
If the rate increases by ___ % in _____ , the _____
will increase to _____ . The rate may not increase more than once _____
and may not increase more than ___ % each _____ . The rate will not go above ___ %.

☒ **Security:** I am giving a security interest in:  ☒ (Brief description of other property) Filing/Recording Fees: $ See HUD
☐ the goods or property being purchased.
☐ collateral securing other loans with you may also secure this loan.        180 Woodcreek
☐ my deposit accounts and other rights I may have to the payment of money from you.        Downers Grove, IL 60516

☒ **Late Charge:** If a payment is late I will be charged 10% of payment.

**N/A Required Deposit:** The annual percentage rate does not take into account my required deposit.

**Prepayment:** If I pay off this loan early, I  ☐ may  ☒ will not  have to pay a penalty.
☒ may  ☐ will not  be entitled to a refund of part of the finance charge.

☒ **Assumption:** Someone buying my house  ☐ may, subject to conditions, be allowed to  ☒ cannot  assume the remainder of the mortgage on the original terms.

I can see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.        "e" means an estimate.

| CREDIT INSURANCE - Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless I sign and agree to pay the additional costs. | ITEMIZATION OF AMOUNT FINANCED |
|---|---|
| | Amount given to me directly  $ |
| | Amount paid on my (loan) account  $ |
| Type            Premium            Term | AMOUNTS PAID TO OTHERS ON MY BEHALF: |
| Credit Life | Insurance Companies  $ |
| Credit Disability | Public Officials  $ |
| Joint Credit Life | **Please refer to HUD 1** |
| I ☐ do ☒ do not want credit life insurance.<br>X ___ DOB | **Settlement Statement** $ |
| I ☐ do ☒ do not want credit disability insurance.<br>X ___ DOB | $ |
| I ☐ do ☒ do not want joint credit life insurance.<br>X ___ DOB | $ |
| X ___ DOB | $ |
| I ☐ do ☒ do not want ___ insurance.<br>X ___ | $ |

**PROPERTY INSURANCE -** I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you

I will pay $ N/A for N/A of coverage.

**FLOOD INSURANCE - Flood insurance** ☐ is ☒ is not required. I may obtain flood insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay

$ N/A for N/A of coverage.

(less) PREPAID FINANCE CHARGE(S)  $ ___

Amount Financed  $ ___

(Add all items financed and subtract prepaid finance charges.)

BY SIGNING BELOW - I ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE ON THE DATE INDICATED ABOVE.

X _____        X _____

Gavione Tammerello

©1982 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form TL-DRV-S 11/16/82        (page 1 of 1)

Case 1:05-cv-00466    Document 1    Filed 01/26/2005    Page 59 of 77

Application # 9912221740

GT-15-00-011 (4/99)

| BORROWER'S NAME AND ADDRESS | LENDER'S NAME AND ADDRESS |
|---|---|

Cavione Tammerello
180 Woodcreek
Downers Grove, IL 60516

Conseco Bank, Inc.
Cottonwood Corporate Center
2825 E Cottonwood Prky 230
Salt Lake City, UT 84121

Loan Number ___ 6906003022
Date _____ December 27, 1999
Maturity Date January 15, 2025
Loan Amount $ ___ 52,500.00
Renewal Of _____ N/A

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above,
jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender,
its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of _____
Fifty Two Thousand Five Hundred and No/100 _____ Dollars $ __52,500.00 _____.

**X Single Advance:** I will receive all of this principal sum on __December 31, 1999_____.
No additional advances are contemplated under this note.
**N/A Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note.
On _____ I will receive the amount of $ _____ and
future principal advances are contemplated.
Conditions: The conditions for future advances are _____
_____
__ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one
time: This feature is subject to all other conditions and expires on _____.
__ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other
conditions).
**INTEREST:** I agree to pay interest on the outstanding principal balance from ___December 31, 1999_____
_____ at the rate of
_____
_____ __15.650_ %
per year until __January 15, 2025_____.
**N/A Variable Rate:** This rate may then change as stated below.
__ **Index Rate:** The future rate will be _____ the following index rate: _____
_____
__ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
__ **Frequency and Timing:** The rate on this note may change as often as _____
A change in the interest rate will take effect _____
__ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ %
or less than _____%. The rate may not change more than _____% each _____
**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
__ The amount of each scheduled payment will change.        __ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a __30/360 day _____ basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid
in full, as stated below:
    **X** on the same fixed or variable rate basis in effect before maturity (as indicated above).
    **N/A** at a rate equal to _____
**X LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of _____
___10% of the payment._____
**X NSF FEE:** If any instrument which I submit to you is returned unpaid for any reason, I will pay you a fee of __$25.00__

**X ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ·  _X are_ · __ are not
included in the principal amount above: __See Addendum A_____.
**PAYMENTS:** I agree to pay this note as follows:
**N/A Interest:** I agree to pay accrued interest _____

**N/A Principal:** I agree to pay the principal _____

NOTICE: This is a mortgage subject to special
rules under the federal Truth in Lending Act.
Purchasers or assignees of this mortgage could
be liable for all claims and defenses with
respect to the mortgage that the borrower could
assert against the creditor.

UNIVERSAL NOTE
© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form GTH-UN-LAZ 5/5/99            111106            GT-15-00-011 (4/99) (page 1 of 4)

**X** Installments: I agree to pay this note in __300__ payments. The first payment will be in the amount of $ __699.02__ and will be due __February 15, 2000__. A payment of $__699.02__ will be due __on the 15th day of each month__ thereafter. The final payment of the entire unpaid balance of principal and interest will be due __January 15, 2025__

**X** SECURITY: This note is separately secured by (describe separate document by type and date): __Mortgage Deed dated December 27, 1999__

PURPOSE: The purpose of this loan is __Refinance__

DEFINITIONS: As used on page 1, 2 and 4, " X " means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

APPLICABLE LAW: The interest to be charged on this loan is governed by the laws of the state of __Utah__ _____. All other terms of this transaction are governed by the laws of the state of __Illinois__

If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

I agree to cooperate with you regarding any requests after closing to correct errors made concerning this contract or the transaction and to provide any and all additional documentation deemed necessary by you to complete this transaction. I agree that you may enforce this agreement by judicial process and are entitled to attorney's fees, costs and disbursements incident to such enforcement.

PAYMENTS: Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

PREPAYMENT: I may prepay this loan in whole or in part at any time. I will not pay a penalty upon prepayment unless otherwise stated in the next sentence. If I prepay in full within __N/A__ months of the date of this note, I will pay you a penalty of __N/A__

Partial payments will not excuse or reduce any later scheduled payment until this note is paid in full.

INTEREST: Interest accrues on the principal remaining unpaid from time to time, until paid in full. If this is a multiple advance loan, interest will accrue: __N/A__

The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

INDEX RATE: The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

ACCRUAL METHOD: The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

POST MATURITY RATE: For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note, or the date you accelerate payment on the note, whichever is earlier.

SINGLE ADVANCE LOANS: If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

MULTIPLE ADVANCE LOANS: If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

PAYMENTS BY LENDER: If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

SET-OFF: I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form GTH-UN-LAZ 5/5/99

GT-15-00-011 (4/99) *(page 2 of 4)*

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

REAL ESTATE OR RESIDENCE SECURITY: If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

DEFAULT: I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe it through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

REMEDIES: If I am in default on this note you have, but are not limited to, the following remedies:

(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).

(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.

(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.

(4) You may refuse to make advances to me or allow purchases on credit by me.

(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

COLLECTION COSTS AND ATTORNEY'S FEES: I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

WAIVER: I give up my rights to require you to do certain things. I will not require you to:

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest); or

(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

ARBITRATION: All disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract, or the validity of this arbitration clause or the entire contract, shall be resolved by binding arbitration by one arbitrator selected by you with my consent. For purposes of this paragraph, the "parties" shall mean I, the Borrower, and you, the Lender, together. This arbitration agreement is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this agreement. I agree that I shall not have the right to participate as a representative or a member of any class of claimants pertaining to any claim arising from or relating to this contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation, or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment, or to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guaranty or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us, will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time, without limit or notice, and for any term, without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION:** I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

__x__ I am giving you a security interest in property to secure this loan. I understand that I must keep this property insured against loss, expense or damage due to fire, theft, collision or other such risks in the amounts you require. If I fail to do so, you are authorized to purchase insurance to protect your interest in the property, and may add the cost to the amount I owe you.

**ADDITIONAL TERMS:**

Any prepaid finance charge up to 5% of the original principal amount of the loan is nonrefundable in the event of prepayment.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGES 1, 2, 3, AND 4). I have received a copy on today's date.**

| Signature _Cavione Tammerello_ | Date _12·27·55_ | Signature | Date |
|---|---|---|---|
| Signature | Date | Signature | Date |

Signature for Lender

By: _____     Its: _____

© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form GTH-UN-LAZ 5/8/99

GT-15-00-011 (4/99) *(page 4 of 4)*

App #: 9912221740

## ADDENDUM A
### Additional Finance Charges to Note

801 Loan Origination Fee                      $2,625.00

**TOTAL**                                      $2,625.00

Borrower Initials: _____

112360

# Uniform Residential Loan Application

APP # 9912221740

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ V.A. | ☐ Conventional | ☐ Other: | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | ☐ FHA | ☐ FmHA | | N/A | 69-0600302-2 |

| Amount | Interest Rate | No. of Months | Amortization Type | |
|---|---|---|---|---|
| $ 52,500.00 | 15.650 % | 300 | ☒ Fixed Rate ☐ GPM | ☐ Other (explain): ☐ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, ZIP)    No. of Units

180 Woodcreek, Downers Grove, IL 60516    1

Legal Description of Subject Property (attach description if necessary)    Year Built

LOT 32 IN MALLARD LANDING, BEING A SUBDIVISION OF PART OF SECTION 32, TOWNSHIP
38 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPLE MERIDIAN, ACCORDING TO THE PLAT    1997

Purpose of Loan: ☐ Purchase ☐ Construction ☐ Other (explain):    Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment
☒ Refinance ☐ Construction-Permanent

### Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

### Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made ☐ to be made |
|---|---|---|---|---|---|
| 1999 | $ 535,000.00 | $ 428,000.00 | Refi 2nd | Cost: $ | |

Title will be held in what Name(s)    Manner in which Title will be held: ☒ Fee Simple ☐ Leasehold (show expiration date)

, A SINGLE MAN

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| Borrower's Name | Co-Borrower's Name |
|---|---|
| Gaviene Tannerello | |

| Social Security Number | Home Phone (incl. area code) | Age | Yrs. Sch. | Social Security Number | Home Phone (incl. area code) | Age | Yrs. Sch. |
|---|---|---|---|---|---|---|---|
| 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 | (630) 895-4752 | 32 | /00 | | | | |

☐ Married ☒ Unmarried (include single, divorced, widowed) ☐ Separated   Dependents (not listed by Co-Borrower) no. 0   ages    ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated   Dependents (not listed by Borrower) no. ages

Present Address (street, city, state, ZIP) ☒ Own ☐ Rent /03 No. Yrs.

180 Woodcreek
Downers Grove, IL 60516

Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs.

If residing at present address for less than two years, complete the following:

Former Address (street, city, state, ZIP) ☐ Own ☒ Rent 3/00 No. Yrs.

6686 Double Eagle Dr.
Spring Valley, IL 61362

Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs.

Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs.

Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs.

## IV. EMPLOYMENT INFORMATION

| Name & Address of Employer | ☐ Self Employed | Yrs. on this job | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |
|---|---|---|---|---|---|
| Devon Technologies | | 3/00 | | | |
| 307 West 2nd Place | | Yrs. employed in this line of work/profession | | | Yrs. employed in this line of work/profession |
| Spring Valley, IL 61362 | | 7/00 | | | |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| Service Senior Vice President | (630) 434-0120 | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from – to) | Name & Address of Employer | ☐ Self Employed | Dates (from – to) |
|---|---|---|---|---|---|
| | | | | | |
| | | Monthly Income $ | | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| | | | |

| Name & Address of Employer | ☐ Self Employed | Dates (from – to) | Name & Address of Employer | ☐ Self Employed | Dates (from – to) |
|---|---|---|---|---|---|
| | | | | | |
| | | Monthly Income $ | | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| | | | |

Borrower's Signature   Date
X _____ 12·27·99

Co-Borrower's Signature   Date
X

Freddie Mac Form 65 10/92   Fannie Mae Form 1003 10/92

-21 (9210).02    Page 1 of 4    VMP MORTGAGE FORMS - (800)521-729]

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 12,916.67 | $ | $ 12,916.67 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | | 699.02 |
| Bonuses | | | | Other Financing (P&I) | | 3,850.00 |
| Commissions | | | | Hazard Insurance | | 24.25 |
| Dividends/Interest | | | | Real Estate Taxes | | 393.17 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 12,916.67 | $ | $ 12,916.67 | Total | | 4,966.44 |

*Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income** Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description | | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| Cash deposit toward purchase held by: $ | | | $ Pmt./Mos. | $ |
| List checking and savings accounts below | | Name and address of Company | | |
| Name and address of Bank, S&L, or Credit Union | | DP OF EDUC | | |
| Bridgeview Bannk Group | | | | |
| | | Acct. no. 11997040013729010 | .00/ | 2,262.00 |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Acct. no. $ .00 | | AT&T WS | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 2500000022035703 | .00/ | 6,058.00 |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Acct. no. $ | | GTE    FLORID DUPLICATE | | not included |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 36007458 | .00/ | 2,582.00 |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Acct. no. $ | | GTE    FLORID | * | To Be Paid Off |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 37489759 | .00/ | 2,582.00 |
| Acct. no. | | Name and address of Company | $ Pmt./Mos. | $ |
| Stocks & Bonds (Company name/number & description) $ | | PROVIDIAN | | |
| | | Acct. no. 4031171000407845 | 22.00/35 | 757.00 |
| Life insurance net cash value $ | | Name and address of Company | $ Pmt./Mos. | $ |
| Face amount $ | | FRD MOTOR CR | | |
| Subtotal Liquid Assets $ | | | | |
| Real estate owned (enter market value from schedule of real estate owned) | 570,000.00 | Acct. no. APA9007QC2 | 759.00/55 | 41,743.00 |
| Vested interest in retirement fund $ | | Name and address of Company | $ Pmt./Mos. | $ |
| Net worth of business(es) owned (attach financial statement) $ | | Residential Title Company 1910 S. Highland Ave Lombard, IL 60148 | * | To Be Paid Off |
| Automobiles owned (make and year) $ | | | | |
| | | Acct. no. | .00/ | 22,062.97 |
| Other Assets (itemize) $ | | Alimony/Child Support/Separate Maintenance Payments Owed to: A/CS/SM Total pymt. | $ | |
| | | Job-Related Expense (child care, union dues, etc.) JR Exp Combined Total pymt. | $ | |
| | | Total Monthly Payments | 781.00 | |
| Total Assets a. | 570,000.00 | Net Worth (a minus b) = $ 491,953.03 | Total Liabilities b. | $ 78,046.97 |

Borrower's Signature
X

Co-Borrower's Signature
X

Fannie Mae Form 1003 10/92

Page 2 of 4

Fannie Mae Form 1003 10/92

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 180 Woodcreek | | | | | | | |
| Downers Grove, IL 60516 | S/SFR | $ 570,000.00 | 428,000.00 | $ | $ 3,850.00 | $ | $ |
| Totals | | $ 570,000.00 | 428,000.00 | $ | $ 3,850.00 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

| a. Purchase price | $ | | | | Borrower | Co-Borrower |
|---|---|---|---|---|---|---|
| b. Alterations, improvements, repairs | | | | | Yes No | Yes No |
| c. Land (if acquired separately) | | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | | | |
| d. Refinance (incl. debts to be paid off) | 24,644.97 | | a. Are there any outstanding judgments against you? | | | |
| e. Estimated prepaid items | | | b. Have you been declared bankrupt within the past 7 years? | | | |
| f. Estimated closing costs | 3,125.00 | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | | |
| g. PMI, MIP, Funding Fee | | | d. Are you a party to a lawsuit? | | | |
| h. Discount (if Borrower will pay) | | | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | | |
| i. Total costs (add items a through h) | 27,769.97 | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | | |
| j. Subordinate financing | | | g. Are you obligated to pay alimony, child support, or separate maintenance? | | | |
| k. Borrower's closing costs paid by Seller | | | h. Is any part of the down payment borrowed? | | | |
| l. Other Credits (explain) | | | i. Are you a co-maker or endorser on a note? | | | |
| | | | j. Are you a U.S. citizen? | | | |
| | | | k. Are you a permanent resident alien? | | | |
| | | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 52,500.00 | | m. Have you had an ownership interest in a property in the last three years? | | | |
| n. PMI, MIP, Funding Fee financed | | | (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | | | |
| o. Loan amount (add m & n) | 52,500.00 | | (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 24,730.03 | | | | | |

The undersigned specifically acknowledge(s) and agree(s) that (1) the loan requested by this application will be secured by a first mortgage or deed of trust on the property described herein; (2) the property will not be used for any illegal or prohibited purpose or use; (3) all statements made in this application are made for the purpose of obtaining the loan indicated herein; (4) occupation of the property will be as indicated above; (5) verification or reverification of any information contained in the application may be made at any time by the Lender, its agents, successors and assigns, either directly or through a credit reporting agency, from any source named in this application, and the original and/or copy of this application will be retained by the Lender, even if the loan is not approved; (6) the Lender, its agents, successors and assigns will rely on the information contained in the application and I/we have a continuing obligation to amend and/or supplement the information provided in this application if any of the material facts which I/we have represented herein should change prior to closing; (7) in the event my/our payments on the loan indicated in this application become delinquent, the Lender, its agents, successors and assigns, may, in addition to all their other rights and remedies, report my/our name(s) and account information to a credit reporting agency; (8) ownership of the loan may be transferred to successor or assigns of the Lender without notice to me and/or the administration of the loan account may be transferred to an agent, successor or assigns of the Lender with prior notice to me; (9) the Lender, its agents, successors and assigns make no representations or warranties, express or implied, to the Borrower(s) regarding the property, the condition of the property, or the value of the property.

Certification: I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers, and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 12-??-99 | X | |

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER I do not wish to furnish this information | CO-BORROWER I do not wish to furnish this information |
|---|---|
| Race/National Origin: | Race/National Origin: |

| This application was taken by: | Interviewer's Name (print or type) | | Name and Address of Interviewer's Employer |
|---|---|---|---|
| ☐ face-to-face interview | Spiro P Georgelos | 12/22/1999 | Comseco Bank, Inc. |
| ☐ by mail | Interviewer's Signature | Date | 565 Lakeview Parkway |
| ☒ by telephone | | 12-27-99 | Suite 150 |
| | Interviewer's Phone Number (incl. area code) | | Vernon Hills, IL 60061 |
| | 800-259-9688 | | |

Freddie Mac Form 65 10/92                    Page 3 of 4                    Fannie Mae Form 1003 10/92

^—31 (9230).02

**Continuation Sheet/Residential Loan Application**

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark  B for Borrower or  C for Co-Borrower. | Borrower: Gavione Tasmerello | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: 69-0600302-2 |

**Total Printed Assets:**

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X | Date 12·27·55 | Co-Borrower's Signature: X | Date |

Freddie Mac Form 65 10/92                                                                 Fannie Mae Form 1003 10/92

21 (02/0)02                                    Page 4 of 4

Case 1:05-cv-00466    Document 1    Filed 01/26/2005    Page 68 of 77

| Settlement Statement | | U.S. Department of Housing | | SSN #: 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 | |
|---|---|---|---|---|---|
| Optional Form for Transactions without Sellers | 111101 | and Urban Development | | | OMB Approval No. 2502-0491 |

| Name & Address of Borrower: Gavione Tammerello<br>180 Woodcreek<br>Downers Grove, IL 60516 | Name & Address of Lender:<br>Conseco Bank, Inc.<br>Cottonwood Corporate Center<br>2825 E Cottonwood Prkwy 250<br>Salt Lake City, UT 84121 |
|---|---|
| Property Location: (if different from above)<br>180 Woodcreek<br>Downers Grove, IL 60516 | Settlement Agent: CONSECO FINANCE SERVICING CORP<br>Place of Settlement: 1501 WOODFIELD RD<br>Schaumburg IL 60173 |
| Loan Number: 6906003022 | Settlement Date: 12/27/99    Disb. Date: 12/31/99 |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800. Items Payable In Connection With Loan | | 1501. | |
| 801. Loan origination fee @ 5.000 % to Conseco Bank, Inc. | 2,625.00 | | |
| 802. Loan discount % to Conseco Bank, Inc. | | | |
| 803. Appraisal fee to WESTON AND ASSOCIATES (P.O.C.) to | $275.00 | 1502.<br>RESIDENTIAL TITLE<br>SERVICES | 22,062.97 |
| 804. Credit report to Equifax/Trans Union (P.O.C.) to | 5.34 | | |
| 805. Inspection fee to | | | |
| 806. Mortgage insurance application fee to | | | |
| 807. Mortgage broker fee to | | 1503.<br>GTE FLORIDA | 2,582.00 |
| 808. Application Fee to Conseco Bank, Inc. | | | |
| 809. Flood Certifite of loan) to con (P.O.C.) to | 9.00 | | |
| 810. Points to Conseco Bank, Inc. | | 1504. | |
| 811. Courier Fee | | | |
| 900. Items Required By Lender To Be Paid In Advance | | 1505. | |
| 901. Interest from 00/00 to 00/00 @ $ .000 /day | | | |
| 902. Mortgage insurance premium for pymt. periods to | | | |
| 903. Hazard insurance premium for 0.0 months to | | 1506. | |
| ROYAL & SUNALLIANCE (P.O.C.) to | 355.00 | | |
| 904. Flood Insurance Premium years to | | 1507. | |
| 905. Credit Ins. Premium to Conseco Agency, Inc. | | | |
| 1000. Reserves Deposited With Lender | | 1508. | |
| 1001. Hazard insurance pymt. periods @ $ per period | | | |
| 1002. Mortgage insurance pymt. periods @ $ per period | | | |
| 1003. City property taxes pymt. periods @ $ per period | | 1509. | |
| 1004. County property taxes pymt. periods @ $ per period | | | |
| 1005. Annual assessments pymt. periods @ $ per period | | | |
| 1006. pymt. periods @ $ per period | | 1510. | |
| 1007. pymt. periods @ $ per period | | | |
| 1008. | | | |
| 1100. Title Charges | | 1511. | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | 1512. | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | 1513. | |
| 1107. Attorney's fees to | | | |
| (includes above item numbers ) | | | |
| 1108. Title insurance to RESIDENTIAL TITLE SERVICES | | 1514. | |
| (includes above item numbers 1102-1106 ) | 500.00 | | |
| 1109. Lender's coverage $ 52,500.00 | | | |
| 1110. Owner's coverage $ | | 1515. | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| 1200. Government Recording And Transfer Charges | | 1520. TOTAL DISBURSED (enter on line 1603) | 24,644.97 |
| 1201. Recording fees: | | | |
| 1202. City/county tax/stamps: | | N. NET SETTLEMENT | |
| 1203. State tax/stamps: | | | |
| 1204. | | 1600. Loan Amount | $ 52,500.00 |
| 1205. | | | |
| 1300. Additional Settlement Charges | | 1601. PLUS Cash/Check from Borrower | $ |
| 1301. Survey to | | | |
| 1302. Pest inspection to | | 1602. MINUS Total Settlement Charges (line 1400) | $ 3,125.00 |
| 1303. Architectural/engineering services to | | | |
| 1304. Building permit to | | 1603. MINUS Total Disbursements to Others (line 1520) | $ 24,644.97 |
| 1305. Flood Cert(one final) to Flood Zone Determination service | | | |
| 1306. | | 1604. EQUALS Disbursement to Borrower | $ 24,730.03 |
| 1307. Courier Fee | | (after explanation of any applicable rescission period required by law) | |
| 1400. Total Settlement Charges (enter on line 1602) | 3,125.00 | | |

**INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT**

☐ The Initial Escrow Account Disclosure Statement, required by Section 10(c)(1) of the Real Estate Settlement Procedures Act (RESPA) whenever an escrow account is established for a federally related mortgage loan, is attached.

The undersigned hereby acknowledges receipt of a completed copy of this statement and any attachments.

Borrower _____ Date 12-27-99    Borrower _____ Date

Gavione Tammerello

Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form HUD-1A 11/16/94    (page 1 of 1)    Form HUD-1A (2/94) ref. RESPA

Exhibit B

Case: 1:05-cv-07097 Document #: 96 Filed: 03/23/06 Page 166 of 173 PageID #:2472

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GAVIONE TAMMERELLO | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | (Circuit Court of Cook County, |
| a foreign corporation, and GREEN TREE | ) | Illinois No. 04 L 14268) |
| SERVICING, LLC a foreign corporation | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF CAROL MELBER

I, Carol Melber, being first duly sworn upon my oath, and under penalties of perjury, depose and state as follows:

1.     I am an adult of sound mind and body and can testify to the matters set forth in this affidavit at trial or hearing, based upon personal knowledge or a review of business records.

2.     I am a duly authorized agent of Ameriquest Mortgage Company ("Ameriquest"), which is a defendant in this action.

3.     Ameriquest is a Delaware corporation, with its principal place of business in Orange, California.

4.     I have reviewed an imaged copy of Gavione Tammerello's loan file, which is kept in the course of Ameriquest's ordinary and regular business activity. An imaged copy of a loan file is an electronic copy of the original loan documents; Ameriquest, as part of its ordinary and regular business activity, scans the original documents of a loan transaction into its computer system, thus creating an imaged copy. Attached to this Affidavit as Exhibit 1 is a true and correct copy of the December 10, 1999, Truth in Lending Act Disclosure Statement, which I found contained in Gavione Tammerello's loan file. This Truth in Lending Disclosure Statement is required by the Federal Truth in Lending Act and is a record that is regularly part of an Ameriquest loan file.

[signature page follows]

Further Affiant Sayeth Not.

Subscribed and sworn to
Before me this ___ day of
January, 2005

Notary Public

JAN MAGNESS
Commission # 1342736
Notary Public - California
Orange County
My Comm. Expires Feb 22, 2006

Exhibit 1

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Preliminary ☐   Final ☒

Type of Loan:  ADJUSTABLE RATE
DATE:  12/10/99

LENDER: AMERIQUEST MORTGAGE COMPANY
450 E. DEVON AVENUE SUITE#100
ITASCA, IL  60143          630-773-3002

LOAN NO.:  14656078-579

BORROWERS:  GAVIONE TAMMERELLO

ADDRESS:  19 W. 136 WOODCREEK PLACE
CITY/STATE/ZIP:  DOWNERS GROVE, IL 60516

PROPERTY:  19 W 136 WOODCREEK PLACE  DOWNERS GROVE, IL  60516

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 12.326  % | $1,209,124.99 | $ 412,185.77 | $ 1,621,310.76 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 36 | 3,835.31 | Monthly beginning 02/01/00 | | | |
| 324 | 4,577.90 | Monthly beginning 02/01/03 | | | |

VARIABLE RATE FEATURE:

☒ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:  You are giving a security interest in the property located at  19 W 136 WOODCREEK PLACE
DOWNERS GROVE, IL  60516

ASSUMPTION:  Someone buying this property  ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:  You may obtain property insurance from anyone you want that is acceptable to

AMERIQUEST MORTGAGE COMPANY

LATE CHARGES:  If a payment is late, you will be charged  6.000  % of the overdue payment.

PREPAYMENT:  If you pay off your loan early, you
☐ may  ☒ will not  have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.
● means an estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____ 12-10-99
GAVIONE TAMMERELLO      BORROWER/DATE                    BORROWER/DATE

_____                      _____
BORROWER/DATE                    BORROWER/DATE

TIL1 (REV 12/99)

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GAVIONE TAMMERELLO | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | (Circuit Court of Cook County, |
| a foreign corporation, and GREEN TREE | ) | Illinois No. 04 L 14268) |
| SERVICING, a foreign corporation | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF WANDA LAMB-LINDOW

I, Wanda Lamb-Lindow, being first duly sworn upon my oath, and under penalties of

perjury, depose and state as follows:

1.    I am an adult of sound mind and body and can testify to the matters set forth in this

affidavit at trial or hearing, based upon personal knowledge.

2.    I am the Assistant Secretary and a duly authorized agent of Green Tree Servicing

LLC, which is a defendant in this action.

3.    Green Tree Servicing LLC is a Delaware limited liability company, with its principal

place of business in St. Paul, Minnesota.

Further Affiant Sayeth Not.

Subscribed and sworn to
Before me this 26th day of
January, 2005

Notary Public

CARI KATHRYN DAHLAGER
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES
JANUARY 31, 2005

Exhibit D

Conseco Bank, Inc.
Cottonwood Corporate Center
2825 E Cottonwood Pkwy 230
Salt Lake City, UT 84121

**LENDER'S NAME AND ADDRESS**

Gavione Tammerello

180 Woodcreek
Downers Grove, IL 60516

**BORROWER'S NAME AND ADDRESS**

LN #: 690600
SSN: 180-58-  19

Loan Number  6906003022
Date December 27, 1999
Mat.Date January 15, 2025
Loan Amount $ 52,500.00

**TRUTH-IN-LENDING DISCLOSURES**
**"I" MEANS THE BORROWER AND "YOU" MEANS THE LENDER**

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS The amount I will have paid when I have made all scheduled payments. | I have the right to receive at this time an itemization of the Amount Financed |
|---|---|---|---|---|
| 16.542 % | $ 159,831.00 | $ 49,875.00 | $ 209,706.00 | I X do □ do not want an itemization. |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 300 | $ 699.02 | Monthly beginning February 15, 2000 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |

N/A **Demand:** □ This loan has a demand feature. □ This loan is payable on demand and all disclosures are based on an assumed maturity of one year.

N/A **Variable Rate:** (check one below)
□ My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.
□ The annual percentage rate may increase during the term of this transaction if _____
Any increase will take the form of _____
If the rate increases by _____ % in _____ , the
will increase to _____ . The rate may not increase more than once _____
and may not increase more than _____ % each _____ . The rate will not go above _____ %.

X **Security:** I am giving a security interest in: X Brief description of other property _____  Filing/Recording Fees: $ See HUD
□ the goods or property being purchased.
□ collateral securing other loans with you may also secure this loan.
□ my deposit accounts and other rights I may have to the payment of money from you.

180 Woodcreek
Downers Grove, IL 60516

X **Late Charge:** If a payment is late I will be charged 1st of payment _____

N/A **Required Deposit:** The annual percentage rate does not take into account my required deposit.

**Prepayment:** If I pay off this loan early, I □ may X will not have to pay a penalty.
□ may □ will not be entitled to a refund of part of the finance charge.

X **Assumption:** Someone buying my house □ may, subject to conditions, be allowed to X cannot assume the remainder of the mortgage on the original terms.

I can see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.        "e" means an estimate.

**CREDIT INSURANCE** - Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless I sign and agree to pay the additional costs.

| Type | Premium | Term |
|---|---|---|
| Credit Life | | |
| Credit Disability | | |
| Joint Credit Life | | |

I □ do X do not want credit life insurance.
X _____ DOB _____ Cost
I □ do X do not want credit disability insurance.
X _____ DOB _____ Cost
I □ do X do not want joint credit life insurance.
_____ Cost
X _____ DOB _____
I □ do X do not want _____ insurance.
X _____

**PROPERTY INSURANCE** - I may obtain property insurance from anyone I want that is acceptable to you. If I get the insurance from or through you
I will pay $ N/A for N/A of coverage.
**FLOOD INSURANCE** - Flood insurance □ is X is not required. I may obtain flood insurance from anyone I want that is acceptable to you. If I get the insurance from or through you I will pay
$ N/A for N/A of coverage.

**ITEMIZATION OF AMOUNT FINANCED**

Amount given to me directly  $ _____
Amount paid on my (loan) account  $ _____

**AMOUNTS PAID TO OTHERS ON MY BEHALF:**
Insurance Companies  $ _____
Public Officials  $ _____

**Please refer to HUD 1**
**Settlement Statement**  $ _____
$ _____
$ _____
$ _____
$ _____
$ _____
$ _____
$ _____
$ _____
$ _____

(less) PREPAID FINANCE CHARGE(S)  $ _____

Amount Financed  $ _____

(Add all items financed and subtract prepaid finance charges.)

BY SIGNING BELOW - I ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE ON THE DATE INDICATED ABOVE.

_____ X _____ X _____
Gavione Tammerello
982 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form TL-DRV-6  11/18/92        (page 1 of 1)