IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> (Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO: <br><br> JOSEPH A. MIKOWSKI and PATRICIA J. MIKOWSKI, <br><br> Plaintiffs, <br><br> v. <br><br> AMERIQUEST MORTGAGE COMPANY, AMERIQUEST MORTGAGE SECURITIES, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, and DOES 1-5, <br><br> Defendants. | 2:05-CV-411 (N.D. Ind., Hammond Div.) |

## DECLARATION OF JONATHAN LEDSKY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

**I, Jonathan Ledsky, declare as follows:**

1. I am an attorney licensed to practice in the State of Illinois and am a shareholder of the firm Varga, Berger, Ledsky, Hayes & Casey, A Professional Corporation ("Varga Berger"). I make this Declaration in support of Ameriquest Mortgage Company and Ameriquest Mortgage Securities, Inc.'s (together, "Ameriquest") Opposition to plaintiff Joseph A. Mikowski and Patricia J. Mikowski's (together "Plaintiffs") Motion for Leave to Amend. Except where otherwise indicated, the following facts are true and of my own knowledge and, if called upon to do so, I could and would testify to their truth.

2. I am the attorney who attended and participated in the deposition of Ms.

Ericka Chitwood of Indiana Title Network Company on April 3, 2006, on Defendants' behalf.

3. At the deposition, Ms. Chitwood was shown numerous exhibits. However, the Court Reporter did not attach these exhibits to the transcript because counsel for Plaintiffs did not want the exhibits attached to the transcript. [Plaintiffs' Motion, Appendix B, pages 40:21-41:3.]

4. Deposition Exhibit A was shown to Ms. Chitwood during the deposition. Ms. Chitwood identified Deposition Exhibit A as Plaintiffs' loan package. This loan package is bates labeled pages A0001 through A0158. [Plaintiffs' Motion, Appendix B, page 15:15-21.]

5. During the deposition, I showed Ms. Chitwood pages A0126 through A0130, which she confirmed as being the five page "Closing Instructions" she signed and dated. [Plaintiffs' Motion, Appendix B, page 36:5-18.] Attached to this Declaration as Exhibit 1 is a true and correct copy of the Closing Instructions I showed to Ms. Chitwood at her April 3, 2006 deposition. These pages are part of Deposition Exhibit A and are bates labeled pages A0126 through A0130.

6. Additionally, I showed Ms. Chitwood page A0134, which she confirmed as being the "Closing Agent Affidavit" she signed and dated. [Plaintiffs' Motion, Appendix B, pages 34:21-35:11.] Attached to this Declaration as Exhibit 2 is a true and correct copy of the Closing Agent Affidavit I showed Ms. Chitwood at her April 3, 2006 deposition. This page is part of Deposition Exhibit A and is bates labeled page A0134.

I declare under penalty of perjury under all applicable laws that the foregoing is true and correct and that this Declaration was executed at Chicago, Illinois on May 9, 2006.

/s/ Jonathan N. Ledsky

# Exhibit 1

Borrower(s): JOSEPH A MIKOWSKI      Loan Number: 0110926862 - 5570

Property Address: 1206 RUMELY, LA PORTE, IN 46350

Lender: Ameriquest Mortgage Company

## CLOSING INSTRUCTIONS

These Closing Instructions are for closing the loan referenced in the cover letter enclosed herein. Do not proceed unless you accept full responsibility for following these instructions. All Closing Instructions must be strictly followed. Do Not Close the Loan Otherwise. Have any questions answered prior to commencement of closing. Any modifications must be in writing and signed by the Lender. The Branch or Borrower is not authorized to approve any modifications to or deviations from these written closing instructions.

If any ambiguities, obvious errors or questions arise in connection with a loan or any matter contained in the Closing Instructions, the Branch Manager must be contacted prior to closing for further instructions or to clarify or resolve matters. The Settlement Agent will be made liable for losses incurred by the Lender, as a result of the Settlement Agent closing a loan with knowledge that errors were contained in any documents or instructions. If the Settlement Agent determines that a loan cannot be closed in accordance with these Closing Instructions, (including the policy and other requirements), do not proceed to closing without further instructions from the Lender.

1. INSURED CLOSING. An Insured Closing Protection Letter in the form authorized by the American Land Title Association ("ALTA") must be issued in connection with the closing and settlement of any loan closing through a title insurance agent or a title insurance company authorized to do business in the State of IN. All title insurance agents should confirm that such a letter is on file with the Lender before closing the loan. The title policy must be underwritten by the insurer providing the Insured Closing Protection Letter.

2. CLOSE AS INSTRUCTED AND REQUIRED. As Settlement Agent, you must close the transaction in strict accordance with these Closing Instructions. If this transaction involves a sale, all applicable terms and conditions of the sales contract furnished to Lender must be followed. Immediately advise the Lender if any of the sales contract provisions conflict with these Closing Instructions. Immediately advise the Lender of any recent or impending change in ownership. Prior to closing, the Lender must grant approval. You must have written authorization from the Vice President of Loan Operations and/or its Directors of the Lender approving any deviation from these Closing Instructions. No credits, debits, secondary financing or third party contributions are allowed unless specifically authorized in the Closing Instructions. All persons signing both the Note and the Mortgage must be vested in title. All persons signing the Mortgage must be vested in title or the spouse of someone vested in title as signing as a borrower under the Note.

3. TITLE COMMITMENT AND TITLE POLICY. The Title Policy must be written through the same company which issued the Commitment for Title Insurance ("Title Commitment") previously furnished to the Lender. Lender's loan documents have been prepared based upon the Title Commitment. If the Title Commitment does not comply with the following requirements, Settlement Agent must either (i) amend the Title Commitment, (ii) provide a new Title Commitment, or (iii) agree to provide Lender a subsequent Title Policy in accordance with the following requirements:

   3.1 The date of the Title Commitment may not be more than ninety (90) days before the settlement date. If the Title Commitment has expired, do not close the loan, and contact the Lender immediately. The Title Commitment must have an authorized counter signature.

   3.2 The Title Policy provided to the Lender must be an ALTA Loan Policy (October 17, 1992 version) and insure a First Mortgage lien as of the date of recording (Gap Protection must be provided). The "Name of Insured" in the Title Policy must read exactly: "Ameriquest Mortgage Company, its Successors or Assigns". Short Form policies are not acceptable.

7777777707070700076765242717744400767343
5830755511071131783847105400774243737740
12230774261737650100107263755703546601070000010925862030743070

885-1UNV (02/04)

Loan Number: 0110926662 - 5570

3.3 The minimum amount of coverage required is the amount of the loan, as indicated in the Note.

3.4 "Title to estate or interest in the land is insured as vested in" in the Title Policy must exactly match the Borrower/Owner/Spouses' names(s) indicated on the loan documents.

3.5 The Land referred to by the Title Policy must conform to the loan documentation and vice-a-versa. If a manufactured housing unit has been affixed to the land secured by the Lender's loan, attach Endorsement Form ALTA 7 and collect the premium and all expenses from the Borrower. Lender does not lend on manufactured houses that have not been converted to real property.

3.6 The "estate or interest in land is insured as encumbered by the insured mortgage" stated in the Title Policy must read FEE SIMPLE unless specifically authorized otherwise. The Title Policy must insure against any loss or damage sustained or incurred by reason of a lack of right of access to and from the land. Any easements providing access to the property must be insured as part of the estate, and not shown as an exception on Schedule "B".

3.7 Schedule "B" must not include an exception for the lack of a survey and must provide affirmative survey coverage.

3.8 The portion of Schedule "B" which refers to "subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership" must be deleted. The following language: "Company insures that standby fees, taxes, and assessments by any taxing authority for the year _____ are not yet due and payable". Must be added to the standard tax exemption. The borrower should pay the expenses associated with such coverage.

3.9 Remove any "visible and apparent" or similar exception to coverage. Remove any "rights to parties in possession," "tenants in possession," or similar exceptions to coverage unless such exception has been specifically authorized. The cost of any inspections must be paid by the Borrower.

3.10 All items mentioned on the Title Commitment as a condition to the issuance of the Title Policy must be disposed of prior to requesting funding authorization. By disbursing the loan funds, Settlement Agent certifies to Lender that all matters disclosed on the Title Commitment will be paid or disposed of to the satisfaction of the title insurer prior to the date of the issuance of the Title Policy, and that no exceptions for any item on the Title Commitment will be contained in the Title Policy.

3.11 If this is an "adjustable mortgage loan", provide at Borrower's Expense an Adjustable Mortgage Loan Endorsement, Form ALTA 6. Provide an Environmental Protection Endorsement, Form ALTA 8.1 for all loans at the Borrower's expense.

3.12 If there are any liens subordinate to the insured lien, or if the Title Commitment references any restrictions containing homeowners association dues, maintenance charges, and/or assessment language, Lender requires that such lien(s) be itemized and shown in Schedule "B" and a statement be made in Schedule "B" that the "Company insures the insured against Loss, if any, sustained by the insured under the terms of the Policy, if this item is not subordinate to the lien of the insured mortgage." The Settlement Agent must obtain a letter signed by the representative of the homeowners association or appropriate entity, indicating that there are no past due homeowners association fees, maintenance charges or assessments. If the maintenance charge or assessment is not subordinated to the Lender's lien, do not close the loan without Lender's written authorization. If Lender authorizes the closing, obtain a letter from the appropriate entity agreeing to provide Lender or its assigns with notice of any default or unpaid dues, charges, or fees. In addition, if the Lender's loan is a second lien loan, as identified in Section 3.2 above, the holder of any superior encumbrance must agree in writing to provide the Lender or its assigns with sixty (60) days advance notice (at Lender's address asset forth in the deed of trust or a different address if so provided) of any pending sale, foreclosure action, or litigation regarding the property.

77777777070707000767852427177744400767343
5530755511070120672657114400774243737740
122307742417375501001072637547035466007
0000011092888203074307020

895-2UNV (02/04)

Loan Number: 0110926862 - 5570

3.13 Unless specifically approved, the property may not be located on a private road, and there may not be any limitations or conditions affecting access to a public road.

3.14 Without Lender approval, no exceptions may be taken for adverse possession claims, bankruptcies, fraudulent transfers, lis pendens claims, unpaid liens or assessments. No exception may be taken for any titles or rights asserted by anyone to tidelands; or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans; or to any land extending from the line of mean low tide to the line of vegetation; or to lands beyond the line of the harbor or bulkhead lines as established or changed by any government; or to filled-in lands; or artificial island; or to riparian rights; or the rights or interests of the State of IN or the public generally in the area extending from the line of man low tide to the line of vegetation or their right of access thereto; or right of easement along and across the same without without obtaining Lender's written consent to prior closing the transaction. Any inspection fees required for such coverage must be paid by the Borrower.

3.15 A Title Policy is not to be issued including the cost of immediately contemplated improvements, and no exception may be made for any and all liens arising by reason of unpaid bills or claims for work performed or materials furnished in connection with improvements to be placed on the property or for "ending disbursements." Lender does not write construction loans.

3.16 If a mineral lease term has expired, no exception may be made for mineral leases. If the lease term is still in effect and it provides entry rights on to the property, specific approval to close must be obtained and there must be a designated drilling site or an Affidavit of Non-Production must be signed by both the seller/owner of the property and the lessee.

3.17 If an exception is being taken for a joint drive-way, party or common wall agreement filed of record, the Agreement must be approved by the Lender prior to closing.

3.18 The effective date of the Title Policy must be the date of the recording of the security instrument(s). GAP Protection must be provided. If any documents must be re-recorded, the Settlement Agent agrees to provide an endorsement showing both the original and re-recorded documents.

**NO REVERSIONARY INTEREST RIGHTS OF FIRST REFUSAL OR RIGHTS OF RE-ENTRY THAT COULD RESULT IN A FORFEITURE OF TITLE OR ANY PART OF TITLE TO THE PROPERTY WHICH IS NOT SUBORDINATED TO LENDER'S INSURED LIEN IS ALLOWED.**

3.22 Delete the Sections of the Policy that are Conditions and Stipulations relating to arbitration.

3.23 Title Policy must be received by Lender no later than 60 days after the date of closing.

4. **TERMITE CERTIFICATION (PURCHASE TRANSACTIONS ONLY).** A wood destroying insect report authorized in the jurisdiction in which the property is located, signed by the inspector, and showing no active infestation, or proof of treatment for a property which does show active infestation must be furnished prior to closing.

   4.1 All structures on the property, including any detached garage, must be inspected. The report must not be more than ninety (90) days old and contain a certification that the property is "free from evidence of active infestation, infection or adverse conditions."

7777777770707070007676524271774440767343
5530755511071131872546115410774243737740
12230774241737580100107372654713655660107

895-SUNV (Rev. 02/04)

Loan Number: 0110926862 - 5570

## 5. EXECUTION OF DOCUMENTATION.

5.1 Settlement Agent must verify the identity of all parties by requiring picture identification.

5.2 Lender does not allow use of Power of Attorney.

5.3 All Truth in Lending Disclosures must be signed prior to the Note, Mortgage or other legal documents.

5.4 All documents and riders must be signed exactly as the name typed. Do not make any amendments, erasures, strikeouts, or additions to the documents without Lender's approval. If possible, a deletion should be made by marking one line through the language to be deleted. If approved, said amendments, additions and/or strikeouts must be initialed by all parties required to sign that document. Pages of the Note and Mortgage, which do not contain an original signature, must be initialed by the Borrowers. Obtain the initials of all appropriate parties on all other documents indicating the place for party initialing.

5.5 A notice of the consumer's right of rescission is required on all owner-occupied loans which are not for the initial purchase of the principal dwelling. The Settlement Agent is hereby directed by the Lender to act as its agent in completing or amending the dates in the Notice of Right to Cancel. The "date of transaction" is the date the Mortgage is signed by all Borrowers/Owners/Spouses entitled to rescind. The date following "Not later than midnight of" must be three (3) business days from the date of the transaction. For the purposes of calculating the third business day, count the first day after the date of closing and exclude Sundays and/or federal holidays and the date of funding. All blanks must be completed or amended prior to signature. <u>Settlement Agent must contact the Lender to confirm that the appropriate dates are used.</u> You must provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement. The right of rescission may not be waived by any party. If any party indicates a desire to cancel the transaction or refuses to execute the "Receipt of Notice" section, contact the Lender immediately for further instructions.

5.6 Record the Warranty Deed and any other documents required to vest title in the Borrower. Lender requires a "Deed with Warranties". Pay any recording fees and title expenses. Record Mortgage. Pay off, with loan proceeds if necessary, and obtain the release, discharge or reconveyance of all items shown on the Title Commitment.

5.7 Documents to be recorded in this transaction must be presented to the county recorder's office in the following order:

a. Warranty Deed (if a change in vesting is occurring)
b. Mortgage (with any Riders)
c. Supporting documents required to be filed/recorded (if any).

Settlement Agent must properly file the documents requested by Lender to be recorded, and obtain from Borrower and/or Seller the required filing fees. Any Warranty Deed used in this transaction must be returned to the Borrower with a copy to the Lender. The Mortgage must be returned after recording to the Lender.

77777777070707000767652427177444907673435530755511071131663687105400774243737740
12230774241737690100107382644471254771107
0000110926862030743070

895-4UNV (02/04)

Loan Number: 0110926882 - 5570

6. **SETTLEMENT CHARGES AND LOAN DISBURSEMENTS.** You must use the attached itemization of settlement charges and disbursements to prepare the Setitlement Statement. No funds you receive on behalf of the borrower(s) may be disbursed for any purpose or to any payee other than as directed in these Instructions and disclosed on the Settlement Statement (HUD-1 or HUD-1A) Issued to borrower. Ameriquest Mortgage Company Branch Associates and borrowers have no authority to change the amounts or payees of settlement charges and disbursements set forth in the attached itemization, and disclosed on the settlement statement.

7. **COPIES.** Unless more than one (1) copy is required by these Closing Instructions, each Borrower must be provided with one (1) copy of all documents required by the Lender or Settlement Agent to be signed by Borrower. Prior to funding approval, Settlement Agent must provide a certified copy of each item that will be shown as an exception on the final title policy and deliver same to Lender.

**FUNDING AND DISBURSEMENT.** The complete loan package is due in Lender's office the day after loan signing. After satisfactory review, the loan will be funded.

Once the loan is funded and funds are submitted for disbursement, a Final Settlement Statement will be prepared and submitted to the Lender.

LENDER RESERVES THE RIGHT TO CANCEL OR MODIFY THESE INSTRUCTIONS AT ANY TIME UPON NOTICE TO SETTLEMENT AGENT.

IF YOU ARE UNABLE TO CLOSE AND FUND THE LOAN AS SPECIFIED, CONTACT THE LENDER IMMEDIATELY AT 714-634-3494.

TITLE COMPANY AGREES TO FULLY COOPERATE AND ASSIST LENDER DURING ANY STATE REGULATORY AUDITS.

Settlement Agent:
By _[signature]_

It's _____

Date: 3-2-05

7777777707070700076765242717744400767343
55307556110710319726460165510774243737740
1223077424173756010010727374461364771107
000001108285820307430708

895-5UNV (Rev. 07/04)

A 0130

**Exhibit 2**

## Ameriquest Mortgage Company

### CLOSING AGENT AFFIDAVIT

Closing Agent Name: INDIANA TITLE NETWORK COMPANY

Closing Agent Address: 325 N. MAIN STREET CROWN POINT, IN 46307

Date of Closing: 03/02/2005

Loan Number: 0110926862 - 5570

Borrower Name(s): JOSEPH A MIKOWSKI

Property Address: 1206 RUMELY ST
LAPORTE, IN 46350

I, _Ericka Chitwood_ certify the loan was closed on _3-2-05_

And I hereby certify the following:

All loan documents are properly signed, dated and where applicable notarized.

The rescission notice is properly filled in. (The start date is the date of signing and the end date is three business days later. Business days not including Sundays or legal holidays or days prohibited by state law)

Copies of all documents were given to the borrower(s).

All Borrower questions have either been answered or referred to the appropriate Ameriquest Mortgage Company branch.

_____
Closing Agent Signature

7777777770707070007676524271774440077352
543174440107113176364710540077424373740
1223075604373776012230727274643177440007
0000011092685204000050101

Closing Agent Letter (5/04)

A 0134