## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO:<br><br>JOSEPH A. MIKOWSKI and PATRICIA J. MIKOWSKI,<br><br>       Plaintiffs,<br><br>  v.<br><br>AMERIQUEST MORTGAGE COMPANY, AMERIQUEST MORTGAGE SECURITIES, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, and DOES 1-5,<br><br>       Defendants. | 2:05-CV-411 (N.D. Ind., Hammond Div.) |

## DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

Defendants Ameriquest Mortgage Company and Ameriquest Mortgage Securities, Inc. (together, "Defendants"), by and through their counsel of record, hereby respectfully request that the Court take judicial notice of the following pleadings and other court records pursuant to Rule 201 of the Federal Rules of Evidence:

Exhibit No.

1.      Organization and Management Plan filed on February 7, 2006.

2.      Transcript from Hearing on February 7, 2006 (Case No. 05-cv-07097), United States District Court for the Northern District of Illinois, the Honorable Marvin E. Aspen presiding.

3.      Conditional Transfer Order filed on March 15, 2006.

4.      Transcript from Hearing on April 4, 2006 (Case No. 05-cv-07097), United States
        District Court for the Northern District of Illinois, the Honorable Marvin E. Aspen
        presiding.

DATED: May 9, 2006                          Respectfully submitted,


                                            By: /s/  Bernard E. LeSage

                                            *Attorneys for Defendants Ameriquest Mortgage
                                            Company, Ameriquest Capital Corporation, Town
                                            and Country Credit Corporation, and Ameriquest
                                            Mortgage Securities, Inc.*

                                            Bernard E. LeSage (California Bar No. 61870)
                                            Sarah K. Andrus (California Bar No. 174323)
                                            BUCHALTER NEMER
                                            A Professional Corporation
                                            1000 Wilshire Boulevard, Suite 1500
                                            Los Angeles, California 90017-2457
                                            Telephone: (213) 891-0700
                                            Facsimile: (213) 896-0400

**Exhibit 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

FEB 7 2006

UNITED STATES DISTRICT COURT

|  |  |  |
|---|---|---|
| In Re: Ameriquest Mortgage Company | ) ) ) ) ) ) ) | Master File<br>No. 05 C 7097<br><br>MDL #1715 |

## ORGANIZATION AND MANAGEMENT PLAN

The plaintiffs' attorneys shall meet and prepare a joint and agreed organization and management plan for the plaintiffs' side of this action, including but not limited to the following subjects:

    (1)    Selection and duties of lead counsel

    (2)    Division of work among lead counsel and other plaintiffs' counsel;

    (3)    Selection and duties of liaison counsel;

    (4)    Discovery scheduling;

    (5)    Consolidation and scheduling motion practice;

    (6)    Settlement and/or mediation process;

    (7)    Procedures for filing papers and service of parties;

    (8)    Listing what other matters regarding this case is still before the MDL panel;

    (9)    Listing of other class actions or "tag-along" cases that they anticipate will be joining this action;

    (10)   Analysis of the impact of the Ameriquest-Attorney General Settlement on this case.

The joint filing shall be on _____ 6/13 _____, 200_6_. In the event agreement

cannot be reached on a particular subject, individual filings as to that subject shall be on

____ 6/27 ____, 200__. All filings shall be served on Defendant. Defendant shall file and

serve upon the plaintiffs its proposed organization plan addressing all relevant subjects, other

than nos. (1), (2) and (3) on _____ 6/13 _____, 200_6_.

**Exhibit 2**

```
 1            IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3  IN RE:  AMERIQUEST MORTGAGE COMPANY. )  Master File
                                         )  No. 05 C 7097
 4          Plaintiff,                   )
                                         )  MDL No. 1715
 5                                       )
                                         )  Chicago, Illinois
 6                                       )  February 7, 2006
                                         )  10:30a.m. and 2:00 p.m.
 7

 8                 TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE MARVIN E. ASPEN
 9
    APPEARANCES:
10
    On behalf of the Plaintiffs:    BUCHALTER NEMER
11                                  1000 Wilshire Boulevard
                                    Suite 1500
12                                  Los Angeles, CA 90017-2457
                                    T: (213) 891-0700
13                                  F: (213) 630-7515
                                    BY:  MR. BERNARD E. LE SAGE
14                                       MS. SARAH K. ANDRUS;

15
                                    KIRKPATRICK & LOCKHART NICHOLSON
16                                   GRAHAM, LLP
                                    75 State Street
17                                  Boston, MA 02109-1808
                                    T:  (617) 261-3100
18                                  F:  (617) 261-3175
                                    BY:  MR. R. BRUCE ALLENSWORTH;
19
                                    VARGA BERGER LEDSKY HAYES & CASEY
20                                  224 S. Michigan Avenue
                                    Suite 350
21                                  Chicago, IL 60604-2507
                                    T:  (312( 341-9400
22                                  F:  (312) 341-2900
                                    BY MR. CRAIG A. VARGA;
23

24

25
```

```
 1  APPEARANCES: (Continued)

 2  on behalf of the Knox
    plaintiffs:                    FENWICK & WEST, LLP
 3                                 801 California Street
                                   Mountain View, CA 94041
 4                                 T:  (650) 335-7175
                                   F:  (650) 938-5200
 5                                 BY:  MR. EMMETT C. STANTON;

 6  on behalf of the Defendant:    RODDY KLEIN & RYAN
                                   727 Atlantic Avenue
 7                                 2nd Floor
                                   Boston, MA 02111
 8                                 T: (617)357-5500
                                   F: (617) 357-5030
 9                                 BY:  MR. GARY KLEIN;

10                 -and-

11                                 JAMES, HOYER, NEWCOMER
                                      & SMILJANICH P.A.
12                                 4830 W. Kennedy Boulevard
                                   Suite 550
13                                 Tampa, FL 33609
                                   T:  (813) 286-4100
14                                 F:  (813) 286-4174
                                   BY:  MR. TERRY A. SMILJANICH;

15
                                   LIEF CABRASER HEIMANN
16                                    & BERSTEIN, LLP
                                   275 Battery Street
17                                 Suite 3000
                                   San Francisco, CA 94111-3339
18                                 T:  (415) 956-1000
                                   F:  (415) 956-1008
19                                 BY:  MS. CARYN BECKER;

20                                 EDELMAN, COMBS, LATTURNER
                                      & GOODWIN, LLC
21                                 120 S. LaSalle Street
                                   18th Floor
22                                 Chicago, IL 60603
                                   T:  (312) 739-4200
23                                 F:  (312) 419-0379
                                   BY:  MR. AL HOFELD, JR.
24                                       MR. DANIEL A. EDELMAN
                                         MR. JAMES O. LATTURNER;
25
                     - and -
```

```
 1   APPEARANCES:  (Continued)

 2                                  THE LAW OFFICES OF DANIEL HARRIS
                                    150 N. Wacker Drive
 3                                  Suite 3000
                                    Chicago, IL 60606
 4                                  T:  (312) 960-1802
                                    BY:  MR. DANIEL HARRIS
 5                                       MR. ANTHONY VALACH.

 6
     Court Reporter:               Carol Raber
 7                                 219 S. Dearborn
                                   Room 667
 8                                 Chicago, Illinois
                                   (312) 446-6926
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

1　　　　　　THE CLERK:　05 C 7097, Ameriquest Mortgage Company v.

2　-- Ameriquest.

3　　　　　　THE COURT:　Good morning.

4　　　　　　MR. LE SAGE:　Good morning, your Honor.

5　　　　　　THE COURT:　Why don't you identify yourselves for the

6　record.　Let's run through the plaintiffs first.

7　　　　　　MR. KLEIN:　Gary Klein, your Honor, for the plaintiffs.

8　The law firm is Roddy Klein & Ryan, of Boston.

9　　　　　　MR. SMILJANICH:　Terry Smiljanich, on behalf of the

10　plaintiffs, from James, Hoyer, Newcomer & Smiljanich, from Tampa.

11　　　　　　MS. BECKER:　Caryn Becker, from Lieff Cabrasher Heimann

12　& Bernstein, for the plaintiffs.

13　　　　　　THE COURT:　Where are you from?

14　　　　　　MR. BECKER:　San Francisco.

15　　　　　　THE COURT:　Okay.　Why don't you tell me where you are,

16　too, so it would be a geography lesson.

17　　　　　　MR. STANTON:　Good morning, your Honor.　Emmett Stanton

18　for the Knox plaintiffs in the Northern District of California.

19　　　　　　THE COURT:　Anyone else for the plaintiffs?

20　　　　　(No response.)

21　　　　　Okay, of the cases before me -- I know we've got some

22　tag-along cases and some other cases that may eventually wind up

23　here -- are there any plaintiffs in the cases directly before me

24　today who are not represented?

25　　　　　　Perhaps the defendant would know.

1       MR. KLEIN:  No, your Honor.  I represent all of the

2   plaintiffs at this point except for the Knox plaintiffs.

3   Mr. Stanton is here for the Knox plaintiffs.

4       THE COURT:  And who is here for the defendant?

10:42   5       MR. LE SAGE:  Good morning, your Honor.  Bernard

6   LeSage, and my partner Sarah Andrus, from the Buchalter firm,

7   from Los Angeles, the lead counsel for Ameriquest.

8       MR. VARGA:  Good morning, your Honor.  Craig Varga,

9   from the Varga Berger firm, here in Chicago.  We also represent

10:43   10  Ameriquest in the cases.

11      MR. ALLENSWORTH:  Bruce Allensworth, from Kirkpatrick &

12  Lockart Nicholson Graham, in Boston.  I represent Ameriquest in a

13  number of the class actions.

14      THE COURT:  Okay.  Now are the defendants going to

10:43   15  coordinate between the lawyers?

16      MR. LE SAGE:  Yes, your Honor, we are coordinated.

17      THE COURT:  All right.  Welcome to Chicago.

18      MR. LE SAGE:  Thank you.

19      THE COURT:  And are you lucky, because a normal day

10:43   20  this time of the year you would have lots of snow and it would be

21  lot colder than California is -- than I think it is today.

22      All right.  What we've got to do, first of all -- and I

23  know there is at least one motion pending before me, but before I

24  talk about any motions, I think we've got to do a couple of

25  things.

1      Number one, we've got to get a handle on the other

2  cases that are out there, whether they are going to be cases that

3  are consolidated by the MDL panel, or with this case, or whether

4  there are tag-along cases we might be handling as well.

5      And I don't want to do anything precipitous with regard

6  to the particular plaintiffs' motion that is going to impact

7  other plaintiffs or parties in this case.  That doesn't make much

8  sense.  The whole idea of MDL is to avoid duplication.

9      I also want to make sure at some time that we -- that

10  the plaintiffs get organized.  And I'm not a virgin as far as MDL

11  cases are concerned, I have handled them.  And I think there is

12  an outline that I have, which is not written in stone, which I

13  would like to give you and I want to get your suggestions.

14  Before I even attempt to organize this case, I want your input so

15  that everybody is invested in the process.

16      If we take a little time upfront, I think that things

17  will move along smoother.

18      I'm going to give each of you a list of the things that

19  I'm concerned about.  And it's not all inclusive.  If I miss

20  something that I should be concerned about or something that you

21  should be doing, I want you to add to this list.

22      And this is what I need from the plaintiffs:

23      A selection of a lead counsel and the duties of the

24  lead counsel; a plan for the division of work among the lead

25  counsel and the other plaintiffs' counsel.

1    And you can take those if you want, but I am going to

2    give you my cheat sheet.

3    Whether we ought to have a liaison counsel, which some

4    of you are united in this -- there is a little difference between

5    and lead counsel and a liaison counsel -- and what the duties of

6    the liaison counsel will be.

7    A discovery schedule; a plan for consolidating and

8    scheduling the motion practice; a separate track for a settlement

9    or mediation process; procedures for filing of papers and the

10   service on the parties; a listing of other matters regarding this

11   case that are still before the MDL panel.

12   And I know that Ben has filed something with me which

13   gives at least a partial answer to some of these questions, but

14   you can incorporate it in your response.

15   Related to that, a listing of other class actions or

16   tag-along cases that the plaintiffs anticipate or the defendant

17   anticipates will be joined in this action.

18   And, finally, an analysis of the impact of the

19   Ameriquest-Attorney General's settlement on the issues of this

20   case.

21   Now, I want the defendants to respond to that.  And

22   what I did not have here --

23   Here it is.  I want the defendants to -- the plaintiffs

24   to respond to that.  And I want the defendants also to respond to

25   the relevant portions which would be everything but 1, 2, and 3

1  on my list which I will give you.  So I want the defendants to
2  respond to that as well.

3        I want to give you enough time to do it.  So I'm not
4  going to give you an arbitrary date at this point.

10:48    5        You tell me how long each side would want to take to
6  give me the information I need.  And it may be that you may have
7  to take a little longer because it will take a while to find out
8  what is happening before the MDL and to get a handle on the
9  tag-along cases.

10:48    10        So what's a realistic time?  60 days?  90 days?
11  120 days?  I've got a life-time appointment, so...

12        MR. KLEIN:  Your Honor, for the plaintiffs, there is
13  just one problem with the proposal that you're making.

14        THE COURT:  Okay.

10:48    15        MR. KLEIN:  And I understand that all of those issues
16  are relevant and important for us to get to over time.

17        The problem, your Honor, is that there are certain
18  issues in this case which have to do with the Truth in Lending
19  rescission right and in the motions that we filed for provisional
10:49    20  class certification and for preliminary injunction.  And those
21  rights expire perhaps by operation of law.

22        So the difficulty is that if you're asking us to take
23  60 or 90 days to get organized where nothing else is going on,
24  there is some risk that people will lose their rights in that
25  period.

1    THE COURT:  Well, I don't want to do anything that's
2  going to lose anyone's rights.
3    If it's a matter of a jurisdictional thing or something
4  that you can stipulate to so that we don't lose an issue before
5  me, perhaps you can work out that way, okay.
6    MR. KLEIN:  We would be happy to do that.  We're only
7  one side of that particular question, though, and I'm not sure
8  that the defendant is going to agree to extend the period.
9    THE COURT:  Well, why don't we set the status date for
10 April the 4th, at 10:30, solely to deal with issues that have to
11 be expedited and whether or not we can work out some kind of
12 stipulation so that those issues need not be expedited in order
13 to preserve the issues so that we can get all the parties before
14 us who are going to be impacted by that.
15    MR. KLEIN:  Can I ask for date in March, your Honor?
16    Honestly, the problem is, because we are dealing with a
17 three-year period and a period that may terminate by operation of
18 law, with each day that passes there are people whose rights may
19 be expiring.
20    THE COURT:  Gladys, why do we have the last two weeks
21 in March --
22    THE CLERK:  March 30th is good, Judge.  March 30?
23    THE COURT:  It's marked off my calendar.
24    THE CLERK:  No.
25    THE COURT:  March 30th is good?

1     THE CLERK:  Yeah, March 30 is good.

2     THE COURT:  March 30th, at 10:30.

3         What I want you to do, though -- and maybe I will make

4     this part of the order as well -- is for the plaintiffs to meet

5     with the defense counsel.

6         And perhaps today ought to be the day.  You're all here

7     and I'm going to be here all day.  This would be better.  Why

8     don't you sit down -- there's great places to have lunch in the

9     city -- and come back at 2:00 and give me at least a preliminary

10    report as to what these issues are and how we can work either to

11    resolve them quickly or how we can make sure that we don't lose

12    these issues by action in any plan that we are going to develop

13    or set.

14        All right?

15    MR. KLEIN:  That's fine, your Honor.

16    THE COURT:  Okay.

17    MR. KLEIN:  On the issue of a general organization of

18    the MDL, we have no problem with your Honor's proposals.

19        The only difficulty is we have no idea when the MDL

20    panel will issue any rulings that they have on tag-alongs.

21        My understanding is that many of the conditional

22    transfer orders, if entered, are going to be opposed by counsel.

23    So it's possible that it may take many months before we know

24    exactly which cases are going to be heard here.

25    THE COURT:  Well, let me give you a date that I think

1    is reasonable.  And then you'll tell me at that time.  That's

2    probably the best way to do it.

3           Does 90 days make sense?  Or can you do it in a shorter

4    period of time?

10:52

5           MR. LE SAGE:  Your Honor, I think 90 days is going to

6    be stretching, based on what I've learned from the MDL clerk as

7    to the status of those cases, which I can briefly run down that

8    for you, your Honor, if you would like.

9           There are currently 60 cases pending before the MDL

10:53

10   panel, 25 of which have been designated as XYZ cases which are

11   cases currently pending in the Northern District of Illinois

12   which will have to be coming before your Honor as either related

13   or unrelated, opposed or unopposed, with regard to whether or not

14   they should be joined as a related case.

10:53

15          There are four cases that have been identified by the

16   MDL panel as related cases.  And we're advised by the clerk that

17   the conditional transfer order will be issued two to four weeks

18   after the original transfer order was entered, which means right

19   about now.  They haven't been issued yet, but we expect them any

10:53

20   day.

21          Counsel is right, either party can object to that.  If

22   there is an objection within 15 days, that matter gets set on the

23   MDL panel's next hearing.  And they told hold hearings on a

24   monthly basis.

25          The last time around, it took close to 65 to 70 days

1    for the MDL panel to rule.  I'm sure that they can rule faster

2    and I'm sure that it takes longer in some instances.  So there is

3    no way to predict exactly which way they're going to rule nor how

4    long it will take.  But with the most conservative estimate,

5    90 days is the fastest that we could except any orders.  And

6    certainly in light of anticipated objections, I think 120 days is

7    more realistic just to get MDL panel decisions down --

8            THE COURT:  Sure.

9            MR. LE SAGE:  -- and also, an opportunity to bring

10   appropriate motion before this Court regarding those cases

11   currently pending in the Northern District, which are

12   approximately 25 cases.

13           THE COURT:  So let's talk about June 13th, all right.

14           And again, by the way, if there's anything that has to

15   be done before that time, I'm here.

16           MR. LE SAGE:  Your Honor, I would just make one other

17   point as far as the 2:00 this afternoon.

18           The case -- the Murphy case, for example, which is one

19   of the lead cases in this case, has been pending for a little

20   over a year-and-a-half, I think, or approximately a

21   year-and-a-half.  No motions have been filed in that case with

22   regard to either class certification or preliminary injunction.

23   So the claim now that we are potentially losing rights, I think

24   is a bit of a stretch.  And I really don't see a reason why we

25   can't work on this separately and then come back, your Honor, on

1    the March 30th date.

2         MR. KLEIN:  Your Honor, may I speak to that?

3         I was counsel -- I am counsel in the Murphy case.  It

4    is the earliest filed class action on this issue.  We had more

5    many months been intending to file the exact same motion that we

6    filed here, which is one of the reasons why you see it so quickly

7    after the cases were transferred.

8         The difficulty we had, your Honor, is that Ameriquest

9    was using discovery tactics to block the filing of the motion,

10   not producing witnesses, not producing documents, not producing

11   my discovery related to the class.

12        We have been very cognizant of the problem that people

13   are losing these rights from day one of our case.  And the

14   reality is that that's just an issue that's urgent and now ripe

15   for decision.

16        Our brief on that isn't going to change if we wait 60

17   or 90 or 120 days.  The only thing that will happen is that

18   people will lose their rights.

19        I don't see any reason why Ameriquest can't either

20   stipulate that it will extend those rights sufficiently so that

21   we can get this issue heard and peoples rights won't be impaired;

22   or, in the alternative, that they be told that they need to brief

23   that issue.  Because nobody is going to be prejudiced by our

24   request for preliminary injunctive relief which is essentially a

25   request for notice, your Honor.

10:57

1        We're asking that people be given notice of this

2    extended right to cancel.  It wouldn't impair anybody's rights in

3    any of the potential tag-along cases to get notice of the

4    existence of a right.  No one is being told they have to exercise

5    it and no one is being told that they can't proceed with any

6    other claim that they may have.

7         MR. LE SAGE:  Your Honor, if I may might, as to the

8    merits.

9         On January 23rd, the Attorney General of 49 states and

10   the District of Columbia announced their settlement which

11   included at a conclusion of a two-year investigation virtually

12   every single file and included within their investigation these

13   claims and have come to a resolution with regard to rescission

14   and restitution to all Ameriquest borrowers which include all of

15   the ones by reference here.

16        And so with regard to the merits of the case, the

17   settlement with the AG is already effective, it is final and

18   binding on Ameriquest, dollars have begun to flow.

19        THE COURT:  No, I understand.  And if that's the case,

20   there's no case here for anything.  Right?

21        MR. LE SAGE:  Unless somebody doesn't -- there may be

22   some small...

23        THE COURT:  Then you should have no objection to

24   extending any rights not covered by the AG settlement.  Right?  I

25   think that protects you and at the same time protects the

1  plaintiffs.

2         (Mr. LeSage conferring with co-counsel.)

3         THE COURT:  And the settlement -- I don't want you to

4  stipulate to anything that is going to negate the settlement.

5         MR. LE SAGE:  Your Honor, I'm being counseled by my

6  wise and learned counsel with regard to some of the issues here

7  that deal with jurisdictional rights and other things which I'm

8  not really prepared to answer that question.

9         THE COURT:  Well, that's why I want you to sit down and

10  talk.

11         MR. LE SAGE:  Okay.

12         THE COURT:  Because it seems to me that if you're so

13  confident that -- and, in fact, your only concern is that by

14  stipulation you're going to in some way negate the effect of the

15  settlement on these cases, it seems to me that a stipulation can

16  be worked out so that you are just stipulating to any rights

17  which are not already settled by the AG settlement.

18         And if you do that, you're really not giving away

19  anything and at the same time you're protected and the plaintiffs

20  are being protected if your reading of the settlement is

21  incorrect.

22         MR. LE SAGE:  Okay.  I will in the meantime talk to my

23  client and talk to my learned co-counsel here.

24         THE COURT:  All right.  You talk to your co-counsel and

25  learned co-counsel can talk to learned you.

```
 1          MR. LE SAGE:  Okay.

 2          THE COURT:  And it seems to me --

 3          Try to do that.  If you can do that, come back at 2:00.

 4   I'm here the 30th to do it.

 5          It makes a lot of sense, though, since you're all here

 6   just to go sit down and talk now.  Maybe you can get it resolved.

 7   You don't get a chance to meet like this often.

 8          MR. KLEIN:  Your Honor, are you asking us to come back

 9   at 2:00?

10          I would like to come back at 2:00 in case this issue

11   isn't resolved as well.  Because if isn't resolved, what I would

12   ask you to do is set up a briefing schedule for those motions.

13          THE COURT:  Well, come back at 2:00 and we'll decide

14   what we're going to do at 2:00.

15          MR. KLEIN:  Thank you.

16          THE COURT:  But getting back to the other order which

17   is the filing of the plaintiffs and the defendants, let's see --

18          I'm going to ask you, if you would, to come up with a

19   joint filing on June 13th.  In the event that you can't -- and

20   "joint filing" meaning all of the plaintiffs, okay.

21          If the event that you can't, I'll let the plaintiffs --

22   you know, separate filings on June the 27th.  And I will ask the

23   defendant to file its plan on June 13th.  And I want you to

24   include any other case management issues your suggestions as to

25   how to resolve them that are not included on my list.
```

11:00
11:00
11:00
11:01

1   But my list is not all inclusive.  This is just some of

2 the highlights.  I will give you each a copy of this.  This is

3 for the long term.

4   But as to the immediate issue, I will see you back at

5 2:00, all right.

6   (Copies passed out.)

7   THE COURT:  I hope there's enough copies.

8   MR. LATTURNER:  If the Court, please.  James Latturner,

9 from Edelman Combs & Latturner.

10   We represent many of the tag-along cases.  And, in

11 fact, the 25 that you mentioned in the Northern District of

12 Illinois I think almost all, if not all of them, are ours.

13   We have a motion that we would put on the list to

14 receive notices.

15   THE COURT:  That motion will be allowed.

16   MR. LATTURNER:  Thank you.

17   And the other motion is to delay the appointment of

18 lead counsel which the Court has effectively done by the schedule

19 you've set up.

20   THE COURT:  That's --

21   MR. LATTURNER:  That will be fine.

22   And I guess my other question is you talked in terms of

23 plaintiff and defendant and I'm not quite sure whether I'm a

24 plaintiff yet or not and whether -- we will participate in the

25 conference that comes back at 2:00.

1    THE COURT:  Well, for all intents and purposes I want

2  your input as well, so you're a plaintiff.

3    MR. LATTURNER:  Thank you.

4    THE COURT:  Unless you want to be a defendant.

11:03  5    MR. LATTURNER:  No, no.

6    THE COURT:  Anything else?

7    MR. HARRIS:  Daniel Harris, your Honor.  I represent

8  plaintiffs in two cases that I expect to be before your Honor.

9    I'm in a similar situation with similar desires.  If I

11:03  10  could be heard as well?

11    THE COURT:  Absolutely.  I want to hear anybody who is

12  in this case or will be in this case.

13    MR. HARRIS:  Thank you, your Honor.

14    THE COURT:  I'll see you at 2:00.

11:03  15    MR. LE SAGE:  Thank you.

16    MR. KLEIN:  Thank you.

17    (Recess to 2:00 p.m.)

18    THE CLERK:  05 C 7097, In Re Ameriquest Mortgage

19  Company.

02:07  20    MR. LE SAGE:  Good afternoon, your Honor.

21    THE COURT:  Good afternoon.

22    MR. LE SAGE:  We have made some progress.

23    THE COURT:  Good.

24    MR. LE SAGE:  And I would propose that we relate to you

25  the progress we've made.  And we have one hang-up which --

1    THE COURT:  Sure.

2    MR. LE SAGE:  -- and then I will turn over to opposing

3  counsel.

4    Ameriquest would agree -- and we've proposed language

5  and have agreed upon the language which would accomplish the net

6  effect of a standstill agreement so that none of the rights

7  between today's date, February 7th, and the date upon which this

8  Court hears and then decides any motion on preliminary injunction

9  -- our suggestion was sometime in July because that would

10  coincide more or less with our prior reports to you in late June,

11  and then have a hearing on the preliminary injunction in July

12  with some type of briefing schedule.

13    Then we incorporated plaintiffs' language, that which

14  they wanted the notice of right to rescind, and excluded only

15  from that those parties who elected to either have released their

16  rights as part of their motion or may release their rights as

17  part of the Attorney General's settlement.

18    And that nothing in the stipulation constitutes an

19  admission of fact or law or a give-up by either of the parties,

20  that does not constitute an admission.  And that it cannot be

21  used to support any -- it doesn't change anybody's rights.  In

22  other words, whatever the rights are, they are with that one

23  exception that we toll whatever rescission rights they might

24  have.

25    And then in the event that this Court issues the

1   preliminary injunction, that would allow you to give whatever

2   additional rights and extend whatever rights to rescind based

3   upon whatever order you give.

4        And that there would be actually 10 representative

5   plaintiffs if, when and as Ameriquest were to commence a

6   foreclosure proceeding.  These are the representative plaintiffs

7   who have attorneys in this action and, therefore, are very well

8   protected, I can assure you.  But in any event, we would give

9   notice to their attorney in the event that any foreclosure

10  action, a 30-day notice.

11       And I think all of that has been agreed to.

12       THE COURT:  Okay.

13       MR. LE SAGE:  And we have one issue that we cannot

14  agree to.

15       MR. KLEIN:  The hanging issue, your Honor, is that

16  there are a group of people in the punitive class who are facing

17  foreclosure either now or may face foreclosure between now and

18  the date on which you might decide the preliminary injunction.

19       Our concern is that if there is a foreclosure under the

20  statute 15 USC, Section 1535(f) their right to rescind is

21  terminated by the foreclosure.

22       We proposed in our motion for preliminary injunction

23  that those people get notice of the right before the foreclosure

24  so that they would have an opportunity to evaluate whether

25  they're in the class and make the rescission demand before their

foreclosure sale if they so choose.

And we have not been able to reach an agreement about how to deal with the change in the status quo that might occur between now and your decision which would be -- the two changes: that's the one is the loss of the rights; but the other one, obviously, is the loss of the home.

THE COURT:  Okay.

MR. LE SAGE:  Your Honor, may I speak to that.

The reason we have a problem giving such a notice is that there is no way for Ameriquest to ascertain whether or not the right to rescind remains.  They have initially a seven-day right to rescind and only extended rights to rescind if factual things occur such as a blank notice of a right to rescind was given to those borrowers at the time that the loan was closed.

And those factual issues are potentially -- are significantly in dispute, and they're not something that we can then give advice to a borrower to do an act or not do an act based upon what may, or may not, be a rescission right.

Generally these borrowers are represented by counsel. Even if they're not, they're in a situation where they're on notice to acquire advice from counsel.  It's been our experience that they do get such advice and counsel -- advice when and if there is a foreclosure procedure.

So we can't be in the business of giving legal notices that, one, may not be right; and, two, that we don't know is even

1   effective.

2          So that's the reason why we have difficulty with that

3   part of the order or with that part of the request.

4          MR. KLEIN:  And our position on that issue, your Honor,

5   is that, first, most people in foreclosure don't have counsel

6   largely because they're in financial circumstances that make it

7   very difficult to get counsel; and, secondly, that the problem

8   that Ameriquest wouldn't necessarily know whether these rights

9   exist could be remedied by an agreement to a fairly generic

10  statement along the lines of "There is a possibility that you

11  have the right to cancel this loan.  You should seek an attorney

12  to help you evaluate whether that claim exists."

13         MR. LE SAGE:  Your Honor, just one added point that I

14  would just state which is that in many -- in some instances the

15  decision to rescind or not rescind or to allow foreclosure or not

16  to foreclose is a composite of decisions which includes that if

17  you're going to rescind you're going to have to give back

18  immediately your principal.

19         And there isn't in every instance a necessary clear

20  green light that you ought to rescind a loan at that point.  In

21  some instances you may elect to go ahead and let the foreclosure

22  take place.  And there are many circumstances, depending upon the

23  value of that property, and upon the circumstances and the intent

24  of the borrower you don't know what is or is not in his or her

25  best interest.

1    And so from that standpoint, notices at that point in

2  time don't really accomplish much with regard to the decision to

3  rescind or not to rescind to allow the foreclosure to take place

4  or not.

5    THE COURT:  Okay, what I want you to do is prepare the

6  standstill agreement with the briefing schedule on the motion for

7  preliminary injunction.

8    And as to the one issue you could not resolve, why

9  don't you give me simultaneous briefs within seven days and

10  responses three days after that.  And you could also state your

11  position.  But you also could give me any suggestions that you

12  may have as to how to resolve the impasse, whether it's some kind

13  of a generic statement or whatever.  And then I will rule

14  promptly on that one issue.

15    All right?

16    MR. KLEIN:  Do you want a separate motion on that

17  particular issue, your Honor --

18    THE COURT:  Yes.

19    MR. KLEIN:  -- or can we brief the issue without --

20  based on the existing papers?

21    THE COURT:  Well, your initial filing can be a motion

22  with a response.

23    But, you know, give me simultaneous briefs.  If it's

24  going to be simultaneous motions as to how to resolve it, that's

25  fine too.

1   MR. LE SAGE:  And just so I understand what you're

2   saying.  And then we would have a briefing schedule for the

3   preliminary injunction, which would have a hearing date that

4   would be convenient for your Honor.  Do you have a date that you

5   would have in mind?

6   THE COURT:  Well, when it's fully briefed, I'll decide

7   whether or not we need a hearing and then I'll set a hearing

8   date.

9   MR. LE SAGE:  Okay.

10  THE COURT:  But you set a mutually agreeable briefing

11  schedule on that as well.

12  MR. LE SAGE:  Okay.

13  THE COURT:  Okay?

14  MR. LE SAGE:  Do you want me to read into the record

15  the stipulation that we have prepared?

16  THE COURT:  All right.  Would you rather do that as

17  opposed to giving me a written draft for me to sign?

18  MR. LE SAGE:  I would rather give a written draft.  But

19  I could read into the record --

20  THE COURT:  Well, read it now so you don't change your

21  minds when you put it in, when you give me a written one for me

22  to sign.

23  MR. KLEIN:  Your Honor, I have copies.  The truest form

24  of negotiation between counsel, split it in half.

25  MR. LE SAGE:  The stipulation of the parties would read

1  as follows:

2          That a standstill shall apply from February 7th, 2006

3  to, and including, the date upon which this Court hears and

4  decides plaintiff's motion for preliminary injunction, on blank

5  date, or as otherwise -- at such other hearing date set by this

6  Court (standstill period") for all those Ameriquest borrowers

7  whose rescission right may otherwise lapse during the standstill

8  period and who plaintiffs assert:  1) received a notice of right

9  to cancel in which the date of expiration of the right to cancel

10  was blank, or 2) received an incorrect form of notice of right to

11  cancel because their loan paid off a prior loan with Ameriquest

12  and their notice did not accurately describe the effect of

13  cancelling such a loan.  Excluded from this standstill period

14  are those Ameriquest borrowers who have previously released their

15  claims against Ameriquest or may release their claims by reason

16  of the AG settlement or otherwise.

17          2.  Nothing in this stipulation shall in any way:  (A)

18  modify, change or inhibit in any way the AG settlement or the

19  rights or release of rights of borrowers who elect to participate

20  in the AG settlement; (B) Constitute an admission of fact or law

21  or otherwise prejudice any claim or defense of Ameriquest; (C) be

22  used to support any argument that a class should be certified

23  against Ameriquest.

24          3.  Should the Court deny plaintiff's motion for

25  preliminary injunction, the rescission right of any borrower

1  whose right to rescind would have expired during the standstill

2  period shall expire immediately upon that denial.

3       The next paragraph, which I believe is 4:  Should the

4  Court grant the plaintiff's motion for preliminary injunction,

5  the rescission claims covered by this stipulation shall be

6  treated as if they had not lapsed and such claim shall be subject

7  to any relief provided by the terms of the Court's preliminary

8  injunction.

9       The next paragraph:  Defendant agrees that no further

10  action will be taken to foreclose on the property of the

11  following individuals without at least 30 days notice of such

12  action to plaintiff's counsel Gary Klein:  -- and the following

13  individuals are included within this list -- Lynn Gay; David and

14  Janet Wakefield; Harriet Holden, H-o-l-d-e-n --

15       MR. KLEIN:  -- d-e-r.

16       MR. LE SAGE:  H-o-l-d-e-r, Holder; Frank and Meredith

17  White -- Martha White, excuse me; Christopher, Bourassa,

18  B-o-u-r-a-s-s-a; James Devin, D-e-v-i-n.

19       MR. KLEIN:  D-e-v-l-i-n, Devlin.

20       MR. LE SAGE:  Devlin, D-e-v-l-i-n, excuse me; Dashel,

21  D-a-s-h-e-l, and William Tolbert, T-o-l-b-e-r-t -- oh, Daisybel,

22  D-a-i-s-y-b-e-l and William Tolbert; Christopher Gabrielli,

23  G-a-b-r-i-e-l-l-i; Patricia Masson, M-a-s-s-o-n; and Terry

24  Baumgarten, B-a-u-m-g-a-r-t --

25       MS. BECKER:  -- er.

1        MR. LE SAGE:  Baumgartner, g-a-r-t-n-e-r.

2        THE COURT:  That's pretty good.  You got about

3    35 percent right.

4        MR. LE SAGE:  I'm improving.

02:19    5        THE COURT:  That's a .350 batting average.  That's

6    good.

7        MR. LE SAGE:  Yes, your Honor.

8        THE COURT:  Okay.  Well, that's fine.  Put something in

9    an order with your agreed briefing schedule and I will sign it

02:19   10    and I will let you know my ruling on the one issue.

11        MR. LE SAGE:  Thank you, your Honor.

12        MR. LATTURNER:  If the Court please, this morning you

13    ordered that the tag-along plaintiffs counsel will be on the

14    service list.

02:19   15        Do you want that in the formal order that is going to

16    be presented to you?

17        THE COURT:  Do we need a formal order for that, Gladys?

18        THE CLERK:  He can put it in that other order.

19        THE COURT:  Sure.  Put it in the order as well.

02:20   20        MR. KLEIN:  Your Honor, one problem that plaintiff's

21    counsel have with that particular aspect of this proceeding is

22    that we have no way of knowing who is on the tag-along list.  We

23    need Ameriquest to provide us with names of counsel because we

24    don't have access to those cases.

25        THE COURT:  Okay.

1          MR. LE SAGE:   Your Honor, I think there's an additional

2   problem is trying to follow the MDL rules.  And let me explain.

3          Ameriquest has identified what it believes to be

4   tag-alongs, some other plaintiffs independent from us have

5   identified tag-alongs, and the MDL panel has identified related

6   cases.

7          We don't have a composite of exactly who is or who is

8   not on the list and who may become a tag-along.  That's within

9   the province of the jurisdiction of the multi-district panel

10  itself.

11         And, in fact, their rules prohibit the parties -- and I

12  inquired because I looked at the rules that say don't give notice

13  of tag-alongs to the tag-along parties.  Because until the court

14  rules, it just I think -- as the clerk explained it to me,

15  ruffles feathers that they don't want ruffled.

16         And because until they determine who is a tag-along,

17  they don't expect those people to be served.  They expect -- the

18  multi-district panel when they decide to conditionally transfer a

19  case, they give notice to both sides -- plaintiffs and

20  defendants.  Each side at that point has 15 days within which to

21  object or to allow it to go forward to a natural -- become a

22  permanent transfer.  And that's the way they would prefer doing

23  it.

24         And so to add what in effect could be hundreds -- in

25  fact, I'm quite certain it's going to be hundreds of plaintiffs

1    because we have 65 actions now that are potential tag-alongs.

2    And none of them -- except for the five that have actually been

3    ruled upon -- that it becomes problematic as to who is or who is

4    not a tag-along.

02:21   5    And I expect that others may be identified in light of

6    today's proceedings and other proceedings as parties become aware

7    of this multi-district action.

8    MR. VARGA:  May I suggest that today there has been an

9    appearance on attorneys from the Edelman firm and the Harris firm

02:22   10   and at least we be on the service.

11   THE COURT:  That shouldn't be a problem.

12   MR. LE SAGE:  That's not a problem, your Honor.  That's

13   an identifiable set.

14   THE COURT:  Thank you very much.

02:22   15   MR. KLEIN:  Your Honor, one more clarification, and I

16   apologize for the problem.

17   When you asked us to organize a plan for the case going

18   forward, we were not sure whether it was implicit in your request

19   that we organize that we would not be able to conduct discovery

02:22   20   in the interim period.

21   Our preference, your Honor, is obviously to continue

22   with discovery efforts that are ongoing in these various cases to

23   continue to conduct depositions.  And then we think that is

24   expedient in light of the fact that there are so many moving

25   parties at this point, including --

1        THE COURT:  The only problem is that we get more

2  plaintiffs in here and you may want to depose the same people,

3  and that doesn't make sense either.

4        MR. LE SAGE:  I agree that that's the problem, your

5  Honor.  That's why I think any relevant discovery -- any relevant

6  plan --

7        THE COURT:  Well, why don't we wait a bit?  I assure

8  you I'll put the case on the front burner.  It's not going to be

9  dragging here.

10       Let's try to get some handle on which cases are going

11  to be before us and then we will have an accelerated discovery

12  schedule at that time.

13       THE CLERK:  Judge, are you still keeping the March 30th

14  day?

15       THE COURT:  Yeah, still the March 30th date.  Well, no,

16  we don't need it now.

17       MR. LE SAGE:  No, we don't need it.

18       THE COURT:  No, let's vacate that.

19       MS. EDELMAN:  Your Honor, Dan Edelman for some of the

20  plaintiffs in the so-called XYZ cases.

21       In many of our cases we are conducting discovery.  We

22  have discovery scheduling orders and cut-off dates.  Can we

23  continue to comply with those, your Honor?

24       MR. LE SAGE:  Your Honor, what we have done in most all

25  of those cases is entered into stipulations with opposing counsel

1  to wait until the tag-along issues are resolved because what

2  discovery is relevant in that case may well be relevant in

3  others.

4  All counsel so far today have all agreed with that in

5  each and every case.  So --

6  MR. EDELMAN:  That is not the way that it has been done

7  in ours in orders to complete discovery by various dates.

8  These are cases within the Northern District of

9  Illinois for the most part, some of are in other Illinois-Indiana

10  districts.

11  MR. VARGA:  Your Honor, I'm counsel for Ameriquest in

12  many of those, and there are about 25 of those cases.  In this

13  instance I can agree with Mr. Edelman that we do have discovery

14  cutoff dates in those cases from, for instance, Judge Coar, Judge

15  Conlon.  And while we will do whatever your Honor ultimately

16  wants to do, that's what we're faced with.

17  THE COURT:  Sure.

18  And I think that I at this point don't have any

19  jurisdiction to vacate those orders.

20  MS. BECKER:  Your Honor, is it all right if I raise one

21  point of clarification as well?

22  With respect to the report that plaintiff's counsel has

23  provided to the Court --

24  THE COURT REPORTER:  I'm sorry?  Speak up a little.

25  MS. BECKER:  We have the same issues that Mr. LeSage

1   explained before about knowing who the plaintiffs' counsel are

2   and -- you don't need to include the counsel, rather than us

3   having to go out and search other counsel, until they become

4   known to the Court.

5           THE COURT:  All you can do is work with the information

6   you have at this point.

7           MS. BECKER:  Thank you.

8           THE COURT:  Okay.  Anything else?

9           MR. LE SAGE:  Nothing else, your Honor.

10          THE COURT:  Thank you very much.

11          MR. KLEIN:  Thank you, your Honor.

12          THE COURT:  You're welcome.

13  (Proceedings concluded)

14                      CERTIFICATE

15  I hereby certify that the foregoing is a true and correct

16  transcript of proceedings in the above-entitled case.

17

18

19  Carol Raber                        Date
    Official Court Reporter

20

21

22

23

24

25

**Exhibit 3**

**MDL 1715**

**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**FEB 27 2006**

*DOCKET NO. 1715*

**FILED
CLERK'S OFFICE**

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION

#### (SEE ATTACHED SCHEDULE)

#### CONDITIONAL TRANSFER ORDER (CTO-1)

On December 13, 2005, the Panel transferred five civil actions to the United States District Court for the Northern District of Illinois for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. With the consent of that court, all such actions have been assigned to the Honorable Marvin E. Aspen.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Northern District of Illinois and assigned to Judge Aspen.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of Illinois for the reasons stated in the order of December 13, 2005, ____F.Supp.2d____ (J.P.M.L. 2005), and, with the consent of that court, assigned to the Honorable Marvin E. Aspen.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of Illinois. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

*Michael J. Beck*

Michael J. Beck
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

**MAR 15 2006**

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

IMAGED MAR 1 5 2006

**OFFICIAL FILE COPY**

# SCHEDULE CTO-1 - TAG-ALONG ACTIONS
## DOCKET NO. 1715
## IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION

| DIST. DIV. C.A. # | CASE CAPTION | |
|---|---|---|
| **ALABAMA SOUTHERN** | | |
| ~~ALS 1 05-78~~ | ~~Valerie Lund Mitchell, et al. v. Ameriquest Mortgage Co., et al.~~ | Opposed 3/10/06 |
| | | |
| **CALIFORNIA CENTRAL** | | |
| ~~CAC 2 05-1426~~ | ~~Raymond Quarterman, Jr. v. Ameriquest Capital Corp., et al.~~ | Opposed 3/15/06 |
| ~~CAC 2 05-4982~~ | ~~Maria Morrison, et al. v. Ameriquest Mortgage Co., et al.~~ | Opposed 3/14/06 |
| CAC 8 05-285 | Tonya Sumner Brown, et al. v. Ameriquest Capital Corp., et al. | |
| CAC 8 05-907 | Rosalind Van Gorp, et al. v. Ameriquest Mortgage Co., et al. | |
| CAC 8 05-1117 | Deborah Juillerat v. Ameriquest Mortgage Co. | |
| | | |
| **CALIFORNIA NORTHERN** | | |
| ~~CAN 5 05-2905~~ | ~~Juan Medina v. Argent Mortgage Co., et al.~~ | Opposed 3/14/06 |
| | | |
| **CONNECTICUT** | | |
| CT 3 05-452 | Wray Bailey, et al. v. Ameriquest Mortgage Co. | |
| CT 3 05-1296 | Jerome L. Sievers, et al. v. Ameriquest Mortgage Co., et al. | |
| ~~CT 3 05-1653~~ | ~~Wetzer Surin v. Alpha Mortgage Lending, LLC, et al.~~ | Opposed 3/14/06 |
| | | |
| **FLORIDA MIDDLE** | | |
| FLM 3 04-1296 | George Barber, et al. v. Ameriquest Capital Corp., et al. | |
| FLM 8 05-1849 | Steven H. Ungar v. Ameriquet Mortgage Co. | |
| | | |
| **FLORIDA SOUTHERN** | | |
| ~~FLS 1 05-21103~~ | ~~Miguel Almaguer v. Argent Mortgage Co., LLC, et al.~~ | Opposed 3/15/06 |
| | | |
| **GEORGIA MIDDLE** | | |
| ~~GAM 1 05-107~~ | ~~J. Michael Campbell v. Johnnie Ross, et al.~~ | Opposed 3/10/06 |
| | | |
| **INDIANA NORTHERN** | | |
| INN 2 05-411 | Joseph A. Mikowski, et al. v. Ameriquest Mortgage Co., et al. | |
| | | |
| **INDIANA SOUTHERN** | | |
| INS 1 05-1618 | Katrina D. Purdy-Roth, et al. v. Argent Mortgage Co., LLC, et al. | |
| | | |
| **LOUISIANA EASTERN** | | |
| ~~LAE 2 05-3067~~ | ~~John Darius Powell, et al. v. Ameriquest Mortgage Co.~~ | Opposed 3/15/06 |
| | | |
| **MINNESOTA** | | |
| MN 0 05-589 | Thomas B. Doherty, et al. v. Town & Country Credit Corp. | |
| | | |
| **NEW YORK EASTERN** | | |
| NYE 2 05-3987 | Richard A. Madrazo v. Ameriquest Mortgage Co. | |
| | | |
| **OHIO NORTHERN** | | |
| OHN 1 05-1126 | Pegi Saunders, et al. v. Ameriquest Mortgage Co., et al. | |

SCHEDULE OF ACTIONS (CTO-1) - DOCKET NO. 1715

| DIST. DIV. C.A. # | CASE CAPTION | |
|---|---|---|
| **PENNSYLVANIA EASTERN** | | |
| PAE 2 05-1096 | Scott T. Reuter, et al. v. WM Specialty Mortgage, LLC, et al. | Opposed 3/13/06 |
| PAE 2 05-4427 | Michele D'Ambrogi, et al. v. Ameriquest Mortgage Co. | |
| PAE 2 05-6112 | Jeanette Stokes Godwin v. Argent Mortgage Co., LLC, et al. | Opposed 3/13/06 |
| **PENNSYLVANIA WESTERN** | | |
| PAW 2 05-391 | Karen M. Kahrer v. Ameriquest Mortgage Co. | Opposed 3/15/06 |
| **RHODE ISLAND** | | |
| RI 1 05-153 | Lillian Melendez v. Ameriquest Mortgage Co. | Vacated 3/09/06 |
| RI 1 05-527 | Eddy G. Pena v. Ameriquest Mortgage Co. | Opposed 3/08/06 |
| RI 1 05-528 | Richard Daneau v. Ameriquest Mortgage Co. | Opposed 3/08/06 |
| RI 1 05-529 | Maria S. Eyre v. Ameriquest Mortgage Co. | Opposed 3/08/06 |
| RI 1 05-530 | Charles F. Parisi v. Ameriquest Mortgage Co. | Opposed 3/08/06 |
| RI 1 05-531 | Karleen M. Frost v. Ameriquest Mortgage Co. | Opposed 3/08/06 |
| RI 1 05-532 | Richard J. Silvia v. Ameriquest Mortgage Co. | Opposed 3/08/06 |
| RI 1 05-533 | Joseph F. Creamer, III v. Ameriquest Mortgage Co. | Opposed 3/08/06 |
| RI 1 05-538 | Renee Leclere v. Ameriquest Mortgage Co. | Opposed 3/08/06 |
| **TENNESSEE MIDDLE** | | |
| TNM 3 05-793 | Rickie Ann Reese v. Ameriquest Mortgage Co., et al. | Opposed 3/15/06 |

**Exhibit 4**

4-4-06 Hearing Transcript.txt

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3 IN RE:                        )    Docket No. 05 C 7097
                                 )
 4    AMERIQUEST MORTGAGE CO.    )
      MORTGAGE LENDING PRACTICES )    April 4, 2006
 5    LITIGATION.                )    10:30 o'clock a.m.
                                 )    Chicago, Illinois
 6
                TRANSCRIPT OF PROCEEDINGS - STATUS
 7              BEFORE THE HON. MARVIN E. ASPEN

 8 APPEARANCES:

 9 For certain plaintiffs:    EDELMAN COMBS LATTURNER &
                              GOODWIN, LLC
10                            BY:  MR. DANIEL A. EDELMAN
                                   MR. ALBERT F. HOFELD, JR.
11                                 MR. JAMES LATTURNER
                              120 South LaSalle Street
12                            18th Floor
                              Chicago, Illinois 60603
13
                              RODDY KLEIN & RYAN
14                            MR. GARY EDWARD KLEIN
                              727 Atlantic Avenue
15                            2nd Floor
                              Boston, Massachusetts 02111
16
                              LAW OFFICES OF DANIEL HARRIS
17                            BY:  MR. ANTHONY VALACH
                              150 North Wacker Drive
18                            Suite 3000
                              Chicago, Illinois 60606
19
                              STANLEY L. HILL & ASSOCIATES
20                            BY:  MS. DALAL M. JARAD
                              10 South LaSalle Street
21                            Suite 1301
                              Chicago, Illinois 60603
22

23

24

25
```

2

```
 1 APPEARANCES (continued):

 2 For certain plaintiffs:     BUCHALTER NEMER FIELDS &
```
Page 1

```
                        4-4-06 Hearing Transcript.txt
                                   YOUNGER
 3                            BY:   MR. BERNARD E. LE SAGE
                                   601 South Figueroa Street
 4                                 Suite 2400
                                   Los Angeles, California 90017
 5
     For certain defendants:       VARGA BERGER LEDSKY
 6                                 HAYES & CASEY
                                   BY:   MR. JONATHAN N. LEDSKY
 7                                       MR. CRAIG ALLEN VARGA
                                   224 South Michigan Avenue
 8                                 Suite 350
                                   Chicago, Illinois 60604
 9
     Court Reporter:               MS. MARY M. HACKER
10                                 Official Court Reporter
                                   219 South Dearborn Street
11                                 Suite 1426
                                   Chicago, Illinois 60604
12                                 (312) 435-5564

13

14

15

16

17

18

19

20

21

22

23

24

25
```

                                                                    3

```
 1          THE CLERK:   05 C 7097, in re: Ameriquest Mortgage.

 2          MR. EDELMAN:   Good morning, your Honor.   Daniel A.

 3 Edelman for certain of the plaintiffs.

 4          MR. LATTURNER:   James Latturner, for the same

 5 plaintiffs.

 6          MR. HOFELD:   Al Hofeld, Jr., your Honor, for the same
```

Page 2

                          4-4-06 Hearing Transcript.txt
 7 plaintiffs.

 8          THE COURT:  Good morning.

 9          Does anyone else want to put your name on the record
10 so you can bill properly?

11          MR. KLEIN:  Gary Klein, your Honor, for the
12 plaintiffs in the previously transferred cases.

13          MR. VALACH:  Anthony Valach for the plaintiffs in the
14 Jewell case.

15          MS. JARAD:  Dalal Jarad with Stanley Hill's office
16 with Plaintiff Gavione Tammerello.

17          MR. LE SAGE:  Good morning, your Honor.  Bernard
18 LeSage of the Buchalter firm representing defendants.

19          MR. VARGA:  Good morning, your Honor.  Craig Varga
20 here in Chicago of Varga, Berger, representing the defendants.

21          MR. LEDSKY:  Jonathan Ledsky, representing the
22 defendants as well, your Honor.

23          THE COURT:  Okay.  Well, we have had initially one
24 motion for reassignment of related cases, which the defendants
25 filed.  The ECLG plaintiffs have opposed some of the

                                                              4


 1 reassignments, seven of the 29.

 2          And then there's another motion -- let's see if we
 3 can get that -- Tammerello also has filed an opposition in
 4 regard to one of the proposed motions.  And ECLG had its own
 5 cross-motion moving to reassign six additional cases, to which
 6 I have no opposition.

 7          So, in effect, I have before me 36 cases for
 8 reassignment, correct?

 9          MR. LE SAGE:  That is correct, your Honor.

10          MR. LATTURNER:  Yes.

11          THE COURT:  And I know what your positions are.
                          Page 3

4-4-06 Hearing Transcript.txt

12 Before I tell you what my position is, does anybody want to
13 say anything briefly?

14          MR. LE SAGE:  Not from defendants, your Honor.

15          MR. LATTURNER:  I might also add, with regard to the
16 Edelman, Combs plaintiffs, we filed two additional cases
17 yesterday, and I should inform the Court that there will
18 possibly be over two dozen in the near future in addition.

19          THE COURT:  Okay.  When do you think we are going to
20 reach a point where we know we have all of them to deal with?

21          MR. LATTURNER:  Probably not for quite some time, but
22 they are repetitive issues.

23          THE COURT:  Sure.

24          MR. LATTURNER:  It should not affect that.

25          THE COURT:  Well, here's my thinking:  I'm going to

                                                              5

1 grant the defendants' motion in part -- and I'll tell you the
2 part in a minute -- and ECLG's cross-motion, I'm going to
3 grant that.

4          As to the seven cases where there is opposition based
5 upon things that are happening in another courtroom that might
6 dispose of the case quickly, and as to the Tammerello's case,
7 I'm going to enter and continue the defendants' motion until
8 our June 13th status.  You can give me a status report on
9 those cases at that time, and I'll decide at that time whether
10 to grant the motion, deny the motion or further continue it.
11 Okay?

12          MR. LE SAGE:  I think that makes sense, your Honor.

13          MR. LATTURNER:  It may be moot by then also.

14          THE COURT:  Well, that's exactly why I'm doing what
15 I'm doing.

                        Page 4

```
                        4-4-06 Hearing Transcript.txt
16          MR. LE SAGE:  I have a status on what's happening in
17 the MDL, if you're interested.
18          THE COURT:  Sure.  You're going to give me a formal
19 report on June 13th, right?
20          MR. LE SAGE:  A formal report on June 13th.
21          THE COURT:  Right.
22          Okay, sure.  I would be happy to know what's
23 happening.
24          MR. LE SAGE:  This was as of Friday, according to the
25 clerk's record.  We had -- there were 26 actions which were
```

                                                                    6

```
 1 officially transferred either by motion or by failure to
 2 oppose the conditional transfer order.  There were eleven
 3 cases that the conditional transfer orders were opposed, and
 4 so those will either go on to the May or June MDL hearing for
 5 final resolution of those oppositions.
 6          You just resolved the 30-some cases that were X, Y, Z
 7 cases, those cases pending in the Northern District.
 8          There are 19 cases which have been identified either
 9 by plaintiffs or defendants as tag-alongs, which the clerks
10 have identified as suspense actions, and that means that the
11 CTO will be issued in due course, probably in the next couple
12 of weeks, and we'll see if any oppositions appear.  But
13 another 19 actions are potentially on their way to your court.
14          And eight cases are awaiting additional information
15 for the clerk's office to determine what their initial
16 determination is going to be.
17          There are a total of 94 cases pending either that
18 have been transferred by the MDL or soon to be acted on by the
19 MDL.  Only 26 cases, and now approximately 30 cases based upon
20 today's rulings, that are currently before your Honor.
                                Page 5
```

4-4-06 Hearing Transcript.txt

21          THE COURT:  Okay.  I think I asked you one of the

22 things to report to me in June was whether there's any

23 settlement procedures that are -- I would be interested in

24 seeing if -- I don't want you to stop your litigation track.

25 We'll be going on a litigation track, but we also ought to

                                                                7

 1 think very seriously about a settlement track because a lot of

 2 these cases, I'm sure, can be settled very easily.

 3          MR. LE SAGE:  I agree, your Honor.

 4          THE COURT:  Okay.  Good.  See you in June.

 5          MR. KLEIN:  Your Honor, before you close, may I

 6 inquire about the leftover matter from the status conference

 7 in March -- or the status conference in February?

 8          If you remember, we resolved by a standstill

 9 stipulation issues about passage of time, cutting off the

10 right of certain individuals to rescind under the Truth In

11 Lending Act, but we did not resolve the issue of potential

12 foreclosure -- complete foreclosure would terminate the rights

13 of individuals.  Unfortunately, the foreclosure process is

14 ongoing for many of the leaders, would-be members of the

15 putative class.  We have now fully briefed the issue of

16 whether there should be notice relief for people affected by

17 foreclosure.

18          THE COURT:  It's fully briefed before me now?

19          MR. KLEIN:  Yes, it is.

20          THE COURT:  All right.  I will rule on it very

21 quickly.

22          MR. KLEIN:  Thank you.

23          MR. LATTURNER:  One further item.

24          On many of the cases that you have accepted today,

                              Page 6

4-4-06 Hearing Transcript.txt

25 there are discovery scheduling orders that are outstanding.

8

1 We would request that they stay in place.

2          THE COURT:  Okay.  That's a motion that will be

3 allowed.

4          MR. LE SAGE:  Your Honor, may I speak to that?

5          THE COURT:  Yes.

6          MR. LE SAGE:  As to those cases which are being

7 transferred to you, in the previous request for plaintiffs to

8 continue discovery your Honor stayed that discovery.  And as

9 to those which are actually transferred to this Court, I

10 request that that order remain in place.

11          As to those cases which you have only conditionally

12 --

13          THE COURT:  Yes, yes --

14          MR. LE SAGE:  -- left, I mean, I think that should be

15 the cutoff distinction.

16          THE COURT:  I agree.  Okay.

17          MS. JARAD:  Your Honor, the status on June 13, will

18 that also be at 10:30?

19          THE COURT:  10:30.

20          MS. JARAD:  Okay.

21          MR. EDELMAN:  I'm sorry, your Honor.  With respect to

22 the 25 or 30 cases of ours that you've transferred, should we

23 continue with the discovery and summary judgment schedules --

24          THE COURT:  On the ones that are here, yes, sure.

25          MR. EDELMAN:  I'm sorry?

9

1          THE COURT:  Yes.

2          MR. EDELMAN:  Thank you.
                    Page 7

4-4-06 Hearing Transcript.txt

3          MR. LE SAGE:  I just need to clarify.

4          I'm wondering whether -- the cases that have actually

5 been transferred from another judge in this district to your

6 Honor, those cases will be subject to the stay order, in

7 essence?

8          THE COURT:  Yes.  They will be subject --

9          MR. LEDSKY:  And only those other cases which were

10 not transferred --

11          THE COURT:  -- are not subject to the stay, of

12 course.

13          MR. LE SAGE:  Okay.  I just wanted Mr. Edelman to

14 understand.

15          THE COURT:  We have a stay order, it has not been

16 lifted, on discovery pending our discovery plan.  That stay

17 order obviously is going to apply to everything that's here.

18 Matters that are not here or that I have not ruled on whether

19 they are here or not, go ahead and do discovery or resolve it

20 by summary judgment, settle it.  It might be all moot by June

21 13th.

22          MR. LE SAGE:  Okay.

23          MR. EDELMAN:  Should we then comply with summary

24 judgment and dispositive motion deadlines in the cases that

25 you are taking?

                                                        10

1          MR. HOFELD:  Where discovery has been completed?

2          THE COURT:  Where discovery has been completed, yes.

3          MR. HOFELD:  Yes.

4          THE COURT:  Sure.

5          MR. LE SAGE:  Okay.  Your Honor, I mean, there are

6 two types of cases which you have ruled --

                            Page 8

4-4-06 Hearing Transcript.txt

7          THE COURT:  I'm really staying everything that is
8  before me.

9          MR. LE SAGE:  That's correct.

10         THE COURT:  Things that are not before me, I really
11 don't care.

12         Now, I suppose you can tell the judge where there's
13 something pending about what I've done, and if that judge
14 wants to stay discovery, that's entirely up to that particular
15 judge.

16         MR. LE SAGE:  But as to any motions or discovery on
17 the cases before your Honor, those are all stayed pending the
18 June 13th --

19         THE COURT:  Those are stayed because on June 13th --

20         MR. LE SAGE:  -- 13th we're going to resolve this.

21         THE COURT:  -- we're going to do it all in a
22 consolidated manner.  We're going to have consolidated
23 discovery, we're going to have a consolidated motion.  That
24 does not stop any of you from, in the meantime, working on
25 your input to a summary judgment motion.

                                                    11

1          MR. LE SAGE:  Okay.

2          THE COURT:  Have I confused you enough?

3          MR. LE SAGE:  I am totally clear, your Honor.  I
4  think your order is clear.

5          MR. EDELMAN:  I just want to be --

6          MR. LE SAGE:  I just want to make sure both sides
7  agree as to what the import of your ruling is.

8          MR. EDELMAN:  Judge, I'm just concerned because we
9  have summary judgment deadlines coming and discovery cutoff
10 deadlines coming up in a number of the cases you have
11 transferred.

                    Page 9

4-4-06 Hearing Transcript.txt

12          THE COURT:  But I stayed those dates.  I previously

13 entered an order staying them.

14          MR. LE SAGE:  Okay.

15          MR. VARGA:  And, in fact, I believe your Honor said

16 that as to those cases that you haven't ruled on yet today, we

17 could apprise the judges there of what you've done and it's up

18 to them to do what they want.  They might decide they want to

19 save themselves some work there for something that might be

20 coming here and perhaps not.

21          THE COURT:  And it's up to you.  I mean, If you feel

22 you want a quick summary judgment decision there and the judge

23 is willing to give it to you, good for you.

24          MR. VARGA:  Right.

25          MR. LEDSKY:  Thank you, your Honor.

                                                              12

1          MR. VARGA:  Thank you, your Honor.

2          THE COURT:  Thank you.

3     (Which were all the proceedings had at the hearing of the

4 within cause on the day and date hereof.)

5                    CERTIFICATE

6          I HEREBY CERTIFY that the foregoing is a true,

7 correct and complete transcript of the proceedings had at the

8 hearing of the aforementioned cause on the day and date

9 hereof.

10

11 _____        _____
   Official Court Reporter                       Date
12 U.S. District Court
   Northern District of Illinois
13 Eastern Division

14

15

                         Page 10

4-4-06 Hearing Transcript.txt

16
17
18
19
20
21
22
23
24
25