UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. | ) | |
| MORTGAGE LENDING PRACTICES | ) | MDL No. 1715 |
| LITIGATION | ) | Lead Case No. 05-CV-7097 |
| | ) | |
| | ) | Centralized before the |
| | ) | Honorable Marvin E. Aspen |
| | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiffs in this multi-district litigation ("MDL"), homeowners who obtained mortgages from Ameriquest Mortgage Company or its affiliates (collectively, "Ameriquest"), filed motions for class certification and for a preliminary injunction on January 11, 2006. Recognizing that we are unable at this early stage of the litigation to expeditiously rule on those motions, Plaintiffs seek interim injunctive relief ordering Ameriquest to issue notice to borrowers who may face foreclosure before class-wide relief can be determined. Over Ameriquest's objection, we grant the limited injunction for the reasons discussed below.

### BACKGROUND

On December 14, 2005, the MDL Panel transferred this centralized lending practices litigation to us. Additional cases from across the country continue to join the MDL action, and we expect further transfers throughout the next several months. To assist with case management, we have asked the parties to provide case organization plans at our next status hearing on June 13, 2006. In light of this state of flux, it would be improvident for us to rule immediately on Plaintiffs' motions for class certification and preliminary injunction. In the meantime, therefore,

we address Plaintiffs' concern that some Ameriquest borrowers may lose their homes despite the potential existence of a defense to foreclosure.

Plaintiffs allege that Ameriquest violated certain disclosure provisions of the Truth in Lending Act ("TILA") and its implementing regulations ("Regulation Z"). *See* 15 U.S.C. § 1635; 12 C.F.R. § 226.23. First, Ameriquest purportedly provided incomplete Notice of Right to Cancel forms ("NORTC") to borrowers. Specifically, Ameriquest delivered NORTCs that failed to identify the deadline upon which the borrower could rescind the transaction. Second, Plaintiffs claim that Ameriquest provided the wrong form to refinancing borrowers. Rather than using the H-9 form recommended in Regulation Z, Ameriquest gave borrowers an H-8 form, which allegedly is not approved for refinancing disclosures.

Plaintiffs argue that these failures to comply with TILA constitute material violations entitling affected borrowers to cancel their mortgages for up to three years from the date of the transaction.[1] *See* 15 U.S.C. § 1635(h); 12 C.F.R. § 226.23(a)(3). If a borrower rescinds a mortgage, he or she is no longer responsible for finance or other charges, and the lender loses its security interest. 15 U.S.C. § 1635(b). As such, proper and timely rescission of a mortgage derails a foreclosure action. Once a foreclosure sale is completed, however, a borrower can no longer cancel the mortgage. 15 U.S.C. § 1635(f). Thus, Plaintiffs contend, certain Ameriquest borrowers facing foreclosure may unknowingly be entitled to extended rescission rights but lose their defense if they fail to act prior to the impending property sale. Ameriquest apparently does not dispute Plaintiffs' description of TILA rights and remedies, or the fact that certain borrowers

---

[1] Plaintiffs observe that Massachusetts law lengthens the extended TILA rescission period to four years. (Pls.' Mem. Supp. Mot. for Prelim. Inj. at 3, n.2; Pls.' Mem. Concerning Potential Foreclosures at 5-6, n. 3.)

may lose their homes despite having extended rescission rights. Nonetheless, it opposes the notice sought by Plaintiffs on several other grounds, addressed in turn below.[2]

## ANALYSIS

*A.     Request for Notice to Borrowers Facing Foreclosure*

As Plaintiffs seek a temporary restraining order requiring notice to a subset of putative class members, we evaluate their request under the familiar standards for preliminary injunction.[3] To obtain such relief, the moving party must show that its case has some likelihood of success on the merits, that no adequate remedy at law exists, and that it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *Nav-Aids Ltd. v. Nav-Aids USA, Inc.*, No. 01 C 0051, 2001 WL 1298719, at *4 (N.D. Ill. Oct. 25. 2001). If these three conditions are met, we must then balance the hardships the moving party will suffer in the absence of relief against those the nonmoving party will suffer if the injunction is granted. *Ty, Inc.*, 237 F.3d at 895. Finally, we consider the public interest – that is, the interest of non-parties – in deciding whether to grant injunctive relief. *Id.* We weigh all these factors, "'sitting as would a chancellor in equity.'" *Id.* (*quoting Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). We use a "sliding scale approach" in conducting this

---

[2]Because both parties refer to their briefs on the preliminary injunction and class certification motions, we also consider the arguments contained therein where pertinent to this issue. We reiterate, however, that we do not address the ultimate merits of those motions at this time and evaluate only the more limited question of whether temporary injunctive relief is necessary to protect the rights of the subset of putative class members who face foreclosure despite the potential existence of extended rescission rights.

[3]The standards governing temporary restraining orders and preliminary injunctions are identical. *Motor Werks Partners, L.P. v. BMW of N. Am., Inc.*, No. 01 C 7178, 2001 WL 1136145, at *1, n.1 (N.D. Ill. Sept. 24, 2001).

analysis, whereby the likelihood of success on the merits and the balance of irreparable harms are inversely proportional. *Id.*; *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir. 1994). This sliding scale analysis "is not mathematical in nature" but is "'subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" *Ty, Inc.*, 237 F.3d at 895 (*quoting Abbott Labs.*, 971 F.2d at 12).

### 1. *Likelihood of Success on the Merits*

To establish a likelihood of success, Plaintiffs need show only that they have a "better than negligible" chance of prevailing on the merits.[4] *Am. Gen'l Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 803-804 (7th Cir. 2002); *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999); *Nav-Aids Ltd.*, 2001 WL 1298719, at *4. Here, Plaintiffs must demonstrate that Ameriquest provided improper NORTCs to borrowers. *See* 15 U.S.C. § 1635; 12 C.F.R. § 226.23(b)(1); *Briggs v. Provident Bank*, 349 F. Supp. 2d 1124, 1129 (N.D. Ill. 2004). To prevail, they will be required to show that Ameriquest delivered NORTCs that omitted the rescission deadline, that were not intended for the type of transaction at issue, or both. Plaintiffs need not prove that they were mislead or suffered any actual damages from the purported TILA violations. *Jones v. Ameriquest Mortgage Co.*, No. 05 C 0432, 2006 WL 273545, at *2 (N.D. Ill. Jan. 31, 2006) (*citing Brown v. Marquette Sav. & Loan Assoc.*, 686 F.2d 608, 614 (7th Cir. 1982)). Indeed, the Seventh Circuit recognizes that "hypertechnicality reigns in the application of TILA." *Smith v.*

---

[4]Ameriquest contends that Plaintiffs cannot succeed on the merits as a matter of law because class actions seeking declaratory relief regarding rescission rights are barred by TILA. (*See* Def.'s Reply to Pls.' Mem. Concerning Potential Foreclosures at 2-5; Def.'s Opp. to Pls.' Mot. Prov. Class Cert. at 5-7.) Like other class certification issues, however, we will not address this argument until all parties and putative classes have been identified and have had an opportunity to be heard in this Court. We will decide this question, along with the preliminary injunction and class certification motions, at the appropriate time.

*Cash Store Mgmt.*, 195 F.3d 325, 328 (7th Cir. 1999); *see also Jones*, 2006 WL 273545, at \*2 (commenting that TILA "imposes a kind of strict liability on the lender"); *Adams v. Nationscredit Fin. Servs. Corp.*, 351 F. Supp. 2d 829, 833 (N.D. Ill. 2004) (same).

In support of their claims for injunctive relief, Plaintiffs submitted declarations of counsel presenting copies of more than 150 incomplete NORTCs and more than forty improper H-8 forms delivered to Ameriquest borrowers. In addition, Plaintiffs filed fifteen declarations from a sampling of putative class members, who also provided the allegedly incorrect forms received at their closings. For example, two such borrowers, Timothy and Cynthia Dion, stated that they did not receive copies of NORTCs with their refinancing transaction or rescission dates completed. (Dion Decl. ¶ 7 (Docket No. 63).) The Dions further declared that although Cynthia filed for Chapter 13 bankruptcy to prevent Ameriquest from foreclosing on their home, Ameriquest continues to take steps to complete the foreclosure.[5] (*Id.* ¶¶ 8-9.) Plaintiffs submitted similar declarations from named plaintiffs Lynn Gay, Duval Naughton, Daisybel and William Tolbert, and David and Janet Wakefield. (*See* Docket Nos. 61, 65, 69, 73.) The NORTCs supporting their declarations are also either incomplete, improper for the particular loan described by the declarant, or both. (*See id.*) Accordingly, Plaintiffs presented documentary and testimonial evidence of Ameriquest's repeated failure to include mandatory rescission information and to provide H-9 forms for refinancing transactions with the same lender.

In response, Ameriquest argues that the NORTC forms provided by Plaintiffs' counsel

---

[5] Ameriquest's foreclosure of the Dions' home was not stayed by the provisions of the February 7, 2006 Stipulation for Standstill agreed upon by the parties.

constitute inadmissible hearsay. However, "hearsay can be considered in entering a preliminary injunction." *SEC v. Cherif*, 993 F.2d 403, 412, n.8 (7th Cir. 1991); *see Ty, Inc.*, 132 F.3d at 1171 (hearsay affidavits admissible for preliminary injunction); *see also Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 718-720 (3d Cir. 2004) (identifying numerous circuits permitting use of hearsay materials in preliminary injunction proceedings); *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986) (hearsay acceptable for injunction determination); *Central States, S.E. & S.W. Areas Pension Fund v. Breeko Corp.*, No. 89 C 6866, 1989 WL 153547, at *3 (N.D. Ill. Nov. 20, 1989) (same). As the Supreme Court has observed, "a preliminary injunction is customarily granted on the basis of procedures less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834 (1981). "The dispositive question is not [the evidence's] classification as hearsay but whether, weighing all the attendant factors, this type of evidence [is] appropriate given the character and objectives of the injunctive proceeding." *Asseo*, 805 F.2d at 26. Keeping these principles in mind, we do not deem counsel's declarations to be hearsay so untrustworthy as to ignore their value altogether. Given the size of the putative class, the stage of this litigation, the purpose of the relief sought, counsel's declarations that Ameriquest borrowers in fact provided them with the NORTCs, and the number, consistency and clarity of the forms themselves, it is appropriate to consider the NORTCs submitted by counsel.[6]

Ameriquest also argues that most of the borrowers identified by Plaintiffs acknowledged that they received compliant NORTCs. In support of their defense, Ameriquest provided copies

---

[6]Even if we concluded otherwise, the fifteen representative declarations provided by Plaintiffs would be sufficient to demonstrate a likelihood of success on the merits.

from their files of completed NORTCs executed by 132 of the same borrowers who provided Plaintiffs' counsel with incomplete forms. (*See* Docket Nos. 16 (Decl. of Daniel S. Blinn), 42 (Decl. of Michael Gibson).) These 132 borrowers apparently signed and dated the forms, expressly acknowledging "receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with the Truth in Lending Simplification and Reform Act of 1980." (*See* Decl. of Michael Gibson (Docket No. 42).) Ameriquest mistakenly suggests that these completed forms with signed acknowledgments foreclose the possibility of Plaintiffs' success. (Def.'s Reply to Pls.' Mem. Concerning Potential Foreclosures at 2.)

To the contrary, TILA states that a written acknowledgment "does no more than create a rebuttable presumption of delivery." 15 U.S.C. § 1635(c); *see Briggs v. Provident Bank*, 349 F. Supp. 2d 1124, 1129 (N.D. Ill. 2004). Borrowers can attempt to overcome this presumption with testimony about their closings and what documents they received (or did not receive), as well as by presenting copies of NORTCs from their own records. *Briggs*, 349 F. Supp. 2d at 1129; *see also Cooper v. First Gov't Mortgage & Investors Corp.*, 238 F. Supp. 2d 50, 63-65 (D.D.C. 2002); *In re Rodrigues*, 278 B.R. 683, 687-688 (Bankr. D.R.I. 2002). Although such conflicting evidence may not be sufficient to warrant summary judgment for either party, the existence of signed acknowledgments in Ameriquest's files certainly does not preclude Plaintiff's eventual success on the merits.[7]

---

[7]Ameriquest's introduction of the signed NORTCs does not create a genuine issue of material fact necessitating an evidentiary hearing. Moreover, we do not believe Ameriquest – even if it had requested a hearing – would provide further evidence that would "so weaken [Plaintiffs'] case as to affect" our decision. *Ty, Inc.*, 132 F.3d at 1171.

Nonetheless, the acknowledgments pose a hurdle Plaintiffs must clear to prevail. In light of the strict liability TILA imposes on lenders, the contradictory evidence before us and the relatively low burden Plaintiffs bear to rebut the presumption of receipt, we conclude that Plaintiffs sufficiently established that they have a "better than negligible" chance of prevailing on the merits. *See Am. Gen'l Corp.*, 311 F.3d at 803-804.

### 2. *Inadequate Remedy at Law and Irreparable Harm*

Because Plaintiffs demonstrated a likelihood of success on the merits, we next consider whether they also established an inadequate remedy at law and, relatedly, irreparable harm. *See Lorillard Tobacco Co. v. Montrose Wholesale Co.*, Nos. 03 C 4844 & 03 C 5311, 2005 WL 3115892, at *16 (N.D. Ill. Nov. 8, 2005) (movant "must show that it has no adequate remedy at law and, as a result, it will suffer irreparable harm"). Plaintiffs stress that the subset of class members facing imminent foreclosure will suffer irreparable harm by losing their homes despite possible extended rescission rights. They argue that there can be no remedy at law sufficient to compensate them financially: (1) for this loss of unique real property; and (2) for the avoidable termination of their rescission rights. (Pls.' Mem. Supp. Mot. Prelim. Inj. at 13.)

Ameriquest contends that TILA provides adequate notice of the right to rescind and sufficient remedies in the form of rescission, actual damages and statutory penalties. (Def.'s Reply to Pls.' Mem. Concerning Potential Foreclosures at 7.) Accordingly, no additional notice is required under TILA to provide Plaintiffs with a remedy sufficient to cure the alleged harm. Somewhat ironically, Ameriquest thus claims that the NORTCs described in Regulation Z are the only notices regarding rescission permitted by TILA. Regardless, Rules 23 and 65 – and not TILA – grant us the authority to issue the notice sought by Plaintiffs. The language of TILA

-8-

does not limit our power to do so.  If anything, the additional notice to borrowers would further the purposes of TILA, protecting Congressionally-mandated consumer rights and family homes.

Ameriquest also alleges that putative class members will not suffer irreparable harm if they do not receive notice of potential extended rescission rights because individual state laws require ample notice of foreclosure actions, allowing borrowers to present any available defenses.  (Def.'s Reply to Pls.' Mem. Concerning Potential Foreclosures at 6; Def.'s Opp. to Pls.' Mot. Prelim. Inj. at 12, App. 1.)  A general notice of foreclosure is markedly different from a court-ordered notice that federal rights may shield a homeowner from foreclosure (even if temporarily) due to disclosure violations allegedly committed by their mortgage company. Ameriquest does not suggest, for example, that the state notices inform borrowers of the extended rescission rights potentially applicable to their circumstances.  Armed with this specific information, borrowers may take steps to prevent foreclosure they otherwise would not. Nonetheless, the harm at issue is not the failure to receive a certain type of notice; the notice Plaintiffs seek is simply the means of avoiding the *real* harm – the unintended lapse of rescission rights and loss of residence pending our decision on Plaintiffs' motions.

Indeed, Ameriquest noticeably fails to rebut Plaintiff's argument that certain borrowers will lose their homes in the near future, despite the fact that they may be entitled to rescind.  "A piece of property is always considered unique, and its loss is always an irreparable injury." *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982); *see Pelfresne v. Village of Williams Bay*, 865 F.2d 877, 883 (7th Cir. 1989).  Ultimately, there can be no adequate remedy at law for loss of a home.

   3.     ***Balance of the Hardships***

Having concluded that putative class members will suffer irreparable harm with no adequate legal remedy, we also balance the hardships the parties would face as a result of our decision. In doing so, we keep in mind Plaintiffs' likelihood of success on the merits. Although Plaintiffs have a " better than negligible" chance of prevailing, they must show that the balance of hardships tips well in their favor. *See Am. Gen'l Corp.*, 311 F.3d at 803-804.

According to Ameriquest, the putative class will suffer no hardship. On the other hand, Ameriquest will face: (1) a rash of improper requests for rescission; (2) negative publicity and loss of goodwill; and (3) significant financial burden, if numerous foreclosures are stayed while notices are distributed. (Def.'s Opp. to Pls.' Mot. Prelim. Inj. at 13.) Plaintiffs respond that, while class members will suffer the irreparable injuries addressed above, Ameriquest faces little hardship. (Pls.' Mem. Supp. Mot. Prelim. Inj. at 14.) In addition, because Ameriquest holds a security interest in borrowers' homes, it should suffer no harm. (*Id.*)

In our view, the balance of hardships tips heavily in Plaintiffs' favor. While we appreciate the costs that Ameriquest would shoulder in issuing notices and investigating rescission requests (the merits of which remain to be seen), its burden cannot compare to the hardship that would be suffered by class members who may lose their homes and rescission rights despite the existence of a complete defense under TILA.

### 4. *Public Interest*

Turning to the final step of our analysis, we find that the public interest would be better served by granting the requested temporary injunction. TILA exists to ensure that unsophisticated borrowers make informed decisions about credit. 15 U.S.C. § 1601; *see Jones*, 2006 WL 273545, at *2; *Adams,* 351 F. Supp. 2d at 832. Plaintiffs' proposed notice to putative

class members will enable them to make informed decisions about how to respond to the impending foreclosure on their mortgages in light of the alleged disclosure violations, effectuating the purposes underlying TILA.

Although Ameriquest fears confusion among its borrowers, the proposed notice does not appear to be overly legalistic or misleading. Nonetheless, Ameriquest's concerns may be alleviated through negotiation of the language of the notice. Accordingly, we invite the parties to discuss the language, timing and method of delivery of the notice as soon as possible. Plaintiffs' counsel is to file a mutually-agreeable notice by or on June 13, 2006, and shall also specify any terms for delivery. If the parties cannot agree, counsel shall submit competing proposals on June 13.

## B.     *Request for Bond*

Rule 65, as well as Seventh Circuit precedent, requires Plaintiffs to provide security to cover "costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141 (7th Cir. 1994); *see also Lorillard Tobacco Co.*, 2005 WL 3115892, at *18. While we have discretion to set the amount of the bond, the parties have not provided us with any information about what might constitute an appropriate amount. We therefore order Ameriquest to submit, along with any supporting evidence, a request for a particular amount (or a range) of security. Ameriquest must file this request on or by June 7, 2006, and Plaintiffs may respond by June 13.

## CONCLUSION

For the reasons set forth above, we hereby grant Plaintiffs' motion for temporary injunctive relief. Once the terms, timing and delivery method of the requested notice are finalized, Ameriquest will be required to deliver such notice to its mortgagees who face foreclosure prior to our decisions on Plaintiffs' motions for preliminary injunction and class certification. The injunction will terminate (or will be supplemented) upon issuance of those decisions.

As discussed above, the parties must negotiate the language, timing and delivery of the notice and file an agreed proposal addressing these issues by June 13, 2006. If they cannot agree, the parties shall file separate proposals on or by the same date.

Finally, Ameriquest has until June 7, 2006 to file a specific and supported bond request. Plaintiffs may respond on or by June 13. It is so ordered.

Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: May 30, 2006