# EXHIBIT 1

RECEIVED

MAR 29 2006

MICHAEL ⁚ ⁚ ⁚⁚ ⁚⁚
CLERK, U.S. ⁚⁚⁚⁚⁚ ⁚⁚ ⁚⁚URT

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DOUGLAS and EVELYN GEIS, | ) | No. |
| | ) | |
| Plaintiffs, | ) | **06C** ⁚ ⁚ ⁚⁚ |
| | ) | |
| vs. | ) | |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | JUDGE AMY ST. EVE |
| AMC MORTGAGE SERVICES, INC. | ) | |
| and DEUTSCHE BANK NATIONAL | ) | JURY TRIAL DEMAND |
| TRUST COMPANY, | ) | MAGISTRATE JUDGE ASHMAN |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### INTRODUCTION

1.     Plaintiffs Douglas and Evelyn Geis charge defendants with violation of the Truth in Lending Act and failure to honor a valid rescission request in violation of 15 U.S.C. § 1635.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claim arises under federal law.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

### PARTIES

4.     Defendant Ameriquest Mortgage Company is a leading sub-prime mortgage lender. The company's main offices are in Orange, California, but it does business in this district. Defendant AMC Mortgage Services, Inc. services Ameriquest mortgages and has the right to receive payments thereunder and does business in this district. Defendant Deutsche Bank

National Trust Company is the owner of plaintiff's mortgage and also does business in this district.

5.      Plaintiffs Douglas and Evelyn Geis are residents of Nevada.

<strong>BACKGROUND</strong>

6.      In or about April 2005, plaintiffs Douglas and Evelyn Geis decided to refinance their home mortgage to obtain money to improve their property and pay off personal debts.

7.      Mr. Geis spoke repeatedly by telephone to a representative of Ameriquest, who made a number of statements that turned out not to be true. For example, the Ameriquest representative originally said their interest rate would be 8.1% (the eventual APR was 10.383%), that taxes and insurance would be included in the house payments and that the Geises would be able to refinance six months later at a lower rate. The Ameriquest representative also advised Mr. Geis to stop paying his other creditors since they would be taken care of pursuant to the refinancing.

8.      On Friday, April 15, 2005, Ameriquest told Mr. and Mrs. Geis to go to a local Denny's restaurant. There they met with a notary public sent by Ameriquest who had a large stack of papers, which the notary had Mr. and Mrs. Geis sign. One of those documents said that the Geises' right to cancel expired on April 18, 2005. See Exhibit A. Another document said that Mr. and Mrs. Geis would forfeit $250 if they tried to back out of the deal. See Exhibit B.

9.      According to the Ameriquest CLOSING AGENT AFFIDAVIT, a copy of which is attached as Exhibit C, the Geis refinancing transaction closed on April 15, 2005. A copy of the final TRUTH-IN-LENDING DISCLOSURE STATEMENT is attached hereto as Exhibit D. A copy of the BORROWER'S ACKNOWLEDGEMENT OF FINAL LOAN TERMS is attached hereto as Exhibit E. A (reduced in size) copy of the Settlement Statement is attached hereto as Exhibit F. A copy of the first two pages of the ADJUSTABLE RATE NOTE is attached hereto as Exhibit G. According to these documents, the initial interest rate on the Geis loan was 8.4% but the interest rate could go up to as high as 14.4%. Mr. and Mrs. Geis paid $15,349.46 in settlement charges to obtain this loan.

2

10.     A few days later, on or about April 19, 2005, Mr. and Mrs. Geis met again at the Denny's with the notary to sign some more documents. After the signing, the notary kept all the documents. The notary did not give any copies to Mr. and Mrs. Geis.

11.     Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

## REGULATORY FRAMEWORK

12.  The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

13.  Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

14.  Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

15.  The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages

3

with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

16. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

17. To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

4

18. Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. § 226.23(a)(1).

19. The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose" the consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1)

20. More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
>> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>>
>> (ii) The consumer's right to rescind the transaction.
>>
>> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>>
>> (iv) The effects of rescission, as described in paragraph (d) of this section.
>>
>> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

5

21. Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

> When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

22. Subparagraph (d)(2) states:

> Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. § 226.23(d)(2).

23. The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. The commentary provides:

> The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded. "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.

## DEFECTIVE GEIS DISCLOSURES

24. Ameriquest's rescission disclosures to Mr. and Mrs. Geis were defective in a number of respects. First, the date on the notice of cancellation was wrong. The cancellation period did not end on April 18, 2005 and it was a violation of Regulation Z to say that it did.

25. The statute provides that "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later ...." 15 U.S.C. § 1635(a).

6

26. Mr. and Mrs. Geis signed additional TILA documents on or about April 19, 2005, but they were not given copies of those documents. Hence those material disclosures (whatever they were) were not delivered to the Geises. See 12 C.F.R. § 226.17(a)(1) ("The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep"). Because the material disclosures have not yet been delivered, the rescission period did not expire.

27. Indeed, the April 18 expiration date would have been wrong even if the required documents had been delivered to plaintiffs on April 15, 2005. April 15, 2005 was a Friday. The statute gives borrowers three **business** days to rescind. Sunday, April 17, 2005, was not a business day. If the disclosures had been delivered on April 15, 2005, then the notice should have said the right to rescind expired on April 19, 2005. The April 18 representation in the notice violated 12 C.F.R. § 226.23(b)(1)(v).

28. Ameriquest also misrepresented the effects of rescission in violation of 12 C.F.R. § 226.23(b)(1)(iv). Ameriquest charged Mr. and Mrs. Geis a $250 appraisal fee deposit and stated, in one document, that "[t]he deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal." The Ameriquest representative also told Mr. Geis that the appraisal deposit was not refundable if they decided not to go through with the deal.

29. This is inconsistent with plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

30. The disclosures were also deficient because Ameriquest did not deliver to Mr. and Mrs. Geis the requisite number of copies of their Notice of Right to Cancel forms.

## TILA RIGHTS AND REMEDIES

31.   One remedy for disclosure violations of 15 U.S.C. § 1635 is statutory damages pursuant to 15 U.S.C. § 1640. A plaintiff in a TILA case need not prove that he or she suffered actual monetary damages in order to recover statutory damages. Nor is it necessary to show that the consumer was actually misled or deceived. The Truth in Lending Act allows a monetary recovery even if the disclosure violation caused the borrower no harm. In an individual mortgage case, statutory damages are twice the finance charge, provided however that the damages may not be less than $200 nor more than $2,000. Plaintiffs are entitled to appropriate statutory damages from Ameriquest.

32.   Statutory damages are not the only remedy. Under the Truth in Lending Act, if the rescission disclosures or TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

33.   Ameriquest's rescission and TILA disclosures were defective. Accordingly, Mr. and Mrs. Geis sent a rescission notice to Ameriquest and to Deutsche Bank National Trust Company, the current owner of their mortgage, on October 20, 2005. See Exhibit H.

34.   Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiffs' home and paid back to plaintiffs any money or property that plaintiffs have paid to them in connection with the loan. See 12 C.F.R. § 226.23(d)(2). Defendants have not done either.

35.   Defendants' failure to honor the rescission request is a separate violation of the Truth in Lending Act. Plaintiffs are entitled to rescission plus statutory damages and other relief.

8

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a.    canceling defendants' security interest in plaintiffs' home and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

b.    awarding plaintiffs actual damages proximately caused by defendants' failure to comply with 12 C.F.R. § 226.23(d)(2);

c.    awarding appropriate statutory damages;

d.    ordering Defendant to pay costs, penalties, and attorneys fees;

e.    granting such other relief as the Court deems just and proper.

Respectfully submitted by:

_____

Counsel for the Plaintiffs

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 960-1802

9

# EXHIBIT A

01/01/2002  00:22    7756267752

# NOTICE OF RIGHT TO CANCEL

LENDER:  Ameriquest Mortgage Company

DATE:  April 15, 2005
LOAN NO.:  0118881285 - 7413
TYPE:  ADJUSTABLE RATE

BORROWER(S): Douglas F Geis          Evelyn N Geis

ADDRESS:       1061 Harbor Town Circle
CITY/STATE/ZIP:   Sparks, NV 89436

PROPERTY:  1061 Harbor Town Circle
            Sparks, NV  89436

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

**ENTER DOCUMENT SIGNING DATE**

04/15/05

   or
2. The date you received your Truth in Lending disclosures;
   or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1600 S Douglass Rd
Anaheim, CA 92806

ATTN:  FUNDING
PHONE: (714)634-3494
FAX:    (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**

04/18/05

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____          _____
SIGNATURE                          DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_Douglas H. Geis_  04/15/05          _Even N. Geis_  4/15/9
BORROWER/OWNER Douglas F Geis     Date     BORROWER/OWNER Evelyn N Geis     Date

_____  ____     _____  ____
BORROWER/OWNER              Date     BORROWER/OWNER              Date


1994-NRC (Rev 11/87)

**BORROWER COPY**

04/15/2005 3:39:12 PM

# EXHIBIT B

Oct-04-05  12:26pm  From-AMERIQUEST                    +714           T-165  P.009/009  F-309

Loan Number: 0116881285 - 7413

# ADVANCE FEE AGREEMENT

| Borrower Name(s): | Lender: |
|---|---|
| Douglas Frank Geis<br>Evelyn Nicole Geis | Ameriquest Mortgage Company<br><br>5847 San Felipe St., Suite 1400<br>Houston, TX 77057 |
| Property Address:<br><br>1061 Harbor Town Circle<br>Sparks, NV 89436 | Date:<br>April 8, 2005 |

## ADVANCE FEES

The following fees are being charged in connection with the processing of your loan application. Other fees not shown here may be payable later and are shown on the Good Faith Estimate of Closing Costs. Nonrefundable fees are subject to applicable limitations of state or federal law.

| Name of Fee | Amount | Important Information |
|---|---|---|
| Appraisal Fee Deposit | $ 250.00 | The deposit will be applied toward the total cost of the appraisal, which may exceed the amount of the deposit. The deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal. |
| Credit Report Deposit | $ | The deposit will be applied toward the total cost of the credit report, which may exceed the amount of the deposit. The deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the credit report. |
| Total Advance Fees | $ 250.00 | (Nev. Rev. Stat. Ann. Sec 645B.165) |

## LENDER CONTACT

If you have any questions regarding your application, please contact:

    Name: BRANCH MANAGER
    Lender's Name: Ameriquest Mortgage Company
    Lender's Address: 5847 San Felipe St., Suite 1400 Houston, TX 77057
    Telephone Number: (714)937-3213

I/We have read the above disclosure and acknowledge receiving a copy by signing below.

| | | | |
|---|---|---|---|
| Borrower Douglas Frank Geis | Date | Borrower Evelyn Nicole Geis | Date |
| Borrower | Date | Borrower | Date |



1048(NV) (9510)                    VMP MORTGAGE FORMS - (800)521-7291                    10/95

0000011688128590402040101

# EXHIBIT C

01/01/2002  00:22    7755267752                    DOUG GEIS                    PAGE  03

# Ameriquest Mortgage Company

## CLOSING AGENT AFFIDAVIT

Closing Agent Name:  CT MORTGAGE INFORMATION SVCS.          Date of Closing: 04/15/2005

Closing Agent Address: 2689 N. COMMERCE PARKWAY  MIRAMAR,          Loan Number: 0116881285 - 7413
FL 33025

Borrower Name(s):    Douglas F Geis
Evelyn N Geis

Property Address:    1061 Harbor Town Circle
Sparks, NV 89436

I, _____ certify the loan was closed on _April 15, 2005_

And I hereby certify the following:

All loan documents are properly signed, dated and where applicable notarized.

The rescission notice is properly filled in. (The start date is the date of signing and the end date is three business days later. Business days not including Sundays or legal holidays or days prohibited by state law)

Copies of all documents were given to the borrower(s).

All Borrower questions have either been answered or referred to the appropriate Ameriquest Mortgage Company branch.

_____
Closing Agent Signature

HEDY GRIEGO
Notary Public State of Nevada
Appointment No. 04-56900-2
My Appt. Expires Feb 7, 2007

Closing Agent Letter (6/04)

# EXHIBIT D

JAN. 6. 2006 11:02AM       SSA NEXU 945                    NO. 0124   P. 2/4

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Ameriquest Mortgage Company
5847 San Felipe St., Suite 1400
Houston, TX 77057
(714)937-3213

[X] Preliminary    [ ] Final

Broker License:

Borrowers: Douglas Frank Geis     Evelyn Nicole Geis

Type of Loan: ADJUSTABLE RATE
Date: April 8, 2005

Address:
City/State/Zip:

Loan Number: 0116881285 - 7413

Property:   1081 Harbor Town Circle, Sparks, NV 89436

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| (e) 10.317  % | $  508,334.32 (e) | $  218,897.33 (e) | $  727,231.65 (e) |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 36 | (e) $1,807.62 | 06/01/2005 | | | |
| 323 | (e) $2,043.71 | 06/01/2008 | | | |
| 1 | (e) $2,039.00 | 05/01/2035 | | | |

**VARIABLE RATE FEATURE:**
[X]  Your loan has a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**    You are giving a security interest in the property located at: 1081 Harbor Town Circle, Sparks, NV 89436

**ASSUMPTION:**  Someone buying this property    [X]  cannot assume the remaining balance due under original terms.
[ ]  may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

**LATE CHARGES:**  If a payment is late, you will be charged  5.000%  of the overdue payment .

**PREPAYMENT:**  If you pay off your loan early, you
[X]  may    [ ]  will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.
**(e) = estimate**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____    _____    _____
Borrower Douglas Frank Geis              Date       Borrower Evelyn Nicole Geis              Date

_____    _____    _____    _____
Borrower                                 Date       Borrower                                 Date

TIL1 (Rev. 7/01)

**BORROWER COPY**

04/08/2005 2:00:22 PM

# EXHIBIT E

SEP-08-2005 07:29     SSA REND

Ameriquest Mortgage Company
6847 San Felipe St., Suite 1400
Houston, TX 77057

(714)937-3213

## BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

Douglas F Geis
Evelyn N Geis

Date: April 15, 2005

Notice: [X] Delivered   [ ] Mailed

Loan Number: 0116881285 - 7413

Description of Credit Request:

1081 Harbor Town Circle
Sparks, NV 89436

[X] 1st Trust Deed/Mortgage   [ ] 2nd Trust Deed/Mortgage

[ ] Other: _____

Property Address: 1081 Harbor Town Circle

Sparks, NV 89436                    County of WASHOE

## TYPE OF TRANSACTION:

[ ] Purchase   [X] Refinance   Other _____

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [ ] Fixed Rate Loan  [X] Adjustable Rate Loan | [ ] Fixed Rate Loan  [X] Adjustable Rate Loan |
| Amount Financed: $ 218,897.33 | Amount Financed: $ 246,940.98 |
| Settlement Charges: $ 14,146.87 (Includes all Prepaid Finance Charges) | Settlement Charges: $ 15,349.46 (Includes all Prepaid Finance Charges) |
| Loan Amount: $ 231,873.00 | Loan Amount: $ 260,700.00 |
| Annual Percentage Rate: 10.317 % | Annual Percentage Rate: 10.383 %* |
| Term: 360 | Term: 360 |
| Initial Interest Rate: 8.650 % | Initial Interest Rate: 8.400 % |
| Margin: 6.749 % | Margin: 6.750 % |
| Prepayment Penalty: [X] YES  [ ] NO | Prepayment Penalty: [X] YES  [ ] NO |

Borrower(s) and Ameriquest Mortgage Company hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

_Douglas F Geis 04/15/05_
Borrower Douglas F Geis          Date

_Evelyn N Geis_
Borrower Evelyn N Geis          Date

_____          _____
Borrower          Date          Borrower          Date

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.

STMTCD (Rev. 2/??)

# EXHIBIT F

| Settlement Statement<br>Optional Form for<br>Transactions without Sellers | U.S. Department of Housing<br>and Urban Development | OMB Approval No. 2502-0491<br>File No.: 200000694021 |
|---|---|---|

| Name & Address of Borrower:<br>Douglas F. Geis and Evelyn N. Geis<br>1061 Harbor Town Circle<br>Sparks, NV 89436 | Name & Address of Lender:<br>Ameriquest Mortgage Company<br>5847 San Felipe, Ste 1400<br>Houston, TX 77057 |
|---|---|

Property Location:

1061 Harbor Town Circle
Sparks, NV 89436

Loan Number: 0116881285 - PRELIM

Settlement Agent: Mortgage Information Services, Inc
Place of Settlement: 4877 Galaxy Parkway, Suite 1
Cleveland, OH 44128

Settlement Date: 4/15/2005
Fund Date: 4/22/2005

**L. Settlement Charges**

**M. Disbursements to Others**

| | | |
|---|---|---|
| 700. Items Payable in Connection with Loan | | |
| 801. Loan Origination Fee % to Ameriquest Mortgage Company | | |
| 802. Loan Discount 4.344 % to Ameriquest Mortgage Company | $11,330.02 | |
| 803. Appraisal Fee | to Ameriquest Mortgage Company | $500.00 |
| 804. Credit Report | to | |
| 805. Lender's Inspection Fee | to | |
| 806. Mortgage Insurance Application | to | |
| 807. Assumption Fee | to | |
| 808. | to Ameriquest Mortgage Company | |
| 809. | to Ameriquest Mortgage Company | |
| 810. Tax Relate Service Fee | to Ameriquest Mortgage Company | $70.00 |
| 811. Flood Search Fee | to Ameriquest Mortgage Company | $9.00 |
| 812. Lenders Processing Fee | to Ameriquest Mortgage Company | $624.00 |
| 813. Admin Fee | to Ameriquest Mortgage Company | $239.00 |
| 814. | to Ameriquest Mortgage Company | |
| 817. Application Fee | to Ameriquest Mortgage Company | $360.00 |
| 900. Items Required by Lender to be Paid in Advance | | |
| 901. Interest from 4/22/2005 to 5/1/2005 @ $60.00 /day | $540.00 | |
| 902. Mortgage Insurance Premium for months to | | |
| 903. Hazard Insurance Premium for months to | | |
| 904. to | | |
| 1000. Reserves Deposited with Lender | | |
| 1001. Hazard insurance | months @ per month | |
| 1002. Mortgage insurance | months @ per month | |
| 1003. City property taxes | months @ per month | |
| 1004. County property taxes | months @ per month | |
| 1005. Assessment Taxes | months @ per month | |
| 1006. School property taxes | months @ per month | |
| 1007. Other taxes | months @ per month | |
| 1008. Other taxes | months @ per month | |
| 1009. | months @ per month | |
| 1010. | months @ per month | |
| 1011. Aggregate Adjustment | to Ameriquest Mortgage Company | |
| 1100. Title Charges | | |
| 1101. Settlement or closing fee | to Mortgage Information Services | $500.00 |
| 1102. Abstract or title search | to Mortgage Information Services | |
| 1103. Title examination | to Mortgage Information Services | $275.00 |
| 1104. Title insurance binder | to Mortgage Information Services | |
| 1105. Document preparation | to Mortgage Information Services | $125.00 |
| 1106. Notary fees | to | |
| 1107. Attorney's fees | to | |
| (includes above item numbers ) | | |
| 1108. Title insurance | to FIRST AMERICAN TITLE CO OF NV | $824.80 |
| (includes above item numbers ) | | |
| 1109. Lender's Coverage | $260,700.00/$0.00 | |
| 1110. Owner's Coverage | $0.00/$0.00 | |
| 1111. Escrow fee | to | |
| 1112. Insurance Premium Tax | to | |
| 1113. Alta 8.1 n/c | to FIRST AMERICAN TITLE CO OF NV | |
| 1114. Alta 9 Comp n/c | to FIRST AMERICAN TITLE CO OF NV | |
| 1115. Alta 6 adjustable rate n/c | to FIRST AMERICAN TITLE CO OF NV | |
| 1116. Survey Deletion n/c | to FIRST AMERICAN TITLE CO OF NV | |
| 1117. Hold Sig Fee | to Mortgage Information Services | $25.00 |
| 1118. DFI Fee | to Mortgage Information Services | |
| 1119. Quick Title Closing Fee | to Mortgage Information Services | |
| 1120. Special Assessments | to Mortgage Information Services | |
| 1200. Government Recording and Transfer Charges | | |
| 1201. Recording Fees: Deed $15.00; Mortg $38.00; Rel | | $53.00 |
| 1202. City/county tax/stamps: Deed ; Mortg | | |
| 1203. State tax/stamps: Deed ; Mortg | | |
| 1204. Tax certificates | to Mortgage Information Services | |
| 1205. Mortgage Tax (ild) | to Mortgage Information Services | |
| 1206. Intangible Tax (ild) | to Mortgage Information Services | |
| 1207. | to | |
| 1300. Additional Settlement Charges | | |
| 1301. Survey | to | |
| 1302. Payoff Fee | to Mortgage Information Services | |
| 1303. Property Val Fee | to Ameriquest Mortgage Company | |
| 1304. | to | |
| 1305. | to | |
| 1306. | to | |
| 1307. | to | |
| 1308. Quick Title Courier Fee | to Mortgage Information Services | $60.00 |
| 1400. Total Settlement Charges (enter on Line 1602) | | $15,548.21 |

| | | |
|---|---|---|
| 1501. Mortgage payoff<br>to Wells Fargo Home Mortgage | | $202,058.66 |
| 1502. Creditor<br>to Furniture | | $3,481.55 |
| 1503.<br>to | | |
| 1504.<br>to | | |
| 1505.<br>to | | |
| 1506.<br>to | | |
| 1507.<br>to | | |
| 1508.<br>to | | |
| 1509.<br>to | | |
| 1510.<br>to | | |
| 1511.<br>to | | |
| 1512.<br>to | | |
| 1513.<br>to | | |
| 1514.<br>to | | |
| 1515.<br>to | | |
| 1516.<br>to | | |
| 1517.<br>to | | |
| 1518.<br>to | | |
| 1519.<br>to | | |
| 1520. TOTAL DISBURSED (enter on line 1603) | | $205,540.21 |

**N. NET SETTLEMENT**

| | |
|---|---|
| 1600. Loan Amount | $260,700.00 |
| 1601. Plus Cash/Check from Borrower | $0.00 |
| 1602. Minus Total Settlement Charges (Line 1400) | $15,548.21 |
| 1603. Minus Total Disbursements to Others (Line 1520) | $205,540.21 |
| 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period required by law) | $39,610.97 |

Borrower's Signatures

*[signature]* Douglas F. Geis
Douglas F. Geis

*[signature]* Evelyn N. Geis
Evelyn N. Geis

| / Jennifer Balogh | 04/15/05 |
|---|---|
| Settlement Agent | Date |

# EXHIBIT G

SEP-02-2005 07:14     SSA MENU

Loan Number: 0116881285 - 7413

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.**

April 15, 2005          Orange          CA
Date                    City            State

1081 Harbor Town Circle, Sparks, NV 89436
Property Address

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 260,700.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Ameriquest Mortgage Company.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  8.400 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   June 1, 2005 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, May 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at:   505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,988.12. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of,  May, 2007   and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  six and three-quarters  percentage point(s) (6.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:
ENS

251-1 (Rev. 07/02)

1 of 3

04/15/2005 3:35:12 PM

Loan Number: 0116881285 - 7413

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.400** % or less than **8.400**%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One percentage point(s) 1.000%)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.400** % or less than **8.400** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Prepayment Made Three (3.00) year(s) After the Date of this Note**

I will not have to pay a prepayment charge if I make a prepayment on the Three (3.00) year anniversary of the date this Note is executed, or at any time thereafter.

**(B) Prepayment Made Within Three (3.00) year(s) of the Date of this Note**

I will pay Lender a prepayment charge if, in any twelve (12) month period before the Three (3.00) year anniversary of the date this Note is executed, I prepay more than 20% of the original principal balance of this Note. The prepayment charge will be six (6) months interest, at the rate then in effect on this Note, on the amount in excess of 20% of the original principal balance that I prepay within such 12 month period.

**(C) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(D) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.



201-2UHIV (Rev. 07/02)

2 of 3

Initials:

04/15/2005 3:33:12 PM

# EXHIBIT H

THE LAW OFFICES OF DANIEL HARRIS
150 N. WACKER DRIVE
SUITE 3000
CHICAGO, IL 60606
P. 312.960.1802 F. 312-960-1936
LAWOFFICEDH@YAHOO.COM

October 20, 2005

Ameriquest Mortgage Company
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

AMC Mortgage Services
PO Box 11000
Santa Ana, CA 92711-1100

AMC Mortgage Services
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

Ameriquest Mortgage Company
1600 S. Douglas Rd.
Anaheim, CA 92806

Deutsche Bank
1761 E. St. Andrew Place
Santa Ana, CA 92705

Deutsche Bank Berkshire Mortgage, Inc.
CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

Re:     Douglas & Evelyn Geis, 1061 Harbor Town Circle, Sparks, NV 89436, Loan #
011 6881285-7413.

To Whom It May Concern:

This firm represents Douglas and Evelyn Geis. The Geises hereby rescind the above loan. Their rescission period has not expired because the disclosures provided in April 2005 were defective under the Truth in Lending Act. Please cancel your security interest in the above property and return all property and money (including interest) that the Geises have paid in connection with the loan.

Please be further advised that we have been retained by the above clients and claim a lien of at least one-third of any recovery.

If you claim that the owner of the loan is other than yourself, please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may verify the accuracy of your remittance and the outstanding balance of the loan.

Sincerely,

Anthony Valach

I, Anthony Valach, under penalty of perjury, as provided for by 28 U.S.C. §1746, hereby certify on October 20, 2005 that I will cause a copy of the foregoing document sent to be delivered to the following addresses:

VIA US MAIL

Ameriquest Mortgage Company
PO Box 11000
Santa Ana, CA 92711-1100

Deutsche Bank
1761 E. St. Andrew Place
Santa Ana, CA 92705

AMC Mortgage Services
P.O. Box 11000
Santa Ana, CA 92711-1000

VIA HAND DELIVERY

Ameriquest Mortgage Company
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

AMC Mortgage Services
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

Deutsche Bank Berkshire Mortgage, Inc.
CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60606

Anthony Valach

# **EXHIBIT 2**

RECEIVED

APR ~ 6 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN and SHERRY WESSEL,                    )
                                            )       No. **06C 1899**
            Plaintiffs,                     )
                                            )       JUDGE KOCORAS
vs.                                         )
                                            )       MAGISTRATE JUDGE ASHMAN
AMERIQUEST MORTGAGE COMPANY,                )
AMC MORTGAGE SERVICES, INC.                 )       JURY TRIAL DEMAND
and DEUTSCHE BANK NATIONAL TRUST            )
COMPANY,                                    )
                                            )
            Defendants.                     )

## COMPLAINT

### INTRODUCTION

1.      Plaintiffs Kevin and Sherry Wessel charge defendants with violation of the
Truth in Lending Act through failure to honor a valid rescission request in violation of 15
U.S.C. § 1635. Plaintiffs also charge defendant Ameriquest with violation of the Illinois
Consumer Fraud statute.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to Title 28 of the United States Code,
Sections 1331 and 1337 because plaintiffs' claim under the Truth in Lending Act arises
under federal law.  This Court has supplemental jurisdiction over plaintiffs' claim under
state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104
Stat. 5089, 28 U.S.C. § 1367.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because
the defendants do business in this district. Also, the Judicial Panel on Multi-District
Litigation has issued an order centralizing predatory lending litigation against Ameriquest
in this district before Judge Aspen.

## PARTIES

4.     Defendant Ameriquest Mortgage Company is a leading sub-prime mortgage lender. The company's main offices are in Orange, California, but it does business in this district. Defendant AMC Mortgage Services, Inc. services Ameriquest mortgages and has the right to receive payments thereunder and does business in this district. Defendant Deutsche Bank National Trust Company is the owner of plaintiffs' mortgage and also does business in this district.

5.     Plaintiffs Kevin and Sherry Wessel are residents of Carlyle, Illinois.

## BACKGROUND

6.     In 2003, plaintiffs decided to refinance the mortgage on their home to pay off some personal debts. Toward the end of April 2003, plaintiff Kevin Wessel received a telephone call from Jeff Mohesky of Ameriquest. Mr. Mohesky asked Mr. Wessel if he had secured refinancing of his home mortgage. Mr. Wessel said that he had not been able to do so because he and his wife had experienced financial problems and other lenders were quoting rates that were too high. Mr. Mohesky responded that Ameriquest works with people like you (i.e. the Wessels) and could help.

7.     On or about May 1, 2003, Ameriquest sent the Wessels a preliminary Truth-in-Lending Act disclosure with an APR of 6.745% and a good faith estimate which estimated an interest rate of 6.4% and closing costs of $7,320.40.

8.     Over the course of approximately two weeks, Mr. Wessel and Mr. Mohesky spoke repeatedly on the telephone. Mr. Mohesky told Mr. Wessel that Ameriquest's adjustable rate mortgages sometimes have a prepayment penalty equal to six months mortgage payments if the borrower tries to refinance within six months or a year after the closing. Mr. Mohesky said that after two years the prepayment penalty would be reduced to an amount equal to one month's mortgage payment and Ameriquest often waived that. Mr. Mohesky also explained that the interest rate would be fixed for the first two years but could go up after the second year. Mr. Wessel asked whether the

2

prepayment penalty would be down to one month's payment at the time the interest rate could increase. Mr. Mohesky assured Mr. Wessel that the prepayment penalty would be reduced to at worst one month's mortgage payment as of the first adjustment date.

9.     Mr. Mohesky also made statements to Mr. Wessel designed to lock him into the deal. For example, Mr. Mohesky told Mr. Wessel to stop paying his current mortgage lender because his refinancing with Ameriquest would be approved. Mr. Mohesky also told Mr. Wessel that if he backed out of the deal he would owe Ameriquest for an appraisal fee.

10.     On May 21, 2003, Mr. Mohesky spoke to Mr. Wessel by telephone and said that a notary public would be coming to the Wessel home with papers for the Wessels to sign. Mr. Mohesky said that he would not be coming to the closing and could not talk then because he had to go to a meeting.

11.     On May 21, 2003, Ameriquest sent a notary public to the Wessels home with loan papers for them to sign. The deal terms were different from what plaintiffs had been led to expect. For example, the APR was 8.828% (up from 6.745% in the preliminary TILA disclosure), the settlement charges were $10,927.08 (up from closing costs of $7,320.40 in the good faith estimate) and there was a large (six month) prepayment penalty for the first three years of the loan. Mr. Wessel tried to ask the notary public about the new fees. The notary said that she didn't know about the terms and repeatedly told Mr. Wessel that she had to get the signed documents back to Ameriquest the next morning. Plaintiffs felt psychologically committed to the refinancing transaction, particularly since they had stopped paying their current mortgage lender on the advice of Ameriquest. As a consequence, plaintiffs signed the loan papers.

12.     About two years later, Mr. Wessel received a telephone call from a John Privitera of Ameriquest. Mr. Privitera said that the rate would be going up but that Ameriquest could refinance the mortgage at around 6.75% and the Wessels didn't have to make that month's payment. Mr. Wessel asked if he could assume that his current loan

3

balance would just be refinanced at a lower rate, and Mr. Privitera said yes. Mr. Wessel asked what his balance would be and Mr. Privitera said around $206,000. Mr. Wessel said that wasn't his current balance, where was this other money coming from. Mr. Privitera laughed and said, do you think anyone is going to borrow you this money without wanting some money. Mr. Wessel asked if there would be another prepayment penalty added. Laughingly, Mr. Privitera said that of course there would be. Mr. Privitera also explained that a portion of the loan would be to pay off the prepayment penalty because Mr. Wessel would be refinancing after two years instead of three. Mr. Wessel asked him about how much are we talking about in fees and Mr. Privitera said about six months interest as per the contract. Mr. Wessel began to explain to him that this wasn't what your representative explained up front. And Mr. Privitera said, we're sorry Mr. Wessel but that's the contract. Mr. Wessel said he would look elsewhere and asked to confirm that the prepayment penalty would be only one month and Mr. Privitera said, no six months. They argued back and forth. Mr. Privitera told Mr. Wessel, sorry but that's not in the contract. Mr. Privitera also warned that if Mr. Wessel did not accept this deal his interest rate could go up over 10% or 11%.

**COUNT ONE – TRUTH IN LENDING ACT**

13.     Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

**REGULATORY FRAMEWORK**

14.     The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

4

15.     Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

16.     Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

17.     The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute, provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the

5

Board, of his intention to do so.

15 U.S.C. § 1635(a).

18.    To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

19.    To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

20.    Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. § 226.23(a)(1).

6

21.   The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose" the consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1)

22.   More specifically, the regulation provides:

In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this section.

(v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

23.   Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

24.   Subparagraph (d)(2) states:

Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

7

12 C.F.R. § 226.23(d)(2).

25.     The Federal Reserve Board's commentary of paragraph 23(d)(2) explains

that the words "any money or property" would include an appraisal fee. The commentary

provides:

> The consumer cannot be required to pay any amount in the form of money
> or property either to the creditor or to a third party as part of the credit
> transaction. Any amounts of this nature already paid by the consumer
> must be refunded. "Any amount" includes finance charges already
> accrued, as well as other charges, such as broker fees, application and
> commitment fees, or fees for a title search or appraisal, whether paid to the
> creditor, paid directly to a third party, or passed on from the creditor to the
> third party. It is irrelevant that these amounts may not represent profit to
> the creditor.

## DEFECTIVE WESSEL DISCLOSURES

26.     Ameriquest's rescission disclosures to Mr. and Mrs. Wessel were defective

in a number of respects. First, the misrepresentations as to the interest rate and the

prepayment penalty misled plaintiffs as to the "number, amounts, and timing of payments

scheduled to repay the obligation" in violation of 12 C.F.R. § 226.18(g)(1).

27.     In addition, the Truth-In-Lending Disclosure Statement did not disclose

that the mortgage payments would be due monthly, an omission that Judge Coar held to

be a violation of TILA and 12 C.F.R. § 226.18 in Jones v. Ameriquest Mortgage

Company, 2006 U.S. Dist. LEXIS 3788.

28.     Mr. Mohesky of Ameriquest also misled Mr. Wessel as to his rescission

rights when he said that the Wessels would owe Ameriquest for the appraisal fee if they

backed out of the deal. This statement contradicted plaintiffs' right to rescind the

transaction and get back "any money or property that has been given to anyone in

connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's

commentary of paragraph 23(d)(2) explains that the words "any money or property"

would include an appraisal fee. By representing the appraisal fee was nonrefundable if

plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission

rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

29.     The disclosures were also deficient because Ameriquest did not deliver to Mr. and Mrs. Wessel the requisite number of copies of their Notice of Right to Cancel forms.

30.     Under the Truth in Lending Act, if the rescission disclosures or TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

31.     Ameriquest's rescission and TILA disclosures were defective. Accordingly, Mr. and Mrs. Wessel sent a rescission notice to Ameriquest and to Deutsche Bank, the current owner of their mortgage on January 13, 2006.

32.     Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiffs' home and paid back to plaintiffs any money or property that plaintiffs have paid to them in connection with the loan. See 12 C.F.R. § 226.23(d)(2). Defendants have not done either.

33.     Defendants' failure to honor the rescission request is a violation of the Truth in Lending Act.  Plaintiffs are entitled to rescission plus statutory damages and other relief.

### COUNT TWO -- ILLINOIS CONSUMER FRAUD ACT

34.     Plaintiffs incorporate paragraphs one through seven above.

35.     In connection with trade or commerce, Ameriquest made false and misleading statements to plaintiffs intending to induce reliance.

36.     Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them financial injury and emotional distress.

9

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

     a.     canceling defendants' security interest in plaintiffs' home and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

     b.     awarding plaintiffs actual damages proximately caused by defendants' failure to comply with 12 C.F.R. § 226.23(d)(2);

     c.     awarding appropriate statutory damages;

     d.     ordering Defendant to pay costs, penalties, and attorneys fees;

     e.     awarding plaintiffs actual and punitive damages;

     f.     granting such other relief as the Court deems just and proper.

Respectfully submitted by:

Counsel for the Plaintiffs

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 960-1802

10

# EXHIBIT 3



APR 1 9 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RALPH RODRIGUEZ and
BARBARA CHAPMAN,

        Plaintiffs,

vs.

AMERIQUEST MORTGAGE COMPANY,
AMC MORTGAGE SERVICES, INC.
and DEUTSCHE BANK NATIONAL TRUST
COMPANY,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No.    06C 2187

JUDGE JOAN H. LEFKOW

MAGISTRATE JUDGE VALDEZ

JURY TRIAL DEMAND

## COMPLAINT

### INTRODUCTION

1.      Plaintiffs Ralph Rodriguez and Barbara Chapman charge defendants with violation of the Truth in Lending Act through failure to honor a valid rescission request in violation of 15 U.S.C. § 1635. Plaintiffs also charge defendant Ameriquest with violation of Michigan law.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claim under the Truth in Lending Act arises under federal law. This Court has supplemental jurisdiction over plaintiffs' claim under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

## PARTIES

4.      Defendant Ameriquest Mortgage Company is a leading sub-prime mortgage lender. The company's main offices are in Orange, California, but it does business in this district. Defendant AMC Mortgage Services, Inc. services Ameriquest mortgages and has the right to receive payments thereunder and does business in this district. Defendant Deutsche Bank National Trust Company is the owner of plaintiffs' mortgage and has offices in Santa Ana, California, and also does business in this district.

5.      Plaintiffs Ralph Rodriguez and Barbara A. Chapman, husband and wife, are residents of Livonia, Michigan.

## BACKGROUND

6.      Plaintiff Ralph Rodriguez is a senior mechanical technician. His wife, Barbara A. Chapman, is retired. In or about 2002, plaintiffs took out a second mortgage on their home in order to pay off some personal debts. In 2004, plaintiff Rodriguez contacted Ameriquest to see about refinancing the mortgages.

7.      Ameriquest sent an appraiser to plaintiffs' home. Afterwards, an Ameriquest representative spoke to Mr. Rodriguez on the telephone and told him that things looked good.

8.      Ameriquest prepared a loan document (the Uniform Residential Loan Application) which listed the value of plaintiffs' property at $290,000. Ameriquest prepared other loan documents for a mortgage loan to Mr. Rodriguez of $252,000, of which $11,535.49 would go to Ameriquest in settlement charges.

9.      Ameriquest persuaded plaintiffs to take out an adjustable rate mortgage. The interest rate was initially fixed at 6.950% but could go up after two years to 8.950% and thereafter to as high as 12.950%. When told that the interest rate could go up after two years, plaintiff Rodriguez said to the Ameriquest representative that in two years he would be able to refinance, and the Ameriquest representative agreed.

2

10.     On or about February 9, 2004, plaintiffs went to an Ameriquest office in Southfield, Michigan. They were presented with various loan documents which they were asked to initial or sign.

11.     In December 2005, Mr. Rodriguez contacted another lender, Brookfield Home Loans, to see about refinancing out of the Ameriquest mortgage. Brookfield sent an appraiser to plaintiffs' home. The appraiser came up with a valuation of $230,000. This meant that plaintiffs owed more money on their Ameriquest loan than their property was actually worth and, as a result, could not secure refinancing with Brookfield.

12.     Ameriquest learned that plaintiff Rodriguez was thinking of refinancing and sent him a letter advising him that "If you are thinking of refinancing, it is nice to work with people you know." A few days later, Ameriquest sent loan papers to Mr. Rodriguez proposing a new loan, this time for $310,447.00, with fees and points of $13,258.21. The new loan would have an initial interest rate of 7.8% but could go up as high as 13.8%.

13.     Mr. Rodriguez did not accept the offer. In January 2006, Ameriquest sent a letter to Mr. Rodriguez telling him that his monthly payments would be going up in April.

### COUNT ONE -- TRUTH IN LENDING ACT

14.     Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

### REGULATORY FRAMEWORK

15.     The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

3

16.     Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

17.     Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

18.     The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

4

19.    To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

20.    To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

21.    Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. § 226.23(a)(1).

22.    The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose" the consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1)

5

23. More specifically, the regulation provides:

In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this section.

(v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

24. Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

25. Subparagraph (d)(2) states:

Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. § 226.23(d)(2).

6

26.    The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. The commentary provides:

> The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded. "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.

12 C.F.R. part 226 Supp.I para. 23(d)(2)-1.

### DEFECTIVE DISCLOSURES

27.    Ameriquest's rescission disclosures to plaintiffs were defective in a number of respects. First, the Notice of Right to Cancel forms that were delivered to plaintiffs at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1).

28.    Second, the Notice of Right to Cancel forms delivered to plaintiffs made it appear that only borrowers had a right to rescind, that Mr. Rodriguez was the only borrower and, therefore, that only Mr. Rodriguez had a right to rescind the mortgage transaction. In fact, under 12 C.F.R. § 226.23(a)(1), Barbara Chapman also had a right to rescind because she is a co-owner of the mortgaged property. As a result, Ameriquest violated its duty of clear disclosure of rescission rights with respect to Barbara Chapman.

29.    Third, Ameriquest gave plaintiffs a document (APPLICATION DISCLOSURE) which stated that Mr. Rodriguez was being charged $300 for an appraisal and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." Mr. Rodriguez as also told that he would owe Ameriquest for the appraisal if he backed out of the deal. These statements contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of

paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

30.     By misleading plaintiffs as to the possibility of refinancing out of the Ameriquest mortgage before the interest rate increased, Ameriquest effectively misled plaintiffs as to the existence of a variable interest rate on their loan in violation of 12 C.F.R. § 226.18.

31.     The disclosures were also deficient because Ameriquest did not deliver to plaintiffs the requisite number of copies of their Notice of Right to Cancel forms.

32.     Under the Truth in Lending Act, if the rescission disclosures or TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

33.     Ameriquest's rescission and TILA disclosures were defective. Accordingly, plaintiffs sent a rescission notice to Ameriquest, AMC Mortgage Services and to Deutsche Bank National Trust Company, the current owner of their mortgage on March 24, 2006.

34.     Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiffs' home and paid back to plaintiffs any money or property that plaintiffs have paid to them in connection with the loan. See 12 C.F.R. § 226.23(d)(2). Defendants have not done either.

35.     Defendants' failure to honor the rescission request is a violation of the Truth in Lending Act. Plaintiffs are entitled to rescission plus statutory damages and other relief.

### COUNT TWO -- VIOLATION OF MICHIGAN LAW

36.     In connection with trade or commerce, Ameriquest made false and misleading statements to plaintiffs intending to induce reliance. More specifically, Ameriquest misled plaintiffs as to the value of their property and as to the possibility of refinancing with another

lender in order to lock plaintiffs into a high interest mortgage with Ameriquest or a series of high interest, high fee mortgages with Ameriquest.

37. Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under Michigan statutory and common law.

38. Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them financial injury and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

    a. canceling defendants' security interest in plaintiffs' home and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

    b. awarding plaintiffs actual damages proximately caused by defendants' failure to comply with 12 C.F.R. § 226.23(d)(2);

    c. awarding appropriate statutory damages;

    d. ordering defendants to pay costs, penalties, and attorneys fees;

    e. awarding plaintiffs actual and punitive damages;

    f. granting such other relief as the Court deems just and proper.

Respectfully submitted by:

Counsel for the Plaintiffs

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 960-1802

9

# EXHIBIT 4



APR 2 6 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KELLY and JO LYNN SEDGWICK,    )
                               )    No.
          Plaintiffs,          )
                               )
vs.                            )
                               )
AMERIQUEST MORTGAGE COMPANY,   )
AMC MORTGAGE SERVICES, INC.    )
and DEUTSCHE BANK NATIONAL TRUST )
COMPANY,                       )    JURY TRIAL DEMAND
                               )
          Defendants.          )

## COMPLAINT

### INTRODUCTION

1.      Plaintiffs Kelly and Jo Lynn Sedgwick charge defendants with violation of the

Truth in Lending Act through failure to honor a valid rescission request in violation of 15 U.S.C.

§ 1635. Plaintiffs also charge defendant Ameriquest with violation of Illinois law.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to Title 28 of the United States Code,

Sections 1331 and 1337 because plaintiffs' claim under the Truth in Lending Act arises under

federal law.  This Court has supplemental jurisdiction over plaintiffs' claim under state law

pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28

U.S.C. § 1367.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the

defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has

issued an order centralizing predatory lending litigation against Ameriquest in this district before

Judge Aspen.

## PARTIES

4.    Defendant Ameriquest Mortgage Company is a leading sub-prime mortgage lender. The company's main offices are in Orange, California, but it does business in this district. Defendant AMC Mortgage Services, Inc. services Ameriquest mortgages and has the right to receive payments thereunder and does business in this district. Defendant Deutsche Bank National Trust Company is the owner of plaintiffs' mortgage and also does business in this district.

5.    Plaintiffs Kelly and Jo Lynn Sedgwick, husband and wife, are residents of Yorkville, Illinois.

## BACKGROUND

6.    Plaintiff Kelly Sedgwick works in maintenance at Fermi National Accelerator Laboratory. His wife, plaintiff Jo Lynn Sedgwick, works part time as a mathematics instructor at Waubonsee Community College. They live with their three children in Yorkville, Illinois. In 2003, Mr. and Mrs. Sedgwick decided to refinance their home mortgage to raise money to pay some personal debts.

7.    Mrs. Sedgwick spoke repeatedly on the telephone to an Ameriquest representative named Tanya Lemberger. Mrs. Sedgwick said that she wanted a 30 year fixed rate mortgage. Ms. Lemberger agreed to provide such a mortgage.

8.    The closing took place on May 23, 2003 at the Ameriquest offices in Naperville, Illinois. Ms. Lemberger showed the Sedgwicks a Truth in Lending Disclosure and pointed to the portion that showed that the Sedgwicks would have 359 equal payments and one last payment for slightly less. Ms. Lemberger stated that this showed that the loan was a fixed rate mortgage for a term of 30 years. Mrs. Sedgwick questioned the box on that form that was checked about a Variable Rate Feature and Ms. Lemberger reiterated that the Sedgwicks were getting a fixed rate loan. Several forms later, Ms. Lemberger put a form in front of the Sedgwicks that stated that the loan was an adjustable rate mortgage and that the rate may change in July of 2005. The Sedgwicks questioned this form, stating again that they had been told that this was going to be a

2

fixed rate loan. Ms. Lemberger explained that the form was just a formality, which everyone signed, and then pointed out on the Truth in Lending statement that there were going to be 359 equal payments plus one last payment. Ms. Lemberger said that the Sedgwicks' payments wouldn't change from those stated on that form. When the Sedgwicks questioned signing the Variable Rate Note form, Ms. Lemberger assured them that the loan would be a fixed rate mortgage. The Sedgwicks decided to trust Ms. Lemberger and sign the loan papers.

9.      On July 1, 2005, Ameriquest increased the Sedgwicks' monthly payments. The Sedgwicks realized that their mortgage was, in fact, an adjustable rate mortgage and that Ms. Lemberger had deceived them.

10.     In early 2006, the Sedgwicks' interest rate increased for the second time. Since July 2005, the Sedgwicks' mortgage payments have gone from $1,402.07 to $1,779.84. To avoid losing their home, the Sedgwicks' have had to forgo paying other obligations, which has ruined their credit.

COUNT ONE -- TRUTH IN LENDING ACT

11.     Plaintiffs incorporate paragraphs one through ten above.

12.     Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

REGULATORY FRAMEWORK

13.     The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

14.     Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form

3

that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

15. Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

16. The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

17. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

4

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

18.     To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

19.     Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. § 226.23(a)(1).

20      The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose" the consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1)

21.     More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

5

          (i) The retention or acquisition of a security interest in the consumer's principal dwelling.

          (ii) The consumer's right to rescind the transaction.

          (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

          (iv) The effects of rescission, as described in paragraph (d) of this section.

          (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

     22.    Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

          When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

     23.    Subparagraph (d)(2) states:

          Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. § 226.23(d)(2).

     24.    The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. The commentary provides:

          The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded. "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.

12 C.F.R. Part 226, Supp. 1 para. 23(d)(2)-1.

## DEFECTIVE DISCLOSURES

25.     Ameriquest's rescission disclosures to plaintiffs were defective in a number of respects. First, by falsely assuring plaintiffs that they were getting a fixed rate mortgage, Ameriquest misled plaintiffs as to the existence of a variable interest rate on their loan in violation of 12 C.F.R. § 226.18.

26.     Second, Ameriquest gave plaintiffs a document (APPLICATION DISCLOSURE) which stated that they were being charged $325 for an appraisal and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." This statement contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

27.     Under the Truth in Lending Act, if the rescission disclosures or TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

28.     Ameriquest's rescission and TILA disclosures were defective. Accordingly, plaintiffs sent a rescission notice to Ameriquest, AMC Mortgage Services and to Deutsche Bank on March 21, 2006.

29.     Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiffs' home and paid back to plaintiffs any money or property that plaintiffs have paid to them in connection with the loan. See 12 C.F.R. § 226.23(d)(2). Defendants have not done either.

7

30.     Defendants' failure to honor the rescission request is a violation of the Truth in Lending Act.  Plaintiffs are entitled to rescission plus statutory damages and other relief.

## COUNT TWO -- VIOLATION OF ILLINOIS LAW

31.     Plaintiffs incorporate paragraphs one through thirty above.

32.     In connection with trade or commerce, Ameriquest made false and misleading statements to plaintiffs intending to induce reliance.  More specifically, Ameriquest misled plaintiffs as to whether they were getting an adjustable rate mortgage.

33.     Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under Illinois statutory and common law.

34.     Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them financial injury and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a.     canceling defendants' security interest in plaintiffs' home and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

b.     awarding plaintiffs actual damages proximately caused by defendants' failure to comply with 12 C.F.R. § 226.23(d)(2);

c.     awarding appropriate statutory damages;

d.     ordering defendants to pay costs, penalties, and attorneys fees;

e.     awarding plaintiffs actual and punitive damages;

f.     granting such other relief as the Court deems just and proper.

Respectfully submitted by:

Counsel for the Plaintiffs

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 960-1802

9