# EXHIBIT 11

RECEIVED
MAY 12 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BESTERFIELD, on behalf of himself and a class, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| AMERIQUEST MORTGAGE COMPANY, AMERIQUEST MORTGAGE SECURITIES, INC., AMC MORTGAGE SERVICES, INC., and DOES 1-5, | ) ) ) ) ) ) |
| Defendants. | ) |

06C 2676

JUDGE LINDBERG

MAGISTRATE JUDGE NOLAN

**JURY DEMANDED**

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff James Besterfield brings this action against a "subprime" mortgage lender and its affiliates to (a) rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226 and (b) secure damages for unfair and deceptive lending practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1332(d) (diversity class actions), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here. The total amount in controversy exceeds $5 million. Diversity of citizenship exists, in that plaintiff and most class members are citizens of Illinois and each defendant is a Delaware

1

corporation with its principal place of business in California.

## PARTIES

3. Plaintiff James Besterfield owns and resides in a home at 2543 Alexander St., Homewood, IL 60430. He is a resident, domiciliary and citizen of Illinois.

4. Defendant Ameriquest Mortgage Company is a Delaware corporation with its principal place of business in California. It maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.

5. Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6. Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

7. Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8. During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

9. Defendant AMC Mortgage Services, Inc. is a Delaware corporation with its principal place of business in California. It does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.

10. Defendant AMC Mortgage Services, Inc., an affiliate of Ameriquest Mortgage Company, services loans originated by Ameriquest Mortgage Company, and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

11. Defendant Ameriquest Mortgage Securities, Inc., an affiliate of Ameriquest Mortgage Company, is a Delaware corporation with its principal place of business at 1100 Town & Country Road, Suite 1100, Orange, CA 92868. It transacts business in Illinois. It holds legal title to loans originated by Ameriquest Mortgage Company.

## FACTS RELATING TO PLAINTIFF

12. Prior to Jan. 11, 2005, plaintiff applied for a mortgage with Ameriquest Mortgage Company.

13. Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

14. The loan was closed on Jan. 11, 2005.

15. Immediately prior to the closing, plaintiff was informed that the loan terms were being altered to his detriment, as set forth on Exhibit A.

16. The following are documents relating to the loan:

    a. A note, Exhibit B;

    b. A mortgage, Exhibit C;

    c. A settlement statement, Exhibit D;

    d. A Truth in Lending disclosure statement, Exhibit E;

    e. The three-day notice of right to cancel required by the Federal

3

Reserve Board, Exhibit F;

   f. A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, Exhibit G.

  17. Plaintiff was charged a "loan discount" of $6,044.12, or 3.8390% of the principal. Exhibit D, line 802. This was in addition to an appraisal fee of $200, a tax related service fee of $70, a flood search fee of $9, a lenders processing fee of $626, an administration fee of $239, a property valuation fee of $125, and an application fee of $360. All of these charges were retained by Ameriquest from the loan proceeds.

  18. Defendant represented at the closing, by means of a standard form document (Exhibit H), that the retention of the "loan discount" from the loan proceeds was in exchange for a reduction in the interest rate.

  19. This representation was false. In fact, the interest rate was not reduced, but increased.

  20. Plaintiff was later directed to make payments to AMC Mortgage Services, Inc.

  21. On information and belief, Ameriquest Mortgage Securities, Inc. owns plaintiff's loan.

  22. In the event Ameriquest Mortgage Securities, Inc. does not own plaintiff's loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## PRACTICES COMPLAINED OF

  23. Ameriquest has engaged in and continues to engage in a uniform common

4

plan and scheme to prey upon unsuspecting consumers by routinely charging misleading and inappropriate "discount" fees.

24. Ameriquest trains and encourages its Account Executives to engage in any conduct necessary to close the greatest number of loans as quickly as possible and to maximize the total loan principal. Ameriquest loan officers, called account executives, across the country, including those in Illinois, receive daily leads on new customers that are generated by software at Ameriquest's Orange, California, headquarters. These leads target homeowners who are carrying both a mortgage and significant credit card and/or other consumer debt; persons who have mobile home mortgages; persons with less than perfect credit; and other financially-vulnerable persons. These homeowners are solicited through repeated mailers, telephone calls, and/or personal visits by Ameriquest sales personnel, all inviting them to consolidate their debts or to obtain money for expenses, with false and misleading promises of more favorable loan terms and/or reduced monthly payments. Ameriquest profits by obtaining high fees upfront and high interest rates in the interim, and often by selling its loan portfolios to other companies.

25. Ameriquest systematically trains its sales personnel through standardized sales presentations (videos) developed at its corporate headquarters in Orange, California as well as by use of the movie "Boiler Room" which depicts unethical and illegal high-pressure sales practices by a securities brokerage firm. These videos demonstrate high-pressure mortgage sales, while failing to train employees on the legal requirements and regulations for mortgage lending.

26. Ameriquest also trains its sales personnel to routinely rush borrowers through the lengthy, complex documentation of the regulated closing process so as to divert the borrowers' attention from the documented terms of the loan, including the bogus "loan

5

discount." Moreover, Ameriquest trains its Account Executives to overcome objections raised by borrowers at closing, by offering immediate cash pending the closing of the loan, and by assuring borrowers that they can refinance with better terms after improving their credit score, without disclosing that they could be subject to the prepayment penalty, higher interest rates and other fees if they did so.

## COUNT I – TRUTH IN LENDING ACT

27. Plaintiff incorporates paragraphs 1-26. This claim is against all defendants.

### RIGHT TO RESCIND

28. Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

> (a) <u>Consumer's right to rescind.</u>
>
> > **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**
> >
> > **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**
> >
> > **(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material**

6

disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

## GROUNDS FOR RESCISSION

29. In connection with the loan, Ameriquest Mortgage Company failed to

provide the required disclosures of the plaintiff's right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

30. The delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

31. Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

32. Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

33. Notice of rescission has been given to defendants. A copy is attached as Exhibit I..

34. The loan has not been rescinded.

35. Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

36. 15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of

8

plaintiff and against defendants for:

(1) A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on defendants;

(2) Statutory damages for the underlying disclosure violation;

(3) If appropriate, statutory damages for failure to rescind;

(4) Attorney's fees, litigation expenses and costs.

(5) Such other or further relief as the Court deems appropriate.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

37. Plaintiff incorporates paragraphs 1-26. This claim is against Ameriquest.

38. Ameriquest engaged in unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by (a) representing that the retention from the loan proceeds of a "loan discount" would result in a reduction of the interest rate (Exhibit H) and (b) then increasing instead of reducing the interest rate (Exhibit A).

39. Plaintiff was induced to acquiesce in the deduction from the loan proceeds of the loan discount by means of this misrepresentation.

40. Defendant Ameriquest made the representation in the course of trade and commerce.

41. Defendant Ameriquest made the representation for the purpose of inducing reliance, in the form of Ameriquest's retention from the loan proceeds of "loan discount."

42. Plaintiff and every other borrower who (a) received Exhibit H, (b) had a loan discount retained from the loan proceeds (as shown by the settlement statement, Exhibit D), and (c) had their rate increased at the closing (as shown by Exhibit A) was injured by such

9

practice.

## CLASS ALLEGATIONS

43. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

44. The class consists of (a) all individuals in Illinois, (b) who obtained a loan from Ameriquest (c) on or after a date three years prior to the filing of this action, (d) received Exhibit H, (e) had a loan discount retained from the loan proceeds (as shown by the settlement statement, Exhibit D), and (f) had their rate increased at the closing (as shown by Exhibit A).

45. The class is so numerous that joinder of all members is not practicable. On information and belief, there are at least 40 members of the class.

46. There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether representations in the form of Exhibit H were made to the class members;

    b. Whether Ameriquest in fact engaged in a practice of retaining "loan discounts" without discounting the interest rate.

47. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

48. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

49. A class action is superior for the fair and efficient adjudication of this

matter, in that:

      a.    Individual actions are not economically feasible.

      b.    Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

    (1)    Compensatory damages;

    (2)    Punitive damages;

    (3)    Attorney's fees, litigation expenses and costs of suit;

    (4)    Such other and further relief as the Court deems proper.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
   & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiff demands trial by jury.

/s/ Daniel A. Edelman
Daniel A. Edelman

T:\16744\Pleading\Complaint_Pleading.WPD

11