# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VELMA JEAN JILES, )
Plaintiff, )
v. )
ARGENT MORTGAGE COMPANY, LLC, OPTION ONE MORTGAGE CORP., COUNTRYWIDE HOME LOANS, INC., and DOES 1-5, )
Defendants. )

JURY DEMANDED

RECEIVED MAY 17 2006 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

## COMPLAINT

## INTRODUCTION

1. Plaintiff Velma Jean Jiles brings this action against a "subprime" mortgage lender and its affiliates to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here.

## PARTIES

3. Plaintiff Velma Jean Jiles owns and resides in a home at 346 West 113th Street, Chicago, IL 60628. Prior to his death in early 2005, plaintiff's husband, Roosevelt Jiles,

also owned and resided in the home. The property was held in joint tenancy.

4. Defendant Argent Mortgage Company, LLC is a limited liability company which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.

5. Defendant Argent Mortgage Company, LLC is engaged in the business of originating "subprime" mortgages.

6. Defendant Argent Mortgage Company, LLC makes more than 26 loans per year.

7. Defendant Argent Mortgage Company, LLC is a "creditor" as defined in TILA and Regulation Z.

8. Defendant Option One Mortgage Corporation is a foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are CT Corporation System, 208 S. LaSalle, Suite 814, Chicago, IL 60604.

9. Defendant Countrywide Home Loans, Inc. is a foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are Prentice Hall Corporation, 33 N. LaSalle Street, Chicago, IL 60602.

**FACTS RELATING TO PLAINTIFF**

10. Prior to July 26, 2004, plaintiff applied for a mortgage with Argent Mortgage Company, LLC with her husband, Roosevelt Jiles.

11. Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

12. The loan was closed on July 26, 2004.

13. The following are documents relating to the loan:

a. A note, Exhibit A. Only Roosevelt Jiles signed the note;

b. A mortgage, Exhibit B. Both plaintiff and her husband signed the mortgage;

c. Two settlement statements, Exhibit C;

d. A Truth in Lending disclosure statement, Exhibit D;

e. Three copies of the three-day notice of right to cancel required by the Federal Reserve Board, Exhibit E;

14. Plaintiff was later directed to make payments to Option One Mortgage Corp. and then to Countrywide Home Loans, Inc.

15. On information and belief, Countrywide Home Loans, Inc. owns plaintiff's loan.

16. In the event Countrywide Home Loans, Inc. does not own plaintiff's loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## RIGHT TO RESCIND

17. Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

> **(a) Consumer's right to rescind.**
>
> **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security**

interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) Exempt transactions. The right to rescind does not apply to the following:

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

## GROUNDS FOR RESCISSION

18. In connection with the loan, Argent Mortgage Company, LLC failed to provide the required disclosures of the plaintiff's right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

19. Exhibit E is inherently confusing with respect to who has a right to cancel in a case in which less than all of the persons signing the mortgage sign the note. The top of the form has only Roosevelt Jiles' name on it, and is addressed to "borrower(s)." The text is addressed to "You," which is reasonably interpreted as applying to the individual whose name appears directly above. The bottom of the form states that "Each borrower" has the right to cancel, which is reasonably interpreted as meaning the persons named as "borrower(s)" at the top of the document. While there are signature lines for both plaintiffs at the bottom of the form, they are there described as "Borrower/ Owner," which presumably means something different than just "borrower."

20. The statute gives not only each person obligated to repay the loan but each person who resides in and has an ownership interest in the property the right to cancel, and requires a notice that unequivocally tells each such person that they have the right to cancel.

21. In connection with the loan, Argent Mortgage Company, LLC failed to provide the required disclosures of the right to cancel in that Roosevelt and Velma Jean Jiles only

received a total of three copies of the federal notice of right to cancel, instead of the four required. See Exhibit E.

22. Notice of rescission has been given to defendants. A copy is attached as Exhibit F.

23. The loan has not been rescinded.

24. Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

25. 15 U.S.C. §1635(g) provides:

> **Additional relief**
>
> **In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a. A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on defendants;

b. Statutory damages for the underlying disclosure violation;

c. If appropriate, statutory damages for failure to rescind;

d. Attorney's fees, litigation expenses and costs.

e. Such other or further relief as the Court deems appropriate.

Daniel A. Edelman

Daniel A. Edelman
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**JURY DEMAND**

Plaintiff demands trial by jury.

Daniel A. Edelman

T:\16788\Pleading\Complaint_Pleading.WPD

# EXHIBIT A

Loan No. 0060542834 - 9701

# FIXED RATE NOTE

July 26, 2004 [Date] Rolling Meadows [City] IL [State]

346 WEST 113TH STREET, CHICAGO, IL 60628
[Property Address]

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 96,650.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Argent Mortgage Company, LLC .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 7.990 %.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on September 1, 2004.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on August 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at: 505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payments will be in the amount of U.S. $708.51.

4. BORROWER'S RIGHT TO PREPAY

I may repay this Note at any time without a penalty.

5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials: RJ

07/22/2004 3:50:41 PM

200-1UNIV (Rev. 10/00)

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

[signature] (Seal)
Borrower: ROOSEVELT JILES
SSN: 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

_______________ (Seal)
Borrower:
SSN:

_______________ (Seal)
Borrower:
SSN:

_______________ (Seal)
Borrower:
SSN:

Initials:________

07/22/2004 3:50:41 PM

200-2FIXED (Rev. 10/00)

# EXHIBIT B

Return To:

Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

Prepared By: Argent Mortgage Company, LLC

Lorraine M Salstrand
1701 Golf Road, Rolling
Meadows, IL 60008

[Space Above This Line For Recording Data]

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 26, 2004, together with all Riders to this document.
(B) "Borrower" is ROOSEVELT JILES and VELMA JEAN JILES, His Wife, AS JOINT TENANTS

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

0060542834-9701

Lender's address is One City Boulevard West Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated July 26, 2004. The Note states that Borrower owes Lender ninety-six thousand six hundred fifty and 00/100 Dollars (U.S. $96,650.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than August 1, 2034.

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the County [Type of Recording Jurisdiction] of COOK [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 25-21-212-032 which currently has the address of 346 WEST 113TH STREET [Street] CHICAGO [City], Illinois 60628 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts



due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable




attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0060542834 - 9701
Initials:
07/22/2004 3:50:41

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0060542834 - 9701
Initials:



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________________ (Seal)
ROOSEVELT JILES -Borrower

_______________________ (Seal)
VELMA JEAN JILES -Borrower

_______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower

_______________________ (Seal) -Borrower

0060542834 -9701

STATE OF ILLINOIS, County ss: Cook

I, the undersigned a Notary Public in and for said county and in said state, hereby certify that

Roosevelt Jiles & Velma Jean Jiles

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal of this 7-26-04

My Commission Expires:

Vanessa Frausto

Notary Public

"OFFICIAL SEAL"
Vanessa Frausto
Notary Public, State of Illinois
My Commission Exp. 06/18/2007

# EXHIBIT C

7/26/04 4:45 PM

OMB No. 2502-0265

| A. U.S. Department of Housing and Urban Development | B. Type of Loan | |
|---|---|---|
| | 1. [ ] FHA 2. [ ] FMHA 3. [ ] Conv. Unins. | |
| | 4. [ ] VA 5. [ ] Conv. Ins. [X] Other. | |
| | 6. File Number 388925 | 7. Loan Number 0060542834-9701 |
| **Settlement Statement** | 8. Mortgage Ins. Case No. | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing: they are shown here for information purposes and are not included in the totals.

| | |
|---|---|
| D. Name of Borrower: | Roosevelt Jiles<br>Velma Jean Jiles |
| E. Name of Seller: | |
| F. Name of Lender: | Argent Mortgage Company, 1701 Golf Road, Rolling Meadows, IL 60008 |
| G. Property Location: | 346 West 113th Street, Chicago, IL 60628 |
| H. Settlement Agent: | Stewart Title of Illinois TIN: 36-2849696 |
| Place of Settlement: | 9913 Southwest Hwy, Oak Lawn, IL 60453 |
| I. Settlement Date: | 7/26/2004 Proration Date: 7/30/2004 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross amount due from borrower: | | 400. Gross amount due to seller: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 7,579.96 | 403. | |
| 104. MTG P/O OPTION ONE | 89,401.59 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross amount due from borrower: | 96,981.55 | 420. Gross amount due to seller: | 0.00 |
| 200. Amounts paid by or in behalf of the borrower: | | 500. Reduction in amount due to seller: | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 96,650.00 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total paid by/for borrower: | 96,650.00 | 520. Total reduction in amount due seller: | 0.00 |
| 300. Cash at settlement from/to borrower: | | 600. Cash at settlement to/from seller: | |
| 301. Gross amount due from borrower (line 120) | 96,981.55 | 601. Gross amount due to seller (line 420) | 0.00 |
| 302. Less amount paid by/for borrower (line 220) | 96,650.00 | 602. Less total reduction in amount due seller(line 520) | 0.00 |
| 303. CASH (X)FROM ()TO BORROWER | 331.55 | 603. CASH ()FROM ()TO SELLER | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.
SELLER INSTRUCTION - If this real estate was your principle residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Stewart Title of Illinois with your correct taxpayer identification number.
If you do not provide Stewart Title of Illinois with your correct taxpayer identification number, you may be subject to civil or criminal penalties.

| L. Settlement Charges 7/25/04 4:45 PM File Number: 388925 | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| 700. Total sales/broker commission | | |
| Division of commission (line 700) as follows: | | |
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| 800. Items payable in connection with loan | | |
| 801. Loan origination fee to Integrity 1st Mortgage ( 3%) | 2,899.50 | |
| 802. Loan discount | | |
| 803. Appraisal fee to ATLANTIC APPRAISAL | 300.00 | |
| 804. Credit report | | |
| 805. Lender's inspection fee | | |
| 806. Mortgage insurance application fee | | |
| 807. Assumption fee | | |
| 808. TAX SERVICE FEE to Argent Mortgage Company | 70.00 | |
| 809. FLOOD SEARCH FEE to Argent Mortgage Company | 16.00 | |
| 810. ADMIN FEE to Argent Mortgage Company | 175.00 | |
| 811. UNDERWRITING FEE to Argent Mortgage Company | 375.00 | |
| 812. PROCESSING FEE to Integrity 1st Mortgage | 495.00 | |
| 813. | | |
| 814. | | |
| 815. | | |
| 816. | | |
| 817. | | |
| 900. Items required by lender to be paid in advance | | |
| 901. Interest from 7/30/2004 to 8/1/2004 at $21.1600/day for 2 days. | 42.32 | |
| 902. Mortgage insurance premium for | | |
| 903. Hazard insurance premium for to AMERICAN FAMILY I | 393.33 | |
| 904. | | |
| 905. | | |
| 1000. Reserves deposited with lender | | |
| 1001. Hazard insurance 7 mo.@ $78.6700 per mo. | 550.69 | |
| 1002. Mortgage insurance | | |
| 1003. City property taxes | | |
| 1004. County property taxes 2 mo.@ $43.1500 per mo. | 86.30 | |
| 1005. Annual assessments (maint.) | | |
| 1006. | | |
| 1007. | | |
| 1008. | | |
| 1009. | | |
| 1100. Title charges | | |
| 1101. Settlement or closing fee to Stewart Title of Illinois | 200.00 | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary fees | | |
| 1107. Attorney's fees to | | |
| *includes above items no.:* | | |
| 1108. Title insurance to Precision 1st Title Company | 350.00 | |
| *includes above items no.:* | | |
| 1109. Lender's coverage $96,650.00 $350.00 | | |
| 1110. Owner's coverage | | |
| 1111. | | |
| 1112. | | |
| 1113. RISK PREMIUM to Stewart Title of Illinois | 100.00 | |
| 1114. PKG/PROCESSING P/O FEE to Stewart Title of Illinois | 35.00 | |
| 1115. STAT POLICY FEE to Stewart Title of Illinois | 3.00 | |
| 1200. Government recording and transfer charges | | |
| 1201. Recording fees: Mortgage $52.00 | 52.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps: | | |
| 1204. | | |
| 1205. | | |
| 1206. | | |
| 1300. Additional settlement charges | | |
| 1301. Survey | | |
| 1302. Pest inspection | | |
| 1303. PAY ON ACCOUNT to GE CUSTOM AUTO | 531.00 | |
| 1304. PAY ON ACCOUNT to COLLECTION COMPANY | 313.00 | |
| 1305. TI TAXES 2003 2nd INSTALL to STCI TI ACCT PIN#25-21-212-032 | 517.82 | |
| 1306. TI SET UP FEE to Stewart Title of Illinois | 75.00 | |
| 1307. | | |
| 1308. | | |
| 1400. Total settlement charges (entered on lines 103, section J and 502, section K) | 7,579.96 | |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receip

Settlement Statement
Optional Form for Transactions without Sellers

U.S. Department of Housing and Urban Development

OMB Approval No. 2502-0491

WLI

Name & Address of Borrower:
ROOSEVELT JILES
346 WEST 113TH STREET CHICAGO,IL 60628

Name & Address of Lender:
Argent Mortgage Company, LLC
1701 Golf Road
Rolling Meadows, IL 60008

Property Location: (if different from above)
346 WEST 113TH STREET, CHICAGO, IL 60628

Settlement Agent: STEWART TITLE COMPANY

Place of Settlement: 9913 SOUTHWEST HWY
Oak Lawn,IL 60453

Loan Number: 0060542834 - 9701

Settlement Date: Estimated 07/30/2004

## L. Settlement Charges

| Item | Amount |
|---|---|
| **800. Items Payable in Connection with Loan** | |
| 801. Loan origination fee % to | |
| 802. Loan discount % to | |
| 803. Apprsl/Prop Val to ATLANTIC APPRAISAL | $300.00 |
| 804. Credit report to | |
| 805. Inspection fee to | |
| 806. | |
| 807. | |
| 808. Yield Spread Premium to | |
| 809. | |
| 810. Tax Related Service Fee to Argent Mortgage Company, | $70.00 |
| 811. Flood Search Fee to Argent Mortgage Company, LLC | $16.00 |
| 812. Lenders Processing Fee to | |
| 813. Admin to Argent Mortgage Company, LLC | $175.00 |
| 814. Doc. Prep. Fee to | |
| 815. Credit Report Fee to | $0.00 |
| 816. Origination Fee 3.000 % to Integrity 1st Mortgage | $2,899.50 |
| 817. Application Fee to | |
| 818. Underwriting Fee to | |
| 819. Service Provider Fee to | |
| 820. Processing Fee to Integrity 1st Mortgage | $495.00 |
| 821. Underwriting Fee to Argent Mortgage Company, LLC | $375.00 |
| 822. Appraisal Fee to | |
| **900. Items Required by Lender to be Paid in Advance** | |
| 901. Interest from 07/30/2004 to 08/01/2004 @ $21.16 per day | $42.32 |
| 902. Mortgage insurance premium for months to | |
| 903. Hazard ins prem to AMERICAN FAMILY INS CO | $393.33 |
| 904. Flood ins prem to | |
| **1000. Reserves Deposited with Lender** | |
| 1001. Hazard insurance 7 months @ $ 78.67 per month | $550.69 |
| 1002. Mortgage insurance months @ $ per month | |
| 1003. Earthquake ins months @ $ per month | |
| 1004. County prop. taxes 2 months @ $ 43.15 per month | $86.30 |
| 1005. Annual assess. months @ $ per month | |
| 1006. Flood months @ $ per month | |
| 1007. Windstorm ins months @ $ per month | |
| 1008. | |
| **1100. Title Charges** | |
| 1101. Settlement or closing fee to Stewart Title | $535.00 |
| 1102. Abstract or title search to | |
| 1103. Title examination to | |
| 1104. Title insurance binder to | |
| 1105. Document preparation to | |
| 1106. Notary fees to | |
| 1107. Attorney's fees to | |
| 1108. Title insurance to Stewart Title | $623.00 |
| 1109. Lender's coverage $ | |
| 1110. Owner's coverage $ | |
| 1111. Settlement/Disbursement fee to | |
| 1112. Escrow Fee to | |
| **1200. Government Recording and Transfer Charges** | |
| 1201. Recording fees | |
| 1202. City/county tax/stamps | |
| 1203. State tax/ stamps | |
| 1204. State specific fee | |
| 1205. State specific fee | |
| **1300. Additional Settlement Charges** | |
| 1301. Demand to | |
| 1302. Pest Inspection to | |
| 1303. Survey Fee | |
| 1304. Misc Fees | |
| 1305. Reconveyance Fee to | |
| 1306. | |
| 1307. Apprsl/Prop Val Fee to | |
| 1308. Courier Fee | |
| **1400. Total Settlement Charges (enter on line 1602)** | $6,561.14 |

## M. Disbursement to Others

| Item | Amount |
|---|---|
| 1501. OPTION ONE MORTGAGE (W) | $89,159.80 |
| 1502. GE CUSTOM AUTO (W) | $531.00 |
| 1503. COLLECTION COMPANY O (W) | $313.00 |
| 1504. | |
| 1505. | |
| 1506. | |
| 1507. | |
| 1508. | |
| 1509. | |
| 1510. | |
| 1511. | |
| 1512. | |
| 1513. | |
| 1514. | |
| 1515. | |
| 1520. TOTAL DISBURSED (enter on line 1603) | $90,003.80 |

Total Wire: $95,334.69

## N. NET SETTLEMENT

| Item | Amount |
|---|---|
| 1600. Loan Amount | 96,650.00 |
| 1601. Plus Cash/Check from Borrower | |
| 1602. Minus Total Settlement Charges (line 1400) | $6,561.14 |
| 1603. Minus Total Disbursements to Others (line 1520) | $90,003.80 |
| 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | $85.06 |

Borrower(s) Signature(s):

x [signature]

Approved for Funding By: Approved: Branch: Rolling Meadows, IL 60008

# EXHIBIT D

# TRUTH-IN-LENDING DISCLOSURE STATEMENT

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

[ ] Preliminary [X] Final

LENDER: Argent Mortgage Company, LLC
1701 Golf Road
Rolling Meadows, IL 60008
(847)690-0517

Broker License: 6325

Borrowers: ROOSEVELT JILES

Type of Loan: FIXED RATE
Date: July 26, 2004

Address: 346 WEST 113TH STREET
City/State/Zip: CHICAGO,IL 60628

Loan Number: 0060542834 - 9701

Property: 346 WEST 113TH STREET, CHICAGO, IL 60628

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 8.507 % | $ 163,021.14 | $ 92,042.18 | $ 255,063.32 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $708.51 | 09/01/2004 | | | |
| 1 | $708.23 | 08/01/2034 | | | |

**VARIABLE RATE FEATURE:**
[ ] Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 346 WEST 113TH STREET, CHICAGO, IL 60628

**ASSUMPTION:** Someone buying this property
[X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to Argent Mortgage Company, LLC

**LATE CHARGES:** If a payment is late, you will be charged 5.000% of the overdue payment.

**PREPAYMENT:** If you pay off your loan early, you
[ ] may [X] will not have to pay a penalty.

**See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower ROOSEVELT JILES 7/26/04 Date

Borrower VELMA JEAN JILES 7-26-04 Date

Borrower Date

Borrower Date

# EXHIBIT E

# NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: July 26, 2004
LOAN NO.: 0060542834 - 9701
TYPE: FIXED RATE

BORROWER(S): ROOSEVELT JILES

ADDRESS: 346 WEST 113TH STREET
CITY/STATE/ZIP: CHICAGO,IL 60628

PROPERTY: 346 WEST 113TH STREET
CHICAGO, IL 60628

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is **DOCUMENT SIGNING DATE** 07/26/2004 ; or
2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Argent Mortgage Company, LLC**
**3 Park Plaza**
**Irvine, CA 92614**

ATTN: **FUNDING**
PHONE: **(800)-561-4072**
FAX: **(714)-347-1575**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of **FINAL DATE TO CANCEL** 07/29/2004

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

SIGNATURE _______________ DATE _______________

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

[signature] 7/26/04
BORROWER/OWNER ROOSEVELT JILES Date

[signature] 7-26-04
BORROWER/OWNER VELMA JEAN JILES Date

BORROWER/OWNER Date

BORROWER/OWNER Date

# NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: July 26, 2004
LOAN NO.: 0060542834 - 9701
TYPE: FIXED RATE

BORROWER(S): ROOSEVELT JILES

ADDRESS: 346 WEST 113TH STREET
CITY/STATE/ZIP: CHICAGO,IL 60628

PROPERTY: 346 WEST 113TH STREET
CHICAGO, IL 60628

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is **DOCUMENT SIGNING DATE** 07/26/2004 ; or
2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Argent Mortgage Company, LLC**
**3 Park Plaza**
**Irvine, CA 92614**

ATTN: **FUNDING**
PHONE: **(800)-561-4072**
FAX: **(714)-347-1575**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of **FINAL DATE TO CANCEL** 07/29/2004

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

SIGNATURE DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

BORROWER/OWNER ROOSEVELT JILES Date

Velma J Jiles 7-26-04
BORROWER/OWNER VELMA JEAN JILES VJ Date

Roosevelt Jiles 7/26/04
BORROWER/OWNER Date

BORROWER/OWNER Date

# NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: July 26, 2004
LOAN NO.: 0060542834 - 9701
TYPE: FIXED RATE

BORROWER(S): ROOSEVELT JILES

ADDRESS: 346 WEST 113TH STREET
CITY/STATE/ZIP: CHICAGO,IL 60628

PROPERTY: 346 WEST 113TH STREET
CHICAGO, IL 60628

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is **DOCUMENT SIGNING DATE** 07/26/2004 ; or
2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Argent Mortgage Company, LLC**
**3 Park Plaza**
**Irvine, CA 92614**

ATTN: FUNDING
PHONE: (800)-561-4072
FAX: (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of **FINAL DATE TO CANCEL** 07/29/2004

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

SIGNATURE ______________________ DATE ______________

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

BORROWER/OWNER ROOSEVELT JILES Date

BORROWER/OWNER VELMA JEAN JILES 7-26-04 Date

BORROWER/OWNER 7/26/04 Date

BORROWER/OWNER Date

# EXHIBIT F

**EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.**
**120 S. LaSalle Street, 18th floor**
**Chicago, Illinois 60603-3403**
**(312) 739-4200**
**(800) 644-4673**
**(312) 419-0379 (FAX)**
**Email: edcombs@aol.com**
**www.edcombs.com**

April 26, 2006

**BY CERTIFIED MAIL**

Argent Mortgage Company, LLC
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

Option One Mortgage Corporation
c/o registered agent
CT Corporation System
208 S. LaSalle, Suite 814
Chicago, IL 60604

Countrywide Home Loans, Inc.
c/o registered agent
Prentice Hall Corporation
33 N. LaSalle Street
Chicago, IL 60602.

Re: Notice of rescission, claim and lien, Roosevelt Jiles and Velma Jean Jiles,346 West 113th Street, Chicago, IL 60628, loan of July 26, 2004

Ladies/Gentlemen:

Each of the above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than one of the companies listed

above, please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on April 26, 2006.

Daniel A. Edelman