# **EXHIBIT 15**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RECEIVED

MAY 1 8 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

TYRONE WALKER and BETTY WALKER, )
)
Plaintiffs, )
)
v. )
)
AMERIQUEST MORTGAGE COMPANY, )
AMERIQUEST MORTGAGE SECURITIES, )
INC., AMC MORTGAGE SERVICES, )
INC., DOES 1-5 and DOES 6-10, )
)
Defendants. )

06C 2807

JUDGE KENNELLY

MAGISTRATE JUDGE ASHMAN

**JURY DEMANDED**

## COMPLAINT

### INTRODUCTION

1.      Plaintiffs Tyrone Walker and Betty Walker bring this action against a "subprime" mortgage lender and its affiliates to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here.

### PARTIES

3.      Plaintiffs Tyrone Walker and Betty Walker are husband and wife and jointly own and reside in a home at 6936 South Vernon Avenue, Chicago, IL 60637.

1

4.      Defendant Ameriquest Mortgage Company is a foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.

5.      Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6.      Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

7.      Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8.      During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

9.      Defendant AMC  Mortgage Services, Inc. is a foreign corporation which does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.

10.     Defendant AMC Mortgage Services, Inc., an affiliate of Ameriquest Mortgage Company, services loans originated by Ameriquest Mortgage Company, and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

11.     Defendant Ameriquest Mortgage Securities, Inc., an affiliate of

2

Ameriquest Mortgage Company, is a foreign corporation which transacts business in Illinois. It holds legal title to loans originated by Ameriquest Mortgage Company. It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

12. Does 1-5 include any other persons, currently unknown to plaintiffs, with any interest in plaintiffs' loan.

13. Does 6-10 include any other parties, separate from Ameriquest and as yet unknown to plaintiffs, involved in performing an appraisal of plaintiffs' home in connection with the loan.

## FACTS RELATING TO PLAINTIFFS

14. Plaintiffs are ordinary consumers struggling to make ends meet. Mrs. Walker is legally disabled and unable to work. Mr. Walker is employed as a mail clerk in the Shipping and Receiving department of Northwestern Medical School. They are paying their mortgage and raising an adopted 12-year-old daughter on a gross household income of just $1,800 per month.

15. Prior to April 22, 2005, plaintiffs were solicited for a refinance mortgage loan with Ameriquest Mortgage Company. They subsequently gave Ameriquest information for a loan application.

16. Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

17. In numerous conversations leading up to and including closing, plaintiffs requested and were informed by Ameriquest that they would receive a loan with a fixed interest rate.

3

18.     Prior to closing, plaintiffs requested a copy of the appraisal for the loan as well as well as, simply, the amount of the appraised value. Ameriquest declined to provide a copy of the appraisal or give them any information concerning it until well after closing.

19.     On information and belief, no one ever came out to inspect plaintiffs' home in connection with the appraisal for the Ameriquest loan.

20.     The loan was closed on April 22, 2005 in plaintiffs' home.

21.     The following are documents relating to the loan:

      a.     A note, <u>Exhibit A</u>;

      b.     A mortgage, <u>Exhibit B</u>;

      c.     An itemization of settlement charges, <u>Exhibit C</u>;

      d.     A Truth in Lending disclosure statement, <u>Exhibit D</u>;

      e.     The three-day notice of right to cancel required by the Federal Reserve Board, <u>Exhibit E</u>; all copies delivered are incomplete;

      f.     A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, <u>Exhibit F</u>.

22.     Although the loan was closed April 22, 2005, Ameriquest did not provide plaintiffs with copies of any closing documents that day in a form that they could keep, including the required Truth-In-Lending disclosures. Ameriquest mailed a set of documents to plaintiffs weeks later, well after the federal and Ameriquest rescission periods expired.

23.     In fact, Ameriquest gave plaintiffs not a fixed interest rate but an adjustable interest rate that can go as high as 13.4%. The adjustable rate will soon increase beyond plaintiffs' ability to afford their monthly payment.

24.     On information and belief, the reported, appraised value of plaintiffs' home was substantially and artificially inflated by Ameriquest and DOES 1-5 for the purpose of increasing the loan amount plaintiffs would appear to qualify for, which ultimately increased the interest and points and fees Ameriquest charged for the loan, i.e, its profits.

25.     On information and belief, Ameriquest appraised plaintiffs' home at $177,100, when, less than a year earlier, plaintiffs had purchased the house for $89,000.

26.     On information and belief, Ameriquest's loan to plaintiff exceeded 100% of the home's market value at the time.

27.     Since refinancing with Ameriquest, plaintiffs have twice attempted to refinance with other lenders - in order to escape the adjustable interest rate - but each time they were turned down and told that Ameriquest's appraisal had been too high.

28.     Thus, Ameriquest effectively tricked and trapped the Walkers in a loan they soon will not be able to afford, placing them at risk of foreclosure.

29.     Plaintiffs were later directed to make payments to AMC Mortgage Services, Inc.

30.     On information and belief, Ameriquest Mortgage Securities, Inc. owns plaintiffs' loan.

31.     In the event Ameriquest Mortgage Securities, Inc. does not own plaintiffs' loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## COUNT I - TILA

32.     Plaintiffs incorporate ¶¶ 1-31 above.

5

33. Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

(a) <u>Consumer's right to rescind.</u>

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's

6

principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

## GROUNDS FOR RESCISSION

34.    In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, or the required financial disclosures, in violation of 15 U.S.C. §1637 and C.F.R. §226.18, for (without limitation) the reasons stated below.

35.    At closing, Ameriquest did not give plaintiffs any TILA disclosures to keep and review. When Ameriquest finally sent them, weeks after closing, they were dated as though the federal (and Ameriquest) rescission periods had expired weeks before.

36.    Further, because plaintiffs were not given copies of any documents at closing, they did not have a meaningful opportunity to review and discover the real loan terms - and exercise their right to cancel - during the federal or Ameriquest rescission periods.

7

37. In addition, all copies of the federal notice of right to cancel eventually delivered to plaintiffs were incomplete.

38. Ameriquest's eventual delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

39. Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

40. Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

41. Ameriquest's substantially inflated appraised value has compromised, beyond plaintiffs' control, their ability to become approved or refinancing. The inflated appraisal concealed the fact that Ameriquest was actually giving plaintiffs an extremely high loan-to-value loan that would entrap them for years and subject them to a rising, adjustable interest rate.

42. Notice of rescission has been given to defendants. A copy is attached as Exhibit G.

43. The loan has not been rescinded.

44. Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

45. 15 U.S.C. §1635(g) provides:

**Additional relief**

8

> In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

    a.    A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

    b.    Statutory damages for the underlying disclosure violation;

    c.    If appropriate, statutory damages for failure to rescind;

    d.    A judgment declaring what obligation, if any, plaintiffs have toward each defendant, taking into account the effects of the inflated appraisal

    e.    Attorney's fees, litigation expenses and costs.

    f.    Such other or further relief as the Court deems appropriate.

## COUNT II - ILLINOIS CONSUMER FRAUD ACT

46.    Plaintiffs incorporate ¶¶ 1-45 above.  This claim is against Ameriquest and Does 6-10.

47.    Defendants violated §2 of the Consumer Fraud Act, 815 ILCS 505/2, by unfairly and deceptively (1) misrepresenting to the plaintiffs the market value of their residential property; (2) concealing the fact that, based on the inflated appraisal, plaintiffs would receive a loan with an extremely high loan-to-value ("LTV") ratio that, defendants knew, would be difficult to refinance later; (3) misrepresenting to plaintiffs that they were going to receive a fixed-rate loan; (4) concealing the true terms of the loan and depriving plaintiffs of any

opportunity to cancel it by not providing them with copies of any of the closing documents until weeks after closing, by which time it appeared that the federal and Ameriquest cancellation periods had long passed.

48.     Defendants engaged in such conduct in the course of trade and commerce.

49.     Defendants intended for plaintiffs to rely on their misrepresentations and concealments.

50.     Plaintiffs would not have taken out the loan if, in response to their inquiries, Ameriquest had informed them that the appraisal was substantially inflated or that they were getting an adjustable rate loan at an extremely high LTV that would be difficult to refinance later.

51.     Plaintiffs were damaged as a result of Defendants' conduct, in that (1) they were charged and paid excess points and fees and interest stemming from the inflated value and principal; (2) they have attempted to but have been prevented from refinancing out of the adjustable-rate, high-LTV loan, which was based on the inflated appraisal; and (3) they are inescapably subject to an adjustable interest rate that can go as high as 13.4%.

52.     Due to the inflated appraisal, plaintiffs have incurred special damages that require a special remedy.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against plaintiffs/counter-defendants for:

a.     A judgment voiding the plaintiffs' mortgage, capable of recordation in the public records, and binding on all defendants;

b.     Appropriate compensatory and punitive damages;

c.    Appropriate special damages; and

c.    Such other or further relief as the Court deems appropriate.


_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)


## JURY DEMAND

Plaintiffs demand trial by jury.


_____
Daniel A. Edelman

11