**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. ) <br> MORTGAGE LENDING PRACTICES ) <br> LITIGATION ) <br> ) <br> _____ ) <br> ) <br> THIS DOCUMENT RELATES TO ALL ) <br> ACTIONS ) <br> ) | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> Centralized before Judge <br> Marvin E. Aspen |

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**APPOINTMENT OF EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC, AS CO-LEAD CLASS COUNSEL**

This Memorandum is respectfully submitted in support of the Edelman, Combs, Latturner & Goodwin, LLC ("ECLG") plaintiffs' Motion for Appointment of Co-Lead Class Counsel, pursuant to Fed. R. Civ. P. 23(g).

**I.    INTRODUCTION**

In order to foster the efficient coordination and administration of all cases in the Ameriquest MDL proceeding, the Court should now appoint class counsel for all cases in the MDL. Fed. Rule Civ. P. 23(g)(2)(A) provides that "[t]he Court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."

In view of the sheer scope, variety and number of cases in the Ameriquest MDL proceeding, which includes both class and individual actions,[1] the ECLG plaintiffs believe that it

---

[1] ECLG plaintiffs see four distinct groupings of cases within the MDL. First, certain class cases propose broad classes of defendants' customers that are multi-state or national in scope. A second grouping consists of class actions proposing classes that are smaller in scope and more narrowly defined, i.e., they are statewide and focus on a single practice that is readily identifiable from disclosure documents. The "Cole" cases, brought by ECLG under the FCRA, present a third, distinct grouping of class actions that do _not_ involve loan origination at all. The described

would be wise for the Court to appoint more than one firm as interim class counsel. Given the number of class actions and individual cases in which ECLG represents the plaintiffs, ECLG believes it deserves a role as co-lead class counsel.[2]

ECLG is ready and willing to work in a co-lead status role with all counsel for plaintiffs. However, ECLG does not believe it is appropriate, from the standpoint of the management of litigation, for it to be excluded as co-lead class counsel. It is not appropriate for firms with only one type of case - cases with large state or national proposed classes - to have complete control over the direction of the other types of cases in the MDL. Plaintiffs in the other types of cases would have no representation. For instance, ECLG has by far more individual cases in the MDL than any other firm. In addition, ECLG represents the plaintiffs in the majority of the "Cole"-type cases in the MDL; these cases involve non-borrowers, plaintiffs and proposed class members who never actually did business with Ameriquest.[3]

---

more fully below. Fourth, there are approximately 65 individual TILA rescission cases currently pending in the MDL and scores of additional cases that currently are or soon will be the subject of tag along notices or motions to reassign as related.

[2]For instance, to date ECLG has a total of 86 cases pending against Ameriquest, broken down as follows: seven class actions for lending practices, six of which are now pending in the MDL (a seventh is pending in Illinois state court); four "Cole" class actions now pending in the MDL (or for which the MDL Panel has issued conditional transfer orders); and 75 individual cases, including 65 of which are now in pending in the MDL and 10 of which are or soon will be subjects of notices of tag along actions or motions to reassign. In addition, ECLG is serving as local counsel in another 12 cases that were originally filed in U.S. District Court for the District of Rhode Island. The plaintiffs in those cases support ECLG's petition for appoint as co-lead counsel.

[3]The Cole cases (named after Cole v. U. S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004)), are brought on behalf of certain non-borrowers under the Fair Credit Reporting Act, 15 U.S.C. § 1681b. The Cole cases allege that credit reports were pulled by Ameriquest (a) without a "firm offer of credit," as opposed to a vague and worthless sales pitch, being sent to the consumer, and (b) failure to make clear and conspicuous disclosures. The FCRA generally prohibits the use or accessing of consumer report (credit report) information without a "permissible purpose." Most

The latter two types of cases require different approaches than the large class cases, approaches which ECLG has honed through experience. Therefore, if the Court does not appoint ECLG to any overall co-lead class counsel role, ECLG would respectfully request that it be put in sole charge of all the ECLG individual cases and all of the "Cole" cases.

Fed. R. Civ. P 23(g)(1)(B) requires that Court-appointed class counsel must "fairly and adequately represent the interests of the class[es]." To reach a finding concerning counsel's ability to do so, the Court <u>must</u> consider four factors: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Further, the Court <u>may</u> consider any other matter pertinent to its determination of counsel's ability to fairly and adequately represent the interests of the class, and the Court <u>may</u> make "further orders" in connection with the appointment of class counsel, as appropriate for the litigation. Fed. R. Civ. P. 23(g)(C)(iv).

---

"permissible purposes" involve consent by or the initiation of a transaction by the conumer. One that does not is making a "firm offer of credit". A lender may obtain a list of persons meeting certain credit criteria if it makes a "firm offer of credit" to each. However, general solicitation or the making of "sales pitches" is not a permissible purpose. In addition, at least through Dec. 1, 2004, it was a violation to fail to make certain disclosures to the consumer about their right to "opt out" of having their credit pulled except in connection with transactions they initiated. The disclosures had to be "clear and conspicuous." Effective August 1, 2005, the FTC prescribed standard disclosures. See generally, in addition to Cole itself, <u>Murray v. GMAC Mortgage Corp.</u>, 434 F.3d 948 (7th Cir. 2006); and <u>Kudlicki vs. Farragut Financial Corp</u>., 05 C 2459, 2006 U.S. Dist. LEXIS 20302 (N.D.Ill., January 20, 2006).

## II.     ECLG WOULD FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS

ECLG would fairly and adequately represent the interests of members of the various classes within the MDL. ECLG notes the concurrence with this viewpoint of two other law firms with cases pending in the MDL.[4] A class is fairly and adequately represented where class counsel are - in the most general sense - qualified, experienced, and generally able to conduct the proposed litigation on behalf of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); accord, Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re Alcoholic Beverages Litigation, 95 F.R.D. 321. In addition, as stated above and analyzed below, the Court must also consider the four 23(g)(1)(c) factors. Finally, Fed. R. Civ. Pro. 23(g)(2)(B) also provides that where more than one adequate applicant seeks appointment as class counsel, "the court must appoint the applicant best able to represent the interests of the class."

### A.     Over Nearly Two Years, ECLG Has Done Extensive Work in Identifying Potential Claims In and For the MDL Proceeding

Fed R. Civ. P. 23(g)(1)(c)(i) requires the Court to consider "the work counsel has done in identifying or investigating potential claims in the action." ECLG has been actively prosecuting both class and individual cases against Ameriquest defendants since July, 2004. Before the MDL petition was filed, ECLG had a consumer fraud class action and scores of individual cases pending in active litigation against Ameriquest and Argent. ECLG took extensive discovery in its individual cases, and, as a result of this discovery, ECLG found and developed new claims against

---

[4]Attached as Exhibit A is a statement of Christopher M. Lefebvre, a principal of Claude Lefebvre, Christopher Lefebvre P.C. Additionally, on June 12, 2006, a second statement was filed separately by Daniel Harris, Esq., of The Law Offices of Daniel A. Harris.

4

Ameriquest defendants, many of which are now being asserted in more recently filed cases within the MDL. ECLG summarizes this work as follows.

In July, 2004, plaintiffs filed <u>Sanchez and Coleman v. Argent and Ameriquest</u>, 04 CH 10533 (Circuit Court of Cook County, IL), a class action against Ameriquest and Argent in Illinois state court alleging a systematic practice of baiting-and-switching Illinois borrowers on loan terms. In the course of extensive briefing four motions to dismiss and amending the complaint, ECLG has conducted extensive investigation of the basic, bait-and-switch fraud claim against the Ameriquest defendants. This has included extensive interviews with scores of plaintiffs and witnesses, many of whom gave affidavits. As this Court is aware, bait-and-switch fraud is undeniably a central allegation in most of the class actions within the MDL. Thus, ECLG is well-prepared to litigate these types of allegations.

Since November, 2004, ECLG has actively litigated scores of individual cases containing many of the same TILA and consumer fraud claims that are now prominent in MDL cases. At present, ECLG has 85 individual cases pending against Ameriquest defendants. To summarize the types of claims, the TILA rescission claims are based on: (1) federal notice of right to cancel forms that fail to disclose the final date to cancel; (2) the failure to provide any federal notice of right to cancel forms, TILA Disclosure Statement and/or other documents at closings; (3) the provision of an inadequate number of federal notice of right to cancel forms; (4) the obfuscation of the federal notice of right to cancel within three business by the simultaneous delivery of an Ameriquest-created, "One Week Cancellation Period Form" which appears to, but does not in fact, extend the federal rescission period; (5) the misdating of the federal notice of right to cancel in light of post-closing alterations in disbursements that were not disclosed to borrower(s); and (6)

5

incomplete disclosure of the payment schedule on the TILA Disclosure Statement. Several of these claims were/are claims of first impression in the Northern District of Illinois. ECLG researched and developed them and vigorously pursued and obtain the discovery necessary to help prove them. In addition, the majority of ECLG's individual cases also contain allegations of bait-and-switch fraud and, sometimes, causes of action for the same under the Illinois Consumer Fraud Act.

Despite Ameriquest's position that it is unwilling to discuss settlement of many of these claims, especially the ECLG claims of first impression, ECLG has successfully negotiated settlements with Ameriquest defendants in five individual cases. In addition and more recently, in response to ECLG's sending of rescission notices on behalf of new clients, Ameriquest has made pre-filing settlement offers of full rescission in approximately eight cases to date. As a result, the parties have been able to fully settle one case, a planned class action, and the parties are in the process of discussing settlement in other individual cases.

ECLG has also moved for and/or briefed summary judgment in six individual cases. For instance, in Jones v. Ameriquest, Judge Coar has granted summary judgment for plaintiff, holding that Ameriquest's TILA Disclosure Statement violated TILA by not fully disclosing the schedule of payments.

---

[5]Jones v. Ameriquest also held that whether Ameriquest's One Week Cancellation Period Form obscures the federal notice of right to cancel is a question of fact for a jury. In Hamm v. Ameriquest, Judge Der-Yeghiayan reached opposite conclusions concerning the exact same claims, holding that Ameriquest's TILA Disclosure Statement and its One Week Form complied with TILA. However, Judge Der-Yeghiayan did not cite any case authority in his analysis. ECLG has appealed his decision with respect to Ameriquest's TILA Statement only. Plaintiff's reply brief was filed today, June 13, 2006. ECLG also notes that it now has fully-briefed motions for summary judgment (and one partially briefed one) pending in four individual cases before other judges in the Northern District of Illinois. (In light of the advanced stages of Jones, Abercrombie, Hubbard and Washington, this Court for the time being declined to reassign these cases to the MDL proceeding.)