IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

IN RE AMERIQUEST MORTGAGE CO.
MORTGAGE LENDING PRACTICES
LITIGATION

MDL No. 1715

Lead Case No. 05-cv-07097

THIS DOCUMENT RELATES TO: ALL
ACTIONS

(Centralized before the Honorable
Marvin E. Aspen)

## PLAINTIFFS' JOINT AND AGREED
## ORGANIZATION AND CASE MANAGEMENT PLAN

Plaintiffs from the following MDL cases join in this proposed Case Management Plan to

govern and control the procedure for the litigation of all actions currently transferred in this

MDL proceeding and for any and all tag-along cases that may be subsequently transferred to this

Court or otherwise coordinated as part of this proceeding:

1.      *C. Williams, et al. v. Ameriquest Mortgage Company*, Case No. 05 CIV 6189
(LTS) (DFE) (S.D.N.Y.);

2.      *Barber, et al. v. Ameriquest Capital Corp. et al.*, Case No. 3:04-CV-1296-J-32
TEM(M.D. Fla.);

3.      *Murphy, et al. v. Ameriquest Mortgage Company,* C.A. No. 04-cv-12651RWZ (D.
Mass.);

4.      *L. Williams, et al. v. Ameriquest Mortgage Company et al.,* C.A. No. 8:05-01036-
EAK-EAJ (M.D. Fla. 2005);

5.      *Burggraff v. Ameriquest Capital Corporation*, Case No. 2:04-cv-09715-MMM-
Mc (C.D. Cal.);

6.      *Brown et al. v. Ameriquest Capital Corp. et al.*, Case No. SAC05-285 AHS
(RNBx) (C.D.  Cal.);

7.      *Quarterman v. Ameriquest Capital Corp.*, Case No. CV05-1426 CAS (RCx)
(C.D. Cal.);

8. *Deborah Juillerat v. Ameriquest Mortgage Company*, Case No. 8:05-cv-01117-DOC-RNB (C.D. Cal.);

9. *Doherty et al. v. Town & Country Credit Corp.*, Case No. MN cv-00589 (JRT/JJG) (D. Minn.);

10. *Madrazo v. Ameriquest Mortgage Company*, Case No. 05-cv-3987 (ERK) (MLO) (E.D. N.Y.);

11. *Ungar v. Ameriquest Mortgage Company*, Case No. 8:05-cv-1849-T-27TBM (M.D. Fla.);

12. *Montanez v. Ameriquest Mortgage Company*, Case No. 06 CA 10244 RWZ (D. Mass.);

13. *Allan et al. v. Argent Mortgage Co. LLC*, Case No.: 3:06-CV-00118 (JCH) (D. Conn.;

14. *Bailey et al. v. Ameriquest Mortgage Company* , Case No.: 3:06-CV-00452 (CFD) (D. Conn.);

15. *Belval et al. v. Ameriquest Mortgage Company, et al.*, Case No.: 3:06-CV-117 (MRK) (D. Conn.);

16. *Bowe et al. v. Ameriquest Mortgage Company*, Case No.: 3:06-CV-119 (MRK) (D. Conn.);

17. *Duncan et al. v. Ameriquest Mortgage Company*, Case No.: 3:05-CV-01831 (JCH) (D. Conn.);

18. Pasacreta et al. v. Ameriquest Mortgage Company, et al., Case No.: 3:05-CV-01888 (MRK) (D. Conn.); and

19. Kahrer v. Ameriquest Mortgage Company, Case No. 05-391 (W.D. Pa.).

Accordingly, the significant majority of Plaintiffs represented by different Plaintiffs' counsel in

the MDL proceeding support this Organization and Case Management Plan.[1]

---

[1] Plaintiffs' counsel supporting this proposed Organization and Case Management Plan attempted to consult with at least one of Plaintiffs' counsel in each class action transferred to the MDL. They also attempted to consult with at least one of Plaintiffs' counsel representing individual consumers whose cases have been transferred, although may not have reached every single case given the number of transfers to the MDL over the past several months. Although in a few instances Proposed Lead Counsel received no response to a contact, Counsel is aware of only one firm that is actually opposed to this proposed leadership structure: Edelman, Combs & Latturner ("Edelman"). Proposed Lead Counsel offered Edelman a variety of opportunities to

The leadership proposed in this Agreed Organization and Management Plan has already been responsible for successfully prosecuting Plaintiffs' request for preliminary relief on behalf of the rescission class; has negotiated the proposed form of Notice of rescission rights to be sent this month to borrowers facing foreclosure; and has posted the bond to secure the preliminary injunction. In addition, the leadership proposed in this Agreed Organization and Case Management Plan has fully briefed the Plaintiffs' pending motions for provisional class certification of rescission class and for preliminary injunctive relief for that class.

1. **Selection and Duties of Plaintiffs' Lead Counsel, Liaison Counsel, and Executive Committee; Division of Work Among Lead, Liaison, Executive Committee and Other Plaintiffs' Counsel Firms**

To act on behalf of Plaintiffs with the responsibilities described herein, Plaintiffs propose that the Court designate:

    a.     **Co-Lead Counsel Selection and Duties**

The firms of Lieff, Cabraser, Heimann & Bernstein, LLP; Roddy Klein & Ryan; and James, Hoyer, Newcomber & Smiljanich, P.A., shall be Plaintiffs' Co-Lead Counsel. These firms have substantial experience serving as lead counsel in complex consumer class actions, including in national predatory lending and servicing class actions in this District and others.[2]

---

participate in the proposed leadership structure, but have been informed that Edelman intends to seek appointment separately from this Court. Although it is not necessary to do so in light of the high quality of the leadership structure proposed here, should the Court be inclined to add the Edelman firm to the leadership structure of this MDL, Proposed Lead Counsel would not object to the separate appointment of the Edelman firm as Liaison counsel for the individual (non-class) cases, but would object to the appointment of the Edelman firm as a co-lead counsel for either the class or individual cases, or with respect to any discrete claim in the MDL. The many Plaintiffs and counsel supporting this Organization and Case Management Plan thus reserve the right to comment on any contrary proposal submitted by the Edelman firm.

[2] The Lieff, Cabraser firm is currently serving as court-appointed Plaintiffs' Co-Lead Counsel in the predatory mortgage servicing case, In re Ocwen Federal Bank FSB Mortgage Servicing Litig., MDL. No. 1604, pending before Judge Norgle in this District. The Roddy, Klein firm served as court-appointed Plaintiffs' Co-Lead Counsel in the national predatory mortgage lending class action, In re Household Lending Litigation, Case No. C 02-1240 CW (N.D. Cal.).

The firm resumes of each of these firms are attached hereto as Exhibits A-C. Co-Lead Counsel shall have the responsibility to communicate with Plaintiffs' counsel and defense counsel on questions of discovery, motions and other pre-trial and trial matters. Co-Lead Counsel shall also have the following responsibilities and duties in this litigation to perform or delegate as appropriate:

      a.      To be lead spokespersons before the Court for Plaintiffs;

      b.      To supervise, manage, and direct all aspects of the litigation on behalf of the Plaintiffs, including delegating specific tasks to other counsel in a manner to ensure that pre-trial preparation for the Plaintiffs is conducted effectively, efficiently and economically;

      c.      To implement any Case Management Orders entered herein, and coordinate all pre-trial matters, including discovery, as set forth herein;

      d.      To assess among Plaintiffs' counsel and advance all costs necessary for proof of all Plaintiffs' claims generally;

      e.      To brief and argue motions for the Plaintiffs, and brief and argue oppositions in proceedings initiated by other parties;

      f.      To consult with Plaintiffs' Executive Committee on matters of common concern;

      g.      To keep Plaintiffs' counsel generally informed of developments involving matters of common concern;

      h.      To conduct pre-trial, trial, and post-trial proceedings;

      i.      To consult with and employ consultants and experts;

---

The James, Hoyer firm served as court-appointed Plaintiffs' Co-Lead Counsel in the national MDL proceeding, In re Allstate Insurance Company Underwriting and Rating Practices Litigation, MDL Docket No. 1457 (M.D. Tenn.).

j. To monitor the activities of Plaintiffs' counsel to assure that schedules are met and that unnecessary expenditures of time and expenses are avoided;

k. To communicate with defense counsel on questions of discovery, motions and other pre-trial matters;

l. To enter into stipulations with defense counsel necessary for the conduct of the litigation;

m. To call meetings of other Plaintiffs' counsel and/or defense counsel to effectuate these provisions as necessary;

n. To negotiate settlements, on behalf of any and all Plaintiffs, subject to Court approval;

o. In the event of a settlement, to obtain necessary approval for said settlement and to propose a Plan of Allocation;

p. To collect Plaintiffs' counsel's time and expense records on a quarterly basis, on the 15th day of the month following the end of the quarter, for work and expenditures for the three-month period ending on the 1st day of that month. Any time that is not reported on such a periodic basis, and any unreported expenses for which records are then available, will not be compensated or reimbursed, absent good cause shown for such reporting failure. Work for the common benefit of the Plaintiffs in the case must be expressly approved by Plaintiffs' Co-Lead Counsel or such work will not be compensated. Reviewing the work of other Plaintiffs' counsel will not be compensated unless reasonably necessary; and

q. To perform all other duties and undertake such other responsibilities as they deem necessary or desirable to properly coordinate Plaintiffs' pretrial, trial and/or appellate activities, or as authorized by further order of the Court.

Defendants may rely upon all agreements made with Plaintiffs' Co-Lead Counsel and such agreements shall be binding on all Plaintiffs whose cases are subject to the jurisdiction of this Court.

**b.**     **Plaintiffs' Liaison Counsel Selection and Duties**

The firm Miller Faucher and Cafferty LLP ("Miller Faucher"), shall serve as Liaison Counsel to the Court should the Court need to contact Plaintiffs' counsel for scheduling or related matters.[3]  Liaison Counsel shall be consulted by Co-Lead Counsel on matters pertaining to Seventh Circuit and Northern District of Illinois practice and procedure.

**c.**     **Plaintiffs' Executive Committee**

Plaintiffs' Executive Committee shall consist of the firms Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP; Donovan Searles LLC; and Crowder, Bedor & Paulson, LLP.[4] Lerach Coughlin shall serve as the Chairman of the Plaintiffs' Executive Committee.  The Chairman of the Executive Committee shall have responsibility for:

a.     communications between Lead Counsel and the Executive Committee;

b.     communications between the Executive Committee and all other Plaintiffs' counsel;

c.     ensuring the timely completion of all specific tasks assigned to Members of the Executive Committee;

---

[3] The firm resume of proposed Liaison Counsel Miller Faucher is attached hereto as Exhibit D. Attached hereto as Exhibit E is a copy of the Order dated February 28, 2006, in *Murray v. Indymac Bank, F.S.B.*, Case No. 04-C-7669 (N.D. Ill.), where the Miller Faucher firm, along with proposed Co-Lead Counsel James Hoyer, represented a group of objectors who successfully challenged an inappropriate class settlement before Judge Samuel Der-Yeghiayan of this District.

[4] The firm resumes of proposed Executive Committee members are attached hereto as Exhibits F-H.

        d.      making recommendations to Lead Counsel concerning the assignment of specific tasks to Members of the Executive Committee or other Plaintiffs' counsel.

At the direction of Lead Counsel, the members of the Executive Committee shall be responsible for:

        a.      Assisting Lead Counsel with expert and fact discovery;

        b.      Assisting Lead Counsel with pre-trial motion practice and briefing;

        c.      Consulting with Lead Counsel on matters of common concern;

        d.      Contributing to the common benefit cost fund for the prosecution of the case; and

        e.      Assisting Lead Counsel in preparing for trial.

        **d.**      **Plaintiffs' Individual Consumer Claims Steering Committee Selection and Duties**

This MDL includes many non-class cases brought by individual consumers against Ameriquest.  These cases may involve individual issues, often based on discussions arising between the individual plaintiff and local (branch-based) employees of Ameriquest.  The necessary localized discovery is best handled by the individual plaintiffs' counsel, under the supervision of this Court.  These cases may also involve individualized issues of state law should Ameriquest pursue foreclosure or other state law collection remedies.  Plaintiffs propose that the Court provide an expedited procedure for remanding individual (non-class) cases in circumstances where Ameriquest is pressing its state law remedies, based on a finding that such cases would proceed most expeditiously and efficiently in the transferring court.  Specifically, Plaintiffs propose that all motions for remand of non-class cases require a response by the non-moving party within ten (10) days or a suggestion of remand be entered without further proceedings.

In addition, the National Consumer Law Center ("NCLC") and Consumer Law Group, LLC ("CLG") shall serve as Co-Chairs of the Individual Consumer Claims Steering Committee.[5] These firms shall be responsible for coordinating Plaintiffs' counsel in all non-class (individual) cases coordinated before this Court.  In addition, these firms will be entitled to any documents that are made available to the members of the Executive Committee.

### e.        Plaintiffs' Committee of the Whole

All Plaintiffs' counsel shall constitute Plaintiffs' Committee of the Whole and shall work in conjunction with Co-Lead Counsel and Plaintiffs' Executive Committee.  In addition, all Plaintiffs' counsel representing individual consumers (in non-class cases) shall work in conjunction with the Co-Chairs of Plaintiffs' Individual Consumer Claims Steering Committee.

### f.        Term of Appointment

The firms that accept the appointment to serve as Plaintiffs' Co-Lead Counsel, Liaison Counsel, Executive Committee member, or Co-Chairs of Plaintiffs' Individual Consumer Claims Steering Committee, agree to serve for as long as they remain counsel in the litigation or until such time as the Court determines that a change in the duration of service or other terms of service shall be made.  The terms of this Organization and Management Plan shall apply automatically to actions later instituted, add-ons, or consolidated cases in this Court that involve similar claims. Plaintiffs propose that the Court appoint the named firms as Plaintiffs' Co-Lead Counsel, Plaintiffs' Liaison Counsel, Plaintiffs' Executive Committee members, and/or Chairs of Plaintiffs' Individual Consumer Claims Steering Committee because of the expectation of their personal commitment and contribution to the prosecution of Plaintiffs' claims and to the successful management of the litigation.

---

[5] The firm resume of NCLC is attached hereto as Exhibit I. The resume of attorney Daniel S. Blinn of CLG is attached hereto as Exhibit J.

2.    **Description of Core Issues in Transferred Cases**

Plaintiffs in these transferred cases allege a wide-ranging scheme of predatory home mortgage lending affecting virtually all of the mortgage loans originated by Ameriquest and its sister companies (collectively "Ameriquest") over the past 10 years.  The challenged practices include, but are not limited to:

- Imposition of significant charges for "discount points" without providing a discount and/or without providing information to allow consumers to assess the economic consequences of agreeing to pay discount points;

- Use of standardized bait and switch marketing practices;

- Use of oppressive and/or unfair variable rate terms;

- Abuse of prepayment penalty provisions;

- Providing false information about the costs and benefits of refinancing an existing Ameriquest loan with a new Ameriquest loan;

- Making false promises about the availability of future refinancing;

- Making loans that Ameriquest knew or should have known were beyond the ability of consumers to repay solely because the loans were secured by substantial home equity;

- Taking advantage of borrowers' educational, economic and physical disabilities and its own superior knowledge of the complex mathematics of mortgage transactions;

- Employing abusive loan servicing practices designed to prevent borrowers from repaying their loans without penalty; and

- Failing to comply with state and federal disclosure laws.

Plaintiffs further allege that Ameriquest incentivized and directed its branch-level employees with a quota and commission system designed to encourage employees to mislead

customers in order to close loans on unfair and oppressive terms. Plaintiffs also contend that Ameriquest illegally accessed the credit reports of potential customers in violation of the Fair Credit Reporting Act. This allowed Ameriquest to obtain private information about millions of American consumers in a manner inconsistent with federal consumer protections.

Plaintiffs seek, *inter alia*, damages, rescission and injunctive relief.

### 3.     Discovery Scheduling

Plaintiffs have served discovery in several of the underlying transferred actions. Plaintiffs are concerned that witnesses and documents should be located and testimony preserved as quickly as possible. Co-Lead Counsel thus propose to serve their initial coordinated discovery requests by no later than June 27, 2006. Plaintiffs request that Defendants be directed to respond to discovery outstanding by no later than July 27, 2006. Plaintiffs also request a ruling on the fully-briefed discovery motion pending in *Isabelle Murphy et al. v. Ameriquest Mortgage Co.*, C.A. No. 04-cv-12651RWZ (D. Mass.) (trans. 05-cv-07101 (N.D. Ill.)), as such a ruling would resolve a variety of discovery disputes that will otherwise delay the discovery process in this case.

### 4.     Consolidation and Scheduling Motion Practice

Plaintiffs request leave to file: (1) a consolidated class action complaint (alleging class claims of borrowers in the MDL on behalf of proposed borrower class representatives in the MDL); and (2) a consolidated class action complaint (alleging class claims of non-borrowers in the MDL, such as those involving firm offers of credit to individuals who did not become Ameriquest customers, on behalf of proposed non-borrower class representatives in the MDL). Plaintiffs request that such consolidated complaints be due to be filed within 30 days of the Court's ruling on the proposed Organization Plan. Plaintiffs request that Defendants be directed to file and serve their responsive pleadings to Plaintiffs' consolidated complaints within twenty-

540952.2

- 10 -

six (26) days thereafter, with Plaintiffs' responses to any Rule 12 motions filed and served thirty (30) days after service of any motion to dismiss and Defendants' replies (if any) filed and served fourteen (14) days after service of Plaintiffs' response.

Except for good cause shown in a particular case transferred to this Court by the MDL Panel after that date, these consolidated complaints (or any amendments to such consolidated complaints as the Court may permit) shall be the operative complaints with respect to all class actions on behalf of borrowers and non-borrowers, respectively, included in MDL No. 1715.

Provided that Plaintiffs receive substantial document discovery by October 2, 2006 and an opportunity to conduct Rule 30(b)(6) depositions before November 6, 2006, Plaintiffs propose to file their Motion for Class Certification no later than December 15, 2006, with Defendants' Opposition to be due on January 16, 2007, and Plaintiffs' Reply due on January 31, 2007.

Plaintiffs also request that the Court expeditiously hear and resolve their fully briefed motions for provisional class certification of the rescission class and for preliminary injunctive relief for that class.

## 5. Settlement and/or Mediation Process

No settlement discussions have occurred. However, to date, the Court has granted Plaintiffs' request for preliminary relief on behalf of the rescission class. In addition, Plaintiffs' motions for provisional class certification of rescission class and preliminary injunctive relief for that class are pending, with Plaintiffs' further motion for class certification expected to be on file by the end of this year. Similarly, notices to consumers regarding the Attorneys General settlement will be mailed later this year. Accordingly, Plaintiffs respectfully submit that it would be appropriate now for the Court to set a schedule for the parties to begin mediation with this Court, the assigned Magistrate Judge, or a private mediator this year. Plaintiffs are willing to discuss settlement at an early practicable date, in connection with the exchange of material

information necessary to formulate their settlement position.  If the parties cannot agree on a mediator, Plaintiffs propose that the Court appoint one after consultation with Plaintiffs' co-lead counsel and defense counsel.

**6.      Procedures for Filing Papers and Service of Parties**

Plaintiffs propose that Defendants be required to serve one copy of any pleading, motion, or other document on Plaintiffs' Co-Lead Counsel and Liaison Counsel (and, in the case of a pleading, motion, or other document relating to an individual constituent action, on Plaintiff's counsel in that individual action).  Any Plaintiff filing a pleading, motion, or other document shall serve one copy of the same on defense counsel.  Service of moving papers, briefs and exhibits shall be made on the opposing party by e-filing on the same day that papers are filed with the Court.  Where practicable, service of exhibits shall also be served on the same day as filing with the Court, or if not practicable, by overnight mail.

**7.      Status of MDL Proceedings**

Attached hereto as Exhibit K is a chart reflecting the status of cases in the MDL proceeding as of June 9, 2006.  At present there are a total of 161 cases including 25 class actions (6 of which have not been transferred and may be subject to opposition before the MDL Panel), 127 individual cases (73 filed in Illinois that do not require transfer; 47 transferred; 14 where transfer has been opposed; and 27 where the MDL panel is awaiting further information), 7 cases that were transferred without a copy of the underlying complaint, and 1 transferred case which alleges it is brought on behalf of the general public.  Plaintiffs' propose that the Court order defense counsel and Plaintiffs' Co-Lead Counsel to meet and confer no less often then quarterly in order to provide the Court and the parties with a mutually agreed list of the cases then pending in the MDL (the "quarterly report").  The quarterly report would also include an update on the status of any matters then pending before the Court.

540952.2

8.      **Plaintiffs' Analysis of Impact of Ameriquest's Attorney General Settlement on this Case**

In January, 2006, Ameriquest and a consortium of state Attorneys General announced a settlement that provides $295 million in partial restitution to Ameriquest customers. The settlement is an "opt-in" settlement. Thus, each Ameriquest customer will be asked to decide whether to accept a payment in exchange for a release of claims. Individuals who do not accept a settlement payment will retain their right to proceed here or in other forums. The settlement resolves only the claims of the state entities and the claims of those borrowers who choose to accept a payment and provide a release.

Though the proposed distribution formula is not yet available, simple mathematics indicates that Ameriquest customers will be offered an average payment of $407.[6] Under the settlement agreement, the Attorneys General are gathering data necessary to establish distribution formulae. *See* Attorney General Settlement Agreement at V. Estimates of the earliest date on which notice and claims forms will be mailed range up to one year from the date of settlement. As of June, 2006, notice has not been mailed.

The Attorney General settlement plainly cannot resolve the cases before this Court. Many of the named Plaintiffs have already expressed an intention to decline monetary relief available from the Attorneys General and to proceed with their cases. These individuals are entitled to their day in court. Furthermore, it is inconceivable that all 725,000 eligible homeowners will accept settlement benefits and release their claims. If even 20% of Ameriquest customers decline a settlement payment, they would form a group of 145,000 people eligible for

---

[6] $295 million divided by 725,000 yields $407. This amount is obviously far less than the value of a remedy which cancels the obligation to pay finance charges. 15 U.S.C. § 1635(b). In addition, the Attorney General settlement has no special provisions for relief to delinquent borrowers who are facing foreclosure. Proposed injunctive relief, while broad, is applicable prospectively only.

relief in class litigation.  This is far more than would be necessary to satisfy the numerosity

requirement of Fed. R. Civ. P. 23(a)(1).  *Swanson v. American Consumer Indus.,* 415 F.2d 1326,

1333 n.9 (7th Cir.1969) (40 class members sufficient to satisfy numerosity).

In a similar recent case, a $525 million predatory lending settlement between the state

Attorneys General and Household International resulted in a higher average restitution payment

than contemplated under the Ameriquest settlement to a larger group of homeowners (900,000).

Nevertheless, approximately 20% of those individuals declined to accept a settlement payment

from their state Attorney General to release their claims.  The separately filed private class

actions then settled for additional benefits to the class valued at more than $150 million.

Ameriquest apparently believes that its customers can appropriately be asked to decide

whether to release their legal rights in a vacuum of information about the scope and value of

those legal claims.  Plaintiffs, for their part, believe that Ameriquest customers should have the

fullest information possible about their legal rights in order to make an informed choice among

their options. Early notice of the potential extended rescission right, as requested in Plaintiffs'

motion for preliminary injunction, would provide essential information about the trade-off

Ameriquest's customers are being asked to make.

**9.    Later Filed Cases**

Plaintiffs respectfully request that the Court enter an order, effectuating the requirements

set forth in this proposed Plan, and that the terms of this order, including pretrial consolidation,

shall apply automatically to actions later instituted, add-ons, or actions coordinated or

consolidated in this court that involve similar claims.  Plaintiffs further propose that objections to

the terms of the Court's order be waived unless filed with the Court within ten (10) days of the

inclusion of an action in these proceedings.  A copy of the objection should be served on all Co-

Lead Counsel and counsel for Defendants.

10. <u>**Conclusion**</u>

Plaintiffs respectfully request that the Court adopt Plaintiffs' Joint and Agreed

Organization and Management Plan.

Respectfully submitted,

Dated: June 13, 2006


| */s/ Kelly M.* | */s/ Gary Klein* |
|---|---|
| Kelly M. Dermody | Gary Klein |

Kelly M. Dermody (CA Bar No. 171716)
Caryn Becker (CA Bar No. 196947)
LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Gary Klein
Elizabeth Ryan
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA 02111-2810
Telephone: (617) 357-5500 ext. 15
Facsimile: (617) 357-5030


| */s/ Terry Smiljanich* |
|---|
| Terry Smiljanich |

Terry Smiljanich
Jill Bowman
JAMES, HOYER, NEWCOMBER
  & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL 33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

*Proposed Plaintiffs' Co-Lead Counsel*

*/s/ Marvin A. Miller*
_____
    Marvin A. Miller

Marvin A. Miller
MILLER FAUCHER AND CAFFERTY LLP
30 N. LaSalle Street, Suite 3200
Chicago, IL 60602
Telephone: (312) 782-4800
Facsimile: (312) 782-4485

*Proposed Plaintiffs' Liaison Counsel*


*/s/ Samuel H. Rudman*          */s/ Michael Donovan*
_____    _____
    Samuel H. Rudman               Michael Donovan

Samuel H. Rudman               Michael Donovan
Evan J. Kaufman                DONOVAN SEARLES LLC
LERACH COUGHLIN STOIA GELLER     1845 Walnut Street, Suite 1100
RUDMAN & ROBBINS LLP          Philadelphia, PA 19103
58 South Service Road, Suite 200     Telephone: (215) 732-6067
Melville, NY 11747             Facsimile: (215) 732-8060
Telephone: (631) 367-7100
Facsimile: (631) 367-1173


*/s/ William H. Crowder*
_____
    William H. Crowder

William H. Crowder
Gregory L. Paulson
CROWDER, BEDOR & PALLSON, LLP
555 West 7th Street, Suite 201
St. Paul, MN 55201
Telephone: (651) 225-8330
Facsimile: (651) 204-2134

*Plaintiffs' Executive Committee*

|  |  |
|---|---|
| */s/ Daniel S. Blinn* | */s/ Charles Delbaum* |
| Daniel S. Blinn | Charles Delbaum |

Daniel S. Blinn
CONSUMER LAW GROUP, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, CT  06067
Telephone:  (860) 571-0408
Facsimile:  (860) 571-7457

Charles Delbaum
NATIONAL CONSUMER LAW CENTER
77 Summer Street, 10th Floor
Boston, MA  02110
Telephone:  (617) 542-8010
Facsimile:  (617) 542-8028

*Proposed Plaintiffs' Individual Consumer Claims Steering Committee*

W. Roderick Bowdoin
DARBY PEELE BOWDOIN & PAYNE
P.O. Drawer 1707
Lake City, FL  32056
Telephone:  (836) 752-4120
Facsimile:  (836) 755-4569

Douglas Bowdoin
DOUGLAS BOWDOIN, P.A.
P.O. Box 2254
Orlando, FL  32802-2254
Telephone:  (407) 422-0025
Facsimile:  (407) 843-2448

J. Craig Bourne
1520 East Livingston Street
Orlando, FL  32801
Telephone:  (407) 894-6750
Facsimile:  (407) 894-4735

Laurence Tien
Kamran Mashayekh
THE TIEN LAW FIRM, LLP
10235 West Little York Road, Suite 470
Houston, TX 77040
Telephone:  (713) 937-0223
Facsimile:  (713) 937-0220

Theresa I. Wigginton
915 Oakfield Drive, Suite F
Brandon, Florida 33511
Telephone:  (813) 653-2992
Facsimile:  (813) 655-7082

Jonathan A. Boynton
Sarah Brite Evans
KIRBY NOONAN LANCE & HOGE, LLP
One America Plaza
600 W. Broadway, Suite 1100
San Diego, CA 92101-3387
Telephone: 619/231-8666
Facsimile: 619/231-9593

Matthew J. Zevin
STANLEY, MANDEL & IOLA, L.L.P.
 550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:  (619) 235-5306
Facsimile:  (815) 377-8419

Andrew S. Kierstead
LAW OFFICE OF ANDREW S. KIERSTEAD
1001 SW Fifth Avenue, Suite 1100
Portland, OR  97204
Telephone:  (508) 224-6246
Facsimile:  (508) 224-4356

Marc R. Stanley
Roger L. Mandel
Martin Woodward
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, TX  75205
Telephone: (214) 443-4300
Facsimile: (214) 443-0358

Thomas G. Shapiro
Theodore M. Hess-Mahan
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile:  (617) 439-0134

Richard J. Fuller
1700 US Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
Telephone: (612) 341-1209
Facsimile: (612) 339-3161

David J. George
Robert J. Robbins
Stuart A. Davidson
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432
Telephone:  561/750-3000
Facsimile: 561/750-3364

Gary F. Lynch
36 N. Jefferson Street
New Castle, PA  16101
Telephone: (724) 656-1555

*Additional Plaintiffs' Counsel*

# EXHIBIT A

# *LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP*

*Embarcadero Center West*
*275 Battery Street, 30th Floor*
*San Francisco, CA  94111-3339*
*Telephone:  (415) 956-1000*
*Facsimile:  (415) 956-1008*

*780 Third Avenue*
*48th Floor*
*New York, NY  10017-2024*
*Telephone:  (212) 355-9500*
*Facsimile:  (212) 355-9592*

*1100 New York Ave., N.W.*
*Suite 1080 - West Tower*
*Washington, DC 20005-3934*
*Telephone:  (202) 582-1000*
*Facsimile:  (202) 582-1500*

*9401 Wilshire Boulevard*
*Twelfth Floor*
*Beverly Hills, CA 90212-2997*
*Telephone:  (310) 275-9400*
*Facsimile:  (310) 275-9405*

*One Nashville Place*
*150 Fourth Avenue North, Suite 1650*
*Nashville, TN  37219-2415*
*Telephone:  (615) 313-9000*
*Facsimile:  (615) 313-9965*

*E-mail:  mail@lchb.com*
*Website:  www.lieffcabraser.com*

## FIRM PROFILE:

Lieff, Cabraser, Heimann & Bernstein, LLP, is a sixty-eight attorney, AV-rated law firm founded in 1972 with offices in San Francisco, New York, Washington, D.C., Beverly Hills and Nashville.  Lieff Cabraser has a diversified practice, successfully representing plaintiffs in the fields of personal injury and mass torts, securities fraud, employment discrimination and unlawful employment practices, product defect, antitrust, consumer protection, aviation, environmental and toxic exposure, and human rights.  Our clients include individuals, classes or groups of persons, businesses, and public and private entities.

Lieff Cabraser has served as court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States. With co-counsel, we have represented clients across the globe in cases filed in American courts. We have litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the last decade.

Lieff Cabraser is among the largest firms in the United States that only represent plaintiffs.  The firm enjoys a national reputation for professional integrity and the successful prosecution of our clients' claims.  We possess sophisticated legal skills and the financial resources necessary for the handling of large, complex cases, and for litigating against some of the nation's largest corporations.  We take great pride in the leadership roles our firm plays in many of this country's major cases, including those resulting in landmark decisions and precedent-setting rulings.

In 2005, in its annual list of the plaintiffs' firms "doing the most to shape the law," *The National Law Journal* selected Lieff Cabraser as one of the nation's top 12 plaintiffs' firms.

80577.1

Lieff Cabraser was also a member of *The National Law Journal*'s Plaintiffs' "Hot List" in 2004 and 2003. We are one of only five plaintiffs' firms in the nation to receive this award each of the last three years.

*CASE PROFILES:*

###   A.   Personal Injury and Products Liability Litigation

We are committed to providing the very best representation and support possible for our clients, and to obtaining the highest compensation under law the law for their claims. Since 1995, Lieff Cabraser has obtained over $275 million in settlements and judgments for our clients with personal injury and wrongful death cases in federal and states courts across America. Currently, we are prosecuting scores of lawsuits involving injuries and deaths resulting from all types of negligent conduct and design defects, including cases arising out of air disasters and vehicle rollover accidents. We are also representing patients who received defective medial devices, contaminated blood products, and prescription drugs with undisclosed, dangerous side effects.

Our successful personal injury and products liability cases, with the exception of aviation cases which are profiled separately, include:

1.   ***Multi-State Tobacco Litigation***. Lieff Cabraser represented the Attorneys' General of Massachusetts, Louisiana and Illinois, several additional states, and 18 cities and counties in California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers. The suits were part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general. The states, cities and counties sought both to recover the public costs of treating smoking-related diseases and require the tobacco industry to undertake extensive modifications of its marketing and promotion activities in order to reduce teenage smoking. In California alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid over the next 25 years.

2.   ***Individual Vehicle Injury Lawsuits.*** Lieff Cabraser has an active practice prosecuting claims for clients injured, or the families of loved ones who have died, by the wrongful conduct of other drivers or due to unsafe and defective vehicles, tires and other automotive equipment. We are representing clients in actions involving fatalities and serious injuries due to rollover accidents of fifteen passenger vans and sports utility vehicles. Plaintiffs allege that the vans and SUVs were defectively designed because they pose an unreasonable risk of rollover during foreseeable driving conditions.

We also represent clients in many other vehicle injury cases. These cases include personal injuries resulting from fire allegedly caused by Ford pick-ups and SUVs with defective cruise control switches. We have also

successfully represented owners of certain Jeep Grand Cherokees and Dodge Durangos who charged that their vehicles suddenly shifted from park into reverse, even when the engine was not running due to a design defect.

3. ***Fen-Phen ("Diet Drugs") Litigation.*** Our firm continues to represent individuals pursuing personal injury claims due to injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux). We dedicate substantial resources and attention to these clients and are available for confidential consultations for anyone who ingested Redux or Pondimin.

Lieff Cabraser filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to adequately warn physicians and consumers of risks associated with the drugs. Since the recall was announced in 1997, Lieff Cabraser has represented over 325 individuals who have suffered heart and/or lung damage, most often consisting of cardiac valve damage and/or Primary Pulmonary Hypertension, after ingesting Pondimin or Redux. In addition, Lieff Cabraser prosecuted class action claims that sought medical monitoring relief and personal injury damages for Pondimin or Redux users. In *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation filed across the nation in federal courts. In August 2000, the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage. Lieff Cabraser also served on the Plaintiffs' Executive Committee in the California Coordinated Proceedings in California state court, and as class counsel in the State of Washington certified medical monitoring action.

4. ***Blood Factor VIII And Factor IX Litigation.*** Working with counsel in Asia, Europe, Central and South America and the Middle East, Lieff Cabraser represents hundreds of hemophiliacs worldwide, or their survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and Americans with hemophilia who contracted HCV, from contaminated and defective blood factor products produced by American pharmaceutical companies. In 2004, Lieff Cabraser was appointed Plaintiffs' Lead Counsel of the "second generation" Blood Factor MDL litigation presided over by Judge Grady in the Northern District of Illinois. This groundbreaking litigation follows upon a two-month trial directed by Richard M. Heimann in 2003 in California state court on behalf of a person with hemophilia who is HIV-positive. Although the jury was unable to render a verdict, the evidence produced at trial was sufficient to

convince the defendant on the eve of retrial to enter into one of the largest individual settlements in the history of the blood factor litigation.

5. ***In re Vioxx Products Liability Litigation***, MDL No. 1657 (E.D. La.). We represent patients that suffered heart attacks or strokes, and the families of loved ones who died, after having being prescribed the arthritis and pain medication Vioxx. In individual personal injury lawsuits against Merck, the manufacturer of Vioxx, we allege that Merck falsely promoted the safety of Vioxx and failed to disclose the full range of the drug's dangerous side effects. In April 2005 in the federal multi-district litigation, the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Steering Committee, which has the responsibility of conducting all pretrial discovery of Vioxx cases in Federal court and pursuing all settlement options with Merck.

6. ***Sulzer Hip and Knee Implants Litigation.*** In December 2000, Sulzer Orthopedics, Inc., announced the recall of approximately 30,000 units of its Inter-Op Acetabular Shell Hip Implant, followed in May 2001 with a notification of failures of its Natural Knee II Tibial Baseplate Knee Implant. In coordinated litigation in California state court, *In re Hip Replacement Cases*, JCCP 4165, Lieff Cabraser serves as Court-appointed Plaintiffs' Liaison Counsel and Co-Lead Counsel. In the federal litigation, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, MDL 1410, Lieff Cabraser played a significant role in negotiating a revised settlement with Sulzer valued at more than $1 billion. In May 2002, the Court granted final approval to the revised settlement. Lieff Cabraser serves as Class Counsel for Subclass V of the settlement (class members with unrevised reprocessed Inter-Op shells).

7. ***In re Baycol Products Litigation***, MDL No. 1431 (D. Minn.). Baycol was one of a group of drugs called statins, intended to reduce cholesterol. In August 2001, Bayer A.G. and Bayer Corporation, the manufacturers of Baycol, withdrew the drug from the worldwide market based upon reports that Baycol was associated with serious side effects and linked to the deaths of over 100 patients worldwide. In the federal multi-district litigation, Lieff Cabraser serves as a member of the Plaintiffs' Steering Committee (PSC) and the Executive Committee of the PSC. In addition, Lieff Cabraser represented approximately 200 Baycol patients who have suffered injuries or family members of patients who died allegedly as a result of ingesting Baycol. In these cases, Lieff Cabraser reached confidential favorable settlements with Bayer.

8. ***In re Simon II Litigation***, No. 00-CV-5332 (JBW) (E.D. N.Y.). Lieff Cabraser serves as Lead Class Counsel for a nationwide, punitive damages class of cigarette smokers. In September 2002, U.S. District Court Judge Jack B. Weinstein certified a class of persons who smoke or smoked cigarettes, and were first diagnosed by a physician with a qualifying

smoking-related disease on or after April 9, 1993 to the present. *In re Simon II Litigation*, 211 F.R.D. 86 (E.D. N.Y. 2002). Plaintiffs allege that the defendant cigarette companies manufactured, marketed and sold their cigarettes while knowing, but fraudulently denying and concealing, that they were defective and posed significant health risks to those who used them. The court's certification order is limited to punitive damages only – the purpose of the case is to prove that the class is entitled to an award of punitive damages for the serious wrongful conduct of the cigarette companies. In May 2005, the Court of Appeals vacated Judge Weinstein's class certification order.

9.  ***In re Silicone Gel Breast Implants Products Liability Litigation***, MDL No. 926 (N.D. Ala.). Lieff Cabraser serves on the Plaintiffs' Steering Committee and was one of five members of the negotiating committee which achieved a $4.25 billion global settlement with certain defendants of the action. This was renegotiated in 1995, and is referred to as the Revised Settlement Program ("RSP"). Over 100,000 recipients have received initial payments, reimbursement for the explantation expenses and/or long term benefits.

10. ***In re Telectronics Pacing Systems Inc., Accufix Atrial "J" Leads Products Liability Litigation***, MDL No. 1057 (S.D. Ohio). Lieff Cabraser served on the court-appointed Plaintiffs' Steering Committee in a nationwide products liability action alleging that defendants placed into the stream of commerce defective pacemaker leads. In April 1997, the district court re-certified a nationwide class of "J" Lead implantees with subclasses for the claims of medical monitoring, negligence and strict product liability. A summary jury trial utilizing jury instructions and interrogatories designed by Lieff Cabraser occurred in February 1998. A partial settlement was approved thereafter by the district court, but reversed by the Court of Appeals. In March 2001, the district court approved a renewed settlement that included a $58 million fund to satisfy all past, present and future claims by patients for their medical care, injuries, or damages arising from the lead.

11. ***In re Felbatol Products Liability Litigation,*** MDL No. 1048 (N.D. Cal.). Lieff Cabraser served as Co-Lead Class Counsel and Plaintiffs' Liaison Counsel in this nationwide litigation asserting medical monitoring, compensatory and punitive damages claims on behalf of 100,000 users of the anti-epilepsy drug Felbatol, who alleged present and potential injuries from its serious adverse effects, including liver failure and aplastic anemia. The nationwide Plaintiff class was certified on March 15, 1995; certification was vacated for further findings by the Ninth Circuit in *Valentino v. Carter-Wallace*, 97 F.3d 1277 (9th Cir. 1996), which affirmed the viability of nationwide mass tort class actions. The litigation was settled favorably on behalf of all major injury claimants in March 1997.

12. ***In re Cordis Pacemaker Product Liability Litigation***, MDL No. 850 (S.D. Ohio). Lieff Cabraser represented a certified nationwide class of Cordis pacemaker recipients on personal injury, emotional distress, fraud, equitable relief, and pacemaker explant compensation claims. In 1995, shortly before trial, Lieff Cabraser negotiated and obtained Court approval of a $21 million settlement of the action.

13. ***In re Copley Pharmaceutical, Inc., "Albuterol" Products Liability Litigation***, MDL No. 1013 (D. Wyo.). Lieff Cabraser served on the Plaintiffs' Steering Committee in a class action lawsuit against Copley Pharmaceutical, which manufactured Albuterol, a bronchodilator prescription pharmaceutical. Albuterol was the subject of a nationwide recall in January 1994 after a microorganism was found to have contaminated the solution, allegedly causing numerous injuries including bronchial infections, pneumonia, respiratory distress and, in some cases, death. In October 1994, the district court certified a nationwide class on liability issues. *In re Copley Pharmaceutical*, 161 F.R.D. 456 (D. Wyo. 1995). In November 1995, the district court approved a $150 million settlement of the litigation.

**B.** **Securities and Investment Fraud**

1. ***In re Scorpion Technologies, Inc. Securities Litigation I***, No. C-93-20333-EAI (N.D. Cal.); ***Dietrich v. Bauer***, No. C-95-7051-RWS (S.D.N.Y.); ***Claghorn v. Edsaco***, No. 98-3039-SI (N.D. Cal.). Lieff Cabraser served as Co-Lead Counsel in class action suits arising out of an alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its officers, accountants, underwriters and business affiliates to inflate the company's earnings through reporting fictitious sales. In *Scorpion I*, the Court found plaintiffs had presented sufficient evidence of liability under Federal securities acts against the accounting firm Grant Thornton for the case to proceed to trial. *In re Scorpion Techs.*, 1996 U.S. Dist. LEXIS 22294 (N.D. Cal. Mar. 27, 1996). In 1988, the Court approved a $5.5 million settlement with Grant Thornton. In 2000, the Court approved a $950,000 settlement with Credit Suisse First Boston Corporation. In April 2002, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd. The jury found that Edsaco aided Scorpion in setting up phony European companies as part of scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings. Included in the jury verdict, one of the largest verdicts in a securities fraud suit in the U.S. in 2002, was $165 million in punitive damages. Richard M. Heimann conducted the trial for plaintiffs.

Following the *Edsaco* trial, the parties reached a settlement of the action

on favorable monetary terms to the class, which included Edsaco's relinquishment of its right to appeal and the plaintiff's agreement to vacate the jury verdict. On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation: "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here. You were opposed by extremely capable lawyers. It was an uphill battle. There were some complicated questions, and then there was the tricky issue of actually collecting anything in the end. I think based on the efforts that were made here that it was an excellent result for the class. . . . [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."

2. ***Merrill Lynch Fundamental Growth Fund and Merrill Lynch Global Value Fund, Inc., v. McKesson HBOC, Inc., et al.,*** No. 02-405792 (Cal. Superior Ct.). Lieff Cabraser served as counsel for two Merrill Lynch mutual funds in a private lawsuit filed alleging that a massive accounting fraud occurred at HBOC & Company ("HBOC") before and following its 1999 acquisition by McKesson Corporation ("McKesson"). The funds charged that defendants, including the former CFO of McKesson HBOC, the name McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $150 million in losses for plaintiffs. In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S. Attorney and SEC. *McKesson HBOC, Inc. v. Superior Court*, 115 Cal. App. 4th 1229 (2004). In October 2005, the parties entered into a confidential settlement, the terms of which were satisfactory to the Merrill Lynch Funds.

3. ***In re Network Associates, Inc. Securities Litigation***, No. C-99-1729-WHA (N.D. Cal.). Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors. The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price. In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the *Network Associates* settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel . . . We have class counsel who's one of the most foremost law firms in the country in both securities law and class actions. And they have a very excellent reputation for the conduct of these kinds of cases and their experience and views . . ."

4. *In re California Micro Devices Securities Litigation*, No. C-94-2817-VRW (N.D. Cal.). Lieff Cabraser served as Liaison Counsel for the Colorado Public Employees' Retirement Association and the California State Teachers' Retirement System, and the class they represented. Prior to 2001, the Court approved $19 million in settlements. On May 24, 2001, the Court approved an additional settlement of $12 million, which, combined with the earlier settlements, provided class members an almost complete return on their losses. The settlement with the company included multi-million dollar contributions by the former Chairman of the Board and Chief Executive Officer.

Commenting in 2001 on Lieff Cabraser's work in *Cal Micro Devices*, U.S. District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation." One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable. In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

5. *In re FPI/Agretech Securities Litigation*, MDL No. 763 (D. Haw., Real, J.). Lieff Cabraser served as Lead Class Counsel on behalf of multiple classes of investors defrauded in a limited partnership investment scheme. The Court approved $15 million in partial pretrial settlements. At trial, the jury returned a $25 million verdict, which included $10 million in punitive damages plus costs, interest, and attorneys' fees, against non-settling defendant Arthur Young & Co. on securities and tort claims arising from its involvement in the fraud. Richard M. Heimann served as Lead Trial Counsel in the class action trial. On appeal, the compensatory damages judgment was affirmed and the case was remanded for retrial on punitive damages. In December 1994, the Court approved a $17 million class settlement with Ernst & Young.

6. *Albert, et al. v. Alex. Brown Management Services, Inc., et al.; Baker, et al. v. Alex. Brown Management Services, Inc., et al.* (Del. Superior Court). In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that resulted in an aggregate loss of hundreds of millions of dollars. The suits name as defendants Deutsche Bank and its subsidiaries Alex Brown Management Services and Deutsche Bank Securities, members of the funds' management committee, as well as DC Investments Partners and two of its principles. Among the plaintiff-investors are 70 high net worth individuals.

7.     ***Kofuku Bank Ltd. and Namihaya Bank Ltd. v. Republic New York Securities Corp., et al.***, No. 00 CIV 3298 (S.D.N.Y.); and ***Kita Hyogo Shinyo-Kumiai v. Republic New York Securities Corp., et al.***, No. 00 CIV 4114 (S.D.N.Y.). Lieff Cabraser represented Kofuku Bank, Namihaya Bank and Kita Hyogo Shinyo-Kumiai (a credit union) in individual lawsuits against, among others, Martin A. Armstrong and HSBC, Inc., the successor-in-interest to Republic New York Corporation, Republic New York Bank and Republic New York Securities Corporation for alleged violations of federal securities and racketeering laws. Through a group of interconnected companies owned and controlled by Armstrong – the Princeton Companies – Armstrong and the Republic Companies promoted and sold promissory notes, known as the "Princeton Notes," to more than eighty of the largest companies and financial institutions in Japan. Lieff Cabraser's lawsuits, as well as the lawsuits of dozens of other Princeton Note investors, alleged that the Princeton and Republic Companies made fraudulent misrepresentations and non-disclosures in connection with the promotion and sale of Princeton Notes, and that investors' moneys were commingled and misused to the benefit of Armstrong, the Princeton Companies and the Republic Companies. In December 2001, the claims of our clients and those of the other Princeton Note investors were settled. As part of the settlement, our clients recovered more than $50 million, which represents 100% of the value of their principal investments less money they received in interest or other payments.

8.     ***Allocco et al. v. Gardner et al.***, No. Case No. GIC 806450 (Cal. Superior Ct.). Lieff Cabraser represents Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen and certain entities that entered into fraudulent transactions with Peregrine. The lawsuit, filed in California state court, arises out of Peregrine's August 2001 acquisition of Remedy. Plaintiffs charge that they were induced to exchange their Remedy stock for Peregrine stock on the basis of false and misleading representations made by defendants. Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

9.     ***In re National Century Financial Enterprises, Inc. Investment Litigation***, MDL 1565 (S.D. Ohio). Lieff Cabraser serves as Lead Counsel for the New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund in a

securities fraud and breach of fiduciary duties lawsuit against Bank One, JPMorgan Chase Bank, Credit Suisse First Boston LLC, and additional defendants. The complaint charges that plaintiffs suffered $89 million in losses as a result of a massive Ponzi scheme orchestrated and implemented by National Century Financial Enterprises and defendants.

10. ***Alaska State Department of Revenue, et al. v. America Online, Inc., et al.***, No. 1JU-04-503 (Alaska Superior Ct.). Serving as co-counsel with the Alaska Attorney General, Lieff Cabraser filed a complaint in April 2004 against America Online, Inc., Time Warner, Inc., Ernst & Young, Morgan Stanley, and certain current and former officers and directors. The complaint alleges that several State of Alaska funds incurred substantial losses in their investments in AOL and Time Warner stock because the defendants misrepresented revenues and subscriber numbers before and after the merger of AOL and Time Warner.

11. ***Informix/Illustra Securities Litigation***, No. C-97-1289-CRB (N.D. Cal.). Lieff Cabraser represented Richard H. Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc. ("Illustra"), and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation ("Informix") in connection with Informix's 1996 purchase of Illustra. Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company. The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition. In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company alleged to have committed securities fraud. Our clients, the Illustra shareholders, received approximately 30% of the net settlement fund.

12. ***In re Media Vision Technology Securities Litigation***, No. CV-94-1015 (N.D.Cal.). Lieff Cabraser serves as Co-Lead Counsel in a class action lawsuit which alleged that certain of Media Vision's officers, outside directors, accountants and underwriters engaged in a fraudulent scheme to inflate the company's earnings, and issued false and misleading public statements about the company's finances, earnings and profits. By 1998, the Court had approved several partial settlements with many of Media Vision's officers and directors, accountants and underwriters which totalled $31 million. The settlement proceeds have been distributed to eligible class members. The evidence that Lieff Cabraser developed in the civil case led prosecutors to commence an investigation and ultimately file criminal charges against Media Vision's former Chief Executive Officer and Chief Financial Officer. The civil action against Media Vision's CEO and CFO was stayed pending the criminal proceedings

against them.  In the criminal proceedings, the CEO pled guilty on several counts, and the CFO was convicted at trial.  In October, 2003, the Court granted Plaintiffs' motions for summary judgment and entered a judgment in favor of the class against these two defendants in the amount of $188 million.

13.     *Nguyen v. FundAmerica*, No. C-90-2090 MHP (N.D. Cal., Patel, J.), 1990 Fed. Sec. L. Rep. (CCH) ¶¶ 95,497, 95,498 (N.D. Cal. 1990).  Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants.  The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets.  The Bankruptcy Court permitted class proof of claims.  Lieff Cabraser obtained dual District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

14.     *In re First Capital Holdings Corp. Financial Products Securities Litigation*, MDL No. 901 (C.D. Cal.).  Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements.  This policyholder settlement generated over $1 billion in restored life insurance policies, and was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

15.     *In re Precious Metals Dealers/Safrabank Securities Litigation*, MDL No. 804 (C.D. Cal.)  Lieff Cabraser served as Lead Counsel for a class of purchasers who were allegedly fraudulently induced to purchase precious metal through similar high pressure sales pitches.  The case resulted in a $10 million settlement.

C. **Employment Discrimination and Unfair Employment Practices**

1. ***Butler v. Home Depot***, No. C94-4335 SI (N.D. Cal.). Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment. The class was certified in January 1995. In January 1998, the Court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree. Under the terms of the settlement, Home modified its hiring, promotion, and compensation practices to ensure that interested and qualified women were hired for, and promoted to, sales and management positions.

   On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provides "a very significant monetary payment to the class members for which I think they should be grateful to their counsel…Even more significant is the injunctive relief that's provided for . . ." By 2003, the injunctive relief created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of over approximately $100 million per year in wages for female employees.

   In 2002, Judge Illston stated that the injunctive relief has been a "win/win" ...for everyone, because ...the way the Decree has been implemented has been very successful and it is good for the company as well as the company's employees.

2. ***In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation,*** MDL No. 1439 (D. Or.). Lieff Cabraser and co-counsel represent personal lines claims representatives of Farmers' Insurance Exchange seeking unpaid overtime. In November 2003, after a three week liability phase trial, the Court held that Farmers' claims adjusters who handle auto and low level property claims are entitled to overtime. 300 F.Supp. 2d 1020 (2003). The Court further found that Farmers' actions were willful and were not taken in good faith, entitling the workers to liquidated damages. In January and May 2005, the Court entered judgments totaling $52.5 million against Farmers, the largest judgments ever entered as the result of the trial of a Fair Labor Standards Act case.

3. ***Rosenburg et al. v. IBM,*** No. C06-0430 JDC (N.D. Cal.). In a class action and collective action suit, Lieff Cabraser and co-counsel represent current and former technical support workers for IBM seeking unpaid overtime. Plaintiffs allege that IBM illegally misclassifies its employees who install or maintain computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws, and that those workers have worked and continue to work overtime hours without proper compensation.

4.  **Gonzalez et al. v. Abercrombie & Fitch Stores, Inc. et al.**, No. C03-2817 SI (N.D. Cal.). In April 2005, the Court approved a settlement, valued at approximately $50 million, which requires the retail clothing giant Abercrombie & Fitch to provide monetary benefits of $40 million to the class of Latino, African American, Asian American and female applicants and employees who charged the company with discrimination. The settlement also requires the company to institute a range of policies and programs to promote diversity among its workforce and to prevent discrimination based on race or gender. Lieff Cabraser served as Class Co-Lead Counsel and prosecuted the case with a number of co-counsel firms, including the Mexican American Legal Defense and Education Fund, the Asian Pacific American Legal Center and the NAACP Legal Defense and Educational Fund, Inc.

5.  **Frank v. United Airlines, Inc.**, No. C-92-0692 MJJ (N.D. Cal.). Lieff Cabraser and co-counsel obtained a $36.5 million settlement in February 2004 for a class of female flight attendants who were required to weigh less than comparable male flight attendants.

    Former U.S. District Court Judge Charles B. Renfrew (ret.), who served as a mediator in the case, stated, "As a participant in the settlement negotiations, I am familiar with and know the reputation, experience and skills of lawyers involved. They are dedicated, hardworking and able counsel who have represented their clients very effectively." U.S. District Judge Martin J. Jenkins, in granting final approval to the settlement, found "that the results achieved here could be nothing less than described as exceptional," and that the settlement "was obtained through the efforts of outstanding counsel." Judge Jenkins observed that Lieff Cabraser partner James Finberg "in particular, and his firm, in particular, are very sophisticated in handling matters of this type."

6.  **Holloway et al. v. Best Buy Co, Inc,** No. C05-5036 PJH (N.D. Cal.). Lieff Cabraser, with co-counsel, represents a proposed class of current and former employees of Best Buy in a federal class action civil rights lawsuit. Plaintiffs allege that Best Buy stores nationwide discriminate against women and minorities, specifically African Americans and Latinos. These employees charge that they are paid less than white males, denied promotions, and assigned to less desirable positions. The suit also alleges that Best Buy discriminates against women and minorities in hiring decisions.

7.  **Giannetto v. Computer Sciences Corporation**, 03-CV-8201 (C.D. Cal.). In one of the largest overtime pay dispute settlements ever in the information technology industry, the Court in July 2005 granted final approval to a $24 million settlement with Computer Sciences Corporation. Plaintiffs charged that the global conglomerate had a common practice of refusing to pay overtime compensation to its technical support workers

involved in the installation and maintenance of computer hardware and software in violation of the Fair Labor Standards Act, California's Unfair Competition Law, and the wage and hour laws of 13 states.

8. **Barnett v. Wal-Mart**, No. 01-2-24553-SNKT (Wash.); **Gamble v. Wal-Mart**, No. 7121-01 (N.Y.). Lieff Cabraser and co-counsel represent proposed classes of hourly wage earners at Wal-Mart in Washington and New York who allegedly have been forced to work "off-the-clock" (without pay). Plaintiffs, current and former Wal Mart employees, allege that, in violation of state wage and hour laws, Wal-Mart forces employees to work through breaks and to work without pay after they have clocked out. In October 2004, in the Washington Wal-Mart action, the Court certified a class of approximately 40,000 current and former Wal-Mart employees.

9. **Goddard, et al. v. Longs Drug Stores Corporation, et al.**, No. RG04141291 (Alameda Super. Ct.). Lieff Cabraser, with co-counsel, represented a class of store managers and assistant store managers in California in a class action lawsuit against Longs Drug Stores. Plaintiffs charged that Longs Drugs improperly classified store managers and assistant store managers as exempt from overtime wages in violation of California law. In October 2004, the Court granted final approval of an $11.1 million settlement of the action. Class participation in the settlement was especially strong, with over 98% of class members submitting claims.

10. **Zuckman v. Allied Group**, No. 02-5800 SI (N.D. Cal.). In September 2004, the Court approved a settlement with Allied Group and Nationwide Mutual Insurance Company of $8 million plus Allied/Nationwide's share of payroll taxes on amounts treated as wages, providing plaintiffs a 100% recovery on their claims. Plaintiffs, claims representatives of Allied/Nationwide, alleged that the company misclassified them as exempt employees and failed to pay them and other claims representatives in California overtime wages for hours they worked in excess of eight hours or forty hours per week. In approving the settlement, U.S. District Court Judge Susan Illston commended counsel for their "really good lawyering" and stated that they did "a splendid job on this" case.

11. **Trotter v. Perdue Farms, Inc.**, No. C 99-893-RRM (JJF) (MPT) (D. Del.). Lieff Cabraser represented a class of chicken processing employees of Perdue Farms, Inc., one of the nation's largest poultry processors, for wage and hour violations. The suit challenged Perdue's failure to compensate its assembly line employees for putting on, taking off, and cleaning protective and sanitary equipment in violation of the Fair Labor Standards Act, various state wage and hour laws, and the Employee Retirement Income Security Act. In October 2002, the Court granted final approval of a settlement resolving the action. Under the settlement,

Perdue paid $10 million for wages lost by its chicken processing employees and attorneys' fees and costs. The settlement was in addition to a $10 million settlement of a suit brought by the Department of Labor in the wake of Lieff Cabraser's lawsuit.

12. ***Satchell, et al. v. FedEx Express***, No. C 03-2659 SI; C 03-2878 SI (N.D. Cal.). Lieff Cabraser, with co-counsel, represents African American and Latino employees of FedEx Express in its Western Region in a class action lawsuit. Plaintiffs allege that FedEx Express has discriminated against minority employees on the basis of race with respect to initial job assignment, compensation, promotion and discipline.

13. ***Gottlieb v. SBC Communications***, No. CV-00-04139 AHM (MANx) (C.D. Cal.). With co-counsel, Lieff Cabraser represented current and former employees of SBC and Pacific Telesis Group ("PTG") who participated in AirTouch Stock Funds, which were at one time part of PTG's salaried and non-salaried savings plans. After acquiring PTG, SBC sold AirTouch, which PTG had owned, and caused the AirTouch Stock Funds that were included in the PTG employees' savings plans to be liquidated. Plaintiffs alleged that in eliminating the AirTouch Stock Funds, and in allegedly failing to adequately communicate with employees about the liquidation, SBC breached its duties to 401k plan participants under the Employee Retirement Income Security Act. In 2002, the Court granted final approval to a $10 million settlement .

14. ***Thomas v. California State Automobile Association***, No. CH217752 (Cal. Superior Court, Alameda County). With co-counsel, Lieff Cabraser represented 1,200 current and former field claims adjusters who worked for the California State Automobile Association ("CSAA"). Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked. In May 2002, the Court approved an $8 million settlement of the case.

15. ***Church v. Consolidated Freightways***, No. C90-2290 DLJ (N.D. Cal.). Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a freight forwarding company acquired by Consolidated Freightways in 1989. On behalf of the employee class, Lieff Cabraser prosecuted claims for violation of the Employee Retirement Income Security Act ("ERISA"), the securities laws, and the Age Discrimination in Employment Act ("ADEA"). The case settled in 1993 for $13.5 million.

16. ***Buttram v. UPS, Inc.***, No. C-97-01590 MJJ (N.D. Cal.). Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African-American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement. In 1999, the Court approved a $12.14 million settlement of

the action. Under the injunctive relief portion of the settlement, among other things, Class Counsel continues to monitor the promotions of African-American part-time hourly employees to part-time supervisor and full-time package car driver.

17. ***Foster v. The Great Atlantic & Pacific Tea Company, Inc. ("A&P")***, No. 99 Civ. 3860 (CM) (S.D.N.Y.). Lieff Cabraser, along with co-counsel, represented approximately 870 current and former employees of New York area supermarkets suing under the Fair Labor Standards Act. The Opt-In Plaintiffs in the certified collective action sought unpaid overtime compensation resulting from Defendants' alleged failure to compensate employees for work performed "off-the-clock." In May 2004, the Court approved a settlement providing $3.11 million to the Opt-In Plaintiffs. In June 2004, Lieff Cabraser filed a new lawsuit against defendants in New York state court seeking certification of a class of current and former full-time hourly employees of The Great Atlantic & Pacific Tea Company, Inc. in New York for past six years. The plaintiffs allege that defendants fail to pay overtime wages and delete hours actually worked from time records in violation of New York labor law.

18. ***Lyon v. TMP Worldwide, Inc.***, No. 993096 (San Francisco Superior Ct.). Lieff Cabraser served as Class Counsel for a class of certain non-supervisory employees in an advertising firm. The settlement, approved in 2000, provided almost a 100% recovery to class members. The suit alleged that TMP failed to pay overtime wages to these employees.

19. ***Kahn v. Denny's***, No. BC177254 (Los Angeles Superior Ct.). Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California. The Court approved a $4 million settlement of the case in 2000.

20. ***Giles v. Allstate***, JCCP Nos. 2984 and 2985. Lieff Cabraser represented a class of Allstate insurance agents seeking reimbursement of out-of-pocket costs. The action settled for approximately $40 million.

21. ***Bogan v. Fleetwood Enterprises, Inc.***, No. CIV 00-0440-S-BLW (D. Idaho). Lieff Cabraser, along with co-counsel, represents a nationwide class of women production associates who allegedly have been discriminated against on the basis of sex with respect to promotions and compensation, and who allegedly have been subjected to rampant sexual harassment. In 2002, the Court approved a settlement that included comprehensive injunctive relief.

22. ***Dupree v. The Prudential Insurance Co., et al.***, No. 99-8337-CIV (AJJ) (S.D. Fla.) With co-counsel, Lieff Cabraser represents a group of retired employees of Prudential who are participants in Prudential's Retirement

Plan. The Plan provides pension benefits to thousands of retirees who used to work for Prudential. Those benefits are protected by a federal statute called the Employee Retirement Income Security Act (ERISA), which was enacted by Congress to prevent employers from exercising improper control over the assets of their retirement plans. The plaintiff retirees allege that Prudential violated ERISA by using (and continuing to use) the Retirement Plan's assets to benefit Prudential, instead of its retirees. Trial commenced on February 17, 2004, and concluded in March. The Court heard closing arguments on January 20, 2005. Plaintiffs request that the Court make Prudential restore to all Plan participants the funds allegedly taken out of the Retirement Plan in violation of the law.

Lieff Cabraser attorneys have also had experience working on several other employment cases, including cases involving race, gender, and age discrimination, ERISA, breach of contract claims, and wage/hour claims. Lieff Cabraser attorneys frequently write amici briefs on cutting-edge legal issues involving employment law. Lieff Cabraser is currently investigating charges of race, gender and/or age discrimination, and wage/hour violations against several companies. In 2004, James M. Finberg and Kelly M. Dermody were included by *The Recorder* in a list of the best employment lawyers in the San Francisco Bay Area, and were also selected in 2004 and 2005, along with employment attorney Bill Lann Lee, as *Northern California SuperLawyers.*

## D.    **Consumer Protection**

1.    ***Providian Credit Card Cases***, No. JCCP 4085 (San Francisco Superior Ct.). Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services. In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes in its business practices. The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest settlement ever by a U.S. credit card company in a consumer protection case.

2.    ***In re Tri-State Crematory Litigation***, MDL No. 1467 (N.D. Ga.). In March 2004, trial commenced with Lieff Cabraser partner Kathryn E. Barnett delivering the opening statement in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia. The families also asserted claims against the funeral homes that delivered the decedents to Tri-State Crematory for failing to ensure that the crematory performed cremations in the manner required under the law and by human decency. One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million. The Marsh defendants, the operators of Tri-State Crematory, however, withdrew from

the tentatively approved settlement. Trial on the class members' claims against the Marsh defendants began in August 2004. Soon thereafter, the Marsh defendants entered into a $80 million settlement with plaintiffs. As part of the settlement, all buildings on the Tri-State property were razed. The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory operations or other inappropriate activities from ever taking place there. Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order. 215 F.R.D. 660 (2003).

3.  ***Kline v. The Progressive Corporation***, Circuit No.: 02-L-6 (Circuit Court of the First Judicial Circuit, Johnson County, Illinois). Lieff Cabraser served as settlement class counsel in a nationwide consumer class action challenging Progressive Corporation's private passenger automobile insurance sales practices. Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified. In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief. The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

4.  ***Avery v. State Farm Mutual Auto Insurance Co.***, No. 97-L-114 (Williamson County Circuit Ct., Ill.). With co-counsel, Lieff Cabraser challenged State Farm's practice of specifying non-original-equipment manufacturer (non-OEM) imitation "crash" parts on repair estimates for millions of its insureds' vehicles. Trial in the case commenced on August 10, 1999. On October 4, 1999, the jury awarded $456 million in compensatory damages to plaintiffs for their breach of contract claim. On October 8, 1999, the trial court agreed that State Farm had breached its contract and found that State Farm's practice of using imitation parts and claiming they were of like kind and quality violated the Illinois Consumer Fraud Act. The trial court awarded an additional $130 million in compensatory damages, and ordered State Farm to pay an additional $600 million in punitive damages. State Farm appealed the judgment. In 2001, the Appellate Court of Illinois, in a unanimous opinion, upheld the verdict. 321 Ill. App. 3d 269; 746 N.E.2d 1242 (2000). In August, 2005, Illinois Supreme Court, overturned the certification of the *Avery* Class and reversed the judgment of the trial court. The opinion overturning the trial verdict was signed by four members of the Illinois Supreme Court, with two justices concurring in part, and dissenting in part. The Class Representatives and Counsel are analyzing this decision regarding what further actions to take on behalf of members of the Class who were affected by State Farm's practice of utilizing inferior quality non-OEM parts to settle auto claims.

5.   ***California Title Insurance Industry Litigation.***  Lieff Cabraser, in coordination with parallel litigation brought by the Attorney General, reached settlements in 2003 and 2004 with the leading title insurance companies in California, resulting in historic industry-wide changes to the practice of providing escrow services in real estate closings.  The settlements brought a total of $50 million in restitution to California consumers, including cash payments.  In the lawsuits, plaintiffs alleged, among other things, that the title companies received interest payments on customer escrow funds that were never reimbursed to their customers.  The defendant companies include Lawyers' Title, Commonwealth Land Title, Stewart Title of California, First American Title, Fidelity National Title, and Chicago Title.

6.   ***Citigroup Loan Cases***, JCCP No. 4197 (San Francisco Superior Ct.).  In 2003, the Court approved a settlement that provided approximately $240 million in relief to former Associates' customers across America.  Prior to its acquisition in November 2000, Associates First Financial, referred to as The Associates, was one of the nation's largest "subprime" lenders.  Lieff Cabraser represented former customers of The Associates charging that the company added on mortgage loans unwanted and unnecessary insurance products and engaged in improper loan refinancing practices.  Lieff Cabraser Heimann & Bernstein, LLP, served as nationwide Plaintiffs' Co-Liasion Counsel.

7.   ***In re Synthroid Marketing Litigation***, MDL No. 1182 (N.D. Ill.).  Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid.  The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available.  In 2000, the District Court gave final approval to a $87.4 million settlement with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999.  In 2001, the Court of Appeals upheld the order approving the settlement and remanded the case for further proceedings.  264 F. 3d 712 (7th Circ. 2001).  The settlement proceeds were distributed in 2003.

8.   ***In re Ocwen Federal Bank FSB Mortgage Servicing Litigation***, MDL No. 1604 (Northern District of Illinois).  Lieff Cabraser serves as Co-Lead Plaintiffs' Counsel in a nationwide class action against Ocwen Financial Corporation, Ocwen Federal Bank FSB, and their affiliates ("Ocwen").  This lawsuit arises out of charges against Ocwen of misconduct in servicing its customers' mortgage loans and in its provision of certain related services, including debt collection and foreclosure services.

9.   ***Curry v. Fairbanks Capital Corporation***, No. 03-10895-DPW (D. Mass.).  In 2004, the Court approved a $55 million settlement of a class

action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans. The settlement also required substantial changes in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers. Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners.

10.     ***Reverse Mortgage Cases***, JCCP No. 4061 (San Mateo County Superior Ct., Cal.). Transamerica Corporation, through its subsidiary Transamerica Homefirst, Inc., sold "reverse mortgages" marketed under the trade name "Lifetime." The Lifetime reverse mortgages were sold exclusively to seniors, *i.e.*, persons 65 years or older. Lieff Cabraser, with co-counsel, filed suit on behalf of seniors alleging that the terms of the reverse mortgages were unfair, and that borrowers were misled as to the loan terms, including the existence and amount of certain charges and fees. In 2003, the Court granted final approval to an $8 million settlement of the action.

11.     ***In re American Family Enterprises***, MDL No. 1235 (D. N.J.). Lieff Cabraser served as co-lead counsel for a nationwide class of persons who received any sweepstakes materials sent under the name "American Family Publishers." The class action lawsuit alleged that defendants deceived consumers into purchasing magazine subscriptions and merchandise in the belief that such purchases were necessary to win an American Family Publishers' sweepstakes prize or enhanced their chances of winning a sweepstakes prize. In September 2000, the Court granted final approval of a $33 million settlement of the class action. In April 2001, over 63,000 class members received refunds averaging over $500 each, representing 92% of their eligible purchases. In addition, American Family Publishers agreed to make significant changes to the way it conducts the sweepstakes.

12.     ***In re Sears Automotive Center Consumer Litigation***, Civ. No. C-92-2227 RHS (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Co-Lead Counsel for a certified nationwide class of Sears auto center customers for purposes of approval of a combined injunctive relief/refund settlement. As part of the settlement, Sears distributed to class members merchandise coupons valued at $25 million.

13.     ***Roberts v. Bausch & Lomb***, Civ. No. 94-C-1144-W (N.D. Ala.). Lieff Cabraser was designated as one of several Class Counsel in November 1994 in this nationwide consumer fraud class action involving deceptive marketing of contact lenses. In 1996, the Court approved a settlement valued at $68 million ($34 million cash and $34 million in eye care products).

14.     ***In re Miracle Ear Consumer Litigation***, Civ. No. 94-1696 (4th Jud. Dist. Minn.).  Lieff Cabraser served as Co-Lead Class Counsel in a nationwide class action certified in late 1994 involving claims arising from misrepresentations regarding performance of a hearing aid device.  State courts in Minnesota and Alabama granted final approval to the nationwide settlement.

E.     **Non-Personal Injury Defective Products**

1.     ***Richison v. American Cemwood Corp.***, No. 005532 (San Joaquin Superior Ct., Cal.).  Lieff Cabraser served as Co-lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed.  In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation.  This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion.  The claims period runs through 2015.

2.     ***Williams v. Weyerhaeuser***, No. 995787 (San Francisco Superior Ct.).  Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands or millions of owners of homes and other structures with defective Weyerhaeuser hardboard siding.  A California-wide class was certified for all purposes in February 1999, and withstood writ review by both the California Court of Appeal and Supreme Court of California.  In 2000, the Court granted final approval to a nationwide settlement of the case which provides class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing, damaged siding.  The settlement has no cap, and requires Weyerhaeuser to pay all timely, qualified claims over a nine year period.  The claims program is underway and paying claims.

3.     ***Foothill/DeAnza Community College District v. Northwest Pipe Company***, No. C-00-20749 (N.D. Cal.).  In June 2004, the court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that fails.  Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S. as part of fire suppression systems for use in residential and commercial buildings.  After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok.  The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product.  Under the settlement, owners whose Poz-Lok pipes are leaking today, or over the next 15 years, may file a claim for compensation.

4. ***Toshiba Laptop Screen Flicker Settlement.*** Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component. Under the terms of the Settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS or an authorized TAIS service provider recovered the cost of that repair, up to $300 for the Satellite 1800 Series and the Satellite Pro 4600 personal computers, or $400 for the Tecra 8100 personal computers. TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by 18 months, until May 4, 2006.

5. ***ABS Pipe Litigation***, JCCP No. 3126 (Contra Costa County Superior Ct., Cal.). Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking. Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product. Between 1998 and 2001, we achieved 12 separate settlements in the class actions and related individual lawsuits for approximately $78 million.

   Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these reputations, but underlined, in my opinion, how well deserved those reputations are."

6. ***McManus, et al. v. Fleetwood Enterprises, Inc.***, NO. SA-99-CA-464-FB (W.D. Tex.). Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor homes. In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes. The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a supplemental braking system is needed to stop safely while towing heavy items, such as a vehicle or trailer. The settlement paid $250 to people who bought a supplemental braking system for Fleetwood motor homes that they bought new.

7. ***Cox v. Shell***, No. 18,844 (Obion County Chancery Ct., Tenn.). Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective

polybutylene plumbing systems and yard service lines. In November 1995, the Court approved a settlement involving an initial commitment by Defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants. The settlement claims program will continue past 2010, under the continuing supervision of the trial court.

8.   *Naef v. Masonite*, No. CV-94-4033 (Mobile County Circuit Ct., Ala.). Lieff Cabraser Heimann & Bernstein served as Class Counsel on behalf of a nationwide Class of an estimated 4 million homeowners with allegedly defective hardboard siding manufactured and sold by Masonite Corporation, a subsidiary of International Paper, on their homes. The Class was certified in November 1995, and the Alabama Supreme Court twice denied extraordinary writs seeking to decertify the Class, including in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996). A month-long jury trial in 1996 established the factual predicate that Masonite hardboard siding was defective under the laws of most states. The case settled on the eve of a second Class-wide trial, and in January 1998, the Court approved a Class Settlement. Under the Settlement, Class members with failing Masonite hardboard siding installed and incorporated in their property between January 1, 1980 and January 15, 1998 can make claims over a multi-year claims program and have their homes evaluated by independent inspectors. Class members with qualifying damage to their siding recover damages associated with the siding. To date, the Settlement has paid out over $650 million to homeowners across the country, and claims continue to be made and paid.

9.   *In re Louisiana-Pacific Inner-Seal Siding Litigation*, No. C-95-879-JO (D. Or.). Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide class of homeowners with defective exterior siding on their homes. Plaintiffs asserted claims for breach of warranty, fraud, negligence, and violation of consumer protection statutes. On April 26, 1996, U.S. District Judge Robert E. Jones entered an Order, Final Judgment and Decree granting final approval to a nationwide settlement requiring Louisiana-Pacific to provide funding up to $475 million to pay for inspection of homes and repair and replacement of failing siding over the next seven years.

10.  *In re Intel Pentium Processor Litigation*, No. CV 745729 (Santa Clara Superior Ct., Cal.). Lieff Cabraser served as one of two court appointed Co-Lead Class Counsel, and negotiated a settlement, approved by the Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion. The chip replacement program has been implemented, and is ongoing.

11.  *Gross v. Mobil*, No. C 95-1237-SI (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide action involving an estimated

2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an aircraft engine oil. Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief. Plaintiffs obtained a preliminary injunction requiring Defendant Mobil Corporation to provide notice to all potential class members of the risks associated with past use of Defendants' aircraft engine oil. In addition, Plaintiffs negotiated a proposed Settlement, granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

12. ***In re General Motors Corp. Pick-Up Fuel Tank Products Liability Litigation***, MDL No. 961. Lieff Cabraser served as court-appointed Co-Lead Counsel representing a class of 4.7 million plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly defective gas tanks. The Consolidated Complaint asserted claims under the Lanham Act, the Magnuson-Moss Act, state consumer protection statutes, and common law. In 1995, the Third Circuit vacated the District Court settlement approval order and remanded the matter to the District Court for further proceedings. In July 1996, a new nationwide class action was certified for purposes of an enhanced settlement program valued at a minimum of $600 million, plus funding for independent fuel system safety research projects. Final approval was granted in November 1996.

13. ***Hanlon v. Chrysler Corp.***, No. C-95-2010-CAL (N.D. Cal.). In 1995, the district court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs. As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches. The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

## F.   Antitrust/Trade Regulation/Intellectual Property

1. ***Natural Gas Antitrust Cases***, J.C.C.P Nos. 4221, 4224, 4226 & 4228 (Cal. Supr. Ct.). In a landmark victory for California consumers and businesses, the Court approved a $1.5 billion settlement in December 2003 of class action litigation against El Paso Natural Gas Co. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel for residential and business consumers of natural gas. Plaintiffs charged that during the California energy crisis in 2000-2001, El Paso manipulated the market for natural gas pipeline transmission capacity into California to enable its energy trading subsidiary to acquire the capacity, and then used the capacity to drive up natural gas prices on the spot market.

2. ***Microsoft Private Antitrust Litigation***. Lieff Cabraser is prosecuting cases on behalf of businesses and consumers against Microsoft Corporation in various state courts across the country, including Florida, New York, North Carolina, and Tennessee. Plaintiffs allege that Microsoft engaged in anticompetitive conduct and/or violated state deceptive and unfair business practices statutes to harm competition and monopolize the markets for Intel-compatible, personal computer operating system software, as well as word processing and spreadsheet software. In November 2003, in the Florida Microsoft litigation, the Court granted final approval to a $202 million settlement, one of the largest antitrust settlements in Florida history. In June 2004, the Court in the Tennessee action granted final approval to a $64 million settlement. In August 2004, the Court in the North Carolina action granted final approval to a settlement valued at over $89 million. On February 3, 2006, in *Cox v. Microsoft*, the private antitrust action against Microsoft pending in New York Supreme Court, the Court granted preliminarily approved a settlement valued at approximately $350 million that will benefit New York consumers who purchased Microsoft software or Intel-based personal computers between 1994 and 2004.

3. ***Azizian v. Federated Department Stores, 3:03 CV 03359 SBA (N.D. Cal.).*** In March 2005, the Court granted final approval to a settlement that Lieff Cabraser and co-counsel reached with numerous department store cosmetics manufacturers and retailers. The settlement is valued at $175 million and includes significant injunctive relief, for the benefit of a nationwide class of consumers of department store cosmetics. The complaint alleged the manufacturers and retailers violated antitrust law by engaging in anticompetitive practices to prevent discounting of department store cosmetics.

4. ***In re Buspirone Antitrust Litigation***, MDL No. 1413. In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payors that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety. Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS' patent and refrain from entering the market. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

5. ***Wholesale Electricity Antitrust Cases I & II***, J.C.C.P. Nos. 4204 & 4205 (San Diego Superior Ct). Extending the landmark victories for California consumers and businesses, in September 2004, plaintiffs reached a $206 million settlement with Duke Energy Trading & Marketing, and in August 2005, plaintiffs reached a $460 million settlement with Reliant Energy, settling claims that the companies manipulated California's

wholesale electricity markets during the California energy crisis of 2000-01.  Lieff Cabraser earlier entered into a settlement for over $100 million the claims with The Williams Companies. Lieff Cabraser has  taken a lead role in the private class action litigation, which remains ongoing.

6.      ***In re Lupron Marketing and Sales Practices Litigation***, MDL No. 1430. In May 2005, the Court granted final approval to a settlement of a class action lawsuit by patients, insurance companies and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis and precocious puberty.  The settlement requires the defendants, Abbott Laboratories, Takeda Pharmaceutical Company Limited, and TAP Pharmaceuticals, to pay $150 million, inclusive of costs and fees, to persons or entities who paid for Lupron from January 1, 1985 through March 31, 2005.  Plaintiffs charged that the defendants conspired to overstate the drug's average wholesale price ("AWP"), which resulted in plaintiffs paying more for Lupron than they should have paid.  Lieff Cabraser served as Co-Lead Plaintiffs' Counsel.

7.      ***California Vitamin Cases***, JCCP No. 4076 (San Francisco Superior Ct.). Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution.  In January 2002, the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins.

8.      ***Ciprofloxacin Federal and State Antitrust Litigation***, MDL No. 1383 (E.D.N.Y.), Lieff Cabraser serves as Co-Lead Counsel for consumers who purchased Cipro, the top selling antibiotic in the world.  Plaintiffs allege that Bayer Corporation, Barr Laboratories, two other generic drug companies, and other defendants entered into an unlawful agreement to keep a generic version of the drug off the market that allowed Bayer to sell Cipro at inflated prices.  Lieff Cabraser also represents purchasers of Cipro in a class action lawsuit filed in California state court.  In July 2004, the California Court of Appeal upheld the trial court's grant of class certification of an antitrust and unfair competition action against defendants.

9.      ***Pharmaceutical Cases I, II, and III***, JCCP Nos. 2969, 2971, and 2972 (San Francisco County Ct.).  Lieff Cabraser served as Co-Lead and Co-Liaison Counsel representing a certified class of indirect purchasers (consumers) on claims against the major pharmaceutical manufacturers for violations of the Cartwright Act and the Unfair Competition Act.   The class alleged that defendants unlawfully fixed discriminatory prices on prescription drugs to retail pharmacists in comparison with the prices charged to certain favored purchasers, including HMOs and mail order houses.  In April 1999, the Court approved a settlement providing

$148 million in free, brand-name prescription drugs to health agencies that serve California's poor and uninsured. In October 2001, the Court approved a settlement with the remaining defendants in the case, which provided an additional $23 million in free, brand-name prescription drugs to these agencies.

10.    ***In re Nifedipine Antitrust Litigation***, MDL No. 1515 (D.D.C.). Lieff Cabraser serves as Co-Lead Counsel for class of consumers who purchased the drug Adalat, also known as Nifedipine. Plaintiffs allege that two generic manufacturers of Adalat entered into an agreement to allocate the dosages markets for generic Adalat, thereby substantially reducing competition and unlawfully inflating prices on both generic and brand-name Adalat, in violation of the Sherman Act.

11.    ***In re Electrical Carbon Products Antitrust Litigation***, MDL No. 1514 (D.N.J.). Lieff Cabraser represents the City and County of San Francisco and a class of direct purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Sherman Act.

12.    ***Electrical Carbon Products Cases***, J.C.C.P. No. 4294 (San Francisco Superior Court). Lieff Cabraser represents the City and County of San Francisco and a class of indirect purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Cartwright Act and the Unfair Competition Law. Lieff Cabraser also represents the People of the State of California in claims arising from the Unfair Competition Law.

13.    ***In re Compact Disc Antitrust Litigation***, MDL No. 1216 (C.D. Cal.). Lieff Cabraser serves as Co-Lead Counsel for the direct purchasers of compact discs on claims that the producers fixed the price of CDs in violation of the federal antitrust laws.

14.    ***In re Carpet Antitrust Litigation***, MDL No. 1075 (N.D. Ga.). Lieff Cabraser served as Class Counsel and a member of the trial team for a class of direct purchasers of twenty-ounce level loop polypropylene carpet. Plaintiffs, distributors of polypropylene carpet, alleged that Defendants, seven manufacturers of polypropylene carpet, conspired to fix the prices of polypropylene carpet by agreeing to eliminate discounts and charge inflated prices on the carpet. In 2001, the Court approved a $50 million settlement of the case.

15.    ***In re Lasik/PRK Antitrust Litigation***, No. CV 772894 (Santa Clara Superior Ct., Cal.). Lieff Cabraser served as a member of Plaintiffs' Executive Committee in class actions brought on behalf of persons who underwent Lasik/PRK eye surgery. Plaintiffs alleged that defendants, the manufacturers of the laser system used for the laser vision correction

surgery, manipulated fees charged to ophthalmologists and others who performed the surgery, and that the overcharges were passed onto consumers who paid for laser vision correction surgery. In December 2001, the Court approved a $12.5 million settlement of the litigation.

16. *In re Toys 'R' Us Antitrust Litigation*, MDL No. 1211 (E.D.N.Y.). Lieff Cabraser served as Co-Lead Counsel representing a class of direct purchasers (consumers) who alleged that Toys 'R' Us conspired with the major toy manufacturers to boycott certain discount retailers in order to restrict competition and inflate toy prices. In February 2000, the Court approved a settlement of cash and product of over $56 million.

17. *In re Travel Agency Commission Antitrust Litigation*, MDL No. 1058 (D. Minn.). Lieff Cabraser served as Co-Lead Counsel for a certified class of U.S. travel agents on claims against the major U.S. air carriers, who allegedly violated the federal antitrust laws by fixing the commissions paid to travel agents. In 1997, the Court approved an $82 million settlement.

18. *Sanitary Paper Cases I & II*, JCCP Nos. 4019 and 4027 (San Francisco Superior Ct.). Lieff Cabraser served as Liaison Counsel on behalf of indirect purchasers of commercial paper products. Plaintiffs alleged that from 1993 to 2000 Defendants fixed the price of commercial tissue, toilet paper, toilet seat covers, and other commercial paper products in violation of the Cartwright Act and Unfair Competition Act. In February 2001, the Court approved a $3 million settlement of the case.

19. *Schwartz v. National Football League*, No. 97-CV-5184 (E.D. Pa.). Lieff Cabraser served as counsel for individuals who purchased the "NFL Sunday Ticket" package of private satellite transmissions in litigation against the National Football League for allegedly violating the Sherman Act by limiting the distribution of television broadcasts of NFL games by satellite transmission to one package. In August 2001, the Court approved of a class action settlement that included: (1) the requirement that defendants provide an additional weekly satellite television package known as Single Sunday Ticket for the 2001 NFL football season, under certain circumstances for one more season, and at the defendants' discretion thereafter; (2) a $7.5 million settlement fund to be distributed to class members; (3) merchandise coupons entitling class members to discounts at the NFL's Internet store which the parties value at approximately $3 million; and (4) $2.3 million to pay for administering the settlement fund and notifying class members.

20. *In re Commercial Explosives Antitrust Litigation*, MDL No. 1093 (D. Utah). Lieff Cabraser served as Class Counsel on behalf of direct purchasers of explosives used in mining operations. In 1998, the Court approved a $77 million settlement of the litigation.

21.     *In re California Indirect-Purchaser X-Ray Antitrust Litigation*,
        No. 960886 (San Francisco Superior Ct.). Lieff Cabraser served as Class
        Counsel on behalf of indirect purchasers (consumers) of medical x-ray
        film who alleged violations of the Cartwright and Unfair Competition
        Acts. In 1998, the Court approved a $3.75 million settlement of the
        litigation.

22.     *In re Brand Name Prescription Drugs,* MDL No. 997 (N.D. Ill.). Lieff
        Cabraser served as Class Counsel for a class of tens of thousands of retail
        pharmacies against the leading pharmaceutical manufacturers and
        wholesalers of brand name prescription drugs for alleged price-fixing from
        1989 to 1995 in violation of the federal antitrust laws. Class Plaintiffs
        charged that defendants engaged in price discrimination against retail
        pharmacies by denying them discounts provided to hospitals, health
        maintenance organizations, and nursing homes. In 1996 and 1998, the
        Court approved settlements with certain manufacturers totaling $723
        million.

23.     *In re K-Dur Prescription Drug Antitrust Litigation*, MDL No. 1419.
        Lieff Cabraser serves as Class Counsel on behalf of indirect purchasers of
        K-Dur, a potassium supplement often prescribed in conjunction with high
        blood pressure medication. K-Dur is the fourth most frequently prescribed
        drug to seniors. The complaint alleges the defendants illegally agreed not
        to compete in the sale of K-Dur which prevented any generic version of
        K-Dur from coming onto the market.

24.     *In re Flat Glass Antitrust Litigation*, MDL 1200 (W.D. Pa.). Lieff
        Cabraser serves as Class Counsel on behalf of a class of direct purchasers
        of flat glass.

25.     *In re Linerboard Antitrust Litigation*, MDL 1261 (E.D. Pa.). Lieff
        Cabraser serves as Class Counsel on behalf of a class of direct purchasers
        of linerboard. The court recently approved a settlement totaling $202
        million.

26.     *In re High Pressure Laminates Antitrust Litigation*, MDL No. 1368
        (S.D.N.Y.). Lieff Cabraser serves as Trial Counsel on behalf of a class of
        direct purchasers of high pressure laminates.

27.     *Bromine Cases*, J.C.C.P. No. 4108. Lieff Cabraser serves a Lead Counsel
        on behalf of indirect purchasers of bromine, a chemical used as a fire-
        retardant. Lieff Cabraser was chosen by the court as the most qualified
        candidate of all firms that submitted sealed bids.

28.     *Carbon Fiber Cases I, II, III, J.C.C.P.* Nos. 4212, 4216, 4222 (San
        Francisco Superior Ct). Lieff Cabraser serves as Co-Liaison Counsel on
        behalf of indirect purchasers of carbon fiber. Plaintiffs allege that

defendants illegally conspired to raise prices of carbon fiber. Settlements have been reached with certain of the defendants.

29. ***Methionine Cases I and II***, JCCP Nos. 4090 and 4096 (Stanislaus County Superior Ct., Cal.). Lieff Cabraser serves as Co-Lead Counsel on behalf of indirect purchasers of methionine, an amino acid used primarily as a poultry and swine feed additive to enhance growth and production. Plaintiffs allege that the companies illegally conspired to raise methionine prices to super-competitive levels. The case has settled.

30. ***Sample v. Monsanto***, No. 4:01CV65RSW (E.D. Mo.). Lieff Cabraser serves as Co-Lead Counsel in a class action lawsuit against Monsanto Company and others alleging that a conspiracy to fix prices on genetically modified Roundup Ready soybean seeds and Yieldgard corn seeds. The District Court's ruling on class certification is presently on appeal to the Eighth Circuit Court of Appeals.

31. ***Tortola Restaurants, L.P. v. Minnesota Mining and Manufacturing***, No. 314281 (San Francisco Superior Ct). Lieff Cabraser serves as Co-Lead Counsel on behalf of indirect purchasers of Scotch-brand invisible and transparent tape. Plaintiffs allege that defendant 3M conspired with certain retailers to monopolize the sale of Scotch-brand tape in California.

32. ***Brennan, et al. v. Concord EFS, et al.***, No. 3:04-cv-02676-VRW (N.D. Cal.). Lieff Cabraser represents a putative class of ATM users against a number of banks comprising the Star ATM Network, alleging that those banks conspired to fix the price of ATM interchange fees, thereby unlawfully inflating fees paid by ATM users in the network.

## G. <u>Environmental and Toxic Exposures</u>

1. ***In re Unocal Refinery Litigation***, No. C 94-04141 (Contra Costa Superior Ct., Cal.). Lieff Cabraser served as one of two Co-Lead Class Counsel and on the Plaintiffs' Steering Committee in this action against Union Oil Company of California ("Unocal") arising from a series of toxic releases from Unocal's San Francisco refinery in Rodeo, California. The action was settled in 1997 on behalf of approximately 10,000 individuals for $80 million.

2. ***Kentucky Coal Sludge Litigation.*** On October 11, 2000, near Inez, Kentucky, a coal waste storage facility ruptured, spilling 300 million gallons of coal sludge (a wet mixture produced by the treatment and cleaning of coal) into waterways in the region and contaminating hundreds of properties. This was one of the worst environmental disasters in the Southeastern United States. With co-counsel, Lieff Cabraser represented over 400 clients in property damage claims, including claims for diminution in the value of their homes and properties. In April 2003, the

parties reached a confidential settlement agreement on favorable terms to the plaintiffs.

3.   ***Toms River Childhood Cancer Incidents***.  With co-counsel, Lieff Cabraser represented 69 families in Toms River, New Jersey, each with a child having cancer, that claimed the cancers were caused by environmental contamination in the Toms River area.  Commencing in 1998, the parties – the 69 families, Ciba Specialty Chemicals, Union Carbide and United Water Resources, Inc., a water distributor in the area – participated in an unique alternative dispute resolution process, which lead to a fair and efficient consideration of the factual and scientific issues in the matter.  In December 2001, under the supervision of a mediator, a confidential settlement favorable to the families was reached.

4.   ***In re Exxon Valdez Oil Spill Litigation*** (District of Alaska/Alaska Sup. Ct.).  The Exxon Valdez ran aground in March of 1989, spilling 11 million gallons of oil into Prince William Sound.  Lieff Cabraser served as one of the court-appointed Plaintiffs' Class Counsel.  The class consisted of 32,000 fisherman, Alaska natives, landowners and others whose livelihoods were gravely affected by the disaster.  In addition, Lieff served on the Class Trial Team in 1994.  A class action jury trial was held in federal court in 1994. That jury awarded $5 billion in punitive damages to the plaintiff class.  The punitive damages award has been on repeated appeal by the Exxon Corporation ever since.  In 2001, the Ninth Circuit Court of Appeals ruled that the original $5 billion punitive damages verdict was excessive.  In 2002, U.S. District Court Judge H. Russell Holland reinstated the award at $4 billion. Judge Holland stated that, "Exxon officials knew that carrying huge volumes of crude oil through Prince William sound was a dangerous business, yet they knowingly permitted a relapsed alcoholic to direct the operation of the Exxon Valdez through Prince William Sound."  In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines.  In January 2004, Judge Holland issued his order finding that recent Supreme Court decisions did not change the court's earlier analysis.  The court specifically found that a punitive damages award of $4.5 billion plus $2.25 billion in interest was in accordance with Supreme Court authority.  Exxon has again filed an appeal of the punitive damages award.  To date, the plaintiffs and victims of the Exxon Valdez disaster have waited over 17 years for the resolution of their case.

5.   ***West v. G&H Seed Co., Aventis CropSciences USA, LLP, et al.***, No. 99-C-4984-A (La. State Ct).  With co-counsel, Lieff Cabraser represented a class of 1,500 Louisiana crawfish farmers.  The farmers sued Bayer CropScience LP claiming the pesticide ICON killed their crawfish and caused economic ruin.  In 2004, the Court granted approved a $45 million settlement.  The settlement was reached after the parties had presented

nearly a month's worth of evidence at trial, and were on the verge of making closing arguments to the jury.

6. ***Craft v. Vanderbilt University***, Civ. No. 3-94-0090 (M.D. Tenn.). Lieff Cabraser served as Lead Counsel of a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron without their consent while receiving prenatal care at defendant Vanderbilt's hospital in the 1940's. The facts surrounding the administration of radioactive iron to the pregnant women and their children *in utero* came to light as a result of Energy Secretary Hazel O'Leary's 1993 disclosures of government sponsored human radiation experimentation during the Cold War. Defendants' attempts to dismiss the claims and decertify the class were unsuccessful. The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.

7. ***In re GCC Richmond Works Cases***, JCCP No. 2906. Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in coordinated litigation arising out of the release of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California on July 26, 1993. The Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.

8. ***In re Sacramento River Spill Cases I and II***, JCCP Nos. 2617 and 2620 (San Francisco County Superior Ct.). Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel, Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in an action arising out of a July 14, 1991 Southern Pacific train derailment and toxic spill near Dunsmuir, California. Settlement proceeds of approximately $16 million were distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes: personal injury, business loss, property damage/diminution, and evacuation.

**H.** **Aviation Law**

1. ***Air Algerie Boeing 737 Accident.*** Together with French co-counsel, Lieff Cabraser is representing the families of passengers who died in the March 6, 2003 crash of a Boeing 737 airplane operated by Air Algerie. The aircraft departed the southern Algerian city of Tamanrasset and crashed soon after takeoff, with one of the engines reportedly on fire. 96 of the 97 passengers were killed and one was seriously injured. All six crew members died.

2. ***Flash Airlines Boeing 737 Air Disaster***. Lieff Cabraser has filed complaints in federal court in Los Angeles on behalf of the families of 122 of the victims of this crash of January 3, 2004. All of the 148 passengers and crew were killed when the Flash Airlines charter flight plunged into

the Red Sea off the coast of Egypt. The passengers on board included entire families, mainly from France, who had been vacationing during the winter holidays at the sea resort of Sharm el Sheikh. Lieff Cabraser is representing these families jointly with the European solicitors who requested they pursue the families' rights in the US courts. The aircraft, a Boeing 737-300 manufactured in 1992 in the United States, was owned by an aircraft leasing company in Los Angeles, and operated pursuant to a lease agreement by an Egyptian charter carrier, Flash Airlines. The complaints assert that the air disaster was the result of serious mechanical failure.

3. ***U.S. Army Blackhawk Helicopter Crash.*** Lieff Cabraser is representing the family of a soldier who died in the November 29, 2004 crash of a Black Hawk U.S. Army Helicopter that tragically killed seven servicemen on active duty, including several senior officers from Fort Hood. The UH-60 Black Hawk, bound for Texarkana, was flying at an altitude of approximately 500 feet in dense fog when it hit cables supporting a 1,700 foot-tall television tower and crashed 30 miles south of Waco, Texas. The tower's lights had been knocked out by a storm one week prior.

4. ***China Yunnan (Eastern) Airlines Bombardier Regional Jet Crash.*** Lieff Cabraser is representing families of passengers who died in the November 21, 2004, crash of China Yunnan Airlines Flight 5210. China Yunnan is alleged to be a division of China Eastern Airlines. The plane, a Bombardier CRJ-200, was headed for Shanghai with 47 passengers and six crew members when it crashed into an ice-covered lake in Nanhai Park, just seconds after leaving from Baotou city in Inner Mongolia. All aboard were killed, along with a park worker at the site of the crash. The lawsuit asserts that the crash was the result of defects in the aircraft as well as the negligence of employees and agents of China Eastern.

5. ***Beech King Air 200 Crash.*** Lieff Cabraser is representing the families of several victims of the February 26, 2004 crash of a Beech King Air 200 that killed the President of Macedonia, Boris Trajkovski, and a number of his advisors and cabinet members. The plane, which was owned by the government of the Republic of Macedonia for VIP transport, crashed in a mountainous region near the city of Stolac in Bosnia-Herzegovina, just a few miles from its destination, Mostar Airport. The crash killed all nine occupants aboard.

6. ***Aeroflot-Russian International Airlines Airbus Disaster***. Lieff Cabraser represented the families of passengers who were on Aeroflot-Russian International Airlines Flight SU593 that crashed in Siberia on March 23, 1994. The plane was in route from Moscow to Hong Kong. All passengers on board died. According to a transcript of the cockpit voice record, the pilot's two children entered the cockpit during the flight and took turns flying the plane. The autopilot apparently was inadvertently turned off

during this time, and the pilot was unable to remove his son from the captain's seat in time to avert the plane's fatal dive. Lieff Cabraser, alongside French co-counsel, filed suit in France, where Airbus, the plane's manufacturer, was headquartered. All the families Lieff Cabraser represented obtained substantial economic recoveries in settlement of the action.

7. ***United Airlines Boeing 747 Disaster***, MDL No. 807 (N.D. Cal.). Lieff Cabraser served as Plaintiffs' Liaison Counsel on behalf of the passengers and families of passengers injured and killed in the United Airlines Boeing 747 cargo door catastrophe near Honolulu, Hawaii on February 24, 1989. Lieff Cabraser organized the litigation of the case, which included claims brought against United Airlines and The Boeing Company. Among our work, we developed a statistical system for settling the passengers' and families' damages claims with certain defendants, and coordinated the prosecution of successful individual damages trials for wrongful death against the non-settling defendants.

8. ***German Air Force Lockheed F-104 Star Fighter Litigation:*** In the late 1960s and extending into the early 1970s, the United States sold F-104 Star Fighter jets to the German Air Force that were manufactured by Lockheed Aircraft Corporation in California. Although the F-104 Star Fighter was designed for high-altitude fighter combat, it was used in Germany and other European countries for low-level bombing and attack missions. Consequently, the aircraft had an extremely high crash rate, with over 300 pilots killed. Commencing in 1971, the law firm of Belli Ashe Ellison Choulos & Lieff filed hundreds of lawsuits for wrongful death and other claims on behalf of the widows and surviving children of the pilots. Robert Lieff continued to prosecute the cases after the formation of our firm. In 1974, the lawsuits were settled with Lockheed on terms favorable to the plaintiffs. This litigation helped establish the principle that citizens of foreign countries could assert claims in United States courts, and obtain substantial recoveries, against an American manufacturer based upon airplane accidents or crashes occurring outside of the United States.

In 2005, Nigel Taylor became Of Counsel at Lieff Cabraser. Mr. Taylor, who is regarded as one of the world's leading air crash lawyers, has devoted much of his professional life to the representation of families of air crash victims.

Taylor currently works out of his London office and previously worked in Hong Kong. His London office is close to Lloyd's of London, the insurance market for the world's airlines. Taylor has negotiated numerous settlements that included substantial payments from Lloyd's. His recent settlements include representing 90 families of the 100 passengers who died in the Air France Concorde disaster at Charles de Gaulle airport outside of Paris in July 2000.

Mr. Taylor's impressive record of representing the families of loved ones who died in aviation crashes includes the following disasters: 1991 Lauda Air Boeing 767ER crash near Bangkok, Thailand; 1992 Pakistan International Airlines Airbus A-300 crash in Nepal; 1992 Thai Airways International Airbus A-310 crash at Kathmandu; 1994 Aeroflot Russian Airlines Airbus A-310 crash in Siberia; 1994 Royal Air Force Chinook helicopter crash in Scotland; 1994 British Army Westland Lynx helicopter crash in Germany; 1997 China Southern Airlines Boeing 737-300 crash at Shenzhen, China; 1998 Air France Boeing 707 crash near Bogota, Columbia; 1998 Thai Airways International Airbus A-310 crash at Surat Thani, Thailand; 2000 Air France Concorde disaster at Paris; and the 2000 Gulf Air Airbus A-320 crash at Bahrain.

## I.     International and Human Rights Litigation

1.     ***Holocaust Cases***.  Lieff Cabraser is one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era.  We serve as Settlement Class Counsel in the case against the Swiss banks that the Court approved a U.S. $1.25 billion settlement in July 2000.  Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School.  We were also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks.  In connection therewith, Lieff Cabraser participated in multi-national negotiations that led to Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution.  Our website provides links to the websites of settlement and claims administrators in these cases.

Commenting on the work of Lieff Cabraser and co-counsel in the litigation against private German corporations, entitled *In re Holocaust Era German Industry, Bank & Insurance Litigation* (MDL No. 1337), U.S. District Court Judge William G. Bassler stated on November 13, 2002:

> Up until this litigation, as far as I can tell, perhaps with some minor exceptions, the claims of slave and forced labor fell on deaf ears. You can say what you want to say about class actions and about attorneys, but the fact of the matter is, there was no attention to this very, very large group of people by Germany, or by German industry until these cases were filed. . . . What has been accomplished here with the efforts of the plaintiffs' attorneys and defense counsel is quite incredible. . . I want to

thank counsel for the assistance in bringing us to where we are today. Cases don't get settled just by litigants. It can only be settled by competent, patient attorneys.

2. ***Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.***, No. 01-0892-CRB (N.D. Cal.). In April 2001, Lieff Cabraser filed a class action on behalf of contract workers (known as "Braceros") who came from Mexico to the United States pursuant to bilateral agreements from 1942 through 1949 to aid American farms and industries hurt by employee shortages. The agreements provided that ten percent of the Braceros' wages would be withheld from them and transferred via United States and Mexican banks to savings accounts for each Bracero. Plaintiffs claim they were never reimbursed for the portion of their wages placed in the forced savings accounts. On August 28, 2002, U.S. District Court Judge Charles Breyer dismissed the claims against the Mexican government and bank defendants, while granting plaintiffs leave to file an amended complaint against the U.S. government. Judge Breyer nevertheless wrote: "I do not doubt that many Braceros never received savings fund withholdings to which they were entitled." The District Court is reconsidering the dismissal of the Mexican defendants in light of an intervening Supreme Court case.

3. ***Ali, et al. v. Rumsfeld***, No. 05-C-1201 (N.D. Ill.) On March 1, 2005, Lieff Cabraser joined the ACLU and Human Rights First in representing seven individuals who claim that they were tortured by American military forces when they were held in U.S. Army detention facilities in Iraq and Afghanistan. Numerous Defense Department reports have found that torture was "widespread." The suit alleges that Defense Secretary Donald Rumsfeld and high-ranking military commanders were responsible for authorizing torture or failing to stop torture after they learned of it. A former Rear Admiral and former Brigadier General also serve as co-counsel.

## FIRM BIOGRAPHY:

### PARTNERS

***ROBERT L. LIEFF***, born Bridgeport, Connecticut, September 29, 1936. Admitted to practice in California, 1966; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1969; U.S. Supreme Court, 1969; U.S. Court of Appeals, Seventh Circuit, 1972; U.S. Tax Court, 1974; U.S. District Court, District of Hawaii, 1986. *Education*: Columbia University (M.B.A., 1962; J.D., 1962); Cornell University; University of Bridgeport (B.A., 1958). Member, Columbia Law School Dean's Council; Member, Columbia Law School Board of Visitors (1992-present); Member, Columbia Law School Center on Corporate Governance Advisory Board (2004). *Member*: Bar Association of San Francisco; State Bar of California (Member: Committee on Rules of Court, 1971-74; Special Committee on Multiple

Litigation and Class Actions, 1972-73); American Bar Association (Section on Corporation, Banking and Business Law); Lawyers Club of San Francisco; San Francisco Trial Lawyers Association; California Trial Lawyers Association; Consumer Attorneys of California; Association of Trial Lawyers of America.

**ELIZABETH J. CABRASER**, born Oakland, California, June 23, 1952. Admitted to practice in California, 1978; California and U.S. Supreme Court; U.S. District Court, Northern, Eastern, Central and Southern Districts of California; U.S. Court of Appeals, Second, Third, Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh Circuits and U.S. Tax Court; U.S. District Court, District of Hawaii; U.S. District Court, District of Arizona. *Education*: Boalt Hall School of Law, University of California (J.D., 1978); University of California at Berkeley (A.B., 1975). *Awards and Honors*: "Top Women Litigators," *California Daily Journal*, 2006; Women of Achievement, Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2006; "Best Lawyer," *Best Lawyers in America*, 2006; "Top 75 Women Litigators," *California Daily Journal*, 2005; "Top 100 Lawyers," *California Daily Journal*, 2005-2002; "Top 30 Securities Litigator," *California Daily Journal*, 2005; "Northern California Super Lawyer," *Law & Politics*, 2005-2004; "Top 50 Women Litigators," *California Daily Journal*, 2004; *Citation Award*, University of California, Berkeley Boalt Hall, 2003; "Top 30 Women Litigators," *California Daily Journal*, 2002; *Distinguished Jurisprudence Award*, Anti-Defamation League, 2002; "Top Ten Women Litigators," *The National Law Journal*, 2001; "One Hundred Most Influential Lawyers in America," *The National Law Journal*, 2000 and 1997; "California Law Business Top 100 Lawyers," *California Daily Journal*, 2000-1998; *Matthew O. Tobriner Public Service Award*, Legal Aid Society, 2000; *Presidential Award of Merit*, Consumer Attorneys of California, 1998; "Fifty Most Influential Women Lawyers," *The National Law Journal*, 1998; "Lawyers of the Year," *California Lawyer*, 1998; *Public Justice Achievement Award*, Trial Lawyers for Public Justice, 1997. *Publications*: Co-Author with Fabrice N. Vincent, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Editor in Chief, *California Class Actions Practice and Procedures* (2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law*, updated and re-published in 5 *Newberg on Class Actions* (ABA 2001-2004); Co-Author, "Mass But Not (Necessarily) Class: Emerging Aggregation Alternatives Under the Federal Rules," ABA 8th Annual National Institute on Class Actions, New York (Oct. 15, 2004), New Orleans (Oct. 29, 2004); Co-Author, "2004 ABA Toxicology Monograph-California State Law," (January 2004); "Current Issues Involving Rule 12(b)(6) and Rule 9(b)," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 2004); "New Developments in Mass Torts and Class Actions: 'Issues' Certification The Mass Torts Top Ten of 2003; Rule 23's New Provision and Action Trial Plans; And the FJC 'New Plain Language' Class Notice," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study, February 2004); "Human Rights Violations as Mass Torts: Compensation as a Proxy for Justice in the United States Civil Litigation System"; Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-02); "Unfinished Business: Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," 36 *Wake Forest Law Review* 979 (Winter 2001); "Symposium: Enforcing the Social Contract through Representative Litigation," 33 *Connecticut Law Review* 1239 (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," 74 *Tulane Law Review* 2005 (June 2000); "Class Action Trends and Developments After *Amchem* and *Ortiz*," in *Civil Practice and Litigation Techniques in Federal and State Courts*

(ALI-ABA Course of Study 1999); Contributor/Editor, *Moore's Federal Practice* (1999); "Life After *Amchem*: The Class Struggle Continues," 31 *Loyola Law Review* 373 (1998); "Recent Developments in Nationwide Products Liability Litigation: The Phenomenon of Non-Injury Products Cases, the Impact of *Amchem* and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); Contributor/Editor, *California Causes of Action* (1998); "Beyond Bifurcation: Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken: Thoughts on the Fifth Circuit's Decertification of the *Castano* Class," SB24 ALI-ABA 433 (1996); "Getting the Word Out: Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements," 24 *CTLA Forum* 11 (Jan./Feb. 1994); "Do You Know the Way from San Jose? The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions & Derivative Suits* (Spring 1994); "An *Oracle* of Change? Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation: Tailor a Case Management Order to Your Controversy," 21 *The Brief* 12 (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets: When Fraud Creates the Market, 12 *Class Action Reports* 402 (1989); "The Applicability of the Fraud-On-The-Market Theory to 'Undeveloped' Markets: When Fraud Creates the Market," 12 *Class Action Reports* 402 (1989); "Mandatory Certification of Settlement Classes," 10 *Class Action Reports* 151 (1987); Co-author with Alexandra L. Foote and Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author with Fabrice N. Vincent, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002). *Member*: American Law Institute, Council; American Bar Association (Past Co-Chair, Committee on Mass Torts; Committee on Class Actions and Derivative Suits; Tort and Insurance Practice Section (TIPS); Past Vice-Chair, Rules & Procedures Committee, Contributor, Civil Procedure & Evidence News Letter; Business Law Section, Corporate & Litigation Group); Federal Bar Association, Northern District of California Chapter; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors, 1997-1998; Past Member, Judiciary Committee); Advisor, American Law Institute International Jurisdiction and Judgments and Aggregate Litigation Projects; California Constitution Revision Commission, 1993-1996; National Center for State Courts Mass Tort Conference Planning Committee; Northern District of California Civil Justice Reform Act (CJRA) Advisory Committee, and Advisory Committee on Professional Conduct; Lawyer-Delegate, Ninth Circuit Judicial Conference, 1992-1995; American Bar Association (Litigation Section and Committee on Class Actions and Derivative Suits; Co-Chair, Committee on Mass Torts); Consumer Attorneys of California (CAOC); Trial Lawyers for Public Justice (TLPJ); Bar Association of the Fifth Federal Circuit; Association of Trial Lawyers of America (ATLA) (California State Liaison, Women Trial Lawyers Caucus); California Women Lawyers; Lawyers Club of San Francisco; Queens Bench; Association of Business Trial Lawyers; Bay Area Lawyers for Individual Freedom; ABA National Institute on Class Actions (Organizer/ Participant, 1997-2000).

**RICHARD M. HEIMANN**, born Miami, Florida, August 23, 1948. Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1975; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 1980; U.S. District Court, District of Hawaii, 1986. *Education*: Georgetown University (J.D., 1972); *Georgetown Law Journal*, 1971-72; University of Florida (B.S.B.A., with honors, 1969). *Employment*: Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, and as an Assistant Public Defender in Philadelphia, Pennsylvania, 1972-74. As a private civil law attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials. In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages. Following the *Edsaco* trial, the parties reached a settlement of the action on favorable monetary terms to the class, which included Edsaco's relinquishment of its right to appeal and the plaintiff's agreement to vacate the jury verdict. *Member*: State Bar of California; Bar Association of San Francisco. *Awards and Honors: Northern California SuperLawyers*, 2004 & 2005.

**WILLIAM BERNSTEIN**, born York, Pennsylvania, July 5, 1950. Admitted to practice in California, 1975; U.S. Court of Appeals, Ninth Circuit, 1975; U.S. District Court, Northern District of California, 1975; New York and U.S. Supreme Court, 1985; U.S. District Court, Central and Eastern Districts of California, 1991; U.S. District Court, Southern District of California, 1992. *Education*: University of San Francisco (J.D. 1975); *San Francisco Law Review*, 1974-75; University of Pennsylvania (B.A., general honors, 1972). *Community Service*: Judge Pro Tem for San Francisco Superior Court, 2000-present; Marin Municipal Court, 1984; Discovery Referee for the Marin Superior Court, 1984-89; Arbitrator for the Superior Court of Marin, 1984-1990. *Publications/Presentations*: "The Rise and Fall of Enron's One-To-Many Trading Platform" (American Bar Association Antitrust Law Section, Annual Spring Meeting, 2005); Co-author with Donald C. Arbitblit, "Effective Use of Class Action Procedures in California Toxic Tort Litigation", 3 *Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996). *Member*: State Bar of California; State Bar of New York; Marin County Bar Association (Admin. of Justice Committee, 1988); Bar Association of San Francisco. *Awards and Honors: Northern California SuperLawyers*, 2004 & 2005.

**JAMES M. FINBERG**, born Baltimore, Maryland, September 6, 1958. Admitted to practice in California, 1984; U.S. District Court, Northern District of California, 1984; U.S. Court of Appeals, Ninth Circuit, 1987; U.S. Court of Appeals, Federal Circuit, 1987; U.S. District Court, Eastern District of California, 1987; U.S. District Court, District of Hawaii, 1988; U.S. District Court, Central District of California, 1992; U.S. District Court, Southern District of California, 1992; U.S. Court of Appeals, Tenth Circuit, 1992; U.S. Supreme Court, 1994; U.S. Court of Appeals, Eleventh Circuit, 1999; U.S. District Court, District of Colorado, 2001; U.S. Third Circuit Court of Appeals, 2001; U.S. District Court, Southern District of Texas, 2003. *Education*: University of Chicago (J.D., 1983); Executive Editor, *University of Chicago Law Review*, 1982-83; Brown University (B.A., 1980). *Employment*: Law Clerk to Justice Charles L. Levin, Michigan Supreme Court, 1983-84. *Publications*: Co-Author with Peter E. Leckman, "Holding Customers Who Assist Securities Fraud Accountable Under State Law," *Securities Litigation Report* (Vol. 3, No. 5, May 2006); Author, "State Law Wage/Hour Class Actions: Alive And Well In Federal Court," *ABA Labor and Employment Section 2005*; Co-Author with

Melissa Matheny, "A Developing Consensus: The PSLRA's 'Basis' Requirement Does Not Require the Disclosure of Confidential Sources in a Complaint," *Securities Litigation Report* (Vol. 2, No. 1, July/August 2005) (Glasser Legal Works); Co-Author, "Statistical and Other Expert Proof," *Employment Discrimination Law* (4th ed., Lindemann and Grossman); Editor, *Securities Litigation Report* (Glasser Legal Works, 2004-Present); *Contributor*, *Wage and Hour Laws: A State-by-State Survey* (BNA, 2004); Contributor, *Fair Labor Standards Act: 2004 Cumulative Supplement* (BNA, 2004); Co-Author with Chimène I. Keitner, "New Overtime Regulations Require Heightened Vigilance," *San Francisco Attorney Magazine*, Spring 2004; Co-Author with Chimène I. Keitner, "Summary of Proposed DOL Regulations Re FLSA Overtime Exemptions" (2003) (American Bar Association – Labor and Employment Law, Federal Labor Standards Legislation Committee Annual Report); Editor, 2000 and 2002 Cumulative Supplements to Chapter 39, "Statistical Proof," *Employment Discrimination Law* (3rd ed., Lindemann and Grossman); "Title VII's Remedial Scheme: Employment Discrimination Class Actions at the Crossroads," *San Francisco Attorney* (August/September 2002); "Certification of Employment Discrimination Actions After The Passage of the 1991 Civil Rights Act: (b)(2) or Not (b)(2), That Is The Question," *Class Actions & Derivative Suits,* Vol. 10 (March 2000); Co-Author with Joshua P. Davis, "*Allison v. Citgo Petroleum Corp.*- A Noble Retreat," *Class Actions & Derivative Suits*, Vol. 9, No. 1 (Winter 1999); Co-Author with Kelly Dermody, "Discovery in Employment Discrimination Class Actions," in *Litigation and Settlement of Complex Class Actions* (Glasser Legal Works 1998); Co-Author with Melanie M. Piech, "The Impact of the Private Securities Litigation Reform Act: Unintended Consequences," *Securities Reform Act Litigation Reporter*, Vol. 6, No. 3 (Dec. 1998); Co-Author with Karen Jo Koonan, "The Importance of Anecdotal Testimony to the Jury Trial of a Title VII Class Action: Lessons from *Butler v. Home Depot*," *Class Actions & Derivative Suits,* Vol. 8, No. 3 (Summer 1998); "Northern District of California Requires Internet Posting of Pleadings And Key Briefs In Securities Actions," "*Securities Reform Act Litigation Reporter*" (1997); "Class Actions: Useful Devices That Promote Judicial Economy And Provide Access to Justice," 41 *New York Law School Law Review* 353 (1997); Co-Author (with Melvin R. Goldman), "Deposing Expert Witnesses" in *Taking Depositions* (ABA) (1989); Co-Author (with George C. Weickhardt), "New Push For Chemical Weapons," *Bulletin of the Atomic Scientist* (Nov. 1986); Comment, "The General Mining Law and The Doctrine of Pedis Possessio: The Case For Congressional Action," 49 *University of Chicago Law Review* 1027 (1982). *Member*: Bar Association of San Francisco (President, 2005; President-elect, 2004; Treasurer, 2003; Secretary, 2002; Board of Directors, 1998-2000; Judicial Evaluation Committee, 1994); Ninth Circuit Judicial Conference (Lawyer Representative 1998-2000; Co-Chair of Northern District of California Lawyer Representative Delegation, 1999-2000); Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1992-98; Co-Chair 1997-98; Finance Chair, 1992-95; Secretary, 1996); ACLU of Northern California (Board of Directors, 1994-95); Northern District of California Advisory Committee on Local Rules Under the Securities Litigation Reform Act, 1996-present; American Bar Association (Member, Class Actions and Derivative Suits Committee; Chair, Securities Subcommittee, 1998-present); Plaintiff's Program Chair, Equal Employment Opportunity Committee, 2000-2003); Ninth Circuit Public Information Outreach Committee (Member, 2001-present); Standing Committee on Legal Services to the Poor of the State Bar of California (1990-94; Vice Chair, 1993-94). *Awards and Honors*: "Top Plaintiffs' Securities Litigator in the San Francisco Bay Area," *The Recorder,* 2003; *Northern California SuperLawyers*, 2004, 2005, including Top 100 in Northern California in 2005; "Top San

Francisco Employment Lawyers," *The Recorder*, June 2004; "Top 30 Securities Litigators in California," *Daily Journal Extra*, May 2005; Best Lawyers in America, 2005, 2006.

**JOSEPH R. SAVERI**, born San Francisco, California, August 18, 1962. Admitted to practice in California, 1987; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Southern District of California; U.S. Court of Appeals, First Circuit; U.S. Court of Appeals, Second Circuit; U.S. Court of Appeals, Seventh Circuit; U.S. Court of Appeals, Eighth Circuit; U.S. Court of Appeals, Ninth Circuit; U.S. Supreme Court. *Education*: University of Virginia (J.D., 1987); University of California at Berkeley (B.A., 1984). *Publications and Presentations*: Panelist, *Soaring Prices for Prescription Drugs: Just Rewards for Innovations or Antitrust Violations?*, University of San Francisco Law Review (November 13, 2004); *California Antitrust & Unfair Competition Law 3d* (Antitrust and Unfair Competition Law Section of the State Bar of California 2003); Panelist, Fordham Conference on Electronic Discovery, Discovery Subcommittee of Advisory Committee on the Rules of Civil Procedure; Contributing Author, *California Class Actions Practice and Procedure (*Elizabeth J. Cabraser editor in chief, 2003); "RICO Update," 22 *Review of Securities and Commodities Regulation*, No. 18 (Oct. 25, 1989). *Member*: Northern District of California's Civil Rules and Practice Committee; Bar Association of San Francisco; State Bar of California; Italian American Bar Association; Lawyers Club of San Francisco.

**DONALD C. ARBITBLIT**, born Jersey City, New Jersey, May 5, 1951. Admitted to practice in Vermont, 1979; California and U.S. District Court, Northern District of California, 1986. *Education*: Boalt Hall School of Law, University of California (J.D., 1979); Order of the Coif; Tufts University (B.S., *magna cum laude*, 1974). *Publications*: Co-Author with Wendy Fleishman, "The Risky Business of Off-Label Use," *Trial* (March 2005); "Comment on *Joiner*: Decision on the *Daubert* Test of Admissibility of Expert Testimony," 6 *Mealey's Emerging Toxic Torts*, No. 18 (December 1997); Co-author with William Bernstein, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," 3 *Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996); "The Plight of American Citizens Injured by Transboundary River Pollution," 8 *Ecology Law Quarterly*, No. 2 (1979). *Appointments*: Member of the Federal Court-appointed Science Executive Committee, and Chair of the Epidemiology/Clinical Trials Subcommittee, In re Vioxx Products Liability Litigation, MDL No. 1657 (E.D.La.); Member of the Federal Court-appointed Science and Expert Witness Committees in *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), *In re Baycol Products Litigation,* MDL No. 1431 (D. Minn.) and *Rezulin Products Liability Litigation*, MDL No. 1348 (S.D. N.Y.). *Member*: Bar Association of San Francisco; State Bar of California. *Awards and Honors: Northern California Super Lawyers*, 2004.

**STEVEN E. FINEMAN,** born Los Angeles, California, February 13, 1963. Managing Partner. Admitted to practice in California, 1989; U.S. District Court, Northern, Eastern and Central Districts of California and U.S. Court of Appeals, Ninth Circuit, 1995; U.S. Court of Appeals, Fifth Circuit, 1996; New York, U.S. District Court, Eastern and Southern Districts of New York, U.S. Court of Appeals, Second Circuit and U.S. Supreme Court, 1997; District of Columbia, 1997. *Education*: University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (English Literature and Political Science, 1983-84). *Honors/Appointments*: "The New York Area's Best

Lawyers," *Best Lawyers in America* (published by *American Lawyer Media*); "40 under 40", *The National Law Journal*, 2002, selected as one of the country's most successful litigators under the age of 40; Editorial Board, "Bill of Particulars, A Review of Developments in New York State Trial Law," New York State Trial Lawyers Institute, Quarterly (June 2005-present); Board of Directors, Trial Lawyers for Public Justice (July 2002-present); Board of Trustees, Civil Justice Foundation (January 2004-present); Board of Directors, New York State Trial Lawyers Association (July 2001-July 2004); Plaintiff Toxic Tort Advisory Council, Lexis/Nexis, Mealey's Publications and Conferences Group (January 2002-present). *Publications/Presentations*: New York State Trial Lawyers Institute, Federal Practice for State Practioners, Speaker and Paper, *Federal Multidistrict Litigation Practice*, (March 30, 2005, New York, New York), published in "Bill of Particulars, A Review of Developments in New York State Trial Law" (Spring 2005); Stanford University Law School, The Stanford Center on Conflict and Negotiation, Interdisciplinary Seminar on Conflict and Dispute Resolution, Guest Lecturer, *In Search of "Global Settlements": Resolving Class Actions and Mass Torts with Finality* (March 16, 2004, Stanford, California); Lexis/Nexis, Mealey's Publications and Conferences Group, Wall Street Forum: Mass Tort Litigation, Co-Chair of Event (July 15, 2003, New York, New York); Northstar Conferences, The Class Action Litigation Summit, Panel Member on Class Actions in the Securities Industry, and Paper, *Practical Considerations for Investors' Counsel - Getting the Case* (June 27, 2003, Washington, D.C.); The Manhattan Institute, Center for Legal Policy, Forum Commentator on Presentation by John H. Beisner, "Magnet Courts: If You Build Them, Claims Will Come" (April 22, 2003, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's Courses on Complex Litigation ("Selecting The Forum For a Complex Case -- Strategic Choices Between Federal And State Jurisdictions") and Alternative Dispute Resolution ("ADR In Mass Tort Litigation") (March 4, 2003, Stanford, California); American Bar Association, Tort and Insurance Practice Section, Emerging Issues Committee, Member of Focus Group on Emerging Issues in Tort and Insurance Practice (coordinated event with New York University Law School and University of Connecticut Law School, August 27, 2002, New York, New York); Duke University and University of Geneva, *Debates Over Group Litigation in Comparative Perspective*, Panel Member on Mass Torts and Products Liability (July 21-22, 2000, Geneva, Switzerland); *New York Law Journal*, Article, *Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme* (November 23, 1998); Leader Publications, *Litigation Strategist*, "Fen-Phen" Articles, *The Admissibility of Scientific Evidence in Fen-Phen Litigation* and *Daubert Developments: Something for Plaintiffs, Defense Counsel* (June 1998, New York, New York); The Defense Research Institute and Trial Lawyer Association, Toxic Torts and Environmental Law Seminar, Article and Lecture, *A Plaintiffs' Counsels' Perspective: What's the Next Horizon?* (April 30, 1998, New York, New York); Lexis/Nexis, Mealey's Publications and Conference Group, Mealey's Tobacco Conference: Settlement and Beyond 1998, Article and Lecture, *The Expanding Litigation* (February 21, 1998, Washington, D.C.); New York State Bar Association, Expert Testimony in Federal Court After Daubert and New Federal Rule 26, Article and Lecture, *Breast Implant Litigation: Plaintiffs' Perspective on the Daubert Principles* (May 23, 1997, New York, New York). *Member*: American Bar Association; New York Bar Association; California Bar Association; District of Columbia Bar Association; Trial Lawyers for Public Justice; Association of the Bar of the City of New York; Association of Trial Lawyers of America; New York State Trial Lawyers Association; Trial Lawyers For Public Justice; Human Rights First; Supreme Court Historical Society.

**ROBERT J. NELSON**, born New York, New York, October 20, 1960; admitted practice in California, 1987; U.S. District Court, Central District of California, 1987; U.S. District Court, Northern District of California, 1988; U.S. Court of Appeals, Ninth Circuit, 1988; U.S. Court of Appeals, Sixth Circuit, 1995; District of Columbia, 1998; New York, 1999; U.S. District Court, Eastern District of New York, Southern District of New York, 2001. *Education*: N.Y.U. School of Law (J.D., 1987); Root-Tilden Scholarship Program, N.Y.U. School of Law; Order of the Coif, N.Y.U. School of Law; Articles Editor, *New York University Law Review;* Cornell University (A.B., *cum laude* 1982); Member, Phi Beta Kappa, Cornell; Member, College Scholar Honors Program, London School of Economics (General Course, 1980-81). *Employment:* Law Clerk to Judge Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 1987-88; Assistant Federal Public Defender, Northern District of California, 1988-93; Legal Research and Writing Instructor, University of California-Hastings College of the Law, 1989-91; Faculty Member, Stanford Law School Advocacy Skills Workshop, 1994-95. *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "The Importance of Privilege Logs," *The Practical Litigator*, Vol. II, No. 2 (March 2000)(ALI-ABA Publication); "To Infer or Not to Infer a Discriminatory Purpose: Rethinking Equal Protection Doctrine," 61 *New York University Law Review* 334 (1986). *Member*: State Bar of California; Bar of the District of Columbia; State Bar of New York; Bar Association of San Francisco; Association of Trial Lawyers of America; American Bar Association. *Awards and Honors: Northern California SuperLawyers*, 2004 & 2005.

**MORRIS A. RATNER**, born San Jose, California, November 13, 1966. Admitted to practice in California, 1991; District of Columbia, 1999; New York, 2000; U.S. District Court, Northern, Central and Southern Districts of California; and U.S. Court of Appeals, Second, Third, Sixth and Ninth Circuits. *Education*: Harvard University (J.D., 1991); Stanford University (B.A., with distinction, 1988); Phi Beta Kappa. *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "Factors Impacting the Selection and Positioning of Human Rights Class Actions in United States Courts: A Practical Overview," 58 *New York University Annual Survey of American Law* 623 (2003); "The Settlement of Nazi-Era Litigation Through the Executive and Judicial Branches," 20 *Berkeley Journal of International Law* 212 (No. 1, March 2002). *Member*: State Bar of California; State Bar of New York; Bar of the District of Columbia; Bar Association of San Francisco.

**KELLY M. DERMODY**, born Ithaca, New York, June 16, 1967. Admitted to practice in California, 1994; U.S. District Court, Northern District of California, 1995; U.S. Third Circuit Court of Appeals, 2001. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 1993); Moot Court Executive Board (1992-1993); Articles Editor, *Industrial Relations Law Journal/Berkeley Journal of Employment and Labor Law* (1991-1992); Harvard University (A.B. *magna cum laude*, 1990), Senior Class Ames Memorial Public Service Award. *Employment*: Law Clerk to Chief Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, 1993-1994; Adjunct Professor of Law, Golden Gate University School of Law, Employment Law (Spring 2001). *Awards: Daily Journal* Magazine: Named as one of California's "Top 20 Lawyers Under 40" (2006); *Law & Politics* magazine "Northern California Super Lawyer" award, 2004 & 2005. *Publications/Presentations*: "Class Actions: Latest Developments in Litigating and Settling Employment Discrimination Class Actions" (American

Bar Association Labor and Employment Section Equal Opportunity Committee, Mid-Year Meeting, 2001); Co-Author with James M. Finberg, "A Road Map to Discovery in Employment Discrimination and Wage/Hour Class Actions" (Glasser Legal Works Seminar, 2000); "Employment Discrimination Class Actions in the Wake of *Allison v. Citgo Petroleum Corp.*" (American Bar Association Litigation Section Annual Meeting, 2000); "Employment Discrimination Class Actions in the Wake of *Allison v. Citgo Petroleum Corp.* and Fed. R. Civ. P. 23(f)" (Federal Bar Association Convention, 1999); Co-Author with James M. Finberg, "Discovery in Employment Discrimination Class Actions," in *Litigation and Settlement of Complex Class Actions* (Glasser Legal Works 1998). *Member*: American Bar Association Labor and Employment Law Section Equal Employment Opportunity Committee (Co-Chair, 2003-present; Midwinter Meeting Planning Committee, 2000-present); ABA Labor and Employment Law Section Katrina Task Force (Member, 2005-present); Bar Association of San Francisco (Board of Directors, 2005-present; Litigation Section, Executive Committee, 2002-2005); Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1998-2005; Secretary, 1999-2003; Co-Chair, 2003-2005); National Center for Lesbian Rights (Board of Directors, 2002-present; Co-Chair, 2005-present); Pride Law Fund (Board of Directors, 1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); Equal Rights Advocates (Litigation Committee, 2000-2002); State Bar of California; Consumer Attorneys of California; National Employment Lawyers' Association; Bay Area Lawyers for Individual Freedom.

**JONATHAN D. SELBIN**, born Baton Rouge, Louisiana, May 11, 1967. Admitted to practice in California; New York; District of Columbia; U.S. Court of Appeals, Fifth Circuit; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Southern District of New York. *Education*: Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989). *Employment:* Law Clerk to Judge Marilyn Hall Patel, U.S. District Court, Northern District of California, 1993-95. *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor-in-chief, 2003); "Bashers Beware: The Continuing Constitutionality of Hate Crimes Statutes After R.A.V.," 72 *Oregon Law Review* 157 (Spring, 1993). *Member*: State Bar of California; State Bar of New York; Bar of the District of Columbia; American Bar Association; New York State Trial Lawyers Association.

**BARRY R. HIMMELSTEIN**, born Philadelphia, Pennsylvania, March 14, 1958. Admitted to bar, 1992, California; U.S. District Court, Northern District of California, 1992. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1991); Note and Articles Editor, *Hastings Law Journal* (1990-91); University of Michigan at Ann Arbor (B.G.S., with distinction, 1982). *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Employment*: Law Clerk to Judge Charles A. Legge, U.S. District Court, Northern District of California, 1991-92. *Member*: State Bar of California; Bar Association of San Francisco.

**ROBERT G. EISLER**, born Philadelphia, Pennsylvania, January 6, 1964. Admitted to bar, 1989, Pennsylvania; 1989, U.S. District Court, Eastern District of Pennsylvania; 2000, New York; 2001, U.S. District Court, Southern District of New York. *Education*: Villanova University School of Law (J.D., 1989); LaSalle University (B.A., 1986). *Member*: American Bar Association, Bar Association of the City of New York, Pennsylvania Bar Association, Philadelphia Bar Association.

**MICHELE C. JACKSON**, born Redwood City, California, January 17, 1954. Admitted to bar, 1979, California; U.S. District Court, Northern District of California, 1979; United States Supreme Court, 1988; U.S. Court of Appeals, Ninth Circuit, 1981; U.S. District Court, Central District of California, 1985; U.S. Court of Appeals, Fifth Circuit, 1989. *Education*: University of San Francisco School of Law (J.D., *cum laude*, 1979); Stanford University (B.A., with honors, 1976). *Employment*: Judicial Extern to Justice Wiley W. Manuel, California Supreme Court, Summer 1977. *Publications*: Chapter Co-Author with Marc Seltzer*, "*State Antitrust Law and Intellectual Property" in *California Antitrust & Unfair Competition Law* (Third), Vol. 1: Antitrust*; *Author, American Bar Association, Section Of Antitrust Law Course Materials, *Asserted Defenses to a § 17200 Class Action Based on Korea Supply -- The Interplay With Indirect Purchaser Litigation*; Contributing Author, *California Class Actions Practice and Procedure (*2003). *Awards and Honors*: Recipient of State Bar Board of Governors Award. *Appointments*: Officer, Advisor and Executive Committee Member, State Bar of California Antitrust and Unfair Competition Section (term beginning September 9, 2001). *Member*: American Bar Association; State Bar of California; Bar Association of San Francisco; McAuliffe Law Honor Society.

**MICHAEL W. SOBOL**, born Mt. Kisco, New York, October 5, 1961. Admitted to practice in Massachusetts, 1989; California, 1998; United States District Court, District of Massachusetts, 1990; U.S. District Court, Northern District of California, 2001. *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983). *Employment*: Lecturer in Law, Boston University School of Law, 1995-1997. *Member*: State Bar of California; Bar Association of San Francisco.

**MELANIE M. PIECH**, born Los Angeles, California, April 18, 1964. Admitted to practice in California, 1989; U.S. Court of Appeals for the Ninth Circuit, 1990; U.S. District Court, Central District of California, 1990; U.S. District Court, Northern District of California, 1991. *Education*: Hastings College of the Law, University of California (J.D., 1989); Loyola Marymount University (B.A., *magna cum laude*, 1986). *Publications*: Co-Author with James M. Finberg, "The Impact of the Private Securities Litigation Reform Act: Unintended Consequences," *Securities Reform Act Litigation Reporter*, Vol. 6, No. 3 (Dec. 1998). *Member*: State Bar of California; Bar Association of San Francisco.

**FABRICE N. VINCENT**, born Paris, France, June 15, 1966. Admitted to practice in California, 1992; U.S. District Court, Northern District of California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992. *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989). *Publications:* Co-Author with Elizabeth J. Cabraser, "Class Actions Fairness Act of 2005," *California Litigation,* Vol. 18, No. 3 (2005); Co-Editor, *California Class Actions Practice and Procedures* (2003-05); Co-Author, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealy's December Emerging Drugs Reporter* (December 2002); Co-author, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealy's Emerging Securities Litigation Reporter* (September 2002); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law* (ABA 2000-05), updated and re-published in 5 *Newberg on Class Actions* (2001-05); Coordinating Editor and Co-Author of California section of the ABA

State Class Action Survey (2001-05); Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000) and author of "Off-Label Drug Promotion Permitted" (Oct. 1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases," (Leader Publications 1999); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader Publications 2000). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association; Association of Trial Lawyers of America; Association of Business Trial Lawyers.

**DAVID S. STELLINGS**, born New Jersey, April 23, 1968. Admitted to practice in New York, 1994; New Jersey; 1994; U.S. District Court, Southern District of New York, 1994. *Education*: New York University School of Law (J.D., 1993); Editor, *Journal of International Law and Politics;* Cornell University (B.A., *cum laude*, 1990). *Member*: State Bar of New York; State Bar of New Jersey; Bar Association of the City of New York; New York State Bar Association; American Bar Association.

**ERIC B. FASTIFF,** born San Francisco, California. Admitted to practice in California, 1996; District of Columbia, 1997; U.S. Court of Appeals for the Ninth Circuit, U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, District of Columbia; U.S. Court of Federal Claims. *Education*: Cornell Law School (J.D., 1995); Editor-in-Chief, *Cornell International Law Journal;* London School of Economics (M.Sc. (Econ.), 1991); Tufts University (B.A., *cum laude, magno cum honore in thesi*, 1990). *Employment*: Law Clerk to Hon. James T. Turner, U.S. Court of Federal Claims, 1995-1996. *Publications*: Co-Editor, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser, Editor-in-Chief, 2005); "US Generic Drug Litigation Update," 1 *Journal of Generic Medicines* 212 (2004); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2003-04); "The Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments: A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems," 28 *Cornell International Law Journal* 469 (1995). *Member*: State Bar of California; District of Columbia Bar Association; Bar Association of San Francisco; Bar of the U.S. Court of Federal Claims; Editorial Board Member, *Journal of Generic Medicines*, 2003-present.

**WENDY FLEISHMAN**, born Philadelphia, Pennsylvania, 1954. Admitted to practice in Pennsylvania, 1977; New York, 1992. *Education*: University of Pennsylvania (Post-Baccalaureate Pre-Med, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974). *Employment*: Skadden, Arps, Slate, Meagher & Flom LLP in New York (Counsel in the Mass Torts and Complex Litigation Department), 1993-2001; Fox, Rothschild O'Brien & Frankel (partner), 1988-93 (tried more than thirty civil, criminal, employment and jury trials, and AAA arbitrations, including toxic tort, medical malpractice and serious injury and wrongful death cases); Ballard Spahr Andrews & Ingersoll (associate), 1984-88 (tried more than thirty jury trials on behalf of the defense and the plaintiffs in civil personal injury and tort actions as well as employment- and construction-related matters); Assistant District Attorney in Philadelphia, 1977-84 (in charge of and tried major homicide and sex crime cases). *Publications*: Co-Author

with Donald C. Arbitblit, "The Risky Business of Off-Label Use," *Trial* (March 2005); Co-Author, "From the Defense Perspective," in *Scientific Evidence*, Chapter 6, (Aspen Law Pub, 1999); American Bar Association, Editor, *Trial Techniques Newsletter*, Tort and Insurance Practices Section, 1995-96; and 1993-94. *Appointments: In re Baycol MDL Litigation* – Co Chair Science Committee; *In re Vioxx MDL Litigation* – Pricing Committee. *Member*: New York State Trial Lawyers Association (Board of Directors, 2004-Present); Association of the Bar of the City of New York (Judiciary Committee, 2004-Present); American Bar Association (2000, Affair Chair, ABA Annual Meeting, Torts & Insurance Practices Section, NYC; 1997, Chair, Trial Techniques Committee, Tort & Insurance Practices; 1996, Chair Elect, Trial Techniques Committee, Tort & Insurance Practices); Pennsylvania Bar Association (Committee on Legal Ethics and Professionalism, 1993-Present; Committee on Attorney Advertising, 1993-Present; Vice-Chair, Task Force on Attorney Advertising, 1991-92); State Bar of New York, Federal Bar Association; Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present; Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-94; New York State Trial Lawyers Association; New York Women's Bar Association; Association of the Bar of the City of New York; New York County Lawyers; ATLA; NYTLA; PATLA; Philadelphia Bar Association (Member of Committee on Professionalism 1991-92).

**BILL LANN LEE**, admitted to practice in New York, 1975; California, 1983; U.S. District Court, Central and Northern Districts of California; U.S. District Court, Eastern District of Michigan; U.S. District Court, District of Colorado; U.S. Court of Appeals, D.C., Second, Third, Fourth, Fifth, Sixth, Ninth and Eleventh Circuits; Supreme Court of the United States. *Education*: Columbia Law School (J.D. 1974), Stone Scholar, Best Moot Court Brief Prize; Yale College (B.A. 1971), Phi Beta Kappa, *magna cum laude* in History. *Employment*: Visiting Scholar, Columbia Law School, New York, NY, Feb.-Oct. 2001; Assistant Attorney General for Civil Rights, United States Department of Justice, Washington D.C., Dec. 1997-Jan. 2001; Western Regional Counsel, NAACP Legal Defense and Educational Fund, Inc., Los Angeles, CA, 1988-97; Supervising Attorney for Civil Rights Litigation, Center for Law in the Public Interest, Los Angeles, CA, 1983-88; Assistant Counsel, NAACP Legal Defense and Educational Fund, Inc., 1974-82; Volunteer Counsel, Asian American Legal Defense and Education Fund, New York, NY, 1979-80; Adjunct Professor of Political Science, Fordham University, New York, NY, 1977-80. *Awards and Honors*: *Northern California SuperLawyers*, 2004 & 2005; American Bar Association Commission on Racial and Ethnic Diversity in the Profession, 2004 Spirit of Excellence Award; Pearlstein Civil Rights Award, Anti-Defamation League, 2002; Honorary Doctorates in Law from City University of New York Law School, 2001; North Carolina Central University, 2000 and Wesleyan University, 1999; John Randolph Distinguished Service Award, United States Department of Justice, 2001; Pioneer Award, Organization of Chinese Americans, 2000; Trailblazer Award, National Asian Pacific American Bar Association, 1999; Judge Delbert E. Wong Distinguished Service Award, Southern California Chinese Lawyers Association, 1998. *Publications/Presentations*: Symposium Addresses: "Reason, Passion & the Progress of Law: Remembering and Advancing the Constitutional Vision of Justice William T. Brennan," Dinner Address, 300 *Harvard Civil Rights-Civil Liberties Law Review* 321 (1998); Book Review, "In Search of Equality, The Chinese Struggle Against Discrimination in Nineteenth Century America" by Charles J. McClain, 21 *Amerasia Journal* 205 (1995); "For Affirmative Action, Richmond Decision is a Detour, Not a Dead End," Op-ed, *Los Angeles Times*, Feb. 8, 1989, at p. 7 (with Jack Greenberg); "The Disparate Impact Model

and Subjective Criteria in Employment Discrimination Litigation," 5 *Labor & Employment Law News*, (Spring 1986) (with Pearl Lattaker); "A Right to An Integrated Education: A Survey," 14 *Urban Lawyer* 423 (1982), "Eliminating Barriers to Communications Between Class Action Counsel and Members in Actions Brought Pursuant to Rule 23, Federal Rules of Civil Procedure," *Report of the Committee on Civil Rights of the Association of the Bar of the City of New York* (1980); "Racial Discrimination in the United States," *Helsinki Watch Committee* (1980); "Yung Wing and the Americanization of China," 1 *Amerasia Journal* 25 (1971). *Member*: American Bar Association (Co-Chair, Committee on Class Action and Derivative Suits, Litigation Section, 1992-94; Association of the Bar of the City of New York, 1975-83, Member, Civil Rights Committee, 1979-83); Los Angeles County Bar Association, 1983-97; Ninth Circuit Judicial Conference, Central District California Lawyer Representative, 1990-93; Southern California Chinese Lawyers Association, 1988-97, Member, Board of Governors, 1988-90.

**PAULINA DO AMARAL**, born New York, New York, February 1966. Admitted to practice in New York, 1997; California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Southern District of New York, 2004; U.S. District Court, Western District of Michigan, 2004. *Education*: University of California Hastings College of Law (J.D., 1996); Executive Editor, *Hastings Constitutional Law Quarterly*; National Moot Court Competition Team, 1995; Moot Court Executive Board; University of Rochester (B.A., 1988). *Employment*: Law Clerk to Chief Judge Richard Alan Enslen, U.S. District Court, Western District of Michigan, 1996-98. *Member*: American Bar Association; State Bar of New York, State Bar of California, Bar Association of San Francisco; American Trial Lawyers Association; Association of the Bar of the City of New York; New York State Trial Lawyers Association.

**HECTOR D. GERIBON**, born Montevideo, Uruguay, November 5, 1966. Admitted to practice in New Jersey and New York, 1997; California, 1999; U.S. District Court, District of New Jersey, 1997; U.S. Court of Appeals for the Ninth Circuit, U.S. District Courts for the Northern and Central Districts of California, 1999; U.S. Court of Appeals, Third Circuit, 2001; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2006. *Education*: Brooklyn Law School (J.D., 1996); Moot Court Honor Society; American Jurisprudence Award for Health Law; Recipient, Edward V. Sparer Public Interest Law Fellowship; St. John's University, (B.S., Dean's List, 1988). *Employment*: Law Clerk to Judge Manuel L. Real, U.S. District Court, Central District of California, 1997-98; Judicial Extern to Chief Judge Peter C. Dorsey, U.S. District Court, District of Connecticut, 1995. *Member*: State Bar of New York; Bar Association of the City of New York, American Bar Association, Hispanic National Bar Association.

**LISA J. LEEBOVE**, born Detroit, Michigan, October 23, 1970. Admitted to practice in California, 1996; U.S. District Court, Northern District of California, 1997; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Central District of California, 2002; U.S. District Court, Eastern District of California, 2005. *Education*: Hastings College of the Law (J.D. *cum laude* 1996); Member, *Hastings Law Journal* (1994-95), Associate Notes Editor, *Hastings Law Journal* (1995-96); University of Arizona (B.A. *cum laude* 1992). *Employment*: Judicial Extern to Judge Susan Y. Illston, U.S. District Court, Northern District of California, 1996. *Publications*: Contributing Author, *California Class Actions Practice and Procedures*

*(*Elizabeth J. Cabraser editor in chief, 2003). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association; Consumer Attorneys of California.

**STEVEN M. TINDALL**, born Columbia, South Carolina, April 12, 1968.  Admitted to practice in California, 1996; U.S. District Court, Southern District of California, 2004; U.S. District Court, Eastern District of California, 2004; U.S. District Court, Northern District of California, 2001; U.S. District Court, Central District of California, 2000.  *Education*: Boalt Hall School of Law, University of California at Berkeley (J.D., 1996); Moot Court; Co-Director of Workers' Rights Clinic, 1994; Yale University (B.A., English Literature, *summa cum laude*, Phi Beta Kappa, 1990).  *Employment*:  Law Clerk to Chief Judge Judith N. Keep, U.S. District Court, Southern District of California, 1996-97; Law Clerk to Judge Claudia Wilken, U.S. District Court, Northern District of California, 1997-98.  *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "'Do as she does, not as she says:  The Shortcomings of Justice O'Connor's Direct Evidence Requirement in *Price Waterhouse v. Hopkins,*" 17 *Berkeley Journal of Employment and Labor Law* 332 (1996).  *Member*:  State Bar of California; Bar Association of San Francisco.

**KATHRYN E. BARNETT**, born Chapel Hill, North Carolina, October 23, 1967.  Admitted to practice in Tennessee, 1992; U.S. District Court, Middle District of Tennessee, 1997; U.S. 6th Circuit, 2000; U.S. District Court, Western District of Tennessee, 2001; U.S. 11th Circuit, 2003; U.S. District Court, Eastern District of Tennessee, 2005.  *Education*:  Vanderbilt University School of Law (J.D., 1992); American Jurisprudence Awards: Torts I and Jurisprudence; Davidson College (B.A., with Honors in Philosophy, 1989), Dean Rusk Grant for International Studies.  *Awards & Honors:* "Best Lawyers in Tennessee," *Business Tennessee,* (January 2006); "Best of the Bar," *Nashville Business Journal,* (Aug. 2005, Aug. 2003).  *Litigation Experience*: Ms. Barnett has tried over 15 civil and criminal trials, including complex and class action cases, as well as catastrophic personal injury cases. In 2000, Ms. Barnett obtained a verdict of nearly $6 million on behalf of parents whose unborn fetus died tragically due to medical malpractice. In March, 2004 and in August, 2004 Ms. Barnett served as co-lead trial counsel in the class action lawsuit of *In re Tri-State Crematory Litigation*, Multi-District Litigation Docket No. 1467. The case was settled during the second week of trial. The settlements in the Tri-State litigation exceed $40 million. *Employment*: Judicial Intern to Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, Fall 1990; Assistant Public Defender, Davidson County, Tennessee, Sept. 1991-Dec. 1995.  *Publications/Presentations*: "Power Windows Can Kill," *Trial* (April 2005);  "Limiting the Harmful Testimony of Experts on the Law," *Trial* (Jan 2001); "Letting Focus Groups Work for You," *Trial* (April 1999); "Knocking Out Opposing Experts," Tennessee Trial Lawyers (October and November, 2004), Nashville Bar Association (July, 2004); "Trial Practice Tips: Powerful Trial Strategies for the Absolute Litigator," Nashville Bar Association (April, 2004); "Damages," Tennessee Trial Lawyers (Oct. and Nov. 2003); "Trying the Wrongful Death Case in Tennessee," National Business Institute (Aug. 2003); "Advanced Personal Injury," National Business Institute (July 2003); "Mass Torts," Tennessee Bar Association (July 2002); "Superior Depositions Strategies in Civil Trial Practice," National Business Institute (Jan. 2002, Dec. 1999); "Lawsuits Against the Nursing Home Industry," Tennessee Trial Lawyers (Feb. 2000); "How to Prepare for Mediation and other Practice Tips," Nashville Bar Association (Oct. 2000); "Tennessee Expert Witness," Lorman Education Services (July 2000); "Using Focus Groups to Get the Settlement or Verdict Your Client Deserves," Tennessee Trial Lawyers (Feb. 1999).  *Member*:  Tennessee Trial

Lawyers (Board of Governors, 2002-2005; Chair Continuing Legal Education Committee 2004-05); Nashville Bar Foundation (Fellow); Tennessee Justice Center, Inc. (Board of Directors, 2002-05, Secretary-Treasurer, 2003-04); Nashville Lawyer's Association for Women (President, 2004-05; President-elect 2003-04; Director, 2002-03; Treasurer, 2000-02; Board, 1998-present); Davidson County, Tennessee Metropolitan Board of Equalization, 2000-04; Harry Phillips American Inn of Courts (Executive Committee, 2004-05; Member, 2004 - 2008, 1997-99); Nashville Bar Association; Tennessee Bar Association; American Association of Trial Lawyers.

**EVE H. CERVANTEZ**, born Columbus, Ohio, December 2, 1963. Admitted to practice in California, 1993; U.S. District Court, Northern District of California, and U.S. Court of Appeals, Ninth Circuit, 1993; United States Supreme Court, and U.S. District Court, Southern District of California, 1998; Eastern District of California, and Central District of California, 1999; U.S. District Court of Colorado, 2004. *Education*: Harvard Law School (J.D., 1992); *Harvard Law Review*, 1991-92; Washington University (A.B., 1985). *Employment*: Law Clerk to Judge Charles A. Legge, U.S. District Court, Northern District of California, 1992-93. *Publications*: "When Should You Bring State Law Wage & Hour Claims In Addition To, Or Instead Of, FLSA Claims?" *The Employee Advocate* (Summer/Fall 2003); Chapter Contributor to *Employment Discrimination Law*, "Statistical Proof" (BNA, 2002 Cumulative Supplement). *Member*: State Bar of California; American Bar Association, Bar Association of San Francisco; National Employment Lawyers Association; California Employment Lawyers Association.

**JOY A. KRUSE**, born Buffalo, New York, February 24, 1955. Admitted to practice in Washington, D.C., 1984; California; U.S. Supreme Court; U.S. Courts of Appeals for the District of Columbia, Ninth, and Federal Circuits; U.S. District Courts for the Northern and Eastern Districts of California, 1989. *Education*: Harvard Law School (J.D., 1984); Wellesley College (B.A., 1977). *Employment*: Assistant Federal Public Defender, Northern District of California, 1992-96; Public Defender Service, Washington D.C., 1984-89. *Member*: Phi Beta Kappa; State Bar of California; Bar Association of San Francisco.

**LORI ERIN ANDRUS,** born Baton Rouge, Louisiana. Admitted to practice in California, 1999; U.S. District Court, Northern, Southern and Central Districts of California, 2000. *Education*: Duke University (J.D., *cum laude*, 1999); Women Law Students' Association; Dean's Advisory Council; Boston University (M.S., *cum laude*, 1993). *Member*: State Bar of California; Association of Trial Lawyers of America, New Lawyers' Division Board of Governors; American Bar Association; Consumer Attorneys of California, at-large Board Member.

**CARYN BECKER**, born Johannesburg, South Africa, January 10, 1973. Admitted to practice in California, 1998; U.S. District Court, Northern District of California, U.S. District Court, Central District of California; U.S. Court of Appeals, Ninth Circuit, 1999. *Education*: Duke Law School (J.D., with honors, 1998); Technical Editor, *Law and Contemporary Problems*; Articles Editor, *Duke Journal of Gender Law & Policy*; Phi Beta Kappa; University of California at Berkeley (B.A., with high honors, 1995). *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Member*: American Bar Association; State Bar of California; Bar Association of San Francisco.

**STEPHEN H. CASSIDY**, born Pittsburgh, Pennsylvania, May 14, 1964. Admitted to practice in California, 1989; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1997. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1989); Associate Managing Editor, *Hastings International and Comparative Law Review*, 1988-89; Order of the Coif; Member, Thurston Society; Recipient, American Jurisprudence Awards for Real Property, Evidence and American Legal History; Georgetown University (B.S.F.S., 1986). *Employment*: Law Clerk to Magistrate-Judge Joan S. Brennan, U.S. District, Northern District of California, 1989-90; Motions Attorney, U.S. Court of Appeals, Ninth Circuit, 1992-94, 1996-97. *Publications/Presentations*: "Internet Marketing for Plaintiffs' Firms," CAOC Conference (May 2004); "Enhancing the Role of Law Firm Marketing Departments," LexisNexis Law Firm Marketers' Roundtable (November 2003); Contributing Author, *California Class Actions Practice and Procedures (* Elizabeth J. Cabraser editor in chief, 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," in *Survey of State Class Action Law* (ABA 2001); "The Newest Member of the Nuclear Club: Pakistan's Drive for a Nuclear Weapon's Capability," 12 *Hastings Int'l & Comp. L. Rev.* 679 (1989). *Member*: State Bar of California; Bar Association of San Francisco; American Bar Association (Litigation Section); Trial Lawyers for Public Justice; Association of Trial Lawyers of America; Consumer Attorneys of California.

**RACHEL GEMAN**, born Northampton, Massachusetts, August 7, 1971. Admitted to practice in New York, 1998; Southern and Eastern Districts of New York, 1999. *Education*: Columbia University School of Law (J.D. 1997); Stone Scholar; Equal Justice America Fellow; Human Rights Fellow; Editor, *Columbia Journal of Law and Social Problems*; Harvard University (A.B. *cum laude* 1993). *Employment*: Special Advisor, United States Mission to the United Nations, 2000; Law Clerk to Judge Constance Baker Motley, U.S. District Court, Southern District of New York, 1997-98. *Awards and Honors*: *Distinguished Honor Award*, United States Department of State, 2001. *Publications/Presentations*: "Time is Money, Except When It's Not: Compensable Time and the FLSA," National Employment Lawyers Association, Impact Litigation Conference (2005) (Author & Panelist); "Electronic Discovery," Federal Judicial Center & Institute of Judicial Administration, Workshop on Employment Law for Federal Judges (2005) (Panelist); "Image-Based Discrimination and the BFOQ Defense," *EEO Today* (Vol. 9, Issue 1, Fall 2004) (Author); "Fair Labor Standards Act Overtime Exemptions: Proposed Regulatory Changes," *New York State Bar Association Labor and Employment Newsletter* (Spring 2004) (Author); "Current Topics in Fair Labor Standards Act Litigation," Conference, Association of the Bar of the City of New York (2003, Chair & Panelist); "Workforce Without Borders," ABA Section of Labor & Employment Law, EEOC 2003 Midwinter Meeting (Moderator). *Member*: Board Member, National Employment Lawyers' Association/New York; American Bar Association, EEO Committee.

**BRUCE W. LEPPLA**, born Oakland, California, September 6, 1949. Admitted to practice in California, 1976; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1976; New York, 1978. *Education*: Boalt Hall School of Law, University of California (J.D., 1975); M.G. Reade Scholarship Prize, Boalt Hall School of Law; University of California, Berkeley (M.A., Economics, with honors, 1974); Yale University (B.A., *magna cum laude*, Highest Honors in Economics, 1971). *Employment*: California Bankers Insurance Services Inc. (CEO, President and General Counsel), 1998-2000; Redwood Bank (CEO, President and General Counsel), 1986-98; Lasky, Haas, Cohler & Munter, 1980-82;

Brobeck, Phleger & Harrison, 1980; Davis, Polk & Wardwell, 1976-80. *Teaching Positions*: Lecturer, California Bankers Association General Counsel Seminars, Lending Documentation, Financial Institutions Litigation and similar topics, 1994-97; Lecturer, University of California at Berkeley, Haas School of Business, Real Estate Law and Finance, 1993-96. *Publications*: Author or co-author of 11 different U.S. and International patents in electronic commerce and commercial product design, including "A Method for Storing and Retrieving Digital Data Transmissions," United States Patent No. 5,659,746, issued August 19, 1997; Author, "Securities Powers for Community Banks," *California Bankers Association Legislative Journal* (Nov. 1987). *Member*: State Bar of California; State Bar of New York; Yale University Alumni Board of Directors (Director, 2001-present); California Bankers Association (Director, 1996-98); California State Small Business Development Board, 1989-1997; University of California at Berkeley, Boalt Hall Alumni Board of Directors, 1993-96; Leadership Council, San Francisco Chamber of Commerce, 1990-1992; Community Reinvestment Institute (Founding Director, 1989-1990).

**SCOTT P. NEALEY**, born Champaign, Illinois, July 28, 1966. Admitted to practice in California, 1997; U.S. District Court, Northern District of California, 1998; U.S. District Court, Eastern District of California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Central District of California, 2000. *Education*: Boalt Hall School of Law, University of California (J.D., 1996); University of California at Berkeley (B.A., 1988). *Employment*: Law Clerk to Chief Justice Joseph R. Weisberger, Supreme Court of Rhode Island, 1996-97. *Publications*: Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003). *Member*: Bar Association of San Francisco; State Bar of California.

**ELIZABETH A. ALEXANDER,** born Morristown, Tennessee, October 4, 1971. Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 2001; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Eastern District of Tennessee, 2002. *Education*: Vanderbilt University Law School (J.D., 1998); President, Criminal Law Association; Moot Court Board Member; Vanderbilt University Honor Committee; Hollins College (B.A., 1993). *Employment*: Associate, Dodson, Parker, Dinkins & Behm (2002-03); Associate, Wyatt, Tarrant & Combs (2000-2002); Law Clerk, Honorable Thomas A. Higgins, U.S. District Court for the Middle District of Tennessee (1998-2000). *Publications*: "Consumer Class Actions Against Financial Institutions" (Lorman Education Services, July 2004). *Member*: State Bar of Tennessee; Tennessee Bar Association; Nashville Bar Association (Board of Directors, Young Lawyers Division); American Bar Association; Lawyers' Association for Women (2003-2005).

**DANIEL E. BARENBAUM,** born Boston, Massachusetts. Admitted to practice in California, 2000; U.S. Court of Appeals for the Ninth Circuit, U.S.; District Court for the Northern District of California; U.S. District Court for the Central District of California; U.S. District Court for the Southern District of California. *Education*: Emory School of Law (J.D., 2000); Goizueta Business School, Emory University (M.B.A., 2000, Award: Most Outstanding Academic Accomplishment); Tufts University (B.A., 1994). *Publications*: "Delineating Covered Class Actions Under SLUSA," Securities Litigation Report, December-January 2005; Contributing Author, *California Class Actions Practice and Procedures* (Elizabeth J. Cabraser editor-in-chief, 2003); Co-Author, *Class Certification of Medical Monitoring Claims in Mass*

*Tort Product Liability Litigation* (ALI-ABA Course of Study, 1999). *Member*: State Bar of California; Bar Association of San Francisco.

**DANIEL P. CHIPLOCK**, born Albany, New York. Admitted to practice in New York, 2001; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2001. *Education*: Stanford Law School (J.D., 2000); Article Review Board, *Stanford Environmental Law Journal*; Recipient, Keck Award for Public Service; Columbia University (B.A., *summa cum laude*, 1994); Phi Beta Kappa. *Member*: State Bar of New York; Association of Trial Lawyers of America; Trial Lawyers for Public Justice.

**DANIEL H. ROSE**, born New Rochelle, New York, 1958. Admitted to practice in California, 1984; U.S. District Court, Northern District of California, 1984. *Education*: University of California, Hastings College of Law (J.D., 1984); Constitutional Law Quarterly (1983-1984); University of Colorado at Boulder (B.A., Economics, *Magna Cum Laude, Phi Beta Kappa*, Chacellor's Honor Roll, 1980). Judicial Extern, Honorable Thelton E. Henderson, United States District Judge, Northern District of California, 1984. *Publications*: "National Beverage Container Deposit Legislation: A Cost-Benefit Analysis," 12 *Journal of Environmental Systems* 71 (1982-83) *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California.

## OF COUNSEL

**WILLIAM B. HIRSCH**, born Los Angeles, California, May 19, 1951. Admitted to practice in California, 1983; U.S. District Court, Northern District of California; U.S. District Court, District of Hawaii, 1991. *Education*: Harvard University (J.D., 1983); Princeton University (M.A., 1975); University of California at Santa Cruz (B.A., with highest honors, 1973). A*wards and Honors*: *Trial Lawyer of the Year*, Trial Lawyers for Public Justice, 1995. *Publications*: "Justice Delayed: Seven Years Later & No End In Sight," in *The Exxon Valdez Disaster: Readings On A Modern Social Problem* (Kendall & Hunt Pub. Co. 1996). *Member*: Bar Association of San Francisco; State Bar of California; Trial Lawyers for Public Justice; The Association of Trial Lawyers of America; ACLU of Northern California (Steering Committee, 1993-94).

**NIGEL TAYLOR**, born Lancaster, England, July 11th, 1952. Admitted to practice in England 1976, Hong Kong 1980, Australia (State of Victoria) 1983. *Education*: Liverpool University (LL.B 1973). *Publications*: "Limitation of Liability of Air Carriers to Air Crash Victims – Has the Warsaw Convention Reached its Retirement Age?" *Journal of Personal Injury Litigation* (July 1994). *Notable Cases*: 1991 Lauda Air Boeing 767 crash in Thailand; 1992 Pakistan International Airlines Airbus A-300 crash in Nepal; 1992 Thai Airways International Airbus A-310 crash at Kathmandu; 1994 Aeroflot Russian Airlines Airbus A-310 crash in Siberia; 1997 China Southern Airlines Boeing 737-300 crash at Shezhen, China; 1994 Royal Air Force Chinook helicopter crash in Scotland; British Army Westland Lynx helicopter crash in Germany; 1998 Air France Boeing 727 crash near Bogota, Columbia; 1998 Thai Airways International Airbus A-310 at Surat Thani, Thailand; 2000 Air France Concorde at Paris ; 2000 Gulf Air Airbus A-320 at Bahrain. *Previous Employment:* Principal, Nigel Taylor& Associates 1996-2004; Partner, Sinclair Roche & Temperley 1978-1996, London and Hong Kong;

Associate, Richards, Butler 1974-1978, London. *Member*: Association of Trial Lawyers of America; Association of Personal Injury Lawyers; Law Society of England & Wales.

## ASSOCIATES

*MARK P. CHALOS*, born New York, New York, September 3, 1973. Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 1999; U.S. District Court, Middle District of Tennessee, 1999; U.S. District Court, Western District of Tennessee, 2001; U.S. District Court, Eastern District of Tennessee, 2005; U.S. District Court, Northern District of Florida, 2005. *Education*: Emory University School of Law (J.D., 1998); Dean's List; Award for Highest Grade, Admiralty Law; Research Editor, *Emory International Law Review*; Phi Delta Phi Legal Fraternity; Vanderbilt University (B.A., 1995). *Publications, Presentations, Appointments*: "The End of Meaningful Punitive Damages," *Nashville Bar Journal*, November 2001; "Is Civility Dead?" *Nashville Bar Journal*, October 2003; "The FCC: The Constitution, Censorship, and a Celebrity Breast," Nashville Bar Journal, April 2005. *Member*: American Bar Association; Association of Trial Lawyers of America; Tennessee Bar Association; Tennessee Trial Lawyers Association; Nashville Bar Association; Past-Chair, ABA YLD Criminal & Juvenile Justice Committee; American Bar Association Tort Trial and Insurance Practice Section Professionalism Committee YLD liaison; Board of Directors, Nashville Bar Association YLD; Chair, Nashville Bar Association YLD Continuing Legal Education; *Nashville Bar Journal*, Editorial Board; Member, Harry Phillips American Inn of Court (2002-2004); Grant Review Panelist, Metropolitan Nashville Arts Commission; Founding Member, Young Professionals Program, Frist Center for the Visual Arts; President, Kappa Chapter of Kappa Sigma Fraternity Alumni Association.

*CHRISTOPHER E. COLEMAN*, born Mobile, Alabama, March 30, 1971. Admitted to practice in Georgia, 2005. *Education:* Northwestern University School of Law (J.D., *cum laude*, 2003); Order of the Coif; Associate Editor, *Northwestern University Law Review* (2002-2003); John Paul Stevens Public Interest Fellowship (2002); Bluhm Legal Clinic Center on Wrongful Convictions (2001-2003); Northwestern University (M.A., History, 2000); University of Virginia (M.A., English, 1995); Vanderbilt University (B.A., *magna cum laude*, 1993). *Publications & Presentations:* "Decades-Old Murder Case Needs Review," Op-Ed, *Chicago Sun-Times*, February 2, 2003; Co-Author, "Social Movements and Social Change Litigation: Synergy in the Montgomery Bus Protest," *Law and Social Inquiry* (Fall 2005); "Fingerprints and False Confessions: The William Heirens Case," Conference Presentation, Conference on False Confessions, Center on Wrongful Convictions, Northwestern University, Chicago, Illinois, March 2002. *Prior Employment:* Judicial Clerkship, Honorable Joan Humphrey Lefkow, U.S. District Court, Northern District of Illinois, 2003-2005. Leadership Council for Metropolitan Open Communities (Chicago, Illinois, 2002); Central Alabama Fair Housing Center (Montgomery, Alabama, 1997-1998).

*ELIZABETH H. CRONISE*, born Allentown, Pennsylvania, 1971. Admitted to practice in Virginia, 1997; U.S. Court of Appeals, 4th Circuit, 1997; U.S. District Court, Eastern and Western Districts of Virginia, 1997; District of Columbia, 1998; U.S. District Court, District of Columbia, 1999; U.S. Court of Appeals, District of Columbia Circuit, 2002; U.S. District Court, Eastern District of Wisconsin, 2003; U.S. Court of Appeals, 8th Circuit, 2003; New York, 2005. *Education*: George Washington University Law School (J.D., with honors, 1997); Moot Court

Board (President, 1996-97; Member, 1995-97); West Bar Publishing Award for Clinical Achievement; Dean's Fellow in Legal Research and Writing; Carnegie Mellon University (B.A., with college honors, 1992). *Employment*: Associate, DiMuro, Ginsberg & Lieberman, 1997-1998; Associate, Lukas, Nace, Gutierrez & Sachs, Chartered, 1998-1999; Associate, Cohen, Milstein, Hausfeld & Toll, PLLC, 1999-2003. *Presentations & Public Service*: Director of Development, Tribeca Organization (2006-present); Coordinator, Rainmaking Training for Women Trial Attorneys, New York State Trial Lawyers Association (2004-05); Pro Bono Attorney, Trial Lawyers Care, Representing Claimants before the September 11 Victims Compensation Fund (2003-2004); "Sample v. Monsanto: Price Fixing and Biotech Seeds," Conference on Complex Litigation in Agricultural Markets (2002); "Reparations for World War II Comfort Women," UNC Law School 6th Annual Conference on Race, Gender, Class & Ethnicity – Reconciling Hope and History: The Question of Reparations (2002); "Class Action Lawsuits and Genetic Engineering," National Conference of the Genetic Engineering Action Network (GEAN) (2001); "The Intersection of Antitrust and Intellectual Property," Conference on Complex Litigation in Agricultural Markets (2001); "The Case Against Monsanto," FarmAid 2000, Second Annual Farmer Summit on Genetic Engineering in Agriculture (2000); Radio Commentator, WTEM/WBIG, Public Service Programming on Current Events and Legal Issues (1997-2001). *Member*: New York State Trial Lawyers Association; Virginia State Bar Association; District of Columbia Bar Association (Chairperson, Young Litigators Committee, Litigation Section, 2002-03); American Bar Association; American Trial Lawyers Association.

**MATTHEW S. DA VEGA**, born Santa Rosa, California, February 14, 1971. Admitted to practice in California, 1998; U.S. District Court, Northern District of California, 1998. *Education*: University of San Francisco Law School (J.D., 1997); University of California, Santa Barbara (B.A., 1993). *Employment*: Associate, Brayton & Purcell, 2000-2002; Law Clerk to Judge Elaine Watters, California Superior Court, Sonoma County, 1998. *Member*: State Bar of California; Bar Association of San Francisco; Trial Lawyers for Public Justice; Association of Trial Lawyers of America (ATLA).

**NICHOLAS R. DIAMAND**, born London, England. Admitted to practice in New York, 2003; U.S. District Court, Southern, Eastern, Northern, and Western Districts of New York; US. Court of Appeals, Seventh Circuit. *Education*: Columbia University School of Law (LL.M., Stone Scholar, 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude,* 1992). *Employment*: Solicitor, Herbert Smith, London (1999-2001); Law Clerk to the Honorable Edward R. Korman, Chief Judge, U.S. District Court, Eastern District of New York (2002-03). *Publications/Presentations:* Panelist, "Obstacles to Access to Justice in Pharmaceutical Cases," *Pharmaceutical Regulation and Product Liability*, British Institute of International and Comparative Law, April 21, 2006; Panelist, "Pre-Trial Discovery in the United States," Union Internationale des Avocats, Winter Seminar, February 2006; Columnist, *The New York Employee Advocate*, NELA/NY, February 2006-present. *Member*: New York City Bar Association, Trial Lawyers for Public Justice, American Society of International Law, Law Society of England and Wales.

**DAVID L. FIOL**, born New York, New York, September 24, 1960. Admitted to practice in New York, 1989 and California, 1999; U.S. Supreme Court, 1996; U.S. Court of Appeals for the 2d Circuit, 1997, U.S. Court of Appeals for the 6th Circuit, 1992; U.S. Court of Appeals for the 9th Circuit, 1997, U.S. District Court, Northern District of California, 2000; U.S.

District Court, Eastern District of New York, 1989; U.S. District Court, Southern District of New York, 1989. *Education:* Harvard Law School (J.D., 1988); Cornell University, College of Arts & Sciences (B.A., 1984). *Prior Employment*: Legislative Assistant to Assemblyman Richard Brodsky, New York State Assembly (1984-1985); Associate, Brayton Purcell (2003-2005); Associate, Kreindler & Kreindler (1988-1998). *Member:* American Bar Association; Trial Lawyers for Public Justice. *Notable Decisions: Rein v. Socialist People's Libyan Arab Jamahiriya (In re: Lockerbie)*, 162 F.3d 748 (2nd Cir.1998); *In re: Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804 (2nd Cir. 1994); *Charash v. Oberlin College*, 14 F.3d 291 (6th Cir.1994); *Lam v. Aeroflot Russian Intern. Airlines*, 999 F.Supp. 728 (S.D.N.Y. 1998); *Goldsmith v. Learjet, Inc.*, 260 Kan. 176 (Kan. 1996); *Harrell v. Champlain Enterprises Inc.*, 613 N.Y.S.2d 1002 (N.Y.App. Div. 1994); *Shaffer v. Maier*, 68 Ohio St.3d 416 (Ohio 1994).

*ALEXANDRA L. FOOTE*, born Riverside, California, September 14, 1971. Admitted to practice in California, 2002; U.S. Court of Appeals for the Ninth Circuit, 2002; U.S. District Court, Northern District of California, 2002. *Education*: University of California, Hastings College of the Law (J.D. 2002); Hastings College of the Law Civil Justice Clinic; Brown University (A.M. Environmental Studies 2000); University of Oregon, (B.A. 1992, *magna cum laude, Phi Beta Kappa*, departmental honors, Outstanding Junior Woman of the Year Award 1991, Outstanding Senior of the Year Award 1992). *Publications*: "Rocket Fuel in Drinking Water and Food: Health Effects, Politics and Regulation of Perchlorate," *Mealey's Emerging Toxic Torts* (October 2004); Co-author with Elizabeth J. Cabraser, and Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's Daubert Report* (December 2002); Co-author of California Section of *Survey of State Class Action Law* (ABA 2003), re-published in 5 *Newberg on Class Actions* (2003). *Member*: California State Bar; American Bar Association, Litigation Section; Bar Association of San Francisco; Lawyer's Club of San Francisco; Association of Trial Lawyers of America.

*DAVID P. GOLD*, born New York, New York, December 29, 1967. Admitted to practice in New York, 2004. *Education*: Columbia Law School (J.D., 2002), James Kent Scholar, Articles Editor, *Columbia Law Review*; University of Pennsylvania (Ph.D., 2002), William Penn Fellow; Brown University (A.B., *magna cum laude,* 1990). *Employment*: Law Clerk to Honorable Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 2002-03. *Publications*: "Wildlife Protection and Public Welfare Doctrine," 27 *Colum. J. Envtl. L.* 633 (2002); "A Hitherto Unknown Sanskrit Work Concerning Madhava's Power Series for Sine and Cosine," 42 *Historia Scientiarum* 49 (1991). *Member:* State Bar of New York, Southern District of New York, Eastern District of New York.

*JENNIFER GROSS*, born Sleepy Hollow, New York, July 1, 1969. Admitted to practice in California, 1994; U.S. District Court, Central District of California, 1994. *Education*: RAND Graduate School (M. Phil., 1997); University of Southern California (J.D., 1994); Emory University (B.A., 1991). *Publications*: Co-Author, *Intelligence, Surveillance, and Reconnaissance Force Mix Study: Final Report* (RAND 2003); Co-Author, *Asbestos Litigation Costs and Compensation: An Interim Report* (RAND 2002); Co-Author, *Asbestos Litigation in the U.S.: A New Look at an Old Issue* (RAND 2001); Co-Author, *Class Action Dilemmas: Pursuing Public Goals for Private Gain* (RAND, 2000); Co-Author, *Potential Vulnerabilities of*

*U.S. Air Force Information Systems* (RAND, 1999); Co-Author, "Preliminary Results of the RAND Study of Class Action Litigation," (RAND, 1997). *Member*: State Bar of California.

**HENRY JOHN GUTIERREZ**, born Biloxi, Mississippi, July 20, 1965. Admitted to practice in California, 2005; U.S. District Court, Northern District of California, 2005; U.S. District Court, Eastern District of California, 2005, and in Mississippi, 2000; U.S. District Court, Southern District of Mississippi, 2000; U.S. District Court, Northern District of Mississippi, 2000; U.S. Fifth Circuit Court of Appeals, 2000. *Education*: Georgetown University Law Center (J.D., 1999); Assistant Articles Editor, *Georgetown Journal of Gender and the Law* (1998-1999); University of California, Berkeley, (M.L.I.S., Library and Information Studies, 1991); Brown University (A.B., American Civilization, 1988). *Employment*: Associate with Phelps Dunbar, LLP (2001-2004); Associate with Page, Mannino, Peresich & McDermott, PLLC (1999-2001). *Member*: State Bar of California; Mississippi Bar (Public Information Committee, 2003-2004); Bay Area Lawyers for Individual Freedom; American Bar Association; Consumer Attorneys of California; American Constitution Society.

**LEXI J. HAZAM,** born Olney, Maryland, October 9, 1973. Admitted to practice in California, 2003; U.S. District Court, Northern District of California, 2003. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2001); California Law Review; Articles Editor, La Raza Law Journal; Recipient, Berkeley Law Foundation Summer Grant for Public Service; Federal Practice Clinic, Hopi Appellate Clinic; Stanford University (B.A., *Phi Beta Kappa*, 1995, M.A. 1996). *Employment:* Law Clerk, Mexican American Legal Defense and Education Fund, Summer 1999; Law Clerk to Judge Henry H. Kennedy, Jr., U.S. District Court for the District of Columbia, 2001-02. *Member*: State Bar of California, National Employment Lawyers' Association; Association of Trial Lawyers of America (ATLA); Consumer Attorneys of California.

**DANIEL M. HUTCHINSON**, born Oakland, California, May 25, 1977. Admitted to practice in California, 2005; U.S. Court of Appeals for the Ninth Circuit, 2005; U.S. District Court, Northern District of California, 2005. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2005), Senior Articles Editor, *African-American Law & Policy Report*, Prosser Prizes in Constitutional Law and Employment Law; University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999), Mellon Minority Fellowship (1997-1999). *Employment*: Judicial Extern to the Hon. Martin J. Jenkins, U.S. District Court, Northern District of California, 2004; Law Clerk, Lewis & Feinberg, P.C., 2003-2004; Teacher, Oakland Unified School District, 1999-2002. *Member*: National Bar Association.

**CHIMÈNE I. KEITNER,** born Ontario, Canada, November 14, 1975. Admitted to practice in California, 2003; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 2003. *Education*: Yale Law School (J.D., 2002); Moot Court of Appeals (Best Individual and Best Team Performance, 2002); Senior Editor, *The Yale Law Journal* (2001-02); Book Reviews Editor, *The Yale Journal of International Law* (2000-01); Oxford University (Doctorate in International Relations, 2001; Rhodes Scholar); Harvard University (A.B., *magna cum laude*, 1996); Phi Beta Kappa. *Employment*: Student Director, Jerome N. Frank Legal Services Immigration Clinic (2000-01); Consultant, UNESCO Division of Cultural Policies (2001); Law Clerk, Canadian Supreme Court Chief Justice Beverley

McLachlin (2002-03). *Publications*: *The Paradoxes of Nationalism: The French Revolution and Its Meaning for Contemporary Nation Building* (State University of New York Press, forthcoming 2007); Contributor with James M. Finberg, *Wage and Hour Laws: A State-by-State Survey* (BNA, 2004); Contributor with James M. Finberg, *Fair Labor Standards Act: 2004 Cumulative Supplement* (BNA, 2004); Co-Author with James M. Finberg, "New Overtime Regulations Require Heightened Vigilance," *San Francisco Attorney Magazine*, Spring 2004; "Free Association: The United States Experience," with W. Michael Reisman, *Texas International Law Journal*, Vol. 39, No. 1 (Fall 2003); "Associate Statehood: Principles and Prospects," *Faroese Law Review*, Vol. 3, No. 1 (May 2003); "The Challenge of Building an Inter-Communal Rule of Law in Helen Hunt Jackson's *Ramona*," *Law and Literature*, Vol. 15, No. 1 (Spring 2003); "Victim or Vamp? Images of Violent Women in the Criminal Justice System," *Columbia Journal of Gender and Law*, Vol. 11, No. 1 (Spring 2002); "Crafting the International Criminal Court: Trials and Tribulations in Article 98(2)," *UCLA Journal of International Law and Foreign Affairs*, Vol. 6, No. 1 (Spring/Summer 2001); "National Self-Determination in Historical Perspective 1789/1989: Insights from the French Revolution for Today's Debates," *International Studies Review*, Vol. 2, Issue 3 (Fall 2000); "The 'False Promise' of Civic Nationalism," *Millennium: Journal of International Studies*, Vol. 28, No. 2 (1999); "Nationalism and War in the French Revolution," *The ASEN Bulletin*, No. 17 (Summer 1999); "Power and Identity in Nationalist Conflicts," *Oxford International Review*, Vol. VIII, No. 2 (Spring 1997). *Member*: State Bar of California; American Bar Association (Section of Litigation); Bar Association of San Francisco; American Society of International Law; International Law Association (American Branch); Yale Law School Association Executive Committee; American Constitution Society.

**KENT L. KLAUDT,** born Jamestown, North Dakota, September 6, 1968. Admitted to practice in California, 1996; U.S. District Court, Northern District of California, 1997; U.S. District Court, Eastern District of California, 1998. *Education*: University of Minnesota Law School (J.D., 1996); Outside Articles Editor, *Journal of Law & Inequality: A Journal of Theory & Practice*; National Association of Public Interest Law (Summer Fellowship, 1995); University of Minnesota (B.A., 1991). *Prior Employment:* BlueDog, Olson & Small, PLLP, 1995-96; Cartwright & Alexander, LLP, 1996-2001; The Cartwright Law Firm, Inc., 2001-2004. *Publications:* "Hungary After the Revolution: Privatization, Economic Ideology, and the False Promise of the Free Market," *13 Law & Inequality: A Journal of Theory & Practice* 301. *Member*: American Trial Lawyers Association; Consumer Attorneys of California; Trial Lawyers for Public Justice; San Francisco Trial Lawyers Association; National Lawyers Guild.

**KRISTEN E. LAW**, born Parkersburg, West Virginia, April 3, 1974. Admitted to practice in California, 2002. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2002); Executive Editor, *Ecology Law Quarterly*; Moot Court Advocacy Award; Moot Court Board; Hopi Appellate Clinic; Ohio Wesleyan University (B.A., *summa cum laude,* 1995); Presidential Scholar. *Member*: Phi Beta Kappa; State Bar of California.

**PETER LECKMAN**, born New Haven, Connecticut, December 26, 1976. Admitted to practice in California, 2005; U.S. Court of Appeals for the Seventh Circuit, 2005. *Education:* Boalt Hall School of Law, University of California, Berkeley (J.D. 2004), Order of the Coif, Associate Editor, *California Law Review,* Chair, Human Rights Board, California Asylum and Refugee Clinic; American University in Cairo; Wesleyan University, CT (B.A., Phi Beta Kappa,

1999). *Awards:* Harry S. Truman Scholar (1998). *Publications:* Co-Author with James M. Finberg, "Holding Customers Who Assist Securities Fraud Accountable Under State Law," *Securities Litigation Report* (Vol. 3, No. 5, May 2006). *Prior Employment:* Judicial Clerkship, Honorable Diane P. Wood, U.S. Court of Appeals for the Seventh Circuit (2004-2005). *Member:* State Bar of California. *Languages:* Arabic (conversational).

**ANNIKA K. MARTIN**, born New York, New York, September 13, 1979. Admitted to practice in New York, 2005; U.S. District Court, Southern District of New York, 2005. *Education:* Law Center, University of Southern California (J.D., 2004); Review of Law & Women's Studies; Jessup Moot Court; Medill School of Journalism, Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999). *Publications*: "Stick a Toothbrush Down Your Throat: An Analysis of the Potential Liability of Pro-Eating Disorder Websites," *Texas Journal of Women & the Law* (Volume 14 Issue 2, Spring 2005); "Welcome to Law School," monthly column on www.vault.com (2001-2004). *Awards and Honors*: 2005 Wiley W. Manuel Award for Pro Bono Legal Services awarded by the State Bar of California for voluntary provision of legal services to the poor. *Member*: New York State Bar Association (General Practice Section and Young Lawyers Section); Swedish American Bar Association; American Trial Lawyers Association; New York State Trial Lawyers Association; New York County Lawyer's Association. *Languages*: Swedish (fluent); French (DFA1-certified in Business French); Spanish (conversational).

**PAUL A. MOORE III**, born Kailua, Hawaii, January 1, 1966. Admitted to practice in Maryland. *Education*: University of Virginia (J.D., 1998); George Mason University -- Institute for Conflict Analysis and Resolution (M.S.C.A.R., 1994); Georgetown University (B.S.F.S., 1990). *Prior Employment*: Trial Attorney, U.S. Department of Justice - Antitrust Division, 1998-2004. *Member*: State Bar of Maryland, American Bar Association.

**JAHAN C. SAGAFI**, born Philadelphia, Pennsylvania, December 26, 1971. Admitted to practice in California, 2003. *Education*: Harvard Law School (J.D., 2001); Senior Editor, *Harvard Civil Rights-Civil Liberties Law Review*, 1999-2001; President, Board of Student Advisers; Harvard College (B.A., *magna cum laude*, 1994). *Employment*: Law Clerk to Judge William W Schwarzer, U.S. District Court, Northern District of California, 2001-02. *Member*: State Bar of California; California Bar, Northern District; California Bar, Southern District; National Employment Lawyers' Association; Association of Trial Lawyers of America (ATLA); Consumer Attorneys of California; American Bar Association; Bar Association of San Francisco.

**DANIEL E. SELTZ**, born Alexandria, Virginia, April 24, 1974. Admitted to practice in New York, 2004; U.S. District Court, Southern District of New York, 2005. *Education*: New York University School of Law (J.D., 2003); *Review of Law and Social* Change, Managing Editor; Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, Phi Beta Kappa, 1997). *Employment*: Law Clerk to Honorable John T. Nixon, U.S. District Court, Middle District of Tennessee, 2003-04. *Publications*: "Remembering the War and the Atomic Bombs: New Museums, New Approaches," in *Memory and the Impact of Political Transformation in Public Space* (Duke University Press, 2004), originally published in *Radical History Review*, Vol. 75 (1998); "Issue Advocacy in the 1998 Congressional Elections," with Jonathan S. Krasno (Urban Institute, 2001); *Buying Time: Television Advertising in the 1998 Congressional Elections*, with Jonathan S. Krasno (Brennan Center for Justice, 2000);

"Going Negative," in *Playing Hardball*, with Kenneth Goldstein, Jonathan S. Krasno and Lee Bradford (Prentice-Hall, 2000). *Member*: American Trial Lawyers Association; State Bar of New York.

**ERIK L. SHAWN**, born New York, New York, May 3, 1970. Admitted to practice in New York, 1996. *Education*: Fordham University School of Law (J.D., 1995); Brandeis University (B.A., *cum laude*, 1992). *Member*: State Bar of New York; American Bar Association; New York State Bar Association; New York County Lawyers Association.

**TODD A. WALBURG**, born Berkeley, California, January 5, 1973. Admitted to practice in California, 2001. *Education:* University of San Francisco School of Law (J.D. 1999); Founder and President, USF Student Chapter, Association of Trial Lawyers of America (1997-1999); Investigation Intern, San Francisco Public Defender's Office; Mediation Intern, San Francisco Small Claims Court; Mediation Intern, U.S. Equal Employment Opportunity Commission; University of California at Los Angeles (B.A., 1995). *Awards:* Leesfield/Association of Trial Lawyers of America Scholarship, National Winner (1998). *Prior Employment:* Associate, Bennett, Johnson & Galler (1992-2005). *Member:* Board of Governors, Alameda-Contra Costa Trial Lawyers Association; San Francisco Trial Lawyers Association; Consumer Attorneys of California; Association of Trial Lawyers of America.

**JENNA M. WHITMAN**, born Palo Alto, California, December 29, 1972. Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. Court of Appeals, 9th Circuit, 2001. *Education*: Georgetown University Law Center (J.D., 2001); *Journal of Gender and the Law*, Symposium Committee; Yale College (B.A., 1995). *Employment*: Law Clerk to U.S. Attorney's Office, Economic Crimes Unit (2000-2001); Howard, Rice, Nemerovski, Canady, Falk & Rabin, P.C. (2001-2004). *Member*: American Bar Association; Bar Association of San Francisco; California Bar Association; Bay Area Lawyers for Individual Freedom; Board Member, AIDS Legal Referral Panel.

**GENA E. WILTSEK**, born New York, New York, March 19, 1973. Admitted to practice in New York, 2001; District of Columbia, 2002; U.S. District Court for the District of Columbia, 2003; U.S. District Court for the Southern and Eastern Districts of New York, 2005. *Education*: University of Michigan Law School (J.D., 1999); Associate Editor, *Michigan Journal of Law Reform*; Yale University (B.A., with distinction in Political Science, 1995). *Employment*: Bernabei & Katz, PLLC (2000-2004). *Member*: American Bar Association; New York State Bar Association; District of Columbia Bar.

**HEATHER H. WONG**, born San Diego, California, July 5, 1978. Admitted to practice in California, 2005; U.S. District Court, Central District of California, 2005; U.S. Court of Appeals, 9th Circuit, 2005; U.S. District Court, Northern District of California, 2006; U.S. District Court, District of Colorado, 2006. *Education:* University of San Francisco (J.D. & M.B.A. 2005), Beta Gamma Sigma Honor Society; Technical Editor, *Maritime Law Journal*. University of California, Berkeley (B.A. 2000). *Member*: American Bar Association; State Bar of California.

Notice on the Firm's AV Rating: AV is a registered certification mark of Reed Elsevier Properties, Inc., used in accordance with the Martindale-Hubbell certification procedures,

standards and policies.  Martindale-Hubbell is the facilitator of a peer review process that rates lawyers.  Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories – legal ability and general ethical standards.

EXHIBIT B

# RODDY KLEIN & RYAN
# FIRM RESUME

The law firm of Roddy Klein & Ryan, located in Boston, Massachusetts, specializes in the representation of consumers in individual and class actions against predatory lenders, finance companies, debt collectors, utilities, and others, and consumer bankruptcy. Since it was founded, Roddy Klein & Ryan (formerly Grant & Roddy, until February 2004) has obtained several hundred million dollars in restitution and debt forgiveness for consumers by successfully asserting claims under state and federal consumer protection laws on their behalf. A partial listing of the firm's litigated cases includes the following:

*Curry v. Fairbanks Capital Corporation*, 03-10875-DPW (D. Mass.) ($55,000,000 settlement of nationwide class action based on predatory loan servicing practices on behalf of class of 750,000 borrowers; co-counsel with National Consumer Law Center);

*In re Household Lending Litigation*, 02-1240-CW (N. D. Cal.) ($150,000,000 settlement of nationwide class action based on predatory loan practices, on behalf of class of 900,000 borrowers);

*Ford Motor Credit v. Lowe,* Cleveland Municipal Court, Case No. 99 CVF 15806 ($19,000,000 class action settlement in favor of statewide class of 11,000 borrowers whose cars were repossessed);

*Mendez v. Island Finance Corporation*, 03-1075-JAF (D. P.R.) ($1,500,000 settlement of class action alleging violations of the Truth in Lending Act);

*Torres v. Associates Financial Services, et al,* CN 03:2003 cv 01135 (D. P.R.) (pending class action settlement in favor of class of homeowners in Puerto Rico who received truth in lending disclosures which understated the cost of the loan);

*Heist v. Chase Manhattan Bank,* C-02-2380 (Frederick County Md.) (pending class action settlement in favor of statewide class of Chase borrowers assessed challenged inspection fees);

*Horowitz v. Boch Motor, Inc., et al,* Norfolk Superior Court, Massachusetts, Civ. No. 01-659 (pending settlement on behalf of statewide class of consumer car buyers for violations of law prohibiting certain practices in sale of ancillary theft deterrent products);

*Coleman v. GMAC*, Civ. No. 3-98-0211 (M.D. Tenn.) (class action settlement in favor of nationwide class of minority consumer car buyers for violations of Equal Credit Opportunity Act);

*Cason v. Nissan Motor Acceptance Corp*, Civ. No. 3-98-0223 (M.D. Tenn.) (class action settlement in favor of nationwide class of minority consumer car buyers for violations of Equal Credit Opportunity Act);

*Dwyer et al. v. NSTAR, Inc. et al.*, No. SUCV2001-01817 (Ma. Sup.) (settlement of consumer claims related to utility overcharge based on misclassification of billing rate);

*Lewis v. National Grid [USA], Inc*, Hampshire Superior Court, Civil Action No. 01-0232 (class action settlement in favor of regional class of utility customers);

*Kent et al. v. Western Massachusetts Electric Co*., HAMPCV 2001-00232 (Ma. Sup.) (settlement of consumer claims related to utility overcharge based on misclassification of billing rate);

*Terry v. Shaw's Supermarkets,* Norfolk Superior Court, Massachusetts, 03-CV-02124 (putative class action on behalf of statewide class of consumers who overpaid for groceries because of scanning errors, settlement discussions ongoing during litigation moratorium);

*Garoaian v. Stop & Shop Companies, Inc.,* Middlesex Superior Court, Massachusetts, 03-CV-4702 (putative class action on behalf of statewide class of consumers who overpaid for groceries because of scanning errors, settlement discussions ongoing during litigation moratorium);

*Webb v. Westborn Chrysler Plymouth Jeep, Inc.,* No. 03-CV-7107 (E.D. Mich.) (certified class in favor of statewide class of consumers whose auto loans violated truth in lending act; settlement discussions ongoing during litigation moratorium);

*Block v. JD ByRider, Inc.*, 02-CV-20858 (Cuyahoga County, Ohio) (certified class in favor of statewide class of consumers charged usurious loan rates on auto loans and deprived of proper notice upon repossession, pending summary judgment);

*Anderson v. Asset Acceptance Corp*, 1-03-00097-DAP (N.D. Ohio) (pending settlement of statewide class action based on violations of Fair Debt Collection Practices Act);

*Brown v. Gibraltar Savings Bank, et al*, No. L-710-99, Superior Court of New Jersey, Law Division, Cumberland County and *Carrasco v. Parkway Mortgage and Fidelity Security Life Ins. Co.*, No. No. L- 00-4815-99, Superior Court of New Jersey, Law Division, Camden County (consolidated class action settlement in favor of statewide class of credit insurance purchasers refunding unearned premiums);

2

*Coley v. Guarantee Trust Life Ins. Co.,* No. 99-006680, Circuit Court of Cook County Illinois, Chancery Division (certified class in favor of statewide class of credit insurance purchasers to obtain refunds of unearned premiums, obtained summary judgment determination on behalf of class);

*Patton v. JB Robinson Jewelers, Inc., et al,* CA No. 97-C-4151, United States District Court for the Northern District of Illinois and *York v. Weisfields Jewelers, Inc., et al,* CA No. 98-C-5227, United States District Court for the Northern District of Illinois s [MDL No. 1192] (class action settlement in favor of nationwide class of financed jewelry purchasers);

*Migut v. Tandy Corporation,* No. 97-C-4800, United States District Court for the Northern District of Illinois (class action settlement in favor of nationwide class of bankruptcy debtors);

*Mazola, et al v. The May Department Stores Company*, United States District Court, District of Massachusetts, Civil No. 97-10872-NG (class action settlement in favor of nationwide class of bankruptcy debtors);

*Fisher, et al. v. General Electric Capital Corporation, et al*, No. 97 C 3065, United States District Court for the Northern District of Illinois [MDL No. 1192] (class action settlement in favor of nationwide class of bankruptcy debtors);

*Conley, et al v. Sears, Roebuck & Company*, CA No. 97-11149-PBS, United States District Court for the District of Massachusetts and *Brioso, et al v. Sears, Roebuck & Company*, 97-1222-CJK, United States Bankruptcy Court, District of Massachusetts [MDL No. 1185] (class action settlement in favor of nationwide class of bankruptcy debtors);

*Donlevy v. First Commercial Mortgage Co., Inc, et al,* CA No. No. 96-11401-GAO, United States District Court, District of Massachusetts (class action settlement in favor of nationwide class of consumer mortgage borrowers);

*Coppola, et al v. Wendover Funding, Inc, et al,* CA No. 96-11458-PBS, United States District Court, District of Massachusetts (class action settlement in favor of nationwide class of consumer mortgage borrowers);

*McKay, et al v. ContiMortgage Corporation, et al,* CA No. 96-10717-EFH, United States District Court, District of Massachusetts (class action settlement in favor of nationwide class of consumer mortgage borrowers);

*Mogavero, et al v. Matrix Financial Services, Corp.,* CA No. 96-11149-GAO, United States District Court for the District of Massachusetts, and [consolidated] *Limper, et. al. v. Matrix Financial Services, Corp.,* 96-CVH-022, Court of Common Pleas, Ottawa County, Ohio (class action settlement in favor of national class of consumer mortgage borrowers);

*Davis, et al v. GE Capital Mortgage Services, Inc.,* Civil No. 95-2043, United States District Court for the District of New Jersey (class action settlement in favor of national class of consumer mortgage borrowers);

*Dunmire, et al v. Domestic Loan and Investment Bank, et al,* CA No. 95-12617-JLT, United States District Court for the District of Massachusetts (class action settlement in favor of regional class of consumer mortgage borrowers);

*Dwyer, et al v. Barco Auto Leasing Corporation, Barron Chevrolet, Inc., and Bernardi, Inc.,* CA No. 95 - 10888-WGY, United States District Court, District of Massachusetts (class action settlement as to the defendants Barron and Bernardi in favor of statewide class of consumer lessees of motor vehicles);

*Black, et al v. Mitsubishi Motors Credit of America, Inc.,* Civil Action No. 94C-3055, United States District Court for the Northern District of Illinois, Eastern Division (class action settlement in favor of national class of consumer lessees of Mitsubishi motor vehicles);

*Roach, et al, v. Colonial National Bank and Advanta Mortgage Corp., USA*, Suffolk Superior Court Civil Action No. 93-3542 (class action settlement in favor of statewide class of consumer mortgage borrowers);

*Hodo, et al v. Financial Enterprises Corporation*, Suffolk Superior Court Civil Action No. 93-2861 (multi-plaintiff settlement in favor of elderly eastern Massachusetts consumer mortgage borrowers);

*Whitley v. Rhodes Financial Services, Inc.,* 177 B.R. 142 (D. Mass. 1995) United States Bankruptcy Court for the District of Massachusetts, Eastern Division (decision invalidating creditor's mortgage and note pursuant to Truth in Lending mortgage rescission); and

*Sneller v. Master Collectors, Inc.,* CA No. 93-12636, United States District Court for the District of Massachusetts (settlement in favor of mentally impaired plaintiff pursuant to Fair Debt Collection Practices Act).

The partners of Roddy Klein & Ryan are John Roddy, Gary Klein, and Elizabeth Ryan.

<u>John Roddy</u> has been admitted to practice before the Massachusetts Supreme Judicial Court since 1980 and the District Court for the District of Massachusetts and the First Circuit Court of Appeals since 1981. He is a graduate of Boston College Law School (J.D., <u>cum laude</u>, 1980) and the University of Massachusetts at Amherst (B.A., <u>magna cum laude</u>, 1976). Virtually all of Mr. Roddy's practice has involved litigation on behalf of consumers, representing

individuals and classes injured by predatory lending, abusive debt collection and other unfair and deceptive business practices.

From 1980 -1987 Mr. Roddy served as an Assistant Attorney General in the Massachusetts' Attorney General's Office.  From 1980-1985, as an attorney in the Consumer Protection Division, he enforced state and federal consumer protection laws on behalf of affected Massachusetts consumers. From 1986-1987 Mr. Roddy was Legislative Counsel to the Attorney General, in the office's Executive Bureau.

Mr. Roddy has written and spoken extensively on consumer law and specifically on consumer class action litigation:

"Class Actions In Bankruptcy Court: Jurisdiction and Remedial Issues" in *Consumer Financial Services Litigation* (Practising Law Institute, April, 2002).

"The Crossroads of Privacy and Credit: Class Liability Under the Fair Credit Reporting Act" in *Consumer Financial Services Litigation* (Practising Law Institute, April, 2001).

"Unrefunded Credit Insurance Premiums: A MultiMillion Dollar Constructive Trust" in *Consumer Financial Services Litigation* (Practising Law Institute, April, 2000).

"Measuring Liability for the Sale of Ancillary Products: Credit Insurance" in *Banking and Consumer Financial Services Summit* (Fulcrum Information Services, November, 1999);

"Remedies For Systemic Violations Of The Bankruptcy Discharge" in *Consumer Financial Services Litigation* (Practising Law Institute, April, 1999);

"Deconstructing TILA" 14 *Review of Banking and Financial Services*  87 (May, 1998);

"Reversing Field: Is There A Trend Toward Abrogating Truth in Lending?" in *Consumer Financial Services Litigation* (Practising Law Institute, May, 1998);

"Reaffirmation Abuses: Class Remedies," in *Consumer Financial Services Litigation* (Practising Law Institute, December, 1997);

"Developments in Residential Mortgage Litigation*," 13 Review of Banking and Financial Services 83* (April, 1997);

"Yield Spread Premium Upselling and Mortgage Payoff Fees," in *Consumer Financial Services Litigation* (Practising Law Institute, April, 1997);

Contributor, *Consumer Law Pleadings, Volumes 9 (2003); 8 (2002); 5 (1999), 3 (1997) and 1 (1995)*, National Consumer Law Center (annual compendium of pleadings from significant consumer litigation nationwide);

"Residential Mortgage Litigation," in *Financial Services Litigation* (Practising Law Institute, 1996) (with Daniel A. Edelman);

Contributor, *Truth in Lending*, National Consumer Law Center (3d. Ed. 1995);

"Truth in Lending Rescission as Foreclosure Defense" in *National Consumer Rights Litigation Conference* (published materials, National Consumer Law Center, 1994).

For the past six years Mr. Roddy has co-chaired the Practising Law Institute's bi-coastal conference on consumer credit class action litigation, *Consumer Financial Services Litigation*, and has conducted trainings for legal services and private attorneys in consumer credit law and litigation, focusing on the Truth in Lending Act and Fair Debt Collection Practices Act. Mr. Roddy also wrote the brief of *amicus curiae* submitted by the National Association of Consumer Advocates ("NACA") in *Botelho v. Citicorp,* CA No. 96-12279-EFH, United States District Court, District of Massachusetts, No. 97-1535, United States Court of Appeals for the First Circuit, and the *amicus curiae* brief filed by NACA in a similar Truth in Lending appeal before the United States Supreme Court. *Beach v. Great Western Bank*, United States Supreme Court, No. 97-5310.

<u>Gary Klein</u> is admitted to practice before the Supreme Judicial Court of Massachusetts, the First, Third, Sixth, and Seventh Circuit Courts of Appeals, and United States Supreme Court. He is a graduate of Rutgers Law School (J.D. 1985) and Yale University (B.A. 1980). Mr. Klein is a nationally recognized expert on consumer law and consumer education. His practice focuses upon unfair business practice cases, consumer protections for predatory lending, creation of sustainable homeownership opportunities, and consumer bankruptcy.

6

From 1991 to 2000, Mr. Klein was a Senior Attorney at the National Consumer Law Center and Director of the Center's Sustainable Homeownership Initiative.  Prior to joining NCLC, Mr. Klein was a managing attorney at New Hampshire Legal Assistance in Manchester, and a staff attorney at Community Legal Services, Inc. in Philadelphia, PA. From 1987 to 1988, Mr. Klein was a law clerk to the Honorable Bruce I. Fox of the United States Bankruptcy Court For The Eastern District Of Pennsylvania.

Mr. Klein has written and spoken extensively on consumer law and specifically on predatory lending and consumer bankruptcy issues. His publications include:

Editor, *Consumer Bankruptcy Law and Practice*, The Consumer Credit and Legal Practice Series (National Consumer Law Center, 6th ed. 2000).

*Repossessions and Foreclosures*, (National Consumer Law Center, 4th ed. 1999).

Contributing Author, *Truth in Lending*, (National Consumer Law Center, 4th ed. 2000).

*Surviving Debt: A Guide for Consumers*, (3rd ed. 1999).

"Remedies for Discharge Violations" American Bankruptcy Institute Law Journal (November/December 2000).

"Legislative Intent or Judicial Myth-making? No Legislative History Supports Policy Argument Advanced Against Stripdown", American Bankruptcy Institute Law Journal (December/January 2000).

"Consumer Bankruptcy: Providing a Safety Net for Overwhelmed Families" (Senate Testimony), 52 Consumer Finance Law Quarterly Rep. 185 (Spring, 1998).

Seminars he has conducted include:

"Predatory Lending as a Fair Housing Issue ,"  New Orleans Fair Housing Action Center (June 2004).

"Preventing Predatory Lending,"  Milwaukee Fair Housing Center (June 2004).

"Mortgage Servicing Issues,"  Consumer Financial Services Litigation Seminar, Practicing Law Institute (April, 2004).

"Predatory Mortgage Loans and Bankruptcy," American Bankruptcy Institute (July, 2003)

"Preserving the American Dream," A series of seminars on foreclosure prevention and financial literacy for Housing Counselors, Neighborhood Reinvestment Institute (1998-2000).

"Defending Foreclosures & Utility Terminations," MCLE (November, 1999).

"Preventing Predatory Lending and Preserving Homeownership," Neighborhood Reinvestment Institute (June, 1999).

"Preventing Foreclosure on Low-Income Homeowners," Legal Services for New York City (December, 1998).

"Preserving the American Dream: Loss Mitigation for Homeowners," A series of 10 trainings for the Department of Housing and Urban Development (1997 – 1998).

Mr. Klein has testified frequently before both houses of Congress on consumer credit issues and the Bankruptcy and his legislative advocacy included successfully lobbying Congress in 1994 for passage of the Homeownership and Equity Protection Act (HOEPA) and organizing opposition to credit industry efforts to revise the nation's bankruptcy laws.  He is a past director of the National Association of Consumer Bankruptcy Attorneys and is currently a director of the American Bankruptcy Institute.

Elizabeth A. Ryan practices in the areas of class actions and consumer credit litigation. A graduate of Catholic University (J.D., 1985) and the College of the Holy Cross (B.A., 1981), she is admitted to the state and federal district courts of Massachusetts and the First Circuit Court of Appeals.  Ms. Ryan has been involved in hundreds of cases involving consumer protection issues, and has served as a panelist in trainings on consumer law conducted by the National Consumer Law Center, the Massachusetts Continuing Legal Education and the Florida State Bar. Ms. Ryan is a member of the National Association of Consumer Advocates and a former Consumer Law Fellow, National Consumer Law Center (1993).  She is a contributing author *to Repossession & Foreclosures* (National Consumer Law Center, 5th ed. 2002), and to *Consumer Credit Law Manual* (National Consumer Law Center, 2003).

From 1990 to 1993, Ms. Ryan was a supervising attorney at D.C. Law Students in Court, a civil litigation clinic for students at the five law schools in Washington D.C., specializing in housing law and consumer bankruptcy. From 1987 to 1990, Ms. Ryan was a staff attorney at Neighborhood Legal Services in Washington D.C. where she represented low income clients in landlord-tenant and consumer cases. From 1986 to 1987, Ms. Ryan served as law clerk to the Honorable Nan Huhn of the D.C. Superior Court.

Shennan A. Kavanagh practices in the areas of class actions and consumer finance litigation. A graduate of Suffolk University Law School (J.D., cum laude, 2002) and the University of Vermont (B.A., 1997), she is admitted to the state and federal district courts of Massachusetts. Ms. Kavanagh is involved in a variety of cases involving consumer protection issues, and is a pro bono attorney with the Volunteer Lawyers Project, where she represents low-income clients in bankruptcy proceedings. She served as a Peace Corps volunteer in Guinea, West Africa teaching ESL from 1997 to 1999. Ms. Kavanagh is a member of the American Bar Association and the Massachusetts Bar Association. She served as an editor and research assistant for the *E-Business Legal Handbook* by Michael L. Rustad (New York: Aspen Law & Business (2003) (with Cyrus Daftary)).

EXHIBIT C

# JAMES, HOYER, NEWCOMER & SMILJANICH, P.A.
## ATTORNEYS AT LAW

Jill H. Bowman
Christopher C. Casper
Christa L. Collins
Mark S. Fistos
Tamra Givens
Amy K. Guinan
Judy S. Hoyer
W. Christian Hoyer
Bill James (Ret.)
Gregory W. Kehoe
Kathleen Clark Knight
J. Andrew Meyer
John R. Newcomer, Jr.
Jesse L. Ray

ONE URBAN CENTRE, SUITE 550
4830 WEST KENNEDY BOULEVARD
TAMPA, FLORIDA 33609
(813) 286-4100   FAX (813) 286-4174

P.O. BOX 1259
ST. PETERSBURG, FL 33731
(727) 823-3837 FAX (727) 822-2969

www.jameshoyer.com

Elaine Scudieri Stromgren
Terry A. Smiljanich
John A. Yanchunis

Investigators:
Larry Dougherty
Frank Martelli
Allen H. McCreight
Michael D. Mihok
Rob North
Jim Ross
Alfred W. Scudieri

## FIRM  BIOGRAPHY

James, Hoyer, Newcomer, & Smiljanich P.A., was formed in January 1993.  Since its inception the firm has been actively engaged in complex, consumer-related litigation on behalf of defrauded consumers.  Notably,  beginning in 1993, the firm successfully litigated the class action suit of *Horton et al. v. Metropolitan Life Insurance Company*, Case No. 93-1849-CIV-T-23A, in the United States District Court for the Middle District of Florida. This was the first class action lawsuit brought against a life insurance company for deceptive market conduct in the sale of life insurance.  Since then, the firm has been involved in more than forty additional class action lawsuits involving similar conduct.

The firm has been involved as lead or co-counsel in  more than eighty class action law suits on a nationwide basis.  In each of these suits, the firm has represented a class of plaintiffs who alleged a fraudulent scheme conducted against consumers. This has included deceptive sales practices, discriminatory pricing, product liability, and deceptive banking and credit card practices.  The firm has represented many relators in *qui tam* actions for frauds against the government.  In addition, the firm has represented many individuals who have been victimized by fraudulent conduct of corporations.

Our lawyers and staff are experienced in complex litigation involving insurance coverage, class actions, mass torts, civil rights and products liability. Many of our lawyers began their careers as prosecutors, law enforcement officers or  FBI agents. Our firm employs veterans of the civil and criminal divisions of the United States Department of Justice as well as a former Assistant Director of the FBI. We are also supported by a staff of eight investigators. Our investigators have decades of experience involving complex cases and have investigated matters  throughout the world.

Our firm has been involved in the settlement of cases with a combined value of more than $2 billion. This unique range of expertise has resulted in a nationwide practice.  Biographies of the firm s attorneys and investigators are set out below.

## PARTNERS

**BILL JAMES (Retired)**, born St. Louis, Missouri, October 16, 1932; admitted to bar, 1957, Missouri; 1958, U.S. District Court, Eastern District of Missouri; 1966, Florida; 1969, U.S. District Court, Middle District of Florida; 1970, U.S. Court of Appeals, Fifth Circuit. *Education*: Amherst College; Kansas State College; Washington University (A.B., 1955; J.D., 1957). Commissioner, Justice Administrative Commission, 1985-1992. Secretary, Treasurer, Florida Prosecuting Attorneys Association, 1988. Committee Member, Florida Standard Jury Instructions in Criminal Cases, 1985-1993. Assistant U.S. Attorney, Eastern District of Missouri, 1960-1961. Chief Assistant U.S. Attorney, Tampa Division, Middle District of Florida, 1970-1978. Trial Attorney, Organized Crime Section, U.S. Department of Justice, 1978-1984. State Attorney, 13th Judicial Circuit, Tampa, Florida, 1985-1993. *Member:* Hillsborough County Bar Association; The Florida Bar; The Missouri Bar; Ferguson-White Inn of Court.

**W. CHRISTIAN HOYER,** born Metuchen, New Jersey, April 4, 1945; admitted to bar, 1973, Florida and U.S. District Court, Middle District of Florida; 1975, U.S. Supreme Court. *Education*: Rider College (B.S. Economics, 1970); University of Florida (J.D., with honors, 1973). Trustee Scholar, Rider College. Recipient Milam Case Comment Award, University of Florida. Executive Editor, University of Florida Law Review, 1972-1973. Law Clerk, U.S. District Judge Ben Krentzman, 1973-1975. Author, "Corps of Engineers Dredge and Fill Jurisdiction Under Siege," 26 U. Fla. L. Rev. 19 (1973). Assistant U.S. Attorney, Tampa, Florida 1975-1980. Trial Attorney, U.S. Justice Department Strike Force on Organized Crime, 1980-1984. Chief Assistant State Attorney, Tampa, 1985-1992. Chairman, Hillsborough County Justice Committee, 1988-1992. Chairman, Hillsborough County Justice Information Steering Committee, 1987-1992. Member, Judicial Nominating Commission, 13th Judicial Circuit, 1986-1990. *Member*: Hillsborough County Bar Association (Vice Chairman, Trial Lawyers Section, 1990-1991); The Florida Bar (Member, Grievance Committee, 1985-1990).

**JUDY SCHROPP HOYER,** born Havre de Grace, Maryland, November 6, 1949; admitted to bar, 1976, Florida; 1977, U.S. District Court, Middle District of Florida; 1980 U.S. Supreme Court. *Education*: Mary Washington College; George Mason University (B.A., cum laude, 1973); Stetson University (J.D., 1976). Executive Editor, Law Review, 1975-1976. Who=s Who. Recipient, Florida Bar Achievement Award. Governor, Fifth Circuit, American Bar Association Law Student Division. Author, "Cross Examination & Impeachment," Criminal Trial Practice in Florida, The Florida Bar C.L.E. (2nd Ed. 1991); Labor Law Review Note, The Florida Bar Journal, 1975. Assistant State Attorney, 1976-1977 and 1985-1993. Assistant U.S. Attorney, 1977-1985. Special Counsel to the Florida Legislature on Sexual Harassment Hearings, 1991. *Member:* Hillsborough County Bar Association, Trial Lawyers Section, 1991 to present, Chairman, 1997-1998; Trial By Jury (Chairman, 1991-1995); Hillsborough Association for Women Lawyers; Ferguson-White American Inns of Court

2

(Master, 1987 to present; Counsel to the Inn 1991-1998; President-Elect 1998-1999; President 1999-2000; Master Emeritus 2001).

**JOHN R. NEWCOMER, JR.,** born Clearwater, Florida, June 24, 1947; admitted to bar, 1972, Florida; 1973, U.S. District Court, Middle District of Florida; 1981, U.S. Court of Appeals, Eleventh Circuit; and 1977, U.S. Court of Appeals, Fifth Circuit. *Education*: University of Florida (B.S.B.A., 1969); Florida State University (J.D., with honors, 1972); Legal Advocacy Program, University of South Florida (1974-1976); Florida Academy of Trial Lawyers 1979-1992 (Presidents Club 1992); American Arbitration Association, Panel of Uninsured Motorist Claims (1986-1992); Associate-Yado, Keel & Nelson, P.A. (1972-1978); Partner-Yado, Keel, Nelson, Casper, Bergmann & Newcomer, P.A. (1978-1993); Partner-James, Hoyer & Newcomer, P.A. (1993 to present); *Member*: Hillsborough County Bar Association (Member, Elder Law Section, 1992-1993); The Florida Bar (Member, Grievance Committee, 1997); Arbitration Panel, U.S. District Court, Middle District of Florida (1985 to present); National Academy of Elder Law Lawyers.

**TERRY A. SMILJANICH,** born Tampa, Florida, March 1, 1947; admitted to bar, 1972, Florida and U.S. District Court, Middle District of Florida; 1981, U.S. District Court, Southern District of Florida and U.S. Court of Appeals, 11th Circuit. *Education*: University of Florida (B.A., 1969; J.D., 1972). Phi Beta Kappa; Phi Kappa Phi; Phi Alpha Delta. Executive Editor, University of Florida Law Review, 1971-1972. Law Clerk, Hon. Ben Krentzman, U.S. District Court, Middle District of Florida. 1972-1974. Assistant United States Attorney, 1974-1977. Associate Senate Counsel, Select Committee on Secret Military Assistance to Iran and the Nicaraguan Opposition (Iran/Contra), United States Senate, 1987. *Member*: The Florida Bar. [Capt. U.S. Army Reserve, 1972-1981]. (Board Certified Civil Trial Lawyer, Florida Bar Board of Legal Specialization and Education).

**JOHN A. YANCHUNIS,** born Columbus, Ohio, 1955; admitted to bar, 1980, Texas; 1981, Florida; U.S. District Court, Southern District of Texas; U.S. District Court, Middle District of Florida; U.S. Court of Appeals, Fifth, Seventh, Ninth and Eleventh Circuits; and United States Supreme Court, 2000. *Education:* University of Florida (B.A., 1976); South Texas College of Law (J.D., magna cum laude, 1980). Florida Blue Key, Omicron Delta Kappa, Phi Alpha Delta. Member, Order of the Lytae. Technical Editor and Associate Editor-in-Chief, South Texas Law Journal. Law Clerk to Judge Carl O. Bue, Jr., U.S. District Court, Southern District of Texas, 1980-1982. *Member*: St. Petersburg (Member, Executive Committee, 1996 to 1998; 2003 to present) and Federal Bar Associations; The Florida Bar (Member: Board of Governors of The Florida Bar, 1999 to 2003; member of the Board of Governors of Young Lawyers Division of The Florida Bar, 1988-1992; Public Relations Committee, 1989-1990; Continuing Legal Education Committee, 1991-1992; Standing Committee on Unlicensed Practice of Law, Member, 1990, Vice Chairperson, 1994-1995, Chairperson, 1995-1997, Unlicensed Practice of Law Committee, 6A Circuit, Member, 1985, Chairperson, 1986-1995; Unlicensed Practice of Law Committee, 6B Circuit, Chairperson, 1995; Chairperson, 1995; Professionalism Committee, 1991-1993; Simplified Forms, 1997 to-1998, Vice Chairperson 1998-1999; Ethics

3

Committee, 1997-1999; The Florida Bar Foundation Committee (Member of the Board of Directors, 2003 to present); The Florida Board of Bar Examiners Member, 1997 to 2002); The Florida Bar=s Multijurisdictional Practice of Law Commission, Chair 2002 to present; State Bar of Texas, Pro Bono College, 2004. (Florida Bar Board of Legal Specialization and Education).

**CHRISTA L. COLLINS**, born Mt. Gilead, Ohio, November 6, 1958; admitted to bar, 1983, Florida; 1984 U.S. District Court, Middle District of Florida; 1985, U.S. Court of Appeals, and Eleventh Circuit. *Education*: Malone College (B.A., magna cum laude, 1979); Stetson University (J.D. cum laude, 1983). Phi Alpha Delta. Member, 1981-1982 and Associate Editor, 1982-1983, Stetson Law Review. Co-Author: "The Impact of Attorneys Attitudes Toward Pro Bono Public Efforts on Behalf of the Mentally Disabled," 12 Stetson Law Review 395, 1983. Teaching Assistant, Legal Research and Writing, Stetson University College of Law, 1982-1983. *Member*: St. Petersburg Bar Association; The Florida Bar; Pinellas County Trial Lawyers Association.

**GREGORY W. KEHOE**, born: New York, New York, June 25, 1954; Admitted to the bar, 1980, New York; 1985, Florida, U.S. District Courts: Southern District of Florida, Middle District of Florida, Southern District of New York, and Eastern District of New York; U.S. Courts of Appeal, Second and Eleventh Circuits. *Education*: Boston College (A.B., Summa Cum Laude, 1976); St, John's University School of Law (J.D. 1979; L.L.D. Hon. 2005); Law Review, associated with the law firm of Burns, Jackson, Miller, Summit, and Jacoby, New York, New York, 1979-80, Law Clerk, U.S. District Judge Mark A. Costantino, Eastern District of New York 1980-82. U.S. Department of Justice, Antitrust Division, Honors Program 1982-83. Assistant U.S. Attorney for the Southern District of Florida 1983-1989; Chief of the U.S. Attorney's Office Northern Division (Ft. Lauderdale, West Palm Beach, Ft. Pierce ) for the Southern District of Florida, 1986-1989. First Assistant U.S. Attorney for the Middle District of Florida, 1989-92, 1993-95. Deputy Chief Minority Counsel, U.S. House of Representatives, Foreign Affairs Committee ("October Surprise Task Force") Washington D.C., 1992-93. Trial Attorney for the International Criminal Tribunal for the former Yugoslavia at The Hague, Netherlands 1995-1999. Chief Counsel, Judicial Review Commission on Foreign Asset Control, U.S. Congress, 2000-2001. U.S. Regime Crimes Liaison to the Iraqi Special Tribunal, Baghdad, 2004-2005. *Member*: New York State Bar Association, The Florida Bar, Federal Bar Association, Hillsborough County Bar Association.

**CHRISTOPHER C. CASPER**, born Tampa, Florida, August 27, 1968. *Education:* Awarded Bachelor of Arts degree in English from Georgetown University, 1990. Juris Doctor degree with honors, University of Florida College of Law, December 1994. Interned for Rosemary Barkett, Chief Justice of the Florida Supreme Court, summer 1993. Admitted to the Florida Bar, United States District Court for the Middle District of Florida, and United States Court of Appeals for the Eleventh Circuit, 1995. *Member:* Hillsborough County Bar Association, Trial Lawyers Section Board of Directors 1996-2004, Chairman 2004-2005. Federal Bar Association, Tampa Bay Chapter, Board 1999-2004, Membership Chair 1999-2000, Civil Co-Chair 2000-2004. Association of Trial Lawyers of

4

America 2002-2004. Federalist Society 1998-2004.

**MARK S. FISTOS**, born St. Petersburg, Florida, August 27, 1960; admitted to bar, 1991, Florida. U.S. District Courts: Middle and Northern Districts of Florida. *Education:* Florida State University (B.A., Magna Cum Laude, Phi Beta Kappa, Phi Kappa Phi, French 1985). Inaugural Recipient, Ada Belle Winthrop-King Scholarship (L=Institut catholique, Paris, France, 1985-1986). Florida State University (M.A./J.D., Joint Degree in Law and International Affairs, 1991). Assistant Attorney General, Economic Crimes Litigation Unit, Office of the Florida Attorney General, 1991-2001. Economic Crimes Division, Employee of the Year, 1999. Author, "*Per Se* Violations of the Florida Deceptive and Unfair Trade Practice Act," Florida Bar CLE Manual, June 2001. "State Enforcement of the Florida Deceptive and Unfair Trade Practices Act," Florida Bar CLE Manual, January 2000. Co-Author, "State Enforcement of the Florida Deceptive and Unfair Trade Practices Act," Florida Bar CLE Manual, September 1993, "*Per Se* Violations of the Florida Deceptive and Unfair Trade Practices Act," Florida Bar Journal, 76 Fla. Bar J. 62. *Member*: Consumer Protection Law Committee, The Florida Bar.

**KATHLEEN CLARK KNIGHT, f/k/a KATHLEEN C. FORD**, born Petersburg, Virginia, December 17, 1968; awarded Bachelor of Arts degree from University of Virginia in 1991; Juris Doctorate degree with honors from Stetson University in 1994; admitted to the Florida Bar, United States District Court for the Middle District of Florida, and United States Court of Appeals for the Eleventh Circuit. Interned for Judge Elizabeth Kovachevich, Middle District of Florida, 1994; Certified Legal Intern, Office of the Public Defender, Sixth Judicial Circuit, 1995. Assistant Public Defender for the Thirteenth Judicial Circuit, 1995-1998. Tried complex cases including homicide, capital sexual battery and drug trafficking. *Member*: Hillsborough County Bar Association, Florida Bar Association, Federal Bar Association; Thirteenth Judicial Circuit Grievance Committee, 2000-2003, served as Chairperson in 2002.

**JILL H. BOWMAN**, born St. Petersburg, Florida, January 18, 1970; admitted to Bar 1995, Florida; U.S. District Court, Middle District of Florida, 1996; U.S. District Court, Northern District of Florida, 2001; U.S. District Court, Southern District of Florida, 2001; Federal Circuit Court of Appeals, 1997; Eleventh Circuit Court of Appeals, 1997. *Education*: University of Central Florida (B.A., summa cum laude, 1992); Stetson University College of Law (J.D., magna cum laude, 1995); *Member*: St. Petersburg Bar Association, 1996; appointed by the Florida Supreme Court to serve as a Member of the Florida Bar UPL Committee for the Sixth Judicial Circuit, 1999; appointed as a Member of the Florida Bar Ethics Committee, 2003.

**J. ANDREW MEYER**, born Deland, Florida, January 6, 1970; admitted to bar, 1995, Florida and U.S. District Court for the Middle District of Florida; 1996, New Jersey; 2000, U.S. District Courts for the Northern and Southern District of Florida; 2001, U.S. Court of Appeals, 11th Circuit. *Education:* University of Florida (B.A., *high honors*, 1991; J.D., 1995). Phi Beta Kappa. *Experience:* Associate, Law firm of Earle and Earle.

1995-1998. Office of the Attorney General, State of Florida, Criminal Appeals Bureau. 1998. Second District Court of Appeal, Senior Staff Attorney. 1998. Law Clerk, Hon. Chris W. Altenbernd, Second District Court of Appeal. 1998-2000. Associate and Partner, Carlton Fields, P.A. 2000-2004. *Member:* American Bar Association, The Florida Bar (Chair, UPL Committee for the Sixth Judicial Circuit). *Awards:* Community Law Program's Newcomer Award, 1998; Carlton Fields' William Reece Smith, Jr. Pro Bono Award, 2001.

## ASSOCIATES

**TAMRA J. GIVENS**, born Miami, Florida, July 13, 1978; admitted to bar, 2003, Florida. *Education*: University of Florida (B.S., Psychology, with honors, 2000; J.D., cum laude, 2003). *Member*: U.S. District Court, Middle District of Florida; Eleventh Circuit Court of Appeals; Florida Law Review, 2001-2003. Author, "Constitutional Law: Narrowing the Scope of the Fourth Amendment," 54 Fla. L. Rev. 567 (2002). Intern for Justice Harry Lee Anstead, Florida Supreme Court, 2002.

**AMY K. GUINAN**, born Traverse City, Michigan, August 26, 1972; admitted to bar, 1998, Florida. *Education*: Loyola University at New Orleans (B.A. in Music and Communications, cum laude, 1994); Florida State University (J.D., 1997); member of Phi Alpha Delta Law Fraternity. Legislative research specialist and staff attorney for the Florida House of Representatives, Committee on Health Care Services, 1997-1999; Director of Public Policy and Advocacy for the Florida Development Disabilities Council, Inc., 1999-2001; Legislative Counsel and lobbyist for the Academy of Florida Trial Lawyers, 2001-2002. *Member*: U.S. District Court, Middle District of Florida; Academy of Florida Trial Lawyers, AFTL Women=s Caucus Board of Directors (2002-2003), and The Florida Bar.

**JESSE LEE RAY**, born Pittsburgh, Pennsylvania, December 3, 1975; admitted to the bar, 2004, Florida. *Education*: Montgomery County Community College (1996); University of Maryland, College Park (B.A., Criminal Justice, Magna Cum Laude, 2000); Georgetown Law (J.D. 2004). Co-author "Spoliation of Evidence: An Overview and Practical Suggestions", *The Construction Lawyer*, Vol. 24, Num. 1, p.31 (Winter, 2004); Corporal, U.S. Marine Corps, Reserves (1994-2000). *Member*: The Florida Bar.

**ELAINE SCUDIERI STROMGREN**, born San Juan, Puerto Rico, April 29, 1974; admitted to bar, 2000, Florida. *Education:* University of Florida (B.S., Zoology, with high honors, 1996; J.D., with high honors, 2000). Phi Beta Kappa; Phi Alpha Delta. Recipient Book Award, Criminal Law. *Member*: Prosecution Clinic, Eighth Judicial Circuit, Florida, 2000. Law Clerk, Hon. Maurice V. Guinta, Eighth Judicial Circuit Judge, 1999.

## INVESTIGATORS

**LARRY DOUGHERTY**, born Philadelphia, Pennsylvania, July 31, 1963; *Education:* Princeton University (A.B., 1985). Formerly, Reporter for *St. Petersburg Times*, St. Petersburg, Florida, specializing in courts coverage and investigative reporting; and *The Japan Times* (Tokyo).

**BARBARA J. MADDEN**, born Haverhill, Mass., June 26, 1955. *Education*: University of Florida (B.S. with honors, Journalism & Mass Communications, 1977). *Experience*: Special Agent of the Federal Bureau of Investigation (1983-2005); Supervisor of Health Care Fraud Squad (2000-2003) and CyberCrime Squad (2003-2005); reporter and bureau chief for The Stuart/Port St. Lucie News (1980-83); producer/traffic coordinator, WTVX-TV (1978-80); public relations coordinator, St. Lucie Association for Retarded Citizens (1977-78); reporter, The Daily Commercial (1973-74).

**FRANK C. MARTELLI**, born Philadelphia, Pennsylvania, August 19, 1949. *Education:* Police Academy, St. Leo College, 1973; 25 years in Law Enforcement including Hillsborough County Sheriff=s Office, Tampa, Florida; Detective for 16 years, specializing in White Collar and Computer Crime investigations.

**ALLEN H. McCREIGHT,** born Meridian, Mississippi, November 8, 1939; admitted to bar, 1964, Mississippi; 1964, U.S. District Court, Northern District of Mississippi; 1972 U.S. Supreme Court; member Mississippi State Bar (inactive) and American Bar Association since 1964. *Education*: University of Mississippi (B.B.A., 1961; LLB 1964). Previous employment: Federal Bureau of Investigation, May 1964 to February 1995. Began career as Special Agent and advanced through various supervisory and executive management positions, including Assistant Director, which is one of top 18 executive positions in the FBI. Retired in 1995 after serving six years as Special Agent in Charge of FBI Tampa, which covers all of Central Florida. Attended Federal Executive Institute, Charlottesville, VA; graduate of FBI Senior Executive Program and National Executive Institute (involves select FBI executives and top executives from law enforcement agencies throughout the nation and internationally).

**MICHAEL D. MIHOK**, born Dennison, Ohio, December 5, 1944. U.S. Air Force, 1962-1966. *Education:* Old Dominion University, Norfolk, Virginia (B.A. 1971). Former Special Agent of the Federal Bureau of Investigation (1971-2002). Expertise in White Collar Crime fraud investigations.

**ROBERT NORTH**, born New York, New York, November 12, 1950. *Education*: University of Bridgeport, Bridgeport, Connecticut (B.A. Broadcast Journalism, 1978). *Experience*:

8

Formally a television journalist; WDHO-TV, Toledo, Ohio, 1978; government and political reporter for WKRC-TV, Cincinnati, Ohio, 1979; investigative reporter, WFLA-TV, Tampa, Florida, 1983; assistant news director, WJTV-TV, Jackson, Mississippi.

**JAMES ROSS**, born Beverly, Massachusetts, March 26, 1953. *Education:* Northeastern University, Boston Massachusetts, (B.A. 1976). Certified Fraud Examiner (CFE) credential earned 1999. *Experience:* Seven years in the Economic Crimes Division for Florida Attorney General Bob Butterworth, investigating cases against banks, insurance companies, publishing and funeral homes; eight years with The Tampa Tribune Capitol Bureau investigating government corruption, politics and organized crime. Early career includes investigative reporting assignments in Massachusetts, New Hampshire and Maine and an assistant editor position with a statewide business magazine. Investigative interests also includes integrating computer databases and other technological tools into individual investigations.

**ALFRED W. SCUDIERI**, born New York City, New York, December 29, 1946. *Education:* City University of New York, 1968; Defense Department Language Institute, (Spanish) 1970; Former Special Agent of the Federal Bureau of Investigation (1964-1995); Supervisor of White Collar Crime/Fraud Unit in the Tampa office of the F.B.I. specializing in Bank Fraud, Securities Fraud, Governmental Fraud, Civil Rights and Political Corruption Investigations. Federal Law Enforcement Officer of the Year (1992); ABC-TV "*World News Tonight*" Investigative Unit (1995-1996).

9

10

Class Actions in which James, Hoyer, Newcomer, and Smiljanich, P.A.
Has Been Either Lead or Co-counsel:


*Lifsey v. Ross*, Civil Action No. 97-1832-CIV-T-23C, United States District Court, Middle District of Florida.

*Glenn A. Hawkins and Nedra J. Hawkins, On Behalf of Themselves and Others Similarly Situated vs. **Aid Association for Lutherans***, Civil Action No: 2:00CV1327, United States District Court, Eastern District of Wisconsin.

*Keith Snell and Teresa M. Snell, On Behalf of Themselves and All Others, Similarly Situated, vs **Allianz Life Insurance Company of North America**, **North American Life and Casualty Company** and **Fidelity Union Life Insurance Company**,* Case No. 97-2784-RLE - Class Action, United States District Court, District of Minnesota.

*Suzette Moody, etc., vs. **American General Life & Accident Insurance Company**, et al.,* Case No. 97-1525, In the Court of Common Pleas, Lucas County, Ohio.

*Harry J. Manners, Jr., et al. vs. **American General Life Insurance Company and AGC Life Insurance Company**,* Case No. 3-98-0266, United States District Court, Middle District of Tennessee, Nashville Division.

*Dale Bachman, Individually and On Behalf of a Class of Persons Similarly Situated, vs. **Equitable Life Assurance Society of the United States**,* Civil Action No. 96-1225-CIV-T-24B, United States District Court, Middle District of Florida, Tampa Division.

*Brenda G. Elkins and Jerry Bedenbaugh, Individually and On Behalf of a Class of Persons Similarly Situated, vs. **Equitable Life Insurance Company of Iowa**, **Equitable of Iowa Companies**, and **Equitable American Insurance Company**,* Civil Action No. 96-296-CIV-T-17B, United States District Court, Middle District of Florida, Tampa Division.

*Ruby M. Dunn, Phillip A. Sollami, Jr., Paula D. Wise, Eric D. Hagen, and Edward M. Abroms, Individually and on Behalf of All Others Similarly Situated, vs. **The Franklin Life Insurance Company**,* Case No. 97-L-250, State of Illinois, In the Circuit Court of the Third Judicial Circuit, Madison County.

*Dale L. Baker, Sr. and Patricia A. Baker, Sheila D. Magofna, Howard G. Humberger, Patick W. Berteau and April L. Berteau, James A. Volkaman and Rebecca J. Volkkman, on behalf of Themselves and All Others Similarly Situated,* vs. **The *Franklin Life Insurance Company***, Case No: 98-119-CIV-T-26B, United States District Court, Middle District of Florida, Tampa Division.

*In re: **General American Life Insurance Company*** *Sales Practices Litigation,* MDL Docket No. 4:97MDL 1179 CDP, United States District Court, Eastern District of Missouri.

*In re **Great Southern Life Insurance Company*** *Sales Practices Litigation*, Ginsberg Action: 3:98-CV-1249-X, McGraw Action: 3:98-CV-1617-X, Mann Action: 3:98-CV-1618-X, Massey Action: 3:98-CV-1619-X, In the United States District Court For the Northern District of Texas, Dallas Division.

*Lesa Benacquisto vs. **IDS Life Insurance Company***, File Number DC CT 96-018477, State of Minnesota, County of Hennepin, District Court, Fourth Judicial District.

*George W. Snyder and Gail L. Wolcott v. **Jackson National Life Insurance Company***, *and Robert Goldstein,* Case No. 00-1008, Division H, In the Circuit Court in and for Hillsborough County, Florida, Civil Division.

*Richard Duhaime, James W. Yoder, Donna M. Yoder, Theodore A. Peck, John Sullivan and Clarissa Sullivan, On Behalf of Themselves and All Others Similarly Situated, vs. **John Hancock Mutual Life Insurance Company***, *John Hancock Variable Life Insurance Company, and John Hancock Distributors, Inc.,* Case No: 96-10706-RGS, United States District Court, District of Massachusetts.

*Robert Dean Ulmer, Michael B. Lunsford, Donald L. Yingling, vs. **Life Insurance Company of North America** (LINA), **Connecticut General Corporation** (CGC) and **CIGNA Corporation** (CIGNA),* Case No. 8:00-CIV-665-T-24(E), United States District Court, Middle District of Florida, Tampa Division.

*Peggy Greenberg and Pamela Rossmann, Individually and on Behalf of All Others Similarly Situated vs. **The Life Insurance Company of Virginia***, Case No. C-1-97-416, United States District Court, Southern District of Ohio, Western Division.

*Irwin Applebaum as Trustee for the Irwin Applebaum Revocable Trust, Selma Sadie Applebaum, Maryann Casey, Barbara Garing, Raymond Garing, Bettye J. O'Neal, and Harley Stuhr, On Behalf of Themselves and All Others Similarly Situated, vs. **LifeUSA Insurance Company** and **Allianz Life Insurance Company of North America***, Civ. No. 8:00-CV-1045-T-17E, Class Action, United States District Court, Middle District of Florida, Tampa Division.

*Richard H. Blanke vs. **Lincoln National Corporation***, *Security Connecticut Life Insurance Company, Lincoln National Life Insurance Company and Wayne W. Wolfe,* Civil Jury Case No: 0512048, 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.

11

*In re: Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litigation*, Case No: 99-MD-1309 (PAM/JGL) United States District Court, District of Minnesota.

*Horton et al. v. **Metropolitan Life Insurance Company**,* Case No. 93-1849-CIV-T-23A , in the United States District Court for the Middle District of Florida.

*In Re **Metropolitan Life Insurance Company** Sales Practices Litigation,* C.A. No: 96-0795, C.A.96-0038, C.A. 95-1426, C.A. 96-0436, C.A.96-0051, In the United States District Court, For the Western District of Pennsylvania.

*Paul A. Goshen, On Behalf of Himself and All Others Similarly Situated, vs. **The Mutual Life Insurance Company of New York and MONY Life Insurance Company of America**,* Index No. 95-600466, Supreme Court of the State of New York, County of New York.

*In re **New England Mutual Life Insurance** Company Sales Practices Litigation*, D. MASS. C.A. NO. 1:96-11534-REK, United States District Court For the District of Massachusetts.

*Annie Hirsh, Issac L. Hayes, and Sammie L. Epps, on Behalf of Themselves and All Others Similarly Situated, vs. **Physicians Mutual Insurance Company**, and **Physicians Life Insurance Company**,* Case No: 2:00-CV-39PG, In the United States District Court, Southern District of Mississippi, Hattiesburg Division.

*Jerry D. Grove, Leo Willick and Sidney Gilbert, on Behalf of Themselves and All Others Similarly Situated, vs. **Principal Mutual Life Insurance Company**,* Case No: 4-97-CV-90224, Class Action, In the United States District Court, For the Southern District of Iowa, Central Division.

*Eloise Bomber, On Behalf of Herself and All Others Similarly Situated vs. **Reliastar Life Insurance** Company,* Case No. 8:01-CV-907-T-27MSS, United States District Court, Middle District of Florida, Tampa Division.

*Randy W. Lee, Sandra F. Lee, Elba Kolster and Meyer Silverstein on Behalf of Themselves and All Others Similarly Situated, vs. **USLIFE Corporation**, the **Old Line Life Insurance Company of America, All American Life Insurance Company** and **The United States Life Insurance Company in the City of New York**,* Case No: 1:97CV-55-M, United States District Court, Western District of Kentucky.

*James Stock, et al. vs. **United Liberty Life Ins. Co.**,* Case No. CV00-06-117, In The Common Pleas Court, Butler County, Ohio.

*Thomas E. Rector, Fred Caroque and Antoinette M. Caroque On Behalf of Themselves and All Others Similarly Situated, vs.* **The Western and Southern Life Insurance Company**, *and* **Western-Southern Life Assurance Company**, Case No. 98-667-CIV-T-26B, Class Action, United States District Court Middle District of Florida, Tampa Division.

*Joseph F. Kreidler, et al., vs.* **Western-Southern Life Assurance Co.**, Case No. 95-CV-157, Court of Common Pleas, Erie County, Ohio.

*Scott Swope, et al. v.* **The Thompson Corporation and West Group**, Case No. 19-C5-02-8564; First Judicial District Court, Dakota County, Minnesota.

*Alberta E. Richardson, et al. vs.* **Carson Products Company** and **Johnson Products Co., Inc.**, Case No. 00-01713, Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida.

*Leola McNeil, et al. vs.* **American General Life & Accident Insurance Company**, *et al.*, Case No. 3-99-1157, United States District Court, Middle District of Tennessee.

*James Williams, et al. vs.* **United Insurance Company of America**, *et al.*, Case No. 01-920, Circuit Court of Jefferson County, Alabama, Bessemer Division.

*Glenda Carnegie, et al. vs.* **Mutual Savings Life Insurance Company**, Case No. CV-99-S-3292-NE, United States District Court, Northern District of Alabama, Northeastern Division.

*In re: Industrial Life Insurance Litigation, MDL 1371 (Rosebud Montgomery, et al. vs.* **Life Insurance Company of Georgia Industrial Life Insurance Litigation**, Case No. 1:99-CV-252 MMP, United States District Court, Northern District of Florida, Gainesville Division).

***In re: Riscorp Securities Litigation***, Case No. 96-2374-CIV-T-23A, Middle District of Florida.

*Andrew Taworski v.* **The American Franklin Life Insurance Company, American General Equity Services Corporation, f/k/a Franklin Financial Services Corporation,** Case No. 2002L0195, Seventh Judicial Circuit, Sangamon County, State of Illinois.

*Manuel Fernandez v.* **American Express Company and American Express Publishing Corporation**, Case No. 01-0026381, Thirteenth Judicial Circuit, Hillsborough County, State of Florida.

*Sharon Hicks v.* **Oxmoor House, Inc.**, Case No. CV034-752, Circuit Court of Jefferson County, Alabama.

***In re: Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation***, (**Kathi R. Levitov v.**

**Sulzer Orthopedics, Inc. and Sulzer Medica, Ltd.**) Case No. 1:01-CV-9000, MDL Docket No. 1404, United States District Court, Northern District of Ohio, Eastern Division.

*In re: Baycol Products Litigation*, Case No. 01-2386, MDL No. 1431, United States District Court, District of Minnesota.

*Melissa Dukes and Thomas J. Dolan v.* **Hewlett-Packard Company**, Case No. CV-2002-270, Circuit Court of Phillips County, Arkansas.

*In re Allstate Insurance Company Under Writing and Rating Practices Litigation*, Case Number MDL Docket No. 3:02-md-1457, United States District Court for the Middle District of Tennessee, Nashville Division.

*Marissa Craft, Brigitte Thompson v.* **Sprint Corporation**, Case No. 4:02-cv-183-RH, United States District Court, Northern District of Florida, Tallahassee Division.

*Scott P. Swope v.* **The Thomson Corporation and West Group**, Case No. 19-C5-02-8564, State of Minnesota District Court, County of Dakota, First Judicial District.

# EXHIBIT D

# MILLER FAUCHER and CAFFERTY LLP

**www.millerfaucher.com**

Founded in 1992, Miller Faucher combines the talents of attorneys with a wide range of experience in complex civil litigation. The firm has offices in Chicago, Illinois, Philadelphia, Pennsylvania and Ann Arbor, Michigan. Miller Faucher's primary expertise is in the area of federal and state securities, commodities, employee benefits and antitrust litigation. The skill and experience of attorneys now practicing with Miller Faucher has been recognized on repeated occasions by courts which have appointed these attorneys to major positions in complex multi-district or consolidated litigation. As shown below, attorneys from Miller Faucher have taken a leading role in numerous important actions on behalf of defrauded investors, employees, consumers, companies, and others. Miller Faucher attorneys have been responsible for a number of outstanding recoveries and important decisions.[1]

## I. Antitrust

*Federal and state antitrust laws protect the public interest by ensuring market competition. Business practices which restrain trade or destroy competition—such as competitors fixing prices—are generally prohibited. In order to supplement governmental enforcement of the antitrust laws, federal and state law provide for private causes of action to persons injured in their business or property by reason of antitrust violations. Some of the significant antitrust cases in which Miller Faucher attorneys have been prominently involved include:*

❑ ***Nichols v. SmithKline Beecham Corp.***, No. 00-CV-442 (E.D. Pa.). Plaintiffs allege that SmithKline, which makes the brand-name antidepressant Paxil, misled the United States Patent Office into issuing patents to protect Paxil from competition from generic substitutes. On April 22, 2005, Judge John R. Padova granted final approval to a $65 million class action settlement for the benefit of consumers and third-party payors who paid for Paxil. *Nichols v. SmithKline Beecham Corp.*, 2005-1 Trade Cas. (CCH) ¶74,762 (E.D. Pa. April 22, 2005). *See also Nichols v. SmithKline Beecham Corp.*, 2003 WL 302352 2003-1 Trade Cas. (CCH) **¶** 73,974 (E.D. Pa. Jan. 29, 2003) (denying defendant=s motion to strike expert testimony). *See* www.paxilclaims.com.

❑ ***In re Relafen Antitrust Litig.*** 01-12239 (D. Mass.). On September 28, 2005, Judge William G. Young of the United States District Court for the District of Massachusetts granted final approval to a $75 million class action settlement for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen. In certifying an exemplar class of end-payors, the court singled out our Firm as experienced and vigorous advocates. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 273 (D. Mass. 2004). In the opinion granting final approval to the settlement, the court commented that "Class counsel here exceeded my expectations in these respects [*i.e.*, experienced, competent, and vigorous] in every way." *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85 (D. Mass. 2005); *see also id.* at 80 ("The Court has consistently noted the exceptional efforts of class counsel."). The litigation has produced many

---

[1]. The cases addressed herein have been completely or partially resolved. Miller Faucher attorneys are currently involved as counsel in a number of pending class actions.

significant decisions including: 286 F Supp. 2d 56 (D. Mass. 2003) (denying motion to dismiss); 346 F. Supp. 2d 349 (D. Mass. 2004) (denying defendant=s motion for summary judgment).

See www.relafensettlement.com.

❑ *In re Warfarin Sodium Antitrust Litig.*, MDL 98-1232 (D. Del.). Multidistrict class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company. Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium. On August 30, 2002, the Court granted final approval to a $44.5 million settlement. *See In re Warfarin Sodium Antitrust Litig*., 212 F.R.D. 231 (D. Del. 2002). On December 8, 2004, the United States Court of Appeals for the Third Circuit upheld approval of the settlement. 391 F.3d 516 (3d Cir. 2004).

See www.coumadinsettlement.com.

❑ *In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich.). Multidistrict class action on behalf of purchasers of Cardizem CD, a brand-name heart medication manufactured and marketed by Hoechst Marion Roussel, Inc. (now merged into Aventis Pharmaceuticals, Inc.) Plaintiffs alleged that an agreement between HMR and generic manufacturer Andrx Corp. unlawfully stalled generic competition. On October 1, 2003, Judge Nancy Edmunds granted final approval to an $80 million settlement for the benefit of third-party payors and consumers. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), *app. dismissed*, 391 F.3d 812 (6th Cir. 2004). The litigation resulted in several significant decisions, including: 105 F. Supp. 618 (E.D. Mich. 2000) (denying motions to dismiss); 105 F. Supp. 2d 682 (E.D. Mich. 2000) (granting plaintiffs= motions for partial summary judgment and holding agreement *per*

se illegal under federal and state antitrust law); 200 F.R.D. 326 (E.D. Mich. 2001) (certifying exemplar end-payor class); 332 F.3d 896 (6th Cir. 2003) (upholding denial of motion to dismiss and grant of partial summary judgment), *cert. denied*, 125 S.Ct. 307 (2004).

See www.cardizemsettlement.com.

❑ *House v. GlaxoSmithKline PLC*, No. 2:02cv442 (E.D. Va.). Plaintiffs allege that GSK, which makes Augmentin, misled the United States Patent Office into issuing patents to protect Augmentin from competition from generic substitutes. On January 10, 2005, the court entered and order approving a $29 million settlement for the benefit of consumers and third-party payors.

See http://www.augmentinlitigation.com.

❑ *In re Synthroid Marketing Litig.*, MDL No. 1182 (N.D. Ill). This multidistrict action arises out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. On August 4, 2000, the court granted final approval of a settlement in the amount of $87.4 million plus interest. *See* 188 F.R.D. 295 (N.D. Ill. 1999). On August 31, 2001, approval of the settlement was upheld on appeal. *See* 264 F.3d 712 (7th Cir. 2001).

❑ *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL 1290 (D.D.C.). This multidistict class action arose out of an alleged scheme to corner the market on the active pharmaceutical ingredients necessary to manufacture generic clorazepate and lorazepam tablets. After cornering the market on the supply, defendants raised prices for generic clorazepate and lorazepam tablets by staggering amounts (*i.e.*, 1,900% to over 6,500%) despite no significant increase in costs. On February 1, 2002, Judge Thomas F. Hogan approved a class action settlements on behalf of consumers, state attorneys general and third party payors in the

2

aggregate amount of $135 million. *See* 205 F.R.D. 369 (D.D.C. 2002).

❒ *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394 (N.D. Ill.). Antitrust class action arising out of alleged stabilization of urologist fees in the Chicago metropolitan area. The parties have entered a settlement agreement and are in the process of seeking court approval. In granting class certification, Judge George Lindberg stated that "Miller Faucher is experienced in antitrust class action litigation and defendants do not dispute that they are competent, qualified, experienced and able to vigorously conduct the litigation." *Sebo v. Rubenstien*, 188 F.R.D. 310, 317 (N.D. Ill. 1999). On June 12, 2000, the court approved a $1.4 million settlement. *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086 (N.D. Ill. June 12, 2000)

❒ **Brand-Name Prescription Drug Indirect Purchaser Actions**. Coordinated antitrust actions against the major pharmaceutical manufacturers in ten states and the District of Columbia. The actions were brought under state law on behalf of indirect purchaser consumers who obtained brand name prescription drugs from retail pharmacies. In 1998, the parties agreed to a multistate settlement in the amount of $64.3 million, which was allocated among the actions. In approving state-specific settlements, the courts were highly complementary of the performance of counsel. In approving the Wisconsin Settlement, for example, Judge Moria G. Krueger commented that "this Court, in particular, has been helped along every step of the way by some outstanding lawyering and I believe that applies to both sides. ... You can hardly say that there's been anything but five star attorneys involved in this case". *Scholfield v. Abbott Laboratories*, No. 96 CV 0460, Transcript of Hearing at 31 & 33 (Cir. Ct., Dane Co., Wisc., Oct. 5, 1998). *See also McLaughlin v. Abbott Laboratories*, No. CV

95-0628, Transcript of Proceedings at 28 (Super. Ct., Yavapai County, Oct. 28, 1998) ("I think the quality of counsel is excellent."). Reported decisions include: *Goda v Abbott Labs*, 1997-1 Trade Cas. (CCH) &71,730 (Superior Court D.C., Feb 3, 1997) (granting class certification); *In re Brand Name Prescription Drugs Antitrust Litig. (Holdren, Yasbin, Meyers),* 1998-1 Trade Cas. (CCH) &72,140 (N.D. Ill., Feb. 26, 1998) (remanding three actions to state courts).

❒ **In Re Cellular Phone Cases**, Coordination Proceeding No. 4000 (Superior Court, San Francisco County, Cal.) Class action under California's Cartwright Act, which alleged price-fixing of cellular telephone service in the San Francisco area market. On February 20, 1998, the court granted final approval to a settlement that provides $35 million in in-kind benefits to the Class and a release of debt in the amount of $35 million.

❒ **Garabedian v. LASMSA Limited Partnership**, No. 721144 (Superior Court, Orange County, Cal.). Class action under California's Cartwright Act which alleged price-fixing of cellular telephone service in the Los Angeles area market. By order of January 27, 1998, the court granted final approval to two settlements that provide $165 million in in-kind benefits.

❒ **Lobatz v. AirTouch Cellular**, 94-1311 BTM (AJB) (S.D. Cal.) Class action alleging price-fixing of cellular telephone service in San Diego County, California. On June 11, 1997, the court approved a partial settlement in the amount of $4 million. On October 28, 1998, the Court approved another settlement that entailed $4 million worth of in-kind benefits. In an order entered May 13, 1999, Judge Moskowitz stated that "[t]hrough the course of this complex and four-year long litigation, Class Counsel [including Miller Faucher] demonstrated in their legal briefs and arguments before this Court their

considerable skill and experience in litigating anti-trust class actions..."

❑ **In re Airline Ticket Commission Antitrust Litig.**, MDL No. 1058 (D. Minn.) Antitrust class action on behalf of travel agents against the major airlines for allegedly fixing the amount of commissions payable on ticket sales. The action settled for $87 million. *See* 953 F. Supp. 280 (D. Minn. 1997).

## II. Employee Benefits

*In 1974, Congress adopted the Employee Retirement Income Security Act (ERISA), which is designed to protect the interests of participants and beneficiaries in employer-sponsored pension and welfare benefits plans. Miller Faucher attorneys have been involved in numerous ERISA cases, including:*

❑ **Polk v. Hecht**, No. 92-1340 (D.N.J.). Class action brought under the Employee Retirement Income Act of 1974 on behalf of all participants or beneficiaries under the Mutual Benefit Life Savings and Investment Plan for Employees on July 16, 1991, when Mutual Benefit Life Insurance Corporation was placed in rehabilitation. On April 12, 1995, Judge Harold A. Ackerman approved a $4.55 million settlement, noting that "[c]ounsel did a darn good job, and the record should be clear on that point, that that is the opinion, for what it's worth, of this Court."

❑ **In Re Unisys Retiree Medical Benefits ERISA Litig.,** MDL No. 969 (E.D. Pa). Class action on behalf of over 25,000 retirees of Unisys Corporation concerning entitlement to retiree medical benefits. After trial, in November 1994, Chief Judge Cahn approved a partial settlement in the amount of $72.9 million. *See* 57 F.3d 1255 (3d Cir. 1995).

## III. Securities and Commodities

*In response to the stock market crash in 1929, Congress passed the Securities Act of 1933 and the Securities Exchange Act of 1934 to protect investors from deceptive and manipulative practices and to ensure that the United States' securities markets operate freely and efficiently. These statutes, as well as other state and federal legislation, provide private causes of action to defrauded investors. Similarly, the Commodities Exchange Act of 1974 provides causes of action to investors injured by fraud or unlawful manipulation in commodities markets. Some of the significant securities and commodities cases in which Miller Faucher attorneys have been prominently involved include:*

❑ **Danis v. USN Communications, Inc.,** No. 98 C 7482 (N.D. Ill.). Securities fraud class action arising out of the collapse and eventual bankruptcy of USN Communications, Inc. On May 7, 2001, the court approved a $44.7 million settlement with certain control persons and underwriters. Reported decisions: 73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000).

❑ **In re Bank One Shareholders Class Actions**, No. 00 C 880 (N.D. Ill.). Securities fraud class action against Bank One and certain officers. On June 1, 2001, Judge Milton I. Shadur granted final approval to a $45 million settlement. In his March 16, 2001 testimony about the case before the Task Force on Selection of Class Counsel, Judge Shadur characterized Miller Faucher as a "high quality Chicago law firm."

❑ **In re Sumitomo Copper Litig.,** 96 Civ. 4584(MP) (S.D.N.Y.). Class action arising out of manipulation of the world copper market. On October 7, 1999, the court approved settlements aggregating $134,600,000. *See* 189 F.R.D. 274 (S.D.N.Y. 1999). In awarding attorneys=fees, Judge Milton Pollack noted that it was "the

4

largest class action recovery in the 75 plus year history of the Commodity Exchange Act". 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999). Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998).

❏ **In re Exide Corporation Sec. Litig.,** No. 98-CV-60061 (E.D. Mich.). Securities fraud class action arising out of sales and financial practices of leading battery manufacturer. On September 2, 1999, Judge George Caram Steeh approved a settlement in the amount of $10,250,00.

❏ **In re Caremark International Inc. Sec. Litig.,** No. 94 C 4751 (N.D. Ill.). Securities fraud class action arising out of Caremark's allegedly improper financial arrangements with physicians. On December 15, 1997, the court approved a $25 million settlement.

❏ **In re Nuveen Fund Litig.,** No. 94 C 360 (N.D. Ill.). Class action and derivative suit under the Investment Company Act arising out of coercive tender offerings in two closed-end mutual funds. On June 3, 1997, the court approved a $24 million settlement. Magistrate Judge Edward A. Bobrick commented that "there=s no question that the attorneys for the plaintiffs and the attorneys for the defendants represent the best this city [Chicago] has to offer ... this case had the best lawyers I=ve seen in a long time, and it is without question that I am committed to a view that their integrity is beyond reproach." (6/3/97 Tr. at 5-6.)

❏ **In re Archer-Daniels-Midland, Inc. Sec. Litig.,** No. 95-2287 (C.D. Ill.). Securities fraud class action arising out of the Archer-Daniels-Midland price-fixing scandal. On April 4, 1997, the court approved a $30 million settlement.

❏ **In re Soybean Futures Litig.,** No. 89 C 7009 (N.D. Ill.). A commodities manipulation class action against Ferruzzi Finanziaria, S.p.A.

and related companies for unlawfully manipulating the soybean futures market in 1989. In December, 1996, the court approved a settlement in the amount of $21,500,000. *See* 892 F. Supp. 1025 (N.D. Ill. 1995).

❏ **In re Prudential Securities Incorporated Limited Partnerships Litig.,** MDL 1005 (S.D.N.Y.). A massive multidistrict class action arising out of Prudential Securities Incorporated's marketing and sale of speculative limited partnership interests. On November 20, 1995, the court approved a partial settlement, which established a $110 million settlement fund. *See* 912 F. Supp. 97 (S.D.N.Y. 1996). On August 1, 1997, the court approved a partial settlement with another defendant in the amount of $22.5 million.

❏ **Feldman v. Motorola, Inc.,** No. 90 C 5887 (N.D. Ill.) Securities fraud class action against Motorola, Inc. and its high ranking officers and directors. In June 1995, the court approved a $15,000,000 settlement. *See* [1993 Transfer Binder], Fed. Sec. L. Rep. (CCH) &97,806 (N.D. Ill. Oct. 14, 1993).

❏ **In re Salton/Maxim Sec. Litig.,** No. 91 C 7693 (N.D. Ill.). Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock. On September 23, 1994, Judge James S. Holderman approved a $2.4 million settlement, commenting that "it was a pleasure to preside over [the case] because of the skill and the quality of the lawyering on everyone's part in connection with the case."

❏ **Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc.,** No. 91-276-CIV-5-D (E.D.N.C.). A $3.5 million settlement was approved on May 6, 1994 in this securities fraud class action arising out of a broker's marketing of a speculative Australian security. The Court stated that "the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the

proposed settlement." 855 F. Supp. 825, 831 (E.D.N.C. 1994).

❏ **In re Baldwin-United Corporation Sec. Litig.**, MDL-581, (S.D.N.Y.). The litigation involved the sale by the brokerage industry of approximately $3.5 billion of Single Premium Deferred Annuities. A $180 million settlement was obtained and is one of the largest securities class action settlements on record. In awarding interim counsel fees, Judge Charles Brieant commented "...that plaintiffs' attorneys [including Marvin A. Miller and J. Dennis Faucher as co-lead counsel] had rendered extremely valuable services with diligence, energy and imagination, and are entitled to just compensation."

❏ **In re VMS Sec. Litig.**, 89 C 9448 (N.D. Ill.). Securities fraud class action and derivative suit relative to publicly traded real estate investments. The court certified a plaintiff class and subclasses of approximately 100,000 members, 136 F.R.D. 466 (N.D. Ill. 1991). On November 19, 1991, the court approved a class and derivative settlement worth $98 million.

❏ **In re International Trading Group, Ltd. Customer Account Litig.**, No. 89-5545 RSWL (GHKx) (C.D. Cal.) Class action alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The case settled with individual defendants and proceeded to a judgment against the corporate entity. In that phase, the Court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class. Approximately $7 million was recovered on the judgment.

❏ **In re Telesphere Sec. Litig.**, 89 C 1875 (N.D. Ill.) Securities fraud class action settled for $1.5 million. In a November 28, 1990 opinion, Judge Milton I. Shadur referred to Marvin A. Miller as "...an experienced securities law class action litigator and who also has 20 years practice under his belt. This Court has seen the quality of that lawyer's work in other litigation, and it is first-rate." 753 F.Supp. 716, 719 (N.D. Ill. 1990). Judge Shadur also noted that Patrick E. Cafferty's credentials are "impeccable." *Id*.

❏ **Hoxworth v. Blinder Robinson & Co.,** 88-0285 (E.D. Pa.). Securities fraud and RICO class action resulting from alleged manipulative practices and boiler-room operations in the sale of "penny stocks." *See* 903 F.2d 186 (3rd Cir. 1990). Judgment in excess of $70 million was obtained in February, 1992. The judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992). *See also Hoxworth v. Blinder*, 74 F.3d 205 (10th Cir. 1996).

❏ **In re Public Service Company of New Mexico Class and Derivative Litig.**, Master File No. 91-0536-M (S.D. Cal.). Consolidated class and derivative action involving allegations of waste and mismanagement at the Public Service Company of New Mexico. In May, 1992, the court approved a settlement of $33 million. *See* [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) **&** 96,988 (S.D. Cal. 1992).

❏ **In re First Commodity Corporation of Boston Customer Account Litig.**, MDL-713 (D. Mass.). Class actions alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The action settled for $5.3 million. *See* 119 F.R.D. 301 (D. Mass. 1987).

❏ **O'Brien v. National Property Analysts, Inc.**, No. 88 CIV 4153 (PKL) (S.D.N.Y.) Securities fraud class action arising out of the marketing of real estate limited partnership interests. This case was partially settled for $5,000,000 and the invalidation of wrap around mortgages worth as much as $250 million.

6

❐ **Spring/Rothschild v. Continental Illinois National Bank & Trust Company,** 84 C 4648 and 84 C 8596 (consolidated) (N.D. Ill.) Shareholder class action for violations of the Securities Exchange Act. The court approved a settlement in the amount of $17.5 million for the class.

❐ **Smith v. Groover**, 77 C 2297 (N.D.Ill.). A commodities fraud and antitrust class action against the Chicago Board of Trade and several floor traders involving the manipulation of the soybean market through bucketing. The case established that, in the Northern District of Illinois, a plaintiff has an implied private right of action under the Commodity Exchange Act and that an Exchange can be sued for negligence in failing to supervise its members. The case was affirmed, *sub nom*, by the United States Supreme Court in *Merrill Lynch Pierce Fenner & Smith v. Curran*, 451 U. S. 906 (1982).

## IV. Shareholder Derivative Suits

*When the management of a corporation acts to the detriment of the interests of the company and its shareholders, an individual shareholder, upon satisfying stringent procedural requirements, can assert the right of the corporation in a derivative action. Miller Faucher attorneys have been involved in several important derivative actions including:*

❐ **Benfield v. Steindler**, No. C-1-92-729 (S.D. Ohio). Shareholder derivative suit on behalf of General Electric Corporation shareholders arising out of the sale of military aircraft engines to the government of Israel in violation of U.S. law. On December 10, 1993, the Court approved a settlement in the amount of $19.5 million. In a January 13, 1994 Report to the Court Concerning Attorney Fees, the Special Master characterized Miller Faucher as a "leading litigation" firm, and stated that the "representation given plaintiff was first rate".

❐ **In re Structural Dynamics Research Corporation Derivative Litig.**, No. C-1-94-650 (S.D. Ohio). Shareholder derivative action arising out of Structural Dynamics's inaccurate reporting of its financial performance. In approving a $5 million settlement on July 19, 1996, Judge Herman J. Weber stated that "in my mind the highest professional service a lawyer can give to his or her client is to terminate the litigation as early as possible and at the most economical cost to your clients. The Court finds that the lawyers in this case have done just that..."

## V. Miscellaneous

❐ **PrimeCo Personal Communications, L.P. v. Illinois Commerce Commission**, No. 98 CH 5500 (Circuit Court of Cook County, Ill.). This class action sought recovery of an unconstitutional infrastructure maintenance fee imposed by municipalities on telephone and other telecommunications customers in the State of Illinois. On August 1, 2002, the court granted final approval to a settlement of wireless telephone and pager customers' claims against the City of Chicago worth over $31 million. The case continues as to landline telephone customers' claims against the City of Chicago, and both wireless and landline claims against other municipalities.

❐ **Gersenson v. Pennsylvania Life and Health Insurance Guaranty Assoc.**, No. 3468 (Pa. Common Pleas). Class action against state insurance guaranty association brought on behalf of Pennsylvania resident insureds of Executive Life Insurance Co. for violating due process, and failing to pay required benefits and other monies. Plaintiffs motion for summary judgment was granted and the court awarded plaintiff and the Class more than $18 million. The judgment was upheld on appeal. ❐ **Supnick v. Amazon.Com, Inc., and Alexa Internet**, No. 00-CV-221 (W.D. Wash.). Class action against internet browsing service provider

7

and its parent for violating user privacy by secretly collecting user personally identifying information without informed consent. On July 27, 2001, the court granted final approval to a settlement that included programmatic and monetary relief. The FTC endorsed the settlement and elected to not prosecute defendants based, in part, on the relief achieved in the settlement with plaintiffs.

❒ *Curley v. Cumberland Farms Dairy, Inc.*, No. 86-5057 (D.N.J.). Class action arising out of convenience store chain's treatment of employees to prevent losses. In September 1993 the court approved a settlement in the amount of $5.5 million. In a November 12, 1993 opinion awarding attorneys fees, Judge Stanley S. Brotman noted that "petitioners [including Mr. Faucher and Ms. Meriwether] demonstrated in this case great skill and determination in representing their clients through the many stages of this lengthy and complex litigation."

❒ *In re Chubb Corporation Drought Insurance Litig.*, MDL-782 (S.D. Ohio). A breach of contract action arising out of the termination of an agricultural drought insurance program in the midst of the drought of 1988. The action settled for more than $70 million.

## VI. Defendants

In addition to the above, Miller Faucher attorneys have also represented defendants in complex class actions and derivative suits, including *In re Del-Val Financial Corp. Sec. Litig.*, MDL-872 (S.D.N.Y.); *In re Kenbee Limited Partnership Litig.*, No. 91-2174 (D.N.J.); *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91 C 2780 (N.D. Ill.); *Levy v. Stern*, No. 11955 (New Castle County, Delaware). The court's decision in *In re Del-Val Financial Corp. Sec. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994) resulted in a significant extension of the law concerning partial settlements of securities fraud class actions.

## VII. Individual Biographies

## PARTNERS

❒ *MARVIN A. MILLER* (Chicago) is a 1970 graduate of Illinois Institute of Technology-Chicago-Kent College of Law, where he was a member of the Editorial Board of the *Chicago-Kent Law Review*. Mr. Miller received his undergraduate degree from Hofstra University in Hempstead, New York in 1967. He is admitted to the state bars of Illinois and New York, the United States Court of Appeals for the Third, Fourth Seventh, and Eleventh Circuits, the United States District Courts for the Northern District of Illinois (including the Federal Trial Bar), Southern District of New York, Eastern District of Michigan, District of Arizona and Northern District of California.

❒ *J. DENNIS FAUCHER* (Philadelphia) was a partner in the Philadelphia law firm of Saul, Ewing, Remick & Saul ("Saul Ewing") from 1974 through 1991. Mr. Faucher received his law degree from the University of Idaho Law School, *summa cum laude*, in 1962. He received his undergraduate degree from the University of Idaho in 1959. His practice includes civil trial and appellate practice before federal and state courts, banking litigation, securities litigation, and all aspects of business bankruptcy law. He is a member of the Philadelphia Trial Lawyers Association (Commercial Litigation Committee) and American Bar Association (Commercial Litigation Committee of Litigation Section). He also is a former Assistant Professor of Law, University of Idaho, and a former attorney for the Trustees of the Penn. Central Railroad Reorganization. Mr. Faucher is licensed to practice in all state and appellate and trial courts of Pennsylvania and Idaho, and is also a member of bars of the Supreme Court of the United States, Courts of Appeals for the Second, Third, and Ninth Circuits, Tax Court of the U.S., and the United States District Court for the Eastern

8

District of Pennsylvania and the District of Idaho.

❑ **PATRICK E. CAFFERTY** (Ann Arbor) graduated from the University of Michigan, with distinction, in 1980 and obtained his J.D., *cum laude*, from Michigan State University B College of Law in 1983. In law school, he received the American Jurisprudence Award for study of commercial transactions law. From 1983 to 1985, he served as a prehearing attorney at the Michigan Court of Appeals and as a Clerk to Judge Glenn S. Allen, Jr. of that Court. Mr. Cafferty is admitted to the state bars of Michigan and Illinois, the Supreme Court of the United States, the United States Courts of Appeals for the Third, Fourth, Sixth and Seventh Circuits, and the United States District Courts for the Eastern District of Michigan, Western District of Michigan, District of Arizona and Northern District of Illinois. Mr. Cafferty is a member of the Amicus Committee of the National Association of Securities and Commercial Law Attorneys and he has authored briefs filed with the Supreme Court in a number of cases, including *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995).

❑ **ELLEN MERIWETHER** (Philadelphia) received her law degree from George Washington University, *magna cum laude*, in 1985. She was a member of the *George Washington Law Review* and was elected to the Order of the Coif. Ms. Meriwether received a B.A. degree, *with highest honors*, from LaSalle University in 1981. She was an adjunct professor at LaSalle University teaching a course in the University's honors program from 1988-1993. Ms. Meriwether is a member of the Bar of the Commonwealth of Pennsylvania and is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Third Circuit, the Tenth Circuit and the Eleventh Circuit, and the United States District Court for the Eastern District of Pennsylvania. She is also a member

of the Federal Courts Committee and the Cy Pres Committee of the Philadelphia Bar Association, and is a member of the Pennsylvania and American Bar Associations. Prior to joining Miller Faucher, Ms. Meriwether was associated with Saul Ewing from 1987 through 1992, where she handled a variety of litigation matters in both state and federal court.

❑ **BRYAN L. CLOBES** (Philadelphia) is a 1988 graduate of the Villanova University School of Law and received his undergraduate degree from the University of Maryland. While in law school, Mr. Clobes clerked for Judge Arlin M. Adams of the United States Court of Appeals for the Third Circuit and Judge Mitchell H. Cohen of the United States District Court for the District of New Jersey. In 1988, after graduating from law school, Mr. Clobes served as a law clerk to Judge Joseph Kaplan of the Maryland Circuit Court in Baltimore. From 1989 through June, 1992, Mr. Clobes served as Trial Counsel to the Commodity Futures Trading Commission in Washington, D.C. Mr. Clobes authored *In the Wake of Varity Corp. v. Howe: An Affirmative Duty to Disclose Under ERISA,* 9 DePaul Bus. L.J. 221 (1997). Mr. Clobes is also a member of the Amicus Committee of the National Association of Securities and Commercial Law Attorneys and he has authored briefs filed with the Supreme Court in a number of recent ERISA cases, including *Varity Corp. v. Howe* and *Schoonejongen v. Curtiss-Wright Corp.* Mr. Clobes has been admitted to the bar in New Jersey and Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania.

❑ **JENNIFER WINTER SPRENGEL** (Chicago) is a 1990 graduate of DePaul University College of Law, where she was a member of the *DePaul University Law Review.* She received her undergraduate

degree from Purdue University in 1987. Ms. Sprengel has handled a variety of commercial litigation matters in both state and federal court. Ms. Sprengel is admitted to practice law in Illinois, the United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Third and Seventh Circuits.

❏ **MICHAEL J. WILLNER** (Philadelphia) graduated from the University of Pennsylvania in 1984 and received his J.D., *cum laude*, from the Temple University School of Law in 1988. In law school, he received the American Jurisprudence Award for Secured Transactions and was a member of the Temple Law Review. After law school, Mr. Willner served as a law clerk to Senior Judge John B. Hannum of the United States District Court for the Eastern District of Pennsylvania. He then was associated with Duane Morris & Heckscher, where his practice included civil trial and appellate litigation in a variety of matters. Beginning in 1997, he was a principal of Kane, Willner & Holman, a boutique commercial litigation firm in Philadelphia. Mr. Willner has been admitted to the bar in Pennsylvania, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania. Mr. Willner joined Miller Faucher in September 2001.

❏ **WILLIAM R. KANE** (Philadelphia) is a graduate of the Temple University School of Law, where he received his law degree, *cum laude*, in 1990 and an LL.M. in Trial Advocacy in 1994. He received his undergraduate degree, magna cum laude, from Temple University in 1983. Prior to his legal career, he was an Assistant Vice President for First Pennsylvania Bank and Corporation in the Public and Investor Relations Department, where he received the Chairman′s Excellence Award for outstanding service. Mr. Kane began his law career with Duane Morris & Heckscher in 1990, where his practice focused on commercial litigation matters. Beginning in 1997, he became a principal in Kane, Willner & Holman, a boutique commercial litigation firm based in Philadelphia. In 1998, Mr. Kane was appointed to serve as a Chapter 7 panel trustee for the Office of the United States Trustee. In that role, he facilitated the administration of cases pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania. He has been admitted to the bar in Pennsylvania and New Jersey. He also has been admitted to practice before the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the District of New Jersey and the Southern District of New York. Mr. Kane joined Miller Faucher in September 2001.

## ASSOCIATES

❏ **MELODY FORRESTER** (Philadelphia), an associate with the firm since 1999, is a 1993 graduate of Columbia University School of Law. Ms. Forrester received her B.A., *cum laude*, from the University of Virginia in 1985. As counsel to the firm from 1995 through 1998, Ms. Forrester focused on complex securities and antitrust class actions. From 1989 through 1995, she served as a litigation support consultant to Rogers & Wells in New York. Ms. Forrester is admitted to practice in the states of Pennsylvania and New York and the United States District Court for the Eastern District of New York. She is also a member of the New York State and American Bar Associations.

❏ **LORI A. FANNING** (Chicago) received her undergraduate degree from the University of Nebraska at Omaha in 1986, a Masters Degree from Central Michigan University (Master in Science Administration) in 1993 and her law degree, with honors, from Illinois Institute of Technology Chicago-Kent College of Law in 2000, with a Certificate in Litigation and Alternative Dispute Resolution. Ms. Fanning is

admitted to practice in Illinois and the United States District Court for the Northern District of Illinois. She is also a member of the American, Illinois State and Chicago Bar Associations.

❏ **CHRISTOPHER B. SANCHEZ** (Chicago) is a 2000 graduate of the DePaul University College of Law, where he wrote for the *Journal of Art and Entertainment Law* and was the school's student representative for the Hispanic National Bar Association. He received his undergraduate degree, *cum laude*, from the University of New Mexico in 1996. Mr. Sanchez is currently a member of the Hispanic National Bar Association.

❏ **ANTHONY FATA** (Chicago) joined the firm in 2003. Prior to his joining the firm, he was an associate in the trial practice of a major national law firm based in Chicago, where he spent three and a half years defending corporations, officers and directors in securities fraud and consumer fraud class actions, SEC investigations and enforcement actions, as well as product liability and ERISA cases. Mr. Fata also spent a significant amount of time handling general commercial litigation matters on behalf of corporate clients. Mr. Fata is the author of "Class Actions: Attaining Settlement Class Certification Under Amchem and Ortiz," 19 *Product Liability Law & Strategy* 1 (May 2001) and was a contributing author of *IICLE Securities Law,* Chapter 15 — Civil Liabilities And Remedies (2003). Mr. Fata is licensed to practice in Illinois and before the U.S. District Court for the Northern District of Illinois. Mr. Fata received his law degree, with honors, from The Ohio State University in 1999, where he was elected to the Order of the Coif, and his bachelor's degree from Miami University in 1995.

❏ **NYRAN ROSE PEARSON** (Chicago) received her undergraduate degree *cum laude* from Illinois Wesleyan University in 1995, and earned her law degree from the University of Oregon School of Law in 1999. Following law school, Ms. Pearson served as a clerk to the Honorable George A. Van Hoomissen of the Oregon Supreme Court. She is the author of *Protecting Agricultural Lands: An Assessment of the Exclusive Farm Use Zone System*, 77 Oregon Law Review 993 (1998). Ms. Pearson is admitted to practice in the state courts of Oregon and Illinois, as well as the United States District Courts for the Northern District of Illinois and the Southern District of Illinois. She is also a member of the American and Chicago Bar Associations.

❏ **TIMOTHY M. FRASER** (Philadelphia) joined the firm in 2005. His practice currently focuses on antitrust and consumer fraud class action litigation and private investor securities arbitrations. He is currently involved in actions against insurance brokers and casket manufacturers. Before joining the firm, his practice focused on municipal liability defense, with an emphasis in civil rights and employment discrimination defense. Mr. Fraser earned his undergraduate degree in Political Science and Economics from Villanova University in 2000. He graduated from Villanova University School of Law in 2003. He is licensed to practice law in Pennsylvania, New Jersey and Florida.

## OF COUNSEL

❏ **DOM J. RIZZI** (Chicago) received his B.S. degree from DePaul University in 1957 and his J.D. from DePaul University School of Law in 1961, where he was a member of the *DePaul University Law Review*. From 1961 through 1977, Judge Rizzi practiced law, tried at least 39 cases, and briefed and argued more that 100 appeals. On August 1, 1977, Judge Rizzi was appointed to the Circuit Court of Cook County by the Illinois Supreme Court. After serving as circuit court judge for approximately one year, Judge Rizzi was elevated to the Appellate Court of Illinois, First District, where he served from

1978 to 1996.  Judge Rizzi also teaches at both the undergraduate and graduate level: since 1980, he has been a part-time faculty member of the Loyola University School of Law and, since 1992, he has been a part-time faculty member at the University of Illinois-Chicago.  Judge Rizzi became counsel to the firm in October, 1996.

❏    **MATTHEW E. VAN TINE** (Chicago) received his A.B. degree *cum laude* from Harvard College in 1980, and his J.D. degree *magna cum laude* from Boston University School of Law in 1983,  where he served as an Executive Editor of the Law Review and was the author of Note, *Application of the Federal Parole Guidelines to Certain Prisoners: An Ex Post Facto Violation*, 62 B.U.L. Rev. 515 (1982).  Following law school, Mr. Van Tine served as a law clerk to the Honorable Raymond J. Pettine of the United States District Court for the District of Rhode Island.  Thereafter, he worked as an associate at Schiff Hardin & Waite in Chicago, as an Assistant Corporation Counsel for the City of Chicago Law Department, and was a partner at Saunders & Monroe in Chicago.  Mr. Van Tine is admitted to the state bars of Illinois and Massachusetts, the Supreme Court of the United States, the United States Court of Appeals for the Seventh Circuit and the United States District Courts for the Northern District of Illinois and the District of Massachusetts.  He is a member of the Chicago and American Bar Associations, and is the President of the Abraham Lincoln Marovitz American Inn of Court.

❏    **MICHAEL S. TARRINGER** (Philadelphia) is a 1993 graduate of the Villanova University School of Law.   Mr. Tarringer received his undergraduate degree, *summa cum laude,* from Philadelphia University in 1987.  Before joining the firm, Mr. Tarringer served as a law clerk to Judge Robert F. Kelly of the United States District Court for the Eastern District of Pennsylvania.   Mr. Tarringer also worked at Levin, Fishbein, Sedran & Berman as a contract attorney for the Plaintiffs= Legal Committee in the  *Orthopedic Bone Screw Products Liability Litigation*, MDL 1014, as well as the Plaintiffs= Management Committee in the *Diet Drugs Products Liability Litigation*, MDL 1203.  Mr. Tarringer is admitted to the bar in Pennsylvania, the United States Court of Appeals for the Third Circuit, and  the United States District Court for the Eastern District of Pennsylvania.

12

EXHIBIT E

N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS A. MURRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 7669 |
| | ) | |
| INDYMAC BANK, F.S.B., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on individually represented class members' motion to vacate the court's entry of final judgment that was entered on January 12, 2006. For the reasons stated below, we grant the motion to vacate.

## BACKGROUND

Plaintiff Thomas A. Murray ("Murray") brought the instant action against Defendant Indymac Bank F.S.B. ("Indymac") alleging technical violations of the Fair Credit Reporting Act, 15 U.S.C § 1681 *et seq.* On July 27, 2005, we granted Murray's motion for preliminary approval of a class action settlement and for notice

1

to the class members and on August 3, 2005, we granted an amended motion for

preliminary approval of a class action settlement and for notice to the class members.

On December 20, 2005, the court held a fairness hearing in regard to the class action

settlement and on January 12, 2005, we gave final approval to the class action

settlement and entered final judgment.

The instant motion is brought by several individually represented class

members ("Individual Class Members") who claim that they were not properly

notified of the class action settlement prior to the entry of final judgment in this

action. The Individual Class members request that the court vacate the entry of final

judgment in this action pursuant to Federal Rule of Civil Procedure 60(b)(4) ("Rule

60(b)(4)") and give them an opportunity to be heard regarding the class action

settlement.


### LEGAL STANDARD

Rule 60(b)(4) provides the following:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void. . . .

Fed. R. Civ. P 60(b). A court should grant a Rule 60(b) motion "only in exceptional

2

circumstances" because "[r]elief under Rule 60(b) is an extraordinary remedy. . . ."

*Talano,* 273 F.3d at 762(quoting *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 698

(7th Cir.1995)).


## DISCUSSION

The Individual Class Members argue that Indymac and Murray, failed to

provide the Individual class members with notice and failed to notify numerous other

class members as well.


### I. Notice To Class Members

The Individual Class Members contend that they did not receive a notice of

the class settlement.  All agree that the class settlement in this action was done

pursuant to Federal Rule of Civil Procedure 23(c)(2) which provides that "[f]or any

class certified under Rule 23(b)(3), the Court must direct to class members the best

notice practicable under the circumstances, including individual notice to *all class*

*members who can be identified through reasonable effort.*"  Fed. R. Civ. P.

23(c)(2)(B)(emphasis added).   The United States Supreme Court has also clearly

stated that in order for due process to be met and for the parties to comply with Rule

23(c)(2), "[i]ndividual notice must be sent to all class members whose names and

3

addresses may be ascertained through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974)(stating that "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case" and that "each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action").

In the instant action Murray and Indymac acknowledge that they did not provide notice of the class settlement to all of the class members. Instead they attempt to blame each other for the improper notification that occurred. For instance, Murray's counsel informs the court that they simply relied upon facts provided by Indymac and that Murray's counsel are uncertain as to the veracity of the facts and numbers. Murray's counsel are only willing to represent to the court that the notification was adequate "[a]ssuming the figures defendant presented to the court are accurate. . . ." (M Me. 2). On August 3, 2005, this court granted Murray's motion for preliminary approval of a class-wide settlement for the following class: "all persons, wherever located in the United States, to whom Indymac or its affiliates mailed a prescreened offer of credit on or after November 24, 2002, but excluding (a) officers and employees of Indymac, (b) persons that have previously released allo

4

claims that are the subject of the release, and (c) the Court and members o fits

immediate family." (Pr. App.). Indymac does not deny that the consumer reporting

agency that ordinally supplied Indymac with the mailing addresses of the class

members could have supplied Indymac with the names and addresses for all class

members. Indymac has not shown that there would have been any difficulty in

obtain the names and addresses. Instead, Indymac and Murray admit that they

purposefully reduced the number of notifications that were to be mailed to class

members based upon factors that were wholly unrelated to Indymac's difficulty in

contacting class members.

Indymac made a deal with Murray's counsel, as part of the settlement

negotiations, that notice of the class settlement would only be mailed to class

members that were sent Indymac's most recent prescreened offer that was mailed

between June 3, 2005, and June 27, 2005. Murray's counsel and Indymac also

concede that they further reduced the number of notifications mailed out by making

vague estimates regarding the number of mailers each class member received based

solely on factors such as the number of mailers that Murray himself received. Since

Murray received eight mailers, they presumed all class members had received eight

mailers. Murray's counsel and Indymac also admittedly "assumed that

approximately 30-35% of the persons who received mailers had moved during the 2

5

years preceding the June 200 mailing and prior to the mailing reduced the number of

mailings by 35%. Not only are the methods of Murray and Indymac at reducing the

number of notification letters completely illogical, they fail to comport with Rule

23(b)(2). The court in *Eisen* condemned just such approaches by a plaintiff's

counsel stating that "[t]here is nothing in Rule 23 to suggest that the notice

requirements can be tailored to fit the pocketbooks of particular plaintiffs." *Id.* Thus

it is clear that a significant number of class members were not notified of the class

settlement and there has not been any showing by Murray or Indymac that the

contact information for the class members that were not notified could not have been

discovered. Therefore, the notification of class members did not comply with Rule

23(c)(2). Indymac argues that it satisfied the notice requirements for the whole class

by publishing the notice in newspapers. We disagree that such a publication was

sufficient to satisfy the due process rights of the numerous class members that

Indymac and Murray neglected to notify. There is no evidence presented by

Indymac or Murray that shows that Indymac could not have notified all or virtually

all the class member via letter. If for example some class members no longer resided

at their old addresses, there is still no reason why Indymac could not have mailed out

the notifications and then if letters were returned to Indymac , later followed up with

such publications. Therefore, we conclude that the notification of the class

6

settlement to class members was not constitutionally adequate.

## II. Standing of Individual Plaintiffs

Indymac argues that two of the Individual Class Members, Susan Collins and Nikki Childress, were mailed solicitations after the entry of a final judgment in this action and that they are not part of the class. However, the Individual Class Members that are now pursuing the instant motion also consist of Vasuki Partiban and various other individuals referenced in their reply brief that are now seeking to join in the instant motion which were solicited by Indymac prior to the entry of final judgment in this action. The issue of whether the individuals that were solicited only after the entry of a final judgment in this case are to be deemed a part of the class need not be resolved at this juncture. The case can proceed forward regardless of the status of such individuals. The status of individuals that received post-final judgment solicitations has only been dealt with in a cursory manner by the parties in their briefs since it is only one of many issues presented by the parties. The issue should be resolved only after a full and exhaustive briefing of this issue.

## III. Appropriateness of Rule 60(b)

Indymac argues that the Individual Plaintiffs cannot invoke Rule 60(b) to

7

vacate a settlement. Indymac criticizes Plaintiffs for citing a Northern District of

Georgia case, contending that the case is "over thirty years old and unpersuasive."

(Indy Mem. 5). Indymac then informs the court that "there is precedent" in support

of its position, but the only precedent referred to by Indymac is a treatise on class

actions. (Ind. Mem. 6). We are not bound by the treatise cited by Indymac. Rule

60(b)(4) provides that "[o]n motion and upon such terms as are just, the court may

relieve a party or a party's legal representative from a final judgment, order, or

proceeding for the following reasons: . . . (4) the judgment is void. . . " Fed. R. Civ.

P. 60(b)(4). As is indicated above, the allegations put forth by the Individual

Plaintiffs show that they were denied their due process rights and the judgment

entered against them is void. We also note that Rule 60(b) enables a court to vacate

a final judgment if there was a "mistake, inadvertence, surprise, or excusable

neglect" or "fraud." Fed. R. Civ. P. 60(b). Based upon the allegations put forth by

the Individual Plaintiffs and the ignorance that Murray's counsel now professes

concerning the class notifications shows that there may also have been a mistake that

justifies vacating the final judgment. Therefore, Rule 60(b) is appropriate to seek

the vacation of the final order entered in this action.


IV. Evidence of Lack of Notice

8

Indymac contends that the Individual Plaintiffs have not provided evidence showing that they were not notified. The Individual Plaintiffs have provided affidavits in support of their reply brief and have supplied the court with such evidence. Also, the admissions made by Murray and Indymac concerning their methods for limiting the notifications, is evidence in and of itself that proper notice was not provided to all class members.

## V. Properly Notified Class Members

Murray's counsel indicates that if the court finds that the class notification process was not constitutionally adequate the court should merely exclude the class members that were not notified from the settlement. Murray contends that the court should keep intact the settlement as it relates to all properly notified class members. We do not agree. First of all the attorneys' fees allocated in the settlement were supposed to pay Murray's counsel for its representation of all the class members, not just the ones that Murray's counsel and Indymac bothered to notify. Murray's counsel was in effect paid to represent the Individual Class Members that have filed the instant motion claiming that they never received that representation. Thus either Murray's counsel should undertake to represent the Individual Class Members' concerns before the court or the funds allocated to Murray's counsel for the class

9

representation should be given to a new class counsel that will represent all the class members. Secondly, Murray's counsel, by agreeing to a settlement with Indymac and obtaining a substantial payout by Indymac, has prejudiced and possibly limited any future settlement opportunities for the remaining class members. The only fair solution is to allow all the class members to proceed in this action together and if Indymac desires to settle with all of the class members then it may do so.

## VI. Allegations Brought Against Class Counsel

The Individual Plaintiffs accuse the class representative counsel of Edelman, Combs, Latturner & Goodwin ("Edelman Firm") of "inadequately representing the class," purposefully turning a blind eye to the deficiencies in the class settlement notifications, and making the "decision to violate the due process rights of numerous, possibly the majority, of the class members. . . ." (Mot. 8). The Individual Plaintiffs contend that the Edelman Firm knowingly failed to adequately investigate factors such as the size and nature of the class and the extent that the class members were identifiable, presumably because by neglecting to do so the Edelman Firm was able to secure the settlement and the $330,000.00 for themselves. The Individual Plaintiffs also argue that the Edelman Firm failed to vigorously procedure the action for the class and that although the attorney's fees recovered by

the Edelman Firm were substantial, the amounts recovered for the class members was not adequate. Thus, the Individual Plaintiffs who are part of the very class that the Edelman Firm has sworn to represent, stand before the court accusing the Edelman firm of mismanagement of the prosecution of this action and purposefully bartering away the rights of the majority of the class members in order to secure a settlement with Indymac and the corresponding $330,000.00 pay out to the Edelman Firm. The court will schedule an evidentiary hearing for March 14, 2006, at 10:00 a.m. to address matters concerning relevant issues. All parties should be present at that hearing including the Individual Class Members.

## CONCLUSION

Based on the foregoing analysis, we grant the Individual Class Members' motion to vacate our entry of final judgment in this action and the case is reinstated.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 28, 2006

11

EXHIBIT F

# LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP** ("Lerach Coughlin") is a 160-lawyer law firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle (*www.lerachlaw.com*). Lerach Coughlin is actively engaged in complex litigation, emphasizing securities, consumer, insurance, healthcare, human rights, employment discrimination and antitrust class actions. Lerach Coughlin's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted thousands of class action lawsuits. As a result, Lerach Coughlin attorneys have been responsible for recoveries of more than $45 billion.

This successful track record stems from our experienced attorneys, including many who left partnerships at other firms or came to Lerach Coughlin from federal, state and local law enforcement and regulatory agencies, including dozens of former federal prosecutors. Lerach Coughlin also includes more than 25 former federal (circuit and district) and state judicial clerks.

Lerach Coughlin currently represents more institutional investors in securities and corporate litigation – public and multi-employer funds – than any other firm in the United States.

**William S. Lerach** is widely recognized as one of the leading securities lawyers in the United States. He has prosecuted hundreds of securities class and stockholder derivative actions, resulting in recoveries of billions of dollars. Mr. Lerach and the firm are involved in many of the largest and highest profile securities suits in recent years, including *Enron*, *Dynegy*, *AOL-TimeWarner* and *WorldCom*.

**Patrick J. Coughlin** has been lead counsel in several major securities matters, including *In re Apple Computer Sec. Litig.*, where he obtained a $100 million verdict. Prior to joining the firm's predecessor, Mr. Coughlin was a federal prosecutor in Washington, D.C. and San Diego handling complex white collar fraud matters. He helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown*, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman*. Mr. Coughlin now heads up the prosecution of the high profile *HealthSouth* and *Qwest* cases. Mr. Coughlin has handled and resolved a number of large securities cases involving such companies as 3Com, Boeing, IDB Communications Group, Unocal, Sybase, Connor, Media Vision, ADAC, Sunrise Medical, Valence, Sierra Tucson and Merisel. In addition, Mr. Coughlin spearheaded actions against the tobacco industry, resulting in the phase-out of the Joe Camel Campaign and a $12.5 billion recovery to the cities and counties of California – unique in the nation.

**John J. Stoia, Jr.** has prosecuted numerous nationwide complex securities class actions, including *In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Mr. Stoia was a major part of the plaintiffs' trial team which resulted in verdicts against Keating and his co-defendants in excess of $3 billion and recoveries of over $240 million. Mr. Stoia has been involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s, including, among others, Prudential, New York Life, Transamerica Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company. Because of Mr. Stoia's efforts, victimized policyholders have recovered over

$7 billion. Mr. Stoia also successfully litigated numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century, including serving as lead counsel in *McNeil v. Am. Gen. Life Ins. and Accident Co.*, the first major settlement involving discrimination claims ($234 million recovery). Mr. Stoia has since resolved other race-based insurance cases, including *Brown v. United Life Ins. Co.*, *Morris v. Life Ins. Co. of Georgia* and *Thompson v. Metro. Life*. In late summer 2004, Mr. Stoia filed the first complaint alleging kickbacks and rigged bidding in the insurance industry and was hired by California Insurance Commissioner John Garamendi to represent the citizens of California in suits alleging these practices.

**Paul J. Geller** has served as lead or co-lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($ 8.5 million), *Prison Realty Trust* (total combined recovery of over $120 million); *Intermedia Corp.* ($38 million). Mr. Geller is currently one of the Court-appointed lead counsel in cases involving the alleged manipulation of the asset value of some of the nation's largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (S.D.N.Y.); *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.), and *In Re Eaton Vance Sec. Litig.*, Case No. 01-10911 (D. Mass.).

Mr. Geller has also successfully represented consumers in class-action litigation. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement) and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

**Samuel H. Rudman** served in the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney, where he was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also handled several white collar criminal defense matters.

Since joining the firm, Mr. Rudman has been responsible for the investigation and initiation of securities and shareholder class actions. In addition, Mr. Rudman developed a concentration in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in that area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**Darren J. Robbins** has extensive experience in federal and state securities litigation, serving as lead counsel in the *In re Dollar Gen. Sec. Litig.*, *In re Prison Realty Sec. Litig.*, and *In re Hanover Compressor Sec. Litig*. Mr. Robbins currently represents numerous pension funds in state and federal courts across the country and concentrates his practice in the structuring of corporate governance enhancements in connection with the resolution of shareholder class and derivative litigations. Mr. Robbins was recognized as *California Lawyer* Attorney of the Year for 2003 as a result of his participation as lead

counsel in *Hanover Compressor*, where plaintiffs recovered approximately $85 million and obtained numerous groundbreaking corporate governance changes, including direct shareholder nomination of board members and the mandatory rotation of the company's outside audit firm.

## PRACTICE AREAS AND CURRENT CASES

### Securities

As recent corporate scandals clearly demonstrate, it has become all too common for companies and their executives to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true value. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Lerach Coughlin is the leader in the fight to provide investors with relief from corporate securities fraud. Lerach Coughlin utilizes a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases on behalf of large institutional investors.

The firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Lerach Coughlin attorneys to lead roles in hundreds of complex class action securities and other cases. In the securities area alone, the firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors which, in the aggregate, exceed $25 billion. Currently, Lerach Coughlin is lead or named counsel in approximately 500 securities class action or large institutional investor cases, including:

- Enron securities class action
- AOL/Time Warner individual institutional investor private actions
- Cisco Systems securities class action
- Coke securities class action
- Oracle securities class action
- WorldCom Bond individual institutional investor private actions
- HealthSouth securities class action

One of the reasons for Lerach Coughlin's dominance stems from the firm's unparalleled dedication of resources towards investor recovery. For example, the firm has approximately 125 attorneys dedicated to investigating and prosecuting securities fraud class action and derivative cases on behalf of hundreds of institutional investors. In addition to ample human resources, Lerach Coughlin is also well capitalized to meet the demands of prosecuting complex cases.

Lerach Coughlin's securities department includes dozens of former federal and state prosecutors and trial attorneys. The firm's securities practice is also strengthened by the existence of a strong Appellate Department, whose collective work has resulted in numerous legal precedents. The securities department also utilizes an extensive group of in-house economic and damage analysts, investigators and forensic accountants to aid in the prosecution of complex securities issues.

While obtaining recoveries for our clients is our primary focus, Lerach Coughlin attorneys have also been at the forefront of securities fraud **prevention**. The firm's prevention efforts are focused on creating important changes in corporate governance, either as part of the global settlements of derivative and class cases or through court orders. Recent cases in which such changes were made include: *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.*, Case No. H-02-0410 (S.D. Tex.) (groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; creation and appointment of lead independent director with authority to set up board meetings); *In re Sprint Shareholder Litig., Case* No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) (in connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions which, among other things, established a truly independent Board of Directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis); *Teachers' Ret. Sys. of Louisiana v. Occidental Petroleum Corp.*, Case No. BC185009 (Cal. Super. Ct. 1998) (as part of the settlement, corporate governance changes were made to the composition of the company's Board of Directors, the company's Nominating Committee, Compensation Committee and Audit Committee); and *Barry v. E*Trade Group, Inc.*, Case No. CIV419804 (Cal. Super. Ct., San Mateo County) (in connection with settlement of derivative suit, excessive compensation of CEO eliminated (reduced salary from $800,000 to zero; bonuses reduced and to be repaid if company restates earnings; reduction of stock option grant, and elimination of future stock option grants) and important governance enhancements obtained, including the appointment of a new unaffiliated outside director as chair of board's compensation committee). Through these efforts, Lerach Coughlin has been able to create substantial shareholder guarantees to prevent future securities fraud.

The firm works exclusively with noted corporate governance consultant Robert Monks and his firm, LENS Governance Advisors, to shape corporate governance remedies for the benefit of investors.

**Insurance**

Fraud in the insurance industry by industry executives, agents, brokers, lenders and others is one of the most costly crimes in America. Driving up everyone's insurance prices, some experts estimate the annual cost of this rising tide of white collar crime to be $120 billion nationally. Lerach Coughlin stands at the forefront in protecting the rights of consumers and state and federal entities against insurance fraud and unfair business practices in the insurance industry.

Beginning in August 2004, Lerach Coughlin was the first to expose the illegal and improper bid-rigging and kickback scandal between insurance companies and their brokers. The firm is currently one of the lead firms representing businesses, individuals, school districts, counties and the State of California in numerous actions in state and federal courts nationwide.

Our attorneys prosecute claims relating to the fraudulent and improper sale and servicing of insurance policies to recoup losses for victimized policyowners. For example, Lerach Coughlin attorneys have represented and continue to represent policyowners against insurance companies who made misrepresentations at the point of sale concerning how the policy will perform, the amount of

money the policy will cost, and whether premiums will "vanish." Claims also include allegations that purchasers were misled concerning the financing of a new policy, falling victim to a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new policy. To date, Lerach Coughlin has been responsible for over $4 billion in recoveries for defrauded policyholders.

Lerach attorneys have long been at the forefront of race discrimination litigation against life insurance companies for their practice of intentionally charging African-Americans and other minorities more for life insurance than similarly situated Caucasians. Our attorneys have recovered over $400 million for African-Americans and other minority class members as redress for the civil rights abuses they were subjected to, including landmark recoveries in *McNeil v. Am. Gen. Life & Accident Ins. Co.*, *Thompson v. Metro. Life Ins. Co.* and *Williams v. United Ins. Co. of Am*.

## Antitrust

Lerach Coughlin's antitrust practice focuses on representing plaintiffs in complex litigation, such as small businesses and individuals who have been the victims of price-fixing, unfair trade practices or other anticompetitive conduct. The firm has taken a leading role in many of the largest federal price-fixing and price discrimination cases throughout the United States.

For example, Lerach Coughlin attorneys played a lead role in *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.), serving as Court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the Court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

*See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

One of the most significant opinions in the case was Judge Sweet's decision to certify the class of millions of investors over the strenuous objections of defendants. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996). Oral argument on behalf of plaintiffs on the class certification motion was presented by Leonard B. Simon, Of Counsel to Lerach Coughlin.

Other cases include:

- ***Hall v. NCAA*** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.). Lerach Coughlin attorneys served as lead counsel and lead trial counsel for one of three classes of coaches who alleged that the National Collegiate Athletic Association illegally fixed their compensation by instituting the "restricted earnings coach" rule. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $67 million. Trial counsel included the firm's attorney Bonny E. Sweeney.

- ***In re Disposable Contact Lens Antitrust Litig.***, MDL No. 1030 (M.D. Fla.). Lerach Coughlin attorneys served as co-lead counsel for a class of contact lens wearers alleging that the principal manufacturers of disposable contact lenses conspired with the leadership of the American Optometric Association and other eye care practitioners to boycott alternative channels of contact lens distribution, including pharmacies and mail order suppliers. The case settled for $89 million five weeks into a jury trial, shortly after plaintiffs' trial counsel, including Lerach Coughlin attorney Christopher M. Burke, defeated defendants' motion for a directed verdict.

- ***Microsoft I-V Cases***, J.C.C.P. Case No. 4106 (San Francisco Super. Ct.). Lerach Coughlin attorneys served on the executive committee in these consolidated cases, in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets. In a settlement approved by the Court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

Current cases include:

- ***In re Currency Conversion Antitrust Litig.***, MDL No. 1409 (S.D.N.Y.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this multi-district litigation, in which a class of general purpose VISA and MasterCard cardholders allege that VISA and MasterCard, and certain leading member banks of Visa and MasterCard, conspired to fix and maintain the foreign currency conversion fee charged to U.S. cardholders. Plaintiffs also allege that defendants failed to adequately disclose the fee in violation of federal law. Discovery continues, and the plaintiffs' motion for class certification is fully briefed.

- ***Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*** (the ***Carbon Fiber Antitrust Litig.***), Case No. CV-99-7796 (C.D. Cal.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this consolidated class action, in which a class of purchasers alleges that the major producers of carbon fiber fixed the price of carbon fiber from 1993 to 1999. The trial Court denied defendants' motions to dismiss and granted plaintiffs' motion to certify the class, and the Ninth Circuit Court of Appeals has rejected defendants' challenge to the Court's class certification Order. Discovery is continuing.

- ***In re Carbon Black Antitrust Litig.***, MDL No. 1543 (D. Mass.). Lerach Coughlin attorneys serve as co-lead counsel for a class of businesses that allege that the major producers of carbon black unlawfully conspired to fix the price of carbon black, which is used in the manufacture of tires, rubber and plastic products, inks and other products, from 1999 through the present. The parties are currently engaged in discovery.

- ***In re DRAM Antitrust Litig.***, MDL No. 1486 (N.D. Cal.). Lerach Coughlin attorneys serve on the executive committee in this multi-district class action, in which a class of purchasers of high density low-cost-per-bit, random access memory chips, known as DRAM, allege that the leading manufactures of semiconductor products fixed the price

of DRAM from the fall of 2001 through at least the end of June 2002. Lerach Coughlin attorneys took the lead in briefing and successfully opposing defendant's motion to dismiss, which was denied. The parties are engaged in discovery.

- ***In re Medical Waste Services Antitrust Litig.***, MDL No. 1546 (D. Utah). Lerach Coughlin attorneys are co-lead counsel in this multi-district antitrust class action litigation involving two separate cases. In the first (the *Tri-State Class Action*), plaintiffs allege defendants illegally conspired to allocate customers and territories in the market for the collection, transportation and disposal of medical waste in three mountain states. In the second case (the *Stoll Action*), the firm is co-lead counsel for a California class of plaintiffs who allege that Stericycle, the largest provider of medical waste collection and disposal services in the United States, unlawfully monopolized the market for these services in California. Discovery is ongoing, and plaintiffs expect to move for certification of the class in July 2004.

- ***In re Microsoft Antitrust Litig.***, MDL No. 1332 - D. Md. Lerach Coughlin attorneys have served as lead counsel, co-lead counsel and on the executive committees of more than 15 indirect purchaser actions against Microsoft brought in both state and federal courts alleging Microsoft illegally exercised its monopoly power in the operating system, word processing and spreadsheet markets. Plaintiffs successfully defeated motions to dismiss, challenges to class certification and motions for summary judgment in many state cases. Plaintiffs also engaged in a massive discovery effort in order to defeat Microsoft's challenges regarding its unlawful acts, and to prepare for trials in California and Minnesota, both of which ultimately resolved before the cases reached a jury. In many states, the parties are currently in the process of finalizing settlements and/or achieving Court approval in settlements which provide an unprecedented result for indirect purchaser class members.

- ***The California Wholesale Electricity Antitrust Litig.***, Case No. 02-CV-990 (S.D. Cal.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this litigation, which alleges buyers and sellers in markets operated by the California Power Exchange and California ISO manipulated markets during the period May 1, 2000 to June 19, 2001. The culmination of several years of litigation, review of company documents and investigation have led to the determination of widespread market manipulation of the California and Western energy markets during 2000 and 2001. The findings show the trading strategies and withholding of power, employed by Enron and other companies, were undertaken in an effort to manipulate the California energy market which led to increased energy prices for consumers. Plaintiffs reached a landmark settlement in the litigation with the Williams Companies worth an estimated $400 million. The case is currently before the Ninth Circuit Court of Appeals awaiting oral argument on several issues.

## Consumer

Lerach Coughlin's attorneys represent plaintiffs nationwide in a variety of important, complex consumer class actions. Lerach Coughlin attorneys have taken a leading role in many of the largest state and federal consumer fraud, human rights, environmental, public health and tobacco-related cases throughout the United States. Lerach Coughlin is also actively involved in numerous cases

relating to the financial services industry, pursuing claims on behalf of individuals victimized by abusive mortgage lending practices, including violations of the Real Estate Settlement Procedures Act, market timing violations in connection with the sale of variable annuities and deceptive consumer credit lending practices in violation of the Truth-In-Lending Act.

Current consumer cases include:

- **Dell's Bait and Switch Scheme.** Plaintiffs have sued Dell, Inc. and its financing partners, Dell Financial Services and CIT Bank, in connection with their bait and switch sales and financing practices. The class action complaint alleges that Dell uses its advertisements to lure customers in, promising low-price computers. At the point of sale, Dell engages in one of several bait and switch schemes, including substituting lesser quality computer components for those ordered and paid for by customers, increasing the purchase price without adequate notice to customers, and canceling orders when Dell does not want to honor advertised deals. This class action also alleges illegal financing behavior, including Dell switching or failing to adequately disclose the terms of Dell's financing agreement, including less favorable financing plans, hidden charges and fees, and much higher interest rates.

- **eBay Shill Bidding Litigation.** Lerach Coughlin attorneys represent a plaintiff and class members in litigation against auction company eBay. The class action alleges unlawful shill bidding by eBay in its online auctions. Plaintiff alleges that eBay's practice of increasing winning bids, when an eBay customer uses eBay's proxy bidding tool, violates numerous California auction and consumer laws.

- **Illegal Internet Gambling Advertisements**. Lerach Coughlin represents the general public and a class of California residents who have been harmed by the illegal online advertising for gambling casinos. In a complaint upheld by Judge Kramer of the San Francisco complex litigation department, plaintiffs have alleged that the numerous online search engines have violated California Law by taking payment in exchange for advertising illegal gambling websites.

- **Cellphone Termination Fee Cases.** Lerach Coughlin attorneys are co-lead counsel in a lawsuit against the six major wireless telephone service providers in California. The plaintiffs allege that the early termination fee provisions in defendants' contracts are illegal penalties under California Law, designed to unfairly tether consumers to long-term contracts and prevent customers from changing their wireless service providers.

- **Tenet Healthcare Cases.** Lerach Coughlin attorneys are co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. The firm's attorneys represent uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy" which resulted in price gouging of the uninsured. Judge McCoy of the Los Angeles Superior Court granted preliminary approval of a settlement between plaintiffs and Tenet.

- **AT&T Wireless Coverage Maps.** Lerach Coughlin attorneys represent consumers in a Los Angeles action that alleges false and misleading advertising by AT&T Wireless.

Plaintiffs claim that AT&T Wireless's coverage maps are deceptive because they fail to disclose that defendants' service area is riddled with coverage gaps and holes. Plaintiffs seek injunctive relief from the court requiring AT&T Wireless to publish accurate coverage maps indicating where consumers are actually able to place wireless telephone calls throughout the Los Angeles region. AT&T Wireless was acquired by Cingular Wireless.

Prior consumer cases include:

- ***Schwartz v. Visa.*** After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States. In *Schwartz v. Visa Int'l, et al.*, Case No. 822404-4 (Cal. Super. Ct., Alameda County), California consumers sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The Court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the Court ordered full disclosure of the hidden fee.

- ***In re Lifescan, Inc. Consumer Litig.***, Case No. CV-98-20321-JF (N.D. Cal.). Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics. The Lifescan settlement was noted by the District Court for the Northern District of California as providing "exceptional results" for members of the class.

## Human Rights, Labor Practices and Public Policy

Lerach Coughlin attorneys have a long tradition of representing the victims of wrongdoing, ranging from unfair labor practices to the violation of human rights. These include:

- ***Does I, et al. v. The Gap, Inc., et al.***, Case No. 01 0031 (D. N. Mariana Islands). In this groundbreaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: ***Does I, et al. v. Advance Textile Corp., et al.***, Case No. 99 0002 (D. N. Mariana Islands), which alleged overtime violations by the garment factories under the Fair Labor Standards Act, and ***UNITE, et al. v. The Gap, Inc., et al.***, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for

Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The Court rejected defense contentions that any misconduct was protected by the First Amendment. The Court found the heightened constitutional protection afforded to noncommercial speech was inappropriate in such a circumstance.

- ***The Cintas Litigation***. Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

Shareholder derivative litigation brought by Lerach Coughlin at times also involves anti-union activities, including:

- ***Southern Pacific/Overnite***. A shareholder action stemming from several hundred million dollars in loss of value in the company due to systematic violations by Overnite of U.S. labor laws.

- ***Massey Energy***. A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million dollar penalties.

- ***Crown Petroleum***. A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

Lerach Coughlin attorneys also represented over 2,300 Taco Bell workers who were denied thousands of hours of overtime pay because, among other reasons, they were improperly classified as overtime exempt employees. Currently, the firm's attorneys represent CINTAS workers with similar claims of violation of federal and state labor laws.

## Environment & Public Health

Lerach Coughlin attorneys have also represented plaintiffs in class actions related to environmental law. The firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the state and federal use of project labor agreements ("PLAs"). The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds. Our Amici Brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large scale construction projects.

Attorneys with Lerach Coughlin have been involved in several other significant environmental cases, including:

- ***Public Citizen v. US DOT.*** Lerach Coughlin represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The

International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry in a challenge to a decision by the Bush Administration to lift a congressionally-imposed "moratorium" on cross-border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act, and further, that the Administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act. The suit was dismissed by the Supreme Court, the Court holding that because the DOT lacked discretion to prevent cross-border trucking, an environmental assessment was not required.

- **_Sierra Club v. AK Steel._** Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, RCRA and the Clean Water Act.

- **_MTBE Litigation._** Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- **_Exxon Valdez._** Brought on behalf of fisherman and of Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- **_Avilla Beach._** A citizens' suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avilla Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act and state laws such as California Proposition 65 exist to protect the environment and the public from abuses by corporate and government organizations. Companies can be found liable for negligence, trespass or intentional environmental damage and be forced to pay for reparations and to come into compliance with existing laws.

Prominent cases litigated by Lerach Coughlin attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

**The Fight Against Big Tobacco**

Lerach Coughlin attorneys have led the fight against Big Tobacco since 1991. As an example, Lerach Coughlin attorneys filed the case that helped get rid of Joe Camel representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles and Birmingham, 14 counties in California, and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Lerach Coughlin attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

**Pro Bono**

Lerach Coughlin attorneys have a long history of engaging in _pro bono_ cases and have been recognized for their demonstrated commitment to providing _pro bono_ services to the poor and

disenfranchised. In 2003, Lerach Coughlin attorneys Eric Isaacson, Bonny Sweeney and Amber Eck were nominated for the prestigious 2003 California State Bar President's *Pro Bono* Law Firm of the Year award, based in large part on their efforts with the ACLU in *Sanchez v. County of San Diego*. The San Diego office received a commendation from the State Bar President for its "dedication to the provision of *pro bono* legal services to the poor and for the significant contribution [the firm] made to extending legal services to underserved communities." In recommending the firm for the award, Carl Poirot of the San Diego Volunteer Lawyer Program praised the firm for its "extraordinary efforts" in the case, stating that the "legal team generously gave of their time in the vigorous representation of a class of individuals who clearly do not have the financial resources nor wherewithal to retain legal counsel. The County's questionable conduct would have gone unchallenged but for the intervention" of the legal team.

*Sanchez* is a class action brought on behalf of welfare applicants against the County of San Diego seeking an injunction requiring the County to discontinue its "Project 100%" program. Under Project 100%, investigators from the San Diego D.A.'s office, Public Assistance Fraud Division, enter and search the home of every person who applies for welfare benefits, even though there is no suspicion of fraud or wrongdoing, and despite the fact that every individual is required to undergo an extensive application process with numerous verifications. Plaintiffs contend that these searches by law enforcement officers, performed without cause or suspicion, violate state and federal statutes and the Fourth Amendment of the U.S. Constitution.

The Court certified a class of all present and future applicants for CalWORKs cash aid and food stamps in San Diego County who are subject to a search of their home under Project 100%. Defendants have since admitted that the use of home visits to determine eligibility for food stamps violates California state regulations and has agreed to settle these claims. Although defendants were granted summary judgment on the remaining claims, plaintiffs are currently in the process of filing an appeal with the Ninth Circuit Court of Appeals and are optimistic about the prospects for success there. Due to the substantial number of hours dedicated to this important case, lead attorneys Eric Isaacson, Bonny Sweeney and Amber Eck were awarded the SDVLP Distinguished Service Award.

The San Diego office was also named as one of three finalists for the 1999 *Pro Bono* Law Firm of the Year award by the SDVLP, based in part for its work on the *Badua v. City of San Diego* case. *Badua* was a case brought on behalf of Jenny Badua against the City of San Diego. After working for the City for 15 years, she was placed on Long Term Disability ("LTD") leave due to severe manic depression. Under the City's LTD Plan, which is similar to many other LTD plans, individuals with physical disabilities receive benefits until age 65 or older, but individuals with mental disabilities receive benefits for only two years. We alleged that this differential treatment of persons with mental disabilities violated the Americans with Disabilities Act and federal and state disability nondiscrimination statutes. Unfortunately, after three years of working on the case, the Ninth Circuit Court of Appeals issued an Opinion upholding the constitutionality of an LTD plan nearly identical to the one at issue, and plaintiffs settled the case for a nominal award to the plaintiff. However, the Disability Rights Education & Defense Fund ("DREDF") and the ACLU commended our efforts and described this as one of the most important issues of the year.

Our co-counsel, Linda Kilb of the DREDF, said in recommending us for the award: "The talent, effort and commitment of [Lerach Coughlin attorneys have] been invaluable, and it is difficult to imagine how the case could proceed without them. DREDF is enormously appreciative of [Lerach Coughlin

attorneys'] continuing role in this case, and of SDVLP's assistance in finding us co-counsel of this caliber."

## JUDICIAL COMMENDATIONS

Lerach Coughlin attorneys have been commended by countless judges all over the country for the quality of representation in class action lawsuits.

When Judge Harmon appointed Lerach Coughlin attorneys as lead counsel for Enron securities purchasers, she commented:

> In reviewing the extensive briefing submitted regarding the Lead Plaintiff/Lead Counsel selection, the Court has found that the submissions of [Lerach Coughlin attorneys] stand out in the breadth and depth of its research and insight. Furthermore, Mr. Lerach has justifiably "beat his own drum" in demonstrating the role his firm has played thus far in zealously prosecuting this litigation on Plaintiffs' behalf.

*See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002).

*In Stanley v. Safeskin Corp.*, Case No. 99 CV 454-BTM (S.D. Cal. May 25, 2004), where Lerach Coughlin obtained $55 million for the class of investors, Judge Moskowitz stated:

> I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

In *Roy v. The Independent Order of Foresters*, Case No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999), Judge Chesler noted in his Opinion on class certification that:

> The firm of [Lerach Coughlin], which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the Prudential case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the [Lerach Coughlin] firm has helped to secure for the plaintiff classes in both this case and the Prudential case are a testament to counsel's vigorous pursuit of the class interests.

In a November 9, 1998 Order approving settlements totaling over $1.027 billion, the Court in *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), commented of Lerach Coughlin attorneys, including Len Simon;

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties in this action achieved.

In approving a recovery in excess of $200 million in *Transamerica*, Judge Danielson of the California Superior Court made it a point to comment on the professionalism of Lerach Coughlin's lawyers:

It would be hard to imagine what question I could come up with that I haven't already seen the information that I needed in the submissions that have been made to this Court. I can't remember anything so thoroughly and professionally handled in the 20-some odd years that I've been involved in the law. It is interesting to see law practiced honorably. And I think all of the lawyers who have involved themselves in this case can be very proud of their profession.

See *Natal v. Transamerica Occidental Life Ins. Co.*, Case No. 694829, Hearing Transcript dated June 26, 1997, at 39:3-12.

Similarly, in *Prudential*, in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, Judge Wolin observed:

[T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable.... Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court. Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

See *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 572, 585-86 (D.N.J. 1997), *vacated on other grounds*, 148 F.3d 283 (3d Cir. 1998). Lerach Coughlin attorneys were co-lead counsel in this litigation. At the Fairness Hearing in *Prudential*, Judge Wolin stated that "there is **no doubt** that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) (emphasis added).

In approving a $100 million settlement in *In re Prudential Securities Limited Partnerships Litig.*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), for which Lerach Coughlin attorneys were part of the lead counsel, Judge Pollack noted that he had "the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and [was] impressed with the quality of plaintiffs' class counsel." In his Opinion on class certification, Judge Chesler elaborated that:

The firm which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the *Prudential* case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the firm has helped to secure for the plaintiff classes in both this case and the *Prudential* case are a testament to counsel's vigorous pursuit of the class interests.

See *Roy v. The Independent Order of Foresters*, Case No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999).

At the Settlement Hearing in the *Chipcom* litigation, for which Lerach Coughlin attorneys were counsel, Judge Woodlock remarked:

[I]t seems to me that the level of legal services, the quality of legal services, the attention to the case on behalf of the plaintiffs, and ultimately plaintiffs' class, was

really very high quality and ought to be recognized by an appropriately high percentage figure here.

Of course, I disagree on the merits of the case. That is not, however, to say that I disagree with the quality of the lawyering or disregarded the quality of the lawyering or thought that the quality of the lawyering was not at the highest level. To the contrary, I thought it was at the highest level and that ought also to be reflected here.

*See Nappo v. Chipcom Corp.*, Case No. CA-95-11114-WD (D. Mass.), Settlement Hearing Transcript dated June 26, 1997, at 13-14.

## NOTABLE CLIENTS

### Public Fund Clients

- **Alaska Permanent Fund Corporation.**

- **Alaska State Pension Investment Board.**

- **California Public Employees' Retirement System.**

- **California State Teachers' Retirement System.**

- **City of Birmingham Retirement and Relief System (Ala.).**

- **Teachers' Retirement System of the State of Illinois, Illinois Municipal Retirement Fund, Illinois State Board of Investment.**

- **Los Angeles County Employees Retirement Association (LACERA).**

- **Maine State Retirement System.**

- **The Maryland-National Capital Park & Planning Commission Employees' Retirement System.**

- **Milwaukee Employees' Retirement System.**

- **Minnesota State Board of Investment.**

- **New Hampshire Retirement System.**

- **Pompano Beach Police & Firefighters Retirement System.**

- **The Regents of the University of California.**

- **State Universities Retirement System of Illinois.**

- **State of Wisconsin Investment Board.**

- **Tennessee Consolidated Retirement System.**

- **Washington State Investment Board.**

- **Wayne County Employees' Retirement System.**

- **West Virginia Investment Management Board.**

## Multi-Employer Clients

- **Alaska Electrical Pension Fund.**

- **Alaska Hotel & Restaurant Employees Pension Trust Fund.**

- **Alaska Ironworkers Pension Trust.**

- **Alaska Laborers Employers Retirement Fund.**

- **Alaska U.F.C.W. Pension Trust.**

- **Chemical Valley Pension Fund of West Virginia**.

- **Carpenters Health & Welfare Fund of Philadelphia & Vicinity.**

- **Carpenters Pension Fund of Baltimore, Maryland**.

- **Carpenters Pension Fund of Illinois**.

- **Carpenters Pension & Annuity Fund of Philadelphia & Vicinity**.

- **Southwest Carpenters Pension Trust (f/k/a Carpenters Pension Trust for Southern California)**.

- **Central States, Southeast and Southwest Areas Pension Fund.**

- **Construction Industry and Carpenters Joint Pension Trust for Southern Nevada**.

- **Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund**.

- **Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds**.

- **UNITE Family of Funds**.

- **1199 SEIU Greater New York Pension Fund**.

- **Massachusetts State Carpenters Pension Fund**.

- **Massachusetts State Guaranteed Annuity Fund**.

- **New England Health Care Employees Pension Fund**.

- **PACE Industry Union-Management Pension Fund**.

- **Rocky Mountain UFCW Unions & Employers Pension Plan**.

- **SEIU Staff Fund**.

- **Southern California Lathing Industry Pension Fund**.

- **United Brotherhood of Carpenters Pension Fund**.

### Additional Institutional Investors

- **The Dot.Com Fund**.

- **Northwestern Mutual Life Insurance Company**.

- **Standard Life Investments**.

## PROMINENT CASES AND PRECEDENT-SETTING DECISIONS

### Prominent Cases

- ***In re Enron Sec. Litig.***, Case No. H-01-3624 (S.D. Tex.). In appointing Lerach Coughlin lawyers as sole lead counsel to represent the interests of Enron investors, the Court found that the firm's zealous prosecution and level of "insight" set it apart from its peers. Ever since, Lerach Coughlin and lead plaintiff The Regents of the University of California have aggressively pursued numerous defendants, including many of Wall Street's biggest banks and law firms. Despite each defendant's claim that as a matter of law it could not be found liable for plaintiffs' losses, Lerach Coughlin and The Regents have thus far obtained settlements in excess of $7.1 billion for the benefit of investors. Lerach Coughlin continues to press substantial and sizable claims against numerous defendants, including Enron's senior-most officers and several large international banks, with every intention of winning further large recoveries at trial for the victims of this corporate catastrophe.

- ***In re NASDAQ Market-Makers Antitrust Litig.***, MDL No. 1023 (S.D.N.Y.). Lerach Coughlin attorneys served as Court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the Court's Opinion reads:

  > Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

- ***In re Dynegy Sec. Litig.***, Case No. H-02-1571 (S.D. Tex.). As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Lerach Coughlin obtained a combined settlement of $474 million from Dynegy Inc., Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Given Dynegy's limited ability to pay, Lerach Coughlin structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company. Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by the Regents, which Lerach Coughlin and the Regents believe will result in benefits to all of Dynegy's stockholders.

- ***In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig.***, MDL No. 834 (D. Ariz.). Lerach Coughlin attorneys served as the Court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now infamous Lincoln Savings & Loan. The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws. Recoveries totaled $240 million on $288 million in losses. A jury also rendered verdicts of more than $1 billion against Keating and others.

- ***In re 3Com, Inc. Sec. Litig.***, Case No. C-97-21083-JW (N.D. Cal.). A hard-fought class action alleging violations of the federal securities laws in which Lerach Coughlin attorneys served as lead counsel for the class and obtained a recovery totaling $259 million.

- **Mangini v. R.J. Reynolds Tobacco Co.**, Case No. 939359 (Cal. Super. Ct., San Francisco County). In this case, R.J. Reynolds admitted, "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- **Cordova v. Liggett Group, Inc., et al.**, Case No. 651824 (Cal. Super. Ct., San Diego County), and **People v. Philip Morris, Inc., et al.**, Case No. 980864 (Cal. Super. Ct., San Francisco County). Lerach Coughlin attorneys, as lead counsel in both these actions, played a key role in these cases which were settled with the Attorneys General global agreement with the tobacco industry, bringing $26 billion to the State of California as a whole and $12.5 billion to the cities and counties within California.

- **Does I, et al. v. The Gap, Inc., et al.**, Case No. 01 0031 (D. N. Mariana Islands). In this ground-breaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: **Does I, et al. v. Advance Textile Corp., et al.**, Case No. 99 0002 (D. N. Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act, and **UNITE, et al. v. The Gap, Inc., et al.**, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- **In re Exxon Valdez**, Case No. A89 095 Civ. (D. Alaska), and **In re Exxon Valdez Oil Spill Litig.**, Case No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.). Lerach Coughlin attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

- **In re Washington Public Power Supply Sys. Sec. Litig.**, MDL No. 551 (D. Ariz.). A massive litigation in which Lerach Coughlin attorneys served as co-lead counsel for a class that obtained recoveries totaling $775 million after several months of trial.

- **Hall v. NCAA** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.). The firm was lead counsel and lead trial counsel for one of three classes of coaches in consolidated price fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $54.5 million.

- **Newman v. Stringfellow** (Stringfellow Dump Site Litigation), Case No. 165994 MF (Cal. Super. Ct., Riverside County). Lerach Coughlin attorneys represented more than 4,000 individuals suing for personal injury and property damage arising from their claims that contact with the Stringfellow Dump Site may have caused them toxic poisoning. Recovery totaled approximately $109 million.

- ***In re Prison Realty Sec. Litig.***, Case No. 3:99-0452 (M.D. Tenn.). Lerach Coughlin attorneys served as lead counsel for the class, obtaining a $105 million recovery.

- ***In re Honeywell Int'l, Inc. Sec. Litig.,*** Case No. 00-cv-03605 (DRD) (D. N.J.). Lerach Coughlin attorneys served as lead counsel for a class of investors that purchased Honeywell's common stock. The case charged defendants Honeywell and its top officers with violations of the federal securities laws, alleging defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc., and also alleging that defendants falsified Honeywell's financial statements. After extensive discovery, Lerach Coughlin attorneys obtained a $100 million settlement for the class.

- ***In re AT&T Corp. Sec. Litig.,*** MDL No. 1399 (N.J.). Lerach Coughlin attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T Corporation and its former Chairman and Chief Executive Officer, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million. In granting approval of the settlement, the Court stated the following about Lerach Coughlin:

  Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during litigation substantiates this characterization. The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court. Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

- ***City of San Jose v. PaineWebber***, Case No. C-84-20601(RFP) (N.D. Cal.). Lerach Coughlin attorneys filed a lawsuit on behalf of the City of San Jose to recover speculative trading losses from its former auditors and 13 brokerage firms. In June 1990, following a six-month trial, the jury returned a verdict for the City, awarding over $18 million in damages plus pre-judgment interest. The City also recovered an additional $12 million in settlements prior to and during the trial.

- ***Hicks v. Nationwide***, Case No. 602469 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys represented a class of consumers alleging fraud involving military purchasers of life insurance, in which a jury trial resulted in a full recovery for the class, plus punitive damages.

- ***In re Nat'l Health Labs. Sec. Litig.***, Case No. CV-92-1949-RBB (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and obtained a pretrial recovery of $64 million in this securities fraud class action.

- ***In re Informix Corp. Sec. Litig.***, Case No. C-97-1289-CRB (N.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel for the class and obtained a recovery of $137.5 million.

- ***In re Apple Computer Sec. Litig.***, Case No. C-84-20148(A)-JW (N.D. Cal.). Lerach Coughlin attorneys served as lead counsel and after several years of litigation obtained a $100 million jury verdict in this securities fraud class action. The verdict was later upset on post-trial motions, but the case was settled favorably to the class.

- ***In re Nat'l Med. Enters. Sec. Litig.***, Case No. CV-91-5452-TJH (C.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel and recovered $60.75 million in this securities fraud class action.

- ***In re Nucorp Energy Sec. Litig.***, MDL No. 514 (S.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel in this consolidated class action and recovered $55 million.

- ***In re U.S. Fin. Sec. Litig.***, MDL No. 161 (S.D. Cal.).  Lerach Coughlin attorneys acted as chairman of the Plaintiffs' Steering Committee and achieved a pretrial recovery of over $50 million.

- ***Barr v. United Methodist Church***, Case No. 404611 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as lead and trial counsel in this class action on behalf of elderly persons who lost their life savings when a church-sponsored retirement home that had sold them prepaid life-care contracts went bankrupt.  After four years of intensive litigation – three trips to the U.S. Supreme Court and five months of trial – plaintiffs obtained a settlement providing over $40 million in benefits to the class members.  In approving that settlement, Judge James Foucht praised the result as "a most extraordinary accomplishment" and noted that it was the "product of the skill, effort and determination of plaintiffs' counsel."

- ***Grobow v. Dingman*** (The Henley Group Litigation), Case No. 575076 (Cal. Super. Ct., San Diego County).  Lerach Coughlin attorneys served as co-lead counsel and obtained $42 million derivatively on behalf of The Henley Group, Inc.

- ***In re Itel Sec. Litig.***, Case No. C-79-2168A-RPA (N.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel in this securities class action that recovered $40 million.

- ***In re Fin. Corp. of Am.***, Case No. CV-84-6050-TJH(Bx) (C.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $41 million.

- ***In re Oak Indus. Sec. Litig.***, Case No. 83-0537-G(M) (S.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a recovery of $33 million.

- ***In re Wickes Cos. Sec. Litig.***, MDL No. 513 (S.D. Cal.).  Lerach Coughlin attorneys served as liaison counsel in this consolidated securities law class action that recovered $32 million.

- ***Weinberger v. Shumway*** (The Signal Companies, Inc.), Case No. 547586 (Cal. Super. Ct., San Diego County).  Lerach Coughlin attorneys served as co-lead counsel in this derivative litigation challenging executive "golden parachute" contracts, and obtained a recovery of approximately $23 million.

- ***In re Seafirst Sec. Litig.***, Case No. C-83-771-R (W.D. Wash.).  Lerach Coughlin attorneys served as co-lead counsel in this class action and obtained a pretrial recovery of $13.6 million.

- ***In re Waste Mgmt. Sec. Litig.***, Case No. 83-C2167 (N.D. Ill.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $11.5 million.

- ***In re IDB Commc'ns Group, Inc. Sec. Litig.***, Case No. CV-94-3618 (C.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $75 million.

- ***In re Boeing Sec. Litig.***, Case No. C97-1715Z (W.D. Wash.). A securities class action in which Lerach Coughlin attorneys served as co-lead counsel for the class obtaining a recovery in the amount of $92.5 million.

- ***Thurber v. Mattel, Inc., et al.***, Case No. CV-99-10368-MRP (C.D. Cal.). Lerach Coughlin attorneys served as Chair of the Executive Committee of Plaintiffs' Counsel and obtained a recovery of $122 million.

- ***In re Dollar Gen. Sec. Litig.,*** Case No. 3:01-0388 (M.D. Tenn.). Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $172.5 million.

- ***Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Hanover Compressor Co.***, Case No. H-02-0410 (S.D. Tex.). Lerach Coughlin attorneys served as lead counsel and obtained a recovery of $85 million.

- ***In re Reliance Acceptance Group, Inc. Sec. Litig.***, MDL No. 1304 (D. Del.). Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $39 million.

- ***Schwartz v. Visa Int'l, et al.***, Case No. 822404-4 (Cal. Super. Ct., Alameda County). After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States. Lerach Coughlin attorneys represented California consumers who sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The Court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the Court ordered full disclosure of the hidden fee.

- ***Morris v. Lifescan, Inc.***, Case No. CV-98-20321-JF (N.D. Cal.). Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood glucose monitoring system for diabetics. The Lifescan settlement was noted by the U.S. District Court for the Northern District of California as providing "exceptional results" for members of the class.

- ***Thompson v. Metro. Life Ins. Co.***, 216 F.R.D. 55 (S.D.N.Y. 2003). Lerach Coughlin attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- ***In re Prudential Ins. Co. of Am. Sales Practices Litig.***, 962 F. Supp. 450 (D. N.J. 1997). In one of the first cases of its kind, Lerach Coughlin attorneys obtained a settlement of over $1.2 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

- ***Brody v. Hellman***, Case No. 00-CV-4142 (D. Colo.). Lerach Coughlin was Court-appointed counsel for a class of former stockholders of US West, Inc. who sought to recover a dividend declared by US West before its merger with Qwest. The merger closed before the record and payment dates for the dividend, which Qwest did not pay following the merger. The case was hard fought, and the plaintiffs survived a motion to dismiss, two motions for summary judgment and successfully certified the class over vigorous opposition from defendants. In certifying the class, the Court commented,

"Defendants do not contest that Plaintiffs' attorneys are extremely well qualified to represent the putative class. This litigation has been ongoing for four years; in that time Plaintiffs' counsel has proven that they are more than adequate in ability, determination, and resources to represent the putative class." The case settled for $50 million, an outstanding settlement for the class given the novel and difficult legal questions raised in the case.

## Precedent-Setting Decisions

### Investor and Shareholder Rights

- ***Dura Pharm., Inc. v. Broudo***, __ U.S. __, 125 S. Ct. 1627; 161 L. Ed. 2d 577 (2005). Resolving a conflict among the circuits on pleading and proving loss causation, the Supreme Court adopted a rule that investors may proceed by pleading and proving that securities they purchased declined in value because of the fraud alleged – as, for example, by alleging that the securities' market price fell when news of the issuer's true financial state began to leak out.

- ***In re Daou Systems Inc. Sec. Litig.***, 411 F.3d 1006 (9th Cir. 2005). The Ninth Circuit sustained investors' allegations of accounting fraud and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- ***Barrie v. Intervoice-Brite, Inc,***, 409 F.3d 653 (5th Cir. 2005). The Fifth Circuit held that where corporate officers made public statements together, an investor's allegations of the false statements meets the heightened pleading requirements for federal securities claims, and that the corporate officer who stood by silently while false statements were made – failing to correct them – may be liable along with the officer who actually made them.

- ***Newby v. Enron Corp.***, 394 F.3d 296 (5th Cir. 2004). The Fifth Circuit upheld a partial settlement in a complex case that was structured to support further litigation of that case in order to maximize recovery against the remaining defendants.

- ***Illinois Municipal Retirement Fund v. Citigroup, Inc.***, 391 F.3d 844 (7th Cir. 2004). The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the federal Securities Act of 1933 against WorldCom's underwriters before a state court rather than before the federal forum sought by the defendants.

- ***City of Monroe Employees Retirement System v. Bridgestone Corp.***, 387 F.3d 468 (6th Cir. 2005). The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable, where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- ***Nursing Home Pension Fund, Local 144 v. Oracle Corp.***, 380 F.3d 1226 (9th Cir. 2004). The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- ***Southland Sec. Corp. v. INSpire Ins. Solutions Inc.***, 365 F.3d 353 (5th Cir. 2004). The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

- ***No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.***, 320 F.3d 920 (9th Cir. 2003). *America West* is a landmark Ninth Circuit decision holding that investors pleaded with particularity facts raising a strong inference of corporate defendants' fraudulent intent under heightened pleading standards of the Private Securities Litigation Reform Act of 1995.

- ***Pirraglia v. Novell, Inc.***, 339 F.3d 1182 (10th Cir. 2003). In *Pirraglia*, the Tenth Circuit upheld investors' accounting-fraud claims, concluding that their complaint presented with particularity facts raising a strong inference of the defendants' fraudulent intent, and that absence of insider trading by individual defendants did not mean they lacked a motive to commit fraud.

- ***In re Cavanaugh***, 306 F.3d 726 (9th Cir. 2002). In *Cavanaugh*, the Ninth Circuit disallowed judicial auctions to select lead plaintiffs in securities class actions, and protected lead plaintiffs' right to select the lead counsel they desire to represent them.

- ***Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.***, 238 F.3d 363 (5th Cir. 2001). In *Lone Star Ladies*, the Fifth Circuit upheld investors' claims that securities-offering documents were incomplete and misleading, reversing a district court Order that had applied inappropriate pleading standards to dismiss the case.

- ***Bryant v. Dupree***, 252 F.3d 1161 (11th Cir. 2001). The Eleventh Circuit held that investors were entitled to amend their securities-fraud complaint to reflect further developments in the case, reversing a contrary district court Order.

- ***Bryant v. Avado Brands***, 187 F.3d 1271 (11th Cir. 1999). Interpreting the Private Securities Litigation Reform Act of 1995, the Eleventh Circuit held that its provision requiring investors to plead facts raising a strong inference of scienter does not abrogate the principle that recklessness suffices to establish liability for violations of §10(b) of the Securities Exchange Act of 1934.

- ***Berry v. Valence Tech., Inc.***, 175 F.3d 699 (9th Cir. 1999). The Ninth Circuit held that negative articles in the financial press do not cause the one-year "inquiry notice" statute of limitations to run, and indicated possible acceptance of an "actual knowledge" standard that would greatly extend the statute of limitations for victims of securities fraud.

- ***Hertzberg v. Dignity Partners, Inc.***, 191 F.3d 1076 (9th Cir. 1999). The Ninth Circuit reversed dismissal of investors' claims that securities-offering documents were misleading, holding purchasers who bought shares in the aftermarket had standing to bring claims under the Securities Act of 1933 where a material fact is misstated or omitted from a registration statement.

- ***StorMedia, Inc. v. Superior Court***, 20 Cal. 4th 449 (1999). Interpreting the anti-manipulation provisions of California's state securities laws, the California Supreme Court held that a corporation engages in the offer or sale of securities when it maintains an employee stock option or stock purchase plan, and thus may be liable under the statute for disseminating false or misleading public statements.

- ***Diamond Multimedia Sys., Inc. v. Superior Court***, 19 Cal. 4th 1036 (1999). The California Supreme Court held that the California State securities laws' broad anti-manipulation provisions provide a remedy for out-of-state investors damaged by manipulative acts committed within the State of California.

- ***Cooper v. Pickett***, 137 F.3d 616 (9th Cir. 1998). *Cooper* is the leading Ninth Circuit precedent on pleading accounting fraud with particularity. The Court held that plaintiffs stated claims against a company, its independent auditors and its underwriters, for engaging in a scheme to defraud involving improper revenue recognition.

- ***McGann v. Ernst & Young***, 102 F.3d 390 (9th Cir. 1996). *McGann* is a leading federal appellate precedent interpreting Securities Exchange Act of 1934 §10(b)'s provision prohibiting manipulative or deceptive conduct "in connection with" the purchase or sale of a security. The Court rejected contentions that auditors could not be liable for a recklessly misleading audit opinion if they directly participated in no securities transactions. Rather, an accounting firm is subject to liability if it prepares a fraudulent audit report knowing that its client will include the report in an SEC filing.

- ***Provenz v. Miller***, 102 F.3d 1478 (9th Cir. 1996). In *Provenz*, the Ninth Circuit reversed a district court's entry of summary judgment for defendants in an accounting fraud case. The decision is a leading federal appellate precedent on the evidence required to prove fraudulent revenue recognition.

- ***Knapp v. Ernst & Whinney***, 90 F.3d 1431 (9th Cir. 1996). The Ninth Circuit affirmed a jury verdict entered for stock purchasers against a major accounting firm.

- ***Warshaw v. Xoma Corp.***, 74 F.3d 955 (9th Cir. 1996). *Warshaw* is a leading federal appellate precedent on pleading falsity in securities class actions, sustaining allegations that a pharmaceutical company misled securities analysts and investors regarding the efficacy of a new drug and the likelihood of FDA approval. The Court also held that a company may be liable to investors if it misled securities analysts.

- ***Gohler v. Wood***, 919 P.2d 561 (Utah 1996). The Utah Supreme Court held that investors need not plead or prove "reliance" on false or misleading statements in order to recover under a state law prohibiting misleading statements in connection with the sale of a security.

- ***Fecht v. Price Co.***, 70 F.3d 1078 (9th Cir. 1995). *Fecht* is another leading precedent on pleading falsity with particularity. It sustained allegations that a retail chain's positive portrayal of its expansion program was misleading in light of undisclosed problems that caused the program to be curtailed. The Ninth Circuit held that investors may draw on contemporaneous conditions – such as disappointing results and losses in new stores – to explain why a company's optimistic statements were false and misleading. It also clarified the narrow scope of the so-called "bespeaks caution" defense.

- ***In re Software Toolworks Sec. Litig.***, 50 F.3d 615 (9th Cir. 1995). In *Software Toolworks*, the Ninth Circuit reversed the summary judgment entered for defendants, including a company and its top insiders, independent auditors and underwriters. Among other things, the Court held that auditors and underwriters could be liable for their role in drafting a misleading letter sent to the SEC on the corporate defendant's attorneys' letterhead.

- ***In re Pac. Enters. Sec. Litig.***, 47 F.3d 373 (9th Cir. 1995). The Ninth Circuit approved shareholders' settlement of a derivative suit as fair, reasonable, and adequate.

- ***Kaplan v. Rose***, 49 F.3d 1363 (9th Cir. 1994). The Court reversed entry of summary judgment for defendants because investors presented sufficient evidence for a jury to conclude that a medical device did not work as well as defendants claimed.

- ***In re Wells Fargo Sec. Litig.***, 12 F.3d 922 (9th Cir. 1993). *Wells Fargo* is a leading federal appellate decision on pleading accounting fraud, sustaining investors' allegations that a bank misrepresented the adequacy of its loan-loss reserves.

- ***Krangel v. Gen. Dynamics Corp.***, 968 F.2d 914 (9th Cir. 1992). The Ninth Circuit dismissed defendants' appeal from a district court's Order upholding plaintiff investors' choice of forum by remanding the matter to the state court.

- ***Colan v. Mesa Petroleum, Co.***, 951 F.2d 1512 (9th Cir. 1991). In a shareholder derivative action, the Ninth Circuit held that exchange of common stock for debt securities was a "sale" subject to the Securities Exchange Act of 1934's regulation of short-swing profits.

- ***In re Apple Computer Sec. Litig.***, 886 F.2d 1109 (9th Cir. 1989). The Ninth Circuit reversed summary judgment for defendants, holding that investors could proceed to trial on claims that a company's representations about its new disk drive were misleading because they failed to disclose serious technical problems.

- ***Blake v. Dierdorff***, 856 F.2d 1365 (9th Cir. 1988). The Ninth Circuit reversed a district court's dismissal of claims for fraud brought against a corporation's directors and its lawyers.

- ***Mosesian v. Peat, Marwick, Mitchell & Co.***, 727 F.2d 873 (9th Cir. 1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for §10(b) suits that are favorable to investors.

ADDITIONALLY, IN THE CONTEXT OF SHAREHOLDER DERIVATIVE ACTIONS, Lerach Coughlin attorneys have been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Three recent cases in which such changes were made include:

- ***Teachers' Retirement Sys. of Louisiana v. Occidental Petroleum Corp.***, Case No. BC185009 (Cal. Super. Ct.). As part of the settlement, corporate governance changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee.

- ***In re Sprint Shareholder Litig.***, Case No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) In connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions, which, among other things, established a truly independent Board of Directors and narrowly defined "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis.

- ***Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.***, Case No. H-02-0410 (S.D. Tex.). Groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; and creation and appointment of lead independent director with authority to set up board meetings.

## Insurance

- ***Lebrilla v. Farmers Group, Inc.***, 119 Cal. App. 4th 1070 (2004). Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest automobile insurers in California. The case involves Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- ***Dehoyos v. Allstate Corp.***, 345 F.3d 290 (5th Cir. 2003), *cert. denied*, 2004 U.S. LEXIS 3088 (Apr. 26, 2004). The Fifth Circuit Court of Appeals held that claims under federal civil rights statutes involving the sale of racially discriminatory insurance policies based upon the use of credit scoring did not interfere with state insurance statutes or regulatory goals and were not preempted under the McCarran-Ferguson Act. Specifically, the Appellate Court affirmed the district court's ruling that the McCarran-Ferguson Act does not preempt civil-rights claims under the Civil Rights Act of 1866 and the Fair Housing Act for racially discriminatory business practices in the sale of automobile and homeowners insurance. The U.S. Supreme Court denied defendants' petition for certiorari and plaintiffs can now proceed with their challenge of defendants' allegedly discriminatory credit scoring system used in pricing of automobile and homeowners insurance policies.

- ***In re Monumental Life Ins. Co.***, 345 F.3d 408, (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances."

- ***Moore v. Liberty Nat'l Life Ins. Co.***, 267 F.3d 1209 (11th Cir. 2001). The Eleventh Circuit affirmed the district court's denial of the defendant's motion for judgment on the pleadings, rejecting contentions that insurance policyholders' claims of racial discrimination were barred by Alabama's common law doctrine of repose. The Eleventh Circuit also rejected the insurer's argument that the McCarran-Ferguson Act mandated preemption of plaintiffs' federal civil rights claims under 42 U.S.C. §§1981 and 1982.

- ***Massachusetts Mutual Life Ins. Co. v. Superior Court***, 97 Cal. App. 4th 1282 (2002). The California Court of Appeal affirmed a trial court's Order certifying a class in an action by purchasers of so-called "vanishing premium" life-insurance policies who claimed violations of California's consumer-protection statutes. The Court held that common issues predominate where plaintiffs allege a uniform failure to disclose material information about policy dividend rates.

## Consumer Protection

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The Court rejected defense contentions that such misconduct was protected by the First Amendment.

- ***West Corp. v. Superior Court***, 116 Cal. App. 4th 1167 (2004). The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents. Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- ***Spielholz v. Superior Court***, 86 Cal. App. 4th 1366 (2d Dist. 2001). The California Court of Appeal held that false advertising claims against a wireless communications provider are not preempted by the Federal Communications Act of 1934.

- ***Day v. AT & T Corp.***, 63 Cal. App. 4th 325 (1998). The California Court of Appeal held that an action which seeks only to enjoin misleading or deceptive practices in the advertising of telephone rates does not implicate the federal filed-rate doctrine, and can proceed under Cal. Bus. & Prof. Code §§17200 and 17500. The Court also held that the claims were not preempted by the Federal Communications Act, that the California Public Utilities Commission does not have exclusive jurisdiction, that the doctrine of primary jurisdiction did not compel dismissal or stay of the action, and that the plaintiffs were not required to exhaust their administrative remedies.

- ***Mangini v. R.J. Reynolds Tobacco Co.***, 7 Cal. 4th 1057 (1994). The California Supreme Court upheld allegations that a cigarette manufacturer committed an unlawful business practice by targeting minors with its advertising. It flatly rejected the manufacturer's contention that the action was preempted by federal cigarette labeling laws.

- ***Jordan v. Dep't of Motor Vehicles***, 75 Cal. App. 4th 449 (1999). The California Court of Appeal invalidated a non-resident vehicle "smog impact" fee imposed on out-of-state autos being registered for the first time in California, finding that the fee violated the Interstate Commerce Clause of the U.S. Constitution.

- ***Clothesrigger, Inc. v. GTE Corp.***, 191 Cal. App. 3d 605 (1987). The California Court of Appeal reversed the trial court's decision refusing to apply California Law to the claims of nonresident plaintiffs. In reversing the lower court's ruling, the Court found that California Law may constitutionally apply to the claims of proposed nationwide class members who are not residents of California, provided there are significant contacts to the claims asserted by each member.

- ***Lazar v. Hertz Corp.***, 143 Cal. App. 3d 128 (1983). The California Court of Appeal ordered a consumer class certified in an Opinion that significantly broadened the right of injured consumers to bring class actions.

- ***Barr v. United Methodist Church***, 90 Cal. App. 3d 259 (1979). The California Court of Appeal rejected constitutional defenses to an action for civil fraud and breach of contract committed by religiously affiliated defendants.

## Antitrust

- ***Law v. NCAA***, 134 F.3d 1010 (10th Cir. 1998). The Tenth Circuit upheld summary judgment on liability for plaintiffs in college coaches' antitrust action against the National Collegiate Athletic Association on the issue of antitrust liability under §1 of the Sherman Antitrust Act, 15 U.S.C. §1 (plaintiffs subsequently prevailed on a damages trial). It also upheld the district court's Order permanently enjoining the NCAA from enforcing the "restricted earnings coach" rule, through which NCAA member institutions limited the salary of certain coaches to $12,000 during the academic year.

- ***In re NASDAQ Market-Makers Antitrust Litig.***, 172 F.R.D. 119 (S.D.N.Y. 1997). In a case where plaintiffs alleged that approximately 30 NASDAQ market-makers engaged in a conspiracy to restrain or eliminate price competition, the District Court certified a class of millions of investors – including institutional investors to be represented by five public pension funds.

- ***In re Disposable Contact Lens Antitrust Litig.***, 170 F.R.D. 524 (M.D. Fla. 1996). Plaintiff contact lens purchasers alleged that defendant manufacturers conspired on a nationwide basis to eliminate competition and maintain artificially inflated prices for replacement contact lenses. The District Court denied defendant manufacturers' motion to dismiss plaintiffs' Clayton Act claims and granted their motion for class certification, finding that plaintiffs' vertical–conspiracy evidence was general to the class and provided a colorable method of proving impact on the class at trial.

- ***In re Currency Conversion Fee Antitrust Litig.***, 265 F. Supp. 2d 385 (S.D.N.Y. 2003). In a case consolidating more than 20 putative class actions, plaintiff credit card holders alleged that two credit-card networks, Visa and MasterCard, and their member banks, conspired to fix the foreign-currency conversion fees they charged. The District Court found that plaintiffs pleaded facts sufficient to permit the inference of an antitrust conspiracy, denying defendants' motion to dismiss the antitrust allegations.

- ***Pharmacare v. Caremark***, 965 F. Supp. 1411 (D. Haw. 1996). The District Court denied defendant's motion to dismiss plaintiffs' Robinson-Patman Act claim in a case where the largest company in the alternate-site infusion therapy industry had pleaded guilty to mail fraud for making improper payments to physicians in exchange for their referrals of patients. Plaintiffs, defendant's competitors, alleged that they suffered injury as a result of defendant's agreements, which violated the anti-kickback provisions of the Clayton Act, §2(c) as amended by the Robinson-Patman Act, 15 U.S.C. §13(c).

# THE FIRM'S PARTNERS

**WILLIAM S. LERACH** is widely recognized as one of the leading securities lawyers in the United States. He has headed the prosecution of hundreds of securities class and stockholder derivative actions resulting in recoveries for defrauded shareholders amounting to billions of dollars. Mr. Lerach has been the subject of considerable media attention and is a frequent commentator on securities and corporate law, as well as a frequent lecturer. He represents numerous public and multi-employer pension funds in corporate securities matters.

He is the author of *Plundering America: How American Investors Got Taken for Trillions by Corporate Insiders - The Rise of the New Corporate Kleptocracy*, 8 Stanford J. of Law, Bus. and Fin. 1 (2002); *Why Insiders Get Rich, and the Little Guy Loses*, L.A. Times, Jan. 20, 2002; *The Chickens Have Come Home to Roost: How Wall Street, the Big Accounting Firms and Corporate Interests Chloroformed Congress and Cost America's Investors Trillions; Achieving Corporate Governance Enhancements Through Litigation*, keynote address to Council of Institutional Investors spring meeting, Mar. 27, 2001; *The Private Securities Litigation Reform Act of 1995 - 27 Months Later: Securities Class Action Litigation Under The Private Securities Litigation Reform Act's Brave New World*, Washington U. L. Rev., Vol. 76, No. 2 (1998); *An Alarming Decline In the Quality of Financial Reporting* (unpublished paper presented to 7th Annual BusinessWeek CFO Forum (June 1998); co author of *Civil RICO in Shareholders Suits Involving Defense Contractors* in Civil RICO Practice: Causes of Action, published by John Wiley & Sons, Inc. (1991); *The Incorporation Trap: How Delaware Has Destroyed Corporate Governance* (unpublished paper presented to the Council of Institutional Investors (1990)); *Securities Class Actions and Derivative Litigations Involving Public Companies: A Plaintiff's Perspective*, ALI/ABI, Civil Practice and Litigation in Federal and State Courts

(1985), ABA Fall Meeting (1985) and PLI Securities Litigation, Prosecution and Defense Strategies (1985); *Alternative Approaches for Awarding Attorneys' Fees in Federal Court Litigation: It's Time to Unload the Lodestar* (unpublished paper presented to the Ninth Circuit Judicial Conference (1984)); *Class Action and Derivative Suits in the Aftermath of Control Contests, Mergers and Acquisitions: Choice of Forum and Remedies; Attorney/Client Privilege in Class and Derivative Cases*, ABA 1984 Annual Meeting (1984); *Class Actions: Plaintiffs' Perspectives, Tactics and Problems*, ALI/ABA, Civil Practice and Litigation in Federal and State Courts (1984); *Life After Huddleston: Streamlining and Simplification of the Securities Class Action*, 7 Class Action Reports 318 (1982). He is also the author of *Termination of Class Actions: The Judicial Role*, McGough & Lerach, 33 U. Pitt L. Rev. 446 (1972); *Class and Derivative Actions Under the Federal Securities Laws* (1980 Regents of the University of California).

Mr. Lerach is chief counsel in many of the largest and highest profile securities class action and corporate derivative suits in recent years, including *Enron*, *Dynegy*, *Qwest* and *WorldCom*. He is listed in the "Best Lawyers in America" and is a Master of the American Inns of Court. Mr. Lerach has been the President of the National Association of Securities and Commercial Lawyers (NASCAT), a national group of attorneys concentrating in commercial and securities litigation. Mr. Lerach is a member of the Editorial Board of Class Action Reports and frequently lectures on class and derivative actions, accountants' liability, and attorneys' fees, and has been a guest lecturer at Stanford University, University of California at Los Angeles and San Diego, University of Pittsburgh, San Diego State University and at the Council of Institutional Investors and the International Corporate Governance Network. He is also a member of

the American Law Institute faculty on Federal and State Class Action Litigation.

Mr. Lerach received his Bachelor of Arts degree from the University of Pittsburgh in 1967 and his Juris Doctor degree in 1970 where he graduated second in his class, *magna cum laude*, and was a member of the Order of the Coif. Mr. Lerach was admitted to the Pennsylvania Bar in 1970 and to the California Bar in 1976. Mr. Lerach was a partner with Pittsburgh firm Reed Smith Shaw & McClay before moving to California. Mr. Lerach serves as Chairman of Lerach Coughlin. He is a member of the Pennsylvania and California Bar Associations and has been admitted to practice before numerous federal and state courts. He is a member of the ABA Litigation Section's Committee on Class Actions and Derivative Skills.

Mr. Lerach has testified before federal and state legislative committees concerning corporate governance and securities matters and is frequently quoted in the national media regarding corporate issues.

Mr. Lerach was honored by President Clinton who appointed him to be a member of the United States Holocaust Memorial Council.

**PATRICK J. COUGHLIN** is the firm's Chief Trial Counsel, and has been lead counsel for several major securities matters, including one of the largest class action securities cases to go to trial, *In re Apple Computer Sec. Litig.*, Case No. C-84-20148(A)-JW (N.D. Cal.). Mr. Coughlin has argued in the United States Supreme Court on behalf of shareholders, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), in which an important decision was issued by the high court concerning loss causation in securities cases. Although the Court overruled established 9th Circuit precedent, the decision is widely regarded as a favorable one for investors alleging fraud.

Formerly, Mr. Coughlin was an Assistant United States Attorney in the District of Columbia and the Southern District of California, handling complex white collar fraud matters. During this time, Mr. Coughlin helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown, et al.*, Case No. 86-3056-SWR, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman, et al.*, Case No. 87-0676-K.

Mr. Coughlin's recent trials involving securities violations include cases against Wells Fargo and California Amplifier. Cases that settled on the eve of trial include cases against Alcatel and America West. Throughout his career, Mr. Coughlin has tried more than 50 jury and non-jury trials. Mr. Coughlin tried one of the largest private RICO trials against the major tobacco companies on behalf of hundreds of thousands of Ohio Taft-Hartley health and welfare fund participants. Mr. Coughlin also helped end the Joe Camel ad campaign, a cartoon ad campaign that targeted children and secured a $12.5 billion recovery for the Cities and Counties of California in the landmark 1998 state settlement with the tobacco companies.

**JOHN J. STOIA, JR**. received his Bachelor of Science degree from the University of Tulsa in 1983. While working on his degree, Mr. Stoia was elected President of the National Political Science Honor Society and graduated with highest honors. In 1986, Mr. Stoia received his Juris Doctor degree from the University of Tulsa and graduated in the top of his class.

In 1987, Mr. Stoia graduated from the Georgetown University Law Center in Washington, D.C., receiving his Masters of Law in Securities Regulation. Thereafter, Mr. Stoia served as an enforcement attorney with the U.S. Securities and Exchange Commission. Mr. Stoia is one of the founding partners of Lerach Coughlin.

Mr. Stoia worked on numerous nationwide complex securities class actions, including *In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Mr. Stoia was a member of plaintiffs' trial team which obtained verdicts against Mr. Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

Mr. Stoia was involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s. Mr. Stoia was actively involved in cases against, among others, Prudential, New York Life, Transamerica Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company.

Mr. Stoia was also involved in numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century. Mr. Stoia was lead counsel in *McNeil, et al., v. Am. Gen. Life Ins. and Accident Ins. Co.*, the first major settlement involving discrimination claims which resulted in a $234 million recovery for class members. Mr. Stoia resolved other race-based insurance cases, including *Brown v. United Life Ins. Co.* ($40 million), *Morris v. Life Ins. Co. of Georgia* ($55 million) and *Thompson v. Metropolitan Life* ($145 million).

Mr. Stoia currently represents numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of the major financial scandals, including WorldCom and AOL-Time Warner.

Mr. Stoia is a frequent lecturer at ALI-ABA, Practicing Law Institute and American Trial Lawyers Association seminars and conferences:

Speaker: *ALI-ABA Program: Life and Health Insurance Litigation*; Co-chair, *ALI-ABA Program: Financial Services and Insurance Industry Litigation*; Speaker, *ATLA Winter Convention – Securities Fraud: Rights and Remedies of Shareholders*; Speaker, *ATLA Annual Convention – Insurance Law Section*, Panel: Broker/Dealer Liability; Speaker, *ACI Consumer Finance Class Actions Conference*; Speaker, Barreau du Quebec Class Action Seminar.

PAUL J. GELLER received his Bachelor of Science degree in Psychology from the University of Florida, where he was a member of the University Honors Program. Mr. Geller then earned his Juris Doctor degree, with highest honors, from Emory University School of Law. At Emory, Mr. Geller was an Editor of the *Law Review*, was inducted into the Order of the Coif legal honor society, and was awarded multiple American Jurisprudence Book Awards for earning the highest grade in the school in a dozen courses.

After spending several years representing blue chip companies in class action lawsuits at one of the largest corporate defense firms in the world, Mr. Geller was a founding partner and head of the Boca Raton offices of the national class action boutiques Cauley Geller Bowman & Rudman, LLP and Geller Rudman, PLLC. In June 2004, through a merger of Lerach Coughlin and Geller Rudman, PLLC, Mr. Geller opened the Boca Raton, Florida office of the firm.

In July 2002, Mr. Geller was named by the *National Law Journal* as one of the nation's "40 Under 40" – an honor bestowed upon 40 of the country's top young litigators. In July 2003, Mr. Geller was featured in *Florida Trend* magazine and the *South Florida Business Journal* as one of Florida's top lawyers.

Mr. Geller is rated AV by Martindale Hubbell (the highest rating available) and has served as lead or co-lead counsel in a majority of the

securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($8.5 million settlement); *Prison Realty Trust* (co-lead derivative counsel; total combined settlement of over $120 million), and *Intermedia Corp.* ($38 million settlement). Mr. Geller is currently one of the court-appointed lead counsel in cases involving the alleged manipulation of the asset value of some of the nations largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (S.D.N.Y.); *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.), and *In re Eaton Vance Sec. Litig.*, Case No. C.A. No. 01-10911 (D. Mass.). Mr. Geller is also heavily involved in corporate governance litigation. For example, Mr. Geller represented a shareholder of Applica, Inc. who was concerned with allegedly reckless acquisitions made by the company. Mr. Geller and his partners secured a settlement that required Applica to establish a new independent acquisitions committee charged with conducting due diligence and approving future acquisitions, even though such a committee is not required by SEC regulations. In another corporate governance lawsuit, Mr. Geller and his co-counsel challenged the independence of certain members of a special committee empaneled by Oracle Corp. to look into certain stock sales made by its Chairman and Chief Executive Officer, Larry Ellison. After Delaware Chancery Court Vice Chancellor Leo E. Strine issued an Order agreeing that the special committee was "fraught with conflicts," the *Wall Street Journal* called the decision "one of the most far-reaching ever on corporate governance."

Mr. Geller has also successfully represented consumers in class action litigation. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement), and was personal counsel to one of the lead plaintiffs

in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

During the past few years, several of Mr. Geller's cases have received regional and national press coverage. Mr. Geller has appeared on CNN's Headline News, CNN's Moneyline with Lou Dobbs, ABC, NBC and FOX network news programs. Mr. Geller is regularly quoted in the financial press, including the *New York Times*, the *Wall Street Journal*, the *Washington Post* and *Business Week*.

Mr. Geller has been or is a member of the Association of Trial Lawyers of America, the Practicing Law Institute, the American Bar Association, the Palm Beach County Bar Association (former Member of Bar Grievance Committee) and the South Palm Beach County Bar Association (former Co-Chair of Pro Bono Committee).

**SAMUEL H. RUDMAN** received his Bachelor of Arts degree in Political Science from Binghamton University in 1989 and earned his Juris Doctor degree from Brooklyn Law School in 1992. While at Brooklyn Law School, Mr. Rudman was a Dean's Merit Scholar and a member of the *Brooklyn Journal of International Law* and the Moot Court Honor Society.

Upon graduation from law school, Mr. Rudman joined the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney. In this position, Mr. Rudman was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class

actions and also handled several white-collar criminal defense matters.

Since joining the firm, Mr. Rudman has been responsible for the investigation and initiation of securities and shareholder class actions. In addition, Mr. Rudman developed a focus in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in this area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**DARREN J. ROBBINS** received his Bachelor of Science and Master of Arts degrees in Economics from the University of Southern California. Mr. Robbins received his Juris Doctor degree from Vanderbilt Law School, where he served as the Managing Editor of the *Vanderbilt Journal of Transnational Law.*

Mr. Robbins oversees Lerach Coughlin's merger and acquisition practice. Mr. Robbins has extensive experience in federal and state securities class action litigation. Mr. Robbins served as one of the lead counsel in the *In re Prison Realty Sec. Litig.* ($120+ million recovery), *In re Dollar Gen. Sec. Litig.* ($172.5 million recovery) and *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Hanover Compressor Co.* ($85+ million recovery). Mr. Robbins currently represents institutional and individual investors in securities actions in state and federal courts across the country, including The Regents of the University of California in the *Enron* litigation and numerous public pension funds in the *WorldCom* bond litigation.

Mr. Robbins is a frequent speaker at conferences and seminars concerning securities matters and shareholder litigation across the country.

**KEITH F. PARK** graduated from the University of California at Santa Barbara in 1968 and from the Hastings College of Law of the University of California in 1972.

Mr. Park is responsible for the recoveries in more than 1,000 securities class actions, including actions involving: Dollar General ($162 million recovery); Mattel ($122 million recovery); Prison Realty ($105 million recovery); Honeywell (in addition to the $100 million recovery, obtained Honeywell's agreement to adopt significant corporate governance changes relating to compensation of senior executives and directors, stock trading by directors, executive officers and key employees, internal and external audit functions, and financial reporting and board independence); Sprint (in addition to $50 million recovery, obtained important governance enhancements, including creation of "Lead Independent Director" and expensing of stock options); Hanover Compressor (on top of $85 million recovery, obtained the following governance enhancements, among others: direct shareholder nomination of Board and mandatory rotation of audit firm); 3COM ($259 million recovery); Chiron ($43 million recovery); MedPartners ($56 million recovery); NME ($60.75 million recovery); and TCI ($26.5 million recovery).

He is admitted to practice in California and New York.

**HELEN J. HODGES** received her Bachelor of Science degree in accounting from Oklahoma State University in 1979. While attending Oklahoma State, Ms. Hodges obtained her private pilot's license and in 1980 was a member of Oklahoma State's flying team, which won top honors at the National Intercollegiate Flying Association competition. Ms. Hodges became a certified public accountant in 1982 and received her Juris Doctor degree from the University of Oklahoma in 1983, where she was the Managing Editor of the *Law Review.* She was

admitted to the State Bars of Oklahoma in 1983 and California in 1987.

Ms. Hodges was a staff accountant with Arthur Andersen & Co. and served as the law clerk for the *Penn Square* cases in the Western District of Oklahoma. Ms. Hodges has been involved in numerous securities class actions, including: *Knapp v. Gomez*, Civ. No. 87-0067-H(M) (S.D. Cal.), in which a plaintiffs' verdict was returned in a Rule 10b-5 class action; *National Health Labs*, which was settled for $64 million; and *Thurber v. Mattel*, which was settled for $122 million.

**REED R. KATHREIN** is a partner in the San Francisco office of Lerach Coughlin. Mr. Kathrein received his Bachelor of Arts degree from the University of Miami, *cum laude*, in 1974 and received his Juris Doctor degree in 1977. He served as Editor-in-Chief of the *International Law Journal*. For the past 15 years, he has focused his practice on complex and class action litigation, principally involving securities or consumer fraud. He was lead counsel in numerous state as well as federal court actions around the country, including co-lead counsel in the *In re 3Com Sec. Litig.*, which settled for $259 million.

Mr. Kathrein publishes and lectures extensively in the fields of litigation, consumer and securities law, class actions, and international law. He annually co-chairs the Executive Enterprises program for corporate officers and counsel entitled, "Dealing With Analysts and the Press." He has spoken to the American Bar Association, the American Business Trial Lawyers Association, the Consumer Attorneys of California, the Practicing Law Institute, the Securities Law Institute, the National Investor Relations Institute, state and local bar groups, private seminar organizations and corporations. He testified before the Senate Foreign Relations Committee on behalf of the American Bar Association in favor of advice and consent to ratification of treaties on international sales, arbitration, evidence and service of process. He testified before the California Assembly and Senate Committees on Y2K litigation, the unfair trade practice act and changes in the business judgment rule. He actively fought the passage of the Private Securities Litigation Reform Act of 1995 and the Securities Litigation Uniform Standard Act of 1998. He worked behind the scenes to shape the Sarbanes–Oxley Act of 2002 on corporate responsibility and accountability.

He served as chairman of the Private International Law Committee of the American Bar Association from 1984-1990, as a director and officer of the International Business Counsel Mid-America from 1983-1988, where he also chaired the policy committee. He acted as an advisor to the U.S. State Department's Advisory Committee on Private International Law from 1984-1990. He is a member of the executive committee of the National Association of Securities and Commercial Law Attorneys, and since 1998 has been a member of the Board of Governors of the Consumer Attorneys of California.

Formerly, Mr. Kathrein was a partner in the Chicago law firm Arnstein & Lehr, where he represented national and international corporations in litigation involving antitrust, commercial, toxic tort, employment and product and public liability disputes. Mr. Kathrein graduated from the University of Miami in 1977, where he received his Bachelor of Arts degree, *cum laude*. He served as Editor-in-Chief of the *International Law Journal*. He is admitted to the Bar of the States of Illinois (1977), Florida (1978) and California (1989).

**ERIC ALAN ISAACSON** received his A.B. *summa cum laude* from Ohio University in 1982. He earned his Juris Doctor with high honors from the Duke University School of Law in 1985 and was elected to the Order of the Coif. Mr. Isaacson served as a Note and Comment Editor for the *Duke Law Journal*, and in his third year of law school became a member of the Moot

Court Board. After graduation, Mr. Isaacson clerked for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit.

In 1986, Mr. Isaacson joined the litigation department of O'Melveny & Myers, where his practice included cases involving allegations of trademark infringement, unfair business practices and securities fraud. He served as a member of the trial team that successfully prosecuted a major trademark infringement action.

Mr. Isaacson has taken part in prosecuting many securities fraud class actions. He was a member of the plaintiffs' trial team in *In re Apple Computer Sec. Litig.*, Case No. C 84-20198(A)-JW (N.D. Cal.).

Since the early 1990s, his practice has focused on appellate matters in cases before the California Courts of Appeal, the California Supreme Court, the United States Court of Appeals and the United States Supreme Court. *See, e.g., In re Daou Sys., Inc., Sec. Litig.*, 411 F.3d 1006 (9th Cir. 2005); *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844 (7th Cir. 2004); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir. 1999); *Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996); *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995); *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057 (1994).

Mr. Isaacson's publications include: *What's Brewing in Dura?* (coauthored with Patrick J. Coughlin and Joseph D. Daley), Loyola University Chicago Law Journal (publication forthcoming in 2005); *Duped Investors See "Dura" as Diamond in the Rough*, (coauthored with Patrick J. Coughlin and Joseph D. Daley), Los Angeles Daily Journal, July 5, 2005, p. 8; *Pleading Scienter Under Section 21D(b)(2) of the Securities Exchange Act of 1934: Motive, Opportunity, Recklessness and the Private Securities Litigation Reform Act of 1995* (co-

authored with William S. Lerach), 33 San Diego Law Rev. 893 (1996); *Securities Class Actions in the United States* (co-authored with Patrick J. Coughlin), in William G. Horton & Gerhard Wegen, editors, *Litigation Issues in the Distribution of Securities: An International Perspective* 399 (Kluwer International/ International Bar Association, 1997); *Pleading Standards Under the Private Securities Litigation Reform Act of 1995: The Central District of California's Chantal Decision* (co-authored with Alan Schulman & Jennifer Wells), Class Action & Derivative Suits, Summer 1996, at 14; *Commencing Litigation Under the Private Securities Litigation Reform Act of 1995* (co-authored with Patrick J. Coughlin), in Jay B. Kasner & Bruce G. Vanyo, editors, *Securities Litigation 1996*, 9-22 (Practicing Law Institute 1996); *The Flag Burning Issue: A Legal Analysis and Comment*, 23 Loyola of Los Angeles Law Rev. 535 (1990).

Mr. Isaacson also has received awards for *pro bono* work from the California Star Bar and the San Diego Volunteer Lawyer Program. He has filed *amicus curiae* briefs on behalf of a variety of organizations, including the Social Justice Committee and Board of Trustees of the First Unitarian Universalist Church of San Diego. Since January 2004, Mr. Isaacson has served as a member of the Board of Directors – and since March 2005 as Board President – of the San Diego Foundation for Change, an organization dedicated to funding and supporting community-led efforts that promote social equality, economic justice, and environmental sustainability. Its grantees have included groups as diverse as Activist San Diego, the Interfaith Committee for Worker Justice, and the San Diego Audubon Society.

Mr. Isaacson has been a member of the California Bar since 1985. He is also admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits,

and before all federal district courts in the State of California.

**MARK SOLOMON** earned his law degrees at Trinity College, Cambridge University, England (1985), Harvard Law School (1986), and the Inns of Court School of Law, England (1987). He is admitted to the Bar of England and Wales (Barrister), Ohio and California, as well as to various U.S. Federal District and Appellate Courts. Mr. Solomon regularly represents both U.S. - and U.K. - based pension funds and asset managers in class and non-class securities litigation.

Before studying law in England, Mr. Solomon served as a British police officer. After qualifying as a barrister, he first practiced at the international firm Jones Day in Cleveland, Ohio (1987-1990), followed by practice at the Los Angeles office of New York's Stroock & Stroock & Lavan (1990-1993). At those firms, Mr. Solomon's representations included the defense of securities fraud and other white-collar crimes, antitrust, copyright, commercial and real estate litigation and reinsurance arbitration. While practicing in Los Angeles, acting for plaintiffs, Mr. Solomon took to trial and won complex commercial contract and real estate actions in the Orange County and Los Angeles Superior Courts, respectively. Thereafter, Mr. Solomon became a founding partner of Lerach Coughlin in 2004.

Since 1993, Mr. Solomon has spearheaded the prosecution of many significant cases. He has obtained substantial recoveries and judgments for plaintiffs through settlement, summary adjudications and trial. He litigated, through trial, *In re Helionetics*, where he and his trial partner, Paul Howes, won a unanimous $15.4 million jury verdict in November 2000. He has successfully led many other cases, among them: *Schwartz v. TXU et al.* ($150 million recovery plus significant corporate governance reforms); *In re Informix Corp. Sec. Litig.* ($142 million recovery); *Rosen, et al. v. Macromedia, Inc.* ($48 million recovery); *In re Community*

*Psychiatric Ctrs Sec. Litig.* ($42.5 million recovery); *In re Advanced Micro Devices Sec. Litig.* ($34 million recovery); *In re Tele-Communications, Inc. Sec. Litig.* ($33 million recovery); *In re Home Theater Sec. Litig.* ($22.5 million judgment); *In re Diamond Multimedia Sec. Litig.* ($18 million recovery); *Hayley, et al. v. Parker, et al.* ($16.4 million recovery); *In re Gupta Corp. Sec. Litig.* ($15 million recovery); *In re Radius Sec. Litig.*; *In re SuperMac Tech., Inc. Sec. Litig.* (combined recovery of $14 million); *Markus, et al. v. The North Face, et al.* ($12.5 million recovery); *In re Brothers Gourmet Coffees, Inc. Sec. Litig.* ($9 million recovery); *Anderson, et al. v. EFTC, et al.* ($9 million recovery); *In re Flir Sys. Inc. Sec. Litig.* ($6 million recovery); *In re Nike, Inc. Sec. Litig.* ($8.9 million recovery); *Sharma v. Insignia* ($8 million recovery); and *In re Medeva Sec. Litig.* ($6.75 million recovery).

Mr. Solomon chaired the American Bar Association Directors and Officers Liability Sub-Committee and the Accountants Liability Sub-Committee between 1996 and 2001.

**RANDI D. BANDMAN** is a partner at Lerach Coughlin whose responsibilities include the management of the Los Angeles office and the firm's Institutional Investor Department. Ms. Bandman received her Juris Doctor degree from the University of Southern California in 1989 and her Bachelor of Arts degree in English from the University of California at Los Angeles in 1986. Having been associated with the Lerach Coughlin lawyers for more than 14 years, Ms. Bandman's practice has focused on securities and consumer class actions in both state and federal court. She has represented shareholders of companies in industries as diverse as aircraft manufacturing, battery technology, and computer software. These cases, which yielded significant recoveries for the plaintiffs, were against such companies as: WorldCom ($650 million); National Health Labs ($64 million); Sybase ($28.5 million) and Unocal ($47.5 million). Ms. Bandman was responsible for running one of the largest class actions in

the country over a four-year period against the Boeing Company, which settled for more than $90 million. Ms. Bandman was also an early member of the team that directed the prosecution of the cases against the tobacco companies.

Using her extensive experience in asserting claims for injured investors, Ms. Bandman lectures and advises multi-employer and public pension funds both domestically and internationally on their options for seeking redress for losses due to fraud sustained in their portfolios. Ms. Bandman is currently interfacing with numerous public and Taft-Hartley pension funds, including those workers for various States and Municipalities, the Entertainment Industry, Sheetmetal Workers, Construction, Air Conditioning, Food and Hospitality, and Plumbers and Teamsters.

Ms. Bandman has served as a lecturer on numerous matters concerning securities litigation to attorneys for continuing legal education, as well as a panelist for the Practicing Law Institute.

**THEODORE J. PINTAR** received his Bachelor of Arts degree from the University of California at Berkeley in 1984 where he studied Political Economies of Industrial Societies. Mr. Pintar received his Juris Doctor degree from the University of Utah College of Law in 1987, where he was Note and Comment Editor of the *Journal of Contemporary Law* and the *Journal of Energy Law and Policy*. Formerly, Mr. Pintar was associated with the firm of McKenna, Conner & Cuneo in Los Angeles, California, where he focused in commercial and government contracts defense litigation. Mr. Pintar is co-author of *Assuring Corporate Compliance with Federal Contract Laws and Regulations*, Corporate Criminal Liability Reporter, Vol. 2 (Spring 1988).

Mr. Pintar participated in the successful prosecution of numerous securities fraud class actions and derivative actions, including

participation on the trial team in *Knapp v. Gomez*, Case No. 87-0067-H(M) (S.D. Cal.), which resulted in a plaintiff's verdict. Mr. Pintar also participated in the successful prosecution of numerous consumer class actions, including: (i) actions against major life insurance companies such as Manulife ($555 million settlement value) and Principal Life Insurance Company ($379 million settlement value); (ii) actions against major homeowners insurance companies such as Allstate ($50 million settlement) and Prudential Property and Casualty Co. ($7 million settlement); and (iii) actions against Columbia House ($55 million settlement value) and BMG ($10 million settlement value), a direct marketer of CDs and cassettes.

Mr. Pintar is a member of the State Bar of California and the San Diego County Bar Association.

**JOY ANN BULL** received her Juris Doctor degree, *magna cum laude*, from the University of San Diego in 1988. She was a member of the University of San Diego National Trial Competition Team and the *San Diego Law Review*. Ms. Bull focuses on the litigation of complex securities and consumer class actions. For nine years, Ms. Bull has concentrated her practice in negotiating and documenting complex settlement agreements and obtaining the required court approval of the settlements and payment of attorneys' fees. These settlements include: *In re Dole Shareholders' Litig.*, Case No. BC281949 (Cal. Super. Ct., Los Angeles County) ($172 million recovery plus injunctive relief); *Lindmark v. Am. Express*, Case No. 00-8658-JFW(CWx) (C.D. Cal.) ($38 million cash payment plus injunctive relief); *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 1030 (M.D. Fla.) (cash and benefits package over $90 million plus injunctive relief); *In re LifeScan, Inc. Consumer Litig.*, Case No. C-98-20321-JF(EAI) (N.D. Cal.) ($45 million cash recovery); *In re Bergen Brunswig Corp. Sec. Litig.*, Case No. SACV-99-1305-AHS(ANx) (C.D. Cal.) ($27.9 million cash recovery); *Hall v.*

*NCAA*, Case No. 94-2392-KHV (D. Kan.) ($54.4 million cash recovery); *In re Glen Ivy Resorts, Inc.*, Case No. SD92-16083MG (Banker. Ct. C.D. Cal.) ($31 million cash recovery); and *In re Advanced Micro Devices Sec. Litig.*, Case No. C-93-20662-RPA(PVT) (N.D. Cal.) ($34 million cash recovery).

**BONNY E. SWEENEY** received her Bachelor of Arts degree from Whittier College in 1981 and a Master of Arts degree from Cornell University in 1985. She graduated *summa cum laude* from Case Western Reserve University School of Law in 1988, where she served as an editor of the *Law Review* and was elected to the Order of the Coif.

Formerly, Ms. Sweeney practiced in the litigation department of the Boston law firm of Foley, Hoag & Eliot. Ms. Sweeney concentrates her practice in antitrust and unfair competition litigation. Ms. Sweeney participated in the prosecution of several antitrust and unfair competition cases that have resulted in significant settlements, including: *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.), which settled for $1.027 billion in 1997, the largest antitrust settlement ever; *In re Airline Ticket Comm'n Antitrust Litig.*, MDL No. 1058 (D. Minn.), which settled for more than $85 million in 1996; and *In re LifeScan, Inc. Consumer Litig.*, No. C-98-20321-JF(EAI) (N.D. Cal.), which settled just before trial for $45 million. Ms. Sweeney was also one of the trial counsel for a class of coaches in *Hall v. NCAA*, Case No. 94-2392-KHV (D. Kan.), an antitrust class action that resulted in a $67 million jury verdict in three consolidated cases after a three-week trial.

Ms. Sweeney has served on the Executive Committee of the Antitrust and Unfair Competition Law Section of the California State Bar since 2002 and is currently Vice Chair of Antitrust Programs. She also lectures on California's Unfair Competition Law and antitrust topics. In 2003, Ms. Sweeney was a recipient of the Wiley M. Manuel Pro Bono Services Award and the San Diego Volunteer Lawyer Program Distinguished Service Award.

Ms. Sweeney is admitted to practice in California and Massachusetts, and is a member of the Antitrust Section of the American Bar Association, the Antitrust and Unfair Competition Section of the California Bar Association and the San Diego County Bar Association.

**TRAVIS E. DOWNS III** received his Bachelor of Arts degree in History, *cum laude*, from Whitworth College in 1985, and received his Juris Doctor degree from University of Washington School of Law in 1990. Mr. Downs concentrates his practice in securities class actions and shareholders' derivative actions.

Mr. Downs is responsible for the prosecution and recovery of significant settlements in the following cases: *In re Informix Corp. Sec. Litig.*, Case No. C-97-1289-CRB (N.D. Cal.) ($137.5 million recovery); *In re MP3.com, Inc. Sec. Litig.*, Case No. 00-CV-1873-K(NLS) (S.D. Cal.) ($36 million recovery); *In re Conner Peripherals, Inc. Sec. Litig.*, Case No. C-95-2244-MHP (N.D. Cal.) ($26 million recovery); *In re Silicon Graphics, Inc. II Sec. Litig.*, Case No. 97-4362-SI (N.D. Cal.) ($20.3 million recovery); *In re J.D. Edwards Sec. Litig.*, Case No. 99-N-1744 (D. Colo.) ($15 million recovery); *In re Sony Corp. Sec. Litig.*, Case No. CV-96-1326-JGD(JGx) (C.D. Cal.) ($12.5 million recovery); *In re Veterinary Ctrs. of Am., Inc. Sec. Litig.*, Case No. 97-4244-CBM(MCx) (C.D. Cal.) ($6.75 million recovery); *In re JDN Realty Corp. Derivative Litig.*, Case No. 00-CV-1853 (N.D. Ga.) (obtained extensive corporate governance enhancements); *In re Hollywood Entertainment Corp. Sec. Litig.*, Case No. 95-1926-MA (D. Or.) ($15 million recovery); *In re Legato Sys., Inc. Derivative Litig.*, Case No. 413050 (Cal. Super. Ct., San Mateo Cty.) (obtained extensive corporate governance enhancements); and *In re Flagstar Cos., Inc. Derivative Litig.*, Case No. 736748-7 (Cal. Super.

Ct., Alameda County) (obtained extensive corporate governance enhancements).

Mr. Downs is a member of the Bar of the State of California and is also admitted to practice before the district courts of the Central, Northern and Southern Districts of California. He is also a member of the American Bar Association and the San Diego County Bar Association. Mr. Downs lectures and participates in professional education programs.

**G. PAUL HOWES**, after Marine Corps Vietnam service, received his Bachelor of Arts degree with distinction from the University of New Mexico, was elected to Phi Beta Kappa and Phi Kappa Phi, and was the tympanist for the New Mexico Symphony Orchestra. He received his Juris Doctor degree and Masters in Public Administration from the University of Virginia. He served as a Special Assistant to the Director of the FBI, Judge William H. Webster, and then as a law clerk to Judge Roger Robb, United States Circuit Court of Appeals for the District of Columbia Circuit. He was an ABC News correspondent for the Washington Bureau and then served for 11 years as an Assistant U.S. Attorney for the District of Columbia, primarily prosecuting complex drug organization homicides. He is a member of the New Mexico, District of Columbia and California Bars.

**SPENCER A. BURKHOLZ** received his Bachelor of Arts degree in Economics, *cum laude*, from Clark University in 1985, where he was elected to Phi Beta Kappa, and received his Juris Doctor degree from University of Virginia School of Law in 1989. Mr. Burkholz concentrates his practice in securities class actions, and has recovered settlements in the following cases: *3Com* ($259 million); *Vesta Ins.* ($78 million); *Samsonite* ($24 million); *Emulex* ($39 million); *Mossimo* ($13 million); *Triteal* ($13.8 million); *Price Co.* ($15 million); *Stratosphere Corp.* ($9 million); and *IMP* ($9.5 million).

Mr. Burkholz was also on the trial team in *Long v. Wells Fargo*. Mr. Burkholz is currently representing large public and multi-employer pension funds seeking to recover for their investments in WorldCom bonds. Mr. Burkholz is a member of the California Bar and has been admitted to practice in numerous federal courts throughout the country.

**TIMOTHY G. BLOOD** graduated *cum laude* and with honors in Economics from Hobart College in 1987 and the National Law Center of George Washington University in 1990. He was elected to Phi Beta Kappa, Omicron Delta Epsilon (Economics) and the Moot Court Board (first year honors).

Mr. Blood focuses on consumer fraud and unfair competition litigation with a focus on actions brought by policyholders against life and property and casualty insurers for deceptive sales practices, racial discrimination and systematic failures in claims adjustment. Mr. Blood has been involved in a number of cases that have resulted in significant settlements, including *McNeil v. Am. Gen. Life & Accident Ins. Co.* ($234 million), *Lee v. USLife Corp.* ($148 million), *Garst v. Franklin Life Ins. Co.* ($90.1 million), *In re Gen. Am. Sales Practices Litig.* ($67 million), *Williams v. United Ins. Co. of Am.* ($51.4 million); and *Sternberg v. Apple Computer, Inc.* ($50 million).

Mr. Blood is also responsible for several precedent-setting appellate decisions, including *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070 (2004). Mr. Blood is a frequent lecturer on class action procedure and consumer fraud issues and is a member of the Board of Governors of the Consumer Attorneys of California.

Mr. Blood is admitted to practice in California and in the U.S. Courts of Appeals for the Fifth, Sixth, Eighth, Ninth and Eleventh Circuits and the U.S. District Courts for the Southern, Central, Eastern and Northern Districts of California. He is a member of the San Diego

County and American Bar Associations, the State Bar of California, the Association of Business Trial Lawyers, the Association of Trial Lawyers of America and the Consumer Attorneys of California.

**ARTHUR C. LEAHY** graduated with a Bachelor of Arts degree in Business from Point Loma College in 1987. In 1990, Mr. Leahy graduated *cum laude* and received a Juris Doctor degree from the University of San Diego School of Law, where he served as Managing Editor of the Law Review. While in law school, Mr. Leahy authored an article published in the *San Diego Law Review* and other articles published in another law journal. In addition, he served as a judicial extern for the Honorable J. Clifford Wallace of the U.S. Court of Appeals for the Ninth Circuit. After law school, Mr. Leahy served as a judicial law clerk for the Honorable Alan C. Kay of the U.S. District Court for the District of Hawaii.

For eight years, Mr. Leahy has worked on securities fraud and consumer class actions in which his clients recovered millions of dollars. Mr. Leahy is a member of the California Bar and has been admitted in numerous federal courts throughout the country.

**FRANK J. JANECEK, JR.** received his Bachelor of Science degree in Psychology from the University of California at Davis in 1987, and his Juris Doctor degree from Loyola Law School in 1991. He is admitted to the Bar of the State of California, the district courts for all districts California, and to the U.S. Court of Appeals for the Sixth, Ninth and Eleventh Circuits. For 11 years, Mr. Janecek has practiced in the area of consumer, Proposition 65, taxpayer and tobacco litigation. He has participated as a panelist and a speaker in continuing legal education programs relating to California's Unfair Competition laws, public enforcement tobacco litigation and challenging unconstitutional taxation schemes.

Mr. Janecek litigated several Proposition 65 actions, including *People ex. rel. Lungren v. Superior Court*, 14 Cal. 4th 294 (1996), which was jointly prosecuted with the Attorney General's office. These actions resulted in the recovery of more than $10 million in disgorgement and/or civil penalties and warnings to consumers of their exposure to cancer-causing agents and reproductive toxins. Mr. Janecek chaired several of the litigation committees in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities. Mr. Janecek also handled a constitutional challenge to the State of California's Smog Impact Fee, in the case *Ramos v. Dep't of Motor Vehicles*, Case No. 95AS00532 (Sacramento Super. Ct.). As a result of the *Ramos* litigation, more than a million California residents received full refunds, plus interest, totaling $665 million.

Mr. Janecek is the co-author with Patrick J. Coughlin of "A Review of R.J. Reynolds' Internal Documents Produced in *Mangini v. R.J. Reynolds Tobacco Co.*, No. 939359 - The Case that Rid California and the American Landscape of 'Joe Camel'" (January 1998), which, along with more than 60,000 internal industry documents, was released to the public through Congressman Henry Waxman. He is also the author of *California's Unfair Competition Act and Its Role in the Tobacco Wars* (Fall 1997). Mr. Janecek is a member of the American Bar Association, the California Bar Association, the San Diego County Bar Association and the Consumer Attorneys of California and San Diego.

**DAVID J. GEORGE** earned his Bachelor of Arts degree in Political Science from the University of Rhode Island, *summa cum laude*. Mr. George then graduated at the top of his class at the University of Richmond School of Law. At the University of Richmond, Mr. George was a member of *Law Review*, was the President of the McNeill Law Society/Order of the Coif, and earned numerous academic awards, including outstanding academic performance in each of

his three years there and outstanding graduate.

Before joining Lerach Coughlin, he was a partner in the Boca Raton office of Geller Rudman, PLLC. While at Geller Rudman, Mr. George, a zealous advocate of shareholder rights, has been lead and/or co-lead counsel with respect to various securities class action matters, including *In re Cryo Cell Int'l, Inc. Sec. Litig.* (M.D. Fla.), *In re Gilead Scis. Sec. Litig.* (N.D. Cal.) and *Mobility Electronics Sec. Litig.* (D. Ariz.). Mr. George has also acted as lead counsel in numerous consumer class actions. Before joining Geller Rudman, Mr. George spent more than a decade as a commercial litigator with two of the largest corporate law firms in the United States. During that time, Mr. George aggressively prosecuted and defended a wide array of complex commercial litigation matters, including securities class action matters, non-compete litigation, fraud claims, and real estate-based litigation matters.

Mr. George is licensed to practice law in the state courts of Florida, as well as the United States District Courts for the Southern, Middle and Northern Districts of Florida. He is currently or has been a member of the American Bar Association, the Academy of Florida Trial Lawyers, the Palm Beach County Bar Association and the South Palm Beach County Bar Association.

**SANFORD SVETCOV** is a partner with the Appellate Practice Group of Lerach Coughlin. He has briefed and argued more than 300 appeals in state and federal court, including: *Braxton v. Mun. Court*, 10 Cal. 3d 138 (1973) (First Amendment); *Procunier v. Navarette*, 434 U.S. 555 (1978) (civil rights); *Parker Plaza West Partners v. UNUM Pension & Ins. Co.*, 941 F.2d 349 (5th Cir. 1991) (real estate); *Catellus Dev. Corp. v. United States*, 34 F.3d 748 (9th Cir. 1994) (CERCLA); *United States. v. Hove*, 52 F.3d 233 (9th Cir. 1995) (criminal law); *Kelly v. City of Oakland*, 198 F.3d 779 (9th Cir. 1999) (employment law, same gender sexual

harassment); *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) (securities fraud); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209 (11th Cir. 2001) (civil rights); and *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) (securities fraud).

Mr. Svetcov's professional appellate litigation experience includes securities fraud litigation, CERCLA, CEQA, commercial litigation, Clean Water Act, Civil Rights Act litigation, toxic torts, federal criminal law, California writ practice, employment law and ERISA.

Mr. Svetcov was a partner with the firm of Landels Ripley & Diamond, LLP, in San Francisco, from 1989 to 2000. His extensive legal experience includes service as: Chief, Appellate Section, U.S. Attorney's Office, San Francisco, 1984-1989; Attorney-in-Charge, Organized Crime Strike Force, San Francisco, 1981-1984; Chief Assistant U.S. Attorney, San Francisco, 1978-1981; Deputy Attorney General, State of California, 1969-1977; Legal Officer, U.S. Navy, VT-25, Chase Field, Beeville, Texas, 1966-1969; and Deputy Legislative Counsel, Legislature of California, Sacramento, 1965-1966.

Mr. Svetcov is certified as a Specialist in Appellate Practice by the State Bar of California Board of Legal Specialization. He was selected by the Attorney General for the Department of Justice's John Marshall Award for Excellence in Appellate Advocacy in 1986 and is a member and past President (1998) of the American Academy of Appellate Lawyers, and a member of the California Academy of Appellate Lawyers.

In 1999, Chief Justice Rehnquist appointed Mr. Svetcov to a three-year term on the Federal Appellate Rules Advisory Committee. He is also an ex-officio member of the Ninth Circuit Rules Advisory Committee on Rules and Internal Operating Procedures. His other memberships and service commitments to the legal profession include: the California Academy of Appellate Lawyers; the Bar

Association of San Francisco (Appellate Courts section); the American Bar Association (Appellate Judges Conference) Committee on Appellate Practice; and the Northern California Federal Bar Association, Board of Directors.

Mr. Svetcov earned his Bachelor of Arts degree, *cum laude*, from Brooklyn College in 1961 and his Juris Doctor degree from the University of California at Berkeley in 1964. He is a member of the Bars of the State of California, the U.S. Supreme Court, the Court of Appeals, Fifth, Eighth, Ninth and Eleventh Circuits, and the U.S. District Court, Northern District of California.

For two decades, he as been active as a teacher and lecturer at continuing legal education programs, including those of the ABA Appellate Practice Institutes (1990-2000); the Ninth Circuit Federal Bar Association Appellate Practice Seminar, and the N.I.T.A. Appellate Advocacy Seminar and Fifth Circuit Bar Association Appellate Practice Seminars (1991-1999). He has served as an adjunct professor at Hastings College of Law and an instructor in Appellate Advocacy at the U.S. Attorney General's Advocacy Institute (1980-1989).

Mr. Svetcov is also active in community affairs. He has been a member of the San Francisco Jewish Community Relations Council since 1982, its president from 1991-1992, and during the years 1993-1995, he also served on the Northern California Hillel Council.

**MICHAEL J. DOWD** graduated from Fordham University, *magna cum laude*, with a Bachelor of Arts degree in History and Latin in 1981. While at Fordham, he was elected to Phi Beta Kappa. He earned his Juris Doctor degree from the University of Michigan School of Law in 1981 and entered private practice in New York that same year. He was admitted to practice in New York in 1985 and in California in 1988.

Mr. Dowd served as an Assistant U.S. Attorney in the Southern District of California from 1987-1991 and again from 1994-1998. As an Assistant U.S. Attorney, Mr. Dowd obtained extensive trial experience, including the prosecution of bank fraud, bribery, money laundering and narcotics cases. He is a recipient of the Director's Award for Superior Performance as an Assistant U.S. Attorney. Mr. Dowd has been responsible for prosecuting complex securities cases and obtaining recoveries for investors, including cases involving *Safeskin* ($55 million recovery), *Bergen Brunswig* ($42.5 million recovery), and *P-Com* ($16 million recovery). Mr. Dowd was the lead lawyer for the Lerach Coughlin trial team in *In re AT&T Corp. Sec. Litig.*, which was tried in the District of New Jersey and settled after two weeks of trial for $100 million. Mr. Dowd is currently one of the lead litigators in the firm's *WorldCom* litigation, representing over 70 public and multi-employer pension funds and other financial institutions. Mr. Dowd has also participated in the firm's tobacco and firearms cases.

**DAVID C. WALTON** earned his Bachelor of Arts degree in Accounting from the University of Utah and his Juris Doctor degree from the University of Southern California Law Center in 1993. While there, he was a staff member of the *Southern California Law Review* and a member of the Hale Moot Court Honors Program.

Mr. Walton is a member of the Bar of California. Mr. Walton, a Certified Public Accountant (California, 1992) and Certified Fraud Examiner, who is also fluent in Spanish, focuses on class actions on behalf of defrauded investors, particularly in the area of accounting fraud. He has investigated and participated in the litigation of many large accounting scandals, including Enron, WorldCom, Informix, HealthSouth, Dynegy and Dollar General. In 2003-2004, Mr. Walton served as a member of the California Board of Accountancy which is responsible for

regulating the accounting profession in California.

**RANDALL H. STEINMEYER** earned his Bachelor of Science degree from the University of Southern California in 1993, and his Juris Doctor degree, *cum laude*, from Hamline University School of Law in 1996, where he was a member of the *Hamline Law Review*. He is the author of *The Interrelationship Between NASD Arbitrations and NASD Disciplinary Proceedings*, 281 Practicing Law Institute (1998). Formerly, Mr. Steinmeyer headed the securities litigation department of Reinhardt & Anderson in St. Paul, Minnesota. Mr. Steinmeyer is a member of the Bar of Minnesota and the U.S. District Court for the District of Minnesota. Mr. Steinmeyer is a former securities broker and held a Series 7 license with the National Association of Securities Dealers.

In 2003, he was a guest lecturer at Oxford University on the impact of corporate and broker dealer fraud on the investment community. He also sits on the Board of Directors of the Hedge Fund Association. He has authored numerous articles on the hedge fund industry and offshore financial community.

Mr. Steinmeyer focuses on class actions on behalf of defrauded investors. Mr. Steinmeyer was appointed lead counsel in several large and complex class actions which resulted in the recovery of tens of millions of dollars for aggrieved investors. Mr. Steinmeyer's reported cases include: *Ganesh LLC v. Computer Learning Ctrs.*, 1998 WL 892622 (E.D. Va. 1998); *Gart v. Electroscope*, 1998 WL 757970 (D. Minn. 1998); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398 (D. Minn. 1998); and *In re Transcrypt Int'l Sec. Litig.*, Case No. 4:98CV3099, 1999 U.S. Dist. LEXIS 17540 (D. Neb. Nov. 4, 1999).

**JEFFREY W. LAWRENCE** received his Bachelor of Arts degree, *magna cum laude*, from Tufts University in 1976. In 1979, Mr. Lawrence graduated *magna cum laude* with a Juris

Doctor degree from Boston School of Law. He was a staff member of the *Boston University Law Review* from 1977-78, and its editor from 1978-79.

From September 1979 to September 1980, Mr. Lawrence served as a law clerk to the Honorable Walter Jay Skinner, U.S. District Court, District of Massachusetts. He was admitted to the Massachusetts Bar in 1979, and to the Bar of California in 1991. He is licensed to practice before the U.S. Court of Appeals, First and Ninth Circuits, the U.S. District Court, District of Massachusetts and the Northern District of California.

From 1983-1994, Mr. Lawrence was an Assistant U.S. Attorney, Criminal Division, where he obtained extensive trial experience in white-collar crimes, ranging from money-laundering to stock fraud.

**HENRY ROSEN** obtained his Bachelor of Arts degree in 1984 from the University of California, after attending American College in Paris. In 1988, Mr. Rosen received his Juris Doctor degree from the University of Denver, where he was Editor-in-Chief for the *University of Denver Law Review*. Mr. Rosen served as Judicial Law Clerk to the Honorable Jim R. Carrigan, U.S. District Court, District of Colorado, from 1989 to 1990. He is a member of the firm's Hiring Committee and is also a member of the firm's Technology Committee, which focuses on applications to digitally manage documents produced during litigation and internally generate research files.

Major clients include Minebea Co., Ltd., a Japanese manufacturing company, represented in a securities fraud arbitration against a U.S. investment bank. Mr. Rosen has significant experience prosecuting every aspect of securities fraud class actions and has obtained hundreds of millions of dollars on behalf of defrauded investors. Prominent cases include: *In re Storagetek Sec. Litig.*, Case No. 92-B-750 (D. Colo.); *In re Access HealthNet*

*Sec. Litig.*, Case No. SACV-96-1250-GLT(EEx) and Case No. SACV-97-191-GLT(EEx) (C.D. Cal.); *In re Valence Sec. Litig.*, Case No. C-95-20459-JW(EAI) (N.D. Cal.); *In re J.D. Edwards Sec. Litig.*, Case No. 99-N-1744 (D. Colo.); *In re Bergen Brunswig Sec. Litig.* and *Bergen Brunswig Capital Litig.*, Case No. SACV-99-1462-AHS(ANx) (C.D. Cal.); *In re Advanced Lighting Sec. Litig.*, No. 1:99CV8936 (N.D. Ohio); and *In re Safeskin Sec. Litig.*, Case No. 99cv454-BTM(LSP) (S.D. Cal.).

Mr. Rosen is admitted to the California Bar (1991) and the Colorado Bar (1988). He is a member of the State Bar of California, the American Bar Association (Litigation Section), the Association of Trial Lawyers of America, the California Trial Lawyers of America, California Trial Lawyers Association and the San Diego Trial Lawyers Association.

**RANDALL J. BARON** was born in Albuquerque, New Mexico in 1964. Mr. Baron received his Bachelor of Arts degree from University of Colorado at Boulder in 1987, and his Juris Doctor degree, *cum laude*, from University of San Diego School of Law in 1990. He was a member of the *San Diego Law Review* from 1988-1989. Mr. Baron was admitted to the California Bar in 1990 and the Colorado Bar in 1993. Since 1997, Mr. Baron is licensed to practice in Colorado State Court as well as the U.S. District Court for the Southern, Northern and Central Districts of California, as well as the District of Colorado.

Formerly, Mr. Baron served as a Deputy District Attorney in Los Angeles County. From 1990-1994, he was a trial deputy in numerous offices throughout Los Angeles County, where he tried over 70 felony cases. From 1990-1994, Mr. Baron was part of the Special Investigation Division of the Los Angeles District Attorneys office, where he investigated and prosecuted public corruption cases. He concentrates his practice in securities litigation and actions for breach of fiduciary duty.

**EDWARD P. DIETRICH** was born in White Plains, New York on October 14, 1961. Mr. Dietrich received his Bachelor of Arts degree from Skidmore College in 1983. He received his Juris Doctor degree from George Washington University in 1986 and was elected to Phi Beta Kappa. He was a member of the Moot Court Board. He was admitted to the New York State Bar in 1987. Mr. Dietrich is able to practice in U.S. District Court, Southern and Eastern Districts of New York, U.S. District Court, Northern District of California (1994), California and U.S. District Courts, Central District of California (1995), U.S. District Court, Southern and Eastern Districts of California, U.S. District Court, District of Arizona and U.S. Court of Appeals, Ninth Circuit (1997).

**JACK REISE** earned his Bachelor of Arts degree in History from Binghamton University. He graduated *cum laude* from University of Miami School of Law where he was an Associate Editor on the *University of Miami Inter-American Law Review* and was also the recipient of the American Jurisprudence Book Award in Contracts.

Since he began practicing law, Mr. Reise has been devoted to protecting the rights of those who have been harmed by corporate misconduct. Mr. Reise started his legal career representing individuals suffering the debilitating affects of asbestos exposure back in the 1950s and 1960s.

Mr. Reise has since concentrated his practice on class action litigation, including securities fraud, shareholder derivative actions, consumer protection, unfair and deceptive insurance practices and antitrust. Prior to joining the firm, Mr. Reise was a partner at the law firm of Cauley Geller.

A substantial portion of Mr. Reise's practice is devoted to representing shareholders in actions brought under the federal securities laws. He is currently serving as lead counsel in more than a dozen cases nationwide, including

*Abrams v. Van Kampen Funds*, Case No. 01 C 7538 (N.D. Ill.) (involving a mutual fund that is charged with improperly valuating its net asset value), and *In re NewPower Holdings Sec. Litig.*, Case No. 02 Civ. 1550 (CLB) (S.D.N.Y.), which settled with several of the defendants for $26 million.

Mr. Reise has been admitted to the Florida Bar since 1995. He is also admitted to practice before United States Courts of Appeals for the First, Fourth and Eleventh Circuits, as well as the Southern and Middle District Courts of Florida.

**PAMELA M. PARKER** received her Bachelor of Arts degree in Political Science and French, with a concentration in International Politics, from the State University of New York at Binghamton, and was elected to Phi Beta Kappa. Ms. Parker received a Juris Doctor degree from Harvard Law School, *cum laude,* in 1982. While at Harvard, Ms. Parker was an Articles Editor of the *Civil Rights/Civil Liberties Law Review*. After graduation, she served as a law clerk to the Honorable Frank J. Battisti, Chief Judge of the U.S. District Court, Northern District of Ohio. Upon leaving the clerkship, Ms. Parker worked as an associate with the New York firm of Paul Weiss Rifkind Wharton & Garrison. In 1988, Ms. Parker became associated with the New York firm of Lankenau Kovner & Bickford, concentrating her practice in representation of publications, libel defense and First Amendment law.

For 13 years, Ms. Parker's practice has included appellate matters and environmental, consumer fraud and securities fraud litigation. Ms. Parker participated in the successful prosecution of several important actions, including: *In re The Exxon Valdez*, Case No. A89-095 (D. Alaska), in which she served as a member of the trial support team, and which resulted in a $5 billion jury verdict; *Pinney v. Great Western Bank, et al.*, Case No. CV-95-2100-I(RNBx) (C.D. Cal.), in which she served as one of the principal attorneys for plaintiffs and

which resulted in a settlement of $17.2 million; and *Does I, et al. v. The Gap, Inc., et al.*, Case No. 01 0031 (D. N. Mariana Islands), in which she was the lead prosecuting attorney and which resulted in a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories. In July 2003, Ms. Parker was named Trial Lawyer of the Year by the Trial Lawyers for Public Justice in recognition of her work on the case in the Northern Mariana Islands.

Ms. Parker is a member of the Appellate Practice Group of Lerach Coughlin. She has worked on a variety of appellate matters before numerous courts, including the U.S. Courts of Appeal for the Fifth, Sixth, Ninth and Tenth Circuits and the appellate courts of California, Alabama, Ohio and Tennessee. She is a Lawyer Representative to the Ninth Circuit Judicial Conference.

Ms. Parker is admitted to practice in California and New York. She has been an active member of the Federal Bar Association, the San Diego County Bar Association and the Lawyers Club of San Diego, and also holds memberships with the American Bar Association and California Women Lawyers. She sits on the Board of Directors for the Legal Aid Society of San Diego.

**STEVEN W. PEPICH** received his Bachelor of Science degree in Economics from Utah State University in 1980 and his Juris Doctor degree from De Paul University in 1983. Mr. Pepich is admitted to practice before the Courts of California and the District Court for the Southern, Central, Eastern and Northern Districts of California. Mr. Pepich has been engaged in a wide variety of civil litigation, including consumer fraud, mass tort, royalty, civil rights, human rights, ERISA and employment law actions, as well as many securities and corporate litigations. He was part of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two

months of trial on terms favorable to two plaintiff classes of restaurant workers, for recovery of unpaid wages. He was also a member of the plaintiffs' trial team in *Newman v. Stringfellow* where, after a nine-month trial in Riverside, California, all claims for exposure to toxic chemicals were ultimately resolved for $109 million.

Mr. Pepich has also participated in the successful prosecution of numerous securities fraud class actions, including: *Gohler v. Wood*, Case No. 92-C-181 ($17.2 million recovery); *In re Advanced Micro Devices Sec. Litig.*, Case No. C-93-20662-RPA(PVT) ($34 million recovery); *In re Catalyst Semiconductor Sec. Litig.*, Case No. C-93-2096 ($15 million recovery); *In re Gupta Corp. Sec. Litig.*, Case No. C-94-1517 ($6 million recovery); *In re Louisiana-Pacific Corp. Sec. Litig.*, Case No. C-95-707 ($65 million recovery); and *In re Boeing Sec. Litig.*, Case No. C-97-1715Z ($92 million recovery). Mr. Pepich is a member of the American Bar Association, the San Diego Bar Association and the Association of Business Trial Lawyers of San Diego. Mr. Pepich co-authored with William S. Lerach *Personal Liability Considerations of Officers and Directors in the Takeover Context*, CEB, Business Law Institute, April 1986, and *New Diligence Considerations in the Context of the Federal Securities Laws*, CEB Fourth Annual Securities Institute, May 1986.

**LAURA ANDRACCHIO** focuses primarily on litigation under the federal securities laws. Ms. Andracchio has litigated dozens of cases against public companies in federal and state courts throughout the country, and has contributed to hundreds of millions of dollars in recoveries for injured investors. Ms. Andracchio also led the litigation team in *Brody V Hellman*, a case against Qwest and former directors of U.S. West to recover an unpaid dividend, recovering $50 million. In late 2004, Ms. Andracchio was a lead member of the trial team in *In re AT&T Corp. Sec. Litig.*, which was tried in district court in New Jersey, and which settled after two weeks of trial for

$100 million. Prior to trial, Ms. Andracchio was responsible for managing and litigating the case, which was pending for four years. Ms. Andracchio was also the lead litigator in *In re P-Com, Inc. Securities Litigation*, which resulted in a $16 million recovery for the plaintiff class; *In re Urohealth, Inc.*, yielding a $7 million recovery, and in a case against Intel under the Williams Act, which settled for $4.5 million. In addition, Ms. Andracchio was a member of the litigation team in several other actions that have yielded substantial recoveries for investors of public companies, including Oakley, Inc. ($16 million), MTel, Inc. ($10 million) and Trimble Navigation ($7 million).

Ms. Andracchio received her Bachelor of Arts degree from Bucknell University in 1986, and her Juris Doctor degree with honors from Duquesne University School of Law in 1989. While at Duquesne, Ms. Andracchio was elected to the Order of Barristers and represented the Law School in the National Samuel J. Polsky Appellate Moot Court competition, in which she placed as a finalist, and in the regional Gourley Cup Trial Moot Court competition.

**JOHN K. GRANT** was born in Provo, Utah in 1961. Mr. Grant received his Bachelor of Arts degree from Brigham Young University in 1988 and his Juris Doctor degree from the University of Texas at Austin in 1990. Mr. Grant was admitted to the California Bar in 1994.

**KATHLEEN A. HERKENHOFF** received a Bachelor of Arts in English Literature from the University of California at Berkeley in 1989 and received a Juris Doctor degree from Pepperdine University School of Law in 1993. While at Pepperdine, she received American Jurisprudence Awards in Constitutional Law and Agency-Partnership Law. After graduation from Pepperdine, Ms. Herkenhoff was an enforcement attorney with the U.S. Securities and Exchange Commission.

Ms. Herkenhoff is a 1993 admittee to the State Bar of California and has been admitted to practice before the U.S. District Courts for the Northern, Central, Eastern and Southern Districts of California. Ms. Herkenhoff has successfully prosecuted several complex securities class actions, including obtaining a $122 million settlement against Mattel, Inc. and several of its former officers and directors.

**KIMBERLY C. EPSTEIN** is a partner with the San Francisco office of Lerach Coughlin. Having been associated with the Lerach Coughlin lawyers since 1994, Ms. Epstein's practice has focused on securities class actions in both state and federal court. She has represented shareholders of companies in industries as diverse as microchip developers, pump and valve manufacturers and golf apparel. Over the past decade, Ms. Epstein has litigated cases that have recovered tens of millions of dollars on behalf of defrauded shareholders.

Ms. Epstein obtained her Juris Doctor degree from University of San Francisco in 1993, where she was a joint J.D./MBA candidate, and her Bachelor of Science degree in Business Administration from California State University at Hayward in 1988. Prior to her employment with the securities litigation bar, she clerked for the Honorable William J. Cahill. She is licensed to practice in the state of California and before the U.S. District Courts in Northern and Central California, Arizona and the U.S. Court of Appeals, Ninth Circuit.

**MICHELLE M. CICCARELLI** represents workers, consumers and shareholders in a broad range of complex class action litigations for securities fraud, fraudulent business practices, human rights abuses, labor and employment violations, as well as derivative litigation for breaches of fiduciary duties by corporate officers and directors. She is the Editor of Lerach Coughlin's *Corporate Governance Bulletin* and *Taking Action - Fighting Corporate Corruption*, and the author of *Improving Corporate Governance through*

*Litigation Settlements*, Corporate Governance Review, 2003. She is a frequent lecturer on securities fraud, corporate governance, and other issues of import to institutional investors.

She participated in the successful prosecution of several important actions, including *Does I, et al. v. The Gap, Inc. et al.*, Case No. 01-0031 (D N. Mariana Islands), in which she was one of the lead litigators, spending several months on Saipan working with clients, investigating claims, and obtaining discovery. The case was successfully concluded with a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories.

Formerly, she practiced in Kentucky in the area of labor and employment law. She was the co-editor of the *Kentucky Employment Law Letter* (1998) and co-author of *Wage and Hour Update* (Lorman 1998). She was also a regular lecturer for the Kentucky Cabinet for Economic Development.

She was a law clerk to the Honorable Sara Walter Combs, Kentucky Court of Appeals (1994-95) after obtaining her Juris Doctor degree from the University of Kentucky in 1993. She is a member of the California and Kentucky Bars, and is admitted to practice before the U.S. District Courts for both jurisdictions as well as the Sixth Circuit Court of Appeals.

**JAMES I. JACONETTE** was born in San Diego, California in 1967. Mr. Jaconette is one of three partners responsible for the day-to-day prosecution of *In re Enron Corp. Sec. Litig.* (S.D. Tex.) and *In re Dynegy, Inc. Sec. Litig.* (S.D. Tex.), on behalf of lead plaintiff the Regents of the University of California, and the large classes of public investors represented in those actions. Mr. Jaconette has litigated securities class actions and corporate governance/merger & acquisition-related actions since 1995. To date, cases in which Mr. Jaconette executed a

primary litigating role, including *In re Informix Corp. Sec. Litig.* (N.D. Cal.), have resulted in approximately $300 million in settlements, judgments, or common funds that benefited investors.

Mr. Jaconette attended San Diego State University, receiving his Bachelor of Arts degree with honors and distinction in 1989 and his M.B.A. in 1992. In 1995, Mr. Jaconette received his Juris Doctor degree *cum laude* from Hastings College of the Law, University of California, San Francisco. Mr. Jaconette was the Mortar Board Vice President from 1988-1989, a member of the *Hastings Law Journal* from 1993-1994, and Associate Articles Editor for same from 1994-1995. Mr. Jaconette authored *The Fraud-on-the-Market Theory in State Law Securities Fraud Suits*, Hastings Law Journal, Volume 46, August, 1995. In 1993, Mr. Jaconette served as law clerk to the Honorable Barbara J. Gamer, and in 1994, as extern to the Honorable William H. Orrick, Jr., District Judge.

In 1995, Mr. Jaconette was admitted to the California Bar and licensed to practice before the U.S. District Court, Southern District of California.

**TOR GRONBORG** was born in Portland, Oregon in 1969. Mr. Gronborg received his Bachelor of Arts degree in 1991 from the University of California at Santa Barbara and was a recipient of an AFL-CIO history scholarship. In 1992, Mr. Gronborg did graduate work in international relations and strategic studies at the University of Lancaster, UK on a Rotary International Fellowship. Mr. Gronborg received his Juris Doctor degree from Boalt Hall at the University of California at Berkeley where he was a member of the Moot Court Board.

Mr. Gronborg was admitted to the California Bar in 1995, and in 1997 was licensed to practice in the courts of the Ninth Circuit and the Northern, Central and Southern Districts of California. Mr. Gronborg's practice areas at

Lerach Coughlin include securities litigation, and campaign and election law.

**THOMAS E. EGLER** was born in Pittsburgh, Pennsylvania in 1967. Mr. Egler received his Bachelor of Arts degree from Northwestern University in 1989. Mr. Egler received his Juris Doctor degree in 1995 from Catholic University of America, Columbus School of Law, where he served as Associate Editor for *Catholic University Law Review* from 1994-1995. From 1995-1997, Mr. Egler was Law Clerk to the Honorable Donald E. Ziegler, Chief Judge, U.S. District Court, Western District of Pennsylvania.

Mr. Egler was admitted to the California Bar in 1995 and the Pennsylvania Bar in 1996. He is admitted to practice before the U.S. District Courts for the Western District of Pennsylvania, the Northern, Southern and Central Districts of California, and the U.S. Court of Appeals for the Third and Eleventh Circuits.

**PATRICK W. DANIELS** earned his Bachelor of Arts degree, *cum laude*, from the University of California, Berkeley in 1993, and his Juris Doctor degree from the University of San Diego School of Law in 1997. He is the author of *The Capital Formation and Securities Fraud Enforcement Act of 1996: Historic and Economic Perspectives*, Joint Interim Hearing, California State Senate Finance, Investment and International Trade and Assembly Banking and Finance Committees, Information Hearing Final Report, at 393 (1997). He was admitted to practice in California in 1997.

Mr. Daniels represents workers, consumers and shareholders in a broad range of complex litigation class actions for fraudulent business practices, human rights abuses and shareholder actions for defrauded investors. Mr. Daniels represents a number of international public and jointly-trusteed labor-management pension funds, as well as fund managers in securities fraud and individual actions involving Enron, WorldCom and AOL Time Warner, among many others. Mr. Daniels

has been a featured speaker at pension fund conferences in the United States, Europe, the South Pacific and Australia.

In human rights, Mr. Daniels was a member of an international coalition of attorneys and human rights groups who won an historical settlement with major U.S. clothing retailers and manufacturers, including The Gap, Target Corporation and J.C. Penney, on behalf of a certified class of over 50,000 predominantly female Chinese garment workers on the island of Saipan in an action seeking to hold the Saipan garment industry responsible for creating a system of indentured servitude and forced labor in Saipan garment factories. The coalition obtained an agreement for supervision of working conditions in the Saipan factories by an independent NGO, as well as a substantial monetary award for the workers. In July 2003, several members of the coalition of attorneys were collectively honored as the "Trial Lawyers of the Year" by the Trial Lawyers for Public Justice.

Mr. Daniels is also one of the lead attorneys in historic class action litigation on behalf of U.S. POWs and Chinese and Korean civilians against Japanese corporations that used slave and forced labor during WWII.

**ANDREW J. BROWN** was born in Northern California in 1966. He received his Bachelor of Arts degree from the University of Chicago in 1988 and received his Juris Doctor degree from the University of California, Hastings College of Law in 1992. Upon passing the Bar, Mr. Brown worked as a trial lawyer for the San Diego County Public Defender's Office. In 1997, he opened his own firm in San Diego, representing consumers and insureds in lawsuits against major insurance companies. His current practice focuses on representing consumers and shareholders in class action litigation against companies nationwide.

As a partner of Lerach Coughlin, Mr. Brown continues to change the way corporate America does business. He prosecutes complex securities fraud and shareholder derivative actions, resulting in multi-million dollar recoveries to shareholders and precedent-setting changes in corporate practices. Examples include: *In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858 (E.D. Tenn 2005); *Does I, et al. v. The Gap, Inc., et al.*, Case No. 010031 (D. N. Mariana Islands); *Arlia v. Blankenship*, 234 F. Supp. 2d 606 (S.D. W.Va. 2002); and *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581 (N.D. Ohio 2004).

Mr. Brown is admitted to the Bars of California and the U.S. District Courts for all Districts in California.

**CHRISTOPHER BURKE** earned his Juris Doctor degree from the University of Wisconsin in 1993 and his Ph.D. in 1996. His practice areas include antitrust and consumer protection. He has been part of the trial teams that successfully prosecuted the *In re Disposable Contact Lens Antitrust Litig.* ($89 million) and *Schwartz v. Visa, et al.* ($170 million).

Prior, he was an Assistant Attorney General at the Wisconsin Department of Justice. He has lectured on law-related topics including constitutional law, law and politics and civil rights at the State University of New York at Buffalo and at the University of Wisconsin. His book, *The Appearance of Equality: The Supreme Court and Racial Gerrymandering* (Greenwood, 1999), examines conflicts over voting rights and political representation within the competing rhetoric of communitarian and liberal strategies of justification.

**JONATHAN M. STEIN** earned his Bachelor of Science degree in Business Administration from the University of Florida, where he concentrated his studies in Finance. While at Florida, he was selected to join the honor society of Omicron Delta Epsilon, recognizing outstanding achievement in Economics. Mr.

Stein earned his Juris Doctor degree from Nova Southeastern University, where he was the recipient of the American Jurisprudence Book Award in Federal Civil Procedure and served as Chief Justice of the Student Honor Court.

Mr. Stein began his practice of law in Fort Lauderdale as a prosecutor in the State Attorney's Office for the Seventeenth Judicial Circuit of Florida, where he handled numerous jury trials. Before concentrating his practice in class action litigation, he also practiced as a litigator with one of Florida's largest law firms, where he concentrated on fighting insurance fraud. Prior to joining Lerach Coughlin, Mr. Stein was a partner with Geller Rudman, PLLC. Mr. Stein is involved in all aspects of class action litigation, including securities fraud, shareholder class and derivative actions, consumer fraud, products liability and antitrust.

A substantial portion of Mr. Stein's practice is dedicated to the representation of public shareholders of companies whose shares are acquired through management buyouts, leveraged buyouts, mergers, acquisitions, tender offers and other change-of-control transactions. Mr. Stein has represented clients in seeking to protect shareholders by insuring that they receive maximum compensation for their shares and also by insuring that they receive all necessary information and disclosure concerning the transactions. He has been successful in restructuring many transactions and recovering millions of dollars in additional value for shareholders.

Mr. Stein is licensed to practice law in the state courts of Florida, as well as in the United States District Courts for the Southern and Middle Districts of Florida and the District of Colorado. In addition to these courts and jurisdictions, Mr. Stein regularly works on cases with local counsel throughout the country. Mr. Stein has been or is a member of the Association of Trial Lawyers of America, the American Bar Association, the Palm Beach County Bar Association and the South Palm Beach County Bar Association.

**ROBERT M. ROTHMAN** earned his Bachelor of Arts degree in Economics from the State University of New York at Binghamton. He then earned his Juris Doctor degree, with distinction, from Hofstra University School of Law. During law school, Mr. Rothman was a member of the *Law Review* and was awarded The Dean's Academic Scholarship for completing his first year in the top one percent of his class.

After law school, Mr. Rothman practiced commercial litigation with an international law firm. Having litigated cases involving many of the nation's largest companies, Mr. Rothman has extensive experience in the areas of consumer protection, antitrust and investment fraud. Mr. Rothman also regularly tries and arbitrates cases. For example, he obtained a multi-million dollar verdict after the trial of a shareholders' derivative case, as well as multi-million dollar judgments on behalf of defrauded investors.

Prior to joining Lerach Coughlin, Mr. Rothman was a partner at Geller Rudman, PLLC, where he concentrated his practice on representing shareholders and consumers in class actions.

Mr. Rothman is admitted to practice before the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York. Mr. Rothman is a member of the American Bar Association's Sections of Litigation and Antitrust Law.

**DANIEL DROSMAN** is a partner with Lerach Coughlin. He is a former federal prosecutor with extensive litigation experience before trial and appellate courts. His practice focuses on securities fraud litigation and other complex civil litigation. Mr. Drosman is admitted to practice in New York and

California and before federal courts throughout those states.

Mr. Drosman is a native San Diegan who received his Bachelor of Arts degree in Political Science from Reed College in 1990, with honors, and was a member of Phi Beta Kappa. He received his Juris Doctor degree from Harvard Law School in 1993. Following graduation from law school, Mr. Drosman served for three years as an Assistant District Attorney for the Manhattan District Attorney's Office. While there, Mr. Drosman served in both the appellate section, where he briefed and argued over 25 cases to the New York appellate courts, and in the trial section, where he prosecuted a wide variety of street crime.

From 1996-1997, Mr. Drosman was an associate in the New York office of Weil Gotshal & Manges, where he concentrated his practice in civil litigation and white-collar criminal defense.

In 1997, Mr. Drosman returned to San Diego and became an Assistant U.S. Attorney in the Southern District of California. In the Southern District, Mr. Drosman tried cases before the U.S. District Court and briefed and argued numerous appeals before the Ninth Circuit Court of Appeals. He was a member of the border crimes unit, where he was assigned to investigate and prosecute violations of the federal narcotics and immigration laws and official corruption cases. During his tenure as an Assistant U.S. Attorney, Mr. Drosman received the Department of Justice Special Achievement Award in recognition of sustained superior performance of duty.

Mr. Drosman's practice involves representing defrauded investors in securities class actions, an area in which he has co-authored a law journal article.

**AZRA Z. MEHDI** earned her Bachelors of Arts in 1992 from the University of Illinois at Chicago, with high honors in English and German Literature. She was a member of the Honors College and spent a year at the University of Vienna in Austria. She received her Juris Doctor degree from DePaul University College of Law in Chicago in 1995. Upon graduation, Ms. Mehdi did an internship at the Austrian law firm of Ortner Poch & Foramitti. Ms. Mehdi focuses her practice on antitrust litigation and securities fraud litigation.

Ms. Mehdi is admitted to practice in New York (1996), California (2002), before the U.S. District Court for the Southern and the Eastern Districts of New York (1997), and the U.S. District Court for the Northern, Central and Southern Districts of California (2002). She is a member of the American Bar Association, the California Bar Association and the San Francisco Bar Association. Ms. Mehdi is fluent in German and Hindi.

**KEVIN K. GREEN** is a member of the firm's Appellate Practice Group. He concentrates his practice in appeals and writs in state courts, particularly the California Appellate Courts.

Mr. Green received his Bachelor of Arts degree, with honors and distinction, from the University of California at Berkeley in 1989, and his Juris Doctor degree from Notre Dame Law School in 1995. After law school, he clerked for the Honorable Theodore R. Boehm, Associate Justice, Supreme Court of Indiana, and the Honorable Barry T. Moskowitz, U.S. District Judge, Southern District of California.

Due to the national scope of the practice, Mr. Green has handled appellate matters in numerous states. His appellate decisions include: *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070 (2004) (reversing denial of class certification and ordering certification of statewide class); *West Corp. v. Superior Court*, 116 Cal. App. 4th 1167 (2004) (upholding personal jurisdiction over telemarketers sued under California law); *Ritt v. Blanks*, 2003 Ohio App. LEXIS 3297 (Ohio Ct. App. July 10, 2003) (reversing denial of class certification); and

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003) (addressing "reasonable consumer" standard under California law).

While in law school, Mr. Green authored a student note titled, *A Vote Properly Cast? The Constitutionality of the National Voter Registration Act of 1993*, 22 Journal of Legislation 45 (1996). He is a member of the San Diego County Bar Association's Appellate Court Committee. He was admitted to the State Bar of California in 1995.

**JONAH H. GOLDSTEIN** is a partner with Lerach Coughlin. Formerly, Mr. Goldstein was an Assistant U.S. Attorney for the Southern District of California, where he tried 13 jury trials (including a seven-defendant 11-week trial), and briefed and argued appeals before the Ninth Circuit Court of Appeals.

In 1991, Mr. Goldstein received his Bachelor of Arts degree in Political Science from Duke University. He received his Juris Doctor degree from the University of Denver College of Law in 1995, where he was the Notes & Comments Editor of the *University of Denver Law Review*. Following graduation from law school, Mr. Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court.

Mr. Goldstein is admitted to practice in Colorado (1995) and California (1997).

**SHAWN A. WILLIAMS** earned his Bachelor of Arts degree in English from the State University of New York at Albany in 1991. He earned his Juris Doctor degree from the University of Illinois College of Law in 1995. Upon graduation from law school, he served as an Assistant District Attorney in the Manhattan District Attorney's Office (1995-2000), where he spent four years in the trial division, prosecuting all levels of street crimes, and one year conducting white-collar fraud investigations.

Mr. Williams' practice focuses on class action securities fraud matters. He is admitted to practice in all courts of the State of New York, including the U.S. District Courts for the Southern and Eastern Districts of New York. Mr. Williams is also admitted to practice in all courts of the State of California and the United States Court of Appeals for the Ninth Circuit.

**JOSEPH D. DALEY** received his Bachelor of Arts degree from Jacksonville University and his Juris Doctor degree from the University of San Diego School of Law. He was a member of the USD Appellate Moot Court Board (1995-96) and has received several awards for written and oral advocacy, including: Order of the Barristers, Roger J. Traynor Constitutional Law Moot Court Team (Best Advocate Award); Philip C. Jessup International Law Moot Court Team (United States National Champions, First Place Regional Team); USD Alumni Torts Moot Court Competition (First Place Overall and Best Brief); the USD Jessup International Law Moot Court Competition (First Place Overall and Best Brief); and the American Jurisprudence Award in Professional Responsibility.

Mr. Daley edited the award-winning *Federal Bar Association Newsletter* (San Diego chapter) in the Year 2000, and served as the Year 2000 Chair of San Diego's Co-Operative Federal Appellate Committees ("COFACS"). Mr. Daley co-authored with Susan S. Gonick *The Nonretroactivity of the Private Securities Litigation Reform Act of 1995*, 25 Sec. Regulation L.J. 60 (1997), reprinted in 3 Sec. Reform Act Litig. Rep. 258 (1997) and 25 RICO L. Rep. 819 (1997).

Mr. Daley was admitted to the California Bar in 1996 and is admitted to practice before the U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, as well as before the U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits.

Mr. Daley's practice concentrates on federal appeals.

**DOUGLAS R. BRITTON** was born in Los Angeles, California, in 1968. Mr. Britton received his Bachelor of Business Administration degree from Washburn University in Topeka, Kansas in 1991 and his Juris Doctor degree, *cum laude*, from Pepperdine University Law School in 1996. Mr. Britton was admitted to the Nevada Bar in 1996 and to the California Bar in 1997 and is admitted to practice in all of the state courts in California, as well as the U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California. Mr. Britton has been litigating securities class action lawsuits since his admission to the Bar in 1996.

**ELLEN A. GUSIKOFF STEWART** was born in New York, New York in 1964. She received her Bachelor of Arts degree in Economics from Muhlenberg College in 1986 and her Juris Doctor degree from Case Western Reserve University in 1989. Mrs. Stewart was admitted to the California Bar in 1989, and is admitted to practice before all federal courts in California, the Sixth and Ninth Circuit Courts of Appeals and the Western District of Michigan.

Mrs. Stewart currently practices in the firm's settlement department, negotiating and documenting the firm's complex securities, merger and consumer privacy class and derivative actions. Notably, these settlements include: *In re Vesta Ins. Group, Inc. Sec. Litig.*, (N.D. Ala. 2002) ($78 million recovery, to date); *In re Prison Realty Sec. Litig.*, (M.D. Tenn. 2001) (over $140 million in cash and stock); *Stanley v. Safeskin Corp.*, (S.D. Ca. 2003) ($55 million recovery); and *In re Wisconsin Energy Derivative Litig.*, (Milwaukee County Circuit Court).

**A. RICK ATWOOD, JR**. prosecutes securities class actions, merger-related class actions, and shareholder derivative suits at both the trial and appellate levels. He has successfully represented shareholders in federal and state courts in numerous jurisdictions, including Alabama, California, Colorado, Delaware, Georgia, Hawaii, Illinois, New York, New Jersey, Nevada, North Carolina, Oregon, South Dakota, Texas, Tennessee, Utah, Washington and Washington, D.C.

Mr. Atwood was born in Nashville, Tennessee in 1965. In 1987, he received a Bachelor of Arts degree with honors in Political Science from the University of Tennessee at Knoxville. He received a Bachelor of Arts degree, with great distinction, in Philosophy from the Katholieke Universiteit Leuven in Leuven, Belgium in 1988. He received his Juris Doctor degree in 1991 from Vanderbilt University Law School, where he served as Authorities Editor on the *Vanderbilt Journal of Transnational Law*.

Mr. Atwood was admitted to the California Bar in 1991 and is licensed to practice before the United States District Courts for the Southern, Central and Northern Districts of California. Previously, Mr. Atwood was an associate in the Los Angeles office of Brobeck Phleger & Harrison LLP.

**JONATHAN E. BEHAR** was born in Los Angeles in 1968. In 1991, Mr. Behar received his Bachelor of Arts degree in English Literature from the University of California at Santa Barbara, with high honors, and his Juris Doctor degree from the University of San Diego School of Law in 1994. He is admitted to the State Bar of California (1994) and the Southern and Central Districts of California (1998 and 2000, respectively).

As a partner at Lerach Coughlin, Mr. Behar currently practices in the areas of securities, environmental and consumer litigation. Mr. Behar was actively involved in the prosecution of two of California's seminal tobacco cases, *Mangini v. R.J. Reynolds Tobacco Company*, the "Joe Camel" case, as well as *Cordova v. Liggett Group, Inc., et al.*, which alleged a 40-

year conspiracy by the United States tobacco manufacturers.

**AMBER L. ECK** graduated from Pepperdine University, *magna cum laude*, with a Bachelor of Arts degree in 1990. Upon graduation, she worked for two years at a Los Angeles legal newspaper, the *Metropolitan News-Enterprise*. Ms. Eck then attended Boston University School of Law, graduating *magna cum laude* in 1995. At Boston University, Ms. Eck was a member of the Giles Sutherland Rich Intellectual Property Moot Court Team which received honors for Best Brief in the Northeast Region. In addition, she served as Case and Note Editor for the *Boston University International Law Journal*, and Chapter Justice for Phi Alpha Delta.

Ms. Eck's practice focuses on the prosecution of securities class actions and shareholder derivative suits. In addition, Ms. Eck received the Wiley W. Manuel *Pro Bono* Service Award in 1999 and the Distinguished Service Award in 2002 from the County of San Diego for pro bono service. Ms. Eck is a member of the California (1995) and Nevada (1996) Bars, and is admitted to practice before the United States District Courts for all districts in both jurisdictions. She served on the Board of Directors for the Barristers Club of San Diego (1996-1997) and is a member of the American Inns of Court, Enright Chapter.

**DENNIS J. HERMAN** is a 1992 graduate of Stanford Law School, where he received the Order of the Coif and the Urban A. Sontheimer Award for graduating second in his class. Mr. Herman concentrates his practice in securities class action litigation on behalf of defrauded investors. Mr. Herman is actively involved in the firm's ongoing prosecution of securities fraud class actions, including those now pending against VeriSign Corp. and The Coca-Cola Company, Inc. He has also participated in the successful prosecution of numerous other securities fraud claims that have resulted in substantial recoveries for investors, including actions filed against: Northwestern Corp. (recovery in excess of $40 million); Specialty Laboratories, Inc. ($12 million recovery); Electro-Scientific Industries, Inc. ($9 million); and Commtouch Software, Inc. ($15 million recovery). Mr. Herman also concluded the successful representation of the estate of a bankrupt company in lawsuits against its former officers and outside auditor seeking recovery for actions that deepened the company's insolvency before it went bankrupt.

Previously, Mr. Herman practiced for 10 years in Denver, CO, where he had a general commercial litigation practice and litigated many cases involving fraud and other tort claims, as well as a wide variety of cases involving contract claims, land use disputes, environmental issues, inter-governmental disputes, voting rights, and intellectual property disputes. Mr. Herman is admitted to practice in both California and Colorado, and is a member of the bar of the United States Courts of Appeals for the Fifth, Eighth and Tenth Circuits as well as the bars of the United States District Courts for Colorado, and the Northern, Central and Southern Districts of California. Prior to attending law school, Mr. Herman was an investigative reporter and editor for a number of newspapers in California and Connecticut.

**NANCY M. JUDA** concentrates her practice in employee benefits law and works in the firm's Institutional Investors Department. Ms. Juda received her Juris Doctor degree from American University in 1992 and her undergraduate degree from St. Lawrence University in 1988.

Prior to joining Lerach Coughlin, Ms. Juda was employed by the United Mine Workers of America Health & Retirement Funds, where she began her practice in the area of employee benefits law. Ms. Juda was also associated with union-side labor law firms in Washington, D.C., where she represented the trustees of

Taft-Hartley pension and welfare funds on qualification, compliance, fiduciary and transactional issues under ERISA and the Internal Revenue Code.

Using her extensive experience representing union pension funds, Ms. Juda advises Taft-Hartley fund trustees regarding their options for seeking redress for losses due to securities fraud. Ms. Juda currently advises trustees of funds providing benefits for members of unions affiliated with the Building and Construction Trades Department of the AFL-CIO, including funds sponsored by the Operative Plasterers and Cement Masons International Association of America and Canada, International Union of Painters and Allied Trades, United Union of Roofers, Waterproofers and Allied Workers and International Union of Elevator Constructors. Ms. Juda also represents workers in ERISA class actions involving breach of fiduciary duty claims against corporate plan sponsors and fiduciaries.

Ms. Juda is licensed to practice in Maryland (1992) and the District of Columbia (1995). She is a member of the National Coordinating Committee for Multi-Employer Plans, the International Foundation of Employee Benefit Plans, the Employee Benefits Committee of the American Bar Association's Section of Labor and Employment Law and the AFL-CIO Lawyers' Coordinating Committee.

Ms. Juda is the Editor of the firm's quarterly newsletter, *Taking Action – Fighting Corporate Corruption*.

**JEFFREY D. LIGHT** was born in Los Angeles, California in 1964. He received his Bachelor of Science degree from San Diego State University in 1987 and his Juris Doctor degree from the University of San Diego in 1991, *cum laude*. Mr. Light was the recipient of the American Jurisprudence Award in Constitutional Law. He served as law clerk to the Honorable Louise DeCarl Adler, U.S. Bankruptcy Court, and the

Honorable James Meyers, Chief Judge, Southern District of California, United States Bankruptcy Court. Mr. Light was admitted to the California Bar in 1992 and is admitted to practice before all federal courts in California.

Mr. Light is also a member of the San Diego County Bar Association and is on the Attorney Fee Arbitration Panel. Mr. Light currently practices in the firm's settlement department, negotiating, documenting and obtaining court approval of the firm's complex securities, merger, consumer and derivative actions. These settlements include: *In re AT&T Corp. Sec. Litig.* (D.N.J. 2005) ($100 million recovery); *In re Infonet Corp. Sec. Litig.* (C.D. Cal. 2004) ($18 million recovery); and *In re Ashworth, Inc. Sec. Litig.* (S.D. Cal. 2004) ($15.25 million recovery).

**CHRISTOPHER P. SEEFER** received his Bachelor of Arts degree from the University of California, Berkeley in 1984 and his Master of Business Administration degree from the University of California, Berkeley in 1990. He received his Juris Doctor degree from the Golden Gate University School of Law in 1998. Mr. Seefer was a Fraud Investigator with the Office of Thrift Supervision, Department of the Treasury (1990-1999) and a field examiner with the Office of Thrift Supervision (1986-1990). Mr. Seefer is a member of the Bar of California, the United States District Court for the Northern District of California and the United States Court of Appeals for the Ninth Circuit.

**X. JAY ALVAREZ** graduated from the University of California, Berkeley, with a Bachelor of Arts degree in Political Science in 1984. He earned his Juris Doctor degree from the University of California, Berkeley, Boalt Hall, in 1987 and entered private practice in San Diego, California that same year.

Mr. Alvarez served as an Assistant U.S. Attorney for the Southern District of California from 1991-2003. As an Assistant U.S. Attorney, Mr. Alvarez obtained extensive trial

experience, including the prosecution of bank fraud, money laundering and complex narcotics conspiracy cases. During his tenure as an Assistant U.S. Attorney, Mr. Alvarez also briefed and argued numerous appeals before the Ninth Circuit Court of Appeals.

At Lerach Coughlin, Mr. Alvarez's practice areas include securities fraud litigation and other complex litigation.

**ANNE L. BOX** graduated from the University of Tulsa with a Bachelor of Science degree in Economics in 1985 and received a Juris Doctor degree in 1988. While in law school, she was the Articles Editor for the *Energy Law Journal* and won the Scribes Award for her article *Mississippi's Ratable-Take Rule Preempted: Transcontinental Gas Pipeline Corp. v State Oil and Gas Bd.*, 7 Energy L.J. 361 (1986). From 1988-1991, she was an Associate Attorney in the Energy Section of Jenkins & Gilchrist, P.C. in Dallas, Texas. In 1991, she became an Assistant District Attorney in Tarrant County, Texas where she tried over 80 felony cases to verdict. Ms. Box was elevated to Chief Prosecutor in 1998, and along with supervising felony attorneys, her responsibilities included running the day-to-day operations of a felony district court. Ms. Box was admitted to the State Bar of Texas in 1989 and the State Bar of California in 2003. Her practice at Lerach Coughlin focuses on securities fraud.

**WILLIAM J. DOYLE II** earned his Bachelor of Arts degree in 1993 from the University of San Diego, majoring in Business Economics. Mr. Doyle earned his Juris Doctor degree in 1997 from California Western School of Law. Previously, Mr. Doyle was a civil litigator with the firm of Wingert Grebing Brubaker & Ryan, LLP in San Diego.

Mr. Doyle's practice focuses on securities fraud, antitrust and financial services class actions. Mr. Doyle is admitted to practice before the U.S. Court of Appeal for the First Circuit, the U.S. District Courts for the Southern, Central and Northern Districts of California, the U.S. District Court for the District of Colorado and all California State courts. He is a member of the American Bar Association, the State Bar of California, the Association of Trial Lawyers of America, and the Association of Business Trial Lawyers.

**VALERIE L. MCLAUGHLIN** was born in Philadelphia, Pennsylvania in 1973. Ms. McLaughlin has litigated numerous cases against public companies in federal and state courts throughout the country that have resulted in hundreds of millions of dollars in recoveries for defrauded investors. Many of these cases also resulted in these companies instituting major corporate governance changes. Ms. McLaughlin is currently litigating several multi-billion dollar accounting fraud cases, including *HealthSouth* and *Oracle*. Before practicing in the plaintiffs' bar, Ms. McLaughlin worked at a well-respected San Diego defense firm litigating complex cases.

Ms. McLaughlin received her Bachelor of Arts degree in Political Science from California State University San Marcos in 1994 and her Juris Doctor degree from California Western School of Law in 1997. In 1997, Ms. McLaughlin was admitted to the California Bar and is licensed to practice in all California State Courts as well as all U.S. District Courts in California. She is a member of the California Bar Association, San Diego County Bar Association, American Bar Association, and the San Diego Lawyers Club.

**MATTHEW MONTGOMERY** was born in Pontiac, Michigan in 1970. Mr. Montgomery received his Bachelor of Arts degree from Stanford University in 1992 and his Juris Doctor degree from the University of California, Berkeley in 1995. Mr. Montgomery was admitted to the California Bar in 1995 and is licensed to practice in the courts of the Ninth and Sixth Circuits, as well as the Northern, Central and Southern Districts of California. Mr.

Montgomery practices in the firm's securities litigation group.

**STEPHEN J. ODDO** graduated from Santa Clara University with a Bachelor of Arts degree in English with a Spanish minor. He received his Master of Arts degree from the Medill School of Journalism at Northwestern University before receiving his Juris Doctor degree from the University of San Diego. Mr. Oddo was admitted to the California Bar in 1994. He specializes in securities class actions involving mergers and acquisitions.

**DAVID A. ROSENFELD** earned his Bachelor of Science degree in Accounting from Yeshiva University's Sy Syms School of Business and his Juris Doctor degree from the Benjamin N. Cardozo School of Law.

While in law school, Mr. Rosenfeld interned in the chambers of the Honorable Fredic Block in the United State District Court for the Eastern District of New York.

Mr. Rosenfeld was responsible for initiating some of the largest and most significant securities and shareholder class action lawsuits since the passage of the Private Securities Litigation Reform Act of 1995, and developed an expertise in the area of lead plaintiff jurisprudence.

In 2003, Mr. Rosenfeld joined Samuel Rudman in opening the New York office of Geller Rudman, PLLC and assisted Mr. Rudman in raising the firm's profile as one of the nation's "most active" plaintiffs' firms.

At Lerach Coughlin, Mr. Rosenfeld continues to concentrate his practice on the investigation and initiation of securities and consumer fraud class actions. Mr. Rosenfeld also advises the firm's institutional and individual investor clients on issues related to their involvement in securities class action lawsuits.

Mr. Rosenfeld is admitted to practice in the States of New York and New Jersey and in the United States District Courts for the Southern District of New York, Eastern District of New York, District of New Jersey, District of Colorado, Eastern District of Wisconsin and the Eastern and Western Districts of Arkansas.

**SCOTT SAHAM** was born in Detroit, Michigan in 1970. Mr. Saham received a Bachelor of Arts degree in 1992 from the University of Michigan. Mr. Saham received a Juris Doctor degree from the University of Michigan Law School in 1995.

Mr. Saham is licensed to practice law in both California and Michigan. Mr. Saham's practice areas include securities and other complex litigation. Prior to join Lerach Coughlin, Mr. Saham served as an Assistant United States Attorney in the Southern District of California.

**EX KANO SAMS II** was born in Los Angeles in 1971. In 1993, Mr. Sams received his Bachelor of Arts degree in Political Science from the University of California, Los Angeles. In 1996, Mr. Sams received his Juris Doctor degree from the University of California, Los Angeles, where he was a member of the *UCLA Law Review*.

After graduating from UCLA Law School, Mr. Sams represented plaintiffs in complex and class action civil rights litigation, including employment, housing and sexual harassment discrimination. Mr. Sams was actively involved in a number of actions against the tobacco industry and participated in a trial against numerous tobacco companies. Mr. Sams also participated in California litigation against the tobacco industry which resulted in billions of dollars in recovery to cities and counties in California.

As a partner of Lerach Coughlin, Mr. Sams continues to represent plaintiffs in securities, consumer and environmental litigation. Mr. Sams is a member of the State Bar of California and has been admitted to the United States Court of Appeals for the Ninth Circuit, the

United States District Courts for Northern, Southern, Eastern and Central Districts of California and the District of Colorado.

**SUSAN GOSS TAYLOR** graduated from Pennsylvania State University in 1994 with a double major in International Politics and Russian. She earned her Juris Doctor degree from The Catholic University of America, Columbus School of Law in 1997. While in law school, she was a member of the Moot Court team, and a student attorney in the D.C. Law Students in Court Program, where she was responsible for defending juveniles and indigent adults in criminal proceedings. Ms. Taylor was admitted to the Bar in California in 1997.

Ms. Taylor was a Special Assistant United States Attorney for the Southern District of California. Ms. Taylor's work at the U.S. Attorney's Office focused primarily on prosecuting drug smuggling and alien smuggling cases.

Ms. Taylor's practice focuses on antitrust and consumer fraud class actions. Ms. Taylor has served as counsel on the Microsoft antitrust litigation and the DRAM antitrust litigation, as well as a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations such as General Motors, Saturn, Mercedes-Benz USA, LLC, BMG Direct Marketing, Inc., and Ameriquest Mortgage Company.

As an associate with Lerach Coughlin, Ms. Taylor now primarily prosecutes securities fraud class actions. Ms. Taylor is a member of the California Bar Association, the San Diego County Bar Association, the American Bar Association, Consumer Attorneys of San Diego, and Trial Lawyers for Public Justice.

**LESLEY WEAVER** focuses on securities and consumer class actions in state and federal court. Her cases have involved companies in high technology, aviation, financial services, and energy industries. Her current caseload includes pending actions against Cisco Systems, Inc., Cardinal Health, and Vicuron Pharmaceuticals (recently acquired by Pfizer, Inc.). Settlements in which Ms. Weaver participated in recent years include: *In re Boeing Sec. Litig.*, ($92 million); *In re NorthPoint Sec. Litig.* ($20 million); and *In re Commtouch Sec. Litig.* ($15 million). In 1998, Ms. Weaver participated in a trial resulting in the largest verdict awarded at that time under the Federal Tort Claims Act against U.S. Customs for the unlawful detention of a Colombia-born U.S. citizen.

Ms. Weaver received her Juris Doctor degree from the University of Virginia School of Law and her Bachelor of Arts degree, *magna cum laude*, in Social Studies from Harvard and Radcliffe College. Ms. Weaver studied Political Science at the University of Bonn and was a Rotary-sponsored student in Haderslev, Denmark.

Ms. Weaver currently co-chairs the LGBT Community Center in San Francisco and sits on the Board of Equality California. Ms. Weaver is also currently the Chair of National Advisory Board of the National Center for Lesbian Rights, as well as past Gala CoChair for the years 2002 and 2003. She previously served as Secretary to the Board of California Young Lawyers Association, a governing body of the California State Bar Association, and in 2003 became a member of the Lawyers' Committee for Civil Rights of San Francisco. Ms. Weaver also co-chaired the Board of Directors of the Bay Area Lawyers for Individual Freedom (BALIF) from 2002-2004 and served on the board from 2000-2004.

**DEBRA J. WYMAN** was born in La Mesa, California in 1967. Ms. Wyman specializes in securities litigation and has litigated numerous cases against public companies in the state and federal courts which resulted in hundreds of millions of dollars in recoveries to investors. In late 2004, Ms. Wyman was a member of the

trial team in *In re AT&T Corp. Sec. Litig.*, which was tried in the District Court in New Jersey, and which settled after two weeks of trial for $100 million. Currently, Ms. Wyman is litigating the complicated accounting fraud matter against HealthSouth Corporation, one of the largest and long-running corporate frauds in history.

Ms. Wyman received her Bachelor of Arts degree from the University of California, Irvine in 1990 and her Juris Doctor degree from the University of San Diego School of Law in 1997. Ms. Wyman was admitted to the California Bar in 1997 and is licensed to practice before all the California State Courts, as well as all the U.S. District Courts in California and the Eleventh Circuit Court of Appeals. She is a member of the California Bar Association and the San Diego County Bar Association.

## OF COUNSEL

**ALBERT H. MEYERHOFF** has concentrated his practice for more than 30 years in labor, civil rights and environmental law. After graduating from Cornell Law School in 1972, he joined California Rural Legal Assistance representing farm workers and the rural poor. These efforts included the landmark case of *CAAP v. Regents of the University of California*, challenging the use of public research funds to promote agricultural mechanization. He also litigated a host of state and federal civil rights cases involving racial discrimination in employment, voting and public education, including *Maria P. v. Riles*, invalidating a California statute excluding undocumented children from California schools. In 1981, Mr. Meyerhoff joined the Natural Resources Defense Council (NRDC), a national environmental organization, as Director of their Public Health Program. His concentration is in litigation concerning toxic substances and occupational health has and brought successful challenges to the continued use of cancer-causing pesticides (*Les v. Reilly*), the exclusion of women of "child-bearing age" from the workplace (*Love v. Thomas*), and the California Governor's failure to comply with Proposition 65, an anti-toxics law (*AFL-CIO v. Deukmejian*). During his 17 years with NRDC, Mr. Meyerhoff testified more than 50 times before the U.S. Senate and House of Representatives.

Mr. Meyerhoff has authored numerous articles for scholarly and general publications, including the *Stanford Law Review*, *EPA Journal*, *Environmental Law Quarterly*, *The New York Times*, *The Washington Post* and *Los Angeles Times*. He has appeared regularly on such programs as CBS News 60 Minutes, ABC 20/20, NBC Dateline, Good Morning America, The Today Show and The NewsHour with Jim Lehrer, and has been an invited speaker at the Harvard Business School, the National Academy of Sciences, the American Academy of Sciences and the AFL-CIO.

Since 1998, Mr. Meyerhoff has been lead counsel in several labor and environmental cases, including *UNITE v. The Gap*, contesting the sale of garments manufactured under sweatshop conditions in the Commonwealth of the Mariana Islands, and *Public Citizen v. US DOT*, challenging cross-border trucking from Mexico to conform to NAFTA but in violation of U.S. environmental laws.

Mr. Meyerhoff was selected as "Trial Lawyer of the Year" by Trial Lawyers for Public Justice and for a lifetime achievement award from the ACLU.

**LEONARD B. SIMON** is admitted to practice in California, New York, and the District of Columbia.

Mr. Simon's practice has been devoted heavily to litigation in the federal courts, including both the prosecution and the defense of major class actions and other complex litigation in the securities and antitrust fields. He has argued more than 20 appeals in the federal and state courts of appeal. He has also

represented large, publicly traded corporations.

Mr. Simon served as plaintiffs' co-lead counsel in *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.) (settled for $240 million), and *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.) (settled for more than one billion dollars). He is currently in a leadership position in the private *Microsoft Antitrust Litig.*, and in the *California Utilities Antitrust Litig.* He was centrally involved in the prosecution of *In re Wash. Public Power Supply Sys. Sec. Litig.*, MDL No. 551 (D. Ariz.), the largest securities class action ever litigated.

Mr. Simon is an Adjunct Professor of Law at Duke University, the University of San Diego, and the University of Southern California Law Schools. He has lectured extensively on securities, antitrust and complex litigation on programs sponsored by the ABA Section of Litigation, the Practising Law Institute, and ALI-ABA, and at UCLA Law School, University of San Diego Law School and Stanford Business School. He is an Editor of California Federal Court Practice, and has authored a law review article on the Private Securities Litigation Reform Act of 1995.

Mr. Simon received his Bachelor of Arts degree from Union College in 1970 and his Juris Doctor degree from Duke University School of Law, Order of the Coif and with distinction, in 1973. He served as law clerk to the Honorable Irving Hill, U.S. District Judge for the Central District of California, in 1973-74.

**BYRON S. GEORGIOU** received his Bachelor of Arts degree, with great distinction, with honors in Social Thought and Institutions, in 1970 from Stanford University, attending on an Alfred P. Sloan full academic scholarship. After a year co-founding and teaching 7th and 8th graders at the Mariposa School, which has thrived for 35 years as an alternative primary through middle school in rural Mendocino County, he attended Harvard Law School, graduating *magna cum laude* in 1974. He was admitted to the California Bar in 1974 and served for one year as law clerk to the Honorable Robert F. Peckham, Chief Judge of the U.S. District Court for the Northern District of California. He is a member of the Bar of the U.S. Supreme Court, the U.S. Court of Appeals for the Ninth Circuit and the U.S. District Courts for the Northern, Eastern, Central and Southern Districts of California.

Mr. Georgiou served from 1975-1980 in various capacities with the California Agricultural Labor Relations Board, defending the constitutionality of the law up through the U.S. and California Supreme Courts and prosecuting unfair labor practice cases enforcing the collective bargaining rights of farmworkers, who had been excluded from coverage under the National Labor Relations Act.

From 1980-1983, Mr. Georgiou served as Legal Affairs Secretary to California Governor Edmund G. Brown Jr., responsible for litigation by and against the Governor, judicial appointments, liaison with the Attorney General, Judiciary and State Bar, legal advice to the Governor and members of his Cabinet, and exercise of the Governor's powers of extradition and clemency.

From 1983-1994, he was Managing Partner and co-founder of the San Diego law firm of Georgiou, Tosdal, Levine & Smith, engaged in a general civil practice, with emphasis on litigation, appearances before executive and legislative governmental bodies and representation of labor organizations and their members, including contract negotiations and enforcement for many California public and private sector unions.

In 1994, he co-founded and served as President of American Partners Capital Group, concentrating in serving the needs of institutional investors through capital

formation programs in a variety of alternative asset categories.

In 1981 Mr. Georgiou was honored as Public Official of the Year by the California Trial Lawyers Association and served as Chair of the Governor's Task Force on Alcohol, Drugs and Traffic Safety, one of the nation's first vehicles for enacting tough drunk driver legislation sponsored by the Mothers Against Drunk Driving (MADD).

Mr. Georgiou serves as the primary liaison with a number of the firm's principal institutional clients and is actively involved in the historic litigations seeking recoveries for defrauded investors in *Enron*, *Dynegy*, *AOL Time Warner* and *WorldCom*.

**SANDRA STEIN** received her Bachelor of Science degree from the University of Pennsylvania and a Juris Doctor degree from Temple University Law School. She is a member of the Pennsylvania and Washington, D.C. Bars. Ms. Stein concentrates her practice in securities class action litigation, legislative law, and antitrust litigation. She served as counsel to U.S. Senator Arlen Specter and to the U.S. Institute for Law and Economic Policy, a think tank which develops policy positions on selected issues involving the administration of justice within the American Legal System. In addition, Ms. Stein served on the Board of Advisors of the Annenberg Institute of Public Service at the University of Pennsylvania. Ms. Stein was the recipient of the National Federation of Republican Women's "Best of America" Award and has been honored by the White House, California State Senate, and California State Assembly for civic leadership.

In a unique partnership with her daughter, Attorney Laura Stein, the Steins serve as two of the top asset-recovery attorneys in the firm. The Steins focus on maximizing profits and minimizing losses to shareholders due to corporate fraud and breaches of fiduciary duty. They also seek to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance.

Ms. Stein has been active in a number of organizations, including the National Association of Shareholder and Consumer Attorneys (NASCAT), National Association of State Treasurers (NAST), the AFL-CIO Lawyers Coordinating Committee, the National Coordinating Committee for multi-employer Plans (NCCMP), and the International Foundation for Employer Benefit Plans (IFEBP), among others.

Ms. Stein has addressed the National Association of Auditors, Controllers and Treasurers on the subject of corporate governance and its role as a positive force in future class action securities settlements. She has also spoken before numerous AFL-CIO conventions and dozens of public and multi-employer pension funds.

**ELISABETH A. BOWMAN** is part of Lerach Coughlin's in-house graphics group which creates visual and audio aids to help explain complex cases and legal theories in a succinct and understandable way. Ms. Bowman's eight years as a criminal defense trial attorney and her former experience in the graphic arts combine to make her exceptionally well suited to produce persuasive legal graphics at every stage of litigation and at trial. Previously, Ms. Bowman assisted in the trials of: *Long v. Wells Fargo Co., et al.; Yourish v. California Amplifier, et al.; In re Helionetics, Inc. Sec. Litig.;* and *Schwartz v. Visa, et al.*

Since joining the firm in 2004, Ms. Bowman assisted in the trials of: *Douglas Shooker, et. al. v. Gary Winnick, et. al.*, and *In re AT&T Corp. Sec. Litig.*

Ms. Bowman received her Bachelor of Fine Arts degree. from the University of Alaska at Anchorage in 1986, where she majored in Fine Arts and Psychology. While a student at the U

of A, she received a grant from the Ford Foundation to participate in the artists in residency program at the Visual Arts Center, Alaska. Ms. Bowman received her Juris Doctor degree from the University of San Diego in 1989. During the summer of 1987, she attended USD's Institute on International and Comparative Law in Oxford, England.

Ms. Bowman was in private practice as a criminal defense attorney for eight years, handling both trials and appeals in state and federal courts. Ms. Bowman is a member of Volunteers in Parole ("VIP"), an organization based on the Big Brothers' paradigm, in which attorneys are matched with parolees from the California Youth Authority in an effort to offer positive mentoring. She also served on VIP's local and state-wide boards.

Ms. Bowman is a member of the California Bar (1990), and is admitted to the Supreme Court of the State of California, the U.S. District Court for the Southern District of California, the U.S. Court of Appeals for the Ninth Circuit, and the Supreme Court of the United States.

**JAMES CAPUTO** has focused his practice on the prosecution of complex litigation involving securities fraud and corporate misfeasance, consumer actions, unfair business practices, contamination and toxic torts, and employment and labor law violations. He has successfully served as lead or co-lead counsel in numerous class and consumer action litigation matters, including, for example: *In re S3 Sec. Litig.*, Case No. CV770003 (Cal. Super. Ct., Santa Clara County); *Santiago v. Kia Motors Am.*, Case No. 01CC01438 (Cal. Super. Ct., Orange County); Case No. 0988 MJJ (N.D. Cal.); *In re Fleming Co. Sec. Litig.*, Case No. 5:02-CV-178 (TJW) (E.D. Tex.); *In re Capstead Mortgage Corp. Sec. Litig.*, Case No. 3:98-CV-1716 (N.D. Tex.); *In re Valence Tech. Sec. Litig.*, Case No. C95-20459 (JW)(EAI) (N.D. Cal.); *In re THQ, Inc. Sec. Litig.*, Master File No. CV-00-01783-JFW (C.D. Cal.); and *In re ICN Pharm. Corp. Sec. Litig.*, Case No. CV-98-02433 (C.D. Cal.).

Mr. Caputo was formerly a partner at Spector Roseman & Kodroff. He was one of the trial counsels in the year-long trial of *Newman v. Stringfellow*, a toxic exposure case involving nearly 4,000 plaintiffs. That case ultimately settled for approximately $110 million. He was co-trial counsel in an employment law class action against Taco Bell, which settled for $14 million.

Mr. Caputo received a Bachelor of Science degree from the University of Pittsburgh in 1970 and a Masters degree from the University of Iowa in 1975. In 1984, he received his Juris Doctor degree, *magna cum laude*, from California Western School of Law, where he served as Editor-In-Chief of the *International Law Journal*. He also clerked for Presiding Justice Daniel J. Kremer of the California Court of Appeal from 1985-1987 and to Associate Justice Don R. Work of the California Court of Appeal from 1984-1985. He has co-authored *No Single Cause: Juvenile Delinquency and the Search for Effective Treatment* (1985) and authored Comment, *Equal Right of Access in Matters of Transboundary Pollution: Its Prospects in Industrial and Developing Countries*, 14 Cal. West. Intl. L. J. 192 (1984). Mr. Caputo has also numerous presentations to various legal and professional groups regarding complex and class action litigation.

He is admitted to practice in the State of California and the U.S. District Courts for the Southern, Central and Northern Districts of California as well as numerous other jurisdictions. Mr. Caputo is a member of the San Diego County and American Bar Associations, the Consumer Attorneys of California, and the Association of Trial Lawyers of America.

**MITCHELL D. GRAVO** concentrates his practice in lobbying and government relations. He represents clients before the Alaska Congressional delegation, the Alaska Legislature, the Alaska State Government and the Municipality of Anchorage.

Mr. Gravo attended Ohio State University as an undergraduate before attending the University of San Diego School of Law. He came to Alaska in 1977, served briefly as an intern with the Municipality of Anchorage and then clerked a year for Superior Court Judge J. Justin Ripley. After his clerkship with Judge Ripley, he went back to the work for the Municipality of Anchorage, where he first served as the executive assistant to the Municipal Manager and then as the first lobbyist for the then Mayor of Anchorage, George M. Sullivan. Mr. Gravo has been described as one of the "top lobbyists in the state" by Alaska's major daily newspaper, *The Anchorage Daily News*.

His legislative clients include the Anchorage Economic Development Corporation, the Anchorage Convention and Visitors Bureau, UST Public Affairs, Inc., the International Brotherhood of Electrical Workers, Alaska Seafood International, Distilled Spirits Council of America, RIM Architects, Anchorage Police Department Employees Association, Fred Meyer, and the Automobile Manufacturer's Association.

**JACQUI E. MOTTEK** received her Bachelor of Science degree in Government and Politics, *cum laude*, from the University of Maryland, College Park in 1979. Ms. Mottek obtained her Juris Doctor degree in 1986 from the University of San Francisco School of Law, where she was a recipient of the American Jurisprudence Award in Constitutional Law and a member of the *University of San Francisco's Law Review*.

Ms. Mottek was associated with the law firm Brobeck Phleger & Harrison from 1987-1994. In 1994, Ms. Mottek served as sole chair in a jury trial resulting in a verdict in favor of her clients of $1 million. In 1994, Ms. Mottek became a partner with the firm Lieff Cabraser Heimann & Bernstein, concentrating her practice in plaintiffs' class actions with an emphasis on consumer fraud litigation and other complex business litigation for plaintiffs.

She successfully prosecuted a certified class action on behalf of physicians who provided medical services to Blue Cross of California HMO members. She is the author of *The Impact of Classwide Arbitration on Mandatory Arbitration*, Vol. 1, No. 13, Class Action Litigation Report, (October 27, 2000).

Prior to joining Lerach Coughlin in 2004, Ms. Mottek prosecuted consumer fraud class actions. She serves as co-lead counsel in several consumer class actions, including *Tenet HealthCare Cases II*, JCCP 4285, pending before the Los Angeles Superior Court, and as co-lead counsel and a member of the executive committee of the *Cellphone Termination Fees Litig.*, JCCP 4332, pending before the Superior Court of Alameda County. She is also a senior litigator in *Spielholz v. LA Cellular, Inc.*, Case No. BC186787 (resulting in the published opinion *Spielholz v. Superior Court*, 86 Cal. App. 4th 1866 (2001), granting a petition for a writ of mandamus she drafted in a question of first impression in California); in the matters coordinated before the federal court in the Northern District of Illinois, styled *In re Owen Federal Bank Mortgage Servicing Litig.*, MDL No. 1604; and as counsel in *Paton v. Cingular Wireless*, Case No. CGC-04-428855, in the Superior Court of San Francisco.

**L. THOMAS GALLOWAY** received a Bachelor of Arts degree in History/Latin from Florida State University and received his Juris Doctor degree from the University of Virginia Law School in 1972, where he was a member of the Editorial Board of the *University of Virginia Law Review*.

Mr. Galloway is the founding partner of Galloway & Associates, a law firm that concentrates in the representation of institutional investors – namely, public and multi-employer pension funds.

Mr. Galloway has authored several books and articles, including: *The American Response to Revolutionary Change: A Study of Diplomatic Recognition* (AEI Institute 1978); *America's*

*Energy: Reports from the Nation* (Pantheon 1980); Contributor, *Coal Treatise* (Matthew Bender 1981); Contributor, *Mining and the Environment: A Comparative Analysis of Surface Mining in Germany, Great Britain, Australia, and the United States*, 4 Harv. Envtl. L. Rev. 261 (Spring 1980); *A Miner's Bill of Rights*, 80 W. Va. L. Rev. 397 (1978); and Contributor, *Golden Dreams, Poisoned Streams* (Mineral Policy Center Washington D.C. 1997).

Mr. Galloway represents and/or provides consulting services for the following: National Wildlife Federation, Sierra Club, Friends of the Earth, United Mine Workers of America, Trout Unlimited, National Audubon Society, Natural Resources Defense Council, German Marshal Fund, Northern Cheyenne Indian Tribe and Council of Energy Resource Tribes. He is a member of the District of Columbia and Colorado State Bars.

**JERRILYN HARDAWAY**, in the Houston Enron Trial office, is a seventh-generation Texan who grew up in Greenville and graduated from Texas A&M with three undergraduate degrees-English, Psychology and Applied Mathematics. She was a Fulbright Scholar, studying Italian architecture and writing a prize-winning article on international trade relations. Despite her primarily liberal arts education, she was really only interested in computers, focusing on software development for vertically integrated markets, which led to an interest in antitrust law. She graduated in 1993 from the University of Houston Law Center, where she was a member of the *Houston Journal of International Law*. She worked alongside renowned class-action attorney Charles Kipple for the next eight years, assisting as lead counsel or co-lead counsel in several complex anti-trust cases through 1999, including *In re Lease Oil Antitrust Litig.*, MDL No. 1206, in the Southern District of Texas, Corpus Christi Division. After traveling and living abroad for three years, she returned to Houston and, in March 2002, was asked to "build a simple database, probably

won't take longer than the summer." Now, more than two years later, her Enron databases manage more than 100 million documents and she supervises two teams of litigation support. Mrs. Hardaway is a frequent speaker and author on electronic discovery and developing issues in technology and the law. She speaks several languages, which helps because she very much enjoys traveling.

**ERAN RUBINSTEIN** practices in the area of securities litigation with a special emphasis on international institutional investor clientele. He is resident in the firm's Manhattan office.

While Mr. Rubinstein acquired his earlier experience defending class action cases, working with some of the largest firms in San Francisco and Philadelphia, he has spent recent years focused exclusively on the prosecution of such cases, including The Relafen Class Action Litigation (following in the footsteps of the Israeli company Teva's Relafen patent litigation), the Initial Public Offering Securities Litigation, and the AOL Time Warner Merger Litigation.

During college, Mr. Rubinstein studied in London and Kenya. He received his Bachelor of Arts degree in International Relations from California Polytechnic State University, San Luis Obispo in 1998 and his Juris Doctor degree from Widener University School of Law in 2001. During law school, where he achieved Dean's Honors List, Mr. Rubinstein was both a regional finalist and a coach in the ABA Negotiation Competition. He also argued at the Jessup International Law Moot Court Competition.

Mr. Rubinstein holds the following Bar affiliations: Bar of the Supreme Court of Pennsylvania (2001); Bar of the Eastern District of Pennsylvania (2003); American Bar Association; and Pennsylvania Bar Association.

**SUSAN BOLTZ RUBINSTEIN** practices in the area of securities litigation with a special emphasis on international institutional investor clientele. She is resident in the firm's Manhattan office.

Prior to entering private practice, she was an Assistant District Attorney. She then acquired her initial class action litigation experience, working on the defense side, with some of the largest defense firms. Ms. Boltz Rubinstein then became associated with a preeminent white-collar criminal defense firm. Among other clients, she represented the Delaware Insurance Commissioner in her efforts to recover millions of dollars looted from policy holders. The case represents the nation's largest insolvency due to fraud and involved money laundering through foreign, including Israeli, banks.

Ms. Boltz Rubinstein has spent recent years focused exclusively on the prosecution of class actions. These cases have included the Relafen Class Action Litigation, the Initial Public Offering Securities Litigation, and the AOL Time Warner Merger Litigation.

Ms. Boltz Rubinstein received her Bachelor of Arts degree in English/Modern European Studies from La Salle University in 1986, where she was a member of the Honors Program. She received her Juris Doctor degree from Dickinson School of Law in 1994. She graduated from college with high distinction and was a Molyneaux Scholarship recipient. During law school she was an Associate Editor/Member of the *Dickinson Journal of International Law*. She successfully completed comparative law courses at the following law schools: University of Florence (Co-Recipient of DiNicola Scholarship; achieved highest grade in International Family Law seminar); University of Strasbourg; and the University of Vienna.

Ms. Boltz Rubinstein holds the following Bar affiliations: Bar of the State of New York (2004); Bar of the Eastern District of Pennsylvania (2003); Bar of the Supreme Court of Pennsylvania (1996); American Bar Association; Pennsylvania Bar Association; and New York Bar Association.

## SPECIAL COUNSEL

**THE HONORABLE LAWRENCE IRVING** joined Lerach Coughlin in 2006 as special counsel to the firm, advising the firm's institutional investor clients regarding securities matters, including litigation and settlements, and acting as the firm's liaison with the Regents of the University of California – the lead plaintiff in the *Enron* securities class action. Previously, Judge Irving was appointed by Judge Barbara Lynn as *Guardian ad Litem* for the investor class in the *Halliburton* securities case, to review and report to the court on the fairness of the proposed settlement.

Judge Irving received his B.S. in Business Administration and his L.L.B from the University of Southern California. For many years, Judge Irving was a leading trial lawyer in San Diego. He was elected a Fellow in the prestigious American College of Trial Lawyers and was President of the San Diego Chapter of the American Board of Trial Advocates. He was appointed to the Federal Bench in San Diego in 1982, having received an Exceptionally Well Qualified rating by the American Bar Association. He presided over numerous high-profile criminal and civil trials, including a five-month jury trial in the *Nucorp* securities class action.

Judge Irving resigned from the Federal Bench in 1990 because of his stance against Federal Sentencing Guidelines and Minimum Mandatory Sentencing laws. He received numerous awards for his judicial service, including awards from such diverse groups as the FBI and ACLU.

Judge Irving has mediated many high profile cases since 1991, including numerous large class action securities cases. According to the *Los Angeles Daily Journal*, Judge Irving is one

of the most sought after mediators/arbitrators in California. Judge Irving successfully mediated the resolution of actions against the following companies: Lincoln Savings & Loan (U.S.D.C. Ariz.); Coeur d'Alene (U.S.D.C. Colo.); Morrison Knudsen (U.S.D.C. Idaho & Del.); Sensormatic (U.S.D.C. Fla.); ADM Archer Daniels Midland (U.S.D.C. Ill.); Hollywood Park, LA Gear, Occidental, Lockheed, Clothestime, Great Western Savings, Pacific Enterprises, Toyota, Venture Entertainment and Ascend (U.S.D.C. C.D. Cal.); Pioneer Mortgage, National Health Labs and Proxima (U.S.D.C. S.D. Cal.); Ross Systems, Resound, Insignia Solutions, IMP, Informix and Leasing Solutions (U.S.D.C. N.D. Cal.); Salomon Bros., Woolworth Corporation and Standard Microsystems (U.S.D.C. N.Y.); and Washington Mutual, Foodmaker, Mercer Ind., Price Costco, Gensia and Midcom Communications (U.S.D.C. Wash.). In addition, Judge Irving also mediated the $2.2 billion settlement in the *Enron* securities litigation with defendant J.P. Morgan (U.S.D.C. S.D. Tex.).

Judge Irving has served as chair and a member of numerous Judicial Selection Committees, including as Chair of former California Governor Pete Wilson's San Diego Superior Courts Committee, Chair of Senator Barbara Boxer's Southern California Federal Judicial and U.S. Attorneys Selection Committee, Chair of several San Diego U.S. Magistrate Judicial Selection committees, and currently serves on President Bush's Southern California Federal Judicial and U.S. Attorney Selection Committee.

Judge Irving has received several awards, including the following: 1990 Trial Judge of the Year – San Diego Trial Lawyers, 1990 Annual Award of San Diego Defense Lawyers (Civil), 1990 Criminal Defense Lawyers' Club of San Diego, "Extraordinary Abilities as a Federal District Judge," 1990 San Diego Press Club – Headliner Law and Justice, 2001 Witkin Award, and 2002 San Diego Bar Association Outstanding Service Award. Judge Irving is also a member of many Professional Associations including: Fellow, American College of Trial Lawyers; Fellow, American Bar Foundation; American Board of Trial Advocates (President San Diego Chapter 1972); San Diego County Bar Association (Board of Directors 1972-1975, Vice President 1975, Treasurer 1974 and Chair Magistrate Judge Selection Panel 1999-2001).

Judge Irving will continue to serve as mediator in certain cases and will continue his *pro bono* activities on behalf of significant causes.

**SUSAN K. ALEXANDER** graduated with honors from Stanford University in 1983 and earned her Juris Doctor degree from the University of California, Los Angeles in 1986. Ms. Alexander joined the Appellate Practice Group at Lerach Coughlin in 2004.

Following her admission to the California Bar in 1986, Ms. Alexander joined Bronson, Bronson & McKinnon, where she litigated professional malpractice and product liability cases on behalf of attorneys, doctors, and automobile manufacturers. In 1990, Ms. Alexander joined the California Appellate Project ("CAP"), where she prepared appeals and petitions for writs of *habeas corpus* on behalf of individuals sentenced to death, as well as supervising private attorneys in their preparation of appeals and *habeas corpus* petitions. At CAP, and subsequently in private practice, Ms. Alexander litigated and consulted on death penalty direct and collateral appeals for 10 years. Representative results include *In re Brown*, 17 Cal. 4th 873 (1998), (reversal of first degree murder conviction, special circumstance finding, and death penalty), and *Odle v. Woodford*, 238 F.3d 1084 (9th Cir. 2001) (remand of death penalty conviction for retrospective competency hearing). Ms. Alexander argued cases in the Fifth, Ninth, and Tenth Circuits. Published decisions include *Pirraglia v. Novell, Inc.*, 339 F.3d 1182 (10th Cir. 2003) (reversal of district court dismissal of securities fraud complaint).

Ms. Alexander is a member of the Bar of the U.S. Supreme Court, the Ninth Circuit Court of Appeals, the Tenth Circuit Court of Appeals, U.S. District Court, Northern, Central, Eastern and Southern Districts of California, and the California Supreme Court. Ms. Alexander is also a member of the Federal Bar Association, Appellate Division and the Appellate Practice Section of the Bar Association of San Francisco.

## FORENSIC ACCOUNTANTS

**ANDREW J. RUDOLPH** is a Certified Fraud Examiner and a Certified Public Accountant licensed to practice in California. He is an active member of the American Institute of Certified Public Accountants, California's Society of Certified Public Accountants, and the Association of Certified Fraud Examiners. His 20 years of public accounting, consulting and forensic accounting experience includes financial fraud investigation, auditor malpractice, auditing of public and private companies, business litigation consulting, due diligence investigations and taxation. Mr. Rudolph is the National Director of Lerach Coughlin's Forensic Accounting Department, which provides the firm with in-house forensic accounting expertise in connection with securities fraud litigation against national and foreign companies. Mr. Rudolph is the Director of Forensic Accounting at the firm, and has given numerous lectures and assisted with articles on forensic investigations and financial statement fraud. Mr. Rudolph has directed hundreds of financial statement fraud investigations which were instrumental in the recovered billions of dollars for defrauded investors. Prominent cases include *Qwest*, *HealthSouth*, *WorldCom*, *Boeing*, *Honeywell*, *Vivendi*, *Aurora Foods*, *Informix* and *Platinum Software*.

**CHRISTOPHER YURCEK** is one of the firm's senior forensic accountants and provides in-house forensic accounting and litigation expertise in connection with major securities fraud litigation. Mr. Yurcek is a Certified Public Accountant with 19 years of accounting, forensic examination and consulting experience in areas including financial statement audit, fraud investigation, auditor malpractice, turn-around consulting, business litigation, and business valuation. Mr. Yurcek is currently responsible for overseeing the firm's forensic accounting investigation in *In re Enron Corp. Sec. Litig*. Mr. Yurcek provides the firm with in-house forensic accounting expertise and directs accounting investigations in connection with well-publicized securities fraud litigation, including cases such as *Enron*, *Vesta*, *Informix*, *Mattel*, *Coca Cola Company* and *Media Vision*. Mr. Yurcek's experience included providing forensic accounting expertise to bankruptcy trustees and audit and accounting services at a national CPA firm. Mr. Yurcek speaks at professional accounting seminars on topics such as financial statement fraud and fraud prevention and has co-authored articles on these subjects. Mr. Yurcek is a member of the American Institute of Certified Public Accountants and the California Society of CPAs.

**R. STEVEN ARONICA** is a Certified Public Accountant licensed in the States of New York and Georgia and is a member of the American Institute of Certified Public Accountants, the Institute of Internal Auditors and the Association of Certified Fraud Examiners. He has been employed in the practice of accounting for 25 years, including: (1) public accounting where he was responsible for providing clients with a wide range of accounting and auditing services; (2) private accounting with Drexel Burnham Lambert, Inc., where he held positions with accounting and financial reporting responsibilities as a Vice President; and (3) various positions with the United States Securities and Exchange Commission ("SEC"). Mr. Aronica has extensive experience in securities regulation and litigation. At the SEC, Mr. Aronica reviewed and analyzed financial statements and related financial disclosures contained in public filings for compliance with generally accepted

accounting principles, generally accepted auditing standards, and the accounting and auditing rules, regulations and policies of the SEC. Mr. Aronica was also an Enforcement Division Branch Chief, responsible for managing a group of investigators and accountants who initiated, developed and executed numerous investigations involving financial fraud, accounting improprieties and audit failures. Mr. Aronica has been instrumental in the prosecution of numerous financial and accounting fraud civil litigation claims against companies which include Lucent Technologies, Oxford Health Plans, Computer Associates, Aetna, WorldCom, Tyco, Vivendi, AOL Time Warner, Ikon, Thomas & Betts, InaCom and Royal Ahold. In addition, Mr. Aronica helped prosecute numerous claims against each of the major U.S. public accounting firms.

EXHIBIT G

# *DONOVAN SEARLES, LLC*

1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Phone 215-732-6067
Fax 215-732-8060
www.donovansearles.com

Michael D. Donovan, Esquire
mdonovan@donovansearles.com

David A. Searles, Esquire
dsearles@donovansearles.com

DONOVAN SEARLES, LLC, located in Philadelphia, Pennsylvania, is a law firm dedicated to providing first class litigation services to investors, consumers and small businesses. The firm's principals have substantial trial and appellate court experience prosecuting complex commercial and consumer cases. The members of the firm have appeared or argued before the United States Supreme Court, various federal and state appellate courts, the state Supreme Courts of New Jersey and Pennsylvania and federal and state trial courts throughout the country. The firm's nationwide practice focuses on class actions, shareholders' rights, consumer and commercial litigation as well as employment-related disputes. The firm strives to provide consumers, investors and small businesses with the type of sophisticated, in-depth representation that is ordinarily available only to the largest corporate clients of money-center law firms.

MICHAEL D. DONOVAN, a founding member of the firm, is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the Second, Third, Eighth, Ninth and Tenth Circuits, the United States District Court for the Eastern District of Pennsylvania, the United States District Courts for the Southern and Eastern Districts of New York as well as the state courts of Pennsylvania and New York and the courts of Washington, D.C. He is a graduate of Vermont Law School (J.D. cum laude 1984) and Syracuse University (A.B. 1981). He was the Head Notes Editor and a staff member of the VERMONT LAW REVIEW from 1982 through 1984. While on the LAW REVIEW, he authored Note, Zoning Variance Administration in Vermont, 8 VT. L. REV. 370 (1984). Following graduation from law school, Mr. Donovan was an attorney with the Securities and Exchange Commission in Washington, D.C., where he prosecuted numerous securities cases and enforcement matters, including injunctive and disciplinary actions against public companies, broker/dealers and accounting firms. Mr. Donovan has co-authored Preserving Judicial Recourse for Consumers: How to Combat Overreaching Arbitration Clauses, 10 LOYOLA CONSUMER L. REV. 269 (1998); "The Overlooked

Victims of the Thrift Crisis," <u>Miami Review</u>, Feb. 13, 1990 and "Conspiracy of Silence: Why S&L Regulators Can't Always Be Trusted," <u>Legal Times</u>, Feb. 5, 1990.

Mr. Donovan has served as co-lead counsel in the following securities class actions: <u>In re Sunterra Corp. Securities Litigation</u>, No. 6:00-cv-79-Orl-28B (M.D. Fla. 2005) (settled for $5,450,000); <u>In re: Worldport Communications, Inc. Securities Litigation</u>, No. 1-99-CV-1817-CC (N.D. Ga. 2001) (settled for $5,100,000); <u>Lines v. Marble Financial Corp.</u>, Nos. 90-23 and 90-100 (D. Vt. 1991)(settled for $2 million together with substantial changes to the company's loan loss reserve procedures); <u>Jones v. Amdura Corp.</u>, No. 90-F-167 (D. Colo. 1991) (action against directors settled for $4,962,500 and against company after bankruptcy for $1.2 million); <u>In re Columbia Shareholders Litigation</u> (Del. Ch. 1991)(merger case settled for $2 per share increase in amount paid to shareholders); <u>Rosen v. Fidelity Investments</u>, [1995-1996] Fed. Sec. L. Rep. ¶ 98,949 (E.D. Pa. Nov. 28, 1995) (opinion certifying class of mutual fund purchasers); <u>Selis v. KTI, Inc.</u>, No. 2:00 CV 1478 (JCL) (D.N.J. 2000) (settled for $3.8 million. In addition, Mr. Donovan has had a substantial role in the prosecution of the following cases, among others: <u>In re Trustcorp Securities Litigation</u>, No. 3:89-CV-7139 (N.D. Ohio 1990) (settled for $5,600,000); <u>Moskowitz v. Lopp</u>, 128 F.R.D. 624 (E.D. Pa. 1989) (opinion certifying class of stock and option purchasers in fraud on the market and insider trading case); <u>In re Hercules Corporation Securities Litigation</u>, No. 90-442 (D. Del. 1992) (settled for $17.25 million).

In the area of consumer justice, Mr. Donovan has argued before the Supreme Court of the United States in <u>Smiley v. Citibank (South Dakota), N.A.</u>, No. 95-860, 116 S. Ct. 806 (argued Apr. 24, 1996) and obtained favorable appellate rulings from the New Jersey Supreme Court in <u>Sherman v. Citibank (South Dakota), N.A.</u>, 668 A.2d 1036 (N.J. 1995) and <u>Hunter v. Greenwood Trust Co.</u>, 668 A.2d 1067 (N.J. 1995) and from the Pennsylvania Superior Court in <u>In re Citibank Credit Card Litigation</u>, 653 A.2d 39 (Pa. Super. 1995) and <u>Gadon v. Chase Manhattan Bank, N.A.</u>, 653 A.2d 43 (Pa. Super. 1995). Recently, Mr. Donovan obtained a landmark Truth in Lending Act decision from the Court of Appeals for the Third Circuit in <u>Rossman v. Fleet Bank (R.I.), N.A.</u>, 280 F.3d 384 (3d Cir. 2002), holding that a bank may not change a credit card promise of no annual fee. He also obtained landmark decisions from the Appellate Division of the New Jersey Superior Court and the New Jersey Supreme Court in <u>Lemelledo v. Beneficial Finance Co.</u>, 674 A.2d 582 (N.J. App. Div. 1996), <u>aff'd</u>, 150 N.J. 255, 696 A.2d 546 (N.J. 1997), concerning loan and insurance packing.

Mr. Donovan has appeared as a panel speaker at the Pennsylvania Bar Institute's Banking Law Update, the Practicing Law Institute's Financial Services Litigation Forum, the Consumer Credit Regulation Forum of the New Jersey Bar Association, and the National Consumer Rights Litigation Conference sponsored by the National Consumer Law Center. Mr. Donovan is a member of the American Bar Association (Litigation and Business Law Sections), the Pennsylvania Bar Association, the New York Bar Association, and the District of Columbia Bar Association. He is the Chair of the Consumer Law Subcommittee of the ABA Litigation Section's Class Actions and Derivative Suits Committee. He is also the former Vice Chair of the National Association of Consumer Advocates and an active member of Trial Lawyers for Public Justice.

DAVID A. SEARLES, a founding member of the firm, is admitted to practice before the Supreme Court of the United States, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania, as well as the state courts of Pennsylvania. He is a 1975 graduate of the American University School of Law, Washington, D.C., where he served on law review. Following graduation from law school, Mr. Searles was an attorney for Community Legal Services of Philadelphia, where he specialized in consumer and bankruptcy law. In 1990, he successfully argued the first consumer reorganization bankruptcy case considered by the U.S. Supreme Court, Pennsylvania v. Davenport, 495 U.S. 552 (1990), and has served as lead counsel and presented argument in numerous bankruptcy and consumer law cases before the United States Court of Appeals for the Third Circuit, including Harris v. Green Tree Financial Corporation, 183 F.3d 173 (3d Cir. 1999); In re Colon, 941 F.2d 242 (3d Cir. 1991); Smith v. Fidelity Consumer Discount Company, 898 F.2d 896 (3d. Cir. 1990); In re Szostek, 886 F. 2d 1405 (3d Cir. 1989); Whittaker v. Philadelphia Electric Company, 882 F.2d 791 (3d Cir. 1989); Watts v. Pennsylvania Housing Finance Agency, 876 F.2d 1090 (3d Cir. 1989); Crossley v. Lieberman, 868 F. 2d 566 (3d Cir. 1989); Abele v. Mid-Penn Consumer Discount Company, 77 B.R. 460 (E.D. Pa. 1987), aff'd 845 F.2d 1009 (3d. Cir. 1988); Washington v. Heckler, 756 F.2d 959 (3d. Cir. 1985). From 1992 through 1997, Mr. Searles was associated with the Philadelphia law firm of Drinker Biddle & Reath LLP, where his practice focused on Chapter 11 bankruptcy and creditor's rights.

Mr. Searles is the author of "Tips In Handling Individual Bankruptcy Cases," Pennsylvania Bar Association Quarterly, January 1997, and is a contributing author of Pennsylvania Consumer Law (1990). Along with Mr.

Donovan, he co-authored <u>Preserving Judicial Recourse for Consumers:  How to Combat Overreaching Arbitration Clauses</u>, 10 LOYOLA CONSUMER L. REV. 269 (1998).  He has taught advanced bankruptcy law at Rutgers University School of Law - Camden, business law at Widener University and bankruptcy law at Pierce Junior College, Philadelphia.   He is a past co-chairperson of the Education Committee of the Eastern District of Pennsylvania Bankruptcy Conference.

Among many other cases, Donovan Searles, LLC has been approved as Class Counsel in the following recent class actions:  *Perry v. FleetBoston Financial Corp*., 2005 WL 1527694 (E.D. Pa. June 28, 2005); *Beck v. Maximus, Inc.,* 2005 WL 589749 (E.D. Pa. March 11, 2005); *Stoner v. CBA Information Services,* 352 F.Supp.2d 549 (E.D. Pa. 2005); *Orloff v. Syndicated Office Systems, Inc.,* 2004 WL 870691 (E.D. Pa. April 22, 2004); *Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303 (D. Conn. 2004) *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267 (E.D. Pa. 2003);  *Samuel-Bassett v. Kia Motors America, Inc.,* 212 F.R.D. 271 (E.D. Pa. 2000), *vacated on other grounds*; *Oslan v. Law Offices of Mitchell N. Kay,* 232 F. Supp. 2d 436 (E.D. Pa. 2002); *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109 (E.D. Pa. 2002); *Saunders v. Berks Credit & Collections*, 2002 WL 1497374 (E.D. Pa. 2002); *Schilling v. Let's Talk Cellular and Wireless*, 2002 U.S. Dist. LEXIS 3352 (E.D. Pa. 2002); *Fry v. Hayt, Hayt and Landau*, 198 F.R.D. 461 (E.D. Pa. 2000); *Smith v. First Union Mortgage Corporation*, 1999 WL 509967 (E.D. Pa. 1999).

EXHIBIT H

# CROWDER BEDOR & PAULSON, LLP

## 555 West Seventh Street, Suite 201
## Saint Paul, Minnesota 55012
### Telephone : (651) 225-8330
### Facsimile (651) 204-2134

The law firm of Crowder, Bedor & Paulson LLP practices in the areas of consumer protection and class action litigation. The firm was established in 1992 and has over two decades of experience in its chosen practice areas. The attorneys of Crowder, Bedor & Paulson have been involved in several of Minnesota's leading class action cases, and have participated in national and statewide litigation involving insurance, lending, and other financial services litigation. The members of the firm include the partners, William H. Crowder, Susan Ford Bedor, and Gregory L. Paulson.

Most recently, Crowder, Bedor & Paulson's completed the case of *Roberson v. Associates Financial Services Co. of Kansas*, Case No. 00-CV-211760-01 (Jackson Count, Missouri at Kansas City). This breach of contract case sought and obtained refunds of interest overpayments on loans on behalf of thousands of class members. The case was settled for $10 million dollars

Crowder, Bedor & Paulson retains contacts with a network of lawyers across the country working to protect consumers through the use of consumer protection statutes and consumer law. All three partners are members of the National Association of Consumer Lawyers, and were guest lecturers at the annual National Consumer Rights Litigation Conference sponsored by the National Consumer Law Center held in Minneapolis in the fall of 2005.

### William H. Crowder

Mr. Crowder is a graduate of Indiana University School of Law.  In 1973, he was awarded the Reginald Heber Smith Fellowship and worked through Legal Assistance of Ramsey County, now Southern Minnesota Regional Legal Services.  From 1976 through 1978, Mr. Crowder acted as Legal Assistant's Managing Attorney.

Mr. Crowder also served as a law professor at William Mitchell College of Law in 1973 where he worked until 1984 specializing in trial practice.  Mr. Crowder taught the Civil Litigation Clinic in which law students represented indigent clients in a wide variety of civil lawsuits in all levels of state courts, federal courts and administrative agency proceedings.  In addition to his other duties, while at William Mitchell, he also taught Advanced Civil Procedure, Advanced Trial Advocacy and Advanced Evidence.

Mr. Crowder has lectured in numerous Continuing Legal Education programs on trial tactics, discovery, evidence, etc., including lecturing on insurance packing at national consumer law conferences.  Most recently, Mr. Crowder lectured at the Fall, 2005 Consumer Rights Litigation Conference sponsored by the National Consumer Law Center, where he presented a program entitled *How to Bring Your Fist Class Action and Other Tips for New Class Action Lawyers.*  He has been a lecturer and program coordinator for the National Institute for Trial Advocacy and has also published literature on trial advocacy including *Advocacy Under Conditions of Negative Stereotyping*.  He has also scripted, directed and produced the educational videotape "Women in Negotiations" which is used in major law schools in this country and Canada.

2

In 1984, Mr. Crowder joined the law firm of Reinhardt and Anderson where he litigated that firm's major cases. In June, 1992, Susan Ford Bedor and he formed the partnership of Crowder & Bedor, later changed to Crowder, Bedor & Paulson with the addition of Mr. Paulson as partner in the firm.

Reported class cases in which he has had significant participation include *Miller et al. v. Colortyme, Inc.*, 518 N.W.2d (Minn. 1994) (Amicus brief on behalf of the National Consumer Law Center, Inc.); and *Hawkins et al. v. Thorp Credit and Thrift Company*, 441 N.W.2d 470 (Minn. 1989). Other class cases that have settled in which he has been lead counsel or litigation counsel include: *Roberson v. Associates Financial Services Co. of Kansas*, Case No. 00-CV-211760-01 (Jackson Count, Kansas City, Missouri) (Breach of contract – overcharge of interest on loans); *Ballard v. Central States Health & Life Co. of Omaha*, File No. 98-008856, (Hennepin County Dist. Ct., Minn.) (Breach of contract – failure to refund unearned credit insurance premium); *Givens v. Associates Industrial Loan Company*, File No. 98-4899 (Hennepin County Dist. Ct., Minn.) (Overcharge of interest in loans); *Anderson v. Scandinavian U.S. Swim & Fitness, Inc.*, File No. 97-011093 (Hennepin County Dist. Ct., Minn.) (Usury); *Jordan v. Western Diversified Insurance Co.,* (File No. 96-16337, Hennepin County Dist. Ct., Minn.) (Failure to refund credit insurance premiums); *Sousa v. North Central Life Insurance Co.*, (File No. 96-5061, Ramsey County Dist. Ct., Minn.) (Refund of pre-paid insurance premiums); *Boulay v. HealthPartners, Inc.*, (File No. 95-014715, Hennepin County Dist. Ct., Minn.) (Overcharging of health insurance premiums); *Nick v. Lomas Mortgage, USA Inc.,* (File No. 95-1235(PJW), United States District Court for the District of Delaware) (Overcharging of Mortgage Insurance Premiums); *Erickson v. Midland*

*Mortgage Co.* (File No 4-94-CV 474, D. Minn.) (Mortgage Escrow Violations); *Clark et al. v. I.C. System, Inc.*, (File No: 4-94-0071, D. Minn.) (Fair Debt Collection Practices Act violations); *Ulbrich v. General Electric Capital Corp.* (File No. 94-15585, Hennepin County Dist. Ct., Minn.) (consumer fraud violations); *Winden v. Associates Industrial Loan Co. et al.*. (File No. Ct-94-7486, Hennepin County Dist. Ct., Minn.) (consumer fraud and usury violations); *Stanford v. United Mortgage Corporation*, (File No. C8-93-3286 Ramsey County Dist. Ct., Minn.) (Mortgage escrow consumer fraud and Bankruptcy violations); *Burleson v. Independence One Mortgage Corporation*, (File No-93-003278 Ramsey County Dist Ct., Minn.) (Mortgage escrow violations and consumer fraud)*; Hohn/Hawkins et al. v. ITT, et al.*, (File No. 85-6074 Consolidated D. Minn. and Hennepin County Dist. Ct., Minn.) (Insurance packing, small loan and RICO); *Elliott et al. v. ITT, et al.*,(File No. 90-C-1841 N.D. Ill.) (insurance packing and RICO); *Herndon, et al. v. ITT, et al.*, (File No. C-C-90-0314-P W.D.N.C.) (consumer finance and RICO); *Meinhardt v. Unisys, Gohlike v. Unisys*, and *SOS v. Unisys (In re: Unisys Plan Litigation* File No. 91-3067, E.D. Penn.(ERISA); *Stein, et al. v. Marshall, et al.*, (File No. CV89-66 Ph-CIM consolidated) (Securities fraud); *Sundance Express, Inc. v. American Airlines, et al.*,(3-90-688 D. Minn.) (*Domestic Air Transportation Litigation* Master File 1:90-cv-2485-MHS,MDL 861) (Antitrust price fixing); *Svenningsen, et al. v. Piper, Jaffray & Hopwood, et al.*, (File No. 3-85-921 D. Minn.)(Securities fraud and RICO); and *Tripp, et al. v. Aetna, et al.*, (File No. 90-0008JC D.N.M.) (Small loan act and RICO).

4

**<u>Susan Ford Bedor</u>**

Ms. Bedor is licensed to practice before the United States Supreme Court, the Minnesota state courts, the U.S. District Courts for the District of Minnesota, and the Eighth Circuit Court of Appeals.  She received her J.D. *cum laude* from William Mitchell College of Law in 1984 and joined the law firm of Reinhardt & Anderson.  She has prepared briefs for and appeared before the Workers' Compensation Court of Appeals, the Minnesota Court of Appeals, the Minnesota Supreme Court, the Minnesota District Courts, the Eighth Circuit Court of Appeals, and the United States Supreme Court.

Ms. Bedor also taught Legal Writing as an adjunct Professor at William Mitchell College of Law.  Most recently, Ms. Bedor presented a program entitled *How to Bring Your Fist Class Action and Other Tips for New Class Action Lawyers* at the Fall, 2005 Consumer Rights Litigation Conference sponsored by the National Consumer Law Center.  Ms. Bedor also prepared materials for continuing legal education seminars presented by the Practicing Law Institute, *Recent Developments in Credit Insurance Litigation* (March, 2002), and the Minnesota Attorney General, *Multi-State Class Actions in State Court* (April 29, 2003).  She has also prepared materials for, and presented continuing education seminars sponsored by the National Consumer Law Center regarding RICO litigation, the Southern Minnesota Regional Legal Services entitled *Recognizing a Rip-Off; Handling Consumer Law Cases for Seniors*, and the Minnesota Legal Services Coalition, *Consumer Law Update June 8, 2001.*

Ms. Bedor has litigated class actions regarding violations of mortgage escrow procedures, the federal Bankruptcy Act, the federal Fair Debt Collection Practices Act, the federal Real Estate Sales Procedure Act, Minnesota's consumer fraud statutes,

Minnesota's usury statute, and Minnesota's no-fault statute, in addition to cases relating to insurance packing, failure to pay insurance premium refunds breaches of lending contracts. Reported class cases in which Ms. Bedor has been involved include *H.J. Inc. v. Northwest Bell Telephone Co., Inc.*, 492 U.S. 229 (1989) (RICO and bribery); *Miller v. Colortyme, Inc.*, 518 N.W.2d (Minn. 1994) (Statutory violations: usury, rent-to-own programs; Amicus brief on behalf of the National Consumer Law Center, Inc.); *Hawkins v. Thorp Credit and Thrift Company,* 441 N.W.2d 470 (Minn. 1989) (Statutory usury and lending violations; sales of credit insurance); *Streich v. American Family Ins. Co.,* 399 N.W.2d 210 (Minn. Ct. App. 1987) (Recovery of no-fault insurance benefits under Minnesota no-fault statute).

Other settled class action cases which she has also worked on include: *Roberson v. Associates Financial Services Co. of Kansas*, Case No. 00-CV-211760-01 (Jackson Count, Kansas City, Missouri) (Breach of contract – overcharge of interest on loans); *Ballard v. Central States Health & Life Co. of Omaha*, File No. 98-008856, (Hennepin County Dist. Ct., Minn.) (Refund of unearned credit insurance premium); *Givens v. Associates Industrial Loan Co.*, File No. 98-4899 (Hennepin County Dist. Ct., Minn.) (Overcharge of interest in loans); *Anderson v. Scandinavian U.S. Swim & Fitness, Inc.,* File No. 97-011093 (Hennepin County Dist. Ct., Minn.) (Usury); *Jordan v. Western Diversified Ins. Co.*, (File No. 96-16337, Hennepin County Dist. Ct., Minn.) (Breach of contract: failure to refund insurance premiums); *Sousa v. North Central Life Ins. Co.*, (File No. 96-5061, Ramsey County Dist. Ct., Minn.) (Failure to refund of insurance premium); *Boulay v. HealthPartners, Inc.,* (File No. 95-014715, Hennepin County Dist. Ct., Minn.) (Overcharging health insurance premiums)*; Nick v. Lomas*

6

*Mortgage, USA Inc.*, (File No. 95-1235(PJW), United States District Court for the District of Delaware) (Overcharging of Mortgage Insurance Premiums); *Erickson v. Midland Mortgage Co.* (File No 4-94-CV 474 D. Minn.) (Breach of contract and mortgage escrow violations); *Clark et al. v. I.C. System, Inc.,* (File No: 4-94-0071, D. Minn.) (Federal Fair Debt Collection Practices Act Violations); *Winden v. Associates Industrial Loan Co. et al..* (File No. Ct-94-7486 Hennepin County Dist. Ct., Minn.) (Statutory consumer fraud and usury violations); *Stanford v. United Mortgage Corp.*, (File No. C8-93-3286 Ramsey County Dist. Ct., Minn.) (Mortgage escrow consumer fraud and Bankruptcy Act violations); *Burleson v. Independence One Mortgage Corp.,* No. C9-93-003278 (Ramsey County, Dist. Ct., Minn.) (Breach of contract and mortgage escrow violations)*: Hohn/Hawkins v. ITT, et al.*, (File No. 85-6074 Consolidated D. Minn. and Hennepin County Dist. Ct., Minn.) (Insurance packing, statutory small loan violations and RICO); *Elliott v. ITT, et al.*,(File No. 90-C-1841 N.D. Ill.) (Insurance packing and RICO); and *Svenningsen, et al. v. Piper, Jaffray & Hopwood, et al.*, (File No. 3-85-921 D. Minn.) (Securities fraud, RICO).

Ms. Bedor is the author of *Proposed Changes to FRCP 23 - Class Action Rules Undergoing Change*, 49 The Federal Lawyer 4 (May 2002). She is also the co-author of the following publications: *Sexual Abuse by Clerics*, 7 Prof. Neg. Law Rptr., 14-16 (February 1992); *Clergy Malpractice*, 15 Minn. Trial Law. 2 (Summer 1990); *The Pattern of Pattern - Cases Post-H.J. Inc.*, 5 Civ. RICO Rep. 5 (March 6, 1990); *Statutes of Limitation in Sexual Abuse Actions - Victimizing the Victim*, 13 Minn. Trial Lawyer 9 (Summer 1988); and *Streich v. American Family Ins. Co.: Anatomy of a Class Action*, 12 Minn. Trial Law. 15 (Fall 1987).

### Gregory L. Paulson

Mr. Paulson is licensed to practice before the Minnesota State Courts and the U.S. District Courts for the District of Minnesota. He received his J.D. from the University of Minnesota Law School in 1978 and subsequently clerked for the Hennepin County District Court. He was an associate with the law firms of Ekola and Associates and Grossman, Karlins, Siegel and Brill, before establishing his own firm, Paulson & Associates, at which he worked for more than fifteen years before becoming a Minnesota State Administrative Law Judge.

In 1998, Mr. Paulson joined the law firm Crowder & Bedor. In 2000, Mr. Paulson became a partner in the law firm Crowder Bedor & Paulson, LLP, practicing exclusively in the area of Consumer Class Actions involving insurance breach of contract claims, federal Truth in Lending violations, federal banking laws, and Minnesota insurance, usury and consumer fraud laws. Unreported class actions that have settled and upon which he worked include: *Roberson v. Associates Financial Services Co. of Kansas*, Case No. 00-CV-211760-01 (Jackson Count, Kansas City, Missouri) (Breach of contract – overcharge of interest on loans); *Ballard v. Central States Health & Life Company of Omaha*, File No. 98-008856, (Hennepin County District Court, Minn.) (Refund of unearned credit insurance premium); *Givens v. Associates Industrial Loan Company*, File No. 98-4899 (Hennepin County Dist. Ct., Minn.) (Overcharge of interest in loans); *Anderson v. Scandinavian U.S. Swim & Fitness, Inc.*, File No. 97-011093 (Hennepin County Dist. Ct., Minn.) (Usury); *Jordan v. Western Diversified Insurance Co.,* (File No. 96-16337, Hennepin County District Court, Minn.) (Failure by insurer to refund insurance premiums); *Sousa v. North Central Life Insurance Co.*, (File No. 96-5061,

8

Ramsey County Dist. Ct., Minn.) (Failure of insurer to refund of pre-paid insurance premiums); *Boulay v. HealthPartners, Inc.,* (File No. 95-014715, Hennepin County Dist. Ct., Minn.) (Overcharging of health insurance premiums); *Nick v. Lomas Mortgage, USA Inc.*, (File No. 95-1235(PJW), United States District Court for the District of Delaware) (Overcharging of Mortgage Insurance Premiums).

Prior to joining Crowder & Bedor, Mr. Paulson was an Administrative Law Judge with the Minnesota Office of Administrative Hearings. Mr. Paulson has lectured at Augsburg College on teacher liability and sports law. Most recently he prepared materials and presented a program entitled *How to Bring Your Fist Class Action and Other Tips for New Class Action Lawyers* at the Fall, 2005 NCLC Consumer Rights Litigation Conference, at which he also introduced the keynote speaker, United States Senator Mark Dayton. Mr. Paulson has served as a court-appointed arbitrator and mediator, as well as appointed condemnation commissioner in State District Court condemnation proceedings. Mr. Paulson has also served as an Arbitrator with the American Arbitration Association.

EXHIBIT I

# THE NATIONAL CONSUMER LAW CENTER

The National Consumer Law Center is a national research and advocacy organization focusing on the legal needs of consumers, especially low income and elderly consumers. For 35 years the National Consumer Law Center (NCLC) has been the consumer law resource center to which legal services and private lawyers, state and federal consumer protection officials, public policy makers, consumer and business reporters, and consumer and low-income community organizations across the nation have turned for legal answers, policy analysis, and technical and legal support.

The National Consumer Law Center staff provides a wide range of direct assistance to consumer law attorneys, including consultation on legal issues, co-counseling, expert testimony, legal research, continuing legal education, widely respected treatises, and technical support. NCLC gives priority to providing case assistance and training targeted at legal aid and pro bono attorneys representing low-income clients.

The Center has been a frequent recipient of court-awarded cy pres funds in cases involving consumer frauds and abuses, hidden contract charges, improper financing terms and practices, and other unfair and deceptive acts and practices. Cy pres funds are used for the benefit of low and moderate-income consumers who are victims of unjust business practices.

## About the National Consumer Law Center

NCLC is a nonprofit corporation founded in 1969 at Boston College School of Law. Under IRS laws, the Center is a 501(c)(3) and legal aid organization. Our staff of 14 attorneys combines over 160 cumulative years of specialized consumer law expertise. We address the legal problems faced daily by low-income and financially distressed families ranging from illicit contract terms and charges, home improvement frauds, repossessions, debt collection abuses, usury, mortgage equity scams, and bankruptcy to utility terminations, fuel assistance benefit programs, utility rate structures, and many others.

NCLC is governed by a volunteer national board of directors that includes a past president of the American Bar Association, a former Arizona Solicitor General, as well as Bar Association representatives and clients from low-income communities.

## NCLC's Legal Treatises

NCLC is author of the widely praised sixteen-volume Consumer Credit and Sales Legal Practice Series. These treatises on consumer law are sent to most legal aid offices throughout the country, are widely used by the private bar, and are available by subscription. The sixteen volumes include the National Consumer Law Center's *Consumer Discrimination* (3rd ed. 2002) and *Consumer Class Actions* (5th ed. 2002). These treatises are supplemented by NCLC Reports, issued twenty-four times each year in four separate editions (Bankruptcy & Foreclosures; Debt Collection & Repossessions; Consumer Credit & Usury; and Deceptive Practices & Warranties).

**NCLC Leadership in the Legal Community**

NCLC has provided substantial leadership in the legal community over the years. The American Bar Journal review of NCLC's Consumer Credit and Sales Legal Practice Series of treatises described them as "... a monumental undertaking comparable to but more practical than the Restatement of Laws." NCLC staff has appeared as counsel and amicus curiae before the United States Supreme Court, all of the United States Courts of Appeal, and numerous state courts. Our expert testimony was cited by United States Court of Appeals in Besta v. Beneficial Loan Co., 855 F. 2d 532, 534 (8th Cir. 1988) (expert testimony of K. Keest); our legal expertise was cited in Crossley v. Lieberman, 868 F.2d 566, 569 (3rd Cir. 1989) (citation to Robert Hobbs, "leading commentator").

NCLC was the Federal Trade Commission's designated consumer representative in promulgating its Trade Regulation Rules on Creditor Remedies, 16 C.F.R. 444, and Preservation of Consumers' Claims and Defenses, 16 C.F.R. 433. The Center's Model Consumer Credit Code was the foundation for the Wisconsin, West Virginia, and Iowa credit codes, and the federal Fair Debt Collections Practices Act, 15 U.S.C. § 1692. Our report on abuses in the home improvement and second mortgage industries led to the enactment of the Home Ownership and Equity Protection Act of 1994.

NCLC staff has served on a number of committees of the National Conference of Commissioners on Uniform State Laws, the American Bar Association Business Law Section, and on the Energy and Transportation Task Force of the President's Council on Sustainable Development. More Center staff have been appointed by the Board of Governors of the Federal Reserve System to their statutory Consumer-Industry Advisory Committee than any two other organizations combined. Present and former Center Staff have held or hold public, appointed positions of authority.

NCLC staff has provided scores of continuing legal education courses to thousands of attorneys over twenty-five years at national events and in most States. The Center's own annual National Consumer Rights Litigation Conference is the primary source of consumer protection continuing legal education for attorneys representing low and moderate clients. The Center helped design and evaluate affordable, low-income energy programs in Rhode Island, Wisconsin, Pennsylvania, and other states, and sponsors an annual industry/consumer advocate conference on affordable energy issues.

The Center's funders have included the Field Foundation, the Ford Foundation, The Open Society Institute, the Boston Foundation, the Boston Bar Foundation, the Energy Foundation, the Fannie Mae Foundation, Freddie Mac, the Joyce Mertz-Gilmore Foundation, the National Association of Insurance Commissioners, the Rockefeller Family Fund, the United Methodists, Wisconsin Gas Company, AT&T Consumer Credit Education Fund, the Federal Trade Commission, the Federal Reserve Board, the FDIC, the National Association of Public Interest Law, the Sandler Family Supporting Foundation, the United States Departments of Energy and Housing and Urban Development, the American Association of Retired Persons, Consumers Union, and numerous cy pres awards.

**Benefitting Financially Distressed Consumers**

### *Providing Government Officials Information About Low Income Consumers*

NCLC is recognized nationally as a preeminent expert in consumer credit legal analysis, and has drawn on this expertise to provide information, analysis and market insights to federal and state legislatures, administrative agencies and the courts for nearly 30 years.

Examples of legislative areas where NCLC has provided such assistance include:

< The Home Ownership Equity Protection Act of 1994 (HOEPA) (effective October 1, 1995) was the Congressional response to the increased incidence of "equity-skimming" -- using abusive terms in credit transactions as a means of tapping the equity in the homes of financially unsophisticated consumers. NCLC participated the drafting of the original bill and its amendments and provided analysis to staff and testimony to Congressional committees.

< The Truth in Lending Act Amendments of 1995, Pub. L. 104-29, enacted September 30, 1995, included provisions giving more mortgage lenders some retroactive immunity from liability for certain Truth in Lending errors, and a sizeable increase in the tolerance for error in disclosing the finance charge, applicable both retroactively and prospectively. NCLC provided Congressional staff with alternatives to wholesale gutting of Truth in Lending to protect lenders from liability for technical violations and small over charges.

< The Fair Debt Collection Practices Act, 15 U.S.C. ' ' 1692, enacted in 1978 and amended since, responded to widespread and notorious debt collection practices by setting forth national standards for third party debt collection activities. The final version relied heavily upon language drafted by Center staff and, like other later chapters of the federal Consumer Credit Protection Act, reflects the testimony and expert comments of the Center.

### *Amicus Curiae Briefs*

In view of its widely recognized expertise, NCLC is frequently asked to appear as amicus curiae in consumer law cases before trial and appellate courts and does so in appropriate circumstances. Among the many cases in which NCLC has prepared briefs amicus curiae or appeared as counsel, the most notable include:

< Kawaauhau v. Geiger, 118 S.Ct. 974 (1998) (only torts done with intent to cause injury are non-dischargeable in bankruptcy);

< Heintz v. Jenkins, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (federal Fair Debt Collection Practices Act requires that bank's attorney not misrepresent the amount of the debt);

< Taylor v. Freeland & Kronz, 112 S.Ct. 1644 (1992) (debtor exemption allowed by operation of law);

<Pennsylvania Dep't of Public Assistance v. Davenport, 110 S.Ct. 2126 (1990)(meaning of "debt" within the bankruptcy code);

<Memphis Light, Gas & Water Division v. Craft, 431 U.S. 1 (1978) (establishing due process right to notice prior to termination of municipal utility service);

<Fuentes v. Shevin, 409 U.S. 902 (1972) (recognizing due process rights and protections in the repossession of consumer property where state action is involved);

<Swarb v. Lennox, 403 U.S. 928 (1971) (due process rights relating to confession of judgment clauses in consumer credit contracts).

### *Litigation Co-counseling*

NCLC's litigation efforts are intended to preserve and expand the ability of low income and elderly consumers to gain access to the justice system and help to meet the chronic and vast unmet legal needs of elderly and low income Americans. NCLC seeks to promote the availability of additional resources for this constituency in the form of high quality *pro bono* and traditional representation by private attorneys, legal services programs and other public service organizations. Litigation is restricted to consumer law matters only, specifically in areas where high quality legal representation is not presently available for low income or elderly consumers or in cases where such consumers may benefit from NCLC's specialized expertise. Currently, NCLC's expertise focuses primarily on issues of consumer sales and services, credit, bankruptcy, and the provision of services to low income utility users and potential users.

Recent examples of NCLC's class action cases include Cason v. Nissan Motor Acceptance Corp., C.A. No. 3-98-0223, U.S. D. Ct. Middle District of Tennessee; Coleman v. General Motors Acceptance Corp., C.A. No. 3-98-0211, U.S. D. Ct. Middle District of Tennessee; Morkavage v. Morgan Stanley Dean Witter, C.A. 99-40114, U.S. D. Ct. Central District of Massachusetts; Follansbee v. Discover Financial Services, C.A. N. 99-C-3827, U.S. D. Ct. Northern District of Tennessee; and Chilson v. Associates National Bank, C.A. 2000-0776, Worcester Superior Court; Samuel v. EquiCredit, C.A. No. 00-6196, U.S. D. Ct. Eastern District of Pennsylvania; Wilborn v. Bank One Corporation, Case No. 03 CV 02674 Common Pleas Court of Mahoning County, Ohio ; Baltimore v. Toyota Motor Credit Corp., C.A. No CV-01-05564 NM, U.S. D. Ct. Central District of California; Jones v. Ford Motor Credit Co., Case No. 00-Civ-8330, U.S. D. Ct. Southern District of New York; Smith v. Chrysler Financial Company, Civil Action No. 00-6003, U.S. D. Ct. of New Jersey; In Re Washington Mutual Overdraft Protection Litigation Master File No. 03-2566 ABC (RCx) U.S. D. Ct. Central District of California; Zipperer v. Supportkids, Inc., Case No. 02 CV 233, Circuit Court Manitowoc County Wisconsin; Mulcahy v. Washington Mutual Inc., A.P. No. 02-1009 U.S. Bankruptcy Ct. of Rhode Island; Hood v. Santa Barbara Bank & Trust, Superior Court of the State of California for the County of Santa Barbara; Curry v. Fairbanks Capital Corporation, Case No. 03-10895-DPW, U.S. D. Ct. District of Massachusetts; Pettway v. Harmon Law Offices, P.C., Case No. 03-10932-RCL, U.S. D. Ct. District of Massachusetts.

NCLC recently was honored as a Finalist for the prestigious Trial Lawyers for Public Justice 2004 Trial Lawyers of the Year Award for its participation in the ground breaking <u>Coleman v. GMAC</u> case.

*Training*

NCLC provides consumer law training for legal services programs, pro bono and other bar association sponsored programs, and government agencies. The Center develops appropriate continuing legal education sessions on consumer law after exploring the needs in the consumer attorney community. Scholarships are sometimes provided for attorneys representing low income consumers to attend the annual National Consumer Rights Litigation Conference sponsored by NCLC to be held this year in Atlanta, Georgia, and to enable attorneys to participate in NCLC teleconferences on consumer banking law issues such as Truth in Lending, Truth in Leasing, consumer bankruptcy and debt collection. NCLC just completed on behalf of the federal government an extensive round of cross-country trainings for HUD-funded housing counselors in over 11 cities.

*Technical Assistance for Consumer Education Efforts*

With funding from the US Administration on Aging and other sources, the Center develops consumer education brochures on consumer frauds and abuses and consumer law rights, for distribution by local agencies, programs, and community groups. <u>Surviving Debt: A Guide for Consumers</u>, a book of practical advice for families struggling to overcome indebtedness, is provided to debt counselors and consumers and is available nationwide.

Through all of its activities, NCLC is committed to promoting equal access to justice for consumers. Funding received by the Center is used for the benefit of consumers, especially low income consumers, who have suffered unfairly in the consumer marketplace and for whom effective consumer protection is necessary. The Center's considerable expertise is made available to public officials, attorneys and other advocates nationwide concerned with consumer rights of Americans.

January 2006

EXHIBIT J

# Daniel S. Blinn

Consumer Law Group, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, CT  06067
Phone: 860 571-0408
Fax: 860 571-7457
Email: dblinn@consumerlawgroup.com

## NATURE OF LEGAL PRACTICE

Daniel S. Blinn is the founder and managing attorney of Consumer Law Group, LLC, a law firm that represents consumers against business interests in individual and class action litigation.  The firm is based in Rocky Hill, CT and has a satellite office in Shelton, CT to service clients in Fairfield County.  Blinn handles the full range of consumer claims, including representing consumers in actions involving auto dealer fraud, mortgages, home construction and improvement, creditor and debt collector harassment, credit reporting, auto repossession, auto and consumer product warranty, and rent to own. He has served as lead counsel in sixteen certified class actions and numerous putative class actions and mass actions involving auto financing and repossessions, mortgage lending, health clubs, auto dealer practices, wage claims against the restaurant industry, debt collection practices, and improper collection of sales taxes.

## PROFESSIONAL EXPERIENCE

1997-Present  **Consumer Law Group, LLC,** Rocky Hill, CT

   Managing Attorney

1987-1997  **Pepe & Hazard, LLP,** Hartford, CT

   1987  Associate Attorney
   1995  Partner

   *Responsibilities*: Assumed primary responsibility for managing and litigating wide range of complex business disputes involving construction, environmental, and contract claims and disputes.

1986  **Dorsey & Whitney,** Minneapolis, MN

   Summer Associate

1985  **Liverant, Senft, & Cohen,** York, PA

   Summer Associate

**EDUCATION**

**New York University, School of Law,** New York, NY

1987, Juris Doctor
Class President

**Bowling Green State University,** Bowling Green, OH

1984, Bachelor of Arts, *cum laude*.
Phi Beta Kappa

**BAR ADMISSION**

**Connecticut, Massachusetts, District of Connecticut, District of Massachusetts, Second Circuit Court of Appeals, United States Supreme Court.**

**REPRESENTATIVE CASES**

Represented 137 consumers and co-signers who purchased motor vehicles from a car dealership in claims against assignee finance company. Following coordinated litigation in individual and class actions, negotiated settlement involving more than $1.5 million in cash and debt forgiveness.

Represented identity theft victim in litigation against a credit bureau and several companies that had extended credit to the imposter. Following extensive litigation, negotiated settlements with defendants of approximately $450,000.

Served as class counsel in multiple class actions against auto finance companies. Obtained orders certifying classes over objection of the defendants in four of these cases. Secured settlements involving millions of dollars in cash and tens of millions of dollars in debt relief.

Served as class counsel in class actions against businesses that collected sales taxes on non-taxable items. Negotiated refunds of amounts improperly collected.

Served as class counsel in class action against health club chain involving approximately 75,000 class members. Successfully defeated three dispositive motions and, following extensive class certification hearing, negotiated settlement providing cash and debt-relief to class members.

Represented consumer who had initiated an action in small claims court against a car dealership, who transferred the case to the regular docket. Obtained judgment against dealership for more than $105,000 in damages, interest, and attorney's fees.

Following a trial, obtained $5,000 actual damages, $35,000 punitive damages, and $28,000 in attorney's fees on behalf of a consumer against a car dealership that did not allow her to return a motor vehicle for full credit notwithstanding the dealership's exchange guaranty.

Currently representing approximately 200 individuals against a national mortgage company in claims under the Truth in Lending Act.

Currently handling a putative class action against a law firm that sent pay-off letters to foreclosure defendants that overstated litigation expenses.

Successfully represented more than one thousand consumers in individual claims against debt collectors, car dealerships, finance companies, credit reporting agencies, mortgage companies, retailers, and other businesses.

## SEMINARS PRESENTED

**Connecticut Bar Association**

    **Representing Consumers, Chairman and Presenter** – October, 2000; October, 2004

    **Introduction to Consumer Protection, Pro Bono Volunteers, Chairman and Presenter,** April 2002, October 2003,

    **Handling Auto Dealer Claims, Chairman and Presenter** – January 2003

    **Collecting Debts and Enforcing Judgments, Presenter** – June 2004; June 2005

    **Handling Class Actions, Presenter** – Scheduled November 2005

    **Defending Foreclosure Actions, Chairman and Presenter** – Scheduled October 2005

    **Litigating Attorney's Fees, Chairman and Presenter**- Annual Meeting, June 2002.

**National Association of Consumer Advocates**

    **Repossessions, Presenter** – September 2004

**National Consumer Law Center**

**Auto Fraud: 100 Tips From the Experts, Presenter** – October 2004

**Ethical Issues in Class Action Litigation, Presenter** – Scheduled October 2006

**In-House Seminar and Training**

**Organized and Presented In-House Seminars, Presentations, and Training for the Following Organizations:**

Statewide Legal Services of Connecticut
Consumer Credit Counseling Services of Southern New England
Connecticut Legal Services
One-Chane
Mothers for Justice
Bridge House

**PROFESSIONAL AFFILIATIONS**

**Greater Hartford Legal Aid Foundation**
**President,** 2005 – present
**Board of Directors**

**Statewide Legal Services of Connecticut**
**President,** 2005 - present
**Secretary/Treasurer,** 2005
**Board of Directors**

**Connecticut Bar Association**
**Chair, Consumer Law Section,** 1999 – 2005
**Taskforce on the Future of the Legal Profession,** 2004 – present

**Connecticut Bar Foundation,**
**James W. Cooper Fellow**

**COMMUNITY SERVICE**

**Nutmeg Big Brothers/Big Sisters – Volunteer**
**Glastonbury Basketball Association – Coach**
**Temple Beth Torah – Former President**

EXHIBIT K

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| AL | Cooley, et al. v. Ameriquest Mortgage | Under review by MDL Panel | N | Federal Question | 4/6/2006 | April A. England-Albright | 1.) Fraud 2.) Truth-in-Lending | |
| CA | Adolph PK Burggraff v. Ameriquest Capital Corporation | Transferred to N.D. IL | N | Federal Question | 11/30/2004 | Douglas Bowdoin; Jonathan Andrews Boynton; Kathleen Clark Night; Sarah Brite Evans; Terry Smiljanich | FCRA | |
| CA | Nona Knox, et al. v. Ameriquest Mortgage Company | Transferred to N.D. IL | Y | Federal Question | 1/14/2005 | Shirley Hochhausen, Bryan A. Kohm, Aaron Myers, Emmet C. Stanton | Truth in Lending | |
| CA | Raymond Quarterman Jr. v. Ameriquest Capital Corportation et al. | MDL opposition filed by Plaintiffs | Y | Federal Question | 2/25/2005 | Douglas Bowdoin; Jonathan Andrews Boynton; Kathleen Clark Night; Sarah Brite Evans; Terry Smiljanich | FCRA (firm offer of credit; permissible purpose case) | 6/16/2005: Answer filed; 08/22/05: Case ordered to a private mediator. Mediation must occur before 9/15/2006 |
| CA | Maria Morrison et al v. Ameriquest Mortgage Company et al. | Motion to vacate CTO filed by Plaintiffs | Complaint Unavailable | Federal Question | 7/7/2005 | Raymond George Robinson | Complaint Unavailable | 8/4/2005: Motion to Dismiss filed; 01/20/06: Opposition Brief filed. (motion still pending) |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| CA | Brown et al v. Ameriquest Capital Corporation et al | Transferred to N.D. IL | Y | Federal Question | 3/28/2005 | Jill H Bowman; John A Yanchunis; Jonathon Andrews Boynton; Sarah Brite Evans | 1) TILA; 2) RESPA; 3) FDCPA; 4) CAL. B&P 17200 | Motion to Dismiss Filed: 12/5/05: Joint Statement re: Revised 26(f) Report filed by parties; 3/6/2006: Parties ordered to file a status report re MDL litigation no later than 3/20/2006. |
| CA | Rosalind Van Gorp et al v. Ameriquest Mortgage Company et al | Transferred to N.D. IL | Complaint Unavailable | Diversity | 9/16/2005 | Daniel Harris; David R. Markham; Katayoun Cathy Kazemi | 2 | 11/28/2005: First Amended Complaint filed; 01/31/2006: Order re Transfer Pursuant to General Order 224 - Transfer declined by Judge Morrow. |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|-------|--------|------------------------------|--------------------|--------------|------------|------------------------|--------|--------|
| CA | Deborah Juillerat v. Ameriquest Mortgage Company | Transferred to N.D. IL | Complaint Unavailable | Federal Question | 11/15/2005 | Andrew Kierstead; Marc R Stanley; Martin Woodward; Matthew J. Zevin; Michael D. Donovan; Roger L. Mandel | Complaint Unavailable | 01/11/2006: Stipulation and Order by Judge Carter re Defendant's time to respond to complaint extended to 30 days following written notice delivered re: Final Determination by MDL Panel Whether Action Will Be Transferred to N. D. Illinois. |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| CA | Medina v. Argent Mortgage Company et al. | Opposition and Motion to Vacate filed by Plaintiffs - Defendants filed motion to vacate as well | N / Y (I am not sure if this is a class action or not. It makes claims on behalf of the general public.) | Federal Question | 7/15/2005 | Kerstin Arusha; James F. Zahradka, II; Kent W. Easter; Kyra Ann Kazantzis; Moses Diaz; Timothy A. Balombin | 1.) Violation of TILA 2.) Violation of RESPA 3.) Violation of Fair Housing Amendments Act 4.) Violation of the Fair Employment and Housing Act 5.) Violation of Equal Credit Opportunity Act 6.) Violation of the Unfair Competition Act 7.) Violation of the False Advertising Act 8.) Fraud 9.) Negligent Mispresenation 10.) Breach of Fiduciary Duty 11.) Negligence 12.) Notary Malfeasence 13.) Violation of California Civil Code section 1632. | 2/1/2006: Memorandum in Opposition to Motion to Stay w/ notice of Motion and MPA; 2/16/2006: Consent to proceed before US Magistrate Judge; 3/7/2006: Clerk's Notice re Continuing Motion Hearing set for 4/12/2006. |
| CA | Keith Towns v. Ameriquest Mortgage Co. | Awaiting Info | Complaint Unavailable | Federal Question | 9/3/2004 | Lewis Nathaniel Nelson | | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| CA | Anne Johnson, et al. v. AMC Mortgage Services | Awaiting Info | Y | Federal Question | 5/26/2006 | Suzanne K. Babb; Christopher G. Costin | Truth in Lending | |
| CO | Thomas Smith et al. v. Argent Mortgage Company | CTO Opposed | N | Federal Question | 11/22/2005 | Thomas Smith, Pro Se and Pam Smith, Pro Se | Truth in Lending | |
| CT | Louis Pasacreta et al. v. Ameriquest Mortgage Co et al. | Transferred to N.D. IL | N | Federal Question | 12/12/2005 | Daniel S. Blinn; Sarah Poriss | Truth in Lending | |
| CT | Roger Belval et al. v. Ameriquest Mortgage Co et al | Transferred to N.D. IL | N | Federal Question | 1/23/2006 | Daniel S. Blinn | Truth in Lending | |
| CT | Robert L. Allan et al. v. Argent Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 1/23/2006 | Daniel S. Blinn | Truth in Lending | |
| CT | Michael Bowe et al. v. Ameriquest Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 1/23/2006 | Daniel S. Blinn | | |
| CT | Susan Fitzgerald et al. v. Ameriquest Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 2/6/2006 | Daniel S. Blinn | Truth in Lending | |
| CT | Monique Belcher et al. v. Ameriquest Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 2/8/2006 | Daniel S. Blinn; Sarah Poriss | Truth in Lending | |
| CT | John W. Anderson, Jr. et al. v. Ameriquest Mortgage Co et al. | Transferred to N.D. IL | N | Federal Question | 2/9/2006 | Sarah Poriss | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| CT | John McCall et al. v. Ameriquest Mortgage Co. et al. | Transferred to N.D. IL | N | Federal Question | 3/14/2006 | Daniel S. Blinn; Sarah Poriss | Truth in Lending | |
| CT | Calvin Duncan et al. v. Ameriquest Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 11/30/2005 | Daniel S. Blinn | Truth in Lending | |
| CT | Bailey et al v. Ameriquest Mortgage Co | Transferred to N.D. IL | N | Federal Question | 3/14/2005 | Daniel S. Blinn; Matthew T. Theriault (Terminated 02/06/2006). | 1.) Violation of TILA. | 01/19/2006: Reply to Response to Motion to Amend / Correct Complaint<br><br>3/3/2005: Motion to Stay Discovery filed by AmeriQuest (pending) |
| CT | Sievers et al v. Ameriquest Mortgage Co et al | Transferred to N.D. IL | N | Federal Question | 8/15/2005 | Peter Lachmann | 1.) Violation of TILA 2.) Violation of Connecticut's Unfair Trade Practices Act 3.) Negligent Misrepresentation | 2/14/06: Motion to Dismiss filed by Ameriquest 3/1/2006: Memorandum in Opposition to Motion to Dismiss filed by Plaintiff |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| CT | Surin v. Alpha Mortgage Lending, LLC et al | Opposition and Motion to Vacate filed by Plaintiffs | Complaint Unavailable | Federal Question | 10/25/2005 | Paul L. Brozdowski | Complaint Unavailable | 1/26/2006: Voluntary Dismissal of Complaint Against AMC Mortgage Services; 3/3/2006: Memorandum in Support re Motion to Stay Discovery filed by Argent Mortgage Co, LLC. |
| CT | Sandra Damm, et al. v. Ameriquest Mortgage Co. | Under review by MDL Panel | N | Federal Question | 3/21/2006 | Daniel S. Blinn | Truth in Lending | |
| CT | Veinot, et al. v. Ameriquest Mortgage Co. | Under review by MDL Panel | N | Federal Question | 3/30/2006 | Daniel S. Blinn | Consumer Credit | Defendants' Answers to Complaint due 6/2/2006 |
| CT | Ingham, et al. v. Ameriquest Mortgage | Under review by MDL Panel | N | Federal Question | 4/13/2006 | Andrew Pizor | Consumer Credit | Defendant's Answer or Motion to Dismiss due by 7/13/2006 |
| CT | Jayleen Lacross v. Ameriquest Mortgage Co., et al. | Under review by MDL Panel | N | Federal Question | 4/27/2006 | Andrew Pizor; Daniel Blinn | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| FL | Barber et al v. Ameriquest Capital Corporation et al | Transferred to N.D. IL | Y | Federal Question | 12/16/2004 | Kelly M. Dermody; Caryn Becker; Douglas Clark Bowdoin; Jonathon Craig Bourne; Kamran Mashayekh; Kelly M. Dermody; Laurence G. Tien; William Roderick Bowsoin | 1.) Defendant violated Floriida's Deceptive and Unfair Trade Practices Act (DUTPA). 1a.) Violated DUTPA by engaging in Unfair and Unconscionable Trade Practices. 1b.) Violated DUTPA by engaging in Deceptice Trade Practices 1c.) Subject to Declaratory Judgement and Injunctive Relief under DUTPA 2.) Defendant's violated Florida Mortgage Lending Act. 3.) Unjust Enrichment | 1/9/2006: Order granting Plaintiff's Motion for Leave to File Reply Memorandum in Support of Motion to Remand, denying Defendant's Motion to Dismiss, and Denying Plaintiff's Motion to Remand 2/14/06 Answer to Complaint filed; 2/17/06 Order Granting Motion to Continue |
| FL | Latonya Williams et al. v. Ameriquest Mortgage Co et al. | Transferred to N.D. IL | Y | Diversity | 6/3/2005 | Gary Klein; Theresa I. Wigginton | | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| FL | Ungar v. Ameriquest Mortgage Company | Transferred to N.D. IL | Y | Diversity | 10/4/2005 | David J. George; Evan J. Kaufman; Robert Jeffrey Robbins; Samuel H. Rudman; Stuart A. Davidson | 1.) Violated DUTPA 2.) Unjust Enrichment 3.) Breach of Contract 4.) Negligent Misrepresentation. 5.) Money Had and Received. | 2/21/2006: Amended Complaint filed against Ameriquest Mortgage Company. |
| FL | Johnnie Faison v. Argent Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 3/17/2006 | Joseph Edward Broadus; Jawdet I. Rubaii | Truth in Lending | |
| FL | Almaguer v. Argent Mortgage, et al | Transferred to N.D. IL | N | Federal Question | 4/24/2005 | Stephen Peter Santiago | 1.) Violation of Truth in Lending Act 2.) Violation of Real Estate Settlement Procedures Act. 3.) Violation of Florida's Deceptive and Unfair Trade Practices Act 3a.) Injunctive releif pursuant to Florida's Deceptive and Unfair Trade Practices Act 4.) Fraud in the inducement | 1/26/2006: First Amended Complaint filed. |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| GA | Campbell v. Ross et al | Opposition filed - Third Party claimants filed motion to vacate | Y | Diversity | 8/5/2005 | J. Michael Campbell<br><br>3rd Party Plaintiffs Represented by Bryan A. Vroon; Jimmie H. Brown; John W. Crongeyer; Ralph O. Scoccimaro<br><br>( Defendant's attorney Ashby L. Kent, Esq withdraws and defendant attorney Joan O'Shea Sullican Esq. is designated on 03/29/06 ) | 1.)  Defendants violate Georgia Fair Lending Act. 2.)  Legal Malpractice against Dewrell Sacks Defendant's 3.)  Conspiracy and Concert of Action Against All Defendants 4.)  Unauthorized Practice of Law Against Dewrell Sacks defendants | 8/5/2005:  Notice of removal; 2/13/2006: Reply to Response filed by Ameriquest Mortgage Company re Motion for Leave to file Sur-Reply Brief in Opposition to Third Party Plaintiff's motion to remand |
| GA | Lynn Julien, et al. v. Ameriquest Mortgage Co. | Awaiting Info | N | Federal Question | 2/13/2006 | Charles McLeod Baird | Truth in Lending | |
| GA | George Jones v. Argent Mortgage Co. | Awaiting Info | N | Federal Question | 4/7/2006 | Charles McLeod Baird | Truth in Lending | |
| HI | Leimana DaMate v. AMC Mortgage Services et al. | Transferred to N.D. IL | N | Federal Question | 3/3/2006 | John Harris Paer | Fair Debt Collection Act | |
| IL | Penny Mulvaney v. Town & Country Credit Corp. | Awaiting Info (IL Central District) | N | Federal Question | 5/1/2006 | Daniel Edelman; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Melissa Harris v. Ameriquest Mortgage Co. | Awaiting Info (IL Central District) | N | Federal Question | 5/15/2006 | Daniel Edelman; Cathleen Combs; James Latturner | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| IL | Thomas Hubbard v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 1/21/2005 | Cathleen Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Marie Furgeson v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 11/23/2004 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Shirley Jones v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 1/25/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Gavione Tammerello v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 1/26/2005 | Stanley Hill; Dalal Jarad | Truth in Lending | |
| IL | Eric Smith v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 2/3/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Rochelle Washington v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 2/18/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Nelson Jimenez et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 2/18/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Earl Key v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 2/23/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Gilbert Treadwell et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 2/23/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|-------|--------|------------------------------|--------------------|--------------|------------|------------------------|--------|--------|
| IL | Terry Talley et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 2/23/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Thomas Murray et al. v. Ameriquest Mortgage Co. | No Transfer Needed | Y | Federal Question | 3/1/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Fair Credit Reporting Act | |
| IL | Brett Wertepny et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 3/9/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Lucille Abercrombie v. Argent Mortgage Co. | No Transfer Needed | N | Federal Question | 3/22/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Johnny Tremble v. Town & Country Credit Corp. | No Transfer Needed | Y | Federal Question | 5/2/2005 | Cathleen M. Combs; Daniel Edelman; Jeremy Patrick Monteiro; James Latturner | Fair Credit Reporting Act | |
| IL | Delois Mills v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 7/8/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Sergio Salazar et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 7/19/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Roger Luedtke et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 8/12/2005 | Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Ramon Zarate v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 3/8/2006 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| IL | James Lemmons v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 8/16/2005 | Daniel Edelman; Albert Hofeld, Jr. | Truth in Lending | |
| IL | Dorothy Brown v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 8/17/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | James Payne v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 8/31/2005 | Daniel Edelman; Albert Hofeld, Jr. | Truth in Lending | |
| IL | Edward Doolittle et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 8/31/2005 | Cathleen M. Combs; Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | William Pintsak et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 8/31/2005 | Daniel Edelman; Albert Hofeld, Jr. | Truth in Lending | |
| IL | Kenneth Brown et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 9/6/2005 | Daniel Edelman; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Michael Holzmeister et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 10/13/2005 | Cathleen M. Combs; Albert Hofeld, Jr.; James Latturner | Truth in Lending | |
| IL | Rose Mayfield v. Town & Country Credit Corp. | No Transfer Needed | Y | Federal Question | 10/25/2005 | Daniel Edelman; Jeremy Patrick Monteiro | Fair Labor Standards Act | |
| IL | Judy Perry v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 10/26/2005 | Daniel Edelman; Albert Hofeld, Jr. | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| IL | Spyros Polydoros et al. v. Town & Country Credit Corp. | No Transfer Needed | N | Federal Question | 11/16/2005 | Francis Richard Greene; Daniel Edelman; James Latturner | Truth in Lending | |
| IL | Jacqueline Buckner v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 12/1/2005 | Cathleen M. Combs; Daniel Edelman; Francis Richard Greene; James Latturner | Truth in Lending | |
| IL | Castella Williams Harris v. Ameriquest Mortgage Co, et al. | No Transfer Needed | N | Federal Question | 7/12/2005 | Daniel A. Edelman; Albert Hofeld, Jr.; Cathleen Combs; James O. Latturner | Truth in Lending | |
| IL | Sandra Bergquist v. Ameriquest Mortgage Co. et al. | No Transfer Needed | Complaint Unavailable | Federal Question | 3/15/2006 | Daniel A. Edelman; Cathleen Combs; Francis Richard Greene; James O. Latturner | Fair Debt Collection Act | |
| IL | Kevin Wessel v. Ameriquest Mortage Co., et al. | No Transfer Needed | N | Federal Question | 4/6/2006 | Daniel Mark Harris; Anthony P. Valach, Jr. | Truth in Lending | |
| IL | Jewell, et al. v. Ameriquest Mortgage Co. | No Transfer Needed | Y | Federal Question | 1/18/2006 | Daniel Mark Harris; Anthony P. Valach, Jr.; Albert Hofeld, Jr.; Cathleen Combs; Daniel Edelman; | Truth in Lending | |
| IL | Thompson, et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 3/20/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Lurry-Payne v. Town & Country Credit Corp. et al. | No Transfer Needed | N | Federal Question | 3/20/2006 | Daniel Edelman; James Latturner; Albert Hofeld, Jr.; Cathleen Combs | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| IL | Rehbock, et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 3/21/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Jude, et al. v. Town & Country Credit Corp, et al. | No Transfer Needed | N | Federal Question | 3/28/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Garcia v. Argent Mortgage Co, et al. | No Transfer Needed | N | Federal Question | 4/3/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | McGowan v. Ameriquest Mortgage Co, et al. | No Transfer Needed | N | Federal Question | 4/3/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Hawkins v. Ameriquest Mortgage Co, et al. | No Transfer Needed | N | Federal Question | 4/4/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Billings, et al. v. Ameriquest Mortgage Co, et al. | No Transfer Needed | N | Federal Question | 4/4/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Henson v. Ameriquest Mortgage Co., et al. | No Transfer Needed | N | Federal Question | 4/5/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Eskra, et al. v. Ameriquest Mortgage Co, et al. | No Transfer Needed | N | Federal Question | 4/5/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Hall v. Ameriquest Mortgage Co, et al. | No Transfer Needed | N | Federal Question | 4/7/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| IL | Magliano, et al. v. Ameriquest Mortgage Co, et al. | No Transfer Needed | N | Federal Question | 4/7/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Martin v. Argent Mortgage Co., et al. | No Transfer Needed | N | Federal Question | 4/7/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Rodriguez, et al. v. Town & Country Credit Corp, e tal. | No Transfer Needed | Y | Federal Question | 4/7/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Anderson, et al. v. Ameriquest Mortgage Co, et al. | No Transfer Needed | N | Federal Question | 4/7/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Jenkins v. Argent Mortgage Co., et al. | No Transfer Needed | N | Federal Question | 4/11/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Green v. Argent Mortgage Co., et al. | No Transfer Needed | N | Federal Question | 4/12/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Douglas Geis v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 3/29/2006 | Anthony Valach; Daniel Mark Harris | Truth in Lending | |
| IL | Ralph Rodriguez, et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 4/19/2006 | Anthony Valach; Daniel Mark Harris | Truth in Lending | |
| IL | Sedgwick, et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 4/26/2006 | Anthony Valach; Daniel Mark Harris | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| IL | Spencer v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 4/28/2006 | Daniel Edelman; Albert Hofeld; Cathleen Combs | Truth in Lending | |
| IL | Renaldo Jones v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 4/28/2006 | Daniel Edelman; Cathleen Combs; James Latturner | Truth in Lending | |
| IL | Balark, et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 5/1/2006 | Daniel Edelman; Albert Hofeld; Cathleen Combs | Truth in Lending | |
| IL | Dougherty, et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 5/3/2006 | Anthony Valach; Daniel Mark Harris | Truth in Lending | |
| IL | Grabowski v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 5/8/2006 | Anthony Valach; Daniel Mark Harris | Truth in Lending | |
| IL | Gburek v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 5/11/2006 | Keith James Keogh; Elizabeth Monkus | Truth in Lending | |
| IL | Besterfield v. Ameriquest Mortgage Co. | No Transfer Needed | Y | Federal Question | 5/12/2006 | Daniel Edelman | Truth in Lending | |
| IL | Tieri v. Ameriquest Mortgage Co., et al. | No Transfer Needed | N | Federal Question | 5/15/2006 | Anthony Valach; Daniel Mark Harris | Truth in Lending | |
| IL | Wisniewski, et al. v. Town & Country Credit Corp. | No Transfer Needed | N | Federal Question | 5/15/2006 | Daniel Edelman; Albert Hofeld | Truth in Lending | |
| IL | Rogers v. Town & Country Credit Corp., et al. | No Transfer Needed | N | Federal Question | 5/16/2006 | Keith James Keogh; Elizabeth Monkus | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| IL | Jiles v. Argent Mortgage Co. | No Transfer Needed | N | Federal Question | 5/17/2006 | Daniel Edelman; Albert Hofeld | Truth in Lending | |
| IL | Walker, et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 5/18/2006 | Daniel Edelman; Albert Hofeld, Cathleen Combs | Truth in Lending | |
| IL | Grabs v. Argent Mortgage Co., et al. | No Transfer Needed | N | Federal Question | 5/18/2006 | Daniel Edelman; Albert Hofeld | Truth in Lending | |
| IL | Edward Smith, et al. v. Ameriquest Mortgage Co. | No Transfer Needed | N | Federal Question | 5/19/2006 | Daniel Edelman; Albert Hofeld | Truth in Lending | |
| IL | Eson, et al. v. Argent Mortgage Co., et al. | No Transfer Needed | N | Federal Question | 5/19/2006 | Daniel Edelman; Albert Hofeld | Truth in Lending | |
| IL | Calvin Brown, et al. v. Ameriquest Mortgage Co., et al. | No Transfer Needed | N | Federal Question | 5/19/2006 | Daniel Edelman; Albert Hofeld | Truth in Lending | |
| IL | Rocco, et al. v. Ameriquest Mortgage Co., et al. | No Transfer Needed | N | Federal Question | 5/24/2006 | Daniel Edelman; Albert Hofeld | Truth in Lending | |
| IL | Dearden v. Ameriquest Mortgage Co., et al. | No Transfer Needed | N | Federal Question | 5/25/2006 | Anthony Valach; Daniel Mark Harris | Truth in Lending | |
| IN | Larry Crane et al. v. Ameriquest Mortgage Co. | Transferred to N.D. IL | Y | Federal Question | 8/23/2005 | Daniel A. Edelman; Jeremy P. Monteiro | Fair Credit Reporting Act | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| IN | Mikowski et al v. Ameriquest Mortgage Company et al | Transferred to N.D. IL | N | Federal Question | 11/14/2005 | Alexander H Burke; Daniel A. Edelman | 1.) Violated Truth in Lending Act. | 1/9/2006: Answer to Complaint filed by Ameriquest Mortgage Company.  2/1/06: Rule 26(f) Report filed.  2/9/2006: Rule 16 Preliminary Pretrial Conference held. Discovery deadline is 6/30/2006; three day jury trial set for 4/23/07. |
| IN | Nelson, et al. v. Ameriquest Mortgage Co., et al. | CTO Filed | N | Federal Question | 4/14/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IN | Jeffress, et al. v. Ameriquest Mortgage Co., et al. | CTO Filed | N | Federal Question | 3/20/2006 | Daniel Edelman | Truth in Lending | |
| IN | Nauracy, et al. v. Ameriquest Mortgage Co., et al. | CTO Filed | N | Federal Question | 4/3/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| IN | Cole, et al. v. Ameriquest Mortgage Co., et al. | CTO Filed | N | Federal Question | 4/5/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IN | Carter, et al. v. Ameriquest Mortgage Co., et al. | CTO Filed | N | Federal Question | 4/6/2006 | Daniel Edelman; Jeremy Patrick Monteiro | Truth in Lending | |
| IN | Belford v. Ameriquest Mortgage Co., et al. | CTO Filed | N | Federal Question | 4/17/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IN | Gillespie v. Ameriquest Mortgage Co., et al. | CTO Filed | N | Federal Question | 4/3/2006 | Daniel Edelman; Albert Hofeld, Jr.; Cathleen Combs; James Latturner | Truth in Lending | |
| IN | Purdy-Roth et al v. Argent Mortgage Company, LLC | Transferred to N.D. IL | Y | Federal Question | 10/26/2005 | Albert Francis Hofeld, Jr.; Cathleen Maria Combs; Daniel A. Edelman; James O. Latturner; | 1.) Violated Truth in Lending Act | 12/22/2005: Answer filed; 12/28/2005: Joint Proposed Case Management Plan |
| LA | Powell et al v. Ameriquest Mortgage Company | Opposition and Motion to vacate filed by Plaintiff | N | Federal Question | 7/21/2005 | Charles M. Delbaum; John K. Parchman | 1.) Violated Truth in Lending Act. 2.) Fraud 3.) Unconscionability under La. R.S. 9: 3516 (36). 4.) Error 5.) Unfair Trade Practices and Consumer Protection Act. | 11/30/2005: Order granting Motion for Partial Summary Judgment; 2/15/2006: Final pretrial Conference set for 8/24/2006 and two day bench trial set for 9/18/06. |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| MA | Isabelle M. Murphy v. Ameriquest Mortgage Co. | Transferred to N.D. IL | Y | Diversity | 12/17/2004 | Shennan Alexandra Kavanagh; Gery E. Klein; Elizabeth Ryan | | |
| MA | Yamil Montanez v. Ameriquest Mortgage Co. | Transferred to N.D. IL | Y | Federal Question | 2/9/2006 | Theodore M. Hess-Mahan; Thomas G. Shapiro | Truth in Lending | |
| MI | Lillian J. Tocco v. Argent Mortgage Co. et al. | CTO Opposed | Complaint Unavailable | Federal Question | 10/14/2005 | Darryl J. Chimko | Other Statutory Actions | |
| MI | Reagan, et al. v. Argent Mortgage Co. | Under review by MDL Panel | N | Federal Question | 3/23/2006 | Marshall A. Yee | Truth in Lending | |
| MI | F itzner, et al. v. Ameriquest Mortgage Co., et al. | Awaiting Info | N | Federal Question | 5/11/2006 | Damiv M. Hall | Fraud or Truth in Lending | |
| MN | Doherty et al v. Town & Country Credit Corp. | Transferred to N.D. IL | Y | Diversity | 3/18/2005 | Gregory Paulson; Richard Fuller; Seymour Mansfield; Susan Ford Bedor; William Crowder (Minneapolis/St. Paul) | No complaint available because case was removed to federal court but see memo in opp to AQ's motion to dismiss; loan discount; UDAP; breach of contract; common law claims | 8/12/05 Report and recommendation denying MtD and Plaintiff's motion to remand denied; 9/29/05 Order adopting report and recommendation; 2/28 granting motion to stay discovery pending transfer to MDL |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| MN | Ameriquest Mortgage Co. v. Lori Mattix, et al. | Awaiting Info | N | Diversity | 5/8/2006 | James Lee; Anne Bergman (counsel for defendants/counter-claimants) | Real Property: Foreclosure | |
| MO | Klutho v. Ameriquest Mortgage Co., et al. | Awaiting Info | Y | Federal Question | 5/8/2006 | David T. Butsch | FCRA | |
| NJ | Kerri Capasso v. Ameriquest Mortgage Co. | Under review by MDL Panel | Y | Diversity | 3/14/2006 | Sean James Mack | Truth in Lending | |
| NY | Madrazo v. Ameriquest Mortgage Co. | Transferred to N.D. IL | Y | Federal Question | 8/19/2005 | Samuel Rudman(Lerach, Coughlin, Stoia, Geller, Rudman & Robbins - Melville, NY); Evan Jay Kaufman (same) | Loan Discount; NY UDAP; common law claims | 12/9/05 Pl.'s Opp to MtD:2/21/06 Order finding moot motion to dismiss. |
| NY | Joseph Miles, Jr. et al. v. Argent Mortgage Co et al. | CTO Opposed | N | Federal Question | 5/27/2005 | David M. Harrison | Truth in Lending | |
| NY | Cheryl Williams et al. v. Ameriquest Mortgage Co | Transferred to N.D. IL | Y | Federal Question | 7/1/2005 | Kelly M. Dermody; Rachel Geman; Gena Elyse Wiltsek | Truth in Lending | |
| NY | Mary Overton v. Ameriquest Mortgage Co. et al. | CTO Opposed | N | Federal Question | 10/6/2005 | Jessica Attie | | |
| NY | Audrey Harding v. Ameriquest Mortgage Co. | Under review by MDL Panel | N | Federal Question | 3/30/2006 | Stephen A. Katz | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| OH | Saunders et al v. Ameriquest Mortgage Co. et al | Transferred to N.D. IL | Y (servicing) | Federal Question | 5/4/2005 | Gary Cook; George Forbes (Forbes, Fields & Assoc. - Euclid, OH) | FDCPA; FCRA; RESPA; HOEPA; Ohio UDAP; common law claims | 10/24/05 AQ filed MtD; 1/16/06 Brief in Opp to MtD filed; 2/6/06 Joint Motion to stay all proceedings filed by all parties |
| OK | Kerry Hooley et al. v. Argent Mortgage Co et al. | Awaiting Info | N | Federal Question | 7/28/2005 | James Dunn; Gregory S. Eldridge | Truth in Lending | |
| OK | David Davis, Jr. et al. v. Argent Mortgage Co. et al. | Awaiting Info | N | Federal Question | 7/28/2005 | James Dunn; Gregory S. Eldridge | | |
| PA | Mark W. Cahalan v. Ameriquest Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 3/8/2005 | Mary Bower Sheats | Truth in Lending | |
| PA | Reuter v. WM Specialty Mortgage LLC , Ameriquest Mortgage Co. | Motion to Vacate filed by Plaintiff | N | Federal Question | 3/8/2005 | David A. Scholl (Newtown Sq., PA) | TILA | 5/13/05 AQ Answer; 2/16/06 Order dismissing action w/ prejudice pursuant to local rule 41.1(b) |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| PA | D'Ambrogi v. Ameriquest Mortgage Co. | Transferred to N.D. IL | Y | Federal Question | 8/19/2005 | Andrew S. Kasmen (Burns & Kasmen - Jenkintown, PA); David Markun (Pacific Palisades, CA); Edward Zusman (Markum, Zusman & Compton); Kevin Eng (same, San Francisco, CA) | FCRA; ECOA; TILA; RESPA; PA UDAP; common law claims | 12/12/05 AQ filed MtD; 12/12/05 Surreply in opp to AQ's MtD; 3/6/06 Matter placed in civil suspense file |
| PA | Stokes Godwin v. Argent Mortgage Co., LLC; HomeQ Servicing Corp.; Mortgage Select Services, Inc. | Motion to Vacate filed by Plaintiff | N | Federal Question | 11/22/2005 | David A. Scholl (Newtown Sq., PA) | TILA; ECOA; RESPA; Pa UDAP; common law claims | 12/28/05 Mortgage Select Answer; 1/3/06 Argent Answer; 1/5/06 Stipulation of dismissal of HomeQ; 3/2/06 Scheduling Order |
| PA | Kahrer v. Ameriquest Mortgage Co. | Motion to Vacate filed by Plaintiff | Y | Federal Question | 3/23/2005 | Daniel Myers (Richardson, Patrick, Westbrook & Birckman - Mt. Pleasant, SC); Gary Lynch (Carson Lynch Ltd. - New Castle, PA) | Complaint Unavailable; Nature of Suit: Consumer Credit; no cause specified | 12/14/05 Order denying AQ's MtD; 2/15/06 Order granting Motion to Stay all Proceedings until March 28. |
| PA | Jobe, et al. v. Argent Mortgage Co. | Under review by MDL Panel | N | Federal Question | 4/4/2006 | Ian Jobe and Catherine Jobe, Pro Se | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|-------|--------|------------------------------|--------------------|--------------|-----------|----------------------|--------|--------|
| RI | Pena v. Ameriquest Mortgage Co. | Opposition filed but plaintiff failed to file motion and brief so action is transferred to N. D. Illinois | N | Federal Question | 12/21/2005 | Chistopher M. Lefbvre (Lefebvre & Sons - Pawtucket, RI) | TILA | 2/22/06 Motion for Consolidation of Actions |
| RI | Jason Gould v. Ameriquest Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 1/27/2006 | Christopher M. Lefebvre | Truth in Lending | |
| RI | Richard J. Silvia v. Ameriquest Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 2/10/2006 | Christopher M. Lefebvre | Truth in Lending | |
| RI | Veronica I. Carney v. Ameriquest Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 2/10/2006 | Christopher M. Lefebvre | Truth in Lending | |
| RI | Daneau v. Ameriquest Mortgage Co. | Opposition filed but plaintiff failed to file motion and brief so action is transferred to N. D. Illinois | N | Federal Question | 12/21/2005 | Chistopher M. Lefbvre (Lefebvre & Sons - Pawtucket, RI) | TILA | 12/21/05 Summons issued as to AQ |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| RI | Eyre v. Ameriquest Mortgage Co. | Opposition filed but plaintiff failed to file motion and brief so action is transferred to N. D. Illinois | N | Federal Question | 12/21/2005 | Chistopher M. Lefbvre (Lefebvre & Sons - Pawtucket, RI) | TILA | 12/21/05 Summons issued as to AQ |
| RI | Parisi v. Ameriquest Mortgage Co. | Opposition filed but plaintiff failed to file motion and brief so action is transferred to N. D. Illinois | N | Federal Question | 12/21/2005 | Chistopher M. Lefbvre (Lefebvre & Sons - Pawtucket, RI) | TILA | 12/21/05 Summons issued as to AQ |
| RI | Frost v. Ameriquest Mortgage Co. | Opposition filed but plaintiff failed to file motion and brief so action is transferred to N. D. Illinois | N | Federal Question | 12/21/2005 | Chistopher M. Lefbvre (Lefebvre & Sons - Pawtucket, RI) | TILA | 12/21/05 Summons issued as to AQ |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| RI | Richard Silvia v. Ameriquest Mortgage Co. | Opposition filed but plaintiff failed to file motion and brief so action is transferred to N. D. Illinois | N | Federal Question | 12/21/2005 | Chistopher M. Lefbvre (Lefebvre & Sons - Pawtucket, RI) | TILA | 12/21/05 Summons issued as to AQ |
| RI | Creamer v. Ameriquest Mortgage Co. | Opposition filed but plaintiff failed to file motion and brief so action is transferred to N. D. Illinois | N | Federal Question | 12/21/2005 | Chistopher M. Lefbvre (Lefebvre & Sons - Pawtucket, RI) | TILA | 12/21/05 Summons issued as to AQ |
| RI | Leclerc v. Ameriquest Mortgage Co. | Opposition filed but plaintiff failed to file motion and brief so action is transferred to N. D. Illinois | N | Federal Question | 12/29/2005 | Chistopher M. Lefbvre (Lefebvre & Sons - Pawtucket, RI) | TILA | 12/29/05 Summons issued as to AQ |
| RI | Patricia Leal v. Ameriquest Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 1/27/2006 | Christopher M. Lefebvre | Truth in Lending | |

| STATE | ACTION | MDL STATUS (as of 6/09/2006) | CLASS ACTION (Y/N) | JURISDICTION | DATE FILED | PLAINTIFF'S ATTORNEYS | CLAIMS | STATUS |
|---|---|---|---|---|---|---|---|---|
| TN | Maria E. Arndt et al. v. Ameriquest Mortgage Co. | Transferred to N.D. IL | N | Federal Question | 7/8/2005 | Jason Demastus; Jerrold Farinash | Personal Injury | |
| TN | Regina Raines v. First American Title Insurance Co. et al. | Transferred to N.D. IL | N | Federal Question | 12/22/2005 | Flethcer Whaley Long | Truth in Lending | |
| TN | Tenita Jones et al. v. Thomas L. Lewis et al. | CTO Opposed | N | Federal Question | 3/7/2006 | Carol Gish; Michael Weinman | Truth in Lending | |
| TN | Reese v. Ameriquest Mortgage Co., Argent, Ace | Motion to Vacate filed by Plaintiffs | N | Federal Question | 10/7/2005 | Sharmila Murthy (Legal Aid Society of Middle TN - Nashville, TN) | TILA; HOEPA | 2/1/06 Order granting Ace's motion to dismiss; 3/3/06 Motion to amend complaint by Reese; |
| WI | Mary Forrest v. Ameriquest Mortgage Co. | CTO Opposed | N | Federal Question | 1/4/2006 | John D. Blythin; Richard Lilly; Robert O'Reilly | Fair Debt Collection Act | |