**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. | ) | |
| MORTGAGE LENDING PRACTICES | ) | |
| LITIGATION | ) | MDL No. 1715 |
| | ) | |
| _____ ) | | Lead Case No. 05-cv-07097 |
| | ) | |
| THIS DOCUMENT RELATES TO ALL | ) | Centralized before Judge |
| ACTIONS | ) | Marvin E. Aspen |
| | ) | |

**ECLG PLAINTIFFS' PROPOSED**
**ORGANIZATION AND CASE MANAGEMENT PLAN**

Plaintiffs represented by Edelman, Combs, Latturner and Goodwin, LLC ("ECLG")

pursuant to the Court's request in open court on February 7, 2006, propose the following plan for

organization and management of this proceeding:

1.      **Selection and Duties of Lead Counsel**

A.      Selection

ECLG is willing and ready to work with any and all law firms representing plaintiffs

in the MDL.  Plaintiffs' counsel were unable to reach agreement among themselves as to which

firms will serve as lead counsel.  ECLG plaintiffs filed contemporaneously with this proposed plan,

on June 13, 2006, a motion for appointment of ECLG as co-lead class counsel.   The Court should

select lead counsel.

B.      Duties

The leadership structure of Plaintiffs' Lead Counsel shall be as follows:

Plaintiffs' Co-Lead Counsel are ECLG and another firm or firms of the Court's

choosing.  Plaintiffs' Co-Lead Counsel shall only act jointly and shall discharge the following

1

duties:

(1)　　To be lead spokespersons before the Court for Plaintiffs;

(2)　　To coordinate (in briefs, oral argument, and any other fashion as may be appropriate) Plaintiffs' positions on all matters arising during all pretrial proceedings;

(3)　　To coordinate for Plaintiffs the conduct of discovery consistent with the requirements of the Fed. R. Civ. P. 26(b)(1) and (2) and (g), including the preparation of joint interrogatories and requests for production of documents and the single examination of witnesses in depositions;

(4)　　To consult with and employ consultants and experts;

(5)　　To coordinate the work of all Plaintiffs' counsel, including the Plaintiffs' Executive Committee and any subcommittees;

(6)　　To monitor the activities of Plaintiffs' counsel to assure that schedules are met and that unnecessary expenditures of time and expenses are avoided;

(7)　　To coordinate settlement negotiations, if any, with defense counsel;

(8)　　To communicate material information concerning the status and developments in this proceeding to all Plaintiffs' counsel;

(9)　　To call meetings of other Plaintiffs' counsel and /or defense counsel to effectuate these provisions as necessary;

(10)　　To collect time and expense records on a quarterly basis, on the 15th day of the month following the end of the quarter, from Plaintiffs' Counsel for work and expenditures for the three-month period ending on the 1st day of that month.  Any time that is not reported on such a periodic basis, and any unreported expenses for which records are then

2

available, will not be compensated or reimbursed, absent good cause shown for the such

reporting failure.  Work for the common benefit of the Plaintiffs in the case must be expressly

approved by Plaintiffs' Co-Lead Counsel or such work will not be compensated unless

reasonably necessary; and

        (11)    To perform such other duties as may be incidental to proper coordination

of Plaintiffs' pretrial and trial activities or authorized by further order of the Court.

        Defendants may rely upon all agreements made with Plaintiffs' Co-Lead Counsel

and such agreements shall be binding on all plaintiffs whose cases are subject to the jurisdiction

of this Court.

**2.    Division of Work Among Lead Counsel and Other Plaintiffs' Counsel:  Plaintiffs' Executive Committee**

        The Plaintiffs' Executive Committee shall consist of one representative of each of

the three-to-four significant groups of cases.

        The Executive Committee shall be consulted by Co-Lead Counsel on substantive

issues to assist in the responsible and efficient presentation of the litigation.  The Executive

Committee may, as requested jointly by Plaintiffs' Co-Lead Counsel, conduct discovery and

perform such other tasks as assigned by Plaintiffs' Co-Lead Counsel.

**3.    Selection and Duties of Liaison Counsel**

        The firm of Edelman, Combs, Latturner & Goodwin, LLC shall serve as Liaison

Counsel to the Court should the Court need to contact Plaintiffs' counsel for scheduling or

related matters.

        <u>Term of Appointment</u>

        Should it be appointed, ECLG would accept the appointment to serve as

Plaintiffs' Co-Lead Counsel or on the Plaintiffs' Executive Committee agree to serve for as long as they remain counsel in the litigation or until such time as the Court determines that a change in the duration of service or other terms of service shall be made. The terms of this order shall apply automatically to actions later instituted, add-ons, or consolidated cases in this Court that involve similar claims.

The Court will appoint the named firms as Plaintiffs' Co-Lead Counsel and /or as members of the Plaintiffs' Executive Committee because of the expectation of their personal commitment and contributions to the prosecution of Plaintiffs' claims and to the successful management of the litigation. For this reason, the Court will look to individual members to satisfy the goals that the Court expects Plaintiffs' counsel to achieve.

**4.** **Discovery Scheduling**

A.      All discovery shall be completed within 24 months from the date of the order setting the scheduling and case management plan.

B.      Discovery shall not be bifurcated.

C.      Production of Documents

1.      Defendants shall produce all documents within their possession concerning each plaintiff, whether individual or class plaintiff, within 60 days of the entry of this Order.

2.      As each new plaintiff is added to the MDL proceeding, Defendants shall produce all documents within their possession concerning each such plaintiff within 60 days after plaintiff is added to this proceeding.

3.      Within 60 days of this Order, defendants shall produce:

a.      All documents responsive to plaintiffs' standard requests for

documents in both individual and class cases. Plaintiffs propose that the parties be required to confer and stipulate to the standard requests. Any standard document requests concerning which the parties are unable to reach agreement will be submitted to the Court for prompt resolution.

        4.     Within 45 days following defendants' timely response to standard document requests, defendant(s) shall respond to any non-standard document requests. Non-standard document requests reflect the fact that plaintiffs, especially in the individual cases, allege varying practices and individuated facts.

        5.     Within 45 days following entry of this Order, plaintiffs in individual cases shall serve any subpoenas for documents on any third parties that are known to plaintiffs and that may be in possession of evidence. (In some cases, the actual closing or disbursing agent is not revealed until well into discovery.)

    D.     Interrogatories

        1.     Within 60 days of this Order, defendants shall answer the plaintiffs' standard interrogatories for class cases.

        a.     Plaintiffs propose that the parties be required to confer and stipulate to the standard interrogatories that defendants will answer. Any standard interrogatories concerning which the parties are unable to reach agreement will be submitted to the Court for prompt resolution.

        2.     Within 60 days of this Order, defendants shall answer the plaintiffs' standard interrogatories for individual cases.

        a.     Plaintiffs propose that the parties be required to confer and stipulate to the standard interrogatories that defendants will answer. Any standard interrogatories concerning which the parties are unable to reach agreement will be submitted to the Court for prompt resolution.

3.      Within 45 days following defendants' timely response to standard interrogatories, defendant(s) shall respond to any non-standard interrogatories. Non-standard interrogatories reflect the fact that plaintiffs, especially in the individual cases, allege varying practices and individuated facts.

E.      Depositions

1.      All depositions may be used in all cases.

2.      There shall not be duplicate depositions of defendants' employees. Unless the parties unanimously agree otherwise, all depositions of a defendant's employee shall cover all cases in which the employee's testimony is pertinent. Necessary subsequent deposition of one person because of a newly added case to this MDL proceeding, will be strictly limited to material not covered in the prior deposition.

3.      Defendant's depositions of individual plaintiffs in individual cases shall not exceed two hours.

4.      Either parties' depositions of closing agents shall not exceed three hours.

5.      In individual cases, plaintiffs' depositions of current or former Ameriquest employees directly involved with the plaintiff's loan shall not exceed three hours.

6.      Depositions of class representatives shall not exceed three hours.

**5.      Consolidation; scheduling motion practice; amendments of pleading; and motions for summary judgment**

General

A.      Any party submitting a motion shall serve the motion on all other parties.

B.      All of Plaintiffs' motions shall be submitted in accordance with the pretrial Order regarding the organization of plaintiff' counsel.

Amendments of Pleadings

C.      In light of the stay currently in effect, within 60 days plaintiffs shall move for leave to amend their complaints as to facts and claims.  To save the parties' expense, plaintiffs could stipulate to permit defendants not to answer complaints plaintiffs know are going to be amended.

Within 90 days, plaintiffs shall move for leave to amend their complaints as to parties.  (Defendants must respond to plaintiffs' standard discovery requests before plaintiffs can know the identities of any assignees of plaintiffs loans that plaintiffs must join.)

Summary Judgment Motions

D.      Plaintiffs propose to select a handful of key cases, in each of three separate tracks, in which to move for summary judgment within 90 days (or sooner) of the Court's entry of the pretrial case management Order.  Plaintiffs will select cases that have claims and facts representative of many other cases.  The three tracks are: borrower class cases, individual TILA rescission cases and non-borrower "Cole" cases.  The cases plaintiffs select will also be either cases in which discovery was completed or near completion prior to  the case's transfer to the MDL or cases in which plaintiffs will propose a "fast tracking" of discovery to ready the case for dispositive ruling by the Court.  This procedure and this Court's ruling with respect to these, select cases will help inform - and hopefully, faciliate - the settlement of a much larger number of similar cases.

**6.      Settlement and/or mediation process**

A.      Settlement discussions should be ongoing in all cases.

B.      Plaintiffs' counsel will confer with defendants' counsel to select a small number of cases that can be set for settlement conference with the Court immediately.

C.      The Court will automatically schedule a "global" settlement conference every three

months.

1.      If an all inclusive or omnibus settlement cannot be reached at the first settlement conference, the parties must discuss piecemeal settlements at all further settlement conferences.

D.      If the parties have not reached a settlement after three Court settlement conferences, the parties shall engage in outside mediation.

**7.      Procedures for filing papers and service of parties**

A.      With respect to filing, the parties shall follow all filing rules and requirements applicable to the practice of law in the Northern District of Illinois.

B.      The parties shall work together to develop a single, master service list that will then be used for every filing made in the case by any party.

**8.      Other Matters Still Before the MDL Panel**

Plaintiffs counsel believes that the status report given by defendants' counsel in open court on June 13, 2006 on other matters pending before the MDL but not yet finally transferred was reasonably accurate and current.

**9.      Listing of other class actions or "tag-along" cases that they anticipate will be joining this action**

As of June 13, 2006, ECLG plaintiffs are aware of the following cases:

Jeffress, et al. v. Ameriquest Mortgage Company, et al. (06 C 0102, N.D. Ind.);
Nauracy v. Ameriquest Mortgage Company, et al. (06 C 0130, N.D. Ind.);
Cole, et al. v. Ameriquest Mortgage Company; et al. (06 C 0135, N.D. Ind.);
Carter et al., v. Ameriquest Mortgage Company, et al. (06 C 0137, N.D. Ind.);
Belford v. Ameriquest Mortgage Company, et al. (06 C 0149, N.D. Ind);
Nelson, et al. v. Ameriquest Mortgage Company, et al. (06 C 0154, N.D. Ind.);
Bothwell, et al. v. Ameriquest Mortgage Company, et al. (06 C 0175, N.D. Ind.);
Miller et al. v. Ameriquest Mortgage Company, et al. (06 C 0189, N.D. Ind.);
Gillespie v. Ameriquest Mortgage Company, et al. (06 C 0220, N.D. Ind.);

Sutton et al. v. Ameriquest Mortgage Company, et al. (06 C 0407, S.D. Ill.);
Parker, et al. v. Ameriquest Mortgage Company, et al. (06 C 0423, S.D. Ill.);
Addison v. Ameriquest Mortgage Company, et al. (06C 0654, E.D. Wis.);
Harless v. Ameriquest Mortgage Company, et al. (06 C 0695, S.D. Ind.);
Smith, et al. v. Ameriquest Mortgage Company, et al. (06 C 0785, S.D. Ind.);
Mulvaney v. Town & Country Credit Corporation, et al. (06 C 1113, C.D. Ill.);
Harris v. Ameriquest Mortgage Company, et al. (06 C 4030, C.D. Ill.);
Kukla v. Ameriquest Mortgage Company, et al. (06 C 12466, E.D. Mich); and
Lehr, et al. v. Ameriquest Mortgage Company, et al. (06 C 12477, E.D Mich).

**10.    Analysis of the impact of the Ameriquest-Attorney General Settlement on this <u>case</u>**

Plaintiffs, having thoroughly read the text of the attorneys general settlement ("AGS") agreement as well as conferred with the office of the Illinois Attorney General, do not believe the settlement has any significant impact whatsoever on the potential outcome or disposition of cases pending in the MDL.  ECLG plaintiffs' analysis follows.

After a year of settlement negotiations and "years" of investigation pursuant to their unique, pre-filing subpoena power, the attorneys general of 49 states[1], including Illinois, reached a nationwide settlement with ACC Capital Holdings Corporation ("ACC Capital") and three of its subsidiaries, Ameriquest Mortgage Company, Town and Country Credit Corporation and AMC Mortgage Services, Inc.  The Court should note that Argent Mortgage Company, LLC ("Argent"), also a subsidiary of ACC and an affiliate of Ameriquest, is <u>not</u> a party to the AGS.[2]  Each state AG will file a complaint and the settlement agreement, which will have to be court-approved.

The AGS calls for ACC Capital to: (1) pay $295 million to borrowers in restitution

---

[1]Ameriquest and its affiliates operate in 49 states and the District of Columbia.  They do not operate in Virginia.

[2]The AGS agreement is limited to entities that engaged in "Retail Based origination and funding of" consumer mortgage loans.  (AG Ag, p. 1).  Argent is a wholesale lender that deals directly with brokers, not consumers.  However, the release contained in the AGS covers claims against Argent (as a subsidiary of ACC), so people participating in the AGS release all claims against Argent.

to borrowers in various states, based upon formulas to be developed by each participating state, and to pay $30 million to the states' AGs for attorneys' fees and investigation costs (AGS, pp. 7-8); (2) stop certain lending practices detailed in the AGS and implement specified, new lending practices by March 15, 2007, including mandatory training for all employees on the lending practice requirements of the AGS; and (3) submit to an independent monitor with broad investigation powers for five years to ensure that the requirements in the AGS are complied with. ACC will have to pay approximately $11.5 million for monitoring. (AGS, p. 37).

The settlement will provide relief to borrowers who obtained mortgages from Ameriquest and its affiliates between January 1, 1999, through December 31, 2005. (AGS, p. 7). Borrowers are divided into two classes, Sub-Fund A and Sub-Fund B. (Id.). Class A consists of borrowers who got loans between January 1, 1999 - April 1, 2003, while class B covers January 1, 1999 - December 31, 2005. (Id.). According to the Illinois AG's office and consistent with the time line contained in the AGS, the parties are now in the process of choosing an Administrator for the distribution of payments under the Agreement. (Id., p. 33). ACC will have to pay approximately $7.5 million for administration. (Id.).

The AGS is an "opt-in" not an opt-out agreement; notified borrowers who opt-in will release all claims against Ameriquest and Argent. The Illinois AG estimates that Illinois borrowers will receive initial notification of the AGS in autumn, 2006. (Hofeld Affidavit, Exhibit A). Borrowers who opt-in to the AGS will be required to waive all legal claims. Borrowers who do not opt-in will have their claims preserved. Borrowers who are class members in cases pending in the MDL will likely receive both a class notice and a notice from their state AG. They will have a choice of recovering under one or the other procedure.

10

The maximum amount that each borrower could receive under the AGS is actually insignificant. For example, Of the $325 million from the AG settlement, Illinois will receive a total of $11.6 million, of which $10 million will actually be paid to Illinois consumers.[3] However, according to the investigating attorneys in the Consumer Protection Division of the Illinois AG, there are approximately 49,000 Illinois borrowers contained in classes A and B combined. (Hofeld Affidavit, Exhibit A). Most borrowers in Class A will qualify for some relief; the same is not true of Class B. (Id.) According to the Illinois AG's office, eligible borrowers in Class A will receive a minimum of $600 and a maximum of $1,000. (Id.). The average award for borrowers in Class B will be approximately $300. The exact amounts will be determined by a combination of per capita and formula-based (i.e., harm-based) distributions. (Id.).

WHEREFORE, plaintiffs in the ECLG cases respectfully request that the Court enter the above proposed Order for Organization and Case Management of the MDL Proceeding.

Respectfully Submitted,

s/Al Hofeld, Jr.
Al Hofeld, Jr.

Daniel A. Edelman
Cathleen Combs
James Latturner
Tara Goodwin
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th floor

---

[3]$1.6 million will help cover the costs of the Illinois AG's investigation, consumer education and enforcement programs. (Exhibit C, p. 1).

11

Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\16124\pleading\case management plan