**Exhibit 9**



NIALL P. MCCARTHY (#160175)
ELIZABETH C. PRITZKER (#146267)
NIKI B. OKCU (#229345)
**COTTCHETT, PITRE, SIMON & MCCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000

GEORGE DONALDSON (#79971)
DANIEL B. HARRIS (#117230)
**LAW OFFICES OF GEORGE DONALDSON**
456 Montgomery Street
Suite 1250
San Francisco, CA 94104
Telephone: (415) 394-8500

*Attorneys For Plaintiffs And The Class*

BERNARD E. LESAGE (#61870)
ADAM J. BASS (#156900)
SARAH K. ANDRUS (#174323)
**BUCHALTER, NEMER, FIELDS & YOUNGER, A Professional Corporation**
601 South Figueroa Street
Twenty-Fourth Floor
Los Angeles, CA 90017
Telephone: (213) 891-0700

RAOUL D. KENNEDY (#40892)
DAVIDSON M. PATTIZ (#189834)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Four Embarcadero Center
San Francisco, CA 94111
Telephone (415) 984-6400

*Attorneys for Defendants*

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| Coordination Proceeding Special Title (Rule 1550(b)), <br><br> AMERIQUEST CASES <br><br> Included Actions: <br><br> Bryan v. Ameriquest Mortgage Company <br><br> Pierceall v. Ameriquest Mortgage Company and Ameriquest Capital Company | Judicial Council Coordination Proceeding No. 4162 <br><br> Superior Court of California, County of Orange, Case No. 00CC12831 <br><br> Superior Court of California, County of San Mateo, Case No. 415620 <br><br> **CLASS ACTION** <br><br> **STIPULATION AND AGREEMENT OF SETTLEMENT** |

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

STIPULATION AND AGREEMENT OF SETTLEMENT

# TABLE OF CONTENTS

Page Nos.

I.    RECITALS............................................................................................1

II.   DISCOVERY........................................................................................5

III.  SETTLEMENT PROCEEDINGS.......................................................6

IV.   SETTLEMENT RELIEF.......................................................................7

      A.    Economic Terms.........................................................................7

            1.    Material Increases in APR (Interest Rate and Points)...........................7

            2.    Material Increases in APR (Loan Type)...............................8

            3.    Material Increase in APR (Interest Rate and Points) For Loans
                  Obtained Between February 3, 2003 and February 29, 2004 With
                  or Without A Change In Loan Product Between A Fixed and An
                  Adjustable Rate Mortgage......................................................9

            4.    Prepayment Penalties.............................................................9

            5.    Loan That Did Not Include Monthly Payments for Property
                  Taxes and Insurance, Whereas the Preliminary Disclosure Do
                  Not Reflect This Fact.............................................................10

            6.    Economist To Calculate Restitution Available to Class Members..........10

            7.    Persons Excluded From the Class...........................................11

            8.    Cost of Claims Administration/Notice.....................................11

            9.    Minimum Guaranteed Payment..............................................11

      B.    Business Practice Changes.......................................................12

            1.    Adherence To Best Lending Practices...................................12

            2.    Enhanced Disclosure.............................................................13

            3.    Notification of Loan Term Changes......................................15

            4.    Written Disclosures Of Changes In Loan Terms At Loan Closing.........15

      C.    Additional Confirmatory Discovery.........................................15

V.    RELEASE BY CLASS MEMBERS.....................................................16

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

i

STIPULATION AND AGREEMENT OF SETTLEMENT

1    VI.    RELEASE BY DEFENDANTS................................................17

2    VII.   NOTICE AND APPROVAL OF SETTLEMENT..............................18

3    VIII.  EXCLUSION FROM AND OBJECTIONS TO SETTLEMENT..............20

4    IX.    CLAIMS...................................................................22

5           A.    Simple Proof of Claims Form for All Class Members................22

6                 1.    Mortgage Loans Obtained On Or Before February 2, 2003.................22

7                 2.    Mortgage Loans Obtained On Or After February 3, 2003...................23

8                 3.    Undisclosed Prepayment Penalties: All Loans Within Class Period........23

9           B.    Two-Tier Claims Administration Process...............................24

10                1.    Mortgage Loans Obtained On Or Before February 2, 2003.................24

11                2.    Mortgage Loans Obtained On or After February 3, 2003...................25

12          C.    Selection of Settlement Administrator.................................26

13   X.     STAY OF TRIAL PROCEEDINGS......................................26

14   XI.    ATTORNEYS' FEES AND COSTS/INCENTIVE FEES....................26

15   XII.   TERMINATION OF THIS AGREEMENT................................28

16   XIII.  NO ADMISSION OF WRONGDOING..................................28

17   XIV.   DISMISSAL................................................................29

18   XV.    CONTINUING JURISDICTION.........................................29

19   XVI.   MISCELLANEOUS PROVISIONS........................................29

20          A.    Neutral Interpretation................................................29

21          B.    Choice of Law.........................................................30

22          C.    Additional Acts to Effectuate Agreement............................30

23          D.    No Oral Modification..................................................30

24          E.    Competency; Independent Counsel..................................30

25          F.    Entire Agreement.....................................................30

26          G.    Counterparts...........................................................31

27

28

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

ii

STIPULATION AND AGREEMENT OF SETTLEMENT

1   This Stipulation and Agreement of Settlement ("the Agreement") is entered into among

2   the following parties, by and through their respective counsel of record, subject to approval of the

3   Court:

4   (i.)   Class Representatives Kristina Lisper (f/k/a Kristina Pierceall), Marsha Butler,

5   Glenn Bryan, and Shalimar Bryan (collectively, the "Named Plaintiffs"), on behalf of themselves,

6   individually, as private attorneys general and on behalf of each member of the four state Class, on

7   the one hand, and

8   (ii.)   Ameriquest Capital Corporation and Ameriquest Mortgage Company (collectively

9   "Ameriquest" or "Defendants"), on the other.

10   IT IS HEREBY STIPULATED AND AGREED, by and among the parties, that all

11   matters alleged in the Consolidated Amended Complaint filed in the coordinated proceeding

12   entitled *Ameriquest Cases*, Judicial Council Coordination Proceeding No. 4162, are settled,

13   compromised, and dismissed, pursuant to a judgment on the merits, and with prejudice, on the

14   terms and conditions set forth in this Agreement, subject to the approval of the Court (the

15   "Settlement").

16   **I.     RECITALS**

17   A.   On or about June 2, 2000, Plaintiff Ethyl Reed, represented by the Law Offices of

18   Cotchett, Pitre, Simon & McCarthy, filed a putative class action complaint against Ameriquest

19   Mortgage Company and Ameriquest Capital Corporation in San Mateo County, *Reed v.*

20   *Ameriquest Mortgage Company et al.*, Case No. 413158 ("the *Reed* Action"), alleging, among

21   other things, violations of Cal. Bus. & Prof. Code §§ 17200 and 17500. Plaintiff Reed died after

22   the commencement of the litigation but, during her lifetime, and at all relevant times, was a

23   resident of East Palo Alto, California. Following Plaintiff Reed's death, the litigation was

24   pursued by her nephew, Brian Lax.

25   B.   On or about October 25, 2000, Plaintiffs Glenn Bryan and Shalimar Bryan,

26   represented by the Law Offices of George Donaldson, filed a putative class action complaint

27   against Ameriquest Mortgage Company in Orange County, *Bryan v. Ameriquest Mortgage*

28   *Company*, Case No. 00CC12831 ("the *Bryan* Action"), alleging, among other things, violations

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2                                    1

STIPULATION AND AGREEMENT OF SETTLEMENT

1    of Cal. Bus. & Prof. Code §§ 17200 and 17500 *et seq.*

2        C.      On or about January 25, 2001, Plaintiff Kristina Pierceall, represented by the Law

3    Offices of Cotchett, Pitre, Simon, & McCarthy filed a putative class action complaint against

4    Ameriquest Mortgage Company and Ameriquest Capital Corporation in San Mateo County,

5    *Pierceall v. Ameriquest Mortgage Company, et al.,* Case No. 415620 ("the *Pierceall* Action"),

6    alleging causes of action for Violations of Cal. Bus. & Prof. Code §§ 17200 and 17500 *et seq.*

7    and Unjust Enrichment, among others.

8        D.      On or about July 24, 2001, the *Bryan, Pierceall* and *Reed* Actions were

9    coordinated into a single Judicial Council Coordinated Proceeding, JCCP No. 4162, in the San

10   Mateo County Superior Court.

11       E.   .   On or about February 4, 2002, the Court appointed the Law Offices of Cotchett,

12   Pitre & Simon (now Cotchett, Pitre, Simon & McCarthy), as Liaison Counsel for all Named

13   Plaintiffs, pursuant to Rule 1506 of the California Rules of Court.

14       F.      On or about April 8, 2002, Plaintiffs filed a Consolidated Amended Class Action

15   Complaint alleging causes of action for Violations of Cal. Bus. & Prof. Code §§ 17200 and

16   17500 *et seq.*; and Unjust Enrichment, among others (the "Coordinated Class Action").

17       G.      On or about June 13, 2002, the Law Offices of George Donaldson filed an

18   Amendment to the Consolidated Amended Class Action Complaint adding Marsha Butler as a

19   Named Plaintiff in the action.  Kristina Pierceall (now Kristina Lisper), Glenn Bryan, Shalimar

20   Bryan and Marsha Butler are collectively referred to as "Class Representatives" or "Named

21   Plaintiffs."

22       H.   .Ameriquest denies the allegations of the Consolidated Amended Class Action

23   Complaint, as well as the allegations of the complaints filed in the *Reed, Bryan* and *Pierceall*

24   Actions, and denies that Plaintiffs or the Class have been harmed by any act or omission of

25   Ameriquest.  Ameriquest further denies that it has engaged in any unfair business practice and, to

26   the contrary, contends that it has always demonstrated a deep commitment to promoting

27   consumer understanding.  The Parties' respective positions are set forth more fully in the Court

28   file in the Action.

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

2

STIPULATION AND AGREEMENT OF SETTLEMENT

I. On or about August 5, 2002, the Court entered a Judgment of Dismissal of the *Reed* Action in favor of Defendants.

J. On or about March 26, 2003, the Court entered an order certifying the case as a multi-state class action as to the remaining causes of action for Violations of Business and Professions Code §§ 17200 and 17500, and Unjust Enrichment, and appointing Named Plaintiffs Kristina Pierceall (now Kristina Lisper), Glenn Bryan, Shalimar Bryan, and Marsha Butler as Class Representatives. As of March 26, 2003, all other causes of action had been dismissed from the Coordinated Class Action, either as a result of Ameriquest's Demurrer to the Consolidated Amended Complaint or Ameriquest's Motions for Summary Adjudication.

K. On or about March 12, 2004, after issuance of an alternative writ of mandate from the California Court of Appeal for the First Appellate District, the Court issued a revised order certifying the case as a four-state class action, and approving a long and short form of Class Notice. In relevant part, the Class Notice identified Class Members as borrowers who obtained home mortgage loans from Ameriquest Mortgage Company, or from its predecessor, Long Beach Mortgage Company, secured by real property in California, on or after October 25, 1996 through February 29, 2004, or borrowers who obtained home mortgage loans from Ameriquest Mortgage Company secured by real property in Texas, Alabama, and Alaska, on or after April 8, 1998 through February 29, 2004, and whose final loan terms differed from those reflected in the preliminary loan disclosures in one or more of the following respects:

1. the loan obtained had (or has) an adjustable interest rate, whereas the Preliminary Disclosures[1] provide for a fixed interest rate;
2. the loan obtained had (or has) an interest rate higher than the rate reflected in the Preliminary Disclosures;
3. the loan obtained required loan origination and/or discount fees, whereas the Preliminary Disclosures reflected no such fees or lower fees;

[1] "Preliminary Disclosures," for purposes of this Settlement Agreement, are defined as the Good Faith Estimate and Preliminary Truth in Lending Disclosure Statement that lenders are required to mail to potential borrowers within three days of receipt of an application for certain real estate secured mortgage loans. The loan terms contained in the final loan documents signed by each borrower are collectively referred to as the "Final Loan Documents" for purposes of this Settlement Agreement.

4.    the loan obtained included (or includes) a prepayment penalty, whereas either the Preliminary Disclosures do not reflect such a penalty or representations were made to borrowers that there would be no such penalty; and /or

5.    the loan obtained does not include monthly payments for property taxes and insurances, whereas the Preliminary Disclosures do not disclose this fact.

L.    On or about April 2, 2004, the approved form of Class Notice was mailed to approximately 62,000 putative Class Members whose names and addresses could be identified by Ameriquest and its counsel from Ameriquest's electronic files. The Class Notice was also published in *USA Today* on April 2, 2004, and again on April 8, 2004.

M.    By court order, Class Members had until May 14, 2004 to opt-out of the Class. As of that date, of the approximately 62,000 putative Class Members who were mailed Class Notice, only 134 Class Members (less than 1/4 of one percent) elected to opt out of the Class.

N.    Ameriquest's Motion to Decertify the Class was heard by the San Mateo County Superior Court on August 13, 2004. After hearing oral arguments, and considering additional evidence proffered by Ameriquest – including depositions of 20 Class Members taken by Ameriquest in California, Alaska, Texas, and Alabama – since certification, the Court issued an order denying Ameriquest's Motion to Decertify the Class. At the time of settlement, Ameriquest had prepared an appellate challenge to that decision, which it did not file in light of the parties' settlement.

O.    On or about September 24, 2004, after a manual search of Ameriquest's records, Supplemental Class Notice was mailed to approximately 71 additional Class Members that could not have been identified from its computer records and could only be identified by manual review of the files . The opt-out period for the Supplemental Class Notice expired on October 25, 2004. As of that date, of the 71 additional Class Members who were mailed Notice, none had elected to opt out of the Class.

/ / /

/ / /

/ / /

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

4

STIPULATION AND AGREEMENT OF SETTLEMENT

## II.   DISCOVERY

A.      Named Plaintiffs, by and through their counsel, have undertaken substantial informal and formal discovery over the course of over four years of litigation.  Approximately 60 depositions have been conducted.  Plaintiffs have completed depositions of 32 Ameriquest employees, officers, directors, and/or managing agents.  Plaintiffs have also taken the deposition of Ameriquest's expert, Sharon Kelly, Ph.D.

B.      Ameriquest has taken depositions of all four Class Representatives, one former Ameriquest employee, and 20 absent Class Members.

C.      In addition, over 1.3 million documents have been exchanged and produced by the parties.  Over the course of the litigation, Plaintiffs' counsel has examined over 40,000 pages of training manuals, policies and procedures, sales training materials, and other company documents; over 55,000 pages of borrower loan files; and over 1,000,000 (one million) internal e-mail documents produced by Ameriquest.

D.      In addition, Named Plaintiffs have served on Ameriquest four sets of form interrogatories, two sets of request for admissions, nine sets of special interrogatories, and fifteen sets of document requests.

E.      In addition, Ameriquest has served on Named Plaintiffs seven sets of form interrogatories, six sets of requests for admissions, six sets of special interrogatories, and fourteen sets of requests for documents.

F.      In addition, in the course of this discovery effort, Named Plaintiffs, by and through their counsel, and in consultation with experts retained for the purposes of litigation, developed a methodology for analyzing and computing the alleged potential economic burden to Class Members as a result of differences in loan terms between the date of Preliminary Disclosures, and the date of signing of the Final Loan Documents.  That methodology will be used to calculate restitution to all eligible Class Members.

/ / /

/ / /

/ / /

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

5

STIPULATION AND AGREEMENT OF SETTLEMENT

## III.  SETTLEMENT PROCEEDINGS

A.    In February 2003, the parties agreed to pursue settlement by mediation before an agreed-upon neutral, retired San Francisco Superior Court Judge William J. Cahill, at JAMS in San Francisco, California.  Despite a full-day mediation, the parties' attempts to resolve the litigation by mediation, in February 2003, were not successful.

B.    Beginning on August 27, 2004, and continuing on September 13 and 20, 2004, Class Counsel and Counsel for Defendants participated in three Mandatory Settlement Conferences before two judges of the San Mateo County Superior Court.

C.    The parties continued their settlement negotiations throughout September 2004. Class Counsel and Counsel for Defendants pursued a course of detailed, face-to-face and telephonic negotiations.  On the evening of September 29, 2004, the parties finally reached a settlement, in concept, on economic terms, and agreed to further discuss and negotiate injunctive relief and business practice changes.

D.    Thereafter, on October 1, 4, and 5, 2004, the parties conducted further settlement discussions regarding injunctive relief and business practice change issues.  As part of this effort, Class Counsel met face-to-face with Defendants and their counsel at Defendants' office in Orange, California, on October 5, 2004, for a detailed discussion of Plaintiffs' requested injunctive relief and business practice changes.  In the course of these face-to-face discussions, the parties reached a settlement on certain injunctive relief and business practice change issues.

E.    After the parties had reached an agreement to settle on all substantive aspects of the Class settlement, the parties' met and conferred in an effort to settle and resolve the amount of attorneys' fees and costs to be paid to the Class for attorney work performed in the course of the litigation.  Class Counsel insisted that no fee negotiation take place until after the relief to the Class was negotiated.  Ameriquest has agreed to pay all litigation expenses incurred by Plaintiffs and Class Counsel, and to pay all costs associated with the mailing and publication of Notice of Proposed Class Action Settlement, and claims administration.  These costs shall be paid from the $15 million Guaranteed Minimum Payment described in Paragraph IV.A.9. Ameriquest has also agreed to pay Plaintiffs' and Class Counsel's attorneys' fees in an amount

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

STIPULATION AND AGREEMENT OF SETTLEMENT

1   not to exceed ten million dollars, subject to Court approval. The attorneys' fees will be paid by

2   Ameriquest separately from any settlement payments made to the Class, and shall *not* be paid

3   from the Guaranteed Minimum Payment described below.

4         F.      Class Counsel agrees to settle this class action litigation pursuant to the

5   provisions of this Agreement, set forth in detail below, considering, among other things:

6               1.      The substantial benefits to the Class under the terms of this Agreement;

7               2.      The attendant expense, risks, difficulties, delays, and uncertainties of trial

8                    and post-trial proceedings; and

9               3.      The desirability of consummating this Agreement to provide effective

10                   relief to the Class.

11        G.      Both Class Counsel and the Class Representatives agree that the Agreement

12  provides fair, reasonable, and adequate relief to the Class, and that settlement on the agreed

13  terms set forth below is in the best interests of the Class.

**IV.   SETTLEMENT RELIEF**

    **A.   Economic Terms**

16        The parties agree the approximate value to the Class of the economic relief is fifty million

17  dollars ($50 million). Ameriquest will pay class members on a claims-made basis following

18  submission of a Valid Claim, as follows:

19              **1.   Material Increases in APR (Interest Rate and Points)**

20                   Class Members who experienced a "material increase in economic burden"

21                   as measured by APR as a result of changes in interest rate, loan discount

22                   fees, or loan origination fees ("points") between the date of the last

23                   Preliminary Disclosures and the date of the signing of Final Loan

24                   Documents ("Final Loan Closing"), will be eligible for a settlement

25                   payment in excess of the "material increase in economic burden" for such

26                   changes ("Eligible Class Members"). For purposes of this Agreement and

27                   for the Settlement, "material increase in economic burden" shall mean any

28

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

7

1   change in excess of a 0.9% in Annual Percentage Rate ("APR"[2]) as

2   measured between the date of the last Preliminary Disclosures and the

3   Final Loan Documents.[3]   The settlement payment to which each Eligible

4   Class Member will be eligible, following submission of a valid Proof of

5   Claim Form, shall be pursuant to the formula attached as Exhibit "A"

6   ("Plan of Allocation.") Eligible Class Members shall be entitled to a refund

7   of all charges in excess of a 0.9% increase in APR through the date the

8   loan closed or December 31, 2004, whichever is earlier.  In addition,

9   Eligible Class Members who had loans with Ameriquest that were still

10  performing as of December 31, 2004 are entitled to a settlement payment

11  for the time period beyond December 31, 2004, as calculated in Exhibit A.

12  **2.       Material Increases in APR (Loan Type)**

13  The Parties acknowledge and agree that Eligible Class Members who experienced a

14  "material increase in economic burden"[4] as a result of a loan product change (i.e., fixed to

15  adjustable rate mortgage), between the date of the last Preliminary Disclosure and the date of

16  Final Loan Closing, will be eligible for a settlement payment as calculated in Exhibit A.  The

17  settlement payment to which each Class Member will be eligible, following submission of a valid

18  Proof of Claim Form, shall be calculated as the increase in interest rate and/or points between the

19  date of the last Preliminary Disclosures, and the Final Loan Documents, as adjusted by the fixed

20  rate differential based on HUD data (i.e., 1.16% for loans of a term less than or equal to 180

21

22  [2]      APR, for purposes of this Agreement and for Settlement, is equal to the industry-standard measure of APR, as modified in the formula attached as Exhibit "A" ("Plan of Allocation").

23
24  [3]      The term "material increase" is a defined term for purposes of this Settlement Agreement only and does not connote or constitute an admission by Ameriquest that a 0.9% increase in APR between Preliminary Disclosures and Final Loan Closing is either an unjustified increase, an undisclosed increase, an alleged "bait and switch" or otherwise gives rise to liability in any subsequent action or proceeding. As used herein, the definition of "material increase" as 0.9 percent increase was simply the agreed upon standard for restitution in this class action only.

25

26  [4]      "Material Increase" as used for loans which included a loan product change from a fixed interest rate to an adjustable interest rate between the Preliminary Disclosures and Final Loan Closing is set forth in the Plan of Allocation attached as Exhibit "A", which requires an increase in APR of greater than 0.9% as weighted by the values attributable by Plaintiffs' expert for the change in such loan terms.

27

28

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

8

**STIPULATION AND AGREEMENT OF SETTLEMENT**

1  months and 1.62% for loans of a term greater than 180 months ("HUD Differential")), as

2  computed by the Plan of Allocation attached hereto as Exhibit A.

3         3.     <u>Material Increase in APR (Interest Rate and Points) For Loans</u>

4                    <u>Obtained[5] Between February 3, 2003 and February 29, 2004 With or</u>

5                    <u>Without A Change In Loan Product Between A Fixed and An</u>

6                    <u>Adjustable Rate Mortgage</u>

7         Beginning on February 3, 2003, and continuing through the present, Ameriquest has

8  instituted fixed pricing which substantially eliminates discretion from branch personnel to change

9  loan terms in a pattern of bait and switch. Due to this consumer protection enhancement, Class

10  Counsel and Class Representatives agree that Ameriquest loans made in California, Texas,

11  Alabama, and Alaska between the dates of February 3, 2003 to February 29, 2004 will require

12  additional assurances under oath that borrowers were subjected to changes in loan terms that

13  amounted to an alleged "bait and switch" before any restitution under the Plan of Allocation may

14  be provided. For good cause shown, i.e., evidence in Ameriquest's possession that the borrower's

15  declaration under oath regarding an alleged "bait and switch" is inaccurate, Ameriquest shall have

16  the right to test the accuracy of each such borrower's declaration (for loans obtained between

17  February 3, 2003 and February 29, 2004) in a binding arbitration before a single neutral judge

18  affiliated with JAMS in either San Francisco or such other more convenient venue as may be

19  agreed to by the parties. Any such arbitration shall be tried pursuant to the JAMS streamlined

20  Arbitration Rules and Procedures with all arbitrator fees to be paid by Ameriquest. Should

21  Ameriquest choose to challenge any claim covered by this Paragraph, the claimant(s) shall bear

22  the burden of proving by a preponderance of the evidence that he and/or she was baited and

23  switched as alleged.

24         4.     <u>Prepayment Penalties</u>

25         Those Class Members whose Preliminary Disclosures did not affirmatively reflect that the

26  loan may contain a prepayment penalty, and who ultimately actually paid a pre-payment penalty,

27  or who have a prepayment penalty due at the time of distribution of the Settlement funds, will be

28    [5] "Obtained" for purposes of this Agreement means the date Ameriquest funded the loan.

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

9

STIPULATION AND AGREEMENT OF SETTLEMENT

1    eligible for a settlement payment for undisclosed prepayment penalties, on a claims-made basis.

2    For purposes of this Agreement and Settlement, each eligible Class Member shall, upon

3    submission of a valid Proof of Claim Form, receive a fifty percent (50%) refund of any pre-

4    payment penalty that the eligible Class Member has paid. Ameriquest has identified 1,671 Class

5    Members who potentially fall into this category. Refunded amounts for prepayment penalties

6    paid to eligible Class Members under this paragraph by Ameriquest will be offset by any amounts

7    that each such eligible Class Member received pursuant to settlement of the class action litigation

8    in *Ansley v. Ameriquest Mortgage Company*, Orange County Superior Court No. 01CC00220.

9        **5.**    **Loans That Did Not Include Monthly Payments for Property Taxes**

10               **and Insurance, Whereas the Preliminary Disclosures Do Not Reflect**

11               **This Fact**

12       The only restitution paid to any Class Members falling within this subclass identified in

13   the Notice to the Class will be pursuant to the Plan of Allocation formula(s) identified in

14   Paragraphs IV.A.1-4, above.

15       **6.**    **Economist To Calculate Restitution Available to Class Members**

16       The amount of restitution, if any, to which Class Members may be eligible under the Plan

17   of Allocation and formulas described in IV.A.1-4 shall be determined by Plaintiffs' retained

18   expert, Law Economic and Consulting Group ("LECG"), subject to confirmation of the

19   calculation by Ameriquest's retained expert, Economic Research Services ("ERG") Group. After

20   expiration of the claims period, Ameriquest will provide LECG and Class Counsel with any

21   additional pertinent loan data as may be required for this purpose. As soon as practicable after

22   receipt of Ameriquest's loan data, LECG and ERG Group will provide Ameriquest and Class

23   Counsel with a written report setting forth the amount of restitution, if any, to which each Class

24   Member who submitted a Valid Claim Form may be eligible. Ameriquest will have an

25   opportunity to challenge LECG's calculations as set forth in Section IX.B. (1)(b). Ameriquest

26   shall pay all costs associated with LECG's and ERG Group's analysis and report, which will be

27   considered "Claims Administration" pursuant to Section III.E.

28   ////

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

10

1    7.    <u>Persons Excluded From the Class</u>

2    The following persons are excluded from the Class, this Settlement Agreement and

3    Release, and from any recovery pursuant to this Settlement: Defendants, their agents and

4    employees; borrowers who have previously opted-out of the Class; and borrowers who have

5    released Defendants from the claims raised in this action.

6    8.    <u>Cost of Claims Administration/Notice</u>

7    Ameriquest shall pay all costs associated with the mailing and publication of Notice of

8    Proposed Class Action Settlement, the LECG and ERG Group analyses and report described in

9    IV.A.6, above, and other claims administration, which sums shall be paid from the Minimum

10   Guaranteed Payment, described in Paragraph IV.A.9.

11   9.    <u>Minimum Guaranteed Payment</u>

12   Ameriquest will, exclusive of payment of attorneys' fees, make a minimum guaranteed

13   payment of fifteen million dollars ($15 million). Thus, if the total of:

14        (a)    all Valid Claims submitted for settlement payment as described in

15               Paragraph IV.A.1-4;

16        (b)    payment of all claims administration, mailing, publication, and

17               notice; and

18        (c)    payment of Class Counsel's litigation expenses described in

19               Paragraph XI.B., and

20        (d)    payment of any court awarded incentive fees,

21   when aggregated, amounts to less than $15 million dollars plus any accrued interest, Ameriquest

22   shall pay an amount equal to the sum of the difference between $15 million dollars, plus accrued

23   interest from the date of deposit specified in XI.E., and the amounts actually paid out under this

24   paragraph, to charitable organizations designated by Ameriquest, with consultation from Class

25   Counsel and Plaintiffs, and approved by the Court pursuant to Code of Civil Procedure § 382. A

26   stipulation signed by the parties will be filed with a list of charitable organizations, should funds

27   become available for distribution to charity.

28

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

11

STIPULATION AND AGREEMENT OF SETTLEMENT

**B.** **Business Practice Changes**

The following business practices have already been or will be implemented, enhanced, and maintained by Ameriquest within the four class states of California, Texas, Alabama, and Alaska, within 60 days following the execution of this Agreement by all parties, unless a specific implementation or enhancement date is otherwise set forth below. All of the noted business practice changes shall be applicable only to real estate secured loans originated and/or processed by Defendants, which loans are secured by the primary residence of the borrower. All of the agreed-upon business practice changes may be modified or changed only as necessary to comply with Federal, State, or local laws, ordinances, rules, regulations, subsequent court order, or to the extent they improve customer disclosures or borrower understanding. Ameriquest's continued improvements in its lending practices are not to be limited by the provisions of this Agreement and any associated Court orders.

**1.** **Adherence To Best Lending Practices**

While litigation in the Coordinated Class Action was pending, Ameriquest implemented and now agrees to maintain and adhere to the following business practice standards for loan servicing and origination in the four class states:

a) **Objective Lending Criteria**

Ameriquest shall ensure that credit criteria – including criteria used to distinguish prime from subprime borrowers – are applied in a nondiscriminatory manner, based on factors that reasonably predict risk and advance legitimate business purposes. Ameriquest will use objective, risk-related criteria in determining risk, and fully implement its automated fixed-pricing loan origination system, developed in February 2003, to ensure system-wide use of risk-related criteria in loan pricing, and reduce the possibility of discriminatory and/or discretionary loan pricing at the branch level.

b) **Clear Good Faith Estimates Based On Actual Credit Information**

Ameriquest will provide each potential borrower in the four class states with Preliminary Disclosures that clearly and plainly set forth certain loan terms – including loan amount, type of loan (fixed rate or adjustable rate), initial interest rate and margin (if adjustable), loan discount

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

12

STIPULATION AND AGREEMENT OF SETTLEMENT

1  fee, Annual Percentage Rate, and whether the estimated loan may contain a prepayment penalty –

2  of the proposed Ameriquest loan.  Ameriquest will not issue Preliminary Disclosures until after

3  Ameriquest has obtained a credit report.

             c)     <u>Free Access to Credit Report</u>

5      Ameriquest loan applicants shall be notified of, and provided free online access to a

6  website where the borrower may electronically view a credit report that Ameriquest obtained in

7  conjunction with the loan application process.

             d)     <u>No Charge for Credit Report</u>

9      Ameriquest will not charge borrowers in the four class states for the cost of pulling the

10 borrower's credit report if the borrower properly rescinds the loan during the applicable rescission

11 period.

             e)     <u>Standard Interest Rate Reduction for Prepayment Penalty</u>

13     Ameriquest will provide its standard rate reduction in interest rates to each borrower in the

14 four class states who elects to include a prepayment provision in his/her loan.

        **2.**     **Enhanced Disclosures**

16     Beginning in November 2000 and continuing through October 2003, while some or all of

17 the coordinated cases were pending, Ameriquest implemented and now agrees to maintain and

18 adhere to the following enhanced disclosure procedures, which procedures may be modified or

19 changed only as necessary to comply with Federal, State, or local laws, ordinances, rules,

20 regulations, subsequent court order, or to improve customer disclosures or borrower

21 understanding:

             a)     <u>Early Disclosure Package</u>

23     Ameriquest will, at the time of mailing the Preliminary Disclosures, provide each

24 potential borrower in the four class states with an Early Disclosure Package containing each of

25 the following disclosures:

26 ///

27 ///

28

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

13

STIPULATION AND AGREEMENT OF SETTLEMENT

1             i.)    <u>Understanding Your Loan</u>

2      This disclosure (attached as Exhibit B) explains the risk of borrowing against one's home,

3 informs potential borrowers that loan terms are negotiable, advises borrowers that better terms

4 may be available, and encourages customers to consult other lenders (as well as third-party

5 mortgage counselors), to confirm the acceptability of loan terms offered by Ameriquest.

6             ii.)    <u>Understanding Your Options Regarding Interest Rates and</u>

7                      <u>Discount Points</u>

8      This disclosure (attached as Exhibit C) provides information about interest rates and

9 discount points, and explains how a change in one or the other affects the price of the loan.

10             iii.)    <u>Understanding Your Options Regarding Prepayment</u>

11                      <u>Charges</u>

12      This disclosure (attached as Exhibit D) explains prepayment charges, and informs the

13 potential borrower of the option to include a prepayment charge on the loan in exchange for a

14 lower interest rate, or lower initial interest rate in the case of an adjustable rate mortgage.

15        b)    <u>Enhanced Disclosure At Closing</u>

16      Ameriquest will, at the time of loan closing, provide each borrower in the four class states

17 with each of the following disclosures:

18             i.)    <u>Borrower's Acknowledgment of Final Loan Terms</u>

19      This disclosure (attached as Exhibit E) shows the difference, if any, in loan terms between

20 the date of Preliminary Disclosures and closing.

21             ii.)    <u>Interest Rate, Payment Due, Fees Paid, and Prepayment</u>

22                      <u>Charge</u>

23      This disclosure (attached as Exhibit F) describes the adjustable rate feature of any

24 adjustable rate loan, sets forth the initial interest rate amount, the initial interest rate period, and

25 the initial monthly payment amount, advises the borrower that the interest rate and monthly

26 payment may increase, and describes the effect of any prepayment charge associated with the

27 loan.

28    ///

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

14

STIPULATION AND AGREEMENT OF SETTLEMENT

3. Notification of Loan Term Changes

Beginning July 1, 2005, Ameriquest will notify borrowers in writing, within 3 business days of loan application, that their proposed loan terms, as they become available, will be posted on a 24 hour internet access webpage and will provide instructions on how borrowers can access this information. Ameriquest will implement staff training regarding this new system.

4. Written Disclosures Of Changes In Loan Terms At Loan Closing

Ameriquest will provide at the time of loan closing written notification to borrowers in the four class states of changes, in a side by side comparison, of certain loan terms: (A) as stated in the Preliminary Disclosures, and (B) as stated in the Final Loan Documents at the loan closing. Ameriquest will require each borrower in the four class states to sign such side by side comparison as evidence that Ameriquest provided these disclosures to the borrower at the time that the loan documents are signed, and before the right to rescind commences. Upon execution of the side by side comparison, borrowers in each of the four class states may, at the borrowers option either: (A) not sign the final loan documents; or (B) sign the final loan documents and rescind should they find better terms during the right to rescind period. This side by side comparison shall be substantially in the form currently used by Ameriquest.

C. Additional Confirmatory Discovery

Defendants will provide confirmatory discovery in the form of a declaration or affidavit, under penalty of perjury:

1. Confirming, under oath, representations made in negotiations that the value of the parties' Settlement, assuming an APR materiality level of 0.9%, using the Plan of Allocation attached as Exhibit A, and 100% of those eligible make claims, is approximately $50 million;

2. Confirming, under oath, all business practice changes that have been implemented by Defendants since the commencement and by reason of the Coordinated Class Action.

BNFY 357627v2

STIPULATION AND AGREEMENT OF SETTLEMENT

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

## V.    RELEASE BY CLASS MEMBERS

A.    In exchange for the substantial consideration provided pursuant to this Settlement, including without limitation the economic benefits and business practice changes, Plaintiffs and all Class Members, including but not limited to the Class Representatives, are hereby deemed to have released (on behalf of themselves, their respective spouses, co-signatories, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest and assigns), Ameriquest Capital Corporation, Ameriquest Mortgage Company, and Long Beach Mortgage Company (collectively, and including each and all of their direct and indirect parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, employees, stockholders, principals, and assigns), and each and all of their officers, directors, managers, employees, agents, attorneys, and third-party vendors (together, the "Released Parties") from all claims, causes of actions, or liabilities of which any and all Class Members may have or have had during the class period, including without limitation, in contract, in tort (including but not limited to personal injury, and emotional distress and RICO claims), statute, regulation, or common law, whether in arbitration, administrative, or judicial proceeding, whether as individual claims or as part of a class of claims or claims on behalf of the general public, whether known or unknown, suspected or unsuspected, threatened, asserted or unasserted, actual or contingent, liquidated or unliquidated, that arise from matters alleged in the Consolidated Amended Class Action Complaint ("Released Claims").

Without limiting the foregoing, the Released Claims specifically extend to claims that the Class Members do not know or suspect to exist in their favor as of the Preliminary Approval date. As the Preliminary Approval date of this Settlement, Plaintiffs and all Class Members are deemed to have waived the protection of Section 1542 of the California Civil Code and all other similar principles of law or equity, whether embodied in statute, regulation, case law, or otherwise. Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE**

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

16

STIPULATION AND AGREEMENT OF SETTLEMENT

DEBTOR.

All Class Members, including the Class Representatives, on behalf of themselves individually and in their representative capacities, are deemed to understand and acknowledge that significance of this waiver of California Civil Code Section 1542 and/or of any applicable law relating to limitations on releases. In connection with such waiver and relinquishment, Class Representatives, on behalf of themselves individually and in their representative capacities, and all Class Members are deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

C.    Notwithstanding any language herein, the release does not extend to and has no effect on statutory foreclosure defenses or claims, or common law foreclosure defenses or claims except for the bait and switch claims (as defined by the class definition). If a foreclosure is initiated against an Eligible Class Member who has not opted out and has not submitted a claim form to receive payment, that Eligible Class Member shall receive a credit from Ameriquest on any debt owed as calculated in Exhibit "A," so long as such foreclosure is initiated within two years of the effective date of this Agreement.

VI.    **RELEASE BY DEFENDANTS**

A.    In exchange for the releases herein provided, Defendants are hereby deemed to have released, on behalf of themselves, each and all of their direct and indirect parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, and assigns ("Releasing Defendants"), the Named Plaintiffs and their attorneys, including Class Counsel, from all claims, causes of actions, or liabilities of which any and all such Releasing Defendants may have or have had against the Named Plaintiffs or their attorneys, including Class Counsel, whether known or unknown, suspected or unsuspected, threatened, asserted or unasserted, actual or contingent, liquidated or unliquidated, that arise from matters alleged in the Consolidated

17

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

STIPULATION AND AGREEMENT OF SETTLEMENT

1    Amended Class Action Complaint. Nothing contained herein, however, shall release any

2    Ameriquest borrower from the obligations or benefits of any loan obtained from the Releasing

3    Defendants.

4          B.     Without limiting the foregoing, the claims released by the foregoing paragraph

5    specifically extend to claims that the Releasing Defendants do not know or suspect to exist in

6    their favor as of the Preliminary Approval date. As of the Preliminary Approval date of this

7    Settlement, the Releasing Defendants are deemed to have waived the protection of Section 1542

8    of the California Civil Code and all other similar principles of law or equity, whether embodied

9    in statute, regulation, case law, or otherwise. Section 1542 of the California Civil Code provides

10   as follows:

11             **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT**

12             **TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE**

13             **MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

14

15   The Releasing Defendants are deemed to understand and acknowledge the significance of this

16   waiver of California Civil Code Section 1542 and/or of any applicable law relating to limitations

17   on releases. In connection with such waiver and relinquishment, the Releasing Defendants are

18   deemed to acknowledge that they are aware that they may hereafter discover facts in addition to,

19   or different from, those facts which they now know or believe to be true with respect to the

20   subject matter of this Agreement, but that it is their intention to release fully, finally and forever

21   all claims released by the foregoing paragraph and in furtherance of such intention, the release of

22   such claim will be and remain in effect notwithstanding the discovery or existence of any such

23   additional or different facts.

     **VII.   NOTICE AND APPROVAL OF SETTLEMENT**

24         A.     A hearing on the Motion for Preliminary Approval shall take place on March 4,

25   2005 at 1:30 p.m., in Department 1 of the San Mateo County Superior Court; or at such time is

26   set by the Court. All Mailed Notice and Publication Notice dates will run from notice of entry

27   of the Preliminary Approval Order.

28

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

18

STIPULATION AND AGREEMENT OF SETTLEMENT

1       B.     The parties will submit to the Court all proposed communications to the class

2  including the "Preliminary Approval Order," to be negotiated in good faith, which will, among

3  other things, approve the form of settlement notices (a "Mailed Notice" and a "Publication

4  Notice," the text of which will be negotiated in good faith), and approve the Proof of Claim

5  forms, the text of which will be negotiated in good faith, include findings that the method(s) of

6  notice selected constitute the best notice to all Class Members that is practicable under the

7  circumstances, and include findings that the form and method(s) of notice comply fully with

8  applicable law and the United States Constitution.

9       C.     Any required Mailed Notice or court approved communication with the class

10  shall be mailed to Class Members no later than two weeks after Notice of entry the Preliminary

11  Approval Order. Class Members who previously opted out of this Action will not receive

12  Notice.  Ameriquest shall conduct a review of its electronic records to identify Class Members'

13  last known address from which the mailing list shall be created.  For any Mailed Notice that is

14  returned as undeliverable, the Claims Administrator shall access the National Change of Address

15  ("NCOA") Database, update the address maintained by Defendants for each such Class

16  Members, and mail a second Notice to such Class Members at their updated addresses. If the

17  NCOA Database indicates that the last known address of any such Class Member is invalid or

18  otherwise undeliverable, Defendants and the Claims Administrator shall have no further

19  obligation to take steps to locate the address of the Class Member or to mail such Class Member

20  a Class Notice.

21       D.     Any required Publication Notice as approved by the Court shall be published

22  twice.  The two publications will be separated by at least seven days.

23       E.     The cost of such Mailed Notice and such Publication Notice shall be borne

24  entirely by Ameriquest Capital Corporation and Ameriquest Mortgage Company through the

25  Minimum Guaranteed Payment Fund described in Paragraph IV A.9 and shall be effectuated at

26  no cost to Class Counsel, or the Class Members, including the Class Representatives.

27  ///

28  ///

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

19

STIPULATION AND AGREEMENT OF SETTLEMENT

F.     The Claims Administrator will file with the Court and serve upon Class Counsel and counsel for Defendants no later than ten (10) days prior to the Final Approval Hearing, an affidavit or declaration stating that any required Mailed Notice and Publication Notice has been completed in accordance with the terms of the Preliminary Approval Order.

G.     The Final Approval Hearing will be held on such date as the San Mateo County Superior Court, in its discretion, may order.

H.     At the Final Approval Hearing, the Court will consider and determine whether the provisions of this Agreement should be approved, whether the Settlement should be finally approved as fair, reasonable, and adequate, whether any objections to the Settlement should be overruled, and whether a judgment and order finally approving the Settlement and dismissing the certified class action litigation as between the parties should be entered. If the Settlement contemplated by this Agreement is approved by the Court, the Court will be requested to enter a "Final Approval Order and Judgment" in a form to be negotiated in good faith.

I.     The "Effective Date" for the purposes of this Settlement shall be five (5) days after the latest of the following dates:

1.     the date upon which the time to commence an appeal of the Final Approval Order and Judgment has expired, if no one who objected to the settlement has commenced any appeal or other proceeding challenging the Final Order and Judgment; or

2.     the date the Final Approval Order and Judgment has been affirmed on appeal or following writ review (or the date upon which the appeal or writ petition has been dismissed), and the time within which to seek further review in California courts of any involuntary dismissal has expired.

## VIII.  EXCLUSIONS FROM AND OBJECTIONS TO SETTLEMENT

A.     The "Opt-Out Date" will be 45 days after the date of initial mailing of the Mailed Notice.

B.     Each Class Member who wishes to be excluded from the Settlement Class must mail to the Settlement Administrator, postmarked or received on or before 45 days after the initial mailing date, an appropriate written request for exclusion, including his or her name,

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

STIPULATION AND AGREEMENT OF SETTLEMENT

1    address, telephone number, and Ameriquest loan number, that is personally signed by the Class

2    Member.  No Class Member, or any person acting on behalf or in concert or participation with

3    that Class Member, may exclude another Class Member from the Class.  However, in order to be

4    eligible for restitution, each borrower for a particular loan must substantially comply with the

5    requirements of the Proof of Claim, as conclusively determined by the Settlement Administrator.

6    The requests for exclusion will be filed with the Court by the Settlement Administrator not later

7    than ten (10) days before the Final Approval Hearing.  Copies of the requests for exclusion will

8    be provided by the Settlement Administrator to Class Counsel and Counsel for Defendants as

9    soon as practicable before the Final Approval Hearing.  If the Settlement is approved by the

10   Court at the Final Approval Hearing, any and all Class Members who have not submitted a

11   timely, written request for exclusion to the Settlement Administrator will be bound by the

12   releases set forth herein, and all proceedings, orders, and judgments entered in this class action

13   litigation, even if those persons have previously initiated or subsequently initiate individual

14   claims, litigation or other proceedings against the Defendants (or any of them) related to the

15   claims released pursuant to this Settlement.

16         C.     Any Class Member who has not filed a timely written request for exclusion and

17   who wishes to object to or oppose the fairness, reasonableness or adequacy of this Agreement of

18   Settlement, or to any award of attorneys' fees and expenses, must serve upon Class Counsel and

19   Counsel for Defendants, and must file with the Court, no later than forty-five (45) days after the

20   initial Mailed Notice, a statement of his/her objection, as well as the specific reason(s), if any,

21   for each objection, including any legal support the Class Member wishes to bring to the Court's

22   attention and any evidence the Class Member wishes to introduce in support of the objection.

23   Class Members may so object either on their own or through an attorney hired at their own

24   expense.

25         D.     Class Counsel and Counsel for Defendants may, in their discretion, file and serve

26   a written response to objection(s), if any, filed and served by any Class Member.  Such response

27   will act as a reply brief on the Motion for Preliminary Approval of the Settlement.  Any such

28   written response shall be filed with the Court, and served upon the Class Member or the Class

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

21

STIPULATION AND AGREEMENT OF SETTLEMENT

1    Member's attorney, if any, in the most expeditious manner practicable, ten (10) days before the

2    Final Approval Hearing.

3         E.     The Final Approval Hearing will be the only opportunity for any Class Member

4    who objects to the proposed Settlement, to this Agreement, to the release of the Released

5    Claims, or to the entry of an order awarding attorneys' fees and costs to Class Counsel, to appear

6    and be heard.

7    **IX.**   **CLAIMS**

8         Pursuant to this Agreement, certain monetary benefits are available to eligible Class

9    Members only upon submission of a substantially compliant claim on a "Proof of Claim Form"

10   approved by the Court, and subsequent submission of a signed Internal Revenue Service ("IRS")

11   W-9 form, if recovery exceeds IRS limits.  The Court-approved Proof of Claim Forms shall be

12   mailed concurrently with the Mailed Notice and shall have a return date  of one hundred twenty

13   (120) days from the date of the initial Mailed Notice.  However, no Claim Forms will be sent to

14   Class Members who have previously opted out of the Class.

15        A.     **Simple Proof of Claims Form for All Class Members**

16        Pursuant to this Agreement, certain monetary benefits may be available to Class Members

17   upon substantial compliance with, and timely submission of, one of three court-approved "Proof

18   of Claim Forms":

19        1.     **Mortgage Loans Obtained On Or Before February 2, 2003**

20        Class Members who obtained a residential mortgage loan during the class period on or

21   before February 3, 2003 may be eligible for monetary benefits, if they satisfy eligibility

22   requirements, upon submission of a Court approved Proof of Claim Form that: (1) is signed by

23   the Class Member under penalty of perjury, verifying that such borrower had a loan with

24   Ameriquest; (2) is postmarked on or received or before the due date on the Proof of Claim Form;

25   and (3) is determined by the Settlement Administrator to be substantially compliant.  A copy of

26   the Proof of Claim Form for which court-approval is sought is attached hereto as Exhibit G.

27

28

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

22

STIPULATION AND AGREEMENT OF SETTLEMENT

### 2. Mortgage Loans Obtained On Or After February 3, 2003

The parties to this Agreement recognize that certain business practices changes implemented by Ameriquest after the initiation of litigation but prior to the time of this Agreement offer certain substantial benefits to borrowers. Specifically, on or about February 3, 2003, Ameriquest implemented an automated, fixed-pricing system that requires system-wide use of standardized criteria in loan origination and loan pricing. Plaintiffs and Class Counsel do recognize that the February 2003 changes substantially eliminate the potential for discriminatory and/or discretionary loan pricing at the individual loan officer or branch level.

In recognition of the benefits of these February 2003 business practice changes the parties agree that Class Members who obtained a residential mortgage loan from Ameriquest Mortgage Company, secured by real property in California, Alabama, Alaska, or Texas, on or after February 3, 2003 through February 29, 2004, may be eligible for monetary benefits, if they satisfy eligibility requirements, upon submission of a Court-approved Proof of Claim Form. A copy of the Proof of Claim Form for which Court-approval is sought is attached hereto as Exhibit H.

Ameriquest has the option of either paying valid claims arising from loans obtained during the period of February 3, 2003 through February 29, 2004, or of challenging such claims pursuant to a JAMS arbitration proceeding. If Ameriquest elects to challenge the claims, a binding arbitration shall be held before a single neutral judge affiliated with JAMS offices in San Francisco or such other more convenient forum as may be agreed upon by the parties. The JAMS neutral judge assigned to arbitrate such claims shall be selected by the parties and Class Counsel. The arbitration shall be handled under JAMS Streamlined Arbitration Rules and Procedures or other expedited procedure the JAMS neutral and the parties may select, and Ameriquest shall bear the cost of all arbitrator fees. Should Ameriquest choose to challenge any claim covered by this Paragraph, the claimant(s) shall bear the burden of proving by a preponderance of the evidence that he and/or she was baited and switched as alleged.

### 3. Undisclosed Prepayment Penalties: All Loans Within Class Period

Class Members whose Preliminary Disclosures did not affirmatively reflect that the loan may contain a prepayment penalty, and who ultimately paid a pre-payment penalty, may be

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

23

STIPULATION AND AGREEMENT OF SETTLEMENT

1   eligible for a refund of fifty percent (50%) of any pre-payment penalty, if they satisfy eligibility

2   requirements, upon submission of a Court approved Proof of Claim Form that: (1) is signed by

3   the Class Member under penalty of perjury, verifying that such borrower had a loan with

4   Ameriquest and paid a pre-payment penalty at the time of loan pay-off or has a prepayment

5   penalty that is currently due; (2) is postmarked on or before the due date on the Proof of Claim

6   Form; and (3) is determined by the Settlement Administrator to be substantially compliant.  A

7   copy of the Proof of Claim Form for which Court-approval is sought is attached hereto as Exhibit

8   I.

9       **B.      Two-tier Claims Administration Process**

10          As soon as practicable, the Settlement Administrator will provide Class Counsel and

11  Counsel for Defendants with a list identifying all Class Members who submitted valid Proof of

12  Claim Forms, the category of relief to which they are entitled, the value of each such valid claim,[6]

13  and all Class Members who submitted claims and whose claims were determined not to be a valid

14  claim.

15      **1.      Mortgage Loans Obtained On Or Before February 2, 2003**

16          a)      As soon as practicable after receiving a Proof of Claim Form, the

17                  Settlement Administrator, by and through the experts specified in

18                  paragraph IV.A.6, will evaluate the claim and, for denied claims,

19                  will mail to the Class Member and all Counsel a notice stating that

20                  the claim was denied and the reasons for the denial, and advising

21                  the Class Member how he or she might contact Class Counsel with

22                  any questions about his/her denied claim.  A Class Member or

23                  Class Counsel may submit to the Settlement Administrator a

24                  request to reconsider a Claim denial within twenty (20) days

25                  following the date of such denial.  Any denial notice will specify

26

27  [6]     As soon as practicable, counsel for Defendants shall provide the Settlement Administrator and Class Counsel
with a list of Class Members who received monetary recovery pursuant to the settlement in the *Ansley* case, referenced
above.  For each listed Class Member, the amount of monetary recovery received by the Class Member under the *Ansley*
28  settlement shall be identified.

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

24

STIPULATION AND AGREEMENT OF SETTLEMENT

that period.

b) As soon as practicable after receiving a Proof of Claim Form, the Settlement Administrator, by and through the experts specified in IV. A. 6, will apply the Plan of Allocation formula to all valid claims, and advise Class Counsel and Defense Counsel of the amount, if any, of any restitution to which the Settlement Administrator determines such Class Member is entitled. Ameriquest shall have twenty (20) days to object to the Settlement Administrator on the sole grounds of misapplication of the formula set forth in the Plan of Allocation. Class Counsel shall thereafter have five (5) days to respond to Ameriquest's objection. All objections shall be resolved by the Settlement Administrator. Valid claims will be paid by the Settlement Administrator within 45 days after they are received or 45 days after the effective date, unless the determination that the claim is a valid claim is made after reconsideration, or after an objection on the grounds of misapplication of the formula set forth in the Plan of Allocation is raised, in which case payment will be made within fifteen (15) days after such determination.

c) The Settlement Administrator's determination that a Claim is a valid claim is final, and cannot be challenged, directly or indirectly, by Defendants in any way except for the administrator's failure to properly apply the restitution formula set forth in the Plan of Allocation. In addition, Defendants will have no right to challenge, object, comment on, or otherwise participate in the Settlement Administrator's claim decision process, except as specified in Paragraph IX.B.1 (b), above.

2. <u>Mortgage Loans Obtained On or After February 3, 2003</u>

a) As soon as practicable after receiving a Proof of Claim Form, the

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

25

STIPULATION AND AGREEMENT OF SETTLEMENT

1    Settlement Administrator will determine if the claim is timely and

2    substantially compliant and, if timely and substantially compliant,

3    will notify Class Counsel and Counsel for Defendants of the

4    existence and value of the claim.

5         b)    As soon as practicable after the Settlement Administrator's

6    notification of the existence and value of the Claim, Defendants, at

7    their option, shall either:

8              i.)    Direct the Settlement Administrator to pay the full value of

9                     the claim; or

10             ii.)   Send written notice to the Settlement Administrator and to

11                    Class Counsel of Defendants' intent to challenge the

12                    Claimant's attestation that he or she was a victim of a

13                    wrongful "bait and switch" practice, and the factual basis

14                    for that challenge as set forth in Paragraph IX.A.2 above.

15   **C.    Selection of Settlement Administrator**

16        The Settlement Administrator will be Rust Consulting, subject to approval of the Court.

17   **X.    STAY OF TRIAL PROCEEDINGS**

18        A.  Subject to court approval, all proceedings in the coordinated class action

19   proceeding bearing Judicial Counsel Coordinated Proceeding No. 4162 shall be stayed pending

20   and following preliminary approval of the settlement, except as necessary to implement the

21   settlement or this agreement, or to comply with the terms of settlement.  Named Plaintiffs shall

22   not, either directly or on a representative basis, or in any other capacity commence or prosecute

23   against defendants any action, claim or proceeding in any court or tribunal asserting any of the

24   released claims.

25   **XI.   ATTORNEYS' FEES AND COSTS/INCENTIVE FEES**

26        A.    Class Counsel has prosecuted this action since June 2000 at their own expense

27   without having received any benefit for their services.  Class Counsel will ask the Court to

28   approve an award of Class Counsel's attorneys' fees and costs.

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

STIPULATION AND AGREEMENT OF SETTLEMENT

1         B.      Specifically, Class Counsel will seek an order that Defendants pay Class Counsel

2   for their litigation expenses, including the cost of the class notice. Defense counsel has agreed

3   to this payment amount, and the parties agree that such payment of costs may be credited toward

4   the $15 million Minimum Guaranteed Payment set forth in Section IV.A.9.

5         C.      Class Counsel will also ask the Court to approve an award of attorneys' fees in an

6   amount not to exceed ten million dollars ($10,000,000) at the time of Final Approval.

7   Defendants have agreed to pay Class Counsel for attorneys' fees, subject to court approval of the

8   Settlement and this Agreement, in an amount not to exceed $10,000,000. The parties agree that

9   such payment of attorneys' fees will *not* be credited toward the $15 million Minimum

10   Guaranteed Payment. The Agreement is not contingent upon approval of such fees.

11         D.   .  In addition, subject to approval by the Court, Defendants will make separate

12   incentive payments to the Class Representatives of fifteen thousand dollars ($15,000) per

13   Representative. These incentive payments will be paid to the Class Representatives whether or

14   not the Class Representatives submit claims for economic relief as provided in Section IV,

15   above, and shall be paid separately from, and in addition to, any payment made to the Class

16   Representatives in accordance with the claims process described in Section IV, above. The

17   parties agree that such incentive payments shall be paid from the $15 million Minimum

18   Guaranteed Payment set forth in Section IV.A.9.

19         E.      The parties' proposed Final Approval Order shall include provisions for payment

20   of costs to Class Counsel and for incentive payments to the Named Plaintiffs which shall be paid

21   from the Minimum Guaranteed Payment, as set forth above, and for separate payment of

22   attorneys' fees directly by Ameriquest. Within ten (10) days after service of written Notice of

23   Entry of Final Approval Order and Judgment, Defendants shall make: (a) full payment of Class

24   Counsel's attorneys' fees not to exceed $10,000,000; and (b) the initial payment of the

25   $15,000,000 Minimum Guaranteed Payment for notice, publication, and settlement

26   administration expenses, litigation expenses of Class Counsel, and incentive fees into an

27   interest-bearing escrow account designated by Class Counsel for this purpose. Upon the

28   Effective Date, the amounts payable to Class Counsel and to the Named Plaintiffs shall be

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

1    released from escrow with the interest earned upon the $10 million account to Class Counsel,

2    and interest earned upon the $15 million for the benefit of the Class or charities.

3        F.    Except as set forth in herein, Defendants shall not be obligated to pay any fees,

4    costs, or expenses not awarded by the Court. In addition, except for attorneys' fees payable as

5    set forth herein, all costs and expenses will be paid by the Settlement Administrator, in the first

6    instance, out of the Minimum Guaranteed Payment. Ameriquest will bear its own internal costs.

7    **XII.    TERMINATION OF THIS AGREEMENT**

8        A.    Except as otherwise provided herein, in the event the Settlement is terminated or

9    fails to become effective for any reason, the parties to this Agreement will be returned to their

10   respective positions status quo ante in the class action as of October 1, 2004, and, except as

11   otherwise expressly provided, the parties will proceed with all aspects as if this Agreement, the

12   Settlement, and any related orders and stipulations had not been made. In this event, the parties

13   will act reasonably and expeditiously to propose new dates and to schedule an early status and

14   trial setting conference with the Court.

15   **XIII.    NO ADMISSION OF WRONGDOING**

16       The parties hereto acknowledge that the execution of this Agreement and consummation

17   of the transactions contemplated hereby do not constitute an admission of liability or of any facts

18   by Defendants. This Agreement, whether or not consummated, and any proceedings or events

19   that occur pursuant to it:

20       A.    Shall not be offered or received against Defendants or any Released Party for any

21   purpose or used as evidence of, or to be construed as or deemed to be evidence of, any admission

22   or concession by Defendants or any of the Released Parties of the truth or relevance of any fact

23   alleged by Plaintiffs, Named Plaintiffs, and/or the Class, the validity of any claim that has been or

24   could have been asserted in the Coordinated Class Action or in any other litigation, or of any

25   liability, fault, or wrongdoing of any kind by or on behalf of the Defendants or any of the

26   Released Parties.

27       B.    Shall not be offered or received against any of the Defendants or any Released

28   Party as evidence of, or construed as or deemed to be evidence of, any admission or concession of

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

**STIPULATION AND AGREEMENT OF SETTLEMENT**

1   any liability, fault, or wrongdoing, or in any way referred to for any other reason as against any of

2   the parties to this Agreement, in any other civil, criminal or administrative action or proceeding,

3   other than such proceedings as may be necessary to effectuate the provisions of this Agreement;

4   provided, however, that if this Agreement is approved by the Court, the Defendants and the

5   Released Parties may refer to it to effectuate the liability protection granted them hereunder; and

6         C.    Is not, and shall not be construed against any party as an admission or concession

7   that the consideration to be given hereunder represents the amount which could be or would have

8   been recovered after trial.

9         D.    No party will make any press release or make any public statement that the party

10  reasonably expects to be disseminated by the media about this settlement, without the prior

11  written consent of the opposing party.

12  **XIV.   DISMISSAL**

13      In connection with Final Approval of the Settlement, a Judgment of Dismissal with

14  Prejudice of Judicial Council Coordinated Proceeding No. 4162 shall be entered by the Court.

15  **XV.   CONTINUING JURISDICTION**

16      The San Mateo County Superior Court will have continuing jurisdiction over the

17  coordinated class action proceeding bearing Judicial Council Coordinated Proceeding No. 4162

18  for the purpose of implementing the Settlement under the litigation and all related matters,

19  including this Agreement, the Settlement, Final Approval of the Settlement, Entry of Judgment,

20  post-judgment issues, and all related matters are fully resolved. Any dispute regarding the parties'

21  obligations pursuant to this Agreement and/or interpretation of the terms of this Agreement will

22  presented to, and resolved by, the Hon. Carol L. Mittlesteadt, or, if Judge Mittlesteadt is

23  unavailable, by another judge of San Mateo County Superior Court, which judge shall be

24  appointed by the Presiding Judge of the San Mateo Superior Court for that purpose.

25  **XVI.   MISCELLANEOUS PROVISIONS**

26        A.    **Neutral Interpretation**

27      This Agreement will not be construed more strictly against one party than another merely

28  because it may have been prepared by counsel for one of the parties, it being recognized that,

29

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

**STIPULATION AND AGREEMENT OF SETTLEMENT**

1  because of the arms' length negotiations resulting in the Agreement, all parties hereto have

2  contributed substantially materially and equally to the preparation of the Agreement.

3        **B.**    **Choice of Law**

4        This Agreement is to be construed, enforced, and administered in accordance with the

5  laws of the State of California. In the event legal action is necessary to effectuate this Agreement,

6  or any term or obligation contained therein, the parties agree that such action shall be brought and

7  venued in the Superior Court of San Mateo County, and further agree that any dispute arising

8  under this Agreement shall be adjudicated by the Hon. Carol L. Mittlesteadt, if practicable, or if

9  Judge Mittlesteadt is unavailable, by another judge of San Mateo County Superior Court, which

10  judge shall be appointed by the Presiding Judge of the San Mateo Superior Court for that purpose.

11        **C.**    **Additional Acts to Effectuate Agreement**

12        The parties hereto shall execute all documents and perform all acts necessary and proper

13  to effectuate the terms of this Agreement and to obtain the benefit of the Agreement for the

14  parties.

15        **D.**    **No Oral Modification**

16        Subject to any power of the Court to order a modification, this Agreement may not be

17  modified or amended except by a writing signed by all parties thereto and their respective

18  attorneys.

19        **E.**    **Competency; Independent Counsel**

20        Each party to this Agreement represents and warrants that he, she, or it is competent to

21  enter into this Agreement and in doing so is acting upon his, her, or its independent judgment and

22  upon the advice of his, her, or its own counsel and not in reliance upon any warranty or

23  representation, express or implied, or any nature or kind by any other party, other than the

24  warranties and representations expressly set forth in this Agreement itself.

25        **F.**    **Entire Agreement**

26        This Agreement constitutes the entire agreement between and among the parties with

27  respect to the settlement of the Consolidated Class Action litigation and supersedes any and all

28  prior negotiations and agreements.

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

**STIPULATION AND AGREEMENT OF SETTLEMENT**

1

2      G.      **Counterparts**

3              This Agreement may be executed in counterparts, each of which shall be deemed to be an

4      original, but all of which together shall constitute one and the same instrument.

5

6      Dated: _2/28_____, 2005        By:_____
                                              KRISTINA LISPER PIERCEALL
7

8      Dated: _____, 2005        By:_____
                                              GLENN P. BRYAN
9

10     Dated: _____, 2005        By:_____
                                              SHALIMAR S. BRYAN
11

12     Dated: _____, 2005        By:_____
                                              MARSHA BUTLER
13

14     Dated: _____, 2005        By:_____
                                              AMERIQUEST MORTGAGE COMPANY
15

16     Dated: _____, 2005        By:_____
                                              AMERIQUEST CAPITAL CORPORATION
17

18

19     **APPROVED AS TO FORM:**

20     Dated: _____, 2005        COTCHETT, PITRE, SIMON & McCARTHY

21

22                                          By:_____
                                              NIALL P. McCARTHY
23                                            *Attorneys for Plaintiffs and the Class*

24     Dated: _____, 2005        LAW OFFICES OF GEORGE DONALDSON

25

26                                          By:_____
                                              GEORGE DONALDSON
27                                            *Attorneys for Plaintiffs*

28

LAW OFFICES        BNFY 357627v2                              31
COTCHETT,
PITRE, SIMON       ──────────────────────────────────────────────────────
& McCARTHY                STIPULATION AND AGREEMENT OF SETTLEMENT

**G.**   **Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

Dated: _____, 2005        By: _____

                                KRISTINA LISPER PIERCEALL

Dated 3/2/05 _____, 2005     By: _____

                                GLENN P. BRYAN

Dated: 3/2/05 _____, 2005    By: _____

                                SHALIMAR S. BRYAN

Dated: _____, 2005          By: _____

                                MARSHA BUTLER

Dated: _____, 2005          By: _____

                                AMERIQUEST MORTGAGE

Dated: _____, 2005          By: _____

                                AMERIQUEST CAPITAL CORPORATION

**APPROVED AS TO FORM:**

Dated: _____, 2005          COTCHETT, PITRE, SIMON & McCARTHY

                                By: _____

                                NIALL P. McCARTHY
                                *Attorneys for Plaintiffs and the Class*

Dated: _____, 2005          LAW OFFICES OF GEORGE DONALDSON

                                By: _____

                                GEORGE DONALDSON
                                *Attorneys for Plaintiffs*

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 357627v2

STIPULATION AND AGREEMENT OF SETTLEMENT

G. **Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

Dated: _____, 2005    By: _____
                              KRISTINA LISPER PIERCHALL

Dated: _____, 2005    By: _____
                              GLENN P. BRYAN

Dated: _____, 2005    By: _____
                              SHALIMAR S. BRYAN

Dated: _3/1/05__, 2005    By: _____
                              MARSHA BUTLER

Dated: _____, 2005    By: _____
                              AMERIQUEST MORTGAGE

Dated: _____, 2005    By: _____
                              AMERIQUEST CAPITAL CORPORATION

**APPROVED AS TO FORM:**

Dated: _____, 2005    COTCHETT, PITRE, SIMON & McCARTHY

                              By: _____
                                  NIALL P. McCARTHY
                                  *Attorneys for Plaintiffs and the Class*

Dated: _____, 2005    LAW OFFICES OF GEORGE DONALDSON

                              By: _____
                                  GEORGE DONALDSON
                                  *Attorneys for Plaintiffs*

31

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

BNFY 337627v2

STIPULATION AND AGREEMENT OF SETTLEMENT

1

2   **G.    Counterparts**

3        This Agreement may be executed in counterparts, each of which shall be deemed to be an

4   original, but all of which together shall constitute one and the same instrument.

5

6    Dated: _____, 2005         By:_____
                                          KRISTINA LISPER PIERCEALL
7

8    Dated: _____, 2005   By:_____
                                          GLENN P. BRYAN
9

10   Dated: _____, 2005   By:_____
                                          SHALIMAR S. BRYAN
11

12   Dated: _____, 2005   By:_____
                                          MARSHA BUTLER
13

14   Dated: *Mar. 3*_____, 2005      By:_____
                                          AMERIQUEST MORTGAGE COMPANY
15

16   Dated: *Mar. 3*_____, 2005      By:_____
                                          AMERIQUEST CAPITAL CORPORATION
17

18

19   **APPROVED AS TO FORM:**

20   Dated: _____, 2005      COTCHETT, PITRE, SIMON & McCARTHY

21

22                                   By:_____
                                          NIALL P. McCARTHY
23                                        *Attorneys for Plaintiffs and the Class*

24   Dated: _____, 2005      LAW OFFICES OF GEORGE DONALDSON

25

26                                   By:_____
                                          GEORGE DONALDSON
27                                        *Attorneys for Plaintiffs*

28

31

BNFY 357627v2

**STIPULATION AND AGREEMENT OF SETTLEMENT**

### G. Counterparts

This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

Dated: _____, 2005    By:_____
KRISTINA LISPER PIERCEALL

Dated: _____, 2005    By:_____
GLENN P. BRYAN

Dated: _____, 2005    By:_____
SHALIMAR S. BRYAN

Dated: _____, 2005    By:_____
MARSHA BUTLER

Dated: _____, 2005    By:_____
AMERIQUEST MORTGAGE COMPANY

Dated: _____, 2005    By:_____
AMERIQUEST CAPITAL CORPORATION

**APPROVED AS TO FORM:**

Dated: 3/2/5, 2005    COTCHETT, PITRE, SIMON & McCARTHY

By:_____
NIALL P. McCARTHY
*Attorneys for Plaintiffs and the Class*

Dated: _____, 2005    LAW OFFICES OF GEORGE DONALDSON

By:_____
GEORGE DONALDSON
*Attorneys for Plaintiffs*

BNFY 357627v2

**STIPULATION AND AGREEMENT OF SETTLEMENT**

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

1  G.  **Counterparts**

2       This Agreement may be executed in counterparts, each of which shall be deemed to be an

3  original, but all of which together shall constitute one and the same instrument.

4

5  Dated: _____, 2005      By:_____
                                  KRISTINA LISPER PIERCEALL

6

7  Dated: _____, 2005      By:_____
                                  GLENN P. BRYAN

8

9  Dated: _____, 2005      By:_____
                                  SHALIMAR S. BRYAN

10

11 Dated: _____, 2005      By:_____
                                  MARSHA BUTLER

12

13 Dated: _____, 2005      By:_____
                                  AMERIQUEST MORTGAGE

14

15 Dated: _____, 2005      By:_____
                                  AMERIQUEST CAPITAL CORPORATION

16

17

18 **APPROVED AS TO FORM:**

19 Dated: _____, 2005      COTCHETT, PITRE, SIMON & McCARTHY

20

21                             By:_____
                                  NIALL P. McCARTHY
22                                *Attorneys for Plaintiffs and the Class*

23 Dated: March 2, 2005         LAW OFFICES OF GEORGE DONALDSON

24

25                             By:_____
                                  GEORGE DONALDSON
26                                *Attorneys for Plaintiffs*

27

28

LAW OFFICES
COTCHETT,
PITRE, SIMON
& McCARTHY

Dated: _Mar. 3_____, 2005

BUCHALTER, NEMER, FIELDS & YOUNGER

By: _____
BERNARD E. LeSAGE
*Attorney for Defendants*

BNFY 357627v2

**STIPULATION AND AGREEMENT OF SETTLEMENT**

**EXHIBIT A**

# Exhibit A to Stipulation and Agreement of Settlement: Plan of Allocation

## Calculating the Change in Economic Burden Between the Good-Faith Estimate and Closing

## Calculate the effective APR in the GFE

Step #1:     Begin with the stated APR at the GFE

Step #2:     Determine the payment required to fully amortize the *original* loan amount, using the effective APR from Step #1.[1]

Step #3:     Calculate the increase in payment associated with amortizing the original points over 5 years rather than the full term of the loan.

- Determine the payment required to fully amortize the effective points from the GFE over 5 years.[2]

- Determine the payment required to fully amortize the effective points from the GFE over the full term of the loan.

- Adjust the payment calculated in Step #2 by adding the difference between the payments calculated above.

Step #4:     Determine the APR that corresponds to adjusted payment calculated in Step #3.[3]

Step #5:     Adjust the APR calculated in Step #4 for any change in loan type

a) Loan type changes from fixed to adjustable: APR *minus* fixed-rate differential. (The "fixed-rate differential" is based on HUD data and equal to 1.16% for loans of a term less than or equal to 180 months and 1.62% for loans of a term greater than 180 months.)

---

[1] Payment calculated in Microsoft Excel, using the PMT function.
[2] Payment calculated in Microsoft Excel, using the PMT function.
[3] APR calculated in Microsoft Excel using the RATE function.

a) Loan type changes from adjustable to fixed: APR *plus* the fixed-rate differential.

Step #6:      Determine the monthly payment required to fully amortize the original loan amount using the adjusted preliminary APR in Step #5.

## Calculate the implied APR in the final loan documents

Step #7:      Begin with the stated final APR.

Step #8:      Determine the payment required to fully amortize the *original* loan amount, using the APR from Step #7.[4]

Step #9:      Calculate the increase in monthly payment required to amortize the final points over 5 years rather than the full term of the loan.

         a)      Determine the payment required to fully amortize the final points over 5 years.[5]

         b)      Determine the payment required to fully amortize the final points over the full term of the loan.

         c)      Adjust the payment calculated in Step #8 by adding the difference between the payments calculated above.

Step #10:      Calculate the APR that corresponds to the adjusted payment calculated in Step #9.[6]

Step #11:      Reduce the APR calculated in Step #10 by the materiality threshold (0.9 percentage points).

Step #12:      Calculate the monthly payment required to fully amortize the original loan amount using the adjusted final APR in Step #11.

---

[4] Payment calculated in Microsoft Excel, using the PMT function.
[5] Payment calculated in Microsoft Excel, using the PMT function.
[6] APR calculated in Microsoft Excel using the RATE function.

## Calculate the change in economic burden resulting from the change in adjusted APR

Step #13:   Calculate the change in monthly payment by subtracting the preliminary monthly payment (Step #6) from the final monthly payment (Step #12).

Step #14:   Compute the present value of the change in monthly payments from funded date to payoff date or to December 31, 2004, if loan is still performing, discounting payments back to the date of the loan using the adjusted APR from step #5.[7]

## rforming Loan Adjustment

Step #1:   Calculate current monthly payment[8] based on funded APR, funded loan amount, and funded loan term.

Step #2:   Calculate adjusted monthly payment[9] based on funded APR minus 0.9, funded loan amount, and funded loan term

Step #3:   Subtract adjusted monthly payment from current monthly payment. Multiply difference by number of months based on funding date.

If funding date:

      a)   is prior to 2/4/02 multiply by 6 months

      b)   is from 2/4/02 to 2/3/03 multiply by 12 months

      c)   is after 2/3/03 multiply by 6 months

---

[7] Present value calculated in Microsoft Excel using the PV function.
[8] Payment calculated in Microsoft Excel, using the PMT function.
[9] Payment calculated in Microsoft Excel, using the PMT function.

# UNDERSTANDING YOUR LOAN

Application Number: (1125:) - (13625:)                              Date: (1001:)

A LOAN SECURED BY YOUR HOME IS AN IMPORTANT TRANSACTION. You should be fully informed about the terms and conditions of any mortgage loan that you obtain from us. While it can vary, the average time to process a **loan application is thirty days.** Please maintain a good payment record on all of your outstanding obligations during this time.

The enclosed documents are not a commitment to make a loan to you or an approval of your loan application. The estimated costs and terms of your proposed loan are based on the information we have obtained as of today. However, the structure of your loan, including prepayment charges, points, interest rate, repayment term and loan amount are all negotiable as long as the final terms meet our requirements. Think carefully about what terms you want. For example, a loan with a prepayment charge may have a lower interest rate than one without. However, if you know you will sell your home or refinance this loan in the near future, a prepayment charge may not be a good choice.

The costs and terms of any loan we might ultimately approve may be different. We will notify you by telephone if there are any such changes and you can then decide whether you wish to proceed with your application.   Included among the enclosed documents are the following:

- **ARM Disclosure and Consumer Handbook on Adjustable Rate Mortgages.** If you applied for an Adjustable Rate Mortgage (ARM) loan, this booklet explains the operation of ARM loans, including how the interest rate and monthly payments can increase.
- **Good Faith Estimate of Settlement Costs.**   This provides an estimate of the fees and costs you will pay in connection with your loan.

All the documents and disclosures you receive are important. Please pay particular attention to these, which you will receive at closing:

- **Promissory Note:** This shows the amount of debt you will incur, plus the interest rate and repayment terms.
- **Interest Rate, Payments Due, Fees Paid and Prepayment Charge:** This document shows important terms of your loan, including the amount of your monthly payments, the interest rate and fees, and whether your loan includes a prepayment charge. If you are comparing payments on an old and new loan, make sure you know whether the payments include, or do not include escrows for taxes, insurance and other charges.
- **Truth in Lending Disclosure:** This shows the Annual Percentage Rate and Finance Charge for your loan and other important cost and terms information.
- **HUD-Settlement Statement:** This shows all closing costs and how the proceeds of the loan are distributed.
- **Mortgage/Trust Deed:** This makes your real property security for the loan and says that if you do not meet your loan payment obligations, you can lose your home through foreclosure and the sale of your property.

A loan "closing" will be held to complete the transaction. If you want, you can have an attorney, credit counselor or other representative come to the closing with you. You'll be given your final loan documents and disclosures to review and sign. Don't feel rushed. Don't rely on any representations that are not in writing. Take your time. Ask any questions you have. If you do not agree with or understand something in a document, tell the person conducting the closing immediately. Don't sign any document until you have received an explanation you understand and are willing to be bound by the contents of the document. Don't let anyone pressure you into obtaining a loan. Consult other lenders, including banks and savings and loans, to confirm that the terms of this loan are acceptable to you; better terms may be available. Mortgage counseling from an independent HUD-approved agency can help you understand a loan offer, assess your credit situation and decide what loan is best for you. We recommend you use it. **Free counseling is available at HUD-approved counseling services. To find a counseling service location near you, please call HUD at the following toll free number: 1-800-569-4287.** In addition, please feel free to call us ((1148:Lender_name)) toll free at (101:toll_free_number) to discuss any questions concerning your loan or the documents you have received.

If, under applicable law you are entitled to cancel the loan for any reason during the three business days following closing, **you can cancel your loan with Ameriquest Mortgage Company at no cost during the one week period beginning on the day you sign the loan documents.** During that one week period, please take the loan documents to a credit counselor, attorney, or other knowledgeable advisor to help you make your final decision about the advisability and appropriateness of the loan. No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal holidays. If you desire to cancel, you must notify us in writing by either mailing or faxing your "Request to Cancel" to us at the address shown on the Request to Cancel form.

**Thank you for applying to Ameriquest Mortgage Company for a mortgage loan. We look forward to serving you.**

# BORROWER(S) ACKNOWLEDGMENT AT CLOSING
I hereby acknowledge that: 1) I received and read this notice prior to my loan closing; 2) it was reviewed with me again at the loan closing; 3) I understand what is written above; 4) I have received a complete set of my final loan documents on the date set forth below; 5) I am aware that I may cancel my loan for any reason within the one week period.

_____                        _____
Date                                            Signature (1056:)

_____                        _____
Date                                            Signature (1072:)

_____                        _____
Date                                            Signature (1073:)

_____                        _____
Date                                            Signature (1074:)

851-OWNER (Rev.05/04)          (799:1234567890123456789012345)

**EXHIBIT B**

# AMERICAN MORTGAGE COMPANY

Borrower Name: (1056:)

Loan Number: (1125:) - (13625:)

Borrower Name: (1072:)

Property Address: (1203:)
(1355:)

## UNDERSTANDING YOUR OPTIONS REGARDING
## INTEREST RATES AND DISCOUNT POINTS

The interest rate (or initial interest rate in the case of an adjustable rate mortgage) and discount points on your loan are related to each other. A "discount point" is a one-time fee that equals one (1) percent of the loan amount that lowers the interest rate of the loan. So, on a $100,000 loan, "1" discount point is $1,000. You can obtain a lower interest rate by taking a loan with additional discount points, or have fewer discount points in return for a higher interest rate.

Please ask about our current discount point/rate exchange ratio. The following is intended as an example to illustrate how our discount point/rate exchange works; it may not be reflective of the exchange ratio available at this time.

In this example, to reduce your interest rate by 1 percentage point, you would be charged an additional 1.6 discount points. The following example shows how your options work.



 

* The terms of your loan may be different from the above example. Other factors influence rate, such as how much income documentation you provide and whether you elect to have a prepayment charge on your loan.

Think carefully about what you want to do and consult a financial advisor. A discount point lowers the interest rate but *not* necessarily the overall cost of the loan. A lower rate may be a good choice if you don't plan to sell or refinance for some time. On the other hand, you might not want to have additional discount points if you think you'll sell or refinance soon. Your account executive can give you more information about the options available to you and the exact terms of your loan.

**EXHIBIT C**

# AMERICA'S MORTGAGE COMPANY

Borrower Name: (1056:)

Borrower Name: (1072:)

Loan Number: (1125:) - (13625:)

Property Address: (1203:)
(1355:)

## UNDERSTANDING YOUR OPTIONS REGARDING
## INTEREST RATES AND DISCOUNT POINTS

The interest rate (or initial interest rate in the case of an adjustable rate mortgage) and discount points on your loan are related to each other. A "discount point" is a one-time fee that equals one (1) percent of the loan amount that lowers the interest rate of the loan. So, on a $100,000 loan, "1" discount point is $1,000. You can obtain a lower interest rate by taking a loan with additional discount points, or have fewer discount points in return for a higher interest rate.

Please ask about our current discount point/rate exchange ratio. The following is intended as an example to illustrate how our discount point/rate exchange works; it may not be reflective of the exchange ratio available at this time.

In this example, to reduce your interest rate by 1 percentage point, you would be charged an additional 1.6 discount points. The following example shows how your options work.



LOWER RATE SCENARIO



REDUCED DISCOUNT POINT SCENARIO



* The terms of your loan may be different from the above example. Other factors influence rate, such as how much income documentation you provide and whether you elect to have a prepayment charge on your loan.

Think carefully about what you want to do and consult a financial advisor. A discount point lowers the interest rate but *not* necessarily the overall cost of the loan. A lower rate may be a good choice if you don't plan to sell or refinance for some time. On the other hand, you might not want to have additional discount points if you think you'll sell or refinance soon. Your account executive can give you more information about the options available to you and the exact terms of your loan.

854 (Rev. 09/24/03)

**EXHIBIT D**

02-17-05   06:04PM   From-THE RESOLUTION MEDI...MSTY MORTGAGE CO +716 245-4851   ...   ...

### Ameriquest Mortgage Company

Borrower Name: RANDY MOSS
Borrower Name:

Loan Number: 0107157240 - 5567
Property Address: 1217 VIA BALBOA
Mesquite, CA 75150

## UNDERSTANDING YOUR OPTIONS REGARDING
## INTEREST RATES AND PREPAYMENT CHARGES

Ameriquest Mortgage Company offers its customers the option to choose a prepayment charge on their loan in exchange for a lower interest rate (or lower initial interest rate in the case of an adjustable rate mortgage). A "prepayment" is any amount you pay in excess of your regularly scheduled monthly payments of principal and interest that Ameriquest Mortgage Company applies to reduce the outstanding principal balance of your loan. Prepayment charges in CA only apply to payments made during the first 3 Years of a mortgage loan.

## EXAMPLE:

The following example shows how a "prepayment charge exchange ratio" (the amount by which a prepayment charge affects the interest rate) of one-half of one percent (50 basis points) would affect a sample set of loan terms. By choosing to add a prepayment charge to your loan, your interest rate, in this example, would be reduced by one-half of one percent (50 basis points). The following example shows how your options work.



If you plan to sell or refinance your home within 3 Years , you may not want a prepayment charge on your loan. Your interest rate will be higher without a prepayment charge:

| | |
|---|---|
| Loan amount: | $100,000 |
| Interest rate: | 7% |
| Discount points: | 2.75% ($2,750) |
| Prepayment Charge: | NO |



To reduce your interest rate, you can take a loan with a prepayment charge:

| | |
|---|---|
| Loan amount: | $100,000 |
| Interest rate: | 6.50% |
| Discount points: | 2.75% ($2,750) |
| Prepayment Charge: | YES |

* The terms of your loan may be different from the above example. Other factors influence interest rate, such as your credit score and credit history, the type of income documentation you provide, whether you choose a fixed or adjustable interest rate, etc.

**Please ask your Ameriquest Mortgage Company account executive how the presence or absence of a prepayment charge would affect the interest rate on your loan.**

If you decide to include a prepayment charge on your loan, you can make additional principal payments up to a certain limit within a 12-month period; the specific terms of the prepayment charge are provided below. These terms will be included in the Note (legal document) you will sign at closing.

> You may repay all or any part of the principal balance of this Note in accordance with the terms of this Section. A "prepayment" is any amount that you pay in excess of your regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.
>
> **(A) Prepayment Made Three (3.00) year(s) After the Date of this Note**
> You will not have to pay a prepayment charge if you make a prepayment on the Three (3.00) year anniversary of the date this Note is executed, or at any time thereafter.
>
> **(B) Prepayment Made Within Three (3.00) year(s) of the Date of this Note**
> You will pay Lender a prepayment charge if, in any twelve (12) month period before the Three (3.00) year anniversary of the date this Note is executed, you prepay more than 20% of the original principal balance of this Note. The prepayment charge will be six (6) months interest, at the rate then in effect on this Note, on the amount in excess of 20% of the original principal balance that you prepay within such 12 month period.
>
> **(C) Application of Funds**
> You agree that when you indicate in writing that you are making a prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.
>
> **(D) Monthly Payments**
> If you make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, your regularly scheduled payments of principal and interest will not change as a result.

Think carefully about what you want to do and consult a financial advisor. Adding a prepayment charge in exchange for a lower interest rate may be a good choice if you do not plan to sell or refinance your home for some time. On the other hand, you might not want to have a prepayment charge if you think you will sell or refinance soon. **Your Ameriquest Mortgage Company account executive can give you more information about the options available to you and the exact terms of your loan.**

854-P (Rev. 09/24/03)



00000107157240040594O101

**EXHIBIT E**

## BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

Date: _____

Notice: [X] Delivered    [ ] Mailed

Loan Number: _____

Description of Credit Request:

[ ] 1st Trust Deed/Mortgage    [ ] 2nd Trust Deed/Mortgage

[ ] Other: _____

Property Address: _____

_____

### TYPE OF TRANSACTION:

[ ] Purchase    [ ] Refinance    Other _____

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [ ] Fixed Rate Loan  [ ] Adjustable Rate Loan | [ ] Fixed Rate Loan  [ ] Adjustable Rate Loan |
| Amount Financed: $ _____ | Amount Financed: $ _____ **. |
| Settlement Charges: $ _____ <br> (Includes all Prepaid Finance Charges) | Settlement Charges: $ _____ * <br> (Includes all Prepaid Finance Charges) |
| Loan Amount: $ _____ | Loan Amount: $ _____ |
| Annual Percentage Rate: _____ % | Annual Percentage Rate: _____ %* |
| Term: _____ | Term: _____ |
| Initial Interest Rate: _____ % | Initial Interest Rate: _____ % |
| Margin: _____ % | Margin: _____ % |
| Prepayment Penalty: [ ] YES [ ] NO | Prepayment Penalty: [ ] YES [ ] NO |

Borrower(s) and Ameriquest Mortgage Company hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

_____ _____   _____ _____
Borrower    Date        Borrower    Date

_____ _____   _____ _____
Borrower    Date        Borrower    Date

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.

STMTCO (Rev. 3/99)

**EXHIBIT F**

# Final
## Interest Rate, Payment Due,
### Fees Paid, and Prepayment Charge

Loan Number: 0107157240 - 5567          Borrower Name(s): RANDY MOSS

**The loan you are signing today is a variable/adjustable rate loan.**
- The loan will last for a total of **360 months.**
- The amount you are borrowing, the principal balance, is **$ 99,080.00.**
- It will have an **initial interest rate of 8.850%.**
- The initial monthly payment due for the first **24 months** is as follows:

| | | |
|---|---|---|
| Principal and Interest Payment: | $ | 786.55 |
| Amount of Escrow Payment, if any: | $ | |
| Amount of Total Payment: | $ | 786.55 |

Your first payment is due, starting on **March 1, 2005.** Payments are due on the first day of every month after that date, until you have repaid all principal, interest, and other charges that may become due under the promises you make in the loan agreement you will sign.

- After 24 months, the interest rate you will be charged may go up.

- Thereafter, **every six months the interest rate and payments due will be adjusted,** based on changes in the LIBOR index rate, except that the interest rate will never go below  , and will never go above  .

- **Ameriquest Mortgage Company will charge you a total of $ 5,555.63 in fees and points to get this mortgage loan.** These fees include $ 4,636.63 which is paid directly to Ameriquest Mortgage Company , and $ 919.00 which will be paid to others for services or fees charged in connection with your loan. These fees will be financed and are included in the loan's principal balance shown above.

- You may prepay all or a portion of the principal balance of the loan in accordance with the terms of the Note. A "prepayment" is any amount that you pay in excess of your regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on the loan as described below:
**(A) Prepayment Made Three (3.00) year(s) After the Date of the loan**
If you make a prepayment commencing on or after the Three (3.00) year anniversary of the date of the loan, you may make that prepayment, in full or in part, without the imposition of a prepayment charge by the Lender.
**(B) Prepayment Made Within Three (3.00) year(s) of the Date of the loan**
You agree to pay Lender a prepayment charge if you make a prepayment before the Three (3.00) year(s) anniversary of the date of this loan, whether voluntarily or involuntarily, and the aggregate amount of the prepayment you are currently making, plus all prepayments made during the immediately preceding 12-month period, exceeds twenty percent (20%) of the original principal balance of this loan. The amount of the prepayment charge will equal six (6) months interest, at the rate then in effect on this loan, based upon the aggregate amount of: (i) the principal balance prepaid on this loan during that 12-month period; plus (ii) the principal balance prepaid as a result of current prepayment.
**(C) Application of Funds**
You agree that when you indicate in writing that you are making a voluntary prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(D) Monthly Payments**
If you make a prepayment of an amount less than the amount needed to completely repay all amounts due under the Note and the Security Instrument, your regularly scheduled payments of principal and interest will not change as a result.

**By signing below, I/we hereby acknowledge reading and understanding all the information disclosed above, and having received a copy of this disclosure on the date indicated below.**

Borrower  RANDY MOSS _____          Date _____

Borrower _____          Date _____

Borrower _____          Date _____

Borrower _____          Date _____



652 (Rev. 10/04)

00000107157240040425010 1

**EXHIBIT G**

# CLAIM FORM #1

## CLAIM FORM FOR INTEREST RATE AND FEE CHARGES

### (Only For Loans Obtained On Or Before February 2, 2003)

### Ameriquest Financial Claims Administrator

**Rust Consulting, Inc.**
**201 South Lyndale Avenue**
**Faribault, MN 55021-5758**
**Telephone: (507) xxx-xxxx**

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| Coordination Proceeding Special Title (Rule 1550(b)) | Judicial Council Coordination Proceeding No. 4162 |
| AMERIQUEST CASES | |

**TO:    ALL PERSONS WHO MEET THE CLASS DEFINITION CONTAINED IN THE CLASS NOTICE AND WHO OBTAINED THEIR LOAN ON OR BEFORE FEBRUARY 2, 2003:**

    1.    To recover as a Class Member based on your claims in the above-entitled action, ALL joint borrowers must complete and sign this Proof of Claim Form and mail it to the above address, postmarked by no later than July 25, 2005. IF YOU FAIL TO SUBMIT A COMPLETED PROOF OF CLAIM ON OR BEFORE July 25, 2005, YOUR CLAIM WILL BE REJECTED AND YOU WILL BE PRECLUDED FROM RECEIVING RESTITUTION UNDER THE TERMS OF THE SETTLEMENT OF THIS ACTION. A Proof of Claim will be deemed submitted on the date postmarked or, if submitted other than by first-class mail, on the date actually received by the Settlement Administrator which must be no later than July 25, 2005.

    2.    Submission of this Proof of Claim Form does not ensure that you will share in the proceeds of Settlement in this action. Distribution from the settlement funds will be governed by the Plan of Allocation, as approved by the Court, a copy of which is attached as Exhibit A to the Settlement Notice. Borrowers whose loan terms did not vary materially as defined will receive no compensation.

**PLEASE PRINT:**

Borrower No. 1

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Name | Social Security No. | Drivers License No. (optional) |

Borrower No. 2:

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Name | Social Security No. | Drivers License No. (optional) |

Borrower No. 3

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Name | Social Security No. | Drivers License No. (optional) |

Page 1 of 2

Mailing Address: _____

City: _____

State: _____  ZIP Code: _____

Property Address(es)
Secured by Loan(s): _____

Loan No. (optional): _____

Date of Loan(s): _____

3.    Agents, executors, administrators, guardians, and trustees must complete and sign the Proof of Claim on behalf of persons represented by them and they must also:

     (a) expressly state the capacity in which they are acting;

     (b) furnish, along with the Proof of Claim, evidence of their authority to bind the the person or entity on whose behalf they are acting.

4.    Unless you opt-out, all claims against Ameriquest have been released as set forth in the enclosed Notice of Settlement. Unless you opt-out, your release of claims is applicable and binding on you whether or not you fill out this Proof of Claim.

5.    THE BENEFITS OF THIS CLAIM FORM MAY BE TAXABLE AND THE CLAIMS ADMINISTRATOR IS LEGALLY OBLIGATED TO REPORT TO THE IRS ALL AMOUNTS OF $600 OR GREATER PAID IN RESTITUTION TO YOU PURSUANT TO YOUR CLAIM. PLEASE CONSULT A TAX ADVISOR.

     **I/We declare under penalty of perjury under the laws of the State of California that, to the best of my/our knowledge, all the above information is true and correct.**

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Date | (Signature Borrower No. 1) | (Print Name of Borrower No.1) |
| _____ | _____ | _____ |
| Date | (Signature Borrower No. 2) | (Print Name of Borrower No.2) |
| _____ | _____ | _____ |
| Date | (Signature Borrower No.3) | (Print Name of Borrower No.3) |

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE FOR INFORMATION**

**EXHIBIT H**

## CLAIM FORM #2
## CLAIM FORM FOR INTEREST RATE AND CHARGES

### (For Loans Obtained Between February 3, 2003 and February 29, 2004)

#### Ameriquest Financial Claims Administrator

### Rust Consulting, Inc.
### 201 South Lyndale Avenue
### Faribault, MN 55021-5758
### Telephone: (507) xxx-xxxx

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

### IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| Coordination Proceeding Special Title (Rule 1550(b)) | Judicial Council Coordination Proceeding No. 4162 |
| **AMERIQUEST CASES** | |

**TO:** ALL PERSONS WHO MEET THE CLASS DEFINITION CONTAINED IN THE CLASS NOTICE AND WHO OBTAINED AN AMERIQUEST LOAN BETWEEN FEBRUARY 3, , 2003 AND FEBRUARY 29, 2004:

1.   To recover as a Class Member based on your claims in the above-entitled action, ALL joint borrowers must complete and sign this Proof of Claim Form and mail it to the above address, postmarked by no later than July 25, 2005.  IF YOU FAIL TO SUBMIT A COMPLETED PROOF OF CLAIM ON OR BEFORE July 25, 2005, YOUR CLAIM WILL BE REJECTED AND YOU WILL BE PRECLUDED FROM RECEIVING RESTITUTION UNDER THE TERMS OF THE SETTLEMENT OF THIS ACTION.   A Proof of Claim will be deemed submitted on the date postmarked or, if submitted other than by first-class mail, on the date actually received by the Settlement Administrator which must be no later than July 25, 2005.

2.   Submission of this Proof of Claim Form does not ensure that you will share in the proceeds of Settlement in this action.  Distribution from the settlement funds will be governed by the Plan of Allocation, as approved by the Court, a copy of which is attached as Exhibit A to the Settlement Notice.  Borrowers whose loan terms did not vary materially as defined will receive no compensation.

PLEASE PRINT:

Borrower No. 1    _____    _____    _____
                  Name                         Social Security No.    Drivers License No. (optional)

Borrower No. 2:   _____    _____    _____
                  Name                         Social Security No.    Drivers License No. (optional)

Borrower No. 3    _____    _____    _____
                  Name                         Social Security No.    Drivers License No. (optional)

Mailing Address: _____

City: _____

State: _____     ZIP Code: _____

Property Address(es)
Secured by Loan(s): _____

Loan No. (optional): _____

Date of Loan(s): _____

3.    Agents, executors, administrators, guardians, and trustees must complete and sign the Proof of Claim on behalf of persons represented by them and they must also:

        (a)    expressly state the capacity in which they are acting;

        (b)    furnish, along with the Proof of Claim, evidence of their authority to bind the    the person or entity on whose behalf they are acting.

4.    Unless you opt-out, all claims against Ameriquest have been released as set forth in the enclosed Notice of Settlement. Unless you opt-out, your release of claims is applicable and binding on you whether or not you fill out this Proof of Claim.

5.    THE BENEFITS OF THIS CLAIM FORM MAY BE TAXABLE AND THE CLAIMS ADMINISTRATOR IS LEGALLY OBLIGATED TO REPORT TO THE IRS ALL AMOUNTS OF $600 OR GREATER PAID IN RESTITUTION TO YOU PURSUANT TO YOUR CLAIM. PLEASE CONSULT A TAX ADVISOR.

6.    I/We declare under penalty of perjury under the laws of the State of California as follows:

        (a)    I/we obtained a loan from Ameriquest between the dates of February 3, 2003 and February 29, 2004.

        (b)    The loan terms in my/our Final Loan Documents were less favorable to me/us than the loan terms contained in my/our Preliminary Disclosures. I/we did not request a change in any of the terms prior to the date I/we signed the Final Loan Documents.

        (c)    I/we provided accurate information to Ameriquest when I/we applied for the loan.

        (d)    I was/We were not informed by any Ameriquest representative, and did not know, of the changes in my/our loan terms prior to the date I/we signed the Final Loan Documents.

_____    _____    _____
Date    (Signature Borrower No. 1)    (Print Name of Borrower No.1)

_____    _____    _____
Date    (Signature Borrower No. 2)    (Print Name of Borrower No.2)

_____    _____    _____
Date    (Signature Borrower No.3)    (Print Name of Borrower No.3)

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE FOR INFORMATION**

**EXHIBIT I**



## CLAIM FORM #3

## CLAIM FORM FOR BORROWERS WHO PAID OR WILL HAVE TO PAY A PRE-PAYMENT PENALTY AND AFFIRM THAT THEIR PRELIMINARY DISCLOSURES DID NOT REFLECT THAT THE LOAN WOULD CONTAIN A PRE-PAYMENT PENALTY

### Ameriquest Financial Claims Administrator

### Rust Consulting, Inc.
### 201 South Lyndale Avenue
### Faribault, MN 55021-5758
### Telephone: (507) xxx-xxxx

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

### IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| Coordination Proceeding Special Title (Rule 1550(b)) | Judicial Council Coordination Proceeding No. 4162 |
| AMERIQUEST CASES | |

**TO: ALL PERSONS WHO MEET THE CLASS DEFINITION CONTAINED IN THE CLASS NOTICE, AND EITHER PAID A PRE-PAYMENT PENALTY TO AMERIQUEST OR HAVE A PRE-PAYMENT PENALTY DUE AT THE TIME OF DISTRIBUTION OF SETTLEMENT FUNDS:**

If you actually paid a pre-payment penalty to Ameriquest, or have a pre-payment penalty due at the time of distribution of settlement funds, and your Preliminary Disclosure Statement did not reflect that your loan would contain a pre-payment penalty, you are entitled to a 50% refund for that payment, reduced by any amounts that you may have received as part of the settlement of the case *Ansley v. Ameriquest*, Orange County Superior Court No. 01CC00220 ("Ansley Action").

This refund is separate from any other benefits available under this Settlement. This Claim Form must be completed in addition to the Claim Form for Interest Rate and Fee Charges, to recover a refund.

1. To recover as a Class Member based on your claims in the above-entitled action, ALL joint borrowers must complete and sign this Proof of Claim Form and mail it to the above address, postmarked by no later than July 25, 2005. IF YOU FAIL TO SUBMIT A COMPLETED PROOF OF CLAIM ON OR BEFORE July 25, 2005, YOUR CLAIM WILL BE REJECTED AND YOU WILL BE PRECLUDED FROM RECEIVING RESTITUTION UNDER THE TERMS OF THE SETTLEMENT OF THIS ACTION. A Proof of Claim will be deemed submitted on the date postmarked or, if submitted other than by first-class mail, on the date actually received by the Settlement Administrator which must be no later than July 25, 2005.

2. Submission of this Proof of Claim Form does not ensure that you will share in the proceeds of Settlement in this action. Only borrowers that actually paid a pre-payment penalty to Ameriquest, or are subject to a pre-payment penalty at the time of distribution of settlement funds.

**PLEASE PRINT:**

Borrower No. 1

_____     _____     _____
Name                      Social Security No.       Drivers License No. (optional)

Borrower No. 2:

_____     _____     _____
Name                      Social Security No.       Drivers License No. (optional)

Borrower No. 3

_____     _____     _____
Name                      Social Security No.       Drivers License No. (optional)

Mailing Address:    _____

City:               _____

State:              _____          ZIP Code:   _____

Property Address(es)
Secured by Loan(s):    _____

Loan No. (optional):   _____

Date of Loan(s):       _____

    3.    Agents, executors, administrators, guardians, and trustees must complete and sign the Proof of Claim on behalf of persons represented by them and they must also:

        (a)    expressly state the capacity in which they are acting;

        (b)    furnish, along with the Proof of Claim, evidence of their authority to bind the the person or entity on whose behalf they are acting.

    4.    Unless you opt-out, all claims against Ameriquest have been released as set forth in the enclosed Notice of Settlement. Unless you opt-out, your release of claims is applicable and binding on you whether or not you fill out this Proof of Claim.

    5.    THE BENEFITS OF THIS CLAIM FORM MAY BE TAXABLE AND THE CLAIMS ADMINISTRATOR IS LEGALLY OBLIGATED TO REPORT TO THE IRS ALL AMOUNTS OF $600 OR GREATER PAID IN RESTITUTION TO YOU PURSUANT TO YOUR CLAIM. PLEASE CONSULT A TAX ADVISOR.

    6.    I was/We were not informed by any Ameriquest representative, and did not know, that the above-referenced Ameriquest loan would contain a pre-payment penalty prior to the date I/we signed the Final Loan Documents.

7.    I/We declare under penalty of perjury under the laws of the State of California that, to the best of my/our knowledge, all of the above information is true and correct.

_____          _____          _____
Date             (Signature Borrower No. 1)         (Print Name of Borrower No.1)


_____          _____          _____
Date             (Signature Borrower No. 2)         (Print Name of Borrower No.2)


_____          _____          _____
Date             (Signature Borrower No.3)          (Print Name of Borrower No.3)


**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE**

**FOR INFORMATION**