IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION<br>_____ | MDL No. 1715<br><br>Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | (Centralized before the Honorable Marvin E. Aspen) |

**COOPERATING PLAINTIFFS RESPONSE IN OPPOSITION TO APPOINTMENT OF EDELMAN, COMBS, LATTURNER & GOODWIN, LLC, AS CO-LEAD COUNSEL AND TO THE EDELMAN PLAINTIFFS' PROPOSED ORGANIZATION AND CASE MANAGEMENT PLAN**

At the Court's direction, Plaintiffs from the majority of the MDL class cases and individual cases (the "Cooperating Plaintiffs") worked together, negotiated and agreed on an organizational structure and case management plan. They jointly filed a Joint and Agreed Organization and Case Management Plan as required by this Court. [Docket Entry 162.] In light of the substantial agreements reached between Plaintiffs and their counsel, the Cooperating Plaintiffs hereby object to the appointment of the law firm of Edelman, Combs, Latturner & Goodwin, LLC, ("Edelman firm") as Co-Lead Counsel (or as sole lead having control over the non-borrower FCRA class claims) and to the Edelman Plaintiffs' proposed organization and case management plan.

**I. The Cooperating Plaintiffs Offered the Edelman's Firm Several Key Leadership Positions that Edelman Declined.**

The leadership team proposed by the Cooperating Plaintiffs actively engaged in negotiations with the Edelman Firm offered it several significant opportunities to participate in the leadership

of the case. In each instance and on multiple occasions, the Edelman firm declined these opportunities. As a result, such positions were offered to and accepted by other firms with substantial qualifications and are no longer available.

Most notably, the Edelman firm declined the Cooperating Plaintiffs' proposal that it take lead responsibility for the individual cases. This proposal expressly tracked the activity of the Edelman firm's own filings, which is dominated by individual TILA cases. According to the Edelman firm's motion for appointment, the firm is counsel to plaintiffs in 85 individual cases (75 of which are now pending here). Thirty-two (32) of these individual TILA cases have been filed in the last few months, in or after March 2006.[1] The Edelman firm's individual cases largely allege the very TILA violations that are the subject of the Cooperating Plaintiffs' Co-Lead Counsel's Motion for Preliminary Injunction and Request for Provisional Certification of a Rescission Class.[2] The Edelman firm rejected the proposal that it take leadership of the individual cases and the post was offered to, and accepted by, the Consumer Law Group, LLC and an eminent non-profit legal services provider for low-income consumers, the National

---

[1] The class cases filed by the Edelman firm allege statewide classes and were (perhaps save one) filed after nationwide class actions by the Cooperating Plaintiffs' leadership team were already pending in other jurisdictions. Notably, the Edelman firm's non-borrower Fair Credit Reporting Act cases are all filed as statewide class actions (two seeking to represent Illinois classes - filed in March 2005 and May 2005, and one seeking to represent an Indiana class filed in Aug. 2005). Cooperating Plaintiffs' proposed Co-Lead Counsel, James Hoyer, filed nationwide class actions on the same and other non-borrower Fair Credit Reporting Act claims prior to the Edelman firm's statewide only filings in November 2004 and February 2005.

[2] On May 31, 2006 this Court granted the Cooperating Plaintiffs' Co-Lead Counsel's request for interim relief agreeing that there was adequate evidence under the standards governing preliminary injunctions to require Ameriquest to provide notice to all borrowers facing foreclosure sales that they may have extended rights to rescind their loan transactions as a result of Ameriquest's failure to comply with TILA's Notice of Right to Cancel requirements. Docket Entry 143. The Cooperating Plaintiffs Co-Lead Counsel then negotiated with Ameriquest over the language of the Notice to borrowers and posted a bond to support the interim relief.

Consumer Law Center.[3] Other offers and proposals were likewise rejected by the Edelman firm and accepted by other Plaintiffs' counsel.

The discussions concerning leadership were open, and everyone participated in a spirit of compromise to forward the common goals of all Plaintiffs, except the Edelman firm. Various structures were considered, and ultimately all of the Cooperating Plaintiffs' counsel agreed to the structure proposed in Plaintiffs' Joint and Agreed Organization and Case Management Plan. (Docket 162-1). The Edelman firm is now asking this Court to thwart the Cooperating Plaintiffs' negotiated and agreed plan, and give the Edelman firm a role it could not obtain by negotiation. Respectfully, the Court should decline to superimpose the Edelman firm on the agreed Counsel structure in the manner it requests, because it will undermine the very active and collegial process that gave rise to the Cooperating Plaintiffs' Joint and Agreed Organization and Case Management Plan.

## II. The Cooperating Plaintiffs have Put Together an Outstanding Team.

The Cooperating Plaintiffs have already put together an outstanding team that will represent all Plaintiffs (both class plaintiffs and individual plaintiffs) well and without engendering conflict. The Cooperating Plaintiffs' proposed Co-Lead Counsel team (with the assistance of counsel for other Cooperating Plaintiffs) has already sought and obtained interim notice relief for borrowers who might have otherwise permanently lost extended TILA rescission rights. Notably, Cooperating Plaintiffs' proposed Co-Lead Counsel obtained evidence, briefed and filed

---

[3] Resumes are attached to the Plaintiffs' Proposed Case Management Plan. [Docket No. 162.] Most relevantly, the National Consumer Law Center is a national organization that not only successfully litigates on behalf of indigent consumers across the country, but also publishes highly regarded legal treatises on topics relevant to this litigation including the Truth in Lending Act and hidden costs of credit. *See generally* www.consumerlaw.org.

3

a Motion for Preliminary Injunction and a Motion for Provisional Certification of a Rescission Class, all prior to the first status conference in this MDL proceeding in February 2006.

Unquestionably, the proposed Co-Lead Counsel team consists of lawyers and firms experienced in the prosecution of predatory lending and Fair Credit Reporting Act cases. Cooperating Plaintiffs' proposed Co-Lead counsel Lieff, Cabraser, Heimann & Bernstein, LLP is currently serving as court-appointed Plaintiffs' Co-Lead Counsel in the predatory mortgage servicing case, In re Ocwen Federal Bank FSB Mortgage Servicing Litig, MDL NO. 1604, pending before Judge Norgle in this District. Roddy, Klein & Ryan served as court-appointed Plaintiffs' Co-Lead Class Counsel in the national predatory mortgage lending class action, In re Household Lending Litigation, Case No. C 02-1240 CW (N.D. Cal.), where Plaintiffs obtained more than $150 million dollars of additional relief for class members, even following Household's settlement with 50 states attorneys' general. The James, Hoyer, Newcomer & Smiljanich PA firm served as court-appointed Plaintiffs' Co-Lead Counsel in the national MDL proceeding, In re Allstate Insurance Company Underwriting and Rating Practices Litigation, MDL Docket No. 1457 (M.D. Tenn), which included claims under the Fair Credit Reporting Act.

The Cooperating Plaintiffs' selected liaison counsel, the firm Miller Faucher and Cafferty LLP ("Miller Faucher"), is a firm experienced in class litigation which recently assisted proposed Co-Lead Counsel, James Hoyer, in representing a group of objectors who successfully challenged an inappropriate class settlement sponsored by the Edelman firm before Judge Samuel Der-Yeghiayan of this District.[4] Likewise, the Cooperating Plaintiffs' Executive Committees, Individual Claims Steering Committee, and Committee of the Whole are filled with reputable firms and lawyers who are proven class and individual client advocates.

4

Upsetting the balance of this negotiated agreement between a highly qualified and unified team of lawyers can only prejudice the Cooperating Plaintiffs, (as well as the Edelman Plaintiffs) by creating a team that will work together less effectively. Inserting the Edelman firm in a position it could not obtain by negotiation also would undermines the process mandated by this court, which gave rise to a consensus Organization and Case Management plan. That plan already has the support of nearly all counsel with actions pending in this MDL proceeding.

In all, the Cooperating Plaintiffs' team includes counsel in nineteen (19) separate class actions and nearly all of the other individual cases pending in the MDL, excluding Edelman's individual cases. This collegial team of lawyers and the balance struck between them should not be upset by the insertion of the Edelman firm into their midst in a lead role without their collective consent.

**III.　The Cooperating Plaintiffs Group Had Sound Reasons for Declining to Place the Edelman Firm in a Lead Counsel Role.**

　　**A. The Edelman Firm's Filing of Scores of Individual Cases and Active Settlement Negotiations with Ameriquest on Individual Claims Makes the Edelman Firm Unsuitable for a Lead Counsel Role in the Class Cases.**

　　　　**1.　Edelman Represents Scores of Individual Plaintiffs Creating a Potential Conflict.**

Class Counsel is required to act with unwavering and complete loyalty to the class members they represent, and the "responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties" <u>Kayes v. Pacific Lumber Co.,</u> 51 F. 3d 1449, 1465 (9th Cir. 1995). This is why the Cooperating Plaintiffs propose separate treatment and leadership of the individual cases, and a separate track for resolution of those claims. The Cooperating Plaintiffs wish to avoid even the appearance that

---

<sup>4</sup>　　See Section III below, reporting Judge Der-Yeghiayan's criticism of the Edelman firm in connection with its representation of plaintiffs on the very "firm offer of credit" issues the Edelman firm,

proposed Co-Lead Counsel, the Executive Committee, or Others who plan to assist in actively litigating the class cases pending in the MDL have divided loyalties.

This Cooperating Plaintiffs' proposal will ultimately aide this Court.  As courts in this Circuit have recognized, "[T]he Court's job under Rule 23(a)(4) is not to discern whether the class representative-class counsel relationship creates an actual conflict, but rather to assess the likelihood that a conflict of interest may exist."  In re Discovery Zone Securities Litigation, 169 F.R.D. 104, 108 (N.D. Ill. 1996)(citing Susman v. Lincoln Am. Corp., 561 F.2d 86, 94 n. 11 (7th Cir. 1977); Swain v. Brinegar, 517 F.2d 766, 780 (7th Cir. 1975)).  The adequacy requirement cannot be established where there is the "appearance of and potential for impropriety," even if it is not certain that "class counsel would turn appearance into reality."  In re Discovery Zone, 169 F.R.D. at 108.  "A conflict of interest that may require disqualification may be present ...if class counsel is involved in multiple lawsuits for the named representative or against the same defendants that could result in conflicting interests in their prosecution."  Wright, Miller and Kane, Federal Practice & Procedure § 1769.1.

Here, the Edelman firm concedes that a majority of the cases it has filed against Ameriquest (65 of which are now pending here) are individual cases (Docket Entry 160-1, p. 2).  By doing this, the Edelman firm has placed itself in a position of potential conflict of interest, where it may be called upon to act in the best interest of present or future individual Plaintiffs to the detriment of absent class members.  For example, Rule 23(b)(1) permits certification of a class where there is a risk of inconsistent or varying adjudications.  The Edelman firm's filing and active litigation of individual cases may prevent it from advocating for this basis for class certification, thereby posing a conflict.

---

alternatively, ask to take sole leadership of here in its Motion for Appointment.

Further, if a class were certified, the Edelman firm would find itself representing both class members of dozens of opt-outs. The Edelman firm then may have a conflict where they would be advising individual clients to opt-out so that they can gain additional relief, and at the same time advising absent class members that it is appropriate not to opt-out of the class. Such potential for conflict should not be foisted on absent class members.

### 2. The Edelman Firm Has Been Actively Settling Individual Cases with Ameriquest.

In its request for appointment, the Edelman firm touts that it is actively pursuing settlement discussions with Ameriquest in pending individual cases and in representation of other individuals even before filing suit. (Docket Entry 106-1, p.6). Respectfully, for this reason alone appointment of the Edelman firm as Co-Lead is inappropriate. Despite the stay in this case, the Edelman firm has chosen to settle individual cases potentially to the potential detriment of the absent class members. Although it is impossible to know for certain without discovery, the Edelman firm's individual settlements (potentially including attorneys' fees) could be diminishing Ameriquest's resources in ways that ultimately hurt the class. Moreover, it is difficult, if not impossible, to assert that a settlement on behalf of ac lass is fair and reasonable when other relief is available under individual settlements to a select group of clients of the firm to the detriment of absent class members.[5]

### B. Recent Criticism of the Edelman Firm's Conduct in "Firm Offer of Credit" Cases the Edelman Firm Alternatively Proposes it have Sole Control Over In This MDL.

Although undersigned counsel take no position, it merits note that courts in this Circuit and elsewhere have not always viewed the Edelman firm's practices favorably. Most recently, the Cooperating Plaintiffs' proposed Co-Lead Counsel, James Hoyer, along with proposed Liaison

---

[5] There are no easily discernable factual differences between the individual complaints and the class complaints that the Edelman firm has filed.

7

Counsel, Miller Faucher, successfully sought to set aside a Judgment approving an Edelman firm class action settlement in a "firm offer of credit" case. In that case, Judge Der-Yeghiayan was troubled that the Edelman firm and the Defendant agreed, during settlement negotiations not to provide notice to all class members. Judgment was vacated. *See* Murray v. IndyMac Bank, F.S.B, Case No. 04 C 7669, Order Vacating Judgment (February 28, 2006, N.D. Illinois) ("IndyMac") (Attached as Ex. A.).

Further, just prior to the Court vacating the judgment in IndyMac, the Seventh Circuit in Murray v. GMAC Mortgage Corp, 434 F.3d 948, 952(7th Cir. 2006) ("GMAC") criticized the Edelman firm in another "firm offer of credit" case for "negotiating for payment while giving GMAC the benefit of a judgment that leaves the class empty-handed." Id. *2. The Seventh Circuit called the proposed settlement by the Edelman firm "untenable" and commented that the absence of meaningful relief to the class made the deal look like a "sellout". Id. *3.

The Seventh Circuit has found that consideration of the "track record" of class counsel is appropriate in determining the adequacy of class counsel. Greisz v. Household Bank, 176 F. 3d 1012, 1014 (7th Cir. 1999).[6] Accordingly, for these sound legal reasons and given the Edelman firm's track record in this Circuit, most recently in connection with the very FCRA "firm offer of credit" claims it seeks "sole control" over here, the Cooperating Plaintiffs cannot support the Edelman firm's participation as co-lead counsel in the class cases.

---

[6] In Riddle & Associates, P.C. v. Kelly, 414 F.3d 832 (7th Cir.2005), the Seventh Circuit upheld the imposition of 28 U.S.C. § 1927 sanctions on Edelman's firm after a letter was sent to the law firm Riddle & Associates, P.C., accusing it of violating the FDCPA, and Riddle successfully brought a declaratory judgment action for a declaration that there had been no violation. The Seventh Circuit also held that the law firm representing Riddle was entitled to § 1927 sanctions based on a counterclaim filed against that firm. In both instances, Edelman was personally involved and it was held that frivolous FDCPA contentions were asserted or defended.

### IV. Cooperating Plaintiffs have No Objection to the Appointment of the Edelman Firm as Liaison Counsel for the Individual Cases.

As explained in the Cooperating Plaintiffs' Joint and Agreed Organization and Case Management Plan at ¶ 1(d), assuming the appointment of NCLC and CLG as co-chairs of the individual claims steering committee, the Cooperating Plaintiffs have no objection to the appointment of the Edelman firm as Liaison Counsel for the individual cases in this proceeding, which proposal aligns well with the Edelman firm's own filings and the filings of its supporting firm. In this role the Edelman firm would be responsible for overseeing communications in the individual cases for scheduling or related matters, and the Edelman firm would also be available to consult with counsel in the individual cases concerning matters pertaining to Seventh Circuit and Northern District of Illinois practice and procedure.

The Edelman firm would then also retain control over its substantial individual litigation. The Edelman firm reports that it has both filed and will prosecute 75 individual cases and has successfully settled individual cases pre-suit even during the stay of matters in the MDL. Moreover, the Plaintiffs' firms supporting the Edelman firm have respectively filed predominantly individual cases[7] and would presumably be agreeable to the Edelman firm's appointment as liaison counsel in those cases.

---

[7] Attorney Christopher M. Lefebrve of the Claude Lefebvere, Christopher Lefebvre P.C. firm declares in support of the Edelman firm that Edelman is co-counsel to his firm in fifteen (15) individual TILA rescission claims pending in Rhode Island. Likewise, attorney Dan Harris declares that he has filed eight (8) individual cases pending in the MDL and only three (3) class cases that the Edelman firm is also co-counsel with him. At least one of the Harris class cases alleges a rescission class - the same class that Cooperating Plaintiffs have already identified and moved on behalf of the issuance of a Provisional Certification and filed a Preliminary Injunction. Thus, the Edelman/Harris class cases have been and will be adequately protected by the Cooperating Plaintiffs agreed leadership team.

## V. Edelman Plaintiffs' Proposed Organization and Case Management Proposal Should be Rejected.

The Edelman Plaintiffs' Proposed Organization and Case Management Proposal should be rejected in favor of the Cooperating Plaintiffs' Joint and Agreed Organization and Case Management Plan for a number of reasons. First, a majority of counsel in cases pending in the MDL already have consented to join the Cooperating Plaintiffs' plan. Given that the Cooperating Plaintiffs have already agreed to an approach to the complex litigation, it should be given significantly greater weight than the separate plan submitted by the Edelman firm alone.

Second, the Edelman Plaintiffs' plan appears to contemplate (Docket Entry 163-1, Section 5, pp. 6-7) that pleading and motion practice would go forward independently in each case - without consolidation. Such an approach would saddle this Court with active re-pleading and motion practice going on simultaneously in so many cases where the legal issues and allegations are similar that it would eliminate any possibility of proceeding efficiently towards the resolution of any matter. *See* Cooperating Plaintiffs Opposition to Ameriquest's Case Management Plan Sections 4 and 5.

Third, the Edelman Plaintiffs propose fast-tracking and selecting "key" cases for the filing of summary judgment motions, with the hope that this will facilitate the settlement of a much larger number of cases. This would necessarily mean that the Edelman Plaintiffs propose that summary judgment motions should precede a class determination, and that orders on summary judgments respecting individuals in the "key cases" would be defacto binding on other plaintiffs and absentee class members. This approach is not fair or reasonable in light of the need for lead counsel to protect the interests of all Plaintiffs in filed cases, including the Edelman Plaintiffs, and to protect absentee Class Members.

Finally, the Edelman Plaintiffs propose a piece-meal approach to settlement discussions, which may advance the cause of some plaintiffs and claims to the detriment of others. Such an approach risks inconsistent or varying results for individuals and members of the class and/or may result in the settlement of some claims in a way that defacto becomes dispositive of the interests of other individuals or class members. The Cooperating Plaintiffs propose a more unified approach which while allowing for some differing treatment of cases carries less risk should the Defendant choose to settle some matters or claims reducing the funds that may be available to resolve all of the matters collectively.

## VI.    Conclusion

For all these reasons, the Cooperating Plaintiffs respectfully request that this Court reject the Edelman firm's request to be appointed co-lead and its alternative request to be appointed lead over the non-borrower "firm offer of credit" class actions making claims under the Fair Credit Reporting Act. The Cooperating Plaintiffs also respectfully request that this Court reject the Edelman Plaintiffs' Case Management Plan in favor of the Agreed Case Management Plan filed by the Cooperating Plaintiffs.

Respectfully submitted,

Dated: June 22, 2006

| | |
|---|---|
| _____/s/ Kelly M. Dermody_____<br>Kelly M. Dermody | _____/s/ Gary Klein_____<br>Gary Klein |

Kelly M. Dermody (CA Bar No. 171716)  
Caryn Becker (CA Bar No. 196947)  
LIEFF, CABRASER, HEIMANN  
 & BERNSTEIN, LLP  
275 Battery Street, 30th Floor  
San Francisco, CA 94111-3339  
Telephone: (415) 956-1000  
Facsimile: (415) 956-1008  

Gary Klein  
Elizabeth Ryan  
Shennan Kavanagh  
RODDY KLEIN & RYAN  
727 Atlantic Avenue  
Boston, MA 02111-2810  
Telephone: (617) 357-5500 ext. 15  
Facsimile: (617) 357-5030  

_____/s/ Terry Smiljanich_____  
Terry Smiljanich  

Terry Smiljanich  
Jill Bowman  
JAMES, HOYER, NEWCOMBER  
 & SMILJANICH, P.A.  
One Urban Center, Suite 550  
4830 West Kennedy Boulevard  
Tampa, FL 33609  
Telephone: (813) 286-4100  
Facsimile: (813) 286-4174  

*Proposed Plaintiffs' Co-Lead Counsel*

_____/s/ Marvin Miller_____  
Marvin Miller  

Marvin A. Miller  
MILLER FAUCHER AND CAFFERTY LLP  
30 N. LaSalle Street, Suite 3200  
Chicago, IL 60602  
Telephone: (312) 782-4880  
Facsimile: (312) 782-4485  

*Proposed Plaintiffs' Liaison Counsel*

Samuel H. Rudman
Evan J. Kaufman
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173

Michael Donovan
DONOVAN SEARLES LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile: (215) 732-8060

William H. Crowder
Gregory L. Paulson
CROWDER, BEDOR & PALLSON, LLP
555 West 7th Street, Suite 201
St. Paul, MN 55201
Telephone: (651) 225-8330
Facsimile: (651) 204-2134

*Proposed Plaintiffs' Executive Committee*

Daniel S. Blinn
CONSUMER LAW GROUP, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, CT 06067
Telephone: (860) 571-0408
Facsimile: (860) 571-7457

Charles Delbaum
NATIONAL CONSUMER LAW CENTER
77 Summer Street, 10th Floor
Boston, MA 02110
Telephone: (617) 542-8010
Facsimile: (617) 542-8028

*Proposed Plaintiffs' Individual Consumer Claims Steering Committee*

W. Roderick Bowdoin
DARBY PEELE BOWDOIN & PAYNE
P.O. Drawer 1707
Lake City, FL 32056
Telephone: (836) 752-4120
Facsimile: (836) 755-4569

Douglas Bowdoin
DOUGLAS BOWDOIN, P.A.
P.O. Box 2254
Orlando, FL 32802-2254
Telephone: (407) 422-0025
Facsimile: (407) 843-2448

J. Craig Bourne
1520 East Livingston Street
Orlando, FL 32801
Telephone: (407) 894-6750
Facsimile: (407) 894-4735

Laurence Tien
Kamran Mashayekh
THE TIEN LAW FIRM, LLP
10235 West Little York Road, Suite 470
Houston, TX 77040
Telephone: (713) 937-0223
Facsimile: (713) 937-0220

Theresa I. Wigginton
915 Oakfield Drive, Suite F
Brandon, Florida 33511
Telephone: (813) 653-2992
Facsimile: (813) 655-7082

Jonathan A. Boynton
Sarah Brite Evans
KIRBY NOONAN LANCE & HOGE, LLP
One America Plaza
600 W. Broadway, Suite 1100
San Diego, CA 92101-3387
Telephone: 619/231-8666
Facsimile: 619/231-9593

Matthew J. Zevin
STANLEY, MANDEL & IOLA, L.L.P.
 550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 235-5306
Facsimile: (815) 377-8419

Andrew S. Kierstead
LAW OFFICE OF ANDREW S. KIERSTEAD
1001 SW Fifth Avenue, Suite 1100
Portland, OR 97204
Telephone: (508) 224-6246
Facsimile: (508) 224-4356

Marc R. Stanley
Roger L. Mandel
Martin Woodward
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, TX 75205
Telephone: (214) 443-4300
Facsimile: (214) 443-0358

Thomas G. Shapiro
Theodore M. Hess-Mahan
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

Richard J. Fuller
1700 US Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
Telephone: (612) 341-1209
Facsimile: (612) 339-3161

David J. George
Robert J. Robbins
Stuart A. Davidson
197 S. Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone: 561/750-3000
Facsimile: 561/750-3364

Gary F. Lynch
36 N. Jefferson Street
New Castle, PA 16101
Telephone: (724) 656-1555

*Additional Plaintiffs' Counsel*