IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION <br><br> THIS DOCUMENT RELATES TO: ALL ACTIONS | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> (Centralized before the Honorable Marvin E. Aspen) |

**COOPERATING PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPROVAL OF PLAINTIFFS' PROPOSED ORGANIZATION AND CASE MANGEMENT PLAN AND TO LIFT STAY**

**INTRODUCTION**

On February 7, 2006, this Court directed Plaintiffs' Counsel to organize and to jointly present a proposed case management plan by June 13, 2006. The Court also generally stayed proceedings pending organization.[1] Plaintiffs' counsel has now conferred, and after extended discussion among them, has presented the Court with a comprehensive proposal for case management on behalf of a unified group of cooperating Plaintiffs ("Cooperating Plaintiffs"). See Plaintiffs' Joint and Agreed Organization and Case Management Plan ("Cooperating Plaintiffs' Plan"). [Docket No. 162.] Cooperating Plaintiffs' Plan contemplates consensus appointment of co-lead counsel, liaison counsel,

---

[1] In the intervening period the Court entered a negotiated standstill agreement as well as contested injunctive relief. The proponents of this motion are among the counsel that achieved these results.

1

an Executive Committee, and counsel to coordinate pending non-class cases.[2] In addition, the Cooperating Plaintiffs' Plan includes comprehensive proposals for managing the case consistent with the recommendations of the Manual for Complex Litigation.

At the hearing held on June 13, 2006 on other matters,[3] the Court expressed an intention to continue the existing stay of proceedings until an October 2006 status conference. For the reasons set forth below and in Cooperating Plaintiffs' Response to Defendant's Case Management Plan (filed contemporaneously), the Cooperating Plaintiffs believe that they would be prejudiced by an additional stay of more than four months. Cooperating Plaintiffs' therefore seek earlier approval of the Cooperating Plaintiffs' Plan, including the appointment of counsel on either a permanent or interim[4] basis. Cooperating Plaintiffs also request that the court lift its stay of proceedings in order to allow progress in the case prior to October 2006. In the alternative, Cooperating Plaintiffs seek an opportunity to commence discovery prior to October 2006.

---

[2] Only a single firm, Edelman, Combs & Latturner, ("the Edelman firm") filed a competing plan and a motion for its appointment as co-lead counsel for limited purposes. See Cooperating Plaintiffs' Opposition to Edelman's Motion for Appointment as Lead-Counsel (filed contemporaneously).

[3] The previously scheduled case management conference had been canceled and Counsel were directed not to appear. [Docket No. 144.] However, proposed liaison counsel, Marvin A. Miller and Dom J. Rizzi, were present for the hearing.

[4] Counsel seek interim or provisional appointment in the alternative. The Court might also choose to approve the Cooperating Plaintiffs' Case Management Plan on an interim basis. As discussed more fully below, interim or provisional arrangements would allow this proceeding to progress in the next four months subject to further review of these issues by the Court.

**ARGUMENT**

**I. DELAY WOULD BE UNFAIR AND PREJUDICIAL TO THE PLAINTIFFS.**

The Cooperating Plaintiffs ask the Court to allow this case to proceed pending the October status conference, particularly to permit continuation of discovery. Many of the transferred cases were filed in 2004 and they have been stayed now for many months.

Because the issues here involve mortgages and on ongoing mortgage servicing relationship between the parties, the Plaintiffs' interests are not entirely like those present in a typical consumer class action – where delay means only loss of use of recoverable damages. Many Plaintiffs in this proceeding assert, for example, that they were promised a particular interest rate and received a higher rate. Similarly, there are allegations that Ameriquest routinely promised fixed rate loans and provided complicated variable rate provisions. Plaintiffs paying higher rates than they were promised face an additional monthly financial burden. Indeed, it is not uncommon for higher than expected payments to result in default and potential foreclosure. Certainly some of these Plaintiffs (and many in the class they seek to represent) are at risk of losing their homes.[5] These homeowners are entitled to expeditious adjudication of their rights.

---

[5] Foreclosure on class members represents a very serious and perhaps preventable financial hardship. It also leads to dislocation that may make it hard to provide relief to those individuals on their claims. For similar reasons, putative class members who sell their homes to obtain relief from oppressive mortgage terms may then be hard to locate. Plaintiffs therefore believe that early resolution of the issues in this MDL proceeding, if favorable, would lead to relief for a much more significant percentage of the potential class.

## II. THERE IS SUBSTANTIAL RISK THAT AMERIQUEST'S FINANCIAL POSITION IS DETERIORATING.

Another way in which Plaintiffs and the putative class are prejudiced by delay is that Ameriquest's financial position may be deteriorating. Ameriquest recently closed 229 branch offices. In that process, it laid off more than 3,800 workers. See Press Release, "Ameriquest Announces New Retail Business Model" (May 2, 2006). http://www.ameriquestmortgage.com/releaseArticle.html?news=news20060502. Absent progress in this proceeding, all Plaintiffs, including those in the MDL transfer pipeline, will suffer harm if Ameriquest's ability to pay a judgment is depleted.[6]

## III. THE EXISTENCE OF CASES IN THE MDL PIPELINE IS NOT A REASON FOR DELAY.

New cases are being filed against Ameriquest on virtually a daily basis. Indeed, it is likely that there will always be cases in the MDL transfer pipeline during these proceedings. Participants in those cases are protected because the MDL rules establish that they are not stayed in the transferring Court. M.D.L. Rule 1.5.[7]

Although some of the later filed cases now remain pending in the MDL pipeline, few, if any, of these cases raise new or novel claims that are not already included in the cases that have already been transferred.[8] Indeed, the Manual for Complex Litigation

---

[6] Moreover, Ameriquest may use any period of delay to restructure its business or assets in ways that may hamper Plaintiffs' ability to collect on a judgment.

[7] Anomalously, a stay here would create incentives to oppose transfer in order to be in a forum where ongoing litigation activities are possible.

[8] Indeed, unlike the cases filed by proposed co-lead counsel, many of those that still remain in the pipeline were filed later, only after Ameriquest's legal problems were publicized in the press.

assumes that an MDL proceeding will progress while the transfer process moves forward separately. See Manual for Complex Litigation (Fourth) ("Manual"), § 20.132 (2005).[9] Appointment of Counsel and progress in the case will accrue to the benefit of these Plaintiffs if and when their cases are transferred. In any event, provisional approval of the Cooperating Plaintiffs' Plan and interim appointment of counsel, without prejudice to further review of case management issues in October, would prevent any potential prejudice to counsel and Plaintiffs in later filed cases.[10]

The substantial complaints already transferred encompass a wide range of legal theories. It is unlikely that any new theory added later to the case will meaningfully change the scope of proceedings. Indeed, most of the cases that remain pending in the MDL pipeline are individual cases, which if the Cooperating Plaintiffs' Plan is accepted, would proceed separately according to the claims individually pled.

### IV. THE SETTLEMENT BETWEEN THE STATE ATTORNEYS GENERAL AND AMERIQUEST IS NOT A REASON FOR DELAY.

In its Proposed Case Management Plan, Ameriquest posits, unfairly, that this case should not proceed until after resolution of its recent settlement with the Attorneys

---

[9] As the Manual explains:
> The transferee judge's management plan for the litigation should include provisions for handling tag-along actions transferred by the Panel *after* the initial transfer…Ordinarily, it is advisable to order that (1) tag-along actions shall be automatically made part of the centralized proceedings upon transfer to, or filing in, the transferee court; (2) rulings on common issues -- for example, on the statute of limitations -- shall be deemed to have been made in the tag-along action without the need for separate motions and orders; and (3) discovery already taken shall be available and usable in the tag-along cases.

[10] By lifting the stay at least to allow limited proceedings, such as discovery, based on Cooperating Plaintiffs' request in the alternative, this case can progress without preventing later filed legal theories (or parties in later filed cases) from being added to the Complaint. The lawyers in later filed cases would have access to the discovery record.

General (the "AG Settlement"). Under Ameriquest's vision, borrowers should not have information about their civil legal remedies when they decide whether to accept the benefit under the AG settlement.

Ameriquest ignores that its borrowers will be faced with a choice when they get notice from their state Attorney General. The AG Settlement is an "opt-in" settlement. See Settlement Agreement, Section VII.A (filed previously as Exhibit 8 to Docket No. 166). Borrowers who do not accept benefits under the settlement do not release their claims and are therefore likely to be members of any class certified in these proceedings.[11] Borrowers must understand the choice they are being asked to make between relief under the AG Settlement and their right to pursue potentially more valuable civil legal claims.[12] No Ameriquest customer should be asked to make this choice without information about the scope and status of these proceedings.

During the summer and fall of 2006, the state Attorneys General plan to make decisions about their proposed distribution plan and about the text of the notice they will send to Ameriquest customers.[13] Effective representation of the putative class in the

---

[11] The AG Settlement will not resolve the cases before this Court. Many of the named Plaintiffs have already expressed an intention to decline monetary relief available from the Attorneys General and to proceed with their cases. These individuals are entitled to their day in court. Even Ameriquest acknowledges that at least 30% of its customers will ultimately decline the AG settlement. Since there were approximately 725,000 customers of the Ameriquest companies during the class period, this leaves a putative class here of more than 200,000 homeowners.

[12] It is likely that compensation in the MDL will average about $407 per affected homeowner. See Cooperating Plaintiffs' Plan at n. 4 and accompanying text.

[13] There is no dispute that notice is unlikely to go out before early 2007. Full implementation of the settlement is unlikely to be complete before Spring 2007 at the earliest.

6

Attorney General's noticing process is essential. To that end, counsel for the Cooperating Plaintiffs have been invited to make a presentation to the Attorneys General about the MDL, including proposals about notice of the potential benefits of rescission under TILA. Counsel cannot fully represent the Plaintiffs in this context absent authority granted to them by this Court.

In light of Counsel's full compliance with the Court's directive to organize by consensus as well as their successful pursuit of injunctive relief on TILA claims, it would be appropriate for the Court to appoint them at this time, either permanently or provisionally, to allow them to participate in the Attorney General's notice-planning process. This will allow Counsel to use their best efforts to guarantee that appropriate information about the MDL proceedings is available to the putative class. In addition, ongoing proceedings here will allow the Attorneys General to provide more specific and accurate information relevant to the choice individual consumers must make.[14]

Another issue requiring ongoing attention by Plaintiffs' Counsel is that the AG settlement is devoid of any relief specifically directed to mortgage servicing problems, illegal access to credit reports, relief from mortgage delinquencies and improper foreclosure. Indeed, these issues are specifically excluded from the scope of the release. See Settlement Agreement, Section VII. This proceeding should be allowed to move forward on a reasonable timetable to attempt to ameliorate the substantial hardship many class members continue to face on issues that will be unaffected by the AG Settlement.

---

[14] Given the scope of the potential monetary relief under the Attorney General Settlement, the choice about whether to accept that settlement may be a difficult one.

### V. ALLOWING DISCOVERY TO PROCEED WILL NOT PREJUDICE ANY PARTY TO THE ACTION.

As Courts have long recognized, discovery stays are disfavored. *Cohn v. Taco Bell Corporation*, 147 F.R.D. 154, 162 (N.D. Ill. 1993). *See generally United States v. Board of Education of the City of Chicago,* 636 F.Supp. 1046, 1049 (N.D. Ill. 1986) (court must consider potential ongoing harm to Plaintiffs when reviewing Defendant's application for a stay); *Builders Assoc. of Greater Chicago v. City of Chicago,* 170 F.R.D. 435, 437 (N.D.Ill., 1996) ("[T]he court's authority to stay discovery must be exercised so as to secure the just speedy and inexpensive determination of every action.") Among other problems, discovery stays can lead to loss of relevant evidence and interfere with the ability of key witnesses to remember details of relevant procedures and transactions.[15]

Here, as in this Court's *Board of Education* case, *supra*, there is significant ongoing harm. Plaintiffs and the putative class they seek to represent are paying higher rates, prepayment penalties, and larger monthly payments than they believe they were promised. Many hundreds of thousands paid discount points without receiving a discounted rate or necessary information to allow them to evaluate their options. When these homeowners refinance, they unwittingly capitalize thousands of dollars of Ameriquest's discount points and thereby pay interest on amounts for which they never received consideration. Each day that goes by then adds to the harm.

In addition, allowing the case to move forward will not prejudice any Plaintiff who may come into the MDL later. Under the Cooperating Plaintiffs' Plan, discovery

---

[15] By separately filed pleading, Cooperating Plaintiffs have also requested a document preservation order consistent with the Manual for Complex Litigation.

materials will be available to all counsel. Because the claims in the various cases overlap, parties arriving later will actually benefit from having discovery that they did not need to work to obtain. To the extent, if any, that genuinely unique claims or unique parties are added later, the parties can seek leave to amend and for appropriate additional discovery.

VI. **APPOINTMENT OF COUNSEL IS APPROPRIATE BECAUSE THE COOPERATING PLAINTIFFS HAVE PROPOSED A UNIQUE, UNIFIED AND HIGHLY QUALIFIED LEADERSHIP TEAM.**

Another factor that militates in favor of allowing the case to move forward is that Plaintiffs have selected a leadership team with substantial experience in consumer cases, mortgage lending issues, and class actions. All of the proposed lead-counsel, liaison counsel, and members of the Executive Committee have time and again been found to be adequate in class cases. Collectively, they have represented Plaintiffs and been appointed to represent class members pursuant to Rule 23 in cases that have resulted in billions of dollars of recovery to American consumers. Resumes of each law firm are attached to the Cooperating Plaintiffs' Plan. It is highly unlikely that any Plaintiff would be prejudiced by permanent or provisional appointment of this unique group of well-qualified counsel to move the case forward until October 2006.

In light of individual issues and potential foreclosures, it is equally important to allow individual cases to proceed. Because the Cooperating Plaintiffs' Plan proposes a separate track for those cases, and substantial individual control over individual litigation, those cases may also go forward without potential prejudice to other individual cases still in the MDL pipeline. Moreover, Cooperating Plaintiffs have proposed a highly respected

9

law firm and nationally eminent legal services organization for low-income consumers as coordinators for the individual case track. See Cooperating Plaintiffs' Plan at 1.d. *with* accompanying firm resumes. [16]

### VII. PROVISIONAL APPROVAL WILL PREVENT ANY POSSIBILITY OF PREJUDICE TO PLAINTIFFS IN THE MDL TRANSFER PIPELINE.

The Cooperating Plaintiffs seek provisional approval of their plan in the alternative. This would include provisional appointment as counsel. Provisional approval would allow the Court to put procedures in place, if it so chooses, to revisit the issue at a later stage of the case and thereby to allow input from Plaintiffs who are still in the MDL transfer pipeline. Plaintiff's counsel will also have a track record for the Court to evaluate and consider in connection with permanent appointment.

Similarly, lifting the existing stay for limited purposes, such as discovery, would allow progress in the case with no possibility of prejudice to Plaintiffs in non-transferred pending cases.

### CONCLUSION

For the foregoing reasons, Cooperating Plaintiffs respectfully request that the Court approve their Joint and Agreed Organization and Case Management Plan, and lift the stay previously entered in this case. In the alternative, Cooperating Plaintiffs request provisional approval and/or provisional appointment of their counsel to proceed with the litigation on an interim basis pending further review by the Court.

---

[16] Cooperating Plaintiffs' counsel have also proposed a role for the Edelman firm in the representation of Plaintiffs in the non-class cases. See Cooperating Plaintiffs' Opposition to Edelman's Motion for Appointment as Lead-Counsel.

Respectfully submitted,

Dated: June 22, 2006

| | |
|---|---|
| */s/ Kelly M. Dermody*<br>Kelly M. Dermody | */s/ Gary Klein*<br>Gary Klein |
| Kelly M. Dermody (CA Bar No. 171716)<br>Caryn Becker (CA Bar No. 196947)<br>LIEFF, CABRASER, HEIMANN<br> & BERNSTEIN, LLP<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008 | Gary Klein<br>Elizabeth Ryan<br>Shennan Kavanagh<br>RODDY KLEIN & RYAN<br>727 Atlantic Avenue<br>Boston, MA 02111-2810<br>Telephone: (617) 357-5500 ext. 15<br>Facsimile: (617) 357-5030 |

*/s/ Terry Smiljanich*
Terry Smiljanich

Terry Smiljanich
Jill Bowman
JAMES, HOYER, NEWCOMBER
 & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL 33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

*Proposed Plaintiffs' Co-Lead Counsel*

*/s/ Marvin A. Miller*
Marvin A. Miller

Marvin A. Miller
MILLER FAUCHER AND CAFFERTY LLP
30 N. LaSalle Street, Suite 3200
Chicago, IL 60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Proposed Plaintiffs' Liaison Counsel*

11

| | |
|---|---|
| Samuel H. Rudman<br>Evan J. Kaufman<br>LERACH COUGHLIN STOIA GELLER<br>RUDMAN & ROBBINS LLP<br>58 South Service Road, Suite 200<br>Melville, NY 11747<br>Telephone: (631) 367-7100<br>Facsimile: (631) 367-1173 | Michael Donovan<br>DONOVAN SEARLES LLC<br>1845 Walnut Street, Suite 1100<br>Philadelphia, PA 19103<br>Telephone: (215) 732-6067<br>Facsimile: (215) 732-8060 |
| William H. Crowder<br>Gregory L. Paulson<br>CROWDER, BEDOR & PAULSON, LLP<br>555 West 7th Street, Suite 201<br>St. Paul, MN 55201<br>Telephone: (651) 225-8330<br>Facsimile: (651) 204-2134 | |

*Proposed Plaintiffs' Executive Committee*

| | |
|---|---|
| Daniel S. Blinn<br>CONSUMER LAW GROUP, LLC<br>35 Cold Spring Road, Suite 512<br>Rocky Hill, CT 06067<br>Telephone: (860) 571-0408<br>Facsimile: (860) 571-7457 | Charles Delbaum<br>NATIONAL CONSUMER LAW CENTER<br>77 Summer Street, 10th Floor<br>Boston, MA 02110<br>Telephone: (617) 542-8010<br>Facsimile: (617) 542-8028 |

*Proposed Plaintiffs' Individual Consumer Claims Steering Committee*

W. Roderick Bowdoin
DARBY PEELE BOWDOIN & PAYNE
P.O. Drawer 1707
Lake City, FL 32056
Telephone: (836) 752-4120
Facsimile: (836) 755-4569

Douglas Bowdoin
DOUGLAS BOWDOIN, P.A.
P.O. Box 2254
Orlando, FL 32802-2254
Telephone: (407) 422-0025
Facsimile: (407) 843-2448

J. Craig Bourne
1520 East Livingston Street

12

Orlando, FL 32801
Telephone: (407) 894-6750
Facsimile: (407) 894-4735

Laurence Tien
Kamran Mashayekh
THE TIEN LAW FIRM, LLP
10235 West Little York Road, Suite 470
Houston, TX 77040
Telephone: (713) 937-0223
Facsimile: (713) 937-0220

Theresa I. Wigginton
915 Oakfield Drive, Suite F
Brandon, Florida 33511
Telephone: (813) 653-2992
Facsimile: (813) 655-7082

Jonathan A. Boynton
Sarah Brite Evans
KIRBY NOONAN LANCE & HOGE, LLP
One America Plaza
600 W. Broadway, Suite 1100
San Diego, CA 92101-3387
Telephone: 619/231-8666
Facsimile: 619/231-9593

Matthew J. Zevin
STANLEY, MANDEL & IOLA, L.L.P.
 550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 235-5306
Facsimile: (815) 377-8419

Andrew S. Kierstead
LAW OFFICE OF ANDREW S. KIERSTEAD
1001 SW Fifth Avenue, Suite 1100
Portland, OR 97204
Telephone: (508) 224-6246
Facsimile: (508) 224-4356

Marc R. Stanley
Roger L. Mandel
Martin Woodward
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750

Dallas, TX 75205
Telephone: (214) 443-4300
Facsimile: (214) 443-0358

Thomas G. Shapiro
Theodore M. Hess-Mahan
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134

Richard J. Fuller
1700 US Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
Telephone: (612) 341-1209
Facsimile: (612) 339-3161

David J. George
Robert J. Robbins
Stuart A. Davidson
197 S. Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone: 561/750-3000
Facsimile: 561/750-3364

Gary F. Lynch
36 N. Jefferson Street
New Castle, PA 16101
Telephone: (724) 656-1555

*Additional Plaintiffs' Counsel*