# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen) |

## DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PRELIMINARY OPPOSITION TO "COOPERATING PLAINTIFFS'" MOTION TO LIFT STAY AND APPROVE "COOPERATING PLAINTIFFS'" CASE MANAGEMENT PLAN

Defendants Ameriquest Mortgage Company, Argent Mortgage Company, LLC, AMC Mortgage Services, Inc., Town & Country Credit Corporation, Ameriquest Capital Corporation, and Ameriquest Mortgage Securities, Inc. (collectively, "Defendants"), by and through their counsel of record, hereby respectfully request that the Court take judicial notice of the following pleadings and other court records pursuant to Rule 201 of the Federal Rules of Evidence:

Exhibit No.

1.  Transcript from Hearing on February 7, 2006 (Case No. 05-cv-07097), United States District Court for the Northern District of Illinois, the Honorable Marvin E. Aspen presiding.

2.  Transcript from Hearing on April 4, 2006 (Case No. 05-cv-07097), United States District Court for the Northern District of Illinois, the Honorable Marvin E. Aspen presiding.

3.  Transcript from Hearing on June 13, 2006 (Case No. 05-cv-07097), United States District Court for the Northern District of Illinois, the Honorable Marvin E. Aspen presiding.

///

///

///

DATED: June 23, 2006

Respectfully submitted,

By: /s/ Bernard E. LeSage

*Attorneys for Defendants Ameriquest Mortgage Company, AMC Mortgage Services, Inc., Town & Country Credit Corporation, Ameriquest Capital Corporation, and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage (California Bar No. 61870)
Sarah K. Andrus (California Bar No. 174323)
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

DATED: June 23, 2006

/s/ Thomas J. Wiegand
*Attorneys for Defendant Argent Mortgage Company, LLC*

Thomas J. Wiegand
Gregory J. Miarecki
WINSTON & STRAWN lLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

# Exhibit 1

1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   IN RE:  AMERIQUEST MORTGAGE COMPANY. )  Master File
                                          )  No. 05 C 7097
 4          Plaintiff,                    )
                                          )  MDL No. 1715
 5                                        )
                                          )  Chicago, Illinois
 6                                        )  February 7, 2006
                                          )  10:30a.m. and 2:00 p.m.
 7

 8                     TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE MARVIN E. ASPEN
 9
     APPEARANCES:
10
     On behalf of the Plaintiffs:    BUCHALTER NEMER
11                                   1000 Wilshire Boulevard
                                     Suite 1500
12                                   Los Angeles, CA 90017-2457
                                     T: (213) 891-0700
13                                   F: (213) 630-7515
                                     BY:  MR. BERNARD E. LE SAGE
14                                        MS. SARAH K. ANDRUS;

15
                                     KIRKPATRICK & LOCKHART NICHOLSON
16                                    GRAHAM, LLP
                                     75 State Street
17                                   Boston, MA 02109-1808
                                     T:  (617) 261-3100
18                                   F:  (617) 261-3175
                                     BY:  MR. R. BRUCE ALLENSWORTH;
19
                                     VARGA BERGER LEDSKY HAYES & CASEY
20                                   224 S. Michigan Avenue
                                     Suite 350
21                                   Chicago, IL 60604-2507
                                     T:  (312( 341-9400
22                                   F:  (312) 341-2900
                                     BY MR. CRAIG A. VARGA;
23

24

25
```

```
 1   APPEARANCES: (Continued)

 2   on behalf of the Knox
     plaintiffs:                      FENWICK & WEST, LLP
 3                                    801 California Street
                                      Mountain View, CA 94041
 4                                    T:  (650) 335-7175
                                      F:  (650) 938-5200
 5                                    BY:  MR. EMMETT C. STANTON;

 6   on behalf of the Defendant:      RODDY KLEIN & RYAN
                                      727 Atlantic Avenue
 7                                    2nd Floor
                                      Boston, MA 02111
 8                                    T: (617)357-5500
                                      F: (617) 357-5030
 9                                    BY:  MR. GARY KLEIN;

10                  -and-

11                                    JAMES, HOYER, NEWCOMER
                                        & SMILJANICH P.A.
12                                    4830 W. Kennedy Boulevard
                                      Suite 550
13                                    Tampa, FL 33609
                                      T:  (813) 286-4100
14                                    F:  (813) 286-4174
                                      BY:  MR. TERRY A. SMILJANICH;
15
                                      LIEF CABRASER HEIMANN
16                                      & BERSTEIN, LLP
                                      275 Battery Street
17                                    Suite 3000
                                      San Francisco, CA 94111-3339
18                                    T: (415) 956-1000
                                      F: (415) 956-1008
19                                    BY:  MS. CARYN BECKER;

20                                    EDELMAN, COMBS, LATTURNER
                                        & GOODWIN, LLC
21                                    120 S. LaSalle Street
                                      18th Floor
22                                    Chicago, IL 60603
                                      T: (312) 739-4200
23                                    F: (312) 419-0379
                                      BY:  MR. AL HOFELD, JR.
24                                          MR. DANIEL A. EDELMAN
                                            MR. JAMES O. LATTURNER;
25
                    - and -
```

1   APPEARANCES: (Continued)

2                                    THE LAW OFFICES OF DANIEL HARRIS
                                     150 N. Wacker Drive
3                                    Suite 3000
                                     Chicago, IL 60606
4                                    T:  (312) 960-1802
                                     BY:  MR. DANIEL HARRIS
5                                          MR. ANTHONY VALACH.

6

7   Court Reporter:          Carol Raber
                             219 S. Dearborn
8                            Room 667
                             Chicago, Illinois
9                            (312) 446-6926

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE CLERK:  05 C 7097, Ameriquest Mortgage Company v.
 2    -- Ameriquest.
 3              THE COURT:  Good morning.
 4              MR. LE SAGE:  Good morning, your Honor.
 5              THE COURT:  Why don't you identify yourselves for the
 6    record.  Let's run through the plaintiffs first.
 7              MR. KLEIN:  Gary Klein, your Honor, for the plaintiffs.
 8    The law firm is Roddy Klein & Ryan, of Boston.
 9              MR. SMILJANICH:  Terry Smiljanich, on behalf of the
10    plaintiffs, from James, Hoyer, Newcomer & Smiljanich, from Tampa.
11              MS. BECKER:  Caryn Becker, from Lieff Cabrasher Heimann
12    & Bernstein, for the plaintiffs.
13              THE COURT:  Where are you from?
14              MR. BECKER:  San Francisco.
15              THE COURT:  Okay.  Why don't you tell me where you are,
16    too, so it would be a geography lesson.
17              MR. STANTON:  Good morning, your Honor.  Emmett Stanton
18    for the Knox plaintiffs in the Northern District of California.
19              THE COURT:  Anyone else for the plaintiffs?
20         (No response.)
21         Okay, of the cases before me -- I know we've got some
22    tag-along cases and some other cases that may eventually wind up
23    here -- are there any plaintiffs in the cases directly before me
24    today who are not represented?
25              Perhaps the defendant would know.
```

1     MR. KLEIN:  No, your Honor.  I represent all of the

2  plaintiffs at this point except for the Knox plaintiffs.

3  Mr. Stanton is here for the Knox plaintiffs.

4     THE COURT:  And who is here for the defendant?

5     MR. LE SAGE:  Good morning, your Honor.  Bernard

6  LeSage, and my partner Sarah Andrus, from the Buchalter firm,

7  from Los Angeles, the lead counsel for Ameriquest.

8     MR. VARGA:  Good morning, your Honor.  Craig Varga,

9  from the Varga Berger firm, here in Chicago.  We also represent

10  Ameriquest in the cases.

11     MR. ALLENSWORTH:  Bruce Allensworth, from Kirkpatrick &

12  Lockart Nicholson Graham, in Boston.  I represent Ameriquest in a

13  number of the class actions.

14     THE COURT:  Okay.  Now are the defendants going to

15  coordinate between the lawyers?

16     MR. LE SAGE:  Yes, your Honor, we are coordinated.

17     THE COURT:  All right.  Welcome to Chicago.

18     MR. LE SAGE:  Thank you.

19     THE COURT:  And are you lucky, because a normal day

20  this time of the year you would have lots of snow and it would be

21  lot colder than California is -- than I think it is today.

22     All right.  What we've got to do, first of all -- and I

23  know there is at least one motion pending before me, but before I

24  talk about any motions, I think we've got to do a couple of

25  things.

6

1    Number one, we've got to get a handle on the other
2    cases that are out there, whether they are going to be cases that
3    are consolidated by the MDL panel, or with this case, or whether
4    there are tag-along cases we might be handling as well.

5    And I don't want to do anything precipitous with regard
6    to the particular plaintiffs' motion that is going to impact
7    other plaintiffs or parties in this case.  That doesn't make much
8    sense.  The whole idea of MDL is to avoid duplication.

9    I also want to make sure at some time that we -- that
10   the plaintiffs get organized.  And I'm not a virgin as far as MDL
11   cases are concerned, I have handled them.  And I think there is
12   an outline that I have, which is not written in stone, which I
13   would like to give you and I want to get your suggestions.
14   Before I even attempt to organize this case, I want your input so
15   that everybody is invested in the process.

16   If we take a little time upfront, I think that things
17   will move along smoother.

18   I'm going to give each of you a list of the things that
19   I'm concerned about.  And it's not all inclusive.  If I miss
20   something that I should be concerned about or something that you
21   should be doing, I want you to add to this list.

22   And this is what I need from the plaintiffs:

23   A selection of a lead counsel and the duties of the
24   lead counsel; a plan for the division of work among the lead
25   counsel and the other plaintiffs' counsel.

1    And you can take those if you want, but I am going to

2 give you my cheat sheet.

3    Whether we ought to have a liaison counsel, which some

4 of you are united in this -- there is a little difference between

10:46    5 and lead counsel and a liaison counsel -- and what the duties of

6 the liaison counsel will be.

7    A discovery schedule; a plan for consolidating and

8 scheduling the motion practice; a separate track for a settlement

9 or mediation process; procedures for filing of papers and the

10:46    10 service on the parties; a listing of other matters regarding this

11 case that are still before the MDL panel.

12    And I know that Ben has filed something with me which

13 gives at least a partial answer to some of these questions, but

14 you can incorporate it in your response.

10:47    15    Related to that, a listing of other class actions or

16 tag-along cases that the plaintiffs anticipate or the defendant

17 anticipates will be joined in this action.

18    And, finally, an analysis of the impact of the

19 Ameriquest-Attorney General's settlement on the issues of this

10:47    20 case.

21    Now, I want the defendants to respond to that. And

22 what I did not have here --

23    Here it is. I want the defendants to -- the plaintiffs

24 to respond to that. And I want the defendants also to respond to

25 the relevant portions which would be everything but 1, 2, and 3

1   on my list which I will give you.  So I want the defendants to

2   respond to that as well.

3           I want to give you enough time to do it.  So I'm not

4   going to give you an arbitrary date at this point.

5           You tell me how long each side would want to take to

6   give me the information I need.  And it may be that you may have

7   to take a little longer because it will take a while to find out

8   what is happening before the MDL and to get a handle on the

9   tag-along cases.

10          So what's a realistic time?  60 days?  90 days?

11  120 days?  I've got a life-time appointment, so...

12          MR. KLEIN:  Your Honor, for the plaintiffs, there is

13  just one problem with the proposal that you're making.

14          THE COURT:  Okay.

15          MR. KLEIN:  And I understand that all of those issues

16  are relevant and important for us to get to over time.

17          The problem, your Honor, is that there are certain

18  issues in this case which have to do with the Truth in Lending

19  rescission right and in the motions that we filed for provisional

20  class certification and for preliminary injunction.  And those

21  rights expire perhaps by operation of law.

22          So the difficulty is that if you're asking us to take

23  60 or 90 days to get organized where nothing else is going on,

24  there is some risk that people will lose their rights in that

25  period.

1    THE COURT:  Well, I don't want to do anything that's

2 going to lose anyone's rights.

3    If it's a matter of a jurisdictional thing or something

4 that you can stipulate to so that we don't lose an issue before

5 me, perhaps you can work out that way, okay.

6    MR. KLEIN:  We would be happy to do that.  We're only

7 one side of that particular question, though, and I'm not sure

8 that the defendant is going to agree to extend the period.

9    THE COURT:  Well, why don't we set the status date for

10 April the 4th, at 10:30, solely to deal with issues that have to

11 be expedited and whether or not we can work out some kind of

12 stipulation so that those issues need not be expedited in order

13 to preserve the issues so that we can get all the parties before

14 us who are going to be impacted by that.

15    MR. KLEIN:  Can I ask for date in March, your Honor?

16    Honestly, the problem is, because we are dealing with a

17 three-year period and a period that may terminate by operation of

18 law, with each day that passes there are people whose rights may

19 be expiring.

20    THE COURT:  Gladys, why do we have the last two weeks

21 in March --

22    THE CLERK:  March 30th is good, Judge.  March 30?

23    THE COURT:  It's marked off my calendar.

24    THE CLERK:  No.

25    THE COURT:  March 30th is good?

1    THE CLERK:  Yeah, March 30 is good.

2    THE COURT:  March 30th, at 10:30.

3    What I want you to do, though -- and maybe I will make

4    this part of the order as well -- is for the plaintiffs to meet

5    with the defense counsel.

6    And perhaps today ought to be the day.  You're all here

7    and I'm going to be here all day.  This would be better.  Why

8    don't you sit down -- there's great places to have lunch in the

9    city -- and come back at 2:00 and give me at least a preliminary

10   report as to what these issues are and how we can work either to

11   resolve them quickly or how we can make sure that we don't lose

12   these issues by action in any plan that we are going to develop

13   or set.

14   All right?

15   MR. KLEIN:  That's fine, your Honor.

16   THE COURT:  Okay.

17   MR. KLEIN:  On the issue of a general organization of

18   the MDL, we have no problem with your Honor's proposals.

19   The only difficulty is we have no idea when the MDL

20   panel will issue any rulings that they have on tag-alongs.

21   My understanding is that many of the conditional

22   transfer orders, if entered, are going to be opposed by counsel.

23   So it's possible that it may take many months before we know

24   exactly which cases are going to be heard here.

25   THE COURT:  Well, let me give you a date that I think

1    is reasonable.  And then you'll tell me at that time.  That's

2    probably the best way to do it.

3         Does 90 days make sense?  Or can you do it in a shorter

4    period of time?

10:52    5         MR. LE SAGE:  Your Honor, I think 90 days is going to

6    be stretching, based on what I've learned from the MDL clerk as

7    to the status of those cases, which I can briefly run down that

8    for you, your Honor, if you would like.

9         There are currently 60 cases pending before the MDL

10:53   10    panel, 25 of which have been designated as XYZ cases which are

11    cases currently pending in the Northern District of Illinois

12    which will have to be coming before your Honor as either related

13    or unrelated, opposed or unopposed, with regard to whether or not

14    they should be joined as a related case.

10:53   15         There are four cases that have been identified by the

16    MDL panel as related cases.  And we're advised by the clerk that

17    the conditional transfer order will be issued two to four weeks

18    after the original transfer order was entered, which means right

19    about now.  They haven't been issued yet, but we expect them any

10:53   20    day.

21         Counsel is right, either party can object to that.  If

22    there is an objection within 15 days, that matter gets set on the

23    MDL panel's next hearing.  And they told hold hearings on a

24    monthly basis.

25         The last time around, it took close to 65 to 70 days

1    for the MDL panel to rule.  I'm sure that they can rule faster

2    and I'm sure that it takes longer in some instances.  So there is

3    no way to predict exactly which way they're going to rule nor how

4    long it will take.  But with the most conservative estimate,

5    90 days is the fastest that we could except any orders.  And

6    certainly in light of anticipated objections, I think 120 days is

7    more realistic just to get MDL panel decisions down --

8              THE COURT:  Sure.

9              MR. LE SAGE:  -- and also, an opportunity to bring

10   appropriate motion before this Court regarding those cases

11   currently pending in the Northern District, which are

12   approximately 25 cases.

13             THE COURT:  So let's talk about June 13th, all right.

14             And again, by the way, if there's anything that has to

15   be done before that time, I'm here.

16             MR. LE SAGE:  Your Honor, I would just make one other

17   point as far as the 2:00 this afternoon.

18             The case -- the Murphy case, for example, which is one

19   of the lead cases in this case, has been pending for a little

20   over a year-and-a-half, I think, or approximately a

21   year-and-a-half.  No motions have been filed in that case with

22   regard to either class certification or preliminary injunction.

23   So the claim now that we are potentially losing rights, I think

24   is a bit of a stretch.  And I really don't see a reason why we

25   can't work on this separately and then come back, your Honor, on

13

1    the March 30th date.

2              MR. KLEIN:  Your Honor, may I speak to that?

3              I was counsel -- I am counsel in the Murphy case.  It

4    is the earliest filed class action on this issue.  We had more

5    many months been intending to file the exact same motion that we

6    filed here, which is one of the reasons why you see it so quickly

7    after the cases were transferred.

8              The difficulty we had, your Honor, is that Ameriquest

9    was using discovery tactics to block the filing of the motion,

10   not producing witnesses, not producing documents, not producing

11   my discovery related to the class.

12             We have been very cognizant of the problem that people

13   are losing these rights from day one of our case.  And the

14   reality is that that's just an issue that's urgent and now ripe

15   for decision.

16             Our brief on that isn't going to change if we wait 60

17   or 90 or 120 days.  The only thing that will happen is that

18   people will lose their rights.

19             I don't see any reason why Ameriquest can't either

20   stipulate that it will extend those rights sufficiently so that

21   we can get this issue heard and peoples rights won't be impaired;

22   or, in the alternative, that they be told that they need to brief

23   that issue.  Because nobody is going to be prejudiced by our

24   request for preliminary injunctive relief which is essentially a

25   request for notice, your Honor.

1    We're asking that people be given notice of this

2    extended right to cancel.  It wouldn't impair anybody's rights in

3    any of the potential tag-along cases to get notice of the

4    existence of a right.  No one is being told they have to exercise

5    it and no one is being told that they can't proceed with any

6    other claim that they may have.

7    MR. LE SAGE:  Your Honor, if I may might, as to the

8    merits.

9    On January 23rd, the Attorney General of 49 states and

10   the District of Columbia announced their settlement which

11   included at a conclusion of a two-year investigation virtually

12   every single file and included within their investigation these

13   claims and have come to a resolution with regard to rescission

14   and restitution to all Ameriquest borrowers which include all of

15   the ones by reference here.

16   And so with regard to the merits of the case, the

17   settlement with the AG is already effective, it is final and

18   binding on Ameriquest, dollars have begun to flow.

19   THE COURT:  No, I understand.  And if that's the case,

20   there's no case here for anything.  Right?

21   MR. LE SAGE:  Unless somebody doesn't -- there may be

22   some small...

23   THE COURT:  Then you should have no objection to

24   extending any rights not covered by the AG settlement.  Right?  I

25   think that protects you and at the same time protects the

1   plaintiffs.

2           (Mr. LeSage conferring with co-counsel.)

3           THE COURT:  And the settlement -- I don't want you to

4   stipulate to anything that is going to negate the settlement.

5           MR. LE SAGE:  Your Honor, I'm being counseled by my

6   wise and learned counsel with regard to some of the issues here

7   that deal with jurisdictional rights and other things which I'm

8   not really prepared to answer that question.

9           THE COURT:  Well, that's why I want you to sit down and

10  talk.

11          MR. LE SAGE:  Okay.

12          THE COURT:  Because it seems to me that if you're so

13  confident that -- and, in fact, your only concern is that by

14  stipulation you're going to in some way negate the effect of the

15  settlement on these cases, it seems to me that a stipulation can

16  be worked out so that you are just stipulating to any rights

17  which are not already settled by the AG settlement.

18          And if you do that, you're really not giving away

19  anything and at the same time you're protected and the plaintiffs

20  are being protected if your reading of the settlement is

21  incorrect.

22          MR. LE SAGE:  Okay.  I will in the meantime talk to my

23  client and talk to my learned co-counsel here.

24          THE COURT:  All right.  You talk to your co-counsel and

25  learned co-counsel can talk to learned you.

1        MR. LE SAGE:  Okay.

2        THE COURT:  And it seems to me --

3        Try to do that.  If you can do that, come back at 2:00.

4  I'm here the 30th to do it.

11:00    5        It makes a lot of sense, though, since you're all here

6  just to go sit down and talk now.  Maybe you can get it resolved.

7  You don't get a chance to meet like this often.

8        MR. KLEIN:  Your Honor, are you asking us to come back

9  at 2:00?

11:00   10        I would like to come back at 2:00 in case this issue

11  isn't resolved as well.  Because if isn't resolved, what I would

12  ask you to do is set up a briefing schedule for those motions.

13        THE COURT:  Well, come back at 2:00 and we'll decide

14  what we're going to do at 2:00.

11:00   15        MR. KLEIN:  Thank you.

16        THE COURT:  But getting back to the other order which

17  is the filing of the plaintiffs and the defendants, let's see --

18        I'm going to ask you, if you would, to come up with a

19  joint filing on June 13th.  In the event that you can't -- and

11:01   20  "joint filing" meaning all of the plaintiffs, okay.

21        If the event that you can't, I'll let the plaintiffs --

22  you know, separate filings on June the 27th.  And I will ask the

23  defendant to file its plan on June 13th.  And I want you to

24  include any other case management issues your suggestions as to

25  how to resolve them that are not included on my list.

1        But my list is not all inclusive.  This is just some of

2   the highlights.  I will give you each a copy of this.  This is

3   for the long term.

4        But as to the immediate issue, I will see you back at

11:02  5   2:00, all right.

6        (Copies passed out.)

7        THE COURT:  I hope there's enough copies.

8        MR. LATTURNER:  If the Court, please.  James Latturner,

9   from Edelman Combs & Latturner.

11:02  10       We represent many of the tag-along cases.  And, in

11  fact, the 25 that you mentioned in the Northern District of

12  Illinois I think almost all, if not all of them, are ours.

13       We have a motion that we would put on the list to

14  receive notices.

11:02  15       THE COURT:  That motion will be allowed.

16       MR. LATTURNER:  Thank you.

17       And the other motion is to delay the appointment of

18  lead counsel which the Court has effectively done by the schedule

19  you've set up.

11:03  20       THE COURT:  That's --

21       MR. LATTURNER:  That will be fine.

22       And I guess my other question is you talked in terms of

23  plaintiff and defendant and I'm not quite sure whether I'm a

24  plaintiff yet or not and whether -- we will participate in the

25  conference that comes back at 2:00.

1    THE COURT:  Well, for all intents and purposes I want
2  your input as well, so you're a plaintiff.

3    MR. LATTURNER:  Thank you.

4    THE COURT:  Unless you want to be a defendant.

11:03  5    MR. LATTURNER:  No, no.

6    THE COURT:  Anything else?

7    MR. HARRIS:  Daniel Harris, your Honor.  I represent
8  plaintiffs in two cases that I expect to be before your Honor.

9    I'm in a similar situation with similar desires.  If I
11:03  10  could be heard as well?

11    THE COURT:  Absolutely.  I want to hear anybody who is
12  in this case or will be in this case.

13    MR. HARRIS:  Thank you, your Honor.

14    THE COURT:  I'll see you at 2:00.

11:03  15    MR. LE SAGE:  Thank you.

16    MR. KLEIN:  Thank you.

17    (Recess to 2:00 p.m.)

18    THE CLERK:  05 C 7097, In Re Ameriquest Mortgage
19  Company.

02:07  20    MR. LE SAGE:  Good afternoon, your Honor.

21    THE COURT:  Good afternoon.

22    MR. LE SAGE:  We have made some progress.

23    THE COURT:  Good.

24    MR. LE SAGE:  And I would propose that we relate to you
25  the progress we've made.  And we have one hang-up which --

1        THE COURT:  Sure.

2        MR. LE SAGE:  -- and then I will turn over to opposing

3 counsel.

4        Ameriquest would agree -- and we've proposed language

5 and have agreed upon the language which would accomplish the net

6 effect of a standstill agreement so that none of the rights

7 between today's date, February 7th, and the date upon which this

8 Court hears and then decides any motion on preliminary injunction

9 -- our suggestion was sometime in July because that would

10 coincide more or less with our prior reports to you in late June,

11 and then have a hearing on the preliminary injunction in July

12 with some type of briefing schedule.

13        Then we incorporated plaintiffs' language, that which

14 they wanted the notice of right to rescind, and excluded only

15 from that those parties who elected to either have released their

16 rights as part of their motion or may release their rights as

17 part of the Attorney General's settlement.

18        And that nothing in the stipulation constitutes an

19 admission of fact or law or a give-up by either of the parties,

20 that does not constitute an admission.  And that it cannot be

21 used to support any -- it doesn't change anybody's rights.  In

22 other words, whatever the rights are, they are with that one

23 exception that we toll whatever rescission rights they might

24 have.

25        And then in the event that this Court issues the

1  preliminary injunction, that would allow you to give whatever

2  additional rights and extend whatever rights to rescind based

3  upon whatever order you give.

4  　　　　And that there would be actually 10 representative

02:08  5  plaintiffs if, when and as Ameriquest were to commence a

6  foreclosure proceeding.  These are the representative plaintiffs

7  who have attorneys in this action and, therefore, are very well

8  protected, I can assure you.  But in any event, we would give

9  notice to their attorney in the event that any foreclosure

02:09  10  action, a 30-day notice.

11  　　　　And I think all of that has been agreed to.

12  　　　　THE COURT:  Okay.

13  　　　　MR. LE SAGE:  And we have one issue that we cannot

14  agree to.

02:09  15  　　　　MR. KLEIN:  The hanging issue, your Honor, is that

16  there are a group of people in the punitive class who are facing

17  foreclosure either now or may face foreclosure between now and

18  the date on which you might decide the preliminary injunction.

19  　　　　Our concern is that if there is a foreclosure under the

02:09  20  statute 15 USC, Section 1535(f) their right to rescind is

21  terminated by the foreclosure.

22  　　　　We proposed in our motion for preliminary injunction

23  that those people get notice of the right before the foreclosure

24  so that they would have an opportunity to evaluate whether

25  they're in the class and make the rescission demand before their

1   foreclosure sale if they so choose.

2           And we have not been able to reach an agreement about

3   how to deal with the change in the status quo that might occur

4   between now and your decision which would be -- the two changes:

5   that's the one is the loss of the rights; but the other one,

6   obviously, is the loss of the home.

7           THE COURT:  Okay.

8           MR. LE SAGE:  Your Honor, may I speak to that.

9           The reason we have a problem giving such a notice is

10  that there is no way for Ameriquest to ascertain whether or not

11  the right to rescind remains.  They have initially a seven-day

12  right to rescind and only extended rights to rescind if factual

13  things occur such as a blank notice of a right to rescind was

14  given to those borrowers at the time that the loan was closed.

15          And those factual issues are potentially -- are

16  significantly in dispute, and they're not something that we can

17  then give advice to a borrower to do an act or not do an act

18  based upon what may, or may not, be a rescission right.

19          Generally these borrowers are represented by counsel.

20  Even if they're not, they're in a situation where they're on

21  notice to acquire advice from counsel.  It's been our experience

22  that they do get such advice and counsel -- advice when and if

23  there is a foreclosure procedure.

24          So we can't be in the business of giving legal notices

25  that, one, may not be right; and, two, that we don't know is even

1   effective.

2            So that's the reason why we have difficulty with that

3   part of the order or with that part of the request.

4            MR. KLEIN:  And our position on that issue, your Honor,

5   is that, first, most people in foreclosure don't have counsel

6   largely because they're in financial circumstances that make it

7   very difficult to get counsel; and, secondly, that the problem

8   that Ameriquest wouldn't necessarily know whether these rights

9   exist could be remedied by an agreement to a fairly generic

10  statement along the lines of "There is a possibility that you

11  have the right to cancel this loan.  You should seek an attorney

12  to help you evaluate whether that claim exists."

13           MR. LE SAGE:  Your Honor, just one added point that I

14  would just state which is that in many -- in some instances the

15  decision to rescind or not rescind or to allow foreclosure or not

16  to foreclose is a composite of decisions which includes that if

17  you're going to rescind you're going to have to give back

18  immediately your principal.

19           And there isn't in every instance a necessary clear

20  green light that you ought to rescind a loan at that point.  In

21  some instances you may elect to go ahead and let the foreclosure

22  take place.  And there are many circumstances, depending upon the

23  value of that property, and upon the circumstances and the intent

24  of the borrower you don't know what is or is not in his or her

25  best interest.

1        And so from that standpoint, notices at that point in

2  time don't really accomplish much with regard to the decision to

3  rescind or not to rescind to allow the foreclosure to take place

4  or not.

02:13     5        THE COURT:  Okay, what I want you to do is prepare the

6  standstill agreement with the briefing schedule on the motion for

7  preliminary injunction.

8        And as to the one issue you could not resolve, why

9  don't you give me simultaneous briefs within seven days and

02:13   10  responses three days after that.  And you could also state your

11  position.  But you also could give me any suggestions that you

12  may have as to how to resolve the impasse, whether it's some kind

13  of a generic statement or whatever.  And then I will rule

14  promptly on that one issue.

02:13   15        All right?

16        MR. KLEIN:  Do you want a separate motion on that

17  particular issue, your Honor --

18        THE COURT:  Yes.

19        MR. KLEIN:  -- or can we brief the issue without --

02:14   20  based on the existing papers?

21        THE COURT:  Well, your initial filing can be a motion

22  with a response.

23        But, you know, give me simultaneous briefs.  If it's

24  going to be simultaneous motions as to how to resolve it, that's

25  fine too.

1    MR. LE SAGE:  And just so I understand what you're

2  saying.  And then we would have a briefing schedule for the

3  preliminary injunction, which would have a hearing date that

4  would be convenient for your Honor.  Do you have a date that you

5  would have in mind?

6    THE COURT:  Well, when it's fully briefed, I'll decide

7  whether or not we need a hearing and then I'll set a hearing

8  date.

9    MR. LE SAGE:  Okay.

10    THE COURT:  But you set a mutually agreeable briefing

11  schedule on that as well.

12    MR. LE SAGE:  Okay.

13    THE COURT:  Okay?

14    MR. LE SAGE:  Do you want me to read into the record

15  the stipulation that we have prepared?

16    THE COURT:  All right.  Would you rather do that as

17  opposed to giving me a written draft for me to sign?

18    MR. LE SAGE:  I would rather give a written draft.  But

19  I could read into the record --

20    THE COURT:  Well, read it now so you don't change your

21  minds when you put it in, when you give me a written one for me

22  to sign.

23    MR. KLEIN:  Your Honor, I have copies.  The truest form

24  of negotiation between counsel, split it in half.

25    MR. LE SAGE:  The stipulation of the parties would read

as follows:

That a standstill shall apply from February 7th, 2006 to, and including, the date upon which this Court hears and decides plaintiff's motion for preliminary injunction, on blank date, or as otherwise -- at such other hearing date set by this Court (standstill period") for all those Ameriquest borrowers whose rescission right may otherwise lapse during the standstill period and who plaintiffs assert: 1) received a notice of right to cancel in which the date of expiration of the right to cancel was blank, or 2) received an incorrect form of notice of right to cancel because their loan paid off a prior loan with Ameriquest and their notice did not accurately describe the effect of cancelling such a loan. Excluded from this standstill period are those Ameriquest borrowers who have previously released their claims against Ameriquest or may release their claims by reason of the AG settlement or otherwise.

2. Nothing in this stipulation shall in any way: (A) modify, change or inhibit in any way the AG settlement or the rights or release of rights of borrowers who elect to participate in the AG settlement; (B) Constitute an admission of fact or law or otherwise prejudice any claim or defense of Ameriquest; (C) be used to support any argument that a class should be certified against Ameriquest.

3. Should the Court deny plaintiff's motion for preliminary injunction, the rescission right of any borrower

1  whose right to rescind would have expired during the standstill

2  period shall expire immediately upon that denial.

3       The next paragraph, which I believe is 4:  Should the

4  Court grant the plaintiff's motion for preliminary injunction,

02:17   5  the rescission claims covered by this stipulation shall be

6  treated as if they had not lapsed and such claim shall be subject

7  to any relief provided by the terms of the Court's preliminary

8  injunction.

9       The next paragraph:  Defendant agrees that no further

02:17   10  action will be taken to foreclose on the property of the

11  following individuals without at least 30 days notice of such

12  action to plaintiff's counsel Gary Klein:  -- and the following

13  individuals are included within this list -- Lynn Gay; David and

14  Janet Wakefield; Harriet Holden, H-o-l-d-e-n --

02:18   15       MR. KLEIN:  -- d-e-r.

16       MR. LE SAGE:  H-o-l-d-e-r, Holder; Frank and Meredith

17  White -- Martha White, excuse me; Christopher, Bourassa,

18  B-o-u-r-a-s-s-a; James Devin, D-e-v-i-n.

19       MR. KLEIN:  D-e-v-l-i-n, Devlin.

02:18   20       MR. LE SAGE:  Devlin, D-e-v-l-i-n, excuse me; Dashel,

21  D-a-s-h-e-l, and William Tolbert, T-o-l-b-e-r-t -- oh, Daisybel,

22  D-a-i-s-y-b-e-l and William Tolbert; Christopher Gabrielli,

23  G-a-b-r-i-e-l-l-i; Patricia Masson, M-a-s-s-o-n; and Terry

24  Baumgarten, B-a-u-m-g-a-r-t --

25       MS. BECKER:  -- er.

1          MR. LE SAGE:  Baumgartner, g-a-r-t-n-e-r.

2          THE COURT:  That's pretty good.  You got about

3    35 percent right.

4          MR. LE SAGE:  I'm improving.

5          THE COURT:  That's a .350 batting average.  That's

6    good.

7          MR. LE SAGE:  Yes, your Honor.

8          THE COURT:  Okay.  Well, that's fine.  Put something in

9    an order with your agreed briefing schedule and I will sign it

10   and I will let you know my ruling on the one issue.

11         MR. LE SAGE:  Thank you, your Honor.

12         MR. LATTURNER:  If the Court please, this morning you

13   ordered that the tag-along plaintiffs counsel will be on the

14   service list.

15         Do you want that in the formal order that is going to

16   be presented to you?

17         THE COURT:  Do we need a formal order for that, Gladys?

18         THE CLERK:  He can put it in that other order.

19         THE COURT:  Sure.  Put it in the order as well.

20         MR. KLEIN:  Your Honor, one problem that plaintiff's

21   counsel have with that particular aspect of this proceeding is

22   that we have no way of knowing who is on the tag-along list.  We

23   need Ameriquest to provide us with names of counsel because we

24   don't have access to those cases.

25         THE COURT:  Okay.

1    MR. LE SAGE:  Your Honor, I think there's an additional
2  problem is trying to follow the MDL rules.  And let me explain.
3    Ameriquest has identified what it believes to be
4  tag-alongs, some other plaintiffs independent from us have
5  identified tag-alongs, and the MDL panel has identified related
6  cases.
7    We don't have a composite of exactly who is or who is
8  not on the list and who may become a tag-along.  That's within
9  the province of the jurisdiction of the multi-district panel
10  itself.
11    And, in fact, their rules prohibit the parties -- and I
12  inquired because I looked at the rules that say don't give notice
13  of tag-alongs to the tag-along parties.  Because until the court
14  rules, it just I think -- as the clerk explained it to me,
15  ruffles feathers that they don't want ruffled.
16    And because until they determine who is a tag-along,
17  they don't expect those people to be served.  They expect -- the
18  multi-district panel when they decide to conditionally transfer a
19  case, they give notice to both sides -- plaintiffs and
20  defendants.  Each side at that point has 15 days within which to
21  object or to allow it to go forward to a natural -- become a
22  permanent transfer.  And that's the way they would prefer doing
23  it.
24    And so to add what in effect could be hundreds -- in
25  fact, I'm quite certain it's going to be hundreds of plaintiffs

1    because we have 65 actions now that are potential tag-alongs.

2    And none of them -- except for the five that have actually been

3    ruled upon -- that it becomes problematic as to who is or who is

4    not a tag-along.

5           And I expect that others may be identified in light of

6    today's proceedings and other proceedings as parties become aware

7    of this multi-district action.

8           MR. VARGA:  May I suggest that today there has been an

9    appearance on attorneys from the Edelman firm and the Harris firm

10   and at least we be on the service.

11          THE COURT:  That shouldn't be a problem.

12          MR. LE SAGE:  That's not a problem, your Honor.  That's

13   an identifiable set.

14          THE COURT:  Thank you very much.

15          MR. KLEIN:  Your Honor, one more clarification, and I

16   apologize for the problem.

17          When you asked us to organize a plan for the case going

18   forward, we were not sure whether it was implicit in your request

19   that we organize that we would not be able to conduct discovery

20   in the interim period.

21          Our preference, your Honor, is obviously to continue

22   with discovery efforts that are ongoing in these various cases to

23   continue to conduct depositions.  And then we think that is

24   expedient in light of the fact that there are so many moving

25   parties at this point, including --

1    THE COURT:  The only problem is that we get more

2  plaintiffs in here and you may want to depose the same people,

3  and that doesn't make sense either.

4    MR. LE SAGE:  I agree that that's the problem, your

5  Honor.  That's why I think any relevant discovery -- any relevant

6  plan --

7    THE COURT:  Well, why don't we wait a bit?  I assure

8  you I'll put the case on the front burner.  It's not going to be

9  dragging here.

10    Let's try to get some handle on which cases are going

11  to be before us and then we will have an accelerated discovery

12  schedule at that time.

13    THE CLERK:  Judge, are you still keeping the March 30th

14  day?

15    THE COURT:  Yeah, still the March 30th date.  Well, no,

16  we don't need it now.

17    MR. LE SAGE:  No, we don't need it.

18    THE COURT:  No, let's vacate that.

19    MS. EDELMAN:  Your Honor, Dan Edelman for some of the

20  plaintiffs in the so-called XYZ cases.

21    In many of our cases we are conducting discovery.  We

22  have discovery scheduling orders and cut-off dates.  Can we

23  continue to comply with those, your Honor?

24    MR. LE SAGE:  Your Honor, what we have done in most all

25  of those cases is entered into stipulations with opposing counsel

1   to wait until the tag-along issues are resolved because what

2   discovery is relevant in that case may well be relevant in

3   others.

4         All counsel so far today have all agreed with that in

02:24   5   each and every case.  So --

6         MR. EDELMAN:  That is not the way that it has been done

7   in ours in orders to complete discovery by various dates.

8         These are cases within the Northern District of

9   Illinois for the most part, some of are in other Illinois-Indiana

02:24   10   districts.

11         MR. VARGA:  Your Honor, I'm counsel for Ameriquest in

12   many of those, and there are about 25 of those cases.  In this

13   instance I can agree with Mr. Edelman that we do have discovery

14   cutoff dates in those cases from, for instance, Judge Coar, Judge

02:24   15   Conlon.  And while we will do whatever your Honor ultimately

16   wants to do, that's what we're faced with.

17         THE COURT:  Sure.

18         And I think that I at this point don't have any

19   jurisdiction to vacate those orders.

02:25   20         MS. BECKER:  Your Honor, is it all right if I raise one

21   point of clarification as well?

22         With respect to the report that plaintiff's counsel has

23   provided to the Court --

24         THE COURT REPORTER:  I'm sorry?  Speak up a little.

25         MS. BECKER:  We have the same issues that Mr. LeSage

1  explained before about knowing who the plaintiffs' counsel are

2  and -- you don't need to include the counsel, rather than us

3  having to go out and search other counsel, until they become

4  known to the Court.

02:25    5    THE COURT:  All you can do is work with the information

6  you have at this point.

7    MS. BECKER:  Thank you.

8    THE COURT:  Okay.  Anything else?

9    MR. LE SAGE:  Nothing else, your Honor.

02:25    10    THE COURT:  Thank you very much.

11    MR. KLEIN:  Thank you, your Honor.

12    THE COURT:  You're welcome.

13    (Proceedings concluded)

14                          CERTIFICATE

15    I hereby certify that the foregoing is a true and correct

16  transcript of proceedings in the above-entitled case.

17

18    _____          _____
                                                    2/11/06
19    Carol Raber                              Date
    Official Court Reporter

20

21

22

23

24

25

**Exhibit  2**

04/07/06  FRI 09:46 FAX 312 408 5160          Judge Aspen                    ☑002

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   IN RE:                        )      Docket No. 05 C 7097
                                   )
 4   AMERIQUEST MORTGAGE CO.       )
     MORTGAGE LENDING PRACTICES    )      April 4, 2006
 5   LITIGATION.                   )      10:30 o'clock a.m.
                                   )      Chicago, Illinois
 6
                 TRANSCRIPT OF PROCEEDINGS - STATUS
 7              BEFORE THE HON. MARVIN E. ASPEN

 8   APPEARANCES:

 9   For certain plaintiffs:    EDELMAN COMBS LATTURNER &
                                GOODWIN, LLC
10                              BY:  MR. DANIEL A. EDELMAN
                                     MR. ALBERT F. HOFELD, JR.
11                                   MR. JAMES LATTURNER
                                120 South LaSalle Street
12                              18th Floor
                                Chicago, Illinois 60603
13
                                RODDY KLEIN & RYAN
14                              MR. GARY EDWARD KLEIN
                                727 Atlantic Avenue
15                              2nd Floor
                                Boston, Massachusetts 02111
16
                                LAW OFFICES OF DANIEL HARRIS
17                              BY:  MR. ANTHONY VALACH
                                150 North Wacker Drive
18                              Suite 3000
                                Chicago, Illinois 60606
19
                                STANLEY L. HILL & ASSOCIATES
20                              BY:  MS. DALAL M. JARAD
                                10 South LaSalle Street
21                              Suite 1301
                                Chicago, Illinois 60603
22

23

24

25
```

2

1  APPEARANCES (continued):

2  For certain plaintiffs:        BUCHALTER NEMER FIELDS &
                                  YOUNGER
3                                 BY:   MR. BERNARD E. LE SAGE
                                  601 South Figueroa Street
4                                 Suite 2400
                                  Los Angeles, California 90017

5
   For certain defendants:        VARGA BERGER LEDSKY
6                                 HAYES & CASEY
                                  BY:   MR. JONATHAN N. LEDSKY
7                                       MR. CRAIG ALLEN VARGA
                                  224 South Michigan Avenue
8                                 Suite 350
                                  Chicago, Illinois 60604
9
   Court Reporter:                MS. MARY M. HACKER
10                                Official Court Reporter
                                  219 South Dearborn Street
11                                Suite 1426
                                  Chicago, Illinois 60604
12                                (312) 435-5564

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1        THE CLERK:  05 C 7097, in re: Ameriquest Mortgage.

2        MR. EDELMAN:  Good morning, your Honor.  Daniel A.

3   Edelman for certain of the plaintiffs.

4        MR. LATTURNER:  James Latturner, for the same

5   plaintiffs.

6        MR. HOFELD:  Al Hofeld, Jr., your Honor, for the same

7   plaintiffs.

8        THE COURT:  Good morning.

9        Does anyone else want to put your name on the record

10  so you can bill properly?

11       MR. KLEIN:  Gary Klein, your Honor, for the

12  plaintiffs in the previously transferred cases.

13       MR. VALACH:  Anthony Valach for the plaintiffs in the

14  Jewell case.

15       MS. JARAD:  Dalal Jarad with Stanley Hill's office

16  with Plaintiff Gavione Tammerello.

17       MR. LE SAGE:  Good morning, your Honor.  Bernard

18  LeSage of the Buchalter firm representing defendants.

19       MR. VARGA:  Good morning, your Honor.  Craig Varga

20  here in Chicago of Varga, Berger, representing the defendants.

21       MR. LEDSKY:  Jonathan Ledsky, representing the

22  defendants as well, your Honor.

23       THE COURT:  Okay.  Well, we have had initially one

24  motion for reassignment of related cases, which the defendants

25  filed.  The ECLG plaintiffs have opposed some of the

4

1  reassignments, seven of the 29.

2          And then there's another motion -- let's see if we

3  can get that -- Tammerello also has filed an opposition in

4  regard to one of the proposed motions.  And ECLG had its own

5  cross-motion moving to reassign six additional cases, to which

6  I have no opposition.

7          So, in effect, I have before me 36 cases for

8  reassignment, correct?

9          MR. LE SAGE:  That is correct, your Honor.

10         MR. LATTURNER:  Yes.

11         THE COURT:  And I know what your positions are.

12  Before I tell you what my position is, does anybody want to

13  say anything briefly?

14         MR. LE SAGE:  Not from defendants, your Honor.

15         MR. LATTURNER:  I might also add, with regard to the

16  Edelman, Combs plaintiffs, we filed two additional cases

17  yesterday, and I should inform the Court that there will

18  possibly be over two dozen in the near future in addition.

19         THE COURT:  Okay.  When do you think we are going to

20  reach a point where we know we have all of them to deal with?

21         MR. LATTURNER:  Probably not for quite some time, but

22  they are repetitive issues.

23         THE COURT:  Sure.

24         MR. LATTURNER:  It should not affect that.

25         THE COURT:  Well, here's my thinking:  I'm going to

5

1  grant the defendants' motion in part -- and I'll tell you the

2  part in a minute -- and ECLG's cross-motion, I'm going to

3  grant that.

4          As to the seven cases where there is opposition based

5  upon things that are happening in another courtroom that might

6  dispose of the case quickly, and as to the Tammerello's case,

7  I'm going to enter and continue the defendants' motion until

8  our June 13th status.  You can give me a status report on

9  those cases at that time, and I'll decide at that time whether

10 to grant the motion, deny the motion or further continue it.

11 Okay?

12         MR. LE SAGE:  I think that makes sense, your Honor.

13         MR. LATTURNER:  It may be moot by then also.

14         THE COURT:  Well, that's exactly why I'm doing what

15 I'm doing.

16         MR. LE SAGE:  I have a status on what's happening in

17 the MDL, if you're interested.

18         THE COURT:  Sure.  You're going to give me a formal

19 report on June 13th, right?

20         MR. LE SAGE:  A formal report on June 13th.

21         THE COURT:  Right.

22         Okay, sure.  I would be happy to know what's

23 happening.

24         MR. LE SAGE:  This was as of Friday, according to the

25 clerk's record.  We had -- there were 26 actions which were

6

1  officially transferred either by motion or by failure to

2  oppose the conditional transfer order.  There were eleven

3  cases that the conditional transfer orders were opposed, and

4  so those will either go on to the May or June MDL hearing for

5  final resolution of those oppositions.

6          You just resolved the 30-some cases that were X, Y, Z

7  cases, those cases pending in the Northern District.

8          There are 19 cases which have been identified either

9  by plaintiffs or defendants as tag-alongs, which the clerks

10 have identified as suspense actions, and that means that the

11 CTO will be issued in due course, probably in the next couple

12 of weeks, and we'll see if any oppositions appear.  But

13 another 19 actions are potentially on their way to your court.

14         And eight cases are awaiting additional information

15 for the clerk's office to determine what their initial

16 determination is going to be.

17         There are a total of 94 cases pending either that

18 have been transferred by the MDL or soon to be acted on by the

19 MDL.  Only 26 cases, and now approximately 30 cases based upon

20 today's rulings, that are currently before your Honor.

21         THE COURT:  Okay.  I think I asked you one of the

22 things to report to me in June was whether there's any

23 settlement procedures that are -- I would be interested in

24 seeing if -- I don't want you to stop your litigation track.

25 We'll be going on a litigation track, but we also ought to

7

1  think very seriously about a settlement track because a lot of

2  these cases, I'm sure, can be settled very easily.

3          MR. LE SAGE:  I agree, your Honor.

4          THE COURT:  Okay.  Good.  See you in June.

5          MR. KLEIN:  Your Honor, before you close, may I

6  inquire about the leftover matter from the status conference

7  in March -- or the status conference in February?

8          If you remember, we resolved by a standstill

9  stipulation issues about passage of time, cutting off the

10  right of certain individuals to rescind under the Truth In

11  Lending Act, but we did not resolve the issue of potential

12  foreclosure -- complete foreclosure would terminate the rights

13  of individuals.  Unfortunately, the foreclosure process is

14  ongoing for many of the leaders, would-be members of the

15  putative class.  We have now fully briefed the issue of

16  whether there should be notice relief for people affected by

17  foreclosure.

18          THE COURT:  It's fully briefed before me now?

19          MR. KLEIN:  Yes, it is.

20          THE COURT:  All right.  I will rule on it very

21  quickly.

22          MR. KLEIN:  Thank you.

23          MR. LATTURNER:  One further item.

24          On many of the cases that you have accepted today,

25  there are discovery scheduling orders that are outstanding.

8

1  We would request that they stay in place.

2         THE COURT:  Okay.  That's a motion that will be

3  allowed.

4         MR. LE SAGE:  Your Honor, may I speak to that?

5         THE COURT:  Yes.

6         MR. LE SAGE:  As to those cases which are being

7  transferred to you, in the previous request for plaintiffs to

8  continue discovery your Honor stayed that discovery.  And as

9  to those which are actually transferred to this Court, I

10 request that that order remain in place.

11        As to those cases which you have only conditionally

12 --

13        THE COURT:  Yes, yes --

14        MR. LE SAGE:  -- left, I mean, I think that should be

15 the cutoff distinction.

16        THE COURT:  I agree.  Okay.

17        MS. JARAD:  Your Honor, the status on June 13, will

18 that also be at 10:30?

19        THE COURT:  10:30.

20        MS. JARAD:  Okay.

21        MR. EDELMAN:  I'm sorry, your Honor.  With respect to

22 the 25 or 30 cases of ours that you've transferred, should we

23 continue with the discovery and summary judgment schedules --

24        THE COURT:  On the ones that are here, yes, sure.

25        MR. EDELMAN:  I'm sorry?

9

1          THE COURT:  Yes.

2          MR. EDELMAN:  Thank you.

3          MR. LE SAGE:  I just need to clarify.

4          I'm wondering whether -- the cases that have actually

5   been transferred from another judge in this district to your

6   Honor, those cases will be subject to the stay order, in

7   essence?

8          THE COURT:  Yes.  They will be subject --

9          MR. LEDSKY:  And only those other cases which were

10  not transferred --

11         THE COURT:  -- are not subject to the stay, of

12  course.

13         MR. LE SAGE:  Okay.  I just wanted Mr. Edelman to

14  understand.

15         THE COURT:  We have a stay order, it has not been

16  lifted, on discovery pending our discovery plan.  That stay

17  order obviously is going to apply to everything that's here.

18  Matters that are not here or that I have not ruled on whether

19  they are here or not, go ahead and do discovery or resolve it

20  by summary judgment, settle it.  It might be all moot by June

21  13th.

22         MR. LE SAGE:  Okay.

23         MR. EDELMAN:  Should we then comply with summary

24  judgment and dispositive motion deadlines in the cases that

25  you are taking?

10

1       MR. HOFELD:  Where discovery has been completed?

2       THE COURT:  Where discovery has been completed, yes.

3       MR. HOFELD:  Yes.

4       THE COURT:  Sure.

5       MR. LE SAGE:  Okay.  Your Honor, I mean, there are

6  two types of cases which you have ruled --

7       THE COURT:  I'm really staying everything that is

8  before me.

9       MR. LE SAGE:  That's correct.

10      THE COURT:  Things that are not before me, I really

11 don't care.

12      Now, I suppose you can tell the judge where there's

13 something pending about what I've done, and if that judge

14 wants to stay discovery, that's entirely up to that particular

15 judge.

16      MR. LE SAGE:  But as to any motions or discovery on

17 the cases before your Honor, those are all stayed pending the

18 June 13th --

19      THE COURT:  Those are stayed because on June 13th --

20      MR. LE SAGE:  -- 13th we're going to resolve this.

21      THE COURT:  -- we're going to do it all in a

22 consolidated manner.  We're going to have consolidated

23 discovery, we're going to have a consolidated motion.  That

24 does not stop any of you from, in the meantime, working on

25 your input to a summary judgment motion.

11

1          MR. LE SAGE:  Okay.

2          THE COURT:  Have I confused you enough?

3          MR. LE SAGE:  I am totally clear, your Honor.  I

4     think your order is clear.

5          MR. EDELMAN:  I just want to be --

6          MR. LE SAGE:  I just want to make sure both sides

7     agree as to what the import of your ruling is.

8          MR. EDELMAN:  Judge, I'm just concerned because we

9     have summary judgment deadlines coming and discovery cutoff

10    deadlines coming up in a number of the cases you have

11    transferred.

12         THE COURT:  But I stayed those dates.  I previously

13    entered an order staying them.

14         MR. LE SAGE:  Okay.

15         MR. VARGA:  And, in fact, I believe your Honor said

16    that as to those cases that you haven't ruled on yet today, we

17    could apprise the judges there of what you've done and it's up

18    to them to do what they want.  They might decide they want to

19    save themselves some work there for something that might be

20    coming here and perhaps not.

21         THE COURT:  And it's up to you.  I mean, If you feel

22    you want a quick summary judgment decision there and the judge

23    is willing to give it to you, good for you.

24         MR. VARGA:  Right.

25         MR. LEDSKY:  Thank you, your Honor.

04/07/06  FRI 09:49 FAX 312 408 5160        Judge Aspen                          Ø013

12

1        MR. VARGA:  Thank you, your Honor.

2        THE COURT:  Thank you.

3        (Which were all the proceedings had at the hearing of the

4   within cause on the day and date hereof.)

5                        CERTIFICATE

6             I HEREBY CERTIFY that the foregoing is a true,

7   correct and complete transcript of the proceedings had at the

8   hearing of the aforementioned cause on the day and date

9   hereof.

10

11  _____          ____4-6-06____
    Official Court Reporter                        Date
12  U.S. District Court
    Northern District of Illinois
13  Eastern Division

14

15

16

17

18

19

20

21

22

23

24

25

**Exhibit 3**

1

```
              IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION

IN RE AMERIQUEST MORTGAGE      )        MDL No. 1715
CO. MORTGAGE LENDING           )
PRACTICES LITIGATION           )
                               )
                               )
                               )        Chicago, Illinois
                               )        June 13, 2006
                               )        10:30 o'clock a.m.


                 TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE MARVIN E. ASPEN


APPEARANCES:

                        DYKEMA GOSSETT, PLLC
                        BY:  MR. HARRY ARGER
                        10 South Wacker Drive
                        Suite 2300
                        Chicago, Illinois 60606

                        LAW OFFICES OF DANIEL HARRIS
                        BY:  MR. DANIEL HARRIS
                             MR. ANTHONY P. VALACH, JR.
                        150 North Wacker Street
                        Suite 3000
                        Chicago, Illinois 60606

                        EDELMAN COMBS LATTURNER &
                        GOODWIN, LLC
                        BY:  MR. DANIEL A. EDELMAN
                             MR. AL HOFELD, JR.
                             MR. JAMES LATTURNER
                        120 South LaSalle Street
                        18th Floor
                        Chicago, Illinois 60603

                        VARGA BERGER LEDSKY
                        HAYES & CASEY
                        BY:  MR. JONATHAN N. LEDSKY
                             MR. CRAIG A. VARGA
                        224 South Michigan Avenue
                        Suite 350
                        Chicago, Illinois 60604
```

2

APPEARANCES:   (continued)

                                        BUCHALTER NEMER, PLC
                                        BY:   MR. BERNARD E. LE SAGE
                                        1000 Wilshire Boulevard
                                        Suite 1500
                                        Los Angeles, California 90017

                                        WINSTON & STRAWN, LLP
                                        BY:   MR. GREGORY J. MIARECKI
                                        35 West Wacker Drive
                                        Chicago, Illinois 60601

                                        MILLER FAUCHER & CAFFERTY, LLP
                                        BY:   MR. MARVIN A. MILLER
                                              MR. DOM J. RIZZI
                                        30 North LaSalle Street
                                        Suite 3200
                                        Chicago, Illinois 60602


                          MARY M. HACKER
                       Official Court Reporter
               219 South Dearborn Street, Suite 1426
                       Chicago, Illinois 60604
                          312 663-0049

3

1  THE CLERK:  05 C 7097, in re: Ameriquest Mortgage

2  Company.

3  THE COURT:  Why don't you identify yourselves for the

4  record, if you would.

5  MR. EDELMAN:  Good morning, your Honor.  Daniel A.

6  Edelman for certain plaintiffs.

7  MR. HOFELD:  Good morning, your Honor.  Al Hofeld,

8  Jr., the same plaintiffs.

9  MR. LATTURNER:  James Latturner for the same

10  plaintiffs.

11  MR. HARRIS:  Daniel Harris for various plaintiffs in

12  related cases.

13  MR. VALACH:  Anthony Valach for various plaintiffs in

14  related cases also.

15  MR. LE SAGE:  Good morning, your Honor.  Bernard

16  LaSage of the Buchalter firm representing defendants.

17  MR. VARGA:  Good morning, your Honor.  Craig Varga

18  representing defendants.

19  MR. MIARECKI:  Good morning, your Honor.  Greg

20  Miarecki of Winston & Strawn representing Defendant Argent.

21  MR. LEDSKY:  Good morning, your Honor.  Jonathan

22  Ledsky representing defendants.

23  MR. MILLER:  Good morning, your Honor.  Marvin Miller

24  on behalf Richard Madrazo plaintiff.

25  MR. RIZZI:  Dom Rizzi on behalf of Madrazo also.

4

MR. ARGER: Good morning, your Honor. Harry Arger for Ameriquest and AMC in some of the related cases that are being reassigned.

THE COURT: Okay. Well, we have a lot of stuff on the agenda. Let me go through what I have, and if I've missed anything you will let me know and we will deal with it, all right?

The first thing I have are the status on the eight cases where we've had reassignment motions in the past, and we were going to check today to see whether these cases are still viable for reassignment or whether they have been resolved in the transferor courts. The first was Abercrombie versus Argent. Does anyone know anything about that?

MR. VARGA: Yes, your Honor. That case is still pending. Cross-motions for summary judgment before Judge Filip have not been decided. We don't know where he's at in that process or if he has started.

THE COURT: Okay. And the same with Hubbard, is that correct?

MR. VARGA: Yes.

MR. HOFELD: Yes, your Honor.

Same also, your Honor, with Washington. Jones by contrast has been decided on summary judgment in favor of the plaintiff.

MR. VARGA: It has been, your Honor, on one issue,

5

but as to then -- the implementation of the judgment for

plaintiff on one of three claims in the case has produced

competing orders for how to implement the rescission that was

granted --

        THE COURT:  Competing orders?

        MR. VARGA:  Competing orders presented to Judge Coar

for determination --

        THE COURT:  Oh, okay.  It looks like it's been

resolved --

        MR. VARGA:  They are before him.

        THE COURT:  All right.  So I am going to deny the

motion to reassign Jones.  Okay.

        How about Lemmons?

        MR. VARGA:  Your Honor, Lemmons was a case that the

parties settled, but then there was a dispute about one of the

terms of the settlement agreement.

        THE COURT:  I will deny the motion for reassignment

as far as that's concerned.  We'll let Judge Kendall sort that

out.

        How about Payne?

        MR. HOFELD:  Payne was also settled, your Honor, and

--

        MR. VARGA:  Payne is gone.

        MR. LEDSKY:  It's been dismissed, your Honor.

        THE COURT:  Okay.  That's gone.

6

1     Zarate?

2          MR. HOFELD:  The parties have a settlement agreement

3     in principal.

4          THE COURT:  Okay, so that one is gone.

5          Tammerello?

6          MR. LEDSKY:  Your Honor, Judge Coar has a pending

7     motion for summary judgment by the defendant in that case

8     still pending.

9          THE COURT:  All right.  So the only four of that

10    group that are still pending are Abercrombie, Hubbard,

11    Washington and Tammerello.  And I take it the best thing to do

12    would be to continue the motions for reassignment as far as

13    those.  Do you agree?

14         MR. LE SAGE:  Your Honor, either continue them and

15    allow them to go through or, like anything else, you can

16    assign them to yourself, your Honor.  We have other cases that

17    are pending along the same lines and --

18         THE COURT:  I know, and --

19         MR. LE SAGE:  -- there may be disparitive rulings.

20         THE COURT:  I will as soon as we get a handle on this

21    case and get some management order.  But until we do that, I

22    think I'm going to continue the motions.

23         MR. LE SAGE:  Okay.

24         THE COURT:  And I certainly will rule on them at the

25    time we come up with a management order, all right?

7

MR. LE SAGE:  Thank you, your Honor.

MR. VARGA:  Okay.

THE COURT:  The second matter, which we can get rid of very quickly, are the defendants' agreed or unopposed motions for extension of time to file responsive pleadings, again obviously until we get a management order.  And they cover Bergquist, Thompson versus Town & Country, Lurry-Payne, Rehbock, Jude versus Town & Country, McGowan versus Ameriquest, Hawkins, Billings, Henson, Eskra, Hall, Magliano, Rodriguez versus Town & Country and Anderson.  Let's see if I've got any more.

Okay.  Unless anybody has any objections, I will allow those motions.

MR. HOFELD:  No objections from plaintiffs, your Honor.

MR. VARGA:  Your Honor, with respect to one of those cases, McGowan, Judge Manning had inadvertently, after your Honor had granted the relatedness of transfer motion but before the Executive Committee had signed the order, had entered a default for failure to plead.

THE COURT:  I will vacate that motion.

MR. VARGA:  We had that as a subject of a motion, I believe up for today, to vacate that.

THE COURT:  That motion will be allowed.

MR. VARGA:  Thank you.

8

THE COURT: Okay. Next let's deal with the defendants' second motion for reassignment of related cases and plaintiffs' third motion for reassignment of related cases.

We can do one of two things. I can allow the other parties to respond to those motions or we can continue them generally, along with the prior reassignment motions, and deal with them when we prepare our management order. The latter seems to make sense, does it not?

MR. LE SAGE: It does, your Honor.

THE COURT: All right. I will enter and continue those motions until our next court date as well.

Another issue, there's been some questions, apparently, asked of my clerk as to the scope of the stay and I didn't think there was any controversy. I thought we had if not an explicit but an implicit understanding that everything is going to be stayed in the transferor courts that deal with matters that might be disposed of by us in our management order. Is that correct?

MR. LE SAGE: That's correct, your Honor.

THE COURT: If there's any ambiguity, let's thrash it out now.

(No response.)

THE COURT: Okay. Next is the stipulation as to the security for the injunction. I think there was an agreement

9

1 of the $25,000 bond, and I will enter an order reflecting

2 that.

3 The last is the filings that are due today. The

4 proposed management order -- and I take it you have an agreed

5 one or you don't have an agreed one?

6 MR. LE SAGE: We don't have an agreed one, your

7 Honor. As I understood this Court's order, is that both

8 parties were to file today, which we are prepared to do a

9 little later today after it gets approved --

10 THE COURT: Okay. Let me just take a quick look and

11 make sure that I have --

12 (Brief pause.)

13 MR. LE SAGE: The order of 5-31 gives --

14 THE COURT: Yes. All right.

15 MR. LE SAGE: -- each party to submit their

16 submissions -- because you had different items on your order

17 that you wanted --

18 THE COURT: You're absolutely correct.

19 MR. LE SAGE: And then we have a subsequent date

20 later in June that week to have responsive pleadings and --

21 THE COURT: Respective responsive pleadings.

22 MR. LE SAGE: Right.

23 THE COURT: That's correct.

24 Then we will schedule another date which will allow

25 me to have you come back here, and I will set a date long

enough so that you'll have a chance to review my order and we

can have another status call shortly thereafter in terms of

implementing it, all right?

MR. LE SAGE: Okay.

May I, your Honor? I can give you a status of what's

going on in the MDL court, if it would be of interest to you.

THE COURT: Sure.

MR. LE SAGE: We have so far, together with the cases

that you have assigned us related and the MDL, 75 cases

currently pending before your Honor. There are 36 additional

cases that are in one stage of proceeding or another in the

MDL. There have been some opposition motions to vacate, of

which there are 16 so far. There are ten in the suspense

category, which means that a CTO will be issued very shortly.

And there are ten awaiting information, so that's a little bit

longer, a few motions that are set for the July calendar.

So with those cases, there's 36 that will at least

through August, it seems to me, be in some state -- probably

be --

THE COURT: Some state of limbo.

MR. LE SAGE: -- in some state of limbo until then.

But I assume most, if not all, of those will be transferred.

There are the 26 cases that we have now postponed

which are pending before your Honor that are Northern District

cases for assignment as related cases. And then you disposed

11

of the six cases that we had on calendar for today.  So --

        THE COURT:  So realistically we're talking about not

being able to really come up with a management until probably

September or October sometime?

        MR. LE SAGE:  That would be my estimation, your

Honor.

        THE COURT:  All right.  Let's set a date of October

the 26th at 10:30, and if there's any reason for us to meet

beforehand, you know, let me know and we'll do that

beforehand.

        If there's any reason why we should continue the 26th

date, please let me know beforehand because I don't want you

all to come in to tell me simply that we can't do anything yet

because we still have some cases before the MDL panel.  All

right?

        MR. LE SAGE:  We will do so, your Honor.

        MR. LEDSKY:  Your Honor, if I could make one point.

        If we're not meeting again until October 26th -- I

know you have just entered and continued plaintiffs' and

defendants' various motions for relatedness.  What we have

been doing in cases, anticipating motions for relatedness, is

asking for extensions of time, for an indefinite time in the

future until your Honor has dealt with relatedness motions.

Well, some judges here in the Northern District are hesitant

to do that and they have been setting responsive pleading




12

1    dates.   And so --

2         THE COURT:   I think you really have to deal with them

3    because the case is not here yet.   I really don't have --

4         MR. LEDSKY:   What I was suggesting is, perhaps, your

5    Honor, a shorter time to decide some of the relatedness

6    motions that have just been filed so that at least I can tell

7    them it's not going to be three or four months into the

8    future.

9         THE COURT:   Sure.   What do you suggest?

10        MR. EDELMAN:   For example, the opposition we had

11   received from Ameriquest last night, of the 16 cases in the

12   third motion for reassignment, they object only to three --

13   I'm sorry, they object to three and 19 are not opposed.   So if

14   it's --

15        THE COURT:   Well, of all that are -- is that correct?

16        MR. LE SAGE:   That is correct, your Honor.

17        THE COURT:   Well, I have no problem if we, in effect,

18   have an agreement that there are a group of related cases that

19   belong here.

20        MR. LE SAGE:   We can submit a stipulation, your

21   Honor, and that might be the easiest thing to do.

22        THE COURT:   That makes sense.   Why don't you submit a

23   stipulation.   I will enter an order based on that stipulation.

24        MR. EDELMAN:   Very well, your Honor.   And I will --

25   we can address the plaintiffs' third motion and the

13

1  defendants' second motion?

2          MR. LE SAGE:  Yes.

3          MR. EDELMAN:  Yes.

4          MR. LE SAGE:  We will do that all in the same

5  stipulation.

6          MR. EDELMAN:  Very well.

7          THE COURT:  But we still need an earlier date for

8  you.

9          MR. LEDSKY:  Maybe not then, your Honor.  If 90

10 percent of them are taken care of, we can deal with that --

11         THE COURT:  If you do need an earlier date, please

12 let me know.

13         MR. LEDSKY:  Okay.

14         MR. EDELMAN:  There is one possible need for an

15 earlier date.  In some of the individual cases, plaintiffs may

16 be experiencing financial distress which may require some

17 action.

18         THE COURT:  Like what?

19         MR. EDELMAN:  For example, if --

20         MR. HOFELD:  Well, we have a number of cases, your

21 Honor, where the plaintiffs are caught in adjustable rate

22 loans, and part of the allegations in the complaints is that

23 they were deceived about the terms of the loan.  And because

24 the interest rates are rising generally, payment -- monthly

25 payment amounts are starting to exceed their monthly budgets.

1    THE COURT:  I'm not sure what kind of relief I can

2  give you.  My suggestion is that if you have those situations,

3  you deal with them on an ad hoc basis; you don't need a status

4  call for that.  File the appropriate motion and give the

5  defendant a chance to respond and we will deal with it.

6    MR. EDELMAN:  Very well, your Honor.

7    THE COURT:  Okay.  Anything else?

8    MR. EDELMAN:  There also are a couple of cases where

9  amendment of the pleadings was required.  In some cases it

10  doesn't matter if your Honor stays it.  In other cases, if it

11  is necessary, for example, to join someone --

12    THE COURT:  Have you talked about stipulations as far

13  as that's concerned?

14    MR. EDELMAN:  Well, the problem is that the -- if,

15  for example, the amendment is to join a defendant, the

16  defendant would have to waive the statute of limitations.

17  That would be the nature of the problem.

18    THE COURT:  Those are pending motions, motions to

19  amend?

20    MR. LE SAGE:  There is only one, your Honor.  My

21  concern about getting into a motion practice, even if it's a

22  motion to amend, is we have motions to dismiss, we have

23  motions -- various other motions that similarly might impact

24  other parties who are not yet before the Court, other

25  plaintiffs who may want to take advantage of the proposed

15

amendment. There's class action allegations which may --

THE COURT: I agree with you. I prefer not to deal with them, but if you feel it has to be dealt with, you know, we will take a look at it and I may decide to do nothing.

MR. EDELMAN: Very well, your Honor.

MR. LE SAGE: I have one other issue that's of importance, your Honor, and that's with regard to the entry of the order, not only of the bond, but also we stipulated to the notice and the form of notice, the delivery of notice. And so --

THE COURT: Yes.

MR. LE SAGE: That's all agreed to.

There was only one issue left outstanding, which was defendants' request that the loans originated by Ameriquest post January 23, 2006, which really doesn't impact the implementation of the notice since there are none of those in foreclosure yet. But that's the date not only of the agreed upon settlement with the Attorney Generals of the 49 states but also the date that the monitor, who's the agent for the 49 Attorney Generals, is in place at Ameriquest monitoring all aspects of the loan processes at Ameriquest, ensuring compliance with every law, ensuring compliance with the settlement agreement, ensuring compliance with best practices, interviewing third parties, interviewing appraisers, taking an active role on behalf of the 49 Attorney Generals and

16

supervising the loan process, which if there is any inference
that notices or proper notices weren't given before that date,
which, of course, Ameriquest objects to, nevertheless, post
that date there's a good basis to imply that there is no
systemic failure to give proper notices to Ameriquest
borrowers post that.

And, therefore, the notice telling borrowers yet
again that they have a right to rescind is not something that
I think should be part of this order. Plaintiffs disagree
with that and we have agreed to brief that to your Honor on or
before June the 20th, and then your Honor can either set a
hearing date or --

THE COURT: Sure.

MR. LE SAGE: -- or not, depending on how you feel
it's been properly briefed or not, whether you need additional
information and make an appropriate ruling.

It's obvious -- we would like to get the main order
-- I mean, the order as we proposed and stipulated entered as
well as the bond amount so that --

THE COURT: All right. Well, I will enter an order
approving all those matters. When your filings are in by June
20th, I will rule promptly on the one matter in dispute.

MR. LE SAGE: Thank you, your Honor.

MR. MILLER: Your Honor, just as a point of
clarification, are you intending to defer ruling on the

17

management filing submissions that are going to be made today
until October 26th?

THE COURT:  No -- well --

MR. MILLER:  Otherwise --

THE COURT:  I can't settle the management claim until
I have got all the filings, all right?

MR. MILLER:  Well, I'm --

THE COURT:  Everything won't be filed until when,
June 20th?

MR. LE SAGE:  That is correct, your Honor.

MR. MILLER:  I thought you were going to wait until
the judicial panel sends some other cases here.  I don't --
because I don't think you have to wait that long, otherwise
there will always be cases in the pipeline.

THE COURT:  No, I'm not sure.  Let's see how many we
get rid of -- well, my thought was -- and I would if there's
some concensus that we need not wait and I can rule a lot
quicker.

MR. LE SAGE:  Your Honor, I think, with 36 cases
pending in the MDL, many of which will be related and subject
to whatever orders this Court makes, should have an
opportunity to participate in those orders, and you've got 26
related cases which we can stipulate very quickly are before
you.  But still, if you look at the total aggregate number, 36
cases is roughly a third of what you already have, or half of

18

1    what you already have --

2          THE COURT:  See, the problem with doing the

3    management order before those other cases arrive here is that

4    those attorneys will be, in effect, shut out of the

5    management.  And I think if you were representing one of them,

6    you would take great umbrage with that.

7          MR. MILLER:  I've been in that position before.

8          THE COURT:  Yes, I know.  And I don't like to do that

9    unless it's necessary.  If it's necessary I will do it, but I

10   think we can wait.

11         If something comes up -- as I said before, if there's

12   any reason we have to discuss any acceleration of anything or

13   any matter, you don't have to wait until October; I am going

14   to be here all the time and just get ahold of me.

15         MR. LE SAGE:  All right.

16         THE COURT:  Anything else?

17         MR. LE SAGE:  No, your Honor.  Thank you very much.

18         MR. ARGER:  For the record, Harry Arger.

19         There were two other cases that -- just so the record

20   is clear, in the Hall and Rodriguez cases there is a company

21   called EMC Mortgage that's a defendant.  I assume the motions

22   for enlargement will apply to that?

23         THE COURT:  Yes.

24         MR. ARGER:  Great.  Thank you.

25         MR. VARGA:  And also related to one of those cases,

19

1   Hall versus Ameriquest, there's a substitution of attorneys

2   motion that was noticed for today.

3           THE COURT:  That motion will be allowed.

4           MR. VARGA:  Our firm for his firm.

5           THE COURT:  Motion will be allowed.

6           MR. VARGA:  Thank you.

7           THE COURT:  Okay.  Thank you very much.

8           MR. LE SAGE:  Thank you, your Honor.

9           MR. LEDSKY:  Thank you, your Honor.

10      (Which were all the proceedings had at the hearing of the

11  within cause on the day and date hereof.)

12                      CERTIFICATE

13          I HEREBY CERTIFY that the foregoing is a true,

14  correct and complete transcript of the proceedings had at the

15  hearing of the aforementioned cause on the day and date

16  hereof.

17

18  _____                    6/20/06
    Official Court Reporter                        Date
19  U.S. District Court
    Northern District of Illinois
20  Eastern Division

21

22

23

24

25