UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) ) ) ) ) ) | MDL No. 1715 |
| | | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | | Centralized before Judge Marvin E. Aspen |

**VARIOUS PLAINTIFFS' RESPONSE MEMORANDUM REGARDING CASE MANAGEMENT**

The plaintiffs listed below[1] respectfully submit this memorandum in response to case management proposals submitted to this Court.

1. Plaintiffs agree with Ameriquest that, at the outset, this Court should resolve the key legal issues in these cases. However, plaintiffs disagree with Ameriquest's suggestion that these rulings should be made on a generic, abstract basis.

The better course would be for the parties (or this Court) to select four or five individual test cases that could serve as vehicles for resolving the key issues in these cases. The other cases could be stayed for four to six months while the test cases are being adjudicated (except for customers in distress, whose situations can be addressed on an ad hoc basis). Afterwards, the parties could negotiate individual and class action settlements based on the principles established by the Court.

2. Plaintiffs disagree with the proposal by the Roddy Klein, Lieff Cabraser, James Hoyer group that control of the individual cases should be taken from the lawyers hired by the plaintiffs and given instead to the Consumer Law Group and the National Consumer Law Center, acting under the supervision of the putative class counsel.

The individual plaintiffs have a due process right to be represented by counsel of their choice. Even if a class were certified, they would have a right to opt out and proceed individually. In fact, filing an individual case is effectively already an opt out. There is no justification for giving putative class counsel control over the individual cases. If this Court is worried about litigation overload, the better solution would be to

---

[1] Rosalind and Randy Van Gorp (06-1731), Douglas and Evelyn Geis (06-1716), Kevin and Sherry Wessel (06-1899), Jo Lynn and Kelly Sedgwick (06-2333), John and Geraldine Dougherty (06-24820), Ralph Rodriguez and Barbara Chapman (06-2187), Rocco Tieri (06-2682), Peter Grabowski (06-2549) , and Scott Dearden (06-2912).

stay the vast majority of the cases while the test cases are being adjudicated and then order settlement discussions and mediation (which the parties would agree to anyway).

Moreover, the reasons for individual control of individual cases are particularly strong here. Mortgage rescission claims under TILA have substantial value -- often more than $30,000 per mortgage, sometimes more than $50,000 per mortgage, plus statutory attorneys' fees and possible damages under state law. These valuable claims will often depend on case specific evidence that is not ascertainable from the defendant's records. Moreover, rescission plaintiffs often require personal attention because their homes are in jeopardy or they are unable to make ends meet due to high mortgage payments. For all these reasons, rescission plaintiffs are much better off being represented by lawyers who have spoken to them, who are familiar with their particular situation and whom they have chosen to represent them.

3. Ameriquest customers who have submitted rescission requests are in a different position than other customers because their claims are much more valuable and because they are better off with individual representation. Consequently, they should not be put under the jurisdiction of putative interim class counsel.

The U.S. Supreme Court has held that where, as here, a subclass has significantly better or different claims than the rest of the class, that subclass ought to receive separate representation. See Ortiz v. Fibreboard Corp., 527 U.S. 851, 857 (1999) ("class settlements must provide 'structural assurance of fair and adequate representation for the diverse groups and individuals affected'" * * * "a class divided between holders of present and future claims ... requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel"); id. at 857 (striking down global settlement in part because the settlement treated class members with stronger claims no better than other class members).

In their latest filing, the putative class counsel has suggested that there is a conflict of interest between individual rescission plaintiffs and the putative national class. If so, that is another reason for those customers who have sought rescission to receive separate representation. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 627 (1997) ("the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups"). See also Mirfasihi v. Fleet Mortgage Corp., Case No. 05-3669 (7th Cir. June 19, 2006) (stressing importance of fairness to subclasses).

To provide the structural assurance of fair representation mandated by the Supreme Court, the law firm of Edelman, Combs, Latturner and Goodwin should be

2

appointed to a leadership position with special responsibility for representing the interests, within the context of any class action, of those Ameriquest customers who have submitted or will submit rescission requests.[2]

This appointment would give the Edelman firm an important role in the case that is commensurate with its resources, expertise and experience. At the same time, the appointment would allow the putative class counsel to proceed on behalf of the vast majority of Ameriquest customers (i.e. those who have not submitted rescission requests).

This proposed allocation of responsibility is similar to one proposed by putative class counsel to the Edelman firm in private discussions (which offer is referenced in the brief filed by putative class counsel). The key difference is that under this proposal the Edelman firm would not be acting as a subordinate of putative class counsel, but rather as an independent representative of a putative subclass, in accordance with the strictures of <u>Amchem</u> and <u>Ortiz</u>.

Respectfully submitted by:

/s Daniel Harris
Daniel Harris

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 960-1802

---

[2] The Edelman firm could also be appointed lead counsel with respect to the FCRA cases, but that is a separate matter outside the scope of this memorandum.

3