UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. ) <br> MORTGAGE LENDING PRACTICES ) <br> LITIGATION ) <br> ) <br> _____ ) <br> ) <br> THIS DOCUMENT RELATES TO ALL ) <br> ACTIONS ) <br> ) | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> Centralized before Judge <br> Marvin E. Aspen |

**VARIOUS PLAINTIFFS' MEMORANDUM REGARDING
CONFLICT OF INTEREST ISSUES**

The plaintiffs listed below[1] respectfully submit this memorandum in opposition to the motion filed by the Roddy Lieff group insisting that this Court grant the Roddy Lieff group authority to represent all Ameriquest customers. The motion should be denied because there is a conflict of interest between Ameriquest customers who want to rescind their mortgages ("rescission plaintiffs") and the Roddy Lieff group.

Rescission plaintiffs have a very strong interest in being allowed to proceed on their own and those who file their own suits effectively opt out of any class action. Moreover, rescission plaintiffs need separate representation because, as discussed in the Roddy Lieff group's recent brief, there are conflicts of interest between the rescission plaintiffs and the interests of the putative national class, as those interests are conceived by the Roddy Lieff Group. See e.g. Docket No. 177-1 at 6 (discussing conflict between supposed interests of class and the best interests of individual plaintiffs).

Nevertheless, despite the admitted conflict, the Roddy Lieff group is asking this Court for authority to represent all Ameriquest customers, including rescission plaintiffs. The Roddy Lieff group's case management plan would give the proposed Co-Lead

---

[1] Rosalind and Randy Van Gorp (06-1731), Douglas and Evelyn Geis (06-1716), Kevin and Sherry Wessel (06-1899), Jo Lynn and Kelly Sedgwick (06-2333), John and Geraldine Dougherty (06-2482), Ralph Rodriguez and Barbara Chapman (06-2187), Rocco Tieri (06-2682), Peter Grabowski (06-2549), and Scott Dearden (06-2912).

Counsel (i.e. the leaders of the Roddy Lieff group) plenary and exclusive authority to represent all plaintiffs, including rescission plaintiffs and including plaintiffs with pending individual cases. See Docket No. 162 at 4. Moreover, the Roddy Lieff group is considering a mandatory Rule 23(b)(1) class action, with no opt out rights, that would include rescission plaintiffs whether they like it or not. See Docket No. 177-1 at 6.

The authority to represent rescission plaintiffs should not be handed over to a group of lawyers whose interests conflict with those of the rescission plaintiffs. Control over the individual rescission cases (which should settle on fair terms with minimal judicial assistance) should remain with the clients. And to protect rescission plaintiffs generally, this Court should appoint the law firm of Edelman, Combs, Latturner & Goodwin to represent Ameriquest borrowers with extended rescission rights under 12 C.F.R. § 226.23(a)(3).

## I. THERE IS A FUNDAMENTAL CONFLICT OF INTEREST BETWEEN RESCISSION PLAINTIFFS AND THE RODDY LIEFF GROUP

In a recent brief, the Roddy Lieff group argues that the Edelman firm is unfit to serve as class counsel because the Edelman firm represents rescission plaintiffs and the interests of present and future rescission plaintiffs conflict with the interests of the putative national class, at least as those class interests are conceived by the Roddy Lieff group. See e.g. Docket No. 177-1 at 6 ("the Edelman firm has placed itself in a position of potential conflict of interest, where it may be called upon to act in the best interest of present or future individual Plaintiffs to the detriment of absent class members").

This remarkable idea -- that loyalty to actual clients means disloyalty to a class that would include those clients -- sheds light on a fundamental conflict of interest in this case. There is a conflict between the interests of rescission plaintiffs (i.e. Ameriquest borrowers who have sought or may seek rescission of their mortgages) and the interests of the putative national class, at least as those interests are conceived by the Roddy Lieff

2

group. A less abstract way of making the same point is that there is a conflict of interest between the rescission plaintiffs and the Roddy Lieff group.

Rescission plaintiffs have a strong interest in being allowed to do proceed on their own and in not being conscripted into a class action. Individual cases are likely to settle on good terms for the plaintiffs in one or two years with only minimal judicial assistance. A rescission class action, by contrast, would be hotly contested from a variety of angles and likely take five to ten years to resolve (if it were not simply killed at the outset). This difference in timing is very important to rescission plaintiffs whose lives are often in turmoil because of the burden of their Ameriquest mortgage.

Moreover, individual cases are likely to settle for full value because the plaintiffs will have a credible threat of going to trial and the settlements will require client approval. By contrast, rescission plaintiffs are likely to get a very small percentage of their potential damages from a class action settlement because client approval would not be required and there would be no credible threat of going to trial.

But while the rescission plaintiffs do not want to be part of the class action, the putative national class has a very strong interest in conscripting rescission plaintiffs into its service. The rescission claims are valuable (e.g. $30,000 or $50,000 or more) and a mass release of all potential individual rescission claims would be very attractive to Ameriquest, and therefore worth a lot of money to the putative national class and those in charge of it.

The brief filed by the Roddy Lieff group is replete with concrete examples of how the Roddy Lieff group's agenda would lead the group to take actions that are contrary to the best interests of rescission plaintiffs. For example, the brief argues that the Edelman firm is not suited to serve as class counsel because the Edelman firm's representation of individual rescission plaintiffs may lead the Edelman firm to oppose class certification

under Rule 23(b)(1), which does not permit opt outs. See Docket No. 177-1 at 6.[2] The flip side of this point is that the Roddy Lieff group has placed itself in a position of potential conflict of interest, where it maybe called to act in the best interest of the absent class members to the detriment of present or future individual plaintiffs. One may also infer from this accusation that the Roddy Lieff group is considering class certification under Rule 23(b)(1) which would force rescission plaintiffs to participate in a class action against their will and deny them the right to proceed on their own. Since the rescission plaintiffs would be better off proceeding on their own, this shows a conflict of interest between the Roddy Lieff group and the rescission plaintiffs they seek to represent.

Another example of the conflict is that, in its latest filing, the Roddy Lieff group attacks the Edelman firm for settling individual rescission cases. See Docket No. 177-1 at 6. The brief argues that the individual settlements might deplete Ameriquest's resources. See id. at 7. The brief also expresses the concern that the individual settlements would make it "difficult, if not impossible," to justify a class action settlement as "fair and reasonable" (id. at 7), presumably because rescission plaintiffs will be able to get so much more in individual settlements than they could out of a class action.[3] Since the settlement of individual rescission claims is obviously in the best interests of rescission

---

[2] The Roddy Lieff brief states:

> ... the Edelman firm has placed itself in a position of potential conflict of interest, where it may be called upon to act in the best interest of present or future individual Plaintiffs to the detriment of absent class members. For example, Rule 23(b)(1) permits certification of a class where there is a risk of inconsistent or varying adjudications. The Edelman firm's filing and active litigation of individual cases may prevent it from advocating for this basis for class certification, thereby posing a conflict.

Docket No. 177-1 at 6.

[3] The Roddy Lieff brief states "it is difficult, if not impossible, to assert that a settlement on behalf of a [sic] class is fair and reasonable when other relief is available under individual settlements to a select group of clients of the firm to the detriment of absent class members." Id. at 7 (typographical error in the original).

4

plaintiffs, this is further evidence of a conflict of interest between the Roddy Lieff group and the rescission plaintiffs.

The conflict of interest between the Roddy Lieff group and the rescission plaintiffs not only threatens those rescission plaintiffs who are presently seeking rescission. The conflict also endangers rescission plaintiffs who may pursue their rescission rights in the future. For example, in its recent brief, the Roddy Lieff group argues that the Edelman firm is unsuited to represent a national class because the Edelman firm might advise some customers to opt out and pursue individual actions. See Docket No. 177-1 at 7. Implicit in this accusation is that the lawyers in the Roddy Lieff group would never do such a thing. They would always advise all class members to remain in the class.

This would be good advice from the perspective of the putative national class counsel because their interests lie in a big class action settlement. But it would be bad advice for the rescission plaintiffs since their rescission claims are much more valuable on an individual basis than whatever consideration class members would get out of a class action settlement. That the lawyers in the Roddy Lieff group feel duty bound, based on their loyalty to the putative national class, to give bad advice to the rescission plaintiffs is another indication of the existence of a conflict of interest and the need for the rescission plaintiffs to receive separate and independent representation.

The Roddy Lieff group seems to be aware of the conflict of interest problem. A main point of its brief is that the Edelman firm's loyalty to the interests of rescission plaintiffs means that the Edelman firm will be disloyal to the putative national class. See Docket No. 177-1 at 5-7. Unmentioned, but nevertheless obvious, is the flip side of this same point. The Roddy Lieff group's loyalty to the putative national class means the Roddy Lieff group will be disloyal to the rescission plaintiffs.

5

## II. THE RESCISSION PLAINTIFFS SHOULD RECEIVE SEPARATE AND INDEPENDENT REPRESENTATION

The right to represent an individual carries with it a concomitant duty of loyalty, an obligation to act for that individual's benefit, and not for the benefit of other individuals whose interests conflict with those of the represented party. It is, therefore, fundamental that class action attorneys should not be given authority to represent individuals whose interests conflict with those of the class, particularly when the class action attorneys are planning to sacrifice those individuals for the supposed good of the class.

The U.S. Supreme Court has held that where, as here, a class contains a subgroup with conflicting interests that subgroup should receive separate and independent representation. See Ortiz v. Fibreboard Corp., 527 U.S. 851, 857 (1999) ("class settlements must provide 'structural assurance of fair and adequate representation for the diverse groups and individuals affected'"); Amchem Products, Inc. v. Windsor, 521 U.S. 591, 627 (1997) ("the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups").

The obvious candidate for providing that representation to the rescission plaintiffs (within the context of any class action) is the Edelman firm. The Edelman firm has filed more individual rescission cases than all the other firms in this case put together. Moreover, the attack on the Edelman firm for its loyalty to the interests of the rescission plaintiffs is a good indication that the Edelman firm would provide the genuinely separate and independent representation mandated by the U.S. Supreme Court.

Certainly, the Roddy Lieff group should not be responsible for representing rescission plaintiffs. Yet that is precisely what the Roddy Lieff group proposes. In its

proposed case managment plan, the Roddy Lieff group states, in part:

> Co-Lead Counsel shall have the responsibility to communicate with Plaintiffs' counsel and defense counsel on questions of discovery, motions and other pre-trial and trial matters. Co-Lead Counsel shall also have the following responsibilities and duties in this litigation to perform or delegate as appropriate:
>
> a. To be lead spokespersons before the Court for Plaintiffs;
>
> b. To supervise, manage, and direct all aspects of the litigation on behalf of the Plaintiffs, including delegating specific tasks to other counsel in a manner to ensure that pre-trial preparation for the Plaintiffs is conducted effectively, efficiently and economically;
>
> c. To implement any Case Management Orders entered herein, and coordinate all pre-trial matters, including discovery, as set forth herein;
>
> \* \* \*
>
> h. To conduct pre-trial, trial and post-trial proceedings;

Document 162 at 4.

The National Consumer Law Center and the Consumer Law Group, LLC, would function as subordinates as Co-Lead Counsel, responsible for riding herd on individual plaintiffs and their attorneys. See id. at 8 ("These firms shall be responsible for coordinating Plaintiffs' counsel in all non-class (individual) cases coordinated before this Court").

The unspoken justification for this plan seems to be that, whatever the Supreme Court might say about separate and independent representation of subgroups with conflicting interests, in practice there has to be a unified leadership to negotiate a global class action settlement. Plaintiffs' lawyers are not as effective when they disagree.

No doubt it is better when plaintiffs' lawyers work together cooperatively, and that is something that all the plaintiffs' lawyers in this case should strive to do. But where, as here, there is a conflict of interest between different groups of putative class

7

members, the cooperation should be between independent and equal representatives of the two groups, and not the result of one group dominating the other. Also, individuals who have elected to proceed on their own should not be delivered up to the class counsel just so the class counsel can negotiate a broader settlement for the class at the expense of those individuals.

       This is not only the fair approach, and the one mandated by Rule 23 and the Due Process Clause of the U.S. Constitution. It is also the realistic one, given the Seventh Circuit's strict policing of class action settlements. See e.g. Mirfasihi v. Fleet Mortgage Corp., Case No. 05-3669 (7th Cir. June 19, 2006); Smith v. Sprint Communications Co., L.P., 387 F.3d 612 (7th Cir. 2004) (stressing importance of fairness to subclasses). As a practical matter, following the Supreme Court's strictures about separate and independent representation for subclasses with conflicting interests is the best way to assure a just and lasting peace. By contrast, ignoring the Supreme Court's mandate, and allowing the Roddy Lieff group to represent subgroups with conflicting interests, would place any class action in this case on a foundation of sand.

       The reasons that the Roddy Lieff group advances in its brief for giving itself exclusive authority and excluding the Edelman firm from any leadership position do not withstand analysis. For example, in its brief, the Roddy Lieff group talks about how including the Edelman firm in the leadership group would create disharmony among the plaintiffs' lawyers, whereas the Roddy Lieff team "will represent all Plaintiffs (both class plaintiffs and individual plaintiffs) well and without engendering conflict." Docket No. 177-1 at 3. But disharmony is a natural result of providing separate and independent representation to a subgroup with conflicting interests. Lawyers representing unpopular minorities often make themselves unpopular with other lawyers whose interests they oppose. That is no reason to deprive the unpopular minority of separate and independent representation.

       The Roddy Lieff group also talks about how it is bigger. See e.g. Docket No. 177-

8

1 at 1, 3. But that does not justify giving the group authority to represent the rescission plaintiffs who have conflicting interests. Also, relative size depends on the metric used. The Edelman firm and those firms allied with it have far more cases on file and more actual clients. The Roddy Lieff group has drawn more plaintiffs' lawyers to its standard. Given the conflicts of interest between the rescission plaintiffs and the putative national class discussed above, both groups ought to have representation in leadership.

The brief filed by the Roddy Lieff group also asserts that this Court should not give the Edelman firm that which the Edelman firm was unable to secure through negotiations (with the Roddy Lieff group). See Docket No. 177-1 at 3. The assumption underlying this argument seems to be that this case belongs to the Roddy Lieff group and that the Roddy Lieff group therefore has the right to select who gets to represent whom. The first problem with this position is that, in fact, the case belongs to the clients and it is the responsibility of the Court, acting as a surrogate for the clients, to select class counsel. A related problem is that the Roddy Lieff group has a conflict of interest which not only precludes it from representing the rescission plaintiffs but also bars it from choosing who gets to represent the rescission plaintiffs.

The latest filing by the Roddy Lieff group also talks about how it offered the Edelman firm a position of responsibility with respect to the individual cases, which the Edelman firm declined. But the position offered to the Edelman firm (and subsequently given instead to the Consumer Law Group and the National Consumer Law Center) was one that was subordinate to the putative class counsel. The Roddy Lieff group's plan puts the Roddy Lieff group in overall control. See Docket No. 162 at 4.

## CONCLUSION

This Court should not give the Roddy Lieff group or its allies authority to represent rescission plaintiffs since the interests of the rescission plaintiffs conflict with those of the Roddy Lieff group and the putative national class it seeks to represent (at least as those interests are conceived by the Roddy Lieff group).

9

In order to provide "'structural assurance of fair and adequate representation for the diverse groups and individuals affected'" <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 851, 857 (1999), the Edelman firm should be appointed to represent the subclass of Ameriquest borrowers with extended rescission rights under 12 C.F.R. § 226.23(a)(3). Control over the individual rescission cases should remain with the individual plaintiffs and the lawyers they have retained to represent them.

             Respectfully submitted by:

               s/ Daniel Harris
             Daniel Harris

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 960-1802