## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

IN RE AMERIQUEST MORTGAGE CO.
MORTGAGE LENDING PRACTICES
LITIGATION

_____

THIS DOCUMENT RELATES TO: ALL
ACTIONS

MDL No. 1715

Lead Case No. 05-cv-07097

(Centralized before the Honorable
Marvin E. Aspen)

## COOPERATING PLAINTIFFS' OMNIBUS REPLY MEMORANDUM
## ON CASE MANAGEMENT ISSUES

### INTRODUCTION

On June 13, 2006, Cooperating Plaintiffs' Counsel in this action filed a Joint and

Agreed Organization and Case Management Plan. ("Cooperating Plaintiffs' Plan,"

Docket No. 162.) Twenty-two (22) law firms[1] with cases pending in this proceeding

support the Cooperating Plaintiffs' Plan.[2] That plan is the Plaintiffs' comprehensive

response to the Court's order that Plaintiffs organize by June 13, 2006. (Docket No. 52.)

---

[1] Two additional firms, Green Jacobson & Butsch, P.C. and Ademi & O'Reilly, LLP have agreed to support the Cooperating Plaintiffs' Plan since it was filed for support from a total of 24 law firms. These firms represent plaintiffs in Missouri and Wisconsin. They will file declarations in support after they file their appearances. The original 22 firms are named in the signature block to this pleading.

[2] As discussed more fully below, only one firm and its co-counsel propose a competing plan. Even that firm does not seek to override the proposed organization plan of Cooperating Plaintiffs' counsel, but rather only to superimpose itself for certain limited roles on the structure negotiated by the Cooperating Plaintiffs.

Having negotiated and filed a comprehensive proposed plan, Cooperating Plaintiffs' Counsel then moved for approval of that plan and for the Court to lift the litigation stay that has been in place since February. (Docket No. 178.) Their memorandum in support of that motion ("Cooperating Plaintiffs' Opening Memorandum") details the reasons that the case should now move forward including, most importantly, potential prejudice to the Plaintiffs and the putative class associated with further delay. (Docket No. 179.)

This memorandum is Cooperating Plaintiffs' omnibus reply to various papers filed since June 13, 2006 concerning case management issues. These include: Ameriquest Mortgage Company's Memorandum in Opposition to Motion to Approve Plaintiffs' Plan and to Lift Stay ("Ameriquest's Opposition," Docket No. 182), Response of Plaintiffs James Jewell and Jennifer Jewell Regarding Case Management ("Jewell Response," Docket No. 185), ECLG Plaintiffs' Consolidated Response to Other Case Management Plans ("Edelman Response" Docket No. 187) and Defendant's Proposed Integrated Organization and Case Management Plan ("Ameriquest's Integrated Plan," Docket No. 188).

Defendant appears to be focused on delay. It put forward its proposal to "integrate" its own plan with Cooperating Plaintiffs' plan without any consultation with Plaintiffs' counsel. Under the guise of having integrated its plan, Ameriquest proposes a schedule under which it would not even have to respond to Plaintiffs' claims until February 2007. There is no legitimate reason for this proposed additional seven-month

delay[3] as Ameriquest has been on notice of virtually all of the claims against it since at least 2004. Indeed, in most of the pending cases, Ameriquest has already answered the Complaint or failed in a motion to dismiss.[4] Certainly, Ameriquest is not now entitled to another seven-month period to reevaluate its response to the claims at issue. For all the reasons stated in the Cooperating Plaintiffs' Opening Memorandum and in this reply memorandum, further delay of this matter is unnecessary and prejudicial.

## I.  THERE IS NO REASON TO CONTINUE THE STAY IN FAVOR OF CASES PENDING IN THE MDL PIPELINE.

### A.  Class Cases

At present, there are only three class action cases pending before the MDL panel. See Declaration of Jill Bowman, ¶5 (Docket No. 196.) All of them will be resolved imminently. *Id.* One of these cases, *Capasso v. Ameriquest Mortgage Company*, was filed by a law firm, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, that is participating in the Cooperating Plaintiffs management team. Undersigned counsel is authorized to state that counsel in *Capasso* will fully support the proposed case management plan if that case is ultimately transferred. *Id.*

---

[3] The total delay from the date of the initial status conference would be more than one year. The delay from the original date of transfer would be fourteen months with no progress in the case.

[4] *See, e.g., C. Williams, et al. v. Ameriquest Mortgage Company,* Case No. 05-CIV-6189 (LTS)(DFE)(S.D.N.Y.)(answer filed on September 1, 2005); *Barber, et al. v. Ameriquest Capital Corp. et al.,* Case No. 3:04-CV-1296-J-32 TEM(M.D. Fla)(motion to dismiss denied on January 9, 2006, answer filed on February 14, 2006); *Murphy, et al., v. Ameriquest Mortgage Company,* C.A. No. 04-cv-12651RWZ (D. Mass)(answer filed on March 7, 2005); *L. Williams, et al. v. Ameriquest Mortgage Company et al.,* C.A. No. 8:05-01036-EAK-EAJ (M.D. Fla. 2005)(answer filed on June 24, 2005); *Burggraff v. Ameriquest Capital Corporation,* Case No. 2:04-cv-09715-MMM-Mc (C.D. Cal.)(motion to dismiss denied on May 23, 2005, answer filed on June 13, 2005).

The other two cases were very recently filed. *Klutho v. Ameriquest Mortgage Co. et al.* was filed on May 8, 2006, and appears to be patterned on the Fair Credit Reporting Act cases already pending here. Undersigned counsel is authorized to state that counsel in *Klutho* does not intend to oppose transfer. *Id.* The case will thus arrive in this Court shortly. When the case is transferred, *Klutho* counsel expects to review the Consolidated And Amended Complaint, but with that caveat, will support the Cooperating Plaintiffs' Plan.

The *Johnson v. AMC Mortgage* case was filed on May 26, 2006. The undersigned Counsel have been informed that the parties in *Johnson* have entered into a confidential settlement on an individual basis so that the case will not be transferred. *Id.*

The existence of the latter two recently filed cases in the MDL-transfer pipeline is illustrative of the problems inherent in waiting for MDL-panel dispositions. There will always be newly-filed cases subject to transfer. Moreover, waiting for resolution by the MDL panel of certain cases, such as *Johnson*, will ultimately prove fruitless because the case may never be transferred. Finally, any prejudice to Plaintiffs or lawyers whose cases are in the MDL-transfer pipeline is both contingent and speculative. That prejudice, if any, is far outweighed by that to the Plaintiffs already here inherent in an additional 5-7 month period of delay.

### B. The Individual Cases

The balance of the cases pending for potential transfer are individual cases.[5] The Cooperating Plaintiffs' Plan does not contemplate taking control of these cases away from the lawyers who filed them. See Declaration Of Charles Delbaum And Dan Blinn

---

[5] There are 23 such cases. Bowman Declaration, ¶ 6.

4

In Support Of Application For Appointment As Co-Chair Of The Individual Claims

Steering Committee ("Delbaum and Blinn Declaration") at ¶ 9. (Docket No. 198.)

Rather, the Plan contemplates appointment of uniquely qualified counsel to constitute a

steering committee to coordinate representation by lawyers in the individual cases.

Cooperating Plaintiffs Plan at ¶ 1.d, Delbaum and Blinn Declaration at ¶ 8. The

Cooperating Plaintiffs' Plan assumes that these individual plaintiffs are likely to opt out

of any class-wide case resolution and thereby preserve their individual claims. The

individual plaintiffs – those not serving as class representatives-- are entitled to

representation by their choice of counsel and transfer does not change that entitlement.

By proposing a steering committee for the purpose of coordination, the

Cooperating Plaintiffs intend to benefit rather than prejudice individual Plaintiffs,

including those whose cases remain in the MDL-transfer pipeline. Coordination would

allow, for example, access to a broader pool of discovery materials than might otherwise

be available to individual plaintiffs. In addition, teams of lawyers may seek to jointly

pursue summary judgment on particular issues in order to create economies of scale. But

the lawyers involved will continue to retain full and final control over their client's

claims for settlement and/or litigated decision. Delbaum and Blinn Declaration, ¶ 11.

There can thus be no prejudice to Plaintiffs in these pending cases.

### C. *Plaintiffs Whose Cases Are Pending for Transfer Are Also Prejudiced by Delay Here.*

Cooperating Plaintiffs' Opening Memorandum at p. 3-4, 5-7 details the many

reasons that delay is prejudicial to Ameriquest's borrowers. Most importantly, many

hundreds of thousands of homeowners have an ongoing relationship with Ameriquest and

are asserting a right to adjustment of their contractual relations on a going-forward basis. These homeowners are prejudiced because they are struggling monthly to make mortgage payments in amounts that exceed their lawful obligations.[6]  The prejudice associated with delay applies as forcefully to borrowers whose cases remain pending in the MDL transfer pipeline as it does to Ameriquest customers whose claims are already pending here. There is no advantage to such Plaintiffs in being transferred to a proceeding that has made no scintilla of progress.

Additionally, it is possible, if not likely, that Ameriquest's ability to pay a judgment in this matter is eroding over time.  Ameriquest asserts that Counsel has reached this conclusion as an inference based on a newspaper article.  Ameriquest Opposition at pp. 4-5.  This is not true.  Cooperating Plaintiffs' assertion is based on a news release appearing on Ameriquest's own website. Ameriquest recently closed 229 branch offices.  In that process, it laid off more than 3,800 workers.  See Press Release, "Ameriquest Announces New Retail Business Model" (May 2, 2006). http://www.ameriquestmortgage.com/releaseArticle.html?news=news20060502. A copy of the Ameriquest press release is attached as Appendix 1.

Since Cooperating Plaintiffs filed their opening memorandum, the evidence of Ameriquest's deteriorating financial position has become even starker.   Ameriquest's earnings plunged 81% in 2005.  No inference is necessary from this recent news article:

---

[6] The preliminary injunctive relief previously entered applies only to a narrow group of putative class members who are facing foreclosure.  The notice required by the preliminary injunction provides putative class members information about certain Truth in Lending rescission claims.  It does nothing to relieve the hardship on the many struggling Ameriquest borrowers who either don't have TILA rescission claims or who are not actively in the midst of foreclosure.

Reckard, "Ameriquest Parent Sees Steep Drop on Earnings," Los Angeles Times, (June 23, 2006).  A copy of the article is attached as Appendix 2.

Again, all plaintiffs, including those in potentially transferable cases would be prejudiced if delay undermines Ameriquest's financial ability to pay a judgment.

## II.   CONTRARY TO AMERIQUEST'S REPRESENTATIONS, THERE IS NO SERIOUS DISPUTE BETWEEN PLAINTIFFS' COUNSEL, BUT RATHER ONLY ONE OPEN ISSUE THAT CAN BE RESOLVED EXPEDITIOUSLY BY A COURT RULING.

In various pleadings, Ameriquest exaggerates a limited dispute among class counsel.  Ameriquest Opposition at pp. 2, 5.  The limited dispute is not a basis for delay.  Pursuant to this Court's order and directive, twenty-two law firms came together supporting the Cooperating Plaintiffs' Plan.  The firms involved run the gamut from large class action firms with dozens of lawyers to small partnerships and sole proprietorships.  The firms involved cover virtually every jurisdiction in the country including California, Florida, New York, Massachusetts, Minnesota, Illinois, Texas, Connecticut Oregon and Pennsylvania.   Remarkably, only one firm, the Edelman firm, has filed a competing plan.  That plan is supported by just two firms who are, in various cases, the Edelman firm's co-counsel.  And even the Edelman firm agrees with Cooperating Plaintiffs' counsel that the existing litigation stay should be lifted.  Edelman Response at pp. 17-21.

There is no dispute that the Edelman firm rejected various leadership roles offered to it during the negotiations among counsel that were mandated by the Court.  The Edelman firm is now asking the Court to appoint it to a position that has been filled by other lawyers with cases in this MDL proceeding.  *See generally* Cooperating Plaintiffs' Opposition to Edelman Motion to Appoint Counsel and Opposition to Edelman

Plaintiffs' Proposed Organization and Case Management Plan. ("Cooperating Plaintiffs'
Opposition to Edelman Motion") (Docket No. 177.)

At bottom, there is a very narrow conflict between the Edelman firm and the
Cooperating Plaintiffs' counsel. The Edelman firm actually proposes that Cooperating
Plaintiffs' leadership structure be appointed, but that the Edelman firm be superimposed
on that structure for certain roles. Moreover, the Edelman firm appears to agree that the
Case Management Plan should afford separate treatment to the individual cases,
recognizing that counsel in such cases must retain ultimate control over their clients'
claims. The Edelman firm and the Cooperating Plaintiffs disagree only on who should
coordinate the individual cases. The Edelman firm now asks for responsibility to
coordinate those cases, but the Cooperating Plaintiffs have designated other law firms.

The Cooperating Plaintiffs believe they have valid reasons not to have the
Edelman firm be superimposed on an otherwise consensual plan, not the least of which is
the Edelman firm's unwillingness to participate in negotiations in a spirit of compromise.
Importantly, during negotiations the Edelman firm rejected the roles it now seeks, and
those roles have been filled by other qualified firms. *See generally* Cooperating Plaintiff'
Opposition to Edelman Motion.

Nevertheless, Cooperating Plaintiffs have reserved a role for the Edelman firm
and have no objection to the Court appointing the Edelman firm as liaison counsel for the
individual cases.[7] Moreover, as described in the accompanying Delbaum and Blinn

---

[7] When the Edelman firm declined the offer of liaison counsel for the entire MDL
proceeding, Cooperating Plaintiffs agreed to place Marvin Miller and Dom Rizzi of
Miller Faucher and Cafferty LLP in that role. Miller Faucher is thoroughly qualified to

Declaration, as the coordinating counsel for individual cases Cooperating Plaintiffs'

counsel have no intention of supplanting the lawyers in individual cases. This obviates

the conflict of interest issues raised so strenuously in the Edelman[8] and Jewell[9]

Responses. No conflict of interest will exist because individual Plaintiffs will continue

---

serve as liaison counsel. *See*, Miller Faucher firm resume, attached to Plaintiffs' Joint
And Agreed Organization And Case Management Plan as Exhibit D [Docket No. 162].

[8] The Edelman Response on this issue is mystifying. While the Edelman firm apparently
recognizes that there is a conflict of interest between individual representation and
"large" class action representation on the same issues, it apparently doesn't see the
problem for individual representation and "small" class action representation. Indeed, it
requests appointment in this case to both class and individual representation, despite its
apparent awareness of conflicts. The Cooperating Plaintiffs have a much simpler and
more straightforward plan that is consistent with common sense. Under the Cooperating
Plaintiffs' Plan, counsel in individual cases would continue to represent their clients in
this proceeding subject only to coordination by a steering committee. Neither the
Edelman firm nor any other lawyer would take control of any other lawyer's individual
cases.

[9] On July 5, 2006, Dan Harris, Counsel for the Jewell Plaintiffs, filed an additional
memorandum on purported "conflict of interest" concerns. (Docket No. 193.) That
pleading, entirely without citation, appears to argue that Rule 23 class certification
procedures are insufficient to protect absent class members because Counsel could
always achieve a better result if they represent each Plaintiff individually. The factual
and legal errors underlying Mr. Harris's position are too numerous to describe. Suffice it
to say, that his purported reasoning would prevent any class action from ever being
certified. Additionally, there is no reasonable vision of this case in which every
Ameriquest customer with Truth in Lending rescission claims can be individually
represented by Mr. Harris or the Edelman firm. Individuals without representation will
be protected by the certification procedures of Rule 23, including the requirement of
adequacy of representation under Fed. R. Civ. P. 23(a)(4).

It is relevant here that Mr. Harris has had substantial problems with his conduct in
representing Plaintiffs in class action cases. *Reynolds v. Beneficial National Bank*, 288
F.3d 277, 280-282 (7th Cir. 2002).

to have individual representation.[10]  Additionally, the Edelman and Harris firms will be able to continue to represent their individual clients.

The Edelman firm, without significant analysis, also posits a need for its separate appointment to a position in charge of small class action cases and for the Fair Credit Reporting Act class actions (the so-called Cole cases).  In making these requests, the Edelman firm fails to explain how it believes the Court should differentiate small and large class actions, particularly in the absence of discovery.   Although it acknowledges that a single firm cannot represent individual Plaintiffs and a large class of individuals on identical claims, Edelman Opposition at p. 2, the Edelman firm fails to explain why it can do so if the class action is "small." Moreover, Edelman fails to acknowledge its problematic settlement of an identical FCRA claim recently rejected by the Seventh Circuit. *See, Murray v. GMAC Mortgage Corp*, 434 F.3d 948, 952 (7th Cir. 2006).  In any event, Cooperating Plaintiffs' Counsel are well-aware of the obligation to provide independent representation for sub-classes with competing interests. *Mirfasihi v. Fleet Mortgage Corp.,* No. 2006 WL 1667802 (7th Cir. June 19, 2006).   However, there are no certified classes in this case at this time.  There is not even an operative Complaint.

---

[10] The Edelman firms' assertion that Roddy Klein & Ryan (RKR) also has individual cases in the MDL is simply wrong.  RKR negotiated foreclosure-prevention relief on behalf of class members facing foreclosure without filing individual litigation for them –even though those class members are *not* Plaintiffs in any pending case.  RKR considers it within its obligation as counsel to a putative class to prevent class members from losing the legal right to rescind by operation of law whenever possible. Moreover, RKR prefers to see class members retain their homes pending resolution of the class claims.  However, RKR has not been engaged by any of these class members for individual representation and therefore has no obligation to any of them that is inconsistent with its obligation to obtain the best possible result for them and all other members of the putative class.

Assertions of entitlement to represent different potential and as yet inchoate sub-classes are wholly premature.

The case management issues are now fully briefed. The Cooperating Plaintiffs request that the Court simply rule on the limited number of open case management issues, including the role of the Edelman firm in the proceedings. The Court has already ordered the parties to meet and confer. They have done so and now ask that the remaining issues be determined, as originally contemplated in the Court's order of February 7, 2006 (Docket No. 52), so that the case can move forward.

### III.  THE COURT'S PRIOR RULINGS DO NOT ADDRESS WHETHER THERE SHOULD BE A STAY IN PLACE AFTER JUNE 13, 2006.

Ameriquest argues that Plaintiffs have had four bites at the apple on the question of whether a stay will remain in place in this litigation after June 13, 2006. Ameriquest Opposition at p. 1. This is simply not true. Until this motion, Cooperating Plaintiffs have never requested that the stay be lifted. Although Cooperating Plaintiffs counsel have been informed that the Court made some remarks at the hearing on June 13, 2006 about continuing the stay until an October status conference, Cooperating Plaintiffs note both that there was no motion before the Court on this issue at that time and that they had been directed by the Court that they need not attend the June 13 hearing. (Docket No. 144.)

11

**IV. COOPERATING PLAINTIFFS' COUNSEL COMPLIED WITH THIS COURT'S ORDER OF FEBRUARY, 2006 AND HAVE NEGOTIATED A COMPREHENSIVE PLAN. THEY CANNOT FAIRLY BE ASKED TO CONTINUOUSLY NEGOTIATE WITH COUNSEL WHOSE CASES WERE FILED LONG AFTER THIS MDL PROCEEDING COMMENCED.**

On February 7, 2006, this Court ordered Plaintiffs' counsel to reach consensus on a Joint and Agreed management Plan by June 13, 2006.[11] They did so. Having put in the substantial time to meet the court-imposed deadline, it would be unfair to Counsel to ask them to continually reopen and renegotiate the plan each time a case is transferred until October, 2006. Cooperating Plaintiffs' counsel hope and expect that counsel with late-filed cases will respect the time and effort they have put into the plan and the pending motions related to injunctive relief. They thus expect that such Counsel in late-filed cases will sign on to the plan on behalf of their clients as is common in other MDL proceedings. However, they cannot force counsel to do so, any more than they could require the Edelman law firm to accept the various leadership positions offered to it.

The Cooperating Plaintiffs' Plan thus contemplates that all counsel will retain the right to seek amendments to the proposed Consolidated and Amended Complaint with good cause. (¶ 4). Counsel would also have ten (10) days after transfer of an action to

---

[11] The Court originally proposed that Plaintiffs' counsel organize within 90 days. *See* Transcript of Hearing of February 7, 2006, Defendant's Request for Judicial Notice, Exh. 1, p. 11. (Docket No. 183.) Ameriquest then requested and the Court granted 120 days in order to provide more time for the MDL panel to resolve open issues. Id. at p. 12. Ameriquest now requests a second delay of more than 120 additional days, also for the MDL panel to complete its work. Following that delay, Ameriquest seeks a third 120 day delay to allow it an opportunity file a motion to dismiss anticipated claims. If Ameriquest's plan is accepted, total delay would exceed one year.

object to the application of any court order approving their plan before the plan becomes binding on them.  (¶9).

These provisions protect Plaintiffs in cases that may yet be transferred to the Court.  If a Plaintiff raises a valid basis on which to amend the operative complaint or to obtain relief from the Case Management Order, the Court can consider it when the issue arises.  This treatment is consistent with the strictures of the Manual for Complex Litigation. *See,* Manual for Complex Litigation (Fourth) ¶20.132 (2005).

## V.  ANY DOUBT ABOUT PROCEEDING PRIOR TO OCTOBER, 2006 CAN BE RESOLVED BY PROVISIONAL APPROVAL OF THE CASE MANAGEMENT PLAN AND BY PROVISIONAL APPOINTMENT OF COUNSEL.

Cooperating Plaintiffs' Counsel have moved, in the alternative, for temporary or provisional approval of their case management plan.  If the Court is concerned about the effects of approval on later-transferred cases, the Court can then use the October status conference date as an opportunity to reevaluate the plan and to reconsider provisional appointment.

## CONCLUSION

The Cooperating Plaintiffs ask the Court to allow this case to proceed pending the October status conference, particularly to permit continuation of discovery.  Many of the transferred cases were filed in 2004 and Plaintiffs are anxiously awaiting resolution.[12]

---

[12] Cooperating Plaintiffs' Counsel request oral argument on this motion to address any concerns or questions the Court may pose.

13

Respectfully submitted,

Dated:  July 7, 2006

_____/s/ Kelly M. Dermody_____
Kelly M. Dermody

Kelly M. Dermody (CA Bar No. 171716)
Caryn Becker (CA Bar No. 196947)
LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

_____/s/ Terry Smiljanich_____
Terry Smiljanich

Terry Smiljanich
Jill Bowman
JAMES, HOYER, NEWCOMBER
 & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL  33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

_____/s/ Gary Klein_____
Gary Klein

Gary Klein
Elizabeth Ryan
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA  02111-2810
Telephone:  (617) 357-5500 ext. 15
Facsimile:   (617) 357-5030

*Proposed Plaintiffs' Co-Lead Counsel*

_____/s/ Marvin A. Miller_____
Marvin A. Miller

Marvin A. Miller
MILLER FAUCHER AND CAFFERTY LLP
30 N. LaSalle Street, Suite 3200
Chicago, IL  60602
Telephone:  (312) 782-4880
Facsimile:   (312) 782-4485

*Proposed Plaintiffs' Liaison Counsel*

14

Samuel H. Rudman
Evan J. Kaufman
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173

Michael Donovan
DONOVAN SEARLES LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile: (215) 732-8060

William H. Crowder
Gregory L. Paulson
CROWDER, BEDOR & PAULSON, LLP
555 West 7th Street, Suite 201
St. Paul, MN 55201
Telephone: (651) 225-8330
Facsimile: (651) 204-2134

*Proposed Plaintiffs' Executive Committee*

Daniel S. Blinn
CONSUMER LAW GROUP, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, CT 06067
Telephone: (860) 571-0408
Facsimile: (860) 571-7457

Charles Delbaum
NATIONAL CONSUMER LAW CENTER
77 Summer Street, 10th Floor
Boston, MA 02110
Telephone: (617) 542-8010
Facsimile: (617) 542-8028

*Proposed Plaintiffs' Individual Consumer Claims Steering Committee*

W. Roderick Bowdoin
DARBY PEELE BOWDOIN & PAYNE
P.O. Drawer 1707
Lake City, FL 32056
Telephone: (836) 752-4120
Facsimile: (836) 755-4569

Douglas Bowdoin
DOUGLAS BOWDOIN, P.A.
P.O. Box 2254
Orlando, FL 32802-2254
Telephone: (407) 422-0025
Facsimile: (407) 843-2448

15

J. Craig Bourne
1520 East Livingston Street
Orlando, FL  32801
Telephone:  (407) 894-6750
Facsimile:  (407) 894-4735

Laurence Tien
Kamran Mashayekh
THE TIEN LAW FIRM, LLP
10235 West Little York Road, Suite 470
Houston, TX 77040
Telephone:  (713) 937-0223
Facsimile:  (713) 937-0220

Theresa I. Wigginton
915 Oakfield Drive, Suite F
Brandon, Florida 33511
Telephone:  (813) 653-2992
Facsimile:  (813) 655-7082

Jonathan A. Boynton
Sarah Brite Evans
KIRBY NOONAN LANCE & HOGE, LLP
One America Plaza
600 W. Broadway, Suite 1100
San Diego, CA 92101-3387
Telephone: 619/231-8666
Facsimile: 619/231-9593

Matthew J. Zevin
STANLEY, MANDEL & IOLA, L.L.P.
 550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:  (619) 235-5306
Facsimile:  (815) 377-8419

Andrew S. Kierstead
LAW OFFICE OF ANDREW S. KIERSTEAD
1001 SW Fifth Avenue, Suite 1100
Portland, OR  97204
Telephone:  (508) 224-6246
Facsimile:  (508) 224-4356

Marc R. Stanley
Roger L. Mandel

16

Martin Woodward
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, TX  75205
Telephone: (214) 443-4300
Facsimile: (214) 443-0358

Thomas G. Shapiro
Theodore M. Hess-Mahan
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile:  (617) 439-0134

Richard J. Fuller
1700 US Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
Telephone: (612) 341-1209
Facsimile: (612) 339-3161

David J. George
Robert J. Robbins
Stuart A. Davidson
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432
Telephone:  561/750-3000
Facsimile: 561/750-3364

Gary F. Lynch
36 N. Jefferson Street
New Castle, PA  16101
Telephone: (724) 656-1555

*Additional Plaintiffs' Counsel*