# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROCHELLE WASHINGTON and SIDNEY WASHINGTON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No.  05 C 1007 |
| v. | ) | |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, DEUTSCHE BANK NATIONAL TRUST COMPANY, and AMC MORTGAGE SERVICES, INC., | ) | HONORABLE DAVID H. COAR |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Now before this Court are the parties' cross-motions for summary judgment.

## FACTS[1]

In February 2003, plaintiff Rochelle Whyte Washington received a telephone call at home from Michael Steffens, an employee of Ameriquest Mortgage Company ("Ameriquest"). Steffens solicited Whyte Washington to refinance the mortgage on the home she and her husband owned in Evanston, Illinois. Whyte Washington testified that Steffens told her that Ameriquest would lower her interest rate and monthly payment compared to her then-present mortgage, and that she informed him that she would apply for a new mortgage if it could do those things. Ameriquest disputes that Steffens or any Ameriquest representative ever told

---

[1] This Court takes the following facts from the parties' Local Rule 56.1 statements. The facts are undisputed, unless otherwise noted.

Whyte Washington that they would lower her interest rate or monthly payment. Whyte Washington admits that she did not tell Steffens how much she owed on her existing loan or what her monthly payment was during their first conversation, or discuss what the monthly payment amount on the proposed Ameriquest loan would be during her second conversation with Steffens. During one of two telephone calls with Steffens, Whyte Washington provided her name, her husband Sidney Washington's name, their social security numbers, and their address to Steffens. Whyte Washington was at the time taking the prescription drug Vicodin to manage pain from a severe case of shingles. Steffens informed Whyte Washington that Ameriquest would mail all the necessary loan paperwork to her house.

Whyte Washington has a tenth-grade education. Her husband attended two years of college. Whyte Washington suffers from glaucoma and diabetes and has lost the sight in one eye. In the 1980s, Whyte Washington served approximately six years as an elected alderman in the City of Evanston, Illinois. She never oversaw a budget or finance committee and characterizes herself as "bad with figures." Whyte Washington worked as a travel agent for fifteen-plus years. In approximately 1990, Whyte Washington opened her own travel agency, Sichelle Travel. The business existed for approximately one year but then failed. Whyte Washington handles all the bills for herself and her husband. Washington does not ask questions about finances.

As part of the loan application process, Ameriquest prepared a Good-Faith Estimate and a Preliminary Truth-In-Lending Disclosure Statement, both dated February 14, 2003. The Good Faith Estimate disclosed a thirty-year loan of $100,000 at a variable interest rate of 8.8%, and $5,636 in settlement charges. The preliminary Truth-In-Lending disclosure form disclosed an

-2-

annual percentage rate of 9.32%. Ameriquest then sent a packet of loan paperwork, including the GFE and preliminary Truth in Lending Disclosures, to Whyte Washington via FedEx.

On February 27, 2003, Whyte Washington reviewed the paperwork Ameriquest had sent to her house. She had a question about a disclosure that appeared to indicate she and her husband had requested a cash pay-out of approximately $1,000 for themselves from the loan proceeds. With her husband, she went to the Ameriquest office in Skokie, Illinois, in the late afternoon of February 27, 2003. At the office, which the Washingtons described as set up like a telemarketing operation, they met with Steffens and at least two other Ameriquest employees. Although the Washingtons had no appointment or closing date for their loan application, the Ameriquest employees brought a stack of loan closing paperwork to them and indicated they should complete it. The Washingtons signed or initialed approximately 150 pages of documents, including an Ameriquest form document titled "Borrower's Final Acknowledgment of Loan Terms"; a typed loan application;[2] a note; a mortgage; a HUD-1 Settlement Statement disclosing an "estimated settlement date" of March 6, 2003; a final Truth In Lending Act Disclosure Statement; a "lender's copy" of a Truth In Lending Notice of Right to Cancel; and an Ameriquest form document titled "One-Week Cancellation Period."

The Washingtons did not read any of the documents before they signed them. At most, Ms. Whyte Washington may have "glanced" at them. The Washingtons testified that no one at Ameriquest prevented them from reading the documents, but also testified that the closing

---

[2] The Washingtons did not prepare the loan application. Ameriquest disputes that the evidence shows that it prepared the application. Nonetheless the parties have included a typed loan application in evidence and they do not dispute that it was this application which the Washingtons signed on February 27, 2003.

Case: 1:05-cv-07097 Document #: 212-2 Filed: 07/24/06 Page 5 of 27 PageID #:5625

occurred at the end of the business day and that the Ameriquest employees indicated that the Washingtons should just sign the papers because the office was closing. In addition, the Washingtons testified that Ameriquest employees did not explain what the various documents were or describe their purpose. Whyte Washington characterized the room where the closing occurred as "small" and "dark," and stated that she had difficulty reading the documents.

Ameriquest did not provide the Washingtons with copies of the documents that they could take home with them. Specifically, the Washingtons did not have any copies of the mortgage or the TILA disclosures when they left Ameriquest on February 27, 2003. Instead, Ameriquest employees told the Washingtons that someone would drop off copies at the Washingtons' home within a couple of days. After approximately two weeks, the Washingtons had not received copies of their loan paperwork from Ameriquest. They went back to the Skokie office, where they learned that Michael Steffens had "moved on." An Ameriquest employee photocopied their paperwork while they waited.

In reading the loan paperwork once they returned home, specifically the Final Acknowledgment of Loan Terms form, the Washingtons learned that Ameriquest had made them a thirty-year loan of $193,000 at a variable interest rate of not less than 9.99%[3] and an annual percentage rate of 10.452%. In addition, the settlement charges had increased from $5,777.10 to $9,017.32. These terms differed significantly from the Good Faith Estimate and preliminary Truth in Lending Disclosure. There was only one copy of a completed Notice of Right to Cancel included in the photocopies Ameriquest gave to the Washingtons when they went to the

---

[3] The paperwork disclosed an interest rate margin of 6.5% and also disclosed that the Washingtons' loan could have an interest rate of as high as 15.99%, but never lower than 9.99%.

Ameriquest office. The Ameriquest loan file for the Washingtons' loan likewise contains only one copy of a completed Notice of Right to Cancel Form.

Also included in the photocopied documents were handwritten statements purportedly disclosing that Rochelle Whyte Washington "ma[d]e [$]4,500 p.Mo. (*sic*) as an office manager for Washington Charter home based business," and that Sidney Washington made "[$]6,000 per month as a driver for Washington Charter, home based business." The statements are written in the same handwriting and appear to be signed by Rochelle Whyte Washington and Sidney Washington, respectively. At their depositions, both Whyte Washington and Washington testified that they had never worked for a company called Washington Charter. Indeed, they had never heard of such a company. Neither plaintiff has ever had a home-based business. Whyte Washington testified that she had never worked as an office manager. Washington testified that his position as a PACE bus driver provided his sole income. The Washingtons' combined gross annual income in tax year 2003 was $46,549. Of this, $40,141.48 represented Washington's salary as a bus driver. Whyte Washington received Social Security retirement income, a social security benefit for her daughter and an adoption subsidy for her son. On the Uniform Residential Loan Application photocopied by Ameriquest, Whyte Washington and Washington are listed respectively as office manager and driver of Washington Charter. The form also discloses that Washington has been "employed in this line of work/profession" for two years. At his deposition, Washington testified that he had been a bus driver for PACE (and its predecessors) since 1978.

The loan documents that Ameriquest photocopied included legible copies of both Whyte Washington's and Washington's driver's licenses; a document called "I.D. Verification Form"; a

-5-

document called "Statement of Identity"; and a copy of a merged credit report. All four documents disclose the plaintiffs' social security numbers. According to the dates of birth on the Washingtons' drivers licenses and the Washingtons' own deposition testimony, Whyte Washington was 68 and Washington was 64 in February 2003. By contrast, the Uniform Residential Loan Application lists them both as 61 years old. In addition, the Ameriquest loan file contained a blank "Statement of Identity" form and a blank "Cash-Out Statement" form, both signed by the plaintiffs. It also contained an "I.D. Verification Form" with the plaintiffs' names typed on it and bearing their signatures; no other identification information was provided on the form.

The TILA Disclosure Statement that Ameriquest photocopied for the Washingtons approximately two weeks after their loan closing provides that "payments shall be due beginning" on "05/01/2002." It states that 360 payments will be due and gives the due date of the final payment. The statement does not use the word "monthly" to describe the interval at which payments are due. It does not list the due date of each of the 360 loan payments.[4] Whyte Washington testified at her deposition that her previous mortgage payments had been due monthly and that she understood that the payments on the Ameriquest mortgage would be due monthly as well. When asked at her deposition, however, Whyte Washington could not calculate that 360 months was 30 years.

At the time the Washingtons returned to Ameriquest's office and requested copies of their loan paperwork, Ameriquest provided two documents relating to a borrower's right to

---

[4] Some time after the loan to the Washingtons, Ameriquest changed its TILA Disclosure Statement form to include the word "monthly."

rescind his or her loan. One document was the statutorily-required Notice of Right to Cancel.

The Notice of Right to Cancel states:

> You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS FROM whichever of the following events occurs last:
> 1.   The date of the transaction which is _____; or
> 2.   The date you received your Truth in Lending disclosures; or
> 3.   The date you received this notice of your right to cancel.

The form includes a section titled "How to Cancel" that is set off from the other text of the page

in a box. It directs a borrower to notify Ameriquest of the borrower's decision to cancel in

writing.

> You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights. If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

In addition, "The undersigned each acknowledge receipt of two copies of this NOTICE OF

RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all

given by lender...."

The other was a form created by Ameriquest to reflect Ameriquest's company policy of

allowing borrower a one week loan cancellation period. This One Week Cancellation Period

Form states:

> You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason. This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you. No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing an dating in the request to cancel box below or by using any other written statement that provides your loan number and states you desire to cancel your loan. The written statement must be signed and dated by any one borrower.

The form includes a pre-printed text box stating "I/We want to cancel loan # _____" and

provides space for "Borrower/Owner Signature" and date. The Washingtons testified that they

did not receive any copies of these forms on February 27, 2003. They did receive one copy

approximately two weeks later when they went to Ameriquest's office and requested their loan

paperwork. The Washingtons did not attempt to rescind or cancel their loan during the three or

seven day period after closing or after receiving the loan document photocopies.

The Ameriquest loan file also contains a copy of a final HUD-1 Settlement Statement

bearing a settlement date of March 11, 2003. This HUD-1 Statement was not signed by the

plaintiffs. The plaintiffs testified that Ameriquest never gave them a copy of the March 11, 2003

HUD-1 Statement. The actual loan disbursements do not match the disbursements listed on the

"estimated" HUD-1 Settlement Statement that was provided to the plaintiffs. Some of the

creditors listed on the estimated HUD-1 form were not listed on the final HUD-1 form. Others

were paid amounts less than those listed on the estimated HUD-1 statement.

-8-

Although the Washingtons signed closing documents on February 27, 2003, cancelled checks and other disbursement records indicate that their loan proceeds were not disbursed to the prior mortgagee, to the Washingtons, or to their creditors until May 2003. The disbursement process continued until June 2004. A company called A Title Escrow, Inc. acted as Ameriquest's disbursing agent for the Washington's loan. Ameriquest or its agent attempted to pay off the Washingtons' previous mortgage with Option One on at least one occasion but sent insufficient funds. Option One then sent letters to the Washingtons and left telephone messages informing them that Ameriquest had not fully paid off their note. Both HUD-1 settlement statements and other documents in the Ameriquest loan file indicate that Ameriquest or its agent withheld a portion of the Washingtons' loan proceeds to pay the Washingtons' overdue real estate taxes. But the Washingtons 2001 and 2002 taxes were sold to collection companies as unpaid debts.

After the February 27, 2003 closing, Ameriquest assigned ownership of the Washingtons' loan to Deutsche Bank, which is the loan's present owner. Ameriquest also assigned the servicing rights to the loan to defendant AMC Mortgage Services, Inc. ("AMC"), which is a sister corporation of Ameriquest. Both Ameriquest and AMC are subsidiaries of the same holding corporation, ACC Capital Holdings. AMC is the loan's present servicer.

On June 30, 2004 and again on July 21, 2004, the Washingtons' counsel wrote Ameriquest a letter giving notice that the Washingtons were rescinding their loan for noncompliance with the Truth in Lending Act. In addition, plaintiffs requested an account history so they could calculate the amount they needed to tender for rescission. Ameriquest responded on August 5, 2004 and again on August 11, 2004, with a request for additional information about the alleged noncompliance with TILA in order to determine if a violation

occurred. Plaintiffs responded on August 11, asserting that the final Truth in Lending statement Ameriquest provided to the Washingtons failed to disclose either all the payment due dates or the payment intervals or frequency. In addition, the Washingtons contended that providing both the TILA Notice of Right to Cancel and Ameriquest's "One Week Cancellation Period" notice was confusing and misleading. Ameriquest, in a letter dated August 30, 2004, denied that they had violated TILA but provided an account history and, in the interest of resolving the Washingtons' concerns "amicably," "offer[ed] them the option of rescinding their loan [by September 30, 2004] in the same manner as if a TILA violation had occurred." The Washingtons then attempted to get a loan from another lender. They requested, and were given, two extensions of Ameriquest's deadline, first to November 30, 2004, and then to January 31, 2005. Ameriquest, however, refused to delete negative credit reporting from the Washingtons' credit records. Whyte Washington testified at her deposition that she found a lender willing to refinance her mortgage but that her attorneys' fees would have raised her monthly payment back to the level of the Ameriquest mortgage, which she could not afford. Plaintiffs could not find another lender to refinance their loan.

Plaintiffs filed this lawsuit on February 18, 2005, alleging that Ameriquest violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2. Now before this Court are the parties' cross-motions for summary judgment, which are fully briefed and ripe for judgment.

**STANDARD OF REVIEW**

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001). "If, however, the record as a whole 'could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Id.* Once a motion for summary judgment has been filed, "the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial." *Liu v. T&H Machine, Inc.*, 191 F.2d 790, 796 (7th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-movant must provide more than a "mere scintilla" of evidence to carry its burden under the summary judgment standard. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, weighing evidence, making credibility determinations, and drawing reasonable inferences are functions of a jury, not of a judge deciding a summary judgment motion. *Id.* at 255.

**ANALYSIS**

Congress enacted the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, to protect consumers and promote the "informed use of credit." TILA requires creditors to clearly and conspicuously disclose certain terms and costs to consumers before a credit transaction occurs. *See* 12 C.F.R. § 226.17. The "sufficiency of TILA-mandated disclosures is to be viewed from the

-11-

standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." *Smith v. Cash Store Mgmt.*, 195 F.3d 325, 328 (7th Cir. 1999) (internal quotation marks omitted).

It is "well settled" law in the Seventh Circuit that a borrower may recover under TILA even if she has not suffered any actual damages or been misled. *Brown v. Marquette Savs. & Loan Ass'n*, 686 F.2d 608, 614 (7th Cir. 1982). Instead, TILA acts as a kind of strict liability statute.

> It is not sufficient to attempt to comply with the spirit of TILA in order to avoid liability. Rather, strict compliance with the required disclosures and terminology is required. Many violations of TILA involve technical violations without egregious conduct of any kind on the part of the creditor. However, Congress did not intend that creditors should escape liability for merely technical violations.

*Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 416 (7th Cir. 1980), *rev'd on other grounds*, *Pridegon v. Gates Credit Union*, 683 F.2d 182 (7th Cir. 1982) (internal citations omitted). Thus, "[s]ubject to narrow exceptions, hypertechnicality reigns in the application of TILA." *Cash Store Mgmt.*, 195 F.3d at 328.

Defendant Ameriquest argues that this Court should summarily grant summary judgment in their favor because Plaintiffs improperly raise "new" allegations and theories in their motion for summary judgment and supporting briefs. Parties may not raise new theories in responsive briefs, and courts will strike such arguments. Here, however, Plaintiffs' so-called new theories appear in their motion for summary judgment, not in their opposition to Defendant's motion. The arguments do not come as a "surprise" to Ameriquest. *See, e.g., Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004). Defendant's argument fails.

**Defendant Ameriquest's Motion for Summary Judgment**

Ameriquest moves for summary judgment on both counts of Plaintiffs' Amended Complaint. Ameriquest contends that it clearly and conspicuously disclosed Plaintiffs' right of rescission as TILA requires and that Ameriquest's One Week Cancellation Form did not confuse the Washingtons. In addition, Ameriquest argues that it properly disclosed the loan re-payment schedule in keeping with TILA's requirements. Finally, Ameriquest asserts that Plaintiffs' ICFA claim is barred by the statute of limitations and that, in any event, the Washingtons failed to plead with sufficient particularity or to provide damages of any actual damages.

As Defendant concedes, this Court recently addressed a very similar fact pattern involving the Notice of Right to Rescind and the One Week Cancellation Form. *See Jones v. Ameriquest*, No. 05-0432, slip op. (N.D. Ill. Jan. 31, 2006). As discussed more fully in *Jones*, this Court finds that a reasonable fact finder could determine that providing both the TILA notice and the Ameriquest notice confuses an ordinary consumer. The method of counting the days of the rescission period differs between the two forms. TILA's consumer protection requirements cover only the TILA three-day rescission period. Ameriquest's One Week Cancellation form, however, does not inform consumers that they might lose some of the protection TILA provides if they wait longer than three days to rescind their credit transaction. As in *Jones*, this Court declines to follow *Hamm v. Ameriquest Mortgage Co.*, No. 05 C 227, 2005 WL 2405804 (N.D. Ill. Sept. 27, 2005), which also considered whether Ameriquest's One Week Cancellation Form violated TILA. The *Hamm* opinion provided only minimal discussion of TILA and omitted any discussion of the "hypertechnical" TILA standard in this Circuit. *Id.*

-13-

Defendant next contends that they properly disclosed the re-payment schedule for the Washingtons' mortgage. TILA's implementing regulation, "Regulation Z," and the accompanying commentary do not expressly require the use of the word "monthly" (or "weekly" or whatever the case may be) in the Disclosure Statement. 12 C.F.R. § 226.18(g). Instead, the Federal Reserve Board Commentary ("FRB Commentary") on Regulation Z states that creditors must disclose the timing of payments. "To meet this requirement creditors may list all of the payment due dates. They also have the option of specifying the period of payments scheduled to repay the obligation." 12 C.F.R. pt. 226 Supp. I. The final Truth-in-Lending Disclosure Statement for the Washingtons' mortgage provides the following information:

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|
| 359 | $1,692.29 | 05/01/2003 |
| 1 | $1,685.75 | 04/01/2033 |

The word "monthly" does not appear anywhere on the form. Ameriquest argues that a reasonable borrower would have understood from the form that payments were due on the first day of every month for a period of 360 months. The actual mortgage note states explicitly that payments are due "monthly." Ameriquest contends that the "total mix of information" thus clearly notifies the consumer of the loan re-payment schedule. Further, it argues that it followed the FRB Commentary but used numbers to disclose the payment periods rather than words. Ameriquest urges this Court to follow two unreported district court opinions, *Hamm* and *Redner v. Bailey & Assocs.*, No. 90 C 20137, 1991 WL 325529 (N.D. Ill. Dec. 17, 1991), which it describes as

-14-

"consistent with the letter and spirit of TILA." (Defs.' Mtn. for Summ. J., at 8.) That is not,

however, the standard in this Circuit.

Instead, courts in the Seventh Circuit construe TILA liberally in favor of consumers and

"hypertechnicality reigns." *Cash Store Mgmt.*, 195 F.3d at 328. Further, plaintiffs need not show

actual harm from TILA violations. *Brown*, 686 F.2d at 614. Section 1638 requires creditors to

disclose the "number, amount, and due dates or period of payments scheduled to repay the total

of payments." 15 U.S.C. § 1638(a)(6). Regulation Z directs creditors to disclose the "number,

amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g).

Finally, the FRB Commentary states that creditors may meet the Regulation Z requirement by

listing "all of the payment due dates" or

> specifying the 'period of payments' scheduled to repay the obligation. As a
> general rule, creditors that choose this option must disclose the payment intervals
> or frequency, such as 'monthly or bi-weekly,' and the calendar date that the
> beginning payment is due.

12 C.F.R. Pt. 226, Supp. I, ¶ 18(g)(4). The FRB Commentary is dispositive unless

"demonstratively irrational." *Clay v. Johnson*, 264 F.3d 744, 748 (7th Cir. 2001) (citing *Ford

Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565-66 (1980)). Ameriquest did not comply with

the FRB Commentary because it neither listed all of the payment dates nor disclosed the

payment intervals or frequency. Instead, it disclosed the first and last payment due dates and the

total number of payments. It does not matter that Whyte Washington testified that she assumed

payments were due monthly. TILA requires a creditor like Ameriquest to provide "material

disclosures" to consumers "clearly and conspicuously." 12 C.F.R. 226.23(a)(3). The "total of

payments, the number and amount of payments, [and] the due dates or periods of payments" are

"material disclosures." 15 U.S.C. § 1602(u). If the creditor fails to deliver the required notice of

material disclosures, the consumer's right to rescind is automatically extended from three

business days to three years. 12 C.F.R. § 226.23(a)(3). Ameriquest violated TILA by failing to

properly disclose the payment schedule and Plaintiffs accordingly asserted their right to rescind

in timely fashion.

Plaintiffs also seek statutory damages under TILA. Defendant contends that the

Washingtons are not entitled to statutory damages in addition to rescission of their mortgage

loan. Section 1640(e) provides that "[a]ny action under this section may be brought ... within one

year from the date of occurrence of the violation." 15 U.S.C. § 1640(e). As a general matter, the

date a violation occurs is the date the credit transaction was consummated. *Jenkins v. Mercantile*

*Mortgage Co.*, 231 F. Supp. 3d 737, 745 (N.D. Ill. 2002). Failure to bring "an action for damages

within [this] one-year limitation period bars the action." *Basham v. Fin. Am. Corp.*, 583 F.2d

918, 927 (7th Cir. 1978). Actions for rescission are not bound by the one-year limitations period.

*Basham*, 583 F.2d at 928 n.17 (citation omitted). Ameriquest argues that the "date of

occurrence" was February 27, 2003, when the Washingtons signed their closing documents. The

Washingtons dispute this, arguing that account statements from A Title Escrow, the settlement

and disbursing agent for their loan, indicate that payments did not begin until May 2003 and

continued until June 2004. The Washingtons encourage this Court to adopt the reasoning of a

District of Massachusetts case, *McIntosh v. Irwin Union Bank & Trust Co.*, 215 F.R.D. 26, 30

(D. Mass. 2003). The *McIntosh* court held that when a consumer had an extended right to rescind

because of a TILA violation, the statute of limitations for all the damages they seek, including

statutory damages, extends to three years. *Id.* At least one court in this district previously

adopted a similar approach, finding that a lender's improper failure to rescind gives rise to

-16-

statutory damages. *Mount v. LaSalle Bank Lake View*, 886 F. Supp. 650, 651 (N.D. Ill. 1995) (citing *Elliott v. ITT Corp.*, 764 F. Supp. 102, 106 (N.D. Ill. 1991); *Malfa v. Household Bank, F.S.B.*, 825 F. Supp. 1018, 1020 (S.D. Fla. 1993)).

Summary judgment is denied on Defendant's motion as to Plaintiffs' count I and entered in favor of Plaintiffs on their motion.

**Illinois Consumer Fraud Act Claim**

Ameriquest seeks summary judgment on the Washingtons' ICFA claim on the grounds that they failed to plead with sufficient particularity that Ameriquest told them their monthly payments would be lower than their existing mortgage. In order to prevail under ICFA, a plaintiff must show (1) a deceptive act or practice by defendant; (2) that defendant intended that plaintiff rely on deception; (3) the deception occurred in course of conduct involving trade or commerce; (4) plaintiff suffered actual damage; and (5) the damage was proximately caused by the deception. 815 ILCS 505/2 *et seq.*; *see also Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005) (citing *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002)). Whyte Washington testified at her deposition that Steffens told her in one of their two telephone conversations that Ameriquest would offer lower monthly payments; she also stated that lowering her payments was one of her primary reasons for applying for the Ameriquest mortgage. It is undisputed that the Good Faith Estimate and preliminary Truth in Lending Disclosure form disclosed lower monthly payments and a lower interest rate than ultimately applied to the Washingtons' loan. But Whyte Washington also admitted that she did not read the closing paperwork which disclosed these higher payments and higher interest rate. The Washingtons contend that they have pled sufficiently actual damages to entitle them to recover

-17-

under ICFA. Namely, they were damaged in the amount of the difference between the loan terms that were promised initially and the final terms; they also contend that Ameriquest reported negative information about them to the credit-reporting bureaus and damaged their credit ratings. Plaintiffs' evidence consists of Whyte Washington's testimony about the conversations she had with Steffens, and the pre-closing disclosure statements, both of which are marked "preliminary" and which state that the loan terms may change. Taking this evidence in the light most favorable to the plaintiffs, as this court must on defendant's motion, this Court finds that there remains a dispute–albeit a slight one–about whether Ameriquest misrepresented the terms of the loan. Indeed, the evidence turns on the credibility of Whyte Washington's testimony, which is a quintessential question for the finder of fact. *See, e.g., Collier v. Budd*, 66 F.3d 886, 893 (7th Cir. 1995). Ameriquest's motion for summary judgment on Plaintiffs' Count II is denied.

**Plaintiffs' Motion for Summary Judgment**

For the reasons discussed above, Plaintiffs' motion for summary judgment on Count I is granted; their motion for summary judgment as to Count II is denied for the reasons just discussed. Because this Court finds that Plaintiffs prevail on their notice of right to rescind claim, it need not reach Plaintiffs' other arguments.

## Conclusion

For the foregoing reasons, Defendant Ameriquest's motion for summary judgment is DENIED. Plaintiffs Rochelle Whyte Washington and Sidney Washington's motion for summary judgment is GRANTED as to Count I of their amended complaint and DENIED as to Count II. Trial may proceed on the issue of liability on Plaintiffs' Count II and damages.

Enter:

/s/ David H. Coar

_____

David H. Coar
United States District Judge

Dated: **July 11, 2006**

-19-

## Jared Andersen

| | |
|---|---|
| **From:** | usdc_ecf_ilnd@ilnd.uscourts.gov |
| **Sent:** | Wednesday, July 12, 2006 2:44 PM |
| **To:** | ecfmail_ilnd@ilnd.uscourts.gov |
| **Subject:** | Activity in Case 1:05-cv-01007 Washington et al v. Ameriquest Mortgage Company et al "memorandum opinion and order" |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.**

### United States District Court

### Northern District of Illinois - CM/ECF LIVE, Ver 2.5

Notice of Electronic Filing

The following transaction was received from hp, entered on 7/12/2006 at 2:43 PM CDT and filed on 7/11/2006

**Case Name:** Washington et al v. Ameriquest Mortgage Company et al
**Case Number:** 1:05-cv-1007
**Filer:**
**Document Number:** 103

**Docket Text:**
MEMORANDUM Opinion and Order Signed by Judge David H. Coar on 7/11/2006:Mailed notice(hp, )

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040059490 [Date=7/12/2006] [FileNumber=2582761-0
] [9eb662240d623342854bda53ece9f123748ce9bcc78d82c7339ce2ea72278ee5b6a
8caebe8eae974d1e8cb2d484a341007dba2a6d5fa6a2fbc9510f57c86a6f2]]

**1:05-cv-1007 Notice will be electronically mailed to:**

Cathleen M. Combs     ccombs@edcombs.com

Joshua D. Davidson     jdavidson@vblhc.com,

Daniel A. Edelman     courtecl@edcombs.com, dedelman@edcombs.com

Harold B. Hilborn     hhilborn@vblhc.com

Albert F Hofeld , Jr     ahofeld@edcombs.com

James O. Latturner     jlatturner@edcombs.com

Jonathan N. Ledsky    jledsky@vblhc.com, sortega@vblhc.com

Jaime S. Roginski-Kord    jroginskikord@vblhc.com, roginskikord@yahoo.com

Craig Allen Varga    cvarga@vblhc.com,

**1:05-cv-1007 Notice will be delivered by other means to:**

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY JONES, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  05-CV-0432 |
| v. | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | HONORABLE DAVID H. COAR |
| AMERIQUEST MORTGAGE | | |
| SECURITIES, INC., and AMC | | |
| MORTGAGE SERVICES, INC., | | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER REGARDING JUDGMENT

This is an action to rescind Shirley Jones' ("Plaintiff's") mortgage and recover statutory damages for violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. On January 31, 2006, this Court granted in part and denied in part Plaintiff's motion for summary judgment against Defendants Ameriquest Mortgage Company, Ameriquest Mortgage Securities, Inc., and AMC Mortgage Services, Inc. (collectively, "Defendants"). On June 13, 2006, this Court ordered the parties to confer and attempt to reconcile their differences as to what amounts Plaintiff has paid to Defendants under her mortgage loan. The parties reached an agreement and, on June 30, 2006, filed a stipulation regarding the rescission calculation.

Pursuant to the agreement, the rescission calculation is: (a) $51,800.00 (the principal amount of the loan); (b) less $3,354.69 (the closing costs, including per diem interest, and excluding any amounts for property insurance or property taxes); (c) less $23,903.00 (the

-1-

payments to date, excluding amounts for property insurance, property taxes, and third-party costs, such as for credit life insurance and credit accident and health insurance); (d) less $849.20 (the positive escrow balance). This calculation yields the rescission amount of $23,693.11.

Plaintiff, therefore, is ordered to tender to Defendant Ameriquest Mortgage Securities, Inc. (the present holder of Plaintiff's loan) $23,693.11. Plaintiff is ordered to close on her new loan within thirty days of this Order. In accordance with Plaintiff's unopposed request, within seven days after the closing, Defendant Ameriquest Mortgage Securities, Inc. is ordered to tender directly to Plaintiff $2,000.00 in statutory damages. See 15 U.S.C. 1640(a). Finally, Defendant Ameriquest Mortgage Securities, Inc. is ordered to release its mortgage on Plaintiff's property within seven days after Plaintiff has paid the remaining balance of her loan to Defendants. Cf. 15 U.S.C. § 1635(b). This case is moot as to all other Defendants.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **July 17, 2006**

## Sagar Shah

**From:** usdc_ecf_ilnd@ilnd.uscourts.gov
**Sent:** Tuesday, July 18, 2006 12:03 PM
**To:** ecfmail_ilnd@ilnd.uscourts.gov
**Subject:** Activity in Case 1:05-cv-00432 Jones v. Ameriquest Mortgage Company "memorandum opinion and order"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.**

### United States District Court

### Northern District of Illinois - CM/ECF LIVE, Ver 2.5

Notice of Electronic Filing

The following transaction was received from mjc, entered on 7/18/2006 at 12:02 PM CDT and filed on 7/17/2006
**Case Name:**         Jones v. Ameriquest Mortgage Company
**Case Number:**       1:05-cv-432
**Filer:**
**WARNING: CASE CLOSED on 07/17/2006**
**Document Number:** 119

**Docket Text:**
MEMORANDUM Opinion and Order regarding Judgment Signed by Judge David H. Coar on 7/17/2006.(mjc, )

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040059490 [Date=7/18/2006] [FileNumber=2600471-0
] [4328febed232f0b0eb9b3cf2ce14907cf9d0de513f9e0edd2d2953d49752970bab2
4691f29339f0a419a035d3401337f1f2f1f79306937c9f924a3e8fde6fa2e]]

**1:05-cv-432 Notice will be electronically mailed to:**

Cathleen M. Combs      ccombs@edcombs.com

Daniel A. Edelman      courtecl@edcombs.com, dedelman@edcombs.com

Albert F Hofeld , Jr      ahofeld@edcombs.com

James O. Latturner      jlatturner@edcombs.com

Jonathan N. Ledsky      jledsky@vblhc.com, sortega@vblhc.com

7/18/2006

Jaime S. Roginski-Kord    jroginskikord@vblhc.com, roginskikord@yahoo.com

Craig Allen Varga    cvarga@vblhc.com,

**1:05-cv-432 Notice will be delivered by other means to:**