## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO: *GBUREK v. ARGENT MORTGAGE CO., LLC, et al.*, N.D. Ill. Case No. 06-2639 | (Centralized before The Honorable Marvin E. Aspen) |
| | [Notice of Presentment, Motion and Declaration of Bernard E. LeSage filed concurrently herewith] |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION FOR REASSIGNMENT OF *GBUREK V. ARGENT MORTG. CO., LLC, et al.*

### I.      INTRODUCTION

On June 13, 2006, this Court held a hearing on two motions to reassign over 20 cases to this multidistrict litigation ("MDL") proceeding. One of the cases at issue in the motions was *Gburek v. Argent Mortgage Co., LLC, et al.*, Northern District of Illinois Case No. 06-2639 (J. Castillo).

The parties present at the June 13, 2006 hearing stipulated on the record to the reassignment of all of the cases in the motions to this Court. Counsel for plaintiff in *Gburek*, however, did not appear at the June 13, 2006 hearing or otherwise file a formal objection to the reassignment of *Gburek* prior to the hearing. After the hearing, counsel for plaintiff in *Gburek* represented that he did not receive a copy of the motion seeking to reassign *Gburek* until after the June 13, 2006 hearing and that, had he received the motion prior to the hearing, he would have objected to the reassignment of *Gburek*. In an effort to cooperate and because counsel for plaintiff in *Gburek* had previously informally advised Defendants'[1] counsel of his objection to reassignment, Defendants agreed to remove *Gburek* from the previously filed stipulation and renew their motion to reassign to allow Gburek's counsel an opportunity for formal objection.

---

[1] "Defendants" collectively refers to Ameriquest Mortgage Company; Ameriquest Mortgage Securities, Inc.; AMC Mortgage Services, Inc.; Ameriquest Capital Corporation; Argent Mortgage Company, LLC ("Argent"); and Town & Country Credit Corporation.

1

Pursuant to Northern District of Illinois Local Rule 40.4(c), Defendants now renew their motion (the "Renewed Motion") to reassign *Gburek* to this Court. As further detailed below, reassignment of *Gburek* clearly remains warranted here.

First, *Gburek* is "related" under Local Rule 40.4(a) to one or more actions in this MDL proceeding. Plaintiff in *Gburek* claims that Defendant Argent violated the Truth-in-Lending Act, 15 U.S.C. Section 1601, *et seq.* ("TILA"), by failing to provide him with proper notice of his rescission rights. There presently are more than 150 actions in the MDL proceeding that advance the same allegations. Twenty-five of these actions are brought against Argent.

Furthermore, all of the conditions for reassignment of *Gburek* under Local Rule 40.4(b) are satisfied here. That is, *Gburek* is pending before another judge in this District; the handling of *Gburek* by this Court will result in a substantial saving of judicial time and effort; *Gburek* has not progressed to the point where transferring it to this Court would be likely to delay the proceedings therein substantially; and *Gburek* and the actions in this MDL proceeding are susceptible to disposition in a single proceeding because they have substantial areas of overlap. Accordingly, Defendants respectfully request that this Court grant this Renewed Motion in its entirety.

## II.     RELEVANT PROCEDURAL HISTORY[2]

On March 16, 2006, Defendants filed a Motion for Reassignment of Related Cases ("Defendants' First Reassignment Motion"), seeking reassignment of 30 cases pending before other judges in the Northern District of Illinois to this Court for pretrial proceedings along with the other actions in the MDL proceeding. [Docket No. 81.] On March 31, 2006, plaintiffs in six other cases against certain Defendants pending in the Northern District of Illinois filed a Cross Motion for Reassignment of Related Cases ("Plaintiffs' First Reassignment Motion"), seeking reassignment of their cases to this Court for pretrial proceedings along with the other actions in the MDL proceeding. [Docket No. 99.] On April 4, 2006, this Court ordered the reassignment

---

[2] Defendants have set forth a complete procedural history of this MDL proceeding in numerous filings before the Court, including their two previous motions for reassignment of cases. For the sake of economy and convenience, Defendants do not repeat that history herein, but rather incorporate it from their previous motions for reassignment of cases. [*See* Docket Nos. 81 and 150.]

of 28 of the 36 cases identified in Defendants' First Reassignment Motion and Plaintiffs' First Reassignment Motion to this Court. [Docket No. 110.][3]

On April 20, 2006, plaintiffs in 13 other cases against certain Defendants pending in the Northern District of Illinois filed a Second Motion for Reassignment of Related Cases ("Plaintiffs' Second Reassignment Motion"), seeking reassignment of their cases to this Court for pretrial proceedings along with the other actions in the MDL proceeding. [Docket No. 114.] On April 26, 2006, this Court ordered the reassignment of all of the cases identified in Plaintiffs' Second Reassignment Motion to this Court. [Docket No. 118.]

On June 7, 2006, plaintiffs in 22 other cases against certain Defendants pending in the Northern District of Illinois filed a Third Motion for Reassignment of Related Cases ("Plaintiffs' Third Reassignment Motion"), seeking reassignment of their cases to this Court for pretrial proceedings along with the other actions in the MDL proceeding. [Docket No. 145.] Plaintiffs' Third Reassignment Motion was scheduled to be heard on June 13, 2006. [Docket No. 146.]

On June 8, 2006, Defendants filed their Second Motion for Reassignment of Related Cases ("Defendants' Second Reassignment Motion"), seeking to reassign certain matters to this MDL proceeding, including *Gburek*. [Docket No. 150.] Defendants' Second Reassignment Motion was scheduled to be heard on June 13, 2006 as well. [Docket No. 151.]

The parties present at the June 13, 2006 hearing agreed on the record that a Stipulation and Order would be submitted to the Court, pursuant to which all cases included in Plaintiffs' Third Reassignment Motion and Defendants' Second Reassignment Motion to which no objection was filed would be reassigned to this Court. [Declaration of Bernard E. LeSage ("LeSage Decl."), ¶ 2.] On June 14, 2006, those parties present at the June 13, 2006 hearing filed a Stipulation seeking to reassign 26 cases, including *Gburek*. [Docket No. 171.]

Counsel for plaintiff in *Gburek* did not appear at the June 13, 2006 hearing or otherwise file a formal objection to the reassignment of *Gburek* prior to the hearing. [LeSage Decl., ¶ 3.] On or about June 14, 2006, counsel for plaintiff in *Gburek* represented that he did not receive Defendants' Second Reassignment Motion until after the June 13, 2006 hearing and that, had he received the Motion prior to June 13, 2006, he would have objected to the reassignment of *Gburek*. In an effort to cooperate and because counsel for Gburek had previously informally

---

[3] The Court deferred consideration of the remaining eight cases based on the representation of plaintiffs' counsel in those cases that the actions would soon be resolved through settlement or by motion.

advised Defendants' counsel of his objection to reassignment, Defendants agreed to remove *Gburek* from the previously filed Stipulation and renew their motion to reassign to allow Gburek's counsel an opportunity for formal objection. [*Id.*] On June 21, 2006, the parties filed an Amended Stipulation and Order removing *Gburek* from the original Stipulation. [Docket No. 175.] The Court entered the Amended Stipulation on June 28, 2006. [Docket No. 190.]

On June 28, 2006, however, the Court entered a Minute Order ("June 28 Minute Order") granting Defendants' Second Reassignment Motion and apparently ordering the reassignment of *Gburek* to this Court. [Docket No. 189.][4] Nevertheless, *Gburek* has yet to be reassigned to this Court, and, in compliance with the Amended Stipulation, Defendants now renew their Second Reassignment Motion as to *Gburek*.

## III. ARGUMENT

To have a case reassigned based on relatedness, the movant must satisfy both Local Rule 40.4(a) and (b). *Donahue v. Elgin Riverboat Resort*, No. 04 C 816, 2004 WL 2495642, at *2 (N.D. Ill. Sept. 28, 2004). This Court has the sound discretion to reassign a case under Local Rule 40.4. *Clark v. Ins. Car Rentals Inc.*, 42 F. Supp. 2d 846, 847 (N.D. Ill. 1999).

Local Rule 40.4(a) provides that cases are "related" if: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law, (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are of the same. Rule 40.4(a) "does not require complete identity of issues in order for cases to be considered related." *Fairbanks Capital Corp. v. Jenkins*, No. 02-C-3930, 2002 WL 31655277, at *2 (N.D. Ill. Nov. 25, 2002). Rather, it is enough that the two cases "involve *some* of the same issues of fact or law." *Lawrence E. Jaffe Pension Plan v. Household Int'l., Inc.*, No. 02-C-5893, 2003 WL 21011757, at *3 (N.D. Ill. May 5, 2003) (emphasis in original).

---

[4] In light of the Court's June 28 Minute Order and counsel for plaintiff in *Gburek*'s belated objection to the reassignment of *Rogers v. Town & Country Credit Corporation, et al.* (another case in which he is counsel for plaintiff), the parties entered into a further stipulation on July 19, 2006, in which they agreed that the June 28 Minute Order should be vacated as to *Gburek* and *Rogers*, and Defendants shall have the right to renew their request to reassign these cases. [Docket No. 207.] Defendants do not renew their motion to reassign *Rogers* at this time because the Court has not yet signed the Order accompanying the Stipulation and *Rogers* remains assigned to this Court. Should the Court sign the Order, Defendants will renew their motion to reassign *Rogers* at that time.

Once the cases have been found to be related, Local Rule 40.4(b) imposes four additional conditions that must be satisfied before a case may be reassigned: (1) both cases must be pending in the Northern District of Illinois; (2) reassignment must result in a substantial saving of judicial time and effort; (3) the earlier case must not have progressed to the point where designating the cases as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases must be susceptible of disposition in a single proceeding. As demonstrated below, reassignment of *Gburek* to this Court satisfies the requirements of Local Rules 40.4(a) and (b), and the Court should grant this Renewed Motion.

A.   *Gburek* **Is "Related" Under Local Rule 40.4 To Many Actions In This MDL Proceeding.**

In *Gburek*, plaintiff alleges that Argent violated TILA by failing to provide him proper notice of his rescission rights. [Complaint, ¶¶ 24, 40.][5] Presently, there are more than 150 actions in this MDL proceeding that involve allegations that Defendants violated TILA by failing to provide borrowers with proper notice of their rescission rights, and 25 of these actions are brought against Argent. [LeSage Decl., ¶ 4.] Accordingly, *Gburek* is "related" to these actions within the meaning of Local Rule 40.4(a).

B.   **All Of The Conditions For Reassignment Of** *Gburek* **Under Local Rule 40.4(b) Are Satisfied Here.**

All of the conditions for reassignment of *Gburek* under Local Rule 40.4(b) are satisfied here. To begin with, *Gburek* is pending before another judge in this District. Furthermore, the handling of *Gburek* by this Court unquestionably will result in a substantial saving of judicial time and effort. Indeed, the Seventh Circuit Court of Appeals has criticized judges of this Court for permitting separate lawsuits involving similar claims and the same defendants to proceed along different tracks before different judges, resulting in numerous and disparate decisions, as well as multiple appeals. *See, e.g., Smith v. Check-N-Go of Illinois, Inc.*, 200 F.3d 511, 513 (7th Cir. 1999).

Moreover, *Gburek* was filed in May 2006 and it has not progressed to the point where designating it related would be likely to delay the proceedings therein substantially. Finally, *Gburek* and the actions in this MDL proceeding are susceptible to disposition in a single proceeding because they all assert common legal claims under TILA. Accordingly, the Court

---

[5] A true and correct copy of the Complaint in *Gburek* is attached hereto as Exhibit 1.

BN 946343v3

should reassign *Gburek* to this Court for pretrial proceedings along with the other actions in the MDL proceeding.

**C.**     **Any Issues Regarding The Severance Of Claims Should Be Dealt With By This Court After Reassignment Of *Gburek*.**

Defendants anticipate that plaintiff in *Gburek* will argue that reassignment is inappropriate because his action involves two separate loans. While this does not provide grounds for denial of reassignment, to the extent Gburek believes these matters cannot be handled simultaneously, the simple solution would be to reassign *Gburek* to this Court and allow plaintiff to move to sever any claims he believes are unrelated.

///

///

///

6

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Renewed Motion in its entirety.

DATED: August 15, 2006

Respectfully submitted,

By: /s/  Bernard E. LeSage

*Attorneys for Defendants Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage
Sarah K. Andrus
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

DATED: August 15, 2006

By: /s/ Thomas J. Wiegand

*Attorneys for Argent Mortgage Company, LLC*

Thomas J. Wiegand
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

7

**Exhibit 1**

FILED

IN THE UNITED STATES DISTRICT COURT    J N
FOR THE NORTHERN DISTRICT OF ILLINOIS,    MAY 1 1 2006
EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CAMILLE J. GBUREK,                            )
                                              )
            Plaintiff,                        )
                                              )
      v.                                      )    JURY DEMANDED
ARGENT MORTGAGE, WMC MORTGAGE                 )
GRAND MORTGAGE, RESIDENTIAL PLUS              )
MORTGAGE CORP., ABRAHAM BEDDAOUI              )    **06CV2639**
JPMORGAN CHASE BANK, N.A., FV-1 INC.          )
MORTGAGE ELECTRONIC REGISTRATION              )    **Judge CASTILLO**
SYSTEMS, INC.,                                )    **Mag. BROWN**
            Defendants.                       )

## COMPLAINT

## MATTERS COMMON TO MULTIPLE CLAIMS

### INTRODUCTION

1.      Plaintiff, Camille J. Gburek, brings this action against mortgage lenders

Argent Mortgage, WMC Mortgage, and mortgage brokers, Grand Mortgage, Residential Plus

Mortgage Corp. and Abraham Beddaoui to secure redress from predatory and fraudulent lending

practices. Plaintiff seeks to rescind three residential mortgage loans for violation of the Truth in

Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board

Regulation Z, 12 C.F.R. part 226 and have named JPMorgan Chase Bank N.A., MERS and FV1-Inc.

as these companies own or have an interest in the loans.

### JURISDICTION

2.      This Court has jurisdiction under 28 U.S.C. §1331 (general federal question),

15 U.S.C. §1640 (TILA) and 28 U.S.C. §1367 (supplemental jurisdiction). Venue in this District is

proper because defendants transact business here.

1

## PARTIES

3.    Plaintiff, Camille J. Gburek, is a sixty four year old women who resides alone in her home in Park Ridge Illinois.

4.    Defendant Argent Mortgage ("Argent") is an affiliate of Ameriquest Mortgage Company and is a national lender located in California. Its registered agent is National Registered Agents Inc. located at 200 W. Adams, Chicago, Illinois.

5.    Argent is a creditor as defined in TILA and implementing Federal Reserve Board Regulation Z.

6.    Defendant WMC Mortgage Corp. ("WMCf") is a national lender located in California. Its registered agent is Prentice Hall Corporation located at 33 N. LaSalle St., Chicago, Illinois.

7.    WMC is a creditor as defined in TILA and implementing Federal Reserve Board Regulation Z.

8.    Defendant Grand Mortgage is located in Oak Brook Terrace, Illinois.   It is engaged in the business of a mortgage broker and conducts business in Illinois.

9.    Defendant Residential Plus Mortgage Corp. is located in Des Plaines, Illinois. It is engaged in the business of a mortgage broker and conducts business in Illinois.

10.    Defendant Abraham Beddaoui is the president of Residential Plus Mortgage Corp. and was personally involved in the transactions that plaintiff is complaining of herein.

11.    JPMorgan Chase Bank N.A., Mortgage Electronic Systems (MERS) and FV1-Inc. have an interest in the loans that plaintiff is seeking to rescind. As such, they are necessary parties to this action.

2

## FACTS RELATING TO PLAINTIFF'S PREVIOUS AMERIQUEST LOANS

12.     Plaintiff has been the victim of predatory lending and inappropriate refinances that benefitted the lenders and mortgage brokers at the great expense to her.

13.     For example, plaintiff refinanced with Ameriquest on August 7,2002 and again June 19, 2003. For the June 19, 2003 loan, Ameriquest charged plaintiff a $50,945.63 pre-payment penalty to refinance its own loan. Ameriquest also paid itself a 4.191% discount fee equaling $14,626.59 as well as other lender fees equaling $1.285.00 for a loan with a two year fixed interest rate at 8.850% that increased by 6% at the first change date. The loan included a three year pre-payment penalty.

14.     Even though, Ameriquest received over $66,000.00 for a simple refinance, it continued to solicit plaintiff for additional refinances. Plaintiff has over six refinance packages for Ameriquest in 2003 and the beginning of 2004. Ameriquest's affiliates also solicited plaintiff to refinance her loan. As a result of the constant pressure to refinance, plaintiff was refinanced in February 9, 2004 with an affiliate of Ameriquest, Argent. As a result of this refinance, plaintiff was forced to pay Ameriquest about $25,000.00 for a second pre-payment penalty. The refinance with Argent is at issue in this lawsuit.

15.     Plaintiff has filed a separate lawsuit regarding the Ameriquest loans.

## FACTS RELATING TO PLAINTIFF'S ARGENT FEBRUARY 9, 2004 LOAN

16.     On February 9, 2004, plaintiff obtained a $408,000 refinance loan from Argent. The loan was arranged on plaintiff's behalf by Grand Mortgage acting as plaintiff's mortgage broker.

17.     The loan had an interest rate of 8.350% fixed at two years that increased an

3

additional 4.5% on the change date.

18.    In connection with the February 9, 2004 transaction, plaintiff paid Grand Mortgage a $8,910.00 broker fee.

19.    In addition, Grand Mortgage also received a Yield Spread Premium in the amount of $4,080.00. A yield spread premium is a payment by a lender to the borrower's mortgage broker that represents compensation for unnecessarily increasing the borrower's interest rate. The lender establishes a base or "par" interest rate, at which it will make or purchase a loan from a class of borrower, and informs mortgage brokers such of the "par" rate by means of "rate sheets" faxed or e-mailed to the brokers on a regular basis. If the broker induces the borrower to sign loan papers at a higher rate, the lender pays a "yield spread premium" linked to the increase in the rate. The formula for paying the "yield spread premium" is also in the rate sheets.

20.    The effect of the "yield spread premium" on the amount that the borrower pays is very substantial. For example, the .5% yield spread premium paid in this case typically "purchases" a 0.5 to 1% increase in the interest rate. The effect of increasing the rate 1% on a 30-year mortgage is to increase the finance charge per $100 of amount financed by more than $20.

21.    Plaintiff did not understand the effect of the yield spread premium. No lay borrower would understand it without being given the relevant numbers, set forth above. Any borrower who did understand it would not agree to it.

22.    Plaintiff was entitled to have her federally-related mortgage transaction closed without incurring charges that were duplicative or for which no or only nominal services were performed, or that merely represent payment for the referral of business.

23.    The total compensation received by the broker for the February 9, 2004, loan

4

was unreasonable.

24.    In addition, the Notice of Right to Cancel that plaintiff was furnished was incomplete. Plaintiff sent Argent a request for rescission along with the blank notice of right to cancel, but Argent refused to rescind the loan. Argent has asserted that its copy of the right to cancel is filled in and signed. Argent has not asserted that it provided plaintiff with complete copies.

### FACTS RELATING TO PLAINTIFF'S SEPTEMBER 13, 2005 LOANS

25.    On September 13, 2005, plaintiff refinanced with WMC Mortgage Corporation and used the broker services of Residential Plus Mortgage Corp and Abraham Beddaoui.

26.    The loan was arranged on plaintiff's behalf by Residential Plus Mortgage Corp and Abraham Beddaoui acting as plaintiff's mortgage broker.

27.    The loan was split into two loans. One loan was for $488,000.00 and one was for $75,000.00. The loans closed simultaneously.

28.    The loan for $488,000.00 was a two year fixed rate at 6.99% that increased an additional 3.693% on the first change date.

29.    The loan for $75,000.00 was a fifteen year balloon note at 10.99%.

30.    In connection with the September 13, 2005 loans, plaintiff paid Residential Plus Mortgage Corp and Abraham Beddaoui $3,290.00 broker fee.

31.    In addition, Residential Plus Mortgage Corp and Abraham Beddaoui also received a Yield Spread Premium in the amount of $4,880.00. A yield spread premium is a payment by a lender to the borrower's mortgage broker that represents compensation for unnecessarily increasing the borrower's interest rate. The lender establishes a base or "par" interest rate, at which it will make or purchase a loan from a class of borrower, and informs mortgage brokers such of the

5

"par" rate by means of "rate sheets" faxed or e-mailed to the brokers on a regular basis. If the broker induces the borrower to sign loan papers at a higher rate, the lender pays a "yield spread premium" linked to the increase in the rate. The formula for paying the "yield spread premium" is also in the rate sheets.

32.    The effect of the "yield spread premium" on the amount that the borrower pays is very substantial. For example, the .5% yield spread premium paid in this case typically "purchases" a 0.5 to 1% increase in the interest rate. The effect of increasing the rate 1% on a 30-year mortgage is to increase the finance charge per $100 of amount financed by more than $20.

33.    Plaintiff did not understand the effect of the yield spread premium. No lay borrower would understand it without being given the relevant numbers, set forth above. Any borrower who did understand it would not agree to it.

34.    Plaintiff was entitled to have her federally-related mortgage transaction closed without incurring charges that were duplicative or for which no or only nominal services were performed, or that merely represent payment for the referral of business.

35.    The total compensation received by the broker for the February 9, 2004, loan was unreasonable.

36.    In addition, the Notice of Right to Cancel that plaintiff was furnished was incomplete.

## COUNT I- TILA- RESCISSION OF THE FEBRUARY 9, 2004 LOAN

37.    Plaintiff incorporates ¶¶1-36. This claim is against Argent.

38.    Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to

6

cancel provided by TILA, 15 U.S.C. §1635, and implementing Federal Reserve Board Regulation

Z, 12 C.F.R. §226.23.

    39.    Section 226.23 provides:

**(a) Consumer's right to rescind.**

    **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

    **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

    **(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**

    **(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

    **(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

    **(2) The consumer's right to rescind the transaction.**

(3) **How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

(4) **The effects of rescission, as described in paragraph (d) of this section.**

(5) **The date the rescission period expires. . . .**

(f) Exempt transactions. **The right to rescind does not apply to the following:**

(1) **A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

(2) **A credit plan in which a state agency is a creditor.**

40.    Because plaintiff was furnished a notice of right to cancel that was incomplete, she has a continuing right to rescind.

41.    Plaintiff has given notice of her election to rescind.

42.    15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against Argent Mortgage Company for:

a.    Rescission of the February 9, 2004 loan.

b.    Statutory damages for failing to rescind and the disclosure violation.

c.    Attorney's fees, litigation expenses and costs.

d.    Such other or further relief as the Court deems appropriate.

8

## COUNT II – CONSUMER FRAUD ACT CLAIM

43.    Plaintiff incorporates ¶¶1-36. This claim is against Argent and Grand

Mortgage

44.    Defendants Argent and Grand Mortgage engaged in unfair and

deceptive acts and practices, in violation of §§2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2

by:

> a.    Receiving and paying, respectively, money for the referral of
> business, in violation of § 8 of the Real Estate Settlement Procedures
> Act, 12 U.S.C. §2607.
>
> b.    Inappropriately, attempting to alter the fiduciary nature of the broker-
> borrower relationship.

45.    Defendants also failed to disclose the following material facts to plaintiff:

> a.    That plaintiff would have to pay $25,000 as a pre-payment penalty

to Argent's affiliate.

> c.    That the broker, was receiving money from Argent for the

purpose of increasing plaintiff's interest rate;

> d.    The percentage increase in plaintiffs' interest rate;
>
> e.    The dollar amount that the increase would cost plaintiff, on a monthly

and life-of-the-loan basis;

46.    Section 2 of the Consumer Fraud Act provides:

**Unfair methods of competition and unfair or deceptive acts or practices,
including but not limited to the use or employment of any deception fraud, false
pretense, false promise, misrepresentation or the concealment, suppression or
omission of any material fact, with intent that others rely upon the concealment,**

9

suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965 [815 ILCS 510/2], in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act [15 U.S.C. §  45].

47.    Defendants engaged in such unfair and deceptive acts and practices in the course of trade and commerce in financial services.

48.    Defendants intended that plaintiff rely on the undisclosed facts, by signing a note and mortgage at an excessive rate.

49.    Plaintiff did so rely, and were damaged.

50.    The amounts Grand Mortgage received in connection with the transaction was in excess of reasonable compensation for services provided.

51.    The conduct of defendants was deliberately oppressive, corrupt and dishonest.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a.    Compensatory and punitive damages;

b.    Attorney's fees, litigation expenses and costs.

c.    Such other or further relief as the Court deems appropriate.

## COUNT III -- BREACH OF FIDUCIARY DUTY

52.    Plaintiff incorporates ¶¶1-36. This claim is against Grand Mortgage.

53.    Plaintiff granted to Grand Mortgage the exclusive right to negotiate a mortgage loan on her behalf.

10

54.    Consequently, Grand Mortgage was the broker and agent of Plaintiff.

55.    Grand Mortgage had a fiduciary duty to:

a.    Provide Plaintiff full and complete disclosure of all material facts relating to the transaction. That Plaintiff's mortgage broker was receiving money from the other party to the transaction, linked to an increase in Plaintiff's rate, and the pecuniary impact of the payment, were material facts.

b.    Provide Plaintiff with fair and honest treatment.

c.    Avoid taking payments that violated the Real Estate Settlement Procedures Act, 12 U.S.C. §2607.

56.    In violation of such duties, Grand Mortgage accepted a yield spread premium from Argent tied to an increase in Plaintiff's interest rate, without making full and complete disclosure and failed to inform plaintiff of the pre-payment penalties.

57.    As a result, Plaintiff was overcharged for real estate settlement services, was deprived of the loyal and faithful services of Plaintiff's broker/ agent, and was damaged.

58.    The amounts Grand Mortgage received in connection with the transaction were in excess of reasonable compensation for services provided, and included compensation for bringing Argent a borrower induced to pay an excessive rate.

59.    The conduct of Grand Mortgage was deliberately oppressive, corrupt and dishonest.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Grand Mortgage for:

a.    Compensatory and punitive damages;

11

      b.     For attorney's fees, litigation expenses and costs.

      c     For such other or further relief as the Court deems appropriate.

## COUNT IV- TILA- RESCISSION OF THE SEPTEMBER 13, 2005 LOANS

60.    Plaintiff incorporates ¶¶1-36. This claim is against WMC Mortgage,

JPMorgan Chase Bank N.A., MERS and FV1-Inc.

61.    Because the transaction was secured by plaintiff's home, and was not entered

into for purposes of the initial acquisition or construction of that home, it was subject to the right to

cancel provided by TILA, 15 U.S.C. §1635, and implementing Federal Reserve Board Regulation

Z, 12 C.F.R. §226.23.

62.    Section 226.23 provides:

**(a) Consumer's right to rescind.**

> **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

> **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

> **(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**

12

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) Exempt transactions. The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

63.    Because plaintiff was furnished a notice of right to cancel that was

incomplete, she has a continuing right to rescind.

64.    Plaintiff has given notice of her election to rescind.

65.    15 U.S.C. §1635(g) provides:

Additional relief

In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

13

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff

and against WMC Mortgage, JPMorgan Chase Bank N.A., MERS and FV1-Inc. for:

> a.    Rescission of both of the September 9, 2005 loans.
>
> b.    Statutory damages for the refusal to rescind and disclosure violation.
>
> c.    Attorney's fees, litigation expenses and costs.
>
> d.    Such other or further relief as the Court deems appropriate.

## COUNT V – CONSUMER FRAUD ACT CLAIM

66.    Plaintiff incorporates ¶¶1-28. This claim is against WMC Mortgage,

Residential Plus and Abraham Beddaoui.

67.    Defendant WMC Mortgage, Residential Plus and Abraham Beddaoui

engaged in unfair and deceptive acts and practices, in violation of §§2 of the Illinois Consumer Fraud

Act, 815 ILCS 505/2 by:

68.    Receiving and paying, respectively, money for the referral of business, in

violation of § 8 of the Real Estate Settlement Procedures Act, 12 U.S.C. §2607.

69.    In appropriately, attempting to alter the fiduciary nature of the broker-

borrower relationship; and

> 70.    Failing to disclose the following material facts to plaintiff:
>
> a.    That plaintiff's income could not support the repayment of the loans;
>
> b.    That the broker, was receiving money from Argent for the

purpose of increasing plaintiff's interest rate;

> c.    The percentage increase in plaintiffs' interest rate;
>
> d.    The dollar amount that the increase would cost plaintiff, on a monthly

and life-of-the-loan basis;

71.    Section 2 of the Consumer Fraud Act provides:

**Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965 [815 ILCS 510/2], in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act [15 U.S.C. § 45].**

72.    Defendants engaged in such unfair and deceptive acts and practices in the course of trade and commerce in financial services.

73.    Defendants intended that plaintiff rely on the undisclosed facts, by signing a note and mortgage at an excessive rate.

74.    Plaintiff did so rely, and were damaged.  In fact, plaintiff could not afford to make a single payment and is presently in foreclosure.

75.    The amounts Residential Plus and Abraham Beddaoui received in connection with the transaction were in excess of reasonable compensation for services provided.

76.    The conduct of defendants was deliberately oppressive, corrupt and dishonest.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a.    Compensatory and punitive damages;

b.    Attorney's fees, litigation expenses and costs.

15

c. Such other or further relief as the Court deems appropriate.

## COUNT VI -- BREACH OF FIDUCIARY DUTY

77. Plaintiff incorporates ¶¶1-28. This claim is against Residential Plus and Abraham Beddaoui.

78. Plaintiff granted to Residential Plus and Abraham Beddaoui the exclusive right to negotiate a mortgage loan on her behalf.

79. Consequently, Residential Plus and Abraham Beddaoui were the broker and agent of Plaintiff.

80. Residential Plus and Abraham Beddaoui had a fiduciary duty to:

a. Provide Plaintiff full and complete disclosure of all material facts relating to the transaction. That Plaintiff's mortgage broker was receiving money from the other party to the transaction, linked to an increase in Plaintiff's rate, and the pecuniary impact of the payment, were material facts.

b. Provide Plaintiff with fair and honest treatment.

c. Avoid taking payments that violated the Real Estate Settlement Procedures Act, 12 U.S.C. §2607.

81. In violation of such duties, Residential Plus and Abraham Beddaoui accepted a yield spread premium from Argent tied to an increase in Plaintiff's interest rate, without making full and complete disclosure and failed to inform plaintiff of the pre-payment penalties.

82. As a result, Plaintiff was overcharged for real estate settlement services, was deprived of the loyal and faithful services of Plaintiff's broker/ agent, and was damaged.

83. The amounts Residential Plus and Abraham Beddaoui received in connection

16

with the transaction were in excess of reasonable compensation for services provided, and included

compensation for bringing WMC Mortgage a borrower induced to pay an excessive rate.

84.    The conduct of Residential Plus and Abraham Beddaoui were deliberately

oppressive, corrupt and dishonest.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff

and against Residential Plus and Abraham Beddaoui for:

a.    Compensatory and punitive damages;

b.    For attorney's fees, litigation expenses and costs.

c    For such other or further relief as the Court deems appropriate.


Respectfully submitted,
Plaintiff


By: _____
                Her Attorney

Keith J. Keogh
Elizabeth Monkus
Law Offices of Keith J. Keogh, Ltd.
227 W. Monroe St., Ste. 2000
Chicago, Illinois 60606
312.726.1092 (office)
312.726.1093 (fax)
Keith@KeoghLaw.com


**JURY DEMAND**
Plaintiff demands trial by jury.



17