# APPENDIX A

11 of 79 DOCUMENTS

NANCY R. MURRAY, Plaintiff, v. SUNRISE CHEVROLET, INC., and TRIAD FINANCIAL CORPORATION, d/b/a ROADLOANS, Defendants.

No. 04 C 7668

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2006 U.S. Dist. LEXIS 55336*

July 31, 2006, Decided

**COUNSEL:** [*1] For Nancy R. Murray, Plaintiff: Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Michelle R. Teggelaar, Thomas Everett Soule, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Sunrise Chevrolet, Inc., Defendant: Thomas R. Weiler, Norton, Mancini & Weiler, Chicago, IL.

For - Triad Financial Corporation, Defendant: Linda Beth Dubnow, David Luther Hartsell, David T. Meehan, Kristin Henrichs Sculli, McGuireWoods LLP, Chicago, IL; Jaime Lea Hochhausen, Chapman & Spingola, LLP, Chicago, IL.

**JUDGES:** David H. Coar, United States District Judge.

**OPINIONBY:** David H. Coar

**OPINION:**

### MEMORANDUM OPINION AND ORDER

This is a class action suit against a car dealership and a lending company on behalf of all persons with Illinois addresses who received the "pre-approval notice" flyer at issue in this case on or after November 24, 2002 and before December 14, 2004. Class Representative Nancy R. Murray filed a class action Complaint alleging that Defendant Sunrise Chevrolet, Inc. and Defendant Triad Financial Corporation ("Triad"), d/b/a RoadLoans, obtained consumer credit reports for an impermissible purpose in violation of the Fair Credit Reporting Act. *15 U.S.C. § 1681* [*2] *et seq.* Now before this Court are the parties' cross-motions for summary judgment and Plaintiff's motion for an order deeming certain statements of material fact admitted.

### Background Facts

Unless otherwise noted, the following undisputed facts are taken from the parties' *Local Rule 56.1* statements of undisputed fact. Plaintiff Murray is a resident of Joliet, Illinois. In mid-July 2004, Murray received a mailing from defendant Sunrise Chevrolet, Inc. ("Sunrise"), a car dealership with a location in Glendale Heights, Illinois, and defendant Triad Financial Corporation ("Triad") a automobile financing company that does business in Illinois under the name "RoadLoans." The text of the mailer reads:

### PRE-APPROVED NOTICE

Dear Nancy,
You have been pre-approved for an auto loan up to $ 19,500*. Information contained in your credit bureau report, obtained from a consumer reporting agency, was used in conjunction with selecting you for this offer.

The amount of the loan may vary. For security reasons, the pre-approved amount is not listed. Just call with your pint number listed below, to find out what your pre-approval amount is: 800-293-8411.

**SECOND** [*3] **CHANCE FINANCING AVAILABLE HERE.** This offer has been extended to you because you have satisfied criteria for creditworthiness used to select consumers for this pre-approved offer.

Your pre-approval is valid at Sunrise Chevrolet (see below) who has agreed to mark down all their new and used car inventory to keep within the guidelines of your pre-approval.

As low as **ZERO CASH DOWN PAYMENT:** May times your trade-in is sufficient for a down payment.

> This is a unique offer and we want you to take advantage of your pre-approved auto loan but you must come in as soon as possible, as this offer will expire on 7/24/04. Come early for the best selection on over 600 new and pre-owned vehicles.

In a black box the width of the Notice with white text, the consumer is instructed to bring to the dealer a recent pay stub, a phone bill at the consumer's residence, a utility bill with the consumer's name on it, and "yourself and/or your trade." If the consumer wishes to determine the "pre-approval amount" of the loan offered, the Notice directs her to call "our live 24-Hour Pre-Approval Specialist: 800-293-8411" and provide the pin number listed on the Notice. "Your [*4] identity will be verified and your pre-approval amount and personal pre-approval code will be given. Write down your pre-approval amount and personal pre-approval code in the spaces below. Present this letter upon entering the dealership listed below. (Note: Be prepared to accept immediate delivery of your new or used vehicle.)" The Notice then reports that "Your Authorized Dealer is: Sunrise Chevrolet" and provides a street address and the toll-free number already listed. At the bottom of the flyer, in much smaller type and a different font, the following text appears:

> You have been pre-approved for an auto loan by RoadLoans TM. This offer is available for 30 days from the date of this letter, and is conditioned upon obtaining a first lien security interest in your vehicle. You received this offer based on information in your credit report and upon your satisfying certain predetermined credit criteria used to select individuals for this offer. This offer is conditioned upon verification that you continue to meet the specific criteria used to select you for this offer. Credit may be refused if you no longer meet those criteria or other applicable criteria bearing on creditworthiness [*5] or if your vehicle does not meet collateral guidelines. There is a limit of one pre-qualified credit offer per customer, which may be applied to an eligible new or used vehicle. Specific credit terms such as APR, length of contract, payment amount, and amount of credit, are subject to RoadLoans TM finance program parameters. Your pre-approved reservation code is ROL3. Just visit www.roadloans.com and complete the application form. RoadLoans TM assumes no responsibility for incorrect information supplied by various credit reporting agencies. You have the right to prohibit the use of information in your file maintained by the consumer reporting agencies from being used in transactions not initiated by you by calling 1-888-5OPTOUT (1-888-567-8688), or writing Equifax Options, P.O. Box 740123, Atlanta, GA 30374-0123.

Murray had not given written permission to Sunrise or Triad to obtain her consumer report. In addition, the Notice does not state the minimum amount of credit to be extended to the consumer, the interest rate on the loan, the method by which interest would be computed, the length of the loan repayment period, any applicable penalties, fees, costs, or charges, or Triad's [*6] underwriting guidelines.

Sunrise used MAN Marketing, a marketing company, in some of its promotional and advertising efforts in 2004. The account executive managing Sunrise's account at MAN presented Sunrise's general manager, Dan Kurtz, with a sample direct mail flyer some time in 2004. Sunrise decided to use the flyer as part of a marketing program. The MAN account executive contracted with Direct Mail Express, of Daytona Beach, Florida, to mail the flyer. The work order specified that 14,000 copies of the flyer would be used, and Direct Mail Express was to "start with Bankruptcies June 1-30," and to "fill remaining names from Beacon [FICO credit] score list 529-629 - with 20 mile radius from 60139." The order also requested the "telemall package" which would set appointments for the dealership.

The advertising flyer Murray received was designed by R.L. Polk & Company, which does business as PolkOne ("Polk"), or Direct Mail Express. It was created pursuant to a Service Agreement between Polk, Masada Direct Corporation ("Masada"), and Triad. Under this agreement, Polk agreed to develop all materials for marketing pre-approved offers to consumers who satisfied certain initial lending [*7] criteria set by Triad. Polk also warranted that it would ensure that the flyer complied with applicable law, including FCRA. Polk contracted to solicit mailing contracts from dealerships and marketing companies. It would give the dealership's requirements to Masada, which matched the dealer's credit criteria with Triad's and then created a mailing list for use in a direct mailing. Triad provided lending criteria in order for Polk and Masada to qualify consumers for pre-approved credit offers. Masada used an automated system to gather consumer names, addresses, and "other non-unique identifiers" from Equifax Information

Services and provide that information to Polk and other entities with whom it did business. Direct Mail Express gave Sunrise's credit criteria to Polk, which provided it to Masada. In turn, Masada produced a mailing list for Polk. Direct Mail Express received the mailing list from Polk and sent the flyer to the consumers on the list, including Plaintiff. Triad had no contact with Direct Mail Express. Under the service agreement, 14,000 flyers were mailed to individuals who lived within a twenty mile radius of Glendale Heights, Illinois, where Sunrise is located. No one [*8] at Triad or Sunrise saw the flyer before it was mailed. No one at Sunrise had any dealings with either Triad or RoadLoans. Sunrise's general manager did not know why RoadLoans was mentioned in the flyer and did not know until this lawsuit that RoadLoans was an affiliate or subsidiary of Triad.

A flyer recipient who called the 800 number listed on the flyer would reach Direct Mail Express, which has offices in Daytona Beach, Florida. A Direct Mail Express employee would ask the consumer a series of questions, presumably about her credit history, and then transmit the consumer's name, address, phone number, and an appointment time to Sunrise Chevrolet through a secure web site and by fax. If the consumer instead contacted the RoadLoans website provided on the flyer, she would fill out a credit application. RoadLoans' credit department would then approve or deny the application based in part on a review of the consumer's credit report. If approved, RoadLoans' sales department would call and email the consumer, and send a loan package, including a loan check, via overnight mail to the consumer. A consumer who went directly to Sunrise with the flyer would be treated no differently than [*9] a consumer who walked in off the street and would be taken through the "normal" sales process.

## Summary Judgment Standard

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP, 236 F.3d 374, 380 (7th Cir. 2001)*. "If, however, the record as a whole 'could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Id.* Once a motion for summary judgment has been filed, "the burden shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial." *Liu v. T&H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999)* [*10] (citing *Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986))*. The non-movant must provide more than a "mere scintilla" of evidence to carry its burden under the summary judgment standard. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. However, weighing evidence, making credibility determinations, and drawing reasonable inferences are functions of a jury, not of a judge deciding a summary judgment motion. *Id. at 255*.

## Murray's Motion to Deem Certain Material Facts Admitted

Murray moves to have certain material facts deemed admitted on the grounds that Defendants Sunrise and Triad failed to comply with the requirements of *Local Rule 56.1* and this Court's standing order regarding motions for summary judgment. Specifically, Murray seeks an order deeming approximately sixteen paragraphs from her statement of material facts to be admitted. Defendants respond that their objections complied with the local rule, were proper, and did not violate this Court's standing order. As a general matter, this Court disfavors motions to strike and motions for orders to deem certain material facts admitted. This Court has considered [*11] the record, including the *Rule 56.1* statements and responses from all parties. Murray's objections could have been made -- and in many instances, were made -- in her responsive fact statements, as is proper. This Court grants Murray's motion as to paragraph 40 of her Statement of Material Facts, but denies it as to all other paragraphs.

## Private Right of Action

Defendants contend that this suit must fail because Congress eliminated the private right of action for violations of *§ 1681m* when it enacted the Fair and Accurate Credit Transactions Act of 2003, Pub.L. No. 108-159, 117 Stat. 1952 (2003) ("FACT Act"). The FACT Act amended numerous FCRA provisions. Section 311(a) of the FACT Act added *subsection (h) to § 1681m of FCRA. See* FACT Act, Pub.L. No. 108-159, § 311(a), 117 Stat. 1952, 1988-89 (2003). Several courts in this district and beyond have analyzed Section 311(a) of the FACT Act and have agreed that it eliminated a private right of action for violations of *§ 1681m. See, e.g., Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006); Putkowski v. Irwin Home Equity Corp., 423 F. Supp. 2d 1053 (N.D. Cal. Mar. 23, 2006)* (Hamilton, [*12] J.); *Phillips v. New Century Fin. Corp., 2006 U.S. Dist. LEXIS 18499, No. SACV050692DOCRNBX, 2006 WL 517653 (C.D. Cal. Mar. 1, 2006)* (Carter, J.); *Tremble v. Town & Country Credit Corp., 2006 U.S. Dist. LEXIS 2625, No. 05 C 2625, 2006 WL 163140 (N.D. Ill. Jan. 18, 2006)* (Castillo, J.); *Hernandez v. Citifinancial Servs., Inc., 2005 U.S. Dist. LEXIS 32532, No. 05 C 2263, 2005 WL

*3430858 (N.D. Ill. Dec. 9, 2005)* (Filip, J.); *McCane v. America's Credit Jewelers, Inc.,* 2005 U.S. Dist. LEXIS 30961, No. 05 C 5089, 2005 WL 3299371 (N.D. Ill. Dec. 1, 2005) (Conlon, J.); *Murray v. Household Bank (SB), N.A.,* 386 F. Supp. 2d 993 (N.D. Ill. 2005) (Gettleman, J.); *Murray v. Cingular Wireless II, LLC,* 2005 U.S. Dist. LEXIS 39561, No. 05 C 1334, slip op. (N.D. Ill. Nov. 2, 2005) (Manning, J.); *Pietras v. Curfin Oldsmobile, Inc.,* 2005 U.S. Dist. LEXIS 26510, No. 05 C 4624, 2005 WL 2897386 (N.D. Ill. Nov. 1, 2005) (Conlon, J.); *Murray v. Cross Country Bank,* 399 F. Supp. 2d 843 (N.D. Ill. Aug. 15, 2005) (Zagel, J.). Instead, such violations shall be administratively enforced. *15 U.S.C. § 1681m(h)(8)(B) (2004).*

Section 311(a) of the FACT Act had an effective date of December 1, 2004. *16 C.F.R. § 602.1 (2004)* [*13] . The Seventh Circuit recently discussed the FACT Act amendments in another one of this plaintiff's FCRA cases. *See Murray v. GMAC Mortgage Corp.,* 434 F.3d 948 (7th Cir. 2006). It noted that the amendments "do not apply to offers made before [the amendments'] effective date." *Id. at 951.* The defendants mailed the Pre-Approval Notice flyer to the class members in July 2004 and Murray filed the class complaint on November 24, 2004. Both of these events occurred before the effective date of *Section 311(a)*. Thus, the FACT Act amendments do not apply to this litigation.

**Firm Offer of Credit**

Under FCRA, a consumer's credit report may only be obtained with the consumer's written consent or for certain permissible purposes. *See 15 U.S.C. § 1681b(f).* One such permissible purpose for obtaining a consumer's credit report is to make a "firm offer of credit" to the consumer. *15 U.S.C. § 1681b(c)(1)(B)(I).* The statute defines a "firm offer of credit" as "any offer of credit ... to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, [*14] to meet the specific criteria used to select the consumer for the offer." *15 U.S.C. § 1681a(l).* The offer may be conditioned on the consumer's compliance with certain other criteria specified in FCRA. *Id.* The plaintiff alleges that she never gave either Sunrise or Triad written permission to access her credit report. In addition, she contends that the mailing she received from the defendants, the "Pre-Approval Notice" does not qualify as a "firm offer of credit" under FCRA.

Triad argues that Murray cannot meet her burden of demonstrating that the "Pre-Approval Notice" was not a "firm offer of credit." According to Triad, Murray is unable to prove that the offer of credit was vague or lacked meaningful terms because she did not follow the instructions on the Notice to contact Triad to request information about the terms or conditions of its offer. Instead of calling the toll-free number listed on the flyer or going to the Triad website (www.roadloans.com) to learn her credit pre-approval amount, Murray disregarded the Notice because she was not interested in the offer. Triad contends that Murray cannot establish that the offer was of no value if she never [*15] attempted to discover its material terms. In addition, Triad argues that because FCRA does not mandate that the terms of an offer be communicated in writing, Murray cannot prove that the offer was "vague" or "totally lacking in terms."

Sunrise argues that the portion of the flyer relating the terms of the pre-approved offer came from RoadLoans and specifically, were drafted by RoadLoans' counsel. The language is identical to the language in the exhibit to the Service Agreement between RoadLoans, Masada and Polk. The Service Agreement stated that each party thereto was specifically required to comply with all applicable state and federal laws, and singled out FCRA in particular. Further, Sunrise contends that Masada's president, Robert Brody, assured RoadLoans and Sunrise that the flyer would comply with FCRA. Finally, Sunrise argues that "it defies logic that Sunrise could ever have determined that the flyer ... did not constitute a firm offer of credit." Sunrise's Summ. J. Br. at 9.

Murray responds that the Pre-Approval Notice mailer violated FCRA's "firm offer of credit" requirements as set forth in recent Seventh Circuit case law. *GMAC Mortgage,* 434 F.3d 948; [*16] *Cole v. U.S. Capital, Inc.,* 389 F.3d 719 (7th Cir. 2004). Specifically, Murray argues that *Cole* clarifies that an offer must contain specific terms, including interest rate, method of computing interest, and length of repayment period, to be considered "firm." The "Terms of Pre-Approved Offer" section on the Notice states that "[s]pecific credit terms such as APR, length of contract, payment amount, and amount of credit, are subject to RoadLoans TM finance program parameters." (Pl.'s L.R. 56.1 Stmt., Ex. 1.)

In *GMAC Mortgage,* the Seventh Circuit noted that "the statutory definition of 'firm offer' does not ask about how consumers *react,* however; it asks what the offeror has done—what terms have been extended, whether they are honored if a consumer accepts." *434 F.3d at 955.* In addition, "[a]n offer has value to 'the consumer' if it is useful to the *normal* consumer." *Id.* When deciding whether a creditor has adhered to FCRA, "a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in *Cole*), and whether the terms are honored when consumers accept." *Id. at 956.* [*17]

Triad's reading of "firm offer of credit" dramatically diminishes FCRA's effectiveness as a consumer protection statute, which is its explicit purpose. *See 15 U.S.C. § 1681(a)(4).* If Triad's approach were adopted, then anyone could access sensitive consumer information

as long as they cobbled together some mosaic of communication methods whereby a persistent consumer could learn all the details of the offer: a few details about the credit limit in a mailing, a few more details about interest rate and compounding method by telephone, and information about terms of repayment on a website. But this fails to satisfy the statute. The "firm offer of credit" must have "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Cole, 389 F.3d at 726*. If the Pre-Approval Notice provides no more information than does a mailer soliciting loan business by requesting consumers to call a toll-free number or visit a website, then it does not provide "sufficient value" to the consumer to justify access to her credit information.

The Pre-Approval Notice in this case simply says that the recipient has been "pre-approved [*18] for an auto loan up to $ 19,500." There is no guarantee that the recipient will be approved for any loan at all. There is no information about the applicable interest rate, length of contract, payment amount or method of computing interest. An interested consumer has to call Direct Mail Express's toll-free number to learn her "pre-approval amount." If she called the number, she would be asked questions about her credit history and put through a screen process; the Direct Mail Express employee would then make an appointment for her at the dealer. It is not clear from the record that the dealer would treat this consumer differently than any other consumer; in short, she might well go through the "normal" sales process at the dealer and have gained little or nothing from the flyer. In the small-print "Terms" section of the Notice, the consumer also was directed to "visit www.roadloans.com and complete the application form." This contradicts Triad's position that the Notice represented a firm offer of credit.

In *Cole*, the Seventh Circuit stated that "neither a creditor nor a debtor considers the amount of credit in a vacuum; both must know the other terms attached to that credit to [*19] determine whether it is advantageous to extend or to accept the offer." *Cole, 389 F.3d at 728*. Indeed, the terms of the offer "may be so onerous as to deprive the offer of any appreciable value." *Id.* It is not at all apparent from the Notice that the offer of credit would be honored. The Notice states that "[c]redit may be refused if you no longer meet [the specific criteria used to select you for this offer] or other applicable criteria bearing on creditworthiness or if your vehicle does not meet collateral guidelines." Further, it is undisputable that a number of material terms are completely absent from the Notice, including the interest rate, term of repayment, payment amount, and actual amount of credit. The Seventh Circuit instructs that a court "need only determine whether the four corners of the offer satisfy the statutory definition." *GMAC Mortgage, 434 F.3d at 956*. Accordingly, this Court finds that the Notice does not constitute a "firm offer of credit." The flyer lacks crucial information about the loan's terms which would have enabled Murray to determine whether the offer had any value for her. Although the flyer is titled "Pre-Approved [*20] Notice," it simply serves as an invitation to the consumer to contact Roadloans or Sunrise for more details. *See Cole, 389 F.3d at 728*.

**Clear and Conspicuous Notice**

In addition to a "firm offer of credit," FCRA requires that a creditor must provide a "clear and conspicuous statement" of certain information to a consumer. *15 U.S.C. § 1681m(d)(1)*. The creditor must disclose that 1) it used information from the consumer's credit report in connection with the offer; 2) the consumer received the offer because she satisfied the creditor's criteria for credit worthiness; 3) failure to meet the section criteria or any applicable criteria bearing on credit worthiness may cause the creditor to rescind the offer; 4) the consumer has a right to prohibit her credit report from being used in connection with any credit transaction that she does not initiate; and 5) she may exercise her right to "opt out" of such credit transactions by contacting a specified toll-free number or by sending a written request to the credit agency at a given address. *15 U.S.C. § 1681m(d)(1)*. The statute does not define "clear and conspicuous" [*21] and case law provides little guidance. *Cole, 389 F.3d at 729*. Courts seeking to clarify the term's meaning have turned to commercial law and cases relating to the Uniform Commercial Code ("UCC") or the Truth In Lending Act ("TILA") for assistance. *Id.* (citing *Stevenson v. TRW Inc., 987 F.2d 288, 295 (5th Cir. 1993); Tucker v. New Rogers Pontiac, Inc., 2003 U.S. Dist. LEXIS 25346, 2003 WL 22078297, at *4 (N.D. Ill. Sept. 9, 2003); Sampson v. Western Sierra Acceptance Corp., 2003 U.S. Dist. LEXIS 13429, 2003 WL 21785612, at *3-4 (N.D. Ill. Aug. 1, 2003)*). In *Cole*, the Seventh Circuit likewise drew from UCC and TILA case law to determine the meaning of "clear and conspicuous" under FCRA. In so doing, the *Cole* court stated that no one "aspect of a notice" necessarily renders it "clear and conspicuous." *Cole, 389 F.3d at 731*. Courts must instead consider several factors, including "the location of the notice within the document, the type size used within the notice as well as the type size in comparison to the rest of the document" and any other means by which the notice is "set off," such as font style, spacing, and type formatting. *Id.* "In short, [*22] there must be something about the way that the notice is presented in the document such that the consumer's attention will be drawn to it." *Id.*

The defendants contend that the notice was clear and conspicuous and satisfied FCRA's requirements. As support, they argue that Murray was able to read the notice and even underlined the sentence which stated "You received this offer based on information in your

credit report." Murray argues that it is irrelevant that she was able to read the notice if the notice fails to satisfy FCRA's requirements. This Court previously found that the notice provided on the flyer fails "any test of conspicuousness." In the September 25, 2005 memorandum opinion and order denying defendants' motions to dismiss, this Court stated:

> In this case, as in *Cole*, the notice appears in a single paragraph at the bottom of the flyer, in nine lines of text that take up little more than one inch of space. The text is printed in the smallest type on the page, in a different font than the body of the flyer. Defendant Triad contends that the notice is printed in bold face type, but the smallness of the type size renders it nearly impossible to determine whether [*23] that is the case. In addition, any font emphasis is diminished by the difference between the font in the body of the flyer and that in the notice. The font is so small that this Court finds it virtually impossible to distinguish any alleged bolding. By contrast, the remainder of the flyer is printed in larger, readable type, and uses all caps, bolding, underlining, and contrasting graphical elements to draw the reader's attention to other information. This Court determines that the notice fails any reasonable test of conspicuousness. The type in the notice is so small as to be almost unreadable and the alleged boldface is indistinguishable in the replicas presented to this Court. Unlike the remainder of the flyer, it is reasonable to find that the notice was designed to discourage the reader's attention.

(No. 04-7668, Mem. Op. & Order, at 7, Sept. 25, 2005 (footnotes omitted).) There is nothing to make this Court change that finding at this stage. The flyer fails to provide a "clear and conspicuous statement" as required by FCRA.

### Actual Damages

Defendants argue that summary judgment should be entered in their favor because Murray cannot establish actual damages. [*24] Murray responds that she is not required to prove actual damages because the statute permits recovery of statutory damages as an alternative to actual damages. FCRA provides that "any person who willfully fails to comply with any requirement [of § 1681] with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000." *15 U.S.C. § 1681n(a)(1)(A) (1997)*. As other courts in this District have noted, the statute uses the disjunctive "or" between the actual damages and the statutory damages clauses. In short, the plaintiff class members may still seek so-called statutory damages as an alternative remedy when they cannot prove and do not seek actual damages. The statute simply limits the amount of statutory damages available to a plaintiff if she cannot prove actual injury or harm. *See also Murray v. New Cingular Wireless, 232 F.R.D. 295, 302-303 & n.8 (N.D. Ill. 2005)* (citing *Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1113 (D. Minn. 2004)*. As in the [*25] *New Cingular Wireless* case, defendants rely on the Seventh Circuit's opinion in *Ruffin-Thompkins v. Experian Info. Solutions, Inc., 422 F.3d 603 (7th Cir. 2005)*, for the proposition that a FCRA plaintiff must prove actual injury in order to establish liability. But *Ruffin-Thompkins* dealt with a claim under *section 1681i(a)(1)(A)* of the statute, which addresses a credit reporting agency's responsibility to reinvestigate disputed information in a consumer's credit file. That provision of the statute has been interpreted to require a plaintiff to demonstrate a "causal relation between the violation of the statute and the loss of credit, or some other harm" suffered by plaintiff. *Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001)* (citations omitted).

If Murray was seeking damages for defendants' *negligent* noncompliance with the provisions of FCRA, then she would be required to demonstrate actual damages. *15 U.S.C. § 1681o(a)(1)*. But that is not what Murray seeks. In fact, Murray concedes that she is not seeking actual damages at all. Instead, she alleges *willful* noncompliance with the provisions of [*26] *§ 1681b(f)* and *§ 1681m(d)*, which would entitle her to statutory damages. *15 U.S.C. § 1681n(a)(1)(A)*. Proof of actual damages is not required to prevail under the sections at issue in this case.

### Willful Noncompliance

The defendants assert that they are entitled to summary judgment because Murray cannot prove that they were willfully noncompliant with the provisions of FCRA. If a plaintiff can demonstrate that a reporting agency or creditor willfully failed to comply with any FCRA requirement, then she can recover punitive damages under the statute. *See 15 U.S.C. § 1681n*. To establish a willful violation of FCRA, Murray must be able to demonstrate that Triad and Sunrise "knowingly and intentionally" violated the statute and in so doing, were "conscious" that their acts "impinge[d] on the rights of others." *Ruffin-Thompkins, 422 F.3d at 610* (quoting *Wantz v. Experian Info. Solutions, 386 F.3d 829, 834 (7th Cir. 2004)* (citing *Phillips v. Grendahl, 312 F.3d 357, 368 (8th Cir. 2002))*.

Murray argues that both Triad and Sunrise were aware of their legal obligations [*27] under FCRA but knowingly failed to comply with them when they mailed the Notice without a firm offer of credit or a clear and conspicuous statement that the consumer's credit report was accessed. Triad contends that it did not knowingly violate FCRA. As support, it contends that Murray has produced no evidence that Triad knew that the mere act of obtaining a prescreened list of consumers and mailing an offer to them violated FCRA. In addition, Triad offers evidence that it was not involved in the design of the mailing and did not receive a copy of the flyer before it was mailed. The flyer was created under a service agreement between Triad, Polk, and Masada, whereby Polk designed the mailings and warranted that they complied with applicable law. Triad contends that it reasonably relied on Polk's assurances and asserts that the Polk and Masada representatives with which it dealt were lawyers.

Sunrise asserts that there is no evidence that it knew that the mailer violated FCRA. Instead, Sunrise contends that its involvement with the mailer was negligent, at most, but does not rise to the level of willfulness. Sunrise contracted out the creation, drafting, and mailing of the flyer to [*28] third party marketing and direct mail companies with extensive experience in such promotional efforts. Indeed, Sunrise did not draft the flyer and had no authority to alter the language pertaining to the loan. The only language it added to the flyer related to the type of vehicle shown in a graphic, the price of the sample vehicle, the Sunrise name and address, a Chevy logo, and a splash graphic indicating that the dealership had Spanish-speaking employees. Moreover, the flyer was created and mailed prior to the *Cole* decision. Had Sunrise researched FCRA at the time of mailing, it alleges that it would have reasonably believed that the flyer complied with pre-*Cole* interpretations of the statute. See, e.g., *Tucker v. Olympia Dodge of Countryside, Inc.*, 2003 U.S. Dist. LEXIS 9201, 2003 WL 21230604 (N.D. Ill. 2003).

Sunrise contends that it reasonably believed the mailing complied with FCRA. Finally, Sunrise argues that there is insufficient evidence to establish that it knew that any consumer credit reports had been accessed, that such access was improper because the offer did not contain a "firm offer of credit," or that Sunrise knowingly authorized the mailing of a flyer that violated [*29] FCRA.

After reviewing the facts and the record and making all reasonable inferences in favor of Triad and Sunrise on Murray's willful noncompliance claim, this Court is unable to conclude that Triad and Sunrise acted willfully as a matter of law. But this Court is likewise unable to conclude that the defendants did not act willfully. In fact, multiple issues of disputed material fact remain regarding whether Sunrise or Triad willfully violated FCRA when it mailed out the "Pre-Approved Notice." See *Phillips, 312 F.3d at 370-71*; see also *Murray v. Fin. Am., LLC*, 2006 U.S. Dist. LEXIS 15850, No. 05 C 1255, 2006 WL 862832, at *4 (N.D. Ill. Apr. 4, 2006).

Thus, this Court finds that defendants violated FCRA by failing to provide a "firm offer of credit" or to make a "clear and conspicuous statement" of certain conditions of the offer on the "Pre-Approved Notice." On the issue of willful noncompliance, summary judgment is inappropriate because disputed issues of material fact remain. For these reasons, Plaintiff's Motion for Summary Judgment is granted in part and denied in part. Defendants' Motions for Summary Judgment are denied.

### Conclusion

For the foregoing reasons, Murray's [*30] Motion for Order Deeming Certain Statements of Material Facts Admitted is granted in part and denied in part; Murray's Motion for Summary Judgment is granted in part and denied in part; Sunrise Chevrolet's Motion for Summary Judgment is denied; and Triad Financial Corporation's Motion for Summary Judgment is denied.

Enter:

/s/ David H. Coar

United States District Judge

Dated: **July 31, 2006**

# APPENDIX B

10 of 79 DOCUMENTS

PERRIE BONNER and, DARRELL BRUCE, Plaintiffs, v. HOME123 CORPORATION and NEW CENTURY MORTGAGE CORPORATION, Defendants.

NO. 2:05-CV-146 PS

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION

2006 U.S. Dist. LEXIS 54418

August 4, 2006, Decided
August 4, 2006, Filed

**PRIOR HISTORY:** *Bonner v. Home123 Corp.*, 2006 U.S. Dist. LEXIS 37922 (N.D. Ind., May 25, 2006)

**COUNSEL:** [*1] For Perrie Bonner, Darrell Bruce, Plaintiffs: Daniel A Edelman, Jeremy P Monteiro, Edelman Combs Latturner & Goodwin LLC, Chicago, IL.

For Home123 Corporation, New Century Mortgage Corporation, Defendants: Diane R Sabol PHV, Jeffrey A Berger PHV, Lucia Nale PHV, Victoria R Collado PHV, Christopher C Murray, Mayer Brown Rowe and Maw LLP, Chicago, IL.

**JUDGES:** PHILIP P. SIMON, JUDGE.

**OPINIONBY:** PHILIP P. SIMON

**OPINION:**

### OPINION AND ORDER

Perrie Bonner and Darrell Bruce received letters from two subprime mortgage lenders offering them high interest rate mortgage loans after the lenders ran their credit reports. They claim that the terms of the solicitations were vague and therefore did not constitute "a firm offer of credit" in violation of the Fair Credit Reporting Act, *15 U.S.C. § 1681 et seq.* ("FCRA"). They also contend that the offers did not contain the necessary disclosures mandated by the FCRA, and they seek statutory damages and a permanent injunction as a result. This matter is currently before the Court on Plaintiffs Bonner and Bruce's Motion For Class Certification [Doc. 35] pursuant to *Federal Rule of Civil Procedure 23* [*2] . Because Plaintiffs have sufficiently demonstrated the requirements of *Rule 23*, their Motion for Class Certification is **GRANTED.**

### I. BACKGROUND

Plaintiffs received pre-screened loan solicitations through the U.S. mail from Defendants Home 123 Corporation and New Century Mortgage Corporation ("Defendants"), two subprime mortgage lenders. Plaintiffs Bonner and Bruce each received one letter from Defendant New Century, *(see* Compl. Ex. A & D), and Plaintiff Bonner received one letter from Defendant Home 123, *(see id.,* Ex. B). These solicitations, which were disseminated by Defendants, all included language that stated: "You have received this offer because we [Defendants] obtained information from one or more credit bureaus identified below . . ." *(Id.* at PP 9, 12, 24, 27, 40, 43.) Defendants thus engaged in "prescreening" of consumers based on information in credit reports provided by a consumer reporting agency. *(Id.* at PP 11, 26, 42.) The pre-screening "was intended to identify persons who have poor credit or have recently obtained bankruptcy discharges, for the purpose of targeting them for subprime credit." *(Id.* at PP 19, 35, 50.) Neither Plaintiff [*3] authorized Defendants to use or access his credit report nor initiated any transaction with Defendants. *(See id.* at PP 20, 22, 36, 38, 51, 53.)

Plaintiffs claim that Defendants violated *§ 1681b of the FCRA* by sending letters with credit offers that were vague and lacking in terms and hence, did not constitute a "firm offer of credit." *(Id.* at PP 56-60a.) Therefore, Defendants did not have a "permissible purpose" to obtain and use Plaintiffs' consumer report information. *(Id.)* Plaintiffs also claim that Defendants failed to provide the requisite consumer disclosures in a "'clear and conspicuous' manner," thereby violating *15 U.S.C. § 1681m. (Id.* at P 60b-d (citing *§ 1681m(d)*).) Specifically, Plaintiffs contend that Defendants' disclosures "were in the fine print on the back of the mailing with no reference on the front." (Mem. at 2.) Finally, Plaintiffs assert that these violations were done in a willful manner in violation of *15 U.S.C. § 1681n. (Id.* at P 62.) Plaintiffs therefore seek statutory damages up to $ 1,000 and

injunctive relief as well as attorney's fees and costs. *(See id.* at 12.)

Plaintiffs filed [*4] a motion seeking certification of two classes defined as people residing in Indiana, Illinois or Wisconsin who received solicitations from Defendants similar to the ones received by the named Plaintiffs *(see* Compl., Exs. A, B & D) on or after April 20, 2003 and before May 10, 2005. Plaintiffs subsequently filed a motion for leave to modify the proposed class definitions [Doc. 94]. Plaintiffs' only modification was to limit the class to people residing within the Northern District of Indiana. The Court now finds that class certification is proper in this case, and accordingly grants Plaintiffs' Motion. The Court also grants Plaintiffs' Motion to modify the class definitions.

## II. DISCUSSION

Motions for class certification must meet the requirements set under *Rule 23 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 23. Rule 23* establishes two main requirements for class certification. First, the action must satisfy all four elements of *Rule 23(a)*: numerosity, commonality, typicality and adequacy of representation. Second, the proposed class must satisfy at least one of the three provisions [*5] under *Rule 23(b)*. *See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*. Plaintiffs seek certification under *Rule 23(b)(3)*, which requires them to demonstrate that common questions of law or fact predominate over any questions affecting only individual class members and that a class action is a superior method of adjudicating the controversy.

The party seeking class certification bears the burden of demonstrating that the requirements of *Rule 23* are satisfied. *See Gen. Tel. Co. of S. W. v. Falcon, 457 U.S. 147, 156, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)*. Failure on the part of the movant to satisfy any one of the requirements of *Rule 23(a)* or *(b)* precludes class certification. *See Patterson v. Gen. Motors Corp., 631 F.2d 476, 480 (7th Cir. 1980)*. The court has broad discretion in ruling on a motion for class certification. *See Retired Chicago Police Ass'n v. Chicago, 7 F.3d 584, 596 (7th Cir. 1993)*.

For purposes of a motion to certify a class, the court does not reach the merits of the complaint. *See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)* ("In determining the propriety of a class action, the question is [*6] not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of *Rule 23* are met.") (citation and internal quotations omitted). However, the Seventh Circuit has instructed the district courts to make "whatever factual and legal inquiries are necessary under *Rule 23*." *Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001)*.

### A. Numerosity

*Rule 23(a)(1)* requires that the class must be "so numerous that joinder of all members is impracticable." *Fed. R. Civ. P. 23(a)(1)*. Courts generally have found this element satisfied when the putative class consists of more than 40 members. *See Ingram v. Corporate Receivables, Inc., 2003 U.S. Dist. LEXIS 14389, No. 02 C 6608, 2003 WL 21982152, at *2 (N.D. Ill. August 19, 2003)* (citing *Swanson v. American Consumer Indus., 415 F.2d 1326, 1333 n.9 (7th Cir. 1969)); see also, e.g., Markham v. White, 171 F.R.D. 217, 221 (N.D. Ill. 1997)* (35-40 class members); *Hendricks-Robinson v. Excel Corp., 164 F.R.D. 667, 671 (C.D. Ill. 1996)* (38 class members). The exact number [*7] of class members need not be known. *Ingram, 2003 U.S. Dist. LEXIS 14389, 2003 WL 21982152, at *2*. Instead, plaintiffs can "offer good faith estimates of class size . . . and the Court may use 'common sense assumptions' to determine the validity of those estimates." *Id.; see also Cannon v. Nationwide Acceptance Corp., 1997 U.S. Dist. LEXIS 3517, No. 96 C 1136, 1997 WL 139472, at *2 (N.D. Ill. March 25, 1997)* (quoting *Evans v. U.S. Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983))*.

In this case, Plaintiffs estimate that the classes would exceed 50,000 people. *(See* Mot. Modify Proposed Class Definitions at 3.) Defendants do not deny this approximation or submit any different numbers in their Response. Plaintiffs' estimation of over 50,000 individuals (and Defendant's failure to refute this estimation) is sufficient to fulfill the numerosity requirement.

### B. Commonality

Under *Rule 23(a)(2)*, "questions of law or fact common to the class" must be present before a class may be certified. The existence of a "common nucleus of operative facts" is generally enough to establish commonality under *Rule 23(a)(2). Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992)*. [*8] Courts consistently have found a common nucleus of operative facts if defendants have allegedly directed standardized conduct toward the putative class members or if the class claims arise out of standardized documents. *Rosario, 963 F.2d at 1018; Johnson v. Aronson Furniture Co., 1998 U.S. Dist. LEXIS 14454, No. 96 C 117, 1998 WL 641342, at *3 (N.D. Ill. Sept. 11, 1998); Peterson v. H & R Block Tax Servs. Inc., 174 F.R.D. 78, 82 (N.D. Ill. 1997)*. Plaintiffs normally are only required to show that "there is 'at least one question of law or fact common to the class' . . . ." *Arenson v. Whitehall Convalescent & Nursing Home, Inc., 164 F.R.D. 659, 663 (N.D. Ill. 1996)* (citation omitted). When a "question of law refers to a standardized conduct by defendants toward members of

Case: 1:05-cv-07097 Document #: 234-2 Filed: 09/11/06 Page 12 of 19 PageID #:5731

Page 3
2006 U.S. Dist. LEXIS 54418, *

the class, a common nucleus of operative facts is typically presented, and the commonality requirement is usually met." *Von Moore v. Simpson*, *1997 U.S. Dist. LEXIS 13791*, *No. 96 CV 2971*, *1997 WL 570769*, *at \*3 (N.D. Ill. Sept. 10, 1997)* (citation and internal quotations omitted).

Plaintiffs here have satisfied the requirements of *Rule 23(a)(2)*. Defendants' practice of obtaining and using [*9] consumer credit information for the purpose of sending solicitations to Plaintiffs and the class members is the "common nucleus of operative facts" in this case. Moreover, two common questions of law are presented: (1) do the solicitations sent by Defendants qualify as a "firm offer of credit" under *15 U.S.C. § 1681b*; and (2) are the disclosures in the solicitations "clear and conspicuous" as required by *§ 1681m*. The first question requires an analysis of the solicitation letters, and the second question is decided on the face of the letters. Both issues are class-wide in nature as they apply to everyone who received the solicitations. *See Tremble v. Ocean Bank*, 05 C 2624, slip op. at 3, (N.D. Ill. March 21, 2006) (St. Eve, J.) (finding the commonality element satisfied because "[i]f Defendant violated the FCRA as to [Plaintiff] (by not providing 'clear and conspicuous' notice or by failing to make a 'firm offer'), then it did so as well as to the other members in the class").

Accordingly, because the claims arise from Defendants' standardized conduct - both in the sending of the form letters and the standardized documents themselves - the commonality [*10] requirement has been met.

### C. Typicality

Under *Rule 23(a)(3)*, the claims or defenses of the class representative must be typical of those of the class as a whole. The claim of a named plaintiff is typical of the class if "'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Johnson v. Aronson Furniture Co.*, *1998 U.S. Dist. LEXIS 14454*, *1998 WL 641342, at \*3* (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, *713 F.2d 225, 232 (7th Cir. 1983))*. The typicality requirement is closely related to the commonality requirement under *Rule 23(a)(2)*. *Rosario*, *963 F.2d at 1018*.

In this case, each absent class member has been subjected to the same course of conduct and event as Plaintiffs - namely, Defendants accessed each individual's consumer information, and each individual received Defendants' substantively identical solicitation. *See Tremble*, slip op. at 3 (finding typicality prong met where "[plaintiff's] claim arises from the same event or course of conduct as that affecting all class members - Defendant's form-letter mass-mailing"). [*11] As demonstrated in the previous section, Plaintiffs' claims are also based on the same legal theory as the claims of the other class members - specifically, the solicitations do not reflect a firm offer of credit and do not contain clear and conspicuous disclosures.

### D. Adequacy of Representation

Under *Rule 23(a)(4)*, the adequacy of representation requirement mandates that both the class representative and counsel for the named plaintiff zealously represent and advocate on behalf of the class as a whole. *See Retired Chicago Police Ass'n*, *7 F.3d at 598*. As the class representative, a plaintiff must not have "antagonistic or conflicting claims with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy[.]" *Sebo v. Rubenstein*, *188 F.R.D. 310, 316 (N.D. Ill. 1999)* (citation omitted). Counsel for named plaintiffs must be experienced and qualified and generally be able to conduct the litigation. *See Gammon v. GC Servs. Ltd. P'ship*, *162 F.R.D. 313, 317 (N.D. Ill. 1995)* (citation omitted).

Here, we find no evidence in the record that Plaintiffs' claims conflict [*12] with or are antagonistic to the claims of the proposed class members. All members in this class received solicitations from Defendants, who accessed the class members' consumer credit information. The Court further finds that Plaintiffs have a sufficient stake in the outcome of the litigation to ensure that they will be zealous advocates on behalf of the class.

In addition, counsel for the named plaintiffs in this case are experienced in handling class action lawsuits regarding fair credit reporting practices. *(See* D. Edelman Decl.) They also have competently handled several cases before this Court in the past. Thus, the adequacy of representation requirement under *Rule 23(a)(4)* has been met.

Defendants, however, assert that named Plaintiffs are inadequate because they failed to allege all available claims *(i.e.,* actual damages, punitive damages or negligent noncompliance) to the detriment of the absent class members. (Opp. at 25.) The Seventh Circuit has recently rejected this argument. In *Murray v. GMAC Mortgage Corp.*, *434 F.3d 948, 953 (7th Cir. 2006)*, the court held that "[u]nless a district court finds that personal injuries are large in relation to [*13] statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." This is exactly what Plaintiffs are doing in the face of "modest damages without proof of injury" for the vast majority of absent class members. *Id.* If some class members do have sizeable actual damages or wish to seek damages under other potential theories, "they may opt out and litigate

independently[,]" as suggested by the Seventh Circuit. *Id.*

### E. Requirements of *Federal Rule of Civil Procedure 23(b)(3)*

In addition to meeting class certification requirements under *Rule 23(a)*, Plaintiffs' proposed class must satisfy the requirements of one of the three subsections of *Rule 23(b)*. Here, Plaintiffs propose that certification is appropriate under *Rule 23(b)(3)*. Certification under *Rule 23(b)(3)* is appropriate if (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Fed. R. Civ. P. 23(b)(3)* [*14] ; *Szabo 249 F.3d at 676.*

#### 1. Predominance of Class Issues over Individual Issues

Under the predominance requirement of *Rule 23(b)(3)*, common questions of law or fact must predominate, but they need not be exclusive. *See Scholes v. Moore, 150 F.R.D. 133, 138 (N.D. Ill. 1993)* (citation omitted). In determining whether common questions predominate, the Court looks to whether there is a "common nucleus of operative facts." *Ziemack v. Centel Corp., 163 F.R.D. 530, 535-36 (N.D. Ill. 1995).*

As noted under the "commonality" section, there is a "common nucleus of operative facts" in this case. Specifically, Defendants obtained and/or used the class members' credit report information for the purpose of sending solicitations to them. Those standard solicitations are at the core of Plaintiffs' Complaint. Moreover, as also noted earlier, there are two common questions of law at issue in this case: (1) do the solicitations sent by Defendants qualify as a "firm offer of credit" under *§ 1681b*; and (2) are the disclosures in the solicitations "clear and conspicuous" as required by *§ 1681m*. The issues of law and fact that flow from Defendants' [*15] form letter predominate over any individual issue. Because the common issues of fact and law are likely to dominate this Court's attention, common questions of law and fact predominate. *See Tatz v. Nanophase Techs. Corp., 2003 U.S. Dist. LEXIS 9982, No. 01 C 8440, 2003 WL 21372471, at *9 (N.D. Ill. June 13, 2003).*

Defendants, in their Response, raise several arguments regarding why common questions do not predominate in this case. They are wrong on all counts. First, Defendants claim that a "firm offer of credit" to a consumer depends on "individualized examinations of each class member's financial circumstances." (Opp. at 15.) They principally rely on *Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004)* as support for this argument. In particular, they state: "[e]valuating the 'entire context' and the 'variety of factual issues' involved in [Defendants'] offer to determine whether it had 'sufficient value' for a particular consumer is a highly individualized endeavor." (Opp. at 17 (citing *Cole, 389 F.3d at 726, 728*).) Defendants' interpretation of *Cole*, however, is misguided. The Seventh Circuit clarified its *Cole* holding in *Murray v. GMAC* [*16] *Mortgage Corp.*:

> We do not read *Cole*, however, to require a consumer-by-consumer evaluation. An offer has value to "the consumer" if it is useful to the *normal* consumer. *Cole's* objective was to separate *bona fide* offers of credit from advertisements for products and services, determining from *"all* the material conditions that comprise the credit product in question whether it was a guise for solicitation rather than a legitimate credit product." That depends on the terms of the offer, not on recipients' idiosyncratic circumstances.

*434 F.3d at 955-56* (original citations and alterations omitted). Thus, the court found that a district court "need only determine whether the four corners of the offer satisfy the statutory definition . . . and whether the terms are honored when consumers accept. These questions readily may be resolved for a class as a whole." *Id. at 956.* Accordingly, the Court finds Defendants' position without merit. n1

> n1 Defendants attempt to distinguish mortgage offers of credit from other credit products. *(See* Opp. at 18 n.8.) They argue that the mortgage product is more complex and individualized because of issues relating to property value, property location and type of property. *(Id.)* The Court is unconvinced. The Seventh Circuit decision reversing the denial of class certification in *Murray* also involved a mortgage product.

[*17]

Second, Defendants incorrectly argue that the "clear and conspicuous" requirement mandates individualized inquiry as to whether a particular consumer actually noticed the disclosure. (Opp. at 20.) "Whether the disclosures contained in the [solicitations] are clear and conspicuous is a matter of law" and is based on an objective standard of what a reasonable consumer should notice. *Cole, 389 F.3d at 729; see id. at 730* (relying upon UCC definition of conspicuous - whether a reasonable person ought to have noticed the disclosure -

in deciding whether a disclosure fulfills the FCRA requirements); *see also Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 805-06 (7th Cir. 2001); *Smith v. Check-N-Go of Illinois, Inc.*, 200 F.3d 511, 514-15 (7th Cir. 1999). There is therefore no legal requirement to question each class member about whether he or she noticed the disclosure. The Seventh Circuit in *Cole*, for example, analyzed only the mailing to determine whether it contained "clear and conspicuous" disclosures; it did not discuss whether the plaintiff actually saw the disclosures. *Cole*, 389 F.3d at 731. [*18]

Defendants also assert that willfulness cannot be proved on a class wide basis: "willfulness is beset with individual questions because plaintiffs must show that [Defendants] knowingly and intentionally violated FCRA for each letter." (Opp. at 21.) The Court is hard-pressed to believe that Defendants, if found liable of FCRA violations, acted willfully when sending some solicitations and acted negligently when sending others. Defendants subjected all absent class members to the same practice, and caused them, according to Plaintiffs, "an increased risk of improper disclosure and identity theft, without notice of the ways in which they can protect themselves." (Reply at 11 (citations omitted).) *See also Kudlicki v. Farragut Fin. Corp.*, 2006 U.S. Dist. LEXIS 20302, 05 C 2459, slip op. at 2 (N.D. Ill. September 29, 2005) (Lindberg, J.) (deferring decision regarding plaintiff's ability to prove willfulness in court's order granting class certification). Thus, the Court does not find the issue of willfulness sufficient to overcome class certification.

Defendants further maintain that whether a class member is entitled to statutory damages of $ 100 to $ 1,000 is an individualized question. (Opp. at 22.) As already [*19] held by this Court, Plaintiffs are entitled to statutory damages even though they have not alleged actual damages. *(See* 5/25/06 Ord. at 18 [Doc. 100].) Each class member therefore need not prove individual actual damages or provide proof of causation to obtain statutory damages. *See Murray*, 434 F.3d at 953 ("[I]ndividual losses, if any, are likely to be small - a modest concern about privacy, a slight chance that information would leak out and lead to identity theft. That actual loss is small and hard to quantify is why statutes such as the [FCRA] provide for modest damages without proof of injury."). Any other individual issues regarding statutory damages are not sufficiently significant to defeat class certification. *See Cavin v. Home Loan Ctr., Inc.*, 2006 U.S. Dist. LEXIS 31308 , - F.R.D.-, No. 05 C 4987, 2006 WL 1313191, at *6 (N.D. Ill. May 10, 2006) (noting that "it is settled law that individualized damages, absent more, will not generally preclude class certification" when analyzing the predominance requirement in the FCRA context) (citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-61 (7th Cir. 2004)); *Kudlicki*, 05 C 2459, slip op. [*20] at 2 ("Even if there were individualized questions relating to damages, they are not significant enough to defeat class certification) (citing *De La Fuente v. Stokely-Van Camp Inc.*, 713 F.2d 225, 233 (7th Cir. 1983)).

Finally, Defendants, in a last-ditch effort to salvage their opposition to class certification, raise a "cash back" argument in their response to Plaintiffs' motion to modify the class definitions. Specifically, they argue that class members received solicitations offering different amounts of "cash back" as part of the loan - the amount depending on their estimated home value, mortgage balance and other individualized factors. (Defs. Resp to Mot. Modify Class Definitions at 3-4.) But as the Seventh Circuit cautioned, each consumers' "idiosyncratic circumstances" are irrelevant as to whether or not a firm offer of credit was extended. *Murray*, 434 F.3d at 956. Instead, to determine whether Defendants extended a firm offer of credit, the Court "need only determine whether the four corners of the offer satisfy the [FCRA] (as elaborated in *Cole)*, and whether the terms are honored when consumers accept." *Id.*

Accordingly, Plaintiffs [*21] have met the predominance prong by showing that common issues of fact and law will predominate in this case.

### 2. Superiority of Class Action for Fair and Efficient Adjudication of the Controversy

Under *Rule 23(b)(3)*, a class action must also be superior to other available methods for the fair and efficient adjudication of the controversy. *Szabo*, 249 F.3d at 676. The Court finds that a class action in this case is superior to other means of adjudication for two reasons. First, as discussed previously, this dispute contains a set of legal and factual issues that are shared by the members of the class, and class certification is more efficient than multiple individual suits at dealing with these common questions. *See Tatz*, 2003 U.S. Dist. LEXIS 9982, 2003 WL 21372471, at *9. Denial of the motion for class certification would potentially result in courts becoming consumed with many individual cases that seek to litigate an essential core of the same legal and factual issues.

Second, a class action is superior to individual action in this case because litigation costs are high and the likely recovery is limited. Thus, recipients of the letter are unlikely to prosecute individual [*22] claims without the availability of cost-sharing efficiencies of a class action. *See id. at *10* (citing *Haynes v. Logan Furniture Mart. Inc.*, 503 F.2d 1161, 1164-65 (7th Cir. 1974)). Furthermore, many of the persons in these classes may be unaware that the form letter sent by Defendants may violate the FCRA, and a class action suit may help to safeguard their rights. Public policy encourages that cases of this type proceed as class actions in order to put an end to any illegal activity that may be occurring.

Defendants' arguments to the contrary have been

soundly rejected by the Seventh Circuit. Their contentions that the potential "staggering damage award" would "shock the conscience" or violate their due process are without merit. (Opp. at 7.) Plaintiffs have limited the class definition to those recipients residing in the Northern District of Indiana - more than 50,000 individuals. This is hardly a shocking number of class members; nor is the possible damages award "catastrophic" or "horrendous." *(Id.)* More significant, Defendants created this situation by their own making - by accessing thousands of individuals' credit scores and sending solicitations to [*23] them. *See Murray, 434 F.3d at 953* ("The reason that damages can be substantial, however, does not lie in an 'abuse' of *Rule 23*; it lies in the legislative decision to authorize awards as high as $ 1,000 per person, combined with [Defendant's] decision to obtain the credit scores of more than a million persons.") (citation omitted); *Murray v. Cingular Wireless II, LLC, 05 C 1334, 2005 U.S. Dist. LEXIS 39542, at *16-17 (N.D. Ill. Dec. 22, 2005)* (Manning, J.) ("[Defendant] created the potential for a large damages award by sending out a slew of unsolicited offers of credit, and cannot use the large number of potentially injured individuals to shield itself from class certification."). In any event, if the damages award rises to a due process violation or is ruinous to Defendants' business, this Court has the authority to adjust the statutory damages amount if necessary. *See Murray, 434 F.3d at 954* ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified.") (citing *State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003))*. [*24]

Finally, Defendants argue that a class action is not a superior mechanism of adjudication because of the "costless" alternatives of individual actions (because prevailing plaintiffs are entitled to attorneys' fees and costs) and FTC enforcement. (Opp. at 13-14.) "The mere presence of a fee-shifting and FTC enforcement provision within the FCRA does not automatically render class actions inferior." *Wanek v. C.M.A. Mortgage Inc., 05 C 4775, slip op. at 3 (N.D. Ill. April 17, 2006)* (Lindberg, J.). Accordingly, the Court finds that a class action is a superior method of litigating this case.

### III. CONCLUSION

Accordingly, because the Court finds that the proposed classes meet the requirements of *Federal Rule of Civil Procedure 23(a)* and *(b)(3)*, Plaintiffs' Motion for Class Certification [Doc. 35] is hereby **GRANTED**. Plaintiffs' Motion for Leave to Modify Proposed Class Definitions [Doc. 94] is also **GRANTED**. Defendants' request for a hearing is **DENIED AS MOOT**.

The two classes are defined as follows:

> Class A consists of all persons with an address within the geographic jurisdiction of the United States District [*25] Court for the Northern District of Indiana to whom Defendant New Century Mortgage Corporation sent or caused to be sent material in the form represented by Exhibits A or D (that are attached to the Complaint) between April 20, 2003 and May 10, 2005, who did not obtain credit in response thereto.
>
> Class B consists of all persons with an address within the geographic jurisdiction of the United States District Court for the Northern District of Indiana to whom Defendant Home 123 Corporation or New Century Mortgage Corporation sent or caused to be sent material in the form represented by Exhibit B (that is attached to the Complaint) between April 20, 2003 and May 10, 2005, who did not obtain credit in response thereto.

**SO ORDERED.**

ENTERED: August 4, 2006

s/ PHILIP P. SIMON, JUDGE

UNITED STATES DISTRICT COURT

# APPENDIX C

1 of 1 DOCUMENT

**DARRELL BRUCE, Plaintiff, vs. KEYBANK NATIONAL ASSOCIATION d/b/a CHAMPION MORTGAGE, Defendant.**

NO. 2:05-CV-330

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA, HAMMOND DIVISION

*2006 U.S. Dist. LEXIS 60207*

August 7, 2006, Decided
August 7, 2006, Filed

**COUNSEL:** [*1] For Darrell Bruce, Plaintiff: **Daniel A Edelman**, Jeremy P Monteiro, **Edelman Combs** Latturner & Goodwin LLC, Chicago, IL.

For KeyBank National Association doing business as Champion Mortgage, Defendant: Richard E Gottlieb, Arthur F Radke, Renee L Zipprich, Dykema Gossett PLLC - Chi/IL, Chicago, IL.

**JUDGES:** RUDY LOZANO, Judge.

**OPINIONBY:** RUDY LOZANO

**OPINION:**

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Class Certification, filed on February 21, 2006. For the reasons set forth below, Plaintiff's motion is **GRANTED**. Accordingly, a class consisting of "all persons with addresses in Lake or Porter Counties, Indiana, to whom KeyBank sent or caused to be sent a solicitation in the same form represented by Exhibit A to the Amended Complaint, between August 29, 2003, and September 18, 2005, and did not receive credit in response thereto" is **CERTIFIED**.

BACKGROUND

Plaintiff, Darrell Bruce, allegedly received a pre-screened offer of credit in the mail from Defendant, KeyBank National Association, doing business as Champion Mortgage ("KeyBank"). According to Plaintiff, KeyBank chose to send this offer of credit to him and numerous other persons [*2] after improperly accessing their credit report. Plaintiff contends KeyBank violated the Fair Credit Reporting Act ("FCRA") and is liable for statutory damages.

In the instant motion, Plaintiff seeks to certify a class consisting of "all persons with addresses in Lake or Porter Counties, Indiana, to whom KeyBank sent or caused to be sent a solicitation in the same form as was received by Plaintiff Darrell Bruce, between August 29, 2003, and September 18, 2005, and did not receive credit in response thereto."

DISCUSSION

The standards for class certification are well grounded and set forth in *Rule 23 of the Federal Rules of Civil Procedure*. The Plaintiff must establish that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23(a).*

In addition, the Plaintiff must establish at least [*3] one prong of Rule 23(b). Relevant here is the third prong, which provides that an action may be maintained as a class action if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." With these principles in mind, the Court can address the appropriateness of a class action in this case.

Numerosity

As set forth above, Rule 23(a) (1) requires that the class be "so numerous that joinder of all members is impracticable." Where the membership of a proposed

Case: 1:05-cv-07097 Document #: 234-2 Filed: 09/11/06 Page 18 of 19 PageID #:5737

Page 2
2006 U.S. Dist. LEXIS 60207, *

class is at least forty, this Circuit has found joinder to be impracticable and the numerosity requirement to be met. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *Matz v. Household Intern. Tax Reduction Inv. Plan*, 232 F.R.D. 593, 600 (N.D. Ill. 2005). Here, Plaintiff represents that the proposed class is composed of thousands of individuals. KeyBank does not dispute numerosity exists. Therefore, Plaintiff has satisfied this requirement.

Commonality

Rule 23(a)(2) requires the [*4] Plaintiff to show that there are common questions of law or fact among the proposed class members. "Commonality generally exists when the defendant has engaged in 'standardized conduct' towards members of the proposed class." *Murray v. Sunrise Chevrolet, Inc.*, No. 04 C 7668, 2006 WL 862886 at *2 (N.D. Ill. March 30, 2006). One common question to the proposed class is whether KeyBank accessed their credit information without their permission for the purpose of sending them a FCRA-violating letter. This is enough to satisfy the commonality prong. *Id.* Notably, while KeyBank argues that an individualized inquiry will be necessary to determine whether a FCRA violation existed, it makes that argument in the context of Rule 23(b)(3); it does not dispute commonality under Rule 23(a)(2).

Typicality

Rule 23(a)(3) demands that the claims of the Plaintiff be typical of the claims of the class. A plaintiff's claim is typical of a proposed class if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). [*5] The proposed class has been subjected to the same practice as Plaintiff; that is, their credit was allegedly accessed without their authorization for the purpose of mailing a letter that was nothing more than a general solicitation for business. Again, Defendant does not object to a finding of typicality and the Court finds this requirement to be met.

Adequacy of Representation

Rule 23(a)(4) requires that the Plaintiff will fairly and adequately protect the interest of the class. This determination has two facets. First, the plaintiff must not have interests antagonistic to the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Second, Plaintiff's counsel must be qualified, experienced, and able to effectively conduct the litigation. *Rogers v. Baxter Intern, Inc.*, No. 04 C 6476, 2006 WL 794734 at *5 (N.D. Ill. March 22, 2006)(citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997)). KeyBank takes no issue with the former issue, but does with the latter.

KeyBank contends that Plaintiff's counsel is not adequate to serve as class counsel. KeyBank concedes that Plaintiff's counsel has substantial experience [*6] handling FCRA class actions; nevertheless, KeyBank asserts that Plaintiff's counsel is not adequate due to their past unethical conduct. KeyBank points to two recent Seventh Circuit decisions in support of its argument. First, in *Murray*, the court of appeals noted that the law firm of **Edelman, Combs**, Latturner & Goodwin, LLC proposed entering into an untenable settlement, wherein the named plaintiff's proposed payment was treble that of the allotted statutory damages, while each proposed class member would essentially be paid nothing. *Murray v. GMAC Mortgage Co.*, 434 F.3d 948 (7th Cir. 2006). Such a proposed settlement agreement made Judge Easterbrook opine, *in dicta*, that "it may well be that . . . **Edelman, Combs**, Latturner & Goodwin, LLC is not an appropriate counsel." *Id. at 952*. Second, *in Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832 (7th Cir. 2005), **Edelman, Combs**, Latturner & Goodwin, LLC, were sanctioned for sending a pre-litigation demand letter.

This Court duly notes the instances pointed out by KeyBank. Nevertheless, as pointed out in Exhibit B to Plaintiff's instant motion, Plaintiff's counsel, as KeyBank concedes, [*7] is experienced and well-qualified to handle this case. Moreover, despite Plaintiff's counsel's blemished past, this Court has found no other written decision finding them to be inadequate based upon ethical grounds. In fact, the opposite is true. Judges Manning, Hart and Lefkow, all of the Northern District of Illinois, have considered similar circumstances and found Plaintiff's counsel to nonetheless be adequate. *See Murray v. Cingular Wireless II, LLC*, No. 05 C 1334, 2005 U.S. Dist. LEXIS 39542 (N.D. Ill. Dec. 22, 2005); *Chapman v. Worldwide Asset Mgmt, LLC*, No. 04 C 7625, 2005 U.S. Dist. LEXIS 18881 (N.D. Ill. Aug. 30, 2005); *Longo v. Law Offices of Gerald E. Moore & Assoc., P.C.*, No. 04 C 5759, slip op. at 10 (N.D. Ill. Mar. 30, 2006). Moreover, this Court's past experiences with Plaintiff's counsel in similar cases has given no indication that they would conduct themselves unethically or would otherwise be inadequate to handle this case. This Court finds Plaintiff's counsel to be adequate under Rule 23(a)(4).

Rule 23(b)(3)

This rule requires Plaintiff to show that common questions of law or fact predominate over individual questions, [*8] and that a class action is superior to other methods for the fair and efficient adjudication of the controversy. *Amchem Prods*, 521 U.S. at 615. KeyBank argues that Plaintiff cannot meet this burden for two reasons. First, a class-action, KeyBank argues, is not a superior means of adjudication because KeyBank faces potential statutory damages of hundreds of millions of dollars. Simply, this type of damages, without any

proof of actual harm, is disproportionate to the alleged violations and offends the due process clause. Second, individual questions predominate over common ones because whether KeyBank's offer was "firm offer of credit" and whether KeyBank willfully violated the FCRA are highly individualized inquiries. As such, KeyBank asserts that each transaction must be examined.

To cut this analysis short, both of KeyBank's arguments have been foreclosed by the Seventh Circuit's opinion in *Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006)*. As to its first argument, concerning damages, the court in Murray was faced with a more compelling situation than presented here. There, the proposed class of 1.2 million was seeking statutory damages, [*9] which could have led to potential liability in the billions of dollars for purely technical violations of FCRA. Even in that situation, the court held that refusing to certify a class based upon the potential aggregate amount of statutory damages was inappropriate. *Id. at 953*. The court noted that the amount of damages would be a result of legislative action, not any abuse of the class certification process. The court went on and noted that should any award be constitutionally excessive, the corrective measure would be to reduce it after the class was certified. *Id. at 954*. These principles ring true here as well. n1

---

n1 In Plaintiff's amended complaint, Plaintiff sought to certify a class consisting of "all persons with an Indiana address to whom Defendant sent or caused to be sent material in the form represented by Exhibit A, on or after August 29, 2003 and before September 19, 2005, and who did not obtain credit in response to the material." In an effort to narrow the definition, Plaintiff now proposes that those Indiana residents be limited to those persons in Lake or Porter Counties in Indiana, which this Court finds to be appropriate at this time.

---

[*10]

KeyBank's second argument fares no better. Again, relying heavily on *Murray*, the Court finds that common issues of law and fact predominate over individual issues. *Murray* has instructed courts in this circuit that the issue of whether a "firm offer of credit" has been made in situations such as this is a class issue. *Id. at 955-56*. Moreover, whether or not KeyBank acted willfully in violating the FCRA is a class issue as well. *See id. at 952-53*(noting that statutory damages require willful conduct and setting forth that class seeking statutory damages should be certified); *see also Kudlicki v. Farragut Financial Corp.*, No. 05 C 2459, *2006 WL 927281* at *2(N.D. Ill. Jan. 20, 2006) (finding defendant willfully failed to comply with FCRA on a class-wide basis).

CONCLUSION

For the reasons set forth above, this motion is **GRANTED**. Accordingly, a class consisting of "all persons with addresses in Lake or Porter Counties, Indiana, to whom KeyBank sent or caused to be sent a solicitation in the same form as represented by Exhibit A to the Amended Complaint, between August 29, 2003 and September 18, 2005, and did not [*11] receive credit in response thereto" is **CERTIFIED**.

DATED: August 7, 2006

/s/ RUDY LOZANO, Judge

United States District Court