# APPENDIX D

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 54513

Page 1 of 7

Case: 1:05-cv-07097 Document #: 234-3 Filed: 09/11/06 Page 2 of 23 PageID #:5740

Service: Get by LEXSEE®
Citation: 2006 U.S. Dist. LEXIS 54513

*2006 U.S. Dist. LEXIS 54513, \**

THOMAS A. MURRAY, Plaintiff, v. INDYMAC BANK, F.S.B., Defendant.

No. 04 C 7669

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2006 U.S. Dist. LEXIS 54513

August 7, 2006, Decided

**PRIOR HISTORY:** Murray v. Indymac Bank, F.S.B., 2005 U.S. Dist. LEXIS 16459 (N.D. Ill., June 13, 2005)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff consumer sued defendant bank and alleged that the letter the bank sent to him and the putative class members did not constitute a firm offer of credit, which was necessary to justify accessing his credit report, and did not make disclosures required by, inter alia, the Fair Credit and Reporting Act (FCRA), 15 U.S.C.S. § 1681 et seq. The consumer sought class certification pursuant to Fed. R. Civ. P. 23.

**OVERVIEW:** The consumer claimed that the bank unlawfully accessed the credit reports of approximately 18,000 consumers for the purpose of sending them letters offering a mortgage loan. The court had identical common facts before it since all of the proposed class members were contending that the bank mailed the same improper form letter to them and improperly accessed their credit reports. The bank conceded that the commonality requirement was met. The bank also conceded that the typicality requirement was met. The bank had not explained why it believed that counsel was inadequate to represent the current class when the bank had no objection to counsel representing the much larger nationwide class for the settlement. Furthermore, putative class counsel had shown that it had extensive experience in acting as a class representative and there had not been a showing by the bank that the consumer had interests that were antagonistic with other proposed class members. Because common issues of fact and law predominated over any individual issues in the action, a class action was the most efficient way for the numerous members of the proposed class to adjudicate their claims.

**OUTCOME:** The court granted the consumer's motion for class certification.

**CORE TERMS:** proposed class, class certification, class action, adequacy, settlement, typicality, predominate, certification, course of conduct, concedes, commonality, nationwide, mailed, adequately protect, questions of law, legal theory, predominance, numerosity, antagonistic, accessed, consumer, mailing, joinder, routes, individual issues, residents, certify

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Civil Procedure > Class Actions > Prerequisites > General Overview 

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 54313
Case: 1:05-cv-07097 Document #: 234-3 Filed: 09/11/06 Page 3 of 23 PageID #:5741
Page 2 of 7

*HN1* Fed. R. Civ. P. 23(a) provides that a class may be certified if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The four elements of Rule 23(a) are requirements for class certification. A proposed class action must also satisfy at least one of the alternative routes provided in Fed. R. Civ. P. 23(b). More Like This Headnote

Banking Law > Consumer Protection > Fair Credit Reporting > General Overview

Civil Procedure > Class Actions > Prerequisites > Commonality

*HN2* To meet the commonality requirement in Fed. R. Civ. P. 23(a), a plaintiff must show that the proposed class members' claims involve a "common nucleus of operative fact," which generally exists in Fair Credit and Reporting Act, 15 U.S.C.S. § 1681 et seq., cases when the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents. More Like This Headnote

Civil Procedure > Class Actions > Prerequisites > Typicality

*HN3* A representative plaintiff meets the typicality requirement of Fed. R. Civ. P. 23(a) by showing that his claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. A plaintiff can meet the typicality requirement even if there are factual distinctions between the claims of the named plaintiffs and those of other class members and thus, similarity of legal theory may control even in the face of differences of fact. More Like This Headnote

Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation

*HN4* In order for a class to fulfill the adequacy of representation requirement in Fed. R. Civ. P. 23(a): (1) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) the plaintiff must not have interests antagonistic to those of the class. Whether a party would adequately protect the interests of the class is a question of fact depending on the circumstances of each case. More Like This Headnote

Civil Procedure > Class Actions > Certification

Civil Procedure > Class Actions > Prerequisites > General Overview

*HN5* Under Fed. R. Civ. P. 23(b)(3) an action may be maintained as a class action if the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, and in addition: the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). More Like This Headnote

Civil Procedure > Class Actions > Certification

Civil Procedure > Class Actions > Prerequisites > General Overview

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 54313

Case: 1:05-cv-07097 Document #: 234-3 Filed: 09/11/06 Page 4 of 23 PageID #:5742

Page 3 of 7

HN6 ⤴ In determining the applicability of Fed. R. Civ. P. 23(b)(3), the court should consider factors such as: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. More Like This Headnote

**COUNSEL:** **[*1]** For Thomas A Murray, Plaintiff: Daniel A. Edelman, James O. Latturner, Thomas Everett Soule, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Indymac Bank, F.S.B., Defendant: Richard Eric Gottlieb, Arthur F. Radke, Renee Lynn Zipprich, Todd A. Gale, Dykema Gossett PLLC, Chicago, IL; Naomi A Carry, Dykema Gossett Rooks Pitts, PLLC, Chicago, IL.

For Leonard Forrest, Intervenor Plaintiff: Anthony F. Fata, Jennifer Winter Sprengel, Marvin Alan Miller, Miller Faucher and Cafferty, LLP, Chicago, IL.

For Nikki Childress, Susan Collins, Vasuki Parthiban, Movants: Anthony F. Fata, Jennifer Winter Sprengel, Miller Faucher and Cafferty, LLP, Chicago, IL; Douglas Bowdoin, Douglas Bowdoin, P.A., Orlando, FL.

**JUDGES:** Samuel Der-Yeghiayan, United States District Court Judge.

**OPINION BY:** Samuel Der-Yeghiayan

**OPINION: MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Thomas A. Murray's ("Murray") motion for class certification. For the reasons stated below, we grant the motion for class certification.

**BACKGROUND**

Murray claims that Defendant IndyMac Bank, F.S.B. ("IndyMac") unlawfully accessed the credit reports of approximately **[*2]** 18,000 Illinois consumers for the purpose of sending them letters offering a mortgage loan. Murray alleges that he received such a letter in October, 2004, which stated: "[I]nformation from a consumer report was used in conjunction with this offer." (A. Compl. Par. 8). The letter further allegedly stated: "This offer has been extended based upon information from the consumer credit report which indicates that you meet certain credit criteria for the offered credit." (A Compl. Par. 8). According to Murray, the letter sent to him and the putative class members does not constitute a firm offer of credit, which is necessary to justify accessing his credit report, and does not make certain required disclosures in a clear and conspicuous manner as is required under the Fair Credit and Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. Furthermore, Murray contends that IndyMac's actions were done willfully in violation of 15 U.S.C. § 1681b of the FCRA. Murray now seeks class certification pursuant to Federal Rule of Civil Procedure 23.

**LEGAL STANDARD**

HN1 ⤴ Federal Rule of Civil Procedure 23(a) **[*3]** ("Rule 23(a)") provides that a class may be certified if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 54313

Case: 1:05-cv-07097 Document #: 234-3 Filed: 09/11/06 Page 5 of 23 PageID #:5743

Page 4 of 7

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The four elements of Rule 23(a) are requirements for class certification. *See* Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993)(stating that a failure to meet any one of the Rule 23(a) requirements precludes certification as a class). A proposed class action must also satisfy at least one of the alternative routes provided in Federal Rule of Civil Procedure 23(b) ("Rule 23(b)"). Fed. R. Civ. P. 23(b); *Rosario v. Livadatis,* 963 F.2 1013, 1017 (7th Cir. 1992). A plaintiff seeking class certification has the burden of proving that the proposed class meets the requirements of Rule 23. **[*4]** *See* Retired Chicago Police Ass'n, 7 F.3d at 596 (holding that the "party seeking class certification assumes the burden of demonstrating that certification is appropriate").

## DISCUSSION

Murray seeks to certify a class of 18,000 Illinois residents, which would be made up of the people in Illinois who allegedly received the same letter that was mailed to Murray on or around the same date that it was mailed to Murray. (Mem. 7).

I. Rule 23(a) Requirements

Murray argues that the proposed class meets all of the requirements of Rule 23(a). IndyMac concedes that Murray meets all of the requirements of Rule 23(a), except for the adequacy of representation requirement.

A. Numerosity Requirement

Given that the potential number of claimants is approximately 18,000, we agree that the individual joinder of all proposed class members would be impractical. IndyMac has also conceded that the numerosity requirement is satisfied. Therefore, we find that the proposed class meets the numerosity requirement.

B. Commonality Requirement

*HN2*To meet the commonality requirement, a plaintiff must show that the proposed class members' claims involve a "common nucleus of **[*5]** operative fact," which generally exists in FCRA cases when "the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998). In the instant action, we have identical common facts before us since all of the proposed class members are contending that IndyMac mailed the same improper form letter to them and improperly accessed their credit reports. IndyMac also concedes that the commonality requirement is met. Therefore, we find that the proposed class meets the commonality requirement.

C. Typicality Requirement

*HN3*A representative plaintiff meets the typicality requirement by showing that his claim "'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Id.* (quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)). A plaintiff can meet the typicality requirement "even if there are factual distinctions between the claims of the named plaintiffs and those of other **[*6]** class members" and "[t]hus, similarity of legal theory may control even in the face of differences of fact." *De La Fuente,* 713 F.2d at 232. Murray's claim arises from the same alleged course of conduct by IndyMac concerning the mailing of the letter and inspection of the class members' credit histories. In addition, the claims of the proposed class members are all based upon the same provisions of the FCRA that Murray bases his claim upon. IndyMac has also conceded that the typicality requirement

Case: 1:05-cv-07097 Document #: 234-3 Filed: 09/11/06 Page 6 of 23 PageID #:5744

is met. Therefore, we find that the proposed class satisfies the typicality requirement.

D. Adequacy of Representation Requirement

HN4⚡In order for a class to fulfill the adequacy of representation requirement: (1) "the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation," and (2) "the plaintiff must not have interests antagonistic to those of the class." _Susman v. Lincoln American Corp., 561 F.2d 86, 90 (7th Cir. 1977)_(quoting _Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239, 247 (3rd Cir. 1975)_). Whether a party would adequately protect the interests of the class is a "question **[*7]** of fact depending on the circumstances of each case." _Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 704 (7th Cir. 1986)_(quoting in part _Susman, 561 F.2d at 90_).

IndyMac argues that Murray's counsel ("Counsel") has shown through their course of conduct in this case that they will not represent the best interests of the proposed class. This court had previously certified a class in this action and the matter was settled in a nationwide class action settlement. However, some members of the class subsequently came forward complaining that they were not notified of the class and settlement, and we therefore, in the interest of fairness, reopened the case and vacated the settlement and class certification. Murray then limited his class action to residents of Illinois. IndyMac points out that the size of the current class is significantly smaller than the size of the class that was previously certified in this action and IndyMac contends that "Plaintiff's counsel has illustrated that it is willing to adjust class size, up or down, whenever its financial interest is served by such adjustment." (Ans. 6). IndyMac portrays Counsel's decision to limit the **[*8]** class as a decision to "abandon[] the vast majority" of the class members previously included within the class solely for the purposes of limiting expenses associated with notifying class members. (Ans. 6). We do not agree that we can infer such an improper motive on the part of Counsel merely from the fact that Murray has altered the scope of the proposed class. Murray chose to limit the scope of the class that he seeks to certify, which is his right to do as the Plaintiff. Also, although IndyMac now objects to the adequacy of Counsel, IndyMac did not object to Counsel's representation when IndyMac entered into the nationwide class action settlement. (7/22/05 Prel Appr. Cl. Sett. 2)(12/13/05 Fin. Appr. Cl. Sett. 3). IndyMac has not explained why it believes that Counsel is inadequate to represent the current class when IndyMac had no objection to Counsel representing the much larger nationwide class for the settlement.

IndyMac also argues that Counsel, who are members of Edelman, Combs, Latturner & Goodwin, LLC ("Edelman"), do not meet the ethical standards required for class counsel. IndyMac points to _Riddle & Associates, P.C. v. Kelly, 414 F.3d 832 (7th Cir. 2005)_, **[*9]** in which the Seventh Circuit upheld a district court's award of attorneys' fees as a sanction against Edelman. _Id._ at 836. The Seventh Circuit found that "Edelman is responsible for causing the suit to be filed and for allowing the litigation to continue when it knew that [the defendant] could not win." _Id._ The Court concluded that "[w]hen Edelman demanded $ 3000 to release a blatantly frivolous claim, the firm pursued a path that it should have known was improper" and that "its conduct was 'objectively unreasonable and vexatious.'" _Id._ (quoting _Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc., 886 F.2d 1485, 1491 (7th Cir. 1989)_). The Court in _Riddle_ also awarded additional fees and costs to the defendant's law firm and found that Edelman was obligated to pay $ 18,037.22 for attorneys' fees and costs. _Id. at 837._

Although IndyMac correctly points out that Edelman was sanctioned for unethical conduct in _Riddle_, the sanctions in _Riddle_ were not related to the adequacy of representation of Edelman as class counsel, which is currently at issue before this court. IndyMac has not cited any controlling precedent or provided any **[*10]** evidence that shows that Edelman should be disqualified as class counsel in the instant action. Edelman has shown that it has extensive experience in acting as a class representative and there has not been a showing by IndyMac that Murray has interests that are antagonistic with other proposed class members.

Therefore, we find that the adequacy of representation requirement has been met in this action.

II. Rule 23(b) Requirements

As is indicated above, in order to obtain certification, a plaintiff must show that certification is appropriate under one of the alternative routes offered in Rule 23(b). Murray seeks to proceed *HN5* under Rule 23(b)(3), under which "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23 (b)(3). *HN6* In determining the applicability of Rule 23(b)(3), the court **[*11]** should consider factors such as: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." *Id.*

A. Predominance Requirement

Murray contends that the common issues of law and fact between the claims of the proposed class members predominate over the individual issues. We agree. In the instant action, the common issues concerning the contents and propriety of the letter and the same provisions of the FCRA will predominate these proceedings. IndyMac also concedes that Murray meets the predominance requirement. Therefore, we find that Murray has satisfied the predominance requirement.

B. Superiority Requirement

As we have indicated above, the common issues of fact and law will predominate over any individual issues in this action. A class action is the most efficient way for the numerous members of **[*12]** the proposed class to adjudicate their claims because bringing all the proposed class members' claims into one lawsuit will save the cost and judicial resources that would be necessary to conduct separate litigation for each class member. The common issues and facts will facilitate the ability of the court, in a class action format, to resolve the disputes of all of the proposed class members in a comprehensive and efficient manner. Therefore, we conclude that a class action suit would be the superior method to resolve the proposed class members' claims. Since Murray has shown that the proposed class satisfies all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3), we grant the motion for class certification.

**CONCLUSION**

Based on the foregoing analysis, we grant Murray's motion for class certification.

Samuel Der-Yeghiayan

United States District Court Judge

Dated: August 7, 2006

Service: Get by LEXSEE®
Citation: 2006 U.S. Dist. LEXIS 54513

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 54513

Case: 1:05-cv-07097 Document #: 234-3 Filed: 09/11/06 Page 8 of 23 PageID #:5746

Page 7 of 7

View: Full
Date/Time: Monday, September 11, 2006 - 11:31 AM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

 LexisNexis®

About LexisNexis  |  Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# APPENDIX E

12 of 27 DOCUMENTS

**Alonzo Manning vs. Sutton Ford, Inc.**

**06 C 2512**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

*2006 U.S. Dist. LEXIS 61732*

**August 16, 2006, Decided**
**August 16, 2006, Filed**

**COUNSEL:** [*1] For Alonzo Manning, individually and on behalf of a class, Plaintiff: Daniel A. Edelman, Cathleen M. Combs, Curtis Charles Warner, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Sutton Ford, Inc., Defendant: Daniel Aaron Wolf, Marc K. Schwartz & Associates, Buffalo Grove, IL; Mark S. Bernstein, Steven J. Yatvin, Steven J. Yatvin, Barack Ferrazzano Kirschbaum Perlman & Nagelberg LLP, Chicago, IL.

**JUDGES:** James F. Holderman, Judge.

**OPINIONBY:** James F. Holderman

**OPINION: DOCKET ENTRY TEXT**

Defendant Sutton Ford's July 19, 2006 motion to dismiss and motion for a more definite statement (Dkt. Nos. 17, 19) are denied. Pursuant to this court's order of August 1, 2006, Sutton Ford is to answer Manning's amended complaint by no later than August 31, 2006. The dates set in the court's August 1, 2006 scheduling order remain in effect. The parties are also encouraged to discuss settlement.

**STATEMENT**

On June 29, 2006, plaintiff Alonzo Manning, ("Manning") filed a **class action** complaint against defendant Sutton Ford, Inc. ("Sutton Ford"), alleging a violation of the **Fair Credit Reporting** Act ("**FCRA**"), *15 U.S.C. § 1681 et. seq*, a common law claim [*2] for invasion of privacy and violation of the Illinois **Consumer Fraud** Act, *815 ILCS 505/2*. (Dkt. No. 17). On July 19, 2006, Sutton Ford filed a pending motion to dismiss the invasion of privacy claim for failure to state a claim upon which relief may be granted pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* ("Rules"), (Dkt. No. 19) and a motion for a more definite statement. (Dkt. No. 20). For the reasons set forth below, this court denies Sutton Ford's motion to dismiss and

motion for a more definite statement.

Manning's complaint alleges that he received a notice in the mail in June 2005 from Sutton Ford entitled "Now You Can Lower Your Car Payments and Drive the Car of Your Dreams." (Dkt. No. 17, Ex. A at pg. 1). Manning alleges that he did not authorize Sutton Ford to access his credit report. (*Id.* at P 18). He also alleges that Sutton Ford's actions were targeted at individuals with poor credit histories and also its actions increased his exposure to possible identity theft. Sutton Ford argues that Manning has failed to state a common law claim for invasion of privacy in Count II and also [*3] failed to plead fraud under the Illinois **Consumer Fraud** Act and Count III.

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper only when it appears beyond a doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Cody v. Harris, 409 F.3d 853, 857 (7th Cir. 2005)*. The complaint need not plead facts to allege a claim, *Lekas v. Briley, 405 F.3d 602*. 606 (7th Cir. 2005), the well pleaded allegations of the complaint must be accepted as true, *Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Cody, 409 F.3d at 857*, and ambiguities in the complaint must be construed in the plaintiff's favor. *Id. at 857*. "The purpose of a motion to dismiss ... is to test the legal sufficiency of the complaint." *Tokh v. Water Tower Court Homeowners Ass'n, 06 C 489, 2006 WL 1648442*, at *1 (N.D. Ill. June 12, 2006) (citing *Cler v. Illinois Educ. Ass'n, 423 F.3d 726, 729 (7th Cir. 2005); Szabo v. Bridgeport Mach., Inc., 249 F.3d 672, 675-76 (7th Cir. 2001))*. [*4]

Sutton Ford argues that Manning's "amended complaint does not allege any facts that would sustain" his cause of action for common law invasion of privacy in Count III. (Dkt, No. 19 at pg. 2). The Seventh Circuit has instructed that "one pleads claims (which is to say, grievances) rather than legal theories and factual specifics. ... Any decision declaring that this complaint is deficient because it does not allege X is a candidate for

summary reversal, unless X is on the list in Rule 9(b)." *Simpson v. Nickel, 450 F.3d 303, 306 (7th Cir. 2006)* (internal citations and quotations omitted); *see, e.g., Kolupa v. Roselle Park Dist., 438 F.3d 713, 714 (7th Cir. 2006)* ("It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate."). Rule 9(b) requires heightened pleading only for fraud, mistake or condition of mind, not for a common law claim for invasion of privacy.

Sutton Ford's second motion seeks a more definite statement as to Manning's claim under the Illinois **Consumer Fraud** Act in Count III. In reality, Sutton Ford is arguing that [*5] Manning has failed to meet the heightened pleading requirements of Rule 9(b). Manning responds that Rule 9(b) is not applicable because the Illinois **Consumer Fraud** Act covers a variety of acts besides fraud and his claim is for an unfair practice instead of fraud. This court need not decide whether Manning is correct on the issue of whether there are claims under the Illinois **Consumer Fraud** Act that are

not covered under Rule 9(b)'s heightened pleading requirements because Manning's complaint meets the heightened pleading requirements of Rule 9(b). The heightened pleading requirement of Rule 9(b) requires the plaintiff to provide the "who, what, when, where and how" in support of the claim. *See United States ex rel. Gross v. AIDS Res. Alliance-Chicago, 415 F.3d 601, 605 (7th Cir. 2005)*. Manning attached to the complaint a copy of the notice that forms the basis of his suit. This notice, along with the allegations set forth in the complaint, provide sufficient information to comply with the requirements of Rule 9(b).

For the reasons set forth above, this court denies Sutton Ford's July 19, 2006 motion to dismiss and motion for a more definite statement. (Dkt Nos. 17, 19). [*6] Pursuant to this court's order of August 1, 2006, Sutton Ford is to answer Manning's amended complaint by no later than August 31, 2006. The dates set in the court's August 1, 2006 scheduling order remain in effect. The parties are also encouraged to discuss settlement.

# APPENDIX F

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 1255 | **DATE** | 8/21/2006 |
| **CASE TITLE** | Murray vs. Finance America | | |

**DOCKET ENTRY TEXT**

Finance America's Motion for Partial Reconsideration of the Court's April 4, 2006 Order is denied. (R. 92-1.) Finance America's Request for Judicial Notice in Support of its Motion for Reconsideration is also denied. (R. 93-1.)

■[ For further details see text below.]

Notices mailed by Judicial staff.

---

## STATEMENT

Plaintiff Thomas A. Murray filed the present putative class action Complaint alleging that Defendant Finance America, LLC ("Finance America") obtained his credit report for an impermissible purpose in violation of 15 U.S.C. § 1681b of the Fair Credit Reporting Act ("FCRA"). On April 4, 2006, the Court granted in part and denied in part Murray's motion for summary judgment and denied Finance America's motion for summary judgment. Before the Court is Finance America's Motion for Partial Reconsideration of the Court's April 4, 2006 Memorandum, Opinion, and Order pursuant to Federal Rule of Civil Procedure 54(b).[1] For the following reasons, the Court denies Finance America's motion, as well as its Request for Judicial Notice in Support of its Motion for Reconsideration.

### LEGAL STANDARD

A court may exercise its inherent authority to reconsider an interlocutory order because such orders are "subject to revision at any time before the entry of judgment adjudicating all the claims." *See* Fed.R.Civ.P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"). Accordingly, under Rule 54(b), the Court may correct clear errors of fact or law in an interlocutory order. *Zurich Capital Mkt., Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (citation omitted).

### BACKGROUND

**I.    FCRA's Purpose**

The purpose of the FCRA is to ensure "that consumer reporting agencies adopt reasonable procedures

## STATEMENT

meet the specific criteria used to select the consumer for the offer." *See* 15 U.S.C. § 1681a(l ). In *Cole*, the Seventh Circuit clarified the definition of a "firm offer of credit" as follows:

> The statutory scheme of the FCRA makes clear that a "firm offer" must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy. A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation. It is clear that Congress did not intend to allow access to consumer credit information for catalogs and sales pitches. Such importuning simply – and understandably – is not among the permissible reasons for which a credit agency may disclose a consumer's credit information.

*Cole*, 389 F.3d at 726-27 (internal citation and quotation omitted). The *Cole* panel further elucidated that when determining "whether the offer of credit comports with the statutory definition, a court must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question." *Id.* at 727-28 (emphasis in original). The *Cole* court emphasized that in making this assessment, courts should consider not only the amount of credit to be extended, but other terms of the offer, including the interest rate, the method of computing interest, and the length of the repayment period. *Id.* at 728.

In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), the Seventh Circuit clarified the *Cole* decision in the context of a motion for class certification. The *GMAC* court explained that under *Cole*, the "objective was to separate bona fide offers of credit from advertisements for products and services" by looking to the terms of the offer. *Id.* at 955-56. Based on this objective, the Seventh Circuit concluded: "To decide whether GMAC has adhered to the statute, a court need only determine whether the *four corners of the offer* satisfy the statutory definition (as elaborated in *Cole*), and whether the terms are honored when consumers accept." *Id.* at 956 (emphasis added).

Here, Finance America argues that because the parties in *GMAC* did not present the issue of whether the terms of the offer had to be in the initial mailer, the *GMAC* court's "four corners" language is not controlling authority. Finance America does not make a cogent argument in support of this premise, although it appears that Finance America is arguing that the "four corners" language is dictum. *See Tate v. Showboat Marina Casino P'ship,* 431 F.3d 580, 582 (7th Cir. 2005). Even if this language were dictum, "in the absence of a controlling Supreme Court ruling, a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of dictum. While not excused from making an independent examination of the precise issue presented, we cannot assume that our Court of Appeals writes merely for intellectual exercise." *Max M. v. Thompson*, 585 F.Supp. 317, 324 (N.D. Ill. 1984) (citation omitted). In short, the Court must follow the *GMAC* court's ruling regardless of whether the Court or the parties agree with it. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("Just as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree.") (internal citations omitted).

Moreover, Finance America's argument that the Court may look beyond the initial mailer to discern the terms of the offer contradicts the purpose behind the FCRA, which is a consumer protection statute. *See Murray v. Sunrise Chevrolet, Inc.,* ___ F.Supp.2d ___, No. 04 C 7668, 2006 WL 1749649 (N.D. Ill. July 31,

## STATEMENT

for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Stergiopoulos v. First Midwest Bancorp, Inc.,* 427 F.3d 1043, 1045 (7th Cir. 2005) (quoting 15 U.S.C. § 1681(b)). To achieve a balance between a credit-driven economy and consumer privacy, the FCRA sets forth restrictions on the furnishing of consumer reports. *Id.* at 1045-46 (citing 15 U.S.C. § 1681e(a)). A party may obtain a consumer's credit report only with the written consent of the consumer or for certain "permissible purposes." *Cole v. U.S. Capital Inc.,* 389 F.3d 719, 725 (7th Cir. 2004) (citing 15 U.S.C. § 1681b(a)). One of these "permissible purposes" is a "firm offer of credit" made to the consumer. *Id.* at 725.

## II.    Court's April 4, 2006 Memorandum, Opinion, and Order

In 2005, Finance America sent two "pre-screened" letters to Murray after obtaining his credit information from a consumer reporting agency. The parties' dispute concerns whether Finance America's letters constitute "firm offers of credit," and thus whether Finance America had a permissible purpose to access Murray's credit report under Section 1681b.

At summary judgment, Murray argued that Finance America's letters did not constitute "firm offers of credit" because the loan's terms were vague and conferred little, if no value to him. Relying on *Cole*, the Court determined that Finance America did not state the amount of credit to be extended to the borrower or the rate of interest or ranges of rates of interest. Further, the Court observed that the mailers did not articulate the method by which interest would be computed, the length of time over which the loan would be repaid, whether a prepayment penalty applied, the amount of fees, costs, charges, or points, or Finance America's underwriting guidelines. Instead, the first letter simply stated that Finance America offered "fixed, interest-only and hybrid loan programs to fit most financial circumstances." The Court determined that the second letter was equally vague when it stated: "We have good news regarding your loan with your current mortgage lender! Based on our records, you have been pre-qualified for a home loan. Please call me today at 1-800-303-4944 to discuss the details." The Court thus concluded that the two mailings were missing important, concrete terms of the home loans and conferred little or no value to the consumer, instead, the letters simply invited the consumer to call Finance America for more details.

The Court also rejected Finance America's argument that circumstances outside of these mailings made the mailings "firm offers of credit." *See Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 956 (7th Cir. 2006). In its present motion, Finance America contends that the Court erred in applying the Seventh Circuit's opinions in *Murray* and *Cole.*

## ANALYSIS

Finance America argues that the Court's April 4, 2006 opinion was predicated on an erroneous assumption, namely, "that in determining whether an offer has sufficient value under *Cole v. U.S. Capital Inc.,* 389 F.3d 719 (7th Cir. 2004), the court looks only to the initial mailing made with respect to the firm offer of credit." (R. 92-1, Mot. for Partial Recons., at 2.) In other words, Finance America argues that circumstances outside the content of its mailers are relevant in determining whether it extended a "firm offer of credit" as required under the FCRA.

The FCRA defines "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to

## STATEMENT

2006). In *Sunrise Chevrolet*, Defendant Triad Financial Corporation made a similar argument contending that the terms of a "firm offer of credit" may be found beyond the pre-screened mailer and could include information the recipient could glean from Triad's website or calling the toll-free number listed on the mailer. *See id.* at \*5. Based on the *Cole* and *GMAC* decisions, the district court reasoned:

> Triad's reading of "firm offer of credit" dramatically diminishes FCRA's effectiveness as a consumer protection statute, which is its explicit purpose. *See* 15 U.S.C. § 1681(a)(4). If Triad's approach were adopted, then anyone could access sensitive consumer information as long as they cobbled together some mosaic of communication methods whereby a persistent consumer could learn all the details of the offer: a few details about the credit limit in a mailing, a few more details about interest rate and compounding method by telephone, and information about terms of repayment on a website. But this fails to satisfy the statute. The "firm offer of credit" must have "sufficient value for the consumer to justify the absence of the statutory protection of his privacy."

*Id.* at \*6 (quoting *Cole*, 389 F.3d at 726). Although this opinion is not controlling authority, the district court's reasoning in *Sunshine Chevrolet* is persuasive because it is supported by the policy behind the FCRA, which attempts to strike a balance between a credit-driven economy and consumer privacy. *See Stergiopoulos,* 427 F.3d at 1045-46.

Nevertheless, Finance America points to another district court case in support of its argument that the terms of the offer need not be disclosed in the pre-screened mailer. *See Hernandez v. Chase Bank USA*, 429 F.Supp.2d 983 (N.D. Ill. 2006). In *Hernandez*, the district court reviewed a pre-screened mailer's terms concluding that the "mailer suggests that the exact nature of the loan is subject to more than verification and analysis of preselected criteria, allowed by the FCRA, but rather to criteria which are subject to change. These terms suggest that the offer is not 'firm' but rather is a solicitation for a credit product that is undefined ...." *Id.* at 988. The district court also added that the "defendants may be correct that the criteria used to determine the specifics of the offer need not be disclosed on the face of the mailer, but as these criteria form part of the offer and the material conditions of the credit product, they are necessary to determine whether the offer was a firm one." *Id.*

Although the *Hernandez* decision suggests that the language in *Cole* requiring courts to view "the entire offer and the effect of all the material conditions that comprise the credit product in question" may include terms outside of the mailer, the district judge never reached this issue in its analysis or explained the basis of this statement. *See id.* Furthermore, the *Hernandez* decision, as well as the *Sunshine Chevrolet* opinion, are not controlling precedent. *See FutureSource LLC v. Reuters Ltd.,* 312 F.3d 281, 283 (7th Cir. 2002) ("The reasoning of district judges is of course entitled to respect, but the decision of a district judge cannot be a controlling precedent.").

In sum, the Court must follow the *GMAC* court's "four corners" language when deciding whether Finance America adhered to the statute. *See Reiser,* 380 F.3d at 1029. If Finance America wishes to challenge the Seventh Circuit's decision in *GMAC*, it must make such arguments to that court. *See Carter v. Illinois Dep't Commerce,* 600 F.Supp. 583, 584 (N.D. Ill. 1984). As such, the Court declines to delve into the Federal Trade Commission's Brief of Amicus Curiae in the *Cole* matter, as well as other district court decisions outside of this circuit, as Finance America requests. *See id.* Further, nothing in the Amicus Curiae brief warrants reconsideration of the Court's prior order.

1. The Mortgage Bankers Association, American Financial Services Association, the Housing Policy Council, and Consumer Mortgage Coalition filed an Amici Curiae Brief in support of Finance America's motion.  (R. 95-4.)

# APPENDIX G

8 of 44 DOCUMENTS

**JOSEPH PAVONE, Plaintiff, v. AEGIS LENDING CORPORATION, Defendant.**

**No. 05 C 5129**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2006 U.S. Dist. LEXIS 62157*

**August 31, 2006, Decided**
**August 31, 2006, Filed**

**COUNSEL:** [*1] For Jesse Dowell, Plaintiff: Daniel A. Edelman, Cathleen M Combs, Curtis Charles Warner, James O. Latturner, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Joseph Pavone, Plaintiff: Curtis Charles Warner, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Aegis Lending Corporation, Defendant: Gregory James Bird, Katherine Amelotte Jones, Christensen & Ehret, LLP, Chicago, IL; Irene C Freidel, Joshua C. Rowland, R. Bruce Allensworth, Kirkpatrick & Lockhart Nicholson Graham LLP, Boston, MA.

**JUDGES:** MARVIN E. ASPEN, United States District Judge.

**OPINIONBY:** MARVIN E. ASPEN

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

In his first amended complaint, Plaintiff Joseph Pavone ("Pavone") alleges that Aegis Lending Corporation ("Aegis") violated the **Fair Credit Reporting** Act ("FCRA"), *15 U.S.C. § 1681 et seq.*, by unlawfully obtaining his consumer report. Presently before us is Pavone's Motion for Class Certification pursuant to *Federal Rules of Civil Procedure 23(a)* and *23(b)(3)* and his related request that we appoint Edelman, Combs, [*2] Latturner and Goodwin, LLC as class counsel. (Mot. at 1.) For the reasons set forth below, we grant Pavone's motion.

**BACKGROUND**

In August 2005, Pavone received a letter from Aegis, entitled "Official Pre-Qualification Notice" ("Notice"), informing him that he was pre-qualified for a loan of at least $ 40,000, based on "information in [his] credit report." (Compl. PP 6-7 & Ex. A.) According to the amended complaint, Aegis engaged in or arranged the "prescreening" of consumers to receive such notices based on information contained in their consumer reports. (*Id.* PP 9-10, 18.) Pavone claims that such conduct violated the **FCRA,** which authorizes use of a consumer's report only with the customer's consent or for certain permissible purposes, such as making a "firm offer of credit." *15 U.S.C. § 1681b©* . (Compl. PP 19-28.) He alleges that he did not consent to the disclosure of his consumer report and that the Notice does not constitute a "firm offer of credit." (Compl. PP 19, 27-28.) Pavone seeks to certify and represent a class consisting of "all persons with either a Cook County or DuPage County, Illinois addresses [sic] who were sent material in [*3] the form represented by the solicitation attached [to the motion] as Appendix A [the Notice], on or after September 7, 2003 and on or before September 7, 2005." n1 (Mot. at 1.) Among other things, he seeks injunctive relief and statutory damages for himself and the potential class members. (Compl. at 7.)

> n1 Pavone originally defined the proposed class to include "(a) all persons with Illinois addresses (b) to whom defendant sent or caused to be sent material in the form represented by Exhibit A [the Notice] © on or after a date two years prior to the filing of this action and (d) before 20 days after the filing of this action and (e) who did not obtain credit in response thereto." (Compl. P 33.)

**ANALYSIS**

Pursuant to Rule 23(a), a class may be certified "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or

2006 U.S. Dist. LEXIS 62157, *

defenses of the [*4] class, and (4) the representative parties will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)*. If the numerosity, commonality, typicality, and adequacy requirements are satisfied, the plaintiff must also demonstrate that the proposed class qualifies under at least one of the three subsections of Rule 23(b). *Fed. R. Civ. P. 23(b); Cavin v. Home Loan Ctr., Inc., 236 F.R.D. 387, 391 (N.D. Ill. 2006)*. Here, Pavone seeks certification under Rule 23(b)(3), which permits **class actions** where "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and . . . a **class action** is superior to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3)*. Pavone bears the burden of showing that the proposed class meets the requirements for certification. *Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993); Hernandez v. Midland Credit Mgmt., Inc., 236 F.R.D. 406, 410 (N.D. Ill. 2006)*. [*5] In evaluating a motion for class certification, we do not examine the merits of the case. *See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-178, 94 S.Ct. 2140, 2152-2153 (1974); Retired Chicago Police Ass'n, 7 F.3d at 598*. We retain broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Keele v. Wexler, 149 F.3d 589, 592 (7th Cir. 1998); Cavin, 236 F.R.D. at 391; Murray v. New Cingular Wireless Servs., Inc., 232 F.R.D. 295, 298 (N.D. Ill. 2005)* (hereinafter *New Cingular Wireless Servs., Inc.*).

*A. Requirements of Rule 23(a)*

*I. Numerosity*

Rule 23(a)(1) provides that class treatment is warranted where the potential class "is so numerous that joinder of all members is impracticable." *Fed. R. Civ. P. 23(a)(1)*. In his motion, Pavone estimates that Aegis sent approximately 53,000 mailers to residents of DuPage and Cook Counties. (Mot. P 16.) Aegis does not contest Pavone's showing of numerosity. Indeed, Aegis acknowledges that it mailed offers of credit in the form of the Notice to 48,757 individuals [*6] in DuPage and Cook Counties. (Corr. Mem. in Opp. to Mot. at 4.) Given the undisputedly large number of potential class members, we conclude that joinder is impracticable. *See Cavin, 236 F.R.D. at 391* (finding estimated 49,000 members sufficiently numerous for class treatment).

*2. Commonality*

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992); see Hernandez, 236 F.R.D. at 411; Cavin, 236 F.R.D. at 391-392*. As several courts have observed, such a nucleus generally exists "where the defendants

have engaged in standardized conduct towards the members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele, 149 F.3d at 594; see Cavin, 236 F.R.D. at 392; New Cingular Wireless Servs., Inc., 232 F.R.D. at 299; Murray v. Sunrise Chevrolet, Inc.*, No. 04 C 7668, *2006 WL 862886*, at *2 (N.D. Ill. Mar. 30, 2006) (hereinafter *Sunrise Chevrolet, Inc.*); *Tremble v. Ocean Bank*, No. 05 C 2624, slip op. [*7] at 2-3 (N.D. Ill. Mar. 21, 2006); *Murray v. Cingular Wireless II, LLC*, No. 05 C 1334, slip op. at 3 (N.D. Ill. Dec. 22, 2005) (hereinafter *Cingular Wireless II, LLC*); *see also Emerson v. Aegis Lending Corp.*, No. 05 C 848, slip op. at 3 (E.D. Wis. Aug. 17, 2006) (finding common questions of law or fact where Aegis "accessed consumer information on each individual and sent them identical, or nearly identical, mailings").

Here, Pavone alleges that the common nucleus of operative fact is "that defendant obtained or used (or caused the use) of consumer report information for the purpose of sending plaintiff and the class members the solicitation in the form" of the Notice. (Mem. in Supp. Mot. at 7.) Further, the dispositive legal question is "whether the solicitation complied with the 'firm offer of credit' exception" provided by the **FCRA**. (*Id.*) Although there may be factual differences among the class members, the primary issue remains whether Aegis violated the **FCRA** by accessing and relying on consumer report information in deciding who would receive its standardized mailer. We thus agree with Pavone that the proposed class satisfies the commonality requirement. *See* [*8] *Cavin, 236 F.R.D. at 392* (finding commonality among claims based on the mailing of a standardized form and further noting that "factual variation among the class grievances will not defeat class certification."); *New Cingular Wireless Servs., Inc., 232 F.R.D. at 299; Sunrise Chevrolet, Inc., 2006 WL 862886*, at *2.

*3. Typicality*

A class may not be certified unless the claims or defenses of the representative party are typical of those of the class. *Fed. R. Civ. P. 23(a)(3)*. This inquiry focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)*. The Seventh Circuit instructs that the plaintiff's claim is "typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* (internal quotation omitted).

For the same reasons discussed above with respect to commonality, Pavone's claim bears "the same essential [*9] characteristics" as the claims of the larger class. His claim arises from the same practice and course of

conduct as those of the other class members: Aegis' prescreening of his consumer report information in determining whether to mail him the Notice. His claim is also grounded on the same legal theory, which is simply that Aegis willfully violated the **FCRA** by utilizing his consumer report without his consent and without issuing a firm offer of credit. Even if there is some factual variation among the class members' claims, Pavone has sufficiently shown that his claims are typical of the proposed class claims. *See Cavin, 236 F.R.D. at 392; New Cingular Wireless Servs., Inc., 232 F.R.D. at 299; Tremble*, No. 05 C 2624, slip op. at 2-3; *see also Emerson*, No. 05 C 848, slip op. at 3 (concluding that "the essential nature of each class member's claim will be the same [as Emerson's]: that his or her consumer report was accessed although no firm offer of credit was made").

### 4. Adequacy of Representation

Pursuant to Rule 23(a)(4), class certification is appropriate only if "the representative parties will fairly and adequately protect the interests [*10] of the class." "The plaintiff must show three factors to prove adequacy: (1) [he or she] does not have conflicting or antagonistic interests compared to the class as a whole; (2) [he or she] is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously." *Cavin, 236 F.R.D. at 392-393; see New Cingular Wireless Servs., Inc., 232 F.R.D. at 299.*

Aegis does not expressly contest that proposed class counsel -- Edelman, Combs, Latturner and Goodwin, LLC -- is competent and otherwise satisfies the requirements of Rule 23(a)(4). Nor does it challenge that Pavone would "ensure vigorous advocacy." *Cavin, 236 F.R.D. at 392-393.* Nonetheless, Aegis contends that Pavone would not adequately protect class interests because he will be competing with the other members for a finite amount of damages. (Corr. Mem. in Opp. to Mot. at 32-34.) Aegis alleges that, because of its limited assets, it would be unable "to satisfy a judgment or settlement of plaintiff's claims" as the minimum statutory damage award would approach $ 4.9 million [*11] and its total exposure could be $ 49 million. (*Id.* at 32.) Moreover, Aegis argues that this Court is "not at liberty to reduce the statutory damage award," despite its potential to drive the company into financial ruin. (*Id.*) Pavone's claim, it is argued, thus conflicts with the class interests to the extent that they, along with class counsel, must scramble for any available funds.

Aegis' argument is unavailing in light of the Seventh Circuit's recent decision in *Murray v. GMAC Mortgage Corporation. 434 F.3d 948, 953-954 (7th Cir. 2006)* (hereinafter *GMAC Mortgage Corp.*). There, the Seventh Circuit explained that:

The reason damages [under the **FCRA**] can be substantial, however, does not lie in an "abuse" of Rule 23; it lies in the legislative decision to authorize awards . . . combined with [the defendant's] decision to obtain the credit scores of more than a million persons. . . . *An award that would be unconstitutionally excessive may be reduced . . . but constitutional limits are best applied after a class has been certified.* Then a judge may evaluate the defendant's overall conduct and control its total exposure. Reducing recoveries [*12] by forcing everyone to litigate independently -- so that constitutional bounds are not tested . . . has little to recommend it.

*Id.* (emphasis added); *see also Emerson*, No. 05 C 848, slip op. at 3 (concluding that Aegis' argument is "foreclosed" by *GMAC Mortgage Corp.* and observing that "even if this court were to conclude that [*GMAC Mortgage Corp.*] is inconsistent with earlier . . . precedent, it is still binding on this court"). Accordingly, Aegis' claim that we cannot reduce any potential award appears to be incorrect. Moreover, the fact that Pavone and other class members may have to share the limited proceeds of any judgment or settlement (both of which could be less than the statutory minimum and may or may not jeopardize Aegis' operations) does not render him unfit to be the class representative; indeed, such is the nature of a **class action.** We do not believe the present circumstances provide any unusual, heightened incentive to Pavone -- or his counsel -- to resolve the claims to the detriment of other class members. Because Pavone's interests are not antagonistic to those of the proposed class, we conclude that he is an adequate representative under [*13] Rule 23(a)(4). n2

> n2 Although Aegis alleges that Pavone lacks standing to pursue his claim, it is not clear whether it intends this argument to attack his adequacy as a representative or the propriety of class treatment under Rule 23(b)(3). As we believe the standing issue relates more to the predominance requirement, we address it below.

### B. Requirements of Rule 23(b)(3)

### 1. Predominance

Although related to Rule 23(a)'s commonality requirement, "the predominance inquiry is far more demanding." *New Cingular Wireless Servs., Inc., 232 F.R.D. at 301 (citing Amchem Prods., Inc. v. Windsor,*

*521 U.S. 591, 623-624, 117 S.Ct. 2231, 2250 (1997)).* To satisfy this aspect of Rule 23(b)(3), "the plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims." *Dhamer v. Bristol-Myers Squibb Co., 183 F.R.D. 520, 529-530 (N.D. Ill. 1998).*

Citing *Cole v. United States Capital, Inc., 389 F.3d 719 (7th Cir. 2004),* [*14] Aegis contends that individual questions outweigh common issues in this case because the determination of whether it made a firm offer of credit must be assessed on a case-by-case basis. (Corr. Mem. in Opp. to Mot. at 12-24.) It further argues that because the offer could not have been "firm" until the consumer contacted Aegis for all of the loan details, the proposed class members who did not respond to the offer - including Pavone and a majority of the members - lack standing to pursue claims against Aegis. (*Id.*)

We conclude - as have other courts addressing this issue -- that "common issues of fact and law stemming from highly generalized proof (the solicitation) predominate over any individualized assessment that may be needed" based on personal responses to the nearly 50,000 mailers. *New Cingular Wireless Servs., Inc., 232 F.R.D. at 302; see Tremble,* No. 05 C 2624, slip op. at 6-7; *Sunrise Chevrolet, Inc., 2006 WL 862886,* at *2; *Cingular Wireless II, LLC,* No. 05 C 1334, slip op. at 8-9; *see also Emerson,* No. 05 C 848, slip op. at 10-12. Indeed, the Seventh Circuit in *GMAC Mortgage Corporation* clarified its holding in *Cole* [*15], stating that "[w]e do not read *Cole . . .* to require a consumer-by-consumer evaluation. An offer has value to 'the consumer' if it is useful to the *normal* consumer." *434 F.3d at 955-956.* The court also observed that "[t]he statutory definition of 'firm offer' does not ask about how consumers *react,* however, it asks what the offered has done-what terms have been extended, whether they are honored if a consumer accepts." *Id. at 955.* Based on this precedent and the facts of this case, we cannot agree with Aegis that individual issues predominate over the central, unifying issue of whether the form of the standardized Notice constitutes a firm offer of credit under the **FCRA.** *Id. at 956* (concluding that analysis of the four corners of the offer is a question that "readily may be resolved for a class as a whole"); *see New Cingular Wireless Servs., Inc., 232 F.R.D. at 302; Emerson,* No. 05 C 848, slip op. at 10-12.

Aegis' standing argument similarly fails. This "argument has nothing to do with standing" and essentially puts the cart before the horse. *Emerson,* No. 05 C 848, slip op. at 10. Here, Pavone [*16] and the proposed class members plainly have standing. Each individual received a letter from Aegis in the form of the Notice, and Pavone challenges the legality of its terms on behalf of all. The proposed class does not include individuals who, for example, *never received* an offer

from Aegis and thus, would have no case or controversy against the lender. Whether the offer is a "firm offer of credit" shielding Aegis from liability is a legal and factual issue that remains to be resolved, but we cannot reach that ultimate question in deciding class certification. *Retired Chicago Police Ass'n, 7 F.3d at 598* (court may not examine the merits of the case in deciding class certification).

*2. Superiority*

Rule 23(b)(3) also requires a plaintiff to demonstrate that "a **class action** is superior to other available methods for the fair and efficient adjudication of the controversy." "Class treatment is especially appropriate for consumer claims" because, as here, such actions often involve common factual and legal questions. *New Cingular Wireless Servs., Inc., 232 F.R.D. at 303; Cavin, 236 F.R.D. at 395-396.* Moreover, a **class action** [*17] is warranted "where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *New Cingular Wireless Servs., Inc., 232 F.R.D. at 303* (internal quotation omitted).

Aegis argues that **class action** treatment is not superior to individual actions because the amount of potential liability "will create crushing pressure for [it] to settle plaintiff's claims or face liquidation of its business." (Corr. Mem. in Opp. to Mot. at 26.) As discussed earlier, however, we have the power to reduce a damages award that would be constitutionally excessive or fatal to Aegis' business. *GMAC Mortgage Corp., 434 F.3d at 953-954* (commenting that "a judge may evaluate the defendant's overall conduct and control its total exposure" *after* class certification); *see also Sunrise Chevrolet, Inc., 2006 WL 862886,* at *5 ("Although an extremely large award can raise due process issues, particularly when it is highly disproportionate to the harm suffered, denial of class certification is not necessarily the preferred, or even the appropriate, option."). "Reducing an unnecessarily large statutory damage [*18] award is a more palatable option than allowing defendants to commit substantive violations of the law and escape liability essentially because they have violated the rights of too many individuals." *New Cingular Wireless Servs., Inc., 232 F.R.D. at 304; see Cingular Wireless II, LLC,* No. 05 C 1334, slip op. at 9-10 (acknowledging that defendant faced significant damages but observing that it "created this exposure when it sent out a mass mailing to approximately 835,939 people"). Moreover, Pavone and his counsel are aware of our authority to reduce such damages and may consider this factor should they engage in settlement negotiations with Aegis. Given the common issues at play, the number of potential claimants, and the relatively small amount of recovery per person, we conclude that this case is well-suited for **class action**

2006 U.S. Dist. LEXIS 62157, *

treatment. *Sunrise Chevrolet, Inc., 2006 WL 862886,* at *5; *Emerson,* No. 05 C 848, slip op. at 14.

## CONCLUSION

For the above stated reasons, we grant Pavone's motion for class certification and appointment of Edelman, Combs, Latturner and Goodwin, LLC as class counsel. It is so ordered.

MARVIN E. ASPEN

United States [*19] District Judge

Dated: August 31, 2006