**EXHIBIT  6**

**FILED**

AUG 3 0 2006
AUG 30 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DANIEL and DONNA CASHEN,                )
                                        )
     Plaintiffs,                       )    **06CV4683**
                                        )    **JUDGE KENNELLY**
vs.                                     )    **MAG. JUDGE BROWN**
                                        )
AMERIQUEST MORTGAGE COMPANY,            )
AMC MORTGAGE SERVICES, INC.             )
and DEUTSCHE BANK NATIONAL TRUST        )
COMPANY,                                )    JURY TRIAL DEMAND
                                        )
     Defendants.                       )

## COMPLAINT

### INTRODUCTION

1.    Plaintiffs Daniel and Donna Cashen charge defendants with violation of the Truth

in Lending Act through failure to honor a valid rescission request in violation of 15 U.S.C.

§ 1635. Plaintiffs also charge defendant Ameriquest with violation of Illinois law.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to Title 28 of the United States Code,

Sections 1331 and 1337 because plaintiffs' claim under the Truth in Lending Act arises under

federal law.  This Court has supplemental jurisdiction over plaintiffs' claim under state law

pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28

U.S.C. § 1367.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the

defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has

issued an order centralizing predatory lending litigation against Ameriquest in this district before

Judge Aspen.

## PARTIES

4.     Defendant Ameriquest Mortgage Company is a leading sub-prime mortgage lender. The company's main offices are in Orange, California, but it does business in this district. Defendant AMC Mortgage Services, Inc. services Ameriquest mortgages and has the right to receive payments thereunder and does business in this district. Defendant Deutsche Bank National Trust Company is the owner of plaintiffs' mortgage and also does business in this district.

5.     Plaintiffs Daniel and Donna Cashen, husband and wife, are residents of Algonquin, Illinois.

## BACKGROUND

6.     Plaintiff Daniel Cashen works in sales. His wife, plaintiff Donna Cashen, works in a department store. They own a home in Algonquin, Illinois where they live with their three children. In 2003, Mr. and Mrs. Cashen decided to refinance their home mortgage to get a lower rate and raise money to pay some personal debts.

7.     Mr. and Mrs. Cashen spoke to a representative of Ameriquest who talked about getting them a loan with an interest rate of 5.5% or 5.75%. Mrs. Cashen wanted a fixed rate loan but the Ameriquest representative said that the interest rate for 30 year fixed would 6.75% and advised her to take a lower interest rate as part of a two year adjustable rate mortgage. The sales representative assured them that if the rates went up they could always lock in at a fixed rate.

8.     The closing took place on December 16, 2003. The terms of the deal had changed. The interest rate on the adjustable rate loan began at 6.99% (rather than the 5.5% or 5.75% previously promised) and could go up to as high as 12.99%. Mrs. Cashen said that's not the rate she had been promised. The Ameriquest manager said to ignore that rate that's on the paper work because the actual rate will be different, when you run all the numbers the actual rate will be different.

9.     The following spring, Mr. Cashen called Ameriquest and said that the Cashens would like to lock into the 30 year fixed. Their sales representative was no longer there so the Cashens were given a different representative. The representative asked the Cashens why they wanted to refinance six months after they closed their loan. Mr. Cashen told the representative he wanted to refinance because the rates are going up and the prior Ameriquest representative said that the Cashens would have to refinance and may have to get a new appraisal to lock in a fixed rate. Mr. Cashen was transferred to someone else who said a reappraisal wasn't necessary and that he would have to check into it. The Ameriquest representative called Mr. Cashen back the next day to tell him that he could not refinance. Mr. Cashen asked the representative what he meant by that. The Ameriquest representative told Mr. Cashen that his house was not worth the amount it is appraised for. The Ameriquest representative said Mr. Cashen could try back after he had the mortgage for a full year. Mr. Cashen did try again and was told the same thing.

## COUNT ONE – TRUTH IN LENDING ACT

10.     Plaintiffs incorporate paragraphs one through nine above.

11.     Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

## REGULATORY FRAMEWORK

12.     The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

13.     Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines

3

for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

14.     Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

15.     The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

16.     To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the

obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

17.    To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

18.    Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. § 226.23(a)(1).

19.    The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose" the consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1)

20.    More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (i) The retention or acquisition of a security interest in the

5

consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that
purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this
section.

(v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

21.    Paragraph (d) goes on to explain the effects of rescission.  Subparagraph (d)(1)

provides:

When a consumer rescinds a transaction, the security interest giving rise to the
right of rescission becomes void and the consumer shall not be liable for any
amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

23.    Subparagraph (d)(2) states:

Within 20 calendar days after receipt of a notice of rescission, the creditor shall
return any money or property that has been given to anyone in connection with
the transaction and shall take any action necessary to reflect the termination of the
security interest.

12 C.F.R. § 226.23(d)(2).

24.  The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the

words "any money or property" would include an appraisal fee.  The commentary provides:

The consumer cannot be required to pay any amount in the form of money or
property either to the creditor or to a third party as part of the credit transaction.
Any amounts of this nature already paid by the consumer must be refunded.  "Any
amount" includes finance charges already accrued, as well as other charges, such
as broker fees, application and commitment fees, or fees for a title search or
appraisal, whether paid to the creditor, paid directly to a third party, or passed on
from the creditor to the third party.  It is irrelevant that these amounts may not
represent profit to the creditor.

12 C.F.R. part 226 Supp.1 para. 23(d)(2)-1.

6

## DEFECTIVE DISCLOSURES

25.     Ameriquest's rescission disclosures to plaintiffs were defective in a number of respects. First, Ameriquest did not provide plaintiffs with copies of Notice of Right to Cancel forms.

26.     Second, by misleading plaintiffs as to the interest rate and falsely assuring them that they would be able to lock into a fixed rate mortgage before their interest rate went up, Ameriquest violated 12 C.F.R. § 226.18.

27.     Third, Ameriquest gave plaintiffs a document (APPLICATION DISCLOSURE) which stated that they were being charged $325 for an appraisal and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." This statement contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

28.     Under the Truth in Lending Act, if the rescission disclosures or TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

29.     Ameriquest's rescission and TILA disclosures were defective. Accordingly, plaintiffs sent a rescission notice to Ameriquest, AMC Mortgage Services and to Deutsche Bank, the current owner of their mortgage on June 6, 2006.

7

30.     Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiffs' home and paid back to plaintiffs any money or property that plaintiffs have paid to them in connection with the loan. See 12 C.F.R. § 226.23(d)(2). Defendants have not done either.

31.     Defendants' failure to honor the rescission request is a violation of the Truth in Lending Act. Plaintiffs are entitled to rescission plus statutory damages and other relief.

## COUNT TWO -- VIOLATION OF ILLINOIS LAW

32.     Plaintiffs incorporate paragraphs one through thirty-one above.

33.     In connection with trade or commerce, Ameriquest made false and misleading statements to plaintiffs intending to induce reliance. More specifically, Ameriquest misled plaintiffs as to the interest rate on their mortgage and whether they could lock into a fixed rate before their interest rate went up.

34.     Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under Illinois statutory and common law.

35.     Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them financial injury and emotional distress.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a.     canceling defendants' security interest in plaintiffs' home and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

b.     awarding plaintiffs actual damages proximately caused by defendants' failure to comply with 12 C.F.R. § 226.23(d)(2);

c.     awarding appropriate statutory damages;

d.     ordering defendants to pay costs, penalties, and attorneys fees;

e.     awarding plaintiffs actual and punitive damages;

8

f.    granting such other relief as the Court deems just and proper.

Respectfully submitted by:

_____
Counsel for the Plaintiff

THE LAW OFFICES OF DANIEL HARRIS
Anthony Valach
Daniel Harris
150 N. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: (312) 960-1802
Facsimile: (312) 960-1936

9