EXHIBIT 10

**F i L E D**

AUG 3 0 2006
AUG 30 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CARL and HOPE GELMAN,                 )

      Plaintiffs,

**06CV4684**

vs.

**JUDGE CONLON**

**MAG. JUDGE MASON**

AMERIQUEST MORTGAGE COMPANY,
AMC MORTGAGE SERVICES, INC.          )
and DEUTSCHE BANK NATIONAL TRUST     )
COMPANY,                             )     JURY TRIAL DEMAND
                         )
      Defendants.                    )

### COMPLAINT

### INTRODUCTION

1.     Plaintiffs Carl and Hope Gelman charge defendants with violation of the Truth in Lending Act through failure to honor a valid rescission request in violation of 15 U.S.C. § 1635. Plaintiffs also charge defendant Ameriquest with violation of Florida common law.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claim under the Truth in Lending Act arises under federal law. This Court has supplemental jurisdiction over plaintiffs' claim under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

**PARTIES**

4.      Defendant Ameriquest Mortgage Company is a leading sub-prime mortgage lender. The company's main offices are in Orange, California, but it does business in this district. Defendant AMC Mortgage Services, Inc. services Ameriquest mortgages and has the right to receive payments thereunder and does business in this district. Defendant Deutsche Bank National Trust Company is the owner of plaintiffs' mortgage and also does business in this district.

5.      Plaintiffs Carl and Hope Gelman are residents of Florida.

**BACKGROUND**

6.      Plaintiffs Carl and Hope Gelman, who are in the window treatment business, own a home in Coral Springs, Florida. In or about June 2004, Ameriquest contacted plaintiff Carl Gelman and offered to refinance the mortgage on the Gelmans' home.

7.      Ameriquest prepared a mortgage with an initial interest rate of 6.5%, but which could go up to as high as 12.5%, depending on changes on the LIBOR rate. Ameriquest charged plaintiffs a total of $11,754.68 in fees and points for this loan.

8.      The closing took place on June 23, 2004. At the closing, Mrs. Gelman noticed that there was a prepayment penalty for three years and told the Ameriquest representative that she did not like it. The Ameriquest representative told her not to worry about it and that Ameriquest could give her a fixed rate loan for a small fee, like around $200, when her husband's credit rating improves. The Ameriquest representative said that since the Gelmans were paying off credit card debt, their credit rating should improve within six months. In fact, the loan provided for a prepayment penalty equal to six months interest (which in the first year amounted to $6,539.00) if the Gelmans decided to pay off the adjustable rate mortgage and switch to a fixed rate loan within three years of the refinance transaction.

9.      At the closing on June 23, 2004, Mrs. Gelman was given a document which said that the initial monthly payments would be $1,589.66 but that "**After 24 months, the interest rate you will be charged may go up to** 8.500% and the principal and interest due monthly may

2

increase to $1,730.87 impacting your total monthly payment." (bolding in original).  On May 25, 2006, Ameriquest sent a letter to Mrs. Gelman which said that, effective August 1, 2006, her monthly payment would be increased from $1,589.66 to $1,919.44 (which is more than the $1,730.87 she had been told to expect at the closing).

## COUNT ONE -- TRUTH IN LENDING ACT

10.     Plaintiffs incorporate paragraphs one through nine above.

11.     Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act.  To understand how the disclosures were defective, some background is helpful.

## REGULATORY FRAMEWORK

12.     The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

13.     Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a).  A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1).  Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

14.     Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

3

15.    The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

16.    To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

17.    To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

4

> The creditor shall clearly and conspicuously disclose, in accordance with
> regulations of the Board, to any obligor in a transaction subject to this section the
> rights of the obligor under this section. The creditor shall also provide, in
> accordance with regulations of the Board, appropriate forms for the obligor to
> exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

18.    Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in

Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the

regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired
> in a consumer's principal dwelling, each consumer whose ownership interest is or
> will be subject to the security interest shall have the right to rescind the
> transaction ....

12 C.F.R. § 226.23(a)(1).

19.    The regulation goes on to require that the creditor "deliver" to "each consumer

entitled to rescind" two copies of a document that "clearly and conspicuously disclose" the

consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1)

20.    More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of
> the notice of the right to rescind to each consumer entitled to rescind (one copy to
> each if the notice is delivered by electronic communication as provided in
> § 226.36(b)). The notice shall be on a separate document that identifies the
> transaction and shall clearly and conspicuously disclose the following:
>
>> (i) The retention or acquisition of a security interest in the
>> consumer's principal dwelling.
>>
>> (ii) The consumer's right to rescind the transaction.
>>
>> (iii) How to exercise the right to rescind, with a form for that
>> purpose, designating the address of the creditor's place of business.
>>
>> (iv) The effects of rescission, as described in paragraph (d) of this
>> section.
>>
>> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

5

21.    Paragraph (d) goes on to explain the effects of rescission.  Subparagraph (d)(1)

provides:

> When a consumer rescinds a transaction, the security interest giving rise to the
> right of rescission becomes void and the consumer shall not be liable for any
> amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

22.    Subparagraph (d)(2) states:

> Within 20 calendar days after receipt of a notice of rescission, the creditor shall
> return any money or property that has been given to anyone in connection with
> the transaction and shall take any action necessary to reflect the termination of the
> security interest.

12 C.F.R. § 226.23(d)(2).

## DEFECTIVE DISCLOSURES

23.    Ameriquest's rescission disclosures to plaintiffs were defective in a number of

respects. First, the documents are contradictory and inconsistent as to whether Mr. Gelman is a

borrower. Only Mrs. Gelman is listed as a borrower on the adjustable rate note, the Borrower's

Acknowledgement of Final Loan Terms document, the Understanding Your Loan document and

the Florida Pre-Application Disclosure document. Mr. and Mrs. Gelman are listed as borrowers

on the mortgage, the settlement statement and adjustable rate rider.   Mrs. Gelman is the only

borrower listed on the top portion of the Truth in Lending Disclosure Statement and the federal

Notice of Right to Cancel form. Mr. Gelman is listed as a borrower on the bottom portion of the

Truth in Lending Disclosure Statement and as a borrower/owner on the federal Notice of Right

to Cancel forms. Because of the contradictions as to whether Mr. Gelman was a party to the loan,

the TILA disclosures to Mr. Gelman were not clear and accurate as required by the statute.

24.    Second, the Notice of Right to Cancel forms that were given to the Gelmans at the

closing made it appear that only the borrower, Mrs. Gelman, had the right to cancel the

mortgage, whereas Mr. Gelman, as a co-owner of the mortgaged property, also had that right.

25.    Third, Ameriquest did not provide plaintiffs with the requisite number of copies of the Notice of Right to Cancel form.

26.    Fourth, Mrs. Gelman was given a document entitled **FLORIDA PRE-APPLICATION DISCLOSURE** which said that she would owe $325 if she backed out of the deal after the Lender ordered the appraisal/property valuation, a misrepresentation which violated 12 C.F.R. § 226.23(b)(1)(iv).

27.    Fifth, the Notice of Right to Cancel forms given to the Gelmans said that the rescission period ended on 6/26/04. This was inaccurate, in violation of 12 C.F.R. § 226.23(b)(1)(v). Ameriquest changed the terms of the deal after the closing on June 23, 2004. According to a document signed by Mrs. Gelman on June 23, 2004 **(Request for Reconveyance and Estoppel)**, the amount paid to World Savings was $130,296.51. According to a Deposit/Check Ledger Statement generated by Ameriquest on August 4, 2006, the amount paid to World Savings on July 6, 2004 was really $125,562.17. This means that the transaction was not really consummated on June 23, 2004. Thus, the rescission period did not expire on June 26, 2004 and it was a violation of TILA for Ameriquest to say that it did.

28.    Sixth, Ameriquest misled plaintiffs as to how much their monthly payments would be after the loan adjusted, telling them to expect monthly payments of $1,730.87 after 24 months and then increasing their monthly payments to $1,919.44, effective August 1, 2006. The misrepresentation violated 12 C.F.R. § 226.18.

29.    Seventh, Ameriquest misled plaintiffs as to the size of their prepayment penalty associated with paying off the loan in the first year, telling them that the penalty would be $100 or $200 when, in fact, the penalty would be $6,539.00. The misrepresentation violated 12 C.F.R. § 226.18.

30.    Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest

in the property, or upon sale of the property, whichever occurs first").

31.    Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs sent a rescission notice to Ameriquest, AMC Mortgage Services and to Deutsche Bank National Trust Company, the current owner of their mortgage on July 13, 2006.

32.    Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiffs' home and paid back to plaintiffs any money or property that plaintiffs have paid to them in connection with the loan. See 12 C.F.R. § 226.23(d)(2). Defendants have not done either.

33.    Defendants' failure to honor the rescission request is a violation of the Truth in Lending Act. Plaintiffs are entitled to rescission plus statutory damages and other relief.

### COUNT TWO -- VIOLATION OF FLORIDA LAW

34.    Plaintiffs incorporate paragraphs one through thirty-three above.

35.    Ameriquest made false and misleading statements to plaintiffs intending to induce reliance. More specifically, Ameriquest misled plaintiffs as to what their monthly payments would be after the loan adjusted and how the loan money would be disbursed.

36.    Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under Florida common law.

37.    Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them injury.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a.    canceling defendants' security interest in plaintiffs' home and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

b.    awarding plaintiffs actual damages proximately caused by defendants' failure to comply with 12 C.F.R. § 226.23(d)(2);

c.      awarding appropriate statutory damages;

d.      ordering defendants to pay costs, penalties, and attorneys fees;

e.      awarding plaintiffs actual and punitive damages;

f.      granting such other relief as the Court deems just and proper.


Respectfully submitted by:

_____
Counsel for the Plaintiff

THE LAW OFFICES OF DANIEL HARRIS
Anthony Valach
Daniel Harris
150 N. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: (312) 960-1802
Facsimile: (312) 960-1936

9