IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL NO. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before the Honorable Marvin E. Aspen)<br><br>[Declarations of Bernard E. LeSage, Jeffrey D. Dahl, and Clarisa Gastelum filed concurrently herewith] |

**OPPOSITION TO PLAINTIFFS TERRY TALLEY
AND CHERYL TALLEY'S MOTION TO LIFT STAY**

BN 1007806v1

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | | SUMMARY OF ARGUMENT | 1 |
| II. | | THERE IS NO BASIS TO LIFT THE STAY BECAUSE THE TALLEYS' HAVE NOT MET THEIR BURDEN OF PROOF | 3 |
| | A. | Contrary to Their Assertions, the Talleys are Not Suffering Financial Hardship Because of Their Ameriquest Loan | 3 |
| | B. | There Is No Basis to Exclude the Talleys' Case from the Streamlined Mediation Process the Parties Have Created to Resolve Similar TILA Claims | 5 |
| | C. | The Talleys' Claims Are Not Unique | 7 |
| | D. | The Talleys' Request to Lift the Stay Should Be Denied Because, from a Procedural Perspective, the Stay Cannot Be Lifted Until All Third Party Closing Agents are Included in the Ameriquest Lending Practices MDL | 9 |
| | E. | The Talleys Should Be Afforded the Opportunity to Participate in the AG Settlement | 10 |
| | F. | Contrary to Their Assertions, the Talleys Are Not Assured a Victory in Any Summary Judgment Motion They May File | 10 |
| III. | | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

Page

**Cases**

*AFS Financial v. Burdette*,
  105 F.Supp.2d 881 (N.D. Ill. 2000) ................................................................................4

*Hawaii Community Federal Credit Union v. Keka*,
  11 P.3d 1, 13 (Haw. 2000) ............................................................................................11

*In re Vioxx Product Liability Cases*,
  2005 U.S. Dist. LEXIS 40743, at *3 (C.D.Cal. 2005) ...................................................3

*Kramer v. Home Savings of America, FSB*,
  721 So.2d 1239 (4th Dist. Fla. 1998) ............................................................................11

*Landis v. North Am. Co.*,
  299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ...........................................................3

*Lynch v. GMAC Mortgage Co.*,
  170 B.R. 26 (Bankr. D.N.H. 1994) .................................................................................4

*Murry v. America's Mortgage Banc, Inc.*,
  2005 WL 1323364, at *11 (N.D. Ill. 2005) ....................................................................4

*Regency Savings Bank v. Chavis*,
  333 Ill.App.3d 865 (Ill. 2d Dist. 2002) ...........................................................................4

*Sharp v. Ford Motor Credit Co.*,
  452 F.Supp. 465 (S.D. Ill. 1978) ...................................................................................11

*Washington v. Bayer Corporation*,
  2002 U.S. Dist. LEXIS 11968, at *3 (E.D. La. 2002) ....................................................3

*Whitlock v. Midwest Acceptance Corp.*,
  76 F.R.D. 190 (D. Mo. 1977) .......................................................................................12

*Williams v. Homestake Mortgage Co.*,
  968 F.2d 1137 (11th Cir. 1992) ...............................................................................4, 12

**Statutes**

12 C.F.R. §§ 226..23(a)(3) n.48 .............................................................................................12
15 U.S.C. § 1635(b) .................................................................................................................4
15 U.S.C. § 1635(c) ...............................................................................................................12

**Rules**

Rule 26 ................................................................................................................................4, 5

I.   **SUMMARY OF ARGUMENT**

Plaintiffs Terry Talley and Cheryl Talley's (the "Talleys") Motion to Lift Stay Due to Overwhelming Financial Distress should be denied. The Talleys fail to satisfy their burden of proof that sufficient exigent circumstances exist to allow their case to proceed prior to the claims of the 551 other plaintiffs currently present in this MDL proceeding who like them allege that Ameriquest Mortgage Company ("Ameriquest") violated the Truth in Lending Act ("TILA") by providing them with non-compliant Notices of Right to Cancel ("NORTC's").

Most significantly, although the Talleys claim the main reason why the stay should be lifted as to their case alone is due to the financial hardship caused by Mr. Talleys' disability, the Talleys cannot establish that they are suffering any financial hardship based on their Ameriquest mortgage. Indeed, notwithstanding the fact that the Talleys have not made a mortgage payment since July 31, 2006, Ameriquest has stayed *any* foreclosure activity on the loan (since February 3, 2006). [See Declaration of Clarisa Gastelum, para. 2-3]. Accordingly, any financial distress that the Talleys are in is not caused by their Ameriquest loan. Rather, the Talleys have been, and currently are, living on the subject property rent and mortgage-free, while at the same time, they are not at risk of losing their property through foreclosure.[1]

From a procedural perspective, the Court should not lift the stay for the following reasons:

(1)   Counsel for Ameriquest and counsel for the Talleys (Edelman, Combs, Latturner & Goodwin, LLC – "ECLG"), as well as counsel for other plaintiffs in the individual TILA cases, have negotiated a streamlined and accelerated process for resolving these types of TILA cases through mediation. [See Stipulation re Stay of Actions Pending Mediation – "Mediation Stipulation"; Declaration of Bernard E. Le Sage, para. 17]. There is no basis to exclude the Talleys' case from this process.

---

[1] It should be noted that the Talleys have elected not to pay the mortgage. Ameriquest has not, and is not waiving the obligation to pay. However, Ameriquest elected not to take action to foreclose on its security pending the determination of the merits of the Talleys' claims. It should also be noted that Ameriquest made this election in February of 2006, long before the Talleys filed this motion. [Gastelum Decl., para. 3].

1

BN 1007806v1

(2) Lifting the stay will prejudice many other plaintiffs with similar TILA claims (both individual and class action) who will not have an opportunity to be heard in the Talleys' case.[2]

(3) Lifting the stay and allowing the Talleys to proceed to bring their planned motion for summary judgment would be improper and premature. Ameriquest has not yet been afforded the opportunity to bring a cross-complaint against the third party closing agents involved in the transaction (or cross-complaints against other third party closing agents involved in similar transactions). This right is in accordance with customary standards of due process. Further, the Talleys' counsel, ECLG, has stipulated to allowing cross-complaints to be filed against third party closing agents in all of the other TILA cases it has in this MDL proceeding except the Talleys' case (which ECLG removed from the Mediation Stipulation at the last minute). [See Le Sage Decl., paras. 4 – 17 and Exhibits thereto].

Moreover, the stay need not be lifted because the Talleys will shortly have an opportunity to settle all of their claims by way of the settlement that Ameriquest executed with the Attorneys General of 49 states (the "AG Settlement"). Since the Talleys' claims revolve around allegations of improper written disclosures and failure to fund the loan on time, their claims will be covered by the AG Settlement. [See Declaration of Jeffrey D. Dahl, para. 13, explaining which claims are covered by the settlement]. In January 2007, notice of the AG Settlement will be sent to all borrowers who obtained loans from January 1, 1999 through December 31, 2005 (including the Talleys). [Dahl Decl., para. 12]. Prior to proceeding with their litigation, the Talleys should be

---

[2] The Talleys may argue that the Court could resolve this concern by allowing all parties to be heard regarding the Talleys' facts and issues. However, such a solution does not completely alleviate these serious due process concerns. First, it does not account for the numerous plaintiffs with similar claims whose cases have been identified for participation in the In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation (the "Ameriquest Lending Practices MDL"), but who are not yet before this Court. [Le Sage Decl., para. 2]. Second, each plaintiff should be allowed to make arguments that apply to the facts and issues in his or her own case. Third, should the Talleys lose their motion for summary judgment, such a ruling could adversely impact plaintiffs who potentially have claims that are more meritorious than the Talleys, but who have not moved to lift the stay. All other similar cases are stayed, and they should remain so until all can participate in the proceedings according to customary standards of due process.

given the opportunity to determine whether the financial incentives offered pursuant to the AG Settlement are in their best interests.

Finally, contrary to the assertions in the Talleys' motion, they do not have a "slam dunk" summary judgment motion. Thus, there is no guaranty that lifting the stay and allowing the Talleys to bring their summary judgment motion will expeditiously resolve their litigation or end their purported financial woes. To the contrary, an adverse summary judgment ruling may result in the termination of the Talleys' current beneficial financial arrangement whereby they are neither making mortgage payments nor facing foreclosure.

## II. THERE IS NO BASIS TO LIFT THE STAY BECAUSE THE TALLEYS' HAVE NOT MET THEIR BURDEN OF PROOF

A district court has inherent power to stay its proceedings. *In re Vioxx Product Liability Cases,* 2005 U.S. Dist. LEXIS 40743, at *3 (C.D.Cal. 2005). "This power to stay is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Id.* (quoting *Landis v. North Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). The decision whether to grant or deny or lift a stay is completely within the discretion of the Court. *Washington v. Bayer Corporation,* 2002 U.S. Dist. LEXIS 11968, at *3 (E.D. La. 2002). In making a decision on whether to grant or deny a stay, a court weighs the potential prejudice to the non-moving party if the action is stayed, the hardship and inequity to the moving party if the action is not stayed, the judicial resources that would be saved by virtue of a stay, and the need to avoid conflicting rulings. *In re Vioxx,* 2005 U.S. Dist. LEXIS at *3. For the reasons detailed below, the Talleys have not met their burden of establishing a hardship or emergency sufficient to lift the stay.

### A. Contrary to Their Assertions, the Talleys are Not Suffering Financial Hardship Because of Their Ameriquest Loan

The Talleys have failed to establish any hardship or inequity to them if their case remains subject to the stay. The Talleys claim that the Court should lift the stay because they are suffering financial hardship due to Mr. Talley's disability, and cannot afford to make their mortgage payments to Ameriquest. [See Declaration of Cheryl Talley, paras. 2-11]. However,

3

the fact is that although the Talleys' loan is in default, the loan is not in foreclosure. Rather, on February 3, 2006, Ameriquest placed a stop on any foreclosure activity with respect to the loan. [See Gastelum Decl., para. 3]. Thus, long before the Talleys filed the instant motion, Ameriquest elected to refrain from taking action to foreclose on the loan pending the determination of the merits of the Talleys claims.

Currently, the Talleys are not making payments on their loan, and have not made any loan payments since July 31, 2006. [Gastelum Decl, para. 2]. The total amount that the Talleys are currently in default (without penalty and/or late charges) is $11,762.08. [Gastelum Decl., para. 2]. However, given that the loan is not currently in foreclosure, the Talleys are not in any danger of losing their property through foreclosure, and are not suffering irreparable harm while their case is stayed.

Moreover, through their lawsuit and the motion for summary judgment which the Talleys claim they intend to file, the Talleys seek rescission of their Ameriquest loan based upon TILA violations. However, rescission is an equitable remedy. *Murry v. America's Mortgage Banc, Inc.*, 2005 WL 1323364, at *11 (N.D. Ill. 2005). Courts can, in the exercise of their equitable discretion, condition rescission of a loan under TILA on the borrower's tender to the lender of amounts the lender previously advanced. 15 U.S.C. Section 1635(b) ("The procedures prescribed by this subsection shall apply except when otherwise ordered by a court"); *See also AFS Financial v. Burdette*, 105 F.Supp.2d 881 (N.D. Ill. 2000); *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1142 (11th Cir. 1992); *Lynch v. GMAC Mortgage Co.*, 170 B.R. 26, 29 (Bankr. D.N.H. 1994); *Regency Savings Bank v. Chavis*, 333 Ill.App.3d 865 (Ill. 2d Dist. 2002) (courts are justified in conditioning the right to rescission upon tender to the lender of amounts the lender has advanced). Here, the Talleys have not alleged or proved that they can do equity by repaying to Ameriquest the principal balance of the loan if the loan were, in fact, to be rescinded. Accordingly, they have not even alleged, let alone established that they are entitled to rescission. This fact alone is a sound basis to defeat the Talleys' claimed entitlement to

4

summary judgment, as well as sufficient grounds to deny their request that the stay be lifted as to their case.

### B. There Is No Basis to Exclude the Talleys' Case from the Streamlined Mediation Process the Parties Have Created to Resolve Similar TILA Claims

Counsel for Ameriquest (and the other Defendants in this Ameriquest Lending Practices MDL) and counsel for plaintiffs that allege TILA claims (including ECLG and the law offices of Daniel Harris – the "Harris Office") have been negotiating a "Stipulation Re Stay of Actions Pending Mediation" the "Mediation Stipulation." [Le Sage Decl. paras. 3 - 17]. The Mediation Stipulation developed from active settlement negotiations on TILA claims that have been ongoing with ECLG, and other plaintiffs' counsel such as the "Harris Office." [Le Sage Decl., para 3-4]. Through the Mediation Stipulation, counsel agreed in principle that a Mediation Settlement Protocol that would apply to all of the individual TILA cases would accelerate and streamline settlement and reduce the related costs and attorneys fees. The Mediation Stipulation creates a procedure to refer these cases to mediation, and to streamline the discovery process. [Le Sage Decl., para. 4,16, 17].

During the negotiations over the Mediation Stipulation, the general concepts that all counsel agreed upon in principle subject to formal documentation were that (A) Defendants should have the right and opportunity to include as cross-defendants all potentially culpable parties and their insurance carriers; (B) all parties would exchange appropriate documents and information related to the charging allegations and defenses; (C) all parties would stay, but not waive, all formal motion practice and discovery pending the outcome of a good faith mediation before an agreed upon mediator; (D) if the initial mediation was not successful either party could serve Rule 26 disclosures, seek approval from the mediator for additional limited discovery that the parties and mediator felt would help resolve the case, and mediate one more time before resorting to formal court proceedings; and (E) in all events discovery would be limited to relevant depositions no more than four hours in length. [Le Sage Decl., para. 4].

5

At all times prior to October 3, 2006, the drafts of the Mediation Stipulation included the Talley case as one of the cases to be subject to the mediation process. [Le Sage Decl., para. 7]. Accordingly, prior to October 3, 2006, it appeared that, notwithstanding the Talleys' filing of the instant motion, counsel for all involved parties were working to find a method to resolve the Talley litigation, as well as all other similar litigation.[3]

The Mediation Stipulation calls for Judge Denlow to act as mediator. [Le Sage Decl., para. 9, 17]. As of October 12, 2006, all involved counsel agreed to and/or signed the current version of the Mediation Stipulation. [Le Sage Decl., para. 17].

The Talleys have not set forth any reason why their lawsuit should not be subject to the streamlined process set forth in the Mediation Stipulation. Given the fact that they are in no imminent danger of losing their property, there is no reason why their case cannot wait until third-party defendants are added, and mediations can proceed.

Moreover, in their motion, the Talleys fail to even mention, let alone prove, that lifting the stay and allowing them to proceed with litigation would be any faster than participating in the protocol established through the Mediation Stipulation. If the stay is lifted as to the Talleys and the parties are allowed to engage in open, unrestricted discovery and motion practice, it may very well be the case that the Talleys will be involved in litigating their case long after all other similar cases (that are subject to the Mediation Stipulation) are in mediation, and headed toward possible resolution.[4]

---

[3] This refutes the assertions in the Talleys' moving papers that Ameriquest failed to respond to their settlement demands. To the contrary, Ameriquest was actively negotiating with ECLG on a method of resolving the Talley case through the mediation process. ECLG removed the Talley case from the list of cases to be covered by the Mediation Stipulation on October 3, 2006, after multiple drafts of the stipulation (which specifically included the Talley case) were circulated, and after the parties to the negotiations agreed to substantially all of the provisions. [See Le Sage Decl., paras. 7, 11, 14]. ECLG's last minute removal of the Talleys' case from the Mediation Stipulation appears to be nothing more than an attempt (by both the Talleys and their counsel) to utilize the full force of the litigation and discovery process to gain an unfair advantage in the mediation process that will be implemented through the Mediation Stipulation (which covers all of ECLG's other clients).

[4] This could occur notwithstanding the Talleys' assertion that there is not much discovery left to be done in their case.

Finally, it is in Ameriquest's interest to resolve as many of these types of TILA cases as soon as possible, as to do so will save on Court time and attorneys' fees. This goal was the genesis of the Mediation Stipulation. As noted above and explained in more detail below, notice under the AG Settlement will begin in January 2007. The implementation of the AG Settlement, coupled with the Mediation Protocol under the Mediation Stipulation will streamline the settlement process. The stay that is currently in place, and the stipulated stay as agreed to in the Mediation Stipulation, significantly assists the settlement process and the goal of conserving the Court's and the parties' time and resources.

### C. The Talleys' Claims Are Not Unique. Therefore, Lifting the Stay as to Their Case Alone Will Unfairly Prejudice Scores of Other Litigants

The Talleys' lawsuit is based upon allegations that Ameriquest failed to comply with TILA by providing them with non-compliant NORTC's. However, at present there are 551 plaintiffs in the Ameriquest Lending Practices MDL who claim a right to rescind their loans under TILA based upon allegedly non-compliant NORTC's. Further, there are an additional 68 plaintiffs who claim that they have a right to rescind their loans under TILA based upon allegedly non-complaint NORTC's whose cases have been identified to the Judicial Panel on Multidistrict Litigation (the "MDL Panel") as potentially related cases and are therefore in the process of being transferred to the Ameriquest Lending Practices MDL. There are no fewer than fifteen purported class action complaints present in this Ameriquest Lending Practices MDL which allege the right to rescind under TILA based upon allegations of non-compliant NORTC's. The 551 plaintiffs have filed no fewer than one-hundred and fifty-six (156) complaints that have already been transferred to this Ameriquest Lending Practices MDL (some of which have multiple plaintiffs improperly joined) that allege the right to rescind under TILA by reason of a non-compliant NORTC. There are no fewer than an additional nineteen (19) complaints that claim the right to rescind under TILA by reason of a non-compliant NORTC that have been identified to the MDL Panel as potentially related cases and are therefore in the

7

process of being transferred to the Ameriquest Lending Practices MDL. [See Le Sage Decl. para. 2].

The Talleys have not adequately explained why this Court should distinguish and single out their case from the above-mentioned other litigants and potential litigants on the same subjects. Certainly, most, if not all of these litigants, either for financial reasons similar to the Talleys, or for other reasons, want to immediately lift the stay and proceed to litigate their cases. If the stay is lifted based upon the Talleys' claims of financial distress, multiple similar motions based upon similar financial distress and/or other claims of hardship will likely be filed.[5] This would thwart the goals of the stay that is currently in place in this litigation: which are to ensure that all parties receive their due process right to be heard on issues that affect their cases, and to avoid inconsistent rulings and duplicative discovery on these similar issues.

To use more concrete examples, the Talleys' lawsuit raises issues regarding allegedly non-compliant NORTC's, and confusion between the federal three-day NORTC and the One Week Cancellation Notice that Ameriquest also provides to its borrowers. In addition to the large number of plaintiffs identified above (and in the Le Sage Decl.) who claim they too received non-compliant NORTC's, 94 of the cases presently in the Ameriquest Lending Practices MDL allege (as do the Talley Plaintiffs) confusion over the federal TILA three day NORTC, and the One Week Cancellation Notice that Ameriquest also provides to its borrowers. Of these 94 cases, ten (10) are putative class actions of which the Talleys would be potential members. [See Le Sage Declaration, para. 2]. Lifting the stay and proceeding with the Talley

---

[5] The recently filed Cooperating Plaintiffs' Provisional Support for Motion of Terry and Cheryl Talley to Lift Stay or For Entry of Preliminary Injunctive Relief (the "Provisional Support Brief") proves the point that lifting the stay for the Talleys would open the floodgates to other, similar requests. Through the Provisional Support Brief, the Cooperating Plaintiffs ask that the Court also lift the stay for the "tens of thousands" of plaintiffs and putative class members in identical cases that are facing financial hardship like the Talleys. Further, it should be noted that the motion currently before the Court is the Talleys' motion to lift the stay as to their individual case, not a motion to lift the stay as to all parties. Nor is there a motion for preliminary injunction before the Court. Accordingly, in this Opposition, Ameriquest solely addresses the Talleys' motion in to lift the stay. However, if the Court intends to consider the Cooperating Plaintiffs' requests to lift the stay as to all parties and for a preliminary injunction, Ameriquest requests the opportunity to brief these issues, and set forth the myriad of reasons why these requests should be denied. Finally, in addition to repeatedly informally asking the Court to lift the stay, the Cooperating Plaintiffs previously attempted to bring a motion to lift the stay (Docket No. 178). The Court took that motion off calendar, and never set a briefing schedule (Docket No. 186).

litigation would unduly prejudice these other litigants and violate their due process rights by ruling on these issues without these litigants having an opportunity to be heard.[6] As this Court has repeatedly explained, potential parties to this action (as well as the parties that are already a part of this Ameriquest Lending Practices MDL) cannot be prejudiced by substantive rulings and/or discovery that might occur before they have an opportunity to be heard. It would be inherently unfair to all parties involved to have these issues addressed and adjudicated solely in the Talley case (without affording all other plaintiffs with similar issues the opportunity to be heard). The risk of prejudice to all of these other litigants and potential litigants far outweighs the Talleys' claims of financial hardship (which, as set forth above, they are not experiencing as a result of the Ameriquest loan).

### D. The Talleys' Request to Lift the Stay Should Be Denied Because, from a Procedural Perspective, the Stay Cannot Be Lifted Until All Third Party Closing Agents are Included in the Ameriquest Lending Practices MDL

Before the Talleys should be allowed to proceed with their lawsuit, Ameriquest must be allowed to bring its motion to join third-party closing agents as cross-defendants. Such a motion will include the potentially culpable third-party closing agents on the Talley loan. These third-party closing agents have an independent duty to ensure that the NORTC's required by TILA are properly completed and provided to borrowers at the time of loan closing. Therefore, they are necessary parties to actions such as the Talleys that allege TILA violations.

During recent settlement negotiations (discussed in greater detail below and in the Le Sage Decl.) concerning all of the similar TILA cases in this Ameriquest Lending Practices MDL, the Talleys' counsel acknowledged and agreed that third-party closing agents would have to be brought in to this Ameriquest Lending Practices MDL prior to any mediation of the TILA lawsuits. [See Le Sage Decl., paras. 6 – 17 and versions of the Mediation Stipulation attached thereto]. However, in the instant motion, the Talleys and their counsel conveniently ignore the fact that the third-party closing agents involved in their loan are not currently parties to the

---

[6] Further, as set forth in detail in footnote 6 below, the issue regarding whether the One Week Cancellation Notice violates TILA is currently on appeal to the United States Court of Appeals for the Seventh Circuit.

9

lawsuit. The Talleys make no provision for the third-party closing agents involved in their loan to be added. The Talleys case cannot be expedited (and the stay lifted) prior to the naming of these third-party closing agents. Moreover, waiting for all potentially responsible parties to be added improves the chances of settlement in an amount acceptable to all parties.

### E. The Talleys Should Be Afforded the Opportunity to Participate in the AG Settlement

The stay in the instant case should not be lifted to allow the Talleys to litigate their claims because their claims are covered by the AG Settlement. As set forth in the accompanying Declaration of Jeffrey D. Dahl, the AG Settlement, by its terms, covers Ameriquest loans made from January 1, 1999 through December 31, 2005. [Dahl Decl., para. 11]. Further, the AG Settlement will cover claims based upon misrepresentations or omissions related to written disclosures and the funding of the loan on time. [Dahl Decl., para. 12]. Since these are the precise factual claims the Talleys assert, and since their loan was originated in 2003, they are eligible for the benefits that their own state's Attorney General has negotiated for them in the AG Settlement.

Notice of the AG Settlement will be sent to eligible borrowers in January of 2007. [Dahl Decl., para. 12]. Accordingly, the Talleys will then have the opportunity to determine whether it is in their financial best interests to settle their claims by way of the AG Settlement. Since the financial benefit they are likely to receive under the AG Settlement may be significant, they should have the opportunity to review the AG Settlement Notice prior to proceeding with the instant litigation, and pursuing rescission (especially since, as set forth above, they have not established that they have the ability to do equity and return the principal balance of their loan).

### F. Contrary to Their Assertions, the Talleys Are Not Assured a Victory in Any Summary Judgment Motion They May File

In support of their Motion, the Talleys incorrectly suggest that the stay should be lifted because their case can easily be resolved via summary judgment. The Talleys claim they have four bases to prevail on summary judgment [See Talleys' Motion, pg. 3]. However, the Talleys misrepresent the strength of their supposed evidence on summary judgment.

10

The Talleys incorrectly contend that they are entitled to summary judgment because the payment schedule on Ameriquest's TILA disclosure statement was not properly or completely disclosed. This argument is based on the Talleys' claim that the word "monthly" is omitted from the TILA disclosure statement. The Talleys are simply factually wrong about their challenge to the TILA disclosure statement. While Ameriquest contends that it makes no difference to the TILA analysis, The TILA disclosure statement that the Talleys received **does** contain the word "monthly." [Gastelum Decl. para. 5].

The Talleys also contend that Ameriquest's One Week Cancellation Notice was confusing and misleading. Ameriquest counters that the One Week Cancellation Notice is clear, and affords borrowers greater rights than does the Federal law.[7] *See e.g. Kramer v. Home Savings of America, FSB*, 721 So.2d 1239, 1240 (4th Dist. Fla. 1998) ("TILA does not prevent a lender from giving a borrower greater rights than the statute requires"); *Hawaii Community Federal Credit Union v. Keka*, 11 P.3d 1, 13 (Haw. 2000); *Sharp v. Ford Motor Credit Co.*, 452 F.Supp. 465, 468 (S.D. Ill. 1978) (a disclosure that provides borrowers with greater rescission rights than provided under TILA is consistent with the stated purpose of TILA, promoting the informed use of credit).

The Talleys contend that all of the TILA disclosures they received misdated the transaction date because Ameriquest changed the disbursements for the loan and did not so notify the Talleys until over a month and a half after closing. Ameriquest contends that both

---

[7] Moreover, as the Talleys' counsel correctly points out in their moving papers, these two issues are currently on appeal before the United States Court of Appeals for the Seventh Circuit in *Hamm v. Ameriquest, et al.* 05-3984, and *Jones v. Ameriquest, et al.* 06-3086. ECLG is also the counsel for plaintiffs in these appeals. Specifically, these cases address the issues of whether Ameriquest's TILA disclosure statement should contain the word "monthly," and whether Ameriquest's One Week Cancellation Notice form is confusing and therefore violates TILA. Thus, it appears that ECLG is looking to quickly obtain another trial court's ruling on these issues (while at the same time, the Court of Appeals has entered the parties' stipulation to consolidate the Hamm and Jones appeals, which has the effect of delaying oral argument on the Hamm case until the Jones case is fully briefed). However, the fact that these issues are currently on appeal to the Seventh Circuit also militates against proceeding to lift the stay and decide these issues in the Talleys' case. Not only would any decision on these issues in the Talley case potentially adversely impact other litigants without affording them the opportunity to be heard, a chance exists that any ruling on these issues in the Talley case will be inconsistent with rulings that the Seventh Circuit will ultimately make.

legally and factually, the Talleys were not entitled to new TILA disclosures under the circumstances of their loan.

TILA only provides an extended right of rescission for failure to give a "material disclosure." For purposes of TILA rescission, Regulation Z defines "material disclosures" as, only, "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments [and] the payment schedule. . ." 12 C.F.R. Section 226..23(a)(3) n.48. Even assuming that the Talleys are correct that the disbursements changed, the "material" terms did not change from the time of closing to the time of funding. Accordingly, the Talleys were not entitled to new TILA disclosures.

The Talleys' contention that they did not receive a NORTC with the dates correctly filled-out is rebutted by the notice of right to cancel that the Talleys signed, and which is correctly dated. [Gastelum Decl., para. 4]. At a minimum, this document creates a rebuttable presumption that Ameriquest complied with TILA as to the Talleys' loan. *See, e.g.* 15 U.S.C. § 1635(c); *Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738, 751 (D.C. Cir. 2000); *Whitlock v. Midwest Acceptance Corp.*, 76 F.R.D. 190, 191 (D. Mo. 1977), *rev'd on other grounds*, 575 F.2d 652 (8th Cir. 1978) (plaintiffs' failure to controvert the presumption created by TILA entitled defendants to summary judgment).

Finally, the Talleys' assertion that there is only one deposition left to take in this case [Talley motion, p. 2-3] does not take into consideration the discovery and motions that defendants, including newly added third-party defendants, will require before this case can proceed to summary judgment. The Talleys cannot speak for defendants.

Given the above factual and legal disputes, there is no guaranty that a lifting of the stay for the Talleys alone will allow them to expeditiously resolve their case by summary judgment as they plan.

12

BN 1007806v1

### III. CONCLUSION

For the foregoing reasons and authorities, the Talleys motion to lift the stay and allow their case to proceed before all others should be denied.

DATED: October 13, 2006                Respectfully submitted,

By: __/s/ Bernard E. LeSage_____

*Attorneys for Defendants Ameriquest Mortgage Company, AMC Mortgage Services, Inc., Town & Country Credit Corporation, Ameriquest Capital Corporation, and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage
Sarah K. Andrus
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400