**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen) |

**DEFENDANT AMERIQUEST MORTGAGE COMPANY'S OPPOSITION TO MOTION
FOR ENTRY OF A DOCUMENT PRESERVATION ORDER**

## I.  INTRODUCTION

Since the time the "Cooperating Plaintiffs" filed their Motion for Entry of a Document Preservation Order ("Motion"), the "Cooperating Plaintiffs'" counsel and counsel for Defendant Ameriquest Mortgage Company ("Ameriquest") have engaged in significant good faith negotiations, including one face to face meeting, in an effort to reach agreement over the appropriate scope of such an order. [Declaration of Bernard E. LeSage, ¶ 7.] Ameriquest's primary concern throughout these negotiations has been two-fold: (1) ensuring that the categories of documents subject to any order are sufficiently well defined so that Ameriquest can ensure that it can comply with the order (since non-compliance could expose Ameriquest to sanctions for contempt); and (2) ensuring that the scope of the preservation order is not so broad as to require Ameriquest to retain documents which cannot possibly be the subject of appropriate discovery in the "Cooperating Plaintiffs'" cases[1].

As the Court has likely already observed, Ameriquest does not object to an appropriately tailored document preservation order. And, as further detailed in Section II below, the good-faith negotiations of counsel have resulted in considerable refinement and agreement of the

---

[1] Notably, the "Cooperating Plaintiffs" counsel have not been appointed lead counsel and therefore, the scope of any Order must be considered in the context of the "Cooperating Plaintiffs'" own 19 cases.

outstanding issues such that those issues raised in the Motion are, for the most part, no longer in dispute. Indeed, the parties have agreed to the following:

1. Ameriquest shall preserve, for loans that have been paid off, liquidated or service released as of the date of entry of the preservation order, all loan files or account records[2] signed on or after January 1, 1999. [LeSage Decl., Exh. 7.]

2. Ameriquest shall preserve all documents that Ameriquest produced to the state Attorneys General in response to any request for production of documents that related to Ameriquest originated loans or Ameriquest policies and procedures governing loan origination in connection with the Attorneys General Settlement entered on or about January 23, 2006. [LeSage Decl., Exhs. 2 and 7.]

3. Ameriquest shall preserve all documents responsive to a Request for Production of Documents that had been previously served upon Ameriquest in any case now pending in the above-referenced proceedings or being considered for transfer to the above referenced proceedings. [LeSage Decl., Exhs. 1, 2 and 3.]

4. To the extent that an Ameriquest subsidiary has servicing records related to an Ameriquest loan, such documents will be preserved. However, since Ameriquest does not have control over documents maintained by companies that have their own loans, policies, procedures and documents, such companies shall not be a party to any order (although a separate order may be negotiated). [LeSage Decl., Exh. 7.]

5. Ameriquest will provide notice of any preservation order to those employees charged with preserving the identified documents. Ameriquest shall have no obligation to provide notice to employees not so charged. [LeSage Decl., Exh. 7.]

The issues that remain for the Court's resolution are as follows:

1. The definition of which loan documents and account records must be preserved.

2. The time period for which Ameriquest must retain loan documents and account records (however that phrase may ultimately be defined) for Ameriquest loans that have not been paid-off, liquidated or service-released.

3. The scope of policies and procedures that must be retained.

---

[2] The parties have not, however, agreed to the definition of "loan files or account records", but Ameriquest has suggested, and is still willing to agree, that the phrase "Loan Files or Account Records" be defined to mean "all loan files and payment servicing records for all loans funded by Ameriquest during the agreed applicable statute of limitations period".

      4.      The scope of electronic records that must be retained.

      5.      The allocation of the cost of preservation of documents.

As set forth previously, Ameriquest's concern with categories one through four are simply that (a) the documents be adequately defined so that Ameriquest's employees know what to retain and Ameriquest is not subjected to sanctions for contempt; and (b) Ameriquest not be forced to save documents that are wholly irrelevant to the cases at issue.[3]

Moreover, after the filing of this Motion, "Cooperating Plaintiffs" presented to Ameriquest only a broader set of categories and subcategories of documents than submitted as a part of their moving papers. As a simple due process argument, "Cooperating Plaintiffs" do not represent every plaintiff in this Multidistrict Litigation Proceeding. There are numerous other parties who have an interest in this litigation who have not been given notice of the "Cooperating Plaintiffs'" newly added categories and, therefore, have not had an opportunity to be heard.

Finally, as a related issue, as the Court is aware, Ameriquest entered into a settlement agreement with the Attorneys' General of 49 states in January 2006 ("AG Settlement"). Any borrower availing himself of the benefits of the AG Settlement will sign a comprehensive release of claims against Ameriquest. As set forth in previous filings, the claims administrator anticipates at least a 70% claims rate. [Docket No. 166, p. 6.] Accordingly, once a borrower releases Ameriquest through the AG Settlement, or any other settlement[4], Ameriquest should be allowed to revert to its normal document retention policy as to any documents related to that borrower's loan.

Accordingly, Ameriquest does not object to entry of a document preservation order that covers those topics agreed to above. Ameriquest does, however, object to inclusion of any of the disputed terms and respectfully requests that the Court deny entry of any order including those terms except on the compromise grounds presented by Ameriquest in more detail below.[5]

---

[3] "Cooperating Plaintiffs" have refused to pay for any costs related to preservation and have added 29 new categories of documents to be preserved that were not part of their moving papers. This exponentially expands the documents to be preserved with little or no relationship to the charging allegations.

[4] Ameriquest has settled no fewer than four other class action cases with claims that overlap with those in the present cases.

[5] Despite the fact that Ameriquest is filing this Opposition, Ameriquest will continue to work with "Cooperating Plaintiffs'" counsel for a proper document preservation order.

## II. THE PARTIES' SUBSTANTIAL, ONGOING EFFORTS TO NEGOTIATE A STIPULATED PRESERVATION ORDER

As detailed in the Declaration of Bernard E. LeSage ("LeSage Decl."), counsel for Ameriquest and the "Cooperating Plaintiffs" engaged in significant negotiations in an effort to reach mutually acceptable terms of a stipulated document preservation order. Specifically, following the filing of the "Cooperating Plaintiffs'" Motion, on September 19, 2006, counsel held a telephonic meet and confer conference. Following that conference, Ameriquest's counsel memorialized its concerns in an email and attached a proposed form of preservation order that addressed those concerns. [LeSage Decl., ¶ 3, Exh. 1.]

On September 20, 2006, "Cooperating Plaintiffs'" counsel responded with a further revised proposed order which made some progress toward resolution. [LeSage Decl., ¶ 4, Exh. 2.] On September 26, 2006, counsel for Ameriquest summarized the remaining disputed issues raised by the "Cooperating Plaintiffs'" most recent proposed preservation order and submitted another revised proposed order which again made further progress toward resolution. [LeSage Decl., ¶ 5, Exh. 3.]

On October 4, 2006, counsel for Ameriquest and the "Cooperating Plaintiffs" held another telephonic meet and confer session in which they continued to resolve additional disputed issues. [LeSage Decl., ¶ 6.] That call closed with the "Cooperating Plaintiffs" counsel agreeing to submit proposed language that addressed Ameriquest's concern that many of the categories encompassed an overly broad range of documents that required further definition. Counsel then had an in-person meeting on October 9, 2006. While this meeting was arranged for other purposes, counsel took this opportunity to attempt to reach final resolution of the outstanding issues. [LeSage Decl., ¶ 7.]

In their attempt to refine the categories of documents requested, on October 10, 2006, "Cooperating Plaintiffs'" counsel provided Ameriquest with 29 subcategories of documents that were to apply to the "policies and procedures" category and "electronic records" category. [LeSage Decl., ¶ 8; Exh. 4.] While some of these subcategories appeared to be well-defined and appropriate (i.e., "loan origination"), many others unfortunately only compounded the vague and overbroad nature of the "Cooperating Plaintiffs'" requests and highlighted the definitional problems with their prior drafts as Ameriquest could not have guessed that the earlier drafts would have encompassed certain subcategories, nor are such subcategories relevant to any of the

"Cooperating Plaintiffs'" claims (i.e., "marketing to investors", "sales", "handling of regulatory complaints"). [Id.]

Given that the parties were unlikely to reach agreement and that "Cooperating Plaintiffs" had presented a far broader set of categories and subcategories than anticipated, on October 10, 2006, Ameriquest's counsel asked for "Cooperating Plaintiffs" counsel to agree to bear the cost of preservation. [LeSage Decl., ¶ 9; Exh. 5.] "Cooperating Plaintiffs" denied this request absent specific information which Ameriquest is unable to provide at this time since it is still not certain as to the scope of any preservation order. [LeSage Decl., ¶ 10; Exh. 6.] On October 13, 2006, Ameriquest's counsel provided a final summary of the parties' various disputes and agreements. [LeSage Decl., ¶ 11; Exh. 7.]

As the Court can surmise from the attached exhibits, the categories listed in the "Cooperating Plaintiffs'" original proposed order filed with their moving papers have been, for the most part, resolved, but there are still a few significant issues remaining for the Court's resolution. Each of these categories is addressed in sections III.A.3.a-e below.

### III. ARGUMENT

**A. THE MOTION FAILS TO ESTABLISH THE NECESSITY FOR THE ISSUANCE OF A DOCUMENT PRESERVATION ORDER.**

While Ameriquest has agreed, and will not withdraw its agreement, as to several categories of documents, there is a fundamental flaw with the "Cooperating Plaintiffs'" Motion that should bar entry of any document preservation order containing any terms not voluntarily agreed to by Ameriquest. Specifically, the "Cooperating Plaintiffs" have simply not made the requisite showing that any document preservation order should issue in the first place. The "Cooperating Plaintiffs" have not identified a single relevant issue, made a single citation to any of their 19 complaints, or attempted to tie any category of documents to the issues raised in any of their cases.

A preservation order is similar to an order granting injunctive relief. *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433 (W.D. Pa. 2004). This Court has explained that "[a] motion to preserve evidence is an injunctive remedy and should issue only upon an adequate showing that equitable relief is warranted." *In re African-American Slave Descendants' Litigation*, No. 1491, 02 C 7764, 2003 WL 24085346, at *2 (N.D. Ill. July 15, 2003) (citing *Madden v. Wyeth D/B/A Wyeth, Inc.*, No. 3- 03-CV-0167-R, 2003 WL

21443404, at *1 (N.D. Tex. Apr. 16, 2003)). Three factors are to be considered in determining whether a preservation order is warranted: (1) whether plaintiff has demonstrated that defendants will destroy evidence absent the order; (2) whether plaintiff will suffer irreparable harm if an order is not entered; and (3) the burden imposed on the parties by entering a preservation order. *Id.*

A party seeking a preservation order must do more than demonstrate the other party possesses relevant evidence. As cogently explained by one district court, if all that was necessary was proof of the existence of relevant evidence, a preservation order would issue in virtually all cases:

> It is apparent that the plaintiff may be irreparably injured if the evidentiary documents necessary to prove its claim are destroyed or otherwise put beyond the reach of the court. But this is true in every situation in which proof of a claim rests on documentary evidence; the parties may be irreparably injured if the documents are destroyed. Were the fact that a party to a lawsuit would suffer irreparable injury if a document were destroyed the sole test for the issuance of an injunction to prevent its destruction, injunctions should issue in every case in which important documents are within the control of either party. Obviously, this is not done and it cannot and should not be done. When the party who seeks an injunction shows potential irreparable injury, he has established merely one essential condition for relief. He must demonstrate in addition that there is real danger that the acts to be enjoined will occur, that there is no other remedy available, and that, under these circumstances, the court should exercise its discretion to afford the unusual relief provided by its injunction.

*Capricorn Power*, 220 F.R.D. at 431-432 (emphasis in original).

Thus, "the issuance of a preservation order is by no means automatic, even in a complex case." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 369-370 (S.D. N.Y. 2006) (citation omitted). Case law clearly demonstrates that "a specific order from the court directing one or both parties to preserve evidence is not ordinarily required." *United States ex. rel. Smith v. Boeing Co.*, No. Civ. A. 05-1073, 2005 WL 2105972, at *2 (D. Kan. Aug. 31, 2005). Indeed, courts within the Northern District of Illinois and beyond routinely refuse motions for preservation orders where the moving party fails to provide evidence that the non-moving party has not complied with applicable preservation requirements. *See, e.g., Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 676 (C.D. Cal. 2005); *Ferrari v. Gisch,* 225 F.R.D. 599, 611 (C.D. Cal. 2004); *Laffin v. Cerus Corp.*, No. C 03-5517-JF RS, 2004 WL 3080344, at *1 (N.D. Cal. Mar. 22, 2004); *In re African-*

*American Slave Descendants*, 2003 WL 24085346, at *2; *Hester v. Bayer Corp.*, 206 F.R.D. 683, 686 (M.D. Ala. 2001) (requesting a preservation order without demonstrating evidence is at risk is an "affront to our adversarial system"); *Pepsi-Cola Bottling Company v. Cargill, Inc.*, Civ. No. 3-95-784, 1995 WL 783610, at *3 (D. Minn. Oct. 20, 1995); *In re Potash Antitrust Litig.*, No. 3-93-197, 1994 WL 1108312, at *8 (D. Minn. Dec. 5, 1994); *Pierce v. Citibank (South Dakota), N.A.*, Civ. No. 93-343-FR, 1994 WL. 48959, at *3 (D. Or. Feb. 9, 1994). Applying the foregoing standards, the "Cooperating Plaintiffs" have not even begun to meet their burden of establishing the necessity for the issuance of a document preservation order.

### 1. The Motion Fails To Establish That Defendants Are Likely To Destroy Documents.

Courts routinely reject requests for document preservation orders in cases like this, where there has been no showing that a party is likely to destroy documents. *See id.*; *Capricorn Power Co., Inc.,* 220 F.R.D. at 433; *In re Potash Antitrust Litig.,* 1995 WL 783610, at *8.

Here, the "Cooperating Plaintiffs" do not even bother attempting to demonstrate that relevant documents are in danger of being destroyed by Ameriquest. In fact, they make no effort to establish that any of the documents for which they request preservation bear any relation to the cases they have filed. It is important to note that the "Cooperating Plaintiffs" have filed only 19 of the 154 cases that have been transferred or reassigned to this Court and that their counsel has not been appointed lead counsel. Therefore, the "Cooperating Plaintiffs" cannot seek to preserve documents other than those that are relevant to their current allegations. The "Cooperating Plaintiffs" have not even explained their claims or identified their cases, let alone demonstrated that any documents they seek to preserve are relevant to such claims or cases.

Moreover, Ameriquest has already agreed to retain those documents that are relevant to the "Cooperating Plaintiffs'" claims. The only justifications offered by "Cooperating Plaintiffs" to attempt to establish imminent destruction of documents are purely speculative. The "Cooperating Plaintiffs'" claim, among other things, that: (1) they have no information about Ameriquest's document retention policy, and therefore documents could be destroyed; and (2) the closure of Ameriquest branch offices will increase the likelihood that documents will be destroyed. [Motion, pp. 4-5.] Mere speculation that documents *could* be destroyed is insufficient. Where, as here, a motion for a preservation order is based upon "an indefinite or

unspecified possibility of the loss or destruction of evidence, rather than a specific, significant, imminent threat of loss," the motion should be denied. *Capricorn Power,* 220 F.R.D. at 435.

Moreover, pursuant to the AG Settlement, an independent Monitor has been appointed to oversee compliance with the AG Settlement. The Monitor has broad duties and powers, which include supervising all aspects of Ameriquest's lending practices to ensure compliance with applicable laws. Furthermore, the Monitor and Ameriquest have a separate agreement between them. The Monitor's duties in this separate agreement include ensuring that Ameriquest complies with all applicable laws, including retention of documents for litigation purposes.

Simply put, the "Cooperating Plaintiffs" allege nothing to indicate that relevant documents are in jeopardy of being destroyed or that Ameriquest is not complying with its obligations under the Federal Rules of Civil Procedure and the common law. On this basis alone, the "Cooperating Plaintiffs'" Motion should be denied.

### 2. The "Cooperating Plaintiffs" Fail To Demonstrate the Likelihood Of Irreparable Injury if a Preservation Order is Not Issued.

Ameriquest has a duty, which it fully acknowledges, to preserve certain evidence relevant to the pending litigation. *See Wiginton v. CB Richard Ellis,* No. 02 C 6832, 2003 WL 22439865, *4 (N.D. Ill. Oct. 27, 2003) (holding a party has a duty to preserve evidence which may be related to the litigation); *see also In re African-American Slave Descendants Litigation*, 2003 WL 24085346 at *3. Ameriquest is committed to adhering to its obligations under the Federal Rules of Civil Procedure and the common law.

However, the "Cooperating Plaintiffs" do not allege, much less prove, that Ameriquest will ignore their obligation under the federal rules without a preservation order. Therefore, their failure to allege any facts showing that Ameriquest is likely to destroy relevant documents and Ameriquest's acknowledgement of its intention to preserve relevant documents, lead to but one inescapable conclusion: the "Cooperating Plaintiffs" have fallen far short of establishing a case for the likelihood of irreparable harm in the absence of a document preservation order. *See, e.g., In re Potash Antitrust Litig.,* 1994 WL 1108312 at *8 (holding that plaintiffs failed to establish irreparable harm because they did not demonstrate that there was a real danger that acts to be enjoined would occur). The "Cooperating Plaintiffs'" request, therefore, should be denied.

### 3. The "Cooperating Plaintiffs'" Preservation Demand is Vastly Overbroad and Unduly Burdensome.

The "Cooperating Plaintiffs'" overly broad and vague requests would place a great burden on Ameriquest. The "Cooperating Plaintiffs" are requesting that Ameriquest retain documents going back for an indefinite period of time, regardless of their relevance to the "Cooperating Plaintiffs'" cases before this Court. And, as detailed below, the categories and subcategories of documents requested in the "Cooperating Plaintiffs'" latest position are too unlimited and unspecified. Such an overly broad order would be too burdensome for compliance and requests preservation of documents that could not possibly be relevant to this action. *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991) ("While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request").

Each of the outstanding issues is addressed in turn:

### a. Issue Number One – The Definition of Which "Account File" Documents Must Be Preserved

The "Cooperating Plaintiffs'" Motion seeks preservation of "All documents in the account file of any loan originated on or after January 1, 1998". [Docket Ent. 236-1.] Through the meet and confer process they have offered to change that definition to "loan files or account records". Ameriquest agrees to this category in theory, however, as phrased, the description of documents is far too vague for Ameriquest to be assured that it can comply. The specific documents that are the subject of this category need to be more precisely defined to assist Ameriquest employees in identifying precisely what needs to be preserved.

After counsel's additional meet and confer discussions, the "Cooperating Plaintiffs" agreed to provide a more detailed description of the records requested. [LeSage Decl., ¶ 7.] The "Cooperating Plaintiffs" have not provided any written detailed description, but at the October 9, 2006 meeting, suggested a definition that significantly expanded the definition of what Ameriquest believes the phrase "loan files or account records" to mean. [Id.]

As a simple matter of due process, the "Cooperating Plaintiffs" have not filed a motion, met their burden of proof, or otherwise even reduced this expanded definition to writing, and

Ameriquest cannot be subjected such an order without notice and an opportunity to be heard. *See Farrar v. Glantz,* No. 00 C 275, 2000 WL 574682, *5 (N.D. Ill. May 9, 2000) ("The core of due process is the right to notice and a meaningful opportunity to be heard."); *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir.1999); *see also Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1347 (Fed. Cir. 2005) (stating that under Seventh Circuit law, the key issue to be resolved in determining sufficiency of motion is whether the document filed affords notice of the grounds and prayer of the motion to both the court and to the opposing party, providing that party with a meaningful opportunity to respond and the court with enough information to process the motion correctly); *Registration Control Systems, Inc. v. Compusystems, Inc.*, 922 F.2d 805 (Fed. Cir. 1990). Should the Court be inclined to grant the Motion as to this point, it must be limited to the relief the "Cooperating Plaintiffs" sought in their filed Motion – i.e., **"All documents in the account file of any loan originated on or after January 1, 1998"**. *See id.*

Moreover, the "Cooperating Plaintiffs'" informal, expanded definition underscores that the vague phrases they initially presented are not capable of a uniform definition with which Ameriquest employees can be expected to comply under the threat of contempt sanctions. To the extent that the "Cooperating Plaintiffs" seek to formally expand upon their original category, Ameriquest requests the opportunity to present further briefing on the issue.

Nonetheless, in an effort to resolve this matter, Ameriquest has suggested, and is still willing to agree, that the phrase "Loan Files or Account Records" be defined to mean "all loan files and payment servicing records for all loans funded by Ameriquest during the agreed applicable statute of limitations period".

### b. Issue Number Two – Statute of Limitations for Open Loans

Again, the "Cooperating Plaintiffs'" Motion seeks preservation of "All documents in the account file of any loan originated on or after January 1, 1998". [Docket Ent. 236-1.] Unfortunately, in addition to the definitional dispute set forth above, during the meet and confer process, the "Cooperating Plaintiffs" removed the date limitation as to those loans that have not been paid off, liquidated or service-released ("Open Loans"). As set forth above, the parties have agreed that for loans that have been paid off, liquidated or service released ("Closed Loans"), documents need only be saved if the loan originated on or after January 1, 1999.

Ameriquest initially objects to this proposed change on due process grounds as it has not been formally requested or briefed by the "Cooperating Plaintiffs" and is not the subject of the

BN 995133v5            10

pending Motion. *See Farrar,* 2000 WL 574682, at *5; *Nazarova,* 171 F.3d at 482. In addition, there is no reason to distinguish between Open Loans and Closed Loans and Ameriquest objects to this unspecified time frame for the former category because it should not be required to preserve documents that precede all applicable statute of limitations. The earliest filed cases before this Court were all filed in late 2004[6]. The longest statute of limitations contained within any of these cases is in the *Burggraff* case, filed in California (or any other state), and is five years. Thus, loan files in California retained any earlier than five years prior to the filing of *Burggraff* are irrelevant. Accordingly, Ameriquest should not be required to preserve loan files for loans in California before November 30, 1999. *See In re African-American Slave Descendants' Litigation*, 2003 WL 24085346 at *3 (stating that parties have an affirmative duty to preserve evidence which may be relevant to the litigation).

As a compromise, however, Ameriquest continues to agree to limit the time period of this category to loans closed on or after January 1, 1999.

        **c.    Issue Number Three – "Documents Describing Policies and Procedures"**

In their Motion, the "Cooperating Plaintiffs" request that Ameriquest retain "all documents that governed policies and procedures at Ameriquest at any time after September 1, 1996". [Docket Ent. 236-1.] Without conceding their relevance, Ameriquest has recommended in its proposed preservation order, and remains willing to agree, that all Ameriquest policies and procedures in full force and effect from January 1, 1999 forward, related to loan origination, be preserved. [LeSage Decl., Exh. 3.] The reason for this is that each of the "Cooperating Plaintiffs'" cases relates to loan origination.

As set forth above, in their purported effort to better define this category of documents, the "Cooperating Plaintiffs" now seek "all records of policies or procedures related to" twenty-nine distinct subcategories, many of which have nothing to do with the claims asserted in their 19 lawsuits before this Court. [LeSage Decl., ¶ 8; Exh. 4.] In addition, several of the categories are so vague that Ameriquest can not determine what needs to be retained or whether it is relevant. For example, Ameriquest does not know what the "Cooperating Plaintiffs" mean by

---

6 *Furgeson v. Ameriquest Mortgage Co., et al.*, N.D. Ill., Case No. 04-7627 (filed November 23, 2004); *Burggraff v. Ameriquest Capital Corp., et al.*, C.D. Cal., Case No. 04-9715 (filed November 30, 2004); *Barber, et al. v. Ameriquest Capital Corp., et al.*, M.D. Fl., Case No. 04-1296 (filed December 16, 2004); *Murphy, et al. v. Ameriquest Mortgage Co.*, Mass., Case No. 04-12651 (filed December 17, 2004).

"records of policies and procedures related to sales". If the "Cooperating Plaintiffs" mean Ameriquest's sales of loans to consumers, that is amply covered by several other subcategories, such as "loan origination". If "Cooperating Plaintiffs" mean sales of other items, Ameriquest is at a loss as to what documents are intended to be covered by this category.

Since these documents have no basis in the actual complaints, it would be overly burdensome and expensive to preserve such a broad category of documents. *See In re African-American Slave Descendants' Litigation*, 2003 WL 24085346 at *4 (stating the costs of preserving broad categories are likely to outweigh the relevance of the material sought). Should the Court disagree, the "Cooperating Plaintiffs" should bear the cost of such preservation.

Moreover, these new categories of documents were not submitted as a part of "Cooperating Plaintiffs'" moving papers. Therefore, other parties who have an interest in this litigation who have not been given notice of the newly added categories have not had an opportunity to be heard.

### d. Issue Number Four – Electronic Documents

In their Motion, the "Cooperating Plaintiffs" seek to compel Ameriquest to preserve "all electric records, of any kind, presently in existence". [Docket Ent. 236-1.] In attempting to pare this category down to something that can be implemented by Ameriquest, the "Cooperating Plaintiffs" offer the same 29 subcategories that they offered in connection with the prior "Policies and Procedures" category. For the same reasons set forth in the preceding section, this request should be denied. In addition, when it comes to electronic records in particular, Ameriquest should only be required to retain those that are reasonably related to the allegations of the complaints. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-218 (holding that an obligation to preserve all electronic documents is too burdensome and would "cripple large corporations"). Moreover, because preservation of even those documents that may bear some relation to the issues raised in the "Cooperating Plaintiffs'" complaints would be overly burdensome and expensive to preserve, the "Cooperating Plaintiffs" should bear the cost of such preservation.

Finally, while this category remains incredibly overbroad, Ameriquest believes it can be effectively implemented as to those electronic documents that relate to loan origination that were in full force and effect on or after January 1, 1999, and does not object to such an order provided that it is so limited in scope.

BN 995133v5                                           12

### e. Issue Number Five – Cost of Preservation

Whether set forth in their original Motion, or added during the meet and confer process, the overly broad categories for which the "Cooperating Plaintiffs" seek preservation are likely to increase the costs to Ameriquest in maintaining data. These costs of preserving such broad categories are likely to substantially outweigh the probability of the material sought in the lawsuit being relevant to any issues raised in the 19 complaints filed by the "Cooperating Plaintiffs". *In re African-American Slave Descendants' Litigation*, 2003 WL 24085346 at *4; Manual for Complex Litigation, Fourth, § 11.442 at 74.

With respect to preservation orders, Courts are equally empowered to shift the expense to the party who seeks preservation. *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 373 (S.D.N.Y., 2006). It is no secret that the cost of preserving data, especially electronic data, can become prohibitive. *See* Manual for Complex Litigation, Fourth § 11.442 at 73. If the demanding party seeks the preservation of information that is likely to be of only marginal relevance but is costly to retain, rather than deny a preservation order altogether, a court may condition it upon the requesting party assuming responsibility for part or all of the expense. *Treppel*, 233 F.R.D. at 373.

Unless the "Cooperating Plaintiffs" can better tailor and define their request for a document preservation order to what is relevant to the allegations in their 19 complaints, they should be required to bear the costs of such preservation. Because Ameriquest is uncertain of the scope of any preservation order and has not yet determined whether there will be added expense in connection with any order that is ultimately entered, Ameriquest reserves the right to apply to this Court for reimbursement of such expenses upon a proper showing.

### B. ADDITIONAL TERMS

Finally, while Ameriquest does not object to an appropriately-tailored document preservation order, Ameriquest does object to such an order having any effect on the scope of allowable discovery in this matter. Accordingly, any Order should contain the following language: "Nothing contained in this Preservation Order shall constitute a waiver of any kind, including but not limited to, any objection to the production of such documents in these proceedings, or be deemed an agreement by Ameriquest that documents subject to this

Preservation Order shall be deemed relevant for discovery purposes, or that they be required to be produced in discovery, or otherwise in the above referenced proceedings."

## IV.    CONCLUSION

As detailed above, following their meet and confer discussions, the parties have been unable to reach an agreement as to the five issues briefed above. Based on the foregoing, and without waiving any of the arguments set for above, Ameriquest has no objection to entry of a document preservation order that contains, and is limited to, the following terms:

1. Ameriquest shall preserve all loan files or account records for loans signed on or after January 1, 1999.

2. The phrase "loan files or account records" shall be defined to mean all loan files and payment servicing records for all loans funded by Ameriquest covered by the time period set forth above in the preceding paragraph.

3. Ameriquest shall preserve all documents that Ameriquest produced to the state Attorneys General in response to any request for production of documents that related to Ameriquest originated loans or Ameriquest policies and procedures governing loan origination in connection with the Attorneys General Settlement entered into on or about January 23, 2006 ("AG Settlement").

4. Ameriquest shall preserve all documents responsive to a Request for Production of Documents that had been previously served upon Ameriquest in any case now pending in the above referenced proceedings or being considered for transfer to the above referenced proceedings.

5. Ameriquest shall preserve all Ameriquest policies and procedures that govern loan origination at Ameriquest that were in full force and effect on or after January 1, 1999.

6. Ameriquest shall preserve all electronic records related to Ameriquest originated loans, as well as its policies and procedures governing Ameriquest loan originations, created on or after January 1, 1999 that are in existence as of the date of entry of this of this Preservation Order.

7. To the extent that an Ameriquest subsidiary has servicing records related to an Ameriquest loan, such documents will be preserved. However, since Ameriquest does not have control over documents maintained by companies that have their own loans, policies, procedures and documents, such companies are not parties to this Preservation Order.

8. Nothing contained in this Preservation Order shall constitute a waiver of any kind, including but not limited to, any objection to the production of such documents in these proceedings, or be deemed an agreement by Ameriquest that documents subject to this Preservation Order shall be deemed relevant for discovery purposes, or that they be required to be produced in discovery, or otherwise in the above referenced proceedings.

9. Should any Ameriquest borrower release its claims against Ameriquest through the AG Settlement, or any other settlement, Ameriquest shall be allowed to revert to its ordinary document retention policy as to any documents related to such borrower's loan.

10. Ameriquest shall immediately implement this Preservation Order by memorandum to all of its employees who are responsible for records retention and/or destruction, which memorandum shall specifically override any document destruction policies that Ameriquest presently has in place, and Ameriquest shall certify compliance to the Court within 10 days of the date this Preservation Order is entered by this Court.

11. This Preservation Order shall remain in place until the close of the discovery period in any of the transferred cases absent a superseding Preservation Order of the Court.

DATED: October 16, 2006

Respectfully submitted,

By: _/s/  Bernard E. LeSage_____

*Attorneys for Defendants Ameriquest Mortgage Company, AMC Mortgage Services, Inc., Town & Country Credit Corporation, Ameriquest Capital Corporation,* and *Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage
Sarah K. Andrus
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

## CERTIFICATE OF SERVICE

  I, Bernard E, LeSage, hereby certify that on this 16th day of October 2006, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                   By: /s/ Bernard E. LeSage