# EXHIBIT H

## MORGAGE

Argent Mortgage Company, LLC
P.O. Box 5047
Rolling Meadows, IL 60008

THIS MORTGAGE is made this 25th          day of March, 2005          , between
the Mortgagor, MARLON MANIER and TANYA S. MANIER, Husband and Wife

, whose address is 442 SHERBOURNE ST, INKSTER,MI
48141

(herein "Borrower"), and the Mortgagee,
Argent Mortgage Company, LLC

, a corporation organized and
existing under the laws of Delaware                              , whose address is
One City Boulevard West  Orange, CA 92868

(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 26,800.00          ,
which indebtedness is evidenced by Borrower's note dated March 25, 2005          and extensions
and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the
balance of the indebtedness, if not sooner paid, due and payable on April 1, 2035          ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon;
the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of
this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower
does hereby mortgage, grant and convey to Lender, with power of sale, the following described
property located in the County of WAYNE                              , State of Michigan:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

0075092114

| MICHIGAN - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT | Form 3823 |

0075092114 - 9703
03/24/2005 3:35:34

AM76MI (0310)
Page 1 of 5                                    Initials: _____
VMP Mortgage Solutions (800)521-7291

which has the address of 442 SHERBOURNE ST                                    [Street],
INKSTER                              [City], Michigan   48141         [ZIP Code] (herein
"Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

0075092114

Initials: _____

AM76MI (0310)                        Page 2 of 5                        Form 3823

0075092114 - 9703

03/24/2005 3:35:34 PM

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale hereby granted and any other remedies permitted by applicable law. Lender

0075092114

Initials: _____

shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof. Lender shall publish and post the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** [Omitted]

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare and file a discharge of this Mortgage without charge to Borrower, and shall pay the fee for recording the discharge.

<div align="center">

REQUEST FOR NOTICE OF DEFAULT
————AND FORECLOSURE UNDER SUPERIOR————
MORTGAGES OR DEEDS OF TRUST

</div>

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Witnesses:

_____     _____ (Seal)
                                       MARLON MANIER                  -Borrower


_____     _____ (Seal)
                                       TANYA S. MANIER               -Borrower


_____ (Seal)   _____ (Seal)
                       -Borrower                                     -Borrower


_____ (Seal)   _____ (Seal)
                       -Borrower                                     -Borrower


_____ (Seal)   _____ (Seal)
                       -Borrower                                     -Borrower


*[Sign Original Only]*


0075092114

AM76MI (0310)                          Page 4 of 5                    Form 3823
0075092114 · 9703

03/24/2005 3:35:34

STATE OF MICHIGAN, _____ County ss:

Acknowledged before me in _____ County, Michigan, on

by _____

_____

My Commission Expires: _____

Notary Public, State of Michigan
County of _____
My commission expires _____
Acting in the County of_____

This instrument was prepared by  Argent Mortgage Company, LLC

_____
_____
_____



0075092114 - 9703
03/24/2005 3:35:34 PM

# EXHIBIT I

OMB No. 2502-0265

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SETTLEMENT STATEMENT | B. | TYPE | OF | LOAN |
|---|---|---|---|---|

| B. | TYPE OF LOAN |
|---|---|
| 1. ☐ FHA | 2. ☐ FHMA | 3. ☐ CONV. UNINS. |
| 4. ☐ VA | 5. ☐ CONV. INS. | |

6. FILE NUMBER: 5834a  
7. LOAN NUMBER: 0075092114  
8. MORTGAGE INS. CASE NO.:

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME & ADDRESS OF BORROWER: Marlon Manier 442 Sherbourne, Inkster, MI 48141

E. NAME & ADDRESS OF SELLER:

F. NAME & ADDRESS OF LENDER: Argent Mortgage Company 44 Broadway, White Plains, NY 10604

G. PROPERTY LOCATION: 442 Sherbourne, Inkster, MI 48141

H. SETTLEMENT AGENT: Michigan Land Title Agency, Inc.
PLACE OF SETTLEMENT: 7001 Orchard Lake Road, Suite 432, West Bloomfield, MI 48322 (248) 487-2460

I. SETTLEMENT DATE: 3/25/2005 Final

DISBURSEMENT DATE: 3/30/2005

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower: | | 400. Gross Amount Due To Seller: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower: (line 1400) | 500.50 | 403. | |
| 104. Proceeds For 1st | 26,299.50 | 404. | |
| 105. | | 405. | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Adjustments For Items Paid By Seller In Advance:** | | **Adjustments For Items Paid By Seller In Advance:** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes             to | | 407. County taxes             to | |
| 108. Assessments              to | | 408. Assessments              to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 120. Gross Amount Due From Borrower: | 26,800.00 | 420. Gross Amount Due To Seller: | |
| 200. Amounts Paid By Or In Behalf Of Borrower: | | 500. Reductions In Amount Due To Seller: | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 26,800.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1st Mtg. Ln. | |
| 205. | | 505. Payoff 2nd Mtg. Ln. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| | | | |
| | | | |
| | | | |
| **Adjustments For Items Unpaid By Seller:** | | **Adjustments For Items Unpaid By Seller:** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes             to | | 511. County taxes             to | |
| 212. Assessments              to | | 512. Assessments              to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| | | | |
| | | | |
| 220. Total Paid By/For Borrower: | 26,800.00 | 520. Total Reductions In Amount Due Seller: | |
| 300. Cash At Settlement From/To Borrower: | | 600. Cash At Settlement From/To Seller: | |
| 301. Gross amount due from borrower (line 120) | 26,800.00 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 26,800.00 | 602. Less reductions in amount due seller (line 520) | |
| 303. Cash (☐FROM) (☐TO) Borrower: | 0.00 | 603. Cash (☐TO) (☐FROM) Seller: | 0.0 |

Previous Edition Is Obsolete
Form No. 1581
3/86

Page 1 of 3

SB-4-3538-000-
HUD-1 (3-86
RESPA, HB 4305.

| | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|
| **700. Total Sales/Broker's Commission:** Based On Price $ @ % = | | | |
| Division of Commission (line 700) As Follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| **800. Items Payable In Connection With Loan:** | | | |
| 801. Loan Origination fee % | | | |
| 802. Loan Discount % | | | |
| 803. Appraisal fee to: | | | |
| 804. Credit report to: | | | |
| 805. Lender's inspection fee | | | |
| 806. Mortgage insurance application fee to | | | |
| 807. Assumption fee | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 816. | | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | |
| 901. Interest from 3/30/2005 to 4/01/2005 @$ 7.7500 /day | | 15.50 | |
| 902. Mortgage insurance premium for mo. to | | | |
| 903. Hazard insurance premium for yrs. to | | | |
| 904. Flood insurance premium for yrs. to | | | |
| 905. | | | |
| 906. | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001. Hazard insurance 0 months @ $ 0.00 per month | | | |
| 1002. Mortgage insurance 0 months @ $ 0.00 per month | | | |
| 1003. City property taxes 0 months @ $ 0.00 per month | | | |
| 1004. County property taxes 0 months @ $ 0.00 per month | | | |
| 1005. Annual assessments 0 months @ $ 0.00 per month | | | |
| 1006. Flood insurance 0 months @ $ 0.00 per month | | | |
| 1007. 0 months @ $ 0.00 per month | | | |
| 1008. Aggregate Adjustment | | | |
| 1009. | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to Michigan Land Title Agency, Inc. | | 150.00 | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to (includes above item Numbers: ) | | | |
| 1108. Title insurance to Michigan Land Title Agency, Inc. (includes above item Numbers: ) | | 275.00 | |
| 1109. Lender's coverage $ 26,800.00 Premium: $275.00 | | | |
| 1110. Owner's coverage $ | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| 1114. | | | |
| **1200. Government Recording and Transfer Charges:** | | | |
| 1201. Recording fees: Deed $ ;Mortgage $ 45.00 ;Releases $ 15.00 | | 60.00 | |
| 1202. City/county tax/stamps: Deed $ ;Mortgage $ | | | |
| 1203. State tax/stamps: Deed $ ;Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey to | | | |
| 1302. Pest inspection to | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1311. | | | |
| 1312. | | | |
| 1313. | | | |
| **1400. Total Settlement Charge** *(Enter on line 103, Section J - and - line 502, Section K)* | | 500.50 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrowers/Purchasers                                    Sellers

_____
Marlon Manier

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____     Date: _____
            , Michigan Land Title Agency, Inc.

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# EXHIBIT J

# NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: March 25, 2005
LOAN NO.: 0075092114 - 9703
TYPE: FIXED RATE

BORROWER(S): MARLON MANIER

ADDRESS: 442 SHERBOURNE ST
CITY/STATE/ZIP: INKSTER, MI 48141

PROPERTY: 442 SHERBOURNE ST
INKSTER, MI 48141

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

| DOCUMENT SIGNING DATE |
|---|
| 03/25/2005 |

; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
Attn: Post Close Dept. 8th Floor
3 Park Plaza
Irvine, CA 92614

ATTN: Post Close Dept.
FAX: (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
|---|
| 03/29/2005 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____          _____
SIGNATURE                                                          DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____          _____
BORROWER/OWNER MARLON MANIER          Date          BORROWER/OWNER TANYA S. MANIER          Date

_____          _____
BORROWER/OWNER          Date          BORROWER/OWNER          Date

1064-NRC (Rev 07/04)

03/24/2005 3:35:34 PM

# NOTICE OF RIGHT TO CANCEL

LENDER:   Argent Mortgage Company, LLC

DATE:  March 25, 2005
LOAN NO.:   0075092114 - 9703
TYPE:   FIXED RATE

BORROWER(S): MARLON MANIER

ADDRESS:        442 SHERBOURNE ST
CITY/STATE/ZIP:   INKSTER,MI 48141

PROPERTY:   442 SHERBOURNE ST
                 INKSTER, MI  48141

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

| DOCUMENT SIGNING DATE |
|---|
| 03/25/2005 |

; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property that you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
Attn: Post Close Dept.  8th Floor
3 Park Plaza
Irvine, CA 92614

ATTN:  Post Close Dept.
FAX:   (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
|---|
| 03/29/2005 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____              _____
SIGNATURE                                                        DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____        ____        _____        ____
BORROWER/OWNER MARLON MANIER        Date        BORROWER/OWNER TANYA S. MANIER        Date

_____        ____        _____        ____
BORROWER/OWNER                                 Date        BORROWER/OWNER                                 Date

1064-NRC (Rev 07/04)

03/24/2005 3:35:34 PM

# NOTICE OF RIGHT TO CANCEL

LENDER:   Argent Mortgage Company, LLC

DATE:   March 25, 2005
LOAN NO.:   0075092114 - 9703
TYPE:   FIXED RATE

BORROWER(S): MARLON MANIER

ADDRESS:        442 SHERBOURNE ST
CITY/STATE/ZIP:   INKSTER,MI 48141

PROPERTY:   442 SHERBOURNE ST
                    INKSTER,  MI  48141

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

| DOCUMENT SIGNING DATE |
| --- |
| 03/25/2005 |

; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
Attn:  Post Close Dept. 8th Floor
3 Park Plaza
Irvine, CA 92614

ATTN:  Post Close Dept.
FAX:   (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
| --- |
| 03/29/2005 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____
SIGNATURE

_____
DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____
BORROWER/OWNER MARLON MANIER          Date

_____
BORROWER/OWNER TANYA S. MANIER          Date

_____
BORROWER/OWNER          Date

_____
BORROWER/OWNER          Date

1064-NRC (Rev 07/04)

03/24/2005 3:35:34 PM

# EXHIBIT K

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

[ ] Preliminary    [X] Final

LENDER: Argent Mortgage Company, LLC
2550 Golf Road, East Tower, 10th Floor
Rolling Meadows, IL 60008
(800)369-5117

Broker License: FL-2011

Borrowers: MARLON MANIER

Type of Loan: FIXED RATE
Date: March 25, 2005

Address: 442 SHERBOURNE ST
City/State/Zip: INKSTER, MI 48141

Loan Number: 0075092114 - 9703

Property: 442 SHERBOURNE ST, INKSTER, MI 48141

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 10.735 % | $ 62,214.05 | $ 26,384.50 | $ 88,598.55 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF. PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $246.16 | 05/01/2005 | | | |
| 1 | $227.11 | 04/01/2035 | | | |

VARIABLE RATE FEATURE:

[ ] Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 442 SHERBOURNE ST, INKSTER, MI 48141

ASSUMPTION: Someone buying this property [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE: You may obtain property insurance from anyone you want that is acceptable to Argent Mortgage Company, LLC

LATE CHARGES: If a payment is late, you will be charged 5.000% of the overdue payment .

PREPAYMENT: If you pay off your loan early, you
[ ] may [X] will not have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower MARLON MANIER    Date

Borrower TANYA S. MANIER    Date

Borrower    Date

Borrower    Date

TIL1 (Rev. 7/01)

03/24/2005 3:35:34 PM

# EXHIBIT L

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.

### 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
Email: edcombs@aol.com
www.edcombs.com

July 25, 2006

**BY CERTIFIED MAIL**

Argent Mortgage Company, LLC
c/o registered agent
National Registered Agents, Inc.
712 Abbott Road
East Lansing, MI 48823

HomEq Servicing Corporation
c/o registered agent
CSC Lawyers Incorporating Service (Company)
601 E. Abbott Road
East Lansing, MI 48823.

Re:  Notice of rescission, claim and lien, Marlon Manier and Tanya S. Manier, 442 Sherbourne Street, Inkster, MI 48141, loans (two) of March 25, 2005

Ladies/Gentlemen:

Each of the above clients hereby gives notice that they rescind the above loans for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than the addressees listed above, please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on July 25, 2006, 2006.

_____

Daniel A. Edelman

# EXHIBIT M

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

[X] Preliminary     [ ] Final

LENDER: Argent Mortgage Company, LLC
2550 Golf Road, East Tower, 10th Floor
Rolling Meadows, IL 60008
(800)369-5117

Broker License: FL-2011

Borrowers: MARLON MANIER

Type of Loan: ADJUSTABLE RATE
Date: March 9, 2005

Address: 442 SHERBOURNE
City/State/Zip: INKSTER, MI 48141

Loan Number: 0075090514 - 9703

Property: 442 SHERBOURNE, INKSTER, MI 48141

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| (e) 8.565 % | $ 200,166.92 (e) | $ 106,170.70 (e) | $ 306,337.62 (e) |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | (e) $629.00 | 05/01/2005 | | | |
| 6 | (e) $765.29 | 05/01/2007 | | | |
| 6 | (e) $836.68 | 11/01/2007 | | | |
| 323 | (e) $869.25 | 05/01/2008 | | | |
| 1 | (e) $862.05 | 04/01/2035 | | | |

**VARIABLE RATE FEATURE:**
[X] Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 442 SHERBOURNE, INKSTER, MI 48141

**ASSUMPTION:** Someone buying this property [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to Argent Mortgage Company, LLC

**LATE CHARGES:** If a payment is late, you will be charged 5.000% of the overdue payment .

**PREPAYMENT:** If you pay off your loan early, you
[X] may [ ] will not have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.
(e) = estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower MARLON MANIER     Date     Borrower     Date

Borrower     Date     Borrower     Date

TIL1 (Rev. 7/01)

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Argent Mortgage Company, LLC
2550 Golf Road, East Tower, 10th Floor
Rolling Meadows, IL 60008
(800)369-5117

[X] Preliminary        [ ] Final

Borrowers: MARLON MANIER

Broker License: FL-2011

Type of Loan:  FIXED RATE
Date:  March 9, 2005

Address:        442 SHERBOURNE
City/State/Zip:  INKSTER,MI 48141

Loan Number:  0075092114 - 9703

Property:    442 SHERBOURNE, INKSTER, MI 48141

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. (e) 9.990 % | FINANCE CHARGE The dollar amount the credit will cost you. $ 57,853.46 (e) | Amount Financed The amount of credit provided to you or on your behalf. $ 26,726.60 (e) | Total of Payments The amount you will have paid after you have made all payments as scheduled. $ 84,580.06 (e) |
|---|---|---|---|

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | (e) $235.00 | 05/01/2005 | | | |
| 1 | (e) $215.06 | 04/01/2035 | | | |

**VARIABLE RATE FEATURE:**
[ ] Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**  You are giving a security interest in the property located at: 442 SHERBOURNE, INKSTER, MI 48141

**ASSUMPTION:**  Someone buying this property    [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**  You may obtain property insurance from anyone you want that is acceptable to
Argent Mortgage Company, LLC

**LATE CHARGES:**  If a payment is late, you will be charged  5.000%  of the overdue payment .

**PREPAYMENT:**  If you pay off your loan early, you
[ ] may   [X] will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.
**(e) = estimate**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____        _____
Borrower MARLON MANIER                         Date

_____        _____
Borrower                                                        Date

_____        _____
Borrower                                                        Date

_____        _____
Borrower                                                        Date

TIL1 (Rev. 7/01)

03/09/2005 11:26:25 AM

# EXHIBIT N

**GOOD FAITH ESTIMATE**

Loan Number 0075052146703

der: Argent Mortgage Company, LLC

ress: 2550 Golf Road, East Tower, 10th Floor
Rolling Meadows, IL 60008

licant(s): MARLON MANIER

perty Address: 442 SHERBOURNE
INKSTER, MI 48141

Sales Price: 0.00
Base Loan Amount: 26,800.00
Total Loan Amount: 26,800.00
Type of Loan: FIXED RATE
Date Prepared: March 9, 2005
Rate: 9.990 %     Term: 360 Months
Broker: Prime Plus Mortgage
27832 Ford Rd, Garden City, MI 48135

e information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are imates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates erally correspond to the numbered lines contained in the HUD-1 or HUD-1A Settlement Statement that you will be receiving at settlement. The HUD-1 or D-1A Settlement Statement will show you the actual cost for items paid at settlement. The loan terms and fees may change based on the information hered during the underwriting and loan approval process or as a result of negotiations between you and the Lender.

." = Costs to be paid outside of closing by Lender.      "S" = Costs to be paid by Seller      * Paid Outside of Closing

| 800 ITEMS PAYABLE IN CONNECTION WITH LOAN: | | 1100 TITLE CHARGES: | |
|---|---|---|---|
| 801 Loan Origination Fee (     %) | | 1101 Settlement or Closing Fee   to | |
| 802 Loan Discount Fee** (    %)   0 - 2% Range | | 1102 Abstract or Title Search    to | |
| 803 Appraisal/Property Valuation | | 1103 Title Examination | |
| 804 Credit Report $    to $ | | 1104 Title Insurance Binder | |
| 805 Lender's Inspection Fee | | 1105 Document Preparation Fee | |
| 806 Mortgage Insurance Application Fee | | 1106 Notary Fees | |
| 807 Assumption Fee | | 1107 Attorney Fees | |
| 808 YSP to Broker      0 - 2% Range | | 1108 Title Insurance  $360.00 to $500.00 | $400.00 |
| 809 | | 1109 | |
| 810 Tax Related Service Fee | | 1110 | |
| 811 Flood Search Fee | | 1111 Settlement/Disbursement Fee | |
| 812 Lender's Processing Fee | | 1112 Escrow Fee | |
| 813 | | | |
| 814 Doc Prep Fee to | | | |
| 815 Credit Report Fee paid to Broker | | | |
| 816 Origination Fee to broker (    %) | | 1200 GOVERNMENT RECORDING AND TRANSFER CHARGES: | |
| 817 Application Fee to | | 1201 Recording Fees: | $50.00 |
| 818 Underwriting Fee to Broker | | 1202 City/County Tax/Stamps: | |
| 819 Service Provider Fee to | | 1203 | |
| 820 Processing Fee to Broker | | 1204 | |
| 821 Underwriting Fee to Lender | | 1205 | |
| 823 Prepaid Origination Interest  0 - 1.5% | | | |
| 900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | |
| 901 Interest for 10 days @ $7.34  per day | $73.40 | 1300 ADDITIONAL SETTLEMENT CHARGES: | |
| 902 Mortgage Ins Premium | | 1301 Demand | |
| 903 Hazard Ins. Premium | | 1302 Pest Inspection | |
| 904 Flood Ins. Premium | | 1303 Survey | |
| 1000 RESERVES DEPOSITED WITH LENDER: | | 1304 Misc Fees | |
| 1001 Haz Ins Prem | months @ $ | 1305 Reconveyance Fee | |
| 1002 Mortgage Ins | months @ $ | 1306 | |
| 1003 Earthquake Ins | months @ $ | 1307 Apprsl/Prop Val Fee to | |
| 1004 Cnty Prop Taxes | months @ $ | 1308 Courier Fee | |
| 1005 Annual Assmts | months @ $ | TOTAL ESTIMATED SETTLEMENT CHARGES | $523.40 |
| 1006 Flood Ins | months @ $ | TOTAL SETTLEMENT CHARGES PAID BY LENDER | $0.00 |
| 1007 Windstorm Ins | months @ $ | TOTAL ESTIMATED MONTHLY PAYMENT | |
| 1008 | | Principal & Interest | $235.00 |
| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | Real Estate Taxes | |
| Down payment | | Flood & Hazard Insurance | |
| Est. Closing Costs | $450.00 | Mortgage Insurance | |
| Est. Prepaid Items/Reserves | $73.40 | TOTAL MONTHLY PAYMENT | $235.00 |
| OTHER  POC Borrower | $0.00 | | |
| TOTAL EST. FUNDS NEEDED TO CLOSE | $523.40 | | |
| TOTAL FEES PAID BY LENDER | $0.00 | | |

THIS SECTION TO BE COMPLETED BY LENDER ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED. Use of the particular provider is required and the estimate is based on charges of the provider. If a particular provider is not mentioned, a provider will be required from a lender approved list.

| ITEM  NAME OF PROVIDER | ADDRESS OF PROVIDER | TELEPHONE | NATURE OF RELATIONSHIP |
|---|---|---|---|
| 803  Appraisal Repeated Use | | | Unaffiliated/Repeated Use |
| 804  Credit Repeated Use | | | Unaffiliated/Repeated Use |
| 810  Fidelity National Tax Service | 468 N. Rosemead Blvd., Pasadena, CA 91107 | 800-969-9724 | Unaffiliated/Used 100%/Tax |
| 811  First American Flood Data Service | 11902 Burnet Rd, Ste 200, Austin, TX 78758 | 800-447-1772 | Unaffiliated/Used 100%/Flood |
| 1101 | | | Unaffiliated/Repeated Use |
| 1108 Title Company Repeated Use | | | Unaffiliated/Repeated Use |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs", and the Consumer Handbook on ARM Mortgages, if applicable.

| Applicant  MARLON MANIER | Date | Applicant | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |

GFE (Rev. 10/04)

GOOD FAITH ESTIMATE

an Number 0075095914-9703
nder: Argent Mortgage Company, LLC

dress: 2550 Golf Road, East Tower, 10th Floor
Rolling Meadows, IL 60008

plicant(s): MARLON MANIER

operty Address: 442 SHERBOURNE
INKSTER, MI 48141

| | |
|---|---|
| Sales Price: | 0.00 |
| Base Loan Amount: | 107,200.00 |
| Total Loan Amount: | 107,200.00 |
| Type of Loan: | ADJUSTABLE RATE |
| Date Prepared: | March 9, 2005 |
| Rate: 5.800 % | Term: 360 Months |
| Broker: Prime Plus Mortgage | |
| 27832 Ford Rd, Garden City, MI 48135 | |

he information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are timates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates nerally correspond to the numbered lines contained in the HUD-1 or HUD-1A Settlement Statement that you will be receiving at settlement. The HUD-1 or JD-1A Settlement Statement will show you the actual cost for items paid at settlement. The loan terms and fees may change based on the information thered during the underwriting and loan approval process or as a result of negotiations between you and the Lender.

"L" = Costs to be paid outside of closing by Lender.     "S" = Costs to be paid by Seller     * Paid Outside of Closing

| 800 ITEMS PAYABLE IN CONNECTION WITH LOAN: | |
|---|---|
| 801 Loan Origination Fee ( %) | |
| 802 Loan Discount Fee* ( %)   0 - 2% Range | |
| 803 Appraisal/Property Valuation | $300.00 |
| 804 Credit Report $ to $ | |
| 805 Lender's Inspection Fee | |
| 806 Mortgage Insurance Application Fee | |
| 807 Assumption Fee | |
| 808 YSP to Broker       0 - 2% Range | |
| 809 | |
| 810 Tax Related Service Fee | $70.00 |
| 811 Flood Search Fee | $9.00 |
| 812 Lender's Processing Fee | |
| 813 | |
| 814 Doc Prep Fee to | |
| 815 Credit Report Fee paid to Broker | |
| 816 Origination Fee to broker ( %) | |
| 817 Application Fee to | |
| 818 Underwriting Fee to Broker | |
| 819 Service Provider Fee to | |
| 820 Processing Fee to Broker | |
| 821 Underwriting Fee to Lender | $550.00 |
| 823 Prepaid Origination Interest  0 - 1.5% | |
| 900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | |
| 901 Interest for 10 days @ $17.03  per day | $170.30 |
| 902 Mortgage Ins Premium | |
| 903 Hazard Ins. Premium | |
| 904 Flood Ins. Premium | |

| 1000 RESERVES DEPOSITED WITH LENDER: | |
|---|---|
| 1001 Haz Ins Prem | months @ $ |
| 1002 Mortgage Ins | months @ $ |
| 1003 Earthquake Ins | months @ $ |
| 1004 Cnty Prop Taxes | months @ $ |
| 1005 Annual Assmts | months @ $ |
| 1006 Flood Ins | months @ $ |
| 1007 Windstorm Ins | months @ $ |
| 1008 | |

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | |
|---|---|
| Down payment | |
| Est. Closing Costs | $1,609.00 |
| Est. Prepaid Items/Reserves | $170.30 |
| OTHER  POC Borrower | $0.00 |
| TOTAL EST. FUNDS NEEDED TO CLOSE | $1,779.30 |
| TOTAL FEES PAID BY LENDER | $0.00 |

| 1100 TITLE CHARGES: | |
|---|---|
| 1101 Settlement or Closing Fee $205.00 to  $350.00 | $230.00 |
| 1102 Abstract or Title Search  to | |
| 1103 Title Examination | |
| 1104 Title Insurance Binder | |
| 1105 Document Preparation Fee | |
| 1106 Notary Fees | |
| 1107 Attorney Fees | |
| 1108 Title Insurance $389.00 to  $600.00 | $400.00 |
| 1109 | |
| 1110 | |
| 1111 Settlement/Disbursement Fee | |
| 1112 Escrow Fee | |

| 1200 GOVERNMENT RECORDING AND TRANSFER CHARGES: | |
|---|---|
| 1201 Recording Fees: | $50.00 |
| 1202 City/County Tax/Stamps: | |
| 1203 | |
| 1204 | |
| 1205 | |

| 1300 ADDITIONAL SETTLEMENT CHARGES: | |
|---|---|
| 1301 Demand | |
| 1302 Pest Inspection | |
| 1303 Survey | |
| 1304 Misc Fees | |
| 1305 Reconveyance Fee | |
| 1306 | |
| 1307 Apprsl/Prop Val Fee to | |
| 1308 Courier Fee | |
| TOTAL ESTIMATED SETTLEMENT CHARGES | $1,779.30 |
| TOTAL SETTLEMENT CHARGES PAID BY LENDER | $0.00 |

| TOTAL ESTIMATED MONTHLY PAYMENT | |
|---|---|
| Principal & Interest | $629.00 |
| Real Estate Taxes | |
| Flood & Hazard Insurance | |
| Mortgage Insurance | |
| TOTAL MONTHLY PAYMENT | $629.00 |

THIS SECTION TO BE COMPLETED BY LENDER ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED. Use of the particular provider is required and the estimate is based on charges of the provider. If a particular provider is not mentioned, a provider will be required from a lender approved list.

| ITEM  NAME OF PROVIDER | ADDRESS OF PROVIDER | TELEPHONE | NATURE OF RELATIONSHIP |
|---|---|---|---|
| 803  Appraisal Repeated Use | , MI | ( ) - | Unaffiliated/Repeated Use |
| 804  Credit Repeated Use | | | Unaffiliated/Repeated Use |
| 810  Fidelity National Tax Service | 468 N. Rosemead Blvd., Pasadena, CA 91107 | 800-969-9724 | Unaffiliated/Used 100%/Tax |
| 811  First American Flood Data Service | 11902 Burnet Rd, Ste 200, Austin, TX 78758 | 800-447-1772 | Unaffiliated/Used 100%/Flood |
| 1101 Closing Agent Repeated Use | | | Unaffiliated/Repeated Use |
| 1108 Title Company Repeated Use | | | Unaffiliated/Repeated Use |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs", and the Consur · · Handbook on ARM Mortgages, if applicable.

| | | | |
|---|---|---|---|
| Applicant  MARLON MANIER | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

GFE (Rev. 10/04)

# EXHIBIT O

# APPRAISAL REPORT

of

Single Family Residence at

442 SHERBOURNE ST

INKSTER, MI 48141

## As Of:

3-5-2005

## Prepared For:

PRIME PLUS MORTGAGE
27832 FORD ROAD
GARDEN CITY, MI 48135

## Prepared By:

Ravi Subhedar
Elen, Inc.
4855 Heatherbrook Dr
Troy, MI 48098

Elen, Inc.
4855 Heatherbrook Dr
Troy, MI 48098
Bus  248 740 1244 ;  Fax  248 619 9914

3-7-2005

PRIME PLUS MORTGAGE
27832 FORD ROAD
GARDEN CITY, MI 48135

RE:     MARLON MANIER
        442 SHERBOURNE ST
        INKSTER, MI 48141
File No.   R-1042
Case No.

Dear   Sir or Madam

In accordance with your request, I have personally inspected and prepared an appraisal report of the real
property located at:

                    442 SHERBOURNE ST, INKSTER, MI 48141

The purpose of this appraisal is to estimate the market value of the property described in the body of this
appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation
of the property.  The methods of approach and reasoning in the valuation of the various physical and
economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of
neighborhood data, led the appraiser to the conclusion that the market value, as of  3-5-2005
is:

                    $        134,000

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this
report.

It has been a pleasure to assist you.  If I may be of further service to you in the future, please let me know.

Respectfully submitted,

Signature: _____

Ravi Subhedar
Certified General Appraiser

## INVOICE

Date: 3-7-2005

File No. R-1042
Case No.

Prepared for:

PRIME PLUS MORTGAGE
27832 FORD ROAD
GARDEN CITY, MI 48135

Property Appraised:

MARLON MANIER
442 SHERBOURNE ST
INKSTER, MI 48141

Work Performed:

| | | |
|---|---|---|
| APPRAISAL FEE | $ | 250.00 |
| RECD IN FULL | $ | -250.00 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| Total Amount Due: | $ | 0.00 |

Please make checks payable to:

Elen, Inc.
4855 Heatherbrook Dr
Troy, MI 48098

38-2661695

ELEN, INC.

File No.  R-1042

# UNIFORM RESIDENTIAL APPRAISAL REPORT

Case No.

| Property Description | | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 442 SHERBOURNE ST | | City | INKSTER | State | MI | Zip Code | 48141 |
| Legal Description | 19M696 LOT 696 CHERRY HILL MANOR NO 4 T2S L73 P29, 30 WCR | | | | County | | WAYNE |
| Assessor's Parcel No. | 44017040696000 | | | Tax Year | 2003 | R.E. Taxes $ | 2,626.07 | Special Assessments $ | N/A |
| Borrower | MARLON MANIER | Current Owner | | SAME | Occupant | [X] Owner | Tenant | Vacant |
| Property rights appraised | [X] Fee Simple | Leasehold | Project Type | PUD | Condominium (HUD/VA only) | HOA$ | N/A /Mo. |
| Neighborhood or Project Name | NA | | Map Reference | 05091 | Census Tract | 5702 |
| Sale Price $ REFIN | Date of Sale NA | | Description and $ amount of loan charges/concessions to be paid by seller | | | N/A |
| Lender/Client PRIME PLUS MORTGAGE | | Address 27832 FORD ROAD, GARDEN CITY, MI 48135 |
| Appraiser RAVI SUBHEDAR | | Address ELEN, INC., 4855 HEATHERBROOK DR., TROY, MI 48098 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Location | Urban | [X] Suburban | Rural | Predominant occupancy | Single family housing PRICE $(000) / AGE (yrs) | Present land use % | Land use change |
| Built up | [X] Over 75% | 25-75% | Under 25% | [X] Owner 95% | 75 Low 35 | One family 90 | [X] Not likely Likely |
| Growth rate | Rapid | [X] Stable | Slow | Tenant | 160 High 75 | 2-4 family - | In process |
| Property values | Increasing | [X] Stable | Declining | [X] Vacant (0-5%) | Predominant | Multi-family - | To: N/A |
| Demand/supply | Shortage | [X] In balance | Over supply | Vacant (over 5%) | 125 50 | Commercial 5 | |
| Marketing time | Under 3 mos. | [X] 3-6 mos. | Over 6 mos. | | | INSTI 5 | |

Note: race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics:  THE SUBJECT IS LOCATED NORTH OF AVONDALE ROAD, SOUTH OF CHERRY HILL ROAD, EAST OF INKSTER ROAD, AND WEST OF JOHN DALEY ROAD.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):
(SEE ADDENDUM)

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):
(SEE ADDENDUM):

| Project Information for PUDs | (If applicable -- Is the developer/builder in control of the Home Owner's Association (HOA)? | Yes [X] No |
|---|---|---|
| Approximate total number of units in the subject project | N/A | Approximate total number of units for sale in the subject project N/A |

Describe common elements and recreational facilities:

| | | | | |
|---|---|---|---|---|
| Dimensions 52X132 | | | Topography | LEVEL |
| Site area 6,864 Sqft | | Corner Lot [X] Yes No | Size | TYPICAL FOR AREA |
| Specific zoning classification and description R-1 RESIDENTIAL | | | Shape | RECTANGULAR |
| Zoning compliance: [X] Legal Legal nonconforming (Grandfathered use) | Illegal No Zoning | Drainage | APPEARS ADEQUATE |
| Highest & best use as improved: [X] Present use Other use (explain) N/A | | | View | RESIDENTIAL |
| Utilities Public Other | Off-site Improvements Type | Public Private | Landscaping | CONFORM TO NBRHOOD |
| Electricity [X] | Street Concrete | [X] | Driveway Surface CONCRETE |
| Gas [X] | Curb/gutter Concrete | [X] | Apparent easements NONE APPARENT |
| Water [X] | Sidewalk Concrete | [X] | FEMA Special Flood Hazard Area [X] Yes No |
| Sanitary sewer [X] | Street lights None | | FEMA Zone C Map Date 3-2-79 |
| Storm sewer [X] | Alley None | | FEMA Map No. 260232-0001 |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): NORMAL UTILITY AND EASEMENTS WERE NOTED.

| GENERAL DESCRIPTION | | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|
| No. of Units | ONE | Foundation | C BLK | Slab | 0% | Area Sq. Ft. | 807 | Roof AV [X] |
| No. of Stories | 1.5 Story | Exterior Walls | Brick | Crawl Space | 0% | % Finished | 40% | Ceiling AV [X] |
| Type (Det./Att.) | Detached | Roof Surfaces | ASH SHNGL | Basement | 100% | Ceiling | Open Joist | Walls AV [X] |
| Design (Style) | Bungalow | Gutters & Dwnspts. | Aluminum | Sump Pump | No | Walls | Wd pnl | Floor UNK [X] |
| Existing/Proposed | Existing | Window Type | Dbl-hung | Dampness | None noticed | Floor | VINYL | None |
| Age (Yrs.) | 52 | Storm/Screens | No | Settlement | None noticed | Outside Entry | | Unknown UNK [X] |
| Effective Age (Yrs.) | 26 | Manufactured House | NO | Infestation | None noticed | | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | 1 | | | X | | 807 |
| Level 1 | X | 1 | 1 | 1 | | | | 3 | 1.00 | | | 846 |
| Level 2 | | | | | | | | 1 | | | | 345 |

Finished area above grade contains:  7 Rooms;  4 Bedroom(s);  1.00 Bath(s);  1,191 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | CPT/VNYL/AVG | Type | FHA | Refrigerator | | None | | Fireplace(s) # NA | | None | |
| Walls | DRYWLL/AVG | Fuel | GAS | Range/Oven | X | Stairs | | Patio CONCR | X | Garage 1 | # of cars |
| Trim/Finish | WD/AVG | Condition | AV | Dishwasher | | Drop Stair | | Deck NA | | Attached - |
| Bath Floor | CER/AVG | COOLING | | Disposal | | Scuttle | X | Porch CONCRETE | X | Detached X |
| Bath Wainscot | CER/AVG | Central | No | Fan/Hood | X | Floor | | Fence C-LINK | X | Built-In - |
| Doors | WD/AVG | Other | NA | Microwave | | Heated | | Pool NA | | Carport - |
| | | Condition | NA | Washer/Dryer | | Finished | | | | Driveway 4 |

Additional features (special energy efficient items, etc.):  (SEE ADDENDUM)

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.:  (SEE ADDENDUM)

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property.:  (SEE ADDENDUM)

ELEN, INC.

File No. R-1042
Case No.

Valuation Section

# UNIFORM RESIDENTIAL APPRAISAL REPORT

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED SITE VALUE | | | | = $ | 30,000 |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | | | | |
| Dwelling | 1,191 Sq. Ft. @ $ | 95.00 | | = $ | 113,145 |
| Bsmt. | 807 Sq. Ft. @ $ | 20.00 | | = | 16,140 |
| Porch, Patio | | | | = | 3,000 |
| Garage/Carport | 220 Sq. Ft. @ $ | 15.00 | | = | 3,300 |
| Total Estimated Cost New | | | | = $ | 135,585 |
| Less Depreciation | Physical 28 | Functional | External | | |
| | 37,964 | 0 | 0 | = $ | 37,964 |
| Depreciated Value of Improvements | | | | = $ | 97,621 |
| "As is" Value of Site Improvements | | | | = $ | 7,000 |
| INDICATED VALUE BY COST APPROACH | | | | = $ | 134,621 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property):
(1) MARSHAL & SWIFT INDEX IS USED AS A GUIDE ONLY
(2) ONLY HEATED SPACE ABOVE GRADE IS USED FOR CALCULATING LIVING AREA

Est. Remaining Econ. Life: 34 yrs

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 442 SHERBOURNE ST INKSTER, MI 48141 | 670 SHERBOURNE INKSTER | | 630 ARLINGTON INKSTER | | 269 BRENTWOOD INKSTER | |
| Proximity to Subject | | 0.16 miles | | 0.29miles | | 0.23 miles | |
| Sales Price | $ REFIN | | $ 137,694 | | $ 130,000 | | $ 129,900 |
| Price/Gross Liv. Area | $ 0.00 ☒ | $ 119.73 ☒ | | $ 117.01 ☒ | | $ 100.46 ☒ | |
| Data and/or Verification Source | CITYHALL OWNER/INSP. | REALCOMP MLS # 24123036 | | REALCOMP MLS # 24151763 | | REALCOMP MLS # 24062061 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sales or Financing Concessions | | FHA UNKNOWN | | CONV UNKNOWN | | CONV UNKNOWN | |
| Date of Sale/Time | | 11-2004 | | 2-2005 | | 8-2004 | |
| Location | SUBURBAN/AV | EQ/EQ | | EQ/EQ | | EQ/EQ | |
| Leasehold/ Fee Simple | Fee Simple | EQ | | EQ | | EQ | |
| Site | 52X132 | 40X135 | | 41X135 | | 45X135 | |
| View | RES\AV | EQ/EQ | | EQ/EQ | | EQ/EQ | |
| Design and Appeal | Bungalow/AV | EQ/EQ | | EQ/EQ | | EQ/EQ | |
| Quality of Construction | BRICK/AV | EQ/EQ | | EQ/EQ | | EQ/EQ | |
| Age | 52a/26e | 55 | | 54 | | 55 | |
| Condition | AVERAGE | EQ | | EQ | | EQ | |
| Above Grade Room Count (Total / Bdrms / Baths) | 7 / 4 / 1.00 | 6 / 3 / 1.00 | | 6 / 3 / 1.00 | | 6 / 3 / 1.00 | |
| Gross Living Area | 1,191 Sq. Ft. | 1,150 Sq. Ft. | | 1,111 Sq. Ft. | | 1,293 Sq. Ft. | |
| Basement & Finished Rooms Below Grade | BASEMENT PART FIN | BASEMENT Equal | | BASEMENT Equal | | BASEMENT Equal | |
| Functional Utility | 4 BDM/AVG | 3 BDM/AVG | +2,000 | 3 BDM/AVG | +2,000 | 3 BDM/AVG | +2,000 |
| Heating/Cooling | FHA/NA | EQ/EQ | | EQ/EQ | | EQ/EQ | |
| Energy Efficient Items | STANDARD | Equal | | Equal | | Equal | |
| Garage/Carport | 1 Car | 2 Car | -1,000 | 2 Car | -1,000 | 1 Car | |
| Porch, Patio, Deck, Fireplace(s), etc. | Porch, Patio NA | EQ, EQ Equal | | EQ, EQ Equal | | EQ, EQ Equal | |
| Fence, Pool, etc. | C-LINK | Equal | | Equal | | Equal | |
| Other Item | REMODELED | Equal | | N/A | +2,000 | N/A | +2,000 |
| Net Adj. (total) | | ☒ + ☐ - | $ 1,000 | ☒ + ☐ - | $ 3,000 | ☒ + ☐ - | $ 4,000 |
| Adjusted Sales Price of Comparable | | Net=1% Gross=2% | $ 138,694 | Net=2% Gross=4% | $ 133,000 | Net=3% Gross=3% | $ 133,900 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.):
THE SUBJECT WAS REMODELED RECENTLY

(SEE ADDENDUM)

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | SEE ADDENDUM | NONE PER MLS | NONE PER MLS | NONE PER MLS |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal.
(SEE ADDENDUM)

INDICATED VALUE BY SALES COMPARISON APPROACH $ 134,000
INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ /Mo.x Gross Rent Multiplier =$ 0

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans and specifications.

Conditions of Appraisal: (SEE ADDENDUM)

Final Reconciliation: (SEE ADDENDUM)

The purpose of this appraisal is to estimate the market value of the real property that is subject to this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 1993).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 3-5-2005 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 134,000

| APPRAISER: | | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | |
|---|---|---|---|
| Signature | [signature] | Signature | ☐ Did ☐ Did Not Inspect Property |
| Name | Ravi Subhedar | Name | |
| Date Report Signed | 3-7-2005 | Date Report Signed | |
| State Certification # | 1201006080 State MI | State Certification # | State MI |
| Or State License # | State | Or State License # | State MI |

ELEN, INC.
## COMMENT ADDENDUM

File No.   R-1042
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower   MARLON MANIER | | | | | | |
| Property Address   442 SHERBOURNE ST | | | | | | |
| City  INKSTER | County | WAYNE | State | MI | Zip Code | 48141 |
| Lender/Client   PRIME PLUS MORTGAGE | | Address  27832 FORD ROAD, GARDEN CITY, MI 48135 | | | | |

_____NEIGHBORHOOD_____

THE SUBJECT IS LOCATED NORTH OF AVONDALE, SOUTH OF CHERRY HILL ROAD, EAST OF INKSTER ROAD, AND WEST OF JOHN DALEY ROAD.

NEIGHBORHOOD HOMES ARE MOSTLY RANCH AND BUNGALOW STYLE AND SIMILAR IN AGE. THE SUBJECT NEIGHBORHOOD HAS EASY ACCESS TO FREEWAYS, WHICH PROVIDE CONVENIENT ACCESS TO OTHER SUBURBS AND EMPLOYMENT AREAS. SHOPPING AND RECREATIONAL FACILITIES ARE IN CLOSE PROXIMITY.

_____SITE_____

SUBJECT LOT IS RECTANGULAR IN SHAPE. THE TOPOGRAPHY IS LEVEL. LANDSCAPING CONFORMS TO THE SUBJECT NEIGHBORHOOD AND SURROUNDING PROPERTIES.

NO INVESTIGATION WAS MADE OF SETBACKS AND OTHER POSSIBLE VARIANCES. NO ADVERSE SITE INFLUENCES WERE NOTED AT THE TIME OF INSPECTION. NORMAL UTILITY EASEMENTS, WITH NO OTHER OBSERVABLE ENCROACHMENT, WERE NOTED.

_____ADDITIONAL  FEATURES_____

THE SUBJECT IS A BUNGLOW STYLE HOME WITH PART-FINISHED BASEMENT.  THE 1ST FLOOR HAS A FOYER, LIVING ROOM, KITCHEN, DINING ROOM, 3 BEDROOMS, AND ONE BATHROOM. THE SECOND FLOOR HAS A LARGE MASTER BEDROOM. THERE IS A DETACHED 1-CAR GARAGE.

THE SUBJECT WAS REMODELED RECENTLY. THE WORK CARRIED OUT INCLUDES - ALL NEW WINDOWS, NEW WINDOW TREATMENTS, NEW CARPET AND VINYL FLOORING AND FRESH PAINT THROUGHOUT.

_____DEPRECIATION_____

THE SUBJECT HOME APPEARS TO BE STRUCTURALLY SOUND AND WHEN ADEQUATELY MAINTAINED, ITS REMAINING ECONOMIC LIFE COULD BE OVER 34 YEARS.

_____COMMENTS ON THE MARKET DATA ANALYSIS_____

COMPARABLE WERE SELECTED ON THE BASIS OF:
(1) PROXIMITY  (2) SIZE  (3) STYLE  (4) AGE  (5) APPEAL

A THOROUGH SEARCH FOR COMPARABLES WAS MADE. RECENT SALES IN THE NEIGHBORHOOD ARE RARE. THE SCOPE OF SEARCH THEREFORE HAD TO BE EXTENDED.

THE COMPARABLES UTILIZED IN THIS REPORT ARE LOCATED WITHIN THE SAME MARKETING AREA AS THE SUBJECT AND ARE CONSIDERED COMPARABLE IN GENERAL FEATURES SUCH AS LOCATION, UTILITY, QUALITY OF CONSTRUCTION, GROSS LIVING AREA AND PROPERTY APPEAL. THE COMPARABLES USED ARE CONSIDERED TO BE THE BEST AVAILABLE AND MOST REPRESENTATIVE OF THE SUBJECT'S SURROUNDING MARKET. ALL NECESSARY ADJUSTMENTS WERE MADE IN THE GRID SECTION OF THIS REPORT.

ALL COMPARABLES ARE WITHIN THE GROSS AND NET ADJUSTMENT GUIDELINE AND SOLD DURING THE PAST 12 MONTHS. THE SUBJECT WAS INSPECTED INTERNALLY & EXTERNALLY. THE COMPARABLE PROPERTIES WERE INSPECTED EXTERNALLY. COMPARABLE PHOTOS ARE EITHER TAKEN AT THE TIME OF INSPECTION OR DERIVED FROM MLS OR APPRAISER DATABASE.

ALL COMPARABLES HAVE SIMILAR LIVING AREA, AGE, FEATURES AND ARE WITHIN CLOSE PROXIMITY TO THE SUBJECT. NO OTHER SALES WITH SIMILAR FEATURES COULD BE CONSIDERED AT THE TIME OF APPRAISAL.  THEREFORE THEY ARE CONSIDERED AS BEST AVAILABLE INDICATORS TO THE VALUE.

TO INDICATE THE SUBJECT'S PROBABLE MARKET VALUE, NECESSARY AND APPROPRIATE ADJUSTMENTS AS CONTRIBUTORY VALUES WERE MADE TO THE COMPARABLE SALES. SITE ADJUSTMENTS REFLECT BOTH SIZE AND LOCATION FEATURES. ALL OTHER ADJUSTMENTS ARE SELF-EXPLANATORY.

ELEN, INC.
## COMMENT ADDENDUM

File No.   R-1042
Case No.

Borrower  MARLON MANIER
Property Address   442 SHERBOURNE ST
City  INKSTER          County          WAYNE          State          MI          Zip Code          48141
Lender/Client   PRIME PLUS MORTGAGE          Address  27832 FORD ROAD, GARDEN CITY, MI 48135

THE APPRAISER IS UNAWARE OF ANY SPECIAL FINANCING REGARDING COMPARABLE SALES. ALL
COMPARABLE SALES HAVE BEEN INFORMED AS CLOSED SALES.  COMPARABLE SALE INFORMATION IS
BASED ON MLS AND / OR LOCAL GOVERNMENT RECORDS. BUILT IN KITCHEN APPLIANCES ARE TAKEN INTO
CONSIDERATION IN THIS VALUE ESTIMATE. THE COMPARABLES, AFTER ADJUSTMENT, INDICATED A RANGE
IN, WHICH THE ESTIMATED VALUE IS LOCATED.

_____ GENERAL MARKET ONDITIONS_____

THE GENERAL MARKET CONDITIONS ARE GOOD AND THE SELLER CONCESSIONS ARE THE INDIVIDUAL
BUYERS AND SELLERS RESPONSIBILITY.  GENERALLY THE MARKET ADHERES TO CONVENTIONAL
FINANCING AND IS READILY AVAILABLE. HOWEVER SOME CASH SALES WERE NOTED. PROPERTY VALUES
ARE RELATIVELY STABLE AND ARE EXPECTED TO TO REMAIN SO FOR THE IMMEDIATE FUTURE.  TYPICAL
MARKETING TIME FOR SINGLE FAMILY HOMES IN THE SUBJECT NEIGHBORHOOD IS SIX MONTHS OR LESS
DEPENDING ON SEASONAL TRENDS.

_____3-YEAR HISTORY_____

CITY HALL AND MLS RECORDS INDICATED NO PRIOR SALES FOR THE SUBJECT DURING THE LAST 3 YEARS

_____FINAL RECONCILIATION_____

THE MARKET DATA AND COST APPROACH WERE EMPLOYED IN THIS REPORT, HOWEVER THE MARKET
APPROACH WAS GIVEN THE MOST CONSIDERATION BECAUSE IT REFLECTS THE ACTIONS OF THE TYPICAL
BUYER AND SELLER IN THE REAL ESTATE MARKET.  THE INCOME APPROACH WAS CONSIDERED, BUT NOT
UTILIZED, DUE TO THE LIMITED COHESIVE RENTAL MARKET IN THE AREA.

ALL THE PHYSICAL CHARACTERISTICS AND INFORMATION REGARDING THE SUBJECT PROPERTY IS
DERIVED OUT OF CITY HALL AND PUBLIC RECORDS SUCH  AS LIVING AREA, YEAR BUILT, LOT DIMENSIONS
E.T.C.

I HAVE NO BIAS WITH RESPECT TO THE PROPERTY THAT IS THE SUBJECT OF THIS REPORT OR THE PARTIES
INVOLVED WITH THIS ASSIGNMENT.

MY COMPENSATION FOR COMPLETING THIS ASSIGNMENT IS NOT CONTINGENT UPON THE DEVELOPMENT OR
REPORTING OF A PRE-DETERMINED VALUE OR DIRECTION IN VALUE THAT FAVORS THE CAUSE OF THE
CLIENT, THE AMOUNT OF THE VALUE OPINION, THE ATTAINMENT OF A STIPULATED RESULT OR THE
OCCURRENCE OF A SUBSEQUENT EVENT DIRECTLY RELATED TO THE INTENDED USE OF THIS APPRAISAL.

REAL ESTATE APPRAISERS IN MICHIGAN ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE
BOARD OF REAL ESTATE APPRAISERS, DEPARTMENT OF INDUSTRY AND CONSUMER SERVICES, P.O.BOX
30018 LANSING, MICHIGAN 48909.  THE DEPARTMENT ISSUES THE FOLLOWING LICENSES: STATE CERTIFIED,
STATE LICENSED, AND LIMITED APPRAISER. LIMITED APPRAISERS MAY ONLY MATERIALLY ASSIST IN AN
APPRAISAL ASSIGNMENT UNDER THE DIRECT SUPERVISION OF EITHER A STATE CERTIFIED OR STATE
LICENSED APPRAISER.

THIS REPORT MAY CONTAIN DIGITIZED SIGNATURE. WE HEREBY CERTIFY THAT THE APPRAISER HAS SOLE
PERSONALIZED CONTROL OF AFFIXING SUCH DIGITIZED SIGNATURES.THIS REPORT MAY CONTAIN DIGITAL
PHOTOGRAPHS AND THA SAME HAVE NOT BEEN RETOUCHED, ALTERED OR MODIFIED IN ANY WAY.

IF YOU HAVE ANY QUESTIONS OR REQUIRE ADDITIONAL INFORMATION, PLEASE FEEL FREE TO
CONTACT OUR OFFICE.

ELEN, INC.
**SKETCH ADDENDUM**

File No.  R-1042
Case No.

| Borrower | MARLON MANIER | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 442 SHERBOURNE ST | | | | | | |
| City  INKSTER | | County | WAYNE | State | MI | Zip Code | 48141 |
| Lender/Client | PRIME PLUS MORTGAGE | | Address  27832 FORD ROAD, GARDEN CITY, MI 48135 | | | | |



ELEN, INC.
**ADDENDUM**

File No.   R-1042
Case No.

Borrower   MARLON MANIER
Property Address   442 SHERBOURNE ST
City   INKSTER           County           WAYNE        State        MI        Zip Code        48141
Lender/Client   PRIME PLUS MORTGAGE           Address   27832 FORD ROAD, GARDEN CITY, MI 48135

_____CONDITIONS_____

1. This report conforms to the requirement of federally related mortgage and loan purposes.
2. The property rights are fee simple title ownership, assuming no indebtedness against the property. The purpose of this report is to estimate the market value of the subject property as of the date of this report. Market Value as used in this report is defined as follows:
"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and the seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus"
4. This is a complete summary appraisal report


SCOPE OF THE APPRAISSAL:
The purpose of this appraisal is to ascertain the market value as defined of the subject property at a specified date to assist the named lender in evaluation the subject property for lending purposes. The lender/client is identified on page one of this form. The appraisal may be distributed to successors or assigns for the same intended use as the client. The appraisal may not be utilized for any other purpose or distributed in part or in the whole for any other purpose by the client or the borrower without the specific written consent of the appraiser. Neither all nor any part of the contents of this report shall be conveyed to any person or entity through advertising, solicitation materials, public relations, news, sales, or other media without the specific written consent and approval of the appraiser. The identity of the appraiser or the firm with which the appraiser is connected, or any reference to any affiliation with any professional appraisal organization or designation may not be conveyed. If this report is placed in the hands of anyone but the client and successors and assigns, the client shall make such party or parties aware of all the assumptions and limiting conditions of the assignment and the use of the report.

This report is subject to the requirements of Title XI of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) and was performed in accordance to those requirements. This report is also intended to meet the requirements of Uniform Standards of Professional Appraisal Practice (USPAP).

EXTENT OF THE APPRAISAL PROCESS:
This appraisal is based on the information gathered by the appraiser from public records, inspection of the subject property, the subject area location and other identified sources and the selection of comparable sales within the subject market area. The original source of the comparable data is shown in the data source section and the market grid along with the source of confirmation. The sources and data are considered reliable. In the investigation, conflicting information may be provided; the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

The subject property was inspected and photographed on the date indicated. The comparable were also inspected form the road.

If the site value is addressed separately, this value is based on prior and /or current analysis of the site sales and /or extraction of site values or from sales of improved properties.

I have not been informed, nor have I any knowledge of the existence of any adverse health or environmental influences, which if known could have a negative impact on the market value of the subject property. The valuation contained herein is not valid if any hazardous conditions are found in the subject property and are not stated in the appraisal report but not limited to: urea-formaldehyde foam insulation, radon gas, asbestos products, lead based products and toxic waste contaminates. The appraiser is unaware of any detrimental subsoil conditions.

The following steps were followed in arriving at the final estimate of value included in the appraisal report of the subject property:
1.     An investigation was made to determine market trends, influences and other significant factors pertinent to the subject property.
2.     A physical inspection of the property was performed. Although due diligence was exercised while at the subject property, the appraiser is NOT an expert in such matters as pest control, structural engineering, hazardous waste, or construction etc. and no warranty is given or implied as to these or other elements outside of analysis of market data. Inspection by various professionals within these fields may be recommended with the final estimate of market value subject to their findings.
3.     A more detailed review of the collected data was then performed with the most relevant factors extracted and considered. Sales were examined and confirmed closed from material provided by one or more service(s) that obtained information from public records. Market factors were weighted and their influence on the subject property was determined. A highest and best use analysis was done on the subject property.

ELEN, INC.
ADDENDUM (continued)

File No.  R-1042
Case No.

Borrower  MARLON MANIER
Property Address  442 SHERBOURNE ST
City  INKSTER          County          WAYNE          State          MI          Zip Code          48141
Lender/Client  PRIME PLUS MORTGAGE          Address  27832 FORD ROAD, GARDEN CITY, MI 48135

4.    The appraisal report was then completed in accordance with standards dictated by THE APPRAISLA
FOUNDATION in the UNIFORM STANDARD OF PROFESSIONAL APPRAISLA PRACTICES (USPAP). The
report included sufficent data and information needed to lead a reader to a similar conclusion of market
value.
5.    The appraisal report was then delivered to the client, which constituted ti completion of the
assignment.

THE REPORT COMPLIES WITH THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL
PRACTICES (USPAP), as adopted by the Appraisal Standards Board of The Appraisal Foundation as of
August 9, 1990.

COMPETENCY OF THE APPRAISER: Unless otherwise noted in writing, the appraiser has done similar
assignments and has the knowledge and experience to complete this assignment competently.

SALES HISTORY: The marketing history of the subject was researched for at least three years. Unless
otherwise noted in the appraisal report, the subject property has not been listed, sold or transferred in the
past 36 months.

RENTS AND VACANCIES: Unless otherwise noted in the appraisal report, the subject property is currently
owner occupied.

TREND ANALYSIS: Real estate prices have been changing due to current econoomic conditions and local
trends. It is reasonable to assume that this same trend would apply to the subject. Still the average
marketing time typically varies between 30 & 180 days for residences within the county provided the
property is competively priced and property marketed.

DEDUCTIONS AND DISCOUNTS: In keeping with the USPAP, any financing concessions that influences
the selling price of a comparable sale were addressed and accounted for to result in a market value of the
subject property that is free of discounts, deductions or other seller concessions.

PROHIBITED INFLUENCES: The appraisal assignment was not conditioned upon the appraisal producing
a specific valuation or approval of a loan. Employment of the appraiser was not conditioned upon the
appraisal production a specific value. Neither employment nor compensation is based upon approval of
any related loan application.

SELF CONTAINMENT: This appraisal report is intended to be a self contained document containing all
information necessary to enable a reader to understand the appraiser's opinion. Any third party studies
referred to, such as pest control, structural, soils or hazardous material have been verified by the appraiser
as to their existence, to the extent the assumptions and conclusions are used. If not included with the
report, they are maintained with our file and available upon request by the client.

PERSONAL PROPERTY: Any personal property involved in the transaction have been excluded from the
valuation of the real property. Should a transaction that includes personal property of sufficient value to
affect the market value of the real property be evident, a separated assessment of the personal property
fixtures or intangible items will be included with the report as a separate valuation.

THREE APPROCHES TO VALUE: The appraiser has made a reasonable effort to apply the three
recognized approaches to value. Most single family residences are purchased for owner occupancy and, as
such, the Income Approach does not generally reflect the highest and best use of the property and is not
generally relevant indicator of market value. The use of the Income Approach to value will only be used:

1.    At the request of the client for non-owner occupied units.
2.    When sufficient market evidence exists in a neighborhood to indicate that rental properties or investor
purchases are typical, measurable and their analysis adds to the relevancy and reliability of the appraisal
process.

ELEN, INC.
## LOCATION MAP ADDENDUM

File No.   R-1042
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | MARLON MANIER | | | | | |
| Property Address | 442 SHERBOURNE ST | | | | | |
| City  INKSTER | | County | WAYNE | State | MI | Zip Code  48141 |
| Lender/Client | PRIME PLUS MORTGAGE | | Address  27832 FORD ROAD, GARDEN CITY, MI 48135 | | | |



ELEN, INC.
## SUBJECT PHOTO ADDENDUM

File No.   R-1042
Case No.

| Borrower | MARLON MANIER | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 442 SHERBOURNE ST | | | | | | |
| City  INKSTER | | County | WAYNE | State | MI | Zip Code | 48141 |
| Lender/Client | PRIME PLUS MORTGAGE | | Address | 27832 FORD ROAD, GARDEN CITY, MI 48135 | | | |



**FRONT OF
SUBJECT PROPERTY**
442 SHERBOURNE ST
INKSTER, MI 48141



**REAR OF
SUBJECT PROPERTY**



**STREET SCENE**

ELEN, INC.
## SUBJECT PHOTO ADDENDUM

File No.   R-1042
Case No.

| Borrower | MARLON MANIER | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 442 SHERBOURNE ST | | | | | | |
| City INKSTER | | County | WAYNE | State | MI | Zip Code | 48141 |
| Lender/Client | PRIME PLUS MORTGAGE . | | Address | 27832 FORD ROAD, GARDEN CITY, MI 48135 | | | |



LIVING ROOM



KITCHEN



BATH

ELEN, INC.
COMPARABLES 1-2-3

File No.   R-1042
Case No.

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | MARLON MANIER | | | | | |
| Property Address | 442 SHERBOURNE ST | | | | | |
| City INKSTER | County | | WAYNE | State | MI | Zip Code 48141 |
| Lender/Client | PRIME PLUS MORTGAGE | | Address 27832 FORD ROAD, GARDEN CITY, MI 48135 | | | |



COMPARABLE SALE #    1
670 SHERBOURNE
INKSTER



COMPARABLE SALE #    2
630 ARLINGTON
INKSTER



COMPARABLE SALE #    3
269 BRENTWOOD
INKSTER

ELEN, INC.

File No.   R-1042
Case No.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2.   The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3.   The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5.   The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6.   The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazard wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7.   The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8.   The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.