# EXHIBIT C

## CLOSING INSTRUCTIONS
## ITEMIZATION OF SETTLEMENT CHARGES

| Title Company/Attorney | Title Officer/Attorney | Phone Number | Order Number |
|---|---|---|---|
| TRISTAR TITLE, LLC | KELLY SLEETER | (630)954-4000 | TTC04- 04565 |

| Borrower(s) | Property Address |
|---|---|
| Everett K Rosemon | 10649 S Peoria St |
| | Chicago IL 60643 |
| | Loan Number: 0087266128 |

FROM: Ameriquest Mortgage Company - Willowbrook, IL   Phone No. (630)455-1049   Fax (630)455-1294

Branch Name          Branch Phone No.          Branch Fax Number

BELOW IS A LIST OF ALL SETTLEMENT CHARGES AND DISBURSEMENTS APPLICABLE TO THIS LOAN. YOU MUST USE THESE FIGURES TO PREPARE YOUR SETTLEMENT STATEMENT. YOU CANNOT DEVIATE FROM THESE FIGURES WITHOUT PRIOR WRITTEN AUTHORIZATION FROM VICE PRESIDENT OF LOAN OPERATIONS AND/OR ITS DIRECTORS.

| LINE NO. ON SETTLEMENT STATEMENT | PAYEE | AMOUNT |
|---|---|---|
| 801. Loan origination fee    % to | | |
| 802. Loan discount  3.123 % to  Ameriquest Mortgage Company | | $4,565.83 |
| 803. Apprsl/Prop Val to Reimbursed to Lender | | $360.00 |
| 808. Yield Spread Premium to | | |
| 809. | | |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | | $70.00 |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | | $16.00 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | | $625.00 |
| 813.Admin to Ameriquest Mortgage Company | | $239.00 |
| 814. Doc. Prep. Fee to | | |
| 815. Credit Report Fee to | | |
| 816. Origination Fee    % to | | |
| 817. Application Fee to  Ameriquest Mortgage Company | | $360.00 |
| 818. Underwriting Fee to | | |
| 819. Service Provider Fee to | | |
| 820. Processing Fee  to | | |
| 821. Underwriting Fee to | | |
| 822. Appraisal Fee to | | |
| 901. Interest from 08/05/2004  to 09/01/2004  @  $31.04  per day | | $838.08 |
| 902. Mortgage Insurance premium for          months to | | |
| 903. Hazard Ins prem to | | $0.00 |
| 904. Flood Ins prem  to | | |
| 1001. Hazard Insurance    months @ $    per month | | |
| 1002. Mortgage Insurance    months @ $    per month | | |
| 1003. Earthquake Ins    months @ $    per month | | |
| 1004. County prop. taxes  6  months @ $  116.94  per month | | $701.64 |
| 1005. Annual assess    months @ $    per month | | |
| 1006. Flood    months @ $    per month | | |
| 1007. Windstorm Ins    months @ $    per month | | |
| 1008. | | |
| 1101. Settlement or closing fee to  TRISTAR TITLE | | $200.00 |
| 1102. Abstract or title search to | | |
| 1103. Title examination to | | |
| 1105. Document preparation to | | |
| 1105. Notary fees to | | |
| 1107. Attorney's fees to | | |
| 1108. Title Insurance to  TRISTAR TITLE, LLC | | $1,065.00 |
| 1109. Lender's coverage | | |
| 1110. Owner's coverage           $ | $1,065.00 | |
| 1111. Settlement/Disbursement fee to | | |
| 1112. Escrow Fee to | | |
| 1201. Recording fees | | $68.00 |
| 1202. City/county tax/stamps | | |
| 1203. State tax/ stamps | | |
| 1204. State specific fee | | |
| 1301. Demand to | | |
| 1302. Pest Inspection to | | |
| 1303. Survey Fee | | |
| 1304. Staff Appraiser Fee | | |
| 1305. Reconveyance Fee to | | |
| 1306. | | |
| 1307. Property Val Fee to | | |
| 1308. Courier Fee | | |

Any amounts appearing on these lines are prepaid finance charges and cannot be increased or added once loan documents have been prepared unless new loan documents are generated.

| | | |
|---|---|---|
| Borrower  Everett K Rosemon          Date | Borrower          Date | |
| Borrower          Date | Borrower          Date | |
| Title Company Representative Signature          Date | | |

# EXHIBIT D

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary      ☒ Final

LENDER: Ameriquest Mortgage Company
720 Plainfield Rd., # 100
Willowbrook, IL 60527
(630)455-1049

Broker License:

Borrowers: Everett K Rosemon

Type of Loan: ADJUSTABLE RATE
Date: July 29, 2004

Address:      10649 S Peoria St
City/State/Zip: Chicago, IL 60643

Loan Number: 0087266128 - 7305

Property:      10649 S Peoria St, Chicago, IL 60643

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 8.297 % | $ 241,865.80 | $ 139,285.09 | $ 381,150.89 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $1,047.40 | 10/01/2004 | | | |
| 335 | $1,059.59 | 10/01/2006 | | | |
| 1 | $1,050.64 | 09/01/2034 | | | |

VARIABLE RATE FEATURE:
☒ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:      You are giving a security interest in the property located at: 10649 S Peoria St, Chicago, IL 60643

ASSUMPTION:   Someone buying this property ☒ cannot assume the remaining balance due under original terms
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:      You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

LATE CHARGES:   If a payment is late, you will be charged   5.000%   of the overdue payment .

PREPAYMENT:   If you pay off your loan early, you
☐ may   ☒ will not   have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure

| Borrower Everett K Rosemon | Date | Borrower Graundia Rosemon | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

TIL1 (Rev. 7/01)


0000087266128030573.0101

**BORROWER COPY**

07/29/2004 5:52:47 PM

# EXHIBIT E

## NOTICE OF RIGHT TO CANCEL

LENDER:  Ameriquest Mortgage Company

DATE:  July 29, 2004
LOAN NO.:  0087266128 - 7305
TYPE:  ADJUSTABLE RATE

BORROWER(S): Everett K Rosemon

ADDRESS:          10649 S Peoria St
CITY/STATE/ZIP:  Chicago,IL 60643

PROPERTY:  10649 S Peoria St
           Chicago, IL  60643

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

7/29/04

     or
2.  The date you received your Truth in Lending disclosures;
     or
3   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1600 S Douglass Rd
Anaheim, CA 92806

ATTN:  FUNDING
PHONE:  (714)634-3494
FAX:    (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

8/2/04

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____
SIGNATURE

_____
DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers

_____          _____
BORROWER/OWNER Everett K Rosemon      Date

_____          _____
BORROWER/OWNER Graundla  Rosemon      Date

_____          _____
BORROWER/OWNER                        Date

_____          _____
BORROWER/OWNER                        Date

**BORROWER COPY**

1064-N(NJ) (Rev 01/04)

00000087266128040050101

07/29/2004 5:52:47 PM

## NOTICE OF RIGHT TO CANCEL

.NDER:  Ameriquest Mortgage Company

DATE:  July 29, 2004
LOAN NO :  0087266128 - 7305
TYPE:  ADJUSTABLE RATE

BORROWER(S): Everett K Rosemon

ADDRESS:        10649 S Peoria St
CITY/STATE/ZIP:   Chicago.IL 60643

PROPERTY:   10649 S Peoria St
            Chicago, IL  60643

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction. without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
|---|
| 7/29/04 |

or

2.  The date you received your Truth in Lending disclosures;

or

3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your ᶜer, you may keep it without further obligation

### HOW TO CANCEL
If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1600 S Douglass Rd
Anaheim, CA 92806

ATTN:  FUNDING
PHONE: (714)634-3494
FAX:    (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
|---|
| 8/2/04 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____
SIGNATURE

_____
DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel The exercise of this right by one borrower shall be effective to all borrowers

_____
RROWER/OWNER Everett K Rosemon          Date

_____
BORROWER/OWNER Graundia Rosemon          Date

_____
BORROWER/OWNER          Date

_____
BORROWER/OWNER          Date

1004-NRC (Rev 01/04)

00000057256128040000050101

**BORROWER COPY**

07/29/2004 5:52:47 PM

# EXHIBIT F

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0087266128 - 7305        Borrower(s): Everett K Rosemon

Date: July 29, 2004

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you**. No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

        Ameriquest Mortgage Company
        1600 S Douglass Rd Anaheim, CA 92806
        ATTN: Funding Department
        Phone: (714)541-9960
        Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

---

Borrower/Owner  Everett K Rosemon        Date

---

Borrower/Owner  Graundia Rosemon        Date

---

Borrower/Owner        Date

---

Borrower/Owner        Date

## REQUEST TO CANCEL

I/We want to cancel loan # _____.

Borrower/Owner Signature        Date



0000008726612804042201 01

850 (10/00)

07/29/2004 5:52:47 PM

## BORROWER COPY

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0087266128 - 7305          Borrower(s): Everett K Rosemon

Date:  July 29, 2004

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below

_____          _____

Borrower/Owner  Everett K Rosemon          Date

_____          _____

Borrower/Owner  Graundia  Rosemon          Date

_____          _____

Borrower/Owner          Date

_____          _____

Borrower/Owner          Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____          _____

Borrower/Owner Signature          Date

---



0D0000087266128040422D101

850 (10/00)

07/29/2004 5:52:47 PM

BORROWER COPY

# EXHIBIT G

## ITEMS TO BE PAID OFF FROM LOAN PROCEEDS

Borrower : Everett K Rosemon

Loan Number :   0087266128 ~ 7305

| Payee | | Amount |
|---|---|---|
| HFC - USA | (W) | $6,718.00 |
| CAPITAL ONE AUTO FIN | (W) | $5,717.00 |
| WASHINGTON MUTUAL FA | (W) | $112,448.04 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Total Wire:   $138,423.45

Loan Amount:          146,200.00

Cash/Check from
Borrower:

Borrower Proceeds:     $12,207.41

| Borrower  Everett K Rosemon | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Title Company Representative Signature | Date | | |

# EXHIBIT H

**Ameriquest Mortgage Company**

Summary of Debts and Disbursements
(Refinance Loans Only)

Borrower: Everett K Rosemon

Date: July 29, 2004
Branch:
Willowbrook, IL

Loan Number: 0087266128 - 7305

| | Fees | |
|---|---|---|
| Loan Discount Fee | 3.123 | $4,565.83 |
| Lender Retained Fees | | $1,311.00 |
| Prepaid Interest | | $838.08 |
| Fees Paid to Others | | $2,394.64 |

Short to Close

Total Payoffs          $124,883.04

Cash to Borrower      $12,207.41

Total Points & Fees          $9,109.55

| CREDITORS DEBTS | BALANCE | PAYOFFS | PAYMENTS |
|---|---|---|---|
| CREDIT UNION ONE A D | $156.00 | | $20.00 |
| HFC - USA | $6,718.00 | $6,718.00 | |
| PEOPLES ENGY | $38.00 | | $10.00 |
| HHLD BANK | $878.00 | | $26.00 |
| CAPITAL ONE AUTO FIN | $5,717.00 | $5,717.00 | |
| WASHINGTON MUTUAL FA | $111,672.00 | $112,448.04 | |
| MEDICAL PAYMENT DATA | | | |
| RNB - TARGET | $61.00 | | $20.00 |
| HHLD BANK | $512.00 | | $15.00 |
| PERSONAL FINANCE CO | $1,403.00 | | $83.00 |
| MEDICAL PAYMENT DATA | $256.00 | | $7.68 |
| THD/CBUSA | $50.00 | | $10.00 |
| SUNTRUST BANK | $15,176.00 | | $183.00 |
| SUNTRUST BANK | $303.00 | | $4.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |



Total Payments:          $378.68

# EXHIBIT I

Case: 1:05-cv-07097 Document #: 313-10 Filed: 11/29/06 Page 16 of 39 PageID #:7137

11/16/2006 12:31  7732397207        EVERETT ROSEMON           PAGE 02/16
Nov-15-2006 08:44am From-AMC MORTGAGE SERVICES      +8475177031       T-063  P.004/019  F-951

AMC Westbrook/Hillside
1 Westbrook Corp. Center
Westchester, IL 60154

Re: Property:    10549 S Peoria St
                 Chicago, IL 60643-3027
    Borrower: Everett Rosemon
    File No.:

In accordance with your request, we have appraised the above referenced property. This report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject. The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you. Please do not hesitate to contact me or any of my staff if we can be of additional service to you.

Kind regards,

David E. [signature]
Da[...]
AMC Appraisal Services




| Borrower/Client | Everto Ranmon | | | File No. | 84000077 |
| Property Address | 10849 S Peoria St | | | | |
| City | Chicago | County | Cook | State | IL | Zip Code | 60643-1027 |
| Lender | AMC Westbrook/Hinsdale | | | | |

## TABLE OF CONTENTS

Letter of Transmittal ........................................................................................................ 1
Summary of Salient Features ............................................................................................ 2
URAR ................................................................................................................................ 5
Supplemental Addendum ................................................................................................. 8
Sketch Totals .................................................................................................................... 9
Comparable Photos 1-3 .................................................................................................. 10
Location Map .................................................................................................................. 11
Floor Map ....................................................................................................................... 11
Building Sketch (Page - 1) ............................................................................................. 12
Statement of Limiting Conditions .................................................................................. 13
USPAP Certification ....................................................................................................... 14
Marketplace Supplemental Addendum .......................................................................... 15

Form TOCNP — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

11/16/2006  12:31    7732397207        EVERETTROSEMIR        T-063  P.002   F-851
+8475177931



EPIC Appraisal Services
Ethics, Principle, Integrity, Character

## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
10649 S Peoria St
As per Title
Chicago, IL 60643-3027

**FOR:**
AMC Westbrook/Hillside
1 Westbrook Corp. Center
Westchester, IL 60154

**AS OF:**
7/23/2004

**BY:**
Dave Kubalik

**Supplemental Addendum**

| Borrower/Client: Everit Rosemon | | | File No. 04073277 |
| Property Address: 10649 S Peoria St | | | |
| City: Chicago | County: Cook | State: IL | Zip Code: 60643-3427 |
| Lender: AMC Westbrook & Hillside | | | |

where sales data is limited, it is not unusual to encounter a situation where the gross living area is unable to be bracketed within the scope of the comparison.

The basements of all the sales were compared to that of the subject's. In some cases, appropriate dollar adjustments have been considered. These adjustments were determined upon an analysis of the overall basement size, the kind and type of rooms below grade, and the overall square footage of finished area below grade.

Functional utility refers to a dwelling's overall compatibility with its intended use and environment, as defined by market standards. This category includes design features, such as layout, room size, storage area, security and privacy that are in line with current trends in the market area. Consideration is given to circumstances such as modern bathrooms or bedrooms immediately off a living or dining room, a bathroom that is immediately off the kitchen or absent from a second story where the bedrooms are located. Adjustments are necessary only when such factors are present and the Appraiser deems that the presence of such factors creates a difference in marketability within the scope of the comparison of the properties .

The type of heating and air conditioning of all the sales was compared to that of the subject's and appropriate dollar adjustments, if any, were made accordingly.

The garages of all the sales were compared to that of the subject's. The determination of any dollar adjustment was based on the size, type, quality of construction, amenities, and the proximity of the garage to its respective property dwelling.

The amenities of all the sales were compared to that of the subject's. These amenities may include, but are not limited to, the size and type of porches (whether they are open, covered or enclosed), the size, materials and design of decks and patios, the length and type of fences, the shape, size and design of in-ground pools, and the size, materials and type of any outbuildings or storage sheds that may be present. Appropriate dollar adjustments were made accordingly.

The "Built – Ins" of all the sales were compared to that of the subject's. These may include, but are not limited to, dishwashers, ranges/ovens and microwaves that are "built – in". However, these features are considered to provide minimal contributory value towards the final valuation. Therefore, no adjustments are considered in the comparison of these features.

The appraiser has taken great care to utilize sales data that conform to typical adjustment standards. However, when appraising properties in areas of a smaller population base where appropriate comparable sales data may be limited, it is not unusual for gross adjustments to exceed 25% and/or net adjustments to exceed 15%, land-to-value ratios to exceed 15% and/or line adjustments to exceed 10%. When one or more of these conditions exist within the scope of the comparison, it is the general and accepted practice of this appraiser, where at all possible, to utilize 4 -6 comparable sale selections to further support the appraisers opinion of value and to further assist the appraiser's client towards the purpose for which this appraisal was requested.

**- Conditions of Appraisal**
This is a Complete Appraisal Report written in a Summary Format which is intended to comply with the reporting requirements set forth under Standards Rule 2 - 2(b) of the Uniform Standards of Professional Appraisal Practice for a Summary Appraisal Report. As such, it represents only summary discussions of the data, reasoning and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation that is not provided within the report concerning the data, reasoning and analyses is retained in the appraiser's file. The depth of the discussion contained in this report is specific to the needs of the client and for the intended use stated in the report. The appraiser is not responsible for unauthorized use of this report.

This appraisal report may contain an electronic signature(s). Electronic signatures were implemented for the convenience of this firm and at our clients' requests. Electronic signatures are individually password protected.

This appraisal report may contain Multiple Listing Service photographs. In the event that MLS photos have been utilized, the appraiser certifies that he/she has driven by the property and that the comparable photos used are accurate representations of the comparable sale as of the effective date of this appraisal.

The Date of the Report is the date the report was signed.

**- Final Reconciliation**
Greatest emphasis was placed on the results of the Sales Comparison approach to value as it best indicates the activity of buyers and sellers in the market place. The Cost approach supports the Sales Comparison approach and usually indicates the upper range of value. The Income approach was considered but not deemed applicable to this appraisal report, as there is insufficient market rent data with which to develop a Gross Rent Multiplier.

11/16/2006  12:31  773239720?  EVERETTROSEMORT  PAGE  06/16
Nov-15-2006  08:45am  From-AMC MORTGAGE SERVICES  +8475177931  T-053  P 008/010  F-951



## Supplemental Addendum

File No. 04071277

| Borrower/Client | Everett Rosemore | | | |
|---|---|---|---|---|
| Property Address | 10640 S Prairie St | County Cook | State IL | Zip Code 60843-1877 |
| Lender | AMC Westbrook/Hillside | | | |

area sub-markets of smaller population based communities, such as the subject's, where sales data is limited, it is not unusual to encounter a situation where the subject's sales price is unable to be bracketed within the scope of the comparison.

The appraiser's approach is comparable sales selection includes effort and great care given to utilizing data that is within the typical parameter of a price range of $10 per square foot. This ratio is ascertained by dividing the sales price by gross living area. Within smaller population based communities, such as the subject's, where sales data is limited, it is not unusual for this ratio to be exceeded.

Due to the volume of sales activity of comparables from within a limited population base, and given the overall condition and physical characteristics of the subject property, it was necessary to utilize sales from outside the subject's defined neighborhood boundaries. Consideration was given to sales data from within competing neighborhoods of similar predominant values and physical characteristics to that of the subject's neighborhood.

The appraiser's approach in selecting comparable sales is to compile and utilize sales data within 6 months of the effective date of this report. As it becomes necessary to exceed a 6 month time frame, the appraiser then considers past market conditions of the comparable sale(s) in relation to the present conditions which exist as of the effective date of this report in an effort to determine market variances within the scope of the comparison. However, as no significant changes in economic forces have occurred within this time period, no adjustments for varying market conditions are deemed appropriate.

The location of all the sales was compared to that of the subject in regards to neighborhood predominant values, proximity to employment, parks, shopping and other amenities, proximity to commercial and/or industrial properties, proximity to high traffic thoroughfares, and any variance(s) in the market that may exist. Appropriate dollar adjustments, if any, were considered.

The property rights included with the subject property were compared to the property rights included within the comparable sales. These estate rights are most often referred to as Fee Simple or Fee Simple Absolute. Fee simple is the highest or most complete form of ownership today. Fee simple ownership includes the right to use the land now and for an indefinite period of time in the future. These rights of ownership, often called the bundle of rights, include the rights to use, sell, rent or give away the real estate, as well as to choose not to exercise any of these rights. The bundle of rights inherent in the ownership of real estate are what may be bought and sold in a real property transaction. In an appraisal the rights being appraised must be stated, because any limitation on the rights of ownership may affect property value.

Site adjustments, if any, were made according to site value and not necessarily to the size.

The view from the subject was compared to that of the sales. Consideration was given to any factors that could possibly affect market values within the scope of the comparison. Such factors may include, but are not limited to, wooded areas or scenic views of rivers, lakes or valleys (etc.), or views of residential, industrial or commercial properties (etc.) that could require adjustment consideration in regards to possible variances in market value.

The design and appeal of all the sales were compared to that of the subject's. Consideration was given to each comparison in regards to current trends in design and appeal which seem to have a bearing on a property's market value. Areas of consideration may include, but are not limited to, the building style of the dwelling, the visual appearance of the property from the street, and the layout and floor plan of the home itself in relation to modern desires which exist in the market place. In regards to the floor plans involved in each comparison, information is utilized from the appraiser's personal knowledge of the property and/or MLR data.

The quality of construction of all the sales was compared to that of the subject's. Appropriate adjustments, if any, were made in regards to the exterior building materials maintenance free characteristics, the quality of the material(s) in regards to contemporary standards, and its overall acceptance and desirability within the subject's sub-market. As to the interior, consideration is given to the quality of building and finishing materials present, such as various types of floor coverings, i.e. carpets, slate, and/or the grade of carpeting, the quality of the various fixtures in the home, the appeal and quality of the kitchen, baths, etc. To arrive at appropriate adjustment figures, the appraiser utilized information obtained from the Multiple Listing Service, personal knowledge of the comparable properties, and/or information obtained from a reliable source, such as the property owner, builder, real estate agent, etc.

The actual age of all the sales was compared to that of the subject's. In some instances, appropriate dollar adjustment are realized upon a determination that the reflected age difference has a bearing on market value within the scope of the comparison.

The over all condition of the sales was compared to that of the subject. Consideration was given to the extent of internal and/or external renovating, remodeling and/or updating, and observed deferred maintenance. In regards to the subject property, the quality of workmanship and products used in any improvements were also taken into consideration. In respect to the comparable sales, the appraiser utilized information obtained from the Multiple Listing Service, personal knowledge of the comparable properties, and/or information obtained from a reliable source, such as the property owner, real estate agent, etc., to arrive at appropriate adjustment figures.

The gross living area, along with the bedroom and bathroom counts of all the sales was compared to that of the subject's and appropriate dollar adjustments were made accordingly. The appraiser used great care in an effort to bracket the gross living area of the subject with that of the comparable sales. However, within smaller population based communities, such as the subject's,

**Supplemental Addendum**

| Borrower/Client | Everett Rosemon |
| Property Address | 10649 S Prairie St |
| City | Chicago | County | Cook | State | IL | Zip Code | 60628-3827 |
| Lender | AMC Westbrook/BNMB |

**• Neighborhood Market Factors**

A typical neighborhood usually goes through four distinct periods in its life: growth, equilibrium (also called stability), decline and revitalization (also called rehabilitation). When an area is first developed, property values usually increase until few vacant building sites remain. At that point, the houses in the neighborhood tend to stabilize at their highest monetary value and prices slowly diminish downward. As the neighborhood increases in age and the presence of increasing property deterioration is evident, the area usually declines in both value and desirability. This process is enhanced by the availability of newer housing nearby. The neighborhood's life cycle may start over again due to revitalization—a period when demand increases due to the presence of certain favorable market and economic factors providing the stimuli for renewed consumer desirability for properties within the specified neighborhood. One of these factors is called gentrification. The phenomenon of gentrification is defined as the desirability that even run-down properties may have within a particular neighborhood if other favorable factors exist and are strong enough. These factors may include, but are not limited to, location and high demand, which are frequently found together in neighborhoods experiencing revitalization. Gentrification, then, only serves to strengthen the market appeal of neighborhoods in the stage of revitalization.

**Highest and Best Use**

The highest and best use analysis employed herein is based on the following:

Highest and best use can be defined as the reasonably probable and legal use of vacant land or an improved property, that is physically possible, legally permissible, financially feasible, and that results in the highest value.

The present use is deemed to meet that test as of the effective date of the appraisal report.

**• Additional Features**

**• Adverse Environmental Conditions**

No environmental hazards or potential problems were noted by the appraiser at the time of inspection. The appraiser, however, is not an expert in the field of environmental hazards or toxic wastes, and makes no claims to possess such knowledge. It is the responsibility of the appraiser only to make note of and point out any obvious hazards or conditions. If the client has any questions, concerns or suspicions about the possible existence of any potentially hazardous conditions, then an expert in the field should be obtained to render a qualified opinion. Furthermore, the appraiser is not a qualified engineer or land surveyor and makes no claims to be. Any determination of flood zone location should be made by a qualified professional. If there are any questions regarding the exact location of any flood zone or zones, a qualified land surveyor should be retained for such an establishment.

**• Cost Approach Comments**

The Cost approach to value requires the appraiser to add the estimated value of the site to the depreciated value of the improvements. The site is valued as if vacant and available for its highest and best use. This value is obtained by using the extraction method. The appraiser has utilized the age-life method as a tool to estimate physical depreciation. This method assumes that physical deterioration occurs at a constant average annual rate. Functional obsolescence is defined as any defects in a building or structure that detract from its value or marketability, usually the result of layout, design or other features that are less desirable than features designed for the same functions in newer properties. Functional obsolescence may be curable or incurable. External obsolescence is any loss in value due to adverse factors outside the subject property and is generally considered to be incurable. Accrued depreciation is estimated by applying to a property's reproduction cost new the ratio of the property's effective age to its economic useful life. This estimate of the amount of accrued depreciation is achieved by calculating the difference between the estimate of reproduction cost new and the indicated value derived from the Sales Comparison Approach to value. This practice is commonly referred to as the indirect method for estimating accrued depreciation.

The Cost Approach to value carries the greatest measure of reliability when the subject improvements are new, there is no accrued depreciation and the land is being utilized at its highest and best use. The greater the amount of accrued depreciation, whether physical, functional or economic, the more subjective the Cost Approach to value becomes, and is, therefore, somewhat weakened in its measure of reliability. A substantial amount of accrued depreciation significantly reduces the measure of reliability.

**• Sales Comparison Comments**

The Sales Comparison Approach to value is based on the principle of substitution, which is illustrated by using sales of comparable properties as a basis for rendering an opinion as to the value of the subject property. The foremost consideration in choosing the sales to be used in the comparison is the circumstances surrounding the sale of the comparable properties. The type and location of comparables used in this approach are then dependent on the nature and type of the property being appraised.

The appraiser used great care in an effort to bracket the sales price of the subject with that of the comparable sales. However, in

Case: 1:05-cv-07097 Document #: 313-10 Filed: 11/29/06 Page 22 of 39 PageID #:7143

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. 04073277 Page #3
0007726128
File No. 04073277

| | | |
|---|---|---|
| ESTIMATED SITE VALUE | = $ | 45,000 |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | |
| Dwelling 1,260 Sq. Ft. @ $ 105.00 = $ | 132,300 | |
| 280 Sq. Ft. @ $ 45.00 = $ | 35,100 | |
| Patio, Fence | 8,000 | |
| Garage/Carport 320 Sq. Ft. @ $ 25.00 = $ | 8,000 | |
| Total Estimated Cost New | = $ | 183,000 |
| Less Physical Functional External | | |
| Depreciation 42,329 | = $ | 42,329 |
| Depreciated Value of Improvements | = $ | 141,071 |
| "As-is" Value of Site Improvements | = $ | 15,000 |
| INDICATED VALUE BY COST APPROACH | = $ | 201,071 |

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Address | 10649 S Peoria Rd Chicago | 11342 S Peoria Chicago | 11408 R Parnell Chicago | 10457 S Emerald Chicago |
| Proximity to Subject | | 0.71 miles | 0.94 miles | 0.63 miles |
| Sales Price | $ Refinance | $ 160,000 | $ 175,900 | $ 177,900 |
| Price/Gross Living Area | $ /sq.ft. | $ 126.98 /sq.ft. | $ 121.80 /sq.ft. | $ 146.12 /sq.ft. |
| Data and/or Verification Source | Inspection Assessor | External Observation Assessor and/or MLS | External Observation Assessor and/or MLS | External Observation Assessor and/or MLS |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-)$ Adjust | DESCRIPTION +(-)$ Adjust | DESCRIPTION +(-)$ Adjust |
| Sales or Financing | | Conventional | Conventional | Conventional |
| Concessions | | No Concessions | No Concessions | No Concessions |
| Date of Sale/Time | | 4/23/04 | 6/07/04 | 6/07/04 |
| Location | Suburban/Ave | Suburban/Ave | Suburban/Ave | Suburban/Ave |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Site | 40x122 | 40x135 | 75x125 -4,000 | 125x125 +5,000 |
| View | Residential/Ave | Residential/Ave | Residential/Ave | Residential/Ave |
| Design and Appeal | Cape cod | 1-Story/Ranch | 1.5Story/Average | Split Level |
| Quality of Construction | Brick/Average | Brick/Average | Brick/Average | Brick/Vinyl/Avg |
| Age | 46 | 49 | 55+ | 44 |
| Condition | Average | Average | Average | Average |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | Total Bdrms Baths -3,000 | Total Bdrms Baths |
| Room Count | 6  3  2 | 6  3  2 | 8  4  2 | 6  3  2 |
| Gross Living Area | 1,260 Sq. Ft. | 1,260 Sq. Ft. 0 | 1,350 Sq. Ft. 0 | 1,197 Sq. Ft. 0 |
| Basement & Finished | Full Basement | Full Basement | Part Basement | Part Basement |
| Rooms Below Grade | Finished | Finished | Part/finished +2,000 | Finished |
| Functional Utility | Average | Average | Average | Average |
| Heating/Cooling | FWA/CA | FWA/CA | FWA/CA | FWA/CA |
| Energy Efficient Items | Typical Items | Typical Items | Typical Items | Typical Items |
| Garage/Carport | 1 detached | 1-Car Detached | None -3,000 | 2 Detached -3,000 |
| Porch, Patio, Deck, | Patio | Porch | Porch | Patio |
| Fireplace(s), etc. | None | None | Fireplace -1,500 | None |
| Fence, Pool, etc. | Fence | Fence | Fence | None +1,000 |
| Net Adj. (total) | | + - $ 3,800 | + - $ | + - $ 3,000 |
| Adjusted Sales Price of Comparable | | 160,000 | 175,900 | 177,900 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property) Cost estimates were based on information referenced from the Marshall & Swift Cost Index and/or interviews with local contractors. Please see the addenda for dimensions list and further comments. The driveway, sidewalk and landscaping, along with the well and septic systems where applicable, are included in the "As-Is" Value of Site Improvements.

Estimated remaining economic life: 50 +/- years

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): Market data obtained from the Multiple Listing Service is assumed to be correct. The indicated value range by means of the Sales Comparison approach to value is $ 160,000 - $ 177,900. The indicated sales were considered to be the best available within a reasonable proximity along the overall condition and physical characteristics of the subject property. Please see the attached addendum for further remarks concerning the Sales Comparison approach to value.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | No Sales Previous Three Years | No Sales Previous One year | No Sales Previous One year | No Sales Previous One year |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal Please see the Multi-Purpose Supplemental Addendum.

| | | | |
|---|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH | | | $ 172,000 |
| INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ | | | |

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans & specifications.
Conditions of Appraisal: See attached addenda.

Final Reconciliation: See attached addenda.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 06/1993 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 7/23/2004 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 172,000.

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature David Kolnik | Signature ☐ Did ☐ Did Not Inspect Property |
| Name David Kolnik | Name Todd Lurie |
| Date Report Signed 7/22/2004 | Date Report Signed 7/27/2004 |
| State Certification # | State Certification # 155.0007945D |
| Or State License # 157.0003157 State IL | Or State License # State IL |

PAGE 2 OF 2
Freddie Mac Form 70 6/93                Fannie Mae Form 1004 6-93

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

11/16/2006 12:31 7732397207 EVERETTROSEMON PAGE 09/16

Nov-15-2006 08:44am From-AMC MORTGAGE SERVICES +8475177831 T-053 P 006/010 F-951

www.[illegible].com

File No. 04072277 Page #2
0087266128

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. 04072277

**Property Description**

Property Address 10640 S Peoria St City Chicago State IL Zip Code 60643-3027
Legal Description As per Title County Cook
Assessor's Parcel No. 25172290140000 Tax Year 2003 R.E. Taxes $ 1,403.30 Special Assessments $ 0.00
Borrower Everitt Rosemon Current Owner Everitt Rosemon Occupant: [X] Owner [ ] Tenant [ ] Vacant
Property rights appraised [X] Fee Simple [ ] Leasehold Project Type [ ] PUD [ ] Condominium (HUD/VA only) HOA $ N/A /Mo.
Neighborhood or Project Name Chicago Map Reference RMS1600 Census Tract 7307.00
Sale Price $ Refinance Date of Sale N/A Description and $ amount of loan charges/concessions to be paid by seller N/A
Lender/Client AMC Westwood/Hillside Address 1 Westbrook Corp. Center, Westchester, IL 60154
Appraiser Dave Kulesik Address 2325 Fourth Street, Peru, IL 61354

**Neighborhood**

| | | | |
|---|---|---|---|
| Location | [ ] Urban | [X] Suburban | [ ] Rural |
| Built up | [X] Over 75% | [ ] 25-75% | [ ] Under 25% |
| Growth rate | [ ] Rapid | [X] Stable | [ ] Slow |
| Property values | [ ] Increasing | [X] Stable | [ ] Declining |
| Demand/supply | [ ] Shortage | [X] In balance | [ ] Over supply |
| Marketing time | [ ] Under 3 mos. | [X] 3-6 mos. | [ ] Over 6 mos. |

Predominant occupancy: [X] Owner [ ] Tenant [X] Vacant (0-5%) [ ] Vacant (over 5%)

| Single family housing | PRICE $(000) | AGE (yrs) |
|---|---|---|
| Low | 73 | 15 |
| High | 253 | 87 |
| Predominant | 185 | 46 |

Present land use %: One family 100; 2-4 family ___; Multi-family ___; Commercial ___

Land use change: [X] Not likely [ ] Likely [ ] In process To: ___

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: The subject's neighborhood may be defined as 103rd st to the North, Halsted st to the East, 107th st to the South and Interstate 57 to the West.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): The employment stability and overall economy of the area, in which the subject is located, is considered to be stable to moderately increasing. Schools, places of worship, recreational areas, downtown business district and other amenities are all within one mile of the subject property. Access to employment centers, a shopping mall, community college, regional airport, hospitals, state parks, and interstate highway systems gives the area good appeal.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): Marketing time is considered to be 90 - 120 days in most sub markets, based on information obtained from the Multiple Listing Service, which is assumed to be correct. The market appears to be stable and reasonably active. Supply and demand appear to be in balance. Mortgage money is available at competitive interest rates to qualified buyers. The financing for the subject property is consistent with financing in the local market area. Loan discounts, interest buy downs and concessions are not prevalent in the subject's sub market.

**PUD**

Project Information for PUDs (If applicable) -- Is the developer/builder in control of the Home Owners' Association (HOA)? [ ] Yes [ ] No
Approximate total number of units in the subject project ___ Approximate total number of units for sale in the subject project ___
Describe common elements and recreational facilities:

**Site**

Dimensions 40x122 Topography Level At Grade
Site area 4,880 Corner Lot [ ] Yes [X] No Size Typical/Functional
Specific zoning classification and description Residential Shape Rectangular/Functional
Zoning compliance: [X] Legal [ ] Legal nonconforming (Grandfathered use) [ ] Illegal [ ] No zoning Drainage Appears Adequate
Highest & best use as improved: [X] Present use [ ] Other use (explain) View Residential

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity | [X] | 200 Amp Breakers | Street | Asphalt | [X] | [ ] |
| Gas | [X] | Natural Gas | Curb/gutter | Concrete | [X] | [ ] |
| Water | [X] | | Sidewalk | Concrete | [X] | [ ] |
| Sanitary sewer | [X] | | Street lights | Overhead Mercury Vapor | [X] | [ ] |
| Storm sewer | [X] | | Alley | Concrete | [X] | [ ] |

Landscaping Typical For Neighborhood
Driveway Surface Concrete
Apparent easements Typical Utility
FEMA Special Flood Hazard Area [ ] Yes [X] No
FEMA Zone X Map Date 11/6/2000
FEMA Map No. 17031C0635F

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): There were no apparent adverse easements or encroachments observed at the time of inspection. There are no known special assessments or zoning issues. The current use is considered the highest and best use of the subject property.

**Description of Improvements**

| GENERAL DESCRIPTION | | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|
| No. of Units | 1 | Foundation | Poured Conc. | Slab | N/A | Area Sq. Ft. | 780 | Roof | [X] |
| No. of Stories | Two | Exterior Walls | Brick | Crawl Space | N/A | % Finished | 95 % | Ceiling | [X] |
| Type (Det./Att.) | Detached | Roof Surface | Asphalt Shingle | Basement | 100% | Ceiling | Drywall | Walls | [X] |
| Design (Style) | Cape cod | Gutters & Dwnspts. | Aluminum | Sump Pump | Yes | Walls | Drywall | Floor | [ ] |
| Existing/Proposed | Existing | Window Type | Double Hung | Dampness | None Evident | Floor | Vinyl | None | [ ] |
| Age (Yrs.) | 46 | Storm/Screens | Yes/ Yes | Settlement | None Evident | Outside Entry | No | Unknown | [ ] |
| Effective Age (Yrs.) | 14 +/- | Manufactured House | No | Infestation | None Evident | | | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | 780 |
| Level 1 | 1 | 1 | 1 | 1 | | | | 1 | 1 | | | 780 |
| Level 2 | | | | | | | | 2 | 1 | | | 480 |

Finished area above grade contains: 6 Rooms; 3 Bedroom(s); 2 Bath(s); 1,260 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | | CAR STORAGE: 1 detached | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Carpet/Average | Type | FWA | Refrigerator | [ ] | None | [ ] | Fireplace(s) # | | [ ] | None | [ ] |
| Walls | Drywall/Average | Fuel | Nt. Gas | Range/Oven | [ ] | Stairs | [ ] | Patio | Yes | [ ] | Garage | # of cars |
| Trim/Finish | Wood/Average | Condition | Average | Disposal | [ ] | Drop Stair | [ ] | Deck | | [ ] | Attached | |
| Bath Floor | Tile/Average | COOLING | Window | Dishwasher | [ ] | Scuttle | [X] | Porch | | [ ] | Detached | 1 |
| Bath Wainscot | Tile/Average | Central | None | Fan/Hood | [X] | Floor | [ ] | Fence | Yes | [X] | Built-In | |
| Doors | Wood/Average | Other | None | Microwave | [ ] | Heated | [ ] | Pool | | [ ] | Carport | |
| | | Condition | Average | Washer/Dryer | [ ] | Finished | [ ] | | | | Driveway | 1 |

Additional features (special energy efficient items, etc.): Any notable additional features not elsewhere addressed in the body of this report are discussed in the addendum section under the heading "Additional Features."

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: Physical depreciation is the result of normal wear and tear. No functional inadequacies were considered to exist in the subject's floor plan. No external obsolescence was considered to exist within the subject's neighborhood. Please see the addendum for further comments on this section of the report.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: See attached addenda.

Freddie Mac Form 70 6/93 PAGE 1 OF 2 Fannie Mae Form 1004 6/93
Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

Nov-15-2006  08:46am   From-AMC MORTGAGE SERVICES          +8475177931        T-053   P 010/010   F-951



### Subject Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client  Yvonne Roseman | | | |
| Property Address  10649 N Peoria St | | | |
| City  Chicago | County  Cook | State  IL | Zip Code  60643-3027 |
| Lender  AMC Westbrook/Hillside | | | |



**Subject Front**

10649 S Peoria St
Sales Price          --    --Refinance-- --
Gross Living Area    1,250
Total Rooms          6
Total Bedrooms       3
Total Bathrooms      2
Location             Suburban/Ave
View                 Residential/Avg
Site                 40x122
Quality              Brick/Average
Age                  46

**Subject Rear**

**Subject Street**



Form PICPIX.SR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

11/15/2006 12:31 7732397207 EVERETTROSEMON PAGE 11/16

Nov-15-2006 08:46am From-AMC MORTGAGE SERVICES +8475177831 T-052 P.011/018 F-951



## Comparable Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client | Everett Rosemon | | |
| Property Address | 10649 S Peoria St | | |
| City | Chicago | County Cook | State IL |
| Lender | AMC Westmont/Hillside | | File No. AD643-3077 |



### Comparable 1

11342 S. Peoria

| | |
|---|---|
| Prox. to Subject | 0.71 miles |
| Sale Price | 160,000 |
| Gross Living Area | 1,296 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Surban/Avg |
| View | Residential/Avg |
| Site | 60x135 |
| Quality | Brick/Average |
| Age | 40 |

### Comparable 2

11420 S Parnell

| | |
|---|---|
| Prox. to Subject | 0.94 miles |
| Sale Price | 174,000 |
| Gross Living Area | 1,250 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Surban/Avg |
| View | Residential/Avg |
| Site | 75x125 |
| Quality | Brick/Average |
| Age | 33+ |

### Comparable 3

10457 S Emerald

| | |
|---|---|
| Prox. to Subject | 0.30 miles |
| Sale Price | 174,500 |
| Gross Living Area | 1,197 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Surban/Avg |
| View | Residential/Avg |
| Site | 25x125 |
| Quality | Brick/VeryS/Avg |
| Age | 44 |

Form PICDISCR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE



### Location Map

| Borrower/Client | Erycell Rosemon | | | |
|---|---|---|---|---|
| Property Address | 10649 S Peoria St | | | |
| City | Chicago | County | Cook | State | IL | Zip Code | 60643-3027 |
| Lender | AMC Westbrook/Hillside | | | |



Form MAP.LOC — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

11/16/2006  12:31   7732397207          EVERETT ROSEMON          PAGE  13/16

Nov-16-2006  08:48am  From-AMC MORTGAGE SERVICES        +8475177931        T-053  P 013/019  F-261

**Flood Map**



11/16/2006   12:31     7732397207          EVERETT ROSEMON                    PAGE  14/16
Nov-15-2006  08:48am   From-AMC MORTGAGE SERVICES      +8475177931         T-053  P.014/018  F-951



Building Sketch (Page - 1)

 

**DEFINITION OF MARKET VALUE:** The most probable price which a property would bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (i) buyer and seller are typically motivated; (ii) both parties are well informed or well advised, and each acting in what he considers his own best interest; (iii) a reasonable time is allowed for exposure in the open market; (iv) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (v) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

www.mtbproductionware.com
Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# EXHIBIT J

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided ( and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☒ the income or assets of the Borrower's spouse will not be used as a basis for qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|
| | ☒ FHA  ☐ USDA/Rural Housing Service | | | 0087266128 |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate | ☐ Other (explain): |
|---|---|---|---|---|---|
| $146,200.00 | 7.750 % | 360 | | ☐ GPM | ☒ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 10649 S Peoria St, Chicago, IL 60643 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| | 1953 |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☒ Refinance  ☐ Construction-Permanent | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made  ☐ to be made |
|---|---|---|---|---|---|
| 2001 | $11,000.00 | $ 112,448.04 | Refi-Cash Out | Cost: $ 0.00 | |

| Title will be held in what Name(s) Everett K Rosemon and Graundia Rosemon. | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| Husband and Wife, Not as Joint Tenants or Tenants in Common but | | ☒ Fee Simple ☐ Leasehold (show expiration date) |

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| Everett K Rosemon | |

| Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (773)239-8596 | 01/02/1963 | 12 | | | | |

| ☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0  ages | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 3 No. Yrs | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs |
|---|---|
| 10649 S Peoria St Chicago, IL 60643 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer ☐ Self Employed | Yrs. on this job | Name & Address of Employer ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| Chicago Transit Authority PO Box 3555 Chicago, IL 60654 | 5  Yrs. employed in this line of work/profession 5 | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| Operator | | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

0087266128

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4

Initials: _____

VMP Mortgage Solutions (800)521-7291

-21N (0305)

| Borrower's cell | Borrower's pager |
|---|---|
| Co-Borrower's cell | Co-Borrower's pager |

00000087266128060599060 1

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 4,799.44 | $ | $ 4,799.44 | Rent | $ 0.00 | /////// |
| *time | 0.00 | | 0.00 | First Mortgage (P&I) | 1,061.00 | $ 1,047.40 |
| *es | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 90.00 | 90.00 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 116.92 | 116.94 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 4,799.44 | $ | $ 4,799.44 | Total | $ 1,267.92 | $ 1,254.34 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| | Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| B/C | | $ 0.00 |
| B | | 0.00 |
| B | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES  Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| List checking and savings accounts below | | *** SEE ADDENDUM *** | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Vested 401k Retirement - Aggregated | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ 3,692.00 | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Checking/Savings - Aggregated | | | | |
| | | Acct. no | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ 0.00 | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/ number & description) /0 | $ 0.00 | | | |
| | | Acct. no | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 3,692.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 172,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| *ther Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.)  Union Dues | $ *** ***0 00 | /////// |
| | | Total Monthly Payments | $ 486.06 | |
| Total Assets a. | $ 175,692.00 | Net Worth (a minus b) ▶ $ 156,859.00 | Total Liabilities b. | $ 18,833.00 |

0087266128

Freddie Mac Form 65 01/04
Fannie Mae Form. 1003 01/04

-21N (0305)

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| S Peoria St  .ago. IL 60643 | R SFR | $ 172000 | $ 112448 | $ 0 | $ 1061 | $ 207 | $ 0 |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ 172000 | $ 112448 | $ 0 | $ 1061 | $ 207 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 130,064.00 |
| e. Estimated prepaid items | 1,083.64 |
| f. Estimated closing costs | 2,644.00 |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 3,067.46 |
| i. Total costs (add items a through h) | 136,859.10 |
| j. Subordinate financing | 0.00 |
| k. Borrower's closing costs paid by Seller | 0.00 |
| l. Other Credits (explain) | |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 146,200.00 |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | 146,200.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -9,340.90 |

## VII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number. If any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP) or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable Federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| | I do not wish to furnish this information. | | I do not wish to furnish this information. |
| Ethnicity: | Hispanic or Latino / X Not Hispanic or Latino | Ethnicity: | Hispanic or Latino / Not Hispanic or Latino |
| Race: | American Indian or Alaska Native / Asian / X Black or African American / Native Hawaiian or Other Pacific Islander / White | Race: | American Indian or Alaska Native / Asian / Black or African American / Native Hawaiian or Other Pacific Islander / White |
| Sex: | Female / X Male | Sex: | Female / Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Ian Santangelo | |
| Face-to-face interview | Interviewer's Signature | Date 720 Plainfield Rd. # 100 |
| Mail | | Willowbrook, IL 60527 |
| X Telephone | Interviewer's Phone Number (incl. area code) | |
| Internet | (630)455-1049 | |

00B7266128

**-21N (0305)**

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

# Continuation Sheet/Residential Loan Application

| | | Agency Case Number: |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan ...ation. Mark B for ...ver or C for Co-Borrower. | Borrower: | |
| | Roseaon, Everett K | Lender Case Number: |
| | Co-Borrower: | 0087266128 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

# EXHIBIT K

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email: edcombs@aol.com
### www.edcombs.com

November 8, 2006

**BY CERTIFIED MAIL**

Ameriquest Mortgage Company
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

AMC Mortgage Services, Inc.
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

Ameriquest Mortgage Securities, Inc.
1100 Town & Country Road, Suite 1100
Orange, CA 92868

Deutsche Bank National Trust Company, N.A.
60 Wall Street
New York, NY

> Re:    Notice of rescission, claim and lien, Everett K. Rosemon, Graundia
> Rosemon, 10649 S. Peoria, Chicago, IL 60643, loan of July 29,
> 2004

Ladies/Gentlemen:

The above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than Ameriquest Mortgage Company or Ameriquest Mortgage Securities, Inc., please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on November 8, 2006.

Daniel A. Edelman