### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br>Lead Case No. 05-cv-07097<br><br>Centralized before the<br>Honorable Marvin E. Aspen |

### CONSOLIDATED COMPLAINT FOR CLAIMS OF
### NON-BORROWERS

Plaintiffs, Raymond Quarterman, Jr., Adolph Peter Kurt Burggraff, Thomas J. Klutho and Mary Forrest, bring this action, individually and on behalf of the class(es) of non-borrowers defined below, against Defendants, Ameriquest Capital Corporation and Ameriquest Mortgage Company. Plaintiffs, by their attorneys, hereby consolidate the complaints filed in the following actions:

*Burgraff v. Ameriquest Mortgage Co.,* Case No. 2:04-cv-09715 (MMM), U.S. District Court for the Central District of California;

*Forrest v. Ameriquest Mortgage Co.*, Case No 2:06-cv-00012 (JPS), U.S. District Court for the Eastern District of Wisconsin;

*Klutho v. Ameriquest Mortgage Co.*, Case No. 6-CV-00746 (CDP), U.S. District Court for the Eastern District of Missouri;

*Quarterman v. Ameriquest*, Case No. 2:05-cv-01426 (MMM), U.S. District Court for the Central District of California.

By this consolidation, the allegations in each of these complaints are intended to be reserved as if reasserted and alleged herein. Plaintiffs allege the following upon information and belief, among other things, upon the investigation made by Plaintiffs by and through their attorneys:

## PARTIES

1.     Plaintiff Raymond Quarterman, Jr. is a resident of Orlando, Florida. Mr. Quarterman did not obtain a loan from Defendants, but has been a victim of Ameriquest's herein described unlawful practices during the period covered by this consolidated action.

2.     Plaintiff Adolph Peter Kurt Burggraff is a resident of West Richland, Washington. Mr. Burggraff did not obtain a loan from Defendants, but has been a victim of Ameriquest's herein described unlawful practices during the period covered by this consolidated action.

3.     Plaintiff Thomas J. Klutho is a resident of St. Louis County, Missouri. Mr. Klutho did not obtain a loan from Defendants, but has been a victim of Ameriquest's herein described unlawful practices during the period covered by this consolidated action.

4.     Plaintiff Mary Forrest is a resident of Milwaukee, Wisconsin. Ms. Forrest did not obtain a loan from Defendants, but has been a victim of Ameriquest's herein described unlawful practices during the period covered by this consolidated action.

5.     Defendant Ameriquest Mortgage Company is a wholly owned subsidiary of Ameriquest Capital Corporation and has its principal place of business in Orange, California.

6.     Defendant Ameriquest Capital Corporation is a privately held Delaware corporation with its principal place of business in Orange, California.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

7.      Defendants Ameriquest Capital Corporation and Ameriquest Mortgage Company (hereinafter collectively referred to as "Ameriquest") participate in the business of, among other things, obtaining consumer reports on individuals and using such information to offer and underwrite credit and mortgage loans to individuals throughout the United States.  Defendants are "creditors" within the meaning of the Equal Credit Opportunity Act ("ECOA") as set forth in 15 U.S.C. ¶ 1691a(e). Credit reports are consumer reports as that term is used in the Fair Credit Reporting Act, 15 U.S.C. § 1681a(d).

8.      Defendants also obtain consumer reports on individuals and use such information to solicit individuals throughout the United States to enter credit transactions with Defendants, including the refinancing of home equity loans.

9.      Defendants are users of consumer reports as that term is used in the Fair Credit Reporting Act, 15 U.S.C. § 1681m.

10.      At all times mentioned herein, Defendants, and each of them, were an agent of joint venturer of the other Defendant and, in doing the acts alleged herein, were acting within the course and scope of such agency. Each Defendant had actual or constructive knowledge of the acts of the other Defendant, and ratified, approved, joined in, acquiesced, and authorized the wrongful acts of each co-Defendant, and retained the benefits of said wrongful acts.

11.      Defendants, and each of them, aided, abetted, encouraged, and rendered substantial assistance to the other Defendant in the wrongful acts and other wrongdoings complained of herein, and each of the Defendants acted with an awareness of its primary wrongdoing and

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 based upon claims brought pursuant to the FCRA, 15 U.S.C. § 1681p, and the ECOA, 15 U.S.C. §§ 1691, et seq.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and the and pursuant to the transfer order of the Judicial Panel on Multidistrict Litigation.

## THE FCRA AND ECOA

14.     The FCRA, 15 U.S.C. §§ 1681-1681t, is a federal statute first enacted in 1971.  The FCRA is a consumer protection statute that regulates the activities of credit reporting agencies and users of credit reports, and provides certain rights to consumers affected by use of their consumer reports.   In 1996, the FCRA was amended to expand the rights of consumers who are adversely affected by use of their consumer report information.  As recently as December 2003, Congress amended the FCRA to provide even more protection to the consumer than was afforded in the expansive 1996 amendments.

## PERMISSIBLE PURPOSE

15.     Congress designed the FCRA to preserve the consumer's right to privacy by safeguarding the confidentiality of the information maintained by consumer reporting agencies.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

Congress stated in the opening section of the FCRA, "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §1681(a)(4).

16.     Congress has chosen to protect the consumer's right to privacy by prohibiting any release of consumer reports unless the release is for one of the permissible purposes listed in 15 U.S.C. § 1681b.

17.     Under the FCRA, the term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in the underwriting of credit transactions involving the consumer. Credit reports and prescreening lists provided by credit reporting agencies are consumer reports. 15 U.S.C. § 1681a(d).

18.     Section 1681b(f) in turn provides, "A person shall not use or obtain a consumer report for any purpose unless - (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section [1681b].

19.     The permissible purposes listed in 1681b usually arise only in connection with transactions initiated by the consumer. See § 1681b(a)(3)(A)-(F) (authorizing the use of consumer reports when the consumer has applied for credit, employment or insurance).

20.     One of the few circumstances in which the FCRA allows the use of a consumer report in the absence of a consumer-initiated transaction is when the recipient of the information undertakes to extend to the consumer a "firm offer of credit." See §1681b(c)(1)(B).

21.     Because a prescreening user is obtaining access to the consumer's private and confidential information in a transaction not initiated by the consumer, the FCRA imposes strict conditions on the offers. The "firm offer of credit" must be one that "will be honored" if the consumer meets specific criteria used to select the consumer for such offer. See 1681a(l). The "firm offer of credit" must be more than a mere advertisement or solicitation and must have value to the consumer.

### CLEAR AND CONSPICUOUS DISCLOSURES IN WRITTEN SOLICITATIONS

22.     Users who invoke the "firm offer of credit" permissible purpose must, pursuant to § 1681m(d), provide to each consumer who receives a written firm offer a "clear and conspicuous statement" that discloses (A) that information contained in the consumer's consumer report was used in connection with the transaction; (B) the offer is conditioned upon certain additional criteria; (C) the offer may not be extended if the consumer does not continue to meet those criteria or does not provide required collateral; and (D) the consumer has the right to prohibit the future use of his or her credit report in connection with unsolicited firm offers of credit or insurance. This last disclosure is known as the "opt-out" of future offers. The clear and conspicuous disclosure must also provide the consumer with a toll-free number to call if the consumer wishes to prevent such promotional uses of his or her credit report in the future.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

23.     The FCRA provides for civil remedies to consumer for violations of the Act, including actual damages, nominal damages, statutory damages, punitive damages, costs and attorneys' fees. 15 U.S.C. § 1681n.

## AMERIQUEST'S PRESCREENING PRACTICES

24.     Ameriquest regularly obtains consumer reports on large numbers of individuals without their knowledge or consent by purchasing "prescreening" lists from consumer reporting agencies, including Equifax.

25.     Ameriquest uses these prescreening lists to contact the targeted individuals by mail.

26.     Ameriquest also requires its agents to follow a script in telephone calls to individuals on the prescreening lists.  Ameriquest's script reinforces Ameriquest's training of its agents to not make an offer of credit or even disclose an interest rate which Ameriquest would charge the individuals.

27.     Ameriquest mails written solicitations to the individuals on the prescreening lists which Ameriquest purchases from consumer reporting agencies.

28.     Ameriquest's written solicitations to individuals on the prescreening lists do not make or extend any offer or even provide any of the essential terms of a credit transaction, such as an interest rate.

29.     Ameriquest's written solicitations sent to individuals on the prescreening lists do not provide in a clear and conspicuous manner the disclosures required by FCRA.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

## ADVERSE ACTION NOTICE REQUIREMENTS

30.     The FCRA also provides that if the user of a consumer report takes any adverse action

with respect to a consumer based in whole or in part on any information contained in the

consumer report, the user of the report must provide notice to the consumer of the adverse action,

together with the identity of the consumer reporting agency providing the consumer report and

other specific information, including the consumer's right to dispute the accuracy of information

in the report and to receive a free copy of the offending report.  15 U.S.C. § 1681m.

31.     ECOA also has notice requirements regarding adverse actions related to denial or

revocation of credit, changes in the terms of exiting credit arrangements, and refusals to grant

credit in substantially the amounts or terms requested. 15 U.S.C. § 1691(d).

32.     The FCRA and ECOA adverse action notice provisions are meant to provide consumers

with notice and warn them that their consumer reports have been used adversely to their

interests.

33.     Information contained in credit reports changes constantly, making it vital to the proper

operation of the FCRA and ECOA that contemporaneous notice be given of adverse action.  By

not providing contemporaneous notice to the consumer, the user of the report makes it difficult,

if not impossible, to determine at a later date what potentially erroneous information might have

been contained in the consumer report.

34.     The FCRA and ECOA provide for civil remedies to consumers for violations of the act,

including actual damages, nominal damages, statutory damages, punitive damages, costs and

attorneys' fees. 15 U.S.C. § 1681n, and §§ 1691e(b) and (d).

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

## INDIVIDUAL FACTUAL ALLEGATIONS

**Raymond Quarterman, Jr.**

35.     Ameriquest obtained numerous consumer reports on Raymond Quarterman, Jr., during the period from February 10, 2004, through December 9, 2004, all without his knowledge or consent.

36.     Raymond Quarterman, Jr., did not initiate any transactions with Ameriquest.

37.     After Ameriquest obtained consumer reports on Raymond J. Quarterman, Jr., Ameriquest mailed Raymond Quarterman, Jr., a standardized written solicitation, a copy of which is attached as Exhibit A.

38.     Ameriquest's solicitation to Raymond Quarterman, Jr. is merely a sham solicitation that makes no firm offer.  The solicitation merely urges Raymond Quarterman, Jr., to "call us now."

39.     The solicitation fails to state any amount of credit to be extended, fails to state the rate of interest to be charged, and fails to state the method of computing interest and the length of the repayment period.  The solicitation is so devoid of terms that neither the lender nor Raymond Quarterman, Jr., can determine whether it is advantageous to extend or accept the "offer."

40.     Ameriquest's solicitation does not contain or qualify as a "firm offer of credit" under FCRA.

41.     Ameriquest's solicitation also fails to make the disclosures required by § 1681m(d) in a clear and conspicuous manner.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

**Thomas J. Klutho**

42.     Ameriquest obtained a consumer reports on Thomas J. Klutho without his knowledge or consent.

43.     Thomas J. Klutho, did not initiate any transactions with Ameriquest.

44.     After Ameriquest obtained a consumer report on Thomas J. Klutho, Ameriquest mailed Thomas J. Klutho, in March or April 2006, a standardized written solicitation, a copy of which is attached as Exhibit B.

45.     Ameriquest's solicitation to Thomas J. Klutho is merely a sham solicitation that makes no firm offer.  The solicitation merely urges Thomas J. Klutho, to call Ameriquest to apply for a loan.

46.     The solicitation fails to state any amount of credit to be extended, fails to state the rate of interest to be charged, and fails to state the method of computing interest and the length of the repayment period.  The solicitation is so devoid of terms that neither the lender nor Thomas J. Klutho, can determine whether it is advantageous to extend or accept the "offer."

47.      Ameriquest's solicitation does not contain or qualify as a "firm offer of credit" under FCRA.

**Mary Forrest**

48.      Ameriquest obtained a consumer report on Mary Forrest without her knowledge or consent.

49.     Mary Forrest did not initiate any transactions with Ameriquest.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

50.     After Ameriquest obtained a consumer report on Mary Forrest, Ameriquest mailed Mary Forrest standardized written solicitations, beginning in or about August 2005, copies of which are attached as Exhibits C, D, and E.

51.     Ameriquest's solicitations to Mary Forrest are merely sham solicitations that make no firm offer.  The solicitation merely urges Mary Forrest to apply for a loan

52.     The solicitations fail to state any amount of credit to be extended, fail to state the rate of interest to be charged, and fail to state the method of computing interest and the length of the repayment period.  The solicitations are so devoid of terms that neither the lender nor Mary Forrest, can determine whether it is advantageous to extend or accept the "offer."

53.      Ameriquest's solicitations do not contain or qualify as "firm offers of credit" under FCRA.

**Adolph Peter Kurt Burggraff**

54.     In April 2003, Adolph Peter Kurt Burggraff was contacted by Ameriquest and offered refinancing terms on his home, including 5.9% interest on a 15 year loan.  Plaintiff had not previously applied for a refinancing loan, and Ameriquest obtained his name and consumer information from a credit reporting agency.

55.     Subsequently, Mr. Burggraff was informed that his "preliminary" terms had changed to terms of 7.151% on a 30 year loan.

56.     Finally, in June, 2003, Mr. Burggraff was informed that the final terms being offered to him were a loan at 9.697% for 30 years.  Mr. Burggraff refused to close on the proposed loan based on the increased terms.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

57.     Ameriquest did not inform Mr. Burggraff that the quoted terms for the refinancing loan were increased over the best available terms due to information in a consumer report. Ameriquest did not provide Mr. Burggraff with the requisite adverse action notices under either FCRA or ECOA.

58.     Ameriquest's regular business practice is to use consumer reports in connection with the prescreening of individuals for whom credit terms will be proposed.  When Ameriquest then offers less favorable terms of credit based in whole or in part on information from the consumers' credit reports, Ameriquest regularly fails to provide consumers with the requisite adverse action notices under either FCRA or ECOA.  These procedures are uniformly engaged in by Ameriquest through its electronic systems that are used throughout the United States.

59.     Ameriquest took adverse action against Mr. Burggraff by offering him less than the best available credit terms based in whole or in part upon information in a consumer report. Ameriquest was a user of consumer reports and took adverse action against Mr. Burggraff in connection with the prescreening, underwriting, and offers of credit to Mr. Burggraff.

60.     Ameriquest failed to provide Mr. Burggraff with any notification, oral, written or electronic, advising Mr. Burggraff of the adverse actions against him, as required by FCRA, nor did Ameriquest provide a written notice as required by ECOA.

61.     As the user of credit reports in connection with such credit transactions form consumers, Ameriquest has the obligation under the FCRA and ECOA to ensure that consumers receive notice of adverse action.  Ameriquest failed to do so, and failed to make arrangements to ensure that anyone else would provide such notice to Mr. Burggraff.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

62.     Ameriquest improperly shifted the burden to Mr. Burggraff to determine that adverse action was taken against him, and failed to disclose to Mr. Burggraff the information required by the FCRA and ECOA.

## CLASS ACTION ALLEGATIONS

63.      Plaintiffs Raymond Quarterman, Jr., Thomas J. Klutho and Mary Forrest bring this action under the FCRA on behalf of themselves and as representatives of the following proposed class of non-borrowers (Sub-class A):

>       All individuals throughout the United States whose consumer reports were obtained or used by Ameriquest in connection with a credit transaction not initiated by them and who did not receive a firm offer of credit from Ameriquest, and who did not obtain a loan from Ameriquest.

64.     Plaintiffs Raymond Quarterman, Jr., brings this action under the FCRA on behalf of himself and as representative of the following proposed sub-class of non-borrowers (Sub-class B):

>       All individuals throughout the United States whose consumer reports were obtained or used by Ameriquest in connection with a credit transaction not initiated by them, and who received from Ameriquest a written solicitation to enter a credit transaction which did not provide the clear and conspicuous disclosures required by 15 U.S.C. § 1681m(d), and who did not obtain a loan from Ameriquest.

65.     Plaintiff Adolph Peter Kurt Burggraff, brings this action under the FCRA and ECOA on behalf of himself and as representative of the following proposed sub-class of non-borrowers (Sub-class C):

>       Residents of the United States who on or after April 2001, were offered less than the best available terms for credit transactions by Ameriquest, based in whole or in part upon information contained in a consumer report, without disclosures being provided to them as required by the Fair Credit Reporting Act and Equal Credit Opportunity Act, and who

failed to receive adverse action notices under each Act, and who did not obtain a loan from Ameriquest.

66.     Excluded from the Class[2] are all directors, officers, agents and/or employees of Ameriquest, and members of their immediate families.

67.     Pursuant to Fed. R. Civ. P. 23, the FCRA and ECOA, this action may be maintained as a class action because all procedural elements are satisfied, as set forth below:

**1. Numerosity**

68.     Ameriquest is in the business of obtaining consumer reports relating to consumers throughout the United States and using credit reports in mass marketing nationwide.  The number of consumers/non-borrowers nationwide with respect to whom Ameriquest obtained consumer reports and solicited the consumer to enter a credit transaction all without undertaking to make a firm offer of credit as required under the FCRA is in excess of several thousand.  The exact number and identity of Sub-

class A Members is unknown to Plaintiffs but can easily be determined from the records of Ameriquest.

69.     The number of consumers/non-borrowers nationwide with respect to who Ameriquest obtained consumer reports and solicited the consumer through a mail piece that did not provide clear and conspicuous disclosures as required by 15 U.S.C. §1681m(d) is in excess of several thousand.  The number and identity of Sub-class B Members is unknown to Plaintiffs, but can easily be determined from the records of Ameriquest.

---

[2] Unless otherwise specified, the terms "the class" or "Class Members" shall refer to the members of all three sub-classes defined above.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

70.     The number of consumers/non-borrowers nationwide with respect to whom Ameriquest took an adverse action under the FCRA and ECOA and failed to provide the information and notices required under the FCRA and ECOA is in excess of several thousand.  The exact number and identity of Sub-class C Members is unknown to Plaintiffs but can easily be determined from the records of Ameriquest.

71.     The Class is so numerous that it would be impractical to join all of the members of the Class within the meaning of Rule 23(a)(1).

### 2. Commonality

72.     On behalf of Sub-class A, Plaintiffs Raymond Quarterman, Jr., Thomas J. Klutho andMary Forrest, bring claims which raise questions of law and fact common to all members of Sub-class A, as contemplated by Rule 23(a)(2). Common issues include:

(a)     Whether Ameriquest violated the FCRA by failing, as a matter of practice, to make a firm offer of credit to Plaintiffs and other consumers after obtaining or using consumer reports on Plaintiffs and other consumers in connection with credit transactions not initiated by Plaintiffs and other consumers;

(b)      Whether Ameriquest was a user of consumer reports when it obtained consumer reports relating to Plaintiffs and other consumers;

(c)     Whether Ameriquest's practice of obtaining consumer reports in connection with credit transactions not initiated by the consumer and then failing to undertake to make a firm offer of credit to the consumer as required by FCRA was willful;

(d)     Whether members of the Class are entitled to recover statutory and punitive damages as a result of Ameriquest's actions in violating the FCRA.

73.     On behalf of the Sub-class B, Plaintiffs Raymond Quarterman, Jr., brings claims which raise questions of law and fact common to all members of Sub-class B, as contemplated by Rule 23(a)(2).  Common issues include:

      (a)      Whether Ameriquest obtained consumer reports in connection with credit transactions not initiated by the consumer and then in providing the consumer with a written solicitation did so without clear and conspicuous disclosures as required by the FCRA;

      (b)      Whether Ameriquest's actions in obtaining consumer reports in connection with credit transactions not initiated by the consumer and then providing the consumer with a written solicitation without clear and conspicuous disclosures as required by FCRA was willful; and

      (c)      Whether members of Sub-class B are entitled to recover statutory and punitive damages as a result of Ameriquest's actions in violating the FCRA.

74.     On behalf of Sub-class C, Plaintiff Adolph Peter Kurt Burggraff brings claims which raise questions of law and fact common to all members of Sub-class C, as contemplated by Rule 23(a)(2).  Common issues include:

      (a)      Whether Ameriquest is a user of consumer reports when it uses consumer reports to set the final terms of credit transactions with Plaintiff and other members of Sub-class C based upon information obtained about Plaintiff and other consumers from consumer reports;

      (b)      Whether Ameriquest violated the FCRA and ECOA when it took adverse action

-16-

against Plaintiffs and other members of Sub-class C based in whole or in part on information contained in consumer reports, failed to properly advise them that adverse actions had been taken against them, and failed to properly provide Plaintiff and other members of Sub-class C with the information and notices required under FCRA and ECOA;

(c)     Whether Ameriquest violated the FCRA and ECOA when it took adverse actions against Plaintiff and other members of Sub-class C based in whole or in part on information contained in consumer reports without providing the notices required under the FCRA and ECOA;

(d)     Whether the actions of Ameriquest in failing or refusing to provide adequate notice as required by the FCRA and ECOA were willful; and

(g)     Whether Plaintiff and other members of the Sub-class C are entitled to recover statutory and punitive damages as a result of Ameriquest's actions in violating the notice requirements of the FCRA and ECOA.

### 3. Typicality

75.     In accordance with the requirements of Fed. R. Civ. P. 23(a)(3), the claims of Plaintiffs Raymond Quarterman, Jr, Thomas J. Klutho and Mary Forrest, are typical of the claims of all other members of Sub-class A, and the representative Plaintiffs have no interests which are adverse or antagonistic to the interests of Sub-class A. The representative Plaintiffs' claims are typical of the claims of Sub-class A because all such claims arise from a series of identical business practices, or a common course of conduct, involving Ameriquest's practice of obtaining

and using consumer reports in connection with credit transactions not initiated by consumers and not undertaking to make the consumers firm offers of credit.

76.     In accordance with the requirements of Fed. R. Civ. P. 23(a)(3), the claims of Plaintiff Raymond Quarterman, Jr., are typical of the claims of all other members of Sub-class B, and the representative Plaintiff has no interests which are adverse or antagonistic to the Class because all such claims from a series of identical business practices, or a common course of conduct, involving Ameriquest's failure to provide clear and conspicuous disclosures as required by 15 U.S.C. § 1681m(d).  The representative Plaintiff's claims are typical of the claims of the sub-Class B because the claims arise from Ameriquest's practice of obtaining and using consumer reports in connection with credit transactions not initiated by consumers and then providing the consumers with written solicitations which do not provide the clear and conspicuous disclosures required by the FCRA.

77.     In accordance with the requirements of Fed. R. Civ. P. 23(a)(3), the claims of Plaintiff Adolph Peter Kurt Burggraff are typical of all other members of Sub-class C, and the representative Plaintiff has no interests which are adverse or antagonistic to the interests of Sub-class C.  The representative Plaintiff's claims are typical of the claims of Sub-class C because all such claims arise from a series of identical business practices, or a common course of conduct, involving the failure of Ameriquest to notify consumers that adverse actions had been taken against them, and Ameriquest's failure to provide other required information to consumers, in violation of the FCRA and ECOA.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

#### 4. Adequacy

78.      In accordance with the requirements of Fed. R. Civ. P. 23(a)(4), the representative

Plaintiffs and their counsel will fairly and adequately represent and protect the interests of each

member of the Classes.  The representative Plaintiffs and each Sub-class share common interests,

and the representative Plaintiffs are committed to the vigorous prosecution of this action and

have retained competent counsel experienced in class action litigation.

### Rule 23(b)(3) Allegations

79.      A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.  Absent a class action, Members of each Sub-class will continue

to suffer damages, and will continue to be harmed by Ameriquest obtaining and using their

consumer reports without a permissible purpose as required by law, will continue to be harmed

by Ameriquest obtaining and using their consumer reports in connection with credit transactions

not initiated by them followed by Ameriquest making written solicitations without providing

clear and conspicuous disclosures required by the FCRA, and will continue to be harmed by the

failure of Ameriquest to provide adverse action notices as required by law.  The violations of the

law by Ameriquest will proceed without remedy while Ameriquest continues to ignore its legal

obligations under the law, and consumers will be left unaware of the violation of their rights on a

daily basis.

80.      Most individual Sub-class Members have little ability to prosecute an individual action

due to the complexity of the issues involved in this litigation, the significant costs attendant to

litigation on this scale, and the comparatively small, although significant, damages available to

individual Class Members.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

81.     This action will result in an orderly and expeditious administration of each Sub-classes' claims.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.

82.     This action presents no difficulty that would impeded its management by the Court as a class action.  When the liability of Ameriquest has been adjudicated, the damages of each Sub-class Member can be administratively determined.  In addition, a willful violation of the law may be remedied by this Court through imposition of a fine based upon each violation of the FCRA and ECOA.  A class action is superior to other available methods of the fair and efficient adjudication of each of Sub-class Member's claim.

83.     The questions of fact common to the claims of each member of Sub-class A, relating to the uniform failure to make a firm offer of credit after obtaining or using consumer reports relating to Plaintiffs and other consumers, predominate over any facts affecting only individual members of Sub-class A.  Individual reliance is not a requirement to establish liability under the FCRA.

84.     The questions of fact common to the claims of each member of Sub-class B, relating to the uniform failure to provide the clear and conspicuous disclosures required by the FCRA, predominate over any facts affecting only individual members of the Sub-class B.  Individual reliance is not a requirement to establish liability under the FCRA.

85.     The questions of fact common to the claims of each member of Sub-class C, relating to the uniform failure to provide adverse action notice to consumers by Ameriquest, predominate over any facts affecting only individual members of the Sub-class C.  Individual reliance is not a requirement to establish liability under the FCRA or ECOA.

MDL NO. 1715
                    CONSOLIDATED COMPLAINT FOR CLAIMS OF
                    NON-BORROWERS

86.     The questions of law common to the claims of each member of Sub-class A, relating to Ameriquest's uniform practice of obtaining consumer reports on individuals in connection with credit transactions not initiated by the individuals and failing to obtain a firm offer of credit, predominates over any questions of law affecting only individual members of the Sub-class A.

87.      The questions of law common to the claims of each member of Sub-class B, relating to Ameriquest's uniform practice of providing written solicitations which do not provide the clear and conspicuous disclosures by the FCRA, predominates over any questions of law affecting only individual members of the Sub-class B.

88.     The questions of law common to the claims of each member of Sub-class C, relating to the adequacy of any notice provided by Ameriquest, or the complete lack of any notification by Ameriquest, predominates over any questions of law affecting only individual members of the Sub-class C.

**Notice To The Class**

89.     Notice may be given by a combination of mailed and published notice, which notice is properly paid for by Ameriquest.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT (No Permissible Purpose)**

90.     Plaintiffs Raymond Quarterman, Jr, Thomas J. Klutho and Mary Forrest reallege and incorporate herein the allegations of Paragraphs 1 to 89.

91.     Ameriquest has a corporate policy and business practice of obtaining and using consumer reports in connection with soliciting individuals to enter credit transactions not initiated by the individuals and failing to undertake to extend the individuals firm offers of credit.

92.     In its nationwide practice of obtaining consumer reports on individuals in connection with credit transactions not initiated by them and then refraining from making a firm offer of credit to such individuals, Ameriquest has willfully ignored the requirements of the FCRA, and has made a business decision to fail or refuse to comply with the requirements of the FCRA.

93.     The actions of Ameriquest constitute willful non-compliance with the requirements of the FCRA.  15 U.S.C. § 1681b(c).  Specifically, Ameriquest's use and acquisition of consumer reports, as described in the preceding paragraphs, is not for a permissible purpose under the FCRA.

94.     Plaintiffs Raymond Quarterman, Jr, Thomas J. Klutho and Mary Forrest and Class Members of Sub-class A have suffered damages as a result of Ameriquest's willful violation of the FCRA, including statutory damages, nominal damages, punitive damages, costs and their attorneys' fees herein.

**SECOND CAUSE OF ACTION (Absence of Clear and Conspicuous Disclosures)**

95.     Plaintiff Raymond Quarterman, Jr., realleges and incorporate herein the allegations of Paragraphs 1 to 89.

96.     Ameriquest has a corporate policy and practice of obtaining and using consumer reports in connection with soliciting consumers to enter credit transactions not initiated by them and then sending the consumers written solicitations to enter the credit transactions without providing in a clear and conspicuous manner the disclosures required to be provided by the FCRA.

MDL NO. 1715
                              CONSOLIDATED COMPLAINT FOR CLAIMS OF
                              NON-BORROWERS

97.     Ameriquest's adoption of its policy and its practice and procedure of obtaining consumer reports on individuals in connection with credit transactions not initiated by the individuals, and then failing to provide with each written solicitation made to the individuals regarding the transactions the clear and conspicuous disclosures required by the FCRA, is willful.

98.     Plaintiff Raymond Quarterman, Jr. and Class Members of Sub-class B have suffered damages as a result of Ameriquest's willful violation of the FCRA, including statutory damages, nominal damages, punitive damages, costs, and their attorneys' fees herein.

**THIRD CAUSE OF ACTION (Failure to Provide Adequate FCRA Adverse Action Notice)**

99.     Plaintiff Adolph Peter Kurt Burggraff realleges and incorporates herein the allegations of Paragraphs 1 to 89.

100.    Ameriquest has a corporate policy and practice of using consumer reports in connection with the offering of credit terms to consumers.

101.    When Ameriquest determines that information contained in the consumer report of a consumer report is derogatory based in whole or in part on the consumer's credit score or consumer information, Ameriquest has instituted a corporate policy of quoting the consumers terms less favorable than its best available terms.

102.    Ameriquest was a user of consumer reports and took adverse action against the Plaintiff Adolph Peter Kurt Burggraff and members of Sub-class C in quoting them less favorable final credit terms based in whole or in part on information contained in their consumer reports. Ameriquest was obligated to provide an adverse action notice to Plaintiff  Adolph Peter Kurt Burggraff and members of Sub-class C pursuant to 15 U.S.C. § 1681m, and failed to do so in violation of the FCRA.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

103.    Ameriquest has failed to institute reasonable procedures to ensure compliance with the adverse action notice requirements of the FCRA.

104.    In taking adverse action based in whole or in part on information contained in a consumer report, Ameriquest has willfully ignored the requirements of FCRA, and has made a corporate decision to fail or refuse to provide adequate notice to such consumers of such adverse action.  Instead, Ameriquest has willfully chosen to attempt to place upon the consumer the burden of finding out whether adverse action has been taken, by whom, and the extent of their rights under the FCRA.  Additionally, Ameriquest has failed to inform Plaintiff Adolph Peter Kurt Burggraff and other members of Sub-class C that it quoted them terms other than the best available credit terms based on their consumer reports.

105.    Plaintiff Adolph Peter Kurt Burggraff and members of Sub-class C have suffered damages as a result of Ameriquest's willful violation of the FCRA, including statutory damages, nominal damages, punitive damages, costs and their attorneys' fees herein.

**FOURTH CAUSE OF ACTION (Failure to Provide ECOA Adverse Action Notice)**

106.    Plaintiff Adolph Peter Kurt Burggraff realleges and incorporates herein the allegations of Paragraphs 1 to 89.

107.    In quoting Plaintiff Adolph Peter Kurt Burggraff and other members of Sub-class C credit terms based in whole or in part on their consumer reports, Ameriquest was a user of consumer reports and took adverse action against Plaintiff  Adolph Peter Kurt Burggraff and other members of Sub-class C.  Ameriquest was obligated to provide an adverse action notice to Plaintiff Adolph Peter Kurt Burggraff and other members of Sub-class C pursuant to 15 U.S.C. § 1691, and failed to do so in violation of ECOA.

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

108.    Ameriquest has not complied with the notification requirements of ECOA, and has otherwise violated the Act.

109.    Ameriquest has failed to institute reasonable procedures to ensure compliance with the requirements of the ECOA.

110.    The actions of Ameriquest constitute willful noncompliance with the requirements of ECOA.

111.    Plaintiff Adolph Peter Kurt Burggraff and members of Sub-class C have suffered damages as a result of Ameriquest's willful violation of ECOA, including costs and their attorneys' fees herein.  Plaintiff Adolph Peter Kurt Burggraff is additionally entitled to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of others similarly situated, demand judgment against Ameriquest as follows:

1. Certify this as a class action pursuant to Fed. R. Civ. P. 23 and designate Plaintiffs as adequate representatives of each representative Sub-class;

2. Award Plaintiffs and members of Sub-classes A and B statutory damages within the Court's discretion of not more than $1,000.00 for each separate violation, together with punitive damages for Ameriquest's willful violations of the FCRA;

3. Award Plaintiffs and members of Sub-class C statutory damages within the Court's discretion of not more than $1,000 for each separate violation; together with punitive damages for Ameriquest's willful violations of the FCRA; and (iii) ECOA punitive damages of $500,000or 1% of the net worth of Ameriquest;

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

4. Issue an injunction ordering Defendants to provide to Plaintiff Adolph Peter Kurt Burggraff and members of Sub-class C the notifications required by ECOA and ordering Defendants to establish and maintain appropriate procedures adequate to ensure compliance with ECOA;

5. Award Plaintiffs reasonable attorneys' fees, prejudgment interest, and the costs and expenses incurred in this action, including experts' fees; and

6. Such other relief as may be appropriate under the circumstances.

## TRIAL BY JURY

Plaintiffs demand trial by jury of all issues so triable in this action.

Respectfully submitted,

Dated: December  6, 2006

| | |
|---|---|
| */s/ Kelly M. Dermody* | */s/ Gary Klein* |
| Kelly M. Dermody | Gary Klein |
| Kelly M. Dermody (CA Bar No. 171716) | Gary Klein |
| Caryn Becker (CA Bar No. 196947) | Elizabeth Ryan |
| LIEFF, CABRASER, HEIMANN | Shennan Kavanagh |
|   & BERNSTEIN, LLP | RODDY KLEIN & RYAN |
| 275 Battery Street, 30th Floor | 727 Atlantic Avenue |
| San Francisco, CA  94111-3339 | Boston, MA  02111-2810 |
| Telephone:  (415) 956-1000 | Telephone:  (617) 357-5500 ext. 15 |
| Facsimile:   (415) 956-1008 | Facsimile:   (617) 357-5030 |

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

_____*/s/ Jill H. Bowman*_____

    Jill H. Bowman
Terry Smiljanich
Jill Bowman
JAMES, HOYER, NEWCOMBER
  & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL 33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

*Plaintiffs' Co-Lead Counsel*


/s/ Marvin Miller
Marvin A. Miller
MILLER FAUCHER AND CAFFERTY LLP
30 N. LaSalle Street, Suite 3200
Chicago, IL 60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485

*Plaintiffs' Liaison Counsel*

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

IN RE AMERIQUEST MORTGAGE CO.
MORTGAGE LENDING PRACTICES
LITIGATION

MDL No. 1715
Lead Case No. 05-cv-07097

Centralized before the
Honorable Marvin E. Aspen

**PROOF OF SERVICE**

I, Jill Bowman, hereby certify that on this 6th day of December, 2006, a true and correct
copy of the following document was filed electronically:

**CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS UNDER THE FAIR CREDIT REPORTING ACT
AND EQUAL CREDIT OPPORTUNITY ACT**

Notice of filing was sent by electronic mail to all Filing Users by operation of the Court's
electronic filing system. Parties may access this filing through the ECF system.

I further certify that on December 6, 2006, a true and correct copy of this Proof of
Service was filed electronically with the Court.

/s/ Jill H. Bowman
JILL H. BOWMAN

-28-

MDL NO. 1715
CONSOLIDATED COMPLAINT FOR CLAIMS OF
NON-BORROWERS