**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. | ) | |
| MORTGAGE LENDING PRACTICES | ) | |
| LITIGATION | ) | MDL No. 1715 |
| | ) | |
| _____ | ) | Lead Case No. 05-cv-07097 |
| | ) | |
| THIS DOCUMENT RELATES TO ALL | ) | Centralized before Judge |
| INDIVIDUAL ACTIONS | ) | Marvin E. Aspen |
| | ) | |

**REPLY IN SUPPORT OF ECLG PLAINTIFFS' FOURTH MOTION
FOR REASSIGNMENT OF RELATED CASES; ALTERNATIVELY,
<u>PLAINTIFFS' MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY</u>[1]**

The ECLG plaintiffs reply as follows to defendants' "Statement" and "Supplemental

Statement" filed in response to Plaintiffs' Fourth Motion For Reassignment of Related Cases:

**I.      INTRODUCTION**

From defendants' filings, it is now clear that defendants <u>do not disagree</u> that the five

cases are related to actions pending within the Ameriquest MDL proceeding; nor do they oppose

reassignment of any of the cases on any ground set forth in LR40.4(c).  (Defs' Statement, p. 1).

Rather, defendants oppose reassignment of three of the five cases, i.e., <u>Manier</u>, <u>Perez</u> and <u>Whitsett</u>,

on the basis of another argument:  that venue is not proper in the Northern District of Illinois.[2]

---

[1]Since the filing of defendants' motion to dismiss, plaintiff, on November 29, 2006, filed a motion (document #313) before Judge Aspen to reassign this action as related to similar, earlier-filed actions currently pending within the Ameriquest MDL proceeding, MDL No. 1715 and Lead Case No. 05-7097.  Pursuant to custom, a courtesy copy of that motion was delivered to this Court's chambers on November 30, 2006.

[2]Plaintiffs note that, in <u>Manier</u>, none of the other defendants, i.e., Homeq Servicing Corporation, Elen or Prime Plus Mortgage, Inc., have objected to venue.

(Defs' Statement, pp. 1-2, and Supplemental Statement, p. 1).

However, defendants fail to understand that this emerging dispute concerning venue is, itself, a common issue of fact under LR40.4(a)(2) that constitutes yet another ground for reassigning these cases to a single judge: in all three cases, the venue question boils down to whether the same defendants do business in the Northern District of Illinois. Currently, the three cases pend before three different judges. Other cases with out-of-state plaintiffs have been filed, such as Freeburg and Rowan v. Ameriquest, et al., 06 C 5342 (N.D.Ill.), or will soon be filed against the same defendants in the Northern District of Illinois. This situation not only presents a risk of divergent rulings on the same issue in the Northern District, but would be a waste of judicial time and effort if the cases are not transferred. These are precisely the types of concerns LR40.4 is designed to address. See, e.g., Fairbanks Capital Corp. v. Jenkins, 2002 U.S. Dist. LEXIS 26297, *7 (N.D.Ill.); Smith v. Check-N-Go of Illinois, 200 F.3d 511, 513 n.* (7th Cir. 1999). Therefore, in the interest of uniform rulings on a common issue and the "substantial savings of judicial time and effort" that would result, LR40.4(b)(2), this Court should first grant plaintiffs' Fourth Motion To Reassign, then decide the common issue of venue.

Defendants' "Statement" incorrectly accuses plaintiffs of "ignoring" the venue rules. (p. 2). In fact, plaintiffs' complaint in each case alleges, verbatim, that venue is proper because "defendants transact business in the District and are deemed to reside here." (See Exhibit 1 to plaintiffs' Motion to Reassign, p. 1 ¶ 2; Exhibit 2 to plaintiffs' to the same Motion, p. 1, ¶ 2; and Exhibit 3 to the same motion, p. 1 ¶ 2). Rather, it is defendants who are ignoring the venue rules by failing to acknowledge that doing business in the Eastern Division of the Northern District of Illinois is a ground for venue here under 28 U.S.C. § 1391(b)(1) and § 1391(c)(see below).

Defendants' real argument, which they do not give any prominence, can only be inferred from one sentence in their Memoranda in support of the Motions to Dismiss they filed in Perez and Whitsett, (Exhibits B and A, respectively, to Defs' Statement). Defendants argue that venue is improper here because "...all defendants do not reside in Illinois...." (Defs' Memoranda, p. 2). However, this factual representation is false, as plaintiffs' evidence below proves: because defendants all transact business here, they are deemed to reside here for purposes of venue. 28 U.S.C. § 1391(c). Therefore, defendants' objection to reassignment is frivolous and appears to be yet another attempt to delay this proceeding - this time by delaying the reassignment of cases to the MDL precisely at the moment when the Court has clearly stated that the transfer/reassignment process should be nearing completion and that discovery, motion practice and settlement mediation should get underway. For these reasons, this Court should grant, in full, Plaintiffs' Fourth Motion To Reassign As Related.

## II.    PROCEDURAL POSTURE

While defendants have requested that this Court deny the motion to reassign Manier, Perez and Whitsett without prejudice and await rulings by the originally assigned Judges on defendants' motions to dismiss, (Defs' Statement, p. 2), plaintiffs respectfully point out to the Court that Judge Gettleman in Perez and Judge Gottschall Whitsett have both entered and continued defendants' motions to dismiss in light of the filing of plaintiffs' Motion For Reassignment of Related Cases.[3]  Through the Orders they have now issued and by means of their comments to

---

[3]In Manier, Judge Lefkow has so far been silent on the subject only because defendants have not yet (as of December 22, 2006) filed any motion to dismiss, although they have announced their intention to do so. (Defs' Supplemental Statement, p. 1). Defendants filed their motions in Whitsett and Perez on November 27, 2006.

counsel from the bench, both judges indicated that they will wait to see how this Court rules on plaintiffs' Motion to Reassign before proceeding with briefing and ruling on defendants' motions.[4] A copy of the minute Order entered by Judge Gettleman on December 5, 2006 in <u>Perez</u>, which continues defendants' motion to January 11, 2007, is attached hereto as <u>Exhibit A</u>. In <u>Whitsett</u>, Judge Gottschall entered and continued defendants' motion to dismiss (as well as a related motion by plaintiff, Motion For Leave To Take Limited Discovery) to January 25, 2007, although no minute Order has yet been entered in the electronic docket for the case (as of December 22, 2006).[5] There is wisdom implicit in this approach. Once again, plaintiffs reiterate that this Court should take control of the issue of venue that is common to these and other cases by first granting plaintiffs' Fourth Motion To Reassign Related Cases, then ruling on the venue matter.

## III.    ARGUMENT

### A.    Introduction

Venue in this case is clearly proper in the Eastern Division of the Northern District of Illinois under 28 U.S.C. § 1391(b)(1) in light of § 1391(c). The plaintiffs' complaints in <u>Manier</u>, <u>Perez</u> and <u>Whitsett</u> all allege that all defendants have or had an interest in plaintiffs' loans. (See <u>Exhibits 1</u>, <u>2</u> & <u>3</u> to Plaintiff's Fourth Motion To Reassign), and ¶ 2 of each complaint alleges that all defendants transact business in the Northern District of Illinois, Eastern Division.[6] Defendants

---

[4] Indeed, before Judge Gottschall on December 21, 2006, defendants' own counsel asked the Court to enter and continue defendants' motion to dismiss in order to await this Court's ruling on the present motion.

[5] Additionally, the plaintiff in <u>Whitsett</u>, 06-cv-5342, filed a response to defendants' motion to dismiss on December 8, 2006 (#22).

[6] Defendants' Memoranda in both <u>Perez</u> and <u>Whitsett</u> mistakenly state that plaintiffs complaints allege that defendants have been doing business in Michigan. (<u>Whitsett</u> Memo., p. 1, <u>Perez</u> Memo, p. 2).

present no evidence whatsoever to the contrary in either their motions to dismiss or their Statement and Supplement Statement.

Defendants' Statement and motions to dismiss quite simply ignore 28 U.S.C. § 1391(c) as a possible ground for venue under § 1391(b)(1). Under § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." All four named defendants in the three actions (Ameriquest Mortgage Company ("Ameriquest"), Argent Mortgage Company, LLC ("Argent"), AMC Mortgage Services, Inc. ("AMC") and Ameriquest Mortgage Securities, Inc. ("AMS")(collectively, "Ameriquest defendants")) are corporations for venue purposes. Defendants do not dispute that. Further, all four were, at the time of commencement of this action, subject to personal jurisdiction in the U. S. District Court for the Northern District of Illinois, Eastern Division. That is to say, all four had, at that time, sufficient contacts with this District by virtue of the extensive business they do here (see below). Since jurisdiction in these actions is not founded on diversity, pursuant to § 1391(b)(1) plaintiffs are permitted to bring the actions in "a judicial district where any defendant resides, if all defendants reside in the same State...."

Defendants' main or only argument is that not all four defendants do business within the Northern District of Illinois. (Defs' Memoranda, p. 2). However, and first of all, plaintiffs note that this is a fact question; defendants' legal argument depends on the veracity of this assertion (and defendants have presented no evidence). While plaintiffs present evidence of defendants' extensive business activities in the District below, more conclusive evidence of where defendants do business lies exclusively, given the state of public records, in the hands of defendants themselves. In such a circumstance, if the Court finds the only evidence available to plaintiffs not to be determinative,

it is only fair that plaintiffs be allowed to take limited, document discovery to better establish where defendants do business. Therefore, should the Court find plaintiffs' evidence below insufficient to deny defendants' motion, in the alternative plaintiffs respectfully requests that opportunity. Once again, the Court should grant plaintiffs' Fourth Motion To Reassign first, then rule on the venue issue, because any discovery required to resolve the issue could be consolidated, saving all parties time and expense.

> **B.** **Venue Is Proper in the Northern District of Illinois**

When considering a motion to dismiss, the Court assumes as true all factual allegations contained in the complaint and makes all possible inferences in favor of the plaintiff. Gorski v. Troy, 929 F.2d 1183, 1186 (7th Cir. 1991).

> **1.** **All Defendants Are § 1391(c) "Residents," I.e., They Are Subject to Personal Jurisdiction Here**

All four Ameriquest defendants were subject to personal jurisdiction in the Northern District of Illinois, Eastern Division, at the time the three actions were commenced (on October 2 and 3, 2006). Under § 1391(c), a corporate defendant resides in the District if its contacts with the district would be sufficient to subject it to personal jurisdiction there.

All four defendants had "sufficient contacts" within the District at the time of filing to subject them to personal jurisdiction here, as shown below. Also relevant is the fact that three of the four defendants - Ameriquest, AMC and AMS - are corporate affiliates of each other or have subsidiary relationships with each other. The ultimate parent company of all three defendants is ACC Capital Holdings Corporation. (See Exhibit B).

> **a.** **Defendant Ameriquest Does Business Here**

Within this corporate family, Ameriquest Mortgage Company ("Ameriquest") is the

entity that underwrites and originates mortgage loans to consumers such as plaintiff. (Exhibit B). Ameriquest does business here - tens if not hundreds of millions of dollars in business. First, Ameriquest is registered with the Illinois Secretary of State to do business in the state of Illinois, as shown in Exhibit C. It uses National Registered Agents, Inc., 200 West Adams Street in Chicago, as its registered agent for service of process (Exhibit C). Ameriquest (as well as AMC and Argent) operates or operated 39 branch offices throughout Cook County and elsewhere in the Northern District of Illinois. (Exhibit D). Ameriquest, which ¶ 8 of all three plaintiffs' complaints alleges is the largest sub-prime, retail mortgage lender in the U.S., has originated and continues to originate thousands of loans in Illinois and in the Northern District in particular. For example, in Cook County alone during February, 2006, the last full month for which Cook County mortgage records are available from LEXIS, Ameriquest recorded mortgages on 107 properties. (See Exhibit E). Additionally, in Cook County during the first part of March, 2006 alone (the last partial month for which Cook County records are available from Lexis), Ameriquest recorded mortgages on 146 properties. (See Exhibit F). These snapshot-in-time examples are just the tip of iceberg.

By making thousands of loans here, Ameriquest has certainly done business in this forum. Thus, pursuant to § 1391(c), it is evident that Ameriquest had more than sufficient contacts with the Northern District of Illinois at the approximate time this action was commenced.

### b. Defendant AMC Does Business Here

AMC Mortgage Services, Inc. ("AMC"), is the Ameriquest affiliate responsible for servicing many of the loans originated by Ameriquest. (See allegations at ¶¶ 10 and 18 of plaintiff's complaint). It also does business here. It has or has had numerous branches in the Northern District, at least one as of August, 2006. (Exhibit D). Typically, Ameriquest transfers the servicing rights

to AMC following Ameriquest's closing. AMC, too, is registered with the Illinois Secretary of State to do business in the state of Illinois, as shown in Exhibit G. AMC also uses National Registered Agents, Inc., 200 West Adams Street in Chicago, as its registered agent for service of process. (Exhibit G).

Most important, AMC performs the servicing for thousands of mortgage loans originated in Illinois by Ameriquest. Specifically, this means that each month AMC receives, through the mail or otherwise, hundreds or thousands of monthly mortgage payments - totaling hundreds of thousands or millions of dollars - from as many Illinois residents. Although the mortgage for an Ameriquest-originated mortgage loan is not typically recorded in the name of the servicer, in Cook County alone in February, 2006, AMC recorded five mortgages in its name (see Exhibit H), while in Cook County alone in March, 2006, it recorded 10 mortgages in its name. (Exhibit I).

More significant, a LEXIS search of combined Illinois real estate transactions (including deed transfers and mortgages) for selected counties shows that AMC was involved in 134 real estate transactions in Illinois in Cook, Dupage Kane, Lake, McHenry and Will counties (all within the Northern District of Illinois). The printed results of this search are attached in Exhibit J. As the Court can see, many of these transactions occurred in August, September, October and November of 2006, i.e., contemporaneously with the commencement of the three actions.

Perhaps because of the extensive business it does here, in none of the hundreds of cases filed against it in the Northern District of Illinois has AMC ever sought to contest the allegation that it does business here. (See, e.g., Exhibit K, ¶ 2)("AMC Mortgage Services, Inc., does not contest subject matter jurisdiction, personal jurisdiction, or venue").

By servicing hundreds or thousands of loans and involving itself in hundreds of real estate transactions in the Northern District of Illinois, AMC quite obviously does business in this forum. Thus, pursuant to § 1391(c), it is evident that AMC, too, had more than "sufficient contacts" with the Northern District of Illinois at the time this action was commenced.

<u>c.</u>        **Defendant AMS Does Business Here**

Ameriquest Mortgage Securities, Inc. ("AMS"), is the Ameriquest subsidiary to which Ameriquest assigns or transfers the ownership interest in many of the loans it has originated. (See, e.g., <u>Exhibit K</u>, ¶ 11). In other words, AMS is in the business of holding title to mortgage loans made by Ameriquest Mortgage Company. (<u>Id</u>.; <u>see also</u>, allegations at ¶¶ 11 and 18 of plaintiff's complaint). As such, however, its activities are obscure and hidden from public view.[7] Nevertheless, AMS does business in Illinois, as proven below.

Though not registered to do business in the State, a LEXIS search of combined public records for selected counties in Illinois shows that AMS has been involved in 875 real estate transactions, primarily in Cook, Dupage Kane, Lake, McHenry and Will counties (all within the Northern District of Illinois). A mere sampling of the printed results of this search is attached hereto in <u>Exhibit L</u>. Review of the documents in <u>Exhibit L</u> shows that the sales transactions occurred throughout 2004, 2005 and 2006, proving that AMS held title to hundreds of loans in Illinois and that it performed hundreds of large business transactions in the State leading up to the time plaintiff

---

[7]Plaintiffs ask the Court to take judicial notice of the fact that, unlike information about the original creditor, the servicer and the mortgagee, which by law must be disclosed to the borrower or in public records, there is <u>no legal obligation</u> to disclose, anywhere to anyone, any information about the actual owner or holder of a mortgage loan. Consequently, it is difficult to prove, at least from information that is publically available, where such a defendant does business. Therefore, as further explained below, plaintiffs respectfully request the opportunity to take limited document discovery.

commenced this action. Review also shows that the vast majority of these transactions were judicial foreclosure sales in which AMS held title to the loan prior to sale, which was conducted in Illinois. This proves that AMS owns and holds title to loans originated in Illinois (by Ameriquest), mortgaged by Illinois properties, where the mortgagors are Illinois residents, and that it was a party to sales transactions that took place in Illinois. It also shows that AMS is availing itself of Illinois state courts and the benefits of Illinois mortgage foreclosure law to recover the proceeds of notes it holds from Illinois residents. The average sales price (where such is listed) appears to have been about $100,000. As a rough approximation, then, AMS has transacted $87 million worth of business in Illinois in approximately the last three years.

In addition, in <u>Jones v. Ameriquest, et al</u>., 05 C 0432 (N.D.Ill.), a case which went to summary judgment earlier this year, AMS filed an answer in which it admitted that "Ameriquest subsequently assigned ownership of the loan to defendant AMS" and that "AMS is the current holder or owner of the loan." (See <u>Exhibit M</u>, ¶ 15). Similarly, in no lawsuit in which Illinois plaintiffs have sued all three defendants in the Northern District of Illinois has AMS ever once contested venue or personal jurisdiction. (<u>See, e.g.</u>, <u>Exhibit M</u>, ¶ 2; <u>Exhibit N</u>, ¶ 2; <u>Exhibit O</u>, ¶ 2)("AMS does not contest subject matter jurisdiction, personal jurisdiction, or venue").

AMS' contacts with Illinois and this District are more than sufficient to subject it to personal jurisdiction here. Ameriquest purposefully assigned title to loans it made to Illinois residents, in Illinois and with Illinois properties as security, to its wholly-owned subsidiary, AMS. AMS, for its part, purposefully purchased or accepted title to hundreds of loans to Illinois residents mortgaged by Illinois property. (Note that these transfers are really the passing of ownership from the right to the left hands of the same company). Further, as shown above and in <u>Exhibit L</u>, in

hundreds of cases it also re-sold properties to Illinois buyers in order to receive payment on the notes it held.

By purchasing hundreds of loan obligations of persons and properties located here and re-selling properties to Illinois purchasers, AMS has obviously done business in this forum.

Furthermore, plaintiffs allege and have shown here that Ameriquest and AMS created and accepted continuing obligations between plaintiff and AMS when Ameriquest assigned or transferred the ownership interest in the loan to AMS to hold (and the servicing rights to AMC). In these circumstances, if two of the three, related corporate entities do business in the District, then the third, AMS, surely also does business here. They are limbs of the same corporate structure.

Plaintiffs believe that the sale of these loans was done pursuant to written policies or agreements among defendants but, because the information is not publically available, plaintiff cannot prove this without limited document discovery. Given the opportunity for limited discovery by the Court, plaintiffs would request from defendants: (1) all contracts involving transfer of rights and obligations between Ameriquest and AMS, Argent and AMS, Ameriquest and AMC, Argent and AMC and between AMC and AMS and (2) a list of all loans AMS had an ownership interest in in Illinois at the time this lawsuit was filed.

### d. Defendant Argent Does Business Here

Defendant Argent also does business in the Northern District of Illinois, Eastern Division. It is registered with the Secretary of State and has maintains its registered agent in downtown Chicago. (Exhibit P). Although Argent does not make loans directly to consumers but, instead, through mortgage brokers, it has or has had at least two operational branches in the Northern District of Illinois. (See Exhibit Q). On its own loan documents for the loan in Manier, for instance,

11

Argent printed its address at 2550 Gold Road, East Tower, 10th Floor, Rolling Meadows, Illinois, 60008! (See Manier complaint, Exhibit 2 to Plaintiffs' Fourth Motion To Reassign, Exhibits A, C, D, F, H, K, M & N). Finally, a Lexis search of combined Illinois real estate records shows that Argent has been involved in 901 loans or property sales in Illinois, primarily in Cook, Dupage, Lake and Will counties in the month of September, 2006 alone! (Exhibit ). There is no question that Argent does business here.

> **2.    The Court Should Take Judicial Notice That No Defendant, Including AMS Mortgage Securities, Inc., Has Ever Contested Personal Jurisdiction In The Northern District Of Illinois**

Plaintiffs respectfully request that, pursuant to F.R.E. Rule 201, the Court take judicial notice of all of the pending cases against defendants within the MDL proceeding in which (A) the case was originally filed in the Northern District of Illinois and (B) not a single defendant, including Ameriquest Mortgage Securities, Inc., has contested either personal jurisdiction or venue. Because Ameriquest Mortgage Securities, Inc., has never contested personal jurisdiction, it is apparent that it does business here. (See, e.g., Exhibit M, ¶ 2; Exhibit N, ¶ 2; Exhibit O, ¶ 2)("AMS does not contest subject matter jurisdiction, personal jurisdiction, or venue"). AMS should be estopped from successfully claiming now that it does not do business here.

> **3.    Previously, Defendants Actively Stipulated To Venue In The Northern District of Illinois In At Least 19 Other Cases (now in the MDL) Involving Loans Originated In States Other Than Illinois**

Defendants Ameriquest and AMC have never objected to venue in the Northern District of Illinois before, even though at least 19 cases were filed against them recently in the District that involve plaintiffs, loans, and properties located outside of the District and, in nearly all of these cases, in another state. In all of the following cases, plaintiffs' loan transactions occurred

in the states indicated, and plaintiffs filed their cases in this District, naming both Ameriquest and

AMC as defendants (except for <u>Jewell</u>, in which Ameriquest is the only defendant). Neither

Ameriquest nor AMC filed an objection to venue in any case:

1. <u>Applegate et al v. Ameriquest Mortgage Company, et al.</u>, 06-4867, Brandenton, Florida

2. <u>Barletta v. AmeriQuest Mortgage Company, et al.</u>, 06-4560, East Leroy, MI

3. <u>Calder v. Ameriquest Mortgage Company, et al.</u>, 06-5146, Fishkill, NY

4. <u>Cashen et al v. AmeriQuest Mortgage Company, et al.</u>, 06-4683, Algonquin, IL

5. <u>Cleveland v. Ameriquest Mortgage Company, et al.</u>, 06-4306, Illwaco, WA

6. <u>Dearden v. Ameriquest Mortgage Company, et al.</u>, 06-2912, Shoreline, WA

7. <u>Dougherty et al v. Ameriquest Mortgage Company, et al.</u>, 06-2482, Aldan, PA

8. <u>Geis et al v. Ameriquest Mortgage Company, et al.</u>, 06-1716, Sparks, NV

9. <u>Gelman et al v. Ameriquest Mortgage Company, et al.</u>, 06-4684, Coral Springs, FL

10. <u>Grabowski v. Ameriquest Mortgage Company, et al.</u>, 06-2549, Village of Lakewood, IL

11. <u>Jewell v. Ameriquest Mortgage Company, et al.</u>, 06-269, Springfield, OH

12. <u>Kessler v. Ameriquest Mortgage Company, et al.</u>, 06-4999, Tamarac, FL

13. <u>Lappin v. Ameriquest Mortgage Company, et al.</u>, 06-5147, Brimfield, IL

14. <u>Leach v. Ameriquest Mortgage Company, et al.</u>, 06-5000, Baltimore, MD

15. <u>Rodriguez v. Ameriquest Mortgage Company, et al.</u>, 06-2187, Livonia, MI

16. <u>Solnin v. Ameriquest Mortgage Company, et al.</u>, 06-4866, Plainview, NY

17. <u>Thibodeau v. Ameriquest Mortgage Company, et al.</u>, 06-5148, Claremont, NH

18.    <u>Warren v. Ameriquest Mortgage Company, et al.</u>, 06-4415, Portland, OR

19.    <u>Wessel v. Ameriquest Mortgage Company, et al.</u>, 06-1899, Carlyle, IL

Moreover, not only did Ameriquest and AMC not object to venue in these cases, they also <u>consented</u> and <u>stipulated</u> to have these cases reassigned to the Ameriquest MDL proceeding in the Northern District of Illinois!  For instance, <u>Exhibit S</u> is a stipulation that Ameriquest's, AMC's and AMS' own counsel drafted and executed for the reassignment of six of the cases listed above - <u>Geiss</u>, <u>Wessel</u>, <u>Rodriguez</u>, <u>Dougherty</u>, <u>Grabowski</u> and <u>Dearden</u>.  In some instances, defendants themselves were the <u>movants</u> in motions to reassign that included cases on the list above.  All of the above cases now pend in the Ameriquest MDL.

If defendants are so concerned about venue now, why didn't they object or refuse to stipulate then to the re-assignment of cases that were filed in the Northern District of Illinois but that involve loan transactions in other states?  Defendants' active consent then suggests that defendants' objection now is frivolous.

**<u>4.</u>    Other Considerations Weigh In Favor of Granting Plaintiffs' Motion To Reassign**

There are additional reasons why the Court should grant plaintiffs' Fourth Motion To Reassign.  First, the three case will end up in the Ameriquest MDL proceeding, whatever the outcome of defendants' motion.  Defendants have already conceded this point. (Defs' Memoranda., p. 3).  These cases are substantively no different from scores of other cases that have been transferred or reassigned as related to cases within the MDL proceeding.  Denying plaintiffs' motion would simply result in greater delay.

Second, defendants, in their Memoranda to dismiss, simply do not provide the sort

of information justifying a transfer because of convenience of witnesses. Normally, a 28 U.S.C. § 1404 motion requires the movant to name the witnesses and show that they are not under the parties' control. Defendants do nothing of the sort.

Moreover, most of the Truth-In-Lending violations alleged by plaintiffs consist of violations of law present in and ascertainable from plaintiffs' documents alone. Any one of the alleged document violations alone, if proven, is a ground for rescission of the loan. Because plaintiff could prevail simply by proving a document violation, defendants' argument, in its Memoranda, about the need for occurrence witnesses is especially weak.

Third, venue in the Northern District of Illinois does not prevent the parties from taking any pre-trial discovery from parties and witnesses located in Michigan. F. R. C. P. 45(b)(2) expressly permits a subpoena to be served "at any place without the district that is within 100 miles of the place of the deposition, hearing trial, production [of documents] or inspection specified in the subpoena...." Attorneys for the parties would have to travel to Michigan to take depositions of and obtain documents from non-party witnesses. Any depositions of parties or agents or employees of parties (who are under the parties' control) would have to take place in the Northern District of Illinois, unless they occurred elsewhere by agreement. Defendants' memoranda ignore these points.

Fourth, trial could occur in the Northern District of Illinois. Defendants are simply mistaken that "the parties do not enjoy [trial] subpoena power over Michigan witnesses from this Court." (Defs' Memo., p. 3). From the vantage point of logic alone, if defendants were correct, it would be impossible for U.S. District Courts to conduct meaningful evidentiary trials in a complex and highly mobile economy in which divisions of labor, material witnesses and documents are widely disbursed across state lines. Moreover, F. R. C. P. 45(c)(3)(B)(iii) permits the Court to order

15

non-parties to travel more than 100 miles to appear if the party issuing the subpoena shows "a substantial need for the testimony or material that cannot be otherwise met without undue hardship" and assures that the person subpoenaed will be reasonably compensated.

Finally, in the unlikely event that any of these three cases is set for trial, there is no reason why the action cannot be transferred to the Eastern District of Michigan at that time for trial. Indeed, the plaintiffs may simply consent to that. At this time, this Court could simply grant plaintiffs' motion to reassign, while retaining the option of a possible transfer of venue for a later date, if and only if a trial should be necessary. Defendants' Memoranda ignores this point. (Pp. 2-3).

## IV.    CONCLUSION

For the reasons stated above, the Court should grant plaintiffs Fourth Motion To Reassign Related Cases. Alternatively, the Court should permit plaintiff to take limited document discovery, as described above, prior to ruling on plaintiffs' motion.

Respectfully submitted,


s/ Al Hofeld, Jr.
Al Hofeld, Jr.

Daniel A. Edelman
Cathleen M. Combs
Jim O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200

(312) 419-0379 (FAX)