# EXHIBIT 3



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BABATUNDE ISHMAEL and
SEIDAT ISHMAEL,

        Plaintiffs,

      v.

ARGENT MORTGAGE COMPANY, L.L.C.;
HOMEQ SERVICING CORPORATION;
and DOES 1-5,

        Defendant.

RECEIVED

DEC 1 2 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

06C 6872

**JUDGE** JOHN W. DARRAH

MAGISTRATE JUDGE DENLOW

**JURY DEMANDED**

## COMPLAINT

### INTRODUCTION

1.    Plaintiffs Babatunde Ishmael and Seidat Ishmael bring this action against a "subprime" mortgage lender and its transferees to secure relief, including rescission, for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq. ("ECOA"); and state law.

### JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §§1640 (TILA) and 1691e (ECOA).

3.    Defendants do business in the District and are deemed to reside here. Venue is therefore proper under 28 U.S.C. §1391(c).

1

## PARTIES

4.    Plaintiffs Babatunde Ishmael and Seidat Ishmael are husband and wife and own and reside in a single family home located at 7919 S. Washtenaw Avenue, Chicago, IL 60652.

5.    Defendant Argent Mortgage Company, LLC ("Argent") is a foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.

6.    Defendant Argent is engaged in the business of originating "subprime" mortgages.

7.    Defendant Argent makes more than 26 loans per year.

8.    Defendant Argent is a "creditor" as defined in TILA and Regulation Z.

9.    Defendant Argent is an affiliate of Ameriquest Mortgage Company ("Ameriquest").

10.    During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

11.    Defendant HomEq Servicing Corporation ("HomEq") is a New Jersey corporation which does business in Illinois. Its registered agent and office are Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703-4261. It services loans originated by Argent, including that of plaintiffs', and claims an interest in such

2

loans, including the right to receive payments thereunder. It is joined as a necessary party.

      12.    On information and belief HomEq owns plaintiffs' loan.

      13.    If HomEq does not own plaintiffs' loan, the owners are joined as

Does 1-5.

## FACTS RELATING TO PLAINTIFFS

      14.    More than six weeks prior to June 11, 2005, plaintiffs received a flyer from Chicago Mortgage Acceptance Corporation, doing business as Chicago Mortgage Acceptance, advertising home refinances. Plaintiff Babatunde Ishmael responded approximately six weeks prior to June 11, 2005 by calling Chicago Mortgage Acceptance to apply for a mortgage.

      15.    Plaintiff spoke to Chicago Mortgage Acceptance employee James T. McMahon at all relevant times.

      16.    Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

      17.    McMahon and Argent wrote on the typed, pre-printed loan applications they prepared that plaintiffs purchased their home in 1994 for $120,000. (Exhibit A.) In actuality, plaintiffs purchased their home for only $85,000.

      18.    McMahon, Chicago Mortgage Acceptance, and/or Argent then arranged to have plaintiffs sign the application containing false information at closing. The application was one of scores of documents and hundreds of pages of documents presented to plaintiffs at closing. Plaintiffs could not possibly have reviewed each for accuracy at that time.

      19.    Approximately one week before closing, McMahon called plaintiffs and

3

told plaintiff Babatunde Ishmael that Argent Mortgage Company would only give plaintiffs a

three-year fixed-rate loan but that plaintiffs would be able to refinance for a permanent fixed rate

within two years.

20.     The loan was closed on June 11, 2005.

21.     The following are documents relating to the loan:

a.      A note, Exhibit B. Only (Mr.) Babatunde Ishmael signed the note.

b.      A mortgage, Exhibit C. Both (Mr.) Babatunde Ishmael and (Mrs.)

Seidat Ishmael signed the mortgage.

c.      A settlement statement, Exhibit D.

d.      A Truth in Lending disclosure statement, Exhibit E.

e.      The official Federal Reserve Board notice of right to cancel,

Exhibit F.

f.      A "disbursement authorization," Exhibit G.

22.     There is no provision in any of plaintiffs' documents ensuring his right to

refinance in two years.

23.     Chicago Mortgage Acceptance Corporation has since dissolved.

24.     Because Chicago Mortgage Acceptance received a Yield Spread Premium

("YSP") from Argent (Exhibit F, line 809) in exchange for having placed plaintiffs into an

adjustable-rate loan, Chicago Mortgage Acceptance's actions are attributable to Argent.

## COUNT I – TILA

25.     Plaintiffs incorporate paragraphs 1-24.

26.     In order to give consumer borrowers the opportunity to rethink

4

transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three days of receiving notice of their right to rescind, whichever is later. More specifically, the statute, provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. (15 U.S.C. § 1635(a)).

27. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. (15 U.S.C. § 1635(b).)

28. To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with

5

**regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.** (15 U.S.C. § 1635(a).)

29.     Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. The regulation restates the statutory rescission right, 12 C.F.R. § 226.23(a), and requires that the creditor "deliver" to each person entitled to rescind "two copies" of a document that "clearly and conspicuously disclose" 12 C.F.R. § 226.23(b)(1) the borrower's rescission rights.

30.     More specifically, the regulation provides:

**In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(i) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(ii) The consumer's right to rescind the transaction.**

**(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(iv) The effects of rescission, as described in paragraph (d) of this section.**

**(v) The date the rescission period expires.** (12 C.F.R. § 226.23(b)(1).)

## DEFECTIVE NATURE OF DISCLOSURES

31.     In connection with the plaintiffs' loan, Argent Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the following reasons.

6

32.     Exhibit F is inherently confusing with respect to who has a right to cancel in a case in which less than all of the persons signing the mortgage sign the note. The confusing portions were added by Argent to the official Federal Reserve Board text.

33.     The top of Exhibit F has only Babatunde Ishmael's name on it, and is addressed to "borrower(s)." The text is addressed to "You," which is reasonably interpreted as applying to the individual whose name appears directly above. The bottom of the form states that "Each borrower" has the right to cancel, which is reasonably interpreted as meaning the persons named as "borrower(s)" at the top of the document. While there are signature lines for both plaintiffs at the bottom of the form, they are there described as "Borrower/ Owner," which presumably means something different than just "borrower."

34.     The statute gives not only each person obligated to repay the loan but each person who resides in and has an ownership interest in the property the right to cancel, and requires a notice that unequivocally tells each such person that they have the right to cancel.

35.     Notice of rescission has been given to defendants. A copy is attached as Exhibit H.

36.     The loan has not been rescinded.

37.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

38.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to**

7

**rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

    a.    A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

    b.    Statutory damages for the underlying disclosure violation;

    c.    If appropriate, statutory damages for failure to rescind;

    d.    Attorney's fees, litigation expenses and costs.

    e.    Such other or further relief as the Court deems appropriate.

## COUNT II – ECOA

39.    Seidat Ishmael incorporates paragraphs 1-38.

40.  This claim is against Argent.

41.    On information and belief, the majority of the instances in which less than all owners of the property sign a note in favor of defendant are where a husband and wife own the property and only the husband signs the note.

42.    On information and belief, it is defendant's practice, if the wife does not have an income and/or her credit score is no better than the husband's, to prepare the loan documents in this manner.

43.    Defendant's practice thus impairs and obfuscates the cancellation rights of women, and married women particularly, because of their gender and marital status, in violation of the ECOA's prohibition against discrimination on such bases.

WHEREFORE, plaintiff Seidat Ishmael requests that the Court enter judgment in

8

favor of plaintiff and against defendant for:

    a.  Appropriate statutory and punitive damages;

    b.  Attorney's fees, litigation expenses and costs.

    c.  Such other or further relief as the Court deems appropriate.

**COUNT III – ILLINOIS CONSUMER FRAUD ACT**

   44.  Plaintiff incorporates paragraphs 1-24. This claim is against Argent.

   45.  Defendant engaged in unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by engaging in "bait and switch" practices through promising that plaintiffs would be able to refinance for a permanent fixed rate within two years of signing their adjustable-rate note but not including a provision ensuring that right to refinance.

   46.  Defendant engaged in such practices in the course of trade and commerce.

   47.  Defendant engaged in such practices for the purpose of inducing reliance on the part of borrowers, by convincing them to sign an adjustable-rate loan.

   48.  Plaintiffs did in fact rely on defendant's practices.

   49.  Plaintiffs were damaged as a result.

   50.  Defendant's conduct was intentionally deceptive and malicious, warranting substantial punitive damages.

   WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendant for the following relief:

    a.  Compensatory and punitive damages;

    b.  Attorney's fees, litigation expenses and costs; and

9

c. Such other or further relief as the Court deems appropriate.

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
  & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiffs demand trial by jury.

_____
Daniel A. Edelman

t:\17945\pleading\Complaint_pleading.wpd

10

EXHIBIT A

# Uniform Residential Loan Application
## CHICAGO MORTGAGE ACCEPTANCE

This application is designed to be completed by the applicant(s) with the lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☒ Conventional ☐ Other: | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|
| | ☐ FHA ☐ USDA/Rural Housing Service | | | |

| Amount $ 136,500.00 | Interest Rate 5.950 % | No. of Months 360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☐ Other (explain): ☒ ARM (type): 2/28 |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & zip code) | County | No. of Units |
|---|---|---|
| 7919 S WASHTENAW, CHICAGO, IL 60652 | COOK | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| SEE PRELIMINARY TITLE REPORT | 1945 |

| Purpose of Loan | ☐ Purchase ☐ Construction ☒ Refinance ☐ Construction-Permanent ☐ Other (explain) | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan

| Year Acquired 1994 | Original Cost $ 120,000 | Amount Existing Liens $ | Purpose of Refinance Cash Out | Describe Improvements ☐ made ☐ to be made | Cost: $ |
|---|---|---|---|---|---|

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| BABATUNDE O. & SIEDAT A. ISHMAEL | Joint Tenants | ☒ Fee Simple ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | BABATUNDE O. ISHMAEL | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 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 | Home Phone (incl. area code) (773) 471-9030 | DOB (MM/DD/YYYY) 04/27/1945 | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☒ Married ☐ Unmarried (include single, divorced widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 ages | ☐ Married ☐ Unmarried (include single, divorced widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, zip code) ☒ Own ☐ Rent 11 No. Yrs. | Present Address (street, city, state, zip code) ☐ Own ☐ Rent No. Yrs. |
|---|---|
| 7919 S. WASHTENAW CHICAGO, IL 60652 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, zip code) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, zip code) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Yrs. on this job 2Y & 6M | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |
| MAGNETIC IMAGES SUPPLIES MIAMI, FL | | Yrs. employed in this line of work/profession 25Y | | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business OPERATIONS MANAGER PRINTER CARTRIDGES MANUFACTU | Business Phone (incl. area code) (800) 576-4271 | | Position/Title/Type of Business | | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |

ABN CHICAGO MORTGAGE ACCEPTANCE

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 5,583.07 | $ | $ 5,583.07 | Rent | $ | XXXXXXXXX |
| Overtime | | | | First Mortgage (P&I) | 846.00 | $ 814.00 |
| or | 166.00 | | 166.00 | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 58.00 | 58.00 |
| Dividends/Interest | | | | Real Estate Taxes | 107.00 | 107.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing see the notice in "describe other income, below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 5,749.07 | $ | $ 5,749.07 | Total | $ 1,011.00 | $ 979.00 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements

Describe Other Income  Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.    Completed [X] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | | $ Payment/Months | $ |
| List checking and saving accounts below | | Name and address of Company  (Charge Acct )  CAPITAL ONE | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. 406236241204 | | 15.00 / 0 | 225 |
| | | Name and address of Company  (Charge Acct )  GEMB/SAMS | | $ Payment/Months | $ |
| Acct. no. | $ | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. 7714110590733739 | | 15.00 / 0 | 101 |
| | | Name and address of Company  (Auto Loan)  HSBC AUTO | | $ Payment/Months | $ |
| Acct. no. | $ | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. 50000100812600 | | 246.00 / 60 | 11,073 |
| | | Name and address of Company | | $ Payment/Months | $ |
| Acct. no. | $ | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. | | | |
| | | Name and address of Company | | $ Payment/Months | $ |
| Acct. no. | $ | | | | |
| Stock & Bonds (Company name/number & description) | $ | | | | |
| | | Acct. no. | | | |
| | | Name and address of Company | | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | | |
| Face amount: $ | | | | | |
| Subtotal Liquid Assets | $ | | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 195,000 | Acct. no. | | | |
| Vested interest in retirement fund | $ | Name and address of Company | | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | | |
| Automobiles owned (make and year) | $ | | | | |
| | | Acct. no. | | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | | $ | XXXXXXXXX |
| Other Assets (itemize)  PERSONAL PROPERTY | $ 40,000 | Job Related Expense (child care, union dues, etc.) | | $ | XXXXXXXXX |
| | | Total Monthly Payments | | $ 276.00 | XXXXXXXXX |
| Total Assets a | $ 235,000 | Net Worth (a minus b) | $ 223,601 | Total Liabilities b | $ 11,399 |

Fannie Mae Form 1003 01/04

## CHICAGO MORTGAGE ACCEPTANCE

### VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 19 S WASHTENAW<br>CHICAGO, IL 60652 | O/O | $ 195,000 | $ 0 | $ 0.00 | $ 0.00 | $ 165.00 | $ 0.00 |
| | | $ | $ | $ | $ | $ | $ |
| | Totals | $ 195,000 | $ 0 | $ 0.00 | $ 0.00 | $ 165.00 | $ 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

### VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ . |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 120,893.00 |
| e. Estimated prepaid items | 1,660.41 |
| f. Estimated closing costs | 3,760.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 126,313.41 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 136,500.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 136,500.00 |
| p. Cash to Borrower (subtract i, k, l & o from m) | 10,186.59 |

### VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

### IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

### X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | [ ] I do not wish to furnish this information | CO-BORROWER | [ ] I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | [ ] Hispanic or Latino [X] Not Hispanic or Latino | Ethnicity: | [ ] Hispanic or Latino [ ] Not Hispanic or Latino |
| Race: | [ ] American Indian or Alaska Native [ ] Asian [X] Black or African American [ ] Native Hawaiian or Other Pacific Islander [ ] White | Race: | [ ] American Indian or Alaska Native [ ] Asian [ ] Black or African American [ ] Native Hawaiian or Other Pacific Islander [ ] White |
| | [ ] Female [X] Male | Sex: | [ ] Female [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by:<br>[ ] Face-to-face interview<br>[ ] Mail<br>[X] Telephone<br>[ ] Internet | JAMES T. MCMAHON | CHICAGO MORTGAGE ACCEPTANCE |
| | Interviewer's Signature ____ Date | 435 N. LA SALLE |
| | | SUITE 100 |
| | Interviewer's Phone Number (incl. area code) | CHICAGO, IL 60610 |
| | (312) 222-9828    FAX:(775) 599-3464 | |

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☐ FHA | ☐ Conventional  ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| Amount $136,500.00 | Interest Rate 5.950 % | No. of Months 360 | Amortization Type: | ☐ Fixed Rate  ☐ GPM | ☐ Other (explain):  ☐ ARM (type): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | County | No. of Units |
|---|---|---|
| 7919 SOUTH WASHTENAW AVENUE, CHICAGO, IL 60652 | COOK | 1 |
| Legal Description of Subject Property (attach description if necessary) | | Year Built 1951 |

| Purpose of Loan | ☐ Purchase  X Refinance | ☐ Construction  ☐ Construction-Permanent | ☐ Other (explain): | Property will be: X Primary Residence | ☐ Secondary Residence  ☐ Investment |
|---|---|---|---|---|---|

Complete this line if construction or construction-permanent loan

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan

| Year Acquired 1994 | Original Cost $120,000.00 | Amount Existing Liens $ 0.00 | Purpose of Refinance Refi-Cash Out | Describe Improvements ☐ made ☐ to be made | |
|---|---|---|---|---|---|
| | | | | Cost: $ 0.00 | |

| Title will be held in what Name(s) BABATUNDE O ISHMAEL and SEIDAT A | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| ISHMAEL, Joint Tenants | | X Fee Simple |
| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) | | ☐ Leasehold (show expiration date) |

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower | |
|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) BABATUNDE O ISHMAEL | | Co-Borrower's Name (include Jr. or Sr. if applicable) | |

| Social Security Number 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 | Home Phone (incl. area code) (773)471-9030 | DOB(MM/DD/YYYY) 04/27/1945 | Yrs. School 12 | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| X Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no. 0  ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) X Own ☐ Rent 11 No. Yrs 7919 S WASHTENAW CHICAGO, IL 60652 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs |
|---|---|
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs |
|---|---|

### IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer ☐ Self Employed MAGNETIC IMAGES SUPPLIES MIAMI, FL | Yrs. on this job 2.6  Yrs. employed in this line of work/profession 25 | Name & Address of Employer ☐ Self Employed | Yrs. on this job  Yrs. employed in this line of work/profession |
| Position/Title/Type of Business OPERATIONS MANAGER | Business Phone (incl. area code) (800)576-4271 | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from - to)  Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to)  Monthly Income $ |
|---|---|---|---|
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from - to)  Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to)  Monthly Income $ |
|---|---|---|---|
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

00B0B10195

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4

Initials: _____

VMP -21N (0305)      VMP Mortgage Solutions (800)521 7291

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 5,583.07 | $ | $ 5,583.07 | Rent | $ 0.00 | ///////// |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 846.00 | $ 814.01 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 58.00 | 58.17 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 107.00 | 106.72 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | Other: | 0.00 | 0.00 |
| Total | $ 5,583.07 | $ | $ 5,583.07 | Total | $ 1,011.00 | $ 978.90 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements

Describe Other Income    Notice: Alimony, child support or separate maintenance income need not be revealed if the Borrower (B) or Co Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ X ] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | LIABILITIES | $ Payment/Months | $ |
| | | Name and address of Company | | |
| List checking and savings accounts below | | *** SEE ADDENDUM *** | | |
| Name and address of Bank, S&L or Credit Union | | | | |
| | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L or Credit Union | | | | |
| | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L or Credit Union | | | | |
| | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L or Credit Union | | | | |
| | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 0.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 195,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ 0.00 | ///////// |
| Other Assets (itemize) | $ | Total Deductions | | |
| PERSONAL PROPERTY | 40,000.00 | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 298.00 | ///////// |
| Total Assets a. | $ 235,000.00 | Net Worth (a minus b) ► $ 223,158.00 | Total Liabilities b. | $ 11,842.00 |

0080B10195

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

VMP -21N (0305)

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 7919 WASHTENAW CHICAGO, IL 60652 | H SFR | $ 195000 | $ 109300 | $ 0 | $ 1011 | $ 165 | $ 0 |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ 195000 | $ 109300 | $ 0 | $ 1011 | $ 165 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 0.00 |
| e. Estimated prepaid items | 231.90 |
| f. Estimated closing costs | 3,109.00 |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 0.00 |
| i. Total costs (add items a through h) | 3,340.90 |
| j. Subordinate financing | 0.00 |
| k. Borrower's closing costs paid by Seller | 1,365.00 |
| l. Other Credits (explain) | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 136,500.00 |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | 136,500.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -134 524.10 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes" provide details, including date, name and address of Lender, FHA or VA case number if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes" complete question m below | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings) or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | I do not wish to furnish this information. | | CO-BORROWER | I do not wish to furnish this information. | |
|---|---|---|---|---|---|
| Ethnicity: | Hispanic or Latino | X Not Hispanic or Latino | Ethnicity: | Hispanic or Latino | Not Hispanic or Latino |
| Race: | American Indian or Alaska Native | Asian | Race: | American Indian or Alaska Native | Asian |
| | Native Hawaiian or Other Pacific Islander | X Black or African American | | Native Hawaiian or Other Pacific Islander | Black or African American |
| | | White | | | White |
| Sex: | Female | X Male | Sex: | Female | Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | JAMES T MCMAHON | Chicago Mortgage Acceptance |
| ☐ Face-to-face interview | Interviewer's Signature | Date | 435 N LaSalle Ste 400 |
| ☐ Mail | | Chicago, IL 60611 |
| X Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | (312)222-9028 | |

0080810195

Page 3 of 4

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower | Borrower: ISHMAEL, BABATUNDE O | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
| X | | X | |

00B0B10195
UNO -21N (0305)

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

# EXHIBIT B

Loan Number: 0080810195 - 9701

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| | | |
|---|---|---|
| June 11, 2005 | Rolling Meadows | IL |
| Date | City | State |

7919 SOUTH WASHTENAW AVENUE, CHICAGO, IL 60652
Property Address

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 136,500.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Argent Mortgage Company, LLC.**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 5.950 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on **August 1, 2005**.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, July 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my payments at:    505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 814.01. This amount may change.
### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of, July, 2007  and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  four percentage point(s) (4.000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials: _____

Loan Number: 0080810195 - 9701

(D) **Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 7.950 % or less than 5.950 Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) 1.000%) from the rate of interest I have been paying for the preceding six months My interest rate will never be greater than 11.950 % or less than 5.950 %

(E) **Effective Date of Changes**
My new interest rate will become effective on each Change Date I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

(F) **Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice

5. PREPAYMENT PRIVILEGE
I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section

(A) **Application of Funds**
I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument

(B) **Monthly Payments**
If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result

6. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me If a refund reduces the principal, the reduction will be treated as a partial prepayment

7. BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charges for Overdue Payment
If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder
The amount of the charge will be 5.000 % of my overdue payment of principal and interest
I will pay this late charge promptly but only once on each late payment

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount The date must be at least 30 days after the date on which the notice is delivered or mailed to me

(D) No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law Those expenses include, for example, reasonable attorneys' fees

8. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address

Loan Number: 0080810195 - 9701

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note. A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
Borrower  BABATUNDE O ISHMAEL                     Borrower

_____ (Seal)          _____ (Seal)
Borrower                                          Borrower

# EXHIBIT C

Return T:

Argent :   :ge Company, ::
P.O. B:    :
Rolling    : ws, IL 6000:

Prepared :   :nt Mortgage :  :ny, LLC

Mary Ro  ::
1701 Go  : :ad,Rolling
Meadows  :. 30008

*This is a true & certified copy*

750S   ------------[S:  :::v: **This Line For Recording Data**]------------------------

# MORTGAGE

DEFINI::

Words u:   :ultiple sections :   :cument are defined below and other words are defined in
Sections   :. 18, 20 and 21 :   :les regarding the usage of words used in this document are
also ¡ro:   :ction 16.

(A) "Sec:.   :: :trument" means thi:   : :nt, which is dated June 11. 2005
together :   :i Riders to this docum::
(B) "Bor:   :" is BABATUNDE O I: :EL and SEIDAT A ISHMAEL, Joint Tenants
     HUSBAND AND  :: :
         B○♌       ⬱♏

Borrower   :: :ortgagor under thi: :   :: Instrument.
(C) "Len:   :: :rgent Mortgag: :mpany, LLC

Lender is   :: ::ted Liabilit, : :pany
organized : : existing under the la::s :: :elaware

0080810195 -9701

ILLINOIS - ::::e Family - Fannie Mae/Fr:::   ::ac UNIFORM INSTRUMENT           Form 3014 1/01

⬱ -6(IL: :.. ::
Page 1 of 15                Initials: B○♌   ⬱♏              06/10/2005 3:12:11 PM
  VMP ::  : : :RMS - (800)521-7291

Lender's ... ; One City Boul ... rd West  Orange, CA 92868

Lender is ... rtgagee under this Se... instrument.
(D) "Note" ... the promissory note ... ed by Borrower and dated June 11, 2005
The Note... t Borrower owes Le... one hundred thirty-six thousand five
hundred ... 0/100                                                        **Dollars**
(U.S. $13 ... 00           ) plus ... rest. Borrower has promised to pay this debt in regular Periodic
Payments ... ay the debt in full not ... n than July 1, 2035
(E) "Prop... eans the property th... escribed below under the heading "Transfer of Rights in the
Property.
(F) "Loan ... the debt evidenced ... Note, plus interest, any prepayment charges and late charges
due under ... e, and all sums due u... his Security Instrument, plus interest.
(G) "Ride... ns all Riders to this ... rity Instrument that are executed by Borrower. The following
Riders are ... ecuted by Borrow ... ck box as applicable]:

[X] Adju... te Rider [ ] Cond... ium Rider       [ ] Second Home Rider
[ ] Ballo... [ ] Plann... nit Development Rider [ ] 1-4 Family Rider
[ ] VA ... [ ] Bi... Payment Rider    [ ] Other(s) [specify]

(H) "App... Law" means all ... ling applicable federal, state and local statutes, regulations,
ordinance: ... ministrative rules ... rs (that have the effect of law) as well as all applicable final,
non-apper... icial opinions.
(I) "Com... ssociation Dues ... d Assessments" means all dues, fees, assessments and other
charges t... imposed on Borr... the Property by a condominium association, homeowners
association... lar organization.
(J) "Elec... unds Transfer" ... r transfer of funds, other than a transaction originated by
check, dr... imilar paper inst... hich is initiated through an electronic terminal, telephonic
instrumen... ter, or magnetic t ... t to order, instruct, or authorize a financial institution to debit
or credit ... nt. Such term in... but is not limited to, point-of-sale transfers, automated teller
machine ... ons, transfers in... y telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escr... s" means those item... re described in Section 3.
(L) "Mis... s Proceeds" means ... ompensation, settlement, award of damages, or proceeds paid
by any th... (other than insu... eds paid under the coverages described in Section 5) for: (i)
damage t... truction of, the ... (ii) condemnation or other taking of all or any part of the
Property; ... eyance in lieu of ... nation; or (iv) misrepresentations of, or omissions as to, the
value and... tion of the Prope...
(M) "Mo... surance" means ... protecting Lender against the nonpayment of, or default on,
the Loan
(N) "Peri... ment" means the ... scheduled amount due for (i) principal and interest under the
Note, plu... amounts under S ... f this Security Instrument.
(O) "RES... ans the Real Esta... ment Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implement ng r gulation, Regulation ... 24 C.F.R. Part 3500), as they might be amended from time to
time, or an ... ditional or successor legi ... ion or regulation that governs the same subject matter. As used
in this Securit Instrument, "RESPA" ... rs to all requirements and restrictions that are imposed in regard
to a "feder... related mortgage loan" ... n if the Loan does not qualify as a "federally related mortgage
loan" und ... A.

(P) "Succe... .: i : Interest of Borro.ver' :means any party that has taken title to the Property, whether or not that p:: . : :ssumed Borrower's c .: :ions under the Note and/or this Security Instrument.

TRANSF: _ '': RIGHTS IN THE PRC 'RTY

This Secu: . :: ument secures to .er. :: i) the repayment of the Loan, and all renewals, extensions and modificat: . . : he Note; and (ii . :formance of Borrower's covenants and agreements under this Secur . . :ment and the No:: : i: purpose, Borrower does hereby mortgage, grant and convey to Lende: : : ender's successc:: .ssigns, the following described property located in the   :ty                                                          [Type of Recording Jurisdiction]

of COOK                                                            [Name of Recording Jurisdiction]:

LEGAL B :: : :TION ATTACHED :ETO AND MADE A PART HEREOF:

Parcel ID : ': : 1936202012090                    which currently has the address of
7919 SC : : :SHTENAW AVENUE                                                [Street]
CHICAGO                                            [City], Illinois 60652       [Zip Code]
("Propert: . : :"):

     :O:: : : WITH all the in:  :::::ms now or hereafter erected on the property, and all
easement: :: :enances, and fixt::: :: or hereafter a part of the property. All replacements and
additions : : :o be covered by th: :::::ity Instrument. All of the foregoing is referred to in this
Security I: :: .: :t as the "Property. "
     BO:: ::::R COVENANTS ::::: :::::wer is lawfully seised of the estate hereby conveyed and has
the right : :: : :ge, grant and c::: :: :e Property and that the Property is unencumbered, except for
encumbr:: : : :cord. Borrower :: ::: :nd will defend generally the title to the Property against all
claims and ::::: ::s, subject to any ::: :ances of record.
     TH: :: :RITY INSTRUMEN: .::::bines uniform covenants for national use and non-uniform
covenant: :: :mited variations b:: ju:: :::ion to constitute a uniform security instrument covering real
property.
     UN: :: : COVENANTS. B::: : ::nd Lender covenant and agree as follows:
     1. :: :: : of Principal, Inter:: :: Escrow Items, Prepayment Charges, and Late Charges.
Borrowe: :: : :::y when due the pri:::: :: of, and interest on, the debt evidenced by the Note and any
prepaymer: :: ::::es and late charges d::: ::der the Note. Borrower shall also pay funds for Escrow Items
pursuant :: :::::n 3. Payments due ::: :::: the Note and this Security Instrument shall be made in U.S.

0080810195 -9701
Initials: [initials]

[logo] -6(IL) : ':                    Page 3 of 15  06/10/2005 3:12:11 PM Form 3014  1/01

: 3II (05/2005)Rev 01

currency ... ..., if any check or oth... ...rument received by Lender as payment under the Note or this Security ... ...r... is returned to Lend... ...paid, Lender may require that any or all subsequent payments due unde... ...ote and this Security ...ment be made in one or more of the following forms, as selected ... L...r: (a) cash; (b) mc ...der; (c) certified check, bank check, treasurer's check or cashier's ... ...ovided any such ch... ...drawn upon an institution whose deposits are insured by a federal ag...cy, ...trumentality, or enti... ...d; Electronic Funds Transfer.

Payn... nt r e deemed received by ... ...er when received at the location designated in the Note or at such othe... ...ocation as may be designate... Lender in accordance with the notice provisions in Section 15. Lender m...r...n any payment or par... ...ayment if the payment or partial payments are insufficient to bring the ...oan current. Lender may ac... ...t any payment or partial payment insufficient to bring the Loan current, ... ...aiver of any rights h... ...nder or prejudice to its rights to refuse such payment or partial payments ... ...ture, but Lender is ... ...ligated to apply such payments at the time such payments are accepted ... ... Periodic Payment is ...plied as of its scheduled due date, then Lender need not pay interest o... ...plied funds. Lender ma... ...ld such unapplied funds until Borrower makes payment to bring the Loan ...rr...t If Borrower does not... ...o within a reasonable period of time, Lender shall either apply such fund... ...rn them to Borrower ... ...t applied earlier, such funds will be applied to the outstanding principa... ...nder the Note imm... ...ly prior to foreclosure. No offset or claim which Borrower might ... ...in the future a...in ...er shall relieve Borrower from making payments due under the No... ...ecurity Instrumer... ...ming the covenants and agreements secured by this Security Instrun...

2 ... ...n of Payment... ...ds. Except as otherwise described in this Section 2, all payment... ...and applied by ... ...l be applied in the following order of priority: (a) interest due u... ...; (b) principal ... ...e Note; (c) amounts due under Section 3. Such payments shall ... ...each Periodic P... ...e order in which it became due. Any remaining amounts shall ... ...t to late charge... ...any other amounts due under this Security Instrument, and then t... ...rincipal balance ... ...e.

I... ...ives a payment ...r...wer for a delinquent Periodic Payment which includes a sufficien... ...pay any late ch...r... ...the delinquent payment and the late ...g... ...ore than one Peri... ...ment is outstanding, Lender may apply any payment received from Bo... ...he repayment o...h... ...dic Payments if, and to the extent that, each payment can be paid in f... ...e extent that any ...o... ...s after the payment is applied to the full payment of one or more Pe... ...ments, such exces...r... ...plied to any late charges due. Voluntary prepayments shall be appli... ...any prepayment char... ...then as described in the Note.

...i...on of payments, in... ...proceeds, or Miscellaneous Proceeds to principal due under the Note... ...xtend or postpon... ...e date, or change the amount, of the Periodic Payments.

3. ...ds ... Escrow Items. B...r shall pay to Lender on the day Periodic Payments are due under th... ...il the Note is p...d ...a sum (the "Funds") to provide for payment of amounts due for: (...) ... ...ssessments and ...h... ...s which can attain priority over this Security Instrument as a lien o...r ...e on the Property; ...hold payments or ground rents on the Property, if any; (c) premium... ...and all insurance... ...d by Lender under Section 5; and (d) Mortgage Insurance premiu... ...or any sums ...i... ...Borrower to Lender in lieu of the payment of Mortgage Insuran... ...s in accordance ... ...ovisions of Section 10. These items are called "Escrow Items... ...ion or at any t...e ...e term of the Loan, Lender may require that Community Associa... ...Fees, and Ass...n ...ny, be escrowed by Borrower, and such dues, fees and assessme... ...e an Escrow Ite...l ...e shall promptly furnish to Lender all notices of amounts to be paid u... ...s Section. Borrow...r ...y Lender the Funds for Escrow Items unless Lender waives Borrowe... ...ion to pay the Fu... ...r any or all Escrow Items. Lender may waive Borrower's obligatio... ...p... ...o Lender Funds for ...ll Escrow Items at any time. Any such waiver may only be in writin... ...vent of such wai...r ...r shall pay directly, when and where payable, the amounts

0080810195 - 9701

Initials: BOD SH

L (05/2005)Rev ...

due fo:     E ..:   Items for which  pa      .. of Funds been waived by Lender and, if Lender requires,
shall futu  1 t...  ..der receipts eviden.   ... each payment within such time period as Lender may require.
Borrowe:   o' ..  ...on to make such pa    ...ts and to provide receipts shall for all purposes be deemed to
be a cove   nt ::   greement contain ...... this Security Instrument, as the phrase "covenant and agreement"
is used i  ..le..:. . 9. If Borrower is o   ...gated to pay Escrow Items directly, pursuant to a waiver, and
Borrow er   il..... pay the amount due f ... an Escrow Item, Lender may exercise its rights under Section 9
and pay ...  h ...... nt and Borrower sh... then be obligated under Section 9 to repay to Lender any such
amount   ...nd r ...... revoke the waive... ...s to any or all Escrow Items at any time by a notice given in
accordanc  w ... .ction 15 and, upon ... ...h revocation, Borrower shall pay to Lender all Funds, and in
such amc  ...ts ... ..re then required un... .his Section 3.

    Len...   ... ... at any time, colle:   ... ..old Funds in an amount (1) sufficient to permit Lender to
apply th:   ...n i... ...the time specified ..   .. RESPA, and (2) not to exceed the maximum amount a lender
can requi:  ...u...: ..ESPA. Lender shal.. ...timate the amount of Funds due on the basis of current data and
reasonabl...  ...st m ...s of expenditures o: ... ...e Escrow Items or otherwise in accordance with Applicable
Law.

    The  ...und...  ...hall be held in: a...  ...titution whose deposits are insured by a federal agency,
instrumen  ...it... ....ntity (including ..e...  ....,  if Lender is an institution whose deposits are so insured) or in
any Fed:   F ...  ..oan Bank. Len...er :   ..  ...pply the Funds to pay the Escrow Items no later than the time
specified..   d...   ....SPA. Lender shall :...  ..harge Borrower for holding and applying the Funds, annually
analyzing...  e....  ...v account, or v...rif...  ...he Escrow Items, unless Lender pays Borrower interest on the
Funds   ...p...  ...le Law permits ... :...   ....make such a charge. Unless an agreement is made in writing
or Ap...  ...ie...  ...equires interes:   ...  ...d on the Funds, Lender shall not be required to pay Borrower
any i:... .  c...  ...ngs on the Fu...  ...  ...wer and Lender can agree in writing, however, that interest
shall ...  ...d...  ...: Funds. Lend...  ...  ..e to Borrower, without charge, an annual accounting of the
Funds   ...ju....  ... RESPA.

    I...  ...e   ...rplus of Fun...  ...  ...escrow, as defined under RESPA, Lender shall account to
Borro...  ...r...  ...cess funds in a...  :...  ...with RESPA. If there is a shortage of Funds held in escrow,
as defin...  n...  ...PA, Lender s:...!...  ...ly Borrower as required by RESPA, and Borrower shall pay to
Lender ...  a....  ...necessary to m:...e   ...e shortage in accordance with RESPA, but in no more than
twelve m...  th...  ...yments. If ther...:s...  ...ciency of Funds held in escrow, as defined under RESPA,
Lender :...  1....  ...f Borrower as re:q...l...ly RESPA, and Borrower shall pay to Lender the amount
necessar...  ...ra...  ...up the deficiency i...  ...ordance with RESPA, but in no more than twelve monthly
payment:

    l:  ...  ...pa....  ...t in full of all su...g... ...ed by this Security Instrument, Lender shall promptly refund
to Bor:...  ...e   ...nds held by Len...er

    4...  ...a:...  ...iens. Borrow...r :...  ...ny all taxes, assessments, charges, fines, and impositions
attribut :...  t:...  ...roperty which ...  ...priority over this Security Instrument, leasehold payments or
groun ...:  s :...  ...Property, if an...  ...  ...mmunity Association Dues, Fees, and Assessments, if any. To
the ext :n: ...a:...  ...items are Escro...  I...  ...Borrower shall pay them in the manner provided in Section 3.

    B...  ...r...  ...c  promptly disch:...r...  ...lien which has priority over this Security Instrument unless
Borro...  ...a)...  ...s in writing to ...: :...  ...nt of the obligation secured by the lien in a manner acceptable
to Len...:  ...ou...  ...so long as Bor:...  ...  ...erforming such agreement; (b) contests the lien in good faith
by, or ...  ...d...  ...nst enforcement ...  ...  ...n in, legal proceedings which in Lender's opinion operate to
prevent :...  ...en...  ...ment of the lien ...  ...  ...ose proceedings are pending, but only until such proceedings
are concl:...ed...  ...c) secures from the l...  ...r of the lien an agreement satisfactory to Lender subordinating
the lien ...  hi...  ...rity Instrument. If :...  ...r determines that any part of the Property is subject to a lien
which ...:  ...tt...  ...ority over this S ...cu...  ...strument, Lender may give Borrower a notice identifying the

0080810195 -9701
Initials: BOI  SH

lien. With 1 l ... s of the date on which at notice is given, Borrower shall satisfy the lien or take one or more of a... set forth above in t... ..tion 4.

L... r... equire Borrower t... a one-time charge for a real estate tax verification and/or reporting... rv... ed by Lender in co... tion with this Loan.

5 ...p... nsurance. Borr... ve... ... keep the improvements now existing or hereafter erected on the Prop... y ... d against loss b... fir... ...ards included within the term "extended coverage," and any other ... ds ... ling, but not limite... ...arthquakes and floods, for which Lender requires insurance. This i... ...nc... ... be maintained in ... ...nounts (including deductible levels) and for the periods that Lender ... ii... hat Lender requires ... ...ant to the preceding sentences can change during the term of the Loan. Th... ...rance carrier provid... ... ...e insurance shall be chosen by Borrower subject to Lender's right to ... sa... ... Borrower's choic... ...ich right shall not be exercised unreasonably. Lender may require ... ...rc... ...o pay, in connect... ...ith this Loan, either: (a) a one-time charge for flood zone determin... on... ...ification and track... g ...rvices; or (b) a one-time charge for flood zone determination and cert... ati... ...rvices and subsequ... ...harges each time remappings or similar changes occur which reasona... m... ...ffect such determi... ...n or certification. Borrower shall also be responsible for the payment ... a... ...es imposed by the ...eral Emergency Management Agency in connection with the review ... ny ... i zone determinati... ...ulting from an objection by Borrower.

I... ...ails to maintain an... the coverages described above, Lender may obtain insurance coverage ... t ...r's option and Bor... ...r's expense. Lender is under no obligation to purchase any particul... yp ...mount of coverage ...efore, such coverage shall cover Lender, but might or might not p... B... ...r, Borrower's ...i ...e Property, or the contents of the Property, against any risk, hazar... ia... ...nd might pro... ... ...r or lesser coverage than was previously in effect. Borrower acknc... e... ...he cost of the ...s... ...coverage so obtained might significantly exceed the cost of insur... la... ...wer could ha... ...l Any amounts disbursed by Lender under this Section 5 shall becom... lit... ...ebt of Borrow... ...c ... by this Security Instrument. These amounts shall bear interest at the ... r... ...m the date of ... ...bu ...t and shall be payable, with such interest, upon notice from Lende... o... ...requesting pay... r...

... su... ...policies requir... b... ...r and renewals of such policies shall be subject to Lender's right ... a... ...such policies h... ...ude a standard mortgage clause, and shall name Lender as mortg... m... ... an additional l... ...s ... Lender shall have the right to hold the policies and renewal certifi... I ...er requires, Be... w ... ...all promptly give to Lender all receipts of paid premiums and renew... ti... Borrower obta... ... ...m of insurance coverage, not otherwise required by Lender, for d... t... ...estruction of, ... ...ty, such policy shall include a standard mortgage clause and shall ... ... ...s a mortgagee a... ... ...additional loss payee.

I... e... : loss, Borrow... sl ...e prompt notice to the insurance carrier and Lender. Lender may ... pr ...loss if not ma... p ... by Borrower. Unless Lender and Borrower otherwise agree in wr... a... ...rance proceeds ... ...or not the underlying insurance was required by Lender, shall be appl... to ...ation or repair ... t ...erty, if the restoration or repair is economically feasible and Lender... cu ... ...not lessened. ...ri ...h repair and restoration period, Lender shall have the right to hold ... n... ...proceeds unti... c ...ns had an opportunity to inspect such Property to ensure the work ... oc ...mpleted to Le... ...er ...faction, provided that such inspection shall be undertaken prompt... c ...nay disburse p... e... the repairs and restoration in a single payment or in a series of prog... p... ...s as the work i... ...c ...d. Unless an agreement is made in writing or Applicable Law requires ... er ...be paid on such in... ...e proceeds, Lender shall not be required to pay Borrower any interest ... e ...s on such proceed ...es for public adjusters, or other third parties, retained by Borrow... ho ...be paid out of the ... ...nce proceeds and shall be the sole obligation of Borrower. If the re... ic ...pair is not eco... ...r ...easible or Lender's security would be lessened, the insurance proce... nal ...pplied to the s... ... ...l by this Security Instrument, whether or not then due, with

0080810195 -9701
Initials: POP  SH

VMP

...5 2005)Re...

the exce    if :    paid to Borrower. S..l insurance proceeds shall be applied in the order provided for in
Section

If    r    bandons the Pr per    lender may file, negotiate and settle any available insurance
claim an    i    tters. If Borr ver    not respond within 30 days to a notice from Lender that the
insuran    rr    offered to set  a    .. then Lender may negotiate and settle the claim. The 30-day
period    1    hen the notic   is    In either event, or if Lender acquires the Property under
Section    o    vise, Borrov r h    assigns to Lender (a) Borrower's rights to any insurance
procee  :    n    nt not to exce d th   counts unpaid under the Note or this Security Instrument, and
(b) an    cr    orrower's rig    (c   than the right to any refund of unearned premiums paid by
Borrov     m    i insurance policies    ring the Property, insofar as such rights are applicable to the
coverage    ti    perty. Lender r ay t  .e insurance proceeds either to repair or restore the Property or
to pay   m    ud under the N te o   :: Security Instrument, whether or not then due.

6.    u.    Borrower s ll  .. py, establish, and use the Property as Borrower's principal
residenc    id    days after the  xe  tion of this Security Instrument and shall continue to occupy the
Proper    D    er's principal r sider  for at least one year after the date of occupancy, unless Lender
others i:    g    writing, which c   nt shall not be unreasonably withheld, or unless extenuating
circun     c    hich are bey nd F    er's control.

7.       ., Maintenar e   rotection of the Property; Inspections. Borrower shall not
destroy    :    impair the    p    llow the Property to deteriorate or commit waste on the
Prope:    r not Borrow   is    ng in the Property, Borrower shall maintain the Property in
order    . Property fro   de   ting or decreasing in value due to its condition. Unless it is
deterr    p    to Section 5  at    r or restoration is not economically feasible, Borrower shall
promp    :    Property if  an   t to avoid further deterioration or damage. If insurance or
condem:    n    ds are paid i  to   :n with damage to, or the taking of, the Property, Borrower
shall b:    :    or repairing  r    g the Property only if Lender has released proceeds for such
purpos     :    disburse pr  ed    he repairs and restoration in a single payment or in a series of
progr    s the work is  m    If the insurance or condemnation proceeds are not sufficient
to rep:    the Property,     m    s not relieved of Borrower's obligation for the completion of
such r    tion.

L    gent may m   r    ble entries upon and inspections of the Property. If it has
reason    nder may ins   t    rior of the improvements on the Property. Lender shall give
Borro    he time of o   r    an interior inspection specifying such reasonable cause.

:    Loan Appli  tio    rrower shall be in default if, during the Loan application
proce:    r any perso   n    s acting at the direction of Borrower or with Borrower's
knowl    t gave materi ly    misleading, or inaccurate information or statements to Lender
(or f:    le Lender  th    al information) in connection with the Loan. Material
repres    l.. but are r t li    to, representations concerning Borrower's occupancy of the
Proper    r's principal : ide:

9    f Lender's I  re    he Property and Rights Under this Security Instrument. If
(a) B    perform the   e    d agreements contained in this Security Instrument, (b) there
is a le    g that might s  uit    affect Lender's interest in the Property and/or rights under
this S    nt (such as   re    g in bankruptcy, probate, for condemnation or forfeiture, for
enforc    n which ma   t    iority over this Security Instrument or to enforce laws or
regula    lorrower has  ha    the Property, then Lender may do and pay for whatever is
reason    :    propriate to pro  ct    r's interest in the Property and rights under this Security
Instrur    i    ng protecting an /o    sing the value of the Property, and securing and/or repairing
the Pr    r's actions can inc    but are not limited to: (a) paying any sums secured by a lien
which    ; :    over this Se rit    rument; (b) appearing in court; and (c) paying reasonable

0080810195 -9701
Initials: [signature]

C 2005)Re·

attorne...      ...tect its interest in the Property and/or rights under this Security Instrument, including
its sec...      in a bankruptcy proceeding. Securing the Property includes, but is not limited to,
entering        ...y to make repairs, change locks, replace or board up doors and windows, drain water
from p...        ...e building or other ... le violations or dangerous conditions, and have utilities turned
on or off        Lender may take action under this Section 9, Lender does not have to do so and is not
under ...        ...bligation to do so. It is agreed that Lender incurs no liability for not taking any or all
actions...       ...der this Section 9.

A...     disbursed by Lender under this Section 9 shall become additional debt of Borrower
secured          ...rity Instrument. These amounts shall bear interest at the Note rate from the date of
disbur...        ...all be payable, with such interest, upon notice from Lender to Borrower requesting
payment...

I...     ... Instrument is on a leasehold, Borrower shall comply with all the provisions of the
lease. ...      ...cquires fee title to the Property, the leasehold and the fee title shall not merge unless
Lende...         merger in writing.

I...     Insurance. If ... and ... equired Mortgage Insurance as a condition of making the Loan,
Borrov...         the premiums required to maintain the Mortgage Insurance in effect. If, for any reason,
the M...          ...nce coverage required by Lender ceases to be available from the mortgage insurer that
previo...         ...t such insurance and ... rrower was required to make separately designated payments
toward...         ...ms for Mortgage Insurance, Borrower shall pay the premiums required to obtain
covera...          ...ly equivalent ... the ... ortgage Insurance previously in effect, at a cost substantially
equiva...          ...t to Borrower of ... Mortgage Insurance previously in effect, from an alternate
mortg...           ...cted by Lender ... ...substantially equivalent Mortgage Insurance coverage is not
availal...         ...hall continue to pa... ... Lender the amount of the separately designated payments that
were...            ...insurance cov...age ... ...ced to be in effect. Lender will accept, use and retain these
paymc...           ...on-refundable lo... re... ... in lieu of Mortgage Insurance. Such loss reserve shall be
non-r...            notwithstanding t... fa... ...t the Loan is ultimately paid in full, and Lender shall not be
requir...            ...st c... ...rnings on such loss reserve. Lender can no longer require loss
reserv...           ...s if Mortgage Insurance ... ...erage (in the amount and for the period that Lender requires)
provid...            insurer selected ... La... ... again becomes available, is obtained, and Lender requires
separa...            ...lated payments to... rd ... ...remiums for Mortgage Insurance. If Lender required Mortgage
Insura...            ...condition of maki... ... th... ...an and Borrower was required to make separately designated
paymc...            ...d the premiums f... M... ...age Insurance, Borrower shall pay the premiums required to
maint...             ...age Insurance in ...ffec... ...r to provide a non-refundable loss reserve, until Lender's
requir...             Mortgage Insuran... ... end... ...ccordance with any written agreement between Borrower and
Lende...             ...g for such termina... on ... ...til termination is required by Applicable Law. Nothing in this
Sectic...            ...ts Borrower's obli... tio... ...ny interest at the rate provided in the Note.

...     Insurance reimbu... s L... ...r (or any entity that purchases the Note) for certain losses it
may i...     ...orrower does not ... pa... ... Loan as agreed. Borrower is not a party to the Mortgage
Insura...

...     nsurers evaluate t... ir t... ...risk on all such insurance in force from time to time, and may
enter i             ...nents with other p... ties... ...share or modify their risk, or reduce losses. These agreements
are on              ...d conditions that ... sati... ...ry to the mortgage insurer and the other party (or parties) to
these               s. These agreeme... m... ...ire the mortgage insurer to make payments using any source
of fun              ...e mortgage insur... na... ...available (which may include funds obtained from Mortgage
Insur...             ...ums).

...     ...t of these agreem... s, ... ...t, any purchaser of the Note, another insurer, any reinsurer,
any o...     ..., or any affiliate a... any... ...e foregoing, may receive (directly or indirectly) amounts that
derive...     might be charact... ...zed... ...e portion of Borrower's payments for Mortgage Insurance, in
excha...      ...laring or modify... g th... ...rtgage insurer's risk, or reducing losses. If such agreement
provid...      n affiliate of Len... r ta... ...a share of the insurer's risk in exchange for a share of the
premir...      ...o the insurer, the ...rrang... ...nt is often termed "captive reinsurance." Further:

(...     ...uch agreements ... ill ... ...affect the amounts that Borrower has agreed to pay for
Mortg...      ...rance, or any oth... te... ...of the Loan. Such agreements will not increase the amount
Borro...      ...owe for Mortgage Insur... ... ...e, and they will not entitle Borrower to any refund.

0080810195 - 9701
Initials: BOT
Page 8 of 15      06/10/2005 3:12:11      Form 3014   1/01

S-08IL (05/2005)Re...

(i      uch agreements w l not fect the rights Borrower has – if any – with respect to the
Mortg      rance under the Homeowners Protection Act of 1998 or any other law. These rights
may i      he right to receive certain disclosures, to request and obtain cancellation of the
Mortg      rrance, to have the Mortgage Insurance terminated automatically, and/or to receive a
refund      Mortgage Insurance premiums that were unearned at the time of such cancellation or
termin

1.      gnment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby
assigne      d shall be paid to Lender.

1      perty is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of
the Pr      f the restoration or repair is economically feasible and Lender's security is not lessened.
During      pair and restoration period Lender shall have the right to hold such Miscellaneous Proceeds
until L      s had an opportunity to inspect such Property to ensure the work has been completed to
Lender      ction, provided that such inspection shall be undertaken promptly. Lender may pay for the
repairs      toration in a single disbursement or in a series of progress payments as the work is
comple      ss an agreement is made in writing or Applicable Law requires interest to be paid on such
Miscel      Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such
Miscell      Proceeds. If the restoration or repair is not economically feasible or Lender's security would
be less      e Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument,
whethe      then due, with the excess if any, paid to Borrower. Such Miscellaneous Proceeds shall be
applie      rder provided for in Section 2.

1      nt of a total taking, destruction, or loss in value of the Property, the Miscellaneous
Procee      be applied to the sums secured by this Security Instrument, whether or not then due, with
the ex      y, paid to Borrower.

I      t of a partial taking, destruction, or loss in value of the Property in which the fair market
value      operty immediately before the partial taking, destruction, or loss in value is equal to or
greate      amount of the sums secured by this Security Instrument immediately before the partial
taking,      ion, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums
secure      Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds
multip      he following fraction: the total amount of the sums secured immediately before the
partial      destruction, or loss in value divided by (b) the fair market value of the Property
imme      fore the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.
I      t of a partial taking, destruction, or loss in value of the Property in which the fair market
value      operty immediately before the partial taking, destruction, or loss in value is less than the
amoun      sums secured immediately before the partial taking, destruction, or loss in value, unless
Borro      ender otherwise agree in ting, the Miscellaneous Proceeds shall be applied to the sums
secure      Security Instrument whether or not the sums are then due.

1      perty is abandoned by Borrower, or if, after notice by Lender to Borrower that the
Opposi      (as defined in the next sentence) offers to make an award to settle a claim for damages,
Borro      o respond to Lender within 30 days after the date the notice is given, Lender is authorized
to col      pply the Miscellaneous ceeds either to restoration or repair of the Property or to the
sums      this Security Instrument ether or not then due. "Opposing Party" means the third party
that o      wer Miscellaneous Pro or the party against whom Borrower has a right of action in
regard      llaneous Proceeds.

      shall be in default if an ion or proceeding, whether civil or criminal, is begun that, in
Lende      ent, could result in fo re of the Property or other material impairment of Lender's
interes      roperty or rights under Security Instrument. Borrower can cure such a default and, if
accele      occurred, reinstate as ed in Section 19, by causing the action or proceeding to be
dismi      a ruling that, in L der igment, precludes forfeiture of the Property or other material
impai      ender's interest in the rty or rights under this Security Instrument. The proceeds of
any a      aim for damages t are butable to the impairment of Lender's interest in the Property
are he      ned and shall be paid to er.
      llaneous Proceeds that not applied to restoration or repair of the Property shall be
applic      rder provided for in Sec

1      wer Not Release : Fo ance By Lender Not a Waiver. Extension of the time for
paym      lification of amort atic e sums secured by this Security Instrument granted by Lender

0080810195 – 9701
Initials: BDT SH

Page 9 of 15      06/10/2005 3:12:11      Form 3014   1/01

to Bo:   any Successor in Interest of Borrower shall not operate to release the liability of Borrower
or any   rs in Interest of Borrower. Lender shall not be required to commence proceedings against
any S    n Interest of Borrower or to refuse to extend time for payment or otherwise modify
amorti   the sums secured by this Security Instrument by reason of any demand made by the original
Borro    y Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or
remed    ng, without limitation, Lender's acceptance of payments from third persons, entities or
Succes   terest of Borrower or in amounts less than the amount then due, shall not be a waiver of or
preclu   rcise of any right or remedy.

1    and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants
and ag.   Borrower's obligations and liability shall be joint and several. However, any Borrower who
co-sign   scurity Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this
Securi    nent only to mortgage, grant and convey the co-signer's interest in the Property under the
terms    curity Instrument; (b) is not personally obligated to pay the sums secured by this Security
Instru    (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or
make     nmodations with regard to the terms of this Security Instrument or the Note without the
co-sig   ent.

S    the provisions of Section 18, any Successor in Interest of Borrower who assumes
Borro    gations under this Security Instrument in writing, and is approved by Lender, shall obtain
all of    s rights and benefits under this Security Instrument. Borrower shall not be released from
Borro    gations and liability under this Security Instrument unless Lender agrees to such release in
writin    ovenants and agreements of this Security Instrument shall bind (except as provided in
Sectio   benefit the successors and assigns of Lender.

Charges. Lender may charge Borrower fees for services performed in connection with
Borro    ult, for the purpose of ecting Lender's interest in the Property and rights under this
Securi   ent, including, but not li ted to, attorneys' fees, property inspection and valuation fees.
In reg   other fees, the absence express authority in this Security Instrument to charge a specific
fee to   shall not be construed a rohibition on the charging of such fee. Lender may not charge
fees t   ressly prohibited by this urity Instrument or by Applicable Law.

is subject to a law whi ts maximum loan charges, and that law is finally interpreted so
that t   or other loan charges c ted or to be collected in connection with the Loan exceed the
permi    then: (a) any such loan arge shall be reduced by the amount necessary to reduce the
charge   mitted limit; and ) a ms already collected from Borrower which exceeded permitted
limits   efunded to Borrower. L er may choose to make this refund by reducing the principal
owed    Note or by making a ct payment to Borrower. If a refund reduces principal, the
reduci   be treated as a p tial payment without any prepayment charge (whether or not a
prepa   rge is provided for under the Note). Borrower's acceptance of any such refund made by
direct   to Borrower will constitute a waiver of any right of action Borrower might have arising out
of suc   ge.

s. All notices given by Borrower or Lender in connection with this Security Instrument
must   ng. Any notice to Borrower in connection with this Security Instrument shall be deemed to
have    to Borrower when mailed by first class mail or when actually delivered to Borrower's
notice   f sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers
unless   le Law expressly requi otherwise. The notice address shall be the Property Address
unless   has designated a subs notice address by notice to Lender. Borrower shall promptly
notify   Borrower's change of ess. If Lender specifies a procedure for reporting Borrower's
chang   ss, then Borrower shal report a change of address through that specified procedure.
There   nly one designated not address under this Security Instrument at any one time. Any
notice   shall be given by del ng it or by mailing it by first class mail to Lender's address
stated   nless Lender has designated another address by notice to Borrower. Any notice in
connec   this Security Instrument shall not be deemed to have been given to Lender until actually
receiv   der. If any notice required by this Security Instrument is also required under Applicable
Law,   icable Law require ment ll satisfy the corresponding requirement under this Security
Instru

0080810195-9701
Initials:

-10IL (05/2005)Re

ning Law; Severability; Rules of Construction. This Security Instrument shall be
govern  |  federal law and the law of the jurisdiction in which the Property is located. All rights and
obliga  |  tained in this Security Instrument are subject to any requirements and limitations of
Appli  |  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it
might   |  but such silence shall not be construed as a prohibition against agreement by contract. In
the e   |  ny provision or clause of this Security Instrument or the Note conflicts with Applicable
Law,    |  ict shall not affect other provisions of this Security Instrument or the Note which can be
given   |  out the conflicting provision.

        |  n this Security Instrument: (a) words of the masculine gender shall mean and include
corres  |  euter words or words of the feminine gender; (b) words in the singular shall mean and
includ  |  al and vice versa; and (c) the word "may" gives sole discretion without any obligation to
take a  |

        |  ver's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.
        |  fer of the Property or a Beneficial Interest in Borrower. As used in this Section 18,
"Inter  |  Property" means any legal or beneficial interest in the Property, including, but not limited
to, th  |  ial interests transferred in a bond for deed, contract for deed, installment sales contract or
escro   |  nt, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

        |  y part of the Property or any Interest in the Property is sold or transferred (or if Borrower
is not  |  person and a beneficial interest in Borrower is sold or transferred) without Lender's prior
writte  |  Lender may require immediate payment in full of all sums secured by this Security
Instru  |  wever, this option shall not be exercised by Lender if such exercise is prohibited by
Appl    |

        |  exercises this option, Lender shall give Borrower notice of acceleration. The notice shall
provi   |  of not less than 30 days from the date the notice is given in accordance with Section 15
within  |  orrower must pay all sums secured by this Security Instrument. If Borrower fails to pay
these   |  r to the expiration of this period, Lender may invoke any remedies permitted by this
Securi  |  ent without further notice or demand on Borrower.

        |  ver's Right to Reinstate After Acceleration. If Borrower meets certain conditions,
Borro   |  ave the right to have enforcement of this Security Instrument discontinued at any time
prior   |  lest of: (a) five days before sale of the Property pursuant to Section 22 of this Security
Instru  |  uch other period as Applicable Law might specify for the termination of Borrower's right
to rei  |  (c) entry of a judgment enforcing this Security Instrument. Those conditions are that
Borro   |  ays Lender all sums which then would be due under this Security Instrument and the Note
as if i.  |  ion had occurred; (b) cures any default of any other covenants or agreements; (c) pays all
expen   |  d in enforcing this Security Instrument, including, but not limited to, reasonable attorneys'
fees,   |  spection and valuation fees, and other fees incurred for the purpose of protecting Lender's
intere  |  roperty and rights under this Security Instrument; and (d) takes such action as Lender may
reason  |  ire to assure that Lender's interest in the Property and rights under this Security
Instru  |  Borrower's obligation to pay the sums secured by this Security Instrument, shall continue
uncha   |  s as otherwise provided under Applicable Law. Lender may require that Borrower pay
such i  |  nt sums and expenses in one or more of the following forms, as selected by Lender: (a)
cash;   |  order; (c) certified check, bank check, treasurer's check or cashier's check, provided any
such d  |  wn upon an institution whose deposits are insured by a federal agency, instrumentality or
entity  |  ectronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and
obliga  |  ed hereby shall remain fully effective as if no acceleration had occurred. However, this
right   |  shall not apply in the case of acceleration under Section 18.

        |  Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in
the N   |  er with this Security Instrument) can be sold one or more times without prior notice to
Borro   |  e might result in a change in the entity (known as the "Loan Servicer") that collects
Periodi  |  nts due under the Note and this Security Instrument and performs other mortgage loan
servici  |  tions under the Note, this Security Instrument, and Applicable Law. There also might be
one o   |  nges of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan
Servic  |  ver will be given written notice of the change which will state the name and address of the
new l   |  cer, the address to which payments should be made and any other information RESPA

0080810195 - 9701
Initials: BGL SH

Page 11 of 15    05/10/2005 3:12:11    Form 3014   1/01

-11IL (05/2005)R.

require... ... ection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is
service... ... an Servicer other than the purchaser of the Note, the mortgage loan servicing obligations
to Bor... ... remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not
assum... ... Note purchaser unless otherwise provided by the Note purchaser.

... ... rrower nor Lender may commence, join, or be joined to any judicial action (as either an
indivi... ... nt or the member of a class) that arises from the other party's actions pursuant to this
Securi... ... ent or that alleges that the other party has breached any provision of, or any duty owed by
reason... ... ecurity Instrument, until such Borrower or Lender has notified the other party (with such
notice... ... ompliance with the requirements of Section 15) of such alleged breach and afforded the
other... ... to a reasonable period after the giving of such notice to take corrective action. If
Appli... ... provides a time period which must elapse before certain action can be taken, that time
period... ... eemed to be reasonable for purposes of this paragraph. The notice of acceleration and
oppor... ... ure given to Borrower pursuant to Section 22 and the notice of acceleration given to
Borro... ... nt to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective
action... ... s of this Section 20.

... ... dous Substances. As used in this Section 21: (a) "Hazardous Substances" are those
substa... ... ed as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the
follow... ... nces: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides
and h... ... olatile solvents, materials containing asbestos or formaldehyde, and radioactive materials;
(b) "I... ... tal Law" means federal laws and laws of the jurisdiction where the Property is located that
relate... ... safety or environmental protection; (c) "Environmental Cleanup" includes any response
action... ... action, or removal action, as defined in Environmental Law; and (d) an "Environmental
Cond... ... ns a condition that can cause, contribute to, or otherwise trigger an Environmental
Clean...

... ... hall not cause or permit the presence, use, disposal, storage, or release of any Hazardous
Subst... ... reaten to release any Hazardous Substances, on or in the Property. Borrower shall not do,
nor a... ... e else to do, anything affecting the Property (a) that is in violation of any Environmental
Law,... ... reates an Environmental Condition, or (c) which, due to the presence, use, or release of a
Hazar... ... ance, creates a condition that adversely affects the value of the Property. The preceding
two s... ... hall not apply to the presence, use, or storage on the Property of small quantities of
Hazar... ... ances that are generally recognized to be appropriate to normal residential uses and to
maint... ... e Property (including, but not limited to, hazardous substances in consumer products).

... ... hall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit
or ot... ... y any governmental or regulatory agency or private party involving the Property and any
Hazar... ... tance or Environmental Law of which Borrower has actual knowledge, (b) any
Envir... ... ondition, including but not limited to, any spilling, leaking, discharge, release or threat of
releas... ... Hazardous Substance, and (c) any condition caused by the presence, use or release of a
Hazar... ... ance which adversely affects the value of the Property. If Borrower learns, or is notified
by an... ... ental or regulatory authority, or any private party, that any removal or other remediation
of any... ... s Substance affecting the Property is necessary, Borrower shall promptly take all necessary
remed... ... in accordance with Environmental Law. Nothing herein shall create any obligation on
Lende... ... vironmental Cleanup.

0080810195 - 9701
Initials: _____

-I21L (05/2005)Rev C

FORM COVENANTS. Borrower and Lender further covenant and agree as follows:

ration; Remedies. Lender shall give notice to Borrower prior to acceleration following ach of any covenant or agreement in this Security Instrument (but not prior to der Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the action required to cure the default; (c) a date, not less than 30 days from the date en to Borrower, by which the default must be cured; and (d) that failure to cure the efore the date specified in the notice may result in acceleration of the sums secured by strument, foreclosure by judicial proceeding and sale of the Property. The notice shall Borrower of the right to reinstate after acceleration and the right to assert in the ceeding the non-existence of a default or any other defense of Borrower to acceleration . If the default is not cured on or before the date specified in the notice, Lender at its quire immediate payment in full of all sums secured by this Security Instrument demand and may foreclose this Security Instrument by judicial proceeding. Lender t to collect all expenses incurred in pursuing the remedies provided in this Section 22, ot limited to, reasonable attorneys' fees and costs of title evidence.

e. Upon payment of all sums secured by this Security Instrument, Lender shall release this ent Borrower shall pay any recordation costs. Lender may charge Borrower a fee for curity Instrument but only if the fee is paid to a third party for services rendered and the ee is permitted un er Applicable Law

r of Homestead. In accordance with Illinois law, the Borrower hereby releases and waives nd by virtue of the Illinois homestead exemption laws.

0080810195 - 9701
Initials: BcD SH
Page 13 of 15    06/10/2005 3:12:11    Form 3014  1/01

-131L (05/2005)Rev 01

STATE OF ILLINOIS,      County ss: Cook

_Felipe Soto_____ a Notary

Public in and for said county and in said state, hereby certify that

B___ Unde o Ishmael and Seidat A. Ishmael

_____

_____

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal of this  6 - 11 - 05

My Commission Expires: 5-8-08

_Felipe Soto_
Notary Public

```
~~~~~~~~~~~~~~~~~~~~~~~
   OFFICIAL SEAL
   FELIPE SOTO
   PUBLIC - STATE OF ILLINOIS
   MISSION EXPIRES:05:08:08
~~~~~~~~~~~~~~~~~~~~~~~
```

0080810195 - 9701

06/10/2005 3:12:11 PM

D-15IL (05/2005)Rev. 01

. . . NG BELOW, Borrower accepts and agrees to the terms and covenants contained in this Secu... ...ent and in any Rider executed by Borrower and recorded with it.

Witn...

_____  x  _____ (Seal)
                            BABATUNDE O ISHMAEL        -Borrower

_____  _____ (Seal)
                            SEIDAT A ISHMAEL          -Borrower

_____ (Seal)    _____ (Seal)
                 -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
                 -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
                 -Borrower                          -Borrower

0080810195-9701



Page 14 of 15  06/10/2005 3:12:11 PM  Form 3014  1/01

:G-14il (05/2005)Rev (1

# EXHIBIT D

6/10/05 5:46 PM

A U.S. Department of Housing
and Urban Development

| | |
|---|---|
| 1 [ ] FHA | 2 [ ] FMHA [ ] Conv. Unins |
| 4. [ ] VA | 5. [ ] Conv. Ins. [X] Other. |
| 6 File Number | 7. Loan Number |
| 75081 | 00880910195 |
| 8. Mortgage Ins. Case No. | |

### Settlement Statement

Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing; they are shown here for information purposes and are not included in the totals.

D. Name of Borrower: Babalunde O. Ishmael

E. Name of Seller:

F. Name of Lender: Argent Mortgage Company. LLC, 1701 Golf Road, Rolling Meadows, IL 60008

G. Property Location: Second Addition to Hinkamp and Company's Western Avenue; . Cook County
Illinois

7919 South Washtenaw Avenue, Chicago, IL 60652

H. Settlement Agent: Citywide Title Corporation (312) 492-8934     TIN:     36-4162376

Place of Settlement: 850 West Jackson Suite 320 Chicago, IL 60607

I. Settlement Date: 6/11/05     Proration Date: 6/16/05

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross amount due from borrower: | | 400. Gross amount due to seller: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,198.15 | 403. | |
| 104. Payoff 1st Mortgage to Washington Mutual | 109,352.26 | 404. | |
| 105. TI Judgement #3 to Baker,Miller | 11,691.21 | 405. | |
| Adjustments for items paid by seller in advance: | | Adjustments for items paid by seller in advance: | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross amount due from borrower: | 126,241.62 | 420 Gross amount due to seller: | |
| 200. Amounts paid by or in behalf of the borrower: | | 500. Reduction in amount due to seller: | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 136,500.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller: | | Adjustments for items unpaid by seller: | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total paid by/for borrower: | 136,500.00 | 520. Total reduction in amount due seller: | |
| 300. Cash at settlement from/to borrower: | | 600. Cash at settlement to/from seller: | |
| 301. Gross amount due from borrower (line 120) | 126,241.62 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 136,500.00 | 602. Less total reduction in amount due seller(line 520) | |
| 303. CASH ()FROM (X)TO BORROWER | 10,258.38 | 603. CASH ()FROM ()TO SELLER | |

SUBSTITUTE FORM 1099 SELLER STATEMENT · The information contained in Blocks E. G. H and I and on line 401 (or. if line 401 is asterisked. lines 403 and 404). 406. 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported
SELLER INSTRUCTION - If this real estate was your principle residence, file form 2119. Sale or Exchange of Principal Residence. for any gain. with your income tax return; for other transactions. complete the applicable parts of form 4797. Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Citywide Title Corporation (312) 492-8934 with your correct taxpayer identification number
If you do not provide Citywide Title Corporation (312) 492-8934 with your correct taxpayer identification number. you may be subject to civil or criminal penalties

L. Settlement Charges

| | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 700. | Total sales/broker commission | | |
| | Division of commission (line 700) as follows: | | |
| 701. | $ | | |
| 702. | $ | | |
| 703. | Commission paid at settlement | | |
| 704. | | | |
| 800. | Items payable in connection with loan | | |
| 801. | Loan origination fee          to  Chicago Mortgaeg Acceptance | 1,365.00 | |
| 802. | Loan discount | | |
| 803. | Appraisal fee          to  E&J Appraisals          POCB 300.00 | | |
| 804. | Credit report | | |
| 805. | Lender's inspection fee | | |
| 806. | Mortgage insurance application fee | | |
| 807. | Assumption fee | | |
| 808. | Underwriting Fee          to  Argent Mortgage Company, LLC | 550.00 | |
| 809. | Yield Spread Premium          to  Chicago Mortgaeg Acceptance          POCL 1365.00 | | |
| 810. | Processing Fee          to  Chicago Mortgaeg Acceptance | 575.00 | |
| 811. | Tax Related Services Fee          to  Argent Mortgage Company, LLC | 70.00 | |
| 812. | Flood Search Fee          to  Argent Mortgage Company, LLC | 9.00 | |
| 900. | Items required by lender to be paid in advance | | |
| 901. | Interest from   6/16/05  to  7/1/05   at $22.2500/day  for 15 days. | 333.75 | |
| 902. | Mortgage insurance premium for | | |
| 903. | Hazard insurance premium for | | |
| 904. | | | |
| 905. | | | |
| 1000. | Reserves deposited with lender | | |
| 1001. | Hazard insurance          8 mo.@ $58.1700 per mo. | 465.36 | |
| 1002. | Mortgage insurance | | |
| 1003. | City property taxes | | |
| 1004. | County property taxes          7 mo.@ $106.7200 per mo. | 747.04 | |
| 1005. | Annual assessments (maint.) | | |
| 1006. | | | |
| 1007. | | | |
| 1008. | | | |
| 1009. | | | |
| 1100. | Title charges | | |
| 1101. | Settlement or closing fee          to  Citywide Title Corporation | 200.00 | |
| 1102. | Abstract or title search          to  Citywide Title Corporation | 250.00 | |
| 1103. | Title examination | | |
| 1104. | Title insurance binder | | |
| 1105. | Document preparation | | |
| 1106. | Notary fees | | |
| 1107. | Attorney's fees to | | |
| | includes above items no.: | | |
| 1108. | Title insurance          to  XTB Title, LLC. | 150.00 | |
| | includes above items no.: | | |
| 1109. | Lender's coverage          $136,500.00          $150.00 | | |
| 1110. | Owner's coverage | | |
| 1111. | Endorsements,EPA,LOC          to  XTB Title, LLC. | 100.00 | |
| 1112. | Courier Fee          to  Citywide Title Corporation | 75.00 | |
| 1113. | Patriot Act Fee          to  Citywide Title Corporation | 35.00 | |
| 1114. | Remote Fee          to  Citywide Title Corporation | 125.00 | |
| 1200. | Government recording and transfer charges | | |
| 1201. | Recording fees:          $145.00 | 145.00 | |
| 1202. | City/county tax/stamps: | | |
| 1203. | State tax/stamps: | | |
| 1204. | DFI Policy Fee          to  State of Illinois | 3.00 | |
| 1205. | | | |
| 1206. | | | |
| 1300. | Additional settlement charges | | |
| 1301. | Survey | | |
| 1302. | Pest inspection | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1400. | Total settlement charges (entered on lines 103, section J and 502, section K) | 5,198.15 | |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____          _____
Citywide Title Corporation                                      Date

SELLER'S AND/OR PURCHASER'S STATEMENT Seller's and Purchaser's signature hereon acknowledges his/their approval of tax prorations and signifies their understanding that prorations were based on taxes for the preceding year or estimates for the current year and in the event of any change for the current year all necessary adjustments must be made between Seller and Purchaser; likewise any default in delinquent taxes will be reimbursed to Title Company by the Seller.

Title Company, in its capacity as Escrow Agent, is and has been authorized to deposit all funds it receives in this transaction in any financial institution, whether affiliated or not. Such financial institution may provide Title Company computer accounting and audit services directly or through a separate entity which if affiliated with Title Company may charge the financial institution reasonable and proper compensation therefore and retain any profits therefrom. Any escrow fees paid by any party involved in this transaction shall only be for checkwriting and input to the computers, but not for aforesaid accounting and audit services. Title Company shall not be liable for any interest or other charges on the earnest money and shall be under no duty to invest or reinvest funds held by it at any time. Sellers and Purchasers hereby acknowledge and consent to the deposit of the escrow money in financial institutions with which Title Company has or may have other banking relationships and further consent to the retention by Title Company and/or its affiliates of any and all benefits (including advantageous interest rates on loans) Title Company and/or its affiliates may receive from such financial institutions by reason of their maintenance of said escrow accounts.

The parties have read the above sentences, recognize that the recitations herein are material, agree to same, and recognize Title Company is relying on the same.

Purchasers/Borrowers                                       Sellers

_____          _____
Babatunde O Ishmael

_____          _____

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U S Code Section 1001 and Section 1010.

# EXHIBIT E

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary     ☒ Final

LENDER: Argent Mortgage Company, LLC
1701 Golf Road
Rolling Meadows, IL 60008
(847)690-0517

Broker License: 06571

Borrowers: BABATUNDE O ISHMAEL

Type of Loan:  ADJUSTABLE RATE
Date:  June 11, 2005

Address:      7919 S WASHTENAW
City/State/Zip:   CHICAGO, IL 60652

Loan Number:  0080810195 - 9701

Property:    7919 SOUTH WASHTENAW AVENUE, CHICAGO, IL  60652

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 7.445  % | $  205,179.56 | $  132,947.25 | $  338,126.81 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $814.01 | 08/01/2005 | | | |
| 335 | $948.21 | 08/01/2007 | | | |
| 1 | $940.22 | 07/01/2035 | | | |

VARIABLE RATE FEATURE:
☒ Your loan has a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:     You are giving a security interest in the property located at: 7919 SOUTH WASHTENAW AVENUE, CHICAGO, IL  60652

ASSUMPTION:   Someone buying this property
☒ cannot assume the remaining balance due under original terms
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to Argent Mortgage Company, LLC

LATE CHARGES:
If a payment is late, you will be charged  5.000%  of the overdue payment

PREPAYMENT:  If you pay off your loan early, you
☐ may   ☒ will not   have to pay a penalty

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties

I/We hereby acknowledge reading and receiving a complete copy of this disclosure

_____   _____   _____   _____
Borrower  BABATUNDE O ISHMAEL    Date    Borrower  SEIDAT A ISHMAEL         Date

_____   _____   _____   _____
Borrower                         Date    Borrower                          Date

EXHIBIT F

# NOTICE OF RIGHT TO CANCEL

LENDER:   Argent Mortgage Company. LLC

DATE:  June 11, 2005
LOAN NO :   0080810195 - 9701
TYPE:   ADJUSTABLE RATE

BORROWER(S): BABATUNDE O ISHMAEL

ADDRESS:       7919 S WASHTENAW
CITY/STATE/ZIP:   CHICAGO.IL 60652

PROPERTY:   7919 SOUTH WASHTENAW AVENUE
CHICAGO,  IL  60652

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1   The date of the transaction. which is

| DOCUMENT SIGNING DATE |
|---|
| 06/11/2005 |

; or

2   The date you received your Truth in Lending disclosures; or
3   The date you received this notice of your right to cancel

If you cancel the transaction, the mortgage/lien/security interest is also cancelled  Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property  If it is impractical or unfair for you to return the property you must offer its reasonable value  You may offer to return the property at your home or at the location of the property  Money must be returned to the address below  If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer. you may keep it without further obligation

---

## HOW TO CANCEL
If you decide to cancel this transaction. you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
Attn: Post Close Dept. 19th Floor
3 Park Plaza
Irvine, CA 92614

ATTN:  Post Close Dept.
FAX:   (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
|---|
| 06/15/2005 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time
I WISH TO CANCEL

_____          _____
SIGNATURE                                        DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement. all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221)

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____          Date          _____          Date
BORROWER/OWNER BABATUNDE O ISHMAEL                   BORROWER/OWNER SEIDAT A ISHMAEL

_____          Date          _____          Date
BORROWER/OWNER                                        BORROWER/OWNER

1054 NRC (Rev 04/03)                                                     05/10/2005 3:12:11 PM

# NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: June 11, 2005
LOAN NO : 0080810195 - 9701
TYPE: ADJUSTABLE RATE

BORROWER(S): BABATUNDE O ISHMAEL

ADDRESS: 7919 S WASHTENAW
CITY/STATE/ZIP: CHICAGO,IL 60652

PROPERTY: 7919 SOUTH WASHTENAW AVENUE
CHICAGO. IL 60652

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

| | | DOCUMENT SIGNING DATE | |
|---|---|---|---|
| 1 | The date of the transaction, which is | 06/11/2005 | ; or |

2  The date you received your Truth in Lending disclosures; or
3  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled Within 20 CALENDAR DAYS after we receive your notice. we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled. and we must return to you any money or property you have given to us or anyone else in connection with this transaction

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer. you may keep it without further obligation

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
Attn: Post Close Dept. 19th Floor
3 Park Plaza
Irvine, CA 92614

ATTN: Post Close Dept.
FAX: (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel. or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights

| | FINAL DATE TO CANCEL | |
|---|---|---|
| If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of | 06/15/2005 | |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above) If you send or deliver your written notice to cancel some other way. it must be delivered to the above address no later than that time

I WISH TO CANCEL

_____        _____
SIGNATURE                         DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221)

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers

_____        _____        _____        _____
BORROWER/OWNER BABATUNDE O ISHMAEL        Date        BORROWER/OWNER SEIDAT A ISHMAEL        Date

_____        _____        _____        _____
BORROWER/OWNER        Date        BORROWER/OWNER        Date

# NOTICE OF RIGHT TO CANCEL

LENDER:  Argent Mortgage Company, LLC

DATE:  June 11, 2005
LOAN NO :  0080810195 - 9701
TYPE:  ADJUSTAbLE  RATE

BORROWER(S): BABATUNDE O ISHMAEL

ADDRESS:      7919 S WASHTENAW
CITY/STATE/ZIP:  CHICAGO,IL 60652

PROPERTY:  7919 SOUTH WASHTENAW AVENUE
CHICAGO,  IL  60652

You are entering into a transaction that will result in a mortgage/lien/security interest on your home  You have a legal right under federal law to cancel this transaction. without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

| DOCUMENT SIGNING DATE |
|---|
| 06/11/2005 |

; or

2  The date you received your Truth in Lending disclosures; or
3  The date you received this notice of your right to cancel

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice. we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled. and we must return to you any money or property you have given to us or anyone else in connection with this transaction

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property  If it is impractical or unfair for you to return the property you must offer its reasonable value  You may offer to return the property at your home or at the location of the property  Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation

## HOW TO CANCEL
If you decide to cancel this transaction, you may do so by notifying us in writing. at:

Argent Mortgage Company, LLC
Attn: Post Close Dept  19th Floor
3 Park Plaza
Irvine, CA 92614

ATTN:  Post Close Dept
FAX:    (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel. or you may use this notice by dating and signing below  Keep one copy of this notice because it contains important information about your rights

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
|---|
| 06/15/2005 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above)  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time
I WISH TO CANCEL

_____          _____
SIGNATURE                                           DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221)

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers

_____   _____      _____   _____
BORROWER/OWNER  BABATUNDE O ISHMAEL   Date       BORROWER/OWNER  SEIDAT A ISHMAEL          Date

_____   _____      _____   _____
BORROWER/OWNER                              Date       BORROWER/OWNER                              Date

## NOTICE OF RIGHT TO CANCEL

.ENDER:   Argent Mortgage Company, LLC

DATE:   June 11, 2005
LOAN NO :   0080810195 - 9701
TYPE:   ADJUSTABLE RATE

BORROWER(S): BABATUNDE O ISHMAEL

ADDRESS:          7919 S WASHTENAW
CITY/STATE/ZIP:   CHICAGO,IL 60652

PROPERTY:   7919 SOUTH WASHTENAW AVENUE
                    CHICAGO,  IL  60652

You are entering into a transaction that will result in a mortgage/lien/security interest on your home  You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1   The date of the transaction, which is

| DOCUMENT SIGNING DATE |
|---|
| 06/11/2005 |

; or

2   The date you received your Truth in Lending disclosures; or
3   The date you received this notice of your right to cancel

If you cancel the transaction, the mortgage/lien/security interest is also cancelled  Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property  If it is impractical or unfair for you to return the property you must offer its reasonable value  You may offer to return the property at your home or at the location of the property  Money must be returned to the address below  If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation

---

### HOW TO CANCEL
If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
Attn: Post Close Dept  19th Floor
3 Park Plaza
Irvine, CA 92614

ATTN:  **Post Close Dept.**
FAX:   **(714)347-1575**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
|---|
| 06/15/2005 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above)  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE

_____
DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221)

Each borrower in this transaction has the right to cancel  The exercise of this right by one borrower shall be effective to all borrowers

_____   _____
BORROWER/OWNER BABATUNDE O ISHMAEL      Date

_____   _____
BORROWER/OWNER SEIDAT A ISHMAEL          Date

_____   _____
BORROWER/OWNER                          Date

_____   _____
BORROWER/OWNER                          Date

1064-NRC (Rev 04/05)                              06/10/2005 3:12:11 PM

# EXHIBIT G

Argent Mortgage Company, LLC
## BORROWER'S DISBURSEMENT AUTHORIZATION

| SETTLEMENT /CLOSING AGENT<br>CITYWIDE TITLE<br>850 W JACKSON BLVD #320<br><br>CHICAGO, IL 60607 | BORROWER(S)<br>BABATUNDE O ISHMAEL |
|---|---|
| PROPERTY ADDRESS<br>7919 SOUTH WASHTENAW AVENUE, CHICAGO, IL 60652 | SELLER(S) |
| CLOSING DATE 06/11/2005 FUNDING DATE 06/16/2005<br>LOAN NUMBER 0080810195 - 9701<br>LOAN PURPOSE Refi-Cash Out | LEGAL DESCRIPTION<br>LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF: |

FROM: Argent Mortgage Company, LLC -  Division 03 - Reg 01 Sales   PHONE NO (847)690-0517   FAX
FUNDING CONTACT:

### INSTRUCTIONS TO SETTLEMENT/CLOSING AGENT:
BELOW IS A LIST OF ALL SETTLEMENT CHARGES AND DISBURSEMENTS APPLICABLE TO THIS LOAN. YOU MUST USE THESE FIGURES TO PREPARE YOUR SETTLEMENT STATEMENT  YOU CANNOT DEVIATE FROM THESE FIGURES WITHOUT PRIOR WRITTEN AUTHORIZATION FROM Mary Roule. ANY AMOUNTS MARKED WITH AN " * " ARE PREPAID FINANCE CHARGES AND CANNOT BE INCREASED OR ADDED ONCE LOAN DOCUMENTS HAVE BEEN PREPARED UNLESS NEW LOAN DOCUMENTS ARE GENERATED

### Settlement Charges

LOAN AMOUNT:  $      136,500.00

| Item Payable | Pay to | | Paid Outside of Closing (POC) | Paid by Borrower | Paid by Lender | Paid by Seller | Total Amount Paid | |
|---|---|---|---|---|---|---|---|---|
| Underwriting Fee to Lender | Argent Mortgage Company, LLC | | $0 00 | $550 00 | $0 00 | $0 00 | $550 00 | * |
| Interest 15 days @ 22 25 | Argent Mortgage Company, LLC | | $0 00 | $333 75 | $0 00 | $0 00 | $333 75 | * |
| Premium Yield Adjustment 1 000% | Chicago Mortgage Acceptance | (W) | $0 00 | $0 00 | $1,365 00 | $0 00 | $1,365 00 | |
| Origination Fee to Broker 1 000% | Chicago Mortgage Acceptance | (W) | $0 00 | $1,365 00 | $0 00 | $0 00 | $1,365 00 | * |
| Processing Fee to Broker | CHICAGO MORTGAGE | (W) | $0 00 | $575 00 | $0 00 | $0 00 | $575 00 | * |
| Appraisal Fee | E& J Appraisals | | $300 00 | $300 00 | $0 00 | $0 00 | $300 00 | |
| ax Related Service Fee | Argent Mortgage Company, LLC | | $0 00 | $70 00 | $0 00 | $0 00 | $70 00 | * |
| Flood Search Fee | Argent Mortgage Company, LLC | | $0 00 | $9 00 | $0 00 | $0 00 | $9 00 | * |
| Closing/Remote Close/Trip Fee | CITYWIDE TITLE | (W) | $0 00 | $600 00 | $0 00 | $0 00 | $600 00 | * |
| Title Ins/Endorsements/Survey | CITYWIDE TITLE | (W) | $0 00 | $600 00 | $0 00 | $0 00 | $600 00 | |
| Recording/Recording | CITYWIDE TITLE | (W) | $0 00 | $145 00 | $0 00 | $0 00 | $145 00 | |
| Courier/Wire/E-Mail Fee | CITYWIDE TITLE | (W) | $0 00 | $50 00 | $0 00 | $0 00 | $50 00 | * |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | TOTAL CHARGES | $5,962 75 | |

### ESCROW ACCOUNTS

| | Annual Amount | Monthly Amount | Number of Months | Total Charge |
|---|---|---|---|---|
| TAXES | $1,280.68 | $106.72 | 7 | $747.04 |
| HAZARD INSURANCE | $698.00 | $58.17 | 8 | $465.36 |
| FLOOD INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| EARTHQUAKE INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| WINDSTORM INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| | | | INITIAL DEPOSIT | $1,212.40 |

Argent Mortgage Company, LLC
BORROWER'S DISBURSEMENT AUTHORIZATION

Additional Disbursements to Others

| Item Payable | | Account Number | Balance | Total Amount Paid |
|---|---|---|---|---|
| 0M1152915 FIRST SELECT INC | (W) | 0411152915 | $8,008.00 | $11,691.21 |
| WAMU | (W) | | $109,180.30 | $109,202.14 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DISBURSEMENTS | $120,893.35 |

FUNDING INFORMATION

| WIRE AMOUNT | |
|---|---|
| DEPOSIT(S) / EARNEST MONEY | |
| WAREHOUSE LINE | |
| CASH OUT | $10,096.50 |
| FUNDING CONTACT: | |

BORROWER(S) AUTHORIZATION

Argent Mortgage Company, LLC ("LENDER") IS HEREBY AUTHORIZED AND REQUESTED TO DISBURSE THE LOAN FUNDS TO THE SETTLEMENT/CLOSING AGENT TO BE APPLIED/DISBURSED IN ACCORDANCE WITH AND AS SHOWN IN THIS AUTHORIZATION. IT IS UNDERSTOOD THAT THIS STATEMENT IS AN ESTIMATE ONLY AND IS AUTHORIZED TO MAKE ADJUSTMENTS TO THE FIGURES AS NECESSARY TO REFLECT CHANGES IN THE CLOSING/SETTLEMENT DATE OR TO REFLECT UPDATED PAYOFF AMOUNTS FOR ANY PRIOR LIENS OR ACCOUNTS TO BE SATISFIED WITH THEIR LOAN PROCEEDS.

Borrower  BABATUNDE O ISHMAEL                Date                     Borrower                                    Date

Borrower                                    Date                     Borrower                                    Date

Borrower                                    Date                     Borrower                                    Date

SETTLEMENT/CLOSING AGENT REPRESENTATIVE            Date

# EXHIBIT H

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
## Chicago, Illinois  60603-3403
## (312) 739-4200
## (800) 644-4673
## (312) 419-0379 (FAX)
## Email: edcombs@aol.com
## www.edcombs.com

November 27, 2006

**BY CERTIFIED MAIL**

Argent Mortgage Company
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

HomEq Servicing Corporation
c/o registered agent
Illinois Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

Re: Notice of rescission, claim and lien, Babatunde Ishmael, Seidat Ishmael, 7919 S. Washtenaw Avenue, Chicago, IL 60652, loan of June 11, 2005

Ladies/Gentlemen:

The above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than one of you, please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on November 27, 2006.

Daniel A. Edelman