**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: THE CONSOLIDATED COMPLAINT FOR CLAIMS OF NON-BORROWERS [DOCKET NO. 323] | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS CERTAIN COUNTS OF THE NON-BORROWER COMPLAINT
AND MOTION FOR A MORE DEFINITE STATEMENT**

## I.     INTRODUCTION

Plaintiffs' Non-Borrower Complaint ("Complaint") suffers from several key deficiencies which require dismissal of certain counts and a more definite statement with respect to others.  In the Second Count of the Complaint, certain Plaintiffs have alleged that Defendants Ameriquest Mortgage Company and Ameriquest Capital Corporation (collectively, "Ameriquest") violated the Fair Credit Reporting Act ("FCRA") by failing to provide "clear and conspicuous" disclosures required by that statute.  This Court should dismiss this claim with prejudice because the statute does not allow a private right of action for such claims.

In the Third and Fourth Counts of the Complaint, Plaintiffs allege that Defendants violated FCRA and the Equal Credit Opportunity Act ("ECOA") by failing to provide an "adverse action notice" for a failure to offer the "best available rate."  This Court should also dismiss these claims with prejudice as a matter of law because neither statute required Defendants to provide any such notices.

Finally, the Complaint's class definitions (Complaint at p. 13-14) are impermissibly uncertain and overbroad, and accordingly, require a more definite statement.

## II.    LEGAL STANDARDS

This Court should grant a motion to dismiss for failure to state a claim where a plaintiff has not alleged facts that would entitle the plaintiff to relief.  Fed. R. Civ. P. 12(b)(6); *see Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996).  Plaintiffs cannot avoid such a result by relying on legal conclusions unsupported by any factual allegations.  *E.g.*, *Cushing v. City of Chicago*, 3 F.3d 1156, 1161 n. 5 (7th Cir. 1993).  A court need not acknowledge unreasonable inferences or unwarranted deductions of fact.  *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  And a court may not assume that plaintiff can prove facts different from those it has alleged.  *Associated Gen. Contractors, Inc. v. California State Council of Carpenters, Inc.*, 459 U.S. 519, 526 (1983).  Furthermore, a court should deny leave to amend where it is clear that the plaintiff cannot state a claim upon which relief can be granted as a matter of law.  *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266 (7th Cir. 1978).

In addition, "the Federal Rules of Civil Procedure envision a system in which concise, direct, and clear statements afford each party fair notice of the other's claims."  *Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7 of Jefferson County*, 747 F.2d 1195, 1198 (8th Cir. 1984).  Accordingly, where a complaint contains only conclusory legal assertions, unsupported by any *factual* allegations, a motion for a more definite statement is proper.  Fed. R. Civ. P. 12(e); *see Sun Co. v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 368 (E.D. Pa. 1996) (motion for more definite statement proper "when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself") (citation and internal quotation marks omitted).  Indeed, such a motion "is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief."  *Thomas v. Independence Twp.*, 463 F.3d 285, 301 (3d Cir. 2006); *Savas v. Sheehan, et al.*, No. 86 C 1531, 1986 U.S. Dist. LEXIS 24385, at *11 (N.D.Ill. June 10, 1986) (*stating* 12(e) motion for more definite statement appropriate method to obtain factual allegations to build an adequate defense.)

## III.    THIS COURT SHOULD DISMISS THE SECOND COUNT BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER FCRA FOR THE ALLEGED VIOLATION.

Plaintiff Quarterman is the only named-plaintiff who brings a claim against Ameriquest pursuant to the FCRA's "clear and conspicuous" disclosure requirements as set forth in 15 U.S.C. Section 1681m(d).  The Complaint alleges that between February 10, 2004 and December

9, 2004, Ameriquest accessed Quarterman's credit report for the purpose of mailing him a firm offer of credit (the "Offer Letter"). (Complaint, ¶ 35 and Ex. A). It further alleges that, after Ameriquest obtained consumer reports on him, it mailed him the Offer Letter. (*Id.* at ¶ 37 and Ex. A). Quarterman contends that the Offer Letter must be accompanied by "clear and conspicuous" disclosures, as mandated by 15 U.S.C. Section 1681m(d). Quarterman does not allege that any required disclosures were absent from Ameriquest's Offer Letter, but rather alleges that the Offer Letter failed to make the disclosures in a "clear and conspicuous" manner as required by 15 U.S.C. Section 1681m(d) [1] This Court should dismiss Quarterman's claim because the Fair and Accurate Credit Transactions Act ("FACTA") amendments to FCRA *explicitly bar* private rights of action under Section 1681m.

## A. THERE IS NO PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF 15 U.S.C. SECTION 1681m

On December 4, 2003, Congress substantially amended FCRA by enacting the FACTA. 117 Stat. 1952, P.L. 108-159 (2003). In so doing, it amended Section 1681m to eliminate private enforcement. 117 Stat. 1952; 15 U.S.C. § 1681m(h)(8). Congress did not provide a specific date upon which the amendments eliminating private enforcement of Section 1681m would become effective. Rather, the FACTA delegated to the Federal Trade Commission and the Board of Governors of the Federal Reserve System the duty to set effective dates for the provisions of the FACTA. FACTA Section 3, 117 Stat. at 1953. On February 11, 2004, the regulators promulgated December 1, 2004 as the effective date for Section 1681m(h) (i.e. Section 311(a)) of the FACTA. FACTA, 117 Stat. at 1988-89 (codified at 15 U.S.C. Section 1681m(h)). *See* 12 C.F.R. Section 222.1(c)(3)(xiii) and 16 C.F.R. Section 602.1(c)(3)(xiii).

The FACTA amendments provide as follows:

> (8)   Enforcement
>
> (A)   No Civil Actions
>
>       Sections 1681n and 1681o of this title shall not apply to any failure by any person to comply with this section.

---

[1] FCRA requires that a firm offer of credit be accompanied by a "clear and conspicuous" disclosure of the fact that information obtained from the consumer's credit report was used to preselect the consumer for the firm offer, that the consumer has the right to prevent such information from being obtained in the future, and how and to whom to communicate the consumer's desire to prevent credit information from being accessed for such offers in the future. 15 U.S.C. § 1681m(d)

(B)     Administrative Enforcement

This Section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section.  15 U.S.C. Section 1681m(h)(8).

By its plain and unambiguous terms, Section 1681m(h)(8) eliminates private rights of action to enforce any part of Section 1681m.  *Perry v. First National Bank*, 459 F.3d 816, 823 (7th Cir. 2006).

Courts have obeyed Congress's mandate and have routinely dismissed claims that disclosures were not made in a "clear and conspicuous" manner as required by 15 U.S.C. Section 1681m(d).  These courts have explicitly recognized that the FACTA amendments abolished the private right of action for alleged violations of the "clear and conspicuous" disclosure requirements.  *See, e.g., Bruce v. Grieger's Motor Sales, Inc.*, 422 F. Supp. 2d 988, 990-93 (N.D. Ind. 2006); *Putkowski v. Irwin Home Equity Corp.*, 423 F. Supp. 2d 1053, 1060-62 (N.D. Cal. 2006); *Stavroff  v. Gurley Leep Dodge, Inc.*, 413 F. Supp. 2d 962, 963-67; *Killingsworth v. Household Bank (SB) N.A.,* No. 05 C 5729, 2006 U.S. Dist. LEXIS 4050 (N.D. Ill. January 31, 2006); *Tremble v. Town & Country Credit Corp.*, No. 05 C 2625, 2006 U.S. Dist. LEXIS 1835 (N.D. Ill. January 18, 2006); *Bonner v. Home 123 Corp.*,  No. 2:05-CV-146 PV, 2006 U.S. Dist. LEXIS 37922 (N.D. Ind. May 25, 2006); *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006); *Murray v. Cross Country Bank*, 399 F.Supp. 2d 843-845 (N.D. Ill. 2005).  As the court states in *Killingsworth*:

"Killingsworth's arguments [that a private cause of action exists under Section 1681m after the FACTA amendments] have been soundly rejected in this [Northern District of Illinois], as well as in the central district of California.  Courts that have considered whether Section 1681m(h) applies to Section 1681m in its entirety, including seven judges in this District . . . have concluded that no private cause of action exists for a Section 1681m(d) disclosure violation in light of the FACTA."  2006 U.S. Dist. LEXIS 4050 at *9-11.

Quarterman's claim for violation of the FCRA "clear and conspicuous" disclosure requirements is no different from the claims in the above-mentioned cases.  Quarterman did not file his original complaint until February 25, 2005 (nearly three months after the December 1,

2004 effective date of FACTA) [RJN, Exh. 1]. As such, this Court should dismiss Quarterman's claim for violation of Section 1681m(d) with prejudice.

> **B. QUARTERMAN HAS NOT ALLEGED THAT HE RECEIVED THE OFFER LETTER PRIOR TO THE EFFECTIVE DATE OF FACTA. AS SUCH, HIS CLAIM MUST BE DISMISSED.**

Tellingly, the Complaint fails to allege precisely when Quarterman received the Offer Letter. (Complaint at Ex. A). It merely alleges that: "Ameriquest obtained numerous consumer reports on [Quarterman] during the period from February 10, 2004, through December 9, 2004 ... After Ameriquest obtained consumer reports on [Quarterman], Ameriquest mailed [Quarterman] a standardized written solicitation, a copy of which is attached as Exhibit A . . ." (Complaint, ¶¶ 35-37, 41).[2]

To the extent that Quarterman received the Offer Letter after the December 1, 2004 effective date of FACTA, it is clear that he has no private right of action to claim that the disclosures on that mailer were not "clear and conspicuous." *Perry v. First National Bank*, 459 F.3d 816, 823 (7th Cir. 2006) [and above-cited cases]. Moreover, Quarterman's failure to allege when he received the Offer Letter is sufficient grounds to dismiss this claim. This precise issue was addressed in *Miller v. Corestar Financial Group of PA, Inc.*, No. 05-5133, 2006 U.S. Dist. LEXIS 45323 at * 11-13 (E.D. Pa. June 29, 2006). There, the plaintiff (like Quarterman) filed his complaint for violations of FCRA's "clear and conspicuous" disclosure requirement after the effective date of FACTA. *Id.* at *11. The complaint failed to specify the date the plaintiff received the offer letter at issue. *Id.* at *11-12. The Court dismissed the claim, stating that:

> ". . . this count of Miller's complaint is not viable. As I discussed above, no private cause of action existed at the time of Miller's complaint to challenge the 'clear and conspicuous' disclosure requirements. Therefore, I will dismiss this count of Miller's complaint with leave to amend if he received the offer letter before FACTA's effective date. I am not dismissing this claim because it lacks detailed facts. Instead, I am dismissing it because, as it is presented, no claim exists." Id. at *13. *See also Putkowski v. Irwin Home Equity Corporation*, 423 F.Supp.2d 1053, 1063-64 (N.D. Cal. 2006) (Court dismisses a plaintiff's claim for violation of the clear and conspicuous disclosure requirement of 15 U.S.C.

---

[2]  The evidence in this case will show that the Offer Letter (Exhibit A) was mailed on December 6, 2004, and Quarterman received it sometime thereafter.

Section 1681m because plaintiff failed to allege what mailer she received or when she received it).

**C.    EVEN IF QUARTERMAN RECEIVED HIS OFFER LETTER PRIOR TO FACTA'S EFFECTIVE DATE, THIS COURT SHOULD STILL DISMISS HIS CLAIM.**

Even if Quarterman could somehow allege that he received an Offer Letter before December 1, 2004, such an allegation would not save his claim because Congress has eliminated private rights of action under Section 1681m.  If Quarterman were somehow able to show that he received his Offer Letter prior to December 1, 2004, he may try to argue that applying Congress's ban on private rights of action to his case would constitute impermissible retroactive application of a statute.[3]  Such an argument would fail.

**1.    15 U.S.C. Section 1681m(h)(8) Is a Procedural Change and Does Not Implicate Retroactivity Concerns.**

The Supreme Court, in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), held that "a statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating a statute's enactment."  511 U.S. at 269.  The *Landgraf* Court recognized that mere procedural or jurisdictional changes do not implicate retroactivity concerns because substantive rights are not impaired.  *Id.* at 273-74.  Indeed, it noted that "changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity."  511 U.S. at 275.  It added that, in determining whether a change was procedural or substantive, courts must look to see "whether the new provision attaches new legal consequences to events completed before its enactment."  *Id.* at 269-70.

Following the *Landgraf* analysis, Section 1681m(h)(8)'s bar to private lawsuits filed after its effective date may be applied to claims based upon pre-effective date events without implicating retroactivity concerns.  The conduct being regulated by Section 1681m(h)(8) is the filing of a private lawsuit.  A rule regarding when a party must initiate a lawsuit is a "rule . . . of procedure [which] regulate[s] secondary rather than primary conduct" and is therefore not retroactive.  *Landgraf*, 511 U.S. at 275.  The FACTA amendments do not, in any way, change the fact that Ameriquest (and other lenders) must comply with the substantive provisions of FCRA (including Section 1681m(d)'s clear and conspicuous disclosure requirements).  The

---

[3]  However, as set forth above, Quarterman has failed to allege when he received the Offer Letter.  Accordingly, this count is subject to dismissal.  *Miller*, 2006 U.S. Dist. LEXIS 45323 at *11-13.

FACTA amendments merely changed *who* may enforce FCRA's substantive provisions by substituting an administrative action (brought by the FTC) for a private right of action.[4] Accordingly, applying Section 1681m(h)(8) to bar Quarterman's claims for violation of Section 1681m(d) does not have retroactive effect

One court in the Northern District of Illinois has concluded that there is nothing retroactive about finding that the FACTA precludes a private right of action for lawsuits filed after the December 1, 2004 effective date arising out of conduct that occurred before the effective date. In *Killingsworth v. Household Bank*, No. 05 C 5729, 2006 U.S. Dist. LEXIS 4050 (N.D. Ill. January 31, 2006), the plaintiff argued that Section 1681m(h)(8) should not be applied to her because she received her solicitation before the effective date of the FACTA amendments. The court disagreed, reasoning that "because Killingsworth filed this suit after the December 1, 2004 effective date of [15 U.S.C. Section 1681m(h)(8)], the Court need not determine whether or not the statutory provision should be applied retroactively. *Id.* at 12-13. Instead, the Court held that it must apply the law in effect at the time the lawsuit was filed. *Id.* at *13 (citing *Lara-Ruiz v. Immigration & Naturalization Serv.,* 241 F.3d 934, 944-45 (7th Cir. 2001).[5]

**2.    Even if the Court Were To Apply a Landgraf  Retroactivity Analysis, Barring Quarterman's Section 1681m(d) Claims Would Not Be Impermissibly Retroactive.**

A retroactivity analysis under *Landgraf* barring Quarterman's claim would be consistent with that analysis. The Supreme Court set forth the following framework to determine whether a statute enacted after the events in a lawsuit has an impermissible retroactive result:

> When a case implicates a federal statute enacted after the events in the suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party

---

[4]  In *Landgraf*, the Court found that the statute in question there implicated a federal statute enacted after the events in the lawsuit took place. 511 U.S. at 280. However, in the instant case, the FACTA amendments were enacted in December 2003, prior to any of the events that give rise to Quarterman's claims. Moreover, *Landgraf* concerned legislation that created or increased liability or exposure to potential liability for past conduct. FACTA, on the other hand, did not augment liability.

[5]  The *Killingsworth* case is currently on appeal to the United States Court of Appeals for the Seventh Circuit (case number 06-1616). Oral argument was heard on December 7, 2006.

possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.

*Landgraf*, 511 U.S. at 280. As set forth below, Congress has in fact expressly prescribed the proper reach of Section 1681m(h)(8), and no further analysis is necessary. Even if Congress had not provided such explicit guidance, Section 1681(m)(8) did not impair any right Quarterman possessed after the fact, did not increase liability of anyone for past conduct, and did not impose new duties with respect to any completed transaction. Accordingly, it is proper to apply Congress's ban on private rights of action and dismiss Quarterman's claim.

> **a.** **The Language of the FACTA Establishes that Congress Has Chosen to Apply the Bar to Private Suits to All Claims Made Under Section 1681m After the December 1, 2003 Enactment Date**

The first step in the *Landgraf* analysis is to consider whether Congress expressed its intent about the statute's proper temporal reach. Here, Congress has done so. In the FACTA, Congress addressed the scope of the bar on private suits for enforcement of Section 1681m:

> RULE OF CONSTRUCTION – Nothing in this Section, the amendments made by this section or any other provision of this Act shall be construed to affect any liability under section 616 or 617 of the Fair Credit Reporting Act (15 U.S.C. Section 1681n, 1681o) that existed on the day before the date of *enactment* of this Act. [emphasis added].

Section 312(f) of FACTA, 117 Stat. at 1993,

In this provision, Congress expressly refers to the date of "enactment" of the FACTA, not the "effective date" set by the federal agencies. This makes clear that the provisions of FACTA that bar private suits do not affect any claims that existed before "enactment" of the statute. Significantly, Congress did not indicate that it intended to preserve the right to bring private suits for putative violations of Section 1681m of the FCRA that arose after enactment of FACTA (in December 2003), but before the chosen effective date (December 1, 2004) for the bar on private suits. If Congress had already concluded that all claims arising before the *effective date* of the FACTA were preserved, there would have been no need for Congress to have expressly limited the scope of the FACTA's ban on private actions only to those arising before *enactment* of the FACTA. Any claims arising before the December 4, 2003 date of *enactment* would necessarily be included within and preserved by any rule that preserved claims arising before the December

1, 2004 *effective date*. Plaintiffs admit that Quarterman received the Offer Letter in or after 2004, after the date of the enactment.

Because Congress has addressed the temporal scope of Section 1681m(h)(8)'s bar to private lawsuits, this Court should give Congress' statements effect. *Landgraf*, 511 U.S. at 280. Since Quarterman filed his lawsuit after the effective date of the statute, and since his claims arose after the date of enactment of the statute, his claims under 15 U.S.C. Section 1681m(d) should be barred. One district court has come to a similar conclusion on this precise issue. In *Crowder v. PMI Mortgage Ins. Co.*, No. 2:06cv0114-VPM [WO], 2006 U.S. Dist. LEXIS 35497 (M.D. Ala. May 26, 2006), the plaintiff filed a lawsuit after the *effective date* of FACTA. The alleged violations occurred after the *enactment date* but before the *effective date*. *Id.* at *14. The Court dismissed the complaint, reasoning:

> This provision [Section 312(f)] buttresses the conclusion that Congress did not intend for the bar to private civil lawsuits to apply to conduct giving rise to private civil liability before *4 December 2003*. Giving Congress the benefit of any doubt about its ability to distinguish the date of enactment from the effective date, the logical inference to be drawn is that Congress intended to bar private civil actions filed *after* the relevant effective date (1 December 2004) when the conduct occurred after *3 December 2003*. *Id.* at *12-13 (italics in original).

2006 U.S. Dist. LEXIS 35497, at *14.

The Court should be aware of two cases, one from the Seventh Circuit and one from this District, that arguably contradict this analysis.

In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), in the context of reviewing a class certification order, the Seventh Circuit commented in dicta that 15 U.S.C. Section 1681m(h)(8) "abolishes private remedies . . . but that change does not apply to offers made before its effective date . . ." 434 F.3d at 948. However, the retroactivity issue was not at issue in *Murray*, and was not addressed by the Seventh Circuit in the context of an actual legal dispute or included as part of the Court's reasoning in resolving the issue before it (*i.e.* class certification). The retroactivity issue is currently on appeal before the Seventh Circuit in *Killingsworth v. Household Bank*.

In *Panko v. Discover Financial Services, LLC*, No. 05 C 5422006, U.S. Dist. LEXIS 79797 (N.D. Ill. October 23, 2006), the district court held that FACTA would have retroactive

effect if applied to bar a Section 1681m claim filed after the FACTA *effective date*, but where the claims arose pre-*effective date*. While the *Panko* court concluded that "Congress' intent about [FACTA's] retroactivity is unclear," it did not analyze the language of Section 312(f) set forth above. Moreover, unlike in the instant Quarterman case, the underlying facts were that Panko's claims arose prior to the December 4, 2003 *enactment date* of the FACTA. Accordingly, as a practical matter, even if the *Panko* Court had properly analyzed the import and effect of Section 312(f), Panko would have been allowed to proceed with a private right of action.

This Court should honor Congress's intent. Because Quarterman filed his lawsuit after the effective date of the statute, and because his claims arose after the date of enactment of the statute, his claims under Section 1681m(d) should be barred.

> **b.** **Even Absent Congress's Clear Language, Application of the FACTA To Bar Quarterman's Claims Would Not Be Retroactive.**

Even if Congress had not explicitly set forth the temporal reach of Section 1681m(h)(8), this Court should still apply the FACTA's bar to private suits and dismiss Quarterman's claim. Under the second prong of *Landgraf*, a court must "determine whether the new statute would have retroactive effect, *i.e.* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." 511 U.S. at 280. Congress' ban on private rights of action did not impose new burdens on Quarterman after the fact. Indeed Congress enacted that ban in December of 2003, and Quarterman knew as of February 2004 that he would be unable to enforce a private right of action as of December 1, 2004. Although Quarterman fails to allege precisely when he received the Offer Letter in question, Quarterman does allege that Ameriquest accessed his credit between February 10, 2004 and December 9, 2004 (Complaint, ¶ 35), all of which occurred *after* the enactment of the FACTA amendments, and *after* the agencies' announcement of the effective date. However, Quarterman filed no claim, and took no other action, with respect to the claimed violations of Section 1681m(d) until *after* 15 U.S.C. Section 1681m(h)(8) became effective, as he did not file his original complaint until February 25, 2005.

Further, Section 1681m(h)(8) does not impair any rights that Quarterman had when he acted. *Landgraf*, 511 U.S. at 280. The "right" protected by the "clear and conspicuous" disclosure provisions of the FCRA is not impaired because that right still exists. The only

difference is that the "right" is now enforceable by federal agencies.[6]  As the Court in *Crowder* correctly noted, "giving effect to section 1681m(h)(8) to preclude [a lawsuit filed after the *effective date* but where the events occurred pre-*effective date*] would not be impermissibly retroactive.  Therefore, the law currently in existence - - i.e., no private right of action - - must apply . . ."  *Crowder*, 2006 U.S. Dist. LEXIS 35497 at *19.

## IV.    THIS COURT SHOULD DISMISS THE THIRD AND FOURTH COUNTS BECAUSE FCRA AND ECOA DO NOT REQUIRE ADVERSE ACTION NOTICES TO BE SENT FOR FAILURE TO OFFER THE BEST AVAILABLE RATE.

Under FCRA, if a mortgage lender takes an "adverse action" with respect to a consumer in connection with its lending decision based at least in part on a consumer report obtained in connection with a mortgage, the lender must provide the consumer with an adverse action notice. 15 U.S.C. § 1681b(a)(3)(A).  Similarly, under ECOA, if a lender takes "adverse action" with respect to a consumer, it must provide the consumer with notice.  15 U.S.C. § 1691(d).  Plaintiff Burggraff is the only named-plaintiff who sues Ameriquest for violations of FCRA and ECOA's "adverse action" requirements.  Those claims are set forth in the Third and Fourth Counts.  Both claims fail because, under the admitted facts, Defendants were under no statutory duty to provide an adverse action notice.

### A.    LENDERS ARE ONLY REQUIRED TO PROVIDE ADVERSE ACTION NOTICES IN LIMITED CIRCUMSTANCES.

ECOA squarely addresses the issue of "adverse actions," and defines that term as follows:

> [A] denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. (the "Credit Specific Definition").

15 U.S.C. § 1691(d)(6).  FCRA adopts the same definition of "adverse action."  15 U.S.C. § 1681a(k)(1)(A).  It is well-settled that the Credit Specific Definition applies to credit transactions like the one at issue in the case at bar.  The Federal Trade Commission, the regulatory body

---

[6]   It is also important to remember that this lawsuit is not about any actual damages or harm that Quarterman actually suffered.  Quarterman never even obtained a loan from Ameriquest.  Rather, he is suing over a technical violation of the FCRA:  claiming that a piece of paper he allegedly received did not contain "clear and conspicuous" disclosures.  Even so, Quarterman did not file his lawsuit until after the effective date of the FACTA Amendments barring private enforcement of Section 1681m.

responsible for administering and enforcing FCRA (*see* 15 U.S.C. § 1681s) has come to this conclusion, recognizing that Congress defined adverse action in the credit context to have only the meaning set forth in ECOA (*i.e.*, only the Credit Specific Definition).[7] Federal courts across the country have similarly recognized the applicability of the Credit Specific Definition for credit transactions. For example, in *Mark v. Valley Insurance Company*, one district court observed that the Credit Specific Definition, "by its own terms applies to credit transactions." 275 F.Supp.2d 1307, 1315 (D. Or. 2003). Other courts have recognized that under FCRA, "adverse action" in a credit transaction is defined by reference to ECOA. *See, e.g., Harper v. Lindsay Chevrolet Oldsmobile*, 212 F. Supp. 2d 582, 591 n.30 (E.D. Va. 2002); *Austin v. J.C. Penney Co.*, 162 F. Supp. 2d 495, 497 n.2 (E.D. Va. 2001).[8] Thus, for credit transactions pursuant to both FCRA and ECOA, a lender must provide an adverse action notice only where there is a "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1681a(k)(1)(A); 15 U.S.C. § 1691(d)(6).

Under the Credit Specific Definition applicable here, lenders need not provide an adverse action notice in cases where the borrower does not request specific credit terms. In response to an inquiry asking whether an adverse action notice was required when a company approved an

---

[7] *See* Letter from Laura D. Berger, Esq. of the FTC to Mr. Elias Latour dated June 28, 2001, (hereafter, the "Berger-Latour Letter") (no adverse action occurs if the borrower has not first requested a specific loan rate); *see also* Letter from Ronald G. Issac, Esq. of the FTC to Mr. Don Gowen dated April 29, 1999 ("with respect to actions involving credit, the term 'adverse action' has the same meaning as the term is defined under the Equal Credit Opportunity Act' and noting that "[u]nder the ECOA, adverse action must involve either (1) an 'application' by the consumer or (2) a termination of the consumer's account or an unfavorable change in the terms of that account"); Letter from Christopher W. Keller, Esq. of the FTC to Ryan S. Stinneford, Esq. dated July 14, 2000 ("the FCRA provides that, in the context of a credit application, 'adverse action' shall have the same meaning for purposes of the FCRA as is provided in the ECOA").

[8] In *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971 (7th Cir. 2004), the Seventh Circuit suggests in dicta that the so-called "catchall provision" applies to credit transactions. However, it did not address the question of whether the "catchall provision" *versus the Credit Specific Definition* should apply in credit transactions. Further, the specific facts in *Treadway* preclude its application in the instant case. *Treadway* involved an automobile dealer's unilateral decision (after a review of the consumer's credit report) *not* to submit a credit application to any lender. The Court found that this amounted to a *denial* of credit triggering the adverse action notice requirements of FCRA and ECOA. 362 F.3d at 983. The *Treadway* court did not hold that the "adverse action" notification provisions are triggered whenever a lender offers a consumer a rate other than its "best" rate based upon information in a consumer report. Further, the *Treadway* court did not discuss the impact of the FACTA amendments' Risk Based Pricing Notice (see discussion in section D below), nor did it discuss the FTC's multiple pronouncements that the Credit Specific Definition applies in the lending context [See RJN, Exh. 2], nor did it explain how the catchall provision can be applied to a credit transaction without making the Credit Specific Definition superfluous. The *Crane v. American Home Mortgage Corp.*, 2004 U.S. Dist. LEXIS 22477 (E.D. Pa. 2004) is equally deficient. Although it is factually similar to our case at hand, it too fails to discuss the foregoing critical issues.

application for credit but used its highest interest rates due to a borrower's poor credit, the FTC confirmed that no adverse action occurs if the borrower had not first requested a specific loan rate:

> in the circumstances you described, you would be entitled to the 'adverse action' notice required by Section 615(a) if you applied for credit on particular terms, were offered credit only on less favorable terms (e.g. lower credit limit, higher interest rate) based on information in a consumer report, and refused to accept those terms or use the credit offered. However, *if you did not apply for credit on particular terms*, or if you were offered credit and accepted, you are not entitled to notice because you did not suffer 'adverse action' as defined in Section 603(k)(1)(A) of the FCRA.

(*See* Berger-Latour Letter, Exhibit 2 to RJN) (emphasis added).

### B. BECAUSE DEFENDANTS DID NOT DENY OR REVOKE CREDIT, AND DID NOT CHANGE EXISTING CREDIT TERMS, THEY WERE NOT REQUIRED TO PROVIDE AN ADVERSE ACTION NOTICE.

In the Complaint, Burggraff admits that Ameriquest did not deny or revoke credit from him, and there was no change in the terms of an existing credit arrangement. (Complaint at ¶ 4). And he does not allege that he requested particular loan terms.[9] Rather, Burggraff's claims (and the class claims) are based upon his assertion that Ameriquest failed to offer him the best available credit terms after reviewing his credit report:

> [W]hen Ameriquest determines that information contained in the consumer report . . . is derogatory based in whole or in part on the consumer's credit score or consumer information, Ameriquest has instituted a corporate policy of quoting the consumers *terms less favorable than its best available terms*. Ameriquest was a user of consumer reports and took adverse action against the Plaintiff Adolph Peter Kurt Burggraff and members of Sub-class C in *quoting them less favorable final credit terms* based in whole or in part on information contained in their consumer reports. Ameriquest was obligated to provide an adverse action notice to Plaintiff Adolph Peter Kurt Burggraff and members of Sub-class C pursuant to 15 U.S.C. Section 1681m, and failed to do so in violation of the FCRA [and ECOA].

---

[9]  Rather, Burggraff alleges that he was contacted by Ameriquest and offered loan terms. (Complaint, ¶ 54). Moreover, simply because a borrower has applied for a loan does not mean that he or she has requested specific credit terms. The FTC has explained that an application for a loan is not the same as a request for specific credit terms. *See* Berger-Latour Letter [Exhibit 2 to RJN].

(Complaint, ¶¶ 101-102, 107) (emphasis added).

Had Ameriquest refused to grant Burggraff credit in "substantially the amount or on substantially *the terms requested*," it would have been required to provide an adverse action notice. 15 U.S.C. § 1691(d)(6). Burggraff has made no such allegation and, as a result, this Court should dismiss his adverse action claims under FCRA and ECOA.[10]

### C. FOR MULTIPLE POLICY REASONS, THE COURT SHOULD DECLINE BURGGRAFF'S INVITATION TO IGNORE THE CLEAR LANGUAGE OF THE STATUTE.

In seeking to recover under the Third and Fourth Counts, Burggraff essentially invites this Court to ignore clear statutory language and allow him to recover because Defendants did not provide him with an adverse action notice after deciding not to offer him their "best available terms." Accepting that invitation would invite significant adverse consequences.

First, imposing such a requirement would cause confusion because there is no one "best available" set of terms. In the residential mortgage lending context, what constitutes the "best available" terms to one consumer may not be the "best available" terms to another. This is so because of the interplay among interest rates, payment of discount points, length of loan term, etc. Based on a borrower's individual circumstances, the "best available" terms could vary tremendously. Some borrowers may prefer paying points and receiving a lower interest rate. Others may prefer a higher interest rate with no points. Some may prefer a longer mortgage term, and others may prefer a short one. And, as the Court is well aware, loan rates and fees change daily, depending on a variety of market factors. These issues are especially relevant in the subprime lending industry (of which Ameriquest is a part), where loan terms vary greatly because borrowers do not conform to conventional lender's requirements (for example, a subprime borrower may have poor credit, be unable to document income, or have a past bankruptcy, yet have substantial equity in his or her property).

Second, even if it were possible for lenders to determine a "best available" set of terms, requiring lenders to provide adverse action notices whenever they failed to offer those terms would create extraordinary difficulties for lenders. For example, each adverse notice entitles the

---

[10] The issue of whether "adverse action" occurs under FCRA when a consumer does not receive the "best available rate" for insurance after a review of his or her consumer report is currently being considered by the United States Supreme Court on certiorari in *Safeco Insurance Company v. Burr, et al.* (Nos. 06-84; 06-100).

recipient to a free consumer report from the consumer-reporting agency. 15 U.S.C. § 1681j(c). Nearly all consumers would be entitled to a free report, resulting in huge additional costs.

Third, such a policy would require a lender to send an adverse action notice to nearly every consumer, regardless of how good his credit score is or how positively it impacts his/her loan terms, whenever a better credit score would have improved his/her terms. Only a small number of consumers will receive the "best available" terms when those rates are based in part on information from the consumer reports. Under such a system, the adverse notice would become so ubiquitous and the concept of "adverse action" so meaningless that the notices become useless, or worse: affirmatively confusing. For example, under Burggraff's interpretation of the adverse action rules, a person who received a lower interest rate after a review of her credit report would still receive an adverse action notice because she did not receive the lender's "best available rate." Indeed, the FTC cautioned Congress to this effect when Congress was addressing revisions to the FCRA – it explained in testimony before Congress, "if you give notices too widely and in too many circumstances … it becomes something people ignore."[11] The FTC also explained how important it was "to avoid a situation where in essence everyone is getting an adverse action notice because no one ever gets the absolute best rate."[12]

### D. THE PLAIN LANGUAGE OF THE FCRA AND THE FACTA AMENDMENTS CONFIRM THAT THERE IS NO ADVERSE ACTION FOR FAILURE TO OFFER THE BEST AVAILABLE RATES

The Credit Specific Definition does not talk about failure to offer "best available" rates, and does not require a hypothetical comparison of the terms charged to the consumer with the terms available to all other consumers with more favorable consumer report information.

The FACTA amendments to FCRA (Pub.L. 108-159) confirm this point. One of the changes FACTA makes to FCRA is an imposition of a *new and different* notice requirement when a consumer is offered credit terms, based upon information in a credit report, that are "materially less favorable than the most favorable terms available" to a "substantial proportion"

---

[11] *The Fair Credit Reporting Act and Issues Presented by Reauthorization of the Expiring Preemption Provisions: Hearings Before the S. Comm. on Banking, Housing, & Urban Affairs,* 108th Cong. 95-96 (2003) (testimony of J. Howard Beales, III, Director of Consumer Protections, Federal Trade Commission). [RJN 5].

[12] *The Fair Credit Reporting Act and Issues Presented by Reauthorization of the Expiring Preemption Provisions: Hearings Before the Senate Comm. on Banking, Housing, and Urban Affairs,* 108th Cong., 529 (2003) (testimony of Joel Winston, Associate Director, Bureau of Consumer Protection, Federal Trade Commission). [RJN 6]

of that creditor's other customers. P.L. 108-159, Section 3, Title III, Section 311(a); 15 U.S.C. Section 1681m(h) (the "Risk Based Pricing Notice").[13] The Risk Based Pricing Notice went into effect on December 1, 2004. *See* 69 Fed.Reg. 6526. That the Risk Based Pricing Notice is a new requirement is evidenced by the fact that the statute itself states that a person required to provide adverse action notice under 15 U.S.C. Section 1681m(a) cannot meet that requirement by providing a notice under this new subsection. 15 U.S.C. Section 1681m(h)(4).

The Risk Based Pricing Notice evidences that Ameriquest had no obligation to send Burggraff an adverse action notice when it allegedly did not offer him its "best available rate" after reviewing his credit report. If the term adverse action under Section 1681m(a) already included situations where a lender offers less than the best available credit terms based upon a review of the consumer's credit report, Congress would not have needed to amend FCRA to require the Risk Based Pricing Notice in that situation. That the FACTA amendments to FCRA impose a new requirement on lenders in the situation where the consumer does not receive the "best available credit terms" is further evidenced by the fact that the FACTA amendments expressly preclude private civil actions for enforcement of all of section 1681m (including the Risk Based Pricing Notice). 15 U.S.C. Section 1681m(h)(8); *Perry*, *supra*. Certainly, Congress did not intend consumers to bring private civil actions under FCRA and ECOA for failure to provide adverse action notices when a lender does not offer the best available rate, when FACTA precludes such private civil actions under the same set of facts.

## V.    PLAINTIFFS' CLASS ALLEGATIONS LACK SPECIFICITY AND ARE IMPROPER.

In the Complaint, Plaintiffs have made various class allegations. (Complaint, ¶¶ 63-65). These allegations are improperly overbroad and lack specificity. With respect to the class definitions of Sub-Class A (regarding failure to receive firm offers of credit), and Sub-Class B (regarding failure to provide clear and conspicuous disclosures), Plaintiffs completely fail to specify the scope of the class in terms of dates when the relevant violations occurred. This omission is critical, because FCRA (15 U.S.C. Section 1681p) requires that actions must be brought within the earlier of two years after discovery of the violation, or five years after the

---

[13] Congress delegated to the FTC the responsibility to define the terms "materially less favorable" and "substantial proportion." 15 U.S.C. Section 1681m(h)(1) and (6), which the FTC has not yet done.

violation occurs.[14]  Accordingly, Sub-Class A and Sub-Class B must at a minimum be limited to a time frame that only encompasses two years prior to the earliest filed complaint.  Moreover, the lack of  temporal specificity to the definition of Sub-Class B is also inappropriate in light of the FACTA amendments eliminating private rights of action for claims that arise after December 1, 2004.  15 U.S.C. § 1681m(h)(8).  Certainly, Plaintiffs cannot seek to certify a class that includes consumers who received Offer Letters *after* December 1, 2004.  Moreover, Plaintiffs cannot seek to certify a class that includes consumers who received Offer Letters prior to December 1, 2004 (but after December 4, 2003), when the putative class representative's original complaint was not filed until February 25, 2005 (after the effective date of the FACTA amendments barring private civil actions for clear and conspicuous disclosure claims).  *See Miller*, 2006 U.S. Dist. LEXIS 45323 at * 11-13;  *Putkowski,*  423 F.Supp.2d 1053, 1062-2064.

The definition of Sub-Class C (regarding adverse action under FCRA and ECOA) is also improperly overbroad and lacks specificity.  Like Sub-Class B, Sub-Class C is based upon an alleged violation of Section 1681m of FCRA.  However, it too does not account for the fact that the FACTA amendments eliminated private rights of action for claims arising after December 1, 2004.  15 U.S.C. § 1681m(h)(8).  Further, the class definition of Sub-Class C improperly attempts to encompass individuals who sought loans from Ameriquest from April 2001 forward.  The putative class representative for Sub-Class C is Burggraff, who filed his original complaint on November 30, 2004 [RJN 7].  Thus, based upon the ECOA and FCRA two year statute of limitations, Sub-Class C should only include non-borrowers who allegedly were the subject of adverse action between November 30, 2002, and November 30, 2004, not as far back as April 2001 as Plaintiffs allege.  15 U.S.C. § 1691e(f); 15 U.S.C. § 1681p.  Moreover, to the extent Plaintiffs are claiming some type of tolling based upon "discovery," Burggraff and other borrowers were on notice of potential claims when they were told they were being offered "less favorable terms."  (Complaint, ¶¶ 54-56).  Specifically for Burggraff, he admits that he was told he would receive "less favorable terms" in June 2003.  (*Id*. at ¶ 56).  Thus, any "discovery" delay would be minimal, and certainly would not entitle Plaintiffs to bring claims from April 2001 forward, as they suggest.

---

[14]  Plaintiffs cannot claim tolling based on lack of "discovery" of their FCRA/firm offer of credit/clear and conspicuous disclosure claims because they would be on notice of the alleged violations the date they received their firm offer of credit.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 20-21 (2001) (holding that the discovery rule does not apply to toll statute of limitations on an "improper disclosure" claim under FCRA).

Because Plaintiffs' class allegations are overly broad and improper, they should be forced to amend the Complaint to make their allegations more specific.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the Motion in its entirety.

DATED: January 19, 2007                    Respectfully submitted,

By: /s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457

**CERTIFICATE OF SERVICE**

I, Bernard E. LeSage, hereby certify that on this 19th day of January, 2007, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:    /s/ Bernard E. LeSage