# Exhibit 3

UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

Division of Financial Practices
Bureau of Consumer Protection

Ronald G. Isaac
Attorney

April 29, 1999

Mr. Don Gowen
Senior Vice President
Security Mutual Financial Services, Inc.
1310 Cantwell Avenue, S.W.
Decatur, Alabama 35601

Dear Mr. Gowen:

This will respond to your letter posing a series of questions related to the efforts of creditors to market additional credit to current and former borrowers of closed end consumer credit. Your questions focus on the term "credit or insurance transaction that is not initiated by the consumer," which is used in the amended Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681u, to refer to the practice of prescreening.[1] You observe that Section 603(m)(1) of the FCRA provides that this term does not include the use of a consumer report by a person with whom the consumer has an account or insurance policy for purposes of "reviewing the account or insurance policy," but the section offers no guidance as to what constitutes "reviewing." I believe your questions can be answered more easily by summarizing the treatment of current and former borrowers under the FCRA.

*Current Borrowers*

Section 604(a)(3)(A) of the FCRA gives a creditor a permissible purpose to obtain a consumer report without the consumer's consent "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer." Section 604 (a)(3)(F)(ii), which relates to deposit or other non-credit accounts, similarly provides a permissible purpose "to review an account to determine whether the consumer continues to meet the terms of the account." When obtaining consumer reports for such purposes, creditors need not comply with prescreening disclosure requirements because these transactions are exempt under Section 603(m)(1) of the FCRA.[2]

Your questions raise the issue of whether a creditor in a closed end credit transaction may exploit consumer reports obtained for "review" purposes in order to market its products or services. In the circumstances you described, we believe the answer is "no.". First, "review" is not a purpose for which a closed-end creditor would ordinarily need to obtain consumer reports on its customers. In commenting on the proposed provision which became Section 604(a)(3)(F)(ii), the Senate Committee on Banking, Housing, and Urban Affairs stated:

> Like creditors, banks and others may need to consult a consumer's report in
> order to determine whether the consumer's current account terms should be
> modified. For example, the institution may provide more favorable pricing

terms after consulting the report. *The permissible purpose created by this provision, however, is limited to an account review for the purpose of deciding whether to retain or modify current account terms.* (emphasis added).[3]

The terms of a closed-end credit transaction are predetermined and generally may not be changed unilaterally by the creditor unless the contract expressly provides for such action (*e.g.*, in the event of default). Therefore, the creditor is unlikely to have a reason to consider "whether to retain or modify current account terms" and, thus, would not have any routine need to procure consumer reports to "review" its accounts. Second, the credit bureau must, pursuant to Section 607(a), require the creditor to "certify the purposes for which the information is sought, and *certify that the information will be used for no other purpose.*" (emphasis added). Because Section 604(a) provides no authority for a creditor (or any party) to use a consumer report for marketing purposes,[4] a creditor would violate its certification by using an existing report in such a manner.

*Former Borrowers*

As the previously-quoted legislative history makes clear, "review" of an account under Section 604(a)(3) refers to an *existing* (i.e., open or current) account. A creditor has no *existing* business relationship with consumers whose closed end credit accounts have been paid off, *i.e.*, former borrowers. Hence, the creditor would either have to (1) obtain those consumers' written authorizations pursuant to Section 604(a)(2) to access their credit reports or (2) comply with the prescreening requirements set forth in Section 604(c) and, where applicable, Section 615(d).

*Adverse Action*

In response to your question, it is not considered an "adverse action" under the FCRA for a creditor to decide not to include a current borrower in a credit solicitation based in whole or in part on the creditor's review of consumer report information, whether that information is new or was previously acquired and retained in the borrower's file. Section 603(k) provides that with respect to actions involving credit, the term "adverse action" has the same meaning as the term is defined under the Equal Credit Opportunity Act ("ECOA"). Under the ECOA, adverse action must involve either (1) an "application" by the consumer[5] or (2) a termination of the consumer's account or an unfavorable change in the terms of that account that does not affect all or a substantial portion of the creditor's accounts within that class.[6] Failure to include a consumer in a solicitation for credit does not qualify as adverse action, as defined by the ECOA. Therefore, it does not constitute adverse action as defined by Section 603(k) of the FCRA.[7]

I trust this answers all of your questions. This is an informal staff opinion and is not binding on the Commission.

Sincerely,

Ronald G. Isaac

---

1. The Commission's Commentary on the Fair Credit Reporting Act defines "prescreening" as "the process whereby a consumer reporting agency compiles or edits a list of consumers who meet specific criteria and

provides this list to the client or a third party (such as a mailing service) on a behalf of the client for use in soliciting these consumers for the client's products or services." 55 Fed. Reg. 18,815.

2. In commenting on Senate Bill 650, which contained provisions very similar to the ones enacted as the "Consumer Credit Reporting Reform Act of 1996," the Senate Committee on Banking, Housing, and Urban Affairs stated:

> Section 603(m) makes it clear that the prescreening provisions of the FCRA do not apply where a consumer report is obtained by a creditor in connection with reviewing or collecting an *existing* account of the consumer for safety and soundness purposes, even if the creditor subsequently decides to change the credit available to the consumer (emphasis added).

S. Rep. No. 104-185 at 33 (1995). Hence, a creditor may obtain consumer reports for the purpose of reviewing its current closed end (or other) credit accounts without having to comply with the FCRA requirements applicable to prescreened transactions.

3. *Id.* at 35.

4. *Trans Union Corp. v. FTC*, 81 F. 3d 228, 234 (D.C. Cir. 1996).

5. Section 202.2(e) of Regulation B, the implementing regulation of the ECOA, defines "application" to mean "an oral or written request for an extension of credit that is made in accordance with procedures established by a creditor for the type of credit requested."

6. Section 202.2(c) of Regulation B.

7. See S. Rep. No. 104-185 at 32, which states:

> The definition [adverse action] does not cover situations such as those where a creditor obtains consumer reports on its customers in connection with a review of its credit or other portfolio and, in connection with the review, a consumer's account is not changed, or is changed in a way that is not less favorable to the interest of that consumer, even if the accounts of other consumers are changed in a more favorable manner.