**Exhibit 6**

```
                              Winston Transcript.htm
<!DOCTYPE HTML PUBLIC "-//W3C//DTD HTML 4.0 Transitional//EN">
<!-- saved from
url=(0096)http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=108_senate_heari
ngs&docid=f:95254.wais -->
<HTML><HEAD>
<META http-equiv=Content-Type content="text/html; charset=windows-1252">
<META content="MSHTML 6.00.5730.11" name=GENERATOR></HEAD>
<BODY><PRE>&lt;DOC&gt;
[108 Senate Hearings]
[From the U.S. Government Printing Office via GPO Access]
[DOCID: f:95254.wais]
```

                                                          S. Hrg. 108-579

                THE FAIR CREDIT REPORTING ACT AND
                ISSUES PRESENTED BY REAUTHORIZATION
                OF THE EXPIRING PREEMPTION PROVISIONS

=======================================================================

                                HEARINGS

                               before the

                             COMMITTEE ON
                 BANKING, HOUSING, AND URBAN AFFAIRS
                        UNITED STATES SENATE

                      ONE HUNDRED EIGHTH CONGRESS

                             FIRST SESSION

                                  ON

         THE HISTORY, PURPOSE, AND FUNCTION OF THE FAIR CREDIT
    REPORTING ACT AND PROVISIONS SUBJECT TO THE EXPIRING PREEMPTION
     PROVISIONS SPECIFICALLY; THE GROWING PROBLEM OF IDENTITY THEFT;
     AFFILIATE SHARING PRACTICES; ACCURACY OF CREDIT REPORT INFORMATION;
      CONSUMER AWARENESS AND UNDERSTANDING THE CREDIT GRANTING PROCESS AND
                  ADDRESSING MEASURES TO ENHANCE THE ACT

                              ----------

               MAY 20, JUNE 19, 26, JULY 10, 29, AND 31, 2003

                              ----------

       Printed for the use of the Committee on Banking, Housing, and Urban
                                  Affairs

                                                          S. Hrg. 108-579

                THE FAIR CREDIT REPORTING ACT AND
                ISSUES PRESENTED BY REAUTHORIZATION
                OF THE EXPIRING PREEMPTION PROVISIONS

=======================================================================

                                HEARINGS

Winston Transcript.htm

before the

COMMITTEE ON
BANKING, HOUSING, AND URBAN AFFAIRS
UNITED STATES SENATE

ONE HUNDRED EIGHTH CONGRESS

FIRST SESSION

ON

THE HISTORY, PURPOSE, AND FUNCTION OF THE FAIR CREDIT REPORTING ACT AND PROVISIONS SUBJECT TO THE EXPIRING PREEMPTION PROVISIONS SPECIFICALLY; THE GROWING PROBLEM OF IDENTITY THEFT; AFFILIATE SHARING PRACTICES; ACCURACY OF CREDIT REPORT INFORMATION; CONSUMER AWARENESS AND UNDERSTANDING THE CREDIT GRANTING PROCESS AND ADDRESSING MEASURES TO ENHANCE THE ACT

MAY 20, JUNE 19, 26, JULY 10, 29, AND 31, 2003

Printed for the use of the Committee on Banking, Housing, and Urban Affairs

U.S. GOVERNMENT PRINTING OFFICE
95-254          WASHINGTON : DC

For Sale by the Superintendent of Documents, U.S. Government Printing Office
Internet: bookstore.gpo.gov  Phone: toll free (866) 512-1800; (202) 512ÿ091800
Fax: (202) 512ÿ092250 Mail: Stop SSOP, Washington, DC 20402ÿ090001

COMMITTEE ON BANKING, HOUSING, AND URBAN AFFAIRS

RICHARD C. SHELBY, Alabama, Chairman

| | |
|---|---|
| ROBERT F. BENNETT, Utah | PAUL S. SARBANES, Maryland |
| WAYNE ALLARD, Colorado | CHRISTOPHER J. DODD, Connecticut |
| MICHAEL B. ENZI, Wyoming | TIM JOHNSON, South Dakota |
| CHUCK HAGEL, Nebraska | JACK REED, Rhode Island |
| RICK SANTORUM, Pennsylvania | CHARLES E. SCHUMER, New York |
| JIM BUNNING, Kentucky | EVAN BAYH, Indiana |
| MIKE CRAPO, Idaho | ZELL MILLER, Georgia |
| JOHN E. SUNUNU, New Hampshire | THOMAS R. CARPER, Delaware |
| ELIZABETH DOLE, North Carolina | DEBBIE STABENOW, Michigan |
| LINCOLN D. CHAFEE, Rhode Island | JON S. CORZINE, New Jersey |

Kathleen L. Casey, Staff Director and Counsel

Steven B. Harris, Democratic Staff Director and Chief Counsel

Peggy R. Kuhn, Senior Financial Economist

Mark A. Calabria, Senior Professional Staff

Dean V. Shahinian, Democratic Counsel

Page 2

Winston Transcript.htm
Lynsey N. Graham, Democratic Counsel

Joseph R. Kolinski, Chief Clerk and Computer Systems Administrator

George E. Whittle, Editor

(ii)

C O N T E N T S

----------

TUESDAY, MAY 20, 2003

| | Page |
|---|---|
| Opening statement of Chairman Shelby | 1 |

Opening statements, comments, or prepared statements of:
| | |
|---|---|
| Senator Crapo | 2 |
| Senator Dole | 7 |
|     Prepared statement | 44 |
| Senator Carper | 10 |
| Senator Johnson | 13 |
|     Prepared statement | 44 |
| Senator Bunning | 15 |
|     Prepared statement | 45 |
| Senator Sarbanes | 17 |
| Senator Bennett | 19 |
| Senator Miller | 22 |
| Senator Dodd | 22 |
| Senator Stabenow | 25 |
|     Prepared statement | 46 |
| Senator Schumer | 34 |

WITNESSES

| | |
|---|---|
| J. Howard Beales, III, Director, Bureau of Consumer Protection, U.S. Federal Trade Commission, Washington, DC | 3 |
|     Prepared statement | 46 |
| Response to written questions of: | |
|     Senator Crapo | 59 |
|     Senator Sarbanes | 61 |
|     Senator Bennett | 65 |
|     Senator Miller | 67 |

----------

THURSDAY, JUNE 19, 2003

| | |
|---|---|
| Opening statement of Chairman Shelby | 69 |

Opening statements, comments, or prepared statements of:
| | |
|---|---|
| Senator Johnson | 70 |
| Senator Dole | 71 |
| Senator Corzine | 72 |
| Senator Crapo | 73 |
| Senator Dodd | 74 |
| Senator Allard | 76 |
| Senator Schumer | 77 |
| Senator Bunning | 78 |
| Senator Sarbanes | 79 |

Winston Transcript.htm

   Senator Sarbanes. Mr. Plunkett, did you want to add to that?

   Mr. Plunkett. That is an extremely important proposal. It goes to the heart of modernizing the Fair Credit Reporting Act for consumers given the trend in risk-based pricing. These days people with slightly blemished credit are much more likely to be offered a credit card or a mortgage loan at a higher interest rate, maybe with higher fees, than they are to be turned down. This goes to Senator Bennett's point. Instead of throwing information at consumers, let us let them know that they are not being offered the most favorable rate because of a blemish on their credit. Let us eliminate the counteroffer loophole and tell them this up front. Then that will trigger their FCRA rights to get the credit report and to check for problems.

   Senator Sarbanes. Is there anyone at the table who disagrees with this?

   Ms. Smith. I have a question as to the implementation of such a rule. Let me say that this rule comes from Regulation B because the application of the adverse action notice requirements on Fair Credit Reporting parallel, by law, the ones that we have under the Board's Regulation B. Basically, the position that is taken in the Regulation is one that was set certainly in the days before risk-based pricing, and it was set both to give a bright-line test for when is an adverse action notice required or when is it triggered? Then also to avoid confusion on the part of a consumer who might receive a credit card, for example, in the counteroffer situation, and then simultaneously receive an adverse action notice saying your credit was granted but it somehow suffered because of information in your credit report or information about you and your credit experiences. So that is the context in which it was established.

   If the rule is changed, I think that there would be some practical difficulties in determining what exactly represents an adverse or an unfavorable term in the sense that with risk-based pricing, where you do have complexity in the pricing structure, where you have ranges--the example I used in the statement was from 7.9 to 14.9. And if someone receives the 8.9, because it is not the most favorable, the person would receive an adverse action notice.

   I guess I also have a question as to practical impact in the sense that if someone receives a notice saying that they did not receive the most favorable rate based on information in their credit report, how likely is that individual to follow up? They will have the opportunity and be alerted that there is information in their credit report. The question is how likely is someone who knows that he or she has a credit history that is not stellar, that does have some blemishes, to follow up by asking for the credit report? It is only an issue of the likely impact that it might have, so certainly making credit reports available is something that would be valuable to the consumer.

   Mr. Winston. If I might just respond to that. I agree with Ms. Smith that there are complexities, and we want to avoid a situation where in essence everyone is getting an adverse action notice because no one ever gets the absolute best rate, but I think those are complications that can be resolved through a fact-gathering process and a rulemaking.

   I do not think it is necessary that the adverse action notice be negative in the sense of we have done something bad to you. It can simply be a statement of fact that we looked at your credit report, and something in that report resulted in you getting the offer that you got. It just triggers in the

Page 379