## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: THE BORROWERS' CONSOLIDATED CLASS ACTION COMPLAINT [DOCKET NO. 325] | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'[1] MOTION TO DISMISS BORROWERS' COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

### I.      INTRODUCTION

The Borrowers' Consolidated Class Action Complaint (the "Complaint") [Docket No. 325] fails in its entirety because the Complaint does not allege any facts supporting any purported borrower's standing to pursue any of the claims therein.  Constitutional standing is a threshold issue in any litigation and, under Seventh Circuit law, it must be established at the outset of litigation by *clear and specific allegations of fact* showing a concrete injury that is causally connected to defendant's conduct and may be redressed through a favorable ruling.  The Complaint, which is comprised solely of legal conclusions, does not even come close to alleging the necessary facts in this regard.  In addition, plaintiffs (collectively, the "Borrower Plaintiffs")

---

[1] "Defendants" collectively refers to Ameriquest Mortgage Company ("AMQ"); AMC Mortgage Services, Inc. ("AMC"); Town & Country Credit Corporation ("T&C"); Ameriquest Capital Corporation ("ACC"); Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc. ("AMS").

1

may not rely on the complaints in their underlying cases to cure their lack of standing because they wholly fail to properly adopt such pleadings into the Complaint. Accordingly, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "FRCP"), this Court should dismiss the Complaint in its entirety.

Further, certain claims in the Complaint are barred as a matter of law and cannot be amended to state a claim upon which relief may be granted. Specifically, Borrower Plaintiffs' request in their First Cause of Action for a declaration on behalf of a class of persons as to their rescission rights under the Truth-in-Lending Act, 15 U.S.C. Section 1601, *et seq.* ("TILA"), fails because TILA does not permit such relief. In addition, Borrower Plaintiffs' Second and Third Causes of Action under the Equal Credit Opportunity Act, 15 U.S.C. Section 1691, *et seq.* ("ECOA"), and the Fair Credit Reporting Act, 15 U.S.C. Section 1681, *et seq.* ("FCRA"), respectively, fail because neither statute requires notice of an adverse action where, as here, the applicant [each purported ***Borrower*** Plaintiff] admittedly accepted the counteroffer of credit. Finally, Borrower Plaintiffs Twelfth Cause of Action under California's Civil Legal Remedies Act, California Civil Code Section 1750, *et seq.* (the "CLRA"), fails because the CLRA does not apply to loans. Pursuant to FRCP 12(b)(6), all of these claims should be dismissed with prejudice.

To the extent this Court permits any portion of the Complaint to survive dismissal under FRCP 12(b)(6), it should require Borrower Plaintiffs to provide a more definite statement under FRCP 12(e). As noted above, the Complaint contains only legal conclusions and ***absolutely no facts*** supporting these conclusions. For example, with respect to the alleged fraud claims, the Complaint provides no details whatsoever regarding the "who, what, when, where and how" of the supposed misrepresentations at issue. With respect to the alleged parties at issue, the

Complaint does not identify many of the supposed representative plaintiffs, or the particular Defendants at issue in the various allegations and claims.  With respect to the legal theories of recovery, the Complaint fails to identify any of the state laws purportedly at issue in numerous claims for relief.  With respect to the contract-based claims, the Complaint does not identify any of the alleged contracts supposedly breached by Defendants, the basic contents of any contracts or the pertinent parties to any contracts.  Nor does the Complaint aver any facts supporting Borrower Plaintiffs' claim that the accrual of any applicable statutes of limitations is delayed under the doctrines of equitable estoppel and equitable tolling.  Without factual allegations as to the foregoing issues, Defendants should not be required to respond to the Complaint.[2]

## II.    THIS COURT SHOULD DISMISS THE COMPLAINT BECAUSE BORROWER PLAINTIFFS HAVE FAILED TO ALLEGE FACTS ESTABLISHING THEIR STANDING AND CERTAIN CLAIMS ARE BARRED AS A MATTER OF LAW.

This Court should grant a motion to dismiss where a plaintiff has not alleged facts that would entitle the plaintiff to relief.  Fed. R. Civ. P. 12(b)(6); *see Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996).  Plaintiffs cannot avoid such a result by relying on legal conclusions unsupported by any factual allegations.  *Cushing v. City of Chicago*, 3 F.3d 1156, 1161, n.5 (7th Cir. 1993); *see Panaras v. Liquid Carbonic Indust. Corp.*, 74 F.3d 786, 792 (7th Cir. 1996) (complaint which consists of conclusory allegations unsupported by factual assertions properly dismissed under FRCP 12(b)(6)) (citations omitted).  Furthermore, a court need not acknowledge unreasonable inferences or unwarranted deductions of fact.  *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  And, a court may not assume that plaintiff can prove facts different from those it has alleged.  *Associated Gen. Contractors of Calif., Inc. v. California State Council*

---

[2] As this Court is aware, the settlement between AMQ and the Attorneys General of the 49 states in which AMQ has done business over the last six years likely will resolve nearly all of the claims in this multidistrict litigation proceeding.  Apparently recognizing the limited nature of the cases herein, as noted above, the Complaint contains only legal conclusions.

*of Carpenters, Inc.*, 459 U.S. 519, 526 (1983). Moreover, a court should deny leave to amend where it is clear that the plaintiff cannot state a claim upon which relief can be granted as a matter of law. *Thompson v. Washington*, 362 F.3d 969, 970 (7th Cir. 2004).

Here, the Complaint should be dismissed in its entirety because Borrower Plaintiffs have not alleged facts sufficient to establish their Constitutional standing. Furthermore, Borrower Plaintiffs' claims under TILA, ECOA, FCRA, and the CLRA should be dismissed with prejudice because they fail as a matter of law and leave to amend would be futile.

A. **No Borrower Plaintiff Alleges Facts Sufficient To Establish His Or Her Standing For Any Claim Or Form Of Relief Sought. As a Result, The Complaint Should Be Dismissed In Its Entirety.**

The first issue in any case is whether the named plaintiff has standing to sue under Article III of the United States Constitution. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Article III requires that a party seeking to invoke the jurisdiction of the federal courts must present an actual "case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To satisfy this requirement, a plaintiff must demonstrate: (1) an injury that is concrete, particularized, and actual or imminent rather than conjectural or hypothetical; (2) a causal connection between the injury and the challenged conduct, such that the injury may be fairly traceable to that conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *American Fed. of Gov't Employees v. Cohen*, 171 F.3d 460, 466 (7th Cir. 1999).

A plaintiff bears the burden of establishing the elements of standing at the outset of a lawsuit. *Family & Children's Ctr., Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir.). To meet this burden, the plaintiff "must ***clearly and specifically***" set forth the Article III standing requirements with "***sufficient facts***" in the complaint. *Schmidling v. City of Chicago*, 1 F.3d 494, 498 (7th Cir. 2003) (*quoting Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990))

(internal quotation marks omitted) (emphasis added). Bald assertions or legal conclusions,

unsupported by any factual allegations, are insufficient to establish standing. *Id.* (affirming

district court's granting of motion to dismiss for failure to properly allege standing);

*Geisenberger v. Gonzales*, 346 B.R. 678, 682-83 (Bankr. E.D. Pa. 2006) (dismissing complaint

for lack of standing). Furthermore, "a federal court is powerless to create its own jurisdiction by

embellishing otherwise deficient allegations of standing." *Schmidling*, 1 F.3d at 498.

Here, Borrower Plaintiffs provide no factual allegations, let alone ones that are clear and

specific, showing (1) that any Borrower Plaintiff suffered a concrete injury, (2) a causal

connection between the alleged injury and the challenged conduct, or (3) a likelihood that the

supposed injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61; *American*

*Fed. of Gov't. Employees*, 171 F.3d at 466. Instead, the Complaint advances only a single,

repetitive paragraph for each Borrower Plaintiff which contains only bald assertions and legal

conclusions that unspecified Defendants harmed certain Borrower Plaintiffs by violating

various—and often unidentified—laws. (*See*, *e.g*., Complaint, ¶¶ 123-178.) For example, the

totality of the allegations with respect to Borrower Plaintiff Tonya Sumner Brown are as follows:

> Ameriquest[3] refinanced Plaintiff Tonya Summer [sic] Brown's
> mortgage loan on April 22, 2004. During and after this process,
> Ameriquest made standard misrepresentations and/or failed to
> provide Brown with appropriate documentation and/or disclosures.
> As a result, the costs of the mortgage included excessive,
> undisclosed, and/or illegal interest, fees and penalties.

(Complaint, ¶ 127.) There are no factual allegations identifying what the supposed "standard

misrepresentations" are, what "standard misrepresentations" were made, how these "standard

---

[3] "Ameriquest" is defined differently is two places in the Complaint—first, as "Defendants Ameriquest Mortgage its subsidiaries, affiliates and agents," and, second, as "AMC, ACC Capital Holdings Corporation, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., Town & Country Credit Corp., and Argent Mortgage Co., LLC." (Complaint, ¶¶ 2 and 183.)

misrepresentations" harmed Ms. Brown, what documents Defendants failed to provide, which specific Defendant failed to provide them, why such documentation was "appropriate," what was "illegal" about any "interest, fees and penalties" that were charged, or the law that made these charges "illegal."  Such conclusory pleading does not satisfy Borrower Plaintiffs' burden, and this Court may not embellish upon these deficient allegations of standing to create its own jurisdiction.  *Schmidling*, 1 F.3d at 498.  Accordingly, this Court should dismiss the Complaint in its entirety for lack of standing.  *Id.*; *see Geisenberger*, 346 B.R. at 682-83.

**B.      Borrower Plaintiffs May Not Rely On The Allegations In Their Underlying Complaints To Establish Their Standing.**

It appears that Borrower Plaintiffs will argue that they have standing to pursue the claims in the Complaint because they purport to have incorporated the entirety of the complaints from their underlying cases into the Complaint.  (*See* Complaint, p. 3) (alleging that, "[b]y this consolidation, the allegations in each of [the underlying] complaints are intended to be preserved as if reasserted and alleged herein").  Any such argument necessarily fails.

FRCP 10(c) provides, in pertinent part, that, "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading, or in any motion."  In order to incorporate an earlier pleading in a later pleading, however, "the later pleading must ***specifically identify*** which portions of the prior pleading are adopted therein."  *Federal Nat'l Mortg. Ass'n v. Cobb*, 738 F. Supp. 1220, 1227 (N.D. Ill. 1990) (*citing*, *inter alia*, Fed. R. Civ. P. 10(c)) (emphasis added).  Merely adopting the entirety of another lengthy pleading is wholly insufficient under FRCP 10(c).  *Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7 of Jefferson County*, 747 F.2d 1195, 1198 (8th Cir. 1984) (rejecting counterclaim that attempted to adopt entirety of 35-page complaint; "A pleading incorporating allegations from other documents must clarify which statements are to be incorporated.") (citation omitted).

Applying these standards, Borrower Plaintiffs' attempt to incorporate the entirety of the complaints in their underlying cases into the Complaint is wholly improper. The operative complaints in many of these cases exceed 25 pages in length. (*See*, *e.g.*, operative complaints in *Barber* (27 pages), *Campbell* (35-pages), *Capasso* (26 pages), *D'Ambrogi* (27 pages), *Knox* (47 pages), *Saunders* (45 pages), *Cheryl Williams* (27 pages), *Latonya Williams* (38 pages).) Borrower Plaintiffs, however, have made no effort to specifically identify which portions of these complaints have been adopted, as FRCP 10(c) requires. *Federal Nat'l Mortg.*, 738 F. Supp. at 1227. Having failed to do so, this Court should not consider Borrower Plaintiffs' underlying complaints in ruling on their standing or the sufficiency of their claims in any respect.

**C.  As A Matter Of Law, A Claim For A Declaration As To Rescission Rights May Not Be Brought On A Class Basis Under TILA. Accordingly, This Court Should Dismiss Borrower Plaintiffs' Claim For Such Relief.**

In their First Cause of Action, Borrower Plaintiffs seek a declaration that they and the members of the TILA Subclass have a right to rescind their loan transactions. (Complaint, ¶¶ 189, 243.) Authority from this District and other federal districts, however, rejects certification of class actions seeking actual rescission or a declaration as to rescission rights under TILA. *See*, *e.g.*, *James v. Home Const. Co.*, 621 F.2d 727, 730-31 (5th Cir. 1980); *Gibbons v. Interbank Funding Group*, 208 F.R.D. 278, 285-86 (N.D. Cal. 2002); *Jefferson v. Security Pac. Fin. Servs.*, 161 F.R.D. 63, 69 (N.D. Ill. 1995); *Nelson v. United Credit Plan, Inc.*, 77 F.R.D. 54, 58 (E.D. La. 1977); *Murry v. America's Mortg. Banc, Inc.*, No. 03 C 5811, 03 C 6186, 2005 WL 1323364, at *10-11 (N.D. Ill. May 5, 2005).

Several sound reasons support these holdings. Rescission under TILA is a "purely personal remedy" that belongs to each individual. *James*, 621 F.2d at 730-31; *accord Gibbons*, 208 F.R.D. at 285; *Jefferson*, 161 F.R.D. at 69. A party seeking rescission under TILA must notify the lender of his or her intent to rescind; the party must then allot the lender 20 days to

respond to the notice prior to filing suit. 15 U.S.C. § 1635(b). Thus, under TILA, "individuals must choose to assert the right to rescind, on an individual basis and within individual time frames, before filing suit." *Jefferson*, 161 F.R.D. at 69.[4]

The plain language of TILA also evidences Congress's intent to prohibit classwide rescission claims. Section 1635(b) does not provide for class actions. Conversely, Section 1640, which governs damages, was amended by Congress in 1974 to expressly include class actions and to cap damage recovery. *See* Pub. L. 93-495, 88 Stat. 1500. "Congress' failure to amend Section 1635(b) in 1974 evidences a Congressional intent to treat rescission as a purely personal remedy, which is not subject to class action." *Murry*, 2005 WL 1323364, at *10 (*citing Jefferson*, 161 F.R.D. at 68) (internal quotation marks omitted); *accord Gibbons*, 208 F.R.D. at 285. Additionally, Congress amended Section 1635 in 1980 to give courts equitable authority to tailor the rescission steps to meet the needs of each borrower and creditor. *See* Pub. L. 96-212, 94 Stat. 175, 176. "[T]he 1980 amendment is an indication that rescission is a personal, rather than a class, remedy." *Murry*, 2005 WL 1323364, at *10; *accord Gibbons*, 208 F.R.D. at 285.[5]

---

[4] As further evidence of the personal nature of the rescission remedy, TILA requires borrowers to return any proceeds they have received from the lender. 15 U.S.C. § 1635(b).

[5] Based on previous filings, Defendants anticipate that, in opposition to this Motion, Borrower Plaintiffs will rely on *McKenna, et al. v. First Horizon Home Loan Corporation*, 429 F. Supp. 2d 291 (D. Mass. 2006), wherein the district court adopted a magistrate judge's recommendation to certify a class action seeking a declaration as to rescission rights under TILA. Any reliance by Borrower Plaintiffs on *McKenna* is misplaced. First, its holding is entirely contrary to the overwhelming authority detailed above rejecting certification of class actions seeking a declaration as to rescission rights under TILA. Furthermore, *McKenna* is legally unsound. In *McKenna*, the district court interpreted the 1974 amendments to TILA as evidence that Congress intended only to limit the damages recoverable in class actions under TILA. *Id.* at 295. The legislative history to the 1974 amendments, however, clearly shows that—consistent with the position taken by courts in this District—Congress amended Section 1640 to clarify that class actions seeking actual ***and statutory damages*** could be maintained under TILA, so long as there was a cap on the total damages. (Request for Judicial Notice ("RJN"), Ex. 1 (S. Rep. No. 93-278 at 14-15 (1973).) ***Critically, however, Congress did not amend—nor has it ever amended—Section 1635, the rescission statute, to specifically authorize class actions***.

Furthermore, the purpose of rescission is to restore parties to the *status quo ante*. *James*, 621 F.2d at 730; *accord Gibbons*, 208 F.R.D. at 285; *Jefferson*, 161 F.R.D. at 69. This purpose would be undone by allowing a class of persons to rescind their loans when the cost of recovery would exceed the harm done by the technical violation. *Id.* Indeed, "[a] declaratory judgment permitting classwide rescission . . . would turn Section 1635(b) into a penal provision, a result certainly never explicitly authorized by Congress." *Jefferson*, 161 F.R.D. at 70.

Finally, the fact that rescission is not properly sought on a classwide basis does not preclude rescission as a remedy for those individuals who choose it. To the contrary, TILA provides incentive to seek such relief by permitting the recovery of costs and an award of attorneys' fees in a successful action to enforce rescission rights. 15 U.S.C. § 1640(a)(3). The availability of such relief "means it is feasible for individual consumers to bring their own actions." *Gibbons*, 208 F.R.D. at 286 (*citing James*, 621 F.3d at 731 n. 7); *see Jefferson*, 161 F.R.D. at 69.[6] Defendants respectfully suggest that this Court should follow the above-detailed authority, find that, as a matter of law, classwide rescission is not available under TILA, and dismiss Borrower Plaintiffs' request for such relief.

**D.     As A Matter Of Law, Borrower Plaintiffs' ECOA And FCRA Claims Fail Because *Borrower* Plaintiffs Admittedly Accepted Counteroffers Of Credit.**

In their Second and Third Causes of Action, Borrower Plaintiffs contend that Defendants violated ECOA and FCRA by offering credit at less favorable terms than initially offered and failing to provide borrowers with notices of such purported "adverse action." (Complaint, ¶¶ 245-57.) Borrower Plaintiffs, however, by their status as **borrowers**, as well as their allegations

---

[6] This Court recognized this fact in the November 7 Order, wherein this Court held that "[t]he individual plaintiffs will presumably opt out [of the Complaint] for good reason, be it a perceived higher settlement value or the fact-intensive nature of their cases." [Docket No. 284, p. 10.] The incentive to bring individual lawsuits is further exemplified by the fact that 705 individual plaintiffs have opted out of the Complaint and have chosen to pursue their claims on a non-class basis. [*See* Docket Nos. 335, 340, 343, 348, 352, 353, 357, 358, 360, 361, 362, 368, 369 and 372.]

in the Complaint,[7] establish that they cannot maintain a claim under either ECOA or FCRA because: (1) each Borrower Plaintiff admits that, as a "borrower," he or she accepted a counteroffer of credit from Defendants; and (2) neither ECOA nor FCRA requires a notice of adverse action to an applicant who accepts a counteroffer of credit.

In the ECOA regulations, the Board of Governors of the Federal Reserve System (the "Board") defines adverse action, in pertinent part, as a "refusal to grant credit in substantially the amount or on substantially the terms requested in an application *unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered*." 12 C.F.R. § 202.2(c)(1)(i) (emphasis added). An accepted counteroffer does not constitute adverse action, and does not require that an adverse action notice be sent to the borrower. *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 533 (E.D. N.Y. 2006) ("[The Board's] regulations are explicit that accepted counteroffers shall not be considered 'adverse action.' Accordingly, an accepted counteroffer does not constitute an adverse action triggering the requirement for a statement of reasons pursuant to 15 U.S.C. § 1691(d)(6) of the ECOA.").

FCRA compels the same result. Congress has directed that the "findings, decisions, commentary, and orders" issued by the Board shall apply in assessing whether adverse action in a credit transaction has occurred under FCRA. 15 U.S.C. § 1681a(k)(2).[8] Given Congress's directive that ECOA regulations shall apply to analyze FCRA claims, when a lender does not grant credit in substantially the amount or on substantially the terms the borrower requests, but makes a counteroffer and the borrower accepts it, no adverse action has occurred under FCRA.

---

[7] *See*, *e.g.*, Complaint ¶¶ 123-178 and 208 (alleging that each purported Borrower Plaintiff received a loan from Defendants).

[8] Further, for purposes of credit transactions, the statutory definition of "adverse action" under FCRA is drawn from ECOA. *See* 15 U.S.C. § 1681a(k)(1)(A).

*Id.*; *see*, *e.g.*, *Harper v. Lindsay Chevrolet*, 212 F. Supp. 2d 581, 591-92 (E.D. Va. 2002) ("Thus, the denial of credit coupled with a counteroffer that is accepted by the applicant does not trigger the FCRA's notice requirement because the applicant has suffered no 'adverse action.'"); *Lopez v. Platinum Home Mortgage*, No. 1:05-CV-408, 2006 WL 2269154, at *4 (W.D. Mich. Aug. 8, 2006) ("[T]he FCRA reference to ECOA was intended to provide a general sense of the FCRA notification requirement and so included by reference the counteroffer exception . . ."); *Hanlin v. Ohio Builders and Remodelers, Inc.*, No. 2:00-CV-179, 2001 WL 1678864, at *7 (S.D. Ohio Dec. 26, 2001) ("It is undisputed that, although Plaintiffs were never notified of the denial of the terms of credit initially requested, it is also undisputed that they subsequently accepted the terms of credit offered . . . As a consequence, there was no adverse action for the purposes of the FCRA.").

For these reasons, this Court should dismiss the Second and Third Causes of Action under ECOA and FCRA, respectively, without leave to amend.

**E.     As A Matter Of Law, The CLRA Does Not Apply To Loans.  Accordingly, This Court Should Dismiss Borrower Plaintiffs' CLRA Claim.**

In their Twelfth Cause of Action, Borrower Plaintiffs allege that Defendants violated the CLRA.  (Complaint, ¶¶ 311-320.)  The CLRA applies only to transactions that result in the sale or lease of "goods" or "services" to a "consumer," as those terms are defined in California Civil Code Section 1761.  *Civil Service Employees Ins. Co. v. Superior Court*, 22 Cal. 3d 362, 376 (1978).  If something is neither a "good" nor a "service," or, alternatively, if a plaintiff is not a "consumer" who, by definition, purchased or leased a "good or "service," then the plaintiff's action is not covered by the CLRA.  *Id.*; *California Grocers v. Bank of America*, 22 Cal. App. 4th 205, 217 (1994).  Because the rules of statutory construction compel the conclusion that

loans are neither a "good" nor a "service" under the CLRA, Borrower Plaintiffs' CLRA claim is not covered by the CLRA, and it must be dismissed.

The fundamental purpose of statutory interpretation is to ascertain the intent of the California Legislature to effectuate the purpose of the law. *People v. Pieters*, 52 Cal. 3d 894, 898 (1991).[9]  As a matter of well-settled precedent, the interpretation of a statute is a question of law reserved exclusively for the court. *Herman v. Los Angeles County Metropolitan Transp. Auth.*, 71 Cal. App. 4th 819, 823 (1999).

In California, determining legislative intent involves a three-step analysis. *Day v. City of Fontana*, 25 Cal. 4th 268, 272 (2001).  First, the court must examine the actual language of the statute.  If the meaning of the words are clear and unambiguous, the court presumes that the Legislature meant what it said, and the language of the statute is controlling. *Id.*  If the meaning of the language is not clear, a court takes the second step of referring to extrinsic sources, including the legislative history of the statute and ostensible objects to be achieved. *Id.*  In such cases, the court is instructed to "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." *Id.* Only when the first two steps have failed to reveal the clear meaning of the words does the court takes the third step of applying reason, practicality, and common sense to the language at hand. *Halbert's Lumber, Inc. v. Lucky Stores, Inc.*, 6 Cal. App. 4th 1233, 1240 (1992).  Applying this three part test to the CLRA, it is clear that the California Legislature did not intend the CLRA to cover loans.

---

[9] Federal courts must interpret a state statute as that state's courts would construe it. *Konradi v. United States*, 919 F.2d 1207, 1213 (7th Cir.1990) ("The decision of a federal court in a diversity case, or in any other case in which state law supplies the rule of decision, is an exercise in predicting how the highest court of the state would decide the case if it were presented to it.").

## 1.      The Actual Words Of The CLRA Do Not Encompass "Loans."

California courts have long recognized that the actual words of a statute are the best indicator of legislative intent. *Hoyme v. Board of Educ.*, 107 Cal. App. 3d 449, 452 (1980); *Rhiner v. Workers' Comp. Appeals Bd.*, 4 Cal. 4th 1213, 1217 (1993). As explained by the court in *Halbert's Lumber*, this is because the specific wording of a statute has undergone the rigor of the legislative process:

> [I]t is the language of the statute itself that has successfully braved the legislative gauntlet. It is that language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed "into law" by the Governor.

6 Cal. App. 4th at 1238. Thus, when a statute provides a definition for a particular term used by it, that meaning is generally binding, and courts should not add to or alter the statute to accomplish a purpose that does not appear on the face of the statute or from its legislative history. *Herman*, 71 Cal. App. 4th at 823 (citation omitted).

The terms "goods" and "services" are expressly defined by the CLRA, and these definitions are controlling for purposes of determining legislative intent. Moreover, their definitions show that they do not include loans. "Goods" are defined under the CLRA as:

> ***tangible chattels bought or leased*** for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods which, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not severable therefrom.

Cal. Civ. Code § 1761(a) (emphasis added). "Services" are defined under the CLRA as: "***work, labor, and services*** for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(b) (emphasis added).

13

These definitions are clear: "Loans" are not included as either "goods" or "services" under the CLRA. Indeed, nothing even resembling loans or credit appears in these definitions. As a matter of law, this clear and unambiguous language is conclusive that the CLRA was not intended to cover loans. *Herman*, 71 Cal. App. 4th at 823. Based on this clear language, Borrower Plaintiffs' claim under the CLRA must fail.

**2. The Legislative History Of The CLRA Confirms That Loans Were Not Intended To Be Covered.**

Although it is unnecessary to consider the CLRA's legislative history because the clear language of the CLRA does not include "loans," the legislative history reinforces this conclusion. As initially drafted, the CLRA was to govern the sale or lease of three distinct categories of items: "goods," "services" and "money or credit." (RJN, Ex. 2 (Assem. Bill No. 292, 1970 Reg. Sess. (Jan. 21, 1970).) The three categories were found in the initial definition of "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes." (*Id.*) (emphasis added). Although each of these categories survived several amendments to the CLRA, prior to its enactment in final form, ***the category of "money or credit" was pointedly removed from the definition of "consumer."*** (RJN, Ex. 3 (Assem. Bill No. 292, 1970 Reg. Sess. (as amended August 7, 1970).)

It is an elementary rule of statutory interpretation that the Legislature's exclusion of a phrase "is 'most persuasive' that the statute should ***not*** be interpreted to include what was left out." *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274, 286 (1995) (emphasis added); *see Wilson v. City of Laguna Beach*, 6 Cal. App. 4th 543, 555 (1992) ("Where 'the Legislature has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.'") (citation omitted). Thus, the fact that, prior to the CLRA's enactment, the California Legislature removed "credit or money" transactions from the scope of the CLRA

compels the conclusion that the Legislature did not intend loans (which are, by definition, credit or money transactions) to be governed by the CLRA.[10]

Moreover, under analogous circumstances, the California Supreme Court has held that an insurance policy is neither a "good" nor a "service" within the meaning of the CLRA. *Civil Service*, 22 Cal. 3d at 375. Like insurance, a loan is neither a "good" nor a "service", as defined by the CLRA. Defendants are not aware of any published decision to the contrary.

In light of the California Legislature's deliberate exclusion of money and credit transactions from the CLRA, construing the CLRA as excluding loans follows the Legislature's clear intent. *Estate of Griswold*, 25 Cal. 4th 904, 911 (2001). Under the rules of statutory interpretation, this intent prevails, and Borrowers Plaintiffs' CLRA claim based on their loan transactions fails as a matter of law.

### 3. Common Sense Dictates That Loans Are Excluded From The CLRA.

Common sense and reason command that the CLRA should be interpreted as excluding loans. Had the California Legislature intended the CLRA to apply to an unlimited category of business acts and practices, it would not have narrowed the definition of "consumer" to someone who buys or leases "goods" or "services." More importantly, had the California Legislature intended the CLRA to apply to loans, it would have said so. Certainly, it would not have excluded the terms "money" and "credit," which are virtually synonymous with loans, from the CLRA. Finally, while no sensical argument supports construing the CLRA to govern loans, it

---

[10] Significantly, although no versions of the bill prior to enactment included definitions for the terms "money" or "credit," the standard dictionary meaning of "credit" includes a reference to loans. The dictionary definition of "loan" includes the term "money," indicating that the two terms are often interchangeable. *See* Webster's 9th New Collegiate Dic. (1986), p. 305 (defining "credit" to include "something entrusted to another, loan") and p. 700 (defining "loan" as "money lent at interest"). By eliminating "money" and "credit" from the scope of the CLRA and specifically excluding "loans," the California Legislature necessarily chose not to include loans within the CLRA's purview.

would be especially inappropriate to stretch the CLRA into an area that is already as heavily regulated as the loan industry.

### III.   TO THE EXTENT BORROWER PLAINTIFFS' CLAIMS ARE PERMITTED TO SURVIVE, THIS COURT SHOULD ORDER BORROWER PLAINTIFFS TO PROVIDE A MORE DEFINITE STATEMENT AS TO THEIR CLAIMS.

"[T]he Federal Rules of Civil Procedure envision a system in which concise, direct, and clear statements afford each party fair notice of the other's claims."  *Shelter Mut. Ins.*, 747 F.2d at 1198.  Accordingly, where a complaint contains only conclusory legal assertions, unsupported by any factual allegations, a motion for a more definite statement is proper.  Fed. R. Civ. P. 12(e); *see Sun Co. v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 368 (E.D. Pa. 1996) (motion for more definite statement proper "when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself") (citation and internal quotation marks omitted).  Indeed, such a motion "is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief."  *Thomas v. Independence Twp.*, 463 F.3d 285, 301 (3d Cir. 2006).

Here, to the extent this Court permits amendment of any of Borrower Plaintiffs' claims, it should, as discussed below, order Borrower Plaintiffs to provide a more definite statement of these claims.[11]

### A.   Borrower Plaintiffs Have Failed To Allege The Operative Facts Supporting Their Purported Claims For Relief And Have Failed To Satisfy The Particularity Requirement Of FRCP 9(b).

A complaint must allege all operative facts upon which each claim is based.  *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998).  This Complaint fails to allege any operative facts.  Instead, it merely pleads one of two "cut-and-pasted" forms of legal conclusions

---

[11] As demonstrated above in Section II.B, Borrower Plaintiffs may not rely on the complaints in their underlying cases to establish their standing.  For the same reasons, Borrower Plaintiffs may not rely on such complaints to establish that their claims, as pled in the Complaint, are sufficiently definite.

for each named Borrower Plaintiff, that either: (1) an *unidentified* Defendant made a loan to a Borrower Plaintiff and, during and after the loan process, the *unidentified* Defendant made *unidentified* "standard misrepresentations and/or failed to provide [Borrower Plaintiff] with [*unidentified*] appropriate documentation and/or disclosures;" or (2) an *unidentified* Defendant serviced a mortgage loan of a Borrower Plaintiff "in an [*unidentified*] unlawful manner and/or in violation of [*unidentified*] loan agreements." (Complaint, ¶¶ 123-178.) Borrower Plaintiffs must either drop those claims or amend their Complaint to allege operative facts supporting these conclusions. *Kyle*, 144 F.3d at 454-55.

Furthermore, the heightened pleading requirement of FRCP 9(b) demands that a plaintiff "must plead the who, what, when, and where" of his or her fraud claims. *MPC Containment Syst., Ltd. v. Moreland*, No. 05 C 6973, 2006 WL 2331148, at *2 (N.D. Ill. Aug. 10, 2006) (Aspen, J.). "[T]he absence of any necessary detail renders the pleading deficient." *Id.* Moreover, allegations based "on information and belief" do not satisfy the particularity requirements of FRCP 9(b), unless they are "accompanied by a statement of the facts upon which the belief is founded." *Id.*, at *3, n.3.

In the Complaint, certain Borrower Plaintiffs individually assert claims for "common law fraud" (Fifteenth Cause of Action) and "intentional and/or negligent misrepresentation" (Sixteenth Cause of Action). (Complaint, ¶¶ 359-371.) However, those claims fall woefully short of FRCP 9(b)'s requirement, as detailed in *MPC Containment Systems*. First, each of these claims is pled solely on "information and belief." (*See* Complaint, p. 3) ("Plaintiffs allege the following upon information and belief. . . ."). Yet, they are not accompanied by a statement of the facts upon which such "information and belief" is premised. As such, these claims are insufficient. *MPC Containment Syst.*, 2006 WL 2331148, at *3, n. 3.

Second, each of these claims is premised only on the same legal conclusion—that unspecified Defendants made unidentified materially false representations, concealments and/or non-disclosures of fact to unidentified Borrower Plaintiffs in connection with "loan discount fees," "loan origination fees," "assurances of prompt refinancing," and/or "loan servicing." (Complaint, ¶¶ 360, 367.)  The Complaint provided no facts supporting this conclusion. Borrower Plaintiffs must, but do not, plead particular facts showing the "who, what, when, and where" of the alleged fraud by Defendants.  The absence of any one of these necessary details renders the pleading deficient.  *MPC Containment Syst*., 2006 WL 2331148, at *3.  Borrower Plaintiffs' Fifteenth and Sixteenth Causes of Action may not proceed without a more definite statement.

Borrower Plaintiffs also assert two state statutory law claims based on purported fraudulent representations—their Eleventh Cause of Action (under California's Unfair Competition Law, California Business and Professions Code Section 17200, *et seq.* (the "California UCL")), and their Twelfth Cause of Action (under the CLRA).  They too are improperly pled solely on "information and belief," (*see* Complaint, p. 3), without any statement of the facts upon which such "information and belief" is premised.  *MPC Containment Syst.*, 2006 WL 2331148, at *3, n.3.  Moreover, both claims are premised entirely on legal conclusions, but not specific facts describing any alleged fraudulent conduct.  In particular, in their Eleventh Cause of Action, unidentified Borrower Plaintiffs contend that unspecified Defendants violated the California UCL by engaging in "bait and switch" tactics, "misleading consumers" regarding their interest rates and "discount" fees, and "falsely promising early refinancing options." (Complaint, ¶ 306.)  The Complaint does not advance any specific facts supporting these bald assertions.  The same is true for Borrower Plaintiffs' Twelfth Cause of Action under the CLRA,

wherein unidentified Borrower Plaintiffs merely conclude that unspecified Defendants "engaged in unfair or deceptive acts or practices intended to result in the sale of their goods and services." (*Id.*, ¶ 315.) Nowhere in the Complaint do Borrower Plaintiffs set forth any specific facts regarding these supposed "unfair" and "deceptive" acts. Likewise, Borrower Plaintiffs' Seventeenth Cause of Action under the Florida Mortgage Lending Act, Florida Statutes Section 494.0025, and Twenty-Third Cause of Action under Ohio's Mortgage Broker's Act, Ohio Revised Code Section 1322.01, *et seq.*, contain only legal conclusions, but no allegations of specific facts supporting these conclusions. Accordingly, this Court should require Borrower Plaintiffs to allege specific facts supporting these claims for relief as well.

**B.     Borrower Plaintiffs Must Allege The Identity Of The Representative Plaintiffs Bringing All Of The Putative Class Claims, And The Particular Defendants At Issue In Each Allegation And Against Whom Each Claim For Relief Is Brought.**

Borrower Plaintiffs attempt to assert claims on behalf of numerous different classes and subclasses. In four of these classes, however, Borrower Plaintiffs do ***not*** allege the identity of the supposed representative plaintiff(s). As defined by Borrower Plaintiffs, the classes without identified representatives are as follows: the "Origination Class," (Complaint, ¶ 180); the "TILA Subclass," (*id.*, ¶ 189); the "Discount Points Subclass," (*id.*, ¶ 199); and the "Bait and Switch Subclass," (*id.*, ¶ 208). For two reasons, this Court should require Borrower Plaintiffs to allege the identity of the representative plaintiffs.

First, absent the identity of the representative plaintiffs, Borrower Plaintiffs cannot demonstrate that the representative plaintiffs or any members of the Origination Class, TILA Subclass, Discount Points Subclass or the Bait and Switch Subclass have Article III standing. As the Supreme Court has noted, the fact that an action is brought as a class action does not dispense with the standing requirements in Article III of the Constitution. *Warth*, 422 U.S. at 498. "If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or

19

controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see Magnuson v. City of Hickory Hills*, 730 F. Supp. 1439, 1442 (N.D. Ill. 1990) (Aspen, J.) ("A class action cannot be certified unless the named plaintiff has standing.") (*citing Robinson v. City of Chicago*, 868 F.2d 959, 968 (7th Cir. 1989)). The claims brought by the Origination Class, the TILA Subclass, the Discount Points Subclass and the Bait and Switch Subclass must be dismissed or amended to show that they are brought by a representative plaintiff with established Article III standing.

Second, without class representatives, Borrower Plaintiffs have failed to properly plead the basis for a class action with respect to those claims brought by the Origination Class, the TILA Subclass, the Discount Points Subclass and the Bait and Switch Subclass. "[I]n a class action, the plaintiff's pleadings must also comport with Rule 23, in that the plaintiff must plead facts sufficient to show that the four requirements of subdivision (a) are satisfied and that the action falls within one of the three categories of subdivision (b)." *Perrusquia v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, No. 88 C 0871, 1989 WL 121208, at *5 (N.D. Ill. Sept. 28, 1989) (citation omitted); *Cross v. Oneida Paper Prod. Co.*, 117 F. Supp. 919, 912 (D. N.J. 1954) ("The mere allegation that a proceeding is a class action does not conclusively make it so."). As stated by the leading treatise on class action law:

> The plaintiff's allegations must indicate sufficiently that the adjudication of his or her claim will necessarily involve one or more common questions concerning persons similarly situated. The plaintiff's pleading, therefore, should not be merely conclusory if there is any doubt that the issue will be plain enough on its face to determine that the interests of absent class members will be encompassed within the plaintiff's claim.

Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 6:20 (4th Ed. 2002) (citation omitted). Further: "If the pleadings are vague or conclusory, or if they are so generally drawn

that they fail to demonstrate typicality, or if they show no relation between the interests of the plaintiff and of the class, then class certification will be denied." *Id.* § 6:21 (citations omitted).

By failing to set forth representative plaintiffs, the Complaint fails to comply with the foregoing authority mandating the allegation of facts establishing that all four requirements of FRCP 23(a) are met and that the claims fit within one category of FRCP 23(b).  Accordingly, a more definite statement is necessary in this regard.[12]

The Complaint also is impermissibly vague and ambiguous as to the particular defendants at issue in each allegation and claim for relief.  The Complaint identifies seven purported defendants: AMQ; ACC; AMC; AMS; T&C; Argent Mortgage Company, LLC; JM Closing; and Jonathan Means.  (Complaint, ¶¶ 77-82, 84.)  Borrower Plaintiffs collectively refer to the first six defendants as "Ameriquest" or the "Ameriquest defendants"; the Ameriquest defendants, JM Closing and Mr. Means collectively are referred to as the "Defendants."  (*Id.*, ¶ 83.)

Of course, collectively terming defendants is not improper in and of itself.  The problem here, though, is that the all of the allegations of the Complaint are made against—and nearly all of the claims for relief are brought against—"Ameriquest," the "Ameriquest defendants" or "Defendants," with no attempt to specify the identity of the defendant at issue.  Case law confirms that, in a multi-defendant case, ambiguity surrounding the identity of the defendants requires a more definite statement.  *See*, *e.g.*, *Doyle v. Bresler's 33 Flavors, Inc.*, No. 71 C 1545, 1972 WL 588, at *1 (N.D. Ill. 1972) (requiring plaintiffs to set forth with more specificity which defendants were referred to in each allegation); *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277, 284 (E.D. Wis. 1975) (requiring plaintiffs to specify whom they meant when they

---

[12] In amending the Complaint, Borrower Plaintiffs must put forth different representatives for each class and subclass to ensure compliance with FRCP 23(a)(4)'s adequacy of representation requirement.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (each subclass requires separate class representatives and counsel to eliminate conflicts of interest).

referred to "plaintiff" and "defendant"). Accordingly, Borrower Plaintiffs should amend their Complaint to identify specific Defendant(s) at issue in each allegation and against whom each claim for relief is brought.

**C.      Borrower Plaintiffs Must Allege Their Thirteenth Cause Of Action For Violation Of "State Consumer Protection And Unfair And Deceptive Trade Practices Acts" With More Specificity.**

By their Thirteenth Cause of Action, the representative plaintiffs of the Origination Class and the "Servicing Class"—the two primary classes in the Complaint—seek to assert claims on behalf of their putative class members "under *each state's* consumer protection act and/or unfair and deceptive trade practices act." (Complaint, ¶ 322) (emphasis added). As detailed above, however, Borrower Plaintiffs do not advance any allegations in the Complaint clarifying the identity of the representative plaintiffs of the Origination Class.[13] Furthermore, Borrower Plaintiffs do not identify all of the states' laws purportedly at issue, but merely set forth a non-exclusive list of nine states' laws. (*Id.*, ¶ 323.) Due to the choice-of-law provisions agreed to by each of Defendants' borrowers during the applicable limitations periods, it is imperative that Borrower Plaintiffs provide more specificity in these regards.

All of Defendants' borrowers, including each Borrower Plaintiff and putative class member in the Complaint, signed security instruments, such as a mortgage or deed of trust, which were recorded against their real property as security for the loan. Each security instrument contained a choice-of-law provision designating as the applicable law "***federal law and the law of the jurisdiction in which the Property is located***." (Emphasis added.) Copies of the security instruments for certain named Borrower Plaintiffs—which are representative of the security

_____

[13] The representative plaintiffs of the Servicing Class are eight individuals who purportedly reside in either Connecticut or Ohio. (*See* Complaint, ¶¶ 24, 49-52, 227.)

instruments for all Borrower Plaintiffs—are attached to the accompanying RJN at Exhibits 4 through 22.

These choice-of-law provisions command that, with respect to state law claims, each Borrower Plaintiff has standing to sue only under the law of the jurisdiction in which the property is located. For instance, the representative plaintiffs of the Servicing Class reside in Ohio and Connecticut. The Servicing Class, thus, can seek relief only under Ohio and Connecticut law, and no other states' laws. To the extent that the Servicing Class wants to extend its claims beyond these states' laws, Borrower Plaintiffs must set forth representative plaintiffs with standing to bring the claims and identify the state law at issue. Likewise, if the Origination Class wants to advance claims under *any* state's law, Borrower Plaintiffs must set forth representative plaintiffs with standing and identify the state law at issue.

Additionally, Borrower Plaintiffs' failure to allege the specific identity of the state laws implicated by their Thirteenth Cause of Action precludes Defendants from raising defenses at the initial pleading stage with respect to, among other things, the governing statutes of limitations. Indeed, the statutes of limitations for each state's unfair and deceptive trade practices act are not uniform. *See*, *e.g.*, Ala. Code § 8-19-14 (1 year); Cal. Bus. & Prof. Code § 17208 (4 years); Tex. Bus. & Com. Code § 17.565 (2 years). These and other defenses may be dealt with as a threshold matter, and Borrower Plaintiffs should not be able to avoid them through vague and conclusory pleading. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005); *see Cetina v. Super Target*, No. 3:04-CV-1475-M, 2004 WL 2434416, at * 1 (N.D. Tex. Nov. 1, 2004) ("As this claim fails to identify a state law cause of action and therefore give Defendant Target fair notice of the claim on which it rests, it should be dismissed.") (*citing* Fed. R. Civ. P. 8(a); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). Accordingly, this Court should

require Borrower Plaintiffs either to dismiss or to plead with more specificity their Thirteenth

Cause of Action.[14]

**D.      Borrower Plaintiffs Must Allege The Identity Of All Contracts At Issue, Their Basic Contents And The Pertinent Parties Thereto.**

"In a contract dispute, a more definite statement is required when defendants can only

guess as to what conduct and contracts an allegation refers."  *Jackson Nat'l Life Ins. Co. v. Gofen*

*& Glossberg, Inc.*, 882 F. Supp. 713, 726 (N.D. Ill. 1995) (citation and internal quotation marks

omitted).  To survive a motion under FRCP 12(e) as to a contract claim, the plaintiff must allege

facts showing (1) the relevant agreement, (2) the basic contents of agreement, and (3) the

pertinent parties to the agreement.  *Moore v. Fidelity Fin. Servs.*, 869 F. Supp. 557, 560-61 (N.D.

Ill. 1994).

Borrower Plaintiffs' contract-based claims are set forth in the Sixth, Seventh, Eighth and

Ninth Causes of Action in the Complaint.  However, a mere cursory review of these Causes of

Action and the Complaint as a whole reveals that Borrower Plaintiffs allege only conclusions

that *unspecified* Defendants entered into *unidentified* contracts with *unidentified* Borrower

Plaintiffs.  (*See*, *e.g.*, Complaint, ¶¶ 268-296.)  The Complaint wholly fails to allege facts (1)

identifying, by title, any relevant agreement, (2) showing the basic contents of any agreement, or

(3) identifying the pertinent parties to any agreement.  Many Defendants have not even entered

into any contract with any Borrower Plaintiffs, and should not be parties to these claims.

---

[14] It is highly likely that Borrower Plaintiffs cannot amend the Complaint assert class claims under various states laws.  When legal questions vary from state-to-state and, hence, require the court to make diverse legal rulings in a multitude of jurisdictions, the questions of law necessarily are more individual than common to all.  *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1013, 1015 (7th Cir. 2002) ("no class action is proper unless all litigants are governed by the same legal rules . . . [o]therwise the class cannot satisfy the commonality and superiority requirements"); *Castano v. American Tobacco Co.*, 84 F. 3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); *Georgine v. Amchem Prods.*, 83 F.3d 610, 618 (3d Cir. 1996) (decertifying class because legal and factual differences in the plaintiffs' claims "when exponentially magnified by choice of law considerations, eclipse any common issues in this case").

Further, as detailed above, these allegations are critical because certain contracts between the parties have choice-of-law provisions, and these contracts limit the ability of Borrower Plaintiffs to pursue state law claims. Accordingly, this Court should require Borrower Plaintiffs to provide a more definite statement as to their contract-based claims.

**E.      Borrower Plaintiffs Must Plead Specific Facts Supporting Their Claims That The Doctrines of Equitable Estoppel and Equitable Tolling Delay The Accrual Of All Statutes Of Limitations.**

Equitable estoppel to raise a statute of limitations defense "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time," and equitable tolling of a statute of limitations "applies when, despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cabrera v. World's Finest Chocolate, Inc.*, No. 04 C 0413, 2004 WL 1535850, at *4 (Aspen, J.) (N.D. Ill. Jul. 7, 2004) (*quoting Hentosh v. Herman M. Finch Univ. of Health Servs.*, 167 F.3d 1170, 1174 (7th Cir. 1990) (internal quotation marks omitted). Equitable estoppel and equitable tolling are exceptions to the general rule for accrual of causes of action, and are "available only under *limited circumstances*." *Smith v. City of Chicago Heights*, 951 F.2d 834, 840-41 (7th Cir. 1992) (citation and internal quotation marks omitted) (emphasis added); *accord Cabrera*, 2004 WL 1535850, at *4. Neither of these doctrines "provide aid to those plaintiffs who fail to research the requirements of bringing a lawsuit." *Olojo v. Kennedy-King College*, No. 05 C 6234, 2006 WL 1648441, at *7 (N.D. Ill. June 7, 2006) (Aspen, J.) (*quoting Hoosier Bancorp v. Rasmussen*, 90 F.3d 180, 183 (7th Cir. 1996)) (internal quotation marks omitted). Furthermore, to invoke either doctrine, the plaintiff must plead *specific facts* to support the court's tolling of the statute of limitations, such as defendant's active concealment of the fraud or specific acts on the part of the defendant that prevented plaintiff from suing within the limitations period. *City of Chicago Heights*, 951 F.2d at 840-41; *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990).

The sum and substance of Borrower Plaintiffs' allegations concerning equitable tolling and equitable estoppel of the applicable statutes of limitations are set forth in paragraphs 232 and 233 of the Complaint:

> 232.    Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein, including but not limited to Defendants' practices of concealing that they would not, despite promises, refinance loans.  Despite exercising reasonable diligence, Plaintiffs and members of the Class[15] could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein.

> 233.    In the alternative, the Defendants should be estopped from relying on any statutes of limitations.  The Defendants have been under a continuing duty to disclose the true character, nature, and quality of their loan origination and servicing practices.  The Defendants owed Plaintiffs and other members of the Class an affirmative of full and fair disclosure, but knowingly failed to honor and discharge such duty.

These paragraphs contain nothing more than legal conclusions.  The Complaint simply fails to set forth (1) any facts, let alone the requisite specific facts, of any particular Defendant's active concealment of a supposed fraud, or (2) any specific acts by any Defendant that prevented any Borrower Plaintiffs from suing within the applicable limitations period.  *City of Chicago Heights*, 951 F.2d at 840-41; *Cada*, 920 F.2d at 451.  Accordingly, this Court should require Borrower Plaintiffs to provide a more definite statement as to their contention that the accrual of any applicable statutes of limitations is delayed under the doctrines of equitable estoppel and equitable tolling.  In this regard, this Court should require Borrower Plaintiffs to allege which specific statutes of limitations they contend are subject to tolling because certain claims do not provide for tolling as a matter of law.  *See, e.g.*, *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412-

---

[15] There is no "Class" defined in the Complaint.  Thus, these paragraphs are not only unclear as to the identity of "Plaintiffs" and "Defendants," and they are wholly unclear as to the identity of the "Class" as well.

13 (1998) (equitable tolling does not apply to rescission claims under TILA); *Rylewicz v. Beaton Servs., Ltd.*, 888 F.2d 1175, 1181 (7th Cir. 1989) (no equitable tolling for FCRA claims).

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the Motion in its entirety.

Respectfully submitted,

DATED: January 19, 2007                    By: /s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457

## CERTIFICATE OF SERVICE

I, Bernard E, LeSage, hereby certify that on this 19th day of January 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Bernard E. LeSage