for what was at most a technical and debatable violation of the Act. The court found the defendant's arguments persuasive and concluded that the certification of the *Ratner* action as a class action would have been inconsistent with the specific remedy provided by Congress. With at least twenty-one district court decisions following the *Ratner* logic in refusing to certify Truth in Lending class actions, the trend has been away from allowing class actions to enforce compliance with the Act.

In light of this background, the consumer groups have urged Congress to take action that would clearly authorize class action suits without limitation. The retailers and bankers testified that they do not want to take a chance on a potential liability that could be catastrophic for even the largest firms. They urged the Committee to place a dollar limitation on civil recovery. On the other hand, the consumer finance industry feels that the courts are fashioning a reasonable rule governing class action suits and at this time want no congressional intervention.

The Committee adopted the civil liability section in S. 914 after limiting class action recovery to $100,000 or 1 per centum of the net worth of the creditor, whichever is the lesser. This is a reasonable approach in that it places a sufficient deterrent on large firms without placing in jeopardy the survival of small firms.

JOHN TOWER.
WALLACE BENNETT.
BILL BROCK.

# BLANK PAGE

## Individual Views of Mr. Tower

### Good Faith Compliance

The reported bill attempts to deal in Section 206 of Title II with the problem of relieving creditors of liability under the Truth-in-Lending Act in situations involving good faith compliance with the apparent requirements of the Act and regulations. However, the language of the bill does not cover all of the types of situations where good faith compliance should relieve the creditor from liability. I proposed additional language for the Committee's consideration which would cover virtually all meritorious cases, and the Committee referred the language to the Federal Reserve Board for comment, with the understanding I will offer my amendment later on the floor during Senate consideration of the bill.

The present language of Section 206 appears hereafter in normal print, while my proposed amendment would add the portion in italics:

> No provision of this section or section 112 imposing any liability shall apply to any act done or omitted in good faith (1) in conformity with *the Act, or with* any rule, regulation, or interpretation thereof by the Board, *or (2) in conformity with any reasonable interpretation of a significant ambiguity in, or significant conflict between, said Act, rules, regulations, or interpretations*, notwithstanding that after such act or omission has occurred, such *Act*, rule, regulation, or interpretation is amended, rescinded, or determined by judicial or other authority to be invalid for any reason. Any act done *or omitted in conformity with the standards and conditions set forth in the preceding sentence shall not subject the creditor to liability under State law where State requirements conflict with those of Federal law.*

The present language of Section 206 deals with the problem of compliance with apparent requirements of the regulations and interpretations of the Federal Reserve Board and of the other enforcing agencies, when a later court decision finds that the Act or regulation or interpretation was invalid. This is a desirable provision, but it does not cover the following, related good faith compliance situations:

#### 1. More than one reasonable course of compliance behavior

Frequently a creditor finds himself in a situation where an ambiguous provision of the Act, a regulation, or an interpretation, or a conflict between two or more such provisions, leaves him several reasonable alternative courses of action to take. The problem is that taking one specific course may cause the creditor to violate

one or more of the other requirements, when looked at from another reasonable viewpoint. The court may prefer one of the other reasonable viewpoints, and its judicial interpretation can therefore lay liability at the door of the creditor even though he attempted in good faith to comply as best he could in an ambiguous situation.

Therefore, the amendment would add the language that any acts done in good faith in conformity with "any reasonable interpretation of a significant ambiguity in, or significant conflict between, said Act, rules, regulations, or interpretations . . ." will not subject the creditor to liability. This language would simply allow a court to recognize that there may be two or more methods of good faith compliance in the face of ambiguous or conflicting requirements. It would therefore allow creditors to go on about their business in good faith compliance with the apparent requirements of the law, knowing that unresolved ambiguities and conflicts will be resolved by eventual regulatory or judicial action and not by class action liability for the private parties involved. If the present language is not so amended, there will continue to be numerous mere "difference-of-opinion" suits filed, which do not serve any public policy objective, add costs to the credit extension process which are passed along to borrowers, and add to the already heavy burden of the courts. This amendment would resolve those unintended side effects of the present Act and of the Section 206 language in the bill.

2. CONFLICTING FEDERAL AND STATE REQUIREMENTS

Situations have developed where creditors are faced with a conflicting, or ambiguous, relation between Federal requirements and state requirements, which leave creditors open to liability in one or the other jurisdiction, no matter which course of action is taken. This is obviously an unintended and undesirable side effect of the Truth-in-Lending Act which needs to be resolved clearly in the statute. Where the Federal law speaks to the same area as the State law, the creditor is subject to both laws, and there is a conflict or ambiguity that prevents the creditor from complying with both requirements at the same time, the amendment would simply hold him harmless from State law liability if he has complied with the Federal requirements. This would not impair the "greater" State law clause elsewhere in the Act, which seeks to allow for State requirements that go beyond Truth-in-Lending Act standards, where the "greater" State law does not actually require violation of Federal requirements.

It has been suggested that the problem of State conflicts can be resolved elsewhere in the Act by authorizing the Federal Reserve Board to reconcile such conflicts through regulation. Even if this were a mandate to the Board, however, it could not hope to find all latent ambiguities in and conflicts between the various State laws and the Federal law, nor foresee all credit developments and arrangements which might bring about such ambiguities and conflicts in the future. These

problems should not be resolved by leaving private parties subject to Federal or State class action liability; they should be statutorily resolved as an entire class, in the Federal law. It is desirable to instruct the Board to try to reconcile as many problems between State and Federal law as possible, but the remaining unresolved regulatory problems should not be laid at the doorstep of private parties—with the ultimate unnecessary costs to the creditor, the borrower, and the court system.

JOHN TOWER.

O