IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>Centralized before The Honorable Marvin E. Aspen |

# DEFENDANTS'[1] MEDIATION STATUS REPORT

## I. INTRODUCTION

On December 20, 2006, this Court ordered Defendants and representatives of the individual plaintiffs who have elected to opt out of the master class complaints (collectively, the "Opt-Out Plaintiffs") to meet and confer in an effort to reach agreement as to a mediator and procedures for mediating all individual cases in which individuals assert that Defendants failed to provide them with proper notice of their rescission rights in violation of the Truth-In-Lending Act, 15 U.S.C. Section 1601, *et seq.* (collectively, the "Opt-Out Cases"). (Docket No. 341.) Since the December 20, 2006 Order, counsel for Defendants and members of the Individual Claims Steering Committee (the "Committee") have engaged in regular telephonic and written meet and confer discussions in an effort to comply with this Court's request. (Declaration of Bernard E. LeSage ("LeSage Decl."), ¶¶ 2-6.) The written meet and confer discussions collectively are attached to the LeSage Declaration as Exhibits A through D. As a result of these

---

[1] "Defendants" collectively refers to Ameriquest Mortgage Company ("AMQ"); AMC Mortgage Services, Inc. ("AMC"); Town & Country Credit Corporation ("T&C"); Ameriquest Capital Corporation ("ACC"); Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc. ("AMS").

1

discussions, the parties have reached agreement on certain, but not all issues, related to mediation of the Opt-Out Cases. These areas of agreement (subject to this Court's approval) and disagreement (with Defendants' position on the issues) are set forth below.[2]

## II. AREAS OF AGREEMENT

The parties have reached consensus on the following issues:

### A. Counterclaims & Third-Party Complaints.

All parties shall use their best efforts to file all counterclaims and third-party complaints in the Opt-Out Cases by March 30, 2007.

### B. Opt-Out Plaintiffs' Initial Production of Documents.

Opt-Out Plaintiffs shall use their best efforts to produce all documents in their possession, custody or control supporting the allegations and claims in their complaints by March 30, 2007.

### C. Defendants' Initial Production of Documents.

Defendants shall use their best efforts to (1) produce to Opt-Out Plaintiffs their complete loan file and all documents supporting Defendants' claims against third-parties, (2) identify all assignees of Opt-Out Plaintiffs' loans, and (3) provide Opt-Out Plaintiffs with their account history by March 30, 2007.

## III. AREAS OF DISAGREEMENT

The parties have not been able to reach consensus on the following issues:

### A. Identity of Mediator.

In accordance with the Court's November 7, 2006 Order, Defendants and Co-Lead Counsel have already selected The Honorable John K. Trotter (Retired) to serve as mediator for the borrower and non-borrower class actions. Since many of the issues raised in the complaints

---

[2] Defendants are concurrently filing a proposed Stipulation and Order memorializing the areas of agreement between the parties.

2

in the Opt-Out Cases are duplicative of issues raised in the borrower class action, Defendants propose that Justice Trotter serve as mediator for the Opt-Out Cases as well. Justice Trotter has been practicing law for nearly 50 years and spent 10 years on the bench, including with the California Court of Appeal. During the past 20 years, Justice Trotter has gained a reputation as one of the nation's leading experts in Alternative Dispute Resolution.[3] The selection of Justice Trotter as mediator for the Opt-Out Cases will create an economy of scale that would expedite the mediation process and minimize the expense associated with educating a new mediator regarding the contours of the common issues.

The Committee rejected Justice Trotter. Defendants, thus, have alternatively proposed that The Honorable Donald O'Connell (Retired), serve as the mediator for all Opt-Out Cases.[4] The Committee has stated that they will not accept Judge O'Connell primarily because all Opt-Out Plaintiffs will not stipulate to mediation in a centralized location, rather demanding mediation in the venue where each of the Opt-Out Cases were originally filled. Since the parties have not been able to stipulate to a mediator, Defendants have complained with the Court's December 20, 2006 Order and have concurrently filed Defendants' Notice Of Selection Of Proposed Mediators.

### B. Costs of Mediation.

The Committee has informed counsel for Defendants that Opt-Out Plaintiffs are unwilling to share in the costs of mediation. The parties are continuing to negotiate over the fair and equitable share of costs of mediation. However, Defendants believe that the parties will not be able to resolve this issue until all necessary parties are before this Court, including all counter-defendants and third-party defendants.

---

[3] For the convenience of the Court, Justice Trotter's resume is attached hereto as Exhibit 1.

[4] For the convenience of the Court, Judge O'Connell's resume is attached as Exhibit 2.

3

### C.     Attendance at Mediation.

As noted above, the Committee has proposed that Opt-Out Plaintiffs need not attend mediation in-person, but rather, need only be available by telephone. (LeSage Decl., Exh. C.) Further, the Committee has proposed that Opt-Out Plaintiffs' counsel need only attend the mediation of the 30 "test cases" detailed above. (*Id.*) Thereafter, the Committee has proposed that Opt-Out Plaintiffs' counsel participate in all subsequent phases of the mediation telephonically. (*Id.*)

Defendants oppose the Committee's proposal because, among other things, it contravenes this Court's Standing Order for case management procedures, which requires that all parties must be physically present at settlement conferences. Defendants believe, as this Court's Standing Order recognizes, settlement discussions are most productive when the parties appear in-person. Indeed, barring unique circumstances making personal appearance impossible, telephonic appearances patently demonstrate a lack of commitment to the mediation process. Here, due to the large number of mediations that must take place in a relatively short period, it is essential that each mediation be productive.

Moreover, Opt-Out Plaintiffs were given the opportunity to participate in the borrowers' master class action complaint, but elected to proceed on an individual basis, and the overwhelming majority opted to participate in this MDL. Thus, their cases, by Opt-Out Plaintiffs' election, proceed individually in this District as if originally filed here.[5] This Court consistently has ordered the parties to use only one mediator. (Docket No. 284 (November 7, 2006 Case Management Order) (stating that the parties should select "an agreed-upon

---

[5] Further, the Opt-Out Plaintiffs will be given the opportunity to avoid the cost of ongoing litigation by participating the settlement reached between Defendants and the Attorneys General of the 49 states in which Defendants have done business over the past six years.

4

mediator"), and Docket No. 341 (stating that this Court prefers "the appointment of a private mediator") (emphasis added in both).)

It is notable that, while each Plaintiff need only appear for mediation once, representatives for Defendants possibly will have to personally participate in over 700 separate mediations. Of course, if individual circumstances (*e.g.*, illness or disability) necessitate that a specific Plaintiff appear by telephone, Defendants are willing to entertain such requests on an individual basis. While Defendants do not anticipate disputes regarding claims of illness or disability by Opt-Out Plaintiffs, if the parties are unable to resolve disputes regarding an particular claim of hardship, the parties can submit the dispute to the mediator for resolution.

## IV.    CONCLUSION

As detailed above, while the parties have not reached consensus with respect to the mediation of the Opt-Out Cases, the parties have made significant progress in this regard. In light of the foregoing, Defendants propose the parties continue to meet and confer and attempt to resolve the final areas of disagreement. If the parties are unable to reach a final consensus with respect to the areas of disagreement detailed above by the February 8, 2007 status conference, Defendants propose that the parties submit all disagreements to the Court for resolution.

DATED: January 19, 2007　　　　　　　　　Respectfully submitted,

By:/s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457

## CERTIFICATE OF SERVICE

I, Bernard E, LeSage, hereby certify that on this 19th day of January 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Bernard E. LeSage

**Exhibit 1**

**Hon. John K. Trotter (Ret.)** joined JAMS in 1987 upon early retirement from the California Court of Appeal. Justice Trotter has gained a reputation as one of the nation's leading experts in Alternative Dispute Resolution (ADR) and has a thorough knowledge of all ADR hearing formats and procedures.

### ADR Experience and Qualifications

- Successfully resolved hundreds of cases involving:
    - Bad Faith
    - Construction Defects
    - Contract Disputes
    - Employment
    - Insurance Coverage
    - Personal Injury
    - Professional Liability
    - Toxic Torts
- Served as a Special Master in numerous complex cases in both Federal and State court
- Authored over 500 opinions while on the Court of Appeal
- Served on the Law and Motion, Settlement Conference and Civil Trial Court calendars of the Orange County Superior Court
- Specialized in civil litigation and tried in excess of 100 jury trials in State and Federal Court while in private practice

### Honors, Memberships, and Professional Activities

- Recognized as a Top 30 California Neutral, Daily Journal, 2006
- Recognized as one of the "500 Leading Judges in America," by Lawdragon Magazine, 2006
- Recognized as a Top 50 California Neutral, Daily Journal, 2003
- Recognized as one of California's "Most Sought After Mediators and Arbitrators," by the Daily Journal, November 2002
- Recognized as one of the "Top 100 Lawyers in California," by the Daily Journal, September 2002
- "Appellate Justice of the Year" Award, California Trial Lawyers Association, 1986
- "Justice of the Year Award", Los Angeles Trial Lawyers Association, 1985
- "Franklin G. West" Award, Orange County Bar Association

- "Award of Appreciation", Mexican-American Bar Association
- Founding President, Robert A. Banyard Inns of Court, 1987
- President, Orange County Bar Association, 1978-1979
- President, American Board of Trial Advocates, 1968
- Disciplinary Hearing Officer, California State Bar Association
- Faculty Member: College of Trial Advocacy, National Institute of Trial Advocacy, and University of Southern California
- Taught Negotiation and Mediation Techniques to judges, attorneys, and business people throughout California

**Background and Education**

- Associate Justice Pro Tem, California State Supreme Court, 1983
- Presiding Justice, California Court of Appeal, Fourth District, Division Three, 1982-1987
- Associate Justice, California Court of Appeal, Fourth District, Division Two, March-December 1982
- Judge, Orange County Superior Court, 1979
- Private practice, 1961-1979
- J.D., University of Southern California Law School, 1961

# Exhibit 2

# O'CONNELL MEDIATION SERVICES | DONALD P. O'CONNELL

HOME    SERVICES    AWARDS    CONTACT US

## Curriculum Vitae

**Education:**

Northwestern University School of Law

J.D. 1968

**Bar Admissions:**

Supreme Court of Illinois, 1968

Federal District Court for the Northern District of Illinois

**Professional:**

*September, 2004 - Present*
Full-Time Private Mediation Practice

*August, 2001 - September, 2004*
Private Mediation Practice and
University of Illinois
Special Counsel - Medical Negligence

*December, 1994 - August, 2001*
Chief Judge and additionally assigned to the
Law Division, Circuit Court of Cook County

*December, 1990 - December, 1994*
Presiding Judge of the Law Division,

Circuit Court of Cook County

*June, 1984 - December, 1990*

Presiding Judge of the First Municipal District and additionally assigned to the Law Division, Circuit Court of Cook County

*December, 1978 - June, 1984*

Assigned to the Law Division as a motion and jury trial judge, Circuit Court of Cook County

**Mediation Training:**

Judge O'Connell received his mediation training at the National Judicial College.

**Mediation Experience:**

In addition to administrative responsibilities, maintained active Law Division individual motion and mediation calendars of catastrophic injury and commercial cases while also hearing regular Law Division motion calls or trials during entire 22 year tenure as a Circuit Judge.

Successfully conducted voluntary judicial mediation conferences in complex multiple party wrongful death and catastrophic injury products liability, construction, medical malpractice, aviation, railroad and other negligence cases as well as commercial litigation.

Significant experience in mediating multiple injury/wrongful death occurrences such as airplane crashes, explosions and construction site collapses.

Since August 1, 2001 successfully conducted private mediations in catastrophic injury, wrongful death and commercial cases.

**Special Mediation Recognition:**

Recognized by the *Chicago Lawyer Magazine* in the "Annual Personal Injury Settlements" edition for consecutive years as the leading judge in the State of Illinois for the most settlements of significant injury and wrongful death cases.

Recognized by the *Leading Lawyers Network* for ADR: Commercial.

In 2006 Judge O'Connell was selected by LawDragon as one of the "LawDragon 500" leading public and private judges in America.

© 2004 O'Connell Mediation Services