.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |

## DECLARATION OF BERNARD E. LESAGE IN SUPPORT OF DEFENDANTS' MEDIATION STATUS REPORT

I, Bernard E. LeSage, declare as follows:

1.       I am a shareholder of the law firm of Buchalter Nemer, a Professional Corporation, counsel for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc. (collectively, "Defendants") in this multidistrict litigation proceeding.  I make this Declaration in support of Defendants' Mediation Status Report.  I know the following to be true and if called upon to testify, I could and would competently testify to the truth of the matters stated herein.

2.       Since December 20, 2006, counsel for Defendants and members of the Individual Claims Steering Committee (the "Committee") have engaged in regular telephonic and written meet and confer discussions in an effort to comply with this Court's request to meet and confer to reach an agreement as to a mediator.

3.       In preparation for these meet and confer discussions, counsel for Defendants sent a letter to members of the Committee on January 8, 2007, detailing Defendants' proposals regarding the mediation of the Opt-Out Cases.  Attached to the letter was a draft mediation stipulation following the directions set forth in this Court's December 20, 2006 Order.  Attached hereto as Exhibit A is a true and correct copy of the letter with the accompanying attachments.

4.       On January 11, 2007, members of the Committee sent counsel for Defendants their counter-proposal for mediation of the Opt-Out Cases.  Attached hereto as Exhibit B is a true and correct copy of the Committee's counter-proposal for mediation.

1

5.      The parties met and conferred telephonically on January 12, 2007. During this teleconference, members of the Committee informed counsel for Defendants that they did not yet have authority for all Opt-Out Plaintiffs, but they would be speaking with other Opt-Out Plaintiffs' counsel the morning of January 16, 2007. The parties, therefore, decided to discuss certain issues preliminarily, but reconvene their discussions on January 16, 2007, after members of the Committee had spoken with other Plaintiffs' counsel.

6.      On January 16, 2007, the parties again met and conferred telephonically regarding mediation of the Opt-Out Cases, and were able to reach consensus on certain, but not all issues, concerning mediation of the Opt-Out Cases. These areas of agreement and disagreement were memorialized in subsequent emails between counsel for Defendants and members of the Committee. Attached hereto as Exhibits C and D are true and correct copies of these emails.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct. Executed this 19th day of January 2007 at Los Angeles, California.

By: /s/ Bernard E. LeSage

## CERTIFICATE OF SERVICE

I, Bernard E, LeSage, hereby certify that on this 19th day of January 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Bernard E. LeSage

# Exhibit  A



**BuchalterNemer**
A Professional Law Corporation

1000 WILSHIRE BOULEVARD, SUITE 1500, LOS ANGELES, CALIFORNIA 90017-2457
TELEPHONE (213) 891-0700 / FAX (213) 896-0400

File Number: L7526-0683
Direct Dial Number: (213) 891-5230
Direct Facsimile Number: (213) 630-5715
E-Mail Address: *blesage@buchalter.com*

January 8, 2007

**VIA FACSIMILE AND MAIL**

Daniel S. Blinn, Esq.
Consumer Law Group
35 Cold Spring Road, Suite 512
Rocky Hills, CT 06067

Charles M. Delbaum
NATIONAL CONSUMER LAW CENTER
77 Summer Street, 10th Floor
Boston, MA 02110

Daniel Edelman
Law Offices of Edelman, Combs,
Latturner & Goodwin, LLC
120 S. LaSalle, 18th Floor
Chicago, Illinois 60603

Daniel Mark Harris
Attorney at Law
150 North Wacker Drive, Suite 3000
Chicago, IL 60606

Re:   **In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation MDL No. 1715**

Dear Mr. Blinn and Individual Claims Steering Committee:

As you know, on December 20, 2006, Judge Aspen ordered Defendants[1] and plaintiffs in the individual action to meet and confer and arrive at a mutually agreeable protocol for mediation of the individual NORTC cases.[2] In anticipation of the January 12, 2007 conference call scheduled by the parties, Defendants propose the following protocol, which we believe satisfies the requirements set forth in Judge Aspen's December 20, 2006 Order and other orders entered by the Court.

**The Court's December 20, 2006 Order**

By the Court's December 20, 2006 Order, Judge Aspen raised three specific concerns with the Mediation Stipulation submitted to the Court on November 20, 2006. Specifically, the Court ordered that (1) the parties negotiate a stipulation governing mediation of all individual NORTC cases; (2) the parties select a private mediator to mediate these disputes; and (3) the stipulation provide that discovery should not be stayed during the pendency of mediation.

---

[1] "Defendants" collectively refers to Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; Ameriquest Mortgage Securities, Inc.; and Argent Mortgage Company, LLC.

[2] The Court's December 20, 2006 Order is attached hereto as "Exhibit A."

BuchalterNemer
Daniel S. Blinn, Esq.
January 8, 2007
Page 2

**I.      Scheduling of the Meeting Between the Parties and the Scope of Any Agreement Reached During Our Meeting**

With respect to the time and place of the meeting between the parties contemplated in the Court's December 20, 2006 Order, this letter shall confirm that Defendant and representatives of the Individual Claims Steering Committee (the "Committee") will participate in a teleconference on January 12, 2007 at 11:00 a.m. PST.

With respect to the Court's concern that any mediation agreement cover all individual NORTC cases, we trust that, during our meet and confer next week, the Committee will have the authority to represent all individual plaintiffs who have elected to opt out of the Class Action Complaints.

**II.      Selection of the Mediator**

In accordance with the Court's November 7, 2006 Order, Defendants and Lead Counsel have already selected the Honorable John K. Trotter (Retired) to serve as mediator for the borrower and non-borrower class actions. Since many of the issues raised in the individual complaints are duplicative of issues raised in the Borrowers' Master Class Action Complaint, Defendants propose that Justice Trotter serve as mediator for the individual actions as well. Justice Trotter has been practicing law for nearly 50 years and spent 10 years on the bench, including the California Court of Appeal. During the past 20 years, Justice Trotter has gained a reputation as one of the nation's leading experts in Alternative Dispute Resolution.[3] The selection of Justice Trotter as mediator for the individual actions will create an economy of scale that would expedite the mediation process and minimize the expense associated with educating a new mediator regarding the contours of the common issues. While Defendants are not completely adverse to the appointment of an alternative mediator,[4] the Committee needs to articulate an objection to Justice Trotter sufficient to overcome the economy of scale detailed above and to justify the added expense associated with the education of a new mediator.

**III.      Maximizing the Benefits of Mediation**

With respect to discovery, while the Court believes that a stay is not appropriate, an agreement between the parties regarding the scope and timing of discovery would seem to be in the best interest of all parties in order to avoid unnecessary discovery expense while maximizing the possibility of settlement at mediation. Therefore, Defendants propose that the parties follow the discovery plan outlined in the Mediation Stipulation. Of course, once mediation is concluded, if the parties are unable to resolve a specific case, the parties can then engage in more detailed discovery. Since the Mediation Stipulation contemplates the exchange of documents

---

[3] Attached hereto as "Exhibit B" is a copy of Justice Trotter's resume.

[4] During our negotiations of the Mediation Stipulation, Defendants proposed the Honorable Donald O'Connell as an alternative mediator and at least some of the counsel representing Plaintiffs agreed to his appointment.

BN 1090421v2

BuchalterNemer
Daniel S. Blinn, Esq.
January 8, 2007
Page 3

and the depositions of the plaintiffs and representatives of the Defendants, it seems that an expedited discovery plan detailed in the Mediation Stipulation would yield sufficient information to allow the parties to participate in meaningful mediation.

With respect to the order in which we mediate particular cases, in order to maximize Justice Trotter's knowledge regarding the various claims asserted in the individual complaints, it seems prudent to divide the cases by the types of claims asserted in the various complaints. The individual actions can be easily divided into four major groups of cases and should be mediated in the following order: (1) complaints alleging that there was confusion created by purportedly contradictory rescission notices (seven and three-day right to rescind), (2) cases alleging that the NORTC provided to borrowers were blank, (3) cases alleging that Defendants utilized the "wrong form" of NORTC (H-8/H-9), and (4) miscellaneous cases that cannot be categorized into any of the preceding groups.

Further, since we will need to mediate the claims of more than 700 individual plaintiffs, we will need to create a mediation schedule that will allow for multiple mediations during the same day. Since many of you have cases in each of the foregoing categories, in order to minimize travel expense, we propose that we divide the cases in each of the foregoing groups by the representative counsel. Thus, with a certain amount of cooperation and planning, we can move through each group of claims with relative speed and economy.

Finally, in his letter of December 28, 2006, Mr. Blinn once again proposed that plaintiffs and their counsel be allowed to appear telephonically at mediation. This position has been previously rejected by Defendants and contravenes Judge Aspen's Case Management Procedures, which requires that all parties must be physically present at settlement conferences. Obviously, as Judge Aspen's standing order recognizes, settlement discussions are most productive when the parties appear in person. Indeed, barring unique circumstances making personal appearance impossible, telephonic appearances patently demonstrate a lack of commitment to the mediation process. Here, due to the large number of mediations that must take place in a relatively short period, it is essential that each mediation be productive. It is notable that, while each plaintiff need only appear for mediation once, representatives for Defendants possibly will have to personally participate in over 700 separate mediations.

## IV.    Allocation of Mediation Costs

Judge Aspen's November 7, 2006 Memorandum Opinion and Order states that the parties must participate in mediation and does not support any argument that Defendants shall bear the entire cost of mediation. As I have expressed to each of you on numerous occasions, it is Defendants' belief that all parties must have financial investment in the mediation process in order for mediation to be meaningful. The payment of each party's fair share of the mediation cost ensures good faith participation in the mediation. Since your clients will undoubtedly be seeking to recover the costs of litigation in any settlement negotiated at mediation, the cost of mediation may be recouped in any settlement reached therein.

BuchalterNemer

Daniel S. Blinn, Esq.
January 8, 2007
Page 4

### V. Proposed Stipulation

Finally, in its December 20, 2006 Order, the Court requested that the parties submit a revised mediation stipulation. In preparation for our conference call on January 12, 2007, attached hereto as "Exhibit C" is a draft mediation stipulation for your review. The draft mediation stipulation is modeled after the Mediation Stipulation to which the majority of the parties agreed after weeks of negotiation and reflects the instructions issued by the Court in its December 20, 2007 Order.

\* \* \* \*

It is our continued hope that meaningful mediation of these disputes can be conducted in a timely and efficient manner. We look forward to discussing these matters during our teleconference on January 12, 2007. In the meantime, if you have any questions, please do not hesitate to contact me.

Very truly yours,

BUCHALTER NEMER
A Professional Corporation

By

Bernard E. LeSage

BEL:ap
cc:     Sarah K. Andrus, Esq.
        Michael B. Fisher, Esq.

BN 1090421v2

**EXHIBIT A**

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 7097 | **DATE** | 12/20/2006 |
| **CASE TITLE** | In Re: In Re: Ameriquest Mortgage Co. | | |

**DOCKET ENTRY TEXT**

We decline to enter the Stipulation attached to defendants' motion. ECLG no longer joins in the Stipulation, and it contains several terms that do not meet our approval. The parties shall confer in an attempt to submit a revised stipulation–or a notification that they cannot reach agreement–by January 19, 2007. The status hearing set for December 28, 2006 is reset to February 8, 2007 at 10:30 a.m.

■[ For further details see text below.]

Notices mailed by Judicial staff.

---

## STATEMENT

(Reserved for use by the Court)

## ORDER

Defendants now file a Motion to Enter Stipulation to Mediate and Issue Scheduling Order in Accordance with Terms of Stipulation. Defendants and the individual plaintiffs represented by the Law Offices of Daniel Harris (Harris) and Edelman, Combs, Latturner & Goodwin, LLC (ECLG) initially agreed on terms for mediation of over 100 actions. After we entered our Case Management Order on November 7, 2006 and our now-vacated November 8 Minute Orders, ECLG sought to withdraw from the stipulation. (Dkt. No. 308, at 5.) According to defendants, defendants and the Harris plaintiffs remain in agreement on the terms of the stipulation. Therefore, defendants request that we "issue a Scheduling Order governing all of the Individual NORTC (notice of right to cancel) Cases that adopts the mediation protocol set forth in the Stipulation or a similar plan acceptable to this Court." (*Id.* at 2.) We decline to enter the Stipulation attached to defendants' motion: ECLG no longer joins in the Stipulation, and it contains several terms that do not meet our approval.

Instead, the parties shall confer in an attempt to submit a revised stipulation – or a notification that they cannot reach agreement – by January 19, 20067. By way of guidance, we note the following: 1) discovery shall not be stayed during the pendency of mediation – the mediation and litigation tracks should run simultaneously; 2) the stipulation should govern the mediation of all individual NORTC cases; and 3) because of the nature of these cases and the stakes involved for all parties, we prefer the appointment of a private mediator; if the parties cannot agree on the selection of a mediator by January 18, 2006, we will appoint one in accordance with the format set forth on page 14 of our November 7, 2006 Case Management Order.

It is so ordered.

*Marvin E Aspen*

**EXHIBIT B**

**Hon. John K. Trotter (Ret.)** joined JAMS in 1987 upon early retirement from the California Court of Appeal. Justice Trotter has gained a reputation as one of the nation's leading experts in Alternative Dispute Resolution (ADR) and has a thorough knowledge of all ADR hearing formats and procedures.

## ADR Experience and Qualifications

- Successfully resolved hundreds of cases involving:
  - Bad Faith
  - Construction Defects
  - Contract Disputes
  - Employment
  - Insurance Coverage
  - Personal Injury
  - Professional Liability
  - Toxic Torts
- Served as a Special Master in numerous complex cases in both Federal and State court
- Authored over 500 opinions while on the Court of Appeal
- Served on the Law and Motion, Settlement Conference and Civil Trial Court calendars of the Orange County Superior Court
- Specialized in civil litigation and tried in excess of 100 jury trials in State and Federal Court while in private practice

## Honors, Memberships, and Professional Activities

- Recognized as a Top 30 California Neutral, Daily Journal, 2006
- Recognized as one of the "500 Leading Judges in America," by Lawdragon Magazine, 2006
- Recognized as a Top 50 California Neutral, Daily Journal, 2003
- Recognized as one of California's "Most Sought After Mediators and Arbitrators," by the Daily Journal, November 2002
- Recognized as one of the "Top 100 Lawyers in California," by the Daily Journal, September 2002
- "Appellate Justice of the Year" Award, California Trial Lawyers Association, 1986
- "Justice of the Year Award", Los Angeles Trial Lawyers Association, 1985
- "Franklin G. West" Award, Orange County Bar Association

- "Award of Appreciation", Mexican–American Bar Association
- Founding President, Robert A. Banyard Inns of Court, 1987
- President, Orange County Bar Association, 1978–1979
- President, American Board of Trial Advocates, 1968
- Disciplinary Hearing Officer, California State Bar Association
- Faculty Member: College of Trial Advocacy, National Institute of Trial Advocacy, and University of Southern California
- Taught Negotiation and Mediation Techniques to judges, attorneys, and business people throughout California

## Background and Education

- Associate Justice Pro Tem, California State Supreme Court, 1983
- Presiding Justice, California Court of Appeal, Fourth District, Division Three, 1982–1987
- Associate Justice, California Court of Appeal, Fourth District, Division Two, March–December 1982
- Judge, Orange County Superior Court, 1979
- Private practice, 1961–1979
- J.D., University of Southern California Law School, 1961

**EXHIBIT C**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. | ) | MDL No. 1715 |
| MORTGAGE LENDING PRACTICES | ) | Lead Case No. 05-cv-07097 |
| LITIGATION | ) | |
| | ) | Centralized before the |
| | ) | Honorable Marvin E. Aspen |
| | ) | |
| | ) | |

**STIPULATION RE MEDIATION OF INDIVIDUAL NORTC ACTIONS**

WHEREAS, on December 20, 2006, Judge Aspen ordered Defendants[1] and Individual Claims Steering Committee (the "Committee") to meet and confer and arrive at a mutually agreeable protocol for mediation of the individual NORTC cases (the "Individual Actions");

WHEREAS, on January 12, 2007 Defendants and the Committee met and conferred and arrived at a mutually agreeable protocol that they believe satisfies the requirements set forth by Judge Aspen in his December 20, 2006 Order;

WHEREAS, to accomplish the agreement reached as a result of the January 12, 2007 conference , the parties, through their counsel of record, hereby enter into the following Stipulated Mediation Order with respect to the Individual Actions:

(1)     Within 30 days of the Court's entry of this Stipulated Mediation Order, Defendants shall file all cross complaints (collectively, the "Cross-Complaints") against all Third-Party Defendants then-known to Defendants and any other party in the Individual Actions.

(2)     Immediately after filing the Cross-Complaints, Defendants shall begin effectuating service on all Third-Party Defendants.  Together with service of process of the

---

[1] "Defendants" collectively refers to Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; Ameriquest Mortgage Securities, Inc.; and Argent Mortgage Company, LLC.

1

Cross-Complaints, Defendants shall use their best efforts to inform all Third-Party Defendants of this Stipulated Mediation Order.

(3)     Within 20 days of service of a Cross-Complaint in an Individual Action, the Third-Party Defendant(s) named in that action shall notify the Court and the parties to that action whether or not they agree to be bound by this Stipulated Mediation Order.

(4)     As soon as practical after the expiration of the 20-day period detailed in paragraph 3, the parties shall engage in non-binding mediation.

(5)     Prior to the any mediation, plaintiff(s) of each Individual Action ("Plaintiff(s)") shall produce all documents supporting the allegations in the complaint, and Defendants shall produce Plaintiff(s)' loan file and all documents to support any allegations against Third-Party Defendant(s).

(6)     If, after the exchange of documents detailed in paragraph 5, any party believes that meaningful mediation requires further discovery, counsel for the parties in each such Individual Action will confer telephonically and attempt to schedule further discovery ("Initial Mediation Discovery Conference"). Provided that such supplemental discovery does not conflict with the Court's November 7, 2006 Order, any supplemental discovery must be completed within 30 days from the Initial Mediation Conference, or such other time as the parties may agree. Within 30 days after the completion of the supplemental discovery, or such other time as to which the parties and mediator may agree, the parties shall participate in a mediation session to attempt to resolve the dispute.

(7)     The supplemental discovery contemplated in paragraph 6 shall be limited to: (a) one deposition of each Plaintiff, (b) one deposition of a representative of each Third-Party Defendant, and (c) exchange of all documents provided to the Plaintiff(s) at the time of loan closing in the possession, custody or control of the Plaintiff(s), the Ameriquest Defendant(s) and the Cross-Defendant(s). Depositions shall be limited to no more than four hours in length.

(8)     Plaintiffs and Defendants have agreed to retain the Honorable John K. Trotter, Retired, to mediate the Individual Actions. If a Third-Party Defendant consents to mediation, but objects to Judge Trotter serving as mediator, the parties shall promptly meet and confer and select an alternative mediator.

(9)     Parties with settlement authority and their counsel will attend the mediation in person.

(10)     The parties may disclose to the mediator the terms of prior settlements.  However, the parties also agree that prior settlements are not binding precedent and that any prior settlements will only be disclosed to the parties and the mediator in the particular mediation. The parties also agree that any disclosure of the terms of prior settlements must be in writing and served on all Parties no less than five (5) court days prior to any mediation.  The parties also agree that they will otherwise fully comply with the confidentiality provisions in each such settlement agreement.

(11)     The mediation of the cases shall proceed in the following order:

   a.  Complaints alleging that there was confusion created by purportedly contradictory recession notices (seven and three day right to rescind);

   b.  Cases alleging that the NORTC provided to borrowers were blank;

   c.  Cases alleging that Defendants utilized the "wrong form" of NORTC (H-8/H-9); and

   d.  Miscellaneous cases that cannot be categorized into any of the preceding groups.

(12)     The mediation schedule shall provide for multiple mediations during the same day, so as to minimize travel expenses and to promote speed and economy.  Further, every effort will be made so that cases involving particular plaintiffs counsel will be mediated in succession to further minimize traveling expenses.

(13)     The fees and costs of mediation shall be borne equally by the participating parties.

**IT IS SO STIPULATED.**

Dated: January __, 2007

By:/s/ Daniel Harris _____

*Attorneys for Certain Plaintiffs*

Daniel Harris, Esq.
LAW OFFICES OF DANIEL HARRIS
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606

Dated: January ___, 2007

By: /s/ Daniel A. Edelman

*Attorneys for Certain Plaintiffs*

Daniel A. Edelman, Esq.
EDELMAN, COMBS, LATTURNER, &
GOODWIN, LLC
120 S. LaSalle Street, 18th floor
Chicago, IL 60603-3403

Dated: January ___, 2007

By: /s/ Daniel S. Blinn

*Attorneys for Certain Plaintiffs*

Daniel S. Blinn, Esq.
CONSUMER LAW GROUP
35 Cold Spring Road, Suite 512
Rocky Hills, CT 06067

Dated: January ___, 2007

By: /s/ Charles M. Delbaum

*Attorneys for Certain Plaintiffs*

Charles M. Delbaum
NATIONAL CONSUMER LAW CENTER
77 Summer Street, 10th Floor
Boston, MA 02110

Dated: January ___, 2007

By: /s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company;
AMC Mortgage Services, Inc.; Town & Country
Credit Corporation; Ameriquest Capital
Corporation; Town & Country Title Services,
Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage
Sarah K. Andrus
BUCHALTER NEMER, a Professional
Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457

Dated: January ___, 2007

By:/s/ Thomas J. Wiegand _____

*Attorneys for Argent Mortgage Company, LLC*

Thomas J. Wiegand
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

## ORDER

Plaintiffs and Defendants having so stipulated, **IT IS ORDERED** that:

(1)     Within 30 days of the Court's entry of this Order, Defendants shall file all Cross-Complaints against all Third-Party Defendants then-known to Defendants and any other party in the Individual Actions.

(2)     Immediately after filing the Cross-Complaints, Defendants shall begin effectuating service on all Third-Party Defendants. Together with service of process of the Cross-Complaints, Defendants shall use their best efforts to inform all Third-Party Defendants of the Stipulated Mediation Order and any related order of this Court.

(3)     Within 20 days of service of a Cross-Complaint in an Individual Action, the Third-Party Defendant(s) named in that action shall notify the Court and the parties to that action whether or not they agree to be bound by this Stipulated Mediation Order.

(4)     As soon as practical after the expiration of the 20-day period detailed in paragraph 3, the parties shall engage in non-binding mediation.

(5)     Prior to the mediation of any Individual Action, Plaintiff(s) therein shall produce all documents supporting the allegations in the complaint, and Defendants shall produce Plaintiff(s)' loan file and all documents to support any allegations against Third-Party Defendant(s).

(6)     If, after the exchange of documents detailed in paragraph 5, any party believes that meaningful mediation requires further discovery, counsel for the parties in each such Individual Action will confer telephonically and attempt to schedule further discovery ("Initial Mediation Discovery Conference"). Provided that such supplemental discovery does not conflict with the Court's November 7, 2006 Order, any supplemental discovery must be completed within 30 days from the Initial Mediation Conference, or such other time as the parties may agree. Within 30 days after the completion of the supplemental discovery, or such other time as to which the parties and mediator may agree, the parties shall participate in a mediation session to attempt to resolve the dispute.

(7)     The supplemental discovery contemplated in paragraph 7 shall be limited to: (a) one deposition of each Plaintiff, (b) one deposition of a representative of each Third-Party Defendant, and (c) exchange of all documents provided to the Plaintiff(s) at the time of loan

closing in the possession, custody or control of the Plaintiff(s), the Ameriquest Defendant(s) and the Cross-Defendant(s). Depositions shall be limited to no more than four hours in length.

(8)     Plaintiffs and Defendants have agreed to retain the Honorable John K. Trotter, Retired, to mediate the Individual Actions. If a Third-Party Defendant consents to mediation, but objects to Judge Trotter serving as mediator, the parties shall promptly meet and confer and select an alternative mediator.

(9)     Parties with settlement authority and their counsel will attend the mediation in person.

(10)    The parties may disclose to the mediator the terms of prior settlements. However, the parties also agree that prior settlements are not binding precedent and that any prior settlements will only be disclosed to the parties and the mediator in the particular mediation. The parties also agree that any disclosure of the terms of prior settlements must be in writing and served on all Parties no less than five (5) court days prior to any mediation. The parties also agree that they will otherwise fully comply with the confidentiality provisions in each such settlement agreement.

(11)    The mediation of the cases shall proceed in the following order:

    a.    Complaints alleging that there was confusion created by purportedly contradictory recession notices (seven and three day right to rescind);

    b.    Cases alleging that the NORTC provided to borrowers were blank;

    c.    Cases alleging that Defendants utilized the "wrong form" of NORTC (H-8/H-9); and

    d.    Miscellaneous cases that cannot be categorized into any of the preceding groups.

(12)    The mediation schedule shall provide for multiple mediations during the same day, so as to minimize travel expenses and to promote speed and economy. Further, every effort will be made so that cases involving particular plaintiffs counsel will be mediated in succession to further minimize traveling expenses.

///

///

///

(13)    The fees and costs of mediation shall be borne equally by the participating parties.

**IT IS SO ORDERED.**

Dated:_____, 2006

                                      _____

                                        THE HONORABLE MARVIN E. ASPEN
                                        UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT A

**List all opt-outs**

## CERTIFICATE OF SERVICE

I, Bernard E, Lesage, hereby certify that on this __ day of January 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Bernard E. LeSage _____

**Exhibit B**

**From:** Dan Blinn [mailto:dblinn@consumerlawgroup.com]
**Sent:** Thursday, January 11, 2007 1:39 PM
**To:** LeSage, Bernard
**Cc:** Charles Delbaum; Dan Harris; tgoodwin@edcombs.com
**Subject:** Response to January 9 Letter

Bernie:

There were some parts of your proposal that we liked better than others. The Committee does not have authority to speak for non-Committee plaintiffs' counsel at this time but hopes to get it in the near future. For purposes of facilitating our discussion tomorrow, we believe that an agreement along the following lines could be workable:

1. By the end of February, defendants shall file all cross-complaints.

2. By the end of February, plaintiffs will produce all documents now in their possession supporting their claims.

3. By the end of February, defendants will produce plaintiffs' complete loan files and all documents supporting claims against third parties.

4. The primary mediator will be Judge O'Connell in Chicago. If necessary, the parties will agree on additional mediators with the understanding that the mediation of claims of plaintiffs other than those represented by members of the Steering Committee may take place in their districts.

5. By the end of February, counsel will meet face to face with the mediator and attempt to resolve discovery disputes.

6. By the end of February, counsel will meet face to face with the mediator and attempt to resolve other disputes, such as venue, whether Ameriquest will accept partial payments from delinquent borrowers and who will pay the cost of individual mediations. The Committee will not accept equal sharing of individual mediation costs but is considering a compromise proposal.

7. Counsel on the Individual Claims Steering Committee must attend mediation sessions for their own clients in person. Clients must attend in person or be available by telephone.

8. By February 6, Ameriquest will select ten representative cases to begin the mediation process and the Committee will select twenty representative cases. The mediations of these cases will commence as soon as practicable.

Dan Blinn and Charles Delbaum,
Co-Chairs of Individual Claims Steering Committee

Consumer Law Group, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, CT  06067
860 571-0408,x101
fax: 860 571-7457

dblinn@consumerlawgroup.com

-------------------------------------------------------------------------------
NOTICE: The information contained in this electronic mail message is confidential and intended only for certain recipients. If you are not an intended recipient, you are hereby notified that any disclosure, reproduction, distribution or other use of this communication and any attachments is strictly prohibited. If you have received this communication in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
============================================================
====================

**Exhibit C**

**From:** Dan Blinn [mailto:dblinn@consumerlawgroup.com]
**Sent:** Tuesday, January 16, 2007 10:54 AM
**To:** LeSage, Bernard
**Cc:** Charles Delbaum; James Latturner; tgoodwin@edcombs.com; Al Hofeld; Dan Harris
**Subject:** Mediation/Discovery

Bernie:

This is to memorialize our conference call of earier today.  As I indicated, the
Steering Committee does not speak for all of the individual plaintiffs, but those
plaintiffs who participated in our recent conference call expressed a general
consensus to the following proposals:

1.   I had previously sent you language regarding an informal agreement to forego
full discovery.  You indicated that this approach was acceptable.  We do not
beleive that this should be part of any stipulation, but we will jointly move for an
extension of the discovery cut-off date.  I presume that your agreement to this
approach means that you do not intend to move forward with the depositions that
were recently noticed and that there is no need for us to move for a protective
order.  Please advise if I am mistaken in that regard.

2.   By the end of March, defendants shall file substantially all cross-complaints.

3.   By the end of March, plaintiffs will produce all documents now in their
possession supporting their claims.

4. By the end of March, defendants will produce plaintiffs' complete loan
files, all documents supporting claims against third parties, identify all known
assignees of the plaintiffs' mortgages, and provide a full account history for
plaintiff's accounts.

5.   The mediation will consist initially of 20 files selected by the Steering
Committee as representative of the larger group of individual claims.   It may
also, at Ameriquests' option, consist of an additional 10 files selected by
Ameriquest as representative of the individual claims, provided that the claimant
must consent to inclusion at this juncture if not represented by one of the
attorneys on the Steering Committee.

6.   All claimants would attend in person or be available by telephone.  All
attorneys particiating in the initial session of the mediation would attend in
person.  Attorneys participating in subsequent phases of the mediation have the
option of attending telephonically unless the mediation occurs in the district
where the action was originally filed.

7.    Plaintiffs would pay up to 1/3 of the cost of the mediation up to a maximum
of $500 per plaintiff (with co-makers treated as a single plaintiff for these
purposes), except that no plaintiff shall need to contribute anything unless they

have refused a settlement offer deemed by the mediator to be fair and reasonable. Plaintiffs represented by legal aid agencies, attorneys handling the case pursuant to a referral from a legal aid agency and without having received payment from any such plaintiffs, or who have had an *In Forma Pauperis* petition granted will not be required to contribute.

8. The mediator will be Judge O'Connell in Chicago.

I note that much of our proposal is contingent upon Ameriquest's agreement to No. 6.

Dan Blinn
Consumer Law Group, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, CT 06067
860 571-0408,x101
fax: 860 571-7457

dblinn@consumerlawgroup.com

-----------------------------------------------------------------------

NOTICE: The information contained in this electronic mail message is confidential and intended only for certain recipients. If you are not an intended recipient, you are hereby notified that any disclosure, reproduction, distribution or other use of this communication and any attachments is strictly prohibited. If you have received this communication in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
===========================================================
====================

**Exhibit D**

**From:** LeSage, Bernard
**Sent:** Tuesday, January 16, 2007 6:53 PM
**To:** Dan Blinn; Charles Delbaum; James Latturner; tgoodwin@edcombs.com; Al Hofeld; Dan Harris; Andrus, Sarah; Fisher, Michael B.; Block, Brandon A.; Petrossian, Melody A.; Mandell, Joshua R.
**Subject:** RE: Mediation/Discovery

Dan and the Committee:

     I have reviewed your email (which is found below) regarding our conference call of today, and have the following comments and suggestions in the order that these issues were raised in your e-mail:

1.     Defendants agree that the prospects for productive mediation are enhanced by limiting early discovery to issues necessary to prepare these disputes for mediation. With this in mind, Defendants generally agree to the discovery protocol described in paragraph 2, 3 and 4 of your below email. We also agree that we should be able to schedule the discovery in an efficient way. However, as pointed out in pleadings before the court by various Plaintiffs' (and concurred with by the Defendants), each of these individual rescission actions is unique, and totally dependent upon the circumstances of each case. Consequently, Defendants believe that it is important to depose the various individual plaintiffs before mediation, if mediation is to be effective. We do not expect that the depositions will be long, generally no more than 4. Therefore, Defendants do not withdraw their deposition notices at this time, but will certainly work with you to make them as efficient as possible.

2.     Defendants agree that they shall make every effort to file substantially all cross-complaints by the end of March 2007.

3.     Defendants agree that plaintiffs will produce all documents in their possession supporting the claims asserted in their various complaints by the end of March 2007.

4.     Defendants agree that they shall make every effort to produce to plaintiffs their complete loan file, all documents supporting claims against third parties, identify all assignees, and provide account history for each plaintiff's account by the end of March 2007. While Defendants do not anticipate any specific difficulty in fulfilling this request, Defendants may have some difficulty with a few files, which may require addition time in a retrieving all such data by the end of March. Therefore all parties will

retain the right to supplement their production as new documents are discovered.

5.        Defendants do not agree to the "test case" model for mediation proposed in paragraph 5 of your email. As Dan Edelman and Dan Harris have stressed in various court documents, the claims asserted by the individual plaintiffs are unique and must be adjudicated on an individual basis. Defendants concur with this position and do not believe that the resolution of any specific complaints will necessarily impact the value of the claims asserted by any other individual plaintiff. As an alternative to your proposal, Defendants ask you to reconsider the proposal included in the draft Mediation Stipulation submitted to you on January 9, 2007. Defendants are certainly willing to schedule the mediations in such a way as to minimize the cost and expenditures of mediation, after all parties necessary to participate in such mediations have been properly joined.

6.        With respect to your request that individual plaintiffs and their counsel appear by telephone at mediation, this position has been previously rejected by Defendants and contravenes Judge Aspen's case management procedures, which requires that all parties must be physically present at settlement conferences. Defendants believe, and Judge Aspen's Order recognizes that settlement discussions are most productive when the parties appear in person. Of course, if individual circumstances (e.g., illness or disability) necessitate that a specific plaintiff appear by telephone, Defendants are willing to entertain such requests on an individual basis. The mediator can resolve issues related to whether or not a party plaintiff must appear at the mediation. However, Judge Aspen's November 7, 2006 Order makes it clear that if an individual plaintiff elects not to participate in the two class actions ordered by the Court, then the individual plaintiff must proceed on an individual basis. Since the individual plaintiffs have elected to opt out of the class actions because they believe that they will have a greater recovery if they proceed on an individual basis, the cost of appearing in person at mediation is generally a necessary expense for meaningful mediation of a Federal Court case.

7.        Defendants agree in principle to the proposal outlined in paragraph 7 of your email. However, Defendants believe that, until the cross defendants in the various cross-complaints have had the opportunity to appear and evaluate the Mediation Stipulation, the payment structure for mediation should be tabled until the cross defendants are given the

opportunity to provide the parties with input regarding the payment structure.

8.      The parties agree that Judge O'Connell shall serve as mediator and that mediation will take place in Chicago.

    We look forward to your comments.

Thanks,
*Bernie*
Bernard E. LeSage
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Direct Number - (213) 891-5230
Firm Number - (213) 891-0700
Cell Number - (619) 985-4415
Direct Fax - (213) 630-5715
Firm Fax - (213) 896-0400
E-mail - blesage@buchalter.com

Firm Directory of Attorneys:
http://www.buchalter.com/FSL5CS/Custom/IndexAttorneys.asp
Please see <http://www.buchalter.com/> for the policies governing this transmission.

---

**From:** Dan Blinn [mailto:dblinn@consumerlawgroup.com]
**Sent:** Tuesday, January 16, 2007 10:54 AM
**To:** LeSage, Bernard
**Cc:** Charles Delbaum; James Latturner; tgoodwin@edcombs.com; Al Hofeld; Dan Harris
**Subject:** Mediation/Discovery

Bernie:

This is to memorialize our conference call of earier today. As I indicated, the Steering Committee does not speak for all of the individual plaintiffs, but those plaintiffs who participated in our recent conference call expressed a general consensus to the following proposals:

1.   I had previously sent you language regarding an informal agreement to forego full discovery. You indicated that this approach was acceptable. We do not beleive that this should be part of any stipulation, but we will jointly move for an extension of the discovery cut-off date. I presume that your agreement to this approach means that you do not intend to move forward with the depositions that were recently noticed and that there is no need for us to move for a protective order. Please advise if I am mistaken in that regard.

2.   By the end of March, defendants shall file substantially all cross-complaints.

3.   By the end of March, plaintiffs will produce all documents now in their possession supporting their claims.

4.  By the end of March, defendants will produce plaintiffs' complete loan files, all documents supporting claims against third parties, identify all known assignees of the plaintiffs' mortgages, and provide a full account history for plaintiff's accounts.

5.   The mediation will consist initially of 20 files selected by the Steering Committee as representative of the larger group of individual claims.   It may also, at Ameriquests' option, consist of an additional 10 files selected by Ameriquest as representative of the individual claims, provided that the claimant must consent to inclusion at this juncture if not represented by one of the attorneys on the Steering Committee.

6.   All claimants would attend in person or be available by telephone.  All attorneys particiating in the initial session of the mediation would attend in person.  Attorneys participating in subsequent phases of the mediation have the option of attending telephonically unless the mediation occurs in the district where the action was originally filed.

7.   Plaintiffs would pay up to 1/3 of the cost of the mediation up to a maximum of $500 per plaintiff (with co-makers treated as a single plaintiff for these purposes), except that no plaintiff shall need to contribute anything unless they have refused a settlement offer deemed by the mediator to be fair and reasonable.  Plaintiffs represented by legal aid agencies, attorneys handling the case pursuant to a referral from a legal aid agency and without having received payment from any such plaintiffs, or who have had an *In Forma Pauperis* petition granted will not be required to contribute.

8.   The mediator will be Judge O'Connell in Chicago.

I note that much of our proposal is contingent upon Ameriquest's agreement to No. 6.

Dan Blinn
Consumer Law Group, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, CT  06067
860 571-0408,x101
fax: 860 571-7457

dblinn@consumerlawgroup.com

-----------------------------------------------------------------------------
NOTICE: The information contained in this electronic mail message is
confidential and intended only for certain recipients. If you are not an intended
recipient, you are hereby notified that any disclosure, reproduction, distribution or
other use of this communication and any attachments is strictly prohibited. If you
have received this communication in error, please notify the sender by reply
transmission and delete the message without copying or disclosing it.
===============================================================
====================