# EXHIBIT 1



**FILED**

NOV 3 0 2006

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS    MICHAEL W. DOBBINS
EASTERN DIVISION                         CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| VERNELL BALL-DANIEL, ) | |
| ) | No. |
| Plaintiff, ) | |
| ) | 06CV6602 |
| vs. ) | JUDGE NORDBERG |
| ) | MAG. JUDGE VALDEZ |
| ARGENT MORTGAGE COMPANY, LLC, ) | |
| AMC MORTGAGE SERVICES, INC. ) | |
| and DEUTSCHE BANK NATIONAL TRUST ) | |
| COMPANY, ) | JURY TRIAL DEMAND |
| ) | |
| Defendants. ) | |

## COMPLAINT

### INTRODUCTION

1. Plaintiff Vernell Ball-Daniel charges defendants with violation of the Truth in Lending Act through failure to honor a valid rescission request in violation of 15 U.S.C. § 1635. Plaintiff also charges defendant Argent with violation of Indiana law.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiff's claim under the Truth in Lending Act arises under federal law. This Court has supplemental jurisdiction over plaintiff's claim under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

## PARTIES

4. Defendant Argent Mortgage Company is a sub-prime mortgage lender. The company's main offices are in Orange, California, but it does business in this district. Defendant AMC Mortgage Services, Inc. services Argent mortgages and has the right to receive payments thereunder and does business in this district. Defendant Deutsche Bank National Trust Company is the owner of plaintiff's mortgage and also does business in this district.

5. Plaintiff Vernell Ball-Daniel is a resident of Indiana.

## BACKGROUND

6. Plaintiff Vernell Ball-Daniel owns a home in South Bend, Indiana, where she lives with her husband, LaVurne Daniel. Ms. Ball-Daniel works at Memorial Hospital in South Bend as a holistic wellness educator and for the South Bend Heritage Foundation as an arts and education program specialist. Her husband works at Godfrey Marine, making boats.

7. In or about December 2003, Ms. Ball-Daniel decided to refinance the mortgage on her home. Ms. Ball-Daniel spoke repeatedly to Dea Eaton, a mortgage broker with Direct Banc Mortgage in Osceola, Indiana. Ms. Eaton conveyed the impression to plaintiff that Ms. Eaton was working for Ms. Ball-Daniel and was acting in Ms. Ball-Daniel's best interest. In fact, Ms. Eaton and Direct Banc were acting as agents for Argent Mortgage.

8. Ms. Eaton told Ms. Ball-Daniel that she would get her a new mortgage with a fixed interest rate of 7.8% and that in two years Ms. Ball-Daniel would be able to refinance the mortgage with no penalty at a lower interest rate.

9. Defendant Argent Mortgage prepared an adjustable rate note for Ms. Ball-Daniel which provided for a loan of $87,400, with an initial interest rate of 7.5% but which could increase to as high as 13.5%, depending on changes on the LIBOR rate.

10. The closing took place on January 15, 2004. Ms. Ball-Daniel asked Ms. Eaton to confirm that plaintiff was getting a fixed rate mortgage. Ms. Eaton said that Ms. Ball-Daniel was getting a fixed adjustable rate. Ms. Ball-Daniel said that she did not understand. Ms. Eaton said that meant that in two years Ms. Ball-Daniel could refinance and get a better rate. Later, Ms.

2

Eaton showed Ms. Ball-Daniel a piece of paper (the final TILA disclosure) that indicated that Ms. Ball-Daniel would have 359 payments which would all be for $611.12. Ms. Eaton told Ms. Ball-Daniel that this is what her payments would be. Ms. Ball-Daniel understood that her payments would not exceed $611.12 per month but could go down in two years. Pleased with this deal, Ms. Ball-Daniel signed the mortgage papers.

11. In connection with the mortgage, Argent paid Direct Banc Mortgage, Ms. Eaton's employer, a yield spread premium of $874 in exchange for getting Ms. Ball-Daniel to accept a worse mortgage than Ms. Ball-Daniel was qualified to receive.

12. On January 15, 2004, Argent transferred servicing of the Ball-Daniel mortgage to Ameriquest Mortgage Company, which has since become Defendant AMC Mortgage Services, Inc. The loan itself was sold to Defendant Deutsche Bank Trust.

13. In or about January 2006, Ms. Ball-Daniel received notice that her monthly mortgage payments would be increased. Currently, Ms. Ball-Daniel is paying $768 per month on her mortgage, rather than the $611 per month that she was promised at the closing. When Ms. Ball-Daniel complained about the rate increase, she was told that she had an adjustable rate mortgage.

14. Ms. Ball-Daniel has tried to refinance her mortgage but finds she is unable to do so. Argent loaned Ms. Ball-Daniel $87,400 based on an appraisal procured by Ms. Eaton which said that the Ball-Daniel home was worth $95,000. Ms. Ball-Daniel has since learned, from another appraiser, that her home is only worth $63,000, which is considerably less than the amount owed on the mortgage.

## COUNT ONE -- TRUTH IN LENDING ACT

15. Plaintiff incorporates paragraphs one through fourteen above.

16. Argent's disclosures to plaintiff did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

3

## REGULATORY FRAMEWORK

17. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

18. Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

19. Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

20. The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in

4

any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

21. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

22. To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

23. Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the

5

transaction ....

12 C.F.R. § 226.23(a)(1).

24. The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose[]" the consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1)

25. More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (ii) The consumer's right to rescind the transaction.
>
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
> (iv) The effects of rescission, as described in paragraph (d) of this section.
>
> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

26. Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

> When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

27. Subparagraph (d)(2) states:

> Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

6

12 C.F.R. § 226.23(d)(2).

28. The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. The commentary provides:

> The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded. "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.

12 C.F.R. part 226 Supp.1 para. 23(d)(2)-1.

## DEFECTIVE DISCLOSURES

29. Argent's disclosures to plaintiff were defective in a number of respects. First, on the Notice of Right to Cancel forms that were given to plaintiff at the closing, there is no date filled in for the expiration of the rescission period, a violation of 12 C.F.R. § 226.23(b)(1)(v).

30. Second, while plaintiff was shown the final Truth in Lending Act disclosure at the closing, plaintiff was not given a copy to keep.

31. Third, Argent is responsible for the fraud perpetrated by its agent, Ms. Eaton. Because Ms. Eaton falsely assured plaintiff that she was getting a fixed rate mortgage, Argent misled plaintiff as to the existence of a variable interest rate on her loan in violation of 12 C.F.R. § 226.18.

32. Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

33. Argent's rescission and material TILA disclosures were defective. Accordingly, plaintiff sent a rescission notice to defendants Argent and AMC Mortgage Services on October 2,

7

2006, and a rescission notice to defendant Deutsche Bank Trust on November 9, 2006.

34. Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiff's home and paid back to plaintiff any money or property that plaintiff has paid to them in connection with the loan. See 12 C.F.R. § 226.23(d)(2). Defendants have not done either.

35. Defendants' failure to honor the rescission request is a violation of the Truth in Lending Act. Plaintiff is entitled to rescission plus statutory damages and other relief.

## COUNT TWO -- VIOLATION OF INDIANA LAW

36. Plaintiff incorporates paragraphs one through thirty-five above.

37. In connection with trade or commerce, Argent (through its agent, Ms. Eaton) made false and misleading statements to plaintiff intending to induce reliance. More specifically, Argent engaged in a bait and switch by baiting plaintiff into the mortgage transaction by offering a relatively favorable set of terms and then switching to less favorable terms.

38. Argent's false and misleading statements to plaintiff violated plaintiff's rights under Indiana statutory and common law.

39. Argent's false and misleading statements deceived plaintiff and proximately caused her injury.

40. Argent is also vicariously responsible for the other frauds that Ms. Eaton perpetrated on Ms. Ball-Daniel, such as making it appear that Ms. Ball-Daniel's monthly mortgage payments would never exceed $611.12 and making it appear that Ms. Eaton was working for Ms. Ball-Daniel when, in fact, Ms. Eaton was employed by an adverse party.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that the Court grant judgment against defendants as follows:

a. canceling defendants' security interest in plaintiff's home and ordering defendants to provide plaintiff with the money to which plaintiff is entitled to under 12 C.F.R. § 226.23(d)(2);

8

b. awarding plaintiff actual damages proximately caused by defendants' failure to comply with 12 C.F.R. § 226.23(d)(2);

c. awarding appropriate statutory damages;

d. ordering defendants to pay costs, penalties, and attorneys fees;

e. awarding plaintiff actual and punitive damages against defendant Argent;

f. granting such other relief as the Court deems just and proper.

Respectfully submitted by:

_____
Counsel for the Plaintiff

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 960-1802