# EXHIBIT 2

FILED

NOV 3 0 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| PATRICIA and DONALD COOPER ) | |
| ) | No. |
| Plaintiffs, ) | |
| ) | **06CV6604** |
| vs. ) | **JUDGE MANNING** |
| ) | **MAG. JUDGE ASHMAN** |
| AMERIQUEST MORTGAGE COMPANY, ) | |
| AMC MORTGAGE SERVICES, INC. ) | |
| and DEUTSCHE BANK NATIONAL TRUST ) | |
| COMPANY, ) | JURY TRIAL DEMAND |
| ) | |
| Defendants. ) | |

## COMPLAINT

### INTRODUCTION

1. Plaintiffs Patricia and Donald Cooper charge defendants with violation of the Truth in Lending Act through failure to honor a valid rescission request in violation of 15 U.S.C. § 1635. Plaintiffs also charge defendant Ameriquest with violation of Ohio law.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claim under the Truth in Lending Act arises under federal law. This Court has supplemental jurisdiction over plaintiffs' claim under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

## PARTIES

4. Defendant Ameriquest Mortgage Company is a leading sub-prime mortgage lender. The company's main offices are in Orange, California, but it does business in this district. Defendant AMC Mortgage Services, Inc. services Ameriquest mortgages and has the right to receive payments thereunder and does business in this district. Defendant Deutsche Bank National Trust Company is the owner of plaintiffs' mortgage and also does business in this district.

5. Plaintiffs Patricia and Donald Cooper are residents of Ohio.

## BACKGROUND

6. Plaintiffs Patricia and Donald Cooper own a home in Perrysburg, Ohio. Patricia works in the machine repair department of a factory that makes glassware. Her husband, Donald, is retired.

7. In early 2005, the Coopers decided to refinance the mortgage on their home in order to raise money to pay off some debts. The Coopers got in touch with Ameriquest. Patricia Cooper spoke repeatedly on the telephone to a man who worked for Ameriquest. The Ameriquest representative said that Ameriquest would loan the Coopers 90% of the appraised value of the house. Patricia told the Ameriquest representative that she wanted a 30 year fixed rate mortgage with no prepayment penalty. The Ameriquest representative said that would not be a problem and the loan would be set up that way. The Ameriquest representative told Patricia that the interest rate on the loan would be 8.05% and that the house payments would be around $1,725 per month. The Ameriquest representative also told the Coopers to stop paying certain other creditors (Citicard and Citifinancial) and that the Coopers could probably refinance in a year at a lower rate.

8. Ameriquest commissioned an appraisal of the Coopers' home and later prepared an adjustable rate note for $234,000. The loan had an initial rate of 8.050% but the rate could increase to as much as 14.050% depending on changes in the LIBOR rate. The Coopers were

2

assessed $12,472.30 in fees and points to get this loan.

9. The closing took place in the evening of March 25, 2005 at the Coopers' home. A notary came with the closing papers. Mrs. Cooper asked the notary to confirm that this was a 30 year fixed mortgage with no prepayment penalty. The notary said yes. The Coopers believed the notary and signed the loan papers without reading them carefully.

10. The Coopers have since learned that, in fact, they have an adjustable rate mortgage. They have tried to refinance the mortgage but have not been able to do so. The problem is that the value of the Coopers' home is only $210,000, according to a recent independent appraisal, which is less than the amount of money that the Coopers owe to Ameriquest.

## COUNT ONE -- TRUTH IN LENDING ACT

11. Plaintiffs incorporate paragraphs one through ten above.

12. Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

## REGULATORY FRAMEWORK

13. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

14. Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual

3

percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

15. Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

16. The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

17. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the

4

creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

18. To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

19. Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. § 226.23(a)(1).

20. The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose[]" the consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1)

21. More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> > (i) The retention or acquisition of a security interest in the consumer's principal dwelling.

5

>    (ii) The consumer's right to rescind the transaction.
>
>    (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
>    (iv) The effects of rescission, as described in paragraph (d) of this section.
>
>    (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

    22.    Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

>    When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

    23.    Subparagraph (d)(2) states:

>    Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. § 226.23(d)(2).

    24.    The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. The commentary provides:

>    The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded. "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.

12 C.F.R. part 226 Supp.I para. 23(d)(2)-1.

6

## DEFECTIVE DISCLOSURES

25. Ameriquest's rescission disclosures to plaintiffs were defective in a number of respects. First, the Notice of Right to Cancel forms that were left with the Coopers at the closing did not list the date that the rescission period expired, in violation of 12 C.F.R. § 226.23(b)(1)(v). Also, the Notice of Right to Cancel forms were not delivered to the Coopers at the closing but rather were mailed to them about a week later, in violation of 12 C.F.R. § 226.23(b)(1).

26. Second, by falsely assuring plaintiffs that they were getting a fixed rate mortgage, Ameriquest misled plaintiffs as to the existence of a variable interest rate on their loan in violation of 12 C.F.R. § 226.18.

27. Third, Ameriquest gave the Coopers a document dated February 9, 2005, entitled **APPLICATION DISCLOSURE**, which stated that their $300 "Appraisal/Property Valuation Fee Deposit" was "refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." Ameriquest gave the Coopers another document dated March 25, 2005 which stated that their $295 "Appraisal/Property Valuation Fee Deposit" was "refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." These statements contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

28. Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest

7

in the property, or upon sale of the property, whichever occurs first").

29. Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs sent a rescission notice to defendants on October 2, 2006.

30. Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiffs' home and paid back to plaintiffs any money or property that plaintiffs have paid to them in connection with the loan. See 12 C.F.R. § 226.23(d)(2). Defendants have not done either.

31. Defendants' failure to honor the rescission request is a violation of the Truth in Lending Act. Plaintiffs are entitled to rescission plus statutory damages and other relief.

## COUNT TWO -- VIOLATION OF OHIO LAW

32. Plaintiffs incorporate paragraphs one through thirty-one above.

33. In connection with trade or commerce, Ameriquest made false and misleading statements to plaintiffs intending to induce reliance. More specifically, Ameriquest engaged in a bait and switch by baiting plaintiffs into the mortgage transaction by offering a relatively favorable set of terms and then switching to less favorable terms.

34. Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under Ohio statutory and common law.

35. Ameriquest's false and misleading statements deceived plaintiffs and proximately caused their injury.

36. Ameriquest also defrauded plaintiffs by telling them that they were getting a 30 year fixed mortgage when, in fact, plaintiffs were getting an adjustable rate mortgage.

37. Furthermore, Ameriquest defrauded plaintiffs by telling them that the loan amount would be for 90% of the appraised value of the home and that plaintiffs would be able to refinance at a lower rate in a year when, in fact, the loan amount was for more than the value of the home which meant that the Coopers could not refinance away from Ameriquest. This misrepresentation was deliberate and part of a pattern and practice on the part of Ameriquest to

8

make loans for more than the mortgaged property is really worth, which practice has the effect of trapping customers into Ameriquest mortgages.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a. canceling defendants' security interest in plaintiffs' home and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

b. awarding plaintiffs actual damages proximately caused by defendants' failure to comply with 12 C.F.R. § 226.23(d)(2);

c. awarding appropriate statutory damages;

d. ordering defendants to pay costs, penalties, and attorneys fees;

e. awarding plaintiffs actual and punitive damages;

f. granting such other relief as the Court deems just and proper.

Respectfully submitted by:

_____
Counsel for the Plaintiffs

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 960-1802

9