# EXHIBIT 11

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENNIS and RITA O'NEIL, ) | |
| ) | No. 06-cv-6375 |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Judge Gottschall |
| ) | |
| ARGENT MORTGAGE COMPANY, LLC, ) | |
| AMERIQUEST MORTGAGE COMPANY, and ) | Magistrate Judge Keys |
| DEUTSCHE BANK NATIONAL TRUST ) | |
| COMPANY, ) | |
| ) | JURY TRIAL DEMAND |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT

### INTRODUCTION

1. Plaintiffs Dennis and Rita O'Neil charge defendants with violation of the Truth in Lending Act through failure to honor a valid rescission request in violation of 15 U.S.C. § 1635. Plaintiffs also charge defendant Argent with violation of Massachusetts law

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claim under the Truth in Lending Act arises under federal law. This Court has supplemental jurisdiction over plaintiff's claim under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

## PARTIES

4. Defendant Argent Mortgage Company, LLC is a sub-prime mortgage lender. The company's main offices are in Orange, California, but it does business in this district. Defendant Ameriquest Mortgage Company, Inc. was the servicer of plaintiffs' mortgage, and also does business in this district. Defendant Deutsche Bank National Trust Company was the owner of plaintiffs' mortgage and also does business in this district

5. Plaintiffs Dennis and Rita O'Neil are residents of Massachusetts.

## TRUTH IN LENDING VIOLATION

6. Plaintiffs Dennis and Rita O'Neil own a home in Centerville, Massachusetts. Mr. O'Neil is a retired corrections officer. Mrs. O'Neil is collecting social security disability.

7. In or about August 2003, the O'Neils decided to refinance the mortgage on their home. Mr. O'Neil contacted a mortgage broker, Rob Colin of BLS Funding. Mr. Colin recommended that the O'Neils refinance with Argent Mortgage. Plaintiffs, believing that Mr. Colin was representing them and acting in their best interests, followed Mr. Colin's advice.

8. Plaintiffs dealt with Argent through Mr. Colin. Mr. Colin gave plaintiffs the impression that he was working for them and would try to get them the lowest possible interest rate. Plaintiffs trusted him. Mr. Colin said that he would get plaintiffs an adjustable rate loan with an interest rate of 5.75%. Plaintiffs said they wanted a fixed rate mortgage. Mr. Colin said that, in that case, he would get plaintiffs a fixed rate loan with an interest rate of 6.25% or 6.5%. Later, Mr. Colin came to the O'Neil home and showed plaintiffs a paper showing an interest rate of 7.9%. Plaintiffs said that's not what we talked about on the telephone. Mr. Colin agreed and said he would get the rate down to between 6.5% and 7.0%. Mr. Colin also told plaintiffs that the closing costs would be between $5,000 and $6,000 and that there wouldn't be any points or prepayment penalty.

9. Argent prepared documents for an adjustable rate loan of $261,000 with an initial interest rate of 7.9% but which could go as high as 13.9% depending on changes in the LIBOR rate. The loan also provided a 2% loan origination fee to BLS Funding (despite the promise of

2

no points) and a total of $8,203 in points and fees (despite the promise that the closing costs would be between $5,000 and $6,000). In connection with the loan, Argent paid BLS Funding a yield spread premium of $5,220.00 in exchange for getting the O'Neils a worse mortgage than they were qualified to get.

10. The closing took place on November 24, 2003. Plaintiffs noticed that the terms of the deal had changed and protested. The closing agent representing Argent told them that those were the terms. At this point, having invested so much time in negotiating the deal, having said goodbye to their prior mortgage lender and having told other creditors that they would be paid, the O'Neils felt psychologically committed to the deal, so they signed the papers.

11. At the closing, the closing agent neglected to give the O'Neils properly completed Notice of Right to Cancel forms. On November 28, 2003, Argent sent a letter to the O'Neils which contained four original Notice of Right to Cancel forms. According to the forms, the rescission period expired on November 28, 2003, the same day that they were mailed to plaintiffs.

## COUNT ONE -- TRUTH IN LENDING ACT

12. Plaintiff incorporates paragraphs one through eleven above.

13. Argent's disclosures to plaintiff did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

## REGULATORY FRAMEWORK

14. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

15. Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form

3

that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

16. Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

17. The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

18. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not

4

> liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

19. To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

20. Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. § 226.23(a)(1).

21. The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose[]" the consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1)

22. More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

5

> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (ii) The consumer's right to rescind the transaction.
>
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
> (iv) The effects of rescission, as described in paragraph (d) of this section.
>
> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

  23. Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

> When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

  24. Subparagraph (d)(2) states:

> Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. § 226.23(d)(2).

**DEFECTIVE DISCLOSURES**

  25. Argent's disclosures to plaintiff were defective in a number of respects. First, on the Notice of Right to Cancel forms that were given to plaintiffs at the closing, there is no date filled in for the expiration of the rescission period, a violation of 12 C.F.R. § 226.23(b)(1)(v).

  26. Second, the Notice of Right to Cancel forms that were mailed to plaintiffs on November 28, 2003 said that the rescission period expired on November 28, 2003. This date was incorrect given that the disclosure documents were not mailed until November 28, 2003 and were received until sometime later. This misrepresentation also violated 12 C.F.R.

6

§ 226.23(b)(1)(v).

27. Third, Argent is responsible for the fraud perpetrated by its agent, Mr. Colin. Because Mr. Colin falsely assured plaintiffs that they were getting a fixed rate mortgage with no points and an interest rate between 6.5% and 7.0%, Argent misled plaintiff as to the existence of a variable interest rate on her loan in violation of 12 C.F.R. § 226.18.

28. Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

29. Argent's rescission and material TILA disclosures were defective. Accordingly, plaintiffs sent rescission notices to defendants on November 21, 2006.

30. Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiffs' home and paid back to plaintiffs any money or property that plaintiffs paid to them in connection with the loan. See 12 C.F.R. § 226.23(d)(2). Defendants have not done either.

31. Defendants' failure to honor the rescission request is a violation of the Truth in Lending Act. Plaintiffs are entitled to rescission plus statutory damages and other relief.

### COUNT TWO -- VIOLATION OF MASSACHUSETTS LAW

32. Plaintiff incorporates paragraphs one through thirty-one above.

33. In connection with trade or commerce, Argent (through its agent, Ms. Colin) made false and misleading statements to plaintiffs intending to induce reliance. More specifically, Argent engaged in a bait and switch by baiting plaintiffs into the mortgage transaction by offering a relatively favorable set of terms and then switching to less favorable terms.

34. Argent's false and misleading statements to plaintiffs violated plaintiffs' rights under Massachusetts statutory and common law.

7

35.     Argent's false and misleading statements deceived plaintiffs and proximately caused them injury.

36.     Argent is also vicariously responsible for the other frauds that Mr. Colin perpetrated on plaintiffs, such as making it appear that Mr. Colin was working for plaintiffs when, in fact, Mr. Colin was employed by an adverse party.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a.     canceling defendants' security interest in plaintiffs' home and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

b.     awarding plaintiffs actual damages proximately caused by defendants' failure to comply with 12 C.F.R. § 226.23(d)(2);

c.     awarding appropriate statutory damages;

d.     ordering defendants to pay costs, penalties, and attorneys fees;

e.     awarding plaintiffs actual and punitive damages against defendant Argent;

f.     granting such other relief as the Court deems just and proper.


Respectfully submitted by:

s/ Anthony P. Valach, Jr
Counsel for the Plaintiff

THE LAW OFFICES OF DANIEL HARRIS
Anthony Valach
Daniel Harris
150 N. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: (312) 960-1802
Facsimile: (312) 960-1936

8