FILED

DEC - 5 2006

DEC 5 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIANNE FREEBERG, )
OSCAR H. FREEBERG and )
CECLIA M. ROWAN, )

Plaintiffs,

v.

AMERIQUEST MORTGAGE COMPANY, )
AMERIQUEST MORTGAGE SECURITIES, )
INC., AMC MORTGAGE SERVICES, )
INC., HSBC MORTGAGE SERVICES, INC, )
LITTON LOAN SERVICING, LP )
and DOES 1-10, )
)
Defendants. )

**06CV6717**
**JUDGE ST EVE**
**MAGISTRATE JUDGE COLE**

**JURY DEMANDED**

## COMPLAINT

### INTRODUCTION

1.    Plaintiffs Marianne Freeberg, Oscar H. Freeberg and Cecilia M. Rowan bring this action against a "subprime" mortgage lender and its affiliates to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, and to recover damages under state law.

### JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 1367 (supplemental jurisdiction), and 15 U.S.C. §1640 (TILA).  Defendants transact business in the District and are deemed to reside

1

here.

## PARTIES

3.      Plaintiffs Marianne Freeberg and Oscar H. Freeberg ("the Freebergs") own and reside in a single family home at 455 Buffalo Street, Calumet City, IL 60409.

4.      Plaintiff Cecilia M. Rowan ("Cecilia") owns and resides in a double-wide trailer at 17085 Seneca Dr., Howard City, MI 49329.

5.      Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Illinois and Michigan. Its registered agents and offices are National Registered Agents, Inc., 200 W. Adams, Chicago, IL 60606 and National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823, respectively.

6.      Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

7.      Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

8.      Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

9.      During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

10.     Defendant AMC Mortgage Services, Inc. is a foreign corporation which

2

does business in Illinois and Michigan. Its registered agents and offices are National Registered Agents, Inc., 200 W. Adams, Chicago, IL 60606 and National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823, respectively.

11. Defendant AMC Mortgage Services, Inc., an affiliate of Ameriquest Mortgage Company, services loans originated by Ameriquest Mortgage Company, and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

12. Defendant Ameriquest Mortgage Securities, Inc., an affiliate of Ameriquest Mortgage Company, is a foreign corporation which transacts business in Illinois. It holds legal title to loans originated by Ameriquest Mortgage Company. It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

13. Defendant HSBC Mortgage Services, Inc., is a foreign corporation which transacts business in Illinois. Its registered agents and offices are CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL, 60604.

14. Defendant HSBC Mortgage Services services some loans originated by Ameriquest Mortgage Company and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

15. Defendant Litton Loan Servicing, LP, is a foreign corporation which transacts business in Michigan. Its registered agent and office are CSC-Lawyers Incorporating Service located at 601 Abbott Road, East Lansing, MI 48823.

16. Defendant Litton Loan Servicing, LP, services some loans originated by Ameriquest Mortgage Company and claims an interest in such loans, including the right to

3

receive payments thereunder. It is joined as a necessary party.

## FACTS RELATING TO PLAINTIFFS MARIANNE AND OSCAR FREEBERG

17.    Marianne and Oscar Freeberg are seventy-two years-old and seventy years-old, respectively. They are both retired.

18.    In approximately July, 2004, the Freebergs began receiving two to three unsolicited advertisement mailers from Ameriquest every week. During this time period, they also received approximately six cold calls from Ameriquest salespeople inviting them to apply for a loan. Based on these frequent solicitations and Ameriquest's "American Dream" television commercials, Marianne and Oscar Freeberg were convinced that Ameriquest was a reputable company and they decided to apply for a loan with Ameriquest.

19.    Shortly thereafter, the Freebergs applied for a mortgage with Ameriquest Mortgage Company.

20.    Marianne and Oscar Freeberg needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

21.    On or about July 10, 2004, a male Ameriquest employee came to the Freebergs' home to collect information. Marianne told Ameriquest that Oscar's monthly Social Security check was for $848.00, that her monthly Social Security check was for $647.00 and that her monthly pension from K-Mart was $63.00. Marianne also told Ameriquest that she and her husband were retired. Ameriquest did not request any check stubs or other documentation of the Freebergs' monthly income.

22.    Ameriquest then fraudulently reported that Marianne was employed by "Performance Development" and that the Freeburgs' monthly income was $3,206.35, more than

4

double the $1,558.00 that Marianne had reported. Exhibit A.

      23.    During the application process, Marianne Freeberg told Ameriquest that the Freebergs had $168.00 in their checking account and that they did not have a savings account. Ameriquest then fraudulently reported that the Freebergs had $2,000.00 in liquid assets. Exhibit A.

      24.    Over the phone, Ameriquest quoted the Freebergs a 7.9% interest rate. Exhibit B.

      25.    The Freebergs' loan was closed on September 13, 2004.

      26.    At the closing, an Ameriquest employee came to the Freebergs' home and told them that he was in a hurry and had to get to another appointment. He rushed them through the paperwork and told them where to sign, telling them that there was not time for them to read the loan documents.

      27.    The Freebergs did not realize that the interest rate had been raised from 7.9% to 9.2%. Exhibit B. They also did not see that Ameriquest had falsified their monthly income and liquid assets on the loan application. Exhibit A.

      28.    Based on the fraudulent monthly income, employment information and liquid assets that Ameriquest reported on the Freebergs' loan application, Ameriquest represented that the Freebergs qualified for a $107,375.00 loan.

      29.    The following are documents relating to the Freebergs' loan:

        a.    A Uniform Residential Loan Application, Exhibit A;

        b.    A Borrower's Acknowledgment of Final Loan Terms, Exhibit B;

        c.    A note, Exhibit C;

d.      A mortgage, Exhibit D;

e.      A final Truth in Lending Disclosure Statement, Exhibit E;

f.      A three-day notice of right to cancel required by the Federal
Reserve Board, Exhibit F. Only one copy was delivered instead of the four required, and it was
not completed;

g.      A purported "one week" notice of right to cancel used solely by
Ameriquest and related companies, Exhibit G;

h.      A document entitled "Understanding your options regarding
interest rates and discount points," Exhibit H;

i.      A document entitled "items to be paid off from loan proceeds,"
Exhibit I; and

j.      Closing Instructions, Exhibit J.

30.      The Freebergs were charged a $1,409.83 "loan discount fee," Exhibit J,
line 802.

31.      Ameriquest undertook and represented, in the document attached as
Exhibit H and delivered to the Freebergs at closing, that the payment of a "loan discount fee"
would reduce the Freebergs' interest rate.

32.      However, the Freebergs did not receive a discounted rate, as shown by the
document entitled "Borrower's Acknowledgment of Final Loan Terms," Exhibit B, delivered to
them at closing.

33.      Plaintiffs were later directed to make payments to AMC Mortgage
Services, Inc., and then to HSBC Mortgage Services, Inc.

6

34.     On information and belief, Ameriquest Mortgage Securities, Inc., owns the Freebergs' loan.

35.     In the event Ameriquest Mortgage Securities, Inc., does not own the Freebergs' loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## FACTS RELATING TO PLAINTIFF CECILIA ROWAN

36.     Cecilia Rowan has epilepsy and has been totally disabled since 1988.

37.     Prior to March 31, 2005, Cecilia Rowan called Ameriquest Mortgage Company to apply for a loan.

38.     Cecilia needed and used the loan for personal, family or household purposes, namely, consolidating the mortgage on her double-wide trailer and other debts incurred for such purposes.

39.     Approximately one week before closing, an Ameriquest employee named Matt Hanson spoke with Cecilia and completed the loan application over the phone.  Exhibit L.

40.     During the over-the-phone application process, Cecilia told Mr. Hanson that she receives $832.00 per month from Social Security and $180.97 per month from a pension.

41.     Ameriquest nearly tripled this figure, falsely reporting on the pre-printed final loan application it prepared that Cecilia's monthly income was $2,700.52.  Exhibit L.

42.     Cecilia also told Mr. Hanson that she has been totally disabled because of epilepsy since 1988. Ameriquest falsely reported on the application that Cecilia has been retired for only 2.083 years.  Exhibit L.

43.     During the application process, Cecilia told Mr. Hanson that her double-

7

wide trailer and property had an assessed value of $28,679.00. Exhibit W. Ameriquest more than tripled the appraised value, falsely reporting on the loan application it prepared that Cecilia's trailer and property were worth $90,000.00. Exhibit L.

44.     During the phone conversation, Mr. Hanson told Cecilia that she would not be charged an application fee. Cecilia was then charged a $360.00 application fee, taken from the loan proceeds. Exhibit V, line 806.

45.     Cecilia's loan was closed on March 31, 2005.

46.     At the closing, an Ameriquest employee came to Cecilia's home and told her that he was extremely busy. Ameriquest's agent told Cecilia that she needed to sign quickly so that he could get to his next appointment.

47.     Based on Ameriquest's fabricated value of the trailer and the fraudulent employment information it reported on Cecilia's loan application, Ameriquest represented that Cecilia qualified for a $70,550.00 loan. Exhibit M. Using the assessed value of the trailer that Cecilia reported to Ameriquest, the mortgage has a 246% loan-to-value ratio!

48.     Ameriquest did not give Cecilia copies of the loan documents at closing. Instead, Ameriquest mailed the loan documents on April 17, 2005, more than two weeks after the closing of the loan.

49.     When Cecilia received her loan documents in the mail after April 17, 2005, she discovered that a) the value of her home had been tripled on the loan application (Exhibit L); and b) she had been charged a $360.00 application fee, even though she had been promised she would not be charged an application fee (Exhibit V). (She did not notice that her employment information had been falsified at that time.) Cecilia called Mr. Hanson to inform

8

him of the errors. Ameriquest told Cecilia that Mr. Hanson no longer worked at Ameriquest and that the loan documents were correct.

      50.    The following are documents relating to Cecilia Rowan's loan:

      a.    A Uniform Residential Loan Application, Exhibit L;

      b.    A Borrower's Acknowledgment of Final Loan Terms, Exhibit M;

      c.    A note, Exhibit N;

      d.    A mortgage, Exhibit O;

      e.    A final Truth in Lending Disclosure Statement, Exhibit P;

      f.    A three-day notice of right to cancel required by the Federal Reserve Board, Exhibit Q. Both copies were incomplete, and they were mailed to Ms. Rowan more than two weeks after the closing of the loan;

      g.    A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, Exhibit R;

      h.    A document entitled "Understanding your options regarding interest rates and discount points," Exhibit S;

      i.    A document entitled "items to be paid off from loan proceeds," Exhibit T;

      j.    Closing Instructions, Exhibit U;

      k.    A Settlement Statement, Exhibit V; and

      l.    A document which lists the assessed value, Exhibit W.

      51.    Cecilia was charged a $2,615.99 "loan discount," Exhibit V, line 802.

      52.    Ameriquest undertook and represented, in the document attached as

9

Exhibit S and delivered to Cecilia at the closing, that the payment of a "loan discount" would reduce Cecilia's interest rate.

53. However, Cecilia did not receive a discounted rate, as shown by the document entitled "Borrower's Acknowledgment of Final Loan Terms," Exhibit M..

54. Cecilia was later directed to make payments to AMC Mortgage Services, Inc., and then to Litton Loan Servicing, LP.

55. On information and belief, Litton Loan Servicing, LP, owns Cecilia's loan.

56. In the event Litton Loan Servicing, LP, does not own Cecilia's loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 6-10.

## COUNT I – TRUTH IN LENDING ACT

57. Plaintiffs Marianne and Oscar Freeberg incorporate paragraphs 1-35.

58. This claim is against Ameriquest Mortgage Company, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., and HSBC Mortgage Services, Inc.

## RIGHT TO RESCIND

59. Because the transaction was secured by the Freebergs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

(a) **Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security**

interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

11

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

## GROUNDS FOR RESCISSION

60.     In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the Freebergs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

61.     Ameriquest did not deliver to the Freebergs a total of four completed notices of the right to cancel on the Federal Reserve Board form. The Freebergs received only one copy, uncompleted.

62.     The delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

63.     Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

64.     Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

65.     Notice of rescission has been given to defendants. A copy is attached as Exhibit K.

12

66. The loan has not been rescinded.

67. Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

68. 15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs Marianne and Oscar Freeberg and against defendants for:

a. A judgment voiding the Freebergs' mortgage, capable of recordation in the public records, and binding on defendants;

b. A judgment indicating what, if anything, plaintiffs owe defendants, taking into account the false income and employment information.;

c. Statutory damages for the underlying disclosure violation;

d. If appropriate, statutory damages for failure to rescind;

e. Attorney's fees, litigation expenses and costs; and

f. Such other or further relief as the Court deems appropriate.

## COUNT II – TRUTH IN LENDING ACT

69. Plaintiff Cecilia Rowan incorporates paragraphs 1-16, 36-56 and 59. This claim is against Ameriquest Mortgage Company, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., and Litton Loan Servicing, LP.

13

70.     Because the transaction was secured by Cecilia's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.

## GROUNDS FOR RESCISSION

71.     In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the Cecilia's right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, or the required financial disclosures, in violation of 15 U.S.C. §1637 and 12 C.F.R. §226.18, for (without limitation) the reasons stated below.

72.     All of the Federal Reserve Board notice of right to cancel forms are incomplete.

73.     The financial disclosure and notices of right to cancel were mailed to Cecilia after the closing.

74.     The delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

75.     Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

76.     Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

77.     Notice of rescission has been given to defendants. A copy is attached as

14

Exhibit X.

78. Ms. Rowan's loan has not been rescinded.

79. Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

80. 15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff Cecilia Rowan and against defendant for:

a. A judgment voiding Cecilia Rowan's mortgage, capable of recordation in the public records, and binding on defendants;

b. A judgment indicating what, if anything, plaintiff owes defendants, taking into account the false appraisal and income information.

c. Statutory damages for the underlying disclosure violation;

d. If appropriate, statutory damages for failure to rescind;

e. Attorney's fees, litigation expenses and costs.

f. Such other or further relief as the Court deems appropriate.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

81. Plaintiffs Marianne and Oscar Freeberg incorporate paragraphs 1-35.

This claim is against Ameriquest Mortgage Company.

82.     Defendant Ameriquest Mortgage Company engaged in unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by:

a.     Fraudulently inflating the Freebergs' monthly income, employment information and liquid assets in order to represent that the Freebergs qualified for a larger loan amount.

b.     Engaging in "bait and switch" practices, by promising a 7.9% interest rate after acquiring sufficient financial information to underwrite the loan, and then switching the Freebergs to a 9.2% interest rate immediately prior to closing (Exhibit B);

c.     Charging a "loan discount" fee, representing (Exhibit H) that the fee was to purchase a reduction in the interest rate, and then increasing rather than decreasing plaintiffs' rate.

83.     Ameriquest engaged in such practices in the course of trade and commerce.

84.     Ameriquest engaged in such practices for the purpose of inducing reliance on the part of borrowers, by entering into the disadvantageous transaction.

85.     Plaintiffs did in fact rely on Ameriquest's representations.

86.     Plaintiffs were damaged as a result.

87.     Ameriquest's conduct was intentionally deceptive and malicious, warranting substantial punitive damages.

WHEREFORE, plaintiffs Marianne and Oscar Freeberg request that the Court

16

enter judgment in favor of plaintiffs and against defendant Ameriquest Mortgage Company for the following relief:

    a.    Compensatory and punitive damages;

    b.    Attorney's fees, litigation expenses and costs; and

    c.    Such other or further relief as the Court deems appropriate.

## COUNT IV – MICHIGAN MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

88.    Plaintiff Cecilia Rowan incorporates paragraphs 1-16 and 36-56.  This claim is against Ameriquest Mortgage Company.

89.    Ameriquest engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by:

    a.    Fraudulently inflating Cecilia's monthly income, falsifying Cecilia's employment information and inflating the value of Cecilia's trailer in order to represent that Cecilia qualified for a larger loan amount (Exhibit L);

    b.    Engaging in "bait and switch" practices, by promising Cecilia that she would not be charged an application fee and then charging a $360.00 application fee (Exhibit V); and

    c.    Charging a "loan discount" fee, representing (Exhibit S) that the fee was to purchase a reduction in the interest rate and then not decreasing the interest rate.

90.    Cecilia was induced to transact with Ameriquest by means of these misrepresentations.

91.    Defendant Ameriquest made the representations in the course of trade and

commerce.

92.     Defendant Ameriquest made the representations for the purpose of inducing reliance, in the form of Cecilia borrowing a higher principal.

93.     Cecilia was injured by Ameriquest's misrepresentations. She was induced to agree to a mortgage with a 246% loan-to-value ratio. Consequently, her options for refinancing with reputable mortgage companies have been severely limited by Ameriquest's actions. Ameriquest has effectively trapped Cecilia in her current mortgage.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against Ameriquest for:

    a.     A declaratory judgment, MCL §445.1681(1)(a);

    b.     Injunctive relief, MCL §445.1681(1)(b);

    c.     Appropriate damages, MCL §445.1681(1)(c);

    d.     Attorney's fees, litigation expenses and costs of suit;

    e.     Such other and further relief as the Court deems proper.

### COUNT V – COMMON LAW FRAUD

94.     Plaintiffs incorporate paragraphs 1-56. This claim is against Ameriquest.

95.     On September 13, 2004, Ameriquest represented to the Freebergs that, based upon their monthly income, employment information and liquid assets, they qualified for a $107,375.00 loan.

96.     On March 31, 2005, Ameriquest represented to Cecilia Rowan that, based upon her monthly income, employment information and the value of her trailer, she qualified for a $70,550.00 loan.

18

97.     These representations were material to the terms of Ameriquest's loans to plaintiffs.

98.     Ameriquest's representations to plaintiffs that they qualified for the loans were false because they were based upon Ameriquest's falsification of material facts on the plaintiffs' loan applications. Exhibit A and Exhibit L.

99.     Defendant Ameriquest made these representations intentionally, with knowledge of their falsity, for the purpose of inducing the plaintiffs to rely on them.

100.    Defendant's representation that the plaintiffs qualified for the loans caused the plaintiffs to rely on the misrepresentations to their detriment. The plaintiffs now owe on loans for which they never should have qualified and are struggling to afford the monthly payments from their modest fixed incomes. Plaintiffs are threatened with the prospect of losing their homes.

101.    Plaintiffs' reliance was justifiable.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant Ameriquest for:

a.      Actual and compensatory damages;

b.      Punitive damages; and

c.      Such other or further relief as the Court deems appropriate.

## COUNT VI – BREACH OF CONTRACT

102.    Plaintiffs Marianne Freeberg, Oscar Freeberg and Cecilia Rowan incorporate paragraphs 1-56. This claim is against Ameriquest.

103.    Defendant Ameriquest contracted and undertook to provide a discounted

19

interest rate if plaintiffs paid a loan discount fee.

104.    Plaintiffs paid the fee but did not receive a discounted rate.

105.    Ameriquest thereby breached its agreements with the Freebergs and with

Cecilia Rowan.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of

plaintiffs and against defendant for:

a.    Appropriate damages;

b.    Costs; and

c.    Such other or further relief as the Court deems appropriate.


_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Michelle R. Teggelaar
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)


## JURY DEMAND

Plaintiffs demand trial by jury.

20

_____

Daniel A. Edelman

T:\17133\Pleading\Complaint_Pleading.WPD

# EXHIBIT A

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided ( and the appropriate box checked) when [X] the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state a s a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA [X] Conventional ☐ Other (explain): ☐ FHA ☐ USDA/Rural Housing Service | | Agency Case Number | Lender Case Number 0093095602 |
|---|---|---|---|---|

| Amount $107,375.00 | Interest Rate 9.200 % | No. of Months 240 | Amortization Type: | [X] Fixed Rate ☐ Other (explain): ☐ GPM ☐ ARM (type): |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 455 Buffalo St, Calumet City, IL 60409 | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessar y) | Year Built 1950 |
|---|---|

| Purpose of Loan ☐ Purchase ☐ Construction ☐ Other (explain): [X] Refinance ☐ Construction-Permanent | Property will be: [X] Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 1995 | Original Cost $69,000.00 | Amount Existing Liens $ 0.00 | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made Cost: $ 0.00 | |
|---|---|---|---|---|---|

| Title will be held in what Name(s) Oscar H Freeberg and Marianne Freeberg, Husband and Wife, As Joint Tenants | Manner in which Title will be held | Estate will be held in: [X] Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (expla in)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Oscar H Freeberg | Co-Borrower's Name (include Jr. or Sr. if applicable) Marianna Freeberg |
| Social Security Number | 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 | Home Phone (incl. area code) (708) 891-0652 | DOB(MM/DD/YYYY) 04/14/1936 | Yrs. School 12 | Social Security Number 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 | Home Phone (incl. area code) (708) 891-0652 | DOB(MM/DD/YYYY) 08/14/1934 | Yrs. School 12 |

| [X] Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 ages | [X] Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. 0 ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) [X] Own ☐ Rent No. Yrs. 9 455 Buffalo St Calumet City, IL 60409 | Present Address (street, city, state, ZIP) [X] Own ☐ Rent 9 No. Yrs. 455 Buffalo St Calumet City, IL 60409 |
|---|---|

| Mailing Address, If different from Present Address | Mailing Address, If different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. *** SEE ADDENDUM *** | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. *** SEE ADDENDUM *** |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Yrs. on this job 6 | Name & Address of Employer Performance Development | ☐ Self Employed | Yrs. on this job 4 |
| Retired | | Yrs. employed in this line of work/profession 6 | | | Yrs. employed in this line of work/profession 4 |
| Position/Title/Type of Business Retired | Business Phone (incl. area code) | Position/Title/Type of Business house keeping | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

0093095602

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4
VMP-21N (0305)    VMP Mortgage Solutions (800) 521-7291

Initials: _____

| Borrower's cell | Borrower's pager |
|---|---|
| Co-Borrower's cell | Co-Borrower's pager |

0000009309560206059907101

## VI. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income * | $ 0.00 | 1,391.29 | $ 1,391.29 | Rent | $ 0.00 | //////// |
| Overtime | 0.00 | 0.00 | 0.00 | First Mortgage (P&I) | 0.00 | $ 979.94 |
| Bonuses | 0.00 | 0.00 | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | 0.00 | 0.00 | 0.00 | Hazard Insurance | 0.00 | 46.53 |
| Dividends/Interest | 0.00 | 0.00 | 0.00 | Real Estate Taxes | 0.00 | 162.40 |
| Net Rental Income | 0.00 | 0.00 | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 995.07 | 819.79 | 1,815.06 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 995.07 | $ 2,211.28 | $ 3,206.35 | Total | $ 0.00 | $ 1,188.87 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income   Notice:  Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| | *** SEE ADDENDUM *** | $ |
| | | |
| | | |

## VII. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description | | LIABILITIES | | |
| Cash deposit toward purchase held by: | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| | | *** SEE ADDENDUM *** | | |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Vested 401k Retirement - Aggregated | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Checking/Savings - Aggregated | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 2,000.00 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Vested 401k Retirement - Aggregated | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Checking/Savings - Aggregated | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/ number & description) /0 /0 | $ 0.00 0.00 | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 2,000.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 136,300.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | //////// |
| | | Job-Related Expense (child care, union dues, etc.) | $ | //////// |
| | | Total Monthly Payments | $ 266.00 | //////// |
| Total Assets a. | $ 138,300.00 | Net Worth (a minus b) ► $ 131,300.00 | Total Liabilities b. | $ 7,000.00 |

0093095602

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

VMP®-21N (0305)

## VII. SCHEDULE OF REAL ESTATE OWNED

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 455 Buffalo St Calumet City, IL 60409 | SFR | $ 136300 | $ 62267 | $ 0 | $ 871 | $ 133 | $ 0 |
| 455 Buffalo St Calumet City, IL 60409 | | 0 | 8255 | 0 | 137 | 1 | 0 |
| | | | | | | | |
| Totals | $ | 136300 | $ 70522 | $ 0 | $ 1008 | $ 134 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ 0.00 |
| b. | Alterations, improvements, repairs | 0.00 |
| c. | Land (if acquired separately) | 0.00 |
| d. | Refinance (incl. debts to be paid off) | 0.00 |
| e. | Estimated prepaid items | 2,233.66 |
| f. | Estimated closing costs | 1,144.64 |
| g. | PMI, MIP, Funding Fee | 0.00 |
| h. | Discount (if Borrower will pay) | 1,409.83 |
| i. | Total costs (add items a through h) | 4,788.13 |
| j. | Subordinate financing | 0.00 |
| k. | Borrower's closing costs paid by Seller | 0.00 |
| l. | Other Credits (explain) | |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 107,375.00 |
| n. | PMI, MIP, Funding Fee financed | 0.00 |
| o. | Loan amount (add m & n) | 107,375.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -102,586.87 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|---|
| a. | Are there any outstanding judgments against you? | | X | | X |
| b. | Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. | Are you a party to a lawsuit? | | X | | X |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | X |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | X |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. | Is any part of the down payment borrowed? | | X | | X |
| i. | Are you a co-maker or endorser on a note? | | X | | X |
| j. | Are you a U.S. citizen? | X | | X | |
| k. | Are you a permanent resident alien? | | X | | X |
| l. | Do you intend to occupy the property as your primary residence? If "Yes," complete question below. | X | | X | |
| m. | Have you had an ownership interest in a property in the last three years? | X | | X | |
| | (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| | (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of the information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information. | CO-BORROWER ☐ I do not wish to furnish this information. |
|---|---|
| **Ethnicity:** ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | **Ethnicity:** ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| **Race:** ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | **Race:** ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| **Sex:** ☐ Female  ☒ Male | **Sex:** ☐ Female  ☒ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) Michael Gapastione | Name and Address of Interviewer's Employer |
|---|---|---|
| ☐ Face-to-face interview | Interviewer's Signature | 1100, Town and Country Rd |
| ☐ Mail | | Orange, CA 92868 |
| ☒ Telephone | Date | |
| ☐ Internet | Interviewer's Phone Number (incl. area code) (847)413-8380 | |

0093095602



VMP®-21N (0306)

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: Freeberg, Oscar H | Agency Case Number: |
|---|---|---|
| | Co-Borrower: Freeberg, Marianne | Lender Case Number: 0093095602 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

0093095602



-21N (0305)

Page 4 of 4

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

# EXHIBIT B

Ameriquest Mortgage Company
1900 East Golf Road, Suite 1105
Schaumburg, IL 90017

(847)413-8380

## BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

Oscar H Freeberg
Marianne Freeberg

Date: September 13, 2004

Notice: [X] Delivered     [ ] Mailed

Loan Number: 0093095602 - 5798

Description of Credit Request:

455 Buffalo St
Calumet City, IL 60409

[X] 1st Trust Deed/Mortgage    [ ] 2nd Trust Deed/Mortgage

[ ] Other: _____

Property Address: 455 Buffalo St

Calumet City, IL 60409        County of COOK

### TYPE OF TRANSACTION:

[ ] Purchase     [X] Refinance     Other _____

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [X] Fixed Rate Loan   [ ] Adjustable Rate Loan | [X] Fixed Rate Loan   [ ] Adjustable Rate Loan |
| Amount Financed: $ 96,491.73 | Amount Financed: $ 103,731.51   * |
| Settlement Charges: $ 5,575.27 (Includes all Prepaid Finance Charges) | Settlement Charges: $ 4,788.13   * (Includes all Prepaid Finance Charges) |
| Loan Amount: $ 101,392.00 | Loan Amount: $ 107,375.00 |
| Annual Percentage Rate: 8.540 % | Annual Percentage Rate: 9.649 %* |
| Term: 240 | Term: 240 |
| Initial Interest Rate: 7.900 % | Initial Interest Rate: 9.200 % |
| Margin: 0.000 % | Margin: 0.000 % |
| Prepayment Penalty: [ ] YES [X] NO | Prepayment Penalty: [ ] YES [X] NO |

Borrower(s) and Ameriquest Mortgage Company hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgment. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

_____    _____      _____    _____
Borrower Oscar H Freeberg        Date          Borrower Marianne Freeberg        Date

_____    _____      _____    _____
Borrower                  Date          Borrower                  Date

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.



0000000309560204046501 01

STMTCO (Rev 3/99)

# EXHIBIT C

Loan No. 0093095602 - 5798

# FIXED RATE NOTE

September 13, 2004                    Orange                          CA
[Date]                               [City]                          [State]

455 Buffalo St, Calumet City, IL  60409
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$ 107,375.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  **9.200 %**.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
**(A)  Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    **November 1, 2004.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    **October 1, 2024,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

**I will make my monthly payments at:  505 City Parkway West, Suite 100,  Orange, CA 92868**

or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**
My monthly payments will be in the amount of U.S. **$979.94.**

**4. BORROWER'S RIGHT TO PREPAY**
I may repay this Note at any time without a penalty.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A)  Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of  **fifteen**  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C)   Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.


000000930956020200330201

1 of 2

Initials: _____  _____  _____  _____

09/13/2004 11:29:47 AM

200-1UNIV (Rev. 7/03)

Loan No. 0093095602 - 5798

**(D)   No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E)   Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

**9.  WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
   **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.
   If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____(Seal)          _____(Seal)
Borrower:   Oscar H Freeberg                    Borrower:   Marianne Freeberg
SSN:  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                               SSN:  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

_____(Seal)          _____(Seal)
Borrower:                                       Borrower:
SSN:                                            SSN:



09/13/2004 11:29:47 AM

0000009309560203000330202

200-2FIXED (Rev. 7/03)

# EXHIBIT D

Return To:

**Ameriquest Mortgage Company**
**P.O. Box 11507,**
**Santa Ana, CA 92711**

            Ameriquest Mortgage Company
Prepared By:

**Deborah Stevens**
**1900 East Golf Road, Suite**
**1105,Schaumburg, IL 90017**

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "**Security Instrument**" means this document, which is dated **September 13, 2004**                    ,
together with all Riders to this document.
(B) "**Borrower**" is **Oscar H Freeberg and Marianne Freeberg, Husband and Wife, As**
**Joint Tenants**

Borrower is the mortgagor under this Security Instrument.
(C) "**Lender**" is **Ameriquest Mortgage Company**

Lender is a **Corporation**
organized and existing under the laws of **Delaware**

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014  1/01
09/13/2004 11:29:47                                              0093095602 - 5798

AM6IL (0311)
Page 1 of 15                          Initials: _____.
            VMP Mortgage Solutions (800)521-7291

0000009309560020301261501

Lender's address is 1100 Town and Country Road, Suite 200  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **September 13, 2004**
The Note states that Borrower owes Lender **one hundred seven thousand three hundred**
**seventy-five and 00/100**                                              Dollars
(U.S. $ **107,375.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **October 1, 2024**.
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

0093095602-5798

09/13/2004 11:29:47



**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the County                                    [Type of Recording Jurisdiction]
of COOK                                    [Name of Recording Jurisdiction]:

Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: 30-07-215-008-0000                which currently has the address of
455 Buffalo St                                                    [Street]
Calumet City                              [City], Illinois 60409            [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

Initials: _____

AM6IL (0311)                    Page 3 of 15                              Form 3014   1/01
    09/13/2004 11:29:47                              0093095602-5798


0000000930956020901261603

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver,

Initials: _____

AM6IL (0311)                        Page 4 of 15                        Form 3014  1/01

0093095602 -5798

09/13/2004  11:29:47



0000009309560203012615604

Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Initials: _____

AM6IL (0311)    Page 5 of 15    Form 3014   1/01

0093095602-5798

09/13/2004  11:29:47



0000009309560203012616O5

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

   **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

   If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

   All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

   In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

0093095602-5798

09/13/2004 11:29:47



0000009309560203012616606

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: _____

AM6IL (0311)       Page 7 of 15       Form 3014  1/01

0093095602 - 5798

09/13/2004  11:29:47



0000009309560200301261607

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

Initials: _____

AM6IL (0311)                    Page 8 of 15                    Form 3014  1/01

0093095602-5798

09/13/2004  11:29:47



**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any


0093095602-5798

09/13/2004  11:29:47

000000930956020301261609

Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

AM6IL (0311)          Page 10 of 15          Form 3014 1/01

0093095602 - 5798

09/13/2004 11:29:47


0000009309560230301261610

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Initials: _____

AM6IL (0311)                           Page 11 of 15                           Form 3014  1/01

0093095602 - 5798

09/13/2004 11:29:47



00000093095602030126161

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

AM6IL (0311)        Page 12 of 15        Form 3014 1/01

0093095602 - 5798

09/13/2004 11:29:47



0000009309560203012816 12

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

Initials: _____

0093095602 - 5798

09/13/2004  11:29:47



0000009309560203012861613

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          Oscar H Freeberg                -Borrower


_____          _____ (Seal)
                                          Marianne Freeberg               -Borrower


_____ (Seal)   _____ (Seal)
                        -Borrower                                 -Borrower


_____ (Seal)   _____ (Seal)
                        -Borrower                                 -Borrower


_____ (Seal)   _____ (Seal)
                        -Borrower                                 -Borrower

09/13/2004 11:29:47                        0093095602-5798



0000093095602030126164

**STATE OF ILLINOIS,**   **County ss:**

I, _____ a Notary
Public in and for said county and in said state, hereby certify that

_____

_____

_____

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing
instrument, appeared before me this day in person, and acknowledged that he/she/they signed
and delivered the said instrument as his/her/their free and voluntary act, for the uses and
purposes therein set forth.

Given under my hand and official seal of this

My Commission Expires:

_____
Notary Public

\*0093095602\*


0000009309560203001261615

400-15IL (4/02)          Page 15 of 15          0093095602 - 5798

09/13/2004 11:29:47 AM

BORROWER NAME:

LOAN NUMBER:   0093095602 - 5798

LEGAL DESCRIPTION



000000930956020301261616

LGL3LTR (09/03)

# EXHIBIT E

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Ameriquest Mortgage Company
1900 East Golf Road, Suite 1105
Schaumburg, IL 90017
(847) 413-8380

[ ] Preliminary          [X] Final

Broker License:

Borrowers: Oscar H Freeberg    Marianne Freeberg

Type of Loan: FIXED RATE
Date: September 13, 2004

Address:    455 Buffalo St
City/State/Zip:  Calumet City, IL 60409

Loan Number: 0093095602 - 5798

Property:    455 Buffalo St, Calumet City, IL  60409

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.649 % | $ 131,450.72 | $ 103,731.51 | $ 235,182.23 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 239 | $979.94 | 11/01/2004 | | | |
| 1 | $976.57 | 10/01/2024 | | | |

**VARIABLE RATE FEATURE:**
[ ]  Your loan has a variable rate feature.  Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**    You are giving a security interest in the property located at:  455 Buffalo St, Calumet City, IL  60409

**ASSUMPTION:**  Someone buying this property  [X]  cannot assume the remaining balance due under original terms.
[ ]  may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:**   If a payment is late, you will be charged  **5.000%**  of the overdue payment .

**PREPAYMENT:**  If you pay off your loan early, you
[ ] may  [X] will not  have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____     _____
Borrower Oscar H Freeberg              Date

_____     _____
Borrower Marianne Freeberg             Date

_____     _____
Borrower                               Date

_____     _____
Borrower                               Date

TIL1 (Rev. 7/01)

0000009309560203057 50101

ORIGINAL COPY

# EXHIBIT F

## NOTICE OF RIGHT TO CANCEL

LENDER: Ameriquest Mortgage Company

DATE: September 13, 2004
LOAN NO.: 0093095602 - 5798
TYPE: FIXED RATE

BORROWER(S): Oscar H Freeberg     Marianne Freeberg

ADDRESS: 455 Buffalo St
CITY/STATE/ZIP: Calumet City, IL 60409

PROPERTY: 455 Buffalo St
Calumet City, IL 60409

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

   **ENTER DOCUMENT SIGNING DATE**

   or
2. The date you received your Truth in Lending disclosures;
   or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN: FUNDING
PHONE: (714)634-3494
FAX: (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

SIGNATURE _____     DATE _____

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

BORROWER/OWNER Oscar H Freeberg _____ Date     BORROWER/OWNER Marianne Freeberg _____ Date

BORROWER/OWNER _____ Date     BORROWER/OWNER _____ Date

1064-NRC (Rev 01/04)

0000009309560204000050101

### LENDER COPY

09/13/2004 11:29:47 AM

# EXHIBIT G

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0093095602 - 5798          Borrower(s): Oscar H Freeberg
Date: September 13, 2004                                      Marianne Freeberg

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you**. No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

---

Borrower/Owner  Oscar H Freeberg                    Date

---

Borrower/Owner  Marianne Freeberg                   Date

---

Borrower/Owner                                                     Date

---

Borrower/Owner                                                     Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

Borrower/Owner Signature                              Date



00000093095602040422001101

850 (10/00)

09/13/2004 11:29:47 AM

**LENDER COPY**

# EXHIBIT H

**Ameriquest Mortgage Company**

Borrower Name: Oscar H Freeberg

Borrower Name: Marianne Freeberg

Loan Number: 0093095602 - 5798

Property Address: 455 Buffalo St
Calumet City, IL 60409

## UNDERSTANDING YOUR OPTIONS REGARDING
## INTEREST RATES AND DISCOUNT POINTS

The interest rate (or initial interest rate in the case of an adjustable rate mortgage) and discount points on your loan are related to each other. A "discount point" is a one-time fee that equals one (1) percent of the loan amount that lowers the interest rate of the loan. So, on a $100,000 loan, "1" discount point is $1,000. You can obtain a lower interest rate by taking a loan with additional discount points, or have fewer discount points in return for a higher interest rate.

Please ask about our current discount point/rate exchange ratio. The following is intended as an example to illustrate how our discount point/rate exchange works; it may not be reflective of the exchange ratio available at this time.

In this example, to reduce your interest rate by 1 percentage point, you would be charged an additional 1.6 discount points. The following example shows how your options work.



| STARTING LOAN TERMS SCENARIO* | |
| --- | --- |
| **In this example, the base rate is 7% and points are 1.6%, which is $1,600:** | |
| Loan amount: | $100,000 |
| Interest rate: | 7% |
| Discount points: | 1.6% ($1,600) |

| LOWER RATE SCENARIO | | REDUCED DISCOUNT POINT SCENARIO | |
| --- | --- | --- | --- |
| **To receive a lower interest rate, you can take a loan with an additional 1.6 discount points:** | | **To reduce your discount points by 1.6, your interest rate would be 1 percentage point higher:** | |
| Loan amount: | $100,000 | Loan amount: | $100,000 |
| Interest rate: | 6% | Interest rate: | 8% |
| Discount points: | 3.2% ($3,200) | Discount points: | 0% (0) |



    * The terms of your loan may be different from the above example. Other factors influence rate, such as how much income documentation you provide and whether you elect to have a prepayment charge on your loan.

Think carefully about what you want to do and consult a financial advisor. A discount point lowers the interest rate but *not* necessarily the overall cost of the loan. A lower rate may be a good choice if you don't plan to sell or refinance for some time. On the other hand, you might not want to have additional discount points if you think you'll sell or refinance soon. Your account executive can give you more information about the options available to you and the exact terms of your loan.



00000093095602040593010
1

854 (Rev. 09/24/03)

# EXHIBIT I

**ITEMS TO BE PAID OFF FROM LOAN PROCEEDS**

Borrower : Oscar H Freeberg
Marianne Freeberg

Close Date:                    09/13/2004

Loan Number :    0093095602 - 5798

| Payee | | Amount |
|-------|---|--------|
| UNVL/CITI | (W) | $3,303.00 |
| GREAT LAKES CR UN | (W) | $10,273.00 |
| WLS FRG MTGE | (W) | $63,038.95 |
| PROVIDIAN | (W) | $1,034.00 |
| ARROW FINCL | (W) | $5,573.00 |
| WFFINANCIAL | (W) | $8,529.00 |
| CAPITAL ONE FSB | (W) | $1,465.00 |
| CAPITAL 1 BK RECOVERY | (W) | $1,631.00 |
| | | |
| | | |

Total Wire:    $103,196.87

Loan Amount:              107,375.00

Cash/Check from
Borrower:

Borrower Proceeds:        $7,739.92

Estimated Funding Date:      09/20/2004

Title Company Representative Signature          Date          Print:    09/13/2004    11:29AM

595-7UNV (2/2004)



0000009309560202307430707

# EXHIBIT J

# CLOSING INSTRUCTIONS
## ITEMIZATION OF SETTLEMENT CHARGES

| Title Company/Attorney | Title Officer/Attorney | Phone Number | Order Number |
|---|---|---|---|
| TEK TITLE LLC (fka MIDWEST LAND TITLE) | JASON EINHORN | (847)227-5112 | TT04-1271 |

| Borrower(s) | Property Address |
|---|---|
| Oscar H Freeberg  Marianne Freeberg | 455 Buffalo St |
| | Calumet City                IL          60409 |
| | Loan Number:  0093095602 |

FROM: **Ameriquest Mortgage Company - Schaumburg, IL**   Phone No. **(847)413-8380**     Fax **(847)413-8270**
Branch Name                                 Branch Phone No.                    Branch Fax Number

**BELOW IS A LIST OF ALL SETTLEMENT CHARGES AND DISBURSEMENTS APPLICABLE TO THIS LOAN. YOU MUST USE THESE FIGURES TO PREPARE YOUR SETTLEMENT STATEMENT. YOU CANNOT DEVIATE FROM THESE FIGURES WITHOUT PRIOR WRITTEN AUTHORIZATION FROM VICE PRESIDENT OF LOAN OPERATIONS AND/OR ITS DIRECTORS .**

| LINE NO. ON SETTLEMENT STATEMENT | PAYEE | AMOUNT |
|---|---|---|
| 801. Loan origination fee     % to | | |
| 802. Loan discount  1.313  % to  Ameriquest Mortgage Company | | $1,409.83 |
| 803. Apprsl/Prop Val to Reimbursed to Lender | | $200.00 |
| 808. Yield Spread Premium to | | |
| 809. | | |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | | $70.00 |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | | $16.00 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | | $626.00 |
| 813. Admin to Ameriquest Mortgage Company | | $239.00 |
| 814. Doc. Prep. Fee to | | |
| 815. Credit Report Fee to | | |
| 816. Origination Fee     % to | | |
| 817. Application Fee to  Ameriquest Mortgage Company | | $360.00 |
| 818. Underwriting Fee to | | |
| 819. Service Provider Fee to | | |
| 820. Processing Fee  to | | |
| 821. Underwriting Fee to | | |
| 822. Appraisal Fee to | | |
| 901. Interest from  09/20/2004  to  10/01/2004  @  $27.06  per day | | $297.66 |
| 902. Mortgage Insurance premium for          months to | | |
| 903. Hazard Ins prem  to | | $0.00 |
| 904. Flood Ins prem  to | | |
| 1001. Hazard insurance  8  months @ $  46.53  per month | | $372.24 |
| 1002. Mortgage insurance    months @ $    per month | | |
| 1003. Earthquake Ins    months @ $    per month | | |
| 1004. County prop. taxes  1  months @ $  162.40  per month | | $162.40 |
| 1005. Annual assess.    months @ $    per month | | |
| 1006. Flood    months @ $    per month | | |
| 1007. Windstorm Ins    months @ $    per month | | |
| 1008. | | |
| 1101. Settlement or closing fee to  Mehran Mobile | | $300.00 |
| 1102. Abstract or title search to | | |
| 1103. Title examination to  TEK | | $150.00 |
| 1105. Document preparation to | | |
| 1106. Notary fees to | | |
| 1107. Attorney's fees to | | |
| 1108. Title insurance to  TEK | | $202.00 |
| 1109. Lender's coverage | | |
| 1110. Owner's coverage          $ | $202.00 | |
| 1111. Settlement/Disbursement fee to | | |
| 1112. Escrow Fee to TEK | | $200.00 |
| 1201. Recording fees | | $58.00 |
| 1202. City/county tax/stamps | | |
| 1203. State tax/ stamps | | |
| 1204. State specific fee | | |
| 1301. Demand to | | |
| 1302. Pest Inspection to | | |
| 1303. Survey Fee | | |
| 1304. Staff Appraiser Fee | | |
| 1305. Reconveyance Fee to | | |
| 1306. | | |
| 1307. Property Val Fee to Reimbursed to Lender | | $125.00 |
| 1308. Courier Fee | | |

*Any amounts appearing on these lines are prepaid finance charges and cannot be increased or added once loan documents have been prepared unless new loan documents are generated.*



0000009309560203074307 06

_____          _____
Title Company Representative Signature          Date

# EXHIBIT K

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email: edcombs@aol.com
### www.edcombs.com

June 16, 2006

**BY CERTIFIED MAIL**

Ameriquest Mortgage Company
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

AMC Mortgage Services, Inc.
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

Ameriquest Mortgage Securities, Inc.
1100 Town & Country Road, Suite 1100
Orange, CA 92868

Re: Notice of rescission, claim and lien, Marianne Freeberg and Oscar H. Freeberg, 455 Buffalo Street, Calumet City, IL 60409, loan of September 13, 2004

Ladies/Gentlemen:

Each of the above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than Ameriquest Mortgage Company or Ameriquest Mortgage Securities, Inc., please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on June 16, 2006.

_____

Daniel A. Edelman

# EXHIBIT L

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain):  ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number  0113819841 |
|---|---|---|---|

| Amount  $70,550.00 | Interest Rate  7.750 % | No. of Months  360 | Amortization Type: | ☒ Fixed Rate  ☐ GPM | ☐ Other (explain):  ☐ ARM (type): |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 17085 Seneca Dr, Howard City, MI  49329 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built  1994 |
|---|---|

| Purpose of Loan | ☐ Purchase  ☒ Refinance | ☐ Construction  ☐ Construction-Permanent | ☐ Other (explain): | Property will be:  ☐ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made  ☐ to be made |
|---|---|---|---|---|---|
| 1994 | $50,000.00 | $ 63,722.00 | Refi-No Cash Out | Cost: $ 0.00 | |

| Title will be held in what Name(s)  Cecilia M Rowan | Manner in which Title will be held | Estate will be held in:  ☒ Fee Simple  ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable)  Cecilia M Rowan | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number  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 | Home Phone (incl. area code)  (231)937-9358 | DOB(MM/DD/YYYY)  03/01/1949 | Yrs. School  12 | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☒ Married  ☐ Separated  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower)  no. 0  ages | ☐ Married  ☐ Separated  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower)  no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☒ Own  ☐ Rent  10  No. Yrs.  17085 Seneca Dr  Howard City, MI 49329 | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer  retired | ☐ Self Employed | Yrs. on this job  2.083 | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |
|---|---|---|---|---|---|
| | | Yrs. employed in this line of work/profession | | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business  retired | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income  $ | | | Monthly Income  $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income  $ | | | Monthly Income  $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

0113819841

| Borrower's cell | Borrower's pager |
|---|---|
| Co-Borrower's cell | Co-Borrower's pager |

00000113819841060590940\*

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 0.00 | | $ 0.00 | Rent | $ | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 388.00 | 505.43 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 266.00 | 0.00 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 50.00 | 36.42 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 73.75 | 62.94 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 2,700.52 | 0.00 | 2,700.52 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 2,700.52 | $ | 2,700.52 | Total | $ 777.75 | 604.79 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income** Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | | $ 0.00 |
| B | | 2,700.52 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | **LIABILITIES** Name and address of Company | $ Payment/Months | |
| | | 5TH 3RD BK | [266.00] | [20,492.00] |
| List checking and savings accounts below | | 3B FOUNTAIN SQ PL | 78 | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Checking/Savings · Aggregated | | CINCINNATI OH 45202 | | |
| | | Acct. no. B44195818 | | |
| Acct. no. | 7,356.61 | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | HOMEQ | [388.00] | [43,230.00] |
| | | PO BOX 997126 | 112 | |
| | | SACRAMENTO CA 95899 | | |
| | | Acct. no. 6930073036931 | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | RIVERVALLEY | 89.00 | 599.00 |
| | | POB 293 | | |
| | | ADA MI 49301 | | |
| | | Acct. no. 45460072000 | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | FIFTH THIRD BANK/duplicate | [266.00] | [20,492.00] |
| | | FIFTH THIRD CENTER | 78 | |
| | | CINCINNATI OH 45263 | | |
| | | Acct. no. B4419 | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| Stocks & Bonds (Company name/number & description) | $ | Property Taxes | [639.94] | [639.94] |
| | | 1 | | |
| | | Acct. no. | | |
| Life insurance net cash value | $ 0.00 | Name and address of Company | $ Payment/Months | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 7,356.61 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 90,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (Itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 89.00 | |
| Total Assets a. | $ 97,356.61 | Net Worth (a minus b) ▶ $ 96,757.61 | Total Liabilities b. | $ 599.00 |

0113819841



0000011381984106059900402

VMP® -21N (0305)

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type (Prop) | | | tgage ments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|
| 17085 Seneca Dr Howard City, MI 49329 | H | MF | | 654 | 74 | 0 |
| | | | Totals | 654 | 74 | 0 |

List any additional names under which credit has pre...
Alternate Name — Account Number(s): s(s) and account number(s):

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 65,030.00 |
| e. Estimated prepaid items | 149.60 |
| f. Estimated closing costs | 2,646.00 |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 2,622.07 |
| i. Total costs (add items a through h) | 70,447.67 |
| j. Subordinate financing | 0.00 |
| k. Borrower's closing costs paid by Seller | 350.00 |
| l. Other Credits (explain) | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 70,550.00 |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | 70,550.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -452.33 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in the application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable Federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

**BORROWER** ☐ I do not wish to furnish this information.

Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino
Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White
Sex: ☒ Female ☐ Male

**CO-BORROWER** ☐ I do not wish to furnish this information.

Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino
Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White
Sex: ☐ Female ☐ Male

**To be Completed by Interviewer** — This application was taken by:
☐ Face-to-face interview
☐ Mail
☒ Telephone
☐ Internet

Interviewer's Name (print or type): Matthew Hanson
Interviewer's Signature — Date:
Interviewer's Phone Number (incl. area code): (714) 541-9960

Name and Address of Interviewer's Employer: Ameriquest Mortgage Company.
3800 American Blvd. West, Suite 800
Bloomington, MN 55431

# EXHIBIT M

Ameriquest Mortgage Company
3800 American Blvd. West, Suite 800
Bloomington, MN 55431

# BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

Cecilia M Rowan

Date: March 31, 2005

Notice: [X] Delivered    [ ] Mailed

Loan Number: 0113819841 - 7510

Description of Credit Request:

17085 Seneca Dr
Howard City, MI 49329

[X] 1st Trust Deed/Mortgage    [ ] 2nd Trust Deed/Mortgage

[ ] Other:

Property Address: 17085 Seneca Dr

Howard City, MI 49329    County of MONTCALM

## TYPE OF TRANSACTION:

[ ] Purchase    [X] Refinance    [ ] Other

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS |
|---|---|
| [X] Fixed Rate Loan  [ ] Adjustable Rate Loan | [X] Fixed Rate Loan  [ ] Adjustable Rate Loan |
| Amount Financed: $ 65,805.33 | Amount Financed: $ 65,690.49 |
| Settlement Charges: $ 5,417.67 (Includes all Prepaid Finance Charges) | Settlement Charges: $ 5,971.41 (Includes all Prepaid Finance Charges) Incorrect |
| Loan Amount: $ 70,448.00 | Loan Amount: $ 70,550.00 |
| Annual Percentage Rate: 8.447 % | Annual Percentage Rate: 8.446 |
| Term: 360 | Term: 360 |
| Initial Interest Rate: 7.750 % | Initial Interest Rate: 7.750 % |
| Margin: 0.000 % | Margin: 0.000 % |
| Prepayment Penalty: [X] YES  [ ] NO | Prepayment Penalty: [X] YES  [ ] NO |

Borrower(s) and Ameriquest Mortgage Company hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

_____    _____    _____    _____
Borrower  Cecilia M Rowan    Date    Borrower    Date

_____    _____    _____    _____
Borrower    Date    Borrower    Date

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.



0000011381954104046501101

STMTCO (Rev. 3/99)

# EXHIBIT N

Loan No. 0113819841 - 7510

# FIXED RATE NOTE

### THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

| March 31, 2005 | Orange | CA |
|---|---|---|
| [Date] | [City] | [State] |

17085 Seneca Dr, Howard City, MI 49329
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$ 70,550.00** this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **7.750 %.**

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on **June 1, 2005.**

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **May 1, 2035,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at: **505 City Parkway West, Suite 100, Orange, CA 92868**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payments will be in the amount of U.S. **$505.43.**

## 4. BORROWER'S RIGHT TO PREPAY

I may repay this Note at any time as provided for in this paragraph. If within the first 3.00 year(s), I make a full prepayment and in certain cases a partial prepayment, and the total of such prepayments in any 12 month period exceeds 20% of the original principal balance under this Note, I will pay a prepayment charge equal to one percent (1%) on the amount by which the total prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials:



1 of 2



03/31/2005 2:01:38 PM

0000011381984103002000201

200-1MI (Rev 7/03)

# EXHIBIT O

# MORTGAGE

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated March 31, 2005
together with all Riders to this document.
(B) "Borrower" is Cecilia M Rowan

Borrower's address is 17085 Seneca Dr, Howard City, MI 49329
. Borrower is the mortgagor under this Security Instrument.

MICHIGAN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3023 1/01
0113819841 - 7510

03/31/2005 2:01:38

AM6MI (0401)

Page 1 of 16          Initials:_____

VMP Mortgage Solutions, Inc. (800)521-7291

000001138198410301341701

(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware
Lender's address is 1100 Town and Country Road, Suite 200  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated March 31, 2005
The Note states that Borrower owes Lender seventy thousand five hundred fifty and
00/100                                                                      Dollars
(U.S. $ 70,550.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than May 1, 2035                    .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:_____

AM6MI (0401)                          Page 2 of 18                          Form 3023 1/01

0113819841 - 7510

03/31/2005 2:01:38                    

(O) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County                                                          [Type of Recording Jurisdiction]
of MONTCALM                                                          [Name of Recording Jurisdiction]:
Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: 020-402-257-00                    which currently has the address of
17085  Seneca Dr                                                              [Street]
Howard City                                         [City], Michigan 49329          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials:_____ ____

**AM6MI** (0401)                    Page 3 of 16                    **Form 3023 1/01**

0113819841-7510

03/31/2005 2:01:38


0000011381984103013417703

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

AM6MI (0401)             Page 4 of 16       Initials: _____       Form 3023 1/01

0113819841 - 7510

03/31/2005 2:01:38



0000011381984103013411704

for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _____

AM6MI (0401)          Page 5 of 16                    Form 3023 1/01

0113819841 - 7510

03/31/2005 2:01:38



0000011381984103013417705

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and

Initials: _____

AM6MI (0401)   Page 6 of 16   Form 3023 1/01

0113819841 - 7510

03/31/2005 2:01:38



Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

AM6MI (0401)                                  Page 7 of 16           Initials: _____           Form 3023 1/01

0113819841 - 7510

03/31/2005 2:01:38



**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward

Initials: _____

AM6MI (0401)          Page 8 of 16          Form 3023 1/01

0113819841-7510

03/31/2005 2:01:38



the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Initials: _____

AM6MI (0401)                    Page 9 of 16                    Form 3023 1/01

0113819841 - 7510

03/31/2005 2:01:38



0000011381984103013417 09

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Initials: _____

Form 3023 1/01

AM6MI (0401)        Page 10 of 16

0113819841 - 7510

03/31/2005 2:01:38



00000113819841030134171G

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

AM6MI (0401)                     Page 11 of 16                     Form 3023 1/01

0113819841 - 7510

03/31/2005 2:01:38



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

Initials: _____

AM6MI (0401)                                    Page 12 of 16                              Form 3023 1/01

0113819841 - 7510

03/31/2005 2:01:38



00000113819841030134171 2

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous

Initials:_____

AM6MI (0401)                          Page 13 of 16                          Form 3023 1/01

0113819841 - 7510

03/31/2005 2:01:38



0000011381984103013417113

Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

AM6MI (0401)                    Page 14 of 16          Initials:_____        Form 3023 1/01

0113819841 - 7510

03/31/2005 2:01:38



0000011381984103013411714

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____                    _____ (Seal)
                                                    Cecilia M Rowan                 -Borrower

_____                    _____ (Seal)
                                                                                    -Borrower

_____ (Seal)              _____ (Seal)
                             -Borrower                                              -Borrower

_____ (Seal)              _____ (Seal)
                             -Borrower                                              -Borrower

_____ (Seal)              _____ (Seal)
                             -Borrower                                              -Borrower

**AM6MI** (0401)                     Page 15 of 16                     Form 3023 1/01
0113819841 - 7510

03/31/2005 2:01:38



0000011381984103013417715

**STATE OF MICHIGAN,**        **County ss:**

Acknowledged before me in _____ County,

Michigan, on _____ by

<u>Day/Month/Year</u>

_____

_____

_____

_____
Notary Public, State of Michgan,
County of
My Commission Expires
Acting in the County of

This instrument was prepared By:
     Ameriquest Mortgage Company
     Jeromy Quast
     3800 American Blvd. West, Suite 800,Bloomington, MN 55431



000001138198410301341716

400-16MI (12/03)            Page 16 of 16            0113819841 - 7510

03/31/2005 2:01:38 PM

# EXHIBIT P

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

[ ] Preliminary    [X] Final

LENDER: Ameriquest Mortgage Company
3800 American Blvd. West, Suite 800
Bloomington, MN 55431

Broker License:

Borrowers: Cecilia M Rowan

Type of Loan: FIXED RATE
Date: March 31, 2005

Address:        17085 Seneca Dr
City/State/Zip: Howard City, MI 49329

Loan Number: 0113819841 - 7510

Property:    17085 Seneca Dr, Howard City, MI 49329

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.446 % | $ 116,262.67 | $ 65,690.49 | $ 181,953.16 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $505.43 | 06/01/2005 | | | |
| 1 | $503.79 | 05/01/2035 | | | |

VARIABLE RATE FEATURE:
[ ]    Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at: 17085 Seneca Dr, Howard City, MI 49329

ASSUMPTION:   Someone buying this property   [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES:    If a payment is late, you will be charged  5.000%  of the overdue payment

PREPAYMENT:  If you pay off your loan early, you
[X] may   [ ] will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____    _____    _____
Borrower Cecilia M Rowan      Date       Borrower                       Date

_____    _____    _____    _____
Borrower                      Date       Borrower                       Date

TIL1 (Rev. 7/01)



0000113819841030575010 1

**ORIGINAL COPY**

03/31/2005 2:01:38 PM

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary  ☒ Final

LENDER: Ameriquest Mortgage Company
3800 American Blvd. West, Suite 800
Bloomington, MN 55431

Broker License:

Borrowers: Cecilia M Rowan

Type of Loan: FIXED RATE
Date: March 31, 2005

Address: 17085 Seneca Dr
City/State/Zip: Howard City, MI 49329

Loan Number: 0113819841 - 7510

Property: 17085 Seneca Dr, Howard City, MI 49329

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.446 % | $ 116,262.67 | $ 65,690.49 | $ 181,953.16 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $505.43 | 06/01/2005 | | | |
| 1 | $503.79 | 05/01/2035 | | | |

**VARIABLE RATE FEATURE:**
☐ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 17085 Seneca Dr, Howard City, MI 49329

**ASSUMPTION:** Someone buying this property
☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:** If a payment is late, you will be charged 5.000% of the overdue payment.

**PREPAYMENT:** If you pay off your loan early, you
☒ may  ☐ will not  have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____  _____
Borrower Cecilia M Rowan               Date

_____  _____
Borrower                                Date

_____  _____
Borrower                                Date

_____  _____
Borrower                                Date

TIL1 (Rev. 7/01)


0000011381984103057501011

**BORROWER COPY**

03/31/2005 2:01:38 PM

# EXHIBIT Q

# NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   March 31, 2005
LOAN NO.:   0113819841 - 7510
TYPE:   FIXED RATE

BORROWER(S): Cecilia M Rowan

ADDRESS:        17085 Seneca Dr
CITY/STATE/ZIP:  Howard City,MI 49329

PROPERTY:  17085 Seneca Dr
           Howard City,  MI  49329

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
|  |

         or
2.  The date you received your Truth in Lending disclosures;
         or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

## HOW TO CANCEL
If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE:  **(714)634-3494**
FAX:      **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
|  |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____                    _____
SIGNATURE                                     DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

| | | | |
| --- | --- | --- | --- |
| BORROWER/OWNER Cecilia M Rowan | Date | BORROWER/OWNER | Date |
| BORROWER/OWNER | Date | BORROWER/OWNER | Date |

**LENDER COPY**

LN4-NRC (Rev 11/03)

0000011381984104000050101

03/31/2005 2:01:38 PM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE: March 31, 2005
LOAN NO.:   0113819841 - 7510
TYPE:   FIXED RATE

BORROWER(S): Cecilia M Rowan

ADDRESS:         17085 Seneca Dr
CITY/STATE/ZIP:   Howard City, MI 49329

PROPERTY:   17085  Seneca Dr
                  Howard City,  MI   49329

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| :-- |
|  |

or
2.   The date you received your Truth in Lending disclosures;
or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:      **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| :-- |
|  |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____          _____
SIGNATURE                                              DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____   _____   _____   _____
BORROWER/OWNER Cecilia M Rowan      Date      BORROWER/OWNER                            Date

_____   _____   _____   _____
BORROWER/OWNER                            Date      BORROWER/OWNER                            Date

1064-NRC (Rev 11/03)

0000011381984104000050101

**BORROWER COPY**

03/31/2005 2:01:38 PM

# EXHIBIT R

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0113819841 - 7510
Date: March 31, 2005

Borrower(s): Cecilia M Rowan

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1600 S Douglass Rd Anaheim, CA 92806
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

---

Borrower/Owner  Cecilia M Rowan

Date

---

Borrower/Owner

Date

---

Borrower/Owner

Date

---

Borrower/Owner

Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

Borrower/Owner Signature

Date

---

00000113819841040422 0101

03/31/2005 2:01:38 PM

**BORROWER COPY**

850 (10/00)

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0113819841 - 7510          Borrower(s): Cecilia M Rowan

Date: March 31, 2005

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____
Borrower/Owner  Cecilia M Rowan          Date

_____          _____
Borrower/Owner                            Date

_____          _____
Borrower/Owner                            Date

_____          _____
Borrower/Owner                            Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____          _____
Borrower/Owner Signature                  Date



03/31/2005 2:01:38 PM

**BORROWER COPY**

0000011381984104042220101

K50 (10/00)

# EXHIBIT S

## Ameriquest Mortgage Company

Borrower Name: Cecilia M Rowan
Borrower Name:

Loan Number: 0113819841 - 7510
Property Address: 17085 Seneca Dr
Howard City, MI 49329

### UNDERSTANDING YOUR OPTIONS REGARDING
### INTEREST RATES AND PREPAYMENT CHARGES

Ameriquest Mortgage Company offers its customers the option to choose a prepayment charge on their loan in exchange for a lower interest rate (or lower initial interest rate in the case of an adjustable rate mortgage). A "prepayment" is any amount you pay in excess of your regularly scheduled monthly payments of principal and interest that Ameriquest Mortgage Company applies to reduce the outstanding principal balance of your loan. Prepayment charges in MI only apply to payments made during the first 3 Years of a mortgage loan.

## EXAMPLE:

The following example shows how a "prepayment charge exchange ratio" (the amount by which a prepayment charge affects the interest rate) of one-half of one percent (50 basis points) would affect a sample set of loan terms. By choosing to add a prepayment charge to your loan, your interest rate, in this example, would be reduced by one-half of one percent (50 basis points). The following example shows how your options work.



| No Prepayment Charge Scenario* | Adding a Prepayment Charge Scenario* |
|---|---|
| *If you plan to sell or refinance your home within 3 Years , you may not want a prepayment charge on your loan. Your interest rate will be higher without a prepayment charge:* | *To reduce your interest rate, you can take a loan with a prepayment charge:* |
| Loan amount: $100,000 | Loan amount: $100,000 |
| Interest rate: 7% | Interest rate: 6.50% |
| Discount points: 2.75% ($2,750) | Discount points: 2.75% ($2,750) |
| Prepayment Charge: NO | Prepayment Charge: YES |

\* The terms of your loan may be different from the above example. Other factors influence interest rate, such as your credit score and credit history, the type of income documentation you provide, whether you choose a fixed or adjustable interest rate, etc.

**Please ask your Ameriquest Mortgage Company account executive how the presence or absence of a prepayment charge would affect the interest rate on your loan.**

If you decide to include a prepayment charge on your loan, you can make additional principal payments up to a certain limit within a 12-month period; the specific terms of the prepayment charge are provided below. These terms will be included in the Note (legal document) you will sign at closing.

---

You may repay all or any part of the principal balance of this Note in accordance with the terms of this Section. A "prepayment" is any amount that you pay in excess of your regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Prepayment Made Three (3.00) year(s) After the Date of this Note**

If you make a prepayment commencing on or after the Three (3.00) year anniversary of the date of this Note, you may make that prepayment, in full or in part, without the imposition of a prepayment charge by the Lender.

**(B) Prepayment Made Within Three (3.00) year(s) of the Date of this Note**

You agree to pay Lender a prepayment charge if you make a prepayment before the Three (3.00) year(s) anniversary of the date this Note is executed. The prepayment charge you will pay will be equal to one percent (1%) on the amount by which the total prepayment(s) within any 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

**(C) Application of Funds**

You agree that when you indicate in writing that you are making a prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(D) Monthly Payments**

If you make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and the Security Instrument, your regularly scheduled payments of principal and interest will not change as a result.

---

Think carefully about what you want to do and consult a financial advisor. Adding a prepayment charge in exchange for a lower interest rate may be a good choice if you do not plan to sell or refinance your home for some time. On the other hand, you might not want to have a prepayment charge if you think you will sell or refinance soon. **Your Ameriquest Mortgage Company account executive can give you more information about the options available to you and the exact terms of your loan.**

864-P (Rev. 09/24/03)



00000113819841040594010

# EXHIBIT T

## ITEMS TO BE PAID OFF FROM LOAN PROCEEDS

Borrower : Cecilia M Rowan

Loan Number : 0113819841 - 7510



| Payee | Amount |
|---|---|
| 5TH 3RD BK | (W) $20,607.02 |
| HOMEQ | (W) $42,919.33 |
| Property Taxes | (W) $639.94 |

Loan Amount: 70,550.00

Funds Held By Lender:

Borrower Proceeds: (W) $4?.30

Total Wire: $65,783.59

L = Lender Paid
Deposit at Escrow/Title: $0.00

(W) = Included in Wire

_____    _____
Title Company Representative Signature        Date

895-7UNV  (2/2004)



## ITEMS TO BE PAID OFF FROM LOAN PROCEEDS

Borrower : Cecilia M Rowan

Loan Number : 0113819841 - 7510

| Payee | | Amount |
|-------|---|--------|
| 5TH 3RD BK | (W) | $20,607.02 |
| HOMEQ | (W) | $42,919.33 |
| Property Taxes | (W) | $639.94 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

WRONG

Total Wire:   $65,783.59

Loan Amount:   70,550.00

L = Lender Paid
Deposit at Escrow/Title:   $0.00

Funds Held By
Lender:

Borrower Proceeds:   (W)   $412.30

(W) = Included in Wire

Title Company Representative Signature          Date

895-7UNV (2/2004)



0000011381984103074307707

# EXHIBIT U

**CLOSING INSTRUCTIONS**
**ITEMIZATION OF SETTLEMENT CHARGES**

| Title Company/Attorney | Title Officer/Attorney | Phone Number | Order Number |
|---|---|---|---|
| NORTHWEST TITLE AND ESCROW CORP. | CHRIS SUSSMAN | (407)253-7000 | 649278 |

| Borrower(s) | Property Address |
|---|---|
| Cecilia M Rowan | 17085 Seneca Dr |
| | Howard City    MI    49329 |

Loan Number: 0113819841

FROM: Ameriquest Mortgage Company - Bloomington    Phone No. _____    Fax _____
Branch Name    Branch Phone No.    Branch Fax Number

BELOW IS A LIST OF ALL SETTLEMENT CHARGES AND DISBURSEMENTS APPLICABLE TO THIS LOAN. YOU MUST USE THESE FIGURES TO PREPARE YOUR SETTLEMENT STATEMENT. YOU CANNOT DEVIATE FROM THESE FIGURES WITHOUT PRIOR WRITTEN AUTHORIZATION FROM VICE PRESIDENT OF LOAN OPERATIONS AND/OR ITS DIRECTORS .

| LINE NO. ON SETTLEMENT STATEMENT | PAYEE | AMOUNT |
|---|---|---|
| 801. Loan origination fee    % to | | |
| 802. Loan discount  3.708  % to  Ameriquest Mortgage Company | | $2,615.99 |
| 803. Apprsl/Prop Val to Reimbursed to Lender    L  $350.00    $0.00 | | |
| 804. Credit Report fee | | |
| 805. Inspection fee | | |
| 808. Yield Spread Premium to | | |
| 809. | | |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | | $70.00 |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | | $9.00 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | | $626.00 |
| 813. Admin to Ameriquest Mortgage Company | | $239.00 |
| 814. Doc. Prep. Fee to | | |
| 815. Credit Report Fee to | | |
| 816. Origination Fee    % to | | |
| 817. Application Fee to  Ameriquest Mortgage Company | | $360.00 |
| 818. Underwriting Fee to | | |
| 819. Service Provider Fee to | | |
| 820. Processing Fee  to | | |
| 821. Underwriting Fee to | | |
| 822. Appraisal Fee to | | |
| 901. Interest from 04/07/2005  to  05/01/2005  @ $ 14.98  per day | | $359.52 |
| 902. Mortgage insurance premium for    months to | | |
| 903. Hazard ins prem  to | | |
| 904. Flood ins prem  to | | |
| 1001. Hazard insurance  3  months @ $ 36.42  per month | | $109.26 |
| 1002. Mortgage insurance    months @ $    per month | | |
| 1003. Earthquake ins    months @ $    per month | | |
| 1004. County prop. taxes  6  months @ $ 62.94  per month | | $377.64 |
| 1005. Annual assess.    months @ $    per month | | |
| 1006. Flood    months @ $    per month | | |
| 1007. Windstorm ins    months @ $    per month | | |
| 1008. | | |
| 1101. Settlement or closing fee to  NORTHWEST TITLE AND | | (W)  $300.00 |
| 1102. Abstract or title search to  NW | | (W)  $125.00 |
| 1103. Title examination to  NW | | (W)  $75.00 |
| 1105. Document preparation to | | |
| 1106. Notary fees to  Executive Closings | | (W)  $200.00 |
| 1107. Attorney's fees to | | |
| 1108. Title insurance to  NORTHWEST TITLE AND | | (W)  $350.00 |
| 1109. Lender's coverage | | |
| 1110. Owner's coverage    $ | | |
| 1111. Settlement/Disbursement fee to | | |
| 1112. Escrow Fee to | | |
| 1201. Recording fees | | (W)  $75.00 |
| 1202. City/county tax/stamps | | |
| 1203. State tax/ stamps | | |
| 1204. State specific fee | | |
| 1301. Demand to | | |
| 1302. Pest Inspection to | | |
| 1303. Survey Fee | | |
| 1304. Staff Appraiser Fee to | | |
| 1305. Reconveyance Fee to | | |
| 1306. | | |
| 1307. Property Val Fee to | | |
| 1308. Courier Fee | | (W)  $80.00 |

*Any amounts appearing on these lines are prepaid finance charges and cannot be increased or added once loan documents have been prepared unless new loan documents are generated.

_____    _____
Title Company Representative Signature    Date

## CLOSING INSTRUCTIONS
## ITEMIZATION OF SETTLEMENT CHARGES

| Title Company/Attorney | Title Officer/Attorney | Phone Number | Order Number |
|---|---|---|---|
| NORTHWEST TITLE AND ESCROW CORP. | CHRIS SUSSMAN | (407)253-7000 | 649278 |

| Borrower(s) | Property Address |
|---|---|
| Cecilia M Rowan | 17085 Seneca Dr |
| | Howard City          MI          49329 |
| | Loan Number: 0113819841 |

FROM: Ameriquest Mortgage Company - Bloomington     Phone No. _____     Fax _____
Branch Name                                              Branch Phone No.              Branch Fax Number

BELOW IS A LIST OF ALL SETTLEMENT CHARGES AND DISBURSEMENTS APPLICABLE TO THIS LOAN. YOU MUST USE THESE FIGURES TO PREPARE YOUR SETTLEMENT STATEMENT. YOU CANNOT DEVIATE FROM THESE FIGURES WITHOUT PRIOR WRITTEN AUTHORIZATION FROM VICE PRESIDENT OF LOAN OPERATIONS AND/OR ITS DIRECTORS .

| LINE NO. ON SETTLEMENT STATEMENT | PAYEE | | AMOUNT |
|---|---|---|---|
| 801.  Loan origination fee      % to | | | |
| 802.  Loan discount   3.708   % to  Ameriquest Mortgage Company | | | $2,615.98 |
| 803.  Apprsl/Prop Val to Reimbursed to Lender          *L  $350.00 *   $0.00 | | | |
| 804.  Credit Report fee | | | |
| 805.  Inspection fee | | | |
| 808.  Yield Spread Premium to | | | |
| 809. | | | |
| 810.  Tax Related Service Fee to  Ameriquest Mortgage | | | $70.00 |
| 811.  Flood Search fee to  Ameriquest Mortgage Company | | | $9.00 |
| 812.  Lenders Processing Fee to  Ameriquest Mortgage | | | $626.00 |
| 813.Admin to  Ameriquest Mortgage Company | | | $239.00 |
| 814.  Doc. Prep. Fee to | | | |
| 815.  Credit Report Fee to | | | |
| 816.  Origination Fee    % to | | | |
| 817.  Application Fee to  Ameriquest Mortgage Company | | | $360.00 |
| 818.  Underwriting Fee to | | | |
| 819.  Service Provider Fee to | | | |
| 820.  Processing Fee  to | | | |
| 821.  Underwriting Fee to | | | |
| 822.  Appraisal Fee to | | | |
| 901.  Interest from  04/07/2005  to  05/01/2005  @  $14.98  per day | | | $359.52 |
| 902.  Mortgage Insurance premium for          months to | | | |
| 903.  Hazard ins prem to | | | |
| 904.  Flood Ins prem to | | | |
| 1001. Hazard insurance  3   months @ $  36.42  per month | | | $109.26 |
| 1002. Mortgage insurance   months @ $   per month | | | |
| 1003. Earthquake Ins   months @ $   per month | | | |
| 1004. County prop. taxes  6   months @ $  62.94  per month | | | $377.64 |
| 1005. Annual assess.   months @ $   per month | | | |
| 1006. Flood    months @ $    per month | | | |
| 1007. Windstorm Ins   months @ $    per month | | | |
| 1008. | | | |
| 1101. Settlement or closing fee to  NORTHWEST TITLE AND | | (W) | $300.00 |
| 1102. Abstract or title search to  NW | | (W) | $125.00 |
| 1103. Title examination to  NW | | (W) | $75.00 |
| 1105. Document preparation to | | | |
| 1106. Notary fees to  Executive Closings | | (W) | $200.00 |
| 1107. Attorney's fees to | | | |
| 1108. Title Insurance to  NORTHWEST TITLE AND | | (W) | $350.00 |
| 1109. Lender's coverage | | | |
| 1110. Owner's coverage          $ | | | |
| 1111. Settlement/Disbursement fee to | | | |
| 1112. Escrow Fee to | | | |
| 1201. Recording fees | | (W) | $75.00 |
| 1202. City/county tax/stamps | | | |
| 1203. State tax/ stamps | | | |
| 1204. State specific fee | | | |
| 1301. Demand to | | | |
| 1302. Pest Inspection to | | | |
| 1303. Survey Fee | | | |
| 1304. Staff Appraiser Fee | | | |
| 1305. Reconveyance Fee to | | | |
| 1306. | | | |
| 1307. Property Val Fee to | | | |
| 1308. Courier Fee to | | (W) | $80.00 |

*Any amounts appearing on these lines are prepaid finance ch___  ___ not be increased or added once loan documents
have been prepared unless new loan documents are gener___

_____          _____
Title Company Representative Signature          Date


0000011381984103074307 06

# EXHIBIT V

U.S. Department of Housing and Urban Development    OMB No. 2502-0491

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| File Number: 10-00655234 | Loan Number: 0113819841 | Mortgage Ins. Case #: |
|---|---|---|

NAME AND ADDRESS OF BORROWER:  CECILIA M ROWAN, 17085 SENECA DRIVE HOWARD CITY MI, 49329

NAME AND ADDRESS OF LENDER:  AMERIQUEST MORTGAGE COMPANY 3800 WEST 80TH ST SUITE 800 MINNEAPOLIS, MN, 55437

PROPERTY LOCATION: 17085 SENECA DRIVE HOWARD CITY MI, 49329

SETTLEMENT AGENT:    NORTHWEST TITLE & ESCROW CORP.  APETERSON
PLACE OF SETTLEMENT: .

| SETTLEMENT DATE: 03/31/2005 | DISBURSEMENT DATE: 04/20/2005 |
|---|---|

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800. Items Payable In Connection With Loan | | 1501. Payoff-Mortgage-Loan# 844195818 | |
| 801. Loan Origination Fee | | FIFTH THIRD BANK | $20,730.84 |
| 802. Loan Discount 3.708% TO AMERIQUEST | $2,615.99 | 1502. Payoff-Mortgage-Loan# 0000073036931 | |
| 803. Appraisal Fee reimbursed to lender *L350.00 | | HOMEQ SERVICING CORPORATION | $42,417.13 |
| 804. Credit Report | | 1503. Payoff | |
| 805. | | MONTCALM COUNTY TREASURER | $765.52 |
| 806. Mortgage Insurance Application Fee to AMERIQUEST MORT | $360.00 | 1504. Payoff | |
| 807. | | | |
| 808. Lender's Processing Fee to AMERIQUEST MORTGAGE COI | $626.00 | 1505. Payoff | |
| 809. Admin fee to AMERIQUEST MORTGAGE COMPANY | $239.00 | | |
| 810. Tax Related Servic Fee to Ameriquest | $70.00 | 1506. Payoff | |
| 811. Flood Search Fee to AMERIQUEST MORTGAGE COMPANY | $9.00 | | |
| 900. Items Required By Lender To Be Paid In Advance | | 1507. Payoff | |
| 901. Interest from 04/07/2005 TO 05/01/2005 @$14.98/DAY | $359.52 | | |
| 902. Mortgage Insurance Premium for | | 1508. Payoff | |
| 903. Hazard Insurance Premium for | | | |
| 904. | | 1509. Payoff | |
| 905. | | | |
| 1000. Reserves Deposited With Lender | | 1510. Payoff | |
| 1001. Hazard insurance 3 months @ $36.42 per month | $109.26 | | |
| 1002. Mortgage insurance | | 1511. Payoff | |
| 1003. City property taxes | | | |
| 1004. County property taxes 6 months @ $62.94 per month | $377.64 | 1512. Payoff | |
| 1005. Annual assessments | | | |
| 1006. | | 1513. Payoff | |
| 1007. | | | |
| 1008. | | 1514. Payoff | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee to NORTHWEST TITLE & ESCRC | $300.00 | 1515. Payoff | |
| 1102. Abstract or title search to NORTHWEST TITLE & ESCROW | | | |
| 1103. Title examination to NORTHWEST TITLE & ESCROW COF | | 1516. Payoff | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation | | 1517. Payoff | |
| 1106. Notary Fees EXECUTIVE CLOSINGS | $200.00 | | |
| 1107. Attorney's Fees | | 1518. Payoff | |
| (Includes above item numbers:   ) | | | |
| 1108. Title insurance to NORTHWEST TITLE & ESCROW CORP | $339.30 | 1519. Payoff | |
| (Includes above item numbers:   ) | | | |
| 1109. Lender's coverage | | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1110. Owner's coverage | | | $63,913.49 |
| 1111. Settlement disbursement fee | | | |
| 1112. Name, assessment & plat NORTHWEST TITLE & ESCROW | | | |
| 1113. ARM adjustment | | N. Net Settlement | |
| 1200. Government Recording and Transfer Charges | | 1600. Loan Amount | $70,550.00 |
| 1201. Recording fees: Deed $   Mort. $   Sei $ | $150.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps: | | 1601. Plus Check/Cash from Borrower | $0.00 |
| 1204. Conservation fee | | | |
| 1205. Recording Service Fee | $40.00 | 1602. Minus total settlement charges | $5,875.71 |
| 1300. Additional Settlement Charges | | (Line 1400) | |
| 1301. Survey | | 1603. Minus total Disbursements to | $63,913.49 |
| 1302. Pest inspection | | Others (line 1520) | |
| 1303. Courier fee NORTHWEST TITLE & ESCROW CORP. | $80.00 | 1604. Equals disbursements to borrower | $760.80 |
| 1304. | | | |
| 1305. | | | |
| 1400. Total settlement charges (enter on line 1602) | $5,875.71 | | |

The undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A ref. RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.
The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause funds to be disbursed in accordance with this statement.

X_____     X_____
Northwest Title & Escrow Corp.          CECILIA M ROWAN

# EXHIBIT W

Michigan Department of Treasury, STC
1019 (Rev. 10-04)

This form is issued under the authority of P.A. 206 of 1893, Sec. 211.24 (c), as amended. This is a model assessment notice to be used by the local assessor.

**L-4400**

# Notice of Assessment, Taxable Valuation, and Property Classification

FROM

WINFIELD TOWNSHIP
ASSESSOR'S OFFICE
10850 5 MILE RD
LAKEVIEW, MI 48850-9646

# THIS IS NOT A TAX BILL

NAME AND ADDRESS OF OWNER OR PERSON NAMED ON ASSESSMENT ROLL:

ROWAN CECILIA M
17085 SENECA DR
HOWARD CITY MI 49329

PROPERTY IDENTIFICATION: (Parcel Code required Property address and legal description optional ). 59-020-402-257-00

**17085 SENECA DR**

LOT 257 PAWNEE POINTS NO 2.

THIS PROPERTY IS CLASSIFIED AS: 401 (RESIDENTIAL IMP)

PRIOR YEAR'S CLASSIFICATION IF DIFFERENT:

Proposal A, passed by the voters on March 15, 1994, places a limit on the value used to compute property taxes. Starting in 1995, your property taxes were calculated on Taxable Values (see line 1 below). If there is a number entered in the "Change" column at the right side of the Taxable Value line, that number is not your change in taxes. It is the change in Taxable Value.

Prior to 1995, your taxes were calculated on State Equalized Value (see line 4 below). State Equalized Value (SEV) is the Assessed Value multiplied by the Equalization Factor, if any (see line 3 below). State Equalized Value must approximate 50% of market value.

IF THERE WAS A TRANSFER OF OWNERSHIP on your property in 2004, your 2005 Taxable Value will be the same as your 2005 State Equalized Value. Please see line 5 below regarding Transfer of Ownership on your property.

IF THERE WAS NOT A TRANSFER OF OWNERSHIP on your property in 2004, your 2005 Taxable Value is calculated by multiplying your 2004 Taxable Value (see line 1 below) by 1.023 (which is the Inflation Rate Multiplier for the current year). Physical changes in your property may also increase or decrease your Taxable Value. Your 2005 Taxable Value cannot be higher than your 2005 State Equalized Value.

| | PRIOR AMOUNT YEAR: 2004 | CURRENT AMOUNT YEAR: 2005 | CHANGE |
|---|---|---|---|
| 1. TAXABLE VALUE (Current amount is tentative): | 28,035 | 28,679 | 644 |
| 2. ASSESSED VALUE: | 29,400 | 28,700 | -700 |
| 3. TENTATIVE EQUALIZATION FACTOR: 1.000 | | | |
| 4. STATE EQUALIZED VALUE (Current amount is tentative): | 29,400 | 28,700 | -700 |

5. There WAS/WAS NOT a transfer of ownership on this property in 2004.    WAS NOT

If you believe that these values, the property classification, or the information on line 5 is incorrect you may protest to the Local Board of Review, which will meet at: (enter dates and times and place)

A nonresident may protest to the Board of Review by letter. Letter appeals are to be accompanied by a completed Board of Review petition form (form L-4035 or an alternate petition form used by the local unit of government). The petition form approved by the State Tax Commission (form L-4035) is available at www.michigan.gov/treasury. When you reach the site, click on Property Tax Forms, then click on Property Tax - Board of Review.

**YOUR ASSESSMENT CHANGED FOR THE FOLLOWING REASON(S): EQUALIZE**
**YOU MAY CALL 989-352-6196 IF YOU HAVE QUESTIONS. THE BOARD OF REVIEW WILL MEET AT THE TOWNSHIP HALL ON TUESDAY, MARCH 15TH FROM 9:00PM TO 3:00PM AND FRIDAY, MARCH 18TH FROM 3:00AM TO 9:00PM.**

% Exempt As "Principal Residence": 100.00 %

% Exempt As "Qualified Agricultural Property": 0.00 %

e denial of an exemption from the local school operating tax for "qualified agricultural properties" may be appealed to the local Board Review. The denial of an exemption from the local school operating tax for a "homeowner's principal residence" may be appealed to Michigan Tax Tribunal.

est at the Board of Review is necessary to protect your right to further appeals to the Michigan Tax Tribunal for valuation and exemption eals and/or the State Tax Commission for classification appeals.

EOWNER'S PRINCIPAL RESIDENCE AFFIDAVIT INFORMATION REQUIRED BY P.A. 247 OF 2003. If you purchased your principal ence after May 1 last year, to claim the principal residence exemption, if you have not already done so, you are required to file an it on or before May 1.

# EXHIBIT X

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email: edcombs@aol.com
### www.edcombs.com

June 29, 2006

**BY FACSIMILE**
Ameriquest Mortgage Company
c/o registered agent
National Registered Agents, Inc.
712 Abbott Road
East Lansing, MI 48823

AMC Mortgage Services, Inc.
c/o registered agent
National Registered Agents, Inc.
712 Abbott Road
East Lansing, MI 48823

Litton Loan Servicing, LP
c/o registered agent
CSC-Lawyers Incorporating Service
601 Abbott Road
East Lansing, MI 48823

Re:     Notice of rescission, claim and lien, Cecilia M. Rowan, 17085 Seneca
        Dr., 49329, loan of March 31, 2005

Ladies/Gentlemen:

Each of the above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than Ameriquest Mortgage Company

or Litton Loan Servicing, LP  please identify the owner pursuant to 15 U.S.C. §1641(d).

        Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

                                Sincerely,

                                  Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on June 29, 2006.

_____
Daniel A. Edelman