# EXHIBIT 4

RECEIVED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAN 16 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| JOSE E. SALINAS, | ) | |
| JUANITA SALINAS and | ) | |
| RUTH SALINAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARGENT MORTGAGE COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

07C 0254

JUDGE KENNELLY

MAGISTRATE JUDGE VALDEZ

**JURY DEMANDED**

## COMPLAINT

## INTRODUCTION

1.    Plaintiffs Jose E. Salinas, Juanita Salinas and Ruth Salinas bring this action against a "subprime" mortgage lender and its affiliates to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §§1640 (TILA) and 1691e (ECOA).   Defendants transact business in the District and are deemed to reside here.

## PARTIES

3.    At the time of the facts alleged below, plaintiffs Jose E. Salinas, Juanita Salinas and Ruth Salinas owned and resided in a single-family residence at 1716 N. Baldwin Avenue, Waukegan, IL 60085.

1

4.     Defendant Argent Mortgage Company, LLC is a foreign limited liability company that maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, Inc., 200 W. Adams, Chicago, IL 60606.

5.     Defendant Argent Mortgage Company, LLC is engaged in the business of originating "subprime" mortgages.

6.     Defendant Argent Mortgage Company, LLC makes more than 26 loans per year.

7.     Defendant Argent Mortgage Company, LLC is a "creditor" as defined in TILA and Regulation Z.

## FACTS RELATING TO PLAINTIFFS

8.     Prior to Feb. 28, 2005, plaintiffs applied for a mortgage with Argent Mortgage Company, LLC.

9.     Throughout the process, plaintiff Jose E. Salinas and the Argent representative with whom he spoke spoke almost exclusively in Spanish.

10.     Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

11.     The loan was closed on Feb. 28, 2005.

12.     Immediately prior to the closing, loan terms were altered to plaintiffs' detriment, as set forth on Exhibit A. Argent raised plaintiffs' settlement charges from $5,235.20 to $9,371.46 without a valid reason, despite having previously and at the beginning of the application process gathered enough information to make an accurate quote.

13.     The following are documents relating to the loan:

2

b. A note, Exhibit B. Only Jose Salinas signed the note.

c. A mortgage, Exhibit C. All three plaintiffs signed the mortgage.

d. A settlement statement, Exhibit D;

e. A Truth in Lending statement, Exhibit E;

f. The three-day notice of right to cancel required by the Federal

Reserve Board, Exhibit F;

14. The closing was conducted in Spanish. Of the three plaintiffs, only Ruth
Salinas speaks fluent English. No official translator was present.

15. Plaintiffs were directed to make payments to Argent Mortgage
Company (Exhibit G) and later to AMC Mortgage Services, Inc.

16. On information and belief, Argent Mortgage Securities, Inc. owns
plaintiffs' loan.

17. In the event Argent Mortgage Securities, Inc. does not own
plaintiffs' loan (actual ownership is rarely if ever shown of record), the actual owners are named
as Does 1-5.

## COUNT I – TILA

18. Plaintiffs incorporate paragraphs 1-187

19. This claim is against all defendants.

20. In order to give consumer borrowers the opportunity to rethink
transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home
owners who refinance their mortgages with a new lender the right to rescind the transaction until
midnight of the third business day following the consummation of the transaction or three days of

3

receiving notice of their right to rescind, whichever is later. More specifically, the statute,

provides that:

> **Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. (15 U.S.C. § 1635(a)).**

21.     To ensure that rescission is a viable option, the statute also provides that if

the customer elects to rescind, the customer is entitled to the return of all money or property that

the customer has given as part of the credit transaction. More specifically, the statute provides:

> **When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. (15 U.S.C. § 1635(b).)**

22.     To ensure that home owner borrowers are aware of these rights, the statute

requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately.

More specifically, the statute provides:

> **The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section. (15 U.S.C. § 1635(a).)**

4

23.    Regulation Z, promulgated by the Federal Reserve Board pursuant to the

Truth in Lending Act, amplifies the statutory requirements. The regulation restates the statutory

rescission right, 12 C.F.R. § 226.23(a), and requires that the creditor "deliver" to each person

entitled to rescind "two copies" of a document that "clearly and conspicuously disclose" 12

C.F.R. § 226.23(b)(1) the borrower's rescission rights.

24.    More specifically, the regulation provides:

**In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(i) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(ii) The consumer's right to rescind the transaction.**

**(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(iv) The effects of rescission, as described in paragraph (d) of this section.**

**(v) The date the rescission period expires.  (12 C.F.R. § 226.23(b)(1).)**

25.    Because the transaction was secured by plaintiffs' home, and was not

entered into for purposes of the initial acquisition or construction of that home, it was subject to

the right to rescind.

## GROUNDS FOR RESCISSION

26.    In connection with the loan, Argent Mortgage Company, LLC failed to

provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of

15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

27.     Exhibit E is inherently confusing with respect to who has a right to cancel in a case in which less than all of the persons signing the mortgage sign the note. The confusing portions were added by Argent or Argent to the official Federal Reserve Board text.

28.     The top of Exhibit E has only Jose Salinas' name on it, and is addressed to "borrower(s)." The text is addressed to "You," which is reasonably interpreted as applying to the individual whose name appears directly above. The bottom of the form states that "Each borrower" has the right to cancel, which is reasonably interpreted as meaning the persons named as "borrower(s)" at the top of the document. While there are signature lines for all three plaintiffs at the bottom of the form, they are there described as "Borrower/ Owner," which presumably means something different than just "borrower."

29.     The statute gives not only each person obligated to repay the loan but each person who resides in and has an ownership interest in the property the right to cancel, and requires a notice that unequivocally tells each such person that they have the right to cancel.

30.     Notice of rescission has been given to defendants prior to plaintiffs' sale of their home.. A copy is attached as Exhibit H.

31.     The loan has not been rescinded.

32.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

33.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this**

6

**section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to · rescind.**

WHEREFORE, plaintiffs requests that the Court enter judgment in favor of plaintiffs and against defendants for:

a.     A judgment voiding plaintiffs's mortgage, capable of recordation in the public records, and binding on defendants;

b.     Statutory damages for the underlying disclosure violation;

c.     If appropriate, statutory damages for failure to rescind;

d.     Attorney's fees, litigation expenses and costs.

e.     Such other or further relief as the Court deems appropriate.

## COUNT II – ECOA

34.     Juanita and Ruth Salinas  incorporate paragraphs 1-33.

35.     This claim is against Argent, only.

36.     On information and belief, the majority of the instances in which less than all owners of the property sign a note in favor of defendant are where a man and a woman own the property and only the man signs the note.

37.     On information and belief, it is defendant's practice, if the woman does not have an income and/or her credit score is no better than the man's, to prepare the loan documents in this manner.

38.     Defendant's practice thus impairs and obfuscates the cancellation rights of women, and married women particularly, because of their gender and marital status, in violation of the ECOA's prohibition against discrimination on such bases.

7

WHEREFORE, plaintiffs Ruth Salinas and Juanita Salinas request that the Court enter judgment in favor of plaintiffs and against defendant for:

a.      Appropriate statutory and punitive damages;

b.      Attorney's fees, litigation expenses and costs.

c.      Such other or further relief as the Court deems appropriate.

Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiffs demand trial by jury.

Daniel A. Edelman

T:\17018\Pleading\Complaint_Pleading.WPD

8

# EXHIBIT A

| A. | | | | E. TYPE OF LOAN | | |
|---|---|---|---|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ CONV. UNINS | 4. ☐ VA | 5. ☐ CONV. INS | |
| | 6. FILE NUMBER: 233936E | | | 7. LOAN NUMBER 0073754558-9701 | | |
| SETTLEMENT STATEMENT | 8. MORTGAGE INS CASE NUMBER. | | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| JOSE E SALINAS | | ARGENT MORTGAGE COMPANY LLC |

Argent Mortgage Company, LLC
1701 Golf Road
Rolling Meadows, IL 60005

(847)690-6517

## BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

JOSE E SALINAS

Date: February 23, 2005

Notice: ☒ Delivered ☐ Mailed

Loan Number: 0073754558 - 9701

Description of Credit Request:

1716 N BALDWIN AVE
WAUKEGAN, IL 60085

☒ 1st Trust Deed/Mortgage ☐ 2nd Trust Deed/Mortgage

☐ Other: _____

Property Address: 1716 N BALDWIN AVE

WAUKEGAN, IL 60085          County of LAKE

### TYPE OF TRANSACTION:

☐ Purchase    ☒ Refinance    Other _____

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| ☐ Fixed Rate Loan ☒ Adjustable Rate Loan | ☐ Fixed Rate Loan ☒ Adjustable Rate Loan |
| Amount Financed: $ 192,336.80 | Amount Financed: $ 191,404.34 |
| Settlement Charges: $ 5,235.20 (includes all Prepaid Finance Charges) | Settlement Charges: $ 9,371.46 (includes all Prepaid Finance Charges) |
| Loan Amount: $ 197,000.00 | Loan Amount: $ 197,000.00 |
| Annual Percentage Rate 7.999 % | Annual Percentage Rate: 7.277 % |
| Term        360 | Term:        360 |
| Initial Interest Rate: 6.850 % | Initial Interest Rate: 5.850 % |
| Margin:     5.000 % | Margin:     4.000 % |
| Prepayment Penalty: ☐ YES ☒ NO | Prepayment Penalty: ☐ YES ☒ NO |

Borrower(s) and Argent Mortgage Company, LLC hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

Borrower: JOSE E SALINAS          Date 2/23/05          Borrower          Date

Borrower          Date          Borrower          Date

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

This Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY ROOM 4037, WASHINGTON DC, 20580.

# EXHIBIT B

Loan Number: 0073754558 - 9701

# ADJUSTABLE RATE INTEREST ONLY NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| February 28, 2005 | Rolling Meadows | IL |
|---|---|---|
| Date | City | State |

1716 N BALDWIN AVE, WAUKEGAN, IL 60085
Property Address

1. **BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 197,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Argent Mortgage Company, LLC.
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
   Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.850 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**
   (A) Time and Place of Payments
   I will make my monthly payments on the first day of each month beginning on May 1, 2005 . Before May 1, 2008 my monthly payment will consist only of interest due on the unpaid principal of the Note. Thereafter, beginning on May 1, 2008, I will pay principal and interest by making a payment each month as set forth below.
   I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before principal. If, on, April 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

   I will make my payments at: 505 City Parkway West, Suite 100, Orange, CA 92868
   or at a different place if required by the Note Holder.

   (B) Amount of My Initial Monthly Payments
   Each of my monthly payments before May 1, 2008 will be in the amount of U.S.$ 1,124.55, which is equal to only the interest due each month on the unpaid principal at the rate described in Section 2 of this Note. This monthly payment may change if I make any partial prepayment as set forth in Section 5 of this Note.

   (C) Date of First Principal and Interest Payment
   Each of my monthly payments beginning on May 1, 2008, will be equal to an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. This monthly payment may change due to interest rate adjustments determined as described in Section 4 of this Note.

   (D) Monthly Payment Changes
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A) Change Dates
   The interest rate I will pay may change on the first day of, April, 2008 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

   (B) The Index
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
   If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding four percentage point(s) (4.000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials: _____

201-1(UNIV)IIT (Rev. 01/05)          1 of 3

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.850 % or less than 6.850%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) 1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.850 % or less than 6.850 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. PREPAYMENT PRIVILEGE

I may prepay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of interest or of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

(A) Application of Funds

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

(B) Monthly Payments

If a partial Prepayment is made during the period when any monthly payment consists only of interest, the amount of the monthly payment will decrease for the remainder of the interest only period as well as during the period when monthly payments include both principal and interest, however, the payment reduction may be offset by any increase in the interest rate as described in Section 4 of this Note. If the partial prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease, however, the principal and interest required under this Note will be repaid prior to the Maturity Date.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payment

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of interest or principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials: _____

Loan Number: 0073754558 - 9701

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X _____ (Seal)     _____ (Seal)
Borrower   JOSE E SALINAS                        Borrower

_____ (Seal)     _____ (Seal)
Borrower                                          Borrower

# EXHIBIT C

Return To:

Argent Mortgage Company, LLC
P.O. Box 5047 Rolling
Meadows, IL 60008

Prepared By:Argent Mortgage Company, LLC

Natalie Hansen
1701 Golf Road,Rolling
Meadows, IL 60008

——————————————————[Space Above This Line For Recording Data]——————————————————

LawTitle
2334Ploe
[oF]

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated February 28, 2005 together with all Riders to this document.
(B) "Borrower" is JOSE E SALINAS AND RUTH E SALINAS, AS JOINT TENANTS

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

0073754558 -9701

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014 1/01

-6(IL) (0005)
Page 1 of 15          Initials: JES

VMP MORTGAGE FORMS - (800)521-7291

02/25/2005 10:34:11 AM

Lender's address is One City Boulevard West  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated February 28, 2005
The Note states that Borrower owes Lender one hundred ninety-seven thousand and
00/100                                                                                           Dollars
(U.S. $197,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 1, 2035

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

0073754558.-9701

Initials: ___

[X] -6(IL) (0005)                          Page 2 of 15      02/25/2005 10:34:11        Form 3014   1/01

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the
        County                                  [Type of Recording Jurisdiction]
of LAKE                                [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 08-18-209-023-0000                 which currently has the address of
1716 N BALDWIN AVE                                   [Street]
WAUKEGAN                      [City], Illinois 60085     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

00/3754558 - 9701
Initials: _____

-6(IL) (0005)                            Page 3 of 15    02/25/2005 10:34:11    Form 3014  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0073754558 - 9701

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

0073754558 - 9701
Initials: JES RY
02/25/2005 10:34:11

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

00/3754558 -9701
Initials: ___

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

00/3754558 9701
Initials:

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                      JOSE E SALINAS                -Borrower

_____     _____ (Seal)
                                      RUTH E SALINAS                -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower    Juanita Salinas         -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                                -Borrower

0073754558 - 9701

-6(IL) (0005)          Page 14 of 15    02/25/2005 10:34:11  Form 3014  1/01

STATE OF ILLINOIS, _Lake_ County ss:

I, _the undersigned_ , a Notary Public in and for said county and in said state, hereby certify that

_Jose E. Salinas_

_Ruth T. Salinas_

_Juanita Salinas_

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal of this _28 February 2005_

My Commission Expires: _12/05_

_____
Notary Public

400-15IL (4/02)

03/28/2006  12:32    18476629078                WAUKEGAN STEEL SALES              PAGE  88

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 28th day of February , 2005   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1716 N BALDWIN AVE, WAUKEGAN, IL  60085
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  6.850 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of April, 2008  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials: _____

Loan Number:  0073754558 - 9701

Page 1 of 3

03/28/2005 10:34:11 AM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Jose E Salinas_ (Seal)  _Ruth E Salinas_ (Seal)
Borrower JOSE E SALINAS        Borrower RUTH E SALINAS

_Juanita Salinas_ (Seal)  _____ (Seal)
Borrower                        Borrower

Loan Number: 0073754558 - 9701

610-3 (Rev 1/01)          Page 3 of 3

02/25/2005 10:34:11 AM

# EXHIBIT D

| A. | | | | | B. TYPE OF LOAN: | |
|---|---|---|---|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | | 1 ☐ FHA | 2 ☐ FmHA | 3 ☒ CONV. UNINS. | 4 ☐ VA | 5 ☐ CONV. INS. |
| | | 5. FILE NUMBER: 233535E | | 7. LOAN NUMBER: 0073754558-5701 | | |
| SETTLEMENT STATEMENT | | 6. MORTGAGE INS CASE NUMBER: | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| JOSE E. SALINAS RUTH E. SALINAS 1716 NORTH BALDWIN AVENUE WAUKEGAN, IL 60085 | | ARGENT MORTGAGE COMPANY, LLC 1701 WEST GOLF ROAD, TOWER 2, 1ST FLOOR ROLLING MEADOWS, IL 60008 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 1716 NORTH BALDWIN AVENUE WAUKEGAN IL 60085 LAKE 08-18-209-023 | Law Title Insurance Agency, Inc - Naperville Agent for: Stewart Title Insurance Company | February 26, 2005 |
| | PLACE OF SETTLEMENT 1814 GRANDSTAND PLACE ELGIN, IL 60123 | Disburse:03/04/05 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 9,131.46 | 403. | |
| 104. PAYOFF 1ST MORTGAGE to ***NEED PAYOFF LTR*** | 187,335.00 | 404. | |
| 105. | | 405. | |
| Adjustments For Items Paid By Seller in advance | | Adjustments For Items Paid By Seller in advance | |
| 106. City/Town Taxes to | | 406. City/Town Taxes to | |
| 107. County Taxes to | | 407. County Taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 196,466.46 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 197,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller | | Adjustments For Items Unpaid By Seller | |
| 210. City/Town Taxes to | | 510. City/Town Taxes to | |
| 211. County Taxes to | | 511. County Taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519 | |
| 220. TOTAL PAID BY/FOR BORROWER | 197,000.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER: | | 600. CASH AT SETTLEMENT TO/FROM SELLER: | |
| 301. Gross Amount Due From Borrower (Line 120) | 196,466.46 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | (197,000.00) | 602. Less Reductions Due Seller (Line 520) | |
| 303. CASH ( FROM )( X TO ) BORROWER | 533.54 | 603. CASH ( TO )( FROM ) SELLER | 0.00 |

## L. SETTLEMENT CHARGES

| 700. TOTAL COMMISSION Based on Price | $ | @ | % | PAID FROM BORROWERS FUNDS AT SETTLEMENT | PAID FROM SELLERS FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| Division of Commission (line 700) as Follows | | | | | |
| 701. $ to | | | | | |
| 702. $ to | | | | | |
| 703. Commission Paid at Settlement | | | | | |
| 704. | to | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | | |
| 801. Loan Origination Fee 1.2500 % | to FREEDOM MORTGAGE TEAM, INC | | | 2,462.50 | |
| 802. Loan Discount % | to | | | | |
| 803. Appraisal Fee | to | | | | |
| 804. Credit Report | to | | | | |
| 805. Lender's Inspection Fee | to | | | | |
| 806. Mortgage Ins. App. Fee | to | | | | |
| 807. Assumption Fee | to | | | | |
| 808. YSP PAID BY LENDER | to FREEDOM MORTGAGE TEAM, INC | POC $985.00L | | | |
| 809. PROCESSING FEE | to FREEDOM MORTGAGE TEAM, INC | | | 954.00 | |
| 810. ADMIN FEE | to ARGENT MORTGAGE COMPANY, LLC | | | 175.00 | |
| 811. UNDERWRITING FEE | to ARGENT MORTGAGE COMPANY, LLC | | | 375.00 | |
| 812. TAX RELATED SERVICE FEE | to ARGENT MORTGAGE COMPANY, LLC | | | 70.00 | |
| 813. FLOOD SEARCH FEE | to ARGENT MORTGAGE COMPANY, LLC | | | 9.00 | |
| 814. | | | | | |
| 815. | | | | | |
| 816. | | | | | |
| 817. | | | | | |
| 818. | | | | | |
| 819. | | | | | |
| 820. | | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | |
| 901. Interest From 03/04/05 to 04/01/05 @ $ 36.97000/day ( 28 days %) | | | | 1,035.16 | |
| 902. Mortgage Insurance Premium for months to | | | | | |
| 903. Hazard Insurance Premium for 1.0 years to | | | | | |
| 904. | | | | | |
| 905. | | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | | |
| 1001. Hazard Insurance | 2.000 months @ $ 132.67 per month | | | 265.34 | |
| 1002. Mortgage Insurance | months @ $ per month | | | | |
| 1003. City/Town Taxes | months @ $ per month | | | | |
| 1004. County Taxes | 6.000 months @ $ 480.91 per month | | | 2,885.46 | |
| 1005. Assessments | months @ $ per month | | | | |
| 1006. | months @ $ per month | | | | |
| 1007. | months @ $ per month | | | | |
| 1008. Aggregate Escrow Adjustment | months @ $ per month | | | 0.00 | |
| **1100. TITLE CHARGES** | | | | | |
| 1101. Settlement or Closing Fee | to Law Title Insurance Agency, Inc -Naperville | | | 200.00 | |
| 1102. Abstract or Title Search | to | | | | |
| 1103. Title Examination | to | | | | |
| 1104. Title Insurance Binder | to | | | | |
| 1105. Document Preparation | to | | | | |
| 1106. Attorney's Fees | to | | | | |
| 1107. Attorney's Fees | to | | | | |
| (Includes above item numbers: | ) | | | | |
| 1108. Title Insurance | to Law Title Insurance Agency Inc -Naperville | | | 550.00 | |
| (Includes above item numbers: | ) | | | | |
| 1109. Lender's Coverage | $ | | | | |
| 1110. Owner's Coverage | $ | | | | |
| 1111. Reliance Policy Update Fee | to Law Title Insurance Agency, Inc - Naperville | | | 25.00 | |
| 1112. Package / Payoff Handling Fee | to Law Title Insurance Agency, Inc - Naperville | | | 40.00 | |
| 1113. Certificate of Release Service | to Law Title Insurance Agency, Inc - Naperville | | | 25.00 | |
| 1114. Seller Commitment Update Fee | Law Title Insurance Agency, Inc - Naperville | | | | |
| 1115. EPA Endorsement | Law Title Insurance Agency, Inc - Naperville | | | | |
| 1116. APM Endorsement | | | | | |
| 1117. | | | | | |
| 1118. | | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | |
| 1201. Recording Fees: Deed $ , Mortgage $ 47.00; Releases $ | | | | 47.00 | |
| 1202. City/County Tax/Stamps: Deed : Mortgage | | | | | |
| 1203. State Tax/Stamps: Revenue Stamps : Mortgage | | | | | |
| 1204. Subordination Agreement | Law Title Recording Account | | | | |
| 1205. Assignment of Mortgage | Law Title Recording Account | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301. Survey | to | | | | |
| 1302. Pest Inspection | to | | | | |
| 1303. Illinois State Policy Tax | to Law Title Insurance Agency, Inc - Naperville | | | 3.00 | |
| 1304. | | | | | |
| 1305. | | | | | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | | | 9,131.46 | |

Certified to be a true copy

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

|  |  |
|---|---|
| Borrower: | JOSE E. SALINAS and RUTH E. SALINAS |
| Lender: | ARGENT MORTGAGE COMPANY, LLC |
| Settlement Agent: | Law Title Insurance Agency, Inc - Naperville |
|  | (847)841-1127 |
| Place of Settlement: | 1814 GRANDSTAND PLACE |
|  | ELGIN, IL, 60123 |
| Settlement Date: | February 28, 2005 |
| Disbursement Date: | March 4, 2005 |
| Property Location: | 1716 NORTH BALDWIN AVENUE |
|  | WAUKEGAN IL 60085 |
|  | LAKE |
|  | 08-18-209-023 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
JOSE E. SALINAS

_____
RUTH E. SALINAS

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
Law Title Insurance Agency, Inc - Naperville
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# EXHIBIT E

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary   ☒ Final

LENDER: Argent Mortgage Company, LLC
1701 Golf Road
Rolling Meadows, IL 60008
(847)690-0517

Broker License: MB.

Borrowers: JOSE E SALINAS

Type of Loan: ADJUSTABLE RATE
Date: February 28, 2005

Address:   1716 N BALDWIN AVE
City/State/Zip:   WAUKEGAN, IL 60085

Loan Number:   0073754558 - 9701

Property:   1716 N BALDWIN AVE, WAUKEGAN, IL 60085

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments This amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 7.277 % | $ 293,311.36 | $ 191,404.34 | $ 484,715.70 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 36 | $1,124.55 | 05/01/2005 | | | |
| 323 | $1,371.09 | 05/01/2008 | | | |
| 1 | $1,369.83 | 04/01/2035 | | | |

**VARIABLE RATE FEATURE:**
☒ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**   You are giving a security interest in the property located at: 1716 N BALDWIN AVE, WAUKEGAN, IL 60085

**ASSUMPTION:**   Someone buying this property
☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**   You may obtain property insurance from anyone you want that is acceptable to Argent Mortgage Company, LLC

**LATE CHARGES:**   If a payment is late, you will be charged 5.000% of the overdue payment .

**PREPAYMENT:**   If you pay off your loan early, you
☐ may   ☒ will not   have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

| | | | |
|---|---|---|---|
| Borrower JOSE E SALINAS | Date 2/8/05 | Borrower RUTH E SALINAS | Date 2/8/05 |
| Borrower | Date 2/8/05 | Borrower | Date |

TIL1 (Rev 7/01)

# EXHIBIT F

## NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: February 28, 2005
LOAN NO.: 0073754558 - 970:
TYPE: ADJUSTABLE RATE

BORROWER(S): JOSE E SALINAS

ADDRESS: 1716 N BALDWIN AVE
CITY/STATE/ZIP: WAUKEGAN, IL 60085

PROPERTY: 1716 N BALDWIN AVE
WAUKEGAN, IL 60085

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

| DOCUMENT SIGNING DATE | ; or |
| --- | --- |
| 02/28/2005 | |

1. The date of the transaction, which is

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
Attn: Post Close Dept. 8th Floor
3 Park Plaza
Irvine, CA 92614

ATTN: Post Close Dept.
FAX: (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
| --- |
| 03/03/2005 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____     _____
SIGNATURE                                              DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____     _____     _____     _____
BORROWER/OWNER JOSE E SALINAS     Date     BORROWER/OWNER RUTH E SALINAS     Date

_____     _____     _____     _____
BORROWER/OWNER     Date     BORROWER/OWNER     Date

# NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: February 28, 2005
LOAN NO.: 0073754558 - 9701
TYPE: ADJUSTABLE RATE

BORROWER(S): JOSE E SALINAS

ADDRESS: 1716 N BALDWIN AVE
CITY/STATE/ZIP: WAUKEGAN,IL 60085

PROPERTY: 1716 N BALDWIN AVE
WAUKEGAN, IL 60085

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

| DOCUMENT SIGNING DATE | ; or |
|---|---|
| 02/28/2005 | |

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
Attn: Post Close Dept. 8th Floor
3 Park Plaza
Irvine, CA 92614

ATTN: Post Close Dept.
FAX: (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
|---|
| 03/03/2005 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____        _____
SIGNATURE                               DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____ 2/28/05    _____ 2/28/05
BORROWER/OWNER JOSE E SALINAS    Date      BORROWER/OWNER RUTH E SALINAS    Date

_____            _____
BORROWER/OWNER                   Date      BORROWER/OWNER                   Date

02/25/2005 10:34:11 AM

## NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: February 28, 2005
LOAN NO.: 0073754558 - 9701
TYPE: ADJUSTABLE RATE

BORROWER(S): JOSE E SALINAS

ADDRESS: 1716 N BALDWIN AVE
CITY/STATE/ZIP: WAUKEGAN, IL 60085

PROPERTY: 1716 N BALDWIN AVE
WAUKEGAN, IL 60085

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

| DOCUMENT SIGNING DATE |
|---|
| 02/28/2005 |

; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL
If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
Attn: Post Close Dept. 8th Floor
3 Park Plaza
Irvine, CA 92614

ATTN: Post Close Dept.
FAX: (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
|---|
| 03/03/2005 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____        _____
SIGNATURE                                DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____  2/28/05   _____  2/28/05
BORROWER/OWNER JOSE E SALINAS      Date     BORROWER/OWNER RUTH E SALINAS      Date

_____  2/28      _____  _____
BORROWER/OWNER                    Date     BORROWER/OWNER                     Date

1054-NRC (Rev 07/04)                                    02/25/2005 10:34:11 AM

# EXHIBIT G

## JOINT NOTIFICATION LETTER
## NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

JOSE E SALINAS                                          re: Loan Number 0073754558-9701
1716 N BALDWIN AVE
WAUKEGAN,IL 60085

re: Property located at 1716 N BALDWIN AVE, WAUKEGAN, IL 60085

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you is being assigned, sold or transferred from Argent Mortgage Company, LLC to Ameriquest Mortgage Company, effective February 28, 2005 .

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your Lender either send you this notice at least 15 days before the effective date of transfer, or provide it to you at closing. Your new servicer must also send you this notice no later than 15 days after the effective date of the transfer or after the closing.

Your Lender is Argent Mortgage Company, LLC. If you have any questions relating to the transfer of servicing from your Lender, call the Lender at the following toll free number: (800)309-7868 between 8:00 am and 5:00 pm (Pacific Time).

Your new servicer will be **Ameriquest Mortgage Company** .
The business address for your new servicer is:

| CORRESPONDENCE | PAYMENTS |
|---|---|
| P.O. Box 14131, | P.O. Box 51382, |
| Orange, CA 92863-1530 | Los Angeles, CA |

The toll-free telephone number of your new servicer is (800)430-5262. If you have any questions relating to the transfer of servicing to your new servicer, call Customer Service between 7:00 a.m. and 6:00 p.m. Pacific Time, Monday through Friday.

Your next loan payment is due on 05/01/2005. Send all payments on your loan to your new servicer.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your Lender before its due date may not be treated by the new loan servicer as late, and a fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address: Ameriquest Mortgage Company P.O. Box 14131, Orange, CA 92863-1530 .

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

LENDER: **Argent Mortgage Company, LLC**        February 28, 2005
                                                          ─────────────────
                                                          Date

NEW SERVICER: **Ameriquest Mortgage Company**        February 28, 2005
                                                          ─────────────────
                                                          Date

Service3.rtf (7/02)

# EXHIBIT H

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
### 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email: edcombs@aol.com
### www.edcombs.com

May 31, 2006

**BY MESSENGER**

Argent Mortgage Company, LLC
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

**BY MESSENGER**

Ameriquest Mortgage Company
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

**BY MESSENGER**

AMC Mortgage Services, Inc.
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

**BY CERTIFIED MAIL**

Ameriquest Mortgage Securities, Inc.
1100 Town & Country Road, Suite 1100
Orange, CA 92868

Re:     Notice of rescission, claim and lien, Jose E. Salinas, Juanita Salinas
        and Ruth Salinas, 1716 N. Baldwin Avenue, Waukegan, IL 60085,
        loan of Feb. 28, 2005

Ladies/Gentlemen:

Each of the above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than Argent Mortgage Company, LLC or Ameriquest Mortgage Securities, Inc., please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees in the manner indicated on May 31, 2006.

_____
Daniel A. Edelman