**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) | MDL No. 1715 |
| | ) | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO ALL INDIVIDUAL ACTIONS | ) | Centralized before Judge Marvin E. Aspen |

**ECLG PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**FIFTH MOTION OR REASSIGNMENT OF RELATED CASES;**
**ALTERNATIVELY, MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY**

The ECLG plaintiffs reply as follows to defendants' "Opposition To Reassignment of Certain Cases" (MDL Doc. No. #412) identified in Plaintiffs' Fifth Motion For Reassignment of Related Cases:

## I. INTRODUCTION

Defendants agree with plaintiffs that all five cases identified in plaintiffs' motion (1) are related to actions pending within this MDL proceeding and, therefore, that they belong in this MDL; and (2) that they will eventually end up in this MDL. That is to say, defendants do not oppose reassignment of any of the five the cases on the basis of any of the grounds set forth in LR40.4(c). (Defs' Resp., pp. 1-2; p. 2, ftnt. 1). Rather, defendants oppose reassignment of Clay and Freeberg only, and they do so solely on the contention that the Northern District of Illinois is an improper venue. (Defs' Resp., p 2). (Defendants' argument is wrong as a matter of law because it entirely ignores 28 U.S.C. § 1391(c), as explained below.)

However, defendants fail to understand that the dispute concerning venue is, itself, a common issue of fact under LR40.4(a)(2), one that constitutes yet another ground under

LR40.4(a)(2) that calls for the reassignment all five of these cases to a single judge. In Clay[1], Freeberg and other cases where venue is or soon will be at issue, defendants' position is that venue is improper primarily because defendant Ameriquest Mortgage Securities, Inc. ("AMS"), which plaintiffs have named as a defendant in these cases, does not do business in the Northern District of Illinois.[2] (However, as shown below, AMS has done at least $87 million worth of business within the Northern District of Illinois in the last three years.) Consequently, these and other cases in which defendants contest venue pend before numerous judges within the Northern District of Illinois, where the parties either are now or will soon brief the same venue issue in multiple cases. In addition, plaintiffs have now been granted leave to conduct document discovery relating to venue in two cases, Whitsett and Freeberg, and must seek the same opportunity in other cases.

This procedural situation is exactly what LR40.4 is intended to avoid: a waste of judicial time and effort, duplicative rulings and a risk of contradictory rulings and multiple on the same issue in the Northern District of Illinois and the potential for multiple appeals - all results which the 7th Circuit has complained about in recent years. See, e.g., Fairbanks Capital Corp. v. Jenkins, 2002 U.S. Dist. LEXIS 26297, *7 (N.D.Ill.); Smith v. Check-N-Go of Illinois, 200 F.3d 511, 513 n.* (7th Cir. 1999); Gibson v. Bob Watson Chevrolet-GEO, Inc., 112 F.3d 283 (7th Cir. 1997); Southmark Corp. V. Cagan, et al., 950 F.2d 416, 419 (7th Cir. 1991).[3] In the interest of

---

[1] Defendants have not yet filed a motion to dismiss in this action.

[2] However, plaintiffs note that defendants' "Opposition" (#412) also seems to imply that Ameriquest Mortgage Company and AMC Mortgage Services, Inc., do not do business in the Northern District of Illinois. If this is defendants' argument, it is entirely false, as demonstrated below.

[3] The Seventh Circuit, in Gibson v. Bob Watson Chevrolet-GEO, Inc., 112 F.3d 283 (7th Cir. 1997), commented as follows:

> **[The three suits before the Court on appeal] are among some fifteen almost identical class actions filed by the same law firm against such dealers. For unexplained**

achieving (1) uniform rulings on a common issue and (2) a "substantial savings of judicial time and effort," plaintiffs respectfully suggest that this Court should take a different approach and grant ECLG Plaintiffs' Fifth Motion To Reassign. Once the motion is granted, the Court should decide the common issue of venue. That would only call for one Judge, one exchange of discovery , one briefing schedule, and one ruling for all cases.

## II. VENUE IS PROPER IN THE NORTHERN DISTRICT OF ILLINOIS

Venue in this case is clearly proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1) in light of § 1391(c). Plaintiffs' complaints in Clay and Freeberg allege that all defendants have some interest in plaintiffs' loans. (Clay, ¶¶ 10-12, 16, 20-22; Freeberg, ¶¶ 10-16, 45, 54-56). Paragraph 2 of both complaints alleges that "Defendants transact business in the District and are deemed to reside here," meaning in the Northern District of Illinois.[4] Further, this allegation is assumed to be true for purposes of a motion to dismiss. When considering a motion to dismiss, the Court assumes as true all factual allegations contained in the complaint and makes all possible inferences in favor of the plaintiff. Gorski v. Troy, 929 F.2d 1183, 1186 (7th Cir. 1991).

Defendants are mistaken that plaintiffs have the burden of establishing that venue is

---

**reasons the cases, having initially been randomly assigned to different district judges in the Northern District of Illinois, were *not* reassigned to a single judge, as authorized by N.D. Ill. R. 2.31, but remained with the original judges, eleven of whom have ruled on motions to dismiss the complaint or to grant summary judgment for the defendant. Six have denied such motions and five, including [**3] the three whose rulings are brought to us by these consolidated appeals, have granted them.**

[4]Thus, defendants' slippery statements that, in these complaints, Ameriquest and AMC are/is "alleged to have been doing business in Michigan," are misleading and false. (Defs' Resp., pp. 2-3). In paragraph two of each complaint, plaintiffs clearly allege that all defendants do business in the Northern District of Illinois.

improper. (Defs' Resp., p. 3). Because plaintiffs filed here, venue is presumed to be proper, and "the party challenging venue bears the burden of establishing by a preponderance of the evidence that the case was incorrectly venued." In the Matter of: Peachtree Lane Associates, Ltd., 150 F.3d 788, 792 (7th Cir. 1998); Strickland v. Trion Group, Inc., 2006 U.S. Dist. LEXIS 85353, *7 (E.D. Wis.) ("Because the defendant must raise the issue of venue, I conclude that venue is appropriately treated as an affirmative defense and that the defendant bears the burden of showing that it is improper"); Andrade v. Chase Home Finance, LLC, 2005 U.S. Dist. LEXIS 32799, *6 (N.D. Ill.) ("When deciding a motion to transfer venue, the court must accept as true all of plaintiff's well-pleaded facts in the complaint, unless they are contradicted by affidavits or other appropriate evidence from the defendant"); and Moore's Federal Practice, at § 110.10[5][c] ("the defendant has the burden of establishing that venue is improper").

In their response to plaintiffs' motion, and in their motions to dismiss before other judges, defendants present no evidence whatsoever in support of their argument concerning venue. This alone dooms defendants' venue complaint.

More fundamentally, defendants' legal argument and summary of the applicable law completely ignore § 1391(c), which qualifies defendants to be sued in this venue under § 1391(b)(1). (Defs' Resp., p. 3). Under § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." See also 14D Wright, Miller & Cooper, Federal Practice and Procedure 3d (2007) § 3811.1 ("a corporation resides for venue purposes in every district in which it is subject to personal jurisdiction. Thus a corporation can have many residences"). Under 1391, venue is not limited to the district in which the claim arose or the witnesses reside. Rather, the federal venue statute also

permits a plaintiff to file suit in any "judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(b). This means that plaintiffs can file suit in any district in which all defendants reside, even if the claim arose elsewhere. See Kohler Co. v. Kohler Int'l, Ltd., 196 F.Supp.2d 690, 696 (N.D. Ill. 2002) ("General jurisdiction is proper when a defendant has 'continuous and systematic business contacts' with a state, and it allows a defendant to be sued there regardless of the subject matter of the lawsuit"); 17 Moore's Federal Practice, 3d Ed. (2006) at § 110.01[4][a] ("when more than one proper venue is available under the applicable venue statute, the plaintiff is entitled to choose the location in which to file").

In 1988, Congress amended the federal venue statute to make it clear that a corporate defendant will be deemed to reside, for venue purposes, in every district in which it is subject to personal jurisdiction. The result was 28 U.S.C. § 1391( c). See also Wright, Miller & Cooper, Federal Practice and Procedure 3d (2007) at § 3811.1. "This definition of corporate residence, created by a 1988 amendment, essentially equates venue and personal jurisdiction" Moore's Federal Practice, at § 110.03[4][b]. Thus, "[u]nder the current statute, a corporation can be sued in any district in which it would be subject to personal jurisdiction if the district were a state. Because personal jurisdiction must be satisfied in any suit, this amendment has the effect of nearly eliminating venue restrictions in suits against corporations." Wright, Miller & Cooper, at § 3802.

In Clay and Freeberg, Ameriquest, AMC and AMS (as well as Litton, HSBC and Deutsche Bank) are all corporations. Defendants' response and their filings in other cases do not dispute that. Further, all were, at the time of commencement of this action, subject to personal jurisdiction in the United States District Court for the Northern District of Illinois, Eastern Division.

That is because all three have "sufficient contacts" with this District in that all three do extensive business here, as shown below. Since jurisdiction in this action is not founded exclusively on diversity, pursuant to § 1391(b)(1) plaintiffs are permitted to bring the action in "a judicial district where any defendant resides, if all defendants reside in the same State...." Therefore, venue is proper in the Northern District of Illinois.

Defendants' main argument - not necessarily clear from its presentation - is that not all three defendants do business within the Northern District of Illinois. (Defs' Resp., p. 3)("First, all defendants do not reside in Illinois"). In particular, it is defendant Ameriquest Mortgage Securities, Inc. ("AMS"), that denies doing business here; elsewhere, Ameriquest Mortgage Company ("Ameriquest") and Ameriquest Mortgage Services, Inc. ("AMC"), have admitted, on the record, to doing business here. Nevertheless, plaintiffs present evidence below that all three defendants are subject to personal jurisdiction in the Northern District of Illinois.

However, more conclusive evidence of where defendants - especially AMS - do business lies exclusively in the hands of defendants themselves. In such a circumstance, it is only fair that plaintiff be allowed to take limited, document discovery. See Cent. States v. Phencorp Reinsurance Co., 440 F.3d 870 (7th Cir 2006) (district court abused its discretion in not allowing plaintiff discovery on issue of personal jurisdiction). Therefore, should the Court find plaintiffs' evidence below insufficient to deny defendants' motion, in the alternative plaintiffs respectfully requests that opportunity.

## III. AMERIQUEST, AMC AND AMS ALL DO BUSINESS HERE

**A. All Three Defendants Are § 1391(c) "Residents," I.e., They Are Subject to Personal Jurisdiction in the Northern District of Illinois, Eastern Division**

Ameriquest, AMC and AMS were subject to personal jurisdiction in the Northern District of Illinois, Eastern Division, at the time Clay and Freeberg were commenced (i.e., December 29, 2006 and December 5, 2006, respectively). Under § 1391(c), a corporate defendant resides in the District if its contacts with the district would be sufficient to subject it to personal jurisdiction in the district.

In these cases, these defendants had "sufficient contacts" within the District at the time of filing to subject them to personal jurisdiction here. As detailed below, all three do very substantial and ongoing business here. Also relevant is the fact that all three defendants are corporate affiliates of each other or have subsidiary relationships. The ultimate parent company of all three defendants is ACC Capital Holdings Corporation. (See Exhibit A).

**1. Defendant Ameriquest Does Business Here**

Within this corporate family, Ameriquest Mortgage Company is the entity that underwrites and originates mortgage loans to consumers such as plaintiff. (Exhibit A). Ameriquest does business here - tens if not hundreds of millions of dollars in business. Ameriquest has never once disputed that in any of the hundreds of cases that have been filed against it in the Northern District of Illinois. First, Ameriquest is registered with the Illinois Secretary of State to do business in the state of Illinois, as shown in Exhibit B. It uses National Registered Agents, Inc., 200 West Adams Street in Chicago, as its registered agent for service of process (Exhibit B). Second, Ameriquest, which ¶ 8 of plaintiffs' complaint alleges is the largest sub-prime, retail mortgage lender in the U.S., has originated and continues to originate thousands of loans in Illinois and in the

Northern District in particular. For example, in Cook County alone during February, 2006, the last full month for which records are available from LEXIS, Ameriquest recorded mortgages on 107 properties. See Exhibit C. Additionally, in Cook County during the first part of March, 2006 alone (the last partial month for which records are available from Lexis), Ameriquest recorded mortgages on 146 properties. See Exhibit D. These snapshot-in-time examples are just the very tip of iceberg.

Furthermore, until very recently, both Ameriquest and AMC maintained about 39 branch offices in Illinois, the vast majority of them located in the Northern District of Illinois, Eastern Division. See Exhibit E.

Thus, by making thousands of loans here, Ameriquest has certainly done substantial business in this forum. Consequently, pursuant to § 1391(c), it is evident that Ameriquest had more than sufficient contacts with the Northern District of Illinois at the approximate time this action was commenced.

**2. Defendant AMC Does Business Here**

AMC Mortgage Services, Inc., is the Ameriquest affiliate responsible for servicing many of the loans originated by Ameriquest. (See allegations at ¶¶ 9, 10 and 23 of plaintiffs' complaint). It also does business here. Typically, Ameriquest transfers the servicing rights to AMC following Ameriquest's closing. AMC, too, is registered with the Illinois Secretary of State to do business in the state of Illinois, as shown in Exhibit F. AMC also uses National Registered Agents, Inc., 200 West Adams Street in Chicago, as its registered agent for service of process (Exhibit F). AMC performs the servicing for thousands of mortgage loans originated in Illinois by Ameriquest. This means, specifically, that each month AMC receives, through the mail or otherwise, hundreds

or thousands of monthly mortgage payments - totaling hundreds of thousands or millions of dollars - from as many Illinois residents and households.

The mortgage for an Ameriquest-originated mortgage loan is not typically recorded in the name of the loan's servicer. Nevertheless, public records show that in Cook County alone in February, 2006, AMC recorded five mortgages in its name (see Exhibit G), while in Cook County alone in March, 2006, it recorded 10 mortgages in its name (Exhibit H).

In addition, a LEXIS search of combined Illinois real estate transactions (including deed transfers and mortgages) for selected counties shows that AMC was involved in 134 real estate transactions in Illinois in Cook, Dupage Kane, Lake, McHenry and Will counties (all contained within the Northern District of Illinois). The printed results of this search are attached in Exhibit I. As the Court can see, many of these transactions occurred in August, September, October and November of 2006, i.e., at the time of commencement of this action.

Until recently, AMC also maintained offices in the Chicago area. (See Exhibit E.).

Finally, in not one of the hundreds of cases filed against it in the Northern District of Illinois has AMC, like Ameriqueset, ever sought to contest the allegation that it does business here. (See, e.g., Exhibit J, ¶ 2)("AMC Mortgage Services, Inc., does not contest subject matter jurisdiction, personal jurisdiction, or venue").

Thus, by servicing hundreds or thousands of loans and involving itself in hundreds of real estate transactions in the Northern District of Illinois, AMC has clearly done substantial business in this forum. Thus, pursuant to § 1391(c), it is evident that AMC, too, had more than "sufficient contacts" with the Northern District of Illinois at the time this action was commenced.

**3. Defendant AMS Does Business Here**

Ameriquest Mortgage Securities, Inc., is the Ameriquest subsidiary or affiliate to which Ameriquest assigns or transfers the ownership interest in many of the loans it has originated. (See, e.g., Exhibit K, ¶ 11). In other words, AMS is in the business of holding title to mortgage loans made by Ameriquest Mortgage Company. (Id.; see also, allegations at ¶¶ 11, 24-25 of plaintiffs' complaint).

AMS does business in Illinois, as shown below. However, this fact is not easily proven without taking discovery because, unlike information about the loan originator and the loan servicer, which by law must be disclosed, there is no legal obligation to disclose information about the owner or holder of a mortgage loan, whether to the borrower or in any public record. Given that holders do not have offices that serve the public and that their identities are located behind-the-scenes, it is difficult - using public information alone - to prove exactly where such a defendant does business.

Though not registered to do business in the State, a LEXIS search of combined public records for selected counties in Illinois shows that AMS has been involved in 875 real estate transactions, primarily in Cook, Dupage Kane, Lake, McHenry and Will counties (all contained within the Northern District of Illinois). A sampling of the printed results of this search is attached hereto in Exhibit L. As the Court can see, the vast majority of these transactions were judicial foreclosure sales in which AMS held title to the loans prior to sale. This proves, first, that AMS owns and holds title to loans originated in Illinois (by Ameriquest), mortgaged by Illinois properties and where the mortgagors are Illinois residents. Second, it shows that AMS was not a passive holder

but that it actively engaged in hundreds of transactions in which real estate and money changed hands. It shows, third, that AMS is availing itself of Illinois state courts and the benefits of Illinois mortgage foreclosure proceedings to recover the cash value of the loans it holds in Illinois. As the Court can see, these transactions occurred throughout 2004, 2005 and 2006, proving that AMS held title to hundreds of loans in Illinois and that it performed hundreds of large business transactions in the State leading up to the time plaintiffs commenced this action. The average sales price (where such is listed) appears to be approximately $100,000. As a rough approximation, then, AMS has done $87 million worth of business in Illinois in approximately the last three years.

In addition, in Jones v. Ameriquest, et al., 05 C 0432 (N.D.Ill.), a case which went to summary judgment earlier this year, AMS admitted that "Ameriquest subsequently assigned ownership of the loan to defendant AMS" and that "AMS is the current holder or owner of the loan." (See Exhibit M, ¶ 15). Similarly, in no lawsuit in which Illinois plaintiffs have sued all Ameriquest, AMS and AMC in the Northern District of Illinois has AMS ever once contested venue or personal jurisdiction. (See, e.g., Exhibit M, ¶ 2; Exhibit N, ¶ 2; Exhibit O, ¶ 2)("AMS does not contest subject matter jurisdiction, personal jurisdiction, or venue"). That is because it has always considered itself to do business here.

Consequently, AMS' contacts with Illinois and this District are more than sufficient to subject it to personal jurisdiction here. To summarize its "contacts" with the Northern District of Illinois: Ameriquest purposefully assigned title to loans it made to Illinois residents, in Illinois and with Illinois properties as security, to its wholly-owned subsidiary, AMS. AMS, for its part, purposefully purchased or accepted title to hundreds of loans to Illinois residents mortgaged by

Illinois property. (Note that these transfers are really the passing of ownership from the right to the left hands of the same company). Further, as shown above and in Exhibit K, in hundreds of cases it also re-sold properties to Illinois buyers in order to receive payment on the notes it held.

**a. Plaintiffs' Motion For Limited Discovery**

Plaintiffs in Clay and Freeberg should now be given an opportunity to take limited discovery. See Cent. States v. Phencorp Reinsurance Co., 440 F.3d 870 (7th Cir 2006) (district court abused its discretion in not allowing plaintiff discovery on issue of personal jurisdiction). Plaintiffs believe that the sale of these loans was done pursuant to written policies or agreements but, as explained above, because the information is not publically available, plaintiffs cannot prove this without limited discovery. Plaintiffs would request, among other things, from defendants:

(1) documents showing real estate transactions in Illinois to which AMS was a party;

(2) contracts with agents to sell real estate in Illinois;

(3) all contracts between Ameriquest and AMS and between AMC and AMS; and

(4) a list of all loans AMS had an ownership interest in Illinois at the time this lawsuit was filed;

(5) information about AMS bank accounts in Illinois; and

(6) AMS' agreements for insurance of properties located in Illinois. Plaintiffs may also wish to take one 30(b)(6) deposition.

By purchasing hundreds of loan obligations of persons and properties located here and re-selling properties to Illinois purchasers, AMS has done business in this forum.

Furthermore, plaintiffs allege and has shown that Ameriquest and AMS created and accepted continuing obligations between plaintiff and AMS when Ameriquest assigned or transferred the ownership interest in the loan to AMS to hold (and the servicing rights to AMC). In these circumstances, if two of the three, related corporate entities do business in Illinois, then the third (i.e., AMS) surely also does business in Illinois. They are all tentacles of the same corporate octopus.

### B. The Court Should Take Judicial Notice That No Defendant, Including AMS Mortgage Securities, Inc., Has Ever Contested Personal Jurisdiction In The Northern District Of Illinois

Plaintiffs respectfully request that, pursuant to F.R.E. Rule 201, the Court take judicial notice of the scores of pending cases against defendants that are pending in the Ameriquest MDL proceeding in which (A) the case was originally filed in the Northern District of Illinois and (B) not a single defendant, including AMS, has contested either personal jurisdiction or venue. Because AMS has never contested personal jurisdiction, it is apparent that it does business here. (See, e.g., Exhibit M, ¶ 2; Exhibit N, ¶ 2; Exhibit O, ¶ 2)("AMS does not contest subject matter jurisdiction, personal jurisdiction, or venue").

### C. Previously, Defendants Actively Stipulated To Venue In The Northern District of Illinois In At Least 19 Other Cases (now in the MDL) Involving Loans Originated In States Other Than Illinois

Defendants Ameriquest and AMC have never previously objected to venue in the Northern District of Illinois, even though at least 19 cases were filed against them recently in the District that involve plaintiffs, loans, and properties located outside of the District and, in nearly all cases, in another state. In all of cases on the list contained in attached Exhibit Q, plaintiffs' loan transactions occurred in the states indicated, and plaintiffs filed their cases in this District, naming

both Ameriquest and AMC as defendants (except for Jewell, in which Ameriquest is the only defendant). Neither Ameriquest nor AMC filed an objection to venue in any of these cases. Moreover, not only did Ameriquest and AMC not object to venue in these cases; they consented and stipulated to have these cases reassigned to the Ameriquest MDL proceeding! For instance, Exhibit P is a stipulation that Ameriquest's, AMC's and AMS' counsel drafted and executed for the reassignment of six of the cases listed on Exhibit Q - Geiss, Wessel, Rodriguez, Dougherty, Grabowski and Dearden. Moreover, in some instances, defendants themselves were the movants in motions to reassign that included cases on the list above.

If defendants are so concerned about venue now, why didn't they object or refuse to stipulate then to the re-assignment of cases that were filed in the Northern District of Illinois but that involve loan transactions in other states? Defendants' active consent then suggests that defendants' objection now is less than bona fide.

**D. Defendants' Arguments That This Is An Inconvenient Forum Are Wrong**

Defendants also make an argument, pursuant to 28 U.S.C. § 1404, that the Northern District of Illinois is an inconvenient forum. For the following reasons, this argument is also specious. First, this case will end up in the Ameriquest MDL proceeding anyway, whatever the outcome of defendants' present motion. As noted, defendants have already stated their agreement with this point. (Defs' Resp., pp. 2). This case is substantively no different from scores of other cases that have been transferred or reassigned as related to cases within the MDL proceeding. Granting defendants' motion would simply result in greater delay and (in the event the Court were

to dismiss, rather than simply transfer, the case, which would require re-filing) greater cost to all parties.

Second, defendants simply do not provide the sort of information justifying a transfer because of convenience of witnesses. Normally, a 28 U.S.C. § 1404 motion requires the movant to name the witnesses and show that they are not under the parties' control. Defendants do nothing of the sort.

Third, the Truth-In-Lending violations alleged by the plaintiffs in Clay and Freeberg present issues that can be decided simply by reference to plaintiffs' loan documents alone. (Clay's complaint, ¶¶ 24-28; Freeberg/Rowan's complaint, ¶¶ 67-72). Any one of these alleged violations, if proven, is a ground for rescission of the loan. Because plaintiffs could prevail simply by proving a single document violation, defendants' arguments about the location of the transaction and the need for occurrence witnesses are especially weak.

Fourth, venue in the Northern District of Illinois does not prevent the parties from taking any pre-trial discovery from parties and witnesses located in Michigan or Ohio. F. R. C. P. 45(b)(2) expressly permits a subpoena to be served "at any place without the district that is within 100 miles of the place of the deposition, hearing trial, production [of documents] or inspection specified in the subpoena...." Attorneys for the parties would have to travel to Michigan to take depositions and obtain documents from non-party witnesses. Any depositions of parties or of agents or employees of parties (who are under the parties' control) would have to take place in the Northern District of Illinois, unless they occurred elsewhere by agreement. Defendants' memorandum ignores these points.

Fifth, trial could occur in the Northern District of Illinois. Defendants are simply mistaken that, as they have argued elsewhere on the same issue, "the parties do not enjoy [trial] subpoena power over Michigan witnesses from this Court." From the vantage point of logic alone, if defendants were correct, then it would be impossible for U.S. District Courts to conduct meaningful evidentiary trials in a complex and highly mobile economy in which divisions of labor, material witnesses and documents are widely disbursed across state lines. Moreover, F. R. C. P. 45(c)(3)(B)(iii) permits the Court to order non-parties to travel more than 100 miles to appear if the party issuing the subpoena shows "a substantial need for the testimony or material that cannot be otherwise met without undue hardship" and assures that the person subpoenaed will be reasonably compensated.

Finally, in the unlikely event that this is case is set for trial, there is no reason why the action cannot be transferred for trial to the Eastern District of Michigan or the Northern or Southern District of Ohio. This Court could simply retain the option of a possible transfer of venue for a later date, if and only if a trial should be necessary. Defendants ignore this point as a possible accommodation or solution.

## IV. CONCLUSION

For the reasons stated above, the Court should grant in full plaintiffs' motion for reassignment. The Court should then permit plaintiffs to take limited document discovery, as described above, before ruling on the venue contest that is common to Clay, Freeberg and other cases that, all parties agree, belong in the MDL.

Respectfully submitted,

s/ Al Hofeld, Jr.
Al Hofeld, Jr.

Daniel A. Edelman
Cathleen M. Combs
Jim O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)