# EXHIBIT 1

## PART 1

RECEIVED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JAN 26 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

SONJA DAVIS and DONYA DAVIS,                )
                                            )
            Plaintiffs,                     )
                                            )
    v.                                      )
                                            )
AMERIQUEST MORTGAGE COMPANY                 )
and DOES 1-5,                               )
                                            )
            Defendants.                     )

07C 0525

JUDGE RONALD GUZMAN

MAGISTRATE JUDGE KEYS

**JURY DEMANDED**

1855e
(3)

## COMPLAINT

## INTRODUCTION

1.    Plaintiffs Sonja Davis and Donya Davis bring this action against a "subprime" mortgage lender and its affiliates to (A) rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226; and (B) to recover damages under state law.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), 1367 (supplemental jurisdiction), and 15 U.S.C. §1640 (TILA).   Defendants transact business in the District and are deemed to reside here.

## PARTIES

3.    Plaintiffs Sonja Davis and Donya Davis are husband and wife who own and reside in a home at 1634 S. 18th Ave., Maywood, IL 60153.

1

4.     Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, Inc., 200 W. Adams, Chicago, IL 60606

5.     Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6.     Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

7.     Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8.     During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

9.     Defendant Does 1-5 represent the last owners and servicers of the loan. (Actual ownership is rarely, if ever, a matter of public record.)

## FACTS RELATING TO PLAINTIFF

10.     Plaintiffs are ordinary consumers. Sonja Davis is employed as a registered nurse, and Donya Davis is employed as a security guard.

11.     At the time relevant to this action, plaintiff Sonja Davis used her maiden name, Sonja Matthews. She has since adopted her husband's last name Davis.

12.     Approximately one month prior to December 14, 2004, plaintiffs applied

2

for a refinance mortgage loan with Ameriquest Mortgage Company.

13.     Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

14.     At all relevant times, plaintiffs spoke to Ameriquest employee William Serenko, Jr.

15.     Throughout the month between plaintiffs' initial call and closing, Serenko called plaintiffs every day or every other day to pressure them into accepting the loan.

16.     Serenko and/or Ameriquest wrote on the typed, pre-printed loan application he or it prepared (Exhibit A) that plaintiffs' house was built in 1960, that plaintiffs had purchased the house for $175,000, that Sonja Davis' gross monthly income was $2,982.58 and that Donya Davis' gross monthly income was $2,745.00. In actuality, plaintiffs' house was built in 1920, they purchased it for $154,500, and each plaintiff's gross monthly income was slightly more than $2,000. Plaintiffs gave Serenko accurate information when they spoke to him.

17.     Serenko and/or Ameriquest then arranged to have plaintiffs sign an application containing false information at closing. The closing took place in plaintiffs' home with Tia Martin, an employee of a title company. Plaintiffs were presented with a stack of paper consisting of scores of documents and hundreds of printed pages. Martin rushed through them without any explanation of the various documents. Under these circumstances, plaintiffs could not review each line for accuracy.

18.     A document entitled Borrower's Acknowledgement of Final Loan Terms (Exhibit B) lists plaintiffs' original requested interest rate as 7.55% and their original annual percentage rate ("APR") as 7.943%.

3

19.     On November 17, 2004, Ameriquest mailed to plaintiffs (a) a Good Faith Estimate dated November 11, 2004 (Exhibit C) listing their interest rate as 8.95% and (b) a preliminary Truth in Lending statement with the same date (Exhibit D) listing the APR as 9.068%.

20.     The loan was closed on December 14, 2004.  Immediately before closing, the terms were changed to plaintiffs' detriment, as shown by Exhibit B.  The interest rate at closing was listed as 9.95%, and the APR was 9.816%.

21.     The following are documents relating to the loan:

    a.      A note, Exhibit E;

    b.      A mortgage, Exhibit F;

    c.      An "itemization of settlement charges," Exhibit G;

    d.      A final Truth in Lending statement, Exhibit H;

    e.      The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit I.  All copies delivered were left blank.

    f.      A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, Exhibit J

22.     Plaintiffs were charged an $850.25 "loan discount," Exhibit G, line 802.

23.     Ameriquest undertook and represented, in the document attached as Exhibit K and delivered to plaintiffs at the closing, that the payment of a "loan discount" would reduce plaintiffs' interest rate.

24.     Plaintiffs did not receive a discounted rate, as shown by Exhibit B.

25.     At closing, plaintiffs complained that their interest rate was surprisingly

4

high. Martin replied that this was the best rate that Ameriquest could offer.

26. Ameriquest raised plaintiffs' rate despite having already gathered sufficient information to underwrite the loan at the time it prepared the Good Faith Estimate (Exhibit C) and preliminary Truth in Lending statement (Exhibit D).

## COUNT I – TRUTH IN LENDING ACT

27. Plaintiffs incorporate paragraphs 1-26. This claim is against all defendants.

## RIGHT TO RESCIND

28. Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

> (a) **Consumer's right to rescind.**
>
> (1) **In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**
>
> (2) **To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**
>
> (3) **The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire**

3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

## GROUNDS FOR RESCISSION

29.     In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of

15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

30.     Ameriquest did not deliver to plaintiffs two completed notices of the right to cancel on the Federal Reserve Board form.

31.     The delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

32.     Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

33.     Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

34.     Notice of rescission has been given to defendants. A copy is attached as Exhibit L.

35.     The loan has not been rescinded.

36.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

37.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

7

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant for:

    a.    A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

    b.    Statutory damages for the underlying disclosure violation;

    c.    If appropriate, statutory damages for failure to rescind;

    d.    Attorney's fees, litigation expenses and costs.

    e.    Such other or further relief as the Court deems appropriate.

## COUNT II – BREACH OF CONTRACT

38.    Plaintiffs incorporate paragraphs 1-26.

39.    Defendant Ameriquest contracted and undertook to provide a discounted interest rate if plaintiffs paid a loan discount fee.  Exhibit K.

40.    Plaintiffs paid the fee (Exhibit G, line 802) but did not receive a discounted rate (Exhibit B)

41.    Ameriquest thereby breached its agreement.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiff and against defendant for:

    a.    Appropriate damages;

    b.    Costs.

    c.    Such other or further relief as the Court deems appropriate.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

42.    Plaintiffs incorporate paragraphs 1-26.

43.     Ameriquest engaged in unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by intentionally inflating plaintiffs' combined, gross monthly income from slightly over $4,000 to $5,727.64.

44.     Defendant engaged in unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2 by engaging in "bait and switch" practices through originally requesting for plaintiffs a 7.55% interest rate after obtaining enough information to fully underwrite the loan, then increasing plaintiffs' rate to 8.95% on their Good Faith Estimate, then increasing plaintiffs' rate to 9.65% immediately before closing.

45.     Plaintiffs were induced to take out a loan from defendant by means of these and other misrepresentations and deceits.

46.     Defendant made these representations in the course of trade and commerce.

47.     Plaintiffs have suffered multiple injuries as a result of defendant's misrepresentations.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant for:

a.     Compensatory and punitive damages;

b.     Attorney's fees, litigation expenses and costs; and

c.     Such other or further relief as the Court deems appropriate.

_____
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC

9

120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiffs demand trial by jury.

_____
Daniel A. Edelman

T:18556\Pleading\Complaint_Pleading.wpd

# EXHIBIT A

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided ( and the appropriate box checked) when ☒ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☒ Conventional ☐ Other (explain): ☐ FHA ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number 0100970763 |
|---|---|---|---|

| Amount $170,050.00 | Interest Rate 9.650 % | No. of Months 360 | Amortization Type: ☐ Fixed Rate ☐ Other (explain): ☐ GPM ☒ ARM (type): |
|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 1634 South18th Avenue, Maywood, IL 60153 | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) | Year Built 1960 |
|---|---|

| Purpose of Loan | ☐ Purchase ☐ Construction ☒ Refinance ☐ Construction-Permanent ☐ Other (explain): | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| 2003 | $175,000.00 | $ 0.00 | | Cost: $ 0.00 |

| Title will be held in what Name(s) Sonja M Matthews and Donya Davis, Her Husband, As Tenants by The Entirety | Manner in which Title will be held | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

EQUITY IN SUBJECT PROPERTY

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Sonja Matthews | Co-Borrower's Name (include Jr. or Sr. if applicable) Donya Davis |

| Social Security Number 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 | Home Phone (incl. area code) (708)345-8410 | DOB(MM/DD/YYYY) 11/15/1972 | Yrs. School 12 | Social Security Number 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 | Home Phone (incl. area code) (708)345-8410 | DOB(MM/DD/YYYY) 10/19/1965 | Yrs. School 12 |
|---|---|---|---|---|---|---|---|

| ☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 ages | ☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. 0 ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent No. Yrs. 1 ..4 South 18th Avenue Maywood,IL 60153 | Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 1 No. Yrs. 1634 South18th Avenue Maywood,IL 60153 |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. 1634 S 18TH AVE MAYWOOD,IL 60153 | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer ☐ Self Employed Maxim Health Care | Yrs. on this job 2 Yrs. employed in this line of work/profession | Name & Address of Employer ☐ Self Employed US Government | Yrs. on this job 1 Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business RN | Business Phone (incl. area code) | Position/Title/Type of Business Guard | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed Levy | Dates (from - to) 01/01/1900 - 01/01/1900 |
|---|---|---|---|
| | Monthly Income $ | , | Monthly Income $ 0.00 |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business Guard | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income | | Monthly Income $ |

| ..tion/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

0100970763

| Borrower's cell | Borrower's pager |
|---|---|
| Co-Borrower's cell | Co-Borrower's pager |

00000100970763060590501

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 2,982.58 | $ 2,745.06 | $ 5,727.64 | Rent | $ 0.00 | |
| Overtime | 0.00 | 0.00 | 0.00 | First Mortgage (P&I) | 1,436.75 | $ 1,448.52 |
| B____s | 0.00 | 0.00 | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| ____sions | 0.00 | 0.00 | 0.00 | Hazard Insurance | 25.00 | 25.00 |
| Dividends/Interest | 0.00 | 0.00 | 0.00 | Real Estate Taxes | 25.00 | 25.00 |
| Net Rental Income | 0.00 | 0.00 | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 2,982.58 | $ 2,745.06 | $ 5,727.64 | Total | $ 1,486.75 | $ 1,498.52 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|
| B/C | $ |
| *** SEE ADDENDUM *** | |
| | |
| | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also. Completed [ ] Jointly [X] Not Jointly

| ASSETS<br>Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| | | Name and address of Company | $ Payment/Months | $ |
| List checking and savings accounts below | | AMCORE BANK N A | 250.00 | 3,983.00 |
| Name and address of Bank, S&L, or Credit Union | | 501 7TH ST | 16 | |
| Vested 401k Retirement · Aggregated | | | | |
| | | ROCKFORD,IL 61104 | | |
| | | Acct. no. 6050727 | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | $ |
| | $ 0.00 | HHLD BANK | [55.00] | [1,837.00] |
| Name and address of Bank, S&L, or Credit Union | | 1441 SCHILLING PLACE | 34 | |
| Checking/Savings · Aggregated | | | | |
| | | SALINAS,CA 93901 | | |
| | | Acct. no. 945001641569 | | |
| | | Name and address of Company | $ Payment/Months | $ |
| __o. | 10.00 | TOYOTA MOTOR CREDIT | 633.00 | 18,970.00 |
| Name and address of Bank, S&L, or Credit Union | | 1111 W 22ND ST STE 420 | 30 | |
| Vested 401k Retirement · Aggregated | | | | |
| | | OAK BROOK,IL 60523 | | |
| | | Acct. no. 70400461697350001 | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | $ |
| | 0.00 | CHASE MANHATTAN MTGE | [1,436.00] | [150,632.00] |
| Name and address of Bank, S&L, or Credit Union | | 3415 VISION DR | 105 | |
| Checking/Savings · Aggregated | | | | |
| | | COLUMBUS,OH 43219 | | |
| | | Acct. no. 1793535980 | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | $ |
| | 10.00 | SM SERVICING | [95.00] | [8,203.00] |
| Stocks & Bonds (Company name/ number & description) | $ | PO BOX 9500 | 87 | |
| /0 | 0.00 | | | |
| /0 | 0.00 | WILKES BARRE,PA 18773 | | |
| | | Acct. no. 347782691102F | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ 0.00 | NICOR GAS | 12.00 | 407.00 |
| Face amount: $ 0.00 | | 1844 FERRY ROAD | 34 | |
| Subtotal Liquid Assets | $ 20.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 200,000.00 | NAPERVILLE,IL 60563 | | |
| | | Acct. no. 229931435031103 | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | SALLIE MAE 3RD PTY L | 95.00 | 8,203.00 |
| | | 1002 ARTHUR DR | 87 | |
| Automobiles owned (make and year) | $ | | | |
| | | LYNN HAVEN,FL 32444 | | |
| | | Acct. no. 3477826911026 | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 990.00 | |
| Total Assets a. | $ 200,020.00 | Net Worth (a minus b) ► $ 168,457.00 | Total Liabilities b. | $ 31,563.00 |

0100970763

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

VMP®-21N (0305)

0000010097076306059905O2

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 1634 South18th Avenue<br>M____ood, IL 60153 | H | SFR | $ 200000 | $ 150632 | $ 0 | $ 1436 | $ 140 | $ 0 |
| | | | | | | | | |
| | | | | | | | | |
| Totals | | | $ 200000 | $ 150632 | $ 0 | $ 1436 | $ 140 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ 0.00 |
| b. | Alterations, improvements, repairs | 0.00 |
| c. | Land (if acquired separately) | 0.00 |
| d. | Refinance (incl. debts to be paid off) | 153,951.75 |
| e. | Estimated prepaid items | 674.40 |
| f. | Estimated closing costs | 3,184.00 |
| g. | PMI, MIP, Funding Fee | 0.00 |
| h. | Discount (if Borrower will pay) | 850.26 |
| i. | Total costs (add items a through h) | 158,660.41 |
| j. | Subordinate financing | 0.00 |
| k. | Borrower's closing costs paid by Seller | 0.00 |
| l. | Other Credits (explain) | |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 170,050.00 |
| n. | PMI, MIP, Funding Fee financed | 0.00 |
| o. | Loan amount (add m & n) | 170,050.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -11,389.59 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|
| | | Yes | No | Yes | No |
| a. | Are there any outstanding judgments against you? | | X | | X |
| b. | Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. | Are you a party to a lawsuit? | | X | | X |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | X |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | X |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. | Is any part of the down payment borrowed? | | X | | X |
| i. | Are you a co-maker or endorser on a note? | | X | | X |
| j. | Are you a U.S. citizen? | X | | X | |
| k. | Are you a permanent resident alien? | | X | | X |
| l. | Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | X | |
| m. | Have you had an ownership interest in a property in the last three years? | X | | X | |
| | (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| | (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) the Lender, its agents, brokers, insurers, servicers, successors or assigns may retain the original or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information. | CO-BORROWER | ☐ I do not wish to furnish this information. |
|---|---|---|---|
| **Ethnicity:** | ☐ Hispanic or Latino ☐ Not Hispanic or Latino | **Ethnicity:** | ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| **Race:** | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | **Race:** | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| **Sex:** | X Female ☐ Male | **Sex:** | ☐ Female X Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | William Serenko Jr. | Ameriquest Mortgage Company. |
| ☐ Face-to-face interview | Interviewer's Signature | One Westbrook Corporate Center, # 420 |
| ☐ Mail | Date | Westchester, IL 60154 |
| X Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | (714)541-9960 | |

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

**Continuation Sheet/Residential Loan Application**

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>Matthews, Sonja | Agency Case Number: |
|---|---|---|
| | Co-Borrower:<br>Davis, Donya | Lender Case Number:<br>0100970763 |

fully understand that it is a Federal crime punishable by fine or imprisonment, or both , to knowingly make any false statements concerning any of the above facts applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

0100970763



VMP®-21N (0305)

0000010097076306059905504

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

# EXHIBIT B

Ameriquest Mortgage Company
One Westbrook Corporate Center, # 420
Westchester, IL 60154

(708)492-0628

# BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

Sonja Matthews
Donya Davis

Date: December 14, 2004

Notice: [X] Delivered    [ ] Mailed

Loan Number: 0100970763 - 7301

Description of Credit Request:

1634 South 18th Avenue
Maywood, IL 60153

[X] 1st Trust Deed/Mortgage    [ ] 2nd Trust Deed/Mortgage

[ ] Other:

Property Address: 1634 South18th Avenue

Maywood, IL 60153                County of COOK

## TYPE OF TRANSACTION:

[ ] Purchase    [X] Refinance    Other _____

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [ ] Fixed Rate Loan  [X] Adjustable Rate Loan | [ ] Fixed Rate Loan  [X] Adjustable Rate Loan |
| Amount Financed: $ 177,632.41 | Amount Financed: $ 167,144.19          * |
| Settlement Charges: $ 7,949.59 | Settlement Charges: $ 4,528.81          * |
| (Includes all Prepaid Finance Charges) | (Includes all Prepaid Finance Charges) |
| Loan Amount: $ 184,907.00 | Loan Amount: $   170,050.00 |
| Annual Percentage Rate: 7.943        % | Annual Percentage Rate: 9.816        %* |
| Term:          360 | Term:          360 |
| Initial Interest Rate: 7.550        % | Initial Interest Rate: 9.650        % |
| Margin:      5.000        % | Margin:      5.000        % |
| Prepayment Penalty:  [ ] YES  [X] NO | Prepayment Penalty:  [ ] YES  [X] NO |

Borrower(s) and Ameriquest Mortgage Company hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

_____  Date _____
Borrower  Sonja Matthews

_____  Date _____
Borrower  Donya Davis

_____  Date _____
Borrower

_____  Date _____
Borrower

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION; EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.


00000100970763040650101

STMTCO (Rev. 3/99)

# EXHIBIT C

# GOOD FAITH ESTIMATE

Loan Number  0100573864 - 7301
Lender:  Ameriquest Mortgage Company

Address: One Westbrook Corporate Center, # 420
     Westchester, IL 60154
Applicant(s):  Marie Davis  Donya Davis

Property Address: 1634 S. Eighth  Ave.
Maywood, IL 60153

Sales Price:  0.00
Base Loan Amount:  162,043.00
Total Loan Amount:  162,043.00
Type of Loan:  ADJUSTABLE RATE
Date Prepared:  November 11, 2004
Rate:  8.950 %    Term:  360  Months
Broker:

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan.  The fees listed are estimates - the actual charges may be more or less.  Your transaction may not involve a fee for every item listed.  The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A Settlement Statement that you will be receiving at settlement.  The HUD-1 or HUD-1A Settlement Statement will show you the actual cost for items paid at settlement.  The loan terms and fees may change based on the information gathered during the underwriting and loan approval process or as a result of negotiations between you and the Lender.

" L" designates those costs to be paid outside of closing by Lender.   "S" designates those costs to be paid by Seller   * Paid Outside of Closing

| 800 ITEMS PAYABLE IN CONNECTION WITH LOAN: | |
|---|---|
| 801 Loan Origination Fee (  %) | |
| 802 Loan Discount Fee (  %) | |
| 803 Appraisal/Property Valuation | |
| 804 Credit Report $  to $ | |
| 805 Lender's Inspection Fee | |
| 806 Mortgage Insurance Application Fee | |
| 807 Assumption Fee | |
| 808 Yield Spread Premium to Broker | |
| 809 | |
| 810 Tax Related Service Fee | $70.00 |
| 811 Flood Search Fee | $16.00 |
| 812 Lender's Processing Fee | $626.00 |
| 813 Admin to Ameriquest Mortgage | $239.00 |
| 814 Doc Prep Fee to | |
| 815 Credit Report Fee paid to Broker | |
| 816 Origination Fee to broker (  %) | |
| 817 Application Fee to Ameriquest | $360.00 |
| 818 Underwriting Fee to Broker | |
| 819 Service Provider Fee to | |
| 820 Processing Fee to Broker | |
| 821 Underwriting Fee to Lender | |

| 900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | |
|---|---|
| 901 Interest for 10 days @ $39.73 per day | $397.30 |
|     Mortgage Ins Premium | |
|     Hazard Ins. Premium | |
| 904 Flood Ins. Premium | |

| 1000 RESERVES DEPOSITED WITH LENDER: | |
|---|---|
| 1001 Haz Ins Prem | months @ $ |
| 1002 Mortgage Ins | months @ $ |
| 1003 Earthquake Ins | months @ $ |
| 1004 Cnty Prop Taxes | months @ $ |
| 1005 Annual Assmts | months @ $ |
| 1006 Flood Ins | months @ $ |
| 1007 Windstorm Ins | months @ $ |
| 1008 | |

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | |
|---|---|
| Down payment | |
| Est. Closing Costs | $2,386.00 |
| Est. Prepaid Items/Reserves | $397.30 |
| OTHER  POC Borrower | $0.00 |
| TOTAL EST. FUNDS NEEDED TO CLOSE | $2,783.30 |
| TOTAL FEES PAID BY LENDER | $0.00 |

| 1100 TITLE CHARGES: | | | |
|---|---|---|---|
| 1101 Settlement or Closing Fee  to | | | |
| 1102 Abstract or Title Search  to | | | |
| 1103 Title Examination | | | |
| 1104 Title Insurance Binder | | | |
| 1105 Document Preparation Fee | | | |
| 1106 Notary Fees | | | |
| 1107 Attorney Fees | | | |
| 1108 Title Insurance $570.00 to $720.00 | | | $600.00 |
| 1109 | | | |
| 1110 | | | |
| 1111 Settlement/Disbursement Fee | | | |
| 1112 Escrow Fee | | | |

| 1200 GOVERNMENT RECORDING AND TRANSFER CHARGES: | |
|---|---|
| 1201 Recording Fees: | $75.00 |
| 1202 City/County Tax/Stamps: | |
| 1203 | |
| 1204 | |
| 1205 | |

| 1300 ADDITIONAL SETTLEMENT CHARGES: | |
|---|---|
| 1301 Demand | |
| 1302 Pest Inspection | |
| 1303 Survey | |
| 1304 Staff Appraiser Fee | $400.00 |
| 1305 Reconveyance Fee | |
| 1306 | |
| 1307 Apprs/Prop Val Fee to | |
| 1308 Courier Fee | |
| TOTAL ESTIMATED SETTLEMENT CHARGES | $2,783.30 |
| TOTAL SETTLEMENT CHARGES PAID BY LENDER | $0.00 |

| TOTAL ESTIMATED MONTHLY PAYMENT | |
|---|---|
| Principal & Interest | $1,298.01 |
| Real Estate Taxes | |
| Flood & Hazard Insurance | |
| Mortgage Insurance | |
| TOTAL MONTHLY PAYMENT | $1,298.01 |

THIS SECTION TO BE COMPLETED BY LENDER ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED.  Use of the particular provider is required and the estimate is based on charges of the provider.  If a particular provider is not mentioned, a provider will be required from a lender approved list.

| ITEM  NAME OF PROVIDER | ADDRESS OF PROVIDER | TELEPHONE | NATURE OF RELATIONSHIP |
|---|---|---|---|
| 803  Appraisal Repeated Use | | | Unaffiliated/Repeated Use |
| 804  Credit Repeated Use | | | Unaffiliated/Repeated Use |
| 810  Fidelity National Tax Service | 468 N. Rosemead Blvd., Pasadena, CA 91107 | 800-969-9724 | Unaffiliated/Used 100%/Tax |
| 811  First American Flood Data Service | 11902 Burnet Rd, Ste 200, Austin, TX 78758 | 800-447-1772 | Unaffiliated/Used 100%/Flood |
| 1101 Closing Agent Repeated Use | | | Unaffiliated/Repeated Use |
| 1108 Title Company Repeated Use | | | Unaffiliated/Repeated Use |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA).  Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase  residential real property and the Lender will take a first lien on the property.  The undersigned acknowledges receipt of the booklet "Settlement Costs", and the Consumer Handbook on ARM Mortgages, if applicable.

| | |
|---|---|
| Applicant  Marie Davis      Date | Applicant  Donya Davis      Date |
| Applicant      Date | Applicant      Date |



# EXHIBIT D

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

[X] Preliminary   [ ] Final

:NDER:Ameriquest Mortgage Company
One Westbrook Corporate Center, # 420
Westchester, IL 60154
(708)492-0628

Broker License:

Borrowers:Marie Davis    Donya Davis

Type of Loan:  ADJUSTABLE RATE
Date:  November 11, 2004

Address:
City/State/Zip:

Loan Number:  0100573864 - 7301

Property:    1634 S. Eighth  Ave., Maywood, IL  60153

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. (e) 9.068  % | FINANCE CHARGE The dollar amount the credit will cost you. $ 307,347.30 (e) | Amount Financed The amount of credit provided to you or on your behalf. $ 159,934.70 (e) | Total of Payments The amount you will have paid after you have made all payments as scheduled. $  467,282.00 (e) |
|---|---|---|---|

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | (e) $1,298.01 | 01/01/2005 | | | |
| 1 | (e) $1,296.41 | 12/01/2034 | | | |

**VARIABLE RATE FEATURE:**
[X]  Your loan has a variable rate feature .  Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**    You are giving a security interest in the property located at: 1634 S. Eighth  Ave., Maywood, IL  60153

**ASSUMPTION:**  Someone buying this property  [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

**LATE CHARGES:**   If a payment is late, you will be charged  5.000%  of the overdue payment .

**PREPAYMENT:**  If you pay off your loan early, you
[ ] may   [X] will not   have to pay a penalty.
**See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.**
**(e) = estimate**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____
BorrowerMarie Davis              Date

_____    _____
BorrowerDonya Davis              Date

_____    _____
Borrower                         Date

_____    _____
Borrower                         Date



TIL4 (Rev. 7/00)

**ORIGINAL COPY**

# EXHIBIT E

Loan Number:  0100970763 - 7301

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

ᴛHIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

December 14, 2004
Date

Orange
City

CA
State

1634 South18th Avenue, Maywood, IL  60153
Property Address

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ **170,050.00**  (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is  **Ameriquest Mortgage Company.**

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of  **9.650 %**.  This interest rate I will pay may change in accordance with Section 4 of this Note.  The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on  **February 1, 2005** .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal. If, on, **January 1, 2035** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my payments at:    **505 City Parkway West, Suite 100,  Orange, CA 92868**

or at a different place if required by the Note Holder.
**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ **1,448.52**.  This amount may change.
**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of,  **January, 2007**  and on that day every  sixth  month thereafter.  Each date on which my interest rate could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding  **five** percentage point(s) (**5.000%**) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

Initials:

00000100970763030050590301

Loan Number: 0100970763 - 7301

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.650** % or less than **9.650%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **1.000**%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **15.650** % or less than **9.650** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(B) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000**% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.


0000010097076303000990302

Initials: _____  _____  _____

2 of 3

12/14/2004 1:29:21 PM

Loan Number: 0100970763 - 7301

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
Borrower   Sonja Matthews                    Borrower   Donya Davis

_____ (Seal)     _____ (Seal)
Borrower                                     Borrower


0000010097076303000590303