# EXHIBIT G

FILED

UNITED STATES DISTRICT COURT 6 DEC 19 PM 1:39
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION          CLERK, U.S. DIST COURT
                        OCALA, FLORIDA

TONY PRESTON, ALETHEA PRESTON,
and all others similarly situated,

            Plaintiffs,

-vs-                                          Case No. 5:03-cv-111-Oc-10GRJ

MORTGAGE GUARANTY INSURANCE
CORPORATION OF MILWAUKEE,

            Defendant.

## ORDER

This case is before the Court for consideration of the Defendant's "Motion for Judgment on the Pleadings" (Doc. 32), to which the Plaintiffs have responded (Doc. 43).[1] Upon a review of the record the Court concludes that the Defendant's motion is due to be denied in part and granted in part.

### Background

The facts, as stated in the Plaintiffs' Complaint (Doc.1), are as follows. In January 2003 Flagstar Bank FSB "investigated the possibility of providing a mortgage to the Plaintiffs" for their home which was under construction in Clermont, Florida.[2] "Due to the

---

[1] Both parties had an opportunity to file an additional response and memorandum (see Docs. 51 & 53). An amicus curiae brief has also been filed in support of the Defendant (see Doc. 56) and in support of the Plaintiffs (see Doc. 63). The Plaintiffs have until the close of business on February 16, 2004 to file their motion for class certification (Doc. 40).

[2] Flagstar Bank FSB is no longer a party in this action. See Doc. 66.



amount and percentage of the financing being sought by Plaintiffs, Flagstar determined that if it were to provide or acquire the mortgage for Plaintiffs, private mortgage insurance would be required in the transaction." It is alleged that Flagstar "arranged with Defendant MGIC [Mortgage Guaranty Insurance Corporation of Milwaukee] to provide it such private mortgage insurance, and had advised Defendant MGIC as to the credit report or credit score obtained by Flagstar regarding Plaintiffs" from Trans Union, a consumer reporting agency. The Plaintiffs claim that "[b]ased in whole or in part on the consumer reporting information provided to it, Defendant MGIC charged Flagstar a monthly premium of $769.29 for such private mortgage insurance, which amount Plaintiffs were required by Flagstar to pay in order to obtain the mortgage from Flagstar." The Plaintiffs contend that the Defendant violated the Fair Credit Reporting Act because it did not notify the Plaintiffs that the "amount of the high premiums for private mortgage insurance they were required to pay was based in whole or in part on their credit report obtained by Flagstar and provided to MGIC."

The Plaintiffs' Complaint is framed in five counts: Count One – Willful Violation of FCRA; Count Two – Negligent Violation of FCRA; Count Three – Violation of FDUTPA as to Class C Only;[3] Count Four – Declaratory Relief under the FCRA; and Count Five – Injunctive Relief under the FCRA.

---

[3] The Plaintiffs contend that the Defendant's violation of the Fair Credit Reporting Act constitutes a violation of Florida's Deceptive and Unfair Trade Practices Act. See § 501.203(3), Fla. Stat.

2

The Defendant moves for judgment on the pleadings as to each count and, in particular, contends that: (1) any action it took with respect to the Plaintiffs was "in connection with a credit transaction" – as distinguished from an insurance transaction – and therefore not "adverse" under the Act; (2) because it did not have a contractual relationship with the Plaintiffs it could not take any adverse action against them; and (3) even if a decision was made with respect to insurance, no action was taken within the meaning of the Act.

### Standards

#### 1. *Judgment on the Pleadings*

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate only when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.[4] For purposes of a motion for judgment on the pleadings the Court accepts the facts in the complaint as true and views them in a light most favorable to the non-moving party.[5] Judgment on the pleadings is proper if the plaintiff can show no set of facts in support of his claim which would entitle him to relief.[6]

---

[4] Cannon v. City of West Palm Beach, 250 F.3d 1299, 1300 (11th Cir. 2001).

[5] Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).

[6] Horsley v. Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002).

3

## 2. *Statutory Construction*

The law in this Circuit is well settled that "[t]he first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute."[7] If the language of the statute is plain and unambiguous then the first rule of statutory construction is also the last.[8] That is, when the import of the words that Congress has used is clear, the Court need not resort to legislative history and "certainly should not do so to undermine the plain meaning of the statutory language."[9] "Any ambiguity in the statutory language must result from the common usage of that language, not from the parties' dueling characterizations of what Congress 'really meant.'"[10] Even if the statutory language is not entirely transparent, the Court should employ cannons of construction in order to determine the meaning of a particular statutory provision by

---

[7] Shotz v. City of Plantation, 344 F.3d 1161, 1167 (11th Cir. 2003).

[8] CBS Inc., v. Primetime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001).

[9] Id. The Eleventh Circuit has stated that "[t]he language of our laws is the law" because "[w]hen a statute is passed by Congress, it is the text of the statute, and not statements put in some committee report or made on the floor – and certainly not someone's understanding of the circumstances which gave rise to the legislation – that has been voted on and approved by the people's elected representatives for inclusion in our country's laws." Id. at 1227.

[10] Id. at 1225.

4

focusing on the broader statutory context before reverting to the legislative history.[11] The Court may reach results which are inconsistent with the plain meaning of a statute only if "giving the words of a statute their plain and ordinary meaning produces a result that is not just unwise but is clearly absurd."[12] If the statutory language is ambiguous, the Court "may examine extrinsic evidence, including legislative history, to determine Congressional intent."[13]

## Discussion

### 1. *Counts One & Two*

In order for the Court to determine whether the Plaintiffs' claim that the Defendant's use of their consumer report to "increase the charge for insurance premiums for insurance involving Plaintiffs" is actionable under the Fair Credit Reporting Act, the Court must first consider the pertinent provisions of the Act.

The use of a consumer report is governed by 15 U.S.C. § 1681m(a) which provides that: "[i]f any person takes any adverse action with respect to any consumer that is based

---

[11] Id. at 1225. Canons of construction are tools to help the Court "determine whether the meaning of a statutory provision is sufficiently plain, in light of the text of the statute as a whole, to avoid the need to consider extrinsic evidence of Congress' intent." Id. For example: "where Congress includes language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion;" "where Congress knows how to say something but chooses not to, its silence is controlling;" and, "a term appearing in several places in a statutory text is generally read the same way each time it appears." Id. at 1225-1226.

[12] Id. at 1228. See also Shotz, 344 F.3d at 1167.

[13] Shotz, 344 F.3d at 1167.

5

in whole or in part on any information contained in a consumer report, the person shall" notify the consumer of such action and, among other things, provide the consumer with information related to the consumer reporting agency and the consumer's right to obtain a copy of the report and contest it. There is no dispute that the Defendant used the Plaintiffs' consumer report and that it did not provide the Plaintiffs with any information with respect to the action it took based on that report.

The term "adverse action" in 15 U.S.C. § 1681m(a) is defined in section 1681a(k) of the Act and is specific as to the context in which the consumer report is used. For example, in the insurance context "adverse action" means "a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance." See 15 U.S.C. § 1681a(k)(1)(B)(i). In the credit context "adverse action" means "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." See 15 U.S.C. § 1681a(k)(1)(A). Further, the Act states that a consumer reporting agency may furnish a consumer report to a person which it has reason to belief intends to use the report for a "permissible purpose" such as "to use the information in connection with a credit transaction" or "to use the information in connection with the underwriting of insurance involving the consumer." See 15 U.S.C. § 1681b(a)(3).

There is no dispute that Flagstar received the report for a permissible purpose from Trans Union in connection with a credit transaction – namely the issuance of a mortgage

6

to the Plaintiffs. The Defendant therefore contends that because it obtained the consumer report from Flagstar the only permissible purpose for which it could use the report is in the context of a credit transaction and, as a result, the only definition of "adverse action" that is applicable in this action is the credit specific definition. However, the Defendant's contention that the credit specific definition of adverse action is applicable is unsupported by the facts or a plain reading of the Act. Although Flagstar received the consumer report from Trans Union for a permissible purpose in connection with a credit transaction, there is no plain reading of the Act which would limit the Defendant's use of the report to a credit transaction.[14] Further, even though the cost of the insurance would have been passed on to the Plaintiffs in the context of their mortgage with Flagstar, there can be no dispute that the actual use of the report by the Defendant was made with respect to insurance.

The plain meaning of 15 U.S.C. § 1681m(a) does not support the Defendant's contention that a contractual relationship between the Plaintiffs and Defendant is required. Indeed, a plain reading of the Act supports a claim where any person, such as the Defendant in this action, using information contained in a consumer report does something with the foreknowledge that adverse action with respect to a consumer will result in the ordinary course of events. The adverse action allegedly taken is an increase in the charge for insurance applied for in connection with the underwriting of insurance for the Plaintiffs'

---

[14] There appears to be no dispute as to whether the credit information obtained by the Defendant was obtained for a lawful permissible purpose, although there is some dispute as to which permissible purpose it was obtained for.

7

mortgage.[15] There is no statutory language which would require the Plaintiffs to have applied for the insurance and no such requirement can be read into the plain reading of the Act.

The Defendant's third argument – namely, that even if a decision was made with respect to insurance, no action was taken within the meaning of the Act – is premature. Whether an adverse action was taken is a fact specific inquiry and at this stage in the proceedings the Court cannot determine the nature of the increase or the precise use of the report by the Defendant.

When read in context with the statutory provisions, the Plaintiffs have alleged that the Defendant considered their consumer report, and based in whole or part on information contained in that report, took action – namely, increased the charge for insurance applied for in connection with the underwriting of insurance for their mortgage with Flagstar – which the Defendant knew would have the effect of causing the Plaintiffs to suffer the costs of the increased or higher premium for the mortgage insurance. The Plaintiffs further allege that despite this action, the Defendant failed to provide them with the required statutory notice, and that such failure was either negligent or willful. The Plaintiffs' facts, when read in a light most favorable to them and a plain reading of the statute, support a claim under the

---

[15] Based on a plain reading of the Complaint, the Court infers that the "high" or "higher rate" that the Plaintiffs refer to is compared to some other possible rate which would have been lower had the Plaintiffs credit report been more favorable.

8

Fair Credit Reporting Act for either a negligent, see 15 U.S.C. § 1681o, or willful, see 15 U.S.C. § 1681n, violation of the Act.

Accordingly, the Defendant's motion for judgment on the pleadings is due to be denied as to Counts One and Two.

### 2. *Counts Four & Five*

The Defendant contends that the Fair Credit Reporting Act does not provide for private litigants to obtain either injunctive or declaratory relief and, therefore, that the Plaintiffs' claims for such relief are due to be dismissed. The Court agrees with the Defendant.

In Washington v. CSC Credit Services, Inc., 199 F.3d 263, 268-269 (5th Cir. 2000), the Fifth Circuit recognized that while 15 U.S.C. § 1681p gives district courts jurisdiction to "enforce any liability created under this subchapter," the provision fails to mention injunctive relief while "the Act elsewhere expressly grants the power to obtain injunctive relief to the [Federal Trade Commission]," see 15 U.S.C. § 1681s. The Court held that "the affirmative grant of power to the FTC to purse injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to

obtain injunctive relief solely with the FTC."[16] The Court further held that a claim for declaratory relief would frustrate the Fair Credit Reporting Act's limitation of injunctive relief, and thus, that such a claim cannot be maintained.[17] And, insofar as the Plaintiffs seek declaratory relief pursuant to the Declaratory Judgment Act, the Court concludes that this is not the type of action contemplated by the Declaratory Judgment Act.[18]

Accordingly, the Defendant's motion for judgment on the pleadings is due to be granted as to Counts Four and Five.

### 3. *Count Three*

The Plaintiffs claim that inasmuch as the Defendant has violated 15 U.S.C. § 1681m(a), it has also violated Florida's Deceptive and Unfair Trade Practices Act, § 501.201 *et seq.* However, the Fair Credit Reporting Act, 15 U.S.C. § 1681t(b)(1)(C), expressly states that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . subsections (a) or (b) of section 1681m of this title, relating to the duties of a person who takes any adverse action with respect to a consumer." Accordingly, the Defendant's motion for judgment on the pleadings is due to be granted as to the Plaintiffs' state law claims set forth in Count Three.

---

[16] Washington, 199 F.3d at 268. See also Detweiler v. Bankers Insurance Group et al., 8:02-cv-1084-T-26EAJ (M.D. Fla. October 8, 2002) (Judge Lazzara).

[17] Washington, 199 F.3d at 268.

[18] See Detweiler v. Bankers Insurance Group et al., 8:02-cv-1084-T-26EAJ (M.D. Fla. October 8, 2002) (Judge Lazzara).

## Conclusion

Upon due consideration and for the foregoing reasons it is ordered that:

(1) the Defendant's motion for judgment on the pleadings (Doc. 32) is DENIED as to Count One and Count Two; and,

(2) the Defendant's motion for judgment on the pleadings (Doc. 32) is GRANTED as to Count Three, Count Four, and Count Five, and each of those Counts is DISMISSED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this __19th__ day of December, 2003.

*[signature]*
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record