IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

IN RE AMERIQUEST MORTGAGE CO.
MORTGAGE LENDING PRACTICES
LITIGATION

_____

THIS DOCUMENT RELATES TO: ALL
ACTIONS

MDL No. 1715

Lead Case No. 05-cv-07097

(Centralized before the
Honorable
Marvin E. Aspen)

**BORROWER PLAINTIFFS' RESPONSE TO MOTION TO DISMISS
BORROWERS' COMPLAINT OR FOR A MORE DEFINITE STATEMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………. iii

INTRODUCTION…………………………………………………………………. 1

ARGUMENT………………………………………………………………………. 1

I.      THE AMENDED AND CONSOLIDATED COMPLAINT
SUFFICIENTLY  ALLEGES FACTS NECESSARY TO
DEMONSTRATE STANDING…………………………………………… 1

      A. The Borrowers Uniformly Allege Common Facts And Resulting
Injuries……………………………………………………………….. 2

      B.  The Assertion That The Claims Are Insufficient Is Especially Without
Merit Because Plaintiffs Have Properly Incorporated The Underlying
Complaints By Reference………………………………………………… 3

II.     THE PLEADING REQUIREMENTS OF RULE 9(B) ARE SATISFIED
AS TO PLAINTIFFS' FRAUD-BASED CLAIMS AND INAPPLICABLE
TO PLAINTIFFS' STATUTORY CONSUMER PROTECTION CLAIMS
THAT ARE GROUNDED IN UNLAWFULNESS AND UNFAIRNESS… 6

III. DEFENDANTS' LOANS ARE COVERED BY THE CONSUMERS LEGAL REMEDIES ACT ("CLRA"), CAL. CIVIL CODE SECTION 1750 ET SEQ…………………………………………………………… 8

IV. PLAINTIFFS' REQUEST FOR DECLARATORY JUDGMENT CONCERNING THE RIGHT TO RESCIND IS SUFFICIENTLY PLED AND FOUNDED IN LAW…………………………………………. 11

    A. This Court Has Subject Matter Jurisdiction To Issue A Declaratory Judgment…………………………….………………… 12

    B. Plaintiffs Sufficiently Pled Their Entitlement To Declaratory Relief…. 12

    C. Plaintiffs' Entitlement To A Declaration Of Their Rescission Rights Does Not Fail as A Matter Of Law………………………………… 13

        1. Numerous Courts Have Certified TILA Rescission Classes Seeking Declaratory Relief…………………………………… 13

        2. This Court Should Not Rely On *McKenna* Because It Is Not Controlling And Was Wrongly Decided……………………… 14

        3. Rule 23 Applies To The Claim At Issue……………………… 16

V. PLAINTIFFS HAVE STATED VALID FCRA AND ECOA CLAIMS….. 17

VI. PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIM IS WELL PLED……………………………………………………………........ 19

VII. DEFENDANTS' REQUEST FOR A MORE DEFINITE STATEMENT SHOULD BE REJECTED…………………………………………….. 21

    A. Plaintiffs Have Alleged Their Contract-Based And Statutory Consumer Protection Claims With Sufficient Specificity…............ 21

    B. The Defendants' Request For A More Definite Statement Is Little More Than A Thinly Disguised And Premature Attack On The Merits…………………………………………………………… 24

CONCLUSION……………………………………………………………… 25

**TABLE OF AUTHORITIES**

*Alumax Mill Products, Inc. v. Krzysztofiak*, No. 96 C 5012, 1997 WL 201555
(N.D. Ill. Apr. 17, 1997)..................................................................................20
*Andrews v. Chevy Chase Bank, FSB*, Case 05-cv-00454-LA, 2007 WL 112568
(E.D. Wis. Jan. 16, 2007) ........................................................................ 12, 13
Andrews v. Chevy Chase Bank, FSB, Case 05-cv-00454-LA, 2007 WL 112568
(E.D. Wis. Jan. 16, 2007) ........................................................................ 12, 13
*Barnes v. Ditech.com*, 2005 WL 913090 (E.D. Pa. Apr. 19, 2005) ............................18
*Baynes v. ALLTEL Wireless of Alabama, Inc.,* 322 F.Supp.2d 1307 (M.D.Ala. 2004)...............17
*Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998).......................................... 13, 15
*Berger v. Xerox Retirement income Guarantee Retirement Plan*, 338 F.3d 755 (7th Cir. 2001) ..12
*Berry v. Amer. Express Publishing, Inc.* ......................................................11
*Cabrera v. World's Finest Chocolate, Inc.,* No. 04 C 0413, 2004 WL 1535850 (Aspen, J.)
(N.D. Ill. Jul. 7, 2004) ...................................................................24
*Califano v. Yamasaki*, 442 U.S. 682 (1979)....................................................16
*California Grocers Association, Inc. v. Bank of Amer.,* 22 Cal. App. 4th 205
(Cal. Ct. App. 1994)........................................................................10
*Cetina v. Super Target*, No. 3:04-CV-1475-M, 2004 WL 2434416 (N.D. Tex. Nov. 1, 2004)....24
*Civil Serv. Emp. Ins. Co. v. Superior Court*, 149 Cal. Rptr. 360 (Cal. 1978) ..............10
*Corbett v. Hayward Dodge Inc.,* 119 Cal.App.4th 915 (Cal. Ct. App. 2004)....................9
*Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F. 3d 1041 (7th Cir. 1998)...............6
*Crane v. American Home Mortgage, Corp.,* 2004 WL 1529165 (E.D.Pa. July 07, 2004)...........18
*Crews & Associates, Inc. v. United States*, 458 F.3d 674 (7th Cir. 2006) ..................10
*Crowley Cutlery Co. v. U.S.,* 849 F.2d 273 (7th Cir. 1988)..................................12
*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 366 (2005)....................................23
*eOnline v. Chicago Consulting Partners,* No. 01 C 1918, 2002 WL 484865
(N.D. Ill. Mar. 29, 2002) ..................................................................22
*Federal National Mortgage Ass'n. v. Cobb*, 738 F. Supp. 1220 (N.D. Ill. 1990)...............5
*Flores v. Transamerica Homefirst*, 93 Cal. App. 4th 846 (Cal. Ct. App. 2002)...............9
*Frank E. Basil, Inc. v. Leidesdorf*, 713 F.Supp. 1194 (N.D. Ill.1989)........................19
*Gibson v. City of Chicago*, 910 F. 2d 1510 (7th Cir. 1990) .................................24
*Hanlin v. Ohio Builders and Remodelers, Inc.*, No. 2:00-CV-179, 2001 WL 1678864
(S.D. Ohio Dec. 26, 2001) ..................................................................18
*Hargarten v. Sheahan*, No. 05 C 6006, 2006 WL 3087108 (N.D. Ill. Oct. 27, 2006) ................20
*Harper v. Lindsay Chevrolet,* 212 F. Supp. 2d 582 (E.D. Va. 2002) ...........................18
*Hickey v. Great Western Mortgage Corporation*, 158 F.R.D. 603 (N.D. Ill. 1994) ..................13
*Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274 (Cal. Ct. App. 1995) ....................10
*In re Armstrong,* 288 B.R. 404 (Bankr. E.D. Pa. 2003).......................................19
*Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.,* 882 F. Supp. 713 (N.D. Ill. 1995) ........22
*James v. Home Constr. Co. of Mobile, Inc.,* 621 F. 2d 727 (5th Cir. 1980) ................. 7, 14
*Kagan v. Gibraltar Savings & Loan Ass'n,* 35 Cal.3d 582 (Cal. 1984) ........................9
*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941) .................................23
*Knox v. Ameriquest Mortgage Co.*, 2005 WL 1910927 (N.D. Cal. Aug. 10, 2005) ...................8
*Knox v. Ameriquest Mortgage Co.*, Case No. C 05 00240 (SC) (N.D. Cal.) ................................8

iii

*Latham v. Residential Loan Ctrs. of America, Inc.,* No. 03 C 7094, 2004 WL 1093315
(N.D. Ill. May 6, 2004) ...................................................................................................14
*Lippitt v. Raymond James Fin. Servs., Inc.,* 340 F.3d 1033 (9th Cir. 2003).................................7
*Lopez v. Platinum Home Mortgage,* No. 1:05-CV-408, 2006 WL 2269154
(W.D. Mich. Aug. 8, 2006) .............................................................................................18
*Mass Mut. Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282 (Cal. Ct. App. 2002) .............9
*McIntosh v. Irwin Union Bank & Trust, Co.,* 215 F.R.D. 26, (D. Mass. 2003) .........................14
McKenna, et al. v. First Horizon Home Loan Corp., No. 06-8018, 2007 WL 210850
(1st Cir. Jan. 29, 2007) ....................................................................................... 14, 15, 16
*McMasters v. United States,* 260 F.3d 814 (7th Cir. 2001) ..........................................................9
*Moore v. Fidelity Financial Servs., Inc.,* 869 F. Supp. 557 (N.D. Ill. 1994) .............................21
*Mount v. LaSalle Bank Lake View,* 1994 WL 731006 (N.D. Ill., March 31, 1994) ...................14
*MPC Containment Sys., LTD v. Moreland,* No. 05 C 6973, 2006 WL 2331148 (N.D. Ill. 2006)..7
*Newton v. United Cos. Fin. Corp.,* 24 F.Supp. 2d 444 (E.D. Pa. 1998) ...................................19
*Nordberg v. Trilegiant Corp.,* 445 F. Supp. 2d 1082 (N.D. Cal. 2006) ......................................7
*Qarbom.Com Inc. v. Ehelp Corp.,* 315 F. Supp. 2d 1046 (N.D. Cal. 2004) ................................8
*Reshal Associates, Inc. v. Long Grove Trading Co.,* 754 F. Supp. 1226 (N.D. Ill.1990)............19
*Rodrigues v. Members Mortg. Co.,* 226 F.R.D. 147, 153 (D. Mass. 2005) ...............................14
*Scott v. City of Chicago,* 195 F.3d 950 (7th Cir.1999) ...............................................................20
*Shelter Mut. Ins. Co. v. Public Water Supply Dist No. 7,* 747 F.2d 1195 (8th Cir. 1984)..............5
*Tomera v. Galt,* 511 F.2d 504 (7th Cir.1975)............................................................................19
*Tower v. Moss,* 625 F.2d 1161 (5th Cir. 1980)..........................................................................14
*Treadway v. Gateway Chevrolet Oldsmobile Inc.,* 362 F.3d 971 (7th Cir. 2004)........................17
*U.S.A. v. Emergency Medical Assocs. of Illinois, Inc.,* No. 00 C 1046, 2004 WL 1433601
(N.D. Ill. June 25, 2004) ..................................................................................................6
*Williams*...................................................................................................................................15
*Williams v. Empire Funding Corp.,* 183 F.R.D. 428 (E.D. Pa. 1998) ................................. 14, 15

**STATUTES**

15 U.S.C. § 1635(a) ...................................................................................................................3
15 U.S.C. § 1640(a) .................................................................................................................16
15 U.S.C. § 1681(k)(1)..............................................................................................................17
15 U.S.C. § 1681m(a) ...............................................................................................................18
15 U.S.C. § 6614 ......................................................................................................................16
15 U.S.C. § 77p(b) ...................................................................................................................16
28 U.S.C. §2201(a) ..................................................................................................................12
Cal. Civ. Code § 1754 .............................................................................................................11
California Business & Professions Code 17200...................................................................7, 23
P.L. 104-12, 1995 H.R. 1380, 109 Stat. 161 (May 18, 1995) ....................................................15

**RULES**

Fed. R. Civ. P. 10(c) .................................................................................................................4
Fed. R. Civ. P. 12(e) ................................................................................................... 21, 22, 23
Fed. R. Civ. P. 23 .....................................................................................................................16
Fed. R. Civ. P. 9(b) ..........................................................................................................6, 7, 8

iv

**TREATISES**

5A Wright & Miller, Fed. Prac. & Proced. Civ. 3rd, ¶ 1326 (2006) ...............................................4

**REGULATIONS**

12 C.F.R. § 202.2(c)(1)(i) ........................................................................................17
12 C.F.R. § 226.23(b)(1) ..........................................................................................3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION _____ THIS DOCUMENT RELATES TO: ALL ACTIONS | MDL No. 1715 Lead Case No. 05-cv-07097 (Centralized before the Honorable Marvin E. Aspen) |

**BORROWER PLAINTIFFS' RESPONSE TO MOTION TO DISMISS BORROWERS'
COMPLAINT OR FOR A MORE DEFINITE STATEMENT**

Defendants' Motion to Dismiss the Amended and Consolidated Complaint is contrary to
the facts and law.  It must be denied in its entirety for the following reasons:

### I.  THE AMENDED AND CONSOLIDATED COMPLAINT SUFFICIENTLY ALLEGES FACTS NECESSARY TO DEMONSTRATE STANDING.

The Borrower's Consolidated Amended Complaint ("Complaint") [Docket No. 325] is 75
pages long and comprises more than 435 paragraphs.  It consolidates twenty class action
complaints previously transferred to this Court involving myriad legal theories and reduces them
to 26 causes of action.

Despite the extensive factual allegations in the complaint, Defendants seek dismissal
because the Complaint purportedly fails to demonstrate that Plaintiffs have standing.  It is
apparently Defendants' position that Plaintiffs must individually allege the specific terms of their
transactions to demonstrate standing rather than allege, as they do, that they were affected by

1

Defendants' common and uniform unlawful practices.  Defendants' position is plainly inconsistent with concepts of notice pleading and standard class action practice.

### A.  The Borrowers Uniformly Allege Common Facts And Resulting Injuries.

Defendants assert, erroneously, that Plaintiffs "provide no factual allegations… showing (1) that any Borrower Plaintiff suffered a concrete injury, (2) a causal connection between the alleged injury and the challenged conduct, or (3) a likelihood that the supposed injury will be redressed by a favorable decision."  Motion to Dismiss, p. 5.  This is simply untrue.

As is routine in class action practice, the eighty-five (85) Representative Plaintiffs from across the country allege a common set of facts that affect each of them and the class they seek to represent.  These claims are in paragraphs 2-14, 92-122 and throughout the allegations necessary to the specific claims.  The factual allegations include, *inter alia*, using "bait and switch" marketing, failing to provide loan documents that are compliant with the law, charging discount points without providing a discount rate, marketing loans with false promises of benefits, and failing to properly provide accurate information while servicing the loan.

The allegations are thorough and detailed.  Paragraph 114 of the Complaint, for example, states:

> Ameriquest unfairly and deceptively holds out its mortgage loans as sound financial transactions that will save borrowers money.  Ameriquest fails to disclose prior to closing and/or intentionally obfuscates and/or conceals before and at closing the following:
>
> a.  required TILA disclosures clearly and conspicuously, in a form that borrowers can understand, at or before the time the loan is consummated, in order to mislead consumers as to the true terms and costs of their loan transactions;
>
> b.  the high and/or adjustable interest rates charged on its loans, as well as the risks associated with adjustable rate mortgage ("ARM") loans;
>
> c.  the high and deceptive "discount" fees and closing fees routinely added to the loan principal;

2

d. the fact that, under 15 U.S.C. § 1635(a), 12 C.F.R. § 226.23(b)(1), borrowers have the right to rescind certain transactions up to three days following the consummation of the transaction or the delivery of the information and disclosures required by statute;

e. the existence of a prepayment penalty, and that such prepayment penalty would make refinancing impossible and/or highly unfavorable for the borrower;

f. the fact that the borrowers would have to pay, in addition to monthly loan payments, the cost of homeowners' insurance and property taxes that other lenders include in monthly escrow payments, and instead implies or allows borrowers to believe that the monthly payment will include these costs; and

g. the fact that far from saving borrowers money (as Ameriquest systematically claims), the Ameriquest loans increase the total amount of debt outstanding, exacerbate overall interest obligations, and place vulnerable borrowers at high risk of foreclosure.

In paragraphs 123-178, the Plaintiffs each allege that they were affected and harmed by the standard practices described. Those allegations are then amplified or narrowed as appropriate in the description of the claims. For example, certain claims are brought on behalf of certain Plaintiffs. *See e.g.*, Twenty-first Cause of Action on Behalf of Georgia Plaintiffs and a Georgia class. Moreover, claim-specific facts, such as delivery of improper disclosures are alleged in connection with the relevant claim. *See, e.g.,* Complaint, ¶¶ 239, 240.

Plaintiffs thus allege sufficient facts, the required causal connections, and injury-in-fact for each claim asserted. Consequently, no Plaintiff's claims can be dismissed for lack of standing.

**B. The Assertion That The Claims Are Insufficient Is Especially Without Merit Because Plaintiffs Have Properly Incorporated The Underlying Complaints**

To the extent, if any, that Defendants assert that the Complaint does not provide them with sufficient notice of the nature of the claims against them, that assertion is plainly disingenuous for at least three reasons. First, Defendants have the underlying complaints, and in

3

many cases have had them for more than two years. In virtually every case, Defendants answered the Complaints or lost on a motions to dismiss so that the claims were at issue in the transferor Courts. To say that Defendants are not fully alert to the nature of the underlying claims is therefore baseless.

Second, the Defendants, as mortgage lenders, have all of the underlying loan documents and are well-aware of which loan documents are implicated in this case. Indeed, the Defendants have attached relevant loan documents to their Request for Judicial Notice in Support of Motion to Dismiss Borrowers' Complaint [Docket No. 393]. For Defendants to assert that Plaintiffs must describe the terms of their loans or attach their relevant loan documents to validate the complaint is an unnecessary burden that would tax the Court, due to the sheer volume of the documents required.

Finally, any doubt on these issues is swept away because Plaintiffs have properly incorporated and preserved Plaintiffs' factual allegations from the underlying Complaints. Complaint at p. 3. Under Fed. R. Civ. P. 10(c) "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading *or in another pleading* or in any motion…" 5A Wright & Miller, Fed. Prac. & Proced. Civ. 3rd, ¶ 1326 (2006) (emphasis added). As the treatise makes clear, the purpose of this provision is to allow liberal incorporation to prevent excessively long pleadings, particularly where allegations are already part of the record in the same action:

> Federal Rule 10(c) permits the pleader to use an incorporation by reference of prior allegations in order to encourage pleadings that are short, concise, and free of unwarranted repetition as well as to promote convenience in pleading. Although common law pleading and then code pleading sanctioned the reference and adoption of allegations in separate counts of the same pleading, Rule 10(c) goes further and also allows an adoption by reference of material in separate pleadings or motions. The ability to incorporate matter from other pleadings is especially useful in multiparty litigation when the presence of common questions often results in the pleadings of the parties on the

4

> same side of the litigation being virtually identical, which makes employing simple
> incorporations by reference highly desirable.

*Id*. Here, incorporation by reference is not only fair in light of the service of each of the

underlying complaints on at least one of the Defendants, it is necessary to generate a manageable

consolidated complaint. Defendants, like Plaintiffs, will be free to bring forward the underlying

allegations if, for example, they are useful to establish estoppel or to impeach a witness.

The two cases on which Defendants rely to assert that incorporation is improper are

inapposite. In *Federal National Mortgage Ass'n. v. Cobb*, 738 F. Supp. 1220, 1227 (N.D. Ill.

1990), despite restrictive language in *dicta*, the court actually allowed incorporation of

allegations from a completely different action. Here, the allegations are from pleadings in *this*

action, pleadings that have already been in Defendants' possession for many months or years.

Similarly, *Shelter Mut. Ins. Co. v. Public Water Supply Dist No. 7*, 747 F.2d 1195 (8th Cir. 1984),

involved an attempt to incorporate another party's pleading as well as documents that were

attached to that complaint. Here, the parties are incorporating their own pleadings and the

documents involved were both attached to the underlying pleadings or are part of Defendants'

loan files.

Notably, Defendants do not attempt to argue that the underlying complaints, if

incorporated, are inadequate notice of each Plaintiff's claims. Therefore, if the Court concludes

that incorporation by reference is not proper here, it should not dismiss the Complaint. Instead,

Plaintiffs request leave to bring additional allegations of the underlying Complaints forward into

the Consolidated and Amended Complaint. As the Defendants have all of the underlying

pleadings in this coordinated MDL proceeding, there is no prejudice to them in allowing the

additional consolidation of allegations previously raised.

5

**II.   THE PLEADING REQUIREMENTS OF RULE 9(B) ARE SATISFIED AS TO PLAINTIFFS' FRAUD-BASED CLAIMS AND INAPPLICABLE TO PLAINTIFFS' STATUTORY CONSUMER PROTECTION CLAIMS THAT ARE GROUNDED IN UNLAWFULNESS AND UNFAIRNESS.**

Defendants argue that Plaintiffs failed to plead their common law fraud and statutory consumer protection claims with particularity.  Defendants' arguments are without merit.

Rule 9(b) states that "in all averments of fraud or mistake the circumstances constituting fraud or malice shall be stated with particularity.  Malice, intent, knowledge and other conditions of a mind of a person may be averred generally."  Courts in this jurisdiction have made clear that "Rule 9(b) must be read in conjunction with Rule 8(a), which provides for a short and plain statement of the claim."  *U.S.A. v. Emergency Medical Assocs. of Illinois, Inc.,* No. 00 C 1046, 2004 WL 1433601, at *5 (N.D. Ill. June 25, 2004) (internal quotations omitted).

The Seventh Circuit has instructed "on a number of occasions" that the "particularity requirement must be relaxed where the plaintiff lacks access to all the facts necessary to detail his claims, and that is most likely to be the case where, as here, the plaintiff alleges a fraud against third parties*." Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F. 3d 1041, 1051 (7th Cir. 1998).   Rule 9(b) is thus relaxed in cases like this one, in which Plaintiffs challenge a fraudulent scheme created by individuals at Ameriquest whose identities have yet to be discovered, and perpetrated, among other ways, through the conduct of the individual agents who the Defendants controlled.  *See, e.g.,* Complaint,  ¶¶ 107-112.

Even absent the relaxed burden to which they are entitled, Plaintiffs have satisfied the Rule 9(b) requirement.  Plaintiffs have described Defendants' fraudulent scheme in detail on pages 15-22 on their Complaint, including a discussion of the method through which Ameriquest perpetrated the fraud *via* the tactics and common practices of its Account Executives.  Complaint

6

¶¶ 92-117 (detailing Defendants' bait-and-switch practices, failure to provide proper disclosures, scheme relating to discount points, sales and marketing scheme, compensation system, and servicing practices).

Plaintiffs' allegations are in stark contrast to those found wanting by this Court in the case on which Defendants rely: *MPC Containment Sys., LTD v. Moreland*, No. 05 C 6973, 2006 WL 2331148 (N.D. Ill. 2006). In *MPC*, a corporation's allegations of fraud against a former executive vice president and another employee were insufficient because, among other reasons, plaintiff failed to specify when during the employees' 20-year tenure the fraud occurred, or through what means the fraud was perpetrated.

Defendants' argument is misplaced for the independent reason that Rule 9(b) does not apply to the CLRA or to the California Business & Professions Code 17200 (the Unfair Competition Law ("UCL")) to the extent the allegations are not grounded in fraud.[1] "The CLRA is not a fraud statute." *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006). A plaintiff is "not required to plead fraud with particularity but must merely demonstrate that the misrepresentations have resulted in harm." *Id.* Plaintiffs' CLRA allegations are thus unquestionably adequate. Complaint, ¶¶ 311-320.

"To bring a UCL claim, a plaintiff must show . . . an unlawful, unfair, or fraudulent business act or practice . . . Section 17200 is written in the disjunctive [and] it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033 (9th Cir. 2003) (internal quotations

---

[1] Defendants also assert, without any basis, that Plaintiffs' claims under the Florida Mortgage Lending Act and the Ohio Mortgage Brokers' Act contain only legal conclusions. In fact, the pleadings properly incorporate by reference all the factual allegations.

omitted).  Only a 17200 claim "grounded in fraud" is subject to Rule 9(b).  *Qarbom.Com Inc. v. Ehelp Corp.,* 315 F. Supp. 2d 1046 (N.D. Cal. 2004).

As ¶¶ 306-307 of the Complaint make clear, Plaintiffs' UCL claim sounds predominantly in unfairness and unlawfulness, and is not subject to Rule 9(b).  *Id.* (listing seven statutes that Defendants violated, describing unfair conduct, and alleging common nondisclosures and breaches of  contract).  To the extent the claims are grounded in fraud, Plaintiffs have satisfied 9(b) for the reasons discussed above.

### III.  DEFENDANTS' LOANS ARE COVERED BY THE CONSUMERS LEGAL REMEDIES ACT ("CLRA"), CAL. CIVIL CODE SECTION 1750 *ET SEQ.*

Defendants argue that Plaintiffs' CLRA act claim should be dismissed because, according to Defendants, the CLRA does not apply to loans.  Motion to Dismiss, pp. 11-16.This argument is contrary to the law of the case, and is otherwise incorrect.  Significantly Ameriquest raised and *lost* this exact same argument in one of the underlying borrower class action cases that was transferred to this Court in the MDL proceeding, *Knox v. Ameriquest Mortgage Co.*, Case No. C 05 00240 (SC) (N.D. Cal.).  Ameriquest, *which did not even acknowledge the earlier opinion in its motion*, now seeks a second bite at the apple.

The transferor court in *Knox* unequivocally and explicitly held that the CLRA covered the mortgage loans issued by Ameriquest.  *See Knox v. Ameriquest Mortgage Co.*, 2005 WL 1910927 (N.D. Cal. Aug. 10, 2005).  As the court held:

> Defendants allege that the CLRA is not applicable to the financial transactions at issue here because such transactions are not "goods" or "services" as defined by the CLRA. …  Defendants rely on the legislative history of the CLRA as well as a California Supreme Court case which stated in dicta that an insurance policy was neither a "good" nor a "service." …  The court finds this to be an insufficient basis for dismissal of the plaintiff's CLRA claim.  Rather, the court has reviewed the limited case law on this issue and finds that California courts generally find

8

> financial transactions to be subject to the CLRA. … Therefore, because
> other types of financial transactions involving banking services appear to
> be covered by the CLRA, *the Court finds that the CLRA covers the
> [Ameriquest] mortgages at issue in the instant claim and denies the
> Motion with respect to the claim*.

*Knox,* at * 4 (emphasis added).

*Knox* relies on authority that is equally applicable here, since this is the same case. *See
Corbett v. Hayward Dodge Inc.,* 119 Cal.App.4th 915 (Cal. Ct. App. 2004) (involving CLRA
claim against a car dealer for misstating the interest rate on a car loan and sharing extra proceeds
with the bank); *Kagan v. Gibraltar Savings & Loan Ass'n,* 35 Cal.3d 582 (Cal. 1984) (allowing a
CLRA class action to go forward with respect to management fees on an individual retirement
account).

In addition to the cases cited in *Knox*, ample authority supports the proposition that the
CLRA covers loans and other financial transactions.  In *Flores v. Transamerica Homefirst*, 93
Cal. App. 4th 846 (Cal. Ct. App. 2002), the court denied a petition to compel arbitration of the
CLRA and common-law claims of borrowers of "reverse mortgages" as against the lender.
Implicit in the court's ruling was the idea that the claims would go forward in state court, and
that the CLRA covered the borrowers' claims.  In *Mass Mut. Life Ins. Co. v. Superior Court*, 97
Cal. App. 4th 1282 (Cal. Ct. App. 2002), the court affirmed the trial court's decision to certify a
class of 33,000 insurance policyholders under the CLRA and the UCL.

The weight of authority, including a case involving *these* very loans and *these* same
Defendants, compels the conclusion that the CLRA protects borrower-consumers who purchased
loans from Ameriquest.  Under the law of the case doctrine, this Court should reach the same
conclusion.  *See McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001) ("law of the
case" doctrine provides that "courts should refrain from reopening issues decided in earlier

stages of the same litigation."). *See also Crews & Associates, Inc. v. United States*, 458 F.3d 674, 677 n.2 (7th Cir. 2006) (doctrine applicable "when a case is transferred from one district court to another.").

Defendants' cases, to the limited extent they involve the CLRA, are easily distinguishable. *California Grocers Association, Inc. v. Bank of Amer.,* 22 Cal. App. 4th 205 (Cal. Ct. App. 1994), held that a trade group of retail and wholesales grocers -- unlike the borrowers here -- were not "consumers . . of services for personal, family, or household purposes." *Id.* at 217. *Civil Serv. Emp. Ins. Co. v. Superior Court*, 149 Cal. Rptr. 360 (Cal. 1978) examined the question of whether the class action procedures prescribed in the CLRA could be used by trial courts in all actions. The court prefaced its conclusion that the CLRA class action procedures applied more broadly by noting in passing that insurance was "technically" not a good or service within the meaning of the CLRA. *Id.* at 376. This *dicta* has been effectively abrogated by subsequent cases such as *Mass Mutua, supra.*

In *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274, 286 (Cal. Ct. App. 1995), the court examined whether credit card late and over the limit fees were void under a section of California's Civil Code that addressed liquidated damages. The defendant argued, among other things, that an extension of credit was not a consumer contract within the meaning of the civil code section at issue *or* within the meaning of the CLRA, which defendant invoked as a purported analogy. *Id.* at 286 and n.7. The court rejected these arguments, holding that "we need not decide whether an extension of credit is a consumer credit within the meaning of Civil Code section 1671 . . . because a credit card agreement is much more than that, encompassing convenience services in addition to extension of credit." *Id.* at 286. "In all instances, the credit agreement is in part a contract for the retail purchase of services." *Id*. at 288. Thus, the *Hitz*

10

court did not support (and impliedly rejected) an interpretation of the CLRA that would preclude purchasers of credit from its coverage. The *Hitz* ruling also underscored the importance of examining everything a consumer is deriving from (and a company is selling in) a transaction before reaching a facile conclusion that a transaction is not a "service."[2]

Defendants' final case, submitted as purported supplemental authority, also involves credit cards, not mortgages. *See Berry v. Amer. Express Publishing, Inc.* [Docket 424]. The California legislature, in an earlier CLRA draft, deleted purchasers of "money or credit" as among the definitions of a consumer. Defendants argue, and the *Berry* court held, that money and credit purchasers are thus excluded from the Act. *Berry*, at 2-3. However, this interpretation is contradicted by, among other things, the reasoning of *Knox* and other cases (cases about which the legislature is presumably aware), the broad language of the statute, and the fact that mortgages are not excluded from the Act's coverage, even though real property purchases are. Cal. Civ. Code § 1754 (exempting transactions relating to the sale or construction of a residence). Plainly, if the legislature wanted to include mortgage transactions as among the statute's exemptions, it could and would have done so as it did in the section on real property. For all of these reasons, Defendants' motion to dismiss the CLRA claim should be denied.

## IV. PLAINTIFFS' REQUEST FOR DECLARATORY JUDGMENT CONCERNING THE RIGHT TO RESCIND IS SUFFICIENTLY PLED AND FOUNDED IN LAW.

The Plaintiffs' claim seeking declaratory judgment under the Truth in Lending Act, 15 U.S.C. § 1635 ("TILA") is well-founded and has been recognized by other Courts in this jurisdiction as discussed below. Importantly, a recent case from Wisconsin in which the District

---

[2] Similarly, in this case, Ameriquest's scheme involved getting consumers to consolidate their other debts with Ameriquest. Complaint, ¶ 109. Even if mortgage loans in and of themselves were not covered by the CLRA, which the *Knox* court has already rejected, Ameriquest is doing more than selling mortgage loans.

Court granted a declaratory judgment for rescission under TILA was accepted for review, pursuant to Fed. R. Civ. P. 23(f), in the Seventh Circuit Court of Appeals on February 2, 2007. *Andrews v. Chevy Chase Bank, FSB*, Case 05-cv-00454-LA, 2007 WL 112568, at *11 (E.D. Wis. Jan. 16, 2007) petition for appeal accepted No. 07-8001). *See* Andrews Docket Attached as Exhibit 1 (Docket No. 88). In light of the precedent approving declaratory judgments discussed below and the likelihood of reasonably imminent binding precedent on this issue from the Seventh Circuit, Plaintiffs should be allowed to proceed with this claim, subject to additional review by the Court at a later date.

A.     **This Court Has Subject Matter Jurisdiction To Issue A Declaratory Judgment.**

Under the Declaratory Judgment Act, federal Courts have the power to declare the rights and other legal relations of any interested party seeking such declaration, provided there is an underlying case or controversy and an independent basis for jurisdiction. 28 U.S.C. §2201(a). *See Crowley Cutlery Co. v. U.S.,* 849 F.2d 273 (7th Cir. 1988). Here, there is plainly jurisdiction under, *inter alia*, 15 U.S.C. § 1640(e) and 28 U.S.C. § 1332(d). A case and controversy exists as discussed more fully above. In these circumstances, Courts have ample power to declare parties' rights under a federal statute. *See, e.g., Berger v. Xerox Retirement income Guarantee Retirement Plan,* 338 F.3d 755 (7th Cir. 2001) (declaratory judgment for class permitted under ERISA).

B.     **Plaintiffs Sufficiently Pled Their Entitlement To Declaratory Relief.**

Notably, Defendants do not argue in their motion to dismiss that Plaintiffs failed to meet the technical pleading requirements to maintain an action for declaratory relief. That is because they cannot. Plaintiffs have sufficiently pled a threatened injury to their interests if they do not obtain a declaration that they have an extended right to rescind their loans.

12

In the Complaint, Plaintiffs alleged that they were entitled to a declaratory judgment that they have the right to cancel their refinance loan transactions with Ameriquest. Complaint, ¶¶234-244. "Plaintiffs and the Class members do not have a plain, adequate, speedy, or complete remedy at law to address [Defendants' practice of failing to provide statutorily mandated material disclosures of their right to rescind their refinance transactions]…and will suffer irreparable injury as a result of the Defendants' misconduct unless…declaratory relief is granted." Complaint, ¶¶ 239, 300. This is because federally mandated extended cancellation rights pursuant to 11 U.S.C. §1635(b) will expire for the class, without notice, unless a Declaratory Judgment is entered for the class. *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998).

### C. <u>Plaintiffs' Entitlement To A Declaration Of Their Rescission Rights Does Not Fail As A Matter Of Law.</u>

#### 1. Numerous Courts Have Certified TILA Rescission Classes Seeking Declaratory Relief.

This Court and others have held that class certification is appropriate when the proposed class members are seeking declaratory relief related to the rescission right under TILA. In *Andrews,* the court found that, "[t]he principal criteria for determining whether declaratory relief is appropriate [for a TILA class] are whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and whether it will terminate the uncertainty giving rise to the proceeding." *Andrews, supra* at *11, *citing Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 320 (N.D. Ill. 1995). The *Andrews* Court held, "a declaratory judgment would settle the issue of whether defendant violated TILA and, if so, whether such violation gives rise to the right to rescind…for…the entire class." *Id. See also, Hickey v. Great Western Mortgage Corporation,* 158 F.R.D. 603 (N.D. Ill. 1994) (Conlon, J.) (certifying nationwide class of

13

borrowers seeking declaration that class members have continuing right to rescind based on alleged misdisclosure of finance charge); *Latham v. Residential Loan Ctrs. of America, Inc.,* No. 03 C 7094, 2004 WL 1093315 *3 (N.D. Ill. May 6, 2004) (Plunkett, J.) (class claim seeking declaration of right to rescind can be maintained, denying motion to dismiss claim); *Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 435-36 (E.D. Pa. 1998) (conditionally certifying class seeking declaration of the right to seek rescission); *Tower v. Moss*, 625 F.2d 1161 (5th Cir. 1980) (class certified and class members allowed to elect rescission or opt out of class); *Mount v. LaSalle Bank Lake View,* 1994 WL 731006 (N.D. Ill., March 31, 1994) (Gottschall, M.J.) (recommending certification of class in action seeking declaration that borrowers had right to rescind under TILA).

### 2. This Court Should Not Rely On McKenna Because It Is Not Controlling And Was Wrongly Decided.

As supplemental authority in support of its argument that declaratory relief is unavailable for a rescission class, the Defendants submitted the First Circuit's recent decision in *McKenna, et al. v. First Horizon Home Loan Corp.,* No. 06-8018, 2007 WL 210850 (1st Cir. Jan. 29, 2007) [Docket No. 421]. This Court should not rely on *McKenna* because it is not controlling and is wrongly decided. The question of whether a TILA rescission class seeking a declaratory judgment can be certified was an issue of first impression in the First Circuit. The court, refusing to follow District Court rulings within that Circuit[3] and the other cases cited above, adopted unconditionally the reasoning in *James v. Home Constr. Co. of Mobile, Inc.,* 621 F. 2d 727, 731 (5th Cir. 1980). *McKenna,* at *4. However, *James* is inapposite to the issue presented by the Plaintiffs here. In *James*, the plaintiff brought an action on behalf of a class seeking a

---

[3] *Rodrigues v. Members Mortg. Co.,* 226 F.R.D. 147, 153 (D. Mass. 2005); *McIntosh v. Irwin Union Bank & Trust, Co.,* 215 F.R.D. 26, 32-33 (D. Mass. 2003) (holding that class resolution is appropriate for claims seeking a declaration of the right to rescind under TILA).

declaration that their loans *were rescinded*. *James,* at 728. By contrast, Plaintiffs here seek a declaratory judgment that *they have the right to rescind*. Complaint, ¶¶ 234-244. The *McKenna* Court failed to recognize this significant distinction in the relief sought and adopted the reasoning of the court in *James*. As at least one Court has noted, this is an essential distinction:

> However, the instant case is distinguishable from cases in which courts have refused to certify a class which sought rescission as a remedy in that, in this case, plaintiffs do not seek to rescind each contract as a remedy. Rather, plaintiffs only seek a declaration that the notices of rescission in the sales and financing contracts violate TILA, and thus that each member of the class is entitled to seek rescission. Should the Court declare that, indeed, plaintiffs are entitled to seek rescission because of certain infirmities in the TILA disclosure documents, then each class member, individually, and not as a member of the class, would have the option to exercise his or her right to seek rescission. As to any member of the class who triggered the statutory right to rescission, Empire defendants would have, in turn, the opportunity to exercise their rights to cure under TILA.

*Williams, supra,* at 435. Absent a declaration of the continued existence of the right together with appropriate notice, class members' rights will expire as a matter of law, before they ever have the Congressionally mandated opportunity to exercise them. *See Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998) (TILA right to rescind has a three-year statutory deadline that cannot be extended by tolling or raised in recoupment).

The *McKenna* Court also misinterpreted legislative history. In 1995, Congress imposed a completely *retroactive* moratorium on "certain TILA class action certifications." Excluded from the moratorium, *inter alia*, were class actions based upon receipt of blank notices of right to cancel. P.L. 104-12, 1995 H.R. 1380, 109 Stat. 161 (May 18, 1995). Certainly, if Congress intended to ban all class actions based upon rescission notices or, intended to impose any *prospective* limitation on class actions, or intended to bar class actions for declaratory judgments under TILA, it knew how to do so.

The declaratory relief that Plaintiffs seek here is largely grounded in Defendants' failure to provide borrowers with statutorily compliant notices of right to cancel. Complaint, ¶¶ 239-

15

241. The TILA is clear as to the required contents and form of notices of right to cancel. Unlike this issues addressed by Congress in 1995, there is no ambiguity as to the Defendants' obligations. In addition, that there may be an overwhelming financial impact on the mortgage industry if this Court issues the declaratory relief requested here is purely speculative (and inconsistent with the experience subsequent to court rulings on this same issue). As even the *McKenna* Court recognized "[n]ot all debtors who suspect (or know) that they have been subjected to a TILA violation will choose to rescind, in large part because rescission entails the return of loan proceeds to the creditor." *McKenna*, *supra*, at *3.

### 3. Rule 23 Applies To The Claim At Issue.

Fed. R. Civ. P. 23 is the source of Plaintiffs' procedural rights at issue. The TILA does not prohibit class actions based on rescission claims. 15 U.S.C. § 1635. Absent an express limitation, the class action remedy remains available. *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979). Congress well knows how to ban class claims, by statute, when it sees fit. *See, e.g.*, 15 U.S.C. § 77p(b); 15 U.S.C. § 6614. It did not do so here. Contrary to Defendants' view, the cap on damages in TILA class actions contained in 15 U.S.C. § 1640(a) does not bar declaratory judgments, rescission class actions or prevent TILA class claims. If anything, it evinces awareness that class-wide relief is available under TILA.

Finally, Defendants' argument that "the fact that rescission is not properly sought on a class-wide basis does not preclude rescission as a remedy for those individuals who choose it" is irrelevant. Motion to Dismiss, p. 9. Whether or not an individual has the right to pursue a class action lawsuit is not affected by the existence of other available remedies. In short, Fed. R. Civ. P. 23 is a procedural vehicle that applies to declaratory relief for rescission. If the availability of individual rights precluded certification under Rule 23, no class would ever be certified.

16

### V. PLAINTIFFS HAVE STATED VALID FCRA AND ECOA CLAIMS.

Defendants argue that because Plaintiffs and members of the Bait and Switch Class entered into mortgage loan transactions with the Defendants on different terms than initially promised, they accepted a "counteroffer" and therefore are not entitled to an adverse notice of the changed terms under the FCRA or ECOA.  Motion to Dismiss, pp. 9-10.  Defendants cite a portion of the regulations issued pursuant to the ECOA, which excludes from the definition of adverse action a counteroffer that is accepted by the applicant. 12 C.F.R. § 202.2(c)(1)(i).

First, under the FCRA, the definition of an adverse action is broader than the ECOA definition. Under the FCRA, an adverse action:

> *(A)* has the same meaning as in section 1691(d)(6) of this title [the ECOA];  *and*
>
> (B) means –
> . . .
>
> > (iv) an action take or determination that is ---
> >
> > > (I)     made in connection with an application that was made by, or a transaction that was initiated by, any consumer, . . . ; and
> > >
> > > (II)    *adverse to the interests of the consumer.*

15 U.S.C. § 1681(k)(1) (emphasis added).   *See Baynes v. ALLTEL Wireless of Alabama, Inc.,* 322 F.Supp.2d 1307 (M.D.Ala. 2004) (holding that definition of adverse action under FCRA is broad by virtue of § 1681(k)(1)(B)(iv), the so-called "catch-all provision," and questioning relevance of Regulation B exclusion under ECOA of accepted counteroffer to claim brought under FCRA); *Treadway v. Gateway Chevrolet Oldsmobile Inc.,* 362 F.3d 971, 982 (7th Cir. 2004) (FCRA defines adverse action more broadly than ECOA: "The FCRA definition of "adverse action" starts with the ECOA definition but also includes a "catch-all" phrase which defines "adverse action" as "an action or determination that is-(I) made in connection with an

17

application that was made by, or a transaction that was initiated by, any consumer ... and (II)[is]

adverse to the interests of the consumer.") *See also Barnes v. Ditech.com*, 2005 WL 913090

(E.D. Pa. Apr. 19, 2005) (relying on catch-all provision, court found that "Defendant's offer of a

home equity loan at a higher interest rate because of Plaintiff's poor consumer credit score is an

adverse action under the FCRA which requires adverse action notification"); *Crane v. American*

*Home Mortgage, Corp.,* 2004 WL 1529165 (E.D.Pa. July 07, 2004)(unreported) (definition of

adverse action under FCRA broader than ECOA).

The cases cited by Defendants cannot be reconciled with this statutory language. *See*

*Harper v. Lindsay Chevrolet,* 212 F. Supp. 2d 582 (E.D. Va. 2002) (no reference to or analysis of

catch-all provision, also notes that new interest rate was reviewed with consumer at loan

closing); *Lopez v. Platinum Home Mortgage,* No. 1:05-CV-408, 2006 WL 2269154 (W.D. Mich.

Aug. 8, 2006) (ignores catch-all provision); *Hanlin v. Ohio Builders and Remodelers, Inc.*, No.

2:00-CV-179, 2001 WL 1678864 (S.D. Ohio Dec. 26, 2001) (no analysis of catch-all provision)

Clearly, promising to provide loans on certain terms, including fixed interest rates, low

interest rates, low or no fees, lower monthly payments compared to then current payments, no

prepayment penalties, and/or the existence or absence of particular terms, Complaint, ¶¶ 93, and

then failing to do so constitutes an action adverse to the interests of the consumer.  Where as

alleged, the unfavorable change in terms is based at least in part on a credit report, the creditor

must provide an adverse action notice under the FCRA.  15 U.S.C. § 1681m(a).

Second, the Complaint alleges that Defendants engaged in bait and switch tactics by

promising credit on certain terms, then at the closing providing credit on different, less

advantageous terms, without any prior notice. Complaint, ¶¶ 93-97. In fact, because of the

complexity of the paperwork, the rushed closings, and lack of disclosures, borrowers are often

18

unaware that the loan terms have changed. Complaint, ¶¶ 93-94. These tactics simply cannot be characterized as a "counteroffer." ECOA Regulation B defines a "counteroffer" as "an offer to extend credit in a different amount, or on other terms than those requested.

Finally, even if Defendants' undisclosed change in loan terms is construed as a counteroffer, and not an adverse action, the ECOA requires notice of a counteroffer, which was not provided. 12 C.F.R. § 202.9(a)(1)(i) ("A creditor shall notify an applicant of action within ··· 30 days after receiving a completed application concerning the creditor's approval of, *counter offer to*, or adverse action on the application"); *Newton v. United Cos. Fin. Corp.,* 24 F.Supp. 2d 444, 459 (E.D. Pa. 1998) (there are three distinct kinds of action a creditor might take, each triggering a notice requirement: an approval, a counteroffer, and an adverse action; failure to give written notice of a counteroffer violates ECOA); *In re Armstrong,* 288 B.R. 404, 421-422 (Bankr. E.D. Pa. 2003) (lender's a failure to give notice of counteroffer, which was accepted, was violation of ECOA). Defendants' failure to provide counteroffer notices to the members of the Bait and Switch Class violates the ECOA.[4]

## VI. PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIM IS WELL PLED.

Plaintiffs have sufficiently pled facts that support the applicability of the doctrines of equitable tolling and equitable estoppel,[5] which would toll the commencement of the running of applicable statutes of limitations. At the pleadings stage, courts require, "little beyond general allegations to satisfy the tolling requirements." *Reshal Associates, Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1237, (N.D. Ill.1990) *citing Tomera v. Galt*, 511 F.2d 504, 509 (7th Cir.1975); *Frank E. Basil, Inc. v. Leidesdorf*, 713 F.Supp. 1194, 1201 (N.D. Ill.1989).

---

[4] To the extent that the Consolidated Class Action Complaint does not specifically allege the failure to provide a counteroffer notice, the Plaintiffs seek leave to amend to include this specific provision.
[5] In their Motion to Dismiss, Defendants' refer to the doctrine of fraudulent concealment as the doctrines of equitable estoppel and equitable tolling.

In *Alumax Mill Products, Inc. v. Krzysztofiak*, No. 96 C 5012, 1997 WL 201555, at *5 (N.D. Ill. Apr. 17, 1997) the court found that Plaintiffs adequately pled facts for equitable tolling by alleging; "… despite due diligence, defendants' self-concealment of their fraudulent scheme, through the use of shell corporations and an alias, prevented plaintiff from discovering the scheme until June 1996."

Plaintiffs allegations here are essentially the same for sufficiency purposes to those that survived a motion to dismiss in *Alumax*:

> Any applicable statutes of limitations have been tolled by the *Defendants' continuing, knowing, and active concealment* of the facts alleged herein, *including but not limited to Defendants' practices of concealing that they would not, despite promises, refinance loans. Despite exercising reasonable diligence*, Plaintiffs and members of the Class could not have discovered, did not discover, and *were prevented from discovering*, the wrongdoing complained of herein.

CAC, ¶232 (emphasis added).

These allegations also support a theory of equitable estoppel. "Whether a complaint provides fair notice of the grounds on which it rests 'is determined by looking at the complaint as a whole.'" *Hargarten v. Sheahan*, No. 05 C 6006, 2006 WL 3087108, at *4 (N.D. Ill. Oct. 27, 2006); *citing*, *Scott v. City of Chicago*, 195 F.3d 950, 952 (7th Cir.1999). Contrary to the Defendants' assertion that, "the sum and substance of Borrower Plaintiffs' allegations concerning equitable tolling and equitable estoppel…are set forth in paragraphs 232 and 233 of the Complaint…," Motion to Dismiss, p. 26, Plaintiffs' allegations that the Defendants took active steps to prevent them from suing within applicable statute of limitations period appear throughout the complaint. *See, e.g.* Complaint ¶7 ("Ameriquest also routinely fails to provide required disclosures…and fail[s] to leave a true copy of completed loan documents in borrowers' possession so that borrowers cannot review the loan terms."); Complaint ¶95 ("This

20

practice goes hand in hand with Ameriquest's uniform practice of failing to make statutory disclosures and misrepresenting or concealing loan terms…); Complaint ¶114 ("Ameriquest unfairly and deceptively holds out its mortgage loans as sound financial transactions that will save borrowers money. Ameriquest fails to disclose prior to closing and/or intentionally obfuscates and/or conceals [required disclosures and loan terms] before and at the closing…"). Plaintiffs' Complaint therefore provides sufficient notice of Plaintiffs grounds for tolling the statute of limitations under equitable doctrines.

### VII. DEFENDANTS' REQUEST FOR A MORE DEFINITE STATEMENT SHOULD BE REJECTED.

### A.    Plaintiffs Have Alleged Their Contract-Based And Statutory Consumer Protection Claims With Sufficient Specificity.

Defendants argue that Plaintiffs should be required to provide a more definite statement of their contract-based claims and certain of their statutory consumer protection claims pursuant to Rule 12(e), Federal Rule of Civil Procedure.[6]  However, Plaintiffs have provided more than enough information to give Defendants notice of their claims and to allow Defendants to draft a responsive pleading.

It is well-settled in this district that Rule 12(e) motions are "generally disfavored and courts should grant such motions only if the complaint is so unintelligible that the defendant cannot draft a responsive pleading." *Moore v. Fidelity Financial Servs., Inc.*, 869 F. Supp. 557, 560 (N.D. Ill. 1994) (denying Rule 12(e) motion for TILA and contract class action claims) (cited by Defendants).  Otherwise, a defendant could prematurely improperly use a Rule 12(e)

---

[6] Defendants did not seek a more definite statement under Rule 12(e) of Plaintiffs' Eleventh Cause of Action (Unfair, Unlawful, and Deceptive Acts and/or Practices in Violation of California Business & Professions Code §§ 17200 et seq.) or the Twelfth Cause of Action (the CLRA).  Instead, they challenge the pleading of the Thirteenth Cause of Action (Violation of State Consumer Protection and Unfair and Deceptive Trade Practices Acts).

motion as a substitute for discovery. *Id.* ("12(e) motions are not to be used as substitutions for discovery").

In a contract dispute, a motion for a more definite statement is granted only when "defendants can only guess as to what conduct and contracts and an allegation refers." *Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.,* 882 F. Supp. 713, 726 (N.D. Ill. 1995) (denying Rule 12(e) motion) (internal citations omitted); *eOnline v. Chicago Consulting Partners,* No. 01 C 1918, 2002 WL 484865, at *6 (N.D. Ill. Mar. 29, 2002) (same). Not surprisingly, given this stringent test, Defendants do not cite to any case in which a Rule 12(e) motion was granted in a contract case.

Here, Plaintiffs have alleged that Defendants failed to provide agreed-upon discounted interest rates for which Defendants charged discount fees; delivered different loan terms at closing than had been promised to prospective borrowers in connection with rates, monthly payments, and penalties; and charged fees that were not authorized by loan contracts. Complaint, ¶¶ 92-105, 112, 114, 118-121, 268-192. Nothing more is required.

Defendants resort to improper merits arguments based on the terms of the very contracts of which they purport to be unsure. As discussed below, they invoke form choice-of-law provisions in their contracts, and even attach contract documents to their brief. Motion to Dismiss at pp. 22–23; Request for Judicial Notice at Exhibits 4–22. These arguments confirm that Defendants know exactly what contracts are at issue here.

Defendants also argue that Plaintiffs should be required to provide a more definite statement of their consumer protection and unfair and deceptive trade practices act claims. This argument, which essentially seeks to litigate choice-of-law issues under the guise of a Rule 12(e) motion, is premature and improper.

22

Defendants do not and cannot argue that they are not on notice of the specific unfair, unlawful, and deceptive conduct that Plaintiffs allege. They have not sought to obtain a more definite statement of Plaintiffs' allegations on behalf of a nationwide class under California Business & Professions Code §§ 17200 *et seq*. and the CLRA. (The nationwide allegations are predicated on the fact that Defendants are based in California and allegedly devised and perpetrated the scheme from California. Complaint, ¶¶ 303-304, 312-313.)

Instead, Defendants attack the alternative consumer protection allegations Plaintiffs make, whereby Plaintiffs allege that Representative Plaintiffs can assert claims under their own state's consumer protection laws. Complaint, ¶ 322. Defendants do not explain why or how this alternative argument requires a more definite statement. Instead, Defendants appear to prematurely argue choice-of-law, which should await class certification.

At the appropriate time, and after discovery and the development of a full class certification record, Plaintiffs will demonstrate what law applies in this case using Illinois choice-of-law analysis. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941) (the choice-of-law determination in connection with state law claims in federal court is evaluated according to the choice-of-law principles in the forum state). At *this* stage, Plaintiffs need not do more than describe the unfair, unlawful, and fraudulent practices at issue.

Finally, Defendants do not cite to any case involving a successful Rule 12(e) challenge where the defendant was plainly on notice of the plaintiff's allegations of unfair, unlawful, and fraudulent conduct. Defendant's cases on pp. 22-23 of their brief involve neither consumer protection statutes nor Rule 12(e) motions at all, and are thus completely distinguishable. For example, *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 366 (2005), stands for the proposition that a plaintiff in a Securities Exchange Act case cannot satisfy the requirement of providing

23

economic loss by alleging only that the price of the security was inflated. In *Cetina v. Super Target*, No. 3:04-CV-1475-M, 2004 WL 2434416 (N.D. Tex. Nov. 1, 2004), the court granted a 12(b)(6) dismissal in a civil rights case in which the plaintiff failed to allege that he was a member of a protected class, facts relating to an adverse unlawful employment decision, and/or the state claim under which he was seeking relief for discrimination.

**B.    The Defendants' Request For A More Definite Statement Is Little More Than A Thinly Disguised And Premature Attack On The Merits.**

"The purpose of a motion to dismiss … is to decide the adequacy of the complaint, not the merits of the case." *Cabrera v. World's Finest Chocolate, Inc.,* No. 04 C 0413, 2004 WL 1535850, at *3 (Aspen, J.) (N.D. Ill. Jul. 7, 2004), citing, *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). For the various reasons discussed above, Plaintiffs' 75-page Complaint is more than adequate to put the Defendants on notice of the claims at issue. The Complaint more than adequately meets the requirements of notice pleading, particularly in light of the incorporation and preservation of underlying pleadings.[7]

In a case this large, it is no small task to consolidate the many underlying Complaints. The Complaints were generated by many lawyers in myriad jurisdictions. Several of the Complaints were generated under state law and removed, and are thus designed to meet various state law pleading requirements. The tangled web of corporate entities that the Defendants used to implement their various schemes also complicates the process of consolidating the underlying complaints. These issues can only be resolved after a reasonable opportunity for discovery.

To the extent the Court finds the resulting consolidated pleading deficient in any respect, other than based on an irremediable point of law, Plaintiffs request an opportunity to amend.

---

[7] Defendants' Rule 9 arguments, which present a somewhat different issue, are discussed more fully above.

24

Alternatively, Plaintiffs request leave to proceed with discovery and then to address arguable deficiencies in their pleading with an even more comprehensive pleading. This would, among other things, allow Plaintiffs to more specifically allocate responsibilities for the claims to the particular Defendant(s) who orchestrated and controlled the relevant uniform policies.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Borrowers' Consolidated and Amended Complaint should be denied in its entirety. In the alternative, Plaintiffs request an opportunity to amend consistent with the opinion of the Court.

Respectfully submitted,

Dated:  February 9, 2007

_/s/ Kelly M. Dermody_
Kelly M. Dermody

Kelly M. Dermody (CA Bar No. 171716)
Caryn Becker (CA Bar No. 196947)
LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

_/s/ Jill Bowman_
Jill Bowman

Jill Bowman
JAMES, HOYER, NEWCOMBER
 & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL  33609
Telephone: (813) 286-4100
Facsimile:  (813) 286-4174

_/s/ Gary Klein_
Gary Klein

Gary Klein
Elizabeth Ryan
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA  02111-2810
Telephone:  (617) 357-5500 ext. 15
Facsimile:  (617) 357-5030

_Plaintiffs' Co-Lead Counsel_

_/s/ Marvin A. Miller_
Marvin A. Miller

Marvin A. Miller
MILLER LAW LLC
101 North Wacker Drive, Ste. 2010
Chicago, IL  60606
Telephone:  (312) 525-8316
Facsimile:  (312) 525-8231

_Plaintiffs' Liaison Counsel_

26