**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRENDA BOWDEN and DARRON BOWDEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:06-cv-05991 |
| v. | ) | |
| | ) | MDL #1715 |
| ARGENT MORTGAGE COMPANY, L.L.C.; | ) | |
| AMERIQUEST MORTGAGE SECURITIES, | ) | Judge Marvin E. Aspen |
| INC., AMC MORTGAGE SERVICES, INC. | ) | |
| 5 STAR FINANCIAL, INC., and DOES 1-5, | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

## AMENDED COMPLAINT

### INTRODUCTION

      1.    Plaintiffs Brenda Bowden and Darron Bowden bring this action against a "subprime" mortgage lender and its affiliates to rescind a mortgage for violation of (A) the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, and (B) the Illinois Consumer Fraud Act, 815 ILCS 505/2.

### JURISDICTION AND VENUE

      2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here.

### PARTIES

      3.    Plaintiffs Brenda Bowden and Darron Bowden own and reside in a home at 3424 West 192nd Street, Homewood, IL 60430.

4.     Defendant Argent Mortgage Company, L.L.C. ("Argent") is a foreign limited liability company which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, Inc., 200 W. Adams, Chicago, IL 60606.

5.     Defendant Argent is engaged in the business of originating "subprime" mortgages.

6.     Defendant Argent makes more than 26 loans per year.

7.     Defendant Argent is a "creditor" as defined in TILA and Regulation Z.

8.     Argent is an affiliate of Ameriquest Mortgage Company.

9.     During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

10.     Defendant AMC Mortgage Services, Inc., is a foreign corporation which does business in Illinois. A corporate affiliate of Ameriquest, it services loans originated by Ameriquest and claims an interest in such loans, including the right to receive payments thereunder. Its registered agent and office are National Registered Agents, Inc., 200 W. Adams, Chicago, IL 60606. It is joined as a necessary party.

11.     Defendant Ameriquest Mortgage Securities, Inc., an affiliate of Ameriquest Mortgage Company, is a foreign corporation which transacts business in Illinois. It holds legal title to loans originated by Ameriquest Mortgage Company. It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

2

13. Defendant 5 Star Financial, Inc., is a domestic corporation which is incorporated, maintains offices in, and does business in Illinois. It is engaged in the business of a mortgage broker. Its registered agent is Brian M. Bockholdt, 1105 Trailsend Lane, Joliet, IL 60436.

## FACTS RELATING TO PLAINTIFFS

12. Prior to April 2, 2004, plaintiffs applied for a mortgage with Argent.

13. Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

14. The loan was closed on April 2, 2004.

15. Immediately prior to the closing, plaintiffs were informed that the loan terms were being altered to their detriment, as set forth on Exhibit A.

16. The following are documents relating to the loan:

   a. A note, Exhibit B;

   b. A mortgage, Exhibit C;

   c. Two different settlement statements, Exhibits D-E;

   d. A Truth in Lending statement, Exhibit F;

   e. A "summary of debts and disbursements," Exhibit G;

   f. The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit H;

17. The reason for two different settlement statements is that the disbursements and other terms of the transaction were changed after the closing.

18. Attached as Exhibit I is the envelope, postmarked April 8, 2004, in which

3

the second settlement statement was sent to plaintiffs.

20.     In approximately December, 2003, Robert Rodriguez, an employee of 5 Star Financial, made a promise to plaintiffs to set up an escrow account to pay plaintiffs' property taxes along with their mortgage payments.

21.     In approximately late February, 2004, Rodriguez called plaintiffs to say that he could not offer them a real estate tax escrow after all, but he promised that plaintiffs would receive a large check at closing with which to pay their property taxes.

22.     On April 2, 2004, in the letter attached hereto as Exhibit J, Rodriguez specifically promised payment of $2,352 to plaintiffs.

23.     Six days after closing, Law Title mailed plaintiffs a second settlement statement with instructions to sign and mail it back. (Exhibits E and I).

24.     The settlement statement that was given to plaintiffs at closing indicates settlement charges of $6,133.33, whereas the settlement statement mailed to plaintiff later has settlement charges of $6,454.53. (Exhibit D, line 1400; Exhibit E, line 1602).

25.     Neither of these match the settlement charges indicated on the Borrower's Acknowledgment of Final Loan Terms, which shows $6,179.53. (Exhibit A).

26.     Because plaintiffs did not receive the second settlement statement until after the end of the TILA rescission period, they believed there was nothing they could do about the changed settlement figures.

27.     Neither settlement statement shows a $2,352 disbursement to plaintiffs.

28.     Approximately two weeks after closing, plaintiffs received in the mail a check from 5 Star Financial for only $790 (Exhibit K).

4

29.    Neither settlement statement shows a $790 disbursement to plaintiffs.

30.    Plaintiff Brenda Bowden called 5 Star Financial to demand the rest of the money Rodriguez had promised at closing, but she was never able to reach him, and she never received any explanation from anyone else.

31.    5 Star received a yield spread premium of $7,100.00 from Argent in exchange for 5 Star increasing the interest rate on plaintiffs' loan.  As a result of the payment, the acts of 5 Star are attributable to Argent.

32.    Plaintiffs  were later directed to make payments to AMC Mortgage Services, Inc.

33.    On information and belief, Ameriquest Mortgage Securities, Inc. owns plaintiffs' loan.

34.    In the event Ameriquest Mortgage Securities, Inc. does not own plaintiffs' loan (actual ownership is rarely if ever shown of record), the actual owners are named herein as Does 1-5.

## RIGHT TO RESCIND

35.    Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

   **(a) Consumer's right to rescind.**

   **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security**

interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.  [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

### GROUNDS FOR RESCISSION

36.     In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, or the required financial disclosures, in violation of 15 U.S.C. §1637 and 12 C.F.R. §226.18, for (without limitation) the reasons stated below.

37.     Defendants failed to provide two completed notices of right to cancel to each mortgagor as required by TILA.  See Exhibit H.

38.     The documents are dated as if the transaction was consummated on April 2, 2004, after which the terms of the transaction changed.

39.     In fact, the loan was never been properly consummated, since plaintiffs still have not received a document showing the $790 disbursement.

40.     The documents do not reflect the actual terms of the transaction.

41.     Notice of rescission has been given to defendants.  A copy is attached as Exhibit L.

42.     The loan has not been rescinded.

43.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

44.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

a.    A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

b.    Statutory damages for the underlying disclosure violation;

c.    If appropriate, statutory damages for failure to rescind;

d.    Attorney's fees, litigation expenses and costs.

e.    Such other or further relief as the Court deems appropriate.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

45.    Plaintiffs incorporate paragraphs 1-34.   This claim is against Argent and 5 Star Financial.

46.    Defendants engaged in unfair and deceptive acts and practices, in violation of § 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by engaging in "bait and switch" practices, by promising at closing to give plaintiffs $2,352.00 and then sending plaintiffs only $790.00.

47.    Argent and 5 Star Financial engaged in such practices in the course of trade and commerce.

48.    Argent and 5 Star Financial engaged in such practices for the purpose of

8

inducing reliance on the part of plaintiffs to enter into the disadvantageous transaction.

49.     Plaintiffs did, in fact, rely on Argent and 5 Star Financial's promise.

50.     Plaintiffs were damaged as a result.  They did not receive sufficient money from closing to pay their property taxes.

51.     Argent and 5 Star Financial's conduct was intentionally deceptive and malicious.  Substantial punitive damages are warranted.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against defendants for the following relief:

a.     Compensatory and punitive damages;

b.     Attorney's fees, litigation expenses and costs; and

c.     Such other or further relief as the Court deems appropriate.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Michelle R. Teggelaar
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiffs demand trial by jury.

s/Daniel A. Edelman
Daniel A. Edelman

T:\17092\Pleading\Complaint_Pleading.WPD

10