**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TERRY A. BOTHWELL, and ) <br> CHERYL A. BOTHWELL, ) <br>   ) <br>       Plaintiffs, ) <br>   ) <br> v.   ) <br>   ) <br> AMERIQUEST MORTGAGE COMPANY, ) <br> AMC MORTGAGE SERVICES, INC., ) <br> CITIFINANCIAL MORTGAGE COMPANY, ) <br> INC., AMERIQUEST MORTGAGE ) <br> SECURITIES, INC., DEUTSCHE BANK ) <br> NATIONAL TRUST COMPANY, N.A., and ) <br> DOES 1-5, ) <br>   ) <br>   ) <br>       Defendants. ) | Case No. 06 C 4716 (N.D. Ill.) <br> (Originally Case No. 06 CV 175 <br> (N.D. Ind.)) <br><br> MDL #1715 <br> Lead Case No. 05-cv-07097 <br><br> Judge Marvin E. Apsen <br><br><br> **JURY DEMANDED** |

**AMENDED COMPLAINT**

**INTRODUCTION**

1. Plaintiffs Terry Bothwell and Cheryl Bothwell bring this action against a "subprime" mortgage lender and its affiliates to rescind a mortgage and recover damages for violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226; and state law.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), 1367 (supplemental jurisdiction), and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here.

1

**PARTIES**

3. Plaintiffs Terry Bothwell and Cheryl Bothwell jointly own and reside in a home at 5142 Osage Avenue, Portage, IN 46368.

4. Defendant Ameriquest Mortgage Company is a foreign corporation which maintains offices in and does business in Indiana. Its registered agent is National Registered Agents, located at 320 Meridian Street, Indianapolis, IN 46204.

5. Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6. Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

7. Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8. Defendant AMC Mortgage Services, Inc. is a foreign corporation which does business in Indiana. Its registered agent is National Registered Agents, located at 320 Meridian Street, Indianapolis, IN 46204.

9. Defendant AMC Mortgage Services, Inc., an affiliate of Ameriquest Mortgage Company, services loans originated by Ameriquest Mortgage Company, and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

10. Defendant CitiFinancial Mortgage Company, Inc. is a foreign corporation which transacts business in Indiana. It is located at 300 Saint Paul Place, Baltimore, MD 21202. Its registered agent is CT Corporation, located at 36 S. Pennsylvania Street, Suite 700,

Indianapolis, IN 46204.

11. Defendant Ameriquest Mortgage Securities, Inc., an affiliate of Ameriquest Mortgage Company, is a foreign corporation which transacts business in Illinois. It owns loans originated by Ameriquest Mortgage Company, including, on information and belief, that of plaintiffs. It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

12. Defendant Deutsche Bank National Trust Company, N.A., is a federally chartered bank located at 60 Wall Street, New York, NY. On information and belief it holds legal title to plaintiffs' loan, probably as trustee.

## FACTS RELATING TO PLAINTIFFS

13. Plaintiffs are ordinary consumers. At the time of refinancing, Terry Bothwell was employed as a truck driver and Cheryl Bothwell was on disability.

14. Prior to September 20, 2005, plaintiffs applied over the phone for a mortgage with Ameriquest Mortgage Company.

15. Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

16. During the initial phone conversation, Cheryl Bothwell gave plaintiffs' credit information to an Ameriquest employee named Christopher Mallonee. Mallonee then told Ms. Bothwell that plaintiffs qualified for a 6.0% interest rate.

17. At no point before the closing did Mallonee or any other Ameriquest employee mention closing costs to either plaintiff.

18. The loan was closed on September 20, 2005.

19. Plaintiffs signed or received (not necessarily prior to consummation) the

3

following documents relating to the loan:

   a. A note, <u>Exhibit A</u>;

   b. A mortgage, <u>Exhibit B</u>;

   c. A Truth in Lending disclosure statement, <u>Exhibit C</u>; and

   d. Two different notices of right to cancel, <u>Exhibits D and E</u>;

  20. Plaintiffs received only a single copy of the federal notice of right to cancel.

  21. During the closing, plaintiffs noticed that their documents listed a 6.99% interest rate instead of the 6.0% interest rate that Mallonee had promised them.

  22. When plaintiffs protested the interest rate, Ameriquest's closing agent, a young woman named "Lisa," told them that 6.99% was the best rate that plaintiffs could get.

  23. However, prior to quoting them the 6.0% rate, Ameriquest had pulled plaintiffs' credit reports and obtained financial information about the plaintiffs sufficient to evaluate the rate for which they qualified .

  24. Plaintiffs were later directed to make payments to AMC Mortgage Services, Inc, and shortly thereafter, to CitiFinancial Mortgage Company, Inc.  Then, in the summer of 2006, plaintiffs were directed to make payments to AMC Mortgage Services, Inc., again.

  25. On information and belief, Ameriquest Mortgage Securities, Inc., currently owns plaintiffs' loan and Deutsche Bank holds legal title to it.

  26. In the event Ameriquest Mortgage Securities, Inc., does not own

plaintiffs' loan or Deutsche Bank does not hold legal title to it (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## COUNT I - TILA

27. Plaintiffs incorporate paragraphs 1-26. This claim is against all defendants.

## RIGHT TO RESCIND

28. Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

> **(a) Consumer's right to rescind.**
>
> **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**
>
> **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**
>
> **(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the**

5

>    rescission period shall be extended in accordance with section 125(f) of the Act.  [15 U.S.C. §1635(f)]
>
>    **(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**
>
> **(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**
>
>    **(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**
>
>    **(2) The consumer's right to rescind the transaction.**
>
>    **(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**
>
>    **(4) The effects of rescission, as described in paragraph (d) of this section.**
>
>    **(5) The date the rescission period expires. . . .**
>
> **(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:**
>
>    **(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**
>
>    **(2) A credit plan in which a state agency is a creditor.**

### GROUND FOR RESCISSION

29.    In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23,  or the required financial disclosures, in violation of 15 U.S.C. §1637 and 12 C.F.R. §226.18, for (without limitation) the reasons stated below.

6

30. Ameriquest failed to deliver the correct number of federal notices of right to cancel to plaintiffs. 12 C.F.R. §226.23(a)(1); 12 C.F.R. §226.23(b). Further, plaintiffs received only one *completed* notice of right to cancel.

31. In addition, the delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. Further, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

32. Notice of rescission has been given to defendants. A copy is attached as Exhibit F.

33. The loan has not been rescinded.

34. Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

35. 15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

    a. A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

    b. Statutory damages for the underlying disclosure violation;

    c. If appropriate, statutory damages for failure to rescind;

    d. Attorney's fees, litigation expenses and costs.

    e. Such other or further relief as the Court deems appropriate.

### COUNT II – INDIANA DECEPTIVE CONSUMER SALES ACT

36. Plaintiffs incorporate paragraphs 1–26. This claim is against Ameriquest.

37. Plaintiffs used the proceeds of their Ameriquest loan for primarily personal and household purposes.

38. After taking plaintiffs' credit information, Ameriquest represented that the interest rate would be 6.0%. At closing, Ameriquest informed plaintiffs that their interest rate would be 6.99%. This bait-and-switch conduct violates the Indiana Deceptive Consumer Sales Act, Burns Ind. Code Ann. § 24-5-0.5-2 et seq.

39. This act and representation were deceptive as to the subject matter of a consumer transaction, i.e., the terms of the loan and the cost of the loan.

40. Ameriquest has not cured or offered to cure its deceptive act and representation.

41. Ameriquest's act and representation are incurable.

42. Ameriquest's deceptive act and misrepresentation were willful.

43. Plaintiffs suffered actual damages as the proximate result of Ameriquest's deceptive act and representation. § 24-5-0.5-4(a). Plaintiffs were promised a particular interest rate, then were forced to pay a higher interest rate after the closing of their loan.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

    a. Actual damages;

    b.  Increased damages for willful conduct;

    c.  A voiding or limiting of Ameriquest's note and mortgage with plaintiffs.

    d.  Restitution;

    e.  Attorney's fees, costs and litigation expenses; and

    f.  Any other or further relief that the Court deems just.

            s/Daniel A. Edleman
            Daniel A. Edelman

Daniel A. Edelman
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
   & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

  Plaintiffs demand trial by jury.

            s/Daniel A. Edelman
            Daniel A. Edelman

T:\16563\Pleading\1st Amended Complaint_Pleading.WPD