IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO:<br>*JULIEN, et al. v. AMERIQUEST MORTGAGE COMPANY*, Case No. 06-320 (N.D. Ga.) | |

**DEFENDANT AMERIQUEST MORTGAGE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

Plaintiffs Lynn and Denise Julien's (together, "Plaintiffs") Motion for Leave to File Second Amended Complaint (the "Motion") [Docket No. 455] should be denied because leave to amend would be futile. In their proposed Second Amended Complaint (the "SAC"), Plaintiffs seek to add a claim for statutory damages under the Truth-in-Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"), and a claim under the Georgia Fair Business Practices Act, O.C.G.A §§ 10-1-390, *et seq.* (the "Georgia FBPA" or "FBPA"). Neither claim, however, can stand as a matter of law. First, Plaintiffs' claim for statutory damages under TILA is untimely because this action was filed after the expiration of the applicable one-year limitations period. Second, the Georgia FBPA does not apply to mortgage loan transactions and, even if it did, Plaintiffs do not allege facts showing that defendant Ameriquest Mortgage Company's ("AMQ") conduct harmed or could harm the general public. Accordingly, this Court should deny the Motion in its entirety.

1

## II. ARGUMENT

Although leave to amend shall be given when justice so requires, Fed. R. Civ. P. 15(a), a district court should deny leave to amend if it would be futile. *Indiana Funeral Directors Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003); *DeSalle v. Wright*, 969 F.2d 273, 277-78 (7th Cir. 1992). Leave to amend is futile if the proposed claim fails to allege any facts which could conceivably support a valid theory of liability. *Goulding v. Feinglass*, 811 F.2d 1099, 1103 (7th Cir. 1987) (*citing Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979), *cert. denied*, 482 U.S. 929 (1987)). As detailed below, Plaintiffs' proposed claims fail as a matter of law. Accordingly, this Court should deny the Motion because leave to amend would be futile.

**A.     Plaintiffs Cannot State A Claim For Statutory Damages Under TILA.**

Actions for statutory and actual damages under the Federal TILA must be brought within one year. 28 U.S.C. § 1640(e). The limitation period for a claim for damages begins to run "when credit is extended through consummation of the transaction between the creditor and its customer without the required disclosures being made." 28 U.S.C. § 1635(a). "Consummation" occurs "when the consumer becomes contractually bound to a credit transaction." *Janikowski v. Lynch-Ford, Inc.*, No. 98 C 8111, 1999 WL 608714, at *3 (N.D. Ill. Aug. 5, 1999) (*citing* 12 C.F.R. § 226.2(a)(13)); *accord Dreyden v. Lou Budke's Arrow Fin. Co.*, 640 F.2d 641, 646 (8th Cir. 1980) ("consummation" under TILA occurs "at the time a contractual relationship is created between a creditor and a customer irrespective of the time of performance of either party").

In their proposed SAC, Plaintiffs seek to add a claim for statutory damages under TILA based on AMQ's purported failure to rescind loan transactions they entered into with AMQ on March 10, 2004 and February 14, 2005. (SAC, ¶¶ 7, 21, 43-65.) Yet, Plaintiffs did not file this lawsuit until June 12, 2006, more than one year after their loan was consummated. Accordingly,

Plaintiffs cannot state a claim for statutory damages under TILA as a matter of law, and leave to amend in this regard would be futile.

B.      **Plaintiffs Cannot State A Claim For Violation Of The Georgia FBPA.**

       1.      **The FBPA Does Not Apply To Residential Mortgage Loan Transactions.**

The intent and express language of the FBPA preclude its application to home mortgage transactions like the one involved in this case because such transactions are subject to extensive state and federal regulation. *See* O.C.G.A. § 10-1-396(1). In fact, the Georgia Court of Appeals has unambiguously held that the General Assembly "intended that the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that the FBPA not apply in regulated area of activity." *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga. App. 38, 45, 502 S.E.2d 759, 805 (Ga. Ct. App. 1998); *see also Brogdon v. National Healthcare Corp.*, 103 F. Supp. 2d 1322 (N.D. Ga. 2000). In *Brogdon*, the court analyzed the FBPA and its preemption clause as follows:

> The FBPA is designed to "protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state." Stated differently, "[t]he purpose of the Georgia FBPA is to protect consumers against that limited class in conduct of consumer transactions and consumer acts or practices in trade or commerce which involve 'unfair and deceptive practices' within the consumer marketplace."
>
> The FBPA does not apply to "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States." Indeed, the legislature "intended that the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that the FBPA not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise." Accordingly the FBPA does not apply in extensively regulated areas of the marketplace such as investment account transactions, finance charges and required disclosures by lenders, and insurance transactions.

*Brogdon*, 103 F. Supp. 2d at 1336 (internal cites omitted). In *Brogdon*, the court dismissed plaintiff's Georgia FBPA claim asserted in a nursing home negligence case because the degree of

3

care in nursing homes is regulated by state and federal agencies, and the FBPA therefore did not apply. *Id.* at 1336-37. The Court concluded its analysis of the FBPA by noting that *Chancellor* "observed that the General Assembly intended the FBPA to have a 'restricted application only to the unregulated consumer marketplace.'" *Id.* at 1337 (emphasis in original) (*citing Chancellor*, 233 Ga. App. at 45, 502 S.E.2d at 805).

The home mortgage industry involved in the present case is more heavily regulated than the nursing home industry involved in *Brogdon*, and transactions such as Plaintiff's loan are therefore not subject to the FBPA. Plaintiffs admit in the SAC that AMQ is subject to the requirements and regulations of TILA. (SAC, ¶¶ 8, 22.) Mortgage transactions also are governed by RESPA and Regulation X, 24 C.F.R. §§ 3500.1, *et seq.* There is a multitude of other state and federal laws and regulations potentially applicable to AMQ and the underlying mortgage loan transactions. *See*, *e.g.*, the Georgia Residential Mortgage Act, O.C.G.A. §§ 7-1-1000, *et seq.* (under which Plaintiffs seek relief in this action); the Georgia Fair Lending Act, O.C.G.A. §§ 7-6A-1, *et seq.*; the Home Ownership and Equity Protection Act, 15 U.S.C. §§ 1602(aa), 1639, and 1641(d); the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*; the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

Thus, the home mortgage industry clearly is not part of the "unregulated consumer marketplace" to which the Georgia Court of Appeals has held the application of the FBPA should be restricted. *See Chancellor*, 233 Ga. App. at 45. In addition to nursing home care, courts have held the FBPA to be inapplicable to such regulated transactions as investment account transactions, *Taylor v. Bear Stearns & Co.*, 572 F. Supp. 667, 675 (N.D. Ga. 1983), automobile financing, *Chancellor*, 233 Ga. App. at 45, 502 S.E.2d at 799, and insurance

4

transactions, *Ferguson v. United Ins. Co. of Am.*, 163 Ga. App. 282, 283, 293 S.E.2d 736 (1982). Similarly, the FBPA is inapplicable to Plaintiffs' mortgage transactions with AMQ.

### 2. The FBPA Does Not Apply Because The Alleged Wrongful Conduct Had No Actual Or Potential For Harm To The General Consuming Public.

Plaintiff's FBPA claim is based solely on allegations that AMQ made misrepresentations to them in connection with their loan transactions. (SAC, ¶ 67.) These allegations are insufficient to support a claim under the FBPA because the potential impact of AMQ's alleged conduct was solely upon Plaintiffs, and could not be a source of damage to any other member of the consuming public. The Georgia Court of Appeals has explained this distinction as follows:

> One may bring a private suit under the FBPA only if he is individually injured by the breach of a duty owed to the consuming public in general. O.C.G.A. § 10-1-399 does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction. In those circumstances, even though the plaintiff may be a "consumer" with regard to the transaction, if the deceptive or unfair act or practice had or has no potential for harm to the general consuming public, the allegedly wrongful act of the defendant was not made in the context of the consumer marketplace. Unless it can be said that the defendant's actions had or has potential harm for the consumer public the act or practice cannot be said to have "impact" on the consumer marketplace and any act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA. [Citation.] ***When a "consumer" suffers damage as the result of an unfair or deceptive act or practice which had or has potential impact solely upon him and which is not and could not be a source of damage to any other member of the consuming public, there is no public interest to be served by proceeding under the FBPA, and the aggrieved party is relegated to pursuit of relief under other statutory or common law principles***. [Citation.] The FBPA is no panacea for the congenital ills of the marketplace (and) does not instantly convert every alleged breach of contract into a violation of the (act). [Citations.]

*Lynas v. Williams*, 216 Ga. App. 434, 436, 454 S.E.2d 570, 573 (Ga. Ct. App. 1995) (emphasis added).

*Zeeman v. Black*, 156 Ga. App. 82, 273 S.E.2d 910 (Ga. Ct. App. 1980), illustrates the application of the above-quoted principles. In *Zeeman*, purchasers of real property sued a realty company under the FBPA for an alleged misrepresentation made by the realty company relating

5

to the purchased property. In upholding the summary judgment in favor of defendant realty company, the Georgia Court of Appeals noted that the alleged misrepresentation was

> made only to the [plaintiffs] and to no one else. While we have no doubt that a single instance of an unfair or deceptive act or practice is a sufficient predicate upon which to base a claim for damages under [the FBPA] if the public consumer interest would be served thereby, there is serious doubt that the misrepresentation in the instant case had or could have had impact on any other market than the [plaintiffs] . . . . Absent either public advertising or a misrepresentation such that the specifics of which, if repeated, could be harmful to future similarly situated buyers of real property, it is difficult to find sufficient 'public policy' to authorize resort to the FBPA.

*Id.*, 156 Ga. App. at 86, 273 S.E.2d at 916.

Similarly, in *Borden v. Pope Jeep-Eagle, Inc.*, 200 Ga. App. 176, 407 S.E.2d 128 (Ga. Ct. App. 1991), plaintiff asserted an FBPA claim arising out of defendant automobile dealer's alleged misconduct relating to a simple interest car loan. In upholding the directed verdict in favor of defendant, the Georgia Court of Appeals held that "[t]here is no evidence that the defendant's actions in this transaction had the potential for harming the general public. Defendant did not advertise simple interest contracts to the general public nor was there evidence that it was defendant's practice to sell cars promising simple interest installment loans and later attempt to dishonor those contracts." *Id.*, 200 Ga. App. at 177, 407 S.E.2d at 131.

In the SAC, Plaintiffs' FBPA claim does not arise out of any advertising by AMQ or misrepresentation made by AMQ to the general public. Plaintiffs' allegations are simply that AMQ made misrepresentations to them in connection with their loans. (SAC, ¶ 67.) Even if true, such alleged conduct does not affect the consuming public generally, does not impact anyone other than Plaintiff, and therefore cannot sustain a claim under the FBPA.

Plaintiffs attempt to fit this claim into the FBPA by alleging in conclusory fashion that AMQ's purported conduct "is not an isolated instance, confined to Plaintiffs' situation. Other persons in Georgia have been similarly abused by [AMQ]." (SAC, ¶ 74). However, Plaintiffs'

6

sweeping statements regarding "other persons in Georgia," cannot support any argument that the allegedly wrongful conduct involving Plaintiffs' loan has or may cause any actual and/or potential harm to the consuming public generally. In fact, these are just the type of allegations that courts uniformly have held are insufficient to state a claim even under the liberal pleading requirements of the Federal Rules. *See*, *e.g.*, *Cushing v. City of Chicago*, 3 F.3d 1156, 116, n.5 (7th Cir. 1993).

Put simply, Plaintiffs' broad and conclusory allegation that AMQ's conduct affects "other persons" does not render the private transaction between Plaintiffs and AMQ a transaction that affects the public generally. Therefore, under Georgia law, Plaintiffs' FBPA claims must fail.

### III.     CONCLUSION

For the foregoing reasons, AMQ respectfully requests that this Court deny the Motion in its entirety.

Respectfully submitted,

DATED: February 23, 2007      By: /s/ Bernard E. LeSage

*Attorneys for defendants Ameriquest Mortgage Company and Deutsche Bank National Trust Company*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457

7

## **CERTIFICATE OF SERVICE**

I, Bernard E, LeSage, hereby certify that on this 23rd day of February 2007, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Bernard E. LeSage

BN 1137975v1