## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS E. CAMPAU and | ) | |
| KATHRYN A. CAMPAU, | ) | |
| | ) | 07 cv 118 (N.D. Ill.) |
| Plaintiffs, | ) | (Originally 06 cv 156 (W.D. Mich.)) |
| | ) | |
| v. | ) | |
| | ) | (transferred for pre-trial proceedings |
| AMERIQUEST MORTGAGE COMPANY, | ) | to MDL No. 1715, Lead Case No. |
| AMERIQUEST MORTGAGE SECURITIES, | ) | 05 C 7097 |
| INC., AMC MORTGAGE SERVICES, | ) | |
| INC., DEUTSCHE BANK NATIONAL TRUST | ) | Judge Marvin E. Aspen |
| COMPANY, N.A., and DOES 1-5, | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) | |

## AMENDED COMPLAINT

### INTRODUCTION

1.      Plaintiffs Thomas E. Campau and Kathryn A. Campau bring this action against a "subprime" mortgage lender and its affiliates to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA") and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, and to recover damages for violation of state law.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), 1367 (supplemental jurisdiction), and 15 U.S.C. §1640 (TILA).   Defendants transact business in the District and are deemed to reside here.

### PARTIES

3.      Plaintiffs Thomas Campau and Kathryn Campau own and reside in a

single family home at 2000 South Hammond Lake Road, West Bloomfield, MI 48324.

4.      Defendant Ameriquest Mortgage Company is a foreign corporation which maintains offices in and does business in Michigan. Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823, or 200 W. Adams, Chicago, IL 60606.

5.      Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6.      Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

7.      Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8.      During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period.  Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States.  During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

9.      Defendant AMC  Mortgage Services, Inc. is a foreign corporation which does business in Michigan. It is an affiliate of Ameriquest. Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823, or 200 W. Adams, Chicago, IL 60606.

10.     Defendant AMC Mortgage Services, Inc., an affiliate of Ameriquest Mortgage Company, services loans originated by Ameriquest Mortgage Company, and claims an

interest in such loans, including the right to receive payments thereunder.  It is joined as a

necessary party.

11.     Defendant Ameriquest Mortgage Securities, Inc., an affiliate of

Ameriquest Mortgage Company, is a foreign corporation which transacts business in Michigan.

It holds legal title to loans originated by Ameriquest Mortgage Company.  It is located at 1100

Town & Country Road, Suite 1100, Orange, CA 92868.

12.     Defendant  Deutsche Bank National Trust Company, N.A., is a federally

chartered  bank located at 60 Wall Street, New York, NY.  On information and belief it holds

legal title to plaintiffs' loan, probably as trustee.

## FACTS RELATING TO PLAINTIFFS

13.     Approximately two weeks prior to December 8, 2004, Ameriquest

employee Henry Bustamante called plaintiffs to solicit them for a mortgage with Ameriquest

Mortgage Company.

14.     Plaintiffs needed and used the loan for personal, family or household

 purposes, namely, refinancing of prior debt incurred for such purposes.

15.     The loan was closed on December 8, 2004.

16.     Immediately prior to the closing, plaintiffs were informed that the loan

terms were being altered to their detriment, as set forth on Exhibit A.

17.     The following are documents relating to the loan:

        a.      A note, Exhibit B;

        b.      A mortgage, Exhibit C;

        c.      A Truth in Lending statement, Exhibit D;

3

        d.      The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit E. Only three copies were delivered and only one of those was filled out;

        e.      A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, Exhibit F;

        f.      A list of "items to be paid off from loan proceeds," Exhibit G; and

        g.      An "Itemization of settlement charges," Exhibit H.

18.      Plaintiffs were charged a "loan discount" of $9,646, or 2% of the principal. This was in addition to an appraisal fee of $270, a tax related service fee of $35, a flood search fee of $16, a lenders processing fee of $626, an administration fee of $239, and an application fee of $360. All of these charges were retained by Ameriquest from the loan proceeds.

19.      Defendant represented and undertook at the closing, by means of a standard form document (Exhibit I), that the retention of the "loan discount" from the loan proceeds was in exchange for a reduction in the interest rate.

20.      This representation or promise was false. In fact, the interest rate was not reduced, but increased, as shown by Exhibit A.

21.      Ameriquest also represented to plaintiffs, through Exhibit G delivered to plaintiffs at closing, that plaintiffs would be receiving direct proceeds of $7,183.17.

22.      On information and belief, plaintiffs did not receive a settlement statement at the closing.

23.      One week later, plaintiffs received an email from Henry Bustamante at

Ameriquest informing them that they would only be receiving $3,812.89 cash out instead of the

$4,358.75 that they had been promised at closing.  The email is attached as Exhibit K.

24.     This email also attached a settlement statement, dated December 14, 2004,

showing closing costs of $17,361.67 and borrower disbursements as $3,812.89.  Exhibit L.

24.     Plaintiff Thomas Campau dated his signature on the settlement statement

December 15, 2004.

25.     Plaintiffs were later directed to make payments to AMC Mortgage

Services, Inc.

26.     On information and belief, Ameriquest Mortgage Securities, Inc., and/or

Deutsche Bank National Trust Company, N.A., owns plaintiffs' loan.

27.     In the event Ameriquest Mortgage Securities, Inc.and/or Deutsche Bank

National Trust Company, N.A. does not own plaintiffs' loan (actual ownership is rarely if ever

shown of record), the actual owners are named as Does 1-5.

## COUNT I – TRUTH IN LENDING ACT

28.     Plaintiffs incorporate paragraphs 1-27.

## RIGHT TO RESCIND

29.     Because the transaction was secured by plaintiffs' home, and was not

entered into for purposes of the initial acquisition or construction of that home, it was subject to

the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23

provides:

> **(a) Consumer's right to rescind.**
>
> > **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each**

consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.  [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

6

> **(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**
>
> **(2) A credit plan in which a state agency is a creditor.**

## GROUNDS FOR RESCISSION

30.     In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, or the required financial disclosures, in violation of 15 U.S.C. §1637 and 12 C.F.R. §226.18, for (without limitation) the reasons stated below.

31.     Instead of four complete copies of the federally-required notice, plaintiffs were given one that was complete and two that were incomplete.

32.     The notices of right to cancel are dated as if the transaction was consummated on December 8, 2004, after which the terms of the transaction changed. The TILA Disclosure Statement (Exhibit D) was similarly misdated.

33.     In fact, the transaction was not consummated until the final disbursements were disclosed or agreed upon, on December 15, 2004. The one complete Notice of Right to Cancel lists the final date to cancel as December 11, 2004.

34.     The amount financed listed on the TILA Disclosure Statement is $469,521.65. The loan amount on the settlement statement dated six days later is $482,300.

35.     Plaintiffs never received a TILA Disclosure reflecting the actual loan amount.

36.     Moreover, the delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to

cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay

past the statutory three days, without recognizing that the extended period is purely contractual,

without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

37.     Furthermore, the "one week" cancellation notice is misleading, as the

period given is actually only six days long.

38.     Ameriquest's own staff finds it necessary to prepare on a monthly basis a

list of cancellation period expiration dates.

39.     Notice of rescission has been given to defendants.  A copy is attached as

Exhibit J.

40.     The loan has not been rescinded.

41.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against

any assignee.

42.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs requests that the Court enter judgment in favor of

plaintiffs and against defendants for:

a.     A judgment voiding plaintiffs's mortgage, capable of recordation

in the public records, and binding on defendants;

b.     Statutory damages for the underlying disclosure violation;

c.     If appropriate, statutory damages for failure to rescind;

    d.  Attorney's fees, litigation expenses and costs.

    e.  Such other or further relief as the Court deems appropriate.

**COUNT II – BREACH OF CONTRACT**

   43.  Plaintiff incorporates paragraphs 1-27.  This claim is against Ameriquest.

   44.  Ameriquest undertook, by means of <u>Exhibit I</u>, to reduce plaintiffs' interest rate if they paid a "loan discount."

   45.  Ameriquest charged a "discount fee," but increased rather than decreased plaintiffs' rate.

   46.  Ameriquest thereby violated its contract.

   47.  Plaintiffs were damaged as a result.

   WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant for:

    (1)  Compensatory damages;

    (2)  Costs of suit;

    (3)  Such other and further relief as the Court deems proper.

**COUNT III –  MICHIGAN MORTGAGE BROKERS,
LENDERS AND SERVICERS LENDING ACT**

   48.  Plaintiffs incorporate paragraphs 1-27.  This claim is against Ameriquest.

   49.  Ameriquest engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b) by engaging in "bait and switch" practices, i.e., promising the plaintiffs at closing that they would receive $7,183.17 (<u>Exhibit G</u>), then a week after closing and after the end of the stated rescission period claiming that plaintiffs had only been promised $4,358.75, and furthermore informing them that they would only receive $3,812.89.  <u>Exhibit K</u>.

9

50.     Ameriquest made the false representations in the course of trade and commerce.

51.     Plaintiffs were induced to transact with Ameriquest by means of the misrepresentations.

52.     Defendant also engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), when it misrepresented to plaintiffs that agreeing to a "loan discount fee" would reduce their interest rate, and then failed to decrease plaintiff's interest rate after the loan discount fee was paid. Exhibits H and A.

54.     Defendant made these representations for the purpose of inducing plaintiffs' reliance in the form of the plaintiffs borrowing the $482,300 loan. Defendant did this in order to increase the lender's "points and fees," interest and profits.

55.     Plaintiffs have suffered an injury as a result of defendants' misrepresentations.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against defendant for:

(1)     A declaratory judgment, MCL §445.1681(1)(a);

(2)     Injunctive relief, MCL §445.1681(1)(b);

(3)     Appropriate damages, MCL §445.1681(1)(c);

(4)      Attorney's fees, litigation expenses and costs of suit;

(5)     Such other and further relief as the Court deems proper.


s/Daniel A. Edelman
Daniel A. Edelman


10

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
     & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury.

s/Daniel A. Edelman
Daniel A. Edelman

T:\17191\Pleading\1st Amended Complaint_Pleading.wpd