**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: THE BORROWERS' CONSOLIDATED CLASS ACTION COMPLAINT [DOCKET NO. 325] | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS BORROWERS' COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT[1]**

**I.    INTRODUCTION**

As detailed below, Borrower Plaintiffs' Response to the Motion (the "Response") [Docket No. 448] fails to overcome, and in several places fails even to address, critical deficiencies in their Complaint. Borrower Plaintiffs' argument that named plaintiffs in a putative class action need not establish individual standing is directly contradicted by clear United States Supreme Court authority. Further, Borrower Plaintiffs, by alleging only legal conclusions in the Complaint, fail to meet their burden of establishing standing on behalf of any Borrower Plaintiff. For this reason alone, this Court should dismiss the Complaint in its entirety.

Separately, certain of the key counts in the Complaint fail as a matter of law and should be dismissed with prejudice:

- Count I, which seeks a declaration as to rescission rights under TILA, should be dismissed because such a claim cannot be brought on a class basis. The Circuit

---

[1] Unless otherwise noted, all capitalized terms used herein shall have the meaning ascribed to them in Defendants' Memorandum of Law in support of their Motion to Dismiss Borrowers' Complaint or, In the Alternative, for a More Definite Statement (the "Memo.") [Docket No. 380].

Courts that have addressed the issue (including the First Circuit in January 2007) unanimously agree that such a claim cannot be brought on a class basis.

- Counts II and III, which seek recovery under FRCA and ECOA for failing to provide adverse action notices, should be dismissed because Borrower Plaintiffs did not suffer any "adverse action" as that term is applied to credit transactions.

- Count XII, brought under the CLRA, should be dismissed because, as confirmed by the very recent decision of the California Court of Appeals in *Berry v. American Express Publishing, Inc.*, the CLRA does not apply to mortgage loan transactions.

Finally, to the extent these claims are not dismissed on other grounds, this Court should order Borrower Plaintiffs to provide a more definite statement as to their claims. Borrower Plaintiffs have violated FRCP 9(b) for their claims sounding in fraud by failing to identify the named Borrower Plaintiff and the named Defendant involved in the claim, much less the required "what," "when," "where" and "how" of the alleged fraud. In their contract claims, Borrower Plaintiffs fail to identify the contracts at issue, their basic contents, the parties thereto or any provision allegedly breached by Defendants. Further, Borrower Plaintiffs have failed to plead the factual bases required to support their equitable estoppel and equitable tolling claims.

Borrowers' Complaint is so vague and devoid of facts that it cannot form the basis of a lawsuit. Those counts that are not dismissed with prejudice must be repled, differentiating among the Defendants and providing the required details. Until then, this case cannot proceed for the additional simple reason that defenses cannot be determined and discovery cannot be focused.[2]

## II. BORROWER PLAINTIFFS' COMPLAINTS IN THEIR UNDERLYING CASES MUST BE DISREGARDED BECAUSE THEY HAVE NOT BEEN PROPERLY INCORPORATED UNDER FRCP 10(c).

As a threshold matter, the Response does nothing to establish that this Court should consider Borrower Plaintiffs' complaints in the underlying cases. As detailed in the Motion, Borrower Plaintiffs fail to properly incorporate such pleadings under FRCP 10(c) because they do not specifically identify which portions of these pleadings are incorporated into the

---

[2] As this Court is well aware, defendants Ameriquest Mortgage Company's ("AMQ"), Town & Country Credit Corporation's ("TCC") and AMC Mortgage Services, Inc.'s ("AMC") settlement with the Attorneys General of 49 states (the "AG Settlement") likely will resolve the vast majority, if not all, of the disputes in this Proceeding. Borrower Plaintiffs may believe that the omission of any facts will provide them with a basis to later challenge the res judicata effect of the AG Settlement on their claims. AMQ, TCC and AMC, however, should not be denied the benefit of the AG settlement as a result of Borrower Plaintiffs' disregard of the Federal Rules of Civil Procedure.

2

Complaint. *See Shelter Mutual Ins. Co. v. Public Water Supply Dist. No. 7 of Jefferson County*, 747 F.2d 1195, 1198 (8th Cir. 1984); *Federal Nat'l Mortg. Ass'n v. Cobb*, 738 F. Supp. 1220, 1227 (N.D. Ill. 1990).[3]

Borrower Plaintiffs cite no authority in their Response that permits incorporation of an entire pleading into a later pleading, as they have attempted to do in the Complaint. Rather, Borrower Plaintiffs merely argue that such incorporation "is not only fair in light of the service of each of the underlying complaints on at least one of the Defendants, it is necessary to generate a manageable consolidated complaint." (Response, p. 5.) There is nothing "fair" or "necessary", however, about Borrower Plaintiffs' conduct. To the contrary, Defendants and this Court now are confronted with 20 *separate* class action complaints and a supposed master class complaint with 85 pages of additional allegations (albeit only legal conclusions), some of which patently conflict with the allegations in the underlying complaints.[4] Further, in this respect, Borrower Plaintiffs' consolidation of the entirety of their underlying complaints plainly conflicts with this Court's directive in its November 7, 2006 Case Management Order [Docket No. 284] that there be a singular, comprehensive master class complaint. (*See id.*, p. 6.) Accordingly, this Court should not consider Borrower Plaintiffs' 20 underlying class action complaints in any respect.

## III. THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE FACTS TO SUPPORT ANY BORROWER PLAINTIFF'S STANDING.

The Constitution requires standing to be pled the same in class actions as in individual actions. "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). To

---

[3] Borrower Plaintiffs' attempts to factually distinguish *Cobb* and *Shelter Mutual* are unavailing. Borrower Plaintiffs argue that in *Cobb*, the court "allowed incorporation of allegations from a completely different action." (Response, p. 5.) However, the *Cobb* court allowed such incorporation because the pleader specifically identified the incorporated portions of the earlier pleading. 738 F. Supp. at 1227. Borrower Plaintiffs further argue that in *Shelter Mutual*, the court rejected a party's efforts to incorporate another party's pleading. (Response, p. 5.) However, the court rejected the party's attempt to incorporate the earlier pleading because it, as in *Cobb*, failed to specifically identify the portions of the earlier pleading at issue. 747 F.2d at 1198.

[4] For instance, in *Murphy* (First Amend. Compl., ¶¶ 173-177) and *Latonya Williams* (First Amend. Compl., ¶¶ 113-116), plaintiffs allege their contracts with certain Defendants are void or voidable because they are unconscionable, illegal and unenforceable. Such claims are not in the Complaint, leaving only confusion as to whether these claims still are at issue in this Proceeding.

3

plead standing, a named plaintiff must set forth ***clear and specific allegations of fact*** in the complaint showing a concrete injury that is causally connected to the defendant's conduct and may be redressed through a favorable ruling. *Schmidling v. City of Chicago*, 1 F.3d 494, 498 (7th Cir. 2003).

Without citation to authority and in clear contravention of *Casey*, Borrower Plaintiffs contend that "standard class action practice" lessens these Constitutionally-mandated requirements, and that their allegations in paragraphs 2 to 14, 92 to 122 and 123 to 178 of the Complaint are "thorough and detailed" enough to satisfy Article III scrutiny. (Response, pp. 2-3.) A review of these allegations quickly confirms that this position has no merit.

For example, in paragraph 3 of the Complaint, Borrower Plaintiffs merely aver that "Ameriquest has engaged and is engaged in uniform unfair, unconscionable, deceptive and unlawful commercial practices in soliciting and closing residential mortgage transactions nationwide." Yet, there are no factual allegations in this paragraph or anywhere else in the Complaint identifying: (1) the Defendant(s) to which the allegation relates; (2) the "uniform commercial practices" at issue; (3) any Plaintiff who was subject to any of the "uniform commercial practices"; (4) what was "unfair," "unconscionable," "deceptive" or "unlawful" about the "uniform commercial practices"; (5) any resulting injury suffered by any Plaintiff as a result of the "uniform commercial practices"; or (6) how a favorable ruling by this Court could redress any such injury.

Paragraph 114 of the Complaint—which is quoted verbatim by Borrower Plaintiffs in the Response as exemplary of their "thorough and detailed" allegations (*see* Response, pp. 2-3)—similarly is comprised solely of legal conclusion unsupported by any factual allegations. Nowhere in the Complaint do Borrower Plaintiffs identify: (1) any disclosures Defendants were obligated to make to Borrower Plaintiffs; (2) any disclosures Defendants failed to make, "intentionally obfuscated" or concealed; (3) the Defendant who failed to make the disclosure; (4) any Plaintiff who did not receive the disclosures; (5) any resulting injury suffered by any Plaintiff; or (6) how a favorable ruling by this Court could redress any Plaintiff's injury.

Paragraphs 123 to 178 of the Complaint also fail to establish any Plaintiff's standing; they set forth only a single, repetitive conclusion of generalized harm by "Ameriquest," which is defined to include all six of the corporate Defendants. (Memo., p. 5.) Finally, Borrower

4

Plaintiffs' allegations in paragraphs 123 to 178 do not, as claimed (Response p. 3), "amplify" or "narrow" anything. To the contrary, these paragraphs contain only a series of legal conclusions.[5]

In short, Borrower Plaintiffs have failed to plead facts sufficient to establish their standing as to any claim or form of relief sought in the Complaint. For this reason alone, this Court should dismiss the Complaint in its entirety.

## IV. CERTAIN CLAIMS IN THE COMPLAINT FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

### A. Borrower Plaintiffs' Class Claim Under TILA Seeking A Declaration As To Rescission Rights Fails Because Such Relief Is Not Available Under TILA.

In the Motion, Defendants argued that Borrower Plaintiffs' claim for declaratory relief under TILA must fail because such claims cannot be brought on a class basis. In support of that argument, Defendants cited supporting case law, the text of the statute and the policy underlying the right of rescission. (Memo., pp. 7-10.) In the Response, Borrower Plaintiffs only take issue with the case law cited by Defendants, especially the First Circuit's very recent decision in *McKenna v. First Horizon Home Loan Corp.* --- F.3d ---, 2007 WL 210850, at *4 (1st Cir. Jan. 29, 2007).[6] In particular, they accuse *McKenna* of failing to recognize the distinction between class actions seeking actual rescission and those seeking a declaration as to rescission rights, and of misinterpreting legislative history. (Response, pp. 14-16.)

Borrower Plaintiffs' criticism is not well-founded. Indeed, the *McKenna* court examined the distinction between class actions seeking actual rescission and those seeking a declaration as to rescission rights and rejected it as mere "legal legerdemain." It observed that "the professed distinction between a suit for a declaratory judgment that rescission is possible and a suit for rescission simpliciter elevates form over substance." 2007 WL 210850, at *7 (*citing Gibbons v. Interbank Funding Group*, 208 F.R.D. 278, 285 (N.D. Cal. 2002)). The First Circuit further held that "[b]oth of the primary reasons for denying class treatment to actual rescission claims— Congress's manifest intent to shield residential lenders from crushing liability and the highly

---

[5] Borrower Plaintiffs provide only two examples of this supposed "amplification" and "narrowing": (1) their Twenty-First Cause of Action, in which they identify the persons bringing that claim; and (2) paragraphs 239 and 240, in which they aver that "Ameriquest" failed to provide them with disclosures under TILA. (Response, p. 3.) These allegations, however, address only a small part of Borrower Plaintiffs' pleading requirement for Constitutional standing. *See Schmidling*, 1 F.3d at 494.

[6] Defendants previously submitted *McKenna* as supplemental authority in support of their Motion. [Docket No. 421.] Notably, the appeal in *McKenna* was briefed and argued by many of the same plaintiffs' counsel bringing the claims in this Proceeding.

5

personal nature of the rescission remedy—apply with equal force to the proposed formation of declaratory rescission classes." *Id.*

Further, *McKenna* also did not, as Borrower Plaintiffs contend (Response, p. 15), misinterpret Congress's amendment to Section 1640 of TILA to place a moratorium on certain TILA class action certifications.[7] The Supreme Court has "frequently cautioned that it is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law." *United States v. Wells*, 519 U.S. 482, 496 (1997) (citations and internal quotation marks omitted). The *McKenna* court properly followed this caution and held that, "[w]hile Congress did not spell out [in the 1995 amendment] that class actions were forbidden in the rescission context, it is risky business to attribute much significance to congressional inaction." 2007 WL 210850, at *7 (citation omitted).[8]

The only other Circuit Court to adjudicate this issue agrees with the First Circuit that a class action seeking a declaration as to rescission rights cannot be maintained under TILA. *See James v. Home Construction Co.*, 621 F.2d 727, 731 (5th Cir. 1980).[9] Further, the majority of district courts, within this District and beyond, have also held that a class action seeking a declaration as to rescission rights may not be maintained under TILA. *See*, *e.g.*, *Murry v. America's Mortg. Banc, Inc.*, No. 03 C 5811, 03 C 6186, 2005 WL 1323364, at *10-11 (N.D. Ill. May 5, 2005); *Gibbons*, 208 F.R.D. at 285; *Jefferson v. Security Pac. Fin. Servs.*, 161 F.R.D. 63, 69 (N.D. Ill. 1995); *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 583 (S.D. Ohio 1993); *Nelson v. United Credit Plan, Inc.*, 77 F.R.D. 54, 58 (E.D. La. 1978).

Perhaps recognizing the weakness of their argument, Borrower Plaintiffs ask this Court to withhold its ruling on their TILA claim until the Seventh Circuit decides *Andrews v. Chevy*

---

[7] *See* P.L. 104-12, 1995 H.R. 1380, 109 Stat. 161 (May 18, 1995). Congress did not amend Section 1635, the rescission section of TILA.

[8] Relying on *Califano v. Yamasaki*, 442 U.S. 682 (1979), Borrower Plaintiffs also argue that FRCP 23 permits them to bring a class action under TILA seeking a declaration as to rescission rights. (Response, p. 16.) *McKenna* carefully examined this argument and rejected it. *See* 2007 WL 210850, at *6-7.

[9] As this Court is aware, the Seventh Circuit has directed district courts to give "most respectful consideration" to the decisions of other courts of appeals and follow them whenever possible. *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) (Seventh Circuit and district courts should bear in mind "the interest in maintaining a reasonable uniformity of federal law and in sparing the Supreme Court the burden of taking cases merely to resolve conflicts between circuits"); *330 W. Hubbard Rest. Corp. v. United States*, 203 F.3d 990, 994 (7th Cir. 2000) ("Although we are not bound by them, we 'carefully and respectfully consider' the opinions of our sister circuits.").

*Chase Bank, FSB*, No. 05-cv-00454-LA, 2007 WL 112658 (E.D. Wisc. Jan. 16, 2007) (petition for appeal accepted No. 07-8001). In *Andrews*, the district court certified a class seeking a declaration as to rescission rights under TILA. *Id.* at *11. There is no reason to wait for *Andrews* to be decided because the district court solely relied on cases subsequently overruled or rejected by the First Circuit in *McKenna*. *See* 2007 WL 210850, at *4.[10] Accordingly, this Court should dismiss Borrower Plaintiffs' class claim under TILA for declaratory relief without leave to amend.

      **B.    Borrower Plaintiffs' ECOA And FCRA Claims Fail Because *Borrower Plaintiffs* Admittedly Accepted Counteroffers Of Credit.**

In their Motion, Defendants demonstrated that Borrower Plaintiffs' FCRA and ECOA claims failed because they admittedly accepted counteroffers of credit. As such, no Borrower Plaintiff could have been the recipient of an "adverse action," which is defined as a "refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered." (Memo., p. 10 (citations omitted).) Borrower Plaintiffs take issue with the definition cited by Defendants, arguing that a different definition—the "catch-all" provision of FCRA—should apply, and that this definition required Defendants to provide an adverse action notice. (Response, pp. 17-19.)

This argument misses the mark for two reasons. First, as explained in the Memorandum of Law In Support Defendants' Motion to Dismiss Certain Counts of the Non-Borrowers' Complaint [Docket No. 387], the catch-all definition does not apply to credit transactions such as those at issue here. Second, even if the catch-all definition were applicable here, it would not trigger any obligation to provide an adverse action notice where, as here, there is an accepted counteroffer. *Harper v. Lindsay Chevrolet*, 212 F. Supp. 2d 582, 591-92 (E.D. Va. 2002); *Lopez v. Platinum Home Mortgage*, No. 1:05-CV-408, 2006 WL 2269154 at *4 (W.D. Mich. Aug. 8, 2006); *Hanlin v. Ohio Builders and Remodelers, Inc.*, No. 2:00-CV-179, 2001 WL 1678864, at *7 (S.D. Ohio Dec. 26, 2001).[11] None of the cases cited by Borrower Plaintiffs holds that notice of an adverse action under FCRA is required where there is an accepted counteroffer. *Cf.*,

---

[10] The opening briefs in *Andrews* are due at the end of March.

[11] Contrary to Borrower Plaintiffs' assertion (Response, p. 18), these cases did not "ignore" the catch-all provision of FCRA. *See*, *e.g.*, *Lopez*, 2006 WL 2269154, at *4 (specifically finding that catch-all provision did not apply when there was an ECOA counter-offer exemption).

7

*Baynes v. ALLTELL Wireless., Inc.*, 322 F. Supp. 2d 1307, 1313 (M.D. Ala. 2004) (noting that plaintiff never accepted any counteroffer) (relied on by Borrower Plaintiffs).[12]

In a last ditch effort to save their FCRA and ECOA claims, Borrower Plaintiffs argue that Defendants did not provide them with notice of counteroffers. This argument does not save their claims. As Borrower Plaintiffs themselves recognize (Response, p.19 n.4), this allegation is not in the Complaint and, thus, it may not be considered on a motion to dismiss. *Hill v. Trustees of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir. 1976). Further, an amendment to add such allegations would be futile because Borrower Plaintiffs—by their very status as **borrowers**—not only were given notice of their counteroffers, they accepted them. (*See*, *e.g.*, Complaint, ¶ 6 ("Plaintiffs and the Class Members whose loans were financed by Ameriquest **each received a loan**. . . .") (emphasis added).) Accordingly, this Court should dismiss Borrower Plaintiffs' FCRA and ECOA claims without leave to amend.

### C. Borrower Plaintiffs' CLRA Claim Fails Because The CLRA Does Not Apply To Mortgage Loans, The Only Transactions At Issue In The Complaint.

In their Motion, Defendants demonstrated that Borrower Plaintiffs' CLRA claim should be dismissed because that statute does not apply to loans. Defendants pointed out that the statutory language did not include the term "loan" and that the legislative history confirms that loans were not intended to be covered by the CLRA. (Memo., pp. 11-16.) Borrower Plaintiffs essentially ignore the plain language and legislative history of the CLRA, and merely cite to case law that allegedly supports their position. (Response, pp. 8-11.) Here, case law hurts, rather than helps, Borrower Plaintiffs' case. In the very recent decision issued by the California Court of Appeal in *Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224; 54 Cal. Rptr. 3d 91, 94 (Cal. Ct. App. Jan. 31, 2007), that court examined the precise issue of whether the CLRA applied to credit transactions.[13] It analyzed the text of the statute and the legislative history, including the fact that the terms "money" and "credit" were excised from prior versions of the statute. The court observed that the deletion of these terms "strongly counsels us not to stretch

---

[12] Borrower Plaintiffs assert, without support, that "promising credit on certain terms, then at the closing providing credit on different, less advantageous terms" cannot be characterized as a "counteroffer" under ECOA. (Response, pp. 18-19.) Such purported conduct, however, falls squarely within the definition of a "counteroffer" under Regulation B. *See* 12 C.F.R. § 202.2 (c)(1)(i) (defining "counteroffer" as "an offer to extend credit in a different amount, or on other terms than those requested").

[13] Defendants previously submitted *Berry* as supplemental authority in support of their Motion. [Docket No. 424.]

8

the provision to include extensions of credit unrelated to the purchase of any specific good or service." *Berry*, 54 Cal. Rptr. 3d at 94. Accordingly, it concluded that "neither the express text of the CLRA nor its legislative history supports the notion that credit transactions separate and apart from any sale or lease of goods or services are covered under the Act." *Id.*[14]

Faced with statutory text, legislative history, and binding case law all adverse to their position, Borrower Plaintiffs hang their hopes on an earlier decision reached by the district court in *Knox v. Ameriquest Mortgage*, No. C-05-00240 SC, 2005 WL 1910927 (N.D. Cal Aug. 10, 2005). *Knox* is not binding here[15] and this Court must interpret the CLRA—a state law—as a California state court would construe it, not a federal court. *See Konradi v. United States*, 919 F.2d 1207, 1213 (7th Cir.1990) ("The decision of a federal court in a diversity case, or in any other case in which state law supplies the rule of decision, is an exercise in predicting how the highest court of the state would decide the case if it were presented to it.").

The plain language of the CLRA, its legislative history, and the recent binding (and directly on point) authority in *Berry* all compel the same conclusion: loans are not subject to a CLRA claim. Accordingly, this Court should dismiss the CLRA claim with prejudice.

**V.  THIS COURT SHOULD REQUIRE BORROWER PLAINTIFFS TO PROVIDE MORE SPECIFICITY AS TO ANY CLAIMS THAT SURVIVE DISMISSAL.**

**A.  Borrower Plaintiffs Must Allege The Identity Of All Representative Plaintiffs' Claims And The Particular Defendants At Issue In Each Allegation And Claim.**

In their Motion, Defendants explained that Borrower Plaintiffs' Complaint fails to identify the supposed representative plaintiffs in four different classes or subclasses. Without knowing the identity of these parties, Borrower Plaintiffs cannot demonstrate that their representative plaintiffs or members of these classes or subclasses have Article III standing. (Memo., p. 19.) Borrower Plaintiffs' failure in this regard also violates FRCP 23, which requires

---

[14] While the California Court of Appeals' decision in *Berry* certainly undercuts Borrower Plaintiffs' position, it is not alone. Two California state trial courts have also held that the CLRA does *not* apply to credit transactions such as the mortgages offered by Defendants. (*See* Supplemental Request for Judicial Notice, Ex 1 (highlighted text on pp. 16-18 of June 10, 2002 transcript of court in *Reed v. Ameriquest*, Judicial Council Coordinated Proceeding No. 4162), and Ex. 2 (June 28, 2006 order of court in *Valdes v. Ameriquest Mortgage Company*, Alameda County Superior Court Case No. 05-236537).

[15] Defendants do not, as Borrower Plaintiffs contend, need to move for reconsideration of the ruling in *Knox*. This Court is not bound by any prior order of the transferee court and may modify, expand or vacate any prior orders. *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 118 (6th Cir. 1981).

9

a plaintiff to plead facts sufficient to show that class action certification is warranted. (*Id.*, pp. 19-20.) Further, while the Complaint identifies seven purported Defendants, it does not even attempt to specify the defendant at issue in any allegation or claim. This creates significant ambiguity, especially given the number of different defendants in the case. (*Id.*, p. 21.)

Borrower Plaintiffs do not even address—and apparently concede—these deficiencies. Thus, this Court should require Borrower Plaintiffs to cure these deficiencies with a more definite statement.

### B. Borrower Plaintiffs Must Satisfy The Particularity Requirement Of FRCP 9(b) With Respect To Their Fraud-Based Claims.

In their Motion, Defendants demonstrated that Borrower Plaintiffs' claims for "common law fraud" (Fifteenth Cause of Action), "intentional and/or negligent misrepresentation" (Sixteenth Cause of Action), violation of the California UCL (Eleventh Cause of Action) and violation of the CLRA (Twelfth Cause of Action) fall woefully short of FRCP 9(b)'s pleading requirement. These claims should be dismissed because each one: (1) is pled solely on "information and belief" without any statement of the facts forming the basis for such "information and belief"; and (2) is premised entirely on legal conclusions, but not specific facts describing any alleged fraudulent conduct. *See MPC Containment Syst., Ltd. v. Moreland*, No. 05 C 6973, 2006 WL 2331148, at *2-3 (N.D. Ill. Aug. 10, 2006) (Aspen, J.).

Borrower Plaintiffs argue in the Response that, because they lack access to certain facts, they are entitled to a "relaxed" pleading burden under *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041 (7th Cir. 1998). (Response, p. 6.) Further, Borrower Plaintiffs claim that their allegations are more specific than the allegations found wanting in *MPC*. (*Id.*, p. 7.) Both arguments lack merit.

First, *Corley* is inapposite. There, the plaintiffs alleged claims based on fraudulent representations made by defendants to them and other nursing home residents. 142 F.3d at 1050-51. Borrower Plaintiffs specifically alleged the content of the fraudulent communications, but not the specific time, place or recipient of the communications made to the other third-party residents. The Seventh Circuit held that plaintiffs nevertheless satisfied FRCP 9(b)'s pleading requirement because the missing information about the ***third-parties*** was alleged to be within defendants' sole possession. *Id.* By contrast, in this case, the alleged fraud at issue was supposedly committed ***against Borrower Plaintiffs themselves***, not third-parties. This

10

distinction is critical, as Judge Rovner explained in *Reshal Associates, Inc. v. Long Grove Trading Company*, 754 F. Supp. 1226 (N.D. Ill. 1990):

> Courts have generally rejected arguments that discovery will cure an otherwise vague complaint. This is because a plaintiff should not need discovery in order to identify the circumstances of representations to which it was a party, and because discovery should not be a tool for determining the existence of unknown wrongs.

*Id.* at 1230 (citations omitted).

Second, Borrower Plaintiffs' Complaint is considerably less adequate than the complaint this Court found deficient in *MPC*. In *MPC*, this Court held that while the complaint set forth the "who," "what" and "where" of the alleged fraud with the requisite specificity, plaintiff's failure to allege the "when" and "how" of the supposed fraud warranted dismissal of the complaint under FRCP 9(b). *Id.* at *2 ("[T]he absence of any necessary detail renders the pleading deficient."). Here, Borrower Plaintiffs have failed to allege *any* of the required predicate facts supporting their fraud claims. Indeed, their fraud-based claims are pled entirely on "information and belief" without an accompanying statement supporting such pleading. *See id.*, at *3 n.3.[16] In short, Borrower Plaintiffs' fraud claims do not satisfy FRCP 9(b) and they should be required to provide a more definite statement.

> **C. Borrower Plaintiffs Must Allege Their Thirteenth Cause Of Action For Violation Of "State Consumer Protection And Unfair And Deceptive Trade Practices Acts" With More Specificity.**

As demonstrated in the Motion, even though Borrower Plaintiffs' Thirteenth Cause of Action is brought by putative nationwide classes "under *each* state's consumer protection act and/or unfair and deceptive trade practices act" (Complaint, ¶ 322) (emphasis added), the Complaint fails to allege (1) the identity of the representative plaintiffs of one of the classes, or (2) the states' laws purportedly at issue. (Memo., pp. 22-24.) Due to the contractually-agreed

---

[16] Borrower Plaintiffs argue that Rule 9(b) does not apply to their claims under the California UCL and the CLRA because these claims are not "grounded in fraud." (Response, pp. 7-8.). This argument is disingenuous. In their California UCL claim, Borrower Plaintiffs allege that Defendants (all six of the corporate Defendants, undifferentiated): engaged in "fraudulent" conduct and "bait and switch" schemes; "misled" consumers; falsified the benefits of "discount" fees; "falsely promised" early refinancing options; and "improperly characterized" customers' account. (Complaint, ¶ 306.) Likewise, in their CLRA claim, Borrower Plaintiffs allege that Defendants misrepresented their services and the transactions at issue. (*Id.*, ¶ 315.) These allegations do not satisfy FRCP 9(b) and, absent a more definite statement, these claims must be dismissed.

11

upon choice-of-law provisions between certain Defendants and Borrower Plaintiffs (*see* RJN, Exs. 4-22), Borrower Plaintiffs must provide more specificity in these regards.

Borrower Plaintiffs do not contest the existence of the choice-of-law provisions, and they do not clarify the identity of the representative plaintiffs or the states' laws purportedly at issue. Rather, Borrower Plaintiffs—without citing any authority—argue that it is "premature" to consider these issues. (Response, pp. 22-23.) This position violates long-standing United States Supreme Court authority prohibiting federal courts from entertaining state law claims where relief is unavailable under that state's law. *Guaranty Trust Co. v. York*, 326 U.S. 99, 105-06 (1945), *overruled on other grounds by Hanna v. Plumer*, 380 U.S. 460 (1965) (where state law claim was barred by state statute of limitations, federal court was precluded from taking cognizance of suit). The rationale underlying this rule of law is that the outcome of a state law claim in a federal court "should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Id.* at 109; *see Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980).

As pled in the Complaint, it is unclear which states' laws are at issue and who is bringing the claim under those laws. Among other things, the claims could be barred because no representative plaintiff has standing to bring the state law claim, or because the applicable statute of limitations has run. Because these issues are jurisdictional, (*see Guaranty*, 326 U.S. at 105-06), Borrower Plaintiffs' allegations must be made more definite.[17]

### D. Borrower Plaintiffs Must Allege The Identity Of All Contracts At Issue, Their Basic Contents And The Pertinent Parties Thereto.

Borrower Plaintiffs contend in the Response that, because the deeds of trust and mortgages for each Plaintiff are attached to Defendants' Request for Judicial Notice, "Defendants know exactly what contracts are at issue here." (Response, p. 22.) Yet, Borrower Plaintiffs do not state that the deeds of trust and mortgages are the only contracts at issue. Without such a statement, Defendants still are left to guess as the totality of the contracts at issue and a more definite statement is proper. *Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.*, 882 F. Supp. 713, 726 (N.D. Ill. 1995) ("In a contract dispute, a more definite statement is

---

[17] Borrower Plaintiffs contend in the Response that Defendants are on notice of the claims against them because they have not sought a more definite statement of Borrower Plaintiffs' claims under the California UCL and the CLRA. (Response, p. 23.) Defendants, however, clearly seek to obtain a more definite statement as to Borrower Plaintiffs' claims under the California UCL and CLRA, both California statutes. (*See*, *e.g.*, Memo., pp. 16-22.)

required when defendants can only guess as to what conduct and contracts an allegation refers."). Accordingly, this Court should require Borrower Plaintiffs to confirm the identity of (1) *each* relevant agreement, (2) the basic contents of each agreement, and (3) the pertinent parties to each agreement. *See*, *e.g.*, *Moore v. Fidelity Fin. Servs.*, 869 F. Supp. 557, 560-61 (N.D. Ill. 1994).[18] Borrower Plaintiffs must also allege the provisions of the agreement(s), if any, allegedly breached by Defendants.

### E. Borrower Plaintiffs Must Plead Specific Facts Supporting Their Claims That The Doctrines of Equitable Estoppel and Equitable Tolling Delay The Accrual Of All Statutes Of Limitations.

As detailed in the Motion, under governing Seventh Circuit precedent, a plaintiff must plead *specific facts* to support a court's tolling of the statute of limitations. *Smith v. City of Chicago Heights*, 951 F.2d 834, 840-41 (7th Cir. 1992). The Complaint, however, fails to allege any facts demonstrating Defendants' active concealment of wrongful conduct or specific acts on the part of Defendants that prevented Borrower Plaintiffs from suing within the applicable limitations periods. *Id.*

In their Response, Borrower Plaintiffs argue that, "[a]t the pleadings stage, courts require, little beyond general allegations to satisfy the tolling requirements." (Response, p. 19 (citations and internal quotation marks omitted).) To the contrary, a complaint fails to set forth a tolling claim where it alleges "little beyond general allegations." *See City of Chicago Heights*, 951 F.2d at 840-41. Here, the Complaint falls below even this insufficient level of detail, pleading nothing but generalized legal conclusions.

This case is not analogous to *Alumax Mill Products, Inc. v. Krysztofiak*, No. 96 C 5012, 1995 WL 201555 (N.D. Ill. Apr. 17, 1997), as Borrower Plaintiffs claim. (Response, p. 20.) There, plaintiff alleged *specific facts* that one defendant's use of an alias and a shell corporation prevented plaintiff from discovering defendants' supposed submission of inflated invoices to plaintiff. *Id.* at *2. Thus, the court concluded, plaintiff "sufficiently plead *facts* which may support the applicability of the doctrine of equitable tolling." *Id.* at *5 (emphasis added).

---

[18] Borrower Plaintiffs' attempt to fault Defendants for citing *Moore* (Response, p. 21) is without foundation. In *Moore*, Judge Gettleman denied defendant's motion for a more definite statement because plaintiff's complaint properly cited to each separate agreement at issue, explained the basic terms of each agreement and named the pertinent parties to each agreement. 869 F. Supp. at 561.

13

Here, Borrower Plaintiffs' claims in this action generally involve supposed misrepresentations and improper disclosures ***made to Borrower Plaintiffs***, rather than information solely within Defendants' knowledge. Further, the Complaint provides absolutely no facts as to how Borrower Plaintiffs, despite the exercise of reasonable due diligence, still were unable to obtain the necessary information to bring suit within the applicable limitations period. *See Olojo v. Kennedy-King College*, No. 05 C 6234, 2006 WL 1648441, at *7 (N.D. Ill. June 7, 2006) (Aspen, J.) (Neither equitable estoppel nor equitable tolling "provide aid to those plaintiffs who fail to research the requirements of bringing a lawsuit"). Accordingly, this Court should require Borrower Plaintiffs to provide facts beyond their legal conclusions to support their claims for equitable tolling and equitable estoppel.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the Motion in its entirety.

Respectfully submitted,

DATED: March 2, 2007  By: /s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

14

**CERTIFICATE OF SERVICE**

I, Bernard E, LeSage, hereby certify that on this 2nd day of March 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Bernard E. LeSage