IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: THE BORROWERS' CONSOLIDATED CLASS ACTION COMPLAINT [DOCKET NO. 325] | |

**SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS BORROWERS' COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Defendants[1] by and through their counsel of record, hereby respectfully request that this Court take judicial notice of the following pursuant to Rule 201 of the Federal Rules of Evidence:

1.      Reporter's June 10, 2002 court transcript wherein the court dismissed California Consumer Legal Remedies Act ("CLRA") claim with prejudice in *Reed v. Ameriquest*, Judicial Council Coordinated Proceeding No. 4162, a true and correct copy of which is attached hereto as Exhibit 1.

---

[1] "Defendants" collectively refers to Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.

1

2.      June 28, 2006 court order dismissing CLRA claim with prejudice in *Valdes v. Ameriquest Mortgage Company*, Alameda County Superior Court Case No. 05-236537, a true and correct copy of which is attached hereto as Exhibit 2.

DATED: March 2, 2007               Respectfully submitted,

By:/s/ Bernard E. LeSage          

*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

2

## CERTIFICATE OF SERVICE

I, Bernard E, LeSage, hereby certify that on this 2nd day of March 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Bernard E. LeSage

**SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE**

**EXHIBIT 1**

1

1    SUPERIOR AND MUNICIPAL COURTS
        OF THE STATE OF CALIFORNIA
2

3   REED,              )
          PLAINTIFF,  )
4   vs.              ) NO. 413158     JUDICIAL COUNCIL
    AMERIQUEST,       )              COORDINATION
5        DEFENDANT.  )              PROCEEDING
    _____)        NO. 4162
6   PIERCEALL,        )    NO. 4162
          PLAINTIFF,  )
7   VS.              ) NO. 41620
    AMERIQUEST,       )
8        DEFENDANT.  )
    _____)
9   BRYAN,            )
          PLAINTIFF,  )
10  VS.              ) NO. 00CC12831
    AMERIQUEST,       )
11       DEFENDANT.  )
    _____)
12

13    REPORTER'S TRANSCRIPT OF PROCEEDINGS

14
     BEFORE HONORABLE CAROL L. MITTLESTEADT
15          DEPARTMENT 1
         MONDAY, JUNE 10, 2002
16

17

18

19  A P P E A R A N C E S:
      FOR THE PLAINTIFFS:    STEVEN N. WILLIAMS, ESQ.
20            NIALL P. MCCARTHY, ESQ.
              GEORGE DONALDSON, ESQ.
21
      FOR THE DEFENDANT:    DAVID STURGEON-GARCIA, ESQ.
22            SARAH ADRUS, ESQ.
              ADAM J. BASS, ESQ.
23

24

25

26  REPORTED BY:  JOAN WOODS, CSR 4573

2

1 June 10, 2002                    San Mateo, Ca.
                P R O C E E D I N G S
2                - - - - - - - - - - -

3          THE COURT:  Good morning, everyone.

4          THE CLERK:  Calling the matter of Ethel A.

5  Reed, et al., versus Ameriquest Mortgage, et al.,

6  Judicial Counsel Coordination No. 4162, Case No.

7  413158.

8          THE COURT:  Well, this is the Ameriquest case,

9  Judicial Counsel Proceeding 4162, and that is one of

10  the cases that is in the coordination proceeding.

11         Good morning, counsel.

12         Would everyone recite their appearances for

13  the record.

14         MR. DONALDSON:  Good morning, Your Honor.

15  George Donaldson on behalf of plaintiffs.

16         MR. WILLIAMS:  Steven Williams on behalf of

17  plaintiffs.

18         MR. MCCARTHY:  Niall McCarthy on behalf of

19  plaintiffs.

20         MR. STURGEON-GARCIA:  David Sturgeon-Garcia

21  with my colleagues Sara Andrus and Adam Bass.

22         THE COURT:  I have read the moving papers and

23  opposition papers, the reply papers and as usual I

24  would like to give you my thoughts first.  And then I

25  would be willing to listen and see if you can perhaps

26  change my tentative thoughts on all of this.

3

1    First of all, we have several requests for

2    judicial notice. Ameriquest filed an original request

3    and supplemental request and there is no opposition to

4    those. Quite frankly, they are justified. So, I will

5    grant them in their entirety.

6        The plaintiffs also have made two separate

7    requests for judicial notice which are unopposed, not

8    objected to. They made one request in opposition to

9    plea in abatement, which I will grant. And they made

10   another one in opposition to the other demurrers and I

11   will grant that also. So, that all of the documents

12   which counsel have asked the Court to take judicial

13   notice of the Court will be considering in its rulings.

14       Let's start with plea in abatement first.

15   My tentative ruling on that is to overrule. Code of

16   Civil Procedure section 430.10(c) does provide for

17   special demurrer on the grounds that there is another

18   action pending between the same parties on the same

19   cause of action. A plea in abatement is not judicially

20   favored and thus the language of the statute is

21   strictly construed by the Courts. The Conservatorship

22   of Pacheco case tells us that. These cites are -- will

23   not be given because they are in your papers.

24       I disagree with plaintiffs is CCP section 1008

25   precludes me from determining this particular demurrer

26   on the merits. The reason for that is because it is

4

1   true that a trial court is forbidden from reconsidering

2   an order previously rendered in an action, either my

3   own order or that of another judge, unless a motion is

4   made according to CCP section 1008 which must include

5   reference to new or different facts, circumstances or

6   law before the earlier order may be reconsidered.  And

7   that's the Bennett versus Suncloud case.

8        But in this case there were very limited

9   instances in which judges before me and including me

10  addressed the plea in abatement issue.  In each case in

11  which that particular form of demurrer rather than

12  different demurrer was addressed on the merits, the

13  Court either overruled or denied the stay without

14  prejudice or I myself have indicated that I was

15  reserving the right for Ameriquest to bring this matter

16  to my attention on the merits and I would reserve my

17  judgment until it was fully briefed.

18       If you look at Judge Gemello's order filed in

19  the Reed action, August 18th of 2000, you will see that

20  Judge Gemello denied the motion to stay without

21  prejudice.  And Judge McDonald in the Bryan matter on

22  January 18th of 2001 also denied the stay without

23  prejudice.  I do concur with Ameriquest that in Judge

24  Gemello's case that it was really a different matter

25  because there a federal action was being used as the

26  grounds to stay the Reed action.  But in any event, the

5

1  thought process is very similar.

2      The reason that my tentative is to overrule

3  the plea in abatement demurrer is because in this case

4  the same party's requirement is simply not met.

5  Absolute identity of parties is required.  That's the

6  Plant Insulation versus Fibreboard case.  And the cases

7  that Ameriquest has relied upon in their moving and

8  reply papers, I read all four of them, namely Gates,

9  Citizens for Open Access to Sand and Tide, Stuphin,

10  S-T-U-P-H-I-N, and Tensor Group cases.  I read all four

11  of them and all four of them is res judicata cases.

12  Not one of them is plea in abatement case.

13      It is true that in res judicata cases it

14  doesn't have to be the absolutely same parties.  It can

15  be people who are in privity to the parties, but that's

16  not true for plea in abatement.  The named plaintiffs

17  are different in each of the three actions that have

18  now been coordinated for trial by the Judicial Counsel,

19  and Ameriquest's argument is that each of the named

20  plaintiffs is a member of the same class fails quite

21  frankly.  That may ultimately be true, but right now we

22  don't have a class certified and we don't have a class.

23  So, we have got three separate plaintiffs and we don't

24  have absolute identity of parties as required.

25      The proposition that the putative members are

26  not yet parties, the case for that is Home Savings &

6

1  Loan Association, which I think was cited.

2      Additionally, and I feel as if I need to say

3  this, although I could stop, which is finding that it's

4  not the same parties, but I think that for me to grant

5  the plea in abatement in this case would not only be

6  inconsistent with but would be entirely inimical to the

7  coordination that coordination that Judicial Counsel

8  has decided to do with these three cases.

9      There doesn't appear to be any authority

10  directly on point, namely plea in abatement brought in

11  a coordinated proceeding.  So, I guess no one has ever

12  directly addressed that issue, but I would suspect the

13  reason it's never been addressed before is because it

14  just logically doesn't make sense to coordinate cases

15  for trial and then grant a plea in abatement and only

16  proceed with one out of however many have been

17  coordinated.

18      Staying two out of three cases here simply

19  doesn't make any sense to me either for pretty much the

20  same reasons, but the benefits of coordination include

21  coordinated discovery regarding common issues of fact

22  and law, coordinated motion practice resulting in

23  uniform rather than inconsistent rulings, and efficient

24  utilization of judicial facilities and resources.  That

25  is provided both in the statutes and in case law, CCP

26  section 404.1, California Rules of Court, rule No.

7

1   1500(c), and then the McGhan case, M-C-G-H-A-N, which

2   was cited I believe by the plaintiffs in their

3   opposition papers.

4       Staying either the Bryan and or the Pierceall

5   action would merely result in a delay, probably greater

6   expense and duplicative proceedings, which quite

7   frankly the bottom line of all of that is prejudice not

8   only to the Court but -- not only to the parties but

9   also to the Court.

10      So, that is my tentative on the plea in

11  abatement. Why don't we go ahead and take argument on

12  that first before we go to the general other special

13  terms.

14      Mr. Surgeon Garcia, you probably would like to

15  be heard first?

16      MR. STURGEON-GARCIA:  Yes, Your Honor.

17      THE COURT:  All right.

18      MR. STURGEON-GARCIA:  The plea in abatement

19  remedies is for the protection of the defendant so that

20  they don't have to be defending numerous lawsuits on

21  the same claim by the same parties.  So, while it is

22  important to recognize I think on some theoretical

23  level the other aspects that would generally apply to

24  the coordination and consolidation, plea in abatement

25  statute is different.  The focus on the defendant.  Are

26  they going to be prejudiced in having to defend

8

1 multiple suits? Here there is no question that is

2 happening.

3       Now, the Court suggests that, well, maybe it

4 is to our benefit to do that. Well, it isn't because

5 we are going to bring certain motions and at this point

6 we have to bring them in three different cases. If

7 there is -- if we win on one on the substantive issue,

8 there is no question that's going to be res judicata on

9 subsequent acts. So, the expense to us wouldn't be

10 there because if we prevail, as we expect we will on

11 motion practice, then that will have res judicata

12 effect on the subsequent two actions.

13       Now, focusing on the same parties issue, the

14 pleading itself defines the class. And it says that

15 Reed is suing on behalf of herself and everybody else.

16 Not just a class. These are not just putative class

17 members. This is the general public under 17200 and

18 17500 theories as well. And in my view there is no

19 question that they are all in privity with each other.

20 And Gates and Citizens for Open Access makes that point

21 clear in res judicata context, but for these purposes

22 it is the same because that is precisely why you have

23 the plea in abatement to -- if you are likely to end up

24 with res judicata, then that's the purpose of the stay.

25       Now, why is it not addressing the case? Well,

26 I agree, but there aren't very many cases on it. The

9

1  more likely reason is that once there is an action

2  pending, then other plaintiff's firms who are suing on

3  behalf of the same class either coordinate or defer

4  because somebody already has it. That's not what

5  happened here.

6       THE COURT: Do you have a single case that

7  stands for the proposition that privity rather than

8  absolute identity of parties is sufficient for purposes

9  of plea in abatement as contrasted to res judicata?

10       MR. STURGEON-GARCIA: We have not found any

11  case that speaks to that. But the concept is the same.

12  And the cases that we cite make that point clear. The

13  statute deals with a stay. The only reason you need

14  the abatement is with a pending action. That's the

15  only prejudice that will result is the actions are

16  pending.

17       Now, based on their own complaint it is the

18  same parties. If she wins -- let's say Reed wins. She

19  is certified as a class. Because it is the same

20  pleading, there is no question it's going to be the

21  same class. I'm not really sure how we deal with that

22  other than right now as plea in abatement and those

23  whatever other adjustments we make I think are second

24  best policies in light of what the plea in abatement

25  statute requires.

26       THE COURT: Let me ask you, Mr.

10

1   Sturgeon-Garcia, isn't it more economical for the

2   parties and Court to address the issues at the same

3   time and all three of the cases at once and have it be

4   binding upon all three of main plaintiffs rather than

5   to do it once as to one plaintiff and then in some

6   subsequent proceedings argue about whether or not

7   collateral estoppel or res judicata bars that second

8   and that third plaintiffs' claims? I don't see the

9   efficiency. It seems to me that the efficiency here

10  has already been decided by Judicial Counsel and

11  recognizing that we have common issues of law and fact,

12  and because of that it is in the interest of judicial

13  economy to have all three of these cases proceed

14  together with one another.

15       MR. STURGEON-GARCIA: No, that's actually not

16  the way it has been working out or possibly -- there is

17  nothing to dictate that. Already we have seen

18  discovery from different parties that -- same party,

19  but from different actions asking for the same things.

20  We have seen it. There is a pending motion to compel

21  in Bryan and then we get discovery from Pierceall

22  that's almost identical. So, it's not happening. We

23  are defending at that point -- we are defending three

24  lawsuits on the same subject. That's exactly what the

25  plea in abatement statute is suppose to protect us

26  from.

11

1       THE COURT:  Was that prior to the coordination

2  of proceedings that that discovery was propounded?

3       MR. STURGEON-GARCIA:  The Bryan discovery was

4  sent out prior to, but Pierceall was sent out post-

5  coordination.  And now we are going to have to deal

6  with it with Judge McDonald.  The fact that it is under

7  plea in abatement protection, we wouldn't have to even

8  go to that point because we would be protected.

9       So, the benefits are both ways.  If they win,

10  then they get the benefit of that.  If we loose, we get

11  the benefit of that as well.  But if we win we also get

12  the benefit.  So, as far as -- I mean we have

13  considered this.  Ameriquest has considered this.  To

14  the extent that they -- they have made the election to

15  go this route after considering the procedural aspects

16  of it and that is why we brought the motion.

17       THE COURT:  Thank you, Mr. Surgeon Garcia.

18  Who would like to speak of --

19       MR. WILLIAMS:  Steven Williams.  And plaintiff

20  would submit on moving papers.

21       THE COURT:  All right.  I am going to stick

22  with my tentative ruling on that particular demurrer,

23  the plea abatement and that will be overruled.

24       Let me now give you my thoughts on general and

25  special demurrers and this will take slightly longer to

26  explain to you.

12

1     First of all, the plaintiffs did file a motion

2  to strike certain factual matters set forth in, I

3  believe it was, Ameriquest's memorandum of points and

4  authorities as being outside of the complaint and

5  matters of which the Court has taken proper judicial

6  notice. And I will grant that motion. I agree that

7  there is nothing in the complaint -- let me give you an

8  example of matters that are indicated. There was

9  argument in the memorandum of the points and

10  authorities about how the initial loan disclosure

11  statement was a mere estimate and that it contained a

12  statement of concerning the final terms -- that

13  document was not attached to the complaint and the

14  allegations of the complaint don't say that.

15     So, there is argument about factual matters

16  that are not properly before the Court. So, I will

17  grant that motion.

18     As to general demurrers, let's first talk

19  about the first and second causes of action for fraud

20  and negligent misrepresentation.

21     I think that pretty much the analysis is the

22  same for both of those being just different hybrids of

23  the same tort of fraud and deceit. My tentative on

24  that is to overrule. I do believe after reviewing the

25  complaint and context of these actions, that the facts

26  alleged are alleged with sufficient particularity, less

13

1 specificity is required since it does appear from the

2 nature of the plaintiff's allegations that full

3 information concerning the facts of these controversies

4 must necessarily be possessed by the defendant and the

5 Committee on Children's Television Case stands for that

6 proposition.

7      Thus, it is not necessary for the plaintiffs

8 to state the time and place of each misrepresentation

9 to identify the speaker and listener and to set out the

10 misrepresentations verbatim or in close paraphrase.

11 That's also the Committee on Children's Television

12 case.

13      The plaintiffs have generally alleged a

14 predatory scheme including a bait and switch and

15 flipping practices -- bait and switch is the term they

16 use, and flipping is also a term they use in the

17 complaint -- employed by Ameriquest. And that is

18 alleged in Paragraphs 1 to 2, 38 to 39, 42 to 49 and

19 perhaps elsewhere that I failed to write down on the

20 consolidated amended complaint.

21      In addition, they allege specific factual

22 allegations for each named plaintiff as alleged in

23 Paragraphs 51 to 76. And I do believe in reading all

24 of those allegations in the consolidated amended

25 complaint that they have made or pled sufficient

26 allegations to put Ameriquest on notice of the claims

14

1   against which it must defend itself, which is, of

2   course, one of the primary purposes of pleading.  And

3   in light of the fact that all the facts in the

4   surrounding circumstances as alleged in the complaint,

5   I quite frankly think they have done the best they can

6   at this particular stage of the proceedings.  A little

7   discovery can clear up any confusion that may result

8   from lack of any greater specificity.

9        The Charpentier, C-H-A-R-P-E-N-T-I-E-R, case

10  tells us that.  I disagree with Ameriquest's arguments

11  that plaintiffs' alleged conclusions are inconsistent

12  with disclosures that they allege in the complaint.

13  Ameriquest's argument there included some of the

14  matters that I have not stricken from their brief.  But

15  essentially their argument was that the disclosures as

16  alleged in the complaint reflect on the face that they

17  are preliminary estimates only and not loan

18  commitments.  And I didn't see that in its entirety in

19  the complaint.  Many of the facts that have been

20  stricken are not evidence from the face of the

21  complaint nor from matters that I have judicially

22  noticed.  And, furthermore, even if the complaint

23  included all of those factual allegations, the

24  complaint also pleads other misrepresentations.

25       An example of that is consistently a common

26  thread of the bait and switch scheme as alleged and the

15

1  flipping as alleged is that promises apparently were

2  made that these loans were going to be refinanced soon

3  to reflect the promised terms.  There were also

4  misrepresentations alleged concerning what the payments

5  were going to include, whether they included payment of

6  real estate taxes, insurance or not.  So, there are

7  other misrepresentations alleged in the complaint in

8  addition to the initial disclosure of terms later to be

9  changed on the day of signing of the loan documents.

10      On the third and fourth causes of action for

11  unlaw, unfair or fraudulent business practices in

12  violation of Business and Professions Code section

13  17200 et seq. and false or misleading advertising in

14  violation of Business and Professions Code section

15  17500 et seq., my tentative ruling is to overrule.  In

16  order to state a cause of action under those statutes

17  for injunctive relief and restitution it is necessary

18  only to show that members of the public are likely to

19  be deceived.  Again, that's the Committee on Children's

20  Television case and also Day versus A.T. & T.

21  Cooperation.

22      Allegations of actual deception, justifiable

23  reliance and damage are unnecessary.  There we have a

24  real recent case acknowledging that, Massachusetts

25  Mutual Life Insurance Company versus Superior Court,

26  which hasn't yet hit the advance sheets.  It's merely

16

1  come out in the Daily Journal, was recently modified,

2  but modifications didn't affect the substance of what I

3  am relying upon it for.

4      By their breadth these statutes encompass not

5  only those advertisements that have deceived or misled

6  because they are untrue, but also those which may be

7  accurate on some level, but will nonetheless tend to

8  mislead or deceive.  The Day case tells us that.  It is

9  sufficient for the plaintiff to describe a scheme to

10  mislead customers and allege that each representation

11  to each customer conforms to that scheme.  Again, that

12  is Committee on Children's Television case.  Quite

13  frankly recognizing those legal principles as to what's

14  required in order to allege these particular claims,

15  and looking at the consolidated amended complaint, I

16  think that's exactly what the plaintiffs have done

17  here.  So, I think they have sufficiently pled those

18  two causes of action.

19      The next cause of action is the fifth cause of

20  action for violation of Consumer Legal Remedy Act.  My

21  tentative there is to sustain without leave to amend.

22  The Consumer Legal Remedy Act applies to sale or lease

23  of goods or services to consumers, and as an act it

24  does not apply to credit transactions such as sub-prime

25  mortgages here.  A loan does not fall within the

26  definition of good or service within the C. L. R. A.

17

1    And I have taken judicial notice of legislative history

2    of Assembly Bill 292.  And it does very readily appear

3    from that legislative history that initially the

4    legislature contemplated including credit and money

5    within the definition of goods or services, but after

6    some further consideration or whatever before it got

7    enacted those words were deleted.  Even though it is

8    true there is no case which directly holds that that

9    C. L. R. A. does not apply to loans, there was a case

10   talking about insurance, but we haven't yet had one on

11   loans.  I think the Wilson versus City of Laguna Beach

12   and also Hitz versus First Interstate Bank cases are

13   correct that rejection of a specific provision

14   contained in an act should not be interpreted to

15   include what was left out.  I think since the

16   legislature very specifically considered including

17   loans and decided not to, I am not going to violate the

18   separation of powers here amongst the various branches

19   of government by interpreting it in a fashion different

20   than what they obviously intended to do.

21          Also, the plaintiffs argued that section

22   1770(23) was added and that shows the legislature's

23   intent to include loans.  The problem with that is this

24   case does not involve home solicitation of senior

25   citizens within the provision of that section.  So, I

26   don't think that gets us to where the plaintiffs would

18

1    like us to go.

2         The sixth cause of action unjust enrichment,

3    my tentative is to overrule that one.  Interesting that

4    neither side seemed to be able to find a case that

5    really sets forth with particularity what elements of

6    unjust enrichment case are.  And I looked a little bit,

7    too, and couldn't come up with much better than you

8    guys found.  But it does appear to me that we have

9    analyzed it in the same way we analyze restitution and

10   one is required to make restitution if he or she is

11   unjustly enriched at the expense of another.  That's

12   the First Nationwide case, I believe, Ameriquest cited

13   to me.  And one is enriched if he or she receives a

14   benefit at another's expense and benefit including any

15   type of advantage.  I believe beyond a doubt the

16   plaintiffs have sufficiently alleged the entitlement to

17   restitution and unjust enrichment in this case.

18        Then we have general demurrers as to the Reed

19   complaint and also as to particular causes of action in

20   the Bryan complaint.   As to Reed my tentative is to

21   sustain without leave to amend.  Ms. Reed entered into

22   her loan with Ameriquest on June 25th, 1991 and her

23   complaint was not filed until June 2nd of 2000, some

24   almost nine years later.

25        Judge Gemello actually took a look at this

26   earlier before the cases were consolidated -- or

1  coordinated, I'm sorry, and she sustained with leave to

2  amend as to the statute of limitations for all of the

3  causes of action. And then several of the causes of

4  action that Reed initially alleged have dropped out in

5  the procedural history of this case. But she in

6  sustaining with leave to amend was very clear as to

7  what she expected plaintiffs to do in order to cure the

8  deficiency. And what she very clearly indicated was

9  that the plaintiffs needed to allege facts regarding

10  discovery. Her order after hearing is filed August

11  18th of 2000 is Exhibit A to Ameriquest's original

12  request for judicial notice.

13       In amending the complaint the plaintiffs seem

14  to -- well, I don't know if they ignored or simply

15  didn't follow now Justice Gemello's ruling, but all we

16  have in the consolidated amended complaint that we

17  didn't have in the original complaint is an allegation

18  about further attempts by Ameriquest in 2000 to solicit

19  a refinancing of Ms. Reed's loan. And I just don't

20  find that to be sufficient to cure the problem with the

21  statute of limitations for two reasons. No. 1, as

22  already indicated, it doesn't solve the discovery

23  problem that Judge Gemello pointed out. And, No. 2, in

24  thinking about the plaintiff's argument that this

25  allegation therefore creates an ongoing harassment, or

26  as I would prefer to call it, a continuing wrongful

20

1   conduct which would prevent a cause of action from

2   accruing earlier, I can't -- I just can't stretch it

3   that far.

4        There was an original loan in 1991 and I don't

5   know when the fraud concerning that original loan was

6   discovered because it's not alleged, but I can't say

7   that the mere fact that Ameriquest may have contacted

8   Ms. Reed in 2000 about another re-financing, I just

9   don't see that that somehow revives a statute of

10   limitations that had already run before that contact in

11   2000.

12        Based on the rulings that I have made, I have

13   looked up in not having to address the issue of whether

14   or not the discovery rule applies to violations of

15   Business and Professions Code section 17200 et seq. I

16   found that to be very interesting reading and it

17   doesn't appear that there is some conflict in the law

18   as to whether it applies or not. Quite frankly, Judge

19   Gemello found that it did apply and we don't have any

20   allegations that cure discovery problem and, therefore,

21   I don't have to get into that. And my ruling does not

22   constitute a ruling on that particular issue.

23        As to Bryan, my tentative on statute of

24   limitations argument is to overrule. Two reasons --

25   well not -- only one which I need to include in my

26   rulings and maybe I should stop with that. This was

1 previously decided by Judge McDonald before the cases

2 were coordinated. The statute of limitations demurrers

3 were raised with Judge McDonald and this is not Judge

4 McDonald who was discovery referee here. It was Judge

5 McDonald who was Orange County Superior Court. Judge

6 McDonald overruled those demurrers. Under the

7 authority that I decided earlier, namely, Bennett

8 versus Suncloud, I am now precluded from reconsidering

9 that demurrer. So, overruled as to Bryan.

10      The special demurrers on grounds of

11 uncertainty, the special demurrer is the fifth cause of

12 action is now moot because I have sustained the general

13 demurrer without leave to amend. And as to the other

14 causes of action my tentative is to overrule. The

15 uncertainty special demurrer is unfavor to the law and

16 it is suppose to be sustained only where the complaint

17 is so bad that the defendant cannot reasonably respond.

18 And I don't find this complaint to in any of the causes

19 of action allege to qualify for that characterization

20 of when it should be demurred under the interpretation

21 of that by the Court in Khoury K-H-O-U-R-Y versus

22 Maly's of California.

23      Furthermore, in this particular case, I think

24 time is going to tell, if it hasn't already, that many

25 of the facts alleged in the complaint are presumptively

26 within the knowledge of the defendants and that any

22

1   ambiguities can be cleared up through discovery.

2       Maybe I should have allowed you to respond

3   cause of action by cause of action, but in any event

4   there is some winnings and some losings on both sides

5   here.

6       So, let me start with the moving party, Mr.

7   Surgeon-Garcia.

8       MR. STURGEON-GARCIA: Yes, Your Honor. I will

9   address the fraud and negligent misrepresentations

10  claims first. While there are broad allegations

11  regarding bait switches, Your Honor, referred to

12  flipping, those aren't recognized causes of actions.

13  What we are dealing with here in this first argument is

14  fraud and negligent misrepresentation and those have

15  very specific elements that need to be alleged and met.

16  So we are talking about misrepresentations, proximately

17  causing a justifiable reliance proximately causing

18  damage. Those elements are not met here because aside

19  from consideration of external evidence, their own

20  pleadings sets that the initial terms were just that,

21  they were preliminary and they were estimates. That

22  term is in their own pleading. It's states -- it

23  doesn't say "This is an offer." It doesn't say, "This

24  is a commitment." It doesn't say "This is a contract."

25  They don't allege that it's a contract. In fact, there

26  is no breach of contract claim here.

23

1    THE COURT:  Where is the word "estimates,

2  preliminary and not a loan commitment," alleged in the

3  complaint, Mr. Surgeon?

4    MR. STURGEON-GARCIA:  We will find it, Your

5  Honor.

6    THE COURT:  You can proceed while co-counsel

7  is helping you with that.

8    MR. STURGEON-GARCIA:  If they had alleged that

9  there was a commitment, an offer, then I would agree

10  that we are dealing with a different set of allegations

11  now.  But here there is no allegation that that was an

12  offer or a commitment or a contract.  On the contrary

13  -- my colleague has found some of the references, Your

14  Honor.

15    THE COURT:  All right.

16    MR. STURGEON-GARCIA:  Page 14, paragraph 52

17  the specific document which is the subject of these

18  preliminary terms, they call it "good faith estimate."

19  The very document upon which they are basing this claim

20  is called "an estimate."

21    And if you look at line 17, 18 "such estimate

22  contained no disclosure."  And those similar type of

23  allegations are throughout this pleading.

24    THE COURT:  If you look at the beginning of

25  that paragraph, though they talk about a truth and

26  lending disclosure statement, that reflected certain

24

1  loan terms being given and there's nothing that

2  indicates that that was preliminary, not a loan

3  commitment or an estimate.  But quite frankly, more

4  important you have to put all of this in context of the

5  bigger picture.  The allegations here are that there

6  was a uniform massive marketing for these laws that

7  started off with user of respect, and even though you

8  have credit problems Ameriquest can offer you

9  competitive rates and not gouge you with high rates --

10  and I'm using some of my own language, but the

11  advertising media -- let me go to the paragraph.

12      MR. STURGEON-GARCIA:  I would be concerned

13  with that phrasing.

14      THE COURT:  Let me strike the phrasing.  Let

15  me to go Page 13 of the amended consolidated complaint.

16  And we start off with "You deserve respect.  You

17  deserve the perfect loan.  It's quick and easy."  Then

18  under each of those headings we have things such as "In

19  fact, we don't require the strict lending guidelines of

20  most banks, and we don't charge the high rates that

21  many finance companies charge.  We look beyond the

22  numbers and credit reports."  Then it talks about "Our

23  competitive rates" under "You deserve the perfect

24  loan.,"  And the constant theme here is even though you

25  may have experienced bankruptcy, credit problems, high

26  debt ratios, mortgage, late defaults or liens, or if

25

1   you had a hard time proving your income, we promise to

2   treat you with respect.  So, we start off with that and

3   then as the complaint alleges, time will tell whether

4   the allegations are proven by the evidence, but as the

5   complaint continues, it then goes into the specific

6   promises that each of the main plaintiffs thought they

7   had received about the loan they were going to get.

8   And then it alleges that they show up to sign the loan

9   documents and all of a sudden the rate is higher, the

10  payments are higher and in some cases additional

11  promises are made about taxes and insurance, but I want

12  to avoid getting into that right now.

13        Then those who notice the change of terms and

14  inquire about it are assured that the loan will be re-

15  financed to reflect the promised terms within a

16  relatively short period of time.  So, in kind of a

17  nutshell -- I'm certain plaintiffs will probably add a

18  lot more as to what is said in their complaint, but in

19  a nutshell, I think that's sufficient to allege the

20  scheme I have talked about earlier.

21        MR. STURGEON-GARCIA:  Again, that's my

22  concern, Your Honor.  We are not talking about a

23  scheme.  Right now I am addressing fraud and negligent

24  misrepresentation that have specific, very specific

25  elements which have to be pled.  Not only elements, but

26  factual basis for those elements with specificity.

26

1  That's my concern. I understand it's their goal to

2  present this general bait and switch theme, but what we

3  are dealing with here is fraud and negligent

4  misrepresentation of specific cases. One of the

5  elements of those is misrepresentation. What is the

6  misrepresentation? That the initial terms were

7  actually offers or commitments? They never say that.

8  On the contrary. They are called estimates. Perhaps

9  we will get -- well, we will get into the documents

10  themself at a later point, but basing it just on their

11  complaint, these are estimates. They don't say -- they

12  don't say, and I invite them to tell me where they say,

13  that these estimates were presented at any point in

14  time to be offers, commitments or contracts. It's not

15  there. That's the front end.

16      The back end is they also admit on the face of

17  their complaint that they sign final loan contracts

18  which reflect the loan terms. Each of the terms that

19  they are saying in dispute are reflected in these

20  documents that they signed. They don't dispute that.

21  They admit that.

22      So, if you have an estimate, based on their

23  own allegations, and you have a final contract which

24  they say "These were the estimates, these were the

25  final ones that I ended up signing," they admit that.

26  How do you get -- how do you satisfy the

1   mis-representation, the justifiable reliance and any

2   damage that results from that? I don't think you can

3   unless there is something more. Unless they come out

4   and say, "No, these were not just preliminary. They

5   weren't just estimates. They were offers or

6   commitments or contracts." That is not in here. If

7   they make that claim, we will deal with that one, but

8   they haven't even made it yet. And this isn't just

9   some theoretical concern I have. These are practical,

10  real law applications because there are other

11  significant problems that they have that we are going

12  to deal with pretty soon. And this all plays into

13  that, not to mention the discovery aspects and how

14  broad the discovery is going to be permitted to go

15  here.

16      Now, what they also don't say is there was any

17  document that says that these were offers or

18  commitments. They also don't say this afterthought

19  allegation, which is just couple of sentences, seen

20  here for the very first time I think in recognition of

21  some fatal flaws that, "Oh, yeah. By the way we were

22  told we changed it." I want to know. I want an

23  allegation that that was either told to them, how it

24  was told to them. That's what specificity requires.

25  It's where? What? By whom? To whom and by what

26  means? By what means is highly significant here

28

1  because they are alleging this master scheme; right?

2  But I don't see how they allege that it is conveyed.

3  How is it perpetuated?  Is it someone speaking or

4  someone giving documents or both?  Now this allegation

5  that "We will do a different one later," who said it?

6  We certainly don't have any document that says that.

7  Doesn't exist.  And they don't say it.  They ignore it.

8  I'm entitled to know what that misrepresentation is,

9  who said it, when and by what method.  And it's

10  significant here because we are dealing with an

11  integrated contract.

12      THE COURT:  Did you read the Committee on

13  Children's Television case?

14      MR. STURGEON-GARCIA:  I'm quite familiar with

15  that case.  Again, we are dealing with fraud, negligent

16  misrepresentation, not 17500.

17      THE COURT:  Committee on Children's Television

18  also dealt with fraud claims in addition to the unfair

19  competition and false advertisement.

20      MR. STURGEON-GARCIA:  We are dealing with

21  advertisement, not what we are -- not what we are

22  dealing with here.  There is no allegation that we will

23  do a different loan after you sign this one was an

24  advertisement.  It wasn't an advertisement to children,

25  commercials on children's television where kids watched

26  on commercial on T. V. regarding cereal.  We are not

29

1  dealing with that here. Yes, I would agree in that

2  context it might be different if you forced kids to

3  come in and say, "What did you listen to and when and

4  what station was it on?" We are not dealing with that

5  here. We are dealing with adults saying, "Look, you

6  told me -- you told me something." How was it told?

7  It's inconsistent. If they are going to say there is a

8  master plan, then I want to know if it is in writing or

9  if it is orally or both because they are going to be

10  treated differently legally.

11        THE COURT: Why don't we take cause of action

12  by -- argument by argument. Let's stick with fraud

13  claims for right now.

14        From plaintiff's counsel, Mr. McCarthy?

15        MR. MCCARTHY: Thank you, Your Honor.

16        First, let me indicate Mr. Surgeon-Garcia's

17  comments are very selective reading of the complaint.

18  I want to focus for a moment on this issue of estimate.

19  In addition to the factors, Your Honor, pointed out in

20  Paragraph 52, if you would just read the next

21  paragraph, paragraph 53. After the language he quoted

22  what it says is, "Soon thereafter Pierceall was advised

23  by Ameriquest Mortgage agent that the loan had been

24  approved." The exact same allegation appears with

25  respect to Bryan at paragraph 61. So, they are

26  promised rates and terms, they are called, told the

30

1  loan is approved.  After that they go into get the loan

2  and they are told, "Wait a minute."  If they have

3  anything they are told, "Well, there was problem.  We

4  will refinance in three months to get you the rate you

5  were approved," or they were told just don't read it.

6  So, they are told the loan is approved.  The reason I

7  point that out, Your Honor, is because you can't -- as

8  the Court well knows you take a sentence here and there

9  in a complaint and suggest that's the entirety of the

10  matter.

11      Second factor, on this issue of identity, I

12  think counsel is misstating requirements of the

13  Committee on Children's Television case.  I don't think

14  we need to get into the detail he is laying out.  The

15  Court has already indicated that.  But putting that to

16  the side, we indicate that they are the loan officers

17  in these allegations who made the statements.  For

18  example, with respect to the Bryans she specifically

19  states it is the loan officer who made the statements

20  to her.  That's contained in paragraph 62 through 65.

21  She specifically states it is the officer she is

22  dealing with.  Now, if they would simply go to the file

23  and see who was the loan officer who dealt with Bryan,

24  they get the person's name.  So, I think that type of

25  an argument is really specious.

26      Aside from those two factors, Your Honor, on

31

1   those causes of action I think we are prepared to

2   submit.

3      MR. STURGEON-GARCIA: Briefly in response.

4      THE COURT: Yes, Mr. Sturgeon-Garcia.

5      MR. STURGEON-GARCIA: An allegation that the

6   loan was approved ultimately doesn't go to the issue I

7   am speaking of here. We are talking about estimates.

8   Nowhere do they allege that we said, "Oh, it is

9   approved on these terms." In fact, it was -- the loan

10   was approved. They all got the loan, just not based on

11   the estimated terms because it turns out the credit

12   report what they represented was on the credit was

13   false and we will deal with that later.

14      But here simple allegation that loan was

15   approved doesn't alter the analysis that we are

16   required to undertake under the specific elements of

17   these claims. That was the front end.

18      The back end is justifiable reliance. We cite

19   Izzy, Roland and Paine Weber. They requested black

20   letter law that if these documents -- if these terms

21   are reflected in loan documents you sign, documents

22   which as a matter of law you have a duty to read, the

23   law requires people to read contracts before they sign

24   them, there is no question they admit again that these

25   terms, these final terms were reflected clearly and

26   conspicuously in the documents that they signed.

32

1  That's an admission in their complaint.  How can you

2  have justifiable reliance on an alleged earlier term

3  that was different when the very document you have in

4  front of you and you sign and accept by signing has the

5  terms that are final and sometimes different?  How can

6  you rely on some estimate?  These cases say reliance is

7  not reasonable as a matter of law where they could have

8  discovered the actual terms by reading a contract they

9  had a legal duty to read.

10       THE COURT:  But what you have left out is at

11  the time that they are signing the loan documents they

12  are also being told -- I am paraphrasing -- "Don't

13  worry about that.  We will refinance this and give you

14  the promised terms within a short time."

15       MR. STURGEON-GARCIA:  These cases address

16  that.  We are talking about reasonableness of reliance.

17  Those cases say it's not reasonable to rely on

18  statements like that when you have it in the document

19  that's right in front of you, a document that you have

20  the duty to read.  In this case these are loans that

21  are subject to three day right of rescission.  They had

22  these documents.  They took them home.  They had three

23  days to rescind for whatever reason they wanted.  It's

24  there.  It's a federal right.

25       So, these cases -- and I would ask the Court

26  to go back and review these cases because they deal

33

1   with this situation.  Putting aside the parole evidence

2   problem, which we will also be dealing with later, this

3   is an integrated contract.  This is a representation

4   which varies or contradicts an integrated contract.

5   But before that the reliance has to be reasonable.  It

6   doesn't matter what is said.

7        In one of these cases, I am a little fussy on

8   which one is which, but very similar allegations were

9   made as those being advanced here.  That's, "Oh, we

10  were presented with a plethora of documents and told

11  certain things."  The Court says it doesn't matter

12  because as a matter of law you have to read a contract

13  before you sign it.  If it says something that is the

14  subject of the dispute, then it's not reliance on that

15  something else is not reasonable as a matter of law.

16  That's the argument we presented.

17       From that stems the additional problem that

18  there is no damage.  If they knew what the terms were

19  and they signed it, what is the damage?  How do you --

20  how do you measure the damage?  What is it?

21       THE COURT:  The damage is the difference

22  between the terms they were promised and terms that

23  they got.

24       MR. STURGEON-GARCIA:  Why?  If this was an

25  estimate, this one was not, it was disclosed and you

26  accepted it by signing black letter law.  You sign a

34

1 contract you accept the terms. How can you -- what is

2 the measure of damage? It can't be the difference

3 between the two because this one was never offered. It

4 wasn't a commitment. It wasn't a contract. There was

5 one contract and it is the final one that they signed.

6 It clearly reflects those terms.

7 THE COURT: Once again, you are now referring

8 to matters that go beyond the face of the complaint

9 that I am taking judicial judicial notice of.

10 MR. STURGEON-GARCIA: I don't think I am. The

11 pleading says "estimate," and they say "preliminary."

12 On the back end they say, "They came in to sign and

13 here were the terms that were different." This is the

14 contract that was signed. They say that.

15 THE COURT: I'm not going to repeat myself. I

16 already pointed out to you the portion where there was

17 nothing about estimate or this is not a loan

18 commitment. It was truth in lending disclosure

19 statement.

20 I am going to stick with my tentative on that

21 one, Mr. Sturgeon-Garcia.

22 Would you have like to be heard on the third

23 and fourth causes of action for the unfair competition

24 and false advertising?

25 MR. STURGEON-GARCIA: I think the arguments

26 are essentially comparable, Your Honor.

35

1      THE COURT:  I think you are comparable and

2  quite frankly I think you had better argument on fraud

3  claims than you did on the two Business and Professions

4  Code claims.

5      I think plaintiffs may want to be heard on the

6  fifth cause of action.  I don't know.

7      MR. MCCARTHY:  We have heard the Court's

8  analysis and we are prepared to submit on fifth cause

9  of action.

10      When the Court is ready I would like to

11  address the estate of Reed ruling against us.

12      THE COURT:  Just so the record is clear, I am

13  adopting my overruling of the third and fourth.  I am

14  adopting my sustained without leave to amend as to the

15  fifth.

16      As to the sixth, Mr. Sturgeon-Garcia, unjust

17  enrichment claim, would you like to be heard on that

18  one?

19      MR. STURGEON-GARCIA:  Briefly, Your Honor.

20  Essentially the same argument.  They admit that final

21  terms were disclosed in the contract they signed.  So,

22  I don't see why -- how anyone can be unjustly enriched

23  by collecting those sums and only those sums that they

24  agreed to in this contract.  That is the allegation

25  that is made.  I submit that as a matter of law that

26  claim fails.

36

1     THE COURT: I understand that under your

2  interpretation that it would fail, but under my

3  interpretation I don't think it does.

4     So, all right. Let's go to Reed statute of

5  limitations. Mr. McCarthy?

6     MR. MCCARTHY: Yes, Your Honor, thank you.

7     First, I want to make clear what we were

8  trying to do with respect to Judge Gemello's, now

9  Justice Gemello, order. We were not trying to revive

10  or cure the defects that she had mentioned with respect

11  to the discovery rule. After careful analysis we

12  decided in good faith in that particular case we could

13  not assert the fraud based and other causes of action

14  based on her analysis. So, we didn't bring those

15  forward.

16     What we did bring forward was a 17200 claim

17  based on conduct that occurred in the year 2000. The

18  Court is well aware that on 17200 frankly anyone in the

19  courtroom could bring the case. There is no reliance

20  requirement. No damage requirement. There is

21  absolutely no bar to the Estate of Reed bringing the

22  claim for conduct that occurred in that time period.

23  The time period we are talking about obviously is four

24  years pre-dating the complaint under the analysis most

25  favorable to defendant, but what we have alleged at

26  paragraph 76 is during 2000 plaintiff Reed was

37

1  bombarded with sales tactics about potential re-

2  financing. This all comes under the topic of flipping.

3  This is precisely one of the practices we are seeking

4  to enjoin.

5      So, what we have done is we have taken a

6  practice that occurred in the year 2000, framed it only

7  as to 17200 and 17500 and are seeking that that

8  practice be enjoined. That is clearly within the

9  applicable statute of limitations and is an analysis

10  that is really wholly independent of the one Judge

11  Gemello did, because frankly we recognized the flaws

12  that she pointed out and we have conceded those. So,

13  we have asserted a new case cause -- I don't think that

14  was clear in the papers based on Court's tentative and

15  I wanted to make sure that's the Court -- the Court is

16  aware that that is where we are going.

17      THE COURT: Let me ask you a question. Am I

18  correct that Reed is seeking or her estate's

19  representatives are seeking injunctive relief and

20  restitution?

21      MR. STURGEON-GARCIA: They are seeking

22  injunctive relief for the conduct basically -- I will

23  call it harassing phone calls and harassing sales

24  practices. We are not seeking restitution as to that

25  cause of action for the loan that occurred in 1991.

26  And maybe the complaint did not make that clear. But

38

1   as to the 2000 conduct it's not a loan, it's a practice

2   that we are seeking to enjoin.

3        THE COURT: I guess it just seems to me under

4   the particular facts here that Reed is not a good

5   representative for a class because any damages for her

6   original loan are now barred by statute of limitations,

7   and maybe I'm doing an analysis that I shouldn't be

8   doing on demurrer but thinking aloud with you. So, she

9   is not going to be entitled, you have admitted that, by

10  not alleging fraud causes of action for damages, but

11  how is she representative of the class that is alleged

12  -- I'm just having difficulty with it. It seems that

13  it makes more sense for us to proceed with Pierceall

14  and Bryan.

15       MR. MCCARTHY: I think with all due respect

16  that error on that analysis is that you are assuming

17  every representative plaintiff must be representative

18  of each and every cause of action. That's not at all

19  the case. This is really a class action argument, not

20  a demurrer argument.

21       THE COURT: I acknowledge that.

22       MR. MCCARTHY: Put aside Reed and Pierceall

23  for a moment, Your Honor -- put a side Bryan and

24  Pierceall for a moment. We could have come in and

25  filed the Reed case just on the 2000 allegations. I

26  could be before Your Honor right now seeking injunctive

39

1   relief just with Reed as a class representative, but it

2   is limited to the one claim, the injunctive relief.

3        THE COURT:  Flipping.

4        MR. MCCARTHY:  The flipping claim and

5   practices we described in 2000 on Page 76.

6        So, what Your Honor is saying is, "Well, she

7   is not a representative of all the other claims."

8   Well, No. 1, she doesn't have to be and, No. 2, that is

9   an argument for another day.

10       THE COURT:  I appreciate it's an argument for

11  another day, but I'm concerned because I don't think

12  the complaint is clear at all that she is merely

13  seeking injunctive relieve for the flipping practice.

14  I think the way it reads right now, it's alleging that

15  she is seeking injunctive and restitution relief for

16  both the bait and switch and flipping.  And the bait

17  and switch portion as to Reed in my opinion, and I

18  think you are agreeing with that, is clearly barred by

19  statute of limitations.

20       MR. MCCARTHY:  To the extent that is not clear

21  in the complaint, we can certainly clarify.  Your Honor

22  can make an order right now limiting the estate of

23  Reed's claim to injunctive relief under two statutes I

24  mentioned.  That would cure the problem or we can

25  simply file an amendment curing that.

26       THE COURT:  Let me hear from Mr. Sturgeon-

40

1   Garcia on that particular matter.

2       MR. STURGEON-GARCIA:  Your Honor, this Reed

3   complaint should have never been brought in the first

4   place.  It was stale when it was brought.  It's stale

5   now.  This is after-the-fact, shot-in-the dark trying

6   to save a fatally flawed pleading.  She has since

7   passed away.  Now there is new allegations?  That's

8   interesting.  But the fact is -- the substantive fact

9   is that she has no claim.  There is no flipping.  She

10  didn't even have a loan at the time.  They admit she

11  didn't even have a loan at the time.  She didn't even

12  receive any good faith estimates because she never even

13  applied for a loan.  I think the rest is dealt with in

14  the pleading.  I think the correct conclusion is this

15  should be sustained without leave to amend.

16      THE COURT:  Any reply by plaintiffs?

17      MR. MCCARTHY:  Very briefly, Your Honor.  I

18  think counsel might have accidentally misspoken there.

19  As I recall sequence of events, I will be happy to

20  verify this, we filed -- Judge Gemello made a ruling.

21  We filed amended complaint prior to the death of Ms.

22  Reed that asserted justice 17200 and 17500 claims.  So,

23  the idea that that was invented after her death is

24  erroneous.

25      THE COURT:  Was the 2000 allegation in there?

26      MR. MCCARTHY:  Yes.  That was the purpose of

41

1   it. As I recall the sequence of events, Your Honor, we

2   filed one complaint that had five causes of action.

3   Judge Gemello made a ruling. We then filed a second

4   complaint that just had the 17200, 17500. Defendants

5   demurred. Then we went to the coordinated proceedings.

6   So, there was never a ruling on their demurrer on the

7   second round.

8        THE COURT: My recollection of reviewing the

9   file, which I did not for today's hearing but at

10  another time, is that you are correct you did amend

11  your complaint after Judge Gemello's ruling and you had

12  only the two causes of action, one, I am unable to tell

13  you and I don't even have the court files here, is

14  whether or not you did include this allegation about

15  being bombarded with solicitation for another refinance

16  in 2000. I am not really sure that it matters.

17       Anything further on that Mr. Sturgeon-Garcia?

18       MR. STURGEON-GARCIA: No, Your Honor.

19       THE COURT: I hesitate to do this, but I feel

20  as if I have to. I am going to allow the plaintiffs

21  one more opportunity to amend to try to cure this. It

22  is a different argument that is being made and it is --

23  I understand that it is being limited to the Business

24  and Professions Code sections. And, therefore, I am

25  going to allow them one more chance. I must admit up

26  front that I have trouble with this. I -- but I think

42

1   it would be improper for me to not allow the plaintiffs

2   to have leave to amend and try.  But I'm not really

3   sure what the end result is going to be except another

4   demurrer.  But anyway --

5       MR. STURGEON-GARCIA:  We would require that it

6   be clear that they be -- these new claims if they are

7   filed be pled with particularity that is required by

8   these provisions because as it now stands there is

9   nothing there.  They don't say what she got, when she

10  got them.  There is generic phone call and something

11  else.  I don't know what that is.  I don't think they

12  are going to be able to figure it out either because

13  she is dead.

14      THE COURT:  Well, all right.  I don't know

15  whether they will be able to figure it out, but they

16  will have a chance to amend their complaint.  I do

17  suspect that there will be some more details because

18  right now I have got a problem with it, too.

19      Okay.  The Bryan statute of limitations, did

20  you want to be heard on that, Mr. Sturgeon-Garcia?

21      MR. STURGEON-GARCIA:  Yes, Your Honor.  My

22  memory is that that was overruled without prejudice.

23      THE COURT:  No.  Motion to stay was denied

24  without prejudice, but demurrer was overruled.  In

25  fact, Judge McDonald ordered the defendants to answer

26  the Bryan complaint.

43

1    MR. MCCARTHY: Correct.

2    MR. STURGEON-GARCIA: Your Honor, we have a

3    brand new pleading. Do the same analysis apply to the

4    plea in abatement.

5    THE COURT: Every time a demurrer is sustained

6    with leave to amend there is a brand new pleading,

7    that's always true.

8    MR. STURGEON-GARCIA: The result is -- well,

9    I'm not -- I am a little confused by the comment.

10    The Bryan complaint as it existed doesn't

11    exist any more. There is a new complaint as we know

12    and the authority that we cited to this Court and this

13    Court acknowledged in plea in abatement analysis is you

14    have a new pleading. And whenever there's a new

15    pleading, we are entitled to challenge it just like it

16    was the first pleading ever on this level because this

17    is a new complaint. We haven't seen this complaint

18    before.

19    THE COURT: I understand, but if Judge

20    McDonald had sustained with leave to amend and if the

21    complaint had been amended, you would have had the same

22    argument made. You hadn't seen that pleading before.

23    This is an amended pleading, too. The only difference

24    is we have now consolidated into one complaint all

25    three of the named plaintiff cases. I don't see any

26    way to get around the Bennett case. Judge McDonald

44

1   previously looked at the statute of limitations as to

2   the Bryan allegations and overruled the demurrer on

3   that basis. And I think I am stuck with that as much

4   as you are.

5       MR. STURGEON-GARCIA: I think when you have a

6   new pleading you have new rights and I think that's the

7   authority you cited. But I guess we will bring that as

8   summary judgment motion.

9       THE COURT: Anyone wish to be heard on

10  uncertainty special demurrers?

11      MR. MCCARTHY: Plaintiffs submit, Your Honor.

12      MR. STURGEON-GARCIA: Nothing new from us on

13  that, Your Honor. Essentially same arguments that we

14  raised with respect to the other claims.

15      THE COURT: Then my tentative ruling will be

16  adopted, namely, overruled the statute of limitations

17  as to Bryan causes of action that were at issue, also

18  on special demurrer of uncertainty moot as to the fifth

19  and otherwise overruled. Under my tentative I was

20  going to set a time for Ameriquest to answer. I

21  instead now need to set a time for plaintiffs to amend

22  as to Reed statute of limitations and that's the only

23  amendment I expect to see. I don't expect any other

24  amendments.

25      Am I confusing this with something else I am

26  working on? Wasn't there an argument as to a newly

45

1    named plaintiff?

2        MR. MCCARTHY:  Yes.

3        MR. STURGEON-GARCIA:  Yes.

4        THE COURT:  I thought -- I seemed to have

5    skipped over this in my outline.  Let me tell you what

6    my tentative is on that.  Marcia Butler -- is that the

7    name of the --

8        MR. DONALDSON:  Yes, it is, Your Honor.

9        THE COURT:  I candidly must admit I am truly

10   troubled because I don't know which case she belongs

11   to.  There is no way to identify in the complaint, but

12   I do not have before me a demurrer that properly covers

13   that particular issue.  The demurrers before me are

14   general demurrers for failure to stay cause of action,

15   they are general demurrers based on statute of

16   limitations and they are special demurrers based upon

17   plea in abatement and uncertainty.  And quite frankly

18   Marcia Butler doesn't fall within any of those.  And,

19   therefore, I am going to overrule the demurrer.  I am

20   going to overrule it.

21       Can the plaintiffs amend -- I don't think you

22   would need much time to do what we are talking about.

23   How about ten days for notice?

24       MR. MCCARTHY:  I was going to propose this

25   Friday.

26       THE COURT:  Even better.  Amend by this Friday

46

1   then.

2          MR. STURGEON-GARCIA:  With respect to Butler,

3   this is another one of those things that was just

4   thrown in there.  She is not identified as a plaintiff

5   in earlier pleadings.  She is not identified properly

6   as a plaintiff in this pleading.

7          THE COURT:  Mr. Sturgeon-Garcia, quite frankly

8   I agree with you.  I just don't think on the matters

9   pending before me today that it has been properly

10  raised.  That's what I am saying.

11         MR. STURGEON-GARCIA:  Then we will address it

12  in response to the amendment.

13         THE COURT:  All right.  I'm not indicating how

14  I'm going to rule on that, but, in any event, all

15  right.  You can do that.  This Friday will be the 14th;

16  correct?  So, amend by Friday the 14th of June and I am

17  going to -- since this was demurrer filed by

18  Ameriquest, I'm going to ask Ameriquest's counsel to

19  please prepare the order after hearing.

20         Anything else, counsel?

21         MR. DONALDSON:  Your Honor, briefly.  George

22  Donaldson.

23         On this Butler issue, this is an individual

24  who was brought into the case by my co-counsel.  I

25  would just say that if we are going to have leave to

26  amend by Friday as it relates to this other issue

47

1 Reed's, and Your Honor has indicated the fact that you

2 have some trouble with the complaint as it relates to

3 identifying Butler, that we at least be given leave

4 with respect to this new amendment to clarify the

5 identification so that they do wish to bring it. At

6 least we have ameliorated the obvious problem that Your

7 Honor identified.

8     MR. STURGEON-GARCIA: There is procedural

9 problems here, Your Honor. You can't just throw in a

10 new person willy-nilly. If they want to add a new

11 party, there is procedure for doing that. It is called

12 a motion.

13     MR. DONALDSON: We made a motion to file

14 consolidated amended complaint.

15     THE COURT: No judgment was made at that time.

16     MR. DONALDSON: Right. We circulated -- we

17 told him we will add a plaintiff, which is a very

18 common thing to do. I think that frankly this is a

19 form over substance argument. But if there is a form

20 issue, we would simply like to cure it by Friday if we

21 are going to be filing an amended pleading on this

22 other issue as well.

23     THE COURT: Let me say this: I think it only

24 makes sense to allow the plaintiffs to do that. Let me

25 tell you why. If they don't change it, then maybe I am

26 stuck with the Bennett case. But right now we have got

48

1  a party alleged in the complaint without being named in

2  any caption and it makes no sense.  So, in order that

3  Ameriquest, who didn't object to this at the time of

4  motion for leave to amend so that you can object to it

5  properly, I am going to allow the plaintiffs to amend.

6  And I think in the interest of justice that is the best

7  way to go.

8       Mr. McCarthy?

9       MR. MCCARTHY:  Yes, Your Honor, if I can make

10  a very brief suggestion.  The two amendments are very,

11  very narrow issues now.  I would suggest in order to

12  expedite this process that after we amend, they choose

13  to file demurrer on Reed in this caption issue, that we

14  simply submit those matters on paper.  The Court is

15  well aware of them.  Your Honor can make whatever

16  ruling you deem appropriate.  We can get an answer on

17  file and move forward.

18      THE COURT:  I'm agreeable to that.

19      MR. STURGEON-GARCIA:  I haven't seen their

20  papers yet.

21      THE COURT:  Fair enough.  Hard to shortcut

22  something when you don't know what you are

23  shortcutting.

24      MR. STURGEON-GARCIA:  That is right.

25      THE COURT:  I'm sure there will probably be

26  more responsive pleas before we get an answer.

49

1  Everybody knows how to find Gloria in order to set a

2  date. And what I can -- what I will try to do, I will

3  admit candidly, the only reason you don't get tentative

4  rulings in advance is because of my calendar.

5  Sometimes it just impossible for me to get it to you in

6  advance, but on that particular one I will try to get

7  you by phone from my clerk a tentative ruling so you

8  can decide whether or not it's worth coming for hearing

9  and spending your client's money accordingly. I will

10  try my best to get you a tentative on that.

11       MR. STURGEON-GARCIA: Thank you.

12       THE COURT: Anything further?

13       MR. MCCARTHY: Nothing from plaintiff, Your

14  Honor.

15       THE COURT: Thank you.

16                 -oOo-

17

18

19

20

21

22

23

24

25

26

50

1  STATE OF CALIFORNIA )
           )  SS.
2  COUNTY OF SAN MATEO )

3

4

5

6

7       I, JOAN WOODS, CERTIFIED SHORTHAND REPORTER,

8  HEREBY CERTIFY:

9       THAT THE FOREGOING CONTAINS A TRUE, FULL AND

10  CORRECT TRANSCRIPT OF THE PROCEEDINGS GIVEN AND HAD IN

11  THE WITHIN ENTITLED MATTER, AND WAS REPORTED BY ME AT

12  THE TIME AND PLACE MENTIONED, AND THEREAFTER

13  TRANSCRIBED BY ME INTO LONGHAND TYPEWRITING, AND THAT

14  THE SAME IS A CORRECT TRANSCRIPT OF THE PROCEEDINGS.

15       DATED:

16          REDWOOD CITY, CALIFORNIA.

17

18  _____

     JOAN WOODS, CSR. 4573
19

20

21

22

23

24

25

26

51

1        JOAN WOODS
     C/O COURT REPORTER COORDINATOR
2          400 County Center
     Redwood City, California 94063

3
              June 13, 2002
4

5
    Steven N. Williams, Esq.
6  Cotchett, Pitre, Simon & McCarthy
    840 Malcolm Road, Suite 200
7  Burlingame, Ca 94010

8

9  RE:  Transcript in re:
         Pierceall vs. Ameriquest, No. 41620
10       50 pp., original and copy expedited

11
                 Total:  $150.00
12            -oOo-

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE**

**EXHIBIT 2**

Lerach, Coughlin, Stoia & Robbins,
LLP
Attn: Kathrein, Reed R.
100 Pine Street
Suite 2600
San Francisco, CA   94111

Buchalter, Nemer, Fields & Younger
Attn:  Lesage, Bernard
601 S. Figueroa Street, Ste 2400
Los Angeles, CA   90017-5704

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Valdes<br><br>                      Plaintiff/Petitioner(s)<br><br>VS.<br><br>Ameriquest Mortgage Company<br>                     Defendant/Respondent(s)<br>            (Abbreviated Title) | No. <u>RG05236537</u><br><br>Order<br><br>Demurrer to the First Amended Complaint<br>Sustained |

The Demurrer to the First Amended Complaint was set for hearing on 06/28/2006 at 02:00 PM in Department 20 before the Honorable Robert Freedman. The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The Demurrer of defendant Ameriquest Mortgage Company ("Defendant") to the First Amended Complaint ("FAC") of plaintiff Leonardo Valdez, individually and on behalf of all others similarly situated ("Plaintiff") is ruled on as follows:

1) Demurrer to the First Cause of Action for Unfair and Deceptive Practices in Violation of Civil Code sections 1750, et seq. (Consumer Legal Remedies Act ["CLRA"]) is SUSTAINED without leave to amend. The CLRA, by its definitions, applies to purchase or lease of goods (tangible chattels) or services (work, labor or services). (Civil Code section 1761.) A loan of money does not fall within those definitions. In reaching this conclusion, the Court has taken judicial notice of the legislative history of Assembly Bill 292, noting that the terms "money or credit" were included in draft versions as part of the definition of "consumer," but eliminated prior to final approval.

2) Demurrer to the Second Cause of Action for Unjust Enrichment is OVERRULED. Determination of whether the existence of a valid express contract precludes recovery by Plaintiff on a quasi-contract theory cannot be made at the pleading stage. A cause of action is adequately alleged.

3) Demurrers to the Third Cause of Action for Fraud and the Fourth Cause of Action for Negligent Misrepresentation are OVERRULED. The allegations of representations made "in form documents" (FAC, page 2:24) and in the "Settlement Statement" (FAC, page 4:21-25), with respect to "Loan Discount Fees" and "Loan Origination Fees," allegations that discounts were not given, and loan origination fees were hidden (FAC, page 1:12-17; 3:8-14; 5:5-11; 7:9-11), together with allegations of knowledge of falsity and justifiable reliance are adequate to state causes of action. Allegations of exact dollar amounts of damages are not required at the pleading stage. (See Staples v. Arthur Murray, Inc. (1967) 253 Cal.App.2d 507, 509.) Defendant's arguments that these causes of action must fail as a matter of law because they are based on alleged breach of contract, and that Defendant owed no duty of care to Plaintiff in negligence are not well taken. These issues are not amenable to resolution on demurrer.

4) Demurrer to the Fifth Cause of Action for Violations of Business & Professions Code sections 17200, et seq. (Unfair Competition Law ["UCL"]) is OVERRULED. Plaintiff's allegations adequately demonstrate business practices that are either fraudulent, unfair or both, for pleading purposes.

5) Demurrer to the Sixth Cause of Action for Violations of Business & Professions Code sections 17500, et seq. (False Advertising) is OVERRULED. Section 17500 is sufficiently broad to encompass the allegations included in the FAC regarding statements made the Loan Origination Fees and the Loan Discount Fees.

6) Defendant's Request for Judicial Notice and Supplemental Request for Judicial Notice of documents in the case file in Los Angeles County Superior Court Case No. BC 293396 is GRANTED as to the existence of the documents only, and not as to the truth of any matter asserted therein.

7) Defendant's Request for Judicial Notice of two versions of Assembly Bill No. 292 is GRANTED.

8) Defendant's Second Supplemental Request for Judicial Notice of the Complaint and Reporter's Transcript of Proceedings in Judicial Council Coordinated Proceeding No. 4162 is GRANTED as to the existence of the documents only, and not as to the truth of any matter asserted therein.

Defendant shall answer the Second, Third, Fourth, Fifth and Sixth Causes of Action no later than July 10, 2006.

Dated: 06/28/2006

_facsimile_

_____
Judge Robert Freedman

---

Order

| SHORT TITLE: Valdes VS Ameriquest Mortgage Company | CASE NUMBER: RG05236537 |
|---|---|

ADDITIONAL ADDRESSEES

Buchalter, Nemer, Fields & Younger
Attn: Allyn, Russell L.
601 South Figueroa Street
Suite 2400
Los Angeles, CA   90017-5704

Order