# Exhibit 1

Westlaw.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
(Cite as: 55 FR 18804)

Page 1

RULES and REGULATIONS

FEDERAL TRADE COMMISSION

[16 CFR Part 600]

Statement of General Policy or Interpretation;  Commentary on the Fair Credit
Reporting Act

Friday, May 4, 1990

AGENCY: Federal Trade Commission.

ACTION: Final rule;  publication of commentary.

SUMMARY: The Commission is issuing its Commentary on the Fair Credit Reporting Act
that will supersede all previously issued Commission and staff interpretations of
the Act. The purpose of the Commentary is to clarify and codify the most significant
of these interpretations.   This Commentary is on the law as it currently exists and
does not address issues or policies raised by pending legislation.

EFFECTIVE DATE: May 4, 1990.

ADDRESSES: Federal Trade Commission, Washington, DC 20580.

FOR FURTHER INFORMATION CONTACT: David G. Grimes, Jr., Attorney, Division of Credit
Practices, Federal Trade Commission, Washington, DC 20580, (202) 326- 3171.

SUPPLEMENTARY INFORMATION: On August 8, 1988, the Federal Trade Commission  ("FTC"
or "Commission") published its proposed Commentary on the Fair Credit Reporting Act
("FCRA") in the Federal Register (53 FR 29696;  August 8, 1988). The notice
accompanying the Commentary outlined the basic purposes and provisions of the FCRA,
and referred to the eight formal interpretations of the FCRA which had been issued
by the Commission (16 CFR 600.1-600.8) and hundreds of informal opinion letters by
the staff of the Commission ("staff") that responded to consumer and industry
inquiries by giving the staff's interpretations on the questions presented.   In
addition, the notice set forth (1) the Commission's rationale for issuing the
Commentary and (2) a list of the principal areas where it varied in appreciable
measure from the Commission's interpretations or from informal opinions previously
offered by the staff.   The notice briefly addressed the Commission's role in
enforcing the FCRA and its interest in improving the present method of providing
advice to the public.   It explained that the Commission viewed the publication of
the Commentary as an opportunity to provide a more comprehensive vehicle for
opinions concerning the FCRA, and to revise previous staff advice that the
Commission had come to believe was inconsistent or inaccurate.   Both the Federal
Register notice dated August 8, 1988, and the proposed Commentary itself, specified
that the Commentary does not have the force of a statutory provision or trade
regulation rule, and that it is not a binding ruling of any type.

 The notice in the Federal Register dated August 8, 1988, stated that the Commission
would accept public comments on the proposed Commentary to aid in preparation of the
final product.

 The comment period closed on October 7, 1988.   The Commission received over one
hundred responses from providers of consumer reports (credit bureaus), users of
consumer reports (creditors and insurers), consumers and their representatives, and
other interested parties.   Although the Commission stated that it was requesting
comments until October 7, 1988, all comments received were taken into account in

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

preparing the Commentary, even those received after that date.

 This notice highlights the principal areas in which the Commission revised the FCRA Commentary based on public comments received in response to the Commission's publication of the proposed Commentary in August 1988, or decided not to do so.   In this notice, the word "comment" refers to an opinion set forth in the Commentary, "public commenter" refers to a party that submitted views on the proposed Commentary following its publication in the Federal Register, and "public comments" refers to those views.

I. Principal Revisions to Commentary Based on Public Comments

 The Commission found the public comments helpful in preparing the final version of the Commentary, although not all the proposals were adopted.   The Commission adopted changes suggested by the public comments, where it appeared that they resulted in an appreciable improvement in the Commentary.   The majority of the revisions the Commission made in the Commentary involved only minor changes (adding a few words or a phrase or making some editorial change), and were designed to clarify points or to avoid possible unintended inferences.   However, a number of substantive changes were made based on public comments.   This section highlights the most significant of the revisions that were made based on public comments.

*1. Reports Consisting Solely of Name and Address (Sections 603(d), 608)*

 Several public commenters noted that comment 4F to section 603(d) could be construed to mean that a report limited to a consumer's name and address can never constitute a "consumer report." If name and address information in a report from a consumer reporting agency is furnished or used because it bears on any of the seven factors listed in section 603(d) (e.g., credit worthiness, character, general reputation, personal characteristics or mode of living) the Commission believes that report is a "consumer report." The Commission has clarified comment 4F to reflect this view and, consistent with this view, has deleted comment 1 to section 608.

*2. Public Record Information (Sections 603 (d) and (f))*

 Several public commenters argued vigorously that comment 3 to section 603(f), combined with comment 4E to section 603(d), would have the effect of banning the publication of public record information, in bulletins or newsletters or otherwise, [FN1] by merchant associations, legal news services, newspapers and other parties, because the publisher would be considered a "consumer reporting agency" making an unauthorized series of "consumer reports." [FN2] They contended that public record publications are marketed and used for their business news and information value, and that the possibility that the publication might be used by some subscribers in connection with credit, insurance, employment, or other consumer purposes, was remote.

 FN1 The public comments indicate that these publications include lists of items such as divorce, bankruptcy filings, mortgages, real estate sales, filed security interests, judgments, civil suits, probates, various liens, articles of incorporation and dissolution, new electronic hook-ups, and births.

 FN2 If that were the case, section 604 would effectively prohibit their publication, because the publication subscribers would have no "permissible purpose" for a report on all the individuals on whom information was published.

 The Commission has never intended to restrict the circulation of newsworthy public record information by newspapers and other publishers, simply because some of that information might be used by an occasional subscriber for purposes described in sections 603(d) and 604(3) of the FCRA. On the other hand, the Commission has no doubt that a report on an individual by a credit bureau to aid in determining the individual's eligibility for credit (or other such purposes) is a consumer report even if it contains only public record information.   Therefore, the Commission has (1) revised comment 4E to section 603(d) to make it clear that a distinct report of public information about an individual by a consumer reporting agency is a "consumer

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

report," and (2) deleted comment 3 to *18805section 603(f) to avoid any inference that a publisher of public record information becomes a "consumer reporting agency" because of its possible sale for consumer purposes by a few subscribers. The Commission further notes that, if a consumer were denied credit by a subscriber to such a publication based on information therein, section 615(b) would require the creditor to disclose to the consumer his or her right to learn the nature of the information that led to the denial, because that section applies to information obtained from sources other than consumer reporting agencies.

*3. Creditor as "Consumer Reporting Agency" (Section 603(f))*

  Some public commenters asked that the Commentary reflect written advice provided by the staff that a creditor does not become a "consumer reporting agency" when it either (1) provides consumer application information to a credit bureau for verification as part of its credit evaluation process that includes subsequent receipt of a report from the bureau, or (2) discloses the report to the consumer who is the subject of the report. The Commission concurs, and has therefore added two new comments (3 and 12) to section 603(f) to include those views.

*4. Reports Relating to Governmental Benefits (Section 604(3)(D))*

  Some public commenters suggested that the Commentary should reflect written advice the staff has provided to the effect that (1) the benefit that gives rise to a "permissible purpose" under this section may result from a rule or regulation, as well as a statute, and (2) a professional body such as a board of bar examiners would have such a purpose. The Commission concurs, and has amended comment 1 to incorporate those items.

*5. Reports Furnished for Commercial Transactions (Section 604(3)(E))*

  Several public commenters have noted that, although commercial transactions are not covered by the Act, as the Commentary indicates in comment 5C to section 603(d) and elsewhere, information in consumer report files that has been "collected in whole or in part" for consumer reporting purposes is a "consumer report," regardless of the purpose for which it is furnished. Accordingly, the dissemination of such information by a consumer reporting agency is covered by the Act. To dispel confusion on this point, the Commission has deleted the last sentence in comment 2 under section 604(3)(E).

*6. Accuracy (Section 607)*

  Some public commenters expressed the fear that comment 3C to section 607 required total perfection in (1) acquisition and transmission of computerized information and (2) avoidance of security breaches in regard to such data. The Commission agrees that section 607(b) is not violated because of isolated errors in the recording or transmission of information, or an unforeseeable alteration of data by an unauthorized party, because that provision requires consumer reporting agencies only to employ "reasonable procedures to assure maximum possible accuracy" (emphasis added). Therefore, it has revised the wording of the comment to specify that "reasonable" (not perfect) procedures are required to "minimize" (not eliminate) such occurrences.

  Other public commenters asserted that the Commentary should reflect staff written advice that accounts discharged in bankruptcy (as well as the bankruptcy itself), and a list of recipients of prior reports on the consumer (usually called "inquiries"), may be included in consumer reports. The Commission agrees, and has revised comment 6 to include those points.

*7. Disclosure (Sections 609-10)*

  Several public commenters asked that the Commentary reflect written advice by the staff to the effect that (1) a consumer reporting agency may respond to a demand for disclosure from a third party under the consumer's written power of attorney by making the disclosure directly to the consumer, rather than to the third party, (2)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

a point score used to evaluate a consumer's credit history (and the system that provided the score) need not be provided as part of a file disclosure to the consumer, (3) a consumer reporting agency that furnishes a report directly to a user at the request of another such agency must disclose the user (rather than the intermediary agency) as the report recipient, and (4) a consumer reporting agency may make in-person disclosures to consumers who have made appointments ahead of others who have not.   The Commission agrees, and has revised comments 4, 7 and 10 to section 609, and comment 1 to section 610 (respectively) to reflect those points.

One public commenter suggested that the Commentary should specify more clearly that a consumer reporting agency may not use an application form to inhibit a consumer from seeking a disclosure of his or her file.   The Commission has edited comment 3 to section 609 to clarify this point.

*8. Reinvestigation (Section 611)*

Some public commenters questioned the second sentence of comment 10, which stated that a "yardstick" of what was a "reasonable time" for an agency to investigate a consumer's dispute was the time it would take to recheck the matter if it were raised by one of the agency's user/customers; one such public commenter pointed out, among other things, that in some cases the reinvestigation could be made instantaneously by electronic means for the user.   Another public commenter suggested that thirty days (the period that prevailing industry policy recognizes as the time it should normally take to reinvestigate disputes) should be set as the standard.   The Commission agrees, and therefore has revised this comment to delete the proposed "yardstick" and substitute instead a comment that thirty days is the normal period for reinvestigation; however, it recognizes that the duration of "reasonable time" may vary in any given circumstance, depending on the simplicity or complexity of the dispute presented to the consumer reporting agency by the consumer.

Other public commenters asked that the Commentary (1) reflect written staff advice to the effect that a credit bureau may take into account, in considering whether it has reason to believe a dispute to be "frivolous or irrelevant," the fact that disputes are received in a similar format indicating that a third party such as a "credit repair clinic" is counselling consumers to submit disputes of items known to be accurate, and (2) make it clear that a consumer reporting agency is not required to conduct a second investigation of a particular item, unless the consumer submits new proof that the item is inaccurate or incomplete, or alleges changed circumstances.   The Commission agrees, and has made revisions to comment 11 to so indicate.

II. Significant Public Comments not Adopted

There were several areas in which public comments suggested changes in the Commentary that were not adopted.   This section highlights the most significant of those proposals, and sets forth the Commission's principal reasons for maintaining its position.

*1. Motor Vehicle Reports (Section 603(d, f))*

Several public commenters disagreed with the Commentary's retention of the views expressed in the Commission's current interpretation (16 CFR 600.4) that a motor vehicle report can be a **\*18806** "consumer report" (comment 4C to section 603(d)) and that a State Department of Motor Vehicles that sells such reports to insurers for underwriting purposes can be a "consumer reporting agency" (comment 10 to section 603(f)).   They generally argued that such reports were very useful to automobile insurers in determining whom to insure and what premiums to charge.   No public commenter set forth any problems that had resulted from the current interpretation during the years it has been in effect.

Some public commenters stated that the purpose of the motor vehicle reports  (and the departments that issue them) is law enforcement.   In effect, this was a legal argument that these reports therefore were not "used or expected to be used or

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                    Page 5
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

collected in whole or in part for the purpose of serving as a factor in establishing
the consumer's eligibility for * * * insurance" (section 603(d)) and that the
Department was not "assembling * * * information on consumers for the purpose of
furnishing consumer reports to third parties" (section 603(f)) (emphasis added).
Such an argument would insert the word "principal" before "purpose" in each of the
applicable definitions in the FCRA, effectively amending the statute.   Furthermore,
it wholly ignores the additional use to which such reports undeniably are put.
Such an interpretation would be clearly inconsistent with the views expressed
elsewhere in the Commentary that a party can become a consumer reporting agency when
it behaves like such an agency, even if its primary purpose, like the motor vehicle
departments that fulfill a law enforcement function but also sell motor vehicle
reports to insurers and are the subject of this interpretation, is not the making of
consumer reports. [FN3]

   FN3 See, e.g., comment 7 to section 603(f), which states that creditors and debt
collectors (whose primary purposes are granting credit and collecting debts,
respectively--not making consumer reports) can become "consumer reporting agencies"
if they furnish information on consumers beyond their own transaction or experiences
with them.

   The Commission sees no reason, based on its review of the public comments, to
revise its longstanding view that a Department that regularly sells motor vehicle
reports to insurers containing information such as driving arrests or convictions,
is covered by the FCRA. As pointed out in its text, the current Interpretation is
not intended to interfere with the law enforcement activities of state Motor Vehicle
Departments. [FN4]   Since the Interpretation (16 CFR 600.4) has been in effect for
some 16 years and has apparently not caused any appreciable dislocation, and no
persuasive new arguments have been presented for revising it, the Commission has
retained it in the Commentary.

   FN4 However, that interpretation notes that the FCRA would require that an insurer
that takes adverse action against consumer applicants based on such a report must
tell such consumers that the motor vehicle department is the source of the report
(section 615), and that the Department must establish procedures to (1) make
disclosure of its records to the consumer required by sections 609-10, (2)
reinvestigate consumer disputes under section 611, (3) avoid reporting obsolete
information as set forth in section 605, and (4) maintain maximum possible accuracy
of information in the reports (section 607).

*2. Insurance Claims (Sections 603(d), 604(3)(C))*

   Some public commenters expressed disagreement with items in the Commentary stating
that an insurer would not have a permissible purpose to obtain a consumer report in
order to investigate an insurance claim (comment 2 to section 604(3)(C)) and with
some portions of the comments that dealt with the applicability or inapplicability
of the FCRA to claims reports (reports by investigative services retained by
insurers in connection with claims).   The public commenters agreed with the
Commission's basic view that a claims report is generally not a "consumer report"
and therefore not covered by the FCRA (comment 6C to section 603(d)) but disagreed
with indications elsewhere (principally comment 5C to section 603(d)) that it might
be covered in one case (if a consumer report was included by the investigator as
part of the claims report), essentially asserting that no claims report was ever
covered. [FN5]   The objections to the statement that no permissible purpose existed
for an insurer to obtain a consumer report from a consumer reporting agency in
connection with a claim were based primarily on policy grounds-- that it would be
useful for an insurer to know if the insurance claimant was in financial difficulty
and therefore prone to submit a fraudulent claim.

   FN5 One public comment erroneously construed the Commentary as concerning itself
with an investigation undertaken by an insurer's internal investigators.   A phrase
was added to comment 6C to section 603(d) ( "Insurance Claims Reports") to make it
clear that the Commentary is only referring to reports provided by independent
claims investigation services in this context.

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Commission has retained the essence of these comments.  As to the
"permissible purpose" issue, it should be emphasized that the view that insurance
claims do not provide such a purpose is not only analytically compelling, [FN6] but
also is a critical basis for the conclusion (with which the public commenters
agreed) that claims reports are not generally to be considered consumer reports.
[FN7]  As to its general treatment of claims reports, it should again be emphasized,
as it was in the Federal Register notice accompanying the proposed Commentary, [FN8]
that the Commentary reduces the minimal FCRA coverage of claims reports asserted by
previous staff opinions on the subject. [FN9]

FN6 <u>Section 604(3)(C)</u>, which clearly provides a permissible purpose only for
"underwriting of insurance" (emphasis added), could easily have been drafted to
permit reports for insurance claims purposes if Congress so intended.  In this
posture, it would be unreasonable to read <u>section 604(3)(E)</u> to provide such a
purpose.

FN7 Since the definition of "consumer report" in <u>section 603(d)</u> includes reports
for "purposes authorized under 604," the view that an insurance claim provides a
permissible purpose may lead to a conclusion that claims reports are consumer
reports.  This would be most undesirable from a policy viewpoint, because the user
of claims reports would be required by section 606(a) to notify the insurance
claimant that an investigative consumer report was being prepared, which would put
the consumer on guard and possibly destroy the ability of the investigator to
provide a useful claims report.  A key factor in the principal cases brought
against parties providing claims investigation services, which hold that claims
reports are not "consumer reports" under <u>section 603(d)</u>, has been the lack of a
permissible purpose for an insurer to obtain a consumer report for claims purposes
under <u>section 604(3)(C)</u> or <u>(E)</u>. <u>Hovater v. Equifax, Inc., 823 F.2d 413, 418-19
(11th Cir.)</u>, cert. denied,  U.S. , <u>108 S. Ct. 490 (1987)</u>; <u>Houghton v. New Jersey
Manufacturers Ins. Co., 795 F.2d 1144, 1149-50 (3rd Cir. 1986)</u>; <u>Cochran v.
Metropolitan Life Ins. Co., 472 F. Supp. 827, 831 (N.D. Ga. 1979)</u>.

FN8 This was the first issue discussed under the heading "Principal Changes From
Prior Views" in that notice. See <u>53 FR at 29697</u>.

FN9 The only time a claims report would generally be a consumer report is a
situation where the investigator included a consumer report (or information from it)
in the claims report.

3. Subpoena as Permissible Purpose (<u>Section 604(1)</u>)

Some public commenters stated that a permissible purpose should exist if state or
local law defines a subpoena as an "order of court" even if it is not signed by a
judge, as comment 1 states it must be.

The Commission has consistently maintained the view, articulated in briefs it filed
in the leading case on the issue, <u>In re Gren, 633 F.2d 825 (9th Cir. 1980)</u>, among
others, that a subpoena is an "order of court" for purposes of providing a
permissible purpose under the FCRA only if it was signed by a judge (or other
impartial judicial official). [FN10]  The Commission continues to *18807 believe
that the privacy protection contemplated by section 604 of the FCRA precludes credit
bureaus from issuing reports on consumers based on a subpoena issued pro forma by
the clerk of a court, regardless of how state or local law might define such a
document.  In addition, the Commission believes that the needs of consumers, law
enforcement officials, [FN11] and most credit bureaus, [FN12] have been met by this
result.  Therefore, this comment has been retained.

FN10 In the Gren case, the court supported the refusal by a major credit bureau to
provide a consumer report in response to a grand jury subpoena. For a sampling of
varying lower court opinions on the issue, compare <u>United States v. Retail Men's
Credit Ass'n, 501 F. Supp. 21 (M.D. Fla. 1980)</u> with <u>In Re Grand Jury Subpoena Duces
Tecum, 498 F. Supp. 1174 (N.D. Ga. 1980)</u>, and various cases cited in these
decisions.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
(Cite as: 55 FR 18804)

FN11 The Department of Justice revised its procedure in 1984, based on the Gren ruling in support of the Commission position, to seek consumer reports under section 604(1) only through actual court orders, rather than through grand jury subpoenas.

FN12 The principal consumer reporting industry trade association, in its submission on the Commentary, did not raise the concerns of those of its members who disputed the Commission's interpretation.

## 4. *Prescreening (Section 604(3)(A))*

The Commission's prescreening interpretation occasioned far more detailed public comments than any other issue. [FN13] Credit bureaus that provide a "prescreening" service, and creditors that use the service (which produces a list of consumers to be targeted as customers by the user), objected to the requirement in comment 6 and in the current Commission interpretation (16 CFR 600.5) that consumers who survived the "screen" (and thus were included in the list provided by the credit bureau) receive an offer of credit from the user of the service. Those public commenters made strong practical arguments that the prescreening process would be more helpful if creditors were permitted to mail consumers an application form, and in return get income and em ployment information (and perhaps order a full consumer report), before deciding whether or not to grant credit. Creditors argued that the prescreening process was a very efficient method of targeting would-be customers, but was not sufficiently precise to enable them to make firm offers of credit to all consumers who survive the screen. In addition, they contended that strict compliance would lead to unwieldy procedures such as opening an account with a low line of credit, and closing the account quickly where circumstances ( e.g., early experience on the account, or a full consumer report) indicated. Some consumer representatives, on the other hand, contended that even the current (and proposed Commentary) interpretation was an unauthorized abridgment of consumers' privacy rights that section 604 of the FCRA was enacted to protect, because the consumer's file was thereby accessed by creditors with whom the consumer had no prior contact whatsoever. [FN14]

FN13 This issue was featured as one of three issues upon which the Commission especially solicited public views in the questions posed in its Federal Register notice under the heading "Opportunity for Public Comment" (questions 5 through 7). See 53 FR at 29698. The response to the "prescreening" issue was an enormous volume of varying comments, whereas the other two issues (notice to consumers by users of investigative consumer reports; certification of permissible purposes to consumer reporting agencies by users of consumer reports) drew only pro forma responses from relatively few public commenters.

FN14 The Commission realizes, as it did when it issued the original interpretation in 1973, that the usual trigger for a "permissible purpose" under section 604(3)(A)--an application by the consumer for credit--does not exist here. However, the Commission continues to believe there is relatively insignificant harm to the consumer because the privacy infringement is minimal in prescreening, compared to that which occurs when a creditor obtains a full consumer report on a credit applicant. The consumer's credit history is not reviewed by the creditor; rather, his or her name is simply included (or not) on the list provided to the creditor.

The Commission continues to believe that the current interpretation is in accord with the spirit of the FCRA because the modest invasion of the consumer's privacy that occurs when his or her credit record is reviewed in the prescreening process is offset by a substantial potential gain--an actual offer of credit. [FN15] However, it also believes that a liberalized interpretation that would permit the creditor to send only promotional material to the "survivors" of the prescreen would not be justified because the consumers would not be receiving the same clear benefit in exchange for the creditor's use of their credit histories in the prescreening process. In terms of section 604(3)(A), the presence of an intent by the user of the prescreening service to grant credit provides a sufficient nexus between creditor and consumer to meet the statutory requirement that the creditor "intends to use the information in connection with a credit transaction * * * involving extension of credit to the consumer," whereas an intent by the creditor to send

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

promotional material does not. Although the public comments articulately set forth the marketplace utility of expanding the prescreening process, they provide no convincing legal rationale to support such a result. Therefore, the Commission has retained the essence of comment 6 on this topic. [FN16]

FN15 Of course, there may be rare situations in which a changed circumstance will permit a creditor to omit a credit offer to an isolated consumer on the final list without negating its underlying intent to offer such credit when it used the prescreening service. For instance, the consumer's address may change in such a way as to make the credit extension obviously inappropriate (i.e., new address may indicate the consumer has moved from the creditor's service area, or even been imprisoned).

FN16 One sentence in the interpretation was modified in response to some of the public comments on this issue, to make it clear that (1) a third party providing demographic or similar services in conjunction with the credit review provided by the consumer reporting agency in the prescreening process could be selected by either the creditor client or the consumer reporting agency, and (2) that such non-credit functions need not technically be "demographic" in nature.

Some public commenters also suggested that prescreened lists are not consumer reports if they are furnished solely to third parties ( e.g., mailing services) rather than directly to the customers that ordered them. Comment 6 has been revised to reflect the Commission's view that this procedure is not a means by which a consumer reporting agency can avoid application of the FCRA to such lists. Comment 6 has also been amended to reflect that a prescreened list is subject to the FCRA, regardless of the medium through which the client that ordered it solicits consumers.

*5. Measuring the "7-Year" Period (Section 605(a)(4))*

Public commenters made disparate suggestions for changing the positions espoused in the Commentary on this provision. One consumer commenter would have started the "placement for collection" time when the creditor first sent a "reminder" past-due notice (as opposed to comment 1, which opines that it starts when serious collection efforts are started or dunning notices are sent), whereas one creditor commenter would have changed this time to the date of assignment to an outside collection agency. Some consumer commenters disputed that the date of "charge off" or "placement for collection" should be used at all, since they were beyond the control of the consumer; one such commenter asserted that the first of the two dates should control for accounts that are both placed for collection and charged to profit and loss, rather than each event having its own 7-year period.

After considering all the suggestions made by industry and consumer public commenters, the Commission has decided to retain its comments on this provision concerning what dates should be used to start measuring the 7-year period for charge-off (date the account is written off) and collection (date the collection effort begins) accounts. The Commission believes that its proposals **\*18808** represent the best common sense approach available to calculate that period, in a situation where the section provides no precise dates.

*6. Accuracy (Section 607)*

Some public commenters questioned the use of examples in comment 3 on this provision, expressing the fear that the example would be taken either as a per se violation or as the only way to comply with section 607(b). The Commission has retained the examples, because it believes they will assist the public to understand some areas in which violations may occur and some methods of compliance. However, the Commission certainly does not intend that, where the Commentary provides an example of a method of compliance with the FCRA, it should always be considered that the Commission regards it as the only permissible method for compliance.

*7. Disclosure by Users of Consumer Reports (Section 615)*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
55 FR 18804-01                                              Page 9
55 FR 18804-01, 1990 WL 342991 (F.R.)
(Cite as: 55 FR 18804)
```

Some public commenters disagreed with the position stated in comment 12 that the "section 615" notice from a report user to a consumer must advise the consumer of the consumer reporting agency's street address, not just a post office box address. The commenters understood that the purpose of the comment was to give the consumer the option (at least implied in sections 609-10) of receiving an in-person disclosure of his or her file.   They suggested variously that an "800" toll-free phone number might be provided for additional information, that they might not always know the street address, and that a specialized office to handle disclosure and disputes might be the most efficient address to provide to consumers.

The Commission has retained the comment as written.   Nothing in the comment precludes a user from including a post office address and a relevant street address in the "section 615" notice, or from providing a specialized office of the consumer reporting agency as the address where inquiries (including in-person visits) can be made.

*8. Pre-emption of State Law (Section 622)*

Some public commenters disputed the Commission's position that a state law is pre-empted by the FCRA only when compliance with it would result in a violation of the FCRA. One such commenter argued vigorously that the Commission should adopt a less precise test, such as whether a state law frustrates the effectiveness or purpose of the FCRA or denies a right or benefit conferred by the FCRA, citing Retail Credit Co. v. Dade County, 393 F. Supp. 577, 581 (S.D. Fla. 1975).

The Commission has decided to maintain its position.   It is based on an unequivocal statement in the principal report in the FCRA's legislative history by the Senate Committee on Banking and Currency that, under the pre-emption provision, "no State law would be preempted unless compliance would involve a violation of Federal law." S. Rep, 91-517, 91st Cong., 1st Sess. 8 (November 5, 1969).   In light of the clear statement of Congressional intent provided by this important source, written opinions by high level FTC staff have consistently declined to adopt the Retail Credit opinion that either ignored, or was unaware of, the critical Senate Report.   The Commission believes the Commentary should continue to reflect Congressional intent concerning pre-emption of state laws, as set forth succinctly in the quoted report.

*9. Miscellaneous Requests for Added Comments*

Some public commenters made suggestions that the Commission establish new principles in the Commentary, or insert an item to validate the commenter's own procedures.   Although not all of the proposals were clearly without merit, the Commission believes it is unwise to add major new sections to the final version of the Commentary to address issues that have not been the subject of Commission interpretations or staff correspondence.   As indicated in the Introduction to the Commentary (item 4), the staff will continue to respond to requests for informal opinions, so any public commenter concerned about such an issue can (1) seek the staff's views and (2) be assured that such issues will be considered, when appropriate, for inclusion when the Commission first updates the Commentary.

III. Paperwork Reduction Act

Because the Commentary may involve the "collection of information" as defined in 5 CFR 1320.7(c), it was submitted to OMB for review under the Paperwork Reduction Act. On September 23, 1988, OMB approved that submission, assigning control No. 3084-0091 to the Commentary for use through August 31, 1991.

List of Subjects in 16 CFR Part 600

Credit, Trade practices.

Pursuant to 15 U.S.C. 1681s and 16 CFR 1.73, the Commission hereby revises 16 CFR part 600 to read as follows:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

PART 600--STATEMENTS OF GENERAL POLICY OR INTERPRETATIONS

600.1 Authority and purpose.

600.2 Legal effect.

Appendix--Commentary on the Fair Credit Reporting Act.

 Authority: 15 U.S.C. 1681s and 16 CFR 1.73.

§ 600.1 Authority and purpose.

 (a) Authority: This part is issued by the Commission pursuant to the provisions of the Fair Credit Reporting Act. Pub. L. 91-508, approved October 26, 1970. 84 Stat. 1127-36 (15 U.S.C. 1681 et seq).

 (b) Purpose. The purpose of this part is to clarify and consolidate statements of general policy or interpretations in a commentary in the Appendix to this part. The Commentary will serve as guidance to consumer reporting agencies, their customers, and consumer representatives.  The Fair Credit Reporting Act requires that the manner in which consumer reporting agencies provide information be fair and equitable to the consumer with regard to the confidentiality, accuracy, and proper use of such information.  The Commentary will enable interested parties to resolve their questions more easily, present a more comprehensive treatment of interpretations and facilitate compliance with the Fair Credit Reporting Act in accordance with Congressional intent.

§ 600.2 Legal effect.

 (a) The interpretations in the Commentary are not trade regulation rules or regulations, and, as provided in § 1.73 of the Commission's rules, they do not have the force or effect of statutory provisions.

 (b) The regulations of the Commission relating to the administration of the Fair Credit Reporting Act are found in subpart H of 16 CFR part 1 (Sections 1.71-1.73).

Appendix--Commentary on the Fair Credit Reporting Act

Introduction

 1. Official status. This Commentary contains interpretations of the Federal Trade Commission (Commission) of the Fair Credit Reporting Act (FCRA).  It is a guideline intended to clarify how the Commission will construe the FCRA in light of Congressional intent as reflected in the statute and its legislative history.  The Commentary does not have the force or effect of regulations or statutory provisions, and its contents may be *18809 revised and updated as the Commission considers necessary or appropriate.

 2. Status of previous interpretations. The Commentary primarily addresses issues discussed in the Commission's earlier formal interpretations of the FCRA (16 CFR 600.1-600.8), which are hereby superseded, in the staff's manual entitled "Compliance With the Fair Credit Reporting Act" (the current edition of which was published in May 1973, and revised in January 1977 and March 1979), and in informal staff opinion letters responding to public requests for interpretations, and it also reflects the results of the Commission's FCRA enforcement program.  It is intended to synthesize the Commission's views and give clear advice on important issues. The Commentary sets forth some interpretations that differ from those previously expressed by the Commission or its staff, and is intended to supersede all prior formal Commission interpretations, informal staff opinion letters, and the staff manual cited above.

 3. Statutory references. Reference to several different provisions of the FCRA is frequently required in order to make a complete analysis of an issue.  For various sections and subsections of the FCRA, the Commentary discusses the most important

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

and common overlapping references under the heading "Relation to other
(sub)sections."

   4. Issuance of staff interpretations. The Commission will revise and update the
Commentary as it deems necessary, based on the staff's experience in responding to
public inquiries about, and enforcing, the FCRA. The Commission welcomes input from
interested industry and consumer groups and other public parties on the Commentary
and on issues discussed in it.    Staff will continue to respond to requests for
informal staff interpretations.    In proposing revisions of the Commentary, staff
will consider and, where appropriate, recommend that the Commentary incorporate
issues raised in correspondence and other public contacts, as well as in connection
with the Commission's enforcement efforts.    Therefore, a party may raise an issue
for inclusion in future editions of the Commentary without making any formal
submission or request to that effect.    However, requests for formal Commission
interpretations of the FCRA may also still be made pursuant to the procedures set
forth in the Commission's Rules (16 CFR 1.73).

   5. Commentary citations to FCRA. The Commentary should be used in conjunction with
the text of the statute.    In some cases, the Commentary includes an abbreviated
description of the statute, rather than the full text, as a preamble to discussion
of issues pertaining to various sections and subsections.    These summary statements
of the law should not be used as a substitute for the statutory text.

*Section 601--Short Title*

   "This title may be cited as the Fair Credit Reporting Act."

   The Fair Credit Reporting Act (FCRA) is title VI of the Consumer Credit Protection
Act, which also includes other Federal statutes relating to consumer credit, such as
the Truth in Lending Act (title I), the Equal Credit Opportunity Act (Title VII),
and the Fair Debt Collection Practices Act (title VIII).

*Section 602--Findings and Purpose*

   Section 602 recites the Congressional findings regarding the significant role of
consumer reporting agencies in the nation's financial system, and states that the
basic purpose of the FCRA is to require consumer reporting agencies to adopt
reasonable procedures for providing information to credit grantors, insurers,
employers and others in a manner that is fair and equitable to the consumer with
regard to confidentiality, accuracy, and the proper use of such information.

*Section 603--Definitions and Rules of Construction*

   Section 603(a) states that "definitions and rules of construction set forth in this
section are applicable for the purposes of this title."

   Section 603(b) defines "person" to mean "any individual, partnership, corporation,
trust, estate, cooperative, association, government or governmental subdivision or
agency or other entity."

1. Relation to Other Sections

   Certain "persons" must comply with the Act. The term "consumer reporting agency" is
defined in section 603(f) to include certain "persons." Section 619 subjects any
"person" who knowingly and willfully obtains information from a consumer reporting
agency on a consumer under false pretenses to criminal sanctions.    Requirements
relating to report users apply to "persons." Section 606 imposes disclosure
obligations on "persons" who obtain investigative reports or cause them to be
prepared.    Section 615(c) uses the term "person" to denote those subject to
disclosure obligations under sections 615(a) and 615(b).

2. Examples

   The term "person" includes universities, creditors, collection agencies, insurance

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                    Page 12
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

companies, private investigators, and employers.

 Section 603(c) defines the term "consumer" to mean "an individual."

1. Relation to Other Sections

 The term "consumer" denotes an individual entitled to the Act's protections.
Consumer reports, as defined in section 603(d), are reports about consumers.  A
"consumer" is entitled to obtain disclosures under section 609 from consumer
reporting agencies and to take certain steps that require such agencies to follow
procedures in section 611, concerning disputes about the completeness or accuracy of
items of information in the consumer's file. Disclosures required under section 606
by one procuring an investigative report must be made to the "consumer" on whom the
report is sought.   Notifications required by section 615 must be provided to
"consumers." A "consumer" is the party entitled to sue for willful noncompliance
(section 616) or negligent noncompliance (section 617) with the Act's requirements.

2. General

 The definition includes only a natural person.   It does not include artificial
entities ( e.g., partnerships, corporations, trusts, estates, cooperatives,
associations) or entities created by statute ( e.g., governments, governmental
subdivisions or agencies).

 Section 603(d) defines "consumer report" to mean "any written, oral, or other
communication of any information by a consumer reporting agency bearing on a
consumer's credit worthiness, credit standing, credit capacity, character, general
reputation, personal characteristics, or mode of living which is used or expected to
be used or collected in whole or in part for the purpose of serving as a factor in
establishing the consumer's eligibility for (1) credit or insurance to be used
primarily for personal, family, or household purposes, or (2) employment purposes,
or (3) other purposes authorized under Section 604" (with three specific
exclusions).

1. Relation to "Consumer Reporting Agency"

 To be a "consumer report," the information must be furnished by a "consumer
reporting agency" as that term is defined in section 603(f).   Conversely, the term
"consumer reporting agency" is restricted to persons that regularly engage in *18810
assembling or evaluating consumer credit information or other information on
consumers for the purpose of furnishing "consumer reports" to third parties.   In
other words, the terms "consumer reporting agency" in section 603(f) and "consumer
report" in section 603 (d)) are mutually dependent and must therefore be construed
together.   For example, information is not a "consumer report" if the person
furnishing the information is clearly not a "consumer reporting agency" ( e.g., if
the person furnishing the information does not regularly furnish such information
for monetary fees or on a cooperative nonprofit basis).

2. Relation to the Applicability of the Act

 If a report is not a "consumer report," then the Act does not usually apply to it.
[FN1]  For example, because a commercial credit report is not a report on a
consumer, it is not a "consumer report".   Therefore, the user need not notify the
subject of the name and address of the credit bureau when taking adverse action, and
the provider need not omit "obsolete" information, as would be required if the FCRA
applied.

 FN1 However, a creditor denying a consumer's application based on a report from a
"third party" must give the disclosure required by section 615(b).

3. Report Concerning a "Consumer's" Attributes and History

 A. General. A "consumer report" is a report on a "consumer" to be used for certain
purposes involving that "consumer."

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

B. Artificial entities. Reports about corporations, associations, and other collective entities are not consumer reports, and the Act does not apply to them.

C. Reports on businesses for business purposes. Reports used to determine the eligibility of a business, rather than a consumer, for certain purposes, are not consumer reports and the FCRA does not apply to them, even if they contain information on individuals, because Congress did not intend for the FCRA to apply to reports used for commercial purposes (see 116 Cong. Rec. 36572 (1970) (Conf. Report on H.R. 15073)).

4. "(C)redit Worthiness, Credit Standing, Credit Capacity, Character, General Reputation, Personal Characteristics, or Mode of Living * * *"

A. General. To be a "consumer report," the information must bear on at least one of the seven characteristics listed in this definition.

B. Credit guides. Credit guides are listings, furnished by credit bureaus to credit grantors, that rate how well consumers pay their bills.  Such guides are a series of "consumer reports," because they contain information which is used for the purpose of serving as a factor in establishing the consumers' eligibility for credit.  However, if they are coded (by identification such as social security number, driver's license number, or bank account number) so that the consumer's identity is not disclosed, they are not "consumer reports" until decoded. (See discussion of uncoded credit guides under section 604(3)(A), item 8 infra.)

C. Motor vehicle reports. Motor vehicle reports are distributed by state motor vehicle departments, generally to insurance companies upon request, and usually reveal a consumer's entire driving record, including arrests for driving offenses. Such reports are consumer reports when they are sold by a Department of Motor Vehicles for insurance underwriting purposes and contain information bearing on the consumer's "personal characteristics," such as arrest information.  The Act's legislative history indicates Congress intended the Act to cover mutually beneficial exchanges of information between commercial enterprises rather than between governmental entities.  Accordingly, these reports are not consumer reports when provided to other governmental authorities involved in licensing or law enforcement activities. (See discussion titled "State Departments of Motor Vehicles," under section 603(f), item 10 infra.)

D. Consumer lists. A list of the names of creditworthy individuals, or of individuals on whom credit bureaus have derogatory information, is a series of "consumer reports" because the information bears on credit worthiness.

E. Public record information. A report solely of public record information is not a "consumer report" unless that information is provided by a consumer reporting agency, is collected or used for the purposes identified in section 603(d), and bears on at least one of the seven characteristics listed in the definition. Public record information relating to records of arrest, or the institution or disposition of civil or criminal proceedings, bears on one or more of these characteristics.

F. Name and address. A report limited solely to the consumer's name and address alone, with no connotations as to credit worthiness or other characteristics, does not constitute a "consumer report," if it does not bear on any of the seven factors.

G. Rental characteristics. Reports about rental characteristics (e.g., consumers' evictions, rental payment histories, treatment of premises) are consumer reports, because they relate to character, general reputation, personal characteristics, or mode of living.

5. "(U)sed or Expected to Be Used or Collected in Whole or in Part for the Purpose of Serving as a Factor in Establishing the Consumer's Eligibility * * *"

A. Law enforcement bulletins. Bulletins that are limited to a series of

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                          Page 14
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

descriptions, sometimes accompanied by photographs, of individuals who are being
sought by law enforcement authorities for alleged crimes are not a series of
"consumer reports" because they have not been collected for use in evaluating
consumers for credit, insurance, employment or other consumer purposes, and it
cannot reasonably be anticipated they will be used for such purposes.

 B. Directories. Telephone directories and city directories, to the extent they only
provide information regarding name, address and phone number, marital status, home
ownership, and number of children, are not "consumer reports," because the
information is not used or expected to be used in evaluating consumers for credit,
insurance, employment or other purposes and does not reflect on credit standing,
credit worthiness, or any of the other factors.    A list of names of individuals
with checking accounts is not a series of consumer reports because the information
does not bear on credit worthiness or any of the other factors.    A trade directory,
such as a list of all insurance agents licensed to do business in a state, is not a
series of consumer reports because it is commercial information that would be used
for commercial purposes.

 C. Use of prior consumer report in preparation. A report that would not otherwise
be a consumer report may be a consumer report, notwithstanding the purpose for which
it is furnished, if it includes a prior consumer report or information from consumer
report files, because it would contain some information "collected in whole or in
part" for consumer reporting purposes. For example, an insurance claims report would
be a consumer report if a consumer report (or information from a consumer report)
were used to prepare it. (See discussion, infra, in item 6-C under this subsection.)

 D. Use of reports for purposes not anticipated by the reporting party. The question
arises whether a report that is not otherwise a consumer report is subject to the
FCRA because the recipient subsequently uses the report **\*18811** for a permissible
purpose.    If the reporting party's procedures are such that it neither knows of nor
should reasonably anticipate such use, the report is not a consumer report.    If a
reporting party has taken reasonable steps to insure that the report is not used for
such a purpose, and if it neither knows of, nor can reasonably anticipate such use,
the report should not be deemed a consumer report by virtue of uses beyond the
reporting party's control.    A reporting party might establish that it does not
reasonably anticipate such use of the report by requiring the recipient to certify
that the report will not be used for one of the purposes listed in <u>section 604</u>.
(Such procedure may be compared to the requirement in section 607(a), discussed
infra, that consumer reporting agencies furnishing consumer reports require that
prospective users certify the purposes for which the information is sought and
certify that the information will be used for no other purpose.)    For example, a
claims reporting service could use such a certification to avoid having its
insurance claims reports deemed "consumer reports" if the report recipient/insurer
were to use the report later for "underwriting purposes" under section 604(3)(C),
such as terminating insurance coverage or raising the premium.

6. "(E)stablishing the Consumer's Eligibility for (1) Credit or Insurance to Be Used
Primarily for Personal, Family or Household Purposes, or (2) Employment Purposes, or
(3) Other Purposes Authorized Under Section 60 4"

 A. Relation to section 604. Because section 603(d)(3) refers to  "purposes
authorized under section 604" (often described as "permissible purposes" of consumer
reports), some of which overlap purposes enumerated in section 603 (e.g., 603(d)(1)
and 603(d)(2)), sections 603 and 604 must be construed together, to determine what
are "consumer reports" and "permissible purposes" under the two sections.    See
discussion infra, under section 604.

 B. Commercial credit or insurance. A report on a consumer for credit or insurance
in connection with a business operated by the consumer is not a "consumer report,"
and the Act does not apply to it.

 C. Insurance claims reports. (It is assumed that information in prior consumer
reports is not used in claims reports.    See discussion,  supra, in item 5-C under
this subsection.)    Reports provided to insurers by claims investigation services

                 ©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                        Page 15
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

solely to determine the validity of insurance claims are not consumer reports,
because <u>section 604(3)(C)</u> specifically sets forth only underwriting (not claims) as
an insurance-related purpose, and <u>section 603(d)(1)</u> deals specifically with
eligibility for insurance and no other insurance-related purposes.   To construe
<u>section 604(3)(E)</u> as including reports furnished in connection with insurance claims
would be to disregard the specific language of <u>sections 604(3)(C)</u> and <u>603(d)(1)</u>.

  D. Scope of employment purpose. A report that is used or is expected to be used or
collected in whole or in part in connection with establishing an employee's
eligibility for "promotion, reassignment or retention," as well as to evaluate a job
applicant, is a consumer report because <u>sections 603(d)(2)</u> and <u>604(3)(B)</u> use the
term "employment purposes," which <u>section 603(h)</u> defines to include these
situations.

  E. Bad check lists. A report indicating that an individual has issued bad checks,
provided by printed list or otherwise, to a business for use in determining whether
to accept consumers' checks tendered in transactions primarily for personal, family
or household purposes, is a consumer report. The information furnished bears on
consumers' character, general reputation and personal characteristics, and it is
used or expected to be used in connection with business transactions involving
consumers.

  F. Tenant screening reports. A report used to determine whether to rent a residence
to a consumer is a consumer report, because it is used for a business transaction
that the consumer wishes to enter into for personal, family or household purposes.

7. Exclusions From the Definition of "Consumer Report"

  A. "(Any) reports containing information solely as to transactions or experiences
between the consumer and the person making the report;"--(1) Examples of Sources.
The exemption applies to reports limited to transactions or experiences between the
consumer and the entity making the report (e.g., retail stores, hospitals, present
or former employers, banks, mortgage servicing companies, credit unions, or
universities).

  (2) Information beyond the reporting entity's own transactions or experiences with
the consumer.

  The exemption does not apply to reports by these entities of information beyond
their own transactions or experiences with the consumer.   An example is a
creditor's or an insurance company's report of the reasons it cancelled credit or
insurance, based on information from an outside source.

(3) Opinions Concerning Transactions or Experiences

  The exemption applies to reports that are not limited to the facts, but also
include opinions ( e.g., use of the term "slow pay" to describe a consumer's
transactions with a creditor), as long as the facts underlying the opinions involve
only transactions or experiences between the consumer and the reporting entity.

  B. "(A)ny authorization or approval of a specific extension of credit directly or
indirectly by the issuer of a credit card or similar device;"--(1) General. The
exemption applies to a credit or debit card issuer's written, oral, or electronic
communication of its decision whether or not to authorize a charge, in response to a
request from a merchant or other party that the consumer has asked to honor the
card.

  C. "(A)ny report in which a person who has been requested by a third party to make
a specific extension of credit directly or indirectly to the consumer conveys his
decision with respect to such request, if the third party advises the consumer of
the name and address of the person to whom the request was made and such person
makes the disclosures to the consumer required under section 615."--(1) General. The
exemption covers retailers' attempts to obtain credit for their individual customers
from an outside source (such as a bank or a finance company).   The communication by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                          Page 16
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

the financial institution of its decision whether to extend credit is not a
"consumer report" if the retailer informs the customer of the name and address of
the financial institution to which the application or contract is offered and the
financial institution makes the disclosures required by section 615 of the Act. Such
disclosures must be made only when there is a denial of, or increase in the charge
for, credit or insurance. (See discussion of section 615, item 10, infra.)

 (2) Information included in the exemption.

 The exemption is not limited to a simple "yes" or "no" response, but includes the
information constituting the basis for the credit denial, because it applies to "any
report."

 (3) How third party creditors can insure that the exemption applies.

 Creditors, who are requested by dealers or merchants to make such specific
extensions of credit, can assure that communication of their decision to the dealer
or merchant will be exempt under this section from the term **\*18812** "consumer
report," by having written agreements that require such parties to inform the
consumer of the creditor's name and address and by complying with any applicable
provisions of section 615.

 Section 603(e) defines "investigative consumer report" as "a consumer report or
portion thereof in which information on a consumer's character, general reputation,
personal characteristics, or mode of living is obtained through personal interviews
with neighbors, friends, or associates of the consumer reported on or with others
with whom he is acquainted or who may have knowledge concerning any such items of
information.   However, such information shall not include specific factual
information on a consumer's credit record obtained directly from a creditor of the
consumer or from a consumer reporting agency when such information was obtained
directly from a creditor of the consumer or from the consumer."

1. Relation to Other Sections

 The term "investigative consumer report" denotes a subset of "consumer report" for
which the Act imposes additional requirements on recipients and consumer reporting
agencies.    Persons procuring "investigative consumer reports" must make certain
disclosures to the consumers who are the subjects of the reports, as required by
section 606.   Consumer reporting agencies must comply with section 614, when
furnishing "investigative consumer reports" containing adverse information that is
not a matter of public record.   Consumer reporting agencies making disclosure to
consumers pursuant to section 609 are not required to disclose "sources of
information acquired solely for use in preparing an investigative consumer report
and actually used for no other purpose."

2. General

 An "investigative consumer report" is a type of "consumer report" that contains
information that is both related to a consumer's character, general reputation,
personal characteristics or mode of living and obtained by personal interviews with
the consumer's neighbors, friends, associates or others.

3. Types of Sources Interviewed

 A report consisting of information from any third party concerning the subject's
character (reputation, etc.) may be an investigative consumer report because the
phrase "obtained through personal interviews * * * with others" includes any source
that is a third party interviewee.   A report containing interview information
obtained solely from the subject is not an "investigative consumer report."

4. Telephone Interviews

 A consumer report that contains information on a consumer's "character, general
reputation, personal characteristics or mode of living" obtained through telephone

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                    Page 17
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

interviews with third parties is an "investigative consumer report," because
"personal interviews" includes interviews conducted by telephone as well as in
person.

5. Identity of Interviewer

 A consumer report is an "investigative consumer report" if personal interviews are
used to obtain information reported on a consumer's "character, general reputation,
personal characteristics or mode of living," regardless of who conducted the
interview.

6. Noninvestigative Information in "Investigative Consumer Reports"

 An "investigative consumer report" may also contain noninvestigative information,
because the definition includes reports, a "portion" of which are investigative
reports.

7. Exclusions From "Investigative Consumer Reports"

 A report that consists solely of information gathered from observation by one who
drives by the consumer's residence is not an "investigative consumer report,"
because it contains no information from "personal interviews."

 Section 603(f) defines "consumer reporting agency" as "any person which, for
monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole
or in part in the practice of assembling or evaluating consumer credit information
or other information on consumers for the purpose of furnishing consumer reports to
third parties, and which uses any means or facility of interstate commerce for the
purpose of preparing or furnishing consumer reports."

1. Relation to Other Sections

 A. Duties imposed on "consumer reporting agencies." The Act imposes a number of
duties on "consumer reporting agencies." They must have permissible purposes to
furnish consumer reports (section 604), avoid furnishing obsolete adverse
information in certain consumer reports (sections 605, 607(a)), adopt reasonable
procedures to assure privacy (section 604, 607(a)), and accuracy (section 607(b)) of
consumer reports, provide only limited disclosures to governmental agencies (section
608), provide consumers certain disclosures upon request (sections 609 and 610) at
no cost or for a reasonable charge (section 612), follow certain procedures if a
consumer disputes the completeness or accuracy of any item of information contained
in his file (section 611), and follow certain procedures in reporting public record
information for employment purposes or when reporting adverse information other than
public record information in investigative consumer reports (sections 613, 614).

 B. Relation to "consumer reports." The term "consumer reporting agency," as defined
in section 603(f), includes certain persons who assemble or evaluate information on
individuals for the purpose of furnishing "consumer reports" to third parties.
Conversely, section 603(d) defines the term "consumer report" to mean the
communication of certain information by a "consumer reporting agency." In other
words, the terms "consumer report" in section 603(d) and "consumer reporting agency"
as defined in section 603(f) are defined in a mutually dependent manner and must
therefore be construed together.   For example, a party is not a "consumer reporting
agency" if it provides only information that is excepted from the definition of
"consumer report" under section 603(d), such as reports limited to the party's own
transactions or experiences with a consumer, or credit information on organizations.

2. Isolated Reports

 Parties that do not "regularly" engage in assembling or evaluating information for
the purpose of furnishing consumer reports to third parties are not consumer
reporting agencies.   For example, a creditor that furnished information on a
consumer to a governmental entity in connection with one of its investigations,
would not "regularly" be making such disclosure for a fee or on a cooperative

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

nonprofit basis, and therefore would not become a consumer reporting agency, even if
the information exceeded the creditor's transactions or experiences with the
consumer.

3. Provision of Credit Report to Report Subject

 A consumer report user does not become a consumer reporting agency by regularly
giving a copy of the report, or otherwise disclosing it, to the consumer who is the
subject of the report, because it is not disclosing the information to a "third
party."

**\*18813** 4. Employment Agency

 An employment agency that routinely obtains information on job applicants from
their former employers and furnishes the information to prospective employers is a
consumer reporting agency.

5. Information Compiled for Insurance Underwriting

 A business that compiles claim payment histories on individuals from insurers and
furnishes them to insurance companies for use in underwriting decisions concerning
those individuals is a consumer reporting agency.

6. Private Investigators and Detective Agencies

 Private investigators and detective agencies that regularly obtain consumer reports
and furnish them to clients may thereby become consumer reporting agencies.

7. Collection Agencies and Creditors

 Collection agencies and creditors become consumer reporting agencies if they
regularly furnish information beyond their transactions or experiences with
consumers to third parties for use in connection with consumers' transactions.

8. Joint Users of Consumer Reports

 Entities that share consumer reports with others that are jointly involved in
decisions for which there are permissible purposes to obtain the reports may be
"joint users" rather than consumer reporting agencies.  For example, if a lender
forwards consumer reports to governmental agencies administering loan guarantee
programs (or to other prospective loan insurers or guarantors), or to other parties
whose approval is needed before it grants credit, or to another creditor for use in
considering a consumer's loan application at the consumer's request, the lender does
not become a consumer reporting agency by virtue of such action.  An agent or
employee that obtains consumer reports does not become a consumer reporting agency
by sharing such reports with its principal or employer in connection with the
purposes for which the reports were initially obtained.

9. Loan Exchanges

 Loan exchanges, which are generally owned and operated on a cooperative basis by
consumer finance companies, constitute a mechanism whereby each member furnishes the
exchange information concerning the full identity and loan amount of each of its
borrowers, and receives information from the exchange concerning the number and
types of outstanding loans for each of its applicants.  A loan exchange or any
other exchange that regularly collects information bearing on decisions to grant
consumers credit or insurance for personal, family or household purposes, or
employment, is a "consumer reporting agency."

10. State Departments of Motor Vehicles

 State motor vehicle departments are "consumer reporting agencies" if they regularly
furnish motor vehicle reports containing information bearing on the consumer's
"personal characteristics," such as arrest information, to insurance companies for

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

insurance underwriting purposes. (See discussion of motor vehicle reports under
<u>section 603(d)</u>, item 4c supra.)

11. Federal Agencies

 The Office of Personnel Management collects and files data concerning current and
potential employees of the Federal Government and transmits that information to
other government agencies for employment purposes. Because Congress did not intend
that the FCRA apply to the Office of Personnel Management and similar federal
agencies (see 116 Cong. Rec. 36576 (1970) (remarks of Rep. Brown)), no such agency
is a "consumer reporting agency."

12. Credit Application Information

 A creditor that provides information from a consumer's application to a credit
bureau, for verification as part of the creditor's evaluation process that includes
obtaining a report on the consumer from that credit bureau, does not thereby become
a "consumer reporting agency," because the creditor does not provide the information
for "fees, dues, or on a cooperative nonprofit basis," but rather pays the bureau to
verify the information when it provides a consumer report on the applicant.

 <u>Section 603(g)</u> defines "file," when used in connection with information on any
consumer, to mean "all of the information on that consumer recorded and retained by
a consumer reporting agency regardless of how the information is stored."

1. Relation to Other Sections

 Consumer reporting agencies are required to make disclosures of all information in
their "files" to consumers upon request (section 609) and to follow reinvestigation
procedures if the consumer disputes the completeness or accuracy of any item of
information contained in his "file" (section 611).

2. General

 The term "file" denotes all information on the consumer that is recorded and
retained by a consumer reporting agency that might be furnished, or has been
furnished, in a consumer report on that consumer.

3. Audit Trail

 The term "file" does not include an "audit trail" (a list of changes made by a
consumer reporting agency to a consumer's credit history record, maintained to
detect fraudulent changes to that record), because such information is not furnished
in consumer reports or used as a basis for preparing them.

4. Other Information

 The term "file" does not include information in billing records or in the consumer
relations folder that a consumer reporting agency opens on a consumer who obtains
disclosures or files a dispute, if the information has not been used in a consumer
report and would not be used in preparing one.

 <u>Section 603(h)</u> defines "employment purposes" to mean "a report used for the purpose
of evaluating a consumer for employment, promotion, reassignment or retention as an
employee."

1. Relation to Other Sections

 The term "employment purposes" is used as part of the definition of "consumer
reports" (<u>section 603(d)(2)</u>) and as a permissible purpose for the furnishing of
consumer reports (<u>section 604(3)(B)</u>). Where an investigative consumer report is to
be used for "employment purposes" for which a consumer has not specifically applied,
section 606(a)(2) provides that the notice otherwise required by section 606(a)(1)
need not be sent. When a consumer reporting agency furnishes public record

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

information in reports "for employment purposes," it must follow the procedure set out in section 613.

2. Security Clearances

 A report in connection with security clearances of a government contractor's employees would be for "employment purposes" under this section.

 Section 603(i) defines "medical information" to mean "information or records obtained, with the consent of the individual to whom it relates, from licensed physicians or medical practitioners, hospitals, clinics, or other medical or medically related facilities."

1. Relation to Other Sections

 Under section 609(a)(1), a consumer reporting agency must, upon the **\*18814** consumer's request and proper identification, disclose the nature and substance of all information in its files on the consumer, except "medical information."

2. Information From Non-medical Sources

 Information from non-medical sources such as employers, is not "medical information."

*Section 604--Permissible Purposes of Reports*

 "A consumer reporting agency may furnish a consumer report under the following circumstances and no other: * * *"

1. Relation to Section 603

 Sections 603(d)(3) and 604 must be construed together to determine what are "permissible purposes," because section 603(d)(3) refers to "purposes authorized under section 604" (often described as "permissible purposes" of consumer reports), and some purposes are enumerated in section 603 (e.g., sections 603(d)(1) and 603(d)(2)). Subsections of sections 603 and 604 that specifically set forth "permissible purposes" relating to credit, insurance and employment, are the only subsections that cover "permissible purposes" relating to those three areas. Section 604(3)(E), a general subsection, is limited to purposes not otherwise addressed in section 604(3) (A)-(D).

 A. Credit. Sections 603(d)(1)--which defines "consumer report" to include certain reports for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance primarily for personal, family, or household purposes--and 604(3)(A) must be read together as fully describing permissible purposes involving credit for obtaining consumer reports. Accordingly, section 604(3)(A) permits the furnishing of a consumer report for use in connection with a credit transaction involving the consumer, primarily for personal, family or household purposes, and involving the extension of credit to, or review or collection of an account of, the consumer.

 B. Insurance. Sections 603(d)(1) and 604(3)(C) must be read together as describing the only permissible insurance purposes for obtaining consumer reports. Accordingly, section 604(3)(C) permits the furnishing of a consumer report, provided it is for use in connection with the underwriting of insurance involving the consumer, primarily for personal, family, or household purposes.

 C. Employment. Employment is covered exclusively by sections 603(d)(2) and 604(3)(B), and by section 603(h) (which defines "employment purposes"). Therefore, "permissible purposes" relating to employment include reports used for evaluating a consumer "for employment, promotion, reassignment or retention as an employee."

 D. Other purposes. "Other purposes" are referred to in section 603(d)(3) and covered by section 604(3)(E), as well as sections 604(1), 604(2) and 604(3)(D)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(which contain specific purposes not involving credit, insurance, employment). Permissible purposes relating to <u>section 604(3)(E)</u> are limited to transactions that consumers enter into primarily for personal, family or household purposes (excluding credit, insurance or employment, which are specifically covered by other subsections discussed above). The FCRA does not cover reports furnished for transactions that consumers enter into primarily in connection with businesses they operate ( e.g., a consumer's rental of equipment for use in his retail store).

2. Relation to Other Sections

 A. <u>Section 607(a)</u>. <u>Section 607(a)</u> requires consumer reporting agencies to keep information confidential by furnishing consumer reports only for purposes listed under <u>section 604</u>, and to follow specified, reasonable procedures to achieve this end. Section 619 provides criminal sanctions against any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses.

 B. <u>Section 608</u>. <u>Section 608</u> allows "consumer reporting agencies" to furnish governmental agencies specified identifying information concerning consumers, notwithstanding the limitations of <u>section 604</u>.

 <u>Section 604 (1)</u>--A consumer reporting agency may furnish a consumer report  "in response to the order of a court having jurisdiction to issue such an order."

1. Subpoena

 A subpoena, including a grand jury subpoena, is not an "order of a court" unless signed by a judge.

2. Internal Revenue Service Summons

 An I.R.S. summons is an exception to the requirement that an order be signed by a judge before it constitutes an "order of a court" under this section, because a 1976 revision to Federal statutes (<u>26 U.S.C. 7609</u>) specifically requires a consumer reporting agency to furnish a consumer report in response to an I.R.S. summons upon receipt of the designated I.R.S. certificate that the consumer has not filed a timely motion to quash the summons.

 Section 6 04(2)--A consumer reporting agency may furnish a consumer report "in accordance with the written instructions of the consumer to whom it relates."

1. No Other Permissible Purpose Needed

 If the report subject furnishes written authorization for a report, that creates a permissible purpose for furnishing the report.

2. Refusal to Furnish Report

 The consumer reporting agency may refuse to furnish the report because the statute is permissive, not mandatory. (Requirements that consumer reporting agencies make disclosure to consumers (as contrasted with furnishing reports to users) are discussed under sections 609 and 610, infra.)

 <u>Section 604(3)(A)</u>--A consumer reporting agency may issue a consumer report to "a person which it has reason to believe * * * intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;"

1. Reports Sought in Connection with the "Review or Collection of an Account"

 A. Reports for collection. A collection agency has a permissible purpose under this section to receive a consumer report on a consumer for use in attempting to collect that consumer's debt, regardless of whether that debt is assigned or referred for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                    Page 22
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

collection.    Similarly, a detective agency or private investigator, attempting to
collect a debt owed by a consumer, would have a permissible purpose to obtain a
consumer report on that individual for use in collecting that debt.    An attorney
may obtain a consumer report under this section on a consumer for use in connection
with a decision whether to sue that individual to collect a credit account.

 B. Unsolicited reports. A consumer reporting agency may not send an unsolicited
consumer report to the recipient of a previous report on the same consumer, because
the recipient will not necessarily have a permissible purpose to receive the
unsolicited report. [FN2]  For example, the recipient may **\*18815** have rejected the
consumer's application or ceased to do business with the consumer. (See also
discussion in section 607, item 2G, infra.)

 FN2 Of course a consumer reporting agency must furnish notifications required by
section 611(d), upon the consumer's requests, to prior recipients of reports
containing disputed information that is deleted or that is the subject of a dispute
statement under section 611(b).

2. Judgment Creditors

 A judgment creditor has a permissible purpose to receive a consumer report on the
judgment debtor for use in connection with collection of the judgment debt, because
it is in the same position as any creditor attempting to collect a debt from a
consumer who is the subject of a consumer report.

3. Child Support Debts

 A district attorney's office or other child support agency may obtain a consumer
report in connection with enforcement of the report subject's child support
obligation, established by court (or quasi-judicial administrative) orders, since
the agency is acting as or on behalf of the judgment creditor, and is, in effect,
collecting a debt.    However, a consumer reporting agency may not furnish consumer
reports to child support agencies seeking to establish paternity or the duty to pay
child support.

4. Tax Obligations

 A tax collection agency has no general permissible purpose to obtain a consumer
report to collect delinquent tax accounts, because this subsection applies only to
collection of "credit" accounts.    However, if a tax collection agency acquired a
tax lien having the same effect as a judgment or obtained a judgment, it would be a
judgment creditor and would have a permissible purpose for obtaining a consumer
report on the consumer who owed the tax.    Similarly, if a consumer taxpayer entered
an agreement with a tax collection agency to pay taxes according to some timetable,
that agreement would create a debtor-creditor relationship, thereby giving the
agency a permissible purpose to obtain a consumer report on that consumer.

5. Information on an Applicant's Spouse

 A. Permissible purpose. A creditor may request any information concerning an
applicant's spouse if that spouse will be permitted to use the account or will be
contractually liable upon the account, or the applicant is relying on the spouse's
income as a basis for repayment of the credit requested.    A creditor may request
any information concerning an applicant's spouse if (1) the state law doctrine of
necessaries applies to the transaction, or (2) the applicant resides in a community
property state, or (3) the property upon which the applicant is relying as a basis
for repayment of the credit requested is located in such a state, or (4) the
applicant is acting as the agent of the nonapplicant spouse.

 B. Lack of permissible purpose. If the creditor receives information clearly
indicating that the applicant is not acting as the agent of the nonapplicant spouse,
and that the applicant is relying only on separate property to repay the credit
extended, and that the state law doctrine of necessaries does not apply to the
transaction and that the applicant does not reside in a community property state,

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                          Page 23
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

the creditor does not have a permissible purpose for obtaining a report on a
nonapplicant spouse.    A permissible purpose for making a consumer report on a
nonapplicant spouse can never exist under the FCRA, where Regulation B, issued under
the Equal Credit Opportunity Act (12 CFR 202), prohibits the creditor from
requesting information on such spouse.    There is no permissible purpose to obtain a
consumer report on a nonapplicant former spouse or on a nonapplicant spouse who has
legally separated or otherwise indicated an intent to legally disassociate with the
marriage. (This does not preclude reporting a prior joint credit account of former
spouses for which the spouse that is the subject of the report is still
contractually liable.    See discussion in <u>section 607</u>, item 3-D infra.)

6. Prescreening

  "Prescreening" means the process whereby a consumer reporting agency compiles or
edits a list of consumers who meet specific criteria and provides this list to the
client or a third party (such as a mailing service) on behalf of the client for use
in soliciting these consumers for the client's products or services.    The process
may also include demographic or other analysis of the consumers on the list ( e.g.,
use of census tract data reflecting real estate values) by the consumer reporting
agency or by a third party employed for that purpose (by either the agency or its
client) before the list is provided to the consumer reporting agency's client.    In
such situations, the client's creditworthiness criteria may be provided only to the
consumer reporting agency and not to the third party performing the demographic
analysis.    The consumer reporting agency that performs a "prescreening" service may
furnish a client with several different lists of consumers who meet different sets
of creditworthiness criteria supplied by the client, who intends to make different
credit offers ( e.g., various credit limits) to consumers who meet the different
criteria.

  A prescreened list constitutes a series of consumer reports, because the list
conveys the information that each consumer named meets certain criteria for
creditworthiness.    Prescreening is permissible under the FCRA if the client agrees
in advance that each consumer whose name is on the list after prescreening will
receive an offer of credit.    In these circumstances, a permissible purpose for the
prescreening service exists under this section, because of the client's present
intent to grant credit to all consumers on the final list, with the result that the
information is used "in connection with a credit transaction involving the consumer
on whom the information is to be furnished and involving the extension of credit to
* * * the consumer."

7. Seller of Property Extending Credit

  A seller of property has a permissible purpose under this subsection to obtain a
consumer report on a prospective purchaser to whom he is planning to extend credit.

8. Uncoded Credit Guides

  A consumer reporting agency may not furnish an uncoded credit guide, because the
recipient does not have a permissible purpose to obtain a consumer report on each
consumer listed. (As discussed under <u>section 603(d)</u>, item 4  supra, credit guides
are listings that credit bureaus furnish to credit grantors, rating how consumers
pay their bills.    Such guides are a series of "consumer reports" on the "consumers"
listed therein, unless coded so that the consumer's identity is not disclosed.)

9. Liability for Bad Checks

  A party attempting to recover the amount due on a bad check is attempting to
collect a debt and, therefore, has a permissible purpose to obtain a consumer report
on the consumer who wrote it, and on any other consumer who is liable for the amount
of that check under applicable state law.

  <u>Section 604(3)(B)</u>--A consumer reporting agency may issue a consumer report to "a
person which it has reason to believe * * * intends to use the information for
employment purposes;"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                          Page 24
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

1. Current Employees

 An employer may obtain a consumer report on a current employee in **\*18816** connection
with an investigation of the disappearance of money from employment premises,
because "retention as an employee" is included in the definition of "employment
purposes" (section 603(h)).

2. Consumer Reports on Applicants and Non-applicants

 An employer may obtain a consumer report for use in evaluating the subject's
application for employment but may not obtain a consumer report to evaluate the
application of a consumer who is not the subject of the report.

3. Grand Jurors

 The fact that grand jurors are usually paid a stipend for their service does not
provide a district attorney's office a permissible purpose for obtaining consumer
reports on them, because such service is a duty, not "employment."

 Section 604(3)(C)--A consumer reporting agency may issue a consumer report to "a
person which it has reason to believe * * * intends to use the information in
connection with the underwriting of insurance involving the consumer;"

1. Underwriting

 An insurer may obtain a consumer report to decide whether or not to issue a policy
to the consumer, the amount and terms of coverage, the duration of the policy, the
rates or fees charged, or whether or not to renew or cancel a policy, because these
are all "underwriting" decisions.

2. Claims

 An insurer may not obtain a consumer report for the purpose of evaluating a claim
(to ascertain its validity or otherwise determine what action should be taken),
because permissible purposes relating to insurance are limited by this section to
"underwriting" purposes.

 Section 604(3)(D)--A consumer reporting agency may issue a consumer report to "a
person which it has reason to believe * * * intends to use the information in
connection with a determination of the consumer's eligibility for a license or other
benefit granted by a governmental instrumentality required by law to consider an
applicant's financial responsibility or status * * *"

1. Appropriate recipient

 Any party charged by law (including a rule or regulation having the force of law)
with responsibility for assessing the consumer's eligibility for the benefit (not
only the agency directly responsible for administering the benefit) has a
permissible purpose to receive a consumer report.   For example, a district
attorney's office or social services bureau, required by law to consider a
consumer's financial status in determining whether that consumer qualifies for
welfare benefits, has a permissible purpose to obtain a report on the consumer for
that purpose.   Similarly, consumer reporting agencies may furnish consumer reports
to townships on consumers whose financial status the townships are required by law
to consider in determining the consumers' eligibility for assistance, or to
professional boards (e.g., bar examiners) required by law to consider such
information on applicants for admission to practice.

2. Inappropriate Recipient

 Parties not charged with the responsibility of determining a consumer's eligibility
for a license or other benefit, for example, a party competing for an FCC radio
station construction permit, would not have a permissible purpose to obtain a

                      ©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                          Page 25
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

consumer report on that consumer.

3. Initial or Continuing Benefit

 The permissible purpose includes the determination of a consumer's continuing
eligibility for a benefit, as well as the evaluation of a consumer's initial
application for a benefit.   If the governmental body has reason to believe a
particular consumer's eligibility is in doubt, or wishes to conduct random checks to
confirm eligibility, it has a permissible purpose to receive a consumer report.

 Section 604(3)(E)--A consumer reporting agency may issue a consumer report to "a
person which it has reason to believe * * * otherwise has a legitimate business need
for the information in connection with a business transaction involving the
consumer."

1. Relation to Other Subsections of Section 604(3)

 The issue of whether credit, employment, or insurance provides a permissible
purpose is determined exclusively by reference to subsection (A), (B), or (C),
respectively.

2. Commercial Transactions

 The term "business transaction" in this section means a business transaction with a
consumer primarily for personal, family, or household purposes. Business
transactions that involve purely commercial purposes are not covered by the FCRA.

3. "Legitimate Business Need"

 Under this subsection, a party has a permissible purpose to obtain a consumer
report on a consumer for use in connection with some action the consumer takes from
which he or she might expect to receive a benefit that is not more specifically
covered by subsections (A), (B), or (C).   For example, a consumer report may be
obtained on a consumer who applies to rent an apartment, offers to pay for goods
with a check, applies for a checking account or similar service, seeks to be
included in a computer dating service, or who has sought and received over-payments
of government benefits that he has refused to return.

4. Litigation

 The possibility that a party may be involved in litigation involving a consumer
does not provide a permissible purpose for that party to receive a consumer report
on such consumer under this subsection, because litigation is not a "business
transaction" involving the consumer.   Therefore, potential plaintiffs may not
always obtain reports on potential defendants to determine whether they are worth
suing.    The transaction that gives rise to the litigation may or may not provide a
permissible purpose.    A party seeking to sue on a credit account would have a
permissible purpose under section 604(3)(A). (That section also permits judgment
creditors and lien creditors to obtain consumer reports on judgment debtors or
individuals whose property is subject to the lien creditor's lien.)   If that
transaction is a business transaction involving the consumer, there is a permissible
purpose.   If the litigation arises from a tort, there is no permissible purpose.
Similarly, a consumer report may not be obtained solely for use in discrediting a
witness at trial or for locating a witness.    This section does not permit consumer
reporting agencies to furnish consumer reports for the purpose of locating a person
suspected of committing a crime. (As stated in the discussion of section 608 infra
(item 2), section 608 permits the furnishing of specified, limited identifying
information to governmental agencies, notwithstanding the provisions of section
604.)

5. Impermissible Purposes

 A consumer reporting agency may not furnish a consumer report to satisfy a
requester's curiosity, or for use by a news reporter in preparing a newspaper or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

magazine article.

**\*18817** 6. Agents

A. General. An agent [FN3] of a party with a "permissible purpose" may obtain a consumer report on behalf of his principal, where he is involved in the decision that gives rise to the permissible purpose. Such involvement may include the agent's making a decision (or taking action) for the principal, or assisting the principal in making the decision ( e.g., by evaluating information). In these circumstances, the agent is acting on behalf of the principal. In some cases, the agent and principal are referred to as "joint users." See discussion in <u>section 603(f)</u>, supra (item 8).

FN3 Of course agents and principals are bound by the Act.

B. Real estate agent. A real estate agent may obtain a consumer report on behalf of a seller, to evaluate the eligibility as a prospective purchaser of a subject who has expressed an interest in purchasing property from the seller.

C. Private detective agency. A private detective agency may obtain a consumer report as agent for its client while investigating a report subject that is a client's prospective employee, or in connection with advising a client concerning a business transaction with the report subject or in attempting to collect a debt owed its client by the subject of the report. In these circumstances, the detective agency is acting on behalf of its client.

D. Rental clearance agency. A rental clearance agency that obtains consumer reports to assist owners of residential properties in screening consumers as tenants, has a permissible purpose to obtain the reports, if it uses them in applying the landlord's criteria to approve or disapprove the subjects as tenant applicants. Similarly, an apartment manager investigating applicants for apartment rentals by a landlord may obtain consumer reports on these applicants.

E. Attorney. An attorney collecting a debt for a creditor client, including a party suing on a debt or collecting on behalf of a judgment creditor or lien creditor, has a permissible purpose to obtain a consumer report on the debtor to the same extent as the client.

*Section 604--General*

1. Furnishing of Consumer Reports to Other Consumer Reporting Agencies

A consumer reporting agency may furnish a consumer report to another consumer reporting agency for it to furnish pursuant to a subscriber's request. In these circumstances, one consumer reporting agency is acting on behalf of another.

2. Consumer's Permission not Needed

When permissible purposes exist, parties may obtain, and consumer reporting agencies may furnish, consumer reports without the consumers' permission or over their objection. Similarly, parties may furnish information concerning their transactions with consumers to consumer reporting agencies and others, and consumer reporting agencies may gather information, without consumers' permission.

3. User's Disclosure of Report to Subject Consumer

The FCRA does not prohibit a consumer report user from giving a copy of the report, or otherwise disclosing it, to the consumer who is the subject of the report.

*Section 605--Obsolete Information*

"(a) Except as authorized under subsection (b), no consumer reporting agency may make any consumer report containing any of the following items of information * * *:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                              Page 27
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

(b) The provisions of subsection (a) are not applicable in the case of any consumer credit report to be used in connection with--

(1) a credit transaction involving, or which may reasonably be expected to involve, a principal amount of $50,000 or more;

(2) the underwriting of life insurance involving, or which may reasonably be expected to involve, a face amount of $50,000 or more;  or

(3) the employment of any individual at an annual salary which equals, or which may reasonably be expected to equal $20,000, or more."

1. General

Section 605(a) provides that most adverse information more than seven years old may not be reported, except in certain circumstances set out in section 605(b).  With respect to delinquent accounts, accounts placed for collection, and accounts charged to profit and loss, there are many dates that could be deemed to commence seven year reporting periods.  The discussion in subsections (a)(2), (a)(4), and (a)(6) is intended to set forth a clear, workable rule that effectuates Congressional intent.

2. Favorable Information

The Act imposes no time restriction on reporting of information that is not adverse.

3. Retention of Information in Files

Consumer reporting agencies may retain obsolete adverse information and furnish it in reports for purposes that are exempt under subsection (b) ( e.g., credit for a principal amount of $50,000 or more).

4. Use of Shorter Periods

The section does not require consumer reporting agencies to report adverse information for the time periods set forth, but only prohibits them from reporting adverse items beyond those time periods.

5. Inapplicability to Users

The section does not limit creditors or others from using adverse information that would be "obsolete" under its terms, because it applies only to reporting by consumer reporting agencies.  Similarly, this section does not bar a creditor's reporting such adverse obsolete information concerning its transactions or experiences with a consumer, because the report would not constitute a consumer report.

6. Indicating the Existence of Nonspecified, Obsolete Information

A consumer reporting agency may not furnish a consumer report indicating the existence of obsolete adverse information, even if no specific item is reported. For example, a consumer reporting agency may not communicate the existence of a debt older than seven years by reporting that a credit grantor cannot locate a debtor whose debt was charged off ten years ago.

7. Operative Dates

The times or dates set forth in this section, which relate to the occurrence of events involving adverse information, determine whether the item is obsolete.  The date that the consumer reporting agency acquired the adverse information is irrelevant to how long that information may be reported.

Section 605(a)(1)--"Cases under title 11 of the United States Code or under the Bankruptcy Act that, from the date of entry of the order for relief or the date of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

adjudication, as the case may be, antedate the report by more than 10 years."

1. Relation to Other Subsections

 The reporting of suits and judgments is governed by subsection (a)(2), the
reporting of accounts placed for collection or charged to profit and loss is
governed by subsection (a)(4), and the reporting of other delinquent accounts is
governed by subsection (a)(6).  Any such item, even if discharged in bankruptcy,
*18818 may be reported separately for the applicable seven year period, while the
existence of the bankruptcy filing may be reported for ten years.

2. Wage Earner Plans

 Wage earner plans may be reported for ten years, because they are covered by  Title
11 of the United States Code.

3. Date for Filing

 A voluntary bankruptcy petition may be reported for ten years from the date that it
is filed, because the filing of the petition constitutes the entry of an "order for
relief" under this subsection, just like a filing under the Bankruptcy Act (11
U.S.C. 301).

 Section 605(a)(2)--"Suits and judgments which, from date of entry, antedate the
report by more than seven years or until the governing statute of limitations has
expired, whichever is the longer period."

1. Operative Date

 For a suit, the term "date of entry" means the date the suit was initiated.  A
protracted suit may be reported for more than seven years from the date it was
entered, if the governing statute of limitations has not expired.  For a judgment,
the term "date of entry" means the date the judgment was rendered.

2. Paid Judgments

 Paid judgments cannot be reported for more than seven years after the judgment was
entered, because payment of the judgment eliminates any "governing statute of
limitations" under this subsection that might otherwise lengthen the period.

 Section 605(a)(3)--"Paid tax liens which, from date of payment, antedate the report
by more than seven years."

1. Unpaid Liens

 If a tax lien (or other lien) remains unsatisfied, it may be reported as long as it
remains filed against the consumer, without limitation, because this subsection
addresses only paid tax liens.

 Section 605(a)(4)--"Accounts placed for collection or charged to profit and loss
which antedate the report by more than seven years."

1. Placement for Collection

 The term "placed for collection" means internal collection activity by the
creditor, as well as placement with an outside collector, whichever occurs first.
Sending of the initial past due notices does not constitute placement for
collection.  Placement for collection occurs when dunning notices or other
collection efforts are initiated.  The reporting period is not extended by
assignment to another entity for further collection, or by a partial or full payment
of the account.  However, where a borrower brings his delinquent account to date
and returns to his regular payment schedule, and later defaults again, a consumer
reporting agency may disregard any collection activity with respect to the first
delinquency and measure the reporting period from the date the account was placed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

for collection as a result of the borrower's ultimate default.   A consumer's
repayment agreement with a collection agency can be treated as a new account that
has its own seven year period.

2. Charge to Profit and Loss

 The term "charged to profit and loss" means action taken by the creditor to write
off the account, and the applicable time period is measured from that event.   If an
account that was charged off is later paid in part or paid in full by the consumer,
the reporting period of seven years from the charge-off is not extended by this
subsequent payment.

3. Reporting of a Delinquent Account That is Later Placed for Collection or Charged
to Profit and Loss

 The fact that an account has been placed for collection or charged to profit and
loss may be reported for seven years from the date that either of those events
occurs, regardless of the date the account became delinquent.   The fact of
delinquency may also be reported for seven years from the date the account became
delinquent.

 Section 605(a)(5)--"Records of arrest, indictment, or conviction of crime which,
from date of disposition, release, or parole, antedate the report by more than seven
years."

1. Records

 The term "records" means any information a consumer reporting agency has in its
files relating to arrest, indictment or conviction of a crime.

2. Computation of Time Period

 The seven year reporting period runs from the date of disposition, release or
parole, as applicable.   For example, if charges are dismissed at or before trial,
or the consumer is acquitted, the date of such dismissal or acquittal is the date of
disposition.   If the consumer is convicted of a crime and sentenced to confinement,
the date of release or placement on parole controls. (Confinement, whether
continuing or resulting from revocation of parole, may be reported until seven years
after the confinement is terminated.)   The sentencing date controls for a convicted
consumer whose sentence does not include confinement.   The fact that information
concerning the arrest, indictment, or conviction of crime is obtained by the
reporting agency at a later date from a more recent source (such as a newspaper or
interview) does not serve to extend this reporting period.

 Section 605(a)(6)--"Any other adverse item of information which antedates the
report by more than seven years."

1. Relation to Other Subsections

 This section applies to all adverse information that is not covered by  section
605(a) (1)-(5).   For example, a delinquent account that has neither been placed for
collection, nor charged to profit and loss, may be reported for seven years from the
date of the last regularly scheduled payment. (Accounts placed for collection or
charged to profit and loss may be reported for the time periods stated in section
605(a)(4).)

2. Non Tax Liens

 Liens (other than paid tax liens) may be reported as long as they remain filed
against the consumer or the consumer's property, and remain effective (under any
applicable statute of limitations). (See discussion under section 605(a)(3),
supra.)

*Section 606--Disclosure of Investigative Consumer Reports*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

"(a) A person may not procure or cause to be prepared an investigative consumer report on any consumer unless--

(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section; or

(2) the report is to be used for employment purposes for which the consumer has not specifically applied.

(b) Any person who procures or causes to be prepared an investigative consumer report on any consumer shall, upon written request made by the consumer within a reasonable period of time after receipt by him of the disclosure required by subsection (a)(1), *18819 make a complete and accurate disclosure of the nature and scope of the investigation requested. This disclosure shall be made in a writing mailed, or otherwise delivered, to the consumer not later than five days after the date on which the request for such disclosure was received from the consumer or such report was first requested, whichever is the later.

(c) No person may be held liable for any violation of subsection (a) or (b) of this section if he shows by a preponderance of the evidence that at the time of the violation he maintained reasonable procedures to assure compliance with subsection (a) or (b)."

1. Relation to Other Sections

The term "investigative consumer report" is defined at <u>section 603(e)</u> to mean a consumer report, all or a portion of which contains information obtained through personal interviews (in person or by telephone) with persons other than the subject, which information relates to the subject's character, general reputation, personal characteristics or mode of living.

2. Inapplicability to Consumer Reporting Agencies

The section applies only to report users, not consumer reporting agencies. The FCRA does not require consumer reporting agencies to inform consumers that information will be gathered or that reports will be furnished concerning them.

3. Inapplicability to Noninvestigative Consumer Reports

The section does not apply to noninvestigative reports.

4. Exemptions

An employer who orders investigative consumer reports on a current employee who has not applied for a job change need not notify the employee, because the term "employment purposes" is defined to include "promotion, reassignment or retention" and subsection (b) provides that the disclosure requirements do not apply to "employment purposes for which the consumer has not specifically applied."

5. Form and Delivery of Notice

The notice must be in writing and delivered to the consumer. The user may include the disclosure in an application for employment, insurance, or credit, if it is clear and conspicuous and not obscured by other language. A user may send the required notice via first class mail. The notice must be mailed or otherwise delivered to the consumer not later than three days after the report was first requested.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

6. Content of Notice of Right to Disclosure

 The notice must clearly and accurately disclose that an "investigative consumer report" including information as to the consumer's character, general reputation, personal characteristics and mode of living (whichever are applicable), may be made. The disclosure must also state that an investigative consumer report involves personal interviews with sources such as neighbors, friends, or associates. The notice may include any additional, accurate information about the report, such as the types of interviews that will be conducted. The notice must include a statement informing the consumer of the right to request complete and accurate disclosure of the nature and scope of the investigation.

7. Content of Disclosure of Report

 When the consumer requests disclosure of the "nature and scope" of the investigation, such disclosure must include a complete and accurate description of the types of questions asked, the number and types of persons interviewed, and the name and address of the investigating agency. The user need not disclose the names of sources of information, nor must it provide the consumer with a copy of the report. A report user that provides the consumer with a blank copy of the standardized form used to transmit the report from the agency to the user complies with the requirement that it disclose the "nature" of the investigation.

*Section 607--Compliance Procedures*

 "(a) Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of <u>section 605</u> and to limit the furnishing of consumer reports to the purposes listed under section 60 4. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in <u>Section 604</u>.

 (b) Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

1. Procedures to Avoid Reporting Obsolete Information

 A. General. A consumer reporting agency should establish procedures with its sources of adverse information that will avoid the risk of reporting obsolete information. For example, the agency should either require a creditor to supply the date an account was placed for collection or charged off, or the agency should use a conservative date for such placement or charge off (such as the date of the last regularly scheduled payment), to be sure of complying with the statute.

 B. Retention of obsolete information for reporting in excepted circumstances. If a consumer reporting agency retains adverse information in its files that is "obsolete" under <u>section 605(a)</u> ( e.g., information about a satisfied judgment that is more than seven years old), so that it may be reported for use in transactions described by <u>section 605(b)</u> (i.e., applications for credit or life insurance for $50,000 or more, or employment at an annual salary of $20,000 or more), it must have procedural safeguards to avoid reporting the information except in those situations. The procedure should require that such obsolete information be released only after an internal decision that its release will not violate <u>section 605</u>.

2. Procedures to Avoid Reporting for Impermissible Purposes

 A. Verification. A consumer reporting agency should have a system to verify that it

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

Page 32

is dealing with a legitimate business having a "permissible purpose" for the information reported. What constitutes adequate verification will vary with the circumstances. If the consumer reporting agency is not familiar with the user, appropriate procedures might require an on-site visit to the user's place of business, or a check of the user's references.

B. Required certification by user. A consumer reporting agency should adopt procedures that require prospective report users to identify themselves, certify the purpose for which the information is sought, and certify that the information will be used for no other purpose. A consumer reporting agency should determine initially that users have permissible purposes and ascertain *18820 what those purposes are. It should obtain a specific, written certification that the recipient will obtain reports for those purposes and no others. The user's certification that the report will be used for no other purposes should expressly prohibit the user from sharing the report or providing it to anyone else, other than the subject of the report or to a joint user having the same purpose. A consumer reporting agency should refuse to provide reports to those refusing to provide such certification.

C. Blanket or individual certification. Once the consumer reporting agency obtains a certification from a user ( e.g., a creditor) that typically has a permissible purpose for receiving a consumer report, stating that it will use those reports only for specified permissible purposes ( e.g., for credit or employment purposes), a certification of purpose need not be furnished for each individual report obtained, provided there is no reason to believe the user may be violating its certification. However, in furnishing reports to users that typically could have both permissible and impermissible purposes for ordering consumer reports (e.g., attorneys and detective agencies), the consumer reporting agency must require the user to provide a separate certification each time it requests a consumer report.

D. Procedures to avoid recipients' abuse of certification. When doubt arises concerning any user's compliance with its contractual certification, a consumer reporting agency must take steps to insure compliance, such as requiring a separate, advance certification for each report it furnishes that user, or auditing that user to verify that it is obtaining reports only for permissible purposes. A consumer reporting agency must cease furnishing consumer reports to users who repeatedly request consumer reports for impermissible purposes.

E. Unauthorized access. A consumer reporting agency should take several other steps when doubt arises concerning whether a user is obtaining reports for a permissible purpose from a computerized system. If it appears that a third party, not a subscriber, has obtained unauthorized access to the system, the consumer reporting agency should take appropriate steps such as altering authorized users' means of access, such as codes and passwords, and making random checks to ensure that future reports are obtained only for permissible purposes. If a subscriber has inadvertently sought reports for impermissible purposes or its employee has obtained reports without a permissible purpose, it would be appropriate for the consumer reporting agency to alter the subscriber's means of access, and require an individual written certification of the permissible purpose for each report requested or randomly verify such purposes. A consumer reporting agency should refuse to furnish any further reports to a user that repeatedly violates certifications.

F. Use of computerized systems. A consumer reporting agency may furnish consumer reports to users via terminals, provided the consumer reporting agency has taken the necessary steps to ensure that the users have a permissible purpose to receive the reports. (The agency would have to record the identity of consumer report recipients for each consumer, to be able to make any disclosures required under section 609(a)(3) or section 611(d)).

G. Activity reports. If a consumer reporting agency provides "activity reports" on all customers who have open-end accounts with a credit grantor, it must make certain that the credit grantor always notifies the agency when accounts are closed and paid in full, to avoid furnishing reports on former customers or other customers for whom

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

the credit grantor lacks a permissible purpose. (See also discussion in <u>section 604(3)(A)</u>, item 1, supra.)

3. Reasonable Procedures to Assure Maximum Possible Accuracy

A. General. The section does not require error free consumer reports. If a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face, the agency does not violate this section simply by reporting an item of information that turns out to be inaccurate. However, when a consumer reporting agency learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise) it must review its procedures for assuring accuracy. Examples of errors that would require such review are the issuance of a consumer report pertaining entirely to a consumer other than the one on whom a report was requested, and the issuance of a consumer report containing information on two or more consumers (e.g., information that was mixed in the file) in response to a request for a report on only one of those consumers.

B. Required steps to improve accuracy. If the agency's review of its procedures reveals, or the agency should reasonably be aware of, steps it can take to improve the accuracy of its reports at a reasonable cost, it must take any such steps. It should correct inaccuracies that come to its attention. A consumer reporting agency must also adopt reasonable procedures to eliminate systematic errors that it knows about, or should reasonably be aware of, resulting from procedures followed by its sources of information. For example, if a particular credit grantor has often furnished a significant amount of erroneous consumer account information, the agency must require the creditor to revise its procedures to correct whatever problems cause the errors or stop reporting information from that creditor.

C. Use of automatic data processing equipment. Consumer reporting agencies that use automatic data processing equipment (particularly for long distance transmission of information) should have reasonable procedures to assure that the data is accurately converted into a machine-readable format and not distorted by machine malfunction or transmission failure. Reasonable security procedures must be adopted to minimize the possibility that computerized consumer information will be stolen or altered by either authorized or unauthorized users of the information system.

D. Reliability of sources. Whether a consumer reporting agency may rely on the accuracy of information from a source depends on the circumstances. This section does not hold a consumer reporting agency responsible where an item of information that it receives from a source that it reasonably believes to be reputable appears credible on its face, and is transcribed, stored and communicated as provided by that source. Requirements are more stringent where the information furnished appears implausible or inconsistent, or where procedures for furnishing it seem likely to result in inaccuracies, or where the consumer reporting agency has had numerous problems regarding information from a particular source.

E. Undesignated information in credit transactions. "Undesignated information" means all credit history information in a married (or formerly married) consumer's file, which was not reported to the consumer reporting agency with a designation indicating that the information relates to either the consumer's joint or individual credit experience. The question arises what is meant by reasonable procedures under this section for treatment of credit history in the file of only one (present or **18821** former) spouse (usually the husband) that has not been designated by the procedure in Regulation B, <u>12 CFR 202.10</u>, which implements the Equal Credit Opportunity Act. (This situation exists only for certain credit history file information compiled before June 1, 1977, and certain accounts opened before that date.) A consumer reporting agency may report information solely in the file of spouse A, when spouse B applies for a separate extension of credit, only if such information relates to accounts for which spouse B was either a user or was contractually liable, or the report recipient has a permissible purpose for a report on spouse A. A consumer reporting agency may not supply all undesignated information

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

from the file of a consumer's spouse in response to a request for a report on the consumer, because some or all of that information may not relate to both spouses. Consumer reporting agencies must honor without charge the request of a married or formerly married individual that undesignated information (that appears only in the files of the individual's present or former spouse) be segregated--i.e., placed in a separate file that is accessible under that individual's name. This procedure insures greater accuracy and protection of the privacy of spouses than does the automatic reporting of undesignated information.

F. Reporting of credit obligation--(1) Past due accounts. A consumer reporting agency must employ reasonable procedures to keep its file current on past due accounts ( e.g., by requiring its creditors to notify the credit bureau when a previously past due account has been paid or discharged in bankruptcy), but its failure to show such activity in particular instances, despite the maintenance of reasonable procedures to keep files current, does not violate this section. For example, a consumer reporting agency that reports accurately in 1985 that as of 1983 the consumer owed a retail store money, without mentioning that the consumer eventually paid the debt, does not violate this section if it was not informed by the store or the consumer of the later payment.

(2) Significant, verified information. A consumer reporting agency must report significant, verified information it possesses about an item. For instance, a consumer reporting agency may continue to report a paid account that was previously delinquent, but should also report that the account has been paid. Similarly, a consumer reporting agency may include delinquencies on debts discharged in bankruptcy in consumer reports, but must accurately note the status of the debt (e.g., discharged, voluntarily repaid). Finally, if a reported bankruptcy has been dismissed, that fact should be reported.

(3) Guarantor obligations. Personal guarantees for obligations incurred by others (including a corporation) may be included in a consumer report on the individual who is the guarantor. The report should accurately reflect the individual's involvement (e.g., as guarantor of the corporate debt).

4. Effect of Criminal Sanctions

Notwithstanding the fact that section 619 provides criminal sanctions against persons who knowingly and willfully obtain information on a consumer from a consumer reporting agency under false pretenses, a consumer reporting agency must follow reasonable procedures to limit the furnishing of reports to those with permissible purposes.

5. Disclosure of Credit Denial

When reporting that a consumer was denied a benefit (such as credit), a consumer reporting agency need not report the reasons for the denial.

6. Content of Report

A consumer report need not be tailored to the user's needs. It may contain any information that is complete, accurate, and not obsolete on the consumer who is the subject of the report. A consumer report may include an account that was discharged in bankruptcy (as well as the bankruptcy itself), as long as it reports a zero balance due to reflect the fact that the consumer is no longer liable for the discharged debt. A consumer report may include a list of recipients of reports on the consumer who is the subject of the report.

7. Completeness of Reports

Consumer reporting agencies are not required to include all existing derogatory or favorable information about a consumer in their reports. (See, however, discussion in section 611, item 14, infra, concerning conveying consumer dispute statements.) However, a consumer reporting agency may not mislead its subscribers as to the completeness of its reports by deleting nonderogatory information and not disclosing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

its policy of making such deletions.

8. User Notice of Adverse Action Based on a Consumer Report

 A consumer reporting agency need not require users of its consumer reports to
provide any notice to consumers against whom adverse action is taken based on a
consumer report.  The FCRA imposes such notice requirements directly on users,
under the circumstances set out in section 615.

*Section 608--Disclosures to Governmental Agencies*

 "Notwithstanding the provisions of <u>section 604</u>, a consumer reporting agency may
furnish identifying information respecting any consumer limited to his name,
address, former addresses, places of employment, or former places of employment, to
a governmental agency."

1. Permissible Purpose Necessary for Additional Information

 A consumer reporting agency may furnish limited identifying information concerning
a consumer to a governmental agency (e.g., an agency seeking a fugitive from
justice) even if that agency does not have a "permissible purpose" under <u>section 604</u>
to receive a consumer report.  However, a governmental agency must have a
permissible purpose in order to obtain information beyond what is authorized by this
section.

2. Entities Covered by Section

 The term "governmental agency" includes federal, state, county and municipal
agencies, and grand juries.  Only governmental agencies may obtain disclosures of
identifying information under this section.

*Section 609--Disclosures to Consumers*

 "(a) Every consumer reporting agency shall, upon request and proper identification
of any consumer, clearly and accurately disclose to the consumer:

 (1) The nature and substance of all information (except medical information) in its
files on the consumer at the time of the request.

 (2) The sources of the information;  except that the sources of information
acquired solely for use in preparing an investigative consumer report and actually
used for no other purpose need not be disclosed:  Provided, That in the event an
action is brought under this title, such sources shall be available to the plaintiff
under appropriate discovery procedures in the court in which the action is brought.

 (3) The recipients of any consumer report on the consumer which it has furnished

 (A) for employment purposes within the two-year period preceding the request, and

 (B) for any other purpose within the six-month period preceding the request.

 **\*18822** (b) The requirements of subsection (a) respecting the disclosure of sources
of information and the recipients of consumer reports do not apply to information
received or consumer reports furnished prior to the effective date of this title
except to the extent that the matter involved is contained in the files of the
consumer reporting agency on that date."

1. Relation to Other Sections

 This section states what consumer reporting agencies must disclose to consumers,
upon request and proper identification.  Section 610 sets forth the conditions
under which those disclosures must be made, and <u>section 612</u> sets forth the
circumstances under which consumer reporting agencies may charge for making such
disclosures.  The term "file" as used in <u>section 609(a)(1)</u> is defined in <u>section</u>

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

Page 36

603(q). The term "investigative consumer report," which is used in section 609(a)(2), is defined in section 603(e). The term "medical information," which is used in section 609(a)(1), is defined in section 603(i).

## 2. Proper Identification

A consumer reporting agency must take reasonable steps to verify the identity of an individual seeking disclosure under this section.

## 3. Manner of "Proper Identification"

If a consumer provides sufficient identifying information, the consumer reporting agency cannot insist that the consumer execute a "request for interview" form, or provide the items listed on it, as a prerequisite to disclosure. However, the agency may use a form to identify consumers requesting disclosure if it does not use the form to inhibit disclosure, or to obtain any waiver of the consumers' rights. A consumer reporting agency may provide disclosure by telephone without a written request, if the consumer is properly identified, but may insist on a written request before providing such disclosure.

## 4. Power of Attorney

A consumer reporting agency may disclose a consumer's file to a third party authorized by the consumer's written power of attorney to obtain the disclosure, if the third party presents adequate identification and fulfills other applicable conditions of disclosure. However, the agency may also disclose the information directly to the consumer.

## 5. Nature of Disclosure Required

A consumer reporting agency must disclose the nature and substance of all items in the consumer's file, no matter how or where they are stored ( e.g., in other offices of the consumer reporting agency). The consumer reporting agency must have personnel trained to explain to the consumer any information furnished in accordance with the Act. Particularly when the file includes coded information that would be meaningless to the consumer, the agency's personnel must assist the consumer to understand the disclosures. Any summary must not mischaracterize the nature of any item of information in the file. The consumer reporting agency is not required to provide a copy of the file, or any other written disclosure, or to read the file verbatim to the consumer or to permit the consumer to examine any information in its files. A consumer reporting agency may choose to usually comply with the FCRA in writing, by providing a copy of the file to the consumer or otherwise.

## 6. Medical Information

Medical information includes information obtained with the consumer's consent from physicians and medical facilities, but does not include comments on a consumer's health by non-medical personnel. A consumer reporting agency is not required to disclose medical information in its files to consumers, but may do so. Alternatively, a consumer reporting agency may inform consumers that there is medical information in the files concerning them and supply the name of the doctor or other source of the information. Consumer reporting agencies may also disclose such information to a physician of the consumer's choice, upon the consumer's written instructions pursuant to section 604(2).

## 7. Ancillary Information

A consumer reporting agency is not required to disclose information consisting of an audit trail of changes it makes in the consumer's file, billing records, or the contents of a consumer relations folder, if the information is not from consumer reports and will not be used in preparing future consumer reports. Such data is not included in the term "information in its files" which must be disclosed to the consumer pursuant to this section. Similarly, a point score that is provided to evaluate the report for its recipient (and/or the scoring system used to calculate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01                                                    Page 37
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

the score) need not be disclosed, because the score is not used in preparing future
reports.    A consumer reporting agency must disclose claims report information only
if it has appeared in consumer reports.

8. Information on Other Consumers

 The consumer has no right to information in the consumer reporting agency's files
on other individuals, because the disclosure must be limited to information "on the
consumer." However, all information in the files of the consumer making the request
must be disclosed, including information about another individual that relates to
the consumer ( e.g., concerning that individual's dealings with the subject of the
consumer report).

9. Disclosure of Sources of Information

 Consumer reporting agencies must disclose the sources of information, except for
sources of information acquired solely for use in preparing an investigative
consumer report and actually used for no other purpose.    When it has used
information from another consumer reporting agency, the other agency should be
reported as a source.

10. Disclosure of Recipients of Consumer Reports

 Consumer reporting agencies must maintain records of recipients of prior consumer
reports sufficient to enable them to meet the FCRA's requirements that they disclose
the identity of recipients of prior consumer reports.    A consumer reporting agency
that furnishes a consumer report directly to a report user at the request of another
consumer reporting agency must disclose the identity of the user that was the
ultimate recipient of the report, not the other agency that acted as an intermediary
in procuring the report.

11. Disclosure of Recipients of Prescreened Lists

 A consumer reporting agency must furnish to a consumer requesting file disclosure
the identity of recipients of any prescreened lists that contained the consumer's
name wh  en submitted to creditors (or other users) by the consumer reporting
agency.

*Section 610--Conditions of Disclosure*

 "(a) A consumer reporting agency shall make the disclosures required under  section
609 during normal business hours and on reasonable notice.

 (b) The disclosures required under section 609 shall be made to the consumer--

 (1) in person if he appears in person and furnishes proper identification;  or

 (2) by telephone if he has made a written request, with proper identification, for
telephone disclosure and the toll charge, if any, for the *18823 telephone call is
prepaid by or charged directly to the consumer.

 (c) Any consumer reporting agency shall provide trained personnel to explain to the
consumer any information furnished to him pursuant to section 609.

 (d) The consumer shall be permitted to be accompanied by one other person of his
choosing, who shall furnish reasonable identification.    A consumer reporting agency
may require the consumer to furnish a written statement granting permission to the
consumer reporting agency to discuss the consumer's file in such person's presence.

 (e) Except as provided in section 616 and 617, no consumer may bring any action or
proceeding in the nature of defamation, invasion of privacy, or negligence with
respect to the reporting of information against any consumer reporting agency, any
user of information or any person who furnishes information to a consumer reporting
agency, based on information disclosed pursuant to section 609, 610, or 615, except

          ©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

as to false information furnished with malice or willful intent to injure such consumers."

1. Time of Disclosure

 A consumer reporting agency must make disclosures during normal business hours, upon reasonable notice. However, the consumer reporting agency may waive reasonable notice, and the consumer may agree to disclosure outside of normal business hours. A consumer reporting agency may make in-person disclosure to consumers who have made appointments ahead of other consumers, because the disclosures are only required to be made "on reasonable notice."

2. Extra Conditions Prohibited

 A consumer reporting agency may not add conditions not set out in the FCRA as a prerequisite to the required disclosure.

3. Manner of Disclosure

 A consumer reporting agency may, with the consumer's actual or implied consent, meet its disclosure obligations by mail, in lieu of the in-person or telephone disclosures specified in the statute.

4. Disclosure in the Presence of Third Parties

 When the consumer requests disclosure in a third party's presence, the consumer reporting agency may require that a consumer sign an authorization before such disclosure is made. The consumer may choose the third party to accompany him or her for the disclosure.

5. Expense of Telephone Calls

 A consumer reporting agency is not required to pay the telephone charge for a telephone interview with a consumer obtaining disclosure.

6. Qualified Defamation Privilege

 The privilege extended by subsection 610(e) does not apply to an action brought by a consumer if the action is based on information not disclosed pursuant to sections 609, 610 or 615. A disclosure to a consumer's representative ( e.g., based on the consumer's power of attorney) constitutes "information disclosed pursuant to <u>section 609</u>" and is thus covered by this privilege.

*Section 611--Procedure in Case of Disputed Accuracy*

 "(a) If the completeness or accuracy of any item of information contained in his file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. If after such reinvestigation such information is found to be inaccurate or can no longer be verified, the consumer reporting agency shall promptly delete such information. The presence of contradictory information in the consumer's file does not in and of itself constitute reasonable grounds for believing the dispute is frivolous or irrelevant.

 (b) If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than one hundred words if it provides the consumer with assistance in writing a clear summary of the dispute.

 (c) Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

note that it is disputed by the consumer and provide either the consumer's statement
or a clear and accurate codification or summary thereof.

(d) Following any deletion of information which is found to be inaccurate or whose
accuracy can no longer be verified or any notation as to disputed information, the
consumer reporting agency shall, at the request of the consumer, furnish
notification that the item has been deleted or the statement, codification or
summary pursuant to subsection (b) or (c) to any person specifically designated by
the consumer who has within two years prior thereto received a consumer report for
employment purposes, or within six months prior thereto received a consumer report
for any other purpose, which contained the deleted or disputed information.   The
consumer reporting agency shall clearly and conspicuously disclose to the consumer
his rights to make such a request. Such disclosure shall be made at or prior to the
time the information is deleted or the consumer's statement regarding the disputed
information is received."

1. Relation to Other Sections

 This section sets forth procedures consumer reporting agencies must follow if a
consumer conveys a dispute of the completeness or accuracy of any item of
information in the consumer's file to the consumer reporting agency. Section 609
provides for disclosures by consumer reporting agencies to consumers, and section
610 sets forth conditions of disclosure.   Section 612 permits a consumer reporting
agency to impose charges for certain disclosures, including the furnishing of
certain information to recipients of prior reports, as provided by section 611(d).

2. Proper Reinvestigation

 A consumer reporting agency conducting a reinvestigation must make a good faith
effort to determine the accuracy of the disputed item or items.   At a minimum, it
must check with the original sources or other reliable sources of the disputed
information and inform them of the nature of the consumer's dispute.   In
reinvestigating and attempting to verify a disputed credit transaction, a consumer
reporting agency may rely on the accuracy of a creditor's ledger sheets and need not
require the creditor to produce documentation such as the actual signed sales slips.
Depending on the nature of the dispute, reinvestigation and verification may require
more than asking the original source of the disputed information the same question
and receiving the same answer.   If the original source is contacted for
reinvestigation, the consumer reporting agency should at least explain to the source
that the original statement has been disputed, state the consumer's position, and
then ask whether the **\*18824** source would confirm the information, qualify it, or
accept the consumer's explanation.

3. Complaint of Insufficient File, or Lack of File

 The FCRA does not require a consumer reporting agency to add new items of
information to its file.   A consumer reporting agency is not required to create new
files on consumers for whom it has no file, nor is it required to add new lines of
information about new accounts not reflected in an existing file, because the
section permits the consumer to dispute only the completeness or accuracy of
particular items of information in the file.   If a consumer reporting agency
chooses to add lines of information at the consumer's request, it may charge a fee
for doing so.

4. Explanation of Extenuating Circumstances

 A consumer reporting agency has no duty to reinvestigate, or take any other action
under this section, if a consumer merely provides a reason for a failure to pay a
debt ( e.g., sudden illness or layoff), and does not challenge the accuracy or
completeness of the item of information in the file relating to a debt.   Most
creditors are aware that a variety of circumstances may render consumers unable to
repay credit obligations.   Although a consumer reporting agency is not required to
accept a consumer dispute statement that does not challenge the accuracy or
completeness of an item in the consumer's file, it may accept such a statement and

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
(Cite as: 55 FR 18804)

may charge a fee for doing so.

5. Reinvestigation of a Debt

A consumer reporting agency must reinvestigate if a consumer conveys to it a dispute concerning the validity or status of a debt, such as whether the debt was owed by the consumer, or whether the debt had subsequently been paid. For example, if a consumer alleges that a judgment reflected in the file as unpaid has been satisfied, or notifies a consumer reporting agency that a past due obligation reflected in the file as unpaid was subsequently paid, the consumer reporting agency must reinvestigate the matter. If a file reflects a debt discharged in bankruptcy without reflecting subsequent reaffirmation and payment of that debt, a consumer may require that the item be reinvestigated.

6. Status of a Debt

The consumer reporting agency must, upon reinvestigation, "record the current status" of the disputed item. This requires inclusion of any information relating to a change in status of an ongoing matter ( e.g., that a credit account had been closed, that a debt shown as past due had subsequently been paid or discharged in bankruptcy, or that a debt shown as discharged in bankruptcy was later reaffirmed and/or paid).

7. Dispute Conveyed to Party Other Than the Consumer Reporting Agency

A consumer reporting agency is required to take action under this section only if the consumer directly communicates a dispute to it. It is not required to respond to a dispute of information that the consumer merely conveys to others ( e.g., to a source of information). (But see, however, discussion in section 607, item 3A, of consumer reporting agencies' duties to correct errors that come to their attention.)

8. Dispute Conveyed to the Consumer Reporting Agency by a Party Other Than the Consumer

A consumer reporting agency need not reinvestigate a dispute about a consumer's file raised by any third party, because the obligation under the section arises only where an "item of information in his file is disputed by the consumer."

9. Consumer Disclosures and Adverse Action Not Prerequisites to Reinvestigation Duty

A consumer reporting agency's obligation to reinvestigate disputed items is not contingent upon the consumer's having been denied a benefit or having asserted any rights under the FCRA other than disputing items of information.

10. Reasonable Period of Time

A consumer reporting agency is required to reinvestigate and record the current status of disputed information within a reasonable period of time after the consumer conveys the dispute to it. Although consumer reporting agencies are able to reinvestigate most disputes within 30 days, a "reasonable time" for a particular reinvestigation may be shorter or longer depending on the circumstances of the dispute. For example, where the consumer provides documentary evidence ( e.g., a certified copy of a court record to show that a judgment has been paid) when submitting the dispute, the creditor may require a shorter time to reinvestigate. On the other hand, where the dispute is more complicated than normal ( e.g., the consumer alleges in good faith that a creditor has falsified its report of the consumer's account history because of a personal grudge), the "reasonable time" needed to conduct the reinvestigation may be longer.

11. Frivolous or Irrelevant

The mere presence of contradictory information in the file does not provide the consumer reporting agency "reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant." A consumer reporting agency must assume a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

consumer's dispute is bona fide, unless there is evidence to the contrary.  Such evidence may constitute receipt of letters from consumers disputing all information in their files without providing any allegations concerning the specific items in the files, or of several letters in similar format that indicate that a particular third party ( e.g., a "credit repair" operator) is counselling consumers to dispute all items in their files, regardless of whether the information is known to be accurate.   The agency is not required to repeat a reinvestigation that it has previously conducted simply because the consumer reiterates a dispute about the same item of information, unless the consumer provides additional evidence that the item is inaccurate or incomplete, or alleges changed circumstances.

12. Deletion of Accurate Information That has not Been Disputed

 The consumer reporting agency is not required to delete accurate information that could not be verified upon reinvestigation, if it has not been "disputed by a consumer." For example, if a creditor deletes adverse information from its files with the result that information could not be reverified if disputed, it is still permissible for a consumer reporting agency to report it (subject to the obsolescence provisions of section 605) until it is disputed.

13. Consumer Dispute Statements on Multiple Items

 A consumer who disputes multiple items of information in his file may submit a one hundred word statement as to each disputed item.

14. Conveying Dispute Statements to Recipients of Subsequent Reports.

 A consumer reporting agency may not merely tell the recipient of a subsequent report containing disputed information that the consumer's statement is on file but will be provided only if requested, because subsection (c) requires the agency to provide either the statement or "a clear and accurate codification or summary thereof."

*\*18825 Section 612--Charges for Certain Disclosures*

 "A consumer reporting agency shall make all disclosures pursuant to section 609 and furnish all consumer reports pursuant to section 611(d) without charge to the consumer if, within thirty days after receipt by such consumer of a notification pursuant to section 615 or notification from a debt collection agency affiliated with such consumer reporting agency stating that the consumer's credit rating may be or has been adversely affected, the consumer makes a request under section 609 or 611(d).   Otherwise, the consumer reporting agency may impose a reasonable charge on the consumer for making disclosure to such consumer pursuant to section 609, the charge for which shall be indicated to the consumer prior to making disclosure;  and for furnishing notifications, statements, summaries, or codifications to persons designated by the consumer pursuant to section 611(d), the charge for which shall be indicated to the consumer prior to furnishing such information and shall not exceed the charge that the consumer reporting agency would impose on each designated recipient for a consumer report except that no charge may be made for notifying such persons of the deletion of information which is found to be inaccurate or which can no longer be verified."

1. Irrelevance of Subsequent Grant of Credit or Reason For Denial

 A consumer denied credit because of a consumer report from a consumer reporting agency has the right to a free disclosure from that agency within 30 days of receipt of the section 615(a) notice, even if credit was subsequently granted or the basis of the denial was that the references supplied by the consumer are too few or too new to appear in the credit file.

2. Charge for Reinvestigation Prohibited

 This section does not permit consumer reporting agencies to charge for making the reinvestigation or following other procedures required by section 611 (a)- (c).

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

3. Permissible Charges for Services Requested by Consumers

 A consumer reporting agency may charge fees for creating files on consumers at their request, or for other services not required by the FCRA that are requested by consumers.

*Section 613--Public Record Information for Employment Purposes*

 "A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall--

 (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported;  or

 (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.  For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported."

1. Relation to Other Sections

 A consumer reporting agency that complies with section 613(1) must also follow reasonable procedures to assure maximum possible accuracy, as required by <u>section 607(b)</u>.

2. Alternate Methods of Compliance

 A consumer reporting agency that furnishes public record information for employment purposes must comply with either subsection (1) or (2), but need not comply with both.

3. Information From Another Consumer Reporting Agency

 If a consumer reporting agency uses information or reports from other consumer reporting agencies in a report for employment purposes, it must comply with this section.

4. Method of Providing Notice

 A consumer reporting agency may use first class mail to provide the notice required by subsection (1).

5. Waiver

 The procedures required by this section cannot be waived by the consumer to whom the report relates.

*Section 614--Restrictions on Investigative Consumer Reports*

 "Whenever a consumer reporting agency prepares an investigative consumer report, no adverse information in the consumer report (other than information which is a matter of public record) may be included in a subsequent consumer report unless such adverse information has been verified in the process of making such subsequent consumer report, or the adverse information was received within the three-month period preceding the date the subsequent report is furnished."

*Section 615--Requirements on Users of Consumer Reports*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

(a) Whenever credit or insurance for personal, family, or household purposes, or employment involving a consumer is denied or the charge for such credit or insurance is increased either wholly or partly because of information contained in a consumer report from a consumer reporting agency, the user of the consumer report shall so advise the consumer against whom such adverse action has been taken and supply the name and address of the consumer reporting agency making the report.

(b) Whenever credit for personal, family, or household purposes involving a consumer is denied or the charge for such credit is increased either wholly or partly because of information obtained from a person other than a consumer reporting agency bearing upon the consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, the user of such information shall, within a reasonable period of time, upon the consumer's written request for the reasons for such adverse action received within 60 days after learning of such adverse action, disclose the nature of the information to the consumer. The user of such information shall clearly and accurately disclose to the consumer his right to make such written request at the time such adverse action is communicated to the consumer.

(c) No person shall be held liable for any violation of this section if he shows by a preponderance of the evidence that at the time of the alleged violation he maintained reasonable procedures to assure compliance with the provisions of subsections (a) and (b)."

1. Relation to Other Sections and Regulation B

Sections 606 and 615 are the only two sections that require users of reports to make disclosures to consumers. Section 606 applies only to users of **\*18826** "investigative consumer reports." Creditors should not confuse compliance with section 615(a), which only requires disclosure of the name and address of the consumer reporting agency, and compliance with the Equal Credit Opportunity Act, <u>15 U.S.C. 1691</u> et seq. and Regulation B, 12 C.F.R. 202, which require disclosure of the reasons for adverse action. Compliance with section 615(a), therefore, does not constitute compliance with Regulation B.

2. Limited Scope of Requirements

The section does not require that creditors disclose their credit criteria or standards or that employees furnish copies of personnel files to former employees. The section does not require that the user provide any kind of advance notification to consumers before a consumer report is obtained. (See section 606 regarding notice of investigative consumer reports.)

3. Method of Disclosure

The disclosures required by this section need not be made in writing. However, users will have evidence that they have taken reasonable steps to comply with this section if they provide written disclosures and retain copies for at least two years, the applicable statute of limitations for most civil liability actions under the FCRA.

4. Adverse Action Based on Direct Information

This section does not require that a user send any notice to a consumer concerning adverse action regarding that consumer that is based neither on information from a consumer reporting agency nor on information from a third party. For example, no disclosures are required concerning adverse action based on information provided by the consumer in an application or based on past experience in direct transactions with the consumer.

5. Creditors Using "Prescreened" Mailing Lists

A creditor is not required to provide notices regarding consumer reporting agencies

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

that prepare mailing lists by "prescreening" because they do not involve consumer requests for credit and credit has not been denied to consumers whose names are deleted from a list furnished to the agency for use in this procedure. See discussion of "prescreening," under section 604(3) (A), item 6, supra.

6. Applicability to Users of Motor Vehicle Reports

An insurer that refuses to issue a policy, or charges a higher than normal premium, based on a motor vehicle report is required to comply with subsection(a).

7. Securities and Insurance Transactions

A consumer report user that denies credit to a consumer in connection with a securities transaction must provide the required notice, because the denial is of "credit * * * for personal purposes," unless the consumer engages in such transactions as a business.

8. Denial o f Employment

An employer must provide the notice required by subsection (a) to an individual who has applied for employment and has been rejected based on a consumer report. However, an employer is not required to send a notice when it decides not to offer a position to an individual who has not applied for it, because in this case employment is not "denied." (See discussion in section 606, item 4, supra.)

9. Adverse Action Involving Credit

A creditor must provide the required notice when it denies the consumer's request for credit (including a rejection based on a scoring system, where a credit report received less than the maximum number of points possible and caused the application to receive an insufficient score), denies the consumer's request for increased credit, grants credit in an amount less than the consumer requested, or raises the charge for credit.

10. Adverse Action Not Involving Credit, Insurance or Employment

The Act does not require that a report user provide any notice to consumers when taking adverse action not relating to credit, insurance or employment. For example, a landlord who refuses to rent an apartment to a consumer based on credit or other information in a consumer report need not provide the notice. Similarly, a party that uses credit or other information in a consumer report as a basis for refusing to accept payment by check need not comply with this section. Checks have historically been treated as cash items, and thus such refusal does not involve a denial of credit, insurance or employment.

11. Adverse Action Based on Non-derogatory Adverse Information

A party taking adverse action concerning credit or insurance or denying employment, "wholly or partly because of information contained in a consumer report," must provide the required notice, even if the information is not derogatory. For example, the user must give the notice if the denial is based wholly or partly on the absence of a file or on the fact that the file contained insufficient references.

12. Name and Address of the Consumer Reporting Agency

The "section 615(a)" notice must include the consumer reporting agency's street address, not just a post office box address.

13. Agency To Be Identified

The consumer report user should provide the name and address of the consumer reporting agency from which it obtained the consumer report, even if that agency obtained all or part of the report from another agency.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

14. Denial Based Partly on a Consumer Report

 A "section 615(a)" notice must be sent even if the adverse action is based only
partly on a consumer report.

15. Denial of Credit Based on Information From "Third Parties"

 Subsection (b) imposes requirements on a creditor when it denies (or increases the
charge for) credit for personal, family or household purposes involving a consumer,
based on information from a "third party" source, which means a source other than
the consumer reporting agency, the creditor's own files, or the consumer's
application (e.g., creditor, employer, landlord, or the public record).   Where a
creditor denies a consumer's application based on information obtained directly from
another lender, even if the lender's name was furnished to the creditor by a
consumer reporting agency, the creditor must give a "third party" disclosure.

16. Substance of Required "Third Party" Disclosures

 When the adverse action is communicated to the consumer, the creditor must clearly
and accurately disclose to the consumer his or her right to make a written request
for the disclosure of the nature of the third party information that led to the
adverse action.   Upon timely receipt of such a request, however, the creditor need
disclose only the nature of the information that led to the adverse action (e.g.,
history of late rent payments or bad checks); it need not identify the source that
provided the information or the criteria that led to the adverse action.    A
creditor may comply with subsection (b) by providing a statement of the nature of
the third party information that led to the denial when it notifies the consumer of
the denial.    A statement of principal, specific reasons **18827 for adverse action
based on third party information that is sufficient to comply with the requirements
of the Equal Credit Opportunity Act (e.g., "unable to verify employment") is
sufficient to constitute disclosure of the "nature of the information" under
subsection (b).

*Section 616--Civil Liability for Willful Noncompliance*

 Section 616 permits consumers who sue and prove willful noncompliance with the Act
to recover actual damages, punitive damages, and the costs of the action, together
with reasonable attorney's fees.

*Section 617--Civil Liability for Negligent Noncompliance*

 Section 617 permits consumers who sue and prove negligent noncompliance with the
Act to recover actual damages and the costs of the action, together with reasonable
attorney's fees.

*Section 618--Jurisdiction of Courts;  Limitation of Actions*

 Section 618 provides that any action brought under section 616 or section 617 may
be brought in any United States district court or other court of competent
jurisdiction.    Such suit must be brought within two years from the date on which
liability arises, unless a defendant has materially and willfully misrepresented
information the Act requires to be disclosed, and the information misrepresented is
material to establishment of the defendant's liability.    In that event, the action
must be brought within two years after the individual discovers the
misrepresentation.

*Section 619--Obtaining Information Under False Pretense*

 Section 619 provides criminal sanctions against any person who knowingly and
willfully obtains information on a consumer from a consumer reporting agency under
false pretenses.

1. Relation to Other Sections

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

The presence of this provision does not excuse a consumer reporting agency's failure to follow reasonable procedures, as required by <u>section 607(a)</u>, to limit the furnishing of consumer reports to the purposes listed under <u>section 604</u>.

*Section 620--Unauthorized Disclosures by Officers or Employees*

Section 620 provides criminal sanctions against any officer or employee of a consumer reporting agency who knowingly and willfully provides information concerning an individual from the agency's file to a person not authorized to receive it.

*Section 621--Administrative Enforcement*

This section gives the Federal Trade Commission authority to enforce the Act with respect to consumer reporting agencies, users of reports, and all others, except to the extent that it gives enforcement jurisdiction specifically to some other agency. Those excepted from the Commission's enforcement jurisdiction include certain financial institutions regulated by Federal agencies or boards, Federal credit unions, common carriers subject to acts to regulate commerce, air carriers, and parties subject to the Packers and Stockyards Act, 1921.

1. General

The Commission can use its cease-and-desist power and other procedural, investigative and enforcement powers which it has under the FTC Act to secure compliance, irrespective of commerce or any other jurisdictional tests in the FTC Act.

2. Geographic Coverage

The Commission's authority encompasses the United States, the District of Columbia, the Commonwealth of Puerto Rico, and all United States territories but does not extend to activities outside those areas.

3. Status of Commission Commentary and Staff Interpretations

The FCRA does not give any Federal agency authority to promulgate rules having the force and effect, of statutory provisions. The Commission has issued this Commentary, superseding the eight formal Interpretations of the Act (<u>16 CFR 600.1</u>-600.8), previously issued pursuant to <u>§ 1.73</u> of the Commission's Rules, <u>16 CFR 1.73</u>. The Commentary does not constitute substantive rules and does not have the force or effect of statutory provisions. It constitutes guidelines to clarify the Act that are advisory in nature and represent the Commission's views as to what particular provisions of the Act mean. Staff opinion letters constitute staff interpretations of the Act's provisions, but do not have the force or effect of statutory provisions and, as provided in § 1.72 of the Commission's Rules, <u>16 CFR 1.72</u>, do not bind the Commission.

*Section 622--Relation to State Laws*

"This title does not annul, alter, affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency."

1. Basic Rule

State law is pre-empted by the FCRA only when compliance with inconsistent state law would result in violation of the FCRA.

2. Examples of Statutes that are not Pre-empted

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

55 FR 18804-01
55 FR 18804-01, 1990 WL 342991 (F.R.)
**(Cite as: 55 FR 18804)**

Page 47

A state law requirement that an employer provide notice to a consumer before ordering a consumer report, or that a consumer reporting agency must provide the consumer with a written copy of his file, would not be pre-empted, because a party that complies with such provisions would not violate the FCRA.

3. Examples of Statutes that are Pre-empted

A state law authorizing grand juries to compel consumer reporting agencies to provide consumer reports, by means of subpoenas signed by a court clerk, is pre-empted by the FCRA's requirement that such reports be furnished only pursuant to an "order of the court" signed by a judge (section 604(1)), or furnished for other purposes not applicable to grand jury subpoenas (section 604 (2)-(3)), and by section 607(a). A state statute requiring automatic disclosure of a deletion or dispute statement to every person who has previously received a consumer report containing the disputed information, regardless of whether the consumer designates such persons to receive this disclosure, is pre-empted by section 604 of the FCRA, which permits disclosure only for specified, permissible purposes and by section 607(a), which requires consumer reporting agencies to limit the furnishing of consumer reports to purposes listed under section 604. Absent a specific designation by the consumer, the consumer reporting agency has no reason to believe all past recipients would have a present, permissible purpose to receive the reports.

4. Statute Providing Access for Enforcement Purposes

A state "little FCRA" that permits state officials access to a consumer reporting agency's files for the purpose of enforcing that statute just as Federal agencies are permitted access to such files under the FCRA, is not pre-empted by the FCRA.

*18828 (Information collection requirements in this appendix approved by the Office of Management and Budget under control number 3084-0091)

The FCRA was enacted October 26, 1970, and became effective April 24, 1971.

By direction of the Commission.

Donald S. Clark,

Secretary.

[FR Doc. 90-10364 Filed 5-3-90; 8:45 am]

BILLING CODE 6750-01-M

55 FR 18804-01, 1990 WL 342991 (F.R.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.