# Exhibit 2

1

# Calendar No. 272

| 104TH CONGRESS 1st Session | SENATE | REPORT 104–185 |
|---|---|---|

## ECONOMIC GROWTH AND REGULATORY PAPERWORK REDUCTION ACT OF 1995

### R E P O R T

OF THE

## COMMITTEE ON BANKING, HOUSING, AND URBAN AFFAIRS UNITED STATES SENATE

TO ACCOMPANY

## S. 650

TOGETHER WITH

## ADDITIONAL VIEWS



DECEMBER 14, 1995.—Ordered to be printed

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1995
29–010

COMMITTEE ON BANKING, HOUSING, AND URBAN AFFAIRS

ALFONSE M. D'AMATO, New York, *Chairman*

PHIL GRAMM, Texas
RICHARD C. SHELBY, Alabama
CHRISTOPHER S. BOND, Missouri
CONNIE MACK, Florida
LAUCH FAIRCLOTH, North Carolina
ROBERT F. BENNETT, Utah
ROD GRAMS, Minnesota
PETE DOMENICI, New Mexico

PAUL S. SARBANES, Maryland
CHRISTOPHER J. DODD, Connecticut
JOHN F. KERRY, Massachusetts
RICHARD H. BRYAN, Nevada
BARBARA BOXER, California
CAROL MOSELEY-BRAUN, Illinois
PATTY MURRAY, Washington

HOWARD A. MENELL, *Staff Director*
ROBERT J. GIUFFRA, Jr., *Chief Counsel*
PHILIP E. BECHTEL, *Deputy Staff Director*
STEVEN B. HARRIS, *Democratic Staff Director and Chief Counsel*
EDWARD M. MALAN, *Editor*

———

SUBCOMMITTEE ON FINANCIAL INSTITUTIONS AND REGULATORY RELIEF

RICHARD C. SHELBY, Alabama, *Chairman*

ROD GRAMS, Minnesota
PETE DOMENICI, New Mexico
PHIL GRAMM, Texas
ROBERT F. BENNETT, Utah
CHRISTOPHER S. BOND, Missouri
CONNIE MACK, Florida

RICHARD H. BRYAN, Nevada
CAROL MOSELEY-BRAUN, Illinois
CHRISTOPHER J. DODD, Connecticut
JOHN F. KERRY, Massachusetts
BARBARA BOXER, California

KATHLEEN L. CASEY, *Staff Director*
DOUGLAS NAPPI, *Counsel*
SARAH BLOOM RASKIN, *Democratic Counsel*
MARTIN J. GRUENBERG, *Democratic Senior Counsel*

31

provide the FHFB with the relevant information used in the analysis of approving prospective members. This section does not affect section 6(h) of the Federal Home Loan Bank Act.

*Section 307. FHLB external auditors*

This provision allows the FHLBs to jointly select external auditors rather than the FHFB.

*Section 308. Limited purpose bank*

Section 308 eliminates the 7 percent growth cap on the annual asset growth of limited purpose banks. The section also allows limited purpose banks to take deposits under $100,000 for the purpose of securing a credit card. The Bank Holding Company Act currently provides an exemption from the definition of "bank" for limited purpose credit card banks that, among other things, engage only in credit card operations, have only one office that accepts deposits and do not accept deposits under $100,000.

*Section 309. Collateralization of advances to members*

Section 309 will allow FHLBs to accept second mortgages that are insured by the federal government as primary collateral for advances. Under current law, FHLBs can accept secondary mortgages as collateral, but only in amounts equal to 30% of the capital of the member bank.

*Section 310. Increasing limit on total advances by the FHLB system to non-QTL institutions*

Section 310 increases, from 30% to 40%, the limit on the aggregate amount of advances by the Federal Home Loan Bank system to members that are not qualified thrift lenders.

*Section 311. Fair debt collection practices*

This provision clarifies that the Fair Debt Collection Practices Act requires a debt collector to disclose clearly in the first written communication with the debtor that the debt collector is trying to collect a debt and is contacting the consumer for that purpose. The provision also clarifies that unless a verification request is made, collection activity may take place during the 30 day period in which a consumer may make a request for a verification of the debt.

*Section 401. Short title*

Sections 401 through 426 comprise "the Consumer Reporting and Reform Act."

*Section 402. Definitions*

*Adverse action*

A prior interpretation issued by the FTC [55 Fed. Reg. 18,826 (May 4, 1990)] holds that actions taken in connection with credit, employment, or insurance may constitute adverse actions, but other actions taken pursuant to a permissible purpose, such as a refusal to cash a check, rent an apartment, or open a new account,

32

do not. The language adopted by the Committee eliminates this distinction.

Section 402(a) of the Committee bill adds to section 603 of the Fair Credit Reporting Act new subsection (k) which sets forth the definition of the term "adverse action." Section 603(k) provides that for purposes of the FCRA, when used in connection with action involving credit based in whole or in part on a consumer report, the term "adverse action" has the same meaning as the definition of "adverse action" set forth in the Equal Credit Opportunity Act. Under Section 603(k), "adverse action" also includes a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or any amount of, any insurance, in connection with the underwriting of insurance. This portion of the definition applies to adverse determinations with respect to existing insurance or applications for new insurance.

The definition also covers a denial of employment or any other employment decision that adversely affects any current or prospective employee. In addition, the definition covers a denial or cancellation of, an increase in any charge for, or any other adverse or unfavorable change in the terms of, any license or benefit described in section 604(a)(3)(D).

Finally, the definition includes an action taken in connection with an application made by, or transaction initiated by a consumer if that action is adverse to the interest of the consumer. The term also includes an adverse change made to the terms of an account as the result of a review performed under section 604(a)(3)(E)(ii). However, the definition does not cover situations such as those where a creditor obtains consumer reports on its customers in connection with a review of its credit or other portfolio and, in connection with the review, a consumer's account is not changed, or is changed in a way that is not less favorable to the interest of that consumer, even if the accounts of other consumers are changed in a more favorable manner. Likewise, failure to include a consumer in a prescreening solicitation does not constitute adverse action.

### Firm offer

Credit or insurance providers who obtain prescreened lists must provide a "firm offer" of credit or insurance to all consumers on the list.

Section 402(b) of the bill adds to section 603 of the FCRA new subsection (l) which defines the term "firm offer of credit or insurance." This definition is necessary because sections 404(a) and 411(b) of the bill set forth new requirements for prescreening which, among other things, provide that prescreening must involve a "firm offer of credit or insurance." Under section 603(l), an offer of credit will be deemed to be a "firm offer of credit" if the creditor making the offer will honor the offer if the consumer meets the criteria the creditor has established for the credit being offered. Under the definition, a creditor may withdraw the offer of credit if the consumer does not qualify for the credit. For example, the creditor may withdraw the offer of credit if the consumer does not meet the criteria used to select the consumer for the offer of credit