# Exhibit 3

Westlaw.

H.R. REP. 103-486                                                         Page 1
H.R. REP. 103-486, H.R. Rep. No. 486, 103RD Cong., 2ND Sess. 1994, 1994 WL
164513 (Leg.Hist.)
**(Publication page references are not available for this document.)**


CONSUMER REPORTING REFORM ACT OF 1994

HOUSE REPORT NO. 103-486
April 28, 1994
[To accompany H.R. 1015]

     The Committee on Banking, Finance and Urban Affairs, to whom was referred the
bill (H.R. 1015) to amend the Fair Credit Reporting Act to assure the completeness
and accuracy of consumer information maintained by credit reporting agencies, to
better inform consumers of their rights under the Act, and to improve enforcement,
and for other purposes, having considered the same, report favorably thereon with an
amendment and recommend that the bill as amended do pass.
     The amendment is as follows:
     Strike out all after the enacting clause and insert in lieu thereof the
following:

TITLE I-AMENDMENTS TO FAIR CREDIT REPORTING ACT

SEC. 101. SHORT TITLE.

     This title may be cited as the "Consumer Reporting Reform Act of 1994".

SEC. 102. DEFINITIONS.

     (a) Adverse Action.-Section 603 of the Fair Credit Reporting Act (15 U.S.C.
1681a) is amended by adding at the end the following new subsection:
     "(k) The term 'adverse action'-
     "(1) has the meaning given to such term in section 701(d)(6) of the Equal Credit
Opportunity Act; and
     "(2) includes-
     "(A) any denial of, increase in any charge for, or reduction in the amount of,
insurance for personal, family, or household purposes made in connection with the
underwriting of insurance;
     "(B) any denial of employment or any other decision for employment purposes
which adversely affects any current or prospective employee; and
     "(C) any action taken or determination made-
       "(i) in connection with an application which was made by, or a transaction
which was initiated by, any consumer; and
       "(ii) which is adverse to the interest of the consumer.".
     (b) Firm Offer of Credit.-Section 603 of the Fair Credit Reporting Act  (15
U.S.C. 1681a) is further amended by adding after subsection (k) (as added by
subsection (a) of this section) the following:
     "(l) The term 'firm offer of credit'-
     "(1) means any offer of credit to a consumer that, except as provided in
paragraph (2), will be honored if the consumer is determined, based on information
in a consumer report on the consumer, to meet the specific criteria used to select
the consumer for the offer; and
     "(2) includes an offer of credit described in paragraph (1) for which extension
of credit may be conditioned solely on any combination of the following:
     "(A) The consumer being determined, based on information in the consumer's
application for the credit, to meet specific income criteria or employment criteria
(or both) that are established-
       "(i) before selection of the consumer for the offer; and
       "(ii) for the purpose of determining whether to extend credit pursuant to the
offer.
     "(B) Verification-
       "(i) that the consumer continues to meet the specific criteria used to select
the consumer for the offer, by using information in a consumer report on the

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 103-486                                                      Page 26
H.R. REP. 103-486, H.R. Rep. No. 486, 103RD Cong., 2ND Sess. 1994, 1994 WL
164513 (Leg.Hist.)
**(Publication page references are not available for this document.)**

conferred on the chief law enforcement officer or such official by the laws of such
State to conduct investigations or to administer oaths or affirmations or to compel
the attendance of witnesses or the production of documentary and other evidence.
    "(4) Limitation.-Whenever the Federal Trade Commission has instituted a civil
action for violation of this title, no State may, during the pendency of such
action, bring an action under this section against any defendant named in the
complaint of the Commission for any violation of this title that is alleged in that
complaint.

"SEC. 411. STATUTE OF LIMITATIONS.

    "Any action to enforce any liability under this title may be brought before the
later of-
    "(1) the end of the 2-year period beginning on the date of the occurrence of the
violation involved; or
    "(2) in any case in which any credit repair organization has materially and
willfully misrepresented any information which-
    "(A) the credit repair organization is required, by any provision of this title,
to disclose to any consumer; and
    "(B) is material to the establishment of the credit repair organization's
liability to the consumer under this title,
    the end of the 2-year period beginning on the date of the discovery by the
consumer of the misrepresentation.

    "SEC. 412. RELATION TO STATE LAW.

    "This title shall not annul, alter, affect, or exempt any person subject to the
provisions of this title from complying with any law of any State except to the
extent that such law is inconsistent with any provision of this title, and then only
to the extent of the inconsistency.

"SEC. 413. EFFECTIVE DATE.

    "This title shall apply after the end of the 6-month period beginning on the
date of the enactment of the Credit Repair Organizations Act, except with respect to
contracts entered into by a credit repair organization before the end of such
period.".

EXPLANATION OF LEGISLATION

TITLE I-AMENDMENTS TO FAIR CREDIT REPORTING ACT

Section 101

    This section provides for the short title of the bill, the "Consumer Reporting
Reform Act of 1994".

Section 102

    Section 102 amends section 603 of the Fair Credit Reporting Act (FCRA) which is
the definitions section of the Act. The bill contains new definitions under the
FCRA, and revises the existing definition of the term "consumer report".
    Adverse Action.-The bill defines "adverse action," a term now employed by the FCRA
to trigger certain notice requirements under section 615. The definition
specifically includes actions with respect to credit, insurance, or employment that
are adverse to the interests of a consumer. Additionally, the definition contains a
catch-all phrase that makes clear that any action taken or determination made with
respect to a consumer application or a consumer-initiated transaction that is
adverse to the interest of the consumer constitutes an adverse action. This catch-
all would include, for example, a refusal to cash a check, lease real estate, or
open a new transaction account based on a consumer report. This new definition is
intended to overturn a prior interpretation by the Federal Trade Commission ("FTC"),

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 103-486                                                          Page 27
H.R. REP. 103-486, H.R. Rep. No. 486, 103RD Cong., 2ND Sess. 1994, 1994 WL
164513 (Leg.Hist.)
**(Publication page references are not available for this document.)**


<u>55 Fed. Reg. 18826 (May 4, 1990)</u>, that refusal to accept payment by check or rent an
apartment based on a consumer report does not trigger an adverse action notice under
the FCRA.
   Although the definition section provides a list of transactions that are
considered to constitute examples of adverse actions, this list is illustrative and
not definitive. It is the Committee's intent that, whenever a consumer report is
obtained for a permissible purpose under section 604(a), any action taken based on
that report that is adverse to the interests of the consumer triggers the adverse
action notice requirements under section 615.
   Firm Offer of Credit.-Section 102 of the bill defines the phrase "firm offer of
credit". This phrase is used in new sections 604(c) and 615(d) as they relate to the
furnishing and use of prescreened lists for credit solicitations. A prescreened list
is a list of consumers, generated by a consumer reporting agency based on consumer
credit files, who meet predetermined criteria related to credit worthiness, credit
capacity, or credit standing. The furnishing and use of prescreened lists for credit
solicitations, i.e. credit transactions which are not initiated by consumers, is
permitted under section 604(c) if the credit solicitation consists of a "firm offer
of credit."
   To satisfy  the definition of "firm offer of credit," the person extending the
offer must establish specific criteria which are used to select consumers for the
offer. These criteria will be used by a consumer reporting agency to select
consumers from its credit files and consequently they must be based on information
that can be gleaned from a consumer report. In addition, the person extending the
credit may establish, in advance of selecting consumers for the offer, specific
income or employment criteria that consumers must meet before credit will be
extended to them. Finally, the person may establish requirements regarding the
furnishing of collateral and execution of a security agreement for secured credit,
but only if it does so in advance of selecting consumers for the offer and if the
solicitation for such credit describes these requirements.
   Generally, if the consumer responds to the offer, in accordance with its terms,
the credit grantor must honor that offer. The person offering the credit, however,
may conduct limited postscreening to verify that the consumer continues to meet the
specific criteria used to select the consumer for the offer by using information in
a consumer report on the consumer, information in the consumers application for the
credit, or other information bearing on the credit worthiness of the consumer.
Additionally, the person may verify information in the consumer's application to
determine that the consumer meets the relevant income and/or employment criteria.
Finally, the person may condition the extension of credit on the consumer satisfying
any requirements for secured credit regarding collateral or a security agreement.
   If the person determines, through this postscreening process, that the consumer
does not continue to meet the criteria used to select the consumer for the offer,
does not meet any applicable income or employment criteria, or has not furnished any
required collateral and executed any required security agreement, the person may
refuse to extend credit to that consumer. Once a consumer has accepted the offer of
credit, however, if information in a consumer report on that consumer is the basis
for a refusal to extend the credit to that consumer, the adverse action notice
requirements under section 615 are triggered.
   Credit Transaction Which Is Not Initiated by the Consumer.-This definition
clarifies that new sections 604(c) and 615(d), regarding the furnishing and use of
consumer reports for credit transactions not initiated by the consumer, do not apply
in instances where a creditor obtains a consumer report to review or collect an
existing customer's account. Thus, for example, a credit card issuer may obtain a
consumer report on a consumer in connection with its regular annual or other review
of the consumer's credit card account without triggering the requirements and
limitations of section 604(c) and 615(d). That issuer may also decide to change the
terms of the particular account for which the report was obtained, i.e. increasing
or decreasing the consumer's credit limit. If, however, the credit grantor decides
to change a consumer's credit account, based on that consumer's consumer report, in
a manner that adversely affects the consumer, such action would trigger an adverse
action notice under section 615(a).
   Consumer Report.-Section 102 of the bill also modifies the definition of
"consumer report" in section 603(d) of the FCRA. The current definition of "consumer
report" creates an exception for the communication by a person of its own


©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.