IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION _____ | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | (Centralized before the Honorable Marvin E. Aspen) |

## BORROWER PLAINTIFFS' REPLY IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

In its reply brief, [Docket No. 495] Ameriquest consistently mischaracterizes, misstates or ignores the legal arguments that Plaintiffs made in their Response to Ameriquest's Motion to Dismiss the Borrowers' Consolidated and Amended Class Action Complaint Or For a More Definite Statement. ("Borrowers' Response," [Docket No. 454]). Substantial portions of the Reply Brief are premised, for example, on Ameriquest's bald assertion that the Borrowers' Consolidated and Amended Complaint ("Complaint") is "devoid of facts." Ameriquest thus asks the Court to ignore not only that the applicable legal standard does not require Plaintiffs to plead every fact that supports their claims, *see Jones v. Hoosman,* No. 05 C 2909, 2005 WL 3159686, at *1 (N.D. Ill. Nov. 28, 2005) (J. Aspen), but also that the Complaint *does* contain very substantial allegations of the common facts applicable to the class. *See, e.g.*, Complaint, ¶ 2-14, 92-122. Each named Plaintiff then alleges that he or she was affected and harmed by Ameriquest's common lending practices. Complaint, ¶ 123-178.

1

By mischaracterizing the Complaint and by falsely asserting that the pleading is insufficient notice of the nature of the claims against it, Ameriquest appears to seek more delay. If Plaintiffs are forced to replead, Ameriquest would undoubtedly renew its Motion to Dismiss on various spurious theories. A renewed motion to dismiss would then continue to prevent this case from progressing to the point at which Ameriquest's borrowers can begin to obtain relief from oppressive and illegal loan terms.

For the reasons discussed below and in the Borrowers' Response, each of the arguments Ameriquest makes for dismissal is insubstantial and should be denied.

## ARGUMENT

## I. PLAINTIFFS HAVE MET THE LIBERAL NOTICE PLEADING STANDARD UNDER FED. R. CIV. P. 8(A)

As an initial matter, Ameriquest's arguments invite the Court to ignore the liberal standard applicable to notice pleading. The Federal Rules of Civil Procedure merely require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A complaint is not required to allege all, or any, of the facts entailed by the claim." *Hoosman,* at *1, *citing, Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005); *McCormick v. City of Chicago*, 230 F.3d 319, 324-25 (7th Cir. 2000) (holding that plaintiff can plead conclusions if they put defendant on notice of claims). *See also Brabec v. Green*, No. 05 C 6646, 2006 WL 1987820, at *1, (N.D. Ill. Jul. 13, 2006) (J. Aspen) (same). Notice pleading is a liberal standard, as its sole purpose is to put the defendant on notice of the claim for relief. *Kinslow v. Transcor America, LLC*, No. CIV A 06 C 4023, 2006 WL 3486866, at *6 (N.D. Ill. Dec. 1, 2006).

As such, in considering a motion to dismiss, a court must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Brabec,* at *2,

citing, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990). Dismissal is warranted

only if the plaintiff can prove no set of facts in support of her claims that would entitle her to

relief. *Id.* (citations omitted).

## II. PLAINTIFFS HAVE ALLEGED FACTS SUFFICIENT TO ESTABLISH THER INDIVIDUAL STANDING

Ameriquest asserts incorrectly that Plaintiffs argue that, as class representatives, they do

not need to establish individual standing. Reply Brief, at p. 1. Rather, Plaintiffs argue that their

pleading more than meets the requisite standard. Borrowers' Response, at pp. 2-3. By

mischaracterizing Plaintiffs' arguments, Ameriquest appears to invite the Court to ignore the

specificity and thoroughness of Plaintiffs' pleading.

The Complaint does include thorough factual allegations that, for example, Ameriquest

failed to deliver loan disclosures required by law. Those allegations are made in paragraphs 7,

98-101, and then further amplified in the claim itself at paragraphs 235-244. Each Plaintiff then

alleges in a separate paragraph that he or she was affected by the unlawful practice. Complaint,

¶¶ 123-178. The requisite causal connection and the resulting harm are alleged in paragraph 241,

243 and 244. Each named Plaintiff thus alleges that he or she was personally affected by the

practice that affects the class.[1] There is thus no basis for Ameriquest's assertion that Plaintiffs

have not met the pleading standards to establish Constitutional standing on this claim.[2]

---

[1] Argent Mortgage in a separate pleading baldly asserts that no allegations are made anywhere in the Complaint as to its conduct. [Docket No. 474.] This is simply untrue. Argent engaged in the conduct complained of in connection with the mortgages made to the Cusanelli Plaintiffs, the Arellanes Plaintiffs and the Wakefield Plaintiffs. See Complaint, ¶¶ 129, 146, and 151.

[2] Because Ameriquest does not assert that the allegations are insufficient from a standing perspective with respect to any particular claim, Plaintiffs will not engage in a claim-by-claim analysis of this issue. Suffice to say that the relevant allegations take the same form for each claim: there are basic factual assertions with respect to the practices at issue, an assertion that

III.    **INCORPORATION BY REFERENCE OF UNDERLYING FACTUAL ALLEGATIONS IS APPROPRIATE HERE**

As discussed in Borrowers' Response, the standard for incorporation by reference is a liberal one. Borrowers' Response, at pp. 3-5. In light of the incorporation, Ameriquest affects confusion about whether Plaintiffs are proceeding on the underlying Complaints or on the Consolidated and Amended Complaint. Plainly, Plaintiffs proceed on the claims in their Consolidated and Amended Complaint. That cannot and should not prevent them from incorporating and relying on the factual allegations in the complaints they have "consolidated" that support their claims.

Moreover, whatever view one takes of whether the underlying Complaints were properly incorporated in the Plaintiffs' Consolidated and Amended Complaint, it should be clear that the existence of the underlying Complaints, and Defendants' access to them for a period of many years, undermines its claim that it does not have sufficient notice of the facts or claims being alleged in this action.

IV.     **NO CLAIMS FAIL AS A MATTER OF LAW**

A.      **Declaratory Relief Is Available To Inform Borrowers About Their Rescission Rights**

1.      **This Court Has Already Entered A Preliminary Injunction In This Case Consistent With The Availability Of Declaratory Relief Under TILA**

Ameriquest continues to argue that Declaratory Relief is unavailable to determine whether borrowers have an extended right to cancel under the Truth in Lending Act. 15 U.S.C. § 1635. This is an important issue that goes to the power of the District Courts to order declaratory judgments that is presently (and squarely) before the Court of Appeals for the Seventh Circuit as

---

each Plaintiff was personally affected, and claim specific factual allegations, including causation and harm where required, in the assertion of the claim.

4

discussed below.  However, unless the Seventh Circuit concludes that the necessary authority does not exist, this Court has already effectively resolved the issue by issuing preliminary injunctive relief to preserve the status quo.

In January, 2006, Plaintiffs asked the Court to direct Ameriquest to send notice to putative class members that they may have an extended right to rescind.  To prevent that outcome, Ameriquest made the exact argument it is making here – that this Court has no authority to enter a Declaratory Judgment with respect to the existence of the ongoing right to rescind. [Docket No. 29, pp. 5-7]. Despite these arguments, the Court entered injunctive relief.[3] The Court issued this order recognizing that the unintended lapse of rescission rights is a serious harm, outweighing any burdens placed on Ameriquest to comply. Order, pp. 8, 10.  Because the injunction required consideration of likelihood of success, the Court's decision to enter injunctive relief carries the necessary implication that the Court has power, consistent with the cases cited in Borrowers' Response,[4] to enter a Declaratory Judgment on this issue.[5]  That decision remains law of the case. *See McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001) ("law of the case" doctrine provides that "courts should refrain from reopening issues decided in earlier stages of the same litigation.").

---

[3] Memorandum Opinion And Order (May 30, 2006) [Docket No. 143].
[4] *See, e.g. Hickey v. Great Western Mortgage Corporation,* 158 F.R.D. 603 (N.D. Ill. 1994) (Conlon, J.)
[5] As discussed in Borrower Plaintiffs' Opposition at pp. 12-13 [Docket No. 454], at this time, the Court is only required to decide whether Borrower Plaintiffs have adequately pled their right to a declaratory judgment. The Court will have an opportunity to consider whether it should order this relief later in the litigation.

2.     **The 7th Circuit's Anticipated Decision In *Andrews*, Rather Than *McKenna*, Will Control This Issue**

Out-of-circuit case law is not binding precedent. Therefore, the 7th Circuit's anticipated decision in *Andrews v. Chevy Chase Bank, FSB*, Case 05-cv-00454-LA, 2007 WL 112568 (E.D. Wis. Jan. 16, 2007) (petition for appeal accepted No. 07-8001), not the First Circuit's decision in *McKenna v. First Horizon Home Loan Corp.* 475 F. 3d 418(1st Cir. 2007), will ultimately be binding precedent in this case. Should the 7th Circuit overturn the Eastern District of Wisconsin's ruling, the claim will fail anyway – just at a different phase of the litigation.

The District Court in *Andrews* recently issued an additional memorandum opinion that addresses its conclusion that declaratory judgments are available to with respect to whether rescission rights remain extant under the TILA. *Andrews v. Chevy Chase,* No. 05C0454, 2007 WL 518417 (E.D. Wis. Feb. 14, 2007). First, in considering the defendant's likelihood of success on appeal - a relevant factor in deciding whether to stay proceedings - the *Andrews* Court outright rejected *McKenna*, observing,  "…nothing in the text of TILA supports the proposition that TILA bars courts from certifying classes whose members may seek rescission." *Id.,* at *1.

As discussed in Borrower's opposition, and found by the *Andrews* Court, the *McKenna* Court misapplied legislative history in reaching its decision that a declaration as to rescission rights is improper. Response, p. 20; *Id.,* at *3.

> Congress' 1974 amendment limited the potential liability of lenders by capping statutory damages in class actions. However, Congress did not bar TILA class actions either in damage cases or where the violation gives rise to the right of rescission. Nevertheless, from the fact that the 1974 amendment imposed a cap on statutory damages in class actions seeking damages (but made no mention of class actions involving the right of rescission), the McKenna court inferred that Congress intended to bar class actions in TILA cases where rescission is the only available remedy. However, nothing in the text of the amendment justifies this inference. It is just as likely that Congress remained silent about class actions involving the right of rescission because it did not regard such actions a posing

6

the same economic threat to the credit industry as class actions involving damages or because it never considered the issue.

*Id.*, at *2.

Finally, as explained by Borrower Plaintiffs in their Response, Rule 23 applies to their claim for declaratory relief, making a decision on this matter appropriate at the class certification stage. Borrowers' Response, p. 16. The *Andrews* Court addressed the propriety of certification under Rule 23, finding:

> …the McKenna court also stated that it saw no meaningful distinction "between a suit for a declaratory judgment that rescission is possible and a suit for rescission simpliciter," (citation omitted), and thus declined to distinguish *James v. Home Construction Company of Mobile, Inc.*, 621 F. 2d 727, 731 (5th Cir. 1980), which involved the latter. In refusing to distinguish declaratory actions from rescission actions, the McKenna court relied on the need to shield lenders from liability and the personal nature of the rescission remedy. (citation omitted) However, as we have seen, it is not the business of courts to shield lenders from liability in ways that Congress has not. Further, the personal aspects of rescission do not come into play in a declaratory action but only after a borrower actually attempts to rescind, there is nothing personal about declaring that a class of borrowers who received the same misleading disclosure incurred a TILA violation and that as a result the statutory right to rescind is extended from three days to three years.

*Andrews*, at *4, *citing Goldman v. First Nat'l Bak of Chi.*, 532 F. 2d 10 (7th Cir. 1976) (reiterating the 7th Circuit's position that TILA does not bar class actions and that in determining whether to certify classes in TILA cases, district courts should only consider whether the requirements of Rule 23 are met); *Haynes v. Logan Furniture Mart., Inc.*, 503 F. 2d 1161, 1163 (7th Cir. 1974) ("the trial court's decision to deny class action status in this case was posited on the legal theory that the procedural device of class actions is incompatible with the substantive ends to which the Truth in Lending Act is addressed. We cannot agree.").

As set forth in *Andrews* and in Borrowers' Response, at pp. 13-14, there is ample authority to conclude that the law allows declaratory judgments under TILA to the same extent it does under virtually any other federal statute. Indeed, the relief sought here promotes the goals of TILA and Rule 23 by providing a mechanism for notifying borrowers of their rights. *Andrews*, at *3. As such, Plaintiffs well-pled claim should be allowed to stand.

**B.      Ameriquest Loans Are Covered By The Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code Section 1750 *et. seq.***

In Borrowers' Response Brief at pages 8 to 9, Plaintiffs demonstrated that:

(a) the law of the case, as determined by a borrower transfer court, is that the CLRA applies to mortgages issued by Ameriquest (*see Knox v. Ameriquest Mortgage Co.*, Case No. C 05 00240 (SC), U.S. District Court for the Northern District of California);

(b) California state courts, including California's Supreme Court have similarly determined that the CLRA is applicable to financial transactions involving banking services; and

(c) the plain language and structure of the CLRA support the conclusion that the CLRA covers mortgage loans.

In their Reply Brief, Ameriquest concede, as they must, that the *Knox* opinion is a prior order of a transferor court in this MDL.[6]  Reply Brief, at p. 9.  However, they misleadingly suggest that the law of the case doctrine does not apply because the CLRA's scope is a question

---

[6] Defendants also argue that this Court is not bound by any prior orders from the transferor courts.  The one case they cite for this proposition contains no such holding.  *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114 (6th Cir. 1981) holds instead that an MDL transferee court can  modify protective orders.  *Id.* at 120 ("Since discovery orders and protective orders both must necessarily be subject to continuing circumstances revision upon change of circumstances, this power and the exercise of it is properly transferred to the transferee court . . . .").  Even if *Upjohn* said what Defendants claim, which it does not, this would be contrary to the law of this Circuit.  *See, e.g., Crews & Associates, Inc. v. United States*, 458 F.3d 674, 677 n.2 (7th Cir. 2006) (law of the case applicable when a case is transferred from one court to another).

of state, not federal, law. Ameriquest conflate two distinct concepts – the interpretation of state law by federal courts, and the deference one federal court gives to another federal court that has decided an issue in the same case -- and are wrong.

Ameriquest relies entirely on *Konradi v. United States*, 919 F.2d 1207 (7th Cir. 1990) for the proposition that law of the case does not apply when state law is at issue. However, *Konradi* did not involve the law of the case doctrine at all. *Konradi* simply stands for the general proposition that "the decision of a federal court in a diversity case, or in any other case in which state law supplies the rule of decision, is an exercise in predicting how the highest court of the state would decide if the case were presented to it." *Id.* at 1213.

Here, the federal court – the *Knox* court – *has* decided an issue of state law, based explicitly on its review of state law authority, *including an opinion by California's Supreme Court. See Knox v. Ameriquest Mortgage Co.*, 2005 WL 1910927, at *4 (N.D. Cal. Aug. 10, 2005) ("the court has reviewed the limited case law on this issue and finds that California courts generally find financial transactions to be subject to the CLRA. … [] because other types of financial transactions involving banking services appear to be covered by the CLRA, the Court finds that the CLRA covers the [Ameriquest] mortgages at issue"); *Kagan v. Gibraltar Savings & Loan Ass'n*, 35 Cal.3d 582 (Cal. 1984) (holding by California's highest court that a CLRA class action could go forward with respect to management fees on individual retirement accounts). The *Knox* court's correctly decided and well-reasoned decision is the law of the case here.

Ameriquest also continues to improperly rely on *Berry v. Amer. Express Publishing, Inc.*, 147 Cal. App. 4th 224 (Cal. Ct. App. 2007), which held, based on ambiguous legislative history, that credit card offers were not covered by the CLRA. *Id.* (discussing how in an earlier CLRA

draft, the California legislature deleted purchasers of "money or credit" from the definition of consumers). Plaintiffs respectfully submit that *Berry* was wrongly decided, and, even if not, by its own terms does not apply outside of the specific credit card issue before it.

Specifically, the *Berry* court treated the question of whether the issuance of a credit card was a "transaction intended to result in the sale or lease of goods or services" as "*an issue of first impression*." *Id.* at 229. Given the number of pre-*Berry* opinions holding that the CLRA applied to financial transactions, such as reverse mortgages, the only issue of "first impression" in *Berry* – and the only issue decided – necessarily related to the specific credit cards at issue.

In addition, as set forth in Borrowers' Response, *Berry's* reasoning is contradicted by, among other things, the reasoning of *Knox* and other cases (cases about which the legislature is presumably aware), the broad language of the statute, and the fact that mortgages are not excluded from the Act's coverage, even though real property purchases are. Cal. Civ. Code § 1754 (exempting transactions relating to the sale or construction of a residence). For all of these reasons, as the law of the case has determined, the CLRA applies to mortgage loans.

**C. Plaintiffs' Adverse Action Claims Cannot Be Dismissed Because of the FCRA's Applicable "Catch-All" Provision**

Ameriquest cannot argue that it did not take an adverse action as defined by the FCRA when it promised borrowers a favorable refinance, then changed material terms of the loan to the borrowers' detriment directly before or at the closing. Such action falls squarely within the FCRA's definition of an adverse action, triggering the notice requirement. The FCRA defines an adverse action as one that is "adverse to the interests of the consumer." 15 U.S.C. §1681(k)(1).

Ameriquest's argument that the ECOA's narrow definition of "adverse action," and not the FCRA's definition, applies to Plaintiffs' FCRA claim is inconsistent with the weight of

10

authority that makes clear that the FCRA's definition is a "catch-all provision" that is broader than the ECOA's. *See* Borrowers' Response, at pp. 17-18 (citing cases). Ameriquest has cited no relevant case law holding otherwise. *See* Borrowers' Response, at p. 18.

Moreover, it is contrary to the principles of statutory construction to infer that Congress' adoption of the ECOA's definition, coupled with its addition of the "adverse to the interests of the consumer" language in the FCRA's definition, means that Congress intended that the FCRA's adverse action definition to have an equally narrow scope to that of the ECOA. *See Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187, 1202 (7th Cir. 1992) (explaining that a specific reference in one statute to another incorporates only the specific part of the law which has been cited; it does not incorporate the entire law on the subject) (citations omitted). The purpose of FCRA is to protect consumers from the transmission of inaccurate information about them by informing consumers that their credit history has been used and providing them with the information they need to determine whether the information contained in their accessed consumer reports is inaccurate and needs to be corrected. *Thele v. Sunrise Chevrolet, Inc.*, No. 03 C 2626.2004 WL 1194751, at *10 (N.D. Ill. May 28, 2004). Essentially, the law provides consumers with a meaningful opportunity to contest a lender's decision to rely on possibly inaccurate credit information. Congress clearly expanded the scope of the "adverse action" definition to effectuate this purpose.

**D.      Ameriquest's ECOA Notice Obligations Apply To Counteroffers**

Ameriquest's notice duty under the ECOA extends beyond adverse actions to counteroffers. 12 C.F.R. §202.9(a)(1)(i) ("A creditor shall notify an applicant of action within…30 days after receiving a completed application concerning the creditor's approval of,

counter offer to, or adverse action on the application"); See, Borrowers' Response, at p. 19.[7]

"Receiving a loan," does not satisfy the ECOA's notice requirement for counteroffers, as

Ameriquest argues. Reply Brief, at p. 8. As articulated by the Seventh Circuit, the ECOA's

notice requirement is a "strong and necessary adjunct to the antidiscrimination purpose of the

legislation, for only if creditors know they must explain their decisions will they effectively be

discouraged from discriminatory practices." *Costa v. Mauro Chevrolet, Inc.*, 390 F.Supp.2d 720,

729 (N.D. Ill. 2005) (citations omitted). The *Costa* Court detailed the notice's purpose as

follows:

> rejected credit applicants will now be able to learn where and how their credit
> status is deficient and this information should have a pervasive and valuable
> educational benefit. Instead of being told only that they do not meet a particular
> creditor's standards, consumers particularly should benefit from knowing, for
> example, that the reason for the denial is their short residence in the area, or their
> recent change of employment, or their already over-extended financial situation.
> In those cases where the creditor may have acted on misinformation or inadequate
> information, the statement of reasons gives the applicant a chance to rectify the
> mistake.

*Id.*, at 729. (citations omitted).  Plaintiffs properly allege that neither the preliminary nor final

loan documents provides the information required by the ECOA.

## V.  THE PLAINTIFFS' PLEADING IS, IN ALL RESPECTS, SUFFICIENTLY CLEAR AND DEFINITE

The Complaint at issue far surpasses the minimal standards applicable to notice pleading

under Rule 8(a).  See Section I, *supra*. There can be little doubt that each Defendant is aware of

the claims against it, or that Plaintiffs have thoroughly described the pattern of misconduct that

forms the basis for their claims.  To the extent, if any, Ameriquest asserts that the Complaint is

---

[7] Plaintiffs seek leave to amend to the extent that they did not specifically allege a failure to provide a counteroffer notice.

subject to heightened pleading requirements under Rule 9(b), Ameriquest, for the most part, is simply wrong. As the Supreme Court has held, the heightened pleading standards of Rule 9(b) cannot be extended beyond claims for fraud and mistake. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002). *See Lawson v. Affirmative Equities Co.*, 341 F. Supp. 2d 51 (D. Mass 2004) (heightened pleading requirements do not apply to unfair trade practice claims).

Rule 12(e) motions are generally disfavored, and courts should grant such motions only if the complaint is so unintelligible that the defendant cannot draft a responsive pleading. *Moore v. Fidelity Financial Servs., Inc.*, 869 F. Supp. 557, 559-560 (N.D. Ill. 1994).

**A.      Plaintiffs Have Adequately Alleged the Representative Plaintiffs' Claims, the Defendants at Issue in Each Allegation and Claim and the Pleading Prerequisites Required by Rule 23**

At pages 9-10 of its Reply Brief, Ameriquest repeats its assertion that the named Plaintiffs have failed to meet their pleading requirements to establish standing and contend, remarkably, that Plaintiffs so concede.    The assertion that this issue has been conceded is absurd for the reasons discussed above in Sections I-III and in Borrowers' Response at pp 2-5. The assertion that the Plaintiffs have failed to meet the pleading requirements necessary to support class allegations under Fed. R. Civ. P. 23 (or that they have so conceded) is equally without merit.  Plaintiffs assert claims on behalf of a class and four subclasses.  Each element of Rule 23 is plead for the class as well as for each subclass.  Complaint ¶¶ 179-233.

**B.      All Claims are Properly Alleged Against Argent Mortgage Co.**

A related issue is raised in the Memorandum separately filed by Defendant Argent Mortgage Co. ("Argent"), alleging that no claims are sufficiently plead with respect to Argent. [Docket No. 394].  For the purposes of the Complaint, Argent is alleged to have committed all of the acts complained of and it is thus a proper defendant for each class claim. First, Argent is

13

encompassed within the definition of Ameriquest contained in the Complaint. Complaint, ¶ 2. Second, the Complaint alleges that Argent is a sister company of Ameriquest. Complaint ¶¶ 78, 82. Third, the Complaint alleges that Argent made loans with the unlawful elements alleged by all of the Plaintiffs to three sets of the named Plaintiffs: the Cusanelli Plaintiffs, the Arellanes Plaintiffs and the Wakefield Plaintiffs. *See* Complaint ¶¶ 129, 146, and 151. These Plaintiffs allege that Argent made standard misrepresentations of the same type made by the other Ameriquest Defendants[8] and that it failed to deliver required loan documentation and disclosures. *Id.* Fourth, the Plaintiffs adequately allege 1) Agency/Joint Venture, 2) Aiding and Abetting, and 3) Conspiracy among the various Ameriquest defendants. Complaint ¶¶ 86-91. Finally, Argent makes a variety of unsupported factual assertions in support of its joinder in Ameriquest's motion to dismiss that cannot be accepted as true for the purposes of resolution of this Motion under Rule 12(b). For all of these reasons, the Complaint may not be dismissed as to Argent.

**C.     To The Extent They Apply, The Pleading Requirements Of Rule 9(b) Are Satisfied**

Plaintiffs' Complaint largely contains no claims that are subject to Rule 9(b), because they have not alleged an explicit claim for fraud or mistake. However, Borrowers' Response amply demonstrated that whether or not they are entitled to a relaxed burden under Fed. R. Civ. P. 9(b) for their fraud-based claims (and they plainly are), Plaintiffs have satisfied the requirements of Rule 9(b). *See, e.g., Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F. 3d

---

[8] To the extent Argent argues that it couldn't have made the misrepresentation because it bought the loans from non-party loan brokers, Plaintiffs' complaint more than adequately alleges that Argent, rather than the brokers, originated the loans and was therefore responsible for representations about the loan terms and for delivering proper disclosures. Under the Truth-in-Lending Act, for example, there is no doubt that the creditor named on the face of the loan documents is responsible for making all necessary disclosures. 15 U.S.C. §§1602(f); 1640.

14

1041, 1051 (7th Cir. 1998) (discussing Rule 9(b) requirements and collecting line of Seventh

Circuit cases instructing that Rule 9(b)'s particularly requirement is relaxed when plaintiff lacks

access to all facts necessary to detail claims); *Deluxe Media Services, LLC v. Direct Disc

Network, Inc.*, 2007 WL 707544, at *4 (N.D. Ill. Mar. 2, 2007) (same).[9]

Plaintiffs have alleged, with considerable detail, a common fraudulent course of conduct

emanating from Defendants' corporate headquarters. They have set forth the nature and

circumstances of this conduct. Complaint, ¶¶ 93-97 (bait and switch practices of Ameriquest,

including description of representations made before and during closing), ¶¶ 98-101

(Ameriquest's non-disclosures and specific practices of removing specific documents before

presenting documents to customers at closing), ¶¶ 102-105 (specific conduct, statements and

omissions with respect to discount points); ¶¶106-115 (describing how and from where the

scheme is perpetrated, and detailing the sales and marketing scheme); ¶¶ 116-117 (detailing the

compensation system that rewards Defendants' agents for the practices alleged). Nothing more

is required. *See Reed v. Ameriquest*, Judicial Council Coordination Proceeding No. 4162 (cited

by Defendants) (attached in Defendants' Supplemental Request for Judicial Notice, at Exh. 1

(June 10, 2002 Court Transcript)).

In *Reed*, a California-based class action against Ameriquest involving many of the

practices challenged here, the court upheld fraud-based claims, explaining that "less specificity is

required since it does appear from the nature of the plaintiff's allegations that full information

concerning the facts of these controversies must necessarily be possessed by the defendant . . .

---

[9] Defendants' reply brief ignores the holding of *Corle*y and other Seventh Circuit cases, attempting instead to distinguish *Corley* on the facts. However, here, as in *Corley*, Defendants allegedly perpetrated a "bait and switch" fraudulent scheme to both plaintiffs and third parties. *Id*. at 1050-51.

15

the plaintiffs have generally alleged a predatory scheme including a bait and switch and flipping."[10]

Tellingly, in the face of Plaintiffs' allegations, Defendants have not identified the additional information that they would allegedly need to "make an effective response" to the Complaint. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1231 (N.D. Ill. 1990) (cited by Defendants).

**D.     Plaintiffs Have Alleged Their Statutory Consumer Protection Claims with Sufficient Specificity**

Defendants have not even attempted to satisfy the Fed. R. Civ. P. 12(e) standard that Plaintiffs' alternative consumer protection claim is "so unintelligible that the defendant cannot draft a responsive pleading."[11] *Moore v. Fidelity Financial Servs., Inc.*, 869 F. Supp. 557, 560 (N.D. Ill. 1994) (denying Rule 12(e) motion for TILA and contract class action claims). Plaintiffs have alleged that Defendants have knowingly, by the extensive wrongful conduct alleged in the complaint, violated each state's consumer protection laws, thus causing damages.  Complaint, ¶¶ 323-325 (identifying nine consumer protection statutes of states where Representative Plaintiffs reside).  Defendants do not make clear whether they are seeking a more definite statement of the claims under even these nine enumerated states' laws.[12]

---

[10] The *Reed* court also stated that, with respect to a UCL claim, "allegations of actual deception [and], justifiable reliance . . . are unnecessary".  *Id*. at p. 15.   In their reply, Defendants flatly ignore the case law holding that the CLRA and many of Plaintiffs' UCL claims are not subject to Rule 9(b) at all, and do not cite *any* case holding otherwise.

[11] Plaintiffs have alleged that all Class Members can recover under California's consumer protection and unfair competition law statutes.  In the alternative, Plaintiffs allege that Representative Plaintiffs can assert claims under their own state's consumer protection laws. Complaint, ¶ 322.

[12] Even if this Court were to determine that Representative Plaintiffs did not have standing to assert claims under other state's consumer protection statutes, the remedy would be to strike the

Instead, Defendants re-hash their choice-of-law argument, and introduce an entirely new (and therefore improper) argument relating to the federal courts' obligation to follow state substantive law in diversity cases. Both arguments fail not only on their own terms, but because they do not transform Plaintiffs' sufficient pleading into an unintelligible one, as the Rule requires. First, Defendants argue that the contracts between them and Plaintiffs have choice-of-law provisions.[13] However, even if true, Defendants have shown no relationship between the substantive questions inherent in whether a choice-of-law provision in a contract is enforceable, and whether Plaintiffs' consumer protection claim is adequately plead.

Second, Defendants rely on *Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945), to support their argument that Plaintiffs should re-plead their consumer protection claims. *York* examined whether equitable remedies available in state courts needed to be similarly available in federal courts sitting in diversity, and, conversely, whether equitable remedies unavailable in state courts could be available in federal courts. *Id*. at 105. Plaintiffs respectfully submit that *York* has no bearing on this motion.

**E.    Plaintiffs Need Not Make Additional Allegations to Identify the Contracts at Issue**

Although Ameriquest now concedes, unremarkably, that it knows that the deeds of trust, mortgages and contracts at issues are those between the Plaintiffs and it,[14] it now asserts that Plaintiffs must plead that these are the "totality of contracts at issue." Reply Brief, at p. 12.

_____

portion of Cause of Action Thirteen that extended beyond states where Representative Plaintiffs reside, not to require a new pleading.

[13] Defendants seek to have it both ways - they claim the contracts are both unintelligible, and clear enough to contain terms that Defendants claim are favorable to them. Defendants' arguments continue to demonstrate why their motion for a more definite statement is without basis.

[14] The contracts are, of course, within Ameriquest's possession and therefore available for its review.

Though Plaintiffs are not aware of other applicable loan contracts that might be at issue, it would be most unusual to require as a matter of pleading that Plaintiffs have a burden to so state in their pleading. Moreover, it is a remarkable leap, in light of Ameriquest's acknowledgement that it is aware of in possession of the form contracts between it and each Plaintiff, to nevertheless require that each Plaintiff allege the parties and content of each loan note and mortgage.

**F.     Plaintiffs Equitable Estoppel And Equitable Tolling Theories Are Sufficiently Pled**

**1.     Equitable Estoppel Is Not Subject To Heightened Pleading Requirements**

Equitable estoppel is not subject to the heightened pleading requirements of Rule 9(b). *Center Ice of DuPage, Inc*. *v*. *Burley's Rink Supply, Inc*., No. 96 C 5537, 1997 WL 534256, at *3 (N.D. Ill. Aug. 20, 1997) (noting the absence of any cases in the 7th Circuit that have invoked Rule 9(b) in connection with equitable estoppel claims); *Community Management Corp. of Maryland v*. *Tenman Systems, Inc.,* No. 89 C 3017, 1990 WL 16975, at *3, (N.D. Ill. Jan. 29, 1990) (rejecting defendant's arguments that the allegedly false and fraudulent promises must be pleaded with particularity based on the elements of an estoppel defense, which do not include a defendant's intent). Since an equitable estoppel claim is not tantamount to fraud, Ameriquest cannot rely on Rule 9(b) as grounds for dismissal.

As discussed in Borrowers' Response, Plaintiffs adequately pleaded their equitable estoppel theory by alleging that Ameriquest concealed that they would not, despite promises, refinance loans. Borrowers' Response, at pp. 20-21. Plaintiffs understood that they had been wronged, as they had received loan terms that were significantly less advantageous than those Ameriquest promised, but Ameriquest induced them into forbearing suit by its false promises to remedy the problem through refinancing.

Against this backdrop, the purpose of the equitable estoppel doctrine is noteworthy, "the

principle that no man may take advantage of his own wrongdoing was so deeply rooted in and integral to our jurisprudence that it should be implied in the interstices of every federal cause of action absent some affirmative indication that Congress expressly intended to exclude the application of equitable estoppel." *Cange v. Stotler and Co., Inc.*, 826 F.2d 581, 585 (7th Cir. 1987) (construing, *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 232-233, 79 S.Ct. 760, 761-762, 3 L.Ed.2d 770 (1959).

## 2. Equitable Tolling Is Sufficiently Pled Both Under A Regular And Heightened Standard

The doctrine of equitable tolling provides that the statute of limitations may be tolled in two independent situations: (1) where defendants have actively concealed the fraud; and (2) where knowledge of the fraud could not reasonably have been acquired by a plaintiff in the exercise of due care. *Levy v. Freehling & Co.* No. 85 C 8377, 1986 WL 4995, at *2, (N.D. Ill. Apr. 18, 1986), citing, *Sperry v. Barggren*, 523 F.2d 708, 710-711 (7th Cir.1975). In the latter situation, Plaintiffs need only allege that they exercised due care and diligence in seeking to discover the fraud. *Id.* (citation omitted). If the plaintiffs sufficiently plead due diligence, the Court need not determine whether they pled fraudulent concealment with the particularity required under Rule 9(b). *Id.,* at *3. Plaintiffs adequately pled due diligence. *See* Borrowers' Opposition, p. 20.

Rule 9(b) is only applicable to Plaintiffs' equitable tolling theory based on fraudulent concealment. *Id.*  As discussed in Plaintiffs' opposition, the Plaintiffs have met this standard, as the complaint pleads specific actions taken by Ameriquest which concealed their fraud, namely, misrepresenting to borrowers that they would refinance their loans. Complaint, ¶46.

19

## CONCLUSION

For the foregoing reasons as well as those stated in the Borrower Plaintiffs' earlier Opposition Memorandum, Defendants' Motion to Dismiss the Borrowers' Consolidated and Amended Complaint should be denied in its entirety. In the alternative, Plaintiffs request an opportunity to amend consistent with the opinion of the Court.

Respectfully submitted,

Dated: March 14, 2007

_/s/ Kelly M. Dermody_
Kelly M. Dermody

Kelly M. Dermody (CA Bar No. 171716)
Caryn Becker (CA Bar No. 196947)
LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

_/s/ Gary Klein_
Gary Klein

Gary Klein
Elizabeth Ryan
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA 02111-2810
Telephone: (617) 357-5500 ext. 15
Facsimile: (617) 357-5030

_/s/ Jill Bowman_
Jill Bowman

Jill Bowman
JAMES, HOYER, NEWCOMBER
  & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL 33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

_Plaintiffs' Co-Lead Counsel_

_/s/ Marvin A. Miller_
Marvin A. Miller

Marvin A. Miller
MILLER LAW LLC
101 North Wacker Drive, Ste. 2010
Chicago, IL  60606
Telephone:  (312) 525-8316
Facsimile:   (312) 525-8231

_Plaintiffs' Liaison Counsel_

21