**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: *Sievers, et al. v. Ameriquest Mortgage Co., et al.,* D. Conn. Case No. 3:05-01296 | |

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Defendants Ameriquest Mortgage Company and Deutsche Bank National Trust Company by and through their counsel of record, hereby respectfully request that this Court take judicial notice of the following pursuant to Rule 201 of the Federal Rules of Evidence:

1.      Complaint, *Ameriquest Mortgage Company v. Jerome L. Sievers, et al.,* Case No. CV05-4002637S, Superior Court of Connecticut, New London District, dated February 28, 2005.

2.      Answer to Complaint, *Ameriquest Mortgage Company v. Jerome L. Sievers, et al.,* Case No. CV05-4002637S, Superior Court of Connecticut, New London District, dated May 4, 2005.

3.      Chapter 7 Bankruptcy Petition, *In re Jerome L. Sievers and Cheryl M. Sievers,* United States Bankruptcy Court, District of Connecticut, Case No. 05-32276 (ASD).

DATED: March 30, 2007

Respectfully submitted,

By:/s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company*
*and Deutsche Bank National Trust Company*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

**Exhibit 1**

RETURN DATE: MARCH 22, 2005    :  SUPERIOR COURT

AMERIQUEST MORTGAGE COMPANY    :  J.D. OF NEW LONDON

VS.    :  AT NEW LONDON

JEROME L. SIEVERS
CHERYL M. SIEVERS    :  FEBRUARY 28, 2005

### C O M P L A I N T

1. On June 23, 2004, the defendants, Jerome L. Sievers and Cheryl M. Sievers, owed Ameriquest Mortgage Company the sum of $189,000.00 as evidenced by their Note for said sum, dated on said date, and payable to Ameriquest Mortgage Company with interest in installments, (a copy of which Note is attached as Exhibit A).

2. On said day, to secure said Note, the defendants, Jerome L. Sievers and Cheryl M. Sievers, mortgaged to Ameriquest Mortgage Company a certain piece or parcel of land, with the buildings and improvements thereon, situated in the Town of Montville, County of New London and State of Connecticut, known as 36 Beechwood Road and being more particularly bounded and described on Schedule A attached hereto and made a part hereof, which mortgage is conditioned upon the payment of said Note according to its

.W & LARSON
ATTORNEYS AT LAW
. MARLBOROUGH ST.
ST OFFICE BOX 248
KTLAND, CT 06480
JURIS NO. 418022

:L. (860) 342-3341
IX (860) 342-3368

tenor, and was recorded in the Montville Land Records in Volume 442 at Page 861 on July 9, 2004, (a copy of which Mortgage is attached as Exhibit B).

3. The plaintiff, Ameriquest Mortgage Company, is the current owner of the Note and Mortgage Deed.

4. The defendants, Jerome L. Sievers and Cheryl M. Sievers, are the owners of the equity of redemption in the mortgaged premises and are in possession of same.

5. The payments are in default and the debt is now due and unpaid.

6. The Town of Montville claims an interest in the premises by reason of an inchoate tax lien due to said Town, which lien is prior in interest to that of the mortgage being foreclosed.

7. A Lis Pendens dated February 28, 2005 was filed on the Land Records of the Town of Montville and a copy of said Lis Pendens is attached hereto marked plaintiff's Exhibit C.

AW & LARSON
ATTORNEYS AT LAW
3 MARLBOROUGH ST.
OST OFFICE BOX 248
ORTLAND, CT 06480
JURIS NO. 418022

TEL. (860) 342-3341
FAX (860) 342-3368

WHEREFORE, the plaintiff claims:

1. A foreclosure of said mortgage;

2. Possession of the Mortgaged Premises;

3. Reasonable attorney's fees;

4. Appointment of Receiver of Rents;

5. Reasonable allowances for title examination and appraisal;

6. Deficiency judgment; and

7. Such other and further relief as to law or equity may appertain.

HEREOF, fail not, but of this Writ with your doings thereon make due service and return according to law.

Dated at Portland, Connecticut, this 28th day of February, 2005.

THE PLAINTIFF

BY _____
LEANNE M. LARSON
ITS ATTORNEY

AW & LARSON
ATTORNEYS AT LAW
12 MARLBOROUGH ST.
OST OFFICE BOX 248
ORTLAND, CT 06480
JURIS NO. 418022

TEL. (860) 342-3341
FAX (860) 342-3368

RETURN DATE: MARCH 22, 2005      :      SUPERIOR COURT

AMERIQUEST MORTGAGE COMPANY      :      J.D. OF NEW LONDON

VS.      :      AT NEW LONDON

JEROME L. SIEVERS
CHERYL M. SIEVERS      :      FEBRUARY 28, 2005

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest or property in demand is greater than $15,000.00 exclusive of interest and cost.

THE PLAINTIFF

BY _[signature: Leanne M. Larson]_

LEANNE M. LARSON
ITS ATTORNEY

AW & LARSON
ATTORNEYS AT LAW
62 MARLBOROUGH ST.
POST OFFICE BOX 248
PORTLAND, CT 06480
JURIS NO. 418022

TEL. (860) 342-3341
FAX (860) 342-3368

NOTICE. Pursuant to Connecticut General Statutes §49-31(d) through (i) inclusive, notice is hereby given that if you have owned or occupied the property which is the subject of this foreclosure as your principal place of residence for a continuous period of not less than (2) years prior to these proceedings, and if you have not had a foreclosure action brought against you in the past seven (7) years, and you are unemployed or underemployed as defined in Connecticut General Statutes §49-31(d) through (i) inclusive, then you may be eligible for relief as set forth in said statute.

### FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

1. Unless you, within thirty (30) days after receipt of this Notice, dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid.

2. If you notify counsel to the plaintiff within thirty (30) days of receipt of this Notice that the debt or any portion thereof is disputed, verification of the debt will be obtained.

3. Please take Notice the name and address of the original creditor, has been provided to you in this Complaint.

4. Counsel to the plaintiff is attempting to collect a debt and any information obtained from you will be used for that purpose.

.W & LARSON
TTORNEYS AT LAW
: MARLBOROUGH ST.
1ST OFFICE BOX 248
RTLAND, CT 06480
JURIS NO. 418022

EL. (860) 342-3341
4X (860) 342-3568

SCHEDULE A

A tract of land, with the buildings thereon, situated on the westerly side of Beechwood Road in the Town of Montville, designated as Lot No. 141 on "Revised Subdivision Plan, Section II, Oakdale Heights, Property of Oakdale, Inc., Montville, Conn. Scale 1" = 40', Dated 7-16-53, Sheet 1 of 3 Sheets, Megson & Hyyppa, Civil Engineers" on file in Montville Land Records, bounded as follows:

On the east 80.00 feet by Beechwood Road; on the south 150.00 feet by Lot No. 140 on said plan; on the west 80.00 feet by Lot No. 142 on said plan; and on the north 150.00 feet by Lot No. 141A on said plan.

EXHIBIT A

Loan Number: 0083472829 - 5678

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

June 23, 2004
Date

Orange
City

CA
State

36 BEECHWOOD RD, Oakdale, CT 06370
Property Address

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 189,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Ameriquest Mortgage Company.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.800 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on  August 1, 2004 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, July 1, 2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my payments at:  505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,232.14. This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of,  July, 2006  and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding five and three-quarters percentage point(s) (5.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:

601-1(MN) (Rev. 07/03)

1 of 3

06/23/2004 6:26:21 PM

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.800 % or less than 6.800%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) 1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.800 % or less than 6.800 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Prepayment Made Three (3.00) year(s) After the Date of this Note**

I will not have to pay a prepayment charge if I make a prepayment on the Three (3.00) year anniversary of the date this Note is executed, or at any time thereafter.

**(B) Prepayment Made Within Three (3.00) year(s) of the Date of this Note**

I will pay Lender a prepayment charge if, in any twelve (12) month period before the Three (3.00) year anniversary of the date this Note is executed, I prepay more than 20% of the original principal balance of this Note. The prepayment charge will be six (6) months interest, at the rate then in effect on this Note, on the amount in excess of 20% of the original principal balance that I prepay within such 12 month period.

**(C) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(D) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.



0000008347282503005505342

201-2UNIV (Rev. 07/03)

2 of 3

Initials:

05/23/2004 5:26:21 PM



Loan Number: 0083472829 - 5678

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Borrower    Jerome L Sievers

_____ (Seal)
Borrower    Cheryl M Sievers

_____ (Seal)
Borrower

_____ (Seal)
Borrower



VOL 442 PG 861                                                    EXHIBIT B

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

Doc ID:    000003440019 Type: LAN
BK442  PG861-879

Prepared By:Ameriquest Mortgage Company

Nina Cabilin
125 Eugene O'Neill Drive,
Suite #300,New London, CT

──────────────── [Space Above This Line For Recording Data] ────────────────

# OPEN-END MORTGAGE DEED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated June 23, 2004 together with all Riders to this document.
(B) "Borrower" is Jerome L Sievers and Cheryl M Sievers

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

CONNECTICUT-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3007 1/01
   06/23/2004 5:26:21                                        0083472829 - 5678

AMBCT (0311)
Page 1 of 16                                      Page 1 of 15
XXXXXXXX VMP Mortgage Solutions (800)521-729        Initials
                                                  0000005347282903011815D1

VOL 442 PG 862

# Schedule A

A tract of land, with the buildings thereon, situated on the westerly side of Beechwood Road in the Town of Montville, designated as Lot No. 141 on "Revised Subdivision Plan, Section II, Oakdale Heights, Property of Oakdale, Inc., Montville, Conn. Scale 1" = 40', Dated 7-16-63, Sheet 1 of 2 Sheets, Megson & Hyyppa, Civil Engineers" on file in Montville Land Records, bounded as follows:

On the east 50.00 feet by Beechwood Road; on the south 150.00 feet by Lot No. 140 on said plan; on the west 50.00 feet by Lot No. 142 on said plan; and on the north 150.00 feet by Lot No. 141A on said plan.

Said premises are subject to restrictions, covenants and easements as of record appear.

Being a part of the premises conveyed to Oakdale, Inc., by deed recorded in Vol. 70, Page 461 of said records.

The Grantees herein assume and agree to pay any and all taxes coming due on the above-mentioned premises.

Reference may be had to a Warranty Deed from Oakdale, Inc. to Norman A. Barber and Lea L. Barber dated June 16, 1965 and recorded in Volume 87, Page 25 of the Montville Land Records.

VOL 442 PG 863

Lender is a Corporation
organized and existing under the laws of Delaware
Lender's address is 1100 Town and Country Road, Suite 200  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated June 23, 2004
The Note states that Borrower owes Lender one hundred eighty-nine thousand and 00/100
                                                                              Dollars
(U.S. $ 189,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than July 1, 2034
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

AM6CT (0311)                          Page 2 of 15                        Form 3007 1/01
06/23/2004 5:26:21                                              0083472829 - 567B

VOL 442 PG 864

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to Lender and Lender's successors and assigns, the following described property located in the          County          of          NEW LONDON      :

         [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: 00                              which currently has the address of

36 BEECHWOOD RD                                                [Street]

Oakdale                              [City], Connecticut 06370          [Zip Code]

("Property Address"):

     TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials:

AM6CT (0311)                    Page 3 of 15                              Form 3097 1/01

06/23/2004 5:26:21                                  0083472829 -5678

000000834728290301161603

VOL 442 PG 865

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

AM6CT (0811)  Page 4 of 15  Form 3007 1/01
06/23/2004 5:26:21  0083472829-5678



3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

AM6CT (0311)

06/23/2004 5:26:21

Page 5 of 15

Initials: CMS

Form 3007 1/01

0083472829 -5678

000000083472829030181805

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

AM6CT (0311)　　　　　　Page 6 of 15　　　　　　Form 3007 1/01
06/23/2004 5:26:21　　　　　　　　0083472829-5678

Page 6 of 15　XXXXXXXXX

VOL 442 PG 868

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

AM6CT (0311)
06/23/2004 5:26:21

Page 7 of 15

Initials: _CMS_

Form 3007 1/01

0088472829 - 5678

000000834726280301181607

VOL 442 PG 869

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Initials: 

AM6CT (0311)　　　　　　Page 8 of 15　　　　　　Form 3007 1/01

06/23/2004 5:26:21　　　　　　　　0083472829 - 5678

00000083472829030118150B

Case: 1:05-cv-07097 Document #: 627 Filed: 03/30/07 Page 22 of 75 PageID #:13329

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

AMSCT (0310)   Page 8 of 15



Form 3007 1/01

0083472829 - 5678

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will

Initials: _____     Form 3007 1/01

0083472829-5678



be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not effect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable



attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials

Form 3007 1/01



VOL 442 PG 874

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

25. Future Advances. Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.



Initials: JL

AM6CT (0211)                               Page 13 of 15                          Form 3007 1/01

06/23/2004 5:26:21                                              0083472829 - 5678

0000008347282903011181613

VOL 442 PG 875

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Witness    SUSAN HEFFEL

Witness    ALFRED Thason

_____ (Seal)
Jerome L Sievers

Witness    SUSAN HEFFEL

Witness    ALFRED Thason

_____ (Seal)
Cheryl M Sievers

_____
Witness

_____ (Seal)

_____
Witness

_____
Witness

_____ (Seal)

_____
Witness

_____
Witness

_____ (Seal)


0000008347262903011181614

D083472629 - 5678

06/23/2004 5:26:21 PM

Case: 1:05-cv-07097 Document #: 627 Filed: 03/30/07 Page 28 of 75 PageID #:13335

VOL 442 PG 876

STATE OF CONNECTICUT, *Newtonoro* County ss: Town of *Mdsate*

The foregoing instrument was acknowledged before me this _June 23 204_ by

_____ *Steven L Steves* _____

_____ *Cheryl M Sites* _____

_____

My Commission Expires:



Notary Public

**STEVEN PFEIFFER**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MAY 31, 2005

VOL 442 PG 877

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 23rd day of June , 2004   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

36 BEECHWOOD RD, Oakdale, CT  06370
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of  6.800 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the first day of  July, 2006  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials: 

Loan Number:  0083472829 - 5678

000000834728290302150301

610-1 (Rev 1/01)

Page 1 of 3

06/23/2004 5:26:21 PM

VOL 442 PG 87

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding five and three-quarters percentage points ( 5.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 8.800% or less than 6.800%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.800%) or less than 6.800)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials 

Loan Number: 0083472829 - 5678

610-2 (Rev 1/01)                              Page 2 of 3

06/23/2004 5:26:21 PM

VOL 442 PG 879

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)  _____ (Seal)
Borrower Jerome L Sievers           Borrower Cheryl M Sievers

_____ (Seal)  _____ (Seal)
Borrower                            Borrower

RECEIVED
MONTVILLE, CT
2004 JUL -9 PM 2:44
TOWN CLERK

Loan Number: 0083472829 - 5678

000000834728290302160303

EXHIBIT C

| | | |
|---|---|---|
| RETURN DATE: MARCH 22, 2005 | : | SUPERIOR COURT |
| AMERIQUEST MORTGAGE COMPANY | : | J.D. OF NEW LONDON |
| VS. | : | AT NEW LONDON |
| JEROME L. SIEVERS | | |
| CHERYL M. SIEVERS | : | FEBRUARY 28, 2005 |

## LIS PENDENS

NOTICE is hereby given that the undersigned plaintiff, Ameriquest Mortgage Company, has brought its complaint of even date herewith, returnable to the Superior Court, Judicial District of New London at New London, 70 Huntington Street, New London, Connecticut 06320 on the 22nd day of March, 2005, against Jerome L. Sievers and Cheryl M. Sievers, the owners of the equity of redemption, to foreclose a mortgage on certain premises known as 36 Beechwood Road, Oakdale, Connecticut, and for possession of the mortgaged premises, reasonable attorney's fees, appointment of receiver of rents, reasonable allowances for title examination and appraisal, deficiency judgment, and such other further relief as to law or equity may appertain. The mortgage being foreclosed is more particularly described in Volume 442, Page 861 of the Montville Land Records. The premises to be affected by said action are bounded and described as follows:

A tract of land, with the buildings thereon, situated on the westerly side of Beechwood Road in the Town of Montville, designated as Lot No. 141 on "Revised Subdivision Plan, Section II, Oakdale Heights, Property of Oakdale, Inc., Montville, Conn. Scale 1" = 40', Dated 7-16-63, Sheet 1 of 3 Sheets, Megson & Eyyppa, Civil Engineers" on file in Montville Land Records, bounded as follows:

On the east 80.00 feet by Beechwood Road; on the south 150.00 feet by Lot No. 140 on said plan; on the west 80.00 feet by Lot No. 142 on said plan; and on the north 150.00 feet by Lot No. 141A on said plan.

Dated at Portland, Connecticut, this 28th day of February, 2005.

THE PLAINTIFF,

BY *Leanne M. Larson*
LEANNE M. LARSON
LAW & LARSON
262 MARLBOROUGH STREET
P.O. BOX 248
PORTLAND, CT 06480
(860) 342-3341

State of Connecticut)

County of New London)     SS: Oakdale        March 16, 2005

     Then and there by virtue hereof and by direction of the plaintiff's attorney, I left a true and attested copy of the original Writ, Summons, Complaint, and Lis Pendens with and in the hands of the within named defendant, Jerome L. Sievers, at said 36 Beechwood Road, Oakdale, Connecticut.

     And afterwards on March 16, 2005, I left a true and attested copy of the original Writ, Summons, Complaint, and Lis Pendens at the usual place of abode of the within named defendant, Cheryl M. Sievers, at said 36 Beechwood Road, Oakdale, Connecticut.

     The within and foregoing is the original Writ, Summons and Complaint, and a certified copy of the original Lis Pendens that was filed with the Town Clerk of the Town of Montville, County of New London, State of Connecticut on March 16, 2005, with my doings endorsed hereon.

Attest:

Joshua C. Martin
State Marshal

Fees:

| | |
|---|---|
| Service | $40.00 |
| Travel | $12.96 |
| Pages | $62.00 |
| End. | $2.80 |
| Town Clerk | $15.00 |
| Lis Pendens | $30.00 |
| | |
| Total | $162.76 |

*Law & Larson*

Attorneys at Law
262 Marlborough Street
Portland, Connecticut 06480

Leanne M. Larson
George A. Law

Telephone (860) 342-3341
Facsimile (860) 342-3368

Reply to:
Post Office Box 248
Portland, CT 06480

February 28, 2005

Joshua C. Martin
State Marshal
P.O. Box 2165
New London, CT 06320

Re: Ameriquest Mortgage Company vs. Jerome L. Sievers, et al

Dear Marshal:

Enclosed please find an original and two copies of a foreclosure complaint prepared in connection with the above-referenced matter. Prior to filing the original Lis Pendens with the Town Clerk of Montville, would you kindly review the land records after February 17, 2005, the date of my title examination, to see if any other encumbrances are revealed. If any other liens are discovered, would you please call my office and advise of the particular information so that I may amend the Complaint and Lis Pendens to reflect the new lienholder.

After service of the enclosed foreclosure complaint, would you kindly return the original to this office together with your return of service and bill for services rendered. Please notice the return date is **March 22, 2005.**

If you have any questions or comments in connection with the above or enclosed, please do not hesitate to contact me.

Very truly yours,

*Leanne M. Larson*

Leanne M. Larson

LML/hs
Enclosures

**Exhibit 2**

DOCKET NUMBER. CV05-4002637S : SUPERIOR COURT

: J.D. OF NEW LONDON

AMERIQUEST MORTGAGE COMPANY

VS. : AT NEW HAVEN

JEROME L. SIEVERS, ET AL.

MAY 4, 2005

PETER A. LACHMANN ATTORNEY AT LAW
250 WEST MAIN ST. RM. 210 • BRANFORD, CT 06405 • (203) 488-6793 • FAX (203) 488-6814 • JURIS #415416

<u>DEFENDANT'S ANSWER, SPECIAL DEFENSES TO PLAINTIFF'S COMPLAINT DATED
FEBRUARY 28, 2005</u>

<u>COUNT ONE:</u>

1.　　The authenticity of the note and mortgage are admitted. Its enforceability is denied
for reasons set forth in the Special Defenses.

2.　　The technical information regarding the note and mortgage is admitted. The
enforceability of the note and mortgage is denied for reasons set forth in the Special
Defenses.

3.　　The defendant is without knowledge or information sufficient to form a belief as to
the truth of the allegations contained in Paragraph 3 and therefore leaves the Plaintiff
to its Proof.

4.　　Paragraph 4 is admitted.

5.　　Defendants admit that they are behind several payments, but denies all allegations
regarding defaults, as the note and mortgage are not enforceable.

6.　　Paragraph 6 is admitted.

7.　　Paragraph 7 is admitted.

8.　　Defendant denies that Plaintiff is entitled to recover any relief or to recover any

Attorney's fees.

**SPECIAL DEFENSES**

**PARTIES**

9.    The Defendants are natural persons residing in Oakdale, Connecticut.

10.   Ameriquest Mortgage Company ("Ameriquest"), is a foreign corporation with a principal place of business in Orange, California.

11.   Deutsche Bank National Trust Company, as trustee, ("Deutsche Bank") claims to be the legal owner of the note and mortgage signed by Defendants.

**FIRST SPECIAL DEFENSE -TRUTH IN LENDING RESCISSION**

12.   The Consumer Credit Transaction was subject to the right of recission as described by 15 U.S.C. Sec. 1635 and Reg. Z Sec. 226.23 (C.F.R. Sec. 226.23).

13.   In the course of this consumer credit transaction, Ameriquest violated 15 U.S.C. Sec. 1635(a) and Reg. Z Sec. 226.23(b)(5) by failing to deliver to the plaintiff to copies of a notice of the right to rescind which clearly and conspicuously disclosed the date the rescission period expired.

14.   The Defendants have a continuing right to rescind the transaction until the third business day after receiving notice of the right to rescind, up to three years after consummation of the transaction.

15.   On March 21, 2005, Defendants exercised their extended right to rescind the contract by sending notice (via counsel) to Plaintiff by certified mail, which notice was received by Defendant on or about March 28, 2005. A copy is attached as Defendant's Exhibit A.

16.   Pursuant to 15 U.S.C. 1635(b) Plaintiff's security interest in the property is void as

PETER A. LACHMANN ATTORNEY AT LAW

250 WEST MAIN ST. RM. 210 • BRANFORD, CT 06405 • (203) 488-6793 • (203) 488-6814 • Juris #415416

a matter as law.

17. Deutsche Bank, as an assignee is subject to all claims and defenses that the borrower has against Ameriquest.

WHEREFORE, Defendants request that the complaint be dismissed and that they be awarded attorney's fees, litigation expenses and costs of suit.

## SECOND SPECIAL DEFENSE -CONSUMER FRAUD

18. Ameriquest violated Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Sec. 42-110a *et seq* ("CUTPA") by their concealment and suppression of the following material facts:

   a. Ameriquest representatives induced defendants into agreeing to the terms of the transaction by assuring them that they would receive $5,636.82 after disbursement. This figure was reported in the HUD Settlement statement.

   b. Ameriquest representatives suppressed material facts regarding the amount necessary to payoff a mortgage.

   c. Plaintiff misrepresented broker fees and points which they charged. The Good Faith Estimate which Ameriquest provided to Defendants a week before the closing understated their fees by $1,527.99.

19. As a result of such concealment and suppression, Defendant was entitled to rescind the loan against Ameriquest.

20. Defendant incorporates paragraph 15.

21. Deutsche Bank National Trust Company holds the Defendant's loan subject to whatever infirmities it had in the hands of Ameriquest.

WHEREFORE, Defendants request that the complaint be dismissed and that they be awarded

PETER A. LACHMANN ATTORNEY AT LAW
250 WEST MAIN ST. RM. 210 • BRANFORD, CT 06405 • (203) 488-5793 • FAX (203) 488-6814 • JURIS #415416

attorney's fees, litigation expenses and costs of suit.

## THIRD SPECIAL DEFENSE - UNCLEAN HANDS

22.     Defendant incorporates paragraphs 1-21.

23.     By increasing mortgage broker fees and overstating the amount which defendants would receive after disbursement, Ameriquest made the loan unaffordable and effectively forced Defendants into default.

24.     Ameriquest would be barred from enforcing the loan against Defendants by virtue of its unclean hands.

25.     Deutsche Bank National Trust Company holds the Defendant's loan subject to whatever infirmities it had in the hands of Ameriquest.

WHEREFORE, Defendants request that the complaint be dismissed and that they be awarded attorney's fees, litigation expenses and costs of suit.

THE DEFENDANTS,
JEROME L. SIEVERS
CHERYL M. SIEVERS


BY _____
PETER A. LACHMANN
250 WEST MAIN STREET
BRANFORD, CT 06405
No#: (203) 488-6793
Juris no. 415416

PETER A. LACHMANN ATTORNEY AT LAW
250 WEST MAIN ST. RM. 210 • BRANFORD, CT 06405 • (203) 488-6793 • FAX (203) 488-6814 • JURIS #415416

PETER A. LACHMANN ATTORNEY AT LAW
250 WEST MAIN ST. RM. 210 • BRANFORD, CT 06405 • (203) 488-0793 • FAX (203) 488-6814 • Juris #415416

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed this date, postage prepaid to all counsel of record.

Leanne M. Larson
262 Marlborough Street
Post Office Box 248
Portland, CT 06480

Peter Lachmann, Attorney

**Exhibit  3**

(6-14)

(Official Form 1) (9/97)

| FORM B1 | **United States Bankruptcy Court**<br>Connecticut District of Connecticut - New Haven Division | **Voluntary Petition** |
|---|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Sievers, Jerome L.** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>**Sievers, Cheryl M.** |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names):<br>*65-32276 asd* |
| Soc. Sec./Tax I.D. No. (if more than one, state all): | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**36 Beechwood Road**<br>**Oakdale, CT 06370** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code):<br>**36 Beechwood Road**<br>**Oakdale, CT 06370** |
| County of Residence or of the<br>Principal Place of Business:  **New London** | County of Residence or of the<br>Principal Place of Business:  **New London** |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address):<br>*209 1369851* |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

## Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** (Check any applicable box)
- ■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** (Check all boxes that apply) | **Chapter or Section of Bankruptcy Code Under Which**<br>**the Petition is Filed** (Check one box) |
|---|---|
| ■ Individual(s)  ☐ Railroad<br>☐ Corporation  ☐ Stockbroker<br>☐ Partnership  ☐ Commodity Broker<br>☐ Other_____ | ■ Chapter 7  ☐ Chapter 11  ☐ Chapter 13<br>☐ Chapter 9  ☐ Chapter 12<br>☐ Sec. 304 - Case ancillary to foreign proceeding |
| **Nature of Debts** (Check one box)<br>■ Consumer/Non-Business  ☐ Business | **Filing Fee** (Check one box)<br>■ Full Filing Fee attached<br>☐ Filing Fee to be paid in installments (Applicable to individuals only.)<br>Must attach signed application for the court's consideration<br>certifying that the debtor is unable to pay fee except in installments.<br>Rule 1006(b). See Official Form No. 3. |
| **Chapter 11 Small Business** (Check all boxes that apply)<br>☐ Debtor is a small business as defined in 11 U.S.C. § 101<br>☐ Debtor is and elects to be considered a small business under<br>11 U.S.C. § 1121(e) (Optional) | |

| **Statistical/Administrative Information** (Estimates only)<br>☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over | | |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | | |

| Estimated Assets | $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

| Estimated Debts | $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

(Official Form 1) (9/97)
FORM B1, Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>Sievers, Jerome L.<br>Sievers, Cheryl M. |
|---|---|

**Prior Bankruptcy Case Filed Within Last 6 Years** (If more than one, attach additional sheet)

| Location<br>Where Filed: – None – | Case Number: | Date Filed: |
|---|---|---|

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet)

| Name of Debtor:<br>– None – | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

**Signatures**

| **Signature(s) of Debtor(s) (Individual/Joint)**<br>I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>Signature of Debtor Jerome L. Sievers<br><br>X _____<br>Signature of Joint Debtor Cheryl M. Sievers<br><br>Telephone Number (If not represented by attorney)<br><br>5/4/05<br>Date | **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)<br>☐ Exhibit A is attached and made a part of this petition.<br><br>**Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.<br><br>X _____ 5-4-05<br>Signature of Attorney for Debtor(s)    Date<br>Daniel R. Cunningham CT08427 |
|---|---|

**Exhibit C**
Does the debtor own or have possession of any property that poses a threat of imminent and identifiable harm to public health or safety·

☐ Yes and Exhibit C is attached and made a part of this petition.
■ No

| **Signature of Attorney**<br><br>X _____<br>Signature of Attorney for Debtor(s)<br><br>Daniel R. Cunningham<br>Printed Name of Attorney for Debtor(s)<br><br>Daniel R. Cunningham  FEDERAL ID# CT08427<br>Firm Name<br>90 Pennsylvania Ave.<br>P.O. Drawer 600<br>Niantic, CT 06357-0600<br>Address<br>(860) 739-6224<br>Telephone Number<br>5 – 4 – 05<br>Date | **Signature of Non-Attorney Petition Preparer**<br><br>I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.<br><br>_____<br>Printed Name of Bankruptcy Petition Preparer<br><br>_____<br>Social Security Number<br><br>_____<br>Address<br><br>Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document: |
|---|---|

| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)<br>☐ Exhibit A is attached and made a part of this petition. | If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>X _____<br>Signature of Bankruptcy Petition Preparer |
|---|---|

| **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.<br><br>X _____ 5-4-05<br>Signature of Attorney for Debtor(s)    Date | Date<br><br>A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156. |
|---|---|

## United States Bankruptcy Court
### Connecticut District of Connecticut – New Haven Division

In re  Jerome L. Sievers,
Cheryl M. Sievers
_____,
Debtors

Case No. _____

Chapter _____ 7 _____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts from Schedules D, E, and F to determine the total amount of the debtor's liabilities.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | AMOUNTS SCHEDULED | | |
|---|---|---|---|---|---|
| | | | ASSETS | LIABILITIES | OTHER |
| A - Real Property | Yes | 1 | 220,000.00 | | |
| B - Personal Property | Yes | 3 | 28,571.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 215,690.00 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 2 | | 828.16 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 7 | | 53,517.58 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 3,834.99 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 3,507.31 |
| Total Number of Sheets of ALL Schedules | | 19 | | | |
| Total Assets | | | 248,571.00 | | |
| Total Liabilities | | | | 270,035.74 | |

In re   Jerome L. Sievers,               Case No._____
       Cheryl M. Sievers,

Debtors

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. (See Schedule D.) If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 3 br. cape, 36 Beechwood Road, Oakdale, CT | joint owners in fee simple | H | 220,000.00 | 188,500.00 |

|  |  |  |
|---|---|---|
| Sub-Total > | 220,000.00 | (Total of this page) |
| Total > | 220,000.00 |  |

  0  continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1993-1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Bankruptcy Filing System

In re    Jerome L. Sievers,  
       Cheryl M. Sievers

Case No._____

_____,  
Debtors

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | | cash on hand | J | 70.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | checking account, Bank of America | J | 250.00 |
| | | savings account, Bank of America | J | 1.00 |
| | | credit union, Numark Credit Union | W | 75.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | household goods and furnishings | J | 4,800.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | olympic pictures & Native American Art | W | 500.00 |
| 6. Wearing apparel. | | clothes | J | 700.00 |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

Sub-Total >     6,396.00  
(Total of this page)

__2__ continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Bankruptcy Filing System

In re    Jerome L. Sievers,                       Case No._____
        Cheryl M. Sievers

_____,
                                  Debtors

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 15. Accounts receivable. | | sale of air purifier | J | 175.00 |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >    175.00
(Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re    Jerome L. Sievers,
       Cheryl M. Sievers

Case No._____

Debtors

# SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers, and other vehicles and accessories. | | '93 Cougar | W | 800.00 |
| | | '04 Jeep Grand Cherokee | J | 21,000.00 |
| 24. Boats, motors, and accessories. | | canoe | J | 200.00 |
| 25. Aircraft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | X | | | |
| 27. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 28. Inventory. | X | | | |
| 29. Animals. | X | | | |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. | X | | | |

Sub-Total >    22,000.00
(Total of this page)
Total >    28,571.00

Sheet \_\_2\_\_ of \_\_2\_\_ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Bankruptcy Filing System

In re    Jerome L. Sievers,
          Cheryl M. Sievers

Case No._____

_____,

Debtors

# SCHEDULE C- PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:

*[Check one box]*

■ 11 U.S.C. §522(b)(1):   Exemptions provided in 11 U.S.C. §522(d). Note: These exemptions are available only in certain states.

☐ 11 U.S.C. §522(b)(2):   Exemptions available under applicable nonbankruptcy federal laws, state or local law where the debtor's domicile has been located for the 180 days immediately preceding the filing of the petition, or for a longer portion of the 180-day period than in any other place, and the debtor's interest as a tenant by the entirety or joint tenant to the extent the interest is exempt from process under applicable nonbankruptcy law.

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without Deducting Exemption |
|---|---|---|---|
| cash on hand | 11 U.S.C. 522(d)(5) | 70.00 | 70.00 |
| checking account, Bank of America | 11 U.S.C. 522(d)(5) | 250.00 | 250.00 |
| savings account, Bank of America | 11 U.S.C. 522(d)(5) | 1.00 | 1.00 |
| credit union, Numark Credit Union | 11 U.S.C. 522(d)(5) | 75.00 | 75.00 |
| household goods and furnishings | 11 U.S.C. 522(d)(3) | 4,800.00 | 4,800.00 |
| olympic pictures & Native American Art | 11 U.S.C. 522(d)(3) | 500.00 | 500.00 |
| clothes | 11 U.S.C. 522(d)(3) | 700.00 | 700.00 |
| sale of air purifier | 11 U.S.C. 522(d)(5) | 175.00 | 175.00 |
| '93 Cougar | 11 U.S.C. 522(d)(2) | 800.00 | 800.00 |
| canoe | 11 U.S.C. 522(d)(5) | 200.00 | 200.00 |

\_\_\_0\_\_\_ continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Bankruptcy Filing System

In re   Jerome L. Sievers,         Case No. _____
       Cheryl M. Sievers

_____,
                          Debtors

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding claims secured by property of the debtor as of the date of filing of the petition. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests. List creditors in alphabetical order to the extent practicable. If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS, INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND MARKET VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | | |
| Account No. 874008347**** <br><br> Ameriquest Mortgage Co. <br> 505 S. Main St. 6000 <br> Orange, CA 92868 | | H | | | 1st mortgage <br><br> 3 br. cape, 36 Beechwood Road, Oakdale, CT <br><br> Value $        220,000.00 | | | X | 188,500.00 | 0.00 |
| Account No. 100177***** <br><br> DiamlerChrysler Service N.A. <br> PO BOX 5055 <br> SOUTHFIELD, MI 48086 | | H | | | auto loan <br><br> '04 Jeep Grand Cherokee <br><br> Value $        21,000.00 | | | | 27,190.00 | 6,190.00 |
| Account No. <br><br><br><br> Value $ | | | | | | | | | | |
| Account No. <br><br><br><br> Value $ | | | | | | | | | | |

   0    continuation sheets attached

|  | Subtotal <br> (Total of this page) | 215,690.00 |
|---|---|---|
|  | Total <br> (Report on Summary of Schedules) | 215,690.00 |

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                      Bankruptcy Filing System

In re    **Jerome L. Sievers,**                     Case No._____
        **Cheryl M. Sievers**

_____,
                               Debtors

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name and mailing address, including zip code, and account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of this petition.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Repeat this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Extensions of credit in an involuntary case**

    Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(2).

☐ **Wages, salaries, and commissions**

    Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commisions owing to qualifying independent sales representatives up to $4000* per person earned within 90 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(3).

☐ **Contributions to employee benefit plans**

    Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Certain farmers and fishermen**

    Claims of certain farmers and fishermen, up to $4000* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(5).

☐ **Deposits by individuals**

    Claims of individuals up to $1,800* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(6).

☐ **Alimony, Maintenance, or Support**

    Claims of a spouse, former spouse, or child of the debtor for alimony, maintenance, or support, to the extent provided in 11 U.S.C. $ 507(a)(7).

■ **Taxes and Certain Other Debts Owed to Governmental Units**

    Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

    Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the captial of an insured depository institution. 11 U.S.C. § 507(a)(9).

*Amounts are subject to adjustment on April 1, 1998, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

                         **1**   continuation sheets attached

In re   Jerome L. Sievers,          Case No._____
        Cheryl M. Sievers
                                          ,
                              Debtors

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

(Continuation Sheet)          Taxes and Certain Other Debts
                              Owed to Governmental Units

                              TYPE OF PRIORITY

| CREDITOR'S NAME AND MAILING ADDRESS, INCLUDING ZIP CODE | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | TOTAL AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| Account No. 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<br><br>Department of Revenue Services<br>PO Box 5088<br>Hartford, CT 06102-5088 | H | | 2003<br><br>Ct. income tax | | | | 828.16 | 828.16 |
| Account No. | | | | | | | | |
| Account No. | | | | | | | | |
| Account No. | | | | | | | | |
| Account No. | | | | | | | | |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

Subtotal
(Total of this page)        828.16

Total
(Report on Summary of Schedules)      828.16

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Bankruptcy Filing System

In re    Jerome L. Sievers,           Case No._____

         Cheryl M. Sievers

                                                      Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | |
| Account No. 306056333 | | | | | | | | | |
| AmSher Collection Services, Inc. 2090 Columbiana Rd. Ste. 3000 Birmingham, AL 35216-2161 | | H | | | purchases | | | | 118.56 |
| Account No. 111534942 | | | | | | | | | |
| AUSA Check Recovery PO Box 55841 Boston, MA 02205-5841 | | H | | | purchases | | | | 20.00 |
| Account No. 4888 6031 1576 2890 | | | | | | | | | |
| Bank of America PO Box 53132 Phoenix, AZ 85072-3132 | | H | | | purchases | | | | 2,962.24 |
| Account No. 292481 | | | | | | | | | |
| Best Finance, inc. P.O. Box 9 Mosheim, Tn 37818 | | H | | | purchsese | | | | 3,000.00 |
| | | | | | | Subtotal (Total of this page) | | | 6,100.80 |

  6__ continuation sheets attached

In re    Jerome L. Sievers,           Case No._____
        Cheryl M. Sievers

_____,
                           Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
## (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. 40993979 | | | | | | | | | |
| Certegy Payment Recovery Services, Inc. 11601 Roosevelt Boulevard St. Petersburg, FL 33716 | | H | | | purchases | | | | 179.00 |
| Account No. 940086 | | | | | | | | | |
| Chesterfield Fire Company PO Box 503 East Berlin, CT 06023 | | H | | | emergency services | | | | 424.00 |
| Account No. 67070124-0336602 | | | | | | | | | |
| CitiFinancial PO BOX 8020 South Hackensack, NJ 07606-8020 | | H | | | purchases | | | | 14,208.15 |
| Account No. 6032-5903-1208-2570 | | | | | | | | | |
| CitiFinancial Retail Services PO BOX 8019 South Hackensack NJ 07606-8019 | | H | | | purchases | | | | 7,429.31 |
| Account No. 3001294455 | | | | | | | | | |
| DDLC 410 Bank Street New London, CT 06320 | | H | | | purchases | | | | 494.27 |

Sheet no. __1__ of __6__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal       22,734.73
(Total of this page)

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re    Jerome L. Sievers,                       Case No._____
       Cheryl M. Sievers

                               Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
## (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | |
| Account No. 5406-3300-0746-9000 <br><br> Household Credit Services <br> PO Box 17051 <br> Baltimore, MD 21297-1051 | | H | | purchases | | | | 987.90 |
| Account No. 54063300**** <br><br> HSBC Bank NV FKA HHLB <br> PO Box 98706 <br> Las Vegas, NV 89193 | | H | | purchases | | | | 987.00 |
| Account No. Jerome L. Sievers <br><br> Lawrence & Memorial Hospital <br> 365 Montauk Ave. <br> New London, CT 06320 | | H | | medical bills | | | | 3,781.00 |
| Account No. 42-050-597-509-1 20 <br><br> MACY'S <br> PO BOX 4583 <br> Carol Stream IL 60197-4583 | | H | | purchases | | | | 201.13 |
| Account No. 37470 <br><br> Neurorlogy Associates, LLC <br> One Towne Park Plaza <br> Norwich,CT 06360 | | H | | purchases | | | | 165.41 |

Sheet no. __2__ of __6__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)      6,122.44

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                           Bankruptcy Filing System

In re　Jerome L. Sievers,　　　　　　　　　　Case No._____
　　　Cheryl M. Sievers
　　　　　　　　　　　　　　　　　　　　　　,
　　　　　　　　　　　　　Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
| | | H W | J | C | | | | | |
| Account No. N1605041001610 | | | | | purchases | | | | |
| North Shore Agency, Inc. 751 Summa Ave. Westbury, NY 11590 | | W | | | | | | | 30.87 |
| Account No. 370986237 | | | | | purchases | | | | |
| Northeast Utilities PO BOX 2957 Hartford CT 06104-2957 | | H | | | | | | | 1,228.31 |
| Account No. 196620002 | | | | | purchases | | | | |
| Numark Credit Union PO BOX 2729 HJoliet, IL 60434-2729 | | H | | | | | | | 1,466.55 |
| Account No. 4465-6112-0051-9365 | | | | | purchases | | | | |
| Providian Processing Services PO BOX 660487 Dallas TX 75266-0487 | | H | | | | | | | 10,525.68 |
| Account No. 024364984 | | | | | medical services | | | | |
| Quest Diagnostics PO Box 64053 Baltimor, MD 21264-4053 | | H | | | | | | | 81.11 |

Sheet no. __3__ of __6__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal　　　　　　13,332.52
(Total of this page)

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re  Jerome L. Sievers,
      Cheryl M. Sievers

Case No._____

_____
Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
## (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| **Account No. 024337091**<br><br>Quest Diagnostics<br>PO Box 64053<br>Baltimor, MD 21264-4053 | | H | medical services | | | | 176.62 |
| **Account No. 023978437**<br><br>Quest Diagnostics<br>PO Box 64053<br>Baltimor, MD 21264-4053 | | H | medial services | | | | 61.30 |
| **Account No. 023938133**<br><br>Quest Diagnostics<br>PO Box 64053<br>Baltimor, MD 21264-4053 | | H | medical services | | | | 11.80 |
| **Account No. 024364971**<br><br>Quest Diagnostics<br>PO Box 64053<br>Baltimor, MD 21264-4053 | | H | medical services | | | | 81.11 |
| **Account No. 01641961**<br><br>Rossi Law Offices, Ltd.<br>28 Thurber Blvd.<br>PO Box 17339<br>Smithfield, RI 02917 | | H | 1991<br>motor vehicle taxes | | | | 81.98 |

Sheet no. __4__ of __6__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

412.81

In re    Jerome L. Sievers,               Case No._____
        Cheryl M. Sievers
_____
                       Debtors

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. 01642438<br><br>Rossi Law Offices, Ltd.<br>28 Thurber Blvd.<br>PO Box 17339<br>Smithfield, RI 02917 | | H | 1993 / 1994<br><br>motor vehicle taxes | | | | 686.96 |
| Account No. 01642439<br><br>Rossi Law Offices, Ltd.<br>28 Thurber Blvd.<br>PO Box 17339<br>Smithfield, RI 02917 | | H | 1993<br><br>motor vehicle taxes | | | | 22.86 |
| Account No. 4856170 RPM004<br><br>RPM<br>PO Box 768<br>Bothell, WA 98041-0768 | | H | purchases | | | | 1,063.74 |
| Account No. 860 367-0078 405<br><br>SBC<br>PO BOX 5076<br>Saginaw, MI 48605-5076 | | H | purchases | | | | 735.26 |
| Account No. 11 50106 51785 9<br><br>Sears<br>PO Box 182149<br>Columbus, OH 43218-2149 | | H | purchases | | | | 269.51 |

Sheet no. __5__ of __6__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    2,778.33

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                              Bankruptcy Filing System

In re  Jerome L. Sievers,
Cheryl M. Sievers

Case No._____

_____,
Debtors

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
## (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H/W | J/C | | | | | |
| **Account No. 0522987866-0** SPRINT PO BOX 1769 Newark NJ 07101-4769 | | H | | puchases | | | | 1,111.35 |
| **Account No. 415431653** SPRINT PO BOX 88026 Chicago IL 60680-1206 | | H | | purchases | | | | 37.60 |
| **Account No. 35042873504574** TRS Recovery Services, Inc. P.O. Box 60012 City of Industry, CA 91719-0012 | | H | | purchases | | | | 20.00 |
| **Account No. Jerome L. Sievers** William W. Backus Hospital 326 Washington St. Norwich, CT 06360 | | H | | medical services | | | | 867.00 |
| **Account No.** | | | | | | | | |

Sheet no. __6__ of __6__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal (Total of this page) | 2,035.95 |
| Total (Report on Summary of Schedules) | 53,517.58 |

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re   Jerome L. Sievers,                         Case No._____
        Cheryl M. Sievers
                                        _____,
                                              Debtors

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests.
State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease.
Provide the names and complete mailing addresses of all other parties to each lease or contract described.

NOTE:  A party listed on this schedule will not receive notice of the filing of this case unless the party is also scheduled in the appropriate
       schedule of creditors.

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
|  |  |

  0   continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1993,1995  Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re    Jerome L. Sievers,
        Cheryl M. Sievers

Case No._____

_____,
Debtors

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. In community property states, a married debtor not filing a joint case should report the name and address of the nondebtor spouse on this schedule. Include all names used by the nondebtor spouse during the six years immediately preceding the commencement of this case.

■ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| | |

  0   continuation sheets attached to Schedule of Codebtors

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re   Jerome L. Sievers,             Case No._____
        Cheryl M. Sievers
                                            ,
                              Debtors

# SCHEDULE I — CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 12 or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| | NAMES<br>    None. | AGE | RELATIONSHIP |
| Married | | | |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | disabled | unemployed |
| Name of Employer | | |
| How long employed | | |
| Address of Employer | | |

| INCOME: (Estimate of average monthly income) | DEBTOR | SPOUSE |
|---|---|---|
| Current monthly gross wages, salary, and commissions (pro rate if not paid monthly) | $ 0.00 | $ 0.00 |
| Estimated monthly overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| SUBTOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| b. Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| c. Union dues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| d. Other (Specify)_____ . . . . . . . . | $ 0.00 | $ 0.00 |
| SUBTOTAL OF PAYROLL DEDUCTIONS . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| TOTAL NET MONTHLY TAKE HOME PAY . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| Regular income from operation of business or profession or farm (attach detailed statement) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| Income from real property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| Interest and dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| Social security or other government assistance (Specify) _____ . . . . . . . . . . . . | $ 1,226.33 | $ 1,928.33 |
|     unemployment compensation_____ . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| Pension or retirement income . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| Other monthly income (Specify) child support_____ . . . . . . . . . . . . | $ 680.33 | $ 0.00 |
| _____ . . . . . . . . . . . . | $ 0.00 | $ 0.00 |
| TOTAL MONTHLY INCOME | $ 1,906.66 | $ 1,928.33 |

TOTAL COMBINED MONTHLY INCOME   $____3,834.99____    (Report also on Summary of Schedules)

Describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document:

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re    Jerome L. Sievers,                                    Case No._____
         Cheryl M. Sievers
_____,
                                        Debtors

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | |
|---|---|
| Rent or home mortgage payment (include lot rented for mobile home) | $ 1,232.14 |
| Are real estate taxes included?    Yes __x__    No_____ | |
| Is property insurance included?    Yes_____    No__x__ | |
| Utilities: Electricity and heating fuel | $ 200.00 |
|     Water and sewer | $ 40.00 |
|     Telephone | $ 185.00 |
|     Other____cable t.v._____ | $ 80.00 |
| Home maintenance (repairs and upkeep) | $ 50.00 |
| Food | $ 325.00 |
| Clothing | $ 200.00 |
| Laundry and dry cleaning | $ 10.00 |
| Medical and dental expenses | $ 50.00 |
| Transportation (not including car payments) | $ 216.67 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | $ 65.00 |
| Charitable contributions | $ 0.00 |
| Insurance (not deducted from wages or included in home mortgage payments) | |
|     Homeowner's or renter's | $ 47.50 |
|     Life | $ 0.00 |
|     Health | $ 0.00 |
|     Auto | $ 116.00 |
|     Other_____ | $ 0.00 |
| Taxes (not deducted from wages or included in home mortgage payments) | |
|     (Specify)_____ | $ 190.00 |
| Installment payments: (In chapter 12 and 13 cases, do not list payments to be included in the plan.) | |
|     Auto | $ 500.00 |
|     Other_____ | $ 0.00 |
|     Other_____ | $ 0.00 |
| Alimony, maintenance, and support paid to others | $ 0.00 |
| Payments for support of additional dependents not living at your home | $ 0.00 |
| Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ 0.00 |
| Other_____ | $ 0.00 |
| TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | $ 3,507.31 |

[FOR CHAPTER 12 AND 13 DEBTORS ONLY]

Provide the information requested below, including whether plan payments are to be made bi-weekly, monthly, annually, or at some other regular interval.

| | |
|---|---|
| A. Total projected monthly income | $ N/A |
| B. Total projected monthly expenses | $ N/A |
| C. Excess income (A minus B) | $ N/A |
| D. Total amount to be paid into plan each _____ | $ N/A |
|         (interval) | |

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Bankruptcy Filing System

**United States Bankruptcy Court**

Connecticut District of Connecticut – New Haven Division

In re  Jerome L. Sievers,
Cheryl M. Sievers

Debtors

Case No._____

Chapter_____ 7

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of **21** sheets *[total shown on summary page plus 1]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date ____5/4/05____

Signature _____
Jerome L. Sievers
Debtor

Date ____5/4/05____

Signature _____
Cheryl M. Sievers
Joint Debtor

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C  §§152 and 3571.

# United States Bankruptcy Court
## Connecticut District of Connecticut – New Haven Division

In re  Jerome L. Sievers,
Cheryl M. Sievers

Case No._____

Debtors

Chapter_____7_____

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.

Questions 1 - 15 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 16 - 21. **If the answer to any question is "None," or the question is not applicable, mark the box labeled "None".** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the two years immediately preceding the filing of the this bankruptcy case, any of the following: an officer, director, managing executive, or person in control of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any person in control of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

**1. Income from employment or operation of business**

None ☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE (if more than one) |
|---|---|
| $30,790.00 | Mohegan Sun, husband, 2003 |
| $40,177.00 | Mohegan Sun, wife, 2003 |
| $12,946.00 | Mohegan Sun, husband, 2004 |
| $15,829.00 | Mohegan Sun, wife, 2004 |

**2. Income other than from employment or operation of business**

None ☐

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE (if more than one) |
|---|---|
| $4,787.00 | unemployment comp., wife, 2004 |
| $7,098.00 | unemployment compensation, husband, 2004 |
| $5,141.00 | unemployment comp., husband, YTD |
| $6,675.00 | unemployment comp, wife, YTD |

**3. Payments to creditors**

None ■ a. List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within **90 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None ■ b. List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits, executions, garnishments and attachments**

None ■ a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

None ■ b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**5. Repossessions, foreclosures and returns**

None ■ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None ■ a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT, CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

**7. Gifts**

None ■ List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

**8. Losses**

None ■

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

**9. Payments related to debt counseling or bankruptcy**

None ☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Daniel R. Cunningham<br>90 Penn. Ave.<br>Niantic, CT 06357 | 2/15/05 | $900.00 |

**10. Other transfers**

None ■

a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

**11. Closed financial accounts**

None ■

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE AND NUMBER OF ACCOUNT AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12. Safe deposit boxes**

None ■

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None ■

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None ■

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None   If the debtor has moved within the **two years** immediately preceding the commencement of this case, list all premises which the debtor occupied
☐     during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either
      spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---------|-----------|--------------------|
| 77 Branford Ave. Groton, CT 06340 | | prior to 04/2003 |

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date_____5/4/05_____

Signature_____
Jerome L. Sievers
Debtor

Date_____5/4/05_____

Signature_____
Cheryl M. Sievers
Joint Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C §§152 and 3571.

# United States Bankruptcy Court
## Connecticut District of Connecticut – New Haven Division

In re    Jerome L. Sievers,
      Cheryl M. Sievers

Case No._____

Debtors

Chapter _____ 7 _____

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

1. I have filed a schedule of assets and liabilities which includes consumer debts secured by property of the estate.

2. I intend to do the following with respect to the property of the estate which secures those consumer debts:

     *a. Property to Be Surrendered.*

Description of Property            Creditor's name

       **NONE.**

     *b. Property to Be Retained.*

[*Check any applicable statement.*]

| Description of property | Creditor's name | Property is claimed as exempt | Property will be redeemed pursuant to 11 U.S.C. § 722 | Debt will be reaffirmed pursuant to 11 U.S.C. § 524(c) |
|---|---|---|---|---|
| 1. 3 br. cape, 36 Beechwood Road, Oakdale, CT | Ameriquest Mortgage Co. | | | Debtor will retain collateral and continue to make regular payments. |
| 2. '04 Jeep Grand Cherokee | DiamlerChrysler Service N.A. | | | Debtor will retain collateral and continue to make regular payments. |

Date__5/4/05__

Signature_____
Jerome L. Sievers
Debtor

Date__5/4/05__

Signature_____
Cheryl M. Sievers
Joint Debtor

## United States Bankruptcy Court

Connecticut District of Connecticut – New Haven Division

In re  Jerome L. Sievers,
Cheryl M. Sievers

Case No. _____

Chapter _____ 7 _____

Debtors

# COMPENSATION STATEMENT OF ATTORNEY FOR THE DEBTOR(S)

1. The undersigned is the attorney for the debtor(s) in this case.

2. The total compensation promised the undersigned by the debtor(s) for the services rendered or to be rendered in connection with this case is $ 1,000.00 ; the only compensation which has been received from the debtor(s) or any other person on said account is $ 900.00 ; the balance due thereon is $ 100.00 ; and the source of compensation paid or promised, if a source other than the debtor(s), is:

3. The undersigned further states that no understanding or agreement exists for a division of fees or compensation between the undersigned and any other person or entity, except any agreement he may have for the sharing of his compensation with a member or members or regular associate of his law firm and except:

5-4-05

Date

_Attorney for Debtor(s):_
    Daniel R. Cunningham
    Daniel R. Cunningham    FEDERAL ID# CT08427
    90 Pennsylvania Ave.
    P.O. Drawer 600
    Niantic, CT 06357-0600
    (860) 739-6224

_[Required by Rule 2016(b) to be filed and transmitted to the United States Trustee within 15 days after the order for relief._
_(Not to be filed in lieu of an Application for Compensation which may be filed pursuant to Bankruptcy Rule 2016.)]_

COMPENSATION STATEMENT OF ATTORNEY FOR THE DEBTOR(S)

Copyright (c) 1993,1995 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

AUSA Check Recovery
PO Box 55841
Boston, MA 02205-5841


AmSher Collection Services, Inc.
2090 Columbiana Rd. Ste. 3000
Birmingham, AL 35216-2161


Ameriquest Mortgage Co.
505 S. Main  St. 6000
Orange, CA 92868


Bank of America
PO Box 53132
Phoenix, AZ 85072-3132


Best Finance, inc.
P.O. Box 9
Mosheim, Tn 37818


Certegy Payment Recovery Services, Inc.
11601 Roosevelt Boulevard
St. Petersburg, FL 33716


Chesterfield Fire Company
PO Box 503
East Berlin, CT 06023


CitiFinancial
PO BOX 8020
South Hackensack, NJ 07606-8020


CitiFinancial Retail Services
PO BOX 8019
South Hackansack NJ 07606-8019


DDLC
410 Bank Street
New London, CT 06320


Department of Revenue Services
PO Box 5088
Hartford, CT 06102-5088

DiamlerChrysler Service N.A.
PO BOX 5055
SOUTHFIELD, MI 48086

HSBC Bank NV FKA HHLB
PO Box 98706
Las Vegas, NV 89193

Household Credit Services
PO Box 17051
Baltimore, MD 21297-1051

Lawrence & Memorial Hospital
365 Montauk Ave.
New London, CT 06320

MACY'S
PO BOX 4583
Carol Stream IL 60197-4583

Medconn Collection Agency, LLC
PO Box 359
Rocky Hill, CT 06067-0359

Neurorlogy Associates, LLC
One Towne Park Plaza
Norwich,CT 06360

North Shore Agency, Inc.
751 Summa Ave.
Westbury, NY 11590

Northeast Utilities
PO BOX 2957
Hartford CT 06104-2957

Numark Credit Union
PO BOX 2729
HJoliet, IL 60434-2729

Providian Processing Services
PO BOX 660487
Dallas TX 75266-0487

Quest Diagnostics
PO Box  64053
Baltimor, MD 21264-4053


RPM
PO Box 768
Bothell, WA 98041-0768


Rossi Law Offices, Ltd.
28 Thurber Blvd.
PO Box 17339
Smithfield, RI 02917


SBC
PO BOX 5076
Saginaw, MI 48605-5076


SPRINT
PO BOX 1769
Newark NJ 07101-4769


SPRINT
PO BOX 88026
Chicago IL 60680-1206


Sears
PO Box 182149
Columbus, OH 43218-2149


TRS Recovery Services, Inc.
P.O. Box 60012
City of Industry, CA 91719-0012


William W. Backus Hospital
326 Washington St.
Norwich, CT 06360

## CERTIFICATE OF SERVICE

I, Bernard E, LeSage, hereby certify that on this 30th day of March 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Bernard E. LeSage _____

3