**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: <br> *Geis, et al. v. Ameriquest Mortgage Co., et al.*, <br> Case No. 06-01716 (N.D. Ill.) | |

**DEFENDANT AMC MORTGAGE SERVICES, INC.'S
ANSWER TO PLAINTIFFS' COMPLAINT**

**PRELIMINARY STATEMENT**

By its November 7, 2006 Memorandum Opinion and Order [Docket No. 284], the Court brought much needed organization and management to this MDL Proceeding. Specifically, the Court identified three distinct types of cases: (1) borrower class actions, (2) non-borrower class actions under the Fair Credit Reporting Act ("FCRA"), and (3) individual, non-class suits. [*Id.* at 6.] It ordered that there be two master class complaints, one on behalf of all borrowers, and one on behalf of all non-borrower FCRA claimants. [*Id.*] It also recognized that some individual plaintiffs would likely opt-out of the master class complaints for various reasons [*Id.* at 7] and ordered the creation of an Individual Claims Steering Committee to promote judicial economy and provide the individual plaintiffs with the benefits of coordinated efforts. The Steering Committee is to "help coordinate the individual plaintiffs into a cooperative entity that can then enjoy the economies of scale, including broader access to discovery and streamlined briefing." [*Id.* at 11.]

On December 6, 2006, plaintiffs filed two master class complaints on behalf of borrowers and non-borrowers. [Docket Nos. 323, 325.] These complaints purported to embrace every claim of every plaintiff in this MDL Proceeding. On January 19, 2007, Defendants filed motions

- 1 -

to dismiss these complaints or, in the alternative, for more definite statements.  [Docket Nos. 386, 391.]

In light of the Court's orders designed to streamline this MDL Proceeding, Defendant Ameriquest Mortgage Company does not perceive that this Court anticipated (or desires) a deluge of redundant legal briefings between the master class complaints and the individual plaintiffs who elected to opt-out.  Rather than require the simultaneous briefing of the same legal issues in the individual matters and the master class complaints, Defendant Ameriquest Mortgage Company does not intend to waive those applicable arguments raised in the motions to dismiss filed on January 19, 2007 and hereby incorporates such arguments by reference.  [Docket Nos. 386, 391.]  Defendant expressly reserves the right to move to have any relevant rulings made in connection with the master class complaints applied to the instant action.  This will facilitate judicial economy, ease the burden on the parties and advance the Court's stated goal of "streamlined briefing" by permitting the parties to litigate the sufficiency (or lack thereof) of the legal issues raised in this MDL Proceeding through the two master class complaints, as compared with more than 200 individual actions Co-Lead Counsel did not consolidate into the master class complaints.

## ANSWER

Defendant AMC Mortgage Services, Inc. ("Defendant"), by and through its attorneys, answers Plaintiffs Douglas and Evelyn Geis' ("Plaintiffs") Complaint as follows.

1.      Plaintiffs Douglas and Evelyn Geis charge defendants with violation of the Truth in Lending Act and failure to honor a valid rescission request in violation of 15 U.S.C. §§ 1635.

**ANSWER:    Defendant admits that Plaintiffs have filed a lawsuit against it.  Defendant denies all remaining allegations in Paragraph 1.  Defendant specifically denies that it violated the Truth in Lending Act and 15 U.S.C. §§ 1635.**

2.      This Court has jurisdiction pursuant to Title 28 of the United States Code, Section 1331 and 1337 because plaintiffs' claim arises under federal law.

**ANSWER:** **Defendant does not contest subject matter jurisdiction. Defendant denies the remaining allegations in Paragraph 2.**

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

**ANSWER:** **Defendant denies that venue is proper in the Northern District of Illinois pursuant to the Multi-District Litigation panel's Transfer Order based on Federal and State Constitutional grounds, including but not limited to Due Process and Equal Protection under the law. Plaintiff is a resident of Nevada and the conduct complained of is alleged to have occurred in Nevada. Defendant denies any remaining allegations in Paragraph 3.**

4. Defendant Ameriquest Mortgage Company is a leading sub-prime mortgage lender. The company's main offices are in Orange, California, but it does business in this district. Defendant AMC Mortgage Services, Inc. services Ameriquest mortgages and has the right to receive payments thereunder and does business in this district. Defendant Deutsche Bank National Trust Company is the owner of plaintiff's mortgage and also does business in this district.

**ANSWER:** **Defendant objects to the term "subprime" as vague. Defendant is without knowledge or information sufficient to form a belief as to the truth of the intended characterization of the term "subprime." Defendant admits Ameriquest Mortgage Company's main offices are in Orange, California. Defendant admits AMC Mortgage Services, Inc. services Ameriquest mortgages. Defendant denies any remaining allegations in Paragraph 4.**

5. Plaintiffs Douglas and Evelyn Geis are residents of Nevada.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

## BACKGROUND

6. In or about April 2005, plaintiffs Douglas and Evelyn Geis decided to refinance their home mortgage to obtain money to improve their property and pay off personal debts.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

7. Mr. Geis spoke repeatedly by telephone to a representative of Ameriquest, who made a number of statements that turned out not to be true. For example, the Ameriquest representative originally said their interest rate would be 8.1% (the eventual APR was 10.383%), that taxes and insurance would be included in the house payments and that the Geises would be able to refinance six months later at a lower rate. The Ameriquest representative also advised Mr. Geis to stop paying his other creditors since they would be taken care of pursuant to the refinancing.

**ANSWER:** **Denied.**

8. On Friday, April 15, 2005, Ameriquest told Mr. and Mrs. Geis to go to a local Denny's restaurant. There they met with a notary public sent by Ameriquest who had a large stack of papers, which the notary had Mr. and Mrs. Geis sign. One of those documents said that the Geises' right to cancel expired on April 18, 2005. See Exhibit A. Another document said that Mr. and Mrs. Geis would forfeit $250 if they tried to back out of the deal. See Exhibit B.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

9. According to the Ameriquest CLOSING AGENT AFFIDAVIT, a copy of which is attached as Exhibit C, the Geis refinancing transaction closed on April 15, 2005. A copy of the final TRUTH-IN-LENDING DISCLOSURE STATEMENT is attached hereto as Exhibit D. A copy of the BORROWER'S ACKNOWLEDGEMENT OF FINAL LOAN TERMS is attached

hereto as Exhibit E. A (reduced in size) copy of the Settlement Statement is attached hereto as Exhibit F. A copy of the first two pages of the ADJUSTABLE RATE NOTE is attached hereto as Exhibit G. According to these documents, the initial interest rate on the Geis loan was 8.4% but the interest rate could go up to as high as 14.4%. Mr. and Mrs. Geis paid $15,349.46 in settlement charges to obtain this loan.

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent an answer is required, Defendant admits that Plaintiffs entered into a loan agreement with Ameriquest Mortgage Company. Defendant denies that these documents constitute the entire loan file and that these documents constitute the fully integrated loan agreement with Plaintiffs.**

10. A few days later, on or about April 19, 2005, Mr. and Mrs. Geis met again at the Denny's with the notary to sign some more documents. After the signing, the notary kept all the documents. The notary did not give any copies to Mr. and Mrs. Geis.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in this first sentence of this paragraph and on that basis denies such allegations. Defendant denies the remainder of this paragraph.**

11. Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

**ANSWER:** **Denied.**

## REGULATORY FRAMEWORK

12. The Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

- 5 -

13. Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. §§ 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. §§ 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. §§ 226.18, 226.22, 226.5.

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

14. Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. §§ 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. §§ 226.18(g)(1).

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

15. The Truth in Lending Act confers additional rights on homeowners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction … in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms

> required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. §§ 1635(a).

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

16. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. §§ 1635(b).

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

17. To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose; in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. §§ 1635(a).

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

18. Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. §§ 226.23(a)(1).

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

19. The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose" the consumer's rescission rights. See 12 C.F.R. §§ 226.23(b)(1)

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

20. More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in §§ 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (ii) The consumer's right to rescind the transaction.
>
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
> (iv) The effects of rescission, as described in paragraph (d) of this section.
>
> (v) The date the rescission period expires.

12 C.F.R. §§ 226.23(b)(1).

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

21. Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

> When a consumer rescinds a transaction; the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. §§ 226.23(d)(l).

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

22. Subparagraph (d)(2) states:

> Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. §§ 226.23(d)(2).

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

23. The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. The commentary provides:

> The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded. "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

## DEFECTIVE GEIS DISCLOSURES

24. Ameriquest's rescission disclosures to Mr. and Mrs. Geis were defective in a number of respects. First, the date on the notice of cancellation was wrong. The cancellation period did not end on April 18, 2005 and it was a violation of Regulation Z to say that it did.

**ANSWER:** **Denied.**

25. The statute provides that "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later ...." 15 U.S.C. §§ 1635(a).

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

26. Mr. and Mrs. Geis signed additional TILA documents on or about April 19, 2005, but they were not given copies of those documents. Hence those material disclosures (whatever they were) were not delivered to the Geises. See 12 C.F.R. §§ 226.17(a)(1) ("The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing in a form that the consumer may keep"). Because the material disclosures have not yet been delivered, the rescission period did not expire.

**ANSWER:** **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Defendant denies all remaining allegations of the paragraph.**

27. Indeed, the April 18 expiration date would have been wrong even if the required documents had been delivered to plaintiffs on April 15, 2005. April 15, 2005 was a Friday. The statute gives borrowers three business days to rescind. Sunday, April 17, 2005, was not a business day. If the disclosures had been delivered on April 15, 2005; then the notice should

have said the right to rescind expired on April 19, 2005. The April 18 representation in the notice violated 12 C.F.R. §§ 226.23(b)(1)(v).

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

28. Ameriquest also misrepresented the effects of rescission in violation of 12 C.F.R. §§ 226.23(b)(1)(iv). Ameriquest charged Mr. and Mrs. Geis a $250 appraisal fee deposit and stated; in one document, that "[t]he deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal." The Ameriquest representative also told Mr. Geis that the appraisal deposit was not refundable if they decided not to go through with the deal.

**ANSWER:** **Denied.**

29. This is inconsistent with plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. §§ 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. §§ 226.23(b)(1)(iv).

**ANSWER:** **Denied.**

30. The disclosures were also deficient because Ameriquest did not deliver to Mr. and Mrs. Geis the requisite number of copies of their Notice of Right to Cancel forms.

**ANSWER:** **Denied.**

### TILA RIGHTS AND REMEDIES

31. One remedy for disclosure violations of 15 U.S.C. §§ 1635 is statutory damages pursuant to 15 U.S.C. §§ 1640. A plaintiff in a TILA case need not prove that he or she suffered actual monetary damages in order to recover statutory damages. Nor is it necessary to show that

- 11 -

the consumer was actually misled or deceived. The Truth in Lending Act allows a monetary recovery even if the disclosure violation caused the borrower no harm. In an individual mortgage case, statutory damages are twice the finance charge, provided however that the damages may not be less than $200 nor more than $2,000. Plaintiffs are entitled to appropriate statutory damages from Ameriquest.

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

32. Statutory damages are not the only remedy. Under the Truth in Lending Act, if the rescission disclosures or TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R §§ 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

**ANSWER:** **Because this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff.**

33. Ameriquest's rescission and TILA disclosures were defective. Accordingly, Mr. and Mrs. Geis sent a rescission notice to Ameriquest and to Deutsche Bank National Trust Company, the current owner of their mortgage, on October 20, 2005. See Exhibit H.

**ANSWER:** **The first sentence of this paragraph states conclusions of law; therefore no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. The document speaks for itself; therefore, no answer is required. To the extent an answer is required, Defendant denies any liability to Plaintiffs. Defendant denies that Plaintiff properly sought to rescind the loan and denies that Plaintiff has any right to rescind the loan. Defendant denies the remaining allegations of Paragraph 33.**

34. Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiffs' home and paid back to plaintiffs any money or property that plaintiffs have paid to them in connection with the loan. See 12 C.F.R. §§ 226.23(d)(2). Defendants have not done either.

**ANSWER:** **To the extent the first sentence of this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Defendant denies that Plaintiff properly sought to rescind the loan and denies that Plaintiff has any right to rescind the loan. Defendant admits the loan has not been rescinded. Defendant denies the remaining allegations of this paragraph.**

35. Defendants' failure to honor the rescission request is a separate violation of the Truth in Lending Act. Plaintiffs are entitled to rescission plus statutory damages and other relief.

**ANSWER:** **To the extent the first sentence of this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Defendant denies that Plaintiff properly sought to rescind the loan and denies that Plaintiff has any right to rescind the loan. Defendant admits the loan has not been rescinded. Defendant denies the remaining allegations of this paragraph.**

## AFFIRMATIVE DEFENSES

1. Plaintiffs' purported cause of action fails to state a claim upon which relief may be granted.

2. Plaintiffs' claims are barred by the applicable statute of limitations.

3. Plaintiffs' claims are barred in whole or in part under the doctrine of estoppel, laches and/or waiver.

4. Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands.

5. Plaintiffs' claims are barred in whole or in part, on the ground that if Plaintiffs were damaged in any manner whatsoever, such damage, if any, was a direct and proximate result of the intervening and superseding actions on the part of other parties and/or persons or entities and not Defendant, and any such intervening or superseding action of said parties and/or persons or entities bars Plaintiffs' recovery.

6. Plaintiffs' claims are barred in whole or in part, because Defendant has committed no act or omission causing any damage to Plaintiffs.

7. Plaintiffs' claims are barred in whole or in part, because Plaintiffs would be unjustly enriched if allowed to recover on the Complaint.

8. Defendant alleges that no officer, director, or managing agent of Defendant ratified the conduct alleged by Plaintiffs.

9. Plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel.

10. Plaintiffs' claims are barred in whole or in part, because Plaintiffs misrepresented their credit, income or other information association with obtaining the loan.

11. Defendant objects to venue in the Northern District of Illinois based on Federal and State Constitutional grounds, including but not limited to Due Process and Equal Protection under the law.  Plaintiff is a resident of Nevada and the conduct complained of is alleged to have occurred in Nevada.

12. Plaintiffs' claims are barred or limited because pursuant to 15 U.S.C. § 1640(c) the violations alleged were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

13. Plaintiffs are not entitled to rescind their mortgage under TILA, or to obtain any statutory damages for failure to rescind, because no alleged disclosure error is apparent on the face of the disclosure documents.

14. If it should be deemed that Plaintiffs are entitled to rescission, any obligation on the part of the holder of the loan to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiffs' reimbursement or other return to the holder of the loan of all funds disbursed on Plaintiffs' behalf in connection with the subject mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other

- 15 -

rules of law or equity. Any obligation on the part of the holder of the loan to rescind and to release any lien is conditioned upon Plaintiffs reimbursing or otherwise returning all funds disbursed on their behalf to the holder of the loan in connection with the subject loan, less any finance charges.

15. Plaintiffs are not entitled to rescind their mortgage under TILA, or to obtain any statutory damages for failure to rescind, because no alleged disclosure error is apparent on the face of the disclosure documents.

16. Plaintiffs' claims under the Truth in Lending Act are barred against AMC Mortgage Services, Inc., as AMC is an alleged servicer of Plaintiffs' loan and not a creditor or assignee.

17. Defendant alleges that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses. Defendant reserves its right to file an amended answer asserting additional defenses, and/or to file a counter or cross-complaint in the event that discovery indicates that either is appropriate.

///

///

///

WHEREFORE, Defendant AMC Mortgage Services, Inc. requests that this Court enter judgment in its favor and against Plaintiffs Douglas and Evelyn Geis, award AMC Mortgage Services, Inc. its costs, and provide such further and additional relief as it deems just and appropriate.

Respectfully submitted,

DATED:  March 30, 2007 By:  /s/ Bernard E. LeSage
*Attorneys for AMC Mortgage Services, Inc.*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

**CERTIFICATE OF SERVICE**

  I, Bernard E, LeSage, hereby certify that on this 30th day of March 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                By:   /s/ Bernard E. LeSage

BN 1183476v1