**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO.<br>MORTGAGE LENDING PRACTICES<br>LITIGATION | )<br>)<br>)<br>) |
| | )     No. 05-CV-7097 |
| RE CONSOLIDATED CLASS ACTION<br>COMPLAINT<br>FOR CLAIMS OF NON-BORROWERS | )<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Court Judge:

Defendants Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town &

Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services,

Inc.; and Ameriquest Mortgage Securities, Inc. move to dismiss the borrower plaintiffs'

Consolidated Class Action Complaint in its entirety.  Defendants contend that: a) plaintiffs have

failed to show through "clear and specific allegations of fact" that they have standing to bring

this suit; b) plaintiffs' first cause of action, for a declaration as to their rescission rights under the

Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq*., fails because TILA rescission is not susceptible

to class relief; c) plaintiffs' second and third causes of action fail because neither the Equal

Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, nor the Fair Credit Reporting Act, 15 U.S.C. §

1681, *et seq.* require notices of "adverse actions" in this case; and d) plaintiffs' twelfth cause of

action fails because California's Civil Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* does

not apply to the residential mortgage loans here.

1

In the alternative, defendants move for a more definite statement of plaintiffs' claims. Defendants contend that the complaint contains "only legal conclusions," with no factual support for the plaintiffs' claims, and that the complaint therefore falls short of both Federal Rules of Civil Procedure 9(b) and 8.

For the reasons stated below, we deny defendants' motions to dismiss and for a more definite statement.

<strong><u>ANALYSIS</u></strong>

**I.      Standing**

Defendants move to dismiss the complaint in its entirety because, defendants contend, the complaint fails to establish plaintiffs' standing through "clear and specific allegations of fact showing a concrete injury that is causally connected to defendant's conduct and may be redressed through a favorable ruling." (Mem. in Supp. of Mot. to Dismiss at 1.)  We deny this motion.

To invoke federal court jurisdiction, plaintiffs must demonstrate an actual "case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 91, 101 (1983).  A complaint must allege: a) an "injury in fact"– an invasion of a legally protected interest which is concrete and particularized, and "actual or imminent, not conjectural or hypothetical;" b) a "causal connection between the injury and the conduct complained of," which can be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court;" and c) "that it is 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).  While plaintiffs bear the burden of demonstrating

2

standing, the weight of that burden corresponds to the stage of litigation at which standing is at issue. *Id.* "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990). Moreover, when plaintiffs allege that they themselves were the target of the defendants' actions or inaction, "there is ordinarily little question that the action or inaction has caused [them] injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561-62.

Plaintiffs' burden is also informed by the liberal pleading standards of Fed. R. Civ. P. 8. To satisfy Rule 8, a plaintiff need only "name[s] the plaintiff and the defendant, state[s] the nature of the grievance, and give[s] a few tidbits (such as the date) that will let the defendant investigate." *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006). Complaints "need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule." *Id.* So long as plaintiffs can prove some set of facts consistent with the claims set forth in the complaint that would entitle them to relief, we will deny a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Plaintiffs herein have set forth sufficient facts and allegations to establish their Article III standing. They have identified themselves (by listing 85 representative plaintiffs), explained that they – not the public in general – signed residential mortgage contracts with defendants, described the practices at issue in this suit, and allege that they were harmed by the defendants' alleged practices. In naming each representative plaintiff, the complaint states that each plaintiff "has been a victim of Ameriquest's practices during the period covered by this consolidated

3

action." (Compl. ¶¶ 18-76.) Plaintiffs allege, for example, that defendants' alleged "bait-and-switch" practices "allow Ameriquest systematically to close loans that benefit Ameriquest to the detriment and misfortune of Plaintiffs and the Class." (*Id.* at ¶ 95.) Later, plaintiffs allege that with respect to defendants' alleged unfair and deceptive practices, "Ameriquest made standard misrepresentations and/or failed to provide the [named plaintiffs] with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees, and penalties." (*Id.* at ¶¶ 123-178.) Under each of plaintiffs' twenty-six causes of action, plaintiffs allege that they have been or (in causes of action seeking equitable relief) imminently will be harmed by defendants' conduct. (*Id.* at ¶¶ 234-425.) Finally, plaintiffs seek relief both generally and within each cause of action. In sum, the allegations in the complaint more than qualify as the "general factual allegations of injury" necessary at the pleading stage. *Lujan*, 504 U.S. at 561. We deny defendants' motion to dismiss the complaint for lack of standing.[1]

## II.    Plaintiffs' Claim for Declarations of Rescission Rights

Plaintiffs' First Cause of Action alleges that defendants failed to provide material disclosures as required by the Truth-in-Lending Act, 15 U.S.C. §§ 1635, 1638, and seeks a declaration that the members of the TILA subclass have the right to rescind their loan

---

[1]    Although our holding with respect to the sufficiency of consolidated class complaint may render the issue moot for purposes of this motion, we note that because plaintiffs did not specifically identify which portions of the individual complaints they wished to incorporate into the consolidated class complaint, they have not incorporated those individual complaints into this action. *See Federal National Mortgage Ass'n v. Cobb*, 738 F. Supp. 1220, 1227 (N.D. Ind. 1990) ("In order to incorporate an earlier pleading in a later pleading, the later pleading must specifically identify which portions of the prior pleading are adopted therein.") (citing Fed. R. Civ. P. 10(c)).

transactions. (Compl. ¶¶ 189, 239, 243.) Defendants contend that because rescission is a purely

personal right, this request for a declaration of rescission rights is improper in a class complaint.

(Mem. in Support of Defs. Mot. to Dismiss at 7.)

As courts in this and other circuits have held, the TILA rescission remedy found in 15

U.S.C. § 1635 is a purely personal right. *See, e.g., McKenna v. First Horizon Home Loan Corp.*,

474 F.3d 418 (1st Cir. 2007); *James v. Home Const. Co.,* 621 F.2d 727, 730-731 (5th Cir. 1980);

*Jefferson v. Security Pac. Fin. Servs.* 161 F.R.D. 63, 69 (N.D. Ill. 1995). Recently, the First

Circuit further held that an action for class-wide declaratory relief stating a right to rescission is

not permissible under TILA. *See McKenna*, 474 F.3d at 423-24. In denying a motion for class

certification, *McKenna* relied in part on the fact that TILA expressly provided for class relief for

actions seeking damages but did not do the same with respect to rescission claims. *Id.* at 423.

*McKenna* further reasoned that a class-wide rescission action under TILA "strains credulity" in

light of TILA's express class-action damages cap, as class-wide rescission could become by

orders of magnitude a more expensive remedy than class-wide actions for damages. *Id.* at 423-

24.

The Seventh Circuit has not yet ruled on this issue,[2] but we disagree with *McKenna* and

agree with the district courts in this and other circuits that have found that neither Fed. R. Civ. P.

23 nor TILA prohibits the limited relief plaintiffs seek here. While we recognize that actual

rescission is a personal remedy, we find nothing in TILA precluding declaratory relief

authorizing class members to individually request rescission where they are legally entitled to do

---

2       The Seventh Circuit has accepted a petition for appeal in *Andrews v. Chevy Chase Bank,
        FSB*, 2007 WL 112568 (E.D. Wisc. Jan. 16, 2007), which is discussed below.

so. As the *McKenna* court acknowledged, plaintiffs "may pursue rescission claims on their own

– a course of action that the TILA facilitates." *McKenna*, 474 F.3d at 426. A declaration to that

effect does no violence to the text or purpose of the TILA. Plaintiffs are not seeking class-wide

rescission in this action: any order granting the declaration they request will come at no direct

cost to defendants or the integrity of the TILA damages cap. *See Andrews*, 2007 WL 112568, at

*9 ("[t]here is no reason why a plaintiff who alleges that a defendant has violated TILA and

caused widespread injuries should not be able to bring a class action. Denial of class action

status would reward defendants who may have committed wrongs and leave victims who may

have been wronged uncompensated."). Plaintiffs are simply seeking a declaration to facilitate

their respective pursuits of an individual remedy, and neither the plain language of TILA nor

Fed. R. Civ. P. 23 prohibits plaintiffs from doing so on a class-wide basis. *Id.* at *8 ("there is

nothing in the language of TILA which precludes the use of the class action mechanisms

provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents,

common to all members of the class, entitles each member of the class individually to seek

rescission.") (citing *Rodrigues v. Members Mortgage Co., Inc.*, 226 F.R.D. 147, 153

(D.Mass.2005)); *see also Williams v. Empire Funding Corp.*, 183 F.R.D. 428, 436 (E.D. Pa.

1998) (same). Therefore, we deny defendants' motion to dismiss plaintiffs' First Cause of

Action.

## III.    ECOA and FCRA "Adverse Action" Claims

Defendants argue that plaintiffs cannot state a claim for failures to provide "adverse

action notices" under the ECOA and FCRA because those statutes do not require such notices

here. Defendants contend that plaintiffs accepted counteroffers of credit, and that those

acceptances obviated the statutory notice requirement. (Mem. in Support of Mot. to Dismiss at 2.)

Although the ECOA and FCRA do not require adverse action notices in those cases in which plaintiffs accept counteroffers of credit, plaintiffs here did not allege that they accepted counteroffers. "[U]nder the ECOA there are three distinct kinds of action a creditor might take, each triggering a notice requirement: an approval, a counteroffer, and an adverse action." *Newton v. United Companies Financial Corp.*, 24 F. Supp. 2d 444, 459 (E.D. Pa. 1998). The ECOA defines "adverse action" as either: a) a denial or revocation of credit; b) a change in the terms of an existing credit arrangement; or c) a refusal to grant credit in substantially the amount or on substantially the terms requested. 15 U.S.C. § 1691d(6). By regulation, instances in which consumers have accepted counteroffers of credit do not fall within the definition of "adverse action."[3] The FCRA defines "adverse action" with reference to the ECOA definition and

---

3    The ECOA expressly delegated to the Federal Reserve Board the power to pronounce and implement regulations in furtherance of the ECOA's purpose. 15 U.S.C. § 1691b(a). We accord these regulations "substantial deference." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). The Federal Reserve Board has circumscribed the scope of an "adverse action," defining the term to mean "[a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application *unless the creditor makes a counteroffer* (to grant credit in a different amount or on other terms) *and the applicant uses or expressly accepts the credit offered*." 12 C.F.R. § 202.2(c)(1)(I) (emphasis added).

regulations,[4] but also includes a broader "catchall" provision. 15 U.S.C. § 1681a(k).[5]  The

"catchall" provision does not, however, negate the FCRA's specific counteroffer exclusion.  *See*

*Matter of Merchants Grain, Inc. By and Through Mahern*, 93 F.3d 1347 (7th Cir. 1996).

Although plaintiffs would not be entitled to adverse action notices if they accepted

counteroffers of credit, the complaint does not expressly allege that defendants extended or that

plaintiffs accepted counteroffers.  Rather, plaintiffs state that defendants originally offered

plaintiffs credit packages including one set of terms and rates, then – after reviewing plaintiffs'

credit reports – surreptitiously changed plaintiffs' credit agreements at their respective closings:

> Ameriquest systematically baits customers into residential
> mortgage loan transactions with promises of fixed interest rates,
> low or no fees, lower monthly payments compared to then current
> payments, nor prepayment penalties, and/or the existence or
> absence of particular terms.
>
> *****
>
> Due to the complexity of the paperwork, hurried closings, and
> improper disclosure procedures, borrowers are often unaware that
> the terms of the mortgage documents do not match Ameriquest's
> prior representations.

(Compl. at ¶¶ 93-94.)  As these excerpts show, the complaint alleges a bait-and-switch departure

from offers the *defendants* made, not a series of rejections and counteroffers in response to any

offers made by plaintiffs.  Because the complaint does not clearly demonstrate that plaintiffs

---

4    15 U.S.C. § 1681a(k)(2) (adopting the Federal Reserve Board's "findings, decisions,
     commentary, and orders" regarding the definition of adverse action under the ECOA).

5    The "catchall" provision provides that with respect to decisions related to reviews of
     consumer reports, adverse actions include decisions that are "made in connection with an
     application that was made by, or a transaction that was initiated by, any consumer . . .
     [and] adverse to the interests of the consumer."  15 U.S.C. § 1681a(k)(1).  Courts have
     interpreted the provision to encompass actions and persons not covered by the ECOA.
     *See Treadway*, 362 F.3d at 971, 982 (7th Cir. 2004).

accepted counteroffers of credit, we deny defendants' motion to dismiss the second and third causes of action.

## IV.    CLRA Claims

Defendants move to dismiss plaintiffs' Twelfth Cause of Action, under the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* Defendants contend that the CLRA does not apply to the mortgage loans at issue here because these loans are not "goods" or "services" as defined by the CLRA. The CLRA prohibits specific unfair trade and deceptive practices acts "which [result] in the sale or lease of goods or services to any consumer." *Id.* at § 1770. Three key terms within the provision – "goods," "services," and "consumer" – assist us in interpreting § 1770. The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes." *Id.* at § 1761(a).[6] "Services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* at § 1761(b). Finally, "consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *Id.* at § 1761(c).

The CLRA does not expressly list "loans" or "credit" as a form of good or service, and the legislative history suggests that the California Assembly did not intend to include loans or credit, standing alone, within the scope of the CLRA. Early drafts of the CLRA defined "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods, services, *money, or credit* for personal, family, or household purposes." *See* Assem. Bill No. 292 (1970 Reg. Sess.) Jan. 21, 1970 (emphasis added). This change suggests that the California legislature

_____

6    Residential mortgages are clearly not "tangible chattels," and cannot be "goods" under the CLRA.

9

considered whether the CLRA should encompass credit transactions and ultimately resolved that

it should not. *See Wilson v. City of Laguna Beach*, 6 Cal. App. 4th 543, 555 (Cal. App. 1992)

("The rejection by the Legislature of a specific provision contained in an act as originally

introduced is most persuasive to the conclusion that the act should not be construed to include

the omitted provision."); *see also California Assn. of Psychology Providers v. Rank*, 51 Cal.3d 1,

22 (Cal. 1990) (courts should avoid "grant[ing] through litigation what could not be achieved

through legislation.").

However, it remains possible that credit transactions might provide other, independent

benefits that may themselves qualify as "services" under the CLRA.  Recently, a California

appellate court examined whether credit card services were covered by the CLRA.  *Berry v.

American Express Publishing, Inc.*, 2007 WL 257922 (Cal. App. Jan. 31, 2007).  Examining the

text and legislative history of the CLRA, the *Berry* court held that the CLRA does not cover

"credit, *separate and apart from a specific purchase or lease of a good or service*."  *Id.* at *3

(emphasis in original).  The court in *Hitz v. First Interstate Bank*, 38 Cal. App. 4th 274 (Cal.

App. 1995) explained, however, that a given credit product or transaction may provide some

independent service susceptible to CLRA coverage.  *Hitz*, another case involving credit cards,

provided that while the credit feature of a credit card, standing alone, was not covered by the

CLRA, credit cards provide more value to a consumer than just the credit line they represent.  *Id.*

at 286-87.  In the credit card context, for example, the cards provide a certain "convenience

service:" users may not need to carry large amounts of cash; they may gain favorable credit

ratings through using the cards; and they may be able to buy expensive items without going

through the time-consuming process of securing a personal loan.  *See id.* at 287.  Other courts

have similarly allowed cases involving credit and other financial transactions to go forward. *See*

*Knox v. Ameriquest Mortgage Co.*, 2005 WL 1910927 (N.D. Cal. Aug. 10, 2005) (mortgage

services); *Corbett v. Hayward Dodge, Inc.*, 119 Cal. App. 4th 915 (Cal. App. 2004) (automobile

loans); *Kagan v. Gibraltar Savings and Loan Ass'n*, 25 Cal.3d 582 (Cal. 1984) (Individual

Retirement Accounts); *but see Service Employees Ins. Co. v. Superior Court of the City and*

*County of San Francisco*, 22 Cal.3d 497 (Cal. 1978) (insurance is not a "good" or "service"

under the CLRA).

Absent a supporting record, we decline to suggest specific potential independent benefits

here. However, it is not inconceivable that, consistent with the allegations of the complaint,

plaintiffs could prove the existence of tangential "services" associated with their residential

mortgages and establish that these transactions were covered by the CLRA. *See McMillan v.*

*Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006) (dismissal inappropriate unless

a court finds there is "no set of facts consistent with the pleadings under which the plaintiff could

obtain relief."). Accordingly, we deny defendants' motion to dismiss plaintiffs' Twelfth Cause

of Action.

**V.      Defendants' Motion for More Definite Statements**

In the alternative to their motions to dismiss, defendants request more definite statements

of plaintiffs' claims. Specifically, defendants contend that the plaintiffs must a) allege operative

facts supporting the plaintiffs' claims sounding in fraud, in accordance with the particularity

requirement of Fed. R. Civ. P. 9(b); b) allege the identity of representative plaintiffs and

particular defendants for each class and subclass claim; c) allege plaintiffs' thirteenth cause of

action with more specificity; d) allege the identity, basic contents, and pertinent parties for all

contracts at issue; and e) plead specific facts supporting their claims that the accrual of all statutes of limitations are delayed under the doctrines of equitable estoppel and equitable tolling. (*See* Def. Mem. in Support of Defs. Mot. to Dismiss at 16-27.)

With respect to the sufficiency of plaintiffs' fraud claims under Rule 9(b), defendants point to our opinion in *MPC Containment Syst. Ltd. v. Moreland*, No. 05 C 6973, 2006 U.S. Dist. LEXIS 55780, 2006 WL 2331148 (N.D. Ill. Aug. 10, 2006). In *MPC Containment*, we stated in part that "[i]n order to satisfy the heightened pleading requirement, the complaint must allege the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Id.* at *6 (citations omitted). In response, the plaintiffs argue that a) they are entitled to a relaxation of the particularity requirement in line with the Seventh Circuit's reasoning in *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1051 (7th Cir. 1998) (relaxing the particularity requirement when plaintiffs lack access to all facts needed to detail their claims); and b) even without this relaxed burden, their complaint satisfies the Rule 9(b) requirement. (Pls' Res. To Mot. to Dismiss, at 6-7.)

We do not find that the plaintiffs here are entitled to a relaxation of the Rule 9(b) particularity requirement. In contrast to the *Corley* case cited by plaintiffs, all alleged conduct related to plaintiffs' fraud claims took place between plaintiffs and defendants, not between plaintiffs and third parties, and we cannot otherwise tell from the complaint or the pleadings why any necessary information would be in defendants' sole possession. *See Corley*, 142 F.3d 1050-51.

However, we do find that the plaintiffs' complaint satisfies the Rule 9(b) heightened

pleading requirement. The complaint sufficiently sets forth the "who, what, when, and where"

required by Rule 9(b). *See MPC Containment Syst.*, 2006 WL 2331148 at *6. As to the "who"

requirement, plaintiffs: a) identified all individual and representative plaintiffs, (Compl. ¶¶ 18-

76), and all defendants (¶¶ 77-85); b) set forth the purported relationships between the identified

defendants and the allegations against those defendants (¶¶ 77-91); and c) identified

relationships between named plaintiffs and named defendants. (¶¶ 123-178.) Next, plaintiffs

satisfy the "what" requirement through a seven-page, thirty-paragraph accounting of the

defendants' alleged fraudulent activities. (¶¶ 92-122). The "when requirement" is satisfied by

sections of the complaint listing plaintiff's names, along with associated named defendants and

the dates of the refinancing or servicing giving rise to the alleged fraudulent activity. (*Id.* ¶¶

123-178) Finally, for purposes of this case, in which plaintiffs allege deceptive practices

associated with residential mortgage loans, plaintiffs satisfy the "where requirement" by listing

both the named plaintiffs' residences (¶¶ 18-76), and named defendants' principal places of

business (¶¶ 77-85). We therefore find that plaintiffs have satisfied the heightened pleading

requirements of Rule 9(b) with respect to their fraud and misrepresentation claims.

We also deny defendants' motion for more definite statements of the remainder of

plaintiffs' claims. Those claims are subject only to the notice pleading requirements of Rule 8,

which calls for a "short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). Accordingly, Rule 12(e) motions such as this are "generally

disfavored." *U.S. for Use of Argyle Cut Stone Co. v. Paschen Contractors, Inc.*, 664 F.Supp.

298, 302-03 (N.D. Ill. 1987). Rule 12(e) motions should typically be granted only when a

pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a

responsive pleading. Fed R. Civ. P. 12(e). "While we do not want to make it impossible for the

defendant to respond to the complaint, we also do not want to conduct discovery via the pleading

stage." *Paschen Contractors*, 664 F. Supp. at 303. Plaintiffs' 74-page, 435-paragraph complaint

clearly provides defendants with notice of the claims against them and permits defendants to

frame responsive pleadings. To the extent questions remain, defendants will have a full and fair

opportunity to investigate plaintiffs' claims through class and substantive discovery. If

defendants find that plaintiffs' claims fail to meet the statutory requirements, such issues can be

raised in motions for summary judgment.

**VI.      Argent's Joinder in the Motion to Dismiss**

Defendant Argent Mortgage Company joins this motion to dismiss and the arguments set

forth in the pleadings discussed above. Argent also argues that plaintiffs make "no fact

allegations of wrongdoing that are specific to Argent," and that plaintiffs cannot recover from

Argent because Argent did not originate or service plaintiffs' loans. (Reply in Supp. of Joinder,

at 1.)

We deny Argent's motion. Contrary to Argent's representation, the complaint does

include specific allegations against Argent. For example, paragraph 146 states that Argent

> [R]efinanced Plaintiffs Heladio and Maria Arellanes' mortgage
> loan on January 15, 2003. During and after this process, Argent
> made standard misrepresentations and/or failed to provide the
> Arrellanes with appropriate documentation and/or disclosures. As
> a result, the costs of the mortgage included excessive, undisclosed,
> and/or illegal interest, fees, and penalties.

(Comp. ¶ 146.) A subsequent paragraph makes the same allegation with respect to another

14

group of plaintiffs.  (Compl. ¶ 151.)  Argent also contends that it "has no involvement in collecting loan payments or otherwise servicing loans," and, generally, that it had no direct relationship with plaintiffs.  (Joinder Br. at 2.)  These are contentions of fact, and are not appropriate for resolution at the pleading stage.  Therefore, we deny Argent's joinder in the motion to dismiss.

## IV.     Conclusion

For the reasons stated above, we deny defendants' motion to dismiss and for a more definite statement.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: 4/23/07

15