**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. | ) | MDL No. 1715 |
| MORTGAGE LENDING | ) | Lead Case No. 05 C 7097 |
| PRACTICES LITIGATION | ) | Judge Aspen |

*relating to*

| | | |
|---|---|---|
| NANCY MURRAY, | ) | |
| FRANK HERNANDEZ, | ) | |
| DAVID CECHINI, | ) | |
| ANTHONY LUKAS, | ) | |
| MELISSA MURRAY | ) | |
| JEFF RHODES, | ) | |
| JULIE RHODES, | ) | |
| CARMENCITA SIMPSON, | ) | |
| JOHNNY TREMBLE, | ) | |
| and RONALD MIHALCEAN, | ) | 05 C 1218 (N.D.Ill.) |
| | ) | Originally filed on March 1, 2005 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

*and*

| | | |
|---|---|---|
| LARRY CRANE, | ) | |
| DARRELL BRUCE, | ) | |
| DANIECE BONNER, | ) | |
| PERRIE BONNER, | ) | |
| and LORETTA WIESJAHN, | ) | |
| | ) | |
| Plaintiffs, | ) | 2 : 05 CV 323 (N.D.Ind.) |
| | ) | Originally filed on August 23, 2005 |
| v. | ) | |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**CONSOLIDATED FAIR CREDIT REPORTING ACT COMPLAINT**

**INTRODUCTION**

1.     Plaintiffs bring this action against defendant Ameriquest Mortgage Company to

1

secure redress for a course of conduct that included the accessing of a consumer report on plaintiffs without plaintiffs' consent or any lawful reason, in violation of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. §§1331 and 1337, and 15 U.S.C. §1681p.

3.      Venue in this District is proper in that defendant does business in this District, and in that several mailings that gave rise to the violations of law complained of were directed to and received by plaintiffs residing in this District.

## PARTIES

*The Illinois Plaintiffs*

4.      Plaintiff Nancy Murray resides in Joliet, Illinois.  She received a mailer which was sent to her because her credit information was "prescreened," as that term is generally understood in the context of direct mail marketing (see ¶26, *infra*).  A black-and-white copy of the mailer is marked as Exhibit 1, and was received at her residence.

5.      Plaintiff Frank Hernandez resides in Darien, Illinois.  He received a "prescreened" mailer, a black-and-white copy of which is marked as Exhibit 2, at his residence.

6.      Plaintiff David Cechini resides in Lombard, Illinois.  He received a "prescreened" mailer, a black-and-white copy of which is marked as Exhibit 3, at his residence.

7.      Plaintiff Anthony Lukas resides in Chicago, Illinois.  He received a "prescreened" mailer, a black-and-white copy of which is marked as Exhibit 4, at his residence.

8.      Plaintiff Melissa Murray resides in Joliet, Illinois.  She received "prescreened" mailers, black-and-white copies of which are marked as Exhibits 5-8, at her residence.

9.      Plaintiff Jeff Rhodes resides in Chicago, Illinois.  He received "prescreened" mailers, black-and-white copies of which are marked as Exhibits 9-14, at his residence.

10.     Plaintiff Julie Rhodes resides in Chicago, Illinois.  She received "prescreened"

2

mailers, black-and-white copies of which are marked as <u>Exhibits 15-20</u>, at her residence.

11.     Plaintiff Carmencita Simpson resides in Chicago, Illinois.  She received "prescreened" mailers, black-and-white copies of which are marked as <u>Exhibits 21-23,</u> at her residence.

12.     Plaintiff Johnny Tremble resides in Chicago, Illinois.  He received "prescreened" mailers, black-and-white copies of which are marked as <u>Exhibits 24-30</u>, at his residence.

13.     Plaintiff Ronald Mihalcean resides in Downers Grove, Illinois.  He received a "prescreened" mailer, a black-and-white copy of which is marked as <u>Exhibit 31</u>, at his residence.

*The Indiana Plaintiffs*

14.     Plaintiff Larry Crane resides in West Lafayette, Indiana.  He received a "prescreened" mailer, a black-and-white copy of which is marked as <u>Exhibit 32</u>, at his residence.

15.     Plaintiff Darrell Bruce resides in Hobart, Indiana.  He received a "prescreened" mailer, a black-and-white copy of which is marked as <u>Exhibit 33</u>, at his residence.

16.     Plaintiff Daniece Bonner resides in Gary, Indiana.  She received "prescreened" mailers, black-and-white copies of which are marked as <u>Exhibits 34-36</u>, at her residence.

17.     Plaintiff Perrie Bonner resides in Gary, Indiana.  He received "prescreened" mailers, black-and-white copies of which are marked as <u>Exhibits 37-38</u>, at his residence.

18.     Plaintiff Loretta Wiesjahn resides in Valparaiso, Indiana.  She received a "prescreened" mailer, a black-and-white copy of which is marked as <u>Exhibit 39</u>, at her residence.

*Defendant*

19.     Defendant Ameriquest Mortgage Company is a corporation chartered under Delaware law which does business in the Northern District of Illinois; <u>Exhibits 1-31</u> list a number of defendant's office locations within the Chicago metropolitan area.  Its registered agent is National Registered Agents, Inc., 200 West Adams Street, Chicago, Illinois.

20.     Defendant Ameriquest Mortgage Company is engaged in the business of servicing and originating "subprime" mortgages, which generally carry high interest rates and large

3

amounts of fees. It is one of the largest subprime residential lenders in the nation, servicing $65 billion in mortgage loans in 2006. (Exhibit 40.)

21.     Defendant, as well as other subprime mortgage lenders, have recently been at the center of a mortgage lending crisis, instigated by underwriting practices that allowed loans to be provided to those who could not possibly repay them. This caused a rise in the number of delinquencies, defaults and foreclosures on mortgage loans. (Exhibit 41.)

22.     Defendant, on information and belief, uses telemarketing-style operations to induce homeowners to refinance their houses.

23.     Defendant, on information and belief, trains its employees to "promise certain interest rates and fees, only to change those rates at the time of the closing."

## FACTS

24.     Exhibits 1-39 are black-and-white photocopies of the mailers that plaintiffs received. Each of the original documents were printed in color, on two sides of one sheet of 8.5" by 14" paper.

25.     Exhibit 1, sent to plaintiff Nancy Murray, bears a copyright date of 2004. Exhibits 2-38 each bear a copyright date of 2005; Exhibit 39 bears a copyright date of 2006.

26.     Plaintiffs Nancy Murray and Frank Hernandez, based upon the mailers represented by Exhibits 1-2, filed an original complaint against defendant on March 1, 2005; they were seeking relief for themselves and a putative class of similarly situated persons residing in Illinois.

27.     To the extent that any of the mailers sent to Illinois plaintiffs other than Nancy Murray and Frank Hernandez were sent more than two years prior to the filing of this consolidated complaint, any applicable statute of limitations (including 15 U.S.C. §1681p) has been tolled due to the pendency of the action brought by plaintiffs Nancy Murray and Frank Hernandez on March 1, 2005.

28.     Exhibits 1-39 state that the recipient's credit information was used in order to

4

select him or her to receive a solicitation from defendant, through a process generally known as "prescreening." Specifically, these mailers state either that "this offer is extended because you appear to satisfy certain credit criteria derived from information contained in a pre-qualifying report received from a credit reporting agency used by us," or that "this 'prescreened' offer of credit is based upon information in your credit report indicating that you meet certain criteria."

29. On information and belief, these statements, as presented in the respective mailers, are true.

30. On information and belief, defendant engaged in or arranged for the "prescreening" of consumers based on information in consumer reports held by a consumer reporting agency.

31. Based on the results of such "prescreening," defendant sent or caused to be sent mailers in the forms represented by Exhibits 1-39 to numerous consumers, including plaintiffs.

32. Exhibits 1-39 are examples of printed form documents.

33. Exhibits 1-39 contain the trademarks, service marks and commercial symbols of Ameriquest.

34. On information and belief, defendant Ameriquest approved and authorized the dissemination of material in the forms represented by Exhibits 1-39.

35. The response telephone numbers, fax numbers, Internet addresses and mailing addresses on Exhibits 1-39 are, or were at one time, used by defendant Ameriquest.

36. On information and belief, defendant Ameriquest obtained business as a result of the dissemination of mailers in the forms represented by Exhibits 1-39.

37. On information and belief, defendant's "prescreening" was intended to identify persons who have poor credit or have recently obtained bankruptcy discharges, for the purpose of targeting them for subprime credit.

38. Plaintiffs had not authorized defendant to access or use their credit reports, or any

5

information contained therein.

39.    Defendant had no reason to believe that plaintiffs had authorized defendant or its

agents to access or use plaintiffs' credit reports, or any information contained therein.

40.    Plaintiffs did not initiate any transaction with defendant.

41.    15 U.S.C. §1681a(d) defines "consumer report" as follows:

> **The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—**
>
> > **(A)    credit or insurance to be used primarily for personal, family, or household purposes....**

42.    15 U.S.C. §1681a(f) defines "consumer reporting agency" as

> **any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.**

43.    15 U.S.C. §1681b provides that it is permissible to obtain a consumer report on a

consumer only with the written consent of the consumer or for certain "permissible purposes,"

such as extending credit to the consumer, underwriting insurance, completing a business

transaction that is initiated by the consumer, or making a "firm offer of credit or insurance" to a

consumer who has not initiated a transaction.  The requester must certify to the consumer

reporting agency that such a permissible purpose exists.

44.    The sending of the material in <u>Exhibits 1-39</u> does not constitute a permissible

reason for anyone to access plaintiffs' consumer report information without their consent.

45.    The sending of <u>Exhibits 1-39</u> does not qualify as a "firm offer of credit" within the

meaning of the FCRA, justifying the acquisition of consumer report information without the

consent of consumers, in that the purported offer is vague and totally lacking in terms.  It has no

6

value beyond a solicitation for loan business, the sending of which is not a permissible purpose for accessing a consumer report. *Cole v. U. S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

46.     On information and belief, defendant markets its loan products to consumers who are not prescreened, through mailers known in the lending industry as "invitations to apply." Said invitations to apply contain substantially the same amount of information as mailers sent to people whose private credit information was prescreened without their consent.

47.     On information and belief, defendant purposefully withheld information from Exhibits 1-39 about the loan products it would provide to consumers, for announcing such terms in its mailers would not serve defendant's business interest in attracting consumers, given the high rates and fees that it would charge those who received a mortgage from defendant.

### VIOLATION ALLEGED

48.     Plaintiffs incorporate ¶¶1-47, by this reference.

49.     Defendant obtained or used the consumer report of plaintiffs without their written permission or a "permissible purpose" under the FCRA.

50.     Defendant's violation of the FCRA was willful.

51.     Willfulness is demonstrated by, *inter alia*, defendant's violation of 15 U.S.C. §1681m(d), which provides that consumers be informed of the right to prohibit the use of credit information for the purposes of prescreening, through a "clear and conspicuous disclosure" contained on a prescreened communication.  In several instances, the disclosure statements provided by defendant Ameriquest are in no way "clear and conspicuous," as they are presented on the back to the mailer in minuscule font, so that the consumer's attention is not drawn towards the information in the disclosure. *Cole*, 389 F.3d at 729-731. (See Exhibits 1-7, 15-30, 32-35, 37-38.)

52.     15 U.S.C. §1681n, provides as follows:

7

§1681n.  Civil liability for willful noncompliance

    (a)    In general.  Any person who willfully fails to comply with any requirement imposed under this title [15 U.S.C. §1681 *et seq.*] with respect to any consumer is liable to that consumer in an amount equal to the sum of—

        (1)

            (A)    any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

            (B)    in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

        (2)    such amount of punitive damages as the court may allow; and

        (3)    in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court....

53.    15 U.S.C. §1681p provides as follows:

§1681p.  Jurisdiction of courts; limitation of actions

An action to enforce any liability created under this title [15 U.S.C. §1681 *et seq.*] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—

        (1)    2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or

        (2)    5 years after the date on which the violation that is the basis for such liability occurs.

WHEREFORE, plaintiffs request that the Court enter judgment in plaintiffs' favor and against defendant for:

        a.      appropriate damages;

        b.      attorney's fees, litigation expenses and costs of suit; and

        c.      such other or further relief as is appropriate.

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

## JURY DEMAND

Plaintiffs demand trial by jury.

_____
Daniel A. Edelman

## NOTICE OF LIEN

TO THE DEFENDANT:

Please be advised that we have been retained by the plaintiffs in this case to file suit against you, and that we claim a lien upon said recovery.

_____
Daniel A. Edelman

T:\14173\pleading\consolidated complaint.wpd

9

**CERTIFICATE OF SERVICE**

I, Thomas E. Soule, certify that on April 24, 2007, a copy of this Consolidated Fair Credit Reporting Act Complaint was filed with the Court through the CM/ECF system, and served upon counsel for Ameriquest Mortgage Company by operation of that system. Additionally, the same was served upon all counsel of record for these cases by operation of the CM/ECF system.

*Counsel for Ameriquest Mortgage Co.*
Craig A. Varga
Jonathan N. Ledsky
Joshua D. Davidson
VARGA BERGER LEDSKY HAYES & CASEY
224 S. Michigan Avenue, Suite 350
Chicago, IL 60604
(312) 341-2900 (fax)
cvarga@vblhc.com
jledsky@vblhc.com
jdavidson@vblhc.com

s/ Thomas E. Soule
Thomas E. Soule