FILED
APRIL 24, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE COMPANY MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) ) ) | MDL No. 1715<br><br>Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO ALL INDIVIDUAL ACTIONS | ) ) ) ) | Centralized before Judge Marvin E. Aspen |
| LYNN JULIEN and DENISE JULIEN,<br><br>   Plaintiffs,<br><br>v.<br><br>AMERIQUEST MORTGAGE COMPANY,<br><br>   Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:06-CV-00320-CAP (N.D. Ga.)<br><br>No. 07 C 4037 (N.D. Ill.) (transferred for pretrial proceedings)<br><br>Judge Marvin E. Aspen |

## SECOND AMENDED COMPLAINT

Plaintiffs state as follows:

### I. PRELIMINARY STATEMENT

1. This Second Amended Complaint is filed under the Truth in Lending Act, 15 U.S.C. §§1601-1666 ("TILA"), to enforce Plaintiffs' right to rescind two consumer credit transactions and to recover damages, court costs, litigation expenses, and attorney's fees based on violations of TILA and implementing Regulation Z, 12 C.F.R. pt. 226 ("Regulation Z"). Plaintiffs also assert a claim, via Ga. Code Ann. §§ 51-1-6, 51-1-8, for breach of statutory duties

imposed by the Georgia Residential Mortgage Act. Further, Plaintiffs assert a claim under the Georgia Fair Business Practices Act ("GFBPA"), Code Ga. Ann. §10-1-393(a).

## II. JURISDICTION

2. Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e) and 28 U.S.C. §§1331, 1337, 1367.

## III. PARTIES

3. Plaintiffs are United States citizens who reside in Clayton County, Georgia.

4. Defendant Ameriquest Mortgage Company ("Ameriquest") is a Delaware corporation that regularly engages in the business of mortgage lending and has done substantial business in the state of Georgia. Ameriquest may be served with process by service upon its registered agent, National Registered Agents, 3761 Venture Drive, Duluth, Georgia 30096.

## IV. FACTUAL BACKGROUND

5. At all times relevant hereto, Ameriquest, in the ordinary course of its business, regularly extended consumer credit for which a finance charge was imposed.

6. Plaintiffs are financially unsophisticated.

7. On March 10, 2004, Plaintiffs entered into a consumer credit transaction with Ameriquest involving a promissory note and a security deed ("Transaction One"). Ameriquest was the initial payee on the promissory note and the extended credit was subject to a finance charge.

8. Transaction One is subject to TILA.

9. As part of Transaction One, Ameriquest acquired a security interest in residential

-2-

real property ("the Residence") that Plaintiffs used as their principal dwelling and in which Plaintiffs already had an ownership interest.

10. In connection with Transaction One, Ameriquest imposed upon Plaintiffs, as a condition of extending credit, a $325 fee for a title search and a $421.40 premium for title insurance. Neither the fee nor the premium was a bona fide charge, both were unreasonable in amount, and neither charge provided a benefit to Plaintiffs.

11. The title search for which the above title search fee was charged was done for Ameriquest's, not Plaintiffs,' benefit, and Plaintiffs were not advised of liens on the Residence that were revealed by the title search. Yet Ameriquest required Plaintiffs to pay for the title search.

12. The above title insurance was a lender's title policy, rather than an owner's title policy. It provided no protection to Plaintiffs. Yet Ameriquest required Plaintiffs to pay the premium for the insurance.

13. Before the closing of Transaction One, Ameriquest discovered prior liens on the Residence that had resulted from secured transactions that had been entered into in 1995, 1996, and 1997 by Charlean Richburg ("Prior Richburg Liens"). Plaintiffs were not aware of the Prior Richburg Liens and received no benefit from the secured transactions upon which the liens were based.

14. Ameriquest knew or should have known that Plaintiffs were unaware of the Prior Richburg Liens. Ameriquest knew that it was in Plaintiffs' interest to have these liens removed. Nevertheless, Ameriquest did not advise Plaintiffs of the existence of the Prior Richburg Liens

and at no time made any effort to eliminate the liens.

15. Charlean Richburg ("Ms. Richburg") was the motive force behind Transaction One. On her own initiative, without having been asked to do so by Plaintiffs, Ms. Richburg got in contact with Ameriquest. Ms. Richburg advised Ameriquest that Plaintiffs needed a mortgage loan. Thereafter, Ameriquest telephoned Plaintiffs and solicited them as customers.

16. As a reward to Ms. Richburg for referring Plaintiffs as customers, Ameriquest paid her $27,000 out of the proceeds of Transaction One without requiring that she first pay off the Prior Richburg Liens on the Residence. This conduct by Ameriquest was prejudicial and financially harmful to Plaintiffs and constituted a breach by Ameriquest of the duty of good faith and fair dealing that it owed to Plaintiffs.

17. By the above conduct, Ameriquest misrepresented or concealed material facts, factors, and conditions with respect to Transaction One.

18. As a result of the above conduct, Plaintiffs have insufficient equity in their Residence to obtain a refinancing from any lender other than Ameriquest. In essence, Plaintiffs have become Ameriquest's captive borrowers.

19. The above problem is exacerbated by the fact that Transaction One imposed on Plaintiffs an adjustable interest rate (or, more properly, an "inflatable" interest rate, since the rate adjusts upward only).

20. Plaintiffs needed and wished to refinance Transaction One to take advantage of their improving financial situation and credit ratings and to obtain a fixed interest rate. However, because of the Prior Richburg Liens on their Residence, no lender other than Ameriquest was

available for a refinancing. Unfortunately for the Plaintiffs, Ameriquest would not offer them a mortgage loan with a fixed interest rate.

21. On February 14, 2005, Plaintiffs entered into a refinancing with Ameriquest. This refinancing was a consumer credit transaction involving a promissory note and a security deed ("Transaction Two"). Ameriquest was the initial payee on the promissory note and the extended credit was subject to a finance charge.

22. Transaction Two is subject to TILA.

23. Transaction Two is a refinancing of Transaction One by the same TILA "creditor."

24. In Transaction Two, Ameriquest acquired a security interest in residential real property that Plaintiffs used as their principal dwelling and in which Plaintiffs already had an ownership interest.

25. As a condition of the extension of credit in Transaction Two, Ameriquest required that Plaintiffs purchase hazard insurance on their Residence.

26. Plaintiffs purchased this hazard insurance through Ameriquest and paid a premium of $429 for the insurance from the proceeds of Transaction Two.

27. As a condition of the extension of credit, Ameriquest required that Plaintiffs pay for an appraisal of their home. Plaintiffs were charged $450 for the appraisal.

28. As a condition of the extension of credit in Transaction Two, Ameriquest charged Plaintiffs $102,761.63 to pay off Transaction One. Ameriquest claimed that this was the actual amount owing on Transaction One. However, an entry on the security deed executed in

-5-

Transaction Two states, "This mortgage is refinancing a mortgage to the same original lender . . . with the unpaid principal balance of $100,815.97."

29. Ameriquest accepted and kept the above $102,761.63 payment in its entirety, knowing that the payment was approximately $2,000 higher than the payoff amount actually owing. This conduct by Ameriquest was unfair and deceptive, and extracted from Plaintiffs an unauthorized, illegal charge without their knowledge.

30. The above conduct constituted a breach by Ameriquest of the duty of good faith and fair dealing that it owed to Plaintiffs.

31. The above conduct also constituted failure by Ameriquest to disburse the proper amount of funds to Plaintiffs as agreed in Transaction Two.

32. By the above conduct, Ameriquest misrepresented or concealed material facts, factors, terms, and conditions with respect to Transaction Two.

33. The above conduct also amounted to an improper refusal by Ameriquest to issue a satisfaction of the security deed that it took in Transaction One unless Ameriquest was paid an illegally excessive amount to do so from the proceeds of Transaction Two.

34. In connection with Transaction Two, Ameriquest imposed upon Plaintiffs, as a condition of extending credit, a $265 fee for a title search and a $246.88 premium for title insurance. Neither the fee nor the premium was a bona fide charge, both were unreasonable in amount, and neither charge provided a benefit to Plaintiffs.

35. The title search for which the above title search fee was charged was done for Ameriquest's, not Plaintiffs,' benefit, and Plaintiffs were not advised of liens on the Residence

that were revealed by the title search. Yet Ameriquest required Plaintiffs to pay for the title search.

36. The above title insurance was a lender's title policy, rather than an owner's title policy. It provided no protection to Plaintiffs. Yet Ameriquest required Plaintiffs to pay the premium for the insurance.

37. Before the closing of Transaction Two, Ameriquest determined that the Prior Richburg Liens on the Residence remained in the public records and had not been satisfied. Plaintiffs were still unaware of the Prior Richburg Liens.

38. Ameriquest knew or should have known that Plaintiffs were still unaware of the Prior Richburg Liens. Ameriquest knew that it was in Plaintiffs' interest to have these liens removed. Nevertheless, Ameriquest did not advise Plaintiffs of the existence of the Prior Richburg Liens and at no time made any effort to eliminate the liens.

39. As a result of the above conduct, Plaintiffs still have insufficient equity in their Residence to obtain a refinancing from any lender other than Ameriquest. Plaintiffs remain Ameriquest's captive borrowers.

40. The above problem is exacerbated by the fact that Transaction Two imposed on Plaintiffs an adjustable interest rate (or, more properly, an "inflatable" interest rate, since the rate adjusts upward only).

41. In late 2005, Plaintiffs learned of the Prior Richburg Liens for the first time, from a potential refinancing lender who denied their loan application.

42. Plaintiffs complained about their situation to the Georgia Department of Banking

and Finance, which sent a letter of inquiry to Ameriquest dated December 5, 2005. Ameriquest's letter in response to this inquiry, dated January 12, 2006, contained erroneous information and refused to address Plaintiffs' problem with the Richburg Prior Liens. Ameriquest did not, for example, offer to make a claim on its title insurance policy (for which Plaintiffs paid the premium)regarding these liens.

V. FEDERAL CLAIMS: RESCISSION AND DAMAGES UNDER TILA

43. Plaintiffs incorporate above paragraphs 1-42.

44. In connection with Transaction One, Ameriquest was required to provide disclosures under TILA.

45. Transaction One is subject to the rescission remedy described in TILA at 15 U.S.C. §1635 and in Regulation Z, 12 C.F.R. §226.23.

46. In connection with Transaction One, Ameriquest violated TILA and Regulation Z by not providing Plaintiffs with adequate disclosure of either the material credit terms in the Transaction or Plaintiffs' right to rescind the Transaction.

47. As a result of the above violations of TILA and Regulation Z, Plaintiffs obtained a continuing right to rescind Transaction One and a claim for costs, litigation expenses, and attorney's fees incurred in enforcing that right in court.

48. On June 10, 2006, Plaintiffs rescinded Transaction One by having their attorney send a timely rescission demand to Ameriquest by U.S. Mail, certified, return receipt requested.

49. Upon the mailing of the above rescission demand on June 10, 2006, Plaintiffs and Ameriquest were immediately and automatically returned to the status quo ante with respect to

Transaction One, and all contractual obligations arising from or connected with the Transaction were rendered, as of June 10, 2006, void and unenforceable.

50. Ameriquest received the above rescission demand on June 13, 2006.

51. Ameriquest, in a letter to Plaintiffs' counsel dated June 30, 2006, acknowledged that it had received the above demand and stated that it was Ameriquest's position that it had provided Plaintiffs with proper TILA disclosures and that Ameriquest would therefore not agree to a rescission of the Transaction.

52. Ameriquest did not met Plaintiff's rescission demand with regard to Transaction One. The statutory period for Ameriquest to do so has expired, because the demand had to be met no later than July 3, 2006.

53. In connection with Transaction Two, Ameriquest was required to provide disclosures under TILA.

54. Transaction Two is subject to the rescission remedy described in TILA at 15 U.S.C. §1635 and in Regulation Z, 12 C.F.R. §226.23.

55. In connection with the Transaction Two, Ameriquest violated TILA and Regulation Z by not providing Plaintiffs with adequate disclosure of either the material credit terms in the Transaction or Plaintiffs' right to rescind the Transaction. The inadequacy of disclosure resulted from improprieties in the delivery of the disclosure documents as well as improprieties (including unclarity) in the contents of the documents that were ultimately delivered.

56. For example, Ameriquest did not deliver any copies of any TILA disclosure

documents to Plaintiffs at the closing of Transaction Two, which occurred in Plaintiffs' home. The person handling the closing for Ameriquest stated that he would mail copies of the TILA disclosure documents to Plaintiffs later, but never did. It was not until January 13, 2006, nearly eleven months after the closing, that Plaintiffs received any TILA disclosure documents with regard to Transaction Two.

57. The disclosure documents that Plaintiffs did ultimately receive in connection with Transaction Two improperly and inadequately disclosed both material credit terms in the Transaction and Plaintiffs' right of rescission under TILA.

58. For example, as a condition of obtaining the credit extension in Transaction Two, Plaintiffs were required to pay an amount that significantly exceeded the final balance legally owing on Transaction One. The amount of the excess should have been disclosed within the TILA "finance charge" but was not.

59. As a result of Ameriquest's violations of TILA and Regulation Z, Plaintiffs obtained a continuing right to rescind Transaction Two and a claim for costs, litigation expenses, and attorney's fees incurred in enforcing that right in court.

60. On March 15, 2006, Plaintiffs rescinded Transaction Two by having their attorney send a timely rescission demand to Ameriquest by U.S. Mail, certified, return receipt requested.

61. Upon the mailing of the above rescission demand on March 15, 2006, Plaintiffs and Ameriquest were immediately and automatically returned to the status quo ante with respect to Transaction Two, and all contractual obligations arising from or connected with the Transaction were rendered, as of March 15, 2006, void and unenforceable.

62. Ameriquest received the above rescission demand on March 17, 2006.

63. Ameriquest, in a letter to Plaintiffs' counsel dated April 3, 2006, acknowledged that it had received the above demand and stated that it was Ameriquest's position that it had provided Plaintiffs with proper TILA disclosures and that Ameriquest would therefore not agree to a rescission of the Transaction.

64. Ameriquest did not met Plaintiff's rescission demand with regard to Transaction Two. The statutory period for Ameriquest to do so has expired, because the demand had to be met no later than April 6, 2006.

65. As a result of Ameriquest's violations of TILA and Regulation Z, Plaintiffs obtained a claim for actual and statutory damages, costs, litigation expenses, and attorney's fees.

## VI. STATE CLAIM: BREACH OF STATUTORY DUTIES

66. Plaintiffs incorporate above paragraphs 1-65.

67. Under the Georgia Residential Mortgage Act, Code Ga. Ann. §7-1-1013, Ameriquest had a general duty of "good faith" and "fair dealing" in its business relationships with Plaintiffs in connection with Transaction One and Transaction Two. Ameriquest also had more specific duties, such as to disburse the proper amount of funds to Plaintiffs, not to misrepresent or conceal material facts, factors, terms, or conditions of Plaintiffs' mortgage loans, and not to condition satisfaction of a security deed taken from Plaintiffs upon payment of an illegally excessive amount claimed due.

68. Ameriquest willfully and intentionally breached the above duties.

69. Plaintiffs have been damaged as a result of the above conduct by Ameriquest and

are entitled to damages under Ga. Code Ann. §§51-1-6, 51-1-8.

70. The above conduct by Ameriquest authorizes the imposition of punitive damages, pursuant to Ga. Code Ann. §51-12-5.1, in that it shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences, and Plaintiffs seek such damages.

VII. STATE CLAIM: VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT

71. Plaintiffs incorporate above paragraphs 28 through 33.

72. The Georgia Fair Business Practices Act ("GFBPA") prohibits unfair or deceptive practices by persons or entities such as Ameriquest in the course of consumer transactions. Off. Code Ga. Ann. §10-1-393(a).

73. By its conduct described above in paragraphs 28 through 33, Ameriquest violated the GFBPA.

74. The conduct described above in paragraphs 28 through 33 is not an isolated instance, confined to Plaintiffs' situation. Other persons in Georgia have been similarly abused by Ameriquest. The identity of two of these persons is known by Plaintiffs' counsel.

75. Ameriquest willfully and intentionally violated the GFBPA by its conduct referenced above, causing Plaintiffs to suffer actual damages.

76. Ameriquest's above-referenced actions authorize the imposition of punitive damages, pursuant to Off. Code Ga. Ann. § 10-1-853 and Off. Code Ga. Ann. §51-12-5.1, in that they show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences, and Plaintiffs

seek such damages.

77. For Ameriquest's above violations of the GFBPA, Plaintiffs seek actual and treble damages, plus punitive damages, plus attorney's fees, costs, and expenses of litigation.

78. Plaintiffs have complied with the notice requirement under Code Ga. Ann. §10-1-399(b) (in the event that this provision should be deemed applicable). This was done by a letter sent by U.S. Mail and electronic transmission on July 12, 2006, from Plaintiffs' counsel to Ameriquest's counsel.

WHEREFORE, Plaintiffs pray that this Court:

(1) declare that Plaintiffs' rescissions of Transaction One and Transaction Two had the immediate and automatic effect of rendering void and unenforceable all contractual obligations arising from or connected with these transactions and of returning Plaintiffs and Defendant to the status quo ante;

(2) rescind Transaction One and Transaction Two and declare void all of the charges imposed therein;

(3) declare void any security interest created In Transaction One or Transaction Two;

(4) order Defendant to take any action necessary to terminate any security interest in Plaintiffs' property created in Transaction One or Transaction Two;

(5) enjoin Defendant, temporarily during the pendency of this action and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on Plaintiffs' property, from asserting or recording any lien or other encumbrance of any kind on that property,

and from otherwise taking any steps to deprive Plaintiffs of their interest in that property or to limit, qualify, or inhibit that interest in any way;

  (6) order the return to Plaintiffs of any money or property given by them to anyone, including Defendant, in connection with Transaction One or Transaction Two;

  (7) under TILA, award Plaintiffs $4000 in statutory damages, plus actual damages to be determined at trial, costs, litigation expenses, and attorney's fees;

  (8) under the Georgia Residential Mortgage Act, award Plaintiffs actual and punitive damages in amounts to be determined at trial, plus costs and litigation expenses;

  (9) under the Georgia Fair Business Practices Act, award Plaintiffs the following amounts: actual and treble damages in amounts to be determined at trial, punitive damages in an amount to be determined at trial, costs, litigation expenses, and reasonable attorney's fees;

  (10) hold a jury trial on all issues so triable;

  (11) award such other and further relief as the Court deems just and proper.

 TRIAL BY JURY DEMANDED

s/CharlesM. Baird<br>
Charles M. Baird<br>
Georgia Bar No. 032500

Attorney at Law  
235 Peachtree Street, Suite 400  
Atlanta, Georgia 30303-1400  
(404) 287-2383  
Direct Line:(404) 522-9485  
Fax: (404) 627-7056  
E-mail: charlesmbaird@att.net  Attorney for Plaintiffs