2006 U.S. Dist. LEXIS 3788, *

LEXSEE 2006 U.S. DIST. LEXIS 3788

**SHIRLEY JONES, Plaintiff, v. AMERIQUEST MORTGAGE COMPANY, AMERIQUEST MORTGAGE SECURITIES, INC., and AMC MORTGAGE SERVICES, INC., Defendants.**

No. 05-CV-0432

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2006 U.S. Dist. LEXIS 3788*

**January 31, 2006, Decided**

**COUNSEL:** [*1] For Shirley Jones, Plaintiff: Daniel A. Edelman, Albert F Hofeld, Jr., Cathleen M. Combs, James O. Latturner, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL.

For Ameriquest Mortgage Company, AMC Mortgage Services, Inc., Defendants: Craig Allen Varga, Jaime S. Roginski-Kord, Jonathan N. Ledsky, Varga, Berger, Ledsky, Hayes & Casey, Chicago, IL.

For Ameriquest Mortgage Securities, Inc., Defendant: Craig Allen Varga, Jonathan N. Ledsky, Varga, Berger, Ledsky, Hayes & Casey, Chicago, IL.

**JUDGES:** David H. Coar, United States District Judge.

**OPINION BY:** David H. Coar

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Plaintiff Shirley Jones ("Plaintiff") has filed this action against Defendants Ameriquest Mortgage Company, Ameriquest Mortgage Securities, Inc., and AMC Mortgage Services, Inc. (collectively, "Defendants") to rescind her mortgage and recover statutory damages for violations of the Truth in Lending Act, *15 U.S.C. §1601 et seq.* Before this Court are Plaintiff's Motion for Summary Judgment and Defendants' Motion for Partial Summary Judgment. Also before this Court is Defendants' Motion to Strike Portions of Materials Submitted by Plaintiff in Support [*2] of Her Motion for Summary Judgment and to Deem Certain Facts Admitted. For the reasons set forth below, Defendants' motion to strike is granted in part and denied as moot in part. Plaintiff's motion for summary judgment is granted in part and denied in part. Defendants' motion for partial summary judgment is denied.

### I. DEFENDANTS' MOTION TO STRIKE

Defendants move to strike portions of (1) Plaintiff's Reply Memorandum in Support of her Motion for Summary Judgment (the "Reply") and the appendices thereto and (2) Plaintiff's Response to Defendants' Statement of Additional Uncontested Material Facts that Require Denial of Plaintiff's Motion for Summary Judgment (the "Response").

#### A. Plaintiff's Reply and its Appendices

Defendants move to strike pages 1-6 of Plaintiff's Reply and Appendices 8 and 9, attached to the Reply, because those pages contain new factual allegations, inadmissible hearsay, immaterial arguments, and facts that, if material, should have been included in Plaintiff's L.R. 56.1 Statement rather than in her reply brief.

In the first six pages of her Reply, Plaintiff presents several enumerated "facts," one of which is that Defendant Ameriquest Mortgage [*3] Company ("Ameriquest") is under investigation in 30 states for unlawful and unethical business practices. The Reply admits that this "fact" is "not offered as evidence of any point in this case," but nonetheless attaches as support Appendices 8 and 9 which contain multiple newspaper articles about Ameriquest's questionable business practices. Pl.'s Reply in Support of Summ. J. at 1. The remainder of the "facts" in the first six pages painstakingly detail the history of Plaintiff's dealings with Ameriquest, and comment extensively on the quality of customer service Plaintiff received.

To the extent that, in these six pages and in Appendices 8 and 9, Plaintiff is raising new claims about Ameriquest's business practices and her dealings with Ameriquest, Plaintiff cannot do so. In a motion for summary judgment, the moving party generally may not raise new issues in its reply brief. See *Aircraft Gear Corp. v.*

*Marsh*, 2004 U.S. Dist. LEXIS 19859, No. 02 C 50338, (N.D. Ill. Sept. 30, 2004). Similarly, under the Local Rules, a party may not present facts for the Court's consideration in a reply brief as opposed to a Statement of Material Facts or a Statement of Additional [*4] Facts. See *Bethine W. Alberding Estate Admin. Trust v. Vinoy Park Hotel Co., 2005 U.S. Dist. LEXIS 6274, No. 03 C 1250, 2005 WL 730960, *1 n.1 (N.D. Ill. Mar. 24, 2005)*. Finally, Plaintiff herself has admitted that first "fact" she presents is irrelevant to the motions presently before the Court. So too are the remainder of the facts to the extent that they discuss Plaintiff's dealings with Ameriquest but not the two issues presented for summary judgment. Defendants' motion to strike pages 1-6 of Plaintiff's Reply in Support of Summary Judgment and Appendices 8 and 9 attached thereto is granted.

### B. Plaintiff's Response to Defendants' L.R. 56.1 Statement

Defendants also move to strike the portions of Plaintiff's Response to Defendants' L.R. 56.1 Statement that contain argument or conclusions of law, or contain denials without citing evidentiary support. Defendants filed their motion to strike on November 4, 2005. Five days later, Plaintiff filed a Motion for Leave to File an Amended Response to Defendants' Statement of Additional Uncontested Material Facts. The Court granted Plaintiff leave, and Plaintiff's Amended Response cures the ills about which Defendants complain. [*5] The Court, therefore, considers this portion of Defendants' motion to strike moot.

## II. LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*; *Anderson, 477 U.S. at 252*. See also *Celotex, 477 U.S. at 324*. When reviewing a motion for summary judgment, the court must view the facts in the light most [*6] favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See *Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003)*. Where, as here, cross-motions for summary judgment are involved, as to each motion, the nonmovant's version of any disputed fact is credited.

Congress enacted the Truth in Lending Act ("TILA") to promote the informed use of credit. *15 U.S.C. § 1601(a)*. To that end, TILA requires creditors to clearly and conspicuously disclose certain terms and costs of credit to consumers before a credit transaction takes place. See *12 C.F.R. § 226.17*. The Seventh Circuit has repeated that the "sufficiency of TILA-mandated disclosures is to be viewed from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor."' *Smith v. Cash Store Management, 195 F.3d 325, 328 (7th Cir. 1999)* (internal quotation marks omitted).

It is "well settled" in the Seventh Circuit that a borrower need not have been misled or have suffered any actual damages from a TILA violation to recover under [*7] the act. *Brown v. Marquette Savings & Loan Association, 686 F.2d 608, 614 (7th Cir. 1982)*. Instead, the statute imposes a kind of strict liability on the lender:

> It is not sufficient to attempt to comply with the spirit of TILA in order to avoid liability. Rather, strict compliance with the required disclosures and terminology is required. Many violations of TILA involve technical violations without egregious conduct of any kind on the part of the creditor. However, Congress did not intend that creditors should escape liability for merely technical violations.

*Smith v. No. 2 Galesburg Crown Finance Corporation, 615 F.2d 407, 416 (7th Cir. 1980)*, overruled on other grounds, *Pridegon v. Gates Credit Union, 683 F.2d 182 (7th Cir. 1982)* (internal citations omitted). Thus, "subject to narrow exceptions, hypertechnicality reigns in the application of TILA." *Cash Store Management, 195 F.3d at 328 (7th Cir. 1999)* (internal quotation marks omitted).

### III. FACTS n1

> n1 The following facts are undisputed and are taken from the parties' Local *Rule 56.1* materials.

[*8]

In early March 2002, Plaintiff obtained a loan from Defendant Ameriquest Mortgage Company. The loan

was secured by a mortgage on the home Plaintiff owns with her brother at 6151 South Wolcott in Chicago, IL. At closing of the loan on March 12, 2002, Plaintiff was presented with and signed the following documents: (1) a note; (2) a mortgage; (3) a Truth in Lending Disclosure Statement (the "Disclosure Statement"); (4) several Notice of Right to Cancel forms; and (5) a document entitled "One Week Cancellation Period" (the "One-Week form").

The Disclosure Statement Ameriquest provided Plaintiff states that "payments are due beginning" "05/01/2002." It also states the number of payments (360) and the due date of the final payment (04/01/2032). It states that Plaintiff was to make 359 payments of $480.01 beginning 05/01/02, and one payment of $462.79 on 04/01/32.

The Notice of Right to Cancel form tells the borrower: "you have a right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last," after which the form lists the date of the transaction, the date the borrower will have received her Truth in Lending [*9] Disclosure Statement, or the date she receives notice of her right to cancel. The form details how the borrower may communicate an intent to cancel, and what the lender must do to reflect the fact that the loan has been cancelled.

The One-Week form provides:

> You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason. This right is described in the Notice of Right to Cancel you have received today.
>
> Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you. No money will be disbursed before 10:00 a.m. on the first business day after this period experiences. Business days are Monday through Friday, excluding federal legal holidays. For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

Defendant Ameriquest Mortgage [*10] Securities, Inc. now owns Plaintiff's loan and Defendant AMC Mortgage Services, Inc. is the loan servicer. On January 4, 2005, Plaintiff sent notice of her intent to rescind the loan to Defendants. Defendants have not yet rescinded Plaintiff's loan.

Plaintiff, therefore, filed the instant Complaint on January 25, 2005, seeking rescission, statutory damages, and attorney fees and costs for the alleged violations of TILA discussed below.

## IV. DISCUSSION

Plaintiff moves for summary judgment on two of the four grounds for rescission of her mortgage loan alleged in her complaint. First, Plaintiff alleges that her TILA Disclosure Statement failed to fully and completely disclose the repayment schedule for her loan in the manner specified by TILA. Second, Plaintiff alleges that Ameriquest's One-Week form, when offered in conjunction with the Notice of Right to Cancel form, violates TILA's requirement that the creditor clearly and conspicuously disclose the borrower's absolute right to cancel the transaction within three business days. Defendants move for partial summary judgment in their favor on these same issues: They argue that they properly disclosed Plaintiff's repayment [*11] schedule and clearly disclosed Plaintiff's right of cancellation in accordance with TILA. Defendants further argue that the statute of limitations bars Plaintiff's request for statutory damages.

### A. Truth in Lending Act

For homeowners like Plaintiff who use their homes to secure credit for purposes other than the acquisition of the home, TILA provides a right to rescind the loan transaction for three days after it takes place. See *15 U.S.C. §1635(a)(3)*. TILA requires the creditor to "clearly and conspicuously" disclose this right on a separate document identifying the transaction, how the borrower can exercise the right, and what the effects are of exercising the right. *12 C.F.R. § 226.23(a)(4),(b)(1)*. A consumer may not modify or waive her right to rescind absent a signed, written statement explaining that she needs credit for a bona fide personal emergency. *12 C.F.R. § 226.23(e)(1)*.

If the creditor fails to deliver to the consumer the required notice of her right to rescind or any other material disclosure, the consumer's right to rescind automatically extends from three business days to three [*12] years. *12 C.F.R. § 226.23(a)(3)*. "Material disclosures" include disclosure of "the total of payments, the number and amount of payments, [and] the due dates or periods of

payments scheduled to repay the indebtedness." *15 U.S.C. § 1602(u)*. See also *15 U.S.C. 1638(a)(6)* ("the creditor shall disclose . . . the number, amount, and due dates or period of payments scheduled to repay the total of payments). The implementing regulation, Federal Reserve Board Regulation Z ("Regulation Z"), reiterates this requirement; A creditor must disclose "the number, amounts, and timing of payments scheduled to repay the obligation. *12 C.F.R. § 226.18(g)*. The Federal Reserve Board Commentary provides even more specific guidance:

> *Section 226.18(g)* requires creditors to disclose the timing of payments. To meet this requirement, creditors may list all of the payment due dates. They also have the option of specifying the "period of payments" scheduled to repay the obligation. As a general rule, creditors that choose this option must disclose the payment intervals or frequency, such as "monthly" or [*13] "bi-weekly," and the calendar date that the beginning payment is due. For example, a creditor may disclose that payments are due "monthly beginning on July 1, 1998." This information, when combined with the number of payments, is necessary to define the repayment period and enable a consumer to determine all of the payment due dates.

*12 C.F.R. Pt. 226, Supp. I, para. 18(g)(4)(i)*. This commentary is dispositive unless "demonstratively irrational." *Clay v. Johnson, 264 F.3d 744, 748 (7th Cir. 2001)* (citing *Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565-66, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980))*.

### B. Payment Schedule

Plaintiff argues that TILA, Regulation Z, and the accompanying commentary clearly require Defendants to include in Plaintiff's TILA Disclosure Statement the number, amounts, and timing of her repayments, but Defendants did not do so. Indeed, Plaintiff's Disclosure Statement lists the number of payments she is to make (360), and the amounts ($ 480.01 and $ 462.79), but not "the due dates or periods of payments scheduled to repay the indebtedness." *15 U.S.C. § 1602(u)* (emphasis added). The Disclosure Statement lists the [*14] due date for the first and last payment, but not the due dates for *all* of Plaintiff's payments and not the period, interval, or frequency of Plaintiff's payments. The commentary for Regulation Z makes clear that creditors have the option of doing either. See *12 C.F.R. Pt. 226, Supp. I, para. 18(g)(4)(i)*. Defendants did neither.

Defendants argue that, to find a violation, Plaintiff has resorted to one sentence in the commentary that supplies a permissive, non-exclusive example of what a creditor *may* do, not an express requirement that the word "monthly" be used. It is true that the commentary states, "as a *general rule*, creditors . . . must disclose the payment intervals or frequency, *such as* 'monthly' or 'bi-weekly.'" *12 C.F.R. Pt. 226, Supp. I, para. 18(g)(4)(i)* (emphasis added). The commentary, however, discusses the exceptions to that general rule, and none apply to Defendants. See *12 C.F.R. Pt. 226, Supp. I, para. 18(g)(4)(ii)* (describing the exceptions as the "limited number of circumstances [when] the beginning-payment date is unknown and difficult to determine at the time disclosures are made."). Indeed, Defendants have not even argued that they fall [*15] within the commentary's exceptions. Defendants, then, were to follow the general rule of listing all of Plaintiff's payment dates or describing Plaintiff's payment intervals with a word such as "monthly."

Defendants' argument that they did disclose the fact that monthly payments were to be made, only they did so with numbers as opposed to words, is also unavailing. According to Defendants, an ordinary consumer would understand that the Disclosure Statement lists 359 plus 1 payment and "there are 360 months in 30 years and . . . therefore, [Plaintiff's] 360 payments would be due monthly." Def.'s Reply in Support of Their Mot. for Partial Summ. J. at 14. Nothing in the Federal Reserve Board's commentary or model forms (all of which use the phrases "monthly beginning" or "monthly starting"), suggests that numbers alone, not words, be used to disclose the frequency of payments unless, of course, the creditor lists all of the payment due dates.

Defendants further argue that Plaintiff was never confused by the incomplete Disclosure Statement. Indeed, Plaintiff has admitted to understanding at the time that her payments were to be made monthly, and she signed multiple other documents [*16] at the closing stating as much. The standard applied to TILA claims, however, renders these facts irrelevant. As noted earlier, a borrower in this Circuit need not have been mislead or have suffered any actual damages from a TILA violation to recover under the act. See *Brown, 686 F.2d at 614*. Nor is the fact relevant that other documents involved in the transaction indicated that Plaintiff's payments were to be made monthly. TILA regulations dictate that "the disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18." *12 C.F.R. § 226.17(a)(1)*. Therefore, the timing of payments, which is one of the required disclosures

under § 226.18, see *12 C.F.R. 226.18(g)*, must be grouped with the other required disclosures on the one TILA Disclosure Statement Defendants provide.

Finally, Defendants urge this Court to follow *Hamm v. Ameriquest Mortg. Co., 2005 U.S. Dist. LEXIS 21755, No. 05 C 227, 2005 WL 2405804 (N.D. Ill. Sept. 27, 2005)* (Der-Yeghiayan, J.), which involved the same Defendants and virtually [*17] identical claims. This Court, however, respectfully disagrees with the ruling in Hamm that "it should have been clear to the ordinary consumer that [the plaintiff's] payments would be monthly and she should not have had any confusion regarding the payments schedule." *2005 U.S. Dist. LEXIS 21755 at \*9*. This conclusion ignores the rule that a borrower need not have been mislead or actually confused by a creditor for a finding of a TILA violation. See *Brown, 686 F.2d at 614*. n2 Similarly, the conclusion in Hamm that the plaintiff's complaint "about the adequacy of the payment schedule is . . . based solely on a technical and immaterial contention" ignores the rule that "strict compliance with the required disclosures and terminology is required" despite the fact that "many violations of TILA involve technical violations without egregious conduct of any kind on the part of the creditor." *No. 2 Galesburg, 615 F.2d at 416*. Hamm cites none of this Seventh Circuit case law. n3

> n2 Defendant urges this Court to follow *Redner v. Bailey & Assoc., 1991 U.S. Dist. LEXIS 20508, No. 90 C 20317, 1991 WL 352529 (N.D. Ill. Dec. 17, 1991)* (Roszkowski, J.), for the same reason. The Court in Redner ruled against the plaintiff, noting that "[a] simple reading of the installment contract shows that the payments are due monthly beginning January 12, 1990. Plaintiff should have read the contract before coming to this court." *1991 U.S. Dist. LEXIS 20508 at \*4*. The facts of *Redner*, however, are distinguishable since Redner involved a *retail installment contract* that *incorporated'* the repayment schedule and the required TILA disclosures, not a *mortgage loan* with a *separate* TILA Disclosure Statement. Furthermore, like Hamm, Redner contains no analysis of the plaintiff's claims in light of the Seventh Circuit's TILA standard. Thus, this Court will not follow Redner. Nor is *Pridegon v. Gates Credit Union, 683 F.2d 182 (7th Cir. 1982)*, dispositive. First, Defendants quote Pridgeon out of context. When the Pridgeon court ruled that "meaningful disclosure does not mean more disclosure," it was discussing disclosure by incorporating references, which is not at issue here. See *id. at 195*. Second, the facts of *Pridgeon* are distinguishable, as that case involved a plaintiff who complained that the loan agreement did not disclose the *correct* amount of her payments on two different loans; that the amount displayed could not be reconciled with two other documents; and that she made monthly payments but the loan agreement cited a weekly payment figure. See *id. at 187-88*.

[*18]

> n3 Furthermore, "hypertechnicality" is the standard employed in this Circuit, not "total mix of information," the standard from the Eleventh Circuit that Defendants advocate. See *In re Smith, 737 F.2d 1549, 1555 (11th Cir. 1984)* (finding a failure to disclose the extent of a security interest immaterial under TILA when the failure does not affect the "total mix of information available the consumer"). The Seventh Circuit has also rejected yet another standard Defendants advocate-- that the district judge should "not read[] one sentence or one line of the disclosure statement in isolation" to determine whether there has been clear and substantial disclosure. See *Shroder v. Suburban Coastal Corp., 550 F. Supp. 377, 382 (S.D. Fla. 1982)* (citing *Dixon v. D. H. Holmes Co., 566 F.2d 571, 571 (5th Cir. 1978)* (stating that TILA is "not an act that requires sacrament in language. It does not require the use of shibboleths or other sacred terms.")). In *No. 2 Galesburg, 615 F.2d at 417*, the Seventh Circuit looked with disfavor upon the "ah hoc analysis utilized by the . . .court in Dixon" and ruled instead that "strict adherence to the required terminology under the statute and regulations" would be required.

[*19]

As Plaintiff points out, simply inserting the word "monthly" after the phrase "payments due beginning" would have saved the Disclosure Statement. The failure to do so, however technical, n4 gives rise to Plaintiff's right to rescind her mortgage loan for up to three years after the March 12, 2002 date of the loan transaction.

> n4 Defendants also oppose against the technical application of TILA against them because of *Streit v. Fireside Chrysler-Plymouth, Inc., 697 F.2d 193 (7th Cir. 1983)*. The Streit court, however, only ruled that it was "not necessary or appropriate to hold creditors absolutely liable for every non-compliance and to disregard completely the factual situation out of which the

claim has arisen" because no credit transaction actually took place in that case. See *id.* at 196.

### C. One-Week Form

Defendant maintains that its One-Week form complies with TILA. Plaintiff argues that the form detracts from the clarity and conspicuousness of the federal Notice [*20] of Right to Cancel form in three ways.

First, Plaintiff argues that the form misleads the ordinary consumer by failing to draw a distinction between the rescission rights Defendants confer and the rights that cancelling during the TILA window confers. Specifically, if the consumer relies on the One-Week form and waits to cancel after the third day, she in fact no longer has any of TILA's statutory protections, such as the ability to access the federal court, the ability to bring a claim for statutory damages, and the ability to recover attorney fees. The form does nothing to notify the borrower of this diminution of benefits. Thus, Plaintiff argues, the One-Week form operates as an impermissible waiver and modification of the consumer's TILA recession rights. See *12 C.F.R. § 226.23(e)(1)* (generally prohibiting modification or waiver).

Second, Plaintiff argues that the mere fact that the two forms state different cancellation periods (three days versus seven days) is confusing for the ordinary consumer. Third, Plaintiff argues that Defendants' One-Week form contains information that conflicts with the federal notice form. Namely, it has a different method [*21] of counting days and explains a different procedure to follow for cancellation. These differences, Plaintiff argues, increase the likelihood that the consumer will mix-up the conflicting instructions, make a mistake in cancellation, and risk not having her cancellation honored. Plaintiff points to the fact that Ameriquest employees even have the assistance of an internal document, called a "job aid," to help them to avoid confusion when calculating the different rescission periods; Defendants do not furnish a comparable aid to borrowers.

Defendants argue that Plaintiff was not confused by the two forms, did not wish to cancel her loan during the either of the rescission periods, and did not act in reliance on the One-Week form. These arguments are irrelevant given the TILA standard. Defendant's argument that TILA creates a safe harbor for lenders who use the model federal notice forms provided by the Federal Reserve Board also misses the point. See *15 U.S.C. § 1604(b)*. Plaintiff does not protest the *content* of the Notice of Right to Cancel form provided by Defendants, but the effect of providing that form with a second form that encourages borrowers [*22] to delay their cancellation decision without advising them of the risk of doing so.

There is little case law to guide the Court here. n5 Defendants urge this Court to follow *Hamm v. Ameriquest Mortg. Co., 2005 U.S. Dist. LEXIS 21755, No. 05 C 227, 2005 WL 2405804 (N.D. Ill. Sept. 27, 2005)* (Der-Yeghiayan, J.), which considered an identical claim. In Hamm, the court found that no reasonable trier of fact could conclude that Defendants' disclosures were inadequate because the two separate notice forms that could not be confused as synonymous were provided; the One-Week form reminds the borrower of her federal right; and the One-Week form did not alter or abrogate in any way the express instructions in the federal notice form. See *2005 U.S. Dist. LEXIS 21755 at \*8*. Defendants also believe they should not be held liable for conferring an additional benefit on borrowers (i.e., extra time to decide whether to cancel the loan transaction) in furtherance of TILA's goals. This, however, is not Plaintiffs claim: Plaintiff argues that a consumer who relies on Defendants' promise of seven days to cancel, instead of the three days mentioned in the federal form, actually *loses* benefits without being warned as much [*23] in advance. Hamm does not address this argument.

n5 Most of the cases Plaintiff cites involve Election Not to Cancel forms, a factual situation not present here. In those cases, TILA was violated when the creditor advised the consumer of her right to rescind, but simultaneously told the consumer that she had waived that right or required the consumer to sign a document at closing waiving that right. See, e.g., *Smith v. Cash Store Management, 195 F.3d 325, 332 (7th Cir. 1999)*. Further, in *Henlon v. Goldome Credit Corp., No. 87-2347-CIV, 1988 U.S. Dist. LEXIS 17464 (S.D. Fla. July 14, 1988)*, a district court held that giving a consumer more than the statutory three days to cancel was misleading. But in that case, the company claimed to have extended (and, therefore, modified) the *TILA* period of cancellation, not, as here, merely offered a longer, company-specific period of cancellation. Defendants cite cases that establish there is no violation of TILA when a creditor provides greater rights than the statute requires, or inadvertently recites a TILA expiration date later than the third day and no prejudice to the consumer results. See, e.g., *Kramer v. Home Savings of America, FSB, 721 So. 2d 1239, 1240 (Fla. Dist. Ct. App. 1998)*; *Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Haw. 213, 11 P.3d 1, n.9 (Haw. 2000)*. These cases are unhelpful, however, since Plaintiffs argument is that the One-Week form does prejudice the consumer since it leaves unassuming borrowers with less rights, not greater rights, in days four-through-seven.

[*24]

A case that does is *Williams v. Empire Funding Corp., 109 F. Supp. 2d. 352 (E.D. Pa. 2000)*. In that case, a financing agreement had a federal box with the required TILA disclosure about rescission but also a "Note to Buyer" at the bottom of the page with a different message about rescission. The court concluded that an ordinary consumer could read the messages together and be confused about how the right to rescind works, the starting point for each period of rescission, *and the consequences of choosing one method of rescission over the other* (i.e., whether or not rescission would relieve the consumer of associated costs and damages). See *id. at 359-361*. The Williams court ruled, therefore, that "including two inconsistent periods for rescission in the financing agreement rendered the notice of the right to rescission required under TILA unclear." *Id. at 361*. Plaintiffs complaints mirror those of the plaintiff in Williams: The two rescission notices together could confuse the borrower about the length of each rescission period and, more persuasively, the consequences of choosing one method of rescission over the other, [*25] given that the second form does not explain whether or not cancelling in seven days affords the borrower the statutory protections that cancelling within three days does.

Defendants maintain that there are no consequences for consumers who rely on the One-Week form. See, e.g., Def.'s Reply in Support of Their Mot. for Summ. J. at 8-9 ("The *undisputed evidence* in this case is that Ameriquest does not make any distinction between loans that are cancelled within the three day federal rescission period and those that are cancelled during the period specified under the One Week Form"). But Defendants offer no evidentiary support for this assertion. Nothing that Defendants provide to borrowers explicitly states or guarantees that Defendants provide or intend to provide all of the TILA rights and remedies for a borrower who uses the One-Week form to cancel during days four-through-seven after closing. Further, the facts show that the One-Week form is not anchored to any statute or Ameriquest internal policy that ensures TILA protections for the borrower during days four-through-seven.

A reasonable fact finder, then, could conclude that, for an ordinary consumer, the One-Week form [*26] detracts from the clarity of the federal form in that the One-Week form purports to be a mere extension of the TILA right but does not explain the differences, if any, in the rescission rights. Indeed, a fact finder is needed to determine whether those differences exist. Plaintiff asserts several such differences, see Pl.'s Mem. in Support of Their Motion for Summ. J. at 12 & App. 1, and Defendants have either ignored those assertions or dismissed them as mere speculation. Thus, a genuine issue of material facts exists. Neither Party is entitled to summary judgment on this issue.

D. Statutory Damages

Plaintiff seeks not only rescission of her mortgage loan but also statutory damages for the underlying disclosure violations she alleges and for Defendants' failure to rescind her loan. Defendants argue that the limitation period for TILA claims established in *15 U.S.C. § 1640(e)* bars Plaintiffs request as to all claims except rescission.

*15 U.S.C. § 1640(e)* provides that "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date [*27] of the occurrence of the violation." With most TILA claims, the date the violation occurred is the date the credit transaction was consummated. See *Jenkins v. Mercantile Mortg. Co., 231 F. Supp. 2d 737, 745 (N.D. Ill. 2002)*. "Failure to bring an action for damages within [this] one-year limitation period bars the action." *Basham v. Finance America Corp., 583 F.2d 918, 927 (7th Cir. 1978)*. The one-year limitation period does not, however, apply to an action for rescission under *15 U.S.C. § 1635*. See *Basham, 583 F.2d at 928* n. l7 (citing *Littlefield v. Walt Flanagan & Co., 498 F.2d 1133 (10th Cir. 1974))*.

Thus, Plaintiff is not entitled to statutory damages for Defendants' failure to clearly disclose her payment schedule in accordance with TILA, or for any of the other disclosure violations she alleges in her complaint. These violations occurred when Plaintiffs credit transaction was consummated on March 12, 2002. She did not file the instant Complaint until January 25, 2005, nearly two years after the statute of limitations had run. Plaintiff is, however, entitled to statutory damages for Defendants' [*28] failure to honor her notice of rescission.

This was the holding in *Brown v. Nationscredit Financial Services Corp., 349 F. Supp. 2d 1134 (N.D. Ill. 2005)*:

> [The plaintiff] is barred from bringing damages claims for the [TILA] violations . . . she claims occurred at the time she obtained the loan, as she did not bring those claims within the year after the loan was made. Her damage claim arising from defendants' failure to honor her notice of rescission is not time-barred because it was made within one year from the date of that particular violation.

*Id. at 1138*. See also *Jenkins, 231 F. Supp. 2d at 745* (holding that claims *other than* rescission are subject to the one-year statute of limitations).

Accordingly, Plaintiff is entitled to statutory damages for Defendants' failure to honor0 her notice of rescission. *15 U.S.C. § 1640(a)* sets out these damages.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to strike is granted in part and denied as moot in part. Plaintiffs motion for summary judgment is granted in part and denied in part. Defendants' motion for partial summary judgment [*29] is denied. Plaintiff is entitled to rescission and statutory damages for Defendants' failure to rescind her mortgage loan.

Enter:

/s/ David H. Coar

David H. Coar

United States District Judge

Dated: **January 31, 2006**