Case: 1:05-cv-07097 Document #: 723-3 Filed: 04/30/07 Page 1 of 10 PageID #:14390

Page 1
949 F. Supp. 1447, *; 1996 U.S. Dist. LEXIS 19826, **

130GZS

LEXSEE 949 F.SUPP. 1447

**JOHN LEWIS ROWLAND, Plaintiff, vs. NOVUS FINANCIAL CORPORATION, formerly known as SEARS CONSUMER FINANCIAL CORPORATION OF DELAWARE, Defendant.**

CIV. NO. 94-00875 ACK

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII

*949 F. Supp. 1447; 1996 U.S. Dist. LEXIS 19826*

**January 17, 1996, Decided
January 17, 1996, FILED**

**DISPOSITION:** [**1] Defendant's motion to dismiss and for summary judgement GRANTED in part and DENIED in part

**COUNSEL:** JOHN LEWIS ROWLAND, plaintiff, Pro se, Mililani, HI.

For NOVUS FINANCIAL CORPORATION fka Sears Consumer Financial Corporation of Delaware, defendant: Herman W.H. Lee, Oliver Lau Lawhn & Ogawa, Honolulu, Hi. Keith Y. Yamada, Oliver Lau Lawhn & Ogawa, Honolulu, HI.

For NOVUS FINANCIAL CORPORATION fka Sears Consumer Financial Corporation of Delaware, counterclaimant: Herman W.H. Lee, Oliver Lau Lawhn & Ogawa, Honolulu, Hi. Keith Y. Yamada, Oliver Lau Lawhn & Ogawa, Honolulu, HI.

For JOHN LEWIS ROWLAND, counter-defendant, Pro se, Mililani, HI.

**JUDGES:** Alan C. Kay, Chief United States District Judge

**OPINION BY:** Alan C. Kay

**OPINION:**

[*1450] **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGEMENT**

**BACKGROUND**

On November 17, 1994, Plaintiff John Lewis Rowland filed a complaint seeking enforcement of his Truth In Lending Act ("TILA") rescission rights. On June 30, 1995, Plaintiff filed a motion for summary judgment and on August 24, 1995, Defendant filed its opposition and cross-motion for summary judgment. On September 12, 1995, this court filed [**2] its order denying the respective motions for summary judgement.

On September 8, 1995, Plaintiff filed a final amended complaint. Defendant's motion to strike this final amended complaint was denied by Magistrate Judge Yamashita on October 10, 1995.

On October 16, 1995, the Defendant filed the instant motion to dismiss and for summary judgement. Magistrate Judge Yamashita granted the Defendant permission to file this second motion for summary judgement. On January 5, 1996, Defendant filed a Supplemental Memorandum in support of its motion for summary judgement.

The Plaintiff filed an untimely Opposition to this motion on January 4, 1996, which did not attack the motion on its merits, n1 and thereafter filed his substantive Memorandum in Opposition on January 5, 1996. Defendant thereafter filed separate memoranda in reply to Plaintiff's January 4, 1996 Opposition and to Plaintiff's January 5, 1996 Opposition Memorandum. Defendant filed these memoranda on January 5, 1996, and January 8, 1996, respectively.

> n1 First, Plaintiff's opposition contends that the Defendant served Plaintiff with only an undated notice of the hearing motion. However counsel for Defendant contends that it gave Plaintiff the undated notice only as a courtesy because on the day it lodged its motion, a clerk was not available to enter the hearing date on the notice. Defendant asserts that the following day it sent Plaintiff a complete set of the dated materials, which included a notice of the January 15, 1995 hearing date.

Case: 1:05-cv-07097 Document #: 723-3 Filed: 04/30/07 Page 2 of 10 PageID #:14391

Page 2

949 F. Supp. 1447, *; 1996 U.S. Dist. LEXIS 19826, **

Second, Plaintiff claims that the Defendant's motion to dismiss and for summary judgement is improper because Defendant was not granted leave to file a second motion for summary judgement. However Magistrate Judge Yamashita gave Defendant permission at a September 29, 1995 status conference for it to file a second motion for summary judgement. See Magistrate minute order filed September 29, 1995.

Lastly, Plaintiff contends that this motion is the Defendant's third, not second, motion for summary judgement because the Court treated the Defendant's initial motion to dismiss as a motion for summary judgement. However such semantics do not alter the fact that on September 29, 1995, the Magistrate gave Defendants permission to file another motion for summary judgment, in response to which the Defendants thereafter filed the instant motion to dismiss and for summary judgement on December 16, 1995.

[**3]

Plaintiff also filed a memorandum on January 8, 1996, in "reply" to Defendant's January 5, 1996, Supplemental Memorandum. In response, on January 8, 1996, Defendant filed a "Response to Plaintiff's Reply to Defendant's Supplemental Memorandum."

Defendant's Supplemental Memorandum raises two issues not previously addressed by Defendant: (1) the effect of the Plaintiff's bankruptcy on this court's jurisdiction to hear the TILA claims and (2) the September 1995 TILA amendments. n2 The court will [*1451] address the issue of how the pending bankruptcy impacts the court's jurisdiction to hear the case, but this order otherwise does not address the new issues raised for the first time by Defendant in its Supplemental Memorandum. Thus the court will not address the second issue raised in Defendant's Supplemental Memorandum, the September 1995 TILA Amendments.

n2 Defendant could have raised both issues in its initial memorandum. First, Defendant apparently knew of the pending bankruptcy even before the Plaintiff's bankruptcy petition was filed with this court on January 4, 1996. Second, the TILA Amendments that Defendant now brings to the court's attention were enacted in September 1995.

[**4]

This matter came for hearing before this court on January 9, 1996.

**FACTS**

On June 23, 1993, Plaintiff entered into a consumer credit transaction with Preferred Financial Services secured by his principal dwelling in order to refinance his outstanding mortgages. n3 That refinanced mortgage was assigned to Defendant that same day. Subsequently, on July 1, 1993, Plaintiff received two copies of a notice of the right to rescind.

n3 In his final amended complaint Plaintiff contends that the loan transaction was consummated on June 25, 1993, the date on which the loan documents were notarized.

In conjunction with the transaction, Plaintiff also received other loan documents including a federal disclosure statement and a settlement statement that itemized the charges of the loan. On July 14, 1993, the loan proceeds were disbursed to Plaintiff.

On November 15, 1994, Plaintiff sent Defendant a letter requesting rescission of the loan. On August 30, 1995, Plaintiff filed for Chapter 7 bankruptcy in the District [**5] of Hawaii. The Plaintiff's bankruptcy petition was not filed in this court until January 4, 1996, when it was eventually filed by Defendant.

**STANDARD OF REVIEW**

I. Summary Judgment Standard

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)*. Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id. at 322, 106 S. Ct. at 2552*.

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment.

Case: 1:05-cv-07097 Document #: 723-3 Filed: 04/30/07 Page 3 of 10 PageID #:14392

Page 3

949 F. Supp. 1447, *; 1996 U.S. Dist. LEXIS 19826, **

[**6]

*T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987)* (citations omitted). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, "'specific facts showing that there is a genuine issue for trial.'" Id. (quoting *Fed. R. Civ. P. 56(e)*). At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting *First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290, 88 S. Ct. 1575, 1593, 20 L. Ed. 2d 569 (1968))*. Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978),* cert. denied, *440 U.S. 981, 99 S. Ct. 1790, 60 L. Ed. 2d 241 (1979)*.

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. See *Eisenberg v. Ins. Co. of North America, 815 F.2d 1285, 1289 (9th Cir. 1987)* (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986))*. Thus, the [**7] question is whether "reasonable minds could differ as to the import of the evidence." Id.

The Ninth Circuit has established that "no longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987),* cert. denied, *484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988)*. Moreover, "when the moving party [*1452] has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)* (footnote omitted). Indeed, "if the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics, 818 F.2d at 1468*. Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services, 809 F.2d at 630-31*. [**8]

II. Motion to Dismiss Standard

Under *Fed. R. Civ. P. 12(b)(6)*, in determining whether to grant a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); Wileman Bros. & Elliott, Inc. v. Giannini, 909 F.2d 332, 334 (9th Cir. 1990); Shah v. County of Los Angeles, 797 F.2d 743, 745 (9th Cir. 1986)*. Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957); Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990)*. A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Balistreri, 901 F.2d at 699; Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)*.

In essence, as the Ninth Circuit has stated, [**9] "the issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir.),* cert. denied, *441 U.S. 965, 60 L. Ed. 2d 1072, 99 S. Ct. 2416 (1979)*. The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. Id.

**DISCUSSION**

In a credit transaction in which a security interest is retained or acquired in a consumer's principal dwelling, that consumer shall have the right to rescind the transaction, except for certain enumerated transactions inapplicable here. See *12 C.F.R. § 226.23(a)(1)*. The consumer may exercise the right to rescind until midnight of the third business day following (1) consummation of the transaction, (2) delivery of the notice of the right to rescind, or (3) delivery of all material disclosures, n4 whichever occurs last. See *12 C.F.R. § 226.23(a)(3)*. If the required notice or material disclosures are not delivered, the right to rescind shall [**10] expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, n5 whichever occurs first. Id.; see also *15 U.S.C. § 1635*(f).

> n4 "Material disclosures" refers to several terms including the finance charge. See *12 C.F.R. § 226.23(a)(3)* n.48.

> n5 A sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind. See Ralph Clontz, Jr., Truth-In-Lending Manual, C-195 (6th ed. 1995)

Case: 1:05-cv-07097 Document #: 723-3 Filed: 04/30/07 Page 4 of 10 PageID #:14393

Page 4

949 F. Supp. 1447, *; 1996 U.S. Dist. LEXIS 19826, **

(appendix c; official commentary; discussing unexpired right of rescission).

In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind. See *12 C.F.R. § 226.23(b)*. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose several matters, including the date on which the rescission period [**11] expires. Id.; see also *12 C.F.R. § 226.17(a)* (creditor shall make disclosures clearly and conspicuously in writing, in a form that the consumer may keep); *Porter v. Mid-Penn Consumer Discount Co., 961 F.2d 1066, 1076 (3d Cir. 1992)* ("the law [*1453] does not require an ideal notice of rescission rights, just a clear, accurate, and conspicuous one").

In the TILA action at bar, the Plaintiff claims that he is entitled to rescission of the mortgage and for damages due to Defendant's alleged TILA violations. First, Plaintiff alleges that Defendant gave him an improper Notice of Right to Rescind, since the notice purportedly (1) did not disclose the rescission date and (2) incorrectly dated the loan transaction as of June 23, 1995, rather than June 25, the date on which the loan documents were notarized. Second, Plaintiff alleges that Defendant made a material nondisclosure by understating the finance charge by $85. Third, Plaintiff alleges that Defendant failed to respond to its notice of rescission.

In the instant motion before the court, the Defendant asserts numerous bases why the court should dismiss the action or grant summary judgement. Each of these arguments will be addressed [**12] below.

I. Plaintiff Lacks Standing to Bring This TILA Action

Defendant asserts in its Supplemental Memorandum in support of its motion that the pending bankruptcy denies the Plaintiff of standing to bring the instant TILA action. Although the court otherwise will not consider issues raised for the first time in Defendant's Supplemental Memorandum, the court addresses this standing issue because it goes to the heart of this court's jurisdiction to hear the case. Specifically, if the Plaintiff lacks standing to sue, then there is no real "case or controversy" to give the court jurisdiction to hear the case under Article III, § 2 of the Constitution. *Whitmore v. Arkansas, 495 U.S. 149, 154-55, 109 L. Ed. 2d 135, 110 S. Ct. 1717 (1990).*

As discussed below, the Plaintiff lacks standing to bring this suit because the TILA claim belongs to the bankruptcy estate. Unless the plaintiff can show either (1) that the TILA cause of action falls under the bankruptcy exemption or (2) that the bankruptcy trustee has abandoned the TILA claims, then the Plaintiff lacks standing to bring the TILA claims. In this situation the trustee of the bankruptcy estate is the proper plaintiff in [**13] this case.

A. Plaintiff's TILA Cause of Action Belongs to the Bankruptcy Estate

First, Plaintiff's TILA cause of action belongs to the bankruptcy estate. *Bankruptcy Code § 541* provides that all property of bankrupt debtors belong to the bankruptcy estate. Property of the estate includes "all legal or equitable interests of the debtor in property as of commencement of the [bankruptcy] case." *11 U.S.C. § 541*(a)(1). Moreover, courts have long held that the definition of "property" extends causes of action, including TILA claims. As the 7th Circuit has articulated, there is "no question...that the [bankruptcy] estate includes causes of action such as [] truth in lending claims." *In re Smith, 640 F.2d 888, 890, 892 (7th Cir. 1981).* See also *Stanley v. Sherwin, 156 Bankr. 25 (W.D.Va. 1993)* (causes of actions that exist prior to discharge of bankruptcy are property of the bankruptcy estate); *Collier on Bankruptcy, P 541.10* (15th Ed., 1980).

Applied in the instant case, Plaintiff's TILA cause of action existed prior to the bankruptcy and therefore is included in the bankruptcy estate. Specifically, Plaintiff filed its TILA complaint on November 17, 1994, and thereafter [**14] filed for Chapter 7 bankruptcy on August 30, 1995. For this reason the Plaintiff's cause of action belongs to the bankruptcy estate.

B. Plaintiff Lacks Standing to Assert Claims That Otherwise Belong to the Bankruptcy Estate, Unless the Claims Are Exempt From the Estate or the Bankruptcy Trustee Has Abandoned Them

The plaintiff-debtor has no standing to bring the TILA claims unless he can show that the claims were (1) exempt from the bankruptcy estate or (2) abandoned by the bankruptcy trustee. If neither apply, the claims belong to the bankruptcy estate and in turn must be asserted by the bankruptcy trustee rather than the debtor.

[*1454] 1. Exempted Property

If a debtor can show that his TILA cause of action is exempt from the bankruptcy estate, then the debtor has standing to assert the TILA claims. See *Wissman v. Pittsburgh National Bank, 942 F.2d 867, 870 (4th Cir. 1991)* (debtor has standing to pursue causes of action that are subject to the bankruptcy exemption, even if the trustee has not abandoned the claims); *Christy v. Heights Finance Corp., 101 Bankr. 542 (C.D.Ill. 1987)* (plaintiff-debtor had standing to bring TILA claims if the cause of action is exempt from [**15] the bankruptcy estate). The Bankruptcy Code provides that debtors may exempt up to $15,800 of property from the bankruptcy estate. See *11 U.S.C. § 522*(d)(1), (5) (1994). If a Chapter 7 debtor claims his TILA cause of action under the bank-

Case: 1:05-cv-07097 Document #: 723-3 Filed: 04/30/07 Page 5 of 10 PageID #:14394

Page 5

949 F. Supp. 1447, *; 1996 U.S. Dist. LEXIS 19826, **

ruptcy exemption, then the debtor has standing to bring the TILA action. See *Matter of Smith, 640 F.2d 888 (7th Cir. 1981)*.

In the case at bar, the Plaintiff has not alleged that his TILA cause of action falls under the Bankruptcy Code exemption. If the cause of action is not exempt, then it remains within the bankruptcy estate unless the bankruptcy trustee has abandoned it.

2. Abandonment by the Bankruptcy Trustee

If a debtor's property is not exempt from the bankruptcy estate, then it remains within the estate unless the bankruptcy trustee has "abandoned" it. Thus the a debtor's TILA cause of action--which constitutes "property" as defined by the Bankruptcy Code--remains within the estate unless the bankruptcy trustee has abandoned the claim. If there has been no abandonment, then the debtor lacks standing to bring the TILA cause of action. See *Bryson v. Bank of New York, 584 F. Supp. 1306 (S.D.N.Y. 1984); Binnick v.* [**16] *AVCO Financial Services of America, 435 F. Supp. 359, 361 (D.Neb. 1977)* (bankruptcy debtor lacks standing in TILA action if the bankruptcy trustee did not abandon the cause of action; plaintiff given leave to amend complaint to allege standing).

In the present case, the Plaintiff has not alleged that the TILA cause of action has been abandoned by the bankruptcy trustee.

Due to the aforementioned reasons, the Plaintiff lacks standing to assert these TILA claims. First, the TILA cause of action belongs to the bankruptcy estate. Second, the Plaintiff has not alleged that the claims do not belong to the estate because they are exempt or have been abandoned by the bankruptcy trustee. In absence of such a showing, the bankruptcy trustee is the proper plaintiff for this suit.

II. Some of Plaintiff's TILA Claims For Damages Are Barred By the Statute of Limitations

The Defendant first contends that the Plaintiff's TILA claims for damages are barred by the statute of limitations.

TILA requires that debtors bring their claims for damages "within one year from the date of the occurrence of the violation," unless the claim is asserted "as a matter of defense by recoupment or set-off." [**17] *15 U.S.C. § 1640*(e). The 9th Circuit has clarified that this period runs "from the date of consummation" of the transaction, which generally is defined as the date on which the money is loaned to the debtor. *King v. State of California, 784 F.2d 910, 913 (9th Cir. 1986),* cert. denied, *484 U.S. 802, 98 L. Ed. 2d 11, 108 S. Ct. 47 (1987).* See also *Moor v. Travelers Insurance Co., 784 F.2d 632 (5th Cir. 1986)* (explaining that "consummation" is the date when the contract begins); *Dau v. Fed. Land Bank of Omaha, 627 F. Supp. 346 (N.D. Iowa 1985)* (consummation is not the date on which the loan matures).

The Ninth Circuit has rejected the "continuing violation" theory that tolls the TILA statute of limitations period until the date upon which the creditor makes the proper disclosures. *King v. California, 784 F.2d at 914.* Instead, in TILA actions the Ninth Circuit recognizes the doctrine of equitable tolling. This doctrine "suspends the limits period until the borrower discovers or had reasonable opportunity to discover the fraud that forms the basis of the TILA action." *Id. at 915.* However equitable tolling first requires the plaintiff to show that the creditor [**18] fraudulently concealed its violations. [*1455] *Hubbard v. Fidelity Federal Bank, 824 F. Supp. 909 (C.D. Cal. 1993).*

In the instant case, the Plaintiff alleges several bases for damages: (1) Defendant's faulty "Notice of Right to Rescind," (2) Defendant's understating the finance charges by $ 85, and (3) Defendant's failure to respond to Plaintiff's notice of rescission. As to the first two claims, the one-year statute of limitations runs from the date on which the parties consummated the loan. Plaintiff states that the loan transaction with Preferred Financial Funding, Inc. was consummated on June 25, 1993, when the loan documents were notarized. n6 Thus the one-year statute of limitations period runs from this date, absent some showing by the Plaintiff that the court should toll the period because the Defendant fraudulently concealed its disclosure violations. *King v. California, 784 F.2d at 915.* The Plaintiff has made no assertion of fraud that would justify tolling the limitations period, so the Plaintiff should have brought these TILA claims for damages by June 25, 1994. However the Plaintiff did not file his complaint until November 17, 1994, and therefore the statute of limitations [**19] bars these damages claims.

> n6 In contrast, Defendant contends that the loan transaction closed on June 23, 1993, rather than June 25, 1993. However for purposes of this motion for summary judgement the court will view the facts in the light most favorable to the non-moving party, the Plaintiff.

The Plaintiff also asserts a second basis for damages: the Defendant's failure to respond to its November 15, 1994, notice of rescission. Under *15 U.S.C. § 1640,* a creditor may be liable for damages if it fails to respond to the debtor's notice of rescission as required under *15 U.S.C. § 1635.* n7 While a debtor normally has three days to rescind the transaction after it has been consummated, the debtor has up to three years to rescind the

Case: 1:05-cv-07097 Document #: 723-3 Filed: 04/30/07 Page 6 of 10 PageID #:14395

Page 6

949 F. Supp. 1447, *; 1996 U.S. Dist. LEXIS 19826, **

transaction if the required notice or material disclosures are not delivered. *12 C.F.R. § 226.23(a)(3)*; see also *15 U.S.C. § 1635*(f).

> n7 Section 1640, entitled "Civil Liability," provides that creditors may be subject to damages if they "fail to comply with any requirement imposed under this part, including any requirement under § 1635 ["Right to Rescind"]." Section 1635 requires that creditors shall rescind the loan within twenty days of receiving the obligor's notice of rescission.

[**20]

Plaintiff asserted his right to rescind on November 15, 1994. This notice of rescission was timely if, as Plaintiff alleges, Defendant did not provide the requisite notice of right to rescind or the material disclosures. In turn, the statute of limitations period runs not from the date in which the loan was consummated, but rather from the "date of the occurrence of the violation." *15 U.S.C. § 1640*(e).

For purposes of this claim the date of the "occurrence" is either the date on which Plaintiff exercised his right of rescission (November 15, 1994) or on which Defendant failed to respond to Plaintiff's rescission. Two days after sending the notice of rescission, on November 17, 1994, Plaintiff filed his claim for damages based on Defendant's alleged failure to respond to the rescission. This claim falls well within the one-year statute of limitations period.

In summary, while the statute of limitations bars Plaintiff's other damages claims, it does not bar Plaintiff's claim based on the Defendant's alleged failure to respond to Plaintiff's notice of rescission.

III. The Court Should Not Abstain Despite the State Foreclosure Action

A. Younger Abstention Doctrine

The [**21] Defendant argues that the court should assert the Younger abstention doctrine to abstain from hearing Plaintiff's TILA claims because these claims could have been heard in the pending state foreclosure proceeding. The state foreclosure action, which involves the same property, has apparently ruled in favor of the Defendant creditor but a final judgement has not been entered pending the bankruptcy stay. Although the Plaintiff had initially asserted TILA as a defense to the state foreclosure action, Plaintiff and his wife stipulated with the Defendant to strike their state court answer and to dismiss it with prejudice. Thus the state court did not hear Plaintiff's TILA claims.

[*1456] The Younger abstention doctrine initially only applied to state criminal proceedings but has since been extended to civil and even administrative state proceedings. *Younger v. Harris, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971)* (applying abstention in criminal context); *Middlesex County Ethics Committee v. Garden, Etc., 457 U.S. 423, 73 L. Ed. 2d 116, 102 S. Ct. 2515 (1982)* (extending Younger extension to civil proceedings). Today, Younger abstention applies in the civil context if the case implicates [**22] "important state interests." *Middlesex, 457 U.S. at 432*.

The importance of a state interest sufficient to warrant Younger abstention may be shown "by the fact that the noncriminal proceedings [in a given case] bear a close relationship to proceedings criminal in nature." Id. For example, the Supreme Court has applied the Younger abstention doctrine in civil proceedings that are quasi-criminal in nature, such as in state nuisance actions against adult pornographic theaters or in child abuse proceedings. *Huffman v. Pursue, Ltd., 420 U.S. 592, 43 L. Ed. 2d 482, 95 S. Ct. 1200 (1975)* (state condemnation proceeding of adult theater); *Moore v. Sims, 442 U.S. 415, 60 L. Ed. 2d 994, 99 S. Ct. 2371 (1979)* (federal challenge to state child abuse proceeding).

The Supreme Court cases in this area also suggest that an important state interest may be shown where the state proceeding bears a close relation to the state judicial system. For example the Court has required Younger abstention in cases that involved state contempt proceedings, state court bond requirements, and state bar disciplinary proceedings. See *Juidice v. Vail, 430 U.S. 327, 51 L. Ed. 2d 376, 97 S. Ct. 1211* [**23] *(1977)* (state court contempt proceedings); *Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 95 L. Ed. 2d 1, 107 S. Ct. 1519 (1987)* (challenge to state court rule requiring plaintiff to post bond on appeal); *Middlesex, 457 U.S. 423, 73 L. Ed. 2d 116, 102 S. Ct. 2515* (abstention required in challenge to state bar disciplinary action, where bar serves as an adjunct to the state courts). In such instances the policy notions of comity and respect for state judicial functions weigh favorably for abstention.

The instant case involves a state foreclosure proceeding. Defendant asserts that the state's interests in enforcing its lien statutes are sufficiently "important state interests" to abstain under the Younger doctrine. However the court rejects this contention, as explained below.

First, the state foreclosure proceeding involves a suit between two purely private parties; the state is not a party to the action. n8 For this very reason at least one federal court has held that the Younger abstention doctrine does not warrant abstention in a federal TILA action despite an underlying state foreclosure action that involves the same property. *Trimmel v. General Elec.*

Case: 1:05-cv-07097 Document #: 723-3 Filed: 04/30/07 Page 7 of 10 PageID #:14396

Page 7

949 F. Supp. 1447, *; 1996 U.S. Dist. LEXIS 19826, **

*Credit Corp.,* [**24] *555 F. Supp. 264 (D.Conn. 1983).* That court held that state foreclosure proceedings are purely private and hence do not implicate important state interests. *Id. at 268.*

> n8 Though the Supreme Court has found abstention appropriate even in a state civil action entirely between private parties, it did so where the federal suit attacked the constitutiality of the state court's bond requirements in that case-- thereby directly implicating the state judiciary process itself. *Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 95 L. Ed. 2d 1, 107 S. Ct. 1519 (1987).*

Second, the instant case does not implicate the important policy reasons that normally justify abstention. Albeit, a ruling by this court on the federal TILA claim may impact the ultimate resolution in the state foreclosure action. However, the federal suit does not directly attack the validity of the state foreclosure proceeding per se, but rather involves a claim for rescission that could ultimately affect the final distribution of the bankruptcy estate. [**25] Notably, the Plaintiff's TILA claims for damages (as distinguished from his claim for recission) do not affect the foreclosure action whatsoever.

Abstaining in this case will not further the policy goal of promoting judicial efficiency. Most importantly, it will not waste judicial resources for this court to hear the case since the state court did not address the TILA claim. n9 Not abstaining in this case will thus [*1457] not duplicate judicial proceedings on the federal TILA issue. In addition, if the federal court abstains from hearing the Plaintiff's federal TILA claim, then this may force the Plaintiff to file the claim in state court because the Plaintiff did not raise the TILA issue in the foreclosure action. Moreover, because Plaintiff's claims involve only federal issues and no pendent state law claims, the case is best suited for adjudication in federal court and abstaining may deny the Plaintiff a federal forum.

> n9 As discussed above, in the foreclosure action Plaintiff stipulated with Defendant to withdraw his answer that raised TILA as a defense. The state court approved the stipulation and, consistent with the stipulation, dismissed Plaintiff's TILA claim with prejudice.

[**26]

For these same reasons of judicial efficiency, the court in Trimmel rejected the reasoning of a district court that granted a stay in a federal TILA action due to a pending state replevin action. *555 F. Supp. at 271.* The Trimmel court explained that allowing the federal court to hear the TILA claims will not flood the courts with litigation or result in a "race to see which court, state or federal, first reaches the Truth-in-Lending issues"--at least where the TILA action was presented only before the federal court. Id., quoting *Wheeler v. Adams Co., 322 F. Supp. 645, 659 (D.Md. 1971).* Similarly, in the present case the TILA action is only before the federal court, not the state court.

For these reasons under the Younger abstention doctrine the court will not abstain from hearing Plaintiff's TILA suit.

B. Colorado River Abstention

Although not raised by the Defendant, the Colorado River abstention doctrine may also be relevant in determining whether to stay federal proceedings in favor of pending state court proceedings involving the same subject matter. *Washington Street Corp. v. Lusardi, 976 F.2d 587 (9th Cir. 1992).* Though courts use this doctrine only [**27] in exceptional circumstances, the Ninth Circuit has applied this doctrine to hold that "in proceedings in rem or quasi in rem, the forum that first assumes custody of the property at issue has exclusive jurisdiction to proceed." *Id. at 589.* In that case the court required the federal court to abstain where both the federal and state court actions were to quiet title to a parcel of real property.

However this doctrine does not apply in the instant case because the federal TILA action here is not an in rem proceeding. Further, unlike the case above, here both the state and federal cases do not involve the same question; rather, the TILA issue was raised only in the federal forum. n10 For these reasons the court will not abstain on the basis of the Colorado River abstention doctrine.

> n10 See supra n.9 (explaining that Plaintiff withdrew his TILA defense in the state foreclosure proceeding).

IV. Liability of Assignees Under TILA

A. Assignees Can Be Liable for Damages Under TILA If the Disclosure [**28] Violation Is "Apparent on the Face"

Defendant appears to assert that assignees of the original lender cannot be liable for damages under TILA. Defendant in turn argues that because it is a mere assignee, the court should dismiss Plaintiff's damages claims. Yet as discussed below, the court rejects this contention and instead finds that assignees can be liable

Case: 1:05-cv-07097 Document #: 723-3 Filed: 04/30/07 Page 8 of 10 PageID #:14397

Page 8

949 F. Supp. 1447, *; 1996 U.S. Dist. LEXIS 19826, **

for damages under TILA if the disclosure violation was apparent on the face of the disclosure documents.

To argue that TILA does not levy damages against assignees, Defendant points out that TILA's definition section, *15 U.S.C. § 1602*(f), does not mention assignees in its definition of the term "creditor." The TILA section which outlines civil liability refers only to this definition of "creditor" and thus arguably does not provide for damages against assignees. *15 U.S.C. § 1640.* However in the section that immediately follows, entitled "Liability of Assignees," TILA clearly contemplates that a court can levy damages against assignees. *15 U.S.C. § 1641.*

Under § 1641, assignees are liable for damages if the disclosure violations made by the original lender are "apparent on the [*1458] face" of the disclosure documents. Specifically, [**29] § 1641 states that:

> "any civil action for a violation of this subchapter... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement."

*15 U.S.C. § 1641*(a) (emphasis added).

Defendant maintains that "neither § 1641 nor any other section provides for a statutory penalty or any award of attorney's fees to be assessed against an assignee as a result of the original assignor's violation of TILA." See Defendant's Memorandum In Support of Motion to Dismiss and for Summary Judgement, p. 8 (hereinafter "Memorandum"). However such a statutory construction ignores the plain language of the statute, which provides for "any civil action" under TILA to also be maintained against assignees, provided the TILA violation is apparent on the face of the disclosure statements. *15 U.S.C. § 1641*(a).

For the Defendant to assert that the only remedy available against assignees is rescission, not monetary damages, defies the plain meaning of § 1641 when read as a whole. Specifically, § 1641(c) states that the preceding subsections [**30] (a) and (b) do not affect the consumer's right to rescind the transaction. Therefore if the requirement in § 1641(a)--for the violation to be "apparent on the face" in order to pursue a civil action against an assignee--does not affect the rescission remedy, then it must instead refer to the damage remedy. In this way, the plain language of § 1641 provides for holding assignees liable for damages.

Despite this statutory language Defendant points to a federal case which found that the assignee in that case could only be liable for rescission, not damages. *Brodo v. Bankers Trust Co., 847 F. Supp. 353 (E.D. Pa. 1994).* However this case does not stand for the proposition for which Defendant asserts it; it does not hold that a court can never hold assignees liable for TILA disclosure violations. Rather, the case merely holds that an assignee cannot be liable for damages if "no TILA violation is apparent on the face of the disclosure statement." *Id. at 359.*

For these reasons the court rejects Defendant's argument that assignees cannot be held liable for damages stemming from disclosure violations, at least where the disclosure violations were "apparent on the face" of the disclosure [**31] statements.

B. Assignees Can Be Liable for Rescission Even If Disclosure Violation Is Not "Apparent on the Face"

As discussed above, the language in § 1641(a) that requires disclosure violations to be "apparent on the face" of the disclosure statement, in order to pursue a TILA damages claim against an assignee, does not affect claims for rescission. Specifically, § 1641(c) explicitly states that § 1641 does not affect the right of a consumer to rescind a transaction against an assignee under § 1635. Stated more explicitly, a consumer may rescind against an assignee to the full extent it would be able to rescind against the original creditor.

Thus because § 1635(f) grants obligors up to three years to rescind if they have not received the proper disclosure statements, the Plaintiff can likewise seek rescission from the Defendant assignee. As a result, the court finds that it cannot dismiss or grant summary judgement on the Plaintiff's rescission claim, despite Defendant's assertion that the disclosure violations were not "apparent on the face" of the disclosure statements. See Memorandum, Section F, pp. 13-14.

C. For Damages Plaintiff Must Allege Disclosure Violation [**32] Is "Apparent On Its Face"

Defendant also argues that Plaintiff fails to allege that the finance charge discrepancy was "apparent on the face" of the disclosure statement. Id. As discussed above, an obligor cannot hold an assignee liable for damages if the TILA violation is not apparent on the face of the disclosure statement; however, the violation need not be apparent on the face of the statement in order for the Plaintiff to pursue a rescission remedy. For this reason the court construes Defendant's motion to in essence argue that Plaintiff's claim [*1459] for damages stemming from the alleged finance charge violation should be dismissed for failure to assert a claim, rather than Plaintiff's rescission claim.

Because the Defendant is an assignee, the court agrees that in order to recover damages Plaintiff must

Case: 1:05-cv-07097 Document #: 723-3 Filed: 04/30/07 Page 9 of 10 PageID #:14398

Page 9

949 F. Supp. 1447, *; 1996 U.S. Dist. LEXIS 19826, **

allege that the finance charge disclosure violation was "apparent on the face" of the disclosure statement given to Plaintiff. However, as discussed above, this claim is nevertheless barred by the statute of limitations.

V. The Plaintiff's Bankruptcy Proceedings Do Not Dictate the Denial of Rescission Remedy

Defendant also argues that the court should dismiss [**33] or grant summary judgement on the Plaintiff's claim for rescission. See Memorandum, Section D, p. 9. In particular, Defendant asserts that the court should not grant rescission because to do so will result in forfeiture by the Defendant. Since control of the Plaintiff's assets have passed to the bankruptcy estate, Defendant argues that Plaintiff could not return the monies advanced to him and therefore the Defendant would not receive any compensation even though a TILA rescission would require it to terminate its security interest in the mortgaged property.

The TILA rescission remedy provides that once the lender rescinds the loan by terminating its security interest, then the obligor must return any monies advanced to it by the lender. Some courts have struggled with the possibility of the creditor's forfeiture when an indigent borrower seeks to rescind a loan under TILA. *Trimmel v. General Elec. Credit Corp., 555 F. Supp. 264, 267-68 (D.Conn. 1983)* (discussing how it is unclear "whether [the] forfeiture rule applies if the debtor, in giving notice of rescission, did not explicitly offer to tender the property of the creditor which he held"). To avoid such results courts [**34] have exercised their equitable discretion to condition the rescission on the obligor's tender of the monies advanced by the lender. *Palmer v. Wilson, 502 F.2d 860, 862 (9th Cir. 1974).* Indeed, the Ninth Circuit has held that a district court errs when it does not do so, at least where the TILA violations are not egregious. *LaGrone v. Johnson, 534 F.2d 1360, 1362 (9th Cir. 1976).*

Bankruptcy courts have also conditioned the use of a consumer-debtor's right to rescind under TILA. See *Lynch v. GMAC Mortgage Corp., 170 Bankr. 26 (D. N.H. 1994); New Maine National Bank v. Gendron, 780 F. Supp. 52 (D. Me. 1991).* These courts equitably conditioned the voiding of a creditor's security interest on the debtor's tender of payment of the loan proceeds. Thus valid rescission by a debtor does not automatically terminate a lender's security interest. n11

---

n11 However at least one court held that bankruptcy courts lack equitable discretion to condition the TILA rescission on the obligor's ability to repay the loan proceeds to the lender. *Celona v. Equitable National Bank, 98 Bankr. 705, 708. (D. Pa. 1989).* Nevertheless the court noted that in the non bankruptcy context courts do have such equitable discretion. In that case the bankruptcy court ordered the loan to be rescinded and then treated the debtor's obligation to pay as an unsecured debt. Id.

---

[**35]

In the instant case, the fact that Plaintiff's assets have passed to the bankruptcy estate does not conclusively bar the right to rescind the loan transaction. Even though the Plaintiff currently appears unable to return the monies that Defendant advanced to it, the court could condition the rescission on Plaintiff's tender of these funds to Defendant. If Plaintiff cannot tender sufficient funds to restore the Defendant to its pre-contract position, then the Defendant need not extinguish its security interest. Under this result the Defendant does not face forfeiture, since the rescission does not occur until the Plaintiff can comply.

For this reason the court declines to dismiss or grant summary judgement on the Plaintiff's rescission claim. The court rejects Defendant's argument that rescission would necessarily work an injustice to Defendant.

VI. There Is A Triable Issue of Fact As To Whether Plaintiff Received a Dated Notice of the Right to Cancel

Lastly, Defendant contends that it has prima facie evidence that Plaintiff received [*1460] a properly dated copy of the "Notice of Right to Cancel," as required by TILA. See Memorandum, Section E, p. 10. Plaintiff contends that [**36] the Notice of Right to Cancel that he received did not disclose the last date on which he could rescind the loan and therefore the notice violates TILA's disclosure requirements. This serves as one basis of Plaintiff's claim that he can rescind the loan within three years of the transaction, rather than just three days.

In contrast, Defendant argues that Plaintiff received a copy of the Notice that included the rescission date disclosure. Defendant asserts that Plaintiff's July 1, 1993 signature on the acknowledgement form serves as prima facie evidence that Plaintiff received the dated Notice, which hence negates Plaintiff's claim for rescission. In turn Defendant contends that the court should find that Plaintiff does not have the right to rescind.

TILA provides that written acknowledgement of receipt of disclosures required under Title *15 U.S.C. § 1601* et seq., by a person to whom TILA requires disclosures be given, "creates a rebuttable presumption of delivery thereof." *15 U.S.C. § 1635*(c) (emphasis added). Citing this provision, Defendant contends that the court should grant summary judgement on the issue of whether

Case: 1:05-cv-07097 Document #: 723-3 Filed: 04/30/07 Page 10 of 10 PageID #:14399

Page 10

949 F. Supp. 1447, *; 1996 U.S. Dist. LEXIS 19826, **

or not Plaintiff received a dated Notice of the Right [**37] to Cancel, since Plaintiff signed and acknowledged receipt of the form on July 1, 1993. In support of its position, Defendant submitted signed and dated copies of the notice, which it contends satisfy the TILA disclosure requirements. See Exhibits "C" and "D," attached to Defendant's Concise Statement Of Facts (filed August 24, 1995).

Yet although § 1635(c) provides for a rebuttable presumption of delivery, to rebut this presumption the Plaintiff produced evidence of an undated Notice of the Right to Cancel. Due to these conflicting versions of the facts, this court previously found that a triable issue of fact exists as to whether the Plaintiff received a dated copy of the Notice of the Right to Cancel. See Order Filed September 12, 1995. Accordingly, the court denies Defendant's instant request to grant summary judgement on the issue of whether Plaintiff received an undated Notice and, in turn, whether Plaintiff is entitled to rescission on the basis of this alleged disclosure violation.

Yet even if the court found that the Plaintiff did receive a properly dated Notice of the Right to Cancel, the court nevertheless could not grant summary judgement on all Plaintiff's [**38] claims for rescission despite Defendant's request for the court to do so. Though Defendant contends that the acknowledgement signed by Plaintiff negates his claim for rescission based on the allegedly undated Notice of the Right to Cancel, Plaintiff asserts an alternate basis for rescission that is unaffected by the rebuttable presumption of the signed acknowledgement form. Specifically, Plaintiff also claims that he is entitled to rescission due to the lender's alleged "material nondisclosure" violation of understating the finance charges by $ 85.

Plaintiff's signature of acknowledgement on the Notice of the Right to Cancel does not affect the validity of Plaintiff's second disclosure violation claim. Even if the Notice of the Right to Cancel had properly disclosed the date on which Plaintiff's three-day right to rescind would expire, Plaintiff would nevertheless have up to three years to rescind the loan if Plaintiff can show that the lender violated TILA by not delivering all material disclosures such as the correct finance charges.

Thus if the alleged understatement of the finance charges constitutes a "material nondisclosure" as defined by TILA, then Plaintiff would be entitled [**39] to rescind the loan within the extended three year period. *12 C.F.R. § 226.23(a)(3)*; *15 U.S.C. § 1635*(f). For this reason at this time the court cannot categorically dismiss or grant summary judgement on all Plaintiff's claims for rescission.

**CONCLUSION**

For the aforementioned reasons the court in part GRANTS and in part DENIES the Defendant's motion to dismiss and for summary judgement.

First, the court GRANTS summary judgement in favor of Defendant as to those of Plaintiff's damages claims which are based [*1461] on his allegations that (1) he did not receive a dated Notice of the Right to Rescind and (2) the disclosure statement understated the finance charges. These damages claims are barred by the statute of limitations. Further, the final amended complaint does not allege that these disclosure violations were "apparent on the face" of the disclosure statements.

Second, the court finds that the trustee in bankruptcy should be substituted as plaintiff in this case, unless the Plaintiff can show that the TILA cause of action is exempt from the bankruptcy estate or has been abandoned by the trustee. Accordingly, the court will give Plaintiff 30 days from the date of this Order [**40] to substitute the trustee in bankruptcy or to show cause why it is not necessary to do so. Otherwise the court will automatically DISMISS the case with prejudice.

In all other respects the court DENIES Defendant's motion to dismiss and for summary judgement, though the court notes that this Order does not consider issues raised by the Defendant for the first time in its Supplemental Memorandum. The court gives the Defendant 60 days from the date of this Order to file a motion as to the TILA Amendments, in the event that this case is not dismissed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, JAN 17 1996.

Alan C. Kay

Chief United States District Judge