# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: NON-BORROWERS' CONSOLIDATED COMPLAINT [DOCKET NO. 323] | |

## DEFENDANT AMERIQUEST CAPITAL CORPORATION'S ANSWER TO NON-BORROWERS CONSOLIDATED COMPLAINT FOR CLAIMS

Defendant AMERIQUEST CAPITAL CORPORATION ("ACC" or "Defendant"), for itself alone,[1] by and through its attorneys, answers Plaintiffs Raymond Quarterman, Jr., Adolph Peter Kurt Burggraff, Thomas J. Klutho and Mary Forrest ("Plaintiffs") Consolidated Complaint for Claims of Non-Borrowers ("Complaint") as follows:

Plaintiffs, Raymond Quarterman, Jr., Adolph Peter Kurt Burggraff, Thomas J. Klutho and Mary Forrest, bring this action, individually and on behalf of the class(es) of non-borrowers defined below, against Defendants, Ameriquest Capital Corporation and Ameriquest Mortgage Company. Plaintiffs, by their attorneys, hereby consolidate the complaints filed in the following actions:

*Burgraff v. Ameriquest Mortgage Co.,* Case No. 2:04-cv-09715 (MMM), U.S. District Court for the Central District of California;

---

[1] Defendant Ameriquest Capital Corporation objects to the collective definition of "Ameriquest" that Plaintiffs attempt to use. Defendant Ameriquest Mortgage Company and Defendant Ameriquest Capital Corporation are two separate corporate entities. Thus, the collective definition of "Ameriquest" and its use in the Complaint create confusion as to which allegations are intended to refer to which corporate entity. For purposes of this Answer, Ameriquest Capital Corporation assumes that everywhere Plaintiffs use the term "Ameriquest" in the Complaint, they are referring to Ameriquest Capital Corporation. Ameriquest Mortgage Company has filed a separate answer on its own behalf.

- 1 -

*Forrest v. Ameriquest Mortgage Co.*, Case No 2:06-cv-00012 (JPS), U.S. District Court for the Eastern District of Wisconsin;

*Klutho v. Ameriquest Mortgage Co.,* Case No. 6-CV-00746 (CDP), U.S. District Court for the Eastern District of Missouri;

*Quarterman v. Ameriquest,* Case No. 2:05-cv-01426 (MMM), U.S. District Court for the Central District of California.

By this consolidation, the allegations in each of these complaints are intended to be reserved as if reasserted and alleged herein. Plaintiffs allege the following upon information and belief, among other things, upon the investigation made by Plaintiffs by and through their attorneys:

**ANSWER:**     ACC admits that Plaintiffs filed the present civil action and the other actions listed in Paragraph 1, but denies that Plaintiffs are entitled to any redress and denies any remaining allegations of this Paragraph.


## PARTIES

1.     Plaintiff Raymond Quarterman, Jr. is a resident of Orlando, Florida. Mr. Quarterman did not obtain a loan from Defendants, but has been a victim of Ameriquest's herein described unlawful practices during the period covered by this consolidated action.

ANSWER:     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC lacks sufficient information or belief upon which to admit or deny the allegations of the first sentence of this paragraph and on that basis denies such allegations. ACC admits Quarterman did not obtain a loan from ACC. Inasmuch as the allegations of paragraph 1 constitute conclusions of law, no response is required. ACC denies the remaining allegations of paragraph 1.

2.     Plaintiff Adolph Peter Kurt Burggraff is a resident of West Richland, Washington. Mr. Burggraff did not obtain a loan from Defendants, but has been a victim of Ameriquest's herein described unlawful practices during the period covered by this consolidated action.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC lacks sufficient information or belief upon which to admit or deny the allegations of the first sentence of this paragraph and on that basis denies such allegations. ACC admits Burggraff did not obtain a loan from ACC. Inasmuch as the allegations of this paragraph constitute conclusions of law, no response is required. ACC denies the remaining allegations of this paragraph.

3.     Plaintiff Thomas J. Klutho is a resident of St. Louis County, Missouri. Mr. Klutho did not obtain a loan from Defendants, but has been a victim of Ameriquest's herein described unlawful practices during the period covered by this consolidated action.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC lacks sufficient information or belief upon which to admit or deny the allegations of the first sentence of this paragraph and on that basis denies such allegations. ACC admits Klutho did not obtain a loan from ACC. Inasmuch as the allegations of this paragraph constitute conclusions of law, no response is required. ACC denies the remaining allegations of this paragraph

4.     Plaintiff Mary Forrest is a resident of Milwaukee, Wisconsin. Ms. Forrest did not obtain a loan from Defendants, but has been a victim of Ameriquest's herein described unlawful practices during the period covered by this consolidated action.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC lacks sufficient information or belief upon which to admit or deny the allegations of the first sentence of this paragraph and on that basis denies such allegations. ACC admits Forrest did not obtain a loan from ACC. Inasmuch as the allegations of the paragraph constitute conclusions of law, no response is required. ACC denies the remaining allegations of the paragraph.

5.     Defendant Ameriquest Mortgage Company is a wholly owned subsidiary of Ameriquest Capital Corporation and has its principal place of business in Orange, California.

**ANSWER:** ACC denies that Ameriquest Mortgage Company is a wholly owned subsidiary of ACC. ACC admits that its principal place of business is in Orange, California.

6.    Defendant Ameriquest Capital Corporation is a privately held Delaware corporation with its principal place of business in Orange, California.

**ANSWER:** Admit.

7.    Defendants Ameriquest Capital Corporation and Ameriquest Mortgage Company (hereinafter collectively referred to as "Ameriquest") participate in the business of, among other things, obtaining consumer reports on individuals and using such information to offer and underwrite credit and mortgage loans to individuals throughout the United States. Defendants are "creditors" within the meaning of the Equal Credit Opportunity Act ("ECOA") as set forth in 15 U.S.C. § 1691a(e). Credit reports are consumer reports as that term is used in the Fair Credit Reporting Act, 15 U.S.C. § 1681a(d).

**ANSWER:** Defendant ACC (erroneously referred to herein as "Ameriquest") objects to the collective definition of "Ameriquest" since Ameriquest Capital Corporation and Ameriquest Mortgage Company are two separate corporate entities. Plaintiffs' collective treatment of ACC and Ameriquest Mortgage Company serves no purpose other than to cause confusion and obfuscate the differences between the entities. ACC therefore answers for itself alone and responds as though each allegation regarding "Ameriquest" is an allegation directed to ACC. Ameriquest Mortgage Company has filed a separate Answer on its behalf. To the extent the allegations of this paragraph are directed to ACC, ACC denies that ACC participates in the business of obtaining consumer reports on individuals and denies using such information to offer and underwrite credit and mortgage loans to individuals throughout the United States. The remainder of this paragraph constitutes a legal conclusion and thus no response is required. If a response is required, ACC denies the remaining allegations of this paragraph.

8.    Defendants also obtain consumer reports on individuals and use such information to solicit individuals throughout the United States to enter credit transactions with Defendants, including the refinancing of home equity loans.

**ANSWER:** ACC is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are

directed to ACC, ACC denies that ACC obtains consumer reports on individuals, and denies that ACC uses such information to solicit individuals throughout the United States to enter into credit transactions, including the refinancing of home equity loans.

9.       Defendants are users of consumer reports as that term is used in the Fair Credit Reporting Act, 15 U.S.C. § 1681m.

**ANSWER:**     ACC is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  Since the term "user of consumer reports" is not defined in the Fair Credit Reporting Act ("FCRA"), ACC lacks sufficient information or belief upon which to admit or deny the allegation that ACC is a "user of consumer reports as that term is used in the Fair Credit Reporting Act." Based thereon, ACC denies the allegations of this paragraph.

10.       At all times mentioned herein, Defendants, and each of them, were an agent of joint venturer of the other Defendant and, in doing the acts alleged herein, were acting within the course and scope of such agency. Each Defendant had actual or constructive knowledge of the acts of the other Defendant, and ratified, approved, joined in, acquiesced, and authorized the wrongful acts of each co-Defendant, and retained the benefits of said wrongful acts.

**ANSWER:**     ACC is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

11.       Defendants, and each of them, aided, abetted, encouraged, and rendered substantial assistance to the other Defendant in the wrongful acts and other wrongdoings complained of herein, and each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**ANSWER:**     ACC is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

**JURISDICTION AND VENUE**

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 based upon claims brought pursuant to the FCRA, 15 U.S.C. § 1681p, and the ECOA, 15 U.S.C. §§ 1691, *et seq.*

**ANSWER:**     ACC is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC admits the allegations of this paragraph.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and the and pursuant to the transfer order of the Judicial Panel on Multidistrict Litigation.

**ANSWER:**     ACC is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC does not contest personal jurisdiction or venue.  ACC denies any remaining allegations in this paragraph.

**THE FCRA AND ECOA**

14.     The FCRA, 15 U.S.C. §§ 1681-1681t, is a federal statute first enacted in 1971. The FCRA is a consumer protection statute that regulates the activities of credit reporting agencies and users of credit reports, and provides certain rights to consumers affected by use of their consumer reports. In 1996, the FCRA was amended to expand the rights of consumers who are adversely affected by use of their consumer report information. As recently as December 2003, Congress amended the FCRA to provide even more protection to the consumer than was afforded in the expansive 1996 amendments.

**ANSWER:**     Admit the FCRA was enacted in 1971 and is a federal statute codified at 15 U.S.C. §§ 1681-1681t.  With regard to the remainder of the paragraph, the statute speaks for itself.

## PERMISSIBLE PURPOSE

15.     Congress designed the FCRA to preserve the consumer's right to privacy by safeguarding the confidentiality of the information maintained by consumer reporting agencies. Congress stated in the opening section of the FCRA, "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

**ANSWER:**     ACC is without sufficient information to admit or deny the first sentence of this paragraph and on that basis denies the first sentence. ACC admits the second sentence of this paragraph restates 15 U.S.C. § 1681(a)(4).

16.     Congress has chosen to protect the consumer's right to privacy by prohibiting any release of consumer reports unless the release is for one of the permissible purposes listed in 15 U.S.C. § 1681b.

**ANSWER:**     ACC admits the FCRA requires the presence of one of the enumerated permissible purposes listed in the FCRA.

17.     Under the FCRA, the term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in the underwriting of credit transactions involving the consumer. Credit reports and prescreening lists provided by credit reporting agencies are consumer reports. 15 U.S.C. § 1681a(d).

**ANSWER:**     This paragraph constitutes a legal conclusion and thus no response is necessary. If a response is necessary, ACC denies this allegation.

18.     Section 1681b(t) in turn provides, "A person shall not use or obtain a consumer report for any purpose unless - (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section [1681b]."

**ANSWER:**     ACC admits that this paragraph restates a portion of 15 U.S.C. 1681b(f).

19.     The permissible purposes listed in 1681b usually arise only in connection with transactions initiated by the consumer. See § 1681b(a)(3)(A)-(F) (authorizing the use of consumer reports when the consumer has applied for credit, employment or insurance).

**ANSWER:**     This paragraph constitutes a legal conclusion and thus no response is necessary. If a response is necessary, ACC denies this allegation.

20.     One of the few circumstances in which the FCRA allows the use of a consumer report in the absence of a consumer-initiated transaction is when the recipient of the information undertakes to extend to the consumer a "firm offer of credit." See § 1681b(c)(1)(B).

**ANSWER:**     ACC admits issuing a "firm offer of credit" is a permissible use of consumer information.   The remainder of this paragraph constitutes a legal conclusion and thus no response is necessary.  If a response is necessary, ACC denies this allegation.

21.     Because a prescreening user is obtaining access to the consumer's private and confidential information in a transaction not initiated by the consumer, the FCRA imposes strict conditions on the offers. The "firm offer of credit" must be one that "will be honored" if the consumer meets specific criteria used to select the consumer for such offer. See 1681 a(1). The "firm offer of credit" must be more than a mere advertisement or solicitation and must have value to the consumer.

**ANSWER:**     This paragraph constitutes a legal conclusion and thus no response is necessary. If a response is necessary, ACC denies this allegation.

### CLEAR AND CONSPICUOUS DISCLOSURES IN WRITTEN SOLICITATIONS

22.     Users who invoke the "firm offer of credit" permissible purpose must, pursuant to § 1681m(d), provide to each consumer who receives a written firm offer a "clear and conspicuous statement" that discloses (A) that information contained in the consumer's consumer report was used in connection with the transaction; (B) the offer is conditioned upon certain additional criteria; (C) the offer may not be extended if the consumer does not continue to meet those criteria or does not provide required collateral; and (D) the consumer has the right to

prohibit the future use of his or her credit report in connection with unsolicited firm offers of credit or insurance. This last disclosure is known as the "opt-out" of future offers. The clear and conspicuous disclosure must also provide the consumer with a toll-free number to call if the consumer wishes to prevent such promotional uses of his or her credit report in the future.

**ANSWER:**     This paragraph constitutes a legal conclusion and thus no response is necessary. If a response is necessary, ACC denies this allegation.

23.     The FCRA provides for civil remedies to consumer for violations of the Act, including actual damages, nominal damages, statutory damages, punitive damages, costs and attorneys' fees. 15 U.S.C. § 1681n.

**ANSWER:**     This paragraph constitutes a legal conclusion and thus no response is necessary. If a response is necessary, ACC denies this allegation.

## AMERIQUEST'S PRESCREENING PRACTICES

24.     Ameriquest regularly obtains consumer reports on large numbers of individuals without their knowledge or consent by purchasing "prescreening" lists from consumer reporting agencies, including Equifax.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that it regularly obtains consumer reports on large numbers of individuals without their knowledge or consent by purchasing "prescreening" lists from consumer reporting agencies, including Equifax.

25.     Ameriquest uses these prescreening lists to contact the targeted individuals by mail.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that it uses prescreening lists to contact the targeted individuals by mail.

26.     Ameriquest also requires its agents to follow a script in telephone calls to individuals on the prescreening lists. Ameriquest's script reinforces Ameriquest's training of its agents to not make an offer of credit or even disclose an interest rate which Ameriquest would charge the individuals.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

27.     Ameriquest mails written solicitations to the individuals on the prescreening lists which Ameriquest purchased from consumer reporting agencies.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

28.     Ameriquest's written solicitations to individuals on the prescreening lists do not make or extend any offer or even provide any of the essential terms of a credit transaction, such as an interest rate.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that it makes written solicitations to individuals on prescreening lists. The remainder of this paragraph constitutes a legal conclusion and thus no response is required. If a response is required, ACC denies the remaining allegations of this paragraph.

29.     Ameriquest's written solicitations sent to individuals on the prescreening lists do not provide in a clear and conspicuous manner the disclosures required by FCRA.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that it sends written solicitations to individuals on prescreening lists. The remainder

of this paragraph constitutes a legal conclusion and thus no response is required. If a response is required, ACC denies the remaining allegations of this paragraph.

## ADVERSE ACTION NOTICE REQUIREMENTS

30.     The FCRA also provides that if the user of a consumer report takes any adverse action with respect to a consumer based in whole or in part on any information contained in the consumer report, the user of the report must provide notice to the consumer of the adverse action, together with the identity of the consumer reporting agency providing the consumer report and other specific information, including the consumer's right to dispute the accuracy of information in the report and to receive a free copy of the offending report. 15 U.S.C. § 1681m.

**ANSWER:**     This paragraph constitutes legal conclusions and thus no response is required. If a response is required, ACC denies the allegations of this paragraph.

31.     ECOA also has notice requirements regarding adverse actions related to denial or revocation of credit, changes in the terms of exiting credit arrangements, and refusals to grant credit in substantially the amounts or terms requested. 15 U.S.C. § 1691(d).

**ANSWER:**     This paragraph constitutes legal conclusions and thus no response is required. If a response is required, ACC denies the allegations of this paragraph.

32.     The FCRA and ECOA adverse action notice provisions are meant to provide consumers with notice and warn them that their consumer reports have been used adversely to their interests.

**ANSWER:**     This paragraph constitutes legal conclusions and thus no response is required. If a response is required, ACC denies the allegations of this paragraph.

33.     Information contained in credit reports changes constantly, making it vital to the proper operation of the FCRA and ECOA that contemporaneous notice be given of adverse action. By not providing contemporaneous notice to the consumer, the user of the report makes it difficult, if not impossible, to determine at a later date what potentially erroneous information might have been contained in the consumer report.

**ANSWER:**     This paragraph constitutes legal conclusions and thus no response is required.  If a response is required, ACC denies the allegations of this paragraph.

34.     The FCRA and ECOA provide for civil remedies to consumers for violations of the act, including actual damages, nominal damages, statutory damages, punitive damages, costs and attorneys' fees. 15 U.S.C. § 1681n, and §§ 1691e(b) and (d).

**ANSWER:**     This paragraph constitutes legal conclusions and thus no response is required.  If a response is required, ACC denies the allegations of this paragraph.

## INDIVIDUAL FACTUAL ALLEGATIONS

### Raymond Quarterman, Jr.

35.     Ameriquest obtained numerous consumer reports on Raymond Quarterman, Jr., during the period from February 10, 2004, through December 9, 2004, all without his knowledge or consent.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies that it obtained numerous consumer reports on Raymond Quarterman, Jr. during the period from February 10, 2004 through December 9, 2004.  ACC denies the remaining allegations of this paragraph.

36.     Raymond Quarterman, Jr., did not initiate any transactions with Ameriquest.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC admits that Raymond Quarterman, Jr. did not initiate any transactions with ACC.

37.     After Ameriquest obtained consumer reports on Raymond J. Quarterman, Jr., Ameriquest mailed Raymond Quarterman, Jr., a standardized written solicitation, a copy of which is attached as Exhibit A.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this

paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that it obtained consumer reports on Raymond J. Quarterman, Jr. ACC denies the remaining allegations of this paragraph.

38. Ameriquest's solicitation to Raymond Quarterman, Jr. is merely a sham solicitation that makes no firm offer. The solicitation merely urges Raymond Quarterman, Jr., to "call us now."

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

39. The solicitation fails to state any amount of credit to be extended, fails to state the rate of interest to be charged, and fails to state the method of computing interest and the length of the repayment period. The solicitation is so devoid of terms that neither the lender nor Raymond Quarterman, Jr., can determine whether it is advantageous to extend or accept the "offer."

**ANSWER:**    This paragraph constitutes legal conclusions and thus no response is required. If a response is required, ACC denies the allegations of this paragraph.

40. Ameriquest's solicitation does not contain or qualify as a "firm offer of credit" under FCRA.

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

41. Ameriquest's solicitation also fails to make the disclosures required by § 1681m(d) in a clear and conspicuous manner.

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To

the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

**Thomas J. Klutho**

42.     Ameriquest obtained a consumer reports on Thomas J. Klutho without his

knowledge or consent.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies that it obtained consumer reports on Thomas J. Klutho.  ACC denies the remaining allegations of this paragraph.

43.     Thomas J. Klutho, did not initiate any transactions with Ameriquest.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC admits that Thomas J. Klutho did not initiate any transactions with ACC.

44.     After Ameriquest obtained a consumer report on Thomas J. Klutho, Ameriquest

mailed Thomas J. Klutho, in March or April 2006, a standardized written solicitation, a copy of

which is attached as Exhibit B.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies that it obtained a consumer report on Thomas J. Klutho.  ACC denies the remaining allegations of this paragraph.

45.     Ameriquest's solicitation to Thomas J. Klutho is merely a sham solicitation that

makes no firm offer. The solicitation merely urges Thomas J. Klutho, to call Ameriquest to apply

for a loan.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To

the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

46.     The solicitation fails to state any amount of credit to be extended, fails to state the rate of interest to be charged, and fails to state the method of computing interest and the length o£ the repayment period. The solicitation is so devoid of terms that neither the lender nor Thomas J. Klutho, can determine whether it is advantageous to extend or accept the "offer."

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

47.     Ameriquest's solicitation does not contain or qualify as a "firm offer of credit" under FCRA.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

**Mary Forrest**

48.     Ameriquest obtained a consumer report on Mary Forrest without her knowledge or consent.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies that it obtained a consumer report on Mary Forrest.  ACC denies the remaining allegations of this paragraph.

49.     Mary Forrest did not initiate any transactions with Ameriquest.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the

allegations of this paragraph.  ACC admits that Mary Forrest did not initiate any transactions with ACC.

50.     After Ameriquest obtained a consumer report on Mary Forrest, Ameriquest mailed Mary Forrest standardized written solicitations, beginning in or about August 2005, copies of which are attached as Exhibits C, D, and E.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies that it obtained a consumer report on Mary Forrest.  ACC denies the remaining allegations of this paragraph.  ACC denies the remaining allegations of this paragraph.

51.     Ameriquest's solicitations to Mary Forrest are merely sham solicitations that make no firm offer. The solicitation merely urges Mary Forrest to apply for a loan

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

52.     The solicitations fail to state any amount of credit to be extended, fail to state the rate of interest to be charged, and fail to state the method of computing interest and the length of the repayment period. The solicitations are so devoid of terms that neither the lender nor Mary Forrest, can determine whether it is advantageous to extend or accept the "offer.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

53.     Ameriquest's solicitations do not contain or qualify as "firm offers of credit" under FCRA.

**ANSWER:**   ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

## Adolph Peter Kurt Burggraff

54.   In April 2003, Adolph Peter Kurt Burggraff was contacted by Ameriquest and offered refinancing terms on his home, including 5.9% interest on a 15 year loan. Plaintiff had not previously applied for a refinancing loan, and Ameriquest obtained his name and consumer information from a credit reporting agency.

**ANSWER:**   ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that Mr. Burggraff sought financing from ACC. ACC lacks sufficient information or belief upon which to admit or deny the remaining allegations of this paragraph, and on that basis denies such allegations.

55.   Subsequently, Mr. Burggraff was informed that his "preliminary" terms had changed to terms of 7.151 % on a 30 year loan.

**ANSWER:**   ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that Mr. Burggraff sought financing from ACC. ACC lacks sufficient information or belief upon which to admit or deny the remaining allegations of this paragraph, and on that basis denies such allegations.

56.   Finally, in June, 2003, Mr. Burggraff was informed that the final terms being offered to him were a loan at 9.697% for 30 years. Mr. Burggraff refused to close on the proposed loan based on the increased terms.

**ANSWER:**   ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that Mr. Burggraff sought financing from ACC. ACC lacks sufficient information or

belief upon which to admit or deny the remaining allegations of this paragraph, and on that basis denies such allegations.

57.    Ameriquest did not inform Mr. Burggraff that the quoted terms for the refinancing loan were increased over the best available terms due to information in a consumer report. Ameriquest did not provide Mr. Burggraff with the requisite adverse action notices under either FCRA or ECOA.

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that Mr. Burggraff sought financing from ACC. ACC lacks sufficient information or belief upon which to admit or deny the remaining allegations of this paragraph, and on that basis denies such allegations.

58.    Ameriquest's regular business practice is to use consumer reports in connection with the prescreening of individuals for whom credit terms will be proposed. When Ameriquest then offers less favorable terms of credit based in whole or in part on information from the consumers' credit reports, Ameriquest regularly fails to provide consumers with the requisite adverse action notices under either FCRA or ECOA. These procedures are uniformly engaged in by Ameriquest through its electronic systems that are used throughout the United States.

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that its business practice is to use consumer reports in connection with the prescreening of individuals for whom credit terms will be proposed. The remainder of this paragraph constitutes a legal conclusion and thus no response is required. If a response is required, ACC denies the remaining allegations of this paragraph.

59.    Ameriquest took adverse action against Mr. Burggraff by offering him less than the best available credit terms based in whole or in part upon information in a consumer report. Ameriquest was a user of consumer reports and took adverse action against Mr. Burggraff in connection with the prescreening, underwriting, and offers of credit to Mr. Burggraff.

**ANSWER:**   ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

60.     Ameriquest failed to provide Mr. Burggraff with any notification, oral, written or electronic, advising Mr. Burggraff of the adverse actions against him, as required by FCRA, nor did Ameriquest provide a written notice as required by ECOA.

**ANSWER:**   This paragraph constitutes a legal conclusion and thus no response is required. If a response is required, ACC denies the remaining allegations of this paragraph.

61.     As the user of credit reports in connection with such credit transactions for consumers, Ameriquest has the obligation under the FCRA and ECOA to ensure that consumers receive notice of adverse action. Ameriquest failed to do so, and failed to make arrangements to ensure that anyone else would provide such notice to Mr. Burggraff.

**ANSWER:**   This paragraph constitutes a legal conclusion and thus no response is required. If a response is required, ACC denies the remaining allegations of this paragraph.

62.     Ameriquest improperly shifted the burden to Mr. Burggraff to determine that adverse action was taken against him, and failed to disclose to Mr. Burggraff the information required by the FCRA and ECOA.

**ANSWER:**   ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

## CLASS ACTION ALLEGATIONS

63.     Plaintiffs Raymond Quarterman, Jr., Thomas J. Klutho and Mary Forrest bring this action under the FCRA on behalf of themselves and as representatives of the following proposed class of non-borrowers (Sub-class A):

All individuals throughout the United States whose consumer

- 19 -

> reports were obtained or used by Ameriquest in connection with a
> credit transaction not initiated by them and who did not receive a
> firm offer of credit from Ameriquest, and who did not obtain a
> loan from Ameriquest.

**ANSWER:** ACC admits that Plaintiffs filed the present civil action on behalf of themselves and a class, but denies that a class is appropriate and denies that Plaintiffs, or the class they purport to represent are entitled to any redress. ACC denies that it violated FCRA, and denies any remaining allegations of this paragraph.

64.     Plaintiffs Raymond Quarterman, Jr., brings this action under the FCRA on behalf of himself and as representative of the following proposed sub-class of non-borrowers (Sub-class B):

> All individuals throughout the United States whose consumer
> reports were obtained or used by Ameriquest in connection with a
> credit transaction not initiated by them, and who received from
> Ameriquest a written solicitation to enter a credit transaction which
> did not provide the clear and conspicuous disclosures required by
> 15 U.S.C. § 1681m(d), and who did not obtain a loan from
> Ameriquest.

**ANSWER:** ACC admits that Plaintiff filed the present civil action on behalf of himself and a class, but denies that a class is appropriate and denies that Plaintiffs, or the class he purports to represent are entitled to any redress. ACC denies that it violated FCRA, and denies any remaining allegations of this paragraph.

65.     Plaintiff Adolph Peter Kurt Burggraff, brings this action under the FCRA and ECOA on behalf of himself and as representative of the following proposed sub-class of non-borrowers (Sub-class C):

> Residents of the United States who on or after April 2001, were
> offered less than the best available terms for credit transactions by
> Ameriquest, based in whole or in part upon information contained
> in a consumer report, without disclosures being provided to them
> as required by the Fair Credit Reporting Act and Equal Credit
> Opportunity Act, and who failed to receive adverse action notices
> under each Act, and who did not obtain a loan from Ameriquest.

**ANSWER:** ACC admits that Plaintiff filed the present civil action on behalf of himself and a class, but denies that a class is appropriate and denies that Plaintiffs, or the class he purports to represent are entitled to any redress. ACC denies that it violated FCRA or ECOA, and denies any remaining allegations of this paragraph.

66.     Excluded from the Class[2] are all directors, officers, agents and/or employees of Ameriquest, and members of their immediate families.

**ANSWER:**     No response is necessary.

67.     Pursuant to Fed. R. Civ. P. 23, the FCRA and ECOA, this action may be maintained as a class action because all procedural elements are satisfied, as set forth below:

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

## 1. Numerosity

68.     Ameriquest is in the business of obtaining consumer reports relating to consumers throughout the United States and using credit reports in mass marketing nationwide. The number of consumers/non-borrowers nationwide with respect to whom Ameriquest obtained consumer reports and solicited the consumer to enter a credit transaction all without undertaking to make a firm offer of credit as required under the FCRA is in excess of several thousand. The exact number and identity of Sub-class A Members is unknown to Plaintiffs but can easily be determined from the records of Ameriquest.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that it is in the business of obtaining consumer reports relating to consumers throughout the United States and using credit reports in mass marketing nationwide. ACC denies the remainder of this paragraph.

69.     The number of consumers/non-borrowers nationwide with respect to who Ameriquest obtained consumer reports and solicited the consumer through a mail piece that did not provide clear and conspicuous disclosures as required by 15 U.S.C. § 1681m(d) is in excess

---

[2]   Unless otherwise specified, the terms "the class" or "Class Members" shall refer to the members of all three sub-classes defined above.

of several thousand. The number and identity of Sub-class B Members is unknown to Plaintiffs, but can easily be determined from the records of Ameriquest.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action. ACC denies that it obtained consumer reports and solicited consumers through any mail piece. As to the remaining allegations of this paragraph, ACC denies them.

70. The number of consumers/non-borrowers nationwide with respect to whom Ameriquest took an adverse action under the FCRA and ECOA and failed to provide the information and notices required under the FCRA and ECOA is in excess of several thousand. The exact number and identity of Sub-class C Members is unknown to Plaintiffs but can easily be determined from the records of Ameriquest.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

71. The Class is so numerous that it would be impractical to join all of the members of the Class within the meaning of Rule 23(a)(1).

**ANSWER:** ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

### 2. Commonality

72. On behalf of Sub-class A, Plaintiffs Raymond Quarterman, Jr., Thomas J. Klutho and Mary Forrest, bring claims which raise questions of law and fact common to all members of Sub-class A, as contemplated by Rule 23(a)(2). Common issues include:

(a)    Whether Ameriquest violated the FCRA by failing, as a matter of practice, to make a firm offer of credit to Plaintiffs and other consumers after obtaining or using consumer reports on Plaintiffs and other consumers in connection with credit transactions not initiated by Plaintiffs and other consumers;

(b)    Whether Ameriquest was a user of consumer reports when it obtained consumer reports relating to Plaintiffs and other consumers;

(c)    Whether Ameriquest's practice of obtaining consumer reports in connection with credit transactions not initiated by the consumer and then failing to undertake to make a firm offer of credit to the consumer as required by FCRA was willful;

(d)    Whether members of the Class are entitled to recover statutory and punitive damages as a result of Ameriquest's actions in violating the FCRA.

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

73.    On behalf of the Sub-class B, Plaintiffs Raymond Quarterman, Jr., brings claims which raise questions of law and fact common to all members of Sub-class B, as contemplated by Rule 23(a)(2). Common issues include:

(a)    Whether Ameriquest obtained consumer reports in connection with credit transactions not initiated by the consumer and then in providing the consumer with a written solicitation did so without clear and conspicuous disclosures as required by the FCRA;

(b)    Whether Ameriquest's actions in obtaining consumer reports in connection with credit transactions not initiated by the consumer and then providing the consumer with a written solicitation without clear and conspicuous disclosures as required by FCRA was willful; and

(c)    Whether members of Sub-class B are entitled to recover statutory and punitive damages as a result of Ameriquest's actions in violating the FCRA.

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

74.    On behalf of Sub-class C, Plaintiff Adolph Peter Kurt Burggraff brings claims which raise questions of law and fact common to all members of Sub-class C, as contemplated by Rule 23(a)(2). Common issues include:

(a)    Whether Ameriquest is a user of consumer reports when it uses consumer reports to set the final terms of credit transactions with Plaintiff and other members of Sub-class C based upon information obtained about Plaintiff and other consumers from consumer reports;

(b)    Whether Ameriquest violated the FCRA and ECOA when it took adverse action against Plaintiffs and other members of Sub-class C based in whole or in part on information contained in consumer reports, failed to properly advise them that adverse actions had been taken against them, and failed to properly provide Plaintiff and other members of Sub-class C with the information and notices required under FCRA and ECOA;

(c)     Whether Ameriquest violated the FCRA and ECOA when it took adverse actions against Plaintiff and other members of Sub-class C based in whole or in part on information contained in consumer reports without providing the notices required under the FCRA and ECOA;

(d)     Whether the actions of Ameriquest in failing or refusing to provide adequate notice as required by the FCRA and ECOA were willful; and

(g)     Whether Plaintiff and other members of the Sub-class C are entitled to recover statutory and punitive damages as a result of Ameriquest's actions in violating the notice requirements of the FCRA and ECOA.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action.  As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

### 3. Typicality

75.     In accordance with the requirements of Fed. R. Civ. P. 23(a)(3), the claims of Plaintiffs Raymond Quarterman, Jr., Thomas J. Klutho and Mary Forrest, are typical of the claims of all other members of Sub-class A, and the representative Plaintiffs have no interests which are adverse or antagonistic to the interests of Sub-class A. The representative Plaintiffs' claims are typical of the claims of Sub-class A because all such claims arise from a series of identical business practices, or a common course of conduct, involving Ameriquest's practice of obtaining and using consumer reports in connection with credit transactions not initiated by consumers and not undertaking to make the consumers firm offers of credit.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC  denies that this action may be maintained as a class action.  As to the remaining allegations of

this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

76.     In accordance with the requirements of Fed. R. Civ. P. 23(a)(3), the claims of Plaintiff Raymond Quarterman, Jr., are typical of the claims of all other members of Sub-class B, and the representative Plaintiff has no interests which are adverse or antagonistic to the Class because all such claims from a series of identical business practices, or a common course of conduct, involving Ameriquest's failure to provide clear and conspicuous disclosures as required by 15 U.S.C. § 168lm(d). The representative Plaintiffs claims are typical of the claims of the sub-Class B because the claims arise from Ameriquest's practice of obtaining and using consumer reports in connection with credit transactions not initiated by consumers and then providing the consumers with written solicitations which do not provide the clear and conspicuous disclosures required by the FCRA.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

77.     In accordance with the requirements of Fed. R. Civ. P. 23(a)(3), the claims of Plaintiff Adolph Peter Kurt Burggraff are typical of all other members of Sub-class C, and the representative Plaintiff has no interests which are adverse or antagonistic to the interests of Sub-class C. The representative Plaintiffs claims are typical of the claims of Sub-class C because all such claims arise from a series of identical business practices, or a common course of conduct, involving the failure of Ameriquest to notify consumers that adverse actions had been taken against them, and Ameriquest's failure to provide other required information to consumers, in violation of the FCRA and ECOA.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

### 4. Adequacy

78. In accordance with the requirements of Fed. R. Civ. P. 23(a)(4), the representative Plaintiffs and their counsel will fairly and adequately represent and protect the interests of each member of the Classes. The representative Plaintiffs and each Sub-class share common interests, and the representative Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in class action litigation.

**ANSWER:** ACC denies that this action may be maintained as a class action. ACC lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies the allegations.

### Rule 23(b)(3) Allegations

79. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Members of each Sub-class will continue to suffer damages, and will continue to be harmed by Ameriquest obtaining and using their consumer reports without a permissible purpose as required by law, will continue to be harmed by Ameriquest obtaining and using their consumer reports in connection with credit transactions not initiated by them followed by Ameriquest making written solicitations without providing clear and conspicuous disclosures required by the FCRA, and will continue to be harmed by the failure of Ameriquest to provide adverse action notices as required by law. The violations of the law by Ameriquest will proceed without remedy while Ameriquest continues to ignore its legal obligations under the law, and consumers will be left unaware of the violation of their rights on a daily basis.

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

80.    Most individual Sub-class Members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, damages available to individual Class Members.

**ANSWER:**    ACC  denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

81.    This action will result in an orderly and expeditious administration of each Sub-classes' claims. Economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.

**ANSWER:**    ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

82.    This action presents no difficulty that would impeded its management by the Court as a class action. When the liability of Ameriquest has been adjudicated, the damages of each Sub-class Member can be administratively determined. In addition, a willful violation of the law may be remedied by this Court through imposition of a fine based upon each violation of the FCRA and ECOA. A class action is superior to other available methods of the fair and efficient adjudication of each of Sub-class Member's claim.

**ANSWER:**    ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or

information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

83.     The questions of fact common to the claims of each member of Sub-class A, relating to the uniform failure to make a firm offer of credit after obtaining or using consumer reports relating to Plaintiffs and other consumers, predominate over any facts affecting only individual members of Sub-class A. Individual reliance is not a requirement to establish liability under the FCRA.

**ANSWER:**    ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

84.     The questions of fact common to the claims of each member of Sub-class B, relating to the uniform failure to provide the clear and conspicuous disclosures required by the FCRA, predominate over any facts affecting only individual members of the Sub-class B. Individual reliance is not a requirement to establish liability under the FCRA.

**ANSWER:**    ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

85.     The questions of fact common to the claims of each member of Sub-class C, relating to the uniform failure to provide adverse action notice to consumers by Ameriquest, predominate over any facts affecting only individual members of the Sub-class C. Individual reliance is not a requirement to establish liability under the FCRA or ECOA.

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

86. The questions of law common to the claims of each member of Sub-class A, relating to Ameriquest's uniform practice of obtaining consumer reports on individuals in connection with credit transactions not initiated by the individuals and failing to obtain a firm offer of credit, predominates over any questions of law affecting only individual members of the Sub-class A.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

87. The questions of law common to the claims of each member of Sub-class B, relating to Ameriquest's uniform practice of providing written solicitations which do not provide the clear and conspicuous disclosures by the FCRA, predominates over any questions of law affecting only individual members of the Sub-class B.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action. As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

88. The questions of law common to the claims of each member of Sub-class C, relating to the adequacy of any notice provided by Ameriquest, or the complete lack of any notification by Ameriquest, predominates over any questions of law affecting only individual members of the Sub-class C.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that

this action may be maintained as a class action.  As to the remaining allegations of this paragraph, ACC lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and, on that basis, denies the allegations.

## Notice To The Class

89.     Notice may be given by a combination of mailed and published notice, which notice is properly paid for by Ameriquest.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies that this action may be maintained as a class action and, on that basis, denies that notice may be given to any putative class in this action.  ACC further denies that any notice should be paid by ACC.

## **FIRST CAUSE OF ACTION**

## **Violation of the Fair Credit Reporting Act (No Permissible Purpose)**

90.     Plaintiffs Raymond Quarterman, Jr., Thomas J. Klutho and Mary Forrest reallege and incorporate herein the allegations of Paragraphs 1 to 89.

**ANSWER:**     ACC repeats and realleges its answer to Paragraphs 1 through 89 above, and incorporate those answers as though the same were set forth herein.

91.     Ameriquest has a corporate policy and business practice of obtaining and using consumer reports in connection with soliciting individuals to enter credit transactions not initiated by the individuals and failing to undertake to extend the individuals firm offers of credit.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

92.     In its nationwide practice of obtaining consumer reports on individuals in connection with credit transactions not initiated by them and then refraining from making a firm

offer of credit to such individuals, Ameriquest has willfully ignored the requirements of the

FCRA, and has made a business decision to fail or refuse to comply with the requirements of the

FCRA.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

93. The actions of Ameriquest constitute willful non-compliance with the

requirements of the FCRA. 15 U.S.C. § 1681b(c). Specifically, Ameriquest's use and acquisition

of consumer reports, as described in the preceding paragraphs, is not for a permissible purpose

under the FCRA.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

94. Plaintiffs Raymond Quarterman, Jr., Thomas J. Klutho and Mary Forrest and

Class Members of Sub-class A have suffered damages as a result of Ameriquest's willful

violation of the FCRA, including statutory damages, nominal damages, punitive damages, costs

and their attorneys' fees herein.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

## SECOND CAUSE OF ACTION

### (Absence of Clear and Conspicuous Disclosures)

95. Plaintiff Raymond Quarterman, Jr., realleges and incorporates herein the

allegations of Paragraphs 1 to 89.

**ANSWER:**     ACC repeats and realleges its answer to Paragraphs 1 through 89 above, and incorporate those answers as though the same were set forth herein.

96.     Ameriquest has a corporate policy and practice of obtaining and using consumer reports in connection with soliciting consumers to enter credit transactions not initiated by them and then sending the consumers written solicitations to enter the credit transactions without providing in a clear and conspicuous manner the disclosures required to be provided by the FCRA.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

97.     Ameriquest's adoption of its policy and its practice and procedure of obtaining consumer reports on individuals in connection with credit transactions not initiated by the individuals, and then failing to provide with each written solicitation made to the individuals regarding the transactions the clear and conspicuous disclosures required by the FCRA, is willful.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

98.     Plaintiff Raymond Quarterman, Jr. and Class Members of Sub-class B have suffered damages as a result of Ameriquest's willful violation of the FCRA, including statutory damages, nominal damages, punitive damages, costs, and their attorneys' fees herein.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

## THIRD CAUSE OF ACTION

### (Failure to Provide Adequate FCRA Adverse Action Notice)

99.     Plaintiff Adolph Peter Kurt Burggraff realleges and incorporates herein the allegations of Paragraphs 1 to 89.

**ANSWER:**     ACC repeats and realleges its answer to Paragraphs 1 through 89 above, and incorporate those answers as though the same were set forth herein.

100.     Ameriquest has a corporate policy and practice of using consumer reports in connection with the offering of credit terms to consumers.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that it has a corporate policy and practice of using consumer reports in connection with the offering of credit terms to consumers.

101.     When Ameriquest determines that information contained in the consumer report of a consumer report is derogatory based in whole or in part on the consumer's credit score or consumer information, Ameriquest has instituted a corporate policy of quoting the consumers terms less favorable than its best available terms.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies that it has instituted any corporate policy as described in this paragraph. ACC denies the remaining allegations of this paragraph.

102.     Ameriquest was a user of consumer reports and took adverse action against the Plaintiff Adolph Peter Kurt Burggraff and members of Sub-class C in quoting them less favorable final credit terms based in whole or in part on information contained in their consumer reports. Ameriquest was obligated to provide an adverse action notice to Plaintiff Adolph Peter Kurt Burggraff and members of Sub-class C pursuant to 15 U.S.C. § 1681m, and failed to do so in violation of the FCRA.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  This paragraph constitutes a legal conclusion and thus no response is required.  If a response is required, ACC denies the allegations of this paragraph.

103.     Ameriquest has failed to institute reasonable procedures to ensure compliance with the adverse action notice requirements of the FCRA.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

104.     In taking adverse action based in whole or in part on information contained in a consumer report, Ameriquest has willfully ignored the requirements of FCRA, and has made a corporate decision to fail or refuse to provide adequate notice to such consumers of such adverse action. Instead, Ameriquest has willfully chosen to attempt to place upon the consumer the burden of finding out whether adverse action has been taken, by whom, and the extent of their rights under the FCRA. Additionally, Ameriquest has failed to inform Plaintiff Adolph Peter Kurt Burggraff and other members of Sub-class C that it quoted them terms other than the best available credit terms based on their consumer reports.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

105.     Plaintiff Adolph Peter Kurt Burggraff and members of Sub-class C have suffered damages as a result of Ameriquest's willful violation of the FCRA, including statutory damages, nominal damages, punitive damages, costs and their attorneys' fees herein.

**ANSWER:**     ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To

the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

**FOURTH CAUSE OF ACTION**

**(Failure to Provide ECOA Adverse Action Notice)**

106.    Plaintiff Adolph Peter Kurt Burggraff realleges and incorporates herein the allegations of Paragraphs 1 to 89.

**ANSWER:**    ACC repeats and realleges its answer to Paragraphs 1 through 89 above, and incorporate those answers as though the same were set forth herein.

107.    In quoting Plaintiff Adolph Peter Kurt Burggraff and other members of Sub-class C credit terms based in whole or in part on their consumer reports, Ameriquest was a user of consumer reports and took adverse action against Plaintiff Adolph Peter Kurt Burggraff and other members of Sub-class C. Ameriquest was obligated to provide an adverse action notice to Plaintiff Adolph Peter Kurt Burggraff and other members of Sub-class C pursuant to 15 U.S.C. § 1691, and failed to do so in violation of ECOA.

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

108.    Ameriquest has not complied with the notification requirements of ECOA, and has otherwise violated the Act.

**ANSWER:**    ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same.  To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

109.    Ameriquest has failed to institute reasonable procedures to ensure compliance with the requirements of the ECOA.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

110.     The actions of Ameriquest constitute willful noncompliance with the requirements of ECOA.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

111.     Plaintiff Adolph Peter Kurt Burggraff and members of Sub-class C have suffered damages as a result of Ameriquest's willful violation of ECOA, including costs and their attorneys' fees herein. Plaintiff Adolph Peter Kurt Burggraff is additionally entitled to injunctive relief.

**ANSWER:** ACC (erroneously referred to by Plaintiffs as "Ameriquest") is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph as to any party other than itself and on that basis denies the same. To the extent the allegations of this paragraph are directed to ACC, ACC denies the allegations of this paragraph.

## AFFIRMATIVE DEFENSES

1.     Plaintiffs' purported cause of action fails to state a claim upon which relief may be granted.

2.     Plaintiffs' claims are barred by the applicable statute of limitations and/or statutes of repose.

3.     Plaintiffs' claims are barred in whole or in part under the doctrine of estoppel, laches and/or waiver.

4.     Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands.

5. The Complaint, and each cause of action alleged therein, is barred because Plaintiffs lack standing to maintain a cause of action against ACC.

6. The Complaint, and each cause of action alleged therein, is barred to the extent that Plaintiffs have not alleged the existence of issues of law or fact common to any ascertainable purported class.

7. The Complaint, and each cause of action alleged therein, is barred to the extent that any alleged acts or omissions of ACC that give rise to the Plaintiffs' claims were lawful at the time the alleged acts or omissions took place, or occurred despite ACC's good faith efforts to comply with existing law at the time.

8. The Complaint, and each cause of action alleged therein, is barred to the extent that the Fair Credit Reporting Act and/or the Equal Credit Opportunity Act do not apply to the allegations of the Complaint, or to the alleged acts or omissions of ACC that give rise to the Plaintiffs' claims.

9. The Complaint, and each cause of action alleged therein, is barred because ACC owed no duty to Plaintiff arising from, or with respect to the allegations of the Complaint.

10. Plaintiffs' claims are barred in whole or in part, on the ground that if Plaintiffs were damaged in any manner whatsoever, such damage, if any, was a direct and proximate result of the intervening and superseding actions on the part of other parties and/or persons or entities and not ACC, and any such intervening or superseding action of said parties and/or persons or entities bars Plaintiffs' recovery.

11. Plaintiff have not suffered any damages as the result of any act or omission on the part of ACC.

12. The Complaint, and each cause of action alleged therein, is barred to the extent that any damage or loss sustained by Plaintiffs was proximately caused and contributed to by the negligence and/or intentional wrongful acts of Plaintiffs, thereby precluding Plaintiffs' claims, reducing Plaintiffs' recoverable damages, and/or entitling ACC to a proportional set off.

13.     The Complaint, and each cause of action alleged therein, is barred to the extent that the damages sought are speculative.

14.     The Complaint, and each cause of action alleged therein, is barred to the extent that any alleged acts or omissions of ACC that give rise to the Plaintiffs' claims are the result of innocent mistake or bone fide error despite reasonable procedures implemented by ACC.

15.     ACC alleges that at all times relevant to this action ACC acted within the course and scope of reasonable commercial standards and legitimate business transactions.

16.     ACC alleges that no officer, director, or managing agent of ACC ratified the conduct alleged by Plaintiffs.

17.     Plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel.

18.     The Complaint, and each cause of action alleged therein, is barred because any alleged acts or omissions of ACC that give rise to the Plaintiffs' claims were and are excused and justified by Plaintiffs' own acts and/or omissions.

19.     Plaintiffs' claims are barred in whole or in part, because Plaintiffs misrepresented their credit, income or other information association with obtaining the loan.

20.     Plaintiffs' claims are barred or limited because the violations alleged were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

21.     Plaintiffs' claims are barred and/or limited because the alleged actions on the part of ACC were not willful.

22.     Plaintiffs' claims for alleged violations of section 1681m of the Fair Credit Reporting Act, 15 U.S.C. Section 1681m, are barred as there is no private right of action for such claims.

23.     In the event a violation of FCRA is found, none being admitted, there is no liability pursuant to 15 U.S.C. Section 1681m(c ) because at the time of any alleged violation ACC maintained reasonable procedures to assure compliance with FCRA.

24.     ACC alleges that section 1681m of the Fair Credit Reporting Act, 15 U.S.C.
Section 1681m, is unconstitutionally vague under the United States Constitution and all
applicable state constitutions and overbroad on its face and violates the Due Process and Equal
Protection provisions of the United States Constitution and all applicable state constitutions.
Accordingly, on such constitutional grounds, the counts against ACC are unenforceable and fail
to state a cause of action in that there is no reasonable basis upon which ACC would have known
in advance that the conduct alleged by Plaintiffs was allegedly unlawful and/or otherwise
proscribed by law.

25.     ACC alleges that sections 1681b and/or 1681a(l) of the Fair Credit Reporting Act
are unconstitutionally vague under the United States Constitution and all applicable state
constitutions and overbroad on their face and violate the Due Process and Equal Protection
provisions of the United States Constitution and all applicable state constitutions.  Accordingly,
on such constitutional grounds, the counts against ACC are unenforceable and fail to state a
cause of action in that there is no reasonable basis upon which ACC would have known in
advance that the conduct alleged by Plaintiffs was allegedly unlawful and/or otherwise
proscribed by law.

26.     ACC alleges that section 1691(d) of the Equal Credit Opportunity Act is
unconstitutionally vague under the United States Constitution and all applicable state
constitutions and overbroad on its face and violates the Due Process and Equal Protection
provisions of the United States Constitution and all applicable state constitutions.  Accordingly,
on such constitutional grounds, the counts against ACC are unenforceable and fail to state a
cause of action in that there is no reasonable basis upon which ACC would have known in
advance that the conduct alleged by Plaintiffs was allegedly unlawful and/or otherwise
proscribed by law.

27.     Plaintiffs claims for alleged violations of the Fair Credit Reporting Act and/or the
Equal Credit Opportunity Act are limited to actual damages, if any, because ACC did not

willfully and intentionally commit an act in violation of the foregoing statutes. Thus, Plaintiffs are not entitled to statutory or punitive damages.

28.     Any claim for damages between $100 and $1,000 per plaintiff and putative class member, or any claim for other exemplary damages, are so disproportionate to the injuries suffered, if any, as to violate the Due Process and Equal Protection provisions of the United States Constitution and all applicable state constitutions.

29.     Punitive damages are precluded unless the Plaintiff and each putative class member individually establishes the requisite malice directed to him or her.

30.     ACC alleges that the Complaint as against it is barred, as it cannot be held liable or responsible for any acts or wrongdoing of its subsidiaries and/or affiliated companies.

31.     ACC alleges that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses. ACC reserves its right to file an amended answer asserting additional defenses, and/or to file a counter or cross-complaint in the event that discovery indicates that either is appropriate.

**WHEREFORE**, ACC prays for judgment on the Complaint as follows:

1.     That Plaintiffs take nothing by their Complaint against ACC;

2.     That class certification be denied in this action;

3.     That Plaintiffs not be permitted to act as representative of the class, if any, as sought in the Complaint;

4.     That ACC's business practices be declared lawful under FCRA and ECOA and other applicable state and/or federal laws;

5.     That no injunctive relief be awarded to Plaintiffs based on the allegations of the Complaint;

6.     For ACC's costs of suit incurred herein; and,

7.　　For such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED:　May 7, 2007

By:　/s/ Bernard E. LeSage
　　　*Attorneys for Ameriquest Capital*
　　　*Corporation*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

**<u>CERTIFICATE OF SERVICE</u>**

I, Bernard E, LeSage, hereby certify that on this 7th day of May, 2007, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By:  _____/s/  Bernard E. LeSage_____

BN 1224304v2

- 43 -