**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) ) ) | MDL No. 1715 Lead Case No. 1:05-cv-07097 Centralized before the Hon. Marvin E. Aspen |
| THIS DOCUMENT RELATES TO THE INDIVIDUAL ACTION NAMED BELOW | ) ) ) ) ) ) ) | July 5, 2007 |
| BAILEY, et al., Plaintiffs, v. AMERIQUEST MORTGAGE COMPANY, Defendant. | ) ) ) ) ) ) ) ) ) ) | Case No. 1:06-cv-01733 Hon. Marvin E. Aspen |

**MOTION TO AMEND JUDGMENT**

Plaintiffs Muro and Greene move the Court to enter an order under Federal Rule of Civil Procedure 59(e) altering its June 25, 2007 decision to dismiss their claims for statutory damages. *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, No. 05-CV-7097, slip op. at 4, n.4 (N.D. Ill., June 25, 2007) (Dkt. #845) (hereinafter "June 25th Decision"). Footnote 4 of the Court's decision dismisses their claims on the grounds that they were filed beyond the statute of limitations. *Id.* Plaintiffs submit that the dismissal, however, was based on a manifest error of fact resulting from a combination of Plaintiffs' clerical error and the Court's failure to

1

take note of evidence clearly showing that Plaintiffs' claims were timely, despite the clerical error.

## STANDARD OF REVIEW

The purpose of a motion under Federal Rule of Civil Procedure 59(e) "is to bring the court's attention to newly discovered evidence or to a manifest error or law or fact." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003). Rule 59(e) was adopted in 1946 "to '[make] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (quoting Notes of Advisory Committee on 1946 Amendment to Rules, 28 U. S. C., p. 491; 5 F.R.D. 433, 476 (1946)). As the Northern District of Illinois has previously held, "To succeed on a motion to reconsider pursuant to Rule 59(e), the moving party must raise either 'newly discovered evidence or a manifest error of law or fact.' *Caisse Nationale de Credit Agricole v. CBI Indus. Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996); *Russell v. Delco Remy Div. Of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995)." *United States EEOC v. Custom Cos.*, 2007 U.S. Dist. LEXIS 45116, 4-5 (N.D. Ill., June 21, 2007) (attached as Exhibit A). District courts may exercise their own discretion when considering a Rule 59(e) motion. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).

## FACTS

Samuel Greene, Jr. and Robert Muro are plaintiffs in *Bailey, et al. v. Ameriquest Mortgage Co.*, No. 06-cv-1733 (third and fourteenth counts, respectively), which is part of this multidistrict litigation. Each of them assert that they rescinded their mortgages by sending a

2

timely notice of rescission to the Defendant. They further assert that the Defendant failed to respond properly within the period of time set forth in the Truth in Lending Acts. 15 U.S.C. § 1635(b); Conn. Gen. Stat. § 36a-683, and Reg. Z. § 226.23(d)(2). Greene's rescission notice was mailed on or about January 19, 2005. Exhibit B (copy of rescission letter, certified mail receipt and return receipt). Ameriquest received it on January 24, 2005. *Id*. at 2. Muro's rescission notice was mailed on or about January 28, 2005. Exhibit C (copy of rescission letter, certified mail receipt and return receipt). Ameriquest received it on February 1, 2005. *Id*. at 2. According to the Truth in Lending Acts and, as asserted in the complaint, Ameriquest was required to rescind Greene's and Muro's mortgages within twenty days. 15 U.S.C. § 1635(b); Conn. Gen. Stat. § 36a-683. Ameriquest failed to do so, giving rise to a separate cause of action for statutory damages, as set forth in the *Bailey* complaint. *See* 15 U.S.C. § 1640. This cause of action is subject to a one-year statute of limitations. 15 U.S.C. § 1640(e). The *Bailey* complaint, including Greene's and Muro's claims, was originally filed in the District of Connecticut on March 14, 2005—well within the one-year limitations period.

On March 30, 2007, the Defendant moved to dismiss the *Bailey* complaint, among others, on the grounds that they were filed after expiration of the statute of limitations. Ds.' Consolidated Mot. to Dismiss Opt-Out Complaints and Mot. for More Definite Stmt (Dkt. #651); Mem. of Law in Support of Ds.' Consolidated Mot. to Dismiss Opt-Out Complaints and Mot. for More Definite Stmt. at 2 (Dkt. #652). Plaintiffs Greene and Muro joined in a consolidated objection to the motion to dismiss. ICSC's Mem. in Opposition to Ds.' Mot. to Dismiss Opt-Out Complaints and for More Definite Stmt. (Dkt. #719); Ps.' Supp. to ICSC's Mem. in Opposition to Ds.' Mot. to Dismiss Opt-Out Complaints and for More Definite Stmt. (Dkt. #722)

(hereinafter "Plaintiffs' Supplement").  Plaintiffs' Supplement (Dkt #722) included an appendix

showing details pertinent to the objection including:

1.      The date on which each plaintiff rescinded their mortgage,

2.      The dates on which each lawsuit was filed,

3.      The number of days elapsing between the above two events, and

4.      A column stating whether each plaintiff's claim for "Rescission Letter

Damages"[1] was "timely" or "untimely."

Ps.' Supp., Appx. A.

        Exhibit D to this Motion is an excerpt of the Appendix showing the above details for

Greene's and Muro's claims.  The entries for Greene and Muro correctly state the dates on which

their mortgages were rescinded, the date on which the *Bailey* complaint was filed, and correctly

state that their claims were "Timely."  Nevertheless, due to a clerical error, the Appendix shows

the wrong number of days between the rescission letters and the filing date.  The dates in the

Appendix are incorrectly listed as "420" for Greene and "411" for Muro.  The Appendix should

have shown approximately 54 days for Greene and 45 days for Muro—making their claims well

within the one-year limitation period.

| Summary of Corrected Details | | | |
|---|---|---|---|
| **Plaintiff** | **Rescission Letter Date\*** | **Filing Date\*** | ***Correct* Number of Days Between the Two Events** |
| Greene | 1/19/2005 | 3/14/2005 | 54 |
| Muro | 1/28/2005 | 3/14/2005 | 45 |

*These dates were included and were correct in Plaintiffs' Appendix.

---

[1]  I.e. statutory damages based on the Defendant's failure to properly respond to the notice of rescission.

Footnote 4 of the Court's June 25, 2007 decision states:

> Robert Muro and Samuel Green, Jr., two plaintiffs within the action *Bailey, et al. v. Ameriquest Mortgage Co*., No. 06-cv-1733, filed their complaints 411 days and 420 days, respectively, after their rescission dates. Their damages claims are therefore untimely, and we grant the defendants' motion with respect to these two plaintiffs' claims for rescission-related damages. 15 U.S.C. § 1640(e).

June 25th Decision at 4, n.4. The preceding table summarizes the relevant details and corrects the Appendix. The Rescission Letter and Filing dates were correctly entered in Plaintiffs' Appendix and were clear evidence that Greene's and Muro's claims were timely, despite the incorrect statement of days elapsed.

## ARGUMENT

Plaintiffs Muro and Greene respectfully submit that Court's decision in Footnote 4 was a manifest error of fact that should be corrected. This error was probably caused by the Plaintiffs' clerical error. Nevertheless, the Appendix included the correct dates and correctly stated that their claims were timely. Had the Court considered the dates listed in the Appendix, the clerical error would have been apparent and the Court would not have dismissed these two Plaintiffs' claims. In Footnote 4, the Court found that Muro and Greene "filed their complaints 411 days and 420 days, respectively, after their rescission dates." June 25th Decision at 4. This finding is a manifest error of fact because the evidence summarized in Appendix A (Dkt. #722) shows that Plaintiffs' rescission letters were mailed in January 2005 and their complaint was filed less than two months later in March 2005. Greene and Muro allege causes of action that would accrue when the Defendant failed to properly respond to their rescission letters. December 25th Decision at 3. The statute of limitations expires one year later. *Id*.; 15 U.S.C. § 1640(e). The

5

period of time between the rescission letters and the complaint can be objectively counted and was less than the number of days stated in Footnote 4.

## CONCLUSION

The Court's factual finding in Footnote 4 of the June 25th Decision is a manifest error of fact because the Court incorrectly counted the number of days between the Plaintiffs' rescission letters and the date on which the *Bailey* complaint was filed. Because the Court dismissed Muro's and Greene's claims based on an erroneous factual conclusion, they request that the Court enter an order amending the June 25th Decision to correct the factual findings in Footnote 4 and thereby reinstate their claims.

Respectfully submitted,

PLAINTIFFS ROBERT MURO & SAMUEL GREENE, JR.

/s/ Andrew G. Pizor

By: _____

Daniel S. Blinn
dblinn@consumerlawgroup.com
Andrew G. Pizor
apizor@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd.; Suite 512
Rocky Hill, Connecticut 06067
Tel. (860) 571-0408  Fax (860) 571-7457

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of July 2007, a copy of the foregoing Motion to Amend Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Andrew G. Pizor
Andrew G. Pizor

EXHIBIT A

LEXSEE 2007 U.S. DIST. LEXIS 45116

**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Plaintiff, and CATHERINE COPELLO and ALLISON KENNEDY,
Plaintiffs-Intervenors, v. CUSTOM COMPANIES, INC., CUSTOM EXECUTIVE
GROUP, INC. and CDN LOGISTICS, Defendants.**

**Case Nos. 02 C 3768, 03 C 2293**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2007 U.S. Dist. LEXIS 45116*

**June 21, 2007, Decided
June 21, 2007, Filed**

**COUNSEL:** **[*1]** For U.S. Equal Employment Opportunity Commission (1:02-cv-03768), Plaintiff: Noelle Christine Brennan, LEAD ATTORNEY, Brennan & Monte, Ltd., Chicago, IL; Beth A. Miller, Pontikes & Garcia, Chicago, IL; Deborah Lois Hamilton, Equal Employment Opportunity Commission, Chicago, IL; John C. Hendrickson, United States Equal Employment Opportunity Commission, Chicago, IL; Richard John Mrizek, U.S. Equal Employment Opportunity Commission, Chicago, IL.

For Custom Companies, Inc., Defendant: Diane E. Gianos, LEAD ATTORNEY, Bennett L. Epstein, Eric M Phillips, James Daniel Dasso, Jason Robert Bent, Karen Ann Kawashima, Foley & Lardner, Chicago, IL; Daniel P Colling, Walter B Connolly, Jr, Foley & Lardner, Detroit, MI.

For Custom Executive Group, Inc., Defendant: David A. Epstein, LEAD ATTORNEY, Attorney at Law, Chicago, IL; Diane E. Gianos, LEAD ATTORNEY, Bennett L. Epstein, James Daniel Dasso, Foley & Lardner, Chicago, IL.

For Custom Executive Group, Inc., Defendant: Diane E. Gianos, Foley & Lardner, Chicago, IL.

For CDN Logistics, Inc., Defendant: David A. Epstein, Attorney at Law, Chicago, IL.

For Catherine Copello, Allison Kennedy, Intervenors: Martin K. Denis, LEAD **[*2]** ATTORNEY, Bethany A Hilbert, Jessica E Huebsch-Lynott, Maureen Kay Feldman, Barlow Kobata & Denis, Chicago, IL; Daniel R. Madock, Klein, Dub & Holleb, Chicago, IL; Michael David Robbins, Michael D. Robbins & Associates, Chicago, IL.

For Equal Employment Opportunity Commission (1:03-cv-02293), Plaintiff: Richard John Mrizek, LEAD ATTORNEY, U.S. Equal Employment Opportunity Commission, Chicago, IL; Deborah Lois Hamilton, Equal Employment Opportunity Commission, Chicago, IL; John C. Hendrickson, United States Equal Employment Opportunity Commission, Chicago, IL.

For Custom Companies, Inc., Defendant: Diane E. Gianos, Jason Robert Bent, LEAD ATTORNEYS, Bennett L. Epstein, Thomas Richard Mikrut, Foley & Lardner, Chicago, IL.

For Custom Executive Group, Inc., Defendant: Diane E. Gianos, Thomas Richard Mikrut, Foley & Lardner, Chicago, IL.

For CDN Logistics, Inc., Defendant: David A. Epstein, LEAD ATTORNEY, Attorney at Law, Chicago, IL.

For Catherine Copello, Allison Kennedy, Intervenors: Bethany A Hilbert, LEAD ATTORNEY, Barlow Kobata & Denis, Chicago, IL.

**JUDGES:** Harry D. Leinenweber, Judge.

**OPINION BY:** Harry D. Leinenweber

**OPINION:**

### MEMORANDUM OPINION AND ORDER

The **[*3]** Equal Employment Opportunity Commission (hereinafter, the "EEOC") and Plaintiff-Interveners Catherine Copello (hereinafter, "Copello") and Allison Kennedy (hereinafter, "Kennedy") (collectively, the "Plaintiff-Interveners") filed suit against Defendants Custom Companies Inc. (hereinafter, "Custom") and Custom Executive Group (hereinafter, "CEG") (collectively, the "Defendants") alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act, as amended, *42 U.S.C. § 2000e et seq.* A jury found for the Plaintiffs on all but one count (Kimberly Fritkin's sexual harassment claim).

The jury awarded the following damages to Plaintiff-Intervenors:

|  |  | Compensatory | Punitive |
|---|---|---|---|
| Catherine Copello | (harassment) | $ 100,000 | $ 1,000,000 |
|  | (retaliation) | $ 60,000 | $ 300,000 |
| Allison Kennedy | (harassment) | $ 50,000 | $ 500,000 |
|  | (retaliation) | $ 35,000 | $ 150,000 |

This Court has already decided several post-trial motions, the briefing of which appeared to have consumed small forests. Now before the Court is Defendants' Motion for Reconsideration, Remittitur, and to Alter and Amend Judgment and Plaintiff-Intervenors' **[*4]** Motion for Pre- and Post-Judgment Interest.

### I. DEFENDANTS' MOTION TO RECONSIDER

Defendants argue that this Court has committed manifest errors of law and fact which must be corrected pursuant to *Federal Rules of Civil Procedure 59(e), 52(b),* and *60.*

#### A. Standard

*Rule 59(e)* and *52(b)* give a court the power to reconsider and "rectify its own mistakes in the period immediately following the entry of judgment," thereby avoiding appeal. *White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445, 450, 102 S. Ct. 1162, 71 L. Ed. 2d 325 (1982).* A court may grant a *Rule 52(b)* or *59(e)* motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial or points to evidence in the record that clearly establishes a manifest error of law or fact." *Sunrise Opportunities, Inc. v. Regier, 2006 U.S. Dist. LEXIS 13024, 2006 WL 581150 at *4 (N.D. Ill. Mar. 7, 2006).* Neither motion may be used to advance arguments that could and should have been made before the court rendered a judgment nor to present evidence that was available **[*5]** earlier. *LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263 (7th Cir. 1995); see also,*

*Anderson v. Flexel, Inc., 47 F.3d 243, 247-48 (7th Cir. 1994)*; *King v. Cooke, 26 F.3d 720, 726 (7th Cir. 1994)*. It is within the district court's discretion to grant a *Rule 59(e)* motion. *LB Credit, 49 F.3d at 1267*.

Under *Rule 60(b)*, a Court may modify an injunction when the principles of equity require it to do so. *V&V Food Products, Inc. v. Cacique Cheese Co., Inc., 2003 U.S. Dist. LEXIS 4600, 2003 WL 255235 (N.D. Ill. Feb. 4, 2003)*.

**B. Defendants' Motion Generally**

In general, Defendants' motion restates arguments that this Court has duly considered on at least one occasion (sometimes several). Although the Court considered these arguments, it will not again articulate its reasoning. Except as addressed below, this Court finds that Defendants have identified no newly discovered evidence or manifest error of law or fact.

This Court believes that it is important to note that Defendants object that this Court has unfairly penalized Defendants for vigorously defending this case while at the same time being too quick to conclude **[*6]** that Defendants' silence on particular issues has waived certain arguments. It is true that this Court has considered the fact that this case was contested "bitterly" by Defendants and held that Defendants have waived some arguments by failing to raise them at the proper times. This is not improper. This does not place Defendants in a Catch-22; it is possible to make and preserve all arguments without "bitterly contesting" a case (especially when this Court has been more than generous in permitting both parties to file oversized and additional briefs).

**C. Compensatory and Punitive Damages**

*1. Application of Statutory Caps*

In its previous ruling, this Court awarded Copello and Kennedy $ 400,000 in damages, the equivalent of two $ 200,000 *§ 1981a* statutory caps. The basis for this holding was *dicta* in *Smith v. Chicago School Reform Bd. of Trustees, 165 F.3d 1142 (7th Cir. 1999)*, which this Court interpreted to permit a plaintiff to benefit from two statutory caps if she brought two separate (and not claim-precluded) lawsuits alleging different discrimination and different injuries. This Court has now become aware that although the EEOC did indeed **[*7]** file two separate cases, Copello and Kennedy are party only to the '02 case. Copello and Kennedy brought two discrimination claims within the context of a single Title VII suit and are therefore entitled to only one statutory cap apiece. *See Smith, 165 F.3d 1142* (plaintiff who brought three racial discrimination counts in the context of one suit was entitled to only one statutory cap). This Court will not reconsider its decision regarding the applicable caps (based on the number of employees) as Defendants has brought forth no new information or argument on the subject. As such, Plaintiff-Intervenors are each entitled to one $ 200,000 statutory cap.

*2. Compensatory and Punitive Damages*

Compensatory and punitive damages must comply with the *§ 1981a* caps. The Seventh Circuit suggests that the preferred method for reducing awards is to leave compensatory damages intact and lower punitive damages to bring the total under the cap. *See Lust v. Sealy, Inc., 383 F.3d 580, 589 (7th Cir. 2004)*. This Court need not reduce the compensatory damages, as each award is less than the applicable *§ 1981a* statutory caps. However, punitive damages awards **[*8]** must be reduced:

|  | Compensatory | Punitive | Cap |
|---|---|---|---|
| Copello |  |  |  |
| (Harassment) | $ 100,000 | $ 25,000 |  |
| (Retaliation) | $ 60,000 | $ 15,000 |  |
| (Total) | $ 160,000 | $ 40,000 | $ 200,000 |

|  | Compensatory | Punitive | Cap |
|--|--|--|--|
| Kennedy |  |  |  |
| (Harassment) | $ 50,000 | $ 67,647 |  |
| (Retaliation) | $ 35,000 | $ 47,353 |  |
| (Total) | $ 85,000 | $ 115,000 | $ 200,000 |

(The Court has allocated the punitive damages proportionately between each Plaintiff-Intervenor's two claims, based on the jury-awarded compensatory damages.)

The Court evaluated the originally granted compensatory and punitive damage awards for excessiveness and deemed them to be rationally related to the evidence presented. As such, this Court will not revisit this inquiry when awarding identical compensatory damages and smaller punitive damages.

### D. Back Pay

#### 1. Kennedy - Proof of Comparable Jobs

Defendants argue that this Court erred in concluding that Kennedy sufficiently mitigated her damages by using reasonable and diligent efforts to secure other employment. The affirmative defense of failure to mitigate requires that the Defendants prove that (1) Kennedy lacked diligence in mitigating her damages *and* (2) that with reasonable diligence, **[*9]** there was a reasonable chance that Kennedy might have found a comparable job. *United States EEOC v. Gurnee Inn Corp., 914 F.2d 815, 818 (7th Cir. 1990)*. This Court concluded that Kennedy was reasonably diligent in seeking a job, and this Court will not revisit that decision. As such, Defendants cannot satisfy the two-prong failure to mitigate test.

As noted in the earlier opinion, this Court cannot presume the availability of jobs after having found that Kennedy's job search was reasonably diligent. However, Defendants have pointed out that this Court incorrectly stated that "Defendants offer no evidence whatsoever that comparable jobs existed." Defendants provided this court with copies of 1998 and 1999 Chicago Tribune want ads. These ads were unaccompanied by any affidavit or argument. No attempt was made to identify the relevant ads. The copies included ads for a "regional sales manager," "seamstress," "national field service manager," "house parents," and "word processing." There were also relevant sales positions advertised. Considering the sheer volume of the briefing and exhibits before the Court, some direction would have been helpful.

#### 2. Copello - Base Salary **[*10]**

Defendants argue that this Court erred by basing Copello's back pay calculations on a $ 45,000 salary. This Court awarded Copello $ 18,066.00 in lost pay, which reflects the six-month period between February 1, 2000 and July 31, 2000. This value is based on the following formula: 1/2 Copello's 1999 salary of $ 36,362.33 less Copello's interim earnings of $ 2,760. Because this Court did not base its lost pay calculation on a base salary of $ 45,000, the Court's reference to "basing Copello's back pay award on her $ 45,000 salary" was in error. Defendants did not object to the calculation method used by Copello and thus may not do so now. *Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996)* (*Rule 59(e)* "does not allow a party to . . . advance arguments that could . . . have been presented to the district court prior to the judgment").

Additionally, Defendants now argue that Copello's lost pay award ought to have been calculated with reference to a base salary of $ 30,000. This argument was likewise not previously articulated, and cannot therefore be raised now. *Id.* Defendants point to Copello's 1999 W-2 as proof of a base salary of $ 30,000 when it shows that **[*11]** Copello earned $ 36,362.33 in 1998, and fail to articulate from whence the $ 30,000 value comes. As such, this Court will not disturb the back pay award granted to Copello. After all, the back pay process is necessarily speculative, and calculations need

not be precise. *Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc., 755 F.2d 599, 606 (7th Cir. 1985).* "Ambiguities in what an employee . . . would have earned but for the discrimination should be resolved against the discriminating employer." *Stewart v. General Motors Corp., 542 F.2d 445, 452 (7th Cir. 1976).*

### E. Injunctive Relief

This Court ordered Defendants to give notice to their customers advising them of the jury verdict and the Court's judgment and reaffirming Defendants' commitment to equal employment opportunity in the workplace. Although Defendants did not question this potential provision during the briefing of the post trial motions, they now claim that it is unprecedented, unjustified, and punitive. *Rules 52* and *59* are not an opportunity for a party to raise arguments that they have hitherto neglected to raise. *Moro, 91 F.3d at 876.* If Defendants believed that **[*12]** the potential injunction was inappropriate, they should have objected. While Defendants made general objections to the imposition of injunctive relief, they were not prohibited from objecting to the specific provisions in case injunctive relief was imposed. As such, this Court will not revisit this injunction. Furthermore, this Court believes that Plaintiffs are correct that the injunction will serve as a deterrent and is relevant as Defendants have spent years dangling adult entertainment as a carrot before customers.

Defendants also argue, in a footnote, that the injunction regarding annual sexual harassment training is improper because it requires that the harassment training not be given by Defendants' law firms. Again, Defendants did not object to this potential injunctive relief when briefing the post-trial motions and have thus waived this argument. *Id.* Additionally, arguments in footnotes are waived. *Moriarty ex rel. Local Union No. 727, I.B.T. Pension Trust, and the Teamsters Local No.727 Health and Welfare Trust v. Svec, 429 F.3d 710, 722 (7th Cir. 2005).*

### F. Fair Trial

Lastly, Defendants argue that this Court should grant a new trial under *Rule* **[*13]** *59(b).* A new trial should not be granted unless the jury verdict is against the manifest weight of the evidence or the trial involved clearly prejudicial error. *Romero v. Cincinnati Inc., 171 F.3d 1091, 1096 (7th Cir. 1999).* The claimed prejudice must impact a litigant's substantial rights; the errors must have been sufficiently substantial to have amounted to the denial of a fair trial. *Wilson v. Groaning, 25 F.3d 581, 584 (7th Cir. 1994); Lemons v. Skidmore, 985 F.2d 354, 357 (7th Cir. 1993).* As is explained below, none of the purported errors are in fact error, and even if they were, none amount to substantial error so as to require a new trial.

#### 1. Failure to Sever Each Plaintiff's Trial

Defendants argue that this Court committed reversible error by refusing to sever each plaintiff's trial. According to Defendants, trying the three cases together created an "echo-chamber effect" where the jury gave each plaintiff the benefit of the others' testimony.

Defendants' motion to sever was properly denied. Federal policy favors joinder. *United Mine Workers of America v. Gibbs, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).* Unlike **[*14]** the cases cited by Defendants, the Plaintiffs' alleged sexual harassment and retaliation involved many of the same employee-wrongdoers and there was substantial overlap of both legal and factual issues. Furthermore, Defendants' contention that an "echo-chamber effect" existed is belied by the jury's finding that Fritkin did not suffer sexual harassment, as well as by the fact that jury instructions informed the jury that it must consider each plaintiff's claims separately. *O'Sullivan v. City of Chicago, 2007 U.S. Dist. LEXIS 14468, 2007 WL 671040 at *8 (N.D. Ill. Mar. 1, 2007)* (jury is presumed to abide by given instructions).

#### 2. The EEOC Investigator

Defendants argue that this Court committed reversible error by limiting Defendants' right to call the EEOC investigator as a witness to impeachment purposes only. Although administrative findings of discrimination are

generally admissible, a court has "significant discretion" as to whether EEOC investigatory findings ought to be admitted. *Halloway v. Milwaukee County, 180 F.3d 820, 827 n. 9 (7th Cir. 1999)*; *Tulloss v. Near North Montessori School, Inc., 776 F.2d 150, 153 (7th Cir. 1985)*. In deciding to [*15] limit the Defendant's ability to call the EEOC investigator as a witness, this Court considered the fact that the EEOC has no adjudicatory power, that statements made to the investigator were not under oath, and that evidence on matters investigated by the EEOC was available from other sources. Disallowing the EEOC investigator to testify except for the purposes of impeachment was not error.

### 3. Wilki and Anguiano's Deposition Testimony

Defendants argue that a new trial should be granted because the deposition testimony of two former Custom employees, Ms. Wilki and Mr. Anguiano, was read into the record. First, Defendants argue that the use of deposition testimony was improper because the EEOC claimed that they could not be served even though Ms. Wilki and Mr. Anguiano reside in Chicago. This argument was posed solely in a footnote and is therefore waived. *Moriarty, 429 F.3d at 722*.

Second, Defendants argue that Ms. Wilki's testimony was improperly admitted because it concerned her own complaints of sexual harassment rather than the harassment of Copello. This Court had ruled that the only evidence of harassment not in the presence of Copello, Kennedy, [*16] or Fritkin that was admissible was harassment that had been reported to Defendants. Ms. Wilki's testimony of her harassment and reports of harassment was thus relevant to Custom's notice of harassment.

Lastly, Defendants argue that Mr. Anguiano's testimony was improper for several reasons. Mr. Anguiano's testimony was properly admitted because it involved sexual harassment committed in Copello's presence. The fact that Mr. Anguiano was less than specific as to the content of certain jokes seems to this Court a matter of the proper weight to be given to testimony rather than a reason to exclude it. This Court finds that the testimony of Ms. Wilki and Mr. Anguiano was properly admitted.

### 4. Testimony Regarding Non-Sponsored Events

Defendants also argue that this Court should not have admitted testimony regarding non-sponsored events. This Court carefully considered Defendants' motions in limine on these points and denied them. District courts have broad discretion when ruling on motions in limine. *Gage v. Metropolitan Water Reclamation Dist. of Greater Chi., 365 F.Supp. 2d 919, 926 (N.D. Ill. 2004)*. Wiszowaty's indecent exposure was relevant to Defendants' [*17] *Ellerth* defense and to the general atmosphere at Custom. Likewise, Mandera's ownership interest in the Crazy Horse gentleman's club was relevant, at minimum, because Defendants' salespersons were encouraged to entertain at the Crazy Horse.

### 5. Defendants' Human Resources Expert

Defendants contend that this Court erred by excluding Defendants' human resources expert's testimony. A court has broad discretion regarding expert testimony. *Olympia Exp., Inc. v. Linee Aeree Italiane S.P.A., 2007 U.S. Dist. LEXIS 14307, 2007 WL 641557 (N.D. Ill. 2007)*. The expert in question offered legal conclusions based on Defendants' version of the facts. Courts have properly excluded expert testimony where it offers legal conclusions. *See, e.g., Good Shepard Manor Foundation, Inc. v. City of Momence, 323 F.3d 557, 564 (7th Cir. 2003)*. This Court instructed the jury as to the appropriate EEOC guidelines on harassment policies; the jury could evaluate Defendants' compliance without expert testimony. In short, this Court does not believe that the jury would have been aided by the expert's testimony, and therefore will not grant a new trial.

### 6. Jury Instructions

In order for [*18] a Court to order a new trial on the basis of faulty jury instructions, it must find that the given instructions did not adequately state the law and that the error was prejudicial because the jury was likely to be confused and misled. *Jackson v. Lake County, 2005 U.S. Dist. LEXIS 16697 (N.D. Ill. Aug. 11, 2005)*. This Court gave the

Seventh Circuit's Pattern Jury Instructions for use in Title VII cases, and included an instruction that simple teasings, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment. Defendants' motion fails to explain how this Court erred by denying Defendants' requested retaliation and undue delay instructions, but merely lists the instructions. As such, this Court will not address this issue.

### 7. Plaintiffs' Closing

Lastly, Defendants argue that the Court erred by allowing Plaintiffs' Counsel to make falsehoods during closing arguments. It appears that Defendants have waived this argument by failing to make a timely objection during the closing argument. Even if they had, however, a new trial is not necessitated. "Improper comments during [*19] closing arguments rarely rise to the level of reversible error." *Littlefield v. McGuffey, 954 F.2d 1337, 1346 (7th Cir. 1992).* Counsel for Plaintiff-Intervenors correctly stated that Ms. Wilke and Mr. Anguiano had "no interest in this litigation." Ms. Wilke and Mr. Anguiano were not party to the suit at time of trial and thus stood to gain nothing from the jury's verdict. If Defendants believed that this statement implied that Ms. Wilke and Mr. Anguiano were not biased, they could have pointed out their interpretation during their own closing arguments. Plaintiff-Intervenors appear to admit that they mischaracterized the Wiszowaty incident as having happened at a company-sponsored event; however, this does not rise to the level of a prejudicial error.

### II. PLAINTIFF-INTERVENOR'S MOTION FOR PRE- AND POST-JUDGMENT INTEREST

#### A. Pre-Judgment Interest

Pre-judgment interest is a normal incident of relief in Title VII suits and is considered an "element of complete compensation." *Loeffler v. Frank, 486 U.S. 549, 557, 108 S. Ct. 1965, 100 L. Ed. 2d 549 (1988); United States EEOC v. Gurnee Inn Corp., 914 F.2d 815, 820 (7th Cir. 1990).*

#### 1. Is Pre-Judgment Interest [*20] Appropriate?

Plaintiff-Intervenors request pre-judgment interest on their back pay awards. Defendants argue that pre-judgment interest is inappropriate where significant punitive damages are awarded.

In *Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of America, 950 F.2d 389, 398 (7th Cir. 1991)*, an age discrimination case, the Seventh Circuit held that pre-judgment interest was inappropriate where the compensatory damages had already been doubled due to willful conduct. The Court based this decision on several rationales: (1) the Seventh Circuit (and other circuits) had held that "if double damages are awarded pre-judgment interest may not be awarded"; (2) these doubled damages were effectively punitive, and thus, the addition of pre-judgment interest on the total award "becomes an unauthorized form of punitive damages"; and (3) because significant "punitive" damages had already been awarded, there is no real danger that the judgment "inadvertently undercompensate[s] the plaintiff." In *Emmel v. Coca-Cola Bottling Co. of Chicago, Inc., 904 F.Supp. 723, 736 (N.D. Ill. 1995)*, a district court declined to enter pre-judgment interest on [*21] a back pay award in a Title VII case, relying on *Fortino.*

There are significant distinctions between this case and *Fortino.* First, *Fortino* involved the mandatory doubling of compensatory damages according to statute; this case does not. Due to the statutory caps in this case, the punitive damages are significantly less than double the compensatory awards. Second, the *Fortino* plaintiff apparently sought pre-judgment interest on the entire judgment, whereas plaintiff-intervenors here seek pre-judgment interest only in regards to their back pay awards. *See Fine v. Ryan Intern. Airlines, 305 F.3d 746, 757 (7th Cir. 2002).*

This Court is not persuaded by *Fortino* and *Emmel.* Title VII authorizes pre-judgment interest as part of a back pay remedy. *Loeffler, 486 U.S. 549, 557, 108 S. Ct. 1965, 100 L. Ed. 2d 549 (1988); U.S. E.E.O.C. v. Gurnee Inn Corp., 914 F.2d 815, 820 (7th Cir. 1990).* Courts have awarded pre-judgment interest in cases involving significant punitive damages. *See, e.g., Fine, 305 F.3d at 757; Hathaway v. New Dimension Center for Cosmetic Surgery, 2006 U.S. Dist.*

*LEXIS 36789, 2006 WL 1594060 at *5 (N.D. Ill. June 6, 2006)*. As the **[*22]** *Hathaway* court noted, "the Seventh Circuit has . . . stated . . . that 'if a district court does have discretion in whether to grant or deny prejudgment interest, that discretion is very limited and . . . prejudgment interest should be presumptively available to victims of federal law violation.'" *Hathaway, 2006 U.S. Dist. LEXIS 36789, 2006 WL 1594060 at *5*. Although *Emmel* has made the leap of applying *Fortino* to Title VII cases, this Court will follow *Hathaway* and will not do so. Thus, this Court finds that pre-judgment interest on Plaintiff-Intervenors' back pay awards is proper.

Defendants also argue that a request for pre-judgment interest is premature at this time because Defendants have filed a motion to reconsider. A motion for pre-judgment interest became timely upon the Court entering a back pay award. This Court evaluated Defendants' motion to reconsider; no alterations were made to Plaintiff-Intervenors' back pay awards.

### 2. Amount of Pre-Judgment Interest

Copello requests $ 16,489.60 in pre-judgment interest and Kennedy requests $ 72,024.82 in pre-judgment interest. Defendants have not challenged the methods used to calculate pre-judgment interest, and as **[*23]** nothing is apparently wrong with the calculations (compounding annually and using the prime rate of interest), this Court will award the requested amounts.

### B. Post-Judgment Interest

Plaintiff-Intervenors also request post-judgment interest. Post-judgment interest is allowed on any money judgment in a civil case. *28 U.S.C. § 1961(a)*. Defendants contend that a motion for post-judgment interest is premature because Defendants have filed a motion for reconsideration. This Court has granted in part Defendants' motion for reconsideration, and this request is therefore timely (assuming that the proper adjustments to the calculations are made). As this Court has corrected its error regarding the statutory caps, Plaintiff-Intervenors' post-judgment interest calculations have been reworked according to the proper awards. Although neither party has addressed the date from which post-judgment interest ought to accrue in the event that this Court made any changes to the original judgment (which it did), the Court will calculate it from March 8, 2007, when the original entry of judgment occurred. *See, generally, Black Grievance Committee v. Philadelphia Elec. Co., 690 F.Supp. 1393 (E.D.Pa. 1988)* **[*24]** (where appellate court remanded to district court for recalculation of attorneys' fees award, post-judgment interest properly accrued from date of original judgment); *Institutionalized Juveniles v. Secretary of Public Welfare, 758 F.2d 897 (3d Cir. 1985)*.

Interest pursuant to *§ 1961(a)* is calculated "at a rate equal to the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of the judgment, as published by the Board of Governors of the Federal Reserve System." *Chemetall GmbH v. ZR Energy, Inc., 2001 U.S. Dist. LEXIS 23716, 2001 WL 1104604 at *21 (N.D. Ill. Sept. 18, 2001)*; *28 U.S.C. § 1961(a)*. The interest should be computed daily until the date of payment, and should be compounded annually. *Id.*

The weekly average one-year constant maturity Treasury yield for the calendar week ending March 2, 2007 was 4.96 percent. Accordingly, the daily rate of post-judgment interest on fees and expenses incurred before judgment amounts to 0.0496/365. Copello's daily post-judgment interest is thus $ 246,584.60 *(0.0496/365), or $ 33.49. Kennedy's daily post-judgment interest is $ 462,098.55 *(0.0496/365), or $ 62.79. **[*25]** As of June 20, 2007, 104 days have accrued. Thus, Copello has accrued $ 3,483.56 in post-judgment interest and Kennedy has accrued $ 6,526.31 in post-judgment interest (calculated based on the formula P(r/365*d), P being the principal, r being the interest rate, and d being the number of days). *See Chemetall, 2001 U.S. Dist. LEXIS 23716, 2001 WL 1104604 at *21* (noting that using the formula gives a slightly different answer than if the *per diem* rate were used to calculate the total interest).

### III. CONCLUSION

For the reasons stated herein, the Court Grants in Part and Denies in Part Defendants' Motion for Reconsideration.

2007 U.S. Dist. LEXIS 45116, *25

The Court also Grants in Part and Denies in Part Plaintiff-Intervenors' Motion for Pre- and Post-Judgment Interest.

**IT IS SO ORDERED.**

    Harry D. Leinenweber, Judge

    United States District Court

Dated: June 21, 2007

EXHIBIT B



**Daniel S. Blinn**
**Attorney**
Telephone (860) 571-0408 *ext* 101
Facsimile (860) 571-7457
dblinn@consumerlawgroup.com

January 19, 2005

**VIA CERTIFIED MAIL - 70032260000726842052**

Ameriquest Mortgage Company
Attn: Funding
1100 Town and Country Road, Suite 200
Orange, CA 92868

Re:  Samuel Greene, Jr.
Loan No.: 0044930105-5508

To Whom It May Concern:

This office represents Samuel Greene, Jr. in connection with the refinancing of his home with Ameriquest Mortgage Company on March 14, 2003. I have been authorized by my client to rescind this transaction and hereby exercise that right pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.15.

Mr. Greene's right to rescind this transaction is predicated upon the fact that The Notice of Right To Cancel with which he was provided was not filled out and accordingly did not list the date of the transaction nor the final date by which he could cancel the loan transaction. Please be advised that if you do not return all consideration paid by my client, which we calculate to be over $53,000, within twenty (20) days of receipt of this letter, then you will be responsible for actual and statutory damages pursuant to 15 U.S.C. § 1640(a).

We look forward to your response.

Sincerely,

Daniel Blinn

cc Samuel Greene, Jr.

CONSUMER
LAW GROUP llc

35 Cold Spring Rd. Suite 512
Rocky Hill, CT 06067

tel. 860 ■ 571 ■ 0408
fax 860 ■ 571 ■ 7457

lawyer@consumerlawgroup.com

*Lawyers for the Rest of Us.*™

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ameriquest Mortgage Company
Attn: Funding
1100 Town and Country Road
Suite 200
Orange, CA 92868

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _____  ☐ Agent
☐ Addressee

B. Received by (Printed Name)    JAN 24 2005   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7003 2260 0007 2684 2052

PS Form 3811, August 2001        Domestic Return Receipt        102595-02-M-1540

---

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ .37 |
| Certified Fee | 2.30 |
| Return Receipt Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.40 |

Postmark
Here

Sent To
Ameriquest Mortgage Co.
Street, Apt. No.
or PO Box No. Town and Country Rd. Suite 200
City, State, ZIP+4
Orange, CA 92868

PS Form 3800, June 2002        See Reverse for Instructions

7003 2260 0007 2684 2052

EXHIBIT C

**Daniel S. Blinn**
**Attorney**
**Telephone (860) 571-0408 *ext* 101**
**Facsimile (860) 571-7457**
**dblinn@consumerlawgroup.com**

January 28, 2005

**VIA CERTIFIED MAIL - 70032260000726842076**

Ameriquest Mortgage Company
Attn: Funding
1100 Town and Country Road, Suite 200
Orange, CA 92868

Re:                       Robert A. Muro
                          Loan No.: 0046878773-5508

Property Address:         18 Kimberly Drive
                          Manchester, CT 06040

To Whom It May Concern:

This office represents Robert A. Muro concerning the loan transaction, which he entered into with Ameriquest Mortgage Company on May 16, 2003. I have been authorized by my client to rescind this transaction and hereby exercise that right pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.15.

My client's right to rescind this transaction is predicated upon the fact that The Notice of Right To Cancel with which he was provided was not filled out and accordingly did not list the date of the transaction nor the final date by which he could cancel the loan transaction. We are prepared to discuss a tender obligation, should it arise, and satisfactory ways in which my client may meet this obligation. Please be advised that if you do not cancel the security interest and return all consideration paid by my client within 20 days of receipt of this letter, you will be responsible for actual and statutory damages pursuant to 15 U.S.C. § 1640(a).

We look forward to your response.

Sincerely,

Daniel S. Blinn

cc Robert A. Muro



**CONSUMER**
**LAW GROUP**llc

35 Cold Spring Rd. Suite 512
Rocky Hill, CT 06067

tel. 860 ■ 571 ■ 0408
fax 860 ■ 571 ■ 7457

lawyer@consumerlawgroup.com

*Lawyers for the Rest of Us.*™

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ameriquest Mortgage Company
Attn: Funding
1100 Town and Country Road
Suite 200
Orange, CA 92868

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _Byrss__ ☐ Agent ☐ Addressee

B. Received by ( Printed Name)  C. Date of Delivery

_Byrss JEB 01 2005_

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7003 2260 0007 2684 2076

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

O F F I C I A L   U S E

| | | |
|---|---|---|
| Postage | $ | .37 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 4.42 |

Postmark
Here

Sent To
_Ameriquest Mortgage Co. Attn: Funding_
Street, Apt. No.;
or PO Box No. _100 Town and Country Rd._
City, State, ZIP+4
_Orange, CA  92868_

PS Form 3800, June 2002          See Reverse for Instructions

7003 2260 0007 2684 2076

EXHIBIT D

| Plaintiff Name | Count | Closing Date | Date Mortgage Rescinded | Date Suit Filed | Days Btwn Closing Date and Filing Date | Days Btwn Rescission Date and Filing Date | Claim for Disclosure Damages | Claim for Rescission Letter Damages |
|---|---|---|---|---|---|---|---|---|
| Hall, Elizabeth | 5 | 12/22/2003 | 9/7/2005 | 2/9/2006 | 780 | 155 | None | Timely |
| Holmes, Dennis A. & Brenda L. | 20 | 2/11/2003 | 9/7/2005 | 2/9/2006 | 1094 | 155 | None | Timely |
| Iwanczenko, John W. Sr and Maryann E. | 6 | 1/15/2003 | 12/12/2005 | 2/9/2006 | 1121 | 59 | None | Timely |
| Jensen, Keith | 7 | 12/10/2004 | 12/19/2005 | 2/9/2006 | 426 | 52 | None | Timely |
| Jones, Kyle A. & Kathleen D. | 8 | 4/23/2003 | 9/7/2005 | 2/9/2006 | 1023 | 155 | None | Timely |
| Ladd, Thomas & Shannon | 9 | 9/9/2004 | 9/7/2005 | 2/9/2006 | 518 | 155 | None | Timely |
| Lemire, Jean R. | 10 | 3/3/2004 | 10/17/2005 | 2/9/2006 | 708 | 115 | None | Timely |
| Levesque, Albert J. | 11 | 12/9/2004 | 9/7/2005 | 2/9/2006 | 427 | 155 | None | Timely |
| Oliver, Pearl & Roosevelt | 12 | 1/21/2004 | 9/7/2005 | 2/9/2006 | 750 | 155 | None | Timely |
| O'Rourke, Rachel & Shaun | 16 | 4/8/2004 | 3/28/2005 | 2/9/2006 | 672 | 318 | None | Timely |
| Pehowdy, Georgette F. | 17 | 7/21/2004 | 9/27/2005 | 2/9/2006 | 568 | 135 | None | Timely |
| Pokorny, John Jr. | 13 | 7/20/2004 | 9/7/2005 | 2/9/2006 | 569 | 155 | None | Timely |
| Proudfoot, William A. | 14 | 5/26/2004 | 9/7/2005 | 2/9/2006 | 624 | 155 | None | Timely |
| Rainville, Maureen & Richard A. Sylvia | 18 | 8/19/2004 | 9/27/2005 | 2/9/2006 | 539 | 135 | None | Timely |
| Spence-English, Sonia | 19 | 8/8/2003 | 9/27/2005 | 2/9/2006 | 916 | 135 | None | Timely |
| Spillane, Deborah H. | 15 | 8/14/2003 | 3/18/2005 | 2/9/2006 | 910 | 328 | None | Timely |
| Szynal, Patricia & Michael | 21 | 1/24/2004 | 9/7/2005 | 2/9/2006 | 747 | 155 | None | Timely |
| *Bailey, et al. v. Ameriquest Mortgage Company* | | | | | | | | |
| Bailey, Wray & Wendy | 1 | 2/5/2003 | 1/28/2005 | 3/14/2005 | 768 | 45 | None | Timely |
| Carbone, Al | 24 | 2/20/2004 | 2/12/2005 | 3/14/2005 | 388 | 30 | None | Timely |
| Garcia, Juan | 2 | 8/12/2004 | 1/18/2005 | 3/14/2005 | 214 | 55 | Timely | Timely |
| Greene, Samuel Jr. | 3 | 3/14/2003 | 1/19/2005 | 3/14/2005 | 731 | 420 | None | Timely |

| Plaintiff Name | Count | Closing Date | Date Mortgage Rescinded | Date Suit Filed | Days Btwn Closing Date and Filing Date | Days Btwn Rescission Date and Filing Date | Claim for Disclosure Damages | Claim for Rescission Letter Damages |
|---|---|---|---|---|---|---|---|---|
| Hack, Richard & Denise | 25 | 12/24/2002 | 2/14/2005 | 3/14/2005 | 811 | 28 | None | Timely |
| Hasapes, Jason W. | 4 | 1/8/2004 | 12/15/2004 | 3/14/2005 | 431 | 89 | None | Timely |
| Holloway, Colon J.B. | 5 | 6/3/2004 | 2/14/2005 | 3/14/2005 | 284 | 28 | Timely | Timely |
| Huggins, Maurice & Pearl | 6 | 8/24/2003 | 1/18/2005 | 3/14/2005 | 568 | 55 | None | Timely |
| Kobialka, Edward & Ruth | 26 | 11/20/2002 | 2/14/2005 | 3/14/2005 | 845 | 28 | None | Timely |
| Kozlowski, Jeffrey & Ellen | 7 | 6/2/2004 | 12/22/2004 | 3/14/2005 | 285 | 82 | Timely | Timely |
| Lauzier, Bruce & Deborah | 8 | 8/20/2004 | 1/18/2005 | 3/14/2005 | 206 | 55 | Timely | Timely |
| LeBlanc, Scott | 9 | 3/20/2004 | 12/16/2004 | 3/14/2005 | 359 | 88 | Timely | Timely |
| Lehan, Timothy | 10 | 6/24/2003 | 12/22/2004 | 3/14/2005 | 629 | 82 | None | Timely |
| Martinez, Carlos | 11 | 6/3/2004 | 1/28/2005 | 3/14/2005 | 284 | 45 | Timely | Timely |
| Milardo, David & Lucinda | 13 | 3/24/2004 | 12/22/2004 | 3/14/2005 | 355 | 82 | Timely | Timely |
| Muro, Robert | 14 | 5/16/2003 | 1/28/2005 | 3/14/2005 | 668 | 411 | None | Timely |
| Niese, Catherine | 15 | 3/19/2004 | 12/21/2004 | 3/14/2005 | 360 | 83 | Timely | Timely |
| Nordquist, Nels | 12 | 10/16/2002 | 12/15/2004 | 3/14/2005 | 880 | 89 | None | Timely |
| Patterson, Norma & Winston | 16 | 1/26/2004 | 1/28/2005 | 3/14/2005 | 413 | 45 | None | Timely |
| Peterson, Harold and Zevallos, Elizabeth | 17 | 8/4/2004 | 12/22/2004 | 3/14/2005 | 222 | 82 | Timely | Timely |
| Smayda, Gregory & Kelly | 18 | 9/18/2003 | 12/22/2004 | 3/14/2005 | 543 | 82 | None | Timely |
| Sulinski, Peter & Victoria | 19 | 9/22/2003 | 1/18/2005 | 3/14/2005 | 539 | 55 | None | Timely |
| Thompson, Cynthia & Justin | 20 | 11/17/2004 | 1/18/2005 | 3/14/2005 | 117 | 55 | Timely | Timely |
| Valeriano, Armando & Anne | 21 | 6/18/2004 | 1/18/2005 | 3/14/2005 | 269 | 55 | Timely | Timely |
| Wilson, Stephen | 22 | 8/23/2003 | 11/1/2004 | 3/14/2005 | 569 | 133 | None | Timely |
| Witham, Leon & Beth | 23 | 12/19/2003 | 1/19/2005 | 3/14/2005 | 451 | 54 | None | Timely |