IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | (Centralized before The Honorable Marvin E. Aspen) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF DAWN ARNALL**

Borrower Plaintiffs ("Plaintiffs") seek to depose Dawn Arnall, a high-ranking executive of Ameriquest Capital Corporation and a director of ACC Capital Holdings Corporation. Their request to depose Mrs. Arnall is designed simply to harass and is not reasonably calculated to lead to the discovery of admissible evidence. Mrs. Arnall had no involvement in the events at issue in this case and cannot provide any information that could even be considered reasonably calculated to lead to the discovery of admissible evidence. In short, Mrs. Arnall's deposition would not benefit Plaintiffs but would pose a significant burden on Mrs. Arnall. It should be quashed.[1] In the alternative, Defendants request that the Court order the deposition of Mrs. Arnall be delayed pending Plaintiffs' showing of their efforts to obtain the information sought from other less burdensome sources, including written discovery or depositions of individuals with relevant knowledge. If the Court orders the deposition to go forward, whether delayed or not, Defendants also respectfully request that the Court order Plaintiffs to depose Mrs. Arnall only once.

---

[1] The parties have met and conferred extensively about, but have been unable to resolve, this issue. [Declaration of Bernard E. LeSage ("LeSage Decl.") ¶¶ 4-10, Exs. A-F.]

1

## I.  PRELIMINARY STATEMENT

Mrs. Arnall has never participated in the day-to-day operations of, or held a position with, the operating companies that allegedly committed the wrongful acts in this case: Ameriquest Mortgage Company, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., Town & Country Credit Corporation, and Argent Mortgage Co., LLC ("Lending Defendants"). Instead, Mrs. Arnall holds director positions only with the parents of the operating companies, Ameriquest Capital Corporation (the ultimate parent and a non-party to this suit) and ACC Capital Holdings Corporation (the immediate parent). In addition, Mrs. Arnall's role with these two companies both has been at a very high level and, in the case of defendant ACC Capital Holdings Corporation ("ACC Capital Holdings Corporation"), began well after the actions complained of in this case even possibly could have occurred.

Neither non-party Ameriquest Capital Corporation nor ACC Capital Holdings Corporation originates or services loans, or sets policies for the Lending Defendants. Accordingly, in her capacity with these companies, Mrs. Arnall has had nothing to do with the events at issue in this case. Furthermore, Mrs. Arnall did not even hold operational positions with either of these companies. Instead, she has held board positions, serving as Chairman of the board of ACC Capital Holdings Corporation since February 2006 and Co-Chairman (December 1999) and Secretary (March 2004) of the board of non-party Ameriquest Capital Corporation. In other words, even if these companies were involved in the events at issue in this case, Mrs. Arnall was not in day-to-day management of either company and was not involved in the business of defendant ACC Capital Holdings until after those events took place.

More importantly, by the time Mrs. Arnall became Chairman of the Board of defendant ACC Capital Holdings Corporation, the settlement with the Attorneys General for 49 states and the District of Columbia ("Multi-State Settlement") had just been publicly announced on January 23, 2006. This Multi-State Settlement, which resolves all claims by borrowers in 49 states regarding the lending practices of Ameriquest Mortgage Company and certain related entities, will provide $295,000,000 in restitution for borrowers who choose to participate in exchange for a broad release of liability. More significantly, for purposes of this motion, however, the Attorneys General appointed a monitor ("Monitor") to oversee the day-to-day lending operations of the operating companies. The Monitor was in-place when Mrs. Arnall because Chairman of the Board of ACC Capital Holdings Corporation—actively ensuring that none of the practices,

whether they were "fraudulent" or not, of which Plaintiffs complain were in place when Mrs. Arnall was chairman of defendant ACC Capital Holdings Corporation.

In short, Mrs. Arnall's only involvement with an entity that is a defendant in this matter is limited to her tenure as a board member of a holding company that did not set any policies for the Lending Defendants, after the events in this case and after the Monitor had been put in place to ensure the propriety of the Lending Defendants' practices. In this role, Mrs. Arnall has never communicated with any of the plaintiffs, had any involvement with their loans, set any lending policies, participated in the supervision and training of any employees, appraised property, participated in the securitization or sale of mortgages, or learned anything about the loan products (much less how to obtain them) of the Lending Defendants. In other words, in these limited roles, Mrs. Arnall has gained *no information* that is relevant in this action, and she has declared to this lack of information under oath and under penalty of perjury. [Declaration of Dawn Arnall ("Arnall Decl.") ¶ 2.] In light of Mrs. Arnall's lack of relevant knowledge and the Court's admonition to be sensitive in noticing the depositions of senior executives, Defendants hereby request that this Court issue a protective order precluding the deposition of Dawn Arnall. [LeSage Decl. ¶ 1, Ex. A.]

## II. RULE 26(C) AUTHORIZES THE COURT TO ISSUE A PROTECTIVE ORDER

Under Federal Rule of Civil Procedure 26, the Court may enter an order "for good cause shown…to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Where the movant has sustained its burden of showing good cause, the order may provide "that the disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1).

As further discussed below, good cause exists to order the preclusion of Mrs. Arnall's deposition because Mrs. Arnall has no personal knowledge that is relevant to this action, Plaintiffs' Notice is improper for numerous reasons, and there are less intrusive discovery methods that will permit Plaintiffs to learn about the information they seek. The deposition of Mrs. Arnall would subject her to annoyance, embarrassment, oppression, and undue burden and expense. Thus, this Court should grant this Motion and order the preclusion of the deposition of Mrs. Arnall.

BN 1281894v5

**A.  Mrs. Arnall Should Not Be Deposed Because She Has No Relevant Knowledge.**

Where a court is satisfied based on all the available information that there is no likelihood that a witness has knowledge of relevant facts, the issuance of a protective order prohibiting a deposition has been sustained as an appropriate exercise of discretion. *Thomas v. IBM*, 48 F.3d 478, 483-84 (10th Cir. 1995) (upholding lower court's issuance of protective order precluding deposition of chairman of the board of IBM, who testified via affidavit that he lacked personal knowledge of any facts supporting plaintiff's age discrimination claims); *Lewelling v. Farmers Ins.*, 879 F.2d 212, 218 (6th Cir. 1989) (upholding district court's exercise of discretion in granting protective order barring plaintiff from deposing CEO, who lacked knowledge of pertinent facts in case brought by employees alleging breach of contract and fraud).

The Seventh Circuit has declined to allow the deposition of high-ranking individuals in situations like this one, where the high-ranking individual has no personal knowledge of the case, and the deposition notice is served without good cause. In *Stagman v. Ryan*, 176 F. 3d 986 (7th Cir. 1999), the court agreed with the district court's conclusion that nothing in a witness affidavit suggested a need to depose defendant, as defendant attorney general (1) was not the ultimate decision-maker, (2) was not personally involved in the evaluation and decision to fire plaintiff, and (3) knew nothing of plaintiff's union-related activities, which were at the heart of the matter. *Id.* at 994. The court determined that "deposing [defendant attorney general] would serve no useful purpose." *Id.*

Other federal courts agree with the Seventh Circuit. *Harris v. Computer Associates Intern., Inc.* held that plaintiff failed to show good cause to take the deposition of defendant's vice president where the vice president could "contribute nothing more than a lower level employee." *Harris*, 204 F.R.D. 44, (E.D.N.Y. 2001). The *Thomas* court ruled that, because the chairman of the board of IBM lacked knowledge about any pertinent facts to the case—namely the specifics about the plaintiff's age, performance ranking, and work evaluations—a protective order precluding his deposition was appropriate, especially because the information sought could have been gathered from other IBM personnel. *Thomas*, 48 F.3d at 483. The court also found that the chairman should not be deposed simply because he had drafted the employment policies at issue. "[I]t was clear beyond peradventure that the district court did not abuse its discretion in issuing the protective order." *Thomas*, 48 F.3d at 484.

The court in *Berning v. UAW Local 2209*, 2007 U.S. Dist. LEXIS 26766 (N.D. Ind. 2007) also granted a motion for a protective order precluding the deposition of a senior executive. Because (1) the president had no personal or unique knowledge as to any matter involving plaintiff, (2) the president's participation in a deposition would be unduly burdensome and oppressive to him, (3) because of his position, the president was particularly vulnerable to unwanted harassment and abuse by unnecessary depositions and has a right to be protected from such harassment, and (4) plaintiff failed to pursue the desired information through less burdensome means, such as written discovery requests or the depositions of staff members, the *Berning* court held "it is clear that a protective order precluding the deposition of [the president of UAW] is warranted." *Id.* at *9-*13.

Here, Mrs. Arnall cannot provide any information that could even be considered reasonably calculated to lead to the discovery of admissible evidence. She has declared to this lack of information under oath and under penalty of perjury. [Declaration of Dawn Arnall ("Arnall Decl.") ¶ 2.]

Mrs. Arnall is an officer and director of Ameriquest Capital Corporation and a director of ACC Capital Holdings Corporation.[2] [Arnall Decl. ¶ 1; Declaration of Diane Tiberend ("Tiberend Decl.") ¶ 2.] Mrs. Arnall has never participated in the day-to-day operations of the operating companies. [Arnall Decl. ¶ 2; Tiberend Decl. ¶ 3.] She does not hold and has never held any such positions with any of the Ameriquest operating companies. [Arnall Decl. ¶ 2; Tiberend Decl. ¶ 3.] Mrs. Arnall did not assume the position as Chairman of the Board of the holding company until February 10, 2004. [Arnall Decl. ¶ 3; Tiberend Decl. ¶ 2.] She assumed the role of Chairman of the Board after her husband was appointed the Ambassador of the United States of America to the Netherlands on February 27, 2006, mandating that he relinquish any role with Defendants. [Arnall Decl. ¶ 3; Tiberend Decl. ¶ 4.] The holding company Mrs. Arnall chaired never originated or marketed a single home loan. [Arnall Decl. ¶ 4; Tiberend Decl. ¶ 5.] She has no knowledge with regard to the origination of any loans. [Arnall Decl. ¶ 4]

---

[2] Mrs. Arnall holds officer and director positions with only Ameriquest Capital Corporation and ACC Capital Holdings Corporation. She does not hold and has never held any such positions with any of the Ameriquest operating companies. For Ameriquest Capital Corporation, Mrs. Arnall has been the Chairman of the Board since December 10, 1999, Secretary since March 5, 2004, and Chief Financial Officer/Treasurer since January 3, 2007. Mrs. Arnall has been Chairman of the Board of ACC Capital Holdings Corporation since February 10, 2004. [Arnall Decl. ¶¶ 1-2; Tiberend Decl. ¶ 2.]

Before assuming her role as the Chairman of the Board, Mrs. Arnall was employed as an executive in totally unrelated commercial real estate companies. [Arnall Decl. ¶ 5; Tiberend Decl. ¶ 6.] Mrs. Arnall has never held an executive position in the operating companies that are the Defendants in this case. [*Id.*] Mrs. Arnall has never communicated with any of the plaintiffs or had any involvement whatsoever with their loans. [Arnall Decl. at ¶ 6.] She has no knowledge of any lending policies that are the topic of any of the allegations in any of the complaints the this Ameriquest Lending Practices MDL Litigation ("MDL"). [*Id.*] Mrs. Arnall has never formulated any policies or procedures regarding the origination or servicing of loans. She does not know anything about practices relating to discount points. [*Id.*]

Mrs. Arnall has never participated in any manner in the supervision and training of any employees of any of the operating defendants who are alleged in the complaints to have cause harm to the plaintiffs. [Arnall Decl. ¶ 7; Tiberend Decl. ¶ 7.] She has no interaction with sales personnel and know nothing about personnel training and presentations. [*Id.*] Mrs. Arnall has no involvement with sales and marketing techniques. [*Id.*] She has no involvement regarding the account executive compensation system. [*Id.*] Mrs. Arnall has never participated in any manner in the appraisal process utilized by any of the operating companies. [Arnall Decl. ¶ 8; Tiberend Decl. ¶ 8.] She has never been involved with the assessment of late fees. [*Id.*] Mrs. Arnall has no knowledge regarding reporting of appraisal values, borrowers' income or asset statements. [Arnall Decl. ¶ 8.] Mrs. Arnall has never participated in the securitization of mortgages or their sale into the secondary market. [Arnall Decl. ¶ 9; Tiberend Decl. ¶ 9.]

Mrs. Arnall has no knowledge of the loan products offered by the defendants or the qualification to obtain such loan products from one of the operating companies. [*Id.* at ¶ 10.] She has no involvement with the solicitation of targeted borrowers. [Arnall Decl. ¶ 10; Tiberend Decl. ¶ 10.] Mrs. Arnall has no involvement with promotions of loan terms. [*Id.*] She does not know anything about loan documentation. [Arnall Decl. ¶ 10.] She does not have any knowledge of loan closings, closing fees, or prepayment penalty provisions. [*Id.*]

In short, Mrs. Arnall does not make daily business decisions that are at the heart of this action. [Arnall Decl. ¶ 11; Tiberend Decl. ¶ 11.] Plaintiffs have been and are aware of Mrs. Arnall's lack of relevant knowledge because Defendants have informed them of this on multiple occasions. [LeSage Decl. ¶¶ 3, 4, 6, 8, 9.] Plaintiffs have not shown and cannot show that Mrs. Arnall has any personal knowledge that is relevant to this action, nor can Plaintiffs establish

6

good reason for the tactic of deposing Mrs. Arnall prior to the depositions of those persons most knowledgeable already agreed to and noticed. Plaintiffs' attempt to depose Mrs. Arnall is designed only to harass Mrs. Arnall, as opposed to obtain crucial or even relevant testimony from a percipient witness. Plaintiffs cannot explain why Mrs. Arnall should be deposed, whereas Defendants have demonstrated good cause for Mrs. Arnall not to be deposed. The Court should therefore prohibit Plaintiffs from deposing Mrs. Arnall.

**B.    Plaintiffs Failed to Follow Proper Procedures to Obtain the Deposition of a Resident of a Foreign Country.**

Plaintiffs have not shown and cannot show that particular testimony by Mrs. Arnall, who is a resident of a foreign country, is necessary in the interest of justice and have not shown and cannot show that it is not possible to obtain her testimony in admissible form without her personal appearance. 28 U.S.C. § 1783(a). Plaintiffs have failed to proceed under the laws and procedures of the foreign country in which Mrs. Arnall resides. Fed. R. Civ. P. 28(b). The deposition, as noticed, will subject Mrs. Arnall to an undue burden and expense. Fed. R. Civ. P. 26(c). Accordingly, this Court should order the preclusion of Mrs. Arnall's deposition.

**C.    Plaintiffs Violated the November 7 Order By Providing Inadequate Notice.**

The Notice provides only 28 days' notice, which is less time than mandated by this Court's November 7, 2006 Order (the "November 7 Order"). [November 7 Order, p. 12.] The November 7 Order provides, "The parties shall have 30 days to object and respond to standard written requests, deposition notices, and subpoenas; 45 days to object to non-standard written requests, deposition notices, and subpoenas." [*Id.*] With only 28 days' notice, Defendants' objections to the Notice—in accordance with this Court's November 7 Order—would be due two days *after* the date of Mrs. Arnall's deposition, an absurd result of Plaintiffs' failure to adhere to the notice period set forth by this Court's November 7 Order.

**D.    Plaintiffs Failed to Serve a Subpoena.**

Plaintiffs failed to serve a subpoena for Mrs. Arnall's deposition. The Notice is directed to Mrs. Arnall in her individual capacity. The purported notice of deposition is defective because Mrs. Arnall is not an individual party to this action, and Plaintiffs have failed to properly serve the requisite non-party subpoena on Mrs. Arnall. Fed. R. Civ. P. 45.

E. **In the Alternative, Rule 26 Authorizes the Court to Order This Deposition Be Delayed Pending Plaintiffs' Showing of Their Efforts to Obtain the Information Sought From Other Less Burdensome Sources.**

Federal Rule of Civil Procedure 26(b)(2)(C) grants the Court additional discretion to the court to limit discovery in the event that

> (i) the discovery sought…is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C); *see also Berning v. UAW Local 2209*, 2007 U.S. Dist. LEXIS 26766, at *9-*13 (N.D. Ind. 2007). Further, Rule 26(C)(2) authorizes the Court to order "that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place." Fed. R. Civ. P. 26(C)(2). Rule 26(C)(3) also provides that the Court may order "that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery." Fed. R. Civ. P. 26(C)(3).

Plaintiffs here have failed to pursue their desired information through less burdensome means, such as written discovery requests or the depositions of employees with knowledge of the issues at the heart of this matter. The Court should require Plaintiffs to demonstrate that they have attempted to obtain the information sought from these other less burdensome means. Further, if Plaintiffs are allowed to depose Mrs. Arnall, they should be afforded only one opportunity to do so, as repeated depositions are not warranted where the likelihood of discovering relevant information is very low and the burden and expense for the witness is so high.

Thus, should this Court decide not to quash the deposition of Mrs. Arnall, Defendants respectfully request that the Court order that the deposition of Mrs. Arnall be delayed pending Plaintiffs' showing of their efforts to obtain the information sought from other less burdensome sources, including written discovery or depositions of individuals with relevant knowledge. If

8

the Court orders the deposition to go forward, whether delayed or not, Defendants also respectfully request that the Court order Plaintiffs to depose Mrs. Arnall only once.

### III. CONCLUSION

Because Mrs. Arnall has no personal knowledge that is relevant to this action, and Plaintiffs' Notice is improper, Defendants respectfully request that the Court grant this Motion in its entirety and preclude Plaintiffs from taking the deposition of Dawn Arnall. In the alternative, Defendants respectfully request that the Court order the deposition of Mrs. Arnall be delayed pending Plaintiffs' showing of their efforts to obtain the information sought from other less burdensome sources, including written discovery or depositions of individuals with relevant knowledge. If the Court orders the deposition to go forward, whether delayed or not, Defendants also respectfully request that the Court order Plaintiffs to depose Mrs. Arnall only once.

DATED: August 13, 2007

Respectfully submitted,

By: /s/ Bernard E. LeSage

*Attorneys for Defendants Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400