## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | (Centralized before The Honorable Marvin E. Aspen) |

## DECLARATION OF BERNARD LESAGE IN SUPPORT OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF DAWN ARNALL

I, Bernard LeSage, declare that the following is true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.       I am an attorney at law duly licensed to practice before this Court and am a shareholder of Buchalter Nemer, A Professional Corporation, the attorneys of record for Defendants in this action. I make this declaration in support of Defendants' Motion for a Protective Order Precluding the Deposition of Dawn Arnall. Except where otherwise indicated, the following facts are true of my own knowledge and, if called upon to do so, I could and would testify to the truth thereof.

2.       When Mrs. Arnall assumed the position as Chairman of the Board of the holding company, the settlement with the Attorneys General for 49 states and the District of Columbia ("Multi-State Settlement") had just been publicly announced on January 23, 2006. This Multi-State Settlement resolves all claims by borrowers in 49 states regarding the lending practices of Ameriquest Mortgage Company and certain related entities. $295,000,000 in restitution will be provided to borrowers who opt to participate in the Multi-State Settlement. Each borrower who opts to participate in the Multi-State Settlement will sign a broad release of liability in exchange for a share of the negotiated restitution. Pursuant to the terms of the Multi-State Settlement with the Attorneys General, the Monitor appointed by the Attorneys General was in place and

monitoring the day-to-day lending operations of the operating companies. Further, with respect to the status of the settlement reached between Defendants and the 49 Attorneys General, postcards with information about the settlement were sent to eligible borrowers starting on June 25, 2007, notifying them to expect the Notice and Release Forms. The Notice and Release Forms were mailed to eligible borrowers beginning on July 9, 2007.

3.　　On April 26, 2007, I appeared before the Honorable Morton Denlow for a status conference in this action. At this status conference, Judge Denlow addressed the need to be sensitive in noticing the depositions of senior executives regarding the merits of the case and the need to wait to notice such depositions until all parties had appeared, so as to eliminate the need to re-depose such persons. Attached hereto as Exhibit A is a true and correct copy of the relevant portions of this hearing transcript (pages 16 through 19).

4.　　Plaintiffs' counsel and I have had numerous discussions regarding deposition issues, including, but not limited to, whether or not Dawn Arnall would be deposed. I specifically voiced Defendants' objections to the deposition of Mrs. Arnall during these discussions. The parties initially agreed that the deposition of Mrs. Arnall would not go forward on a date previously suggested by Plaintiffs' counsel, and Plaintiffs' counsel advised me that they would consider information regarding Mrs. Arnall's lack of any officer position in any of the operating companies before noticing her deposition.

5.　　On June 12, 2007, I sent a letter to Plaintiffs memorializing various discussions between the parties regarding witnesses to be deposed, subjects of deposition, and the sequence of the depositions. Attached hereto as Exhibit B is a true and correct copy of this letter.

6.　　In direct contradiction to the earlier discussions between myself and Plaintiffs' counsel, two days later, on June 14, 2007, Plaintiffs' counsel e-mailed to me Plaintiffs' Notice of Taking Videotaped Deposition of Dawn Arnall (the "Notice"), setting the date of July 12, 2007 as the date for Mrs. Arnall's deposition in Santa Ana, California. Attached hereto as Exhibit C is a true and correct copy of this Notice.

7.　　On July 6, 2007, Defendants served their written objections to the deposition of Mrs. Arnall. Attached hereto as Exhibit D is a true and correct copy of these objections.

8.　　Plaintiffs' counsel responded in an e-mail on July 20, 2007 that they viewed these objections as "meritless" and requested a conference per Rule 37. Attached hereto as Exhibit E is a true and correct copy of this e-mail.

9.    On July 23, 2007 and August 13, 2007, Plaintiffs' counsel and I met and conferred telephonically about the deposition of Mrs. Arnall. I reiterated that Mrs. Arnall has no personal knowledge regarding mortgage loan origination and servicing businesses. Plaintiffs' counsel continues to demand the deposition of Mrs. Arnall, notwithstanding Defendants' proposals for less burdensome and more effective discovery, including written discovery and the depositions of other witnesses with relevant knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Los Angeles, California this 13th day of August 2007.

Bernard LeSage

**EXHIBIT A**

1   **TRANSCRIBED FROM DIGITAL RECORDING**

2                   IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
3                            EASTERN DIVISION

4   IN RE AMERIQUEST MORTGAGE CO.        )  No. 05 C 7097
    MORTGAGE LENDING PRACTICES LITIGATION,)
5                                         )  Chicago, Illinois
                                          )  April 26, 2007
6   _____)  11:30 A.M.

7
                        TRANSCRIPT OF PROCEEDINGS – Status
8           BEFORE THE HONORABLE MORTON DENLOW, Magistrate Judge

9   APPEARANCES:

10  For Class Plaintiffs:        RODDY KLEIN & RYAN
                                 727 Atlantic Avenue
11                               2nd Floor
                                 Boston, Massachusetts  02111
12                               BY:  MR. GARY EDWARD KLEIN

13                               LIEFF CABRASER HEIMANN & BERNSTEIN
                                 275 Battery Street
14                               30th Floor Embarcadero Center West
                                 San Francisco, California  94111
15                               BY:  MS. KELLY M. DERMODY

16                               JAMES HOYER NEWCOMER
                                   & SMILJANICH, P.A.
17                               4830 West Kennedy Boulevard
                                 Tampa, Florida  33609
18                               BY:  MS. JILL HENNIGER BOWMAN

19

20                       PAMELA S. WARREN, CSR, RPR
                            Official Court Reporter
21                       219 South Dearborn Street
                                Room 1928
22                       Chicago, Illinois   60604
                              (312) 294-8907
23

24  **NOTE:   Please notify of correct speaker identification.**

25

**APPEARANCES:** **(Continued)**

| | |
|---|---|
| For Various Individual Plaintiffs: | MR. DANIEL MARK HARRIS<br>150 North Wacker Drive<br>Suite 3025<br>Chicago, Illinois  60606 |
| | EDELMAN, COMBS, LATTURNER<br>  & GOODWIN, LLC<br>120 South LaSalle Street<br>18th Floor<br>Chicago, Illinois  60603<br>BY:  MR. DANIEL A. EDELMAN<br>     MR. ALFRED F. HOFELD, JR. |
| | CONSUMER LAW GROUP<br>35 Cold Spring Road<br>Suite 512<br>Rocky Hill, Connecticut  06067<br>BY:  MR. ANDREW G. PIZOR<br>     (Appearing telephonically) |
| | LAW OFFICES OF KEITH J. KEOGH<br>227 West Monroe Street<br>Suite 2000<br>Chicago, Illinois  60606<br>BY:  MR. KEITH JAMES KEOGH<br>     MR. ALEX BURKE |
| Liaison Counsel for Plaintiffs: | MILLER LAW LLC<br>101 North Wacker Drive<br>Suite 2010<br>Chicago, Illinois  60606<br>BY:  MR. MARVIN ALAN MILLER |
| For Various Defendants excerpt Argent: | BUCHALTER NEMER<br>1000 Wilshire Boulevard<br>Suite 1500<br>Los Angeles, California  90017-2457<br>BY:  MR. BERNARD E. LeSAGE |
| | VARGA, BERGER, LEDSKY, HAYES & CASEY<br>224 South Michigan Avenue<br>Suite 350<br>Chicago, Illinois  60604<br>BY:  MR. CRAIG ALLEN VARGA |

1    **APPEARANCES:**   **(Continued)**

2    For Defendant Argent:    WINSTON & STRAWN
                                     35 West Wacker Drive

3                                         Chicago, Illinois  60601-9703
                                        BY:  MR. THOMAS JOSEPH WIEGAND

4

5    For Anthony and Walsh:    KUDLA & McLEOD
                                       Two Towne Square

6                                         Suite 550
                                        Southfield, Michigan  48076

7                                         BY:  MR. RICHARD A. KUDLA
                                              (Appearing telephonically)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings held in open court:)

2    THE CLERK:  05 C 7097, In Regards to Ameriquest

3    Mortgage.

4    THE COURT:  Okay.  Here, let me make this suggestion.

5    We have got microphones at the tables.  We have got microphones

6    up here.

7    How many people really intend to speak this morning?

8    Okay.  Let me have those that intend to speak come

9    forward, and the rest of you I'll permit you to check in

10   afterwards.  I mean we go on the record afterwards, and you can

11   state what your names are.

12   But I want to -- I want to get done what we need to

13   get done this morning.

14   Welcome, everybody.  Appreciate everybody coming in.

15   So why don't thought -- why don't we start on the

16   plaintiffs's sides.  Please come up to the microphone.  State

17   your full name and spell your last name and tell me who you

18   represent.

19   MR. KLEIN:  Gary Klein, your Honor.  The law firm is

20   Roddy Klein and Ryan in Boston.

21   THE COURT:  Go ahead and spell your last name.

22   MR. KLEIN:  K-l-e-i-n.  And I represent class

23   plaintiffs, the borrower plaintiffs.

24   Do you want me to introduce the other counsel with me

25   for the class plaintiffs or do you want me to --

1     THE COURT: Only those who are going to speak.

2  Whoever is going to speak, come forward.

3     MR. KLEIN: Okay. I think it is just me then.

4     THE COURT: Okay.

5     MR. HARRIS: Daniel Harris, H-a double r-i-s,

6  representing various individual plaintiffs.

7     THE COURT: Okay.

8     MR. EDELMAN: Daniel A. Edelman and Al Hofeld

9  representing various individual plaintiffs.

10    THE COURT: Go ahead and spell your last name,

11 Mr. Edelman.

12    MR. EDELMAN: E-d-e-l-m-a-n, your Honor.

13    THE COURT: Okay. And, Mr. Hofeld, are you going to

14 be speaking?

15    MR. HOFELD: Sure, your Honor.

16    THE COURT: All right.

17    MR. HOFELD: Hofeld is H-o-f-e-l-d.

18    THE COURT: I mean the reason this is important is in

19 the event anybody wishes to have a transcription, it is

20 important that the person who transcribes it knows who is

21 speaking, so -- and it is also important that you get near the

22 microphone as a result.

23    Go ahead.

24    MR. LeSAGE: Good morning, your Honor. Bernard

25 LeSage, L-e capital S-a-g-e, of the Buchalter firm representing

1   all defendants other than Argent.

2          THE COURT: Okay.

3          MR. VARGA: Your Honor, Craig Varga, Chicago counsel

4   for all defendants other than Argent.

5          THE COURT: Okay. Go ahead and spell your last name.

6          MR. VARGA: V-a-r-g-a.

7          THE COURT: You'll get used to this.

8          Okay.

9          MR. WIEGAND: Good morning, your Honor. Tom Wiegand,

10   W-i-e-g-a-n-d, on behalf of defendant Argent.

11          THE COURT: Very good.

12          Okay. Do we have somebody available by telephone at

13   this point?

14          THE CLERK: No, they -- not yet.

15          THE COURT: Not yet. Okay.

16          So this matter comes before me for a status, which has

17   been continued numerous times at the request of counsel. I

18   think Judge Aspen has referred to me discovery supervision and

19   also a motion dealing with -- which is now fully briefed --

20   motion to compel filing of amended master class complaints and

21   compliance with Court's order.

22          So who wants to bring me up to date on what's going on

23   and what you would like me to do to assist you to bring this

24   case to a resolution? Since we all know it is going to be

25   settled, so the question is when.

1    MR. KLEIN:  The --

2          THE CLERK:  Excuse me.  Could you just state your name

3    before you --

4          MR. KLEIN:  Absolutely.  Gary Klein, your Honor.

5          The motion to compel filing of an amended class action

6    complaint, my understanding is that the defendants intend to

7    withdraw that motion at this time.

8          MR. LeSAGE:  That's correct, your Honor.  Defendants

9    disclosed in our status conference statement that we'd like to

10   withdraw, and in light of the Court's, Judge Aspen's recent

11   orders.

12         THE COURT:  Okay.  So defendants's oral motion to

13   withdraw their motion to compel filing of amended master class

14   complaints and compliance with Court's order is granted.

15         Okay.  So now what's in front of me?

16         MR. LeSAGE:  I'm sorry, that motion is withdrawn.

17         THE COURT:  I mean is withdrawn.  Withdrawn.

18         MR. LeSAGE:  Right.

19         THE COURT:  No, their oral -- their oral motion to

20   withdraw is granted.

21         MR. LeSAGE:  I understand.

22         THE COURT:  And their oral motion to withdraw is

23   granted.

24         MR. LeSAGE:  I don't think anything else is before

25   you.  I think at least as far as I understand it, that was the

1    only motion before you -- your Honor this morning.  And it

2    wasn't even really before your Honor this morning, because

3    there was a --

4              THE COURT:  Right, we had it set --

5              MR. LeSAGE:  -- hearing date later on.

6              THE COURT:  In looking through the docket sheet I

7    noticed at one point Docket Entry Number 320, motion by unknown

8    Daniel A. Edelman --

9              MR. LeSAGE:  Very unknown, your Honor.

10             THE COURT:  Very unknown, to all of us here.

11             -- to compel, one, motion to clarify commencement of

12   discovery and motion practice; two, motion to compel; and,

13   three, response to defendants's motion to enter stipulation.

14             MR. EDELMAN:  That's been mooted.

15             THE COURT:  Has that been mooted?

16             MR. EDELMAN:  That's been mooted.

17             THE COURT:  Okay, very good.

18             Because that was a motion that was referred to me at

19   one point and -- so --

20             MR. EDELMAN:  (Unintelligible).

21             THE COURT:  Come closer to the microphone,

22   Mr. Edelman.

23             MR. EDELMAN:  Daniel A. Edelman.

24             Judge Aspen entered a couple of orders which

25   (unintelligible) issue that --

1    THE COURT:  Okay.  So why do I have you all here
2    then?
3        MR. KLEIN:  There are a handful of other issues, your
4    Honor --
5        THE COURT:  Okay.
6        MR. KLEIN:  -- that we could use some assistance with.
7        THE COURT:  Very good.
8        MR. KLEIN:  And I would be happy, if you would like,
9    to give you a bigger -- a broader status report about what's
10   been going on in the case.
11       THE COURT:  That would be great.
12       MR. KLEIN:  I think it wouldn't be repetitive of
13   what's in the written status point.
14       THE COURT:  Go ahead, Mr. Klein.
15       MR. KLEIN:  Your Honor, this is a case that -- where
16   the plaintiffs allege a multi-prong scheme of predatory home
17   mortgage lending.  It is rooted in four core practices that
18   affect the plaintiffs and the class.
19       The first one is a set of bait and switch problems
20   where customers of Ameriquest allege that they were offered one
21   set of loan terms and that Ameriquest delivered loans on a
22   different set of less advantageous terms.
23       The second practice is a set of confusing variable
24   rate structures involving teaser rates.  And when the teaser
25   rate period expires, the rates on the loans involved go up very

1   substantially and the payments go up very substantially. And
2   there are hundreds of thousands of borrowers across the country
3   who are struggling to make their mortgage payments because of
4   these enormous changes in the amount of their monthly payments.

5       The third common practice is Ameriquest used a vehicle
6   that they called discounts points. And it is plaintiffs's
7   allegation that either Ameriquest didn't provide a discount
8   associated with borrowers's payment of those points or if they
9   did provide such a discount they didn't give the consumer
10  enough information to evaluate whether it was better to pay a
11  substantial lump sum discount in order of magnitude of 5 to 10
12  thousand dollars or to take the lower interest rate that was
13  associated with the discount. That is, the consumers couldn't
14  make an informed choice.

15      And then last there is a set of issues about failure
16  to deliver accurate information in disclosures about loan
17  terms.

18      The policies at issue, the core problems at issue,
19  were implemented by Ameriquest by a system of incentivizing its
20  employees. It is plaintiffs's position that Ameriquest used a
21  compensation system that was designed to encourage employees to
22  mislead customers.

23      In addition, there is a set of issues for
24  non-borrowers of Ameriquest; that is, people who never had an
25  Ameriquest loan. And those are really generically in two

11

1   categories.

2         One is a set of claims that Ameriquest legally

3   accessed credit reports in making offer -- or without making

4   firm offers of credit to borrowers.

5         And the second is that when Ameriquest -- when a

6   borrower did make an application for credit to Ameriquest, and

7   Ameriquest denied that application, it is plaintiffs's

8   contention that Ameriquest failed to provide the proper notices

9   of adverse action, which is required by the Fair Credit

10   Reporting Act and Equal Credit Opportunity Act.

11         Judge Aspen entered a case management order on

12   December -- on November 6th, 2006. That order appoints a

13   structure for representation in the case. It appointed three

14   firms, including mine, the Lieff Cabraser firm, the James Hoyer

15   firm out of Tampa, to represent the class of borrowers and the

16   class of non-borrowers, and it provided a structure for

17   individual -- for organization of counsel in the individual

18   cases and appointed a leadership group with the individual

19   cases as well.

20         Consistently with the court order, the November '06

21   court order, plaintiffs's class counsel filed two consolidated

22   amended class action complaints. And as I'm sure you noted on

23   the docket, Judge Aspen recently denied motions to dismiss

24   those two complaints. So we are now at the point of proceeding

25   on the merits of those two complaints.

1    Discovery has been proceeding.  There have been

2  substantial discovery requests served, both for the borrowers

3  and non-borrower class cases.  And I'll let the individual

4  counsel explain what's going on in the individual cases.

5    But with respect to the two class cases, there have

6  been several discovery conferences.  We're trying to work out

7  formats for electronic document production, ways to manage the

8  costs.  And we have made some progress on those issues.  I

9  certainly don't want to stand here and promise you that you

10  won't see a motion or two that comes out of issues that will

11  arise over the --

12    THE COURT:  No, I mean this is a challenging and

13  developing area of the law that we're trying to get ourselves

14  up to speed as much as you are.  So, you know, I look forward

15  to learning along with you and trying to develop some good

16  practices in that regard.

17    MR. KLEIN:  I think at this time what we can say or

18  what I could say for the plaintiffs is that we're working to

19  resolve issues so that we can get document production rolling.

20  We're looking to (unintelligible) some depositions, including

21  30(b)(6) depositions, and that we're looking forward to being

22  able to file class certification motion, perhaps even before

23  the deadline in Judge Aspen's case management order.

24    There are a couple of issues that we would request

25  your help with today, at least some input on today.  You may

1  tell us that what we need to do is file motions, and I would

2  understand that.  But there are some developing questions, that

3  if you would allow it, I would put before you.

4              THE COURT:  Go ahead.

5              MR. KLEIN:  That will --

6              THE COURT:  And then we'll see how the other side

7  feels.

8              MR. KLEIN:  One is that there is an expert deadline in

9  the case, which is May 13th, 2006.  It is based on Judge

10  Aspen's order that --

11              THE COURT:  2007?

12              MR. KLEIN:  2007, correct, your Honor.

13              It is based on Judge Aspen's order that the experts be

14  disclosed six months following the commencement of discovery.

15  Unfortunately we have not made a tremendous amount of progress,

16  and in fact we haven't received any documents at all at this

17  point.

18              What we'd like is an extension of that deadline, if

19  possible, until September 13th.  That would be a four-month

20  extension, I believe.  And if your Honor prefers, we'd file a

21  motion with that request.

22              MR. LeSAGE:  Your Honor, defendants are at -- Bernard

23  LeSage, Buchalter firm.

24              Defendants would be in agreement with that request for

25  all of the same reasons that we're in the process of working --

1    THE COURT: Okay.

2    MR. LeSAGE: -- many of these issues out.

3    THE COURT: So let me enter an order, and we'll see

4  what happens to it.

5    MR. LeSAGE: Okay.

6    THE COURT: Okay? So by agreement of the parties the

7  expert discovery -- the date for the disclosure of experts is

8  extended to September 13th, 2007, given the fact that discovery

9  is still in its very early stages.

10    MR. KLEIN: Thank you.

11    THE COURT: So we'll recite that in the minute order

12  and --

13    MR. KLEIN: Another issue that has arisen relates to

14  Judge Aspen's order requiring that plaintiffs take only a

15  single deposition of any given witness without further leave of

16  Court.

17    I don't think we have a problem with the concept of

18  taking only that single deposition; however, we're trying to

19  come up with a way to efficiently --

20    THE COURT: A single deposition of any who?

21    MR. KLEIN: Any particular witness --

22    THE COURT: Of any particular witness.

23    MR. KLEIN: -- in the case.

24    And I believe the said order applies both ways. The

25  defendants would only be able to take one deposition of a

1  plaintiff or a plaintiffs's expert.

2       The issue that arises, your Honor, relates to giving

3  notice to the parties in this case, which, as you can see from

4  the docket, has become just a little bit unmanageable in terms

5  of the number of parties --

6       THE COURT:  Right.

7       MR. KLEIN:  -- the number of people who may have an

8  interest, the number of people who may want notice of a

9  particular deposition.

10      What we did in connection with the first scheduled

11 deposition is use the ECF process; that is, we filed a notice

12 of the taking of the deposition because we believed that was

13 the simplest way to get notice to anyone who had registered for

14 ECF.

15      When we did that, Gladys Lugo called and suggested

16 that, you know, the docket was already so overwhelmed that that

17 would not be the best process.  So I think what we need is some

18 sort of a procedural order that would address how we could give

19 sufficient notice to all of the counsel that might be

20 interested in the schedule for taking depositions over time.

21      MR. LeSAGE:  Your Honor, may defendants speak to

22 that?

23      THE COURT:  Okay.  I mean, do you have a specific

24 suggestion?

25      MR. KLEIN:  I do, your Honor.

1   THE COURT:  Let me hear your specific suggestion, and
2   then we'll --

3   MR. KLEIN:  Our suggestion is that because Judge Aspen
4   recently entered an order that requires that anybody who wants
5   notice of anything that happens in this case to register for
6   the ECF system, we should have a fairly comprehensive list of
7   counsel and their email addresses through the ECF notice.

8   Our proposal would be that notice of any deposition go
9   out to anyone who has theretofore registered as of the date on
10  which the notice is submitted.  And then that be deemed
11  sufficient notice for the purpose of setting up a deposition.

12  I believe that, you know, if someone came in at the
13  outset claiming that they were foreclosed by the failure to
14  receive notice, you know that would be an issue that the Court
15  could take up on a case-by-case basis.

16  THE COURT:  Okay.  Let's see what Mr. LeSage has to
17  say.

18  MR. LeSAGE:  Mr. LeSage, Buchalter firm.

19  Your Honor, we pointed out in our status conference
20  statement to you that within 45 days of Judge Aspen's order
21  that all the remaining defendants will have been named
22  effective -- most of the major defendants will have been named
23  in the next two or three weeks.  And --

24  THE COURT:  You mean third-party defendants?

25  MR. LeSAGE:  Third party defendants.  Some of whom are

1 very important. Some of whom are probably more run of the

2 mill, or that at least have parties who are similarly

3 interested in asking the types of questions.

4 Our concern is, and I think it is somewhat shared by

5 the plaintiffs but we have different solutions, is that if you

6 have someone who is yet to be named, they will not receive

7 notice by either the electronic means or by paper because we

8 don't have all of their identities yet.

9 And my suggestion was that we need to either wait for

10 the depositions or at least have an order that there shall be

11 only one deposition because it is going to be very unmanageable

12 to put forward a 30(b)(6) deposition and then to find out later

13 that other people have a legitimate reason to come to your

14 Honor and say, look it, we didn't even have notice of that

15 deposition. And then you would be under pressure to grant at

16 least some portion of a deposition to each of those additional

17 parties.

18 THE COURT: Well, you know --

19 MR. LeSAGE: And that seems --

20 THE COURT: I think --

21 MR. LeSAGE: -- unwieldy.

22 THE COURT: Here's my thought. I think that -- I mean

23 to the extent that the discovery is intended to, let's say,

24 determine record management practices, those kinds of things, I

25 don't really see that people would be prejudiced and asked to

1  come in assuming, you know, it is fairly well covered and the

2  depositions themselves are made available.

3         I think once you get into merits type of discovery, I

4  have a greater concern and the potential for prejudice may be

5  greater when you're dealing with what I would call merits

6  discovery than what I would call sort of background type

7  discovery.

8         So I'm not sure, Mr. Klein, whether -- you know, if

9  your 30(b)(6) notices are, you know, please describe your

10 record management practices, your record keeping, you know, the

11 compensation systems, you know, things of a general nature, you

12 know, I would be more inclined to say, you know, let's move

13 forward with that.

14        But if you get into the senior executives talking

15 about, you know, the -- you know, the merits and how this all

16 came about, these various programs, then I would be more

17 sensitive, I think, to the idea that let's be sure everybody is

18 in there and has a chance.

19        MR. KLEIN:  Your Honor, a couple of points.  First,

20 many of the underlying cases here were filed in late 2004 and

21 early 2005.  We're now two and a half to three years into the

22 case, and we haven't had discovery.

23        In addition, Ameriquest has recently gone a long way

24 towards shrinking its business, and there is some concern that

25 some of the folks we may want to depose may not be around very

1  long. It is really time for us to get this discovery process

2  rolling full bore.

3  Ameriquest has had a year and a half since this case

4  was transferred to add these defendants and, you know, they

5  haven't done it yet.

6  And, finally, I would say that Judge Aspen frankly

7  dealt with this issue in his original case management order.

8  His language is that it would be only a single deposition

9  unless there is good cause shown. And, you know, I would think

10  that if there were some reason that one of these defendants,

11  who quite frankly I can't see needing information that the

12  plaintiffs need necessarily, the same type of information, that

13  plaintiffs need, they will be able to come forward and ask for

14  an additional deposition.

15  THE COURT: Well, have all the third-party defendants

16  been named at least, even if they may not have been served or

17  appeared?

18  MR. LeSAGE: No, your Honor. We had expected and

19  promised and had begun naming them. We named close to 80 of

20  them. I think it was 78 which were actually named.

21  Judge Aspen then entered an order that he wanted a

22  consolidated third-party complaint, and that was to be filed 45

23  days from the entry of the order with regard to the motion to

24  dismiss.

25  That motion -- that order has now been entered, and we

1   plan on filing that consolidated third-party complaint, and

2   therefore, they haven't been named.  And we expect that there

3   will be close to 450 additional party defendants, some of whom

4   will not have the same types of questions that they might

5   otherwise be expected to be asked by the current types of

6   plaintiffs.  And even there -- I think, even if they are

7   similar to the types of plaintiffs here, they may have other

8   questions, and they should at least have the right to ask those

9   questions.

10  And we, on the other hand, don't have a problem with

11  them asking the questions.  Our concern is that we don't want

12  to have to have these same deponents coming back and going

13  through the same process.

14  THE COURT:  Well, I mean, I think the other question

15  is whether realistically seven hours is going to be enough to

16  complete the depositions of many of these witnesses and whether

17  there is a strong likelihood that they may be -- there may be

18  multiple sessions for some of these witnesses in any event.

19  I'm not saying that you shouldn't try, obviously, to

20  complete depositions within seven hours, but given the

21  complexity of the cases, the number of parties involved, you

22  have got borrowers, non-borrowers, individual -- there is

23  probably a strong likelihood that there may be the need for

24  multiple sessions.  And there is not any reason why perhaps the

25  second session couldn't take place at a later date, but at

1 least let the discovery begin.

2   MR. LeSAGE: But, your Honor, I would just say that

3 we're talking about 45 days. And it has been consistent

4 throughout these proceedings -- both sides participated in

5 these proceedings throughout. Plaintiffs were the one who

6 asked for the MDL proceeding. And the number of plaintiffs in

7 this case and the number of cases in this MDL proceedings have

8 been as a result of the particular plaintiffs who are standing

9 before your Honor who have added new party plaintiffs. This is

10 into the something of defendants making.

11   THE COURT: Okay. Well, have any notice -- well,

12 first of all, with respect to the first point, do you agree,

13 Mr. LeSage, with Mr. Klein's suggestion as to how notice be

14 given?

15   MR. KLEIN: Your Honor, if I may, just before

16 Mr. LeSage answers, I want to amend slightly what I said.

17 Mr. Miller pointed out that it wasn't particularly clear about

18 my proposal.

19   It is that we give the notice by an email not sent to

20 the ECF system, but rather by an email sent to anybody that's

21 listed.

22   THE COURT: Right. Based on what they --

23   MR. KLEIN: The --

24   THE COURT: Based on the address that they have given

25 you through the system. Yeah.

1    I mean, I think that's fine.  Do you agree with that?

2         MR. LeSAGE:  I agree with that, your Honor.

3         THE COURT:  Okay.  So what I would like you to do is

4    prepare an agreed order to that effect so that will be spread

5    of record.  And anybody joining the case will be aware that

6    that will be the method by which notice will be given.

7         See if you will prepare an agreed order that covers

8    it, I'll be happy to enter that.

9         MR. KLEIN:  That's fine, your Honor.

10        THE COURT:  Okay.  I'm going to encourage the

11   plaintiffs, at least in the first instance -- I mean, I'm going

12   to let discovery begin.  I'm going to let oral discovery begin,

13   even prior to the 45 days.

14        But I am going to encourage the plaintiffs to focus on

15   what I would call the more broader systems, policy -- you know,

16   the document retention, those kinds of things, 30(b)(6), so you

17   can understand what's being kept, who is keeping it, as opposed

18   to honing in on the particular practices that I'm going to ask

19   you to defer that a little bit.  And see whether that

20   ameliorates some of Mr. LeSage's concerns.

21        MR. KLEIN:  Your Honor, that is fine, and we will

22   attempt to abide by that.

23        There is one exception though, which is we have

24   already agreed to a deposition of a non-party witness who is

25   represented by the Buchalter firm, the former CEO of the

1  company.  We have agreed to a deposition date of May 13th.  We

2  sent out a notice of that date.  I don't believe that that

3  deposition is going to be limited to the kinds of issues that

4  you are talking about.

5       THE COURT:  Well, I mean if everybody has worked it

6  out, and you have agreed to it, go for it.  Go for it.

7       And if it turns out there is a problem, we'll just

8  have to deal with it.

9       MR. LeSAGE:  Your Honor, I would say that I don't

10  have -- I like your alternative, which is to allow the

11  witnesses to go forward on how the documents have been

12  maintained and the structure and those types things, which

13  could go forward.

14       For this particular witness, I do think that there is

15  going to be considerable interest in attending the deposition,

16  and so I would encourage plaintiffs work with me to find a date

17  that is not the first one out of the box.  It happens to be the

18  first one out of the box.  I don't have a problem with him

19  going forward.  I do have a problem with bringing him back.

20  He's an independent witness.  He's no longer employed by the

21  company.  And he does have his own life to proceed forward

22  with.  And it is of considerable concern.

23       THE COURT:  You know, I respect all that.  The

24  likelihood that somebody in that key a position that everything

25  is going to be covered to everybody's satisfaction -- because

1   you may want to do some inquiry yourself.  I mean, I -- you
2   know, I don't know whether he is friendly or hostile or what's
3   going on.

4       But, you know, it is in these kind of cases very
5   difficult to line these people up, get everybody's schedules
6   lined up, and get everybody ready to go, and then try to find a
7   new date.  I mean, if you are ready to go, go, is my view.

8       And if you need to compensate him for coming back,
9   everybody can chip in and cover another day's worth of witness
10  fee at 50 bucks.  I think you can amass that.

11      Okay?  Now we have to move ahead with the discovery.
12  So go ahead with the May 13th date.

13      MR. KLEIN:  The other question I have for you at this
14  time is that we expect that deposition to be fairly
15  contentious.  We were wondering whether you would be available
16  that day in case there are objections and issues to rule on.
17  And I think it would be efficient in the sense that if we could
18  get quick rulings on those kind of issues, it would inform us
19  for depositions (unintelligible).

20      THE COURT:  I mean, here --

21      MR. KLEIN:  But the date is May 9th.

22      THE COURT:  May 9th.

23      I mean, first of all, I'm not sure if I am going to be
24  here, but I will make it a point not to be here if that's -- if
25  that's the case.

1    Now it is not generally my practice to let lawyers

2  think that they can immediately call me.  If there is something

3  really serious, obviously, you know, I'll make myself

4  available.  But my general guidelines are answer the questions

5  and make your objections.  Unless, of course, it is an issue of

6  privilege.  Otherwise, you know, I expect the answers to be

7  given, objections preserved, and the deposition goes forward.

8    And I don't intend to jump in and figure out where

9  you are in the case and what the specific question is.  And

10  that's not generally the way I do it.  And -- you know, I'm

11  happy to help with you any guidelines in advance, if you think

12  that that's more helpful.  But I don't really enjoy the

13  posturing that goes on when one lawyer threatens another

14  lawyer, well, I'm going to call the Judge unless you back off

15  on this.

16    I mean, you know, I practiced law for 24 years.  I did

17  a lot of class action work.  Still waiting to see one of those

18  cases go to trial.  When they do, let me know.

19    MR. LeSAGE:  Your Honor, this is the first I have

20  heard that it is going to be a cantankerous, obnoxious

21  deposition.

22    THE COURT:  Well, you have never participated in --

23    MR. LeSAGE:  That's not been my style at all.  And

24  certainly in light of the fact that this witness may be coming

25  back for additional sessions, there is really no reason why a

1   lawyer can't take the questions and if motions required there

2   is going to be time to do that -- but I'm not anticipating it

3   to be an obstreperous deposition.  That's maybe what plaintiff

4   anticipates, but I'm not sure that's accurate.

5          THE COURT:  Well, I appreciate the spirit in which you

6   made the comments, and I would expect the plaintiffs to

7   reciprocate in the same spirit.  That you can be tough on the

8   problem, but do not be tough on each other.  And to this point,

9   you know, that's the way I expect the case to be conducted.

10         Anything else?

11         MR. HARRIS:  Your Honor --

12         THE COURT:  Go ahead and identify yourself,

13  Mr. Harris.

14         MR. HARRIS:  Daniel Harris.

15         Your Honor, we have an agreement that, among other

16  things, defendants will be producing individual loan files.  I

17  haven't gotten them yet.  Defense counsel told me this morning

18  that I should get them by the end of the month.  So I just want

19  to -- which is next week.  I just want to make of record in

20  case I have to come back on a motion.

21         THE COURT:  Okay.

22         MR. HARRIS:  And also we have an agreed protective

23  order.  If you want to -- that it is not -- we're not waiting

24  on that for discovery, but it would be something that we would

25  appreciate, your Honor.

1    THE COURT: Okay. In terms of protective orders, I

2  mean the Seventh Circuit is very touchy about protective orders

3  and the language to be used.

4    On my website I have some suggested language and

5  citations to cases. And as long as your protective order

6  complies with that, I'll have no problem entering it.

7    MR. LeSAGE: Your Honor, I'll confirm on the record

8  that we will produce those loan files before the end of the

9  month, as we had previously agreed to do. And they are in the

10  process of being produced. And we had already visited your

11  website. We incorporated the language that was consistent with

12  that.

13    I think all counsel on both sides were aware of your

14  concerns and particular orders based upon the Seventh Circuit

15  law. And as Exhibit C to defendants's status report was a

16  proposed form, which both sides have signed and felt conformed

17  with your rules.

18    THE COURT: Okay. If you want to hand it up, and

19  I'll --

20    (Document tendered.)

21    THE COURT: You mean, you have got the signed version

22  there?

23    MR. LeSAGE: Yes, your Honor.

24    May I approach?

25    (Document tendered.)

1     THE COURT:  Yes.

2     Go ahead.

3     THE COURT:  You may approach, Mr. LeSage.

4     Very good.  Thank you.

5   (Brief interruption.)

6     THE COURT:  Okay.  Is there anything else we need to

7   cover this morning on the defense side?

8     Everybody getting along?

9     MR. LeSAGE:  We have had a stipulation reproduction of

10  plaintiffs's loan files, which my copy was the incorrect one.

11  That's the one that plaintiffs pointed out we had a

12  modification of that, which I had agreed to, and it is

13  not -- so I don't have a copy of the one that should be signed.

14    MR. KLEIN:  Actually I think you're (unintelligible.)

15    MR. LeSAGE:  Okay.

16    THE COURT:  Okay.  If you are going to speak on the

17  record --

18    MR. KLEIN:  Sorry, your Honor.

19    THE COURT:  -- speak into the microphone.

20    Speaking to each other, then step away from the

21  microphone.

22    MR. KLEIN:  Sure.

23    THE COURT:  Okay.

24    MR. KLEIN:  I think Mr. LeSage was referring to the

25  stipulation regarding mediation that the individual plaintiffs

1  and the defendants agreed to. And the correct one, the one

2  that we're asking for the court to enter, is the one, the

3  version attached to plaintiffs's -- the individual claims

4  steering committee, response to defense status reports.

5       THE COURT: And do you have a copy?

6       MR. KLEIN: I do have a copy that I can hand up.

7       Tear this off.

8       MR. LeSAGE: I have --

9      (Document tendered.)

10       MR. LeSAGE: And I agree with plaintiff that that's

11  the proposed stipulation that everybody had agreed with, and

12  I'll provide a copy.

13       MR. KLEIN: Here. Here.

14       THE COURT: Okay. If you will just provide me with a

15  copy, I'll be happy to enter it.

16       Thank you.

17      (Brief interruption.)

18       THE COURT: Okay. You have set this out for Judge

19  Aspen to sign, so you want me to sign it or --

20       MR. LeSAGE: Okay. Some of the plaintiffs would like

21  to redraft it because the March date has lapsed.

22       THE COURT: Okay. So I will return this, and let you

23  present that. You can either set it up for my signature or

24  Judge Aspen's, whichever you prefer.

25       Okay. Anything else?

1   MR. KLEIN:  I believe that's all the issues that the
2   individual plaintiffs have, your Honor.
3       THE COURT:  Okay.
4       Anything else, Mr. LeSage?
5       MR. LeSAGE:  Nothing else, your Honor.
6       THE COURT:  Okay.  As far as I'm concerned, I'm happy
7   to conduct statuses by telephone so that people don't have to
8   fly in.  But what you have to do is you have to set up your own
9   conference call, and then only one call comes in.  Or you can
10  come here when the Cubs are in town, and we'll set it for 10:00
11  o'clock, and then you can go see the Cubs at 1:20.  That's
12  really up to you as what your preference is in terms of
13  scheduling.
14      So do you want to set a regular date or what -- or a
15  next date or not?
16      MR. HARRIS:  Your Honor, Daniel Harris.  I think that
17  it would be helpful if we had regular dates.  I think that we
18  have made a great deal of progress today.  And often defense
19  counsel is very busy, and so it may be hard to reach him if
20  there is an occasion for it.  So I think having a regular date
21  date would be a good idea.
22      THE COURT:  Mr. LeSage, do you have any objection?
23      MR. LeSAGE:  I -- I'm a very regular guy, so --
24      THE COURT:  Okay.  Now you're on the West Coast,
25  right?

1    MR. LeSAGE:  I am, your Honor.

2    THE COURT:  So if I set things at 9:00 in the morning,

3    that would be difficult for you?

4    MR. LeSAGE:  Not really, your Honor.

5    THE COURT:  I'm just teasing.

6    MR. LeSAGE:  Yeah.

7    THE COURT:  I'm just teasing.

8    I can tell you're an early riser.

9    MR. LeSAGE:  I am.

10    THE COURT:  I do my statuses usually on Tuesdays and

11    Thursdays, so I could -- if I set them at, let's say, 10:30 on

12    a Tuesday or Thursday --

13    MR. LeSAGE:  That would be fine.

14    THE COURT:  In about -- you want 30 days inter- --

15    five-week intervals?  Ten-week intervals?  What would you like

16    with the next one?

17    MR. LeSAGE:  Your Honor, I would say that in this

18    particular instance that --

19    THE COURT:  Three weeks.

20    MR. LeSAGE:  -- the best time for a status conference

21    would be in two months because then all of the pleadings will

22    have been completed.  We'll be closer to being at issue.  But

23    that would be my recommendation.  I'm not sure what's going to

24    happen within the next 30 days.  That might require --

25    THE COURT:  I mean, I'm always available for motions,

1  so -- in between statuses. But if you would prefer to have it

2  earlier than that, let me know, on the plaintiffs's side.

3  MR. HARRIS: Your Honor, one thing that every other

4  month might make sense. But in the short-term I would ask that

5  we have a conference in that five-week time frame.

6  THE COURT: Okay. So why don't we set the first one

7  in approximately five weeks at 10:30 in the morning.

8  THE CLERK: Well, six weeks. June 7th at 10:30.

9  THE COURT: And I know one or two of you will not be

10  available that day. But, you know, we're going to have to try

11  to go forward. Hopefully there will be enough key players

12  available to make that happen.

13  Does that work for you, Mr. LeSage? You seem to be a

14  key player here.

15  MR. LeSAGE: I think I am, your Honor. I -- my

16  Blackberry, I turned it off so that it wouldn't ring.

17  THE COURT: Okay.

18  MR. LeSAGE: So I won't know --

19  (Laughter.)

20  MR. LeSAGE: -- until I can get this back on here.

21  THE CLERK: When is Judge Aspen supposed to see you,

22  do you know?

23  MR. HARRIS: June 28th.

24  THE COURT: Okay. Well --

25  MR. LeSAGE: If we can combine, that would be --

1    THE COURT:  Well, I mean, let me see you June 7th

2  because if you have got some discovery issues, things going on,

3  I can help you out at that point in time.

4    So who is going to initiate the conference call or set

5  up the conference mechanism?  Who is going to be designated the

6  leader of the pack when it comes to doing that?

7    MR. KLEIN:  We'll do it, your Honor.  We'll do it.

8    MR. LeSAGE:  And I'll -- Mr. Klein and I will set it

9  up.

10    THE COURT:  Very good.

11    Okay.  Then I'm going to leave the bench.  I will give

12  every attorney who would like to identify themselves the

13  opportunity to come forward and identify yourselves for the

14  record so the record will indicate that you were here.  And

15  that any of these who are participating by telephone can also

16  identify themselves so that the record is clear as to who came

17  and participated.

18    MR. KLEIN:  Thank you, your Honor.

19    THE COURT:  Is that acceptable to everyone?

20    MR. LeSAGE:  That's acceptable, your Honor.

21    MR. KLEIN:  That is acceptable, your Honor.

22    THE COURT:  Okay.  Thank you all for your

23  cooperation.

24    THE CLERK:  Okay.  Can I have the parties by phone

25  state who you are?

1   MR. KUDLA:  Richard Kudla, K-u-d-l-a, for -- on the

2   matters of Anthony versus Ameriquest, et al., and Walsh,

3   W-a-l-s-h.

4          THE CLERK:  Okay.  Next.

5          MR. PIZOR:  This is Andrew Pizor, that's spelled P as

6   in pepper i-z as in zebra o-r, of the Consumer Law Group,

7   appearing on behalf of numerous plaintiffs.

8          THE CLERK:  Okay.  Is there anybody else by phone?

9          I think it is just the two of you.

10         Okay.  I'll disconnect you.  You don't need to stay on

11  unless you want to listen.

12         MR. PIZOR:  Thank you very much.

13         THE CLERK:  All right.  Thank you.

14         MR. KUDLA:  Thank you.  Goodbye.

15         THE CLERK:  All right.

16         MS. DERMODY:  This is Kelly Dermody from Lieff

17  Cabraser Heimann & Bernstein.  Dermody is D-e-r-m-o-d-y.

18  Appearing as co-lead class counsel.

19         MS. BOWMAN:  Jill Bowman, B-o-w-m-a-n, from the James

20  Hoyer law firm, appearing as co-lead class counsel.

21         MR. MILLER:  Marvin Miller liaison counsel for the

22  plaintiffs.

23         MR. KEOGH:  Keith Keogh with Alex Burke on behalf of a

24  variety of individual plaintiffs.

25         THE CLERK:  Spell your last name.

1  MR. KEOGH:  Keogh, K-e-o-g-h.  And Burke is B-u-r-k-e.

2  THE CLERK:  Okay.  That's it?

3  All right.

4  (Which concluded the proceedings in the above-entitled

5  matter.)

6

7  C E R T I F I C A T E

8

9  I hereby certify that the foregoing is a transcript of

10  proceedings before the Honorable Morton Denlow on April 26,

11  2007.

12  DATED:  May 25, 2007

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT B**


BuchalterNemer
A Professional Law Corporation

1000 WILSHIRE BOULEVARD, SUITE 1500, LOS ANGELES, CALIFORNIA 90017-2457
TELEPHONE (213) 891-0700 / FAX (213) 896-0400

File Number: L7526-0683
Direct Dial Number: (213) 891-5230
Direct Facsimile Number: (213) 630-5715
E-Mail Address: *blesage@buchalter.com*

June 12, 2007

**VIA FACSIMILE**

Gary Klein
Roddy Klein & Ryan
727 Atlantic Ave., 2nd Floor
Boston, MA 02111

Re:  Multidistrict Litigation Proceeding No. 1715

Dear Gary:

Following our recent discussions, and without waiving Ameriquest Mortgage Company's ("AMQ") prior objections, AMQ agrees to produce the following witnesses who we in good faith believe cover all, or substantially all, of the below topics identified in the Borrower Plaintiffs' Rule 30(b)(6) deposition notice.

| Topic Number | Witness |
|---|---|
| AMQ Nos. 10, 15, 23, 24, 25, 26, 27, 28, 29, 31, 38, 42, 45, 48 | Lori Grigg |
| AMQ Nos. 20, 34, 36 Argent Nos. 15 | Greg Bartz |
| AMQ Nos. 1, 2, 3, 4, 6, 7, 8, 9, 14, 17, 18, 19, 32, 33, 35 | Michael Gibson |
| AMQ Nos. 22, 43, 44, Argent Nos. 16 (partially) 38-39 | Grace Schultz |
| AMQ Nos. 40, 41 Argent Nos. 36 | Imad Banna |
| AMQ Nos. 5, 37 | Kari Hallowell |

In all probability, the witnesses will be produced in the order set forth above, following the conclusion of the Argent depositions identified in a letter that we believe Argent's counsel

Buchalter Nemer

Gary Klein
June 12, 2007
Page 2

will be sending shortly.  Based on vacation schedules and other practical issues which we expect the parties will be able to work through informally, there may however need to be some rearranging of the schedule.

Moreover, we are still locating and finalizing witnesses for a few of the topics and will follow up shortly with their identification.  Also, if we locate a more knowledgeable witness on a particular topic set forth above, we will let you know promptly.

Please let me know if you have any additional questions.

Very truly yours,

BUCHALTER NEMER
A Professional Corporation

By

Bernard E. LeSage

BEL:csg
BN 1263007v1

BN 1262130v1

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

IN RE AMERIQUEST MORTGAGE CO.
MORTGAGE LENDING PRACTICES
LITIGATION

_____

THIS DOCUMENT RELATES TO: ALL
ACTIONS

MDL No. 1715

Lead Case No. 05-cv-07097

(Centralized before the Honorable
Marvin E. Aspen)

Magistrate Judge Morton Denlow

## PLAINTIFFS' NOTICE OF TAKING VIDEOTAPED DEPOSITION OF DAWN ARNALL

**TO:    ALL PARTIES AN THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that pursuant to Rule 26 of the Federal Rules of Civil Procedure, Plaintiffs, by and through undersigned counsel, will take the videotaped deposition of **Dawn Arnall on Thursday, July 12, 2007 at 9:00 a.m. at the offices of Esquire Deposition Services, 2850 Red Hill Avenue, Suite 120, Santa Ana, California 92705**, or at another time and location mutually agreed to by the deponent and parties, before a notary public or other person authorized by law to administer oaths. The videotaped deposition will continue from one day to the next, excluding Sundays and holidays, until the examination is completed. You are hereby notified of such proceeding and will conduct yourself accordingly.

Dated:  June 14, 2007

_____*/s/ Kelly M. Dermody*_____          _____*/s/ Gary Klein*_____
Kelly M. Dermody                                          Gary Klein

Kelly M. Dermody (CA Bar No. 171716)       Gary Klein
Caryn Becker (CA Bar No. 196947)             Elizabeth Ryan
LIEFF, CABRASER, HEIMANN                      Shennan Kavanagh
  & BERNSTEIN, LLP                                   RODDY KLEIN & RYAN
275 Battery Street, 30th Floor                      727 Atlantic Avenue
San Francisco, CA  94111-3339                    Boston, MA   02111-2810
Telephone:  (415) 956-1000                         Telephone:  (617) 357-5500 ext. 15
Facsimile:  (415) 956-1008                          Facsimile:  (617) 357-5030

_____*/s/ Jill Bowman*_____
Jill Bowman

Jill Bowman
JAMES, HOYER, NEWCOMBER
  & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL  33609
Telephone: (813) 286-4100
Facsimile:  (813) 286-4174

*Plaintiffs' Co-Lead Counsel*

_____*/s/ Marvin A. Miller*_____
Marvin A. Miller

Marvin A. Miller
MILLER LAW LLC
101 North Wacker Drive, Ste. 2010
Chicago, IL  60606
Telephone:  (312) 525-8316
Facsimile:  (312) 525-8231

*Plaintiffs' Liaison Counsel*

2

**EXHIBIT D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL Docket No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: | |
| ALL ACTIONS | |

## DEFENDANTS' OBJECTIONS TO PLAINTIFFS' NOTICE OF DEPOSITION OF DAWN ARNALL

PROPOUNDING PARTIES:            Plaintiffs

RESPONDING PARTY:               Defendants

Defendants Ameriquest Mortgage Company, ACC Capital Holdings Corporation, Town And Country Credit Corporation, Ameriquest Mortgage Securities, Inc., AMC Mortgage Services, Argent Mortgage Company, LLC ("Defendants") and witness Dawn Arnall ("Mrs. Arnall"), who is represented for purposes of this Notice of Deposition by counsel for certain Defendants (Buchalter Nemer, P.C.), hereby object to the Notice of Deposition of Dawn Arnall ("Notice") served by the plaintiffs in the above-captioned action ("Plaintiffs") as follows:

1.     Defendants and Mrs. Arnall object to the Notice on the ground that Mrs. Arnall has no personal knowledge of the allegations or events giving rise to this action. *Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir. 1999); *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231-232 (9th Cir. 1979). Mrs. Arnall has never participated in the day-to-day operations of the operating companies. Mrs. Arnall holds officer and director positions with only Ameriquest Capital Corporation and ACC Capital Holdings Corporation. She does not hold and has never

held any such positions with any of the Ameriquest operating companies. For Ameriquest Capital Corporation, Mrs. Arnall has been the Chairman of the Board since December 10, 1999, Secretary since March 5, 2004, and Chief Financial Officer/ Treasurer since January 3, 2007. Mrs. Arnall has been Chairman of the Board of ACC Capital Holdings Corporation since February 10, 2004. Defendants will gladly provide Plaintiffs with a sworn declaration attesting to these dates and positions. As previously listed, Mrs. Arnall did not even assume the position as Chairman of the Board of the holding company until February 10, 2004, long after the alleged wrongful conduct in this action. Mrs. Arnall assumed the role of Chairman of the Board after her husband was appointed the Ambassador Extraordinary and Plenipotentiary of the United States of America to the Kingdom of the Netherlands on February 27, 2006, mandating that he relinquish any role with Defendants. Moreover, when Mrs. Arnall assumed the position as Chairman of the Board of the holding company, the settlement with the Attorneys General for 49 states and the District of Columbia ("Multi-State Settlement") had just been publicly announced on January 23, 2006. This Multi-State Settlement resolves all claims by borrowers in 49 states regarding the lending practices of Ameriquest Mortgage Company and certain related entities. $295,000,000 in restitution will be provided to borrowers who opt to participate in the Multi-State Settlement. Each borrower who opts to participate in the Multi-State Settlement will sign a broad release of liability in exchange for a share of the negotiated restitution. Pursuant to the terms of the Multi-State Settlement with the Attorneys General, the Monitor appointed by the Attorneys General was in place and monitoring the day-to-day lending operations of the operating companies. Further, with respect to the status of the settlement reached between Defendants and the 49 Attorneys General, postcards with information about the settlement were sent to eligible borrowers starting on June 25, 2007, notifying them to expect the Notice and Release Forms. The Notice and Release Forms will be mailed to eligible borrowers beginning on July 9, 2007. The holding company that Mrs. Arnall chaired never originated or marketed a single home loan. Before assuming her role as the Chairman of the Board, Mrs. Arnall was employed as an executive in totally unrelated commercial real estate companies. Mrs. Arnall has never held an executive position in the operating companies that are the defendants in this case. Mrs. Arnall has never communicated with any of the plaintiffs or had any involvement whatsoever with their loans. Mrs. Arnall has no knowledge of any lending policies that are the topic of any of the allegations in any of the complaints the this Ameriquest Lending Practices

**Case No. MDL 1715**
**AMQ Objections To Borrower Plaintiffs' Notice of Deposition of Dawn Arnall**

BN 1267104v4

MDL Litigation ("MDL"). Mrs. Arnall has never participated in any manner in the supervision and training of any employees of any of the operating defendants who are alleged in the complaints to have cause harm to the plaintiffs. Mrs. Arnall has never participated in any manner in the appraisal process utilized by any of the operating companies. Mrs. Arnall has never participated in the securitization of mortgages or their sale into the secondary market. Mrs. Arnall has no knowledge of the loan products offered by the defendants or the qualification to obtain such loan products from one of the operating companies.

2.      Defendants and Mrs. Arnall object to the Notice on the ground that Plaintiffs have not demonstrated and cannot demonstrate good cause for the deposition of Mrs. Arnall. *Harris v. Computer Associates Intern., Inc.*, 204 F.R.D. 44 (E.D.N.Y. 2001); *Thomas Int'l Bus. Machines*, 48 F.3d 478, 483 (10th Cir. 1995). Defendants hereby represent that they will not call Mrs. Arnall as a witness in any court proceedings related to this MDL. Defendants will also provide Plaintiffs with reasonable assurances that Mrs. Arnall does not have any knowledge regarding any of the allegations in any of the complaints in this MDL. The Defendants also hereby represent that Mrs. Arnall will not be named as a person most knowledgeable on any of the issues designated by Plaintiffs as potential areas of intended inquiry.

3.      Defendants and Mrs. Arnall object to the Notice on the ground that Plaintiffs have not shown and cannot show that particular testimony by Mrs. Arnall, who is a resident of a foreign country, is necessary in the interest of justice and have not shown and cannot show that it is not possible to obtain her testimony in admissible form without her personal appearance. 28 U.S.C. § 1783(a). Plaintiffs have failed to proceed under the laws and procedures of the foreign country. Fed. R. Civ. P. 28(b). Defendants have offered to provide Plaintiffs with reasonable assurances that Mrs. Arnall has had no involvement whatsoever with any of the alleged wrongful conduct alleged in any of the MDL Complaints. Plaintiffs have not and cannot produce a single document that was authored or signed by Mrs. Arnall that is relevant or potentially relevant to any allegation in any of the MDL Complaints. Since any testimony that might conceivably be provided by Mrs. Arnall can be obtained by some other less intrusive and less costly means, it is abundantly clear that noticing her deposition without consultations regarding date, time and manner was intended for harassment purposes alone.

4.      Defendants and Mrs. Arnall object to the Notice on the ground that the deposition subjects Mrs. Arnall, who is a resident of a foreign country, to an undue burden and expense.

Fed. R. Civ. P. 26(c). Within hours of agreeing with defense counsel not to set the deposition of Mrs. Arnall without meeting and conferring regarding why the deposition was required at all by the Plaintiffs' cases, Plaintiffs served a notice of deposition for a date, time and place intended to cause the most amount of disruption and cost to the witness. Plaintiffs were fully aware that Mrs. Arnall was residing with her husband in the Netherlands on the date Plaintiffs set her deposition to be videotaped in Orange County, California. Plaintiffs did not designate a single topic for the deposition. Plaintiffs did not request a single document to be produced at the deposition.

5. Defendants and Mrs. Arnall object that the Notice seeks to harass, annoy, embarrass, and oppress Mrs. Arnall. Fed. R. Civ. P. 26(c). The Notice will force Mrs. Arnall to travel thousands of miles to appear for a deposition that will do nothing more than reveal she has no relevant knowledge of the of the allegations or events giving rise to this action.

6. Defendants and Mrs. Arnall object to the Notice on the ground that there are less intrusive discovery methods that will permit Plaintiffs to obtain the information they seek. Fed. R. Civ. P. 26(c). Defendants cannot divine exactly what topics of testimony Plaintiffs seek from Mrs. Arnall or what documents Plaintiffs wish to secure, as Plaintiffs did not list either in the Notice. Whatever these topics or documents may be, however, Plaintiffs may obtain them through depositions of other persons who have knowledge and/or written discovery.

7. Defendants and Mrs. Arnall object that the Notice violates the November 7, 2006 Memorandum Opinion and Order (the "November 7 Order") entered in the above-captioned proceeding. The November 7 Order provides that parties shall have 30 days to object to a standard deposition notice and subpoena and 45 days to object to a non-standard deposition notice and subpoena. [November 7 Order at 12.] The Notice was e-mailed to Buchalter Nemer, P.C. on June 14, 2007, just 28 days before the July 12, 2007 date set for the deposition, which is less than the 30 to 45-day notice period mandated by the November 7 Order.

8. Defendants and Mrs. Arnall object that the Notice is directed to Mrs. Arnall in her individual capacity. Therefore, the purported notice of deposition is defective because Mrs. Arnall is not a party to this action, and Plaintiffs have failed to properly serve a third-party subpoena on Mrs. Arnall.

Respectfully submitted,

DATED: July 6, 2007                    By:/s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company;*
*AMC Mortgage Services, Inc.; Town & Country*
*Credit Corporation; Ameriquest Capital*
*Corporation; Town & Country Title Services,*
*Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457

**EXHIBIT E**

From: Gary Klein <klein@roddykleinryan.com>
To: LeSage, Bernard; Jill bowman <jbowman@jameshoyer.com>; Wiegand, Thomas
<TWiegand@winston.com>; Kelly Dermody <KDERMODY@lchb.com>
Cc: Shennan Kavanagh <kavanagh@roddykleinryan.com>; Geman, Rachel <rgeman@lchb.com>;
Becker, Caryn <CBECKER@lchb.com>; DTiberend@acc-capitalholdings.com <DTiberend@acc-
capitalholdings.com>; Andrus, Sarah; Fisher, Michael B.; Davies, Joanne; Berman, Rachael;
Ziegler, Jay; Salpeter, Alan <asalpeter@llgm.com>
Sent: Fri Jul 20 12:40:47 2007
Subject: Ameriquest:  Deposition Schedule

Bernie and Tom:  Please provide us with a schedule for 30(b)(6) witnesses who will be made
available during the month of August.  In light of the delay associated with cancellation
of depositions for the week of July 23, unless we receive a witness schedule for August by
Tuesday July 24, we request an immediate discovery conference pursuant to Rule 37. In the
event that such conference is necessary, Shennan Kavanagh will coordinate that conference
for the Plaintiffs.

Bernie:  We also request a conference pursuant to Rule 37 concerning your clients'
objections to the deposition of Dawn Arnall, which we view as meritless.   Please contact
Rachel Geman at Lieff Cabraser who will coordinate that conference for the Plaintiffs'
side.

Thank you for your time and attention to these matters.

Very truly yours,


--
Gary Klein
Roddy, Klein & Ryan
727 Atlantic Ave.,  2nd Floor
Boston, MA  02111

klein@roddykleinryan.com
(617) 357-5500 ext. 15 (phone)
(617) 357-5030 (fax)