**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-CV-07097 |
| THIS DOCUMENT RELATES TO: **[Docket #859]** | (Centralized before The Honorable Marvin E. Aspen) |
| AMERIQUEST MORTGAGE COMPANY, a Delaware corporation, | |
| Third –Party Plaintiff, | |
| v. | |
| TRANS UNION LLC, *et al.* | |
| Third-Party Defendants | |

**MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANTS**
**EQUIFAX'S MOTION TO DISMISS**

Bradley J. Miller, Esq. (GA Bar No. 506213)
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: 404-815-6500
Facsimile: 404-541-3308

Robert E. Shapiro, Esq. (ARDC #03125180)
Stephanie M. Zimdahl, Esq. (ARDC # 6287755)
Barack Ferrazzano Kirschbaum
  & Nagelberg LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Telephone: 312-984-3118
Facsimile: 312-984-3150

Attorneys for Third Party Defendants Equifax Information Services LLC,
successor in interest to Equifax Credit Information Services, Inc.,
and Equifax Marketing Services

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iiii

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

LEGAL ARGUMENT AND CITATIONS OF AUTHORITY ......................... 6

I.  Standard On Motion To Dismiss ........................................................ 6

II.  Ameriquest Fails To Set Forth A Breach Of Contract Claim
(Fourth and Fifth  Claims) ................................................................... 6

A.  Equifax Had No Duty To Ensure The Letters Compliance With
The FCRA Under The Contract. ................................................ 7

B.  Any Oral Agreement Or Representation Is Subject To The
Merger Clause ........................................................................... 8

C.  No Modification Of The Contract .............................................. 8

III.  Ameriquest's Claims Are Barred By The Exculpatory Clause In
The Contract. ........................................................................................ 9

IV.  Ameriquest Is Not Entitled to Indemnity Or Contribution Under
the Contract Or By Statute (Fifth and Sixth Claims) ......................... 10

V.  Ameriquest's Negligent Misrepresentation and Negligence Claims
are  Barred by the Merger Clause and Fail as a Matter of Law
(Seventh and Eight Claims) ................................................................. 12

A.  Applicable Law .......................................................................... 13

B.  Georgia Law Precludes Tort Claims for Breach of Contract ..... 13

C.  Ameriquest Has Not Adequately Plead Its Negligent
Misrepresentation Claim ............................................................ 15

VI.  Ameriquest Cannot Rescind the Contract (Ninth Claim) ................... 15

A.  The Attempted Rescission Is Untimely ...................................... 15

B.  Equifax Is Not In Breach, Much Less Material Breach, Of The
Contract ...................................................................................... 16

C.  Ameriquest Can Be Compensated In Damages .......................... 17

US2000 10190810.1

D.      The Parties Cannot Be Restored To Their Previous Positions ..................17

**CONCLUSION** ......................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Aktieselskabet AF 21 v. Fame Jeans, Inc.*, Case No. 06-585, 2007 WL
    1655877 (D. DC June 7, 2007) ......................................................... 15

*Barton v. Peterson*, 733 F. Supp. 1482 (N.D. Ga. 1990) ................................ 10

*Bell Atl. Corp v. Twombly*, 127 S.Ct. 1955 (2007) ..................................... 15

*Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103 (11th Cir. 1982)........... 6

*Breckinridge Creste Apartments, Ltd. v. Citicorp Mtg., Inc.*, 826 F. Supp. 460
    (N.D. Ga. 1993) ......................................................................... 7

*Bulmer v. Southern Bell Telephone & Telegraph Co.*, 170 Ga. App. 659, 317
    S.E.2d 893 (1984) ...................................................................... 14

*CCE Federal Credit Union v. Chesser*, 150 Ga. App. 328, 258 S.E.2d 2 ............ 7

*Clark v. General Motors Acceptance Corp.*, 185 Ga. App. 130, 363 S.E.2d
    813 (1987) ................................................................................ 9

*Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 427 S.E.2d 789
    (1993) ...................................................................................... 16

*Douglas v. McNabb Realty Co.*, 52 Ga. App. 550, 52 S.E.2d 550 (1949).......... 7

*East River Steamship Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 106
    S. Ct. 2295 (1986) ..................................................................... 13

*Emory University v. Porubiansky*, 248 Ga. 391, 282 S.E.2d 903 (1981) ........... 10

*Gerdes v. Russell Rowe Communications, Inc.*, 232 Ga. App. 534, 502 S.E.2d
    352 (1998).................................................................................. 9

*Imaging Systems Int'l, Inc. v. Magnetic Resonance Plus, Inc.,* 227 Ga. App.
    641, 490 S.E.2d 124 (1997) ......................................................... 10

*In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328 (N.D. Ill. 2002) ...... 1, 3

*Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970) .............................. 13

*Jones v. Gaskins*, 248 Ga. 510, 284 S.E.2d 398 (1981)................................. 16

*Kay v. First Continental Trading, Inc.*, 966 F. Supp. 753 (N.D. Ill. 1997)
    (Shadur, J.)........................................................................... 11, 12

*King v. Gibbs*, 876 F.2d 1275 (7th Cir. 1989) .................................................................. 12

*Klaxon Co. v. Stentor*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ................................................................................................................... 13

*Kudlicki v. MDMA, Inc.*, No. 05 C 2589, 2006 WL 1308617 (N.D. Ill. May 10, 2006) (St. Eve, J.) ......................................................................... 11, 12

*Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186 (7th Cir. 1989) ..................................... 12

*Mayor & City of Douglasville v. Hildebrand*, 175 Ga. App. 434, 333 S.E.2d 674 (1985) ........................................................................................... 16, 17

*Monroe v. Board of Regents*, 268 Ga. App. 659, 602 S.E.2d 219 (2004) ......................... 13

*Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) .................... 6

*Papasan v. Allain*, 478 U.S. 265 (1986) ............................................................................ 15

*Parr v. Woodmen of the World Life Insurance Co*, 791 F.2d 888 (11th Cir. 1986) ................................................................................................................. 6

*Piedmont Arbors Condo. Assoc., Inc. v. BPI Constr. Co.*, 197 Ga. App. 141, 397 S.E.2d 611 (1990) ......................................................................... 10

*Reeves v. US*, 809 F. Supp. 92 (N.D. Ga. 1992) ............................................................... 6

*Rome Healthcare, LLC v. Peach Healthcare System, Inc.*, 264 Ga. App. 265, 590 S.E.2d 235 (2004) .................................................................... 8

*Rucker v. Wynn*, 212 Ga. App. 69, 441 S.E.2d 417 (1994) .............................................. 9

*Smiley v. S & J Investments, Inc.*, 260 Ga. App. 493, 580 S.E.2d 283 (2003) ................... 14

*Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) ..................................................................... 11

*Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 518 S.E.2d 154 (1999) ............... 16

*Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244 (7th Cir. 1994) ........................................... 6

## Statutes

15 U.S.C. § 1681b .......................................................................................................... 1

O.C.G.A. § 13-4-62 ....................................................................................................... 17

**Other Authorities**

Restatement (Second) of Conflict of Laws, § 145 ............................................................................. 13

COME NOW defendants Equifax Information Services LLC ("EIS"), successor in interest to Equifax Credit Information Services, Inc. and Equifax Credit Marketing Services ("ECMS"), a division of EIS (collectively "Equifax") through counsel and in support of its motion to dismiss state as follows:

## **INTRODUCTION**

The federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b, regulates a consumer reporting agency's release of consumer reports as well as a potential user's requests for those reports from the agency. In short, the FCRA allows Equifax and other CRAs to provide consumer reports only when they have "reason to believe" that the requesting party, such as Ameriquest, has at least one of several enumerated "permissible purposes" for obtaining the report. Here, the only permissible purpose Ameriquest had for requesting target marketing lists[1] from Equifax was its promise that it would issue "firm offers of credit" to the consumers selected from the lists. "Firm offer of credit" is a defined term under the FCRA. Here, plaintiffs claim that Ameriquest obtained consumer reports from Equifax but that the Ameriquest letters sent to those consumers did not constitute "firm offers of credit" under the FCRA; thus, Ameriquest allegedly improperly obtained the credit reports without a permissible purpose.

Ameriquest's Third-Party Complaint against Equifax and the credit reporting agency defendants stems from the Non-Borrower Putative Class Action Complaint ("Non-Borrower Complaint"). Ameriquest alleges that it entered into a contract with Equifax to provide it with prescreened consumer lists (the "Consumer Lists") for use in Ameriquest's direct-mail marketing program. The Direct Mail Program included the use of firm offers of credit letters (the

---

[1] Even a list of names and addresses is a "consumer report" under these circumstances are governed by the FCRA. *See e.g. In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328 (N.D. Ill. 2002).

"Letters").  Ameriquest alleges that Equifax was required to perform all of its duties under the Contract in compliance with the Fair Credit Reporting Act ("FCRA").[2]  Ameriquest further contends that in preparing the Letters, it relied upon the experience and expertise of Equifax and that if its letters are found to be in violation of the FCRA, it was as a result of Equifax's conduct. Ameriquest attempts to assert claims of breach of contract, negligent misrepresentation, negligence, equitable and implied indemnity, contribution and rescission.  As more fully set forth below, Ameriquest's claims fail as a matter of law for the following reasons:  (1) Equifax did not breach the Contract since Equifax had no duty, under the Contract, to provide Ameriquest with advice regarding the legality of the Letters or to ensure their compliance with the FCRA;  (2) Ameriquest has expressly released Equifax from any damages suffered as a result of the information provided to Ameriquest under the Contract and entered a covenant not to sue;  (3) there is no provision for contribution or indemnification under the Contract and the FCRA does not provide for indemnity or contribution; (4)  tort claims arising from breach of contract are not permitted; and (5)  Ameriquest failed to timely seek rescission and cannot show that rescission is available.

## STATEMENT OF FACTS

Equifax Credit Marketing Services ("ECMS") is a division of Equifax Information Services LLC ("EIS"), the successor in interest to Equifax Credit Information Services, Inc.  EIS is a consumer reporting agency as defined under the § 1681a(f) of the FCRA.  In addition to selling consumer credit reports to its lending customers, Equifax has a division --  ECMS -- that sells consumer target marketing lists to third parties, which include companies using mail solicitation or telemarketing to sell or advertise goods and services directly to consumers by mail

---

[2] 15 U.S.C. §§ 1681 *et seq.*

or telephone.[3]  Consumer target marketing lists consist of names and addresses of consumers that satisfy certain pre-selected criteria chosen by the customer to enable them to make firm offers of credit.  The pre-selected criteria may include whether the consumer has an open bank card or department store card.[4]  As a consumer reporting agency providing consumer reports, Equifax must have "reason to believe" that that customer requesting the reports has a permissible purpose for doing so.[5]

Equifax entered into a written contract with Ameriquest Mortgage Company ("Ameriquest") and Direct Mail Credit Data, Inc. ("DMCD")[6] on December 15, 2000. [7] Pursuant to the Contract, Ameriquest contracted to receive "Information Services" based on Equifax information.[8]  The "Information Services" included the prescreened consumer lists Ameriquest complains of in this action.[9]   The Information Services were provided to Ameriquest by Equifax's subcontractor, CPPM, based on Equifax credit information.[10] Ameriquest used the Consumer Lists provided by Equifax "so that Ameriquest could have the Letters made and sent, and thereby make 'firm offers of credit' that contained proper 'clear and conspicuous' disclosures to consumers."[11]

Exhibit A to the Contract clearly identifies the Information Services to be provided pursuant to the Contract.  Pursuant to the Contract, Ameriquest was "authorized to obtain Prescreening Services only in connection with the provision of firm offers to **extend credit** to

---

[3] *See e.g. In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328 (N.D. Ill. 2002).
[4] *Id.*
[5] 15 U.S.C. § 1681b(a)(3).
[6] Direct Mail Credit Data was acquired by ChoicePoint Precision Marketing Inc. ("CPPM") and the contract was assigned to CPPM.
[7] *See* December 15, 2000 Subscriber Agreement for Equifax Off-Line Services (the "Contract") attached hereto as Exhibit 1.
[8] *Id.* at § I, ¶ 3.
[9] *Compare* Third-Party Complaint, ¶ 8 to Exhibit A to the Contract at § I.
[10] *See* Contract at, § I, ¶ 3.
[11] Third-Party Complaint, ¶ 26, 31.

consumers."[12]  "Prescreening Services" is defined under the Contract as "a type of Information Service in which a list of consumer names provided by [Ameriquest] will be processed against an Equifax database ('List Edit'), or a list or lists may be generated from the Equifax consumer credit information database ('Direct Extract')."[13]  In order to receive the Prescreening Services, Ameriquest certified that

> it has a present intention to grant credit or provide insurance to all  individuals on the final list of names meeting its selection criteria ("Prescreened List"), as returned to [Ameriquest] by [CPPM] for each prescreen program and that [Ameriquest] will make a Firm Offer of Credit or Insurance (as the term "firm offer of credit or insurance" is defined in the FCRA) to each individual identified on the Prescreened List . . ..[14]

Ameriquest further certified that it would "comply with the provisions of the FCRA."[15]

The parties **did not** contract for either Equifax or CPPM to prepare the firm offer letters or to advise Ameriquest whether the firm offer letters complied with the FCRA.[16]  Ameriquest does not allege that these services were contracted.  Rather, the terms of the contract explicitly state that Ameriquest "will be responsible for the preparation of firm offer materials."[17]

In addition to the explicit duties set forth in the Contract, the Contract provides the following disclaimer, release and limitation of liability language:

> 1.      [Ameriquest], [CPPM], and Equifax recognize that every business decision represents an assumption of risk and that none of the parties, in furnishing Subscriber Information or the Information Services to any other party, underwrites or assumes any other party's risk in any manner.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, OR ANY AMENDMENT, NO PARTY GUARANTEES OR WARRANTS THE CORRECTNESS, COMPLETENESS, CURRENTNESS, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF

---

[12] *Id.* at p. 7, § I.
[13] "Exhibit A" to Contract.
[14] Contract at p. 7, § I(A).
[15] *Id.* at § I, ¶ 6.
[16] "Exhibit A" to the Contract sets forth the "Information Services" to be provided under the Contract, none of which include drafting, preparing the Letters or ensuring their compliance with the FCRA.
[17] *Id.* at p. 8, § I(G).

THE SUBSCRIBER INFORMATION OR INFORMATION SERVICES PROVIDED HEREUNDER. NO PARTY, NOR ANY OF THEIR OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, CONTRACTORS, LICENSORS, AFFILIATED COMPANIES OR, IN THE CASE OF EQUIFAX, CONTRACTUALLY AFFILIATED CREDIT BUREAUS, WILL BE LIABLE TO ANY OTHER PARTY FOR ANY LOSS OR INJURY ARISING OUT OF, OR CAUSED IN WHOLE OR IN PARTY BY, THEIR ACTS OR OMISSIONS, INCLUDING ANY NEGLIGENCE, IN PROCURING, COMPILING, COLLECTING, INTERPRETING, PROCESSING, REPORTING OR TRANSMITTING ANY SUBSCRIBER INFORMATION, OR THE INFORMATION SERVICES.

2.      NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, INCLUDING ANY AND ALL FUTURE AMENDMENTS, NO PARTY, NOR ANY OF THEIR OFFICERS, DIRECTORS, EMPLOYEES, LICENSORS, AFFILIATED COMPANIES, INDEPENDENT CONTRACTORS, AGENTS OR, IN THE CASE OF EQUIFAX, CONTRACTUALLY AFFILIATED CREDIT BUREAUS, WILL BE RESPONSIBLE FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY OR SPECIAL DAMAGES, INCLUDING LOST PROFITS, SUFFERED OR INCURRED BY ANY OTHER PARTY HERETO ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.

3.      [AMERIQUEST] RELEASES EQUIFAX, [CPPM], AND THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, CONTRACTORS, LICENSORS, AFFILIATED COMPANIES AND, IN THE CASE OF EQUIFAX, CONTRACTUALLY AFFILIATED CREDIT BUREAUS, FROM ANY LIABILITY IN CONNECTION WITH THE INFORMATION SERVICES AND FROM ANY LOSS, DAMAGES, EXPENSES, COST OR OBLIGATIONS OF ANY KIND AND NATURE WHATSOEVER SUFFERED BY [AMERIQUEST] RESULTING DIRECTLY OR INDIRECTLY FROM THE ACCURACY OR INVALIDITY OF ANY INFORMATION SERVICE. [AMERIQUEST] <u>COVENANTS NOT TO SUE OR MAINTAIN ANY CLAIM</u>, CAUSE OF ACTION, DEMAND, CROSS ACTION, COUNTERCLAIM, THIRD PARTY ACTION OR OTHER FORM OF PLEADING AGAINST EQUIFAX, [CPPM] OR THEIR RESPECTIVE OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, CONTRACTORS, LICENSORS, AFFILIATED COMPANIES AND, IN THE CASE OF EQUIFAX, CONTRACTUALLY AFFILIATED CREDIT BUREAUS, FOR DAMAGE OR LOSS OF ANY KIND <u>ARISING OUT OF OR IN CONNECTION WITH THE INACCURACY OR INVALIDITY OR ALLEGED INACCURACY OR INVALIDITY OF ANY INFORMATION SERVICES PROVIDED HEREUNDER</u>.[18] (emphasis added).

---

[18] *Id.* at p. 3-4.

## LEGAL ARGUMENT AND CITATIONS OF AUTHORITY

### I.    Standard On Motion To Dismiss

In considering a Rule 12(b)(6) motion, the Court accepts the facts as pleaded in the Complaint and construes them in the light most favorable to Plaintiff.[19]  If "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, the defendants can succeed with their motion."[20]  A motion to dismiss may be granted, as a matter of law, if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.[21]  Moreover, it is well settled in this Circuit that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.  Such documents may be considered by a district court in ruling on the motion to dismiss."[22]

### II.   Ameriquest Fails To Set Forth A Breach Of Contract Claim (Fourth and Fifth Claims).

Ameriquest alleges that Equifax breached the Contract if the Letters are determined to be in violation of the FCRA.[23]  Moreover, Ameriquest alleges that Equifax "was required to perform all of its duties under the contract with Ameriquest in compliance with all applicable laws, including FCRA."[24]  Furthermore, Ameriquest alleges that it "relied upon Equifax's expertise and experience in the direct-mail marketing field with respect to ensuring that the data, the computerized process/systems, and the Consumer Lists it provided were done in compliance

---

[19] *Parr v. Woodmen of the World Life Insurance Co,* 791 F.2d 888, 889-90 (11th Cir. 1986).
[20] *Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103, 104 (11th Cir. 1982).
[21] *Reeves v. US,* 809 F. Supp. 92, 93 (N.D. Ga. 1992)(citing *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).
[22] *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994).
[23] *See* Third-Party Complaint, Third and Fourth Claims.
[24] *Id. at ¶¶* 53, 60.

with the FCRA. Further, Ameriquest relied upon Equifax's expertise and review of the Letters to ensure its compliance with FCRA."[25]

      A.    <u>Equifax Had No Duty To Ensure The Letters Compliance With The FCRA Under The Contract</u>.

The Contract is governed by Georgia law.[26] The construction and interpretation of a written contract is a matter of law.[27] Under Georgia law, a "contract is breached by a party to whom it is bound by its provisions to perform some act toward its consummation and who, without legal excuse on his part and through no fault of the opposite party, declines to do so."[28] It is axiomatic that a breach cannot occur where there is no duty to perform as alleged.

The parties' duties are unambiguously set forth in the Contract. Neither Equifax nor CPPM has a duty to advise Ameriquest or ensure that their Letters are in compliance with the FCRA or any other state or federal law. Rather, the Contract expressly states that Ameriquest is "responsible for the preparation of firm offer materials." Ameriquest makes no allegation that the parties have a contract for Equifax to provide these "advisory" type services or assurances that the information provided by Equifax would be in compliance with the FCRA. Ameriquest merely alleges that it "relied upon" Equifax's experience and advice.[29] Indeed, pursuant to the Contract, Ameriquest agreed that it would "comply with the provisions of the FCRA" and any other state or federal law.[30] Thus, as there was no contractual duty upon Equifax to ensure the compliance of the Letters with the FCRA (or any other law) and accepting the facts as pleaded to

---

[25] *Id.*

[26] Contract at p. 5, § VII, ¶ 7.

[27] *Breckinridge Creste Apartments, Ltd. v. Citicorp Mtg., Inc.*, 826 F. Supp. 460, 464 (N.D. Ga. 1993).

[28] *Douglas v. McNabb Realty Co.*, 52 Ga. App. 550, 52 S.E.2d 550 (1949); *CCE Federal Credit Union v. Chesser*, 150 Ga. App. 328, 258 S.E.2d 2

[29] *See* Third-Party Complaint, ¶¶ 53, 60.

[30] Contract, p. 1, § I, ¶ 6.

be true, Ameriquest is unable to state a claim for breach of contract and this claim should be dismissed.

B.    Any Oral Agreement Or Representation Is Subject To The Merger Clause

Ameriquest alleges that it entered into binding oral contracts with Equifax.[31]  Further, Ameriquest alleges that it "relied upon Equifax's expertise and experience in the direct-mail marketing field with respect to ensuring that the data, the computerized process/systems, and the Consumer Lists it provided were done in compliance with the FCRA."[32]  Any oral agreement before the December 15, 2000 Contract, however, is subject to and terminated as a result of the "Entire Agreement" provision of the contract, which provides that "{a}ll prior understandings, proposals or representations dealing with the subject matter of this Agreement are terminated and cancelled entirely."[33]  The "purpose of merger clauses is to preclude any unilateral modifications of a written contract through evidence of pre-existing terms that were not incorporated into the written contract."[34]  "Where parties have reduced to writing a complete and certain agreement, the court will, in the absence of fraud, mistake, or accident, conclusively presume that the writing contains the entire agreement and parol evidence of prior or contemporaneous statements is inadmissible."[35]  Here, there are no allegations of fraud, mistake or accident.  Accordingly, any claim for breach of these "oral contracts" or representation are barred by the merger clause.

C.    No Modification Of The Contract

Presumably, Ameriquest will argue that it entered into oral agreements after December 2000 which are not subject to the merger clause.  Any amendment to the agreement, however,

---

[31] Third-Party Complaint, ¶ 26, 31.
[32] *Id.* at ¶¶ 53, 60.
[33] Exhibit 1 at p. 5, § VII, ¶ 5.
[34] *Rome Healthcare, LLC v. Peach Healthcare System, Inc.*, 264 Ga. App. 265, 271, 590 S.E.2d 235, 240 (2004).
[35] *Id.*

must be in writing and signed by an authorized representative of all parties to the contract.[36]

Contractual requirements that modifications to a contract be maintained in writing are routinely

enforced by Georgia courts.[37]   Ameriquest does not allege that parties entered into any written

modifications.  Accordingly, any claim that the parties entered into oral modifications is

precluded by the express terms of the written modification requirement in the Contract.

## III.    Ameriquest's Claims Are Barred By The Exculpatory Clause In The Contract.

Even assuming, *arguendo*, that Ameriquest has set forth a claim for breach of contract, its

claims are precluded by the exculpatory clause in the contract.[38]   The unambiguous terms of the

contract expressly release Equifax from any liability and prohibit Ameriquest from suing

Equifax.  In consideration for providing the Information Services, Ameriquest released Equifax

and ChoicePoint "from any loss, damages, … suffered by [Ameriquest] resulting directly or

indirectly from the accuracy or invalidity of any information service."[39]   Furthermore,

Ameriquest agreed to a covenant "not to sue or maintain any claim, cause of action, … third

party action … for damage or loss of any kind arising out of or in connection with the inaccuracy

or invalidity or alleged inaccuracy or invalidity of any Information Services provided" under the

contract.  Even assuming that Ameriquest alleges that the "Information Services" under the

Contract included ensuring that the Letters were in compliance with the FCRA, though

Ameriquest does not plead such, the exculpatory clause precludes any claim for liability from the

Information Services provided.

---

[36] *See* Contract at § VII, ¶ 5.
[37] *See Gerdes v. Russell Rowe Communications, Inc.*, 232 Ga. App. 534, 536, 502 S.E.2d 352, 354 (1998); *Rucker v. Wynn*, 212 Ga. App. 69, 71, 441 S.E.2d 417, 419-20 (1994); *Clark v. General Motors Acceptance Corp.*, 185 Ga. App. 130, 134, 363 S.E.2d 813, 817 (1987).
[38] *Id.* at p. 3, § V.
[39] *Id.* at § V, ¶ 3

It is well settled under Georgia law that parties who are capable of contracting "are entitled to full freedom to contract unless the contract violates public policy."[40] "A contract will not be voided as against public policy except where the court is free from doubt and injury to the public interest clearly appears."[41]

The exculpatory provision here does not contravene public policy. The circumstances here involve a straightforward service agreement in which Equifax and CPPM agreed to provide Ameriquest with Information Services to be used by Ameriquest in their prescreening efforts in exchange for payment by Ameriquest. The exculpatory language is unambiguous and displayed prominently, in all capital letter text, in the contract. The mere fact that an exculpatory provision would eliminate most or all of a plaintiff's claims and have the effect of waiving numerous and substantial rights is not sufficient to support a finding that the contract violates public policy.[42] If Ameriquest argues that Equifax had a duty under the Contract to ensure that the Letters were in compliance with the FCRA, the same Contract expressly releases Equifax from any liability for doing so. Accordingly, Ameriquest's claims fail as a matter of law and should be dismissed.

IV.    **Ameriquest Is Not Entitled to Indemnity Or Contribution Under the Contract Or By Statute (Fifth and Sixth Claims)**

Ameriquest seeks "equitable" indemnity or contribution from the defendants if it is found in violation of the FCRA in the underlying Borrower Complaint. Ameriquest does not allege that the Contract provides for indemnity or contribution. Indeed, no such provision is contained

---

[40] *Barton v. Peterson*, 733 F. Supp. 1482, 1488 (N.D. Ga. 1990) (citing *Emory University v. Porubiansky*, 248 Ga. 391, 282 S.E.2d 903 (1981).

[41] *Id.; see also Imaging Systems Int'l, Inc. v. Magnetic Resonance Plus, Inc.,* 227 Ga. App. 641, 644, 490 S.E.2d 124, 127-28 (1997).

[42] *See Piedmont Arbors Condo. Assoc., Inc. v. BPI Constr. Co.*, 197 Ga. App. 141, 141-42, 397 S.E.2d 611, 612 (1990)

in the Contract.  Thus, Ameriquest must be seeking indemnity and contribution under either federal common law or statute, namely, the FCRA.

This issue was squarely addressed recently by Judge St. Eve in this Court in a case that is factually similar to the instant action.[43]  In *Kudlicki*, the plaintiff brought a claim against MDMA, Inc. for violation of the FCRA alleging, as the plaintiff in the Non-Borrower Complaint here, that MDMA did not have a permissible purpose for accessing her credit file because the pre-approved loan mailer was not a firm offer of credit letter in compliance with the FCRA. MDMA, in turn, brought a third-party claim against PMT Advertising, a company hired by MDMA to perform services in connection with preparing the firm offer letter that was part of the underlying suit.  MDMA alleged that if it was to have been found to be in violation of the FCRA, it was as a result of PMT's breach of contract and any resulting damages were as a result of PMT's breach.  In finding that  MDMA was not entitled to indemnification or contribution, Judge St. Eve turned to the statutory framework of the FCRA to determine whether there is a right to contribution under the FCRA.[44]  In its analysis, the court found that the FCRA does not provide for contribution.[45]

Ameriquest is not entitled to contribution under federal common law either.  In recognizing that the concept of federal common law is limited, the Supreme Court held:

> The Court  has recognized the need and authority in some limited areas to formulate what has come to be known as federal common law.  These instances are few and restricted, and fall into essentially two categories:  those in which a federal rule of decision is necessary to protect uniquely federal interests, and those in which Congress has given the courts the power to develop substantive law.[46]

---

[43] *Kudlicki v. MDMA, Inc.*, No. 05 C 2589, 2006 WL 1308617 (N.D. Ill. May 10, 2006) (St. Eve, J.), a copy is attached hereto as Exhibit 2.
[44] *Id.* at *3.
[45] *Id.* (citing *Kay v. First Continental Trading, Inc.*, 966 F. Supp. 753, 754 (N.D. Ill. 1997) (Shadur, J.)
[46] *Kudlicki*, 2006 WL 1308617 at *3 (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640-41, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981).

The purpose of the FCRA is to require that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of the [FCRA]."[47]  As the FCRA's purpose does not fall within either of the categories set forth in *Texas Industries*, "federal common law cannot be the basis for a cause of action for contribution under the FCRA."[48]  Accordingly, Ameriquest's claim for contribution fails as a matter of law and should be dismissed.

Similarly, Ameriquest's claim for indemnification fails as a matter of law.  The legal framework of *Texas Industries* is applied to indemnification as well.[49]  Accordingly, for the same reasons set forth above, Ameriquest's claim for indemnification fails as a matter of law and should be dismissed.

## V.     Ameriquest's Negligent Misrepresentation and Negligence Claims are Barred by the Merger Clause and Fail as a Matter of Law (Seventh and Eight Claims).

Ameriquest alleges that false representations were made with the intention of inducing Ameriquest into entering "various oral and written agreements" and that it reasonably relied upon the misrepresentations.[50]  As discussed, *infra,* any reliance upon representations made prior to the Contract are barred by the Contract's merger clause.   Moreover, these tort claims are based upon alleged contractual duties. In the absence of special circumstances, not present here, Georgia law does not allow tort claims for breach of contract.  Accordingly, Ameriquest's negligent misrepresentation and negligence claims should be dismissed.

---

[47] 15 U.S.C. § 1681(b); *see also Kudlicki*, 2006 WL 1308617 at *3.
[48] *Kudlicki*, 2006 WL 1308617 at *3 (quoting *Kay*, 966 F. Supp. at 755).
[49] *Kudlicki*, 2006 WL 1308617 at *3 (citing *King v. Gibbs*, 876 F.2d 1275, 1279 (7th Cir. 1989); *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1191 (7th Cir. 1989))
[50] Third-Party Complaint, ¶¶ 78-80.

A.    Applicable Law

In a diversity action, a federal court must apply the conflicts of law rules of the forum state.[51]  Illinois has adopted the Restatement (Second) of Conflict of Laws for deciding choice of law questions and its most significant relationship test.[52]  In applying the significant relationship test, the following is to be taken into consideration: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship if between the parties is centered."[53]  Ameriquest's claims against Equifax stem from the duties allegedly set forth in the contract.  Equifax and CPPM are Georgia corporations.[54]  The parties agreed that Georgia law would govern the Contract.[55]  Thus any claim arising from breach of any duty from either the written contract or any alleged oral contract or misrepresentation would have occurred in Georgia.  Thus, Georgia law applies to Ameriquest's tort claims.

B.    Georgia Law Precludes Tort Claims for Breach of Contract

To the extent that Ameriquest alleges that the breach of contract resulted in the tort of negligent misrepresentation, that claim fails as a matter of law.  A breach of contract cannot constitute a tort unless a special or confidential relationship exist between the parties.[56]  Under Georgia law a relationship is deemed confidential,

> whether arising from nature, created by law, or resulting from contracts, where
> one party is so situated as to exercise a controlling influence over the will,

---

[51] *Klaxon Co. v. Stentor*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941).

[52] *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970).

[53] Restatement (Second) of Conflict of Laws, § 145.

[54] Third-Party Complaint, ¶¶ 2-3.

[55] Contract, § VII, ¶ 7.

[56] *Monroe v. Board of Regents*, 268 Ga. App. 659, 661, 602 S.E.2d 219, 222 (2004).  *See also East River Steamship Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 106 S. Ct. 2295 (1986) (where the loss suffered is purely economic

conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.[57]

Here, no such confidential relationship exists. The Contract between the parties was an arms-length deal to provide the names of consumers to Ameriquest for their direct mail marketing campaign. Ameriquest's claims for negligent misrepresentation and negligence are, in essence, breach of warranty or breach of contract claims. Thus, any breach of these duties cannot constitute a tort and fail as a matter of law.

The tort of negligent misrepresentation "generally applies to the professional defendants only, who provide information that is false through failure to exercise reasonable care or competence in obtaining information that is relied upon by a third party and such reliance is foreseeable."[58] Georgia courts have recognized contractual relationships between bailor and bailee, attorney and client, carrier and passenger, master and servant.[59] This relationship between the parties here is not one that would fall into the exception. Thus, Ameriquest's negligent misrepresentation and negligence claims are nothing more than claims for breach of contract and are to be remedied, if at all, under the contract. Even if Ameriquest alleged that the torts arose as a consequence of the duties performed under the contract, which they have not alleged here, those claims are subject to the exculpatory clause in the Contract.[60] Accordingly, these claims fail as a matter of law and should be dismissed.

---

[57] O.C.G.A. § 23-2-58.
[58] *Smiley v. S & J Investments, Inc.*, 260 Ga. App. 493, 496, 580 S.E.2d 283, 287 (2003).
[59] *Bulmer v. Southern Bell Telephone & Telegraph Co.*, 170 Ga. App. 659, 660, 317 S.E.2d 893, 895 (1984).
[60] See Contract at § V, ¶ 2 (No party will be responsible for "CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY OR SPECIAL DAMAGES, INCLUDING LOST PROFITS, … ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT.")

C.      Ameriquest Has Not Adequately Plead Its Negligent Misrepresentation Claim

Ameriquest has not properly plead its negligent misrepresentation claim.  While Fed. R.

Civ. P. 8 provides for notice pleading, the Supreme Court recently addressed the pleading

requirements in *Bell Atlantic Corp. v. Twombly*.[61]  In agreeing with the district court's dismissal

of a claim under the Sherman Act, the *Twombly* Court held that "a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment']' to relief requires more than … a formulaic recitation

of the elements of a cause of action."[62]  Here, Ameriquest has merely identified the elements of a

negligent misrepresentation claim without clarifying the factual allegations on which its claim

rests.[63]  Accordingly, Ameriquest's negligent misrepresentation claim should be dismissed.

**VI.    Ameriquest Cannot Rescind the Contract (Ninth Claim)**

Because the exculpatory language of the contract bars its claims against Equifax,

Ameriquest wants to rescind it.  Rescission is impermissible here for at least four reasons:  (1)

the attempted rescission is untimely, (2) Equifax has substantially performed under the Contract

and is not in breach, material or otherwise, (3) even if Equifax had materially breached the

Contract, Ameriquest can be fully compensated with monetary damages, and (4) the status quo as

it existed on December 15, 2000, cannot be restored.

A.      The Attempted Rescission Is Untimely

"As a general rule, rescission must occur prior to, and as a condition precedent to, the

bringing of an action; it is too late to claim rescission by asserting it for the first time in the

---

[61] *See Bell Atl. Corp v. Twombly*, 127 S.Ct. 1955 (2007).

[62] *Id.*, 127 S.Ct. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[63] *Id.  See also Aktieselskabet AF 21 v. Fame Jeans, Inc.*, Case No. 06-585, 2007 WL 1655877 (D. DC
June 7, 2007) (misrepresentation claim not sufficiently plead)

pleadings."[64]  Ameriquest's effort to rescind the Contract comes too late.  Ameriquest failed to

seek rescission prior to filing this Third-Party Complaint.  Moreover, Ameriquest failed to tender

to Equifax the Information Services it received under the Contract.  Thus, based on the

untimeliness ground alone, the rescission claim fails as a matter of law.

> B.     Equifax Is Not In Breach, Much Less Material Breach, Of The Contract

Under Georgia law, "only material nonperformance or breach " will justify rescission.[65]

The breach must be of a matter so substantial and fundamental as to defeat the object of the

contract.[66]  "The act failed must go to the root of the contract."[67]  Equifax substantially

performed its obligations under the Contract by providing the Consumer Lists to Ameriquest,

through CPPM.  While Ameriquest does not allege that Equifax had a contractual duty to prepare

the Letters or that it had a contractual duty to ensure that the Letters complied with the FCRA,

preparing the letters and/or offering advice was not the object of the Contract.  As defined in the

Contract, the purpose is to provide Prescreening  Services which are "a type of Information

Service in which a list of consumer names provided by [Ameriquest] will be processed against an

Equifax database … only [to be used by Ameriquest] in connection with the provision of firm

offers to **extend credit** to consumers."[68]  Ameriquest does not allege that Equifax has failed to

provide the lists of consumer names – the stated object of the Contract.  Thus, any breach by

Equifax was incidental to the contract.  Accordingly, Ameriquest is unable to show that Equifax

breached the Contract, much less materially breached the contract.  Ameriquest's claim for

rescission should be dismissed.

---

[64] *Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 361, 518 S.E.2d 154, 160 (1999); *see also Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 298, 427 S.E.2d 789, 791 (1993) ("Rescission must occur prior to and as a condition precedent to bringing of the action") (internal quotations omitted).
[65] *Jones v. Gaskins*, 248 Ga. 510, 511, 284 S.E.2d 398, 400 (1981).
[66] *Mayor & City of Douglasville v. Hildebrand*, 175 Ga. App. 434, 436, 333 S.E.2d 674, 676 (1985).
[67] *Id.*
[68] See Exhibit A to Contract, at § I.

C.     Ameriquest Can Be Compensated In Damages

It is well-established that "[a] breach which is incidental and subordinate to the main purpose of the contract, and which may be compensated in damages, does not warrant a rescission or termination."[69]  The relief sought by Ameriquest are any statutory and/or punitive damages awarded to the non-borrower plaintiffs, should Ameriquest prevail in its claims against Equifax.  Thus, Ameriquest may be compensated in damages and rescission is not warranted.

D.     The Parties Cannot Be Restored To Their Previous Positions

Rescission is an available remedy "only when both parties can be restored to the condition in which they were before the contract was made."[70]  Here, restoring the status quo as existed in December 2000, prior to the Contract, is not feasible.  The consumer lists have already been generated by Equifax and provided to and used by Ameriquest.  Returning the prescreened consumer list at this point would not restore the status quo.  Accordingly, rescission is unavailable and this claim should be dismissed.

## CONCLUSION

For the foregoing reasons, defendants Equifax respectfully request that Ameriquest's Third-Party Complaint be dismissed and that Equifax be entitled to such further relief as the Court deems just and proper.

---

[69] *Hildebrand*, 175 Ga. App. At 436, 333 S.E.2d at 676
[70] O.C.G.A. § 13-4-62 .

Dated: August 31, 2007.

Respectfully submitted,

/s/ Bradley J. Miller
Bradley J. Miller, Esq. (GA Bar No. 506213)
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: 404-815-6500
Facsimile: 404-541-3308

Robert E. Shapiro, Esq. (ARDC #03125180)
Stephanie M. Zimdahl, Esq. (ARDC # 6287755)
Barack Ferrazzano Kirschbaum
    & Nagelberg LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Telephone: 312-984-3118
Facsimile: 312-984-3150

Attorneys for Third Party Defendants Equifax
Information Services LLC, successor in interest to
Equifax Credit Information Services, Inc., and
Equifax Marketing Services

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record in case No. 05-07097.

/s/ Bradley J. Miller