Westlaw

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2006 WL 1308617 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Kudlicki v. MDMA, Inc.
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
Lois Ann KUDLICKI, Plaintiff,
v.
MDMA, INC., d/b/a Evanston Toyota, Defendant.
MDMA, Inc., d/b/a Evanston Toyota, Third-Party Plaintiff,
v.
Prime Market Targeting, Inc., a/k/a PMT Advertising, and Greg Suaza, d/b/a Avalon Marketing, Third-Party Defendant.
No. 05 C 2589.

May 10, 2006.

Daniel A. Edelman, Cathleen M. Combs, Derek B. Rieman, James O. Latturner, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Plaintiff.
John Joseph Bullaro, Jr., Bullaro & Carton, Chartered, Chicago, IL, for Defendant.
Harvey A. Paulsen, Carrie Pramuk-Yolk, Jon P. Malartsik, Kenneth J. Malec, Paulsen, Malec & Malartsik, Ltd., Wheaton, IL, for Third-Party Defendant.
Bryan Eliot Curry, Bullaro & Carton, Chartered, Chicago, IL, for Defendant/Third-Party Plaintiff.

### MEMORANDUM OPINION AND ORDER
AMY J. ST. EVE, District Court Judge.
*1 Before the Court is Third-Party Defendant Prime Market Targeting, Inc., a/k/a PMT Advertising's ("PMT") Motion to Dismiss Counts I, IV, V, and VI of MDMA, Inc., d/b/a Evanston Toyota's ("MDMA") First Amended Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the Court grants in part and denies in part PMT's motion.

### LEGAL STANDARD
The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the factual sufficiency. *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 675-76 (7th Cir.2001); *see also Cler v. Illinois Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir.2005) (motion to dismiss challenges complaint's sufficiency). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Mortgage, Inc.,* 398 F.3d 930, 933 (7th Cir.2005) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers,* 398 F.3d at 333.

### BACKGROUND
In the underlying putative class action Complaint, Plaintiff Lois Ann Kudlicki alleges that MDMA violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by sending her a "pre-approved loan" mailer after obtaining her consumer report without permission or a permissible purpose as required under the FCRA. *See Cole v. U.S. Capital Inc.,* 389 F.3d 719, 725 (7th Cir.2004). In turn, MDMA brought the present First Amended Third-Party Complaint seeking indemnification and contribution from PMT for damages that may be awarded to Kudlicki if MDMA is found to have wilfully violated the FCRA. MDMA also alleges a common law claim of breach of contract against PMT.

### ANALYSIS
I. Breach of Contract Against PMT-Count I

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 2

Not Reported in F.Supp.2d                                                                      Page 2

Not Reported in F.Supp.2d, 2006 WL 1308617 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

To prevail on a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract, (2) performance under the terms of the contract, (3) that defendant breached the contract, and (4) that plaintiff suffered an injury as a result of defendant's breach. *Burrell v. City of Mattoon,* 378 F.3d 642, 651 (7th Cir.2004); *Zirp-Burnham, LLC v. E. Terrell Assoc., Inc.,* 356 Ill.App.3d 590, 600, 292 Ill.Dec. 289, 826 N.E.2d 430 (Ill.App.Ct.2005).

In the First Amended Third-Party Complaint, MDMA alleges that it and PMT entered into a valid and enforceable oral contract [FN1] under which PMT agreed to perform certain services in connection with preparing, addressing, and mailing the advertising flyer that is the subject of the Kudlicki lawsuit. (R. 55-1, First Am. Third-Party Compl. ¶ 28.) MDMA further alleges that it fully performed its duties under the contract by promptly paying PMT for its services. *(Id.* ¶ 29.) Also, MDMA alleges that if it is determined that there was a willful violation of the FCRA, PMT's actions would constitute a breach of its contract with MDMA. *(Id.* ¶ 3 8.) Last, MDMA states that if it is assessed damages as a result of the willful violation, such damages are a result of PMT's breach. *(Id.* ¶ 39.)

> FN1. PMT makes a cursory argument in a footnote concerning the Statute of Frauds. Because PMT has not developed this argument, it has waived its Statute of Frauds defense for purposes of this Motion to Dismiss. *See Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir.2005) ("Perfunctory or undeveloped arguments are waived.").

*2 Based on these allegations, MDMA has properly plead a breach of contract claim. *See* Fed.R.Civ.P. 8(a)(2) (complaint need only state "short and plain statement of the claim showing that the pleader is entitled to relief"). PMT, however, contends that any damages that MDMA seeks under its breach of contract theory are actually claims for indemnity or contribution. PMT's argument in support of this contention is not only buried in a footnote, but is also undeveloped and based on an Eastern District of California case that is not persuasive. Without a more developed argument, the Court will not dismiss MDMA's breach of contract claim for failure to state a claim upon which relief can be granted. *See Doherty v. City of Chicago,* 75 F.3d 318, 324 (7th Cir.1996) ("Given our adversary system of litigation, it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted). Therefore, the Court denies PMT's Motion to Dismiss Count I of the First Amended Third-Party Complaint.

II. Indemnification and Contribution Claims
Against PMT-Counts IV & V

A. Contribution

Next, PMT contends that federal law prohibits MDMA from seeking contribution from PMT. *See Donovan v. Robbins,* 752 F.2d 1170, 1179 (7th Cir.1985) ("Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law."). PMT bases its argument on *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), which involved the Sherman and Clayton Antitrust Acts. In short, Texas Industries manufactured and sold ready-mix concrete, and one of its customers filed an antitrust action against it alleging that Texas Industries and other unnamed concrete manufacturers had conspired to raise concrete prices. *Id.* at 632-33. The Supreme Court concluded that Texas Industries could not seek contribution from the other manufacturers because of the absence of contribution claims in the anti-trust statutory scheme. *Id.* at 639-40.

Indeed, "[c]ourts have become reluctant to recognize a right of contribution as a matter either of federal common law or of statute." *Anderson v. Griffin,* 397 F.3d 515, 523 (7th Cir.2005) (citing *Texas Industries* and other cases). As the Seventh

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 3
Not Reported in F.Supp.2d, 2006 WL 1308617 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Circuit explained:
The reluctance is understandable. A right of contribution is not required to achieve either the compensatory or the deterrent objectives of the law. The first point is obvious, the second only a little less so. One or more of the defendants may get off scot-free because the plaintiff has collected the entire judgment from another defendant; that is true. But not knowing beforehand whom the plaintiff will go against, each potential defendant has an expectation of being the unlucky one, and that expectation performs the deterrent function. In general, then, all that a right of contribution does is add to the costs of litigation, and so unless there is a compelling reason to suppose that the legislature would want such a right to be enforced ... it will not be.

*3 *Id.*

Thus, the Court first turns to whether there is right of contribution under the FCRA's statutory framework. In a similar case involving a claim for contribution in the context of the FCRA, a court in this district concluded that the FCRA "contains no express provision for contribution, in addition to which its structure really negates any inference to that effect." *Kay v. First Continental Trading, Inc.,* 966 F.Supp. 753, 754 (N.D.Ill.1997) (Shadur, J.) Indeed, there is no indication from the FCRA's statutory scheme that a right of contribution exists. *See Wiggins v. Philip Morris, Inc.,* 853 F.Supp. 470, 482 (D.D.C.1994) (discussing varying levels of obligations, culpability, sanctions, and remedies under the FCRA).

Next, the Court turns to whether federal common law recognizes a right to contribution under the circumstances. The *Texas Industries* Court discussed the limited concept of federal common law:
[T]he Court has recognized the need and authority in some limited areas to formulate what has come to be known as federal common law. These instances are few and restricted, and fall into essentially two categories: those in which a federal rule of decision is necessary to protect uniquely federal interests, and those in which Congress has given the courts the power to develop substantive law.

*Id.* at 640-41 (internal quotations and citations omitted); *see also Turner/Ozanne v. Hyman/Power,* 111 F.3d 1312, 1320 (7th Cir.1997) (Supreme Court recognizes few areas involving uniquely federal interests constituting federal common law).

Here, the purpose of the FCRA is to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Stergiopoulos v. First Midwest Bancorp, Inc.,* 427 F.3d 1043, 1045 (7th Cir.2005) (quoting 15 U.S .C. § 1681(b)). The FCRA's purpose does not fall within either category highlighted by *Texas Industries,* namely, instances " in which a federal rule of decision is necessary to protect uniquely federal interests, and those in which Congress has given the courts the power to develop substantive law," *see id.* at 640, and MDMA fails to make any argument in support of this contribution claim. As such, federal common law cannot be the basis for a cause of action for contribution under the FCRA. *See, e.g., Kay,* 966 F.Supp. at 755. Accordingly, the Court grants PMT's motion to dismiss MDMA's contribution claim as alleged in Count V of the First Amended Third-Party Complaint.

B. Indemnification

MDMA also alleges that it is entitled to implied indemnification if it is found to have wilfully violated the FCRA. PMT contends that the reasoning in *Texas Industries* also bars any claims for indemnification under the circumstances. *See Central Ill. Sav. & Loan Assoc. v. DuPage County Bank of Glendale Heights,* 622 F.Supp. 1493, 1498 (N.D.Ill.1985) (although *Texas Industries* addressed only claims for contribution, rationale equally bars claims for indemnification). Indeed, although the decision in *Texas Industries* only addressed the right of contribution, the legal framework established in these cases has been extended to indemnification. *See King v. Gibbs,* 876 F.2d 1275, 1279 (7th Cir.1989); *Levit v. Ingersoll Rand Fin.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d           Page 4
Not Reported in F.Supp.2d, 2006 WL 1308617 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

*Corp.,* 874 F.2d 1186, 1191 (7th Cir.1989); *see also Doherty v. Wireless Broad. Sys. of Sacramento, Inc.,* 151 F.3d 1129, 1131 (9th Cir.1998) ("A defendant held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law").

*4 MDMA's only argument in support of its indemnification claim relies on *Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967 (4th Cir.1987), for the proposition that MDMA is a "passive" wrongdoer, and thus is entitled to indemnification for the alleged FCRA violation. In *Yohay,* the defendant was a credit union that obtained the plaintiff's credit report via a credit union employee-the plaintiff's ex-wife-for a purpose not authorized by the FCRA. *Id.* at 969. The *Yohay* court determined that when the employee requested the credit report, she was doing so for her own personal benefit. *Id.* at 974. Therefore, the Fourth Circuit concluded that indemnification was permissible because the employee was the "primary" wrongdoer and the credit union was only a "passive" participant. *Id.* at 973-74. The *Yohay* court, however, did not address whether indemnification for a violation of the FCRA was governed by state or federal law. Instead, it simply applied state law that made the distinction between primary and secondary liability. *See White v. Johns-Manville Corp.,* 662 F.2d 243, 249 (4th Cir.1981) (citing *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368, 370 (1951)). Therefore, not only are the *Yohay* facts distinguishable from the case at bar, but the *Yohay* court applied state law, instead of federal law, to the underlying claim. *See Free v. Briody,* 732 F.2d 1331, 1336 (7th Cir.1984) ("right to contribution or indemnity must be found in the underlying statute or within the limited scope of the federal common law").

Meanwhile, MDMA does not point to any legal authority supporting the proposition that the statutory scheme of the FCRA, and not state law, provides for indemnification. In fact, several federal district courts have concluded that the FCRA ***does not*** allow for the right to indemnification because it is not found in the statutory framework of the FCRA. *See, e.g., Conner v. Howe,* 344 F.Supp.2d 1164, 1171 (S.D.Ind.2004); *McMillan v. Equifax Credit Info. Serv., Inc.,* 153 F.Supp.2d 129, 132 (D.Conn.2001); *Fields v. Experian Info. Solutions, Inc.,* No. 2:02CV271-M-A, 2003 WL 19600101, at *2 (N.D.Miss.2003); *Cf. Irwin v. Mascott,* 94 F.Supp .2d 1052, 1058 (N.D.Cal.2000) (no right to indemnification under FDCPA). The Court agrees with the reasoning of these courts.

Finally, for the same reasons as discussed above regarding contribution, the FCRA's purpose does not fall within either category highlighted by *Texas Industries.* Therefore, federal common law cannot be the basis for a cause of action for indemnification under the FCRA. *Cf. Kay,* 966 F.Supp. at 755. The Court thus grants PMT's motion to dismiss Count IV of the First Amended Third-Party Complaint.

III. Equitable Contribution and Subrogation-Count VI

A. Equitable Contribution

Last, based on Illinois law, MDMA brings claims against PMT based on equitable subrogation and contribution. Again, when a party seeks contribution concerning damages in relation to a violation of a federal statute, "the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law." *Donovan v. Robbins,* 752 F.2d 1170, 1179 (7th Cir.1985). Nonetheless, even if state law did apply, MDMA would still be barred from bringing an equitable contribution claim.

*5 In 1979, the Illinois legislature enacted the Contribution Act (the "Act'). *Doyle v. Rhodes,* 101 Ill.2d 1, 8, 461 N.E.2d 382, 385, 77 Ill.Dec. 759, 762 (1984). Under the Act, a party subject to liability in contract cannot make a valid claim for contribution. *See Hennepin Drainage & Levee Dist. v. W.H. Klingner,* 187 Ill.App.3d 710, 712, 543 N.E.2d 967, 969, 135 Ill.Dec. 399, 401 (1989). Nevertheless, Illinois also has a common law action

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for equitable contribution, which is not limited to parties subject to tort liability. *See Ruggio v. Ditkowsky,* 147 Ill.App.3d 638, 642, 498 N.E.2d 747, 750, 101 Ill.Dec. 423, 426 (Ill.App.Ct.1986). To succeed on an equitable contribution claim, the co-obligor must disclose that he has paid more than his proportion of the joint indebtedness as well as an amount in excess of its share. *Id.*

While it appears that most equitable contribution lawsuits arise in the context of co-insurers, some case law decided after the enactment of the Act involves common law contribution claims among parties that are neither joint tortfeasors nor co-insurers. These cases are limited, however, to instances where the parties, either by agreement or by statute, had a financial obligation to a third party. *See, e.g., Ruggio v. Ditkowsky,* 147 Ill.App.3d 638, 640, 498 N.E.2d 747, 749, 101 Ill.Dec. 423, 425 (Ill.App.Ct.1986) (plaintiff seeking contribution from defendants on two promissory notes each of them cosigned); *Tembrina v. Simos,* 208 Ill.App.3d 652, 655, 567 N.E.2d 536, 538, 153 Ill.Dec. 578, 580 (Ill.App.Ct.1991) (plaintiff seeking contribution for payment of mortgage where parties were each jointly and severally liable for payments); *Fletcher v. Marshall III,* 260 Ill.App.3d 673, 673, 632 N.E.2d 1105, 1106, 198 Ill.Dec. 494, 495 (Ill.App.Ct.1994) (plaintiff seeking contribution from defendant who co-signed an apartment lease with plaintiff); *Aardema v. Fitch,* 291 Ill.App.3d 917, 919, 684 N.E.2d 884, 886, 225 Ill.Dec. 893, 895 (Ill . App.Ct.1997) (plaintiff seeking contribution from fellow directors for their common corporate obligation to the IRS).

Here, MDMA does not allege that it and PMT have a joint obligation to Kudlicki if she succeeds in her lawsuit. Without an allegation of joint obligation, MDMA cannot state a claim for equitable contribution. The Court grants PMT's motion to dismiss MDMA's equitable contribution claim in Count VI without prejudice.

B. Equitable Subrogation

Finally, MDMA brings an equitable subrogation claim in Count VI of the First Amended Third-Party Complaint. PMT makes a cursory argument against equitable subrogation for the first time in its reply brief. Not only is PMT's argument incomplete, but arguments made for the first time in a reply brief are waived because the non-movant has had no opportunity to respond. *See Kelso v. Bayer Corp.,* 398 F.3d 640, 643 (7th Cir.2005). Therefore, the Court denies PMT's motion to dismiss MDMA's equitable subrogation claim.

CONCLUSION

*6 For these reasons, the Court grants in part and denies in part Prime Market Targeting's Motion to Dismiss.

N.D.Ill.,2006.
Kudlicki v. MDMA, Inc.
Not Reported in F.Supp.2d, 2006 WL 1308617 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.