IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. | ) | MDL No. 1715 |
| MORTGAGE LENDING PRACTICES | ) | Lead Case No. 05-cv-07097 |
| LITIGATION | ) | |
| | ) | Centralized before the |
| | ) | Honorable Marvin E. Aspen |
| | ) | |
| _____ | ) | |

**BORROWERS' MOTION TO SEVER PURSUANT TO FED.R.CIV.P. 21 OR,
ALTERNATIVELY, TO ORDER SEPARATE TRIALS PURSUANT TO FED.R.CIV.P.
42(b) OF DEFENDANTS' CONSOLIDATED THIRD-PARTY COMPLAINT**

Borrower Plaintiffs move this Court pursuant to Fed. R.Civ.P. 21 to sever from this

Multidistrict national class action the Consolidated Third-Party Complaint filed by Defendants

or, alternatively, to order that those complaints proceed to separate trials, pursuant to

Fed.R.Civ.P. 42(b).  In support of this motion, Plaintiffs state:

1.      Plaintiffs' Consolidated Amended Class Action Complaint [Docket No. 325] (see

Exhibit A attached) filed June 26, 2007, seeks recovery from Defendants for:

        A.      Equal Credit Opportunity Act;

        B.      Violations of the Fair Credit Reporting Act;

        C.      Violations of RESPA;

        D.      Unjust Enrichment;

        E.      Good Faith and Fair Dealing;

        F.      Breach of Contract;

        G.      Violations of California Bus. & Prof. Code Section 17200;

1

H.      Violations of California Civil Code Section 1750 (Deceptive Practices);

I.      Violations of the Unfair and Deceptive Practices Acts of numerous states;

J.      Truth in Lending Act ("TILA");Violations of the TILA;

K.      Intentional/Negligent Misrepresentation;

L.      Violations of the Florida Mortgage Lending Act;

M.      Violations of the Fair Housing Act;

N.      Violations of the California Unruh Act;

O.      Negligent Training & Supervision;

P.      Violations of the Georgia Fair Lending Act;

Q.      Negligence;

R.      Violations of the Ohio Mortgage Brokers Act;

S.      Breach of Fiduciary Duty;

T.      Violations of the Fraudulent Transfer Acts;

U.      Accounting.

2.      On July 31, 2007, Defendant filed a Consolidated Third-Party Complaint [Docket No. 955] ("Third-Party Complaint') (see Exhibit B attached) against hundreds of title companies and others, which claims, even if successful, do not have any relation, beyond potential indemnification of the Defendants, to the claims alleged in the Consolidated Amended Class Action Complaint.

3. Fed.R.Civ.P. 21 provides in pertinent part:

Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim may be severed and proceeded with separately.

4. The Third-Party Complaint seeks to recover for Defendants for breach of contract, indemnification, contribution and negligence. Those claims are "discrete and separate" from the claims alleged by Plaintiffs against Defendants. *Rice v. Sunrise Express, Inc*., 209 F.3d 1008 (7th Cir. 2000). The *Rice* court held that the indemnification claims can be severable under Rule 21 from the primary liability claims.

5. The Third-Party Complaints were not referred by the Judicial Panel on Multi-District Litigation.

6. There is no independent basis for federal jurisdiction over the Third-Party Complaints. Nor is there an independent basis for venue in this jurisdiction with respect to any Third-Party Defendant who is not located here.

7. Absent severance, adding hundreds of Third-Party Defendants to this action would frustrate this litigation, undermine discovery, add to the cost and expense to Plaintiffs, and impair the ability of the Court to process this multi-party litigation in an orderly fashion. Providing notices, for example, to the many hundreds of lawyers who are likely to enter appearances, would be a massive undertaking. Every discovery dispute could generate hundreds of responses.

8. Defendants have non-delegable duties to provide accurate information about loan terms to the Plaintiffs and have liability on the Plaintiffs' claims based on statutory and common law. The Third-Party Defendants do not. For example, the Truth in Lending Act makes

3

"creditors" liable for violations of the statute. The Defendants are creditors within the meaning of the statute and the Third-Party Defendants are not. 15 U.S.C. § 1602(f). *See Riviere v. Banner Chevrolet, Inc*., 184 F.3rd 457 (5th Cir. 1999). Similarly, the Equal Credit Opportunity Act provides for liability of the Defendants to Plaintiffs. 15 U.S.C. § 1691a(e). The Third-Party Defendants have no liability to Plaintiffs for failing to make the disclosures that the Defendants were obligated to provide.

9. Plaintiffs believe that Defendants have not pointed to and cannot identify any claim on which the Third-Party Defendants are obligated to Plaintiffs. All of the Defendants' claims against Third-Party Defendants appear to involve some form of right to indemnification.

10. The claims alleged by Plaintiffs and those alleged in the Third-Party Complaints can be resolved independently. Defendants' liability can be determined readily without resolution of the Defendants' Third-Party Complaint.

11. Providing for severance will allow the separate and distinct claims of the parties to proceed independently toward adjudication and final judgments and appealability. <u>See</u> *Gaffney, et al. v. Riverboat Services of Indiana, Incorporated, et al.*, 451 F.3d 424 (7th Cir. 2006).

12. By contrast, allowing the third-party complaints to proceed with the Class complaints will unduly delay the progress of the litigation and prejudice the Class' ability to resolve issues conveniently and efficiently.

13. Severing the class action against defendants from their third-party complaints will streamline this large multidistrict litigation and promote efficiency.

14. If the Court does not elect to sever Defendants' claims against these third-parties, Plaintiffs respectfully submit that, in the alternative, in order to achieve economy and to avoid prejudice to Plaintiffs, this Court should exercise its discretion under Fed.R.Civ.P. 42(b) to order separate pre-trial proceedings and trials of the class actions and the third-party actions.

15. Fed.R.Civ.P. 42(b) provides that

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim or third-party claim, or of any separate issue or any number of claims, cross-claims, counterclaims or third-party claims, or issues always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

16. The claims set forth in the third-party complaints are separate and distinct from those in the Consolidated Amended Class Action Complaints. They should not be intertwined with the claims in the Consolidated Amended Class Action Complaints, but should proceed separately so that the class is not prejudiced and this multidistrict litigation can progress expeditiously and with economy.

*Wherefore*, Plaintiffs request that this Court sever the third-party complaints from the instant action or, alternative, order that the third-party complaints proceed to discovery and trial separate from the multidistrict Class action.

5

Dated: September 5, 2007                    Respectfully submitted,
                                            Plaintiffs


s/Kelly M. Dermody                              s/Gary Klein
Kelly M. Dermody                            Gary Klein
Caryn Becker                                Elizabeth Ryan
Lieff, Cabraser, Heimann &                  Shennan Kavanagh
 Bernstein, LLP                             Roddy Klein & Ryan
275 Battery St., 30th Floor                 727 Atlantic Avenue
San Francisco, CA 94111-3339                Boston, MA 02111-2810
(415) 956-1000                              (617) 357-5500 ext. 15


s/Jill Bowman
Jill H. Bowman
Terry Smiljanich
James, Hoyer, Newcomber &
 Simljanich, P.A.
One Urban Center, Suite 550
4830 West Kennedy Blvd.
Tampa, FL 33609
(813) 286-4100


*Plaintiffs' Co-Lead Counsel*


s/Marvin A. Miller
Marvin A. Miller
Lori A. Fanning
Miller Law LLC
115 S. LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400


*Plaintiffs' Liaison Counsel*


6

<u>**CERTIFICATE OF SERVICE**</u>

I, Marvin A. Miller, an attorney, hereby certify that on September 5, 2007, service of the ***Borrowers' Motion to Sever Pursuant to Fed.R.Civ.P. 21 or, Alternatively, to Order Separate Trials Pursuant to Fed.R.Civ.P. 42(b) of Defendants' Consolidated Third-Party Complaint*** was accomplished pursuant to ECF as to Filing Users and I will comply with LR 5.5 as to Non-ECF Users.


*/s/ Marvin A. Miller*
Marvin A. Miller

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

IN RE AMERIQUEST MORTGAGE CO.
MORTGAGE LENDING PRACTICES
LITIGATION

MDL No. 1715
Lead Case No. 05-cv-07097

Centralized before the
Honorable Marvin E. Aspen

## BORROWERS' CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs, by their attorneys, hereby consolidate the complaints filed in the

following actions:

*Barber v. Ameriquest Capital Corp.*, Case No. 04-CV-01296 (TJC-TEM), U.S.

District Court for the Middle District of Florida;

*Becker v. J.M. Closing Services, Inc., et al.*, Case No. 1:06-cv-02810 (RDB), U.S.

District Court for the District of Maryland;

*Brown v. Ameriquest Capital Corp.*, Case No. SACV05-285 (AHS), U.S. District

Court for the Central District of California;

*Campbell v. Ross v. Ameriquest Mortgage Co.*, Case No. 05-CV-00107 (WLS),

U.S. District Court for the Middle District of Georgia;

*Capasso v. Ameriquest Mortgage Co.*, Case No. 06-CV-01221 (JCL), U.S.

District Court for the District of New Jersey;

*Carlson v. Ameriquest Mortgage Co.*, Case No. 06-CV-03129 (PAM), U.S.

District Court for the District of Minnesota;

*D'Ambrogi v. Ameriquest Mortgage Co.*, Case No. 05-CV-04427 (CMR), U.S.

District Court for the Eastern District of Pennsylvania;

*Doherty v. Town & Country Credit Corp.*, Case No. 05-CV-00589 (JRT), U.S. District Court for the District of Minnesota.

*Harless v. Ameriquest Mortgage Co.*, Case No. 06-CV-0695 (LJM), U.S. District Court for the Southern District of Indiana;

*Jewell v. Ameriquest Mortgage Co.*, Case No. 06-CV-00269, U.S. District Court for the Northern District of Illinois;

*Juillerat v. Ameriquest Mortgage Co.*, Case No. 8:05-CV-01117 (DOC), U.S. District Court for the Central District of California;

*Kahrer v. Ameriquest Mortgage Co.*, Case No. CIV.A.05-391, U.S. District Court for the Western District of Pennsylvania;

*Knox v. Ameriquest Mortgage Co.*, Case No. C 05 00240 (SC), U.S. District Court for the Northern District of California;

*Madrazo v. Ameriquest Mortgage Co.*, Case No. CV 05 3987 (BRK), U.S. District Court for the Eastern District of New York;

*Montanez v. Ameriquest Mortgage Co.*, Case No. 06 CV 10244 (RWZ), U.S. District Court for the District of Massachusetts;

*Murphy v. Ameriquest Mortgage Co.*, Case No. 04-CV-12651 (RWZ), U.S. District Court for the District of Massachusetts;

*Saunders v. Ameriquest Mortgage Co.*, Case No. 5-CV-01126 (CAB), U.S. District Court for the Northern District of Ohio;

*Ungar v. Ameriquest Mortgage Co.*, Case No. 05 CIV 01849 (JDW), U.S. District Court for the Middle District of Florida;

*Williams v. Ameriquest Mortgage Co.*, Case No. 05 CV 6189 (LTS), U. S. District Court for the Southern District of New York; and

*Williams v. Ameriquest Mortgage Co.*, Case No. 05-CV-01036 (EAK), U.S. District Court for the Middle District of Florida.

By this consolidation, the allegations in each of these complaints are intended to be preserved as if reasserted and alleged herein. Plaintiffs allege the following upon information and belief based, among other things, upon the investigation made by Plaintiffs by and through their attorneys:

<u>**INTRODUCTION**</u>

1.      Plaintiffs bring this class action on behalf of themselves, and a nationwide class of similarly-situated individuals (the "Class") as described in the paragraphs set forth herein.

2.      This case involves the actions of Defendants Ameriquest Mortgage Company ("AMC") and its subsidiaries, affiliates and agents (together, "Ameriquest"). Ameriquest originates and services residential mortgage loans.

3.      Ameriquest has engaged and is engaged in uniform unfair, unconscionable, deceptive and unlawful commercial practices in soliciting and closing residential mortgage transactions nationwide.

4.      According to the 2003 and 2004 Mortgage Market Statistical Annuals, Ameriquest was the third largest subprime lender by volume during the period October 1999 through December 2003, with $61.8 billion in total originations during the period. Based on estimates from Ameriquest's securitization-filing, Ameriquest has risen to be the top "direct to consumer" subprime mortgage originator in the United States and originated an estimated $16.84 billion in loans for the first 6 months of 2004, representing a 76% rise over the same period in 2003. This growth has occurred as a result of Ameriquest's unfair and predatory practices, alleged herein.

5.      Ameriquest targets consumers for predatory, "subprime" home loans and induces borrowers to enter into unfair and deceptive residential mortgages without regard for the homeowners' interests or ability to pay. By its predatory loan practices, Ameriquest engages in a persistent "bait and switch" scheme through which it lures borrowers with promises of favorable

interest rates, monthly payments and/or loan terms, and then switches the terms at closing to less favorable ones.

6.     Plaintiffs and the Class members whose loans were financed by Ameriquest each received a loan which, to their surprise, contained one or more of the following unfavorable terms:  (a) confusing and unfair variable interest rate structure which provides only for an increase and not decrease in the borrower's interest rate; (b) a misleading charge for "discount points" or a "discount fee" often totaling thousands of dollars added to the principal of the loan, although Ameriquest provided no "discount" to the interest rate; (c)  prepayment penalty that hinders borrowers from refinancing on better terms with other lenders; and (d) duplicative and excessive costs and closing fees in amounts designed to strip home equity and prevent borrowers from refinancing without incurring high costs.

7.     Ameriquest also routinely fails to provide required disclosures, including the statutorily mandated Notice of Right to Cancel, and/or circumvents statutory protections by failing to leave a true copy of completed loan documents in borrowers' possession so that borrowers cannot review the loan terms.

8.     When borrowers inquire at closing about why they are not receiving their loans on the promised terms, they are typically promised early refinancing on more favorable terms.  That promise is false, either because no refinance is made or because the available refinance is not on more favorable terms.  If a refinance is offered by Ameriquest, it involves an additional set of expensive duplicate and unnecessary closing fees.

9.     Borrowers whose loans are serviced by Ameriquest are subject to a distinct -  but similarly common, illegal, and unfair – scheme as Ameriquest's loan-financing scheme: Ameriquest routinely seeks to collect, and does collect, various fees, costs, and charges that are not legally due under the mortgage contracts, it mishandles payments made by borrowers, and engages in unlawful collection practices, breaching the mortgage loan terms.

10.     Ameriquest's unfair practices allow Ameriquest to profit by leaving borrowers with a three-way Hobson's choice.  Either the borrower can 1) choose to remain in a

loan with unacceptable terms; 2) find another lender offering better terms and pay Ameriquest a substantial and unjustified prepayment penalty while losing equity on additional closing costs; or 3) refinance with Ameriquest and thereby provide Ameriquest with an opportunity to capitalize the points and closing costs from the first loan while charging another set of points and/or closing costs in an equal or larger amount.

11. By the practices described in this Complaint, Ameriquest violated numerous federal and state laws.

12. These federal laws include, for example, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m(a), the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d), the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*.

13. These state laws include, but are not limited to, the common law of contract and equity, state predatory lending laws, and the consumer protection laws of the State of California (where Ameriquest is based and from where the scheme originated) or, alternatively, the various states' consumer protection and deceptive and unfair trade practices acts.

14. By virtue of this conduct, Plaintiffs and the Class have been harmed and continue to incur damages and suffer harm. Through this action, Plaintiffs seek, on behalf of themselves and all others similarly situated, damages, restitution, a declaration of the right to rescind, attorneys fees, costs, and any other relief the Court deems proper.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 1640(e), 1681p, 1691p, and 2614.

16. This Court also has original jurisdiction over the state-law claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) there are 100 or more members in the proposed classes; (2) many Plaintiffs and Class members have a different citizenship from the Defendants; and (3) the claims of the proposed

Class members exceed $5,000,000 in the aggregate. In addition, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state-law claims because those claims and the federal law claims derive from a common nucleus of operative facts.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that Defendants transact substantial business in this district, and pursuant to the transfer order of the Judicial Panel on Multidistrict Litigation.

**PARTIES**

**I.      PLAINTIFFS**

18.     Individual and Representative Plaintiffs George and Crisella Barber are residents of Lake City, Florida, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

19.     Individual and Representative Plaintiff Debra Holloway is a resident of Tampa, Florida, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

20.     Individual and Representative Plaintiff Laurence Osten is a resident of Fort Wright, Florida, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

21.     Individual and Representative Plaintiff Barbara Ann Becker is a resident of Baltimore, Maryland, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

22.     Individual and Representative Plaintiff Tonya Summer Brown is a resident of Stone Mountain, Georgia, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

23.     Individual and Representative Plaintiff Guadalupe Hernandez is a resident of Brownsville, Texas, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

24.     Individual and Representative Plaintiffs Kevin and Maria Cusanelli are residents of Hamden, Connecticut, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

25.     Individual and Representative Plaintiff Johnnie Ross is a resident of Albany, Georgia, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

26.     Individual and Representative Plaintiff Charles Meadows is a resident of Sparks, Georgia, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

27.     Individual and Representative Plaintiffs Joseph and Nicole Riggins are residents of Valdosta, Georgia, and have been victims of Ameriquest's practices during the period covered by this consolidated action

28.     Individual and Representative Plaintiff Kerri Capasso is a resident of New Milford, New Jersey, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

29.     Individual and Representative Plaintiffs Raymond and Rebecca Carlson are residents of St. Paul, Minnesota, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

30.     Individual and Representative Plaintiff Patrick Galvan is a resident of Saginaw, Michigan, and has been a victim of Ameriquest's practices during the period covered by this consolidated action (during which time he resided in St. Paul, Minnesota).

31.     Individual and Representative Plaintiffs Robert and Debra Peabody are residents of St. Paul, Minnesota, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

32.     Individual and Representative Plaintiffs Michele and Craig D'Ambrogi are residents of Hanover, Pennsylvania, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

33.     Individual and Representative Plaintiffs Kathryn and William Birkholz are residents of West Middlesex, Pennsylvania, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

34.     Individual and Representative Plaintiffs Thomas B. and Elvie Doherty are residents of Minneapolis, Minnesota, and have been victims of Town & Country's practices during the period covered by this consolidated action.

35.     Individual and Representative Plaintiff Mary Harless is a resident of Anderson, Indiana, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

36.     Individual and Representative Plaintiffs James and Jennifer Jewell are residents of Springfield, Ohio, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

37.     Individual and Representative Plaintiff Deborah Juillerat is a resident of Golden Valley, Minnesota, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

38.     Individual and Representative Plaintiff Karen M. Kahrer is a resident of New Castle, Pennsylvania, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

39.     Individual and Representative Plaintiffs Nona and Albert Knox are residents of East Palo Alto, California, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

40.     Individual and Representative Plaintiff Maria Torres is a resident of East Palo Alto, California, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

41.     Individual and Representative Plaintiffs Heladio and Maria Arellanes are residents of Richmond, California, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

42.     Individual and Representative Plaintiff Richard A. Madrazo is a resident of Staten Island, New York, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

43.     Individual and Representative Plaintiff Yamal Montanez is a resident of Chicopee, Massachusetts, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

44.     Individual and Representative Plaintiffs Isabelle M. and David R. Murphy are residents of Plympton, Massachusetts, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

45.     Individual and Representative Plaintiff Lynn Gay is a resident of Bridgewater, Massachusetts, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

46.     Individual and Representative Plaintiffs David M. and Janet Wakefield are residents of Wareham, Massachusetts, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

47.     Individual and Representative Plaintiffs Frank and Martha White are residents of Mattapam, Massachusetts, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

48.     Individual and Representative Plaintiff Harriet Holder is a resident of Mattapan, Massachusetts, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

49.     Individual and Representative Plaintiff Pegi Saunders is a resident of Maple Heights, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

50.     Individual and Representative Plaintiffs Matthew and Tracey Lloyd are residents of Oakwood Village, Ohio, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

51.     Individual and Representative Plaintiff Dorothy Stevens is a resident of Shaker Heights, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

52.     Individual and Representative Plaintiffs Aris and Ricardo Gay are residents of Cleveland Heights, Ohio, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

53.     Individual and Representative Plaintiff Steven H. Ungar is a resident of Venice, Florida, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

54.     Individual and Representative Plaintiff Cheryl Williams is a resident of New York, New York, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

55.     Individual and Representative Plaintiff Duval Naughton is a resident of Brooklyn, New York, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

56.     Individual and Representative Plaintiff Latonya and Dwayne Williams are residents of St. Petersburg, Florida and have been victims of Ameriquest's practices during the period covered by this consolidated action.

57.     Individual and Representative Plaintiff William F. and Daisybel Tolbert are residents of St. Petersburg, Florida, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

58.     Individual and Representative Plaintiffs Timothy and Francis Adamowicz are residents of Wilmington, Delaware, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

59.     Individual and Representative Plaintiff Christopher Bourassa is a resident of New Bedford, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

60.     Individual and Representative Plaintiff Venitra Brown is a resident of Waldorf, Maryland and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

61.     Individual and Representative Plaintiffs Edrick and Debra Centeno are residents of Las Vegas, Nevada and have been victims of Ameriquest's practices during the period covered by this consolidated action.

62.     Individual and Representative Plaintiff Vaughn DeBold is a resident of Cocoa, Florida and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

63.     Individual and Representative Plaintiffs Gregory and Marcell DeMeo are residents of Wakefield, Massachusetts and have been victims of Ameriquest's practices during the period covered by this consolidated action.

64.     Individual and Representative Plaintiff James Devlin is a resident of Plymouth, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

65.     Individual and Representative Plaintiffs Timothy and Cynthia Dion are residents of Bridgewater, Massachusetts and have been victims of Ameriquest's practices during the period covered by this consolidated action.

66.     Individual and Representative Plaintiff Karen Dudeck is a resident of South Boston, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

67.     Individual and Representative Plaintiff Christopher Gabrielli is a resident of Marlborough, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

68.     Individual and Representative Plaintiff Patricia Masson is a resident of Tyngsboro, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

69.     Individual and Representative Plaintiffs John and Kathleen O'Callaghan are residents of Quincy, Massachusetts and have been victims of Ameriquest's practices during the period covered by this consolidated action.

70.     Individual and Representative Plaintiff Glen Powell is a resident of Cambridge, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

71.     Individual and Representative Plaintiff Michele Powell is a resident of Worcester, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

72.     Individual and Representative Plaintiff Michael Russo is a resident of Leominster, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

73.     Individual and Representative Plaintiff Kenneth Sawyer is a resident of Sharon, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

74.     Individual and Representative Plaintiffs Frank and Linda Shea are residents of Methuen, Massachusetts and have been victims of Ameriquest's practices during the period covered by this consolidated action.

75.     Individual and Representative Plaintiffs Scott Ventola and Steven Bourassa are residents of Princeton, Massachusetts and have been victims of Ameriquest's practices during the period covered by this consolidated action.

76.     Individual and Representative Plaintiff Joshua Wilgoren is a resident of Framingham, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

## II.    DEFENDANTS

77.    Defendant Ameriquest Mortgage Company ("AMC") is a privately-held Delaware corporation that has its principal place of business in California.  AMC is the nation's largest privately held sub-prime lender, with more than 270 offices nationwide.

78.    Defendant ACC Capital Holdings Corporation is a privately-held Delaware corporation that has its principal place of business in California.  It is the owner of AMC and other Ameriquest entities, as set forth below.

79.    Defendant AMC Mortgage Services, Inc. is a Delaware corporation with its principal place of business in California.  It is a wholly-owned subsidiary of ACC Capital Holdings Corporation.  It services many of the loans originated by AMC.

80.    Defendant Ameriquest Mortgage Securities, Inc. is a Delaware corporation with a principal place of business in California.  It holds legal title to many of the loans originated by AMC.

81.    Defendant Town & Country Credit Corporation is a Delaware corporation with a principal place of business in California.  Town and Country is a wholly owned subsidiary of ACC Capital Holdings Corporation.

82.    Defendant Argent Mortgage Co., LLC is a Delaware company with a principal place of business in California.  Argent is a wholly-owned subsidiary of ACC Capital Holdings Corporation.

83.    Collectively, AMC, ACC Capital Holdings Corporation, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., Town & Country Credit Corp., and Argent Mortgage Co., LLC are referred to as "Ameriquest."

84.    Defendant JM Closing is a Maryland-based corporation that performs title and mortgage loan closings.  Defendant Jonathan Means was the owner of JM Closing at all relevant times.

85.    Collectively, the Ameriquest defendants plus the defendants listed in the previous paragraphs are the "Defendants."

III.    **AGENCY/JOINT VENTURE**

86.    At all times herein mentioned, Defendants, both individually and collectively, and affiliates not herein named, are and were agents or joint venturers of each of the other Defendants, and in doing the acts alleged herein were acting within the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

87.    Ameriquest controlled the actions of all the Defendants and of each of them by a program of centralized policy-making, policy dissemination, and training, emanating from central offices in California.

88.    Ameriquest has also implemented centralized decision-making and policy control by and through its overlapping officers and/or by a process of policy dissemination emanating from Roland Arnall, the founder and controlling shareholder of each Ameriquest entity.

IV.    **AIDING AND ABETTING**

89.    Defendants, and each of the lending subsidiaries, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs and the Classes.  In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

V.    **CONSPIRACY**

90.    Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein.  The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of was, *inter alia*, to financially benefit Defendants at the

expense of Plaintiffs by engaging in fraudulent activities. Defendants accomplished their conspiracy, common enterprise, and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein. Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof. Defendants' wrongful acts include, *inter alia*, all of the acts that each of them are alleged to have committed in furtherance of the wrongful conduct complained of herein.

91. Plaintiffs are informed and believe that the above-described conspiracy is ongoing, making it pointless for Plaintiffs to allege when the last overt act of the conspiracy occurred.

## FACTUAL BACKGROUND

I. **AMERIQUEST'S COMMON PATTERN AND PRACTICE OF UNFAIR, UNLAWFUL, AND DECEPTIVE PRACTICES IN CONNECTION WITH MORTGAGE LOAN FINANCING**

92. Ameriquest has engaged in and continues to engage in a uniform common plan and scheme to prey upon unsuspecting consumers by routinely causing borrowers to enter into residential loans with unfavorable terms, misleading and inappropriate "discount" fees, high and adjustable interest rates, prepayment penalties, and excessive loan principal compared to equity and ability to pay.

A. **Bait and Switch Practices of Ameriquest**

93. Ameriquest engages in "bait and switch" tactics in its residential loan transactions. Ameriquest systematically baits customers into residential mortgage loan transactions with promises of fixed interest rates, low interest rates, low or no fees, lower monthly payments compared to then current payments, no prepayment penalties, and/or the existence or absence of particular terms.

94. When the paperwork is presented to customers for signature at closing, the terms are contrary to the terms promised. Due to the complexity of the paperwork, hurried

closings, and improper disclosure procedures, borrowers are often unaware that the terms of the mortgage documents do not match Ameriquest's prior representations.

95.     This practice goes hand in hand with Ameriquest's uniform practice of failing to make statutory disclosures and misrepresenting or concealing loan terms, as well as its aggressive and unfair sales tactics. While each practice is separately unlawful and unfair, in tandem these practices allow Ameriquest systematically to close loans that benefit Ameriquest to the detriment and misfortune of Plaintiffs and the Class.

96.     After presenting new or different loan terms, if the borrower becomes aware of the changes, Ameriquest engages in scare and pressure tactics to cause customers to proceed with the transaction anyway. Ameriquest further uses their borrowers' concern about loan terms in the initial transaction as an opportunity to bait the hook for a second loan, by promising an early refinancing on better terms. The refinance loans then capitalize finance charges, provide an excuse for new and additional points and other closing costs and provide an opportunity for Ameriquest to reap other additional hidden profits at their borrowers' expense.

97.     Ameriquest misleads the borrowers into signing loan documents without reading them by misrepresenting their contents and telling borrowers there is no need or time to read them and pressuring them to "just sign the papers."

**B.     Ameriquest's Failure to Provide Proper Disclosures**

98.     Ameriquest also fails timely to deliver copies of various loan papers, including required disclosures under the Truth in Lending Act, until after the loan is consummated. This prevents consumers from understanding the loan terms, including most importantly, the true cost of the loan.

99.     When the disclosures are provided, they are often inaccurate, misleading, incomplete, or otherwise not in compliance with statutory requirements.

100.     Ameriquest has a uniform practice of removing certain documents, such as those relating to the prepayment penalty, before presenting the documents to the customer for signing. For this reason and others, customers are systematically denied any meaningful

opportunity to discover that the terms on the final documents do not match the prior representations.

101.     At closing, Ameriquest also routinely presents and compels borrowers to sign acknowledgments of various events, including acknowledgements concerning last-minute changes in loan terms that are inconsistent with previous oral representations, and disclosures that are otherwise not compliance with Ameriquest's legal obligations to borrowers.

### C.     Ameriquest's Scheme Relating to Discount Points

102.     During a substantial portion of the period covered by this consolidated action, Ameriquest now acknowledges that it charged and collected discount points without providing a discount interest rate.  Because these points are calculated as a percentage of the total amount of the loan, discount points typically cost the consumer thousands or tens of thousands of dollars.

103.     During the balance of the period covered by this consolidated and amended complaint, Ameriquest claims to have provided an unspecified rate discount whenever it charged and collected discount points. However, because Ameriquest never specifically discloses the amount of the rate discount being provided, it is impossible for its customers to determine whether the rate discount is reasonable consideration for the substantial cost of the discount points.

104.     When Ameriquest markets and sells its loans to new customers, it never informs them that the quoted loan amount will be reduced by the substantial cost of discount points.  The discount points are therefore hidden until closing.

105.     Ameriquest often encourages its customers to refinance quickly, but fails to inform those customers that discount points in the previously loan will be capitalized upon refinancing (so that interest is due thereon) and that a new set of discount points will be charged. This hidden impact of refinancing is a substantial benefit to Ameriquest and a substantial cost to its refinance customers.

D.     **Ameriquest's Sales and Marketing Scheme**

106.     Ameriquest has a business practice of using oppressive and unfair marketing techniques to prey upon homeowners nationwide.

107.     Ameriquest targets and hires loan officers, called account executives ("AEs"), that have little to no experience in the mortgage lending industry. Ameriquest then trains and encourages its AEs to engage in any conduct necessary to close the greatest number of loans as quickly as possible and to maximize the total loan principal.

108.     Under Ameriquet's loan closing system, the actual terms that may ultimately be available to a particular customer are not accessible by an AE until at or around the time of closing.  AE's are thus required to make promises to customers about loan terms that have no basis other than the AE's perception of what is necessary to keep the borrower on the sales hook until the loan is closed.

109.     AEs across the country receive daily leads on new customers that are generated by software at Ameriquest's Orange, California, headquarters.  These leads target homeowners who are carrying both a mortgage and significant credit card and/or other consumer debt; persons who have mobile home mortgages; persons with less than perfect credit; and other financially-vulnerable persons.  These homeowners are solicited through repeated mailers, telephone calls, and/or personal visits by Ameriquest sales personnel, all inviting them to consolidate their debts or to obtain money for expenses, with false and misleading promises of more favorable loan terms and/or reduced monthly payments.  Ameriquest profits by obtaining high fees upfront and high interest rates in the interim, and often by selling its loan portfolios to other companies.

110.     Ameriquest systematically trains its sales personnel through standardized sales presentations (videos) developed under the control of Ameriquest's corporate headquarters in Orange, California as well as by use of the movie "Boiler Room" which depicts unethical and illegal high-pressure sales practices by a securities brokerage firm.  These videos demonstrate

high-pressure mortgage sales, while failing to train employees on the legal requirements and regulations for mortgage lending.

111.    Ameriquest also trains its sales personnel to routinely rush borrowers through the lengthy, complex documentation of the regulated closing process so as to divert the borrowers' attention from the documented terms of the loans.  Moreover, Ameriquest trains its Account Executives to overcome objections raised by borrowers at closing by such tactics as threatening delay or cancellation of the closing, asserting that rates will increase, claiming that other lenders will foreclose or repossess property, offering immediate cash pending the closing of the loan, and by assuring borrowers that they can refinance with better terms after improving their credit score, without disclosing that they could be subject to the prepayment penalty, higher interest rates and other fees if they did so.

112.    At all times relevant to this action, Ameriquest's uniform and fundamental business strategy with respect to the sale of home-secured loans has been to:

a.    uniformly hold out to all prospective customers, through the use of misleading promotions and material omissions regarding loan terms, that refinancing and/or consolidating their debts with Ameriquest will be beneficial and will save them money when in fact it will not;

b.    employ aggressive, misleading, and unfair high-pressure sales tactics to obfuscate loan terms both prior to closing and at closing, if and when customers question loan terms, in order to force the customers to close the loan;

c.    force borrowers into mortgage loan that include one or more of the following terms:  (1) a high and/or mis-disclosed adjustable interest rate; (2) a "discount" fee that does not lower the interest rate; (3) excessive closing fees; and/or (4) a prepayment penalty provision;

d.    sell loans to these homeowners in amounts so high in relation to the value of their homes that the resulting debt-to-value ratio (coupled with prepayment penalties and other restrictions) effectively strips their homes of equity and prevents the borrowers from

refinancing their loans with Ameriquest's competitors, often by inflating appraisal values or the borrowers' income or asset statements; and

   e.  engage in "flipping," or aggressive solicitation of targeted borrowers, including existing Ameriquest customers, to refinance existing loans without significant benefit to the homeowner, thus generating additional debt, capitalizing previously charged points and fees, incorporating new and excessive costs and fees into the principal of the loan, and often increasing the borrower's interest rate.

   113. Because Ameriquest profits from the origination and "flipping" of loans, and the subsequent sale of those loans to investment bankers and others as assets for mortgage-based securities, Ameriquest has little concern for the actual risk that the loans might default or with the continued profitability of the loans after origination, except to the extent that Ameriquest can induce existing borrowers to borrow more.

   114. Ameriquest unfairly and deceptively holds out its mortgage loans as sound financial transactions that will save borrowers money. Ameriquest fails to disclose prior to closing and/or intentionally obfuscates and/or conceals before and at closing the following:

   a.  required TILA disclosures clearly and conspicuously, in a form that borrowers can understand, at or before the time the loan is consummated, in order to mislead consumers as to the true terms and costs of their loan transactions;

   b.  the high and/or adjustable interest rates charged on its loans, as well as the risks associated with adjustable rate mortgage ("ARM") loans;

   c.  the high and deceptive "discount" fees and closing fees routinely added to the loan principal;

   d.  the fact that, under 15 U.S.C. § 1635(a), 12 C.F.R. § 226.23(b)(1), borrowers have the right to rescind certain transactions up to three days following the consummation of the transaction or the delivery of the information and disclosures required by statute;

       e.     the existence of a prepayment penalty, and that such prepayment penalty would make refinancing impossible and/or highly unfavorable for the borrower;

       f.     the fact that the borrowers would have to pay, in addition to monthly loan payments, the cost of homeowners' insurance and property taxes that other lenders include in monthly escrow payments, and instead implies or allows borrowers to believe that the monthly payment will include these costs; and

       g.     the fact that far from saving borrowers money (as Ameriquest systematically claims), the Ameriquest loans, increase the total amount of debt outstanding, exacerbate overall interest obligations, and place vulnerable borrowers at high risk of foreclosure.

115.    In addition, Ameriquest routinely fails to provide required disclosures to borrowers prior to closing — including, but not limited to, the HUD-1 statement, Notice of Right to Cancel, a "good faith" Good Faith Estimate, settlement process information booklet and other disclosures required under TILA — ensuring that borrowers have no meaningful opportunity to review them or to learn the true terms and costs of their loan transactions.

## E.    Ameriquest's Compensation System

116.    Ameriquest has designed its compensation system to reward its AEs for "upselling" customers' loans, providing incentives for AEs aggressively to increase the amounts loaned to the maximum permitted by Ameriquest's underwriting goals, irrespective of the amounts requested by borrowers or supported by the actual value of the home.  The effect of these "upsells" has been to "close the back door" on Ameriquest's customers by making loans that cannot be refinanced by Ameriquest's competitors.

117.    Ameriquest's compensation scheme also rewards AEs based on quantity of loans closed per month.  The minimum monthly quotas have risen consistently over time, reaching levels that are significantly higher than the number of loans closed by sales personnel at other companies.  Given that Ameriquest's AEs must reach the minimum quotas in order to be paid at any reasonable rate, and that the quotas are very high, Ameriquest's policy all but ensures

that its AEs will, as trained by Ameriquest, systematically engage in unfair and deceptive tactics to meet company quotas, with company knowledge of this widespread practice.

## II. AMERIQUEST'S COMMON PATTERN AND PRACTICE OF UNFAIR, UNLAWFUL, AND DECEPTIVE PRACTICES IN CONNECTION WITH MORTGAGE LOAN SERVICING

118. Ameriquest, in the servicing of residential loans originated by Ameriquest or others, mishandles borrowers' mortgage payments, unlawfully demands amounts that are not due under the threat of foreclosure, force-places insurance on properties it knows or should know to be insured, and fails to timely or properly credit payments received, resulting in late charges, delinquencies or default.

119. Ameriquest fails to deliver timely payoff information to subsequent lenders and improperly accounts for monies held in escrow.

120. Ameriquest routinely demands prepayment penalties in amounts that exceed the amount due under their loan agreements.

121. Ameriquest routinely and systematically treats borrowers as if they are in default on their loans even though borrowers have timely and sufficiently tendered mortgage payments or have otherwise complied with mortgage requirements.

122. Ameriquest has also routinely engaged in improper debt collection practices.

## CLAIMS OF NAMED PLAINTIFFS

123. Ameriquest refinanced Plaintiffs George and Crisella Barber's mortgage loan on January 15, 2003. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the Barbers with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

124. Ameriquest refinanced Plaintiff Debra Holloway's mortgage loan on February 21, 2003. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Holloway with appropriate documentation and/or disclosures. As a

result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

125.     Ameriquest refinanced Plaintiff Laurence Osten's mortgage loan on February 4, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Osten with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

126.     Ameriquest refinanced Plaintiff Barbara Ann Becker's mortgage loan on August 23, 2005. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Becker with appropriate documentation and/or disclosures, including but not limited to nondisclosures relating to kickback and referral fees.

127.     Ameriquest refinanced Plaintiff Tonya Summer Brown's mortgage loan on April 22, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Brown with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

128.     Ameriquest refinanced Plaintiff Guadalupe Hernandez's mortgage loan on January 28, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Hernandez with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

129.     Argent Mortgage, LLC refinanced Plaintiff Kevin and Maria Cusanelli's mortgage loan on October 14, 2003. Subsequently, the servicing of the loan was transferred to Ameriquest. Ameriquest engaged in unlawful servicing and debt collection practices, including but not limited to repeated violations of the terms of the mortgage loan contract.

130.     Ameriquest issued a high-cost home loan as defined under the Georgia Fair Lending Act ("GAFLA") in the name of Plaintiff Johnnie Ross in September, 2004. In

issuing such loan and charging fees and points which constitute a high-cost home loan, Ameriquest violated the requirements of GAFLA.

131.    Ameriquest issued a high-cost home loan as defined under the Georgia Fair Lending Act ("GAFLA") in the name of Plaintiff Charles Meadows in March, 2005.  In issuing such loan and charging fees and points which constitute a high-cost home loan, Ameriquest violated the requirements of GAFLA.

132.    Ameriquest issued a high-cost home loan as defined under the Georgia Fair Lending Act ("GAFLA") in the name of Plaintiffs Joseph and Nicole Riggins in March, 2005.  In issuing such loan and charging fees and points which constitute a high-cost home loan, Ameriquest violated the requirements of GAFLA.

133.    Ameriquest refinanced Plaintiff Kerri Capasso's mortgage loan on August 3, 2005.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Capasso with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

134.    Ameriquest refinanced Plaintiffs Raymond and Rebecca Carlson's mortgage loan on May 13, 2003.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the Carlsons with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

135.    Ameriquest refinanced Plaintiff Patrick Galvan's mortgage loan on December 9, 2003.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Galvan with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

136.    Ameriquest refinanced Plaintiffs Robert and Debra Peabody's mortgage loan on September 5, 2001 and April 28, 2003.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the Peabodys with appropriate

documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

137.    Ameriquest refinanced Plaintiffs Craig and Michele D'Ambrogi's mortgage loan on May 6, 2004 and December 11, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the D'Ambrogis with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

138.    Ameriquest refinanced Plaintiff William and Kathryn Birkholz's mortgage loan on July 21, 1999. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the Birkholzes with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

139.    The Dohertys closed on a mortgage written by Town & Country on December 24, 2002. During and after this process, Town & Country made standard misrepresentations and/or failed to provide the Dohertys with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

140.    Ameriquest refinanced Plaintiff Mary Harless' mortgage loan on September 14, 2005. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Harless with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

141.    Ameriquest refinanced Plaintiffs James and Jennifer Jewell's mortgage loan on June 21, 2005. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the Jewells with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

142.     Ameriquest refinanced Plaintiff Deborah Juillerat's mortgage loan on January 24, 2002.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Juillerat with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

143.     Ameriquest refinanced Plaintiff Karen M. Kahrer's mortgage loan on June 21, 2004.  Upon information and belief, Kahrer alleges that the referral of Kahrer to Ameriquest by Sears at Sherman Acquisition was made in exchange for Ameriquest's promise to direct plaintiff, as a condition of loan approval, to pay the entire amount of the debt owed to Sears German acquisition, in violation of the Real Estate Procedures Act ("RESPA"), 12 U.S.C. § 2607 *et seq.*

144.     Ameriquest refinanced Plaintiffs Nona and Albert Knox's mortgage loan in or around 2002.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the Knoxes with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

145.     Ameriquest refinanced Plaintiff Maria Torres's mortgage loan on December 21, 2002.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Torres with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

146.     Argent Mortgage Company refinanced Plaintiffs Heladio and Maria Arellanes' mortgage loan on January 15, 2003.  During and after this process, Argent made standard misrepresentations and/or failed to provide the Arellanes with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

147.    Ameriquest refinanced Plaintiff Richard A. Madrazo's mortgage loan on November 5, 2004.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Madrazo with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

148.    Ameriquest refinanced Plaintiff Yamal Montanez's mortgage loan on December 10, 2003.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Montanez with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

149.    Ameriquest refinanced Plaintiffs Isabelle M. and David R. Murphy's mortgage loan on April 22, 2004.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the Murphys with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

150.    Ameriquest refinanced Plaintiff Lynn Gay's mortgage loan on March 14, 2003 and September 2, 2003.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Gay with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

151.    Argent Mortgage Company refinanced Plaintiffs David M. and Janet Wakefield's mortgage loan on January 15, 2004 and April 2, 2004.  During and after this process, Argent made standard misrepresentations and/or failed to provide the Wakefields with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

152.    Ameriquest refinanced Plaintiffs Frank and Martha White's mortgage loan on May 23, 2003 and December 19, 2003.  During and after this process, Ameriquest made

standard misrepresentations and/or failed to provide the Whites with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

153. Ameriquest refinanced Plaintiff Harriet Holder's mortgage loans on November 24, 2003 and May 12, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Holder with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

154. Ameriquest serviced the mortgage loans of Plaintiffs Pegi Saunders, Matthew and Tracey Lloyd, Dorothy Stevens, and Aris and Ricardo Gay. Ameriquest serviced each of these loans in an unlawful manner and/or in violation of the loan agreements. For example, and not by way of limitation, Ameriquest assessed each of these plaintiffs with late charges when payments were timely, in violation of loan agreements. Ameriquest also engaged in abusive debt collection practices.

155. Ameriquest refinanced Plaintiff Steven H. Ungar's mortgage loan on May 24, 2005. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Gay with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

156. Ameriquest refinanced Plaintiff Cheryl Williams' mortgage loan on May 20, 2003. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Williams with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

157. Ameriquest refinanced Plaintiff Duval Naughton's mortgage loan on September 14, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Naughton with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

158.     Ameriquest refinanced Plaintiffs Latonya and Dwayne Williams'
mortgage loan on January 15, 2004.  During and after this process, Ameriquest made standard
misrepresentations and/or failed to provide the Williams with appropriate documentation and/or
disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal
interest, fees and penalties.

159.     Ameriquest refinanced Plaintiffs William and Daisybel Tolbert's
mortgage loan on January 7, 2004.  During and after this process, Ameriquest made standard
misrepresentations and/or failed to provide the Tolberts with appropriate documentation and/or
disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal
interest, fees and penalties.

160.     Ameriquest refinanced Plaintiffs Timothy and Francis Adamowicz's
mortgage loan on December 22, 2003. During and after this process, Ameriquest made standard
misrepresentations and/or failed to provide the Adamowiczs with appropriate documentation
and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or
illegal interest, fees and penalties.

161.     Ameriquest refinanced Plaintiff Christopher Bourassa's mortgage loan on
October 15, 2004.  During and after this process, Ameriquest made standard misrepresentations
and/or failed to provide Mr. Bourassa with appropriate documentation and/or disclosures.  As a
result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and
penalties.

162.     Ameriquest refinanced Plaintiff Venitra Brown's mortgage loan on August
9, 2002 and October 24, 2003. During and after this process, Ameriquest made standard
misrepresentations and/or failed to provide Ms. Brown with appropriate documentation and/or
disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal
interest, fees and penalties.

163.     Ameriquest refinanced Plaintiffs Edrick and Debra Centeno's mortgage
loan on September 23, 2004. During and after this process, Ameriquest made standard

misrepresentations and/or failed to provide the Centenos with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

164.     Ameriquest refinanced Plaintiff Vaughn DeBold's mortgage loan on November 24, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Mr. DeBold with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

165.     Town and Country refinanced Plaintiffs Gregory and Marcell DeMeo's mortgage loan on August 24, 2005. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the DeMeos with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

166.     Ameriquest refinanced Plaintiff James Devlin's mortgage loan on February 17, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Mr. Devlin with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

167.     Ameriquest refinanced Plaintiffs Timothy and Cynthia Dion's mortgage loan on January 9, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the Dions with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

168.     Ameriquest refinanced Plaintiff Karen Dudeck's mortgage loan on two occasions: February 12, 2004 and November 12, 2002. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Ms. Dudeck with appropriate

documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

169.     Ameriquest refinanced Plaintiff Christopher Gabrielli's mortgage loan on November 17, 2003, June 23, 2004 and May 12, 2005. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Mr. Gabrielli with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

170.     Ameriquest refinanced Plaintiff Patricia Masson's mortgage loan on April 23, 2005. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Ms. Masson with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

171.     Ameriquest refinanced Plaintiffs John and Kathleen O'Callaghan's mortgage loan on October 12, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the O'Callaghans with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

172.     Ameriquest refinanced Plaintiff Glen Powell's mortgage loans on two occasions: May 13, 2003 and October 9, 2003 respectively. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Mr. Powell with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

173.     Ameriquest refinanced Plaintiff Michele Powell's three mortgage loans on October 18, 2003, December 4, 2002 and July 17 2002, respectively. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Ms. Powell with appropriate documentation and/or disclosures. As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

174.     Ameriquest refinanced Plaintiff Michael Russo's mortgage loan on December 27, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Mr. Russo with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

175.     Ameriquest refinanced Plaintiff Kenneth Sawyer's mortgage loan on June 9, 2003.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Mr. Sawyer with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

176.     Ameriquest refinanced Plaintiffs Frank and Linda Shea's mortgage loan on July 7, 2004. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide the Sheas with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

177.     Ameriquest refinanced Plaintiffs Scott Ventola's and Steven Bourassa's mortgage loan on September 23, 2005.  During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Mr. Ventola and/or Mr. Bourassa with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

178.     Ameriquest refinanced Plaintiff Joshua Wilgoren's mortgage loan on September 8, 2005. During and after this process, Ameriquest made standard misrepresentations and/or failed to provide Mr. Wilgoren with appropriate documentation and/or disclosures.  As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties.

## CLASS ACTION ALLEGATIONS

### I.  LOAN ORIGINATION CLASS

179.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on their own behalf and on the behalf of all other members of the classes described below.

180.    Plaintiffs seek certification of a nationwide class of individuals (excluding Defendants; the parents, subsidiaries and affiliates, officers and directors of Defendants or any entity in which Defendants have a controlling interest; and the legal representatives, successors, or assigns of any such excluded persons) who presently own, or during the Class Period owned, property (including mobile homes) in the United States, and who entered into a mortgage loan transaction relating to such property with Ameriquest or its predecessors, at any time between July 1, 1999, and the present (the "Origination Class").

181.    Also excluded from the Origination Class are individuals who released claims in the Judicial Council Coordination Proceeding No. 4162, to the extent such individuals' released claims are covered by the Origination Class (Superior Court of the State of California, San Mateo County).

182.    The Representative Plaintiffs of the Origination Class are referred to herein as the "Origination Plaintiffs."

183.    The members of the Origination Class are so numerous and geographically dispersed across the country that joinder of all members is impracticable.  While the exact number of Class members is unknown to the Origination Plaintiffs at this time, Plaintiffs believe that there are hundreds of thousands of Origination Class members.  Detailed information on the Class can be ascertained through appropriate discovery and from records maintained by Ameriquest.

184.    The Origination Plaintiffs' claims are typical of the claims of the members of the Origination Class, as the Origination Plaintiffs and all other members of the Origination Class sustained damages arising out of the same wrongful conduct by Ameriquest.  The

Origination Plaintiffs will fairly and adequately represent and protect the interests of the members of the Origination Class and have retained counsel competent and experienced in class action and consumer litigation.

185. Common questions of law and fact exist as to all members of the Origination Class and predominate over any questions affecting solely individual Origination members. Among these common questions of law and fact common are:

a. Whether Ameriquest systematically failed to provide the disclosures required by law, including TILA disclosures, clearly and conspicuously, in writing and in a form that Class Members can keep and/or understand;

b. Whether Ameriquest charged borrowers an improper discount fee or charge;

c. Whether Ameriquest has been or are engaged in a "bait and switch" scheme, in which Origination Class Members have been lured in with promises of a particular set of loan terms, and are then given different and far less beneficial terms;

d. Whether documents, contracts, and practices relating to the transactions between members of the Origination Class and Ameriquest were unfair, unconscionable, deceptive, untrue, misleading, or omitted material facts and disclosures;

e. Whether Ameriquest misrepresented, concealed, and/or failed to disclose loan terms;

f. Whether Ameriquest misled the Origination Plaintiffs and the Origination Class in connection with marketing, solicitation, sale, operation, and administration of the mortgage loans; and

g. Whether the Origination Plaintiffs and the Origination Class are entitled to the imposition of a constructive trust or other equitable or injunctive relief as a result of, among other things, Ameriquest's unjust enrichment.

h.      Whether Ameriquest has been or is engaged in unfair and unlawful business practices, and whether the alleged conduct violated the California Business and Professions Code and the California Consumer Legal Remedies Act;

i.      Whether the law of the State of California can apply to all Origination Class Members;

j.      Whether declaratory relief giving Origination Class Members the right to rescind their mortgage loans should be issued;

k.      Whether Origination Plaintiffs and the Origination Class are entitled to damages and the appropriate measure of such damages; and

l.      Whether Origination Plaintiffs and the Origination Class are entitled to punitive damages.

186.    A class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices because joinder of all members is impracticable.  Prosecution of separate actions by individual Origination Class members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Ameriquest.  In addition, due to the vastly unequal market power between the parties, and the fact that many Origination Class members are in ongoing commercial relationships with Ameriquest, a Class action may be the only way, as a practical matter, that the cases will be prosecuted.  The Origination Plaintiffs foresee no significant difficulties in managing this action as a class action.

187.    The Origination Plaintiffs also seek claims on behalf of two single-state state law subclass:  a class of Florida residents, who assert claims under the Florida Mortgage Lending Act, as set forth below; and a class of Georgia residents, who assert claims under GAFLA, as set forth below.  The subclasses repeat and reallege the paragraphs above, and allege that addition common questions include, respectively, whether Ameriquest violated the Florida Mortgage Lending Act and GAFLA.

II.     **LOAN ORIGINATION SUBCLASSES: TILA SUBCLASS; DISCOUNT POINTS SUBCLASS; BAIT AND SWITCH SUBCLASS; AND RESPA ILLEGAL REFERRAL SUBCLASS**

A.     **TILA Subclass**

188.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on their own behalf and on the behalf of all other members of the subclass described below.

189.     Plaintiffs seek certification of a nationwide subclass of individuals (excluding Defendants; the parents, subsidiaries and affiliates, officers and directors of Defendants or any entity in which Defendants have a controlling interest; and the legal representatives, successors, or assigns of any such excluded persons) who (a) presently own, or during the Class Period owned, property (including mobile homes) in the United States and (b) who entered into a mortgage loan transaction relating to such property with Ameriquest or its predecessors at any time on or after July 1, 2004 or, for residents in Massachusetts, on or after November 5, 2000 (the "TILA Subclass").

190.     Also excluded from the TILA Subclass are individuals who released claims in the Judicial Council Coordination Proceeding No. 4162 (Superior Court of the State of California, San Mateo County).

191.     For purposes of any claims related to the right of rescission under 15 U.S.C. § 1635, the TILA Subclass includes any individual whose rights have not terminated pursuant to 15 U.S.C. § 1635(f) and individuals whose rights were expressly preserved by the Stipulation for Standstill entered by the Court on February 21, 2006.  This inclusion applies regardless of the origination date of the transaction.

192.     The Representative Plaintiffs of the TILA Subclass are referred to herein as the "TILA Plaintiffs."

193.     The members of the TILA Subclass are so numerous and geographically dispersed across the country that joinder of all members is impracticable.  While the exact number of Subclass members is unknown to the Plaintiffs at this time, Plaintiffs believe that

there are at least thousands of TILA Subclass members. Detailed information on the Subclass can be ascertained through appropriate discovery and from records maintained by Ameriquest.

194.    The TILA Plaintiffs' claims are typical of the claims of the members of the TILA Subclass, as the TILA Plaintiffs and all other members of the TILA Subclass entered into transactions that were subject to the TILA-provided right to cancel and were injured based on Ameriquest's conduct.

195.    The TILA Plaintiffs will fairly and adequately represent and protect the interests of the members of the TILA Subclass and have retained counsel competent and experienced in class action and consumer litigation.

196.    Common questions of law and fact exist as to all members of the TILA Subclass and predominate over any questions affecting solely individual members of the Subclass. Among these common questions of law and fact common are:

a.    Whether Ameriquest is a creditor within the meaning of TILA and whether the transactions between TILA Subclass members and Ameriquest were "consumer credit" transactions as defined by TILA and Regulation Z, 15 U.S.C. § 1602(h) and 12 C.F.R. § 226.2(a)(12) and(17).

b.    Whether the transactions between TILA Subclass members and Ameriquest were "closed end" credit transactions;

c.    Whether Ameriquest had a common practice of failing to provide required disclosures under TILA;

d.    Whether Ameriquest had a common practice of providing deficient disclosures under TILA;

e.    Whether the TILA Plaintiffs and Subclass members are entitled to a declaration that they have the right to rescind their transactions; and

f.    Whether the TILA Plaintiffs and Subclass members are entitled to statutory damages.

197.     A class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices because joinder of all members is impracticable.  Prosecution of separate actions by individual TILA Subclass members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Ameriquest.  In addition, due to the vastly unequal market power between the parties, and the fact that many TILA Subclass members are in ongoing commercial relationships with Ameriquest, a Class action may be the only way, as a practical matter, that the cases will be prosecuted.  The TILA Plaintiffs foresee no significant difficulties in managing this action as a class action.

### B.     **Discount Points Subclass**

198.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on their own behalf and on the behalf of all other members of the subclass described below.

199.     Plaintiffs seek certification of a nationwide subclass of individuals (excluding Defendants; the parents, subsidiaries and affiliates, officers and directors of Defendants or any entity in which Defendants have a controlling interest; and the legal representatives, successors, or assigns of any such excluded persons) who (a) presently own, or during the Class Period owned, property (including mobile homes) in the United States, (b) who entered into a mortgage loan transaction relating to such property with Ameriquest or its predecessors at any time between July 1, 1999 and the present, and (c) who paid a charge for "discount points" or "discount fees" (the "Discount Points Subclass").

200.     Also excluded from the Discount Points Subclass are individuals who released claims in the Judicial Council Coordination Proceeding No. 4162 (Superior Court of the State of California, San Mateo County).

201.     The Representative Plaintiffs of the Discount Points Subclass are referred to herein as the "Discount Points Plaintiffs."

202.    The members of the Discount Points Subclass are so numerous and geographically dispersed across the country that joinder of all members is impracticable.  While the exact number of Subclass members is unknown to the Plaintiffs at this time, Plaintiffs believe that there are at least thousands of Discount Points Subclass members.  Detailed information on the Subclass can be ascertained through appropriate discovery and from records maintained by Ameriquest.

203.    The Discount Points Plaintiffs' claims are typical of the claims of the members of the Discount Points Subclass, as the Discount Points Plaintiffs and all other members of the Discount Points Subclass paid discount fees or charges and sustained damages arising out of the same wrongful conduct by Ameriquest.

204.    The Discount Points Plaintiffs will fairly and adequately represent and protect the interests of the members of the Discount Points Subclass and have retained counsel competent and experienced in class action and consumer litigation.

205.    Common questions of law and fact exist as to all members of the Discount Points Subclass and predominate over any questions affecting solely individual members of the Subclass.  Among these common questions of law and fact common are:

        a.    Whether borrowers paid discount fees or charges;

        b.    Whether Ameriquest disclosed the loan discount associated with payment of the fee;

        c.    Whether Ameriquest had a common policy and practice of promising borrowers that they would receive consideration in exchange for the payment of these discounts fees;

        d.    Whether Ameriquest had a common practice of depriving borrowers of consideration in exchange for the payment of discount fees;

        e.    Whether Ameriquest failed to offer borrowers an alternative loan without the loan discount fees for the purpose of allowing borrowers to decide whether the loan discount was acceptable;

f. Whether Ameriquest has breached contracts with borrowers by charging discount points;

g. Whether Ameriquest has been unjustly enriched;

h. Whether Ameriquest has violated state laws; and

i. The proper measure of damages and other relief for the Discount Points Subclass.

206. A class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices because joinder of all members is impracticable. Prosecution of separate actions by individual Discount Points Subclass members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Ameriquest. In addition, due to the vastly unequal market power between the parties, and the fact that many Discount Points Subclass members are in ongoing commercial relationships with Ameriquest, a Class action may be the only way, as a practical matter, that the cases will be prosecuted. The Discount Points Plaintiffs foresee no significant difficulties in managing this action as a class action.

## C. The Bait and Switch Subclass

207. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on their own behalf and on the behalf of all other members of the subclass described below.

208. Plaintiffs seek certification of a nationwide subclass of individuals (excluding Defendants; the parents, subsidiaries and affiliates, officers and directors of Defendants or any entity in which Defendants have a controlling interest; and the legal representatives, successors, or assigns of any such excluded persons) who (a) presently own, or during the Class Period owned, property (including mobile homes) in the United States, (b) who entered into a mortgage loan transaction relating to such property with Ameriquest or its predecessors at any time between July 1, 1999 and the present, and (c) who were offered one set

of loan terms during the loan marketing process but received different loan terms at closing (the "Bait and Switch Subclass").

209.    Also excluded from the Bait and Switch Points Subclass are individuals who released claims in the Judicial Council Coordination Proceeding No. 4162 (Superior Court of the State of California, San Mateo County).

210.    The Representative Plaintiffs of the Bait and Switch Subclass are referred to herein as the "Bait and Switch Plaintiffs."

211.    The members of the Bait and Switch Subclass are so numerous and geographically dispersed across the country that joinder of all members is impracticable. While the exact number of Subclass members is unknown to the Plaintiffs at this time, Plaintiffs believe that there are at least thousands of Bait and Switch Subclass members. Detailed information on the Subclass can be ascertained through appropriate discovery and from records maintained by Ameriquest.

212.    The Bait and Switch Plaintiffs' claims are typical of the claims of the members of the Bait and Switch Subclass, as the Bait and Switch Plaintiffs and all other members of the Bait and Switch Subclass were offered a different interest rate at closing than in earlier disclosures and sustained damages arising out of the same wrongful conduct by Ameriquest.

213.    The Bait and Switch Plaintiffs will fairly and adequately represent and protect the interests of the members of the Bait and Switch Subclass and have retained counsel competent and experienced in class action and consumer litigation.

214.    Common questions of law and fact exist as to all members of the Bait and Switch Subclass and predominate over any questions affecting solely individual members of the Subclass. Among these common questions of law and fact common are:

a.    Whether borrowers were offered different interest rates before closing as during closing;

        b.      Whether Ameriquest intended to switched mortgage loan terms at closings;

        c.      Whether Ameriquest failed to provide Notices of Adverse Actions when it engaged in its bait-and-switch scheme;

        d.      Whether Ameriquest has violated ECOA;

        e.      Whether Ameriquest has violated the FCRA;

        f.      Whether Ameriquest has breached its contracts with borrowers;

        g.      Whether the bait-and-switch scheme violates state laws;

        h.      The proper measure of damages and other relief for the Bait and Switch Subclass.

215.    A class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices because joinder of all members is impracticable.  Prosecution of separate actions by individual Bait and Switch Subclass members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Ameriquest.  In addition, due to the vastly unequal market power between the parties, and the fact that many Bait and Switch Subclass members are in ongoing commercial relationships with Ameriquest, a Class action may be the only way, as a practical matter, that the cases will be prosecuted.  The Bait and Switch Plaintiffs foresee no significant difficulties in managing this action as a class action.

    **D.**        **RESPA Illegal Referral Subclass**

216.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on their own behalf and on the behalf of all other members of the subclass described below.

217.    Plaintiffs seek certification of a nationwide subclass of individuals (excluding Defendants; the parents, subsidiaries and affiliates, officers and directors of Defendants or any entity in which Defendants have a controlling interest; and the legal

representatives, successors, or assigns of any such excluded persons) who (a) presently own, or during the Class Period owned, property (including mobile homes) in the United States, (b) who entered into a mortgage loan transaction relating to such property with Ameriquest or its predecessors at any time between March 23, 2004 and the present, and (c) who paid settlement, appraisal, and/or closing related fees that Ameriquest shared with other entities (the "RESPA Illegal Referral Subclass" or "RESPA Subclass").

218.    The Representative Plaintiffs of the RESPA Subclass, namely, Michele and Craig D'Ambrogi, Barbara Ann Becker, Kathryn and William Birkholz, Aris and Ricardo Gay, Karen M. Kaher, Matthew and Tracey Lloyd, Pegi Saunders, and Dorothy Stevens, are referred to herein as the "RESPA Plaintiffs."

219.    The members of the RESPA Subclass are so numerous and geographically dispersed across the country that joinder of all members is impracticable.  While the exact number of Subclass members is unknown to the RESPA Plaintiffs at this time, Plaintiffs believe that there are at least thousands of RESPA Subclass members.  Detailed information on the Subclass can be ascertained through appropriate discovery and from records maintained by Ameriquest.

220.    The RESPA Plaintiffs' claims are typical of the claims of the members of the RESPA Subclass, as the RESPA Plaintiffs and all other members of the RESPA Subclass sustained damages arising out of the same wrongful conduct by Ameriquest and the entities to which it provided or from which it received illegal fees, referrals, or kickbacks.

221.    The RESPA Plaintiffs will fairly and adequately represent and protect the interests of the members of the RESPA Subclass and have retained counsel competent and experienced in class action and consumer litigation.

222.    Common questions of law and fact exist as to all members of the RESPA Subclass and predominate over any questions affecting solely individual members of the Subclass.  Among these common questions of law and fact common are:

a. Whether referrals from creditors to Ameriquest of the identity of the creditors' debtors in exchange for Ameriquest's requiring such debtors to repay their debts is a "thing of value" within the meaning of RESPA;

b. Whether Ameriquest had a common practice of making contracts or agreements with third parties to charge for settlement or closing services that were not in fact performed; and

c. Whether the RESPA Plaintiffs and the RESPA Subclass are entitled to treble damages.

223. A class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices because joinder of all members is impracticable. Prosecution of separate actions by individual RESPA Subclass members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Ameriquest. In addition, due to the vastly unequal market power between the parties, and the fact that many RESPA Subclass members are in ongoing commercial relationships with Ameriquest, a Class action may be the only way, as a practical matter, that the cases will be prosecuted. The RESPA Plaintiffs foresee no significant difficulties in managing this action as a class action.

## III.   LOAN SERVICING CLASS

224. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on their own behalf and on the behalf of all other members of the class described below.

225. Plaintiffs seek certification of a nationwide class of individuals who have had residential loans serviced by Ameriquest at any time between July 1, 1999, and the present (the "Servicing Class").

226. Excluded from the Servicing Class are Defendants; the parents, subsidiaries and affiliates, officers and directors of Defendants or any entity in which Defendants

have a controlling interest; and the legal representatives, successors, or assigns of any such excluded persons.

227.    The Representative Plaintiffs of the Servicing Class, namely, Kevin and Maria Cusanelli, Aris and Ricardo Gay, Matthew and Tracey Lloyd, Pegi Saunders, and Dorothy Stevens, are referred to herein as the "Servicing Plaintiffs."

228.    The members of the Servicing Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to the Servicing Plaintiffs at this time, Plaintiffs believe that there are tens of thousands of Servicing Class members.  Detailed information on the Class can be ascertained through appropriate discovery and from records maintained by Ameriquest.

229.    The Servicing Plaintiffs' claims are typical of the claims of the members of the Servicing Class, as the Servicing Plaintiffs and all other members of the Servicing Class sustained damages arising out of the same wrongful conduct by Ameriquest.  The Servicing Plaintiffs will fairly and adequately represent and protect the interests of the members of the Servicing Class and have retained counsel competent and experienced in class action and consumer litigation.

230.    A class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices because joinder of all members is impracticable.  Prosecution of separate actions by individual Servicing Class members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Ameriquest.  In addition, due to the vastly unequal market power between the parties, and the fact that many Servicing Class members are in ongoing commercial relationships with Ameriquest, a Class action may be the only way, as a practical matter, that the cases will be prosecuted.  The Servicing Plaintiffs foresee no significant difficulties in managing this action as a class action.

231.    Common questions of law and fact exist as to all members of the Servicing Class and predominate over any questions affecting solely individual Servicing members.  Among these common questions of law and fact common are:

a.    Whether the Defendants have engaged in a common course of deceptive, misleading, or unfair conduct, including the acts and practices identified herein in the servicing of loans collateralized by real property and in collecting alleged debts in connection with these loans;

b.    Whether Ameriquest has engaged in a uniform practice of assessing improper late fees;

c.    Whether Ameriquest has improperly and illegally charged customers for force-placed insurance products;

d.    Whether Ameriquest engaged in unlawful collection practices and/or has unfairly initiated collections proceedings;

e.    Whether Ameriquest has systematically misapplied customer payments;

f.    Whether Ameriquest has breached contracts with customers;

g.    Whether Ameriquest has been unjustly enriched;

h.    Whether Servicing Plaintiffs and Servicing Class members are entitled to the injunctive and equitable relief requested herein; and

i.    Whether Servicing Plaintiffs and Servicing Class members have sustained damages, and the proper measure of damages.

## TOLLING OF STATUTES OF LIMITATIONS BY FRAUDULENT CONCEALMENT

232.    Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein, including but not limited to Defendants' practices of concealing that they would not, despite promises, refinance loans.  Despite exercising reasonable diligence, Plaintiffs and members of the Class could not

have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein.

233.     In the alternative, the Defendants should be estopped from relying on any statutes of limitations.  The Defendants have been under a continuing duty to disclose the true character, nature, and quality of their loan origination and servicing practices.  The Defendants owed Plaintiffs and other members of the Class an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601)**
**(By the TILA Plaintiffs on Behalf of Themselves and the TILA Subclass as Against Ameriquest)**

234.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

235.     Ameriquest is a creditor within the meaning of the TILA and Regulation Z, 15 U.S.C. §1602(f) and 12 C.F.R. §226.2(a)(17).

236.     Each of the transactions between the TILA Plaintiffs and the TILA Subclass and Ameriquest is a "consumer credit" transaction as defined in the TILA and Regulation Z. 15 U.S.C. §1602(h) and 12 C.F.R. §226.2(a)(12).

237.     Each of the transactions between the TILA Plaintiffs and the TILA Subclass and Ameriquest is a "closed end" credit transaction, as that term is defined in 12 C.F.R. §226.2(10), and is subject to the requirements for such transactions set forth in 15 U.S.C. §1638 and 12 C.F.R. §226.17 through 226.34.

238.     Because each of the transactions between the TILA Plaintiffs and the TILA Subclass and Ameriquest was secured by the Plaintiffs' homes, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.

239. In connection with each of Plaintiffs' loan transactions, Ameriquest failed to provide statutorily mandated material disclosures pursuant to 15 U.S.C. §§ 1635, 1638 and 12 C.F.R. §§ 226.18, 226.23.

240. The disclosures were and are deficient for one or more of the following reasons:

a. The Notice of Right to Cancel form not include the date the rescission period expires as required by 12 C.F.R. § 226.23(b)(1)(v); and/or

b. The Notice of Right to Cancel form, in violation of 12 C.F.R. § 226.23(b)(2), was a general model rescission form promulgated by the Federal Reserve Board [H-8], even though the transactions required the use of form [H-9];

c. The Notice of Right to Cancel form was contradicted by a "One Week Cancellation" form such that the actual expiration period for the right to cancel was not clearly and conspicuously disclosed; and/or

d. The Truth in Lending disclosure form did not include the word "monthly" in the description of the timing of the scheduled payments in violation of 15 U.S.C. § 1638(a)(6);

e. The disclosures were not clear and conspicuous because they were contradicted by other information provided at the time of the borrowers' loan transactions including, without limitation, information about non-refundable finance charges; and/or

f. The disclosures were not provided until after the loan was consummated.

241. By providing incorrect Notices of Right to Cancel, Ameriquest misinformed the TILA Plaintiffs and the TILA Subclass about the effects of rescission and/or the deadline for exercising the right to cancel.

242. Failure to provide the required disclosures enlarges the rescission period up to three years from the date of the loan transaction. 15 U.S.C. § 1635(a), (f); 12 C.F.R. § 226.23(a)(3). In Massachusetts, failure to provide the required disclosures enlarges the

rescission period up to four years from the date of the loan transaction. M.G.L. c. 140D § 10(a), (f), 209 C.M.R. § 32,23(1)(c).

243. The TILA Plaintiffs and the members of the TILA Subclass are entitled to a declaration that they have the right to rescind their transactions and, if they choose to rescind, they are entitled to cancellation of finance charges in connection with their transaction and to a determination that Ameriquest's property interests in that borrower's real estate is void pursuant to 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d).

244. The TILA Plaintiffs and the TILA Subclass are entitled to damages, costs and attorney's fees pursuant to 15 U.S.C. § 1640(a)(2).

### SECOND CAUSE OF ACTION
**(Violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(b))
(By the Bait and Switch Plaintiffs on Behalf of Themselves and
the Bait and Switch Subclass as Against Ameriquest)**

245. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

246. Ameriquest is a creditor within the meaning of 15 U.S.C. § 1691a(e).

247. The Bait and Switch Plaintiffs and Subclass were applicants within the meaning of 15 U.S.C. § 1691a(b).

248. Ameriquest violated 15 U.S.C. § 1691(d) as to Bait and Switch Plaintiffs and the Bait and Switch Subclass in that it did not provide them with the notice of adverse action as required by the provision when Ameriquest refused to grant credit to the Bait and Switch Plaintiffs and the Bait and Switch Subclass on the terms requested, but pursuant to its bait and switch tactics, provided substantially different terms.

249. As a result of Ameriquest's conduct, Bait and Switch Plaintiffs and the Bait and Switch Class have suffered actual damages, and are entitled to recover such actual damages as well as punitive damages, equitable and declaratory relief, costs and attorney fees.

## THIRD CAUSE OF ACTION
### (Violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(m))
### (By the Bait and Switch Plaintiffs on Behalf of Themselves and
### the Bait and Switch Subclass as Against Ameriquest)

250.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

251.     Ameriquest is a user of consumer reports from consumer reporting agencies, in connection with the extension of credit to consumers, for purposes of 15 U.S.C. § 1681a.

252.     Ameriquest's failure to provide credit on the terms in initially promised to the Bait and Switch Plaintiffs and the Bait and Switch Subclass, and to instead offer credit at less favorable more costly terms, constituted an adverse action, pursuant to 15 U.S.C. § 1681a(k).

253.     The adverse action taken by Ameriquest was based wholly or partly on information contained in a consumer report, or alternatively was based on information obtained from a person other than a consumer reporting agency, bearing upon the credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living of the Bait and Switch Plaintiffs and the Bait and Switch Subclass members.

254.     Ameriquest failed to provide notices of adverse action to each of the Bait and Switch Plaintiffs and the Bait and Switch Subclass members as required by 15 U.S.C. § 1681m(a).

255.     In the alternative, Ameriquest violated the FCRA by failing to provide adverse action notices which provided an accurate or meaningful description of the basis for such adverse taken, or which otherwise fail to comply with FCRA.

256.     Ameriquest's failure to comply with 15 U.S.C. § 1681m(a) was willful or, in the alternative, was negligent.

257.     The Bait and Switch Plaintiffs and the Bait and Switch Subclass members suffered damages as a result of Ameriquest's failure.

## FOURTH CAUSE OF ACTION
**(Violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601)**
**(By the RESPA Plaintiffs on Behalf of themselves and**
**the RESPA Illegal Referral Subclass as Against Ameriquest)**
**(By Barbara Ann Becker as Against Defendant JM Closing Services Inc. and**
**Jonathan Means)**

258.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

259.    The RESPA Plaintiffs and the members of the RESPA Illegal Referral Class were subject to one or more of the following practices:  (a) Ameriquest's requirement that a borrower  repay a debt owed to an existing creditor as a condition of receiving a mortgage refinancing loan; (b) Ameriquest's acceptance of fees for providing real estate settlement services when in fact those fees were for charges unrelated to real estate settlement services; and (c) Ameriquest's agreements with other entities (including by way of example JM Closing Services Inc.) that falsely presented themselves as performing bona fide notary or closing services that they did not in fact perform, charged fees for such services, and kicked-back a portion of such fees to Ameriquest.

260.    The referrals from creditors to Ameriquest of the identity of the creditors' debtors in exchange for Ameriquest's requiring such debtors/prospective borrowers to satisfy their debts to creditors is a "thing of value" within the meaning of RESPA.

261.    Kickbacks for notary and closing services are also "things of value" within the meaning of RESPA.

262.    Ameriquest violated RESPA, §2607(a) and related federal regulations and interpretations by giving a fee, kickback, or thing of value in exchange for the referral of real estate services.

263.    The RESPA Plaintiffs and the members of the RESPA Illegal Referral Subclass seek damages in an amount equal to three times the amount of any charge paid for such settlement services, as well as reasonable costs and attorneys' fees.

264.    In addition, Plaintiff Becker seeks damages, as well as reasonable costs and attorneys' fees, from JM Closing Services Inc. and Jonathan Means.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)
### (By All Representative Plaintiffs on Behalf of Themselves and
### All Classes as Against Ameriquest)

265.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

266.    By its wrongful acts and omissions, including but not limited to making and servicing predatory and unfair mortgage loans described herein, Ameriquest has been unjustly enriched at the expense of Plaintiffs and the Class, and thus Plaintiffs and the Class have been unjustly deprived.

267.    By reason of the foregoing, Plaintiffs and the members of the Class seek restitution from Ameriquest, and an order of this Court disgorging all profits, benefits, and other compensation obtained by Ameriquest from its wrongful conduct.

## SIXTH CAUSE OF ACTION
### (Breach of Contract)
### (By the Discount Points Plaintiffs on Behalf of Themselves and
### the Discount Points Class as Against Ameriquest)

268.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

269.    Ameriquest formed contracts with prospective borrowers by charging loan discount fees in exchange for providing a discounted interest rate.

270.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

271.    Ameriquest formed contracts with prospective borrowers by charging loan discount fees in exchange for providing a discounted interest rate.  Ameriquest then failed to provide the required discount.

272.    Ameriquest also provided loan documents describing a "par" rate loan as one bearing an initial rate which is equal to an "index" rate, plus a "margin."

273. These same documents identify the "index," most commonly, as the "average of the London Interbank Offered Rate (LIBOR) for six month dollar denominated deposits in the London market" and the "margin" as a specified number of percentage points.

274. The Discount Points Plaintiffs and Members of the Discount Points Subclass received loans at interest rates which were at or above Ameriquest's "par rate," even though each loan involved substantial payments for a rate discount.

275. By failing to provide agreed-upon discounted interest rates, Ameriquest breached the contracts, causing damages.

276. Ameriquest's breach of contract is in violation of the common law of contract of the State of California, from where the contracts originated, and/or the contract laws in every state in which Ameriquest does business.

277. As a result of Ameriquest's breach of contract, the Discount Points Plaintiffs and the members of the Discount Point Subclass have suffered and continue to suffer damages in an amount to be determined according to proof at time of trial.

278. By failing to provide agreed-upon discounted interest rates, Ameriquest breached the contracts, causing damages.

279. Ameriquest's breach of contract is in violation of the common law of contract of the State of California, from where the contracts originated, and/or the contract laws in every state in which Ameriquest does business.

280. As a result of Ameriquest's breach of contract, the Discount Points Plaintiffs and the members of the Discount Points Subclass have suffered and continue to suffer damages in an amount to be determined according to proof at time of trial.

## SEVENTH CAUSE OF ACTION
### (Breach of Contract)
### (By the Bait and Switch Plaintiffs on Behalf of Themselves and the Bait and Switch Subclass as Against Ameriquest)

281. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

282.     Ameriquest formed implied, oral, and/or unilateral contracts with prospective borrowers by common offering terms to prospective borrowers prior to closing.

283.     By delivering different terms at closing than the ones initially promised, Ameriquest breached the contracts, causing damage.

284.     Ameriquest's breach of contract is in violation of the common law of contract of the State of California, from where the contracts originated, and/or the contract laws in every state in which Ameriquest does business.

285.     As a result of Ameriquest's breach of contract, the Bait and Switch Plaintiffs and the members of the Bait and Switch Subclass have suffered and continue to suffer damages in an amount to be determined according to proof at time of trial.

### EIGHTH CAUSE OF ACTION
**(Breach of Contract)**
**(By the Servicing Plaintiffs on Behalf of Themselves and**
**the Servicing Class as Against Ameriquest)**

286.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

287.     Ameriquest serviced the Servicing Plaintiffs' loans.

288.     The Servicing Plaintiffs and the Servicing Class had loan agreements that set forth dates by which monthly principal and interest payments were due, dates providing a grace period before the end of which late fees could not be assessed, and other payment and fee terms including, without limitation, provisions regarding hazard insurance and prepayment penalties.

289.     The Servicing Plaintiffs and the Servicing Class satisfied their obligations by making timely payments of principal and interest on their loans and by properly maintaining hazard insurance on their property.

290.     By charging fees that were not authorized by the loan contracts, such as late fees on payments that were not late, insurance premiums on properties that were already

insured, and prepayment penalties that were not due, Ameriquest breached its contracts with the Servicing Plaintiffs and the Servicing Class.

291.    Ameriquest's breach of contract is in violation of the common law of contract of the State of California, from where the contracts originated, and/or the contract laws in every state in which Ameriquest does business.  All conditions precedent to the filing of this action have been satisfied or waived or would be futile based on Ameriquest's pattern and practice of unlawful conduct in the servicing of mortgage loans.

292.    As a result of Ameriquest's breach of contract, the Servicing Plaintiffs and the members of the Servicing Class have suffered and continue to suffer damages in an amount to be determined according to proof at time of trial.

## NINTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)
### (By the Discount Points, Bait and Switch, and Servicing Plaintiffs and Class and Subclass Members as Against Ameriquest)

293.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

294.    All contracts between Plaintiffs and members of the Classes on one hand, and Ameriquest on the other, included a duty of good faith and fair dealing.  Pursuant to an implied covenant in the subject contracts, Ameriquest had a duty not to do anything which would deprive the borrowers of the benefits of those contracts, and had a duty to do everything that the contracts presupposed each of the parties would do to accomplish the purpose or purposes of the subject contracts.

295.    Ameriquest acted in breach of the implied covenant of good faith and fair dealing, and their duties thereunder.

296.    As a result of Ameriquest's wrongful conduct, the Discount Points, Bait and Switch, and Servicing Plaintiffs and members of the Discount Points, Bait and Switch, and Servicing Class and Subclasses have suffered and continue to suffer economic losses and other

damages, all in an amount to be determined according to proof at time of trial, including attorney fees and reasonable costs.

## TENTH CAUSE OF ACTION
### (Declaratory and Injunctive Relief)
### (By All Representative Plaintiffs on Behalf of Themselves and All Class Members as Against the Defendants)

297.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

298.    On each cause of action stated above, Plaintiffs and the Class will be irreparably injured in the future by the Defendants' misconduct.

299.    Plaintiffs, on behalf of themselves and all Class members, seek a judgment declaring that the Defendants must cease the activities described herein, provide Class Members with the opportunity to rescind their loans, and provide for adequate procedures and policies for the immediate and complete refund of the improper charges and insurance premiums unlawfully assessed, as well as the proper allocation of misapplied payments.

300.    Plaintiffs and the Class members do not have a plain, adequate, speedy, or complete remedy at law to address the wrongs alleged in this Complaint, and will suffer irreparable injury as a result of the Defendants' misconduct unless injunctive and declaratory relief is granted.

301.    By reason of the foregoing, Plaintiffs and the Class members are entitled to declaratory and injunctive relief as set forth herein.

## ELEVENTH CAUSE OF ACTION
### (Unfair, Unlawful, and Deceptive Business Acts and/or Practices In Violation of California Business & Professions Code §§ 17200 *et seq.*)
### (By All Representative Plaintiffs on Behalf of Themselves and all Class Members as Against Ameriquest)

302.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

303.    This cause of action is brought by all Plaintiffs on behalf of a nationwide Class as against the Ameriquest Defendants, each of which is based in California.

304. All of the conduct at issue in the Complaint either occurred in California by virtue of the centralized business practices of Ameriquest or was based in policies and procedures that originated from Ameriquest's home offices in California.

305. California Business & Professions Code §§ 17200 et seq. prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

306. The Ameriquest Defendants engaged in unlawful, unfair or fraudulent business acts and practices in violation of California Business & Professions Code §§ 17200, et seq., by engaging in such unlawful conduct as: (a) engaging in aggressive "bait and switch" financing solicitation practices in which they promise certain terms and offer other, less advantageous terms at loan closings; (b) misleading consumers with loans that contain confusing interest variable interest rate structures; (c) providing loans with charges for "discount" fees or points either in exchange for rate discounts that were not provided or for rate discounts that were provided without sufficient information to allow consumers to evaluate the cost of the fees or points; (d) requiring and collecting excessive, improper, or illegal prepayment penalties, and duplicative/excess closing costs; (e) failing to provide statutorily-mandated Notice of Right to Cancel or providing borrowers with a copy of the required disclosures only after the loan documents were signed; (f) falsely promising early refinancing options or providing early refinancing on terms that stripped equity from consumers' property; (g) assessing improper or excessive fees in violation of loan contracts or applicable federal laws; (h) failing to make disclosures required under the Real Estate Settlement Procedures Act; (i) improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees; (j) misapplying or failing to apply customer payments; (k) force placing insurance on properties that already have insurance coverage; (l) violating its contractual obligations; and (m) failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed.

307. The Ameriquest Defendants' conduct is unlawful in that it is in violation of one or more of such statutes and regulations as, for example, (a) California Civil Code

§2954.4 (providing that a late charge may not be imposed on any installment within ten days of its due date); (b) the Truth in Lending Act; (c) the Fair Credit Reporting Act; (d) the Equal Credit Opportunity Act; (e) the Real Estate Settlement Procedures Act; (f) the Fair Housing Act; and (g) the Unruh Act.

308.    The foregoing acts and practices are also unfair and/or fraudulent within the meaning of § 17200 in that they are likely to mislead the public as to the amounts actually owed on their loans, and in that they force customers to pay amounts they do not actually owe under threat of losing their homes.

309.    The foregoing acts and practices have caused substantial harm to the Plaintiffs, the general public, and the members of the Classes.

310.    By reason of the foregoing, the Ameriquest Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to the Plaintiffs, the general public, and the members of the Classes, and/or be enjoined from continuing in such practices pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

## TWELFTH CAUSE OF ACTION
### (Unfair or Deceptive Acts or Practices in Violation of California Civil Code §§ 1750 *et seq.*)
### (By All Representative Plaintiffs on Behalf of Themselves and All Class Members as Against Ameriquest)

311.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

312.    This cause of action is brought by all Plaintiffs on behalf of a nationwide Class as against the Ameriquest Defendants, each of which is based in California.

313.    All of the conduct at issue in the Complaint either occurred in California by virtue of the centralized business practices of Ameriquest or was based in policies and procedures that originated from Ameriquest's home offices in California.

314. By its wrongful conduct as alleged herein, Ameriquest has created, engaged in and/or participated in unfair practices, in violation of the Consumers Legal Remedies Act, California Civil code sections 1750 *et seq.*

315. Ameriquest has engaged in unfair or deceptive acts or practices intended to result in the sale of their goods and services in violation of California Civil Code §§1750 *et seq.*, including but not limited to: (a) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, characteristics, status, affiliation, or connection which he or she does not have, in violation of section 1770(a)(5); and (b) that a transaction confers or invokes rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, in violation of section 1770(a)(14); and (c) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, in violation of section 1770(a)(16).

316. Pursuant to § 1780, Plaintiffs and members of the Classes seek to enjoin the Ameriquest Defendants from engaging in their unfair practices as alleged herein.

317. Ameriquest has previously been put on notice within the meaning of Cal. Civ. Code § 1782 of its alleged violations of the CLRA through, for example, the CLRA allegations in the *Knox v. American Mortgage Co.* complaint filed on January 14, 2005. Notwithstanding this notice, Ameriquest did not remedy the alleged violations of the CLRA within 30 days after service of the *Knox* complaint, and has not remedied the alleged violation. As such, Plaintiffs and Class members are entitled to seek and recover actual damages, punitive damages and any other relief which this Court deems proper against Ameriquest.

318. As a proximate result of Ameriquest's violations of the CLRA, Plaintiffs and the Class have suffered damages.

319. Many Class members, as Ameriquest knows or should know, are seniors and/or persons with disabilities as those terms are defined in Civil Code § 1761(f) and (g). Said Class members have suffered substantial economic and other damages resulting from

Ameriquest's unlawful conduct, including the loss of assets essential to the health and welfare of the seniors and persons with disabilities. The seniors and persons with disabilities are substantially more vulnerable than other members of the public to Ameriquest's unlawful conduct due to their age, poor health or infirmity, impaired understanding and/or disability. Accordingly, pursuant to Civil Code § 1780, these seniors and persons with disabilities are entitled to up to $5,000 in addition to the other damages otherwise available under California state law, including punitive damages.

320. The actions described above constitute unlawful, unfair and/or defective acts or practices within the meaning of the Consumer Legal Remedies Act. The Plaintiffs and the Class Members are entitled to actual damages, statutory damages, punitive damages, restitution and disgorgement of any funds received that was a result of the acts and omissions complained of herein and injunctive relief to prevent the use or employment by Ameriquest of the practices alleged herein, along with costs, attorney's fees and any other relief which the Court deems proper.

## THIRTEENTH CAUSE OF ACTION
**(Violation of State Consumer Protection and Unfair and Deceptive Trade Practices Acts)**
**(By Origination and Servicing Representative Plaintiffs on Behalf of Themselves and All Origination and Servicing Subclass Members as Against Ameriquest)**

321. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

322. In the alternative to a nationwide class under the California Consumer Legal Remedies Act and Section 17200 of the California Business and Professions Code, the Representative Plaintiffs assert a claim arising under each state's consumer protection act and/or unfair and deceptive trade practices act.

323. By its wrongful conduct as alleged herein, Ameriquest has created, engaged in and/or participated in unfair practices, in violation of each state's consumer protection or deceptive trade practices statutes, including but not limited to such statutes in the states where the named plaintiffs in this action reside (such as the Connecticut Unfair Trade

Practices Act, § 42-110a; the Florida Deceptive Trade Practices Act, § 501.201; the Maryland Consumer Protection Act, § 13-101; the Massachusetts General Law, chap. 93.A; the Minnesota Deceptive Trade Practices Act, Minn. Stat. §§ 58.13 and 325D, F; the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1; the New York General Business Law, § 349; the Ohio Consumer Sales Practices Act, § 1345.01; and the Pennsylvania Consumer Protection Law, 73 P.S. § 201-1.

324.    Ameriquest committed the actions described herein knowingly.

325.    Ameriquest's practices caused damage.

326.    The Origination and Servicing Subclass Plaintiffs and Class Members are entitled to, as applicable, actual damages, statutory damages, punitive damages, rescission, restitution and disgorgement of any funds received that was a result of the acts and omissions complained of herein and injunctive relief to prevent the use or employment by Ameriquest of the practices alleged herein, along with costs, attorney's fees and any other relief which the Court deems proper.

## FOURTEENTH CAUSE OF ACTION
### (Individual Claims Under TILA)
### (By the Individuals Below as Against Ameriquest)

327.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

328.    Plaintiffs Timothy and Francis Adamowicz rescinded their mortgage with Ameriquest having sent a notice of cancellation dated August 29, 2006.

329.    Plaintiff Christopher Bourassa rescinded his mortgage with Ameriquest having sent a notice of cancellation dated August 22, 2006.

330.    Plaintiff Venitra Brown rescinded her mortgage with Ameriquest having sent a notice of cancellation dated October 20, 2006.

331.    Plaintiffs Edrick and Debra Centeno rescinded their mortgage with Ameriquest having sent a notice of cancellation dated October 10, 2006.

332.    Plaintiff Vaughn DeBold rescinded his mortgage with Ameriquest having sent a notice of cancellation dated July 18, 2006.

333.    Plaintiffs Gregory and Marcell DeMeo rescinded their mortgage with Ameriquest having sent a notice of cancellation dated November 20, 2006.

334.    Plaintiff James Devlin rescinded his mortgage with Ameriquest having sent a notice of cancellation dated January 13, 2006.

335.    Plaintiffs Timothy and Cynthia Dion rescinded their mortgage with Ameriquest having sent a notice of cancellation dated February 17, 2006.

336.    Plaintiff Karen Dudeck rescinded multiple mortgages with Ameriquest having sent notices of cancellation dated September 19, 2006 and November 12, 2006.

337.    Plaintiff Christopher Gabrielli rescinded multiple mortgages with Ameriquest having sent a notice of cancellation dated January 27, 2006.

338.    Plaintiff Lynn Gay rescinded multiple mortgages with Ameriquest having sent a notice of cancellation dated November 1, 2004.

339.    Plaintiff Harriet Holder rescinded multiple mortgages with Ameriquest having sent a notice of cancellation dated February 11, 2005.

340.    Plaintiff Patricia Masson rescinded her mortgage with Ameriquest having sent a notice of cancellation dated February 9, 2006.

341.    Plaintiff Duval Naughton rescinded his mortgage with Ameriquest having sent a notice of cancellation.

342.    Plaintiffs John and Kathleen O'Callaghan rescinded his mortgage with Ameriquest having sent a notice of cancellation dated March 31, 2006.

343.    Plaintiff Glen Powell rescinded multiple mortgages with Ameriquest having sent a notice of cancellation dated June 21, 2006.

344.    Plaintiff Michele Powell rescinded multiple mortgages with Ameriquest having sent a notice of cancellation dated November 17, 2006.

345.    Plaintiff Michael Russo rescinded his mortgage with Ameriquest having sent a notice of cancellation dated August 31, 2006.

346.    Plaintiff Kenneth Sawyer rescinded his mortgage with Ameriquest having sent a notice of cancellation dated April 28, 2006.

347.    Plaintiffs Frank and Linda Shea rescinded their mortgage with Ameriquest having sent a notice of cancellation dated March 24, 2006.

348.    Plaintiffs Daisybel and William Tolbert rescinded their mortgage with Ameriquest having sent notices of cancellation dated March 30, 2005 and November 30, 2005.

349.    Plaintiffs David and Janet Wakefield rescinded multiple mortgages with Ameriquest having sent a notice of cancellation dated October 27, 2004.

350.    Plaintiffs Frank and Martha White rescinded their mortgage with Ameriquest having sent a notice of cancellation dated March 3, 2005.

351.    Plaintiffs Joshua Wilgoren rescinded his mortgage with Ameriquest having sent a notice of cancellation dated February 28, 2006.

352.    Plaintiffs Scott Ventola and Steven Bourassa rescinded their mortgage with Ameriquest having sent a notice of cancellation dated November 30, 2006.

353.    Plaintiffs Latonya and Duwayne Williams rescinded their mortgage with Ameriquest having sent a notice of cancellation dated January 15, 2004.

354.    Plaintiffs James and Jennifer Jewell rescinded their mortgage with Ameriquest having sent a notice of cancellation on January 26, 2006.

355.    This Consolidated Amended Complaint constitutes an additional notice of rescission to Ameriquest by each Plaintiff named above.

356.    Each Plaintiff rescinded based on one or more of the statutory violations described in the First Cause of Action *supra*.

357.    In each case Ameriquest refused to honor the Plaintiffs' rescission and refused to take the actions required by 15 U.S.C. § 1635(b) and 12 C.F.R. §226.23(d).

358.    The Individual Plaintiffs identified above are entitled to a declaratory judgment to enforce their rescissions including, without limitation, that their mortgages are void and that they are not liable for any finance charges in connection with their transactions and to

statutory damages in the amount of $2,000 for Ameriquest's failure to honor their rescissions, together with costs and attorney's fees and other relief as allowed by law.

### FIFTEENTH CAUSE OF ACTION
**(Common-Law Fraud)**
**(By Plaintiffs Keri Capasso, Richard A. Madrazo, Yamil Montanez,**
**Pegi Saunders, Matthew and Tracey Lloyd, Dorothy Stevenson, and**
**Aris and Ricardo Gay, Steven H. Ungar as Against Ameriquest)**

359.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

360.    The conduct of Ameriquest constitutes a fraud against the Plaintiffs. Ameriquest made materially false representations, concealments and/or non-disclosures of fact to Plaintiffs in connection with loan discount fees, loan origination fees, and/or loan servicing, knowing the falsity of such representations, concealments and non-disclosures and with the intent to defraud Plaintiffs.

361.    Plaintiffs did not receive a discount and/or avoid paying loan origination fees.

362.    At the time said misrepresentations and omissions of material facts were made, Plaintiffs were ignorant of their falsity and believed them to be true.  Plaintiffs reasonably and/or justifiably relied upon the false representations, concealments and non-disclosures in purchasing goods and services from Ameriquest.

363.    As a result, Plaintiffs sustained damages.

364.    Plaintiffs are entitled to compensatory, punitive and exemplary damages.

### SIXTEENTH CAUSE OF ACTION
**(Intentional and/or Negligent Misrepresentation)**
**(By Plaintiffs Keri Capasso, Deborah Juillerat, Richard A. Madrazo,**
**Yamil Montanez, Pegi Saunders, Matthew and Tracey Lloyd, Dorothy Stevenson,**
**and Aris and Ricardo Gay, Steven H. Ungar, Latonya and Dwayne Williams,**
**and Daisybel and William F. Tolbert as Against Ameriquest)**

365.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

366.     Ameriquest made intentional or negligent misrepresentations to Plaintiffs, with the intent of having Plaintiffs finance with Ameriquest or continue to remain with Ameriquest rather than refinancing with another servicer.

367.     These misrepresentations including but not limited making materially false representations, concealments and/or non-disclosures of fact to Plaintiffs in connection with loan discount fees, loan origination fees, assurances of prompt refinancing, and/or loan servicing, knowing the falsity of such representations, concealments and non-disclosures.

368.     Plaintiffs did not receive a discount and/or avoid paying loan origination fees.

369.     At the time said misrepresentations and omissions of material facts were made, Plaintiffs were ignorant of their falsity and believed them to be true.  Plaintiffs reasonably and/or justifiably relied upon the false representations, concealments and non-disclosures in purchasing goods and services from Ameriquest.

370.     As a result, Plaintiffs sustained damages.

371.     Plaintiffs are entitled to compensatory, punitive and exemplary damages as well as equitable remedies.

<u>**SEVENTEENTH CAUSE OF ACTION**</u>
**(Violation of the Florida Mortgage Lending Act, § 494.0025, Florida Statute)**
**(By Plaintiffs LaTonya and Dwayne Williams, Daisybel and William F. Tolbert, George and Crisella Barber, Debra Holloway, and Laurence Osten on Behalf of Themselves and a Subclass of Florida Residents as Against Ameriquest)**

372.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

373.     This claim is brought by the Florida Plaintiffs and a subclass of other Florida residents who obtained a home loan issued by Ameriquest on or after  April 1, 2001.

374.     Common questions of law and fact exist as to all members of the Florida Subclass and predominate over questions solely affecting individuals, including whether Ameriquest the Florida Mortgage Lending Act, and whether Plaintiffs and the Subclass are entitled to statutory damages, injunctive and declaratory relief, and/or punitive damages.

375.    Through the conduct described herein, Ameriquest has systematically violated the Florida Mortgage Lending Act by:

a.    knowingly and willfully concealing material facts from Plaintiffs and the Subclass;

b.    engaging in a course of business which operates and continues to operate an unfair, unconscionable, and deceptive trade practice upon Plaintiffs and the Subclass through the concealment of material terms in connection with the sale of mortgage loans; and

c.    making or using false writings or documents, knowing them to contain false statements or entries.

376.    Such violations by Ameriquest include the following conduct:

a.    Selling mortgage loans to Plaintiffs and the Subclass in a manner intended to hide the true cost of various loan terms and the true disadvantages of those loan terms to Plaintiffs and the Subclass;

b.    failing to provide customers with good faith estimates of the closing costs prior to closing;

c.    Misrepresenting, concealing, or failing to disclose loan terms including, but not limited to, the disclosure of the risks and ramifications of an ARM, including: (a) possible increase in monthly payments after a certain period of time; (b) no guarantee that the property value of their residence will increase thereby foreclosing an option to refinance at a later date; (c) the recommendation that an ARM should not be chosen by a homeowner who will stay in the mortgage residence for more than 10 years due to the escalation in future payments;

d.    Inflating property appraisal values to qualify borrowers for loans they cannot afford and/or to maximize loan amounts, resulting in excessive loans-to-value ratios;

e.    Fabricating income and employment information related to the cost of loans, particularly in comparison with existing obligations;

f.      Presenting incomplete or misleading information related to the cost of loans, particularly in comparison with existing obligations;

g.      Concealing the existence or length of prepayment penalty provisions;

h.      Utilizing unfair and/or punitive prepayment penalty provisions to discourage and/or prevent Plaintiffs and the Subclass from refinancing their loans at lower rates with Ameriquest's competitors;

i.      Charging discount points that are not justified by any discount provided to Plaintiffs and the Subclass; and

j.      Failing to act in good faith and deal fairly in its interactions with the Plaintiffs and the Subclass, including, without limitations, in its form documents.

377.    As a result of Ameriquest's wrongful conduct, the Florida Plaintiffs and the Florida subclass have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to, the monies paid to Ameriquest, loss of equity, funds spent to mitigate economic losses, and harm to credit, all in an amount to be determined according to proof at time of trial.

**EIGHTEENTH CAUSE OF ACTION**
**(Violation of the Fair Housing Act, 42 U.S.C. § 3601)**
**(By Plaintiffs Nona and Albert Knox, Maria Torres,**
**and Heladio and Maria Arellanes as Against Ameriquest)**

378.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

379.    Plaintiffs are minorities.

380.    Plaintiffs are informed and believe, and on that basis allege, that Ameriquest discriminated against them on the basis of their race and/or gender, in the terms and conditions of the loan contracts entered into between Plaintiffs, on the one hand, and Ameriquest on the other.

381.    Plaintiffs have been damaged as a result of Ameriquest's discriminatory conduct, and seek damages and equitable and injunctive remedies, including practice changes.

### NINETEENTH CAUSE OF ACTION
**(Violation of the Unruh Act, California Civil Code § 3601)**
**(By Plaintiffs Nona and Albert Knox, Maria Torres,**
**and Heladio and Maria Arellanes as Against Ameriquest)**

382.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

383.    Plaintiffs are informed and believe, and on that basis allege, that Ameriquest discriminated against them on the basis of race, national origin, and/or gender, in the terms and conditions of the loan contracts entered into between Plaintiffs, on the one hand, and Ameriquest, on the other.  Specifically, the terms and conditions offered to Plaintiffs were less favorable than those offered by Ameriquest to borrowers not better qualified than Plaintiffs but at different race, national origin and/or gender.

384.    Plaintiffs have been damaged as a result of Ameriquest's discriminatory conduct.

### TWENTIETH CAUSE OF ACTION
**(Negligent Training and Supervision)**
**(By Plaintiffs Nona and Albert Knox, Maria Torres,**
**and Heladio and Maria Arellanes as Against Ameriquest)**

385.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

386.    Under California law, Ameriquest owed Plaintiffs a duty of reasonable care to train and supervise its employees and agents to comply with all applicable laws, rules and/or regulations and in accordance with professional, industry-wide best practices standards. These laws, rules, regulations and industry-wide best practices standards were enacted to protect individuals such as Plaintiffs.

387.    Ameriquest breached its duty to Plaintiffs by failing to adequately train and supervise its employees and agents to comply with professional, industry-wide best practices

standards and by allowing their employees and agents to operate without such adequate training or supervision.

388.     Moreover, Ameriquest's conduct fell below the standard of care as it trained and/or actively encouraged its employees and agents to act in violation of applicable laws, rules and/or regulations and professional, industry-wide best practices standards.

389.     Ameriquest failed to take reasonable steps to protect Plaintiffs though it knew or had reason to know that its failure to adequately train or supervise its employees and/or agents would result in the detriment of Plaintiffs.

390.     As a proximate cause of Ameriquest's conduct, Plaintiffs suffered damages according to proof.

391.     Ameriquest's negligent training and/or supervision was willful, wanton and in conscious disregard of Plaintiffs' rights.  Accordingly, Plaintiffs are entitled to recover punitive damages in an amount to be established at trial.

### TWENTY-FIRST CAUSE OF ACTION
#### (Violation of the Georgia Fair Lending Act)
#### (By Plaintiffs Johnnie Ross, Charles Meadows, Joseph and Nicole Riggins on Behalf of Themselves and a Subclass of Georgia Residents as Against Ameriquest)

392.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

393.     In home loans with Georgia residents, Ameriquest commonly charges and collects points and fees that exceed the statutory threshold to constitute "high-cost" home loans as defined by the Georgia Fair Lending Act ("GAFLA"), Ga. Code Ann. § 7-6A-1 *et seq.* Ameriquest has engaged in a common practice and pattern of issuing high-cost home loans to Georgia residents which violate the limitations, requirements and consumer protections of the GAFLA, § 7-6A-7.

394.     GAFLA authorizes class actions.  GAFLA, § 7-6A-7(d). This claim is brought by the Georgia Plaintiffs and a subclass of Georgia residents who obtained a home loan issued by Ameriquest on or after October 1, 2002.

395.    Ameriquest has issued to Plaintiffs and the Subclass high-cost home loans in violation of GAFLA, §§ 7-6A-5.  Ameriquest has imposed fees and points that exceed 5 percent of the total  loan amount.  These loans are "high cost loans" as defined under Georgia law; however, Ameriquest has failed to comply with GAFLA's requirements and limitations applicable to "high cost home loans."  As a direct and proximate result of Ameriquest's breaches and violations, Plaintiffs and the Georgia Subclass have suffered economic injury and damages.

396.    Common questions of law and fact exist as to all members of the Georgia Subclass and predominate over questions solely affecting individuals, including whether Ameriquest violated GAFLA, and whether Plaintiffs and the Subclass are entitled to statutory damages, injunctive and declaratory relief, and/or punitive damages.

397.    As a result of Ameriquest's violation of GAFLA as relates to high-cost loans, § 7-6A-5, Ameriquest is liable to the Georgia Plaintiffs and the Georgia subclass for actual damages, statutory damages of twice the interest paid, forfeiture of all future interest, punitive damages, costs and attorneys' fees, equitable claims, injunctive relief, class actions, rescission rights of up to 5 years after consummation, and potential criminal prosecution for knowing violations.

## TWENTY-SECOND CAUSE OF ACTION
### (Negligence)
**(By Pegi Saunders, Matthew and Tracey Lloyd, Dorothy Stevenson, and Aris and Ricardo Gay as Against AMC and Ameriquest Capital Holding Corporation)**

398.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

399.    Under Ohio common law, Ameriquest had a duty to represent each Plaintiff and their respective best interests in their individual transactions.  As the representative of each of the Plaintiffs, Ameriquest negligently failed to apply and.  follow customary and usual skills and procedures in regular use by ethical members of its industry occupying its position in the transactions.

400.    The actions of Ameriquest are the proximate cause of the injury to each Plaintiff.

401.    As a result of the negligence of Ameriquest, each Plaintiff has been damaged in an amount that he or she is unable to determine with specificity at this time but is an amount believed to be at least $500,000.00 in each instance by each Plaintiff.

## TWENTY-THIRD CAUSE OF ACTION
### (Violations of Violation of Ohio's Mortgage Broker's Act)
### (By Pegi Saunders, Matthew and Tracey Lloyd, Dorothy Stevenson, and Aris and Ricardo Gay as Against AMC and Ameriquest Capital Holding Corporation)

402.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

403.    Ameriquest (in that they acted as its own broker), is a mortgage broker" as defined in Ohio Revised Code §1322.01 (E), and, therefore, ARE subject to the requirements of Ohio Revised Code §1322.01 *et. seq.* Notwithstanding its mortgage broker status, Ameriquest knowingly concealed information, which federal statutes and regulations required it to be disclose to its clients, *i.e.*, the Plaintiffs.

404.    Ameriquest entered into the mortgage transactions with each Plaintiff knowing that he or she would not be able to repay his or her loan obligation in full due to the debt to income ratio and other information shown on their respective loan applications.

405.    Ameriquest fraudulently induced each Plaintiff, into signing a note and mortgage that included an unconscionable loan total with the knowledge that such a requirement is contrary to applicable law and public policy.

406.    Ameriquest concealments and misrepresentations were made maliciously, with knowledge of their falsity.

407.    Each Plaintiff justifiably relied upon Ameriquest's false and fraudulent representations in making their respective mortgage loan agreements.

408.     As a result of the frauds perpetrated by Ameriquest, each Plaintiff is entitled to damages in an amount that she or he is unable to determine at this time but believes to be at least in the amount of $500,000.00.

409.     As a result of Ameriquest violations of Ohio Revised Code §1322.07 (B)(C), Ameriquest is liable to each Plaintiff, pursuant to Ohio Revised Code §1322.11 for damages in an amount to be determined at trial pursuant to O.R.C. §1322.00(A)(1-3) and a statutory injunction prohibiting such violations pursuant to O.R.C. §1322.1 1(B)(A).

### TWENTY-FOURTH CAUSE OF ACTION
**(Breach of Fiduciary Duty)**
**(By Pegi Saunders, Matthew and Tracey Lloyd, Dorothy Stevenson, and
Aris and Ricardo Gay as Against AMC
and Ameriquest Capital Holding Corporation)**

410.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

411.     A fiduciary relationship is one in which special confidence and trust, are placed in the integrity and fidelity of another, and there is a resulting position of superiority or influence.

412.     Ameriquest had a fiduciary relationship with each Plaintiff in that each contracted Ameriquest to provide mortgage loan services, which necessarily involve the duty of representing each Plaintiff best interests throughout the mortgage transaction.

413.     Ameriquest breached its fiduciary duties by arranging a mortgage loan on financing terms that in each instance were in each instance contrary to each Plaintiff's, interest.

414.     As a direct and proximate result of the actions of Ameriquest, each Plaintiff has suffered financial and emotional injury in an amount not yet ascertainable, but which will be proven at trial.

415.     The actions of Ameriquest constitute the tort of breach of fiduciary duty.

416.     These actions were taken with malice, ill will, and/or reckless indifference toward each Plaintiff.  Therefore, each Plaintiff is entitled to receive actual, compensatory and punitive damages.

## TWENTY-FIFTH CAUSE OF ACTION
### (Negligent Misrepresentation and Intentional Infliction of Emotional Distress)
### (By Pegi Saunders, Matthew and Tracey Lloyd, Dorothy Stevenson, and Aris and Ricardo Gay as Against AMC and Ameriquest Capital Holding Corporation)

417.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

418.     During the course of Ameriquest's dealings with Plaintiffs, Ameriquest negligently and/or intentionally, by its acts and/or omissions, made material misrepresentations of fact, and was negligent in a number of instances, including but not limited to, stating that Plaintiffs were obligated to pay amounts that were improperly or illegally accessed.

## TWENTY-SIXTH CAUSE OF ACTION
### (Accounting)
### (By Plaintiffs Thomas B. and Elvie Doherty, Raymond and Rebecca Carlson, Patrick Galvan, and Robert and Debra Peabody as Against Ameriquest)

419.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

420.     Ameriquest had a duty and obligation to properly inform and represent to Plaintiffs the correct and accurate interest rates for which they qualify when Plaintiffs applied for loans, or, in the alternative, not to conceal from or mislead them as to the actual interest rates they are being assessed.

421.     Ameriquest failed to satisfy that duty.

422.     As a result, Plaintiffs have paid excessive interest demanded by Ameriquest, and have been injured and suffered financial loss.  Unless corrected, Plaintiffs will continue to suffer.

423.     Ameriquest, by the actions above alleged, has collected money from the Plaintiffs under such circumstances that in equity and good conscience it cannot retain and which in justice and fairness belong to Plaintiffs.

424.     Ameriquest should be ordered to account to Plaintiffs to ensure that only the proper and permitted amount is retained by Ameriquest.  Ameriquest should be ordered to

recalculate each excessive interest charge demanded and collected from Plaintiffs, and to refund all improper and excessive amounts collected.

425.    Plaintiffs pray for an Order appointing a special master or referee to determine the amount by which they have been overcharged, together with such other further or different relief as this Court deems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the Classes and the Subclasses, request judgment and relief as follows:

426.    Certification of the case as a class action on behalf of the proposed Classes and Subclasses and designation of Plaintiffs as representatives of the Classes and Subclasses and their counsel of record as Class Counsel;

427.    Restitution, reformation of contract and disgorgement according to proof;

428.    Rescission and/or an opportunity to rescind;

429.    Declaratory and injunctive relief against Ameriquest to prevent future wrongful conduct;

430.    Actual, compensatory, statutory, treble, exemplary and/or punitive damages according to proof;

431.    Prejudgment interest at the maximum legal rate;

432.    Costs of the proceedings herein;

433.    Reasonable attorneys' fees;

434.    An accounting; and

435.    All such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury for all claims so triable.

Respectfully submitted,

Dated: December 6, 2006

_/s/ Kelly M. Dermody_

Kelly M. Dermody

Kelly M. Dermody (CA Bar No. 171716)
Caryn Becker (CA Bar No. 196947)
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Rachel Geman (NY Bar No. RG 0998)
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

_/s/ Gary Klein_

Gary Klein

Gary Klein
Elizabeth Ryan
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA 02111-2810
Telephone: (617) 357-5500 ext. 15
Facsimile: (617) 357-5030

_/s/ Jill H. Bowman_

Jill H. Bowman

Jill H. Bowman
Terry Smiljanich
JAMES, HOYER, NEWCOMBER &
  SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL 33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

_Plaintiffs' Co-Lead Counsel_

_____/s/ Marvin A. Miller_____
     Marvin A. Miller

Marvin A. Miller
MILLER FAUCHER AND CAFFERTY LLP
30 N. LaSalle Street, Suite 3200
Chicago, IL 60602
Telephone: (312) 782-4800
Facsimile: (312) 782-4485

*Plaintiffs' Liaison Counsel*

Samuel H. Rudman (SR-7957)
Evan J. Kaufman (EJK-8042)
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173

Michael D. Donovan
DONOVAN SEARLES LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile: (215) 732-8060

William H. Crowder (20102)
Susan Ford Bedor (154702)
Gregory L. Paulson (34517)
CROWDER, BEDOR & PAULSON, LLP
555 West Seventh Street, Suite 201
St. Paul, MN 55201
Telephone: (651) 225-8330
Facsimile: (651) 204-2134

Daniel S. Blinn
CONSUMER LAW GROUP, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, CT 06067
Telephone: (860) 571-0408
Facsimile: (860) 571-7457

Charles Delbaum
NATIONAL CONSUMER LAW CENTER
77 Summer Street, 10th Floor
Boston, MA 02110
Telephone: (617) 542-8010
Facsimile: (617) 542-8028

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

*Executive Committee*

For the Plaintiffs in                 W. Roderick Bowdoin (FBN 172237)

*Barber v.*
*Ameriquest Capital Corp.*

DARBY PEELE BOWDOIN & PAYNE
P.O. Drawer 1707
Lake City, FL  32056
Telephone:  (386) 752-4120
Facsimile:   (386) 755-4569

Douglas Bowdoin  (FBN 310360)
DOUGLAS BOWDOIN, P.A.
P.O. Box 2254
Orlando, FL  32802-2254
Telephone:  (407) 422-0025
Facsimile:   (407) 843-2448

J. Craig Bourne  (FBN 999466)
1520 East Livingston Street
Orlando, FL  32801
Telephone:  (407) 894-6750
Facsimile:   (407) 894-4735

Elizabeth J. Cabraser
Kelly M. Dermody
Rachel Geman  (RG 0998)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

and

780 Third Avenue, 48th Floor
New York, NY  10017
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Laurence Tien
BAILEY, PERRIN & BAILEY
440 Louisiana, Suite 2100
Houston, TX 77002
Telephone:  (713) 425-7240
Facsimile:   (713) 425-7101

For the Plaintiffs in

*Becker v. J.M.*

Richard S. Gordon
Martin E. Wolf
QUINN, GORDON & WOLF, CHTD.

| | |
|---|---|
| *Closing Services, Inc., et al.* | 102 W. Pennsylvania Avenue, Suite 402<br>Towson, MD 21204<br>Telephone: (410) 825-2300 |
| | Nevett Steele, Jr.<br>Phillip Robinson<br>CIVIL JUSTICE, INC.<br>520 West Fayette Street<br>Baltimore, MD 21201<br>Telephone: (415) 706-0174 |
| For the Plaintiffs in<br><br>*Brown v.*<br>*Ameriquest Capital Corp.* | Jonathan A. Boynton<br>Sarah Brite Evans<br>KIRBY NOONAN LANCE & HOGE, LLP<br>One America Plaza<br>600 W. Broadway, Suite 1100<br>San Diego, CA 92101-3387<br>Telephone: (619) 231-8666<br>Facsimile: 619/231-9593 |
| | John A. Yanchunis<br>Jill H. Bowman<br>JAMES, HOYER, NEWCOMER &<br>SMILJANICH, P.A.<br>4830 W. Kennedy Blvd.<br>Urban Center One, Suite 550<br>Tampa, FL 33609<br>Telephone: (813) 286-4100<br>Facsimile: (813) 286-4174 |
| For the Plaintiffs in<br><br>*Campbell v.*<br>*Ameriquest Mortgage Co.* | Ralph Scoccimaro (GBN 631525)<br>Jimmie H. Brown (GBN 088134)<br>BROWN & SCOCCIMARO, P.C.<br>P.O. Box 1646<br>Albany, GA 31702<br>Telephone: (229) 432-9310<br>Facsimile: (229) 436-6302 |
| | Bryan A. Vroon (GBN 729086)<br>John W. Crongeyer (GBN 197267)<br>VROON & CRONGEYER, LLP<br>1718 Peachtree Street, Suite 1088<br>Atlanta, GA 30309<br>Telephone: (404) 607-6710<br>Facsimile: (404) 607-6711 |

For the Plaintiffs in

*Capasso v.*
*Ameriquest Mortgage Co.*

John T. Whipple
Sean Mack (SM 2016)
PASHMAN STEIN
Court Plaza South
21 Main Street
Hackensack, NY  07601-7054
Telephone:  (201) 488-8200
Facsimile:   (201) 488-5556

Samuel H. Rudman  (SR-7957)
Evan J. Kaufman  (EJK-8042)
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone: (631) 367-7100
Facsimile:   (631) 367-1173

For the Plaintiffs in

*Carlson v.*
*Ameriquest Mortgage Co.*

William H. Crowder  (20102)
Susan Ford Bedor (154702)
Gregory L. Paulson  (34517)
CROWDER, BEDOR & PAULSON, LLP
555 West Seventh Street, Suite 201
St. Paul, MN  55201
Telephone: (651) 225-8330
Facsimile:   (651) 204-2134

Richard J. Fuller  (32669)
1700 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
Telephone: (612) 339-4295 /
                  (612) 341-1209
Facsimile:   (612) 339-3161

For the Plaintiffs in

*D'Ambrogi v.*
*Ameriquest Mortgage Co.*

Stephen G. Burns
Andrew S. Kasmen
BURNS & KASMEN
The Pavilion, Suite A-51
261 Old York Road
Jenkintown, PA  19046
Telephone:  (215) 517-5800

David S. Markun  (Of Counsel)
MARKUN, ZUSMAN & COMPTON LLP
17383 West Sunset Blvd., Suite A380

Pacific Palisades, CA 90272
Telephone: (310) 454-5900

Edward S. Zusman
Kevin K. Eng
MARKUN, ZUSMAN & COMPTON LLP
465 California Street, 5th Floor
San Francisco, CA 94104
Telephone: (415) 438-4515

|  |  |
|---|---|
| For the Plaintiffs in<br><br>*Doherty v.*<br>*Town & Country Credit Corp.* | Richard J. Fuller (32669)<br>Seymour J. Mansfield (67271)<br>MANSFIELD TANICK & COHEN P.A.<br>1700 U.S. Bank Plaza South<br>220 South Sixth Street<br>Minneapolis, MN 55402-4511<br>Telephone: (612) 339-4295 /<br>             (612) 341-1209<br>Facsimile: (612) 339-3161 |
| For the Plaintiffs in<br><br>*Harless v.*<br>*Ameriquest Mortgage Co.* | Daniel A. Edelman<br>Cathleen M. Combs<br>James O. Latturner<br>EDELMAN, COMBS, LATTURNER &<br>GOODWIN, LLC<br>120 S. LaSalle Street, 18th Floor<br>Chicago, IL 60603<br>Telephone: (312) 739-4200<br>Facsimile: (312) 419-0379<br><br>Daniel Harris<br>Anthony Valach<br>THE LAW OFFICES OF DANIEL<br>HARRIS<br>150 N. Wacker Drive, Suite 3000<br>Chicago, IL 60606<br>Telephone: (312) 960-1802 |
| For the Plaintiffs in<br><br>*Jewell v.*<br>*Ameriquest Mortgage Co.* | Daniel Harris<br>Anthony Valach<br>THE LAW OFFICES OF DANIEL HARRIS<br>150 N. Wacker Drive, Suite 3000<br>Chicago, IL 60606<br>Telephone: (312) 960-1802<br><br>Daniel A. Edelman |

Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC.
120 S. La Salle Street, 18th Floor
Chicago, IL 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

For the Plaintiffs in

*Juillerat v.*
*Ameriquest Mortgage Co.*

Matthew J. Zevin (SBN 170736)
STANLEY, MANDEL & IOLA, L.L.P.
550 West "C" Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 235-5306
Facsimile: (815) 377-8419

Marc R. Stanley
Roger L. Mandel
Martin Woodward
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, TX 75205
Telephone: (214) 443-4300
Facsimile: (214) 443-0358

Andrew S. Kierstead
LAW OFFICE OF ANDREW S.
KIERSTEAD
1001 S.W. Fifth Avenue, Suite 1100
Portland, OR 97204
Telephone: (508) 224-6246
Facsimile: (508) 224-4356

Michael D. Donovan
DONOVAN SEARLES LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile: (215) 732-8060

For the Plaintiffs in

*Kahrer v.*
*Ameriquest Mortgage Co.*

Gary F. Lynch (PA ID No. 56887)
R. Bruce Carlson (PA ID No. 56617)
CARLSON LYNCH LTD
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA 16107

Telephone:  (724) 656-1555

A. Hoyt Rowell, III
Daniel O. Myers
RICHARDSON PATRICK WESTBROOK
& BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC  29464

For the Plaintiffs in

*Knox v.*
*Ameriquest Mortgage Co.*

Emmett C. Stanton  (CSB No. 83930)
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  (650) 988-8500
Facsimile:   (650) 938-5200

Bryan A. Kohm  (CSB No. 233276)
FENWICK & WEST LLP
275 Battery Street, 16th Floor
San Francisco, CA  94111
Telephone:  (415) 875-2300
Facsimile:   (415) 281-1350

Shirley Hochhausen  (CSB No. 145619)
COMMUNITY LEGAL SERVICES IN
EAST PALO ALTO
2117-B University Avenue
East Palo Alto, CA  94303
Telephone:  (650) 326-6440
Facsimile:   (650) 326-9722

For the Plaintiffs in

*Madrazo v.*
*Ameriquest Mortgage Co.*

Samuel H. Rudman  (SR-7957)
Evan J. Kaufman  (EJK-8042)
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
Facsimile:   (631) 367-1173

| | |
|---|---|
| For the Plaintiffs in<br><br>*Montanez v.*<br>*Ameriquest Mortgage Co.* | Thomas G. Shapiro  (BBO #454680)<br>Theodore M. Hess-Mahan  (BBO #557109)<br>SHAPIRO HABER & URMY LLP<br>53 State Street<br>Boston, MA  02109<br>Telephone:  (617) 439-3939<br>Facsimile:  (617) 439-0134<br><br>Samuel H. Rudman  (SR-7957)<br>Evan J. Kaufman  (EJK-8042)<br>LERACH COUGHLIN STOIA GELLER<br>RUDMAN & ROBBINS LLP<br>58 South Service Road, Suite 200<br>Melville, NY  11747<br>Telephone:  (631) 367-7100<br>Facsimile:  (631) 367-1173 |
| For the Plaintiffs in<br><br>*Murphy v.*<br>*Ameriquest Mortgage Co.* | Gary Klein  (BBO #560769)<br>John Roddy  (BBO #424240)<br>Elizabeth Ryan  (BBO #549632)<br>Shennan Kavanagh  (BBO #655174)<br>RODDY KLEIN & RYAN<br>727 Atlantic Avenue, 2nd Floor<br>Boston, MA  02111-2810<br>Telephone:  (617) 357-5500 ext. 15<br>Facsimile:  (617) 357-5030 |
| For the Plaintiffs in<br><br>*Saunders v.*<br>*Ameriquest Mortgage Co.* | George L. Forbes  (0010716)<br>614 W. Superior Avenue, Suite 700<br>Cleveland, OH  44113-1318<br>Telephone:  (216) 696-7170<br>Facsimile:  (216) 696-8076<br><br>Gary Cook  (0021240)<br>A.R. Abdoulkarim  (0022173)<br>27801 Euclid Avenue, Suite 640<br>Euclid, OH  44132<br>Telephone:  (216) 261-8839<br>Facsimile:  (216) 261-8840 |
| For the Plaintiffs in<br><br>*Ungar v.*<br>*Ameriquest Mortgage Co.* | David J. George  (FBN 0898570)<br>Robert J. Robbins  (FBN 0572233)<br>Stuart A. Davidson  (FBN 0084824)<br>LERACH COUGHLIN STOIA GELLER<br>RUDMAN & ROBBINS LLP<br>197 S. Federal Highway, Suite 200 |

Boca Raton, FL  33432
Telephone:  (561) 750-3000
Facsimile:   (561) 750-3364

Samuel H. Rudman  (SR-7957)
Evan J. Kaufman  (EJK-8042)
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
Facsimile:   (631) 367-1173

For the Plaintiffs in

*Cheryl Williams v.*
*Ameriquest Mortgage Co.*

Elizabeth J. Cabraser
Kelly M. Dermody
Rachel Geman  (RG 0998)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

and

780 Third Avenue, 48th Floor
New York, NY  10017
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Gary Klein
Elizabeth Ryan
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA   02111-2810
Telephone:  (617) 357-5500 ext. 15
Facsimile:   (617) 357-5030

Laurence Tien
BAILEY, PERRIN & BAILEY
440 Louisiana, Suite 2100
Houston, TX 77002
Telephone:  (713) 425-7240
Facsimile:   (713) 425-7101

For the Plaintiffs in

*Latonya Williams*
*v. Ameriquest Mortgage Co.*

Theresa I. Wigginton  (FBN 070490)
915 Oakfield Drive, Suite F
Brandon, FL  33511
Telephone:  (813) 653-2992
Facsimile:   (813) 655-7082

Gary Klein  (BBO #560769)
RODDY KLEIN & RYAN
727 Atlantic Avenue, 2nd Floor
Boston, MA   02111-2810
Telephone:  (617) 357-5500 ext. 15
Facsimile:   (617) 357-5030

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION<br>_____<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS<br>_____<br><br>AMERIQUEST MORTGAGE COMPANY, a Delaware corporation; and ARGENT MORTGAGE COMPANY LLC, a Delaware limited liability company,<br><br>   Third-Party Plaintiffs,<br><br> v.<br><br>NORTHWEST TITLE AND ESCROW CORPORATION, a Minnesota corporation, _et al._<br><br>   Third-Party Defendants. | MDL No. 1715<br><br>Lead Case No. 05-CV-07097<br><br>(Centralized before The Honorable Marvin E. Aspen) |

## CONSOLIDATED THIRD-PARTY COMPLAINT

Defendants and third-party plaintiffs Ameriquest Mortgage Company ("Ameriquest") and Argent Mortgage Company LLC ("Argent") allege as follows:

### The Parties

1. Ameriquest is a Delaware corporation with its principal place of business in California.

2. Argent is a Delaware limited liability company with its principal place of business in California.

3. Ameriquest and Argent bring this Third-Party Complaint against the Closing Agents and Title Underwriters (collectively referred to hereinafter as the "Title Defendants")

1

listed on Exhibit A and Exhibit B hereto.

4.     Argent also brings this Third-Party Complaint against the mortgage brokers ("Broker Defendants") listed on Exhibit B attached hereto.

5.     Ameriquest and Argent are at times ignorant of the true names and capacities, whether individual, corporate, associate, employee, agent or otherwise, of third-party defendant DOES 1 though 10, inclusive, and therefore sues said third-party defendants by such fictitious names.  Ameriquest and Argent are informed and believe and thereon allege that each of the third-party defendants designated herein as a fictitiously named third-party defendant is, in some manner, responsible for the events and happenings referred to, and caused the damage to Ameriquest and/or Argent as herein alleged.  Ameriquest and Argent will amend their Third-Party Complaint to allege the true names and capacities of those third-party defendants when such information is ascertained.

6.     The Court has jurisdiction over this matter, pursuant to Rule 14 of the Federal Rules of Civil Procedure.

7.     Venue is proper in this judicial district because Ameriquest's and Argent's claims against the Title Defendants and Broker Defendants arise directly out of claims asserted by the plaintiffs listed in Exhibit A and Exhibit B hereto against Ameriquest and Argent in this Court.

## General Allegations for Ameriquest Claims

8.     On or about the dates set forth in Exhibit A hereto, Ameriquest and each of the Title Defendants entered into an agreement wherein the Title Defendants agreed to close Ameriquest loans in exchange for consideration to be paid from the loan proceeds.  In connection with these agreements, the Title Defendants warranted, among other things, that they would accurately complete a "Notice of Right to Cancel" form with respect to each loan that they closed, and would provide Ameriquest's borrower(s) with the correct number of copies of the completed form.

9.     Each of the plaintiffs listed in Exhibit A hereto has filed a lawsuit against Ameriquest alleging, among other things, that Ameriquest violated TILA by, allegedly, failing to

2

provide the plaintiff with a complete and accurate Notice of Right to Cancel form and/or failing to provide the correct number of copies of the form.

10.     The claims alleged against Ameriquest in each of the plaintiffs' lawsuits with respect to the Notice of Right to Cancel form relate to duties that should have been carried out by each of the Title Defendants, with respect to the particular loan(s) that they were hired to close. Thus, to the extent that any of the plaintiffs received an inaccurate, incomplete, or misleading Notice of Right to Cancel form, or an incorrect number of forms, this is entirely attributable to the conduct of the Title Defendant(s) who were hired to close that particular loan.

### General Allegations for Argent Claims

11.     Plaintiffs' suits also allege, *inter alia*, that Argent made misrepresentations regarding loan terms, engaged in bait and switch tactics, failed to make proper disclosures (including Notice of Right to Cancel), and/or improperly serviced plaintiffs' loans.  These claims arise primarily out of the negotiation of loan terms, events that occurred at loan closings, or out of post-funding handling of plaintiffs' effort to repay, or failure to repay the subject loan.

12.     Argent, however, is a wholesale mortgage lender.  By definition, a wholesale lender has no involvement in the negotiation of loan terms, or the loan closing.  Argent likewise has no involvement in collecting loan payments or otherwise servicing loans.  Instead, Argent's involvement in the loan process is limited to funding loans originated by independent mortgage brokers and closed by independent Closing Agents and Title Underwriters, each of whom are individually responsible for ensuring that the origination, title and closing process is effectuated in compliance with all aspects of applicable law.  Further, the Broker Defendants are responsible for selecting the Title Defendants.

13.     Argent enters into a "Mortgage Broker Agreement" whereby the independent Broker Defendants agreed, *inter alia*, to the "full, accurate and truthful disclosure" of all "facts, information or documentation" that might affect the loan process, agreed to comply with all rules and regulations regarding the application and processing of a loan, and agreed to indemnify and

hold harmless the lender (Argent) against claims made by the borrower.

14.     Argent also enters into enforceable agreements with the Title Defendants through the providing of Escrow Lending Instructions which require, *inter alia*, the proper execution, disclosure, and issuance of the required closing documents, including the Notice of Right to Cancel and the HUD-1 Settlement Statement.

15.     The Title Underwriter also issues a "Closing Protection Letter" whereby the Title Underwriter agrees to reimburse the lender for actual loss incurred by the lender in connection with the closing conducted by the Closing Agent including the failure of the Closing Agent to comply with the lender's written closing instructions, as well as acts of fraud or dishonesty by the Closing Agent in the handling of the lender's funds or documents in connection with a closing.

16.     The Title Underwriter also issues a final title policy whereby the Title Underwriter insures the validity and lien priority of the mortgage provided to Argent.

17.     Each of the plaintiffs' listed on Exhibit B engaged a Broker Defendant in order to apply for and obtain a loan from Argent.  The Broker Defendants subsequently selected the Title Defendants to close the loans.  The Broker Defendants and Title Defendants are wholly responsible for any alleged misrepresentations, improper tactics, or failed disclosures that may be found to have occurred in the process of obtaining a loan from Argent.

<u>**First Cause of Action**</u>

**(Breach of Contract—Ameriquest Against the Title Defendants)**

18.     Ameriquest re-alleges paragraphs 1 through 17 inclusive, and incorporates the same by reference.

19.     Ameriquest and each of the Title Defendants entered into a valid and enforceable contract.  Ameriquest fully performed its duties under this contract.

20.     The contract required, among other things, that each of the Title Defendants would accurately complete a "Notice of Right to Cancel" form with respect to each loan that they closed, and provide the relevant borrower(s) with the correct number of copies of the completed

form.

21.     In the event that the allegations in any of plaintiffs' lawsuits are proven to be true, the Title Defendants who were responsible for closing the loans in question breached the contract with respect to their duty to provide a complete and accurate Notice of Right to Cancel form and/or to provide the correct number of forms.

22.     Ameriquest has suffered damages in an amount according to proof, but in no event less than any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to each of the plaintiffs against Ameriquest.  Ameriquest has also suffered damage to its reputation and goodwill as a direct result of the Title Defendants' conduct, in an amount to be proven at trial.

### Second Cause of Action

### (Negligence—Ameriquest Against the Title Defendants)

23.     Ameriquest re-alleges paragraphs 1 through 22 inclusive, and incorporates the same by reference.

24.     Each of the Title Defendants had a duty to follow any and all federal and state laws relating to required disclosures in connection with mortgage loans including, but not limited to, the Notice of Right to Cancel.

25.     In the event that the allegations in any of the lawsuits are proven to be true, the Title Defendants breached this duty, by failing to follow the clear rules set forth in TILA and related statutes.

26.     As a direct result of the negligence of the Title Defendants, Ameriquest has suffered damages in an amount to be proven at trial, but in no event less than any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to each of the plaintiffs against Ameriquest in connection with the lawsuits.

### Third Cause of Action

### (Equitable Indemnity— Ameriquest Against the Title Defendants)

27.     Ameriquest re-alleges paragraphs 1 through 26 inclusive, and incorporates the same by reference.

28. In the event that the allegations in any of plaintiffs' lawsuits are found to be true by a trier of fact, any loss that Ameriquest suffers including, but not limited to, any judgment, settlement, attorneys' fees, costs, or other equitable relief, is directly attributable to the conduct of the Title Defendants who were responsible for closing the loans in question.

29. Ameriquest reasonably relied on promises made by each of the Title Defendants. In particular, Ameriquest relied on the Title Defendants' representation that they would follow the rules set forth in TILA and other regulations, as well as the terms and conditions of the parties' contract, in preparing any and all closing documents including, but not limited to, the Notice of Right to Cancel.

30. Under principals of equity, Ameriquest is entitled to indemnification from each of the Title Defendants in an amount sufficient to reimburse Ameriquest for any judgment, settlement, attorneys' fees, costs, or other equitable relief that Ameriquest suffers in connection with the plaintiffs' lawsuits.

### Fourth Cause of Action

### (Contribution— Ameriquest Against the Title Defendants)

31. Ameriquest re-alleges paragraphs 1 through 30 inclusive, and incorporates the same by reference.

32. In the event that the allegations in any of plaintiffs' lawsuits are found to be true by a trier of fact, any loss that Ameriquest suffers including, but not limited to, any judgment, settlement, attorneys' fees, costs, or other equitable relief, is directly attributable to the conduct of the Title Defendants who were responsible for closing the loans in question.

33. Ameriquest reasonably relied on promises made by each of the Title Defendants. In particular, Ameriquest relied on the Title Defendants' representation that they would follow all applicable rules and other regulations, as well as the terms and conditions of the parties' contract, in preparing any and all closing documents including, but not limited to, the Notice of Right to Cancel.

34.     Ameriquest did not know, and had no reason to know, that the Title Defendants would not follow the required rules and regulations, in preparing and delivering the Notice of Right to Cancel, and other the closing documents.

35.     Under principals of equity, Ameriquest is entitled to contribution from each of the Title Defendants in an amount sufficient to reimburse Ameriquest for any judgment, settlement, attorneys' fees, costs, or other equitable relief that Ameriquest suffers in connection with the plaintiffs' lawsuits that exceeds Ameriquest's pro-rata share of its liability.

## Fifth Cause of Action

### (Breach of Contract – Argent Against Broker Defendants)

36.     Argent re-alleges paragraphs 1 through 35 inclusive, and incorporates the same by reference.

37.     Argent and each of the Broker Defendants listed on Exhibit B entered into a valid and enforceable contract and Argent fully performed its duties under this contract.

38.     The contract required, among other things, that the Broker Defendants would provide "full, accurate and truthful disclosure" of all "facts, information or documentation" that might affect the loan process and agree to comply with all rules and regulations regarding the application and processing of a loan.

39.     The contract further required the Broker Defendants to indemnify Argent and hold it harmless against claims made by borrowers.

40.     In the event that the allegations in any of plaintiffs' lawsuits are proven to be true, the Broker Defendants breached the contract.

41.     Argent has suffered damages in an amount according to proof, but in no event less than any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to each of the plaintiffs against Argent.  Argent has also suffered damage to its reputation and goodwill as a direct result of the Broker Defendants' conduct, in an amount to be proven at trial.

**Sixth Cause of Action**

**(Breach of Contact – Argent Against Title Defendants)**

42.     Argent re-alleges paragraphs 1 through 41 inclusive, and incorporates the same by reference.

43.     Argent and each of the Title Defendants listed on Exhibit A and Exhibit B entered into a valid and enforceable contract.  Argent fully performed its duties under this contract.

44.     The contract required, among other things, that each of the Title Defendants would accurately complete a "Notice of Right to Cancel" form with respect to each loan that they closed, and provide the relevant borrower(s) with the correct number of copies of the completed form.

45.     In the event that the allegations in any of plaintiffs' lawsuits are proven to be true, the Title Defendants who were responsible for closing the loans in question breached the contract with respect to their duty to provide a complete and accurate Notice of Right to Cancel form and/or to provide the correct number of forms.

46.     Argent has suffered damages in an amount according to proof, but in no event less than any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to each of the plaintiffs against Argent.  Argent has also suffered damage to its reputation and goodwill as a direct result of the Title Defendants conduct, in an amount to be proven at trial.

**Seventh Cause of Action**

**(Negligence – Argent Against Broker Defendants and Title Defendants)**

47.     Argent re-alleges paragraphs 1 through 46 inclusive, and incorporates the same by reference.

48.     Each of the Broker Defendants and Title Defendants listed on Exhibits A and B had a duty to follow any and all federal and state laws or regulations relating to required disclosures in connection with mortgage loans including, but not limited to, the Notice of Right to Cancel.

49.     In the event that the allegations in any of the lawsuits are proven to be true, the

Broker Defendants and Title Defendants breached this duty by failing to follow the clear rules set forth in TILA and related statutes.

50.　　As a direct result of the negligence of the Broker Defendants and Title Defendants, Argent has suffered damages in an amount to be proven at trial, but in no event less than any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to each of the plaintiffs against Argent in connection with the lawsuits

### Eighth Cause of Action

**(Equitable Indemnity— Argent Against the Broker Defendants and Title Defendants)**

51.　　Argent re-alleges paragraphs 1 through 50 inclusive, and incorporates the same by reference.

52.　　In the event that the allegations in any of plaintiffs' lawsuits are found to be true by a trier of fact, any loss that Argent suffers including, but not limited to, any judgment, settlement, attorneys' fees, costs, or other equitable relief, is directly attributable to the conduct of the Broker Defendants  and Title Defendants who were they only parties to directly interact with the plaintiffs.

53.　　Argent reasonably relied on promises made by each of the Broker Defendants and Title Defendants.  In particular, Argent relied on the representations from Broker Defendants and Title Defendants that they would follow the rules set forth in TILA and other regulations, as well as the terms and conditions of the parties' contract, in preparing any and all mortgage or closing documents including, but not limited to, the Notice of Right to Cancel.

54.　　Under principals of equity, Argent is entitled to indemnification from each of the Broker Defendants and Title Defendants in an amount sufficient to reimburse Argent for any judgment, settlement, attorneys' fees, costs, or other equitable relief that Argent suffers in connection with the plaintiffs' lawsuits.

## Ninth Cause of Action

### (Contribution— Argent Against the Broker Defendants and Title Defendants)

55.     Argent re-alleges paragraphs 1 through 54 inclusive, and incorporates the same by reference.

56.     In the event that the allegations in any of plaintiffs' lawsuits are found to be true by a trier of fact, any loss that Argent suffers including, but not limited to, any judgment, settlement, attorneys' fees, costs, or other equitable relief, is directly attributable to the conduct of the Broker Defendants and Title Defendants as they were the only parties to directly interact with the plaintiffs.

57.     Argent reasonably relied on promises made by each of the Broker Defendants and Title Defendants.  In particular, Argent relied on the Broker Defendants and Title Defendants' representations that they would follow all applicable the rules and regulations, as well as the terms and conditions of the parties' contract, in preparing any and all mortgage and closing documents including, but not limited to, the Notice of Right to Cancel.

58.     Argent did not know, and had no reason to know, that the Broker Defendants and Title Defendants would not follow the required rules and other regulations, in preparing and delivering the mortgage and closing documents.

59.     Under principals of equity, Argent is entitled to contribution from each of the Broker Defendants and Title Defendants in an amount sufficient to reimburse Argent for any judgment, settlement, attorneys' fees, costs, or other equitable relief that Argent suffers in connection with the plaintiffs' lawsuits that exceeds Argent's pro-rata share of its liability.

WHEREFORE, Ameriquest and Argent pray for judgment against the Broker Defendants and Title Defendants as follows:

1.      For monetary damages in an amount according to proof at trial, but no less than any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded in favor of plaintiffs, or any of them, against Ameriquest, Argent, and their affiliates;

2.      For their reasonable attorneys' fees and costs of suit; and

3.      For such other relief as the Court may deem just and proper.

DATED: July 31, 2007

Respectfully submitted,

By:  /s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company;
AMC Mortgage Services, Inc.; Town & Country
Credit Corporation; Ameriquest Capital
Corporation; Town & Country Title Services, Inc.;
and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

By:  /s/ Thomas J. Wiegand

*Attorneys for Argent Mortgage Company LLC*

Thomas J. Wiegand
Gregory J. Miarecki
David E. Dahlquist
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700

**EXHIBIT A**

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Adams, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01626 (N.D. Ill.), filed January 22, 2007 | Glenn and Laverne Adams | Northwest Title and Escrow Corporation, a Minnesota corporation | February 9, 2004 |
| *Addison v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04728 (N.D. Ill.), filed June 5, 2006 | Suzette Addison | ATM Corporation of America, a Pennsylvania corporation; and Scott Drier, an individual | August 6, 2004 |
| *Adkins v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04741 (N.D. Ill.), filed August 31, 2006 | Sherry and James Adkins | Tristar Title, LLC, an Illinois limited liability company | December 31, 2004 |
| *Ameriquest Mortgage Co. v. Mattix, et al.*, Case No. 06-CV-04043 (N.D. Ill.), filed May 8, 2006 | Lori Mattix and Ivory Ford | Lenders First Choice, a Texas corporation | December 24, 2003 |
| *Anderson et al v. Ameriquest Mortgage Co., et al.,* Case No. 06-CV-03125 (N.D. Ill.), filed February 9, 2006 | John W. Anderson Jr. | Superior Closing Services, LLC, a Connecticut limited liability company | July 24, 2003 |
| | Benjamin and Manuel Barboza | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability company | April 22, 2003 |
| | Beverley and Kathy Bessette | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability | September 12, 2003 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | | company | |
| | John and Maryann Iwanczenko | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability company | January 15, 2003 |
| | Keith Jensen | Superior Closing Services, LLC, a Connecticut limited liability company | December 10, 2004 |
| | Pearl and Roosevelt Oliver | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability company | January 21, 2004 |
| | John Pokorny Jr. | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability company | July 20, 2004 |
| | Rachel and Shaun O'Rourke | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability company | April 8, 2004 |
| | Sonia Spence-English | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability company | August 8, 2003 |
| | Dennis and Brenda Holmes | Holler & Holler, LLC, a Connecticut limited liability | February 11, 2003 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | | company; and Superior Closing Services, LLC, a Connecticut limited liability company | |
| | Patricia and Michael Szynal | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability company | January 24, 2004 |
| *Anderson, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-01981 (N.D. Ill.), filed April 7, 2006 | Dean and Diane Anderson | Tristar Title, LLC, an Illinois limited liability company | June 28, 2004 |
| *Anthony, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01748 (N.D. Ill.), filed February 21, 2007 | Patrina and Derek Anthony | Northwest Title and Escrow Corporation, a Minnesota corporation | May 17, 2005 |
| *Archer, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00328 (N.D. Ill.), filed December 4, 2006 | Carolyn and Carlos Archer | Nations Title Agency of Michigan, Inc., a Michigan corporation | January 18, 2005 |
| *Bailey, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-01733 (N.D. Ill.), filed March 14, 2005 | Wray and Wendy Bailey | Superior Closing Services, LLC, a Connecticut limited liability company | February 5, 2003 |
| | Juan Garcia | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability company | August 12, 2004 |
| | Colon Holloway | Superior Closing Services, LLC, a Connecticut limited | June 3, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | | liability company | |
| | Jeffrey and Ellen Kozlowski | Superior Closing Services, LLC, a Connecticut limited liability company | June 2, 2004 |
| | Bruce and Deborah Lauzier | Superior Closing Services, LLC, a Connecticut limited liability company | August 20, 2004 |
| | Scott A. Leblanc | Synodi Videll & Green, LLC, a Connecticut limited liability company | March 20, 2004 |
| | Carlos Martinez | Superior Closing Services, LLC, a Connecticut limited liability company | June 3, 2004 |
| | Winston and Norma Patterson | Superior Closing Services, LLC, a Connecticut limited liability company | January 26, 2004 |
| | Gregory and Kelly Smayda | Superior Closing Services, LLC, a Connecticut limited liability company | September 18, 2003 |
| | Justin and Cynthia Thompson | Superior Closing Services, LLC, a Connecticut limited liability company | November 17, 2004 |
| | Armando and Anne Valeriano | Superior Closing Services, LLC, a Connecticut limited liability company | June 18, 2004 |
| | Stephen Wilson | Vital Signing, Inc., a California corporation | August 23, 2003 |
| | Alfred Carbone | Superior Closing Services, LLC, a Connecticut limited liability company | February 20, 2004 |
| *Balark, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06- | Eric Balark and Michelle | Tristar Title, LLC, an Illinois limited liability company; and Tia M. Martin, an | May 13, 2005 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| CV-02430 (N.D. Ill.), filed May 1, 2006 | McMiller | individual | |
| *Barletta v. Ameriquest Mortgage Co, et al.*, Case No. 06-CV-04560 (N.D. Ill.), filed August 23, 2006 | Pam Barletta | Northwest Title and Escrow Corporation, a Minnesota corporation | January 2004 |
| *Beane, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01346 (N.D. Ill.), filed December 26, 2006 | Virginia and Robert Beane | Northwest Title and Escrow Corporation, a Minnesota corporation | January 13, 2004 |
| *Beaudoin v. Ameriquest Mortgage Co.*, Case No. 07-CV-00133 (N.D. Ill.), filed October 27, 2006 | Carol A. Beaudoin | Tapalian & Tadros, P.C., a professional corporation | October 3, 2005 |
| *Belcher, et al. v. Ameriquest Mortgage Co.,* Case No. 06-CV-03124 (N.D. Ill.), filed February 8, 2006 | Monique M. Belcher | Holler & Holler, LLC, a Connecticut limited liability company; Superior Closing Services, LLC, a Connecticut limited liability company | September 13, 2004 |
| | Madge and Edgar Bryan | Holler & Holler, LLC, a Connecticut limited liability company; Superior Closing Services, LLC, a Connecticut limited liability company | August 4, 2004 |
| | Sonia Joseph | Holler & Holler, LLC, a Connecticut limited liability company; Superior Closing Services, LLC, a Connecticut limited liability company | August 19, 2004 |
| | Debra Jenkins | ATM Corporation of America, a Pennsylvania | September 14, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | | corporation | |
| *Belford v. Ameriquest Mortgage Co., et al.,* Case No. 06-CV-03426 (N.D. Ill.), filed April 17, 2006 | Dennis E. Belford | Mortgage Information Services, Inc., an Ohio corporation | August 31, 2005 |
| *Belliveau, et al. v. Ameriquest Mortgage Co.,* Case No. 06-CV-06746 (N.D. Ill.), filed August 28, 2006 | Ronald and Barbara Belliveau | Express Financial Services, Inc., a Pennsylvania corporation; and Paul D. Boudreau, an individual | October 10, 2003 and March 20, 2004 |
| *Belval, et al. v. Ameriquest Mortgage Co., et al.,* Case No. 06-CV-02469 (N.D. Ill), filed January 23, 2006 | Roger and Lyn Belval | Law Offices of Gregory T. Lattanzi, LLC, a limited liability company | January 9, 2004 |
| | Cynthia Belcher and Christopher Ellis | Superior Closing Services, LLC, a Connecticut limited liability company | January 24, 2005 |
| | Annette Fountain | Lenders First Choice, a Texas corporation | March 19, 2004 |
| | Laurie and Robert Iulo | Mortgage Information Services, Inc., an Ohio corporation | October 20, 2003 and July 7, 2004 |
| | Jay and Melissa Alvarez | TranStar National Title, a Texas corporation | October 17, 2003 and October 19, 2004 |
| | Kristen and Frank Olschefski | Mortgage Information Services, Inc., an Ohio corporation | August 24, 2004 |
| | Henry and Joan Owen | Mortgage Information Services, Inc., an Ohio corporation | December 9, 2003 |
| | Guy and Pauline Passarello | Mortgage Information Services, Inc., an Ohio corporation | December 19, 2002 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | Joseph Rodino | Express Financial Services, Inc., a Pennsylvania corporation | December 12, 2003 |
| | Luz Santiago | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability company | November 15, 2004 |
| | Gary and Kelly Steinmiller | B & S Services, LLC, a limited liability company; and Vital Signing, Inc., a California corporation | March 21, 2003 |
| | Jay and Sherri Valentin | Mortgage Information Services, Inc., an Ohio corporation | September 13, 2004 |
| | Gloria J. Therrien | Vital Signing, Inc., a California corporation | July 18, 2003 and May 12, 2004 |
| | Charles Humphrey | Vital Signing, Inc., a California corporation | October 29, 2003 and June 10, 2004 |
| | Wray and Wendy Bailey | Mortgage Information Services, Inc., an Ohio corporation | May 8, 2004 |
| | Charles J. Matas | Mortgage Information Services, Inc., an Ohio corporation | May 5, 2004 |
| | Lorraine and Austin Warner | Vital Signing, Inc., a California corporation | November 10, 2004 |
| | Sharon and Ronald Kach | Lenders First Choice, a Texas corporation | May 23, 2003 |
| | Amy and Raymond | Lenders First Choice, a Texas corporation | December 16, 2003 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | McKenzie | | |
| *Bennison, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-02775 (N.D. Ill.), filed March 20, 2007 | Mark and Maria Bennison | ATM Corporation of America, a Pennsylvania corporation | February 8, 2006 |
| | Christopher Lancaster | Tapalian & Tadros, P.C., a professional corporation | May 13, 2005 |
| | Barry Lafleur | Lenders First Choice, a Texas corporation | September 9, 2004 |
| | Idalia Martinez | Law Offices of Daniel J. Nigro, P.C., a professional corporation | April 21, 2003 |
| *Bergquist v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-01438 (N.D. Ill.), filed March 15, 2006 | Sandra Bergquist | Tristar Title, LLC, an Illinois limited liability company; and Angela Bartucci, an individual | December 28, 2004 |
| *Bertenshaw, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-05708 (N.D. Ill.), filed August 21, 2006 | John P. Lang | Law Offices of Daniel J. Nigro, P.C., a professional corporation | June 8, 2004 |
| | George and Stacey-Ann McNamee | Lenders First Choice, a Texas corporation | May 12, 2005 |
| | John and Cheryl Marino | Law Offices of Daniel J. Nigro, P.C., a professional corporation | June 14, 2004 |
| | Deborah and Robert Kenny | Lenders First Choice, a Texas corporation | June 24, 2004 |
| | Rita and Bruce Correia | Law Offices of Daniel J. Nigro, P.C., a professional corporation | June 5, 2004 |
| *Besterfield v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-02676 (N.D. Ill.), filed May 12, 2006 | James Besterfield | Tristar Title, LLC, an Illinois limited liability company | January 11, 2005 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Billings, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-01849 (N.D. Ill.), filed April 4, 2006 | Jacob and Taylor Billings | Tristar Title, LLC, an Illinois limited liability company; and Guadalupe Cruz, Jr., an individual | February 16, 2005 |
| *Black, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-00129 (N.D. Ill.), filed October 12, 2006 | Junior Terrance Black & Rene Campbell | Mortgage Information Services, Inc., an Ohio corporation | June 21, 2005 |
| | Ismael Vega and Yolanda I. Rivera | Lee S. Jacobowitz, Esq., an individual | September 23, 2004 |
| | Luz Gomez | Equity Settlement Services, Inc., a New York corporation; and Express Financial Services, Inc., a Pennsylvania corporation | October 16, 2003 and December 2, 2004 |
| | Albert and Marlene Roldan | Mortgage Information Services, Inc., an Ohio corporation; and Martin M. Hochman, an individual | April 22, 2004 and October 4, 2004 |
| | Cheryl and Arnold Jones | Lee S. Jacobowitz, Esq., an individual; and National Real Estate Information Services of New Jersey, Inc., a New Jersey corporation | July 13, 2005 |
| *Blackburn, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00309 (N.D. Ill.), filed July 17, 2006 | Sherry and Joseph Frank Blackburn | Mortgage Information Services, Inc., an Ohio corporation | November 19, 2004 |
| *Booher v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01339 (N.D. Ill.), filed January 5, 2007 | Steven Booher | Nations Title Agency of Missouri, Inc., a Missouri corporation | July 7, 2005 |
| *Bothwell, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04716 (N.D. Ill.), filed May 8, 2006 | Terry and Cheryl Bothwell | Mortgage Information Services, Inc., an Ohio corporation | September 20, 2005 |

| **Underlying Case** | **Name of Borrower Plaintiff(s)** | **Title Defendant(s)** | **Date of Agreement with Ameriquest and/or Argent** |
|---|---|---|---|
| *Bowe, et al. v. Ameriquest Mortgage Co.,* Case No. 06-CV-02471 (N.D. Ill.), filed January 23, 2006 | Michael Bowe | Synodi Videll & Green, LLC, a Connecticut limited liability company; and Gordon Videll, an individual | March 24, 2004 |
| | Mauro Troetti | Superior Closing Services, LLC, a Connecticut limited liability company | September 3, 2004 |
| | Herbert and Anne Randall | Superior Closing Services, LLC, a Connecticut limited liability company | February 19, 2004 |
| | Anthony and Deborah Morin | Superior Closing Services, LLC, a Connecticut limited liability company | April 21, 2004 |
| | Tricia and Gary Safferstein | Superior Closing Services, LLC, a Connecticut limited liability company | July 21, 2004 |
| | Jo-Ann Rosemary Lowman | Superior Closing Services, LLC, a Connecticut limited liability company | March 18, 2004 |
| | Dean A. Cocchiola | Superior Closing Services, LLC, a Connecticut limited liability company | February 4, 2004 |
| *Bricker, et al. v. Ameriquest Mortgage Co., et al.,* Case No. 06-CV-04528 (N.D. Ill.), filed August 21, 2006 | Anthony and Michelle Bricker | Tristar Title, LLC, an Illinois limited liability company | July 21, 2004 |
| *Brissett, et al. v. Ameriquest Mortgage Co.,* Case No. 07-CV-00130 (N.D. Ill.), filed October 4, 2006 | Penelope Brissett | Lenders First Choice, a Texas corporation | August 5, 2005 |
| | Rudolph Greaves and Marcia Hall-Greaves | Mortgage Information Services, Inc., an Ohio corporation | January 24, 2005 |
| | Sean and Patricia Wells | Mortgage Information Services, Inc., an Ohio corporation | September 2, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | Pearl Sullivan | Lee S. Jacobowitz, Esq., an individual; National Real Estate Information Services of New Jersey, Inc., a New Jersey corporation; and Carolyn T. Daley, an individual | January 17, 2004 |
| *Britt, et al. v. Ameriquest Mortgage Co., et al.,* Case No. 07-CV-00351 (N.D. Ill.), filed January 18, 2007 | Robert and Tammy Britt | Tristar Title, LLC, an Illinois limited liability company | December 16, 2004 |
| *Brown v. Ameriquest Mortgage Co., et al.,* Case No. 05-CV-04723 (N.D. Ill.), filed August 17, 2005 | Dorothy Brown | Tristar Title, LLC, an Illinois limited liability company | August 24, 2004 |
| *Brown, et al. v. Ameriquest Mortgage Co., et al.,* Case No. 05-CV-05111 (N.D. Ill.), filed September 6, 2005 | Kenneth and Monica Brown | Tek Title, LLC, an Illinois limited liability company | December 10, 2004 |
| *Brown, et al. v. Ameriquest Mortgage Co., et al.,* Case No. 06-CV-02830 (N.D. Ill.), filed May 19, 2006 | Calvin and Dora Brown | Tristar Title, LLC, an Illinois limited liability company | February 16, 2004 |
| *Buckner v. Ameriquest Mortgage Co., et al.,* Case No. 05-CV-06808 (N.D. Ill.), filed December 1, 2005 | Jacqueline Buckner | Tristar Title, LLC, an Illinois limited liability company; and Sheila Dolan, an individual | June 23, 2004 |
| *Bumpers, et al. v. Ameriquest Mortgage Co., et al.,* Case No. 07-CV-00553 (N.D. Ill.), filed January 29, 2007 | Henry and Elizabeth Bumpers | Nations Title Agency of Illinois, Inc., an Illinois corporation | February 27, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Burgess, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06748 (N.D. Ill.), filed August 22, 2006 | Ernest and Peggy Burgess | Northwest Title and Escrow Corporation, a Minnesota corporation | January 9, 2004 |
| | Sarah Chaumley | Northwest Title and Escrow Corporation, a Minnesota corporation | April 29, 2004 |
| *Bush, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00321 (N.D. Ill.), filed November 15, 2006 | Jeffrey and Deborah Bush | Nations Title Agency of Michigan, Inc., a Michigan corporation | October 18, 2005 |
| *Burris, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00123 (N.D. Ill.), filed October 23, 2006 | Brett and Christine Burris | Northwest Title and Escrow Corporation, a Minnesota corporation | March 15, 2005 |
| *Butt, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-06744 (N.D. Ill.), filed August 21, 2006 | Stephanie and James Butt | Tapalian & Tadros, P.C., a professional corporation | November 30, 2005 |
| | Leonor C. Ramos | Tapalian & Tadros, P.C., a professional corporation | July 28, 2004 |
| | Joshua U. Aisiku | Tapalian & Tadros, P.C., a professional corporation | April 12, 2005 |
| | Brian M. O'Donnell | Tapalian & Tadros, P.C., a professional corporation | November 1, 2004 |
| | Gary Braz | Tapalian & Tadros, P.C., a professional corporation | January 18, 2005 |
| | Karen Bowles | Tapalian & Tadros, P.C., a professional corporation | September 21, 2005 |
| *Calder v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-05146 (N.D. Ill.), filed September 22, 2006 | Vicki Calder | Express Financial Services, Inc., a Pennsylvania corporation | April 23, 2004 |
| *Campau, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00118 (N.D. Ill.), filed October 13, 2006 | Thomas and Kathryn Campau | Mortgage Information Services, Inc., an Ohio corporation | December 8, 2004 |
| *Carney v. Ameriquest Mortgage Co.*, Case No. | Veronica I. Carney | Law Offices of Daniel J. Nigro, P.C., a professional | April 16, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| 06-CV-02478 (N.D. Ill.), filed February 10, 2006 | | corporation | |
| *Carter, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-03425 (N.D. Ill.), filed April 6, 2006 | James and Evie Carter | Mortgage Information Services, Inc., an Ohio corporation | August 10, 2005 |
| *Cashen, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04683 (N.D. Ill.), filed August 30, 2006 | Daniel and Donna Cashen | Nations Title Agency of Illinois, Inc., an Illinois corporation; and Arthur Lachel, an individual | December 16, 2003 |
| *Chandler, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-00310 (N.D. Ill.), filed September 29, 2006 | Anthony and Lorainne Raia | Mortgage Information Services, Inc., an Ohio corporation | April 3, 2004 |
| *Childres v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04722 (N.D. Ill.), filed June 16, 2006 | Beverly Childres | Northwest Title and Escrow Corporation, a Minnesota corporation | June 17, 2005 |
| *Churchill, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01026 (N.D. Ill.), filed December 15, 2006 | Dale and Kelley Churchill | Devon Title Agency, a Michigan corporation | January 14, 2005 |
| *Clarke, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04201 (N.D. Ill.), filed August 3, 2006 | Christopher and Karie Clarke | Tristar Title, LLC, an Illinois limited liability company; and Lynne A. Love, an individual | March 24, 2005 |
| *Cleveland v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04306 (N.D. Ill.), filed August 9, 2006 | Robert Cleveland | Blackstone National Title, LLC, a limited liability company | October 31, 2003 and November 5, 2003 |
| *Cole, et al. v. Ameriquest Mortgage Co., et al.*, | Robert and Brenda Cole | Mortgage Information Services, Inc., an Ohio | July 12, 2005 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| Case No. 06-CV-06043 (N.D. Ill.), filed April 5, 2006 | | corporation | |
| *Cooper, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06604 (N.D. Ill.), filed November 30, 2006 | Patricia and Donald Cooper | Lenders First Choice, a Texas corporation | March 25, 2005 |
| *Correia, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-00109 (N.D. Ill.), filed September 29, 2006 | Michael and Susan Correia | Law Office of Joseph E. Nealon, a limited liability company | February 19, 2005 |
| *Damm, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-04032 (N.D. Ill.), filed March 21, 2006 | Isabel Rivera and Nathan Noble | Mortgage Information Services, Inc., an Ohio corporation | June 18, 2004 |
| | Mark and Heather Saucier | Superior Closing Services, LLC, a Connecticut limited liability company | October 7, 2003 |
| | Patricia M. Tierney | Holler & Holler, LLC, a Connecticut limited liability company; and Superior Closing Services, LLC, a Connecticut limited liability company | July 23, 2004 |
| | Carol A. Mauro | Lenders First Choice, a Texas corporation | March 24, 2004 |
| | Artur B. Monteiro | Superior Closing Services, LLC, a Connecticut limited liability company | November 12, 2004 |
| | Wayne and Leigh Mumford | Mortgage Information Services, Inc., an Ohio corporation | September 27, 2004 |
| | Thomas A. Sollitto | Superior Closing Services, LLC, a Connecticut limited liability company | August 16, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Daneau v. Ameriquest Mortgage Co.*, Case No. 06-CV-01925 (N.D. Ill.), filed December 21, 2005 | Richard Daneau | Law Offices of Daniel J. Nigro, P.C., a professional corporation | September 13, 2003 |
| *Davis, et al. v. Ameriquest Mortgage Co.*, Case No. 07-00525 (N.D. Ill.), filed January 26, 2007 | Sonja and Donya Davis | Tristar Title, LLC, an Illinois limited liability company | December 14, 2004 |
| *Dearden v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-02912 (N.D. Ill.), filed May 25, 2006 | Scott K. Dearden | Stewart Title of Seattle, LLC, a limited liability company; Law Offices of Daniel J. Nigro, P.C., a professional corporation; and Shane DeLorenze, an individual | June 19, 2004 |
| *Demers, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-01029 (N.D. Ill.), filed December 22, 2006 | Deborah and Robert Kenny | Lenders First Choice, a Texas corporation | April 15, 2003 |
| *Diggins v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-07017 (N.D. Ill.), filed December 19, 2006 | Janet Diggins | Tristar Title, LLC, an Illinois limited liability company | September 3, 2004 and May 11, 2005 |
| *Doolittle, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-05033 (N.D. Ill.), filed August 31, 2005 | Edward and Babette Doolittle | Tristar Title, LLC, an Illinois limited liability company; and Cesar Gaitan, an individual | August 2, 2004 |
| *Dougherty, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-02482 (N.D. Ill.), filed May 3, 2006 | John and Geraldine Dougherty | Express Financial Services, Inc., a Pennsylvania corporation | April 15, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Duchene v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06750 (N.D. Ill.), filed August 25, 2006 | David John Duchene | Northwest Title & Escrow Corporation, a Minnesota corporation | October 19, 2005 |
| *Duhamel, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-05705 (N.D. Ill.), filed July 28, 2006 | Sandra L. Duhamel | Tapalian & Tadros, P.C., a professional corporation | January 13, 2005 |
| | Darlene L. Mandeville | Tapalian & Tadros, P.C., a professional corporation | September 16, 2005 |
| | Linda Barrett | Tapalian & Tadros, P.C., a professional corporation | July 30, 2005 |
| | Krystyna Kudyba | Tapalian & Tadros, P.C., a professional corporation | August 4, 2005 |
| | James H. Bailey | Tapalian & Tadros, P.C., a professional corporation | January 13, 2005 |
| | Richard Lenahan | Tapalian & Tadros, P.C., a professional corporation | November 9, 2005 |
| | Kenneth G. Burton | Tapalian & Tadros, P.C., a professional corporation | November 7, 2005 |
| | Michael L. Pepper | Tapalian & Tadros, P.C., a professional corporation | January 13, 2005 |
| | James E. Dorney | Tapalian & Tadros, P.C., a professional corporation | November 25, 2005 |
| | Paul and Guilhermina Aguiar | Tapalian & Tadros, P.C., a professional corporation | July 28, 2005 |
| | Dennis and Lisa Isom | Tapalian & Tadros, P.C., a professional corporation | June 7, 2005 |
| | Anthony N. Lepore | Tapalian & Tadros, P.C., a professional corporation | January 1, 2005 |
| *Dumas, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00108 (N.D. Ill.), filed October 24, 2006 | Brenda and Floyd Dumas | Mortgage Information Services, Inc., an Ohio corporation | May 14, 2005 |
| *Duncan, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV- | Calvin Duncan | Superior Closing Services, LLC, a Connecticut limited liability company | July 20, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| 02467 (N.D. Ill.), filed November 30, 2005 | Roger Shelton | Mortgage Information Services, Inc., an Ohio corporation | November 30, 2004 |
| | Nicole Rankin | Superior Closing Services, LLC, a Connecticut limited liability company | September 16, 2004 |
| | Shawn and Yvonne Jennings | Superior Closing Services, LLC, a Connecticut limited liability company | June 3, 2004 |
| | James and Donna Dugan | Synodi Videll & Green, LLC, a Connecticut limited liability company | August 16, 2004 |
| | Beverly Howlett | Superior Closing Services, LLC, a Connecticut limited liability company | August 23, 2004 |
| | Donna Stewart | Superior Closing Services, LLC, a Connecticut limited liability company | July 30, 2004 |
| | Todd Tofil and Corinne Robar | Superior Closing Services, LLC, a Connecticut limited liability company | June 17, 2004 |
| | John and Kristen Grammatico | Superior Closing Services, LLC, a Connecticut limited liability company | August 18, 2004 |
| | Joseph and Nadine Fernandez | Superior Closing Services, LLC, a Connecticut limited liability company | July 7, 2004 |
| | Sandra and Carlos Silva | Superior Closing Services, LLC, a Connecticut limited liability company | June 8, 2004 |
| | Ricardo Richards and Twinewa Young | Superior Closing Services, LLC, a Connecticut limited liability company | August 4, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | David Lallier | Superior Closing Services, LLC, a Connecticut limited liability company | January 30, 2004 |
| | Michael Olynciw | Superior Closing Services, LLC, a Connecticut limited liability company | November 13, 2002 |
| | Leebert and Evelyn Williams | Superior Closing Services, LLC, a Connecticut limited liability company | December 23, 2003 |
| | Joseph and Bonita Vaughn | Superior Closing Services, LLC, a Connecticut limited liability company | November 3, 2003 |
| | Edward Zilli | Superior Closing Services, LLC, a Connecticut limited liability company | April 6, 2004 |
| | Frank Inzitari | Superior Closing Services, LLC, a Connecticut limited liability company; and Keith A. Kathaway, an individual | October 21, 2003 |
| | Sharon Vitti | Law Offices of Gregory T. Lattanzi, LLC, a limited liability company | September 23, 2003 |
| | Sallie Booth | Superior Closing Services, LLC, a Connecticut limited liability company | March 17, 2003 |
| | Janet M. Edwards | Superior Closing Services, LLC, a Connecticut limited liability company | August 6, 2004 |
| *Dussia v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00325 (N.D. Ill.), filed November 24, 2006 | Lori Ann Dussia | LandAmerica Financial Group, Inc., a Virginia corporation | November 2, 2005 |
| *Eggert v. Ameriquest Mortgage Co., et al.*, | John Eggert | Lenders First Choice, a | February 10, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| Case No. 07-CV-01631 (N.D. Ill.), filed January 30, 2007 | | Texas corporation | |
| *Enix, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00907 (N.D. Ill.), filed October 12, 2006 | Michael and Michelle Enix | Mortgage Information Services, Inc., an Ohio corporation | October 21, 2004 |
| *Etienne v. Ameriquest Mortgage Co.*, Case No. 07-CV-00134 (N.D. Ill.), filed October 31, 2006 | Isha P. Etienne | Law Offices of Daniel J. Nigro, P.C., a professional corporation | August 19, 2004 |
| *Fagnant, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-00331 (N.D. Ill.), filed November 15, 2006 | Richard Fagnant | ATM Corporation of America, a Pennsylvania corporation | December 23, 2004 |
| | James Townes | Tapalian & Tadros, P.C., a professional corporation | June 23, 2006 |
| *Filian, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-02826 (N.D. Ill.), filed May 19, 2006 | Carlos and Alicia Margarita Filian | Tristar Title, LLC, an Illinois limited liability company | March 12, 2004 |
| *Fitzgerald, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-03123 (N.D. Ill.), filed February 6, 2006 | Susan and William Fitzgerald | Superior Closing Services, LLC, a Connecticut limited liability company | June 10, 2004 |
| | Thomas Gilbert | Superior Closing Services, LLC, a Connecticut limited liability company | July 24, 2004 |
| | Lorenzo and Johanna Taylor | Superior Closing Services, LLC, a Connecticut limited liability company | June 23, 2004 |
| *Fleming, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01340 (N.D. Ill.), filed January 19, 2007 | Brian and Vicki Fleming | Northwest Title and Escrow Corporation, a Minnesota corporation; General American Corporation; and Christopher M. Boedefeld, | January 21, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | | Esq., an individual | |
| *Fonseca, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01750 (N.D. Ill.), filed February 12, 2007 | Cliff and Debora Fonseca | Northwest Title and Escrow Corporation, a Minnesota corporation | December 9, 2004 |
| *Freeberg, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06717 (N.D. Ill.), filed December 5, 2006 | Marianne and Oscar Freeberg | Tek Title, LLC, an Illinois limited liability company | September 13, 2004 |
| | Cecilia Rowan | Northwest Title and Escrow Corporation, a Minnesota corporation | March 31, 2005 |
| *Fuller, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00291 (N.D. Ill.), filed January 17, 2007 | Kurt and Nancy Fuller | Fidelity National Title Insurance Company, a California corporation | June 15, 2004 |
| *Furgeson v. Ameriquest Mortgage Co., et al.*, Case No. 04-CV-07627 (N.D. Ill.), filed November 23, 2004 | Marie Furgeson | Northwest Title and Escrow Corporation, a Minnesota corporation | March 21, 2003 |
| *Gburek v. Ameriquest Mortgage*, Case No. 06-CV-02637 (N.D. Ill.), filed May 11, 2006 | Camille J. Gburek | Vital Signing, Inc., a California corporation; and Express Financial Services, Inc., a Pennsylvania corporation | August 7, 2002 and June 19, 2003 |
| *Geis, et al. v. Ameriquest Mortage Co., et al.*, Case No. 06-CV-01716 (N.D. Ill.), filed March 29, 2006 | Douglas and Evelyn Geis | Mortgage Information Services, Inc., an Ohio corporation | April 19, 2005 |
| *Gelman, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04684 (N.D. Ill.), | Carl and Hope Gelman | Complete Title Solutions, Inc., a Florida corporation | June 23, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| filed August 30, 2006 | | | |
| *Gerbig, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04868 (N.D. Ill.), filed September 8, 2006 | Karen Gerbig and Mary Christine Huston | Tristar Title, LLC, an Illinois limited liability company | March 2004 |
| *Gillespie v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-03427 (N.D. Ill.), filed April 3, 2006 | Cindy Gillespie | Mortgage Information Services, Inc., an Ohio corporation | August 22, 2005 |
| *Giuditta v. Ameriquest Mortgage Co.*, Case No. 07-CV-00112 (N.D. Ill.), filed September 29, 2006 | Edward V. Giuditta | Tapalian & Tadros, P.C., a professional corporation | April 26, 2005 |
| *Grabowski v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-02549 (N.D. Ill.), filed May 8, 2006 | Peter Grabowski | Tristar Title, LLC, an Illinois limited liability company | June 17, 2004 |
| *Green, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06945 (N.D. Ill.), filed December 15, 2006 | Donald and Sharon Green | Towne & Country Land Title Agency, Inc., an Ohio corporation | October 22, 2004 |
| *Griffin v. Town and Country Credit Corp., et al.*, Case No. 07-CV-10660 (D. Mass.), filed April 5, 2007 | Karen Griffin | Law Offices of Jonathan P. Ash | September 14, 2005 |
| *Hall v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06607 (N.D. Ill.), filed November 30, 2006 | Mary Hall | Lenders First Choice, a Texas corporation | February 2006 |
| *Harris v. Ameriquest Mortgage Co., et al.*, | Castella Williams | Law Title Insurance Company, Inc., an Illinois | July 8, 2002 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| Case No. 05-CV-04025 (N.D. Ill.), filed July 12, 2005 | Harris | corporation | |
| *Harris v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04030 (N.D. Ill.), filed May 15, 2006 | Melissa D. Harris | First Choice Signing Service, LLC, a California limited liability company | May 14, 2004 |
| *Harris, et al. v. Town & Country Credit Corp., et al.*, Case No. 06-CV-03048 (N.D. Ill.), filed June 2, 2006 | Sandra and Norman Harris | Tristar Title, LLC, an Illinois limited liability company | March 1, 2005 |
| *Harrison v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06947 (N.D. Ill.), filed December 15, 2006 | Jeremy Harrison | Northwest Title and Escrow Corporation, a Minnesota corporation | October 29, 2004 |
| *Hawkins v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-01848 (N.D. Ill.), filed April 4, 2006 | Nile E. Hawkins | Tristar Title, LLC, an Illinois limited liability company | April 5, 2005 |
| *Hayden, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00122 (N.D. Ill.), filed October 23, 2006 | Nancy and Terry Hayden | Nations Title Agency of Michigan, Inc., a Michigan corporation; and Ilene K. Chapel, an individual | November 22, 2005 |
| *Hodor, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00318 (N.D. Ill.), filed November 9, 2006 | Steven and Valerie Hodor | CloseNet, LLC, a Michigan limited liability company | February 6, 2004 |
| *Holzmeister v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-05911 (N.D. Ill.), | Michael Holzmeister | Tek Title, LLC, an Illinois limited liability company; and Michael Hogan, an individual | October 19, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| filed October 13, 2005 | | | |
| *Horne, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04715 (N.D. Ill.), filed June 5, 2006 | Mary Ann Horne and Ann M. Parker | Northwest Title and Escrow Corporation, a Minnesota corporation; and William J. Petz, an individual | June 10, 2005 |
| *Howard, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00095 (N.D. Ill.), filed January 8, 2007 | Gordon and Nola Howard | Nations Title Agency of Illinois, Inc., an Illinois corporation | January 27, 2004 |
| *Igaz, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00126 (N.D. Ill.), filed October 30, 2006 | Michael and Connie Igaz | Northwest Title and Escrow Corporation, a Minnesota corporation | October 2004 |
| *Jeffress, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-03423 (N.D. Ill.), filed March 20, 2006 | Scott and Pamela Jeffress | Mortgage Information Services, Inc., an Ohio corporation | June 21, 2005 |
| | Tammy M. Goods | Mortgage Information Services, Inc., an Ohio corporation | December 2, 2005 |
| | Rita and Kevin Guydon | Mortgage Information Services, Inc., an Ohio corporation | May 15, 2005 |
| *Jimenez, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-01009 (N.D. Ill.), filed February 18, 2005 | Nelson and Melinda Jimenez | Nations Title Agency of Illinois, Inc., an Illinois corporation | December 19, 2002 |
| *Johnson, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00772 (N.D. Ill.), filed February 8, 2007 | Karen and Stanley Johnson | Tristar Title, LLC, an Illinois limited liability company | January 15, 2005 |
| *Johnson, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07- | Andrew and Barbara Johnson | Nations Title Agency of Michigan, Inc., a Michigan corporation | April 1, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| CV-00125 (N.D. Ill.), filed October 30, 2006 | | | |
| *Jones, Jr. v. Argent Mortgage Co., et al.*, Case No. 06-CV-04038 (N.D. Ill.), filed April 7, 2006 | George Willis Jones, Jr. | Perrotta, Cahn & Prieto, P.C., a Georgia professional corporation | May 24, 2004 |
| *Jones, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-06743 (N.D. Ill.), filed August 11, 2006 | Errick and Carol Jones | Law Offices of Daniel J. Nigro, P.C., a professional corporation | August 18, 2003 |
| *Joyner, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06784 (N.D. Ill.), filed December 8, 2006 | Preston and Delana Joyner | Northwest Title and Escrow Corporation, a Minnesota corporation | July 20, 2004 |
| *Jude v. Town & Country Credit Corp., et al.*, Case No. 06-CV-01691 (N.D. Ill.), filed March 28, 2006 | Bobby and Kellie Jude | Northwest Title and Escrow Corporation, a Minnesota corporation | November 17, 2004 |
| *Julien, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-04037 (N.D. Ill.), filed February 13, 2006 | Lynn and Denise Julien | ATM Corporation of America, a Pennsylvania corporation | March 10, 2004 and February 14, 2005 |
| *Kanter, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01629 (N.D. Ill.), filed January 26, 2007 | Alan and Jane Kanter | Northwest Title and Escrow Corporation, a Minnesota corporation | March 8, 2005 |
| *Karlin v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00075 (N.D. Ill.), filed January 5, 2007 | David Karlin | Northwest Title and Escrow Corporation, a Minnesota corporation | August 4, 2005 |

24

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Kelsey v. AMC Mortgage Services, et al.*, Case No. 07-CV-01030 (N.D. Ill.), filed December 1, 2006 | Kellie Kelsey | Law Offices of Daniel J. Nigro, P.C., a professional corporation | December 24, 2003 |
| *Kessler v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04999 (N.D. Ill.), filed September 15, 2006 | Cathleen Kessler | Complete Title Solutions, Inc., a Florida corporation | August 19, 2004 |
| *Key v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-01077 (N.D. Ill.), filed February 23, 2005 | Earl E. Key | Nations Title Agency of Illinois, Inc., an Illinois corporation | May 18, 2002 |
| *Kielczewski v. Ameriquest Mortgage Co.*, Case No. 07-CV-00332 (N.D. Ill.), filed November 15, 2006 | Anna M. Kielczewski | Tapalian & Tadros, P.C., a professional corporation | September 22, 2005 |
| *King, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00117 (N.D. Ill.), filed October 10, 2006 | Christopher and Christina King | Nations Title Agency of Michigan, Inc., a Michigan corporation | August 10, 2004 |
| *Korlacki v. Ameriquest Mortgage Co.*, Case No. 06-CV-05704 (N.D. Ill.), filed May 18, 2006 | Stephen R. Korlacki | Tapalian & Tadros, P.C., a professional corporation | June 23, 2005 |
| *Kosla, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01630 (N.D. Ill.), filed January 29, 2007 | Christine and Joseph Kosla | Northwest Title and Escrow Corporation, a Minnesota corporation; and CloseNet, LLC, a Michigan limited liability company | March 5, 2004 |
| *Krise, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-05700 (N.D. Ill.), filed July 26, 2006 | George D. Krise and Dana S. Haynes | CloseNet, LLC, a Michigan limited liability company | March 17, 2004 |
| *Kukla v. Ameriquest Mortgage Co., et al.*, | Mike A. Kukla | Northwest Title and Escrow Corporation, a Minnesota | April 1, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| Case No. 06-CV-04720 (N.D. Ill.), filed June 2, 2006 | | corporation | |
| *Lacasse, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-01025 (N.D. Ill.), filed November 20, 2006 | David and Dorothy Lacasse | Mortgage Information Services, Inc., an Ohio corporation | June 19, 2004 |
| *LaCross v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04036 (N.D. Ill.), filed April 12, 2006 | Jayleen A. LaCross | Superior Closing Services, LLC, a Connecticut limited liability company | July 9, 2004 |
| *Lappin, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-05147 (N.D. Ill.), filed September 22, 2006 | William and Linda Lappin | Tristar Title, LLC, an Illinois limited liability company | August 24, 2004 |
| *Leach v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-05000 (N.D. Ill.), filed September 15, 2006 | Glenn Leach | First Merit Settlement Services, Inc., a Pennsylvania corporation; and Scott Parkhurst, an individual | May 15, 2004 |
| *Leal v. Ameriquest Mortgage Co.*, Case No. 06-CV-02475 (N.D. Ill.), filed January 27, 2006 | Patricia Leal | Tapalian & Tadros, P.C., a professional corporation | March 30, 2005 |
| *Lehr, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04721 (N.D. Ill.), filed June 2, 2006 | Mark and Patricia Lehr | Northwest Title and Escrow Corporation, a Minnesota corporation | June 16, 2005 |
| *Lewis, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00120 (N.D. Ill.), filed October 16, 2006 | Patrick and Violata Lewis | Nations Title Agency of Michigan, Inc., a Michigan corporation | August 8, 2005 |
| *L'Heureux, et al. v. Ameriquest Mortgage* | Michelle Farrell | Tapalian & Tadros, P.C., a professional corporation | August 9, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Co.*, Case No. 07-CV-01028 (N.D. Ill.), filed November 28, 2006 | Peter and Donna Gayauski | Tapalian & Tadros, P.C., a professional corporation | October 4, 2005 |
| | Angel Ramirez and Brenda Villegas-Ramirez | Law Offices of Daniel J. Nigro, P.C., a professional corporation | June 12, 2004 |
| | Steven Silva | Tapalian & Tadros, P.C., a professional corporation | August 9, 2004 |
| *Lindsey v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00308 (N.D. Ill.), filed November 6, 2006 | Annette M. Lindsey | Turnkey Title Corporation, a Florida corporation | January 24, 2004 |
| *Luedtke, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-04644 (N.D. Ill.), filed August 12, 2005 | Roger and Christine Luedtke | Tristar Title, LLC, an Illinois limited liability company | August 12, 2004 |
| *Lurry-Payne v. Town & Country, et al.*, Case No. 06-CV-01547 (N.D. Ill.), filed March 20, 2006 | Angela Lurry-Payne | Tristar Title, LLC, an Illinois limited liability company | January 13, 2005 |
| *Lyness, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-01512 (N.D. Ill.), filed December 18, 2006 | Gary and Linda Lyness | Tapalian & Tadros, P.C., a professional corporation | April 23, 2005 |
| *Macswain v. Ameriquest Mortgage Co.*, Case No. 07-CV-00110 (N.D. Ill.), filed September 29, 2006 | Andrea Macswain | Tapalian & Tadros, P.C., a professional corporation | May 25, 2005 |
| *Magliano, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-01945 (N.D. Ill.), filed April 7, 2006 | Mike and Judith Magliano | Tristar Title, LLC, an Illinois limited liability company | February 1, 2005 |
| *Maldonado, et al. v. Ameriquest Mortgage* | Shawn and Shari | North American Title Company, Inc., a California | September 2005 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Co., et al.*, Case No. 06-CV-06609 (N.D. Ill.), filed November 30, 2006 | Maldonado | corporation | |
| *Mangene, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-04713 (N.D. Ill.), filed July 25, 2006 | Joy and Gregory Mangene | Superior Closing Services, LLC, a Connecticut limited liability company | March 31, 2005 |
| *Martin, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-06761 (N.D. Ill.), filed September 15, 2006 | Joseph and Shelly Martin | Tapalian & Tadros, P.C., a professional corporation | March 23, 2005 |
| | Gary Crandall | Tapalian & Tadros, P.C., a professional corporation | May 24, 2004 |
| | Michael P. Champagne | Law Offices of Daniel J. Nigro, P.C., a professional corporation | October 15, 2004 |
| | Barbara A. Donovan | Lenders First Choice, a Texas corporation | September 26, 2005 |
| *Martin, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00324 (N.D. Ill.), filed November 24, 2006 | Norman and Christina Martin | Northwest Title and Escrow Corporation, a Minnesota corporation | June 29, 2005 |
| *Martinez, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06751 (N.D. Ill.), filed August 17, 2006 | Maria and Arturo Martinez | Northwest Title and Escrow Corporation, a Minnesota corporation | August 20, 2005 |
| *McGowan v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-01831 (N.D. Ill.), filed April 3, 2006 | Sandra R. McGowan | Nations Title Agency of Illinois, Inc., an Illinois corporation | June 3, 2003 |
| *McKimmy, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01628 (N.D. Ill.), filed January 26, 2007 | Ernie and Angelique McKimmy | Northwest Title and Escrow Corporation, a Minnesota corporation | June 22, 2005 |
| *Mikowski, et al., v. Ameriquest Mortgage* | Joseph and Patricia Mikowski | Indiana Title Network Company, an Indiana | March 2, 2005 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Co., et al.* , Case No. 06-CV-01737 (N.D. Ill.), filed November 14, 2005 | | corporation | |
| *Miller, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-01623 (N.D. Ill.), filed February 5, 2007 | Benjamin and Katherine Miller | Northwest Title and Escrow Corporation, a Minnesota corporation | June 30, 2004 |
| *Mills v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-03976 (N.D. Ill.), filed July 8, 2005 | Delois Mills | Residential Title Services, Inc., an Illinois corporation | July 23, 2002 |
| *Montgomery, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00326 (N.D. Ill.), filed November 27, 2006 | Michele and Mark Montgomery | Devon Title Agency, a Michigan corporation; and Gail A. Many, an individual | September 17, 2004 |
| *Muller, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06946 (N.D. Ill.), filed December 15, 2006 | Dorothy Muller and Joseph Bush | National Real Estate Information Services of New Jersey, Inc., a New Jersey corporation; and Lee S. Jacobowitz, Esq., an individual | May 12, 2005 |
| *Nauracy, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-03424 (N.D. Ill.), filed April 3, 2006 | Joseph and Geraldine Nauracy | Mortgage Information Services, Inc., an Ohio corporation | August 24, 2005 |
| *Nelson, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-03422 (N.D. Ill.), filed April 14, 2006 | Derek W. Nelson and Christopher E. Almond | Mortgage Information Services, Inc., an Ohio corporation | October 21, 2005 |
| *Nimox v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00316 (N.D. Ill.), filed November 6, 2006 | Yvonne Nimox | Nations Title Agency of Michigan, Inc., a Michigan corporation | April 26, 2005 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Ogun, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-00330 (N.D. Ill.), filed September 27, 2006 | Sigismund I. Ogun | Law Offices of Daniel J. Nigro, P.C., a professional corporation | March 8, 2004 |
| | Zenaida Pena | Mortgage Information Services, Inc., an Ohio corporation | May 17, 2004 |
| *O'Malley v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06373 (N.D. Ill.), filed November 21, 2006 | Lori O'Malley | Mortgage Information Services, Inc., an Ohio corporation | September 23, 2004 |
| *Onesimus, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00620 (N.D. Ill.), filed January 31, 2007 | Joseph and Myra Onesimus | Tristar Title, LLC, an Illinois limited liability company | December 22, 2004 |
| *Pacheco v. AMC Mortgage Services, Inc., et al.*, Case No. 07-CV-00136 (N.D. Ill.), filed October 30, 2006 | Linda Pacheco | Lenders First Choice, a Texas corporation | December 1, 2004 |
| *Parker, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-05701 (N.D. Ill.), filed August 3, 2006 | Randy and Carolyn Parker | Lenders First Choice, a Texas corporation | May 22, 2004 |
| *Pasacreta, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-02468 (N.D. Ill.), filed December 12, 2005 | Louis Pasacreta | National Real Estate Information Services, a Pennsylvania limited partnership | August 13, 2003 |
| | Angeline Dimaio-Dawkins | Superior Closing Services, LLC, a Connecticut limited liability corporation | January 14, 2004 |
| | Franklin and Denise Murphy | Superior Closing Services, LLC, a Connecticut limited liability company | January 16, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | Glen and Patricia Rogers | Superior Closing Services, LLC, a Connecticut limited liability company | July 8, 2004 |
| | Willie Mae Cue | Law Offices of Morris I. Olmer | December 13, 2002 |
| | Jervis and Judith Bell | Superior Closing Services, LLC, a Connecticut limited liability company | November 18, 2004 |
| | Carolyn F. Buniski | Superior Closing Services, LLC, a Connecticut limited liability company | August 14, 2003 |
| | Robert and Marci Day | MacKinnon & Tavano, LLC, a Connecticut limited liability company | August 18, 2003 |
| | Rafaela Guzman and Oscar Pena | Superior Closing Services, LLC, a Connecticut limited liability company | July 22, 2004 |
| | Cheryl Douglas-Chisholm | Superior Closing Services, LLC, a Connecticut limited liability company | January 13, 2004 |
| | Migdalia Figueroa | The Law Offices of Joseph J. D'Agostino, Jr., LLC, a Connecticut limited liability company | June 4, 2004 |
| | Nicholas and Ann Griffin | Superior Closing Services, LLC, a Connecticut limited liability company | June 21, 2003 |
| *Patterson v. Ameriquest Mortgage Co.*, Case No. 07-CV-00726 (N.D. Ill.), filed February 6, 2007 | Estelle Patterson | Tristar Title, LLC, an Illinois limited liability company | August 23, 2004 |
| *Pecor, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV- | Robert and Kari Covino | The Law Offices of Marc D. Foley, P.C., a Massachusetts professional corporation | August 4, 2005 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| 01511 (N.D. Ill.), filed December 19, 2006 | Edwin Vazquez and Denis M. Gonzalez | Nigro Associates, LLC, a Massachusetts limited liability company | November 12, 2004 |
| | Frances and Harold McCray | Tapalian & Tadros, P.C., a professional corporation | November 5, 2005 |
| *Pena, et al. v. Ameriquest Mortgage Co.*, Case No. 06-CV-06745 (N.D. Ill.), filed August 24, 2006 | Maria Pena | Law Offices of Daniel J. Nigro, P.C., a professional corporation | March 22, 2005 |
| | Ingrid B. Sales | Law Office of Joseph E. Nealon, a limited liability company | April 14, 2004 |
| | Gerda Laporte | Lenders First Choice, a Texas corporation | May 10, 2005 |
| | Antoinette Graham | Portnoy and Greene, P.C., a Massachusetts professional corporation | September 30, 2004 |
| | Anthony Ibarrondo | Lenders First Choice, a Texas corporation | June 4, 2004 |
| | John F. Delgado | Tapalian & Tadros, P.C., a professional corporation | February 19, 2005 |
| | Leo Rossi | Law Offices of Daniel J. Nigro, P.C., a professional corporation | February 6, 2004 |
| | James F. Pacheco | Portnoy and Greene, P.C., a Massachusetts professional corporation | June 9, 2006 |
| | Michael and Susan Correia | Law Office of Joseph E. Nealon, a limited liability company | May 21, 2004 |
| | Errick and Carol Jones | Lenders First Choice, a Texas corporation | October 29, 2004 |
| | Calvin Dunn Jr. | Lenders First Choice, a Texas corporation; and Law Office of Anthony A. Senerchia, Sr. P.C., a Massachusetts professional corporation | January 31, 2004 |
| *Perez, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-05373 (N.D. Ill.), | Juan and Consuelo Perez | Placer Title Company, a California corporation; and National Closing Solutions, | June 2, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| filed October 3, 2006 | | Inc., a Delaware corporation | |
| *Perry v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-06172 (N.D. Ill.), filed October 26, 2005 | Judy Perry | Tristar Title, LLC, an Illinois limited liability company | November 17, 2004 |
| *Pierce, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01745 (N.D. Ill.), filed February 2, 2007 | Jennifer and Michael Pierce | Towne & Country Land Title Agency, Inc., an Ohio corporation | June 5, 2004 |
| *Pintsak, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-05035 (N.D. Ill.), filed August 31, 2005 | William and Sandra Pintsak | Specialty Title Services, Inc., an Illinois corporation | November 14, 2002 |
| *Polydoros, et al. v. Town & Country Credit Corp., et al.*, Case No. 05-CV-06517 (N.D. Ill.), filed November 16, 2005 | Spyros and Betty Polydoros | Home Equity Title Services, Inc., an Illinois corporation | May 23, 2003 |
| *Preimesberger, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01627 (N.D. Ill.), filed January 25, 2007 | Jack and Deborah Preimesberger | Nations Title Agency of Michigan, Inc., a Michigan corporation | November 22, 2004 |
| *Punch, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06753 (N.D. Ill.), filed September 5, 2006 | Stephen and Donna Punch | National Real Estate Information Services of New Jersey, Inc., a New Jersey corporation; and Lenders First Choice, a Texas corporation | January 26, 2004 and October 21, 2004 |
| | Olivia Browne | Lenders First Choice, a Texas corporation | March 15, 2004 |
| | Herbert Lawson Jr. | Vital Signing, Inc., a California corporation | October 17, 2003 |
| | Stanley Marinia | Lee S. Jacobowitz, Esq., an individual | November 22, |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| | | | 2003 |
| | Sharon T. Bellamy | ATM Corporation of America, a Pennsylvania corporation | September 9, 2005 |
| | Mona Jones | John Weber & Associates, P.C., a New York professional corporation; and Avalon Abstract Corp., a New York corporation | February 22, 2005 |
| | Sentuel Jones & Cecily O. Palmer | Schop & Pleskow, LLP, a New York limited liability partnership | December 11, 2004 |
| *Regine, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-00131 (N.D. Ill.), filed August 30, 2006 | Roland and Lori J. Danis | Law Office of Joseph E. Nealon, a limited liability company | May 12, 2004 |
| | Holly Dupuis | Tapalian & Tadros, P.C., a professional corporation | February 17, 2005 |
| | LuAnn Singleton | Tapalian & Tadros, P.C., a professional corporation | May 28, 2005 |
| | Linda L. Rita | Tapalian & Tadros, P.C., a professional corporation | February 15, 2005 |
| *Rehbock v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-01581 (N.D. Ill.), filed March 21, 2006 | Charles and Linda Rehbock | Tristar Title, LLC, an Illinois limited liability company; and Cesar Gaitan, an individual | November 11, 2004 |
| *Robinson, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06763 (N.D. Ill.), filed September 26, 2006 | Shree and James Robinson | Nations Title Agency of Michigan, Inc., a Michigan corporation; and Northwest Title and Escrow Corporation, a Minnesota corporation | March 5, 2004 |
| *Rocco, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-02897 (N.D. Ill.), filed May 24, 2006 | Joseph and Nancy Rocco | Tristar Title, LLC, an Illinois limited liability company | January 27, 2005 |
| *Rodriguez, et al. v. Town & Country, et al.*, Case | Jose and Lynore | Northwest Title and Escrow Corporation, a Minnesota | February 3, 2005 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| No. 06-CV-01950 (N.D. Ill.), filed April 7, 2006 | Rodriguez | corporation | |
| *Rodriguez, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-02187 (N.D. Ill.), filed April 19, 2006 | Ralph Rodriguez and Barbara Chapman | Northwest Title and Escrow Corporation, a Minnesota corporation | 2002 |
| *Rodriguez, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01082 (N.D. Ill.), filed February 23, 2007 | Jose Rodriguez and Virginia Albarran | Tristar Title, LLC, an Illinois limited liability company | October 24, 2005 |
| *Rogers v. Town & Country Credit, et al.*, Case No. 06-CV-02736 (N.D. Ill.), filed May 16, 2006 | Truman Rogers | Northwest Title and Escrow Corporation, a Minnesota corporation | September 21, 2005 |
| *Rosemon, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06441 (N.D. Ill.), filed November 27, 2006 | Everett and Grundia Rosemon | Tristar Title, LLC, an Illinois limited liability company; and Roy W. Waller, an individual | July 29, 2004 |
| *Salazar, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-04162 (N.D. Ill.), filed July 19, 2005 | Sergio and Guadalupe Salazar | Nations Title Agency of Illinois, Inc., an Illinois corporation | May 28, 2002 |
| *Scott, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06786 (N.D. Ill.), filed December 8, 2006 | George and Cynthia Scott | Home-Land Title & Abstract Co., Inc., a Mississippi corporation | April 30, 2005 |
| *Sedgwick, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-02333 (N.D. Ill.), | Kelly and Jo Lynn Segwick | Nations Title Agency of Illinois, Inc., an Illinois corporation | May 23, 2003 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| filed April 26, 2006 | | | |
| *Seger, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01342 (N.D. Ill.), filed January 26, 2007 | John and Deanna Seger | Nations Title Agency of Illinois, Inc., an Illinois corporation | November 23, 2003 |
| *Shepard, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00320 (N.D. Ill.), filed November 9, 2006 | Terrance and Barbara Shepard | Nations Title Agency of Michigan, Inc., a Michigan corporation | May 21, 2004 |
| *Shields v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06787 (N.D. Ill.), filed December 8, 2006 | Judy Shields | Mortgage Information Services, Inc., an Ohio corporation | May 4, 2005 |
| *Simmons v. AMC Mortgage Services, Inc., et al.*, Case No. 07-CV-00135 (N.D. Ill.), filed October 27, 2006 | Edward Simmons | Tapalian & Tadros, P.C., a professional corporationl | June 2, 2005 |
| *Skanes v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06765 (N.D. Ill.), filed September 21, 2006 | Barbara J. Skanes | Northwest Title and Escrow Corporation, a Minnesota corporation | April 1, 2004 |
| *Smith v. Town & Country Credit Corp., et al.*, Case No. 06-CV-03704 (N.D. Ill.), filed July 10, 2006 | King Smith | Tristar Title, LLC, an Illinois limited liability company | November 23, 2004 |
| *Smith, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-02828 (N.D. Ill.), filed May 19, 2006 | Edward and Gail Smith | Tristar Title, LLC, an Illinois limited liability company | August 22, 2004 |
| *Smith, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 05- | Eric Smith and Guillermina | Nations Title Agency of Illinois, Inc., an Illinois | February 20, 2002 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| CV-00648 (N.D. Ill.), filed May 3, 2005 | Yanong | corporation | |
| *Smith, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04719 (N.D. Ill.), filed May 17, 2006 | Randall and Cindy Smith | Mortgage Information Services, Inc., an Ohio corporation | June 9, 2005 |
| *Solnin, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04866 (N.D. Ill.), filed September 8, 2006 | Gilbert and Janet Solnin | Lee S. Jacobowitz, Esq., an individual | March 19, 2005 |
| *Stratford, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01343 (N.D. Ill.), filed January 18, 2007 | Samuel and Christina Stratford | Northwest Title and Escrow Corporation, a Minnesota corporation | January 22, 2004 |
| *Sturgis v. Ameriquest Mortgage Co.*, Case No. 07-CV-00322 (N.D. Ill.), filed November 15, 2006 | Don Sturgis | Nations Title Agency of Michigan, Inc., a Michigan corporation; and Mike Smith, an individual | January 20, 2004 and May 13, 2004 |
| *Sutton, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04714 (N.D. Ill.), filed May 31, 2006 | Daniel and Jeanie Sutton | Northwest Title and Escrow Corporation, a Minnesota corporation; and Joshua Hiltibidal, an individual | June 23, 2004 |
| *Talley, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-01080 (N.D. Ill.), filed February 23, 2005 | Terry and Cheryl Talley | A Title Escrow Company, Inc., an Illinois corporation | September 30, 2003 |
| *Thibodeau, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-05148 (N.D. Ill.), filed September 22, 2006 | Jeffrey and Chantel Thibodeau | Schop & Pleskow, LLP, a New York limited liability partnership | February 12, 2004 |
| *Thompson v. Ameriquest Mortgage Co., et al.*, | Ira C. Thompson | Northwest Title and Escrow Corporation, a Minnesota | June 14, 2005 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| Case No. 07-CV-00323 (N.D. Ill.), filed November 20, 2006 | | corporation | |
| *Thompson v. Ameriquest Mortgage Company et al.*, Case No. 06-CV-1546 (N.D. Ill), filed March 20, 2006 | Kenneth and Linda Thompson | Tristar Title, LLC, an Illinois limited liability company, and Tia M. Martin, an individual | March 24, 2005 |
| *Thompson v. Town & Country Credit Corp., et al.*, Case No. 07-CV-02770 (N.D. Ill.), filed March 28, 2007 | Michael S. Thompson | Tapalian & Tadros, P.C., a professional corporation | March 9, 2005 |
| *Tieri v. Ameriquest Mortage Co., et al.*, Case No. 06-CV-02683 (N.D. Ill.), filed May 15, 2006 | Rocco C. Tieri | Tristar Title, LLC, an Illinois limited liability company | February 21, 2005 |
| *Titus-Ashford v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-07062 (N.D. Ill.), filed December 21, 2006 | Jacqueline Titus-Ashford | Tristar Title, LLC, an Illinois limited liability company | August 24, 2004 |
| *Treadwell, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-01078 (N.D. Ill.), filed February 23, 2005 | Gilbert and Genelle Treadwell | Nations Title Agency of Illinois, Inc., an Illinois corporation | October 23, 2002 |
| *Vanderpol, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06752 (N.D. Ill.), filed September 11, 2006 | William and Trudy VanderPol | Devon Title Agency, a Michigan corporation | December 17, 2003 |
| *Vincer v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-06749 (N.D. Ill.), filed August 22, 2006 | Daniel L. Vincer | Northwest Title and Escrow Corporation, a Minnesota corporation | September 2, 2005 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| *Walker, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-02807 (N.D. Ill.), filed May 18, 2006 | Tyrone and Betty Walker | Tristar Title, LLC, an Illinois limited liability company; and Tia M. Martin, an individual | April 22, 2005 |
| *Walsh, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04723 (N.D. Ill.), filed July 19, 2006 | Keith and Yvonne Walsh | Northwest Title and Escrow Corporation, a Minnesota corporation | September 2, 2004 |
| *Warren v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-04415 (N.D. Ill.), filed August 16, 2006 | Sheila Warren | Lawyers Title Insurance Corporation, a Virginia corporation | September 8, 2004 |
| *Washington, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00327 (N.D. Ill.), filed November 28, 2006 | Everett Washington and Monica A. Jones | Mortgage Information Services, Inc., an Ohio corporation | November 23, 2004 |
| *Wayland v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00319 (N.D. Ill.), filed November 9, 2006 | Clarence Wayland | Northwest Title and Escrow Corporation, a Minnesota corporation | February 28, 2004 |
| *Wertepny, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 05-CV-01402 (N.D. Ill.), filed March 9, 2005 | Brett and Yvonne Wertepny | Mortgage Information Services, Inc., an Ohio corporation | May 8, 2003 |
| *Wessel, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-01899 (N.D. Ill.), filed April 6, 2006 | Kevin and Sherry Wessel | Northwest Title and Escrow Corporation, a Minnesota corporation | May 21, 2003 |
| *Whitsett v. Ameriquest Mortgage Co., et al.*, Case No. 06-CV-05342 | Shalese Whitsett | Northwest Title and Escrow Corporation, a Minnesota | June 21, 2004 |

| Underlying Case | Name of Borrower Plaintiff(s) | Title Defendant(s) | Date of Agreement with Ameriquest and/or Argent |
|---|---|---|---|
| (N.D. Ill.), filed October 2, 2006 | | corporation | |
| *Williams, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-00127 (N.D. Ill.), filed October 31, 2006 | Yvette and Jesstin Williams | Northwest Title and Escrow Corporation, a Minnesota corporation | July 22, 2005 |
| *Winters v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01341 (N.D. Ill.), filed January 22, 2007 | Joe Winters | Nations Title Agency of Missouri, Inc., a Missouri corporation | May 20, 2005 |
| *Wisniewski, et al. v. Town & Country Credit Corp., et al.*, Case No. 06-CV-02697 (N.D. Ill.), filed May 15, 2006 | Joseph and Tasha Wisniewski | Nations Title Agency of Illinois, Inc., an Illinois corporation; and Jackie A. Martinez, an individual | June 10, 2004 |
| *Wright, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 07-CV-01027 (N.D. Ill.), filed December 18, 2006 | Evelyn Wright and Mary Battle | Devon Title Agency, a Michigan corporation | November 10, 2004 |
| *Wright, et al. v. Ameriquest Mortgage Co.*, Case No. 07-CV-01510 (N.D. Ill.), filed December 18, 2006 | Mary L. Wright | Law Offices of Daniel J. Nigro, P.C., a professional corporation | January 16, 2004 |
| | Denise Ritter | Law Offices of Daniel J. Nigro, P.C., a professional corporation | December 16, 2003 |

**EXHIBIT B**

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| *Allan, et al. v. Argent Mortgage Co., LLC*, case No. 06-CV-02470 (N.D. Ill.), filed January 23, 2006 | Robert L. Allan | Fairfield Mortgage Inc. | First American Title Insurance Company<br><br>Goldman Gruder & Woods, LLC, a Connecticut limited liability company | November 18, 2003 |
| | Fred R. and Barbara J. Bruch | Crown Mortgage Corp. | Stewart Title Guaranty Company<br><br>Liberty Title & Escrow Company, Inc. | May 23, 2003 |
| | Richard and Mary Ann Collier | Paradise Financial Services LLC | First American Title Insurance Company<br><br>Desautels, Mahoney & Kohn, LLC | March 22, 2004 |
| | Scott J. and Nancy Conry | Greenwich Mortgage Corp. | First American Title Insurance Company<br><br>Hillard N. Einbinder | October 16, 2003 |
| | George P. Edwards | Precision Financial Inc. | American Pioneer Title Insurance Company<br><br>Equity Settlement Services, Inc. | August 19, 2003 |
| | Debra W. Jenkins | Unknown Doe | Unknown Doe | September 12, 2003 |
| | Vernon L. and Kathleen Lanou | Oxford Home Mortgage LLC | First American Title Insurance Company | December 15, 2003 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| | | | Connecticut Closing Services (Timothy P. Kennedy) | |
| | Gardner L. Lewis, II and Patricia T. Brown | Crown Mortgage Corp. | First American Title Insurance Company<br><br>Liberty Title & Escrow Company, Inc. | October 27, 2003 |
| | William E. Reidell and Rosemary Arbuckle | Mortgage Depot | First American Title Insurance Company<br><br>Connecticut Closing Services (Timothy P. Kennedy) | June 10, 2004 |
| | De'Ana E. Shepard-Smith | Cross Country Lenders LLC | First American Title Insurance Company<br><br>Lieto & Greenberg LLP | December 12, 2003 |
| | Kenneth F. Sweeten, Jr. and Elizabeth Sweeten | Liberty Funding Services Inc. | Chicago Title Insurance Company<br><br>Sette & Bonadies, P.C. (Fred Sette) | February 14, 2003 |
| | Floyd T. and Helen Wallace | Allied Home Mortgage Capital Corp. | Connecticut Attorneys Title Insurance Company<br><br>Allen A. Currier | March 1, 2004 |
| *Almaguer v. Argent Mortgage Co., LLC, Univest Mortgage Corporation, and Carol Mejia*, case No. 06-CV-02024, filed April 21, 2005 | Miguel Almaguer | Univest Mortgage Corp. | Attorneys' Title Insurance Fund, Inc. | April 16, 2004 |
| *Ball-Daniel v.* | Vernell Ball- | Direct Banc | Stewart Title | January 15, |

| **Underlying Case** | **Name of Borrower-Plaintiff(s)** | **Broker Defendant(s)** | **Title Defendant(s)** | **Date of Agreement with Argent** |
|---|---|---|---|---|
| *Argent Mortgage Co., AMC Mortgage Services, Deutsche Bank National Trust Co.*, case No. 06-CV-06602 (N.D. Ill.), filed November 30, 2006 | Daniel | Mortgage LLC | Guaranty Company<br><br>Title Works, Inc., an Indian Corporation | 2004 |
| *Belfeld, et al. v. Argent Mortgage Co., GMAC Mortgage Corp.*, case No. 07-CV-01749 (N.D. Ill.), filed February 12, 2007 | Stuart and Marianne Belfeld | The Mortgage Store/ Global Mortgage Inc. | First American Title Insurance Company<br><br>Metropolitan Title Company, a Michigan Corporation | March 14, 2005 |
| *Black, et al. v. Argent Mortgage Co., Homeq Servicing Corp., Wells Fargo Bank*, case No. 06-CV-04418 (N.D. Ill.), filed August 16, 2006 | Rose J. Black and David E. Black, Sr. | American Elite Financial Inc. | Ticor Title Insurance Company/Chicago Title Insurance Company<br><br>Search 2 Close/ Search2Close of Columbus, Limited | August 12, 2004 |
| *Blain, et al. v. Argent Mortgage Co., Ameriquest Mortgage Co., Countrywide Home Loans*, case No. 07-CV-00124 (N.D. Ill.), filed October 27, 2006 | Christena and Thomas B. Blain | American Elite Financial Inc. | Ticor Title Insurance Company<br><br>Search 2 Close/ Search2Close of Columbus, Limited | March 16, 2004 |
| *Bowden v. Argent Mortgage Co., et al.*, case No. 06-CV-05991 (N.D. Ill.), filed November 2, 2006 | Brenda and Darron Bowden | 5 Star Financial Inc. | Lawyers Title Insurance Company<br><br>Law Title Insurance Company | April 2, 2004 |
| *Brown, et. al v. Ameriquest Capital Corp., et. al., Case No. 05-285 (C.D.* | Kevin and Maria Cusanelli | Southern Star Mortgage Corp. | Fidelity National Title Insurance Company of New York, a New York | October 14, 2003 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| *Ca.) filed August 1, 2005* | | | Corporation<br><br>Dey Smith & Collier LLC, a Connecticut Corporation | |
| *Conner, et al. v. Argent Mortgage Co., Ameriquest Mortgage Co., HomeQ Servicing Corp.*, case No. 07-CV-00121 (N.D. Ill.), filed October 23, 2006 | Douglas S. and Cherie E. Conner | Ace Mortgage Funding Inc. | Lawyers Title Insurance Corporation<br><br>Archer Land Title, Inc., an Indian Corporation | August 26, 2004 |
| *Cowles, et al. v. Argent Mortgage Co., Ameriquest Mortgage Co., AMC Mortgage Services*, case No. 07-CV-01625 (N.D. Ill.), filed January 22, 2007 | Thelma and Terry Cowles | B & P Mortgage, Inc. | First American Title Insurance Company<br><br>The Closing Office, a Michigan Corporation | June 14, 2004 |
| *Davis v. Argent Mortgage Co.*, case No. 07-CV-00313 (N.D. Ill.), filed November 20, 2006 | Deborah J. Davis | Equity Solutions Inc. | Transnation Title Insurance Company | April 13, 2004 |
| *Davis, et al. v. Argent Mortgage Co., Preferred Lending Group of Michigan, LLC*, case No. 07-CV-01344 (N.D. Ill.), filed December 22, 2006 | Michael and Janice Davis | Preferred Lending Group | Chicago Title Insurance Company<br><br>Chicago Title of Michigan | August 16, 2004 |
| *Eson, et al. v. Argent Mortgage Co., LLC, AMC Mortgage Services*, case No. 06-CV-02829 (N.D. Ill.), filed May 19, 2006 | Bryan L. and Karen Eson | A American Financial Group, Inc. | First American Title Insurance Company<br><br>Citywide Title Corporation, an Illinois Corporation | May 24, 2004 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| *Everhart, et al. v. Argent Mortgage Co., Ameriquest Mortgage Co., Ameriquest Mortgage Securities, Deutsche Bank National Trust*, case No. 07-CV-00306 (N.D. Ill.), filed January 17, 2007 | Terry and Margie Everhart | First USA Funding LLC | First American Title Insurance Company<br><br>Midland Title Security, Inc., an Ohio Corporation | August 11, 2003 |
| *Faison v. Argent Mortgage Co., LLC*, case No. 06-CV-03127 (N.D. Ill.), filed February 21, 2006 | Johnnie Faison | Unknown Doe | Unknown Doe | |
| *Foster v. Argent Mortgage Company LLC, et al.*, case No. 06-CV-06762 (N.D. Ill.), filed September 25, 2006 | Charles B. Foster | Universal Home Lending Inc. | First American Title Insurance Company<br><br>Cislo Title Company, a Michigan Corpoation | December 4, 2003 |
| *Garcia v. Argent Mortgage Co., Ameriquest Mortgage Co.*, case No. 06-CV-01829 (N.D. Ill.), filed April 3, 2006 | Nancy Garcia | Illinois Mortgage Funding Corp. | The Guarantee Title and Trust Company<br><br>Nations Title Agency of Illinois, an Illinois Corporation | February 18, 2004 |
| *Gburek v. Argent Mortgage, WMC Mortgage, Grand Mortgage, Residential Plus Mortgage Corp., Abraham Beddaoui, JP Morgan Chase Bank, FV1-Inc., and Mortgage Electronic Registration Systems*, case No. 06-CV-02639 (N.D. | Camille J. Gburek | Grand Mortgage Corporation | Stewart Title Guaranty Company<br><br>Absolute Title Services, Inc., an Illinois Corporation | February 9, 2004 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| Ill.), filed May 11, 2006 | | | | |
| *Grabs v. Argent Mortgage Co., Ameriquest Mortgage Co., Ameriquest Mortgage Securities, Inc., AMC Mortgage Services, Inc.*, case No. 06-CV-02809 (N.D. Ill.), filed May 18, 2006 | Fredrich W. Grabs | P & L Mortgage, Inc. | Lawyers Title Insurance Company<br><br>Law Title Insurance Company | January 30, 2004 |
| *Graf v. Argent Mortgage Co.*, case No. 06-CV-04726 (N.D. Ill.), filed June 15, 2006 | Herbert J. Graf, Jr. | Mortgage Pros USA | Mortgage Guarantee & Title Company<br><br>Access Title, LLC | June 17, 2003 |
| *Graham, et al. v. Ameriquest Mortgage Co., Argent Mortgage Co., Deutsche Bank National Trust Co., Dream House Mortgage Corp., AMC Mortgage Services, Litton Loan Servicing*, case No. 06-40195 (Mass.), filed August 4, 2006 | Kelly Ann I. and David A. Graham | Dream House Mortgage Corp. | Stewart Title Guaranty Company<br><br>Equity Title and Escrow | February 9, 2004 |
| *Gray, et al. v. Argent Mortgage Co., U.S. Bank, HomeQ Servicing Corp.*, case No. 07-CV-00317 (N.D. Ill.), filed November 9, 2006 | Lamar Gray, Sr. and Verna Joyce Gray | The Mortgage Edge Inc. | First American Title Insurance Company<br><br>Reagle Search & Signature Services, LLC | February 11, 2005 |
| *Green v. Argent Mortgage Co., Ameriquest Mortgage Co., AMC Mortgage Services,* | Viola Green | Envision Mortgage Solutions Inc. | Lawyers Title Insurance Corporation | January 15, 2004 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| *Ameriquest Mortgage Securities*, case No. 06-CV-02045 (N.D. Ill.), filed April 11, 2006 | | | | |
| *Heard, et al. v. Argent Mortgage Co., LLC, Ameriquest Mortgage Co., AMC Mortgage Services, Inc., Homeq Servicing Corp., and Does 1-15*, case No. 07-CV-00119 (N.D. Ill.), filed October 13, 2006 | Renza and Glories Heard | Top Flite Financial Inc. | First American Title Insurance Company<br><br>Michigan Trust Title Agency, LLC | December 10, 2004 |
| *Howze, et al. v. Ameriquest Mortgage Co., Argent Mortgage Co., AMC Mortgage Services, HomeQ Servicing Corp., Wells Fargo*, case No. 07-CV-01624 (N.D. Ill.), filed January 22, 2007 | Tregg E. and Wanda L. Howze | Great American Mortgage Corp. | American Pioneer Title Insurance Company<br><br>Northwest Title and Escrow Corp. | January 21, 2005 |
| *Ishmael, et al. v. Argent Mortgage Co., HomeQ Servicing Corp.*, case No. 06-CV-06872 (N.D. Ill.), filed December 12, 2006 | Babatunde and Seidat Ishmael | Chicago Mortgage Acceptance | First American Title Insurance Company<br><br>Citywide Title Corporation | June 11, 2005 |
| *Jenkins v. Argent Mortgage Co, Ameriquest Mortgage Co., AMC Mortgage Services, Ameriquest Mortgage Securities*, case No. 06-CV-02044 (N.D. Ill.), | Deborah H. Jenkins | Investment Mortgage Group | Commonwealth Land Title Insurance Company<br><br>Republic Title Company | December 9, 2003 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| filed April 11, 2006 | | | | |
| *Jiles v. Argent Mortgage Co., Option One Mortgage Co., Countrywide Home Loans*, case No. 06-CV-02771 (N.D. Ill.), filed May 17, 2006 | Velma Jean Jiles | Integrity 1st Mortgage | Stewart Title Guaranty Company<br><br>Stewart Title Company of Illinois | July 26, 2004 |
| *Johnson, et al. v. Argent Mortgage Co., Ameriquest Mortgage Co., Ameriquest Mortgage Securities, AMC Mortgage Services*, case No. 07-CV-01345 (N.D. Ill.), filed December 26, 2006 | Philip E. and Lisa Johnson | Classic Home Mortgage Corp. | Old Republic National Title Insurance Company<br><br>Nations Title Agency of Michigan, Inc./ Nations Title Company | August 4, 2004 |
| *Jones, Jr. v. Argent Mortgage Co. and Deutsche Bank National Trust Co.*, case No. 06-CV-04038 (N.D. Ill.), filed April 7, 2006 | George Willis Jones, Jr. | Top Choice Mortgage LLC | Stewart Title Guaranty Company<br><br>Perrotta, Cahn & Prieto, P.C. | May 24, 2004 |
| *Knox, et al. v. Ameriquest Mortgage Co., Argent Mortgage Co.*, case No. 05-CV-07100 (N.D. Ill.), filed January 14, 2005 | Heladio and Maria Arellanes | Pan American Funding Group Inc. | Chicago Title Company | January 21, 2003 |
| *Landgren v. Argent Mortgage Co., Ameriquest Mortgage Co., Ameriquest Mortgage Securities, AMC Mortgage Services, Executive* | David E. Landgren | Great Lakes Mortgage Co., LLC | LandAmerica Financial Group, Inc.<br><br>Michigan Title Company | October 31, 2003 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| *Appraisals*, case No. 06-CV-06766 (N.D. Ill.), filed September 25, 2006 | | | | |
| *Manier, et al. v. Argent Mortgage Co., HomeQ Servicing Corp., Elen Inc., Prime Plus Mortgage Inc.*, case No. 07-CV-10651 (E.D. Mich.), filed February 13, 2006 | Marlon and Tanya S. Manier | Prime Plus Mortgage | First American Title Insurance Company<br><br>Michigan Land Title Agency, Inc. | March 25, 2005 |
| *Martin v. Argent Mortgage Co, Ameriquest Mortgage Co., AMC Mortgage Services, Ameriquest Mortgage Securities*, case No. 06-CV-01947 (N.D. Ill.), filed April 7, 2006 | Johnny A. Martin | Citywide Mortgage Pros Inc. | Commonwealth Land Title Insurance Company<br><br>Residential Title Services, Inc. | September 17, 2003 |
| *McCall, et al. v. Ameriquest Mortgage Co., Argent Mortgatge Co., and Countrywide Home Loans*, case No. 06-CV-03126 (N.D. Ill.), filed March 14, 2006 | John and Priscilla McCall | Cross Country Lenders LLC | First American Title Insurance Company<br><br>Lieto & Greenberg LLP | November 24, 2003 |
| | Yvonne and Roan Sourragh | Paradise Financial Services LLC | First American Title Insurance Company<br><br>Desautels, Mahoney & Kohn, LLC | March 25, 2004 |
| | Jay and Dawn Forget | Hamilton Mortgage Co. | First American Title Insurance Company<br><br>Lieto & Greenberg LLP | 4/23/2004 (says 2003 in complaint) |
| | Sherrie L. | William Hajj | Chicago Title | October 22, |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| | Passaro | Mortgage Company LLC | Insurance Company  Jones, Damia, Kaufman, Borofsky & DePaul LLC | 2003 |
| | Nadine Robinson | L & S Mortgage LLC | Old Republic National Title Insurance Company  Morris I. Olmer | April 4, 2003 |
| *Mitchell v. Argent Mortgage Co., Wells Fargo Bank, NA as Trustee for the Certificate Holders of Asset-Backed Pass-Through Certificates Series 2004-WCW1*, case No. 05-ap-01276 (Mass.), filed March 17, 2005 | Joanne Mitchell | Unknown Doe | Unknown Doe | |
| *Moss, et al v. Argent Mortgage Co.*, case No. 06-CV-06754 (N.D. Ill.), filed August 30, 2006 | Charles C. Moss | Beacon Mortgage Services LLC | Stewart Title Guaranty Company  Medici & Sciacca, P.C. | May 26, 2004 |
| | Herbert J. Graf, Jr. | Mortgage Pros USA | Mortgage Guarantee & Title Company  Access Title, LLC | July 1, 2004 |
| | Laurie Negri | Kerry A. Sumner | Commonwealth Land Title Insurance Company | December 16, 2003 |
| | Thomasina L. Turner | Unknown Doe | Unknown Doe | February 12, 2004 |
| *Murphy, et. al. v. Ameriquest Mortgage Co.*, Case No. 04-12651 (Mass.) filed | David and Janet Wakefield | Allied Home Mortgage Capital Corp | Chicago Title Company, an Illinois Corporation | April 17, 2003 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| February 16, 2005 | | | | |
| *Murphy, et al. v. Argent Mortgage Co.*, case No. 06-CV-00781, filed December 4, 2006 | David L. and Cherry J. Murphy | Amstar Mortgage Corp. | First American Title Insurance Company<br><br>Texas Nations Title Agency, Inc. | October 14, 2003 |
| *O'Neil, et al. v. Argent Mortgage Co., Ameriquest Mortgage Co., Deutsche Bank National Trust Company*, case No. 06-CV-06375 (N.D. Ill.), filed November 21, 2006 | Dennis and Rita O'Neil | BLS Funding Corp. | Chicago Title Insurance Company<br><br>Colonial Title & Escrow, Inc. | November 24, 2003 |
| *Orrison, et al. v. Argent Mortgage Co., Genesis Lending Corporation; Ameriquest Mortgage Co., Countrywide Home Loans*, case No. 07-CV-00128 (N.D. Ill.), filed November 3, 2006 | Joel K. and Lana S. Orrison | Genesis Mortgage Corp. | Title Source, Inc. | April 26, 2004 |
| *Pasacreta, et al. v. Ameriquest Mortgage Co., Argent Mortgage Co., Countrywide Home Loans, HSBC Mortgage Svc, and Ameriquest Funding II REO Subsidiary, LLC*, case No. 06-CV-02468 (N.D. Ill.), filed December 12, 2005 | Louis Pasacreta | Southern Star Mortgage Corp. | American Pioneer Title Insurance Company<br><br>National Real Estate Information Services | August 13, 2003 |
| | Montria Hospod and Michael Rosh | Advisor Mortgage LLC | Ticor Title Insurance Company | June 25, 2004 |
| | Robert and Marci Day | Travis Mortgage LLC | First American Title Insurance Company | August 18, 2003 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| | | | MacKinnon & Tavano | |
| | Migdalia Figueroa | Fairway Financial Group LLC | First American Title Insurance Company<br><br>Law Offices of Joseph J. D'Agostino, Jr. | June 4, 2004 |
| *Purdy-Roth, et al. v. Argent Mortgage Co., LLC, Ameriquest Mortgage Company, AMC Mortgage Services*, case No. 06-CV-01738 (N.D. Ill.), filed October 26, 2005 | Katrina D. Purdy-Roth and Jerry Roth | American Residential Mortgage/ HWB Inc. | Fidelity National Title Insurance Company<br><br>Patriot Title Company, Inc. | October 2, 2003 |
| *Roelofs, et al. v. Argent Mortgage Co., Wells Fargo Home Mortgage Inc. dba America's Servicing Co., Ameriquest Mortgage Co.*, case No. 07-CV-0315 (N.D. Ill.), filed November 6, 2006 | Donald and Kathy Roelofs | ACRO Mortgage LLC | First American Title Insurance Company<br><br>Triunion Title, LLC | November 15, 2004 |
| *Roop, et al. v. Argent Mortgage Co., Ameriquest Mortgage Securities, AMC Mortgage Services, EMC Mortgage Corp.*, case No. 07-CV-01347 (N.D. Ill.), filed December 26, 2006 | Christopher R. and Sarah Roop | American Elite Financial Inc. | Ticor Title Insurance Company<br><br>Search 2 Close/ Search2Close of Columbus, Limited | December 31, 2004 |
| *Salinas, et al. v. Argent Mortgage Co.*, case No. 07- | Jose E., Juanita, and Ruth Salinas | Freedom Mortgage Team, Inc. | Stewart Title Guaranty Company/ Stewart | February 28, 2005 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| CV-0254 (N.D. Ill.), filed January 16, 2007 | | | Title Insurance Company<br><br>Law Title Insurance Agency, Inc.-Naperville | |
| *Saunders, et al. v. Ameriquest Mortgage Co., Ameriquest Capital Holding Corp., Ameriquest Mortgage Securities, Town & Country Credit Corp., Argent Mortgage Co., and Long Beach Acceptance Corp.*, case No. 06-CV-01741 (N.D. Ill.), filed March 28, 2005 | Dorothy Stevens | Eldridge Mortgage Company Inc. | Commonwealth Land Title Insurance Company<br><br>Heights Title Agency, Inc. | May 29, 2003 |
| | Brittney Smith | Lake Front Mortgage Inc. | Ohio Bar Title Insurance Company<br><br>Bankers Title & Escrow Agency, Inc. | November 18, 2005 |
| | Nicole McCorkle | Supreme Funding Mortgage Services Inc. | Transnation Title Insurance Company<br><br>Choice Title Agency, Inc. | August 12, 2005 |
| | Daisy Mobley (called Daisy Moblin in complaint) | Great Lakes National Mortgage Banc Inc./ Great Lakes National Mortgage Co. | Stewart Title Guaranty Company<br><br>Quality Title Agency, Inc. | December 30, 2003 |
| | Veronica Thomas | Ohio Lending Solutions | Fidelity National Title Insurance Company<br><br>Quality Title Agency, Inc. | February 6, 2003 |
| *Scott, et al. v. Argent Mortgage Co., Ameriquest Mortgage Co., Ameriquest Mortgage Securities, AMC Mortgage Services, Deutsche Bank National Trust* | Kenneth J. and Marcey L. Scott | Union Mortgage Services of Cleveland | Stewart Title Guaranty Company<br><br>Landsel Title Agency, Inc. | January 16, 2004 |

| Underlying Case | Name of Borrower-Plaintiff(s) | Broker Defendant(s) | Title Defendant(s) | Date of Agreement with Argent |
|---|---|---|---|---|
| *Co.*, case No. 07-CV-00252 (N.D. Ill.), filed January 16, 2007 | | | | |
| *Surin v. Argent Mortgage Co., Alpha Mortgage Lending LLC, Countrywide Home Loans, and Advantage Equity Svcs, Inc.*, case No. 06-CV-03584 (N.D. Ill.), filed September 14, 2005 | Wetzer Surin | Alpha Mortgage Lending | Stewart Title Guaranty Company<br><br>Advantage Equity Services, Inc./ CBC Companies | May 6, 2005 |
| *Veinot, et al. v. Argent Mortgage Co., Ameriquest Mortgage Co.*, case No. 06-CV-04034 (N.D. Ill.), filed March 30, 2006 | Brian K. and Laura L. Veinot | Mansfield Mortgage Services Inc. | Fidelity National Title Insurance Company of New York<br><br>Fidelity Title & Escrow, Inc. | July 27, 2004 |
| *Wilson, et al. v. Argent Mortgage Co., Citifinancial Mortgage Co.*, case No. 07-CV-01747 (N.D. Ill.), filed February 6, 2007 | Kurt H. Wilson, Sr. and Teresa R. Wilson | Americare Mortgage Corporation | Transnation Title Insurance Company<br><br>Battersby Title, Inc. | August 13, 2004 |

## <u>CERTIFICATE OF SERVICE</u>

I, Bernard E. LeSage, hereby certify that on this 31st day of July 2007, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


By:  _____/s/  Bernard E. LeSage_____