**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) MDL No. 1715 ) ) Lead Case No. 05-cv-07097 ) |
| THIS DOCUMENT RELATES TO DOCKET #859 | ) Centralized before The Honorable ) Marvin E. Aspen ) |
| AMERIQUEST MORTGAGE CO., | ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| TRANS UNION, LLC, et. al, | ) ) |
| Third-Party Defendants. | ) ) ) |

<u>**MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANT
CHOICEPOINT PRECISION MARKETING LLC'S MOTION TO DISMISS**</u>

Laurie S. Fulton (lfulton@wc.com)
Jon R. Fetterolf (jfetterolf@wc.com)
Paven Malhotra (pmalhotra@wc.com)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Attorneys for Third-Party Defendant
ChoicePoint Precision Marketing LLC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ................................................................................................. 1

LEGAL STANDARD ............................................................................................. 2

ARGUMENT ....................................................................................................... 3

I.    AMERIQUEST'S CLAIMS MUST BE DISMISSED BECAUSE THEY ARE
      BARRED BY THE FAIR CREDIT REPORTING ACT. .................................... 3

      A.    Because There Is No Right to Indemnification or Contribution Under
            the FCRA, Ameriquest Has No "Equitable" Right to Indemnification
            or Contribution. ....................................................................................... 3

      B.    The FCRA's Exclusion of Indemnification and Contribution Claims
            also Bar Ameriquest's Contract and Tort Claims. .................................. 4

II.   AMERIQUEST'S CLAIMS MUST BE DISMISSED BECAUSE THEY ARE
      PRECLUDED BY THE APPLICABLE CONTRACTUAL AGREEMENTS. ................ 7

      A.    The Breach of Contract Claim Must Be Dismissed Because
            ChoicePoint Had No Contractual Duty To Ensure Ameriquest
            Complied with the FCRA. ....................................................................... 7

            1.    Under the Applicable Agreement, Ameriquest—Not
                  ChoicePoint—Assumed Responsibility for the Content of
                  Customer Letters. ......................................................................... 8

            2.    ChoicePoint Assumed No Duty To Ensure Ameriquest
                  Complied with the FCRA Under Any Oral Agreements. ........... 9

      B.    The Tort, Indemnification, and Contribution Claims Must Also Be
            Dismissed Because Ameriquest Provided ChoicePoint with a Release
            of Any Liability Stemming from ChoicePoint's Provision of Services. .............. 10

      C.    Ameriquest's 2005 Service Agreement Reaffirmed the Absence of
            Any ChoicePoint Duty To Review Ameriquest's Customer Letters and
            the Limitations on ChoicePoint's Liability. .......................................... 11

III.  AMERIQUEST'S TORT CLAIMS MUST BE DISMISSED BECAUSE
      THEY FAIL AS A MATTER OF GEORGIA LAW. ..................................... 12

A.    The Negligence Claim Must Be Dismissed Because ChoicePoint
      Owed No Duties Outside Those Imposed by Its Contractual
      Agreements. .................................................................................................. 12

B.    The Negligent Misrepresentation Claim Must Be Dismissed............................... 13

IV.   AMERIQUEST'S RESCISSION CLAIM MUST BE DISMISSED. ............................. 14

CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........................................................2, 9, 13

*Donovan v. Robbins*, 752 F.2d 1170 (7th Cir. 1985) ....................................................................4

*Gilmore v. List & Clark Construction Co.*, 866 F. Supp. 1310 (D. Kan. 1994) ........................5, 6

*Kay v. First Cont'l Trading, Inc.*, 966 F. Supp. 753 (N.D. Ill. 1997) .........................................3, 6

*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941) ....................................12

*Kudlicki v. MDMA, Inc.*, 2006 U.S. Dist. LEXIS 27971 (N.D. Ill. May 10, 2006)................3, 4, 6

*Lyle v. Food Lion, Inc.*, 954 F.2d 984 (4th Cir. 1992) ................................................................5, 6

*McSherry v. Capital One FSB*, 236 F.R.D. 516 (W.D. Wash. 2006) .........................................4, 6

*Mortgages, Inc. v. United States District Court for the District of Nev.*, 934 F.2d 209 (9th Cir. 1991)........................................................................................................5, 6

*Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002) ................................................7

*Rountree v. Washington National Insurance Co.*, 2007 U.S. Dist. LEXIS 36921 (S.D. Ga. May 21, 2007)........................................................................................................13

*Saye v.UnumProvident Corp.*, 2006 U.S. Dist. LEXIS 73426 (N.D. Ga. Oct. 2, 2006) ..............14

*Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 470 (D.D.C. 1994) ....................................................6

*Wright v. Associated Insurance Cos*, 29 F.3d 1244 (7th Cir. 1994) ...............................................7

*Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987) ...........4

### STATE CASES

*Capitol Materials, Inc. v. Kellogg & Kimsey, Inc.*, 530 S.E.2d 488 (Ga. Ct. App. 2000).............14

*Clark v. General Motors Acceptance Corp.*, 363 S.E.2d 813 (Ga. 1987) .....................................10

*GE Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636 (Ga. 2005) ....................................................12

*Gerdes v. Russell Rowe Comm'ns, Inc.*, 502 S.E.2d 352 (Ga. Ct. App. 1998) ..............................10

*Henderson Elevator Co. v. Na. Georgia Milling Co.*, 55 S.E. 50 (Ga. 1906) ...............................15

*Long v. Jim Letts Oldsmobile, Inc.*, 217 S.E.2d 602 (Ga. Ct. App. 1975).....................................12

*Mayor & City of Douglasville v. Hilldebrand*, 333 S.E.2d 674 (Ga. Ct. App. 1985)...................15

*Morris B. Chapman & Associates, Ltd. v. Kitzman*, 739 N.E.2d 1263 (Ill. 2000) ........................12

*Rome Healthcare, LLC v. Peach Healthcare System, Inc.*, 590 S.E.2d 235
    (Ga. Ct. App. 2003).....................................................................................................................9

*Vulcan Materials Co. v. Driltech, Inc.*, 306 S.E.2d 253 (Ga. 1983)...............................................12

*Wender & Roberts, Inc. v. Wender*, 518 S.E.2d 154 (Ga. Ct. App. 1999)......................................14

*Wheeler v. Pioneer Investments, Inc.*, 122 S.E.2d 518 (Ga. 1961).................................................15

## FEDERAL RULES

Fed. R. Civ. P. 9(b) ..........................................................................................................................15

Fed. R. Civ. P. 12(b)(6).......................................................................................................................2

Fed. R. Civ. P. 14 ................................................................................................................................5

## STATE STATUTES

Ga. Code Ann. § 13-4-60....................................................................................................................14

Ga. Code Ann. § 13-4-62..............................................................................................................14, 15

## RESTATEMENTS

Restatement (Second) of Conflict of Law § 6 (1971)........................................................................12

Restatement (Second) of Conflict of Law § 145 (1971)....................................................................12

COMES NOW Third-Party Defendant ChoicePoint Precision Marketing LLC[1]

("ChoicePoint"), through counsel, in support of its motion to dismiss and states as follows:

## INTRODUCTION

In its Third-Party Complaint, Ameriquest Mortgage Company ("Ameriquest") attempts to shift any potential liability for its Fair Credit Reporting Act ("FCRA") violations to ChoicePoint and other third-party defendants by alleging a variety of tort, contract, and equitable claims—all of which stem from (and arise only) upon a finding that Ameriquest violated the FCRA. These claims are improper for a variety of independent reasons, and ChoicePoint respectfully requests, by its Motion, that the Court dismiss the Third-Party Complaint as to ChoicePoint.

This litigation arises from a complaint filed by a putative class of Non-Borrower Plaintiffs that alleges Ameriquest violated the FCRA by accessing their personal credit reports without a "permissible purpose" because it sent them letters that did not constitute a "firm offer of credit." *See* Consolidated Complaint for the Claims of Non-Borrowers, Docket No. 323. In an attempt to shift responsibility for its alleged FCRA violations, Ameriquest filed a Third-Party Complaint alleging that if it violated the FCRA, it was only because ChoicePoint and the other third-party defendants violated the FCRA. By virtue of contractual arrangements to supply Ameriquest with pre-screened lists of consumers to facilitate its direct-mail marketing campaign, Ameriquest alleges that ChoicePoint and the other third-party defendants were also responsible for ensuring that the letters Ameriquest sent to consumers constituted "firm offers of credit" under the FCRA. *See* Ameriquest Mortgage Company Third-Party Compl. ¶¶ 8,12. Docket No. 859 ("Third-Party Compl."). Ameriquest makes claims for breach of contract (Count II), negligence (Counts VII & VIII), indemnification and contribution (Counts V & VI), and

---

[1] Although the caption in the Third-Party Complaint reads "ChoicePoint Precision Marketing Inc.," the correct name is "ChoicePoint Precision Marketing LLC."

rescission (Count IX)—all of which rely on an initial determination that Ameriquest violated the FCRA.

It is, in part, because these claims rest entirely on the FCRA that they must be dismissed. First, Ameriquest's claims are no more than indemnification and contribution claims, which are specifically disallowed under the FCRA. Second, the applicable agreements that govern ChoicePoint and Ameriquest's relationship contain unambiguous provisions that demonstrate that Ameriquest—not ChoicePoint—bears all responsibility for any alleged FCRA violations it committed. Finally, Ameriquest's tort and rescission claims are barred on a variety of legal grounds. Accordingly, the Third-Party Complaint must be dismissed as to ChoicePoint.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim must be granted where a plaintiff has not alleged facts that would entitle it to relief. Fed. R. Civ. P. 12(b)(6). The Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly* makes clear that a complaint must "provide the grounds of [plaintiff's] entitle[ment] to relief" and " requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . . Factual allegations must be enough to raise a right to relief above the speculative level." 127 S. Ct. 1955, 1964-65 (2007) (citation and internal quotations omitted) (Rule 12(b)(6) case). Thus, to avoid dismissal, plaintiffs must state "enough facts to . . . nudge[ ] their claim[ ] across the line from conceivable to plausible." *Id*. at 1974 (emphasis added). When the existence of a possible agreement is at issue, the complaint must demonstrate "enough factual matter (taken as true) to suggest that an agreement was made." *Id*. at 1965.

**ARGUMENT**

**I.   AMERIQUEST'S CLAIMS MUST BE DISMISSED BECAUSE THEY ARE BARRED BY THE FAIR CREDIT REPORTING ACT.**

In its Third-Party Complaint, Ameriquest alleges a variety of common law claims against ChoicePoint—claims for breach of contract, indemnification, contribution, negligent misrepresentation, and negligence. *See* Third-Party Compl. (Counts II, V-VIII). All of the claims separately seek damages in the amount "of any judgment, settlement, attorneys' fees, costs or other equitable relief" that is awarded to the Non-Borrowers Plaintiffs. *Id*. at ¶¶ 49, 69, 75, 81 & 88. Because these claims first require that Ameriquest is liable to the Non-Borrower Plaintiffs under the FCRA, all of these claims are entirely derivative of FCRA claims in the Non-Borrowers' Complaint (regardless of how Ameriquest captions them), and therefore all of these claims are properly characterized as claims for indemnification and contribution. Because this Court as well as other courts have found that the FCRA does not provide a right to seek indemnification or contribution, either explicitly or implicitly, these claims must be dismissed.

**A.   Because There Is No Right to Indemnification or Contribution Under the FCRA, Ameriquest Has No "Equitable" Right to Indemnification or Contribution.**

Courts have repeatedly found that there is no right to contribution or indemnification under the FCRA. *See Kudlicki v. MDMA, Inc.*, No. 05 C 2589, 2006 U.S. Dist. LEXIS 27971, at *7-13 (N.D. Ill. May 10, 2006); *Kay v. First Cont'l Trading, Inc.*, 966 F. Supp. 753, 754-55 (N.D. Ill. 1997). The FCRA does not expressly or by implication create a right to contribution and indemnification; nor are such rights recognized under federal common law. *Id.* As such, federal courts in this and other districts have found no right to contribution or indemnification

under the FCRA or federal common law, and dismissed attempts to plead such claims. *See id.*;

*McSherry v. Capital One FSB,* 236 F.R.D. 516, 520-23 (W.D. Wash. 2006).[2]

Recognizing these limitations, Ameriquest tries to circumvent the FCRA by citing

"principles of equity" as the source of its contribution and indemnification claims. Third-Party

Compl. ¶¶ 69, 75. But courts in the Seventh Circuit have determined that where a party's

liability stems from its violation of a federal statute, that statute governs the availability of

contribution and indemnification. *See, e.g.*, *Donovan v. Robbins*, 752 F.2d 1170, 1179 (7th Cir.

1985) ("Where contribution is sought by one who has had to pay damages for violating a federal

statute, the scope and limitations of the right of contribution are invariably treated as questions of

federal rather than state law."); *Kudlicki*, 2006 U.S. Dist. LEXIS, at *6 (applying *Donovan* to

dismiss equitable contribution and implied indemnity claims under the FCRA). *See also*

*McSherry*, 236 F.R.D. at 520-23 (struck third-party plaintiff's request for "equitable" indemnity

after finding no right to indemnity under the FCRA). Accordingly, Ameriquest has no right to

equitable indemnification or contribution. No matter how Ameriquest pleads its indemnification

and contribution claims, both derive from the FCRA violations alleged in the Non-Borrowers'

Complaint. As such, Counts V and VI and must be dismissed.

### B. The FCRA's Exclusion of Indemnification and Contribution Claims also Bar Ameriquest's Contract and Tort Claims.

Ameriquest's contract and tort claims (Counts II, VII-VIII) are simply re-captioned

claims for indemnification and contribution and must be dismissed for the reasons noted above.

As it did in its contribution and indemnification claims, Ameriquest alleges that it violated the

---

[2] The only exception identified by counsel, *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987), was criticized by *Kudlicki* for improperly addressing indemnification and contribution under the FCRA as a matter of state rather than federal law. *See* 2006 U.S. Dist. LEXIS at *11.

FCRA <u>only</u> if ChoicePoint or Equifax breached a contractual obligation, negligently breached a duty, or made negligent misrepresentations, *see* Third-Party Compl. ¶¶ 48 (breach of contract), 81 (negligent misrepresentation), & 87 (negligence), and Ameriquest seeks nearly identical damages to its indemnification and contribution claims.[3]  *Compare* Third-Party Compl. ¶¶ 69 & 75, *with* ¶¶ 49, 81 & 88.  Captions aside, Ameriquest's contract and tort claims are no more than disguised attempts to re-plead their indemnification and contribution claims.

Courts have repeatedly held that where a defendant's liability stems from the violation of a federal statute that does not permit indemnification or contribution, the defendant cannot implead a third party to seek indemnification or contribution through the back door of a common law cause action arising in tort or contract.  *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) (affirming dismissal of third-party action for breach of contract and breach of fiduciary duty as impermissible attempt to circumvent Fair Labor Standards Act's limitation on contribution or indemnification); *Mortgages, Inc. v. United States Dist. Court for the Dist. of Nev.*, 934 F.2d 209, 214 (9th Cir. 1991) (per curiam) (affirming dismissal of third-party action for breach of contract, negligence, and negligent misrepresentation as end-run around the False Claims Act's limitation on indemnification or contribution); *Gilmore v. List & Clark Constr. Co.*, 866 F. Supp. 1310, 1314 (D. Kan. 1994) (dismissing breach of fiduciary duty and breach of duty of care as "in effect, a further attempt to seek indemnity and contribution" under Title VII of the Civil Rights Act of 1964—a statute that does not permit indemnification or contribution).

---

[3] The tort and contract damages alleged are nearly identical to the damages alleged and sought for Ameriquest's indemnification and contribution claims except that Ameriquest's breach of contract claim also seeks return of any consideration paid to ChoicePoint, and the tort claims seek additional unspecified damages.  *See* Third-Party Compl. ¶¶ 49, 81, 88.  The claims seeking a return of consideration and other unspecified damages not only fail for the reasons outlined in Section II and III below, they are improper under Federal Rule of Civil Procedure 14 because they are not contingent upon Ameriquest's liability to the Non-Borrower Plaintiffs.

The rationale behind this limitation lies in the fact that "[w]here the liability of a defendant is entirely a creature of federal statute, and that statutory scheme is complete, the court may not provide a new remedy Congress decided not to adopt." *Id.* at 1312.

These cases, *see supra*, found re-characterized claims for indemnification and contribution improper when an integral element of the comprehensive statutory scheme was a feature barring wrongdoers from shifting liability onto third-parties. The same rationale applies here. Like the statutes cited in the above cases, the FCRA has been characterized as a complete and comprehensive statutory scheme that does not permit liability shifting. "Congress was meticulous in its enactment of the FCRA. The culpability, liability, remedy, and enforcement provisions demonstrate Congress's effort at creating a <u>comprehensive</u> statutory scheme." *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 470, 482 (D.D.C. 1994) (emphasis added). *See also McSherry*, 236 F.R.D. at 521 ("FCRA is a comprehensive legislative scheme."). Under the FCRA, not only is there no "express provision" for indemnification or contribution, the Act's "structure really negates any inference to that effect." *Kay*, 966 F. Supp. at 754. Just as the court in *Lyle* determined that the deterrent effect of the FLSA would be blunted if employers could shift liability onto their store managers for violations of the Act, *see* 954 F.2d at 987, so too would the deterrent effect of the FCRA be limited if parties like Ameriquest could shift liability on parties like ChoicePoint.[4] Accordingly, this Court should dismiss these claims.

---

[4] This Court in *Kudlicki* declined to decide this issue because the parties had insufficiently briefed it. *See* 2006 U.S. Dist. LEXIS 27971 at *5. Per the above discussion, *see* Section I.B., that is not he case here.

## II.     AMERIQUEST'S CLAIMS MUST BE DISMISSED BECAUSE THEY ARE PRECLUDED BY THE APPLICABLE CONTRACTUAL AGREEMENTS.

Even if the FCRA alone does not preclude Ameriquest from transferring liability for any of its wrongdoing, its contractual agreements with ChoicePoint do.[5]  Not only did Ameriquest assume all responsibility for the content of any letters mailed to consumers, it also released ChoicePoint of any liability for the manner in which it provided services to Ameriquest.  These unambiguous contractual provisions evidence that Ameriquest bears full responsibility for the alleged FCRA violations.  As such, the Court must dismiss Counts II (breach of contract), V (indemnification), VI (contribution), VII (negligent misrepresentation), and VIII (negligence).

### A.     The Breach of Contract Claim Must Be Dismissed Because ChoicePoint Had No Contractual Duty To Ensure Ameriquest Complied with the FCRA.

Despite its allegations of breach of contract, Ameriquest's barebones complaint fails to identify any specific agreement or contract that ChoicePoint allegedly violated.  The operative agreement at issue in Ameriquest's Third-Party Complaint was executed on December 15, 2000 by Ameriquest, Equifax, and Direct Mail Credit Data, Inc. ("the 2000 Agreement").[6]  *See* Affidavit of Meredith L. Sidewater ("Sidewater Aff."), Ex. A.  ChoicePoint acquired Direct Mail Credit Data, Inc. ("DMCD") in June 2001 and assumed this Agreement.  Pursuant to the 2000 Agreement, Equifax, a credit reporting agency, agreed to use a subcontractor, DMCD, to provide Ameriquest with "Information Services."  *Id.* ¶ I.2.  The "Information Services," as defined in

---

[5] Since these agreements are central to Ameriquest's claims and are referenced in the Third-Party Complaint, ChoicePoint has attached these agreements to its motion and the Court may consider them in ruling on the motion to dismiss.  *See Wright v. Associated Ins. Cos*, 29 F.3d 1244, 1248 (7th Cir. 1994).  Once the relevant agreements are attached, "[t]he court is not bound to accept the pleader's allegations as to the effect of [the written agreements] but can independently examine the document[s] and form its own conclusions as to the proper construction and meaning to be given [to] the material."  *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quotation omitted).

[6] Equifax Information Services LLC also identified this as the operative agreement and attached it to its motion to dismiss.  *See* Memorandum in Support of Third-Party Defendant Equifax's Motion to Dismiss ("Equifax Mot."), Ex. A. Docket No. 1045.

the Agreement, included "Prescreening Services" whereby DMCD would, using Equifax credit records, supply Ameriquest with a list of consumers that satisfied certain geographic and financial criteria provided by Ameriquest. *Id.* Ex. A ¶ I. Ameriquest could then contact these consumers through its Direct Mail Program. *See* Third-Party Compl. ¶ 21.

### 1. Under the Applicable Agreement, Ameriquest—Not ChoicePoint—Assumed Responsibility for the Content of Customer Letters.

Ameriquest alleges that "ChoicePoint breached its written and oral contracts with Ameriquest by failing in its prescreening activities, and the Consumer List it developed [sic], as well as failing to ensure that the Letters used by Ameriquest complied with the firm offer of credit and clear and conspicuous disclosure requirements of FCRA." *Id.* ¶ 47. But the unambiguous provisions of the 2000 Agreement demonstrate that ChoicePoint had no duty to review Ameriquest's customer letters, let alone ensure they met the requirements of the FCRA.

In fact, the 2000 Agreement demonstrates that it was solely <u>Ameriquest's responsibility</u> to ensure its consumer letters did not violate the FCRA. Ameriquest warranted that it was responsible for the content of letters sent to consumers: "<u>Firm Offer Content</u>: "Subscriber [Ameriquest] will be responsible for the preparation of firm offer materials." Sidewater Aff., Ex. A at Ex. A ¶ I. G. While Ameriquest agreed to provide Equifax and DMCD copies of "any mail pieces or telemarketing scripts to be used to extend the Firm Offers of Credit or Insurance to consumers on the Prescreened List," the 2000 Agreement imposed no duty upon DMCD or Equifax to prepare or review Ameriquest's customer letters, much less guarantee those letters complied with the FCRA. *Id.* Indeed, the Agreement provides for the exact opposite: <u>Ameriquest</u> represented to DMCD and Equifax that it would "comply with the provisions of the FCRA" and any other state or federal law. *Id.* ¶ I. 6. Ameriquest further represented that it

would "make a Firm Offer of Credit or Insurance (as the term "firm offer of credit or insurance" is defined in the FCRA) to each individual identified on the Prescreened List." *Id*. Ex. A ¶ I. A.

The clear and unambiguous terms of the 2000 Agreement demonstrate that ChoicePoint assumed no duty to ensure Ameriquest's customer letters complied with the FCRA or any other laws. Accordingly, Ameriquest's breach of contract claim fails and Count II must be dismissed.

### 2. ChoicePoint Assumed No Duty To Ensure Ameriquest Complied with the FCRA Under Any Oral Agreements.

Perhaps recognizing that the 2000 Agreement conclusively establishes that ChoicePoint had no duty to review customer letters, Ameriquest also alleges that such a duty emerged under various unidentified "oral agreements." *See* Third-Party Compl. ¶¶ 44, 48. The failure to even identify these alleged "oral agreements" provides an independent ground to dismiss the breach of contract claim. *See Twombly*, 127 S. Ct. at 1965 (complaint must plead "enough factual matter (taken as true) to suggest that an agreement was made"). Beyond this fatal pleading deficiency, the effect of any purported oral agreements entered into prior to or contemporaneously with the 2000 Agreement is nullified by the merger clause in the Agreement. The 2000 Agreement provides "[a]ll prior understandings, proposals, or representations dealing with the subject matter of this Agreement are terminated and canceled entirely." Sidewater Aff., Ex. A ¶ VII.5. Absent fraud, mistake or accident—none of which are alleged by Ameriquest—the merger clause is enforceable, and courts "conclusively presume that the writing contains the entire contract, and parol evidence of prior or contemporaneous . . . statements is inadmissible." *Rome Healthcare, LLC v. Peach Healthcare Sys., Inc.*, 590 S.E.2d 235, 240 (Ga. Ct. App. 2003).

Neither can Ameriquest point to the effect of any subsequent oral agreement. The 2000 Agreement "may not be amended except by a written agreement that acknowledges modification of this Agreement, and that is signed by an authorized representative of Subscriber, of DMCD,

and of Equifax." Sidewater Aff., Ex. A ¶ VII.5.  Under Georgia law, "[s]uch a provision is enforceable, thereby rendering any subsequent oral modifications void."[7]  *Clark v. Gen.  Motors Acceptance Corp.*, 363 S.E.2d 813, 817 (Ga. 1987).  This provision also bars Ameriquest from "reasonably rely[ing] upon [an] alleged oral promise[ ]."  *Gerdes v. Russell Rowe Comm'ns, Inc.*, 502 S.E.2d 352, 354 (Ga. Ct. App. 1998). Accordingly, Count II must be dismissed.

**B.      The Tort, Indemnification, and Contribution Claims Must Also Be Dismissed Because Ameriquest Provided ChoicePoint with a Release of Any Liability Stemming from ChoicePoint's Provision of Services.**

Even if ChoicePoint had contracted with Ameriquest to ensure Customer Letters complied with the FCRA, Ameriquest released ChoicePoint from any liability for the manner in which those services were rendered and agreed to hold it harmless.  For this reason, Ameriquest's negligence, negligent misrepresentation, indemnification, and contribution claims are all barred under various terms of the 2000 Agreement.

Ameriquest agrees to release DMCD, the entity ChoicePoint acquired in 2001, "from *any* liability in connection with the Information Services" provided. Sidewater Aff., Ex. A ¶ V.3 (emphasis added).  The contract identifies the "Prescreening Services" as the "Information Services" provided. *Id*. Ex. A. ¶ I.  Ameriquest "covenants not to sue or maintain any claim . . . [or] third-party action . . . against DMCD . . . for damage or loss of any kind arising out of . . . [the] invalidity . . . of any Information Services provided." *Id*. ¶ V.3.  It provides that "no party will be liable to any other party for any loss . . . arising out of . . . their acts or omission, including any negligence, . . . in transmitting . . . the Information Services." *Id*. ¶ V.1 (emphasis added). If any litigation arises out of its "improper use of any Prescreened List [Customer List], [Ameriquest] shall "defend, indemnify and hold Equifax and DMCD harmless from and against

---

[7] The parties agreed Georgia law would govern their agreement.  *See* Sidewater Aff., Ex. A ¶ VII.7.

all losses . . . incurred by either of them arising from or related to such claim . . . including reasonable attorney's fees. *Id*. Ex. A. ¶ I.C.

Furthermore, Section V. Paragraph 4 of the 2000 Agreement prevents Ameriquest from pursuing the very sort of damages it now seeks against ChoicePoint. *See* Third-Party Compl. p. 24-25 (Prayers for Judgment ¶¶ 2,3,5 and 6). That provision provides that "with respect to <u>any</u> claim . . . [Ameriquest's] sole and exclusive remedy shall be expressly limited to" a replacement of the allegedly deficient information services or a refund of any consideration paid for ChoicePoint's services." *Id*. ¶ V.4. (emphasis added). Accordingly, the 2000 Agreement further bars the damages Ameriquest now seeks, and is yet another basis for dismissal.

## C.   Ameriquest's 2005 Service Agreement Reaffirmed the Absence of Any ChoicePoint Duty To Review Ameriquest's Customer Letters and the Limitations on ChoicePoint's Liability.

On February 11, 2005, ChoicePoint and Ameriquest entered into a pricing and volume agreement whereby Ameriquest committed to purchase a specified number of customer records at an updated price. *See* Sidewater Aff., Ex. B ("2005 Agreement"). In the 2005 Agreement, Ameriquest reaffirmed its responsibility for customer letters as well as ChoicePoint's limited liability for the services provided.

As in the 2000 Agreement, Ameriquest represented that it would use the prescreened lists in compliance with the FCRA, *id*. ¶¶ 4, 15, and that it would extend a firm offer of credit to anyone on the prescreened lists, *id*. ¶ 4. ChoicePoint assumed no duty to review Ameriquest's customer letters, much less assure they complied with the FCRA. *Id*. ¶ 6. It simply reserved the right to review for compliance with Direct Marketing Association Guidelines. *Id*. Just as in the 2000 Agreement, Ameriquest agreed to hold ChoicePoint harmless for any liability stemming from Ameriquest's use of ChoicePoint services, *id*. ¶ 8, and further limited any remedies available to it in the same manner as in the 2000 agreement, *id*. ¶ 7.

### III. AMERIQUEST'S TORT CLAIMS MUST BE DISMISSED BECAUSE THEY FAIL AS A MATTER OF GEORGIA LAW.

Ameriquest's tort claims (Counts VII and VIII ) must be dismissed not only because ChoicePoint breached no duty imposed upon it by law, but also because the alleged misrepresentations are not actionable.

#### A. The Negligence Claim Must Be Dismissed Because ChoicePoint Owed No Duties Outside Those Imposed by Its Contractual Agreements.

Under Georgia law,[8] a party "merely suing for the benefit of his bargain" must sue in contract, not tort. *Vulcan Materials Co. v. Driltech, Inc.*, 306 S.E.2d 253, 257 (1983). As Ameriquest seeks nothing more than monetary damages stemming from ChoicePoint's alleged deficient performance under the contract, its negligence claim (Count VIII) must be dismissed.

Contract claims masquerading as tort actions are barred on two grounds. First, the economic loss rule provides that "a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." *GE Co. v. Lowe's Home Ctrs., Inc.*, 608 S.E.2d 636, 637 (Ga. 2005). Ameriquest's negligence claim is thus barred because the only loss Ameriquest alleges is an economic one—monetary damages it expects to pay the Non-Borrowers Plaintiffs.

Second, in order to maintain an action in tort because of a breach of duty growing out of a contractual relation, "the breach must be shown to have been a breach of a duty imposed by law and not merely the breach of a duty imposed by the contract itself." *Long v. Jim Letts*

---

[8] Applicable choice of law rules dictate that Georgia substantive law governs Ameriquest's tort claims. Since Illinois is the forum state, its choice of law rules govern. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Illinois applies the substantive law of the state with the most significant relationship to a dispute and identifies that state by considering the place where an injury occurred, the place where the conduct causing the injury occurred, the place of business of the parties, and the place where the parties' relationship is centered. *See Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 739 N.E.2d 1263, 1269 (Ill. 2000); Restatement (Second) of Conflict of Law §§ 6, 145 (1971). Georgia law governs because (1) Ameriquest's tort claims stem from the duties allegedly set forth in the applicable agreements (which applies Georgia law); (2) both Equifax and ChoicePoint (signatories to the contract) are incorporated and headquartered in Georgia; and (3) any alleged negligence would have stemmed from activity taking place in Georgia.

*Oldsmobile, Inc.*, 217 S.E.2d 602, 604 (Ga. Ct. App. 1975) (quotations omitted).  Ameriquest

alleges no breach of a duty ChoicePoint owed it under the law, and thus any alleged duty must

necessarily arise from agreements.  Third-Party Compl. ¶ 84.[9]  Accordingly, the negligence

claim (Count VIII) must be dismissed.

### B.  The Negligent Misrepresentation Claim Must Be Dismissed.

Ameriquest fails to identify any specific alleged misrepresentation in its Third-Party

Complaint. *See* Third-Party Compl. ¶ 77.  This alone is fatal to Ameriquest's negligent

misrepresentation claim under *Twombly* because "[f]actual allegations must be enough to raise a

right to relief above the speculative level." 127 S. Ct. at 1965.

Pleading deficiencies aside, Ameriquest's allegations that Third-Party Defendants

"provided assurances to Ameriquest that the Letters were compliant with the FCRA," Third-

Party Compl. ¶ 77, are not actionable for two reasons. First, because such representations are

contrary to the Agreements' integration clause and modification restrictions, Ameriquest cannot

show reasonable reliance as a matter of law.  *See Rountree v. Washington Nat'l Ins. Co.*, No.

6:07CV14, 2007 U.S. Dist. LEXIS 36921, at *11 (S.D. Ga May 21, 2007).  Even if oral

representations were made to Ameriquest that its customer letters complied with the FCRA, *see*

Third-Party Compl. ¶ 77, reliance upon such statements was unreasonable given the

unambiguous terms of the Agreements.

Second, Ameriquest's negligent misrepresentation claim must be dismissed because "[a]

misrepresentation of law is ordinarily not actionable.  A misrepresentation is one of law rather

than fact where the truth of the representations would depend upon the legal effect of [relevant

---

[9] While Ameriquest does not allege that the duties ChoicePoint allegedly violated arose under the contract, Ameriquest cites no other source for such duties. *See* Third-Party Compl. ¶ 84

documents].” *Saye v.UnumProvident Corp.*, No. 1:06CV1487, 2006 U.S. Dist. LEXIS 73426, at *7-8 (N.D. Ga. Oct. 2, 2006) (internal quotations omitted). Ameriquest alleges ChoicePoint made representations concerning the legal sufficiency of its customer letters. Such representations, even if they were misrepresentations, would be representations of law. For the two separate reasons noted above, Count VII must be dismissed.

## IV. AMERIQUEST'S RESCISSION CLAIM MUST BE DISMISSED.

Recognizing the agreements bar any recovery, Ameriquest seeks to rescind its contracts and demands a return of any consideration paid to ChoicePoint. *See* Third-Party Compl. Count IX. Georgia, the state whose law governs the contract,[10] only permits contract rescission for reasons of fraud[11] and non-performance.[12] Ameriquest fails to identify upon which grounds it is seeking rescission, but its claim would fail under either, and thus Count IX must be dismissed.

Ameriquest's claim for rescission, either for fraud or nonperformance, is barred because it was untimely first raised in its Third-Party Complaint. "As a general rule, rescission must occur prior to, and as a condition precedent to, the bringing of an action; it is too late to claim rescission by asserting it for the first time in the pleadings." *Wender & Roberts, Inc. v. Wender,* 518 S.E.2d 154, 160 (Ga. Ct. App. 1999).

Rescission for reasons of fraud is also barred on multiple grounds. A claim of fraud cannot be predicated upon misrepresentations as to matters of law. *See Capitol Materials, Inc. v.*

---

[10] *See* Sidewater Aff., Ex. A ¶ VII.7; Sidewater Aff., Ex. B ¶ 14.

[11] Ga. Code Ann. § 13-4-60: "Rescission for fraud: A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value."

[12] Ga. Code Ann. § 13-4-62: "Rescission for nonperformance: A party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made."

*Kellogg & Kimsey, Inc.*, 530 S.E.2d 488, 490 (Ga. Ct. App. 2000). Yet Ameriquest's only allegation of a misrepresentation concerns ChoicePoint's alleged statements concerning the legality of its customer letters. Third-Party Compl. ¶¶ 91-92. Ameriquest's complaint is also deficient because no fraud has been pled with particularity, *see* Fed. R. Civ. P. 9(b), and no allegation was made that Ameriquest restored or offered to restore the prior benefits received—a fatal deficiency in Georgia. *See Wheeler v. Pioneer Invs., Inc.,* 122 S.E.2d 518 (Ga. 1961).

Rescission for reasons of non-performance is also barred. Rescission is only possible when the alleged non-performance is "material" in that it goes to the "root of the contract." *Mayor & City of Douglasville v. Hilldebrand*, 333 S.E.2d 674, 676 (Ga. Ct. App. 1985) (quotations omitted). Because ChoicePoint had no duty under the applicable agreements to review customer letters, *see supra* Section II., there can be no "material breach" or breach which goes to the "root of the contract." Furthermore, rescission for non-performance is only available when "both parties can be restored to the condition in which they were before the contract was made." Ga. Code Ann. § 13-4-62. A return to the status quo ante is not possible: ChoicePoint has completely performed under the parties' contracts, and Ameriquest has already obtained and used ChoicePoint's consumer lists. *Cf. Henderson Elevator Co. v. Na. Georgia Milling Co.*, 55 S.E. 50, 51 (Ga. 1906) (rescission improper when the item contracted for has been consumed).

## CONCLUSION

For the foregoing reasons, Third-Party Defendant ChoicePoint Precision Marketing LLC respectfully requests that this Court grant the Motion to Dismiss in its entirety and dismiss the Third-Party Complaint as to ChoicePoint.

Dated:  September 7, 2007.

Respectfully Submitted,

ChoicePoint Precision Marketing LLC

By: /s/ Laurie S. Fulton

One of Its Attorneys

Laurie S. Fulton (lfulton@wc.com)
Jon R. Fetterolf (jfetterolf@wc.com)
Paven Malhotra (pmalhotra@wc.com)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2007 a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Laurie S. Fulton