IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL W. DERDA and<br>CINDY K. DERDA, his wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>AMERIQUEST MORTGAGE<br>COMPANY, a foreign corporation,<br>and NORTHWEST TITLE & ESCROW<br>CORPORATION,<br><br>    Defendants. | Case No.: 05 C 7097 |

**DEFENDANT NORTHWEST TITLE & ESCROW CORPORATION'S
STATEMENT OF UNCONTROVERTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, Northwest Title & Escrow Corporation (hereinafter referred to as "NWT"), by and through its attorneys of record, and in support of its Motion for Summary Judgment filed herein, sets forth the following uncontroverted facts supported by the attached deposition excerpts and exhibits.

1. This case arises out of a residential refinancing loan between the Plaintiffs, Paul W. Derda and Cindy K. Derda (hereinafter referred to as the "Derdas") and the Defendant, Ameriquest Mortgage Company (hereinafter referred to as "Ameriquest"). This refinancing loan was closed in November 2003. (Plaintiffs' Complaint filed herein).

2. The purpose of this loan was to refinance the Derdas' existing mortgage with Fairbanks Capital Corporation (hereinafter referred to as "Fairbanks") and to pay off the Derdas' then existing credit card debt. (Cindy Derda Depo. p. 41).

3. The Derdas had previously taken out the loan with Fairbanks in October 2001 to consolidate their then existing first and second mortgages and to pay off their then existing credit card debt. (Cindy Derda Depo p. 26).

4. The credit card debt being paid through the November 2003 refinancing with Ameriquest was new debt incurred after the Fairbanks refinancing was closed in 2001. (Cindy Derda Depo p. 42).

5. When the Derdas initially spoke with the Ameriquest loan officer, Jeremy Smith, (hereinafter referred to as "Jeremy") regarding an application to refinance the Fairbanks Mortgage, Cindy Derda (hereinafter referred to as "Cindy") did not think the Derdas would qualify for the refinancing due to their poor credit history (Cindy Derda Depo pp. 45-46).

6. Cindy had previously worked as a junior underwriter for Wells Fargo Mortgage Company and had familiarity with the mortgage loan approval process. (Cindy Derda Depo pp.31-34).

7. When the Derdas made their application for the refinancing through Ameriquest, their intention was only to pay off the Fairbanks loan and to pay off their then existing credit card debt. (Cindy Derda Depo. Pp. 49-50). They did not discuss receiving cash back from the loan until after their initial application and until after the appraisal of their home was completed. (Cindy Derda Depo. p. 51).

8. It was only after the Derdas were told by Jeremy, on or about November 11, 2003, that they were eligible for cash back from the loan, did the Derdas request cash back. (Cindy Derda Depo. pp. 54-56).

9. The Derdas would have proceeded with the loan refinancing through Ameriquest even if the cash back option was not available to them because they wanted to refinance the

Fairbanks loan, pay-off their credit card debt and get a fresh start. (Cindy Derda Depo. pp.57-59).

10. Cindy was the person who told Jeremy the Derdas' balance on the Fairbanks loan was approximately $108,000.00. (Cindy Derda Depo. pp. 61-62).

11. Cindy was aware there may have been a pre-payment penalty associated with a payoff of the Fairbanks loan. (Cindy Derda Depo. p. 64).

12. Ameriquest processed the Derdas' loan refinancing, and on November 12, 2003 a notary public from a company named A-Integrity, hired by Ameriquest, came to the Derdas' home to sign the loan closing documents (Cindy Derda Depo. p. 65).

13. Among the documents signed that day included: (a) the adjustable rate note to Ameriquest in the principal amount of $129,750.00 (Cindy Derda Depo. Exhibit 1), (b) a deed of trust on the Derdas' residence to Ameriquest (Cindy Derda Depo. Exhibit 2), (c) a one week cancellation period notice (Cindy Derda Depo. Exhibit 9), (d) an acknowledgement of final loan terms (Cindy Derda Depo. Exhibit 10), (e) a document entitled Important Notice to Borrowers (Cindy Derda Depo. Exhibit 13), (f) a HUD 1 loan settlement statement (Cindy Derda Depo. Exhibit 17), and (g) a NWT Acknowledgement/Disbursements Authorization Agreement (Cindy Derda Depo. Exhibit 20).

14. The Derdas signed all of the above documents together with other documents given to them on November 12, 2003 by the Notary Public. The notary left copies of the documents with the Derdas on November 12, 2003. (Cindy Derda Depo p. 70)

15. On November 19, 2003, Cindy called Ameriquest to inquire when the loan proceeds would be disbursed. (Cindy Derda Depo p. 147).

16. On November 20, 2003, Cindy called someone, unknown to her, at NWT to see if the funds transfer had been wired from Ameriquest to NWT. She was told by NWT that the funds had been received from Ameriquest but that the pay-off amount of the Fairbanks loan had not been received and the loan proceeds would not be disbursed without the payoff amount. (Cindy Derda Depo. p. 147).

17. On November 21, 2003, Cindy called NWT and spoke to its employee, Nate Hufker, who told her the payoff amount had come in at over $113,000 and that would result in a reduction of the cash back to the Derdas from approximately $8,800.00 to approximately $4,100.00. (Cindy Derda Depo. p. 150).

18. Cindy then instructed Nate not to issue any checks or do anything further on disbursing the loan proceeds because she was going to call Jeremy and cancel the loan. (Cindy Derda Depo. p. 150).

19. Ameriquest faxed NWT the Fairbanks final pay-off amount Friday, November 21, 2003 at approximately 10:01 a.m. (Nate Hufker Depo. p. 15).

20. Nate Hufker told Cindy the funds were at NWT and he would have checks ready for her and the credit card payoffs available for her to pick up that day. (Nate Hufker Depo. p. 17).

21. NWT had no authority or power to cancel the Derdas' loan, only the lender Ameriquest could cancel the loan. (Nate Hufker Depo p. 19)

22. Cindy testified she spoke with Jeremy at Ameriquest after speaking with Nate and asked Jeremy to cancel her loan because the Fairbanks payoff was more than she expected. Jeremy told her the loan could not be cancelled because the rescission period had expired. (Cindy Derda Depo. p. 152).

23. Thereafter Cindy called Nate and told him Jeremy would not cancel the loan. In that conversation, she then requested Nate to go ahead and issue the loan disbursement checks. (Cindy Derda Depo. p. 188).

24. Later on November 21, 2003, after some adjustments were made in the checks to payoff the credit card accounts, Cindy went to NWT, picked up the checks to send to the credit card companies and picked up two checks payable to the Derdas totaling approximately $4,700.00. (Cindy Derda Depo. pp. 159-161).

25. The payoff check to Fairbanks was sent by NWT, by overnight mail on November 21, 2003 for delivery on Monday, November 24, 2003. (Nate Hufker Depo. p. 26).

26. The Derdas received the benefit of the Ameriquest loan. The loan proceeds paid off the credit card debt the Derdas had asked to be paid. (Cindy Derda Depo. p. 104). The loan proceeds also paid off the Fairbanks loan. (Cindy Derda Depo. p. 104). The Derdas also received approximately $4,700.00 in cash back from the loan, which they used for their benefit. (Cindy Derda Depo. p. 104, 106-107).

27. The dispute regarding the Ameriquest loan was not the amount of the loan or the loan payments; rather the dispute was over the payoff amount to Fairbanks. (Cindy Derda Depo. p. 106).

28. The Derdas reached a settlement with Fairbanks, due in part to a class action lawsuit over prepayment6 penalties, and received the sum of $3,000 as that settlement. (Cindy Derda Depo. p. 115).

29. The Derdas have only made four (4) loan repayments to Ameriquest. (Cindy Derda Depo. p. 100).

30. Instead of making mortgage payments to Ameriquest, the Derdas periodically give monies to Cindy's father to hold to apply to the loan. (Cindy Derda Depo. p. 100-101).

31. The Derdas have given Cindy's father approximately $13,000.00 to hold for them. (Cindy Derda Depo 101).

                                                          **ROTH, EVANS & LADING, P.C.**

                              BY:          /s/ Christopher B. Hunter
                                          Christopher B. Hunter, EDMBE # 20591
                                          1401 S. Brentwood Blvd., Ste. 585
                                          St. Louis, Missouri 63144
                                          Telephone: 314-961-5100
                                          Facsimile: 314-968-3330
                                          Email: cbhunter@rothlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing instrument was electronically sent and mailed, postage prepaid, and sent by United States Postal Service, this 6th day of September, 2007 to:

Harold G. Johnson
Mitchell D. Johnson
Mavis Kennedy, of counsel
Attorneys at Law
500 Northwest Plaza, Suite 715
St. Ann, MO 63074

Mr. Todd Ruskamp
Shook, Hardy & Bacon, LLP
2555 Grand Blvd.
Kansas City, MO 64108-2613

/s/ Christopher B. Hunter