## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## DECLARATION OF BERNARD LESAGE IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO PROPOUND ADDITIONAL INTERROGATORIES AND FOR 60-DAY EXTENSION OF DISCOVERY CUT-OFF DATE OR COURT ORDER OBLIGING CLASS PLAINTIFFS TO PROVIDE MEANINGFUL RESPONSES TO DEFENDANTS' PENDING DISCOVERY REQUESTS BY OCTOBER 1, 2007

I, Bernard LeSage, declare that the following is true and correct under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.    I am an attorney at law duly licensed to practice before this Court and am a shareholder of Buchalter Nemer, A Professional Corporation, the attorneys of record for Defendants in this action. I make this declaration in support of Defendants' Motion for a Leave to Propound Additional Interrogatories and for a 60-Day Extension of Discovery Cut-Off Date. Except where otherwise indicated, the following facts are true of my own knowledge and, if called upon to do so, I could and would testify to the truth thereof.

2.    Defendants have propounded basic contention interrogatories that ask for facts supporting the allegations in Class Plaintiffs' Complaint and Class Plaintiffs' financial status. Attached hereto as Exhibit A is a true and correct copy of Defendant ACC Capital Holdings Corporation's First Request for the Production of Documents and First Set of Interrogatories to Francis Adamowicz, Defendant Ameriquest Capital Corporation's First Set of Interrogatories to Plaintiff Mary Forrest, and Defendant ACC Capital Holdings Corporation's Second Set of Interrogatories to George Barber.

1

3.      On August 7, 2007, Class Plaintiffs requested an extension to respond to all discovery until October 1, 2007.  Class Plaintiffs represented that this extension would allow the parties time to resolve Class Plaintiffs' concerns about whether Defendants could serve more than 25 interrogatories, whether basic contention interrogatories seeking facts supporting Class Plaintiffs' allegations were "premature" before the close of discovery, and whether it was unduly burdensome for each Plaintiff to respond to identical sets of discovery from each of the Defendants.  Defendants responded on August 8, 2007.  Class Plaintiffs replied again on August 9, 2007.  Attached hereto as Exhibit B are true and correct copies of these letters.

4.      On August 29, 2007, Defendants wrote a letter to Class Plaintiffs, summarizing all outstanding discovery.  Attached hereto as Exhibit C is this letter summarizing all outstanding discovery.

5.      Defendants agreed to Class Plaintiffs' requested extension, believing it would help the parties resolve Class Plaintiffs' concerns, as evidenced in the Stipulated Amended Scheduling Order dated August 16, 2007 [Docket No. 1013].  The parties eventually agreed to request a 120-day extension, and the Court extended the discovery deadline to March 7, 2008.  [Docket No. 1012.]  Attached hereto as Exhibit D is a true and correct copy of Defendants' Case Management Statement.  Attached hereto as Exhibit E is a true and correct copy of Class Plaintiffs' Case Management Statement.

6.      Defendants believed that the October 1, 2007 deadline for Class Plaintiffs was not only a reasonable extension of time for Class Plaintiffs to provide substantive responses, but this deadline was crucial for Defendants' preparation of its case going forward.  In light of the March 2008 class certification motion filing date, Defendants intend to depose all 84 named plaintiffs in three different cities in January 2008.  Thus, the October 1, 2007 deadline for Class Plaintiffs to provide substantive responses is necessary, so that Defendants receive answers and documents that they may review, digest, and use in preparation for the 84 depositions.  Receiving no substantive responses from Class Plaintiffs will prevent Defendants from being able to conduct any meaningful depositions, and receiving substantive responses any later than October 1, 2007 will force Defendants to attempt to prepare for 84 depositions in only a few weeks' time.

7.      Class Plaintiffs now claim that Defendants were mistaken in their belief that Class Plaintiffs would provide substantive responses to Defendants' discovery requests on October 1, 2007.  Notwithstanding the six-week extension, Class Plaintiffs have recently confirmed that

they plan to serve only objections and no substantive responses on October 1, 2007. Class Plaintiffs refuse to respond to basic contention interrogatories that simply request Class Plaintiffs to state all facts supporting their allegations in the Complaint. Attached hereto as Exhibit F is a true and correct copy of an e-mail from Class Plaintiffs' counsel dated August 30, 2007, wherein Class Plaintiffs make these claims and refusals.

8. Class Plaintiffs have also rebuffed Defendants' efforts to engage in discussions to resolve Class Plaintiffs' concerns regarding the number and timing of discovery requests, claiming that such discussions would be "a poor use of the parties' time, as there will be nothing to discuss at this time on this subject." This statement is contained in Exhibit F, the e-mail from Class Plaintiffs' counsel dated August 30, 2007.

9. Defendants have been cooperative and forthcoming in responding to Class Plaintiffs' discovery requests. Shortly after the Court lifted the discovery stay in this multidistrict litigation proceeding, Class Plaintiffs served a comprehensive set of 614 separate document requests on Defendants. While the parties continue to engage in the meet-and-confer process, Defendants have already produced the following items to Class Plaintiffs: more than 453 loan files, totaling 88,882 pages in connection with 444 borrowers; more than 175,000 pages of policy, procedure and training documents; and more than one dozen DVDs, CDs, videotapes and audiotapes of training materials.

10. After Defendants began a rolling production of documents, Class Plaintiffs requested that a certain subgroup of documents be produced in their native format, such as Microsoft Word or Excel, rather than in the standard PDF format. This raised various substantive and procedural problems, including how to ensure that "live" documents were not corrupted, how to Bates-label the production, and how to divide the cost of the project. In an effort to keep the production of documents flowing, Defendants met and conferred with Class Plaintiffs and ultimately agreed to produce the documents in a searchable PDF format at Defendants' expense of approximately $10,000. Defendants' document production to Class Plaintiffs still continues.

11. Once it became clear to Defendants that Class Plaintiffs did not intend to provide substantive responses to Defendants' discovery requests on October 1, Defendants asked Class Plaintiffs stipulate to any of the following remedies, all of which Class Plaintiffs rejected:

3

- Class Plaintiffs could serve objections in advance of the September 20, 2007 hearing before this Court, so that rulings on these objections could be obtained. The parties had previously agreed to attempt to resolve Class Plaintiffs' objections, so this suggestion was a reasonable attempt to address all objections in a timely manner and have the Court rule on any unresolved objections.

- Class Plaintiffs could dismiss the claims against any Defendant for which Class Plaintiffs were unable or unwilling to provide facts to supporting their allegations. The 79-page Complaint did not allege any specific allegations against any particular Defendant. Instead, all Defendants were collectively referred to as "Ameriquest," and all allegations referred to acts or omissions of "Ameriquest" even though Defendants are separate entities performing different business functions. The dismissal of those Defendants that were not involved in Class Plaintiffs' claims would significantly reduce any possible burden Class Plaintiffs may have in responding to discovery requests.

- Class Plaintiffs could stipulate to a 30- to 60-day extension of the discovery cut-off to allow the parties time to resolve any objections once Class Plaintiffs served their objections after October 1, 2007. This suggestion was intended to be a reasonable compromise to ensure that Defendants could complete necessary discovery, while providing Class Plaintiffs more than ample time to draft objections.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Los Angeles, California this 18th day of September 2007.

Bernard LeSage

BN 1375639v1

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL Docket No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO:<br><br>THE CONSOLIDATED COMPLAINT FOR CLAIMS OF BORROWERS | **DEFENDANT ACC CAPITAL HOLDINGS CORPORATION'S INTERROGATORIES (SET ONE) PROPOUNDED UPON FRANCIS ADAMOWICZ** |

**PROPOUNDING PARTY: Defendant ACC CAPITAL HOLDINGS CORPORATION**

**RESPONDING PARTY:    Plaintiff FRANCIS ADAMOWICZ**

**SET NO.:                          ONE (1)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant ACC Capital Holdings Corporation ("ACCH"), hereby requests that plaintiff Francis Adamowicz answer all of the following Interrogatories, in writing and under oath, within thirty (30) days of the date of service hereof.

**I.
DEFINITIONS AND INSTRUCTIONS**

1.        Throughout YOUR responses to these interrogatories, YOU should refer to each Defendant separately and distinctly from the other Defendants, regardless of YOUR allegations of agency, conspiracy, joint venture, or other allegation of secondary liability such as alleged in paragraphs 86 to 90 of the COMPLAINT ("Secondary Liability Doctrine"). For each interrogatory response which refers to or incorporates a Secondary Liability Doctrine allegation, state all facts supporting YOUR allegation that a certain Secondary Liability Doctrine applies in that particular instance with respect to the specified defendant.

2. "ACCH" means ACC Capital Holdings Corporation and for purposes of responding to these interrogatories, should be treated as separate and distinct from other DEFENDANTS and PERSONS, regardless of YOUR allegations of agency, conspiracy, joint venture, or other allegation of secondary liability such as alleged in paragraphs 86 to 90 of the COMPLAINT.

3. The term "CLOSING" has the same meaning as commonly used in the real estate and mortgage industry to describe the process by which representatives of the lender meet (in PERSON or otherwise) with the borrower for the purpose of consummating the mortgage loan and signing all related documents. The term "CLOSING" is used in these Interrogatories to refer to the closing that is the subject matter of YOUR COMPLAINT.

4. "COMMUNICATIONS" means and includes correspondence, conversations, and all other forms of information exchange, whether written, verbal, by telephone, electronic mail, facsimile, or other mode of transmission.

5. "COMPLAINT" means the Complaint filed by YOU in this Action, on or about December 6, 2006 titled "Borrowers' Consolidated Class Action Complaint."

6. "DEFENDANT" or "DEFENDANTS" means Ameriquest Mortgage Company, ACC Capital Holdings Corporation, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., Town & Country Credit Corporation, Town & Country Title Services, Inc., Argent Mortgage Co., LLC, JM Closing, and/or Jonathon Means, their employees, agents, and persons acting on their behalf. For purposes of these interrogatories, each defendant should be treated as separate and distinct from the other defendants, regardless of YOUR allegations of agency, conspiracy, joint venture, or other theory of secondary liability such as alleged in paragraphs 86 to 90 of the COMPLAINT.

7. A request to "DESCRIBE" the use of the LOAN PROCEEDS related to the CLOSING is a request to state:

      (a)     the amount of the LOAN PROCEEDS from the CLOSING;

      (b)     all purposes for which the LOAN PROCEEDS were used;

      (c)     the name and address of each PERSON who received any portion of the LOAN PROCEEDS related to the CLOSING and the amount of the total LOAN PROCEEDS the PERSON received;

Case No. MDL No. 1715
ACCH INTERROGATORY TO FRANCIS ADAMOWICZ SET 1

BN 1304755v1

(d)  the date on which the LOAN PROCEEDS related to the CLOSING were provided to that PERSON;

(e)  the purpose of providing that PERSON a portion of the LOAN PROCEEDS related to the CLOSING; and

(f)  the purpose disclosed by you to DEFENDANT for the use of the LOAN PROCEEDS.

8.  A request to "DESCRIBE" how property, including the PROPERTY that is the subject of your COMPLAINT, has been "USED" is a request to state:

(a)  the dates during which you have resided on the property;

(b)  during the time you resided on the property, the date of any period of time greater than two weeks in duration in which you were not present on the property, including the reason for your absence;

(c)  the identity of any PERSON who has occupied any portion of the property on or since the date you first entered into a secured transaction with DEFENDANT;

(d)  whether the property has been used exclusively by you;

(e)  whether the property was used by you exclusively for residential purposes;

(f)  whether any portion of the property was rented or leased to any other PERSON, and if so, the identity of the PERSON, the dates of the rental or lease, a description of the portion of the property leased, and the total amount paid to you under the terms of the lease;

(g)  whether any portion of the property was used for any business or commercial purpose, and if so, the identity of the persons engaged in the business or commercial purpose, a description of the business or commercial purpose, a description of the portion of the property used for the business or commercial purpose such as a home office, and a description of any income or other payment you received as a result of this use; and

(h)  whether any portion of the property was used for any agricultural purposes, and if so, the identity of the persons engaged in the agricultural purposes, a description of the agricultural purposes, a description of the portion of the property used for the agricultural purposes, and any income or other payment you received as a result of this use.  The term "agricultural purposes" includes the production, harvest, exhibition, marketing, transportation, processing or manufacture of agricultural products, the care of livestock, and the acquisition of

Case No. MDL No. 1715
ACCH INTERROGATORY TO FRANCIS ADAMOWICZ SET 1

BN 1304755v1

farmland, real property with a farm residence, and personal property and services used in farming.

9.    "DOCUMENT" shall have the meaning ascribed to that term in Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, papers, writings, memoranda, contracts, agreements, books, journals, ledgers, statements, reports, bills, billings, invoices, work sheets, projections, notes, letters, email, instant messaging, text messaging, correspondence, COMMUNICATIONS, abstracts, advertisements, drawings, photographs, audits, charges, balance sheets, income statements, checks, diagrams, certificates, diaries, calendars, logs, drafts, recordings, instructions, lists, minutes of meetings, orders, resolutions, recitals, telegrams, wires, cables, telexes, facsimiles, messages, telephone bills, resumes, summaries, tabulations, tallies, statistical analyses, magnetic and electronic media (tapes, hard disks, floppy disks, computer tapes, computer printouts, input/output computer systems, whether optical, visual or magnetic), and any other tangible things on which any handwriting, typing, printing, photostatic image, magnetic or electronic impulse, or other form of communication is recorded or reproduced, and any amendments or supplements to any of the foregoing no matter by whom prepared. The term "Document" includes originals and each copy thereof if such copy differs in any respect from the original (whether because of notes or other information appearing on such copy or otherwise).

10.    "IDENTIFY" means:

(a)    when used in connection with a PERSON, means to provide the name, address and phone number of the individual or entity, and job title and place of employment at all times relevant to this action and from 2000 to the present date;

(b)    when used in connection with a DOCUMENT, means to classify the DOCUMENT by date, substance and content, and to IDENTIFY all PERSONS who participated in or were present during the creation and/or maintenance of the DOCUMENT;

(c)    when used in connection with COMMUNICATIONS, means to classify the COMMUNICATION by type (face-to-face, telephone, email, etc.), date, substance and content with specificity, and to IDENTIFY all PERSONS who participated in the COMMUNICATION; and

(d)     when used in connection with an event or facts supporting an allegation, means to (i) state all facts in detail with respect to each occurrence, (ii) IDENTIFY all PERSONS involved in the event, and (iii) state the date and place of the occurrence.

11.     The term "LOAN" or "LOANS" refers to the credit transaction(s) which is/are the subject of this lawsuit.

12.     The term "LOAN DOCUMENTS" shall mean all documents provided to you during the CLOSING of your LOAN(S).

13.     The term "LOAN PROCEEDS" means any and all funds disbursed by DEFENDANT to YOU, or to YOUR creditors on YOUR behalf, as a result of the LOAN.

14.     "PERSON" or "PERSONS" means any natural PERSON, or any legal entity or organization including corporations, firms, joint ventures, voluntary or unincorporated associations, organizations, proprietorships, trusts, estates, governmental agencies, commissions, bureaus corporations and divisions, and any subsidiaries and departments thereof.

15.     The term "PRINCIPAL DWELLING" means any residential structure (including a single or multi-family home, mobile home, condominium, or cooperative) where you have resided most of the time.

16.     "PROPERTY" means real estate which was security for any loan YOU received from DEFENDANTS.

17.     The term "SECURED TRANSACTION" means a transaction affecting real property as a result of which the rights to ownership of the property become encumbered by a mortgage, deed of trust, or similar instrument or any such encumbrance is modified or extinguished. A request to "DESCRIBE" a SECURED TRANSACTION is a request to state:

(a)     the address of the real property that became encumbered in connection with a secured transaction;

(b)     the date of the secured transaction;

(c)     the name and address of all persons involved in the secured transaction as buyer, seller, lender, borrower, or guarantor;

(d)     the consideration you received in connection with the secured transaction;

(e)     an itemization and description of how the loan proceeds were used;

(f)     whether the security interest remains attached to the real property or if not, the date the security interest was released; and

      (g)     if any security interest was released, the bases for said release.

18.    "YOU" and "YOUR" means Francis Adamowicz, her agents, employees and all other persons acting or purporting to act on her behalf.

19.    In lieu of IDENTIFYING a DOCUMENT, Plaintiffs may produce the DOCUMENT or COMMUNICATION itself, provided that its interrogatory response specifies with particularity the DOCUMENT or COMMUNICATION(S) responsive thereto.

20.    If a DOCUMENT once existed and has since been lost, destroyed, or is otherwise missing or unavailable, Plaintiffs shall IDENTIFY the DOCUMENT and state the details concerning the unavailability of such DOCUMENT.

21.    These interrogatories impose on Plaintiffs a continuous obligation. If Plaintiffs subsequently become aware of information that renders their answers to these interrogatories incomplete or inaccurate, it is required to supplement or amend its answers promptly to make such responses complete and accurate.

## II.    <u>INTERROGATORIES</u>

### <u>PLAINTIFF'S GENERAL ALLEGATIONS</u>

#### <u>INTERROGATORY NO. 1:</u>

IDENTIFY any and all of YOUR COMMUNICATIONS with ACCH including, but not limited to, describing in specific detail any COMMUNICATIONS that form the basis for any of YOUR contentions in the COMPLAINT such as any COMMUNICATIONS in which YOU were told "there is no time to read" the LOAN DOCUMENTS" or were pressured to "just sign the papers" as alleged in paragraph 97 of the COMPLAINT; or such as COMMUNICATIONS in which YOU were "promis[ed] early refinancing on better terms" as alleged in paragraph 96 of the COMPLAINT; or referring to discount points, or such as any objections, questions, or complaints YOU communicated to ACCH regarding any loan terms and for each COMMUNICATION, IDENTIFY all DOCUMENTS reflecting, evidencing, or referring to the COMMUNICATION.

#### <u>INTERROGATORY NO. 2:</u>

For YOUR contention that ACCH made "standard misrepresentations" to YOU "and/or failed to provide [YOU] with appropriate documentation and/or disclosures" and as a result of

BN 1304755v1

the conduct of ACCH YOUR mortgage "included excessive, undisclosed and/or illegal interest, fees and penalties" as alleged in the COMPLAINT:

       (a)    State any and all facts that support YOUR contention and that ACCH did the foregoing (other than through acts or omissions of another DEFENDANT or any other PERSON);

       (b)    IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

       (c)    IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

       (d)    IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

**INTERROGATORY NO. 3:**

With respect to each wrongful act or omission that YOU contend ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON) committed against YOU, state all facts upon which YOU base that contention, and for each wrongful act or omission:

       (a)    State any and all facts that support YOUR contention and that ACCH did the foregoing (other than through acts or omissions of another DEFENDANT or any other PERSON);

       (b)    Describe the wrongful act or omission in specific detail;

       (c)    State the date(s) on which the wrongful act or omission occurred;

       (d)    State the date on which YOU first suspected that the wrongful act or omission had occurred and state all facts upon which YOU based your suspicion or discovery;

       (e)    If YOU were not suspicious that a wrongful act or omission had taken place at the time of its occurrence, state all facts explaining why YOU did not have that suspicion sooner;

       (f)    IDENTIFY all COMMUNICATIONS by which YOU complained or inquired about the act or omission including, but not limited to, contacting a PERSON, ACCH investigator, or lawyer regarding the wrongful act or a potential claim against DEFENDANTS;

       (g)    IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

**Case No. MDL No. 1715**
**ACCH INTERROGATORY TO FRANCIS ADAMOWICZ SET 1**

BN 1304755v1

(h)　　IDENTIFY any COMMUNICATIONS by a PERSON, ACCH investigator, or lawyer regarding or inquiring about the wrongful act or omission;

(i)　　IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(j)　　IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contentions(s).

## INTERROGATORY NO. 4:

If YOU contend that YOU relied on any misrepresentation or omission by ACCH (as distinguished from any other DEFENDANT or PERSON), state in detail all facts upon which YOU rely in support of YOUR contention, and for the contention(s):

(a)　　IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

(b)　　IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(c)　　IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

## INTERROGATORY NO. 5:

If YOU contend YOUR reliance on any alleged misrepresentation or omission by ACCH (as distinguished from any other DEFENDANT or PERSON) was reasonable, state in detail all facts upon which YOU base YOUR contention, and for the contention(s):

(a)　　IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

(b)　　IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(c)　　IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

## INTERROGATORY NO. 6:

Aside from ACCH, did any PERSON at any time before or at the CLOSING provide YOU with any description of the meaning or potential consequences of any of the LOAN DOCUMENTS or any portion thereof? If so, identify said PERSON and all COMMUNICATIONS YOU had with said PERSON on that topic.

**Case No. MDL No. 1715**
**ACCH INTERROGATORY TO FRANCIS ADAMOWICZ SET 1**

BN 1304755v1

**INTERROGATORY NO. 7:**

If YOU contend any alleged wrongful act or omission by ACCH (as distinguished from any other DEFENDANT or PERSON) against YOU was intentional, state in detail all facts upon which YOU rely in support of YOUR contention, and for the contention(s):

(a)     IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

(b)     IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(c)     IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

**INTERROGATORY NO. 8:**

For each of YOUR PRINCIPAL DWELLING(S) from January 2000 to the present, state:

(a)     the address;

(b)     the date of YOUR purchase or lease of it;

(c)     the dates YOU resided there;

(d)     YOUR percentage of ownership, if any;

(e)     IDENTIFY all PERSONS holding an ownership interest in it;

(f)     DESCRIBE how the PROPERTY has been USED from January 2000 to the present; and

(g)     DESCRIBE each and every use of the LOAN PROCEEDS from the CLOSING delineated by dollar amount.

### III.
### BAIT AND SWITCH ALLEGATIONS

**INTERROGATORY NO. 9:**

For each of the "unfavorable terms" contained in YOUR LOAN such as alleged in paragraphs 6 and 112 of the COMPLAINT,

(a)     identify with specificity the "unfavorable term" and any other terms "promised" to YOU;

(b)     state the date YOU learned of the "unfavorable term" and whether or not YOU learned of the "unfavorable term" in advance of the loan closing and/or signing of the LOAN DOCUMENTS;

Case No. MDL No. 1715
ACCH INTERROGATORY TO FRANCIS ADAMOWICZ SET 1

BN 1304755v1

(f)    IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

**INTERROGATORY NO. 11:**

For YOU and any proposed class member, state the specific source of any information utilized by ACCH (as distinguished from any other DEFENDANT or PERSON) necessitating an "adverse action notice" including identifying (i) the type of source i.e., a consumer report; and (ii) the specific information relied upon within the consumer report or communication and for each contention:

(a)    state all facts supporting YOUR contention;

(b)    IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

(c)    IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention (s); and

(d)    IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

**INTERROGATORY NO. 12:**

For your contention that ACCH utilized "scare or pressure tactics" "to cause [YOU] to proceed with the transaction" despite being presented with "new or different terms" or utilized any other alleged improper sales tactics for YOUR LOAN such as alleged in paragraphs 96 and 112 of the COMPLAINT:

(a)    State any and all facts that support YOUR contention and that ACCH did the foregoing other than through acts or omissions of another DEFENDANT or any other PERSON;

(b)    IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

(c)    IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(d)    IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

## V.
## WRONGFUL DISCLOSURES

**INTERROGATORY NO. 13:**

If YOU are alleging that ACCH (other than through acts or omissions of other DEFENDANT or PERSON) committed wrongdoing against YOU with respect to disclosures (as that term is used in the COMPLAINT) including but not limited to allegations regarding timing, content, failure to provide, failure to leave in YOUR possession, or YOUR ability to review or understand any disclosures, then describe in specific detail the facts YOU rely upon in support of YOUR contention, including but not limited to:

(a)     the date and time YOU received YOUR DISCLOSURES and the date and time of YOUR CLOSING;

(b)     any language YOU contend was "inaccurate, misleading, incomplete, or otherwise not in compliance with statutory requirement" as alleged in paragraph 99 of the COMPLAINT or "deficient" as alleged in paragraph 240 of the COMPLAINT;

(c)     any information YOU contend should have been disclosed prior to or at closing such as alleged in paragraph 114 of the COMPLAINT; and

(d)     YOUR understanding, during the period of time from the CLOSING, to seven (7) days thereafter, of the amount of time that YOU had to rescind YOUR LOAN.

(e)     State any and all facts that support YOUR contention and that ACCH did the foregoing other than through acts or omissions of another DEFENDANT or any other PERSON;

(f)     IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

(g)     IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(h)     IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

**INTERROGATORY NO. 14:**

For the document titled: "ONE WEEK CANCELLATION PERIOD DISCLOSURE," a sample of which is attached hereto, state:

(a)     the date on which YOU first received the document;

**Case No. MDL No. 1715**
**ACCH INTERROGATORY TO FRANCIS ADAMOWICZ SET 1**

BN 1304755v1

    (b)    the date YOU first read all or any portion of the document;

    (c)    IDENTIFY any COMMUNICATION with YOU about the document; and

    (d)    state the date on which YOU first understood that YOU had one week to rescind the loan.

### INTERROGATORY NO. 15:

Describe the manner in which YOU have stored the LOAN DOCUMENTS since the CLOSING, including a description of each and every location where they have been stored since the CLOSING and all PERSONS who have accessed, or who have had access, to the LOAN DOCUMENTS since the CLOSING. If any of the LOAN DOCUMENTS have been lost, destroyed, modified, altered, or separated from the other LOAN DOCUMENTS from the time of the CLOSING, IDENTIFY such documents, explain how or why they were lost, destroyed, modified, altered, or separated, describe what happened, the date of the occurrence, and IDENTIFY all COMMUNICATIONS reflecting, evidencing, or referring to the occurrence.

### INTERROGATORY NO. 16:

If as part of YOUR claims against DEFENDANTS, YOU claim that ACCH (as distinguished from any other DEFENDANT or PERSON) improperly required or purchased "force-place insurance" for YOUR PROPERTY:

    (a)    state all facts which support YOUR contention;

    (b)    state the name and address of the insurer, policy number, policy limits, and date of issuance of any insurance on the PROPERTY immediately before the alleged "force-place" insurance was placed on the PROPERTY;

    (c)    state whether YOUR premium payments were current with respect to any insurance on the PROPERTY for the three months prior before the alleged "force-place" insurance was placed on the PROPERTY and if not, state the dates of any delinquency;

    (d)    identify the amount YOU were "improperly" charged for the "force-place" insurance;

    (e)    IDENTIFY all COMMUNICATIONS with ACCH (as distinguished from any other DEFENDANT or PERSON) regarding the status of YOUR insurance and the alleged "force-place" insurance;

    (f)    IDENTIFY all COMMUNICATIONS in which ACCH (as distinguished from any other DEFENDANT or PERSON) was informed that YOU already had insurance; and

Case No. MDL No. 1715
**ACCH INTERROGATORY TO FRANCIS ADAMOWICZ SET 1**

BN 1304755v1

(g)  state the factual basis for YOUR contention that ACCH (as distinguished from any other DEFENDANT or PERSON) knew or should have known that "force-place" insurance was not necessary.

**INTERROGATORY NO. 17:**

For any wrongful act or omission by ACCH (as distinguished from any other DEFENDANT or PERSON) with regard to the servicing of YOUR LOAN which forms the basis for any of YOUR claims such as the allegations in paragraph 118 to 121 or 129 of the COMPLAINT, describe the circumstances of each wrongful act or omission of ACCH other than through the act or omission of any other DEFENDANT or PERSON, including, but not limited to:

(a)  IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s);

(b)  IDENTIFY all DOCUMENTS reflecting, referring to, or upon which you rely in support of YOUR contention(s);

(c)  IDENTIFY any COMMUNICATIONS referring to, constituting, relating to, or evidencing the wrongful act or omission including complaints and resolution;

(d)  Identify the specific date(s) of any alleged wrongful act or omission, date YOU became aware of the act, and date of resolution;

(e)  if the wrongful act was a "mishandled payment or the failure "to timely or properly credit payments" by ACCH (as distinguished from any other DEFENDANT or PERSON): (i) identify the payment by date, amount, account number, payee, payor, purpose of the payment; (ii) the method of payment such as check, and check number if applicable; (iii) date(s) the payment was credited; (iv) method of transfer such as mail; (v) date of transfer, such as date of mailing; and (vi) whether the payment was later appropriately applied to your LOAN;

(f)  if the wrongful act was "unlawfully demanding amounts that are not due under the threat of foreclosure" by ACCH (as distinguished from any other DEFENDANT or PERSON): (i) IDENTIFY all COMMUNICATIONS and DOCUMENTS reflecting or referring to the demand; (ii) state the reason given for the demand; (iii) identify any actions taken in response to the demand such as payment or a complaint; and (iv) state the outcome of the demands and any complaints;

(g)     if the wrongful act was a violation of the terms of the LOAN contract, by ACCH (as distinguished from any other DEFENDANT or PERSON) state: (i) exactly which term of the contract was violated; and (ii) describe in specific detail how the term was violated; and

(h)     if the wrongful act was failing "to deliver timely payoff information to subsequent lenders" by ACCH (as distinguished from any other DEFENDANT or PERSON): (i) IDENTIFY the "subsequent lender;" (ii) IDENTIFY all COMMUNICATIONS evidencing or regarding the payoff information request; (iii) the date of the closing with the subsequent lender; (iv) the date the payoff amount was originally requested; and (v) the date the payoff information was provided.

## VI.
## DEBT COLLECTION PRACTICES

### INTERROGATORY NO. 18:

IDENTIFY any improper debt collection practices and acts with respect to YOU which forms the basis for any of YOUR claims against ACCH and for each practice and act:

(a)     State any and all facts that support YOUR contention and that ACCH did the foregoing (other than through acts or omissions of another DEFENDANT or any other PERSON);

(b)     Identify the amount of the debt including dates of missed payments, the time period the amount was outstanding, and whether the outstanding debt has been paid;

(c)     IDENTIFY all acts or COMMUNICATIONS reflecting, evidencing, or referring to the "improper debt collection practices;"

(d)     IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s) and all COMMUNICATIONS with ACCH about any outstanding amounts;

(e)     IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(f)     IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

BN 1304755v1

# VII.
## STATUTE OF LIMITATIONS

**INTERROGATORY NO. 19:**

For YOUR contention that ACCH (as distinguished from any other DEFENDANT or PERSON) should be estopped from relying upon any statute of limitations applicable to YOU, or that the statute of limitations has been tolled with respect to YOUR claims; that YOU exercised reasonable diligence but could not and did not discover the wrongdoing; and ACCH (as distinguished from any other DEFENDANT or PERSON) was under a duty to disclose their practices such as alleged in paragraphs 232 and 233 of YOUR COMPLAINT:

(a)     state the actions or omissions of ACCH (as distinguished from any other DEFENDANT or PERSON) with respect to YOU that form the basis for YOUR contention(s);

(b)     state all facts upon which YOU base YOUR contention(s);

(c)     IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(d)     IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

# VIII.
## RESPA

**INTERROGATORY NO. 20:**

If YOU contend that ACCH (other than through acts or omissions of any other DEFENDANT or PERSON) is liable to YOU for a RESPA violation, state all facts supporting YOUR contention including, but not limited to:

(a)     all facts supporting YOUR contention, if any, that information concerning YOUR debt was provided to ACCH (as distinguished from any other DEFENDANT or PERSON) by a creditor "in exchange for" a requirement of the payment of the debt;

(b)     all facts supporting YOUR contention, if any, that ACCH (as distinguished from any other DEFENDANT or PERSON) gave "a fee, kickback, or thing of value in exchange for the referral of real estate services" with respect to YOUR LOAN including the recipient and the amount or value;

(c)     IDENTIFY the value of anything YOU claim was improperly received by ACCH;

(d)     IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

(e)     IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(f)     IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

## IX.
## CONTRACT

**INTERROGATORY NO. 21:**

For any "implied, oral, and/or unilateral contracts" or "contracts formed with prospective borrowers by charging loan discount fees" which YOU allege were entered into between YOU and ACCH (other than through acts or omissions of any other DEFENDANT or PERSON):

(a)     IDENTIFY all COMMUNICATIONS or acts which YOU contend make up the offer and acceptance or otherwise formed the contract;

(b)     state in specific detail the terms of the contract and the parties to the contract;

(c)     state the date the contract was formed;

(d)     state whether the written loan contract contains terms that contradict the terms identified in subparagraph (b) herein;

(e)     IDENTIFY any breach of the contract by ACCH (as distinguished from any other DEFENDANT or PERSON);

(f)     IDENTIFY any act by YOU to enforce the contract with respect to ACCH (as distinguished from any other DEFENDANT or PERSON);

(g)     IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

(h)     IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(i)     IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

## X.
## CALIFORNIA DECEPTIVE PRACTICES

**INTERROGATORY NO. 22:**

If YOU contend that "Ameriquest knows or should know that YOU are a senior and/or a PERSON with a disability as defined in California Civil Code §1761(f) and (g)" such as alleged in paragraph 319 of the COMPLAINT:

        (a)    IDENTIFY all facts upon which YOU rely in support of YOUR contention with respect to ACCH;

        (b)    IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

        (c)    IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

        (d)    IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

## XI.
## DAMAGES

**INTERROGATORY NO. 23:**

IDENTIFY each item of damage or cost YOU claim ACCH (as distinguished from any other DEFENDANT or PERSON) is liable for, separately for each cause of action and for each wrongful act or omission by ACCH other than through acts or omissions of any other DEFENDANT or PERSON, including the dates of occurrence, amount, the total damages, show how YOU computed the damage, and for the contention(s):

        (a)    IDENTIFY all COMMUNICATIONS upon which YOU rely in support of YOUR contention(s);

        (b)    IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

        (c)    IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

**INTERROGATORY NO. 24:**

State in detail all facts upon which YOU rely in support of YOUR contention that the actions of ACCH (other than through acts or omissions of any other DEFENDANT or PERSON) are the

# ONE WEEK CANCELLATION PERIOD

Loan Number: _____       Borrower(s): _____

Date: _____

You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.  This right is described in the Notice of Right to Cancel you have received today.

_____ believes that a loan secured by your home is one of the most important financial decisions you can make.  To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.  No money will be disbursed before 10:00 a.m. on the first business day after this period expires.  Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends.  You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan.  The written statement must be signed and dated by any one borrower.  Your request must be delivered to:

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

| | |
|---|---|
| _____ | _____ |
| Borrower/Owner | Date |
| _____ | _____ |
| Borrower/Owner | Date |
| _____ | _____ |
| Borrower/Owner | Date |
| _____ | _____ |
| Borrower/Owner | Date |

---

### REQUEST TO CANCEL

I/We want to cancel loan # _____.

_____       _____
Borrower/Owner Signature                        Date

---

850(10/00)                                                                                              **LENDER COPY**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO:<br><br>THE CONSOLIDATED COMPLAINT FOR CLAIMS OF BORROWERS | **DEFENDANT ACC CAPITAL HOLDINGS CORPORATION'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO FRANCIS ADAMOWICZ**<br><br>**[Fed.R.Civ.P. 26, 34]** |

**PROPOUNDING PARTY: Defendant ACC CAPITAL HOLDINGS CORPORATION**

**RESPONDING PARTY:    Plaintiff FRANCIS ADAMOWICZ**

**SET NO.:    ONE**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant ACC CAPITAL HOLDINGS CORPORATION ("ACCH") hereby requests that plaintiff Francis Adamowicz, produce the documents requested below within thirty (30) days of the date of service hereof, at the offices of Buchalter Nemer, 1000 Wilshire Blvd, Suite 1500, Los Angeles, CA 90017-5704. Defendant's inspection and copying will not permanently alter the items inspected or copied.

### DEFINITIONS

1.    "ACCH" means ACC Capital Holdings Corporation and for purposes of responding to these interrogatories, should be treated as separate and distinct from other DEFENDANTS and PERSONS, regardless of YOUR allegations of agency, conspiracy, joint venture, or other allegation of secondary liability such as alleged in paragraphs 86 to 90 of the COMPLAINT.

2.    "CLOSING" means and refers to the closing that is the subject matter of your COMPLAINT. The term "closing" has the same meaning as commonly used in the real estate

and mortgage industry to describe the process by which representatives of the lender meet (in person or otherwise) with the borrower for the purpose of consummating the mortgage loan and signing all related documents.

3. "COMPLAINT" means the COMPLAINT filed by YOU in this Action, on or about December 6, 2006 titled "Borrowers' Consolidated Class Action COMPLAINT."

4. "COMMUNICATIONS" means and includes correspondences, conversations and all other forms of information exchange, whether written, verbal, by telephone, electronic mail, facsimile or other mode of transmission.

5. "DEFENDANT" or "DEFENDANTS" means Ameriquest Mortgage Company, ACC Capital Holdings Corporation, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., Town & Country Credit Corporation, Town & Country Title Services, Inc., Argent Mortgage Co., LLC, JM Closing, and/or Jonathon Means.

6. "DOCUMENT" shall have the meaning ascribed to that term in Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, papers, writings, memoranda, contracts, agreements, books, journals, ledgers, statements, reports, bills, billings, invoices, work sheets, projections, notes, letters, email, instant messaging, text messaging, correspondence, COMMUNICATIONS, abstracts, advertisements, drawings, photographs, audits, charges, balance sheets, income statements, checks, diagrams, certificates, diaries, calendars, logs, drafts, recordings, instructions, lists, minutes of meetings, orders, resolutions, recitals, telegrams, wires, cables, telexes, facsimiles, messages, telephone bills, resumes, summaries, tabulations, tallies, statistical analyses, magnetic and electronic media (tapes, hard disks, floppy disks, computer tapes, computer printouts, input/output computer systems, whether optical, visual or magnetic), and any other tangible things on which any handwriting, typing, printing, photostatic image, magnetic or electronic impulse, or other form of communication is recorded or reproduced, and any amendments or supplements to any of the foregoing no matter by whom prepared. The term "Document" includes originals and each copy thereof if such copy differs in any respect from the original (whether because of notes or other information appearing on such copy or otherwise).

7. "LOAN" or "LOANS" refers to the credit transaction(s) which is/are the subject of this lawsuit.

Case No. MDL No. 1715
ACCH RFP TO FRANCIS ADAMOWICZ SET 1

BN 1304503v1

8.     "LOAN DOCUMENTS" shall mean all documents provided to you during the CLOSING of your LOAN(S).

9.     "LOAN PROCEEDS" means any and all funds disbursed by DEFENDANT to YOU, or to YOUR creditors on YOUR behalf, as a result of the LOAN.

10.    "PERSON" or "PERSONS" means any natural person, or any legal entity or organization including corporations, firms, joint ventures, voluntary or unincorporated associations, organizations, proprietorships, trusts, estates, governmental agencies, commissions, bureaus corporations and divisions, and any subsidiaries and departments thereof.

11.    "PLAINTIFFS" means all named Plaintiffs in the COMPLAINT, their agents, employees and all other PERSONS acting or purporting to act on their behalf.

12.    "PRINCIPAL DWELLING" means any residential structure (including a single or multi-family home, mobile home, condominium, or cooperative) where you have resided most of the time.

13.    "PROPERTY" means real estate which was security for any loan YOU received from a DEFENDANT.

14.    "RELATING TO," when used in reference to a DOCUMENT, means that the DOCUMENT constitutes, comprises, contains, discusses, evidences, comments upon, embodies, identifies, states, explains, describes, shows, makes manifest or apparent, or analyzes the subject of the request.

15.    "YOU" "YOUR" and "PLAINTIFF" means Francis Adamowicz, her agents, employees and all other PERSONS acting or purporting to act on her behalf.

## INSTRUCTIONS

1.     The PLAINTIFF is required to produce requested LOAN DOCUMENTS as they have been kept by the PLAINTIFF in the ordinary course, and to produce other DOCUMENTS as they are kept in the ordinary course or to organize and label them to correspond to the categories of DOCUMENTS requested.   DOCUMENTS found attached or joined to other DOCUMENTS by staple, clip, binder, binding, file folder, computer file or directory should be produced in the same manner.  If DOCUMENTS are produced on CDs, include with the CDs the appropriate file that will ensure that, when printed in hard copy form, the integrity of individual DOCUMENTS is maintained.

3

apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

6. If any part of a DOCUMENT is responsive, produce the entire DOCUMENT. If YOU assert privilege with respect to any part of a responsive DOCUMENT, redact the privileged portion and indicate clearly on the DOCUMENT where material was redacted by the legend "REDACTED-PRIVILEGED." Redacted DOCUMENTS should be produced even if YOU believe that the non-redacted portion is not responsive. Please identify redactions on YOUR privilege log in the same manner as withheld DOCUMENTS.

7. If YOU withhold any DOCUMENT responsive to any request for any reason other than a claim of attorney-client privilege or work-product protection, provide a list identifying each such DOCUMENT withheld, the asserted basis for withholding the DOCUMENT, the custodian, the date of the DOCUMENT, the author(s), all recipients, together with the job titles or positions of the author(s) and recipients, the subject matter of the DOCUMENT and the paragraph of this Request to which each such DOCUMENT relates.

8. DOCUMENTS in electronic format should be made available electronically in their native file format, unless another form or format is specifically requested. If YOU believe that production in a specified electronic format is overly burdensome, YOU should so state in YOUR response to these requests and produce DOCUMENTS in reasonably usable form. Defendant reserves the right to seek the production of additional DOCUMENTS in an alternative form or format from that in which they were originally produced.

9. If, in responding to this DOCUMENT request, YOU believe that any request, instruction, or definition is ambiguous, set forth the matter deemed ambiguous and the construction used in responding.

10. YOUR obligation to produce DOCUMENTS responsive to these requests is continuing. If YOU create or discover responsive DOCUMENTS after YOUR initial response to these requests, promptly produce such DOCUMENTS in accordance with these instructions or follow the procedures specified for DOCUMENTS withheld under a claim of privilege or otherwise.

11. These requests are not intended to be duplicative. Each request should be responded to fully, and to the extent not covered by other requests. If DOCUMENTS are responsive to more than one request, YOU should so note in YOUR response and produce each

2.     The document requests set forth below pertain to all DOCUMENTS available to YOU, including all DOCUMENTS in YOUR possession, custody or control.

3.     Unless otherwise specified, the document requests set forth below pertain to DOCUMENTS that were prepared, generated, written, sent, dated or received during the time period from January 1, 1999 to the date of YOUR production.

4.     If any responsive DOCUMENT was, but is no longer, in YOUR possession, custody or control, provide the following information;

(a)     The disposition of the DOCUMENT;

(b)     The date such disposition was made;

(c)     The custodian of the DOCUMENT at the time YOU disposed of the Document, and any present custodian of the document, if known;

(d)     Identify the PERSON who made the decision to dispose of the DOCUMENT;

(e)     State the reason for the disposition;

(f)     Describe the DOCUMENT and the contents of the DOCUMENT, including the title, subject matter, number of pages, author(s), job title or positions of the author(s) and recipients and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

5.     Where a claim of privilege is asserted in objecting to any request or part thereof, and information is withheld on the basis of such assertion:

(a)     Identify the nature of the privilege (including work product) that is being claimed; and

(b)     Provide the following information in a privilege log accompanying YOUR response:

(i)     The paragraph of this request to which such DOCUMENT is responsive;

(ii)     The type of DOCUMENT,

(iii)     The general subject matter of the DOCUMENT;

(iv)     The date of the DOCUMENT, the custodian, author(s), all recipients, together with the job titles or positions of the author(s) and recipients, and, where not

**Case No. MDL No. 1715**
**ACCH RFP TO FRANCIS ADAMOWICZ SET 1**

such DOCUMENT in response to the request that is more specifically directed to the subject matter of the particular DOCUMENT.

12.     Should YOU obtain any other DOCUMENTS or information which would supplement or modify the DOCUMENTS or information supplied by YOU in response to this request, YOU are directed, pursuant to FRCP 26(e), to give timely notice of such DOCUMENTS and information and to furnish the additional DOCUMENTS or information to ACCH without delay.

## DOCUMENTS REQUESTED

**REQUEST NO. 1:**

Any and all DOCUMENTS RELATING TO ACCH.

**REQUEST NO. 2:**

Any and all DOCUMENTS provided to YOU by ACCH.

**REQUEST NO. 3:**

Any and all DOCUMENTS YOU have provided to ACCH.

**REQUEST NO. 4:**

Any and all DOCUMENTS that were present at the LOAN CLOSING.

**REQUEST NO. 5:**

Any and all DOCUMENTS referred to or relied upon in YOUR responses to ACCH's First or Second Sets of Interrogatories.

**REQUEST NO. 6:**

Any and all DOCUMENTS RELATING TO any COMMUNICATION(S) YOU have had with any person (excluding privileged communications with YOUR attorneys) regarding any of the matters alleged in the COMPLAINT.

**REQUEST NO. 7:**

Any and all DOCUMENTS which identify any PERSON who has knowledge concerning any of the matters alleged in the COMPLAINT.

**REQUEST NO. 8:**

Any and all DOCUMENTS created and/or maintained by any PERSON, including but not limited to, notes, journals, ledgers, and diaries, RELATING TO any of the matters alleged in the COMPLAINT.

**Case No. MDL No. 1715**
**ACCH RFP TO FRANCIS ADAMOWICZ SET 1**

BN 1304503v1

**REQUEST NO. 9:**

Any and all DOCUMENTS, including any written statement, affidavit, or declaration that YOU have obtained from any PERSON concerning any matter alleged in the COMPLAINT.

**REQUEST NO. 10:**

Any and all DOCUMENTS RELATING TO the allegations, assertions, facts or claims in the COMPLAINT, including, but not limited to, transcribed testimony, any writings made with respect to YOU or YOUR attorneys' interviews of such PERSONS, or any other such DOCUMENTS.

**REQUEST NO. 11:**

Any and all DOCUMENTS RELATING TO any COMMUNICATIONS between YOU and any PERSON regarding the subject matter of the COMPLAINT.

**REQUEST NO. 12:**

Any and all DOCUMENTS RELATING TO any products or services offered or provided to YOU by ACCH.

**REQUEST NO. 13:**

Any and all DOCUMENTS RELATING TO any transactions between YOU and ACCH, or any alleged affiliate of ACCH.

**REQUEST NO. 14:**

Any and all DOCUMENTS RELATING TO any COMMUNICATIONS involving YOU RELATING TO ACCH, or any alleged affiliate of ACCH.

**REQUEST NO. 15:**

Any and all DOCUMENTS RELATING TO any products or services offered or provided by any lender to YOU after January 1, 2000.

**REQUEST NO. 16:**

Any and all DOCUMENTS sufficient to identify all past or current litigation in which YOU were plaintiff, defendant, third party defendant, or witness from January 1, 1990 to the present.

**REQUEST NO. 17:**

DOCUMENTS sufficient to show the ownership or lease by YOU of any real estate from January 1, 1990 to the present.

**REQUEST NO. 34:**

Any and all DOCUMENTS RELATING TO any credit obtained by YOU which YOU challenged or about which YOU complained.

**REQUEST NO. 35:**

Any and all DOCUMENTS RELATING TO any bankruptcy proceeding filed by YOU.

**REQUEST NO. 36:**

Any and all pleadings served or filed in any lawsuit filed by YOU or involving YOU.

**REQUEST NO. 37:**

Any and all DOCUMENTS RELATING TO any complaints, grievances, or reports made by YOU to any PERSON RELATING TO ACCH.

**REQUEST NO. 38:**

Any and all DOCUMENTS RELATING TO YOUR attempts to rescind a LOAN from ACCH.

**REQUEST NO. 39:**

Any and all DOCUMENTS which YOU contend support YOUR allegations, claims, or requests for statutory, actual, or punitive damages in the COMPLAINT.

**REQUEST NO. 40:**

Any and all DOCUMENTS RELATING TO any injury or damages that YOU claim to have suffered as a result of the allegations in the COMPLAINT.

**REQUEST NO. 41:**

Any and all DOCUMENTS supporting YOUR contention that YOU are able to meet YOUR tender obligations or which otherwise show that YOU are financially able to reimburse ACCH for any LOAN PROCEEDS paid to YOU or on YOUR behalf.

**REQUEST NO. 42:**

Any and all DOCUMENTS supporting YOUR contention that YOU have sustained damages as a result of any act or omission of ACCH.

**REQUEST NO. 43:**

Any and all DOCUMENTS RELATING TO YOUR purchase or sale of the PROPERTY.

**REQUEST NO. 44:**

DOCUMENTS sufficient to show YOUR current ownership interest in the PROPERTY.

Case No. MDL No. 1715
**ACCH RFP TO FRANCIS ADAMOWICZ SET 1**

**REQUEST NO. 45:**

Any and all DOCUMENTS RELATING TO COMMUNICATIONS to, from, or with YOUR lawyers or anyone acting on their behalf prior to the date when you first retained that law firm to represent you.

**REQUEST NO. 46:**

All DOCUMENTS RELATING TO any efforts made by PLAINTIFFS or their Counsel to identify or contact potential members of the putative class referred to in the COMPLAINT.

**REQUEST NO. 47:**

All DOCUMENTS upon which YOU base YOUR allegation that the proposed class or sub-classes is ascertainable.

**REQUEST NO. 48:**

All DOCUMENTS RELATING TO any rental property owned by YOU at any time from January 2000 to the present.

**REQUEST NO. 49:**

All DOCUMENTS RELATING TO any business or commercial use of any real property owned by YOU such as leases, rental agreements, or documents related to a home office or business operated out of YOUR home.

**REQUEST NO. 50:**

All DOCUMENTS RELATING TO any agricultural use of any property owned by YOU such as for the production, harvest, exhibition, marketing, transportation, processing or manufacture of agricultural products, the care of livestock, farmland, real property with a farm residence, and personal property and services used in farming.

**REQUEST NO. 51:**

All DOCUMENTS RELATING TO YOUR use or intended use of the LOAN PROCEEDS.

**REQUEST NO. 52:**

All DOCUMENTS RELATING TO any information upon which each allegation made upon "information and belief" in Paragraph 91 of the COMPLAINT is based.

**REQUEST NO. 53:**

All DOCUMENTS RELATING TO any information upon which each allegation made upon "information and belief" in Paragraph 143 of the COMPLAINT is based.

**Case No. MDL No. 1715**
**ACCH RFP TO FRANCIS ADAMOWICZ SET 1**

**REQUEST NO. 54:**

All DOCUMENTS RELATING TO any information upon which each allegation made upon "information and belief" in Paragraph 383 of the COMPLAINT is based.

**REQUEST NO. 55:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Ameriquest has engaged and is engaged in uniform unfair, unconscionable, deceptive and unlawful commercial practices in soliciting and closing residential mortgage transactions nationwide" such as alleged in paragraph 3 of the COMPLAINT.

**REQUEST NO. 56:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "By its predatory loan practices, Ameriquest engages in a persistent "bait and switch" scheme" such as alleged in paragraphs 5 and 93 to 97 of the COMPLAINT.

**REQUEST NO. 57:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Plaintiffs and the Class members whose loans were financed by Ameriquest each received a loan which, to their surprise, contained one or more of the following unfavorable terms: (a) confusing and unfair variable interest rate structure which provides only for an increase and not decrease in the borrower's interest rate; (b) a misleading charge for "discount points" or a "discount fee" often totaling thousands of dollars added to the principal of the loan, although Ameriquest provided no "discount" to the interest rate; (c) prepayment penalty that hinders borrowers from refinancing on better terms with other lenders; and (d) duplicative and excessive costs and closing fees in amounts designed to strip home equity and prevent borrowers from refinancing without incurring high costs" such as alleged in paragraph 6 of the COMPLAINT.

**Case No. MDL No. 1715**
**ACCH RFP TO FRANCIS ADAMOWICZ SET 1**

BN 1304503v1

**REQUEST NO. 58:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Ameriquest also routinely fails to provide required disclosures, including the statutorily mandated Notice of Right to Cancel, and/or circumvents statutory protections by failing to leave a true copy of completed loan documents in borrowers' possession so that borrowers cannot review the loan terms"; and removes documents and conceals loan documents or terms such as alleged in paragraphs 7, 95, 98 to 101 of the COMPLAINT.

**REQUEST NO. 59:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "When borrowers inquire at closing about why they are not receiving their loans on the promised terms, they are typically promised early refinancing on more favorable terms. That promise is false, either because no refinance is made or because the available refinance is not on more favorable terms. If a refinance is offered by Ameriquest, it involves an additional set of expensive duplicate and unnecessary closing fees" such as alleged in paragraph 8 of the COMPLAINT.

**REQUEST NO. 60:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Ameriquest's unfair practices allow Ameriquest to profit by leaving borrowers with a three-way Hobson's choice. Either the borrower can 1) choose to remain in a loan with unacceptable terms; 2) find another lender offering better terms and pay Ameriquest a substantial and unjustified prepayment penalty while losing equity on additional closing costs; or 3) refinance with Ameriquest and thereby provide Ameriquest with an opportunity to capitalize the points and closing costs from the first loan while charging another set of points and/or closing costs in an equal or larger amount" such as alleged in paragraph 10 of the COMPLAINT.

Case No. MDL No. 1715
ACCH RFP TO FRANCIS ADAMOWICZ SET 1

**REQUEST NO. 61:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "By the practices described in this COMPLAINT, Ameriquest violated numerous federal and state laws" such as alleged in paragraph 11 of the COMPLAINT.

**REQUEST NO. 62:**

Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "the "Scheme" originated in California" such as alleged in paragraph 13 of the COMPLAINT.

**REQUEST NO. 63:**

Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts"; "Ameriquest controlled the actions of all the Defendants and of each of them by a program of centralized policy-making, policy dissemination, and training, emanating from central offices in California"; and "Ameriquest has also implemented centralized decision-making and policy control by and through its overlapping officers and/or by a process of policy dissemination emanating from Roland Arnall, the founder and controlling shareholder of each Ameriquest entity" such as alleged in paragraphs 86, 87, and 88 of the COMPLAINT.

**REQUEST NO. 64:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Ameriquest has engaged in and continues to engage in a uniform common plan and scheme to prey upon unsuspecting consumers by routinely causing borrowers to enter into residential loans with unfavorable terms, misleading and inappropriate "discount" fees, high and adjustable interest rates, prepayment penalties, and excessive loan principal compared to equity and ability to pay" such as alleged in paragraphs 5 and 92 of the COMPLAINT.

**REQUEST NO. 65:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that ACCH has utilized a "scheme relating to discount points" such as alleged in paragraphs 102 to 105 of the COMPLAINT.

**REQUEST NO. 66:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Ameriquest now acknowledges that it charged and collected discount points without providing a discount interest rate" such as alleged in paragraph 102 of the COMPLAINT.

**REQUEST NO. 67:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Ameriquest has a business practice of using oppressive and unfair marketing techniques to prey upon homeowners" or has utilized an improper or unlawful "sales and marketing scheme" such as alleged in paragraphs 106 to 115 of the COMPLAINT.

**REQUEST NO. 68:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations regarding "ACCH's compensation system" and the alleged resulting practices such as alleged in paragraphs 116 and 117 of the COMPLAINT.

**REQUEST NO. 69:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations of ACCH's "common pattern and practice of unfair, unlawful, and deceptive practices in connection with mortgage

loan servicing" and debt collection such as alleged in paragraphs 9, 118 to 122, 129, 154 of the COMPLAINT.

**REQUEST NO. 70:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Ameriquest made standard misrepresentations and/or failed to provide the [Plaintiffs] with appropriate documentation and/or disclosures" and that "As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties" such as alleged in paragraphs 123 to 125, 133 to 142, 144 to 153, and 155 to 178 of the COMPLAINT.

**REQUEST NO. 71:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Ameriquest violated the requirements of GAFLA" such as alleged in paragraphs 130 to 132 of the COMPLAINT.

**REQUEST NO. 72:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "the referral by Ameriquest to Sears at Sherman Acquisition was made in exchange for Ameriquest's promise to direct plaintiff, as a condition of loan approval, to pay the entire amount of the debt owned to Sears German acquisition, in violation of the Real Estate Procedures Act" such as alleged in paragraph 143 of the COMPLAINT.

Case No. MDL No. 1715
ACCH RFP TO FRANCIS ADAMOWICZ SET 1

BN 1304503v1

**REQUEST NO. 73:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS which YOU contend support YOUR allegation that a class or sub-classes should be certified in this litigation.

**REQUEST NO. 74:**

All DOCUMENTS RELATING TO any other lawsuit in which YOU have served, or have proposed or offered to serve, as a class representative.

**REQUEST NO. 75:**

Any and all DOCUMENTS that identify any PERSONS who YOU contend are part of the class YOU purport to represent in the COMPLAINT.

**REQUEST NO. 76:**

Any and all DOCUMENTS RELATING TO any PERSON that YOU contend is part of the class YOU purported to represent in the COMPLAINT (other than your spouse).

**REQUEST NO. 77:**

Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that members of the class are "so numerous and geographically dispersed across the country that joinder of all members is impracticable" such as alleged in paragraphs 183, 193, 202, 211, 219, and 228 of the COMPLAINT.

**REQUEST NO. 78:**

Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that the representative plaintiffs' "claims are typical" such as alleged in paragraphs 184, 194, 203, 212, 220, and 229 of the COMPLAINT.

**REQUEST NO. 79:**

Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that that YOU "will fairly and adequately represent and protect the interests of the members of the class and have retained counsel competent and experienced in class action and consumer litigation" such as alleged in paragraphs 184, 195, 204, 213, 221, and 229 of the COMPLAINT.

**REQUEST NO. 80:**

Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Common questions of law and fact exist as to all members of [classes] and predominate over any questions affecting solely individual" members such as alleged in paragraphs 185, 196, 205, 214, 222, and 231 of the COMPLAINT.

**REQUEST NO. 81:**

Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "A class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices" such as alleged in paragraphs 186, 197, 206, 215, 223, and 230 of the COMPLAINT.

**REQUEST NO. 82:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein, including but not limited to Defendants' practices of concealing that they would not, despite promises, refinance loans," "Despite exercising reasonable diligence, Plaintiffs and members of the Class could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein"; and "the Defendants should be estopped from relying on any statutes of limitations. The Defendants have been under a continuing duty to disclose the true character, nature, and quality of their loan origination and servicing practices. The Defendants owed Plaintiffs and other members of the Class an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty" such as alleged in paragraphs 232 and 233 of the COMPLAINT.

**REQUEST NO. 83:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that the alleged failure to comply with 15 U.S.C. §1681m(a) was "willful, or in the alternative, was negligent" such as alleged in paragraph 256 of the COMPLAINT.

Case No. MDL No. 1715
**ACCH RFP TO FRANCIS ADAMOWICZ SET 1**

BN 1304503v1

**REQUEST NO. 84:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that the "referrals from creditors to Ameriquest of the identity of the creditors' debtors in exchange for Ameriquest's requiring such debtors/prospective borrowers to satisfy their debts to creditors is a 'thing of value' within the meaning of RESPA" such as alleged in paragraph 260 of the COMPLAINT.

**REQUEST NO. 85:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegation that "Ameriquest violated RESPA, §2607(a) and related federal regulations and interpretations by giving a fee, kickback, or thing of value in exchange for the referral of real estate services" such as alleged in paragraph 262 of the COMPLAINT.

**REQUEST NO. 86:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR First Cause of Action against ACCH such as alleged in paragraphs 234 to 244 of the COMPLAINT.

**REQUEST NO. 87:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Second Cause of Action against ACCH such as alleged in paragraphs 245 to 249 of the COMPLAINT.

**REQUEST NO. 88:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR

BN 1304503v1

Third Cause of Action against ACCH such as alleged in paragraphs 250 to 257 of the COMPLAINT.

**REQUEST NO. 89:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Fourth Cause of Action against ACCH such as alleged in paragraphs 258 to 264 of the COMPLAINT.

**REQUEST NO. 90:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Fifth Cause of Action against ACCH such as alleged in paragraphs 265 to 267 of the COMPLAINT.

**REQUEST NO. 91:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Sixth Cause of Action against ACCH such as alleged in paragraphs 268 to 280 of the COMPLAINT.

**REQUEST NO. 92:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Seventh Cause of Action against ACCH such as alleged in paragraphs 281 to 285 of the COMPLAINT.

**REQUEST NO. 93:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR

Case No. MDL No. 1715
ACCH RFP TO FRANCIS ADAMOWICZ SET 1

BN 1304503v1

Eight Cause of Action against ACCH such as alleged in paragraphs 286 to 292 of the COMPLAINT.

**REQUEST NO. 94:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Ninth Cause of Action against ACCH such as alleged in paragraphs 293 to 296 of the COMPLAINT.

**REQUEST NO. 95:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Tenth Cause of Action against ACCH such as alleged in paragraphs 297 to 301 of the COMPLAINT.

**REQUEST NO. 96:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Eleventh Cause of Action against ACCH such as alleged in paragraphs 302 to 310 of the COMPLAINT.

**REQUEST NO. 97:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Twelve Cause of Action against ACCH such as alleged in paragraphs 311 to 320 of the COMPLAINT.

**REQUEST NO. 98:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR

Case No. MDL No. 1715
**ACCH RFP TO FRANCIS ADAMOWICZ SET 1**

Thirteenth Cause of Action against ACCH such as alleged in paragraphs 321 to 326 of the COMPLAINT.

**REQUEST NO. 99:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Fourteenth Cause of Action against ACCH such as alleged in paragraphs 327 to 358 of the COMPLAINT.

**REQUEST NO. 100:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Fifteenth Cause of Action against ACCH such as alleged in paragraphs 359 to 364 of the COMPLAINT.

**REQUEST NO. 101:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Sixteenth Cause of Action against ACCH such as alleged in paragraphs 365 to 371 of the COMPLAINT.

**REQUEST NO. 102:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Seventeenth Cause of Action against ACCH such as alleged in paragraphs 372 to 377 of the COMPLAINT.

**REQUEST NO. 103:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR

Eighteenth Cause of Action against ACCH such as alleged in paragraphs 378 to 381 of the COMPLAINT.

**REQUEST NO. 104:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Nineteenth Cause of Action against ACCH such as alleged in paragraphs 382 to 384 of the COMPLAINT.

**REQUEST NO. 105:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Twentieth Cause of Action against ACCH such as alleged in paragraphs 385 to 391 of the COMPLAINT.

**REQUEST NO. 106:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Twenty First Cause of Action against ACCH such as alleged in paragraphs 392 to 392 of the COMPLAINT.

**REQUEST NO. 107:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Twenty Second Cause of Action against ACCH such as alleged in paragraphs 398 to 401 of the COMPLAINT.

**REQUEST NO. 108:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR

Twenty Third Cause of Action against ACCH such as alleged in paragraphs 402 to 409 of the COMPLAINT.

**REQUEST NO. 109:**

For YOUR contentions pertaining to acts or omissions of ACCH, other than through acts or omissions of any other DEFENDANT or other PERSON: Any and all DOCUMENTS RELATING TO or upon which YOU rely in support of YOUR allegations supporting YOUR Twenty Fourth Cause of Action against ACCH such as alleged in paragraphs 410 to 416 of the COMPLAINT.

DATED: July 18, 2007

Buchalter Nemer
A Professional Corporation

By: _____ /s/ Randall L. Manvitz _____
Randall L. Manvitz
Attorneys for Defendants
AMERIQUEST MORTGAGE COMPANY, AMC
MORTGAGE SERVICES, INC.; TOWN &
COUNTRY CREDIT CORPORATION; ACC
CAPITAL HOLDINGS CORPORATION;
TOWN & COUNTRY TITLE SERVICES, INC.;
AND AMERIQUEST MORTGAGE
SECURITIES, INC.

Randall L. Manvitz, Esq.
Buchalter Nemer,
A Professional Corporation
333 Market Street, Suite 2500
San Francisco, CA 94105

Case No. MDL No. 1715
ACCH RFP TO FRANCIS ADAMOWICZ SET 1

BN 1304503v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO: | **DEFENDANT AMERIQUEST CAPITAL CORPORATION'S FIRST SET OF INTERROGATORIES TO PLAINTIFF MARY FORREST** |
| THE CONSOLIDATED COMPLAINT FOR CLAIMS OF NON-BORROWERS | |

**PROPOUNDING PARTY: Defendant AMERIQUEST CAPITAL CORPORATION**

**RESPONDING PARTY:    Plaintiff MARY FORREST**

**SET NO.:                    ONE (1)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant AMERIQUEST CAPITAL CORPORATION ("ACC"), hereby requests that Plaintiff Mary Forrest answer all of the following Interrogatories, in writing and under oath, within thirty (30) days of the date of service hereof.

## I.
## DEFINITIONS

1.     "ACC" means Ameriquest Capital Corporation and for purposes of responding to these interrogatories, should be treated as separate and distinct from AMQ, regardless of YOUR allegations of secondary liability as alleged in paragraphs 10 and 11 of YOUR COMPLAINT.

2.     "AMQ" means Ameriquest Mortgage Company and for purposes of responding to these interrogatories, should be treated as separate and distinct from ACC, regardless of YOUR allegations of secondary liability as alleged in paragraphs 10 and 11 of YOUR COMPLAINT.

3.     "COMMUNICATIONS" means and includes correspondences, conversations and all other forms of information exchange, whether written, verbal, by telephone, electronic mail, facsimile or other mode of transmission.

4.     "COMPLAINT" means the Complaint filed by YOU in this Action, on or about December 6, 2006 titled "Consolidated Complaint For Claims of Non-Borrowers."

5.     "DEFENDANTS" means Ameriquest Mortgage Company and Ameriquest Capital Corporation, their agents, employees and all other persons acting or purporting to act on their behalf.

6.     "DOCUMENT" shall have the meaning ascribed to that term in Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, papers, writings, memoranda, contracts, agreements, books, journals, ledgers, statements, reports, bills, billings, invoices, work sheets, projections, notes, letters, correspondence, COMMUNICATIONS, abstracts, advertisements, drawings, photographs, audits, charges, balance sheets, income statements, checks, diagrams, certificates, diaries, calendars, logs, drafts, recordings, instructions, lists, minutes of meetings, orders, resolutions, recitals, telegrams, wires, cables, telexes, facsimiles, messages, telephone bills, email, instant or text messaging, resumes, summaries, tabulations, tallies, statistical analyses, magnetic and electronic media (tapes, hard disks, floppy disks, computer tapes, computer printouts, input/output computer systems, whether optical, visual or magnetic), and any other tangible things on which any handwriting, typing, printing, photostatic image, magnetic or electronic impulse, or other form of communication is recorded or reproduced, and any amendments or supplements to any of the foregoing no matter by whom prepared. The term "Document" includes originals and each copy thereof if such copy differs in any respect from the original (whether because of notes or other information appearing on such copy or otherwise).

7.     "IDENTIFY" means:

        (a)     when used in connection with a PERSON, means to provide the name, address and phone number of the individual or entity, and job title and place of employment at all times relevant to this action and from 2000 to the present date;

        (b)     when used in connection with a DOCUMENT, means to classify the DOCUMENT by date, substance and content, and to IDENTIFY all PERSONS who participated in or were present during the creation and/or maintenance of the DOCUMENT; and

(c)     when used in connection with COMMUNICATIONS, means to classify the COMMUNICATION by type (face-to-face, telephone, email, etc.), date, substance and content with specificity, and to IDENTIFY all PERSONS who participated in the COMMUNICATION.

8.     "OFFER" means the correspondence YOU allege was sent to YOU from a DEFENDANT, as attached to YOUR COMPLAINT.

9.     "PERSON" or "PERSONS" means any natural person, or any legal entity or organization including corporations, firms, joint ventures, voluntary or unincorporated associations, organizations, proprietorships, trusts, estates, governmental agencies, commissions, bureaus corporations and divisions, and any subsidiaries and departments thereof.

10.     "PROPERTY" means the real estate which was or was proposed to be security for any loan from DEFENDANTS.

11.     "PROPOSED CLASS" means proposed Sub-Class A as defined by the COMPLAINT paragraph 63.

12.     "YOU," "YOUR," and "FORREST" means Mary Forrest, her agents, employees, and all other persons acting or purporting to act on her behalf.

## II.
## INTERROGATORIES

### INTERROGATORY NO. 1:

With respect to each wrongful act or omission that YOU contend ACC committed against the PROPOSED CLASS members:

(a)     describe the wrongful act or omission in specific detail;

(b)     state all facts that support YOUR contention and that ACC did the foregoing acts or omissions other than through acts or omissions of AMQ or any other PERSON;

(c)     state the date(s) on which the wrongful act or omission occurred;

(d)     IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(e)     IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

**INTERROGATORY NO. 2:**

With respect to any contention of an alleged willful or intentional wrongful act or omission committed by ACC against the PROPOSED CLASS:

(a)     state all facts that support YOUR contention and that ACC did the foregoing acts or omissions other than through acts or omissions of AMQ or any other PERSON;

(b)     IDENTIFY all PERSONS having knowledge of the facts upon which YOU rely in support of YOUR contention(s); and

(c)     IDENTIFY all DOCUMENTS reflecting, referring to, or upon which YOU rely in support of YOUR contention(s).

**INTERROGATORY NO. 3:**

For YOUR contention that "At all times herein, Defendants, and each of them, were an agent of joint venturer of the other Defendant, and, in doing the acts alleged herein, were acting within the course and scope of such agency. Each Defendant had actual or constructive knowledge of the acts of the other Defendant, and ratified, joined in, or acquiesced, or authorized the wrongful acts of each co-Defendant, and retained the benefits of said wrongful acts" as alleged in paragraph 10 of the COMPLAINT or for any other contention of secondary liability:

(a)     state all facts that support YOUR contention, distinguishing between acts or omissions of ACC and AMQ or any other PERSON;

(b)     IDENTIFY all PERSONS who YOU believe have personal knowledge of facts that support YOUR contention; and

(c)     IDENTIFY all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 4:**

For YOUR contention that "Defendants, and each of them, aided, abetted, encouraged, and rendered substantial assistance to the other Defendant in the wrongful acts and other wrongdoings complained herein, and each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing" as alleged in paragraph 11 of the COMPLAINT or for any other contention of secondary liability:

(a)     state all facts that support YOUR contention, distinguishing between acts or omissions of ACC and AMQ or any other PERSON;

4

      (b)      IDENTIFY all PERSONS who YOU believe have personal knowledge of facts that support YOUR contention; and

      (c)      IDENTIFY all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 5:**

For YOUR contention that: "Ameriquest has a corporate policy and business practice of obtaining and using consumer reports in connection with soliciting individuals to enter credit transactions not initiated by the individuals and failing to undertake to extend the individuals firm offers of credit" as alleged in paragraph 91 of YOUR COMPLAINT:

      (a)      state all facts that support YOUR contention and that ACC did the foregoing acts or omissions other than through acts or omissions of AMQ or any other PERSON;

      (b)      IDENTIFY all PERSONS who YOU believe have personal knowledge of facts that support YOUR contention; and

      (c)      IDENTIFY all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 6:**

For YOUR contention that: "In its nationwide practice of obtaining consumer reports on individuals in connection with credit transactions not initiated by them and then refraining from making a firm offer of credit to such individuals, Ameriquest has willfully ignored the requirements of the FCRA, and has made a business decision to fail or refuse to comply with the requirements of the FCRA" as alleged in paragraph 92 of YOUR COMPLAINT:

      (a)      state all facts that support YOUR contention and that ACC did the foregoing acts or omissions other than through acts or omissions of AMQ or any other PERSON;

      (b)      IDENTIFY all PERSONS who YOU believe have personal knowledge of facts that support YOUR contention; and

      (c)      IDENTIFY all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 7:**

For YOUR contention that ACC has failed to institute reasonable procedures to ensure compliance with the permissible purpose requirements of the FCRA:

      (a)      state all facts that support YOUR contention and that ACC did the foregoing acts or omissions other than through acts or omissions of AMQ or any other PERSON;

      (b)      IDENTIFY all PERSONS who YOU believe have personal knowledge of facts that support YOUR contention; and

(c)     IDENTIFY all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 8:**

For YOUR contention that: "Ameriquest's use and acquisition of consumer reports ... is not for a permissible purpose under the FCRA" as alleged in paragraph 93 of YOUR COMPLAINT:

(a)     state all facts that support YOUR contention, distinguishing between acts or omissions of ACC and AMQ or any other PERSON;

(b)     IDENTIFY all PERSONS who YOU believe have personal knowledge of facts that support YOUR contention; and

(c)     IDENTIFY all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 9:**

For YOUR contention that: FORREST and proposed Sub-class A "have suffered damages as a result of Ameriquest's willful violation of the FCRA, including statutory damages, nominal damages, punitive damages, costs and their attorneys' fees" as alleged in paragraph 94 of YOUR COMPLAINT:

(a)     state all facts that support YOUR contention and that ACC did the foregoing acts or omissions other than through acts or omissions of AMQ or any other PERSON;

(b)     itemize any damages YOU contend are due Plaintiffs and the PROPOSED CLASS members;

(c)     IDENTIFY all PERSONS who YOU believe have personal knowledge of facts that support YOUR contention; and

(d)     IDENTIFY all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 10:**

For YOUR contention that the claims of FORREST are typical of the claims of proposed Sub-class A against ACC:

(a)     state all facts that support YOUR contention;

(b)     IDENTIFY all PERSONS who YOU believe have personal knowledge of facts that support YOUR contention; and

(c)     IDENTIFY all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 11:**

For YOUR contention that FORREST and her counsel "will fairly and adequately represent and protect the interests of each member of the Classes":

        (a)      state all facts that support YOUR contention;

        (b)      IDENTIFY all PERSONS who YOU believe have personal knowledge of facts that support YOUR contention; and

        (c)      IDENTIFY all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 12:**

IDENTIFY all COMMUNICATIONS between YOU and ACC (including any former director, officer, or employee of DEFENDANT) between January 1, 2002 and the present.

**INTERROGATORY NO. 13:**

For YOUR contention that ACC "obtained a consumer reports (sic) on [YOU] without [YOUR] knowledge or consent" as alleged in paragraph 42 of the COMPLAINT:

        (a)      state all facts that support YOUR contention and that ACC did the foregoing acts or omissions other than through acts or omissions of AMQ or any other PERSON;

        (b)      IDENTIFY all PERSONS who YOU believe have personal knowledge of facts that support YOUR contention including without limitation any experts or consultants retained by YOU or on YOUR behalf; and

        (c)      IDENTIFY all DOCUMENTS that support YOUR contention.

**INTERROGATORY NO. 14:**

When did YOU receive the OFFER?

**INTERROGATORY NO. 15:**

Did YOU respond to the OFFER?

**INTERROGATORY NO. 16:**

If YOUR answer to Interrogatory No. 15 above is in the affirmative, IDENTIFY in detail all COMMUNICATIONS that comprise or relate to YOUR response.

**INTERROGATORY NO. 17:**

Besides the OFFER attached to the COMPLAINT, IDENTIFY all similar OFFERS and/or COMMUNICATIONS YOU have received from ACC distinguishing between ACC and AMQ or any other PERSON.

**INTERROGATORY NO. 18:**

If you have ever applied for credit from ACC, identify the date and manner in which you applied for credit, and IDENTIFY all COMMUNICATIONS reflecting YOUR application, distinguishing between ACC and AMQ or any other PERSON.

**INTERROGATORY NO. 19:**

IDENTIFY all COMMUNICATIONS by which YOU complained, inquired, or were informed about an act or omission by DEFENDANTS including with any federal, state, or local governmental agency or consumer protection group or current or former employee, director, or officer of DEFENDANTS.

**INTERROGATORY NO. 20:**

IDENTIFY any and all individuals who have knowledge of any of the facts or issues involved in this lawsuit who have not already been identified in YOUR responses and state the precise nature of each such individual's knowledge.

**INTERROGATORY NO. 21:**

IDENTIFY any and all DOCUMENTS relied upon by each YOU in answering these interrogatories which have not already been identified in YOUR responses and state the precise nature of each such DOCUMENT.

**INTERROGATORY NO. 22:**

IDENTIFY all COMMUNICATIONS relied upon by YOU in support of the contentions in the COMPLAINT which have not already been identified elsewhere in YOUR responses to these interrogatories.

**INTERROGATORY NO. 23:**

State any and all facts upon which YOU rely in support of YOUR contentions in the COMPLAINT which have not already been identified elsewhere in YOUR responses to these interrogatories.

DATED: July 12, 2007

BUCHALTER NEMER
A Professional Corporation

By: _____
      RANDALL L. MANVITZ
      Attorneys for Defendants
AMERIQUEST MORTGAGE COMPANY
and AMERIQUEST CAPITAL
CORPORATION

9

BN 1296523v1

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is BUCHALTER NEMER, A Professional Corporation, 1000 Wilshire Boulevard., Suite 1500, Los Angeles, California 94105-2126.

On the date set forth below, I served the following document(s) described as:

### DEFENDANT AMERIQUEST CAPITAL CORPORATION'S FIRST SET OF INTERROGATORIES TO PLAINTIFF MARY FORREST

on all other parties and/or their attorney(s) of record to this action by faxing and/or placing a true copy thereof in a sealed envelope as follows:

Rachel Geman
Kelly M. Dermody
Caryn Becker
LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP
275 Battery Street
San Francisco, CA 94111
(415) 956-1000
*Attorneys for Plaintiffs*

☒ **BY PERSONAL DELIVERY**   On the date set forth below, I placed the above-referenced envelope or package in a box or location regularly maintained at my office for our messenger/courier service, or I delivered the envelope or package to a courier or driver authorized by our messenger/courier service to receive documents. The package was placed in a sealed envelope or package designated by our messenger/courier service with delivery fees paid or provided for, addressed to the person(s) on whom it is to be personally served at the *address(es) shown above* as last given by that person on any document filed in the cause. The messenger/courier service was provided with instructions that the envelope or package be personally served on the addressee(s) by same day delivery (C.C.P. §1011).

### PLEASE SEE ATTACHED SERVICE LIST.

1

BN1 1207416v1

☒ **BY MAIL**    I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. The *address(es) shown below* is(are) the same as shown on the envelope. The envelope was placed for deposit in the United States Postal Service at Buchalter Nemer in Los Angeles, California on the date set forth below. The envelope was sealed and placed for collection and mailing with first-class prepaid postage on this date following ordinary business practices.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on July 12, 2007, at Los Angeles, California.

Kathy Stott

2

**CERTIFICATE OF SERVICE**

BN 1297416v1

## SERVICE LIST

*In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*
*MDL Docket No. 1715*

Gary Klein
Elizabeth Ryan
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA 02111
(617) 357-5500

Terry A Smiljanich
Jill Bowman
JAMES HOYER NEWCOMER
  & SMILJANICH, P.A.
4830 W. Kennedy Blvd.
Tampa, FL 33609

Marvin A. Miller
MILLER FAUCHER & CAFFERTY LLP
30 N. LaSalle Street, Suite 3200
Chicago, IL 60602
(312) 782-4880

Samuel H. Rudman
LERACH COUGHLIN STOIA GELLAR
RUDMAN & ROBBINS LLP
200 Broadhollow Road, Suite 406
Melville, NY 11747
(631) 367-7100

Richard A Lilly
ADEMI & O'REILLY LLP
3620 E Layton Ave
Cudahy, WI 53110
(414) 482-8000

Jonathan Andrews Boynton
KIRBY NOONAN LANCE AND HOGE
One American Plaza
600 W. Broadway, Suite 1100
San Diego, CA 92101-3387
(619) 231-8666

Douglas Bowdoin
LAW OFFICE OF DOUGLAS C. BOWDOIN
255 S. Orange Ave., Suite 800
Orlando, FL 32801
(407) 422-0025

David S Markun
MARKUN ZUSMAN & COMPTON
17383 West Sunset Blvd., Suite A380
Pacific Palisades, CA 90272
(310) 454-5900

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO: | **DEFENDANT ACC CAPITAL HOLDINGS CORPORATION'S INTERROGATORIES (SET TWO) PROPOUNDED UPON PLAINTIFF GEORGE BARBER** |
| THE CONSOLIDATED COMPLAINT FOR CLAIMS OF BORROWERS | |

**PROPOUNDING PARTY: Defendant ACC CAPITAL HOLDINGS CORPORATION**

**RESPONDING PARTY:  Plaintiff GEORGE BARBER**

**SET NO.:  TWO (2)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant ACC Capital Holdings Corporation ("ACCH"), hereby requests that plaintiff George Barber ("Plaintiff") answer all of the following Interrogatories, in writing and under oath, within thirty (30) days of the date of service hereof.

## I.
## DEFINITIONS AND INSTRUCTIONS

1.     Throughout YOUR responses to these interrogatories, YOU should refer to each Defendant separately and distinctly from the other Defendants, regardless of YOUR allegations of agency, conspiracy, joint venture, or other allegation of secondary liability such as alleged in paragraphs 86 to 90 of the COMPLAINT ("Secondary Liability Doctrine").  For each interrogatory response which refers to or incorporates a Secondary Liability Doctrine allegation, state all facts supporting YOUR allegation that a certain Secondary Liability Doctrine applies in that particular instance with respect to the specified defendant.

2.     "ACCH" means ACC Capital Holdings Corporation and for purposes of responding to these interrogatories, should be treated as separate and distinct from other DEFENDANTS and PERSONS, regardless of YOUR allegations of agency, conspiracy, joint venture, or other allegation of secondary liability such as alleged in paragraphs 86 to 90 of the COMPLAINT.

3.     "COMMUNICATIONS" means and includes correspondence, conversations, and all other forms of information exchange, whether written, verbal, by telephone, electronic mail, facsimile, or other mode of transmission.

4.     "COMPLAINT" means the Complaint filed by YOU in this Action, on or about December 6, 2006 titled "Borrowers' Consolidated Class Action Complaint."

5.     "DEFENDANT" or "DEFENDANTS" means Ameriquest Mortgage Company, ACC Capital Holdings Corporation, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., Town & Country Credit Corporation, Town & Country Title Services, Inc., Argent Mortgage Co., LLC, JM Closing, and/or Jonathon Means, their employees, agents, and persons acting on their behalf. For purposes of these interrogatories, each defendant should be treated as separate and distinct from the other defendants, regardless of YOUR allegations of agency, conspiracy, joint venture, or other theory of secondary liability such as alleged in paragraphs 86 to 90 of the COMPLAINT.

6.     "DOCUMENTS" shall have the meaning ascribed to that term in Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, papers, writings, memoranda, contracts, agreements, books, journals, ledgers, statements, reports, bills, billings, invoices, work sheets, projections, notes, letters, email, instant messaging, text messaging, correspondence, COMMUNICATIONS, abstracts, advertisements, drawings, photographs, audits, charges, balance sheets, income statements, checks, diagrams, certificates, diaries, calendars, logs, drafts, recordings, instructions, lists, minutes of meetings, orders, resolutions, recitals, telegrams, wires, cables, telexes, facsimiles, messages, telephone bills, resumes, summaries, tabulations, tallies, statistical analyses, magnetic and electronic media (tapes, hard disks, floppy disks, computer tapes, computer printouts, input/output computer systems, whether optical, visual or magnetic), and any other tangible things on which any handwriting, typing, printing, photostatic image, magnetic or electronic impulse, or other form of communication is recorded or reproduced, and any amendments or supplements to any of the foregoing no matter

by whom prepared. The term "Document" includes originals and each copy thereof if such copy differs in any respect from the original (whether because of notes or other information appearing on such copy or otherwise).

      7.    "IDENTIFY" means:

      (a)    when used in connection with a PERSON, means to provide the name, email address(es), residential and business addresses and phone numbers of the individual or entity, and job title or position and place of employment at all times relevant to this action and from 2000 to the present date;

      (b)    when used in connection with a DOCUMENT, means to classify the DOCUMENT by date, substance and content, and to IDENTIFY all PERSONS who participated in or were present during the creation and/or maintenance of the DOCUMENT;

      (c)    when used in connection with COMMUNICATIONS, means to classify the COMMUNICATION by type (face-to-face, telephone, email, etc.), date, substance and content with specificity, place where the COMMUNICATION occurred and to IDENTIFY all PERSONS who participated in the COMMUNICATION.

      (d)    when used in connection with an event or facts supporting an allegation, means to (i) state all facts in detail with respect to each occurrence, (ii) IDENTIFY all PERSONS involved in the event, and (iii) state the date and place of the occurrence.

      8.    "PERSON" or "PERSONS" means any natural person, or any legal entity or organization including corporations, firms, joint ventures, voluntary or unincorporated associations, organizations, proprietorships, trusts, estates, governmental agencies, commissions, bureaus corporations and divisions, and any subsidiaries and departments thereof.

      9.    The term "PLAINTIFFS" means all named Plaintiffs in the COMPLAINT.

      10.    In lieu of IDENTIFYING a DOCUMENT, Plaintiff may produce the DOCUMENT or COMMUNICATION itself, provided that its interrogatory response specifies with particularity the DOCUMENT or COMMUNICATION(S) responsive thereto.

      11.    If a DOCUMENT once existed and has since been lost, destroyed, or is otherwise missing or unavailable, Plaintiff shall IDENTIFY the DOCUMENT and state the details concerning the unavailability of such DOCUMENT.

      12.    These interrogatories impose on Plaintiff a continuous obligation. If Plaintiff subsequently become aware of information that renders their answers to these interrogatories

Case No. MDL No. 1715
**ACCH INTERROGATORIES TO GEORGE BARBER SET 2**

incomplete or inaccurate, it is required to supplement or amend its answers promptly to make such responses complete and accurate.

13. The term "YOU" and "YOUR" means George Barber, his agents, employees and all other persons acting or purporting to act on his behalf.

## II.
## INTERROGATORIES

### INTERROGATORY NO. 1:

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "Ameriquest has engaged and is engaged in uniform unfair, unconscionable, deceptive" and "unlawful commercial practices in soliciting and closing residential mortgage transactions nationwide," misrepresenting or concealing loan terms, targeting consumers for predatory subprime home loans, inducing borrowers to enter into unfair and deceptive residential mortgages, engaging in a persistent bait and switch scheme, engaging in scare or pressure tactics, removing documents prior to the closing, routinely failing to provide required statutory disclosures including required disclosures under the Truth in Lending Act and other disclosures, providing disclosures not in compliance with statutory requirements, failing to comply with statutory protections by failing to leave with the borrowers a true copy of completed loan documents, and seeking to collect, and collecting, various fees, costs and charges that are not legally due under the mortgage contracts, such as alleged in paragraphs 3, 5, 7, 9, 11, 13, 94, 95, 96, 98, 99, 100, 101 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

### INTERROGATORY NO. 2:

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "Ameriquest's uniform and fundamental business strategy with respect to the sale of home-secured loans has been to: a. uniformly hold out to all prospective customers, through the use of misleading promotions and material omissions regarding loan terms, that refinancing and/or consolidating their debts with Ameriquest will be beneficial and will save them money when in

fact it will not; b. employ aggressive, misleading, and unfair high-pressure sales tactics to obfuscate loan terms both prior to closing and, at closing, if and when question loan terms, in order to force the customers to close the loan; c. force borrowers into mortgage loan that include one or more of the following terms: (1) a high and/or mis-disclosed adjustable interest rate; (2) a "discount" fee that does not lower the interest rate; (3) excessive closing fees; and/or (4) a prepayment penalty provision; and d. sell loans to these homeowners in amounts so high in relation to the value of their homes that the resulting debt-to-value ratio (coupled with prepayment penalties and other restrictions) effectively strips their homes of equity and prevents the borrowers from refinancing their loans with Ameriquest's competitors, often by inflating appraisal values or the borrowers' income or asset statements; and e. engage in "flipping," or aggressive solicitation of targeted borrowers, including existing Ameriquest customers, to refinance existing loans without significant benefit to the homeowner, thus generating additional debt, capitalizing previously charged points and fees, incorporating new and excessive costs and fees into the principal of the loan, and often increasing the borrower's interest rate" such as alleged in paragraphs 112 and 290 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 3:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "Ameriquest made standard misrepresentations and/or failed to provide the [Plaintiffs] with appropriate documentation and/or disclosures" such as alleged in paragraphs 123 to 129, 133 to 142, 144 to 153, and 155 to 178 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 4:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "Ameriquest has knowingly created, engaged in, and or participated in unfair practices, in violation of each state's consumer protection or deceptive trade statutes" such as alleged in paragraphs 317, 319, 323, 324, and 393 of the COMPLAINT for YOUR contentions with respect

to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 5:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "Ameriquest often encourages its customers to refinance quickly, but fails to inform those customers that discount points in the previously *[sic]* loan will be capitalized upon refinancing (so that interest is due thereon) and that a new set of discount points will be charged and that this hidden impact of refinancing is a substantial benefit to Ameriquest and a substantial cost to its refinance customers" such as alleged in paragraph 105 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 6:**

For each potential class member who YOU contend received a deficient disclosure from ACCH such as alleged in paragraph 240 (as distinguished from any other DEFENDANT or PERSON) of the COMPLAINT, IDENTIFY the PERSON, the specific alleged deficiency of the disclosure, and the date of receipt.

**INTERROGATORY NO. 7:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "Ameriquest fails to disclose prior to closing and/or intentionally obfuscates and/or conceals before and at closing the following" such as alleged in paragraph 114 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON):

(a)     "required TILA disclosures clearly and conspicuously, in a form that borrowers can understand, at or before the time the loan is consummated, in order to mislead consumers as to the true terms and costs of their loan transactions;

(b)     the high and/or adjustable interest rates charged on its loans, as well as the risks associated with adjustable rate mortgage ("ARM") loans;

(c)     the high and deceptive "discount" fees and closing fees routinely added to the loan principal;

(d)     the fact that, under 15 U.S.C. § 1635(a), 12 C.F.R. § 226.23(b)(1), borrowers have the right to rescind certain transactions up to three days following the consummation of the transaction or the delivery of the information and disclosures required by statute;

(e)     the existence of a prepayment penalty, and that such prepayment penalty would make refinancing impossible and/or highly unfavorable for the borrower;

(f)     the fact that the borrowers would have to pay, in addition to monthly loan payments, the cost of homeowners' insurance and property taxes that other lenders include in monthly escrow payments, and instead implies or allows borrowers to believe that the monthly payment will include these costs;

(g)     the fact that far from saving borrowers money (as Ameriquest systematically claims), the Ameriquest loans, increase the total amount of debt outstanding, exacerbate overall interest obligations, and place vulnerable borrowers at high risk of foreclosure;" and

(h)     that Ameriquest routinely fails to provide required disclosures to borrowers prior to closing - including, but not limited to, the HUD-1 statement, Notice of Right to Cancel, a "good faith" Good Faith Estimate, settlement process information booklet and other disclosures required under TILA."

## INTERROGATORY NO. 8:

IDENTIFY each PERSON within a proposed class who was unaware of a term(s) of the LOAN DOCUMENTS when he or she signed them and for each such PERSON, identify the term(s) and the date(s) said PERSON became aware of the term(s).

## INTERROGATORY NO. 9:

IDENTIFY any potential class member who YOU allege was confused by a Notice of Right to Cancel form regarding "the effects of recission and/or the deadline for exercising the right to cancel" on or about the time of receipt, and for each such PERSON, state their understanding regarding "the effects of recission and/or the deadline for exercising the right to cancel" at that time such as alleged in paragraph 241 of the COMPLAINT.

**INTERROGATORY NO. 10:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "the Class members whose loans were financed by Ameriquest each received a loan which, to their surprise, contained one or more of the following unfavorable terms: (a) confusing and unfair variable interest rate structure which provides only for an increase and not decrease in the borrower's interest rate; (b) a misleading charge for "discount points" or a "discount fee" often totaling thousands of dollars added to the principal of the loan, although Ameriquest provided no "discount" to the interest rate; (c) prepayment penalty that hinders borrowers from refinancing on better terms with other lenders; and (d) duplicative and excessive costs and closing fees in amounts designed to strip home equity and prevent borrowers from refinancing without incurring high costs" such as alleged in paragraph 6 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 11:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "When borrowers inquire at closing about why they are not receiving their loans on the promised terms, they are typically promised early refinancing on more favorable terms and that said promise is false, either because no refinance is made or because the available refinance is not on more favorable terms," that "When the paperwork is presented to customers for signature at closing, the terms are contrary to the terms promised. Due to the complexity of the paperwork, hurried closings, and improper disclosure procedures, borrowers are often unaware that the terms of Ameriquest further uses their borrowers' concern about loan terms in the initial transaction as an opportunity to bait the hook for a second loan, by promising an early refinancing on better terms," and that "the mortgage documents do not match Ameriquest's prior representations" and that "Ameriquest engages in scare and pressure tactics to cause customers to proceed with the transaction anyway" sometimes without reading them such as alleged in paragraphs 94, 96 and 97 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

Case No. MDL No. 1715
**ACCH INTERROGATORIES TO GEORGE BARBER SET 2**

**INTERROGATORY NO. 12:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "Ameriquest misleads the borrowers into signing loan documents without reading them as alleged in paragraph 97 of the COMPLAINT contention that customers are systematically denied any meaningful opportunity to discover that the terms on the final documents do not match the prior representations" and that "Ameriquest has a uniform practice of removing certain documents, such as those relating to the prepayment penalty, before presenting the documents to the customer for signing" and that "at closing, Ameriquest also routinely presents and compels borrowers to sign acknowledgments of events, that are inconsistent with previous oral representations, and disclosures that are otherwise not compliance with Ameriquest's legal obligations to borrowers" such as alleged in paragraphs 100 and 101 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 13:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "Ameriquest's unfair practices allow Ameriquest to profit by leaving borrowers with a three-way Hobson's choice" such as alleged in paragraph 10 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 14:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that ACCH was an "agent[] or joint venturer[] of" DEFENDANTS, or vice versa; that ACCH "in doing the acts alleged herein w[as] acting within the course and scope of such agency;" that ACCH "had actual and/or constructive knowledge of the acts of each of the other Defendants, and aided, abetted, authorized, ratified, approved, controlled the actions of all the Defendants or otherwise joined in, acquiesced in, and/or authorized the wrongful acts of each Defendant;" and/or "retained the benefits of said wrongful acts," such as alleged in paragraph paragraphs 86,

**INTERROGATORY NO. 19:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that representative Plaintiffs' "claims are typical," that Plaintiffs "will fairly and adequately represent and protect the interests of the members of the class and have retained counsel competent and experienced in class action and consumer litigation," that "common questions of law and fact exist as to all members of [classes] and predominate over any questions affecting solely individual" members, and that a "class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices" for each representative Plaintiff of each proposed class and sub-class such as alleged in paragraphs 184, 194, 195, 203, 204, 212, 213, 220, 221, and 229 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 20:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that "Any applicable statutes of limitations have been tolled" or that "Despite exercising reasonable diligence, Plaintiffs and members of the Class could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein," that "Defendants should be estopped from relying on any statutes of limitations, such and that the Defendants have been under a continuing duty to disclose the true character, nature, and quality of their loan origination and servicing practices" and that the "Defendants owed Plaintiffs and other members of the Class an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty" such as alleged in paragraph 232 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 21:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that Ameriquest failed to provide credit "on the terms initially promised" and instead, offered

Case No. MDL No. 1715
**ACCH INTERROGATORIES TO GEORGE BARBER SET 2**

"credit at less favorable terms," identifying the terms "initially promised" and "less favorable terms" for each proposed class member, such as alleged in paragraph 252 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 22:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that Ameriquest failed to provide "notices of adverse action to each of the Bait and Switch Plaintiffs" and failed to provide "adequate adverse action notices" which complied with FCRA and the failure to comply with 15 U.S.C. § 1681m(a) was "willful, or in the alternative, was negligent" such as alleged in paragraphs 254, 255, and 256 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 23:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention that the "RESPA Plaintiffs and the members of the RESPA Illegal Referral Class were subject to" the practices such as alleged in paragraph 259 of the COMPLAINT, that "the referrals from creditors to Ameriquest of the identify of the creditors' debtors in exchange for Ameriquest's requiring such debtors/prospective borrowers to satisfy their debts to creditors is a 'thing of value' within the meaning of RESPA," and that "Ameriquest violated RESPA, § 2607(a) and related federal regulations and breached the implied covenant of good faith and fair dealing," and "has engaged in unfair or deceptive acts or practices" in violation of California Civil Code §§ 1750 et seq. such as alleged in paragraphs 259, 260, 262, 295, 315, and 326 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

**INTERROGATORY NO. 24:**

IDENTIFY all facts, including all related DOCUMENTS, PERSONS having knowledge of such facts, and COMMUNICATIONS upon which YOU rely in support of YOUR contention

that "Ameriquest's practices caused damage," and "As a result, the costs of the mortgage included excessive, undisclosed, and/or illegal interest, fees and penalties," and identify the "irreparable injury" that you allege will be suffered by each Plaintiff and "Class member" ... "as a result of the DEFENDANT'S misconduct" such as alleged in paragraphs 123 to 129, 133 to 142, 144 to 153, and 155 to 178 of the COMPLAINT for YOUR contentions with respect to ACCH (other than through acts or omissions of another DEFENDANT or any other PERSON).

DATED: July 18, 2007

BUCHALTER NEMER
A Professional Corporation

By: /s/ Randall L. Manvitz
RANDALL L. MANVITZ
Attorneys for Defendants
AMERIQUEST MORTGAGE COMPANY,
AMC MORTGAGE SERVICES, INC.;
TOWN & COUNTRY CREDIT
CORPORATION; ACC CAPITAL
HOLDINGS CORPORATION; TOWN &
COUNTRY TITLE SERVICES, INC.; AND
AMERIQUEST MORTGAGE SECURITIES,
INC.

Randall L. Manvitz, Esq.
BUCHALTER NEMER,
A Professional Corporation
333 Market Street, Suite 2500
San Francisco, CA 94105

BN 1304458v1

**EXHIBIT B**



**MILLER LAW** 115 S. LaSalle Street   Suite 2910 Chicago,  Illinois 60603
LLC Tel: 312. 332.3400   Telecopier:  312.676.2676

Lori A. Fanning
Lfanning@millerlawllc.com

August 7, 2007

Randall L. Manvitz
Buchalter Nemer PC
333 Market Street
25th Floor
San Francisco, California 94105

Re:    ***In re Ameriquest Mortgage Company Mortgage Lending
Practices Litigation***, MDL No. 1715

Dear Mr. Manvitz:

Pursuant to our telephone conversation yesterday, Plaintiffs seek an extension on the due
date for their responses and objections to the requests for production, interrogatories, and
requests to admit propounded by your clients.

We begin by objecting to your having separately served identical document requests and
interrogatories upon the Borrower Plaintiffs individually on behalf of each of your clients, thus
unnecessarily complicating the discovery process.  You have served three CDs containing the
identical 106 document requests to each Borrower Plaintiff and to a number of plaintiffs in the
non-borrower class complaint; the interrogatories you refer to as "Set One" contain at least ***one
hundred and forty-one*** ("141") interrogatories – predominately contention interrogatories – to
each Borrower Plaintiff and to a number of individual plaintiffs; and requests to admit on behalf
of all of your clients.  This is unnecessarily duplicative, cumbersome, harassing, and abusive.

Equally objectionable is the convoluted manner in which you served the unreasonable
and overlapping discovery, the goal of which is obfuscation.  A most telling example of this is
the discovery served under cover letter dated July 18, 2007.  The cover letter indicates that you
are forwarding two CDs containing discovery propounded by a variety of defendants enclosed
along with a "representative sample of each of the documents."  The first "representative
sample" of this propounded discovery is "Defendant Ameriquest Mortgage Co.'s Interrogatories
(Set One) Propounded Upon Francis Adamowicz" is signed by you and dated July 18, 2007, the
cover letter indicates that you are supplying these to "replace[s] the prior sets served on July 13,
2007..." but the accompanying declaration of service improperly indicates that they were served
on July 13, 2007.  Your re-service of those discovery requests also re-started the clock, therefore
the proper date of service of that Ameriquest Mortgage Company's discovery is July 18, 2007.
Similarly, for reasons known only to you, you served what you describe as the "second set of
interrogatories" on some plaintiffs before you served the first set of interrogatories, thus making
the second set the first set and visa-versa.

We also object to the interrogatories you have served on two grounds: 1) the number far
exceeds the limit contemplated by Federal Rule of Civil Procedure 33(a); and 2) your clients
have prematurely propounded contention interrogatories.  As you are aware, the federal rules

contemplate a reasonable limit on interrogatories. "Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number *including all discrete subparts...*" Fed. R. Civ. P. 33(a), emphasis added. As noted above, just one of the sets of interrogatories you served exceeds that limit by 114 interrogatories without consideration to the additional [read first] set of interrogatories you subsequently served. Similarly, your contention interrogatories are premature. Contention interrogatories, if any, should be served after the conclusion of fact discovery. To that extent, yours are premature and we object to them.

We propose an omnibus response date of October 1, 2007 for all discovery propounded upon plaintiffs to date by Ameriquest Mortgage Company, ACC Capital Holdings Corporation, Ameriquest Mortgage Services, Inc. and Town and Country Credit Corporation. Among other things, we request an opportunity to use the additional time to confer with you about whether we can agree on a more streamlined approach to providing you discoverable information. In the event we cannot reach agreement, we reserve all appropriate objections, including the right to formally object to the interrogatories on the bases described above.

Please confirm your agreement with the requested omnibus extension by noon central time tomorrow.

Sincerely,

*/s/ Lori A. Fanning*

Lori A. Fanning

cc:
Jill Bowman
Kelly Dermody
Gary Klein
Marvin Miller
Bernard LeSage



333 MARKET STREET, 25TH FLOOR, SAN FRANCISCO, CALIFORNIA 94105-2126
TELEPHONE (415) 227-0900 / FAX (415) 227-0770

File Number: L7526-0683
Direct Dial Number: (415) 227-3644
E-Mail Address: *rmanvitz@buchalter.com*

August 8, 2007

Lori A. Fanning
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603

**Re:** ***In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation***
**MDL Docket No. 1715, Consolidated Complaint For Claims Of Borrowers**

Dear Ms. Fanning:

Your August 7 letter demands that we reach an agreement with you within 24 hours. As you know, I was taking a deposition on August 7 and today; therefore, I was not available to speak with you. I suggest a conference call with all of the parties on August 10 to discuss not only your requested extensions, but a broader discussion to attempt to resolve any objections to the outstanding discovery. As I have emphasized, we need to coordinate the timing of the discovery responses and depositions to meet the November 5 discovery deadline.

Because the Complaint does not state separate factual allegations against each defendant, but instead refers to them all as "Ameriquest," the separate corporate entities, AMQ, ACC Capital Holdings Corporation, Ameriquest Mortgage Services, Inc., and Town and Country Credit Corporation have propounded the exact same interrogatories, requesting each Borrower Plaintiff to delineate his/her factual allegations specifically related to each defendant, instead of permitting the distinction between the separate entities to remain as blurred as the Complaint makes it.

This should not be a difficult task. But, Borrower Plaintiffs seem to be avoiding specificity because it might provide a basis for dispositive motions by some or all of the defendants.

I received a phone call from you on August 6, 2007 in which you generally stated that you were requesting an extension. You did not have the specifics as to: which discovery requests were at issue; the length of the requested extension; or how that would affect the depositions scheduled from September 4 to October 11 in Chicago. I requested that you provide the specifics of your request in writing so that I could understand what you were asking for.

Further, I requested that you explain which discovery requests you contend are objectionable so that we can discuss them now instead of granting an extension only to find out that Borrower Plaintiffs continue to object. As we have repeatedly stated, we need all discovery responses in advance of the depositions so that we can explore Borrower Plaintiffs contentions.

BuchalterNemer
Lori A. Fanning
August 8, 2007
Page 2

But, that cannot be accomplished unless the parties cooperate in coordinating the discovery responses and depositions so that we can complete the discovery well in advance of the November 5 discovery cut-off.

On the next day, August 7, I received your letter explaining that you object to all interrogatories served by the aforementioned Defendants because you argue, *inter alia*: (1) the contention interrogatories cannot be propounded until the close of all fact discovery; and (2) the interrogatories exceed 25 in number. Your contention that interrogatories are premature until the close of discovery in contrary to well established law. Contention interrogatories are the proper method of determining the factual allegations immediately after a complaint is served to determine the allegations beyond the "short and plain statements" of the Complaint. *See e.g.*, *Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006) ("If the defendants need more information concerning the plaintiff's claim, they can serve a contention interrogatory on the plaintiff"); *Shah v. Inter-Continental Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) ("True, the defendant might be quite unsure what statute, state or federal, or common law principle the conduct alleged in the complaint might violate, but he could smoke out the plaintiff's theory of the case by serving a contention interrogatory on him."); *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 915 (7th Cir. 1985) ("The defendants' proper response is not to move to dismiss but to serve contention interrogatories requiring the plaintiff to particularize his theory of suit."). In any event, the discovery cut-off is fast approaching. As to the additional interrogatories, given the breadth of the allegations, 50 interrogatories is more than reasonable.

We are concerned that, although you request an extension to October 1, 2007 for the interrogatories propounded on July 13, 2007, you currently do not intend to answer them even with additional time. Instead, you propose providing an "omnibus" response, which would again blur the distinction between the corporate defendants and the separate allegations of each of the Borrower Plaintiffs.

In addition, you request an extension to October 1, 2007 for the Requests for Production that have been outstanding since July 13, 2007. You also request an extension to October 1, 2007 regarding Requests for Admission.[1] Again, we must have responses in advance of the September depositions in Chicago.

With respect to the 80-plus September depositions, the Borrower Class Plaintiffs are ignoring my repeated requests to coordinate them. Except for a request to have four depositions in the Bay area, we have heard virtually nothing about deposition scheduling. Because the depositions cannot go forward until the Borrowers respond to the written discovery and produce responsive documents, October 1 cannot be the new deadline because the depositions would have to be continued to mid-October, leaving about three weeks before the November 5 deadline to take 80-plus depositions, which would be an unreasonable task.

---

[1] To date, Requests for Admission have only been propounded upon two Borrower Plaintiffs requesting information specific to two of Roddy Klein's clients regarding their request to stay foreclosure proceedings.

BN 1334290v1

BuchalterNemer
Lori A. Fanning
August 8, 2007
Page 3

We look forward to hearing from you, hopefully with an available time for a conference call.

Very truly yours,

BUCHALTER NEMER
A Professional Corporation

By

Randall L. Manvitz



**MILLER LAW** LLC
115 S. LaSalle Street    Suite 2910 Chicago,  Illinois 60603
Tel: 312. 332.3400    Telecopier:  312.676.2676

Lori A. Fanning
Lfanning@millerlawllc.com

August 9, 2007

Randall L. Manvitz
Buchalter Nemer PC
333 Market Street
25th Floor
San Francisco, California 94105

> Re:    ***In re Ameriquest Mortgage Company Mortgage Lending
> Practices Litigation***, **MDL No. 1715**

Dear Mr. Manvitz:

Thank you for your response received late last night. While I am reluctant to take the time to do so, I must correct some of your statements in that letter. Until 2:55 p.m. central time yesterday when I received your terse acknowledgement of my letter – addressed, incidentally, to Jill [Bowman] – I was unaware that you were in a deposition. When we spoke on the 6th you merely mentioned that you were busy preparing for a deposition. I had no further information on the topic. Perhaps it would have been prudent for you to direct my inquiry to one of the numerous other attorneys in your firm. Furthermore, our memories of our August 6, 2007 telephone call could not be more different. I was fully prepared during that conversation to discuss the specifics about discovery. You were distracted by your deposition preparation and instead of continuing the conversation you requested that I send you a letter so you would "have something in writing."

I refuse to respond to your characterizations about the allegations in the complaint and your inappropriate comments about the motives of the Borrower Plaintiffs.

As there is no requirement under the federal rules that I explain our formal discovery objections in advance of their due date, I decline to do so. Unless you are offering to revise and re-serve your discovery requests that exercise serves no purpose. I do, however, direct you generally to my letter of August 7, 2007.

You are attempting to place the burden on the plaintiffs for your lack of diligence in serving your discovery. The discovery stay was lifted in the MDL by Judge Aspen on December 20, 2006. You began serving discovery last month. It is not unprecedented in complex litigation for a party to seek a short extension to respond to discovery. This is more so in this case in light of the literally thousands of requests you served within the last 2-3 weeks. Your position is simply unreasonable, particularly in light of the number of extensions defendants have sought

Randall L. Manvitz
August 9, 2007
Page 2

and received from plaintiffs. Your insistence on Plaintiffs' responses to discovery in a truncated time-frame when you have failed to produce all the documents and witnesses responsive to discovery served in December, 2006 and 30(b)(6) notices served in February, 2007 is imbalanced. Under separate correspondence, Plaintiffs will expressly address the deposition schedule and identify documents we know – through corporate-designee depositions – that you have failed to produce.

Your suggestion regarding a conference call on the issue is welcome. But I regret to say your timing demonstrates a lack of good faith. I need not remind you that responses and objections to the discovery you served on Adolf Burggraff are due today. I simply ask for the professional courtesy of a brief extension on responses and objections to the onerous and burdensome discovery you served – in most instances – less than a month ago.

Given defendants failure to timely produce documents and witnesses, your unreasonable insistence that discovery in this case will be closed in November and your adherence to arguments based on that deadline are unavailing. We welcome a continued dialogue on discovery, but given the tenor of your letter and your stubborn adherence to unreasonable positions we will be seeking relief from the court today.

Sincerely,

/s/ Lori A. Fanning

Lori A. Fanning

cc:     Jill Bowman
        Kelly Dermody
        Gary Klein
        Marvin Miller
        Bernard LeSage

**EXHIBIT C**



**BuchalterNemer**
A Professional Law Corporation

333 MARKET STREET, 25TH FLOOR, SAN FRANCISCO, CALIFORNIA 94105-2126
TELEPHONE (415) 227-0900 / FAX (415) 227-0770

File Number: L7526-0683
Direct Dial Number: (415) 227-3644
E-Mail Address: *rmanvitz@buchalter.com*

August 29, 2007

Re: *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*
**MDL Docket No. 1715, Consolidated Complaint For Claims Of Borrowers
and Non-Borrowers**

To Borrower and Non-Borrower Class Counsel:

This will confirm that the entities represented by Buchalter Nemer (hereinafter "AMQ") have acquiesced in the Borrower and Non-Borrowers Class Plaintiffs request for a one-time extension for all discovery responses to October 1, 2007 as a result of the Court extending the November 2007 discovery cutoff to March 2008. We understand this to be the amount of time that Plaintiffs need to substantively and fully respond to all outstanding discovery.

This will also confirm AMQ's expectations concerning the outstanding discovery it currently believes will be necessary to be completed no later than February 1, 2008, although if at all feasible, we would like to complete the discovery on a more expedited basis.

**I.      Non-Borrower Class Plaintiffs Discovery:**

Plaintiffs have not stated any objection to these interrogatories or requests for production, propounded to the four proposed class representatives. We should receive full and complete responses, without significant objections. To expedite discovery, we request your responses as soon as you are able, instead of waiting until the October 1, 2007 deadline. I would not expect that to be a problem as these requests were not mentioned as the cause of your requested extension. Once we have complete responses, we will take the depositions of the four proposed class representatives in Chicago, which should be completed in October.

If there are objections to this discovery, please provide them soon so that the parties can attempt to resolve them sufficiently in advance of the October deadline so as to not hold-up discovery.

**II.      Borrower Class Plaintiffs Discovery:**

**A.      First Set of Interrogatories** – These require Plaintiffs to explain their individual claims and factual background along with relevant documents and the identification of persons with knowledge. While we understand that Plaintiffs' counsel is having problems contacting some representative plaintiffs, given the length of time to respond, that issue should be

BuchalterNemer
August 29, 2007
Page 2

alleviated. This is basic discovery, much of which is often provided in a Rule 26(a) pretrial disclosure, and Defendants must be able to discover the particular assertions of wrongdoing by each of the 87 plaintiffs.

Further, Plaintiffs' objection to four separate entities serving the exact same sets of interrogatories is not well-founded. Instead of making specific allegations against any particular defendant, the Complaint refers to all of the separate entities as "Ameriquest" regardless of the type of business performed by each particular Defendant. See Borrower Class Complaint paras. 2, 83. Thus, it is impossible to tell what allegations are being made against any particular defendant.

Specifying your allegations with respect to each corporate defendant should be little or no extra work. Most, if not all of your responses for the various defendants will be "none," especially because your clients did not have any contact with many of the corporate entities. Regardless, each defendant has a right to discover the claims and allegations particular to it. We realize that separating out the defendants so that they each served their own interrogatories compounds the number of total interrogatories by a multiplier of four. Likewise, having each Borrower Plaintiff explain his or her own allegations multiplies the number of interrogatories by 87. However, that is entirely reasonable under the circumstances and does not equate to an unduly burdensome amount of work, especially given the length of time that you have to respond and the importance of the issues.

**B.    Second Set of Interrogatories** – This set of interrogatories merely references the allegations in the Borrower Class Complaint and requests all facts and documents supporting the allegations and the identification of persons with knowledge of the same. The identification of documents and persons with knowledge would typically be provided as a matter of course in a Rule 26(a) disclosure.

To alleviate the need for each of the 87 Borrower Class Plaintiffs to file separate responses, because we understand the response will be uniform for this set of interrogatories, it is acceptable that they all file one response to each set propounded by each defendant, verified by all plaintiffs, which would be a total of four responses. Again, because of the lack of allegations against three of the four entities, almost all of the responses will be "none."

Now that Plaintiffs have all of the additional time they wanted to respond, we expect to receive complete and comprehensive responses specifying the facts which you contend support your allegations and that you will no longer rely on an argument that the interrogatories are premature or are unduly burdensome. However, if the objections remain, please let me know so that we can attempt to meet and confer regarding the objections to determine if there is some middle ground.

**C.    Requests for Production of Documents**

In light of the generous extension, we expect to receive responses and a complete production of all requested documents on a timely basis.

BuchalterNemer
August 29, 2007
Page 3

**D. Requests for Admission**

In addition to the Requests for Admission propounded upon two particular Borrower Plaintiffs, we expect additional requests for admission to be propounded on all plaintiffs in September and following the depositions.

**E. Depositions of Borrower Plaintiffs**

We expect to begin depositions immediately after receiving adequate responses to all discovery so that we can complete them by February 1, 2008. Late October through December should be set aside as the most likely months for depositions. We will notice all depositions for Chicago, and as an accommodation for any deponent who finds Chicago to be inconvenient, will set aside a period of time in Los Angeles and New York as satellite offices. Likewise, we are more than willing to coordinate scheduling for the convenience of the deponents and counsel, as long as the deposition arrangements can be handled in an orderly fashion during a particular period of time and be completed on a timely basis.

Depositions of the four to six Borrower Plaintiffs who appear to be making claims against Argent were previously scheduled by the Winston and Strawn firm. Our understanding is that you will be scheduling those depositions on a more expedited timetable directly with counsel for Argent.

While AMQ has granted an extension to October 1, 2007, undoubtedly, responses to some of the discovery requests could be completed well in advance of that date. Accordingly, to facilitate deposition preparation and to advance the progress of discovery, we request that you provide responses to Defendants' discovery requests on a rolling basis as they are completed. To the extent that you are unable to provide substantive responses soon, we request that Plaintiffs provide their objections by September 13, 2007 so that we can attempt to resolve them before the October 1 deadline. We further request a conference on September 18 at 1:00 p.m. PST to attempt to work through any objections. To facilitate those discussions, we request that Plaintiffs designate a point person to confer regarding any remaining objections you may have and to coordinate deposition scheduling.

We look forward to hearing from you in this regard.

Very truly yours,

BUCHALTER NEMER
A Professional Corporation

By _____

Randall L. Manvitz

BN 1359681v1

**EXHIBIT D**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Judge Marvin E. Aspen |
| | Magistrate Judge Morton Denlow |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## DEFENDANTS'[1] STATUS REPORT

### I. INTRODUCTION

This Status Report informs the Court of the continued progress and cooperation of the parties in this Multidistrict Litigation Proceeding ("Proceeding") and is hereby submitted in advance of the August 16, 2007 status conference before Magistrate Judge Denlow.

### II. CASE STATUS AND PENDING MATTERS

#### A. The Parties Have Stipulated to a 120-Day Discovery Cut-Off Extension

The parties have requested and stipulated to a 120-day extension of the discovery cut-off in this Proceeding. [Docket No. 1008.] If the Court grants this stipulated discovery cut-off, as requested by all parties, Defendants are confident that the parties will work together to resolve all pending discovery issues without the need of court intervention, as the parties have done so with all discovery issues to date. The stipulated extension of time will be particularly helpful with

---

[1] "Defendants" collectively refers to Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.

1

regard to out-of-court resolution of issues surrounding Plaintiffs' requests for all of Defendants' financial records, which will be relevant only if Plaintiffs' proposed amended complaint is allowed by Judge Aspen. Defendants request that the Court refrain from providing guidance on discovery issues until the parties' meet-and-confer process has been completed, and the issues are properly presented to the Court for the Court's informed consideration.

**B.    Defendants Join Plaintiffs in Requesting That the Court Approve the Following Matters**

Defendants join Plaintiffs in requesting that the Court to approve the Stipulated Briefing Schedule filed July 17, 2007. [Docket No. 896.]

Defendants join Plaintiffs in requesting that the Court to allow Plaintiffs to file their Opposition to Defendants' Motion for Protective Order Regarding the Deposition of Dawn Arnall [Docket No. 1004] within the time allowed by Judge Aspen's November 7, 2006 Case Management Order [Docket No. 284].

Defendants join Plaintiffs in requesting that the Court approve the Proposed Stipulation Regarding Amended Scheduling Order. [Docket No. 1008.]

Respectfully submitted,

DATED: August 14, 2007

By: /s/  Bernard E. LeSage

*Attorneys for Defendants Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

## CERTIFICATE OF SERVICE

I, Bernard E, Lesage, hereby certify that on this 14th day of August 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Bernard E. LeSage _____

**EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | (Centralized before the Honorable Marvin E. Aspen) |
| | Magistrate Judge Morton Denlow |

**BORROWER AND NON-BORROWER PLAINTIFFS' JOINT STATUS REPORT**

Lead Class Counsel for the Borrower and Non-Borrower classes ("Plaintiffs") jointly submit the following status report as a supplement to their previously submitted status report dated June 5, 2007 [Docket No. 813] in advance of the August 16, 2007 status conference before Magistrate Judge Denlow.

**I.     CASE STATUS**

On June 7, 2007, Magistrate Judge Denlow conducted a status conference during which he heard the parties' positions relating to various procedural and discovery related issues. The following matters were resolved at the status conference or shortly thereafter:

A.     Stipulation Regarding Service Of Deposition Notices [Docket No. 807].

Magistrate Judge Denlow entered the parties' Stipulation relating to electronic service of deposition notices. [Docket No. 822].

B.     Motion For Additional Case Management Guidelines [Docket No. 696].

On June 25, 2007, Judge Aspen entered an order allowing the parties to waive the Local Rule 5.3(b) presentment requirement and denying Plaintiffs' request that the Court order

Defendants to produce a master MDL Case List. The parties' request for a bifurcated docket remains under advisement. [Docket No. 843].

> C. <u>Defendant Roland Arnall's Motion To Postpone Certain Depositions [Docket No. 934].</u>

On August 1, 2007, Magistrate Judge Denlow held a motion hearing and denied Mr. Arnall's motion without prejudice to Mr. Arnall's opportunity to seek discovery in the event he remains a defendant in this case.

> D. <u>Motion For Leave To File Declaration Of Marvin A. Miller And Exhibits As A Restricted Document [Docket No. 947].</u>

At the August 1, 2007 motion hearing, Magistrate Judge Denlow granted this motion upon stipulation by the parties. Plaintiffs filed this motion in an abundance of caution in light of the parties' Protective Order and the time constraints associated with filing their response to Mr. Arnall's Motion To Postpone Certain Depositions. However, in so stipulating, Plaintiffs do not concede that everything contained in the Miller Declaration is confidential and reserve the right to seek Court intervention on confidentiality disputes as they may arise.

> E. <u>Motion To Compel Compliance With Agreements To Stay Foreclosure [Docket No. 911].</u>

Plaintiffs withdrew this motion upon learning that the foreclosure sale on the borrower's property was cancelled. [Docket No. 919]. The parties are working to resolve another issue involving a foreclosure sale of a borrower's property. Absent resolution, Plaintiffs may request emergency injunctive relief.

## II. PENDING MATTERS

The following motions and stipulations are presently pending:

> A. <u>Plaintiffs' Motion For Leave To File First Amended Class Action Complaint [Docket No. 835].</u>

2

On June 18, 2007, Plaintiffs Filed A Motion For Leave To File First Amended Complaint. The purpose of this motion is to join Roland Arnall as a defendant in this action. This motion remains pending and the parties have stipulated to a briefing schedule on this and other related motions described in paragraph B below.

     B.     <u>Stipulated Briefing Schedule [Docket No. 896].</u>

The parties entered into a Stipulated Briefing Schedule for this motion and other motions related to the First Amended Class Action Complaint. [Docket No. 896]. In addition to the briefing schedule, the Stipulation provides for an omnibus hearing date on the Motion to Amend and all other pleading motions. Mr. Arnall agrees to waive service of the First Amended Complaint and that any applicable statutes of limitation or statutes of repose applicable to him and that have not yet run as of July 18, 2007 are tolled from July 18, 2007 until the Court issues a ruling on the Motion to Amend or related motions that relate to the proposed joinder of Mr. Arnall.

Plaintiffs request that the Court enter the parties' proposed draft minute order attached to the Stipulation.

     C.     <u>Defendants' Motion For Protective Order Regarding The Deposition Of Dawn Arnall [Docket No. 1004].</u>

Plaintiffs noticed the deposition of Dawn Arnall on June 14, 2007. Ms. Arnall is the Co-Chairman of the Board and Secretary of Ameriquest Capital Corporation. The parties conducted several Rule 37 conferences in an attempt to resolve this issue. Before filing its motion, Defendants proposed that Plaintiffs utilize what they consider to be less intrusive methods of discovery in lieu of taking Ms. Arnall's deposition, such as taking the depositions of other witnesses, written discovery, or sworn declarations. Plaintiffs declined, but instead offered to conduct the deposition of Ms. Arnall at a time and place that is convenient for her. Otherwise,

Plaintiffs' position is that they are entitled to depose Ms. Arnall, and will file their opposition to Defendants' Motion For Protective Order within the time allowed by the Case Management Order.

      D.     Proposed Stipulation Regarding Amended Scheduling Order [Docket No. 1008].

After two recent Rule 37 conferences, on August 10, 2007 and August 13, 2007, the parties reached a *Proposed Stipulation For An Amended Scheduling Order*, which proposes extensions of deadlines contained in Judge Aspen's November 7, 2006 Case Management Order [Docket No. 284], by 120 days. Plaintiffs request the Court enter the proposed Stipulation.

**III.    DISCOVERY**

      A.     Production Of Documents:

Although Defendants have begun producing required documents, Plaintiffs are still awaiting the production of a substantial number of additional documents. The parties have held numerous Rule 37 conferences and have outlined their positions on document production. The Defendants agreed to use their best efforts to promptly finish all document production and agreed to provide Plaintiffs with a privilege log within the next two weeks. The Defendants have also agreed to produce the last known addresses of former Ameriquest employees requested by the Plaintiffs. In addition, the Defendants have agreed to Plaintiffs' request to extend Plaintiffs' deadline for all written and document discovery to October 1, 2007. The parties will attempt to work out Plaintiffs' objections to issues, including but not limited to the number of requests served.

While the parties continue to collaborate on document production issues, they are unable to reach an agreement relating to the Plaintiffs' request for production of all of the Ameriquest

4

entities' financial statements beginning in 1999 to the present. Plaintiffs request guidance from the Court on this issue at the August 16, 2007 status conference.

      B.    <u>Depositions:</u>

In July, Plaintiffs began taking depositions pursuant to Fed. R. Civ. P. 30(b)(6). The parties have agreed to two additional weeks (August 27-31 and September 10-14) within which to continue Plaintiffs' 30(b)(6) depositions. The Defendants have provided a list of additional 30(b)(6) witnesses.

The parties are also in the process of discussing alternative locations for Defendants' noticed depositions – which were sent to all named Plaintiffs and set for Chicago – as it would be needlessly and unfairly burdensome to Plaintiffs of limited financial means who were generally transferred to the MDL from venues outside Illinois.

      C.    <u>Rule 37 Conferences:</u>

Plaintiffs and Defendants have engaged in and continue to engage in Rule 37 discovery conferences since Magistrate Judge Denlow's June 7, 2007 status conference to meet and confer in good faith to resolve discovery issues that have arisen during the discovery process. In particular, Plaintiffs and Defendants have conducted Rule 37 conferences relating to document production and deadlines and deposition scheduling. The parties have a planned Rule 37 conference scheduled for Wednesday, August 15, 2007, to attempt to narrow pending disputes in advance of the status conference. The parties also intend to hold a Rule 37 conference to address Plaintiffs' concerns about the scope, timing, and nature of Defendants' discovery requests.

Respectfully submitted,


/s/ Kelly M. Dermody
    Kelly M. Dermody

Kelly M. Dermody (CA Bar No. 171716)
Caryn Becker (CA Bar No. 196947)
LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

/s/ Gary Klein
    Gary Klein

Gary Klein
Elizabeth Ryan
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA 02111-2810
Telephone: (617) 357-5500 ext. 15
Facsimile: (617) 357-5030


/s/ Jill Bowman
    Jill Bowman

Jill Bowman
JAMES, HOYER, NEWCOMBER
  & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL 33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

*Plaintiffs' Co-Lead Counsel*

/s/ Marvin A. Miller
    Marvin A. Miller

Marvin A. Miller
MILLER LAW LLC
101 North Wacker Drive, Ste. 2010
Chicago, IL 60606
Telephone: (312) 525-8316
Facsimile: (312) 525-8231

*Plaintiffs' Liaison Counsel*

Dated: August 14, 2007

6

CERTIFICATE OF SERVICE

I, Gary Klein, hereby certify that on this 14th day of August, 2007, the foregoing document was filed electronically. Notice of filing was sent to all Filing Users by the Court's ECF system. Filing users may access this document electronically through the Court's ECF system.

/s/ Gary Klein
Gary Klein

7

**EXHIBIT F**

**Manvitz, Randall L.**

| | |
|---|---|
| ᴊm: | Geman, Rachel [rgeman@lchb.com] |
| **Sent:** | Thursday, August 30, 2007 12:38 PM |
| **To:** | Manvitz, Randall L.; klein@roddykleinryan.com; Dermody, Kelly M.; MMiller@millerlawllc.com; jbowman@jameshoyer.com; kavanagh@roddykleinryan.com |
| **Cc:** | asalpeter@llgm.com; vschmeltz@llgm.com; Miarecki, Greg; Sommerhalter, Stephen; Davies, Joanne; Ziegler, Jay; Wiegand, Thomas; LeSage, Bernard |
| **Subject:** | Ameriquest MDL: Discovery Scheduling |

Dear Randall: We write in response to your August 29, 2007 letter. We recognize that you were not a participant in certain of the relevant meet-and-confers, but regardless of whether you were aware of the relevant background agreements, virtually all of your characterizations
about past agreements are incorrect.

First, there was never any agreement that the extension to October 1, 2007 was a "one-time extension." In addition, your requests throughout the letter for us to respond before October 1, whether denominated as a "rolling basis" production or otherwise, are still a form of suggesting that the October 1 agreement does not hold. But it does. For this reason, your proposed call on September 18 would be a poor use of the parties' time, as there will be nothing to discuss at that time on this subject.

Second, with respect to non-borrower class plaintiff discovery, as agreed no depositions will occur until after January 1, 2008, and not in October as you suggest. Your statement that we have not objected to the discovery is also incorrect, as all discovery responses are presently due on October 1st and we have not waived any rights to object at that time.

Third, we have not agreed to answer premature contention interrogatories, or respond to ᴉs of thousands of interrogatories.
ᴇ recognize that you propose one set of responses for all plaintiffs, which addresses one but not all of the issues with the interrogatories.) We simply agreed to provide a written response to the discovery on October 1, 2007.

We appreciate there is a lot of paper in this case, but propose that you please revisit Gary Klein's comprehensive August 23 email, which addresses many or most of these issues, and to which defendants interposed no response (except for Mr. Wiegand).

Finally, as you know, defendants were slated to produce documents and privilege logs yesterday, and we have not received them. In addition, the last known addresses of former employees are about a week overdue.
Other documents identified in Shennan Kavanagh's letter and Jill Bowman's e-mails to Steve Sommerhalter are also outstanding.

We look forward to receiving those documents, and thank you in advance for your prompt attention. Please let us know if you have any questions.

Sincerely,  Rachel

Rachel Geman, Esq.

Lieff, Cabraser, Heimann & Bernstein, LLP

780 Third Avenue, 48th Fl.

New York, NY 10017

tel.: 212.355.9500, ext. 6608

ᴋ: 212.355.9592

rgeman@lchb.com

1

---Original Message-----
.rom: Manvitz, Randall L. [mailto:rmanvitz@buchalter.com]
Sent: Thursday, August 30, 2007 12:23 AM
To: klein@roddykleinryan.com; Dermody, Kelly M.; MMiller@millerlawllc.com;
jbowman@jameshoyer.com; Geman, Rachel; kavanagh@roddykleinryan.com
Cc: asalpeter@llgm.com; vschmeltz@llgm.com; Miarecki, Greg; Sommerhalter, Stephen; Davies,
Joanne; Ziegler, Jay; Wiegand, Thomas; LeSage, Bernard
Subject: MDL: Discovery Scheduling

Please see attached letter.


Notice To Recipient: This e-mail is meant for only the intended recipient of the
transmission, and may be a communication privileged by law.  If you received this e-mail
in error, any review, use, dissemination, distribution, or copying of this e-mail is
strictly prohibited.  Please notify us immediately of the error by return e-mail and
please delete this message and any and all duplicates of this message from your system.
Thank you in advance for your cooperation.
For additional policies governing this e-mail, please see
http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=15
1&Itemid=129

IRS Circular 230 Disclosure:  In order to comply with requirements imposed by the Internal
Revenue Service, we inform you that any U.S. tax advice contained in this communication
(including any attachments) is not intended to be used, and cannot be used, for the
purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting,
marketing, or recommending to another party any transaction or matter addressed herein.