## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| _____ | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | (Centralized before the Honorable Marvin E. Aspen) |

## MEMORANDUM IN SUPPORT OF BORROWER AND NON-BORROWER PLAINTIFFS' MOTION FOR ENTRY OF A DOCUMENT PRESERVATION ORDER

### I.        INTRODUCTION

Borrower and Non-Borrower Plaintiffs, ("Plaintiffs") seek a court order requiring the Defendants,[1] to preserve 12 categories of documents that are material and relevant to the issues raised in this MDL proceeding.[2] Plaintiffs also request that this Court order the Defendants to implement notice to its employees overriding its existing document preservation policy.

Ameriquest 30(b)(6) witnesses testified in depositions that Ameriquest has shut down systems containing documents relevant to this case and that certain relevant documents may no longer exist. According to deposition testimony, Ameriquest has also discontinued some of its departments, including its quality assurance department that was charged with conducting

---

[1] Plaintiffs seek an order requiring all the Defendants, including Argent, to preserve documents. As Argent is transferring its business to Citigroup, the potential for lost or destroyed documents applies equally to Argent.

[2] By electronic mail dated September 11, 2007, counsel for Plaintiffs asked counsel for the Defendants to agree to a proposed order similar to the one attached to Plaintiffs' Motion For Entry Of A Document Preservation Order as Exhibit A, or to provide alternative language for the order. Defendants refused to do so. Plaintiffs have now clarified some of the ambiguities the Defendants claimed were contained in the initially proposed order.

compliance audits. A recent news article stated that Ameriquest has closed its business, and that

Citigroup, Inc. ("Citigroup") agreed to buy the wholesale mortgage lending and payment

collection assets of Ameriquest's parent, ACC Capital Holdings.[3] Despite requests from

Plaintiffs' Counsel, the Defendants refused to provide any information as to whether it has

implemented document preservation schemes to protect relevant documents during the Citigroup

transfer process.

While the Court denied Plaintiffs' previous motion for document preservation [Docket

No. 342],[4] the context in which Plaintiffs make this request is comparatively more urgent and

compelling, because new evidence indicates that systems containing documents relevant to

claims at the heart of this case are being shut down and some critical documents may already be

lost or destroyed. The main purpose of the preservation order is to ensure that the relevant

categories of documents are preserved while the Court works through the parties' many

discovery disputes.  Absent an order requiring the Defendants to implement a document

preservation scheme under these circumstances, Plaintiffs will suffer irreparable harm and their

ability to establish their cases may be severely inhibited.

## II.      STATEMENT OF FACTS

Michael Gibson, Senior Vice President of Business Controls at Ameriquest, testified in

deposition that Ameriquest has recently removed relevant documents from its systems, has shut

down certain systems containing relevant documents altogether, and has discontinued entire

---

[3] Inquires to Argent's website, www.argentmortgage.com, get automatically re-directed to
www.citirl.com, Citi Residential Lendings, website.

[4] On September 15, 2006, Plaintiffs' requested that this Court enter a document preservation
order on the grounds that the then discovery stay, coupled with Ameriquest's 2006 branch office
closings, made it likely that documents would be inadvertently lost or destroyed. [Docket No.
236]. The Court denied this request based on its lifting of the discovery stay. [Docket No. 342].

departments, such as its quality assurance department. [Deposition of Michael Gibson, Vol. III, p. 54, lines 18-22, p. 56, lines 11-25, p. 57, 1-9 (System containing compliance audits has been shut down.)].

Ameriquest's auditing system, Cogent, contained data from audits of Ameriquest's branches for quality assurance purposes. [Gibson Depo., Vol. III, p. 54, lines 11-22]. Ameriquest's quality assurance department managed the Cogent system, as well as a database system used to generate audit reports from Cogent. [Gibson Depo., Vol. III, p. 55, lines 3-6]. Since the commencement of this case, Ameriquest shut down the Cogent system and it is no longer possible to move the information contained in Cogent to the database system used for generating audit reports. [Gibson Depo., Vol. III, p. 56, lines 11-25].

The Vice President of the Office of the President at AMC, Grace Shultz, testified that files containing information relating to borrower inquiries may no longer exist. [Deposition of Grace Shultz, Vol. I, p. 21, lines 13-25; p. 22, lines 1-17]; *See also*, [Shultz Depo., p. 36, 9-25, p. 37, lines 9-19 (does not believe that excel spreadsheets logging borrowers' written inquiries that were maintained by the Office of the President still exist because the supervisor who maintained these records is no longer with the company)]; [Shultz Depo., p. 41, lines 1-9 (believes that paper files containing borrower inquiries may have been shredded)]; [Shultz Depo., p. 42, lines 1-22 (inquiries from the Better Business Bureau no longer exist because there was no obligation to maintain them after a certain period of time)].

Ameriquest has been in the process of shutting down its operations, and ultimately closed. [Deposition of Gregory Bartz, p. 37, lines 9-11 (Its "fair to say" that Ameriquest Mortgage Company is a much smaller company now than it was a year ago)]; [Deposition of Lori Grigg, p. 151, lines 16-18, p. 153, lines 6-11 (There has been a big decrease in the number

3

of employees at Ameriquest, from between 7,000 and 8,000 at its peak down to 10 employees)].

Jonathan Stempel, *Ameriquest Closes, Citigroup Buys Mortgage Assets*, Reuters, Aug. 31, 2007,[5]

(Ameriquest has closed and is transferring some or all of its business to Citigroup).

### III.   LEGAL STANDARD

Courts consider three factors in determining whether to enter document preservation

order: (1) whether Plaintiffs can demonstrate that Defendants will destroy necessary information

absent a preservation order; (2) whether Plaintiffs will suffer irreparable harm absent a

preservation order; and (3) the burden imposed on the parties by granting a preservation order. *In

re: African-American Slave Descendants' Litigation,* 2003 WL 24085346, at *2 (N.D. Ill. 2003).

"The court has broad discretion in determining whether to enter a preservation order." *Id.*

Courts routinely enter preservation orders to enforce the duty to preserve relevant documents,

data, and tangible things, especially in complex multidistrict litigation. *HJB, Inc. v. American

Home Products Corp.,* 1994 WL 31005, at *1 (N.D. Ill. 1994). The importance of ensuring

document preservation is reflected in courts' inherent sanction powers and by the Federal Rules

of Civil Procedure. *Danis v. USN Communications, Inc.* 2000 WL 1694325, at * 30-31 (N.D. Ill.

2000) (discussing courts' authority to dismiss a case or enter a default in the event of a discovery

violation).

Without question, defendants have a duty to preserve documents. *Danis v. USN

Communications, Inc.,* 2000 WL 1694325, at *32 (N.D. Ill. 2000); *China Ocean Shipping

(Group) Company, et al. v. Simone Metals Incorporated,* 1999 WL 966443, at *3 (N.D. Ill.

1999), *citing Langley v. Union Electric Co.,* 107 F. 3d 510, 514 (7th Cir. 1997), *Melendez v.

Illinois Bell Tel. Co.,* 79 F. 3d 661, 671 (7th Cir. 1996); *Marrocco v. General Motors Corp.,* 966

---

[5] *Available at* http://www.reuters.com/articlePrint?articleId=USN3128419320070831.

F. 2d 220, 223-225 (7th Cir. 1992) (additional citations omitted). "The duty to preserve

documents in the face of pending litigation is not a passive obligation. Rather, it must be

discharged actively…". *Danis,* at 32. (obligation to establish and distribute a comprehensive

document retention policy falls "squarely on the shoulders" of senior corporate officers). The

Seventh Circuit recognizes this duty. *African-American Slave,* at *3, *citing, Smith Barney, Inc. v.

Schell,* 53 F. 3d 804, 807 (7th Cir. 1995).

## IV.    ARGUMENT

**1.    Relevant And Material Information Is Likely To Be Irretrievably Lost Or
Destroyed Absent A Preservation Order**

A.    <u>The Limited Categories Of Documents Plaintiffs Seek To Preserve Here Are
Materially Relevant To The Plaintiffs' Claims</u>

As an initial matter, the evidence Plaintiffs seek to preserve by this motion is directly

relevant and material to the claims they raise in this MDL proceeding. The categories of

documents Cooperating Plaintiffs seek to protect by virtue of a document preservation order

include documents that: (1) are relevant to the account or claims of any named Plaintiff (or other

individual who has rescinded a transaction pursuant to the TILA); (2) relate to any loan

originated on or after January 1, 1998; (3) are responsive to a Request for Production duly served

upon Ameriquest in any case now pending in the above referenced proceeding or being

considered for transfer; (4) governed policies or procedures at Ameriquest at any time after

September 1, 1998;  (5) Ameriquest has produced to the state Attorneys General or in any class

action or individual action against it relating to loan origination or servicing issues;  (6) include

all electronic records in existence at any time during the period since January 1, 1998; (7) are

related to audits and/or investigations of branches, loan brokers, realtors, appraisers, closing

agents, agents or employees, including audit reports and customer complaints; (8) include

5

electronic mail; (9) include financial records for the period from 1996 to the present; (10) relate to investigations of complaints that Defendants assert or may assert are entitled to protection as privileged; (11) relate to a transaction between any Defendant and Citigroup by which assets of any Defendant were transferred to Citigroup; and (12) relate to any Defendant's process or processes for winding up its business, including, without limitation, any documents related to monies paid to employees, investors, or other third parties.

These categories are limited in scope and clearly relevant to the claims at issue in this MDL proceeding.

      B.     <u>Evidence Indicates That Documents Have Already Been Lost Or Destroyed</u>

Given the instances of removal of key evidence from its normal place in the Defendants' systems, and that relevant documents may have already been lost or shredded (*See*, Statement of Facts, *supra*), a document preservation order is necessary in this case. Information contained in the Defendants' electronic systems and paper files at the commencement of this litigation has been removed to unknown locations. This maneuvering of information raises a suspicion that documents are being manipulated or destroyed.

      C.     <u>Ameriquest's Closure And Transfer Of Business To Citigroup Creates A Substantial Risk That Documents Will Be Lost Or Destroyed</u>

Ameriquest's closure and transfer of some or all of its business to Citigroup makes it highly likely that documents will be inadvertently lost or destroyed. The disruption associated with such an extreme shutdown and acquisition greatly increases the chances that documents will not be preserved. In addition, the Defendants have refused to provide Plaintiffs with any information related to any agreements between it and Citigroup to preserve documents, or even whether any such agreements exist.

6

D.   Delay Caused By The Parties' Ongoing Document Production Disputes Creates A Further Risk That Documents Will Be Lost Or Destroyed

Finally, the Defendants have contested many of Plaintiffs' requests for documents that are at the core of this case, including, for example, customer complaints, financial reports, audit results, internal investigations of branch-level employees and email communications. The delay associated with resolving these document production disputes has slowed the discovery process, making it more likely that documents will be lost or destroyed under a routine corporate destruction policy.

**2.   Plaintiffs Will Suffer Irreparable Harm Absent A Preservation Order**

If the requested categories of documents are not preserved, Plaintiffs will lose material evidence necessary to prove their claims. For example, two allegations at the heart of Plaintiffs' complaints relate to Ameriquest's practices regarding disclosure about borrowers' right to cancel a refinance transaction and charging discount points. Whether a borrower has been affected by these practices is directly ascertainable from the face of borrowers' loan documents. It is imperative that Ameriquest ensure the preservation of these documents for Plaintiffs to prove the allegations in their complaints. Plaintiffs have already been prejudiced by the removal of documents from the Defendants' normal systems.

**3.   The Preservation Order The Plaintiffs Propose Here Is Reasonable And Will Not Cause Undue Burden**

Plaintiffs' proposed preservation order does not require Ameriquest to undergo extraordinary measures to retain and preserve all potential evidence. Rather, it is narrowly tailored to ensure that only evidence that is relevant and material to the claims raised in this MDL proceeding is preserved. Plaintiffs seek the preservation of only 12 narrowly tailored categories of documents. *See Walker v. Cash Flow Consultants, Inc.* 200 F.R.D. 613, 617 (N.D.

Ill. 2001) (holding that although a request for an order compelling preservation of 23 categories of documents was overbroad, a preservation order was still necessary to ensure that plaintiff can obtain information about similarly situated individuals). Many of the categories require preservation of electronic documents, which are presumably stored efficiently on disks, computer drives, and back-up tapes.

The main purpose of the preservation order is to ensure that the relevant categories of documents are preserved while the Court works through the parties' many discovery disputes. It would be ironic and unproductive to resolve disputes only to then find out that documents have been destroyed or lost.

The document retention program that Plaintiffs' propose here, which would require Ameriquest to draft a memorandum that overrides any document destruction policies presently in place and for Ameriquest to issue it to all its employees, is minimal and easy to implement. It will not create an undue burden.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order compelling Ameriquest to preserve all documents contained in the categories enumerated above and to implement a document retention program, submitted herewith in the form of a proposed Order.

8

Respectfully submitted,


| _/s/ Kelly M. Dermody_ | _/s/ Gary Klein_ |
|---|---|
| Kelly M. Dermody | Gary Klein |

| | |
|---|---|
| Kelly M. Dermody (CA Bar No. 171716) | Gary Klein |
| Caryn Becker (CA Bar No. 196947) | Elizabeth Ryan |
| LIEFF, CABRASER, HEIMANN | Shennan Kavanagh |
| & BERNSTEIN, LLP | RODDY KLEIN & RYAN |
| 275 Battery Street, 30th Floor | 727 Atlantic Avenue |
| San Francisco, CA  94111-3339 | Boston, MA   02111-2810 |
| Telephone:  (415) 956-1000 | Telephone:  (617) 357-5500 ext. 15 |
| Facsimile:  (415) 956-1008 | Facsimile:   (617) 357-5030 |


_/s/ Jill Bowman_

Jill Bowman

Jill Bowman
JAMES, HOYER, NEWCOMBER
  & SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL  33609
Telephone: (813) 286-4100
Facsimile:  (813) 286-4174

_Plaintiffs' Co-Lead Counsel_

_/s/ Marvin A. Miller_

Marvin A. Miller

Marvin A. Miller
MILLER LAW LLC
101 North Wacker Drive, Ste. 2010
Chicago, IL  60606
Telephone:  (312) 525-8316
Facsimile:   (312) 525-8231

_Plaintiffs' Liaison Counsel_


Date:   September 18, 2007

9