**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOS
EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-CV-07097<br>(Centralized before the Honorable Marvin E. Aspen)<br><br>Magistrate Judge Morton Denlow |

**ROLAND ARNALL'S MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS
BORROWERS' FIRST AMENDED
<u>CONSOLIDATED CLASS ACTION COMPLAINT</u>**

Alan N. Salpeter, Esq.
Vincent P. Schmeltz III, Esq.
Therese King Nohos, Esq.
Bradley I. Schecter, Esq.
LEBOEUF, LAMB, GREENE & MACRAE LLP
180 North Stetson, Suite 3700
Two Prudential Plaza
Chicago, Illinois  60601-6710
Telephone:  312-794-8000
Facsimile:  312-794-8100

*Counsel for Roland Arnall*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................4

    I.    Standard For Granting Motion To Dismiss. ............................................4

        A.    The Supreme Court's Recent *Twombly* Decision Sets A New Pleading Standard. ...............................................................4

        B.    Plaintiffs' Complaint, Grounded In Fraud, Must Be Particular..................6

    II.    Plaintiffs' Sparse Allegations Against Arnall Individually Do Not State A Claim Either For Active Participation In The Lending Scheme Or Conspiring With Or Aiding And Abetting The Ameriquest Entities In Furthering The Scheme...............................................................8

        A.    Plaintiffs' Allegation That Arnall Was A Shareholder And Director Is Insufficient. .................................................................9

        B.    Plaintiffs' Allegation That Arnall Made Hiring Decisions Is Insufficient. ...............................................................10

        C.    Plaintiffs' Allegation That Arnall Established Policies Is Insufficient. ...............................................................10

        D.    Plaintiffs' Allegations That Arnall Knew About And Agreed To The Fraud Are Insufficient...................................................11

        E.    Plaintiffs' Allegations Based On The Lee Deposition Are Insufficient. ...............................................................11

    III.    Plaintiffs' Cannot Overcome Their Pleading Deficiencies By "Lump Pleading."...............................................................13

    IV.    Plaintiffs Fail To Allege Facts Sufficient To Hold Arnall Vicariously Liable For His Co-Defendants' Actions. ............................................15

        A.    Plaintiffs Fail To Plead Facts Sufficient to Justify Piercing The Corporate Veil...............................................................15

        B.    Plaintiffs Fail To Plead Any Facts Supporting Their Agency Theory. ...............................................................17

    V.    Plaintiffs Fail To State A Claim For Breach Of Contract Or For Violations Of The Truth In Lending Act, The Georgia Fair Lending Act, The Equal Credit Opportunity Act, And The California Consumer Legal Remedies Act...............................................................19

A.      Plaintiffs Did Not Contract With Arnall And, Therefore, They Cannot State A Claim For Breach Of Contract. ........................................19

B.      Arnall Was Not A "Creditor" And, Therefore, Cannot Be Liable For Lending Law Violations. .......................................................................19

C.      Plaintiffs Fail To State A Claim For Violations Of The California Consumer Legal Remedies Act. ................................................................20

VI.     Plaintiffs' Allegations Of Receipt Of Fraudulent Transfers Are Insufficient. ......................................................................................................21

VII.    Certain Of Plaintiffs' Claims Are Time-Barred...................................................23

A.      The Applicable Statutes Of Limitations Bar Certain Claims....................23

B.      Plaintiffs Fail To Plead Facts That Would Toll The Applicable Statutes Of Limitations As Against Arnall. ..............................................26

CONCLUSION............................................................................................................28

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Baker v. Kingsley*, 2005 WL 1458076 (N.D. Ill. June 10, 2005)....................................15

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ....................................... *passim*

*Binder v. Bristol-Myers Squibb, Co.*, 184 F. Supp. 2d 762 (N.D. Ill. 2001) .................... 15-16, 18

*Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, 2003 WL 151929 (N.D. Ill. Jan. 21, 2003) ............................................................................................................19

*Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007) ................7, 8, 10, 11, 13

*Burnet v. Clark*, 287 U.S. 410 (1932) ............................................................................10

*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990) ................................................26

*Chochos v. Norkus (In re Chochos)*, 325 B.R. 780 (Bankr. N.D. Ind. 2005) ...............................23

*Conley v. Gibson*, 355 U.S. 41 (1957) ..............................................................................4

*Day v. Cline*, 2006 WL 2931461 (N.D. Ill. Oct. 12, 2006) ......................................................11

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990)...........................................................11

*EEOC v. Concentra Health Servs., Inc.*, 2007 WL 2215764 (7th Cir. Aug. 3, 2007)..............4, 15

*Firstar Bank, N.A. v. Faul*, 2001 WL 1636430 (N.D. Ill. Dec. 20, 2001).......................6-7, 13-14

*Flynn v. Merrick*, 881 F.2d 446 (7th Cir. 1989) ................................................................11

*Gage-Wilson v. Chase Manhattan Mortgage Corp.*, 2006 WL 1431047 (N.D. Ill. May 17, 2006) ...............................................................................................................13

*General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) .............................................................................................................21-23

*Helms v. Arboleda (In re Arboleda)*, 224 B.R. 640 (Bankr. N.D. Ill. 1998) ...............................23

*In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, 2007 WL 1202544 (N.D. Ill. Apr. 23, 2007) ..................................................................2-3, 13-14, 21

*In re First Alliance Mortgage Co.*, 280 B.R. 246 (C.D. Cal. 2002) ..............................................20

*Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89 (1990) ........................................................27

*Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321 (7th Cir. 1994)....................................................7, 13

*Kramer v. Regents of the University of Cal.*, 81 F. Supp. 2d 972 (N.D. Cal. 1999) ....................25

*Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777 (7th Cir. 1999) .........................................18

*Lane v. Capital Acquisitions and Mgmt. Co.*, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006)........15

*Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642 (7th Cir. 2006) .............................................12

*McMillan v. Collection Professionals, Inc.*, 455 F.3d 754 (7th Cir. 2006) ...................................21

*Medina v. Bauer*, 2004 WL 136636 (S.D.N.Y Jan. 27, 2004)........................................................14

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D. Del. 1989) ......................... 10, 16-17

*Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) .....................2

*New Freedom Mortgage Corp. v. C&R Mortgage Corp.*, 2004 WL 783206 (N.D. Ill. Jan. 15, 2004) ....................................................................................................................................16

*Rogers v. Baxter Int'l Inc.*, 417 F. Supp. 2d 974 (N.D. Ill. 2006) ..................................................6

*Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002) ................................................11

*Rylewicz v. Beaton Services, Ltd.*, 888 F.2d 1175 (7th Cir. 1989) ...............................................24

*Schwartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007)................................................................21

*Slaney v. Int'l Amateur Athletic Found.*, 244 F.3d 580 (7th Cir. 2001) ......................................10

*Stephenson v. Hartford Life and Annuity Ins. Co.*, 2003 WL 22232968 (N.D. Ill. Sept. 26, 2003) .................................................................................................................................3, 6

*Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928 (7th Cir. 1996) ................15

*Thomas v. Ocwen Federal Bank FSB*, 2002 WL 99737 (N.D. Ill. Jan. 25, 2002)..................23, 27

*Trustees of the Cement Masons Fund, Local 502 v. F&V Cement Contractors, Inc.*, 2004 WL 765368 (N.D. Ill. Apr. 7, 2004) .................................................................................. 9-10, 12

*TRW, Inc. v. Andrews*, 534 U.S. 19 (2001)...................................................................................24

*Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918 (7th Cir. 1992)..........................................17, 23

*United States v. Bestfoods*, 524 U.S. 51 (1998) ...........................................................................10

*Veal v. First Am. Savings Bank*, 914 F.2d 909 (7th Cir. 1990)......................................................7

*Viernes v. Executive Mortgage, Inc.*, 372 F. Supp. 2d 576 (D. Haw. 2004)................................20

*Weinstein v. Saturn Corp.,* 2007 WL 1342604 (N.D. Cal. May 8, 2007) .....................................18

*Whirlpool Fin. Corp. v. GN Holdings, Inc.,* 67 F.3d 605 (7th Cir. 1995) ....................................23

## STATE CASES

*Berg & Berg Enter., LLC v. Sherwood Partners, Inc.,* 131 Cal.App.4th 802 (Ct. App. 2005) ..................................................................................................................................9

*Casey v. U.S. Bank Nat'l Assoc.,* 127 Cal.App.4th 1138 (Ct. App. 2005) ....................................9

*Hydro-Mill Co., Inc. v. Hayward Tilton and Rolapp Ins. Assocs., Inc.,* 115 Cal.App.4th, 1145 (Ct. App. 2004) ..................................................................................................25

*Neel v. Magana, Olney, Levy Cathcart & Gelfand,* 6 Cal. 3d 176 (Cal. 1972) ...........................27

*Parker v. Walker,* 5 Cal.App.4th 1173 (Ct. App. 1992) ..............................................................24

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.,* 906 A.2d 168 (Del. Ch. 2006)...................15

## FEDERAL STATUTES AND REGULATIONS

12 C.F.R. § 202.2 .........................................................................................................................21

12 C.F.R. § 226.2 .........................................................................................................................20

12 U.S.C. § 2614 ..........................................................................................................................24

15 U.S.C. § 1602 ..........................................................................................................................20

15 U.S.C. § 1635 .....................................................................................................................24-25

15 U.S.C. § 1640 ..........................................................................................................................24

15 U.S.C. § 1681 ..........................................................................................................................24

15 U.S.C. § 1691 ..........................................................................................................................24

42 U.S.C. § 3613 ..........................................................................................................................25

## STATE STATUTES

California Business & Professions Code §§ 17200 *et seq.* .....................................................25-26

California Code Civil P. § 337.......................................................................................................26

California Code Civil P. § 338.......................................................................................................28

California Code Civil P. § 339.......................................................................................................24

California Consumer Legal Remedies Act, § 1750 *et seq.* ....................................................... 21-22

California Uniform Fraudulent Transfer Act § 3439 ............................................................... 22-23

F.S.A § 95.11 ...................................................................................................................................28

Georgia Code Annotated, § 7-6A-2 ............................................................................................26

## FEDERAL RULES

Fed. R. Civ. P. 8 ...................................................................................................................... *passim*

Fed. R. Civ. P. 9 ...................................................................................................................... *passim*

Fed. R. Evid. 201 ............................................................................................................................12

## SECONDARY AUTHORITY

5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE §
1327.................................................................................................................................... 11-12

## MISCELLANEOUS

Federal Reserve Press Release, Sept. 18, 2007,
http://www.federalreserve.gov/newsevents/press/monetary/20070918a.htm ...................1

James E. Hagerty, *Mortgage Fears Drive Up Rates On Jumbo Loans*, Wall St. J., Aug. 7,
2007....................................................................................................................................................1

Anna Marie Kukec, *Ameriquest To Shutter 229 Offices, To Lay Off 3,800 Employees*,
Chicago Daily Herald, May 3, 2007 .................................................................................1

Aaron Lucchetti & Serena Ng, *How Rating Firms' Calls Fueled Subprime Mess*, Wall St.
J., Aug. 15, 2007 ...............................................................................................................1

Sudeep Reddy & Kelly Evans, *Debt Issues Top Economists' Fears*, Wall St. J., Aug. 27,
2007....................................................................................................................................................1

Jonathan Stempel, *Ameriquest Closes, Citigroup Buys Mortgage Assets*, Reuters, Sept. 1,
2007, http://reuters.com/article/businessNews/idUSN3128419320070901 .......................2

## <u>INTRODUCTION</u>

An economic tsunami is wreaking havoc in the subprime mortgage industry. Faced with an unprecedented borrower default rate, dozens of lenders are downsizing or closing.[1] Economists identify mortgage defaults and heavy debt loads as the biggest short-term risk to the U.S. economy, overtaking the threat of terrorism.[2] Rating firms such as Standard and Poor's are drawing fire for giving "top ratings" to mortgage-backed securities, making them "seem as safe as a Treasury bond."[3] The Federal Reserve has warned that "the tightening of credit conditions has the potential to intensify the housing correction and to restrain economic growth generally."[4]

One of the many casualties of the credit crunch is Defendant Ameriquest Mortgage Company ("AMC"), which shuttered 229 offices and laid off 3,800 employees earlier this year.[5] Recently, AMC announced plans to shut down its retail lending operations altogether, and Defendant ACC Capital Holdings Corporation ("ACC Capital Holdings") announced that it had sold its wholesale mortgage lending business to Citigroup Inc.[6]

In this atmosphere of uncertainty, plaintiffs now seek to add Roland Arnall ("Arnall") as a defendant for fear that "[s]everal Ameriquest entities now appear to be on the verge of shutting

---

[1] *See* James E. Hagerty, *Mortgage Fears Drive Up Rates On Jumbo Loans*, Wall St. J., Aug. 7, 2007, at A1 (reporting that the "subprime storm has sunk two hedge funds run by Bear Stearns Cos., knocked American Home and dozens of other lenders out of business, battered an already weak housing market and fueled weeks of stock-market turmoil.").

[2] Sudeep Reddy & Kelly Evans, *Debt Issues Top Economists' Fears*, Wall St. J., Aug. 27, 2007, at A2.

[3] *See* Aaron Lucchetti and Serena Ng, *How Rating Firms' Calls Fueled Subprime Mess*, Wall St. J., Aug. 15, 2007, at A1.

[4] Federal Reserve Press Release, Sept. 18, 2007, *available at* http://www.federalreserve.gov/newsevents/press/monetary/20070918a.htm (last visited Sept. 21, 2007).

[5] Anna Marie Kukec, *Ameriquest To Shutter 229 Offices, To Lay Off 3,800 Employees*, Chicago Daily Herald, May 3, 2007, at A1.

[6] Jonathan Stempel, *Ameriquest Closes, Citigroup Buys Mortgage Assets*, Reuters, Sept. 1, 2007, *available at* http://reuters.com/article/businessNews/idUSN3128419320070901 (last visited Sept. 19, 2007).

down without paying valid claims against them." (Pls.' Mot. For Leave To File First Am. Complt. at 2.) Well-founded or not, plaintiffs' fear of winning an uncollectible judgment against the "Ameriquest Entities"[7] is no reason to try to hold Arnall liable for their possible debts. Plaintiffs cannot amend their complaint to add Arnall, nearly three years after this litigation started, merely to find a deep pocket. *See, e.g., Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003) ("courts have rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable result that warrants application of the alter ego doctrine."). And plaintiffs have not alleged any facts that would otherwise justify their claims—many of which are time-barred against Arnall in any event.

The new Complaint repeats nearly verbatim twenty-one of the counts in plaintiffs' first complaint, except that Arnall now is named as a defendant.[8] Arnall's proposed co-defendants filed motions to dismiss these claims, which the Court denied in April 2007. *See In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, 2007 WL 1202544 (N.D. Ill. Apr. 23, 2007) (Aspen, J.) ("*In re Ameriquest*"). But Arnall's Motion merits a different result for at least three reasons. ***First***, since the Court ruled, the United States Supreme Court decided *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007) ("*Twombly*"). *Twombly* overturned the long-standing rule that "a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim . . . ." *Id.* at 1968-69. Now,

---

[7] The Complaint defines "Ameriquest Entities" so as to include Defendants Ameriquest Mortgage Company, ACC Capital Holdings Corporation, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., Town & Country Credit Corporation, and Argent Mortgage Co., LLC. The term shall have the same meaning as used in this memorandum.

[8] These include claims for alleged violations of various federal lending and housing laws (Counts II to IV, XIV, and XVII to XVIII) and state consumer fraud and lending statutes (Counts XI to XIII, XVII, XIX and XXI). Plaintiffs also repeat their common law claims for breach of contract (Counts VI to IX), unjust enrichment (Count V), fraud (Count XV), intentional or negligent misrepresentation (Count XVI), and negligent supervision of employees (Count XX). They also repeat their requests for declaratory and injunctive relief (Count X) and an accounting (Count XXVI).

plaintiffs cannot survive a motion to dismiss and embroil Arnall in distracting and costly discovery without a complaint that sets forth enough facts to suggest that they have a plausible right to relief against Arnall. This Complaint does not meet *Twombly's* standard.

**Second**, unlike his proposed co-defendants, Arnall did not contract with any plaintiffs, make loans to, or service loans for, any plaintiffs, or make material misrepresentations or omissions to any plaintiffs. Therefore, the same allegations that the Court held were sufficient to state a fraud claim against Arnall's proposed co-defendants shed no light whatsoever on Arnall's alleged role. *See In re Ameriquest*, 2007 WL 1202544 at *7. Plaintiffs' amended Complaint does not rectify this serious omission.[9] Rather, plaintiffs try to overcome it by consistently referring to Arnall as part of the "Ameriquest Entities" or the "Defendants."[10] This way, they try to attribute the actions of at least six different corporate entities to Arnall. This lump pleading tactic does not pass muster under Rule 8(a) standards, especially in light of *Twombly*, nor under Rule 9(b) particularity requirements, which are designed to protect individuals like Arnall from spurious allegations against their reputation and fishing expeditions.

**Third**, Arnall is in a different position than his proposed co-defendants because plaintiffs' claims are time-barred as against him. Plaintiffs did not try to add Arnall as a defendant until nearly three years *after* they allegedly discovered their injuries and began suing the Ameriquest

---

[9] Because all of plaintiffs' claims against Arnall are grounded in fraud, the entire Complaint must meet the Rule 9(b) particularity requirements. *See Stephenson v. Hartford Life and Annuity Ins. Co.*, 2003 WL 22232968, *5 (N.D. Ill. Sept. 26, 2003) ("Claims traditionally not perceived to be grounded in fraud nonetheless must be pleaded with particularity when the complaint incorporates by reference prior allegations of fraud.") (internal quotation omitted).

[10] The Complaint is particularly confusing because it defines "Ameriquest" twice—once including Arnall and once not mentioning him. (*Compare* Complt. ¶ 84 to ¶ 2.) Plaintiffs direct most claims to "Ameriquest," yet some claims specify that they are directed towards "Ameriquest and Arnall Individually," further adding to the confusion. (*See* Complt. Counts XII and XXVII.) For purposes of this Motion, Arnall assumes that plaintiffs intended to direct all claims against "Ameriquest" against Arnall too. Arnall moves to dismiss all claims directed against "Ameriquest" as well as those directed towards him "Individually."

Entities. Even if plaintiffs had a meritorious argument that the limitations periods should be equitably tolled as against the Ameriquest Entities (and they do not), they plead nothing to suggest that Arnall misled them or caused them to wait an additional two-and-a-half years before naming him as a defendant.

The Complaint's sole *new* claim against Arnall is for fraudulent transfer (Count XXVII). Plaintiffs fall woefully short of the Rule 9(b) particularity requirements needed to sustain this claim by failing to plead *who* made the transfers to Arnall, *when* they were made, *what* was transferred and *how* the transfers were made. Therefore, the Court also should dismiss that claim.

Because plaintiffs cannot correct this host of substantive defects, Arnall respectfully requests that the Court dismiss all claims against him *with prejudice*.

<u>**ARGUMENT**</u>

I.      **Standard For Granting Motion To Dismiss.**

A.      **The Supreme Court's Recent *Twombly* Decision Sets A New Pleading Standard.**

The United States Supreme Court's recent holding in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ("*Twombly*") rejected the oft-quoted standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1968-69 (overturning *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Now, "it is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief." *EEOC v. Concentra Health Servs., Inc.*, 2007 WL 2215764, *3 (7th Cir. Aug. 3, 2007) ("*Concentra*") (emphasis in original). If it does not, a "plaintiff pleads itself out of court." *Id.*

4

In *Twombly*, the Supreme Court examined whether a putative class of telephone and internet subscribers had stated a claim for antitrust violations. 127 S. Ct. at 1962. As in this case, the *Twombly* plaintiffs alleged that defendants had conspired to commit illegal acts and had committed a variety of wrongful acts, such as overcharging and issuing misleading statements to customers. *Id.* Also as in this case, plaintiffs quoted a statement of one of the defendant's chief executive officers and contended that it supported their theory of conspiracy. *Id.* Unlike this case, however, the *Twombly* plaintiffs cited objective evidence to support their conspiracy theory, such as that the defendants engaged in a common practice of not pursuing business in markets that would infringe upon one of their alleged co-conspirator's markets. *Id.*

Still, the Supreme Court held that the *Twombly* plaintiffs' complaint should be dismissed because they failed to plead adequate facts suggesting an illegal agreement to conspire. *Id.* at 1965. The Supreme Court held that allegations that are merely consistent with conspiracy are not sufficient, even when combined with a "bare assertion" of conspiracy, to state a claim. *Id.* at 1966. A "conclusory allegation of agreement at some unidentified point" did not save the complaint either. *Id.* Rather, the "threshold requirement of Rule 8(a)(2)" requires "allegations *plausibly suggesting* (*not merely consistent with*)" an agreement to conspire. *Id.* (emphasis added).

In so holding, the Supreme Court made clear that district courts must weed out implausible claims at the pleadings stage rather than allow discovery to proceed. *Id.* at 1967 (rejecting notion that "a claim just shy of plausible entitlement to relief can, if groundless, be weeded out early in the discovery process . . . ."). Among other reasons, the "threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings." *Id.* Enforcing Rule 8 then, prevents a plaintiff "with a largely groundless claim"

from "tak[ing] up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* (internal quotations omitted). Under *Twombly*, "a district court *must* . . . insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967 (internal quotation omitted) (emphasis added).

### B. Plaintiffs' Complaint, Grounded In Fraud, Must Be Particular.

Plaintiffs' entire Complaint is premised on their theory that Arnall perpetrated a massive "scheme" or "conspiracy" to defraud plaintiffs.[11] In fact, each of the twenty-two counts against Arnall incorporates plaintiffs' lending scheme allegations by reference and, therefore, each count is subject to Rule 9(b) scrutiny. *See Stephenson v. Hartford Life and Annuity Ins. Co*., 2003 WL 22232968, *5 (N.D. Ill. Sept. 26, 2003) ("Claims traditionally not perceived to be grounded in fraud nonetheless must be pleaded with particularity when the complaint incorporates by reference prior allegations of fraud.") (internal quotation omitted). Plaintiffs make additional allegations of deceit to support particular counts, again implicating the Rule 9(b) standard.[12] *See*

---

[11] *See, e.g.,* Complt. ¶ 5 (referring to the "persistent 'bait and switch' scheme"); ¶ 9 (referring to the "scheme [to] collect, various fees, costs, and charges that are not legally due under the mortgage contracts"); ¶ 92 (referring to the "conspiracy [to] misrepresent[] and conceal[] material information regarding the servicing of loans"); ¶ 106 (referring to "scheme to prey upon unsuspecting consumers by routinely causing borrowers to enter into residential loans with unfavorable terms"); ¶¶ 107-111 (outlining a "bait and switch" scheme, where borrowers were promised certain terms but given others); ¶¶ 116-119 (outlining "scheme relating to discount points," where borrowers were promised and paid for a discount interest rate but did not receive it); ¶¶ 120-129 (outlining "sales and marketing scheme," pursuant to which borrowers suffered unfair sales tactics and received a "mis-disclosed adjustable interest rate"). All of these allegations sound in fraud. *See Firstar Bank, N.A. v. Faul*, 2001 WL 1636430, *3 (N.D. Ill. Dec. 20, 2001) (C.J. Aspen) ("Generally, fraud means anything intended to deceive . . . .") (internal quotation omitted); *see also Rogers v. Baxter Int'l Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006) (allegations of "'scheme' and 'course of conduct' . . . to disseminate inaccurate and misleading information" are "classically associated with fraud.").

[12] For example, plaintiffs allege a "bait and switch" to shore up their ECOA (Count II) and FCRA (Count III) claims, as well as two of their breach of contract claims (Count VII, Count IX). They expressly allege a discount point scheme to support yet another breach of contract claim and breach of covenant of good faith claim (Count VI, Count IX). Their RESPA claim makes express allegations that defendants accepted fees for services they did not perform and falsely represented others "as performing bona fide

*Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (affirming dismissal of claims under Rule 9(b) for tortious interference with economic advantage, tortious inducement of a breach of fiduciary duty, and civil conspiracy); *Veal v. First Am. Savings Bank*, 914 F.2d 909, 913 (7th Cir. 1990) (affirming dismissal of claims under Rule 9(b) for violations of the Indiana Deceptive Practices Act, breach of fiduciary duty, and negligence where plaintiffs "primarily seek relief based upon allegedly fraudulent activity.").

Pleading fraud requires more "pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Borsellino,* 477 F.3d at 507 (internal quotation omitted). This rule protects a defendant's reputation from harm, and minimizes "strike suits" and "fishing expeditions."[13] *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994). Therefore, Rule 9(b) requires fraud allegations to be pled "with as much specificity as possible." *Firstar Bank, N.A. v. Faul*, 2001 WL 1636430, *5 (N.D. Ill. Dec. 20, 2001) (Aspen, C.J.); Fed. R. Civ. P 9(b) ("[i]n all averments of fraud . . . the circumstances constituting the fraud . . . shall be stated with particularity."). Accordingly, plaintiffs must "allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Firstar Bank*, 2001 WL 1636430 at *5 (internal quotation omitted).

---

notary or closing services that they did not in fact perform…." (Count IV, ¶ 275.) They allege that defendants engaged in "misleading consumers," promising terms but not providing them, and hiding required disclosures to support their claims brought under the California Business & Professions Code §§ 17200 *et seq*. (Count XI-XII) and state consumer protection laws (Count XIII). They also allege that defendants made "materially false representations, concealments and/or non-disclosures" to support their claims for intentional and/or negligent misrepresentation while "knowing the falsity of such representations, concealments and non-disclosures." (Count XVI, ¶ 383.)

[13] In this case, Mr. Arnall is the current U.S. Ambassador to The Netherlands and has served in that position since February 2006. All of the reasons for requiring particularity when pleading fraud especially are applicable here.

## II.    Plaintiffs' Sparse Allegations Against Arnall Individually Do Not State A Claim Either For Active Participation In The Lending Scheme Or Conspiring With Or Aiding And Abetting The Ameriquest Entities In Furthering The Scheme.

Beyond describing Arnall (incorrectly) as the sole owner or controlling shareholder of ACC Capital Holdings and its subsidiaries, and as the Chairman of its Board of Directors, (Complt. ¶¶ 79-83, 95, 102), plaintiffs provide shockingly few details in their effort to add Arnall as a defendant.  Out of its 466 paragraphs, the Complaint devotes only eight other paragraphs to explaining Arnall's role in the alleged fraudulent lending scheme.  (Complt. ¶¶ 94, 96-98, 100-101, 103-104.)  Of them, five state only legal conclusions such as:

- Arnall "individually or together with others, directed, controlled, approved and participated in the acts and practices of the Ameriquest entities, including those acts and practices that are the subject of this complaint."  (Complt. ¶ 94.)

- "Arnall should be held individually liable for his own actions, as well as the actions of the Ameriquest entities."  (Complt. ¶ 98.)

- The "Ameriquest entities were the alter ego of individual Defendant Arnall." (Complt. ¶ 100.)

- "There is a unity of interest and ownership with respect to the Ameriquest entities and Arnall such that the individuality or separateness of both has ceased, and such that an adherence to the fiction of the separate existence of the corporation would sanction fraud and promote injustice . . . ."  (Complt. ¶ 101.)

- "Allowing Arnall to hide behind the corporate veil would extend the principle of incorporation beyond its legitimate purposes and would promote injustice, unfairness and injury with respect to the thousands of borrowers who obtained loans from Ameriquest, or otherwise allow Arnall to circumvent the law."  (Complt. ¶ 104.)

Two more paragraphs purport to summarize the deposition testimony of the former Chief Executive Officer of ACC Capital Holdings, Wayne Lee, for the following "facts":

- "Arnall controlled the retail lending operations of Ameriquest, was involved in the day to day operations of Ameriquest, and made decisions with respect to the operation of Ameriquest, including the hiring of key employees."  (Complt. ¶ 96.)

- "Arnall repeatedly blocked efforts by Mr. Lee to implement operational reforms in response to the multistate investigation by 49 Attorneys General into deceptive and fraudulent lending practices."  (Complt. ¶ 97.)

The final paragraph alleges, "[o]n information and belief," that "Arnall personally obtained assets of the Ameriquest entities in the form of salary or other compensation derived from the Ameriquest entities' improper conduct." (Complt. ¶ 103.) Plaintiffs do not state any facts that gave rise to that belief, however.

As described below, these few allegations against Arnall individually are exactly "the kind of barebones, conclusory allegation[s]" that have been rejected in similar circumstances. *See Trustees of the Cement Masons Fund, Local 502 v. F&V Cement Contractors, Inc.*, 2004 WL 765368 (N.D. Ill. Apr. 17, 2004). Accordingly, plaintiffs have failed to state a claim against Arnall for active participation in the alleged lending fraud. Moreover, because plaintiffs do not plead any facts suggesting that Arnall knew about or agreed to the lending scheme, plaintiffs' conspiracy and aiding and abetting theories fail as well. *See Berg & Berg Enter., LLC v. Sherwood Partners, Inc.,* 131 Cal.App.4th 802, 823 (Ct. App. 2005) (conspiracy requires plaintiffs to plead that defendant "had knowledge of and agreed to both the objective and the course of action that resulted in the injury."); *Casey v. U.S. Bank Nat'l Assoc.*, 127 Cal.App.4th 1138, 1144 (Ct. App. 2005) (aiding and abetting requires allegations of knowledge and "substantial assistance or encouragement").

### A. Plaintiffs' Allegation That Arnall Was A Shareholder And Director Is Insufficient.

Plaintiffs primary claim seems to be that, because Arnall is a shareholder and board member, he should be liable for the actions of all of the Ameriquest Entities. In fact, they describe his role as shareholder and board member no less than four times in the few allegations directed towards Arnall personally. (Complt. ¶¶ 83, 90, 95, 102.) But over fifty years of precedent establishes that being a shareholder and board member does not make Arnall liable for the Ameriquest Entities' acts under any theory, even under plaintiffs' piercing the veil argument.

9

*See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("'A corporation and its stockholders are generally to be treated as separate entities.'" (quoting *Burnet v. Clark*, 287 U.S. 410, 415 (1932)).

### B. Plaintiffs' Allegation That Arnall Made Hiring Decisions Is Insufficient.

Plaintiffs also plead that Arnall "participated . . . in hiring of employees who either established, ratified or carried out the policies and practices that are the subject of this complaint." (Complt. ¶ 95.) Again, this allegation does not support any cause of action. It suggests nothing more than that Arnall properly fulfilled his role as shareholder and director. *See, e.g., Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 267 (D. Del. 1989) (fact that parent stockholder approved the hiring and salary of officers of subsidiary, plus other major expenditures, did not justify piercing corporate veil). As such, it fails under *Twombly* because, while it may be *consistent with* plaintiffs' theory of fraud, it is not *suggestive* of fraud or any other wrongdoing.

### C. Plaintiffs' Allegation That Arnall Established Policies Is Insufficient.

Plaintiffs allege that Arnall himself "either established or ratified the policies and practices that are the subject of this complaint" and that he "participated in the day-to-day operations of the Ameriquest entities." (Complt. ¶¶ 95.) These allegations would have been insufficient even before *Twombly* was decided. *See, e.g., Trustees of the Cement Masons Fund Local 502*, 2004 WL 765368 at *3 (rejecting as conclusory plaintiff's general allegations of control over daily operations as insufficient even under Rule 8(a)). Plaintiffs' failure to identify *what* specific policies or practices Arnall established or ratified and *when* or *how* he established them sinks their claims under Rule 9(b), as well.

**D.     Plaintiffs' Allegations That Arnall Knew About And Agreed To The Fraud Are Insufficient.**

Plaintiffs devote only three paragraphs of their 466-paragraph Complaint to pleading conspiracy and aiding and abetting.  (Complt. ¶¶ 91-93.)  Arnall is not mentioned in any of them. Rather, plaintiffs make generic references to the "Defendants" and claim that they "acted with an awareness," and "knowingly and willfully conspired."  (Complt. ¶¶ 91-92.)  But plaintiffs "may not rest on a bare inference that the defendant 'must have had' knowledge of the facts."  *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990).  Rather, they "must support the inference with some reason to conclude that the defendant has thrown in his lot with the primary violators."  *Id.  See also Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989) ("[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.") (internal quotation omitted); *Day v. Cline*, 2006 WL 2931461, *4 (N.D. Ill. Oct. 12, 2006) (a "bare allegation of conspiracy . . . does not satisfy Rule 8") (internal quotation omitted).  Plaintiffs' perfunctory allegations provide no basis for inferring that Arnall knew about the alleged lending fraud, or that he agreed to participate in it.

**E.     Plaintiffs' Allegations Based On The Lee Deposition Are Insufficient.**

The "facts" purportedly based on the deposition testimony of Wayne Lee should be disregarded because Lee's transcript belies those allegations.  (*See* Lee Transcript, attached as **Exhibit A**.)  Not surprisingly, plaintiffs did not provide a copy of the Lee transcript for the Court's review.  No matter.  The Court may take notice of it without converting this to a summary judgment motion because the transcript is central to plaintiffs' claims.[14]

---

[14] *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").  *See also* 5A CHARLES A. WRIGHT & ARTHUR R.

Plaintiffs say—based on Lee's testimony—that Arnall "controlled the retail lending operations of Ameriquest" and "was involved in the day to day operations," (Complt. ¶ 96), but the Lee transcript does not support that conclusion. In fact, when plaintiffs asked if Arnall controlled retail lending, Lee answered: "I have no idea. I checked out." (Lee at 47.) In other words, Lee himself admitted that he had no basis for any comment about Arnall's role in the retail lending practice, and the Court should disregard plaintiffs' allegation.[15]

While Lee admittedly did not know whether Arnall controlled retail lending, his testimony regarding the Ameriquest Entities' corporate structure shows that this conclusion is implausible. Lee testified that Arnall did not hold *any* position in any of the operating companies. (Lee at 13.) Rather, Arnall was literally seven steps removed from the retail sales force that was in contact with plaintiffs. (Lee at 118-122.) The branch sales people reported to branch sales managers, who in turn reported to area sales managers, who in turn reported to regional sales managers, who in turn reported to divisional sales managers, who in turn reported to Mary Jo Shelton, the head of sales. (Lee at 118-122.) Shelton reported to Lee, who at the time was president of ACC Capital Holdings Corp. Lee reported to Aseem Mital, the president of Ameriquest Capital Corporation. (Lee at 122.) Mital, in turn, reported to the board of

---

MILLER, FEDERAL PRACTICE & PROCEDURE § 1327 ("when the plaintiff fails to introduce a pertinent document as part of her pleading . . . cases from throughout the federal court system make it clear that the defendant may introduce the document . . . ."). *See also Twombly*, 127 S. Ct. at 1972 n.13 (taking judicial notice of document that plaintiff selectively quoted in complaint pursuant to Fed. R. Evid. 201). The Court, therefore, may consider the Lee transcript and disregard allegations that are inconsistent with it. *See Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) ("where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls."); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1327 (it is "well settled" that the written instrument will control when disparate from complaint).

[15] In any event, without more facts to support the allegation that Arnall controlled retail lending then, it is nothing more than the "barebones, conclusory allegation" that courts have held "*[a] fortiori* . . . falls far short of the kind of specificity required by Federal Rule of Civil Procedure 9(b)." *See Trustees of the Cement Masons Fund Local 502*, 2004 WL 765368 at *3 (rejecting plaintiffs' allegations that the individual defendant, an officer and owner of the corporate co-defendant, "controlled the actions" of her corporate co-defendant, and "was at all times aware of the wrongful conduct of the company.").

directors of Ameriquest Capital Corporation, of which Arnall was a board member. (Lee at 122.) This organizational structure belies the allegation that Arnall had day-to-day control over retail lending or set retail lending policies and practices.

Plaintiffs also say that Lee testified that "Arnall repeatedly blocked efforts by Mr. Lee to implement operational reforms in response to the multistate investigation by 49 Attorneys General into deceptive and fraudulent lending practices." (Complt. ¶ 97.) Again, Lee's deposition testimony belies that allegation. Lee never described devising any proposal in response to the investigation by the attorneys general. Even if the Court accepts this allegation as true, however, it adds nothing given its fatal ambiguity—either under Rule 8(a) or Rule 9(b).

## III. Plaintiffs' Cannot Overcome Their Pleading Deficiencies By "Lump Pleading."

When accusing multiple defendants of fraud, as plaintiffs do here, plaintiffs must "take care to identify which of them was responsible for the individual acts of fraud." *Firstar Bank, N.A.*, 2001 WL 1636430 at *5 (internal quotation omitted). Absent a "compelling reason," which plaintiffs have not (and cannot) plead here, plaintiffs are "not entitled to treat multiple corporate defendants as one entity." *Jepson, Inc.*, 34 F.3d at 1329; *see also Borsellino*, 477 F.3d at 509 (criticizing complaint for failing to specify "which individuals at Goldman Sachs" arranged the alleged fraudulent plan); *Gage-Wilson v. Chase Manhattan Mortgage Corp.*, 2006 WL 1431047, *2 (N.D. Ill. May 17, 2006) (dismissing fraud and deceptive practices claims where plaintiffs failed to identify "the *person* (not just an unnamed [defendant] employee" who made fraudulent misrepresentation) (emphasis in original).

Plaintiffs cannot present a "compelling reason" for relaxing this strict standard for three reasons. ***First***, this Court already found that plaintiffs are not entitled to "relaxation of the Rule 9(b) particularity requirement" and that ruling is law of the case. *See In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig*, 2007 WL 1202544, *6 (N.D. Ill. Apr. 23, 2007) (Aspen,

J.) ("*In re Ameriquest*").[16]  **Second**, plaintiffs have not alleged that the defendants have exclusive knowledge of the details of the alleged fraud.  *See Firstar Bank, N.A.*, 2001 WL 1636430 at *5 (rejecting argument for a more lenient standard where plaintiffs failed to plead need for one).  **Third**, plaintiffs had the benefit of nearly six months of discovery, including deposition testimony and over 100,000 pages of documents, before filing their Amended Complaint.  They cannot argue that they still are in the dark at this late date.

With few exceptions, plaintiffs consistently lump Arnall with his co-defendants and refer to him as one of the "Ameriquest Entities" or "Defendants."  (*See* Complt. ¶¶ 83, 86-87.)  That way, plaintiffs try to attribute the actions of six different corporate entities to Arnall, even though plaintiffs admit that the Ameriquest Entities are separate businesses.  (For example, plaintiffs describe AMC as a lender, whereas AMC Mortgages Services, Inc. is a loan servicer, (Complt. ¶¶ 77, 79).)  Plaintiffs do not allege that the entities failed to observe corporate formalities or were mere sham corporations, either.  Accordingly, plaintiffs' lump pleading tactic fails under Rule 9(b).

Even if Rule 8(a) applied to certain claims (and it does not), plaintiffs' lump pleading still would be insufficient.  Rule 8(a) entitles Arnall, at a minimum, to "fair notice" of plaintiffs' claims and the "grounds upon which [they] rest."  *Twombly*, 127 S. Ct. at 1964.  As the Seventh Circuit has held, the Rule does not "promote vagueness or reward deliberate obfuscation."  *Concentra*, 2007 WL 2215764 at *6.  Thus, courts have rejected lump pleading under Rule 8(a) before *Twombly*.  *See, e.g., Medina v. Bauer*, 2004 WL 136636, *6 (S.D.N.Y Jan. 27, 2004) ("By lumping all the defendants together in each claim . . . . [the] complaint failed to satisfy the

---

[16] The Court reasoned that "all alleged conduct related to plaintiffs' fraud claims took place between plaintiffs and defendants, not between plaintiffs and third parties, and we cannot otherwise tell from the complaint or the pleadings why any necessary information would be in defendants' sole possession."  *Id.*

minimum requirement of Rule 8.") (collecting authority).  In fact, at least one court has held that lump pleading is particularly inappropriate in cases such as this, where plaintiffs are trying to pierce the corporate veil.  *See Lane v. Capital Acquisitions and Mgmt. Co.*, 2006 WL 4590705, *5 (S.D. Fla. Apr. 14, 2006).  In light of *Twombly*, which requires that plaintiffs to state a plausible claim by pleading enough facts that *suggest* Arnall did something wrong (rather than merely facts that are *consistent* with a fraud theory), the rationale of *Medina* and *Lane* is even more compelling.  Thus, the Court should hold that plaintiffs' group pleading is insufficient under both Rule 8(a) and Rule 9(b). [17]

## IV.    Plaintiffs Fail To Allege Facts Sufficient To Hold Arnall Vicariously Liable For His Co-Defendants' Actions.

Among plaintiffs' many theories for adding Arnall at this late date are plaintiffs' claims that the Ameriquest Entities were Arnall's alter ego, (Complt. ¶¶ 99-105), or his agents, (Complt. ¶¶ 88-80).  Plaintiffs offer no factual support for these legal theories.

### A.    Plaintiffs Fail To Plead Facts Sufficient to Justify Piercing The Corporate Veil.

"Delaware law does not blithely ignore corporate formalities."  *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 194 (Del. Ch. 2006).[18]  "Limited liability is the general rule, not the exception."  *Mobil Oil Corp.*, 718 F. Supp. at 270.  The corporate veil may be pierced only where "there is a lack of attention to corporate formalities" or a "corporate parent exercises complete domination and control over its subsidiary."  *Id.* at 266; *see also Binder v.*

---

[17] Some unpublished, non-binding cases from this district have held that Rule 8 permits lump pleading. *See, e.g., Baker v. Kingsley*, 2005 WL 1458076, *7 (N.D. Ill. June 10, 2005).  This appears to be the minority view, however.  In light of *Twombly*, which was decided after *Baker*, the better view is that of the majority, because plaintiffs now must allege facts *suggesting* a right to relief as against Arnall, not merely *foreclosing* a right to relief.  *Concentra*, 2007 WL 2215764 at *3.

[18] Delaware law decides the questions of veil piercing and agency because, as plaintiffs concede, each of the Ameriquest Entities is a Delaware corporation or limited liability company.  (Complt. ¶¶ 77-82.)  *See Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 933 (7th Cir. 1996).

*Bristol-Myers Squibb, Co*., 184 F. Supp. 2d 762, 772 (N.D. Ill. 2001) (applying Delaware law). In either instance, the additional element of fraud or injustice must be pled. *Mobil Oil Corp*., 718 F. Supp. at 267 (plaintiffs must plead facts suggesting that the corporate form is being used to perpetrate a "fraud or something in the nature of a fraud."); *accord Binder*, 184 F. Supp. 2d at 772. Moreover, alter ego allegations must be made with particularity where, as here, plaintiffs seek to hold Arnall liable for the fraudulent acts of another. *See New Freedom Mortgage Corp. v. C&R Mortgage Corp*., 2004 WL 783206, *8 (N.D. Ill. Jan. 15, 2004) (Rule 9(b) applied to alter ego allegations given plaintiff's fraud claim).

Plaintiffs' allegation that the Ameriquest Entities are Arnall's "alter ego," (Complt. ¶ 100), does not satisfy even Rule 8 pleading standards, much less Rule 9(b). *See id.* ("The conclusory statement that '[defendants] are alter egos of one another' does not demonstrate a unity of interest even outside the Rule 9(b) environment."). Plaintiffs' effort to buttress that allegation by reciting the black letter legal test for piercing the corporate veil, (Complt. ¶ 101), does not cure the defect. *Twombly*, 127 S. Ct. at 1965 ("a formulaic recitation of the elements of a cause of action will not do.").

Plaintiffs fail to plead any of the hallmark *facts* that would justify piercing the corporate veil. For example, they do not allege that Arnall financed the Ameriquest Entities, or that the Ameriquest Entities survive on only the assets that Arnall conveyed to them. Nor do plaintiffs allege that the Ameriquest Entities have operated with grossly inadequate capital. To the contrary, they describe Ameriquest as one of the largest lenders in the nation with enough resources to originate tens of billions of dollars in loans over a several-year period. (Complt. ¶ 4.) Further, plaintiffs do not claim that Arnall commingled his personal assets with any of the Ameriquest Entities, or that he treated them as his personal piggy bank. *See, e.g., Mobil Oil Co*.,

16

718 F. Supp. at 266 (noting that corporate form may be disregarded where entities commingle assets). Plaintiffs also fail to allege that the Ameriquest Entities did not observe corporate formalities, such as keeping board minutes and the like.

Moreover, plaintiffs do not plead facts suggesting that a fraud or injustice would be sanctioned if the corporate veil is not pierced. The "underlying cause of action does not supply the necessary fraud or injustice." *Mobil Oil Corp.*, 718 F. Supp. at 268. "To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping." *Id.* Rather, plaintiffs must plead facts showing that "fraud or injustice [is] found in the defendants' use of the corporate form." *Id.* at 269. They have not done so. Plaintiffs do not allege that they believed they were dealing with Arnall individually instead of the Ameriquest Entities, or that he otherwise abused the corporate form.

At best, plaintiffs plead "[o]n information and belief" that "Arnall personally obtained assets of the Ameriquest entities in the form of salary or other compensation." (Complt. ¶ 103.) The Court must disregard these allegations where, as here, plaintiffs plead no facts showing the basis of their "information and belief." *See Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) ("allegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions").

**B.     Plaintiffs Fail To Plead Any Facts Supporting Their Agency Theory.**

Plaintiffs must plead more to support an agency claim than Arnall's role as a majority shareholder. *Binder*, 184 F. Supp. 2d at 773 ("the status of wholly-owned subsidiary to a parent corporation[] alone does not make a subsidiary the agent of its parent."). Plaintiffs also must plead something more than domination and control. *Mobil Oil Corp.*, 718 F. Supp. at 271 n.15 (rejecting "notion that a parent company can be held liable for the obligations of a subsidiary purely on the basis of domination and control . . . ."). Instead, plaintiffs must plead a "close

17

connection" between Arnall and the Ameriquest Entities as it relates to each of their causes of action. *Id.* at 271. In other words, plaintiffs must plead *with particularity* that the Ameriquest Entities acted as Arnall's agent in performing the specific fraudulent acts alleged in the Complaint. *See Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) ("when the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship . . . the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency . . . ."); *accord Weinstein v. Saturn Corp.,* 2007 WL 1342604, *1 (N.D. Cal. May 8, 2007).

Plaintiffs' Complaint is wholly deficient on this score. Plaintiffs make the conclusory allegation that "Defendants, both individually and collectively . . . are and were agents or joint venturers of each of the other Defendants . . . ." (Compl. ¶ 88.) To support this conclusion, plaintiffs make the circular allegation that "Ameriquest" (which plaintiffs define so as to include all defendants except two) "controlled the actions of all the Defendants . . . by a program of centralized policy-making dissemination, and training . . . ." (Complt. ¶ 89.) This allegation is nonsensical in its circularity. What is more, plaintiffs fail to allege facts showing that Arnall even knew about the fraud, much less directed it through his alleged agents. (*See supra* at 18.)

Lee's deposition testimony further belies plaintiffs' agency theory. Lee testified that Arnall did not have a position in any of the operating companies that rolled up into ACC Capital Holdings, and that Arnall was at least seven steps removed from the sales people who had contact with the plaintiffs. (Lee at 13.) In addition, Lee testified that sometimes weeks or a month would pass before Lee would talk to Arnall, and that he did not regularly report to Arnall. (Lee at 47, 96.) Arnall did not need to "sign off" or agree to "big picture operational changes," and Arnall did not "make decisions independently." (Lee at 102-03; 240.) None of these facts

suggest that the Ameriquest Entities were Arnall's agent, or that Arnall directed and controlled the alleged lending fraud.

**V.      Plaintiffs Fail To State A Claim For Breach Of Contract Or For Violations Of The Truth In Lending Act, The Georgia Fair Lending Act, The Equal Credit Opportunity Act, And The California Consumer Legal Remedies Act.**

In addition to being factually inadequate, certain of plaintiffs' claims fail legally, as described below.

**A.      Plaintiffs Did Not Contract With Arnall And, Therefore, They Cannot State A Claim For Breach Of Contract.**

Plaintiffs do not allege, nor can they, that they contracted with Arnall individually.  Black letter contract law provides that Arnall cannot be liable, then, for breach of contract.  *See Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, 2003 WL 151929, *17 (N.D. Ill. Jan. 21, 2003) (rejecting plaintiffs' contention that defendants were liable for entity's breach where they "owned and/or controlled" general partnership but were not parties to the contract).  Therefore, plaintiffs' breach of contract claims (Counts VI to IX) must be dismissed as against Arnall.

**B.      Arnall Was Not A "Creditor" And, Therefore, Cannot Be Liable For Lending Law Violations.**

Plaintiffs also do not, and cannot, allege that Arnall was the creditor who extended loans to plaintiffs, nor was he the person whom plaintiffs agreed to repay.  Accordingly, because Arnall was not a "creditor," he cannot be liable as a matter of law under federal and state statutes that regulate "creditors."  For example, the TILA provides that "the term 'creditor' refers *only* to a person who both (1) regularly extends . . . consumer credit . . . *and* (2) is the person to whom the debt arising from the consumer credit transaction is initially payable . . . ."  15 U.S.C. § 1602(f) (emphasis added); *see also* 12 C.F.R. § 226.2(a)(17).  The Georgia statute provides a nearly-identical definition of the term.  *See* Ga. Code Ann., § 7-6A-2 (defining "creditor" as "a person who both regularly extends consumer credit that is subject to a finance charge or is

payable by written agreement in more than four installments and is a person to whom the debt arising from the home loan transaction is initially payable.").

Plaintiffs do not allege (nor could they) that Arnall, individually, either extended them credit or that their loans were initially payable to him. Accordingly, as a matter of law, Arnall cannot be held liable under the TILA or GFLA and Counts XIV and XXI should be dismissed. *See In re First Alliance Mortgage Co.*, 280 B.R. 246, 250 (C.D. Cal. 2002) (granting subprime mortgage lender's CEO's motion to dismiss TILA claim because he was not a "creditor"); *see also Viernes v. Executive Mortgage, Inc.*, 372 F. Supp. 2d 576, 583 (D. Haw. 2004) (president of mortgage company was not a "creditor" under TILA).

Similarly, the ECOA defines a "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew or continue credit." 15 U.S.C. § 1691a(e). Regulation B, which implements the ECOA, defines a "creditor" to mean "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." 12 C.F.R. § 202.2(l). Plaintiffs do not allege (nor could they) that Arnall individually extended, renewed or continued credit to or for any plaintiff. Nor do plaintiffs allege that Arnall individually arranged for any plaintiff's credit, or that he was the assignee of any original creditor. Accordingly, Arnall is not a "creditor" within the plain language of the ECOA and Count II should be dismissed as well.

## C. Plaintiffs Fail To State A Claim For Violations Of The California Consumer Legal Remedies Act.

By Count XII, plaintiffs try to state a under the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"). But as this Court already has recognized, the CLRA does not apply to "loans" or "credit" only, and California courts have held that the statute

20

does not cover "credit, *separate and apart from a specific purchase or lease of a good or service.*" *In re Ameriquest*, 2007 WL 1202544 at *5 (internal quotation omitted) (emphasis in original)). The Court's prior ruling, issued before *Twombly*, allowed this claim to stand, reasoning that "it is not inconceivable that, consistent with the allegations of the complaint, plaintiffs could prove the existence of tangential 'services' associated with their residential mortgages and establish that these transactions were covered by the CLRA." *Id.* at *6. In reaching this holding, the Court relied upon Seventh Circuit authority for the proposition that dismissal is "inappropriate unless a court finds there is 'no set of facts consistent with the pleadings under which the plaintiff could obtain relief.'" *Id.* (quoting *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006)).

*McMillan* and its "no set of facts" language is no longer good law. *See Twombly*, 127 S. Ct. at 1969 (the "'no set of facts' language has been questioned, criticized, and explained away long enough" and "is best forgotten"). Now, plaintiffs' right to relief under the CLRA must rise above a mere "speculative level." *Id.* at 1965. Plaintiffs must allege (but have not) "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Because plaintiffs do not allege that they received any "tangential services," the Court should dismiss their CLRA claim.

## VI. Plaintiffs' Allegations Of Receipt Of Fraudulent Transfers Are Insufficient.

Plaintiffs' single new claim against Arnall alleges that he received fraudulent transfers in violation of the California Uniform Fraudulent Transfer Act, California Civil Code §§3439.01 *et seq.* (the "UFTA"), (Complt. Count XXVII). To succeed on this claim, plaintiffs must allege "the circumstances surrounding the elements of this statutory cause of action with sufficient particularity to satisfy Rule 9(b)." *See General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997).

A transfer is ***actually*** fraudulent where it is made "with the actual intent to hinder, delay, or defraud any creditor." Cal. Civ. Code § 3439.04(a)(1). To substantiate this claim, plaintiffs simply mirror the statutory language by alleging that assets "were transferred to Arnall with the actual intent to hinder, delay or defraud the Plaintiffs' in this action." (Complt. ¶ 446.)

A transfer is ***constructively*** fraudulent where it is made without "reasonably equivalent value in exchange for the transfer" *and* the transferor either (a) "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or (b) "[i]ntended to incur, or believed or reasonably should have believed that he or she would incur debts beyond his or her ability to pay as they became due." *Id*. §3439.04(a)(2)(A)-(B). Again, plaintiffs merely regurgitate the statutory language of California Civil Code § 3439.04(b). (Complt. ¶¶ 447-450 (alleging, among other things, that the assets transferred to Arnall exceeded the "value of any services provided by Arnall" and that the "Ameriquest entities did not obtain reasonably equivalent value in exchange for the assets").)

Plaintiffs' allegations are woefully deficient under either theory. *General Electric Capital* instructs that these claims must be supported by particular allegations describing, among other things, "the date and the conditions" of the alleged transfers, and "a description of the events surrounding the defendant's conveyance . . . for the purpose of defrauding and for delaying the collection of payment by plaintiff." *General Electric Capital Corp.*, 128 F.3d at 1079-80.

Here, to describe the alleged transfers, plaintiffs plead "on information and belief" only that "Arnall personally obtained assets of the Ameriquest entities in the form of salary or other compensation derived from the Ameriquest entities improper conduct." (Complt. ¶ 103.) These

allegations fail unless plaintiffs plead the basis for their beliefs, which they wholly failed to do. *See Uni\*Quality, Inc.*, 974 F.2d at 924.

Further, plaintiffs provide no indication whatsoever of *when* the transfers were made to Arnall, nor do they describe their conditions, such as their amount or which one of the six Ameriquest Entities made the transfers to Arnall. Plaintiffs' allegations are exactly the type of "bare bones allegations" that courts have rejected even before *Twombly*. *See Helms v. Arboleda* (*In re Arboleda*), 224 B.R. 640, 650 (Bankr. N.D. Ill. 1998) (dismissing all fraudulent transfer claims where plaintiff "failed to specify the precise what, when, where and how of the alleged fraudulent transfers."). *See also Chochos v. Norkus* (*In re Chochos*), 325 B.R. 780, 783 (Bankr. N.D. Ind. 2005) (applying *General Elec. Capital Corp.* and dismissing fraudulent transfer claims where plaintiff "simply presume[d] that there were such transfers" but failed to identify them "in any fashion whatsoever."). They certainly are unacceptable afterward—particularly when held to the even more exacting standards of Rule 9(b).

## VII. Certain Of Plaintiffs' Claims Are Time-Barred.

### A. The Applicable Statutes Of Limitations Bar Certain Claims.

Plaintiffs waited until June 18, 2007, nearly three years after this litigation began, before seeking leave to add Arnall as a defendant. Plaintiffs' allegations, including the dates on which their loans closed, show that most claims are time barred. *See Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) (plaintiff can "plead itself out of court" by pleading "facts that show its suit [is] barred by a statute of limitations").

For example, RESPA claims must be brought within **one year** of the alleged violation. 12 U.S.C. § 2614. These claims accrue on the date the loan closes. *Thomas v. Ocwen Federal Bank FSB*, 2002 WL 99737, \*2 (N.D. Ill. Jan. 25, 2002). Because none of the plaintiffs closed their loans within one year of the plaintiffs' motion seeking to amend the complaint, their claims

for RESPA violations are time barred as against Arnall, and Count IV should be dismissed with prejudice.

Likewise, under TILA, damages claims for failure to honor a request to rescind a loan must be brought within *one year* of the alleged violation. *See* 15 U.S.C. § 1640(e). Accordingly, plaintiffs' claims for damages under TILA (Count XIV) arising from Arnall's alleged failure to honor their notices of rescission are barred as against all but a few plaintiffs.[19]

All of the following types of claims must be brought within *two years* from the date that they accrued:

- ECOA violations (Count II), *see* 15 U.S.C. § 1691e(f);

- FCRA violations (Count III), *see* 15 U.S.C. § 1681p; *TRW, Inc. v. Andrews*, 534 U.S. 19, 28 (2001); *Rylewicz v. Beaton Servs., Ltd.*, 888 F.2d 1175, 1181 (7th Cir. 1989);

- unjust enrichment claims (Count V), *see* Cal. Code Civ. P. § 339;

- breach of oral contract claims (Count VII (alleging defendants formed "implied, oral, and/or unilateral contracts")), *see* Cal. Code Civ. P. § 339; *Parker v. Walker*, 5 Cal. App.4th 1173, 1189-1191 (Ct. App. 1992);

- negligent misrepresentation claims (Count XVI), *see Hydro-Mill Co., Inc. v. Hayward Tilton and Rolapp Ins. Assocs., Inc.*, 115Cal. App.4th, 1145, 1149 (Ct. App. 2004);

- Fair Housing Act claims (Count XVIII), *see* 42 U.S.C. § 3613(a)(1)(A);

- negligence claims (Count XX), *see Smith v. SHN Consulting Engineers & Geologists, Inc.*, 89 Cal. App.4th 638 (Ct. App. 2001);

- accounting claims (Count XXVI); Cal. Code Civ. P. § 339.

---

[19] This claim is barred as against all plaintiffs except: Timothy and Francis Adamowicz (Complt. ¶ 344 (alleging rescission on August 29, 2006)); Christopher Bourassa (Complt. ¶ 345 (alleging rescission on August 22, 2006)); Venitra Brown (Complt. ¶ 346 (alleging rescission on October 20, 2006)); Edrick and Debra Centeno (Complt. ¶ 347 (alleging rescission on October 10, 2006)); Vaughn DeBold (Complt. ¶ 348 (alleging rescission on July 18, 2006)); Gregory and Marcell DeMeo (Complt. ¶ 349 (alleging rescission on November 20, 2006)); Glen Powell (Complt. ¶ 359 (alleging rescission on June 21, 2006)); Michele Powell (Complt. ¶ 360 (alleging rescission on November 17, 2006)); Michael Russo (Complt. ¶ 361 (alleging rescission on August 31, 2006)); Ventola and Steven Bourassa (Complt. ¶ 368 (alleging rescission on November 30, 2006)).

Therefore, these claims are time barred by any plaintiff who closed his or her loan more than two years before plaintiffs sought to amend the Complaint.[20]

The following types of claims must be brought within **three years** after they have accrued:

- California Consumer Legal Remedies Act ("CLRA") violations (Count XII), *see* Cal. Code Civ. P. § 1783;

- claims for rescission under TILA (Count XIV), *see* 15 U.S.C. § 1635(f);

- common law fraud claims (Count XV), *see* Cal. Code Civ. P. § 338(d);

- Unruh Act violations (Count XIX), *see* Cal. Code Civ. P. § 338(a); *see also Kramer v. Regents of the Univ. of Cal.*, 81 F. Supp. 2d 972, 977-78 (N.D. Cal. 1999).

Therefore, *all* of these claims are barred as against *all* named plaintiffs except for those who sought to sue Arnall less than three years after closing their loans.[21]

---

[20] These claims are barred as against *all* named plaintiffs except the following: Barbara Ann Becker (Complt. ¶ 140 (alleging refinance on August 23, 2005)); Kerri Capasso (Complt. ¶ 147 (alleging refinance on August 3, 2005)); Mary Harless (Complt. ¶ 154 (alleging refinance on September 14, 2005)); Gregory and Marcell DeMeo (Complt. ¶ 179 (alleging refinance on August 24, 2005)); Scott Ventol and Steven Bourassa (Complt. ¶ 191 (alleging refinance on September 23, 2005; and Joshua Wilgoren (Complt. ¶ 192 (alleging refinance on September 8, 2005)).

[21] These claims are barred against all plaintiffs except the following: Barbara Ann Becker (Complt. ¶ 140 (alleging refinance on August 23, 2005)); Johnnie Ross (Complt. ¶ 144 (alleging loan in September 2004)); Charles Meadow (Complt. ¶ 145 (alleging loan in March 2005)); Joseph and Nicole Riggins (Complt. ¶ 146 (alleging loan in March 2005)); Kerri Capasso (Complt. ¶ 147 (alleging refinance on August 3, 2005)); Craig and Michele D'Ambrogi (Complt. ¶ 151 (alleging refinance on May 6, 2004 and December 11, 2004)); Mary Harless (Complt. ¶ 154 (alleging refinance on September 14, 2005)); James and Jennifer Jewell (Complt. ¶ 155 (alleging refinance on June 21, 2005)); Richard Madroza (Complt. ¶ 161 (alleging refinance on November 5, 2004); David and Janet Wakefield (Complt. ¶ 165 (alleging loan on January 15, 2004 and April 2, 2004)); Steven Ungar (Complt. ¶ 169 (alleging loan on May 24, 2005)); Duval Naughton (Complt. ¶ 171 (alleging refinance on September 14, 2004)); Christopher Bourassa (Complt. ¶ 175 (alleging refinance on October 15, 2004); Edrick and Debra Centeno (Complt ¶ 177 (alleging refinance on September 23, 2004); Vaughn Debold (Complt. ¶ 178 (alleging refinance on November 24, 2004)); Gregory and Marcell DeMeo (Complt. ¶ 179 (alleging refinance on August 24, 2005)); Christoper Gabrielli (alleging refinance as late as May 12, 2005)); Patricia Masson (Complt. ¶ 184 (alleging refinance on April 23, 2005)); John and Kathleen O'Callaghan (Complt. ¶185 (alleging refinance on October 12, 2004)); Michael Russo (Complt. ¶ 188 (alleging refinance as of December 27, 2004)); Frank and Linda Shea (Complt. ¶ 190 (alleging refinance on July 7, 2004)); Scott Ventol and Steven Bourassa (Complt. ¶ 191 (alleging refinance on September 23, 2005; and Joshua Wilgoren (Complt. ¶ 192 (alleging refinance on September 8, 2005)).

The following types of claims must be brought within *four years* after they have accrued:

- breach of written contracts (Counts VI, VIII), *see* Cal. Code Civ. P. § 337;

- Unfair Practices Act claims (Count XI), *see* Cal. Bus. & Prof. Code § 17208;

- Florida Mortgage Lending Act claims (Count XVII) *see* F.S.A § 95.11(3)(f);

- Fraudulent Transfer Act claims (Count XXVII), *see* Cal. Civ. Code § 3439.09.

Therefore, *all* of these claims are barred as to *all* named plaintiffs who closed their loans four years or more before seeking to name Arnall as a defendant.[22]

### B. Plaintiffs Fail To Plead Facts That Would Toll The Applicable Statutes Of Limitations As Against Arnall.

Plaintiffs allege in a conclusory fashion that the statute of limitations should be tolled due to defendants' "fraudulent concealment" of the facts giving rise to the Complaint. (Complt. ¶ 248.) "Fraudulent concealment 'denotes efforts by the defendant—*above and beyond the wrongdoing upon which the plaintiff's claim is founded*—to prevent the plaintiff from suing in time.'" *Thomas*, 2002 WL 99737 at *3 (quoting *Cada v. Baxter Healthcare Corp*., 920 F.2d 446, 452 (7th Cir. 1990) (emphasis added)). Plaintiffs' allegations of fraudulent concealment must be pled with particularity. *Id.*

To support this theory, plaintiffs allege that defendants "conceal[ed] that they would not, despite promises, refinance loans." (Complt. ¶ 248.) But defendants' alleged promise to refinance loans was part of the underlying scheme that gave rise to plaintiffs' cause of action (not

---

[22] These claims are barred as against: George and Crisella Barber (Complt. ¶ 137, alleging refinance on January 15, 2003); Raymond and Rebecca Carlson (Complt. ¶ 148, alleging refinance on May 13, 2003); Robert and Debra Peabody (Complt. ¶ 150, alleging loan on September 5, 2001 and April 28, 2003); William and Kathryn Birkholz (Complt. ¶ 152, alleging refinance on July 21, 1999); the Dohertys (Complt. ¶ 153, alleging loan on December 24, 2002); Deborah Juillerat (Complt. ¶ 156, alleging refinance on January 24, 2002); Nona and Albert Knox (Complt. ¶ 158, alleging refinance "in or around 2002"); Maria Torres (Complt. ¶ 159, alleging refinance on December 21, 2002); Harriet Holder (Complt. ¶ 167, alleging refinance on November 24, 2003 and May 12, 2004); Cheryl Williams (Complt. ¶ 170, alleging refinance on May 20, 2003), and Kenneth Sawyer (Complt. ¶ 189, alleging refinance on June 9, 2003).

a separate act or scheme of concealment) and, therefore, cannot be a basis for tolling the statute of limitations. (*See, e.g.,* Complt. ¶ 110 ("Ameriquest further uses borrowers' concern about loan terms in the initial transaction as an opportunity to bait the hook for a second loan, by promising an early refinancing on better terms."). Even if it were not, plaintiffs fail to plead that *Arnall* made any such promises after plaintiffs discovered their claims against the Ameriquest Entities. Moreover, plaintiffs do not claim they relied on such promises in failing to sue Arnall earlier.

Alternatively, plaintiffs allege that the limitations period should be equitably tolled because defendants "have been under a continuing duty to disclose the true character, nature, and quality of their loan origination and servicing practices." (Comptl. ¶ 249.) "Federal courts have typically extended equitable relief only sparingly," however. *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990). Courts have applied equitable tolling only where the claimant actively pursued his remedies but filed a defective pleading within the limitations period, or where an adversary "tricked" the complainant into allowing the deadline to pass. *Id.*

By casting this allegation as an equitable matter, plaintiffs try to avoid the result required under the doctrine of fraudulent concealment, which provides that statutes such as TILA will only be tolled if the continuing nondisclosure was something *other than* what was required to be disclosed under TILA. *See Thomas*, 2002 WL 99737 at*3 ("fraudulent concealment exception only applies to toll TILA statute of limitations when there is fraudulent conduct by the defendant beyond the nondisclosure itself."). In any event, plaintiffs fail to plead any facts supporting the conclusion that *Arnall* had any duty to disclose the alleged "true character, nature, and quality" of plaintiffs' loans. Nor do plaintiffs plead any facts suggesting that Arnall "tricked" plaintiffs to

dissuade them from suing him after they sued the other Ameriquest Entities. Therefore, the Court should reject plaintiffs' equitable tolling allegations as well.

## <u>CONCLUSION</u>

For all of the foregoing reasons, each of plaintiffs' claims should be dismissed with prejudice as against Arnall.

Dated: September 21, 2007              Respectfully Submitted,

                                         ROLAND ARNALL

                                         By     /s/ Alan N. Salpeter         
                                                One of his attorneys

Alan N. Salpeter, Esq.
Vincent P. Schmeltz III, Esq.
Therese King Nohos, Esq.
Bradley I. Schecter, Esq.
LEBOEUF, LAMB, GREENE & MACRAE LLP
180 North Stetson, Suite 3700
Two Prudential Plaza
Chicago, Illinois 60601-6710
Telephone: 312-794-8000
Facsimile: 312-794-8100

## CERTIFICATE OF SERVICE

Alan N. Salpeter, an attorney, hereby certifies that on this 21st day of September, 2007, a true and correct copy of the foregoing document, **ROLAND ARNALL'S MOTION TO DISMISS BORROWERS' FIRST AMENDED CONSLIDATED CLASS ACTION COMPLAINT**, was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By      /s/ Alan N. Salpeter
       Alan N. Salpeter