**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> (Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO DOCKET NO. 1044 | |

**AMERIQUEST MORTGAGE COMPANY'S OPPOSITION**
**TO EQUIFAX'S MOTION TO DISMISS**

**I.   INTRODUCTION**

This Court should deny the motion of Third Party Defendant Equifax Information Services LLC, successor in interest to Equifax Credit Information Services, Inc. and Equifax Credit Marketing Services (collectively, "Equifax") to dismiss Ameriquest Mortgage Company's ("Ameriquest") Third Party Complaint ("Complaint") because:

(1)   The Complaint alleges *multiple* contracts governing the relationship between Equifax and Ameriquest (Complt. ¶ 26), not just the December 15, 2000 Agreement ("2000 Agreement") upon which Equifax bases its motion to dismiss. Because the Court has to take the Complaint's allegations as true, the Court cannot dismiss it based upon the disclaimers and exculpatory clauses in the lone contract Equifax has attached to its Motion or the Georgia case law purportedly incorporated by that contract.

(2)   The Complaint alleges that Equifax is liable for breach of contract, negligence, negligent misrepresentation, equitable indemnity and contribution based, at least in part, on its violation of duties that the Fair Credit Reporting Act ("FCRA"), case law, and federal common law impose on credit reporting agencies like Equifax. These duties are wholly separate from the

- 1 -

contractual relationship between Ameriquest and Equifax, and Equifax cannot avoid them by relying on Ameriquest's representations. Furthermore, in light of the policy behind these duties, even if the Court considers the 2000 Agreement, provisions in the contract that purport to avoid or delegate such duties are void as against public policy.

(3) Finally, because it would undermine FCRA to allow credit reporting agencies like Equifax to avoid liability by hiding behind lenders like Ameriquest, federal common law can and should impose an obligation on Equifax to indemnify or contribute to any judgment against Ameriquest in this matter. The cases Equifax cites to the contrary are inapposite and non-binding; they do not require dismissal.

**II.     THE COMPLAINT ALLEGES THE EXISTENCE OF SEVERAL CONTRACTS BETWEEN AMERIQUEST AND EQUIFAX AND, ACCORDINGLY, THE COURT CANNOT DISMISS BASED ON THE SINGLE AGREEMENT THAT EQUIFAX HAS ATTACHED TO ITS MOTION**

Equifax bases its motion to dismiss on the 2000 Agreement, which it has attached to its motion to dismiss. However, Equifax " cannot … challenge the sufficiency of [Ameriquest's] claims simply by attaching documents that contain factual assertions contrary to those in the complaint." *Tibor Mach. Products, Inc. v. Freudenberg-NOK General Partnership*, 967 F. Supp. 1006, 1014 (N.D. Il. 1997). Indeed, "[i]n ruling on [a motion to dismiss], the [C]ourt [must] accept as true all well-pleaded facts alleged in the complaint and draw[] all reasonable inferences from those facts in favor of the plaintiff." *520 S. Michigan Ave. Associates, Ltd. v. Shannon*, 2007 WL 2728757, *1 (N.D. Ill. 2007). Ameriquest's Complaint alleges *multiple* contracts governing the parties' relationship and setting standards relating to prescreening. (Complt. ¶ 26.) Because it is reasonable to infer that the multiple agreements between the parties contained terms that altered or superseded those in the 2000 Agreement—or at least not appropriate to disregard the allegations of multiple agreements—the Court cannot dismiss the Complaint based on the 2000 Agreement.[1]

---

[1] Because the Court cannot take Equifax's representation that the 2000 Agreement controls the parties' relationship as true, it cannot apply Georgia law, as Equifax has requested, or reach the assumption that the merger clause in the 2000 Agreement prevents any of the other contracts from supplementing or superseding its terms.

Ameriquest's allegations—that its relationship with Equifax is governed by a series of oral and written contracts—are sufficient to put Equifax on notice of its contract claims. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (stating all that is required to state a claim in a complaint filed in a federal court is a short statement of the legal claim); *See also Venture Associates Corp.*, 987 F.2d at 431. The Court should allow this case to proceed to factual discovery in order to flesh out the details of those agreements and which states' laws apply. Accordingly, Ameriquest's contract claims against Equifax (claims Three and Four) cannot be dismissed.

### III. EQUIFAX HAS AN INDEPENDENT DUTY THAT IT CANNOT AVOID THROUGH CONTRACTUAL LIMITATIONS

Even if the Court considers the 2000 Agreement, Equifax cannot escape its obligation to take reasonable steps to ensure that the entities to which it disburses credit information have a permissible purpose for using such information. *See* 15 U.S.C. Section 1681e; *In re Matter of Trans Union Corporation*, Docket No. 9255, 2000 WL 257766, p. 1 and 2 (Federal Trade Commission February 10, 2000); *In re Trans Union Privacy Litigation*, 211 F.R.D. 328, 336-37 (N.D. Ill. 2002); *Pintos v. Pacific Creditors Association, et. al.* (Docket No. 04-17485), 2007 U.S. App. LEXIS 22519 (9th Cir. 2007). Equifax cannot contractually shift this independent duty to Ameriquest. *Id.* Moreover, as detailed below, these disclaimers and exculpatory provisions violate public policy and are void.

#### A. Equifax Cannot Use the Contract To Avoid Its Obligations to Comply with FCRA.

As alleged in the Complaint, Equifax is a consumer reporting agency. (Complt. ¶ 26). Accordingly, Equifax is responsible for ensuring proper use of consumer credit reports:

> Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 605 [15 USCS Section 1681b]. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. . . No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 604.

15 U.S.C. Section 1681b; *see also In re Matter of Trans Union Corporation*, Docket No. 9255, 2000 WL 257766, p. 1 and 2 (Federal Trade Commission February 10, 2000) (The FTC states that credit reporting agencies must have (1) "reason to believe that [the prescreen purchaser] intends to use the consumer report for purposes authorized under the FCRA;" and (2) "reasonable procedures to ensure that the [credit reporting agency] only furnish[es] consumer reports for the purposes set forth in" FCRA.") *Id.*

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 127 S. Ct. 2201, 2205 (2007). As the court in *Kudlicki* found, this purpose includes "ensur[ing] 'that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'" 2006 WL 1308617, *3 (N.D. Ill. May 10, 2006). Within this framework, consumer reporting agencies have "grave responsibilities" that they must exercise with "fairness, impartiality, and a respect for the consumer's right to privacy." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004). Accordingly, FCRA allows consumer reporting agencies to "furnish ... consumer report[s]" because "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." *Pintos v. Pacific Creditors Ass'n*, 2007 WL 2743502, *2 (9th Cir. Sept. 21, 2007).

> 1. **Ameriquest Has Alleged that, Assuming the Non-Borrower Plaintiffs' Allegations are Correct, Equifax Did Not Have Reasonable Grounds for Believing that the Information it Furnished Would Be Used for a Permissible Purpose.**

A central factual issue that Ameriquest's Complaint raises is whether Equifax had reasonable grounds for believing that the consumer report information it furnished to Ameriquest would be used for a permissible purpose under FCRA [pursuant to 15 U.S.C. Section 1681b]. Ameriquest has alleged that Equifax was aware of its obligations under FCRA, knew the contents of Ameriquest's prescreened firm offer letters and how Ameriquest would use the credit

report information Equifax provided, and at all times had the ability and opportunity to review, comment and approve Ameriquest's firm offer letters in order to satisfy itself that the letters complied with FCRA.  (*See* Complt. ¶¶ 28-30; 33-35].  Put simply, Equifax had access to and reviewed Ameriquest's prescreened firm offer letters that are at issue in this case.[2]

Moreover, Equifax was fully aware of the statutory and case law in this area [Complt. ¶¶ 28, 33], including (but not limited to) the requirements regarding firm offer/prescreen letters set forth in *Cole v. U.S. Capital*, 389 F.3d 719 (7th Cir. 2004).   Assuming that the Non-Borrower Plaintiffs are correct that Ameriquest's firm offer letters violate FCRA because they allegedly violate the *Cole* requirements that something of value must be present on the face of the letter (*See* Non-Borrower Complt., Docket #323), then by virtue of its knowledge of, review of, and opportunity to review Ameriquest's firm offer letters, Equifax would have, at a minimum, been on notice of a potential FCRA violation.  Notwithstanding this knowledge and/or notice, Equifax continued to provide Ameriquest with consumer report information to send its firm offer letters (ostensibly so that Equifax could continue to receive the millions of dollars in fees Ameriquest was paying it for the information).  A factual question exists as to whether Equifax had reasonable grounds for believing its consumer report information would be used for a permissible purpose under these circumstances.

### 2. Equifax's Cannot Avoid Liability Based Upon Ameriquest's Certification of a Permissible Purpose.

Equifax argues that the exculpatory and disclaimer language in the 2000 Agreement, whereby Ameriquest certifies compliance with FCRA, satisfies Equifax's obligations under 15 U.S.C. Section 1681e and gives it reasonable grounds for believing that Ameriquest had a permissible purpose for using the credit report information Equifax provided.  In other words, Equifax contends that it can turn a blind-eye to its obligations under FCRA by simply inserting provisions into a contract (which it drafted) that shift all of Equifax's legal duties under FCRA to

---

[2]   Indeed, even the 2000 Agreement that Equifax attaches to its motion confirms that Equifax had the right to audit Ameriquest's firm offer letters to confirm compliance with the permissible purpose requirements of FCRA.  [*See* 2000 Agreement, p. 2, section I(7)].

BN 1398027v1

Ameriquest. This argument is wrong. As the Court in *In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, 337 (N.D. Ill. September 10, 2002) states, "[a]s is evident from the statute itself, receipt of the certification alone is not sufficient to establish that Trans Union has 'maintained reasonable procedures.' Some reasonable investigation is also required."

Indeed, the Ninth Circuit recently considered this same argument and concluded that 15 U.S.C. Section 1681e requires a credit reporting agency to do more than simply obtain a certification from its subscribers that they will comply with the law. *Pintos*, 2007 U.S. App. LEXIS 22519 at *14-15. As the Ninth Circuit states in *Pintos*,

> [a] credit reporting agency may be liable for its subscriber's violation when the agency fails to comply with the statutory obligations imposed by 15 U.S.C. Section 1681e. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Experian argues that because PCA gave it a 'blanket certification' – a written promise to use Experian's credit reports only for permissible purposes – the agency satisfied its statutory obligations under Section 1681e. We disagree.
>
> Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law. After prospective subscribers 'certify the purposes for which [credit] information is sought, and certify that the information will be used for no other purpose,' the reporting agency must make a 'reasonable effort' to verify the certifications and ***may not furnish reports if 'reasonable grounds' exist to believe that reports will be used impermissibly***. 15 U.S.C. Section 1681e(a). Under the plain terms of Section 1681e(a), a subscriber's certification cannot absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting impermissible use. Blanket certification cannot eliminate all genuine issues of material fact with regard to Experian's liability. *Id.* [emphasis added].

Here, the Complaint cannot be dismissed because Ameriquest has alleged that notwithstanding any certification, Equifax had reasonable grounds for suspecting impermissible use. Thus, there is a factual issue regarding whether Equifax satisfied its obligations under FCRA. If, as Ameriquest alleges, Equifax did not, then Equifax is subject to liability to Ameriquest on the causes of action contained in its Complaint.

**B.     The Exculpatory and Disclaimer Language Is Void As Against Public Policy**

In any event, the exculpatory and disclaimer clauses upon which Equifax relies are void and unenforceable as against public policy. In FCRA, the United States Congress has articulated the public policy and desire to protect consumer credit information and has charged the consumer reporting agencies with protecting the consumer's right to privacy. 15 U.S.C. Section 1681(a)(3) and (4); 15 U.S.C. Section 1681e. Allowing Equifax to rely upon the exculpatory language to avoid potential liability would cause injury to the public interest because it would enable Equifax to shirk its responsibility under FCRA to protect consumer credit information. *See Barton v. Peterson*, 733 F.Supp. 1482, 1488-89 (N.D. Ga. 1990) (cited in Motion to Dismiss).

*Barton* holds that a contract is void on public policy grounds when:

(1)     the contract concerns a business of a type generally thought suitable for public regulation;

(2)     the party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public;

(3)     the party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain establish standards;

(4)     as a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services;

(5)     in exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and it makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence; and

(6)     as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Barton v. Peterson,* 733 F.Supp. 1482, 1488-89.

BN 1398027v1

Under this test, the exculpatory and disclaimer provisions Equifax cites are void since: (1) the services in the contract are regulated by the FCRA (*See* 15 U.S.C. Section 1681e; 1681b); (2) the services, as recognized by Congress and the FTC, are a matter of practical necessity (*See In the Matter of Trans Union Corporation*, Docket No. 9255, 2000 WL 257766, p. 2 (Federal Trade Commission February 10, 2000)); (3) Equifax is willing to perform the services for those within certain established standards; (4) Equifax has a decisive advantage of bargaining strength since it is one of only three credit reporting agencies from which information of this type can be obtained; (5) Equifax's contract is a standard adhesion contract; and (6) as alleged in the Complaint, Ameriquest was subjected to potential liability in the Non-Borrower Complaint by virtue of Equifax's carelessness in review of Ameriquest's firm offer letters for compliance with FCRA. Accordingly, Equifax may not rely upon the exculpatory and disclaimer provisions in the 2000 Agreement because such provisions violate public policy. At a minimum, these are factual issues regarding the enforceability of these contract terms.

Indeed, Equifax's position, both as stated in its Motion, and in the 2000 Agreement (assuming it is applicable at all), is that it need not comply with its obligations under FCRA Section 1681e, and did not need to review Ameriquest's firm offer letters for a "permissible purpose," because it had shifted that responsibility to Ameriquest by virtue of the contract. This position alone establishes that the contract language is void as against public policy. Congress squarely placed the responsibility upon the credit reporting agencies to refrain from giving credit reporting information unless they have reasonable grounds for believing that such information will be used for a permissible purpose. 15 U.S.C. Section 1681e. *Pintos*, 2007 U.S. App. LEXIS 22519 at *14-15. In so doing, Congress certainly did not mean to allow credit reporting agencies to ignore the language of the prescreen firm offer letters it received from purchasers of prescreened lists simply because those purchasers signed an adhesion contract (drafted by the credit reporting agencies) certifying a permissible purpose. *Id.*

In *In the Matter of Trans Union Corporation*, the FTC specifically held that a credit reporting agency must have "reason to believe that [the prescreen purchaser] intends to use the consumer report for purposes authorized under" the FCRA. *In the Matter of Trans Union Corporation*, Docket No. 9255, 2000 WL 257766, p. 1 (Federal Trade Commission February 10, 2000). In so holding, the FTC stated, "one of the FCRA's principal goals was to protect the privacy of individuals whose sensitive credit and financial data are collected, used, reviewed and transmitted by CRAs." *Id.* at 2. For this reason, Congress "provide[d] safeguards designed to protect the confidentiality of these data" and "CRAs [must] maintain reasonable procedures to ensure that they only furnish consumer reports for the purposes set forth in" the FCRA. *Id.* Further, as set forth above, the Ninth Circuit has recently reaffirmed that a credit reporting agency must make a reasonable effort to verify certifications provided by subscribers, and may not furnish reports to subscribers if reasonable grounds exist to believe that reports will be used impermissibly. *Pintos*, 2007 U.S. App. LEXIS 22519 at *14-15.

Equifax's exculpatory and disclaimer provisions are an impermissible attempt to circumvent the duty imposed upon credit reporting agencies by the FCRA. Public policy (as articulated by Congress and the FTC) requires the credit reporting agencies to maintain reasonable procedures to ensure compliance with the FCRA. The exculpatory and disclaimer provisions upon which Equifax relies are void as against public policy because they improperly allow Equifax to draft away its statutory obligations.

**IV. FEDERAL COMMON LAW REQUIRES THAT CREDIT REPORTING COMPANIES LIKE EQUIFAX INDEMNIFY OR CONTRIBUTE TO A JUDGMENT AGAINST A LENDER LIKE AMERIQUEST**

In arguing that Ameriquest cannot maintain claims against it for equitable indemnity/implied indemnity and contribution, Equifax ignores its independent statutory obligations under FCRA—duties it owes to consumers and Ameriquest alike. These duties distinguish this case from *Kudlicki v. MDMA, Inc.*, No. 05 C 2589, 2006 WL 1308617 (N.D. Ill. May 10, 2006) and the other cases Equifax cites.[3] Because Equifax is the type of entity at which

---

[3] In *Kudlicki*, the third party defendant was an advertising agency, not a credit reporting agency. Indeed, none of

FCRA is primarily aimed, it would undermine the purposes and intent of FCRA unless credit reporting agencies like Equifax are required to indemnify, or contribute to a judgment against, lenders like Ameriquest that rely on their expertise.

Congress intended that FCRA, through the duties it imposes on credit reporting agencies (discussed above), achieve an important "balance between consumer privacy and the needs of a modern, credit-driven economy." *Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1045-1046 (7th Cir. 2005). Congress also expressed its plain interest in making credit reporting agencies responsible for maintaining this balance. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004) (discussing "grave responsibility" that FCRA places on credit reporting agencies). Unlike in *Kudlicki,* these policies, which are "found in the statutory framework of the FCRA", represent a significant federal interest that must be protected—even if it requires the extension of federal common law to do so. *See Kudlicki*, *supra*, at *12. Accordingly, in order to ensure that FCRA has the teeth Congress intended, then Equifax, having reviewed Ameriquest's firm-offer letters yet continued to provide Ameriquest with prescreened lists, should bear at least some liability in the event Ameriquest is found liable in this case.

V. **AMERIQUEST'S TORT CLAIMS ALSO ARE PROPERLY PLED BECAUSE THEY ALLEGE THAT EQUIFAX OWED A DUTY INDEPENDENT OF THE CONTRACT[4]**

"'It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him.'" *Brookview Holdings, LLC v. Suarez et al.*, 285 Ga. App. 90, 94 (March 29, 2007); *see also Allen v. Harsfield Co.*, 183 S.E. 821 (1936) (a legal duty can arise not only by operation of law but by a contract between the parties). *Id.*

---

the federal cases deciding the question of whether indemnity and contribution are available in a FCRA case involve a credit reporting agency that has independent statutory obligations under FCRA. Further, none of the cases that Equifax cites are Circuit court decisions.

[4] As a preliminary matter, the cases to which Equifax cites regarding application of conflicts of law rules are irrelevant since, as set forth above, it is unclear which state's law applies. An inquiry is needed to determine which state(s)' laws apply to each agreement, how those laws differ, and which are properly applicable to the case at hand. However, for purposes of this section of its Brief, Ameriquest adopts Equifax's assumption that Georgia law applies.

In the case at hand, Ameriquest has sufficiently pled claims sounding both in contract and in tort.  Ameriquest alleges that Equifax breached the multiple agreements it had with Ameriquest by, *inter alia*, failing to review Ameriquest's prescreen/firm offer letters for FCRA compliance as Equifax represented it would in connection with its provision of credit report information for use in Ameriquest's prescreening program.  [Complaint, para. 28-30; 32-35; 50-63].

Further, Ameriquest's allegations meet the requirement of *Brookview Holdings, LLC*, that tort liability may be established, in addition to contractual liability, where the defendant's liability arises from breach of a duty independent of the contract.  285 Ga.App. at 94.  Here, Equifax's liability arises not only from breach of contract, but also from its breach of a duty "independent of contract."  Namely, Equifax breached its separate and distinct duty under the FCRA and case law (cited above) to exercise reasonable care when disseminating consumer information to ensure that the parties (like Ameriquest) who receive such information are complying with FCRA's permissible purpose requirements.  As noted above, if the Non-Borrower Plaintiffs' claims are proven, then Equifax breached this separate duty when it failed to review Ameriquest's firm offer letters, continued to provide Ameriquest with prescreened consumer lists, allowed Ameriquest to use those lists to send the firm offer letters, and continued to accept payment from Ameriquest for such lists, notwithstanding notice that the letters were allegedly not FCRA compliant.  Accordingly, Ameriquest can recover in both contract and tort.

Equifax improperly relies on a number of cases that do not apply to the instant facts.   For example, in *East River Steamship Corp v. TransAmerica Delaval, Inc.*, 476 U.S. 858 (1986), recovery was limited to contract damages since ***only the defective product itself was damaged***. *East River Steamship* and the cases like it do not apply to Ameriquest's claims since Ameriquest is claiming damages beyond those caused to the product itself.  Stated differently, Ameriquest does not allege that the prescreen consumer information was damaged or defective and, therefore, it should recover in tort.

BN 1398027v1

Since Ameriquest can establish both its contract and tort claims, and since Equifax's cited case law is unpersuasive, Ameriquest's tort claims are not barred as a matter of law and the Court should deny Equifax's Motion.

## VI. AMERIQUEST IS ENTITLED TO PURSUE ITS RESCISSION CLAIM

While Equifax claims Georgia law precludes Ameriquest's claim for rescission, as noted above, there are multiple agreements between the parties that are governed by different choice of law provisions that designate the application of different state law. [*See* Section II, above.] Accordingly, the sufficiency of this claim may not be determined under Georgia law at this stage.

Respectfully Submitted,

Dated: October 1, 2007

By: /s/ Bernard E. LeSage
*Attorneys for Ameriquest Mortgage Company*

Bernard E. LeSage
Sarah K. Andrus
BUCHALTER NEMER,
a Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Phone: (213) 891-0700
Facsimile: (213) 896-0400

## **CERTIFICATE OF SERVICE**

I, Bernard E, LeSage, hereby certify that on this 1st day of October 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                By:    /s/  Bernard E. LeSage

BN 1398027v1