**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> (Centralized before The Honorable Marvin E. Aspen) |

**OPPOSITION TO BORROWERS' MOTION TO SEVER OR,**
**ALTERNATIVELY, TO ORDER SEPARATE TRIALS OF DEFENDANTS'**
**CONSOLIDATED THIRD-PARTY COMPLAINT**

## I.      INTRODUCTION

Defendants Ameriquest Mortgage Company ("Ameriquest") and Argent Mortgage

Company LLC ("Argent") (collectively, "Defendants") respectfully submit the following

opposition to the Borrower Plaintiffs' Motion to Sever Pursuant to FRCP Rule 21 or,

Alternatively, to Order Separate Trials Pursuant to FRCP Rule 42(b) of Defendants'

Consolidated Third-Party Complaint (Docket No. 1049, the "Motion").

As set forth in detail below, the Motion should be denied for several reasons.  First and

foremost, the Court has *already ruled on this matter*, on March 16, 2007, when it ordered

Defendants to file their Third-Party Complaint.  The Borrower Plaintiffs did not object to this

ruling at the time, and have no good cause to challenge it now.  Second, the claims alleged by

Defendants in their Third-Party Complaint arise from the exact same facts and circumstances,

and will involve similar discovery, as the claims alleged by the Borrowers in their Class Action.

As such, considerations of judicial economy weigh heavily in favor of not severing the Third-

Party Complaint.  Third, the proposed severance will directly undermine the very purpose of this

MDL proceeding, namely, to resolve *all* of the claims which have been referred to the MDL in one consolidated proceeding, rather than piecemeal in courts across the country. Finally, the Motion is opposed by the majority of plaintiffs in this MDL proceeding—those who have opted-out of the Borrowers' Class Action. Counsel for most of these plaintiffs have stipulated to the filing of the Third-Party Complaint, and even those who have not stipulated have not joined in the Motion.

Accordingly, Defendants respectfully request that the Motion be denied in its entirety.

## II.    BACKGROUND FACTS

Pursuant to an Order of this Court, the Borrower Plaintiffs—consisting of 84 individual borrowers—filed their Consolidated Class Action Complaint in December 2006, and filed a First Amended Complaint on or about June 15, 2007.[1]  The Class Action Complaint alleges, among other things, that Ameriquest failed to make various disclosures which are required by state and federal law to the Borrower Plaintiffs in connection with their loans. The Class Action Complaint further alleges that both Ameriquest and Argent made material misrepresentations to the Borrowers in connection with the origination of loans. These allegations include, for example:

> - That Defendants failed to "deliver copies of various loan papers, including required disclosures under the Truth in Lending Act, until after the loan is consummated." (*See* Class Action Complaint, at ¶ 112).
>
> - That there were various deficiencies with respect to the Notice of Right to Cancel that Defendants provided to each borrower pursuant to the Truth in Lending Act ("TILA"), such as not providing enough copies of the Notice and not correctly filling out the final date on which the borrower could exercise his or her statutory right to cancel. (*Id.* at ¶ 256).

---

[1] The Motion confusingly refers to the First Amended Class Action Complaint which was filed in June 2007 but attaches, as Exhibit A, the original Class Action Complaint. For the sake of clarity, all references herein will be to the First Amended Class Action Complaint.

- That Defendants had a "practice of removing certain documents, such as those relating to prepayment penalty, before presenting the documents to the customer for signing." (*Id.* at ¶ 114).

- That Defendants have engaged in a pattern of "misrepresenting or concealing loan terms" from the Borrowers. (*Id.* at ¶ 109).

These, and similar, allegations are contained in the majority of the 295 individual cases currently pending in this MDL proceeding, in which the plaintiffs have decided to "opt-out" of participation in the Borrowers' Class Action (the "Opt-Out Plaintiffs").[2]

Ameriquest denies that its disclosures to any of the Borrower Plaintiffs (or the Opt-Out Plaintiffs) were defective, or violated any state or federal law. Nonetheless, in the event that a trier-of-fact ultimately finds that any disclosures made to any of the plaintiffs were deficient, Ameriquest is entitled to complete indemnity from those individuals and entities that Ameriquest hired to close the loans in question. Specifically, during the time period at issue in the Borrowers' Class Action and the Opt-Out Complaints, Ameriquest closed the substantial majority of its loans using third-party title companies or, in certain states whose laws required it, attorneys. These entities—collectively referred to herein as the "Title Defendants"—were paid by Ameriquest to provide the disclosures required by TILA (and other state and federal laws) to Ameriquest's borrowers. (Third-Party Complaint, at ¶ 8). Each of the Title Defendants represented to Ameriquest that they were qualified to close loans, and were knowledgeable about the required disclosures including the Notice of Right to Cancel.[3] Accordingly, in the event that a Notice of Right to Cancel was not properly completed and delivered to the borrower, the Title Defendant who was hired by Ameriquest to perform this task breached its duty to Ameriquest,

---

[2] The instant Motion was brought *only* on behalf of the Borrower Plaintiffs, and relates only to the Borrowers' Class Action Complaint. As discussed below, the Opt-Out Plaintiffs do not support the Motion and, to the contrary, have stipulated to the filing of the Third-Party Complaint.

[3] In addition, in certain states such as Connecticut, state law required that the Title Defendants actually be licensed to close loans.

and is required to indemnify Ameriquest for any damages suffered by Ameriquest in connection therewith. (*Id.* at ¶ 10).

With respect to Argent, any allegation that Argent misled or deceived a borrower necessarily triggers a claim for indemnity, because Argent is a wholesale mortgage lender and, as such, has no involvement in the negotiation of loan terms, or the loan closing. (*Id.* at ¶ 12). Argent's involvement is limited to funding loans originated by independent mortgage brokers (referred to herein as the "Broker Defendants"). (*Id.*) Each of the Broker Defendants signed an agreement with Argent wherein they agreed to provide full and complete disclosures to their borrowers. (*Id.* at ¶ 13). Accordingly, to the extent that the Borrowers allege that Argent misled them, or failed to disclose any material facts, this conduct is directly attributable to the Broker Defendants, who are contractually required to fully indemnify Argent.

In order to protect its right to indemnity, in March 2007, Ameriquest began filing third-party complaints, pursuant to Rule 14 of the Federal Rules of Civil Procedure, against those Title Defendants who were hired by Ameriquest to close the loans at issue in the Opt-Out complaints. On March 16, 2007, however, the Court *sua sponte* issued the following Order:

> As of March 16, 2007, defendants have filed approximately 80 third-party complaints against various entities under the lead case number for this action. Counsel for defendants has informed us that defendants anticipate filing as many as 300 to 500 additional third-party complaints.
>
> To salvage to the extent possible the interests of judicial economy in this action, we order defendants to file these and all future third-party complaints within one consolidated filing. Defendants shall, within forty-five (45) days of the last date on which an Answer is due in currently filed individual cases, submit a consolidated third-party complaint which incorporates those third-party complaints already filed and all other such complaints that defendants plan to file. After that date, defendants shall not file any third-party complaints in connection with presently existing individual cases.

(*See* March 16, 2007 Order (Docket No. 615), attached as Exhibit A hereto). In compliance with the Court's Order, on July 31, 2007 Ameriquest, as well as Argent, filed a Consolidated Third-Party Complaint, which included claims against both the Title Defendants and the Broker Defendants. (Docket No. 955). Defendants filed a First Amended Third-Party Complaint on August 24, 2007, which is now the operative pleading. (Docket No. 1024). The Third-Party Complaint contains all presently known claims for indemnity against those Title Defendants and Broker Defendants who were responsible for closing the loans at issue in both the Borrower Class Action, and in the majority of the cases brought by the Opt-Out Plaintiffs.

Several weeks after the Third-Party Complaint was filed—and several months after the Court's March 16, 2007 Order—the Borrower Plaintiffs filed the instant Motion, requesting that the Court sever the Third-Party Complaint from this MDL Proceeding pursuant to FRCP Rule 21 or, alternatively, order separate trials of all of the claims in the Third-Party Complaint pursuant to FRCP Rule 42.[4] The Motion is not supported by any of the Opt-Out Plaintiffs. Indeed, on July 31, 2007, the substantial majority of the Opt-Out Plaintiffs entered into a Stipulation with Defendants, wherein the parties agreed, among other things, that (1) the Third-Party Complaint would be filed on July 31, 2007 and (2) the Opt-Out Plaintiffs would stipulate to the granting of leave to amend the Third-Party Complaint, so that Defendants could add additional Title Defendants and Broker Defendants, as appropriate, based on subsequently filed cases. (*See* Stipulation With Opt-Out Plaintiff's Re: Discovery (Docket No. 953)).[5] In entering into this

---

[4] Curiously, the Borrower Plaintiffs move to sever under Rule 21, which pertains to misjoinder and non-joinder of parties, rather than Rule 14, which pertains to impleaded third-parties. *See* Fed. R. Civ. P. 14(a) ("Any party may move to strike the third-party claim, or for its severance or separate trial."). In addition, plaintiffs rely on *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008 (7th Cir. 2000)—a case that does not discuss Rule 14 or relate to impleaded third-parties—to support their requested severance.

[5] Defendants and those Opt-Out Plaintiffs who signed the Stipulation filed a Motion to Enter Stipulation, on or about July 31, 2007. (*See* Docket No. 952). On August 30, 2007, the Court granted the Motion,

Stipulation, the Opt-Out Plaintiffs presumably recognized that it is in the interests of judicial economy for the Third-Party Complaint to be tried as part of this MDL proceeding, not severed as the Borrower Plaintiffs have requested.

## III.   THE BORROWERS' MOTION TO SEVER SHOULD BE DENIED

The Court should exercise its "broad discretion" to deny the Motion because Plaintiffs failed to show that the third-party claims do not arise from a common nucleus of operative facts as the underlying claims, and that severance "will increase judicial economy and avoid prejudice to the litigants." *Comerica Bank v. Sharaf*, 2005 U.S. Dist. LEXIS 22161, * 10 (N.D. Ill. 2005). *See also Rice v. Sunrise Express, Inc.*, 209 F. 3d 1008, 1016 (7th Cir. 2000) (court has "broad discretion" to deny motion for severance."). Severance is generally disfavored. Instead, courts must "entertain() the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966); *see also Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund v. State Farm Mutual Auto. Ins. Co.*, Case No. 89 Civ. 0435, 1991 WL 191456, *2 (N.D. Ill. Sept. 16, 1991) (Rule 14's impleading standard "is liberally construed to effectuate its intended purpose . . . .") ("*Central States*"). Applying this standard, the Motion should be denied as set forth below.

### A.   The Motion Should Be Denied Because It Seeks Relief That Is Inconsistent With Prior Court Orders.

The Motion should be denied, first and foremost, because the Court already ruled on this matter, on March 16, 2007, when it issued an order stating that it was "in the interests of judicial economy in this action" for Defendants to file one consolidated Third-Party Complaint. (*See* March 16, 2007 Order (Exhibit A, hereto)). At the time this Order was issued, Defendants had

---

and ordered that any objection was required to be filed on or before September 27, 2007. (*See* Docket No. 1046). To date, no objection has been filed.

already filed 80 third-party complaints, and indicated to the Court that approximately 300 to 500 additional third-party complaints might be filed. (*Id.*) As such, the Court was well aware of the number of new parties that would be added to this MDL proceeding in connection with the Third-Party Complaint.

The Borrowers apparently disagree with this Order; however, since the Order was issued *more than six months ago*, the Borrowers' time to seek reconsideration has long passed. *See Avitia v. Metro. Club of Chicago, Inc.,* 49 F.3d 1219, 1227 (7th Cir. 1995) ("The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit."); *Parts & Elec. Motors, Inc. v. Sterling Elec.,* 866 F.2d 228, 231 (7th Cir. 1988) (holding that the law of the case doctrine "should be applied unless unusual circumstances or a compelling reason render it inapplicable"). Accordingly, the Motion should be denied.[6]

### B. The Claims in the Third-Party Complaint are Properly Impleaded to this Action.

The Borrowers make the repeated argument that the Third-Party Complaint should be severed because "all of Defendants' claims against Third-Party Defendants appear to involve some form of right to indemnification," and the Third-Party Defendants are not directly liable to the Borrowers. (Motion, at ¶¶ 6-9). They make the related argument that these claims "do not have any relation . . . to the potential claims alleged in the Consolidated Class Action Complaint." (Motion, at ¶ 2). The Borrowers' arguments are not only wrong factually, but

---

[6] The Motion should be denied for the further reason that it is inconsistent with the ruling of the Judicial Panel on Multidistrict Litigation ("JPML") which, **at plaintiffs' request,** consolidated these cases before this Court for pretrial proceedings. (*See* December 14, 2005 Transfer Order, attached as Exhibit B hereto). At the time, Defendants opposed the consolidation because the cases involved different legal theories and different classes of plaintiffs. (*Id.*) At plaintiffs' urging, however, the JPML overruled that objection, reasoning that the transfer would have the "salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that allows discovery with respect to any individual issues and to proceed concurrently with discovery on common issues." (*Id.*) Plaintiffs' Motion is spurious in light of *their* request for an MDL. Moreover, it conflicts with the JPML's finding that this Court would be in the best position to manage common *and* individual issues.

reflect a fundamental misunderstanding of Rule 14. Therefore, their request for severance should be denied.

Rule 14(a) permits defendants to act as third-party plaintiffs and serve a complaint on any person "who is or may be liable to the *third-party plaintiffs* for all or part of the plaintiffs' claim against the third party plaintiffs." Fed. R. Civ. P. 14(a) (emphasis added). Rule 14(a) does not require, as Plaintiffs erroneously suggest, that the impleaded third parties owe any liability to Plaintiffs.

Thus, impleading is proper where, as here, (1) the third-party complaint shares a "common nucleus of operative facts" with the underlying claims; and (2) the third-party defendants are or may be "secondarily liable" to *Defendants* on account of Plaintiffs' claims. *See Kemper Prime Indus. Partners v. Montgomery Watson Americas, Inc*, Case No. 97 Civ. 4278, 2000 WL 876222, *3 (N.D. Ill. June 26, 2000); *see also Muniz v. Rexnord Corp.*, 2004 U.S. Dist. LEXIS 25362, * 15 (N.D. Ill. 2004) (denying motion to sever third-party complaint where defendant allegedly "is or may be liable" for the claims alleged in plaintiffs' class action complaint). The Rule furthers the goals of "avoiding circuity of action and multiplicity of suits," "expediting litigation" and "saving the time of the courts." *Leaseway Warehouses, Inc. v. Carlton*, 568 F. Supp. 1041, 1043 (N.D. Ill 1983).

## 1. The Third-Party Complaint Shares a Common Nucleus of Operative Facts With The Consolidated Complaint.

The Borrowers allege that Ameriquest violated TILA, and various state-statutes, by providing them with an inaccurate Notice of Right to Cancel and/or an insufficient number of copies of the Notice. (Borrowers' Class Action Complaint, at ¶ 256). In the Third-Party Complaint, Ameriquest alleges that it hired the Title Defendants to close loans, and that the Title Defendants "warranted. . . that they would accurately complete a Notice of Right to cancel form

with respect to each loan that they closed, and would provide Ameriquest's borrower(s) with the correct number of copies of the completed form." (Third-Party Complaint, at ¶ 8). Thus, whether the Title Defendants are liable to Ameriquest depends on whether or not they provided a complete and accurate Notice of Right to Cancel to each of the Borrowers. Similarly, Ameriquests' liability to the Borrowers depends on whether the Title Defendants—whom Ameriquest hired to close loans—provided a complete and accurate Notice of Right to Cancel to each of the Borrowers. In other words, *these claims arise from a common nucleus of facts.* [7]

The same analysis holds true with respect to Argent. Specifically, the Borrowers allege that Argent made various misrepresentations to them in connection with the origination of loans. However, as discussed above, Argent is a wholesale lender, and had no interaction whatsoever with any of the Borrowers. (Third-Party Complaint, at ¶ 12). Rather, Argent funded loans which were originated by the Broker Defendants, each of whom warranted to Argent in their Mortgage Broker Agreement that they would provide all borrowers with "full, accurate, and truthful disclosures." (*Id.* at ¶ 13). Accordingly, the Broker Defendants' liability to Argent turns on whether the Broker Defendants misrepresented any material facts to the Borrowers. This same inquiry is directly relevant to the Borrowers' claims against Argent (although, as noted above, Argent denies that it is liable to the Borrowers under any set of circumstances).

### 2. The Third-Party Defendants Are or May Be Secondarily Liable To Defendants.

This case presents a text book example of when to implead a third-party, given that

---

[7] In fact, the *Borrowers themselves* have sued at least one of the companies who was reasonable for closing loans, JS Closing and its owner Jonathan Means. (*See* Borrowers' Class Action Complaint, at ¶ 86). The Borrowers allege, in particular, that JS and Mr. Means "falsely presented themselves as performing bona fide notary or closing services that they did not in fact perform, charged fees for such services, and kicked back a portion of such fees to Ameriquest." (*Id.* at ¶ 275). Ameriquest denies this allegation, however, it is worth noting that it is directly inconsistent with the Borrowers' claims in the instant Motion that the claims in the Third-Party Complaint "do not have any relation" to the claims in the Borrowers' Class Action.

defendants seek indemnity from the third-parties on account of the claims alleged by plaintiffs. For example, Ameriquest closed the substantial majority of its loans using third-party title companies or attorneys. Ameriquest paid these third-parties to provide the disclosures required by TILA (and other state and federal laws) to plaintiffs. The third-parties represented to Ameriquest that they were qualified to close loans, and were knowledgeable about the required disclosures. Accordingly, in the event that plaintiffs did not receive a proper Notice, the third-parties would be liable for indemnifying Ameriquest for any damages Ameriquest sustains on account of their alleged breach.

Likewise, if plaintiffs' claims against Argent succeed (and they should not), they would trigger a right to indemnification from the third-parties Argent has named. As a wholesale lender, Argent originated loans only by dealing with brokers, each of whom was responsible for any and all interactions with their borrowers. Accordingly, to the extent that the plaintiffs allege that they were misled or failed to understand material facts, this conduct is directly attributable to the brokers, who are required to fully indemnify Argent with respect to any such claim.

Plaintiffs' false reliance on *Rice v. Sunrise Express*, 209 F.3d 1008 (7th Cir. 2000) does not suggest otherwise. *Rice* did not address third-party impleading or hold that claims for indemnification must be severed, as Plaintiffs erroneously suggest. Rather, *Rice* simply affirmed the trial court's decision to sever and stay claims against one of three defendants on agreement of the parties where one of the remaining defendants was solvent and stipulated that it would be liable for any judgment. *Id.* at 1011. The case is wholly inapposite here, where the parties *do not* agree to sever the claims, and where the Defendants *do not* agree that they will be liable for any judgment, but rather contend that the third-party defendants should bear any and all liability.

### C. The Motion Should Be Denied Because Litigating The Class Complaint And Third-Complaint Together Will Promote Justice And Efficiency.

The Borrower Plaintiffs bear the burden of showing (but have not) that the relief requested "will increase judicial economy and avoid prejudice to the litigants." *Comerica Bank v. Sharaf*, 2005 U.S. Dist. LEXIS 22161, * 10 (N.D. Ill. 2005).

Here, the Borrowers' argue, without support, that "allowing the third-party complaints to proceed with the Class complaints will unduly delay the progress of the litigation and prejudice the Class' ability to resolve issues conveniently and efficiently." (Motion at ¶ 12).[8] In fact, the converse is true. Litigating the Borrowers' claims will require deposing the Third-Party Defendants regardless of whether they are impleaded, as they are central witnesses who attended plaintiffs' loan closings. Documents relevant to all claims overlap as well, as each case will require access to plaintiffs' loan files. Therefore, plaintiffs will not be prejudiced given the overlap in the types of claims and discovery at issue. *See Trustees of the Central States, v. State Farm Mutual Auto. Ins.*, Case No. 89 Civ. 0435, 1991 WL 191456, *3 (N.D. Ill. Sept. 16, 1991).

The Borrowers' argument that the Third-Party Complaint adds too many new parties to this action is not persuasive, given that the vast majority (over 90%) of the Third-Party Defendants named in the Third-Party Complaint relate to the Opt-Out Complaints, not to the Borrowers' Class Action. None of the plaintiffs who opted out of the proposed class have joined the Motion and, indeed, most of them have *stipulated* to the filing of the Third-Party Complaint.

---

[8] The Borrowers argue that impleading third-parties will create inefficiency by making it difficult to provide notice to hundreds of lawyers. (Motion, at ¶ 7). This is not convincing given the ease of electronic communications, including electronic filing that provides automatic notice to all lawyers who have filed an appearance in a case in a single electronic communication. The Borrowers also claim that every discovery dispute "could generate hundreds of responses," but reality suggests otherwise. Magistrate Judge Denlow has a standing order applicable to *all cases* that discourages written responses to discovery motions. Furthermore, parties need not respond to motions that do not affect them. Moreover, parties can—and have every incentive to—join in responses filed by other parties or coordinate their responses into a single brief (as Defendants did here) in order to minimize legal expenses.

11

(*See* Docket No. 953).

Finally, as the JPML concluded, consolidating and coordinating these pretrial proceedings will promote judicial economy. Consolidation lessens the risk that Defendants will be subjected to inconsistent results in separate proceedings, and increases judicial economy given that similar issues will be addressed only once by a Court familiar with all of the relevant issues. Further, the Third-Party Defendants' presence in this litigation likely will promote settlement.[9] Defendants will avoid having to file several hundred lawsuits in district courts throughout the country. And all parties will avoid the duplicative discovery work that necessarily would occur if the cases were managed separately.

In short, severance of the Third-Party Complaint will not further the interests judicial economy. *See e.g., Little v. Bellsouth Telecomm. Inc.*, No. 95-1646, 1995 U.S. Dist. LEXIS 11208, *2-3 (E.D. La. 1995) (holding that, where there is a logical relationship between claims and overlapping proof, severance may "needlessly increase delays, inconvenience, and expense").

## IV. THE BORROWERS' MOTION FOR SEPARATE TRIALS SHOULD BE DENIED

The Borrowers argue, almost as an afterthought, that in the event their motion to sever is denied, the Court should nonetheless order hundreds of separate trials with respect to all of the claims alleged in the Third-Party Complaint, as permitted by FRCP Rule 42(b)

In fact, Courts routinely deny motions to bifurcate third-party complaints where, as here, the third-party complaint and the underlying complaint involve common facts. *See*, *e.g., Bartz v.*

---

[9] This position is supported by Edelman, Combs *et al.*, who is counsel for dozens of the Opt-Out Plaintiffs. Specifically, the Edelman firm's Response to Proposed Organization and Management Plans (Docket No. 187) states that "in cases where Ameriquest has invited a closing agent to participate in settlement discussions, there has been a high rate of successful settlement." (*Id.* at p. 15). Moreover, the Edelman firm agrees with Defendants that individual issues predominate over class issues in this MDL proceeding, because each of the loan transactions at issue involved a different set of facts and circumstances requiring its own "detailed factual analysis." (*Id.* at p. 17).

*Carter*, 1991 U.S. Dist. LEXIS 16105, *6 (N.D. Ill 1991) (denying motion to bifurcate where "both the underlying claim and the third-party complaints have overlapping issue*s*. . . (which) stem from a common nucleus and occurrence"); *Greenburg v. U.S. Fidelity & Guaranty Co.*, 1986 U.S. Dist. LEXIS 21298, *4 (N.D. Ill 1986) (denying motion to bifurcate where "legal and factual issues are common to the original and third-party actions").

Regardless, the Borrowers' request to bifurcate is premature. The Judicial Panel on Multidistrict Litigation referred these cases for "coordinated or consolidated pretrial proceedings" only. (*See* Exhibit B hereto, at p. 2). Rule 7.6 of the JPML's procedural rules require that, if these consolidated cases have not been terminated before trial, they "shall be remanded by the Panel to the transferor district for trial." The third-party actions which were filed in this Court may or may not be remanded, consistent with Rules 7.6(b) and (c) of the JPML's procedural rules. Therefore, the question of whether the Borrowers' Class Action and the Third-Party Complaint should be tried together should be answered only after it is determined (a) that a trial is necessary and (b) that the cases will not be remanded to other courts.

## V.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny the Motion in its entirety, and allow Defendants to continue litigating their Third-Party Complaint as part of this MDL proceeding.

DATED: October 5, 2007

Respectfully submitted,

By: /s/ Thomas J. Wiegand

By: /s/ Bernard E. LeSage

*Attorneys for Argent Mortgage Company LLC*

Thomas J. Wiegand
Gregory J. Miarecki
David E. Dahlquist
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

14

**EXHIBIT A**

Order Form (01/2005)    Case 1:05-cv-07097    Document 615    Filed 03/16/2007    Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 7097 | **DATE** | 3/16/2007 |
| **CASE TITLE** | In Re: Ameriquest Mortgage | | |

**DOCKET ENTRY TEXT**

Defendants shall, within forty-five (45) days of the last date on which an Answer is due in currently filed individual cases, submit a consolidated third-party complaint which incorporates those third-party complaints already filed and all other such complaints defendants plan to file.

*Marvin E. Aspen*

■[ For further details see text below.]                                          Notices mailed by Judicial staff.

## STATEMENT
(Reserved for use by the Court)

### ORDER

As of March 16, 2007, defendants have filed approximately 80 third-party complaints against various entities under the lead case number for this action. Counsel for the defendants has informed us that defendants anticipate filing as many as 300 to 500 additional third-party complaints.

To salvage to the extent possible the interests of judicial economy in this action, we order defendants to file these and all future third-party complaints within one consolidated filing. Defendants shall, within forty-five (45) days of the last date on which an Answer is due in currently filed individual cases, submit a consolidated third-party complaint which incorporates those third-party complaints already filed and all other such complaints defendants plan to file. After that date, defendants shall not file any third-party complaints in connection with presently existing individual cases.

It is so ordered.

**EXHIBIT B**

**A CERTIFIED TRUE COPY**

DEC 1 3 2005

ATTEST *Vanessa Spencer*
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

# FILED●

DEC 1 4 2005

MICHAEL W. DOBBINS
*RELEASED FOR PUBLICATION*
CLERK

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 3 2005

FILED
CLERK'S OFFICE

*DOCKET NO. 1715*   $\widehat{05CV\ 7100}$

## *BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

## *IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION*

## *BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL*

### *TRANSFER ORDER*

This litigation currently consists of one action each in the Central District of California, Northern District of California, Middle District of Florida, District of Massachusetts and Southern District of New York as listed on the attached Schedule A.[1] Before the Panel is a motion, pursuant to 28 U.S.C. § 1407, brought by plaintiffs in the Southern District of New York action for coordinated or consolidated pretrial proceedings of these actions in the Central District of California. No plaintiff opposes the motion. Plaintiff in the Central District of California action initially opposed, but now supports, the motion for transfer to that district, along with plaintiffs in a potential tag-along action pending there.[2] Plaintiffs in the Northern District of California action support the motion; if the Panel does not order centralization in the Central District of California, these plaintiffs support transfer to any centrally located district with the resources to handle this litigation. Defendants Ameriquest Mortgage Co., Ameriquest Capital Corp. and Argent Mortgage Co. (collectively Ameriquest) oppose the motion.

On the basis of the papers filed and hearing session held, the Panel finds that these five actions involve common questions of fact, and that centralization under Section 1407 in the Northern District of Illinois will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All five actions before the Panel concern allegedly predatory lending practices by Ameriquest Mortgage Co., or a related entity, in soliciting and closing residential mortgage

---

[1] Four additional actions are pending two apiece in the Central District of California and Northern District of Illinois, and one related action each is in the Middle District of Florida and District of Minnesota. These actions and any other related actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

[2] Plaintiffs in one Northern District of Illinois related action initially opposed the motion as well, but withdrew their response because moving plaintiffs submitted a pleading expressly stating that they do not seek transfer of that action.

- 2 -

transactions; among other things, plaintiffs allege that Ameriquest failed to disclose material terms and engaged in so-called bait-and-switch tactics. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, including those with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary.

Ameriquest opposes the motion, in part, because plaintiffs seek redress under different legal theories and purport to represent varying putative classes. We find these contentions unpersuasive. Transfer under Section 1407 does not require a complete identity, or even majority, of common factual issues as a prerequisite to transfer and has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that allows discovery with respect to any individual issues to proceed concurrently with discovery on common issues. *See, e.g., In re Insurance Brokerage Antitrust Litigation*, 360 F.Supp. 2d 1371 (J.P.M.L. 2005). Indeed, the transferee court can employ any number of pretrial techniques, such as establishing separate discovery and/or motion tracks, to manage this litigation efficiently and to ensure that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions.

As suggested by the moving plaintiffs, the Panel initially considered transferring this litigation to the Central District of California; however, the judge assigned to the constituent action pending in that district expressed reluctance in light of her current caseload. The Panel has thus determined that the Northern District of Illinois is an appropriate transferee district for this litigation. Two actions involving the lending practices of Ameriquest are pending in this district. Also, this geographically central district will be a convenient location for a litigation already nationwide in scope.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A are transferred to the Northern District of Illinois and, with the consent of that court, assigned to the Honorable Marvin E. Aspen for coordinated or consolidated pretrial proceedings in that district.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

**SCHEDULE A**

MDL-1715 -- In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation

Central District of California

*Adolph Peter Kurt Burggraff v. Ameriquest Capital Corp., et al.*, C.A. No. 2:04-9715

Northern District of California

*Nona Knox, et al. v. Ameriquest Mortgage Co., et al.*, C.A. No. 3:05-240 ← 05 CV 7100

Middle District of Florida

*Latonya Williams, et al. v. Ameriquest Mortgage Co.*, C.A. No. 8:05-1036

District of Massachusetts

*Isabelle M. Murphy, et al. v. Ameriquest Mortgage Co.*, C.A. No. 1:04-12651

Southern District of New York

*Cheryl Williams, et al. v. Ameriquest Mortgage Co.*, C.A. No. 1:05-6189

## CERTIFICATE OF SERVICE

I, Bernard E. LeSage, hereby certify that on this 5th day of October 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Bernard E. LeSage