**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-CV-07097 |
| THIS DOCUMENT RELATES TO:<br>**[Docket #859]** | (Centralized before<br>The Honorable Marvin E. Aspen) |
| AMERIQUEST MORTGAGE COMPANY, a Delaware corporation,<br><br>       Third –Party Plaintiff,<br><br>  v.<br><br>TRANS UNION LLC, *et al.*<br><br>       Third-Party Defendants | |

**THIRD-PARTY DEFENDANT EQUIFAX'S REPLY
TO PLAINTIFF'S OPPOSITION
TO EQUIFAX'S MOTION TO DISMISS**

Mara McRae, Esq. (GA Bar No. 499138)
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: 404-815-6500
Facsimile: 404-815-6555

Robert E. Shapiro, Esq. (ARDC #03125180)
Stephanie D. Zimdahl, Esq. (ARDC # 6287755)
Barack Ferrazzano Kirschbaum
   & Nagelberg LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Telephone: 312-984-3118
Facsimile: 312-984-3150

Attorneys for Third Party Defendants Equifax Information Services LLC,
successor in interest to Equifax Credit Information Services, Inc.,
and Equifax Marketing Services

COME NOW defendants Equifax Information Services LLC ("EIS"), successor in interest to Equifax Credit Information Services, Inc. and Equifax Credit Marketing Services ("ECMS"), a division of EIS (collectively "Equifax"), through counsel and in reply to Ameriquest Mortgage Company's ("Ameriquest") Opposition to its motion to dismiss, state as follows:

## INTRODUCTION

In its Memorandum in Support of its Motion to Dismiss, Equifax showed that it owed no contractual[1] duty to Ameriquest to provide advice on the legality of Ameriquest's credit mailings or to insure that the mailings complied with the Fair Credit Reporting Act ("FCRA").[2] In response, and without abandoning its contract claims, Ameriquest now asserts that Equifax had an independent duty under the FCRA to ensure the mailings complied with that statute. Ameriquest claims Equifax violated this duty, and is therefore liable to Ameriquest in not only contract, but also in tort. Ameriquest's claims have no legal merit and are, rather, merely an attempt to push the consequences of Ameriquest's own alleged violations of the FCRA to Equifax.

Under the circumstances of this dispute, there are at least four independently sufficient bases to dismiss the tort claims. As an initial matter, the "independent duty" based on the FCRA, upon which Ameriquest premises its new-found claims, is not owed to Ameriquest. It is owed to the consumers – in particular, the consumers that have filed suit against Ameriquest for its alleged violations. Thus, Ameriquest's tort claims fail not only for lack of standing, but also for lack of any legally cognizable interest that Ameriquest can claim Equifax violated. Furthermore,

---

[1] The Parties' contractual relationship is governed by the December 15, 2000 Subscriber Agreement for Equifax Off-Line Services (the "Contract") attached to Defendant's Memorandum in Support of Their Motion to Dismiss ("Defs.' Mem.") as Exhibit 1.
[2] 15 U.S.C. § 1681 *et seq.*

Ameriquest's claims based on § 1681e(a) are premature and cannot be raised until it is shown in the lawsuit against Ameriquest that Ameriquest violated § 1681b.  Lastly, Equifax has employed procedures that satisfy its obligations under the FCRA as a matter of law, and thereby dispose of Ameriquest's claims as a matter of law.  Thus, there are ample grounds for this Court to dismiss Ameriquest's tort claims.

Regarding the contract claims, Ameriquest has responded to Equifax's proffer of the clear and unambiguous waiver provisions in the Parties' Contract (which Equifax attached as Exhibit 1 to its Motion) by asserting that "multiple" other agreements exist.  Despite the Contract's merger clause and requirement that any amendment to its terms be in writing, Ameriquest argues that "it is reasonable to infer" that the other, unidentified agreements alter the application of the waiver and exculpatory provisions of the contract.  Nothing could be further from the truth.  It is *entirely unreasonable* for Ameriquest to ask this Court to infer that another agreement exists that modifies a key waiver provision – let alone "multiple" agreements – when Ameriquest has identified none.  It is also unreasonable for Ameriquest to ask this Court to infer that a credit reporting agency such as Equifax would suddenly agree to abandon its longtime use of contractual safeguards and begin warranting new services.

## LEGAL ARGUMENT AND CITATIONS TO AUTHORITY

**I.	The Duties Under § 1681e(a) are Owed to the Consumers and Ameriquest has No Standing to Assert Claims on their Behalf**

A fundamental defect in Ameriquest's claims is that they seek compensation for alleged violations of a duty Equifax owed *to the consumers, not Ameriquest*.[3]  Specifically, the duty

---

[3] *Saenz v. Trans Union, LLC*, 2007 WL 2401745, *3 (D. Or. 2007) (credit reporting agency's obligations under FCRA owed "to a consumer") (slip copy); *White v. Imperial Adjustment Corp.*, 2002 WL 1809084, *15 (E.D. La. 2002) (duties prescribed under FCRA are owed to the consumer).

Ameriquest asserts Equifax "cannot escape"[4] under Section 1681e(a) – to maintain reasonable procedures designed to prevent the furnishing of credit reports for impermissible purposes – is for the benefit and protection of consumers.[5] Indeed, both Section 1681n and 1681o impose liability for violations of the FCRA "with respect to any consumer." The *only* duty Equifax owes to Ameriquest under Section 1681e is found in subsection (d)(1)(B), which obligates Equifax to provide Ameriquest with notice of its responsibilities as a user of consumer credit information under the FCRA, which Equifax did.[6]

That Ameriquest lacks standing is readily apparent from the careful language it employs in its brief. While Ameriquest devotes considerable argument to establishing Equifax *has a duty* to maintain "reasonable procedures" under Section 1681e,[7] at no point does Ameriquest explain how an alleged breach of that duty (which Equifax owes to the consumers) entitles Ameriquest to contribution from Equifax, even if contribution or indemnity were otherwise available under the FCRA.

Under both an Article III analysis and a review of the standing requirements specific to the FCRA, Ameriquest has no standing to seek compensation for an alleged violation of Section 1681e(a). Article III requires a plaintiff demonstrate an injury-in-fact, establish a connection between that injury and the alleged conduct of the defendant, and show that the requested relief will remedy the alleged injury.[8] While Ameriquest may establish that it suffered economic

---

[4] Ameriquest's Opposition to Equifax's Motion to Dismiss ("Pl.'s Opp."), p. 3.
[5] *Riley v. Equifax Credit Information Services*, 194 F. Supp. 2d 1239, 1244 (S.D. Ala. 2002) (credit reporting agency's duty to avoid furnishing credit reports for improper purposes is owed to consumers).
[6] 15 U.S.C. 1681e(d)(2) provides that a consumer reporting agency will be deemed in compliance with its notice obligations if the notice's content is "substantially similar" to the model notice prescribed by the Federal Trade Commission ("FTC"). The FTC's model notice to credit report users is codified at 16 C.F.R. Part 698, App. H. Equifax satisfied this obligation and thereby placed Ameriquest on notice of its own duties under the FCRA.
[7] *See* Pl.'s Opp., p. 3-6.
[8] *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 1861-62 (2000).

injury as a result of the lawsuits brought against it and that monetary compensation is an appropriate remedy, Ameriquest cannot seriously contend that Equifax's conduct in providing the consumer information it requested was the *cause* of its injuries. Rather, it was Ameriquest's allegedly improper *use* of the information that directly and proximately resulted in the lawsuits Ameriquest is currently facing. Contrary to Ameriquest's assertions, Equifax did not undertake to, or represent that it would, prepare Ameriquest's mailings or ensure that they constituted "firm offers of credit". The Parties' obligations to each other are clearly set forth in the December 15, 2000 Contract, which is devoid of any obligation upon Equifax to provide legal advice or guarantee that a proposed use would not violate the FCRA. Thus, Ameriquest cannot contend that Equifax caused its injuries.

Furthermore, while Ameriquest may have suffered an injury, it cannot establish an injury-in-fact because Equifax has not invaded, nor has Ameriquest alleged, a "legally protected interest."[9] Ameriquest has no legally cognizable right to be free from suits brought by those whose credit information it allegedly uses in violation of the FCRA. Thus, Ameriquest has no standing to assert claims based on Equifax's duties under Section 1681e since those claims do not seek compensation for the violation of a legally protected right upon which Article III standing may be conferred.[10]

Ameriquest's standing is similarly deficient under considerations specific to the FCRA. As a general rule, Section 1681 "does not provide standing to a party who's [*sic*] injuries are

---

[9] *See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1304 (11th Cir. 2006) ("[T]o establish an injury in fact, [a plaintiff] must first demonstrate that the [defendant] has invaded some 'legally protected interest' of his") (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980-81 (11th Cir. 2005)).
[10] *Id.*

merely derivative of the injury to another party's credit worthiness"[11]  Since the consequences, if any, of a failure to employ reasonable procedures under Section 1681e(1) would be limited to those parties whose information was used for an impermissible purpose, Ameriquest cannot claim it has suffered any directly actionable injury.  Rather, the loss Ameriquest will incur in defending suits brought by consumers is entirely derivative of any injury to those consumers' credit worthiness.  Therefore, under both Article III and considerations particular to the FCRA, Ameriquest has no standing to assert claims based duties owed under Section 1681e(1).

**II.     The FCRA Does Not Provide for the Contribution Ameriquest Seeks and There Is No Basis for Expanding Federal Common Law to Create Such a Remedy**

Another major flaw in Ameriquest's Complaint is that there is no statutory authorization for either the contribution or the indemnity Ameriquest seeks.  Indeed, the federal courts are well aware that "the FCRA [does not] … contain any language expressly providing for contribution or indemnity."[12]  Typically, "[a] defendant held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law."[13]  Since the FCRA has no express provision for contribution, and Ameriquest has not alleged that one exists by implication, the right to assert such a claim must therefore arise through federal common law.[14]  Indeed, this is precisely what Ameriquest argues in its brief.[15]

---

[11] *Williams v. Equifax Info. Svcs.*, 892 F. Supp. 951, 955 (E.D. Mich. 1995); *accord Haque v. CompUSA, Inc.*, 2003 WL 117986, *2 (D. Mass. 2003).
[12] *McSherry v. Capital One FSB*, 236 F.R.D. 516, 520 (W.D. Wash. 2006).
[13] *Doherty v. Wireless Broad. Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1130-31 (9th Cir. 1998) (citing *Texas Indus., Inc. v. Radcliff Mats., Inc.*, 451 U.S. 630, 638, 101 S.Ct. 2061, 2066 (1981)).
[14] *McSherry*, 236 F.R.D. at 520.
[15] Pl.'s Opp., p. 9-10.

However, "[i]t is the rare case where a court finds that federal common law provides for a right of contribution."[16] Application of such a federal rule is typically appropriate only "where a uniform national rule is necessary to further the interests of the Federal Government or where there is a significant conflict between some federal policy or interest and the use of state law."[17] And in the specific context of a right of contribution, the Seventh Circuit has stated "all that a right of contribution does is add to the costs of litigation, and so unless there is a compelling reason to suppose that the legislature would want such a right to be enforced, ... it will not be."[18] The *McSherry* court analyzed a similar claim for a federal common law right of contribution under the FCRA. In rejecting the invitation to apply such a rule, the court stated "it is neither apparent that the Court need craft a federal common law remedy for purposes of uniformity nor that Congress would have wanted a right of contribution to be created or enforced."[19] Thus, the court held, "there is no federal common law right to contribution available" under the FCRA.[20] There is nothing present in this case to disturb the *McSherry* court's reasoning.[21]

Ameriquest, however, claims that it would "undermine the purposes and intent of the FCRA" if credit reporting agencies are not *required* to indemnify lenders like Ameriquest.[22] Not only is this an improper basis for applying a federal rule (Ameriquest does not address whether a national uniform rule is necessary to further federal interests or resolve conflict with state law), but it disregards the carefully balanced structure of the FCRA, and leads Ameriquest to wrongly conclude that the Act is so one-sided that, in order to further the purposes of the statute, the

---

[16] *McSherry*, 236 F.R.D. at 522.
[17] *Id.* (quoting *Pankow Constr. Co. v. Advance Mortgage Corp.*, 618 F.2d 611, 613 (9th Cir. 1980)).
[18] *Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005).
[19] *McSherry*, 236 F.R.D. at 523.
[20] *Id.*
[21] Although the court stated there was no right of contribution for furnishers of information under FCRA or for users under TILA, the court noted that, for purposes of determining whether a right to claim contribution exists, FCRA and TILA are "virtually indistinguishable." 236 F.R.D. at 522.
[22] Pl.'s Opp., p. 10.

penalty for any and every violation must fall upon the credit reporting agencies.[23] That is not the case. As this Court has noted, in enacting the FCRA "Congress emplaced a detailed statutory framework, setting levels of culpability and punishment and numerous procedural devices aimed at nonjudicial resolution of claims under the Act... [T]he Act imposes different obligations upon consumer reporting agencies that provide consumer credit information and users of consumer reports."[24] Importantly, this Court recited that if litigants were able "to compel users of consumer reports to comply with the duties imposed upon consumer reporting agencies via a federal conspiracy statute (*and vice versa*), then these litigants would be able to circumvent the intent of Congress and the purpose of the Act."[25] The very same reasoning applies to prevent Ameriquest, a credit report user, from passing off its obligations to Equifax, a credit reporting agency, through a claim for contribution. Thus, Ameriquest's claim that Equifax must shoulder the consequences of its alleged violations is without merit and ignores the fact that the FCRA set out to assign specific duties to each entity in the credit reporting process. *Any action* to disrupt that structure, such as Ameriquest's Third Party Complaint ("Complaint"), undermines the purposes of the FCRA and should be rejected by this Court.

Indeed, it is well-settled that the duty to use credit reports only for permissible purposes belongs not just to credit reporting agencies, but also to the subscribers who use those reports.[26]

---

[23] *See Id.* (in arguing "it would undermine the purpose and intent of FCRA" if credit reporting agencies weren't *required* to indemnify lenders who violate their obligation to use credit information for a permissible purpose, Ameriquest essentially advocates a subscriber's ability to use its alleged "reliance" on a credit reporting agency's "expertise" as both a shield against punishment for its own violations and a sword to impose its own liability on a credit reporting agency, without regard to whether the agency maintained reasonable procedures as required by the FCRA or whether the subscriber's "reliance" was genuine, as opposed to merely a tactic whereby the subscriber can neglect its own FCRA duties in hopes the Act will assign any resulting liability to the credit reporting agencies).
[24] *Kodrick v. Ferguson*, 54 F. Supp. 2d 788, 795 (N.D. Ill. 1999) (quoting *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 470, 481-82 (D.D.C. 1994)).
[25] *Id.* at 796 (emphasis added).
[26] 15 U.S.C. §§ 1681o, 1681n ("*any person*" who fails to comply with act is liable); *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998) ("FCRA's express language imposes civil

Thus, while Ameriquest opposes the Motion to Dismiss by claiming Equifax has an independent duty (albeit, to the consumers) to maintain reasonable procedures under Section 1681e(a), and cannot avoid a claim for contribution by "contractually shifting" that duty to Ameriquest, the exact same reasoning applies to bar Ameriquest's claims for contribution: Ameriquest owes a corresponding duty to those consumers under Section 1681b(f) to *use* the credit reports for one of the permissible purposes enumerated in that section – specifically, in this case, to ensure that its mailings constituted "firm offers of credit". Accordingly, Ameriquest may not avoid the consequences of an alleged violation by "equitably shifting" its liability to Equifax with a claim of "reliance." Put simply, both parties owed a duty to the consumers under the FCRA and the FCRA does not provide a right to either party for contribution if it violates its respective duties. The result is that each party is held liable for its own violations, thereby preserving the structure and remedial system Congress envisioned in creating the FCRA. In this instance, the consumers have brought suit against Ameriquest for allegedly violating its duty to provide firm offers of credit. No consumer has alleged a violation on Equifax's part. Ameriquest cannot now "pass off" some or all of its liability to Equifax by claiming it relied on Equifax's expertise. The fact that a user such as Ameriquest may have relied on a credit reporting agency to act as its legal counsel, whether reasonable to do so or not, does not excuse it from fulfilling its own obligations to the consumers under the FCRA, particularly when, like here, the contract between the agency and the user expressly and unambiguously waives any guarantee regarding the legality of those mailings. Thus, there is no basis in law or equity to assert Equifax is liable for contribution. Because Ameriquest's claims for contribution and indemnity do not constitute a recognizable cause of action, they must be dismissed.

---

liability on "'any consumer reporting agency or user'" who willfully or negligently fails to use credit report for one of the enumerated permissible purposes); *Del Amora v. Metro Ford Sales and Service, Inc.*, 206 F. Supp. 2d 947, 949-50 (N.D. Ill. 2002) (citing *Jones* with approval).

### III. Ameriquest Cannot Claim a Violation Under § 1681e(a) Because it has Not Shown There was a Violation of § 1681b

In addition to a lack of standing and a lack of any legally cognizable claim, a third reason exists to dismiss Ameriquest's Complaint because there has been no showing that Ameriquest's mailings to the consumers violated Section 1681b, which is a prerequisite to a claim for failure to maintain reasonable procedures under Section 1681e.[27] As recognized by several federal courts, including this Court:

> Congress has stated that it adopted the "reasonable procedures" requirement to "meet[ ] the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the *confidentiality, accuracy, relevancy, and proper utilization* of such information… In light of the purposes of the FCRA, we find that the actionable harm the FCRA envisions is improper disclosure, not the mere *risk* of improper disclosure that arises when "reasonable procedures" are not followed and disclosures are made. Accordingly, a plaintiff bringing a claim that a reporting agency violated the "reasonable procedures" requirement of § 1681e *must first show that the reporting agency released the report in violation of § 1681b.*[28]

Because the purpose of Section 1681e's "reasonable procedures" requirements is to limit the furnishing of consumer reports to the purposes listed under Section 1681b, "this purpose is not furthered unless a plaintiff suffers the harm the procedures are meant to prevent."[29] Thus, absent a showing that a consumer credit report was released or used in violation of Section 1681b, there can be no cause of action under Section 1681e.

Similarly, because there has been no determination in the non-borrower lawsuit against Ameriquest that the consumer reports were used in violation of Section 1681b, Ameriquest may not assert a claim challenging Equifax's use of reasonable procedures under Section 1681e.

---

[27] *See generally, Washington v. CSC Credit Svc. Inc.*, 199 F.3d 263, 266-268 (5th Cir. 2000) (discussion of requiring improper disclosure before allowing claim for inadequate procedures).
[28] *Id.* at 266-67 (quoting 15 U.S.C. 1681b).
[29] *Id.* at 266; *Gillespie v. Equifax Info. Servs., LLC*, 2006 WL 681059, *2 (N.D. Ill. 2006) (citing with approval and adopting "impermissible purpose" prerequisite to claim under § 1681e).

Although the cases setting forth the prerequisite did so in the context of a plaintiff asserting the Section 1681e claim against a defendant, their logic is equally applicable here. As discussed in detail above, Ameriquest's claim against Equifax is based on a duty Equifax owes to the consumer plaintiffs. Ameriquest is therefore asserting a claim on behalf of those consumers and stands in their shoes. The very same reasoning that would prevent the consumer-plaintiffs from claiming an alleged violation of Section 1681e at this juncture applies with equal force to Ameriquest's Complaint. Furthermore, the fact that Ameriquest's claims are for contribution and indemnification provides additional bases on which to conclude the tort claims are premature.

### III.     In Any Event, Equifax has Satisfied Its Duties Under § 1681e

It is axiomatic that the FCRA requires only "reasonable procedures" to protect the confidentiality and accuracy of consumer information.[30] The FCRA does not, as Ameriquest asserts, demand an assurance[31] or guarantee that its subscribers will use the information properly.

This point of clarification has been central to the adjudication of countless credit reporting disputes holding that consumer reporting agencies are not strictly liable for an alleged inaccuracy or impermissible use.[32] To hold otherwise would lead to an absurd result where reporting agencies would be liable for actions entirely out of their control, forcing the agencies to require subscribers to sign indemnification agreements, thereby driving the cost of credit for consumers skyward. Such a scenario would be repulsive to the purpose of the FCRA, which is "to facilitate commerce."[33] Indeed, federal courts, including the Seventh Circuit, have held a credit reporting agency with procedures in place similar to Equifax's satisfy its § 1681e

---

[30] 15 U.S.C. 1681e(a), (b).
[31] Complaint, ¶ 54 (alleges Equifax failed "to ensure" that Ameriquest's mailings did not violate FCRA).
[32] *See, e.g.*, *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971-72 (7th Cir. 2004) (CRA not strictly liable for inaccuracies); *Nelski v. Trans Union, LLC*, 86 Fed. Appx. 840, 844 (6th Cir. 2004) (same); *Cahlin v. Gen. Mot. Accept. Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (same).
[33] *Jianqing Wu v. Trans Union*, 2006 WL 4729755, *7 (D. Md. 2006) (slip copy).

obligations as a matter of law.[34] And although most of the cases addressing the reasonableness of a reporting agency's procedures do so in the context of maximizing accuracy, that duty "imposes a higher standard" than the duty to make disclosures for only permissible purposes.[35] Thus, where procedures to ensure accuracy are deemed reasonable as a matter of law, a consumer reporting agency employing similarly efficacious procedures to limit disclosure to permissible purposes satisfies its obligations under § 1681e(a) *as a matter of law*.

Ameriquest alleges that by virtue of Equifax's knowledge of the law and its "opportunity" to review the mailings that are the subject of the lawsuit against Ameriquest, Equifax could not rely on Ameriquest's certifications, but instead was required to independently verify and ensure that the mailings constituted firm offers of credit.[36] Ameriquest, however, seeks to impose a far greater burden on Equifax than the FCRA requires. "[T]he 'reasonable procedures' provision of the FCRA strikes a balance between the rights of citizens to have their credit information recorded accurately and the need for efficiency among consumer reporting agencies."[37] Thus, requiring independent verifications of each use and certification was not, as Ameriquest alleges, required of Equifax. In fact, Ameriquest's assertions are contradicted by the Federal Trade Commission's own commentary on what is required of reporting agencies under § 1681e(a):

> Once the consumer reporting agency obtains a certification from a user (e.g., a creditor) that *typically has a permissible purpose for receiving a consumer report*, stating that it will use those reports only for specified permissible purposes (e.g., for credit or employment purposes), *a certification of purpose*

---

[34] *Id.*; *Sarver v. Experian Info. Solutions*, 390 F.3d 969 (7th Cir. 2004) (procedures reasonable as matter of law).

[35] *Andrews v. Trans Union Corp. Inc.*, 7 F. Supp. 2d 1056, 1071 (C.D. Cal. 1998), *aff'd in part*, *rev'd in part on other grounds*, 225 F.3d 1063, *cert. granted*, 532 U.S. 902, *rev'd*, 534 U.S. 19, *on remand* 289 F.3d 600.

[36] Complaint, ¶ 30, 54.

[37] *Jianqing Wu*, 2006 WL 4729755 at *7.

> *need not be furnished for each individual report obtained, provided there is no reason to believe the user may be violating its certification.*[38]

It is undisputed that Ameriquest had provided Equifax the required certifications and was a long-established user that typically has a permissible purpose for receiving a consumer report.[39] Thus, Ameriquest's claim that Equifax had to individually ensure the mailings comported with the FCRA, and its reliance on *Pintos v. Pac. Cred. Ass'n*, 2007 WL 2743502 (9th Cir. 1007), are improper and unavailing.[40] Indeed, as one court noted in an analogous situation regarding Equifax's "heavier burden" of taking steps to ensure maximum accuracy:

> To make Equifax liable under the FCRA *for relying on the records of businesses, which Equifax has identified as trustworthy*, would vitiate one of the purposes of the FCRA, to facilitate commerce. [If CRAs were required to independently review all derogatory items], the economic costs of investigation would render it economically infeasible for CRAs to function. *Nothing in the FCRA or its implementing regulations evinces the intent to place such heavy burdens on CRAs*.[41]

Thus, through a recognition of established trustworthiness in Ameriquest's usage of its consumer credit information, and by complying with all requirements under § 1681e(a) and the specific implementation rules of the Federal Trade Commission, as well as implementing safeguards that have been found reasonable as a matter of law under § 1681e(b), Equifax has satisfied its obligations under § 1681e(a) as a matter of law, and Ameriquest's claims must be dismissed.

---

[38] FTC Commentary on Fair Credit Reporting Act, 16 C.F.R. Pt. 600, App. (emphasis provided).

[39] *See* Complaint, ¶ 25 (Equifax and Ameriquest had long history involving a "series of written and oral agreements" to purchase credit information).

[40] *Pintos* is further distinguishable from this matter because, assuming for the purposes of this motion that the allegations in the Complaint are true (as Equifax must on a motion to dismiss), that Equifax reviewed the mailings in question and was satisfied they complied with the FCRA, Equifax did not simply "rely on a blanket certification" like the agency in *Pintos*, but employed additional reasonable procedures. Also, *Pintos* required additional certification because it was addressing a credit report furnished to a "mixed-use" user (debt collection agency), which is not the case here. *Pintos* is not controlling.

[41] *Jianqing Wu*, 2006 WL 4729755 at *7 (slip copy).

## IV. There is No Basis to Conclude Any of the Contractual Provisions Offend Public Policy

Ameriquest's final argument is that the bargained-for exculpatory and waiver provisions in the December 15, 2000 Contract (the only written contract presented by either party) should not be enforced because they offend public policy.[42] This argument has no merit.

Both Ameriquest and Equifax are large, sophisticated businesses with ample experience in contract negotiation. Under such facts, courts have upheld waiver and exculpatory provisions where a creditor brought a third-party complaint alleging the third-party defendant was liable for the legal ramifications of direct mailings that violated the FCRA.[43] As in that case, here both Ameriquest and Equifax dealt at arms length in negotiating a contractual assignment of risk. Also, the text of the exculpatory provisions at issue is conspicuous and not buried in fine print. Further, in *Barton*, the case upon which Ameriquest exclusively relies, the court rejected the public policy argument, stating it "must use extreme caution in declaring a contract void as against public policy",[44] and noting that the argument failed on the ground that, *inter alia*, the defendants (like Equifax, who may only provide reports to certain businesses) are not generally "willing to perform their services for any member of the public."[45]

Ameriquest's public policy argument is unpersuasive and this Court should honor the contractual agreement between the parties.

## **CONCLUSION**

For all the foregoing reasons, Equifax respectfully asks that the Court grant its Motion to Dismiss Ameriquest's Third-Party Complaint.

---

[42] Pl.'s Opp., p. 7-9.
[43] *See, e.g.*, *Reynolds v. Lemay Buick-Pontiac-Cadillac-GMC, Inc.*, 2007 WL 749812 (E.D. Wis. 2007) (slip copy).
[44] *Barton v. Peterson*, 733 F.Supp. 1482, 1488 (N.D. Ga. 1990).
[45] *Id.* at 1489.

This 16th day of October, 2007.

                                      Respectfully submitted,

                                      /s/ Mara McRae
Mara McRae, Esq. (GA Bar No. 499138)
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: 404-815-6500
Facsimile: 404-815-6555

Robert E. Shapiro, Esq. (ARDC #03125180)
Stephanie M.. Zimdahl, Esq. (ARDC # 6287755)
Barack Ferrazzano Kirschbaum
   & Nagelberg LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Telephone: 312-984-3118
Facsimile: 312-984-3150

Attorneys for Third Party Defendants Equifax Information Services LLC, successor in interest to Equifax Credit Information Services, Inc., and Equifax Marketing Services

CERTIFICATE OF SERVICE

  I hereby certify that on October 16, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which sent electronic notification of the filing on the same day to all counsel of record in case No. 05-07097.

        <u>/s/ Stephanie M. Zimdahl</u>
        Stephanie M. Zimdahl