IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL Docket No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: DOCKET # 859 | |

**AMERIQUEST MORTGAGE COMPANY'S SUR-REPLY IN OPPOSITION TO EQUIFAX'S MOTION TO DISMISS**

**I.      INTRODUCTION**

Equifax's Reply Brief adds no support to its Motion to Dismiss Ameriquest's Third Party Complaint, which should be denied. This is true for the following reasons:

(1)     Equifax continues to ignore or discount Ameriquest's allegations of multiple contracts in the Third Party Complaint. [See Complaint, para. 26] Equifax's Motion, and its Reply, remain a "speaking" motion based upon the one agreement (the 2000 Agreement) it contends governs the parties' relationship. The contradiction between Ameriquest's allegation of multiple contracts and Equifax's contention that this sole contract governs the relationship establishes at least a factual question such that this Court should not dismiss at the pleading stage the contractual claims in the Complaint.

(2)     Contrary to its assertions, Equifax can be liable to Ameriquest for equitable indemnity and contribution, as well as negligence and negligent

>> misrepresentation, based upon its violation of the duties that the FCRA, case law and federal common law impose on credit reporting agencies. To allow Equifax to avoid liability altogether would be inequitable when, as alleged, Equifax reviewed and knew the contents of Ameriquest's firm offer letters and continued to sell the credit information necessary to send those letters.

(3) The FCRA's public policy goal of protecting consumers would be undermined by allowing Equifax to avoid liability by virtue of adhesion contractual language attempting to delegate its legal responsibilities to Ameriquest.

## II. EQUIFAX'S MOTION AND REPLY BRIEF ARE FATALLY FLAWED BECAUSE THEY INCORRECTLY ASSUME THAT THE 2000 AGREEMENT IS THE ONLY ONE THAT GOVERNS THE PARTIES' RELATIONSHIP

Equifax's Motion and Reply are based entirely upon the 2000 Agreement it attaches as Exhibit 1 to its Motion, a contract that is not even mentioned in Ameriquest's Complaint. Equifax incorrectly alleges that this 2000 Agreement is the agreement that governs the relationship between the parties. [*See* Equifax Reply, p. 3] Equifax's contention that the 2000 Agreement controls the legal analysis of the issues raised by its Motion is without merit because it directly contradicts the allegations in the Complaint that there are a series of oral and written contracts between the parties. [Complaint, para. 26] This contradiction alone creates a factual question as to the terms of the contract that cannot be decided on a motion to dismiss.

Equifax incorrectly claims that "it is *entirely unreasonable* for Ameriquest to ask this Court to infer that another agreement exists that modifies a key waiver provision – let alone 'multiple' agreements – when Ameriquest has identified none." [Equifax Reply, p. 3]. This argument misconstrues the law.

It is well established that in ruling on a motion to dismiss, the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff." *520 Michigan Ave. Associates, Ltd. v. Shannon*, 2007 WL 2728757, *1 (N.D. Ill. 2007). Under the Federal Rules, notice pleading is sufficient, and plaintiffs are not required to attach to a complaint all the documents on which it is based. *See*

Fed.R.Civ.P. 8(a)(2); *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Thus, it is not only entirely reasonable, but also proper, for this Court to accept Ameriquest's allegations of multiple agreements between the parties as true in ruling on the Motion.

Further, Equifax's suggestion throughout the Motion and Reply that the 2000 Agreement is the only one that governs the relationship between the parties is disingenuous. Ameriquest contends that there are multiple agreements governing the parties' relationship [Complaint, para. 26], including, for example, a 2005 contract that arguably covers the same prescreening services provided for in the 2000 Agreement and would supersede the 2000 Agreement.

Ameriquest's allegations that there are a series of oral and written contracts between it and Equifax are sufficient to put Equifax on notice of its contract claims, *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999), and prevent dismissal of any Ameriquest's claim by reference only to the terms of the 2000 Agreement. In particular, Ameriquest's contract claims against Equifax (Claims Three and Four) cannot be dismissed on this basis.

### III. AMERIQUEST'S CONTRIBUTION AND INDEMNITY CLAIMS SHOULD BE ALLOWED TO PROCEED

Claims for indemnity and contribution are based in equity. In its Reply Brief, Equifax argues that Ameriquest cannot sue it for indemnity or contribution because Equifax only owes duties under the FCRA to consumers, not to Ameriquest. Assuming the Non-Borrower Plaintiffs' allegations that Ameriquest sent firm offer letters to consumers without a permissible purpose are correct, equity and the public policy underpinning the FCRA dictate that Equifax, alleged to be an active and integral participant in Ameriquest's firm offer marketing program, should not be allowed to escape liability as a matter of law for its role in the alleged concomitant harm to the very consumer Equifax agrees it has a statutory duty to protect.

### A. An Extension of Federal Common Law Supports Ameriquest's Contribution and Indemnity Claims

By its Third Party Complaint, Ameriquest has raised the issue of whether Equifax had reasonable grounds for believing the consumer report information it sold to Ameriquest would be used for a permissible purpose under the FCRA. Ameriquest alleges that Equifax reviewed Ameriquest's firm offer letters. Ameriquest further alleges that Equifax conditioned its provision of consumer information to Ameriquest upon its review of the letters. [*See* Complaint, para. 65-68, 71-74] Further, Equifax knew the requirements for such letters, and yet continued to sell credit information to aid and abet in sending the letters for a profit motive despite knowledge of a potential FCRA violation. [*See* Complaint, para. 28-30] It is without dispute that under the FCRA Equifax is responsible for ensuring proper use of its credit reports and consumer information. 15 U.S.C. Section 1681e; *In re Matter of Trans Union Corporation*, Docket No. 9255, 2000 WL 257766, p. 1 and 2 (FTC February 10, 2007).

Equifax argues that, notwithstanding the foregoing, it cannot ever be held to indemnify Ameriquest or contribute to any judgment against Ameriquest because under the FCRA its duties run only to consumers (not to a lender such as Ameriquest). However, the cases Equifax cites for that proposition (*Riley, Saenz and White*) are inapposite because they do not specifically address whether a credit reporting agency can be liable to a lender under the circumstances raised in the Ameriquest's Complaint. While these cases do state that a credit reporting agency has obligations to consumers under the FCRA, they do not involve the factual context where, as here, a lender to whom the credit reporting agency sells credit information has been sued by consumers for alleged FCRA violations based on allegations concerning firm offer letters it has reviewed, putting it on notice of a potential FCRA violation, and yet continued to provide the consumer credit information to the lender. [*See* Complaint, paras. 28-30, 65-68, and 71-74][1]

---

[1] Further, Equifax's argument that it satisfied any obligation to Ameriquest because it provided adequate notice to Ameriquest under Section 1681e(d)(1)(B) regarding its responsibilities as a user of consumer credit information (*See* Reply, p. 4) creates a factual issue that cannot be decided on a motion to dismiss because it contradicts the allegations of the Complaint (*See* Complaint, paras. 65-67), as well as the holdings of *Pintos v. Pacific Creditors Ass'n*, 2007 WL 2743502, *2 (9th Cir. September 21, 2007) and *In re Matter of Trans Union Corporation*, Docket No. 9255, 2000 WL 257766 p. 1 and 2 (FTC February 10, 2000).

The purpose of the FCRA is to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy. *Safeco Ins. Co. of America v. Burr*, 127 S.Ct. 2201, 2205 (2007). Congress has stated that the credit reporting agencies are responsible for maintaining the balance between consumer privacy and the needs of a modern, credit driven economy. *Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.* 427 F.3d 1043, 1045-46 (7th Cir. 2005); *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004). It would thwart the purpose of the FCRA to allow Equifax (and other credit reporting agencies) to escape all liability in the circumstances alleged, while collecting millions of dollars in fees for providing the credit information to Ameriquest.

Rather, to ensure that the FCRA has the teeth Congress intended, Equifax, having reviewed Ameriquest's firm offer letters yet continued to provide Ameriquest with prescreened lists, should bear at least some liability in the event Ameriquest is found liable in this case. Holding Equifax to contribute to any judgment obtained by the Non-Borrower Plaintiffs against Ameriquest is only holding Equifax responsible for compliance with its duties to consumers under the statute. Simply because Plaintiffs in this case have chosen to sue Ameriquest and not Equifax should not give Equifax a "free pass" to escape all liability, notwithstanding its role in disseminating the credit information after review of Ameriquest's allegedly improper firm offer letters.

No federal case has specifically decided the question of whether a credit reporting agency, having independent statutory obligations under the FCRA, can be liable for indemnity or contribution in an FCRA case.[2] *McSherry v. Capital One FSB*, 236 F.R.D. 516 (W.D. Wash. 2006) is inapposite. Although *McSherry* involved an interpretation of the FCRA, it is factually distinguishable because there a furnisher of credit information sought indemnity from a

---

[2] Equifax's argument that it has satisfied its duties under FCRA Section 1681e (*See* Reply Brief, p. 11) merely raises a factual question that cannot be decided on a motion to dismiss in light of Ameriquest's contradictory factual allegations in paragraphs 28-30, 65-68, and 71-74 of the Complaint. Further, Equifax's argument that certification of a permissible purpose is enough to get it off the hook for any liability (*See* Reply Brief, p. 11-13) is contradicted by the holdings of the *Pintos* case and the *In re Matter of Trans Union Corporation* case discussed *infra.* and in Ameriquest's Opposition Brief.

5

consumer. The Court found that the furnisher of credit information could not seek indemnity from a consumer because Congress intended through the FCRA to regulate the activities of furnishers of credit information for the benefit of consumers. 236 F.R.D. 516, 521-522.

Here, the FCRA and its public policy underpinnings support the conclusion that federal common law should preclude Equifax from escaping its obligations under the FCRA by allowing the entities to which it provides credit information to bear the entire liability for alleged FCRA violations in which it directly participated and profited. The goals of the FCRA would be severely compromised if credit reporting agencies, such as Equifax, in every case could avoid as a matter of law any possible liability to indemnify for or contribute to a judgment in favor of consumers against a lender, when the lender's liability arose, at least in part, from the lender's reliance on the credit reporting agency.

**B.** **Ameriquest Presently Has Standing to Bring Its Claims Against Equifax**

Equifax's argument that Ameriquest lacks standing to assert claims for indemnity and contribution because the Court has not yet ruled that Ameriquest's firm offer letters violated the FCRA is without merit. Federal Rule of Civil Procedure 14 allows a defendant to file a third party complaint against a non-party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." *Id.* By definition a third party complaint under Rule 14 is filed by a defendant prior to its alleged liability being established in the main action. The purpose of Rule 14 is to permit claims against third parties that are derivatively based on the original plaintiff's claims. *United States v. One 1977 Mercedes* Benz, 708 F.2d 444, 452 (9th Cir. 1983). This is precisely what Ameriquest has done here. *Washington v. CSC Credit Services, Inc.*, 199 F.3d 263 (5th Cir. 2000) (cited by Equifax at p. 10, fn. 27 of its Reply) is not on point because it does not address Rule 14 third party complaints for indemnity and contribution.

Moreover, the Article III analysis set forth in Equifax's Reply Brief is totally off base and actually supports Ameriquest's claims. If it were accepted, no Rule 14 third party complaint would ever withstand a motion to dismiss made on standing grounds. Equifax concedes that

Ameriquest "may establish that it suffered economic injury as a result of the lawsuits brought against it and that monetary compensation is an appropriate remedy." [Equifax Reply Brief, p. 4-5]. Equifax's next assertions that there is no connection between an injury suffered by Ameriquest and Equifax's conduct and that, based on the 2000 Agreement, there is no basis for Ameriquest's allegation that Ameriquest relied on Equifax to ensure that its letters constituted "form offers of credit", are not well founded, certainly on a Rule 12(b)(6) motion. Simply stated, Ameriquest's Complaint alleges otherwise. Ameriquest has alleged that it relied upon Equifax's review of its firm offer letters, and that Equifax had the ability to refuse to provide the credit information if it believed that Ameriquest lacked a permissible purpose for its use. [*See* Complaint, paras. 28-30; 65-68; 71-74] This establishes the requisite Article III connection because assuming Ameriquest is liable to Plaintiffs, the conduct giving rise to that liability could have, and should have, been eliminated at the outset or sooner if Equifax had properly reviewed the firm offer letters and ceased providing the credit information in the face of a potential FCRA violation.[3]

## IV. EQUIFAX MAY NOT RELY ON CONTRACTUAL CERTIFICATIONS AND DISCLAIMERS BY AMERIQUEST TO AVOID EITHER CONTRACTUAL OR TORT LIABILITY

Ameriquest has sued Equifax for breach of contract, negligence and negligent representation based upon its actions in reviewing the firm offer letters and conditioning its provision of consumer information on its review of the letters to ensure FCRA compliance. [Complaint, paras. 28 – 30, 67, 72] In the first place, Equifax cannot use the 2000 Agreement to avoid liability to Ameriquest on the breach of contract, negligence and negligent misrepresentation claims in the Complaint because, as Ameriquest alleges, there are multiple agreements that governed the parties' relationship [Complaint, para. 26], and because the 2000 Agreement is not properly before the Court as support for Equifax's Motion.

---

[3] For purposes of this motion to dismiss, the Court must take as true Ameriquest's allegations that Equifax undertook to ensure that Ameriquest's mailings constituted firm offers of credit [Complaint, paras. 28-30, 65-68, and 71-74]. The Court must ignore Equifax's protestations to the contrary [*See* Reply Brief, p. 5]. At a minimum, the different positions of the parties creates a question of fact that cannot be decided on a Motion to Dismiss.

7

Further, even assuming it was applicable, Ameriquest's certification in the 2000 Agreement is insufficient as a matter of law to shift Equifax's legal duties to Ameriquest. *In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, 337 (N.D. Ill. 2002); *Pintos*, 2007 U.S. App. LEXIS 22519 at *14-15. In both the *Trans Union Corp. Privacy* case and *Pintos* case, the Court concluded that notwithstanding the existence of certifications, a credit reporting agency may not furnish reports if reasonable grounds exist to believe that reports would be used impermissibly and that such certifications by the user of the consumer information is not by itself sufficient to satisfy statutory duties of a credit reporting agency under the FCRA. As Ameriquest alleges, Equifax had a duty (contractually and by virtue of the above case law and Section 1681e of the FCRA) to review the firm offer letters and to refrain from furnishing credit information to send the letters if "reasonable grounds" existed for Equifax to believe that the letters did not satisfy the FCRA "permissible purpose" requirement. Any certification by Ameriquest does not *per se* satisfy Equifax's statutory duties.

Finally, Equifax may not use the exculpatory or disclaimer terms of the 2000 Agreement to avoid either contractual or tort liability. Even if the 2000 Agreement was the operative agreement, those terms are void as against public policy (as explained in detail in Ameriquest's Opposition Brief). The argument of Equifax that the exculpatory and disclaimer language are not void as against public policy because "Ameriquest and Equifax dealt at arms length in negotiating a contractual assignment or risk," [Equifax Reply Brief, p. 14], merely raises an issue of fact that is not appropriate for determination on a motion to dismiss.

Reduced to its essence, Equifax's position is that contractual disclaimers and exculpatory terms either exempt it from complying with its obligations under Section 1681e of the FCRA or satisfy those obligations *per se*. This position alone establishes that the contract terms on which Equifax would like to rely are void as against public policy. Congress squarely placed the responsibility upon entities such as Equifax to refrain from giving credit reporting information unless they have reasonable grounds for believing that such information will be used for a permissible purpose. 15 U.S.C. Section 1681e; *Pintos*, 2007 U.S. App. LEXIS 22519 at *14-15.

8

In so doing, Congress certainly did not mean to allow such entities to ignore the language of the prescreen firm offer letters it received from purchasers of prescreened lists simply because those purchasers signed an adhesion contract certifying a permissible purpose. *Id.*

## V. CONCLUSION

For the foregoing reasons and those set forth in its Opposition, Ameriquest respectfully requests that the Court deny Equifax's Motion to Dismiss Ameriquest's Third-Party Complaint.

DATED: October 23, 2007			Respectfully submitted,

By:  /s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

9

## CERTIFICATE OF SERVICE

I, Bernard E. LeSage, hereby certify that on this 23rd day of October 2007, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Bernard E. LeSage