# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| AMERIQUEST MORTGAGE CO. ) | |
| MORTGAGE LENDING ) | |
| PRACTICES LITIGATION ) | |
| ) | |
| _____ ) | MDL No. 1715 |
| ) | |
| AMERIQUEST MORTGAGE ) | |
| COMPANY, a Delaware Corporation; ) | Lead Case No. 05-CV-07097 |
| and ARGENT MORTGAGE ) | |
| COMPANY LLC, a Delaware limited ) | (Centralized before |
| liability company, ) |    the Hon. Marvin E. Aspen) |
| ) | |
|      Defendants/Third-Party ) | |
|      Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| NORTHWEST TITLE AND ) | |
| ESCROW CORPORATION, a ) | |
| Minnesota corporation, et al., ) | |
| ) | |
|      Third-Party Defendants. | |

### NATIONAL REAL ESTATE INFORMATION SERVICES'
### MOTION TO STAY, PENDING A CLASS CERTIFICATION DECISION,
### ANY CLAIMS IN THE THIRD-PARTY COMPLAINT WHICH
### <u>ARE DERIVED FROM CLAIMS BY ABSENT CLASS MEMBERS</u>

Third-Party Defendant National Real Estate Information Services ("NREIS")[1], by its undersigned counsel, hereby moves this Court to Stay, Pending a Class Certification Decision, Any Claims In The Third-Party Complaint Which Are Derived From Claims By Absent Class Members. In support of this motion, NREIS states as follows:

---

[1] National Real Estate Information Services of New Jersey, Inc. has also been named as a third party defendant in this litigation but is a separate corporate entity that is not affiliated with the movant.

## I. Introduction

1. Based on their third-party complaint,[2] it is unclear whether Ameriquest and Argent seek indemnification and/or contribution against NREIS (and other third-party Title Defendants) based on: (a) only the claims brought by the individual "Opt Out" Plaintiffs; or (b) any liability Ameriquest and Argent incur for the Class Claims. If the claims of Ameriquest and Argent derive solely from claims brought by the individual Opt Out Plaintiffs, this case is simple and can be easily litigated, as only two (of the 290) individual Opt Out Claims implicate NREIS. If the claims instead derive from the Class Claims, however, this case becomes considerably more complex. Given the number of absent class members, the scope of NREIS's third-party liability for these putative Class Claims is potentially sizeable and will require expensive and time consuming litigation. But from the face of the third-party claims, as well as from the class action complaint on which the third-party claims are based, it appears highly unlikely that these putative Class Claims – particularly the ones for which NREIS and the other Title Defendants could be liable – will ever come to be litigated on a class basis. Thus, it would be an unfair burden and a potential huge waste of legal resources to force NREIS to litigate this case in the manner necessary to defend a third-party complaint that is derived from claims of such magnitude.

## II. Background

2. This massive litigation involves claims by more than 290 individual borrowers and more than 20 putative class representatives filed against defendants

---

[2] Although the third party complaint is based primarily on an alleged breach of contract, there is no contract attached to or quoted in the third-party complaint.

Ameriquest Mortgage Company ("Ameriquest") and its affiliates, subsidiaries and agents, including Argent Mortgage Company ("Argent," and with Ameriquest, "Defendants/Third-Party Plaintiffs"). These cases were consolidated and transferred to this Court for centralized pretrial proceedings. Pursuant to this Court's November 6, 2006 Order, this Court segregated the claims at issue into two categories – the 290+ individual claims (the "Opt Out" Claims) and the Class Claims on behalf of tens of thousands of borrowers.

3. On or about August 24, 2007, Ameriquest and Argent filed the Third-Party litigation, adding NREIS and almost 300 other third-party defendant title companies (the "Title Defendants") and mortgage brokers. NREIS was not served until October 3, 2007.

4. In the Third-Party litigation, Defendants/Third-Party Plaintiffs assert indemnification and contribution claims against the Title Defendants based on allegations that the Title Defendants failed to provide certain borrowers with a Notice of Right to Cancel at the closings. The "Right to Cancel" claims against the Title Defendants are only a small portion of the claims brought against Ameriquest as agent in the underlying Class litigation. With respect to the individual Opt-Out Claims, NREIS is alleged to have participated in the closings of only *two* of the hundreds of individual cases that are involved in this litigation: the Pasacreta Loan and the Birkholz Loan.

5. From the face of the Class Action Complaint and Third-Party Complaint, however, the putative Class Claims against Ameriquest and Argent are incompatible with the Third-Party Claims against NREIS and the other Title Defendants.

6. For example, the gist of the putative Class Claims against Ameriquest have to do with actions exclusively between Ameriquest and the borrower, such as imposing

improper charges and using deceptive sales techniques. The putative class plaintiffs have acknowledged that these claims do not exist against any of the Title Defendants. As pled, the Third-Party Claims by Ameriquest and Argent against NREIS are limited to the alleged failure to provide to borrowers the Notice of the Right to Cancel. The rescission remedy available from this alleged violation cannot be invoked on a class basis. *Jefferson v. Sec. Pac. Fin. Servs.*, 161 F.R.D. 63, 70 (N.D. Ill. 1995). Thus, it would seem unlikely that NREIS or the other Title Defendants would be liable to Ameriquest or Argent on account of any class liability Ameriquest and Argent incur.

7. If the Third-Party Complaint against NREIS is limited to indemnification/contribution derived only from the two (of the 290) individual Opt Out Claims that implicate NREIS, then NREIS can defend and resolve those two claims most efficiently. For example, NREIS can prove that it played no role in the closing of the Birkholz Loan and that it did provide the Notice of the Right to Cancel on the Pasacreta Loan. If, however, NREIS has to defend *now* against *potential* third-party liability derived from the putative class action claims of thousands of other borrowers who had Ameriquest loans in which NREIS may have played some role, then NREIS will have to bring to bear far more extensive and expensive litigation tactics. Such a defense will consume judicial resources far beyond that which is necessary or productive at this stage. For this reason, the Third-Party Claims against NREIS that are derived from the putative Class Claims should be stayed.

8. District courts have broad discretion to stay proceedings. *Clinton v. Jones,* 520 U.S. 681, 706 (1997). Such discretion is incidental to "the power inherent in every court to control the disposition of the cases on its docket with economy of time and

effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether a stay is appropriate, a court must "weigh competing interests and maintain an even balance." *Id.* at 254-55.

9. Courts have considered stays in very similar circumstances, *see LeClercq v. Lockformer Co.*, No. 00 C 7164, 2003 U.S. Dist. LEXIS 22767 (N.D. Ill. Dec. 17, 2003), where a suit may settle or simplify some questions of fact and law. *See, e.g., Oklahoma v. Tyson Foods*, 237 F.R.D 679, 684-85 (N.D. Okla. 2006); *Crown Cent. Petroleum Corp. v. Dep't of Energy*, 102 F.R.D. 95, 98 -99 (D. Md. 1984); *In re Ahead by a Length*, 78 B.R. 708, 710 (Bankr. S.D.N.Y. 1987). In the instant case, a stay that lasts until the underlying litigation is resolved would streamline the prosecution of the Third-Party litigation and simplify the issues, if any, to be litigated.

10. The stay would also preserve judicial resources, streamline the prosecution of the underlying litigation, and protect the Third-Party Defendants from prematurely expending significant costs on largely irrelevant litigation.

11. There is no possibility that the requested stay will prejudice or damage any party. Plaintiffs, through their Motion to Sever, already agree that the Defendants/Third-Party Plaintiffs' liability can be "determined readily without resolution" of the Third-Party litigation. (Pls.' Mot. to Sever ¶ 10, D.E. 1049.) In fact, Plaintiffs' concern is that prosecution of the two actions together will "unduly delay the progress of the litigation and prejudice the Class' ability to resolve issues conveniently and efficiently." (*Id.* ¶ 12.)

12. Defendants/Third-Party Plaintiffs will also be unharmed by the stay. In their Opposition to the Motion to Sever, Defendants/Third-Party Plaintiffs contend that they will need to depose the Third-Party Defendants in their defense of the underlying litigation.

(Opp'n Br. at p. 11, D.E. 1198.) There is nothing that will preclude them from using these depositions in the prosecution of the Third-Party litigation, if such litigation proves necessary. Moreover, a stay would preserve judicial economy, another of the Defendants/Third-Party Plaintiffs' concerns (*id.* at 12), as the courts will not have to address issues in the third-party litigation that may be made moot by the outcome of the underlying litigation.

13. The sole reason why Defendants/Third-Party Plaintiffs would want to hold the Third-Party Defendants in this litigation is, as they admit, to promote settlement. (Opp'n Br. at 12 & n.9, D.E. 1998). It is not appropriate, however, for a party to use the potential exposure inherent in class action litigation to hold another party hostage in litigation purely to force settlement. *See White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000).

14. Given the vast number of parties already involved in the underlying litigation, the simultaneous prosecution of the Third-Party litigation would add unnecessary burdens and delays on the Court and on the parties, while causing the Third-Party Defendants to incur significant and possibly needless costs on defense.

WHEREFORE, for all the reasons listed above, NREIS hereby requests that this Court issue an order staying, pending a class certification decision, any claims in the Third-Party Complaint that are derived from claims by absent class members.

-7-

                                                         NATIONAL REAL ESTATE INFORMATION
                                                         SERVICES

                                                         By:    /s/ Alais L. M. Griffin
Dated:  November 5, 2007                 One of Its Attorneys

David J. Chizewer
Alais L. M. Griffin
Chanté D. Spann
GOLDBERG KOHN BELL BLACK
  ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000