Westlaw.

Not Reported in F.Supp.2d                                                                                           Page 1
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
National Union Fire Ins. Co. of Pittsburgh, PA v. Hicks, Muse, Tate & Furst, Inc.
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, Plaintiff,
v.
HICKS, MUSE, TATE & FURST, INC. and International Wire Group, Inc., Defendants.
**No. 02 Civ. 1334(SAS).**

July 10, 2002.

Excess liability insurer brought declaratory judgment action against insured corporation and its parent corporation, seeking determination that it was not obligated to provide coverage for corporation's tort liability, in products liability actions by homeowners to recover property damages. Parent corporation removed action to federal court. Parent corporation moved to dismiss. The District Court, 2002 WL 1313293,Scheindlin, J., denied motion. On motion for reconsideration, the District Court, Scheindlin, J., held that: (1) declaratory judgment action against parent was not ripe; (2) allegations against subsidiary did not state claim against parent; and (3) allegations stated claim for declaration voiding excess policy.

Motion granted in part, and denied in part.
West Headnotes
**[1] Declaratory Judgment 118A ⇐165**

118A Declaratory Judgment
    118AII Subjects of Declaratory Relief
        118AII(G) Written Instruments and Contracts
            118AII(G)2 Insurance
                118Ak165 k. Liability or Indemnity Insurance in General. Most Cited Cases
Declaratory judgment action by excess liability insurer against parent of insured corporation seeking no coverage determination for products liability claims filed against insured corporation was not ripe, warranting dismissal, where parent corporation had not yet received notice of products liability actions against it, and parent corporation had not yet presented any demands for coverage to insurer. U.S.C.A. Const. art 3 § 2, cl.1.

**[2] Declaratory Judgment 118A ⇐317**

118A Declaratory Judgment
    118AIII Proceedings
        118AIII(D) Pleading
            118Ak312 Complaint, Petition or Bill
                118Ak317 k. Insurance. Most Cited Cases
Allegations by excess liability insurer that it was not required to provide coverage to insured corporation for products liability actions by homeowners to recover property damages, did not state action for declaratory judgment against parent corporation of insured corporation, even though parent procured policy, parent was first named insured on policy, parent paid premiums on policy, and parent had 100% ownership of insured corporation.. Fed.Rules Civ.Proc. Rule 12(b)(6).

**[3] Insurance 217 ⇐2998**

217 Insurance
    217XXIV Avoidance
        217XXIV(B) Particular Kinds of Insurance
            217k2998 k. Liability Insurance. Most Cited Cases
Allegations that parent corporation made certain material representations to excess liability insurer in procuring excess liability policy for its insured subsidiary corporation, and that insurer would not have issued policy if not for those material representations, stated claim for declaration voiding the excess policy as to parent corporation and its subsidiary, under either Texas or New York law.

**[4] Federal Civil Procedure 170A ⇐1101**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(N) Striking Pleading or Matter Therein
         170Ak1101 k. In General. Most Cited Cases
Plaintiff was not entitled to strike declarations made by representatives of defendants under federal rule of procedure, allowing federal court to strike redundant, immaterial, impertinent or scandalous matter; rule applied to pleadings only. Fed.Rules Civ.Proc. Rule 12(f).

James E. Carroll, Rory Z. Fazendeiro, Cetrulo & Capone LLP, New York, NY, for Plaintiff.
David Hird, Peter Antonucci, Konrad L. Cailteux, Weil, Gotshal & Manges LLP, New York, NY, for Defendant Hicks Muse.

*AMENDED OPINION AND ORDER*
SCHEINDLIN, J.
*1 National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") sued Hicks, Muse, Tate & Furst, Inc. ("Hicks Muse") and its affiliate International Wire Group, Inc. (" IWG"), seeking declaratory relief to avoid coverage of IWG's tort liability.[FN1] Hicks Muse now moves to dismiss the action against it pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted in part and denied in part.[FN2]

> FN1. National Union filed this action in the Supreme Court of New York, New York County, on January 28, 2002. On February 20, 2002, Hicks Muse removed the action to this Court. Federal jurisdiction is based on diversity of citizenship because Hicks Muse is a Texas corporation with its principal place of business in Texas, and National Union is a Pennsylvania corporation with its principal place of business in New York.

> FN2. This opinion follows the Court's June 13, 2002 ruling on Hicks Muse's motion to dismiss, *National Union Fire Ins. Co. v. Hicks, Muse, Tate & Furst, Inc.,* No. 02 Civ. 1334, 2002 WL 1313293 (S.D.N.Y. June 14, 2002). On June 27, 2002, Hicks Muse moved for reconsideration of that ruling. The motion to reconsider is granted, and the June 13, 2002 ruling is amended in that it no longer reaches the choice-of-law issue.

I. BACKGROUND

A. The Facts

IWG, a corporation created in 1995 by two investor groups led by Hicks Muse, assembles washing machine inlet hoses.[FN3] *See* 4/25/02 Amended Complaint ("Am.Compl.") ¶ 4. Beginning in 1986, these hoses became the subject of a number of products liability suits in which individual homeowners complained of property damage caused by exploding washing machines. *See id.* ¶ 23. From 1986 to 2002, IWG received approximately 15,000 claims alleging that the inlet hoses were defective. *See id.* There were 3,200 such claims in the year 2001 alone.[FN4] *See id.* Many of these lawsuits also named Whirlpool Corporation (" Whirlpool") and General Electric Corporation ("GE ") as defendants because these companies manufactured the washing machines at issue and designed the specifications for the hoses in those machines. *See id.* ¶ 25. Lawsuits were also filed by insurers for the individual homeowners seeking subrogation from IWG and its insurers. *See id.*

> FN3. Hicks Muse holds interests in a variety of different businesses. In addition to owning 100% of IWG, Hicks Muse has over 70 affiliates in industries as varied as real estate, manufacturing, energy, communications and sports industries. *See* 1/28/02 Complaint ("Compl.") ¶¶ 2-3, 5; Declaration of Marian Brancaccio, General Counsel to Hicks Muse (" Bran.Decl."), Ex. B to Affirmation of James E. Carroll, Plaintiff's Attorney (" Carroll Aff."), ¶¶ 1, 3.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 3

Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

FN4. The claims, sounding in negligence and strict liability, fall into the following categories: failure to warn; failure to design, fabricate, manufacture, implement, sell or supply washing machine hoses and component parts in a way that would make them safe for their intended use; failure to make reasonable inspection; failure to use due care in hiring of contractors who inspected, assembled or maintained the hoses; failure to test the hoses. *See* Am. Compl. ¶ 24.

In April 1996, IWG entered into an agreement with Whirlpool to indemnify and hold Whirlpool harmless with respect to hose claims against IWG. *See* Compl. ¶ 19. In May 1998, IWG entered into a similar agreement with GE. *Seeid.* ¶ 20. In August 1998, IWG signed a Claims Resolution Agreement with Allstate Insurance Company (" Allstate") (the "Allstate Agreement") to "resolve all claims arising from the underlying hose claims."*Id.* ¶ 21.*See also* 4/4/02 Plaintiff's Opposition to Motion to Dismiss ("Pl.Opp.") at 4 (agreement was "in settlement of numerous homeowner subrogation claims"). Pursuant to the Allstate Agreement, the homeowners' rights to sue IWG for damage allegedly caused by the hoses were assigned to Allstate. *See* Pl. Opp. at 4.

At some unspecified time, Hicks Muse's insurance broker, Aon Risk Services of Missouri ("Aon"), acting on behalf of Hicks Muse and its affiliates, applied for general liability insurance from National Union. Hicks Muse thereafter obtained two policies from National Union, one covering the period from April 1, 2000 to April 1, 2001, and the other covering the period from April 1, 2001 to April 1, 2002 ("National Union Policies" or "Policies").*See* Compl. ¶¶ 4-6; Bran. Decl. ¶ 8. The National Union Policies covered liability in excess of the coverage provided by two underlying primary policies that IWG had previously obtained from Royal & Sunalliance Insurance Company ("Royal Insurance"). The National Policies "follow" the same "form" as the Royal policies, Am. Compl. ¶ 17, and thus only cover liability that would have been covered by the Royal policies but for exhaustion of payment limits under those policies.

*Seeid.* ¶ 15.

*2 IWG was among the additional named insureds or "affiliate[s]" listed on, and covered by, the National Union Policies. Bran. Decl. at ¶ 8. Hicks Muse, however, as the first named insured under the Policies, was responsible for paying premiums for itself, IWG and all other named insureds. *See* Policy No. 7017580 ("Policy 1"), Ex. C to Carroll Aff., at 1, 19; Policy No. 7398817 ("Policy 2"), Ex. D to Carroll Aff., at 1, 19. The Policies also contain a " Separation of Insureds" clause which provides in pertinent part: "[T]his insurance applies (1) as if each Named insured were the only Named insured; and (2) separately, to each insured against whom claim is made or suit is brought."Policy 1 ¶ VII.N; Policy 2 ¶ VII.N.

At some point in 2001, IWG tendered the underlying hose claims and the agreements with Whirlpool, GE and Allstate (the "Agreements") to National Union and demanded coverage under the Policies. *See* Compl. ¶ 23. When National Union's investigation of the claims revealed the extent of the hose claims as well as the existence of the Agreements, it brought this suit against Hicks Muse. Hicks Muse itself, however, unlike IWG, has not presented any hose claim to National Union for coverage. Nor has it been named as a defendant in any lawsuit bringing hose claims, or received notice of any hose claim against it. *See* Bran. Decl. ¶¶ 5-6. In addition, Hicks Muse has not entered into any agreement with Whirlpool, GE or Allstate, or any other third party, in which it agreed to indemnify and hold harmless any third party for hose claims brought against it. *Seeid.*

After National Union filed this action against Hicks Muse in New York, IWG sued National Union in Illinois state court seeking coverage of the hose claims as well as coverage of its obligations to Whirlpool, GE and Allstate. *See* 2/27/02 Defendant's Memorandum in Support of Its Motion to Dismiss ("Def.Mem.") at 4 (citing *International Wire Group, Inc. v. National Union Fire Ins. Co.,* No. 02 Civ 2470 (Cir. Ct. Cook Cty. Ill.)).[FN5] On March 26, 2002, this Court granted National Union leave to amend its complaint to add IWG as a defendant. *See* Pl. Opp. at 1 n. 2. National Union

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

filed its Amended Complaint on April 25, 2002.

> FN5. Hicks Muse is not a party to the Illinois action.

### B. The Amended Complaint

National Union brings nine causes of action, all of which assert that the *terms* of the Policies preclude coverage of IWG's liability losses.[FN6] After each cause of action, National Union prays for a declaration that: (a) the Policies issued to Hicks Muse do not cover either the hose claims or the Agreements; and (b) National Union has no obligation to defend or indemnify either Hicks Muse or IWG for the hose claims or the obligations arising under the Agreements. *See* Am. Compl. ¶¶ 41-42; 46-47; 53-54; 61-62; 67-68; 73-74; 79-80; 85-86; 90-91.[FN7] The Amended Complaint also contains a request for a declaration that material omissions made by Hicks Muse in the application process for the National Union Policies voids the policies *abinitio.Seeid.* ¶¶ 3-4 ("Wherefore" clause).

> FN6. National Union claims that the terms of the Policies preclude coverage because: (1) the underlying hose claims and the Agreements are not "occurrences" under the National Union Policies; (2) the primary insurance provided by the Royal policies is not exhausted, and thus IWG does not qualify for excess coverage as provided by the National Union Policies; (3) the underlying hose claims and obligations under the Agreements brought by IWG are not "fortuitous events," as required by the National Union Policies, but rather are known losses; (4) Hicks Muse and IWG made intentional omissions and misrepresentations regarding the extent and nature of underlying hose claims and Agreements, which is in violation of the National Union Policies' Unintentional Failure to Disclose clause; (5) IWG breached the "Voluntary payment " clause of the National Union Policies by entering into the Whirlpool, GE and Allstate Agreements which constitute voluntary payment for claims; (6) the Whirlpool, GE and Allstate Agreements are not "insured contracts" under the Royal policies; (7) IWG breached the " Supplementary Payment" provision of the Royal policies by waiving critical defenses and contribution claims in the Agreements; (8) IWG's hose claims and obligations in the Agreements fall within the "Property Damage Expected" exclusion clause in the Royal policies; (9) IWG's hose claims and obligations in the Agreements fall within the "Products-Completed Operations Hazards" exclusion in the National Union Policies. Am. Compl. ¶¶ 35-40; 43-45; 48-52; 55-58; 63-66; 75-78; 81-84; 87-89.

> FN7. Following the fourth cause of action, National Union also prays for (1) a declaration that Hicks Muse's intentional omission of material information in the application process allows National Union to void the policies; and (2) a declaration that the omission "precludes coverage for IWG ... as well as precludes enforcement by Hicks Muse of the Separation of Insured provision in the National Union policies."Am. Compl. ¶¶ 59-60.These requests are grouped with the others into two claims for declaratory relief. *Seeinfra* Part III.

### II. LEGAL STANDARD

*3 Hicks Muse contends that this Court should dismiss both claims under Rule 12(b)(1) because there is no justiciable controversy between Hicks Muse and National Union, and under Rule 12(b)(6) because National Union does not state a claim against Hicks Muse.

### A. Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case: 1:05-cv-07097 Document #: 1664-3 Filed: 11/27/07 Page 5 of 9 PageID #:21449

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

power to adjudicate it. *SeeMarakova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). A plaintiff asserting subject matter jurisdiction generally has the burden, once challenged, of proving by a preponderance of the evidence that jurisdiction exists. *Seeid.* In resolving a motion to dismiss under Rule 12(b)(1), a court is not limited to the face of the complaint but may consider evidence, including affidavits submitted by the parties. *SeeRobinson v. Gov't of Malaysia,* 269 F.3d 133, 141 n. 6 (2d Cir.2001); *Serrano v. 900 Fifth Ave. Corp.,* 4 F.Supp.2d 315, 316 (S.D.N.Y.1998).

### B. Rule 12(b)(6)

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6)"is proper only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Strougo v. Bassini,* 282 F.3d 162, 167 (2d Cir.2002) (quoting *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999)). The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000) (quotation marks omitted). To rule on a 12(b)(6) motion, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the nonmoving party's favor. *SeeKalnit v. Eichler,* 264 F.3d 131, 137-38 (2d Cir.2001).

### III. DISCUSSION

National Union's various causes of action and requests for relief boil down to two claims for declaratory relief: (1) a declaration of no coverage for any inlet hose claim, any liability arising out of the Agreements, and any claim for defense or indemnity brought by Hicks Muse or IWG (the "no coverage declaration"); and (2) a declaration that the Policies are void (the "avoidance declaration"). *See* Pl. Opp. at 7.

### A. The No Coverage Declaration

The issues raised by Hicks Muse with respect to the no coverage declaration are: (1) whether the action against Hicks Muse is justiciable with respect to defective hose claims brought by homeowners against Hicks Muse; (2) whether the action against Hicks Muse is justiciable with respect to hose claims brought against IWG; and (3) whether a claim for relief is stated against Hicks Muse.

### 1. The Action Is Not Ripe with Respect to Coverage of Hose Liability Incurred by Hicks Muse

Because a federal court's power extends only to cases and controversies, *see*U.S. Const. art. III, § 2, cl.1; *Valley Forge Coll. v. Americans United,* 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1981); *Marchi v. Bd. of Cooperative Educ. Servs. of Albany,* 173 F.3d 469, 478 (2d Cir.1999), "[it] may only be called upon to adjudge the legal rights of litigants in actual controversies...."*S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch., Inc.,* 24 F.3d 427, 431 (2d Cir.1994). This case or controversy requirement also applies to declaratory judgment actions (*i.e.,* they must be justiciable).*See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 250, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,* 94 F.3d 747, 752 (2d Cir.1996). Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a case or claim is justiciable if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."*Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).*See alsoOlin Corp. v. Consolidated Alum. Corp.,* 5 F.3d 10, 17 (2d Cir.1993).

*4 Among other requirements for justiciability, a claim must be ripe for review. *SeeThomas v. City of New York,* 143 F.3d 31, 34 (2d Cir.1998)."The ripeness doctrine protects the government from ' judicial interference until a [ ] ... decision has been formalized and its effects felt in a concrete way by the challenging parties." ' *Id.* (alterations in original) (citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967),

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 6

Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

overruled on other grounds,*Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). An insurer's effort to defeat coverage is generally not ripe if there is no live claim for coverage by the insured. *See**MacMillan Inc. v. Fed. Ins. Co.,* 764 F.Supp. 38, 42 (S.D.N.Y.1991). At the very least, there must be a claim against the insured to give rise to an anticipatory lawsuit by a liability insurance carrier. *See**Nat'l Union Fire Ins. Co. v. Cont'l Illinois Corp.,* 110 F.R.D. 615 (N.D.Ill.1986).

[1] Hicks Muse has not presented any demands for coverage to National Union, nor has it received notice of claims against it for damage caused by the defective hoses. Therefore Hicks Muse currently has no hose liability, and National Union's case for a no coverage declaration as to Hicks Muse's hose liability is not ripe. Accordingly, this claim is not justiciable and must be dismissed pursuant to Rule 12(b)(1).

### 2. National Union Does Not State a Claim Against Hicks Muse for a No Coverage Declaration as to IWG

[2] Hicks Muse next argues that National Union cannot seek a no coverage declaration against it based solely on the close relationship between Hicks Muse and IWG and Hicks Muse's role in applying for the insurance, where there is no contention that Hicks Muse and IWG are alter egos. National Union maintains that the declaration may be sought against Hicks Muse because Hicks Muse: (1) procured the policy in question; (2) is the first named insured on the policy; (3) pays premiums on the policy; (4) has a 100% ownership interest in IWG; and (5) has several directors and officers in common with IWG. It insists that it need not pierce the corporate veil to seek a no coverage declaration against Hicks Muse as to IWG's liability. *See* Pl. Opp. at 10-11.

National Union has provided no legal support for its argument.[FN8] Indeed, courts in both Texas and New York regard parent and subsidiary corporations as legally distinct, and generally do not treat a contract under the name of one as that of both.[FN9] *See, e.g.,**Carte Blanche (Singapore) Pte, Ltd. v. Diner's Club Int'l, Inc.,* 2 F.3d 24, 26 (2d Cir.1993); *Gibraltar Savings v. LDBrinkman Corp.,* 860 F.2d 1275, 1286-87, 1290 (5th Cir.1988); *Maltz v. Union Carbide Chemical & Plastics Co.* 992 F.Supp. 286, 300 (S.D.N.Y.1998); *Davidson v. Time Warner, Inc.,* No. 94 Civ. 006, 1997 WL 405907, at *4-*5 (S.D.Tex. Mar. 31, 1997).

> FN8. The only case National Union cites, *Payroll Express Corp. v. Aetna Cas. & Sur. Co.,* 186 F.3d 196, 207 (2d Cir.1997), held that an insurer could *void* a corporate principal's insurance policy that was obtained by the misrepresentations of its president, without disregarding the corporate form. *See**id.* at 207-08. This case is inapposite for two reasons. *First,* National Union is seeking to bind the purported agent, Hicks Muse, not the principal. *Second,* plaintiff is requesting a no coverage declaration, not a declaration to void the Policies, the remedy sought and obtained in *Payroll.* For a discussion of plaintiff's principal-agent theory as applied to plaintiff's request for a declaration to void the Policies, *see**infra* Part III.B.

> FN9. The parties disagree as to whether the laws of Texas or New York apply to this case. *See**infra* Part III.B.

There are various exceptions to this rule, *see**Itel Containers Int'l Corp. v. Atlantrafic Exp. Serv. Ltd.,* 909 F.2d 698, 703 (2d Cir.1990) (holding that the two exceptions in New York are fraud, and use of a subsidiary as an alter ego); *Gibraltar,* 860 F.2d at 1286 (holding that the three exceptions in Texas are alter ego, illegal purpose and sham to perpetrate a fraud); *Davidson,* 1997 WL 405907, at *4 (same), but National Union does not allege any of them. In the absence of any other allegation that might lead this Court to disregard the corporate form of the subsidiary, National Union cannot state a claim for a no coverage declaration against Hicks Muse. Thus, this claim is dismissed pursuant to Rule 12(b)(6).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 7
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

B. The Avoidance Declaration

*5 National Union argues that because Hicks Muse acted as IWG's agent in procuring the insurance, nondisclosure and misrepresentation by Hicks Muse justifies voiding the entire contract.[FN10]

> FN10. National Union contends that IWG is bound by the misrepresentations of its agent, Hicks Muse, and therefore the Policies are void. However, the issue here is whether National Union can obtain a declaration *against Hicks Muse* that the Policies are void as to IWG (and Hicks Muse). National Union cites non-binding authority in support of its argument. See Pl. Opp. at 10-11 (discussing *Payroll Express Corp.*, 186 F.3d at 207, affirming an opinion from this Court applying New Jersey law). The only other case plaintiff cites, *Nationwide Ins. Co. v. Dorch*, No. 94 Civ. 5842, 1996 U.S. Dist. LEXIS 22730, at *5 (S.D.N.Y. Mar. 25, 1996) (not avail. on Westlaw), is not helpful. There the defendant's insurance agent, employed by the insurer, materially misrepresented facts, which the defendant knew to be false. The holding allowing rescission turned not on the principal-agent relationship but rather on the false statements in the application.

The parties disagree as to whether the laws of Texas or New York apply to this case. Hicks Muse argues that Texas law applies because the parties understood the principal location of the insured risks to be in Texas. National Union argues in response that New York law applies because defective hose claims-the only relevant insured risks in this suit-have been brought all over the country, not just Texas, *and* the parties have the greatest contacts with New York. Because the laws of the two states do not differ as applied to the allegations in this lawsuit, the Court need not reach the choice-of-law issue.

In Texas, an insurer may invalidate a policy based on alleged misrepresentations in an insurance application by proving: (1) the making of the representation; (2) the falsity thereof; (3) reliance by the insurer; (4) the intent to deceive on the part of the insured in making the misrepresentation; and (5) materiality. *SeeAlbany Ins. Co. v. Anh Thi Kieu,* 927 F.2d 882, 891 (5th Cir.1991); *Mayes v. Mass. Mutual Life Ins. Co.,* 608 S.W.2d 612, 616 (Sup.Ct.Tex.1980). Courts in Texas have stressed that the insurer must prove the insured's intent to deceive in order to invalidate a policy as to that insured. *SeeEnserch Corp. v. Shand Morahan & Co.,* 952 F.2d 1485, 1492-93 (5th Cir.1992); *Albany Ins.,* 927 F.2d at 891.

Similarly, New York permits a court to void an insurance policy as to all insureds if the policy was procured through material misrepresentation. *See Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan,* 77 F.3d 48, 52 (2d Cir.1996); *American Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp.,* No. 94 Civ. 2727, 1997 WL 906427, at *9 (S.D.N.Y. Sept.12, 1997); *Wedtech Corp. v. Fed. Ins. Co.,* 740 F.Supp. 214, 218-19 (S.D.N.Y.1990). A misrepresentation is material where the insurer would not have issued the policy had it known the truth. *SeeNationwide,* 1996 U.S. Dist. LEXIS 22730, at *9; *see alsoKantor v. Nationwide Life Ins. Co.,* 16 A.D.2d 701, 227 N.Y.S.2d 703, 704 (2d Dep't 1962).

[3] National Union alleges that Hicks Muse made "material representations regarding the hose claims," Am. Compl. ¶ 32, and that "Hicks Muse and/or IWG and/or their agents provided information about the defective hose claims which it knew to be false and misleading to the broker hired by Hicks Muse to obtain the National Union policies," Am. Compl. ¶ 58.[FN11] National Union further alleges that, had Hicks Muse disclosed the full extent of IWG's liabilities, it would not have issued the Policies. Under either Texas or New York law, as set forth above, this pleading suffices to state a claim for relief. *See*Fed.R.Civ.P. 8(a)(2) (requiring only a short and plain statement of the claim); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("Rule 8's simplified pleading standard applies to all civil actions, with limited exceptions [such as fraud]."); *Levesanos v. White,* No. 01 Civ. 8687, 2002 WL

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 8

Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

1202472, at *2 (S.D.N.Y. June 4, 2002) (" 'A complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts.' ") (quoting *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002)).[FN12] National Union thus states a claim for a declaration voiding the Policies as to Hicks Muse and IWG.[FN13]

> FN11. Defendant argues that National Union represented to the Court at the March 26 conference that it would not amend its Complaint beyond adding IWG, *see* 3/26/02 Transcript ("Tr.") at 10-instead, plaintiff added a paragraph to its Amended Complaint regarding misrepresentation. *See* Def. Mem. at 2 (referring to Am. Compl. ¶ 32); *see also* Am. Compl. ¶ 58. It is true that plaintiff alleges no misrepresentation whatsoever in its original Complaint against Hicks Muse. *See* 1/28/02 Complaint Filed in State Supreme Court in New York County, Ex. A to Affirmation of James E. Carroll, Plaintiff's Attorney. At the March 26 conference, counsel for Hicks Muse asked "With respect to Hicks Muse [sic] motion to dismiss, I am assuming the amendments [to the Complaint] are only going to add[ ] IWG?"Tr. at 10. The Court responded, " Yes, I am assuming that, too, because they already made their motion" and asked " They're not amending anything else in the complaint?"*Id.* National Union responded, "No." Counsel then clarified, "It is just ... to add that to clean up our complaint in the allegations with respect to Hicks Muse filing the application...."*Id.*The Court then noted that Hicks Muse would be able to respond to anything new in its Reply. *Seeid.* at 10-11.
> Because the standard for allowing leave to amend pursuant to Rule 15 is very liberal, and because defendants were able to respond in their Reply papers, this amendment is permissible.
>
> FN12. It is important to note that National Union does not plead fraud, which requires particularized pleading. *See*Fed.R.Civ.P. 9(b). Yet, there is nothing in the pleadings concerning when or where the application or submission process took place, who was involved, or what allegedly false information Hicks Muse provided regarding the extent of IWG's hose liability. Most importantly, National Union does not allege that Hicks Muse provided any false information regarding *the Agreements* between IWG and GE, Whirlpool and Allstate.
>
> FN13. Hicks Muse argues that, at the least, its alleged misrepresentations do not affect IWG, which was separately insured under the Policies. This argument is unavailing because IWG is alleged to have participated in or known of Hicks Muse's alleged misrepresentations in obtaining the insurance. *See* Am. Compl. ¶¶ 32, 58.

### IV. PLAINTIFF'S MOTION TO STRIKE THE DECLARATIONS OF MICHAEL RE AND DAVID HIRD OR, IN THE ALTERNATIVE, TO TAKE DISCOVERY TO REBUT THEIR DECLARATIONS

*6 Defendant submitted the declarations of Michael Re, IWG's Attorney, and David Hird, Hicks Muse's Attorney (the "Declarations") in conjunction with its Reply Memorandum of Law. The Declarations concern, in part, the factual contention that (1) no questions were asked during the application process, and (2) IWG, and therefore Hicks Muse, lacked knowledge of the extent of IWG's hose liability (at the time the Policies were issued). Plaintiff objects to the additional material as irrelevant and prejudicial.

[4] On May 8, 2002, this Court denied, by letter endorsement, plaintiff's request to file a surreply and a motion to strike the Declarations or to request additional discovery. Instead the Court ordered that plaintiff's April 30, 2002 letter, *see* 4/30/02 Letter from James E. Carroll to the Court, be considered a motion to strike or to request discovery, and that Hicks Muse's response, *see* 5/6/02 Letter from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Page 9
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

David Hird to the Court ("5/6 Def. Ltr."), be considered its opposition.

Rule 12(f) provides that, upon motion by any party, "the court may order stricken from any pleading any redundant, immaterial, impertinent, or scandalous matter."Fed.R.Civ.P. 12(f). The Second Circuit has stated that district courts should be wary when deciding whether to grant a Rule 12(f) motion on the ground that certain pleading matter is impertinent or immaterial. *SeeLipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1975); *Lennon v. Seaman,* 63 F.Supp.2d 428, 446 (S.D.N.Y.1999). Most importantly, Rule 12(f) allows a court to strike *pleadings* only. Declarations and affidavits are not pleadings. *See* Fed.R.Civ.P. 7(a) (defining pleadings as the complaint, answer, counter- and crossclaims); *Sierra v. United States,* No. 97 Civ. 9329, 1998 WL 599715, at *9 (S.D.N.Y. Sept.10, 1998) (denying plaintiff's motion to strike defendant's motion to dismiss because a motion is not a pleading). Thus, plaintiff's motion is denied.

National Union moves, in the alternative, for discovery to rebut the Declarations. National Union, however, has already taken extensive discovery in the Illinois action, where documents have been produced and nine depositions have been taken. *See* 5/6 Def. Ltr. Because additional discovery would unnecessarily protract this litigation, plaintiff's request is denied.

### V. CONCLUSION

For the foregoing reasons, Hick Muse's motion to dismiss the case against it is granted with respect to a no coverage declaration, but denied with respect to a declaration voiding the Policies as to all insureds.

S.D.N.Y.,2002.
National Union Fire Ins. Co. of Pittsburgh, PA v. Hicks, Muse, Tate & Furst, Inc.
Not Reported in F.Supp.2d, 2002 WL 1482625 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.