IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>AMERIQUEST MORTGAGE CO. )<br>MORTGAGE LENDING PRACTICES )<br>LITIGATION )<br>)<br>_____ )<br>)<br>AMERIQUEST MORTGAGE )<br>COMPANY, a Delaware Corporation; )<br>and ARGENT MORTGAGE )<br>COMPANY LLC, a Delaware limited )<br>liability company, )<br>)<br>    Defendants/Third-Party )<br>    Plaintiffs, )<br>)<br>    v. )<br>)<br>NORTHWEST TITLE AND ESCROW )<br>CORPORATION, a Minnesota )<br>corporation, *et al.*, )<br>)<br>    Third-Party Defendants. ) | MDL No. 1715<br><br>Lead Case No. 05-CV-07097<br><br>(Centralized before<br>  the Hon. Marvin E. Aspen) |

**NATIONAL REAL ESTATE INFORMATION SERVICES' MOTION
TO DISMISS OR ALTERNATIVELY TO STAY**

        Third-Party Defendant, National Real Estate Information Services ("NREIS"), by its undersigned attorneys, Goldberg Kohn Bell Black Rosenbloom & Moritz, Ltd., hereby respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss with prejudice the claims against NREIS in the Plaintiffs' Third-Party Complaint (the "Complaint"). In support thereof, NREIS states as follows:

## **INTRODUCTION**

1. In their Third-Party Complaint, Ameriquest Mortgage Company ("Ameriquest") and Argent Mortgage Company, LLC ("Argent," and with Ameriquest, "Third-Party Plaintiffs") have added hundreds of new parties to this already crowded and cumbersome litigation. The applicable substantive and procedural law makes clear that the Third-Party Plaintiffs' claims have no basis in this case. Given the significant amount of legal resources these claims will impose on the parties and this Court, the Court should address these issues now, and dismiss the claims with prejudice, or alternatively, stay them.

2. Third-Party Plaintiffs seek to hold NREIS (and the other Title Defendants) liable for any liability that may be imposed against Ameriquest and Argent by the home borrowers who are suing them. The only alleged basis for holding NREIS liable is its purported failure to deliver to the borrowers a "Notice of Right to Cancel," as required by the federal Truth in Lending Act. Ameriquest and Argent set forth four causes of action against NREIS: (1) Breach of Contract, (2) Negligence, (3) Equitable Indemnity, and (4) Contribution. (Complaint ¶¶ 18-35, 42-59). Each of Third-Party Plaintiffs' four claims, brought by both Argent and Ameriquest, are insufficient to withstand a Rule 12(b)(6) motion to dismiss.

3. From the face of the Complaint, it is clear that the relationship between Third-Party Plaintiffs and NREIS is of a commercial nature (i.e., NREIS allegedly acted as the closing agent for loans originated and/or funded by Ameriquest and Argent). But, Ameriquest and Argent have failed to allege any of the essential terms of a contract. The commercial nature of the relationship, however, precludes any claims for negligence, equitable indemnification, or contribution as a matter of law. Furthermore, no right for

contribution or indemnification exists under the Truth in Lending Act. Therefore, the Complaint against NREIS must be dismissed with prejudice. Alternatively, the unique nature of each alleged individual claim against NREIS (and the other Title Defendants) makes those claims inappropriate to litigate in this MDL. Thus, the claims should be stayed.

## BACKGROUND

4. This litigation involves claims by more than 290 individual borrowers and more than 20 putative class representatives filed against Defendants Ameriquest and Argent. These cases were consolidated and transferred to this Court for centralized pretrial proceedings. Pursuant to this Court's November 7, 2006 Order, this Court segregated the claims at issue into two categories – the 290 + individual claims (the "Opt-Out" Claims) and the Class Claims on behalf of tens of thousands of borrowers.

5. On or about August 24, 2007, Ameriquest and Argent filed the Third-Party Complaint against NREIS and almost 300 other title company and mortgage broker defendants.

6. In the Third-Party litigation, Defendants/Third-Party Plaintiffs assert indemnification and contribution claims against the Title Defendants based on allegations that the Title Defendants failed to provide certain borrowers with a Notice of Right to Cancel at the closings. With respect to the Opt-Out Claims, NREIS is alleged to have participated in the closings of only *two* of the hundreds of individual cases that are involved in this litigation: the Pasacreta Loan and the Birkholz Loan.

7. On November 14, 2007, this Court granted NREIS's Motion to Stay, Pending a Class Certification Decision, Any Claims in the Third-Party Complaint Which are Derived From Claims by Absent Class Members. Given this ruling, the only third-party

claims currently being prosecuted against NREIS by Ameriquest and Argent are two individual claims.

A. **THE THIRD-PARTY PLAINTIFFS FAIL TO PLEAD A SUFFICIENT BREACH OF CONTRACT CLAIM.**

   8. Third-Party Plaintiffs have failed to sufficiently allege a breach of contract claim against the Title Defendants. In order to meet the notice pleading standards of Rule 8(a), "a contract claim must identify [1] the relevant agreement, [2] the basic contents of that agreement, and [3] the pertinent parties." *Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*, 947 F. Supp. 347, 356 (N.D. Ill. 1996). Here, Third-Party Plaintiffs have failed to identify both the relevant agreement and the basic contents of that agreement. Third-Party Plaintiffs fail to produce, cite to, or establish the existence of a single agreement or contract that purportedly exists between the Third-Party Plaintiffs and the Title Defendants. These allegations are essential elements of a contract claim. Instead, Third-Party Plaintiffs make conclusory allegations that Ameriquest and Argent entered into generic "contracts" of no description with each of the Title Defendants.

   9. Moreover, Third-Party Plaintiffs provide no explanation of the contents of these agreements, except brief reference to a requirement in the purported contracts that each of the Title Defendants would complete a "Notice of Right to Cancel" form. (Complaint ¶¶ 20, 44). This conclusory allegation does not meet the pleading standards of Rule 8(a). To meet this standard, the Supreme Court recently held: "First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.' *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct.

99, 2 L. Ed. 2d 80 (1957)) (alteration in *Bell Atlantic*). Second, its allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14." *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). The conclusory allegation by Third-Party Plaintiffs does not meet the *Twombly* standard. Third-Party Plaintiffs' failure to identify the relevant contracts or their terms renders the Complaint insufficient to meet federal pleading standards. For these reasons, this Court should dismiss Third-Party Plaintiffs' breach of contract claim as insufficient under Federal Rule of Civil Procedure 12(b)(6).

**B. THE PARTIES' COMMERCIAL RELATIONSHIP BARS THE THIRD-PARTY PLAINTIFFS' TORT-BASED CLAIMS.**

10. Third-Party Plaintiffs should be barred from bringing their negligence claim because the present action stems from a commercial relationship between NREIS and the Third-Party Plaintiffs. (Complaint ¶ 8). Courts have developed the economic loss doctrine to prevent tort claims when a party alleges damages that have arisen out of breach of duties that arise from a commercial relationship. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract", *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995) (where party to a contract brought a negligent misrepresentation claim but alleged only economic losses, court applied economic loss doctrine to prohibit recovery for the alleged tort). As such, when a plaintiff alleges only economic damages, a negligence claim must necessarily fail. Here, Third-Party Plaintiffs have failed to allege a valid contract. But that pleading defect does not change the nature of the damages they are seeking. Given the

commercial aspect of the relationship, the Third-Party Plaintiffs have alleged only economic damages. Consequently, Third-Party Plaintiffs' negligence claim must fail.[1]

11. Under Pennsylvania law, the right to contribution "arises statutorily and only among joint tortfeasors." *See Anthony v. Small Tube Manufacturing Corp.*, 2007 U.S. Dist. LEXIS 73470, No. 06-CV-4419, *22 (E.D. Pa. 2007); *see also* 42 Pa.C.S.A. §§ 8321-8327, 8342. The right of indemnity arises "when a person or entity secondarily liable has been compelled, by reason of some legal obligation, to pay damages occasioned by the *negligence* of the party which should be primarily liable and the party who is secondarily liable is without fault." (emphasis added). *Id.* at *19-20. Thus, because both the contribution and indemnity actions necessarily stem from an underlying tort, and Third-Party Plaintiffs' negligence claim is barred by the economic loss or gist of action doctrine, Third-Party Plaintiffs' claims for contribution and indemnity are insufficient and should be dismissed. *See Atchison Casting Corp. v. Deloitte & Touche, LLP*, No. 003193, 2003 Phila. Ct. Com. Pl LEXIS 11, at *8-*9 (Phila. Com. P. March 14, 2003) (where plaintiff's breach of fiduciary duty claim sounded in contract, not tort, and "gist of action" doctrine barred claim, defendant not liable to plaintiff for contribution claim).

C. **NO CAUSE OF ACTION FOR CONTRIBUTION ARISES UNDER THE TRUTH IN LENDING ACT.**

12. In addition, Third-Party Plaintiffs should be barred from bringing their contribution claim because no cause of action for either contribution or indemnification exists under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, (the "TILA"). *See McSherry v. Capital One FSB,* 236 F.R.D. 516, 523 (W.D. Wash. 2006) (holding that the Truth in

---

[1] NREIS is based in Pennsylvania and, accordingly, the law cite herein is controlling. In any event, the economic loss doctrine is widely accepted in most jurisdictions.

-6-

Lending Act does not provide a right to contribution). Thus, as no basis for Third-Party Plaintiff's claim for contribution can be established, their claim must be dismissed with prejudice.

### IN THE ALTERNATIVE, THE CLAIMS AGAINST THIRD-PARTY TITLE DEFENDANTS SHOULD BE STAYED

13. In the case that this Court declines to grant NREIS' Motion to Dismiss, this Court should stay all Opt-Out claims against the Title Defendants because the Opt-Out claims are not appropriate for multidistrict litigation. An MDL action is appropriate when a civil action involves "one or more common questions of fact." Third-Party Plaintiffs have not alleged or shown that the claims against the Title Defendants derive from "common questions of fact."

14. The Third-Party claims against the Title Defendants are subject to varied and unique defenses in each individual case. For example, NREIS will prove two separate and unique defenses to each of the individual claims alleged against it. With respect to the alleged liability for defects with the Birkholz loan, NREIS will prove that it played no role in that loan. The named closing agent was not even affiliated with NREIS at the time of the closing. With respect to the Pasacreta loan, NREIS did, in fact, provide the allegedly missing Notice of the Right to Cancel. *See* Exhibit A. Moreover, Third-Party Plaintiffs have alleged no uniformity in their contractual relationship with the multitude of Title Defendants, and the circumstances surrounding each loan and the relationship between each Title Defendant and Ameriquest or Argent are different in each individualized case. The discovery against the individual Title Defendants will be unique for each case. The parties will not benefit from any joint discovery proceedings or orders. The costs of having the

Third-Party Defendants monitor the hearing docket in this case outweighs any benefits from having these cases proceed together. As such, Third-Party Plaintiffs' claims against the Title Defendants should be stayed.

15. District courts have broad discretion to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Such discretion is incidental to "the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether a stay is appropriate, a court must "weigh competing interests and maintain an even balance." *Id.* at 254-55. Here, because common questions of fact are not presented by all of the claims against the Title Defendants, the claims against the Title Defendants are not appropriate for the "coordinated or consolidated pretrial proceedings" envisioned by 28 U.S.C. § 1407. Thus, instead of entertaining discovery on these highly individualized claims, this Court should stay the Third-Party Plaintiffs' claims against the Title Defendants' defense.

WHEREFORE, for the reasons set forth herein, Third-Party Defendant NREIS respectfully requests that this Court dismiss Third-Party Plaintiffs' Complaint against NREIS with prejudice, or alternatively, to stay those claims.

Dated: December 3, 2007            NATIONAL REAL ESTATE INFORMATION SERVICES

                                            By: /s/ David J. Chizewer
                                                One of Its Attorneys

-9-

David J. Chizewer
Alais L. M. Griffin
Chanté D. Spann
GOLDBERG KOHN BELL BLACK
 ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000