**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) MDL No. 1715 ) ) ) Lead Case No. 1:05-cv-07097 ) ) Centralized before the ) Hon. Marvin E. Aspen |
| THIS DOCUMENT RELATES TO THE INDIVIDUAL ACTION NAMED BELOW | ) ) ) ) ) December 16, 2007 ) ) |
| JAYLEEN A. LaCROSS,<br>    Plaintiff,<br><br>v.<br><br>AMERIQUEST MORTGAGE COMPANY and HSBC BANK USA, NATIONAL ASSOCIATION F/K/A HSBC BANK USA,<br>    Defendants. | ) ) ) ) ) Case No. 1:06-cv-04036 ) ) Hon. Marvin E. Aspen ) ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jayleen LaCross seeks summary judgment on the first count of her Amended Complaint pursuant to Federal Rule of Civil Procedure 56, the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and the Connecticut Truth-in-Lending Act, Conn. Gen. Stat. ("C.G.S.") § 36a-676, *et seq.* (hereinafter, collectively "TILA"). The first count asserts that Defendant Ameriquest Mortgage Company violated TILA by only giving Ms. LaCross two days to cancel her mortgage loan transaction rather than the three business days mandated by C.G.S. § 36a-683, 15 U.S.C. § 1635(a) and 12 C.F.R. ("Reg. Z") § 226.23(b). Summary judgment is appropriate

1

because the facts underlying this claim are apparent from the face of the disclosure form that Ameriquest admits giving Ms. LaCross at her mortgage closing. This document is not subject to genuine dispute, and the material facts it contains establish as a matter of law that Ameriquest failed to properly notify Ms. LaCross that she had three business days to rescind the transaction. Both Ameriquest and its co-defendant HSBC Bank USA, National Association f/k/a HSBC Bank USA ("HSBC") are liable for statutory rescission, as set forth in TILA. HSBC is liable as an assignee pursuant to 15 U.S.C. § 1641.

### A. Summary of Facts

As more fully stated in Ms. LaCross's Statement of Material Facts, Ms. LaCross entered into a mortgage loan with Ameriquest on Friday, July 9, 2004. Statement of Material Facts (hereinafter "Stmt. of Facts") at ¶ 13. Ameriquest admits that, during the closing for this transaction, it gave Ms. LaCross a Notice of Right to Cancel form that disclosed a transaction date of Friday, July 9, 2004 and a "Final Date to Cancel" of Monday, July 12, 2004. *Id*. at ¶¶ 11-12, 17-19, 26. The intervening Sunday, July 11, 2004 does not count as a "business day" under TILA and Regulation Z. Ameriquest subsequently assigned Ms. LaCross's mortgage loan to HSBC. *Id*. at ¶ 29. On September 7, 2004 Ms. LaCross notified both defendants that she was exercising her right to cancel the transaction pursuant to TILA because Ameriquest had violated TILA by only giving her two days to cancel the transaction, rather than the mandatory three business days. *Id*. at ¶¶ 23, 29. Ameriquest's attorney, Ann Tran, responded on behalf of Ameriquest and sent Ms. LaCross (via her counsel) a letter that refused to rescind the mortgage. *Id*. at ¶¶ 25-27. Ms. Tran stated that Ameriquest had properly notified Ms. LaCross of the rescission deadline and referred to a Notice of Right to Cancel form, signed by Ms. LaCross,

enclosed with the letter. *Id*. The enclosed form, however, only gave Ms. LaCross three calendar days to rescind, rather than the mandatory three *business days*. HSBC has also failed to rescind. *Id*. at ¶ 30. Ms. LaCross filed this lawsuit to compel the Defendants to rescind her mortgage.

### B. Summary Judgment Is Proper in this Case

A party is entitled to summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004). "[A] bare contention that an issue of fact exists is insufficient to create a factual dispute." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). A motion for summary judgment may be granted in whole or in part as to the various issues in the case. *Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663, 667 (N.D. W.Va. 1975). Based on the undisputed facts set forth above, Ms. LaCross is entitled to judgment as a matter of law on the question of whether Ameriquest properly notified her that she had a right to cancel her mortgage within three business days of consummating the transaction under the Connecticut and federal Truth in Lending Acts.

### C. Connecticut's Truth-in-Lending Act is Parallel to Federal Act & Requires No Separate Consideration

Although Connecticut has enacted its own version of TILA, pursuant to a Federal Reserve Board exemption, the Connecticut TILA is substantively and functionally identical to the federal TILA and all case law and regulations applicable to the federal act are equally applicable to the state version. *See Ives v. W. T. Grant Co.*, 522 F.2d 749, 753 (2d Cir. 1975)

3

(discussing Connecticut's exemption). The Connecticut Appellate Court has concluded that "[t]he federal and the Connecticut truth-in-lending laws are identical insofar as the disclosure requirements are concerned." *Stone & Stone Pension Plan v. Alston*, 12 Conn. App. 670, 673, 538 A.2d 898 (Conn. App. Ct. 1987). A violation of the federal statute constitutes a violation of the state TILA. *See* C.G.S. § 36a-678 (mandating compliance with "all provisions of the Consumer Credit Protection Act (15 USC 1601 *et seq*.)"); C.G.S. § 36a-683(a) (setting forth liability for disclosure violations). Connecticut has expressly incorporated the federal rescission right into its version of TILA. *See* C.G.S. § 36a-683(j)(1). Connecticut state and federal courts routinely cite federal TILA jurisprudence, including federal statutes and Regulation Z, when considering TILA questions. *See, e.g., Rodriguez v. Auto Sales, Inc.*, 477 F. Supp. 2d 477 (D. Conn. 2007); *Stone & Stone*, 538 A.2d 898; *Bainer v. Citicorp Mortg*., 236 Conn. 212, 672 A.2d 500 (Conn. 1996); *Family Fin. Servs. v. Spencer*, 41 Conn. App. 754, 677 A.2d 479 (Conn. App. Ct. 1996); *Cheshire Mortg. Serv. v. Montes*, 223 Conn. 80, 612 A.2d 1130 (Conn. 1992).

### D. The Truth in Lending Act Is Designed To Protect Consumers and Achieves Its Remedial Purpose Through a System of Strict Liability

The Federal Truth in Lending Act was enacted in 1968 to regulate the disclosure of the terms of consumer credit transactions and to "aid the unsophisticated consumer so that he would not be easily misled as to the total costs of financing." *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 127 (D.N.J. 2003); *Handy v. Anchor Mortg. Corp*., 464 F.3d 760, 762 (7th Cir. 2006) ("Congress enacted TILA 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.' 15 U.S.C. § 1601(a)."). By requiring a set of uniform

4

disclosures of credit terms, the Act allows consumers to compare different financing options and their costs. 15 U.S.C. § 1601; *Ford Motor Credit v. Millhollin*, 444 U.S. 555, 559, 100 S. Ct. 789, 63 L.Ed.2d 22 (1980). Prior to its enactment, consumers had no easy way to compare various credit options because creditors were not required to use a uniform method of calculating interest. TILA is a remedial statute designed to protect consumers, who are not on an equal footing with creditors, either in bargaining for credit terms or in knowledge of credit provisions. *In re Melendez*, 235 B.R. 173, 198 (Bankr. D. Mass. 1999). By enacting TILA, Congress intended to "remedy the divergent and often fraudulent practices by which credit customers were apprised of the terms of the credit extended to them." *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d. Cir. 1988) (internal quotations omitted).

As such "TILA is a remedial statute, it is interpreted strictly in favor of the consumer." *Dauti v. Hartford Auto Plaza, Ltd.*, 213 F. Supp.2d 116, 121 (D. Conn. 2002); *N.C. Freed Co. Inc. v. Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973) (TILA to be liberally construed in favor of consumers), *cert. denied*, 414 U.S. 827 (1973). To encourage compliance, TILA violations are subject to a strict liability standard – "strict liability in the sense that absolute compliance is required and even technical violations will form the basis for liability." *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F. Supp. 1295, 1299 (D. Del. 1990). The strict compliance rule is what makes TILA so effective. "This strict interpretation of the TILA has largely been responsible for the TILA's success in achieving widespread compliance with its requirements." *In re Brown*, 106 B.R. 852, 857 (Bankr. E.D. Pa. 1989). "TILA receives a hypertechnical reading." *Brown v. Payday Check Advance, Inc*., 202 F.3d 987, 989 (7th Cir. 2000); *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 328 (7th Cir. 1999) ("Subject to narrow exceptions, 'hypertechnicality reigns' in the application of TILA.") (quoting *Cowen v. Bank*

*United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995).  As one district court has said, "There is no such thing as substantial compliance with the Truth in Lending Act, either you are or you aren't."  *Ranck v. Fulton Bank*, 1994 WL 37744 *3 (E.D. Pa. 1994) (*quoting Matter of Werts*, 48 B.R. 980, 982 (E.D. Pa. 1985)), *affirmed by* 40 F.3d 1241 (3d. Cir. 1994).

### E.  Mortgage Lenders Must Properly Disclose Three Business Day Right To Cancel

The Truth in Lending Act provides homeowners with an unqualified right to cancel their mortgage transactions "until midnight of the third *business* day following consummation . . . ."  15 U.S.C. § 1635 (emphasis added); 12 C.F.R. §226.23(a)(3); C.G.S. § 36a-683; *Handy*, 464 F.3d at 762.  During that time, a homeowner has the opportunity to privately "reconsider any transaction which would have the serious consequence of encumbering the title to his home."  *Rodash v. AIB Mortg. Co.*, 16 F.3d 1142, 1145 (11th Cir. 1994) (*quoting* S. Rep. No. 368, 96th Cong., 2d Sess. 28 (1980), reprinted in 1980 U.S.C.C.A.N. 236, 264).  "In addition to creating the right of rescission, TILA requires creditors 'clearly and conspicuously' to disclose to borrowers their right to rescind and the length of the rescission period, as well as to provide borrowers with 'appropriate forms. . . to exercise [their] right to rescind [a] transaction.'"  *Handy*, 464 F.3d at 763 (quoting 15 U.S.C. § 1635(a)).  If a creditor fails to properly notify a borrower of the right to cancel, the deadline for cancelling, or other material TILA disclosures, "the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."  12 C.F.R. § 226.23(a)(3); 15 U.S.C. § 1635(f); C.G.S. § 36a-683(j)(3); *Elliott v. ITT Corp.*, 764 F. Supp. 102, 105 (N.D. Ill. 1991) ("If the required notice of the right to rescind or the material disclosures are not, in fact, delivered, the right expires three years after consummation").

Creditors must provide consumers with a disclosure notice regarding the consumer's right to cancel on a separate document that sets forth, among other things: "the consumer's right to rescind the transaction . . . and [t]he date the rescission period expires." 12 C.F.R. § 226.23(b)(1). Without strict enforcement of a creditor's duty to disclose the right to rescind, creditors taking a security interest in a consumer's residence would have substantially less incentive to comply with the terms of the Truth in Lending Act.

### F. This Transaction Was Subject To TILA's Right of Rescission

The Truth in Lending Acts and Regulation Z apply to:

> each individual or business that offers or extends credit when four conditions are met: (i) The credit is offered or extended to consumers; (ii) the offering or extension of credit is done regularly; (iii) the credit is subject to a finance charge or is payable by a written agreement in more than 4 installments; and (iv) the credit is primarily for personal, family, or household purposes.

12 C.F.R. § 226.1(c)(1). A "consumer" is a natural person. 15 U.S.C. § 1602(h); 12 C.F.R. § 226.2(a)(11); C.G.S. § 36a-676(a)(1). The term "credit" is defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e); 12 C.F.R. § 226.2(a)(14); C.G.S. § 36a-676(a)(3). A business is a "creditor" where it regularly extends consumer credit subject to a finance charge (or payable by written agreement in more than four installments) and to whom the obligation is initially payable. 12 C.F.R. § 226.2(a)(17)(i); 15 U.S.C. § 1602(f); C.G.S. § 36a-676(a)(5). According to the Federal Reserve Board, and for purposes of this motion, an individual or business extends credit "regularly" if it does so "more than 5 times for transactions secured by a dwelling . . . in the preceding calendar year." 12 C.F.R. § 226.2(a)(17)(i), n. 3.

7

Ameriquest meets all of the requirements for being a creditor subject to the Truth in Lending Acts and Regulation Z for the calendar year of 2004, when the loan at issue was originated. Stmt. of Facts at ¶ 6-8. *See also Washington v. Ameriquest Mortg. Co.*, 2006 U.S. Dist. LEXIS 50804 (N.D. Ill., July 11, 2006) (finding 2003 Ameriquest mortgage transaction subject to TILA); *Poppitz v. Ameriquest Mortgage Co. (In re Poppitz)*, 2005 Bankr. LEXIS 118 (Bankr. D. Kan., Jan. 26, 2005) (finding 2002 Ameriquest mortgage transaction subject to TILA). In 2003 and 2004 Ameriquest extended consumer credit at least six times each year in transactions secured by a dwelling. Stmt. of Facts at ¶ 7-8. Ms. LaCross meets the definition of "consumer" because she is a natural person. *Id*. at ¶ 1. The "credit" at issue in this case is the promissory note Ms. LaCross entered into with Ameriquest. *Id*. at ¶ 13. The Note is "credit" within the meaning of TILA because it allowed Ms. LaCross to incur a debt of $109,000.00 to Ameriquest and to defer the full repayment of it for 30 years by making 360 monthly payments. *Id*. The mortgage loan at issue refinanced Ms. LaCross's pre-existing mortgage on the same property and was for personal, family, and household purposes. *Id*. at ¶¶ 14-15.

### G. Ameriquest Did Not Give Ms. LaCross Three Business Days

Ameriquest violated TILA by giving Ms. LaCross only two business days to rescind rather than the required three business days. The definition of "business day" is central to this motion for summary judgment. A "business day" is defined, for purposes of rescission, to included "all calendar days except Sundays and the legal public holidays . . . ." 12 C.F.R. § 226.2(a)(6). Ms. LaCross's mortgage loan transaction took place on July 9, 2004. Stmt. of Facts at ¶¶ 13, 16. The Court may take judicial notice that July 9, 2004 was a Friday and was, therefore, a business day. Fed. R. Evid. 201; *Commodari v. Long Island University*, 89 F.

8

Supp.2d 353, 379 (E.D.N.Y. 2000), *affirmed by* 62 Fed. Appx. 28 (2d Cir. 2003) (taking judicial notice "of the fact that November 26, 1998 was Thanksgiving"); *Brown v. Piper*, 91 U.S. 37, 42, 1 Otto 37, 23 L. Ed 200 (1875) (holding "Among the things of which judicial notice is taken are . . . the coincidences of the days of the week with those of the month . . . ."). The "Notice of Right to Cancel" that Ameriquest gave Ms. LaCross at her mortgage closing shows July 12, 2004 as the date her rescission period expires. Stmt. of Facts at ¶¶ 17-19, 25. Ms. LaCross also asks the Court to take judicial notice that July 11, 2004 was a Sunday and July 12th was a Monday. *Id*. at ¶ 19. The disclosed July 12, 2004 "Final Date to Cancel" was only ***two business days*** after the transaction date and therefore did not meet TILA's three business day requirement.

There is no genuine issue of material fact regarding the "notice of right to cancel" disclosures given to Ms. LaCross. Ameriquest's counsel, Ann Tran, Esq. responded to Ms. LaCross's rescission notice by providing a copy of the Notice of Right to Cancel form attached as Exhibit 14 to the Graeber Affidavit. Stmt. of Facts at ¶¶ 25-27. In the accompanying letter, Ms. Tran wrote: "Attached please find completed copies of the *Notice [of Right to Cancel]* . . . that were provided to [Ms. LaCross] at loan closing and which they [*sic*] acknowledged receipt of by signing." Exh. 14 to Graeber Aff. Ms. Tran, on Ameriquest's behalf, denied Ms. LaCross's request to rescind based on the defective notice that Ms. Tran enclosed with her letter. *Id*.

Ameriquest should have notified Ms. LaCross, during her closing, that her last day to rescind was July 13, 2004 rather than July 12th. The Notice of Right to Cancel at issue in this case was deficient because it did not give Ms. LaCross enough time to rescind her mortgage transaction and thereby failed to meet the requirements of 12 C.F.R. § 226.23(b)(1). Because Ameriquest failed to properly disclose the three business day rescission period, Ms. LaCross's

9

rescission deadline was automatically extended by three years pursuant to 12 C.F.R. § 226.23(a)(3). Ms. LaCross exercised her extended right to rescind on September 7, 2005—well within the extended three-year deadline—and is therefore entitled to enforce her rescission in this Court. *See* Stmt. of Fact at ¶ 23 (rescission letter).

### H. HSBC Is Liable For Rescission Because It Is an Assignee

HSBC is equally liable for rescinding Ms. LaCross's mortgage transaction because it is an assignee of her mortgage loan. Stmt. of Facts at ¶ 28. TILA expressly states "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c); C.G.S. § 36a-683(k)(3). Additionally, HSBC could also be held liable because the inaccurate Notice of Right to Cancel is a violation that is apparent from the face of the documents. In addition to the provisions of 15 U.S.C. § 1641(c), mortgage assignees are also liable for TILA violations where "the violation . . . is apparent on the face of the disclosure statement" and the assignment was voluntary. 15 U.S.C. § 1641(e)(1); C.G.S. § 36a-683(k)(4)(A).

### I. Damages

Both Defendants must rescind Ms. LaCross' mortgage transaction. Each Defendant is also liable for $2,000 in statutory damages for failing to properly respond to Ms. LaCross's September 2005 rescission letter and for Ms. LaCross' attorney fees and costs.

#### 1. Rescission

10

Once a borrower exercises her right to rescind, she "is not liable for any finance or other charge, and any security interest [she has given], including any such interest arising by operation of law, becomes void' upon rescission." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1635). *See also* 12 C.F.R. § 226.23(d)(1). "[R]escinding a loan transaction requires unwinding the transaction in its entirety and thus requires returning the borrowers to the position they occupied prior to the loan agreement." *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 877 (6th Cir. 2006); *Trimmel v. General Elec. Credit Corp.*, 555 F. Supp. 264, 268 n. 3 (D. Conn. 1983) (observing aim of 15 U.S.C. § 1635 is restoration of "status quo ante"); *In re Ramirez*, 329 B.R. 727, 738 (D. Kan. 2005) ("within the context of the TILA, rescission is a remedy that restores the status quo ante."). When a consumer rescinds a mortgage transaction, both the loan (the promissory note) and the mortgage deed are cancelled and the transaction must be unwound. *Arnold v. W.D.L. Investments, Inc.*, 703 F.2d 848, 849 (5th Cir. 1983) (affirming decision cancelling note along with mortgage); *Elsner v. Albrecht*, 460 N.W.2d 232, 234-35 (Mich. Ct. App. 1990) ("15 U.S.C. § 1635(a) and 12 C.F.R. § 223.26(a)(1) allow the borrower to rescind 'the transaction' including pendent documents such as the promissory note. . . . [15 U.S.C. § 1635(b)] clearly contemplates a return to the status quo ante and thus the extinguishment of the underlying obligation.") (internal quotations omitted). The amount of the borrower's tender obligation should include a credit for payments made on the loan and for any statutory damages awarded. *Reese v. Hammer Fin. Corp.*, 1999 U.S. Dist. LEXIS 18812 (N.D. Ill., Nov. 29, 1999); *Clay v. Johnson*, 77 F. Supp. 2d 879, *rev'd on other grounds*, 264 F.3d 744 (7th Cir. 2001).

11

The TILA rescission process was intended to be self-effectuating based on the method set forth in the Act and Regulation Z. *See* 15 U.S.C. § 1635, C.G.S. § 36a-683(j), and 12 C.F.R. § 226.23. Regulation Z sets forth a clear procedure for effectuating rescission:

> 226.23(d)(1): "When a consumer rescinds a transaction, the security interest . . . becomes void"
>
> 226.23(d)(2): "Within 20 calendar days . . . the creditor shall return any money . . . that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest."
>
> 226.23(d)(3): "When the creditor has complied with [paragraph (d)(2)], the consumer shall tender the money or property to the creditor"

12 C.F.R. § 226.23(d). "Under § 1635(b), however, all that the consumer need do is notify the creditor of his intent to rescind." *Williams v. Homestake Mortgage Company*, 968 F.2d 1137, 1140 (11th Cir. 1992); *Family Financial Services, Inc. v. Spencer*, 41 Conn. App. 754, 769 (1996) (same).

Courts have expressly recognized that statutory rescission under TILA works differently than common law rescission. In *Velazquez v. HomeAmerican Credit, Inc., d/b/a Upland Mortgage*, the Northern District of Illinois recognized that "TILA's scheme is contrary to the rule under common law rescission, where the rescinding party must tender first." *Velazquez*, 254 F. Supp. 2d 1043, 1045 (N.D. Ill. 2003). Under the TILA scheme for rescission, the mortgagor does not become obligated to return the proceeds of the loan until the mortgagee acts first as described in 12 C.F.R. § 226.23(d)(1) and (2). 12 C.F.R. § 226.23(d)(3) ("When the creditor has complied with [paragraph (d)(2)], the consumer shall tender the money or property to the creditor"). The 1st Circuit has similarly held that the statutory rescission process created by TILA and Regulation Z is a reversal of common law rescission. *Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, 55-56 (1st Cir. 2002) ("in contrast to common law rescission, the

borrower need not first return the loan proceeds received under the agreement to effect a rescission."). "The purpose of the TILA's reordering of common law rescission rules is to put the consumer in a stronger bargaining position" because the lender has violated the law. *Id.*

Additionally, as a practical matter, TILA's mandate that the lender act first in rescission is necessary to give borrowers a reasonable opportunity to meet their tender obligation. Most borrowers meet their tender obligation by obtaining a new mortgage from a different lender. Unless the rescinding lender acts first, the land records and the borrower's credit report will incorrectly show that the rescinded mortgage is still in force at its pre-rescission balance. This will hinder the borrower's attempt to find new financing because most prospective lenders will be reluctant to extend a new mortgage in any amount less than what would be needed to satisfy the pre-existing mortgage. Unless the rescinding lender acts first, all prospective lenders will mistakenly believe that the balance due is still the pre-rescission amount, rather than the reduced, tender amount.

### 2. Statutory Damages, Fees, and Costs

When a creditor or assignee receives a consumer's rescission notice, TILA and Regulation Z give them twenty calendar days to comply. 15 U.S.C. § 1635(b), 12 C.F.R. § 226.23(d)(2). If they fail to do so, they have violated a "requirement" of 15 U.S.C. § 1635 and may be held liable for damages under section 1640(a). *Belini v. Wash. Mut. Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005); 15 U.S.C. § 1641 (assignee liability). "A lender's failure to rescind is a separate violation of TILA which gives rise to claims for statutory and actual damages." *Mount v. LaSalle Bank Lake View*, 886 F. Supp. 650, 651 (N.D. Ill. 1995). The limitations period for statutory damages arising from such a claim is one year and runs from the twenty-first day after

receipt of the rescission notice. 15 U.S.C. § 1641; *Brown v. Nationscredit Fin. Servs. Corp.*, 349 F. Supp. 2d 1134, 1138 (N.D. Il. 2005); *Jones v. Ameriquest Mortg. Co.*, 2006 U.S. Dist. LEXIS 3788, *28 (N.D. Ill. 2006); *Egipciaco Ruiz v. R&G Fin. Corp.*, 313 F. Supp. 2d 48, 50 (D.P.R. 2004).

Ms. LaCross sent her rescission notice to Ameriquest on September 7, 2005. Stmt. of Facts at ¶ 23. On September 22, 2005 Ameriquest sent her a letter in which they refused to rescind. *Id*. at ¶ 25. Ms. LaCross also sent her rescission notice to HSBC on September 7, 2005. *Id*. at ¶ 29. HSBC received that letter on September 10, 2007 and has failed to comply. *Id*. at ¶¶ 29-30. If this Court finds that Ms. LaCross lawfully exercised her right to rescind, that automatically means Ameriquest and HSBC wrongly refused to comply with her request. For this violation, Ms. LaCross is entitled to two awards of statutory damages (one for each Defendant's refusal to comply) in the amount of twice the finance charge, up to $2,000. 15 U.S.C. § 1640(a)(2). Section 1640 also entitles Ms. LaCross to "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3).

## Conclusion

Ms. LaCross entered into a mortgage transaction with Ameriquest Mortgage Company on July 9, 2004. In the course of that transaction Ameriquest gave Ms. LaCross a "Notice of Right to Cancel" that only gave her *two business days* to rescind the transaction. Under TILA and Regulation Z, Ms. LaCross was entitled to cancel her mortgage up to midnight of the *third business day* following consummation of the transaction. Ms. LaCross asks the court to grant her summary judgment on the first count of her Amended Complaint by finding that Ameriquest failed to properly notify her of the correct deadline for exercising her right to cancel the

mortgage transaction, in violation of the Truth in Lending Acts. Ms. LaCross further seeks judgment against HSBC on the grounds that 15 U.S.C. § 1641 makes it liable as an assignee of Ms. LaCross's mortgage loan. Both defendants are also liable for failing to properly respond to Ms. LaCross's rescission notice.

                              PLAINTIFF, JAYLEEN A. LaCROSS

                              /s/ Andrew G. Pizor

By: _____
      Andrew G. Pizor (ct27015)
      apizor@consumerlawgroup.com
      Consumer Law Group, LLC
      35 Cold Spring Rd.; Suite 512
      Rocky Hill, Connecticut 06067
      Tel. (860) 571-0408  Fax (860) 571-7457

## CERTIFICATE OF SERVICE

      I hereby certify that on this 26th day of December, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      The foregoing was mailed to the following pro se and non-appearing parties:

                              /s/ Andrew G. Pizor
                              Andrew G. Pizor

Case: 1:05-cv-07097 Document #: 1822 Filed: 12/26/07 Page 16 of 16 PageID #:22233