**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO.<br>MORTGAGE LENDING PRACTICES<br>LITIGATION<br><br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯<br><br>AMERIQUEST MORTGAGE COMPANY, a<br>Delaware corporation; and ARGENT<br>MORTGAGE COMPANY LLC, a Delaware<br>limited liability company,<br><br>　　　　Third-Party Plaintiffs,<br><br>　　v.<br><br>NORTHWEST TITLE AND ESCROW<br>CORPORATION, a Minnesota corporation,<br>et al.,<br><br>　　　　Third-Party Defendants. | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>Centralized before the Honorable<br>Marvin E. Aspen |

**CERTAIN THIRD-PARTY DEFENDANTS' CONSOLIDATED MEMORANDUM OF
LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED
CONSOLIDATED THIRD-PARTY COMPLAINT**

Third-Party Defendants listed in Exhibit A to the accompanying Motion to Dismiss the

Second Amended Consolidated Third-Party Complaint (collectively, "Third-Party Defendants")

submit this Consolidated Memorandum of Law in Support of their Motion to Dismiss pursuant to

Federal Rules of Civil Procedure 8(a) and 12(b)(6).

**BACKGROUND**

Borrowers across the country have sued Defendants/Third-Party Plaintiffs, Ameriquest

Mortgage Company ("Ameriquest") and Argent Mortgage Company LLC ("Argent")

(collectively, "Third-Party Plaintiffs"), claiming, *inter alia*, that they violated the federal Truth-

in-Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, by failing to provide a complete and

accurate "Notice of Right to Cancel" or failing to provide the correct number of copies of this notice. By their Second Amended Consolidated Third-Party Complaint ("Third-Party Complaint"), Ameriquest and Argent now attempt to implead hundreds of closing agents and title underwriters (referred to collectively in the Third-Party Complaint as the "Title Defendants") and mortgage brokers (referred to there as the "Broker Defendants"), and allege that if Ameriquest and Argent are liable on the borrowers' underlying complaints, then Third-Party Defendants are liable to them.

On February 11, 2008, Ameriquest and Argent were granted leave to file the Third-Party Complaint, in the above-captioned Multidistrict Litigation ("MDL"). Third-Party Defendants are included in both groups of defendants Ameriquest and Argent have sued. In Exhibits A and B to their Third-Party Complaint, Ameriquest and Argent identify the various underlying lawsuits that purport to give rise to their third-party action. Although Ameriquest and Argent indicate that the borrowers' underlying lawsuits contain a variety of claims related to their mortgage loans, the Third-Party Complaint against the Title Defendants is based solely on the borrowers' claims that Ameriquest and Argent violated TILA by allegedly failing to provide them with a complete and accurate Notice of Right to Cancel or by failing to provide the correct number of copies of this notice. (Compl. ¶¶ 9-10.) The Third-Party Complaint against the Broker Defendants is based primarily on the same claim. (Compl. ¶¶ 11-17.)

In this regard, Ameriquest and Argent allege that they entered into separate agreements with each of the Third-Party Defendants, in which they agreed to close Ameriquest and Argent loans. (Compl. ¶¶ 8, 14.) Ameriquest and Argent claim that as part of those agreements, Third-Party Defendants were required to accurately complete and then provide borrowers with the correct number of copies of the Notice of Right to Cancel for each loan that they closed. (*Id.*)

Asserting claims for breach of contract (Counts I, V and VI), negligence (Counts II and VII), equitable indemnity (Counts III and VIII), and contribution (Counts IV and IX), Ameriquest and Argent contend that if the underlying plaintiffs prevail on their TILA claims for failure to provide the Notices of Right to Cancel, then Third-Party Defendants should be liable because such failure would be "attributable" to them.  (Compl. ¶¶ 10, 17.)

Specifically, as their breach of contract claims in Counts I and VI, Third-Party Plaintiffs assert that they entered into unidentified "contracts" with Third-Party Defendants which supposedly required them to provide the Notice of Right to Cancel, and that if the allegations of the underlying lawsuits are proven true, Third-Party Defendants would have "breached" those contracts.  (Compl. ¶¶ 19-22, 43-46.)  As their breach of contract claims in Counts V, Third-Party Plaintiffs allege that they entered into unidentified "contracts" with the Broker Defendants only which supposedly required them to provide "full, accurate and truthful disclosure" of all "facts, information or documentation" that might affect the loan process, and that if the allegations of the underlying lawsuits are proven true, the Broker Defendants would have "breached" those contracts.  (Compl. ¶¶ 37-41.)  As their negligence claims, Third-Party Plaintiffs contend that Third-Party Defendants had a "duty" to follow the law requiring provision of the Notice of Right to Cancel under TILA, and that if the allegations of the underlying lawsuits are proven true, Third-Party Defendants would have "breached" this duty by failing to follow that law.  (Compl. ¶¶ 24-26, 48-50.)  And, as their equitable indemnity and contribution claims, Third-Party Plaintiffs contend that if the allegations of the underlying lawsuits are proven true, they are entitled to indemnification and contribution from Third-Party Defendants "[u]nder principals [*sic*] of equity," because Third-Party Defendants allegedly were "responsible" for providing the Notice of Right to Cancel.  (Compl. ¶¶ 28-30, 32-35, 52-54, 56-59.)

3

However, as set forth below, all of Third-Party Plaintiffs' claims fail as a matter of law. Accordingly, the Third-Party Complaint should be dismissed with prejudice in its entirety.

## ARGUMENT

## I.    THIRD-PARTY PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT IN COUNTS I, V AND VI SHOULD BE DISMISSED.

Ameriquest's and Argent's Third-Party Complaint fails to sufficiently allege a breach of contract claim against Third-Party Defendants. In order to satisfy the pleading standards of Rule 8(a), "a contract claim must identify [1] the relevant agreement, [2] the basic contents of that agreement, and [3] the pertinent parties." *Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*, 947 F. Supp. 347, 356 (N.D. Ill. 1996). Here, however, Ameriquest and Argent have not identified the relevant agreements or the basic contents of the purported agreements. They have not attached, established the existence of, or even cited to a single agreement or contract between Third-Party Plaintiffs and any of the Third-Party Defendants. Instead, Ameriquest and Argent make only conclusory allegations of unidentified "contracts."[1]

In addition, Third-Party Plaintiffs provide no explanation of the contents or provisions of these purported agreements, except for a bald reference to an alleged "requirement" that each of the Third-Party Defendants complete and provide the "Notice of Right to Cancel." (Compl. ¶¶ 20, 44.) But this conclusory allegation does not meet the federal pleading standards, as recently clarified by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Indeed, to meet this standard:

> First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.' *Bell Atlantic Corp. v. Twombly*, 127

---

[1] To the extent Third-Party Plaintiffs contend that the Court's Order to file a consolidated third-party complaint makes any further specificity unmanageable, Third-Party Plaintiffs could have provided the required allegations by simply attaching an appendix that contains this information or even included it as part of their existing Exhibits.

4

> S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)) (alteration in *Bell Atlantic*). Second, its allegations must plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level;' if they do not, the plaintiff pleads itself out of court. *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n.14.

*EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007).

Clearly, Third-Party Plaintiffs' failure to identify the relevant contracts or their supposed terms does not give Third-Party Defendants "fair notice" of the claims against them. And, as pled, the Third-Party Complaint does not suggest that Ameriquest and Argent have a possibility of relief that is above a "speculative level." As such, Ameriquest's and Argent's conclusory allegations do not meet the pleading standard set forth by the Supreme Court in *Twombly*. For these reasons, the breach of contract claims in Counts I, V and VI should be dismissed.

## II.    THIRD-PARTY PLAINTIFFS' NEGLIGENCE CLAIMS IN COUNTS II AND VII SHOULD BE DISMISSED.

As the basis of their negligence claims in Counts II and VII, Ameriquest and Argent contend that Third-Party Defendants had a "duty" to follow TILA's requirement concerning provision of the Notice of Right to Cancel, and that if the underlying plaintiffs prove that they were not provided with accurate notices or the correct number of notices, Third-Party Defendants would have "breached" this "duty" by failing to follow TILA. (Compl. ¶¶ 24-26, 48-50.) These claims fail for at least two basic reasons. First, TILA does not impose any "duty" on Third-Party Defendants (none of whom are creditors) to provide the Notice of Right to Cancel; thus, they did not owe — and necessarily could not have breached — any such duty to Third-Party Plaintiffs, to the borrowers, or to anyone else. Second, Ameriquest's and Argent's negligence claims, which seek only economic damages, are barred by the "economic loss doctrine" under applicable state law. Consequently, Counts II and VII should be dismissed with prejudice.

1. **Third-Party Defendants Do Not Have A Duty Under TILA To Provide The Notice Of Right To Cancel.**

In its recent dismissal of Ameriquest's negligence claims against the third-party defendant credit reporting agencies, this Court held that "[t]he existence of a duty owed to the plaintiff by the defendant is thus the cornerstone of a negligence action, and as Third-Party Defendants point out, it is absent here." *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, MDL No. 1715, Lead Case No. 05 C 7097, slip op. at 19 (N.D. Ill. Mar. 5, 2008) (Docket No. 2003). This "duty" is similarly absent here.

By its plain terms, TILA imposes a duty to make certain disclosures in connection with a credit transaction, including notice of the borrower's right to cancel, on "creditors" **only**, and **not** on any other third-party involved in the transaction. *See Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir. 2006) ("the creditor, and the creditor alone, is required to disclose this, and any other, required information"); *Wilson v. Homecomings Fin. Network, Inc.*, 407 F. Supp. 2d 893, 896 (N.D. Ohio 2005) (mortgage broker is not a "creditor" under TILA, thus TILA's disclosure requirements do not apply to it). In fact, courts have "emphasize[d] that the plain language and purpose of the TILA is to ensure that the responsibility to make disclosures is placed solely with the actual creditor . . . ." *Vallies*, 432 F.3d at 496.

Indeed, Section 1635 of TILA unambiguously requires only the "creditor" to provide notice of a borrower's right to cancel (or rescind), as follows:

> (a) Disclosure of obligor's right to rescind
>
> Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms

required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The **creditor** shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The **creditor** shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a) (emphasis added); *see also* 12 C.F.R. § 226.23(b)(1).

"Creditor" is defined in Section 1602(f) as follows:

(f) The term "creditor" refers only to a person who both

(1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and

(2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. . . . Any person who originates 2 or more mortgages referred to in subsection (aa) of this section in any 12-month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter.

15 U.S.C. § 1602(f); 12 C.F.R. § 226.2(a)(17).

Quite simply, Third-Party Defendants, as closing agents, title underwriters and mortgage brokers, are not "creditors" under TILA, nor are they alleged to be. Accordingly, they do not owe a "duty" to Third-Party Plaintiffs, the borrowers, or anyone else to make the disclosures the underlying plaintiffs claim were not made. As a result, Ameriquest's and Argent's negligence claims, alleging that Third-Party Defendants "breached" a non-existent duty, fail as a matter of law.

Moreover, even if Third-Party Defendants owed a duty to make the disclosures (which they clearly do not), that duty would be owed to the borrowers, and not to Ameriquest and Argent. In this regard, this Court recently determined that although the third-party defendant credit reporting agencies in this case owed certain obligations to consumers under the Fair Credit Reporting Act ("FCRA"), those duties were not owed to Ameriquest. *See In re Ameriquest*, slip op. at 19-20. As such, those duties could not serve as the basis of Ameriquest's negligence claims, and thus the Court dismissed those claims. *Id.* Similarly, here, TILA's disclosure requirements exist for the benefit of borrowers. Accordingly, to the extent any duty is owed, it would be owed to the borrowers alone, not to Ameriquest and Argent. For this reason as well, the negligence claims should be dismissed with prejudice.

### 2. Third-Party Plaintiffs' Negligence Claims Are Barred By The Economic Loss Doctrine.

Even if Ameriquest and Argent could set forth the required elements of their negligence claims, those claims nevertheless would be barred by the "economic loss doctrine" under the law of almost every state. In its most basic form, the economic loss doctrine bars tort claims — such as Third-Party Plaintiffs' negligence claims here — where the alleged damages are purely economic — i.e., damages that do not involve personal injury or property damage. *See, e.g.*, *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 435 N.E.2d 443 (1982). Because Ameriquest and Argent seek to recover purely economic damages, their negligence claims are barred.

As a threshold matter, application of the economic loss doctrine to the state law negligence claims raises at least the possibility of choice-of-law issues. To conduct the choice-of-law inquiry, the Court should consider each individual case that is part of this MDL and apply the choice-of-law principles that would govern the court that transferred the case. *See In re*

*Parmalat Securities Litigation*, 412 F. Supp. 2d 392, 399 (S.D.N.Y. 2006) ("To the extent that the action involves issues of state law, this court applies the choice of law rules that would govern in the transferor forum."); *In re Starlink Corn Products Liability Litigation*, 211 F. Supp. 2d 1060, 1063 (N.D. Ill. 2002) ("With respect to issues of state law we must apply the same law as the transferor court."). Those principles would then be used to determine which state's law applies to the negligence claims in each case. Of course, this requires separate choice-of-law analyses in each one of the hundreds of cases comprising this MDL, and such a case-specific inquiry is far beyond the scope of this Consolidated Memorandum. However, suffice it to say, the overwhelming majority of states recognize the economic loss doctrine, as set forth in the attached Appendix.

Here, Ameriquest and Argent do not seek to recover for any personal injury or property damage. Rather, they seek to recover money that they may be required to pay the borrowers if they prevail on their TILA claims. Clearly, any such losses are purely economic in nature. And, for each of the cases controlled by the law of a state included in the Appendix, Third-Party Plaintiffs cannot recover those economic losses in tort. Thus, for this reason as well, Ameriquest's and Argent's negligence claims in Counts II and VII should be dismissed with prejudice.

## III. THIRD-PARTY PLAINTIFFS' EQUITABLE INDEMNITY CLAIMS IN COUNTS III AND VIII AND CONTRIBUTION CLAIMS IN COUNTS IV AND IX SHOULD BE DISMISSED.

As this Court recently held and as other courts have consistently found, there is no right to indemnification or contribution for violation of many of the statutes that comprise the federal

Consumer Credit Protection Act, including TILA.[2]  *See, e.g.*, *In re Ameriquest*, slip op. at 7-12; *McSherry v. Capital One FSB*, 236 F.R.D. 516, 522-23 (W.D. Wash. 2006).  Accordingly, Third-Party Plaintiffs' claims for equitable indemnity (Counts III and VIII) and contribution (Counts IV and IX) must be dismissed with prejudice.

Where a party is or may be liable for a violation of a federal statute, "the question whether indemnification or contribution is available is one of federal, not state law."  *Meyers v. Freedom Credit Union*, 2007 WL 2753172, at *7 (E.D. Pa. Sept. 21, 2007); *see also Donovan v. Robbins*, 752 F.2d 1170, 1179 (7th Cir. 1985); *In re Ameriquest*, slip op. at 7 n.8; *Kay v. First Continental Trading, Inc.*, 966 F. Supp. 753, 754 (N.D. Ill. 1997).  Under federal law, indemnification or contribution is available only if such right is set forth in the statute itself, either expressly or implicitly, or under federal common law.  *See, e.g.*, *Kay*, 966 F. Supp. at 744.

Where a statute does not expressly allow a claim for indemnification or contribution, courts look to the following factors, set forth by the United States Supreme Court in *Cort  v. Ash*, 422 U.S. 66, 78 (1975), to determine whether an implied right exists:

> (1) whether the plaintiff is a member of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, to create or deny the remedy sought; (3) whether the remedy sought is consistent with the purposes of the legislative scheme; and (4) whether the cause of action is one "traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law."

*McSherry*, 236 F.R.D. at 520.  In this regard, this Court and the Seventh Circuit have acknowledged that "courts are understandably 'reluctant to recognize a right of contribution as a

---

[2] Other consumer protection laws contained in the Consumer Credit Protection Act include FCRA, 15 U.S.C. § 1681 *et seq.*, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

matter either of federal common law or of statute.'" *In re Ameriquest*, slip op. at 9, *quoting*

*Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005). As the Seventh Circuit explained:

> The reluctance is understandable. A right of contribution is not required to achieve either the compensatory or the deterrent objectives of the law. The first point is obvious, the second only a little less so. One or more of the defendants may get off scot-free because the plaintiff has collected the entire judgment from another defendant; that is true. But not knowing beforehand whom the plaintiff will go against, each potential defendant has an expectation of being the unlucky one, and that expectation performs the deterrent function. In general, then, all that a right of contribution does is add to the costs of litigation, and so unless there is a compelling reason to suppose that the legislature would want such a right to be enforced . . . it will not be.

*Anderson*, 397 F.3d at 523.

In *McSherry*, 236 F.R.D. at 516, plaintiff sued a creditor, among others, for violations of TILA and FCRA after it allegedly reported false credit information concerning plaintiff. Specifically, plaintiff claimed that the creditor had wrongfully attributed a debt to plaintiff when the debt had actually been incurred by plaintiff's father. The creditor thereafter filed a third-party complaint against the father for indemnity and contribution. Plaintiff moved to strike the third-party complaint on the ground that neither TILA nor FCRA provides a right to indemnity or contribution. The court agreed and struck the creditor's third-party complaint.

In reaching its ruling, the court first analyzed FCRA and determined that it does not provide an express or implied right to indemnity or contribution. *Id.* at 520-22. The court then turned to TILA and recognized that it, too, does not expressly provide a right of indemnity or contribution. *Id.* at 522. Accordingly, the court considered whether TILA implies such a right of action by applying the factors set forth in *Cort*, finding as follows:

> TILA itself, along with FCRA and other related statutes, is part of chapter 41 of Title 15 (Commerce and Trade). Chapter 41 is entirely devoted to consumer credit protection. As such, and as is

11

> otherwise clear from the subject matter of TILA . . ., the purpose of these statutes generally is to protect consumers and to give them rights against creditors, among others. For the purposes of the *Cort* analysis, the Court finds that TILA . . . is virtually indistinguishable from FCRA.

*Id.* Thus, applying the *Cort* factors, the court found that (1) a creditor is not a member of the class intended to be protected by TILA, (2) there was no evidence of legislative intent to create a right of contribution or indemnity, and (3) a right of indemnity or contribution would be inconsistent with TILA's legislative scheme. *Id.* Accordingly, the court concluded that the *Cort* factors "weigh decisively" against a finding that TILA confers an implied right to contribution or indemnity upon creditors. *Id.*

Lastly, the court found "that there is no federal common law right" to indemnity or contribution available to creditors under TILA, reasoning as follows:

> It is the rare case where a court finds that federal common law provides for a right of contribution. "Application of a federal rule is appropriate where a uniform national rule is necessary to further the interests of the Federal Government or where there is a significant conflict between some federal policy or interest and the use of state law." *Pankow Constr. Co. v. Advance Mortgage Corp.*, 618 F.2d 611, 613 (9th Cir. 1980) [*citing Miree v. DeKalb County*, 433 U.S. 25, 29 (1977).] In the specific context of a right of contribution, the Seventh Circuit stated, "all that a right of contribution does is add to the costs of litigation, and so unless there is a compelling reason to suppose that the legislature would want such a right to be enforced, . . . it will not be." *Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005). In the present case, it is neither apparent that the Court need craft a federal common law remedy for purposes of uniformity nor that Congress would have wanted a right of contribution to be created or enforced.

*Id.* at 522-23. Therefore, having found that TILA does not expressly or implicitly contain a right to indemnity or contribution, and that such right is not provided under federal common law, the court struck the creditor's third-party claims for indemnity and contribution. *Id.*

Similarly, as part of this case, the Court has held that Ameriquest does not have a right to indemnity or contribution against the third-party defendant credit reporting agencies under the FCRA. *See In re Ameriquest*, slip op. at 7-12. Specifically, the Court determined that the text of the FCRA "plainly does not grant Ameriquest any right to seek indemnification or contribution," that the FCRA's "'structure really negates any inference' that contribution or indemnification are permitted," and that there is no reason to extend federal common law to create an action for contribution or indemnification under the FCRA. *Id.* at 7-11. Indeed, the Court noted that "[t]he Supreme Court has commented on the limited nature of federal common law, stating that it need only be formulated in rare instances where 'a federal rule of decision is necessary to protect uniquely federal interests' or 'Congress has given the courts the power to develop substantive law.'" *Id.* at 9, *quoting Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2-67 (1981). The Court then reasoned as follows:

> [T]he FCRA is quite comprehensive and explicitly sets forth the obligations owed by various actors to the consumer, as well as enforcement provisions. If Congress did not see fit to include a contribution or indemnity provision in the carefully-crafted FCRA, which it has amended repeatedly, it does not seem "necessary" for us to create such a common law right. The federal interest furthered by the FCRA is to protect consumer privacy without stifling commerce, not to protect users of credit information in their dealings with a CRA. . . . Moreover, this controversy does not involve "uniquely federal interests" such as those found in cases concerning "the rights and obligations of the Untied States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases."
>
> Second, and despite Ameriquest's unsupported contention, the Congressionally-mandated duties of a CRA run to the consumer, not to the users of information provided by a CRA. . . . Ameriquest has not identified any statutory provision or authority indicating that Third-Party Defendants owe it (or should owe it) a statutory or common law duty. . . . Based on our review of the statute, its purposes and available interpretations, we conclude that there is no

13

> compelling reason to extend federal common law, as described in
> *Texas Industries, Inc.*, to create an action for contribution or
> indemnification under the FCRA in this case.

*Id.* at 10-11 (citations omitted). Accordingly, the Court dismissed Ameriquest's contribution and

indemnification claims with prejudice. *Id.* at 11-12.

Like this Court and the court in *McSherry*, federal courts across the country similarly

have held that there is no right to indemnity or contribution for violations of TILA and other

statutes that are part of the Consumer Credit Protection Act. *See, e.g., Meyers v. Freedom Credit*

*Union*, 2007 WL 2753172, at *1 (E.D. Pa. Sept. 21, 2007) (FCRA); *Nelson v. Equifax Info.*

*Servs., LLC*, 2007 WL 3337393, at *1 (C.D. Cal. Apr. 5, 2007) (FDCPA); *Kudlicki v. MDMA,*

*Inc.*, 2006 WL 1308617, at *1 (N.D. Ill. May 10, 2006) (FCRA); *Moore v. Cycon Enters., Inc.*,

2006 WL 2375477, at *1 (W.D. Mich. Aug. 16, 2006) (TILA); *Conner v. Howe*, 344 F. Supp. 2d

1164 (S.D. Ind. 2004) (FDCPA); *Johnson v. Household Mortgage Servs.*, 2004 WL 2188111, at

*1 (E.D. Pa. Sept. 9, 2004) (TILA); *Fields v. Experian Info. Solutions, Inc.*, 2003 WL 1960010,

at *1 (N.D. Miss. Apr. 16, 2003) (FCRA); *McMillan v. Equifax Credit Info. Servs.*, 153 F. Supp.

2d 129 (D. Conn. 2001) (FCRA); *Irwin v. Mascott*, 94 F. Supp. 2d 1052 (N.D. Cal. 2000)

(FDCPA); *Kay v. First Continental Trading, Inc.*, 966 F. Supp. 753 (N.D. Ill. 1997) (FCRA).

Here, Ameriquest's and Argent's indemnity and contribution claims, like the other claims

in their Third-Party Complaint, seek to recover from Third-Party Defendants if Ameriquest and

Argent are found to have violated TILA. As set forth above, however, Ameriquest and Argent

do not have a right to indemnity or contribution for any TILA violation. First, TILA obviously

does not contain an express right to indemnity or contribution. Second, applying the *Cort*

factors, it is clear that TILA does not imply such a right: Ameriquest and Argent are not

members of the class intended to be protected by TILA; there is no evidence of congressional

intent to create a right of indemnity or contribution; and a right of indemnity or contribution is inconsistent with TILA's legislative scheme. *See, e.g.*, *McSherry*, 236 F.R.D. at 522. In fact, TILA's stated purpose is "to assure a meaningful disclosure of credit terms so that **the consumer** will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect **the consumer** against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a) (emphasis added). Finally, there is no right to indemnification or contribution for violations of TILA under federal common law. *See, e.g.*, *McSherry*, 236 F.R.D. at 522-23.

Accordingly, because a right to indemnity or contribution is not expressly or implicitly set forth in TILA or under federal common law, no such right exists here. Counts III, IV, VIII and IX should therefore be dismissed with prejudice.

## <u>CONCLUSION</u>

For the reasons set forth above, Third-Party Defendants request that the Court grant their Motion to Dismiss and dismiss all claims contained in the Second Amended Consolidated Third-Party Complaint with prejudice.

Respectfully submitted,

By: /s/ John L. Ropiequet
    One of their Attorneys

Keith Verges
Mark Davenport
Don Colleluori
Russell W. Hubbard
FIGARI & DAVENPORT, L.L.P.
3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
Telephone (214) 939-2017
Facsimile (214) 939-2090

John L. Ropiequet
Anna-Katrina S. Christakis
Jeffrey D. Pilgrim
ARNSTEIN & LEHR LLP
120 South Riverside Plaza, Suite 1200
Chicago, Illinois 60606
Telephone (312) 876-7100
Facsimile (312) 876-0288

## CERTIFICATE OF SERVICE

I, John L. Ropiequet, an attorney for certain defendants, hereby certify that on March 14, 2008, I

electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system

which will send notification of such filing to all counsel of record.

/s/ John L. Ropiequet

1188370_6

16

## APPENDIX

**I.  STATES THAT HAVE ADOPTED ECONOMIC LOSS DOCTRINE**

### Arizona

Hayden Bus. Ctr. Condo Ass'n v. Pegasus Dev. Corp., 105 P.3d 157, 162 (Ariz. Ct. App. 2005) (economic loss rule precludes a party from circumventing contract remedies by recasting a contract claim as a tort)

### California

Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Group, 143 Cal. App. 4th 1036, 1041-42, 49 Cal. Rptr. 3d 609, 612-13 (Cal. App. Ct. 2006) ("'A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.'")

### Colorado

A.C. Excavating v. Yacht Club II Homeowner's Ass'n, Inc., 114 P.3d 862, 865 (Colo. 2005) ("party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law")

### Connecticut

Shoreline Care Ltd. Partnership v. Jansen & Rogan Consulting Eng'rs, P.C., 31 Conn. L. Rptr. 223 (Conn. Supr. Ct. 2002) ("in the absence of privity of contract between the plaintiff and defendant, or, in the absence of injury to the plaintiff's person or property, the plaintiff may not recover in tort for a purely economic loss")

### Delaware

Danforth v. Acorn Structures, Inc., 608 A.2d 1194, 1195 (Del. 1992) (economic loss doctrine is bar to recovery of economic losses in tort)

### District of Columbia

Aronoff v. Lenkin Co., 618 A.2d 669, 685 (D.C. 1992) ("in cases involving negligent performance of a contract cases, liability to third parties who suffer only economic loss as a result [of the negligent performance] depends on whether or not the defendant owed a duty of reasonable care to the plaintiff")

### Florida

Kone, Inc. v. Robinson, 937 So.2d 238, 242 (Fla. Dist. Ct. App. 2006) (under economic loss doctrine holds, a promisor will not be held liable for tort damages under a breach of contract theory)

## Georgia

General Elec. Co. v. Lowe's Home Ctrs., Inc., 608 S.E.2d 636, 637 (Ga. 2005) ("economic loss rule generally provides that contracting party who suffers purely economic losses must seek remedy in contract and not in tort")

## Hawaii

Association of Apartment Owners of Newtown Meadows v. Venture 15, Inc., 167 P.3d 225, 285-288 (Haw. 2007) (economic recovery is barred where no privity of contract between plaintiff and defendant)

## Illinois

Tyler v. Gibbons, 857 N.E.2d 885 (Ill. App. Ct. 2006) (purely economic losses which do not involve personal injury or property damage are not recoverable in tort)

## Indiana

Hyundai Motor Am. Inc. v. Goodin, 822 N.E.2d 947, 958 (Ind. 2005) (economic loss rule bars tort recovery "where a negligence claim is based upon the failure of a product to perform as expected and the plaintiff suffers only economic damages")

## Iowa

Richards v. Midland Brick Sales Co., Inc., 551 N.W. 649, 650 (Iowa Ct. App. 1996) (plaintiffs cannot recover in tort when they have suffered only economic harm)

## Kansas

Koss Constr. v. Caterpillar, Inc., 960 P.2d 255, 260-61 (Kan. Ct. App. 1998) (adopting economic loss rule)

## Kentucky

Presnell Constr. Managers, Inc. v. EH Constr., LLC, 134 S.W.3d 575, 582-83 (Ky. 2004) (one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in the breach of contract)

## Maryland

Lloyd v. General Motors Corp., 916 A.2d 257, 265-66 (Md. 2007) (purely economic losses are not available in tort, but in contract)

## Massachusetts

Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 543 (Mass. 2003) (purely economic losses are unrecoverable in tort in absence of personal injury or property damage)

A-2

**Michigan**

Sherman v. Sea Ray Boats, Inc., 649 N.W.2d 783, 785, 89-90 (Mich. Ct. App. 2002) (economic loss rule precludes recovery in tort for purely economic losses)

**Minnesota**

Thofson v. Redex Indus., Inc., 433 N.W.2d 901, 903 (Minn. Ct. App. 1989) ("economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability"), citing Superwood Corp. v. Siempelkamp Corp., 311 N.W.2d 159, 162 (Minn. 1981)

**Mississippi**

State Farm Mut. Auto. Ins. Co. v. Ford Motor Co., 736 So.2d 384, 387 (Miss. Ct. App. 1999) (no recovery in tort when only economic damages sought)

**Missouri**

Summer Chase Second Addition Subdivision Homeowner's Ass'n v. Taylor-Morley, Inc., 146 S.W.3d 411, 417 (Mo. Ct. App. 2004) ("where the only damage complained of is an economic loss resulting from defects in the item built pursuant to a contract, a negligence action does not lie")

**Nebraska**

Hilt Truck Line, Inc. v. Pullman, Inc., 382 N.W.2d 310, 313 (Neb. 1986) ("purchaser of a product pursuant to contract cannot recover economic losses from the seller manufacturer on claims in tort based on negligent manufacture or strict liability in the absence of physical harm to persons or property caused by the defective product")

**Nevada**

Jordan v. State ex rel. Dept. of Motor Vehicles & Pub. Safety, 110 P.3d 30, 51 (Nev. 2005) (no recovery in tort for purely economic losses)

**New Hampshire**

Plourde Sand & Gravel Co. v. JGI E., Inc., 917 A.2d 1250, 1253 (N.H. 2007) (economic loss doctrine prevents recovery in tort for purely economic or commercial losses)

**New Jersey**

People Express Airlines, Inc. v. Consolidated Rail Corp., 495 A.2d 107, 118 (N.J. 1985) (purely economic losses recoverable in tort only under very limited circumstances)

**New Mexico**

Utah Int'l., Inc. v. Caterpillar Tractor Co., 775 P.2d 741, 744 (N.M. Ct. App. 1989) (in commercial transactions, economic losses are not recoverable in tort, but only in contract)

**New York**

AKV Auto Transp., Inc. v. Syosset Truck Sales, Inc., 24 A.D.3d 833, 835 (N.Y. App. Div. 2005) (where only economic loss with respect to a product itself is alleged and the underlying transaction is a sale of goods, the purchaser is limited to its contractual remedies and may not maintain the traditional tort causes of action of negligence or strict liability)

**North Carolina**

Lord v. Customized Consulting Specialty, Inc., 643 S.E.2d 28, 30-33 (N.C. Ct. App. 2007) (economic loss rule prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law)

**Ohio**

Corporex Dev. & Constr. Management, Inc. v. Shook, Inc., 835 N.E.2d 701, 704 (Ohio 2005) ("The economic-loss rule generally prevents recovery in tort of damages for purely economic loss.")

**Oregon**

Loosli v. City of Salem, 2007 WL 3087513, at *1 (Or. Ct. App. Oct. 24, 2007) (plaintiff cannot maintain an action for purely economic loss based on negligent misrepresentation unless defendant breached duty outside common law of negligence)

**Pennsylvania**

Excavation Tech's. Inc. v. Columbia Gas Co. of Pa., 2007 WL 3275486, at *1 (Pa. Super. Ct. Nov. 7, 2007) (no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage)

**Rhode Island**

Franklin Grove Corp. v. Drexel, 2007 WL 4442359, at *1 (R.I. Dec. 20, 2007) ("plaintiff may not recover damages under a negligence claim when the plaintiff has suffered no personal injury or property damage")

**South Carolina**

Koontz v. Thomas, 511 S.E.2d 407, 412 (S.C. Ct. App. 1999) (economic loss doctrine bars professional negligence claim when parties relationship dictated by contract)

**South Dakota**

City of Lennox v. Mitek Indus., Inc., 519 N.W. 330, 333-34 (S.D. 1994) (economic loss rule does not allow for recovery of economic losses under tort theories, rather the recovery of these losses are limited to contract remedies unless there has been personal injury or damage to other property other than the specific goods that were part of the transaction)

**Tennessee**

Messer Griesheim Indus., Inc v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) (plaintiff cannot maintain claim for purely economic losses absent contractual privity)

**Texas**

Bell Tl Co. v. DeLanney, 809 S.W.2d 493, 494-95 (Tex. 1991) (economic loss rule precludes recovery in tort for economic losses resulting from failure of party to perform under contract)

**Utah**

Hermansen v. Tasulis, 48 P.3d 235, 240 (Utah 2002) ("a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such breach absent an independent duty of care")

**Vermont**

EBWS, LLC v. Britly Corp., 928 A.2d 497, 507-08 (Vt. 2007) (economic loss rule prevents recovery in tort for purely economic losses unless a special relationship creates a duty of care independent of contract obligations)

**Virginia**

Ward v. Ernst & Young, 435 S.E.2d 628, 632 (Va. 1993) (noting that the economic loss rule requires privity of contract to recover purely economic losses in negligence absent personal injury or property damage)

**West Virginia**

Glascock v. City Nat'l Bank of W. Va., 576 S.E.2d 540, 545 (W. Va. 2002) ("an individual who sustains economic loss from an interruption in commerce caused by another's negligence may not recover damages in the absence of physical harm to the individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor")

**<u>Wisconsin</u>**

<u>Foremost Farms USA Coop. v. Performance Process, Inc.</u>, 726 N.W.2d 289, 293 (Wis. Ct. App. 2006) (economic loss doctrine bars tort claims by requiring parties to "pursue only their contractual remedies when asserting an economic loss claim")

**<u>Wyoming</u>**

<u>D & D Transp., Ltd. v. Interline Energy Services, Inc.</u>, 117 P.3d 423, 427 (Wyo. 2005) (economic loss rule bars recovery in tort when plaintiff claims purely economic damages unaccompanied by physical injury to persons or property)

## II.  STATES THAT HAVE NOT ADOPTED ECONOMIC LOSS DOCTRINE

Alaska
Louisiana

## III.  STATES THAT HAVE NOT ADDRESSED ECONOMIC LOSS DOCTRINE

Alabama
Arkansas
Maine
Montana
North Dakota
Oklahoma
Washington