UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Ronald I. Chorches, Trustee** <br> For the estate of Jerome and Cheryl Sievers <br>     PLAINTIFF, <br> v. <br><br> **Ameriquest Mortgage Company** <br> **And Deutsche Bank National Trust Company** <br>     DEFENDANTS | LEAD CASE NO: 1:05-CV-07097 <br> THIS DOCUMENT RELATES <br> CASE NO. 06-1734(N.D. ILL) <br><br> Complaint - JURY TRIAL DEMANDED <br><br> March 24, 2008 |

## 3rd AMENDED COMPLAINT

### INTRODUCTION

1. This is a suit brought pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, Connecticut Truth-in-Lending Act, Conn. Gen. Stat. Sec. 36a-676 *et seq.*, and includes pendent state law claims for violations of Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.* and negligent misrepresentation.

### PARTIES

2. The substituted plaintiffs Jerome L. Sievers and Cheryl M. Sievers (hereinafter "Plaintiffs") are natural persons who resided in Oakdale, Connecticut at the time the case was commenced.

3. The plaintiff Ronald I. Chorches (hereinafter "Trustee") is the bankruptcy trustee of the plaintiffs bankrupt estate and has an office in Whethersfield, Connecticut.

4. The defendant, Ameriquest Mortgage Company ("Ameriquest"), is a foreign corporation with a place of business in Orange, California.

5. The defendant, Deutsche Bank National Trust Company is a foreign corporation with a place of business in Los Angeles, CA.

**JURISDICTION**

6. Jurisdiction in this court is proper pursuant to 15 U.S.C. §1640(e), 28 U.S.C. §1331 and §1337, and Fed. R. Civ. P. 18(a).

7. This court has jurisdiction over the defendants because they regularly conducts business in this state.

8. Venue in this court is proper, as the plaintiff is a resident of Wethersfield Connecticut and the substituted plaintiffs were residents of Connecticut at all times relevant to this complaint.

**FACTUAL BACKGROUND**

9. At all times relevant to this complaint, the substituted plaintiffs (Hereinafter "The Sievers") are homeowners who own the home at 36 Beechwood Road, Oakdale, CT.

10. Until the transaction with Ameriquest, the home was subject to a mortgage with Accredited Home Mortgage, which had an unpaid balance of $133,457.00 and a mortgage with Citifinancial, which had an unpaid balance of $33,566.64.

11. Until the transaction with Ameriquest, The Sievers also had accrued a credit card debt to Providian Financial in the amount of $8,481.00 due primarily to funeral expenses incurred from a death in the family.

12. On or about October of 2003, The Sievers received a telephone call from a representative from Ameriquest, asking them if they were interested in refinancing their mortgages to lower their monthly payments.

13. At that time The Sievers were negotiating refinancing an existing mortgage whereby no prepayment penalties would be incurred.

14. Agents and representatives of Ameriquest assured The Sievers that if they refinanced with Ameriquest they could save money.

15. Ameriquest also induced The Sievers to refinance with their company by agreeing to fund an excess so that the Sievers would receive approximately $5,600.00 at the closing. At some time during negotiations with Ameriquest, The Sievers had made arrangements with a contractor to use these funds for some preliminary measures necessary to build an additional room for their house.

16. On June 15, 2004, The Siever's received a "Good Faith Estimate" from Ameriquest which indicated that Ameriquest would be charging a "Loan Discount" fee of 3.004% for a total of $4,956.60.

17. On June 23, 2004, The Sievers borrowed the principal sum of $189,000 from Ameriquest and provided a mortgage on their residence to secure the indebtedness.

18. The proceeds went towards the pay-off of the existing mortgages on the residence, towards the payment of said credit card debt and Real Estate Taxes.

19. On June 23, 2004, Plaintiffs received a "HUD" Settlement Statement, as well as an itemization of settlement charges which indicated that Ameriquest was charging a "Loan Discount" fee of $6,484.59. This was $1,527.99 more than what had previously been represented and agreed to.

20. On June 23, without any prior notice or approval, Ameriquest had also increased the "points" they were charging from 3.004% to 3.431%.

21. Said "HUD" Settlement Statement also indicated that Ameriquest would be receiving $5,636.82 after disbursement of the loan.

22. Ameriquest at all times assured Plaintiff that they would be receiving $5,636.82 after the loan was disbursed.

23. On or about July 6, 2004, The Sievers received a check for $1,687.46 and a letter from the office of the Settlement Attorney stating: "This amount is less than you expected due to additional interest."

24. Between July 6, 2004 and November 1, 2004, several letters were sent by the Sievers, and on their behalf, regarding the fact that they had received approximately $4,000.00 less than what was represented to them on June 23, 2005.

25. On November 1, 2004, Ameriquest had issued to the Sievers a check in the amount of $3,900.00. The Sievers deposited the check in their account on November 26, 2004.

26. On or about February 28, 2005, Ameriquest started a foreclosure action against the Sievers in New London Superior Court.

27. On or about May 4, 2005 the Sievers filed an answer and special defenses to the foreclosure which alleged among other things, Truth and Lending Recission and Consumer Fraud.

28. On March 21, 2005, The Sievers exercised their extended right to rescind the contract by sending notice (via counsel) to Ameriquest by certified mail, in which receipt was acknowledged on or about March 28, 2005.

29. On or about March 23, 2005, Ameriquest sold or assigned the loan to Deutsche Bank National Trust Company (hereinafter "Deutsche Bank.")

30. On or about May 5, 2005 Sievers filed for chapter 7 bankruptcy.

31. Sometime thereafter, the plaintiff decided to pursue said claims on behalf of the bankruptcy estate.

### FIRST CAUSE OF ACTION - TILA VIOLATIONS

32. This consumer credit transaction was subject to the Plaintiff's right of rescission as described by C.G.S. sec. 36a-683, 15 U.S.C. § 1635 and Reg. Z § 226.23 (12 C.F.R. § 226.23).

33. In the course of this consumer credit transaction, Defendant Ameriquest violated C.G.S. sec. 36a-683, 15 U.S.C. § 1635(a) and Reg. Z. § 226.23(b) by failing to deliver to the Sievers two copies of a notice of the right to rescind which clearly and conspicuously disclosed the date the rescission period expired.

34. Said disclosure violations were apparent on the face of the documents.

35. The Sievers have a continuing right to rescind the transaction until the third business day after receiving notice of the right to rescind, up to three years after consummation of the transaction.

36. On March 21, 2005, The Sievers exercised their extended right to rescind the contract by sending notice (via counsel) to Defendant Ameriquest by certified mail, in which receipt was acknowledged on or about March 28, 2005.

37. More than twenty calendar days have passed since Ameriquest received the notice of rescission.

38. Defendant Deutsche Bank, as an assignee is subject to all claims and defenses that the borrower has against Ameriquest.

39. The Defendants have failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction as required by 15 U.S.C. § 1635(b) and Reg. Z. § 226.23(d)(2).

40. The Defendants have failed to return to the Plaintiff any money or property given by the Plaintiff to anyone, including the Defendant, as required by 15 U.S.C. § 1635(b) and Reg. Z. § 226.23(d)(2).

41. As a result of the aforesaid violations of TILA and Reg. Z., pursuant to 15 U.S.C. § § 1635(a), 1640(a), and 1641(c), Defendants are liable for:

    a. Rescission of this transaction;

    b. Termination of any security interest in Plaintiff's property created under the transaction;

    c. Return of any money or property given by the Plaintiff to anyone, including the Defendants, in connection with this transaction;

    d. Statutory damages of $2,000 for the disclosure violation;

    e. Statutory damages of $2,000 for Defendant's failure to respond properly to Plaintiff's rescission notice;

    f. Forfeiture of loan proceeds;

    g. Actual damages in an amount to be determined at trial; and

    h. A reasonable attorney fee.

## SECOND CAUSE OF ACTION - CUTPA

42. Plaintiff herein incorporates the allegations in paragraphs 1 through 40 above.

43. Plaintiff brings the second cause of action against Ameriquest and Deutsche Bank under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq* ("CUTPA"). This Court has supplemental jurisdiction to adjudicate this cause in that it arises out of the same credit transaction as the First Count and is so related to that claim that it forms part of the same case or controversy.

44. Ameriquest and Deutsche Bank have committed unfair and deceptive acts and practices in violation of CUTPA by its violations of TILA, as aforedescribed.

45. Ameriquest has also committed unfair and deceptive acts and practices though their oral and written misrepresentations made fraudulently with actual intent to mislead, or recklessly with gross disregard to their truth and falsity.

46. During the course of the transaction, Ameriquest made the following misrepresentations:

   a. Ameriquest overstated the funds that the Sievers would receive after the loan disbursed by nearly $4,000.

   b. Prior to June 23, 2004, Ameriquest understated the fees and points to be charged.

   c. Ameriquest understated the amount needed to pay-off an existing mortgage.

47. At all times relevant here, Ameriquest knew or should have known that Plaintiff would rely on said representations when agreeing to the terms of the Consumer Credit transaction.

48. The Sievers did in fact rely upon said representations when agreeing to the terms of the Consumer Credit Transaction.

### THIRD CAUSE OF ACTION- NEGLIGENT MISREPRESENTATION AS TO AMERIQUEST ONLY

49. This Court has supplemental jurisdiction to adjudicate this cause in that it arises out of the same credit transaction as the First Count and is so related to that claim that it forms part of the same case or controversy.

50. Plaintiff herein incorporates the allegations in paragraphs 1 through 31 above.

51. Plaintiff herein incorporates the allegations in Paragraph 46 above.

52. The various misrepresentations made by Ameriquest, his agents and employees were, in fact, untrue and were negligently made and in breach of the legal duty owed to the Plaintiff in that:

    a.    Ameriquest knew or should have known that it was unreasonable to make such representations as they were untrue.

    b.    Ameriquest knew or should have known that such representations would not be fulfilled and honored.

53. Plaintiff herein incorporates the allegations in paragraphs 47 through 48 above.

### PRAYER FOR RELIEF

WHEREFORE, it is respectfully prayed that this Court:

1. Assume jurisdiction of this case;
2. Declare the security interest in the Siever's residence void;
3. Rescind the transaction of June 23, 2004;
4. Order Defendants to take all action necessary to terminate any security interest in the Siever's property created under the transaction and that the Court declare all such security interests void, including but not limited to the mortgage related to the transaction of June 23, 2004;
5. Order the return to the Plaintiff of any money or property given by the Sievers to anyone, including the Defendants, in connection with the transaction;
6. Enjoin Defendants during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on the Siever's property, from recording any deeds or mortgages regarding the property or from otherwise taking any steps to deprive Sievers of ownership of that property;
7. Award the Plaintiff statutory damages for the disclosure violation in the amount of twice the finance charge in connection with this transaction, but not less than $200 or more than $2,000 as provided under 15 U.S.C. § 1640(a);
8. Award the Plaintiff statutory damages for the Defendants' failure to respond properly to the Plaintiff's rescission notice in the amount of twice the finance charge in connection with this transaction, but not less than $200 or more than $2,000 as provided under 15 U.S.C. § 1640(a);
9. Order that, because the Defendants failed to respond to the Plaintiff's notice of rescission, the Plaintiff has no duty to tender, but in the alternative, if tender is required, determine the amount of the tender obligation in light of all of the Plaintiff's claims and order the Defendants to accept tender on reasonable terms and over a reasonable period of time;
10. Award actual damages in an amount to be established at trial;
11. Award the Plaintiff costs and a reasonable attorney fee as provided under 15 U.S.C. § 1640(a);
12. Award the Plaintiff costs, a reasonable attorney's fee, and punitive damages as permitted under Conn. Gen. Stat. § 42-110g;
13. award the Plaintiff costs, and reasonable attorney's fee pursuant to Conn. Gen. Stat. Sec. 42-150bb.
14. Award such other and further relief as the Court deems just and proper.

PLAINTIFF,

By: ___s/Peter Lachmann_____
Peter Lachmann
Fed Bar No. ct23757
Peter.lachmann@sbcglobal.net
250 West Main Street, Rm 210
Branford, CT 06405
Tel. (203) 488-6793

Fax. (203) 488-6814