IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |

**OPPOSITION TO MOTION TO DISMISS SECOND AMENDED
CONSOLIDATED THIRD-PARTY COMPLAINT**

## I.     INTRODUCTION

Third-Party Defendants' Motion to Dismiss the Second Amended Third-Party

Complaint ("SATPC") should be denied because the arguments asserted by Third-Party

Defendants are inconsistent with the prior orders of this Court, and not supported by applicable

law. Specifically,

(1)     Consistent with this Court's Order requiring Third-Party Plaintiffs to streamline

their Third-Party claims, the SATCP clearly alleges within one pleading: (a) the parties to each

contract, (b) the date of the contract, (c) the obligations of the Third-Party Defendants pursuant

to the contract, (d) the underlying borrower whose loan was closed pursuant to the contract, and

(e) the title of the lawsuit filed against the Third-Party Plaintiffs which relates to the contract in

question. Contrary to Third-Party Defendants' argument that insufficient detail is provided, the

SATPC provides more than enough detail to satisfy the standard required by Rule 8 of the

Federal Rules of Civil Procedure.

(2)     Third-Party Defendants assert that the Truth in Lending Act ("TILA") does not

allow for claims against them for indemnity and contribution. However, the hundreds of

individual borrowers in this MDL proceeding have asserted dozens of different claims against

Third-Party Plaintiffs, including tort claims and state statutory violations. Third-Party Plaintiffs are entitled to indemnity with respect to these many *other claims* asserted by the borrowers which relate directly to duties carried out by the Third-Party Defendants. Even as to the TILA claims, this is an unresolved issue of law, and considerations of equity strongly favor allowing such a claim in this case.

(3)     Third-Party Defendants assert that they owed no duty to the Third-Party Plaintiffs, and that claims for negligence are barred by the "economic loss doctrine." In fact, the allegations in the SATPC are unequivocal that Third-Party Defendants owed a duty to Third-Party Plaintiffs to competently carry out the job for which they were hired, including closing loans, and providing the borrowers with the disclosures required by state and federal law. If any disclosures received by the plaintiffs were defective, the Third-Party Defendants breached their duty to the Third-Party Plaintiffs. Third-Party Defendants fall within an exception to the economic loss doctrine (previously cited by this Court in its ruling on the recent motion to dismiss in the non-borrowers' action) because Third-Party Defendants are "in the business of supplying information for the guidance of others in their business transactions."

Accordingly, Third-Party Plaintiffs respectfully request that the Motion be denied in its entirety. Alternatively, Third-Party Plaintiffs request that the Court grant them leave to amend the Third-Party Complaint.

## II.     **BACKGROUND FACTS.**

This MDL proceeding currently includes both a Consolidated Borrowers' Class Action Complaint, and several hundred individual lawsuits by plaintiffs who have "opted-out" of the class (the "Opt Out Plaintiffs"). Both the Borrower Plaintiffs and the Opt-Out Plaintiffs whose loans are the subject of the SATPC have alleged that Third-Party Plaintiffs failed to make various disclosures which are required by state and federal law in connection with their loans. Among other things, the plaintiffs allege:

> •     That Third-Party Plaintiffs failed to "deliver copies of
> various loan papers, including required disclosures under the Truth

in Lending Act, until after the loan is consummated." [*See* Class Action Complaint, at ¶ 112].

- That there were various deficiencies with respect to the Notice of Right to Cancel that Third-Party Plaintiffs provided to each borrower pursuant to TILA, such as not providing enough copies of the Notice and not correctly filling out the final date on which the borrower could exercise his or her statutory right to cancel. [*Id.* at ¶ 256].

- That Third-Party Plaintiffs had a "practice of removing certain documents, such as those relating to prepayment penalty, before presenting the documents to the customer for signing." [*Id.* at ¶ 114].

In addition to the foregoing, many of the Opt-Out Plaintiffs have asserted tort claims against Third-Party Plaintiffs, as well as a wide variety of state-law statutory violations. *See e.g., Robinson v. Ameriquest Mortgage Company et. al.,* Case No. 06-CV-14228 (second cause of action alleges a violation of the Michigan Mortgage Brokers, Lenders, and Servicers Lending Act); *Thibobeau v. Ameriquest Mortgage Company et. al.,* Case No. 06-CV-5148 (second cause of action alleges "violation of New Hampshire Law" in connection with alleged "false and misleading statements"); *Walsh v. Ameriquest Mortgage Company et. al.,* Case No. 06-CV-13256 (third cause of action alleges "violation of Oregon Law" in connection with alleged "false and misleading statements").

Third-Party Plaintiffs deny that their disclosures to any of the plaintiffs were defective, or violated any state or federal law. Nonetheless, in the event that a trier-of-fact ultimately finds that any disclosures made to any of the plaintiffs were deficient, Third-Party Plaintiffs are entitled to complete indemnity from those individuals and entities that they hired to close the loans in question. Specifically, during the time period at issue, Third-Party Plaintiffs closed the substantial majority of their loans using third-party title companies or, in certain states whose

laws required it, attorneys. These entities—collectively referred to herein as the "Title Defendants"—were paid by Third-Party Plaintiffs to provide the disclosures required by TILA (and other state and federal laws) to the borrowers. [SATPC, at ¶ 8]. Each of the Title Defendants represented to Third-Party Plaintiffs that they were qualified to close loans, and were knowledgeable about the required disclosures including the Notice of Right to Cancel.[1] Accordingly, in the event that a Notice of Right to Cancel was not properly completed and delivered to the borrower, the Title Defendant who was hired to perform this task breached its contract with Third-Party Plaintiffs, and is required to indemnify Third-Party Plaintiffs for any damages suffered in connection therewith.

In addition, with respect to Argent, any allegation that Argent misled or deceived a borrower necessarily triggers a claim for indemnity, because Argent is a wholesale mortgage lender and, as such, has no involvement in the negotiation of loan terms, or the loan closing. [*Id.* at ¶ 12]. Argent's involvement is limited to funding loans originated by independent mortgage brokers (referred to herein as the "Broker Defendants"). [*Id*]. Each of the Broker Defendants signed an agreement with Argent wherein they agreed to provide full and complete disclosures to their borrowers. [*Id.* at ¶ 13]. Accordingly, to the extent that the Borrowers allege that Argent misled them, or failed to disclose any material facts, this conduct is directly attributable to the Broker Defendants, who are contractually required to fully indemnify Argent.

In order to protect its right to indemnity, in March 2007, Ameriquest began filing third-party complaints, pursuant to Rule 14 of the Federal Rules of Civil Procedure, against those Title Defendants who were hired to close the loans at issue in the Opt-Out complaints. On March 16, 2007, however, the Court *sua sponte* issued the following Order:

> As of March 16, 2007, defendants have filed approximately 80
> third-party complaints against various entities under the lead case
> number for this action. Counsel for defendants has informed us

---

[1] A number of states—Georgia and Mississippi, for example—prohibit lenders from closing loans themselves, and require the lender to employee a closing agent. In these states, the Title Defendants had additional duties, imposed by statute, that went above and beyond the contractual duty that was owed to Third-Party Plaintiffs.

that defendants anticipate filing as many as 300 to 500 additional third-party complaints.

To salvage to the extent possible the interests of judicial economy in this action, we order defendants to file these and all future third-party complaints within one consolidated filing. Defendants shall, within forty-five (45) days of the last date on which an Answer is due in currently filed individual cases, submit a consolidated third-party complaint which incorporates those third-party complaints already filed and all other such complaints that defendants plan to file. After that date, defendants shall not file any third-party complaints in connection with presently existing individual cases.

[*See* March 16, 2007 Order (Docket No. 615)]. In compliance with the Court's Order, on July 31, 2007 Third-Party Plaintiffs filed a Consolidated Third-Party Complaint, which included claims against both the Title Defendants and the Broker Defendants. [Docket No. 955]. Third-Party Plaintiffs filed a First Amended Third-Party Complaint on August 24, 2007 [Docket No. 1028] and, after obtaining leave from the Court, filed the SATPC on February 11, 2008 [Docket No. 1955].[2]

In accordance with a briefing schedule set by the Court, certain Third-Party Defendants filed a consolidated motion to dismiss the SATPC on March 14, 2008. [Docket No. 2035]. This motion should be denied, as set forth below.

## III.    THE MOTION TO DISMISS SHOULD BE DENIED

As the Seventh Circuit has explained, "a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004); *See also Allen Bros. v. Abacus Direct Corp.*, 2002 U.S. Dist. LEXIS 2568, *7 (N.D. Ill 2002) (holding that a motion under FRCP, Rule 12(b)(6) should be denied if "relief is possible under any set of facts that could be established consistent with the allegations").

---

[2] Because new cases continue to be added to this MDL proceeding, Third-Party Plaintiffs have filed a motion seeking leave to file a Third Amended Third-Party Complaint [Docket No. 2086]. The proposed Third Amended Third-Party Complaint contains the same claims as those asserted in the SATPC, which is the subject of the instant motion to dismiss.

Applying this standard, the Third-Party Defendants' motion must be denied, as set forth below.

### A.     The SATPC States a Claim for Breach of Contract.

Third-Party Defendants argue that the First, Fifth, and Sixth Causes of Action in the SATPC (all for breach of contract) should be dismissed because Third-Party Plaintiffs, allegedly, have not described the contracts at issue with sufficient detail.

In fact, as Third-Party Defendants concede in the motion, under the federal notice pleading standard, a plaintiff is not required to list the terms of a contract in order to state a breach of contract claim. *Aguila Records, Inc. v. Federico*, 2007 U.S. Dist. LEXIS 75635, *11 (N.D. Ill 2007). Rather, all that needs to be alleged is, "(1) the existence of a valid and enforceable contract; (2) [Plaintiff's] own performance under the terms of the contract; (3) a breach of the contract by the defendant; and (4) an injury suffered as a result of the defendant's breach." *Westwacker K-Parcel LLC v. Pac. Mut. Life Ins. Co.*, 2006 U.S. Dist. LEXIS 2034, *6 (N.D. Ill 2006). Here, the allegations SATPC clearly meet this standard. In particular, Third-Party Plaintiffs allege:

(1)     That a valid and enforceable contract exists between Third-Party Plaintiffs and each of the named Third-Party Defendants [SATPC at ¶¶ 19, 37, and 43];

(2)     That the contract imposed a requirement on each of the Third-Party Defendants to properly complete the Notice of Right to Cancel, and deliver the same to each of the borrowers [SATPC at ¶¶ 20, 38-39, and 44];

(3)     That, in the event it is proven that the Third-Party Defendants failed to properly complete the Notice of Right to Cancel, they breached their contract with Third-Party Plaintiffs [SATPC at ¶¶ 21, 40, and 45]; and

(4)     That Third-Party Plaintiffs have suffered, and will continue to suffer, damages as in connection with the breach of contract, as a result of the lawsuits which are now pending against them in this multidistrict litigation [SATPC at ¶¶ 22, 41, and 46].

Third-Party Defendants' argument, that the SATPC does not contain enough detail about the particular contracts at issue, is inconsistent with the standard the Court must apply in ruling on a Rule 12(b)(6) motion. *See e.g. EEOC v. Concentra Health Servs.*, 496 F.3d 773, 779 (7th Cir 2007) ("A complaint need only be sufficiently detailed to give the defendant fair notice of what the claim is and the grounds upon which it rests"). In any event, the exhibits to the SATPC list the name of each specific case, the name of the borrower, the name of the specific Third-Party Defendant who closed the loan of that borrower, and the date of the contract between the Third-Party Defendant and Third-Party Plaintiffs. It is difficult to imagine that the Third-Party Defendants, most of whom are *attorneys or title companies*, cannot locate a copy of the contract based on this description. Moreover, per the Court's order, Third-Party Plaintiffs have been producing copies of applicable loan files to each of the Third-Party Defendants. These files contain, among other things, a copy of the contract.

Third-Party Plaintiffs intentionally did not attach hundreds of contracts to the SATPC because, to do so, would have been inconsistent with the Court's mandate in the March 16, 2007 Order [Docket No. 615] that Third-Party Plaintiffs try to streamline the third-party complaint as much as possible. Nonetheless, for illustrative purposes, attached to this brief as Exhibit A is a copy of one of the contracts at issue between Ameriquest and a Third-Party Defendant, New Vision Title Agency.[3] In this contract, New Vision specifically represents that (1) the Notice of Right to Cancel has been properly filled in; (2) copies of all documents have been given to the borrowers, and (3) "all Borrower questions have either been answered or referred to the appropriate Ameriquest Mortgage Company branch." [*See* Closing Agent Affidavit, Exhibit A hereto]. The contract also gives specific and detailed instructions on how the Notice of Right to Cancel should be filled out, and states as follows: "The Settlement Agent is hereby directed by the Lender to act as its agent in completing or amending the dates in the Notice of Right to

---

[3] Since the contract is specifically identified in the SATPC, the court may properly consider it in ruling on the instant motion to dismiss. *See e.g., Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim").

Cancel." [See Closing Instructions, Exhibit A hereto, at Section 5.5]. Assuming, as the Court must in ruling on a motion to dismiss, that the allegations in the SATPC are true, Third-Party Plaintiffs have alleged a breach of this contract, and the hundreds of similar contracts that exist between Third-Party Plaintiffs and the Third-Party Defendants.

As set forth above, the SATPC fully complies with both Rule 8, and with the Court's Order of March 16, 2007. However, if the Court decides that the SATPC does not contain sufficient detail regarding each of the contracts at issue, Third-Party Plaintiffs respectfully request leave to amend, so that they can attach copies of the contracts to the SATPC, or otherwise comply with the Court's order. Such leave is clearly appropriate under the circumstances. See e.g., National Serv. Ass'n v. Capitol Bankers Life Ins. Co., 832 F. Supp. 227, 230 (N.D. Ill 1993) ("a complaint's mere vagueness or lack of detail is not sufficient to justify a dismissal"); Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n, 377 F.3d 682, 687 (7th Cir 2004) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss").

**B.      The SATPC States a Claim for Indemnity and Contribution.**

Third-Party Defendants argue that the Third, Fourth, Eighth, and Ninth Causes of Action in the SATPC should be dismissed, because TILA does not permit claims for contribution or indemnity. This argument fails for two reasons.

First, Third-Party Defendants intentionally gloss over the fact that the substantial majority of plaintiffs who have sued Third-Party Plaintiffs are alleging more than simply a TILA violation; they are also alleging a variety of intentional torts and state-law statutory violations. See e.g., Barletta v. Ameriquest Mortgage Company, et al., Case No 06-C-4560 (second cause of action alleges that Ameriquest violated Michigan law by making "false and misleading statements" which "deceived plaintiff and proximately caused her injury"); Brown v. Ameriquest Mortgage Company, et al., Case No 06-CV-2830 (second cause of action alleges that Ameriquest violated of the Illinois Consumer Fraud Act); Cleveland v. Ameriquest Mortgage

*Company, et al.*, Case No 06-C-4306 (second cause of action alleges that Ameriquest violated Washington law by making "false and misleading statements to plaintiff intending to induce reliance").

While Third-Party Plaintiffs strongly deny these allegations, in the event that they are proven to be true, Third-Party Plaintiffs are entitled to indemnity and/or contribution to the extent that any of the alleged fraudulent conduct was committed by the Third-Party Defendants.[4] The law is clear that claims for indemnity and contribution are appropriate in tort actions. *See e.g., Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486 (7th Cir. 2001) (Plaintiff sued defendant employer for medical malpractice; defendant properly impleaded doctors who performed the surgery in question). Third-Party Defendants have cited no authority to the contrary, nor could they.

Second, even with respect to the issue of contribution and indemnity under TILA, Third-Party Defendants cite no binding, or even persuasive, authority to support their position. Third-Party Defendants rely, primarily, on *McSherry v. Capital One FSB*, 236 F.R.D. 516 (W.D. Wash. 2006), and on this Court's ruling on a motion to dismiss brought by certain third-party defendants in the non-borrowers' action, *In re Ameriquest Mortg. Co. Mortg. Lending Practices*, 2008 U.S. Dist. LEXIS 18314 (N.D. Ill 2008).[5] Both of these opinions are inapposite to the dispute presented in the instant motion. The *McSherry* opinion—which was authored by a court in the Western District of Washington—contains a detailed analysis of FCRA, and a one-sentence conclusion (without any supporting authority) that the same analysis should apply with respect to TILA. *McSherry*, 236 F.R.D. at 522. This Court's ruling on the motion to dismiss in the non-borrowers' action discussed the applicability of the Fair Credit Reporting Act, not TILA.

---

[4] For example, many of the plaintiffs allege that an unnamed "representative" of one of the Third-Party Plaintiffs made false representations to them, but do not specify what these representations were, or when they were made. In the event that the alleged representations occurred at the closing of the loan, they would have been made by one of the Third Party Defendants, not by Third-Party Plaintiffs.

[5] In the other district court cases cited by Third-Party Defendants for the proposition that TILA does not permit claims for indemnity and contribution, the issue was not ruled on by the court and was mentioned merely in dicta. *See Moore v. Cycon Enterprises*, 2006 U.S. Dist. LEXIS 57452, *57 (W.D. Mich 2006); *Johnson v. Household Mortgage Services*, 2004 U.S. Dist. LEXIS 19162, *7 (E.D. Penn. 2004).

9

In both of these cases, the third-party defendants argued—successfully—that they did not commit any violation of the underlying statute. Here, by comparison, Third-Party Plaintiffs hired the Third-Party Defendants to close loans. This job included, among other things, properly filling out a Notice of Right to Cancel. If, as it is alleged by plaintiffs, the Notice of Right to Cancel was not properly completed, this TILA violation was 100% the fault of the Third-Party Defendant. There is no question that the underlying purpose of TILA—to provide maximum protection to consumers—would be furthered by allowing claims for indemnity and contribution against parties who (1) were hired to close loans; (2) were given detailed instructions on how to provide the disclosures required by TILA; (3) specifically agreed to follow these procedures; and (4) nonetheless failed (either negligently or intentionally) to provide the proper disclosures. [6]

Accordingly, Third-Party Plaintiffs should be permitted to maintain their claims for indemnity and contribution.

### C.    The SATPC States a Claim for Negligence.

Finally, the Third-Party Defendants allege that the Second and Seventh Causes of Action in the SATPC, for negligence, should be dismissed because (1) they owed no duty to Third-Party Plaintiffs and (2) the claim is, allegedly, barred by the economic loss doctrine. Both of these arguments should be rejected.

On the issue of duty, Third-Party Defendants correctly state that TILA places a duty on the creditor to make certain disclosures to the borrower in connection with a loan transaction. Third-Party Defendants further emphasize in their moving papers, that the sections of TILA relating to disclosures are calculated to ensure that the creditor cannot escape liability simply because they hired a third party to close the loan for them. *See* 15 U.S.C. § 1635(a); 12 C.F.R. 226.23(h)(1). Because a duty flows directly from the creditor to the borrower, Third-Party

---

[6] In fact, with respect to the Argent loans, the responsible Third-Party Defendants were the *only* individuals who had contact with the borrower. As noted above, Argent is a wholesale lender, and does not interact with borrowers. Rather, it funds loans which are originated by independent mortgage brokers; the closing of the loans is done, as with Ameriquest, by closing agents. Thus, if any misrepresentations were made to a borrower, or if a borrower did not receive the proper disclosures, this was not in any way attributable to Argent.

Defendants' summarily conclude, they owed no duty of any kind to Third-Party Plaintiffs. [Motion at pp. 6-7].

This argument is entirely inconsistent with both TILA, FRCP Rule 14, and the clear allegations in the SATPC. Specifically, Third-Party Plaintiffs have alleged (1) that they hired the Third-Party Defendants for the express purpose of closing loans, (2) that the Third-Party Defendants warranted that they would provide disclosures to each of the borrowers which complied with federal and state law, and (3) that Third-Party Plaintiffs have been sued by hundreds of plaintiffs who allege that they received inadequate disclosures. Third-Party Plaintiffs unequivocally deny that any of the borrowers received improper disclosures. However, if a trier of fact decides otherwise, Third-Party Plaintiffs will be liable directly to the borrower(s) and Third-Party Defendants will be liable to Third-Party Plaintiffs. There is nothing in TILA, nor in any of the state-law statutes invoked by the plaintiffs, which provides that "no duty" is owing between a third party and the creditor who hired that party, merely because the creditor is liable directly to the borrower. Rather, if a creditor believes that a third party was responsible for the alleged improper disclosures, the creditor's *only remedy* is to do exactly what Third-Party Plaintiffs did here: file a third-party claim under Rule 14.[7]

Third-Party Defendants' argument that the "economic loss doctrine" precludes claims for negligence is similarly unpersuasive. In fact, as this Court explained in its opinion on the motion to dismiss in the non-borrowers' action, several states (including Illinois) permit claims for negligent misrepresentation in spite of the economic loss doctrine, where there is an allegation that "the defendant is in the business of supplying information for the guidance of others in their business transactions." *In Re: Ameriquest Mortgage Company*, 2008 U.S. Dist. LEXIS 18314, at *29 (N.D. Ill 2008). As the Court explained:

---

[7] Third-Party Defendants' assertion that TILA somehow extinguishes the duty that they would normally owe to Third-Party Plaintiffs is not supported by law or common sense. Indeed, why would Congress enact a consumer protection statute which requires certain disclosures to be made to borrowers, yet gives a "pass" to the parties who were *actually responsible* for failing to provide these disclosures? Clearly, this was not their intent. TILA prevents creditors from using the existence of closing agents to escape liability to the borrowers; it does not prevent creditors from asserting third-party claims against the closing agents.

> [O]ne who supplies information during the course of his business
> . . . or in any transaction in which he has a pecuniary interest has a
> duty of reasonable care and competence to parties who rely upon
> the information in circumstances in which the maker was
> manifestly aware of the use to which the information was to be put
> and intended that it be so used.

*Id.* at * 24, quoting *City of Cairo v. Hightower Constr. Eng'rs, Inc.*, 278 Ga. App. 721, 729 (Ga.
App. Ct. 2006). Applying this rule, there is no question that the SATPC states a claim for
negligent misrepresentation against the Third-Party Defendants. In particular, it is alleged that
the Third-Party Defendants were hired specifically to "supply information" to the borrower
plaintiffs relating to the underlying loan transactions. It is further alleged that the Third-Party
Plaintiffs relied on the Third-Party Defendants' representation that they would provide
disclosures to the borrowers which fully complied with state and federal laws. Third-Party
Defendants knew, or reasonably should have known, that Third-Party Plaintiffs were relying on
them to properly close the loans—indeed, this was the specific function for which they were
hired, and paid several hundred dollars per-loan, by the Third-Party Plaintiffs.

Accordingly, the claim for negligence should not be dismissed.[8]

//

//

//

//

//

//

//

//

---

[8] The SATPC asserts claims for "Negligence" not "Negligent Misrepresentation." If the Court finds, as it did in its
ruling on the motion to dismiss in the non-borrowers' action, that Third-Party Plaintiffs have alleged facts sufficient
to state a claim for "Negligent Misrepresentation" but not for "Negligence," Third-Party Plaintiffs respectfully
request leave to amend to assert a claim for "Negligent Misrepresentation." Such leave is entirely consistent with
the standard on a Rule 12(b)(6) motion. *See e.g., Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir
1998) ("A complaint or part of a complaint should not be dismissed for failure to state a claim unless it appears
beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

## IV.  CONCLUSION

For the reasons set forth above, Third-Party Plaintiffs respectfully request that the Court deny the instant Motion, in its entirety.  In the alternative, Third-Party Plaintiffs request that the Court grant them leave to file a further amended Third-Party Complaint.

DATED: April 11, 2008                           Respectfully submitted,


By:  /s/ Thomas J. Wiegand              By:  /s/ Bernard E. LeSage

*Attorneys for Argent Mortgage Company*        *Attorneys for Ameriquest Mortgage Company;*
*LLC*                                          *AMC Mortgage Services, Inc.; Town & Country*
                                              *Credit Corporation; Ameriquest Capital*
Thomas J. Wiegand                              *Corporation; Town & Country Title Services, Inc.;*
Gregory J. Miarecki                            *and Ameriquest Mortgage Securities, Inc.*
David E. Dahlquist
WINSTON & STRAWN LLP                           Bernard E. LeSage, Esq.
35 West Wacker Drive                           Sarah K. Andrus, Esq.
Chicago, Illinois 60601                        BUCHALTER NEMER, a P.C.
Telephone:  (312) 558-5600                     1000 Wilshire Boulevard, Suite 1500
Facsimile:  (312) 558-5700                     Los Angeles, CA 90017-2457
                                              Telephone: (213) 891-0700
                                              Facsimile: (213) 896-0400

# EXHIBIT A

# Ameriquest Mortgage Company

## CLOSING AGENT AFFIDAVIT

Closing Agent Name: NEW VISION TITLE AGENCY

Date of Closing: 08/03/2005

Closing Agent Address: 2515 HIGHWAY 516 OLD BRIDGE, NJ 08857

Loan Number: 0127620144 - 5557

Borrower Name(s): KERRI CAPASSO
MARK CAPASSO

Property Address: 138 CALIFORNIA AVENUE
NEW MILFORD,NJ 07646

I, _Anthony Ferrara_ certify the loan was closed on _August 3, 2005_

And I hereby certify the following:

All loan documents are properly signed, dated and where applicable notarized.

The rescission notice is properly filled in. (The start date is the date of signing and the end date is three business days later. Business days not including Sundays or legal holidays or days prohibited by state law)

Copies of all documents were given to the borrower(s).

All Borrower questions have either been answered or referred to the appropriate Ameriquest Mortgage Company branch.

Closing Agent Signature



000001276201446400050101

Closing Agent Letter (8/04)

Borrower(s): **KERRI CAPASSO    MARK CAPASSO**          Loan Number:   0127620144 - 5557

Property Address:   138 CALIFORNIA AVENUE, NEW MILFORD, NJ 07646

Lender:   Ameriquest Mortgage Company

# CLOSING INSTRUCTIONS

These Closing Instructions are for closing the loan referenced in the cover letter enclosed herein.  Do not proceed unless you accept full responsibility for following these instructions. All Closing Instructions must be strictly followed.  **Do Not Close the Loan Otherwise. Have any questions answered prior to commencement of closing. Any modifications must be in writing and signed by the Lender. The Branch or Borrower is not authorized to approve any modifications to or deviations from these written closing instructions.**

If any ambiguities, obvious errors or questions arise in connection with a loan or any matter contained in the Closing Instructions, the Branch Manager  must be contacted prior to closing for further instructions or to clarify or resolve matters.  The Settlement Agent will be made liable for losses incurred by the Lender, as a result of the Settlement Agent closing a loan with knowledge that errors were contained in any documents or instructions. If the Settlement Agent determines that a loan cannot be closed in accordance with these Closing Instructions, (including the policy and other requirements), do not proceed to closing without further instructions from the Lender.

1.  **INSURED CLOSING.** An Insured Closing Protection Letter in the form authorized by the American Land Title Association ("ALTA") must be issued in connection with the closing and settlement of any loan closing through a title insurance agent or a title insurance company authorized to do business in the State of NJ. All title insurance agents should confirm that such a letter is on file with the Lender before closing the loan.  The title policy must be underwritten by the insurer providing the Insured Closing Protection Letter.

2.  **CLOSE AS INSTRUCTED AND REQUIRED.** As Settlement Agent, you must close the transaction in strict accordance with these Closing Instructions. If this transaction involves a sale, all applicable terms and conditions of the sales contract furnished to Lender must be followed. Immediately advise the Lender if any of the sales contract provisions conflict with these Closing Instructions. Immediately advise the Lender of any recent or impending change in ownership. Prior to closing, the Lender must grant approval.  **You must have written authorization from the Vice President of Loan Operations and/or its Directors  of the Lender approving any deviation from these Closing Instructions.** No credits, debits, secondary financing or third party contributions are allowed unless specifically authorized in the Closing Instructions. All persons signing both the Note and the Mortgage must be vested in title. All persons signing the Mortgage must be vested in title or the spouse of someone vested in title as signing as a borrower under the Note.

3.  **TITLE COMMITMENT AND TITLE POLICY.** The Title Policy must be written through the same company which issued the Commitment for Title Insurance ("Title Commitment") previously furnished to the Lender. Lender's loan documents have been prepared based upon the Title Commitment. If the Title Commitment does not comply with the following requirements, Settlement Agent must either (i) amend the Title Commitment, (ii) provide a new Title Commitment, or (iii) agree to provide Lender a subsequent  Title Policy  in accordance with the following requirements:

    3.1  The date of the Title Commitment may not be more than ninety (90) days before the settlement date. If the Title Commitment has expired, do not close the loan, and contact the Lender <u>immediately.</u> The Title Commitment must have an authorized counter signature.

    3.2  The Title Policy provided to the Lender must be an ALTA Loan Policy (October 17, 1992 version) and insure a First Mortgage  lien as of the date of recording (Gap Protection must be provided). The "Name of Insured" in the Title Policy must read exactly: "Ameriquest Mortgage Company , its Successors or Assigns". Short form policies are not acceptable.



0000012762014440307430701

695-1UNV (02/04)

Loan Number: 0127620144 - 5557

3.3 The minimum amount of coverage required is the amount of the loan, as indicated in the Note.

3.4 "Title to estate or interest in the land is insured as vested in" in the Title Policy must exactly match the Borrower/Owner/Spouses' names(s) indicated on the loan documents.

3.5 The Land referred to by the Title Policy must conform to the loan documentation and vice-a-versa. If a manufactured housing unit has been affixed to the land secured by the Lender's loan, attach Endorsement Form ALTA 7 and collect the premium and all expenses from the Borrower. **Lender does not lend on manufactured houses that have not been converted to real property.**

3.6 The "estate or interest in land is insured as encumbered by the insured mortgage" stated in the Title Policy must read FEE SIMPLE unless specifically authorized otherwise. The Title Policy must insure against any loss or damage sustained or incurred by reason of a lack of right of access to and from the land. Any easements providing access to the property must be insured as part of the estate, and not shown as an exception on Schedule "B".

3.7 Schedule "B" must not include an exception for the lack of a survey and must provide affirmative survey coverage.

3.8 The portion of Schedule "B" which refers to "subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership" must be deleted. The following language: "Company insures that standby fees, taxes, and assessments by any taxing authority for the year _____ are not yet due and payable". Must be added to the standard tax exemption. The borrower should pay the expenses associated with such coverage.

3.9 Remove any "visible and apparent" or similar exception to coverage. Remove any "rights to parties in possession," "tenants in possession," or similar exceptions to coverage unless such exception has been specifically authorized. The cost of any inspections must be paid by the Borrower.

3.10 All items mentioned on the Title Commitment as a condition to the issuance of the Title Policy must be disposed of prior to requesting funding authorization. By disbursing the loan funds, Settlement Agent certifies to Lender that all matters disclosed on the Title Commitment will be paid or disposed of to the satisfaction of the title insurer prior to the date of the issuance of the Title Policy, and that no exceptions for any item on the Title Commitment will be contained in the Title Policy.

3.11 If this is an "adjustable mortgage loan", provide at Borrower's Expense an Adjustable Mortgage Loan Endorsement, Form ALTA 6. Provide an Environmental Protection Endorsement, Form ALTA 8.1 for all loans at the Borrower's expense.

3.12 If there are any liens subordinate to the insured lien, or if the Title Commitment references any restrictions containing homeowners association dues, maintenance charges, and/or assessment language, Lender requires that such lien(s) be itemized and shown in Schedule "B" and a statement be made in Schedule "B" that the "Company insures the insured against Loss, if any, sustained by the insured under the terms of the Policy, if this item is not subordinate to the lien of the insured mortgage." The Settlement Agent must obtain a letter signed by the representative of the homeowners association or appropriate entity, indicating that there are no past due homeowners association fees, maintenance charges or assessments. If the maintenance charge or assessment is not subordinated to the Lender's lien, do not close the loan without Lender's written authorization. If Lender authorizes the closing, obtain a letter from the appropriate entity agreeing to provide Lender or its assigns with notice of any default or unpaid dues, charges, or fees. In addition, if the Lender's loan is a second lien loan, as identified in Section 3.2 above, the holder of any superior encumbrance must agree in writing to provide the Lender or its assigns with sixty (60) days advance notice (at Lender's address asset forth in the deed of trust or a different address if so provided) of any pending sale, foreclosure action, or litigation regarding the property.



B95-2UNV (02/04)   080000127620144030743070Z



Loan Number: 0127620144 - 5557

3.13 Unless specifically approved, the property may not be located on a private road, and there may not be any limitations or conditions affecting access to a public road.

3.14 Without Lender approval, no exceptions may be taken for adverse possession claims, bankruptcies, fraudulent transfers, lis pendens claims, unpaid liens or assessments. No exception may be taken for any titles or rights asserted by anyone to tidelands; or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans; or to any land extending from the line of mean low tide to the line of vegetation; or to lands beyond the line of the harbor or bulkhead lines as established or changed by any government; or to filled-in lands; or artificial island; or to riparian rights; or the rights or interests of the State of NJ or the public generally in the area extending from the line of man low tide to the line of vegetation or their right of access thereto; or right of easement along and across the same without without obtaining Lender's written consent to prior closing the transaction. Any inspection fees required for such coverage must be paid by the Borrower.

3.15 A Title Policy is not to be issued including the cost of immediately contemplated improvements, and no exception may be made for any and all liens arising by reason of unpaid bills or claims for work performed or materials furnished in connection with improvements to be placed on the property or for "ending disbursements." **Lender does not write construction loans.**

3.16 If a mineral lease term has expired, no exception may be made for mineral leases. If the lease term is still in effect and it provides entry rights on to the property, specific approval to close must be obtained and there must be a designated drilling site or an Affidavit of Non-Production must be signed by both the seller/owner of the property and the lessee.

3.17 If an exception is being taken for a joint drive-way, party or common wall agreement filed of record, the Agreement must be approved by the Lender prior to closing.

3.18 The effective date of the Title Policy must be the date of the recording of the security instrument(s). GAP Protection must be provided. If any documents must be re-recorded, the Settlement Agent agrees to provide an endorsement showing both the original and re-recorded documents.

**NO REVERSIONARY INTEREST RIGHTS OF FIRST REFUSAL OR RIGHTS OF RE-ENTRY THAT COULD RESULT IN A FORFEITURE OF TITLE OR ANY PART OF TITLE TO THE PROPERTY WHICH IS NOT SUBORDINATED TO LENDER'S INSURED LIEN IS ALLOWED.**

3.22 Delete the Sections of the Policy that are Conditions and Stipulations relating to arbitration.

3.23 Title Policy must be received by Lender no later than 60 days after the date of closing.

4. **TERMITE CERTIFICATION (PURCHASE TRANSACTIONS ONLY).** A wood destroying insect report authorized in the jurisdiction in which the property is located, signed by the inspector, and showing no active infestation, or proof of treatment for a property which does show active infestation must be furnished prior to closing.

    4.1 All structures on the property, including any detached garage, must be inspected. The report must not be more than ninety (90) days old and contain a certification that the property is "free from evidence of active infestation, infection or adverse conditions."



000001276201440307430703

895-SUNV (Rev. 02/04)

Loan Number: 0127620144 - 5557

5.  **EXECUTION OF DOCUMENTATION.**

   5.1  Settlement Agent must verify the identity of all parties by requiring picture identification.

   5.2  **Lender does not allow use of Power of Attorney.**

   5.3  All Truth in Lending Disclosures must be signed prior to the Note, Mortgage or other legal documents.

   5.4  All documents and riders must be signed exactly as the name typed. Do not make any amendments, erasures, strikeouts, or additions to the documents without Lender's approval. If possible, a deletion should be made by marking one line through the language to be deleted. If approved, said amendments, additions and/or strikeouts must be initialed by all parties required to sign that document. Pages of the Note and Mortgage, which do not contain an original signature, must be initialed by the Borrowers. Obtain the initials of all appropriate parties on all other documents indicating the place for party initialing.

   5.5  A notice of the consumer's right of rescission is required on all owner-occupied loans which are not for the initial purchase of the principal dwelling. The Settlement Agent is hereby directed by the Lender to act as its agent in completing or amending the dates in the Notice of Right to Cancel. The "date of transaction" is the date the Mortgage is signed by all Borrowers/Owners/Spouses entitled to rescind. The date following "Not later than midnight of" must be three (3) business days from the date of the transaction. For the purposes of calculating the third business day, count the first day after the date of closing and exclude Sundays and/or federal holidays and the date of funding. All blanks must be completed or amended prior to signature. Settlement Agent must contact the Lender to confirm that the appropriate dates are used. **You must provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement. The right of rescission may not be waived by any party.** If any party indicates a desire to cancel the transaction or refuses to execute the "Receipt of Notice" section, contact the Lender immediately for further instructions.

   5.6  Record the Warranty Deed and any other documents required to vest title in the Borrower. Lender requires a "Deed with Warranties". Pay any recording fees and title expenses. Record Mortgage. Pay off, with loan proceeds if necessary, and obtain the release, discharge or reconveyance of all items shown on the Title Commitment.

   5.7  If mortgage is for a second lien closing agent must complete request for notice of sale recording information on first lien holder.

   5.8  Documents to be recorded in this transaction must be presented to the county recorder's office in the following order:

   a. Warranty Deed (if a change in vesting is occurring)
   b. Mortgage (with any Riders)
   c. Supporting documents required to be filed/recorded (if any).

   Settlement Agent must properly file the documents requested by Lender to be recorded, and obtain from Borrower and/or Seller the required filing fees. Any Warranty Deed used in this transaction must be returned to the Borrower with a copy to the Lender. The Mortgage must be returned after recording to the Lender.



000001275201440307480704

695-4URV (09/05)



Loan Number: 0127620144 - 5557

6. **SETTLEMENT CHARGES AND LOAN DISBURSEMENTS.** You must use the attached itemization of settlement charges and disbursements to prepare the Settlement Statement. No funds you receive on behalf of the borrower(s) may be disbursed for any purpose or to any payee other than as directed in these instructions and disclosed on the Settlement Statement (HUD-1 or HUD-1A) issued to borrower. Ameriquest Mortgage Company Branch Associates and borrowers have no authority to change the amounts or payees of settlement charges and disbursements set forth in the attached itemization, and disclosed on the settlement statement.

7. **COPIES.** Unless more than one (1) copy is required by these Closing Instructions, each Borrower must be provided with one (1) copy of all documents required by the Lender or Settlement Agent to be signed by Borrower. Prior to funding approval, Settlement Agent must provide a certified copy of each item that will be shown as an exception on the final title policy and deliver same to Lender.

**FUNDING AND DISBURSEMENT.** The complete loan package is due in Lender's office the day after loan signing. After satisfactory review, the loan will be funded.

Once the loan is funded and funds are submitted for disbursement, a Final Settlement Statement will be prepared and submitted to the Lender.

LENDER RESERVES THE RIGHT TO CANCEL OR MODIFY THESE INSTRUCTIONS AT ANY TIME UPON NOTICE TO SETTLEMENT AGENT.

IF YOU ARE UNABLE TO CLOSE AND FUND THE LOAN AS SPECIFIED, CONTACT THE LENDER IMMEDIATELY AT 714-634-3494 .

TITLE COMPANY AGREES TO FULLY COOPERATE AND ASSIST LENDER DURING ANY STATE REGULATORY AUDITS.

Settlement Agent:

By _____

It's _____

Date: _____8/3/05_____



G00001276201440307430705

805-SUNV (Rev. 07XX)

## CERTIFICATE OF SERVICE

I, Bernard E. LeSage, hereby certify that on this 11th day of April 2008, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Bernard E. LeSage