**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
|  | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO DOCKET # 859 | Centralized before The Honorable Marvin E. Aspen |

IN RE AMERIQUEST MORTGAGE CO.          )   MDL No. 1715
MORTGAGE LENDING PRACTICES             )
LITIGATION                             )   Lead Case No. 05-cv-07097
                                       )
                                       )   Centralized before The Honorable
THIS DOCUMENT RELATES TO               )   Marvin E. Aspen
DOCKET # 859                           )

AMERIQUEST MORTGAGE CO.,               )
                                       )
        Third-Party Plaintiff,         )
                                       )
v.                                     )
TRANS UNION, LLC, et. al,              )
                                       )
        Third-Party Defendants.)       )

**EQUIFAX INFORMATION SERVICES LLC'S AND EQUIFAX CREDIT MARKETING**
**SERVICES' ANSWER TO THE THIRD PARTY**
**COMPLAINT OF AMERIQUEST MORTGAGE COMPANY**

Third-Party Defendants Equifax Information Services LLC and Equifax Credit Marketing Services (collectively, "Equifax"), by and through its attorneys, hereby answer Ameriquest Mortgage Company's Third-Party Complaint (the "Complaint") as follows. Equifax states that Third-Party Plaintiff has incorrectly identified Third-Party Defendant Equifax Information Services LLC in the Third-Party Complaint as Equifax Credit Information Services, Inc. Equifax answers the Third-Party Complaint on behalf of Equifax Credit Information Services, Inc. because Equifax Information Services LLC is the successor in interest to Equifax Credit Information Services, Inc. Each allegation in the Complaint that is not specifically admitted by Equifax is denied.

484664_1.DOC

## THE PARTIES

1.  Ameriquest is a Delaware corporation with its principal place of business in Orange, California.

**ANSWER:**  Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 and therefore denies those allegations.

2.  Third-party defendants Trans Union LLC and Trans Union Corporation, sometimes doing business as PerformanceData (hereinafter collectively, "TransUnion"), are Delaware corporations with their principal place of business in Chicago, Illinois.

**ANSWER:**  Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 and therefore denies those allegations.

3.  Third-party defendant ChoicePoint Precision Marketing, Inc. ("ChoicePoint") is a Georgia corporation with its principal place of business in Alpharetta, Georgia.

**ANSWER:**  Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 and therefore denies those allegations.

4.  Third-party defendant Equifax Credit Information Services, Inc. ("Equifax") is a Georgia Corporation with its principal place of business in Atlanta, Georgia.

**ANSWER:**  Equifax states that Equifax Credit Information Services, Inc. is not a correct party to this action and is no longer in existence, and Equifax therefore denies the allegations in paragraph 4.  Equifax admits that Equifax Information Services LLC is Georgia Corporation with its principal place of business in Atlanta, Georgia.

5.  Third-party defendant Equifax Credit Marketing Services is a division of Equifax Credit Information Services, Inc. ("ECMS").

**ANSWER:**  Equifax denies the allegations of paragraph 5 but admits that Equifax Credit Marketing Services is a division of Equifax Information Services LLC, the successor in interest to Equifax Credit Information Services, Inc.

6.  Ameriquest is informed and believes, and based thereon alleges, that each of the foregoing third-party defendants, was the agent, representative, co-conspirator, and/or servant of each of the remaining third-party defendants and was acting within the course and scope of that

2

agency, representation, or service in doing and/or failing to do the acts herein alleged. Ameriquest is informed and believes, and thereon alleges, that these third-party defendants, and each of them, conspired together and willfully formed a deliberate design and purpose to, and/or entered into a scheme to do, the acts and/or omissions herein alleged, and in pursuance thereof, did and/or caused to be done such acts and/or omissions; that all of said acts and/or omissions were participated in and were done by all of these third-party defendants, or any one or more of them, as steps in furtherance of said conspiracy and for the purposes set forth herein.

**ANSWER:** Equifax denies the allegations in Paragraph 6.

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, because this case relates to claims arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq. ("FCRA")*.

**ANSWER:** Equifax admits the allegations in Paragraph 7.

8. Venue is proper in this judicial district pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, because Ameriquest's claims against the third-party defendants herein arise directly out of claims asserted by plaintiffs Raymond Quarterman, Jr., Thomas Klutho, and Mary Forrest, on behalf of themselves and a putative class of non-borrowers nationwide (collectively, the "Non-Borrower Plaintiffs"), against Ameriquest in this Court. On December 6, 2006, the Non-Borrower Plaintiffs filed the Consolidated Complaint for Claims of Non-Borrowers (Docket #323) (the "Non-Borrower Complaint"). Through the Non-Borrower Complaint, the Non-Borrower Plaintiffs allege that the letters attached as Exhibits "A" through "E" to the Non-Borrower Complaint, as well as all similar letters sent by or at the behest of Ameriquest (the "Letters"), violated FCRA's firm offer of credit and/or clear and conspicuous disclosure requirements. To the extent that these allegations are found to be true by a trier of fact, the alleged failure to comply with FCRA is directly attributable to the assistance, advice, recommendations, conduct, and actions of TransUnion, ChoicePoint, Equifax and ECMS. As alleged herein, each of the Defendants provided, among other things, advice and direct-marketing services to Ameriquest in the development, formulation, creation, production and maintenance of a direct-mail marketing program (the "Direct Mail Program"), including, but not limited to, the use of the Letters sent to consumers utilizing prescreened consumer lists (the "Consumer Lists").

**ANSWER:** Equifax states that the assertions in the first sentence of Paragraph 8 concern

conclusions of law and do not require an answer. Regarding the second and third sentences of

Paragraph 8, Equifax states that the Non-Borrower Complaint speaks for itself. Equifax denies

the allegations in the fourth sentence of Paragraph 8 to the extent they relate to Equifax. Equifax

is without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in the fourth sentence of Paragraph 8 and, on that basis, denies them. With respect to

3

the fifth sentence of Paragraph 8, Equifax states that it provided services to Ameriquest pursuant to a written contractual agreement but otherwise denies the allegations in the fifth sentence. Equifax denies the remaining allegations of Paragraph 8.

Ameriquest Mortgage Company ("Ameriquest") omitted Paragraphs 9 through 14 from its Complaint.

## GENERAL ALLEGATIONS

## (ALLEGATIONS AS TO TRANSUNION)

15.     TransUnion is a credit reporting agency as defined in FCRA. At all times relevant herein, and in connection with the Direct Mail Program, TransUnion, together with its affiliated companies, entered into a series of written and oral agreements with Ameriquest whereby TransUnion provided the data and developed and marketed the models and the computerized process/systems for generating the Consumer Lists. The Consumer Lists were leased to Ameriquest in order for Ameriquest to have the Letters made and sent, and thereby make "firm offers of credit" that contained proper "clear and conspicuous" disclosures to consumers. Ameriquest never owned the Consumer Lists and was simply granted a license for such use for specified periods of time.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 and therefore denies those allegations.

16.     TransUnion provided the data and developed and sold to Ameriquest the models and/or computerized process/systems for generating the Consumer Lists.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 and therefore denies those allegations.

17.     At all times relevant herein, TransUnion represented to Ameriquest that it knew and operated within the requirements of FCRA. Further, TransUnion represented to Ameriquest that it was aware of the responsibilities imposed by FCRA upon those persons who furnish information to consumer reporting agencies, as well as on users of consumer reports, including, but not limited to, those specific requirements under FCRA that pertain to making firm offers of credit and/or clear and conspicuous disclosures. Ameriquest reasonably relied upon these representations in entering into the agreements with TransUnion and in utilizing the services TransUnion provided.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 and therefore denies those allegations.

4

18.     TransUnion was fully aware that the data and Consumer Lists it provided, and/or the models/computerized process/systems it provided to Ameriquest would be used as part of Ameriquest's Direct Mail Program in order to send the Letters and make firm offers of credit (along with clear and conspicuous disclosures) to consumers. TransUnion was also aware of the requirements under FCRA regarding use of the Consumer Lists to make firm offers of credit and the FCRA requirements regarding clear and conspicuous disclosures. TransUnion required that the data it provided by virtue of the Consumer Lists and/or the models/computerized process/systems would be used consistent with all applicable consumer protection laws, including FCRA.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 18 and therefore denies those allegations.

19.     In connection with the Direct Mail Program, and in order to ensure that Ameriquest's Direct Mail Program complied with FCRA, TransUnion required Ameriquest to provide it with drafts of the proposed Letters annually. TransUnion required that as a condition of it providing Ameriquest with the Consumer Lists, TransUnion would have the opportunity to review, comment, and approve the Letters. In other words, TransUnion would not provide Ameriquest with information on consumers until it satisfied itself that the Letters Ameriquest intended to send would comply with all applicable laws, including, but not limited to, those related to firm offers of credit and clear and conspicuous disclosures under FCRA.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 19 and therefore denies those allegations.

20.     TransUnion's continual review of Ameriquest's Direct Mail Program provided Ameriquest with assurance that the Direct Mail Program was at all times in compliance with applicable law, including FCRA.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 20 and therefore denies those allegations.

### (ALLEGATIONS AS TO CHOICEPOINT)

21.     ChoicePoint is a credit reporting agency and/or a reseller of credit information as defined in FCRA. At all times relevant herein, and in connection with the Direct Mail Program, ChoicePoint entered into a series of written and oral agreements with Ameriquest whereby it, using Equifax data, agreed to provide, and provided Ameriquest with the Consumer Lists for Ameriquest's Direct Mail Program so that Ameriquest could have the Letters made and sent, and thereby make "firm offers of credit" that contained proper "clear and conspicuous" disclosures to consumers.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 21 and therefore denies those allegations.

22.     ChoicePoint provided services related to the Direct Mail Program, including, but not limited to, providing the Consumer Lists for Ameriquest's use.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 22 and therefore denies those allegations.

23.     At all times relevant herein, ChoicePoint represented to Ameriquest that it knew and operated within the requirements of FCRA. Further, ChoicePoint represented to Ameriquest that it was aware of the responsibilities imposed by FCRA upon those persons who furnished information to consumer reporting agencies, as well as on users of consumer reports, including, but not limited to, those specific requirements under FCRA that pertain to making firm offers of credit and/or clear and conspicuous disclosures. Ameriquest reasonably relied upon these representations in entering into the agreements with ChoicePoint and in utilizing the services ChoicePoint provided.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 23 and therefore denies those allegations.

24.     ChoicePoint was fully aware that the Consumer Lists and other services it provided to Ameriquest would be used as part of Ameriquest's Direct Mail Program in order to send the Letters and make firm offers of credit (along with clear and conspicuous disclosures) to consumers. ChoicePoint was also aware of the requirements under FCRA regarding use of the Consumer Lists to make firm offers of credit, and the FCRA requirements regarding clear and conspicuous disclosures. ChoicePoint required that the data it provided by virtue of the Consumer Lists would be used consistent with all applicable consumer protection laws, including FCRA.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 24 and therefore denies those allegations.

25.     In addition to having full knowledge of how Ameriquest would use the information it provided, ChoicePoint at all times had the ability and opportunity to review, comment, and approve the Letters in order to satisfy itself that Ameriquest's Direct Mail Program and the Letters complied with all applicable laws, including, but not limited to, those related to firm offers of credit and clear and conspicuous disclosures under FCRA.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 25 and therefore denies those allegations.

## (ALLEGATIONS AS TO EQUIFAX)

26.     Equifax is a credit reporting agency as defined in FCRA. At all times relevant herein, and in connection with the Direct Mail Program, Equifax, together with its affiliated companies, including ECMS, entered into a series of written and oral agreements with Ameriquest whereby Equifax provided the data and/or developed and marketed the computerized process/systems for generating the Consumer Lists. The Consumer Lists generated from Equifax data were provided to Ameriquest by Equifax and Choicepoint in order for Ameriquest to have the Letters made and sent, and thereby make "firm offers of credit" that contained proper "clear and conspicuous" disclosures to consumers.

**ANSWER:**     Equifax admits the allegations in the first sentence of paragraph 26.  Regarding the second sentence of paragraph 26, Equifax admits it entered into a written contractual agreement with Ameriquest but otherwise denies the allegations of that sentence.  Regarding the third sentence of paragraph 26, Equifax denies that Equifax Information Services LLC provided data to Ameriquest and otherwise denies the allegations in that sentence.

27.     Equifax, for itself and/or through Choicepoint, developed and sold to Ameriquest the Consumer Lists generated from Equifax data.

**ANSWER:**     Equifax denies that Equifax Information Services LLC provided data to Ameriquest and otherwise denies the allegations in paragraph 27.

28.     At all times relevant herein, Equifax represented to Ameriquest that it knew and operated within the requirements of FCRA. Further, Equifax represented to Ameriquest that it was aware of the responsibilities imposed by FCRA upon those persons who furnish information to consumer reporting agencies, as well as on users of consumer reports, including, but not limited to, those specific requirements under FCRA that pertain to making firm offers of credit and/or clear and conspicuous disclosures. Ameriquest reasonably relied upon these representations in entering into the agreements with Equifax and in utilizing the services Equifax

**ANSWER:**     Equifax admits that at all times relevant herein it knew and operated within the requirements of the FCRA, but otherwise denies the allegations in paragraph 28.

29.     Equifax was fully aware that the Consumer Lists and/or the models/computerized process/systems it provided to Ameriquest would be used as part of Ameriquest's Direct Mail Program in order to send the Letters and make firm offers of credit (along with clear and conspicuous disclosures) to consumers. Equifax was also aware of the requirements under FCRA regarding use of the Consumer Lists to make firm offers of credit and the FCRA requirements regarding clear and conspicuous disclosures. Equifax required that the data it provided by virtue of the Consumer Lists and/or the models/computerized process/systems would be used consistent

7

with all applicable consumer protection laws, including FCRA.

**ANSWER:** Equifax denies that Equifax Information Services LLC provided data to Ameriquest. Equifax admits that it was aware that some or all of the data provided to Ameriquest would be used as part of Ameriquest's direct mail program, and further admits that it required that the data would be used consistent with all applicable consumer protection law, including the FCRA, but otherwise denies the allegations in paragraph 29.

    30. In addition to having full knowledge of how Ameriquest would use the information it provided, Equifax at all times had the ability and opportunity to review, comment, and approve the Letters in order to satisfy itself that Ameriquest's Direct Mail Program and the Letters complied with all applicable laws, including, but not limited to, those related to firm offers of credit and clear and conspicuous disclosures under FCRA.

**ANSWER:** Equifax denies the allegations in paragraph 30.

### (ALLEGATIONS AS TO ECMS)

    31. ECMS is a credit reporting agency as defined in FCRA. At all times relevant herein, and in connection with the Direct Mail Program, ECMS entered into a series of written and oral agreements with Ameriquest whereby it, using Equifax data, agreed to provide, and provided Ameriquest with the Consumer Lists for Ameriquest's Direct Mail Program so that Ameriquest could have the Letters made and sent, and thereby make "firm offers of credit" that contained proper "clear and conspicuous" disclosures to consumers.

**ANSWER:** Equifax denies the allegations in paragraph 31.

    32. ECMS provided services related to the Direct Mail Program, including, but not limited to, providing the Consumer Lists for Ameriquest's use.

**ANSWER:** Equifax admits that ECMS provided services to Ameriquest, but otherwise denies the allegations in paragraph 32.

    33. At all times relevant herein, ECMS represented to Ameriquest that it knew and operated within the requirements of FCRA. Further, ECMS represented to Ameriquest that it was aware of the responsibilities imposed by FCRA upon those persons who furnished information to consumer reporting agencies, as well as on users of consumer reports, including, but not limited to, those specific requirements under FCRA that pertain to making firm offers of credit and/or clear and conspicuous disclosures. Ameriquest reasonably relied upon these representations in entering into the agreements with ECMS and in utilizing the services ECMS provided.

**ANSWER:** Equifax admits that at all times relevant herein it knew and operated within the

requirements of the FCRA, but otherwise denies the allegations in paragraph 33.

34.     ECMS was fully aware that the Consumer Lists and other services it provided to Ameriquest would be used as part of Ameriquest's Direct Mail Program in order to send the Letters and make firm offers of credit (along with clear and conspicuous disclosures) to consumers. ECMS was also aware of the requirements under FCRA regarding use of the Consumer Lists to make firm offers of credit, and the FCRA requirements regarding clear and conspicuous disclosures. ECMS required that the data it provided by virtue of the Consumer Lists would be used consistent with all applicable consumer protection laws.

**ANSWER:**     Equifax admits that it was aware that some or all of the data ECMS provided to Ameriquest would be used as part of Ameriquest's direct mail program, and further admits that it required that the data would be used consistent with all applicable consumer protection law, including the FCRA, but otherwise denies the allegations in paragraph 34.

35.     In addition to having full knowledge of how Ameriquest would use the information it provided, ECMS at all times had the ability and opportunity to review, comment, and approve the Letters in order to satisfy itself that Ameriquest's Direct Mail Program and the Letters complied with all applicable laws, including, but not limited to, those related to firm offers of credit and clear and conspicuous disclosures under FCRA.

**ANSWER:**     Equifax denies the allegations in paragraph 33.

### FIRST CLAIM

### (Breach of Contract—Against TransUnion)

36.     Ameriquest realleges paragraphs 1 through 35 inclusive, and incorporates the same by reference.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 and therefore denies those allegations.

37.     Ameriquest and TransUnion entered into oral and written contracts under which TransUnion agreed to provide data and develop and developed and marketed the models and computerized process/systems for generating the Consumer Lists, and agreed to provide and provided the Consumer Lists to Ameriquest for use in Ameriquest's Direct Mail Program to make firm offers of credit (with clear and conspicuous disclosures) to consumers.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 and therefore denies those allegations.

9

38.     Ameriquest has performed its obligations under the contracts with TransUnion, including, but not limited to, paying TransUnion for its services.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 38 and therefore denies those allegations.

39.     TransUnion was required to perform all of its duties under the contracts with Ameriquest in compliance with all applicable laws, including FCRA. Ameriquest relied upon TransUnion's expertise and experience in the direct-mail marketing field with respect to ensuring that the models and computerized process/systems, and the Consumer Lists it provided were done in compliance with FCRA. Further, Ameriquest relied upon TransUnion's expertise and review of the Letters to ensure its compliance with FCRA.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 39 and therefore denies those allegations.

40.     In the event that the allegations in the Non-Borrower Complaint are proven to be true, Trans Union breached its written and oral contracts with Ameriquest by failing in its prescreening activities, and the models and systems and the Consumer Lists it developed, as well as failing to ensure that the Letters used by Ameriquest complied with the firm offer of credit and clear and conspicuous disclosure requirements of FCRA.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 40 and therefore denies those allegations.

41.     Further, because TransUnion was required to perform all of its duties under its written and oral contracts with Ameriquest in compliance with all applicable laws, including FCRA, Ameriquest relied upon TransUnion's expertise and experience in the direct-mail marketing field with respect to ensuring that the procurement of the Customer Lists and the sending of the Letters were done in compliance with FCRA. Thus, if a violation of FCRA is proven by the Non-Borrower Plaintiffs, then such violation is because of TransUnion's actions, which actions must necessarily be construed as a breach of TransUnion's contracts with Ameriquest. Further, if the Non-Borrower Plaintiffs demonstrate a violation of FCRA, and if Ameriquest is assessed damages as a result, such damages will have been directly and proximately caused by TransUnion's breach.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 41 and therefore denies those allegations.

42.     Ameriquest has suffered damages in an amount according to proof, but in no event less than the amount of any consideration Ameriquest paid TransUnion for its services over the relevant time period. Ameriquest estimates that the combined consideration paid to TransUnion, ChoicePoint, Equifax and ECMS exceeded approximately $680,000,000. Further,

Ameriquest has also suffered damages in the amount of any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to Non-Borrower Plaintiffs against Ameriquest in connection with the Non-Borrower Complaint.

**ANSWER:** Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 42 and therefore denies those allegations.

## SECOND CLAIM

### (Breach of Contract—Against Choicepoint)

43. Ameriquest re-alleges paragraphs 1 through 42 inclusive, and incorporates the same by reference.

**ANSWER:** Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 43 and therefore denies those allegations.

44. Ameriquest and ChoicePoint entered into oral and written contracts under which ChoicePoint, using Equifax data, agreed to provide and provided Ameriquest with the Consumer Lists for Ameriquest's Direct Mail Program so that Ameriquest could make firm offers of credit and clear and conspicuous disclosures to consumers.

**ANSWER:** Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 44 and therefore denies those allegations.

45. Ameriquest has performed its obligations under the agreements with ChoicePoint, including, but not limited to, paying ChoicePoint for its services.

**ANSWER:** Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 45 and therefore denies those allegations.

46. ChoicePoint was required to perform all of its duties under the contracts with Ameriquest in compliance with all applicable laws, including FCRA. Ameriquest relied upon ChoicePoint's expertise and experience in the direct-mail marketing field with respect to ensuring that the Consumer Lists it provided were done in compliance with FCRA. Further, Ameriquest relied upon ChoicePoint's expertise and review of the Letters to ensure its compliance with FCRA.

**ANSWER:** Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 46 and therefore denies those allegations.

47. In the event that the allegations in the Non-Borrower Complaint are proven to be

true, ChoicePoint breached its written and oral contracts with Ameriquest by failing in its prescreening activities, and the Consumer Lists it developed, as well as failing to ensure that the Letters used by Ameriquest complied with the firm offer of credit and clear and conspicuous disclosure requirements of FCRA.

**ANSWER:**    Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 and therefore denies those allegations.

48.    Further, because ChoicePoint was required to perform all of its duties under its written and oral contracts with Ameriquest in compliance with all applicable laws, including FCRA, Ameriquest relied upon ChoicePoint's expertise and experience in the direct-mail marketing field with respect to ensuring that the procurement of Customer Lists and the sending of the Letters were done in compliance with FCRA. Thus, if a violation of FCRA is proven by the Non-Borrower Plaintiffs, then such violation is because of ChoicePoint's actions, which actions must necessarily be construed as a breach of ChoicePoint's contracts with Ameriquest. Further, if the Non-Borrower Plaintiffs demonstrate a violation of FCRA, and if Ameriquest is assessed damages as a result, such damages will have been directly and proximately caused by ChoicePoint's breach.

**ANSWER:**    Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 and therefore denies those allegations.

49.    Ameriquest has suffered damages in an amount according to proof, but in no event less than the amount of any consideration Ameriquest paid ChoicePoint for its services over the relevant time period. Ameriquest estimates that the combined consideration paid to TransUnion, ChoicePoint, Equifax, and ECMS exceeded approximately $680,000,000. Further, Ameriquest has also suffered damages in the amount of any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to Non-Borrower Plaintiffs against Ameriquest in connection with the Non-Borrower Complaint.

**ANSWER:**    Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 and therefore denies those allegations.

### THIRD CLAIM

### (Breach of Contract—Against Equifax)

50.    Ameriquest re-alleges paragraphs 1 through 49 inclusive, and incorporates the same by reference.

**ANSWER:**    Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 and therefore denies those allegations.

484664_1.DOC

51.    Ameriquest and Equifax entered into oral and written contracts under which Equifax agreed to provide data and to develop and developed and marketed the computerized process/systems for generating the Consumer Lists, and agreed to provide and provided the Consumer Lists to Ameriquest for use in Ameriquest's Direct Mail Program to make firm offers of credit (with clear and conspicuous disclosures) to consumers.

**ANSWER:**    Equifax admits it entered into a written contractual agreement with Ameriquest

but otherwise denies the allegations in paragraph 51.

52.    Ameriquest has performed its obligations under the contracts with Equifax, including, but not limited to, paying Equifax for its services.

**ANSWER:**    Equifax denies the allegations in paragraph 52.

53.    Equifax was required to perform all of its duties under the contracts with Ameriquest in compliance with all applicable laws, including FCRA. Ameriquest relied upon Equifax's expertise and experience in the direct-mail marketing field with respect to ensuring that the data, the computerized process/systems, and the Consumer Lists it provided were done in compliance with FCRA. Further, Ameriquest relied upon Equifax's expertise and review of the Letters to ensure its compliance with FCRA.

**ANSWER:**    Equifax admits that at all times relevant herein it knew and operated within the

requirements of the FCRA.  Equifax is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in paragraph 53 and those allegations are

therefore denied.

54.    In the event that the allegations in the Non-Borrower Complaint are proven to be true, Equifax breached its written and oral contracts with Ameriquest by failing in its prescreening activities, and the models and systems and the Consumer Lists it developed, as well as failing to ensure that the Letters used by Ameriquest complied with the firm offer of credit and clear and conspicuous disclosure requirements of FCRA.

**ANSWER:**    Equifax denies the allegations in paragraph 54.

55.    Further, because Equifax was required to perform all of its duties under its written and oral contracts with Ameriquest in compliance with all applicable laws, including FCRA, Ameriquest relied upon Equifax's expertise and experience in the direct-mail marketing field with respect to ensuring that the procurement of the Customer Lists and the sending of the Letters were done in compliance with FCRA. Thus, if a violation of FCRA is proven by the Non-Borrower Plaintiffs, then such violation is because of Equifax's actions, which actions must necessarily be construed as a breach of Equifax's contracts with Ameriquest. Further, if the Non-Borrower Plaintiffs demonstrate a violation of FCRA, and if Ameriquest is assessed damages as a result, such damages will have been directly and proximately caused by Equifax's breach.

**ANSWER:**    Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in the first sentence of Paragraph 55 and therefore denies them.  Equifax

denies the remaining allegations of paragraph 55.

56.    Ameriquest has suffered damages in an amount according to proof, but in no event less than the amount of any consideration Ameriquest paid Equifax for its services over the relevant time period. Ameriquest estimates that the combined consideration paid to TransUnion, ChoicePoint, Equifax and ECMS exceeded approximately $680,000,000. Further, Ameriquest has also suffered damages in the amount of any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to Non-Borrower Plaintiffs against Ameriquest in connection with the Non-Borrower Complaint.

**ANSWER:**    Equifax denies that Ameriquest has suffered damages.  Equifax further states that

it is without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 56 and those allegations are therefore denied.

### FOURTH CLAIM

### (Breach of Contract—Against ECMS)

57.    Ameriquest re-alleges paragraphs 1 through 56 inclusive, and incorporates the same by reference.

**ANSWER:**    Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 57 and therefore denies those allegations.

58.    Ameriquest and ECMS entered into oral and written contracts under which ECMS, using Equifax data, agreed to provide and provided Ameriquest with the Consumer Lists for Ameriquest's Direct Mail Program so that Ameriquest could make firm offers of credit and clear and conspicuous disclosures to consumers.

**ANSWER:**    Equifax admits that it provided services to Ameriquest pursuant to a written

contractual agreement but otherwise denies the allegations in paragraph 58.

59.    Ameriquest has performed its obligations under the agreements with ECMS, including, but not limited to, paying ECMS for its services.

**ANSWER:**    Equifax denies the allegations in paragraph 59.

60.    ECMS was required to perform all of its duties under the contracts with Ameriquest in compliance with all applicable laws, including FCRA. Ameriquest relied upon

ECMS's expertise and experience in the direct-mail marketing field with respect to ensuring that the Consumer Lists it provided were done in compliance with FCRA. Further, Ameriquest relied upon ECMS's expertise and review of the Letters to ensure its compliance with FCRA.

**ANSWER:**   Equifax admits that at all times relevant herein it knew and operated within the requirements of the FCRA. Equifax is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 60 and therefore denies those allegations.

61.     In the event that the allegations in the Non-Borrower Complaint are proven to be true, ECMS breached its written and oral contracts with Ameriquest by failing in its prescreening activities, and the Consumer Lists it developed, as well as failing to ensure that the Letters used by Ameriquest complied with the firm offer of credit and clear and conspicuous disclosure requirements of FCRA.

**ANSWER:**   Equifax denies the allegations in paragraph 61.

62.     Further, because ECMS was required to perform all of its duties under its written and oral contracts with Ameriquest in compliance with all applicable laws, including FCRA, Ameriquest relied upon ECMS's expertise and experience in the direct-mail marketing field with respect to ensuring that the procurement of Customer Lists and the sending of the Letters were done in compliance with FCRA. Thus, if a violation of FCRA is proven by the Non-Borrower Plaintiffs, then such violation is because of ECMS's actions, which actions must necessarily be construed as a breach of ECMS's contracts with Ameriquest. Further, if the Non-Borrower Plaintiffs demonstrate a violation of FCRA, and if Ameriquest is assessed damages as a result, such damages will have been directly and proximately caused by ECMS's breach.

**ANSWER:**   Equifax denies the allegations in paragraph 62.

63.     Ameriquest has suffered damages in an amount according to proof, but in no event less than the amount of any consideration Ameriquest paid ECMS for its services over the relevant time period. Ameriquest estimates that the combined consideration paid to TransUnion, ChoicePoint, Equifax and ECMS exceeded approximately $680,000,000. Further, Ameriquest has also suffered damages in the amount of any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to Non-Borrower Plaintiffs against Ameriquest in connection with the Non-Borrower Complaint.

**ANSWER:**   Equifax denies that Ameriquest has suffered damages. Equifax further states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 and those allegations are therefore denied.

## FIFTH CLAIM

### (Equitable Indemnity/Implied Indemnity—Against All Third-Party Defendants)

64.-69. Because the Court dismissed this Claim as to Equifax in its Memorandum Opinion and Order dated March 5, 2008, no response is required to Paragraphs 64-69.

## SIXTH CLAIM

### (Contribution—Against All Third-Party Defendants)

70-75. Because the Court dismissed this Claim as to Equifax in its Memorandum Opinion and Order dated March 5, 2008, no response is required to Paragraphs 70-75.

## SEVENTH CLAIM

### (Negligent Misrepresentation—Against All Third-Party Defendants)

76. Ameriquest re-alleges paragraphs 1 through 75 inclusive, and incorporates the same by reference.

**ANSWER:** Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 and therefore denies those allegations.

77. The Third-Party Defendants each represented to Ameriquest that they had experience using and developing the direct-mail programs, processes, systems, models, the Consumer Lists, and firm offer Letters that they sold to Ameriquest. The Third-Party Defendants each represented to Ameriquest that they were aware of the requirements imposed by FCRA that pertain to the making of firm offers of credit and/or clear and conspicuous disclosures, and that the services they provided to Ameriquest were compliant with such requirements. The Third-Party Defendants each provided assurances to Ameriquest that the Letters were compliant with FCRA. The Third-Party Defendants each knew that Ameriquest would be using the services and information they provided for its Direct Mail Program and to send the Letters.

**ANSWER:** To the extent the allegations in paragraph 77 apply to Equifax, they are denied. Equifax further states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 77 and those allegations are therefore denied.

78. In the event that the Non-Borrower Plaintiffs' allegations in the Non-Borrower Complaint are found to be true by a trier of fact, then at the time the Third-Party Defendants made these representations, they knew, or should have known, that they were materially false. The Third-Party Defendants, given their positions, expertise, and experience in the direct-mail

16

marketing field, knew or should have known that these representations were false when made.

**ANSWER:** To the extent the allegations in paragraph 78 apply to Equifax, they are denied.

Equifax further states that it is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 78 and those allegations are therefore denied.

79. The Third-Party Defendants made these representations with the intention to induce Ameriquest to enter into the various oral and written agreements between Ameriquest and the Third-Party Defendants and to induce Ameriquest to use the Third-Party Defendants' services, for which Ameriquest would pay the Third-Party Defendants substantial fees.

**ANSWER:** To the extent the allegations in paragraph 79 apply to Equifax, they are denied.

Equifax further states that it is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 79 and those allegations are therefore denied.

80. Ameriquest reasonably relied on the Third-Party Defendants' representations in implementing its Direct Mail Program and in sending the Letters.

**ANSWER:** Equifax is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 80 and those allegations are therefore denied.

81. In the event that the allegations in the Non-Borrower Complaint are proven to be true, and Ameriquest is found liable to the Non-Borrower Plaintiffs for any judgment, settlement, attorneys' fees, costs or other equitable relief, then as a direct and proximate result of the Third-Party Defendants' representations, Ameriquest will have suffered damages including, but not limited to, any damages that it suffers in connection with the Non-Borrower Complaint.

**ANSWER:** To the extent the allegations in paragraph 81 apply to Equifax, they are denied.

Equifax further states that it is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 81 and those allegations are therefore denied.

## EIGHTH CLAIM

### (Negligence—Against All Third-Party Defendants)

82-88. Because the Court dismissed this Claim as to Equifax in its Memorandum Opinion and

Order dated March 5, 2008, no response is required to Paragraphs 82-88.

## NINTH CLAIM

### (Rescission of Contracts—Against All Third-Party Defendants)

89.     Ameriquest re-alleges paragraphs 1 through 88 inclusive, and incorporates the same by reference.

**ANSWER:**     Equifax is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 89 and those allegations are therefore denied.

90.     As set forth above, each of the Third-Party Defendants entered into various contracts with Ameriquest.

**ANSWER:**     To the extent the allegations in paragraph 90 apply to Equifax, they are denied. Equifax further states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 90 and those allegations are therefore denied.

91.     In these contracts (and elsewhere) the Third-Party Defendants each represented to Ameriquest that they had experience using and developing these same direct-mail programs, processes, systems, models, the Consumer Lists, and firm offer Letters. The Third-Party Defendants each represented to Ameriquest that they were aware of the requirements imposed by FCRA that pertain to the making of firm offers of credit and/or clear and conspicuous disclosures, and that the services they provided to Ameriquest were compliant with such requirements. The Third-Party Defendants each provided assurances to Ameriquest that the Letters were compliant with FCRA. Ameriquest relied upon these representations, assurances and inducements to enter into the various contracts with the Third-Party Defendants. The Third-Party Defendants each knew that Ameriquest would be using the information and services they provided for its Direct Mail Program, and to send the Letters, and that such must be compliant with all applicable laws including FCRA.

**ANSWER:**     To the extent the allegations in paragraph 91 apply to Equifax, they are denied. Equifax further states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 91 and those allegations are therefore denied.

92.     In the event that the Non-Borrower Plaintiffs' allegations in the Non-Borrower Complaint are found to be true by a trier of fact, then the foregoing representations by the Third-Party Defendants were materially false, and falsely induced Ameriquest to enter into the foregoing contracts and pay them substantial fees in connection therewith. Thus, in the event that the Non-Borrower Plaintiffs' allegations in the Non-Borrower Complaint are found to be true by a trier of fact, then each of the contracts between Ameriquest and the Third-Party Defendants should be rescinded, and the Third-Party Defendants should be required to return to Ameriquest the amount of all consideration each of the Third-Party Defendants received from Ameriquest for

its services.

**ANSWER:**    To the extent the allegations in paragraph 92 apply to Equifax, they are denied. Equifax further states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 92 and those allegations are therefore denied.

### PRAYER FOR RELIEF

Equifax denies that Ameriquest is entitled to any damages, costs, fees, equitable or other relief from or against Equifax.

### AFFIRMATIVE DEFENSES

#### (First Affirmative Defense)

Failure to state a claim upon which relief can be granted.

#### (Second Affirmative Defense)

Ameriquest's state and common law claims are preempted by the Supremacy Clause of the United States Constitution and the Fair Credit Reporting Act.

#### (Third Affirmative Defense)

Ameriquest's claims are barred, in whole or part, by the statute of limitations and the doctrine of laches.

#### (Fourth Affirmative Defense)

Ameriquest's claims are barred in, in whole or part, by the doctrines of assumption of risk, contributory negligence, failure of consideration, fraud, release, res judicata, statutes of fraud, and waiver.

#### (Fifth Affirmative Defense)

Ameriquest's damages, if any, are due to its own conduct.

#### (Sixth Affirmative Defense)

Ameriquest's damages are the result of acts or omissions committed by other parties over

whom Equifax has no responsibility or control.

### (Seventh Affirmative Defense)

Ameriquest's damages are the result of acts or omissions committed by non-parties over whom Equifax has no responsibility or control.

### (Eighth Affirmative Defense)

The documents attached to the Non-Borrower Complaint constitute a "firm offer of credit" as that term is construed under the Fair Credit Reporting Act.

### (Ninth Affirmative Defense)

Any excessive award of punitive or statutory damages would violate, *inter alia,* due process guarantees under the United States Constitution and analogous provisions under state constitutions.

### (Tenth Affirmative Defense)

Any alleged reliance by Ameriquest was not reasonable.

WHEREFORE, Equifax respectfully requests that this Court dismiss Ameriquest's Third Party Complaint, with prejudice, and that Equifax be awarded its costs and expenses, including reasonable attorneys' fees, in defending this action.

### <u>JURY DEMAND</u>

Equifax requests a trial by jury of all issues.

Equifax Information Services LLC and
Equifax Credit Marketing Services

By: /s/ Stephanie M. Zindahl, Esq.
One of Their Attorneys

Mara McRae, Esq. (GA Bar No. 499138)
Michael J. Breslin, Esq. (GA Bar No. 142551)
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: 404-815-6500
Facsimile: 404-815-6555

Robert E. Shapiro, Esq. (03125180)
Stephanie M. Zimdahl, Esq. (6287755)
Barack Ferrazzano Kirschbaum
    & Nagelberg LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Telephone: 312-984-3118
Facsimile: 312-984-3150

Attorneys for Third Party Defendants Equifax
Information Services LLC, successor in interest to
Equifax Credit Information Services, Inc., and
Equifax Marketing Services

<u>**CERTIFICATE OF SERVICE**</u>

       I, Stephanie M. Zimdahl, an attorney, hereby certify that service of the attached **Equifax Information Services LLC's and Equifax Credit Marketing Services' Answer To the Thrid Party Complaint of Ameriquest Mortgage Company** was accomplished pursuant to ECF as to Filing Users on the attached service list and I shall comply with LR 5.5 as to any party on the attached service list who is not a Filing User or represented by a Filing User.

This 18th day of April, 2008

                                   /s/ Stephanie M. Zimdahl
                                   Stephanie M. Zimdahl