UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: AMERIQUEST MORTGAGE CO. ) <br> MORTGAGE LENDING PRACTICES ) <br> LITIGATION ) <br> ) | MDL No. 1715 <br> Lead Case No. 05-7097 |
| ) <br> PAUL W. DERDA and ) <br> CINDY K. DERDA, ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> AMERIQUEST MORTGAGE CO., and ) <br> NORTHWEST TITLE & ESCROW CO., ) <br> ) <br> **Defendants.** ) | Centralized before the <br> Honorable Marvin E. Aspen <br><br><br> Individual Case No. 07-3517 |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

In November 2006, Plaintiffs Paul and Cindy Derda (collectively, "the Derdas") filed this lawsuit against Ameriquest Mortgage Co. ("Ameriquest") and Northwest Title & Escrow Corporation ("NWT"). Presently before us is NWT's motion for summary judgment. For the reasons set forth below, we grant NWT's motion and dismiss the counts against them.

### SUMMARY OF THE FACTS[1]

In November 2003, the Derdas refinanced their home loan with Ameriquest. (NWT's Facts ¶ 1.) They intended to pay off some credit card debt along with their then-existing home loan with Fairbanks Capital Corporation ("Fairbanks"). (*Id.* ¶ 2.) The Derdas originally did not

---

[1] The facts herein are taken from NWT's Local Rule 56.1 statement. The Derdas have admitted the facts as submitted by NWT for purposes of this motion. (*See* Docket No. 1484.) Further, they have not presented any additional evidence or statements of fact.

-1-

intend to request cash back from the refinancing, but elected to do so after their Ameriquest loan officer, Jeremy Smith ("Smith"), advised them of their eligibility for additional cash. (*Id.* ¶¶ 7-8.) In submitting the loan application, Cindy informed Smith that the balance on the Fairbanks loan was approximately $108,000 and that Fairbanks might impose a pre-payment penalty due to the payoff. (*Id.* ¶¶ 10-11.) On November 12, 2003, the Derdas executed the refinancing documents before a notary public at their home, including a NWT Acknowledgment/Disbursement Authorization ("Acknowledgment"). (*Id.* ¶¶ 12-14; Cindy Derda Dep., Ex. 20.)

A week later, Cindy called Ameriquest to find out when the loan proceeds would be disbursed. (NWT Facts ¶ 15.) On November 20, 2003, she spoke with someone at NWT to see if the funds had been wired from Ameriquest. (*Id.* ¶ 16.) "She was told by NWT that the funds had been received from Ameriquest but that the payoff amount of the Fairbanks loan had not . . . and the loan proceeds would not be disbursed without the payoff amount." (*Id.*) The next day, Cindy spoke with NWT employee Nate Hufker ("Hufker"), who informed her that the payoff would total more than $113,000 and would thus reduce the Derdas' cash back amount from approximately $8,800 to approximately $4,100. (*Id.* ¶ 17.) She instructed Hufker not to issue any checks or take any action because she was going to cancel the loan. (*Id.* ¶ 18.)

Cindy then spoke with Smith at Ameriquest, who advised her that she could not cancel the loan because the rescission period had expired. (*Id.* ¶ 22.) After that conversation, she called Hufker at NWT and instructed him to proceed with the loan disbursement because she was unable to cancel the loan. (*Id.* ¶ 23.) The parties do not dispute that NWT had no authority to cancel the loan. (*Id.* ¶ 21.) On November 21, 2003, Cindy picked up from NWT the

disbursement checks, issued to the Derdas and their credit card companies. (*Id.* ¶ 24.) When all was said and done, the Derdas were able to pay off the Fairbanks loan and their credit card debt, and further received $4,700 in cash back for their own use. (*Id.* ¶ 26.)

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

## ANALYSIS

The Derdas allege that they had a special or fiduciary relationship with NWT because NWT served as the escrow agent for the closing. (Compl. ¶¶ 49, 51.) In Count II, they allege that NWT fraudulently concealed Ameriquest's false statements regarding their financial

situation, home value and loan terms. (*Id.* ¶¶ 42-49.) Count III alleges that NWT breached its fiduciary duty owed to the Derdas by "failing to tell them that the payoff on their loan to Fairbanks had not been made or that the loan had not been funded by Ameriquest, and thus their rescission date had not passed." (*Id.* ¶ 58.) NWT moves for summary judgment on Counts II and III, contending that there is no evidence that it owed the Derdas a fiduciary duty, breached any such duty, or engaged in any fraudulent conduct.

### A. *Breach of Fiduciary Duty*

Despite NWT's argument to the contrary, Missouri law[2] clearly holds that an escrow agreement creates a fiduciary relationship between the signatories. "An escrow agent owes a fiduciary duty to those parties for whom he holds property." *E. Atl. Trans. & Mech. Eng'g, Inc. v. Dingman*, 727 S.W.2d 418, 423 (Mo. Ct. App. 1987); *see Gilmore v. Chi. Title Ins. Co.*, 926 S.W.2d 695, 699 (Mo. Ct. App. 1996); *Bakewell v. Heritage Nat'l Bank*, 890 S.W.2d 653, 659 (Mo. Ct. App. 1995). This fiduciary relationship is defined and governed by the escrow agreement. *Gilmore*, 926 S.W.2d at 699; *Bakewell*, 890 S.W.2d at 659; *S. Cross Lumber & Mill Work Co. v. Becker*, 761 S.W.2d 269, 272 (Mo. Ct. App. 1988). "When a person acts as the depository in escrow, the person is absolutely bound by the terms and conditions of the deposit

---

[2] Because the parties cite Missouri law in their briefs, we pause briefly to confirm the propriety of doing so. As the Supreme Court has held, "in cases such as the present . . . the transferee district court must be obligated to apply the state law that would have been applied if there had been no change in venue." *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S. Ct. 805, 821 (1964) (further stating that the change in venue "should be, with respect to state law, but a change of courtrooms"); *see In re Starlink Corn Prods. Liab. Litig.*, 211 F. Supp. 2d 1060, 1063 (N.D. Ill. 2002) (reiterating that district court in MDL action must apply state law as transferor court for state claims and concluding that Seventh Circuit authority governs federal issues). Accordingly, we rely on Missouri substantive law when evaluating the state claims asserted by the Derdas.

and charged with a strict execution of the duties voluntarily assumed." *S. Cross Lumber & Mill Work Co.*, 761 S.W.2d at 272. "An escrow agent's failure to strictly follow the terms of the escrow agreement is a breach of his fiduciary duty." *E. Atl. Trans. & Mech. Eng'g, Inc.*, 727 S.W.2d at 423 (quoting *S. Cross Lumber & Mill Work Co.*, 761 S.W.2d at 272). Pursuant to these principles, NWT owed the Derdas a fiduciary duty, at least to the extent set forth in the Acknowledgment.[3]

The Derdas have not alleged, let alone proven, that NWT violated the terms of the Acknowledgment. They also have not claimed that NWT mistakenly or fraudulently disbursed the funds obtained from the Ameriquest refinancing. Rather, the Derdas allege that NWT, through its employee, Hufker, was obligated to inform them that Ameriquest's representations were false and that they could have cancelled their loan on November 21, 2003. (Compl. ¶¶ 56-58.) The Acknowledgment does not impose such a duty on NWT, however. Indeed, the Acknowledgment specifically provides that NWT "cannot give borrowers legal advice or counsel in connection with the mortgage or any other matter." (Cindy Derda Dep., Ex. 20 ¶ 1.) Accordingly, there is no evidence before us suggesting that NWT, as escrow agent, had an obligation to provide such advice to the Derdas.

Perhaps recognizing these circumstances, the Derdas do not rely on the Acknowledgement or escrow relationship in their response. Rather, they suggest that NWT owed them a fiduciary duty because of a special or confidential relationship. (Resp. at 4.) The

---

[3] It is unclear whether the one-page Acknowledgement is the operative escrow agreement, or whether another escrow document exists. Nonetheless, the Derdas have not contested the terms of the Acknowledgement or claimed that another document might support the alleged fiduciary duty.

Derdas, however, have not identified or submitted any evidence demonstrating the existence of such a relationship. Although they state – in conclusory fashion – that "the facts as pleaded and the law as cited provide [NWT] has a fiduciary duty," they cannot rely on the allegations of their complaint as evidence for purposes of summary judgment. *See Tibbs v. City of Chi.*, 469 F.3d 661, 663 n.2 (7th Cir. 2006) ("[M]ere allegations of a complaint are not evidence."). The focus of summary judgment is not the sufficiency of pleading, but of proof. *See, e.g., Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1111 (7th Cir. 2004) ("[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.") (internal quotation omitted). Because the Derdas have failed to raise a genuine question concerning the existence of a fiduciary duty, we grant NWT's motion as to Count III.

### B.     *Fraudulent Concealment*

To succeed on their fraudulent concealment claim, the Derdas must prove the traditional elements of a fraudulent misrepresentation claim under Missouri law.[4] *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007); *VanBooven v. Smull*, 938 S.W.2d 324, 327-28 (Mo. Ct. App. 1997); *Kan. City Downtown Minority Dev. Corp. v. Corrigan Assocs. Ltd. P'ship*, 868 S.W.2d 210, 219 (Mo. Ct. App. 1994). Because "[s]ilence or nondisclosure becomes misrepresentation only when there is a duty to speak," the Derdas must show that NWT had and

---

[4] A submissible case for fraudulent misrepresentation requires evidence of: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Hess*, 220 S.W.2d at 765; *see Ziglin v. Players MH, L.P.*, 36 S.W.3d 786, 791 (Mo. Ct. App. 2001).

violated such a duty. *Bohac v. Walsh*, 223 S.W.2d 858, 864 (Mo. Ct. App. 2007) (explaining that the breach of a duty to speak serves "as a substitute for the false representation element required in a fraud action"); *see Hess*, 220 S.W.3d at 765; *Ziglin*, 36 S.W.3d at 791; *see, e.g., Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1064 (8th Cir. 2005) (applying Missouri law). A duty to speak "may arise from a relationship of trust or confidence, an inequality of condition, or superior knowledge that is not reasonably available to the other party." *Ziglin*, 36 S.W.3d at 791; *see Hess*, 220 S.W.2d at 765; *Bohac*, 223 S.W.2d at 864.

The Derdas acknowledge that NWT did not commit any affirmative acts of fraudulent misrepresentation. (Resp. at 1.) Rather, they contend that NWT breached its duty to inform them that Ameriquest's representations about the loan and Fairbanks payoff were false. (Compl. ¶¶ 49-53.) As discussed above, NWT did not owe the Derdas a fiduciary duty. Nonetheless, the Derdas allege that even "if no fiduciary duty existed, [Hufker], having superior knowledge that the payoff to Fairbanks had not been made had a legal duty to tell [the Derdas] that fact because such information was not reasonably available" to them. (Compl. ¶ 53; *see* Resp. at 2.)

NWT correctly points out, however, that there is no evidence that NWT or its employee, Hufker, concealed this information. Moreover, there is no evidence that this knowledge – that the Fairbanks payoff had not been made at the time Ameriquest told Cindy she could not rescind – was unavailable to the Derdas. In her deposition, Cindy testified that Hufker told her that the payoff amount came in higher than anticipated. (Cindy Derda Dep. at 150.) She told him to hold off on issuing any checks because she intended to cancel the loan. (*Id.*; Hufker Dep. at 17.) She then called Smith at Ameriquest, who refused her request to do so. (Cindy Derda Dep. at 152, 159, 188.) At that point, Cindy spoke again with Hufker and told him that Smith said that

she could not cancel the loan. (*Id.* at 188.) There is no evidence that Cindy told Hufker that Smith would not permit her cancellation because the Fairbanks payoff had already been disbursed or because her rescission period had expired. The record before us proves only that she told Hufker that Smith would not allow her to cancel the loan and thus, she had no choice but to proceed. (*Id.* at 188.) While Hufker knew that the Fairbanks loan had not been paid off on November 21, 2003,[5] there is no indication that he knew Ameriquest told the Derdas otherwise.

In addition, her deposition does not show that Cindy asked Hufker whether the Fairbanks payoff had been disbursed, or that the issue came up in conversation at all on November 21, 2003. The Derdas have offered no reason to assume that Hufker would have lied about the payoff if asked. Ultimately, the Derdas have failed to demonstrate that they could not have discovered the status of the Fairbanks payoff through reasonable means. On this record, no reasonable jury could conclude that NWT had a duty to speak based on superior knowledge outside of the Derdas' reach.

## CONCLUSION

As described above, we grant NWT's Motion for Summary Judgment and dismiss all claims against it. It is so ordered.

                                                  MARVIN E. ASPEN
                                                  United States District Judge

Date: May 2, 2008

---

[5] Apparently NWT prepared the payoff check for Fairbanks on November 21 and sent it overnight delivery to arrive on Monday, November 24, 2003. (NWT Facts ¶ 25.)