# APPENDIX 1

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIE FURGESON, formerly known    )
as, MARIE HENDERSON,              )
                                )
               Plaintiff,     )
                                )
              vs.             )   No.   04 C 7627
                                )
AMERIQUEST MORTGAGE CORPORATION;   )
WASHINGTON MUTUAL BANK, FA, and    )
JOHN DOES 1-10;                   )
                                )
               Defendants.    )

COPY

The deposition of MARIE ELAINE FURGESON, called

by the Defendants for examination, taken pursuant to

the Federal Rules of Civil Procedure of the United

States District Courts pertaining to the taking of

depositions, taken before MARGARET R. BEDDARD, a

Notary Public within and for the County of Kane,

State of Illinois, and a Certified Shorthand Reporter

of said state, at Suite 350, 224 South Michigan

Avenue, Chicago, Illinois, on the 26th day of August,

A.D. 2005, at 10:50 a.m.



Case: 1:05-cv-07097 Document #: 2305-2 Filed: 08/22/08 Page 3 of 13 PageID #:25819

RIQUEST URGESON vs. AMERIQUEST                    MARIE ELAINE FURGESON, 08/26/05

**Page 8**

hat help

at helped

ion on

rge in

nt all
large?

kruptcy
lled a
r what yours

e

**Page 9**

eedings

hen they

ost

1? 2002?

a lawyer
irself?

, first
fore this
awyer

th a

**Page 10**

1 church organization, or is that with a government?
2   A. No. I was not legally married, so it was
3 annulled instead of a divorce.
4   Q. Okay. So that was a proceeding that was
5 filed with a court?
6   A. Yes.
7   Q. When were you born, Ms. Furgeson?
8   A. 3-26-1953.
9   Q. And do you have any children?
0   A. Yes.
1   Q. How many?
2   A. Three.
3   Q. And what are their names and ages?
4   A. Richard Lee. He's 34. Elizabeth's 30.
15 Melody is 29.
6   Q. Okay. And do any of them currently reside
7 with you?
8   A. No.
9   Q. Did any of them reside with you in 2003?
0   A. No.
1   Q. You said you reside in Springfield,
2 Illinois; is that correct?
3   A. Yes.
4   Q. At the address of 2016 South 14th Street?

**Page 11**

  A. Yes.
  Q. And how long have you lived there?
  A. I would say 19 years.
  Q. 19 years.
    Is this a property you own?
  A. I am buying it.
  Q. I'm sorry?
  A. I am buying it.
  Q. You don't own it presently?
  A. No.
  Q. Who owns it?
  A. The bank.
  Q. The bank owns the property? Are you being
serious, or are you trying to be funny?
  A. No.
  Q. I'm just asking.
  A. Ameriquest Mortgage Company.
  Q. How do they own the property in your mind?
  A. That it's not -- The contract's not over
with where I would get the deed.
  Q. Okay. When you moved into the house --
    It's a house; is that correct?
  A. Yes.
  Q. Is it a multi-unit dwelling or a

**Page 12**

1 single-unit?
2   A. Single.
3   Q. Okay. When you moved into it 19 years
4 ago --
5     So that would be 1986?
6   A. I believe '83.
7   Q. Okay. 1983.
8     Did you buy it from somebody then?
9   A. Yes. It was Pat Mays.
10   Q. Who?
11   A. I think it was Mays.
12   Q. M-a-y-s?
13   A. Yes.
14   Q. All right. And did you buy it by yourself
15 or with somebody else?
16   A. Myself.
17   Q. Okay. And were you married in 1983?
18   A. No.
19   Q. As long as you've lived in this house have
20 you been the only person who's been the owner of it?
21   A. Yes.
22   Q. Other than a bank that you've talked about?
23   A. Yes.
24   Q. Or other financial institution?

**Page 13**

1   A. Yes.
2   Q. Okay. Is this the only house you've owned?
3   A. A mobile home.
4   Q. Do you have a mobile home now, or you had
5 one before then?
6   A. No. I have one.
7   Q. You have a mobile home now?
8   A. Yes.
9   Q. Okay. And where is that mobile home?
10   A. In Springfield, Illinois.
11   Q. And what's its address?
12   A. 1039 North Edmond.
13   Q. Okay. Is that a street?
14   A. Yes.
15   Q. Okay. And is there a zip code there?
16   A. 62702.
17   Q. And is that mobile home -- Who lives there?
18   A. My sister lives there at the moment.
19   Q. Does she pay you rent?
20   A. Yes.
21   Q. When did you buy this mobile home?
22   A. About -- Probably two years ago. Probably
23 two years ago maybe.
24   Q. And who did you buy it from?

RIQUEST FURGESON vs. AMERIQUEST     MARIE ELAINE FURGESON, 08/26/05

Page 42

```
1    A. Monthly.
2    Q. Again, you did this written calculation of
3 how much your take-home pay was, what your expenses
4 were, then you added the sofa expense to it, and you
5 figured out that you still took in more money than
6 you were paying out?
7    MR. HOFELD: Is that a question?
8    MR. LEDSKY: Yes.
9    THE WITNESS: Yes.
10 BY MR. LEDSKY:
11   Q. I'm not trying to put words in your mouth,
12 Ms. Furgeson. I'm just trying to summarize what it
13 is you told me before about how you wrote things down
14 to make these calculations.
15   Is that right?
16   A. Yes.
17   Q. Okay. You said that when you bought your
18 house on 14th Street your loan was with Marine Bank;
19 is that right?
20   A. I believe so, yes.
21   Q. Okay. And do you remember the terms of
22 that loan?
23   A. 30 years. The payments were 474, I
24 believe.
```

Page 43

```
1    Q. And how often were they due?
2    A. Monthly.
3    Q. And do you remember what the interest rate
4 was?
5    A. 7 something.
6    Q. Now, you said you bought the house in 1983;
7 is that right?
8    A. Yes.
9    Q. Are you still paying Marine Bank?
10   A. No.
11   Q. When did you stop paying Marine Bank?
12   A. I don't know.
13   Q. Did you get a loan with another entity?
14   A. Yes.
15   Q. Okay. And who was that entity?
16   A. I don't remember.
17   Q. Do you know what the word "refinance"
18 means?
19   A. Yes.
20   Q. What does that mean in your mind?
21   A. Having your loan calculated to reduce your
22 payments for a shorter period of time.
23   Q. Okay. There are times where people decide
24 to pay off a current loan by taking out another loan,
```

Page 44

```
1 and that second loan pays off the first loan. That's
2 what I understand to be a refinance.
3    Is that what you meant by your answer?
4    A. And consolidate your bills.
5    Q. You can consolidate bills as well, right?
6    A. Yes.
7    Q. Did you at some point in time take out a
8 second loan to pay off the Marine Bank loan?
9    A. Yes.
10   Q. Okay. And do you remember who that lender
11 was?
12   A. No.
13   Q. Okay. Did you -- Why did you decide to do
14 that?
15   A. I don't know at that point.
16   Q. Do you remember when it was?
17   A. No.
18   Q. Did you consolidate other debt? Were you
19 trying to get a lower payment on the present loan?
20 Had interest rates gone down? Do you remember
21 anything that was your thinking about --
22   A. The interest rates were lower.
23   Q. The interest rates were lower?
24   A. Yes.
```

Page 45

```
1    Q. And so how would -- Why would that have
2 prompted you to refinance?
3    A. Because I was wanting to consolidate my
4 other bills that I had.
5    Q. And did you understand that if the interest
6 rates were lower that your payment would be lower?
7    A. Yes.
8    Q. Okay. And that was a motivating factor to
9 take out another loan?
10   A. Yes.
11   Q. Okay. And did -- This second loan, was the
12 interest rate lower than the first loan?
13   A. Yes.
14   Q. You made sure of that?
15   A. Yes.
16   Q. Okay. And did you ever refinance that
17 loan -- that second loan?
18   A. I believe to Ameriquest.
19   Q. To Ameriquest?
20   A. Yes.
21   Q. So Ameriquest is the third loan you've had
22 for your house?
23   A. Yes.
24   Q. Okay. And do you remember what prompted
```

Page 40

```
One is so

es on
r basis?
ad

s I

you have

monthly?

edit, who
```

Page 41

```
k?

urniture

terms of

nds.

credit for

hen you

u like to
ten
d to buy

ten were
```

l the sofa

# APPENDIX 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIE FURGESON, formerly known as, MARIE HENDERSON, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 04 C 7627 |
| AMERIQUEST MORTGAGE CORPORATION, WASHINGTON MUTUAL BANK, FA, and JOHN DOES 1-10, | ) ) ) ) | Judge Manning |
| Defendants. | ) ) | |

## DEFENDANT AMERIQUEST MORTGAGE COMPANY'S
## ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Ameriquest Mortgage Company ("Ameriquest"), by its attorneys, responds to

Plaintiff's Second Amended Complaint as follows:

1.      Plaintiff Maria (sic) Furgeson brings this action against a "subprime" mortgage
lender to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"),
and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

**ANSWER:**      Ameriquest admits that Plaintiff has filed a lawsuit against it. Ameriquest

objects to the term "subprime" as vague. Ameriquest is without knowledge or information

sufficient to form a belief as to the truth of the intended characterization of the term "subprime."

Ameriquest denies all remaining allegations in Paragraph 1. Ameriquest specifically denies that it

violated the Truth in Lending Act, 15 U.S.C. § 1601, or implementing Federal Reserve Board

Regulation Z, 12 C.F.R. part 226.

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal
question), and 1337 (interstate commerce), and 15 U.S.C. § 1640 (TILA). Defendants do business in
the District and are deemed to reside here.

**ANSWER:** Ameriquest does not contest subject matter jurisdiction or personal jurisdiction. Ameriquest reserves the right to contest venue. Ameriquest denies any remaining allegations in Paragraph 2.

3. Plaintiff owns and resides in a home at 2016 South 14th Street, Springfield, IL 62702.

**ANSWER:** Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4. Defendant Ameriquest Mortgage Corporation (hereinafter "Ameriquest") is a foreign corporation that does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, Illinois. It is engaged in the business of originating and servicing "subprime" mortgages.

**ANSWER:** Ameriquest admits that it is a corporation incorporated in a state other than Illinois and that it does business in Illinois. Ameriquest denies the remaining allegations in the first sentence of Paragraph 4. Ameriquest admits the allegations in the second sentence of Paragraph 4. Ameriquest objects to the term "subprime" as vague. Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the intended characterization of the term "subprime." Ameriquest admits that it engaged in the business of originating loans secured by mortgages. Ameriquest denies the remaining allegations in Paragraph 4.

5. Defendant Washington Mutual Bank, FA ("hereinafter "WAMU") is a bank which does business in Illinois. It has offices at 311 S. Wacker Drive, Chicago, IL 60606, among many other locations in the Chicago metropolitan area. It is in the business of acquiring and holding sub-prime mortgage loans.

**ANSWER:** Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.

6. Defendants John Does 1-10 are any persons or entities other than Ameriquest and WAMU that have, or claim to have, an interest in or rights under the loan that is the subject of this action.

**ANSWER:** Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.

7.     On March 21, 2003, plaintiff obtained a $60,400 mortgage loan from Ameriquest Mortgage Corporation. Most of the loan proceeds were used for personal, family or household purposes – refinancing of prior debts obtained for that purpose.

**ANSWER:**     Ameriquest admits that Plaintiff obtained a loan, with a principal amount of $60,400, secured by a mortgage, from Ameriquest. Ameriquest denies the remaining allegations in the first sentence of Paragraph 7. Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 7.

8.     In connection with the transaction, plaintiff signed or received the following documents:

     a.     A note, a copy of which is attached hereto as Exhibit A;

     b.     A mortgage, Exhibit B;

     c.     A settlement statement on form HUD-1A, Exhibit C;

     d.     A Truth in Lending disclosure statement, Exhibit D;

     e.     Multiple copies of a notice of right to cancel within three days, Exhibit E; and

     f.     Multiple copies of an Ameriquest form entitled "One Week Cancellation Period," Exhibit G.

**ANSWER:**     Ameriquest objects to the allegations in Paragraph 8 as vague. Ameriquest admits that, in connection with Plaintiff's loan transaction with Ameriquest, Plaintiff signed a note, a mortgage, a settlement statement, a Truth in Lending disclosure statement, various copies of a notice of right to cancel, and a document entitled "one week cancellation period." Ameriquest affirmatively states that Exhibits A, B, C, D, E, and G appear to be unsigned, incomplete, cut-off copies of a portion of the documents received by Plaintiff. Ameriquest denies the remaining allegations in Paragraph 8.

9.     Subsequently, Ameriquest assigned the loan to defendant WAMU. Ameriquest retained the servicing of the loan.

**ANSWER:**     Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 9.  Ameriquest admits the allegations in the second sentence of Paragraph 9.

10.     On information and belief, WAMU is the current assignee of the loan.

**ANSWER:**     Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10.

11.     Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. § 1635 and 12 C.F.R. § 226.23.  Section 226.23 provides:

> (a) **Consumer's right to rescind.**
>
> **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section. [fn]47**
>
> **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**
>
> **(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, [fn]48 whichever occurs last.  If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.  In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.  [15 U.S.C. § 1635(f)]**
>
> **(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**
>
> (b) **Notice of right to rescind.**  In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind.  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) Exempt transactions. The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. § 1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

ANSWER:     Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations that the transaction was secured by plaintiff's home. Ameriquest denies that 12 C.F.R. § 226.23(f)(2) states "(2) A credit plan in which a stage agency is a creditor." Ameriquest admits that the remaining allegations in Paragraph 11 contain a portion of the text of 12 C.F.R. § 226.23. Ameriquest denies the allegations in Paragraph 11 insofar as they purport to make any allegation of wrongdoing by Ameriquest under said statute. Ameriquest denies the remaining allegations in Paragraph 11.

12.     Plaintiff was given a notice of the right to cancel that only allowed two business days after March 21, 2003 to cancel, instead of three.

ANSWER:     Ameriquest denies the allegations in Paragraph 12.

13.     In addition, the payment schedule on Exhibit D is not properly disclosed.

ANSWER:     Ameriquest denies the allegations in Paragraph 13.

14.     Finally, Exhibit G detracts from and obfuscates Exhibit E. The provision of Exhibit E suggests that the consumer has seven days to rescind under TILA, which is not the case. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees, or the procedural protections of § 1635. It also provides for a

5

different method of counting days and requires actual receipt of the notice by Ameriquest within the specified time.

**ANSWER:** Ameriquest denies the allegations in Paragraph 14.

15. As a result, plaintiff is entitled to rescind for three years.

**ANSWER:** Ameriquest denies the allegations in Paragraph 15.

16. Plaintiff has given notice to plaintiff's election to rescind. Exhibit F.

**ANSWER:** Ameriquest denies that Plaintiff has given proper or timely notice of any intention to rescind the subject loan. Ameriquest denies that it is required to rescind the subject loan. Ameriquest denies any remaining allegations in Paragraph 16.

17. Under 15 U.S.C. § 1641, plaintiff is entitled to assert the right to rescind against any assignee of the loan.

**ANSWER:** Ameriquest denies the allegations in Paragraph 17.

18. 15 U.S.C. § 1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

**ANSWER:** Ameriquest admits that the allegations in Paragraph 18 contain the text of 15 U.S.C. § 1635(g). Ameriquest denies the allegations in Paragraph 18 insofar as they purport to make any allegation of wrongdoing by Ameriquest under said statute. Ameriquest denies the remaining allegations in Paragraph 18.

19. Plaintiff incorporates ¶¶ 1-15.

**ANSWER:** Ameriquest incorporates by reference its answers to Paragraphs 1 - 15 above as its answers to Paragraph 19.

20. The loan made to plaintiff violated TILA.

**ANSWER:** Ameriquest denies the allegations in Paragraph 20.

## AFFIRMATIVE DEFENSES

Defendant Ameriquest states as its affirmative defenses as follows:

1.      Plaintiff's claim for statutory damages, costs, and attorney's fees for any alleged underlying Truth in Lending Act violation is barred by the one-year statute of limitations for statutory damages, costs and attorney's fees under the Truth in Lending Act.

2.      If Ameriquest committed the alleged violation, such violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

3.      Plaintiff's purported cause of action fails to state a claim upon which relief may be granted.

4.      If it should be deemed that Plaintiff is entitled to rescission, any obligation on the part of Ameriquest to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiff's reimbursement or other return to Ameriquest of all funds disbursed on Plaintiff's behalf in connection with the subject mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other rules of law or equity.  Any obligation on the part of Ameriquest to rescind and to release any lien is conditioned upon Plaintiff reimbursing or otherwise returning all funds disbursed on her behalf to Ameriquest in connection with the subject loan, less any finance charges.

WHEREFORE, Defendant Ameriquest Mortgage Company requests that this Court enter judgment in its favor and against Plaintiff, Marie Furgeson, formerly known as Marie Henderson, award Ameriquest Mortgage Company its costs, and provide such further and additional relief as it deems just and appropriate.

Dated: July 19, 2005

**AMERIQUEST MORTGAGE COMPANY,**
**Defendant**

_____
One of its attorneys

Craig A. Varga
Jonathan N. Ledsky
Jaime S. Roginski-Kord
Varga Berger Ledsky Hayes & Casey
A Professional Corporation
224 South Michigan Avenue
Suite 350
Chicago, Illinois 60604-2507
(312) 341-9400

## CERTIFICATE OF SERVICE

Jonathan N. Ledsky, an attorney, hereby certifies that a true and correct copy of the

foregoing, **Defendant Ameriquest Mortgage Company's Answer to Plaintiff's Second**

**Amended Complaint,** was served upon:

Al Hofeld, Jr.
Edelman, Combs, Latturner
  & Goodwin, LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois 60603

by placing same in the United States mail chute located at 224 South Michigan Avenue, Chicago,

Illinois 60604, properly addressed and postage fully prepaid, this 19th day of July, 2005, on or before

the hour of 5:00 p.m.

_____
Jonathan N. Ledsky

Shared/Ortega/Pleadings/AMQ-Furgeson Answer to Second Amended Complaint

8