# APPENDIX 21

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
### Chicago, Illinois  60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email:  edcombs@aol.com
### www.edcombs.com

January 28, 2005

**BY MESSENGER**

Ameriquest Mortgage Corporation
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

> Re:     Notice of rescission, claim and lien, Nelson and Melinda Jimenez,
>          270 Lilac Drive, Romeoville, IL 60446, loan of December 19, 2002.

Ladies/ Gentlemen:

The above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act, in that the payment schedule was not fully disclosed and borrowers were given two, different and confusing types of notices of right to cancel.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than yourself, please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

       I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on.

                             _____

                             Daniel A. Edelman

# APPENDIX 22

## DECLARATION OF GILBERT TREADWELL AND GENELLE TREADWELL

We, Gilbert Treadwell and Genelle Treadwell, declare under penalty of perjury that the foregoing is true and correct:

1.      We reside at 758 S. Kedvale, Chicago, Illinois 60624.

2.      This is our primary residence.

3.      On October 23, 2002, we obtained a loan from Ameriquest Mortgage Company that was secured by a mortgage on our home 758 S. Kedvale, Chicago, Illinois.

4.      The mortgage loan of October 23, 2002 was entered into for the purpose of refinancing an existing loan, not for an original purchase or construction.

5.      We have since paid off the mortgage loan of October 23, 2002 by refinancing with a different lender.

Executed: this _3rd_ day of _August_, 2008.

_Gilbert Treadwell_
Gilbert Treadwell

_Genelle Treadwell_
Genelle Treadwell

# APPENDIX 23

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GILBERT TREADWELL and<br>GENELLE TREADWELL, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05 C 1078 |
| | ) | |
| AMERIQUEST MORTGAGE | ) | Judge Gettleman |
| COMPANY, AMC MORTGAGE | ) | |
| SERVICES, INC. and DEUTSCHE | ) | |
| BANK NATIONAL TRUST COMPANY,) | | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT AMERIQUEST MORTGAGE COMPANY'S ANSWER
## TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant, Ameriquest Mortgage Company ("Ameriquest"), by and through its attorneys,

answers Plaintiffs' second amended complaint as follows:

1.      Plaintiffs Gilbert Treadwell and Genelle Treadwell bring this action against a
"subprime" mortgage lender, assignee and servicer to rescind a mortgage for violation of the Truth
in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board
Regulation Z, 12 C.F.R. part 226.

**ANSWER:**      Ameriquest admits that Plaintiffs have filed a lawsuit against it.  Ameriquest

objects to the term "subprime" as vague.  Ameriquest is without knowledge or information

sufficient to form a belief as to the truth of the intended characterization of the term "subprime."

Ameriquest denies all remaining allegations in Paragraph 1.  Ameriquest specifically denies that it

violated the Truth in Lending Act, 15 U.S.C. § 1601, or implementing Federal Reserve Board

Regulation Z, 12 C.F.R. part 226.

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal
question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA).  Defendants do business in the
District and are deemed to reside here.

**ANSWER:**     Ameriquest does not contest subject matter jurisdiction, personal jurisdiction, or venue.  Ameriquest denies any remaining allegations in Paragraph 2.

3.      Plaintiffs own and reside in a home at 758 Kedvale, Chicago, IL  60624.

**ANSWER:**     Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4.      Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Illinois.  Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.  It is engaged in the business of originating "subprime" mortgages and makes more that 26 loans per year.

**ANSWER:**     Ameriquest admits that it is a corporation, that it is incorporated in a state other than Illinois, that it maintains offices and does business in Illinois, and that its registered agent is National Registered Agents, Inc., which has offices at 200 West Adams, Chicago, Illinois 60606.  Ameriquest objects to the term "subprime" as vague.  Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the intended characterization of the term "subprime."  Ameriquest admits that it is engaged in the business of originating loans secured by mortgages and that, during the relevant time period of Plaintiffs' loan, it originated more than 26 loans per year.  Ameriquest denies the remaining allegations in Paragraph 4.

5.      Defendant Deutsche Bank National Trust Company ("Deutsche Bank") is a foreign corporation with its headquarters at 60 Wall Street, New York, NY  10005.  It does business in Illinois.  It is engaged in the business of buying "subprime" mortgage loans on Illinois properties.

**ANSWER:**     Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.

6.      Defendant AMC Mortgage Services, Inc. ("AMC"), is a Delaware Corporation with its principal place of business in Orange, CA.  It does business in Illinois.  Its registered agent and office are National Registered Agents, Inc., 200 West Adams Street, Chicago, IL, 60606.

**ANSWER:**     Ameriquest admits the allegations in the first and second sentences of Paragraph 6.  Ameriquest admits that AMC Mortgage Services, Inc.'s registered agent is National

Registered Agents, Inc., which has offices at 200 West Adams, Chicago, Illinois 60606. Ameriquest denies the remaining allegations in Paragraph 6.

7.    Defendants Ameriquest and AMC are corporate affiliates.

**ANSWER:**    Ameriquest objects to the term "corporate affiliates" as vague. Ameriquest affirmatively states that Ameriquest and AMC Mortgage Services, Inc. are sister companies. Ameriquest denies the remaining allegations in Paragraph 7.

8.    On October 23, 2002, plaintiffs obtained a mortgage loan from Ameriquest.

**ANSWER:**    Ameriquest admits that, on October 23, 2002, Plaintiffs entered into a loan, secured by a mortgage, with Ameriquest. Ameriquest denies the remaining allegations in Paragraph 8.

9.    Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

**ANSWER:**    Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9.

10.    On October 23, 2002, plaintiffs signed or received the following documents relating to the loan:

a.    Note, an accurate photocopy of which (apart from the reduced size) is contained within Exhibit A;

b.    Mortgage, Exhibit B;

c.    A Truth in Lending disclosure statement, Exhibit C;

d.    One lender's copy of a federal notice of right to cancel, Exhibit E;

e.    A second and different type of notice of right to cancel, one drafted by Ameriquest, Exhibit D; and

f.    A HUD-1 Settlement Statement with an "estimated" settlement date of October 30, 2002, Exhibit F.

**ANSWER:**    Ameriquest objects to the allegations in Paragraph 10 as vague. Ameriquest admits that Plaintiffs entered into a loan with Ameriquest. Ameriquest admits that, in connection

3

with the loan transaction, Plaintiffs received and signed a note, a mortgage, a Truth in Lending

disclosure statement, several copies of a notice of right to cancel, several copies of a document

entitled "one week cancellation period," and a settlement statement.  Ameriquest admits that

Exhibits A, B, C, and E appear, respectively, to be poor copies, smaller in size versions than the

originals, of the note, the mortgage, the Truth in Lending disclosure statement, and one of several

copies of the notice of right to cancel that Plaintiffs received and signed.  Ameriquest affirmatively

states that Exhibit D appears to be a poor copy, smaller in size than the original, of one of several

copies of the one week cancellation period form that Plaintiffs received and signed.  Ameriquest

denies that Exhibits D and E constitute two different notices of right to cancel.  Ameriquest denies

that Plaintiffs received and signed only the documents represented by Exhibits A, B, C, D, and E in

connection with the loan transaction.  Ameriquest denies the remaining allegations in Paragraph 10.

11.     Although plaintiffs signed closing documents on or about October 23, 2002,
Ameriquest or its closing agent did not fund or disburse the loan proceeds until sometime in
November, 2002, at the earliest.

**ANSWER:**     Ameriquest admits that Plaintiffs signed the loan closing documents on

October 23, 2002, and that Ameriquest funded the loan in November 2002.  Ameriquest denies the

remaining allegations in Paragraph 11.

12.     Ameriquest and/or its agent also changed the actual disbursements for the loan,
which were different from those represented on the HUD-1 (Exhibit F) and other disbursement
documents provided to plaintiffs at the October 23, 2002 signing.

**ANSWER:**     Ameriquest admits that, for certain disbursements of the loan proceeds, the

dollar amount of the disbursement differed from the dollar amount on the settlement statement

received and signed by Plaintiffs on October 23, 2002.  Ameriquest denies the remaining allegations

in Paragraph 12.

13.     Ameriquest and/or its agent did not actually pay plaintiffs and their creditors in the
amounts listed on the "estimated" HUD-1 (Exhibit F).

**ANSWER:**     Ameriquest admits that, for certain disbursements of the loan proceeds, the dollar amount of the disbursement differed from the dollar amount on the settlement statement received and signed by Plaintiffs on October 23, 2002. Ameriquest denies the remaining allegations in Paragraph 13.

14.     Ameriquest and/or its agent never bothered to notify plaintiffs of the changes in disbursements. Later, plaintiffs requested a final HUD-1 for the transaction, but in February, 2003, Ameriquest sent them another copy of the "estimated" HUD-1 (Exhibit F). It never provided them with an accurate and final HUD-1.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 14.

15.     As a result of Ameriquest changing the deal plaintiffs had signed for, the loan terms were not agreed to until November, at the earliest, and may never have been agreed to. In either case, all of Ameriquest's TILA disclosures, which bear the approximate date of the signing, are misdated.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 15.

16.     Due to the delay and the changes in the disbursements, plaintiffs suffered damage.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 16.

17.     On information and belief, defendant Deutsche Bank is the current owner of plaintiffs' loan.

**ANSWER:**     Ameriquest admits that Deutsche Bank National Trust Company is the present holder of Plaintiffs' loan. Ameriquest denies the remaining allegations in Paragraph 17.

18.     On information and belief, defendant AMC is the current servicer of plaintiffs' loan.

**ANSWER:**     Ameriquest admits the allegations in Paragraph 18.

19.     Defendant AMC is named a necessary party only, pursuant to F.C.R.P. 19, in that it certainly claims the right to accept payments, to report to credit bureaus concerning the account and to foreclose on the loan.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 19.

20.     Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

(a)     <u>Consumer's right to rescind.</u>

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section. [fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, [fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b)     <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

**(f)**      <u>Exempt transactions</u>.  **The right to rescind does not apply to the following:**

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

**ANSWER:**      Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations that the transaction was secured by Plaintiffs' home.  Ameriquest denies that 12 C.F.R. § 226.23(f)(2) states "(2) A credit plan in which a stage agency is a creditor."  Ameriquest admits that the remaining allegations in Paragraph 20 contain a portion of the text of 12 C.F.R. § 226.23.  Ameriquest denies the allegations of Paragraph 20 insofar as they purport to make any allegation of wrongdoing by Ameriquest under the statute.  Ameriquest denies the remaining allegations in Paragraph 20.

21.      Under 15 U.S.C. § 1641(c), plaintiffs are entitled to assert the right to rescind against any assignee of the loan.

**ANSWER:**      Ameriquest denies the allegations in Paragraph 21.

22.      The failure to deliver two, federal notices of right to cancel to each plaintiff who signed the mortgage violates 12 C.F.R. § 226.23(a)(1) and (b).

**ANSWER:**      Ameriquest denies the allegations in Paragraph 22.

23.      In addition, <u>Exhibit D</u> does not clearly and conspicuously inform plaintiffs of their right to cancel because it suggests the transaction date was October 23, 2002.  In fact, the transaction was not consummated until the final disbursements were disclosed or agreed upon, if ever.  The TILA Disclosure Statement (<u>Exhibit C</u>) was similarly misdated.

**ANSWER:**      Ameriquest denies the allegations in Paragraph 23.

24.      Proper notice of the federal right to cancel would have informed plaintiffs of their right to cancel within three business days of the date they received notification of the changes in disbursements.

**ANSWER:**      Ameriquest denies the allegations in Paragraph 24.

25.      Further, the payment schedule is not fully and completely disclosed on <u>Exhibit C</u>.

**ANSWER:**      Ameriquest denies the allegations in Paragraph 25.

26.     <u>Exhibit E</u> distracts from and obfuscates <u>Exhibit D</u>.  <u>Exhibit E</u> suggests that the consumer has seven days to rescind under TILA, which is not the case.  The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees, or the procedural protections of §1635.  It also provides for a different method of counting days and requires actual receipt of the notice by Ameriquest within the specified time.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 26.

27.     In addition, most of the loan documents have the typewritten date October 22, 2002, even though the loan was not closed until October 23, 2002.  This further obfuscates the consumers' rights under federal law.

**ANSWER:**     Ameriquest objects to the word "most" as vague.  Ameriquest denies the allegations in Paragraph 27.

28.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

**ANSWER:**     Ameriquest admits that the allegations in Paragraph 28 contain the text of 15 U.S.C. § 1635(g).  Ameriquest denies the allegations of Paragraph 28 insofar as they purport to make any allegation of wrongdoing by Ameriquest under the statute.  Ameriquest denies the remaining allegations in Paragraph 28.

29.     The failure to fully and completely disclose the payment schedule violates 15 U.S.C. §1638 and 12 C.F.R. §226.28.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 29.

30.     The provision of an inadequate number of federal notices of right to cancel, of a misdated federal notice of right to cancel and of two, inconsistent and confusing notices of right to cancel violates 15 U.S.C. §1635 and 12 C.F.R. §226.23.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 30.

## AFFIRMATIVE DEFENSES

Defendant Ameriquest states as its affirmative defenses as follows:

1.     Plaintiffs' claim for statutory damages, costs, and attorney's fees for any alleged underlying Truth in Lending Act violation is barred by the one-year statute of limitations for statutory damages, costs and attorney's fees under the Truth in Lending Act.

2.     Plaintiffs' purported cause of action fails to state a claim upon which relief may be granted.

3.     If it should be deemed that Plaintiffs are entitled to rescission, any obligation on the part of Ameriquest to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiffs' reimbursement or other return to Ameriquest of all funds disbursed on Plaintiffs' behalf in connection with the subject mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other rules of law or equity.  Any obligation on the part of Ameriquest to rescind and to release any lien is conditioned upon Plaintiffs reimbursing or otherwise returning all funds disbursed on their behalf to Ameriquest in connection with the subject loan, less any finance charges.

WHEREFORE, Defendant Ameriquest Mortgage Company requests that this Court enter judgment in its favor and against Plaintiffs, Gilbert Treadwell and Genelle Treadwell, award Ameriquest Mortgage Company its costs, and provide such further and additional relief as it deems just and appropriate.

Dated:  March 14, 2006                      Respectfully submitted,

                                                          **AMERIQUEST MORTGAGE COMPANY,**
                                                          **Defendant**


                                                          s/Jonathan N. Ledsky _____

Craig A. Varga
Jonathan N. Ledsky
Jaime S. Roginski-Kord
Varga Berger Ledsky Hayes & Casey
A Professional Corporation
224 South Michigan Avenue
Suite 350
Chicago, Illinois 60604-2507
(312) 341-9400

## CERTIFICATE OF SERVICE

Jonathan N. Ledsky, an attorney, hereby certifies that a true and correct copy of the

foregoing, **Defendant Ameriquest Mortgage Company's Answer to Plaintiffs' Second**

**Amended Complaint**, was served electronically upon counsel of record:

Cathleen M. Combs (ccombs@edcombs.com)

Albert F. Hofeld (ahofeld@edcombs.com)

Daniel A. Edelman (courtecl@aol.com, dedelman@edcombs.com)

James Latturner (jlatturner@edcombs.com)

by the filing of said document through the Court's electronic filing system this 14th day of March,

2006.

s/ Jonathan N. Ledsky