# APPENDIX 35

IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRETT WERTEPNY and YVONNE WERTEPNY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 05 C 1402 |
| AMERIQUEST MORTGAGE COMPANY, | ) ) ) | Judge Nordberg |
| Defendant. | ) | |

## DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT

Defendant Ameriquest Mortgage Company ("Defendant") answers Plaintiffs' complaint as follows:

1.     Plaintiffs Brett Wertepny and Yvonne Wertepny bring this action against a "subprime" mortgage lender to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

**ANSWER:**     Defendant admits that Plaintiffs have filed a lawsuit against it. Defendant objects to the term "subprime" as vague. Defendant is without knowledge or information sufficient to form a belief as to the truth of the intended characterization of the term "subprime." Defendant denies all remaining allegations in Paragraph 1. Defendant specifically denies that it violated the Truth in Lending Act, 15 U.S.C. § 1601, or implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendant does business in the District and is deemed to reside here.

**ANSWER:**     Defendant does not contest subject matter jurisdiction, personal jurisdiction, or venue. Defendant denies any remaining allegations in Paragraph 2.

3.     Plaintiffs own and reside in a home at 2063 Craig Drive, Des Plaines, IL 60018.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4.     Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606. It is engaged in the business of originating "subprime" mortgages and makes more than 26 loans per year.

**ANSWER:**     Defendant admits that it is a corporation, that it is incorporated in a state other than Illinois, and that it maintains offices and does business in Illinois. Defendant admits the allegations in the second sentence in Paragraph 4. Defendant objects to the term "subprime" as vague. Defendant is without knowledge or information sufficient to form a belief as to the truth of the intended characterization of "subprime." Defendant admits that it is engaged in the business of originating loans secured by mortgages and that it originates more than 26 loans per year. Defendant denies the remaining allegations in Paragraph 4.

5.     Prior to May 8, 2003, plaintiffs applied for a mortgage with Ameriquest.

**ANSWER:**     Defendant admits that, prior to May 8, 2003, Plaintiffs applied for a loan, to be secured by a mortgage. Defendant denies the remaining allegations in Paragraph 5.

6.     Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

**ANSWER:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.

7.     The loan was closed on May 8, 2003.

**ANSWER:**     Defendant denies the allegations in Paragraph 7.

8.     On May 8, 2003, plaintiffs signed or received the following documents relating to the loan:

a.     Note, Exhibit A, signed by Brett Wertepny;

b.     Mortgage, Exhibit B;

2

c.    A Truth in Lending disclosure statement, <u>Exhibit C</u>;

d.    Two difference notices of right to cancel, <u>Exhibits D and E</u>;

e.    A settlement statement on form HUD-1A, <u>Exhibit F</u>.

**ANSWER:**    Defendant admits that, in connection with the loan transaction, Plaintiffs received and signed a note, a mortgage, a Truth in Lending disclosure statement, a notice of right to cancel, a document entitled "one week cancellation period," and a settlement statement. Defendant affirmatively state that Exhibits A, B, C, D, E, and F appear to be copies, in some instances, unsigned and incomplete copies, of a portion of the documents received by Plaintiff. Defendant denies that Plaintiffs received a notice of right to cancel with blank boxes for the document signing date and final date to cancel. Defendant denies that Exhibits D and E constitute two different notices of right to cancel. Defendant denies the remaining allegations in Paragraph 8.

9.    Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

(a)    <u>Consumer's right to rescind.</u>

> **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

> **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

> **(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative**

3

proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind</u>. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions</u>. The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations that the transaction was secured by Plaintiffs' home. Defendant denies that 12 C.F.R. § 226.23(f)(2) states "(2) A credit plan in which a stage agency is a creditor." Defendant admits that the remaining allegations in Paragraph 9 contain a portion of the text of 12 C.F.R. § 226.23. Defendant denies the allegations of Paragraph 9 insofar as they purport to make any allegation of wrongdoing by Defendant under said statute. Defendant denies the remaining allegations in Paragraph 9.

10.    The payment schedule is not fully and completely disclosed on <u>Exhibit C</u>.

4

**ANSWER:**     Defendant denies the allegations in Paragraph 10.

11.     Exhibit D is not completed and thus does not clearly and conspicuously disclose the right to rescind.

**ANSWER:**     Defendant denies the allegations in Paragraph 11.

12.     Exhibit E detracts from and obfuscates Exhibit D. Exhibit E suggests that the consumer has seven days to rescind under TILA, which is not the case. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees, or the procedural protections of §1635. It also provides for a different method of counting days and requires actual receipt of the notice by Ameriquest within the specified time.

**ANSWER:**     Defendant denies the allegations in Paragraph 12.

13.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

**ANSWER:**     Defendant admits that the allegations in Paragraph 13 contain the text of 15

U.S.C. § 1635(g). Defendant denies the allegations of Paragraph 13 insofar as they purport to make

any allegation of wrongdoing by Defendant under said statute. Defendant denies the remaining

allegations in Paragraph 13.

14.     The failure to fully and completely disclose the payment schedule violates 15 U.S.C. §1638 and 12 C.F.R. §226.28.

**ANSWER:**     Defendant denies the allegations in Paragraph 14.

15.     The failure to delivery completely filled-out copies of the notice of right to cancel, and the provision of inconsistent and confusing notices of right to cancel violates 15 U.S.C. §1635 and 12 C.F.R. §226.23.

**ANSWER:**     Defendant denies the allegations in Paragraph 15.

5

## AFFIRMATIVE DEFENSES

Defendant states as its affirmative defenses as follows:

1.      Plaintiffs' claim for statutory damages, costs, and attorney's fees for any alleged underlying Truth in Lending Act violation is barred by the one-year statute of limitations for statutory damages, costs and attorney's fees under the Truth in Lending Act.

2.      Plaintiffs' purported cause of action fails to state a claim upon which relief may be granted.

3.      If it should be deemed that Plaintiffs are entitled to rescission, any obligation on the part of Defendant to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiffs' reimbursement or other return to Defendant of all funds disbursed on Plaintiffs' behalf in connection with the subject mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other rules of law or equity.  Any obligation on the part of Defendant to rescind and to release any lien is conditioned upon Defendant reimbursing or otherwise returning all funds disbursed on their behalf to Defendant in connection with the subject loan, less any finance charges.

WHEREFORE, Defendant Ameriquest Mortgage Company requests that this Court enter judgment in its favor and against Plaintiffs Brett Wertepny and Yvonne Wertepny, award Ameriquest Mortgage Company its costs, and provide such further and additional relief as it deems just and appropriate.

Dated:  April 29, 2005                        Respectfully submitted,

                                               **AMERIQUEST MORTGAGE COMPANY,**
                                               **Defendant**

                                               _____
                                               One of Its Attorneys

6

Craig A. Varga
Jonathan N. Ledsky
Jaime S. Roginski-Kord
VARGA BERGER LEDSKY HAYES & CASEY
224 South Michigan Avenue, Suite 350
Chicago, Illinois 60604
(312) 341-9400

## CERTIFICATE OF SERVICE

Jonathan N. Ledsky, an attorney, hereby certifies that a true and correct copy of the

foregoing Defendant's Answer to Plaintiffs' Complaint was served upon:

Al Hofeld, Jr.
Edelman, Combs & Latturner, LLC
120 South LaSalle Street
18th Floor
Chicago, Illinois 60603

by placing same in the United States mail chute located at 224 South Michigan Avenue, Chicago,

Illinois 60604, properly addressed and postage fully prepaid, this 29th day of April, 2005, on or

before the hour of 5:00 p.m.

_____
Jonathan N. Ledsky


Shared/Ortega/Pleadings/AMQ-Wertepny Answer to Plaintiffs' Complaint.

# APPENDIX 36

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
## Chicago, Illinois 60603-3403
## (312) 739-4200
## (800) 644-4673
## (312) 419-0379 (FAX)
## Email: edcombs@aol.com
## www.edcombs.com

February 16, 2005

**BY MESSENGER**

Ameriquest Mortgage Corporation
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

        Re:    Notice of rescission, claim and lien, Brett Wertepny and Yvonne Wertepny, 2063 Craig Drive, Des Plaines, IL 60018, loan of March 8, 2003

Ladies/ Gentlemen:

      The above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

      Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

      If you claim that the owner of the loan is other than yourself, please identify the owner pursuant to 15 U.S.C. §1641(d).

      Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document hand-delivered to the addressees on February 16, 2005.

_____
Daniel A. Edelman

# APPENDIX 37

# VARGA BERGER LEDSKY HAYES & CASEY

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

SANTA FE BUILDING
224 SOUTH MICHIGAN AVENUE
SUITE 350
CHICAGO, ILLINOIS 60604-2507

TELEPHONE: 312-341-9400
FACSIMILE: 312-341-2900

March 9, 2005

JONATHAN N. LEDSKY
(312) 341-9840

jledsky@vblhc.com

**VIA FACSIMILE & U.S. MAIL**

Mr. Al Hofeld
Edelman, Combs, Latturner & Goodwin, LLC
120 South LaSalle Street
18th Floor
Chicago, Illinois 60603

> Re:  Notice of rescission, claim, and lien on behalf of Brett and Yvonne Wertepny,
> 2063 Craig Drive, Des Plaines, Illinois 60018,
> Ameriquest Mortgage Company loan dated March 8, 2002

Dear Al:

We are in receipt of your law firm's letter served on the registered agent of our client, Ameriquest Mortgage Company ("Ameriquest"). The letter seeks rescission of a loan made by Ameriquest to Brett and Yvonne Wertepny.

The letter asserts, as the basis of the rescission demand, "noncompliance with the Truth in Lending Act," and nothing more. The letter, conspicuously, omits any identification of how you contend Ameriquest has failed to comply with the Truth in Lending Act. Typically, your law firm's letters seeking rescission on behalf of a particular borrower identify the alleged violations of the Truth in Lending Act. Without such a statement in your rescission letter on behalf of Brett and Yvonne Wertepny, Ameriquest cannot evaluate the bona fides of the rescission demand. Please advise us as to the basis of the rescission request on behalf of Brett and Yvonne Wertepny. We will, then, immediately communicate Ameriquest's position regarding the rescission request. Thank you.

Very truly yours,

Jonathan N. Ledsky

# APPENDIX 38



Doc#: 0615113030 Fee: $26.50
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 05/31/2006 08:10 AM Pg: 1 of 1

Recording Requested & Prepared By:
**LANDAMERICA**
**P.O. BOX 25088**
**SANTA ANA, CA 92799**
**KIM ANH LE          (LAND AM)**

And When Recorded Mail To:
**LANDAMERICA**
**P.O. BOX 25088**
**SANTA ANA, CA 92799**

Loan#: 0047675335     RLS#: 597563

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: that the undersigned, holder of a certain mortgage, whose parties, dates and recording information are below, does hereby acknowledge that it has received full payment and satisfaction of the same. Accordingly, the County Recorder is hereby authorized and directed to discharge the same upon the record of said mortgage.

Original Mortgagor: **YVONNE WERTEPNY SINGLE WOMAN AND BRETT WERTEPNY, IN JOINT TENANCY**
Original Mortgagee: **AMERIQUEST MORTGAGE COMPANY**
Mortgage Dated: **MAY 08, 2003**
Recorded on: **JUNE 18, 2003** as Instrument No. **0316919168** in Book No. — at Page No. ---
Property Address: **2063 EAST CRAIG DRIVE, DES PLAINES, IL 60018-0000**
County of **COOK**, State of **ILLINOIS**
PIN# **09-33-408-009**
Legal Description: **LOT 7, IN BLOCK 4, IN TOWN IMPROVEMENT CORPORATION'S DES PLAINES COUNTRYSIDE, A SUBDIVISION IN THE WEST HALF OF THE SOUTH EAST QUARTER OF SECTION 33, TOWNSHIP 41 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**
IN WITNESS WHEREOF, THE UNDERSIGNED, BY THE OFFICER DULY AUTHORIZED, HAS DULY EXECUTED THE FOREGOING INSTRUMENT ON **APRIL 30, 2006**

**AMERIQUEST MORTGAGE COMPANY**

By: _____

    **JEFF L. HEMPHILL, VICE PRESIDENT**

State of _____**CALIFORNIA**_____                    }
County of _____**ORANGE**_____                      } ss.

On **APRIL 30, 2006**, before me, **IRIS B JENKINS**, a Notary Public, personally appeared **JEFF L. HEMPHILL** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____

(Notary Name): **IRIS B JENKINS**

IRIS B. JENKINS
Comm. # 1449616
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Expires Nov. 4, 2007

Doc#. 0610421111 fee: $46.00
Date: 04/14/2006 03:04 PM Pg: 1 of 7
Cook County Recorder of Deeds
*RHSP FEE $10.00 Applied

This document was prepared by:
Diane Delia
First American
1228 Euclid Avenue, 4th Floor
Cleveland, OH 44115
When recorded, please return to:
First American
1228 Euclid Avenue, 4th Floor
Cleveland, OH 44115

——————— State of Illinois ——————— Space Above This Line For Recording Data ———————

Order #: 9135630
ALS #: 511281492

# MORTGAGE

(With Future Advance Clause) 22

1. DATE AND PARTIES. The date of this Mortgage (Security Instrument) is 03/23/2006 ............................ and the
parties, their addresses and tax identification numbers, if required, are as follows:
   MORTGAGOR: YVONNE WERTEPNY AND BRETT WERTEPNY

**UNMARRIED**                                          **UNMARRIED**

   LENDER:     U.S. Bank, National Association N.D.
               4325 17th Avenue S.W.
               Fargo, ND 58103

2. CONVEYANCE. For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to
   secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants,
   bargains, sells, conveys, mortgages and warrants to Lender the following described property:

   The real estate mortgage herein is described in Exhibit "A" which is attached hereto and hereby
   incorporated herein by reference.

The property is located in COOK ............................ at 2063 E CRAIG DR ............................
                            (County)
............................ DES PLAINES ............................, Illinois 60018 ............
        (Address)                        (City)                                    (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian
rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may
now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. SECURED DEBT AND FUTURE ADVANCES. The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described
      below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is
      suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

ILLINOIS - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)                                     9135630
_ 1994 Bankers Systems, Inc., St. Cloud, MN Form FS-RE-MTG-IL 1/28/99 6096AD 1/99         *(page 1 of 6)*

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

4. PAYMENTS. Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

5. PRIOR SECURITY INTERESTS. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

6. CLAIMS AGAINST TITLE. Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

7. DUE ON SALE OR ENCUMBRANCE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

8. PROPERTY CONDITION, ALTERATIONS AND INSPECTION. Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for

9135630

(page 2 of 6)

the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

9. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

10. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor irrevocably grants, bargains, sells, conveys and warrants to Lender as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument.

Mortgagor agrees that this assignment is immediately effective after default between the parties to this Security Instrument and effective as to third parties on the recording of the Security Instrument, and this assignment will remain effective during any period of redemption by the Mortgagor until the Secured Debt is satisfied. Mortgagor agrees that Lender may take actual possession of the property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Mortgagor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

11. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

12. **DEFAULT.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

13. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. Upon default, Lender shall have the right, without declaring the whole indebtedness due and payable, to foreclose against all or part of the Property. This Mortgage shall continue as a lien on any part of the Property not sold on foreclosure.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum

9135630

$BW$    $Y.W.$

*(page 3 of 6)*

1994 Bankers Systems, Inc., St. Cloud, MN  Form FS-RE-MTG-IL  1/28/99  6096AD  1/99

in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

14. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS. Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

15. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
  A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

  B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

  C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

  D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

16. CONDEMNATION. Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

17. INSURANCE. Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

9135630
*(page 4 of 6)*

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

18. ESCROW FOR TAXES AND INSURANCE. If otherwise provided in a separate agreement, Mortgagor may be required to pay to Lender funds for taxes and insurance in escrow.

19. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

20. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND. All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

21. APPLICABLE LAW; SEVERABILITY; INTERPRETATION. This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

22. NOTICE. Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

23. WAIVERS. Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

9135630
*(page 5 of 6)*

24. MAXIMUM OBLIGATION LIMIT. The total principal amount secured by this Security Instrument at any one time shall not exceed $ 200,000.00 ......................................... . This limitation of amount does not include interest, attorneys fees, and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

25. OTHER TERMS. If checked, the following are applicable to this Security Instrument:

☐ Line of Credit. The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ Construction Loan. This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ Fixture Filing. Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ Riders. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ...................................................
☐ Additional Terms.

SIGNATURES: By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

_Brett W_____       3-23-06        _Yvonne Wertepny_      3-23-06
(Signature) BRETT WERTEPNY         (Date)    (Signature) YVONNE WERTEPNY       (Date)

ACKNOWLEDGMENT:
(Individual) STATE OF ..Illinois...................., COUNTY OF ..COOK....................................} ss.
This instrument was acknowledged before me this 23d.......... day of ..March 2006............................
by BRETT WERTEPNY AND YVONNE WERTEPNY.........................................................................
My commission expires:
(Seal)
03/04/09          _Jessica Eldridge_
                                              (Notary Public)
                  _Jessica Eldridge_

┌─────────────────────────────────┐
│        OFFICIAL SEAL            │
│      JESSICA ELDRIDGE          │
│  Notary Public · State of Illinois │
│ My Commission Expires Mar. 4, 2009 │
└─────────────────────────────────┘

9135630

_ 1994 Bankers Systems, Inc., St. Cloud, MN  Form FS-RE-MTG-IL  1/28/99  6096AD  1/99           (page 6 of 6)

EXHIBIT A

SITUATED IN COUNTY OF COOK AND STATE OF ILLINOIS:

LOT 7 IN BLOCK 4 IN TOWN IMPROVEMENT CORPORATION'S DES
PLAINES COUNTRYSIDE, A SUBDIVISION IN THE WEST 1/2 OF THE
SOUTH EAST 1/4 OF SECTION 33, TOWNSHIP 41 NORTH, RANGE 12
EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY,
ILLINOS.

Permanent Parcel Number:  09-33-408-009
YVONNE WERTEPNY AND BRETT WERTEPNY
NOT IN TENANCY IN COMMON, BUT IN JOINT TENANCY

2063 EAST CRAIG DRIVE, DES PLAINES IL 60018
Loan Reference Number  :  20060761605041/511281492
First American Order No:  9135630
Identifier: FIRST AMERICAN LENDERS ADVANTAGE

WERTEPNY
9135630

FIRST AMERICAN LENDERS ADVANTAGE
MORTGAGE