**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead case No. 05-7097 |
| THIS DOCUMENT RELATES TO :<br>*JOSE and ROSE MEJIA and OSMAN and AZRA ZAHIROVIC v. AMERIQUEST MORTGAGE COMPANY, DEUTSCHE BANK NATIONAL TRUST COMPANY, BEAR, STEARNS & CO. INC. and AMERIQUEST MORTGAGE SECURITIES INC ASSET BACKED PASS THROUGH CERTIFICATES, SERIES 2005-R10*<br>(Case No. 08-cv-1386) | Centralized before the Honorable Marvin E. Aspen<br><br><br><br><br>JURY TRIAL DEMAND |

**AMENDED COMPLAINT**

**INTRODUCTION**

1. Plaintiffs seek rescission of their mortgage transactions pursuant to 15 U.S.C. § 1635. Plaintiffs also charge defendants with violation of Illinois law.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claim under the Truth in Lending Act arises under federal law. This Court has supplemental jurisdiction over plaintiffs' claim under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest before Judge Aspen.

## PARTIES

4. Plaintiffs Jose and Rose Mejia obtained a $198,000.00 adjustable rate mortgage from Ameriquest Mortgage Company that closed on September 12, 2005. The loan had an initial interest rate of 10.505% and could adjust to a maximum rate of 16.050%. The Mejias' paid $3,920.24 in points and fess to obtain this loan, of which $2,313.24 went to Ameriquest.

5. Plaintiffs Osman and Azra Zahirovic obtained a $193,200.00 adjustable rate mortgage from Ameriquest Mortgage Company that closed on March 16, 2005. The loan had an initial interest rate of 5.990% and could adjust to a maximum rate of 11.990%. The Zahirovics' paid $9,246.21in points and fess to obtain this loan, all of which went to Ameriquest.

6. Defendant Ameriquest Mortgage Company is a corporation organized under the laws of the state of Delaware, with its principal place of business in Orange, CA. Ameriquest originated plaintiffs' mortgages through a refinancing transaction and took a security interest in plaintiffs' homes.

7. Defendant Deutsche Bank National Trust Company is or was the owner/assignee of the Mejia mortgage.

8. Defendant Bear, Stearns & Co. Inc. is or was the owner/assignee of the Zahirovic mortgage.

9. Defendant Deutsche Bank National Trust Company as trustee of Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates, Series 2005-R10 and/or Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates, Series 2005-R10 is or was the assignee of the Mejia mortgage.

## COUNT ONE -- TRUTH IN LENDING ACT

10. Plaintiffs incorporate paragraphs one through nine above.

11. Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

**REGULATORY FRAMEWORK**

12. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

13. Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

14. Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

15. The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement

> containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

16. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

17. To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

18. Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have

4

the right to rescind the transaction ....

12 C.F.R. § 226.23(a)(1).

19. The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose[]" the consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1)

20. More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> > (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
> >
> > (ii) The consumer's right to rescind the transaction.
> >
> > (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
> >
> > (iv) The effects of rescission, as described in paragraph (d) of this section.
> >
> > (v) The date the rescission period expires

12 C.F.R. § 226.23(b)(1).

21. Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

> When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

22. Subparagraph (d)(2) states:

> Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in

> connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. § 226.23(d)(2).

## DEFECTIVE DISCLOSURES

23. Ameriquest's disclosures to plaintiffs in connection with plaintiffs' mortgage refinancing transactions did not comply with the requirements of the Truth in Lending Act. More specifically, the Mejias received two sets of closing papers, one for a fixed rate mortgage and the other for an adjustable rate mortgage. The contradiction rendered the overall disclosures confusing and unclear.

24. In addition, Ameriquest failed to deliver to the Mejias a proper number of properly completed Notice of Right to Cancel forms which is a violation of 12 C.F.R. § 226.23(b)(1)(v).

25. Also, the Mejias were given a document (APPLICATION DISCLOSURE) which indicated that she would owe $350 for an Appraisal/Property Valuation Fee Deposit if they backed out of the deal, which misrepresented the effects of rescission in violation of 12 C.F.R. § 226.23(b)(1)(iv).

26. The Mejias sent a rescission letter to Ameriquest and Deutsche Bank on March 3, 2008.

27. The Notice of Right to Cancel forms that were delivered to the Zahirovics at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v).

28. The Zahirovics sent a rescission letter to Ameriquest and Deutsche Bank on March 3, 2008.

29. Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

30. Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs are entitled to rescission of their mortgage transactions.

## COUNT TWO -- VIOLATION OF STATE LAW

31. Plaintiff incorporates paragraphs one through nine above.

32. In connection with trade or commerce, Ameriquest made false and misleading statements to plaintiffs intending to induce reliance. Ameriquest baited plaintiffs into a mortgage transaction by offering a relatively favorable set of terms and then switched to more expensive terms.

33. In or about September 2005, an Ameriquest representative told the Mejias that they would be getting a loan with an interest rate that would be at least one point less than the 7.1% on their current mortgage.

34. On or about September 7, 2005, Ameriquest had the Mejias sign loan papers for a fixed rate mortgage with an interest rate of 10.050%. On or about September 12. 2005, Ameriquest had plaintiffs sign additional papers, this time for an adjustable rate loan with a start rate of 10.050%, which could go as high as 16.050%.

35. In or about March 2005, an Ameriquest representative told the Zahirovics that they could get a loan with minimal closing costs and between $3,000 and $4,000 in cash out. However, the Zahirovics paid $9,246.21in points and fess to obtain this loan, all of which went to Ameriquest and only got $800 in cash out of the loan.

36. Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under the Illinois Consumer Fraud Act.

37. Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them injury.

38. Ameriquest's violation of plaintiffs' rights is part of a pattern and practice of illegal behavior by Ameriquest. Defendant Deutsche Bank National Trust Company, among others, knowingly aided and abetted this illegal behavior by Ameriquest and is therefore also liable to plaintiffs.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

    a.    canceling the appropriate defendants' security interest in appropriate plaintiffs' home and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

    b.    awarding plaintiffs appropriate actual damages;

    c.    awarding appropriate statutory damages;

    d.    ordering defendants to pay appropriate costs, penalties, and attorneys fees;

    f.    granting such other relief as the Court deems just and proper.

Respectfully Submitted By:

/s/ Anthony P. Valach, Jr
Counsel for Plaintiffs

THE LAW OFFICES OF DANIEL HARRIS
Daniel Harris
Anthony Valach
150 N. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: (312) 960-1802
Facsimile: (312) 960-1936

**CERTIFICATE OF SERVICE**

I, Anthony P. Valach, Jr., hereby certify that on this 25th day of August 2008, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing though the Court's system.

By:    /s/ Anthony P. Valach, Jr.