**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) ) | MDL No. 1715<br><br>Lead Case No. 1:05-cv-07097 |
| THIS DOCUMENT RELATES TO THE INDIVIDUAL ACTIONS LISTED ON APPENDIX A | ) ) ) ) ) | Centralized before the Hon. Marvin E. Aspen<br><br>August 27, 2008 |

**MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

The plaintiffs identified in Appendix A (hereinafter "Movants") to the accompanying Motion for Partial Summary Judgment submit this memorandum of law in support of their motion. Movants are entitled to summary judgment against Ameriquest and all assignees on the question of whether Ameriquest Mortgage Company violated the Truth in Lending Act by failing to clearly and conspicuously disclose the effects of rescinding their mortgages, as required by 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b)(1). Ameriquest failed to meet this requirement by giving each Movant a "Notice of Right to Cancel" disclosure form that matched the language of Federal Reserve Board Model Form H-8. Form H-8 is inappropriate for transactions in which the consumer refinances an existing mortgage loan with the same creditor. This violation entitles the Movants to rescind their mortgages.

**I.    SUMMARY OF FACTS**

As more fully explained in Movants' Statement of Facts, all of the Movants entered into mortgage loans, secured by their primary residences, with Ameriquest. Subsequently, Movants refinanced those Ameriquest mortgages with new mortgages from Ameriquest. When consummating the new transactions, Ameriquest provided each of the Movants with an identical, standardized form entitled "Notice of Right to Cancel." The text of the form was identical to the Model Form H-8 promulgated by the Federal Reserve Board in Appendix H to Regulation Z (12 C.F.R. Part 226). A sample of Form H-8 is attached as Exhibit A to this Memorandum. The

Movants have submitted copies of the Notice of Right to Cancel forms they received from Ameriquest along with their affidavits. Ameriquest subsequently assigned the new mortgages to the assignees identified in Movants' Statement of Facts and in each individual action.

## II.     TRUTH IN LENDING ACT

### A.     The Truth in Lending Act Is Designed To Protect Consumers and Achieves Its Remedial Purpose Through a System of Strict Liability

The Federal Truth in Lending Act ("TILA") was enacted in 1968 to regulate the disclosure of the terms of consumer credit transactions and to "aid the unsophisticated consumer so that he would not be easily misled as to the total costs of financing." *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 127 (D.N.J. 2003); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 762 (7th Cir. 2006). TILA is a remedial statute designed to protect consumers, who are not on an equal footing with creditors, either in bargaining for credit terms or in knowledge of credit provisions. *In re Melendez*, 235 B.R. 173, 198 (Bankr. D. Mass. 1999). By enacting TILA, Congress intended to "remedy the divergent and often fraudulent practices by which credit customers were apprised of the terms of the credit extended to them." *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d. Cir. 1988) (internal quotations omitted).

As such "TILA is a remedial statute, it is interpreted strictly in favor of the consumer." *Dauti v. Hartford Auto Plaza, Ltd.*, 213 F. Supp.2d 116, 121 (D. Conn. 2002); *N.C. Freed Co. Inc. v. Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir. 1973) (TILA to be liberally construed in favor of consumers), *cert. denied*, 414 U.S. 827 (1973). To encourage compliance, TILA violations are subject to a strict liability standard – "strict liability in the sense that absolute compliance is required and even technical violations will form the basis for liability." *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F. Supp. 1295, 1299 (D. Del. 1990). The strict compliance rule is what makes TILA so effective. "This strict interpretation of the TILA has largely been responsible for the TILA's success in achieving widespread compliance with its requirements." *In re Brown*, 106 B.R. 852, 857 (Bankr. E.D. Pa. 1989). "TILA receives a hypertechnical reading." *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 989 (7th Cir. 2000); *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 328 (7th Cir. 1999) ("Subject to narrow

exceptions, 'hypertechnicality reigns' in the application of TILA.") (quoting *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995).

**B.  Mortgage Lenders Must Properly Disclose Consumers' Right To Cancel**

The Truth in Lending Act provides homeowners with an unqualified right to cancel their mortgage transactions "until midnight of the third business day following consummation . . . ." 15 U.S.C. § 1635(a); 12 C.F.R. §226.23(a)(3); *Handy*, 464 F.3d at 762.  During that time, a homeowner has the opportunity to privately "reconsider any transaction which would have the serious consequence of encumbering the title to his home."  *Rodash v. AIB Mortg. Co.*, 16 F.3d 1142, 1145 (11th Cir. 1994) (*quoting* S. Rep. No. 368, 96th Cong., 2d Sess. 28 (1980), reprinted in 1980 U.S.C.C.A.N. 236, 264).  With limited exceptions, the right to cancel applies to "any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended . . . ."  15 U.S.C. § 1635(a).

Where the right to cancel applies, "[t]he creditor shall clearly and conspicuously disclose" the existence of the right to cancel to the consumer in accordance with regulations promulgated by the Federal Reserve Board ("FRB").  15 U.S.C. § 1635(a).  The FRB is empowered to promulgate regulations and model forms to implement TILA, including its rescission provisions.  15 U.S.C. § 1604.  The regulations regarding rescission specify:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind . . . .  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (ii) The consumer's right to rescind the transaction.
>
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
> (iv) **The effects of rescission**, as described in paragraph (d) of this section.
>
> (v) The date the rescission period expires.

3

12 C.F.R. § 226.23(b)(1) (emphasis added). The "effects of rescission" are set forth in 12 C.F.R. § 226.23(d). The effects, however, depend whether the mortgage being rescinded is "[a] refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling." 12 C.F.R. § 226.23(f)(2). In a refinancing by the same creditor (hereinafter a "same-lender refinancing"), "[t]he right of rescission shall apply . . . to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation." *Id.* "In short, a borrower may rescind the 'new money' portion of certain 'refinancings,' but not the 'old money' portion." *Porter v. Mid-Penn Consumer Disc. Co.*, 961 F.2d 1066, 1074 (3d Cir. 1992). This is in contrast to a different-lender refinancing, which may be entirely rescinded – both new and old money.

In order to meet the list of requirements in 12 C.F.R. § 226.23(b)(1), the regulations further specify "the creditor shall provide the appropriate model form in Appendix H of [12 C.F.R. Part 226] or a substantially similar notice." 12 C.F.R. § 226.23(b)(2). The FRB has published two model forms for creditors to use. Form H-8 is entitled "Rescission Model Form (General)" and Form H-9 is "Rescission Model Form (Refinancing with Original Creditor)." Exhs. A and B. Form H-8, and the form Ameriquest gave the Movants, describe the effects of rescission as follows:

> If you cancel the transaction, the [mortgage/lien/security interest] is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the [mortgage/lien/security interest] [on/in] your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.
>
> You may keep any money or property we have given you until we have done the things mentioned above, but **you must then offer to return the money** or property. If it is impractical or unfair to you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

Exh. A (emphasis added). Form H-9 (Refinancing with Original Creditor) includes a different description of rescission that reflect the more limited scope of rescission where the consumer refinances with the original creditor:

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address below.

Exh. B.

The failure to clearly, conspicuously, and accurately disclose the right to rescind, including the effects of rescission, is a violation of TILA. *Porter*, 961 F.2d at 1076. "[T]he law does not require an ideal notice of rescission rights, just a clear, accurate, and conspicuous one." *Id.* TILA gives creditors limited protection from liability:

> arising solely from the form of the written noticed used . . . to inform the obligor of the rights of the obligor under [15 U.S.C. § 1635], if the creditor provided the obligor the **appropriate form of written notice** published and adopted by the Board, **or a comparable written notice** of the rights of the obligor, that was properly completed by the creditor, and otherwise complied with all other requirements of [15 U.S.C. § 1635] regarding notice.

15 U.S.C. § 1635(h) (emphasis added). This limit on creditor liability is narrowly restricted to situations in which the creditor uses "the **appropriate** model form . . . or a **substantially similar** notice." 12 C.F.R. § 226.23(b)(2) (emphasis added).[1] The U.S. Supreme Court has held that, unless demonstrably irrational, Regulation Z is dispositive and is entitled to deference. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980).

## C. Consumer May Rescind Where Creditor Fails to Provide Appropriate Notice

If a creditor fails to properly notify a borrower of the right to cancel, the deadline for cancelling, or the other material TILA disclosures, "the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23(a)(3); 15 U.S.C. § 1635(f); *Handy*, 464 F.3d at 763; *Elliott v. ITT Corp.*, 764 F. Supp. 102, 105 (N.D. Ill. 1991). Without strict

---

[1] "Comparable" is the language of the statute. 15 U.S.C. § 1635(h). "Substantially similar" appears in the regulation. 12 C.F.R. § 226.23(b)(2).

enforcement of a creditor's duty to disclose the right to rescind, creditors taking a security interest in a consumer's residence would have substantially less incentive to comply with the terms of the Truth in Lending Act. *In re Brown*, 106 B.R. at 857 (noting importance of strict liability to compliance).

**D.  Assignees Are Equally Liable for Rescission**

The assignees of Movants' mortgage loans are also liable for rescission pursuant to 15 U.S.C. § 1641(c).  TILA expressly states "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation."  15 U.S.C. § 1641(c).  Congress added section 1641(c) to TILA specifically to "eliminate[] ambiguity on the question of assignee liability for rescission by stating explicity [sic] that a consumer's exercise of this right is effective against an assignee.  Without such protection for the consumer, the right of rescission would provide little or no effective remedy." *Truth in Lending Simplification and Reform Act:  Report of the comm. on Banking, Housing and Urban Affairs, U.S. Senate to accompany, S. 108*; S. Rep. No. 73, 96th Cong., 1st Sess. 18. Assignees are liable for rescission regardless of whether the disclosure violation is apparent from the face of the loan documents or whether the assignee claims to be a holder-in-due course. *Ocwen Fed. Bank v. Russell*, 53 P.3d 312 (Haw. Ct. App. 2002); *Rowland v. Novus Fin. Corp.*, 949 F. Supp. 1447, 1458 (D. Haw. 1996); *Stone v. Mehlberg*, 728 F. Supp. 1341, 1348 (W.D. Mich. 1989).

**III.  STANDARD OF REVIEW**

A party is entitled to summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004).  "[A] bare contention that an issue of fact exists is insufficient to create a factual dispute."  *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000).  A motion for summary judgment may be granted in whole or in part as to the various issues in the case.  *Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663, 667 (N.D. W.Va. 1975).  Based

on the undisputed facts set forth above, the Movants are entitled to judgment as a matter of law on the question of whether Ameriquest properly notified them of the right to cancel their mortgages, including the effects of rescission, pursuant to the Truth in Lending Act. A judgment in Movants' favor on this issue will further entitle them to enforce rescission against both Ameriquest and the Defendants to which the mortgages were assigned.

## IV. AMERIQUEST VIOLATED TILA BY FAILING TO GIVE PLAINTIFFS CLEAR & ACCURATE NOTICE OF THEIR RIGHT TO RESCIND THE NEW-MONEY PORTION OF THEIR MORTGAGE LOANS

The Notice of Right to Cancel form Ameriquest gave the Movants violates TILA because it does not provide them with clear or accurate notice of the effects of rescission in a same-lender refinancing transaction. The relevant language on Ameriquest's form is identical to Model Form H-8. Using Form H-8 in a same-lender refinancing transaction violates TILA. *Porter*, 961 F.2d at 1074 (holding "a lender violates TILA by providing the H-8 notice when the borrower's right to rescind is limited by the 'refinancing' exception of 15 USCA § 1635(e)(2)."). Ameriquest should have given the Movants two copies of Model Form H-9 or a comparable notice. Model Form H-8 is neither the appropriate model form nor a substantially similar notice within the meaning of 15 U.S.C. § 1635(h) and 12 C.F.R. § 226.23(b)(2).

## A. Model Form H-8 Is Ambiguous, Confusing, and Inaccurate When Used In a Same-Lender Refinancing Transaction

Form H-8 is ambiguous and can be plausibly interpreted in more than one manner when used in a same-lender refinancing. Additionally, Form H-8 does not clearly or accurately explain the effects of rescission in a such a transaction. The FRB issued Form H-9 to avoid these problems. *See Gibbons v. Interbank Funding Group*, 208 F.R.D. 278, 280 (N.D. Cal. 2002) ("Form H-9 is meant for consumers who are entering into loan transactions with the creditor who financed a previous loan secured by the borrower's home"); *Porter*, 961 F.2d at 1074 ("Because rescission rights in 'refinancing' situations differ from those applicable in new-loan situations, the Board promulgated, in addition to the H-8, a model rescission form H-9 for partially exempt 'refinancings.'"). There are "crucial" differences between the two forms showing why H-8 was

inappropriate for the Movants' transactions. *See Gibbons*, 208 F.R.D. at 282 ("[T]he language in form H-9 differs from form H-8 in crucial respects . . . ."). One of the greatest differences between the two forms is that H-8 says the consumer may rescind the entire loan and H-9 says the consumer may only rescind part of the loan. Form H-8 states: "If you cancel the transaction, the [mortgage] is also cancelled . . . and we must return to you any money or property you have given to us or to anyone else in connection with this transaction." Exh. A (emphasis added). In contrast, Form H-9 states: "If you cancel this **new** transaction, **it will not affect any amount that you presently owe** . . . . We must also return any money you have given to us or anyone else in connection with this **new transaction**." Exh. B (emphasis added).

Form H-8 also refers to "the date of the transaction," "the date you received your Truth in Lending disclosures," and "the mortgage/lien/security interest." Exh. A. These references are ambiguous because, by the time the consumer receives the notice, the consumer will have had two mortgage transactions with the same creditor. A consumer reading H-8 in the situation at issue may legitimately wonder whether reference to "**the** transaction," **"**your . . . disclosures, and "**the** mortgage/lien/security interest" refers to the previous or new mortgage.[2] Form H-8 is inaccurate in a same-lender refinancing because it leads consumers to believe the cancellation applies to the entire amount of money borrowed from the creditor rather than being limited to money in the new transaction. When a creditor gives a consumer Form H-8 in a same-lender refinancing transaction, the effect is to wrongly imply that 12 C.F.R. § 226.23(f)(2) does not apply. Using Form H-8 "in an inappropriate context . . . violates TILA . . . ." *Porter*, 961 F.2d at 1076.

The FRB's decision to promulgate two different forms is evidence of the Board's conclusion that homeowners need different information about the effects of rescission depending on whether the loan is an original transaction or a refinancing. Section 12 C.F.R. § 226.23(f)(2) only applies to same-lender refinancings with new advances. Thus, consumers need to know about the limitation imposed by that section to adequately understand how rescission will effect their personal situations. In this case, Ameriquest failed to clearly notify the Movants of how 12 C.F.R. § 226.23(f)(2) makes rescission different in a same-lender transaction. If a consumer gets

---

[2] Form H-9 eliminates this confusion by referring to "**this new** transaction," "your **new** Truth in Lending disclosures," and "**this new** transaction[.]" Exh. B.

the wrong notice in a refinancing transaction, as occurred here, the consumer may incorrectly believe the *entire* loan will be canceled by rescission.

In *Porter v. Mid-Penn Consumer Disc. Co.*, 961 F.2d 1066 (3d Cir. 1992) the 3rd Circuit Court of Appeals addressed a transaction like the one now at issue in this motion. The consumer in *Porter* consummated a same-lender refinance and the creditor provided a copy of Form H-8 instead of H-9 at the closing.[3] *Id.* at 1067-68. The consumer sought to rescind based on the creditor's failure to provide proper notice. The court found the creditor in violation of TILA concluding:

> H-8 did not provide [the borrower] with a clear notice of what her right to rescind entailed. More generally, we hold that a lender violates TILA by providing the H-8 notice when the borrower's right to rescind is limited by the 'refinancing' exception of 15 USCA § 1635(e)(2).

*Id*. at 1077. In doing so, the *Porter* decision recognized that Form H-8 could be plausibly interpreted in two different ways:

> Under the first reading, . . . Porter would have to return the new money, but the old security interest would remain in place. Under the second, . . . Porter would have to return both old and new money, and both old and new security interests would be satisfied.

*Id*. This ambiguity over how much money Porter would have to return and the impact on the security interests was important to the court. A form that can be interpreted in two different ways is not "clear" and, therefore, violates TILA's mandate for clear and conspicuous notice. *Id*. In the present case, Ameriquest gave the Movants the same notice as the lender in *Porter* under the same circumstances.

The 7th Circuit Court of Appeals reached a similar conclusion in a different-lender refinancing. In *Handy v. Anchor Mortg. Corp*., 464 F.3d 760 (7th Cir. 2006), the consumer obtained a mortgage and received copies of both Forms H-8 and H-9 in the same transaction. *Id*. at 761. Handy argued that by providing *both* forms Anchor failed to clearly and conspicuously disclose her right to rescind. *Id*. at 763. The lender argued either form was acceptable because both "independently provided Handy with legally adequate notice of her right to rescind." *Id*. In considering these claims, the court observed that Form H-8 is "intended to be used in situations

---

[3] The *Porter* decision involved a 1987 mortgage transaction. *Porter*, 961 F.2d at 1068. The Federal Reserve changed Model Form H-9 in 1996 but the Form H-8 at issue in Porter is largely identical to the present version. See *id.* at 1069 (quoting version of Form H-8 given to Porter).

like Anchor's loan to Handy where the new creditor is a different party from the original lender .

. . ." *Id*. at 763. The court rejected Anchor's argument that the two forms were equivalent

because Form H-9 included a different description of rescission that was, at best, ambiguous

when applied to Handy's transaction. "Even if Anchor is correct that a close parsing of Form H-

9's 'effects of rescission' statement might make it possible to reconcile it with the type of loan

extended to Handy, the notice provided remains insufficient for Anchor to prevail." *Id*. at 764.

Relying on *Porter*, the 7th Circuit noted that "[w]here more than one reading of a rescission form

is 'plausible,' the form does not provide the borrower 'with a clear notice of what her right to

rescind entail[s].'" *Id*. (quoting *Porter*, 961 F.2d at 1077); *see also Cohen v. JP Morgan Chase

& Co.*, 498 F.3d 111, 120 (2d Cir. 2007) (finding text of statute ambiguous in face of

"competing, plausible interpretations"). As a result, the court held "Anchor's simultaneous

provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous

disclosure requirement, especially with regard to the 'effects of rescission.'" *Handy*, 464 F.3d at

764. Therefore, if H-8 and H-9 are not interchangeable and H-8 is meant for different-lender

refinancings, the *Handy* decision also naturally leads to the conclusion that H-8 is inappropriate

for same-lender refinancings like those at issue in this motion.

The case of *Gibbons v. Interbank Funding Group*, 208 F.R.D. 278, 282-83 (N.D. Cal.

2002), also concludes that H-8 and H-9 are not interchangeable and expressly states that H-8 is

inappropriate for a same-lender refinancing. While the facts of *Gibbons* were slightly different

from the present case, the court's conclusions regarding the proper use of each form are

illuminating. The creditor in *Gibbons* incorrectly used Form H-9 in a different-lender

refinancing instead of H-8, the converse of the present situation. *Id*. at 281. *Gibbons* expressly

adopted *Porter's* conclusion that giving Form H-8 to a consumer in a same-lender refinancing

was "confusing" and a violation of the disclosure requirements. *Id*. at 283 (citing *Porter*, 961

F.2d at 1070). *Gibbons* held that Form H-8 "states that the entire loan will be rescinded and the

entire security interest will be cancelled." *Gibbons*, 208 F.R.D. at 283. Such a description of

rescission is plainly inaccurate for a same-lender refinancing where only the new advances may

be rescinded.

The content of the rescission notice can have a significant impact on how consumers

exercise their rights. The consumer in a same-lender refinancing "is not necessarily better off if

she is required to return the entire amount of the loan (both loans together)." *Id*. at 283. When a

consumer rescinds, Regulation Z requires the consumer to tender certain funds back to the creditor. 12 C.F.R. § 226.23(d)(3). A consumer in a same-lender refinancing may find it easier to rescind only the new money from the refinancing rather than the whole loan, but Form H-8 says cancellation rescinds the entire loan. Providing Form H-8 to a consumer in a same-lender refinancing could deter the consumer from exercising the right to cancel because "'[m]any borrowers seek refinancings involving additional money precisely because they are cash-strapped'" (*Gibbons*, 208 F.R.D. at 283 (quoting *Porter*, 961 F.2d at 1077)) and may have difficulty meeting the more expensive tender requirements of an H-8 rescission. Nevertheless, plaintiffs in an action to enforce TILA "need not prove that they were mislead or suffered any actual damages from the purported TILA violations." *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, MDL No. 1715, Lead Case No. 05-CV-7097 at 5 (slip op.) (Aspen, J. 5/30/06).

**B.     FRB's Decision To Issue a Different Form For Same-Lender Refinancings Is Entitled To Deference**

The FRB's decision to issue Form H-9 shows the Board thought Form H-8 did not adequately explain the effects of rescission in a same-lender refinancing. Congress gave the FRB authority to promulgate the forms and regulations regarding a creditor's due to notify consumers of the right to cancel. According to 15 U.S.C. § 1604(a), "[t]he Board shall prescribe regulations to carry out the purposes of this subchapter." Section 15 U.S.C. § 1635(a) more specifically states: "The creditor shall also provide, **in accordance with regulations of the Board, appropriate forms** for the obligor to exercise his right to rescind any transaction under this section." 15 U.S.C. § 1635(a) (emphasis added). Courts must generally defer to an agency's statutory interpretation, so long as the agency's interpretation is based on a permissible construction of the statute, even where it may be at odds with circuit precedent. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (upholding Environment Protection Agency regulation that contradicted prior D.C. Circuit precedent); *Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257, 1260 (11th Cir. 2002) (holding that agency policy statement rejecting Circuit's previous decision effectively overruled the decision).

Allowing Ameriquest to use Form H-8 instead of H-9 (or a comparable notice) disregards the Board's decision to promulgate two different model forms and renders meaningless those parts of 15 U.S.C. § 1635(a) and (h) referring to the "appropriate forms" of notice. It is reasonable to presume the FRB would not have created two forms of notice in the first place if it considered either form sufficient to explain a consumer's rights regardless of the nature of the transaction. It is a well-settled principle of statutory construction that courts should interpret statutes to avoid rendering any of the statutory language meaningless. *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Allowing Ameriquest to use Form H-8 in same-lender refinancings will render meaningless the requirement that creditors use the appropriate form and the Board's decision to issue two different forms.

The same conclusion is mandated by the rule of construction that specific statutory language governs the general. *Weyerhaeuser Steamship Co. v. United States*, 372 U.S. 597, 600-601, 83 S.Ct. 926, 928, 10 L.Ed.2d 1, 4 (1963) ("the traditional rule of statutory construction . . . counsels against giving to general words a meaning totally unrelated to the more specific terms of a statute.") (overruled on other grounds). Regulation 12 C.F.R. § 226.23(f)(2) and Form H-9 contain more specific provisions regarding rescission than Form H-8. Therefore, under the principle elucidated in *Weyerhaeuser Steamship Co.*, it would be improper to find the more general words of Form H-8 sufficient to encompass the more specific meaning of Form H-9 and 12 C.F.R. § 226.23(f)(2).

**Conclusion**

Movants are entitled to summary judgment on the issue of whether Ameriquest violated TILA by giving them Notice of Right to Cancel forms containing the language of Model Form H-8. All of the transactions at issue involved same-lender refinancings. The effect of rescinding a same-lender refinancing is different from the effect of rescinding other transactions. In a same-lender refinancing, the consumer may only rescind the new-money portion of the transaction rather than the entire loan. Title 15 U.S.C. § 1635 and 12 C.F.R. § 226.23 required Ameriquest to clearly and conspicuously disclose the Movants' right to rescind, including the effects of rescission. If Ameriquest's disclosure form failed to provide clear notice of the Movants' right to rescind the new-money portion of their loans, the Movants will be entitled to rescind unless

Ameriquest used "the appropriate form of written notice published and adopted by the Board, or a comparable written notice . . . ." 15 U.S.C. § 1635(h). This is a question of law to be determined from the perspective of an ordinary consumer, without regard to whether the Movants were actual harmed.

Movants' are entitled to rescind because Ameriquest used the wrong model form published by the Board and did not provide Movants with a "comparable written notice." Ameriquest should have provided the Board's Model Form H-9, or something comparable. Instead, Ameriquest used Form H-8. Numerous courts, including the 7th Circuit Court of Appeals, have found that the two forms contain crucial differences and are not interchangeable. Movants ask the Court to enter a judgment: a) finding Ameriquest in violation of TILA; b) finding Movants are entitled to rescind their mortgage transactions; and c) holding both Ameriquest and the assignees liable for rescission.

/s/Daniel S. Blinn
Daniel S. Blinn, ct02188
dblinn@consumerlawgroup.com
Andrew G. Pizor ct27015
apizor@consumerlawgroup.com
Matthew W. Graeber ct27545
mwgraeber@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Road, Suite 512
Rocky Hill, Connecticut 06067
Tel. (860) 571-0408  Fax (860) 571-7457

**CERTIFICATION**

I hereby certify that on this 27th day of August, 2008, a copy of foregoing Memorandum of Law In Support of Motion for Summary Judgment was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/Daniel S. Blinn
Daniel S. Blinn ct02188