In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-1326

BRYAN ANDREWS and SUSAN ANDREWS,

*Plaintiffs-Appellees,*

*v.*

CHEVY CHASE BANK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 454—**Lynn Adelman**, *Judge.*

ARGUED SEPTEMBER 26, 2007—DECIDED SEPTEMBER 24, 2008

Before MANION, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* In this interlocutory appeal, we are called on to answer one question: May a class action be certified for claims seeking the remedy of rescission under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635? The only two federal appellate courts to have addressed this question have answered "no," *see McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418 (1st Cir. 2007); *James v. Home*

*Constr. Co. of Mobile, Inc.*, 621 F.2d 727 (5th Cir. 1980), and we agree. TILA's statutory-damages remedy, § 1640(a)(2), specifically references class actions (by providing a damages cap), but TILA's rescission remedy, § 1635, omits any reference to class actions. This omission, and the fundamental incompatibility between the statutory-rescission remedy set forth in § 1635 and the class form of action, persuade us as a matter of law that TILA rescission class actions may not be maintained.

## I. Background

In June 2004 plaintiffs Susan and Bryan Andrews obtained a loan from defendant Chevy Chase Bank, F.S.B., a federally chartered bank, to refinance their home in Cedarburg, Wisconsin. Bryan Andrews runs his own home-remodeling business, and the Andrews are experienced mortgagors, having previously taken out many original and refinancing mortgage loans for various residential and investment properties. This time, they opted for a unique type of loan product offered by Chevy Chase that allowed them to vary their payment, depending on their monthly cash flow. This "cashflow payment option," as Chevy Chase called it, was more flexible than a traditional fixed- or adjustable-rate mortgage because it allowed the debtor to choose between multiple payment options. It was also more complex, with a potential trap for the unwary. The debtor could pay a monthly minimum payment at a low interest rate for an initial term; under this option, while the interest rate would adjust monthly, the minimum payments would remain fixed at the low rate

No. 07-1326                                                                3

until the initial term expired or the outstanding balance exceeded 110 percent of the original loan (through "negative amortization"), whichever event occurred first. The debtor could also decide to make payments larger than the minimum monthly payment, pay interest only based on the fully indexed rate, pay an amount sufficient to amortize the loan over 15 years, or pay an amount sufficient to amortize the loan over 30 years.

Chevy Chase provided preliminary disclosures about the loan and, at closing, an adjustable-rate note, a truth-in-lending disclosure statement ("TILDS"), and an adjustable-rate rider. When the Andrews obtained the loan, they thought that the monthly payment *and* the interest rate were fixed for the initial term of five years and became variable thereafter. They were correct about the minimum monthly payment but not about the interest rate. The loan's discounted (or "teaser") interest rate of 1.95 percent applied only to the first monthly payment. After that, the interest rate adjusted every month, even though the minimum monthly payment remained fixed according to the initial rate. So as the interest rate climbed, an ever-increasing portion of the minimum monthly payment of $701.21 was required to cover the interest. Soon, the minimum monthly payment itself became insufficient to cover the accrued interest, and the "negative amortization" feature (adding the unpaid interest to the principal) kicked in.

In April 2005 the Andrews filed this purported class-action lawsuit against Chevy Chase claiming violations of TILA and seeking statutory damages under

§ 1640(a)(2), rescission under § 1635, and attorneys' fees under § 1640(a)(3).[1] The complaint alleged that certain of Chevy Chase's disclosures were misleading or unclear, particularly as to whether the initial interest rate was fixed and whether the payment periods were properly stated. More specifically, they alleged that Chevy Chase's payment schedule was not sufficiently detailed because it listed only the first and last payment dates; they also claimed that a computer-generated stamp on the top of one of Chevy Chase's disclosure forms made the disclosures misleading. This stamp, they asserted—which referred to the note as a "WS Cashflow 5-Year Fixed Note Interest Rate: 1.950%"—could be understood to identify the note as a fixed-rate note.

The district court granted summary judgment for the Andrews, authorizing rescission and awarding attorneys' fees, though it denied their claim for statutory damages because Chevy Chase's TILA violations were not those enumerated in § 1640(a), for which statutory damages are available. *See Andrews v. Chevy Chase Bank, FSB*, 240 F.R.D. 612 (E.D. Wis. 2007). In the same order, the district court granted the Andrews' motion for class certification under Rule 23(b)(2) of the *Federal Rules of Civil Procedure*, declaring that all class members would have the right to rescind their mortgages. The certified class includes anyone who obtained an adjustable-rate mortgage from Chevy Chase on a primary residence between April 20, 2004, and January 16, 2007, and who received a TILDS from Chevy Chase

---

[1] The Andrews did not seek actual damages under § 1640(a)(1).

containing any of the language the court had found deficient under TILA.

In its decision on class certification, the district court relied heavily on the Massachusetts district court decision in *McKenna. McKenna v. First Horizon Home Loan Corp.*, 429 F. Supp. 2d 291, 296 (D. Mass. 2006). But that decision was reversed by the Court of Appeals for the First Circuit less than two weeks after the court granted class certification. *McKenna*, 475 F.3d at 420. After we granted Chevy Chase's petition for leave to appeal pursuant to Rule 23(f), the district court agreed to stay its proceedings. The court then issued a memorandum explaining why its class-certification order should stand, despite the reversal of the district court's decision in *McKenna. Andrews v. Chevy Chase Bank, FSB*, 474 F. Supp. 2d 1006 (E.D. Wis. 2007). Also, recognizing that it had failed to consider TILA provisions that prohibit certain debtors from rescinding, *see* § 1635(e), the court stated that it would likely narrow the definition of the class, if its class-certification decision survived the appeal.

## II. Discussion

We generally review a grant of class certification for an abuse of discretion, but "purely legal" determinations made in support of that decision are reviewed de novo. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 340 (7th Cir. 1997). Whether TILA allows claims for rescission to be maintained in a class-action format is an issue of first impression in our circuit, but the First and Fifth Circuits, in addition to California's court of appeals, have held as a

6                                      No. 07-1326

matter of law that rescission class actions are unavailable under TILA. *See McKenna*, 475 F.3d at 427; *James*, 621 F.2d at 731; *see also LaLiberte v. Pac. Mercantile Bank*, 53 Cal. Rptr. 3d 745 (Cal. Ct. App. 2007), *cert. denied*, 128 S. Ct. 393 (2007).

TILA was designed "to assure a meaningful disclosure of credit terms" to the consumer. § 1601(a). Creditors who violate the disclosure requirements may be ordered to pay actual damages or statutory damages, depending upon the nature of the violation. *See* § 1640(a)(1) & (a)(2). In certain loan transactions, TILA also provides debtors with a right of rescission—a process in which the creditor terminates its security interest and returns any payments made by the debtor in exchange for the debtor's return of all funds or property received from the creditor (usually, the loan proceeds). *See* § 1635. Debtors may rescind under TILA by midnight of the third business day after the transaction for any reason whatsoever. *See* § 1635(a). The three-day postclosing "cooling off" period is extended if the creditor does not deliver the required notice of the right to rescind and all material disclosures; in that instance, the right to rescind continues until the creditor provides the required notice and disclosures, or up to three years after consummation of the loan, whichever occurs first. *See* § 1635(f).

Rescinding a loan transaction under TILA "'requires unwinding the transaction in its entirety and thus requires returning the borrowers to the position they occupied prior to the loan agreement.'" *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 765 (7th Cir. 2006) (quoting *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 877 (6th Cir. 2006)).

No. 07-1326                                                         7

TILA rescission is therefore considered a purely personal remedy. *See, e.g., McKenna*, 475 F.3d at 424-25; *James*, 621 F.2d at 731; *LaLiberte*, 53 Cal. Rptr. 3d at 750-51. It is intended to operate privately, at least initially, "with the creditor and debtor working out the logistics of a given rescission." *McKenna*, 475 F.3d at 421; *see also Belini v. Wash. Mut. Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005). Section 1635 sets forth certain deadlines and duties that apply to the creditor upon receipt of a notice of rescission from the debtor (e.g., return of earnest money, down payment, or other payments, and initiating the termination of the security interest); the statute, in turn, specifies the duties that apply to the debtor (e.g., tendering return of the property or its reasonable value). *See* § 1635(b). These procedures apply "except when otherwise ordered by a court," *id.,* making it clear that when disagreements over the particulars of a given rescission arise, the court may tailor the remedy to the circumstances.

   We note initially that the rescission remedy described in § 1635 appears to contemplate only individual proceedings; the personal character of the remedy makes it procedurally and substantively unsuited to deployment in a class action. *See also* RICHARD A. LORD, 28 WILLISTON ON CONTRACTS § 70:235 (4th ed. 2003) (noting that many consumer-credit statutes require the *individual* borrower to make the demand for rescission). Rescission is a highly individualized remedy as a general matter, and rescission under TILA is no exception. The variations in the transactional "unwinding" process that may arise from one rescission to the next make it an extremely poor fit for the class-action mechanism.

A court's certification of a class of persons entitled to seek rescission would be just the beginning. Each class member individually would have the option of exercising his or her right to rescind, and not all class members will want to do so because it requires returning the loan principle in exchange for the release of the lien and any interest or other payments. Individual controversies would erupt and likely continue because "the equitable nature of rescission generally entitles the affected creditor to judicial consideration of the individual circumstances of the particular transaction." *McKenna*, 475 F.3d at 427 n.6. Accordingly, a host of individual proceedings would almost certainly follow in the wake of the certification of a class whose loan transactions are referable to rescission. As we have noted, § 1635(b) provides that "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a court," suggesting that the remedy must proceed on a case-by-case basis. In short, the rescission remedy prescribed by TILA is procedurally and substantively incompatible with the class-action device.

It is true, as the Andrews point out, that TILA does not explicitly *prohibit* the use of a class action for rescission. The Supreme Court has said that "[i]n the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) (quoting FED. R. CIV. P. 1). Some district courts have ended their inquiry there and certified rescission classes under TILA. *See, e.g., In re Ameriquest Mortgage Co. Mortgage Lending Practices*

*Litig.*, No. 05-CV-7097, 2007 WL 1202544 (N.D. Ill. Apr. 23, 2007); *Latham v. Residential Loan Ctrs. of Am., Inc.*, No. 03 C 7094, 2004 WL 1093315 (N.D. Ill. May 6, 2004); *Hickey v. Great W. Mortgage Corp.*, 158 F.R.D. 603 (N.D. Ill. 1994); *see also McKenna*, 475 F.3d at 423 (listing cases). But TILA is entirely different from the jurisdictional statute at issue in *Yamasaki*.

*Yamasaki* concerned a statute setting forth the procedure by which judicial review of an administrative decision could be obtained. 442 U.S. at 698. The Court rejected the argument that the statute's language authorizing a suit for judicial review by "any individual" meant that individual suits only—not class actions—could be brought. *Id.* at 698-99. The Court held that this "any individual" language, without more, did not preclude the use of class actions in this category of suit. *Id.* at 700. While an express exception might be expected in the context of a jurisdictional statute specifying the rules by which judicial review may be sought, we think § 1635 is quite different. TILA's rescission remedy "is written with the goal of making the rescission process a private one, worked out between creditor and debtor without the intervention of the courts." *Belini,* 412 F.3d at 25. The lack of an explicit prohibition against class actions in § 1635 is not dispositive. *See McKenna*, 475 F.3d at 425-26.

Class actions *are* specifically mentioned in the TILA provision addressing claims for damages. *See* § 1640(a)(2)(B). There, Congress established a cap of the lesser of $500,000 or 1 percent of the creditor's net worth on the total recovery of damages in class actions. Because vast

recoveries are also possible for rescission claims (here, the Andrews estimate that Chevy Chase's liability could amount to "perhaps $210 million"), the absence of a similar cap in § 1635 strongly suggests that class actions are not available for rescission. *See Bates v. United States*, 522 U.S. 23, 29-30 (1997) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks omitted); *see also Duncan v. Walker*, 533 U.S. 167, 173 (2001) (where Congress distinguished between "state" and "federal" review in related subsections, that statutory context suggests that Congress would have explicitly mentioned "federal" review if it intended to include it). This direct contrast between the text of TILA's damages and rescission provisions cannot be ignored. *See McKenna*, 475 F.3d at 424.

It is of course possible (as our dissenting colleague suggests) that this difference in TILA's remedial provisions *could* be understood to mean that TILA's rescission remedy may be pursued on a class basis, without any liability limit. But we agree with the First Circuit that "[t]he notion that Congress would limit liability to $500,000 with respect to one remedy while allowing the sky to be the limit with respect to another for the same violation strains credulity." *Id.* We think the presence of a cap on class-action recovery in TILA's damages provision, the absence of *any* reference at all to class recovery in its rescission provision, and the mechanics of the rescission process spelled out in § 1635, all point more plausibly to the opposite interpretation: that

No. 07-1326                                                11

TILA's rescission remedy—by its terms an individualized, restorative rather than compensatory remedy—is just that, a purely *individual* remedy that may not be pursued on behalf of a class.

The 1995 amendments to TILA confirm this interpretation, as the First Circuit's well-reasoned opinion in *McKenna* noted. In that year, Congress limited the potential for expansive TILA liability by temporarily suspending class actions for relatively minor violations (including some involving rescission rights) and then by increasing the tolerance levels for honest, minor mistakes in carrying out disclosure obligations. *See* Truth in Lending Class Actions Relief Act of 1995, Pub. L. No. 104-12, § 2, 109 Stat. 161, 161-62; Truth in Lending Act Amendments of 1995, Pub. L. No. 104-29, § 3, 109 Stat. 271, 272-73. These actions were taken in response to the Eleventh Circuit's decision in *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142 (11th Cir. 1994), which had held that a creditor's minor TILA violations triggered a debtor's right to rescind. *See* RALPH J. ROHNER & FRED H. MILLER, TRUTH IN LENDING ¶6.01[2] (Robert A. Cook et al. eds., 2000). "In taking this step, Congress made manifest that although it had designed the TILA to protect consumers, it had not intended that lenders would be made to face overwhelming liability for relatively minor violations." *McKenna,* 475 F.3d at 424.

The Andrews also make an argument flowing from the language of the "additional relief" subsection of § 1635, and the attorney's fees subsection of TILA's damages provision, § 1640. Section 1635(g) provides that "[i]n any action in which it is determined that a creditor has violated

this section, in addition to rescission the court may award relief under section 1640," that is, damages. § 1635(g). Section 1640(a)(3), in turn, provides that attorney's fees are recoverable in a successful action to enforce § 1640 liability (i.e., liability for damages) "or in any action in which a person is determined to have a right of rescission under section 1635." § 1640(a)(3). The Andrews contend that this parallel use of the phrase "in any action" in § 1635(g) and § 1640(a)(3) means that rescission is available "in any action," including class actions.

There is no support for this novel argument, which rests on a faulty reading of § 1635(g) and § 1640(a)(3), treating § 1635(g) as the center of all remedial relief available under TILA. Section 1635(g) is a simple remedial cross-reference; it provides that rescission plaintiffs may also seek damages under § 1640. It does no more. Section 1640(a)(3) simply provides that attorney's fees are recoverable in a successful action for damages *or* a successful action for rescission. It does no more. The use of the phrase "in any action" in these provisions carries no meaning for the question of whether TILA permits rescission class actions.

Finally, we note that creating a circuit split generally requires quite solid justification; we do not lightly conclude that our sister circuits are wrong. Here, the Andrews have not persuaded us that the First and Fifth Circuits have misinterpreted the operative provisions of TILA. We now join those circuits in concluding that TILA's rescission remedy, § 1635, may not be pursued on a class basis. *McKenna,* 475 F.3d at 427; *James,* 621 F.3d at 731.

We note for completeness that the fundamental incompatibility between the rescission remedy under TILA and

No. 07-1326                                                            13

the class-action device raises serious questions as to whether a TILA rescission class could ever be properly certified under Federal Rule of Civil Procedure 23(b).[2] A Rule 23(b)(2) class may be maintained when "*final* injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2) (emphasis added); *see Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 897-98 (7th Cir. 1999) (noting Rule 23(b)(2)'s requirement of "final relief"). As we have explained, a declaration of a "rescission class" would only *initiate* a process of individual rescission actions. Significant individual aspects of the remedy, varying with each consumer's loan transac-

---

[2] The Andrews suggest that our review is limited to the question of whether TILA permits the certification of a class of rescission plaintiffs, arguing that we may not consider on this interlocutory appeal whether a rescission class could satisfy the requirements of Rule 23. To the contrary, under Rule 23(f), appellate courts may grant a discretionary interlocutory appeal and may consider those issues related to a district court's certification decision. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1802.2 (3d ed. 2005); *see also In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 106 (D.C. Cir. 2002) (holding that "review is limited to issues that relate to class certification"). Accordingly, the issue of whether a rescission class meets the requirements of Rule 23 is precisely within our purview. *In re Lorazepam*, 289 F.3d at 106-07. The same is not true, however, of the Andrews' request that we review the district court's failure to certify a class for statutory damages. The district court denied statutory damages and therefore never reached the issue of class certification for statutory damages.

tion, would remain to be worked out before each of the transactions could be unwound. Rather than settling the legal relations at issue, a judicial declaration in this situation would be essentially advisory. *See Gibbons v. Interbank Funding Group*, 208 F.R.D. 278, 285 (N.D. Cal. 2002) ("Without any rescission requests, nor subsequent denials by defendants, it is not at all clear that a justiciable controversy exists between the class and defendants."). The rescission remedy is so inherently personal that a court cannot venture further while addressing the plaintiffs as a class; it can do no more than simply declare that a certain group of plaintiffs have the right to *initiate* rescission, and that is not a form of "final" declaratory relief under Rule 23(b)(2).

Likewise, to certify a class under Rule 23(b)(3), common questions of law and fact must predominate over questions affecting individual members, and the class-action device must be superior to other methods of adjudicating the controversy. The Andrews strain to meet the predomination and superiority requirements here. *See, e.g., In re Mex. Money Transfer Litig.*, 267 F.3d 743, 746 (7th Cir. 2001). If the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how common issues predominate or how a class action would be the superior means to adjudicate the claims. The Andrews acknowledge that the district court will be called upon, if the class certification is upheld, to establish individual rescission procedures that will both meet the needs of each class member and assist Chevy Chase in recovering the loan principal on each transaction without risking the immedi-

No. 07-1326                                                    15

ate loss of its security interest. Under these circumstances,
proceeding as a class to "unwind" hundreds or thousands
of individual credit transactions would not promote the
primary purposes of the class-action mechanism: judicial
economy and efficiency. *See McKenna*, 475 F.3d at 427; *see
also* 1 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON
CLASS ACTIONS § 1:1, at 3 (4th ed. 2002) ("A class action is
a procedural device . . . that can accomplish significant
judicial economies."). Using a class action to resolve a
multitude of individual, varied rescission claims is neither
"economical" nor "efficient" in any sense of those terms.

   The Andrews argue that a class action is superior
because it is the only realistic means for recovery. But they
do not dispute that under TILA a prevailing debtor with a
typical loan can expect to receive over $50,000, plus attor-
ney's fees and costs, in a rescission action and that
many debtors do in fact bring rescission claims. Simply
put, TILA rescission is not the sort of remedy that
would not otherwise be sought unless the class-action
mechanism were available.

   For the foregoing reasons, we hold as a matter of law that
a class action for the rescission remedy under TILA may
not be maintained. The judgment of the district court is
therefore REVERSED, and the case is REMANDED with
instructions to vacate the class-certification order.

EVANS, *Circuit Judge*, dissenting. The majority acknowl-edges that the Andrews/Chevy Chase mortgage loan agreement was "complex, with a potential trap for the unwary." With that statement, I certainly agree. The loan's seductive Siren call of a 1.95 percent interest rate with a five-year fixed monthly payment of $701.21—the real implications of which were not fully explained as required by the Truth in Lending Act (TILA)—was a booby trap waiting to explode. And explode it did. So the Andrews filed this suit on behalf of themselves and others who answered the Siren call. The district court certified the case as a class action seeking rescission, but its order was stayed pending the outcome of this interlocutory appeal. Today, the majority holds that the case may not continue against the mortgagee bank as a class action for rescission. With that conclusion, I cannot agree.

At this point in time, our case presents two questions: (1) What did Congress intend?; and (2) if its intent cannot be ascertained with certainty, who should pay the price of an ambiguous statute? As I see it, the answers to both questions favor affirming the district court's decision.

Assuming it can be fairly identified, congressional intent is the touchstone. As the majority recognizes, we must first start with the statutory language itself. If the statute is unambiguous, it controls, and a court has no business substituting its view of good policy for that of Congress. Indeed, unambiguous language must be given effect unless it produces results that are "absurd." *See Evans ex rel. Evans v. Lederle Laboratories*, 167 F.3d 1106, 1111 (7th Cir. 1999); *United States v. Thomas*, 77 F.3d 989, 992 (7th Cir. 1996). The

majority found the language of 15 U.S.C. § 1635 ambiguous, and so it looked to evidence beyond the statutory text to determine congressional intent. That is not necessary. TILA *does* distinguish between claims for damages and claims for rescission, but the distinction does not support the majority's conclusion. The fact that there is a cap on damages in class actions may, in the abstract, suggest Congress sought to shield lenders from massive liability. But we don't address the matter in the abstract. Congress wrote a statute, and if it sought to further such a policy in the rescission context, we should assume it would have said so. The majority shrugs off too lightly the Supreme Court's command—"[i]n the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) (quoting Fed. R. Civ. P. 1). And this result can be squared with the idea that TILA rescission is a personal remedy. Affirming the district court would not mean automatic rescission of each class member's loan. The district court only held that "each class member may rescind if he or she wishes to do so." *Andrews v. Chevy Chase Bank, FSB*, 240 F.R.D. 612, 622 (E.D. Wis. 2007). What rescission would look like for each individual class member—the "unwinding" process the majority describes—may well prove too complicated to satisfy the Rule 23 dictates in a given case. But that does not mean a TILA rescission class action may not be maintained *as a matter of law*.

18                                    No. 07-1326

If we suppose that the statute is ambiguous—it may or may not authorize class actions for rescission—the majority's conclusion is still in doubt. Although the majority thinks it clear that rescission class actions are not authorized, that construction takes more than a little massaging. If the statute is unclear, the question becomes: Who should pay the price of Congress's sloppy drafting? The majority's decision places the burden on the victims of a TILA violation, not on the perpetrator of the violation. True, withholding the class action mechanism is not the same as precluding relief altogether, but it still stands as a procedural obstacle. If Congress intended to preclude rescission class actions, it should amend the statute and correct the error itself. When a court cleans up Congress's mess, it only encourages poor drafting. And if the court gets it wrong—a hazard of judicial guesswork—then all suffer. Rather than forcing a statute to further a policy vision that may or may not be shared by Congress, it is better to acknowledge ambiguity and construe the statute in the way most supported by the statute's language and in a fashion that protects the innocent, not the guilty.

For these reasons, I dissent from the majority opinion.