**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) | MDL No. 1715 |
| _____ | ) ) | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO ALL INDIVIDUAL ACTIONS | ) ) ) ) ) | Centralized before Judge Marvin E. Aspen |

**OPT-OUT PLAINTIFFS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO CLARIFY
NOVEMBER 7, 2006 MEMORANDUM OPINION AND ORDER**

In light of an impasse in the mediation process, the opt-out plaintiffs filed a motion to clarify this Court's November 2, 2006 order on two disputed issues 1) whether plaintiffs may only file one summary judgment motion on behalf of all plaintiffs and concerning all claims and legal theories; and, 2) whether discovery in all MDL opt-out cases must be completed before dispositive motions may be filed. Plaintiffs also requested and continue to request that the Court hold a status hearing.

In response to plaintiffs' motion, Ameriquest complains at length about the number of new cases being added to the MDL, and again suggests that all individual MDL cases should be on equal footing and an identical schedule, despite their own admissions as to the differences between the cases. However, Ameriquest fails to address crucial issues such as (1) what is left to mediate for the majority of cases in which the plaintiffs have rejected Ameriquest's take it or leave it settlement offer, (2) why should individual cases filed as long as four years ago in which mediation has already failed continue to be delayed because other

1

plaintiffs are filing new individual cases, and (3) how can one summary judgment motion possibly be filed to cover hundreds of different individual cases?

Indeed, the fact that hundreds of new cases have been filed provides the strongest support for plaintiffs' motion for clarification. Ameriquest urges this court to delay all motions until the current March 9, 2009 discovery cut-off expires, while admitting that at least 46 new cases are not at issue, at least 41 new cases are pending before the MDL panel awaiting transfer orders, and at least new 9 cases have been transferred, but have not actually reached this court. It is obvious that the March 9, 2009 discovery cut-off will need to be extended for the new cases, at the very least, and that new discovery cut-off dates will need to be set as new cases are added to the MDL down the road.[1] Given that fact, it is simply not practical to have a unified schedule for all of the individual cases, just as it is not practical to have one summary judgment motion for all of the individual cases.

Requiring plaintiffs in the oldest individual cases to wait until the new cases have caught up procedurally will result in endless delay, and, given the current subprime mortgage crisis, justice delayed may indeed be justice denied for many of the individual plaintiffs. For example, plaintiffs' counsel have been informed that WM Specialty Mortgage, LLC, the holder of many individual plaintiffs' mortgage loans, is either the subject of a recently filed bankruptcy or an FDIC takeover. Although Ameriquest attempts to minimize the impact of further delay in this case, for many plaintiffs, further delay may severely limit or even eliminate their ability to

---

[1] One way of addressing this problem might be to group cases by age, and to set rolling discovery cut-offs based on the age of the cases in each group. If the cases are not suitable for summary judgment, and the majority are not, the cases could then be returned to their original courts for trial. Plaintiffs suggest that the issue of how to deal with new cases is one of the many issues that could be addressed at a status conference.

recover for meritorious claims.

The fact that Ameriquest has not moved to dismiss new claims it believes to be time barred,[2] and has chosen not to pursue discovery since the impasse in the mediation was reached should not prevent plaintiffs from advancing their claims. If some claims are indeed time barred or the subject of a release, Ameriquest should file the appropriate motions now, rather than insisting that all plaintiffs be treated equally and offered the same take it or leave it settlement offers. Eliminating plaintiffs with invalid claims would greatly assist in the mediation process, as it would allow the parties to focus on plaintiffs with meritorious claims. How can Ameriquest claim to be mediating in good faith when it is currently making the same offers to plaintiffs with allegedly time barred and released claims as it is making to everybody else? It is clear that Ameriquests' real strategy is to delay these cases and the mediation process for as long as possible so that financially desperate plaintiffs will eventually give up and be forced to accept its meager take it or leave it offers.

Although Ameriquest desires to treat the individual cases like one big class action,[3] this is not a class action case; it is a large group of individual cases, each with its own distinctive facts, differing legal theories, and differing strengths.[4] Some cases have claims which

---

[2] This Court has already dismissed some claims that it found to be time barred, on June 25, 2007, and rejected Ameriquests' theories as to why other claims might be time barred.

[3] This is one of the reasons for the impasse in mediation, as Ameriquest has insisted on making the same take it or leave it offer to each plaintiff with a paid off loan, and has refused to consider demands from individual plaintiffs. The only exception is loan modifications, which appear to be based only on the individual plaintiffs' financial situations, and not on the strength of their claims. Plaintiffs who, in defendants' opinion, can "afford" their loans, are not being offered loan modifications, regardless of the strength of their rescission and fraud claims.

[4] Indeed the Seventh Circuit has recently made it clear that rescission cases must be handled on an individual basis. Andrews v. Chevy Chase Bank, no. 07-1326 (Sep. 24, 2008).

implicate third parties, and some don't.[5] Some cases involve claims which have already been definitely resolved by the Seventh Circuit, and others have untested claims. Some cases involve paid off loans with small rescission amounts, and others involve open mortgages with very large rescission amounts. Some have only federal Truth in Lending Act claims, while others also have a variety of state law fraud and deceptive practice claims.

Given these facts, it is next to impossible for the hundreds of individual plaintiffs to file one consolidated summary judgment motion. It may be possible to file consolidated motions with groups of plaintiffs on certain common legal issues, and plaintiffs have therefore offered to allow other plaintiffs with the same claims to join their motions (which both involve groups of plaintiffs), should this Court so desire.

Many of the issues raised by Ameriquest are either irrelevant and/or misleading. For example, Ameriquest complains that discovery so far has been "one-sided," but the depositions to which Ameriquest refers actually took place in the class cases. In addition, both plaintiffs and Ameriquest have produced basic documents in the individual cases. Ameriquest also asserts that most plaintiffs are not in danger of foreclosure in an apparent attempt to justify further delay. The status of plaintiffs' loans is completely irrelevant to the issue of whether plaintiffs should be allowed to file summary judgment motions, and to their right to recover for Ameriquests' violations of the law. It is also untrue that the fact that a loan has been paid off means there is no danger of home loss. Ameriquests' loan transactions resulted in a substantial loss in equity for most plaintiffs, which is not remedied by a subsequent refinance, and which

---

[5] For example, blank notice cases involve third party title companies, whereas cases involving Ameriquest's own seven day cancellation form do not.

has contributed to many plaintiffs being "upside down" on their new loans. A prompt recovery in this case would certainly help remedy that type of situation, as it would enable plaintiffs to regain some of their lost equity.

Ameriquest contends that the Edelman firm has admitted that it filed its motion for summary judgment to get its clients some type of unfair advantage in the mediation process. This is completely untrue. What the Edelman firm actually said was that the entire Individual Claimants Steering Committee was aware of and supported their plan to file the motion because they all believed that rulings from the court on certain issues would assist all of the plaintiffs in the mediation process. The primary issue plaintiffs were referring to was the issue of assignee/holder liability for rescission claims, which necessarily must be decided in deciding both the Edelman and Blinn summary judgment motions. The assignees/holders have so far been unwilling to contribute anything to the settlement process, despite the fact that plaintiffs maintain they are equally liable for satisfying rescission judgments.[6] The Individual Claimants Steering Committee believes that a ruling from this Court on this issue would be instrumental in advancing the mediation process, assuming defendants are actually willing to back away from their current "take it or leave it" settlement posture.

Ameriquest further complains that new and third parties being added to the case will somehow be harmed by allowing plaintiffs to file summary judgment motions. However, as noted above, the current summary judgment motions do not implicate any third parties, as they involve Ameriquests' own internal forms. Moreover, the vast majority of new parties are either

---

[6] Judge Dow recently ruled in plaintiffs' favor on this issue in a non-MDL Ameriquest case, Hubbard v. Ameriquest Mortgage Co., 2008 U.S.Dist. LEXIS 75799 (Sep. 30, 2008), but a ruling from this Court would be of more assistance to the parties in the MDL cases.

servicers, who are merely necessary parties against whom no relief is generally being sought, or subsequent assignees. Subsequent holders have no need for unique discovery, and most are being represented by the same counsel as Ameriquest.

Ameriquest finally suggests that further delay is appropriate in order to determine what government assistance may be available to plaintiffs. Ameriquest and other defendants are liable for the violations of the law regardless of what loan modifications the government might make available to certain homeowners in financial distress. Plaintiffs in these cases have valid legal claims against Ameriquest, and a recovery in those claims may make government assistance unnecessary. Moreover, the governmental programs being offered so far are (1) generally only available to homeowners who are in default, (2) only offer interest rate reductions, not the principal reductions plaintiffs are entitled to under TILA, and (3) require homeowners to make certain concessions that plaintiffs should not be required to make, such as giving up the right to subsequent appreciation in home values. Finally, it is plaintiffs' understanding, based on conversations with defense counsel, that the loan modifications being offered in the mediation are already taking existing governmental modification programs into account, and many plaintiffs have already been informed that they do not qualify for a modification, or have been offered a "modification" that does not actually modify their loan terms. Those plaintiffs should not be required to suffer endless delays of their case because some other plaintiff might possibly qualify for a new governmental program.

## **CONCLUSION**

For the reasons stated above, this Court should grant the Individual Claimants'

Steering Committee's motion to clarify.

                                              Respectfully Submitted, the Individual Claimants'
                                              Steering Committee,

                                              By: <u>s/Charles Delbaum</u>
                                                  National Consumer Law Center
                                                  7 Winthrop Square, 4th Floor
                                                  Boston, MA 02110
                                                  (617) 542-8010
                                                  (617) 542-8028 (FAX)

                                              By: <u>s/Daniel S. Blinn</u>
                                                  Daniel S. Blinn
                                                  Consumer Law Group, LLC
                                                  35 Cold Springs Road, Suite 512
                                                  Rocky Hill, CT 06067
                                                  (860) 571-0408
                                                  (860) 571-7457 (FAX)

                                              By: <u>s/ Tara L. Goodwin</u>
                                                  Tara L. Goodwin
                                                  Edelman, Combs, Latturner & Goodwin, LLC
                                                  120 S. LaSalle St., Ste. 1800
                                                  Chicago, IL 60603
                                                  (312) 739-4200

**CERTIFICATE OF SERVICE**

        I, Tara Goodwin, hereby certify that on October 14, 2008, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Caryn Becker
Cbecker@lchb.com, glewi@lchb.com, rgeman@lchb.com

Brandon A. Block
bblock@buchalter.com

Jill Henniger Bowman
jbowman@jameshoyer.com

James Michael Dash
jdash@muchshelist.com

Charles M. Delbaum
cdelbaum@nclc.org

Kelly M. Dermody
kdermody@lchb.com

Daniel Mark Harris
lawofficedh@yahoo.com

Stanley L. Hill
stanhill@hegsinet.net

Evan Jay Kaufman
ekaufman@lerachlaw.com

Shennan Kavanagh
kavanagh@roddykleinryan.com

Keith James Keogh
Keith@Keoghlaw.com, Linda@Keoghlaw.com

Synde B. Keywell
skeywell@ngelaw.com,

kdalsanto@ngelaw.com

Stephen Philip Kiloler
skikoler@muchshelist.com

Gary Edward Klein
klien@roddykleinryan.com

Bernard E. LeSage
blesage@buchalter.com

Jonathan N. Ledsky
jledsky@vblhc.com, sortega@vblhc.com

Richard Andre Lilly
rlilly@ademilaw.com

Greg J. Miarecki
gmiarecki@winston.com, ppratt@winston.com, ECF_CH@winston.com

Marvin Alan Miller
mmiller@millerfaucher.com, jramirez@millerfaucher.com, snyland@millerfaucher.com

Elizabeth Monkus
emonkus@keoghlaw.com, linda@keoghlaw.com

Melinda J. Morales
mmorales@muchshelist.com, rmclarney@muchshelist.com

Andrew G. Pizor

apizor@consumerlawgroup.com

Dominic J. Rizzi
drizzi@millerfaucher.com

Samuel H. Rudman
srudman@lerachlaw.com

Craig Allan Varga
cvarga@vblhc.com

Thomas Joseph Wiegand
twiegand@winston.com,
ECF_CH@winston.com

Lorne Todd Saeks
lsaeks@muchshelist.com

Terry A. Smiljanich
tsmiljanich@jameshoyer.com,
dstephens@jameshoyer.com,
jbowman@jameshoyer.com,
lmartin@jameshoyer.com

Kristina M. Van Buskirk
Kvanbuskirk@ngelaw.com

Respectfully Submitted, the Individual Claimants'
Steering Committee,
   (312) 419-0379 (FAX)
By: s/Charles Delbaum
  National Consumer Law Center
  7 Winthrop Square, 4th Floor
  Boston, MA 02110
  (617) 542-8010
  (617) 542-8028 (FAX)

By: s/Daniel S. Blinn
  Daniel S. Blinn
  Consumer Law Group, LLC
  35 Cold Springs Road, Suite 512
  Rocky Hill, CT 06067
  (860) 571-0408
  (860) 571-7457 (FAX)

By: s/ Tara L. Goodwin
  Tara L. Goodwin
  Edelman, Combs, Latturner & Goodwin, LLC
  120 S. LaSalle St., Ste. 1800
  Chicago, IL 60603
  (312) 739-4200