UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) | MDL No. 1715 Lead Case No. 05-7097 |
| AMERIQUEST MORTGAGE CO., a Delaware Corporation; and ARGENT MORTGAGE COMPANY LLC, a Delaware limited liability company, | ) ) ) ) ) ) | |
| Defendants/Third-Party Plaintiffs, | ) ) ) | Centralized before the Honorable Marvin E. Aspen |
| v. | ) ) | |
| NORTHWEST TITLE AND ESCROW CORPORATION, a Minnesota corporation, et al., | ) ) ) ) | |
| Third-Party Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

      Presently before us is Certain Third-Party Defendants'[1] Consolidated Motion to Dismiss the Second Amended Consolidated Third-Party Complaint (Dkt. No. 2034), filed on March 14, 2008. In the Third-Party Complaint, Ameriquest Mortgage Co. ("AMC") and Argent Mortgage Company LLC ("Argent") (collectively, "Ameriquest") contend that, if the allegations of the

---

[1] Approximately 115 third-party defendants ("Third-Party Defendants") have joined in this motion, seeking dismissal of the Second Amended Consolidated Third-Party Complaint (Dkt. No. 1657-2) ("Third-Party Complaint"). (*See* Mot., Ex. A) (identifying Third-Party Defendants participating in the motion.)

Borrower Complaint[2] are found to be true, Third-Party Defendants breached their contracts with Ameriquest and engaged in negligent conduct. Ameriquest claims that Third-Party Defendants – a group consisting of closing agents, title underwriters and mortgage brokers – are wholly responsible for any TILA violations stemming from the alleged failure to provide appropriate NORTC forms. Ameriquest alleges that each of the Third-Party Defendants breached its contractual promise to Ameriquest to deliver compliant NORTC forms. Ameriquest seeks damages as a remedy for Third-Party Defendants' misconduct, as well as equitable indemnity and contribution. For the reasons set forth below, we grant the motion in part and deny it in part.

## BACKGROUND

According to the Third-Party Complaint, Ameriquest and each Third-Party Defendant entered into contracts whereby Third-Party Defendants agreed to negotiate and/or close mortgage loans in exchange for consideration. (Third-Party Compl. ¶¶ 8-17.) Third-Party Defendants allegedly "warranted . . . that they would accurately complete a [NORTC] form with respect to each loan that they closed, and would provide Ameriquest's borrower(s) with the correct number of copies of the completed form." (*Id.* ¶ 8 (summarizing obligations of Third-Party Defendants hired by AMC); *see also id.* ¶¶ 12-16 (summarizing obligations of Third-Party Defendants hired by Argent).) Ameriquest alleges that the TILA claims asserted by relevant plaintiffs in the Borrower Complaint "relate to duties that should have been carried out by" Third-Party Defendants. (*Id.* ¶ 10; *see also id.* ¶ 17.) Thus, if the TILA claims from the

---

[2] The Borrowers' First Amended Consolidated Class Action Complaint (Dkt. No. 835-1) ("Borrower Complaint") alleges – among many other things – that Ameriquest violated the Truth in Lending Act ("TILA") by failing to "provide statutorily mandated material disclosures," including the required Notice of Right to Cancel form ("NORTC form"). (Borrower Compl. ¶¶ 255-60.)

Borrower Complaint are found to be true because NORTCs were not properly delivered, Third-Party Defendants breached their contractual duties to Ameriquest. (*Id.* ¶¶ 21, 40, 45.)

In the Second and Seventh Causes of Action, Ameriquest further alleges that it suffered damages when Third-Party Defendants breached their duty "to follow any and all federal and state laws relating to required disclosures in connection with mortgage loans, including, but not limited to, the [NORTC]." (*Id.* ¶¶ 24, 48.) In addition to the contract and negligence causes of action, Ameriquest also alleges that, under principles of equity, it is entitled to equitable indemnification or contribution from Third-Party Defendants "in an amount sufficient to reimburse Ameriquest for any judgment, settlement, attorneys' fees, costs, or other equitable relief" incurred for the TILA violations. (*Id.* ¶¶ 30, 35, 54, 59.) Ameriquest essentially contends that Third-Party Defendants should be liable for the alleged failure to provide compliant NORTC forms because it was Third-Party Defendants' responsibility (whether by contract or otherwise) to make the appropriate disclosures.

## STANDARD OF REVIEW

A motion to dismiss under 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, a court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of

the elements of a cause of action." *Twombly*, 127 S. Ct. at 1964-65; *Killingsworth*, 507 F.3d at 618-19. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *see also* Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't. of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

## ANALYSIS

### A. Contract Claims

Third-Party Defendants contend that the First, Fifth, and Sixth Causes of Action should be dismissed because Ameriquest has not adequately identified the alleged contracts at issue. (Mem. at 4-5; Reply at 2-3.) Ameriquest disagrees, arguing that the Third-Party Complaint is sufficient to give Third-Party Defendants fair notice of the claims against them. (Resp. at 7-8.) Ameriquest adds that it chose not to attach the hundreds of relevant contracts to the Third-Party Complaint to give effect to our March 16, 2007 order (Dkt. No. 615) requiring Ameriquest to streamline this aspect of the litigation to the extent possible. (Resp. at 7.)

To state a claim for breach of contract in Illinois,[3] a plaintiff must plead "(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff." *Priebe v. Autorbarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (quoting *Hickox v. Bell*, 195 Ill. App. 3d 976, 992, 552 N.E.2d 1133, 1143 (5th Dist. 1990)); *see Patel v. Boghra*, No. 07 C 6557, 2008 WL

---

[3] Neither party suggests that a choice-of-law analysis would be relevant to this issue.

2477695, at *5 (N.D. Ill. June 18, 2008); *Sabratek Liquidating LLC v. KPMG LLP*, No. 01 C 9582, 2002 WL 774185, at *2 (N.D. Ill. Apr. 26, 2002).  When evaluating the sufficiency of the allegations, we rely on the liberal federal notice pleading standard, the purpose of which "is simply to provide a defendant with enough information to prepare a defense." *Sabratek Liquidating LLC*, 2002 WL 774185, at *2; *see Twombly*, 127 S. Ct. at 1964; *Zurich Capital Mkts. Inc. v. Coglianese*, No. 03 C 7960, 2005 WL 1950653, at *8 (N.D. Ill. Aug. 12, 2005) (observing that, in federal court, "complaints need not contain elaborate factual recitation").  With these principles in mind, we conclude that the allegations of the Third-Party Complaint are sufficient to state a claim for breach of contract.

Although Third-Party Defendants argue that the Third-Party Complaint fails to identify the alleged contracts, we find the allegations sufficient to withstand a Rule 12(b)(6) challenge. Ameriquest admittedly, and intentionally, did not list each of the individual contracts by name. (Resp. at 7.)  Nonetheless, Ameriquest attached two charts to the Third-Party Complaint, which identify: (1) the names of the relevant Borrower plaintiffs who sued Ameriquest; (2) the case information for those underlying suits; (3) the Third-Party Defendant(s) involved in the disputed transactions; and (4) the approximate date of the agreement between the Third-Party Defendant(s) and AMC or Argent.  (Third-Party Compl., Exs. A and B.)  Thus, for example, Exhibit A states that Borrower plaintiffs Glenn and Laverne Adams sued Ameriquest for claims arising from a transaction handled by Third-Party Defendant Northwest Title and Escrow Corporation, pursuant to its February 9, 2004 agreement with AMC and/or Argent.  (*Id.*, Ex. A at 1.)  The Third-Party Complaint further indicates that the contracts referenced in Exhibits A and

B are valid and enforceable.[4] (*Id.* ¶¶ 19, 37, 43.)

Third-Party Defendants discount the Exhibits' usefulness and lament that Ameriquest did not explain the contents of the purported contracts. (Mot. at 4-5; Reply at 3.) While the Third-Party Complaint does not offer much detail on the terms of the contracts, particularly given its consolidated nature, it plainly alleges that Third-Party Defendants had a contractual duty to provide necessary disclosures, including NORTC forms, to Ameriquest's borrowers. (Third-Party Compl. ¶¶ 20, 38, 44.) Ameriquest also explicitly alleges that Third-Party Defendants' failure to deliver those disclosures breached their contracts with AMC and/or Argent with respect to that duty. (*Id.* ¶¶ 21, 40, 45.) Accordingly, we are not convinced by Third-Party Defendants' argument that they are "left to guess . . . what alleged breach is implicated." (Reply at 3.) No matter what the other contractual provisions might be, Ameriquest has identified at least one substantive term, allegedly common to all contracts, supporting its breach of contract claims. Ameriquest may not have expressly named each of the pertinent contracts[5] or pled every relevant detail, but they are not required to do so under Rule 8. The allegations of the Third-Party Complaint are sufficient to give Third-Party Defendants fair notice of the contract actions

---

[4] Third-Party Defendants do not contend, nor could they, that Ameriquest failed to allege the second, third or fourth elements of a contract action. The Third-Party Complaint states that: (1) AMC and Argent fully performed their duties under the contracts; (2) Third-Party Defendants breached their contractual obligations to provide required disclosures; and (3) AMC and Argent suffered damages as a result of such breaches, including damages to their reputations and goodwill. (Third-Party Compl. ¶¶ 19-22, 37-41, 43-46.)

[5] The Third-Party Complaint provides some additional detail with respect to contracts between Argent and Third-Party Defendants. It indicates that Argent entered into "Mortgage Broker Agreements" with various mortgage brokers. (Third-Party Compl. ¶ 13.) The Third-Party Complaint also alleges that other Third-Party Defendants – closing agents and title underwriters – agreed to binding "Escrow Lending Instructions" with Argent and undertook obligations pursuant to "Closing Protection Letters." (*Id.* ¶¶ 14-15.)

against them and enable them to conduct a meaningful investigation into such claims and possible defenses. *Twombly*, 127 S. Ct. at 1964 (requiring only that the complaint set out enough detail to give defendant "fair notice" of a plausible claim). Accordingly, we deny Third-Party Defendants' motion with respect to the contract claims.

B.     **Negligence**

In the Second and Seventh Causes of Action, Ameriquest alleges that – if NORTC forms were not properly delivered – Third-Party Defendants negligently violated their "duty to follow any and all federal and state laws relating to required disclosures with mortgage loans including, but not limited to, the [NORTC]." (Third-Party Compl. ¶¶ 24, 48.) In challenging these allegations, Third-Party Defendants rely on our March 5, 2008 opinion (Dkt. No. 2003) ("CRA Opinion"), in which we dismissed Ameriquest's third-party negligence claim against several credit reporting agencies. *In re Ameriquest Mortgage Co.*, No. 05 C 7097, 2008 WL 630883, at *9 (N.D. Ill. Mar. 5, 2008). Third-Party Defendants contend that we should dismiss this claim because Ameriquest has not alleged that they owed it any duty. We agree.

"To prevail in an action for negligence, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach." *Adams v. N. Ill. Gas Co.*, 211 Ill. 2d 32, 43, 809 N.E. 2d 1248, 1257 (Ill. 2004). "Duty is a question of whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* at 44, 809 N.E. 2d at 1257. As we stated in the CRA Opinion, "[t]he existence of a duty owed to the plaintiff by the defendant is the . . . cornerstone of a negligence action" and that duty is similarly absent here. *In re Ameriquest*

*Mortgage Co.*, 2008 WL 630883, at *9.

Although the Third-Party Complaint states that Third-Party Defendants had a duty to obey federal laws concerning mortgage loan disclosures, TILA imposes no such duty on them.[6] On its face, TILA burdens only *creditors* with disclosure obligations. *See* 15 U.S.C. §§ 1631, 1635; *see, e.g., Vallies v. Sky Bank*, 432 F.3d 493, 496 (3d Cir. 2006) (observing that TILA's regulation "vests the duty of disclosure on the, and only the, actual creditor"); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 431 (S.D.N.Y. 2003) (holding that TILA does not permit conspiracy or aiding and abetting actions because the statute does not "extend [a creditor's disclosure] duty or the benefits of that duty to anyone else"); *Robey-Harcourt v. Bencorp Fin. Co.*, 212 F. Supp. 2d 1332, 1333 (W.D. Okla. 2002) ("Congress has chosen to make TILA's disclosure obligations and related duties applicable only to creditors."). As Third-Party Defendants correctly point out, Ameriquest has not alleged that Third-Party Defendants are "creditors" for purposes of TILA liability. (Mot. at 7; Reply at 4.) Accordingly, Third-Party Defendants had no statutory duty to deliver proper NORTCs to Ameriquest's borrowers.

Ameriquest does not contest this point in its response but rather argues that a duty arose when it "hired the Third-Party Defendants for the express purpose of closing loans." (Resp. at 11.) If true, however, Ameriquest has described only the contractual duty discussed earlier – not an extracontractual duty necessary to state a claim for negligence. *See, e.g.*, *Prime Leasing, Inc.*

---

[6] This opinion specifically addresses Ameriquest's claim that Third-Party Defendants should be liable for negligence relating to TILA violations. Indeed, TILA is the only statute mentioned specifically in the Third-Party Complaint. (*See* Third-Party Compl. ¶¶ 25, 29, 49, 53.) The parties have not briefed, and we are in no position to resolve, whether Ameriquest could sue Third-Party Defendants for negligence stemming out of any alleged violations of state mortgage loan disclosure statutes. (*See id.* ¶¶ 24, 48.)

*v. Kendig*, 332 Ill. App. 3d 300, 311-12, 773 N.E.2d 84, 94-95 (1st Dist. 2002) (summarizing the Illinois economic loss doctrine, which provides that "tort law is not intended to compensate parties for monetary losses suffered as a result of duties which are owed to them simply as a result of contract") (internal quotation omitted). Ameriquest has not identified any plausible source of Third-Party Defendants' duty and, therefore, we dismiss the negligence claims.[7]

### C. Equitable Indemnity and Contribution

With respect to the equitable indemnity and contribution claims, Ameriquest alleges that any loss it might suffer from judgment or settlement in the Borrower action "is directly attributable to [Third-Party] Defendants," who were responsible for closing the loans and/or interacting directly with Ameriquest's borrowers. (Third-Party Compl. ¶¶ 28, 32, 52, 56.) Ameriquest states that it relied on Third-Party Defendants' promises to comply with TILA and had no reason to know that they would break those promises. (*Id.* ¶¶ 29, 33-34, 53, 57-58.)

---

[7] In its response, Ameriquest claims that the Third-Party Complaint states a claim for negligent misrepresentation, thus enabling them to pursue a tort claim despite potential application of the economic loss doctrine. (Resp. at 12.) *See In re Ameriquest Mortgage Co.*, 2008 WL 630883, at *7-9; *see also Bd. of Educ. of City of Chi. v. A,C & S, Inc.*, 131 Ill. 2d 428, 452-53, 546 N.E.2d 580, 591-92 (Ill. 1989)*; Kopley Group V, L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1017-18, 876 N.E.2d 218, 228-29 (1st Dist. 2007). The Third-Party Complaint, however, does not allege the elements necessary to plead negligent misrepresentation. *Kopley Group V, L.P.*, 376 Ill. App. 3d at 1017-18, 876 N.E.2d at 228-29; *In re Ameriquest Mortgage Co.*, 2008 WL 630883, at *7-8. Moreover, the purported misrepresentation appears to be a matter of law, which would not be actionable in Illinois. (Resp. at 12 (suggesting that Ameriquest relied on the Third-Party Defendants' representation that they would deliver compliant disclosures); *see also* Third-Party Compl. ¶¶ 29, 33-34, 53, 57-58.) *City of Aurora v. Green*, 126 Ill. App. 3d 684, 688, 467 N.E.2d 610, 613 (2d Dist. 1984) ("As a general rule, one is not entitled to rely upon a misrepresentation of law since both parties are presumed to be equally capable of knowing and interpreting the law."); *In re Ameriquest Mortgage Co.*, 2008 WL 630883, at *8. Thus, at this juncture, we deny Ameriquest's passing request for leave to add a negligent misrepresentation claim to the Third-Party Complaint. (*Id.* at 12, n.8.)

Under principles of equity, therefore, Ameriquest alleges that it is entitled to equitable indemnity and contribution. (*Id.* ¶¶ 30, 35, 54, 59.) To the contrary, Third-Party Defendants contend that Ameriquest has no right to either equitable indemnity or contribution under federal law.[8] (Mem. at 9-15; Reply at 8-10.) For similar reasons as provided in our CRA Opinion – which evaluated these claims under the Fair Credit Reporting Act ("FCRA") – we conclude that neither TILA, nor federal common law, authorize indemnification or contribution under these circumstances. *See In re Ameriquest Mortgage Co.*, 2008 WL 630883, at *3-4.

Like FCRA, TILA does not expressly authorize Ameriquest to seek indemnification or contribution from Third-Party Defendants. *See* 15 U.S.C. § 1640 (describing potential creditor and assignee liability); *McSherry v. Capital One FSB*, 236 F.R.D. 516, 520-22 (W.D. Wash. 2006) (concluding that – like FCRA – neither TILA, nor federal common law, permits contribution). Ameriquest does not argue otherwise, nor does it suggest that TILA contains an implied right to indemnification or contribution.

Given that the language of TILA itself does not support Ameriquest's claims, we next consider whether federal common law recognizes, or should recognize, indemnification and

---

[8] "Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law." *Donovan v. Robbins*, 752 F.2d 1170, 1179 (7th Cir. 1985). Because Ameriquest seeks contribution and/or indemnity for any liability in the Borrower action based on the alleged TILA violations, federal law controls.

Although Ameriquest argues that its equitable claims also stem from Third-Party Defendants' alleged violations of state law, (Resp. at 8-9), the Third-Party Complaint does not adequately plead any such claims. It does not indicate, for example, which state's laws would be implicated. To the extent that Ameriquest intends to pursue equitable claims grounded in specific state laws, it may seek leave to amend the complaint. This opinion addresses Ameriquest's equitable claims under TILA only.

contribution claims.[9]  While Ameriquest attempts to draw distinctions between the present circumstances and the holdings in *McSherry* and our earlier CRA Opinion, it nonetheless ignores the limited nature of the relief requested.[10]  The Supreme Court has commented on the limits of federal common law, stating that it need only be formulated in rare instances where "a federal rule of decision is necessary to protect uniquely federal interests" or "Congress has given the courts the power to develop substantive law."  *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S. Ct. 2061, 2067 (1981) (analyzing whether federal common law permits contribution for Sherman Act violations, where "Congress neither expressly nor implicitly intended to create" such a right under the statute itself) (internal quotations and citations omitted).  Given these guiding principles, the Seventh Circuit has acknowledged that courts are understandably "reluctant to recognize a right of contribution as a matter of either federal common law or of statute."  *Anderson v. Griffin*, 397 F.3d 515, 523 (7th Cir. 2005).  Indeed, the *Anderson* court further observed that "[a]ll . . . contribution does is add to the costs of litigation, and so unless there is a compelling reason to suppose that the legislature would want such a right to be enforced . . . it will not be."  *Id.*

As with FCRA, we find no such compelling reason to extend federal common law to allow a claim for equitable indemnity or contribution[11] for alleged TILA violations.  *See In re*

---

[9] "A right of contribution may arise under federal law in only two situations: (1) where a federal statute affirmatively creates a right of contribution, either expressly or by implication and (2) where a court interprets federal common law to create" such a right.  *Ho-Chunk Nation v. J.C. Penney Co.,* No. 98 C 3924, 1999 WL 495899, at *4 (N.D. Ill. July 2, 1999).

[10] In fact, Ameriquest does not squarely address Third-Party Defendants' arguments on this point at all.  (Mem. at 9-15; Resp. at 9-10.)

[11] "[A]lthough the decision in *Texas Industries* only addressed the right of contribution, the legal framework established . . . has been extended to indemnification."  *Kudlicki v. MDMA,*

*Ameriquest Mortgage Co.*, 2008 WL 630883, at *4-5; *McSherry*, 236 F.R.D. at 520-23. FCRA and TILA are both part of the Consumer Credit Protection Act, the purpose of which is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The focus of TILA, like FRCA, is entirely on consumer protection. Neither TILA, nor its regulations, contain any remote hint that Congress was inclined to protect the interests of lenders. To the contrary, and as discussed earlier, Congress singled out creditors to be the liable party for disclosure violations. Despite Ameriquest's insistence, (Resp. at 10), the purposes of TILA would not necessarily be served by allowing lenders to sue their subcontractors for contribution: it already permits consumers to sue creditors for complete relief. In short, Ameriquest has not suggested (through citation to caselaw or legislative history) that Congress intended to include a right to contribution or indemnification in TILA or identified any compelling need for us to do.[12] *See King v. Gibbs*, 876 F.2d 1275, 1282 (7th Cir. 1989); *see, e.g., In re Ameriquest Mortgage Co.*, 2008 WL 630883, at *4-5; *McSherry*, 236 F.R.D. at 520-23; *Ho-Chunk Nation*, 1999 WL 495899, at *4 (dismissing contribution action under Indian Arts and Crafts Act after considering statutory construction and Congressional

---

*Inc.*, No. 05-2589, 2006 WL 1308617, at *3 (N.D. Ill. May 10, 2006).

[12] Moreover, and as noted in the CRA Opinion, this controversy does not involve "uniquely federal interests" such as those found in cases concerning "the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Tex. Indus., Inc.*, 451 U.S. at 641; *see also Northop Corp. v. AIL Sys., Inc.*, 959 F.2d 1424, 1426 (7th Cir. 1992); *King*, 876 F.2d at 1282 (observing that the "right to indemnification is obviously unrelated to such areas of the law").

intent). Accordingly, we dismiss the Third, Fourth, Eighth and Ninth Causes of Action.

## CONCLUSION

For the reasons set forth above, we deny Third-Party Defendants' motion (Dkt. No. 2034) with respect to the First, Fifth and Sixth Causes of Action for breach of contract. We grant the motion as to the Third, Fourth, Eighth and Ninth Causes of Action, for equitable indemnity and contribution, and hereby dismiss these claims with prejudice. We further dismiss the Second and Seventh Causes of Action for negligence without prejudice. It is so ordered.

                                           Honorable Marvin E. Aspen
                                           U.S. District Court Judge

Dated: October 14, 2008