**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: BORROWERS' CONSOLIDATED CLASS ACTION | |

**RESPONSE TO CLASS PLAINTIFFS' MEMORANDUM OF LAW CONCERNING CLASS CERTIFICATION OF CLAIMS FOR RESCISSION UNDER THE TRUTH IN LENDING ACT**

*Bryan Andrews, et al. v. Chevy Chase Bank,* --- F.3d ----, 2008 WL 4330761 (7th Cir. 2008) unambiguously holds in its opening paragraph that TILA rescission claims must not be adjudicated on a class-wide basis because individual issues invariably predominate such claims, thus preventing a Class Plaintiff from satisfying Federal Rule of Civil Procedure 23(b). In doing so, the Seventh Circuit puts in question the class viability of all claims based on misrepresentation and wrongful disclosures alleged in the Borrowers' Consolidated Class Action Complaint ("Complaint").

As set forth in *Andrews:*

> to certify a class under Rule 23(b)(3), common questions of law and fact must predominate over questions affecting individual members, and the class-action device must be superior to other methods of adjudicating the controversy. The Andrews strain to meet the predomination and superiority requirements here. See, e.g., *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 746 (7th Cir. 2001). If the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how common issues predominate or how a class action would be the superior means to adjudicate the claims.

*Id.* at *14.

- 1 -

While *Andrews* makes clear that TILA rescission claims raise too many individualized issues to be amenable to class treatment, it underscores the fact that all of the claims in Plaintiffs' Complaint are even more individualized than TILA rescission claims and likewise cannot be certified. Even Plaintiffs cannot seriously contend that all the loans originated by Defendants were allegedly wrongful in the same way. Indeed, the Second Amended Complaint makes it clear that the alleged misrepresentations or wrongful disclosures varied not only from loan to loan, but also in terms of applicable law and resulting damages. By Plaintiffs' own allegations, not all class members were subjected to the same alleged wrongful acts, but rather each claim arises out of a case by case selection of purported wrongdoing. [Complaint,¶ 6 (the alleged "switch" consisted of "one or more" of several alleged acts as to each class member), ¶ 112(c) (class members were forced into "one or more" of several unfavorable terms).] Even when purporting to detail the wrongful acts to which the specific named Plaintiffs were allegedly subjected, Plaintiffs merely state that each was subjected to one or more of three alleged wrongful acts. [Complaint, ¶¶123-178.] And each was allegedly charged one or more types of purportedly improper fees, interest, and penalties. [Id.] Further, according to Plaintiffs, borrowers were "often", "typically" or "routinely" – but not always or uniformly – unaware of the alleged wrongful acts. [Complaint, ¶¶ 7, 8, 9, 94, 109, 111, 115, 120.] Plaintiffs further claim that Defendants trained their employees to engage "in any conduct necessary" to close the loan, an allegation that belies any claim that Defendants' purported wrongful conduct was uniform. [Complaint, ¶107.]

Compounding this lack of uniformity is the fact that Plaintiffs admittedly seek to enforce the "consumer protection laws of . . . California . . . or alternatively, the various states' consumer protection and deceptive and unfair trade practices acts", thereby requiring the application of 49 states' separate laws. [Complaint, ¶13; see also, ¶¶11, 321 – 326 (specifically invoking laws of Connecticut, Maryland, Massachusetts, Minnesota, New Jersey, Ohio, Florida, New York and Pennsylvania).] Plaintiffs further expressly assert causes of action based on specific laws of Georgia (¶¶ 130-133, 392-397), Ohio (¶¶ 402-409) and Florida (¶¶ 372- 377).

- 2 -

Further, because the wrongful acts to which each Plaintiff was purportedly subjected vary so widely, it is beyond rational dispute that the damages each suffered will also vary considerably. Plaintiffs admit as much at paragraphs 112(c) (borrowers subjected to different costs and fees); 112(d) (class members' subject to equity stripping that must be calculated individually); 120 (prepayment penalty analysis required for each loan); and 123-128, 130-142, 144-178 (some, but not all, loans included either excessive, undisclosed, and/<u>or</u> illegal interest, fees and penalties <u>or</u> Kickback and referral fees <u>or</u> illegal fees and points under specific state statues, <u>or</u> improper late charges).

Thus, Plaintiffs' own Complaint raises an abundance of factual issues that vary from loan to loan, that must be resolved under the separate laws of 49 states, using a damage analysis that will depend on the individual circumstances of each borrowers' loan and financial condition. If, as *Andrews* dictates, a loan rescission gives rise to too many individualized issues to allow class treatment, the scenario created by Plaintiffs' Complaint is necessarily unsuitable for certification as well.

Class Plaintiffs' Memorandum Of Law Concerning Class Certification Of Claims For Rescision [sic] Under The Truth In Lending Act ("Memorandum") [Docket No. 2457] impotently attempts to chip away at *Andrews*. Citing section 1640 of TILA, Class Plaintiffs seem to argue that they may continue with a rescission class despite the holding in *Andrews*. In their Memorandum, Class Plaintiffs baldly contend that "approximately 200 absent class members have rescinded their loans without filing individual actions that have been transferred to this Court." [Memorandum, p.3, fn. 3.] Plaintiffs seem to be arguing that the mere request for a rescission is sufficient to satisfy Rule 23(b) and overcome *Andrews*. Indeed, Class Plaintiffs seemingly suggest that any group of loans may be certified as a class, irrespective of the terms, borrower's financial situation, loan negotiations, etc., or ability to repay the principal of the rescinded loan, so long as a notice to rescind the loan was served. However, nowhere does *Andrews* hold (or even imply) that notice alone permits class-wide treatment of TILA rescission claims. Rather, as noted above, such a reading completely ignores *Andrews*' holding that a claim

BN 2357314v1

for rescission is incompatible with class treatment pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. *Andrews*, *12-14. Class Plaintiffs' reliance on *Handy v. Anchor Mortgage*, 464 F 3rd. 726 (7th Cir. 2006) and *Hamm v. Ameriquest Mortgage Co.*, 506 F 3rd. 525, 528 – 530 (7th Cir. 2007) misses the mark completely, as those decisions dealt with an *individual's* request for rescission and not *class-wide* rescission.

Further, section 1640 only applies to class proceedings seeking claim for economic damages and limits recovery to the lesser of $500,000 or 1 percent of the creditor's net worth. Since there are likely hundreds of thousands of putative class members, potential class recovery under TILA would likely only amount to $2 or $3 per class member. In essence, by proceeding with their class claims, Class Plaintiffs would deprive any borrower actually injured by the alleged conduct of the only recovery with actual value—rescission. As noted in *Andrews*, rescission rights are financially significant. "[U]nder TILA a prevailing debtor with a typical loan can expect to receive over $50,000, plus attorney's fees and costs, in a rescission action." 2008 WL 4330761 at *7. Under those circumstances, it is difficult to see how Plaintiffs' counsel or the named class representatives can presume to make this personal and important decision on behalf of absent class members.

Of course, individual plaintiffs can proceed with their claims for rescission provided that they opt-out of any class and proceed on an individual basis. As demonstrated by the over 600 individual Opt-Out cases that are proceeding in this Court, Class Plaintiffs have the ability to find able counsel to pursue their rescission rights and such claims are more appropriate and amenable to individual treatment.

Finally, through the Ameriquest Nationwide Settlement with the 49 Attorneys General, class-wide relief has already been offered to and rejected by the very borrowers Plaintiffs' purport to represent.[1] It is evident that, to the extent that a borrower believed that he or she was damaged by Defendants, the cash compensation was the relief plaintiffs were seeking. Rather,

---

[1] The details surrounding the Ameriquest Nationwide Settlement have been included in numerous briefs submitted to this Court—the first of which can be found at Docket No. 23. Information regarding the settlement can also be located at www.ameriquestmultistatesettlement.com.

- 5 -

these plaintiffs should be entitled to file a separate lawsuit so that they can seek to exercise any right to rescission they might have. Simply piling one class action on top of the other is neither the optimal use of this court's time, nor likely to result in any additional justice. As held by the Seventh Circuit, the class action procedure is not proper for cases with unique claims, causation, legal theories and remedies.

Accordingly, for the reasons set forth above, and in their opening brief, Defendants respectfully submit that *Andrews* compels the conclusion that the Borrowers' Consolidated Class Action Complaint is unsuitable for class treatment.

DATED: October 21, 2008

By:     /s/  Bernard E. LeSage
*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services; Ameriquest Mortgage Securities, Inc.; Town & Country Credit Corporation; Town & Country Title Services, Inc.; and ACC Capital Holdings Corporation*

Bernard E. LeSage, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
(213) 891-0700
(213) 896-0400 (fax)

- 6 -

## CERTIFICATE OF SERVICE

    I, Bernard E. LeSage, hereby certify that on this 21st day of October 2008, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Bernard E. LeSage

BN 2353424v1

BN 2357314v1