IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION )<br>)<br>)<br>)<br>)<br>) | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>Centralized before the Honorable Marvin E. Aspen |
| AMERIQUEST MORTGAGE COMPANY, a Delaware corporation; and ARGENT MORTGAGE COMPANY LLC, a Delaware limited liability company,<br><br>      Third-Party Plaintiffs,<br><br>    v.<br><br>NORTHWEST TITLE AND ESCROW CORPORATION, a Minnesota corporation, et al.,<br><br>      Third-Party Defendants. | |

**LIAISON COUNSEL'S RESPONSE TO THIRD-PARTY DEFENDANT MORTGAGE INFORMATION SYSTEM, INC.'S OBJECTION TO LIAISON COUNSEL'S PETITION FOR FEES AND EXPENSES INCURRED PRIOR TO JUNE 4, 2008**

Liaison Counsel files its response to Third-Party Defendant Mortgage Information System, Inc.'s ("MIS") Objection to Liaison Counsel's Petition for Fees and Expenses Incurred Prior to June 4, 2008 (the "Objection"), and states:

### I.    FACTUAL BACKGROUND

On September 29, 2008, Liaison Counsel filed its Supporting Documentation Detailing Liaison Counsel Fees and Expenses Prior to June 4, 2008 [Doc. No. 2423], requesting reimbursement in the discounted amount of $110,000.00. Liaison Counsel submitted documentation supporting fees in the amount of $159,154.00, an amount which was itself

discounted from a vastly larger total amount of fees that Liaison Counsel's clients, the LandAmerica Parties,[1] have paid Liaison Counsel from the outset of this case. After communicating with Third-Party Defendants about the amount of Liaison Counsel's compensation and how it should be determined, it was agreed upon by Third-Party Defendants (except MIS) that $110,000.00 divided among them, would be fair.

MIS filed the Objection on October 17, 2008, seeking to reduce Liaison Counsel's fees for time spent on matters affecting Third-Party Defendants before June 4, 2007, to zero. Not only does MIS contend that it should not have to pay Liaison Counsel any amount of fees incurred during this time period, but it also contends that no Third-Party Defendant should be required to compensate Liaison Counsel for its efforts, even though all other Third-Party Defendants agreed to the proposed amount of compensation, and no other Third-Party Defendant joined in the Objection. Because Liaison Counsel has submitted proper documentation for its time reasonably expended performing tasks that benefited Third-Party Defendants as whole up to the date of June 4, 2007, Liaison Counsel is entitled to recoup its fees in the amount of $110,000.00

## II.  ARGUMENT

### A.  Recovery of Fees Incurred by Liaison Counsel Before Its Formal Designation as Liaison Counsel

MIS contends that because Liaison Counsel was not formally designated by the Court as Liaison Counsel until June 4, 2008, that it is not entitled to any fees incurred before June 4, 2008. First, it is of no consequence that Liaison Counsel was not technically designated by the Court until June 4, 2008, as all of the work performed by Liaison Counsel prior to June 4, 2008,

---

[1] Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, Transnation Title Insurance Company, LandAmerica Financial Group, Inc., and Commonwealth Land Title Company, referred to herein as the "LandAmerica Parties."

**LIAISON COUNSEL'S RESPONSE TO THIRD-PARTY DEFENDANT MORTGAGE INFORMATION SYSTEM, INC.'S OBJECTION TO LIAISON COUNSEL'S PETITION FOR FEES AND EXPENSES INCURRED PRIOR TO JUNE 4, 2008 - Page 2**

directly benefited Third-Party Defendants, which entitles Liaison Counsel to its fees and expenses based upon principles of equity. *See State of New Jersey Dep't of Envtl. Protection v. Gloucester Envtl. Mgmt. Servs., Inc.*, 138 F.R.D. 421, 429 (D.N.J. 1991) (the court has power to "require group members to compensate and reimburse Liaison Counsel in an equitable manner"). MIS in fact received the benefit of Liaison Counsel's work insofar as all claims against MIS, except for breach of contract, have been dismissed.

Second, the Order Designating Third-Party Defendants' Liaison Counsel and Committees (the "Order") specifically provides for the "payment of fees and costs for *common benefit work* to which such attorneys may be entitled." (emphasis added). As such, the Order provides both a legal and equitable basis for the recovery by Liaison Counsel of fees and costs that benefited Third-Party Defendants as a whole.

Third, in light of the Court's March 16, 2007, order [Docket No. 615], which required Third-Party Plaintiffs to file a consolidated Third-Party Complaint, in addition to Third-Party Plaintiffs' Motion Regarding Certain Case Management Issues With Respect to Defendants' Third-Party Complaint filed on October 23, 2007 [Docket No. 1396], which specifically requested the Court to compel Third-Party Defendants to form a committee and suggest lead counsel by December 20, 2007, it became apparent that Third-Party Defendants were going to have to work through Liaison Counsel by October 2007. Therefore, it is both fair and reasonable for Liaison Counsel to recoup its fees and expenses incurred in performing tasks that benefited Third-Party Defendants as early as October 2007.

**B.     Liaison Counsel's Fee Petition is Reasonable
         and Supported by Proper Documentation**

        **1.     The Detailed Time Entries Are Appropriate**

MIS states that the daily details provided by Liaison Counsel are improper "block-billing." First, the Seventh Circuit finds that block-billing is not a prohibited practice.[2] *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006). In addition, the billing is not "block," but merely a daily diary of hours and tasks. Liaison Counsel used this format to save time and resources, as submitting each individual time entry is a laborious and unnecessary task. However, Liaison Counsel has the ability to re-submit its fees and expenses in an even more detailed format if the Court requests that it do so, even though this task would be an inefficient use of Liaison Counsel's resources. Liaison Counsel respectfully requests that MIS be ordered to pay the cost of any reformatting of the billing if the court ultimately approves the bills.

According to the Seventh Circuit, "if counsel submit[s] bills with the level of detail that paying clients find satisfactory, a federal court should not require more." *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2006) (citing *In re Synthroid Mkt'g Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). Because the LandAmerica Parties have paid all of Liaison Counsel's bills with daily diary format, the fact they were submitted in a daily fashion is irrelevant.

        **2.     The Amount of Time Expended by Liaison Counsel Was Reasonable**

            **a.     Motion to Dismiss and Related Tasks**

MIS contends that the amount of time spent by Liaison Counsel on tasks relating to the Motion to Dismiss and subsequent reply brief, a total of 214.90 hours, was not reasonably

---

[2] If the Court decides to reduce Liaison Counsel's fees as a result of block-billing they should only be reduced by 10%. *See Poynor v. Cmty. Unit School Dist. #300*, 1999 WL 1101566, at *1 (N.D. Ill. Nov. 30, 1999) (reducing the amount of fees block-billed by 10%).

**LIAISON COUNSEL'S RESPONSE TO THIRD-PARTY DEFENDANT MORTGAGE
INFORMATION SYSTEM, INC.'S OBJECTION TO LIAISON COUNSEL'S
PETITION FOR FEES AND EXPENSES INCURRED PRIOR TO JUNE 4, 2008 - Page 4**

expended. Without any authority whatsoever, MIS asserts that "a fee award of $30,000.00 is more than reasonable for drafting the motion to dismiss and reply." First, even for the most skilled attorney, this MDL is a complicated case simply due to the number of parties and claims involved. The consolidated motion to dismiss had to address many states' laws and take into account the concerns, questions and revisions of hundreds of parties. As a result, virtually every task on behalf of Third-Party Defendants necessitates more time than would be required in an "ordinary" case. In the context of researching and drafting the consolidated motion to dismiss filed on behalf of hundreds of Third-Party Defendants, many of which have unique viewpoints and situations, 215 hours is not surprising.

Second, MIS appears to dismiss the amount of research that had to be done in support of the Motion to Dismiss. Because Third-Party Defendants are comprised of parties from all over the United States, choice of law issues had to be analyzed and briefed. For example, Liaison Counsel set forth the "economic loss doctrine" as a defense to Ameriquest's and Argent's negligence claims, which required Liaison Counsel to research whether the economic loss doctrine had been adopted in a majority of the states – a time-consuming but necessary research project directly related to drafting the Motion to Dismiss.

Third, MIS fails to take into account that Liaison Counsel filed the Motion to Dismiss on behalf of hundreds of Third-Party Defendants, which meant that it had to determine how to frame the Motion in a manner that would represent all Third-Party Defendants' views, but without favoring one Third-Party Defendant sub-group over another. Not only was this an extremely difficult and time-consuming task, it required that Liaison counsel submit numerous drafts of the Motion to Dismiss to each Third-Party Defendant and make suggested changes and revisions accordingly.

### b. The Amount of Time Spent on Case Management Motions, the Proposed Order and Participation Agreement, and Reimbursement was Reasonable

As previously indicated, on February 11, 2008, the Court ordered Third-Party Defendants to "develop and propose a structure that suits their needs with respect to committee(s) or sub-committee(s), counsel leadership and specific division of responsibilities" [Doc. No. 1958]. Liaison Counsel's time spent researching and devising how best to structure and organize Third-Party Defendants, including the designation of Liaison Counsel and the formula by which Liaison Counsel was to be compensated, was for the benefit of Third-Party Defendants as a whole and was pursuant to the Court's order.

MIS also states that the amount of time spent on these tasks was "clearly excessive" and recommends reducing the fees awarded to Liaison Counsel by fifty percent. MIS has no authority indicating how much time is in fact "reasonable" for performing such tasks, or for its proposal that the fees should be cut by fifty percent. Due to the complexity and importance associated with forming the structure, leadership, and division of responsibilities of Third-Party Defendants, the amount of time spent performing said tasks was reasonable and should be compensated as requested.

### c. Liaison Counsel Did Not Bill For Clerical Tasks

MIS asserts that Liaison Counsel billed for clerical tasks, specifically for the preparation of an index of significant pleadings, the drafting, revising, and noticing of a motion, and the drafting and revising of a list of clients and counsel who joined in the Motion to Dismiss. First, due to the thousands of pleadings filed in this matter involving hundreds of parties, determining which of those pleadings are relevant to Third-Party Defendants and the issues affecting their group is not a clerical task. It was necessary for an attorney familiar with the issues involved in

this matter to review the pleadings and decide which pleadings are of importance to Third-Party Defendants. The index at issue boils down over one thousand pleadings into about 20-25. Second, reviewing local rules regarding noticing the presentment of a motion and then drafting, revising, and filing said notice should not be considered a clerical task. It is important that attorneys know the local rules of the jurisdiction in which they are practicing. It is also important that attorneys understand what is required when noticing a motion for presentment with the Court in a case involving hundreds of parties. The risks associated with incorrectly presenting a motion for hearing in a case of this magnitude are high and should be borne by an attorney, not by a member of the attorney's clerical staff. Finally, because Liaison Counsel is constantly in communication with counsel for other Third-Party Defendants via e-mail or telephone, Liaison Counsel was best equipped to maintain a list of clients and counsel who had joined the Motion to Dismiss. It was important for Liaison Counsel to handle this task as Third-Party Defendants were under Court order to file a consolidated motion to dismiss. Liaison Counsel needed to be up to speed on who had reviewed the motion, agreed to its contents, and consented to having it filed on their behalf.

### III.   CONCLUSION

Accordingly, Liaison Counsel respectfully requests the Court deny the Objection and award Liaison Counsel its fees and expenses in the amount of $110,000.00. In the alternative, if the Court sustains the Objection, because MIS was the only Third-Party Defendant out of 111 individual Third-Party Defendants to object to Liaison Counsel's fees and expenses, Liaison Counsel respectfully requests the Court award Liaison Counsel its fees and expenses in the

amount of $104,385.02, which is a reduction of MIS's pro-rata share of Liaison Counsel's fees and expenses in the amount of $5,614.98[3] from the requested $110,000.00.

          Respectfully submitted,

          By: /s/ Russell W. Hubbard
              Russell W. Hubbard

          Keith R. Verges
          Mark T. Davenport
          Don Colleluori
          Russell W. Hubbard
          FIGARI & DAVENPORT, L.L.P.
          3400 Bank of America Plaza
          901 Main Street
          Dallas, Texas 75202
          Telephone (214) 939-2017
          Facsimile (214) 939-2090

          John L. Ropiequet
          Christopher S. Naveja
          Jason B. Hirsh
          ARNSTEIN & LEHR LLP
          120 South Riverside Plaza, Suite 1200
          Chicago, Illinois 60606
          Telephone (312) 876-7100
          Facsimile (312) 876-0288

*Liaison Counsel and Attorneys for Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, Transnation Title Insurance Company, LandAmerica Financial Group, Inc., and Commonwealth Land Title Company*

---

[3] This amount was calculated using the formula of $466.10 per party plus an additional $117.02 per transaction submitted in the Supporting Documentation Detailing Liaison Counsel Fees and Expenses Prior to June 4, 2008 [Doc.2423], and based upon 44 transactions involving MIS.

**LIAISON COUNSEL'S RESPONSE TO THIRD-PARTY DEFENDANT MORTGAGE INFORMATION SYSTEM, INC.'S OBJECTION TO LIAISON COUNSEL'S PETITION FOR FEES AND EXPENSES INCURRED PRIOR TO JUNE 4, 2008 - Page 8**

## CERTIFICATE OF SERVICE

I, Russell W. Hubbard, hereby certify that on this 7th day of November, 2008, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Russell W. Hubbard
Russell W. Hubbard