UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) ) | MDL No. 1715 Lead Case No. 05-7097 |
| ROSA L. DAILEY, Plaintiff, v. CITI RESIDENTIAL LENDING, ET AL., Defendants. | ) ) ) ) ) ) ) ) ) ) | Centralized before the Honorable Marvin E. Aspen  Individual Case Nos. 07-5426 |
| YVONNE D. NIMOX, Plaintiff, v. AMERIQUEST MORTGAGE CO., ET AL. Defendants. | ) ) ) ) ) ) ) ) ) ) | Individual Case Nos. 07-0316 |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

      Plaintiff Rosa L. Dailey ("Dailey") filed a complaint against Defendant Citi Residential Lending ("Citi Residential"), a subsidiary of Citibank and Citigroup; Ameriquest Mortgage Company ("Ameriquest"); WM Specialty Mortgage ("WM Specialty"), a subsidiary of Washington Mutual; and Integrity First Mortgage ("Integrity"). Argent Mortgage Company ("Argent Mortgage") is the wholesale origination lending unit of Ameriquest. Her complaint

-1-

alleges six causes of action surrounding a home-loan mortgage operation originated by Argent Mortgage Company and engaged in by other defendants.[1]

Plaintiff Yvonne D. Nimox ("Nimox") filed a complaint against Defendant Ameriquest, as well as U.S. Bank, Wells Fargo Home Mortgage, Inc. ("ASC"), and Does 1-5. The complaint alleges seven causes of action to justify rescission of Nimox's mortgage.

Presently before us are two motions to dismiss for failure to state a claim filed by Defendants Citi Residential (Dailey Dkt. Nos. 23-24) and ASC (Nimox Dkt. Nos. 56-57). Both motions are similar in nature and we find it appropriate to resolve them together. Accordingly, and for the reasons set forth below, we deny both Defendants' motions to dismiss.

## BACKGROUND

**I.     Dailey Complaint**

In 2000, Dailey, along with her sister, Betty Jones ("Betty"), procured a $69,000 mortgage loan secured by a home that Dailey's mother and her late husband purchased in 1972 ("Dailey home"). (Dailey Compl. ¶ 13.) After the mortgage loan was approved, Dailey and Betty borrowed an additional $20,000, which would, coupled with the first loan, be used for home repairs and to pay property taxes. (*Id.* ¶ 14.) In early 2005, Betty received a telephone call from an agent at Integrity who persuaded her to refinance the loan with Argent Mortgage based on the promise that her annual percentage rate would be lowered from 12% to 6%. (*Id.* ¶ 24.) Integrity prepared a Uniform Residential Loan Application ("Application") that overstated the

---

[1] Dailey concedes that Counts II-VI of her complaint do not apply to Defendant Citi Residential. (Dailey Resp. at 1.) Thus, we limit our discussion to Citi Residential's involvement in Count I only, which alleges fraud.

incomes of Dailey and Betty. (*Id.* ¶¶ 26-27.) The Application also represented the value of the Dailey home as $300,000; however, the Uniform Residential Appraisal Report – submitted as part of the loan application – concludes that the value of the Dailey home is $254,885, almost $50,000 less than the value contained in the loan application. (*Id.* ¶¶ 29-30.)

After Betty was admitted to Kindred Hospital for medical problems, an agent of Argent Mortgage drove Dailey from her home on the south side of Chicago to the hospital on August 8, 2005. (*Id.* ¶ 33.) After that agent promised the sisters a reduction in their monthly payments for refinancing their loans, Betty and Dailey signed the closing documents in Betty's hospital room. (*Id.*) At that time, Betty was medically ill and Dailey was suffering from an aortic aneurism and double vision; as a result, neither read, nor reviewed the documents each signed, and no one explained the contents therein. (*Id.* ¶¶ 32, 34.)

Though no one gave Betty or Dailey a Good Faith Estimate or Loan Brokerage Agreement prior to or at the closing of the loan, an agent from Argent Mortgage directed Dailey and Betty to sign the HUD-1 Settlement Statement. (*Id.* ¶¶ 35-36.) According to the Dailey Complaint, this statement contained charges of a Yield Spread Premium, a sum the lender (here, Argent Mortgage) pays to the mortgage broker (here, Integrity) for the mortgage broker's bringing to the lender gullible borrowers who could be induced to sign a high-cost, one-sided loan. (*Id.* ¶¶ 38-39.) The HUD-1 also contained fees that Dailey alleges are duplicative of the Yield Spread Premium and fees that did not yield corresponding service. (*Id.* ¶¶ 41-44.)

At some point, Argent Mortgage, the originator of the Dailey loan, assigned and sold the mortgage secured by the Dailey home to WM Specialty. (*Id.* ¶ 50.) On roughly August 31, 2007, Ameriquest sold its remaining mortgage-origination and servicing assets to Citigroup, Inc.,

parent of Citi Residential. (*Id.* ¶ 5.) As a result, Citi Residential is currently the servicer[2] of Dailey's mortgage. (*Id.* ¶ 6; Dailey Resp. at 2, 4; Citi Residential Reply at 1-4.)

In her complaint, Dailey alleges that Ameriquest has a practice of falsifying documents. (*Id.* ¶ 16.) Specifically, she alleges that Ameriquest engaged in fraud and falsification of loan documents by misstating loan terms, getting inflated appraisals, and using bait-and-switch schemes to cheat customers (other than Betty and Dailey) into taking out more costly loans. (*Id.* ¶ 16.)

## II. Nimox Complaint

Nimox owns and resides in a single family home in Detroit, Michigan. (Nimox Compl. ¶ 3.) Nimox contacted Ameriquest in order to refinance and pay off her debt. (*Id.* ¶¶ 13-14.) The loan applications, memorialized by an Ameriquest employee over the phone, misstated Nimox's gross monthly income as well as the value of her home. (*Id.* ¶¶ 14, 21-22, 25-27.) Essentially,

---

[2] In her response, Dailey contends that Citi Residential is not just a servicer for her loan. (Dailey Resp. at 4.) She argues that Citi Residential – as the purchaser of Ameriquest's "remaining mortgage-origination and servicing assets" – can be held liable for the misdeeds of Argent and/or Ameriquest as a successor in interest. (Dailey Compl. ¶ 5; *see id.* ¶ 6; Dailey Resp. at 4.) As Citi Residential points out, however, Dailey's complaint defeats this argument. (Citi Residential Reply at 3-5.) Dailey explicitly alleges that her loan "was assigned and sold . . . to Defendant WM Specialty." (Dailey Compl. ¶ 50.) She alleges that Argent and/or Ameriquest "sold its remaining mortgage-origination and servicing assets" to Citi Residential in August 2007. (*Id.* ¶ 5.) There is no allegation that WM Specialty sold the Dailey loan to Citi Residential. Based on these allegations, although Citi Residential might be a successor in interest to Argent and/or Ameriquest for the mortgages it purchased in August 2007, it cannot be the owner of the Dailey loan sold to WM Specialty. While the "Assignment of Mortgage" document that Citi Residential submitted with its motion supports our conclusion – by suggesting that the assignment occurred in 2006 – we need not rely on that document because Dailey's complaint unequivocally alleges that WM Specialty bought her loan, not Citi Residential. (*See* Citi Residential Mem., Ex. A.)

Nimox claims that Ameriquest falsified the information in order to make it look like Nimox qualified for the loan. (*Id.* ¶ 30.)

According to the Nimox Complaint, most reputable lenders will not offer loans that exceed 80% of the value of the home (at least not without also imposing expensive private mortgage insurance), but the principal amount of Nimox's loan was $51,000, or 119% of the likely actual value. (*Id*. ¶¶ 27-28.) In addition, Ameriquest informed Nimox that it was raising her rates immediately prior to closing the loan. (*Id.* ¶ 32.) Ameriquest told her that her rates had been raised because of her credit rating; however, Ameriquest was aware of Nimox's credit rating before it sent her the Good Faith Estimate and the preliminary Truth in Lending Disclosure Statement. (*Id.* ¶¶ 33-34.) Ameriquest sent Nimox a document claiming that the payment of a "loan discount fee" would result in a lower interest rate, but after Nimox paid the fee, she did not receive the discounted interest rate. (*Id.* ¶¶ 36-37.) Ameriquest later directed Nimox to make payments to ASC. (*Id*. ¶ 39.) According to the Nimox Complaint, ASC services many Ameriquest loans, including her own, and "is joined as a necessary party." (*Id.* ¶ 12.) While ASC is her loan servicer, Nimox alleges that U.S. Bank owns the loan, and if it does not, then Does 1-5 owns her loan. (*Id.* ¶¶ 40-41.)

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, a court may grant a motion to dismiss under 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, ----, 127 S.Ct. 1955, 1974 (2007); *see*

*Killingsworth v. HSBC Bank Nev.*, N.A., 507 F.3d 614, 618-19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1964-65; *see also Killingsworth*, 507 F.3d at 618-19. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S.Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102 (1957)); *see also* Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

**ANALYSIS**

**I.      Substantive Liability**

    **a.      Dailey**

In its motion, Citi Residential argues that Dailey's fraud allegations lack the specificity required by Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud."); *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (stating that the circumstances of fraud include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff"). We need not evaluate the sufficiency of the pleading, however, because Citi Residential cannot be liable to Dailey for fraud in the formation of her

mortgage as a matter of law.[3]

As Citi Residential correctly contends (Citi Residential Mem. at 7; Citi Residential Reply at 4-5), it cannot be substantively liable for the purported fraud in this case because Dailey alleges that Citi Residential is merely the servicer of her loan. (Dailey Compl. ¶¶ 5-6, 50.) In response, Dailey relies on authorities suggesting that *assignees* can be liable for the wrongful acts of the assignor. (Dailey Resp. at 3-4.) Nonetheless, even if Dailey alleged that Citi Residential was Argent's or Ameriquest's assignee – and she has not – she would have to overcome pleading obstacles to establish liability. For example, assignees are generally not liable under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Fraud Act"). *See Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 735-36 (N.D. Ill. 2005) ("[S]ubstantial authority in this judicial district has held that derivative and assignee liability is not allowed under the Illinois Fraud Act."); *Brooks v. O'Connor Chevrolet, Inc.*, No. 02C2478, 2003 WL 22427795, at *3 (N.D. Ill. Oct. 23, 2003) ("Under Illinois law, however, in order to have an action against an assignee, a plaintiff must allege and prove that the assignee's fraud is active and direct."); *see also Fleming-Dudle v. Legal Investigations, Inc.*, No. 05C4648, 2007 WL 952026, at *16 (N.D. Ill. Mar. 22, 2007); *Dowdy v. First Metro. Mortgage Co.*, No. 01C7211, 2002 WL 745851, at *2-3 (N.D. Ill. Jan. 29, 2002); *Jackson v. South Holland Dodge*, 197 Ill.2d 39, 51-52, 755 N.E.2d 462, 470-41 (Ill. 2001). Assignees similarly are not liable under the Truth in Lending Act ("TILA") absent special circumstances. 15 U.S.C. § 1641(a); *see Briggs v. Provident Bank*, 349 F. Supp. 2d 1124, 1132 (N.D. Ill. 2004); *Jenkins v. Mercantile Mortgage*

---

[3] We add, for the sake of clarity, that Dailey's complaint lacks any allegation that Citi Residential directly engaged in any fraudulent activity.

*Co.*, 231 F. Supp. 2d 737, 746 (N.D. Ill. 2002). Indeed, under TILA, assignees can be held liable only where infirmities are apparent on the face of the loan documents. 15 U.S.C. § 1641(a); *Lippner v. Deutsche Bank Nat'l. Trust Co.*, 544 F. Supp. 2d 695, 704 (N.D. Ill. 2008); *Ware v. Indymac Bank, FSB*, 534 F. Supp. 2d 835, 844 (N.D. Ill. 2008); *Bills v. BNC Mortgage, Inc.*, 502 F. Supp. 2d 773, 776 (N.D. Ill. 2007). Regardless, Dailey has not alleged that Citi Residential is such an assignee. To the contrary, Dailey states that WM Specialty is the assignee of her loan, while Citi Residential is the servicer. (Dailey Compl. ¶¶ 5-7, 50, 51, 54, 57, 58, 60).

Although Dailey does not assert a TILA claim against Citi Residential, we find it instructive that a mortgage servicer has no liability for an assignor's actions under TILA. *See* 15 U.S.C. § 1641(f)(1); *Lippner*, 544 F. Supp. 2d at 699 (servicer was not liable under TILA since it had no ownership of the loan in question); *Hubbard v. Ameriquest Mortgage Co.*, No. 05C0389, 2008 WL 4449888, at *3-4 (N.D. Ill. Sept. 30, 2008); *see also Adams v. Nationscredit Fin. Servs. Corp.*, 351 F. Supp. 2d 829, 835 (N.D. Ill. 2004) (observing that servicer could not be liable under either TILA or the Fraud Act). While not citing TILA or the Fraud Act, Dailey presumably asserts her fraud claim pursuant to Illinois common law. She cites to no cases, and we find none, that support servicer liability for underlying common law fraud committed by a lender. In addition, Dailey neglects to explain why Citi Residential should be treated as an assignee, or why the purpose supporting assignee liability could be furthered by imposing liability on a servicer.[4] Even taking all of Dailey's allegations as true, as we must, Citi Residential has no substantive liability for Count I of Dailey's complaint as a servicer.

---

[4] For her part, Nimox concedes that servicers have no liability under TILA and asks that we retain ASC as a necessary party pursuant to Federal Rule of Civil Procedure 19. (Nimox Resp. at 3 ("Although ASC is not an assignee and thus cannot be held liable under TILA for rescission, as the loan servicer it is a necessary party to the suit.").)

### b. Nimox

The above analysis applies equally to servicer ASC. Of Nimox's seven causes of action, only Count I – alleging a violation of TILA – involves ASC. Nonetheless, as with Citi Residential, ASC is a mortgage servicer and thus has no substantive liability for alleged violations of TILA committed by a lender or assignor. *See* 15 U.S.C. § 1641(f)(1); *see also Lippner*, 544 F. Supp. 2d at 699; *Hubbard*, 2008 WL 4449888, at *3-4.

### II. Rule 19 Required Joinder of Parties

While neither Citi Residential, nor ASC, can be held substantively liable to either Dailey or Nimox, as suggested by Nimox, these defendants should be retained as necessary parties consistent with Federal Rule of Civil Procedure 19. Rule 19 establishes two bases for joining a party as a necessary party: (1) when, "in that person's absence, the court cannot accord complete relief among existing parties;" and (2) when the party "claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1).

Courts within our district have disagreed on the issue of whether a servicer is a necessary party in similar cases, and the Seventh Circuit has yet to resolve this question. In the majority of instances, district courts have held that a servicer is a necessary party in a TILA action[5] because the servicer could report damaging information to credit bureaus or attempt to foreclose on the loan the plaintiff is attempting to rescind. *See Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760, 765-66 (N.D. Ill. 2006); *Adams*, 351 F. Supp. 2d at 835; *Hurd v. First NLC Fin. Servs., L.L.C.*, No. 04C1088, 2004 U.S. Dist. LEXIS 26557, at *3-5 (N.D. Ill. Oct. 1, 2004);

---

[5] We recognize that Dailey has not pursued a TILA rescission claim. Nonetheless, we find the reasoning in the Rule 19(a) cases involving TILA claims applicable to her action. Moreover, we endeavor herein to set a general rule for servicer involvement in this MDL, as a case-by-case approach at this stage of the litigation, in a MDL this size, would be impractical.

*Hankins v. Equicredit Corp.*, No. 03C6524, 2003 U.S. Dist. LEXIS 26195, at *3-4 (N.D. Ill. Dec. 2, 2003); *but see Bills*, 502 F. Supp. 2d at 775 (stressing that "a servicer's interest automatically ceases upon rescission" and holding that concerns about the servicer's conduct are too speculative to warrant retaining them as parties); *Walker v. Gateway Fin. Corp.*, 286 F. Supp. 2d 965, 969 (N.D. Ill. 2003) (similarly dismissing a servicer because of its lack of interest in the outcome of the litigation). We agree with approach taken in *Miranda* and *Adams*, which focuses on our need to ensure that we can grant complete relief to any aggrieved parties, including Dailey and Nimox. Although the *Bills* and *Walker* opinions stress that mortgage servicers lack "an interest relating to the subject of the [TILA] action," as necessary under Rule 19(a)(1)(B), we rely instead on Rule 19(a)(1)(A) and conclude that the defendant servicers should be retained at this juncture. Like the *Adams* court, we reiterate "that [Citi Residential and ASC are] joined solely for the purpose of ensuring that the parties' interests are adequately protected; [they] may not be held liable under TILA or IFCA." 351 F. Supp. 2d at 835.

## CONCLUSION

We deny the motions to dismiss filed by Citi Residential (Dailey Dkt. Nos. 23-24) and ASC (Nimox Dkt. Nos. 56-57). Although Citi Residential and ASC may not be held substantively liable in these particular matters, we retain these servicers as necessary parties pursuant to Rule 19. It is so ordered.

        Honorable Marvin E. Aspen
        U.S. District Court Judge

Dated: December 2, 2008