**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: BORROWERS' CONSOLIDATED CLASS ACTION | |

**DEFENDANTS' STATUS HEARING REPORT**

Pursuant to this Court's November 14, 2008 Order, and following the agenda set forth therein, the undersigned Defendants hereby submit their report in connection with the December 19, 2008 Status Hearing.

**I.     General Matters Applicable to All Cases**

To date, 498 distinct cases have been transferred or reassigned to this Multidistrict Litigation Proceeding ("MDL Proceeding").  Nonetheless, there are still no fewer than 33 cases in varying stages of transfer, with new cases filed on a weekly basis.  Specifically, three cases are subject to formal pending motions to transfer; five cases have been identified to the MDL Panel as tag-along cases, but the Panel has not yet made any ruling; and no fewer than 25 cases have been submitted to the Panel and assigned a status of "No Action Taken", in response to which Defendants intend to file Motions to Transfer.  A true and correct copy of the MDL Panel's most recent Case Listing Report, which details the status of the transfer process, is attached hereto as Exhibit A.  Thus, not all affected parties are before the Court at this time, nor are they expected to be by the Status Hearing.

## II. Borrower and Non-Borrower Class Actions

### A. Progress of Mediation

After no fewer than five in person mediation sessions with the Honorable Daniel J. Weinstein (Ret.) over the last year, including the most recent session on December 11, 2008, the parties to the Borrower and Non-Borrower Class Actions have reached agreement as to most of the material terms for a settlement in principle. The parties intend to continue to negotiate the details of the settlement and have follow-up mediation sessions, both telephonic and in person, scheduled with Judge Weinstein for December 18, 2008 and February 25, 2009 at which times the parties are hopeful that all outstanding issues can be resolved.

In the event that the parties cannot finalize the settlement in principle, the following sections describe the status of the Borrower and Non-Borrower Class Actions.

### B. Status of Discovery

Discovery in the Borrower and-Non Borrower Class Actions has been stayed, by Agreement and Court Order from October 24, 2007 to the present. Defendants expect to stipulate to continue the stay again to accommodate the efforts to finalize the settlement in principle.

Should the stay ultimately be lifted, Defendants will initially pursue their previously-served discovery. Specifically, Defendants served multiple sets of written discovery in each Class case, and commenced the meet and confer process regarding Plaintiffs' insufficient responses. On October 24, 2007, before the issues had been resolved, the parties agreed to a short stay of discovery to facilitate mediation. On or about December 26, 2007, the parties' stipulation to stay discovery and extend pretrial deadlines was adopted and entered by the Court. [Docket No. 1826.] Since that time, as mediation efforts have progressed, consecutive orders extending the stay and all pretrial deadlines have been entered (Docket Nos. 1806, 1826, 1827, 1928, 1969, 2064, 2065, 2220, 2252, 2253, 2254, 2255, 2277, 2386, 2387, 2473, 2474). While the current discovery stay is scheduled to end on December 15, 2008, as set forth above, Defendants expect to stipulate to extend that date pending finalization of the settlement in

principle.

In addition, all pretrial activity has been stayed by Stipulation and Order in the Third Party Complaint filed in the Non-Borrower Class Action. [Docket Nos. 2300, 2494.] The stay is indefinite, but may be lifted upon 30 days written notice by the Court or any party.

Should the stay be lifted, Ameriquest intends to conduct the following discovery on the timetable set forth below:

### i. Borrower Class Discovery

#### a. Outstanding Discovery

Defendants propounded requests for production and interrogatories on the Borrower Class representatives in July 2007. However, substantive responses have not been received and the Plaintiffs have not yet identified any facts which support their bare allegations in the Complaint. Plaintiffs have yet to distinguish allegations applicable to any particular Defendant, lumping separate entities together. Should mediation ultimately fail or should the pending stay otherwise be lifted, Plaintiffs should be ordered to, within 30 days, identify all facts, documents, and witnesses supporting their claims against each separate Defendant so that Defendants may explore the basis for the allegations.

#### b. Additional Discovery

Borrower Plaintiffs state that they will amend their Complaint. Defendants will likely need to serve additional discovery based on the amended complaint. Without having seen the amended complaint, Defendants anticipate needing approximately 60-90 days to prepare and serve additional discovery based on the new pleading.

#### c. Depositions

Upon completion of written discovery, Defendants intend to notice depositions of the 84 named Plaintiffs. Ameriquest expects that the depositions can be completed within six months, depending on the availability of the Plaintiffs, their counsel, Third-Party Defendants, and the willingness of Plaintiffs to appear for deposition in a couple of hub cities instead of requiring all counsel to travel to more than 50 cities around the nation for the depositions.

### d.     Class Discovery

If a class is certified, Defendants intend to conduct additional written discovery and depositions directed to the unnamed class members as well as the Third Party Defendants who Defendants intend to name in connection with the class loans as set forth below.  Because the size of any class is unknown at this time, Defendants cannot anticipate how long this will take and suggests that if a class is certified an additional Status Hearing to address class discovery issues be scheduled.

### e.     Expert Discovery

The current expert disclosure deadline is January 26, 2009.  Because it is difficult, if not impossible to meaningfully select and disclose experts prior to the completion of non-expert discovery, Defendants request that the expert disclosures take place 90 days after the completion of non-expert discovery.

### ii.     Non-Borrower Class Discovery

### a.     Outstanding Discovery

Defendants propounded requests for production and interrogatories on the Non-Borrower Class representatives in July 2007.  However, substantive responses have not been received and the Plaintiffs have not yet identified any facts to support their bare allegations in the Complaint. Again, Plaintiffs have yet to distinguish allegations applicable to any particular Defendant, lumping separate entities together.  Should the pending stay be lifted, Plaintiffs should be ordered to, within 30 days, identify all facts, documents, and witnesses supporting their claims against each separate defendant so that Defendants may explore the basis for the allegations.

### b.     Additional Discovery

Within 30 days of receipt of adequate responses to the already pending discovery, Defendants intend to serve follow-up discovery requests tailored to three recent substantive decisions affecting Plaintiffs' claims.  Defendants further intend to serve written discovery on all Third Party Defendants.

###### c.    Depositions

Upon completion of the above written discovery, Defendants intend to notice depositions of the four named Plaintiffs, as well as all third party defendants.  If there are no disputes regarding scheduling or deposition conduct, Defendants expect to be able to complete these depositions within two months of their commencement.

###### d.    Expert Discovery

The current expert disclosure date is January 26, 2009.  Because it is difficult, if not impossible to meaningfully select and disclose experts prior to the completion of non-expert discovery, Defendants request that the expert disclosures take place 90 days after the completion of non-expert discovery.

##### C.    Outstanding Motions or Issues

###### i.    Dispositive Motion in Non-Borrower Class

Based on the Seventh Circuit's ruling in *Murray v. New Cingular Wireless Services, Inc.*, 2008 U.S. App. LEXIS 8004 (7th Cir. 2008), the First Cause of Action in the Non-Borrower Class Action Complaint for violations of the Fair Credit Reporting Act ("FCRA") must be dismissed.  The *Murray* case renders moot the *Cole v. U.S. Capital*, 389 F.3d 719 (7th Cir. 2004) case upon which the Non-Borrower Plaintiffs rely to allege violations of the FCRA permissible purpose requirements.  In *Murray*, the Seventh Circuit stated that the Cole case "is beside the point for pure offers of credit" such as the mortgage loans at issue here.  Indeed, this Court has previously dismissed, at ***Plaintiffs'*** counsel's request, the Opt-Out cases alleging these same FCRA violations.  [Docket No. 2158.]  No further time should be spent litigating this issue in the Non-Borrower Class case and Defendants intend to bring a dispositive motion on this subject within 30 days of the stay being lifted.  Defendants may have additional grounds for dispositive motions depending on the outcome of the discovery process.

###### ii.    Class Cross-Complaint

In their proposed Motion for Leave to File a Third Amended Consolidated Third Party Complaint, Defendants/Third Party Plaintiffs have named the appropriate Third Party

Defendants from the loans identified in the pending Borrower Consolidated Class Action
Complaint ("Borrower Action"). To the extent a class is certified in the Borrower Action,
Defendants/Third Party Plaintiffs intend to file a Motion for Leave to File an Amended Cross
Complaint that includes all appropriate Third Party Defendants for all loans encompassed by the
Class. Depending on the size of the Class certified, if any, this could require service on Third
Party Defendants in connection with in excess of 100,000 loans. Defendants/Third Party
Plaintiffs expect that effecting service and obtaining responsive pleadings from all relevant
parties will take in excess of 180 days.

        **iii.    Dispositive Motions in Borrower Class**

        Defendants also intend to file a Motion for Summary Judgment in the Borrower Class
Action upon completion of discovery. This Motion is expected to address, at minimum, the
following issues:

        (a)    all TILA class claims must be dismissed because the
Seventh Circuit has unequivocally held that class claims for
rescission can not be certified. *Bryan Andrews, et al. v.
Chevy Chase Bank,* --- F.3d ----, 2008 WL 4330761 (7th
Cir. 2008).

        (b)    the TILA claims against the Servicer Defendants must be
dismissed because Servicers have no statutory liability
when acting solely in a servicing capacity. 15 U.S.C.
§1641(f); *Lippner v. Deutsche Bank Nat'l Trust Co.*, 544
F.Supp.2d 695, 699 (N.D. Ill. 2008).

        (c)    the TILA claims must be dismissed by those Plaintiffs'
whose claims are time-barred.

        (d)    all claims must be dismissed by those Plaintiffs who have
already settled and released their claims in the Attorneys
General Settlement.

     (e)     All Equal Credit Opportunity Act and Fair Credit Reporting Act claims for Defendants' alleged failure to provide "adverse action notices must be dismissed because plaintiffs accepted counteroffers of credit.  12 C.F.R. § 202.2(c)(1)(i).

     (f)     Additional grounds as developed through the discovery process.

       **iv.**     **Class Issues**

Defendants intend to oppose certification of the Borrower Class on many grounds, including, but not limited to, the following:

     (a)     Based on the holding of *Andrews, supra,* Plaintiffs cannot certify a class for rescission under TILA.

     (b)     Other requested rescission relief under the Tenth (declaratory judgment), Eleventh (Cal. Bus. Prof. Code §17200), and Thirteenth Causes of Action (various state consumer protection acts) is also not appropriate for class treatment. As the court noted in *Andrews*, unwinding hundreds or thousands of individual credit transactions would not promote the primary purposes of the class-action mechanism: judicial economy and efficiency.  Significant individual aspects of the remedy, varying with each consumer's loan transaction, would remain to be worked out before each of the transactions could be unwound. Thus, class rescission claims in Plaintiffs' Tenth, Eleventh and Thirteenth Causes of Action cannot be certified.

     (c)     Plaintiffs cannot proceed with the case on a class basis because in order to do so, Plaintiffs would have to abandon

the rescission rights of unnamed class members.  Such an action would breach their fiduciary duty to the class.  *Janik v. Rudy, Exelrod & Zieff*, 119 Cal. App. 4th 930, 934 (2004)*; see also  Technograph Printed Circuits Ltd. v. Methode Electronics,* 285 F. Supp. 714, 721 (N.D. Ill.1968).

(d)      Plaintiffs' remaining class claims likewise cannot survive because the claims are too highly individualized to satisfy the predominance and superiority requirements of Rule 23 of the Federal Rules of Civil Procedure.  Foreshadowing *Andrews*, this Court denied class certification for a TILA rescission and consumer fraud class action because the bait and switch allegations would require a case by case determination of whether oral representations by defendants were made.  *See, Elliott v. ITT Corp.,* 150 F.R.D. 569, 575 (N.D. Ill. 1992).  The same rationale as *Elliot* and *Andrews* applies here – class relief would not be efficient or economical.

(e)      Defendants were not present at the closing of the loans when many of the oral misrepresentations were allegedly made.  Thus, a factual analysis of the actions and oral representations of Third Party Defendants, closing agents and loan brokers, creates additional individual issues which will predominate over common issues of fact and law.

(f)      As demonstrated by the hundreds of Opt-Out cases and Plaintiffs in this MDL, the proper way to proceed with these claims is on an individual basis.  That will ensure that

each case is decided on the merits of the particular action, which is necessary when non-uniform oral representations are at issue as in the case at bar.

**III.    Opt Out Cases**

**A.    Progress of Mediation**

The parties continue to make progress in the Opt-Out Mediation.  The most recent settlement efforts involved an offer made to all Opt-Out Plaintiffs that included two primary components:  (1) a uniform cash payment, and (2) an individualized consideration of a loan modification.  These efforts have resulted in the settlement of in excess of 63 claims to date, with an additional 156 loan modification applications from various Opt-Out Plaintiffs that are still under consideration by the appropriate servicers[1].

The parties have agreed at this time to try a new approach as to those Opt-Out Plaintiffs who either chose not to participate in the cash plus loan modification program or who chose to participate but did not receive a loan modification offer to their liking.  Accordingly, the parties and Judge O'Connell have scheduled back-to-back mediation sessions to take place February 18, 19 and 20, 2009 ("February Mediation").  Following Judge O'Connell's recommendation, the parties will select approximately 50 loans to specifically address. This mediation will take place in Chicago and will be attended by the relevant parties from the Plaintiffs, Defendants/Third Party Plaintiffs, Third Party Defendants, Servicers, Investors and Insurers' sides.  Defendants have mediated in good faith from the inception of the settlement efforts in this MDL Proceeding (as demonstrated by the settlement in principle of the Class Claims), and are hopeful that Opt-Out Plaintiffs will approach the February Mediation in good faith as well.  If so, Defendants believe that significant progress can be made.

---

[1] While certain Opt-Out Plaintiffs have disparaged the cash plus loan modification program, the number of settlements reached demonstrates the success of the program.  And, notably, the program offered not only a cash component that was roughly three times the cash payment made to claimants in connection with the Attorney General settlement, the loan modification component conferred substantial economic benefits – in some cases hundreds of thousands of dollars over the life of the loan – in the form of loan modifications.

### B.     Status of Discovery

### i.      Opt Out Discovery

Pursuant to the agreement of the parties and a Stipulation and Order of this Court (Docket Nos. 1046, 1047), Opt Out Plaintiffs and Defendants have, to date, followed a discovery protocol in which voluminous agreed-upon information has been exchanged with respect to the loans at issue without the need for serving formal discovery.  Certain Opt-Out Plaintiffs have also served limited third party discovery.  However, with the progress of mediation, formal discovery has been somewhat limited.  Should mediation ultimately fail, or should the Court order otherwise, Defendants intend to conduct the following discovery in the Opt Out cases on the following timetable:

1.      Written interrogatories, including contention interrogatories, Requests for Production of Documents and Requests for Admission:  Defendants intend to serve these items within 30 days of failure of mediation or Court Order.

2.      Depositions:  Upon completion of written discovery Defendants will notice depositions of each of the remaining Opt-Out Plaintiffs.  The time period required to complete the depositions will vary greatly depending on whether Plaintiffs will cooperate in appearing for deposition at one of a few central locations versus requiring all counsel to travel to each plaintiffs' hometown.  Defendants expect that it will take at least one year to complete depositions of the in excess of 1,500 Opt-Out Plaintiffs[2] assuming that they can be scheduled on consecutive days during every business day next year and that Plaintiffs are willing to have four or five witnesses appear at a time[3].

---

[2]  The number of Opt-Out Plaintiffs greatly exceeds the number of Opt-Out Cases in large part because Plaintiffs have in many instances improperly joined multiple unrelated parties as Plaintiffs in a single case.  In addition, some loans have more than one borrower.

[3]  Because of the multiple tracks of discovery that may or may not progress simultaneously depending on, among other things, this Court's orders and the status of the settlement in the class cases, any of the opt out cases or the third party complaints, the discovery timelines contained in this Report are estimates that may need to be lengthened should, for example, all discovery commence at once.

### ii.    Third Party Complaint Discovery

To date, Defendants/Third Party Plaintiffs have been providing Third Party Defendants with non-privileged, relevant documents upon reasonable request without requiring a formal, written discovery request.  [Docket No. 1958.]  As above, with the progress of mediation, formal discovery has been somewhat limited.  Should mediation ultimately fail, or should the Court order otherwise, Defendants/Third Party Plaintiffs intend to conduct the following discovery in the Third Party Complaint on the following timetable:

1.    Written interrogatories, including contention interrogatories, Requests for Production of Documents and Requests for Admission:  Defendants/Third Party Plaintiffs intend to serve these items within 30 days of failure of mediation or Court Order.

2.    Depositions:  Upon completion of written discovery Defendants/Third Party Plaintiffs will then notice depositions of Persons Most Knowledgeable at each of the Third Party Defendants.  The time period required to complete the depositions will vary greatly depending on the level of cooperation received from Third Party Defendants, but Defendants/Third Party Plaintiffs expect that it will take at least six months to complete depositions of the approximately 258 Third Party Defendants assuming that they can be scheduled on consecutive days during every business day next year and that Third Party Defendants are willing to have four or five witnesses appear at a time.

### C.    Outstanding Motions or Issues

### i.    Motion for Leave to File Third Amended Consolidated Third Party Complaint

Defendants/Third Party Plaintiffs filed a Motion for Leave to File a Third Amended Consolidated Third Party Complaint on April 9, 2008.  [Docket No. 2086.]  This Motion has not yet been ruled on.  However, in light of the numerous new cases filed by Plaintiffs since April 2008, Defendants/Third Party Plaintiffs intend to file a new Motion for Leave to File a Third Amended Consolidated Third Party Complaint to include all such new parties.  The revised Third Amended Consolidated Third Party Complaint will also include Third Party Plaintiffs'

amended Negligence causes of action pursuant to this Court's Order granting Third Party Defendants' Motion to Dismiss those claims without prejudice. [Docket No. 2455.] Defendants/Third Party Plaintiffs expect that it will take no fewer than 90 to 120 days to effect service on, and obtain responsive pleadings from, all of the new parties.

### ii. Additional Motions Anticipated by Third Party Defendants

The Third Party Defendants named in the Second Amended Consolidated Third Party Complaint have stated their intention, and obtained a Court Order allowing them, to file three additional Motions to Dismiss, consolidated by the three types of Third Party Defendants – i.e. (1) brokers, (2) title examiners and closing agents, and (3) underwriters – in response to the Second Amended Consolidated Third Party Complaint by December 12, 2008. [Docket Nos. 1958, 2200, 2393.] Pursuant to the briefing schedule set forth by the Court, oppositions will be due January 21, 2009 and reply briefs due by February 11, 2009.

Third Party Plaintiffs have just learned that Third Party Defendants intend to ask for an additional 45 days from the February Mediation (i.e., until April 7, 2009 to file their additional Motions to Dismiss). Third Party Plaintiffs oppose this extension for several reasons. First Third Party Defendants have made clear that they will not offer any money toward settlement until their Motions to Dismiss are resolved. Thus, to allow this extra time would only delay the ongoing settlement efforts. In addition, Third Party Defendants have known since this Court's order of February 11, 2008 (Docket No. 1958) that these additional motions were allowed. Thus, they have had more than nine months to prepare the motions and, given their position on settlement, there is no benefit to anyone in allowing further delay.

Accordingly, even if the Court agrees with Third Party Plaintiffs that no further delay should be permitted, it is unlikely that any Third Party Complaint will be settled and at issue before March or April of 2009.

### iii. Dispositive Motions:

Opt-out defendants intend to bring dispositive motions on, at minimum, the following grounds:

        (a)     the TILA claims against the Servicer Defendants must be dismissed because Servicers have no statutory liability when acting solely in a servicing capacity. 15 U.S.C. §1641(f); *Lippner v. Deutsche Bank Nat'l Trust Co.*, 544 F.Supp.2d 695, 699 (N.D. Ill. 2008).

        (b)     the TILA claims must be dismissed by those Plaintiffs' whose claims are time-barred.

        (c)     all claims must be dismissed by those Plaintiffs who have already settled and released their claims in the Attorney General Settlement.

        (d)     Additional grounds as developed through the discovery process.

### iv.    Opt-Out Plaintiffs' Request for Priority Discovery Cutoff Date and Remand

Opt-Out Plaintiffs requested that the Court set a priority discovery cutoff for certain unidentified cases and remand those unidentified cases to their transferor courts. In Docket Number 2543, which is incorporated herein by reference, Defendants objected to the inclusion of this issue in the agenda for the Status Hearing. In brief, this is not a proper matter for a Status Hearing before this Court, but rather is an issue that must be resolved by an Order of the Multidistrict Litigation Panel ("MDL Panel"). 28 U.S.C. §1407(a); Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("MDL Rules") 7.6. Moreover, remand should not take place until the completion of coordinated pretrial proceedings and settlement negotiations. *In re Zyprexa Products Liability Litigation,* 375 F.Supp.2d 170, 172; *In re Four Seasons Securities Laws Litigation*, 342 F.Supp. 758, 759. As set forth herein, coordinated discovery and mediation are ongoing and to prioritize certain individual cases over others and over the Class Cases would frustrate the coordination purposes of this MDL Proceeding.

Opt-Out Plaintiffs presented a supplemental brief which they sought leave to file on December 10, 2008 in which they agree that the MDL Panel is the proper tribunal to order remand. However, they still do not identify all of the cases that they seek to remand. Rather, Plaintiffs identify two exemplar loans and provide unsupported factual bases for that remand. This merely demonstrates the merit of Defendants' argument that a formal motion as to each case, supported by admissible evidence – not a status hearing – is the appropriate procedural vehicle for obtaining consideration of whether to remand a case. Moreover, neither loan identified by Plaintiffs has had a failed mediation. Both borrowers submitted a loan modification application which, due to the volume of applications submitted, have not yet resulted in an offer. To seek remand based on a so-called unsuccessful mediation before even seeing or considering a loan modification proposal underscores what appears to be a lack of good faith participation in the process.

In addition, Plaintiffs' repeated reference to Defendants' settlement offers as "take it or leave it" is disingenuous. First, while there is a uniform cash component to each offer (which 63 sets of borrowers have already accepted), the loan modification portion of the offer is tailored to each borrower's specific financial condition. Moreover, as set forth in Defendants' prior filing (Docket No. 2453) the upcoming three-day February Mediation is designed to consider individual cases which will address Plaintiffs' concerns about any incorrectly perceived uniformity in the offers to date.

Thus, Defendants submit that Opt-Out Plaintiffs' improper request should be denied. If the Court is willing to consider the request, Defendants submit that it involves such fundamental substantive and procedural issues that a formal motion must be required. Plaintiffs must prove both legally and factually why each particular claim should no longer be subject to the Transfer Order issued by the MDL Panel that has governed this proceeding from its inception. Thus, if the Court is willing to place Opt-Out Plaintiffs' issues on the agenda for the Status Hearing at all,

the discussion should be limited to setting a briefing schedule on a motion for such relief.

DATED:   December 15, 2008

By:      /s/  Bernard E. LeSage
*Attorneys for Ameriquest Mortgage Company;
AMC Mortgage Services; Ameriquest Mortgage
Securities, Inc.; Town & Country Credit
Corporation; Town & Country Title Services,
Inc.; and ACC Capital Holdings Corporation*

Bernard E. LeSage, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
(213) 891-0700
(213) 896-0400 (fax)

## CERTIFICATE OF SERVICE

I, Bernard E. LeSage, hereby certify that on this 15th day of December 2008, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Bernard E. LeSage

BN 2453614v1