**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHERRY K. BLACKBURN and | ) | |
| JOSEPH FRANK BLACKBURN, | ) | 07 C 309 |
| | ) | |
| Plaintiffs, | ) | (Originally 06 C 1086 (S.D. Ind.)) |
| | ) | |
| v. | ) | (Transferred to Judge Aspen for |
| | ) | pretrial proceedings under MDL |
| AMERIQUEST MORTGAGE COMPANY, | ) | #1715, Lead Case #05 C 7097) |
| JPMC SPECIALTY MORTGAGE, LLC, f/k/a | ) | |
| WM SPECIALTY MORTGAGE, LLC, AMC | ) | |
| MORTGAGE SERVICES, INC., CHASE HOME | ) | |
| FINANCE, LLC, and DOES 1-5, | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

**INTRODUCTION**

1.      Plaintiffs Sherry K. Blackburn and Joseph Frank Blackburn bring this

action against a "subprime" mortgage lender and its affiliates to rescind a mortgage and collect

damages for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"),

implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226 and state laws.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331

(general federal question), 1337 (interstate commerce), 1367 (supplemental jurisdiction) and 15

U.S.C. §1640 (TILA).   Defendants transact business in the District and are deemed to reside

here.

1

## PARTIES

3.     Plaintiffs Sherry K. Blackburn and Joseph Frank Blackburn ("the Blackburns") are married and jointly own and reside in a home at 8968 Sunglow Court, Indianapolis, IN 46231.

4.     Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Indiana.  Its registered agent is National Registered Agents, Inc., located at 320 Meridian Street, Indianapolis, IN 46204 or 200 W. Adams, Chicago, IL 60606.

5.     Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6.     Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

7.     Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8.     During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period.  Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States.  During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

9.     Defendant AMC Mortgage Services, Inc. ("AMC") is a foreign corporation which does business in Indiana.  It is an affiliate of Ameriquest.  Its registered agent is National Registered Agents, Inc., located at 320 Meridian Street, Indianapolis, IN 46204 or 200 W. Adams, Chicago, IL 60606.

2

10.     Defendant AMC Mortgage Services, Inc., serviced loans originated by Ameriquest Mortgage Company, and claimed an interest in such loans, including the right to receive payments thereunder.  It is joined as a necessary party.

11.     Defendant Chase Home Finance, LLC is a foreign corporation which does business in Illinois and Indiana. Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

12.     Defendant Chase Home Finance, LLC services some loans originated by Ameriquest Mortgage Company, including plaintiffs', and claims an interest in such loans, including the right to receive payments thereunder.  It is joined as a necessary party.

13.     Defendant JPMC Specialty Mortgage, LLC, formerly known as WM Specialty Mortgage, LLC, is a foreign corporation which transacts business in Illinois and Indiana.  It holds legal title to some loans originated by Ameriquest Mortgage Company, including plaintiffs'.  Its registered agent is Corporation Service Company, located at 84 State St., Boston, MA 02109.

**FACTS RELATING TO PLAINTIFFS**

14.     Prior to November 19, 2004, the Blackburns applied for a mortgage with Ameriquest Mortgage Company.

15.     The Blackburns needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

16.     The following are documents relating to the loan:

      a.     A borrower's acknowledgment of final loan terms, Exhibit A;

      b.     A note, Exhibit B;

      c.     A mortgage, Exhibit C;

3

d.      A settlement statement, <u>Exhibit D</u>;

e.      A Truth in Lending statement, <u>Exhibit E</u>;

f.      The three-day notice of right to cancel required by the Federal Reserve Board, <u>Exhibit F</u>;

g.      A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, <u>Exhibit G</u>;

h.      A uniform residential loan application, <u>Exhibit H</u>;

i.      A document entitled "Understanding your options regarding interest rates and discount points," <u>Exhibit I</u>;

j.      A good faith estimate, <u>Exhibit J</u>; and

k.      A November 24, 2004 appraisal generated by Ameriquest using Valuesure software, <u>Exhibit K</u>, ("Ameriquest appraisal").

17.      In determining the Blackburns' eligibility for a loan, Ameriquest appraised the value of the Blackburns' house at $222,000.00 – approximately $70,000.00 more than the average value of homes in the Blackburns' neighborhood – and then doubled this value, creating a total net worth of $414,616.00. <u>Exhibit H</u>, page 2. Using this figure, Ameriquest represented to the Blackburns that they qualified for a $194,250.00 loan. <u>Exhibit A</u>.

18.      A few days before the closing, a female agent from Ameriquest's Indianapolis office spoke to Ms. Blackburn on the phone and represented that the monthly payment would be approximately $1,200.00, with escrow payments for taxes and insurance included.

4

19.     At closing, the same agent who had quoted the $1,200.00 monthly payment informed the Blackburns that there had been a "big mistake" and that the monthly payment would be $1,845.88, over $600.00 more than the quote.

20.     The loan was closed at the Blackburns' home on November 19, 2004.  The female agent who had been dealing with the Blackburns was present, but she did not provide the Blackburns with a business card or her contact information.  A male agent from the Indianapolis Ameriquest office was also present, and similarly neglected to provide a business card.

21.     At the closing, the female agent told the Blackburns that they had a twenty-year mortgage at 7.65%, and that they would be able to "lock-in" their interest rate within two years.  Ms. Blackburn protested that she did not want an adjustable-rate mortgage.  The agent reassured Ms. Blackburn that she did not need to worry and that they would be able to "lock-in" a *lower* fixed rate before two years had passed.  The Blackburns were assured "beyond a doubt" that they would be able to "lock-in" a lower interest rate before the interest rate became adjustable.  The Blackburns, unwilling to accept an adjustable rate mortgage, were repeatedly assured that their mortgage would be fixed-rate and that the interest rate would be "locked-in" before it increased.

22.     On March 7, 2006, Ms. Blackburn emailed AMC to see how she could "lock-in" the interest rate, as Ameriquest had represented she could.

23.     AMC responded: "Please contact out Refinance Department at (866)783-7576, Monday through Friday, 9:00a.m. to 6:00p.m., Pacific Time."

24.     The "lock-in" feature that Ameriquest had used to sell the Blackburns on an adjustable-rate mortgage was nothing more than a refinance.  This was not communicated to the Blackburns at the November 19, 2004 closing.

5

25. The Blackburns were not given a copy of their appraisal at the closing.

26. On November 24, 2004, five days after the closing of the Blackburns' loan, Ameriquest produced a fraudulent appraisal of the Blackburns' home using Valuesure software. See the "Order Date" and "Inspection Date" on Exhibit K. Ameriquest's appraisal valued the Blackburns' house at $222,000.00.

27. Ameriquest's appraisal notes that the Blackburns' house has zero bedrooms, zero bathrooms, zero living area and an "assessed value" of $127,000.00. Exhibit K.

28. Ameriquest's appraisal lists the "borrower est of value" as $222,000.00. This is precisely the figure that Ameriquest had "estimated" on the Blackburns' loan application approximately a week earlier. The Blackburns did not at any time make an estimate of their house's value to Ameriquest.

29. Ameriquest's appraisal does note that the Blackburns' house "conforms to neighborhood," but also asserts that "No comparable properties are available for submitted address." Exhibit K.

30. Ameriquest inflated the value of the Blackburns' house in order to increase its own points and fees, interest and profits.

31. On November 19, 2004, Ameriquest charged the Blackburns a $200.00 appraisal fee for an appraisal that had not been conducted, as indicated on Exhibit D and Exhibit K.

32. The Blackburns were later directed to make payments to AMC Mortgage Services, Inc., then to Citi Residential Lending, Inc., and most recently to Chase Home Finance, LLC.

6

33.     Approximately a year after the closing, in February 2006, Ms. Blackburn learned that she could order a copy of the Ameriquest appraisal from AMC's website.  It was only then that the Blackburns discovered their home had been grossly overappraised at $222,000.00 on November 24, 2004.

34.     The Blackburns then contacted an attorney specializing in real estate, Nick Tillema.  Mr. Tillema informed the Blackburns that homes in their neighborhood appraise for $130,000.00 – $150,000.00.

35.     On March 13, 2006, the Blackburns filed a complaint against Ameriquest with the Attorney General of Indiana.  Exhibit L.

36.     A month later, in April 2006, Ms. Blackburn called AMC and spoke to an agent named Lisa about the possibility of refinancing.  Lisa told Ms. Blackburn that AMC would schedule another appraisal so that they could refinance before the interest rate increased.

37.     AMC arranged for an appraiser to conduct a current appraisal on the Blackburns' house.  Daniel McCaslin, a licensed broker/appraiser, appraised the Blackburns' house at $134,000.00 on March 11, 2006.  Exhibit M.  This figure was a whopping $88,000.00 less than the Ameriquest appraisal, even though Mr. McCaslin's appraisal accounted for the house's four bedrooms and 2.5 bathrooms and Ameriquest's appraisal did not.

38.     On April 19, 2006, in response to Ms. Blackburn's complaint that had been filed with the Attorney General, Ameriquest offered the Blackburns a modification of terms, including a 6.99% fixed-rate mortgage for the remainder of the loan and a remaining principal balance of $188,847.20 as of April 18, 2006, to respond to the issues raised in Ms. Blackburn's complaint.

39.     The Blackburns declined Ameriquest's offer for a modification of terms.

7

40.     Also in connection with the November 19, 2004 loan, the Blackburns were charged a "loan discount" of $7,379.56, or 3.799% of the principal.  Exhibit D.  This was in addition to an appraisal fee of $200.00, a property value fee of $125.00, a tax related service fee of $70.00, a flood search fee of $16.00, a lenders processing fee of $626.00, a lenders admin fee of $239.00 and an application fee of $360.00.  All of these charges were retained by Ameriquest from the loan proceeds.

41.     Ameriquest agreed and represented at the closing, by means of a standard form document (Exhibit I), that the retention of the "loan discount" from the loan proceeds was in exchange for a reduction in the interest rate.

42.     This understanding and representation was false.  In fact, the interest rate was not reduced, but was increased, as shown by Exhibit A.

43.     On information and belief, JPMC Mortgage Specialty, formerly known as WM Specialty Mortgage, LLC, owns plaintiffs' loan.

44.     In the event JPMC Mortgage Specialty, formerly known as WM Specialty Mortgage, LLC, does not own plaintiffs' loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

45.     In addition, defendants Ameriquest and AMC Mortgage Services, Inc., have a pattern and practice of retaliating against its customers who exercise their rights under federal credit protection statutes by filing, in order to assert their rights in good faith, a lawsuit against Ameriquest and its affiliates.

46.     Once a customer files suit, his/her account is "flagged," access to his or her on-line account is blocked, and he or she can no longer make payments via on line.  In addition, in many cases, AMC simply stops sending monthly statements to the customer.

8

47.     After plaintiffs filed suit, Ameriquest and/or AMC stopped sending them monthly statements.  They did not receive a single statement from approximately July, 2006, until Chase Home Finance, LLC became their servicer in February, 2009.

48.     All such servicing problems are the direct result of plaintiffs having filed suit against defendants.  Customers who do not file lawsuits do not experience these types of problems at all, to the same extent or with the same degree of regularity.

## COUNT I - TRUTH IN LENDING ACT

49.     Plaintiffs incorporate paragraphs 1-48.

50.     Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever**

9

occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

<u>**GROUNDS FOR RESCISSION**</u>

51.     In connection with the loan, Ameriquest Mortgage Company failed to

provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of

15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

52.     Only one of the federal notices of right to cancel provided to plaintiffs were completed, instead of the four required.  See Exhibit F.

53.     The delivery of two different notices of right to cancel is confusing and obfuscatory, and does not constitute clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

54.     Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

55.     Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

56.     Notice of rescission has been given to defendants.  A copy is attached as Exhibit N.

57.     The loan has not been rescinded.

58.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

59.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

11

      a.      A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

      b.      Statutory damages for the underlying disclosure violation;

      c.      If appropriate, statutory damages for failure to rescind;

      d.      Attorney's fees, litigation expenses and costs.

      e.      Such other or further relief as the Court deems appropriate.

## COUNT II - INDIANA DECEPTIVE CONSUMER SALES ACT

60      Plaintiffs incorporate paragraphs 1-48. This claim is against Ameriquest.

61.      Plaintiffs used the proceeds of their Ameriquest loan for primarily personal and household purposes.

62.      By producing a fraudulent, inflated appraisal of the Blackburns' home, Ameriquest fraudulently induced the Blackburns to enter into a note and mortgage for a residential refinance loan, in violation of the Indiana Deceptive Consumer Sales Act, Burns Ind. Code Ann. § 24-5-0.5-2 et seq.

63.      These acts and representations were deceptive as to the subject matter of a consumer transaction, i.e., the terms of the loan, the cost of the loan and whether the Blackburns in fact qualified for the loan.

64.      Ameriquest has not cured or offered to cure its deceptive acts and representations.

65.      Ameriquest's act and representations are incurable deceptive acts and misrepresentations.

66.      Ameriquest's deceptive acts and misrepresentations were willful.

12

67.     The Blackburns suffered actual damages as the proximate result of Ameriquest's deceptive acts and representations.  § 24-5-0.5-4(a).

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

a.     Actual damages;

b.     Increased damages for willful conduct;

c.     A voiding or limiting of Ameriquest's note and mortgage with the Blackburns.

d.     Restitution;

e.     Attorney's fees, costs and litigation expenses; and

f.     Any other or further relief that the Court deems just.

### COUNT III - COMMON LAW FRAUD

68.     Plaintiffs incorporate paragraphs 1-48.  This claim is against Ameriquest.

69.     On November 19, 2004, Ameriquest represented to the Blackburns that, based on the purported, existing value of their home, the Blackburns qualified for a loan.

70.     This representation was material to the terms of Ameriquest's loan to the Blackburns.

71.     Ameriquest's representation to the Blackburns that they qualified for the loan was false or fraudulent because it was based on a representation concerning the value of their home that was materially false.

72.     Ameriquest made this representation intentionally, with knowledge and/or reckless ignorance of its falsity.

13

73.     Ameriquest's representation that the Blackburns qualified for the loan caused the Blackburns to rely on the misrepresentation to their detriment.  Based on McCaslin's appraisal, <u>Exhibit M</u>, the Blackburns' property is worth $134,000.00, resulting in a 140.9% loan-to-value ratio.  Consequently, the Blackburns will not be able to refinance with a reputable mortgage lender, and they are effectively "trapped" in their current loan.

74.     The Blackburns' reliance was justifiable.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

a.     Actual and compensatory damages;

b.     Punitive damages; and

c.     Such other or further relief as the Court deems appropriate.

## COUNT IV -B INDIANA DECEPTIVE CONSUMER SALES ACT

75.     Plaintiffs incorporate paragraphs 1-48.  This claim is against Ameriquest.

76.     Plaintiffs used the proceeds of their Ameriquest loan for primarily personal and household purposes.

77.     Ameriquest represented that an appraisal of the Blackburns' home had been conducted prior to the closing of the loan, in violation of the Indiana Deceptive Consumer Sales Act, Burns Ind. Code Ann. § 24-5-0.5-2 <u>et seq</u>.

78.     This representation was deceptive as to the subject matter of a consumer transaction, i.e., the terms of the loan, the cost of the loan, the cost of the appraisal and whether the Blackburns in fact qualified for the loan.

79.     Ameriquest has not cured or offered to cure its deceptive representation.

80.     Ameriquest's representation is an incurable misrepresentation.

14

81.    Ameriquest's deceptive act was willful.

82.    The Blackburns suffered actual damages as the proximate result of Ameriquest's deceptive act and representation.  § 24-5-0.5-4(a).  Ameriquest's representation that an appraisal had been conducted caused the Blackburns to pay a $200.00 appraisal fee for an appraisal that had not been conducted and to enter a loan transaction with Ameriquest for which they did not qualify.  Consequently, they are effectively "trapped" in their current mortgage.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

    a.    Actual damages;

    b.    Increased damages for willful conduct;

    c.    A voiding or limiting of Ameriquest's note and mortgage with the Blackburns.

    d.    Restitution;

    e.    Attorney's fees, costs and litigation expenses; and

    f.    Any other or further relief that the Court deems just.

### COUNT V - COMMON LAW FRAUD

83.    Plaintiffs incorporate paragraphs 1-48.  This claim is against Ameriquest.

84.    On November 19, 2004, Ameriquest represented to the Blackburns that an appraisal of their home had been conducted prior to the closing.  Exhibit D.

85.    This representation was material to the terms of Ameriquest's $200.00 appraisal fee that was charged to the Blackburns and to the terms of Ameriquest's loan to the Blackburns.  Exhibit D.

15

86.     Ameriquest's representation to the Blackburns that an appraisal had been conducted prior to the closing was false or fraudulent.  The "appraisal" was not conducted until five days later, on November 24, 2004.  Exhibit K.

87.     Ameriquest made this representation intentionally, with knowledge and/or reckless ignorance of its falsity.

88.     Ameriquest's representation that an appraisal had been conducted caused the Blackburns to rely on the misrepresentation to their detriment.  The Blackburns paid a $200.00 appraisal fee to Ameriquest for an appraisal that had not been performed.  The Blackburns were also induced into a loan for which they did not qualify, in reliance on Ameriquest's representation that an appraisal had been conducted.  Exhibit A and Exhibit D.

89.     The Blackburns' reliance was justifiable.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

> a.     Actual and compensatory damages;
>
> b.     Punitive damages; and
>
> c.     Such other or further relief as the Court deems appropriate.

## COUNT VI - INDIANA DECEPTIVE CONSUMER SALES ACT

90.     Plaintiffs incorporate paragraphs 1-48.  This claim is against Ameriquest.

91.     Plaintiffs used the proceeds of their Ameriquest loan for primarily personal and household purposes.

92.     By counting the value of the Blackburns= house twice, Ameriquest misrepresented the Blackburns' net worth at $414,616.00 and fraudulently induced the

16

Blackburns to enter into a note and mortgage for a residential refinance loan, in violation of the Indiana Deceptive Consumer Sales Act, Burns Ind. Code Ann. § 24-5-0.5-2 et seq.

93.     This act and representation were deceptive as to the subject matter of a consumer transaction, i.e., the terms of the loan, the cost of the loan and whether the Blackburns in fact qualified for the loan.

94.     Ameriquest has not cured or offered to cure its deceptive act and representation.

95.     Ameriquest's act and representation are incurable.

96.     Ameriquest's deceptive act and misrepresentation were willful.

97.     The Blackburns suffered actual damages as the proximate result of Ameriquest's deceptive act and representation. § 24-5-0.5-4(a).

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

      a.     Actual damages;

      b.     Increased damages for willful conduct;

      c.     A voiding or limiting of Ameriquest's note and mortgage with the Blackburns.

      d.     Restitution;

      e.     Attorney's fees, costs and litigation expenses; and

      f.     Any other or further relief that the Court deems just.

### COUNT VII - COMMON LAW FRAUD

98.     Plaintiffs incorporate paragraphs 1-48.  This claim is against Ameriquest.

17

99.     On November 19, 2004, Ameriquest represented to the Blackburns that their net worth equaled $414,616.00 and that they qualified for the loan.  Exhibit H and Exhibit A.

100.     These representation was material to the terms of the Blackburns' loan from Ameriquest..

101.     Ameriquest's representation to the Blackburns that their net worth amounted to $414,616 was false or fraudulent.  It was calculated by counting the purported value of the Blackburns' house twice.

102.     Ameriquest made this representation intentionally, with knowledge and/or reckless ignorance of its falsity.

103.     Ameriquest's representation that the Blackburns' net worth was $414,616.00 caused the Blackburns to rely on the misrepresentation to their detriment.  The Blackburns were induced to enter a loan transaction for which they did not qualify.  Based on McCaslin's appraisal, Exhibit M, the Blackburns' property is worth $134,000.00, resulting in a 140.9% loan-to-value ratio.  Consequently, the Blackburns will not be able to refinance with a reputable mortgage lender, and they are effectively "trapped" in their current loan.

104.     The Blackburns' reliance was justifiable.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

a.     Actual and compensatory damages;

b.     Punitive damages; and

c.     Such other or further relief as the Court deems appropriate.

18

## COUNT VIII - INDIANA DECEPTIVE CONSUMER SALES ACT

105.    Plaintiffs incorporate paragraphs 1-48.  This claim is against Ameriquest.

106.    Plaintiffs used the proceeds of their Ameriquest loan for primarily personal and household purposes.

107.    Ameriquest misrepresented the effect that the "loan discount" would have on the Blackburns' interest rate, in violation of the Indiana Deceptive Consumer Sales Act, Burns Ind. Code Ann. § 24-5-0.5-2 et seq.

108.    Ameriquest represented that paying a loan discount would reduce the Blackburns' interest rate.  Exhibit I.  In fact, the Blackburns paid a $7,379.56 loan discount and their interest rate increased.  Exhibit D and Exhibit A.

109.    This act and representation were deceptive as to the subject matter of a consumer transaction, i.e., the terms of the loan and the cost of the loan.

110.    Ameriquest has not cured or offered to cure its deceptive act and representation.

111.    Ameriquest's act and representation are incurable.

112.    Ameriquest's deceptive act and misrepresentation were willful.

113.    The Blackburns suffered actual damages as the proximate result of Ameriquest's deceptive act and representation.  § 24-5-0.5-4(a).

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

        a.      Actual damages;

        b.      Increased damages for willful conduct;

        c.      A voiding or limiting of Ameriquest's note and mortgage with the

Blackburns.

      d.     Restitution;

      e.     Attorney's fees, costs and litigation expenses; and

      f.     Any other or further relief that the Court deems just.

### COUNT IX - BREACH OF CONTRACT

114.    Plaintiffs incorporate paragraphs 1-48.  This claim is against Ameriquest.

115.    Ameriquest breached its contract by undertaking that the retention from the loan proceeds of a "loan discount" would result in a reduction of the interest rate (Exhibit I), charging such a discount, and then not reducing the interest rate.  Exhibit A.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against Ameriquest for:

      a.     Appropriate damages;

      b.     Costs of suit; and

      c.     Such other and further relief as the Court deems proper.

### COUNT X - INDIANA DECEPTIVE CONSUMER SALES ACT

116.    Plaintiffs incorporate paragraphs 1-48.  This claim is against Ameriquest.

117.    Plaintiffs used the proceeds of their Ameriquest loan for primarily personal and household purposes.

118.    Ameriquest misrepresented the adjustable rate loan, by characterizing it as a two-year fixed loan that would be "locked-in" before the interest rate became adjustable, and then by overappraising the home in order to prevent refinancing.  This conduct violates the Indiana Deceptive Consumer Sales Act, Burns Ind. Code Ann. § 24-5-0.5-2 et seq.

119.     These acts and representations were deceptive as to the subject matter of a consumer transaction, i.e., the terms of the loan and the cost of the loan.

120.     Ameriquest has not cured or offered to cure its deceptive acts and representations.

121.     Ameriquest's acts and representations are incurable.

122.     Ameriquest's deceptive acts and misrepresentations were willful.

123.     The Blackburns suffered actual damages as the proximate result of Ameriquest's deceptive acts and representations.  § 24-5-0.5-4(a).  The Blackburns were deceived into accepting an adjustable rate mortgage, and will consequently have to pay an increased interest rate.  The overappraisal prevents them from refinancing in order to realize the fixed rate that was promised to them by Ameriquest.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

a.     Actual damages;

b.     Increased damages for willful conduct;

c.     A voiding or limiting of Ameriquest's note and mortgage with the Blackburns.

d.     Restitution;

e.     Attorney's fees, costs and litigation expenses; and

f.     Any other or further relief that the Court deems just.

## COUNT XI - INDIANA DECEPTIVE CONSUMER SALES ACT

124.     Plaintiffs incorporate paragraphs 1-47.  This claim is against Ameriquest.

21

125. Plaintiffs used the proceeds of their Ameriquest loan for primarily personal and household purposes.

126. Before closing, Ameriquest represented that the monthly payment would be approximately $1,200.00, with escrow payments for taxes and insurance included. Immediately prior to closing, Ameriquest informed the Blackburns that there had been a "big mistake" and that the monthly payment would be $1,845.88, over $600.00 more than Ameriquest's quote. This bait-and-switch conduct violates the Indiana Deceptive Consumer Sales Act, Burns Ind. Code Ann. § 24-5-0.5-2 et seq.

127. This act and representation were deceptive as to the subject matter of a consumer transaction, i.e., the terms of the loan and the cost of the loan.

128. Ameriquest has not cured or offered to cure its deceptive act and representation.

129. Ameriquest's act and representation are incurable.

130. Ameriquest's deceptive act and misrepresentation were willful.

131. The Blackburns suffered actual damages as the proximate result of Ameriquest's deceptive act and representation. § 24-5-0.5-4(a). The Blackburns were promised a particular monthly payment, and then forced to pay a higher monthly payment after the closing of their loan.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

    a.    Actual damages;

    b.    Increased damages for willful conduct;

    c.    A voiding or limiting of Ameriquest's note and mortgage with the

22

Blackburns.

d.     Restitution;

e.     Attorney's fees, costs and litigation expenses; and

f.     Any other or further relief that the Court deems just.

### COUNT XII - ECOA

132.    Plaintiffs incorporate ¶¶ 1-48 above.  This claim is against defendants AMC and Ameriquest.

133.    Plaintiffs were applicants within the meaning of 15 U.S.C. ç1691a(b) and Regulation B (which defines "applicant" to include persons who have received credit).

134.    By filing this lawsuit in good faith pursuant to the Consumer Credit Protection Act, plaintiffs were and are engaged in a statutorily protected activity.

135.    As a result of filing this lawsuit, plaintiffs have suffered and continue to suffer adverse actions at the hands of defendants.  Ameriquest and AMC have, in ways detailed above and in other ways, taken retaliatory action against these and other plaintiffs and their accounts.  These actions constitute "an unfavorable change in the terms of an account that does not affect all or a substantial portion of a class of the creditor's accounts."  12 C.F.R. § 202.2 (c)(1)(ii).

136.    A direct causal connection exists between plaintiffs' filing suit and defendants' subsequent treatment of their accounts, as detailed above.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

a.     Actual and statutory and punitive damages according to proof;

b     Reasonable attorneys' fees and costs;

       c.      Injunctive relief, if the practices complained of have not ceased or do not cease immediately; and

       d.      Such other and further relief the court deems proper and just.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **JURY DEMAND**

Plaintiffs demand trial by jury.

s/Daniel A. Edelman
Daniel A. Edelman

2nd Amended Complaint_Pleading.wpd

24

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on April 10, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that true and correct copies were additionally sent via email or by U.S. Mail to those parties without email addresses.

Jonathan N. Ledsky
jledsky@vbhlc.com

Craig Allen Varga
cvarga@vbhlc.com

Scott J. Helfand
shelfand@vbhlc.com

Bernard E. LeSage
blesage@buchalter.com

Richard Robert Skiles
Skiles Detrude
150 East Market St.
Suite 200
Indianapolis, IN 46204

Chase Home Finance, LLC
c/o Registered Agent
C.T. Corporation System
208 S. LaSalle St.
Suite 814
Chicago, IL 60604

s/Daniel A. Edelman
Daniel A. Edelman

25

# EXHIBIT A

Ameriquest Mortgage Company
6650 Telcom Drive, Suite 290
Indianapolis, IN 46278

(317)275-6080

# BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

Sherry K Blackburn
Joseph Frank Blackburn

Date: November 19, 2004

Notice: [X] Delivered  [ ] Mailed

Loan Number: 0100784800 - 5776

Description of Credit Request:

8968 Sunglow Ct.
Indianapolis,IN 46231

[X] 1st Trust Deed/Mortgage  [ ] 2nd Trust Deed/Mortga

[ ] Other:

Property Address: 8968 Sunglow Ct.

Indianapolis, IN 46231    County of MARION

## TYPE OF TRANSACTION:

[ ] Purchase   [X] Refinance   Other

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [ ] Fixed Rate Loan [X] Adjustable Rate Loan | [ ] Fixed Rate Loan [X] Adjustable Rate Loan |
| Amount Financed: $ 185,309.36 | Amount Financed: $ 184,870.89 |
| Settlement Charges: $ 10,041.64 (Includes all Prepaid Finance Charges) | Settlement Charges: $ 11,328.46 (Includes all Prepaid Finance Charges) |
| Loan Amount: $ 194,251.00 | Loan Amount: $ 194,250.00 |
| Annual Percentage Rate: 8.805 % | Annual Percentage Rate: 8.950 % |
| Term: 360 | Term: 240 |
| Initial Interest Rate: 7.600 % | Initial Interest Rate: 7.650 % |
| Margin: 5.998 % | Margin: 6.000 % |
| Prepayment Penalty: [ ] YES [X] NO | Prepayment Penalty: [ ] YES [X] NO |

Borrower(s) and Ameriquest Mortgage Company hereby acknowledge that "Final Loan Terms" stated above are bas
exclusively on information, statements, and representations (all material facts) which have been provided by
borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may char
prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material fa
Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender r
require new loan documents to be executed by the borrower(s).

| | |
|---|---|
| Borrower  Sherry K Blackburn _____ Date | Borrower  Joseph Frank Blackburn _____ |
| Borrower _____ Date | Borrower _____ |

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan
funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on th
basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity t
enter into a binding contract); because all or part of the applicant's income derives from any public assistanc
program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Ac
The Federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE
COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.



STMTCO (Rev. 3/99)

# EXHIBIT B

Loan Number: 0100784800 - 5776

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHL
PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND TH
MAXIMUM RATE I MUST PAY.

| November 19, 2004 | Orange | CA |
|---|---|---|
| Date | City | State |

8968 Sunglow Ct., Indianapolis, IN  46231
Property Address

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ **194,250.00** (this amount is called "principal"), plus
interest, to the order of the Lender.  The Lender is  **Ameriquest Mortgage Company.**

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a
yearly rate of  **7.650 %**.  This interest rate I will pay may change in accordance with Section 4 of this Note.  The
interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any
default described in Section 7(B) of this Note.

### 3.  PAYMENTS
#### (A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   **January 1, 2005** .
I will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may owe under this Note.  My monthly payments will be applied to interest before principa
If, on, **December 1, 2024** , I still owe amounts under this Note, I will pay those amounts in full on that date, which
is called the "Maturity Date."
I will make my payments at:     **505 City Parkway West, Suite 100,  Orange, CA 92868**

or at a different place if required by the Note Holder.
#### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ **1,582.73**.  This amount may change.
#### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest ra
that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my month
payment in accordance with Section 4 of this Note.

### 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (A) Change Dates
The interest rate I will pay may change on the first day of, **December, 2006**  and on that day every sixth  mon
thereafter.  Each date on which my interest rate could change is called a "Change Date."
#### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an index.  The "Index" is the average
interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), a
published in The Wall Street Journal.  The most recent Index figure available as of the date 45 days before th
Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based up
comparable information.  The Note Holder will give me notice of this choice.
#### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  **six** percentage point
**(6.000%)** to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eig
of one percent (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my ne
interest rate until the next Change Date.  The Note Holder will then determine the amount of the monthly payme
that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on t
Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be t
new amount of my monthly payment.



00000100784800030590301

Initials:

1 of 3

11/19/2004 2:35:0

Loan Number: 0100784800 - 5776

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.650** % or less than **7.650%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **1.000%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.650** % or less than **7.650** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(B) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.



0000010078480003005903 02

Initials:

11/19/2004 2:35:01

Loan Number: 0100784800 - 5776

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)
Borrower   Sherry K Blackburn

_____ (Seal)
Borrower   Joseph Frank Blackburn

_____ (Seal)
Borrower

_____ (Seal)
Borrower

0000001007848000300590303

11/19/2004 2:35:01 PM

# EXHIBIT C

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

——————————————————————— [Space Above This Line For Recording Data] ———————————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated November 19, 2004
together with all Riders to this document.
(B) "Borrower" is JOSEPH FRANK BLACKBURN & SHERRY K. BLACKBURN

Borrower is the mortgagor under this Security Instrument.

INDIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3015  1/01
  11/19/2004 2:35:01                             0100784800 - 5776

AM6IN (0404)
Page 1 of 15             Initials:_____
VMP Mortgage Solutions, Inc. (800)521-7291

0000010078480003012716 01

(C) **"Lender"** is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware
Lender's address is 1100 Town and Country Road, Suite 200   Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) **"Note"** means the promissory note signed by Borrower and dated November 19, 2004
The Note states that Borrower owes Lender one hundred ninety-four thousand two
hundred fifty and 00/100                                                        Dollars
(U.S. $ 194,250.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than December 1, 2024           .
(E) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) **"Escrow Items"** means those items that are described in Section 3.
(L) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

AM6IN (0404)                              Page 2 of 15                              Form 3015  1/01

0100784800 - 5776
11/19/2004 2:35:01

00000100784800080127160 2

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the County                                                                                    [Type of Recording Jurisdiction]
of MARION                                                                                    [Name of Recording Jurisdiction] :
Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: 9048775                                        which currently has the address of
8968 Sunglow Ct.                                                                              [Street]
Indianapolis                              [City], Indiana 46231                    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: _____

AM6IN (0404)                              Page 3 of 15                              Form 3015 1/01
11/19/2004 2:35:01
                                                      0100784800 -5776


0000010078480003012 71603

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

AM6IN (0404)                    Page 4 of 15                    Form 3015  1/01

Initials: _____

0100784800 - 5776
11/19/2004  2:35:01



for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or

Initials: _____

AM6IN (0404)                              Page 5 of 15                          Form 3015 1/01

0100784800 - 5776
11/19/2004 2:35:01



0000010078480003012716605

ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and

Initials: _____

AM6IN (0404)                     Page 6 of 15                     Form 3015  1/01

0100784800 - 5776
11/19/2004  2:35:01


0000010078480000301271605

Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Initials: _____

AM6IN (0404)    Page 7 of 15    Form 3015 1/01


0000010078480003012716O7

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by any insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Initials: _____

AM6IN (0404)                    Page 8 of 15                    Form 3015  1/01

0100784800-5776

11/19/2004  2:35:01



0000010078480000301271608

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Initials: _____

0100784800 - 5776

11/19/2004 2:35:01


0000010078480003012711609

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless

0100784800 -5776
11/19/2004 2:35:01


0000010078480000301271610

Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or

Initials: _____

0100784800 -5776
11/19/2004 2:35:01



00000100784800030127'1611

cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Initials: _____

AM6IN (0404)                    Page 12 of 15                    Form 3015  1/01

0100784800 -5776
11/19/2004 2:35:01



0000010078460003012716512

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

0100784800 - 5776
11/19/2004 2:35:01



000001007848000301271613

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

| | |
|---|---|
| _______________ | _______________ (Seal) Sherry K Blackburn -Borrower |
| _______________ | _______________ (Seal) Joseph Frank Blackburn -Borrower |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |

**STATE OF INDIANA,**               **County ss:**

On this _____ day of _____ , before me,

          Day                                Month/Year

the undersigned, a Notary Public in and for said county, personally appeared

_____

_____

_____

and acknowledged the execution of the foregoing instrument.

    WITNESS my hand and official seal.

My Commission Expires:

_____

Notary Public

This instrument was prepared by:
Carrie Eller
6650 Telcom Drive, Suite 290,Indianapolis, IN 46278



# EXHIBIT D

| A. | SETTLEMENT STATEMENT | U.S. Department of Housing and Urban Development | | OMB Approval No. 2502-0491 |
|---|---|---|---|---|

Optional Form for
Transactions without Sellers

File No.: 200090625900

| Name & Address of Borrower: | Name & Address of Lender: |
|---|---|
| Joseph Fran Blackburn and Sherry K. Blackburn | Ameriquest Mortgage Company |
| 8968 Sunglow Court | 6550 Telecom Drive 8290 |
| Indianapolis, IN 46231 | Indianapolis, IN 46278 |
| Property Location: | Settlement Agent: Mortgage Information Services, Inc. |
| | Place of Settlement: 2889 N. COMMERCE PARKWAY |
| 8968 Sunglow Court | MIRAMAR, FL 33025 |
| Indianapolis, IN 46231 | |
| Loan Number: 0100784800 | Settlement Date: 11/19/2004 |
| | Fund Date: 11/26/2004 |

| L. Settlement Charges | | | M. Disbursements to Others | |
|---|---|---|---|---|
| 800. Items Payable in Connection with Loan | | | 1501. Mortgage Pay Off | $151,628.5 |
| 801. Loan Origination Fee % to | | | to CITIFINANCIAL | |
| 802. Loan Discount 3.799 % to Ameriquest Mortgage Company | | $7,379.55 | 1502. Pay Off | $440.( |
| 803. Appraisal Fee | to Ameriquest Mortgage Company | $380.00 | to Lazarus/WDSNB | |
| 804. Property Value Fee | to Ameriquest Mortgage Company | $125.00 | 1503. Pay Off | $1,661.( |
| 805. Tax Related Service Fee | to Ameriquest Mortgage Company | $70.00 | to Indiana FCU | |
| 806. Flood Search Fee | to Ameriquest Mortgage Company | $16.00 | 1504. Pay Off | $6,994.( |
| 807. Lenders Processing Fee | to Ameriquest Mortgage Company | $626.00 | to Indiana UCU | |
| 808. Lenders Admin Fee | to Ameriquest Mortgage Company | $239.00 | 1505. Pay Off | $3,736.1 |
| 809. Application Fee | to Ameriquest Mortgage Company | $360.00 | to CASTLE CREDIT CORP | |
| 810. | to | | 1506. Pay Off | $4,481.( |
| 811. | to | | to FIFTH THIRD BANK | |
| 812. | to | | 1507. Pay Off | $711.( |
| 813. | to | | to HHBANK | |
| 814. | to | | 1508. Pay Off | $4,906.( |
| 817. | to | | to GECCCC | |
| 900. Items Required by Lender to be Paid in Advance | | | 1509. | |
| 901. Interest from 11/26/2004 to 12/1/2004 @$40.71 /day | | $203.55 | to | |
| 902. Mortgage Insurance Premium for months to | | | 1510. | |
| 903. Hazard Insurance Premium for months to | | | to | |
| 904. | to | | 1511. | |
| 1000. Reserves Deposited with Lender | | | to | |
| 1001. Hazard Insurance | 3 months @$115.75 per month | $347.25 | 1512. | |
| 1002. Mortgage Insurance | month @ per month | | to | |
| 1003. City property taxes | months @ per month | | 1513. | |
| 1004. County property taxes | 4 months @$147.40 per month | $589.59 | to | |
| 1005. Assessment Taxes | months @ per month | | 1514. | |
| 1006. School property taxes | months @ per month | | to | |
| 1007. Other taxes | months @ per month | | 1515. | |
| 1008. Other taxes | months @ per month | | to | |
| 1009. | months @ per month | | 1516. | |
| 1010. | months @ per month | | to | |
| 1011. Aggregate Adjustment | to Ameriquest Mortgage Company | | 1517. | |
| 1100. Title Charges | | | to | |
| 1101. Settlement or closing fee | to Mortgage Information Services | $325.00 | 1518. | |
| 1102. Abstract or title search | to | | to | |
| 1103. Title examination | to Mortgage Information Services | $225.00 | 1519. | |
| 1104. Title insurance binder | to Mortgage Information Services | $50.00 | to | |
| 1105. Closing Fee | to THE SMITH GROUP | $250.00 | 1520. TOTAL DISBURSED (enter on line | $174,557.( |
| 1106. Courier Fee | to Mortgage Information Services | $60.00 | 1603) | |
| 1107. Attorney's fees | to | | | |
| (includes above item numbers ) | | | | |
| 1108. Title Insurance | to Mortgage Information Services | $487.50 | | |
| (includes above item numbers ) | | | | |
| 1109. Lender's Coverage | $194,250.00/$487.50 | | | |
| 1110. Owner's Coverage | $0.00/$0.00 | | | |
| 1111. Escrow fee | to | | | |
| 1112. | to | | | |
| 1113. | to | | | |
| 1114. | to | | | |
| 1115. | to | | | |
| 1116. | to | | | |
| 1117. | to | | | |
| 1118. | to | | | |
| 1119. | to | | | |
| 1120. | to | | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Recording Fees: Deed ; Mortg $75.00; Rel | | $75.00 | | |
| 1202. City/county tax/stamps: Deed ; Mortg | | | | |
| 1203. State tax/stamps: Deed ; Mortg | | | N. NET SETTLEMENT | |
| 1204. Tax certificates | to | | | |
| 1205. | to | | 1600. Loan Amount | $194,250. |
| 1206. | to | | | |
| 1207. | to | | 1601. Plus Cash/Check from Borrower | $0.( |
| 1300. Additional Settlement Charges | | | | |
| 1301. Survey | to | | 1602. Minus Total Settlement Charges (Line 1400) | $11,628. |
| 1302. Pest Inspection | to | | | |
| 1303. | to | | 1603. Minus Total Disbursements to Others (Line 1520) | $174,557.( |
| 1304. | to | | | |
| 1305. | to | | 1604. Equals Disbursements to Borrower | $8,063. |
| 1306. | to | | (after expiration of any applicable rescission period required by law) | |
| 1307. | to | | | |
| 1308. | to | | | |
| 1400. Total Settlement Charges (enter on Line 1602) | | $11,628.45 | | |

Borrower's Signatures

Joseph Fran Blackburn

Sherry K. Blackburn

_____
Connie Roger        *[signature]*        11/19/04
Settlement Agent                          Date

# EXHIBIT E

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Ameriquest Mortgage Company
6650 Telcom Drive, Suite 290
Indianapolis, IN 46278
(317)275-6080

☐ Preliminary  ☒ Final

Borrowers: Sherry K Blackburn    Joseph Frank Blackburn

Broker License:

Address:      8968 Sunglow Ct.
City/State/Zip: Indianapolis, IN 46231

Type of Loan: ADJUSTABLE RATE
Date: November 19, 2004

Property:    8968 Sunglow Ct., Indianapolis, IN 46231

Loan Number: 0100784800 - 5776

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid you have made all payment scheduled. |
|---|---|---|---|
| 8.950 % | $ 215,616.23 | $ 184,870.89 | $ 400,487.12 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $1,582.73 | 01/01/2005 | | | |
| 215 | $1,678.27 | 01/01/2007 | | | |
| 1 | $1,673.55 | 12/01/2024 | | | |

**VARIABLE RATE FEATURE:**
☒ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**   You are giving a security interest in the property located at:  8968 Sunglow Ct., Indianapolis, IN  46231

**ASSUMPTION:**   Someone buying this property
☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**   You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

**LATE CHARGES:**   If a payment is late, you will be charged  6.000%  of the overdue payment .

**PREPAYMENT:**   If you pay off your loan early, you
☐ may   ☒ will not   have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____
Borrower Sherry K Blackburn               Date

_____
Borrower Joseph Frank Blackburn           Date

_____
Borrower                                  Date

_____
Borrower                                  Date

TIL1 (Rev. 7/01)


0000010078480003057501011

**BORROWER COPY**

11/19/2004 2:35:01 P

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary   [X] Final

LENDER: Ameriquest Mortgage Company
6650 Telcom Drive, Suite 290
Indianapolis, IN 46278
(317)275-6080

Broker License:

Borrowers: Sherry K Blackburn    Joseph Frank Blackburn

Type of Loan: ADJUSTABLE RATE
Date: November 19, 2004

Address:    8968 Sunglow Ct.
City/State/Zip: Indianapolis, IN 46231

Loan Number: 0100784800 - 5776

Property:    8968 Sunglow Ct., Indianapolis, IN 46231

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.950 % | $ 215,616.23 | $ 184,870.89 | $ 400,487.12 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $1,582.73 | 01/01/2005 | | | |
| 215 | $1,678.27 | 01/01/2007 | | | |
| 1 | $1,673.55 | 12/01/2024 | | | |

**VARIABLE RATE FEATURE:**
[X]   Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**    You are giving a security interest in the property located at: 8968 Sunglow Ct., Indianapolis, IN 46231

**ASSUMPTION:**  Someone buying this property  [X] cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:**   If a payment is late, you will be charged  6.000%  of the overdue payment .

**PREPAYMENT:**  If you pay off your loan early, you
☐ may   [X] will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____
Borrower Sherry K Blackburn    Date

_____    _____
Borrower Joseph Frank Blackburn    Date

_____    _____
Borrower    Date

_____    _____
Borrower    Date

TIL1 (Rev. 7/01)

000001007848000305750101

**BORROWER COPY**

11/19/2004 2:35:01 PM

# EXHIBIT F

# NOTICE OF RIGHT TO CANCEL

LENDER:  Ameriquest Mortgage Company

DATE:  November 19, 2004
LOAN NO.:  0100784800 - 5776
TYPE:  ADJUSTABLE RATE

BORROWER(S): Sherry K Blackburn       Joseph Frank Blackburn

ADDRESS:       8968 Sunglow Ct.
CITY/STATE/ZIP:   Indianapolis,IN 46231

PROPERTY:   8968 Sunglow Ct.
                    Indianapolis,  IN  46231

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a leg
right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of th
following events occurs last:

1.  The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
|---|
| 11-19-04 |

or
2.  The date you received your Truth in Lending disclosures;
or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after v
receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on yc
home has been cancelled, and we must return to you any money or property you have given to us or anyone else
connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you mu
then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer
reasonable value. You may offer to return the property at your home or at the location of the property. Money must
returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of yc
offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1600 S Douglass Rd
Anaheim, CA 92806

ATTN:  FUNDING
PHONE:  (714)634-3494
FAX:       (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may u
this notice by dating and signing below. Keep one copy of this notice because it contains important information abc
your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
|---|
| 11-23-04 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliv
your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____               _____
SIGNATURE                                                          DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the
Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification
Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowe

_____          _____          _____
BORROWER/OWNER Sherry K Blackburn      Date             BORROWER/OWNER Joseph Frank Blackburn

_____          _____          _____
BORROWER/OWNER                                   Date             BORROWER/OWNER

1664-NRC (Rev 11/03)

 

0000010078480004000050101

**LENDER COPY**

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:  November 19, 2004
LOAN NO.:  0100784800 - 5776
TYPE:   ADJUSTABLE RATE

BORROWER(S): Sherry K Blackburn        Joseph Frank Blackburn

ADDRESS:        8968 Sunglow Ct.
CITY/STATE/ZIP:   Indianapolis, IN 46231

PROPERTY:   8968 Sunglow Ct.
            Indianapolis,  IN  46231

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
| _____ |

or
2.   The date you received your Truth in Lending disclosures;
or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:      **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
| _____ |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____                          _____
SIGNATURE                                                DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

---

BORROWER/OWNER  Sherry K Blackburn          Date          BORROWER/OWNER  Joseph Frank Blackburn          Date

BORROWER/OWNER                              Date          BORROWER/OWNER                              Date

1664-NRC (Rev 11/03)

0000010078480040000090101

**BORROWER COPY**

11/19/2004 2:35:01 PM

## NOTICE OF RIGHT TO CANCEL

LENDER: Ameriquest Mortgage Company

DATE: November 19, 2004
LOAN NO.: 0100784800 - 5776
TYPE: ADJUSTABLE RATE

BORROWER(S): Sherry K Blackburn     Joseph Frank Blackburn

ADDRESS:     8968 Sunglow Ct.
CITY/STATE/ZIP:     Indianapolis,IN 46231

PROPERTY:     8968 Sunglow Ct.
              Indianapolis, IN 46231

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

_____ ;

or

2. The date you received your Truth in Lending disclosures;
or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN: **FUNDING**
PHONE: **(714)634-3494**
FAX: **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE

_____
DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____      _____
BORROWER/OWNER Sherry K Blackburn    Date      BORROWER/OWNER Joseph Frank Blackburn    Date

_____      _____
BORROWER/OWNER          Date      BORROWER/OWNER         Date

1004-NRC (Rev 11/03)

0000010078480004000050101

**BORROWER COPY**

11/19/2004 2:35:01 PM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:  November 19, 2004
LOAN NO.:   0100784800 - 5776
TYPE:   ADJUSTABLE RATE

BORROWER(S): Sherry K Blackburn      Joseph Frank Blackburn

ADDRESS:       8968 Sunglow Ct.
CITY/STATE/ZIP:   Indianapolis,IN 46231

PROPERTY:   8968 Sunglow Ct.
              Indianapolis,  IN  46231

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

> ENTER DOCUMENT SIGNING DATE
>
> _____

or

2.   The date you received your Truth in Lending disclosures;
or

3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:      **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

> ENTER FINAL DATE TO CANCEL
>
> _____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____          _____
SIGNATURE                                                      DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____          _____
BORROWER/OWNER  Sherry K Blackburn      Date    BORROWER/OWNER  Joseph Frank Blackburn      Date

_____          _____
BORROWER/OWNER                          Date    BORROWER/OWNER                          Date

1664-NRC (Rev 11/03)

0000010078460004000050101

**BORROWER COPY**

11/19/2004 2:35:01 PM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:  November 19, 2004
LOAN NO.:  0100784800 - 5776
TYPE:   ADJUSTABLE RATE

BORROWER(S): Sherry K Blackburn    Joseph Frank Blackburn

ADDRESS:       8968 Sunglow Ct.
CITY/STATE/ZIP:   Indianapolis, IN 46231

PROPERTY:   8968 Sunglow Ct.
Indianapolis, IN  46231

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

<div style="border:1px solid">ENTER DOCUMENT SIGNING DATE<br>_____</div>   ;

or

2.  The date you received your Truth in Lending disclosures;
or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN: **FUNDING**
PHONE: **(714)634-3494**
FAX:     **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

<div style="border:1px solid">ENTER FINAL DATE TO CANCEL<br>_____</div>

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE                                                   DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____
BORROWER/OWNER Sherry K Blackburn          Date

_____
BORROWER/OWNER Joseph Frank Blackburn

_____
BORROWER/OWNER                              Date

_____
BORROWER/OWNER

L064-NRC (Rev 11/03)

00000100784800040005010Т

**BORROWER COPY**

11/19/2004 2:35:01 PM

# NOTICE OF RIGHT TO CANCEL

LENDER: Ameriquest Mortgage Company

DATE: November 19, 2004
LOAN NO.: 0100784800 - 5776
TYPE: ADJUSTABLE RATE

BORROWER(S): Sherry K Blackburn    Joseph Frank Blackburn

ADDRESS: 8968 Sunglow Ct.
CITY/STATE/ZIP: Indianapolis, IN 46231

PROPERTY: 8968 Sunglow Ct.
Indianapolis, IN 46231

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a leg[...] right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of t[...] following events occurs last:

1. The date of the transaction, which is

> **ENTER DOCUMENT SIGNING DATE**
> _____

or
2. The date you received your Truth in Lending disclosures;
or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after [...] receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on y[...] home has been cancelled, and we must return to you any money or property you have given to us or anyone else [...] connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you m[...] then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer [...] reasonable value. You may offer to return the property at your home or at the location of the property. Money must [...] returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of y[...] offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN: **FUNDING**
PHONE: **(714)634-3494**
FAX: **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may u[...] this notice by dating and signing below. Keep one copy of this notice because it contains important information ab[...] your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

> **ENTER FINAL DATE TO CANCEL**
> _____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deli[...] your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____        _____
SIGNATURE                               DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of [...] Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification [...] Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowe[...]

_____  Date    _____
BORROWER/OWNER Sherry K Blackburn          BORROWER/OWNER Joseph Frank Blackburn

_____  Date    _____
BORROWER/OWNER                             BORROWER/OWNER



1064-NRC (Rev 11/03)    0000100784800400060101

**BORROWER COPY**

# NOTICE OF RIGHT TO CANCEL

LENDER:  Ameriquest Mortgage Company

DATE:  November 19, 2004
LOAN NO.:  0100784800 - 5776
TYPE:  ADJUSTABLE RATE

BORROWER(S): Sherry K Blackburn        Joseph Frank Blackburn

ADDRESS:        8968 Sunglow Ct.
CITY/STATE/ZIP:  Indianapolis,IN 46231

PROPERTY:  8968 Sunglow Ct.
              Indianapolis,  IN  46231

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a le
right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of
following events occurs last:

1.  The date of the transaction, which is

> **ENTER DOCUMENT SIGNING DATE**
> _____ ;

or
2.  The date you received your Truth in Lending disclosures;
or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after
receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on y
home has been cancelled, and we must return to you any money or property you have given to us or anyone els
connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you m
then offer to return the money or property. If it is impractical or unfair for you to return the property you must offe
reasonable value. You may offer to return the property at your home or at the location of the property. Money must
returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of y
offer, you may keep it without further obligation.

---

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE:  **(714)634-3494**
FAX:      **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may u
this notice by dating and signing below. Keep one copy of this notice because it contains important information ab
your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

> **ENTER FINAL DATE TO CANCEL**
> _____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deli
your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____        _____
SIGNATURE                                                        DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of
Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification
Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowe

---

BORROWER/OWNER Sherry K Blackburn          Date        BORROWER/OWNER Joseph Frank Blackburn

BORROWER/OWNER                                     Date        BORROWER/OWNER

1064-NRC (Rev 11/03)        
0000010078480004000050101

**BORROWER COPY**

11/19/2004 3:35:01

# NOTICE OF RIGHT TO CANCEL

LENDER:  Ameriquest Mortgage Company

DATE:  November 19, 2004
LOAN NO.:  0100784800 - 5776
TYPE:  ADJUSTABLE RATE

BORROWER(S): Sherry K Blackburn     Joseph Frank Blackburn

ADDRESS:  8968 Sunglow Ct.
CITY/STATE/ZIP:  Indianapolis,IN 46231

PROPERTY:  8968 Sunglow Ct.
Indianapolis, IN 46231

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a le
right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of
following events occurs last:

1. The date of the transaction, which is

**ENTER DOCUMENT SIGNING DATE**
_____

or

2. The date you received your Truth in Lending disclosures;

or

3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after
receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on y
home has been cancelled, and we must return to you any money or property you have given to us or anyone els
connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you m
then offer to return the money or property. If it is impractical or unfair for you to return the property you must offe
reasonable value. You may offer to return the property at your home or at the location of the property. Money must
returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of y
offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE:  **(714)634-3494**
FAX:  **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may
this notice by dating and signing below. Keep one copy of this notice because it contains important information ab
your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**
_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deli
your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE

_____
DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of
Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification
Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowe

_____
BORROWER/OWNER Sherry K Blackburn    Date

_____
BORROWER/OWNER Joseph Frank Blackburn

_____
BORROWER/OWNER    Date

_____
BORROWER/OWNER

1064-NRC (Rev 11/03)


0000100784800400050101

**BORROWER COPY**

11/19/2004 2:25:01

## NOTICE OF RIGHT TO CANCEL

LENDER: Ameriquest Mortgage Company

DATE: November 19, 2004
LOAN NO.: 0100784800 - 5776
TYPE: ADJUSTABLE RATE

BORROWER(S): Sherry K Blackburn      Joseph Frank Blackburn

ADDRESS: 8968 Sunglow Ct.
CITY/STATE/ZIP: Indianapolis,IN 46231

PROPERTY: 8968 Sunglow Ct.
Indianapolis, IN 46231

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
|---|
| _____ |

;

or

2. The date you received your Truth in Lending disclosures;
   or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN: **FUNDING**
PHONE: **(714)634-3494**
FAX: **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
|---|
| _____ |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____      _____
SIGNATURE                                              DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____      Date      _____      Date
BORROWER/OWNER Sherry K Blackburn                    BORROWER/OWNER Joseph Frank Blackburn

_____      Date      _____      Date
BORROWER/OWNER                                              BORROWER/OWNER

1064-NRC (Rev 11/03)

0000010078480004000501 01

**BORROWER COPY**

11/19/2004 2:35:01 PM

EXHIBIT G

## ONE WEEK CANCELLATION PERIOD

Loan Number: 0100784800 - 5776          Borrower(s): Sherry K Blackburn
Date: November 19, 2004                              Joseph Frank Blackburn

You have the right under Federal or state law to three (3) business days during which you can
cancel your loan for any reason. This right is described in the Notice of Right to Cancel you have
received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important
financial decisions you can make. To give you more time to study your loan documents, obtain
independent advice and/or shop for a loan that you believe suits you better, we provide you with
one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to
you. No money will be disbursed before 10:00 a.m. on the first business day after this period expires.
Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of
the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the
day the cancellation period ends. You may cancel by signing and dating in the request to cancel box
below or by using any other written statement that provides your loan number and states your desire to
cancel your loan. The written statement must be signed and dated by any one borrower. Your request
must be delivered to:

Ameriquest Mortgage Company
1600 S Douglass Rd Anaheim, CA 92806
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand
what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____
Borrower/Owner  Sherry K Blackburn                    Date

_____          _____
Borrower/Owner  Joseph Frank Blackburn               Date

_____          _____
Borrower/Owner                                                    Date

_____          _____
Borrower/Owner                                                    Date

| REQUEST TO CANCEL |
| --- |
| I/We want to cancel loan #_____. |
| _____          _____ |
| Borrower/Owner Signature                                Date |

BORROWER COPY

850 (10/00)

0000010078480004042201O1

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0100784800 - 5776          Borrower(s): Sherry K Blackburn
Date: November 19, 2004                          Joseph Frank Blackburn

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1600 S Douglas Rd Anaheim, CA 92806
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____
Borrower/Owner. Sherry K Blackburn          Date

_____          _____
Borrower/Owner  Joseph Frank Blackburn          Date

_____          _____
Borrower/Owner          Date

_____          _____
Borrower/Owner          Date

---

## REQUEST TO CANCEL
I/We want to cancel loan #_____.

_____          _____
Borrower/Owner Signature          Date

---



0000010078450004042201010

850 (10/00)

11/19/2004 2:35:01 PM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0100784800 - 5776

Date: November 19, 2004

Borrower(s): Sherry K Blackburn
Joseph Frank Blackburn

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1600 S Douglass Rd Anaheim, CA 92806
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

---

Borrower/Owner  Sherry K Blackburn

Date

---

Borrower/Owner  Joseph Frank Blackburn

Date

---

Borrower/Owner

Date

---

Borrower/Owner

Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

Borrower/Owner Signature

Date

---



00000100784800040422010101

850 (10/00)

11/19/2004 2:35:01 PM

## BORROWER COPY

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0100784800 - 5776          Borrower(s): Sherry K Blackburn
Date: November 19, 2004                                    Joseph Frank Blackburn

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____
Borrower/Owner  Sherry K Blackburn                          Date


_____          _____
Borrower/Owner  Joseph Frank Blackburn                    Date


_____          _____
Borrower/Owner                                                          Date


_____          _____
Borrower/Owner                                                          Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____          _____
Borrower/Owner Signature                                        Date

---



0000010078480004042201011

850 (10/00)

11/19/2004 2:35:01 PM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0100784800 - 5776  
Date: November 19, 2004

Borrower(s): Sherry K Blackburn  
Joseph Frank Blackburn

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company  
1600 S Douglass Rd Anaheim, CA 92806  
ATTN: Funding Department  
Phone: (714)541-9960  
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

| | |
|---|---|
| Borrower/Owner  Sherry K Blackburn | Date |
| Borrower/Owner  Joseph Frank Blackburn | Date |
| Borrower/Owner | Date |
| Borrower/Owner | Date |

## REQUEST TO CANCEL

I/We want to cancel loan # _____.

Borrower/Owner Signature | Date



0000010078480004042201 01

11/19/2004 2:35:01 PM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0100784800 - 5776

Date: November 19, 2004

Borrower(s): Sherry K Blackburn
                Joseph Frank Blackburn

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

    Ameriquest Mortgage Company
    1600 S Douglass Rd Anaheim, CA 92806
    ATTN: Funding Department
    Phone: (714)541-9960
    Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

---

Borrower/Owner  Sherry K Blackburn                    Date

---

Borrower/Owner  Joseph Frank Blackburn           Date

---

Borrower/Owner                              Date

---

Borrower/Owner                              Date

---

## REQUEST TO CANCEL

I/We want to cancel loan # _____.

_____
Borrower/Owner Signature                 Date



0000010078480004042201 01

850 (10/00)

11/19/2004 2:35:01 PM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0100784800 - 5776        Borrower(s): Sherry K Blackburn
Date: November 19, 2004                    Joseph Frank Blackburn

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____      _____
Borrower/Owner  Sherry K Blackburn            Date

_____      _____
Borrower/Owner  Joseph Frank Blackburn     Date

_____      _____
Borrower/Owner                    Date

_____      _____
Borrower/Owner                    Date

---

### REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____      _____
Borrower/Owner Signature            Date

---


0000010075480000404220101

£50 (10/00)

11/19/2004 2:35:01 PM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0100784800 - 5776          Borrower(s): Sherry K Blackburn
Date: November 19, 2004                          Joseph Frank Blackburn

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1600 S Douglass Rd Anaheim, CA 92806
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.


Borrower/Owner  Sherry K Blackburn                          Date


Borrower/Owner  Joseph Frank Blackburn                     Date


Borrower/Owner                                                        Date


Borrower/Owner                                                        Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

Borrower/Owner Signature                                    Date



0000010078480004042201001

850 (10/00)

11/19/2004 2:35:01 PM

**LENDER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0100784800 - 5776          Borrower(s): Sherry K Blackburn
Date: November 19, 2004                               Joseph Frank Blackburn

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

Borrower/Owner  Sherry K Blackburn _____     Date _____

Borrower/Owner  Joseph Frank Blackburn _____     Date _____

Borrower/Owner _____     Date _____

Borrower/Owner _____     Date _____

## REQUEST TO CANCEL

I/We want to cancel loan # _____.

Borrower/Owner Signature _____     Date _____


0000010078480004204220101

850 (10/00)

11/19/2004 2:35:01 PM

**BORROWER COPY**

# EXHIBIT H

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower" as applicable. Co-Borrower information must also be provided ( and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☐ Conventional  ☐ Other (explain): | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate | ☐ Other (explain): |
|---|---|---|---|---|---|
| $194,250.00 | 7.650 % | 240 | | ☐ GPM | ☐ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of U |
|---|---|
| 8968 Sunglow Ct., Indianapolis, IN 46231 | 1 |

| Legal Description of Subject Property (attach description if necessar y) | Year Built |
|---|---|
| | 1986 |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: | ☐ Primary  ☐ Secondary  ☐ Invest |
|---|---|---|---|
| | ☒ Refinance  ☐ Construction-Permanent | | ☒ Residence  ☐ Residence |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | | | | | |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be m |
|---|---|---|---|---|
| 1999 | $120,000.00 | $ 0.00 | | Cost: $ 0.00 |

| Title will be held in what Name(s) JOSEPH FRANK BLACKBURN & SHERRY K. | Manner in which Title will be held | Estate will be hel |
|---|---|---|
| BLACKBURN | | ☒ Fee Simple |
| Source of Down Payment, Settlement Charges and/or Subordinate Financing (expla in) | | ☐ Leasehold (show expira date) |

## III. BORROWER INFORMATION

| | Borrower | | Co-Borrower |
|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | | Co-Borrower's Name (include Jr. or Sr. if applicable) | |
| Joseph Frank Blackburn | | Sherry K Blackburn | |

| Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. Scho | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. S |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| ☒ Married  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) | ☒ Married  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) |
|---|---|---|---|
| ☐ Separated | no. 0  ages | ☐ Separated | no. 0  ages |

| Present Address (street, city, state, ZIP)  ☒ Own  ☐ Rent  5  No. Yrs. | Present Address (street, city, state, ZIP)  ☒ Own  ☐ Rent  5  No. |
|---|---|
| 8968 Sunglow Ct. | 8968 Sunglow Ct. |
| Indianapolis,IN 46231 | Indianapolis,IN 46231 |
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. |
|---|---|
| *** SEE ADDENDUM *** | *** SEE ADDENDUM *** |

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Yrs. on this job | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |
| American Transair | | 10 | IUPUI | | 16 |
| | | Yrs. employed in this line of work/profession | | | Yrs. employed in this line of work/profession |
| | | 10 | | | 16 |
| Position/Title/Type of Business | Business Phone (incl. areacode) | Position/Title/Type of Business | Business Phone (incl. areacode) |
| Tooler | (317) 484-1487 | Manager | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | | | | |
| | | Monthly Income | | | Monthly Income |
| | | $ | | | $ |
| Position/Title/Type of Business | Business Phone (incl. areacode) | Position/Title/Type of Business | Business Phone (incl. areacode) |
| | | | |

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | | | | |
| | | Monthly Income | | | Monthly Income |
| | | $ | | | $ |
| Position/Title/Type of Business | Business Phone (incl. areacode) | Position/Title/Type of Business | Business Phone (incl. areacode) |
| | | | |

0100784800

| Borrower's cell | Borrower's pager |
|---|---|
| Co-Borrower's cell | Co-Borrower's pager |

0000010078480006005990901

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 2,440.54 | $ 2,392.33 | $ 4,832.87 | Rent | $ 0.00 | |
| Overtime | 0.00 | 0.00 | 0.00 | First Mortgage (P&I) | 1,280.00 | $ 1,562 |
| Bonuses | 0.00 | 0.00 | 0.00 | Other Financing (P&I) | 0.00 | 0 |
| Commissions | 0.00 | 0.00 | 0.00 | Hazard Insurance | 60.00 | 115 |
| Dividends/Interest | 0.00 | 0.00 | 0.00 | Real Estate Taxes | 166.67 | 147 |
| Net Rental Income | 0.00 | 0.00 | 0.00 | Mortgage Insurance | 0.00 | 0 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0 |
| | | | | Other: | 0.00 | 0 |
| Total | $ 2,440.54 | $ 2,392.33 | $ 4,832.87 | Total | $ 1,506.67 | $ 1,845 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income | Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | | Monthly Amount |
|---|---|---|---|---|
| | *** SEE ADDENDUM *** | | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | LIABILITIES | | |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | *** SEE ADDENDUM *** | | |
| Vested 401k Retirement - Aggregated | | | | |
| Acct. no. | $ 0.00 | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Checking/Savings - Aggregated | | | | |
| Acct. no. | $ 0.00 | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Vested 401k Retirement - Aggregated | | | | |
| Acct. no. | $ 31,000.00 | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Checking/Savings - Aggregated | | | | |
| Acct. no. | $ 0.00 | Acct. no. | | |
| Stocks & Bonds (Company name/ number & description) /0 | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| /0 | 0.00 | | | |
| Life insurance net cash value | $ 0.00 | Acct. no. | | |
| Face amount: $ 0.00 | | Name and address of Company | $ Payment/Months | $ |
| Subtotal Liquid Assets | $ 31,000.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 444,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 519.00 | |
| Total Assets a. | $ 475,000.00 | Net Worth (a minus b) | $ 414,616.00 | Total Liabilities b. | $ 60,384 |

0100784800

VMP-21N (0305)

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Inc. |
|---|---|---|---|---|---|---|---|
| 8968 Sunglow Ct. Indianapolis, IN 46231 | SFR | $ 222000 | $ 149188 | 0 | $ 1280 | $ 127 | |
| 8968 Sunglow Ct. Indianapolis, IN 46231 | SFR | $ 222000 | 3612 | 0 | 78 | 100 | |
| | Totals | $ 444000 | $ 152800 | 0 | 1358 | 227 | |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ 0.00 |
| b. | Alterations, improvements, repairs | 0.00 |
| c. | Land (if acquired separately) | 0.00 |
| d. | Refinance (incl. debts to be paid off) | 171,993.00 |
| e. | Estimated prepaid items | 407.10 |
| f. | Estimated closing costs | 2,411.00 |
| g. | PMI, MIP, Funding Fee | 0.00 |
| h. | Discount (if Borrower will pay) | 7,379.56 |
| i. | Total costs (add items a through h) | 182,190.66 |
| j. | Subordinate financing | |
| k. | Borrower's closing costs paid by Seller | 0.00 |
| l. | Other Credits (explain) | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 194,250.00 |
| n. | PMI, MIP, Funding Fee financed | 0.00 |
| o. | Loan amount (add m & n) | 194,250.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -12,059.34 |

## VIII. DECLARATIONS

| If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | X | |
| k. Are you a permanent resident alien? | | X | | X |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | X | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | X | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | SP | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, the lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | I do not wish to furnish this information. | | CO-BORROWER | I do not wish to furnish this information. | |
|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | X Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino | X Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native  ☐ Native Hawaiian or Other Pacific Islander | ☐ Asian  X White | ☐ Black or African American | Race: | ☐ American Indian or Alaska Native  ☐ Native Hawaiian or Other Pacific Islander | ☐ Asian  X White | ☐ Black or African American |
| Sex: | ☐ Female | X Male | Sex: | ☐ Female | ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) Tiffany Tackett | Name and Address of Interviewer's Employer |
|---|---|---|
| ☐ Face-to-face interview | Interviewer's Signature                    Date | 6650 Telcom Drive, Suite 290 Indianapolis, IN 46278 |
| ☐ Mail | | |
| X Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | (317)275-6080 | |

0100784800

VMP®-21N (0305)

Freddie Mac Form
Fannie Mae Form 10

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>Blackburn, Joseph Frank | Agency Case Number: |
| --- | --- | --- |
| | Co-Borrower:<br>Blackburn, Sherry K | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X | Date | Co-Borrower's Signature:<br>X | Date |
| --- | --- | --- | --- |

0100784800



VMP -21N (0306)

Page 4 of 4

Freddie Mac Form
Fannie Mae Form 1

# EXHIBIT I

**Ameriquest Mortgage Company**

Borrower Name: Sherry K Blackburn

Borrower Name: Joseph Frank Blackburn

Loan Number: 0100784800 - 5776

Property Address: 8968 Sunglow Ct.
Indianapolis, IN 46231

### UNDERSTANDING YOUR OPTIONS REGARDING
### INTEREST RATES AND DISCOUNT POINTS

The interest rate (or initial interest rate in the case of an adjustable rate mortgage) and discount points on your loan related to each other. A "discount point" is a one-time fee that equals one (1) percent of the loan amount that lowers interest rate of the loan. So, on a $100,000 loan, "1" discount point is $1,000. You can obtain a lower interest rate taking a loan with additional discount points, or have fewer discount points in return for a higher interest rate.

Please ask about our current discount point/rate exchange ratio. The following is intended as an example to illustrate our discount point/rate exchange works; it may not be reflective of the exchange ratio available at this time.

In this example, to reduce your interest rate by 1 percentage point, you would be charged an additional 1.6 disco points. The following example shows how your options work.



STARTING LOAN TERMS SCENARIO

**In this example, the base rate is 7% and points are 1.6%, which is $1,600:**

| | |
|---|---|
| Loan amount: | $100,000 |
| Interest rate: | 7% |
| Discount points: | 1.6% ($1,600) |



LOWER RATE SCENARIO

**To receive a lower interest rate, you can take a loan with an additional 1.6 discount points:**

| | |
|---|---|
| Loan amount: | $100,000 |
| Interest rate: | 6% |
| Discount points: | 3.2% ($3,200) |



REDUCED DISCOUNT POINT SCENARIO

**To reduce your discount points by 1.6, your interest rate would be 1 percentage point higher:**

| | |
|---|---|
| Loan amount: | $100,000 |
| Interest rate: | 8% |
| Discount points: | 0% (0) |

\* The terms of your loan may be different from the above example. Other factors influence rate, such as ho much income documentation you provide and whether you elect to have a prepayment charge on your loan.

Think carefully about what you want to do and consult a financial advisor. A discount point lowers the interest rate but necessarily the overall cost of the loan. A lower rate may be a good choice if you don't plan to sell or refinance for so time. On the other hand, you might not want to have additional discount points if you think you'll sell or refinance so Your account executive can give you more information about the options available to you and the exact terms of y loan.



# EXHIBIT J

# GOOD FAITH ESTIMA

Loan Number: 0100784890 #5779

Lender: Ameriquest Mortgage Company

Address: 6650 Telcom Drive, Suite 290
Indianapolis, IN 46278

Applicant(s): Sherry Blackburn    Joseph Blackburn

Property Address: 8968 Sunglow Ct.
Indianapolis, IN 46231

| | |
|---|---|
| Sales Price: | 0.00 |
| Base Loan Amount: | 194,251.00 |
| Total Loan Amount: | 194,251.00 |
| Type of Loan: | ADJUSTABLE RATE |
| Date Prepared: | November 17, 2004 |
| Rate: 7.600 % | Term: 360 Months |
| Broker: | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees liste
estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the esti
generally correspond to the numbered lines contained in the HUD-1 or HUD-1A Settlement Statement that you will be receiving at settlement. The HUD
HUD-1A Settlement Statement will show you the actual cost for items paid at settlement. The loan terms and fees may change based on the inform
gathered during the underwriting and loan approval process or as a result of negotiations between you and the Lender.

" L" designates those costs to be paid outside of closing by Lender.    "S" designates those costs to be paid by Seller    * Paid Outside of Closi

| 800 ITEMS PAYABLE IN CONNECTION WITH LOAN: | | 1100 TITLE CHARGES: | |
|---|---|---|---|
| 801 Loan Origination Fee ( %) | | 1101 Settlement or Closing Fee to | |
| 802 Loan Discount Fee ( 3.720 %) | $7,226.14 | 1102 Abstract or Title Search | |
| 803 Appraisal/Property Valuation | $300.00 | 1103 Title Examination | |
| 804 Credit Report's to | | 1104 Title Insurance Binder | |
| 805 Lender's Inspection Fee | | 1105 Document Preparation Fee | |
| 806 Mortgage Insurance Application Fee to | | 1106 Notary Fees | |
| 807 Assumption Fee | | 1107 Attorney Fees | |
| 808 Yield Spread Premium to Broker | | 1108 Title Insurance $710.00 to $500.00 | $750 |
| 809 | | 1109 | |
| 810 Tax Related Service Fee | $70.00 | 1110 | |
| 811 Flood Search Fee | $16.00 | 1111 Settlement/Disbursement Fee | |
| 812 Lender's Processing Fee | $626.00 | 1112 Escrow Fee | |
| 813 Admin to Ameriquest Mortgage | $239.00 | | |
| 814 Doc Prep Fee to | | | |
| 815 Credit Report Fee paid to Broker | | | |
| 816 Origination Fee to Broker ( %) | | 1200 GOVERNMENT RECORDING AND TRANSFER CHARGES: | |
| 817 Application Fee to Ameriquest | $360.00 | 1201 Recording Fee: | $50 |
| 818 Underwriting Fee to Broker | | 1202 City/County Tax Stamps: | |
| 819 Service Provider Fee to | | 1203 | |
| 820 Processing Fee to Broker | | 1204 | |
| 821 Underwriting Fee to Lender | | 1205 | |
| 900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | |
| 901 Interest for 10 days @ $40.45 per day | $404.50 | | |
| 902 Mortgage Ins Premium | | 1300 ADDITIONAL SETTLEMENT CHARGES: | |
| 903 Hazard Ins. Premium | | 1301 Demand | |
| 904 Flood Ins. Premium | | 1302 Pest Inspection | |
| 1000 RESERVES DEPOSITED WITH LENDER: | | 1303 Survey | |
| 1001 Haz Ins Prem | months @ $ | 1304 Staff Appraiser Fee | |
| 1002 Mortgage Ins | months @ $ | 1305 Reconveyance Fee | |
| 1003 Earthquake Ins | months @ $ | 1306 | |
| 1004 Cnty Prop Taxes | months @ $ | 1307 Apprsl/Prop Val Fee to | |
| 1005 Annual Assmts | months @ $ | 1308 Courier Fee | |
| 1006 Flood Ins | months @ $ | TOTAL ESTIMATED SETTLEMENT CHARGES | $10,0 |
| 1007 Windstorm Ins | months @ $ | TOTAL SETTLEMENT CHARGES PAID BY LENDER | $ |
| 1008 | | TOTAL ESTIMATED MONTHLY PAYMENT | |
| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | TOTAL ESTIMATED MONTHLY PAYMENT | |
| Down payment | | Principal & Interest | $1,37 |
| Est Closing Cost | $9,637.14 | Real Estate Taxes | |
| Est. Prepaid Items/Reserves | $404.50 | Hazard & Hazard Insurance | |
| OTHER: POC Borrower | $0.00 | Mortgage Insurance | |
| TOTAL EST. FUNDS NEEDED TO CLOSE: | $10,041.64 | TOTAL MONTHLY PAYMENT | $1,37 |
| TOTAL FEES PAID BY LENDER | $0.00 | | |

THIS SECTION TO BE COMPLETED BY LENDER ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED. Use of the particul
provider is required and the estimate is based on charges of the provider. If a particular provider is not mentioned, a provider will be required from
lender approved list.

| ITEM: NAME OF PROVIDER | ADDRESS OF PROVIDER | TELEPHONE | NATURE OF RELATION |
|---|---|---|---|
| 803 Appraisal Repeated Use | | | Unaffiliated/Repeated Us |
| 804 Credit Repeated Use | | | Unaffiliated/Repeated Us |
| 810 Fidelity National Tax Service | 468 N. Rosemead Blvd., Pasadena, CA 91107 | 800-969-9724 | Unaffiliated/Used 100% |
| 811 First American Flood Data Service | 11902 Burnet Rd, Ste 200, Austin, TX 78758 | 800-447-1772 | Unaffiliated/Used 100% |
| 1101 Closing Agent Repeated Use | | | Unaffiliated/Repeated Us |
| 1108 DT - MORTGAGE INFORMATION, 2889 N. COMMERCE PARKWAY MIRAMAR, FL 33025 | | (800)877-7557 | Unaffiliated/Repeated Us |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional informatio
can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your applicatio
is to purchase residential real property and the Lender will take a first lien on the property. The undersigned acknowledges receipt of th
booklet "Settlement Costs", and the Consumer Handbook on ARM Mortgages, if applicable.

| | | | |
|---|---|---|---|
| Applicant Sherry Blackburn | Date | Applicant Joseph Blackburn | Dat |
| Applicant | Date | Applicant | Da |

GFE (Rev. 7/03)

# EXHIBIT K



**ValueSure Property Valuation Report**

Report Date: 11/15/2004

| | Low | High | Confidence Score |
|---|---|---|---|
| **ValueSure Estimated Market Value –$222,000** | $182,000 | $263,000 | MEDIUM |

## Identification/Subject Property Information
8968 Sunglow Ct.  Indianapolis IN  46231

| | | | | | |
|---|---|---|---|---|---|
| **Transaction#:** | 0100784800 | **Borrower Name:** | Joseph Blackburn | **Prepared For:** | Ameriquest MTG Company |
| **Borrower#:** | | **Borrower Est of Value:** | $222,000 | **Prepared By:** | MI |
| **County:** | | **Property Type:** | SFR | **Year Built:** | 1986 |
| **Bedrooms:** | 0 | **Bathrooms:** | 0.0 | **Living Area:** | 0 |
| **Prior Sale Price:** | | **Prior Sale Date:** | | **Assessed Value:** | $127,000 |

**Sales Comparables**
(for period 11/15/2004)

| Address | ZIP | Sold Date | Sold Price | Bed | Bath | Living Area | Land Area | Approx Age |
|---|---|---|---|---|---|---|---|---|
| No comparable properties are available for submitted address. | | | | | | | | |

The estimated market value is based on various mathematical formulas and techniques proprietary to Fidelity Nation Information Solutions, Inc. This report has not been prepared by a licensed appraiser nor does it constitute an official appraisal of the subject property. The information in this report is provided "as is" and all uses are at the user's sole risk. Fidelity National Information Solutions is not liablefor the accuracy of the information in this report.

**Copyright @ 2002-2003 Fidelity National Information Solutions, Inc. All Rights**

# Market Intelligence Property Condition Report

| MI TransID: 104702408 | Client Name: Ameriquest MTG Company |
| AVM ID: 0 | Loan #: 0100784800 |
| Inspector #: 5579 | Inspection Date: 11/24/2004 |
| Order Date: 11/24/2004 | |

Subject Street: 8966 Sunglow Cl.
Subject City, State, and Zip: Indianapolis, IN 46231
Subject Location: Suburban (Urban, Suburban, Rural)

THIS INSPECTION REPORT IS INTENDED FOR USE IN A MORTGAGE
FINANCE-RELATED TRANSACTION ONLY. THIS REPORT IS NOT AN ESTIMATE OF
VALUE AND IS ONLY MEANT TO DETERMINE THE EXISTENCE AND EXTERIOR
CONDITION OF THE SUBJECT PROPERTY ON THE DATE AND AT THE TIME OF
THE INSPECTION. AS NO INTERIOR INSPECTION WAS PERFORMED, IT IS
ASSUMED THAT THE INTERIOR CONDITION IS SIMILAR TO THE EXTERIOR
CONDITION OF THE SUBJECT PROPERTY.

Able to View Property?  ○ No ● Yes
Gated Community?  ● No ○ Yes
Conforms to Neighborhood?  ○ No ● Yes
Number of properties for sale
on subject street?  ● None ○ 1-3 ○ 4 or more
Exterior Condition of Property is
Average or Above?  ○ No ● Yes

Property Type: Single Family

**Subject Inspection**
Broken Doors/Windows  ● No ○ Yes
Construction in process  ● No ○ <50% ○ >50%
Roof Missing  ● No ○ Yes
Structural Damage  ● No ○ Yes
Siding-Missing/Damaged Siding  ● No ○ Yes
Evidence of Fire Damage  ● No ○ <50% ○ >50%
Evidence of Flood/Water Damage  ● No ○ <50% ○ >50%
Garage  ● Att ○ Det ○ None
Garage condition avg or above  ○ No ● Yes ○ N/A
Property Maintenance:  Average

**Neighborhood Influences - within 300' of Subject Property**
Overhead Powerlines  ● No ○ Yes
Commercial Uses  ● No ○ Yes
Boarded-up Homes  ● No ○ Yes
Railroad Tracks  ● No ○ Yes
Freeway / Highway  ● No ○ Yes
Airport / Flight Path  ● No ○ Yes
Waste Management Facilities  ● No ○ Yes

Subject Photo:



# EXHIBIT L

# CONSUMER COMPLAINT

The following Consumer Complaint was filed by the Complainant online at
the Attorney General's website.

1.            Mr/Mrs/Miss/Ms:  Mrs
     Complainant's First Name:  Sherry
              Middle Initial:  K                    **RECEIVED**
                  Last Name:  Blackburn
                    Suffix:                        MAR 1 3 2006
                   Address:  8968 Sunglow Ct
                      City:  Indianapolis        ATTORNEY GENERAL OF INDIANA
                     State:  IN                    CONSUMER PROTECTION
                    County:  Marion
                       Zip:  46231
            Daytime phone:  317-274-5052
            Evening phone:  317-484-1487
                    email:  sblackbu@iupui.edu

2.     The Complaint Is Against:  Ameriquest Mortgage Company
                    Address:  1100 Town and Country Road
                       City:  Orange
                      State:  CA
                     County:
                       Zip:  92868
                     Phone:  800-397-9937
             Industry type:  000 None Specified
       Person you dealt with:  Loan Officer
                     email:

3.   What was the very first contact between you and the firm?:
          came to my home

4.   Where did the transaction/incident you are complaining about take
     place?:
          at my home

5.   When did the transaction/incident occur?
     11/19/2004

6.   Was the transaction for business or family/household?:
     family

7.   How did you pay?

8.   Did you sign any written agreement?  ☒
     If Yes, please attach a copy of the agreement.

9.   Do you consent to the Consumer Protection Division disclosing to
     the public the following:

     The nature and status of your complaint and the name of the firm?:
     ☒

     Your name?:  ☐

     Your phone number?  ☐

Ind      Prac      PL  MO  NL  NJ  OA:        Inv      Sec      DAG        File #      -CP-

Case: 1:05-cv-07097 Document #: 2697-2 Filed: 04/10/09 Page 87 of 94 PageID #:29606

10.   Have you complained to the business?:   ☒

      When?:  03/9/2006

      What action was taken?:
      Nothing

11.   With what other agency have you filed this complaint?:


      What action was taken?:


12.   Have you contacted a private attorney?:  ☐

13.   Have you started court action?:  ☐
      If Yes, please attach a copy of all court papers.

14.   Have you been sued over this issue?:  ☐
      If Yes, please attach a copy of all court papers.

15.   What is the Type of Complaint you are filing?:  077
Application/Renewal Fraud

16.   Description of your Complaint:
      We discovered that Ameriquest inflated our home appraisal to
      $222,000. We trusted the company but now realize that was a
      fraudulent act ontheir part. The loan officer also promised after
      2 years, we could getinto a fixed 30 year/ loan. Yesterday, I
      spoke with Mia, she ran aqick comp. appraisal/computer generated,
      it came up average,$145,000.00. She is fully aware that her
      company appraised our homejust two years ago for $222,000. very
      interesting that it can dropdrastically to $145,000.00. We owe,
      $189,000.00 and cant's get awayfrom Ameriquest.  There are
      numerous class action suits against thiscompany for this very same
      practice. We were misled and this ismortgage fraud.

17.   How would you like your complaint resolved?:
      We want to settle with Ameriquest for at least $25,000.00 payable
      tous, plus get out from under this loan, no pre-pay penalties at
      all torefinance locally at our bank, Ind. Members Credit Union.
      Thank youfor any help in this matter. Ameriquest must be stopped.


  I certify that the information on this form is true and accurate to the
  best of my knowledge.  I consent to the respondent and any other person
  releasing to the Consumer Protection Division any information or
  document the Division requests in investigation of this complaint.


Complainant's Signature: *Sherry Blackburn*   Date: *Mar. 25, 06*

# EXHIBIT M

| Borrower/Client | Joseph Blackburn | | | | | File No. | 6051970-13125342 |
|---|---|---|---|---|---|---|---|
| Property Address | 8968 Sunglow Court | | | | | | |
| City | Indianapolis | County | Marion | | State | IN | Zip Code | 46231 |
| Lender | Ameriquest Mortgage Corporation | | | | | | |

## TABLE OF CONTENTS



Invoice ............................................................................................................ 1
Letter of Transmittal ........................................................................................ 2
USPAP Identification ........................................................................................ 3
Summary of Salient Features ............................................................................ 4
URAR ............................................................................................................. 5
Additional Comparables 4-6 ............................................................................ 11
Building Sketch (Page - 1) .............................................................................. 12
Subject Photos ................................................................................................ 13
Comparable Photos 1-3 .................................................................................... 14
Comparable Photos 4-6 .................................................................................... 15
Comparable Sales Map ..................................................................................... 16
Digital Signature and Photo Addendum ............................................................ 17

File No. 6051970-131253428  Page #3

| Borrower Joseph Blackburn | | | | File No. 6051970-131253428 |
|---|---|---|---|---|
| Property Address 8968 Sunglow Court | | | | |
| City Indianapolis | County Marion | | State IN | Zip Code 46231 |
| Lender Ameriquest Mortgage Corporation | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

**This appraisal conforms to one of the following definitions:**

☒ Complete Appraisal  (The act or process of estimating value, or an opinion of value, performed without invoking the Departure Rule.)

☐ Limited Appraisal  (The act or process of estimating value, or an opinion of value, performed under and resulting from invoking the Departure Rule.)

**This report is one of the following types:**

☐ Self Contained  (A written report prepared under Standards Rule 2-2(a) of a Complete or Limited Appraisal performed under STANDARD 1.)

☒ Summary  (A written report prepared under Standards Rule 2-2(b) of a Complete or Limited Appraisal performed under STANDARD 1.)

☐ Restricted  (A written report prepared under Standards Rule 2-2(c) of a Complete or Limited Appraisal performed under STANDARD 1, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

The statements of fact contained in this report are true and correct.

The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.

I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.

I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

My engagement in this assignment was not contingent upon developing or reporting predetermined results.

My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

I have (or have not) made a personal inspection of the property that is the subject of this report.

No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)

### Comments on Appraisal and Report Identification

Note any departures from Standards Rules 1-3 and 1-4, plus any USPAP-related issues requiring disclosure:

This appraisal is to be used for refinancing purposes for the identified borrower only. This estimate of fair market value considers a marketing time from 3-6 months. This report was prepared for Ameriquest Mortgage Company and is to be used by them, or their assigned, only.

**APPRAISER:**

Signature: *Daniel McCaslin*

Name: Daniel L. McCaslin

Date Signed: 03/11/2006

State Certification #: n/a

or State License #: LR60100048

State: IN

Expiration Date of Certification or License: 6/30/2008

**SUPERVISORY APPRAISER (only if required):**

Signature:

Name:

Date Signed:

State Certification #:

or State License #:

State:

Expiration Date of Certification or License:

☐ Did  ☐ Did Not  Inspect Property

File No. 6051970-131253428  Page #4

# SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 8968 Sunglow Court |
| | Legal Description | Sunset Lake, Sec 1, Lot 6 |
| | City | Indianapolis |
| | County | Marion |
| | State | IN |
| | Zip Code | 46231 |
| | Census Tract | 3420.00 |
| | Map Reference | S-9/W-89 |
| **SALES PRICE** | Sale Price | $ market |
| | Date of Sale | |
| **CLIENT** | Borrower / Client | Joseph Blackburn |
| | Lender | Ameriquest Mortgage Corporation |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 1,725 |
| | Price per Square Foot | $ n/a |
| | Location | W. Wayne Twp |
| | Age | 20 |
| | Condition | average |
| | Total Rooms | 8 |
| | Bedrooms | 4 |
| | Baths | 2.5 |
| **APPRAISER** | Appraiser | Daniel L. McCaslin |
| | Date of Appraised Value | 03/11/2006 |
| **VALUE** | Final Estimate of Value | $ 134,000 |

Form SSD — *TOTAL for Windows* appraisal software by a la mode, inc. — 1-800-ALAMODE

# EXHIBIT N



# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
## Chicago, Illinois 60603-3403
## (312) 739-4200
## (800) 644-4673
## (312) 419-0379 (FAX)
## Email: edcombs@aol.com
## www.edcombs.com

June 14, 2006

**BY FACSIMILE**
Bernard E. LeSage
Buchalter Nemer
213.630.5715

Re: Notice of rescission, claim and lien, Sherry K. Blackburn and Joseph Frank Blackburn, 8968 Sunglow Court, Indianapolis, IN 46231, loan of November 19, 2004

Ladies/Gentlemen:

Each of the above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than Ameriquest Mortgage Company or Ameriquest Mortgage Securities, Inc., please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressee on June 14, 2006.

_____
Daniel A. Edelman