IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL NO. 1715 <br><br> Lead Case No. 05-CV-07097 <br><br> (Centralized before Judge Aspen) |
| ROSE TERRY, et al. <br> Plaintiffs <br> -vs.- <br> AMERIQUEST MORTGAGE COMPANY, et al. <br>     Case No. 1:08-CV-02475 <br>            Defendants and Third-party Plaintiffs <br>   -vs.- <br><br> FIRST AMERICAN TITLE INSURANCE COMPANY, et al. <br>        Third-party Defendants | Case No. 1:08-CV-02475 <br><br> Honorable David H. Coar |

# EXHIBIT B

To Third-Party Defendant First American Title Insurance Company's Reply in Support of Motion to Reassign Terry Litigation to the MDL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSE TERRY, et al., | Case No. 08 CV 2475 |
| | Honorable David H. Coar |
| Plaintiffs, | |
| v. | AMERIQUEST'S MEMORANDUM IN SUPPORT OF MOTION TO |
| AMERIQUEST MORTGAGE COMPANY et al. | MODIFY SCHEDULING ORDER |
| Defendant. | |

### I. INTRODUCTION

This lawsuit consists of 30 Plaintiffs who allege three claims: (Count 1) - Truth-In-Lending violations, typically for not receiving a copy of a Notice of Right to Cancel form, despite acknowledging receipt; (Count 2) - Illinois Consumer Fraud Act claims, most commonly alleging that they were told they would receive a low fixed rate but received a higher adjustable rate mortgage; and (Count 3) - fraudulent transfer claims seeking to set aside payments as necessary to pay for any judgment resulting from the underlying litigation.

By this motion, Ameriquest Mortgage Company ("Ameriquest"), ACC Capital Holdings, Corporation ("ACCCH"), and Ameriquest Capital Corporation ("ACC") request a modified scheduling order to account for nine (9) newly added Defendants and eighteen (18) newly added Third-Party Defendants for a total of twenty-seven (27) parties that are now being served with a Second Amended Complaint and Third-Party Complaints. (Dkt. Nos. 133, 137). The current discovery cut-off is May 29, 2009. (Dkt. No. 122). There is not sufficient time for the Third-Party Defendants and others with no prior involvement in this litigation to obtain counsel, file motions to dismiss, and then participate in the upcoming depositions of the 30 plaintiffs in advance of the discovery cut-off.

Additionally, in the interest of judicial economy, the modified Scheduling Order should bifurcate the contingently relevant fraudulent transfer claims into a second phase of discovery and trial. If necessary, the second phase of discovery and trial would be extremely expensive and time consuming. In the first phase, the parties should litigate the Truth-In-Lending and Illinois Consumer Fraud Act claims, which have a combined maximum compensatory damages amount below $1MM according to Plaintiffs' Rule 26 disclosures, and in reality are much less.

A Motion for Summary Judgment is already pending on the ICFA claims because the basic loan terms at issue, such as the interest rate, were repeatedly acknowledged by Plaintiffs, and Plaintiffs often admit to having known the terms at the closing. (Dkt. No. 149). Because of the relative simplicity of the issues in the underlying litigation, the first phase of discovery and trial should be able to be completed in accord with the current December 2009 trial schedule, notwithstanding the addition of the new parties.

For the second phase of discovery and trial to become necessary, Plaintiffs would have to (1) prevail on their underlying claims; and then (2) the judgment would have to be unsatisfied or not subject to a bond, an implausible event. Bifurcating the trial of the fraudulent transfer issues is necessary because Plaintiffs intend to prove that Ameriquest was insolvent in 2005 based on a valuation of their contingent liabilities – which would include a valuation of the claims at bar. It would be unduly prejudicial to have both issues tried at the same time and there is significant case law holding that bifurcation is warranted under such a circumstance. Moreover, it would be a huge waste of money and judicial resources to proceed with the fraudulent transfer claims now, on the off-chance that they become relevant. Bifurcation of discovery into phases is feasible because the issues in the first and second phase of litigation do not overlap.

Additionally, motions to dismiss are pending for lack of personal jurisdiction for the alleged recipients of fraudulent transfers, defendants Dawn Arnall, individually and as Trustee for a living trust, Wayne Lee, and ACC. (Dkt. Nos. 155, 162, 165, 174). Also, Plaintiffs do not and cannot allege that they are creditors of ACC and ACCCH so a motion to dismiss is pending with respect to the fraudulent transfer claims against them. Because of the lack of personal jurisdiction, discovery should be stayed until a ruling on those motions. A proposed scheduling order is attached as Exhibit A, reflecting the proposed changes.

## II.   ARGUMENT

### A.   A Modified Scheduling Order Is Necessary To Accommodate The New Parties And Would Further A Just, Speedy, and Efficient Resolution Of This Litigation

Good cause exists to modify the scheduling order. See Fed. R. Civ. P. 16(b)(4). Under the current scheduling order, there is not sufficient time to complete discovery because the twenty-seven (27) new parties' participation is necessary. Plaintiffs object that their 30 depositions cannot go forward as tentatively scheduled in March until the new parties are willing

BN 2618751v2

to participate in the depositions to avoid the potential for duplicative depositions. However, the eighteen (18) Third-Party Defendants will likely not have hired counsel and completed any motions to dismiss for at least a few months, which is too late under the current May deadline. The Third-Party Defendants are an integral part of this litigation because if Plaintiffs did not receive sufficient copies of a Notice of Right to Cancel form despite Plaintiffs' acknowledgment otherwise, Third-Party Defendants are responsible. (*See* Affidavit of Joanne N. Davies in Support of Ameriquest's Motion to Modify Scheduling Order ("Davies Aff."), Exs. 9-11).

### B. A Modified Scheduling Order Bifurcating The Fraudulent Transfer Issues Is In The Interest Of Judicial Economy And Will Avoid Prejudice

A court may order a separate trial if it would avoid prejudice to a party or would promote judicial economy or convenience. Fed. R. Civ. P. 42(b). Both are satisfied here. Prejudice and confusion would result from having the trier of fact exposed to Plaintiffs' proffered evidence that Ameriquest was insolvent because of the validity of numerous lawsuits against Ameriquest, while at the same time, determining the merits of the allegations about a single loan transaction. (Dkt. No. 133, ¶¶20-26, 158).

Fraudulent transfer claims which are based on a valuation of contingent liabilities to prove insolvency should be tried separately from the underlying cause of action. *Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, No. 99 C 1716, 2001 U.S. Dist. LEXIS 1212, *3 (N.D. Ill. Feb. 7, 2001). *Industrial Hard Chrome* presents similar issues to the matter at bar. Plaintiff Industrial Hard Chrome asserted a cause of action for breach of contract and claims that defendants engaged in fraudulent transfers designed to avoid collection of a prospective judgment arising out of the underlying breach of contract claim. The court held that bifurcation was necessary because otherwise, expert witnesses would be opining on the valuation of the legal exposure of the underlying claim at the same time that the fact-finder was determining the validity of the underlying claim causing prejudice. *Id.*

Judicial economy would be promoted because bifurcation would avoid the expenditure of significant judicial resources and the parties' time and money for issues that would be obviated by the trial of the underlying liability and payment of any judgment by Ameriquest or any other defendant. District courts have extremely broad discretion in controlling the timing of discovery. Fed. R. Civ. P. 26(c)(1) (stating a court may limit the scope of discovery or control its sequence in order to "protect a party or person from annoyance, embarrassment, oppression, or undue

- 3 -

burden or expense"); *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998); *see also* Fed. R. Civ. P. 1 (explaining that the rules are to be administered to further the "just, speedy, and inexpensive" resolution of litigation).

Numerous courts have stayed discovery related to fraudulent conveyance claims pending the resolution of liability issues. *See, e.g., Drezner v. Park N. Props., Inc.,* No. 82 Civ. 5064, 1983 U.S. Dist. LEXIS 15191, (S.D.N.Y. July 26, 1983); *see also Hillsborough Holdings Corp. v. Celotex Corp.,* 132 B.R. 478, 481 (Bankr. M.D.Fla. 1991) (limiting scope of discovery to liability issues and holding that fraudulent conveyance claims to be pursued after resolution of the liability issues). Other courts have stayed an entire fraudulent conveyance action until the underlying liability action was resolved. *See Foltz v. U.S. News & World Reports,* 640 F.Supp. 1184, 1192 (D.D.C. 1986). The reason for granting a protective order or staying discovery was articulated in *Drezner*:

> The issue is whether discovery may be had during the pendency of an action of matters that relate not to the liability or damages but to the ability to enforce a judgment. At this juncture, such information is not "relevant to the subject matter involved" in this action nor is it "reasonably calculated to lead to the discovery of admissible evidence...This material may become relevant, of course, if Drezner obtains a judgment against Park North upon which he is unable to collect because Park North's interests have been transferred....However, at this time, discovery of these issues is premature. *Drezner*, 1983 U.S. Dist. LEXIS 15191 at *2.

Courts in this Circuit routinely postpone discovery on claims that are, as here, separately triable from the issue of liability. *See Jones v. City of Chicago,* No. 98 C 5418, 1999 U.S. Dist. LEXIS 3358, *10 (N.D. Ill. March 10, 1999) (staying discovery and litigation of claims against city pending resolution of underlying claims against defendant police officers); *Nash v. County of Will,* No. 08 C 1170, 2008 WL 4951245 (N.D. Ill. November 18, 2008) (same); *Tweet v. Liberty Mutual Fire Ins. Co.,* No. 06-C-800, 2006 U.S. Dist. LEXIS 68054, *5-6 (E.D. Wis. Sep. 19, 2006) (staying discovery related to Plaintiffs' bad faith claims against insurer pending resolution of coverage issues); *Chicago Prof'l Sports v. NBA,* No. 90 C 6247, 1996 U.S. Dist. LEXIS 1525, *5-6 (N.D. Ill. Feb. 13, 1996) (staying discovery related solely to damages until a determination of liability).

BN 2618751v2

In determining whether to stay discovery on contingent claims pending resolution of liability issues, courts consider (1) whether the evidence required to prove the respective claims overlap; (2) whether a finding of no liability as to the underlying claim would obviate the need for discovery related to any other claim(s); (3) the burden and cost of discovery; and (4) whether the party requesting bifurcation would be prejudiced by the trial of both issues at the same time. *See, e.g., Jones*, U.S. Dist. LEXIS 3358 at *6-9. Here, all four factors weigh heavily in favor of bifurcating the litigation of the fraudulent transfer claims into a second phase.

### 1. First Factor: There Is No Overlap Of The TILA And ICFA Claims With Fraudulent Transfer, Favoring Bifurcation

There is no overlap between the TILA and ICFA claims and the fraudulent transfer claims. The TILA claims are generally that Plaintiffs did not receive a Notice of Right to Cancel form despite signing an acknowledgement of receipt. The ICFA claims are that Plaintiffs were not aware of a basic loan term such as an interest rate although anyone who read the loan documents would have known the interest rate. *Tammerello v. Ameriquest Mortgage Co.*, No. 05-CV-0466, 2006 U.S. Dist. LEXIS 71249 (N.D. Ill. Sep. 29, 2006). (Dkt. No. 149, pp. 2-3).

### 2. Second Factor: A Finding Of No Liability As To The Underlying Claims Would Obviate The Need For Discovery Related To The Fraudulent Transfer Claims

Obviously, a defense verdict on any or all of the 30 Plaintiffs' claims will vitiate any need to pursue the fraudulent transfer claims. But the situation at bar presents an even stronger argument for bifurcation: Even if Plaintiffs prevail, the chance that the fraudulent transfer issues will be relevant are trifling. First, this is a relatively small case. Plaintiffs' compensatory damages are under $1 million and that could only happen if all 30 Plaintiffs prevailed. (Davies Aff., Ex. 6). Second, there is no indication that any judgment would not be immediately paid or secured by a bond. Plaintiffs' counsel is aware that Ameriquest is continuing to settle outstanding litigation and that the parties to the consolidated class actions pending in the multi-district litigation in Judge Aspen's court have recently announced a settlement in principle of the class claims.

Moreover, a review of the merits of Plaintiffs' claims also shows the likelihood that the fraudulent transfer claims will be moot. As explained in the pending Motion for Summary Judgment for the ICFA claims, with the repeated, clear, and boldly stated disclosures of such basic loan terms as interest rates and adjustable versus fixed, Plaintiffs are unable to show any

- 5 -

BN 2618751v2

deceptive conduct and many of the Plaintiffs admit they knew of the terms at issue at the closing, defeating proximate cause. (Dkt. No. 149). The dismissal of the ICFA claims also defeats the only basis for punitive damages.

Plaintiffs are left with only the TILA claims, so Plaintiffs will have to show that they falsely signed an acknowledgment of receipt of the Notice of Right to Cancel. Further, even if Plaintiffs could make that showing, those damages would be recoverable from the Third-Party Defendants, once again, making the fraudulent transfer issues moot.

### 3. Third Factor: The Burden And Cost Of Fraudulent Transfer Discovery Weighs In Favor Of Bifurcating

First, fact discovery concerning the financial status of each of the Ameriquest-related entities, as requested by Plaintiff, will be extremely expensive. The requests for production of documents are extremely broad in temporal scope and subject matter. For example, Plaintiffs demand every lawsuit ever filed against Ameriquest or any related entity; every bank statement and financial record of Ameriquest and its related entities from 2004 to the present; every statement ever provided by an Ameriquest employee in any litigation – about any matter. (Davies Aff., Exs. 13, 14). Many of the requested records are contained off-site at Iron Mountain and will require significant expenditures for retrieval and transportation, in addition to the manpower to review and redact confidential financial information. (*See* Davies Aff., Ex. 7, ¶6c).

Similarly, Plaintiffs' demand the production of e-mails contained on disaster recovery back-up tapes to prove their fraudulent transfer claims. The relevance is unclear, but the cost is known. It costs $140,000 to recover one person's email from disaster recovery back-up tapes over a course of time. (Davies Aff., Ex. 8, ¶4). As shown by the two motions to compel filed by Plaintiffs demanding fraudulent transfer discovery, significant judicial resources will be expended ruling on many of these hotly contested discovery issues.

Second, fraudulent transfer claims are often a battle of the experts, at a significant expense and waste of time. The underlying claims on the other hand may not require any experts or only experts on limited issues so the parties should be able to keep the December trial date for the underlying litigation.

Third, the time and expense of briefing and opposing motions for summary judgment on the fraudulent transfer issues could be deferred and likely obviated. Judicial resources will also

be saved by deferring the necessity of ruling on motions for summary judgment until the fraudulent transfer claim is at issue.

Fourth, substantial amounts of time and money will be spent briefing and opposing pre-trial and trial motions on the fraudulent transfer claims.

Fifth, because only a few parties are named in the fraudulent transfer claims, bifurcating the claims will save the remaining parties from having to waste their time and money being involved in depositions and trial with respect to issues that do not concern them. Likewise, bifurcating the claims will alleviate having any Defendants except Ameriquest and the subsequent assignees of the mortgages from participating in the first phase of the litigation. In other words, all of the parties who have only been named as defendants because they allegedly received a fraudulent transfer would not have to incur the expense of litigation until and only if fraudulent transfer became relevant.

By bifurcating the fraudulent transfer claims, the parties can save a significant amount of time and money – and instead can concentrate on resolving the underlying litigation. And with 30 separate Plaintiffs, that alone should be sufficiently complicated to keep the parties occupied in advance of the December trial date.

### 4. Fourth Factor: The Party Requesting Bifurcation Would Be Prejudiced By The Trial Of Both Issues At The Same Time

As discussed above, *Industrial Hard Chrome* explains that bifurcation is warranted in the same situation presented here: Plaintiffs intend to show insolvency based on an analysis of all legal exposure of Ameriquest at the same time that the trier of fact would be determining the liability on the underlying claims. *Industrial Hard Chrome* 2001 U.S. Dist. LEXIS 1212 at **4-5. Because of the obvious prejudice, those issue have to be bifurcated. *Id.*

### C. The Modified Scheduling Order Should Stay Discovery Concerning Parties And Issues That Are The Subject Of A Motion To Dismiss

As an additional matter, while a motion to dismiss is pending, discovery concerning the claim that is the subject of the motion to dismiss is typically stayed in the interests of judicial economy. *In Re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331 (N.D. Ill. 2005) (discussing general rule and its widespread application); *Sprague v. Brook*, 149 F.R.D. 575, 577-78 (N.D. Ill. 1993) (collecting cases granting stay). A stay on pretrial discovery pending resolution of a motion to dismiss is especially appropriate where, as here, ongoing discovery is unlikely to

produce facts necessary to defeat the motion. *See Sprague,* 149 F.R.D. at 577-78. The alleged recipients of the fraudulent transfers have moved to dismiss for lack of personal jurisdiction. (Dkt. Nos. 162, 165, 174). Also, there is a pending motion to dismiss the fraudulent transfer claims because the Defendants other than Ameriquest are not alleged to be creditors of Plaintiffs, a necessary element for a fraudulent transfer claim. (Dkt. No. 165). Defendants' motions to dismiss may dispose of the fraudulent transfer claims or the claims with respect to certain transfers, making any further discovery unnecessary. Thus, the sole result of Plaintiffs' discovery requests would be unnecessary costs and inconvenience, which would impose an undue burden. *Id.*; *see also Cataldo v. City of Chicago,* No. 01 C 6665, 2002 U.S. Dist. LEXIS 1590, *4-5 (N.D. Ill. Jan. 23, 2002) (finding discovery stay appropriate pending a 12(b)(6) challenge when the requested discovery would result in a waste of the responding party's resources).

### III. CONCLUSION

The proposed modified scheduling order promotes a just, speedy, and efficient resolution of this litigation. It provides for additional time for the parties to complete discovery in light of the addition of twenty-seven (27) new parties, while keeping the original trial date for the underlying claims. The bifurcation will result in significant time and expense savings for the parties as well as promoting judicial economy.

DATED: February 8, 2009                    Respectfully submitted,

                                           By:    /s/ Joanne N. Davies
                                           *Attorneys for Ameriquest Mortgage Company,
                                           ACC Capital Holdings, Corporation, and
                                           Ameriquest Capital Corporation*

                                           Joanne N. Davies (admitted *pro hac vice*)
                                           Buchalter Nemer
                                           18400 Von Karman Avenue, Suite 800
                                           Irvine, California 92612-0514
                                           Telephone: (949) 760-1121
                                           Facsimile: (949) 720-0182

BN 2618751v2

CERTIFICATE OF SERVICE

I, Joanne N. Davies, hereby certify that on this 8th day of February 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

|  | By: _____/s/ Joanne N. Davies_____ |
|---|---|

BN 2618751v2