# EXHIBIT A

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into as of this _____ day of July, 2008 by and between Ameriquest Mortgage Company, a Delaware corporation ("Ameriquest"), Citi Residential Lending Inc., a Delaware corporation ("Citi"), Deutsche Bank National Trust Company, a national banking association, as Trustee, ("Deutsche Bank") for the Registered Holders ("Holders") of Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2005-R6 ("Trust") and Ameriquest Mortgage Securities, Inc., a Delaware corporation ("AMSI"), on the one hand, and Kevin Guydon and Rita Guydon ("Borrowers"), on the other hand. Ameriquest, Citi, Deutsche Bank as Trustee for the Holders of the Trust, AMSI, and Borrowers are sometimes hereinafter collectively referred to as "the Parties" or individually as "Party."

## RECITALS

A.      On or about May 17, 2005, for valuable consideration, Borrowers executed and delivered to Ameriquest an Adjustable Rate Note ("Promissory Note") in the principal amount of $80,100.00. The Note is secured by a Mortgage in favor of Ameriquest, and recorded against the real property located at 4749 Adams Street, Gary, IN 46408 ("Property"). The Note and Mortgage, along with all other documents executed by Borrowers in connection therewith, known as Loan No. 0119883924-5570 shall be referred to as the "Ameriquest Loan". Borrowers have filed a lawsuit against Ameriquest, which has been consolidated in the multi-district litigation proceeding entitled *In Re: Ameriquest Mortgage Co., Mortgage Lending Practices Litigation*, Case No. 05-cv-07097 (the "Lawsuit"). The Lawsuit alleges certain statutory violations, and other improprieties, in connection with the origination of the Ameriquest Loan.

BN 2131757v1

Ameriquest denies Borrowers' allegations and denies that Borrowers have been damaged by any act or omission of Ameriquest.

B. After the origination of the Ameriquest Loan, Ameriquest sold its interest in the loan to AMSI which deposited the loan along with other Ameriquest originated loans into the Trust, and interests in the Trust were sold to the Holders. The Ameriquest Loan is currently serviced by Citi, and Deutsche Bank serves as Trustee of the Trust on behalf of the Holders.

C. Notwithstanding the allegations and positions of the Parties, the Parties desire to resolve on mutually agreeable terms the disputes between them, as set forth herein, for the purpose of avoiding the burden, expense and uncertainty of litigation.

## AGREEMENT

In consideration of the recitals, covenants and conditions contained in this Agreement, and for valuable consideration, the Parties agree as follows:

I. **TERMS**

A. Within five business days after the execution of this Agreement by all Parties, Ameriquest shall deliver a check to the law firm of Edelman, Combs, Latturner & Goodwin, LLC in the amount of $3,000.00 (the "Settlement Payment"), in full and complete settlement of all claims asserted or that could have been asserted by Borrowers in the Lawsuit. The Settlement Payment is paid expressly and exclusively to cover Borrowers' attorneys' fees, pursuant to the Truth In Lending Act, 15 U.S.C.§ 1640(a)(3). The check shall be made payable to "Edelman, Combs, Latturner & Goodwin, LLC and Kevin Guydon and Rita Guydon."

B. Upon receipt of the Settlement Payment, counsel for the Borrowers shall draft, execute, and file with the Court a Notice of Dismissal, providing that the Lawsuit, and each

claim asserted by Borrowers therein, shall be dismissed as to all named defendants, with prejudice.

C.     As further consideration for the release of all claims asserted by Borrowers, Citi will modify Borrowers' obligations under the Promissory Note to repay the Ameriquest Loan consistent with the terms of the proposed Loan Modification schedule attached hereto as Exhibit A, the modified repayment terms to commence October 1, 2008 (the "Loan Modification"). Borrowers further understand and agree that the final terms and conditions of the Loan Modification are subject to execution of the requisite loan documents between Borrowers and Citi.

## II.     <u>RELEASE</u>

Upon execution of this Agreement by all Parties, and compliance with the obligations set forth above, Borrowers and their representatives, beneficiaries, agents, attorneys, predecessors in interest, successors and assigns, and each of them, hereby release and forever discharge Ameriquest, Citi, AMSI, Deutsche Bank (individually, and as Trustee for the Holders of the Trust), and any other person or entity holding a legal or beneficial interest in the Ameriquest Loan, or any modification thereof, and each or any their respective officers, directors, partners, shareholders, associates, employees, members, parents, subsidiaries, predecessors, successors, assigns (including, without limitation, any past or present servicer, investor, or trustee with respect to the Ameriquest Loan), affiliates, attorneys , agents, representatives and any person acting on behalf of or at the direction of or for the benefit of any of the foregoing (collectively the "Released Parties"), of and from any and all claims, complaints, demands, obligations, causes of action, chooses in action, damages, fees, costs and/or expenses whatsoever of any kind or nature, including, but not limited to, those arising out of or related in any manner to the Ameriquest Loan, the origination, modification and/or servicing of the Ameriquest Loan, the

BN 2131757v1

securitization of the Ameriquest Loan, the Lawsuit, or the facts alleged in the Recitals. The parties acknowledge that this release does not include events which post-date this Agreement.

Borrowers acknowledges and agrees that this Agreement applies to all of the Borrowers' claims, losses, damages and causes of action, of whatever nature, whether these damages or losses are known, unknown, foreseen, unforeseen, patent or latent, which Borrowers had, have or might have against the Released Parties.

Borrowers acknowledge that they may hereafter discover facts different from or in addition to those now known or believed to be true related to the matters set forth in this Agreement and agree that this Agreement shall remain in full force and effect, notwithstanding the existence of any such different, new or additional facts. Borrowers further acknowledge that they are familiar with the provisions of California Civil Code Section 1542, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
> EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
> THE RELEASE, WHICH, IF KNOWN BY HIM OR HER MUST
> HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT
> WITH THE DEBTOR."

The Borrowers, being aware of said Code section, hereby expressly waive any rights that they may have thereunder, as well as under any other statues or common law principles of similar effect.

K.G.    R.G.
**Initials**

Borrowers expressly acknowledge that this Release shall be given full force and effect according to each and all of its terms and provisions, including as well those relating to unknown or unsuspected claims, demands, and causes of action, if any, and those relating to all other

BN 2131757v1

claims, demands, and causes of action hereinabove specified.

## III.    GENERAL PROVISIONS

### A.    ADVICE OF COUNSEL

The Parties hereby represent that they have been advised of the effect of this Agreement by their own attorneys, or that they have had the opportunity to consult with an attorney of their choosing, have investigated the facts and are not relying upon any representation or acknowledgment, whether oral or in writing, of any other party hereto except as contained herein. Further, the Parties expressly waive any right to rescind this Agreement.

### B.    FURTHER ASSURANCES

The Parties hereto agree to perform such acts and to prepare, execute, and file any documents or stipulations reasonably required to perform the covenants, to satisfy the conditions herein contained, or to give full force and effect to this Agreement.

Borrowers represent, warrant and covenant to Ameriquest, Citi, and AMSI that they are the holder of all right, title and interest in the claims released subject to this Agreement and as of the date hereof that Borrowers have the full power and authority to enter into and consummate this Agreement.

### C.    SUCCESSOR AND THIRD PARTIES

Each covenant set forth in this Agreement shall inure to the benefit of and be binding upon the Parties and their respective owners, heirs, successors, shareholders, officers, directors, assigns, attorneys, agents, employees, employers, representatives (past and present), and each of them. Further, the release of the Parties and entities who are not signatories to this Agreement is made expressly for their benefit and they shall be deemed third party beneficiaries of the

BN 2131757v1

Agreement. The Parties expressly agree that the rights granted herewith may be assigned to any individual or entity.

**D.    MEANING OF PRONOUNS AND EFFECT OF CAPTIONS**

As used in this Agreement, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of text.

**E.    ENTIRE AGREEMENT**

Except as otherwise set forth herein, this Agreement embodies the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings relating to the subject matter hereof. No course of prior dealing between the Parties, no usage of the trade, and no parol or extrinsic evidence of any nature shall be used or be relevant to supplement, explain or modify any term used herein. Each Party represents and warrants that they are not relying on any other Party for tax or bankruptcy advice. This Agreement is a product of negotiation and preparation by and among each Party. Therefore, the Parties acknowledge and agree that this Agreement should not be deemed prepared or drafted by one Party or the other and shall be construed accordingly.

**F.    COUNTERPARTS**

The terms of this Agreement are contractual and not merely recital. This Agreement may be signed in one or more counterparts, each of which shall be deemed an original. Facsimile copies of this Agreement and the signatures hereto may be used with the same force and effect as the original. This Agreement shall be deemed fully executed and effective when all Parties have

BN 2131757v1

executed at least one of the counterparts, even though no single counterpart bears all such signatures.

### G. COVENANT NOT TO SUE

The Parties agree that none of the Parties shall in any manner challenge this Agreement. Borrowers agrees not to sue or in any way assist or encourage any other person or entity in suing any Party and/or any Released Party with respect to any claim released herein. This release may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the release contained herein.

### H. MODIFICATION ONLY IN WRITING

Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated, except by a subsequently executed instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge or termination is sought.

### I. NO WAIVER

No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power or remedy which any Party and/or any Released Party may have, nor shall any such delay be construed to be a waiver of any such right, power, or remedy, or any acquiescence in any breach or default hereunder; nor shall any waiver of any breach or default of any Party hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to any Party and/or Released Party hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of, any action begun to enforce any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies which any Party and/or

BN 2131757v1

Released Party would otherwise have. Any waiver, permit, consent or approval by any Party of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing signed by the Party to be charged and only as to that specific instance.

**J.    NON-EXCLUSIVE REMEDIES**

In the event of a breach of any provision of this Agreement, the Parties and/or any Released Party, in addition to and not in lieu of the remedies expressly provided in this Agreement, shall be entitled to exercise such remedies that exist at law or equity to enforce this Agreement, including but not limited to seeking specific performance.

**K.    CONFIDENTIALITY**

No Party, or any representative of any Party, shall, without the prior, written consent of all other Parties (1) provide a copy of this Agreement or any portion of this Agreement to any person/entity not a party to this Agreement; (2) disclose to any person/entity not a party to this Agreement any or all parts of the terms of this Agreement; (3) disclose to any person/entity not a party to this Agreement any of the prospective parts of this Agreement or terms of settlement which were discussed in negotiations prior to the execution of this Agreement.

Notwithstanding the foregoing, each party may make the following disclosures: (1) disclosures mandated by legislative, judicial and/or administrative order, rule or regulation; (2) disclosures to tax preparers, tax advisors, independent public accountants, attorneys and insurers, past, present and prospective, provided that such tax preparers, tax advisors, independent public accountants, attorneys and insurers agree to keep all such information in strict confidence except as required by this Agreement, law, regulation, or the standards of the accounting or auditing profession; (3) disclosures to any taxing authority for the purpose of submitting the respective party's tax information to that tax authority; (4) disclosures required by governmental regulatory

BN 2131757v1

bodies with the legal right to review the books and records of a party; and (5) any other disclosure which is mandated by applicable law, regulation, rule or order.

### L. ATTORNEYS' FEES

The Parties shall not make any demands for attorneys' fees, costs and expenses incurred in negotiating or reviewing this Agreement or otherwise in connection with the Lawsuit. However, in any action to enforce Sections I(A)-(B) and II of this Agreement, reasonable fees and costs will be awarded to the prevailing party. Further, the Parties shall not make any demands to the opposing party for statutory damages or attorneys' fees or costs under the Federal Truth in Lending Act or any comparable state law or regulation.

### M. COMPROMISE OF DISPUTED CLAIM

The Parties hereto acknowledge that the execution of this Agreement and consummation of the transactions contemplated hereby do not constitute an admission of liability or of any facts by any of the Parties. This Agreement shall not be offered or received in evidence in any action or proceeding in any court, administrative action or other tribunal for any purpose other than to enforce this Agreement.

### N. CONSTRUCTION/SEVERABILITY

This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to resolve completely those claims and disputes between the Parties, as more fully described herein. If any provision of this Agreement shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement but in no event shall such provision effect, impair or invalidate any other provision hereof. This Agreement shall be construed without regard to the identity of the person who drafted its various provisions; each and every provision of this Agreement shall be construed as

BN 2131757v1

though all of the Parties participated equally in the drafting of the same, and any rule of construction that a document is to be construed against the drafting Party shall not be applicable to this Agreement.

**O.    VOLUNTARY AGREEMENT**

This Agreement was freely and voluntarily entered into by the Parties who each had the opportunity to be represented and advised by counsel with respect to entering into this Agreement.

**P.    GOVERNING LAW**

This Settlement Agreement shall be construed in accordance with and governed by the internal laws, other than choice of laws, of the State of California, regardless of where executed or performed. If any provision of this Settlement Agreement shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement, but in no event shall such provision affect, impair or invalidate any other provision hereof.

**Q.    ADMISSIONS**

This Settlement Agreement is intended to be in compromise and settlement of disputed and unliquidated claims. Nothing herein shall constitute or be asserted as constituting any admission of liability or wrongdoing by or against any party hereto.

**R.    TIME IS OF THE ESSENCE**

As to all obligations hereunder, time is of the essence.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement effective on the day and year set forth above.

**IT IS SO AGREED.**

Dated: _____, 2008    _Kevin Guydon_ (signature)
Kevin Guydon

Dated: _____, 2008    _Rita Guydon_ (signature)
Rita Guydon

Dated: _____, 2008    Ameriquest Mortgage Company

By: _____

Name:

Title:

Dated: _____, 2008    Citi Residential Lending Inc.

By: _____

Name:

Title:

Dated: _____, 2008    Ameriquest Mortgage Securities, Inc.

By: _____

Name:

Title:

Dated: _____, 2008    Deutsche Bank National Trust Company, Trustee
for the Registered Holders of Ameriquest Mortgage
Securities Inc., Asset-Backed Pass-Through
Certificates, Series 2005-R6

By: _____

Name:

Title:

Dated: _____, 2008

_____
Kevin Guydon


Dated: _____, 2008

_____
Rita Guydon


Dated: ___7 - 30___, 2008

Ameriquest Mortgage Company

By_____

Name: **DIANE E. TIBEREND**

Title: **ASST. SECRETARY**


Dated: _____, 2008

Citi Residential Lending Inc.

By: _____

Name:

Title:


Dated: ___7 - 30___, 2008

Ameriquest Mortgage Securities, Inc.

By_____

Name: **DIANE E. TIBEREND**

Title: **ASST. SECRETARY**


Dated: _____, 2008

Deutsche Bank National Trust Company, Trustee
for the Registered Holders of Ameriquest Mortgage
Securities Inc.. Asset-Backed Pass-Through
Certificates, Series 2005-R6

By: _____

Name:

Title:

Dated: _____, 2008     _____
                                   Kevin Guydon

Dated: _____, 2008     _____
                                   Rita Guydon

Dated: _____, 2008     Ameriquest Mortgage Company

                                   By: _____
                                   Name:
                                   Title:

Dated: ___9/8_____, 2008     Citi Residential Lending Inc.

                                   By: _____
                                   Name: Michael Zosrby
                                   Title: VP Credit Service

Dated: _____, 2008     Ameriquest Mortgage Securities, Inc.

                                   By: _____
                                   Name:
                                   Title:

Dated: ___9/8_____, 2008     Deutsche Bank National Trust Company, Trustee
                                   for the Registered Holders of Ameriquest Mortgage
                                   Securities Inc., Asset-Backed Pass-Through
                                   Certificates, Series 2005-R6

                                   By: _____
                                   Name: Michael Zastopil
                                   Title: U.P. Credit Service

# Loan Mod

| | | | | | |
|---|---|---|---|---|---|
| Loan Number | 0119883924 | Loan Type | ARM | Original Loan Amount | $80,100.00 |
| Borrower | KEVIN GUYDON | Due Date | 07/01/2008 | Principal Balance | $78,589.60 |
| CoBorrower | RITA GUYDON | Maturity Date | 06/01/2035 | AVM Value | $0.00 |
| Lien Position | 1st | Previous Mod Date | | Suspense Balance | $0.00 |
| Escrowed | N | Acquisition Date | | Monthly PI Payment | $697.02 |
| Orig Occupancy | Owner | Next Int Rate Adj | 01/01/2009 | Monthly Tax Payment | $0.00 |
| Prop State | IN | Next PI Payment Adj | 01/01/2009 | Monthly Ins Payment | $0.00 |
| Stop Adv Investor | Y | Loan Term | 360 | Total Monthly Payment | $697.02 |

| | Delq Amt | Forgiveness | Capitalize | Remaining |
|---|---|---|---|---|
| Delinquent Interest | $0.00 | $0.00 | $0.00 | $0.00 |
| Esc Shortage/Overage | $0.00 | $0.00 | $0.00 | $0.00 |
| Recoverable Corp Adv | $125.00 | $0.00 | $125.00 | $0.00 |
| Late Charge Due | $920.04 | $920.04 | $0.00 | $0.00 |
| Total Other Fees | $105.00 | $0.00 | $105.00 | $0.00 |
| Escrow Advance | $0.00 | $0.00 | $0.00 | $0.00 |
| Corp Adv Not Assessed | $0.00 | $0.00 | $0.00 | $0.00 |
| Fees Not Assessed | $0.00 | $0.00 | $0.00 | $0.00 |
| Escrow Not Assessed | $0.00 | $0.00 | $0.00 | $0.00 |
| Total | $1,150.04 | $920.04 | $230.00 | $0.00 |

### Valuation/Income Ratios

| | |
|---|---|
| AVM/BPO Valuation | $89,000.00 |
| Total Monthly Income | $6,441.00 |
| Consumer Expenses | $670.00 |
| Remaining Escrow Amount | $0.00 |
| Escrow Term | 1 |

### Down Payment / Capitalization

| | |
|---|---|
| Current Principal Balance | $78,589.60 |
| Total Debt Capitalized | $230.00 |
| Principal Reduction | $147.18 |
| Down Payment | $0.00 |
| Applied Suspense | $0.00 |
| Other Credits | $0.00 |
| New Principal Balance | $78,672.42 |
| Amount Over Orig Loan Amount | -$1,427.58 |

### New Loan Terms

| | Current | Proposed | | Current | Proposed |
|---|---|---|---|---|---|
| Principal Balance | $78,589.60 | $78,672.42 | Loan to Value | 88.30% | 88.40% |
| Interest Rate | 9.9000 | 9.0000 | Additional Mortgage Expenses | $0.00 | $0.00 |
| Amortization Term | 360 | 321 | Front End DTI | 10.82% | 13.89% |
| Monthly PI Payment | $697.02 | $649.01 | Back End DTI | 21.22% | 24.29% |
| Monthly TI Payment | $0.00 | $245.50 | Remaining Term | 324 | 321 |
| Monthly Esc Shortage | | $0.00 | Resume Due Date | 07/01/2008 | 10/01/2008 |
| Total Monthly Payment | $697.02 | $894.51 | | | |

_VICTORIA DUNN_
Approver

_MANAGER_
Title

_net surplus:_
_$ 2098.99_

_Victoria Dunn_
Signature
_6/26/08_

Date

Status: NEW          Loan: 0119883924          Date: Thu Jun 26 2008 05:46:12 PM

**Comments:**
Net income of $4548.50·Net surplus of $2,098.99.

Status: NEW                    Loan: 0119883924                    Date: Thu Jun 26 2008 05:46:12 PM

# EXHIBIT B



Oct 27, 2008

Cecilia Rowan

17085 Seneca Dr
Howard City, MI 49329-9329

RE:     Mortgagor(s):              Cecilia Rowan,
        LLS #:                     15780638
        Secured Property:          17085  Seneca Dr Howard City,  MI 49329
        Original Note Amount:      $70,550.00
        Date of Original Mortgage: Apr 07, 2005

Dear Mortgagor(s):

This letter constitutes a commitment to modify the referenced note and mortgage, subject to the terms and conditions stated
below.  This letter contains our offer, and it permits you to accept this offer.  When signed by you, this letter will constitute
your agreement to these terms and conditions.

If you choose to accept this commitment, you must sign and return it to Litton Loan Servicing LP ("Litton") by  Nov 05, 2008.
Failure to do so will result in the automatic withdrawal of the offer to modify this loan by Litton without further notice.

Present Loan Information

Current Principal Balance:              $68,221.15
Current Interest Rate:                  7.750%
Current Principal and Interest Payment:  $505.43
Current Total Payment[including escrow]:$505.43
Delinquent Interest Owed:               $.00

Outstanding Escrow Advances:          $.00

Total Amount Owed as of Oct 27, 2008: $68,521.15

As indicated above, unpaid escrow advances, expenses for attorney fees and costs, property preservation expenses, inspections, and any other servicer advances, are due and payable. A detail of the amounts owed and how they will be collected is provided on the following page.

Modification Approval Letter - Cecilia Rowan
Page 2

**Servicer Advances:**
  (a) $300.00 due for unpaid servicer advances for attorney fees and costs, property preservation expenses, inspections and other expenses
  (b) $.00 servicer advances to be paid by you as part of this modification
  (c) $.00 servicer advances capitalized and added to the new principal balance
  (d) $300.00 servicer advances you owe that are being waived
  (e) $.00 servicer advances that will remain due and payable upon completion of this loan modification

**Any uncollected and unbilled advances that you owe as of the date of this approval, will remain due and payable after completion of this modification.**

**Escrow Advances:**
  (a) $.00 due for unpaid escrow advances
  (b) $.00 escrow advances to be paid by you as part of this modification
  (c) $.00 escrow advances capitalized and added to the new principal balance
  (d) $.00 escrow advances you owe that are being waived
  (e) $.00 escrow advances that will remain due and payable upon completion of this loan modification

Your escrow advance balance, if applicable, will be brought to $.00 as part of this loan modification. Future escrow advances may cause a payment increase to your loan. If your loan is non-escrowed, you are responsible for the prompt payment of real estate taxes and property insurance as part of your original obligation on your note and mortgage.

**Offer to Modify Mortgage**

We hereby offer to modify the note and mortgage, as follows (as modified it will be called the "Modified Mortgage"):

**Section A. Terms of Modification.** The mortgage will be modified to reflect the following terms:

  (a) The new principal balance will be $68,221.15 .
  (b) The new annual interest rate will be 6.75 %, and the effective date for the new interest rate will be Oct 01 2008.
  (c) The monthly payment of principal and interest will be $460.72, plus $.00 for taxes and insurance for a total monthly payment of $460.72. **Future advances from escrow will result in an increased payment to cover that shortage.**
  (d) The first regular monthly payment on the modified mortgage will begin on Nov 01, 2008.
  (e) The modified mortgage's maturity date will be on May    01, 2035.
  (f) All other terms and conditions of the note and mortgage will remain the same for the modified mortgage, including but not limited to, provisions for late fees and Litton's right to pursue collection action for default, including foreclosure.

**All living mortgagors, guarantors, endorsers or sureties on the original mortgage must sign the modified mortgage and any other documents that we require.**

and any other documents that we require.

**Section B. Amounts To Be Paid.** You will be required to pay the following amounts **in the form of cashier check or certified funds** as specified below:

(a) $.00 attorney fees and costs for the modification (non - refundable)
(b) $.00 cash contribution (to be applied to the total amount owed, as determined by Litton)
(c) $.00 total funds required

**You must return the attorney fees and cost with the signed acceptance of this commitment. The cash contribution must be returned with the executed loan modification agreement. If any additional monthly payments are due, you must also pay them upon execution of the loan modification agreement.**

Modification Approval Letter - Cecilia Rowan
Page 3

**Section C. Contingencies.** This offer is contingent on the following:

(a) A lender's title insurance policy or endorsement that insures the modified mortgage as first lien may be required. If you have any other liens on the property, you may be required to obtain agreements by which other secured creditors subordinate their interests to the modified mortgage.
(b) If any other issues arise between the date of this commitment and the date on which the documents for the modified mortgage are to be signed, including, but not limited to, deterioration in the condition of the property, lawsuits, liens, additional expenses and defaulted amounts, we may refuse to permit the mortgage to be modified and will pursue all collection action, including foreclosure.

If you choose to accept the offer for a modified mortgage upon the terms and conditions above, you must agree by signing the acceptance that follows this offer. The acceptance must be signed by each mortgagor and returned to Litton by Nov 05, 2008, or the offer will expire.

Sincerely,

Evelyn Angton
Loss Mitigation Department
1 800 548 8665 ext 4610
713 793 4453

**Acceptance of Offer for Modified Mortgage:**

I am the mortgagor on the referenced mortgage. I agree to or acknowledge the following:

I accept all of the terms and conditions stated in this offer.

I have no defenses or offsets against the mortgage or Litton's right to collect the mortgage by foreclosure or otherwise.

I acknowledge this commitment for a modified mortgage, even when signed by Litton and me/us, will not prevent or prohibit Litton from continuing collection action. Therefore, in the event I sign this commitment, but fail to fulfill any or all of its terms

collection action.

The terms of the modified mortgage will be as stated in Section A. I will sign any documents necessary to complete the modified mortgage.

I will pay by **cashier's check or certified check** the total amount stated in Section B. If Litton determines that any additional sums are due, we will pay those amounts.

I acknowledge this commitment is contingent as provided in Section C. Litton shall determine whether the contingencies have been satisfied.

If the new principal amount of the modified mortgage is more than the existing principal balance of the mortgage, I understand those amounts due, such as unpaid interest, taxes, insurance, or expenses, have been added to the principal amount under the modified mortgage.

Modification Approval Letter - Cecilia Rowan
Page 4

All representations made by me/us pursuant to my/our request for the modified mortgage are true and have been and will be relied upon by Litton, and any breach of the representations will give Litton the right to terminate this commitment and could result in the pursuit of other rights and remedies by Litton.

Check the Appropriate Box:

_____ I am now occupying the property as my/our primary place of residence.

_____ I am not now occupying the property as my/our primary place of residence.

I have had the opportunity to consult with legal and/or tax counsel prior to agreeing to the foregoing, and have agreed to these terms and conditions whether or not I retained such counsel.

*Cecilia Rowan*                          Date: *12-08-08*
Cecilia Rowan

_____          Date: _____

*Please send a signed copy of this commitment letter to Litton by mail, facsimile, or e-mail. This contact information been provided on the previous pages of this commitment letter.*

**LITTON LOAN SERVICING LP IS A DEBT COLLECTOR. THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

LLS#: 15780638

EXHIBIT C

 **Litton** Loan Servicing®

4828 Loop Central Drive
Houston, TX 77081
Telephone (800) 999-8501
Fax (713) 793-4363
www.littonloan.com

November 2, 2008

Cecilia Rowan
17085 Seneca Drive
Howard City, MI 49329-9329

RE: Loan No.:     15780638
    Property Address: 17085 SENECA DRIVE
                      HOWARD CITY, MI 49329

Dear Mortgagor(s):

Enclosed is a Loan Modification Agreement on a Note executed by you on March 31, 2005 in the amount of $70,550.00. Please forward the signed and notarized Loan Modification Agreement and Approval Letter within seven days to the following address:

Litton Loan Servicing
c/o Evelyn Angton
Loss Mitigation Department
4828 Loop Central Drive
Houston, TX 77081-2226

Should you have any questions, please do not hesitate to contact Evelyn Angton at (713) 960-9676.

Sincerely,

Litton Loan Servicing, LP

Enclosure

WHEN RECORDED MAIL TO:

Litton Loan Servicing LP
4828 Loop Central Drive
Houston, TX 77081-2226

Loan No. 15780638

### MODIFICATION AGREEMENT

  THIS MODIFICATION AGREEMENT (the "Agreement") is made and entered into as of October 1, 2008, between U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-RP7 c/o Litton Loan Servicing LP whose address is 4828 Loop Central Drive, Houston, TX 77081-2226 ("US BANK") and CECILIA M. ROWAN, A SINGLE WOMAN whose address is 17085 Seneca Drive, Howard City, MI 49329 (the "Borrower" or "you".) The Agreement is as follows:

### RECITALS

A.  On or about March 31, 2005, the predecessor of US BANK loaned you seventy thousand five hundred fifty and no/100 dollars ($70,550.00) (the "loan"), which Loan was evidenced by a note dated March 31, 2005 payable to the order of AMERIQUEST MORTGAGE COMPANY (the "Original Note").

B.  The Original Note is secured by a Deed of Trust, Mortgage, or Deed to Secure Debt dated March 31, 2005 recorded among the official records of Montcalm County (the "Original Mortgage").

C.  The Legal Description is:

THE FOLLOWING DESCRIBED PREMISES SITUATED IN THE TOWNSHIP OF WINFIELD COUNTY OF MONTCALM AND STATE OF MICHIGAN, TO WIT: LOT 257, PAWNEE POINTS PLAT NO. 2, WINFIELD TOWNSHIP, MONTCALM COUNTY, MICHIGAN, ACCORDING TO THE RECORDED PLAT THEREOF AS RECORDED IN LIBER 10 OF PLATS PAGE 42.

D.  The Original Mortgage grants US BANK a security interest in the Property owned by you and described in the Original Mortgage and allows US BANK to enforce remedies, including foreclosure of the Property, upon occurrence of a default, including your failure to make payments as agreed under the Original Note.

E.  US BANK is now the owner of the Original Note and Original Mortgage (the "Loan Documents") and you agree that the Loan Documents are the only agreements and documents now in effect with respect to the Loan.  Any other understandings, agreements or arrangements, which may have existed pertaining to the Loan, are now terminated.

F.  You have requested that US BANK refrain from exercising the rights and remedies granted to US BANK by the Loan Documents and, instead, agree to modify the terms of your obligations under the Loan Documents pursuant to the terms and conditions set forth in this Agreement.

G.  Pursuant to your request to modify your obligations under the Loan Documents, and in consideration of the promises, conditions, and terms set forth below, US BANK has agreed to adjust the interest rate of the Original Note, the repayment terms of the Original Note, and the total amount due with respect to the

Original Note. US BANK has also agreed to reinstate the Loan as current and not in default as of the Effective Date, as defined below.

**AGREEMENT**

**NOW, THEREFORE,** in consideration of the foregoing recitals which you agree to be true and correct and a part of this Agreement, you and US BANK agree as follows:

1. **Validity of the Loan Documents:** Except as expressly modified by this Agreement, the terms and conditions of the Loan Documents remain in full force and effect and the Original Mortgage shall continue to secure the Original Note and this Agreement.

2. **The Effective Date:** This agreement will be effective on October 1, 2008.

3. **Modification of Your Obligations:** Your obligations under the Fixed Loan Documents are modified as follows:

   a. **New Monthly Payment:** Your new monthly payment will initially be a total of **four hundred sixty and 72/100 dollars ($460.72).** Further advances in escrow will result in an increase payment to cover that shortage ("New Monthly Payment").

   b. **Payment Term:** Your first New Monthly Payment will be due on **November 1, 2008,** with all of your subsequent Monthly Payments due on the first day of each month following this date and continuing for three hundred nineteen **(319)** months until May 1, 2035 (the "New Maturity Date"), when your remaining New Principal Balance, as defined below, including any additional interest, charges, advances, and other fees and costs related to the Loan which US BANK has not yet collected, will be due.

   c. **Late Charges:** If the Lender has not received the full amount of any monthly payment when due, Borrower will pay a late charge to the Lender in an amount as set forth in the Note.

   d. **New Principal Balance:** The new principal balance you now owe with respect to the Loan is sixty-eight thousand two hundred twenty-one and 15/100 dollars **($68,221.15)** (the "New Principal Balance").

   e. **Interest Rate:** From the Effective Date of this Agreement, you will owe interest on the unpaid New Principal Balance at an annual rate equal to **6.75%.**

4. **Right to Prepay:** Consistent with the original Note, Mortgage/Deed of Trust.

5. **Escrow Account:** Subject to applicable law, US BANK shall maintain an escrow account (the "Escrow Account") to which you shall pay to US BANK on the day monthly payments are due a sum for yearly taxes and assessments; yearly hazard, property or flood insurance premiums; and other costs necessary to preserve US BANK's security interest in the Property ("Escrow Costs"). The amount of your monthly payment to the escrow account will equal 1/12 of US BANK's estimate of the annual Escrow Costs and may change from time to time as Escrow Costs change.

   In accordance with federal law (RESPA), US BANK may hold a reserve in an amount not to exceed 1/6th of the total annual projected Escrow Costs, unless the mortgage documents or state law specifies a lower amount. Annually, it will be US BANK's responsibility to analyze the Escrow Account. If the Funds held by US BANK exceed the amounts permitted to be held by applicable law, US BANK shall account to you for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by US BANK are not sufficient to pay the Escrow Costs when due, US BANK may notify you in

writing, and, in such case, you shall pay to US BANK the amount necessary to make up the deficiency. You shall make up the deficiency in no more than twelve monthly payments.

6. **Insurance Requirements:** The insurance carrier providing the insurance shall be chosen by you subject to US BANK's approval which shall not be unreasonably withheld. All insurance policies and renewals shall reference US BANK's loan number and include a standard mortgagee clause for the benefit of:

> US BANK
> c/o Litton Loan Servicing LP
> 4828 Loop Central Drive
> Houston, TX 77081-2226

7. **Completion of this Agreement:** If you fully comply with all of the terms and provisions of this Agreement and the terms and provisions of the Loan Documents and pay the New Principal Balance in full with accrued interest on or before the New Maturity Date, US BANK will discharge your obligations under the Loan Documents and this Agreement. Moreover, for as long as you fully comply with the terms and provisions of the Loan Documents and this Agreement, US BANK will, until the New Maturity Date, reinstate your Loan as current and shall not exercise any of its collection rights or remedies against you which are permitted under the Loan Documents, this Agreement, or at law or in equity.

8. **Additional Events of Default:** Without limiting the other events of default set forth in the Loan Documents, you will be in default under this Agreement and under the Loan Documents upon the occurrence of any one or more of these events:

   a. If any bankruptcy or insolvency proceeding is filed by or against you.

   b. Any representation or warranty made by you in the Loan Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

   c. You fail to make the New Monthly Payments as required by this Agreement.

   d. You fail to make a lump sum payment to cover Escrow Charges when requested by US BANK.

   e. You sell or convey any interest in the Property without US BANK's prior written consent.

   f. Breach of any of the terms or provisions of this Agreement.

9. **Consequences of Your Default:** If you default under this Agreement or the Loan Documents after the Effective Date (your "Default"), US BANK may, in addition to the remedies provided by the Loan Documents, terminate this Agreement and, subject only to applicable law, institute or resume any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Agreement and exercise any of its rights and remedies against you under the Loan Documents and/or this Agreement. Moreover, upon your Default, US BANK may, at its option, accelerate the entire Total Debt due under the Original Note, accrued interest thereon, and any other costs or advances; and elect to account for and apply all payments, including but not limited to the New Monthly Payments, you may have made from the Effective Date until the time of your Default pursuant to the terms of the Original Note.

10. **Your Representations and Warranties:** As a material condition to US BANK willingness to enter into this Agreement, you represent and warrant the following facts:

    a. That you are indebted to US BANK pursuant to the terms of the Loan Documents and this Agreement, that your Total Debt is accurately set forth in this Agreement, and that you have no claims, actions, causes of action, statute of limitations or other defenses, counterclaims, or setoffs

of any kind which you can assert against US BANK in connection with the making, closing, administration, collection, or enforcement by US BANK of the Loan Documents, this Agreement, or any related agreement.

b.   You represent and warrant that you have no intention to file or agree to any bankruptcy proceeding at any time after the Effective Date and that you believe the terms of this Agreement are sufficient to allow you to comply with your obligations under the Loan Documents and this Agreement.

c.   You represent and warrant that all statements you have made to US BANK , whether written or oral, all financial information and releases you have provided to US BANK regarding you or the Property, and all information provided pursuant to any initial agreement you may have signed with US BANK, remain valid and were true as of the date made and as of the Effective Date.

d.   That you understand that this Agreement is legally binding and that it affects your rights.  You have obtained, or have had the opportunity to obtain, independent legal counsel concerning the meaning and importance of this Agreement.  You further represent and warrant that you are signing this Agreement voluntarily and with full understanding of its contents and meaning.

11.  <u>YOUR RE LEASE OF US BANK:</u> IN THE EVENT THAT YOU HAVE ANY CLAIMS, ACTIONS OR CAUSES OF ACTION, STATUTE OF LIMITATIONS OR OTHER DEFENSES, COUNTERCLAIMS OR SETOFFS OF ANY KIND WHICH YOU NOW OR HEREAFTER MAY ASSERT AGAINST US BANK IN CONNECTION WITH THE MAKING, CLOSING, ADMINISTRATION, COLLECTION OR THE ENFORCEMENT BY US BANK OF THE LOAN DOCUMENTS, THIS AGREEMENT OR ANY OTHER RELATED AGREEMENTS, THEN BY EXECUTING THIS AGREEMENT YOU FOREVER IRREVOCABLY WAIVE AND RELINQUISH THEM. THE TERM "US BANK" SHALL INCLUDE FOR THE PURPOSES OF THIS AGREEMENT, BUT SHALL NOT BE LIMITED TO, US BANK'S PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, ATTORNEYS AND ALL PRIOR AND SUBSEQUENT PARTIES IN INTEREST, INCLUDING BUT NOT LIMITED TO US BANK'S PREDECESSOR IN INTEREST.

12.  <u>Final Agree ment:</u> This Agreement may not be supplemented, changed, waived, discharged, eliminated, modified or omitted except by written document executed by both you and US BANK. This Agreement, the Agreed Order and the Mutual Settlement and Release Agreement constitute the entire agreement between you and US BANK, supersedes all previous negotiations and discussions between you, US BANK and/or US BANK's predecessors in interest, and neither parole evidence nor any prior or other agreement shall be permitted to contradict or vary its terms.  There are no promises, terms, conditions, or obligations other than those contained in these Agreements.  These Agreements are all executed contemporaneously.

13.  <u>No Waiver:</u>  By executing this Agreement, US BANK is not waiving and shall not be deemed to have waived any of your defaults under the Loan Documents or any of US BANK's rights or remedies against you.  Moreover, any waiver by US BANK of any breach or any provision of this Agreement or the Loan Documents or any related agreement or its failure to exercise any right or remedy under this Agreement, the Loan Documents or any related agreement shall not be deemed a continuing waiver or a waiver of any other or subsequent breach, whether of the same or any other provision, and shall not in any way impair any of US BANK's rights or remedies.

14.  <u>No Novati on:</u> You expressly agree that this Agreement is not a new loan from US BANK but simply the modification of your existing obligations under the Loan Documents.  Neither you nor US BANK have any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

15.  <u>Choice of Law  and Severability:</u> This Agreement shall be governed by and construed under the laws of the State where the Property is located.  If any portion, term or provision of this Agreement is held by a

court of competent jurisdiction to be illegal or in conflict with such law, the validity of the remaining portions, terms or provision of this Agreement shall not be affected, and the rights and obligations of the parties shall be construed and enforced as if this Agreement did not conflict with such law and/or did not contain the portion, term or provision held to be invalid.

16. <u>Successors:</u> This Agreement shall bind the parties' respective successors, assigns, heirs and personal representatives. This Agreement shall not be understood to limit in any way the right of US BANK to sell, or otherwise convey, any interest in the subject obligation to another, provided that such subsequent party in interest is also bound as US BANK to the terms of this Agreement.

17. <u>References:</u> All references to the singular shall include the plural and all references to one gender herein shall include both genders.

18. <u>Executed in Counterparts:</u> This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

19. <u>No Trial By Jury:</u> **BY EXECUTING THIS AGREEMENT, YOU IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT AND ANY RELATED AGREEMENTS OR DOCUMENTS OR TRANSACTIONS CONTEMPLATED IN THIS AGREEMENT.**

20. <u>Payment Instructions:</u> All payments, unless you are notified by US BANK in writing of a different address, shall be made to US BANK at the following address:

> Litton Loan Servicing LP
> 4828 Loop Central Drive
> Houston, TX 77081-2226

21. <u>Notices:</u> All notices should be sent to:

If to:

> US BANK
> c/o Litton Loan Servicing LP
> 4828 Loop Central Drive
> Houston, TX 77081-2226

If to Borrower:

> Cecilia Rowan
> 17085 Seneca Drive
> Howard City, MI 49329-9329

22. <u>Time of the Essence:</u> Time, and US BANK's unimpaired security interest in the Property, shall be of the essence as to your obligations under this Agreement.

WITNESS the following signatures and seals as of the day first written above.

> U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE C-BASS MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-RP7

BORROWER(S):

_Cecilia Rowan_

Cecilia Rowan

STATE OF <u>Michigan</u> §

§

COUNTY OF <u>Montcalm</u> §

On <u>12 – 8 – 08</u>, before me, <u>Beverly J. Clark</u>, a Notary Public in and for said County and State, personally appeared Cecilia Rowan, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

_Beverly J Clark_

Notary Public

BEVERLY J CLARK
NOTARY PUBLIC · STATE OF MICHIGAN
COUNTY OF MONTCALM
MY COMMISSION EXPIRES FEBRUARY 24, 2015
ACTING IN THE COUNTY OF: Montcalm

## FACTS RELATING TO PLAINTIFFS KEVIN AND RITA GUYDON

1.     In 2008, plaintiffs Kevin Guydon and Rita Guydon signed the settlement agreement attached hereto as <u>Exhibit A</u>.  <u>Exhibit A</u> was also signed by defendants Ameriquest Mortgage Company and Ameriquest Mortgage Securities, Inc., through Diane E. Tiberend, on July 30, 2008; and by defendants Citi Residential Lending, Inc. and Deutsche Bank National Trust Company, Trustee for the Registered Holders of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2005-R6, through Michael Zastoupil, on September 8, 2008.

2.     Paragraph I (C) of <u>Exhibit A</u> states that modified repayment terms were to commence October 1, 2008.

3.     As of the date of filing this motion, plaintiffs Kevin Guydon and Rita Guydon are still receiving statements for and have been paying the higher, pre-modification monthly payments.

## FACTS RELATING TO PLAINTIFF CECILIA ROWAN

4.     On December 8, 2008, plaintiff Cecilia Rowan signed the loan modification agreement drafted by defendant Litton Loan Servicing and dated October 27, 2008, attached hereto as <u>Exhibit B</u>.

5.     On December 8, 2008, plaintiff Cecilia Rowan also signed and had notarized the loan modification agreement drafted by defendant Litton Loan Servicing and dated November 2, 2008, attached hereto as <u>Exhibit C</u>.

6.     Paragraph 2 of the <u>Exhibit C</u> states, "The agreement will be effective on October 1, 2008."

7.     On November 26, 2008, defendants' counsel emailed Rowan's counsel,

2

# EXHIBIT D

## Catherine A. Ceko

**From:** Newman, Brian H. [bnewman@buchalter.com]
**Sent:** Wednesday, November 26, 2008 11:34 AM
**To:** Catherine A. Ceko
**Subject:** RE: Rowan Documents

Cat, per Litton's lawyer, the disconnect between pages 3 and 4 is a typo. They do expect Rowan to pay for November and December at the new rate. If that's a problem, please let me know and I will call him back.

Thanks,


**Brian H. Newman**
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
ph: (213) 891-5573
fax: (213) 630-5848



**From:** Catherine A. Ceko [mailto:cceko@edcombs.com]
**Sent:** Tuesday, November 25, 2008 2:42 PM
**To:** Newman, Brian H.
**Subject:** RE: Rowan Documents

Hi Brian,

Two things about the pdf document. First, it refers to the agreement as starting November 1st. Will the client be expected to pay November and December at the new rate immediately upon effect of the agreement? Second, there seems to be a disconnect between pages 3 and 4 of the pdf. The last sentence on pg. 3 doesn't seem to go with the first sentence on pg. 4. Thanks.

-Cat

**From:** Newman, Brian H. [mailto:bnewman@buchalter.com]
**Sent:** Tuesday, November 25, 2008 2:21 PM
**To:** Catherine A. Ceko
**Subject:** FW: Rowan Documents

Cat, here are the documents for Rowan.

Thanks,


**Brian H. Newman**
Buchalter Nemer
1000 Wilshire Boulevard, Suite 1500
Los Angeles, California 90017-2457
ph: (213) 891-5573
fax: (213) 630-5848

4/21/2009

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

# EXHIBIT E

## Catherine A. Ceko

**From:** Catherine A. Ceko
**Sent:** Monday, March 23, 2009 2:52 PM
**To:** 'Stevenson, Karen L.'
**Subject:** RE: Cecelia Rowan

Litton.

**From:** Stevenson, Karen L. [mailto:kstevenson@buchalter.com]
**Sent:** Monday, March 23, 2009 2:47 PM
**To:** Catherine A. Ceko
**Cc:** Alana J. Parvey
**Subject:** RE: Cecelia Rowan

Cat- is Ms. Rowan's servicer CitiRes or Litton?

Karen


Karen Stevenson | Sr. Counsel | **BuchalterNemer**, A Professional Corporation | 1000 Wilshire
Boulevard, Suite 1500 | Los Angeles, CA 90017-2457 | Direct Dial: (213) 891-5574 | Cell Phone:
(213) 361-6428 | Direct Fax: (213) 630-5764 | Switchboard: (213) 891-0700 |
kstevenson@buchalter.com | www.buchalter.com

**From:** Catherine A. Ceko [mailto:cceko@edcombs.com]
**Sent:** Tuesday, March 17, 2009 9:28 AM
**To:** Stevenson, Karen L.
**Cc:** Alana J. Parvey
**Subject:** FW: Cecelia Rowan
**Importance:** High

Karen,

This modification should've been effectuated months ago. Please check with Litton to see why they aren't
honoring the agreement. Thanks.

-Cat

**From:** Catherine A. Ceko
**Sent:** Thursday, February 19, 2009 8:49 AM
**To:** 'Stevenson, Karen L.'
**Subject:** FW: Cecelia Rowan
**Importance:** High

Hi Karen,

Has this been resolved yet?

-Cat

4/21/2009

**From:** Catherine A. Ceko
**Sent:** Monday, January 26, 2009 9:49 AM
**To:** 'Stevenson, Karen L.'
**Subject:** FW: Cecelia Rowan
**Importance:** High

Hi Karen,

Any word on this yet?

-Cat

**From:** Catherine A. Ceko
**Sent:** Monday, December 29, 2008 9:23 AM
**To:** 'Stevenson, Karen L.'
**Subject:** Cecelia Rowan
**Importance:** High

Hi Karen,

Ms. Rowan just called to say that Citi still isn't sending her billing statements and when she called to see what amount she should pay for this month, they refused to speak to her because her account was on a "litigation hold." How is she supposed to know when the loan mod kicks in if Citi won't send her statements?

-Cat

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

4/21/2009

## Catherine A. Ceko

**From:** Catherine A. Ceko
**Sent:** Tuesday, April 07, 2009 12:25 PM
**To:** 'Stevenson, Karen L.'
**Subject:** FW: Cecelia Rowan
**Importance:** High

Karen,

Have you heard from Litton yet as to why this hasn't been effectuated? It's been six months.

-Cat

---

**From:** Catherine A. Ceko
**Sent:** Monday, March 30, 2009 4:57 PM
**To:** 'Stevenson, Karen L.'
**Subject:** FW: Cecelia Rowan
**Importance:** High

Karen-

Any word on this yet?

-Cat

---

**From:** Catherine A. Ceko
**Sent:** Tuesday, March 17, 2009 11:28 AM
**To:** 'Stevenson, Karen L.'
**Cc:** Alana J. Parvey
**Subject:** FW: Cecelia Rowan
**Importance:** High

Karen,

This modification should've been effectuated months ago. Please check with Litton to see why they aren't honoring the agreement. Thanks.

-Cat

---

**From:** Catherine A. Ceko
**Sent:** Thursday, February 19, 2009 8:49 AM
**To:** 'Stevenson, Karen L.'
**Subject:** FW: Cecelia Rowan
**Importance:** High

Hi Karen,

Has this been resolved yet?

4/21/2009

-Cat

---

**From:** Catherine A. Ceko
**Sent:** Monday, January 26, 2009 9:49 AM
**To:** 'Stevenson, Karen L.'
**Subject:** FW: Cecelia Rowan
**Importance:** High

Hi Karen,

Any word on this yet?

-Cat

---

**From:** Catherine A. Ceko
**Sent:** Monday, December 29, 2008 9:23 AM
**To:** 'Stevenson, Karen L.'
**Subject:** Cecelia Rowan
**Importance:** High

Hi Karen,

Ms. Rowan just called to say that Citi still isn't sending her billing statements and when she called to see what amount she should pay for this month, they refused to speak to her because her account was on a "litigation hold." How is she supposed to know when the loan mod kicks in if Citi won't send her statements?

-Cat