EXHIBIT F

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into as of this ___26___ day of October, 2008 by and between Ameriquest Mortgage Company, a Delaware corporation ("Ameriquest"), CitiResidential Lending, LLC ("Citi"), and WM Specialty Mortgage LLC ("WM"), on the one hand, and Benjamin and Katherine Miller ("Borrowers"), on the other hand. Ameriquest, Citi, WM, and Borrowers are sometimes hereinafter collectively referred to as "the Parties" or individually as "Party."

### RECITALS

A.        On or about June 30, 2004, for valuable consideration, Borrowers executed and delivered to Ameriquest an Adjustable Rate Note ("Promissory Note") in the principal amount of $154,800.00. The Note is secured by a Mortgage in favor of Ameriquest, and recorded against the real property located at 9 Hackney Lane, Springfield, IL 62702 ("Property"). The Note and Mortgage, along with all other documents executed by Borrowers in connection therewith, known as Loan No. 0081183584-7368 shall be referred to as the "Ameriquest Loan". Borrowers have filed a lawsuit against Ameriquest, which has been consolidated in the multi-district litigation proceeding entitled *In Re: Ameriquest Mortgage Co., Mortgage Lending Practices Litigation*, Case No. 05-cv-07097 (the "Lawsuit"). The Lawsuit alleges certain statutory violations, and other improprieties, in connection with the origination of the Ameriquest Loan. Ameriquest denies Borrowers' allegations and denies that Borrowers have been damaged by any act or omission of Ameriquest.

B.        After the origination of the Ameriquest Loan, Ameriquest sold its interest in the loan to WM. The Ameriquest Loan is currently serviced by Citi.

BN 2323911v1

C.      Notwithstanding the allegations and positions of the Parties, the Parties desire to resolve on mutually agreeable terms the disputes between them, as set forth herein, for the purpose of avoiding the burden, expense and uncertainty of litigation.

**AGREEMENT**

In consideration of the recitals, covenants and conditions contained in this Agreement, and for valuable consideration, the Parties agree as follows:

I.      **TERMS**

A.      Within five business days after the execution of this Agreement by all Parties, Ameriquest shall deliver a check to the law firm of Edelman, Combs, Latturner & Goodwin, LLC in the amount of $3,000.00 (the "Settlement Payment"), in full and complete settlement of all claims asserted or that could have been asserted by Borrowers in the Lawsuit. The Settlement Payment is paid expressly and exclusively to cover Borrowers' attorneys' fees, pursuant to the Truth In Lending Act, 15 U.S.C.§ 1640(a)(3). The check shall be made payable to "Edelman, Combs, Latturner & Goodwin, LLC and Benjamin and Katherine Miller."

B.      Upon receipt of the Settlement Payment, counsel for the Borrowers shall draft, execute, and file with the Court a Notice of Dismissal, providing that the Lawsuit, and each claim asserted by Borrowers therein, shall be dismissed as to all named defendants, with prejudice.

C.      As further consideration for the release of all claims asserted by Borrowers, Citi will modify Borrowers' obligations under the Promissory Note to repay the Ameriquest Loan consistent with the terms of the proposed Loan Modification schedule attached hereto as Exhibit A, the modified repayment terms to commence December 1, 2008 (the "Loan Modification"). Borrowers further understand and agree that the final terms and conditions of the Loan

BN 2323911v1

Modification are subject to execution of the requisite loan documents between Borrowers and Citi.

## II.   RELEASE

Upon execution of this Agreement by all Parties, and compliance with the obligations set forth above, Borrowers and their representatives, beneficiaries, agents, attorneys, predecessors in interest, successors and assigns, and each of them, hereby release and forever discharge Ameriquest, Citi, and WM (individually, and as Trustee for the Holders of the Trust), and any other person or entity holding a legal or beneficial interest in the Ameriquest Loan, or any modification thereof, and each or any their respective officers, directors, partners, shareholders, associates, employees, members, parents, subsidiaries, predecessors, successors, assigns (including, without limitation, any past or present servicer, investor, or trustee with respect to the Ameriquest Loan), affiliates, attorneys , agents, representatives and any person acting on behalf of or at the direction of or for the benefit of any of the foregoing (collectively the "Released Parties"), of and from any and all claims, complaints, demands, obligations, causes of action, chooses in action, damages, fees, costs and/or expenses whatsoever of any kind or nature, including, but not limited to, those arising out of or related in any manner to the Ameriquest Loan, the origination, modification and/or servicing of the Ameriquest Loan, the securitization of the Ameriquest Loan, the Lawsuit, or the facts alleged in the Recitals. The parties acknowledge that this release does not include events which post-date this Agreement.

Borrowers acknowledges and agrees that this Agreement applies to all of the Borrowers' claims, losses, damages and causes of action, of whatever nature, whether these damages or losses are known, unknown, foreseen, unforeseen, patent or latent, which Borrowers had, have or might have against the Released Parties.

Borrowers acknowledge that they may hereafter discover facts different from or in addition to those now known or believed to be true related to the matters set forth in this

BN 2323911v1

Agreement and agree that this Agreement shall remain in full force and effect, notwithstanding the existence of any such different, new or additional facts. Borrowers further acknowledge that they are familiar with the provisions of California Civil Code Section 1542, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Borrowers, being aware of said Code section, hereby expressly waive any rights that they may have thereunder, as well as under any other statues or common law principles of similar effect.

_____ _____
**Initials**

Borrowers expressly acknowledge that this Release shall be given full force and effect according to each and all of its terms and provisions, including as well those relating to unknown or unsuspected claims, demands, and causes of action, if any, and those relating to all other claims, demands, and causes of action hereinabove specified.

## III.  GENERAL PROVISIONS

### A.  ADVICE OF COUNSEL

The Parties hereby represent that they have been advised of the effect of this Agreement by their own attorneys, or that they have had the opportunity to consult with an attorney of their choosing, have investigated the facts and are not relying upon any representation or

acknowledgment, whether oral or in writing, of any other party hereto except as contained herein. Further, the Parties expressly waive any right to rescind this Agreement.

### B. FURTHER ASSURANCES

The Parties hereto agree to perform such acts and to prepare, execute, and file any documents or stipulations reasonably required to perform the covenants, to satisfy the conditions herein contained, or to give full force and effect to this Agreement.

Borrowers represent, warrant and covenant to Ameriquest, Citi, and WM that they are the holder of all right, title and interest in the claims released subject to this Agreement and as of the date hereof that Borrowers have the full power and authority to enter into and consummate this Agreement.

### C. SUCCESSOR AND THIRD PARTIES

Each covenant set forth in this Agreement shall inure to the benefit of and be binding upon the Parties and their respective owners, heirs, successors, shareholders, officers, directors, assigns, attorneys, agents, employees, employers, representatives (past and present), and each of them. Further, the release of the Parties and entities who are not signatories to this Agreement is made expressly for their benefit and they shall be deemed third party beneficiaries of the Agreement. The Parties expressly agree that the rights granted herewith may be assigned to any individual or entity.

### D. MEANING OF PRONOUNS AND EFFECT OF CAPTIONS

As used in this Agreement, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of text.

–5–

E.    **ENTIRE AGREEMENT**

Except as otherwise set forth herein, this Agreement embodies the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings relating to the subject matter hereof. No course of prior dealing between the Parties, no usage of the trade, and no parol or extrinsic evidence of any nature shall be used or be relevant to supplement, explain or modify any term used herein. Each Party represents and warrants that they are not relying on any other Party for tax or bankruptcy advice. This Agreement is a product of negotiation and preparation by and among each Party. Therefore, the Parties acknowledge and agree that this Agreement should not be deemed prepared or drafted by one Party or the other and shall be construed accordingly.

F.    **COUNTERPARTS**

The terms of this Agreement are contractual and not merely recital. This Agreement may be signed in one or more counterparts, each of which shall be deemed an original. Facsimile copies of this Agreement and the signatures hereto may be used with the same force and effect as the original. This Agreement shall be deemed fully executed and effective when all Parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures.

G.    **COVENANT NOT TO SUE**

The Parties agree that none of the Parties shall in any manner challenge this Agreement. Borrowers agrees not to sue or in any way assist or encourage any other person or entity in suing any Party and/or any Released Party with respect to any claim released herein. This release may be pleaded as a full and complete defense to, and may be used as the basis for an injunction

BN 2323911v1

against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the release contained herein.

### H.  MODIFICATION ONLY IN WRITING

Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated, except by a subsequently executed instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge or termination is sought.

### I.  NO WAIVER

No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power or remedy which any Party and/or any Released Party may have, nor shall any such delay be construed to be a waiver of any such right, power, or remedy, or any acquiescence in any breach or default hereunder; nor shall any waiver of any breach or default of any Party hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to any Party and/or Released Party hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of, any action begun to enforce any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies which any Party and/or Released Party would otherwise have. Any waiver, permit, consent or approval by any Party of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing signed by the Party to be charged and only as to that specific instance.

### J.  NON-EXCLUSIVE REMEDIES

In the event of a breach of any provision of this Agreement, the Parties and/or any Released Party, in addition to and not in lieu of the remedies expressly provided in this Agreement, shall be entitled to exercise such remedies that exist at law or equity to enforce this

–7–

Agreement, including but not limited to seeking specific performance.

### K. CONFIDENTIALITY

No Party, or any representative of any Party, shall, without the prior, written consent of all other Parties (1) provide a copy of this Agreement or any portion of this Agreement to any person/entity not a party to this Agreement; (2) disclose to any person/entity not a party to this Agreement any or all parts of the terms of this Agreement; (3) disclose to any person/entity not a party to this Agreement any of the prospective parts of this Agreement or terms of settlement which were discussed in negotiations prior to the execution of this Agreement.

Notwithstanding the foregoing, each party may make the following disclosures: (1) disclosures mandated by legislative, judicial and/or administrative order, rule or regulation; (2) disclosures to tax preparers, tax advisors, independent public accountants, attorneys and insurers, past, present and prospective, provided that such tax preparers, tax advisors, independent public accountants, attorneys and insurers agree to keep all such information in strict confidence except as required by this Agreement, law, regulation, or the standards of the accounting or auditing profession; (3) disclosures to any taxing authority for the purpose of submitting the respective party's tax information to that tax authority; (4) disclosures required by governmental regulatory bodies with the legal right to review the books and records of a party; and (5) any other disclosure which is mandated by applicable law, regulation, rule or order.

### L. ATTORNEYS' FEES

The Parties shall not make any demands for attorneys' fees, costs and expenses incurred in negotiating or reviewing this Agreement or otherwise in connection with the Lawsuit. However, in any action to enforce Sections I(A)-(B) and II of this Agreement, reasonable fees and costs will be awarded to the prevailing party. Further, the Parties shall not make any

–8–

demands to the opposing party for statutory damages or attorneys' fees or costs under the Federal Truth in Lending Act or any comparable state law or regulation.

### M. COMPROMISE OF DISPUTED CLAIM

The Parties hereto acknowledge that the execution of this Agreement and consummation of the transactions contemplated hereby do not constitute an admission of liability or of any facts by any of the Parties. This Agreement shall not be offered or received in evidence in any action or proceeding in any court, administrative action or other tribunal for any purpose other than to enforce this Agreement.

### N. CONSTRUCTION/SEVERABILITY

This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to resolve completely those claims and disputes between the Parties, as more fully described herein. If any provision of this Agreement shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement but in no event shall such provision effect, impair or invalidate any other provision hereof. This Agreement shall be construed without regard to the identity of the person who drafted its various provisions; each and every provision of this Agreement shall be construed as though all of the Parties participated equally in the drafting of the same, and any rule of construction that a document is to be construed against the drafting Party shall not be applicable to this Agreement.

### O. VOLUNTARY AGREEMENT

This Agreement was freely and voluntarily entered into by the Parties who each had the opportunity to be represented and advised by counsel with respect to entering into this Agreement.

BN 2323911v1

P.    GOVERNING LAW

This Settlement Agreement shall be construed in accordance with and governed by the internal laws, other than choice of laws, of the State of California, regardless of where executed or performed. If any provision of this Settlement Agreement shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement, but in no event shall such provision affect, impair or invalidate any other provision hereof.

Q.    ADMISSIONS

This Settlement Agreement is intended to be in compromise and settlement of disputed and unliquidated claims. Nothing herein shall constitute or be asserted as constituting any admission of liability or wrongdoing by or against any party hereto.

R.    TIME IS OF THE ESSENCE

As to all obligations hereunder, time is of the essence.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement effective on the day and year set forth above.

**IT IS SO AGREED.**

Dated: October 26, 2008

Benjamin Miller

Dated: October 26, 2008

Katherine Miller

Dated: _____, 2008

Ameriquest Mortgage Company

By: _____

–10–

BN 2323911v1

Name:

Title:

Dated: _____, 2008  CitiResidential Lending, LLC

By: _____

Name:

Title:

Dated: _____, 2008  WM Specialty Mortgage LLC

By: _____

Name:

Title:

EXHIBIT G

LAW OFFICES OF
# EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 SOUTH LASALLE STREET
SUITE 1800
CHICAGO, ILLINOIS 60603
312-739-4200
FAX 312-419-0379
WEBSITE: www.edcombs.com
EMAIL: info@edcombs.com

November 10, 2008

**VIA U.S. MAIL**

Bernard LeSage
Buchalter Nemer PC
1000 Wilshire Blvd
Suite 1500
Los Angeles, CA 90017-2457

   Re: **Miller v. Ameriquest, et al.**
     **07 C 1623 (N.D. Ill.)**
     **ECLG file no. 17664**

Dear Mr. LeSage:

  Enclosed please find four copies of the Settlement and Release Agreement fully executed by our clients for the above captioned matter.

Sincerely,

Aziza Khatoon
Paralegal to Catherine Ceko

Enclosures

# EXHIBIT H

## Catherine A. Ceko

| | |
|---|---|
| **From:** | Catherine A. Ceko |
| **Sent:** | Friday, January 09, 2009 4:25 PM |
| **To:** | 'Stevenson, Karen L.' |
| **Subject:** | Katherine & Benjamin Miller |
| **Importance:** | High |

Hi Karen,

Katherine Miller signed a settlement agreement with Citi in November, and we've yet to receive loan mod docs about this, and she's yet to receive a statement regarding her payments.

However, she did receive a letter from Chase stating that she owed $35,000. Obviously, this is not correct and startled her quite a bit.

Can you please check with Citi and see what's going on. Thanks.

-Cat

# EXHIBIT I

**Catherine A. Ceko**

| | |
|---|---|
| **From:** | Catherine A. Ceko |
| **Sent:** | Monday, February 02, 2009 9:25 AM |
| **To:** | 'Stevenson, Karen L.' |
| **Cc:** | Alana J. Parvey |
| **Subject:** | FW: Foreclosure note |

Hi Karen,

Benjamin and Katherine Miller have a loan modification agreement with Citi, but their loan was sold to Chase.  Below is the foreclosure statement Chase sent to them, apparently unaware of the loan modification agreement. Can you please inform Chase of the loan mod and have them send a notice to the Millers ASAP recognizing the loan mod and acknowledging that they will NOT foreclose upon the clients? The Millers are understandably confused and upset that they have a valid loan modification agreement and yet are still being threatened with foreclosure.

-Cat



**CODILIS & ASSOCIATES, P.C.**
I L L I N O I S

ERNEST J. CODILIS, JR[8]
WILLIAM A. McALISTER[1]
GREGORY J. MOODY[1]
BERTON J. MALEY[1]
RICHARD S. SPENCER[1]
CHRISTINA BABAKITIS[1]
MARTIN POTTER[1]
THOMAS J. BELCZAK[1]
RHONDA PEEK[1]
GLORIA C. TSOTSOS[1]
JOSE MORENO[1]
DANIEL C. WALTERS[1]
RACHAEL A. STOKAS[4]
SHARON DEVOY[1]
JAMES R. RIEGEL[1]
PETER C. BASTIANEN[6]
MARICLARE O'CONNOR[1]

BROOKS E. BREHME[5]
JEFFREY B. DOVITZ[1]
ELAINE ADAMS[1]
JOEL P. FONFERKO[1]
JOHN F. McCABE[1]
LOUIS J. MANETTI JR.[1]
CARMEL R. HUSEMAN[1]
TAMMY A. GEISS[1]
RAJ JUTLA[1]
BRIDGET M. O'NEILL[1]
MARIA A. GEORGOPOULOS[1]
JASON SHULMAN[1]
KATIE WILLIAMS[1]
COLIN C. BANYON[3]

JOSEPH CIRCELLI, Of Counsel[7]
CRAIG C. SMITH, Of Counsel[2]

LAW OFFICES

15W030 NORTH FRONTAGE RD.
SUITE 100
BURR RIDGE, ILLINOIS 60527
(630) 794-5300 FAX: (630) 794-9090

[1] LICENSED IN IL
[2] LICENSED IN IL & IN
[3] LICENSED IN IL & MI
[4] LICENSED IN IL & MO
[5] LICENSED IN IL & PA(inactive)
[6] LICENSED IN IL, WI(inactive), & MA(inactive)
[7] LICENSED IN IL, FL(inactive), & MO
[8] LICENSED IN CO, FL, IL, & TX

January 28, 2009

Benjamin R. Miller
Katherine Miller
9 Hackney Lane
Springfield, IL 62702

RE:  Mortgage Arrearage
Chase Home Finance LLC
Loan # 81183584
Our File 14-09-02532

Dear Mortgagor(s):

Please be advised that your mortgage is in default for the 03/01/07 payment and all subsequent monthly payments. The arrearage as of today's date is $33,480.51. To cure the default, certified funds payable to Chase Home Finance LLC, in the amount of the total arrearage must be tendered to our office or to Chase Home Finance LLC on or before 02/27/09. If funds are tendered after the next payment comes due on 02/01/09, an additional monthly payment must be added to this, in the amount of $1,305.19.

If you have received a discharge of this debt through a Chapter 7 Bankruptcy, then you are under no obligation to pay these amounts, though Chase Home Finance LLC still has the right to foreclose the mortgage. No personal deficiency will be taken against you in any foreclosure filed.

A failure to cure this default on or before 02/27/09, pursuant to the terms of the note and mortgage, will result in acceleration of the sums secured by said mortgage, including the principal balance, all interest charged and any other balances owed, foreclosure by judicial proceeding, and sale of the property. Reasonable attorney fees and court costs as provided for in your mortgage will be added to the total amount due under the mortgage.

You are also informed that you have certain rights under the laws of the State of Illinois and under the terms of the mortgage to reinstate your mortgage after the above mentioned acceleration. You may have the right to reinstate or payoff your mortgage loan after the acceleration of the outstanding indebtedness, however, we will require that you pay monthly payments, all foreclosure expenses, attorney fees, and other charges which are due under the mortgage.

1

# EXHIBIT J

**Catherine A. Ceko**

| | |
|---|---|
| **From:** | Stevenson, Karen L. [kstevenson@buchalter.com] |
| **Sent:** | Monday, February 02, 2009 11:51 AM |
| **To:** | Catherine A. Ceko |
| **Cc:** | Newman, Brian H.; Jordan, William F. |
| **Subject:** | RE: Foreclosure note |

Cat - I am following up. We are trying to reach out to find an omnibus solution on the transfer issues with Citi and Chase; I'll keep you posted.

Regards,
Karen

Karen Stevenson | Sr. Counsel | **Buchalter**Nemer, A Professional Corporation | 1000 Wilshire Boulevard, Suite 1500 | Los Angeles, CA 90017-2457 | Direct Dial: (213) 891-5574 | Cell Phone: (213) 361-6428 | Direct Fax: (213) 630-5764 | Switchboard: (213) 891-0700 | kstevenson@buchalter.com | www.buchalter.com

**From:** Catherine A. Ceko [mailto:cceko@edcombs.com]
**Sent:** Monday, February 02, 2009 7:25 AM
**To:** Stevenson, Karen L.
**Cc:** Alana J. Parvey
**Subject:** FW: Foreclosure note

Hi Karen.

Benjamin and Katherine Miller have a loan modification agreement with Citi, but their loan was sold to Chase. Below is the foreclosure statement Chase sent to them, apparently unaware of the loan modification agreement. Can you please inform Chase of the loan mod and have them send a notice to the Millers ASAP recognizing the loan mod and acknowledging that they will NOT foreclose upon the clients? The Millers are understandably confused and upset that they have a valid loan modification agreement and yet are still being threatened with foreclosure.

-Cat

4/21/2009

# EXHIBIT K

**Catherine A. Ceko**

| | |
|---|---|
| **From:** | Catherine A. Ceko |
| **Sent:** | Tuesday, February 10, 2009 8:24 AM |
| **To:** | 'Stevenson, Karen L.' |
| **Subject:** | FW: Foreclosure note |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Karen,

The Millers came home to a foreclosure notice on their door last night. Please inform Chase immediately that they have an effectuated loan modification agreement and are NOT in foreclosure. Citi needs to find a way to communicate this information to Chase so that our clients aren't being harrassed and threatened with foreclosure.

-Cat

---

**From:** Stevenson, Karen L. [mailto:kstevenson@buchalter.com]
**Sent:** Monday, February 02, 2009 11:51 AM
**To:** Catherine A. Ceko
**Cc:** Newman, Brian H.; Jordan, William F.
**Subject:** RE: Foreclosure note

Cat - I am following up. We are trying to reach out to find an omnibus solution on the transfer issues with Citi and Chase;  I'll keep you posted.

Regards,
Karen

---

Karen Stevenson | Sr. Counsel | **Buchalter**Nemer, A Professional Corporation | 1000 Wilshire Boulevard, Suite 1500 | Los Angeles, CA 90017-2457 | Direct Dial: (213) 891-5574 | Cell Phone: (213) 361-6428 | Direct Fax: (213) 630-5764 | Switchboard: (213) 891-0700 | kstevenson@buchalter.com | www.buchalter.com

---

**From:** Catherine A. Ceko [mailto:cceko@edcombs.com]
**Sent:** Monday, February 02, 2009 7:25 AM
**To:** Stevenson, Karen L.
**Cc:** Alana J. Parvey
**Subject:** FW: Foreclosure note

Hi Karen,

Benjamin and Katherine Miller have a loan modification agreement with Citi, but their loan was sold to Chase.  Below is the foreclosure statement Chase sent to them, apparently unaware of the loan modification agreement. Can you please inform Chase of the loan mod and have them send a notice to the Millers ASAP recognizing the loan mod and acknowledging that they will NOT foreclose upon the clients? The Millers are understandably confused and upset that they have a valid loan modification agreement and yet are still being threatened with foreclosure.

-Cat

4/21/2009

# EXHIBIT L

## Catherine A. Ceko

| | |
|---|---|
| **From:** | Stevenson, Karen L. [kstevenson@buchalter.com] |
| **Sent:** | Tuesday, February 10, 2009 1:59 PM |
| **To:** | Catherine A. Ceko |
| **Subject:** | FW: Foreclosure note - URGENT Millers -(# 0081183584) |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |
| **Attachments:** | Outlook.jpg |

Cat - FYI - Per below, it looks like we are getting cooperation on straightening out the Miller's foreclosure. I will keep you posted.

Regards,
Karen

Karen Stevenson | Sr. Counsel | **BuchalterNemer**, A Professional Corporation | 1000 Wilshire Boulevard, Suite 1500 | Los Angeles, CA 90017-2457 | Direct Dial: (213) 891-5574 | Cell Phone: (213) 361-6428 | Direct Fax: (213) 630-5764 | Switchboard: (213) 891-0700 | kstevenson@buchalter.com | www.buchalter.com

**From:** ann.tran@citi.com [mailto:ann.tran@citi.com]
**Sent:** Tuesday, February 10, 2009 11:16 AM
**To:** james.pruitt@wamu.net
**Cc:** nathan.hennigan@wamu.net; Stevenson, Karen L.; sadaf.zamani@citi.com
**Subject:** Fw: Foreclosure note - URGENT Millers -(# 0081183584)

Jim:

Just forwarding the matter below to your attention. Borrowers accepted a mod as settlement of the litigation, and the proposal below with a rate at 8.5% was previously approved by WAMU.

However, since no mod docs were yet drafted on our end, we're requesting Chase continue to work with Karen at Buchalter in completing the modification as previously agreed to.

4/21/2009

| WAMU Modification Request | | |
|---|---|---|
| Loan Number | 0081183584 | |
| Property City | Springfield | |
| Property State | IL | |
| Categories | Current | Proposed |
| UPB | $150,816.86 | $187,033.04 |
| P&I | $1,327.37 | $1,490.81 |
| PITI | $1,655.09 | $1,818.53 |
| Due Date | 3/1/07 | 10/1/08 |
| Int Rate | 9.85% | 8.50% |
| Down Payment | $0.00 | |
| Mod Term | Fixed for life of loan | |
| Maturity Date | Aug-34 | Aug-34 |
| Date of Mortgage | 6/30/04 | |
| Original Appraised Value | $172,000.00 | |
| Current Value | $160,951.00 | |
| Date of Prop Inspection | NA | |
| Inspection Occupancy Status | NA | |
| Inspection Property Condition | NA | |
| **Reason for Default** | | |

Loan is part of ACC MDL Litigation. AVMs have been completed on the property, but no inspections notated.

| Last Payment Made | |
|---|---|
| **Date** | **Amount** |
| 3/31/2007 | $2,471 |
| **Forbearance Plans** | |

| Course | Start / End | $ Paid Towards Loan |
|---|---|---|
| NA | | |
| | | |
| | | |
| | | |

Thanks,

**Ann Bhataravidhya**
Counsel

Citibank, N.A. **|** Legal Department
1100 Town & Country Road, Suite 400 **|** Orange, CA 92868
P: 714.347.4700, Ext. 15710
F: 949.263.7572
ann.tran@citi.com

4/21/2009

*********************************NOTICE**********************************

If this e-mail concerns a matter serviced by Citi Residential Lending Inc., federal law requires us to notify you that we are acting as a debt collector.  If you are currently in bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction. This e-mail transmission and any documents, files, or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient or the individual responsible for delivering this e-mail to the intended recipient you are hereby notified that any disclosure, copying, distribution or use of any of the information contained herein attached to this e-mail is strictly prohibited. Should you receive this communication in error, please notify me immediately by replying to this e-mail or by telephoning the sender at (714) 347-4700, ext. 15710.


Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

4/21/2009

# EXHIBIT M

## Catherine A. Ceko

| | |
|---|---|
| **From:** | Catherine A. Ceko |
| **Sent:** | Monday, March 02, 2009 8:22 AM |
| **To:** | 'Stevenson, Karen L.' |
| **Subject:** | FW: Foreclosure note - URGENT Millers -(# 0081183584) |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Karen,

Any word on the Millers' status yet?

-Cat

**From:** Stevenson, Karen L. [mailto:kstevenson@buchalter.com]
**Sent:** Thursday, February 19, 2009 3:15 PM
**To:** Catherine A. Ceko
**Subject:** RE: Foreclosure note - URGENT Millers -(# 0081183584)

Cat - Chase is checking on the Millers' status right now and I'll let you know as soon as I hear back.

Karen

Karen Stevenson | Sr. Counsel | **Buchalter**Nemer, A Professional Corporation | 1000 Wilshire Boulevard, Suite 1500 | Los Angeles, CA 90017-2457 | Direct Dial: (213) 891-5574 | Cell Phone: (213) 361-6428 | Direct Fax: (213) 630-5764 | Switchboard: (213) 891-0700 | kstevenson@buchalter.com | www.buchalter.com

**From:** Catherine A. Ceko [mailto:cceko@edcombs.com]
**Sent:** Thursday, February 19, 2009 6:35 AM
**To:** Stevenson, Karen L.
**Subject:** FW: Foreclosure note - URGENT Millers -(# 0081183584)

Karen,

Is this matter resolved yet?

-Cat

**From:** Stevenson, Karen L. [mailto:kstevenson@buchalter.com]
**Sent:** Tuesday, February 10, 2009 1:59 PM
**To:** Catherine A. Ceko
**Subject:** FW: Foreclosure note - URGENT Millers -(# 0081183584)

Cat - FYI - Per below, it looks like we are getting cooperation on straightening out the Miller's foreclosure. I will keep you posted.

Regards,

4/21/2009

Karen

Karen Stevenson | Sr. Counsel | **BuchalterNemer**, A Professional Corporation | 1000 Wilshire Boulevard, Suite 1500 | Los Angeles, CA 90017-2457 | Direct Dial: (213) 891-5574 | Cell Phone: (213) 361-6428 | Direct Fax: (213) 630-5764 | Switchboard: (213) 891-0700 | kstevenson@buchalter.com | www.buchalter.com

---

**From:** ann.tran@citi.com [mailto:ann.tran@citi.com]
**Sent:** Tuesday, February 10, 2009 11:16 AM
**To:** james.pruitt@wamu.net
**Cc:** nathan.hennigan@wamu.net; Stevenson, Karen L.; sadaf.zamani@citi.com
**Subject:** Fw: Foreclosure note - URGENT Millers -(# 0081183584)

Jim:

Just forwarding the matter below to your attention. Borrowers accepted a mod as settlement of the litigation, and the proposal below with a rate at 8.5% was previously approved by WAMU.

However, since no mod docs were yet drafted on our end, we're requesting Chase continue to work with Karen at Buchalter in completing the modification as previously agreed to.

4/21/2009

# EXHIBIT N

## Catherine A. Ceko

| | |
|---|---|
| **From:** | Catherine A. Ceko |
| **Sent:** | Monday, March 30, 2009 5:04 PM |
| **To:** | 'Stevenson, Karen L.' |
| **Subject:** | FW: Foreclosure note - URGENT Millers -(# 0081183584) |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Karen-

Any word on this yet? The Millers are anxious to know what is going on, as it's been nearly 2 months since they were threatened with foreclosure.

-Cat

**From:** Catherine A. Ceko
**Sent:** Monday, March 02, 2009 8:22 AM
**To:** 'Stevenson, Karen L.'
**Subject:** FW: Foreclosure note - URGENT Millers -(# 0081183584)

Karen,

Any word on the Millers' status yet?

-Cat

**From:** Stevenson, Karen L. [mailto:kstevenson@buchalter.com]
**Sent:** Thursday, February 19, 2009 3:15 PM
**To:** Catherine A. Ceko
**Subject:** RE: Foreclosure note - URGENT Millers -(# 0081183584)

Cat - Chase is checking on the Millers' status right now and I'll let you know as soon as I hear back.

Karen

Karen Stevenson | Sr. Counsel | **BuchalterNemer**, A Professional Corporation | 1000 Wilshire Boulevard, Suite 1500 | Los Angeles, CA 90017-2457 | Direct Dial: (213) 891-5574 | Cell Phone: (213) 361-6428 | Direct Fax: (213) 630-5764 | Switchboard: (213) 891-0700 | kstevenson@buchalter.com | www.buchalter.com

**From:** Catherine A. Ceko [mailto:cceko@edcombs.com]
**Sent:** Thursday, February 19, 2009 6:35 AM
**To:** Stevenson, Karen L.
**Subject:** FW: Foreclosure note - URGENT Millers -(# 0081183584)

Karen,

Is this matter resolved yet?

4/21/2009

-Cat

**From:** Stevenson, Karen L. [mailto:kstevenson@buchalter.com]
**Sent:** Tuesday, February 10, 2009 1:59 PM
**To:** Catherine A. Ceko
**Subject:** FW: Foreclosure note - URGENT Millers -(# 0081183584)

Cat - FYI - Per below, it looks like  we are getting cooperation on straightening out the Miller's foreclosure.  I will keep you posted.

Regards,
Karen


Karen Stevenson | Sr. Counsel | **BuchalterNemer**, A Professional Corporation | 1000 Wilshire Boulevard, Suite 1500 | Los Angeles, CA 90017-2457 | Direct Dial: (213) 891-5574 | Cell Phone: (213) 361-6428 | Direct Fax: (213) 630-5764 | Switchboard: (213) 891-0700 | kstevenson@buchalter.com | www.buchalter.com

**From:** ann.tran@citi.com [mailto:ann.tran@citi.com]
**Sent:** Tuesday, February 10, 2009 11:16 AM
**To:** james.pruitt@wamu.net
**Cc:** nathan.hennigan@wamu.net; Stevenson, Karen L.; sadaf.zamani@citi.com
**Subject:** Fw: Foreclosure note - URGENT Millers -(# 0081183584)

Jim:

Just forwarding the matter below to your attention. Borrowers accepted a mod as settlement of the litigation, and the proposal below with a rate at 8.5% was previously approved by WAMU.

However, since no mod docs were yet drafted on our end, we're requesting Chase continue to work with Karen at Buchalter in completing the modification as previously agreed to.

# EXHIBIT O

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into as of this _____day of July, 2008 by and between Ameriquest Mortgage Company, a Delaware corporation ("Ameriquest"), Citi Residential Lending Inc., a Delaware corporation ("Citi"), Deutsche Bank National Trust Company, a national banking association, as Trustee, ("Deutsche Bank") for the Registered Holders ("Holders") of Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2005, R-7 ("Trust") and Ameriquest Mortgage Securities, Inc., a Delaware corporation ("AMSI"), on the one hand, and Angelique McKimmy and Ernie J. McKimmy ("Borrowers"), on the other hand. Ameriquest, Citi, Deutsche Bank as Trustee for the Holders of the Trust, AMSI, and Borrowers are sometimes hereinafter collectively referred to as "the Parties" or individually as "Party."

### RECITALS

A.     On or about June 22, 2005, for valuable consideration, Borrowers executed and delivered to Ameriquest an Adjustable Rate Note ("Promissory Note") in the principal amount of $85,500.00. The Note is secured by a Mortgage in favor of Ameriquest, and recorded against the real property located at 425 N. Chicago Street, Litchfield, MI 49252 ("Property"). The Note and Mortgage, along with all other documents executed by Borrowers in connection therewith, known as Loan No. 0124524000-5649 shall be referred to as the "Ameriquest Loan". Borrowers have filed a lawsuit against Ameriquest, which has been consolidated in the multi-district litigation proceeding entitled *In Re: Ameriquest Mortgage Co., Mortgage Lending Practices Litigation*, Case No. 05-cv-07097 (the "Lawsuit"). The Lawsuit alleges certain statutory violations, and other improprieties, in connection with the origination of the Ameriquest Loan.

—1—

Ameriquest denies Borrowers' allegations and denies that Borrowers have been damaged by any act or omission of Ameriquest.

B.  After the origination of the Ameriquest Loan, Ameriquest sold its interest in the loan to AMSI which deposited the loan along with other Ameriquest originated loans into the Trust, and interests in the Trust were sold to the Holders. The Ameriquest Loan is currently serviced by Citi, and Deutsche Bank serves as Trustee of the Trust on behalf of the Holders.

C.  Notwithstanding the allegations and positions of the Parties, the Parties desire to resolve on mutually agreeable terms the disputes between them, as set forth herein, for the purpose of avoiding the burden, expense and uncertainty of litigation.

## AGREEMENT

In consideration of the recitals, covenants and conditions contained in this Agreement, and for valuable consideration, the Parties agree as follows:

I.  **TERMS**

A.  Within five business days after the execution of this Agreement by all Parties, Ameriquest shall deliver a check to the law firm of Edelman, Combs, Latturner & Goodwin, LLC in the amount of $3,000.00 (the "Settlement Payment"), in full and complete settlement of all claims asserted or that could have been asserted by Borrowers in the Lawsuit. The Settlement Payment is paid expressly and exclusively to cover Borrowers' attorneys' fees, pursuant to the Truth In Lending Act, 15 U.S.C.§ 1640(a)(3). The check shall be made payable to "Edelman, Combs, Latturner & Goodwin, LLC and Angelique McKimmy and Ernie J. McKimmy."

B.  Upon receipt of the Settlement Payment, counsel for the Borrowers shall draft, execute, and file with the Court a Notice of Dismissal, providing that the Lawsuit, and each

–2–

claim asserted by Borrowers therein, shall be dismissed as to all named defendants, with prejudice.

      C.     As further consideration for the release of all claims asserted by Borrowers, Citi will modify Borrowers' obligations under the Promissory Note to repay the Ameriquest Loan consistent with the terms of the proposed Loan Modification schedule attached hereto as Exhibit A, the modified repayment terms to commence October 1, 2008 (the "Loan Modification"). Borrowers further understand and agree that the final terms and conditions of the Loan Modification are subject to execution of the requisite loan documents between Borrowers and Citi.

## II.    RELEASE

      Upon execution of this Agreement by all Parties, and compliance with the obligations set forth above, Borrowers and their representatives, beneficiaries, agents, attorneys, predecessors in interest, successors and assigns, and each of them, hereby release and forever discharge Ameriquest, Citi, AMSI, Deutsche Bank (individually, and as Trustee for the Holders of the Trust), and any other person or entity holding a legal or beneficial interest in the Ameriquest Loan, or any modification thereof, and each or any their respective officers, directors, partners, shareholders, associates, employees, members, parents, subsidiaries, predecessors, successors, assigns (including, without limitation, any past or present servicer, investor, or trustee with respect to the Ameriquest Loan), affiliates, attorneys , agents, representatives and any person acting on behalf of or at the direction of or for the benefit of any of the foregoing (collectively the "Released Parties"), of and from any and all claims, complaints, demands, obligations, causes of action, chooses in action, damages, fees, costs and/or expenses whatsoever of any kind or nature, including, but not limited to, those arising out of or related in any manner to the Ameriquest Loan, the origination, modification and/or servicing of the Ameriquest Loan, the

securitization of the Ameriquest Loan, the Lawsuit, or the facts alleged in the Recitals. The parties acknowledge that this release does not include events which post-date this Agreement.

Borrowers acknowledges and agrees that this Agreement applies to all of the Borrowers' claims, losses, damages and causes of action, of whatever nature, whether these damages or losses are known, unknown, foreseen, unforeseen, patent or latent, which Borrowers had, have or might have against the Released Parties.

Borrowers acknowledge that they may hereafter discover facts different from or in addition to those now known or believed to be true related to the matters set forth in this Agreement and agree that this Agreement shall remain in full force and effect, notwithstanding the existence of any such different, new or additional facts. Borrowers further acknowledge that they are familiar with the provisions of California Civil Code Section 1542, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Borrowers, being aware of said Code section, hereby expressly waive any rights that they may have thereunder, as well as under any other statues or common law principles of similar effect.

**Initials**

Borrowers expressly acknowledge that this Release shall be given full force and effect according to each and all of its terms and provisions, including as well those relating to unknown or unsuspected claims, demands, and causes of action, if any, and those relating to all other

claims, demands, and causes of action hereinabove specified.

### III.  GENERAL PROVISIONS

#### A.  ADVICE OF COUNSEL

The Parties hereby represent that they have been advised of the effect of this Agreement by their own attorneys, or that they have had the opportunity to consult with an attorney of their choosing, have investigated the facts and are not relying upon any representation or acknowledgment, whether oral or in writing, of any other party hereto except as contained herein. Further, the Parties expressly waive any right to rescind this Agreement.

#### B.  FURTHER ASSURANCES

The Parties hereto agree to perform such acts and to prepare, execute, and file any documents or stipulations reasonably required to perform the covenants, to satisfy the conditions herein contained, or to give full force and effect to this Agreement.

Borrowers represent, warrant and covenant to Ameriquest, Citi, and AMSI that they are the holder of all right, title and interest in the claims released subject to this Agreement and as of the date hereof that Borrowers have the full power and authority to enter into and consummate this Agreement.

#### C.  SUCCESSOR AND THIRD PARTIES

Each covenant set forth in this Agreement shall inure to the benefit of and be binding upon the Parties and their respective owners, heirs, successors, shareholders, officers, directors, assigns, attorneys, agents, employees, employers, representatives (past and present), and each of them. Further, the release of the Parties and entities who are not signatories to this Agreement is made expressly for their benefit and they shall be deemed third party beneficiaries of the

Agreement. The Parties expressly agree that the rights granted herewith may be assigned to any individual or entity.

### D.   MEANING OF PRONOUNS AND EFFECT OF CAPTIONS

As used in this Agreement, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of text.

### E.   ENTIRE AGREEMENT

Except as otherwise set forth herein, this Agreement embodies the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings relating to the subject matter hereof. No course of prior dealing between the Parties, no usage of the trade, and no parol or extrinsic evidence of any nature shall be used or be relevant to supplement, explain or modify any term used herein. Each Party represents and warrants that they are not relying on any other Party for tax or bankruptcy advice. This Agreement is a product of negotiation and preparation by and among each Party. Therefore, the Parties acknowledge and agree that this Agreement should not be deemed prepared or drafted by one Party or the other and shall be construed accordingly.

### F.   COUNTERPARTS

The terms of this Agreement are contractual and not merely recital. This Agreement may be signed in one or more counterparts, each of which shall be deemed an original. Facsimile copies of this Agreement and the signatures hereto may be used with the same force and effect as the original. This Agreement shall be deemed fully executed and effective when all Parties have

executed at least one of the counterparts, even though no single counterpart bears all such signatures.

G.    COVENANT NOT TO SUE

The Parties agree that none of the Parties shall in any manner challenge this Agreement. Borrowers agrees not to sue or in any way assist or encourage any other person or entity in suing any Party and/or any Released Party with respect to any claim released herein. This release may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the release contained herein.

H.    MODIFICATION ONLY IN WRITING

Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated, except by a subsequently executed instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge or termination is sought.

I.    NO WAIVER

No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power or remedy which any Party and/or any Released Party may have, nor shall any such delay be construed to be a waiver of any such right, power, or remedy, or any acquiescence in any breach or default hereunder; nor shall any waiver of any breach or default of any Party hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to any Party and/or Released Party hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of, any action begun to enforce any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies which any Party and/or

Released Party would otherwise have. Any waiver, permit, consent or approval by any Party of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing signed by the Party to be charged and only as to that specific instance.

J.     NON-EXCLUSIVE REMEDIES

In the event of a breach of any provision of this Agreement, the Parties and/or any Released Party, in addition to and not in lieu of the remedies expressly provided in this Agreement, shall be entitled to exercise such remedies that exist at law or equity to enforce this Agreement, including but not limited to seeking specific performance.

K.     CONFIDENTIALITY

No Party, or any representative of any Party, shall, without the prior, written consent of all other Parties (1) provide a copy of this Agreement or any portion of this Agreement to any person/entity not a party to this Agreement; (2) disclose to any person/entity not a party to this Agreement any or all parts of the terms of this Agreement; (3) disclose to any person/entity not a party to this Agreement any of the prospective parts of this Agreement or terms of settlement which were discussed in negotiations prior to the execution of this Agreement.

Notwithstanding the foregoing, each party may make the following disclosures: (1) disclosures mandated by legislative, judicial and/or administrative order, rule or regulation; (2) disclosures to tax preparers, tax advisors, independent public accountants, attorneys and insurers, past, present and prospective, provided that such tax preparers, tax advisors, independent public accountants, attorneys and insurers agree to keep all such information in strict confidence except as required by this Agreement, law, regulation, or the standards of the accounting or auditing profession; (3) disclosures to any taxing authority for the purpose of submitting the respective party's tax information to that tax authority; (4) disclosures required by governmental regulatory

BN 2114225v1

bodies with the legal right to review the books and records of a party; and (5) any other disclosure which is mandated by applicable law, regulation, rule or order.

L.    ATTORNEYS' FEES

The Parties shall not make any demands for attorneys' fees, costs and expenses incurred in negotiating or reviewing this Agreement or otherwise in connection with the Lawsuit. However, in any action to enforce Sections I(A)-(B) and II of this Agreement, reasonable fees and costs will be awarded to the prevailing party. Further, the Parties shall not make any demands to the opposing party for statutory damages or attorneys' fees or costs under the Federal Truth in Lending Act or any comparable state law or regulation.

M.    COMPROMISE OF DISPUTED CLAIM

The Parties hereto acknowledge that the execution of this Agreement and consummation of the transactions contemplated hereby do not constitute an admission of liability or of any facts by any of the Parties. This Agreement shall not be offered or received in evidence in any action or proceeding in any court, administrative action or other tribunal for any purpose other than to enforce this Agreement.

N.    CONSTRUCTION/SEVERABILITY

This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to resolve completely those claims and disputes between the Parties, as more fully described herein. If any provision of this Agreement shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement but in no event shall such provision effect, impair or invalidate any other provision hereof. This Agreement shall be construed without regard to the identity of the person who drafted its various provisions; each and every provision of this Agreement shall be construed as

though all of the Parties participated equally in the drafting of the same, and any rule of construction that a document is to be construed against the drafting Party shall not be applicable to this Agreement.

> **O.** **VOLUNTARY AGREEMENT**

This Agreement was freely and voluntarily entered into by the Parties who each had the opportunity to be represented and advised by counsel with respect to entering into this Agreement.

> **P.** **GOVERNING LAW**

This Settlement Agreement shall be construed in accordance with and governed by the internal laws, other than choice of laws, of the State of California, regardless of where executed or performed. If any provision of this Settlement Agreement shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement, but in no event shall such provision affect, impair or invalidate any other provision hereof.

> **Q.** **ADMISSIONS**

This Settlement Agreement is intended to be in compromise and settlement of disputed and unliquidated claims. Nothing herein shall constitute or be asserted as constituting any admission of liability or wrongdoing by or against any party hereto.

> **R.** **TIME IS OF THE ESSENCE**

As to all obligations hereunder, time is of the essence.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement effective on the day and year set forth above.

**IT IS SO AGREED.**

Dated: _____, 2008

Angelique McKimmy

Dated: _____, 2008

Ernie J. McKimmy

Dated: _____, 2008

Ameriquest Mortgage Company

By: _____

Name:

Title:

Dated: _____, 2008

Citi Residential Lending Inc.

By: _____

Name:

Title:

Dated: _____, 2008

Ameriquest Mortgage Securities, Inc.

By: _____

Name:

Title:

Dated: _____, 2008

Deutsche Bank National Trust Company, Trustee for the Registered Holders of Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2005, R-7

By: _____

Name:

Title: