# EXHIBIT P

LAW OFFICES OF
# EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 SOUTH LASALLE STREET
18TH FLOOR
CHICAGO, ILLINOIS 60603
312-739-4200
FAX 312-419-0379
WEBSITE www.edcombs.com
EMAIL edcombs@aol.com

August 15, 2008

**VIA US MAIL**
Bernard LeSage
Brian Newman
Buchalter Nemer PC
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017-2457

Re:  *McKimmy v. Ameriquest Mortgage Company*
     N.D.Ill. Case No.: 07 C 1628
     ECLG File No. 17508

Dear Mr. Le Sage:

Enclosed please find five executed Settlement and Release Agreements for our clients Angelique and Ernie J. McKimmy for the above-captioned matter.

Respectfully Submitted,

Aziza Khatoon
Paralegal to Michael J. Aschenbrener

Enclosures

1

# EXHIBIT Q

**EXECUTE AND RETURN TO:**

CITI Residential Lending, Inc.
10801 6th Street, 2nd Floor
Rancho Cucamonga, CA 91730
Attn: Loan Modification Unit

**Loan No. 0137686721**

# LOAN MODIFICATION AGREEMENT
### (Providing for Capitalization, Life of Loan Interest Rate Reduction on Adjustable Rate Interest Only to Fully Amortizing With No Escrow)

**Original Note Amount: $169,079.00**
**Original Recorded Date: November 21, 2005**

This Loan Modification Agreement ("Agreement"), made this 12th day of November, 2008, between JAMES B. STAFFORD, SR. and KAREN J. STAFFORD ("Borrower(s)") and Citi Residential Lending Inc. ("Servicer") acting in its capacity as the agent and attorney-in-fact for the owner of the Note and Security Interest, amends and supplements (1) the Mortgage (the "Security Instrument"), and applicable Rider(s), if any, dated November 2, 2005 and recorded as Document No. 5210857 in Book 17353 Page 708 in the Official Records of Macomb County Recorder, State of Michigan and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

## 27264 GILBERT DRIVE, WARREN, MI 48093

The real property described being set forth as follows:

### SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. As of December 1, 2008 the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $169,853.73, consisting of the unpaid amount (s) loaned to Borrower(s) plus any interest and other amounts capitalized.

2. Delinquent interest accrued and capitalized (i.e., added to the outstanding principal balance) in the modified loan principal balance is $1,229.47. Other charges (if any) accrued and capitalized are $11.00. Delinquent interest and other charges (if any) accrued but not capitalized are $0.00.

**Loan No. 0137686721**

3. EFFECTIVE WITH THE DATE OF THIS MODIFICATION THE MONTHLY PAYMENT WILL BE CONVERTED FROM AN INTEREST ONLY PAYMENT TO A FULLY AMORTIZING MONTHLY PRINCIPAL AND INTEREST PAYMENT BASED ON THE REMAINING TERM OF THIS LOAN.

4. Servicer agrees to change the interest rate on this loan from Adjustable to Fixed for the remaining term. Interest will be charged at this rate on the newly capitalized Unpaid Principal Balance.

5. The interest rate will adjust as follows:

| INTEREST CHANGE DATE | INTEREST RATE | PAYMENT DUE DATE | MONTHLY P & I | TOTAL AMOUNT DUE |
|---|---|---|---|---|
| 12/01/2008 | 6.920% | 01/01/2009 | $1,159.44 | $1,159.44 |

**Borrower is responsible for paying all taxes and insurances on said property.**

If on December 1, 2035 (the "Maturity Date"), Borrower(s) still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower(s) will pay these amounts in full on the Maturity Date.

Borrower(s) will make such payments to Citi Residential Lending Inc, ATTN: Cashiering Department, First Floor, 1600 McConnor Parkway, Schaumburg, Illinois 60173-6800 or at such other place as Servicer may require.

6. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower(s) is not a natural person and a beneficial interest in Borrower(s) is sold or transferred) without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument.

If Servicer exercises this option, Servicer shall give Borrower(s) notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower(s) must pay all sums secured by this Security Instrument. If Borrower(s) fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower(s).

7. If the Borrower(s) has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Servicer is not attempting to re-establish any personal liability for the underlying debt.

**If Chapter 13 bankruptcy has been filed and a Motion for Relief of Stay has been granted to Citi Residential Lending Inc, this Agreement is contingent on Trustee approval. The approval will be required with the executed, notarized Agreement and wire confirmation. Failure to provide the Trustee's approval will result in this Agreement being rescinded.**

**Loan No. 0137686721**

8. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in while or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower(s) and Servicer will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

9. Effective as of the date of this Modification Agreement, the principal indebtedness evidenced by the Note and this Modification Agreement will include any amounts for escrow payments advanced by Servicer on Borrower(s)'s behalf and for delinquent interest accrued in accordance with the terms of the Note.

10. Except as expressly modified by this Modification Agreement, all terms of the Note and Security Instrument remain in full force and effect. By signing below, Servicer and Borrower(s) acknowledge there are no additional terms or agreements, oral or written. By this Agreement, any assumability, convertibility or balloon provision is hereby rescinded.

11. This Modification Agreement does not constitute a limitation or waiver of Servicer's rights to prohibit, or restrict, any future modifications requested by Borrower(s) or to enforce any rights or remedies contained in the Note and Security Instrument.

12. If any terms of this Modification Agreement are deemed invalid or unenforceable, this Modification Agreement shall immediately terminate and the original terms of the Note and Security Instrument shall apply to the Loan.

13. By executing this Agreement, Borrower(s) waives any prior modifications, forbearance agreements or other rate reduction to which Borrower(s) may be otherwise entitled. Borrower(s) further releases and discharges Servicer from any and all claims that occurred prior to the date of this modification of any kind or nature, arising out of or related in any manner to the origination or servicing of the loan. Furthermore, Borrower(s) hereby state that they have read, understand and acknowledge that they are familiar with Section 1542 of the California Civil Code (and any similar provision of law), which section provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

14. By executing this Agreement, Borrower(s) asserts that this property is owner-occupied; that the Borrower(s) has the ability repay the loan under the terms of this modification; and, without this modification the Borrower(s) will suffer a hardship as a result of an increase in the payment amount under the original terms of the Note and Security Instrument.

Loan No. 0137686721

15. The undersigned Borrower(s) agree if requested by Servicer, or any agent of Servicer to fully cooperate and adjust for clerical errors, any documentation connected with this Modifications deemed necessary by the Servicer and to comply with any requests of the Servicer to execute additional documentation within 30 days from the date of mailing such request.

**SERVICER AND BORROWER(S) AGREE AND ACCEPT THE TERMS OF THIS MODIFICATION AGREEMENT AS OF THE DATE FIRST ABOVE WRITTEN.**

CITI Residential Lending, Inc.        Authorized Signer                    Date

Borrower(s) JAMES B. STAFFORD, SR.                   19 NOV 08

                                                                           Date

Borrower(s) KAREN J. STAFFORD                   11-19-08

                                                                           Date

Witness

Witness

Rev. 01/08                          Page 4 of 5

## EXHIBIT A

**BORROWER(S): STAFFORD**

**LOAN NUMBER: 0137686721**

**LEGAL DESCRIPTION:**

LOT 14 SUPERVISORS PLAT NO. 15 OF LEFEVRE FARMS SUBDIVISION, AS RECORDED IN LIBER 18, PAGE 48, OF PLATS, MACOMB COUNTY RECORDS.

# EXHIBIT R

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into as of this
_____day of October, 2008 by and between Ameriquest Mortgage Company, a Delaware
corporation ("Ameriquest"), Citi Residential Lending Inc., a Delaware corporation ("Citi"),
Deutsche Bank National Trust Company ("Deutsche Bank") (Trustee for the Registered Holders
("Holders") of Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates,
Series 2005-R11 ("Trust")), and Ameriquest Mortgage Securities, Inc., a Delaware corporation
("AMSI"), on the one hand, and James Stafford ("Borrower"), on the other hand. Ameriquest,
Citi, Deutsche Bank, AMSI, and Borrower are sometimes hereinafter collectively referred to as
"the Parties" or individually as "Party."

### RECITALS

A.      On or about November 2, 2005, for valuable consideration, Borrower executed
and delivered to Ameriquest an Adjustable Rate Note ("Promissory Note") in the principal
amount of $169,079.00. The Note is secured by a Mortgage in favor of Ameriquest, and
recorded against the real property located at 27264 Gilbert Dr., Warren, MI 48093 ("Property").
The Note and Mortgage, along with all other documents executed by Borrower in connection
therewith, known as Loan No. 0137686721-7330 shall be referred to as the "Ameriquest Loan".
Borrower has filed a lawsuit against Ameriquest, which has been consolidated in the multi-
district litigation proceeding entitled *In Re: Ameriquest Mortgage Co., Mortgage Lending
Practices Litigation*, Case No. 05-cv-07097 (the "Lawsuit"). The Lawsuit alleges certain
statutory violations, and other improprieties, in connection with the origination of the
Ameriquest Loan. Ameriquest denies Borrower's allegations and denies that Borrower has been
damaged by any act or omission of Ameriquest.

BN 2348233v1                                                    --1--

B.    After the origination of the Ameriquest Loan, Ameriquest sold its interest in the loan to AMSI which deposited the loan along with other Ameriquest originated loans into the Trust, and interests in the Trust were sold to the Holders. The Ameriquest Loan is currently serviced by Citi, and Deutsche Bank serves as Trustee of the Trust on behalf of the Holders.

C.    Notwithstanding the allegations and positions of the Parties, the Parties desire to resolve on mutually agreeable terms the disputes between them, as set forth herein, for the purpose of avoiding the burden, expense and uncertainty of litigation.

## AGREEMENT

In consideration of the recitals, covenants and conditions contained in this Agreement, and for valuable consideration, the Parties agree as follows:

I.    **TERMS**

A.    Within five business days after the execution of this Agreement by all Parties, Ameriquest shall deliver a check to the law firm of Edelman, Combs, Latturner & Goodwin, LLC in the amount of $3,000.00 (the "Settlement Payment"), in full and complete settlement of all claims asserted or that could have been asserted by Borrower in the Lawsuit. The Settlement Payment is paid expressly and exclusively to cover Borrower's attorneys' fees, pursuant to the Truth In Lending Act. 15 U.S.C. §1640(a)(3). The check shall be made payable to "Edelman, Combs, Latturner & Goodwin, LLC and James Stafford."

B.    Upon receipt of the Settlement Payment, counsel for the Borrower shall draft, execute, and file with the Court a Notice of Dismissal, providing that the Lawsuit, and each claim asserted by Borrower therein, shall be dismissed as to all named defendants, with prejudice.

C.    As further consideration for the release of all claims asserted by Borrower, Citi will modify Borrower's obligations under the Promissory Note to repay the Ameriquest Loan consistent with the terms of the proposed Loan Modification schedule attached hereto as Exhibit A, the modified repayment terms to commence October 1, 2008 (the "Loan Modification"). Borrower further understands and agrees that the final terms and conditions of the Loan Modification are subject to execution of the requisite loan documents between Borrower and Citi.

## II.    RELEASE

Upon execution of this Agreement by all Parties, and compliance with the obligations set forth above, Borrower and his representatives, beneficiaries, agents, attorneys, predecessors in interest, successors and assigns, and each of them, hereby release and forever discharge Ameriquest, Citi, AMSI, Deutsche Bank (individually, and as Trustee for the Holders of the Trust), and any other person or entity holding a legal or beneficial interest in the Ameriquest Loan, or any modification thereof, and each or any their respective officers, directors, partners, shareholders, associates, employees, members, parents, subsidiaries, predecessors, successors, assigns (including, without limitation, any past or present servicer, investor, or trustee with respect to the Ameriquest Loan), affiliates, attorneys , agents, representatives and any person acting on behalf of or at the direction of or for the benefit of any of the foregoing (collectively the "Released Parties"), of and from any and all claims, complaints, demands, obligations, causes of action, chooses in action, damages, fees, costs and/or expenses whatsoever of any kind or nature, including, but not limited to, those arising out of or related in any manner to the Ameriquest Loan, the origination, modification and/or servicing of the Ameriquest Loan, the securitization of the Ameriquest Loan, the Lawsuit, or the facts alleged in the Recitals.  The parties acknowledge that this release does not include events which post-date this Agreement.

Borrower acknowledges and agrees that this Agreement applies to all of the Borrower's claims, losses, damages and causes of action, of whatever nature, whether these damages or losses are known, unknown, foreseen, unforeseen, patent or latent, which Borrower had, has or might have against the Released Parties.

Borrower acknowledges that he may hereafter discover facts different from or in addition to those now known or believed to be true related to the matters set forth in this Agreement and agree that this Agreement shall remain in full force and effect, notwithstanding the existence of any such different, new or additional facts. Borrower further acknowledges that he is familiar with the provisions of California Civil Code Section 1542, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Borrower, being aware of said Code section, hereby expressly waive any rights that he may have thereunder, as well as under any other statues or common law principles of similar effect.

_____
**Initials**

Borrower expressly acknowledges that this Release shall be given full force and effect according to each and all of its terms and provisions, including as well those relating to unknown or unsuspected claims, demands, and causes of action, if any, and those relating to all other claims, demands, and causes of action hereinabove specified.

**III.  GENERAL PROVISIONS**

**A.  ADVICE OF COUNSEL**

The Parties hereby represent that they have been advised of the effect of this Agreement by their own attorneys, or that they have had the opportunity to consult with an attorney of their choosing, have investigated the facts and are not relying upon any representation or acknowledgment, whether oral or in writing, of any other party hereto except as contained herein. Further, the Parties expressly waive any right to rescind this Agreement.

B.   **FURTHER ASSURANCES**

The Parties hereto agree to perform such acts and to prepare, execute, and file any documents or stipulations reasonably required to perform the covenants, to satisfy the conditions herein contained, or to give full force and effect to this Agreement.

Borrower represents, warrants and covenants to Ameriquest, Citi, and AMSI that they are the holder of all right, title and interest in the claims released subject to this Agreement and as of the date hereof that Borrower has the full power and authority to enter into and consummate this Agreement.

C.   **SUCCESSOR AND THIRD PARTIES**

Each covenant set forth in this Agreement shall inure to the benefit of and be binding upon the Parties and their respective owners, heirs, successors, shareholders, officers, directors, assigns, attorneys, agents, employees, employers, representatives (past and present), and each of them. Further, the release of the Parties and entities who are not signatories to this Agreement is made expressly for their benefit and they shall be deemed third party beneficiaries of the Agreement. The Parties expressly agree that the rights granted herewith may be assigned to any individual or entity.

D.   **MEANING OF PRONOUNS AND EFFECT OF CAPTIONS**

As used in this Agreement, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of text.

E.    ENTIRE AGREEMENT

Except as otherwise set forth herein, this Agreement embodies the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings relating to the subject matter hereof. No course of prior dealing between the Parties, no usage of the trade, and no parol or extrinsic evidence of any nature shall be used or be relevant to supplement, explain or modify any term used herein. Each Party represents and warrants that they are not relying on any other Party for tax or bankruptcy advice. This Agreement is a product of negotiation and preparation by and among each Party. Therefore, the Parties acknowledge and agree that this Agreement should not be deemed prepared or drafted by one Party or the other and shall be construed accordingly.

F.    COUNTERPARTS

The terms of this Agreement are contractual and not merely recital. This Agreement may be signed in one or more counterparts, each of which shall be deemed an original. Facsimile copies of this Agreement and the signatures hereto may be used with the same force and effect as the original. This Agreement shall be deemed fully executed and effective when all Parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures.

G.    COVENANT NOT TO SUE

The Parties agree that none of the Parties shall in any manner challenge this Agreement.

Borrower agrees not to sue or in any way assist or encourage any other person or entity in suing any Party and/or any Released Party with respect to any claim released herein. This release may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the release contained herein.

### H. MODIFICATION ONLY IN WRITING

Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated, except by a subsequently executed instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge or termination is sought.

### I. NO WAIVER

No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power or remedy which any Party and/or any Released Party may have, nor shall any such delay be construed to be a waiver of any such right, power, or remedy, or any acquiescence in any breach or default hereunder; nor shall any waiver of any breach or default of any Party hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to any Party and/or Released Party hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of, any action begun to enforce any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies which any Party and/or Released Party would otherwise have. Any waiver, permit, consent or approval by any Party of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing signed by the Party to be charged and only as to that specific instance.

J.   NON-EXCLUSIVE REMEDIES

In the event of a breach of any provision of this Agreement, the Parties and/or any Released Party, in addition to and not in lieu of the remedies expressly provided in this Agreement, shall be entitled to exercise such remedies that exist at law or equity to enforce this Agreement, including but not limited to seeking specific performance.

K.   CONFIDENTIALITY

No Party, or any representative of any Party, shall, without the prior, written consent of all other Parties (1) provide a copy of this Agreement or any portion of this Agreement to any person/entity not a party to this Agreement; (2) disclose to any person/entity not a party to this Agreement any or all parts of the terms of this Agreement; (3) disclose to any person/entity not a party to this Agreement any of the prospective parts of this Agreement or terms of settlement which were discussed in negotiations prior to the execution of this Agreement.

Notwithstanding the foregoing, each party may make the following disclosures: (1) disclosures mandated by legislative, judicial and/or administrative order, rule or regulation; (2) disclosures to tax preparers, tax advisors, independent public accountants, attorneys and insurers, past, present and prospective, provided that such tax preparers, tax advisors, independent public accountants, attorneys and insurers agree to keep all such information in strict confidence except as required by this Agreement, law, regulation, or the standards of the accounting or auditing profession; (3) disclosures to any taxing authority for the purpose of submitting the respective party's tax information to that tax authority; (4) disclosures required by governmental regulatory bodies with the legal right to review the books and records of a party; and  (5) any other disclosure which is mandated by applicable law, regulation, rule or order.

L.     ATTORNEYS' FEES

The Parties shall not make any demands for attorneys' fees, costs and expenses incurred in negotiating or reviewing this Agreement or otherwise in connection with the Lawsuit. However, in any action to enforce Sections I(A)-(B) and II of this Agreement, reasonable fees and costs will be awarded to the prevailing party. Further, the Parties shall not make any demands to the opposing party for statutory damages or attorneys' fees or costs under the Federal Truth in Lending Act or any comparable state law or regulation.

M.     COMPROMISE OF DISPUTED CLAIM

The Parties hereto acknowledge that the execution of this Agreement and consummation of the transactions contemplated hereby do not constitute an admission of liability or of any facts by any of the Parties. This Agreement shall not be offered or received in evidence in any action or proceeding in any court, administrative action or other tribunal for any purpose other than to enforce this Agreement.

N.     CONSTRUCTION/SEVERABILITY

This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to resolve completely those claims and disputes between the Parties, as more fully described herein. If any provision of this Agreement shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement but in no event shall such provision effect, impair or invalidate any other provision hereof. This Agreement shall be construed without regard to the identity of the person who drafted its various provisions: each and every provision of this Agreement shall be construed as though all of the Parties participated equally in the drafting of the same, and any rule of construction that a document is to be construed against the drafting Party shall not be applicable

to this Agreement.

O.   VOLUNTARY AGREEMENT

This Agreement was freely and voluntarily entered into by the Parties who each had the opportunity to be represented and advised by counsel with respect to entering into this Agreement.

P.   GOVERNING LAW

This Settlement Agreement shall be construed in accordance with and governed by the internal laws, other than choice of laws, of the State of California, regardless of where executed or performed. If any provision of this Settlement Agreement shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement, but in no event shall such provision affect, impair or invalidate any other provision hereof.

Q.   ADMISSIONS

This Settlement Agreement is intended to be in compromise and settlement of disputed and unliquidated claims. Nothing herein shall constitute or be asserted as constituting any admission of liability or wrongdoing by or against any party hereto.

R.   TIME IS OF THE ESSENCE

As to all obligations hereunder, time is of the essence.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement effective on the day and year set forth above.

IT IS SO AGREED.

Dated: _____, 2008     _____
                                    James Stafford

–10–

BN 2348253v1

Dated: _Oct. 19th_, 2008

Ameriquest Mortgage Company

By: _Diane E. [signature]_

Name: _Diane E. Tiberend_

Title: _Secretary_

Dated: _____, 2008

Citi Residential Lending Inc.

By: _____

Name:

Title:

Dated: _Oct. 17th_, 2008

Ameriquest Mortgage Securities, Inc.

By: _Diane E. [signature]_

Name: _Diane E. Tiberend_

Title: _Assistant Secretary_

Dated: _____, 2008

Deutsche Bank National Trust Company, Trustee for the Registered Holders of Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2005-R11

By: _____

Name:

Title:

-11-

Dated: _____, 2008     Ameriquest Mortgage Company

By: _____

Name:

Title:

Dated: _10/20_____, 2008     Citi Residential Lending, Inc.

By: _____

Name: _Michael A Zostry_

Title: _U P Credit Services_

Dated: _____, 2008     Ameriquest Mortgage Securities, Inc.

By: _____

Name:

Title:

Dated: _____, 2008     Deutsche Bank National Trust Company, Trustee for the Registered Holders of Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2005-R11

By: _____

Name: _Michael A Zostry_

Title: _U P Credit Services_

BN 2348233v1

# EXHIBIT S

## Catherine A. Ceko

| | |
|---|---|
| **From:** | Chavers, Robert E. [rchavers@buchalter.com] |
| **Sent:** | Monday, April 20, 2009 11:00 AM |
| **To:** | Catherine A. Ceko |
| **Cc:** | Newman, Brian H. |
| **Subject:** | MDL Settlements |
| **Attachments:** | Staff001.PDF; Clay001.PDF |

 

Staff001.PDF (932    Clay001.PDF (944
KB)           KB)

Hi Catherine:

Pursuant to Brian Newman's request please see attached settlement agreements for James Stafford and Mildred Clay. Can you please have the borrowers sign the documents and return to our office at your earliest convenience.

Please let me know if you need anything further.

Thank you.

Rob


Robert Chavers | Paralegal | Buchalter Nemer, A Professional Corporation | 1000 Wilshire Boulevard, Suite 1500 | Los Angeles, CA 90017-2457 | Direct Dial: (213) 891-5740 | Direct Fax: (213) 630-5850 | Switchboard: (213) 891-0700 | rchavers@buchalter.com | www.buchalter.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation.
For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=15 1&Itemid=129

IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.


Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151 &Itemid=129

IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

# EXHIBIT T

## Catherine A. Ceko

| | |
|---|---|
| **From:** | Catherine A. Ceko |
| **Sent:** | Tuesday, March 17, 2009 9:52 AM |
| **To:** | 'Stevenson, Karen L.' |
| **Subject:** | James and Karen Stafford |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Karen,

James and Karen Stafford had their servicing rights sold to AHMSI. We don't have an AHMSI loan number for them, but their address is 27264 Gilbert, Warren, MI 48093.

The Staffords had entered into a loan modification with CitiResidential. They received a letter informing them that their servicing rights were sold to AHMSI, and they were given the following contact information:

American Home Mortgage Servicing Inc.

P.O. BOX 600029

Dallas, TX 75266-0029

877-302-3100

First payment due to them was paid on March 1, 2009 to AHMSI. They have not received any paperwork billing at all from AHMSI, and when they call the above phone number, all they get is an automated response, without any option to speak to a customer service representative or to ask any questions.

Can you please check into this and let me know when AHMSI plans to began billing the Staffords in accord with the loan modification and what number the Staffords can call to speak to an actual customer service representative? Thanks.

-Cat

# EXHIBIT U

23.     Defendants' counsel tendered a check to plaintiffs' counsel for the McKimmys' attorney's fees on April 21, 2009.  However, as of April 2009, plaintiffs Angelique McKimmy and Ernie McKimmy are still receiving statements for the higher, pre-modification monthly payments.

### FACTS RELATING TO PLAINTIFFS KAREN STAFFORD AND JAMES STAFFORD

24.     On November 19, 2008, plaintiffs Karen Stafford and James Stafford signed the Loan Modification Agreement attached as Exhibit Q.

25.     On October 17, 2008, defendants Ameriquest Mortgage Company and Ameriquest Mortgage Securities, Inc., through Diane E. Tiberend, signed the settlement agreement for plaintiffs Karen Stafford and James Stafford attached hereto as Exhibit R.  Defendants Citi Residential Lending, Inc. and Deutsche Bank National Trust Company, Trustee for the Registered Holders of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2005-R11, through Michael Zastoupil, signed Exhibit R on October 20, 2008.

26.     Paragraph I (C) of Exhibit R states that modified repayment terms were to commence October 1, 2008.

27.     Defendants' counsel did not forward Exhibit R to plaintiffs' counsel until April 20, 2009.  Exhibit S.

28.     On March 17, 2009, plaintiffs' counsel contacted defendants' counsel to inform defendants that American Home Mortgage Servicing, Inc. had purchased servicing rights to the Staffords' loan, effective March 1, 2009, but that American Home Mortgage Servicing, Inc. would not send plaintiffs statements or enable plaintiffs to speak to a customer service representative.  Exhibit T.

5

**Aziza Khatoon**

| | |
|---|---|
| **From:** | Michael Aschenbrener |
| **Sent:** | Friday, September 05, 2008 4:49 PM |
| **To:** | 'Stevenson, Karen L.' |
| **Cc:** | Cathleen M. Combs; Tara Goodwin |
| **Subject:** | RE: MDL proposal for Clay 0091830208 |

Karen-

Ms. Clay accepts Citi's loan modification offer of 4.8% fixed for the life of the loan, as well as Ameriquest's offer to settle her case for a $3,000 cash payment on the condition that she will not have to escrow her tax and insurance payments. My understanding from previous conversations with you is that Citi will allow this provided the borrower is current on tax and insurance. As you indicate below, Ms. Clay certainly is current. Please let me know if this is acceptable to your client.

Additionally, Ms. Clay called to my attention the fact that Citi has apparently made her next tax payment for her even though she has never been even a day late with her property taxes. In fact, her County shows that she has a credit balance on her property taxes because of this payment. In addition, Citi is now requiring that she make tax and insurance escrow payments even though she has no such arrangement in place, and is asserting a tax lien on her property. I will send you documentation of these issues Monday. But I'll be asking that you look into this issue w/ Citi and advise me as to what is happening, why it is happening, and what we can do to make it stop. I'll reserve judgment on Citi's action until I hear from you regarding why Citi has taken these actions, but at this point it does not sound as though what Citi is doing is necessary or proper.

Thank you,

MJA

_____
Michael J. Aschenbrener
312-917-4521

**From:** Stevenson, Karen L. [mailto:kstevenson@buchalter.com]
**Sent:** Thursday, June 26, 2008 11:26 PM
**To:** Michael Aschenbrener
**Cc:** Kam, Pamela; Jordan, William F.; Petrossian, Melody A.; Andrus, Sarah; Davies, Joanne; LeSage, Bernard; jryan@acc-ch.com; rklein@acc-ch.com; DTiberend@acc-ch.com
**Subject:** FW: MDL proposal for Clay 0091830208

Michael - Attached is the servicer's response to the loan modification request the Clay plaintiffs. Because the borrower is current, there is no capitalized delinquent interest and it is assumed that all payments prior to the effective date of the loan modification, if accepted, is made. Notably, the servicer has offered a fixed interest rate of 4.8% instead of the current 11.1250% ARM loan.

Please let me know if this proposal is acceptable to your client and if they will accept the $3000 cash payment offered by Ameriquest. This is a final offer.

Regards,
Karen

9/8/2008

Karen Stevenson | Sr. Counsel | **BuchalterNemer**, A Professional Corporation | 1000 Wilshire Boulevard, Suite 1500 | Los Angeles, CA 90017-2457 | Direct Dial: (213) 891-5574 | Cell Phone: (213) 361-6428 | Direct Fax: (213) 630-5764 | Switchboard: (213) 891-0700 | kstevenson@buchalter.com | www.buchalter.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

# EXHIBIT V

*rec'd Saturday*
*10/18/08*
*MClay*

RECORD AND RETURN TO:
Citi Residential Lending, Inc.
10801 E.6th Street Attn: Loan Modification Unit
Rancho Cucamonga, CA 91730

Tax Parcel No.: 6741890

───────────────── [Space Above This Line for Recording Data] ─────────────────

Loan No. 0091830208

# LOAN MODIFICATION AGREEMENT
### (Providing for Capitalization, Life of Loan Interest Rate Reduction on Adjustable Loan)

**Original Note Amount:** $ 89,000.00

**Original Recorded Date:** September 16, 2004

This Loan Modification Agreement ("Agreement"), made this 10th day of October, 2008 , between MILDRED CLAY, SINGLE WOMAN


("Borrower(s)") and
Citi Residential Lending, Inc.
("Servicer") acting in its capacity as the agent and attorney-in-fact for the owner of the Note and Security Interest, amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and applicable Rider(s), if any, dated        September 9, 2004        and recorded as Instrument/Document No:        55100148        , Book No.    N/A    , Page No.    N/A    in the OFFICIAL RECORDS                    of            SUMMIT            County, State of        Ohio                and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
968 STABELMAN AVE.
AKRON, OH 44320

Rev. 08/08                           Page 1 of 4

Loan No. 0091830208

The real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;

     In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1.  As of     November 1, 2008     the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") in U.S. $ 89,431.92     , consisting of the unpaid amount(s) loaned to Borrower(s) plus any interest and other amounts capitalized.

2.  Delinquent interest accrued and capitalized (i.e., added to the outstanding principal balance) in the modified loan principal balance is $ 731.58     . Other charges (if any) accrued and capitalized are $ 1,995.08     . Delinquent interest and other charges (if any) accrued but not capitalized are $ 0.00   .

3.  Servicer agrees to reduce the interest rate on this loan for the remaining term. Interest will be charged at this reduced rate on the newly capitalized Unpaid Principal Balance.

4.  When box is checked below Borrower agrees that payments for:

    ☐ hazard insurance premiums     ☒ real property taxes
    ☐ flood insurance premiums     ☐ mortgage insurance premiums

    may be escrowed throughout the term of the loan and paid by borrower to the Servicer with the monthly Principal and Interest payment. Within 45 days of the completion of the Modification Agreement, borrower will receive an Escrow Analysis Statement, which outlines which items will be escrowed and included in the monthly mortgage payment.

    If no boxes are checked above Borrower will be responsible for paying directly to the tax collector or insurance vendor all installments and premiums.

5.  The monthly payment will adjust as follows:

| INTEREST CHANGE DATE | INTEREST RATE | PAYMENT DUE DATE | MONTHLY P & I | ESCROW* AMOUNT | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|
| 11/01/2008 | 4.250 % | 12/01/2008 | $ 474.89 | $ 145.89 | $ 620.78 |

    *Borrower(s) will be notified in writing if there are any changes in the escrow payments.

    If on     October 1, 2034     (the "Maturity Date"), Borrower(s) still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower(s) will pay these amounts in full on the Maturity Date.

    Borrower(s) will make such payments to Citi Residential Lending Inc, ATTN: Cashiering Department, First Floor, 1600 McConnor Parkway, Schaumburg, Illinois 60173-6800 or at such other place as Servicer may require.

6.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower(s) is not a natural person and a beneficial interest in Borrower(s) is sold or transferred) without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument.

    If Servicer exercises this option, Servicer shall give Borrower(s) notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower(s) must pay all sums secured by this Security Instrument. If Borrower(s) fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower(s).

Rev. 08/08                              Page 2 of 4

**Loan No. 0091830208**

7.  If the Borrower(s) has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy and there having been no valid reaffirmation of the underlying debit, by entering into this Agreement, the Servicer is not attempting to re-establish any personal liability for the underlying debt.

    **If Chapter 13 bankruptcy has been filed and a Motion for Relief of Stay has been granted to Citi Residential Lending Inc., this Agreement is contingent on Trustee approval. The approval will be required with the executed, notarized Agreement and wire confirmation. Failure to provide the Trustee's approval will result in this Agreement being rescinded.**

8.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower(s) and Servicer will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

9.  The yearly rate of interest applicable to the Loan prior to execution of this Modification Agreement shall apply after any default under the terms of the Note, Security Instrument or this Modification Agreement.

10. Effective as of the date of this Modification Agreement, the principal indebtedness evidenced by the Note and this Modification Agreement will include any amounts for escrow payments advanced by Servicer on Borrower(s)'s behalf and for delinquent interest accrued in accordance with the terms of the Note.

11. Except as expressly modified by this Modification Agreement, all terms of the Note and Security Instrument remain in full force and effect. By signing below, Servicer and Borrower(s) acknowledge there are no additional terms or agreements, oral or written. By this Agreement, any assumability, convertibility or balloon provision is hereby rescinded.

12. This Modification Agreement does not constitute a limitation or waiver of Servicer's rights to prohibit, or restrict, any future modifications requested by Borrower(s) or to enforce any rights or remedies contained in the Note and Security Instrument.

13. If any terms of this Modification Agreement are deemed invalid or unenforceable, this Modification Agreement shall immediately terminate and the original terms of the Note and Security Instrument shall apply to the Loan.

14. By executing this Agreement, Borrower(s) waives any prior modifications, forbearance agreements or other rate reduction to which Borrower(s) may be otherwise entitled. Borrower(s) further releases and discharges Servicer from any and all claims that occurred prior to the date of this modification of any kind or nature, arising out of or related in any manner to the origination or servicing of the loan. Furthermore, Borrower(s) hereby state that they have read, understand and acknowledge that they are familiar with Section 1542 of the California Civil Code (and any similar provision of law), which section provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Rev. 08/08                    Page 3 of 4

Loan No. 0091830208

15. By executing this Agreement, Borrower(s) asserts that this property is       owner occupied     ; that the Borrower(s) has the ability repay the loan under the terms of this modification; and, without this modification the Borrower(s) will suffer a hardship as a result of an increase in the payment amount under the original terms of the Note and Security Instrument.

16. The undersigned Borrower(s) agree if requested by Servicer, or any agent of Servicer to fully cooperate and adjust for clerical errors, any documentation connected with this Modifications deemed necessary by the Servicer and to comply with any requests of the Servicer to execute additional documentation within 30 days from the date of mailing such request.

SERVICER AND BORROWER(S) AGREE AND ACCEPT THE TERMS OF THIS MODIFICATION AGREEMENT AS OF THE DATE FIRST ABOVE WRITTEN.

 

| | |
|---|---|
| Authorized Signer | Date |
| Citi Residential Lending, Inc. | |

| | | |
|---|---|---|
| *Mildred Clay*    10/18/08 | | |
| Borrower(s)        Date | | Borrower(s)      Date |
| MILDRED CLAY | | |

| | |
|---|---|
| Borrower(s)     Date | Borrower(s)     Date |

| | |
|---|---|
| Witness | Witness |

Rev. 08/08               Page 4 of 4

## EXHIBIT A

**BORROWER(S): CLAY**
**LOAN NUMBER: 0091830208**
**LEGAL DESCRIPTION:**

Located in the Ninth Civil District and 1st Ward of the City of Columbia, Tennessee, said real estate being described as follows:

Being Lot No. 14, Block B of the Westview Subdivision, said Lot fronting 60 feet on the West side of Westview Avenue and extending back Westwardly between parallel lines 100 feet and known as 117 West Avenue.

Being the same property conveyed to Patricia Whittaker, Doris Nicholson, Linda Nicholson, and Elnora Johnson, each 1/4 interest from Doris Nicholson, in Deed Book T-110, Page 2, Register's Office of Maury County, Tennessee.

Being the same property acquired by Doris Nicholson in deed of record in Deed Book 581, Page 63, Register's Office of Maury County, Tennessee.

**Loan No.** 0091830208

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of
Citi Residential Lending, Inc.                                                                                    ,
as the Servicer, acting in its capacity as authorized agent for the true owner in interest of the loan, and based on its agreement to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Servicer, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Servicer, to enable Servicer to transfer, sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Servicer within 30 days of receipt of written request from the Servicer. Borrower agrees to assume all costs that may be incurred by the Servicer, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Servicer.

_____     10/18/08
MILDRED CLAY                                              Date

_____     _____
                                                                   Date

_____     _____
                                                                   Date

_____     _____
                                                                   Date

Rev. 08/08                              Page 1 of 1

# EXHIBIT W

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into as of this _____ day of September, 2008 by and between Ameriquest Mortgage Company, a Delaware corporation ("Ameriquest"), Citi Residential Lending Inc., a Delaware corporation ("Citi"), Deutsche Bank National Trust Company ("Deutsche Bank") (Trustee for the Registered Holders ("Holders") of Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2004-R10 ("Trust")), and Ameriquest Mortgage Securities, Inc., a Delaware corporation ("AMSI"), on the one hand, and Mildred Clay ("Borrower"), on the other hand. Ameriquest, Citi, Deutsche Bank, AMSI, and Borrower are sometimes hereinafter collectively referred to as "the Parties" or individually as "Party."

## RECITALS

A.    On or about September 9, 2004, for valuable consideration, Borrower executed and delivered to Ameriquest an Adjustable Rate Note ("Promissory Note") in the principal amount of $89,000.00. The Note is secured by a Mortgage in favor of Ameriquest, and recorded against the real property located at 968 Stabelman Ave., Akron, OH 44320 ("Property"). The Note and Mortgage, along with all other documents executed by Borrower in connection therewith, known as Loan No. 0091830208-5522 shall be referred to as the "Ameriquest Loan". Borrower has filed a lawsuit against Ameriquest, which has been consolidated in the multi-district litigation proceeding entitled *In Re: Ameriquest Mortgage Co., Mortgage Lending Practices Litigation*, Case No. 05-cv-07097 (the "Lawsuit"). The Lawsuit alleges certain statutory violations, and other improprieties, in connection with the origination of the Ameriquest Loan. Ameriquest denies Borrower's allegations and denies that Borrower has been damaged by any act or omission of Ameriquest.

BN 2241969v1                                  –1–

B.     After the origination of the Ameriquest Loan, Ameriquest sold its interest in the loan to AMSI which deposited the loan along with other Ameriquest originated loans into the Trust, and interests in the Trust were sold to the Holders. The Ameriquest Loan is currently serviced by Citi, and Deutsche Bank serves as Trustee of the Trust on behalf of the Holders.

C.     Notwithstanding the allegations and positions of the Parties, the Parties desire to resolve on mutually agreeable terms the disputes between them, as set forth herein, for the purpose of avoiding the burden, expense and uncertainty of litigation.

## AGREEMENT

In consideration of the recitals, covenants and conditions contained in this Agreement, and for valuable consideration, the Parties agree as follows:

**I.     TERMS**

A.     Within five business days after the execution of this Agreement by all Parties, Ameriquest shall deliver a check to the law firm of Edelman, Combs, Latturner & Goodwin, LLC in the amount of $3,000.00 (the "Settlement Payment"), in full and complete settlement of all claims asserted or that could have been asserted by Borrower in the Lawsuit. The Settlement Payment is paid expressly and exclusively to cover Borrower's attorneys' fees, pursuant to the Truth In Lending Act, 15 U.S.C. §1640(a)(3). The check shall be made payable to "Edelman, Combs, Latturner & Goodwin, LLC and Mildred Clay."

B.     Upon receipt of the Settlement Payment, counsel for the Borrower shall draft, execute, and file with the Court a Notice of Dismissal, providing that the Lawsuit, and each claim asserted by Borrower therein, shall be dismissed as to all named defendants, with prejudice.

C.    As further consideration for the release of all claims asserted by Borrower, Citi will modify Borrower's obligations under the Promissory Note to repay the Ameriquest Loan consistent with the terms of the proposed Loan Modification schedule attached hereto as Exhibit A, the modified repayment terms to commence October 1, 2008 (the "Loan Modification"). Borrower further understands and agrees that the final terms and conditions of the Loan Modification are subject to execution of the requisite loan documents between Borrower and Citi.

## II.    RELEASE

Upon execution of this Agreement by all Parties, and compliance with the obligations set forth above, Borrower and her representatives, beneficiaries, agents, attorneys, predecessors in interest, successors and assigns, and each of them, hereby release and forever discharge Ameriquest, Citi, AMSI, Deutsche Bank (individually, and as Trustee for the Holders of the Trust), and any other person or entity holding a legal or beneficial interest in the Ameriquest Loan, or any modification thereof, and each or any their respective officers, directors, partners, shareholders, associates, employees, members, parents, subsidiaries, predecessors, successors, assigns (including, without limitation, any past or present servicer, investor, or trustee with respect to the Ameriquest Loan), affiliates, attorneys , agents, representatives and any person acting on behalf of or at the direction of or for the benefit of any of the foregoing (collectively the "Released Parties"), of and from any and all claims, complaints, demands, obligations, causes of action, chooses in action, damages, fees, costs and/or expenses whatsoever of any kind or nature, including, but not limited to, those arising out of or related in any manner to the Ameriquest Loan, the origination, modification and/or servicing of the Ameriquest Loan, the securitization of the Ameriquest Loan, the Lawsuit, or the facts alleged in the Recitals. The parties acknowledge that this release does not include events which post-date this Agreement.

Borrower acknowledges and agrees that this Agreement applies to all of the Borrower's claims, losses, damages and causes of action, of whatever nature, whether these damages or losses are known, unknown, foreseen, unforeseen, patent or latent, which Borrower had, has or might have against the Released Parties.

Borrower acknowledges that she may hereafter discover facts different from or in addition to those now known or believed to be true related to the matters set forth in this Agreement and agree that this Agreement shall remain in full force and effect, notwithstanding the existence of any such different, new or additional facts. Borrower further acknowledges that she is familiar with the provisions of California Civil Code Section 1542, which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Borrower, being aware of said Code section, hereby expressly waive any rights that she may have thereunder, as well as under any other statues or common law principles of similar effect.

‾‾‾‾‾
**Initials**

Borrower expressly acknowledges that this Release shall be given full force and effect according to each and all of its terms and provisions, including as well those relating to unknown or unsuspected claims, demands, and causes of action, if any, and those relating to all other claims, demands, and causes of action hereinabove specified.

## III.   GENERAL PROVISIONS

### A.   ADVICE OF COUNSEL

The Parties hereby represent that they have been advised of the effect of this Agreement by their own attorneys, or that they have had the opportunity to consult with an attorney of their choosing, have investigated the facts and are not relying upon any representation or acknowledgment, whether oral or in writing, of any other party hereto except as contained herein. Further, the Parties expressly waive any right to rescind this Agreement.

### B.   FURTHER ASSURANCES

The Parties hereto agree to perform such acts and to prepare, execute, and file any documents or stipulations reasonably required to perform the covenants, to satisfy the conditions herein contained, or to give full force and effect to this Agreement.

Borrower represents, warrants and covenants to Ameriquest, Citi, and AMSI that they are the holder of all right, title and interest in the claims released subject to this Agreement and as of the date hereof that Borrower has the full power and authority to enter into and consummate this Agreement.

### C.   SUCCESSOR AND THIRD PARTIES

Each covenant set forth in this Agreement shall inure to the benefit of and be binding upon the Parties and their respective owners, heirs, successors, shareholders, officers, directors, assigns, attorneys, agents, employees, employers, representatives (past and present), and each of them. Further, the release of the Parties and entities who are not signatories to this Agreement is made expressly for their benefit and they shall be deemed third party beneficiaries of the

Agreement. The Parties expressly agree that the rights granted herewith may be assigned to any individual or entity.

D.  MEANING OF PRONOUNS AND EFFECT OF CAPTIONS

As used in this Agreement, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of text.

E.  ENTIRE AGREEMENT

Except as otherwise set forth herein, this Agreement embodies the entire agreement and understanding between the Parties and supersedes all prior·agreements and understandings relating to the subject matter hereof. No course of prior dealing between the Parties, no usage of the trade, and no parol or extrinsic evidence of any nature shall be used or be relevant to supplement, explain or modify any term used herein. Each Party represents and warrants that they are not relying on any other Party for tax or bankruptcy advice. This Agreement is a product of negotiation and preparation by and among each Party. Therefore, the Parties acknowledge and agree that this Agreement should not be deemed prepared or drafted by one Party or the other and shall be construed accordingly.

F.  COUNTERPARTS

The terms of this Agreement are contractual and not merely recital. This Agreement may be signed in one or more counterparts, each of which shall be deemed an original. Facsimile copies of this Agreement and the signatures hereto may be used with the same force and effect as the original. This Agreement shall be deemed fully executed and effective when all Parties have

executed at least one of the counterparts, even though no single counterpart bears all such signatures.

G.  COVENANT NOT TO SUE

The Parties agree that none of the Parties shall in any manner challenge this Agreement. Borrower agrees not to sue or in any way assist or encourage any other person or entity in suing any Party and/or any Released Party with respect to any claim released herein. This release may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the release contained herein.

H.  MODIFICATION ONLY IN WRITING

Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated, except by a subsequently executed instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge or termination is sought.

I.  NO WAIVER

No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power or remedy which any Party and/or any Released Party may have, nor shall any such delay be construed to be a waiver of any such right, power, or remedy, or any acquiescence in any breach or default hereunder; nor shall any waiver of any breach or default of any Party hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to any Party and/or Released Party hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of, any action begun to enforce any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies which any Party and/or

Released Party would otherwise have. Any waiver, permit, consent or approval by any Party of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing signed by the Party to be charged and only as to that specific instance.

### J. NON-EXCLUSIVE REMEDIES

In the event of a breach of any provision of this Agreement, the Parties and/or any Released Party, in addition to and not in lieu of the remedies expressly provided in this Agreement, shall be entitled to exercise such remedies that exist at law or equity to enforce this Agreement, including but not limited to seeking specific performance.

### K. CONFIDENTIALITY

No Party, or any representative of any Party, shall, without the prior, written consent of all other Parties (1) provide a copy of this Agreement or any portion of this Agreement to any person/entity not a party to this Agreement; (2) disclose to any person/entity not a party to this Agreement any or all parts of the terms of this Agreement; (3) disclose to any person/entity not a party to this Agreement any of the prospective parts of this Agreement or terms of settlement which were discussed in negotiations prior to the execution of this Agreement.

Notwithstanding the foregoing, each party may make the following disclosures: (1) disclosures mandated by legislative, judicial and/or administrative order, rule or regulation; (2) disclosures to tax preparers, tax advisors, independent public accountants, attorneys and insurers, past, present and prospective, provided that such tax preparers, tax advisors, independent public accountants, attorneys and insurers agree to keep all such information in strict confidence except as required by this Agreement, law, regulation, or the standards of the accounting or auditing profession; (3) disclosures to any taxing authority for the purpose of submitting the respective party's tax information to that tax authority; (4) disclosures required by governmental regulatory

bodies with the legal right to review the books and records of a party; and (5) any other disclosure which is mandated by applicable law, regulation, rule or order.

### L.    ATTORNEYS' FEES

The Parties shall not make any demands for attorneys' fees, costs and expenses incurred in negotiating or reviewing this Agreement or otherwise in connection with the Lawsuit. However, in any action to enforce Sections I(A)-(B) and II of this Agreement, reasonable fees and costs will be awarded to the prevailing party. Further, the Parties shall not make any demands to the opposing party for statutory damages or attorneys' fees or costs under the Federal Truth in Lending Act or any comparable state law or regulation.

### M.    COMPROMISE OF DISPUTED CLAIM

The Parties hereto acknowledge that the execution of this Agreement and consummation of the transactions contemplated hereby do not constitute an admission of liability or of any facts by any of the Parties. This Agreement shall not be offered or received in evidence in any action or proceeding in any court, administrative action or other tribunal for any purpose other than to enforce this Agreement.

### N.    CONSTRUCTION/SEVERABILITY

This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to resolve completely those claims and disputes between the Parties, as more fully described herein. If any provision of this Agreement shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement but in no event shall such provision effect, impair or invalidate any other provision hereof. This Agreement shall be construed without regard to the identity of the person who drafted its various provisions; each and every provision of this Agreement shall be construed as

though all of the Parties participated equally in the drafting of the same, and any rule of construction that a document is to be construed against the drafting Party shall not be applicable to this Agreement.

O.    VOLUNTARY AGREEMENT

This Agreement was freely and voluntarily entered into by the Parties who each had the opportunity to be represented and advised by counsel with respect to entering into this Agreement.

P.    GOVERNING LAW

This Settlement Agreement shall be construed in accordance with and governed by the internal laws, other than choice of laws, of the State of California, regardless of where executed or performed. If any provision of this Settlement Agreement shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement, but in no event shall such provision affect, impair or invalidate any other provision hereof.

Q.    ADMISSIONS

This Settlement Agreement is intended to be in compromise and settlement of disputed and unliquidated claims.  Nothing herein shall constitute or be asserted as constituting any admission of liability or wrongdoing by or against any party hereto.

R.    TIME IS OF THE ESSENCE

As to all obligations hereunder, time is of the essence.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective on the day and year set forth above.

BN 2241969v1

**IT IS SO AGREED.**

Dated: _____, 2008          _____

                                        Mildred Clay

Dated: _October 14_, 2008               Ameriquest Mortgage Company

                                        By: _Diane E. _____

                                        Name: _Diane E. Tiberend_

                                        Title: _Secretary_

Dated: _____, 2008           Citi Residential Lending Inc.

                                        By: _____

                                        Name:

                                        Title:

Dated: _October 14_, 2008               Ameriquest Mortgage Securities Inc.

                                        By: _Diane E. _____

                                        Name: _Diane E. Tiberend_

                                        Title: _Assistant Secretary_

Dated: _____, 2008           Deutsche Bank National Trust Company, Trustee
                                        for the Registered Holders of Ameriquest Mortgage
                                        Securities Inc., Asset-Backed Pass-Through
                                        Certificates, Series 2004-R10

                                        By: _____

                                        Name:

                                        Title:

–11–

BN 2241969v1