**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CALVIN BROWN and DORA BROWN, | ) | |
| | ) | Case No. 06 cv 2830 |
| Plaintiffs, | ) | |
| | ) | Judge Lefkow |
| v. | ) | Magistrate Judge Brown |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | Transferred for to Judge Aspen for |
| JPMC SPECIALTY MORTGAGE, LLC, f/k/a | ) | pretrial proceedings under MDL |
| WM SPECIALTY MORTGAGE, LLC, | ) | #1715, Lead Case #05 C 7097 |
| CHASE HOME FINANCE, LLC, and DOES 1-5, | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

**INTRODUCTION**

1.      Plaintiffs Calvin Brown and Dora Brown bring this action against a

"subprime" mortgage lender and its affiliates to rescind a mortgage and recover damages for

violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), implementing Federal

Reserve Board Regulation Z, 12 C.F.R. part 226; and state law.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331

(general federal question), 1337 (interstate commerce), 1367 (supplemental jurisdiction), and 15

U.S.C. §1640 (TILA).   Defendants transact business in the District and are deemed to reside

here.

**PARTIES**

3.      Plaintiffs Calvin Brown and Dora Brown own and reside in a single-family

1

home at 283 Cornell Avenue, Calumet City, IL 60409.

4.      Defendant Ameriquest Mortgage Company is a foreign corporation which maintains offices in and does business in Illinois.  Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.

5.      Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6.      Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

7.      Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8.      During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period.  Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States.  During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

9.      Defendant Chase Home Finance, LLC is a foreign corporation which does business in Illinois.  Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

10.     Defendant Chase Home Finance, LLC services some loans originated by Ameriquest Mortgage Company, including plaintiffs', and claims an interest in such loans, including the right to receive payments thereunder.  It is joined as a necessary party.

11.     Defendant JPMC Specialty Mortgage, LLC, formerly known as WM

2

Specialty Mortgage, LLC, is a foreign corporation which transacts business in Illinois. It holds

legal title to some loans originated by Ameriquest Mortgage Company, including plaintiffs'. Its

registered agent is Corporation Service Company, located at 84 State St., Boston, MA 02109.

## FACTS RELATING TO PLAINTIFFS

12.     Prior to Feb. 16, 2004, plaintiffs applied over the phone for a mortgage

with Ameriquest Mortgage Company. Plaintiff Dora Brown spoke to an Ameriquest employee

named "Brenda."

13.     Plaintiffs needed and used the loan for personal, family or household

purposes, namely, refinancing of prior debt incurred for such purposes.

14.     During the initial phone conversation, Brenda took plaintiffs' credit

information, then told Dora Brown that plaintiffs qualified for a fixed-rate loan

with an interest rate of 5.99%.

15.     The loan, in the principal amount of $130,000, was closed with plaintiff

Calvin Brown on Feb. 16, 2004, and with plaintiff Dora Brown on February 17, 2004.

16.     At the time of closing, Dora Brown was in Mississippi. Calvin Brown

signed the documents in Illinois, and then Ameriquest sent them to Dora Brown by overnight

mail.

17.     When she received the documents, Dora Brown realized that the loan

terms were being altered to plaintiffs' detriment, as set forth on Exhibit A. In particular, the

interest rate was increased from 5.99% to 7.55%, and the documents listed an adjustable rate

instead of a fixed rate.

18.     Dora Brown called Brenda before signing to ask why the terms had

changed. Brenda answered that plaintiffs did not have sufficient equity in their home to receive the 5.99% fixed rate.

19.     However, Ameriquest had pulled plaintiffs' credit reports and obtained sufficient financial information about the plaintiffs to evaluate the rate for which they qualified prior to quoting them the 5.99% rate.

20.     It was the policy and practice of Ameriquest Mortgage Company to engage in "bait and switch" loan solicitation practices, whereby one set of terms was initially quoted after Ameriquest had obtained sufficient information to provide an accurate quote, and then more onerous terms (such as a higher interest rate) were imposed immediately before the closing.

21.     The following are documents relating to the loan:

        a.      A note, Exhibit B;

        b.      A mortgage, Exhibit C;

        c.      A settlement statement, Exhibit D;

        d.      A Truth in Lending disclosure statement, Exhibit E;

        e.      The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit F;

        f.      A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, Exhibit G.

22.     Plaintiffs were also charged a 2.792% "loan discount" fee, amounting to $3,629.60 (Exhibit D, line 802).

23.     The "loan discount" was in addition to substantial other fees and charges, including a $626 "processing fee," a $360 "application fee," a $239 "administration fee," a $250

4

appraisal / property valuation fee, a $275 "settlement/ disbursement fee," a $70 "tax related service fee," a $16 "flood search fee," and a $60 "courier fee."   See Exhibit D.

24.     Plaintiffs were informed by Amerquest in Exhibit H that in exchange for the "loan discount" fee the interest rate on their loan was being reduced.  In fact, no "discount" in the interest rate was provided in exchange for the "loan discount" fee.

25.     Plaintiffs were later directed to make payments to AMC Mortgage Services, Inc., then to Citi Residential Lending, Inc., and most recently to Chase Home Finance, LLC.

26.     On information and belief, JPMC Specialty Mortgage, LLC, formerly known as WM Specialty Mortgage, LLC owns plaintiffs' loan.

27.     In the event JPMC Specialty Mortgage, LLC, formerly known as WM Specialty Mortgage, LLC does not own plaintiffs' loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## COUNT I  – TRUTH IN LENDING ACT

28.     Plaintiffs incorporate paragraphs 1-27.  This claim is against all defendants.

29.     Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be**

retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> **The right to rescind does not apply to the following:**

(1) **A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

(2) **A credit plan in which a state agency is a creditor.**

## GROUNDS FOR RESCISSION

30.     In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs's right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

31.     The delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

32.     Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

33.     Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

34.     In addition, the documents are dated as though the transaction took place February 16, 2004, although plaintiff Dora Brown did not see the documents until February 17, 2004.

35.     The misdating of these disclosures results in lack of clear and conspicuous

7

disclosure of the deadline to rescind, in violation of 15 U.S.C. §1635, §1638(a) and 12 C.F.R. §226.23(b)(5).

      36.    Notice of rescission has been given to defendants.  A copy is attached as Exhibit I.

      37.    The loan has not been rescinded.

      38.    Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

      39.    15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

      WHEREFORE, plaintiffs requests that the Court enter judgment in favor of plaintiffs and against defendants for:

      a.    A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

      b.    Statutory damages for the underlying disclosure violation;

      c.    If appropriate, statutory damages for failure to rescind;

      d.    Attorney's fees, litigation expenses and costs.

      e.    Such other or further relief as the Court deems appropriate.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

      40.    Plaintiffs incorporate paragraphs 1-27.   This claim is against Ameriquest

Mortgage Company.

41    Defendant Ameriquest Mortgage Company engaged in unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by:

a.    Engaging in "bait and switch" practices, by promising a 5.99% fixed-rate loan after acquiring sufficient financial information to underwrite the loan, and then switching plaintiffs to a 7.55% adjustable-rate loan immediately prior to closing;

b.    Charging a "loan discount" fee, representing (Exhibit H) that the purpose of the fee was to purchase a reduction in the interest rate, and then increasing rather than decreasing plaintiffs' rate.

42.    Ameriquest engaged in such practices in the course of trade and commerce.

43.    Ameriquest engaged in such practices for the purpose of inducing reliance on the part of borrowers, in the form of entering into the disadvantageous transactions.

44.    Plaintiffs were damaged as a result.

45.    Ameriquest's conduct was intentionally deceptive and malicious, warranting substantial punitive damages.

46.    Defendant violated the Residential Mortgage License Act of 1987 and implementing regulations.  The purpose of the Act is to "protect Illinois consumers seeking residential mortgage loans and to ensure that the residential mortgage lending industry is operating fairly, honestly and efficiently, free from deceptive and anti-competitive practices." 205 ILCS 635/1-2(b)(2005).  The implementing regulations, at 38 Ill. Adm. Code 1050.1230

9

(2005), create an affirmative disclosure obligation <u>when the lender changes the borrowers' loan terms mid-stream</u>:

> **§ 1050.1230 Changes Affecting Loans in Process.**
> **a) If it is determined that a borrower does not qualify for the loan amount, terms or program for which he or she applied and the costs of another recommended program would materially differ from the costs itemized on the Good Faith Estimate, the licensee immediately shall provide to the customer a written, and when possible, a verbal, plain-English explanation of any program the licensee recommends as one for which the borrower may be qualified. Such explanation shall include but not be limited to detailed information on costs to the borrower.**

47. The same regulations create an affirmative, general duty of good faith, defined as "honesty in fact in the conduct of the transaction." 38 Ill.Adm. Code 1050.1250(a)(2005). That duty is as follows: "[a]ny disclosure or action required by the Act or this Part shall be made in good faith." <u>Id</u>. Defendant did not provide or attempt to provide, prior to closing, any oral or written notice of the last minute change in plaintiffs' loan terms.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant Ameriquest Mortgage Company for the following relief:

    a. Compensatory and punitive damages;

    b. Attorney's fees, litigation expenses and costs.

    c. Such other or further relief as the Court deems appropriate.

## <u>COUNT III – BREACH OF CONTRACT</u>

48. Plaintiffs incorporate paragraphs 1-27.

49. This claim is against Ameriquest Mortgage Company.

50. Defendant undertook and contracted to lower plaintiffs' interest rate if

plaintiffs paid a loan discount fee.  <u>Exhibit H</u>.

    51.    Plaintiffs paid a loan discount of $3,629.60.  <u>Exhibit D</u>, line 802.

    52.    Defendant failed to lower plaintiffs' interest rate and, in fact, raised it from 5.99% to 7.55%.  <u>Exhibit A</u>.

    53.    Defendant thereby breached its contract.

    54.    Plaintiffs were damaged as a result.

    WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant for:

    a.    Appropriate damages;

    b.    Costs.

    c.    Such other or further relief as the Court deems appropriate.


<u>s/Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiffs demand trial by jury.

s/Daniel A. Edelman
Daniel A. Edelman

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on May 13, 2009, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Jonathan N. Ledsky
jledsky@vbhlc.com

Craig Allen Varga
cvarga@vbhlc.com

Bernard LeSage
blesage@buchalter.com

Chase Home Finance, LLC
c/o Registered Agent
C.T. Corporation System
208 S. LaSalle St.
Suite 814
Chicago, IL 60604

s/Daniel A. Edelman
Daniel A. Edelman

T:\16774\Pleading\2nd Amended Complaint_Pleading.wpd

# EXHIBIT A

Ameriquest Mortgage Company
9501 W. 144th Place, Suite 302
Orland Park, IL 60462

(708)403-0400

## BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

CALVIN BROWN
DORA M BROWN

Date: February 16, 2004

Notice: [X] Delivered [ ] Mailed

Loan Number: 0069107308 - 5530

Description of Credit Request:

283 CORNELL AVE
Calumet City, IL 60409

[X] 1st Trust Deed/Mortgage [ ] 2nd Trust Deed/Mortgage

[ ] Other: _____

Property Address: 283 CORNELL AVE

Calumet City, IL 60409          County of COOK

## TYPE OF TRANSACTION:

[ ] Purchase   [X] Refinance   Other _____

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [X] Fixed Rate Loan [ ] Adjustable Rate Loan | [X] Fixed Rate Loan [ ] Adjustable Rate Loan |
| Amount Financed: $ 120,636.05 | Amount Financed: $ 124,536.17 * |
| Settlement Charges: $ 7,238.95 (Includes all Prepaid Finance Charges) | Settlement Charges: $ 7,699.47 * (Includes all Prepaid Finance Charges) |
| Loan Amount: $ 126,875.00 | Loan Amount: $ 130,000.00 |
| Annual Percentage Rate: 6.450 % | Annual Percentage Rate: 7.979 %* |
| Term: 360 | Term: 360 |
| Initial Interest Rate: 5.990 % | Initial Interest Rate: 7.550 % |
| Margin: 0.000 % | Margin: 0.000 % |
| Prepayment Penalty: [ ] YES [X] NO | Prepayment Penalty: [ ] YES [X] NO |

Borrower(s) and Ameriquest Mortgage Company hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).



2-16-2004

Borrower CALVIN BROWN          Date          Borrower DORA M BROWN          Date

Borrower          Date          Borrower          Date

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.

0000006910730804040650101

STMTCD (Rev. 3/99)

# EXHIBIT B

Loan No. 0069107308 - 5530

# FIXED RATE NOTE

February 16, 2004        Orange        CA
[Date]                        [City]                   [State]

283 CORNELL AVE, Calumet City, IL 60409
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 130,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 7.550 %.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
    **(A)  Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   April 1, 2004.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on   March 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:   505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.

    **(B)  Amount of Monthly Payments**
My monthly payments will be in the amount of U.S. $913.44.

**4.  BORROWER'S RIGHT TO PREPAY**
I may repay this Note at any time without a penalty.

**5.  LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A)  Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of   fifteen   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B)  Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
    **(C)  Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.


0000000691073080300330201

1 of 2

Initials C B   ____   ____   ____

02/12/2004 8:55:24 AM

200-1UNIV (Rev. 7/03)

Loan No. 0069107308 - 5990

**(D)    No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E)    Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7.    GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

**9.    WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.
    If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED



_____ (Seal)
Borrower:    CALVIN BROWN
SSN:  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

_____ (Seal)
Borrower:    DORA M BROWN
SSN:  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

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

02/12/2004 8:55:24 AM

0000006910730830033020Z

200-2FIXED (Rev. 7/03)

# EXHIBIT C

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

      Ameriquest Mortgage Company
Prepared By:

Terrell Westbrook
9501 W. 144th Place, Suite
302,Orland Park, IL 60462

---

[Space Above This Line For Recording Data]

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated February 16, 2004
together with all Riders to this document.
(B) "Borrower" is CALVIN BROWN, A Married Man and DORA M BROWN, His Wife, As
Joint Tenants

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3014 1/01
02/12/2004 8:55:24              0069107308 - 5530

AM6IL (0311)
Page 1 of 15           Initials: CB
       VMP Mortgage Solutions (800)521-7291

0000006910730803012816010

Lender's address is 1100 Town and Country Road, Suite 200   Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated February 16, 2004
The Note states that Borrower owes Lender one hundred thirty thousand and 00/100
                                                                                                                Dollars
(U.S. $ 130,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than March 1, 2034
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

Initials: *CB*

AM6IL (0311)                                      Page 2 of 15                                      Form 3014   1/01

0069107308 - 5530

02/12/2004   8:55:24

0000006910730803012616602

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the County [Type of Recording Jurisdiction] of COOK [Name of Recording Jurisdiction]:

Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: 29-12-101-114-0000          which currently has the address of
283 CORNELL AVE                                                          [Street]
Calumet City
("Property Address"):                            [City], Illinois 60409          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

Initials: 

AM6IL (0311)                              Page 3 of 15                              Form 3014  1/01
02/12/2004 8:55:24 AM                    0069107308-5530

0000006910730030301261603

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver,

Initials:  *CB*

0069107308 - 5530

02/12/2004  8:55:24

0000006910730803012616604

Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Initials: 

0069107308 - 5530

02/12/2004  8:55:24

0000006910730803012816605

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

  **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

  If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

  All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

Initials:  _CB_

0069107308 - 5530

02/12/2004  8:55:24

00000069107308030128166

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: 

AM6IL (0311)                                  Page 7 of 15                                  Form 3014  1/01

0069107308 - 5530

02/12/2004  8:55:24

00000069107308503012816607

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

Initials: 

0069107308 - 5530

02/12/2004  8:55:24

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any

Initials: 

0069107308 - 5530

02/12/2004  8:55:24

0000006910730803012616609

Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: 

AM6IL (0311)  Page 10 of 15  Form 3014 1/01

0069107308-5530

02/12/2004 8:55:24

0000006910730603012061610

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Initials: 

AM6IL (0311)        Page 11 of 15        Form 3014  1/01

0069107308 - 5530

02/12/2004  8:55:24

00000069107308301261611

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: 

AM6IL (0311)                                  Page 12 of 15                                  Form 3014  1/01

0069107308 - 5530

02/12/2004  8:55:24

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

25. **Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.



Initials: _____

AM6IL (0311)                          Page 13 of 15                          Form 3014  1/01

0069107308 - 5530

02/12/2004  8:55:24

0000006910730803012616613

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____


_____ (Seal)
CALVIN BROWN                    -Borrower

_____

_____ (Seal)
DORA M BROWN                    -Borrower

_____ (Seal)              _____ (Seal)
                    -Borrower                                      -Borrower

_____ (Seal)              _____ (Seal)
                    -Borrower                                      -Borrower

_____ (Seal)              _____ (Seal)
                    -Borrower                                      -Borrower

AM6IL (0311)                    Page 14 of 15                    Form 3014  1/01
02/12/2004 8:55:24 AM                    0069107308 - 5530

STATE OF ILLINOIS, _Dupag_ County ss.:

I, _Carolina Serratos_ _____ a Notary
Public in and for said county and in said state, hereby certify that

_Calvin Brown_

_Dora M. Brown_

_____

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing
instrument, appeared before me this day in person, and acknowledged that he/she/they signed
and delivered the said instrument as his/her/their free and voluntary act, for the uses and
purposes therein set forth.

Given under my hand and official seal of this _16th day of February, 2004_

My Commission Expires:

_8-21-2007_                 _Carolina Serratos_
                            Notary Public

```
┌─────────────────────────────┐
│        OFFICIAL SEAL        │
│      CAROLINA SERRATOS      │
│ NOTARY PUBLIC, STATE OF ILLINOIS │
│ MY COMMISSION EXPIRES 8-21-2007 │
└─────────────────────────────┘
```

notarizing for
Calvin Brown



0000069107300301261615

400-15IL (4/02)          Page 15 of 15          0069107308 - 5530
                                            02/12/2004 8:55:24 AM

BORROWER NAME:

LOAN NUMBER:   0069107308 - 5530

## LEGAL DESCRIPTION

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:



0000006910730803012861616

LGL3LTR (08/03)

## Interest Rate, Payment Due,
## Fees Paid, and Prepayment Charge

Loan Number: 0069107308 - 5530

Borrower Name(s):   CALVIN BROWN
                    DORA M BROWN

**The loan you are signing today has the following terms:**
   - This loan has a **fixed interest rate** of 7.550% per year.
   - The amount you are borrowing, **the principal balance, is $ 130,000.00** .
   - This loan will last for a total of **360 months.**
   - The monthly payments due are:

| | |
|---|---|
| Principal and Interest Payment: | $ 913.44 |
| Amount of Escrow Payment: | $ 205.89 |
| Amount of Total Payment: | $ 1,119.33 |

which you must pay on the first day of each month, starting on **April 1, 2004.** Payments are due on the first day of every month after that date, until you have repaid all principal, interest, and other charges that may become due under the terms of the promises you make in the loan agreement you will sign.
   - **Ameriquest Mortgage Company will charge you $ 7,699.47 in total fees and points to get this mortgage loan. These fees** include $ 5,128.83 which go directly to Ameriquest Mortgage Company, and $ 2,570.64 which will be paid to others for services or fees due in connection with your loan. These fees will be financed and are included in the principal balance of your loan.

You may repay this loan at any time without a penalty.

By signing below, I/we hereby acknowledge reading and understanding all the information disclosed above, and having received a copy of this disclosure on the date indicated below.

_Calvin Brown_ _____         2-16-2004 _____
Borrower  CALVIN BROWN                          Date

_____         _____
Borrower  DORA M BROWN                          Date

_____         _____
Borrower                                        Date

_____         _____
Borrower                                        Date

853 (Rev. 08/03)

0000006910730804042960101

# EXHIBIT D

Transactions without Sellers

| | |
|---|---|
| Name & Address of Borrower: | Name & Address of Lender: |
| CALVIN BROWN    DORA M BROWN | Ameriquest Mortgage Company |
| | 9501 W. 144th Place, Suite 302 |
| 283 CORNELL AVE    Calumet City, IL 60409 | Orland Park, IL 60462 |
| Property Location: (if different from above) | Settlement Agent: |
| 283 CORNELL AVE, Calumet City, IL 60409 | TRISTAR TITLE, LLC |
| | Place of Settlement: 1301 WEST 22ND STREET, SUITE 101 OAK BROOK, IL 60523 |

**L.    Settlement Charges**

| 800. Items Payable in Connection with Loan | | Loan Number: 0069107308 - 5530 | | Settlement Date: Estimated 02/23/2004 |
|---|---|---|---|---|
| 801. Loan origination fee    % to | | | | |
| 802. Loan discount  2.792 % to  Ameriquest Mortgage Company | $3,629.60 | **M.    Disbursement to Others** | | |
| 803. Apprsl/Prop Val to ED MCGOLDRICK | $250.00 | 1501. PROVIDIAN | (W) | $5,499.00 |
| 804. Credit report to | | | | |
| 805. Inspection fee to | | 1502. HFC | (W) | $5,000.00 |
| 806. | | | | |
| 807. | | 1503. CAPITAL 1 BK RECOVERY | (W) | $1,301.00 |
| 808. Yield Spread Premium to | | | | |
| 809. | | 1504. PROVIDIAN | (W) | $5,646.00 |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | $70.00 | | | |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | 1505. PROVIDIAN | (W) | $11,285.00 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $626.00 | | | |
| 813.Admin to Ameriquest Mortgage Company | $239.00 | 1506. ABN / Stand Fed Bk | (W) | $90,311.26 |
| 814. Doc. Prep. Fee to | | | | |
| 815. Credit Report Fee to | | 1507. CAPITAL 1 BK RECOVERY | (W) | $960.00 |
| 816. Origination Fee    % to | | | | |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | 1508. COOK COUNTY TREASURER | (W) | $1,704.72 |
| 818. Underwriting Fee to | | | | |
| 819. Service Provider Fee to | | 1509. | | |
| 820. Processing Fee to | | | | |
| 821. Underwriting Fee to | | 1510. | | |
| 822. Appraisal Fee to | | | | |
| **900. Items Required by Lender to be Paid in Advance** | | 1511. | | |
| 901. Interest from 02/23/2004  to  03/01/2004  @  $26.89  per day | $188.23 | | | |
| 902. Mortgage insurance premium for          months to | | 1512. | | |
| 903. Hazard ins prem to | $0.00 | | | |
| 904. Flood Ins prem to | | 1513. | | |
| **1000. Reserves Deposited with Lender** | | | | |
| 1001. Hazard insurance  12  months @ $  63.83  per month | $765.96 | 1514. | | |
| 1002. Mortgage insurance      months @ $      per month | | | | |
| 1003. Earthquake ins      months @ $      per month | | 1515. | | |
| 1004. County prop. taxes  3  months @ $  142.06  per month | $426.18 | | | |
| 1005. Annual assess.      months @ $      per month | | | | |
| 1006. Flood      months @ $      per month | | 1520. TOTAL DISBURSED (enter on line 1603) | | $121,706.98 |
| 1007. Windstorm ins      months @ $      per month | | | | |
| 1008. | | Total Wire:    $123,679.03 | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee to | | | | |
| 1102. Abstract or title search to  TRISTAR TITLE COMPANY | $75.00 | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| 1108. Title Insurance to  TRISTAR TITLE COMPANY | $655.00 | | | |
| 1109. Lender's coverage          $655.00 | | | | |
| 1110. Owner's coverage          $ | | | | |
| 1111. Settlement/Disbursement fee to  TRISTAR TITLE | $275.00 | | | |
| 1112. Escrow Fee to | | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording fees | $63.50 | | | |
| 1202. City/county tax/stamps | | **N.    NET SETTLEMENT** | | |
| 1203. State tax/ stamps | | | | |
| 1204. State specific fee | | | | |
| 1205. State specific fee | | 1600. Loan Amount | | 130,000.00 |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Demand to | | 1601. Plus Cash/ Check from Borrower | | |
| 1302. Pest inspection to | | | | |
| 1303. Survey Fee | | 1602. Minus Total Settlement Charges (line 1400) | | $7,699.47 |
| 1304. Staff Appraiser Fee | | | | |
| 1305. Reconveyance Fee to | | 1603. Minus Total Disbursements to Others (line 1520) | | $121,706.98 |
| 1306. | | | | |
| 1307. Property Val Fee to | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | | $593.55 |
| 1308. Courier Fee | $60.00 | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | $7,699.47 | | | |


00000069107308030517020

Borrower(s) Signature(s):

X _Calvin Brown_

| Approved for Funding By: | Approved: | Branch:  Orland Park, IL 60462 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 0.35 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Reports Management Officer, Office of Information Policies and Systems, U.S. Department of Housing and Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget, Paperwork Reduction Project (2502-0491), Washington, D.C. 20503. Do not send this completed form to either of these addressees.

## Instructions for completing form HUD-1A

**Note:** This form is issued under authority of the Real Estate Settlement Procedures Act (RESPA). 12 U.S.C. 2601 et seq. The regulation for RESPA is Regulation X, codified as 24 CFR 3500, and administered by the Department of Housing and Urban Development (HUD). Regulation Z referred to in the next paragraph is the regulation implementing the Truth in Lending Act (TILA), 15 U.S.C. 1601 et seq. and codified as 12 CFR part 226.

HUD-1A is an optional form that may be used for refinancing and subordinate lien federally related mortgage loans, as well as for any other one-party transaction that does not involve the transfer of title to residential real property. The HUD-1 form may also be used for such transactions, by utilizing the borrower's side of the HUD-1 and following the relevant parts of the instructions set forth in Appendix A of Regulation X. The use of either the HUD-1 or HUD-1A is not mandatory for open-end lines of credit (home-equity plans), as long as the provisions of Regulation Z are followed.

## Background

The HUD-1A settlement statement is to be used as a statement of actual charges and adjustments to be given to the borrower at settlement. The instructions for completion of the HUD-1A are for the benefit of the settlement agent who prepares the statement; the instructions are not a part of the statement and need not be transmitted to the borrower. There is no objection to using the HUD-1A in transactions in which it is not required, and its use in open-end lines of credit transactions (home-equity plans) is encouraged. It may not be used as a substitute for a HUD-1 in any transaction in which there is a transfer of title and a first lien is taken as security.

Refer to the "definitions" section of Regulation X for specific definitions of terms used in these instructions.

## General Instructions

Information and amounts may be filled in by typewriter, hand printing, computer printing, or any other method producing clear and legible results. Additional pages may be attached to the HUD-1A for the inclusion of customary recitals and information used locally for settlements or if there are insufficient lines on the HUD-1A.

The settlement agent shall complete the HUD-1A to itemize all charges imposed upon the borrower by the lender, whether to be paid at settlement or outside of settlement, and any other charges that the borrower will pay for at settlement. In the case of "no cost" or "no point" loans, these charges include any payments the lender will make to affiliated or independent settlement service providers relating to this settlement. These charges shall be included on the HUD-1A, but marked "P.O.C." for "paid outside of closing," and shall not be used in computing totals. Such charges also include indirect payments or back-funded payments to mortgage brokers that arise from the settlement transaction. When used, "P.O.C." should be placed in the appropriate lines next to the identified item, *not in the columns themselves.*

Blank lines are provided in Section L for additional settlement charges. Blank lines are also provided in Section M for recipients of all or portions of the loan proceeds. The names of the recipients of the settlement charges in Section L and the names of the recipients of the loan proceeds in Section M should be set forth on the blank lines.

## Line item instructions

The identification information at the top of the HUD-1A should be completed as follows:

The borrower's name and address is entered in the space provided. If the property securing the loan is different from the borrower's address, the address or other location information on the property should be entered in the space provided. The loan number is the lender's identification number for the loan. The settlement date is the date of settlement in accordance with §3500.2 of Regulation X, not the end of any applicable rescission period. The name and address of the lender should be entered in the space provided.

**Section L. Settlement Charges.** This section of the HUD-1A is similar to section L of the HUD-1, with the deletion of lines 700 through 704, relating to real estate broker commissions. The instructions for filling out the HUD-1 as set forth in Appendix A of Regulation X proved additional information regarding Section L, if needed.

**Line 1400** in the HUD-1A is for the total settlement charges charged to the borrower. Enter this total on line 1602 as well. This total should include Section L amounts from additional pages, if any are attached to this HUD-1A.

**Section M. Disbursement to Others.** This section is used to list payees, other than the borrower, of all or portions of the loan proceeds (including the lender, if the loan is paying off a prior loan made by the same lender), when the payee will be paid directly out of the settlement proceeds. It is not used to list payees of settlement charges, nor to list funds disbursed directly to the borrower, even if the lender knows the borrower's intended use of the funds.

For example, in a refinancing transaction, the loan proceeds are used to pay off an existing loan. The name of the lender for the loan being paid off and the pay-off balance would be entered in Section M. In a home improvement transaction when the proceeds are to be paid to the home improvement contractor, the name of the contractor and the amount paid to the contractor would be entered in Section M. In a consolidation loan, or when part of the loan proceeds is used to pay off other creditors, the name of each creditor and the amount paid to that creditor would be entered in Section M. If the proceeds are to be given directly to the borrower and the borrower will use the proceeds to pay off existing obligations, this would not be reflected in Section M.

**Section N. Net Settlement.** Line 1600 normally sets forth the principal amount of the loan as it appears on the related note for this loan. In the event this form is used for an open-ended home equity line whose approved amount is greater than the initial amount advanced at settlement, the amount shown on Line 1600 will be the loan amount advanced at settlement. Line 1601 is used for all settlement charges that are both included in the totals for lines 1400 and 1602 and are not financed as part of the principal amount of the loan. This is the amount normally received by the lender from the borrower at settlement, which would occur when some or all of the settlement charges were paid in cash by the borrower at settlement, instead of being financed as part of the principal amount of the loan. Failure to include any such amount in line 1601 will result in an error in the amount calculated on line 1604. P.O.C. amounts should not be included in line 1601.

**Line 1602** is the total amount from line 1400.
**Line 1603** is the total amount from line 1520.
**Line 1604** is the amount disbursed to the borrower. This is determined by adding together the amounts for lines 1600 and 1601, and then subtracting any amounts listed on lines 1602 and 1603.

Branch: Orland Park, IL 60462

Loan Number: 0069107308 - 5530

0000006910730803051702202

D1A1 (Rev. 5/00)

# EXHIBIT E

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER:Ameriquest Mortgage Company
9501 W. 144th Place, Suite 302
Orland Park, IL 60462
(708)403-0400

☐ Preliminary     [X] Final

Broker License:

Borrowers:CALVIN BROWN    DORA M BROWN

Type of Loan:  FIXED RATE
Date:  February 16, 2004

Address:    283 CORNELL AVE
City/State/Zip:  Calumet City,IL 60409

Loan Number:  0069107308 - 5530

Property:    283 CORNELL AVE, Calumet City, IL  60409

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.979          % | $  204,293.91 | $  124,536.17 | $  328,830.08 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $913.44 | 04/01/2004 | | | |
| 1 | $905.12 | 03/01/2034 | | | |

VARIABLE RATE FEATURE:
☐ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at: 283 CORNELL AVE, Calumet City, IL  60409

ASSUMPTION:  Someone buying this property  [X] cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES:  If a payment is late, you will be charged  5.000%  of the overdue payment .

PREPAYMENT:  If you pay off your loan early, you
☐ may  [X] will not  have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Calvin Brown_          2-16-2004
Borrower CALVIN BROWN          Date          Borrower DORA M BROWN          Date

Borrower          Date          Borrower          Date

TIL1 (Rev. 7/01)

00000069107308030575010 1

ORIGINAL COPY

02/12/2004 8:55:24 AM

## TRUTH-IN-LENDING DISCLOSURE STATEMENT

### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Ameriquest Mortgage Company
     9501 W. 144th Place, Suite 302
     Orland Park, IL 60462
     (708)403-0400

☐ Preliminary    ☒ Final

Broker License:

Borrowers: CALVIN BROWN    DORA M BROWN

Type of Loan: FIXED RATE
Date: February 16, 2004

Address: 283 CORNELL AVE
City/State/Zip: Calumet City, IL 60409

Loan Number: 0069107308 - 5530

Property: 283 CORNELL AVE, Calumet City, IL 60409

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.979 % | $ 204,293.91 | $ 124,536.17 | $ 328,830.08 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $913.44 | 04/01/2004 | | | |
| 1 | $905.12 | 03/01/2034 | | | |

VARIABLE RATE FEATURE:
☐ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 283 CORNELL AVE, Calumet City, IL 60409

ASSUMPTION: Someone buying this property ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE: You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES: If a payment is late, you will be charged 5.000% of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
☐ may   ☒ will not   have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Calvin Brown_    2-16-2004
Borrower CALVIN BROWN    Date

Borrower DORA M BROWN    Date

Borrower    Date

Borrower    Date

TIL1 (Rev. 7/01)

00000069107308030575010 1

**BORROWER COPY**

02/12/2004 8:55:24 AM

# EXHIBIT F

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:  February 16, 2004
LOAN NO.:   0069107308 - 5530
TYPE:   FIXED RATE

BORROWER(S): CALVIN BROWN          DORA M BROWN

ADDRESS:          283 CORNELL AVE
CITY/STATE/ZIP:   Calumet City, IL 60409

PROPERTY:   283 CORNELL AVE
            Calumet City, IL  60409

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

2-16-04

or

2.   The date you received your Truth in Lending disclosures;
     or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1100 Town and Country Road, Suite 200**
**Orange, CA 92868**

ATTN:  FUNDING
PHONE: (714)541-9960
FAX:     (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

2-19-04

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____        _____
SIGNATURE                                DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

    2-16-2004

BORROWER/OWNER CALVIN BROWN          Date          BORROWER/OWNER DORA M BROWN          Date

BORROWER/OWNER          Date          BORROWER/OWNER          Date

1064-NRC (Rev 11/03)

0000006910730004000050101

**BORROWER COPY**

02/12/2004 8:55:24 AM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   February 16, 2004
LOAN NO.:   0069107308 - 5530
TYPE:   FIXED RATE

BORROWER(S): CALVIN BROWN        DORA M BROWN

ADDRESS:        283 CORNELL AVE
CITY/STATE/ZIP:   Calumet City, IL 60409

PROPERTY:   283 CORNELL AVE
                Calumet City,  IL  60409

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.    The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| :---: |
| 2-16-04 |

   or
2.    The date you received your Truth in Lending disclosures;
   or
3.    The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1100 Town and Country Road, Suite 200**
**Orange, CA 92868**

ATTN:  FUNDING
PHONE:  (714)541-9960
FAX:      (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| :---: |
| 2-19-04 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____                    _____
SIGNATURE                                                            DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

*Calvin Brown*           2-16-2004
_____              _____
BORROWER/OWNER CALVIN BROWN        Date       BORROWER/OWNER DORA M BROWN           Date


_____              _____
BORROWER/OWNER                           Date       BORROWER/OWNER                           Date

1064-NRC (Rev 11/03)

0000006910730804000050101

**BORROWER COPY**

02/12/2004 8:55:24 AM

## NOTICE OF RIGHT TO CANCEL

LENDER:  Ameriquest Mortgage Company

DATE:  February 16, 2004
LOAN NO.:  0069107308 - 5530
TYPE:  FIXED RATE

BORROWER(S): CALVIN BROWN        DORA M BROWN

ADDRESS:        283 CORNELL AVE
CITY/STATE/ZIP:  Calumet City, IL 60409

PROPERTY:  283 CORNELL AVE
                 Calumet City,  IL  60409

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

*2-16-04*

or
2.  The date you received your Truth in Lending disclosures;
or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1100 Town and Country Road, Suite 200**
**Orange, CA 92868**

ATTN:  FUNDING
PHONE:  (714)541-9960
FAX:      (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

*2-19-04*

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE                                        DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

  2-16-2004
BORROWER/OWNER CALVIN BROWN              Date        BORROWER/OWNER DORA M BROWN              Date

_____          _____
BORROWER/OWNER                              Date        BORROWER/OWNER                              Date

064-NRC (Rev 11/03)

0000006910730804005010 1

**BORROWER COPY**

02/12/2004 8:55:24 AM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:  February 16, 2004
LOAN NO.:   0069107308 - 5530
TYPE:   FIXED RATE

BORROWER(S): CALVIN BROWN      DORA M BROWN

ADDRESS:      283 CORNELL AVE
CITY/STATE/ZIP:    Calumet City,IL 60409

PROPERTY:   283 CORNELL AVE
            Calumet City, IL  60409

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

    **ENTER DOCUMENT SIGNING DATE**

    _2-16-04_

    or
2.  The date you received your Truth in Lending disclosures;
    or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**          ATTN:  FUNDING
**1100 Town and Country Road, Suite 200**  PHONE: (714)541-9960
**Orange, CA 92868**                       FAX:   (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**

_2-19-04_

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____          _____
SIGNATURE                                 DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_Calvin Brown_        _2-16-2004_
_____  _____     _____  _____
BORROWER/OWNER CALVIN BROWN      Date          BORROWER/OWNER  DORA M BROWN       Date

_____  _____     _____  _____
BORROWER/OWNER                   Date          BORROWER/OWNER                    Date

1004-NRC (Rev 11/03)                                        **BORROWER COPY**

00000069107308400050101

02/12/2004 8:55:24 AM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:  February 16, 2004
LOAN NO.:   0069107308 - 5530
TYPE:   FIXED RATE

BORROWER(S): CALVIN BROWN      DORA M BROWN

ADDRESS:       283 CORNELL AVE
CITY/STATE/ZIP:   Calumet City,IL 60409

PROPERTY:   283 CORNELL AVE
                     Calumet City,  IL  60409

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
|---|
| 2-16-04 |

;

or

2.   The date you received your Truth in Lending disclosures;
   or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200
Orange, CA 92868**

ATTN:  FUNDING
PHONE: (714)541-9960
FAX:      (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
|---|
| 2-19-04 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____                          _____
SIGNATURE                                                      DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

   2-16-2004

BORROWER/OWNER CALVIN BROWN              Date          BORROWER/OWNER  DORA M BROWN          Date

BORROWER/OWNER                                     Date          BORROWER/OWNER                                     Date

1064-NRC (Rev 11/03)
0000006910730804000050101

**LENDER COPY**

02/12/2004 8:55:24 AM

# EXHIBIT G

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0069107308 - 5530          Borrower(s): CALVIN BROWN
Date: February 16, 2004                                      DORA M BROWN

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1100 Town and Country Road, Suite 200  Orange, CA 92868
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.



_____                    2-16-2004
Borrower/Owner  CALVIN BROWN                          Date

_____          _____
Borrower/Owner  DORA M BROWN                          Date

_____          _____
Borrower/Owner                                        Date

_____          _____
Borrower/Owner                                        Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____          _____
Borrower/Owner Signature                              Date

---

02/12/2004 8:55:24 AM

**LENDER COPY**

850 (10/00)

0000069107308040422010\1

## ONE WEEK CANCELLATION PERIOD

Loan Number: 0069107308 - 5530          Borrower(s): CALVIN BROWN
Date: February 16, 2004                              DORA M BROWN

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1100 Town and Country Road, Suite 200  Orange, CA 92868
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.



_____          2-16-2004
Borrower/Owner  CALVIN BROWN                    Date


_____          _____
Borrower/Owner  DORA M BROWN                    Date


_____          _____
Borrower/Owner                                          Date


_____          _____
Borrower/Owner                                          Date

---

### REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____          _____
Borrower/Owner Signature                            Date

---

                                                02/12/2004 8:55:24 AM

00000069107308040422010l

**BORROWER COPY**

850 (10/00)

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0069107308 - 5530          Borrower(s): CALVIN BROWN
Date: February 16, 2004                           DORA M BROWN

You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason. This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you. No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200  Orange, CA 92868
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          2-16-2004
Borrower/Owner  CALVIN BROWN            Date

_____          _____
Borrower/Owner  DORA M BROWN            Date

_____          _____
Borrower/Owner                          Date

_____          _____
Borrower/Owner                          Date

## REQUEST TO CANCEL
I/We want to cancel loan # _____.

_____          _____
Borrower/Owner Signature                Date

02/12/2004 8:55:24 AM

850 (10/00)

**BORROWER COPY**

## ONE WEEK CANCELLATION PERIOD

Loan Number: 0089107308 - 5530      Borrower(s): CALVIN BROWN
Date:  February 16, 2004                 DORA M BROWN

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.**  This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make.  To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.**  No money will be disbursed before 10:00 a.m. on the first business day after this period expires.  Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends.  You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan.  The written statement must be signed and dated by any one borrower.  Your request must be delivered to:

      Ameriquest Mortgage Company
       1100 Town and Country Road, Suite 200  Orange, CA 92868
      ATTN: Funding Department
      Phone: (714)541-9960
      Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_Calvin Brown_ _____      _2-16-2004_ _____
Borrower/Owner  CALVIN BROWN         Date

_____      _____
Borrower/Owner  DORA M BROWN         Date

_____      _____
Borrower/Owner                    Date

_____      _____
Borrower/Owner                    Date

### REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____      _____
Borrower/Owner Signature             Date

0000008910730804042220101

02/12/2004 8:55:24 AM

**BORROWER COPY**

859 (10/00)

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0069107308 - 5530          Borrower(s): CALVIN BROWN
Date: February 16, 2004                              DORA M BROWN

**You have the right under Federal or state law to three (3) business days during which you can
cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have
received today.
Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important
financial decisions you can make. To give you more time to study your loan documents, obtain
independent advice and/or shop for a loan that you believe suits you better, **we provide you with
one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to
you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires.
Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of
the following Monday.
If you want to cancel, you must do so in writing and we must receive your request before midnight on the
day the cancellation period ends. You may cancel by signing and dating in the request to cancel box
below or by using any other written statement that provides your loan number and states your desire to
cancel your loan. The written statement must be signed and dated by any one borrower. Your request
must be delivered to:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200  Orange, CA 92868
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand
what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _2-16-2004_____
Borrower/Owner  CALVIN BROWN                          Date

_____          _____
Borrower/Owner  DORA M BROWN                          Date

_____          _____
Borrower/Owner                                                    Date

_____          _____
Borrower/Owner                                                    Date

---

## REQUEST TO CANCEL
I/We want to cancel loan #_____.

_____          _____
Borrower/Owner Signature                               Date

---

00000069107308040422010

850 (10/00)

02/12/2004 8:55:24 AM

**BORROWER COPY**

# EXHIBIT H

Ameriquest Mortgage Company

| Borrower Name: CALVIN BROWN | Loan Number: 0069107308 - 5530 |
|---|---|
| Borrower Name: DORA M BROWN | Property Address: 283 CORNELL AVE<br>Calumet City, IL 60409 |

## UNDERSTANDING YOUR OPTIONS REGARDING
## INTEREST RATES AND DISCOUNT POINTS

The interest rate (or initial interest rate in the case of an adjustable rate mortgage) and discount points on your loan are related to each other. A "discount point" is a one-time fee that equals one (1) percent of the loan amount that lowers the interest rate of the loan. So, on a $100,000 loan, "1" discount point is $1,000. You can obtain a lower interest rate by taking a loan with additional discount points, or have fewer discount points in return for a higher interest rate.

Please ask about our current discount point/rate exchange ratio. The following is intended as an example to illustrate how our discount point/rate exchange works; it may not be reflective of the exchange ratio available at this time.

In this example, to reduce your interest rate by 1 percentage point, you would be charged an additional 1.6 discount points. The following example shows how your options work.







    * The terms of your loan may be different from the above example. Other factors influence rate, such as how much income documentation you provide and whether you elect to have a prepayment charge on your loan.

Think carefully about what you want to do and consult a financial advisor. A discount point lowers the interest rate but *not* necessarily the overall cost of the loan. A lower rate may be a good choice if you don't plan to sell or refinance for some time. On the other hand, you might not want to have additional discount points if you think you'll sell or refinance soon. Your account executive can give you more information about the options available to you and the exact terms of your loan.



0000069107308040593010 1

854 (Rev. 09/24/03)

**Ameriquest Mortgage Company**

**Summary of Debts and Disbursements**
(Refinance Loans Only)

Borrower: CALVIN BROWN   DORA M BROWN

Date: February 16, 2004
Branch:
Orland Park, IL

Loan Number:   0069107308 - 5530

| Fees | | |
|---|---|---|
| Loan Discount Fee | 2.792 | $3,629.60 |
| Lender Retained Fees | | $1,311.00 |
| Prepaid Interest | | $188.23 |
| Fees Paid to Others | | $2,570.64 |

Short to Close

Total Payoffs      $121,706.98

Cash to Borrower      $593.55

| Total Points & Fees | $7,699.47 |
|---|---|

| CREDITORS DEBTS | BALANCE | PAYOFFS | PAYMENTS |
|---|---|---|---|
| DISCOVER FIN | $0.00 | | $81.00 |
| Hh Bank | $3,291.00 | | $74.00 |
| SM SERVICING | $452.00 | | $25.00 |
| PROVIDIAN | | $5,499.00 | |
| HFC | | $5,000.00 | |
| ALLIAN COLL | $164.00 | | $5.00 |
| AMER GEN FIN | $707.00 | | $102.00 |
| SALLIE MAE-FFELP | $452.00 | | $25.00 |
| SALLIE MAE-FFELP | $759.00 | | $42.00 |
| CAPITAL 1 BK RECOVERY | | $1,301.00 | |
| EXNMBLE/MBGA | $388.00 | | $39.00 |
| CBUSASEARS | $490.00 | | $10.00 |
| PROVIDIAN | | $5,646.00 | |
| PROVIDIAN | | $11,285.00 | |
| ABN / Stand Fed Bk | $109,030.00 | | |
| ABN / Stand Fed Bk | | $90,311.26 | |
| CAPITAL 1 BK RECOVERY | | $960.00 | |
| SM SERVICING | $759.00 | | $42.00 |
| COOK COUNTY TREASURER | | $1,704.72 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |



D&D (Rev.01/02)

Total Payments:      $445.00

# EXHIBIT I

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
### Chicago, Illinois  60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email:  edcombs@aol.com
### www.edcombs.com

May 1, 2006

**BY CERTIFIED MAIL**

Ameriquest Mortgage Company
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

AMC  Mortgage Services, Inc.
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606.

Ameriquest Mortgage Securities, Inc.
1100 Town & Country Road, Suite 1100
Orange, CA 92868

> Re:   Notice of rescission, claim and lien, Calvin Brown and Dora Brown,
> 283 Cornell Avenue, Calumet City, IL  60409,  loan of Feb. 16, 2004

Ladies/Gentlemen:

Each of the above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than Ameriquest Mortgage Company or Ameriquest Mortgage Securities, Inc., please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on May 1, 2006.

_____

Daniel A. Edelman