**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID E. LANDGREN, | ) | |
| | ) | 06 C 6766 |
| Plaintiff, | ) | |
| | ) | (Originally 06 C 696 (W.D. Mich.)) |
| v. | ) | |
| | ) | (Transferred to Judge Aspen for |
| ARGENT MORTGAGE COMPANY, LLC, | ) | pretrial proceedings under MDL |
| AMERIQUEST MORTGAGE COMPANY, | ) | #1715, Lead Case #05 C 7097) |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY, N.A., as Trustee of ARGENT | ) | |
| SECURITIES, INC., Asset Backed Pass-Through | ) | |
| Certificates, Series 2004-W6 Under the Pooling & | ) | |
| Servicing Agreement Dated as of April 1, 2004, | ) | |
| Without Recourse, AMERICAN HOME | ) | |
| MORTGAGE SERVICING, INC., EXECUTIVE | ) | |
| APPRAISALS, INC., GREAT LAKES | ) | |
| MORTGAGE COMPANY, LLC, and DOES 1-5, | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

### INTRODUCTION

1.      Plaintiff David E. Landgren brings this action to rescind a residential

mortgage and recover damages for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq.

("TILA"), implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226 and state law.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331

(general federal question), 1337 (interstate commerce), 1367 (supplemental jurisdiction) and 15

U.S.C. §1640 (TILA).   Defendants transact business in the District and are deemed to reside

here.

1

3.    Venue is proper because each defendant does business in the District.

## PARTIES

4.    Plaintiff David E. Landgren owns and resides in a home at 4255 Buttrick, Ada, MI 49301.

5.    Defendant Argent Mortgage Company, LLC ("Argent") is a foreign corporation which maintains offices in and does business in Michigan.  Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823.

6.    Defendant Argent Mortgage Company, LLC is engaged in the business of originating "subprime" mortgages.

7.    Defendant Argent Mortgage Company, LLC makes more than 26 loans per year.

8.    Defendant Argent Mortgage Company, LLC is a "creditor" as defined in TILA and Regulation Z.

9.    Defendant Argent Mortgage Company, LLC is an affiliate of Ameriquest Mortgage Company.

10.    Defendant Ameriquest Mortgage Company is a foreign corporation which maintains offices in and does business in Michigan.  Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823.

11.    During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period.  Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States.  During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same

period in 2003.

12. Defendant American Home Mortgage Servicing, Inc. ("AHMSI") is a foreign corporation which does business in Illinois and Michigan. Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

13. Defendant American Home Mortgage Servicing, Inc. services some loans originated by Ameriquest Mortgage Company, including plaintiffs', and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

14. Defendant Deutsche Bank National Trust Company, N.A., is a federally chartered bank located at 60 Wall Street, New York, NY 10005. On information and belief it holds legal title to plaintiffs' loan, as trustee.

15. Defendant Argent Securities, Inc., an affiliate of Argent Mortgage Company, LLC, is a foreign corporation which transacts business in Michigan. It is the beneficial owner of some loans originated by Argent Mortgage Company, LLC, including plaintiff's. Its registered agent is National Registered Agents, Inc., 2030 Main St., Suite 1030, Irvine, CA 92614.

16. Defendant Executive Appraisals, Inc. ("Executive Appraisals") is a Michigan corporation with its principal office at 3746 Milan SW, Wyoming, MI 49509. It is engaged in the business of appraising properties. Michael R. Gray is the registered agent for defendant Executive Appraisals, Inc.

17. Defendant Great Lakes Mortgage Company, LLC, is a Michigan corporation. Its registered agent is David P. Delaat II, and its registered address is 2180 44th St. S.E., 3rd Floor, Kentwood, MI 49508.

## FACTS RELATING TO PLAINTIFF

18.     Prior to October 31, 2003, plaintiff applied for a mortgage refinance loan through defendant Great Lakes, with Argent Mortgage Company, LLC.

19.     Because Great Lakes received a yield spread premium from Argent (Exhibit H, line 811), its actions are attributable to Argent.

20.     At all relevant times, plaintiff spoke to Great Lakes employee Autrey Stirgus.

21.     Prior to closing, Mr. Stirgus told plaintiff over the phone that his interest rate through Argent would be 8.5%.

22.     Prior to September 23, 2003, Great Lakes ordered an appraisal of plaintiff's residence and property.  Great Lakes arranged for defendant Executive Appraisals, Inc., to perform the appraisal.

23.     Contrary to the report generated by Executive Appraisals, Michael R. Gray did not appraise the plaintiff's residence.  Exhibit F.  Instead, a young female agent from Executive Appraisals appraised Mr. Landgren's residence on or about September 24, 2003 and prepared the written appraisal report on or about September 25, 2003.  Exhibit F.

24.     According to the Executive Appraisal report, the appraised value of plaintiff's home at that time was $182,000.  Exhibit F.

25.     On information and belief, the reported appraised value was substantially and artificially inflated by Executive Appraisals, for the purpose of increasing the loan amount plaintiff would qualify for, which ultimately increased  the broker's fees and the lender's points, interest and profits, as further detailed below.

4

26.     Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

27.     The loan was closed on October 31, 2003.

28.     Plaintiff closed the loan at a title company office.  On information and belief, no representative of Argent or Great Lakes was present.

29.     During the closing, plaintiff was informed that the loan terms were being altered to his detriment, as set forth on Exhibit A.

30.     Plaintiff protested when he noticed that his interest rate had risen from 8.5% to 9.25%.  The closing agent placed a phone call to Autrey Stirgus to ask for an explanation.

31.     Mr. Stirgus then claimed that he had "meant" to tell plaintiff that Great Lakes and/or Argent had needed to raise the interest rate.

32.     The following are documents relating to the loan:

    a.     A note, Exhibit B;

    b.     A mortgage, Exhibit C;

    c.     A Truth in Lending statement, Exhibit D;

    d.     The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit E; and

    e.     An appraisal report, conducted by an agent of Executive Appraisals; Exhibit F.

33.     The notices of right to cancel furnished to plaintiff (Exhibit E) were incomplete in that they did not have the signing and cancellation dates filled in, in violation of 12

5

C.F.R. § 226.23(b)(5).

34.     Plaintiff was later directed to make payments to Ameriquest Mortgage Company and AMC Mortgage Services, Inc.  Plaintiff was subsequently directed to make payments to Citi Residential Lending, Inc, and most recently, in 2009, plaintiffs was directed to make payments to American Home Mortgage Servicing, Inc.

35.     In the summer of 2005, plaintiff attempted to refinance the loan, and a new appraisal was done which valued the property at approximately $30,000 less than the appraisal done in conjunction with Great Lakes and Argent Mortgage Company, LLC.

36.     When contacted about the different appraisals, Executive Appraisals, Inc. said that plaintiff's home was compared with other nearby properties which had amenities that plaintiff's home did not, including waterfront property and more bedrooms and bathrooms.

37.     On information and belief, Deutsche Bank National Trust Company, N.A. holds legal title to plaintiffs' loan, as Trustee.  Argent Securities, Inc., is the beneficial owner of plaintiffs' loan under Asset Backed Pass-Through Certificates, Series 2004-W6 Under the Pooling & Servicing Agreement Dated as of April 1, 2004, Without Recourse.

38.     In the event that Argent Securities, Inc., does not own plaintiff's loan or Deutsche Bank National Trust Company, N.A. does not hold title, (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## COUNT I – TILA

39.     Plaintiff incorporates paragraphs 1-38.

40.     This claim is against Argent, Ameriquest Mortgage Company, AHMSI, and Argent Securities, Inc.

## RIGHT TO RESCIND

41.     Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**

**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

7

**(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(2) The consumer's right to rescind the transaction.**

**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(4) The effects of rescission, as described in paragraph (d) of this section.**

**(5) The date the rescission period expires. . . .**

**(f)** <u>Exempt transactions.</u> **The right to rescind does not apply to the following:**

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

42.     In connection with the loan, Argent failed to provide the required

disclosures of the plaintiff's right to cancel within three days, in violation of 15 U.S.C. §1635

and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

43.     Plaintiff did not receive two completed notices of the right to cancel.

44.     Notice of rescission has been given to defendants.  A copy is attached as

<u>Exhibit G</u>.

45.     The loan has not been rescinded.

46.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against

any assignee.

47.     15 U.S.C. §1635(g) provides:

**Additional relief**

8

> In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

      a.    A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on defendants;

      b.    Statutory damages for the underlying disclosure violation;

      c.    If appropriate, statutory damages for failure to rescind;

      d.    A judgment declaring what obligation, if any, plaintiff has toward each defendant, taking into account the challenge for plaintiff's tender due to the inflated appraised value;

      e.    Attorney's fees, litigation expenses and costs of suit; and

      f.    Such other or further relief as the Court deems proper.

### COUNT II – MICHIGAN MORTGAGE BROKERS, LENDERS AND SERVICERS LENDING ACT

48.    Plaintiff incorporates paragraphs 1-38.  This claim is against Argent, Great Lakes, and Executive Appraisals.

49.    Defendants engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b),  unfairly and deceptively (1) misrepresenting to plaintiff the market value of his residential property, and (2) concealing the fact that, based on the inflated appraisal, plaintiff would receive a loan with an extremely high loan-to-value ratio.

50.    Defendants engaged in such conduct in the course of trade and commerce.

9

51.     Defendants intended that plaintiff rely on their misrepresentations.

52.     Plaintiff would not have taken out the loan if he had reason to know that the appraisal was inflated or that he was borrowing at an extremely high loan-to-value ratio.

53.     Plaintiff was damaged as a result, in that (1) he was charged and paid excess points and fees and interest stemming from the inflated value and principal, and (2) he has attempted to but has been prevented from refinancing out of the high-loan-to-value loan, which was based on the inflated appraisal.

54.     Due to the inflated appraisal, plaintiff has incurred special damages that require a special remedy.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a.     A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on all defendants;

b.     Appropriate compensatory and punitive damages;

c.     Appropriate special damages; and

c.     Such other or further relief as the Court deems appropriate.

## COUNT III - CIVIL CONSPIRACY

55.     Plaintiff incorporates paragraphs 1-38.  This claim is against Argent, Great Lakes, and Executive Appraisals.

56.     Defendants intentionally inflated the appraised value or were aware that it was substantially inflated above the market value.

57.     Defendants misrepresented, concealed and suppressed the true market

10

value of plaintiff's property. The value of the property and home was a material fact in the transaction.

58. Defendants intended that plaintiff rely on their misrepresentation, concealment and suppression of this fact.

59. Plaintiff took out the loan, the principal amount of which and other material terms were based on the inflated appraised value reported by Executive Appraisals.

60. Defendants' conduct was willful.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

> a. Actual damages;
>
> b. Incidental, consequential and special damages;
>
> d. Costs of litigation and expenses; and
>
> e. Such other or further relief as this Court deems appropriate.

### COUNT IV – MICHIGAN MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

61. Plaintiff incorporates paragraphs 1-38. This claim is against Argent and Great Lakes.

62. Defendants engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b) by engaging in "bait and switch" practices, by promising plaintiff a 8.5% interest rate after obtaining sufficient financial information to provide an accurate quote, then switching plaintiff to a 9.25% interest rate at the closing.

63. Plaintiff induced to transact with Great Lakes and Argent by means of this

misrepresentation.

64.     Defendants Great Lakes and Argent made the representation in the course of trade and commerce.

65.     Defendants Great Lakes and Argent made the representations for the purpose of inducing reliance, in the form of plaintiff transacting with them.

66.     Plaintiff was injured by Great Lakes' and Argent's misrepresentations.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendants for:

a.     A declaratory judgment, MCL §445.1681(1)(a);

b.     Injunctive relief, MCL §445.1681(1)(b);

c.     Appropriate damages, MCL §445.1681(1)(c);

d.     Attorney's fees, litigation expenses and costs of suit; and

e.     Such other and further relief as the Court deems proper.


s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

s/Daniel A. Edelman
Daniel A. Edelman

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on May 15, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that true and correct copies were additionally sent via email or by U.S. Mail to those parties without email addresses.

Mark D. Van der Laan
Dykema Gossett PLLC
300 Ottawa Ave. NW
Suite 700
Grand Rapids, MI 49503

Bernard LeSage
blesage@buchalter.com

Executive Appraisals, Inc.
3746 Milan SW
Wyoming, MI 49509

Great Lakes Mortgage Company, LLC
c/o Registered Agent
David P. Delaat II
2180 44th St. S.E., 3rd Fl.
Kentwood, MI 49508

American Home Mortgage Servicing, Inc.
c/o Registered Agent
C.T. Corporation System
208 S. LaSalle St.
Suite 814
Chicago, IL 60604

s/ Daniel A. Edelman
Daniel A. Edelman

T:\17206\Pleading\2nd Amended Complaint_Pleading.WPD

13

# EXHIBIT A

Argent Mortgage Company, LLC
2550 Golf Road, East Tower Floor #10
Rolling Meadows, IL 60008

(847)640-0116

## BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

DAVID E. LANDGREN

Date: October 31, 2003

Notice: [X] Delivered    [ ] Mailed

Loan Number: 0053583357 - 9703

Description of Credit Request:

4255 BUTTRICK
ADA, MI 49301

[X] 1st Trust Deed/Mortgage    [ ] 2nd Trust Deed/Mortgage

[ ] Other: _____

Property Address: 4255 BUTTRICK AVE SE

ADA, MI 49301      County of KENT

### TYPE OF TRANSACTION:

[ ] Purchase    [X] Refinance    Other _____

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [ ] Fixed Rate Loan [X] Adjustable Rate Loan | [ ] Fixed Rate Loan [X] Adjustable Rate Loan |
| Amount Financed: $ 142,313.90 | Amount Financed: $ 157,743.86 * |
| Settlement Charges: $ 4,136.10 (Includes all Prepaid Finance Charges) | Settlement Charges: $ 6,953.89 * (Includes all Prepaid Finance Charges) |
| Loan Amount: $ 145,600.00 | Loan Amount: $ 163,800.00 |
| Annual Percentage Rate: 8.723 % | Annual Percentage Rate: 9.603 %* |
| Term: 360 | Term: 360 |
| Initial Interest Rate: 8.500 % | Initial Interest Rate: 9.250 % |
| Margin: 6.500 % | Margin: 6.500 % |
| Prepayment Penalty: [X] YES [ ] NO | Prepayment Penalty: [X] YES [ ] NO |

Borrower(s) and Argent Mortgage Company, LLC hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

_____    _____
Borrower DAVID E. LANDGREN    Date      Borrower      Date

_____    _____
Borrower      Date      Borrower      Date

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.

STMTCO (Rev. 3/99)

# EXHIBIT B

Loan Number: 0053583357 - 9703

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

October 31, 2003                    Rolling Meadows                    IL
Date                                City                               State

4255 BUTTRICK AVE SE, ADA, MI 49301
Property Address

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 163,800.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Argent Mortgage Company, LLC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 9.250 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
#### (A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   January 1, 2004 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, December 1, 2033 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my payments at:   505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.
#### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,347.55. This amount may change.
#### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
#### (A) Change Dates
The interest rate I will pay may change on the first day of,  December, 2005  and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."
#### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
#### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  six and one-half percentage point(s) (6.500%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:_____

(Rev. 01/03)

1 of 3

10/30/2003 3:11:52 PM

Loan Number: 0053583357 - 9703

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.250 %** or less than **9.250%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **1.000%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **15.250 %** or less than **9.250 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section. A "prepayment" is any amount I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Prepayment Made Three (3) year(s) After the Date of this Note**

If I make a prepayment commencing on or after the Three (3) year anniversary of the date of this Note, I may make that prepayment, in full or in part, without the imposition of a prepayment charge by the Lender.

**(B) Prepayment Made Within Three (3) year(s) of the Date of this Note**

I agree to pay Lender a prepayment charge if I make a prepayment before the Three (3) year(s) anniversary of the date this Note is executed. The prepayment charge I will pay will be equal to one percent (1%) on the amount by which the total prepayment(s) within any 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

**(C) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(D) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and the Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials: _____

10/30/2003 3:11:52 PM

Loan Number: 0053583357 - 9703

9.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.  **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.  **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)         _____ (Seal)
Borrower   DAVID E. LANDGREN                     Borrower


_____ (Seal)         _____ (Seal)
Borrower                                         Borrower

10/30/2003 3:11:52 PM

# EXHIBIT C

# MORTGAGE

Return To:

Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 31, 2003
together with all Riders to this document.
(B) "Borrower" is DAVID E. LANDGREN

Borrower's address is 4255 BUTTRICK, ADA, MI 49301
. Borrower is the mortgagor under this Security Instrument.

0053583357 - 9703

MICHIGAN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3023 1/01

-6(MI) (0005)
Page 1 of 15        Initials:_____

VMP MORTGAGE FORMS - (800)521-7291

10/30/2003 3:11:52

(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Corporation
organized and existing under the laws of Delaware
Lender's address is One City Boulevard West  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated October 31, 2003
The Note states that Borrower owes Lender one hundred sixty-three thousand eight
hundred and 00/100                                                                  Dollars
(U.S. $163,800.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than December 1, 2033
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

0053583357 - 9703
Initials: _____

-6(MI) (0005)          Page 2 of 15     10/30/2003 3:11:52     Form 3023 1/01

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County                                                    [Type of Recording Jurisdiction]
of KENT                                                    [Name of Recording Jurisdiction]:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 411922476005                which currently has the address of
4255 BUTTRICK AVE SE                                                    [Street]
ADA                                    [City] , Michigan 49301        [Zip Code]
("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

0053583357 - 9703
                                                    Initials:

 -6(MI) (0005)          Page 3 of 15      10/30/2003 3:11:52   Form 3023 1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any;

(c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

0053583357 - 9703
Initials:_____

-6(MI) (9906).02                    Page 5 of 15      10/30/2003 3:11:52      Form 3023 3/99

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

0053583357 -9703

Initials: _____

-6(MI) (0005)　　　　　　　Page 6 of 15　　10/30/2003 3:11:52　　Form 3023 1/01

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

0053583357 - 9703

Initials: _____

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if

0053583357 - 9703

Initials: _____

-6(MI) (0005)      Page 9 of 15      10/30/2003 3:11:52      Form 3023 1/01

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly



notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

0053583357 - 9703

Initials: _____

-6(MI) (0005)     Page 11 of 15     10/30/2003 3:11:52     Form 3023 1/01

(d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any

0053583357 - 9703
Initials: _____

-6(MI) (0005)        Page 12 of 15    10/30/2003 3:11:52    Form 3023 1/01

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                     DAVID E. LANDGREN              -Borrower


_____          _____ (Seal)
                                                                   -Borrower


_____ (Seal)         _____ (Seal)
               -Borrower                                           -Borrower


_____ (Seal)         _____ (Seal)
               -Borrower                                           -Borrower


_____ (Seal)         _____ (Seal)
               -Borrower                                           -Borrower


0053583357-9703

-6(MI) (0005)          Page 14 of 15     10/30/2003 3:11:52   Form 3023 1/01

**STATE OF MICHIGAN,**       **County ss:**

The foregoing instrument was acknowledged before me this_____ by
<br>Day/Month/Year

_____

_____

_____

My Commission Expires:

_____
Notary Public

_____ County, Michigan

Prepared By:  Argent Mortgage Company, LLC
<br>               Grant Jo
<br>               2550 Golf Road, East Tower Floor #10,Rolling Meadows, IL 60008

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 31st day of October , 2003 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

4255 BUTTRICK AVE SE, ADA, MI 49301
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 9.250 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of December, 2005 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials_____

Loan Number: 0053583357 - 9703

610-1 (Rev 1/01)                    Page 1 of 3

10/30/2003 3:11:52 PM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six and one-half** percentage points ( **6.500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.250%** **or less than 9.250%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  One( **1.000** %) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 15.250)% or less than 9.250)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials _____

Loan Number: 0053583357 - 9703

610-2 (Rev 1/01)                    Page 2 of 3

10/30/2003 3:11:52 PM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)   _____ (Seal)
Borrower DAVID E. LANDGREN          Borrower

_____ (Seal)   _____ (Seal)
Borrower                            Borrower

Loan Number:  0053583357 - 9703

610-3 (Rev 1/01)          Page 3 of 3

                          10/30/2003 3:11:52 PM

# EXHIBIT D

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Argent Mortgage Company, LLC
2550 Golf Road, East Tower Floor #10
Rolling Meadows, IL 60008
(847)640-0116

☐ Preliminary   ☒ Final

Broker License: FL1966

Borrowers: DAVID E. LANDGREN

Type of Loan: ADJUSTABLE RATE
Date: October 31, 2003

Address: 4255 BUTTRICK
City/State/Zip: ADA, MI 49301

Loan Number: 0053583357 - 9703

Property: 4255 BUTTRICK AVE SE, ADA, MI 49301

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.603 % | $ 327,359.38 | $ 157,743.86 | $ 485,103.24 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $1,347.55 | 01/01/2004 | | | |
| 1 | $1,332.79 | 12/01/2033 | | | |

**VARIABLE RATE FEATURE:**
☒ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 4255 BUTTRICK AVE SE, ADA, MI 49301

**ASSUMPTION:** Someone buying this property
☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to
Argent Mortgage Company, LLC

**LATE CHARGES:** If a payment is late, you will be charged 5.000% of the overdue payment .

**PREPAYMENT:** If you pay off your loan early, you
☒ may   ☐ will not   have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____ Date _____   Borrower _____ Date _____
Borrower DAVID E. LANDGREN

_____ Date _____   Borrower _____ Date _____
/er

TIL1 (Rev. 7/01)

10/30/2003 3:11:52 PM

# EXHIBIT E

## NOTICE OF RIGHT TO CANCEL

LENDER:   Argent Mortgage Company, LLC

DATE:   October 31, 2003
LOAN NO.:   0053583357 - 9703
TYPE:   ADJUSTABLE RATE

BORROWER(S): DAVID E. LANDGREN

ADDRESS:       4255 BUTTRICK
CITY/STATE/ZIP:   ADA,MI 49301

PROPERTY:   4255 BUTTRICK AVE SE
ADA,   MI   49301

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
3 Park Plaza
Irvine, CA 92614

ATTN:  FUNDING
PHONE:  (800)-561-4207
FAX:      (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____          _____
SIGNATURE                                                    DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____   _____   _____   _____
BORROWER/OWNER DAVID E. LANDGREN   Date         BORROWER/OWNER                             Date

_____   _____   _____   _____
BORROWER/OWNER                             Date         BORROWER/OWNER                             Date

164      rev 6/99]

**LENDER COPY**                                    10/30/2003 3:11:52 PM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Argent Mortgage Company, LLC

DATE:   October 31, 2003
LOAN NO.:   0053583357 - 9703
TYPE:   ADJUSTABLE RATE

BORROWER(S): DAVID E. LANDGREN

ADDRESS:      4255 BUTTRICK
CITY/STATE/ZIP:   ADA,MI 49301

PROPERTY:   4255 BUTTRICK AVE SE
                    ADA, MI 49301

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is     **ENTER DOCUMENT SIGNING DATE**
                                                                                  ; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC          ATTN:   FUNDING
3 Park Plaza                                          PHONE: (800)-561-4207
Irvine, CA 92614                                   FAX:      (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must     **ENTER FINAL DATE TO CANCEL**
send the notice no later than MIDNIGHT of

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____                    _____
SIGNATURE                                                         DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____   _____          _____   _____
BORROWER/OWNER DAVID E. LANDGREN        Date          BORROWER/OWNER                              Date

_____   _____          _____   _____
BORROWER/OWNER                              Date          BORROWER/OWNER                              Date

10.      (Rev 6/99)          **BORROWER COPY**          10/30/2003 3:11:52 PM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Argent Mortgage Company, LLC

DATE:   October 31, 2003
LOAN NO.:   0053583357 - 9703
TYPE:   ADJUSTABLE RATE

BORROWER(S): DAVID E. LANDGREN

ADDRESS:        4255 BUTTRICK
CITY/STATE/ZIP:   ADA,MI 49301

PROPERTY:   4255 BUTTRICK AVE SE
            ADA,  MI   49301

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

**ENTER DOCUMENT SIGNING DATE**

_____                ; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC          ATTN:  FUNDING
3 Park Plaza                          PHONE: (800)-561-4207
Irvine, CA 92614                      FAX:    (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**

_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____          _____
SIGNATURE                         DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____   _____      _____   _____
BORROWER/OWNER DAVID E. LANDGREN    Date        BORROWER/OWNER              Date

_____   _____      _____   _____
BORROWER/OWNER                      Date        BORROWER/OWNER              Date

96-    (Rev 6/99)

## BORROWER COPY

10/30/2003 3:11:52 PM

# EXHIBIT F

File No: M0309018  Page #1

**FROM:**
Michael R. Gray
Executive Appraisals
3746 Milan SW
Wyoming, MI 49509

Telephone Number: 616-530-8254     Fax Number: 616-532-5281

# INVOICE

| INVOICE NUMBER |
| --- |
| M0309018 |

| DATE |
| --- |
| 9/23/2003 |

**TO:**
AUTREY STIRGUS
GREAT LAKES
2180 44TH ST.
GRAND RAPIDS, MI 49508

Telephone Number: 977-9990     Fax Number:
Alternate Number:     E-Mail: astirgus@williqualify.com

| REFERENCE | |
| --- | --- |
| Internal Order #: | M0309018 |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | M0309018 |
| Other File # on form: | |
| Federal Tax ID: | 31-1784123 |
| Employer ID: | |

VISIT OUR WEB SITE     WWW.EXECUTIVEAPPRAISALS.ORG

## DESCRIPTION

Lender: GREAT LAKES                Client:  GREAT LAKES
Purchaser/Borrower: LANDGREN
Property Address: 4255 Buttrick Ave SE
City: ADA
County: KENT                       State: MI              Zip:  49301-9223
Legal Description: SEE ADDENDA

| FEES | AMOUNT |
| --- | --- |
| Full Appraisal | 250.00 |
| | |
| DUE UPON RECEIPT ! **SUBTOTAL** | 250.00 |

| PAYMENTS | AMOUNT |
| --- | --- |
| Check #:    Date:    Description: | |
| Check #:    Date:    Description: | |
| Check #:    Date:    Description: | |
| **SUBTOTAL** | |
| After 30 days, 1.5% interest will be applied ! **TOTAL DUE** | $      250.00 |

Form NIV5 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE
Executive Appraisals (614)851-9983

Michael R. Gray
Executive Appraisals Inc.
3746 Milan SW
Wyoming, Mi 49509


Ph. 616-530-8254  Fax 616-532-5281


GREAT LAKES
2180 44TH ST.
GRAND RAPIDS, MI 49508


Re:  Property:  4255 Buttrick Ave SE
                ADA, MI 49301-9223
     Borrower:  LANDGREN
     File No.:  M0309018


In accordance with your request, we have appraised the above referenced property.  The report of that appraisal is
attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as
improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and
city, and an economic analysis of the market for properties such as the subject.  The appraisal was developed and the
report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the
certification and limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me or any of my staff if we can be of additional
service to you.


Sincerely,


MICHAEL R. GRAY
Appraiser

File No. 3/0309010 Page #3

# SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| | Subject Address | 4255 Buttrick Ave SE |
| | Legal Description | SEE ADDENDA |
| | City | ADA |
| | County | KENT |
| | State | MI |
| | Zip Code | 49301-9223 |
| | Census Tract | 0122.02 |
| | Map Reference | GR ST GD PG. 40 O-22 |

| SALES PRICE | | |
|---|---|---|
| | Sale Price | $ N/A |
| | Date of Sale | REFINANCE |

| CLIENT | | |
|---|---|---|
| | Borrower / Client | LANDGREN |
| | Lender | GREAT LAKES |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| | Size (Square Feet) | 1,200 |
| | Price per Square Foot | $ |
| | Location | AVG SUBURBAN |
| | Age | 31 YRS |
| | Condition | GOOD |
| | Total Rooms | 6 |
| | Bedrooms | 4 |
| | Baths | 1.5 |

| APPRAISER | | |
|---|---|---|
| | Appraiser | MICHAEL R. GRAY |
| | Date of Appraised Value | 9/24/2003 |

| VALUE | | |
|---|---|---|
| | Final Estimate of Value | $ 182,000 |

File No. M03O9018 Page #9

| | |
|---|---|
| Borrower LANDGREN | File No. M03O9018 |
| Property Address 4255 Buttrick Ave SE | |
| City ADA | County KENT | State MI | Zip Code 49301-9223 |
| Lender GREAT LAKES | |

## APPRAISAL AND REPORT IDENTIFICATION

**This appraisal conforms to one of the following definitions:**

☐ Complete Appraisal (The act or process of estimating value, or an opinion of value, performed without invoking the Departure Rule.)

☒ Limited Appraisal (The act or process of estimating value, or an opinion of value, performed under and resulting from invoking the Departure Rule.)

**This report is one of the following types:**

☐ Self Contained (A written report prepared under Standards Rule 2-2(a) of a Complete or Limited Appraisal performed under STANDARD 1.)

☒ Summary (A written report prepared under Standards Rule 2-2(b) of a Complete or Limited Appraisal performed under STANDARD 1.)

☐ Restricted (A written report prepared under Standards Rule 2-2(c) of a Complete or Limited Appraisal performed under STANDARD 1 for client use only.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

☐ The statements of fact contained in this report are true and correct.

☐ The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.

☐ I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.

☐ I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

☐ My engagement in this assignment was not contingent upon developing or reporting predetermined results.

☐ My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

☐ My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

☐ I have (or have not) made a personal inspection of the property that is the subject of this report.

☐ No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)

### Comments on Appraisal and Report Identification

Note any departures from Standards Rules 1-2, 1-3, 1-4, plus any USPAP-related issues requiring disclosure:

There are no departures.

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: MICHAEL R. GRAY | Name: |
| Date Signed: 09/25/2003 | Date Signed: |
| State Certification #: | State Certification #: |
| or State License #: 1201069361 | or State License #: |
| State: MI | State: |
| Expiration Date of Certification or License: 7/31/2003 | Expiration Date of Certification or License: |
| | ☐ Did  ☐ Did Not Inspect Property |

# UNIFORM RESIDENTIAL APPRAISAL REPORT
File No. M0309018

| Property Description | | | | |
|---|---|---|---|---|
| Property Address 4255 Buttrick Ave SE | | City ADA | State MI | Zip Code 49301-9223 |
| Legal Description SEE ADDENDA | | | | County KENT |
| Assessor's Parcel No. 41-19-22-476-005 | | Tax Year 2002 | R.E. Taxes $ 1,324.08 | Special Assessments $ 0.00 |
| Borrower LANDGREN | | Current Owner LANDGREN | Occupant: ☒ Owner | ☐ Tenant ☐ Vacant |
| Property rights appraised ☒ Fee Simple ☐ Leasehold | | Project Type ☐ PUD ☐ Condominium (HUD/VA only) | HOA $ 0.00 | |
| Neighborhood or Project Name ADA | | Map Reference GR ST GD PG. 40 O-22 | Census Tract 0122.02 | |
| Sale Price $ N/A | Date of Sale REFINANCE | Description & amount of loan charges/concessions to be paid by seller NONE | | |
| Lender/Client GREAT LAKES | | Address 2180 44TH ST., GRAND RAPIDS, MI 49508 | | |
| Appraiser MICHAEL R. GRAY | | Address 3746 MILAN SW, WYOMING, MI 49509 | | |

| Location | | Predominant occupancy | Single family housing | | Present land use % | Land use change |
|---|---|---|---|---|---|---|
| | | | PRICE $(000) | AGE (yrs) | | |
| Location ☐ Urban ☒ Suburban ☐ Rural | | | One family 55 | | | ☐ Not likely ☒ Likely |
| Built up ☐ Over 75% ☒ 25-75% ☐ Under 25% | | ☒ Owner 90 | Low 0 | | 2-4 family | ☐ In process |
| Growth rate ☐ Rapid ☒ Stable ☐ Slow | | ☐ Tenant | High 53 | | Multi-family | To: VACANT LAND TO |
| Property values ☒ Increasing ☐ Stable ☐ Declining | | ☐ Vacant (0-5%) | Predominant | | Commercial 5 | DEVELOP |
| Demand/supply ☐ Shortage ☒ In balance ☐ Over supply | | ☐ Vac.(over 5%) | 222 30 | | vacant 40 | |
| Marketing time ☐ Under 3 mos. ☒ 3-6 mos. ☐ Over 6 mos. | | | | | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: THE NEIGHBORHOOD BOUNDARIES ARE THORNAPPLE RIVER TO THE NORTH, SNOW AVE T
THE EAST, 96 EXPRESS WAY TO THE SOUTH, THORNAPPLE RIVER TO THE WEST.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):
THE SUBJECT PROPERTY IS LOCATED IN ADA TWP. IT IS A NEIGHBORHOOD OF MEDIUM SIZED HOUSES ON AVERAGE
SUBURBAN LOTS. IT APPEARS TO RECEIVE AVERAGE TO GOOD MARKET ACCEPTANCE. EMPLOYMENT CENTERS, SCHOOLS,
CHURCHES, AND SHOPPING FACILITIES ARE WITHIN TYPICAL MARKET EXPECTED PROXIMITY. THERE IS NO APPARENT AND
MEASURABLE EVIDENCE OF ADVERSE LOCATIONAL FACTORS WHICH MIGHT ADVERSELY AFFECT MARKETING OR VALUE.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time
-- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):
GENERAL MARKET CONDITIONS WITHIN THE SUBJECT'S AREA ARE AVERAGE. ONCE LISTED MOST HOMES SELL WITHIN 3-6
MONTHS. DEMAND FOR THE NEIGHBORHOOD IS AVERAGE, DUE TO THE SCHOOL SYSTEM AND LOCATIONAL CONVENIENCES.
THE SUPPLY OF EXISTING HOMES IS LIMITED, WHICH ALSO PROVIDES FOR A SLIGHT INCREASE OF VALUE.OVERALL VALUES
ARE INCREASING BUT AN AN AVERAGE PACE. CONVENTIONAL, FHA, AND VA FINANCING ARE THE NORM. SELLER PAID
CONCESSIONS ARE GENERALLY NEGOTIABLE ITEMS.

Project Information for PUDs (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? ☐ Yes ☒ No
Approximate total number of units in the subject project N/A Approximate total number of units for sale in the subject project N/A
Describe common elements and recreational facilities: N/A

| Dimensions IRREGULAR | | Topography SLOPES TO FRONT |
|---|---|---|
| Site area 1 ACRE | Corner Lot ☒ Yes ☐ No | Size TYPICAL FOR AREA |
| Specific zoning classification and description SINGLE FAMILY RESIDENTIAL (R-1) | | Shape IRREGULAR |
| Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | Drainage APPARENTLY ADEQUATE |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | | View WOODS |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | Landscaping AVERAGE |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | ASPHALT | ☒ | | Driveway Surface CONCRETE |
| Gas | ☒ | | Curb/gutter | NONE | | | Apparent easements OF RECORD |
| Water | | WELL | Sidewalk | NONE | | | FEMA Special Flood Hazard Area ☐ Yes ☒ No |
| Sanitary sewer | | SEPTIC SYSTEM | Street lights | NONE | | | FEMA Zone X Map Date 11/6/1991 |
| Storm sewer | | | Alley | NONE | | | FEMA Map No. 2608140025A |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): THERE ARE NO
APPARENT ADVERSE EASEMENTS, ENCROACHMENTS, OR OTHER ADVERSE CONDITIONS.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|
| No. of Units ONE | Foundation | CONCRETE | Slab | NONE | Area Sq. Ft. 1,200 | | Roof | ☐ |
| No. of Stories ONE | Exterior Walls | FRM | Crawl Space | NONE | % Finished 80 % | | Ceiling | ☐ |
| Type (Det./Att.) DETACHED | Roof Surface | COMP SHINGL | Basement | FULL | Walls CLOSD/OPN | | Walls | ☐ |
| Design (Style) RANCH | Gutters & Dwnspts. | NONE | Sump Pump | YES | Floor DW/CNCRT | | Floor | ☐ |
| Existing/Proposed EXISTING | Window Type | DBL HUNG | Dampness | NONE NOTED | Outside Entry WWC/CNCR | | None | ☐ |
| Age (Yrs.) 31 YRS | Storm/Screens | YES/YES | Settlement | NONE NOTED | Outside Entry YES | | Unknown R-RATE ☒ |
| Effective Age (Yrs.) 5 YRS | Manufactured House NO | | Infestation | NONE NOTED | | | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | 1 | | | | 1 | 2 | 1,200 |
| Level 1 | | 1 | AREA | 1 | | | | 4 | 1.5 | | PANTRY | 1,200 |
| Level 2 | | | | | | | | | | | | |

Finished area above grade contains: 6 Rooms; 4 Bedroom(s); 1.5 Bath(s); 1,200 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|
| Floors | WWC & VINYL (G) | Type | F/A | Refrigerator | ☒ | Fireplace(s) # NONE | | None | ☒ |
| Walls | SHEETROCK (G) | Fuel | GAS | Range/Oven | ☒ | Patio | ☒ | Garage | # of cars |
| Trim/Finish | WOOD/STAIN(G) | Condition ADEQ. | | Disposal | ☒ | Deck WD | ☒ | Attached | |
| Bath Floor | VINYL (G) | COOLING | | Dishwasher | ☒ | Porch CVD | ☒ | Detached | |
| Bath Wainscot | FIBERGLASS (G) | Central | YES | Fan/Hood | ☒ | Fence | ☒ | Built-In | |
| Doors | WOOD & PNL (G) | Other | NONE | Microwave | ☒ | Pool | | Carport | |
| INSULATED EXTERIOR DOORS | | Condition ADEQ. | | Washer/Dryer | ☒ | STN RETAIN WAL | ☒ | Driveway | 2 CAR |

Additional features (special energy efficient items, etc.): SEE ADDENDA FOR UPDATES

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: THE
SUBJECT IS OF AVERAGE QUALITY CONSTRUCTION AND IS IN GOOD CONDITION. MINIMAL PHYSICAL DEPRECIATION IS DUE TO
AGE. THERE IS NO APPARENT EVIDENCE OF FUNCTIONAL OR EXTERNAL DEPRECIATION.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the
immediate vicinity of the subject property: NO EVIDENCE OF ADVERSE CONDITIONS ON THE SITE, IN THE HOUSE, OR IN THE
NEIGHBORHOOD WAS FOUND. NO ENVIRONMENTAL ASSESSMENT WAS MADE.

File No. M0309018

## UNIFORM RESIDENTIAL APPRAISAL REPORT

| Valuation Section | | |
|---|---|---|
| ESTIMATED SITE VALUE .............................................. = $ 20,000 | Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): REPLACEMENT COSTS ARE ABSTRACTED FORM RECENT NEW CONSTRUCTION SALES. PHYSICAL DEPRECIATION IS CALCULATED BY THE AGE/LIFE TECHNIQUE. THE REMAINING ECONOMIC LIFE IS 95 YEARS. | |

ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS:

Dwelling     1,200 Sq. Ft. @$ 105.00 = $   126,000
              1,200 Sq. Ft. @$ 35.00 = $    42,000
Garage/Carport        Sq. Ft. @$ _____ = $ _____
Total Estimated Cost New ........................... = $   168,000
Less     Physical   Functional   External
Depreciation   8,400                          = $ 8,400
Depreciated Value of Improvements ................. = $   159,600
"As-Is" Value of Site Improvements .... LANDSCAPE ........ = $ 3,000
INDICATED VALUE BY COST APPROACH ................. = $   182,600

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Address | 4255 Buttrick Ave SE ADA | 7510 DR SE ADA | 7536 CASCADE RD SE ADA | 3041 HOWLETT ADA |
| Proximity to Subject | | 0.06 miles | 0.94 miles | 1.60 miles |
| Sales Price | $ N/A | $ 192,000 | $ 225,000 | $ 222,000 |
| Price/Gross Living Area | $ 115.94 | $ 144.69 | $ 139.97 | |
| Data and/or Verification Source | INT INSPECT PUB RECORDS | EXTERIOR INSPECTION MLS # G471427 | EXTERIOR INSPECTION MLS # G474080 | EXTERIOR INSPECTION MLS # G465407 |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
|---|---|---|---|---|---|---|---|
| Sales or Financing Concessions | | CONVENTIONAL N/A | | CONVENTIONAL N/A | | CONVENTIONAL N/A | |
| Date of Sale/Time | | 06/29/2003 | | 07/24/2003 | | 05/07/2003 | |
| Location | AVG SUBURBAN | AVG SUBURBAN | | AVG SUBURBAN | | AVG SUBURBAN | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 1 ACRE | .37 ACRES | +1,000 | 1.0 ACRES | | 1.0 ACRES | |
| View | WOODS | RES/WOODS | | RES/WOODS | | RES/WOODS | |
| Design and Appeal | RANCH | AVG RANCH | | AVG RANCH | | AVG RANCH | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Age | 31 YRS | 30 YRS | | 14 YRS | −1,500 | 23 YRS | −1,000 |
| Condition | GOOD | GOOD | | GOOD | | GOOD | |
| Above Grade Room Count | Total 6 Bdrms 4 Baths 1.5 | Total 7 Bdrms 3 Baths 2 | −2,000 | Total 6 Bdrms 3 Baths 2.5 | −2,000 | Total 6 Bdrms 3 Baths 2 | −2,000 |
| Gross Living Area | 1,200 Sq. Ft. | 1,656 Sq. Ft. | −4,560 | 1,555 Sq. Ft. | −3,550 | 1,586 Sq. Ft. | −3,860 |
| Basement & Finished Rooms Below Grade | FULL FINISHED | FULL/WO UNFINISHED | +1,000 | FULL/WO FINISHED | | FULL/DL FINISHED | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FA/CAC | FA/CAC | | FA/CAC | | FA/CAC | |
| Energy Efficient Items | INSL WNDWS | INSL WNDWS | | INSL WNDWS | | INSL WNDWS | |
| Garage/Carport | NONE | 2 CAR ATT GAR | −5,000 | 3 CAR ATT GAR | −6,500 | 2 CAR ATT GAR | −5,000 |
| Porch, Patio, Deck, Fireplace(s), etc. | COV PCH, DECK NONE | DECK, PATIO 1 FP | −1,000 | DECK, PATIO 2 FP | −2,000 | DECK 2 FP | −2,000 |
| Fence, Pool, etc. | NONE | NONE | | NONE | | NONE | |
| Other | | | | | | | |
| Net Adj. (total) | | + ☒ − $ 10,560 | | + ☒ − $ 15,550 | | + ☒ − $ 13,860 | |
| Adjusted Sales Price of Comparable | | $ 181,440 | | $ 209,450 | | $ 208,140 | |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): SALES RECITED ARE FROM THE SUBJECT NEIGHBORHOOD AND ARE IN ACCEPTABLE PROXIMITY TO THE SUBJECT. THEY ARE THE MOST RECENT AND MOST COMPARABLE FOUND. ALL VALUE AFFECTING DISSIMILARITIES WERE ADJUSTED ACCORDING TO MARKET REACTION. SECONDARY MARKET STANDARDS FOR NET AND GROSS ADJUSTMENT PERCENTAGES WERE MET. THE INDICATED RANGE OF VALUES BRACKETS THE VALUE OF THE SUBJECT. GREATER WEIGHT IS GIVEN TO SALES # 1 IN THE RECONCILIATION.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | NO PRIOR SALE W/IN 36 MONTH | NO PRIOR SALE W/IN 1 YR ACCORDING TO MLS | NO PRIOR SALE W/IN 1 YR ACCORDING TO MLS | NO PRIOR SALE W/IN 1 YR ACCORDING TO MLS |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: THE ESTIMATE IS WITHIN THE RANGE DEMONSTRATED ABOVE AND APPEARS TO COMPLY WITH THE DEFINITION OF MARKET VALUE. THERE WERE NO PRIOR SALES WITHIN THE LAST 3 YEARS OR, 1 YEAR FOR ITS' COMPARABLES.

INDICATED VALUE BY SALES COMPARISON APPROACH ................................................. $ 182,000
INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ N/A

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans & specifications.
Conditions of Appraisal: THIS IS NOT A RENTAL NEIGHBORHOOD, AND INSUFFICIENT DATA IS AVAILABLE FOR THE INCOME APPROACH. THIS SUMMARY IS A SUMMARY REPORT OF A LIMITED APPRAISAL AS DEFINED BY SR 2-2(b), USPAP.
Final Reconciliation: MARKET ACTIONS OF BUYERS AND SELLERS ARE BEST ANALYZED BY THE SALES COMPARISON APPROACH. THAT APPROACH IS GIVEN GREATEST WEIGHT IN THE RECONCILIATION. THE COST APPROACH PROVIDES CONFIRMATION OF VALUE ONLY. THE INCOME APPROACH WAS NOT DEVELOPED. SUZANNA DINES ASSISTED WITH THIS REPORT.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA form 1004B (Revised 6-93 ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 9/24/2003 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 182,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature | Signature |
| Name MICHAEL R. GRAY | Name ☐ Did ☐ Did Not Inspect Property |
| Date Report Signed 09/25/2003 | Date Report Signed |
| State Certification # | State Certification # State |
| Or State License # 1201069361 State MI | Or State License # State |

Freddie Mac Form 70 6/93          PAGE 2 OF 2          Fannie Mae Form 1004 6-93

Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## UNIFORM RESIDENTIAL APPRAISAL REPORT
## MARKET DATA ANALYSIS

The recent sales of properties are most similar and proximate to subject and have been considered in the market analysis. The description includes a dollar adjustment, reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (−) adjustment is made, thus reducing the indicated value of the subject. If a significant item in the comparable is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the indicated value of the subject.

| ITEM | SUBJECT | COMPARABLE NO. 4 | +(−)$ Adjust. | COMPARABLE NO. 5 | +(−)$ Adjust. | COMPARABLE NO. 6 | +(−)$ Adjust. |
|---|---|---|---|---|---|---|---|
| | 4255 Buttrick Ave SE | 3024 THORNAPPLE RIV DR SE | | 7098 WINDCREST ST SE | | | |
| Address ADA | | CASCADE TWP | | CASCADE TWP | | | |
| Proximity to Subject | | 2.26 miles | | 2.62 miles | | | |
| Sales Price | $ N/A | $ 235,000 | | $ 179,000 | | $ | |
| Price/Gross Living Area | $ N/A | $ 223.81 | | $ 149.17 | | $ | |
| Data and/or | INT INSPECT | EXT INSPECTION | | EXT INSPECTION | | | |
| Verification Sources | PUB RECORDS | MLS# G463345 | | MLS# G 470985 | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Sales or Financing | | N/A | | | | | |
| Concessions | | N/A | | | | | |
| Date of Sale/Time | | CURRENT LIST | | CURRENT LIST | | | |
| Location | AVG SUBURBAN | AVG SUBURBAN | | AVG SUBURBAN | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | | |
| Site | 1 ACRE | .3 ACRES | +1,000 | .32 ACRES | +1,000 | | |
| View | WOODS | RIVER/WOODS | −20,000 | WOODS/RES | | | |
| Design and Appeal | RANCH | AVG RANCH | | AVG RANCH | | | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | | |
| Age | 31 YRS | 42 YRS | +1,000 | 35 YRS | | | |
| Condition | GOOD | FAIR | −5,000 | GOOD | | | |
| Above Grade | Total 6 Bdrms 4 Baths 1.5 | Total 3 Bdrms 1 Baths 1 | +2,000 | Total 5 Bdrms 3 Baths 1.5 | +500 | Total Bdrms Baths | |
| Room Count | | | | | | | |
| Gross Living Area | 1,200 Sq. Ft. | 1,050 Sq. Ft. | +1,500 | 1,200 Sq. Ft. | | Sq. Ft. | |
| Basement & Finished | FULL | FULL | | FULL | | | |
| Rooms Below Grade | FINISHED | FINISHED | | UNKNOWN | | | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | | |
| Heating/Cooling | FA/CAC | FA/NO CAC | −1,500 | FA/CAC | | | |
| Energy Efficient Items | INSL WNDWS | INSL WNDWS | | INSL WNDWS | | | |
| Garage/Carport | NONE | 2 CAR ATT GAR | −5,000 | 2 CAR ATT GAR | −5,000 | | |
| Porch, Patio, Deck, | COV PCH, DECK | DECK, ENC PRC | −500 | DECK | +1,000 | | |
| Fireplace(s), etc. | NONE | NONE | | NONE | | | |
| Fence, Pool, etc. | NONE | FENCED BACK | −500 | FENCED BACK | −500 | | |
| Other | | | | | | | |
| Net Adj. (total) | | + ☒ − $ | 27,000 | + ☒ − $ | 3,000 | + − $ | |
| Adjusted Sales Price of Comparable | | | $ 208,000 | | $ 176,000 | | $ |
| Date, Price and Data Source for prior sales within year of appraisal | NO PRIOR SALE W/IN 36 MONTH | NO PRIOR SALE W/IN 1 YEAR | | NO PRIOR SALE W/IN 1 YEAR | | | |

Comments:

Market Data Analysis 6-93

## Comparable Photo Page

| Borrower/Client | LANDGREN | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4255 Buttrick Ave SE | | | | | |
| City | ADA | County | KENT | State | MI | Zip Code 49301-9223 |
| Lender | GREAT LAKES | | | | | |



### Comparable 4

3024 THORNAPPLE RIV DR SE

| | |
|---|---|
| Prox. to Subject | 2.26 miles |
| Sale Price | 235,000 |
| Gross Living Area | 1,050 |
| Total Rooms | 3 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1 |
| Location | AVG SUBURBAN |
| View | RIVER/WOODS |
| Site | .3 ACRES |
| Quality | AVERAGE |
| Age | 42 YRS |



### Comparable 5

7098 WINDCREST ST SE

| | |
|---|---|
| Prox. to Subject | 2.62 miles |
| Sale Price | 179,000 |
| Gross Living Area | 1,200 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.5 |
| Location | AVG SUBURBAN |
| View | WOODS/RES |
| Site | .32 ACRES |
| Quality | AVERAGE |
| Age | 35 YRS |

### Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

**Supplemental Addendum**

File No.  M0309018

| | |
|---|---|
| Borrower/Client   LANDGREN | |
| Property Address   4255 Buttrick Ave SE | |
| City  ADA | County  KENT | State  MI | Zip Code  49301-9223 |
| Lender   GREAT LAKES | |

LEGAL DESCRIPTION-
PART SE 1/4 COM 165 FT NWLY ALONG CL OF STL US16 FROM CL OF BUTTRICK AVE TH SELY ALONG CL OF STL US16 165 FT TO CL OF SD AVE TH NELY ALONG CL OF SD AVE 297 FT TH W 165 FT TH SWLY 214.5 FT TO BEG EX NLY 110.0 FT * SEC 22 T6N R10W 0.58 A.

APPRAISERS NOTES-

OUT OF THE 50 SALES IN THE SUBJECTS TOWNSHIP, THE THREE SELECTED FOR THIS REPORT ARE THE CLOSEST, IN SIZE, STYLE, AND AGE TO THAT OF THE SUBJECT, WITHOUT CROSSING MAIN STREETS OR THE RIVER. COMPARABLE SALE 2 WAS THE ONLY SALE FOUND WITHIN ONE MILE OF THE SUBJECT PROPERTY, THAT WAS SIMILAR TO THE SUBJECT.

TWO PROPERTIES WERE LOCATED WITHOUT A GARAGE, HOWEVER WERE NOT COMPARABLE TO THE SUBJECT PROPERTY. ONE HAD RIVER FRONTAGE AND THE SECOND WAS EXTREMELY SMALL IN COMPARISON TO THE SUBJECT, AND BOTH WERE LOCATED ON THE OPPOSITE SIDE OF THE RIVER FROM THE SUBJECT.

UPDATES TO THE PROPERTY SINCE ITS PURCHASE IN 1997-
CONCRETE RETAINING WALL & LANDSCAPING, FINISHED BASEMENT,CARPETING,PAINTING, REPLACED ROOF, NEW FURNACE & AIR, NEW HOT WATER HEATER & BLADDER, WATER SOFTNER, ADDED DECK AND HOT TUB.

## Building Sketch (Page - 1)

| | | | |
|---|---|---|---|
| Borrower/Client LANDGREN | | | |
| Property Address 4255 Buttrick Ave SE | | | |
| City ADA | County KENT | State MI | Zip Code 49301-9223 |
| Lender GREAT LAKES | | | |



Comments:

### AREA CALCULATIONS SUMMARY

| Code | Description | Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 1200.00 | 1200.00 |
| | | | |
| | TOTAL LIVABLE (rounded) | | 1200 |

### LIVING AREA BREAKDOWN

| | Breakdown | Subtotals |
|---|---|---|
| First Floor | | |
| | 24.0 x 50.0 | 1200.00 |
| | | |
| 1 Calculation Total (rounded) | | 1200 |

Form SKT.BldSkI — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Location Map

| Borrower/Client | LANDGREN | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4255 Buttrick Ave SE | | | | | | |
| City | ADA | County | KENT | State | MI | Zip Code | 49301-9223 |
| Lender | GREAT LAKES | | | | | | |



## Subject Photo Page

| Borrower/Client | LANDGREN | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4255 Buttrick Ave SE | | | | | |
| City ADA | | County KENT | | State MI | | Zip Code 49301-9223 |
| Lender GREAT LAKES | | | | | | |

### Subject Front



4255 Buttrick Ave SE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,200 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 1.5 |
| Location | AVG SUBURBAN |
| View | WOODS |
| Site | 1 ACRE |
| Quality | AVERAGE |
| Age | 31 YRS |

### Subject Rear



### Subject Street



Form PIC3x5.SR — *TOTAL for Windows* appraisal software by a la mode, inc. — 1-800-ALAMODE

## Subject Interior Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client LANDGREN | | | |
| Property Address 4255 Buttrick Ave SE | | | |
| City ADA | County KENT | State MI | Zip Code 49301-9223 |
| Lender GREAT LAKES | | | |



### Subject Interior

4255 Buttrick Ave SE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,200 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 1.5 |
| Location | AVG SUBURBAN |
| View | WOODS |
| Site | 1 ACRE |
| Quality | AVERAGE |
| Age | 31 YRS |



### Subject Interior



### Subject Interior

## Comparable Photo Page

| | | | | |
|---|---|---|---|---|
| Borrower/Client | LANDGREN | | | |
| Property Address | 4255 Buttrick Ave SE | | | |
| City ADA | County KENT | | State MI | Zip Code 49301-9223 |
| Lender GREAT LAKES | | | | |



### Comparable 1

7510 DR SE

| | |
|---|---|
| Prox. to Subject | 0.06 miles |
| Sale Price | 192,000 |
| Gross Living Area | 1,656 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | AVG SUBURBAN |
| View | RES/WOODS |
| Site | .37 ACRES |
| Quality | AVERAGE |
| Age | 30 YRS |



### Comparable 2

7536 CASCADE RD SE

| | |
|---|---|
| Prox. to Subject | 0.94 miles |
| Sale Price | 225,000 |
| Gross Living Area | 1,555 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | AVG SUBURBAN |
| View | RES/WOODS |
| Site | 1.0 ACRES |
| Quality | AVERAGE |
| Age | 14 YRS |





### Comparable 3

3041 HOWLETT

| | |
|---|---|
| Prox. to Subject | 1.60 miles |
| Sale Price | 222,000 |
| Gross Living Area | 1,586 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | AVG SUBURBAN |
| View | RES/WOODS |
| Site | 1.0 ACRES |
| Quality | AVERAGE |
| Age | 23 YRS |

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> * Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

File No. MC0309018 Page #16

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**    4255 Buttrick Ave SE, ADA, MI 49301-9223

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name:  MICHAEL R. GRAY | Name: |
| Date Signed:  09/25/2003 | Date Signed: |
| State Certification #: | State Certification #: |
| or State License #:  1201069361 | or State License #: |
| State:  MI | State: |
| Expiration Date of Certification or License:  7/31/2003 | Expiration Date of Certification or License: |
| | ☐ Did    ☐ Did Not Inspect Property |

Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# EXHIBIT G

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
## Chicago, Illinois 60603-3403
## (312) 739-4200
## (800) 644-4673
## (312) 419-0379 (FAX)
## Email: edcombs@aol.com
## www.edcombs.com

June 19, 2006

**BY CERTIFIED MAIL**
Argent Mortgage Company, LLC
c/o registered agent
National Registered Agents, Inc.
712 Abbott Road
East Lansing, MI 48823

Ameriquest Mortgage Company
c/o registered agent
National Registered Agents, Inc.
712 Abbott Road
East Lansing, MI 48823

AMC Mortgage Services, Inc.
c/o registered agent
National Registered Agents, Inc.
712 Abbott Road
East Lansing, MI 48823

Ameriquest Mortgage Securities, Inc.
1100 Town & Country Road, Suite1100
Orange, CA 92868

> Re:    Notice of rescission, claim and lien, David E. Landgren, 4255
>        Buttrick, Ada, MI 49301, loan of October 31, 2003

Ladies/Gentlemen:

Each of the above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act and violation of the Michigan Consumer Protection Act.

Please be further advised that we have been retained by the above clients to file

suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than Argent Mortgage Company, LLC or Ameriquest Mortgage Securities, Inc., please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: client

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on June 19, 2006.


_____
Daniel A. Edelman

# EXHIBIT H

| | | SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| 700. | TOTAL SALES / BROKER'S COMMISSION: BASED ON PRICE | $ | @ %= | | |
| | **DIVISION OF COMMISSION (LINE 700) AS FOLLOWS:** | | | | |
| 701. | $ | to | | | |
| 702. | $ | to | | | |
| 703. | Commission paid at settlement | | | | |
| 704. | | | | | |
| **800.** | **ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. | Loan origination fee | 1.76 % | | 2,882.88 | |
| 802. | Loan discount | % | | | |
| 803. | Appraisal fee to: EXECUTIVE APPRAISALS INC | | | 250.00 | |
| 804. | Credit report to: GREAT LAKES MTG | | | 18.00 | |
| 805. | Lender's inspection fee | | | | |
| 806. | TAX RELATED SERVICE FEE/ARGENT MTG | | | 70.00 | |
| 807. | FLOOD SEARCH FEE/ARGENT MTG | | | 16.00 | |
| 808. | ADMIN FEE/ARGENT MTG | | | 175.00 | |
| 809. | APPLICATION FEE/GREAT LAKES MTG | | | 300.00 | |
| 810. | PROCESSING FEE/GREAT LAKES MTG | | | 700.00 | |
| 811. | YIELD SPREAD PREMIUM PD BY ARGENT/GREAT LAKES 3276.00 POC | | | | |
| 812. | UNDERWRITING FEE/ARGENT MTG | | | 375.00 | |
| 813. | | | | | |
| **900.** | **ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. | Interest from 11/05/2003 to 12/01/2003 @ $ 41.51 /day | | | 1,079.26 | |
| 902. | Mortgage insurance premium for Months to | | | | |
| 903. | Hazard insurance premium for Years to STATE FARM FIRE&CASUALTY | | | 250.00 | |
| 904. | Flood insurance premium for Years to | | | | |
| 905. | | | | | |
| **1000.** | **RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. | Hazard insurance | months @ $ | per month | | |
| 1002. | Mortgage insurance | months @ $ | per month | | |
| 1003. | City property taxes | months @ $ | per month | | |
| 1004. | County property taxes | months @ $ | per month | | |
| 1005. | Annual assessments | months @ $ | per month | | |
| 1006. | Flood insurance | months @ $ | per month | | |
| 1007. | | months @ $ | per month | | |
| 1008. | Aggregate Adjustment | | | | |
| 1101. | Settlement or closing fee to Michigan Title | | | 200.00 | |
| 1102. | Abstract or title search to | | | | |
| 1103. | Title examination to | | | | |
| 1104. | Title insurance binder to | | | | |
| 1105. | Document preparation to | | | | |
| 1106. | Notary fees to | | | | |
| 1107. | Attorney's fees to | | ) | | |
| | (includes above item Numbers | | | | |
| 1108. | Title insurance to MICHIGAN TITLE | | | 369.25 | |
| | (includes above item Numbers | | ) | | |
| 1109. | Lender's coverage $ 163,800.00 | | | | |
| 1110. | Owner's coverage $ | | | | |
| 1111. | COURIER FEE/MICHIGAN TITLE | | | 45.00 | |
| 1112. | WIRE FEE/MICHIGAN TITLE | | | 20.00 | |
| 1113. | | | | | |
| **1200.** | **GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. | Recording fees: Deed$ ; Mortgage$ 78.00 ; Releases$ | | | 78.00 | |
| 1202. | City/county tax / stamps: Deed $ ; Mortgage $ | | | | |
| 1203. | State tax / stamps: Deed $ ; Mortgage $ | | | | |
| 1204. | | | | | |
| 1205. | | | | | |
| **1300.** | **ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. | Survey to | | | | |
| 1302. | Pest inspection to | | | | |
| 1303. | | | | | |
| 1304. | | | | | |
| 1305. | | | | | |
| 1306. | | | | | |
| 1307. | | | | | |
| **1400.** | **TOTAL SETTLEMENT CHARGES** (Enter on line 103, Section J and line 502, Section K) | | | 6,828.39 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower: _____ Date: _____   Seller: _____ Date: _____

DAVID E LANDGREN

Borrower: _____ Date: _____   Seller: _____ Date: _____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance

_____ Date: _____   Settlement Agent Michigan Title Company Date: _____

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Page 2