IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRINA R. ANTHONY and<br>DEREK ANTHONY, | )<br>) | 07 cv 1748 |
| Plaintiffs, | )<br>) | Originally 07 cv 10755 (E.D. Mich.) |
| v. | )<br>)<br>) | Transferred to Judge Aspen for<br>pretrial proceedings under MDL |
| AMERIQUEST MORTGAGE COMPANY,<br>DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, N.A., as Trustee of AMERIQUEST<br>MORTGAGE SECURITIES, INC., Asset Backed<br>Pass Through Certificates Series 2005-R6,<br>AMERICAN HOME MORTGAGE SERVICING,<br>INC., and DOES 1-5, | )<br>)<br>)<br>)<br>)<br>)<br>) | #1715, Lead Case #05 cv 7097 |
| Defendants. | )<br>) | **DEMAND FOR JURY TRIAL** |

## AMENDED COMPLAINT

### INTRODUCTION

1. Plaintiffs Patrina R. Anthony and Derek Anthony bring this action against a "subprime" mortgage lender and its affiliates to rescind a mortgage and recover damages for violations of (A) the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226; and (B) state law.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), 1367 (supplemental) and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here.

1

**PARTIES**

3. Plaintiffs Patrina R. Anthony and Derek Anthony jointly own and reside in a single family home at 1542 Stirling Lakes Drive, Pontiac, MI 48349.

4. Defendant Ameriquest Mortgage Company is a foreign corporation which maintains offices in and does business in Michigan. Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823, or 200 W. Adams, Chicago, IL 60606.

5. Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6. Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

7. Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8. During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

9. Defendant American Home Mortgage Servicing, Inc. is a foreign corporation which does business in Illinois and Michigan. Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

10. Defendant American Home Mortgage Servicing, Inc. services some loans

originated by Ameriquest Mortgage Company, and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

11. Defendant Ameriquest Mortgage Securities, Inc. (AMS), an affiliate of Ameriquest Mortgage Company, is a foreign corporation which transacts business in Michigan. It holds legal title to loans originated by Ameriquest Mortgage Company. It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

12. Defendant Deutsche Bank National Trust Company, N.A., is a federally chartered bank located at 60 Wall Street, New York, NY. On information and belief, it or defendant AMS holds legal title to plaintiffs' loan, probably as trustee.

## FACTS RELATING TO PLAINTIFFS

13. Prior to May 17, 2005, plaintiffs applied for a mortgage with Ameriquest Mortgage Company.

14. Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

15. Approximately two to three weeks before closing, an Ameriquest employee named Steve Ramsey collected information from Patrina Anthony over the phone for a loan application. Ms Anthony reported to Mr. Ramsey that she and her husband had a combined income of approximately $4,000 per month.

16. Ms. Anthony also told Mr. Ramsey that, in addition to their home, which she estimated to be worth $195,000, she and her husband owned a rental property valued at approximately $105,000. She told Mr. Ramsey that they received $900 per month from the rental property but that, during the previous year, they saw a net loss on the rental property.

3

17. Unbeknownst to plaintiffs, Ameriquest and/or Mr. Ramsey then fraudulently reported that the Anthonys' total income was $6,971.57 per month, including $154 from the rental property. Exhibit A. Ameriquest also falsely reported that the Anthonys owned $458,000 worth of real estate. Exhibit A.

18. On or about May 13, 2005, Ameriquest arranged for an appraisal of the Anthonys' home. On information and belief, the appraisal was conducted by Sam Settimo and Colony Real Estate Appraisal, Inc.

19. Though the Anthonys purchased the house eight months previously for only $195,000, Mr. Settimo appraised the property at $242,000, Exhibit L.

20. Neither Patrina nor Derek Anthony met Mr. Sattimo, nor had any knowledge of the amount at which their home had been appraised.

21. On information and belief, Ameriquest was aware that Settimo had substantially inflated the appraised value of the Anthonys' home above the market value of comparable homes in the surrounding neighborhood at that time.

22. The Anthonys did not notice that Ameriquest had fraudulently inflated the value of their real assets and their monthly income.

23. Based on the inflated appraisal, fraudulently inflated monthly income, and the fraudulently inflated real estate assets, Mr. Ramsey and/or Ameriquest represented to its own underwriter that the Anthonys qualified for a $217,000 loan.

24. This made it appear that Ameriquest's loan was only 89% of the loan to value (LTV).

25. In fact, Ameriquest loaned plaintiffs approximately 111% of the actual

4

value of their home.

26. The loan was closed on May 17, 2005.

27. Immediately prior to the closing the loan terms were increased to the detriment of plaintiffs, as shown by Exhibit B.

28. On May 17, 2005, an Ameriquest employee named Derek came to the Anthonys house to close the loan. According to the Anthonys, "everything changed the day we signed." Derek rushed the Anthonys through the closing in approximately ten minutes. During this time, the Anthonys noticed changes to certain payoffs that they had previously been told would be included in the disbursements, including an $11,104 debt on Mr. Anthony's truck that would now only be paid in part, and an $1,854 debt to "Fingerhut Credit Advent" that would not be paid off at all.

29. Derek told the Anthonys that he couldn't do anything about these items, but that they should call Steve Ramsey to work out the details.

30. The Anthonys called Mr. Ramsey the day after closing. Mr. Ramsey told them that there had not been enough money in the loan to pay off all of their debts.

31. Further, Ameriquest undertook and represented to plaintiffs in the "items to be paid off from loan proceeds" that Ameriquest would pay $398.61 from the loan proceeds to the City of Pontiac for taxes on the Anthonys' property. Exhibit J.

32. Ameriquest then changed the deal, and it or its agent kept the $398.61.

33. Alternatively, Ameriquest or its agent eventually paid plaintiffs' taxes, but as a result of the failure to pay timely and as agreed, plaintiffs were billed and later paid approximately $670.00 in late fees and penalties.

5

34. The following are documents relating to the loan:

   a. A Universal Loan Application, <u>Exhibit A</u>;

   b. A borrower's acknowledgment of final loan terms, <u>Exhibit B</u>;

   c. A note, <u>Exhibit C</u>;

   d. A mortgage, <u>Exhibit D</u>;

   e. A Truth in Lending statement, <u>Exhibit E</u>;

   f. A "summary of debts and disbursements," <u>Exhibit F</u>;

   g. The three-day notice of right to cancel required by the Federal Reserve Board, <u>Exhibit G</u>. Only one of the copies is fully completed.

   h. A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, <u>Exhibit H</u>;

   i. An "itemization of settlement charges," <u>Exhibit I</u>; and

   j. A document entitled "Items to be Paid Off From Loan Proceeds," <u>Exhibit J</u>.

35. In addition, plaintiffs were charged an $8,167.50 "loan discount," <u>Exhibit F</u>.

36. Ameriquest undertook and represented, in the document attached as <u>Exhibit K</u> and delivered to plaintiffs at the closing, that the payment of a "loan discount" would reduce plaintiffs' interest rate.

37. In fact, plaintiffs did not receive a discounted rate, as shown by the document entitled "Borrower's Acknowledgment of Final Loan Terms," <u>Exhibit B</u>, which was delivered at closing.

6

38. Plaintiffs were later directed to make payments to AMC Mortgage Services, Inc., and then later to Citi Residential Lending, Inc. Subsequently, in 2009, plaintiffs were directed to make payments to American Home Mortgage Servicing, Inc.

39. On information and belief, Deutsche Bank National Trust Company, N.A. holds legal title to plaintiffs' loan, as Trustee. Ameriquest Mortgage Securities, Inc., is the beneficial owner of plaintiffs' loan under Asset Backed Pass-Through Certificates, Series 2005-R6.

40. In the event that neither Ameriquest Mortgage Securities, Inc., nor Deutsche Bank National Trust Company, N.A., owns plaintiffs' loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## COUNT I – TRUTH IN LENDING ACT

41. Plaintiffs incorporate paragraphs 1-40. This claim is against all defendants.

## RIGHT TO RESCIND

42. Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

> **(a) Consumer's right to rescind.**
>
> **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**
>
> **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

7

>**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**
>
>**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

>**(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**
>
>**(2) The consumer's right to rescind the transaction.**
>
>**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**
>
>**(4) The effects of rescission, as described in paragraph (d) of this section.**
>
>**(5) The date the rescission period expires. . . .**

**(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:**

>**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**
>
>**(2) A credit plan in which a state agency is a creditor.**

### GROUNDS FOR RESCISSION

43. In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

44. Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel in that only one of the federal notices of right to cancel provided to plaintiffs was completed, instead of the four required.

45. In addition, the delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

46. Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

47. Indeed, Ameriquest's own staff finds it necessary to prepare on a monthly basis a schedule of cancellation period expiration dates under the two different rescission periods and to consult the schedule prior to each closing.

48. Because Ameriquest altered the agreement after the closing by eliminating the $398.61 disbursement, the loan was not consummated on the date the documents were signed. The dates on all TILA disclosures are incorrect, and therefore, plaintiffs have the extended three-year right to rescind.

49. Notice of rescission has been given to defendants. A copy is attached as Exhibit M.

50. The loan has not been rescinded.

51. Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

52. 15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

    a. A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

    b. A judgment indicating what amount, if any, plaintiffs owe in light of the fraudulently inflated appraisal value and other information;

    c. Statutory damages for the underlying disclosure violation;

    d. Actual damages;

    e. If appropriate, statutory damages for failure to rescind;

    f. Attorney's fees, litigation expenses and costs.

    g. Such other or further relief as the Court deems appropriate.

## COUNT II – BREACH OF CONTRACT

53. Plaintiffs incorporate paragraphs 1-40.

54. This claim is against Ameriquest only.

55. Defendant Ameriquest contracted and undertook to provide a discounted

interest rate if plaintiffs paid a loan discount fee.

56. Plaintiffs paid the fee but did not receive a discounted rate.

57. Ameriquest thereby breached its agreement.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant for:

    a. Appropriate damages;

    b. Costs.

    c. Such other or further relief as the Court deems appropriate.

## COUNT III – BREACH OF CONTRACT

58. Plaintiffs incorporate paragraphs 1-40.

59. This claim is against Ameriquest only.

60. Defendant Ameriquest contracted to pay $398.61 from the loan proceeds to the City of Pontiac.

61. Ameriquest or its agent did not pay the $398.61 in taxes, as agreed. As a result of Ameriquest's failure to pay the taxes as agreed, plaintiffs were billed $670.00 for the delinquent taxes and associated penalties.

62. Ameriquest or its agent thereby breached Ameriquest's agreement.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant for:

    a. Appropriate damages;

    b. Actual damages;

  c.  Costs; and

  d.  Such other or further relief as the Court deems appropriate.

## COUNT IV – MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

63. Plaintiffs incorporate paragraphs 1–40. This claim is against Ameriquest.

64. Ameriquest engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by engaging in "bait and switch" practices through promising plaintiffs a 7.950% interest rate and $10,523.58 in settlement charges after obtaining sufficient financial information to provide an accurate quote, then increasing these terms immediately prior to closing, to a 8.65% interest rate and to $11,258.56 in settlement charges. Exhibit A.

65. The Anthonys were induced to transact with Ameriquest by means of this misrepresentation.

66. Defendant Ameriquest made the representation in the course of trade and commerce.

67. Defendant Ameriquest made the representation for the purpose of inducing plaintiffs' reliance in the form of the Anthonys' decision to transact with Ameriquest.

68. Plaintiffs were injured as a result of Ameriquest's misrepresentation.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against Ameriquest for:

  a.  A declaratory judgment, MCL §445.1681(1)(a);

  b.  Injunctive relief, MCL §445.1681(1)(b);

  c.  Appropriate damages, MCL §445.1681(1)(c);

      d.      Attorney's fees, litigation expenses and costs of suit; and

      e.      Such other and further relief as the Court deems proper.

### COUNT V – MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

69.      Plaintiffs incorporate paragraphs 1–40. This claim is against Ameriquest.

70.      Defendant engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), knowingly misrepresenting the value of plaintiffs' home and concealing this misrepresentation, thereby misrepresenting their ability to qualify for the loan.

71.      The Anthonys were induced to transact business with Ameriquest by means of these misrepresentations.

72.      Defendant made the representation in the course of trade and commerce.

73.      Defendant made the representation for the purpose of inducing reliance, in the form of the Anthonys borrowing a higher principal.

74.      The Anthonys were injured as a result of the fraudulent overappraisal. Their options for refinancing with reputable mortgage companies have been severely limited by defendants' actions. Ameriquest has effectively trapped the Anthonys in their current adjustable-rate mortgage.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against Ameriquest for:

      a.      A declaratory judgment, MCL §445.1681(1)(a);

      b.      Injunctive relief, MCL §445.1681(1)(b);

      c.      Appropriate damages, MCL §445.1681(1)(c);

    d.  Attorney's fees, litigation expenses and costs of suit;

    e.  Such other and further relief as the Court deems proper.

## COUNT VI – COMMON LAW FRAUD

75. Plaintiff incorporates paragraphs 1–40. This claim is against Ameriquest.

76. Defendant represented that the Anthonys' house was worth $242,000 and, therefore, that the Anthonys qualified for a $217,800 loan.

77. These representations were false.

78. Defendant made these representations with knowledge that they were false or made them recklessly, without any knowledge of their truth and as positive assertions.

79. Defendant made these representations with the intent that they should be acted upon by the Anthonys.

80. The Anthonys borrowed $217,800 from Ameriquest, in reliance on Ameriquest's representations that the Anthonys qualified for the loan, based on their home's appraised value.

81. The Anthonys have suffered an injury as a result of defendant's misrepresentations. Their options for refinancing with reputable mortgage companies have been severely limited by defendant's actions.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant Ameriquest for:

    a.  Actual and compensatory damages;

    b.  Punitive damages; and

    c.  Such other or further relief as the Court deems appropriate.

## COUNT VII – MICHIGAN MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

82. Plaintiffs incorporate paragraphs 1-40. This claim is against Ameriquest.

83. Ameriquest engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by:

    a. Fraudulently inflating the Anthonys' monthly income; and

    b. inflating the combined value of the real estate owned by the Anthonys'

in order to represent that they qualified for a larger loan amount (Exhibit A).

84. The Anthonys were induced to transact business with Ameriquest by means of these misrepresentations.

85. Defendant Ameriquest made the representations in the course of trade and commerce.

86. Defendant Ameriquest made the representations for the purpose of inducing reliance in the form of the Anthonys borrowing a higher principal amount.

87. The Anthonys were injured as a result of Ameriquest's misrepresentations. They were induced to agree to a mortgage with a 111% loan-to-value ratio. Consequently, their options for refinancing with reputable mortgage companies have been severely limited by Ameriquest's actions. Ameriquest has effectively trapped the Anthonys in their current adjustable rate loan, jeopardizing their home.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against Ameriquest for:

    a. A declaratory judgment, MCL §445.1681(1)(a);

      b.      Injunctive relief, MCL §445.1681(1)(b);

      c.      Appropriate damages, MCL §445.1681(1)(c);

      d.      Attorney's fees, litigation expenses and costs of suit;

      e.      Such other and further relief as the Court deems proper.

### COUNT VIII – COMMON LAW FRAUD

88. Plaintiffs incorporate paragraphs 1-40. This claim is against Ameriquest.

89. On May 17, 2005, Ameriquest represented to the Anthonys that, based upon their monthly income and the value of their real estate assets, they qualified for a $217,800 loan.

90. These representations were material to the terms of Ameriquest's loan to plaintiffs.

91. Ameriquest's representations to plaintiffs that they qualified for the loan were false. Exhibit A;

92. Defendant Ameriquest made these representations intentionally, with knowledge of their falsity, for the purpose of inducing the plaintiffs to rely on them.

93. Defendant's representation that the plaintiffs qualified for the loan caused plaintiffs reliance to their detriment. The plaintiffs now owe on a loan for which they never should have qualified and are struggling to afford the monthly payments from their modest incomes. Their home is now in jeopardy.

94. Plaintiffs' reliance was justifiable.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant Ameriquest for:

    a.  Actual and compensatory damages;

    b.  Punitive damages; and

    c.  Such other or further relief as the Court deems appropriate.

## **COUNT IX - DAMAGES RESULTING FROM CIVIL CONSPIRACY**

  95.  Plaintiffs incorporate paragraphs 1-40. This claim is against Ameriquest.

  96.  Ameriquest combined with Colony Real Estate Appraisal, Inc., to arrange for and produce a fraudulent, appraised value for plaintiffs' properties.

  97.  Defendant took concerted and overt actions to accomplish this fraudulent purpose.

  98.  Among other things, defendant conspired - out of excessive concern for its own profits - to misrepresent, conceal and suppress the actual market value of plaintiffs' property.

  99.  Plaintiffs were damaged as a result of defendant's conspiracy. The inflated appraisals have prevented them from refinancing with more reputable companies, effectively trapping them in the current mortgages.

  WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant Ameriquest for:

    a.  Actual damages;

    b.  Incidental, consequential and special damages;

    d.  Costs of litigation and expenses; and

    e.  Such other or further relief as this Court deems appropriate.

                                                  s/Daniel A. Edelman
                                                  Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## DEMAND FOR JURY TRIAL

      Plaintiffs demand trial by jury.

                                                  s/Daniel A. Edelman
                                                  Daniel A. Edelman

## CERTIFICATE OF SERVICE

      I, Daniel A. Edelman, hereby certify that on May 28, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Jordan Sickman<br>sickman@steinbergshapiro.com | American Home Mortgage Servicing, Inc.<br>c/o Registered Agent<br>C.T. Corporation System<br>208 S. LaSalle, Suite 814<br>Chicago, IL 60603 |

                                                 s/Daniel A. Edelman
                                                 Daniel A. Edelman

T:\17135\Pleading\1st Amended Complaint_Pleading.WPD