**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRENDA J. DUMAS and<br>FLOYD E. DUMAS II, | ) | 1:07-cv-00108 |
| | ) | |
| Plaintiffs, | ) | (Originally 2:06-cv-00352-RLM- |
| | ) | PRC (N.D.IN)) |
| v. | ) | |
| | ) | (Transferred to Judge Aspen for |
| AMERIQUEST MORTGAGE COMPANY, | ) | pretrial proceedings under MDL |
| A. WILLIAM SAEGER, ASC CORPORATION, | ) | #1715, Lead Case # 05 C 7097) |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY, N.A., as Trustee of AMERIQUEST | ) | |
| MORTGAGE SECURITIES, INC., Asset Backed | ) | |
| Pass Through Certificates, Series 2005-R6 Under | ) | |
| the Pooling and Servicing Agreement Dated as of | ) | |
| July 1, 2005, Without Recourse, and AMERICAN | ) | |
| HOME MORTGAGE SERVICING, INC., | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT**

**INTRODUCTION**

1.      Plaintiffs Brenda J. Dumas and Floyd E. Dumas II bring this action against

a "subprime" mortgage lender and its affiliates and assigns to rescind a mortgage for violation of

(a) the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal

Reserve Board Regulation Z, 12 C.F.R. part 226, and (b) state laws.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331

(general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA).

Defendants transact business in the District and are deemed to reside here.

**PARTIES**

3.      Plaintiffs Brenda J. Dumas and Floyd E. Dumas II own and reside in a home at 4012 Monroe Street, Gary, IN 46408.

4.      Defendant Ameriquest Mortgage Company is a foreign corporation which maintains offices in and does business in Indiana.  Its registered agent and office are National Registered Agents, Inc., 200 W. Adams, Chicago, IL 60606.

5.      Defendant A. William Saeger was a residential appraiser licensed in the State of Indiana.  He did business in the State.  On information and belief, he may be still be found at 1788 Summer Lakes Court, Carmel, IN 46032.

6.      Defendant ASC Corporation was an Indiana corporation involved in appraisals of residential property in Indiana.  Its registered agent was Arthur William Saeger at: 1788 Summer Lakes Court, Carmel, IN 46032.  It has used the addresses of P. O. Box 40923, Indianapolis, IN 48240 and P. O. Box 40923, Indianapolis, IN 46240.

7.      Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

8.      Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

9.      Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

10.      During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period.  Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States.  During the first half of

2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

11.     Defendant American Home Mortgage Servicing, Inc. is a foreign corporation which does business in Illinois and Indiana.  Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

12.     Defendant American Home Mortgage Servicing, Inc., services some loans originated by Ameriquest Mortgage Company, including plaintiffs', and claims an interest in such loans, including the right to receive payments thereunder.  It is joined as a necessary party.

13.     Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc. Asset Backed Pass Through Certificates, Series 2005-R6 Under The Pooling and Servicing Agreement Dated as of July 1, 2005, owns plaintiffs' loan. Deutsche Bank is located at 60 Wall St, New York, NY, 10005-2858.

14.     Defendant Ameriquest Mortgage Securities, Inc., an affiliate of Ameriquest Mortgage Company, is a foreign corporation which transacts business in Indiana.  It is the beneficial owner of some loans originated by Ameriquest Mortgage Company, including plaintiffs'.  It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

## FACTS RELATING TO PLAINTIFFS

15.     Mr. and Mrs. Dumas are ordinary consumers.  They live in an inner city neighborhood in Gary, IN, on a block where abandoned homes are common.  They have lived in their home for 12 years.

16.     Mr. Dumas, 50, is a community outreach coordinator for Metropolitan Oasis Community Development Corporation, a not-for-profit, government-funded, social service

agency.  Mrs. Dumas, 47, is a billing and administrative representative for Metropolitan Oasis.

17.     Prior to May 14, 2005, Ameriquest mailed a flyer solicitation to the Dumas' home.  The flyer offered to refinance their home and give them cash to make repairs to their home.

18.     Plaintiffs needed the loan for home repairs:  new siding, new windows, new doors, remodeling of the kitchen, bathrooms and plumbing.

19.     Mrs. Dumas called Ameriquest and was connected with Amy Durbin, an Ameriquest Account Executive.  Ms. Durbin took the Dumas' loan application over the phone. She never met them in person.  Shortly after completing the Dumas' transaction, Ms. Durbin left Ameriquest.

20.     Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

21.     Ms. Durbin told plaintiffs they would receive at least $5,000 with which to make the home repairs.  Ms. Durbin also promised a lower interest rate than plaintiffs had in their then current mortgage loan.

22.     On or about May 14, 2005, Ameriquest closed the loan.  The loan was not closed on Lake Plaza Drive, as stated on the HUD-1 Settlement Statement (Exhibit A) but in plaintiffs' home.  Present were Mr. and Mrs. Dumas and a female closer who was, on information and belief, employed by Ameriquest's closing agent, Mortgage Information Services, Inc.  No Ameriquest representative, including Ms. Durbin, was present.

23.     Immediately prior to the closing, plaintiffs were informed that the loan terms were being altered to plaintiffs' detriment, as set forth on Exhibit B.  Ameriquest increased

4

plaintiffs' initial interest rate.

24.     Ameriquest new what interest rate plaintiffs qualified for well in advance of closing.  In fact, Ms. Durbin had run plaintiffs' credit reports during the first phone conversation with them.

25.     Ameriquest gave plaintiffs an adjustable rate loan with an initial, minimum interest rate of 10.8% (Exhibit C).  While that rate is fixed for two years, there is a prepayment penalty equal to six months' worth of interest for repayment of the loan at anytime within the first three years.  (Id.)  After the first 24 months, the interest rate can increase by as much as 2.0%, to 12.8%.  (Id.)  Thereafter, in each six month period, the rate can rise by as much as 1%, up to a maximum of 16.8%.  (Id.).

26.     On information and belief, plaintiffs' immediately prior mortgage loan had a lower interest rate than the loan Ameriquest gave them.

27.     The following are documents relating to the loan:

a.     A HUD-1 Settlement Statement, Exhibit A.  Plaintiffs never received a copy of the HUD-1 at their closing.

b.     A Borrower's Acknowledgment of Final Loan Terms, used solely by Ameriquest and related companies Exhibit B.

b.     An Adjustable Rate Note, Exhibit C.

c.     A Mortgage, Exhibit D.

d.     A final Truth-In-Lending Disclosure Statement, Exhibit E.

e.     The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit F.  All copies that Ameriquest or its agent furnished to plaintiffs were

incomplete.

f.     A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, Exhibit G.

28.     Plaintiffs were charged a $1,488.69 "loan discount," Exhibit A, line 802.

29.     Ameriquest undertook and represented, in the document attached as Exhibit M and delivered to plaintiffs at the closing, that the payment of a "loan discount" would reduce plaintiffs' interest rate.

30.     Instead of being reduced, plaintiffs' interest rate increased from 10.650% to 10.800% (Exhibit B).

31.     In connection with the loan, Ms. Durbin arranged to have an appraisal performed by A. William Saeger.  Mr. Saeger prepared an appraisal report (Exhibit H) for Ameriquest that is dated May 6, 2005.  However, plaintiffs never saw anyone visit plaintiffs' home to inspect the conditions inside or outside.

32.     Mr. Saeger controlled ASC Corporation, the company that submitted the appraisal invoice to Ameriquest (Exhibit H).  The other officers and directors, Ashley A Seager and Heather A. Seager, were his relatives.

33.     According to Indiana public records, Mr. Seager's appraisal license has was revoked, and ASC Corporation was administratively dissolved.

34.     On information and belief, Ameriquest, Ms. Durbin, ASC Corporation and Mr. Saeger knowingly and falsely inflated the appraised value of plaintiffs' home.  The overappraisal then prevented plaintiffs from refinancing out of Ameriquest's adjustable rate loan.

35.     Prior to closing, Ameriquest never told plaintiffs what it had appraised

6

their home for and did not provide plaintiffs with a copy of the appraisal report, even though

plaintiffs requested it.

   36.  Ameriquest's Appraisal/Property Valuation Disclosure, which plaintiffs

signed at closing, states that if plaintiffs wish to receive a copy, they have to write away for it.

(<u>Exhibit H</u>).

   37.  Ameriquest prepared and presented for plaintiffs' signature, at closing, a

typed, pre-printed loan application (<u>Exhibit I</u>) that states that plaintiffs have real estates assets

valued at $85,000.  The loan application was one of scores of documents and hundreds of pages

presented to plaintiffs at closing.  Plaintiffs did not and could read all of the documents at

closing.

   38.  In December, 2005, when plaintiffs were considering refinancing

in order to lower their payment and obtain money for home repairs, they discovered, in

discussing their application with Home123, that Ameriquest had inflated their home value.

   39.  On information and belief, plaintiffs' home was actually worth

less than $60,000 in May, 2005.  This means that Ameriquest's $76,500 loan exceeded 100% of

the actual value of their home.  Ameriquest attempted to disguise the loan as a 90% LTV loan.

Most reputable lenders will not exceed 80% LTV without also imposing private mortgage

insurance ("PMI").

   40.  Ameriquest did so in order to make it appear that plaintiffs qualified for

the loan and to increase the loan amount, which in turn increased the amounts of Ameriquest's

"points and fees," interest income and profits.

   41.  The fraudulent appraised value upon which Ameriquest based its loan

prevented plaintiffs from refinancing with Home123 and will prevent them from refinancing with any reputable lender.

42.     In August, 2006, when plaintiffs requested and received a copy of Mr. Saeger's appraisal report from AMC, it arrived with a letter (Exhibit H) stating various terms and conditions, including a confidentiality provision and provisions stating, "You covenant and agree...not to make any claims for damages... against the appraiser" and "You covenant and agree to indemnify, defend and hold AMC... its affiliates... harmless from and against any claims resulting from or arising out of your use of the Appraisal Report."

43.     Ameriquest's inflation of the appraised value and the loan amount dramatically increased the monthly payment amount plaintiffs must shoulder - or face losing their home.

44.     As a result their inability to refinance due to the appraisal fraud, Ameriquest has literally and indefinitely trapped plaintiffs in a loan whose adjustable interest rate means that their payments will only increase.

45.     Ms. Durbin also steered plaintiffs, who already had a home owner's insurance policy, to a new hazard insurance policy.  Prior to closing, plaintiffs completed and submitted the application form given to them by Ms. Durbin.

46.     In August, 2006, plaintiffs received a notice from yet another insurance company indicating that AMC had force-placed home owner's insurance because plaintiffs had not provided evidence of insurance coverage (Exhibit J).  The force-placed insurance was much more expensive than the ordinary insurance plaintiffs applied for or the insurance they had.

47.     On information and belief, AMC or Deutsche Bank also added

8

unwarranted charges to the loan balance.

48.     Plaintiffs were later directed to make payments to AMC Mortgage Services, Inc., and then later to Citi Residential Lending, Inc.  Subsequently, in 2009, plaintiffs were directed to make payments to American Home Mortgage Servicing, Inc.

49.     Subsequent to closing, ownership of the loan was assigned to Ameriquest Mortgage Securities ("AMS").

50.     Deutsche Bank, as Trustee for AMS under Asset Backed Pass Through Certificates, Series 2005-R6 Under the Pooling and Servicing Agreement Dated as of July 1, 2005, Without Recourse, owns plaintiffs' mortgage loan and is threatening to enforce it against plaintiffs (Exhibit K).

## COUNT I - TILA

51.     Plaintiffs incorporate ¶¶ 1-50.  This claim is against Ameriquest Mortgage Company, Deutsche Bank National Trust Company, N.A., Ameriquest Mortgage Securities, Inc., and American Home Mortgage Servicing, Inc.

## Right To rescind

52.     Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

**(a) Consumer's right to rescind.**

> **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security**

9

interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.  [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

53.     In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23,  for (without limitation) the reasons stated below.

## Grounds for Rescission

54.     All of the federally-required notices of right to cancel Ameriquest or its agent delivered to plaintiffs were incomplete in that the transaction and cancellation dates were missing.

55.     The delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

56.     Furthermore, the "one week" cancellation notice is misleading, as the period actually given is only six days long.

57.     Ameriquest's own staff finds it necessary to prepare, on a monthly basis, a list of cancellation period expiration dates to guide employees involved in closing loans.

58.     Notice of rescission has been given to defendants.  A copy is attached as Exhibit L.

59.     The loan has not been rescinded.  On the contrary, defendant Deutsche

Bank is threatening to enforce the rescinded loan against plaintiffs (Exhibit K).

60.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against

any assignee.

61.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this
section, in addition to rescission the court may award relief under section
1640 of this title for violations of this subchapter not relating to the right to
rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of

plaintiffs and against defendants for:

a.     A judgment voiding plaintiffs' mortgage, capable of recordation in

the public records, and binding on defendants;

b.     A judgment declaring what obligation, if any, plaintiffs have

toward each defendant, taking into account the challenge for plaintiffs' tender due to

Ameriquest's fraudulent appraised value;

c.     Any actual damages;

d.     Statutory damages for the underlying disclosure violation;

e.     Statutory damages for failure to rescind;

f.     Attorney's fees, litigation expenses and costs; and

g.     Such other or further relief as the Court deems appropriate.

## COUNT II - INDIANA DECEPTIVE CONSUMER SALES ACT

62.     Plaintiff incorporates ¶¶ 1-50.  This claim is against Ameriquest, ASC
Corporation and A. William Saeger.

63.     Plaintiffs used the proceeds of their Ameriquest loan for primarily
personal and household purposes.

64.     By inflating the appraised value of their home in connection with the loan,
Ameriquest, ASC and Mr. Saeger fraudulently induced plaintiffs to enter into a note and
mortgage for a residential refinance loan, in violation of the Indiana Deceptive Consumer Sales
Act, Burns Ind. Code Ann. § 24-5-0.5-2 et seq.

65.     These acts and representations were deceptive as to the subject
matter of a consumer transaction, i.e., the terms of the loan, the loan amount, the cost of the loan
and whether plaintiffs in fact qualified for the loan.

66.     Defendants have not cured or offered to cure their deceptive acts
and representations.

67.     Defendants' acts and representations are incurable deceptive acts
and misrepresentations.

68.     Defendants' deceptive acts and misrepresentations were knowing and
willful.

69.     Plaintiff suffered actual damages as the proximate result of defendants'
deceptive acts and representations.  § 24-5-0.5-4(a).  Due to the inflated appraisal, they are
unable to refinance and are trapped in a loan with an ever rising interest rate; even with a full
TILA rescission, they would still owe more on the home than it is actually worth.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

        a.      actual damages;

        b.      increased damages for willful conduct;

        c.      a voiding of defendants' note and mortgage with plaintiff;

        d.      restitution;

        e.      attorney's fees, costs and litigation expenses; and

        f.      any other or further relief that the Court deems just.

## COUNT III - COMMON LAW FRAUD

70.      Plaintiffs incorporate ¶¶ 1-50 above.  This claim is against Ameriquest, ASC Corporation and A. William Saeger.

71.      On or before May 14, 2005, Ameriquest represented to plaintiffs that, based upon the existing value of their home, they qualified for a loan in the amount of $76,500.

72.      This representation was a material term of Ameriquest's transaction with plaintiffs.

73.      Ameriquest's representation to plaintiffs that they qualified for the loan was false or fraudulent because it was based upon a materially false representation of the value of their home.

74.      Defendants made this representation intentionally, with knowledge and/or reckless ignorance of its falsity.

75.      Defendants' representation that plaintiffs qualified for the loan caused plaintiffs to rely on the misrepresentation to their detriment.

76.     Plaintiffs' reliance was justifiable.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against defendants for:

        a.       actual and compensatory damages;

        b.       punitive damages; and

        c.       Such other or further relief as the Court deems appropriate.

## COUNT IV - DAMAGES RESULTING FROM CIVIL CONSPIRACY

77.     Plaintiffs incorporate ¶¶ 1-50 above.  This claim is against Ameriquest and ASC Corporation and A. William Saeger.

78.     Defendants combined to arrange for and produce a fraudulent, appraised value of plaintiff's home.

79.     Defendants took concerted and overt actions to accomplish this fraudulent purpose and goal.

80.     Among other things, they conspired - out of excessive concern for their own profit and continuation in business - to misrepresent, conceal and suppress the actual market value of plaintiffs' property.

81.     Plaintiffs were damaged as a result of defendants' conspiracy.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against defendants for:

        a.       Actual damages;

        b.       Incidental, consequential and special damages;

        c.       Costs of litigation and expenses; and

      d.      Such other or further relief as this Court deems appropriate.

## COUNT V – BREACH OF CONTRACT

82.     Plaintiffs incorporate paragraphs 1-50. This claim is against Ameriquest.

83.     Defendant Ameriquest, by means of <u>Exhibit M</u>, contracted and undertook to provide a discounted interest rate if plaintiffs paid a loan discount fee.

84.     Plaintiffs paid the fee (<u>Exhibit A</u>, line 802), but their interest rate increased rather than decreased.

85.     Ameriquest thereby breached its agreement.

86.     Plaintiffs were damaged as a result.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant for:

      a.      Appropriate damages;

      b.      Costs.

      c.      Such other or further relief as the Court deems appropriate.


                    s/ Daniel A. Edelman
                    Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiffs demand trial by jury.


s/ Daniel A. Edelman
Daniel A. Edelman


## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on May 29, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that true and correct copies were additionally sent via email or by U.S. Mail to those parties without email addresses.

Jonathan N. Ledsky
jledsky@vblhc.com
sortega@vblhc.com

Craig Allen Varga
cvarga@vblhc.com

Scott J Helfand
shelfand@vblhc.com

Arthur William Saeger
9016 Rider Dr.
Fishers, IN 46038

ASC Corporation
c/o Arthur William Saeger
9016 Rider Dr.
Fishers, IN 46038

American Home Mortgage Servicing, Inc.
c/o Registered Agent
C.T. Corporation System
208 S. LaSalle St.
Suite 814
Chicago, IL 60604


s/ Daniel A. Edelman
Daniel A. Edelman

17