**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PATRICK E. LEWIS and VIOLATA S. LEWIS, | ) | |
| | ) | 07 C 120 |
| Plaintiffs, | ) | |
| | ) | (Originally 06 C 158 (W.D. Mich.)) |
| v. | ) | |
| | ) | (Transferred to Judge Aspen for |
| AMERIQUEST MORTGAGE COMPANY, | ) | pretrial proceedings under MDL |
| DEUTSCHE BANK NATIONAL TRUST | ) | #1715, Lead Case #05 C 7097) |
| COMPANY, as Trustee of AMERIQUEST | ) | |
| MORTGAGE SECURITIES, INC., Asset Backed | ) | |
| Pass Through Certificates, Series 2005-R9 Under | ) | |
| the Pooling and Servicing Agreement Dated as of | ) | |
| October 1, 2005, Without Recourse, AMERICAN | ) | |
| HOME MORTGAGE SERVICING, INC., and | ) | |
| DOES 1-5, | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

**INTRODUCTION**

1.      Plaintiffs Patrick E. Lewis and Violata S. Lewis bring this action against a

"subprime" mortgage lender and its affiliates to rescind a mortgage for violation of the Truth in

Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board

Regulation Z, 12 C.F.R. part 226; and to secure redress for unlawful collection practices, in

violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA")

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331

(general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA).

1

Defendants transact business in the District and are deemed to reside here.

## PARTIES

3. Plaintiff Patrick E. Lewis owns and resides in a single-family home at 8997 Garfield, Parma, Jackson County, MI 49269. His wife Violata S. Lewis also resides there.

4. Defendant Ameriquest Mortgage Company is a foreign corporation which maintains offices in and does business in Michigan. Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823, or 200 W. Adams, Chicago, IL 60606.

5. Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6. Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

7. Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8. During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

9. Defendant American Home Mortgage Servicing, Inc. ("AHMSI") is a foreign corporation which does business in Illinois and Michigan. Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

2

10. Defendant American Home Mortgage Servicing, Inc. services some loans originated by Ameriquest Mortgage Company, and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

11. Defendant Deutsche Bank National Trust Company, N.A., is a federally chartered bank located at 60 Wall Street, New York, NY 10005. On information and belief it holds legal title to plaintiffs' loan, as trustee.

12. Defendant Ameriquest Mortgage Securities, Inc., an affiliate of Ameriquest Mortgage Company, is a foreign corporation which transacts business in Michigan. It is the beneficial owner of some loans originated by Ameriquest Mortgage Company, including plaintiffs.' It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

## FACTS RELATING TO PLAINTIFFS

13. Prior to August 8, 2005, plaintiff Patrick E. Lewis applied for a mortgage with Ameriquest Mortgage Company.

14. Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

15. The loan was closed on August 8, 2005.

16. The following are documents relating to the loan, all of which appear to have been delivered to or signed by Patrick E. Lewis, only:

      a.     A note, <u>Exhibit A</u>;

      b.     A mortgage, <u>Exhibit B</u>;

      c.     A Truth in Lending statement, <u>Exhibit C</u>;

      d.     A list of "items to be paid off from loan proceeds," <u>Exhibit D</u>;

e.      "Itemization of settlement charges," <u>Exhibit E</u>;

f.      The three-day notice of right to cancel required by the Federal Reserve Board, <u>Exhibit F</u>.  None of the copies furnished was filled out.

g.      A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, <u>Exhibit G</u>.

17.      Plaintiffs were later directed to make payments to AMC Mortgage Services, Inc., and then later to Citi Residential Lending, Inc.  Subsequently, in 2009, plaintiffs were directed to make payments to American Home Mortgage Servicing, Inc.

18.      On information and belief, Deutsche Bank National Trust Company, N.A. holds legal title to plaintiffs' loan, as Trustee.  Ameriquest Mortgage Securities, Inc., is the beneficial owner of plaintiffs' loan under Asset Backed Pass Through Certificates, Series 2005-R9 Under the Pooling and Servicing Agreement Dated as of October 1, 2005, Without Recourse.

19.      In the event that Ameriquest Mortgage Securities, Inc., does not own plaintiff's loan or Deutsche Bank National Trust Company, N.A. does not hold title, (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

20.      Plaintiffs filed this action on October 16, 2006.

21.      American Home Mortgage Servicing, Inc. assumed servicing rights of their loan effective February 10, 2009.

22.      Therefore, AHMSI took over the loan when it was already in litigation.

23.      In late 2008, AHMSI began collecting a number of former Ameriquest loans that are the subject of legal actions by the borrowers to rescind such loans.  Plaintiffs' loan is one such loan.

24.     On or about February 26, 2009, AHMSI sent plaintiffs, directly, a loan modification agreement and accompanying materials.  The materials repeatedly emphasized the need for immediate action on the part of plaintiffs, by using the language "Urgent message," "time sensitive," "requires immediate attention," "this could save your home from foreclosure," and "this is a limited time offer and requires your immediate attention."  It directed plaintiffs to execute and return the loan modification agreement by overnight mail in a self-addressed courier envelope.   A copy of the materials is attached as <u>Exhibit I</u>.

25.     The loan modification agreement and accompanying documents would if executed:

a.     Cause plaintiffs to make payments to AHMSI, resulting in payment of the allegedly defaulted and disputed debt;

b.     Require plaintiffs to stipulate that "Borrower has no right of set-off or counterclaim against Note Holder or Loan Servicer, or any defense to the obligations of the Note or Security Instrument," thereby waiving or releasing their claim that the mortgage was subject to rescission.   AHMSI was the "Loan Servicer" referred to.

26.     Counsel's representation of Patrick Lewis and Violata Lewis was a matter of public record.

27.     On information and belief, counsel's representation of Patrick Lewis and Violata Lewis was shown in AHMSI's files prior to February 26, 2009.  The February 26, 2009 material stated that AHMSI had obtained plaintiffs' file from Citi Residential, and Citi Residential knew plaintiffs were represented.

## COUNT I - TILA

28.     Plaintiffs incorporate paragraphs 1-27.  This claims is against all defendants.

## RIGHT TO RESCIND

29.     Because the transaction was secured by plaintiffs' home, and was not entered

into for purposes of the initial acquisition or construction of that home, it was subject to the right to

cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**

**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer**

entitled to rescind. **The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(2) The consumer's right to rescind the transaction.**

**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(4) The effects of rescission, as described in paragraph (d) of this section.**

**(5) The date the rescission period expires. . . .**

**(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:**

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

### <u>GROUNDS FOR RESCISSION</u>

30.     In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23,  for (without limitation) the reasons stated below.

31.     All copies of the federally-required notice of right to cancel delivered to plaintiffs were incomplete.

32.     The delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of

TILA damages, attorney's fees or the procedural protections of §1635.

33.     Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

34.     Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

35.     Notice of rescission has been given to defendants.  A copy is attached as Exhibit H.

36.     The loan has not been rescinded.

37.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

38.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiffs and against defendants for:

a.     A judgment voiding the mortgage on plaintiffs' residence, capable of recordation in the public records, and binding on defendants;

b.     Statutory damages for the underlying disclosure violation;

c.     If appropriate, statutory damages for failure to rescind;

d.     Attorney's fees, litigation expenses and costs.

e.     Such other or further relief as the Court deems appropriate.

8

## COUNT II - FDCPA

35.     Plaintiffs incorporate paragraphs 1-27.  This claims is against American Home Mortgage Servicing, Inc.

36.     Exhibit I violates 15 U.S.C. §1692c, which provides:

**§ 1692c.     Communication in connection with debt collection [Section 805 of P.L.]**

**(a) Communication with the consumer generally--Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt-- . . .**

> **(2)     if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; . . .**

37.     Exhibit I also falsely represents the status of plaintiffs' alleged debt, since AHMSI is not entitled to foreclose a rescinded loan, and amounts to the use of fraud, misrepresentation and chicanery to attempt to trick plaintiffs into waiving their rights.   Exhibit I therefore violates 15 U.S.C. 15 U.S.C. §1692e.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against AHMSI for:

a.     Statutory damages;

b.     Actual damages;

c.     Attorney's fees, litigation expenses and costs of suit;

d.     Such other or further relief as the Court deems proper.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)


## JURY DEMAND

     Plaintiffs demands trial by jury.


s/Daniel A. Edelman
Daniel A. Edelman


## CERTIFICATE OF SERVICE

     I, Daniel A. Edelman, hereby certify that on June 2, 2009, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Mark D. Van der Laan                     Bernard E. LeSage
Dykema Gossett PLLC                   blesage@buchalter.com
300 Ottawa Ave. NW
Suite 700
Grand Rapids, MI 49503


s/Daniel A. Edelman
Daniel A. Edelman

T:\17203\Pleading\2nd Amended Complaint_Pleading.wpd

**EXHIBIT A**

Loan No. 0129516969 - 5649

# FIXED RATE NOTE

**THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.**

August.8, 2005
[Date]                                        [City]                                        [State]

8997 Garfield, Parma, MI  49269
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  121,500.00  this amount is called "principal"), plus interest, to the order of the Lender. The Lender is      Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  6.990 %.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on      October 1, 2005.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on      September 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:  505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments
My monthly payments will be in the amount of U.S. $807.53.

## 4.  BORROWER'S RIGHT TO PREPAY

I may repay this Note at any time as provided for in this paragraph. If within the first  3.00 year(s), I make a full prepayment and in certain cases a partial prepayment, and the total of such prepayments in any 12 month period exceeds 20% of the original principal balance under this Note, I will pay a prepayment charge equal to one percent (1%) on the amount by which the total prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of  fifteen  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials:



Loan No.  0129516969 - 5649

**(D)   No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____(Seal)      _____(Seal)
Borrower:   Patrick E Lewis              Borrower:
SSN:         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                SSN:


_____(Seal)      _____(Seal)
Borrower:                     Borrower:
SSN:                        SSN:



**<u>EXHIBIT B</u>**

# MORTGAGE

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated August 8, 2005                      ,
together with all Riders to this document.
(B) "Borrower" is Patrick E Lewis, A Married Man

Borrower's address is 8997 Garfield, Parma,MI 49269
. Borrower is the mortgagor under this Security Instrument.

**MICHIGAN**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3023 1/01
0129516969-5649

08/08/2005 2:51:54

**AM6MI** (0401)

Page 1 of 16                              Initials:_____

VMP Mortgage Solutions, Inc. (800)521-7291

0000012951696903001341701

**(C) "Lender"** is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware
Lender's address is 1100 Town and Country Road, Suite 200  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated August 8, 2005
The Note states that Borrower owes Lender one hundred twenty-one thousand five
hundred and 00/100                                                        Dollars
(U.S. $ 121,500.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than September 1, 2035
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

AM6MI (0401)                          Page 2 of 16                          Form 3023 1/01

0129516969-5649

08/08/2005 2:51:54



0000012951696903013417Q2

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the **County**                                              [Type of Recording Jurisdiction]
of **JACKSON**                                                                [Name of Recording Jurisdiction]:
Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: **000-02-32-476-001-05**                        which currently has the address of
**8997 Garfield**                                                                                         [Street]
**Parma**                                                         [City], Michigan **49269**          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials:_____

**AM6MI** (0401)                              Page 3 of 16                              **Form 3023 1/01**

0129516969-5649

08/08/2005 2:51:54



0000012951696903013417703

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

Initials: _____

0129516969-5649

08/08/2005 2:51:54



0000012951696903013417 04

for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _____

0129516969 - 5649

08/08/2005  2:51:54



0000012951696903013411705

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and

Initials: _____

AM6MI (0401)                    Page 6 of 16                    Form 3023 1/01

0129516969 - 5649

08/08/2005 2:51:54



0000012951696903013417O6

Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Initials:_____

0129516969-5649

08/08/2005 2:51:54



0000012951696903013417017

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward

Initials:_____

AM6MI (0401)                    Page 8 of 16                    Form 3023 1/01

0129516969 - 5649

08/08/2005 2:51:54



0000012951696903013417708

the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Initials:_____

AM6MI (0401)  Page 9 of 16  Form 3023 1/01

0129516969-5649

08/08/2005 2:51:54



0000012951696903301341709

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Initials: _____

AM6MI (0401)  Page 10 of 16  Form 3023 1/01

0129516969 - 5649

08/08/2005 2:51:54



0000012951696903013417 10

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

AM6MI (0401)                              Page 11 of 16                              Form 3023 1/01

0129516969-5649

08/08/2005 2:51:54



0000012951696903013417111

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,



0000012951696903013441712

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous

Initials:_____

AM6MI (0401)                    Page 13 of 16                    Form 3023 1/01

0129516969-5649

08/08/2005 2:51:54



0000012951696903013417 13

Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

Initials:_____

AM6MI (0401)                    Page 14 of 16                    Form 3023 1/01

0129516969-5649

08/08/2005 2:51:54



0000012951696903013411714

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          Patrick E Lewis                  -Borrower


_____          _____ (Seal)
                                                                           -Borrower


_____ (Seal)   _____ (Seal)
                        -Borrower                                          -Borrower


_____ (Seal)   _____ (Seal)
                        -Borrower                                          -Borrower


_____ (Seal)   _____ (Seal)
                        -Borrower                                          -Borrower


**AM6MI** (0401)                    Page 15 of 16                    **Form 3023 1/01**

0129516969-5649

08/08/2005 2:51:54



000001295169690301341715

**STATE OF MICHIGAN,**  County ss:

Acknowledged before me in _____ County,
Michigan, on _____ by

Day/Month/Year

_____

_____

_____


_____

Notary Public, State of Michgan,
County of
My Commission Expires
Acting in the County of


This instrument was prepared By:

Ameriquest Mortgage Company
Not Assigned
2350 Green Rd., # 160,Ann Arbor, MI 48105



0000012951696903013441716

400-16MI (12/03)                     Page 16 of 16                     0129516969 - 5649

08/08/2005 2:51:54 PM

BORROWER NAME:

LOAN NUMBER:   0129516969 - 5649

# LEGAL DESCRIPTION

**EXHIBIT C**

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

[ ] Preliminary  [X] Final

LENDER: Ameriquest Mortgage Company
2350 Green Rd., # 160
Ann Arbor, MI 48105
(734)996-8699

Broker License:

Borrowers: Patrick E Lewis

Type of Loan: FIXED RATE
Date: August 8, 2005

Address:
City/State/Zip:

Loan Number: 0129516969 - 5649

Property: 8997 Garfield, Parma, MI 49269

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.368 % | $ 174,107.67 | $ 116,599.12 | $ 290,706.79 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $807.53 | 10/01/2005 | | | |
| 1 | $803.52 | 09/01/2035 | | | |

**VARIABLE RATE FEATURE:**

[ ] Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 8997 Garfield, Parma, MI 49269

**ASSUMPTION:** Someone buying this property [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:** If a payment is late, you will be charged 5.000% of the overdue payment .

**PREPAYMENT:** If you pay off your loan early, you
[X] may [ ] will not have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____ _____
orrowerPatrick E Lewis        Date

_____ _____
Borrower                      Date

_____ _____
Borrower                      Date

_____ _____
Borrower                      Date



TIL1 (Rev. 7/01)    0000012951696690305750101

## ORIGINAL COPY

08/08/2005 2:49:06 PM

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

[ ] Preliminary    [X] Final

LENDER: Ameriquest Mortgage Company
2350 Green Rd., # 160
Ann Arbor, MI 48105
(734)996-8699

Broker License:

Borrowers: Patrick E Lewis

Type of Loan: FIXED RATE
Date: August 8, 2005

Address:
City/State/Zip:

Loan Number: 0129516969 - 5649

Property: 8997 Garfield, Parma, MI 49269

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.368 % | $ 174,107.67 | $ 116,599.12 | $ 290,706.79 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $807.53 | 10/01/2005 | | | |
| 1 | $803.52 | 09/01/2035 | | | |

**VARIABLE RATE FEATURE:**
[ ] Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 8997 Garfield, Parma, MI 49269

**ASSUMPTION:** Someone buying this property [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:** You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

**LATE CHARGES:** If a payment is late, you will be charged 5.000% of the overdue payment .

**PREPAYMENT:** If you pay off your loan early, you
[X] may    [ ] will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____ _____
Borrower Patrick E Lewis        Date          Borrower                         Date

_____ _____
Borrower                        Date          Borrower                         Date



TIL1 (Rev. 7/01)                0000012951696903057501 01

## BORROWER COPY

08/08/2005 2:51:54 PM

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER:Ameriquest Mortgage Company
2350 Green Rd., # 160
Ann Arbor, MI 48105
(734)996-8699

☐ Preliminary  ☒ Final

Broker License:

Borrowers:Patrick E Lewis

Type of Loan: FIXED RATE
Date: August 8, 2005

Address:
City/State/Zip:

Loan Number: 0129516969 - 5649

Property:  8997 Garfield, Parma, MI  49269

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.368    % | $  174,107.67 | $  116,599.12 | $  290,706.79 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $807.53 | 10/01/2005 | | | |
| 1 | $803.52 | 09/01/2035 | | | |

**VARIABLE RATE FEATURE:**
☐ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at: 8997 Garfield, Parma, MI  49269

ASSUMPTION:    Someone buying this property  ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

LATE CHARGES:    If a payment is late, you will be charged  5.000%  of the overdue payment .

PREPAYMENT:  If you pay off your loan early, you
☒ may     ☐ will not     have to pay a penalty.

**See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.**

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____   _____
Borrower:Patrick E Lewis         Date

_____   _____
Borrower                         Date

_____   _____
Borrower                         Date

_____   _____
Borrower                         Date

TIL1 (Rev. 7/01)


0000012951696930305750101

**ORIGINAL COPY**

08/08/2005 2:51:54 PM

## ITEMS TO BE PAID OFF FROM LOAN PROCEEDS

Borrower :  Patrick E Lewis

Loan Number :  0129516969 - 5649

| Payee | | Amount |
|-------|---|--------|
| CBUSASEARS | (W) | $130.00 |
| CP FEDERAL CREDIT UNIO | (W) | $2,606.00 |
| DEERE MDSN | (W) | $1,023.00 |
| WELLS FARGO | (W) | $3,557.00 |
| WELLS FARGO HOME MTG I | (W) | $93,792.97 |
| WELSHMQTY | (W) | $13,985.00 |
| | | |

Total Wire:     $116,670.12

Loan Amount:                     121,500.00

Funds Held By              Deposit at Escrow/Title:          $0.00
Lender:

Borrower Proceeds:  (W)$452.55          —

(W) = Included in Wire

## IMPORTANT: THE DATE OF SETTLEMENT MUST EQUAL THE CLOSING DATE.

Title Company Representative Signature          Date

895-7UNV  (4/2005)          

**EXHIBIT D**

**ITEMS TO BE PAID OFF FROM LOAN PROCEEDS**

Borrower : Patrick E Lewis

Loan Number : 0129516969 - 5649

| Payee | | Amount |
|-------|----|--------|
| CBUSASEARS | (W) | $130.00 |
| CP FEDERAL CREDIT UNIO | (W) | $2,606.00 |
| DEERE MDSN | (W) | $1,023.00 |
| WELLS FARGO | (W) | $3,557.00 |
| WELLS FARGO HOME MTG I | (W) | $93,792.97 |
| WELSHMQTY | (W) | $13,985.00 |
| | | |
| | | |

Total Wire:    $116,670.12

Loan Amount:              121,500.00

Funds Held By
Lender:

Borrower Proceeds:  (W)$452.55

Deposit at Escrow/Title:        $0.00

—

(W) = Included in Wire

**IMPORTANT: THE DATE OF SETTLEMENT MUST EQUAL THE CLOSING DATE.**

_____          _____
Title Company Representative Signature            Date



0000012951696030074307O7

**<u>EXHIBIT E</u>**

## CLOSING INSTRUCTIONS
## ITEMIZATION OF SETTLEMENT CHARGES

| Title Company/Attorney | Title Officer/Attorney | Phone Number | Order Number |
|---|---|---|---|
| **NATIONS TITLE AGENCY OF MICHIGAN** | **CHRIS VAN WINKLE** | **(517)323-0739** | |

| Borrower(s) | Property Address |
|---|---|
| Patrick E Lewis | 8997 Garfield |
| | Parma          MI          49269 |
| | Loan Number:  0129516969 |

FROM: **Ameriquest Mortgage Company - Ann Arbor, MI**   Phone No. **(734)996-8699**         Fax **(734)996-9455**
   Branch Name                                        Branch Phone No.                      Branch Fax Number

**BELOW IS A LIST OF ALL SETTLEMENT CHARGES AND DISBURSEMENTS APPLICABLE TO THIS LOAN. YOU MUST USE THESE FIGURES TO PREPARE YOUR SETTLEMENT STATEMENT. YOU CANNOT DEVIATE FROM THESE FIGURES WITHOUT PRIOR WRITTEN AUTHORIZATION FROM VICE PRESIDENT OF LOAN OPERATIONS AND/OR ITS DIRECTORS .**

| LINE NO. ON SETTLEMENT STATEMENT                                    PAYEE | | AMOUNT |
|---|---|---|
| 801. Loan origination fee       % to | | |
| 802. Loan discount  2.206  % to  Ameriquest Mortgage Company | | $2,680.29 |
| 803. Apprsl/Prop Val to Reimbursed to Lender | | $450.00 |
| 804. Credit Report fee | | |
| 805. Inspection fee | | |
| 808. Yield Spread Premium to | | |
| 809. | | |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | | $70.00 |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | | $9.00 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | | $626.00 |
| 813. Admin to Ameriquest Mortgage Company | | $239.00 |
| 814. Doc. Prep. Fee to | | |
| 815. Credit Report Fee to | | |
| 816. Origination Fee       % to | | |
| 817. Application Fee to  Ameriquest Mortgage Company | | $360.00 |
| 818. Underwriting Fee to | | |
| 819. Service Provider Fee to | | |
| 820. Processing Fee  to | | |
| 821. Underwriting Fee to | | |
| 822. Appraisal Fee to | | |
| 901. Interest from 08/15/2005  to  09/01/2005  @  $23.27  per day | | $395.59 |
| 902. Mortgage insurance premium for          months to | | |
| 903. Hazard ins prem  to | | |
| 904. Flood ins prem  to | | |
| 1001. Hazard insurance      months @ $      per month | | |
| 1002. Mortgage insurance     months @ $     per month | | |
| 1003. Earthquake ins    months @ $     per month | | |
| 1004. County prop. taxes     months @ $     per month | | |
| 1005. Annual assess.    months @ $     per month | | |
| 1006. Flood    months @ $      per month | | |
| 1007. Windstorm ins    months @ $     per month | | |
| 1008. | | |
| 1101. Settlement or closing fee to NATIONS TITLE | (W) | $150.00 |
| 1102. Abstract or title search to | | |
| 1103. Title examination to | | |
| 1105. Document preparation to | | |
| 1106. Notary fees to  Mortgage Services | (W) | $300.00 |
| 1107. Attorney's fees to | | |
| 1108. Title insurance to  NATIONS TITLE AGENCY OF | (W) | $517.60 |
| 1109. Lender's coverage | | |
| 1110. Owner's coverage           $ | | |
| 1111. Settlement/Disbursement fee to | | |
| 1112. Escrow Fee to | | |
| 1201. Recording fees | (W) | $85.00 |
| 1202. City/county tax/stamps | | |
| 1203. State tax/ stamps | | |
| 1204. State specific fee | | |
| 1301. Demand to | | |
| 1302. Pest Inspection to | | |
| 1303. Survey Fee | | |
| 1304. Staff Appraiser Fee | | |
| 1305.  Reconveyance Fee to | | |
| 1306. | | |
| 1307. Property Val Fee to | | |
| 1308. Courier Fee | (W) | $71.00 |

..y amounts appearing on these lines are prepaid finance charges and cannot be increased or added once loan documents
...ve been prepared unless new loan documents are generated.

_____                    _____
Title Company Representative Signature                 Date



0000012961896903007430706

**<u>EXHIBIT F</u>**

# NOTICE OF RIGHT TO CANCEL

NDER:  Ameriquest Mortgage Company

DATE:  August 8, 2005
LOAN NO.:  0129516969 - 5649
TYPE:  FIXED RATE

BORROWER(S): Patrick E Lewis

ADDRESS:  8997 Garfield
CITY/STATE/ZIP:  Parma,MI 49269

PROPERTY:  8997 Garfield
Parma, MI 49269

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| :---: |
| _____ |

;

or
2.  The date you received your Truth in Lending disclosures;
or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE:  **(714)634-3494**
FAX:  **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| :---: |
| _____ |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____
SIGNATURE

_____
DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

| | | | |
| :--- | :--- | :--- | :--- |
| ROWER/OWNER Patrick E Lewis | Date | BORROWER/OWNER | Date |
| BORROWER/OWNER | Date | BORROWER/OWNER | Date |

1064-NRC (Rev 11/03)

0000012951696904000050101

**BORROWER COPY**

08/08/2005 2:49:06 PM

## NOTICE OF RIGHT TO CANCEL

'NDER:   Ameriquest Mortgage Company

DATE:  August 8, 2005
LOAN NO.:   0129516969 - 5649
TYPE:   FIXED RATE

BORROWER(S): Patrick E Lewis

ADDRESS:        8997 Garfield
CITY/STATE/ZIP:   Parma,MI 49269

PROPERTY:   8997 Garfield
                 Parma,  MI  49269

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

> **ENTER DOCUMENT SIGNING DATE**
> _____

   or
2.   The date you received your Truth in Lending disclosures;
   or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE:  **(714)634-3494**
FAX:      **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

> **ENTER FINAL DATE TO CANCEL**
> _____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____                    _____
SIGNATURE                                DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

| | | |
|---|---|---|
| RROWER/OWNER Patrick E Lewis _____ Date | BORROWER/OWNER _____ Date |
| BORROWER/OWNER _____ Date | BORROWER/OWNER _____ Date |

1064-NRC (Rev 11/03)
0000012951696940000050101

**BORROWER COPY**

08/08/2005 2:49:06 PM

## NOTICE OF RIGHT TO CANCEL

JDER:   Ameriquest Mortgage Company

DATE:   August 8, 2005
LOAN NO.:   0129516969 - 5649
TYPE:   FIXED RATE

BORROWER(S): Patrick E Lewis

ADDRESS:        8997 Garfield
CITY/STATE/ZIP:    Parma,MI 49269

PROPERTY: 8997 Garfield
               Parma,  MI  49269

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
| _____ |

;

or
2.   The date you received your Truth in Lending disclosures;
     or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:     **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
| _____ |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____                    _____
SIGNATURE                                            DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____ROWER/OWNER Patrick E Lewis     Date      BORROWER/OWNER                          Date

BORROWER/OWNER                          Date      BORROWER/OWNER                          Date

1064-NRC (Rev 11/03)

0000012951696904000050101

**BORROWER COPY**

08/08/2005 2:51:54 PM

## NOTICE OF RIGHT TO CANCEL

| | |
|---|---|
| LENDER:  Ameriquest Mortgage Company | DATE:  August 8, 2005 |
| | LOAN NO.:  0129516969 - 5649 |
| | TYPE:  FIXED RATE |

BORROWER(S): Patrick E Lewis

ADDRESS:      8997 Garfield
CITY/STATE/ZIP:   Parma,MI 49269

PROPERTY:  8997 Garfield
               Parma,  MI  49269

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

<div style="border:1px solid">ENTER DOCUMENT SIGNING DATE</div>   ;

   or
2.   The date you received your Truth in Lending disclosures;
   or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company          ATTN:  FUNDING
1600 S Douglass Rd                          PHONE: (714)634-3494
Anaheim, CA 92806                           FAX:    (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

<div style="border:1px solid">ENTER FINAL DATE TO CANCEL</div>

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____          _____
SIGNATURE                                              DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

| | | | |
|---|---|---|---|
| _____<br>BORROWER/OWNER Patrick E Lewis | Date | _____<br>BORROWER/OWNER | Date |
| _____<br>BORROWER/OWNER | Date | _____<br>BORROWER/OWNER | Date |

1004-NRC (Rev 11/03)

0000012951696904000S0101

**BORROWER COPY**

08/08/2005 2:51:54 PM

# NOTICE OF RIGHT TO CANCEL

NDER: Ameriquest Mortgage Company

DATE: August 8, 2005
LOAN NO.: 0129516969 - 5649
TYPE: FIXED RATE

BORROWER(S): Patrick E Lewis

ADDRESS: 8997 Garfield
CITY/STATE/ZIP: Parma,MI 49269

PROPERTY: 8997 Garfield
Parma, MI 49269

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
|---|
|  |
| ———————————— |

or
2. The date you received your Truth in Lending disclosures;
   or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1600 S Douglass Rd
Anaheim, CA 92806

ATTN: FUNDING
PHONE: (714)634-3494
FAX: (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
|---|
|  |
| ———————————— |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____          _____
SIGNATURE                                    DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

ROWER/OWNER Patrick E Lewis     Date          BORROWER/OWNER          Date

BORROWER/OWNER          Date          BORROWER/OWNER          Date


1064-NRC (Rev 11/03)
0000012951696940000050101

## LENDER COPY

**EXHIBIT G**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0129516969 - 5649         Borrower(s): Patrick E Lewis

Date: August 8, 2005

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.


_____          _____
Borrower/Owner  Patrick E Lewis                    Date


_____          _____
Borrower/Owner                                     Date


_____          _____
Borrower/Owner                                     Date


_____          _____
Borrower/Owner                                     Date

---

## REQUEST TO CANCEL

**I/We want to cancel loan #**_____.


_____          _____
Borrower/Owner Signature                           Date

---



000001295169690404220101

850 (10/00)

08/08/2005 2:51:54 PM

**LENDER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0129516969 - 5649          Borrower(s): Patrick E Lewis

Date:  August 8, 2005

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.**  This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make.  To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.**  No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends.  You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan.  The written statement must be signed and dated by any one borrower.  Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

---

Borrower/Owner  Patrick E Lewis                    Date

---

Borrower/Owner                                      Date

---

Borrower/Owner                                      Date

---

Borrower/Owner                                      Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____        _____
Borrower/Owner Signature                  Date



0000012951696904042201011

850 (10/00)

08/08/2005 2:51:54 PM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0129516969 - 5649          Borrower(s): Patrick E Lewis

Date:  August 8, 2005

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.**  This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make.  To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.**  No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends.  You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan.  The written statement must be signed and dated by any one borrower.  Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____
Borrower/Owner  Patrick E Lewis                         Date

_____          _____
Borrower/Owner                                          Date

_____          _____
Borrower/Owner                                          Date

_____          _____
Borrower/Owner                                          Date

---

## REQUEST TO CANCEL

**I/We want to cancel loan #**_____.

_____          _____
Borrower/Owner Signature                                Date

---



0000012951696990404220101

850 (10/00)

08/08/2005 2:49:06 PM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0129516969 - 5649          Borrower(s): Patrick E Lewis

Date: August 8, 2005

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____     _____

Borrower/Owner  Patrick E Lewis                              Date


_____     _____

Borrower/Owner                                                        Date


_____     _____

Borrower/Owner                                                        Date


_____     _____

Borrower/Owner                                                        Date

---

## REQUEST TO CANCEL

**I/We want to cancel loan #**_____.

_____     _____

Borrower/Owner Signature                        Date

---



0000012951696904042220101

850 (10/00)

08/08/2005 2:49:06 PM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0129516969 - 5649       Borrower(s): Patrick E Lewis

Date: August 8, 2005

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1600 S Douglass Rd Anaheim, CA 92806
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____        _____
Borrower/Owner  Patrick E Lewis         Date

_____        _____
Borrower/Owner                          Date

_____        _____
Borrower/Owner                          Date

_____        _____
Borrower/Owner                          Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____        _____
Borrower/Owner Signature                Date

---



0000012951696904042Z0101

850 (10/00)

08/08/2005 2:51:54 PM

**BORROWER COPY**

**<u>EXHIBIT H</u>**

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
### 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
Email: edcombs@aol.com
www.edcombs.com

July 12, 2006

**BY CERTIFIED MAIL**

Ameriquest Mortgage Company
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

AMC Mortgage Services, Inc.
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

Ameriquest Mortgage Securities, Inc.
1100 Town & Country Road, Suite 1100
Orange, CA 92868

       Re:    Notice of rescission, claim and lien, Patrick E. Lewis (and Violata S.
              Lewis), 8997 Garfield, Parma, Jackson County, MI 49269, loan of
              August 8, 2005

Ladies/Gentlemen:

        Each of the above clients hereby give notice that they rescind the above loan for
noncompliance with the Truth in Lending Act.

        Please be further advised that we have been retained by the above clients to file suit
against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

        If you claim that the owner of the loan is other than Ameriquest Mortgage Company
or Ameriquest Mortgage Securities, Inc., please identify the owner pursuant to 15 U.S.C. §1641(d).

        Finally, please provide an account history so that we may compute the appropriate

amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on July12, 2006.

_____
Daniel A. Edelman

# EXHIBIT I



*February 26, 2009*

Patrick E Lewis
2100 Weber Ave
Chesapeake, VA 23320

Re: Loan No. 4001703075

### **** URGENT MESSAGE – TIME SENSITIVE – REQUIRES IMMEDIATE ATTENTION – THIS COULD SAVE YOUR HOME FROM FORECLOSURE! ****

*You recently received a joint letter from Citi Residential Lending (CRL) and American Home Mortgage Servicing (AHMSI) advising you that the servicing of your mortgage loan is being transferred to AHMSI effective after February 10, 2009. This letter was accompanied with a Validation of Debt showing the amounts you owe per CRL's records. Based on CRL's records, your account is delinquent or perhaps already in foreclosure. We have developed a special program that will ease your payment burden and will assist you in keeping your home through this difficult period. Please read the following information carefully and respond to us as quickly as possible. This is a limited time offer and requires your immediate attention.*

Dear Patrick E Lewis :

Welcome once again to the AHMSI family. We are pleased to begin providing the servicing on your mortgage loan. Because we do not want you to lose your home, we are writing to advise that you may be eligible for a permanent loan modification that will allow us to suspend your loan from foreclosure, bring your loan current and make your monthly payments more affordable.

Contingent on: (i) you executing the enclosed Loan Modification Agreement and returning it, along with the required down payment and financial documentation indicated below, by March 27, 2009, (ii) our determination that the financial documentation you provided is adequate for us to draw the requisite conclusions, (iii) our obtaining any necessary investor and/or insurer approval to modify your loan, and (iv) our determination that there are no other impediments to the modification (including but not limited to potential fraud, incorrect figures or another loan modification recently completed or in process on your loan) we will modify the terms of your loan documents in accordance with the following:

- The amount of your arrearage (which includes but is not limited to accrued and unpaid interest, accrued late charges, and advances made by us for your tax and insurance payments, attorneys' fees and costs, property inspections, etc.) will be added to your loan balance, bringing your loan current.

- Your monthly payments of principal and interest will be calculated at a fixed rate of 5% for a period of 5 years, effective March 1, 2009, 6% for 1 year, effective March 1, 2014, 7% for 1 year, effective March 1, 2015, and 7.125% for the remaining term of your loan, effective March 1, 2016.
- Your March and April 2009 payment(s) in the amount of $1,532.88 (your down payment) will be due at signing, so your regular modified monthly payments will not begin until May 1, 2009.
- You will be assessed a $250.00 fee to complete this loan modification (unless restricted by law in your state).

We must receive the following on or before March 27, 2009:

1. The enclosed Financial Analysis Form, fully completed and signed by all borrowers, to establish that you are experiencing a non-temporary financial hardship.
2. Copies of the two most recent pay stubs and bank statements for all borrowers, to establish that you have sufficient income to make payments on your loan as modified. If you are self-employed, please provide 6 months' profit and loss statements.
3. Your down payment, in the form of a cashier's check, certified funds, Western Union Quick Collect, Money Gram or money order, in the amount indicated in the Loan Modification Agreement.
4. The Loan Modification Agreement, signed by all borrowers (and any non-borrower mortgagors). Both the Loan Modification Agreement Pages 4 and 5 (with the signature of all signatory parties) along with Schedule A (with the initials of all signatory parties at the bottom) must be returned.

**PLEASE NOTE THAT THE LOAN MODIFICATION AGREEMENT WILL NOT BE VALID AND CANNOT BE PROCESSED UNLESS WE TIMELY RECEIVE ALL OF THE ITEMS INDICATED ABOVE, IN A FORM THAT IS ACCEPTABLE TO US, AND UNLESS AND UNTIL WE ARE SATISFIED THAT ALL OTHER CONTINGENCIES MENTIONED ABOVE HAVE BEEN SATISFIED.** We have provided a self-addressed, prepaid express delivery envelope for your convenience. Also provided for your convenience are two originals of the Loan Modification Agreement so you can retain one for your records.

If you have any questions regarding this important opportunity, please contact us at your earliest convenience at (877) 304-3100. Our office hours are Monday through Friday, 7:00 a.m. to 9:00 p.m., and Saturday, 7:00 a.m. to 4:00 p.m., Central Time.

Sincerely,
American Home Mortgage Servicing, Inc.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR, BUT IT DOES NOT IMPLY THAT AMERICAN HOME MORTGAGE SERVICING, INC. IS ATTEMPTING TO COLLECT MONEY FROM ANYONE WHOSE DEBT HAS BEEN DISCHARGED PURSUANT TO (OR IS UNDER THE PROTECTION OF) THE BANKRUPTCY LAWS OF THE UNITED STATES; IN SUCH INSTANCES, IT IS INTENDED SOLELY FOR INFORMATIONAL PURPOSES.

Loan #4001703075

# LOAN MODIFICATION AGREEMENT
### (Providing for Step Interest Rate with Initial 60 Month Fixed 5% Interest Rate)

This Loan Modification Agreement (this "Agreement"), made as of the 1st day of February, 2009, (the "Effective Date") between Patrick E Lewis (collectively, "Borrower") and American Home Mortgage Servicing, Inc., as servicer, ("Loan Servicer"), modifies (1) the mortgage, deed of trust, or security deed (the "Security Instrument") dated August 15, 2005, and (2) the promissory note (the "Note"), bearing the same date as, and secured by, the Security Instrument (Borrower's obligation under the Note, Security Instrument and this Agreement hereinafter referred to as the "Loan"), which Security Instrument covers the real and personal property located at 8997 Garfield, Parma, MI, 49269,

(Property Address)
more fully described in the Security Instrument and defined therein as the "Property." All capitalized terms in this Agreement shall have the same meanings as set forth in the Note and Security Instrument, unless defined in this Agreement; all schedules and exhibits attached to this Agreement are incorporated into and made part of this Agreement; and all references to this Agreement include the schedules and exhibits.

In consideration of the mutual promises and agreements exchanged, Loan Servicer and Borrower agree that the Note and Security Instrument shall be modified hereby as follows:

1. As of the Effective Date, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $135,121.63,, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any accrued and unpaid interest and other amounts capitalized as set forth in Schedule "A," attached hereto and made a part hereof.

2. Borrower promises to pay the New Principal Balance, plus interest, to the order of Loan Servicer. The interest rate and monthly payment on your Note, and the applicable interest change dates and payment due dates, are modified as follows:

| Year | New Interest Rate | Interest Rate Change Date | New Monthly Payment Due Date | New Payment Amount | Number of Payments |
|------|-------------------|---------------------------|------------------------------|--------------------|--------------------|
| 2009 | 5% | February 1, 2009 | March 1, 2009 | $766.44* | 60 |
| 2014 | 6% | February 1, 2014 | March 1, 2014 | $836.21* | 12 |
| 2015 | 7% | February 1, 2015 | March 1, 2015 | $906.46* | 12 |
| 2016 | 7.125% | February 1, 2016 | March 1, 2016 | $915.12* | 235 |

*plus any amounts due for taxes and insurance, if applicable (see Schedule A).

The two payments due for March 1, 2009, and April 1, 2009, must be made in a lump sum upon execution of this Agreement (the "Mod Start Payment"). After the Mod Start Payment is made, the next payment will be due May 1, 2009. If the Loan was an adjustable-rate mortgage ("ARM") loan and Borrower receives an ARM adjustment notice prior to the payment beginning date indicated in the preceding sentence, Borrower should ignore such notice and make payments in accordance with this Agreement. If on September 01, 2035 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

**AS MORE PARTICULARY SET FORTH IN PARAGRAPH 7 BELOW, THIS AGREEMENT SHALL BE VOID AND NOT TAKE EFFECT UNLESS THE MOD START PAYMENT IN THE FORM OF A CASHIER'S CHECK OR CERTIFIED FUNDS, THE REQUIRED FINANCIAL INFORMATION, AND THIS AGREEMENT, ARE RECEIVED ON OR BEFORE MARCH 27, 2009.**

3.  Borrower will comply with all covenants, agreements, and requirements of Note and Security Instrument, including, without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are canceled, null and void, as applicable:

    (a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)     all terms and provisions of any adjustable rate rider, or other instrument or document (if any) that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

4.  Borrower understands, acknowledges and agrees that:

    (a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Note and Security Instrument shall also apply to default in the making of the modified payments under this Agreement.

    (b)     Except as herein modified, all covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect and none of Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Loan Servicer's or Note Holder's rights or remedies under the Note and Security Instrument, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Loan Servicer and Note Holder are presently entitled against the Property, Borrower, any other property or any other persons in any way obligated for, or liable on, the Note and Security Instrument, are expressly reserved by Loan Servicer and Note Holder.

    (c)     Borrower has no right of set-off or counterclaim against Note Holder or Loan Servicer, or any defense to the obligations of the Note or Security Instrument.

    (d)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (e)     If not prohibited by the law of the state(s) where the Property and Borrower are located, a modification fee or, alternatively, a document preparation fee, over and above the costs and expenses set forth in (e) above, shall be paid by Borrower to Loan Servicer, and, to the extent such fee becomes part of the New Principal Balance, shall be secured by the Security Instrument. The type and amount of such fee, and the manner in which it is paid by Borrower, is set forth in Schedule "A."

    (f)     In addition to and simultaneously with Borrower's monthly payments as set forth in paragraph 2 above, Borrower shall be required pay to Loan Servicer, until such time as the New Principal Balance and interest are paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Loan Servicer shall not constitute a waiver of such requirement at any future date, and Loan Servicer specifically

reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to Borrower.

(g)    Borrower shall make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement.

5.    Borrower and Loan Servicer understand, acknowledge and agree that:

(a)    If foreclosure proceedings have been commenced with respect to the Loan, upon Loan Servicer's receipt of the required financial information, the Mod Start Payment and this Agreement, fully executed, Loan Servicer shall forbear from taking any further action in connection with any such foreclosure proceeding. **In consideration of Lender's forbearance, Borrower hereby expressly waives the right to challenge or contest the foreclosure process initiated by Loan Servicer, Loan Servicer's attorney and/or the foreclosure trustee, including all acts or omissions prior to or subsequent to this Agreement, whether such acts or omissions were performed by Loan Servicer, Loan Servicer's attorney, the foreclosure trustee, and/or any party acting on behalf of the Loan Servicer, Loan Servicer's attorney and/or the foreclosure trustee.** Borrower admits and recognizes that any and all postponements of a foreclosure sale, made during the term of this Agreement or in anticipation of this Agreement, are done by mutual consent of Borrower and Loan Servicer and that, to the extent allowed by applicable law, the foreclosure sale may be postponed from time to time until the loan is fully reinstated or the foreclosure sale is consummated.

(b)    Time is of the essence of this Agreement, in particular the receipt by Loan Servicer of this Agreement (fully executed by Borrower and any Non-Obligor Mortgagors), all required financial information, and the Mod Start Payment. **There are no grace periods with respect to the payments due under this Agreement, and failure to make timely payments as specified in paragraph 2 constitutes a breach of the terms of this Agreement. Notwithstanding the above, late charges as specified in the Note will continue to accrue as allowed by applicable law.**

(c)    If Borrower fails to make any of the payments specified in paragraph 2 on the due dates and in the amount stated, should Loan Servicer determine at any time that any financial information submitted by borrower has been falsified or should Borrower otherwise fail to comply with each and all of the terms and conditions herein, Loan Servicer, at its sole option, may terminate this Agreement without further notice to Borrower. In such case, all amounts that are owing under the Note and Security Instrument, as amended by this Agreement, shall become immediately due and payable, and Loan Servicer shall be permitted to exercise any and all rights and remedies provided for in the Note and Security Instrument, including, but not limited to, immediate commencement of a foreclosure action without further notice to Borrower, and/or resumption of a pending foreclosure action without further notice to Borrower, and/or conducting a pending foreclosure sale without further notice to Borrower.

(d)    Loan Servicer represents that it has the authority to enter into this Agreement on behalf of the Note Holder.

(e)    The terms, clauses, conditions and provisions of this Agreement are binding upon and shall inure to the benefit of all assignees, successors-in-interest, personal representatives, estates, administrators, heirs, devisees, and legatees of each of the parties hereto.

(f)    Except as is otherwise provided for herein, this Agreement (along with the Note and Security Instrument) constitutes the entire agreement between the parties with reference to the subject matter hereof, and supersedes any prior agreement, oral or written, with respect thereto; and, in entering into this Agreement, no party is relying upon any representation, warranty, agreement, or covenants not set forth herein.

(g)    This Agreement may be signed in one or more counterparts, each of which shall be deemed an

original but all of which together shall constitute one and the same Agreement.

6. To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as so modified, legal and enforceable under applicable law, provided that should such modification or deletion materially diminish the benefit of this Agreement to any of Loan Servicer, Note Holder or Borrower, the Agreement shall be of no force or effect and the relationship of Loan Servicer, Note Holder and Borrower shall be entirely governed by the provisions of the Note and Security Instrument.

7. This Agreement shall be of no force or effect, and no action will be taken by Loan Servicer to cease collection and foreclosure activities relating to the Loan, unless and until Loan Servicer has received, no later than March 27, 2009, (a) this Agreement, fully executed and initialed by Borrower and any Non-Obligor Mortgagors, (b) the Financial Analysis Form (as set forth in Schedule "B," attached hereto and made a part hereof), fully completed and executed by Borrower, (c) the additional financial information requested in the body of the Financial Analysis Form,, and (d) a cashier's check or certified funds in the amount of the Mod Start Payment. This Agreement is not considered "received" by Loan Servicer unless and until it has been delivered to Loan Servicer at 4650 Regent Blvd., Suite 100, Irving, TX 75063, and internally date stamped. **Borrower understands, acknowledges and agrees that this Agreement cannot be processed and shall be of no force or effect if: (i) Borrower files a bankruptcy petition prior to Loan Servicer's receipt of this Agreement, (ii) a separate and distinct loan modification petaining to the Loan is in process or has been entered into contemporaneously with this Agreement, (iii) Loan Servicer discovers that third party (e.g. investor or insurer) preapproval is necessary to modify the Loan, or (iv) in Loan Servicer's sole and absolute discretion, the above- required financial information fails to document a non-temporary financial hardship, an inability to make payments under the terms of the original Note, and a financial ability to make payments on the Loan as modified by this Agreement.**

---

**NOTICE TO BORROWERS WITH ADJUSTABLE-RATE LOANS:** For Borrowers with an adjustable-rate loan, please read this notice carefully. In accordance with subparagraphs 3(a) and 3(b) of this Agreement, Borrower understands that the Loan is modified from an adjustable-rate loan to a step-rate loan. An adjustable-rate loan differs from a step-rate loan. With a step-rate loan, the interest rate stays the same during specified intervals as provided under paragraph 2 of this Agreement.. With an adjustable-rate loan, the interest rate changes periodically, in relation to an index and a margin, and payments may go up or down accordingly. **IF INTEREST RATES DECREASE, AN ADJUSTABLE-RATE LOAN COULD BE LESS EXPENSIVE OVER A LONG PERIOD THAN A FIXED-RATE LOAN. YOU UNDERSTAND THAT BY MODIFYING THIS LOAN TO A STEP-RATE LOAN, YOU ARE FOREGOING THIS POTENTIAL ADVANTAGE.**

---

IN WITNESS WHEREOF, the undersigned have set their hands hereunto as of the date written below.

American Home Mortgage Servicing, Inc.

By: _____

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

NON-OBLIGOR MORTGAGORS

For purposes of this Agreement, the undersigned are not Borrowers; they are "Non-Obligor Mortgagors" (that is, this term is defined to mean (i) signatories on the Security Instrument but not obligated on the Note or (ii) persons not obligated on the Note but added to title on the Property after the origination of the above-referenced Loan). By his/her/their signature(s) below on this Agreement, the undersigned Non-Obligor Mortgagors acknowledge and agree (x) that his/her/their interest in the Property was subject to the Security Instrument and remains subject to the Security Instrument as modified by this Agreement, and (y) that he/she/they are bound by all of the terms and conditions of this Agreement, except to the extent that such terms and conditions pertain to any promise or obligation to pay Loan Servicer or Note Holder any amount.

Acknowledged and agreed to: _____     Date:
                                              Non-Obligor Mortgagor

Acknowledged and agreed to: _____     Date:
                                              Non-Obligor Mortgagor

# Loan Modification Agreement
# Schedule A

Name of Borrower(s):
Patrick E Lewis

Loan Number: 4001703075

| DESCRIPTION OF TOTAL AMOUNT DUE | TOTAL DUE |
|---|---|
| **Current Principal Balance** | $119,051.52 |
| Plus Delinquent Interest Through 01/31/2009: | $12,377.65 |
| Plus Advances Made for Attorneys' Fees/Costs/Inspections | $270.00 |
| Plus Escrow (tax and insurance) Shortage (including escrow advances if applicable) | $2,486.00 |
| Plus Unpaid Late Charges | $686.46 |
| Modification Fee | $250.00 |
| Plus Other Accrued and Unpaid Fees | $0.00 |
| Less Suspense Balance (funds held that will reduce amount owed) | $0.00 |
| **Total Amount to be Capitalized** (added to the current principal balance) | $16,070.11 |
| **New Principal Balance** | $135,121.63 |

| Monthly Escrow Payment (for Taxes, Insurance and Optional Insurance)* | $0.00 |
|---|---|

**\* Includes estimated amount for the monthly escrow payment (which is subject to change).**

Borrowers' Initials _____    _____    _____    _____



**FINANCIAL ANALYSIS FORM**
**SCHEDULE B**

| | |
|---|---|
| **Loan #:** | |

| Borrower: | Res. Tel. #: | Work Tel. #: |
|---|---|---|
| Social Security Number: | | |
| Co-Borrower: | Res. Tel. #: | Work Tel. #: |
| Social Security Number: | | |

Property Address:

| City: | State: | Zip Code: |
|---|---|---|

Current Address (if different from property address – Do not use Post Office Box):

| City: | State: | Zip Code: |
|---|---|---|

Total number of dependents: _____

Have you contacted credit-counseling services? _____

Is your home listed for sale? _____
If yes, who is your agent? _____

| Borrower Employment History | | | Co-Borrower Employment History | | |
|---|---|---|---|---|---|
| Currently Employed? | Yes | No | Currently Employed? | Yes | No |
| How Long?: | | | How Long?: | | |
| Present Employer: | | | Present Employer: | | |
| Position/Title: | | | Position/Title: | | |
| If self-employed, name of co.: | | | If self-employed, name of co.: | | |

| Description | Monthly Income | | Total |
|---|---|---|---|
| **Borrower** | | **Co-Borrower** | |
| Social Security Number: | | | |
| Net Salary/Wages | $ | $ | $ |
| Unemployment Income | $ | $ | $ |
| Child Support/Alimony | $ | $ | $ |
| Disability Income | $ | $ | $ |
| Rental Income | $ | $ | $ |

**Assets/Liabilities —** **If you own real estate in addition to your personal residence, please attach a complete list of property addresses / name(s) of Lender / Lender's address and phone number / account numbers / monthly payment / amount owed / estimated value & rental income.**

| Description | Estimated Value | Amount Owed | Net |
|---|---|---|---|
| Personal Residence | $ | $ | $ |
| Personal Property | $ | $ | $ |
| Checking Accounts | $ | $ | $ |
| Savings Accounts | $ | $ | $ |
| IRA/401K/Keogh Accounts | $ | $ | $ |
| Stocks/Bonds/CD's | $ | $ | $ |
| Cash Value of Life Insurance | $ | $ | $ |
| Other | $ | $ | $ |
| **Totals** | $ | $ | $ |

OOMCAPPL (07-07-05))

## Expenses

| Description | Monthly Payment | Balance Due | Delinquent Yes | No |
|---|---|---|---|---|
| Other Mortgages/Liens/Rents | $ | $ | | |
| Alimony/Child Support | $ | $ | | |
| Homeowners Assoc. Dues | $ | $ | | |
| Child Care | $ | $ | | |
| Health Insurance | $ | $ | | |
| Medical | $ | $ | | |
| Credit Card/Installment Loans | $ | $ | | |
| Auto Loan(s) | $ | $ | | |
| Auto Expenses/Gasoline/Insurance | $ | $ | | |
| Food/Spending Money | $ | $ | | |
| Water/Sewer/Utilities/Phone | $ | $ | | |
| Other | $ | $ | | |

## Borrower(s) Financial Hardship

### (Reason for Delinquency/Inability to Satisfy Mortgage Obligation)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

If my/our lender and/or servicer determine that the information and/or documentation provided by me/us with this financial analysis form is incomplete, or insufficient to render a decision as to my/our eligibility for a loss mitigation workout, my/our request for a loss mitigation workout may be denied or delayed until I/we have provided the lender and/or servicer with additional information and/or documentation as requested by them. If any information and/or documentation has been misrepresented by me/us, I/we understand and agree that such misrepresentation will be grounds either for immediate rejection of my/our request for assistance or immediate termination of any loss mitigation workout agreed to by the lender and/or servicer. Furthermore, I/we shall be liable for any losses or damages suffered by the lender and/or servicer as a result of such misrepresentation.

By signing below, I/we certify that the information and documentation provided is true and correct to the best of my/our knowledge. In the event a third party is designated to act on my/our behalf, I/we have included written authorization to the designee to act on my/our behalf.

In the event I/we am/are able to bring the loan current or are able to sell the property for an amount sufficient to pay off my/our mortgage loan in full during the evaluation process, I/we understand that

OOMCAPPL (07-07-05))

my/our request for participation in American Home Mortgage Servicing, Inc's loss mitigation program will be withdrawn without further action.

Submitted this _____ day of _____, _____ .

_____          _____
Signature of Borrower                                              Date

_____          _____
                                              Signature of
Borrower                                                              Date

### R E M I N D E R

Before mailing, make sure you have signed and dated this form. Include copies of your last two months pay stubs, and bank statements of your checking and/or savings accounts. If you are self-employed, attach a copy of the past six-month's profit and loss statement along with your most recent Federal Tax returns. If property is Income/Rental property, please provide a copy of the current Lease Agreement(s).

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

OOMCAPPL (07-07-05))