IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION _____ THIS DOCUMENT RELATES TO ALL ACTIONS _____ | ) ) ) ) ) ) ) | Lead Case No. 05 C 7097 MDL No. 1715 Centralized before The Hon. Marvin E. Aspen |

**THIRD-PARTY DEFENDANTS' OPPOSITION TO
THIRD-PARTY PLAINTIFFS' MOTION TO FILE FIFTH
AMENDED CONSOLIDATED THIRD-PARTY COMPLAINT**

    Third-Party Defendants, through their undersigned Liaison Counsel, hereby respond to Third-Party Plaintiffs' Motion to File Fifth Amended Consolidated Third-Party Complaint ("Motion") and respectfully request that this Court deny the Motion. In support thereof, Third-Party Defendants state as follows:

**Introduction**

    1.  The Third-Party Plaintiffs' proposed Fifth Amended Complaint seeks to implicate, for the first time, hundreds of Third-Party Defendants in additional actions underlying this MDL, under the category of "title underwriters," without any legitimate factual or legal basis. The Fifth Amended Complaint greatly expands the number of cases for which Third-Party Plaintiffs seek damages from the Third-Party Defendants. This new addition comes years into this case, with no explanation as to why it has taken this long to identify additional actions that implicate these defendants whose names and role in the

matters were clearly known to the Third-Party Plaintiffs from the inception.[1] The existing size and never-ending expansion of this case have made it virtually impossible to resolve efficiently. For these reasons, as explained in more detail below, Third-Party Defendants request that the Court deny the Motion to File the Fifth Amended Complaint.

**Facts**

2. Third-Party Plaintiffs filed their original Consolidated Third-Party Complaint almost two years ago, on or about July 31, 2007. Docket Entry ("D.E.") # 955. Since then, Third-Party Plaintiffs have sought leave of this Court to amend their consolidated complaint on <u>five</u> different occasions.

3. Third-Party Plaintiffs filed their original Consolidated Third-Party Complaint on or about July 31, 2007. D.E. # 955.

4. After two amended consolidated third-party complaints were filed, on October 14, 2008, this Court entered an order granting, in part, and denying, in part, a motion filed by the Third-Party Defendants on a consolidated basis to dismiss certain counts of Ameriquest's Second Amended Consolidated Third-Party Complaint. D.E. # 2452.

5. On December 16, 2008, the Court entered an order granting all Third-Party Defendants until April 6, 2009 within which to file "any necessary consolidated motions to dismiss and/or answers" to what were then the remaining counts of the Second Amended Third-Party Complaint. D.E. # 2566.

---

[1] Although some of these defendants were previously listed as Third-Party Defendants under the Fourth Amended Complaint, the Fifth Amended Complaint greatly expands the number of cases for which Ameriquest seeks damages against them. For example, while Ticor Title Insurance Company was listed with respect to four transactions in the Fourth Amended Complaint, it is listed with respect to 101 transactions in the Fifth Amended Complaint.

2

6. On January 23, 2009, pursuant to leave of Court granted on January 22, 2009, Ameriquest filed its Third Amended Consolidated Third-Party Complaint. D.E. # 2599.

7. On February 4, 2009, prior to the date responsive pleadings to the Third Amended Consolidated Third-Party Complaint would have been required under Rule 12(a), Ameriquest filed a motion for leave to file a Fourth Amended Consolidated Third-Party Complaint (the "Fourth Amended Complaint"). D.E. # 2616.

8. On April 6, 2009, Third-Party Defendants filed a Motion for Extension of Time to Respond to the Third-Party Complaint requesting that Third-Party Defendants be granted thirty-five days from the filing of the Fourth Amended Complaint to file responsive pleadings to the Fourth Amended Complaint. D.E. # 2690.

9. On April 29, 2009, this Court granted Ameriquest's motion for leave to file a Fourth Amended Complaint and Third-Party Defendants' motion, allowing Third-Party Defendants until June 3, 2009 to respond to the Fourth Amended Complaint. D.E. # 2735.

10. On May 22, 2009, prior to the date responsive pleadings to the Fourth Amended Complaint would have been required pursuant to this Court's order dated April 29, 2009, Ameriquest filed its Motion seeking leave to file a Fifth Amended Consolidated Third-Party Complaint ("Fifth Amended Complaint"). D.E. # 2805. In their Motion, Third-Party Plaintiffs noted that they seek leave to amend in order to do three things: "(1) add new Third-Party Defendants, who have been identified based on newly transferred cases; (2) add a new Third-Party Plaintiff, Town & Country, which is also necessary based on the inclusion of newly transferred cases; and (3) to further clarify its negligence claims." Motion at p. 1.

Third-Party Plaintiff's also state that, "Third-Party Defendants have not yet responded to the Fourth Amended Complaint so they are not prejudiced by a further amendment adding parties and clarifying the negligence and negligent misrepresentation claims." Motion at p. 3-4.

## Argument

11. Pursuant to Federal Rule of Civil Procedure 15(a) "a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has clarified that leave should only be "freely given" where there is an absence of the following – "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

12. "Undue prejudice 'is the most important factor in determining whether to allow an amendment to a complaint.'" Stephenson v. Hartford Life & Annuity Ins. Co., 2006 U.S. Dist. LEXIS 60696 (N.D. Ill. Aug. 9, 2006) (internal citations omitted). "Undue prejudice has been found in cases where the amendment 'brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint;' and where the amendment would require expensive and time-consuming new discovery." Conroy Datsun, Ltd. v. Nissan Motor Corp., 506 F. Supp. 1051, 1054 (N.D. Ill. 1980) (citing A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp., 68 F.R.D. 383, 385 (N.D. Ill. 1975)). "In such instances, a motion for leave

4

to amend should be denied because the prejudice to the defendant outweighs the right to have the case tried on the merits." Id.

13. The proposed Fifth Amended Complaint will unduly prejudice the Third-Party Defendants because it implicates a number of Third-Party Defendants in numerous additional transactions, thus subjecting those Third-Party Defendants to greatly expanded liability in this matter. In the Fourth Amended Complaint (D.E. #2736), Third-Party Plaintiffs identify the claims out of which their claims against the Third-Party Defendants arise in charts attached to the complaint as Exhibits A and B. Exhibit A, which refers to the claims against the Title Defendants (including Closing Agents and Title Underwriters), contains four columns: (i) Underlying Case; (ii) Name of Borrower Plaintiff, (iii) Title Defendant, and (iv) Date of Agreement with Ameriquest and/or Argent. Exhibit B, which refers to the claims against the Broker Defendants, contains a fifth column identifying the Broker Defendants. Conversely, in the Fifth Amended Complaint, the charts attached to the complaint as Exhibits A and B both contain a column in addition to those listed above identifying the relevant "Underwriter" for each transaction at issue in this matter. Third-Party Plaintiffs also expand upon their definition of the parties in paragraph 4 of the Fifth Amended Complaint and now allege:

> On information and belief, the Closing Agents and Title Companies were acting within the course and the scope of their actual and apparent authority in providing the closing services; as show by, *inter alia*, the issuance of Closing Protection Letters in Title Underwriter's name and on the Title Underwriter's letterhead; providing closing services as an "approved" agent on behalf of the Title Company and/or Title Underwriter and with the Title Company's and/or Title Underwriter's express approval; the Title Company's or Title Underwriter's utilization

of supervisory authority and audit responsibilities over the Closing Agent's activities; and because of the integral nature of the closing to the Title Company and/or Title Underwriter's business, the Closing Agent conducted closings as part of the Title Company's or Title Underwriters' relationship with the Closing Agent. (Motion, Ex. A, ¶ 4).

14. By identifying the Underwriters as a distinct defendant in each and every transaction identified in the Fifth Amended Complaint, Third-Party Plaintiffs have greatly expanded the liability of the Third-Party Defendants, particularly the Underwriters. Under the Fourth Amended Complaint, Underwriters were only identified as parties to a transaction in which the Underwriter actually participated in the relevant closing transaction. Under the proposed Fifth Amended Complaint, Underwriters are now alleged as parties <u>distinct from the Title Defendants</u> in each transaction in which an Underwriter merely issued a title policy, regardless of whether that Underwriter actually participated in the relevant closings. There is simply no basis for liability against these newly named parties. The allegations in the Fifth Amended Complaint relate to conduct that occurred specifically at the closings of these transactions, and Third-Party Plaintiffs now seek to implicate parties regardless of whether they were even present at the closings. The Fifth Amended Complaint thus unduly prejudices Third-Party Defendants by greatly expanding the number of underlying cases for which Ameriquest seeks indemnification from certain Third-Party Defendants.

15. Third-Party Plaintiffs provide no legal support for their claim that the request for leave to amend will not prejudice Third-Party Defendants. In <u>Stephenson v. Hartford Life & Annuity Ins. Co</u>, one of two cases cited by Third-Party Plaintiffs in their

Motion, the plaintiff sought leave to amend its complaint and add two additional defendants and one additional plaintiff. 2006 U.S. Dist. LEXIS 60696 (N.D. Ill. Aug. 9, 2006). The Court granted plaintiff's motion with respect to adding the two additional defendants, in part, because the Court found that the plaintiff did not delay in adding the defendants since it presented its motion shortly after receiving documents that identified the additional defendants. Id. at *29. However, with respect to plaintiff's request to add an additional plaintiff the Court denied the motion due to plaintiff's pre-existing knowledge of the additional plaintiff's role in the matter. The Court held, "Where the party seeking an untimely amendment knows or should have know of the acts upon which the proposed amendment is based, but fails to assert them in a timely fashion, the amendment will be denied." Id. at *47. See also Conroy, 506 F. Supp. at 1055 (motion to amend denied where information was "readily available to plaintiffs well before the filing of their motion for leave to amend").

    16. Like the moving parties in Stephenson and Conroy, Third-Party Plaintiffs here have offered no explanation for their failure to identify these additional parties earlier in this litigation (which has been proceeding for several years). Rather than adding only Third-Party Defendants as a result of "newly transferred cases" as Third-Party Plaintiffs allege in their Motion, many of the "new" cases involving Underwriters were filed between 2005 and 2007. There is simply no explanation for Third-Party Plaintiffs' delay in adding these parties and significantly expanding Third-Party Defendants' liability in this matter. As a result of this delay, Third-Party Defendants will suffer undue prejudice and Third-Party Plaintiffs' Motion therefore must be denied. See e.g. Continental Bank, N.A. v. Meyer, 10

7

F.3d 1293, 1298 (7th Cir. 1993) (where facts were known to plaintiff prior to amendment, district court did not abuse its discretion in refusing the amendment because of undue delay).

17. Finally, the Third-Party Plaintiffs' Motion prejudices the parties because it threatens to bring these entire proceedings to a virtual standstill with no potential resolution in sight. If Third-Party Plaintiffs are permitted to continue to bring new claims and new theories of liability every few months, then it will be difficult if not impossible for most Third-Party Defendants to settle the claims against them. Any such settlement would bring no finality, since a Third-Party Defendant would never know what new creative theory the next amended Third-Party Complaint might bring. Further, the newly asserted legal theories are, in part, based upon an alleged "agency relationship" between title insurance underwriters and closing agents. Notably, Third-Party Plaintiffs allege this agency relationship "on information and belief." (Motion, Ex. A, ¶ 4). In fact, Third-Party Plaintiffs know that the closing agents do not act as agents of the underwriters, since prior versions of the Consolidated Third-Party Complaint specifically alleged that it was the Third-Party Plaintiffs themselves who contracted with the closing agents. In any event, such a legal theory requires a claim-by-claim analysis of the relationship between the Third-Party Plaintiff, the underwriter, and the closing agent for each loan. Engaging in such discovery for each of hundreds of claims in the context of a single proceeding would be vastly more time-consuming than if done in the context of separate lawsuits.

18. As the Court is aware, the entire purpose of multi-district litigation is to "promote just and efficient conduct of multidistrict actions" by avoiding the "duplication of discovery, prevent[ing] inconsistent pretrial rulings, and conserve[ing] the resources of the

8

parties, their counsel, and the judiciary." See United States v. Diabetes Treatment Ctr., 238 F.Supp.2d 270, 273 (D.C. 2002); In re Air Crash off Long Island, New York, on July 17, 1996, 965 F.Supp. 5, 7 (S.D.N.Y. 1997); In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig., 424 F. Supp. 504, 506 (J.P.M.L. 1976). Third-Party Plaintiffs' proposed amendments would make this litigation anything but "just and efficient."

19. Given the length of time that this case has proceeded and the prejudice that Third-Party Defendants will necessarily suffer if Third-Party Plaintiffs' Motion is granted, Third-Defendants respectfully request that this Court deny Third-Party Plaintiffs' Motion.

WHEREFORE, Third-Party Defendants, through their Liaison Counsel, respectfully request that this Court deny Third-Party Plaintiff's Motion to File Fifth Amended Consolidated Third-Party Complaint.

Dated: June 8, 2009

        Respectfully submitted,

        By    /s/ David J. Chizewer

        David J. Chizewer
        Steven A. Levy
        Kerry D. Nelson
        GOLDBERG KOHN BELL BLACK
         ROSENBLOOM & MORITZ, LTD.
        55 East Monroe Street
        Suite 3300
        Chicago, Illinois 60603
        (312) 201-4000

        Liaison Counsel for Third-Party Defendants and
        Counsel for Third-Party Defendant:

        NATIONAL REAL ESTATE INFORMATION
        SERVICES

CERTIFICATE OF SERVICE

I, David J. Chizewer, hereby certify that on this 8th day of June, 2009, a true and accurate copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ David J. Chizewer
David J. Chizewer