**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION _____ THIS DOCUMENT RELATES TO ALL ACTIONS | MDL No. 1715 Lead Case No. 05-cv-07097 (Centralized before The Honorable Marvin E. Aspen) |

**AMERIQUEST'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIFTH AMENDED THIRD-PARTY COMPLAINT**

The Ameriquest parties respectfully submit the following reply memorandum in support of their motion for leave to file a Fifth Amended Third-Party Complaint ("FATPC").

### I.     The Third-Party Defendants Are Not Prejudiced by the FATPC.

The Third-Party Defendants argue that they will be prejudiced by the filing of the FATPC because Ameriquest is asserting additional claims against certain title underwriters (the "Underwriters") who issued "closing protection letters" in connection with the subject loans. Opposition at pp. 5-6. The Third-Party Defendants further argue that Ameriquest's claims against the Underwriters lack a factual basis, subject some of the Third-Party Defendants to expanded liability and, allegedly, should have been included in earlier versions of the Third-Party Complaint. *Id.*

In fact, the Third-Party Defendants misinterpret the applicable standard on a motion for leave to amend under FRCP, Rule 15(a). It is black-letter law in the Seventh Circuit that leave to amend should be granted *except* if the defendant has made an affirmative showing that there has been "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546

F.3d 788, 796 (7th Cir 2008) *citing Foman v. Davis*, 371 U.S. 178, 182 (1962). A defendant cannot defeat a motion for leave to amend merely by offering the bald conclusion that they will be prejudiced, as "virtually every amendment of a complaint results in some degree of prejudice to a defendant, in that new discovery generally will be required and the date of trial will be delayed." *Conroy Datsun, Ltd. v. Nissan Motor Corp.*, 506 F. Supp. 1051, 1054 (N.D. Ill 1980) (explaining that "[I]t is not enough that a defendant will suffer prejudice from the amendment; that prejudice must be undue"). Moreover, even if there has been a delay in the filing of the amended pleading, and the plaintiff could have conceivably filed the motion for leave to amend earlier, "delay by itself is normally an insufficient reason to deny a motion for leave to amend. Delay must be coupled with some other reason." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (2004) (holding that it was an abuse of discretion for the Court to deny the plaintiffs leave to file a second amended complaint); *See also Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (holding that the district court did not err by allowing plaintiff to file a Second Amended Complaint, alleging class claims for the first time, 2 1/2 years after the original Complaint was filed).

In this case, there has been no showing whatsoever that the Third-Party Defendants will suffer "undue prejudice" as a result of the new allegations in the FATPC. As is clear from the timeline included in their Opposition, the Third-Party Defendants have not answered the Third-Party Complaint, and have done essentially nothing to litigate this case except for filing serial requests to extend the time for them to file a second motion to dismiss. In the eight months since the Court's October 14, 2008 Order on their original motion to dismiss, the Third-Party Defendants collectively have done no discovery, filed no substantive motions and, generally, have done everything they can to stay under the radar. There is no trial date set in any of the cases at issue and, pursuant to the most recent stipulation between Plaintiffs and the Ameriquest Defendants, the discovery cut-off will most likely be extended for several more months.

Further weighing against a finding of undue prejudice is the fact that Ameriquest has voluntarily agreed to produce substantial discovery. Specifically, Ameriquest has agreed to, and

is already in the process of, producing copies of the relevant loan files to all of the Third-Party Defendants. This is the same production that Ameriquest has made to counsel for the Opt-Out Plaintiffs. In addition, as part of the discovery in the Consolidated Borrowers' Class, Ameriquest produced some 452,495 pages of discovery, and 15 witnesses for a total of 22 days of deposition testimony. This discovery is equally available to the Third-Party Defendants should they wish to review it.

      By comparison, the Third-Party Defendants have produced no discovery to Ameriquest. Instead, three days ago, the Third-Party Defendants filed a motion asking the Court to hold that they are not required to respond to any of Ameriquest's discovery, until such time that a Rule 26(f) conference is held in order to coordinate the discovery process. *See* Docket No. 2853. Ameriquest may ultimately stipulate to some form of the relief requested in this motion. However, it is disingenuous for the Third-Party Defendants to argue, on the one hand, that they should not have to respond to discovery until the Rule 26(f) conference and, on the other hand, that it is too late in the game for Ameriquest to amend its Third-Party Complaint. In short, this is not a case where the defendant has invested substantial time and resources in discovery and trial preparation and, as a result, would be unduly prejudiced by an amended pleading. Rather, the Third-Party Defendants, as evidenced by their own actions, are just getting started with this case.

      With respect to the Underwriters specifically, the Third-Party Defendants' assertion that these parties have "no liability" is factually and legally incorrect, as the Underwriters gave written warranties that the loans in question would be closed properly. If, as the Plaintiffs have alleged, there were problems with closings, the Underwriters are liable to Ameriquest for any damages or other relief imposed on it in connection therewith. More importantly, as the Third-Party Defendants themselves concede, the liability of the Underwriters is something that will need to be determined through a "claim-by-claim analysis," depending on the particular facts and the terms of the applicable closing protection letter. *See* Opposition at p. 8. This may be an issue for trial or summary judgment; it is certainly not an issue that can, or should, be properly resolved in a motion for leave to amend under FRCP, Rule 15.

The Third-Party Defendants also complain that the FATPC has the effect of significantly expanding the scope of their liability. The reality is that only a very small percentage of the 310 Third-Party Defendants are liable as Underwriters, as the same ten parties were Underwriters on nearly 90% of the loans at issue. In any event, the mere fact that a few of the Third-Party Defendants may be subject to additional liability in connection with their role as Underwriters does not establish "undue prejudice" that would justify denying Ameriquest leave to amend.

Finally, the Third-Party Defendants complain that Ameriquest could have, or should have, been aware of the closing protection letters and all legal theories of liability several years ago, and raised them in an earlier version of the Third-Party Complaint. Opposition, at p. 7. It is true that Ameriquest could have alleged these claims earlier. However, Ameriquest and its counsel took, what they believed to be, an appropriate amount of time to conduct their own due diligence prior to asserting claims against the Underwriters. And while the Third-Party Defendants may disagree with the timing, under Seventh Circuit law, the mere fact that a plaintiff delayed filing an amended pleading is not, without an additional showing of "undue prejudice," sufficient grounds to deny leave to amend. *See Dubicz v. Commonwealth Edison Co.*, *supra*, 377 F.3d at 793. Here, the Third-Party Defendants will suffer no such undue prejudice, for the variety of reasons discussed above.

Separate and apart from the legal standard on a Rule 15(a) motion, from a practical point of view, the Underwriters are responsible parties in this action. Their presence, both in the litigation and at mediation, is necessary in order to effectuate the core goal of this MDL proceeding: "to promote just and efficient conduct of multidistrict actions," as described by the Third-Party Defendants in their opposition. Opposition at p. 7. Since the statute of limitations has not run, Ameriquest could conceivably file separate actions against the Underwriters in dozens of Courts throughout the county. However, to do so would be neither "just" nor "efficient"; rather it would drastically increase all parties' legal fees and the burden on the Court system.

4

In short, Ameriquest should be permitted to go forward with its claims against the Underwriters in the FATPC.

II. **The Filing of the FATPC Will Not Stall These Proceedings.**

The Third-Party Defendants argue that if Ameriquest is allowed to amend its Third-Party Complaint another time, it "threatens to bring these entire proceedings to a virtual standstill with no potential resolution in sight." While dramatic, this claim is not supported by the facts, and provides no justification for the Court to deny Ameriquest leave to file the FATPC.

In reality, while Ameriquest has indeed filed four prior amendments to its Third-Party Complaint, there was a proper basis for each of these amendments, as set forth in detail in the respective Motions for Leave to Amend. Specifically, the First, Second, and Third Amended Third-Party Complaints were all filed to address the fact that additional parties had been added to this MDL proceeding since the last pleading. The Fourth Amended Third-Party Complaint did not include any new parties but, rather, was filed in order to conform to the Court's Order on the original motion to dismiss (which was granted with respect to Ameriquest's claims for indemnity and contribution, denied with respect to the claim for breach of contract, and granted without prejudice with respect to the claim for negligence). *See* Docket No. 2455. The FATPC is intended to address an additional issue raised in the Court's order, by separating the negligence and negligent misrepresentation claims into separate causes of action. In addition, the FATPC adds 42 new parties, who were Closing Agents, Brokers, and Underwriters involved with the new cases that have been transferred to this MDL proceeding in the past several months.

To be clear, Ameriquest does not want to keep amending its Third-Party Complaint, and is hopeful that the FATPC is the final amendment. However, the unfortunate reality is that a steady stream of new cases continue to be transferred to this MDL proceeding, almost all of which give rise to new third-party claims. Specifically, since the date that the original Third-Party Complaint was filed (July 31, 2007), a total of 127 new cases have been transferred to the MDL, which were brought by a total of 548 plaintiffs. As of today, there are a total of 516 active

5

Opt-Out Cases, containing over 1500 plaintiffs, and an additional 45 cases that are listed by the MDL panel as being "in transit."

Per the Court's order, and consistent with the objectives of an MDL proceeding, Ameriquest is continuing to pursue its Third-Party Complaint as a consolidated action, as opposed to hundreds of separate cases. Procedurally, the only method for Ameriquest to incorporate these new claims into its Third-Party Complaint is to file an amended pleading, after seeking leave from the Court. Thus, while Third-Party Defendants assert—and Ameriquest agrees—that there have been an unusual number of amendments to the Third-Party Complaint, there is no question that these amendments were justified and appropriate based on the unusual circumstances of this MDL proceeding. If plaintiffs would simply stop filing cases, and referring these cases to the MDL, Ameriquest would have no need to request further amendments to its Third-Party Complaint.

### III. Conclusion.

For the reasons set forth above, Ameriquest respectfully requests that the Court grant it leave to file the FATPC pursuant to FRCP, Rule 15(a).

Dated: June 11, 2009

By: /s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage
Sarah K. Andrus
BUCHALTER NEMER,
A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457

## CERTIFICATE OF SERVICE

I, Bernard E. LeSage, hereby certify that on this 11th day of June 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Bernard E. LeSage