**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Centralized before The Honorable Marvin E. Aspen |

**THIRD-PARTY DEFENDANTS' MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
FIFTH  AMENDED CONSOLIDATED THIRD-PARTY COMPLAINT**

Third-Party Defendants, through their undersigned Liaison Counsel, submit this consolidated Memorandum of Law in Support of their Motion to Dismiss The Fifth Amended Consolidated Third-Party Complaint pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

**INTRODUCTION**

In the above-captioned Multidistrict Litigation (the "MDL"), more than 1,000 individual borrowers (the "Plaintiffs") have filed separate claims against one or more of the Defendants/Third-Party Plaintiffs, Ameriquest Mortgage Company ("Ameriquest"), Town and Country Credit Corporation ("Town and Country"), and/or Argent Mortgage Company LLC ("Argent") (collectively, "Defendants or Third-Party Plaintiffs").  Each of the Plaintiffs alleges that the Defendants violated the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, by failing to provide a complete and accurate Notice of Right to Cancel form

and/or HUD-1 Settlement Statement, or by failing to provide the correct number of copies of the notice.[1]  Despite those common allegations, each claim turns on the unique events which transpired in more than 1,000 different home loan closings around the country.  Although these 1,000 closings involved different closing agents and different title underwriters, each of whom had their own unique relationships with the Third-Party Plaintiffs, the Third-Party Plaintiffs filed one consolidated Third-Party Complaint against the mortgage brokers, closing agents, and now, for the first time in six attempts -- even the title underwriters, as distinct from the closing agents.  In that one consolidated complaint, Third-Party Plaintiffs attempt to hold Third-Party Defendants responsible for each of the more than 1,000 claims brought against the Third-Party Plaintiffs, asserting identical claims against all of the Third-Party Defendants, including for the first time, the title underwriters, for breach of contract, negligence, and negligent misrepresentation.

As such, the Fifth Amended Consolidated Third-Party Complaint suffers from three fatal flaws.  First, Third-Party Plaintiffs attempt to use the MDL device, and their consolidated complaint, as a way to obfuscate federal pleading requirements which apply whether the third-party claims are brought individually or on a consolidated basis.  Second, the Fifth Amended Consolidated Third-Party Complaint fails to cure the defects in the negligence claims, which resulted in their dismissal the last time around.  Finally, the new counts for negligent misrepresentation should be dismissed because Third-Party Plaintiffs have not, and indeed cannot, properly plead an exception to the economic loss doctrine

---

[1] Notably, a recent decision by the First Circuit calls into question the viability of the Plaintiffs' underlying claims. See Melfi v. WMC Mortg. Corp., 568 F.3d 309 (1st Cir. 2009) (holding that even on a motion to dismiss, as a matter of law, technical defects in a Notice of Right to Cancel do not violate TILA where a reasonable borrower could still comprehend their right to rescind).

which otherwise bars those claims. For these reasons, the Fifth Amended Consolidated Third-Party Complaint should be dismissed.

## PROCEDURAL BACKGROUND

On October 14, 2008, this Court entered an order granting, in part, and denying, in part, a motion filed by Third-Party Defendants on a consolidated basis to dismiss certain counts of Ameriquest's Second Amended Consolidated Third-Party Complaint. (Docket Entry ("D.E.") # 2455). On June 23, 2009, Third-Party Plaintiffs filed their Fifth Amended Consolidated Third-Party Complaint (the "Complaint"). In their Complaint, Third-Party Plaintiffs bring nine claims against the closing agents, brokers, and underwriters that comprise the Third-Party Defendants. Ameriquest filed three separate causes of action against the "Title Defendants": breach of contract, negligence and negligent misrepresentation (Counts, I, II & III). Argent filed the same three counts against both the "Title Defendants" and the "Broker Defendants" (Count IV - IX).

In their claims against the Title Defendants, Third-Party Plaintiffs allege that closing agents and title companies provided closing services as agents for and on behalf of the Title Underwriters. Complaint, ¶ 4. In their attempts to allege liability against closing agents, title companies and title underwriters, the Third-Party Plaintiffs ignore crucial differences in the roles played by these various entities and mask the differences by referring to them jointly as "Title Defendants." Third-Party Plaintiffs have failed to plead their claims sufficiently to withstand a 12(b)(6) motion to dismiss. Accordingly, the Complaint should be dismissed with prejudice in its entirety.

**ARGUMENT**

I.     **Third-Party Plaintiffs' Breach of Contract Claims Fail to Comply with Federal Pleading Requirements.**

Since October 2008, when this Court denied the Third-Party Defendants' motion to dismiss the breach of contract claims, two significant changes have occurred which require a different result this time around.  First, the United States Supreme Court's decision in Ashcroft v. Iqbal, 129 S. Ct. 1937, delineated more stringent pleading requirements which the Third-Party Plaintiffs have failed to meet.  Second, the Third-Party Plaintiffs have drastically expanded their theory of liability and added an entirely new category of defendants -- title underwriters -- without adding any new factual allegations regarding the contractual relationship that would make title underwriters -- as opposed to closing agents -- liable for the conduct at issue here.

A.     **Third-Party Plaintiffs Do Not Satisfy the Pleading Requirements As Recently Articulated by the Supreme Court.**

In Ashcroft v. Iqbal, 129 S. Ct. 1937, the Supreme Court stated, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 1949-50.  In Iqbal, the Supreme Court amplified upon its Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) decision.  In Twombly, the Court established that although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," plaintiffs are "obligat[ed] to provide the grounds of [their] entitle[ment] to relief."  Id. at 556.  These grounds "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. Instead, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  Id.  Expanding on that reasoning, in Iqbal, the court stated that:  "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949.  Indeed, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id.

When applied to a breach of contract case, Iqbal requires at a bare minimum, the specific identification of the contract or contracts at issue and at least some specific facts about its [or their] content to demonstrate that its relevance to a plaintiff's claim would rise "above the speculative level."  Merely reciting the standard elements of an action for breach of conduct is not enough.  Iqbal at 1949.  Yet, in their consolidated complaint, Third-Party Plaintiffs make only conclusory allegations in an attempt to state their claims for breach of contract in Counts I, IV and V.  Remember that Third-Party Plaintiffs seek to hold liable more than 200 Title Defendants for the more than 1000 individual underlying claims, yet Plaintiffs have not even attached or quoted from a single one of the contracts upon which their claims against the Third-Party Defendants are based.  Instead, Third-Party Plaintiffs apparently believe that because there are so many different Title Defendants at issue, they can simply file a consolidated Complaint and in one fell swoop, ignore the pleading requirements as to *all* of them.  They do not attach or quote from the contracts into which they allegedly entered, nor do they allege that any of them were even similar or subject to the same form agreement.  There is no reason why Third-Party Plaintiffs should be allowed to avoid, in a consolidated Complaint, the basic and fundamental allegations they would have to make if they were filing their third-party claims separately in the more than 1,000 individual cases now residing in this MDL.  See Wright & Miller, § 3867 ("[T]he fact that a pretrial

motion is decided in the transferee forum rather than the transferor court should not produce a difference in how the issue raised by the particular motion is resolved.")

Contrary to the pleading requirements of Rule 8, Third-Party Plaintiffs do not meet any of these requirements, and instead have made "'naked assertions' devoid of 'factual enhancements.'" See Iqbal, 129 S. Ct. at 1949. It is clear from Third-Party Plaintiffs' vague breach of contract claims that Third-Party Plaintiffs are attempting to take advantage of the MDL procedure by making hundreds of claims against any and all parties associated with the transactions implicated by Plaintiffs' claims without undertaking the necessary review to determine whether a basis for those claims exists prior to bringing suit. The existence of a contract with one closing agent does not satisfy the pleading requirements for the claims against a completely different, unrelated closing agent or any of the title underwriters. This Court should not elevate the convenience of the Third-Party Plaintiffs over the basic concepts of civil procedure.

B.   **The Consolidated Complaint Pleads No Allegations to Hold Liable the Title Underwriters Who Did Not Close Loans.**

The pleading deficiencies in the Consolidated Third-Party Complaint are especially problematic with respect to claims brought against the title underwriter defendants (which Third-Party Plaintiffs have inappropriately grouped with the closing agents). Significantly and for the first time, the Third-Party Plaintiffs have brought claims for breach of contract against hundreds of title underwriters even if they did not attend and did not participate in the loan closings. In their previously filed consolidated complaints against the Third-Party Defendants, Third-Party Plaintiffs attached a chart to the complaint referring to each of the underlying transactions which included information regarding the: (i) underlying

case, (ii) borrower plaintiffs, (iii) title defendants, and (iv) date of agreement with Third-Party Plaintiffs.  See, e.g., Fourth Amended Consolidated Third-Party Complaint, Exs. A and B, D.E. # 2736.  Exhibits A and B to the operative pleading now, for the first time, also include a column that identifies the title underwriter associated with *each and every transaction* that underlies this MDL, even where the title underwriters did not close the loan. See e.g., Ex. A to Complaint, p. 1 (identifying Heritage Title as the title defendant and Stewart Title Guaranty Company as the underwriter for the underlying case *Abrams, et al. v. Ameriquest Mortgage Co., et al.*).  Yet there are no allegations which describe what contractual duties the title underwriters owe to the Third-Party Plaintiffs, or how, if at all, such duties relate to providing documents to borrowers at closing.  In their Complaint, Third-Party Plaintiffs hope to ignore these issues by simply defining the closing agents and title underwriters collectively as "Title Defendants" in an apparent attempt to obfuscate the lack of support for the claims against the title underwriters.  Indeed, the Complaint does not allege that the title underwriters and closing agents are subject to the same contracts.  The reason that the Third-Party Plaintiffs do not allege this is because they cannot -- the closing agents and title underwriters are distinct groups with distinct relationships with the Third-Party Plaintiffs.

The Third-Party Plaintiffs' failure to plead individual claims against these two groups underscores the insufficiency of their pleading, and the manner in which they are using consolidation to avoid the most basic pleading requirements.  The claims brought against the Third-Party Defendants simply give no notice to Third-Party Defendants as to the claims against them and they must be dismissed pursuant to Rule 12(b)(6).

II.     **Third-Party Plaintiffs' Claims of Negligence Fail Because Third-Party Defendants Owed No Duty to Third-Party Plaintiffs Separate and Apart From Whatever Contractual Duties They May Have Otherwise Owed.**

Third-Party Plaintiffs' negligence claims (Counts II, VI and VII) should be dismissed because Third-Party Defendants owe no extracontractual duty to Third-Party Plaintiffs. This Court previously dismissed Third-Party Plaintiffs' negligence claims because Third-Party Plaintiffs failed to establish "an extracontractual duty necessary to state a claim for negligence." See May 28, 2008 Memorandum Opinion and Order, p. 8, D.E. # 2160. The latest Complaint does not remedy that defect and the negligence claims should now be dismissed with prejudice.

To state a claim for negligence, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach. Adams v. N. Ill. Gas Co., 211 Ill. 2d 32, 43 (Ill. 2004). Duty is a question of whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. Id. In order to state a claim for negligence Third-Party Plaintiffs must allege an *extracontracutal* duty on the part of Third-Party Defendants. See, e.g., LaSalle Bank Nat'l Assoc v. Paramont Props., 588 F. Supp. 2d 840, 851 (N.D. Ill. 2008).

Third-Party Plaintiffs make only vague allegations regarding "industry standards" and the "ordinary skill and care" required of professionals. However, they offer no basis in law for these alleged duties, other than a contractual relationship. The described duties to Third-Party Plaintiffs would have arisen only from the alleged contracts between the parties. As a result, Third-Party Plaintiffs' claims for professional negligence must be

dismissed. See, e.g., Paramont Props., 588 F. Supp. 2d at 852 (N.D. Ill. 2008) (motion to dismiss professional negligence claim granted based on economic loss doctrine where state law not found to "recognize (or refute) the existence of a general duty of care between lenders and borrowers.").

## III. The Economic Loss Doctrine Bars Plaintiffs' Claim for Negligence and Negligent Misrepresentation.

Moreover, Third-Party Plaintiffs' negligence claims are barred because Third-Party Plaintiffs seek only economic damages for their claims. Third-Party Plaintiffs seek to recover for money they may be required to pay if Plaintiffs prevail on their claims in the underlying lawsuits, and do not seek to recover for any personal injury or property damage. See Complaint, ¶¶ 37, 65, 72. The economic loss doctrine (recognized by the overwhelming majority of states)[2] bars tort claims where the alleged damages are solely economic. See, e.g., Bank One v. Trammell Crow Servs., 2003 U.S. Dist. LEXIS 23120 (N.D. Ill. Dec. 22, 2003) (citing Moorman Mfg. Co. v. National Tank Co., 91 Ill. 2d 69, 91, 435 N.E. 2d 443, 453, (1982)). The Third-Party Plaintiffs' attempt to invoke two exceptions to the economic loss doctrine by pleading that the Third-Party Defendants (1) committed professional negligence; and (2) were suppliers of commercial information. From the face of the complaint, however, it is clear that these exceptions (which are really two sides of the same coin) do not apply here.

The professional negligence exception to the economic loss doctrine has been limited to a specific few professions and is not applicable to closing agents, underwriters, or

---

[2] See Exhibit A, for a listing of states that have adopted the economic loss doctrine. Third-Party Plaintiffs' negligence claims and claims for negligent representation implicate choice-of-law issues. Because addressing these issues would involve separate choice-of-law analysis in the hundreds of cases that underlie the MDL, Third-Party Defendants have not endeavored to address those issues in this motion.

brokers. See Trammel Crow Servs., 2003 U.S. Dist. LEXIS 23120 at *12 (motion to dismiss professional negligence claim granted based on economic loss doctrine because "the profession of real estate service providers does not have an established tradition of tort claims, nor is the relationship directly analogous to that of attorneys or accountants.") See also M W Mfrs. Inc. v. Friedman, 1998 U.S. Dist. LEXIS 11309, No. 97 C 8319, at *6 (N.D. Ill. July 21, 1998) ("This test is quite limited and has only been applied successfully to attorney-defendants . . . and accountant-defendants."). Because Third-Party Plaintiffs cannot establish a professional duty on the part of closing agents, underwriters, or brokers that relate to their claims, their professional negligence claim must be dismissed. See, e.g., Bank One v. Trammell Crow Servs., 2003 U.S. Dist. LEXIS 23120, 11-12 (N.D. Ill. Dec. 22, 2003) ("Beyond this narrow range of professions [attorneys and accountants], however, courts have not imposed an extra-contractual duty, and instead hold that the economic loss doctrine applies.).

Third-Party Plaintiffs also attempt to plead the commercial information supplier exception to the economic loss doctrine. Third-Party Plaintiffs cannot qualify for this exception. The commercial information supplier exception "will only apply if defendants are in the business of supplying information for the guidance of others in their business transactions." Dahm v. First Am. Title Ins. Co., 2008 U.S. Dist. LEXIS 28836 (N.D. Ill. Apr. 9, 2008). From the face of the Third-Party Plaintiffs' own allegations, it is clear that the Third-Party Defendants are not in the business of "supplying information" for the guidance of Third-Party Plaintiffs. Third-Party Defendants either originated the loans, closed the loans – and thus provided certain form Notices of Right to Cancel to the borrowers along with other paperwork that a real estate closing entails, or provided Third-Party

Plaintiffs with title insurance policies. See Complaint ¶¶ 4, 10 (alleging that Title Defendants "provid[ed] closing services" and "agreed to close [Third-Party Plaintiff] loans in exchange for consideration"); ¶ 20 (alleging that Broker Defendants originate loans); ¶ 12 (alleging that Title Underwriters issue "final title policies" to Third-Party Plaintiffs). Third-Party Plaintiffs did not hire Third-Party Defendants to provide them with information, and as a result the negligent misrepresentation claims of Third-Party Plaintiffs must be dismissed. See, e.g., First Midwest Bank, N.A. v. Stewart Title Guar. Co., 218 Ill. 2d 326, 341-42 (Ill. 2006) (motion to dismiss upheld where court found that title insurer was not in the business of supplying information when it issues a title commitment or a policy of title insurance and accordingly the negligent misrepresentation exception to the economic loss doctrine did not apply). See also Dvore v. Casmay, 2008 U.S. Dist. LEXIS 75104 (N.D. Ill. Sept. 29, 2008) (negligent misrepresentation claim dismissed where a retail bank was found not to be in the business of supplying information in the circumstances of the case because bank employee's referral of Plaintiff to another banking institution was incidental to Plaintiff's purchase of a certificate of deposit account). Thus, even in jurisdictions where it is recognized, the negligent misrepresentation doctrine does not save Third-Party Plaintiffs' negligence claims.

The only "information" that Third-Party Plaintiffs allege the Third-Party Defendants were supposed to provide was information regarding whether there were flaws in the closing documents or whether there were problems with the closing. In other words, according to Third-Party Plaintiffs' own Complaint, the only "information" Third-Party Defendants were supposed to provide was the information about whether the Third-Party Defendants could and did perform their obligations correctly. The obligation to provide this sort of basic information does not distinguish Third-Party Defendants from any other entity

that is hired to do a job. A painter, a carpenter, a plumber, all have the obligation to inform their customers whether they are able to, and whether they did in fact, perform their job correctly. But the obligation to provide such information does not make them a supplier of commercial information. If it did, that exception would swallow the economic loss doctrine altogether.

Finally, each of Third-Party Plaintiffs' negligent misrepresentation claims merely parrots the elements of a claim for misrepresentation in contravention of the pleading requirements recently established by the Supreme Court in Iqbal. Third-Party Plaintiffs allege that: (i) Third-Party Defendants "were careless or negligent in ascertaining the truth of the statements made"; (ii) Third-Party Defendants "omitted the above-described facts with knowledge that they had a duty to disclose such material facts"; (iii) Third-Party Defendants "intended to induce [Third-Party Plaintiffs] to rely on its representations and to fund loans to plaintiffs"; and (iv) Third-Party Plaintiffs "justifiably relied on the [Third-Party Defendants'] representations in funding loans to plaintiffs." Complaint, ¶¶ 76-89. See also Complaint ¶¶ 41-44, 84-87. Third-Party Plaintiffs, however, fail to plead any facts to support these conclusory allegations. Because "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Plaintiffs' negligent misrepresentation claims must be dismissed. See Iqbal, 129 S. Ct. at 1949 (2009) (internal citations omitted). Contrary to the pleading requirements of Rule 8, Third-Party Plaintiffs have merely made "'naked assertions' devoid of 'factual enhancements.'" See id. This is precisely the type of complaint that is insufficient to withstand Rule 8 scrutiny because the Third-Party Defendants have no means to understand the claims brought against them.

Therefore, Third-Party Plaintiffs' negligent misrepresentations claims must be dismissed pursuant to Rule 12(b)(6).

## IV.    Conclusion

For all of these reasons, Third-Party Defendants respectfully request that, pursuant to Fed. R. Civ. P. 12(b)(6), the Court grant their Motion to Dismiss the Fifth Amended Third-Party Consolidated Complaint in its entirety.

Dated:   July 31, 2009

By: /s/ David Chizewer
*Liaison Counsel for Third-Party*
*Defendants and counsel for National*
*Real Estate Information Services, Inc.*

David J. Chizewer
Steven A. Levy
Kerry D. Nelson
GOLDBERG KOHN BELL BLACK
 ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street
Suite 3300
Chicago, Illinois  60603
Telephone (312) 201-4000
Facsimile (312) 332-2196

## CERTIFICATE OF SERVICE

I, David J. Chizewer, hereby certify that on this 31st day of July 2009, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

By: /s/  David J. Chizewer