**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRYAN L. ESON and KAREN M. ESON, | ) | |
| | ) | 06 C 2829 |
| Plaintiffs, | ) | |
| | ) | Judge Gettleman |
| v. | ) | Magistrate Judge Schenkier |
| | ) | |
| ARGENT MORTGAGE COMPANY, LLC, | ) | (Transferred to Judge Aspen for |
| JPMC SPECIALTY MORTGAGE, f/k/a | ) | |
| WM SPECIALTY MORTGAGE, LLC, | ) | pretrial proceedings under MDL |
| CHASE HOME FINANCE, LLC, and DOES 1-5, | ) | #1715, Lead Case #05 C 7097) |
| | ) | |
| Defendants. | ) | **JURY DEMANDED** |

**THIRD AMENDED COMPLAINT**

**INTRODUCTION**

1. Plaintiffs Bryan L. Eson and Karen M. Eson bring this action against a "subprime" mortgage lender and its affiliates to (a) rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, and to (b) secure redress for violation of § 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here.

**PARTIES**

3. Plaintiffs Bryan L. Eson and Karen M. Eson are husband and wife and

1

jointly own and reside in a home at 15441 Michaele Drive, Oak Forest, IL 60452.

4. Defendant Argent Mortgage Company, LLC is a limited liability company which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.

5. Defendant Argent Mortgage Company, LLC is engaged in the business of originating "subprime" mortgages.

6. Defendant Argent Mortgage Company, LLC makes more than 26 loans per year.

7. Defendant Argent Mortgage Company, LLC is a "creditor" as defined in TILA and Regulation Z.

8. Defendant Chase Home Finance, LLC is a foreign corporation which does business in Illinois. Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

9. Defendant Chase Home Finance, LLC services some loans originated by Ameriquest Mortgage Company, including plaintiffs', and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

10. Defendant JPMC Specialty Mortgage, LLC, formerly known as WM Specialty Mortgage, LLC, is a foreign corporation which transacts business in Illinois. It holds legal title to some loans originated by Ameriquest Mortgage Company, including plaintiffs'. Its registered agent is Corporation Service Company, located at 84 State St., Boston, MA 02109.

## FACTS RELATING TO PLAINTIFFS

11. Plaintiffs are ordinary consumers struggling to make ends meet and raise

2

their two children.  Mr. and Mrs. Eson both work full-time - he as a Maintenance Technician, she as an office secretary.

      12.    Prior to May 24, 2004, A American Financial Group, Inc., a mortgage broker, solicited plaintiffs to refinance their mortgage loan.

      13.    Prior to May 24, 2004, plaintiffs submitted information for a loan application, through Alison Levine, an employee of the broker, to Argent Mortgage Company, LLC.

      14.    Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

      15.    Within a day or two of the first contact with plaintiffs, Ms. Levine had taken and provided to Argent all of the necessary qualifying information from plaintiffs.  Ms. Levine or Argent also ran plaintiffs' credit reports immediately.

      16.    At that time and subsequently, Argent, both through Ms. Levine and through preliminary written disclosures it issued, repeatedly promised and reassured plaintiffs that they would receive a fixed interest rate of 6.3%.

      17.    The loan was closed on May 24, 2004.

      18.    At the closing, for the first time Argent informed plaintiffs that the loan terms were being altered to their detriment, as set forth on <u>Exhibit A</u>.  In particular, Argent increased the interest rate to 6.9%, and it was adjustable, not fixed.

      19.    Ms. Eson phoned Ms. Levine, who was not present at closing, to inquire. Ms. Levine was hostile and told him that he was "lucky to get a loan at all" because, she said, no other lender "would touch you." Plaintiffs, who are ordinary consumers, believed that Ms. Levine

was telling them the truth.

20.     Ms. Levine also told Mr. Eson that the interest rate would not start to adjust until after three years.  In fact, it started adjusting after just two years.

21.     It was the policy and practice of Argent to engage in "bait and switch" loan solicitation practices, whereas one set of terms was initially quoted after Argent had obtained sufficient information to provide an accurate quote, and then more onerous terms (such as a higher interest rate) were imposed immediately before the closing.

22.     Furthermore, Ms. Levine and/or Argent wrote on the typed, pre-printed loan application she or it prepared (Exhibit H) that plaintiff Bryan Eson's gross monthly income was $3,005.08.  In actuality, Bryan Eson gross monthly income was only between $1,400 and $1,500.  Plaintiffs gave Levine accurate information when they spoke to her, and also sent her accurate copies of their tax returns and paycheck stubs.

23.     Levine and/or Argent then arranged to have plaintiffs sign the application containing false information at closing.  During closing plaintiffs were presented with a stack of paper consisting of scores of documents and hundreds of printed pages, and Ms. Levine intentionally intimidated them.  Under these circumstances, plaintiffs could not review each line for accuracy.

24.     The following are documents relating to the loan:

    a.     A note, Exhibit B;

    b.     A mortgage, Exhibit C;

    c.     Two settlement statements, Exhibit D;

    d.     A Truth in Lending disclosure statement, Exhibit E;

4

e.      The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit F.

25.      The closing agent took all the closing documents with him when he left. Plaintiffs did not receive any copies of their closing package until Argent sent them by FedEx two weeks later.

26.      The disbursements changed between the closing date and the disbursement of the loan.

27.      Plaintiffs were later directed to make payments to AMC Mortgage Services, Inc., and later to Citi Residential Lending, Inc.  Subsequently, plaintiffs were directed to make payments to Chase Home Finance, LLC.

28.      On information and belief, JPMC Specialty Mortgage, formerly known as WM Specialty Mortgage, LLC, owns plaintiffs' loan.

29.      In the event JPMC Specialty Mortgage, formerly known as WM Specialty Mortgage, LLC, does not own plaintiffs' loan (actual ownership is rarely, if ever, shown of record), the actual owners are named as Does 1-5.

## COUNT I – TRUTH IN LENDING ACT

30.      Plaintiffs incorporate paragraphs 1-29.  This claim is against all defendants.

31.      Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

**(a) <u>Consumer's right to rescind.</u>**

> **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

> **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

> **(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.  [15 U.S.C. §1635(f)]**

> **(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

> **(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

> **(2) The consumer's right to rescind the transaction.**

> **(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

> **(4) The effects of rescission, as described in paragraph (d) of this**

section.

**(5) The date the rescission period expires. . . .**

**(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:**

> **(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

> **(2) A credit plan in which a state agency is a creditor.**

32.     In connection with the loan, Argent Mortgage Company, LLC failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

33.     In connection with the loan, Argent Mortgage Company, LLC failed to provide the required disclosures of the plaintiffs' right to cancel within three days in that none of the notices that plaintiffs received were completed.

34.     Furthermore, plaintiffs did not receive the required disclosures until two weeks after closing, after the rescission period had ended.

35.     In addition, the notices of right to cancel and financial disclosures were prepared as if the transaction had been consummated on the closing date.

36.     Because the disbursements were changed between the closing date and the disbursement date, the terms of the loan were not agreed upon and the loan was not consummated until the actual disbursements were made known to plaintiffs and the plaintiffs agreed to proceed with the loan.

37.     As a result, the notices of right to cancel and financial disclosures are

misdated.

38.     Notice of rescission has been given to defendants.  A copy is attached as

Exhibit G.

39.     The loan has not been rescinded.

40.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against

any assignee.

41.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of

plaintiffs and against defendants for:

a.      A judgment voiding plaintiffs' mortgage, capable of recordation in

the public records, and binding on defendants;

b.      Statutory damages for the underlying disclosure violation;

c.      If appropriate, statutory damages for failure to rescind;

d.      Attorney's fees, litigation expenses and costs.

e.      Such other or further relief as the Court deems appropriate.

## COUNT II  – ILLINOIS CONSUMER FRAUD ACT

42.     Plaintiffs incorporate paragraphs 1-29.   This claim is against Argent.

43.     Defendant Argent engaged in unfair and deceptive acts and practices, in

violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by engaging in a "bait and switch" on the plaintiffs' terms, in particular by promising a 6.3% fixed rate loan after acquiring sufficient financial information to underwrite the loan, and then switching plaintiffs to a 6.9% adjustable rate loan and not notifying plaintiffs until closing.

44.     Argent engaged in unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by intentionally inflating Mr. Eson's monthly income from $1,800 to $3,005.08.

45.     Argent engaged in such practices in the course of trade and commerce.

46.     Argent engaged in such practices for the purpose of inducing reliance on the part of borrowers, by entering into the disadvantageous transactions.

47.     Plaintiffs did in fact rely on Argent's practices.

48.     Plaintiffs were damaged as a result.

49.     Argent's conduct was intentionally deceptive and malicious, warranting substantial punitive damages.

50.     Defendant violated the Residential Mortgage License Act of 1987 and implementing regulations.  The purpose of the Act is to "protect Illinois consumers seeking residential mortgage loans and to ensure that the residential mortgage lending industry is operating fairly, honestly and efficiently, free from deceptive and anti-competitive practices." 205 ILCS 635/1-2(b)(2005).  The implementing regulations, at 38 Ill. Adm. Code 1050.1230 (2005), create an affirmative disclosure obligation <u>when the lender changes the borrowers' loan terms mid-stream</u>:

**§ 1050.1230 Changes Affecting Loans in Process.**
**a) If it is determined that a borrower does not qualify for the loan amount,**

**terms or program for which he or she applied and the costs of another recommended program would materially differ from the costs itemized on the Good Faith Estimate, the licensee immediately shall provide to the customer a written, and when possible, a verbal, plain-English explanation of any program the licensee recommends as one for which the borrower may be qualified. Such explanation shall include but not be limited to detailed information on costs to the borrower.**

The same regulations create an affirmative, general duty of good faith, defined as "honesty in fact in the conduct of the transaction." 38 Ill.Adm. Code 1050.1250(a)(2005). That duty is as follows: "[a]ny disclosure or action required by the Act or this Part shall be made in good faith." Id. Defendant did not provide or attempt to provide, prior to closing, any oral or written notice of the last minute change in plaintiffs' loan terms.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant Argent for the following relief:

a. Compensatory and punitive damages;

b. Attorney's fees, litigation expenses and costs.

c. Such other or further relief as the Court deems appropriate.

### COUNT III – COMMON LAW FRAUD

51. Plaintiffs incorporate paragraphs 1-29. This claim is against Argent.

52. Defendant represented that plaintiffs qualified for the loan based on the amount of their income.

53. Defendant fraudulently inflated the amount of plaintiffs' income. Therefore, the representations that plaintiffs qualified for the loan and could afford it were also false and fraudulent.

54. The amount of plaintiffs' income was information that was material to the

terms of their transaction with defendant.

55.     At the time defendant falsified the income, it knew that this representation was false.  Alternatively, it became aware of the false information before closing and/or ratified it later.

56.     Defendant made the representations with the intent that they would be acted upon by plaintiffs.

57.     In reliance on defendants' representations, plaintiffs closed on the loan with Argent.

58.     Plaintiffs have been injured.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against defendant for:

a.      Actual and compensatory damages;

b.      Punitive damages; and

c.      Such other relief as the Court deems appropriate.


s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

11

**JURY DEMAND**

Plaintiffs demand trial by jury.

s/ Daniel A. Edelman
Daniel A. Edelman

**CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, hereby certify that on August 6, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that true and correct copies were additionally sent via email or by U.S. Mail to those parties without email addresses.

Jonathan N. Ledsky
jledsky@vbhlc.com, sortega@vbhlc.com

Craig Allen Varga
cvarga@vbhlc.com

Bernard E. LeSage
blesage@buchalter.com

Chase Home Finance, LLC
c/o Registered Agent
C.T. Corporation System
208 S. LaSalle St.
Suite 814
Chicago, IL 60604

s/ Daniel A. Edelman
Daniel A. Edelman

T:\16710\Pleading\3rd Amended Complaint_Pleading.WPD

# EXHIBIT A

Argent Mortgage Company, LLC
1701 Golf Road
Rolling Meadows, IL 60008

(847)690-0517

## BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

KAREN M ESON
BRYAN L ESON

Date: May 24, 2004

Notice: [X] Delivered [ ] Mailed

Loan Number: 0058275090 - 9701

Description of Credit Request:

15441 MICHAEL DRIVE
OAK FOREST,IL 60452

[X] 1st Trust Deed/Mortgage   [ ] 2nd Trust Deed/Mortgage

[ ] Other: _____

Property Address: 15441 MICHAELE DRIVE

OAK FOREST, IL 60452          County of COOK

### TYPE OF TRANSACTION:

[ ] Purchase   [X] Refinance   Other _____

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [ ] Fixed Rate Loan   [X] Adjustable Rate Loan | [ ] Fixed Rate Loan   [X] Adjustable Rate Loan |
| Amount Financed:  $ 165,423.20 | Amount Financed:  $ 170,467.44         * |
| Settlement Charges: $ 5,151.80 (Includes all Prepaid Finance Charges) | Settlement Charges: $ 6,416.14 (Includes all Prepaid Finance Charges)   * |
| Loan Amount:  $ 170,000.00 | Loan Amount: $  174,000.00 |
| Annual Percentage Rate: 7.336         % | Annual Percentage Rate: 7.485        %* |
| Term:            360 | Term:            360 |
| Initial Interest Rate:  6.350         % | Initial Interest Rate:  6.900         % |
| Margin:       6.000         % | Margin:       6.000         % |
| Prepayment Penalty:  [ ] YES  [X] NO | Prepayment Penalty:  [ ] YES  [X] NO |

Borrower(s) and  Argent Mortgage Company, LLC hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement.  These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

Karen M Eson      5/24/04
Borrower KAREN M ESON          Date

Bryan L Eson
Borrower BRYAN L ESON          Date

_____          _____
Borrower              Date          Borrower              Date

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.

STATCD (Rev. 3/99)

# EXHIBIT B

Loan Number: 0058275090 - 9701

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

May 24, 2004                    Rolling Meadows                    IL
Date                           City                              State

15441 MICHAELE DRIVE, OAK FOREST, IL 60452
Property Address

1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 174,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  Argent Mortgage Company, LLC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.900 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on  July 1, 2004 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, June 1, 2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my payments at:  505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,145.97. This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of,  June, 2006  and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  six percentage point(s) (6.000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials: _____

Loan Number: 0058275090 - 9701

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.900 % or less than 6.900%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) 1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.900 % or less than 6.900 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(B) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

201-2UNIV (Rev. 01/03)                     2 of 3                     Initials: _____ KME

05/20/2004 2:18:27 PM

Loan Number: 0058275090 - 9701

9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Borrower  KAREN M ESON

_____ (Seal)
Borrower / BRYAN L ESON

_____ (Seal)
~ower

_____ (Seal)
Borrower

# EXHIBIT C

Return To:

Argent Mortgage Company. LLC
P.O. Box 14130,
Orange, CA 92863-1530


Prepared By:Argent Mortgage Company. LLC

Mary Roule
1701 Golf Road,Rolling
Meadows, IL 60008

---------------------------------[Space Above This Line For Recording Data]---------------------------------

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is datedMay 24, 2004
together with all Riders to this document.
(B) "Borrower" is KAREN M ESON and BRYAN L ESON, Husband and Wife, Tenants By
Entirety

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

0058275090-9701

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014 1/01

-6(IL) (0005)
Page 1 of 15          Initials:
VMP MORTGAGE FORMS - (800)521-7291          05/20/2004 2:18:27 PM

.er's address is One City Boulevard West  Orange, CA 92868

.er is the mortgagee under this Security Instrument.

'Note" means the promissory note signed by Borrower and datedMay 24, 2004
Note states that Borrower owes Lender one hundred seventy-four thousand and
100                                                                          Dollars
. $174,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic
.ents and to pay the debt in full not later than June 1, 2034

'Property" means the property that is described below under the heading "Transfer of Rights in the
.erty."

'Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
.nder the Note, and all sums due under this Security Instrument, plus interest.

"Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
.rs are to be executed by Borrower [check box as applicable]:

| Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

"Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
.iances and administrative rules and orders (that have the effect of law) as well as all applicable final,
.app     ble judicial opinions.

Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
.ges that are imposed on Borrower or the Property by a condominium association, homeowners
.iation or similar organization.

'Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
.k, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
.ument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
.redit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
.tine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
.fers.

'Escrow Items" means those items that are described in Section 3.

'Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
.ny third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
.ige to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
.erty; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
.e and/or condition of the Property.

"Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
.oan.

'Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
.e, plus (ii) any amounts under Section 3 of this Security Instrument.

"RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
.ementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
., or any additional or successor legislation or regulation that governs the same subject matter. As used
.is Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
."fe    lly related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
.' ur.....RESPA.

0058275090-9701
Initials: _Kme_
-6(IL) (0005)                          Page 2 of 15          05/20/2004 2:18:27    Form 3014   1/01

"Successor in Interest of Borrower" means any party that has taken title to the Property, whether or :hat party has assumed Borrower's obligations under the Note and/or this Security Instrument.

ιNSFER OF RIGHTS IN THE PROPERTY

Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and ifications of the Note; and (ii) the performance of Borrower's covenants and agreements under Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey ender and Lender's successors and assigns, the following described property located in the
            County                                                    [Type of Recording Jurisdiction]
:OOK                                                    [Name of Recording Jurisdiction]:

AL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

el ID Number: 28-16-108-003-0000                which currently has the address of
41 MICHAELE DRIVE                                                            [Street]
FOREST                                              [City], Illinois 60452        [Zip Code]
perty Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all nents, appurtenances, and fixtures now or hereafter a part of the property. All replacements and ;ions shall also be covered by this Security Instrument. All of the foregoing is referred to in this rity Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has ight to mortgage, grant and convey the Property and that the Property is unencumbered, except for mbrances of record. Borrower warrants and will defend generally the title to the Property against all is and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform nants with limited variations by jurisdiction to constitute a uniform security instrument covering real erty.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.
· ɔw  ̄hall pay when due the principal of, and interest on, the debt evidenced by the Note and any ιyl ._c charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items ιant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0058276090 - 9701
Initials:

-6(IL) (0005)                Page 3 of 15    05/20/2004 2:18:27 PM Form 3014  1/01

ncy. However, if any check or other instrument received by Lender as payment under the Note or this
rity Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments
under the Note and this Security Instrument be made in one or more of the following forms, as
ted by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or
ier's check, provided any such check is drawn upon an institution whose deposits are insured by a
al agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at
other location as may be designated by Lender in accordance with the notice provisions in Section 15.
ler may return any payment or partial payment if the payment or partial payments are insufficient to
g the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan
nt, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial
ents in the future, but Lender is not obligated to apply such payments at the time such payments are
pted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay
est on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring
Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply
funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding
cipal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower
it have now or in the future against Lender shall relieve Borrower from making payments due under
Note and this Security Instrument or performing the covenants and agreements secured by this Security
ument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all
nents accepted and applied by Lender shall be applied in the following order of priority: (a) interest
un     the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments
. be applied to each Periodic Payment in the order in which it became due. Any remaining amounts
. be applied first to late charges, second to any other amounts due under this Security Instrument, and
to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
cient amount to pay any late charge due, the payment may be applied to the delinquent payment and
ate charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received
Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be
in full. To the extent that any excess exists after the payment is applied to the full payment of one or
Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall
pplied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under
Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due
r the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due
(a) taxes and assessments and other items which can attain priority over this Security Instrument as a
or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c)
niums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance
niums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage
rance premiums in accordance with the provisions of Section 10. These items are called "Escrow
s." At origination or at any time during the term of the Loan, Lender may require that Community
ociation Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and
ssments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to
aid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives
ov    · obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's
zation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be
riting. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires,
. furnish to Lender receipts evidencing such payment within such time period as Lender may require.
ower's obligation to make such payments and to provide receipts shall for all purposes be deemed to
covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement"
;ed in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and
ower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9
pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such
unt. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in
rdance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in
amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to
y the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender
require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and
mable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable
.

The Funds shall be held in an institution whose deposits are insured by a federal agency,
umentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in
Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time
ified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually
/zing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the
ls and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing
pplicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower
inte⁻ ⁻t or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest
be _ .d on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the
ls as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to
ower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow,
:fined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to
ler the amount necessary to make up the shortage in accordance with RESPA, but in no more than
/e monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA,
ler shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount
ssary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly
ients.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund
rrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions
utable to the Property which can attain priority over this Security Instrument, leasehold payments or
nd rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To
xtent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless
ower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable
:nder, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith
r defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to
nt the enforcement of the lien while those proceedings are pending, but only until such proceedings
oncluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating
ien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien
h caⁿ attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

0058275890 9701
Initials: ___
-6(IL) (9904).01                    Page 5 of 15     05/20/2004 2:18:27    Form 3014   3/99

Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or : of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or rting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on Property insured against loss by fire, hazards included within the term "extended coverage," and any r hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. insurance shall be maintained in the amounts (including deductible levels) and for the periods that ier requires. What Lender requires pursuant to the preceding sentences can change during the term of Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's : to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may ire Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone mination, certification and tracking services; or (b) a one-time charge for flood zone determination certification services and subsequent charges each time remappings or similar changes occur which nably might affect such determination or certification. Borrower shall also be responsible for the nent of any fees imposed by the Federal Emergency Management Agency in connection with the w of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance rage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any cular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, rd or liability and might provide greater or lesser coverage than was previously in effect. Borrower ow ges that the cost of the insurance coverage so obtained might significantly exceed the cost of rance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall me additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest e Note rate from the date of disbursement and shall be payable, with such interest, upon notice from ler to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's : to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as gagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal ficates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and wal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, iamage to, or destruction of, the Property, such policy shall include a standard mortgage clause and name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree riting, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall pplied to restoration or repair of the Property, if the restoration or repair is economically feasible and ier's security is not lessened. During such repair and restoration period, Lender shall have the right to such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the : has been completed to Lender's satisfaction, provided that such inspection shall be undertaken ptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series ogress payments as the work is completed. Unless an agreement is made in writing or Applicable Law ires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any est or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by ower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If est ion or repair is not economically feasible or Lender's security would be lessened, the insurance eec all be applied to the sums secured by this Security Instrument, whether or not then due, with

0058 5090 - 9701
Initials: D K m E

-6(IL) (0005)          Page 6 of 15      05/20/2004 2:18:27    Form 3014  1/01
D

xcess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in on 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance n and related matters. If Borrower does not respond within 30 days to a notice from Lender that the rance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day d will begin when the notice is given. In either event, or if Lender acquires the Property under ion 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance eeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and any other of Borrower's rights (other than the right to any refund of unearned premiums paid by ower) under all insurance policies covering the Property, insofar as such rights are applicable to the rage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or y amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal lence within 60 days after the execution of this Security Instrument and shall continue to occupy the erty as Borrower's principal residence for at least one year after the date of occupancy, unless Lender rwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating mstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not roy, damage or impair the Property, allow the Property to deteriorate or commit waste on the erty. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in r to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is rmined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall op" repair the Property if damaged to avoid further deterioration or damage. If insurance or lem....ion proceeds are paid in connection with damage to, or the taking of, the Property, Borrower l be responsible for repairing or restoring the Property only if Lender has released proceeds for such oses. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of ress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient pair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has onable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give ower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application ess, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's wledge or consent gave materially false, misleading, or inaccurate information or statements to Lender failed to provide Lender with material information) in connection with the Loan. Material esentations include, but are not limited to, representations concerning Borrower's occupancy of the erty as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there legal proceeding that might significantly affect Lender's interest in the Property and/or rights under Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for rcement of a lien which may attain priority over this Security Instrument or to enforce laws or lations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is onable or appropriate to protect Lender's interest in the Property and rights under this Security rument, including protecting and/or assessing the value of the Property, and securing and/or repairing Pr ty. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien :h . priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0058275090 -9701
Initials: DL KME

)-6(IL) (0005)
®

Page 7 of 15     05/20/2004 2:18:27     Form 3014   1/01

neys' fees to protect its interest in the Property and/or rights under this Security Instrument, including
ecured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to,
ring the Property to make repairs, change locks, replace or board up doors and windows, drain water
l pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned
r off. Although Lender may take action under this Section 9, Lender does not have to do so and is not
er any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all
ns authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower
red by this Security Instrument. These amounts shall bear interest at the Note rate from the date of
ursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting
nent.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the
e. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless
der agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan,
rower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason,
Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that
iously provided such insurance and Borrower was required to make separately designated payments
rd the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain
erage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially
valent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate
tgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not
lable, Borrower shall continue to pay to Lender the amount of the separately designated payments that
e due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these
nents as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be
-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be
dire to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss
rve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires)
ided by an insurer selected by Lender again becomes available, is obtained, and Lender requires
urately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage
rance as a condition of making the Loan and Borrower was required to make separately designated
nents toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to
ntain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's
irement for Mortgage Insurance ends in accordance with any written agreement between Borrower and
der providing for such termination or until termination is required by Applicable Law. Nothing in this
ion 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it
incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage
rance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may
r into agreements with other parties that share or modify their risk, or reduce losses. These agreements
on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to
e agreements. These agreements may require the mortgage insurer to make payments using any source
unds that the mortgage insurer may have available (which may include funds obtained from Mortgage
rance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer,
other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that
ve from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in
ange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement
vides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the
niums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for
rtgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount
ro will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

0058277090 - 9701
Initials: _KmE_

D -6(IL) (0005)          Page 8 of 15      05/20/2004 2:18:27     Form 3014   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the tgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights include the right to receive certain disclosures, to request and obtain cancellation of the tgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a nd of any Mortgage Insurance premiums that were unearned at the time of such cancellation or ination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby med to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of Property, if the restoration or repair is economically feasible and Lender's security is not lessened. ng such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds Lender has had an opportunity to inspect such Property to ensure the work has been completed to ler's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the irs and restoration in a single disbursement or in a series of progress payments as the work is pleted. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such cellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such cellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would essened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, her or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be ied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous eeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with xcess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market e of the Property immediately before the partial taking, destruction, or loss in value is equal to or ter  'n the amount of the sums secured by this Security Instrument immediately before the partial ng, struction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums red by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds iplied by the following fraction: (a) the total amount of the sums secured immediately before the ial taking, destruction, or loss in value divided by (b) the fair market value of the Property ediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market e of the Property immediately before the partial taking, destruction, or loss in value is less than the unt of the sums secured immediately before the partial taking, destruction, or loss in value, unless ower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums red by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the osing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, ower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized ollect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the s secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in rd to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in der's judgment, could result in forfeiture of the Property or other material impairment of Lender's rest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if leration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be issed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material airment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of award or claim for damages that are attributable to the impairment of Lender's interest in the Property hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be ied in the order provided for in Section 2.

1   Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for ment or modification of amortization of the sums secured by this Security Instrument granted by Lender

0058276990 -9701

Initials:

-6(IL) (0005)          Page 9 of 15      05/20/2004 2:18:27      Form 3014  1/01

rrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower
y Successors in Interest of Borrower. Lender shall not be required to commence proceedings against
Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify
tization of the sums secured by this Security Instrument by reason of any demand made by the original
wer or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or
dy including, without limitation, Lender's acceptance of payments from third persons, entities or
essors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or
ude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants
agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who
gns this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this
rity Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the
s of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security
ument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or
 any accommodations with regard to the terms of this Security Instrument or the Note without the
gner's consent.
Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes
ower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain
f Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from
ower's obligations and liability under this Security Instrument unless Lender agrees to such release in
ng. The covenants and agreements of this Security Instrument shall bind (except as provided in
on 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with
ower's default, for the purpose of protecting Lender's interest in the Property and rights under this
rity Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.
ga     ) any other fees, the absence of express authority in this Security Instrument to charge a specific
o Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge
that are expressly prohibited by this Security Instrument or by Applicable Law.
If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so
the interest or other loan charges collected or to be collected in connection with the Loan exceed the
itted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the
ge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted
s will be refunded to Borrower. Lender may choose to make this refund by reducing the principal
d under the Note or by making a direct payment to Borrower. If a refund reduces principal, the
ction will be treated as a partial prepayment without any prepayment charge (whether or not a
ayment charge is provided for under the Note). Borrower's acceptance of any such refund made by
t payment to Borrower will constitute a waiver of any right of action Borrower might have arising out
ich overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument
 be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to
 been given to Borrower when mailed by first class mail or when actually delivered to Borrower's
e address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers
ss Applicable Law expressly requires otherwise. The notice address shall be the Property Address
ss Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly
y Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's
ge of address, then Borrower shall only report a change of address through that specified procedure.
e may be only one designated notice address under this Security Instrument at any one time. Any
e to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address
d herein unless Lender has designated another address by notice to Borrower. Any notice in
ection with this Security Instrument shall not be deemed to have been given to Lender until actually
ived by Lender. If any notice required by this Security Instrument is also required under Applicable
, the Applicable Law requirement will satisfy the corresponding requirement under this Security
urr

0058245090 - 9701

Initials:

-6(IL) (0005)            Page 10 of 15      05/20/2004 2:18:27     Form 3014   1/01

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be
rned by federal law and the law of the jurisdiction in which the Property is located. All rights and
;ations contained in this Security Instrument are subject to any requirements and limitations of
icable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it
.t be silent, but such silence shall not be construed as a prohibition against agreement by contract. In
:vent that any provision or clause of this Security Instrument or the Note conflicts with Applicable
. such conflict shall not affect other provisions of this Security Instrument or the Note which can be
i effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include
:sponding neuter words or words of the feminine gender; (b) words in the singular shall mean and
de the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to
any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18,
:rest in the Property" means any legal or beneficial interest in the Property, including, but not limited
iose beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or
iw agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower
·t a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior
en consent, Lender may require immediate payment in full of all sums secured by this Security
ument. However, this option shall not be exercised by Lender if such exercise is prohibited by
icable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall
ide a period of not less than 30 days from the date the notice is given in accordance with Section 15
in which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay
: s⁻ · prior to the expiration of this period, Lender may invoke any remedies permitted by this
rit_y .strument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions,
ower shall have the right to have enforcement of this Security Instrument discontinued at any time
· to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security
ument; (b) such other period as Applicable Law might specify for the termination of Borrower's right
:instate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that
ower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note
no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all
uses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys'
property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's
:st in the Property and rights under this Security Instrument; and (d) takes such action as Lender may
mably require to assure that Lender's interest in the Property and rights under this Security
ument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue
anged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay
reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a)
(b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any
check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or
y; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and
;ations secured hereby shall remain fully effective as if no acceleration had occurred. However, this
to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in
Note (together with this Security Instrument) can be sold one or more times without prior notice to
ower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects
idic Payments due under the Note and this Security Instrument and performs other mortgage loan
cing obligations under the Note, this Security Instrument, and Applicable Law. There also might be
)r more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan
icer    )rrower will be given written notice of the change which will state the name and address of the
Lo_ Servicer, the address to which payments should be made and any other information RESPA

0056265090 -9701
Initials
Lee KME
-6(IL) (0005)                        Page 11 of 15      05/20/2004 2:18:27    Form 3014   1/01
)

res in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is
ced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations
orrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not
ned by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an
idual litigant or the member of a class) that arises from the other party's actions pursuant to this
rity Instrument or that alleges that the other party has breached any provision of, or any duty owed by
n of, this Security Instrument, until such Borrower or Lender has notified the other party (with such
e given in compliance with the requirements of Section 15) of such alleged breach and afforded the
: party hereto a reasonable period after the giving of such notice to take corrective action. If
icable Law provides a time period which must elapse before certain action can be taken, that time
d will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and
rtunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to
ower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective
n provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those
tances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the
wing substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides
herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials;
Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that
e to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response
n;        edial action, or removal action, as defined in Environmental Law; and (d) an "Environmental
ition" means a condition that can cause, contribute to, or otherwise trigger an Environmental
nup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous
tances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do,
allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental
, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a
ardous Substance, creates a condition that adversely affects the value of the Property. The preceding
sentences shall not apply to the presence, use, or storage on the Property of small quantities of
ardous Substances that are generally recognized to be appropriate to normal residential uses and to
itenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit
ther action by any governmental or regulatory agency or private party involving the Property and any
ardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any
ironmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of
ase of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a
ardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified
iny governmental or regulatory authority, or any private party, that any removal or other remediation
ny Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary
edial actions in accordance with Environmental Law. Nothing herein shall create any obligation on
der for an Environmental Cleanup.

)-6(IL) (0005)
® 

Page 12 of 15

0058270090 - 9701
Initials: _____ KML

05/20/2004  2:18:27

Form 3014  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following ower's breach of any covenant or agreement in this Security Instrument (but not prior to eration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) efault; (b) the action required to cure the default; (c) a date, not less than 30 days from the date lotice is given to Borrower, by which the default must be cured; and (d) that failure to cure the alt on or before the date specified in the notice may result in acceleration of the sums secured by Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall er inform Borrower of the right to reinstate after acceleration and the right to assert in the losure proceeding the non-existence of a default or any other defense of Borrower to acceleration foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its n may require immediate payment in full of all sums secured by this Security Instrument out further demand and may foreclose this Security Instrument by judicial proceeding. Lender be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, iding, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this rity Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for sing this Security Instrument, but only if the fee is paid to a third party for services rendered and the jing of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives gh _nder and by virtue of the Illinois homestead exemption laws.

0058275090 -9701
Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
ity Instrument and in any Rider executed by Borrower and recorded with it.

esses:

_____     _Karen M. Eson_____ (Seal)
                               KAREN M ESON              -Borrower


_____     _Bryan L Eson_____ (Seal)
                               BRYAN L ESON             -Borrower


_____ (Seal)        _____ (Seal)
                 -Borrower                              -Borrower


_____ (Seal)        _____ (Seal)
                 -Borrower                              -Borrower


_____ (Seal)        _____ (Seal)
                 -Borrower                              -Borrower


                              0058275090-9701

-6(IL) (0005)                 Page 14 of 15  05/20/2004 2:18:27 PM  Form 3014  1/01

ATE OF ILLINOIS,                    County ss:

I, _____ a Notary
blic in and for said county and in said state, hereby certify that

_____

_____

_____

rsonally known to me to be the same person(s) whose name(s) subscribed to the foregoing
trument, appeared before me this day in person, and acknowledged that he/she/they signed
d delivered the said instrument as his/her/their free and voluntary act, for the uses and
poses therein set forth.

Given under my hand and official seal of this

Commission Expires:

_____
Notary Public



05/20/2004 2:18:27 PM

## ADJUSTABLE RATE RIDER

**(LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)**

IIS ADJUSTABLE RATE RIDER is made this 24th day of May , 2004   and is incorporated into
d shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed
e "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
rrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of
≥ same date and covering the property described in the Security Instrument and located at:

5441 MICHAELE  DRIVE, OAK FOREST, IL 60452
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

AᴖDITIONAL COVENANTS. In addition to the covenants and agreements made in the
curity Instrument, Borrower and Lender further covenant and agree as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES
ə Note provides for an initial interest rate of   6.900 %. The Note provides for changes in the
ərest rate and the monthly payments, as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
e interest rate I will pay may change on the first day of June, 2006  , and on that day every
th  month thereafter. Each date on which my interest rate could change is called a "Change
te."

(B) The Index
ǵinning with the first Change Date, my interest rate will be based on an Index.   The "Index" is
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the
ɪdon market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure
iilable as of the date 45 days before each Change Date is called the "Current Index."

f the Index is no longer available, the Note Holder will choose a new index which is based
ɔn comparable information.  The Note Holder will give me notice of this choice.

Initials _____ *KME*

an ˈ ̄ber: 0058275090 - 9701

- (Rev 1/01)              Page 1 of 3

05/20/2004 2:18:27 PM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding percentage points ( **6.000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.900% or less than 6.900%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000** %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.900)% or less than 00)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials: _BE_  _KmE_

Loan number: 0058275090 - 9701

05/20/2004 2:18:27 PM

# EXHIBIT D

5/23/04 11:50 AM

OMB No. 2502-0265

| A. U.S. Department of Housing and Urban Development | B. Type of Loan |
|---|---|

| | |
|---|---|
| | 1. [ ] FHA     2. [ ] FMHA     . [ ] Conv. Unins. |
| | 4. [ ] VA     5. [ ] Conv. Ins.     [X] Other. |
| | 6. File Number           7. Loan Number |
| **Settlement Statement** |       62607             0058275090 |
| | 8. Mortgage Ins. Case No. |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing; they are shown here for information purposes and are not included in the totals.

**D. Name of Borrower:** Bryan L Eson
Karen M Eson

**E. Name of Seller:**

**F. Name of Lender:** Argent Mortgage Company, LLC, 1701 Golf Road, Rolling Meadows, IL 60008

**G. Property Location:** Natalia Subdivision; , Cook County, Illinois

15441 Michaele Drive, Oak Forest, IL 60452

**H. Settlement Agent:** Citywide Title Corporation (312) 492-8934          TIN:    36-4162376

**Place of Settlement:** 850 West Jackson, Suite 320, Chicago, IL 60607

**I. Settlement Date:** 5/24/04                  Proration Date:    5/28/04

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross amount due from borrower: | | 400. Gross amount due to seller: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 6,054.14 | 403. | |
| 104. Payoff 1st Mortgage to GMAC Mortgage Corp | 154,917.41 | 404. | |
| 105. Payoff 2nd Mortgage to First Midwest | 10,380.01 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross amount due from borrower: | 171,351.56 | 420. Gross amount due to seller: | |
| 200. Amounts paid by or in behalf of the borrower: | | 500. Reductions in amount due to seller: | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 174,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total paid by/for borrower: | 174,000.00 | 520. Total reduction in amount due seller: | |
| 300. Cash at settlement from/to borrower: | | 600. Cash at settlement to/from seller: | |
| 301. Gross amount due from borrower (line 120) | 171,351.56 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 174,000.00 | 602. Less total reduction in amount due seller(line 520) | |
| 303. CASH ()FROM (X)TO BORROWER | 2,648.44 | 603. CASH ()FROM ()TO SELLER | |

**SUBSTITUTE FORM 1099 SELLER STATEMENT** - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.
**SELLER INSTRUCTION** - If this real estate was your principle residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4787, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Citywide Title Corporation (312) 492-8934 with your correct taxpayer identification number.
If you do not provide Citywide Title Corporation (312) 492-8934 with your correct taxpayer identification number, you may be subject to civil or criminal penalties.

| Settlement Charges 5/23/04 11:40 AM | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 700. | Total sales/broker commission | | |
| | Division of commission (line 700) as follows: | | |
| 701. | $ | | |
| 702. | $ | | |
| 703. | Commission paid at settlement | | |
| 704. | | | |
| **800. Items payable in connection with loan** | | | |
| 801. | Loan origination fee     to   A American Financial Group, Inc. | 1,740.00 | |
| 802. | Loan discount | | |
| 803. | Appraisal fee | | |
| 804. | Credit report | | |
| 805. | Lender's inspection fee | | |
| 806. | Mortgage insurance application fee | | |
| 807. | Assumption fee | | |
| 808. | Tax Related Service Fee     to   Argent Mortgage Company, LLC | 70.00 | |
| 809. | Flood Search Fee     to   Argent Mortgage Company, LLC | 16.00 | |
| 810. | Processing Fee     to   A American Financial Group, Inc. | 700.00 | |
| 811. | Underwriting Fee     to   Argent Mortgage Company, LLC | 275.00 | |
| 812. | | | |
| 813. | | | |
| **900. Items required by lender to be paid in advance** | | | |
| 901. | Interest from     5/28/04 to 6/1/04   at $32.8900/day for 4 days. | 131.56 | |
| 902. | Mortgage insurance premium for | | |
| 903. | Hazard insurance premium for | | |
| 904. | | | |
| 905. | | | |
| **1000. Reserves deposited with lender** | | | |
| 1001. | Hazard insurance     6 mo.@ $89.1400 per mo. | 534.84 | |
| 1002. | Mortgage insurance | | |
| 1003. | City property taxes | | |
| 1004. | County property taxes     6 mo.@ $287.2900 per mo. | 1,723.74 | |
| 1005. | Annual assessments (maint.) | | |
| 1006. | | | |
| 1007. | | | |
| 1008. | | | |
| 1009. | | | |
| **1100. Title charges** | | | |
| 1101. | Settlement or closing fee     to   Citywide Title Corporation | 200.00 | |
| 1102. | Abstract or title search | | |
| 1103. | Title examination | | |
| 1104. | Title insurance binder | | |
| 1105. | Document preparation | | |
| 1106. | Notary fees | | |
| 1107. | Attorney's fees to | | |
| | includes above items no.: | | |
| 1108. | Title insurance     to   Citywide Title Corporation | 300.00 | |
| | includes above items no.: | | |
| 1109. | Lender's coverage     $174,000.00          $300.00 | | |
| 1110. | Owner's coverage | | |
| 1111. | E-mail Fee     to   Citywide Title Corporation | 10.00 | |
| 1112. | Remote Fee     to   Citywide Title Corporation | 150.00 | |
| 1113. | Courier Fee     to   Citywide Title Corporation | 75.00 | |
| **1200. Government recording and transfer charges** | | | |
| 1201. | Recording fees:     MSC $125.00 | 125.00 | |
| 1202. | City/county tax/stamps: | | |
| 1203. | State tax/stamps: | | |
| 1204. | DFI Policy Fee     to   State of Illinois | 3.00 | |
| 1205. | | | |
| 1206. | | | |
| **1300. Additional settlement charges** | | | |
| 1301. | Survey | | |
| 1302. | Pest inspection | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1400. | Total settlement charges (entered on lines 103, section J and 502, section K) | 6,054.14 | |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

| Settlement Statement<br>Optional Form for<br>Transactions without Sellers | U.S. Department of Housing<br>and Urban Development | OMB Approval No. 2502-0491<br>WLI |
|---|---|---|

Name & Address of Borrower:
KAREN M ESON    BRYAN L ESON

15441 MICHAEL DRIVE    OAK FOREST, IL 60452

Property Location: (if different from above)

15441 MICHAELE DRIVE, OAK FOREST, IL  60452

Name & Address of Lender:
Argent Mortgage Company, LLC
1701 Golf Road
Rolling Meadows, IL 60008

Settlement Agent: CITYWIDE TITLE

Place of Settlement: 850 W JACKSON
Chicago,IL 60607

| Loan Number:<br>005B275090 - 9701 | Settlement Date:Estimated<br>05/28/2004 |
|---|---|

## L.    Settlement Charges

| 800.  Items Payable in Connection with Loan | |
|---|---|
| 801.  Loan origination fee      % to | |
| 802.  Loan discount      % to | |
| 803.  Apprsl/Prop Val to | $0.00 |
| 804.  Credit report to | |
| 805.  Inspection fee to | |
| 806. | |
| 807. | |
| 808.  Yield Spread Premium to | |
| 809. | |
| 810. Tax Related Service Fee to  Argent Mortgage Company, | $70.00 |
| 811. Flood Search Fee to  Argent Mortgage Company, LLC | $16.00 |
| 812. Lenders Processing Fee to | |
| 813. | |
| 814. Doc. Prep. Fee to | |
| 815. Credit Report Fee to | $0.00 |
| 816. Origination Fee  1.000  % to  A American Financial Group Inc | $1,740.00 |
| 817. Application Fee to | |
| 818. Underwriting Fee to | |
| 819. Service Provider Fee to | |
| 820. Processing Fee to  A American Financial Group | $700.00 |
| 821. Underwriting Fee to  Argent Mortgage Company, LLC | $275.00 |
| 822. Appraisal Fee to | |
| 900.  Items Required by Lender to be Paid in Advance | |
| 901. Interest from 05/28/2004  to  06/01/2004  @  $32.89  per day | $131.56 |
| 902. Mortgage Insurance premium for          months to | |
| 903. Hazard Ins prem to | $0.00 |
| 904. Flood Ins prem to | |
| 1000. Reserves Deposited with Lender | |
| 1001. Hazard insurance  6 months @ $  89.14  per month | $534.84 |
| 1002. Mortgage Insurance          months @ $          per month | |
| 1003. Earthquake Ins          months @ $          per month | |
| 1004. County prop. taxes  6  months @ $  287.29  per month | $1,723.74 |
| 1005. Annual assess.          months @ $          per month | |
| 1006. Flood          months @ $          per month | |
| 1007. Windstorm Ins          months @ $          per month | |
| 1008. | |
| 1100. Title Charges | |
| 1101. Settlement or closing fee to  CITYWIDE TITLE | $600.00 |
| 1102. Abstract or title search to | |
| 1103. Title examination to | |
| 1104. Title insurance binder to | |
| 1105. Document preparation to | |
| 1106. Notary fees to | |
| 1107. Attorney's fees to | |
| 1108. Title insurance to  CITYWIDE TITLE | $500.00 |
| 1109. Lender's coverage        $ | |
| 1110. Owner's coverage        $ | |
| 1111. Settlement/Disbursement fee to | |
| 1112. Escrow Fee to | |
| 1200. Government Recording and Transfer Charges | |
| 1201. Recording fees | $125.00 |
| 1202. City/county tax/stamps | |
| 1203. State tax/ stamps | |
| 1204. State specific fee | |
| 1205. State specific fee | |
| 1300. Additional Settlement Charges | |
| 1301. Demand to | |
| 1302. Pest Inspection to | |
| 1303. Survey Fee | |
| 1304. Misc Fees | |
| 1305. Reconveyance Fee to | |
| 1306. | |
| 1307. Apprsl/Prop Val Fee to | |
| 1308. Courier Fee | |
| 1400. Total Settlement Charges (enter on line 1602) | $6,416.14 |

| M.    Disbursement to Others | | |
|---|---|---|
| 1501.<br>GENERAL MOTORS MTG C | (W) | $157,047.23 |
| 1502.<br>FIRST MIDWEST BANK/N | (W) | $10,684.12 |
| 1503. | | |
| 1504. | | |
| 1505. | | |
| 1506. | | |
| 1507. | | |
| 1508. | | |
| 1509. | | |
| 1510. | | |
| 1511. | | |
| 1512. | | |
| 1513. | | |
| 1514. | | |
| 1515. | | |
| 1520. TOTAL DISBURSED (enter on line 1603) | | $167,731.35 |

Total Wire:   $171,248.86

| N.   NET SETTLEMENT | |
|---|---|
| 1600. Loan Amount | 174,000.00 |
| 1601. Plus Cash/Check from Borrower | |
| 1602. Minus Total Settlement Charges<br>(line 1400) | $6,416.14 |
| 1603. Minus Total Disbursements to Others<br>(line 1520) | $167,731.35 |
| 1604. Equals Disbursements to Borrower<br>(after expiration of any applicable rescission<br>period) | -$147.49 |

Borrower(s) Signature(s):

X

Approved for Funding By:            Approved:            Branch:  Rolling Meadows, IL 60008

Bryan L Eson

_Karen M Eson_

Karen M Eson

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____

Citywide Title Corporation                                                                    Date

**SELLER'S AND/OR PURCHASER'S STATEMENT** Seller's and Purchaser's signature hereon acknowledges his/their approval of tax prorations and signifies their understanding that prorations were based on taxes for the preceding year, or estimates for the current year, and in the event of any change for the current year, all necessary adjustments must be made between Seller and Purchaser, likewise any default in delinquent taxes will be reimbursed to Title Company by the Seller.

   Title Company, in its capacity as Escrow Agent, is and has been authorized to deposit all funds it receives in this transaction in any financial institution, whether affiliated or not. Such financial institution may provide Title Company computer accounting and audit services directly or through a separate entity which, if affiliated with Title Company, may charge the financial institution reasonable and proper compensation therefore and retain any profits therefrom. Any escrow fees paid by any party involved in this transaction shall only be for checkwriting and input to the computer, but not for aforesaid accounting and audit services. Title Company shall not be liable for any interest or other charges on the earnest money and shall be under no duty to invest or reinvest funds held by it at any time. Sellers and Purchasers hereby acknowledge and consent to the deposit of the escrow money in financial institutions with which Title Company has or may have other banking relationships and further consent to the retention by Title Company and/or its affiliates of any and all benefits (including advantageous interest rates on loans) Title Company and/or its affiliates may receive from such financial institutions by reason of their maintenance of said escrow accounts.

   The parties have read the above sentences, recognize that the recitations herein are material, agree to same, and recognize Title Company is relying on the same.

Purchasers/Borrowers                                                                         Sellers

_____

Bryan L Eson

_Karen Eson_

Karen M Eson

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18: U.S. Code Section 1001 and Section 1010.

# EXHIBIT E

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Preliminary ☐    Final ☒

DER: Argent Mortgage Company, LLC
1701 Golf Road
Rolling Meadows, IL 60008
(847)690-0517

Broker License: 07008

Borrowers; KAREN M ESON    BRYAN L ESON

Type of Loan: ADJUSTABLE RATE
Date: May 24, 2004

Address:    15441 MICHAEL DRIVE
City/State/Zip: OAK FOREST,IL 60452

Loan Number: 0058275090 - 9701

Property:    15441 MICHAELE DRIVE, OAK FOREST, IL 60452

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.485 % | $ 260,070.81 | $ 170,467.44 | $ 430,538.25 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $1,145.97 | 07/01/2004 | | | |
| 335 | $1,199.53 | 07/01/2006 | | | |
| 1 | $1,192.42 | 06/01/2034 | | | |

VARIABLE RATE FEATURE:
☒ Your loan has a variable rate feature. Disclosure about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at: 15441 MICHAELE DRIVE, OAK FOREST, IL 60452

ASSUMPTION:    Someone buying this property    ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to
Argent Mortgage Company, LLC

LATE CHARGES:    If a payment is late, you will be charged  5.000%  of the overdue payment .

PREPAYMENT:    If you pay off your loan early, you
☐ may    ☒ will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Karen M. Eson_    5/24/04
Borrower KAREN M ESON    Date

_Bryan L Eson_
Borrower BRYAN L ESON    Date

Borrower    Date

Borrower    Date

TIL1 (Rev. 7/01)    05/20/2004 2:18:27 PM



# EXHIBIT F

## NOTICE OF RIGHT TO CANCEL

. ᴸDER:   Argent Mortgage Company, LLC

DATE:   May 24, 2004
LOAN NO.:   0058275090 - 9701
TYPE:   ADJUSTABLE RATE

BORROWER(S): KAREN M ESON          BRYAN L ESON

ADDRESS:        15441 MICHAEL DRIVE
CITY/STATE/ZIP:   OAK FOREST,IL 60452

PROPERTY:   15441 MICHAELE DRIVE
                    OAK FOREST,  IL  60452

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is
| ENTER DOCUMENT SIGNING DATE |
| --- |
|  |
; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

HOW TO CANCEL
   If you decide to cancel this transaction, you may do so by notifying us in writing, at:

   Argent Mortgage Company, LLC                    ATTN:  FUNDING
   3 Park Plaza                                               PHONE: (800)-561-4072
   Irvine, CA 92614                                          FAX:     (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
|  |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____                          _____
SIGNATURE                                                               DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____  5/24/04   _____
OWER/OWNER KAREN M ESON          Date          BORROWER/OWNER BRYAN L ESON          Date

_____                          _____
BORROWER/OWNER                          Date          BORROWER/OWNER                          Date

1964-NRC (Rev 6/99)                                                                      05/20/2004 2:18:27 PM

# NOTICE OF RIGHT TO CANCEL

.NDER:   Argent Mortgage Company, LLC

DATE:  May 24, 2004
LOAN NO.:   0058275090 - 9701
TYPE:   ADJUSTABLE RATE

BORROWER(S): KAREN M ESON        BRYAN L ESON

ADDRESS:       15441 MICHAEL DRIVE
CITY/STATE/ZIP:   OAK FOREST, IL 60452

PROPERTY:   15441 MICHAELE DRIVE
            OAK FOREST, IL  60452

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

_____                    ; or

2.   The date you received your Truth In Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
3 Park Plaza
Irvine, CA 92614

ATTN:  FUNDING
PHONE: (800)-561-4072
FAX:      (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____                              _____
SIGNATURE                                            DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____        _____        _____        _____
I    )WER/OWNER KAREN M ESON     Date        BORROWER/OWNER BRYAN L ESON      Date

_____        _____        _____        _____
BORROWER/OWNER                   Date        BORROWER/OWNER                   Date

1064-NRC (Rev 6/99)                                    05/20/2004 2:18:27 PM

## NOTICE OF RIGHT TO CANCEL

NDER: Argent Mortgage Company, LLC

DATE: May 24, 2004
LOAN NO.: 0058275090 - 9701
TYPE: ADJUSTABLE RATE

BORROWER(S): KAREN M ESON    BRYAN L ESON

ADDRESS:      15441 MICHAEL DRIVE
CITY/STATE/ZIP:    OAK FOREST,IL 60452

PROPERTY:   15441 MICHAELE DRIVE
           OAK FOREST, IL 60452

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE
_____ ; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
3 Park Plaza
Irvine, CA 92614

ATTN: FUNDING
PHONE: (800)-561-4072
FAX: (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL
_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____
SIGNATURE                  DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____        _____
OWER/OWNER KAREN M ESON     Date      BORROWER/OWNER BRYAN L ESON     Date

_____        _____
BORROWER/OWNER           Date      BORROWER/OWNER           Date

1964-NTLC(Rev 6/99)                              05/20/2004 2:18:27 PM

## NOTICE OF RIGHT TO CANCEL

NDER:   Argent Mortgage Company, LLC

DATE:   May 24, 2004
LOAN NO.:   0058275090 - 9701
TYPE:   ADJUSTABLE RATE

BORROWER(S): KAREN M ESON          BRYAN L ESON

ADDRESS:          15441 MICHAEL DRIVE
CITY/STATE/ZIP:   OAK FOREST,IL 60452

PROPERTY:   15441 MICHAELE DRIVE
            OAK FOREST, IL  60452

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
| _____ |

; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**,,OW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
3 Park Plaza
Irvine, CA 92614

ATTN:  FUNDING
PHONE: (800)-561-4072
FAX:    (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
| _____ |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____                    _____
SIGNATURE                                           DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

| ʁ  ʁWER/OWNER KAREN M ESON | Date | BORROWER/OWNER BRYAN L ESON | Date |
| --- | --- | --- | --- |
| BORROWER/OWNER | Date | BORROWER/OWNER | Date |

1064-RRC (Rev 6/97)                                             05/20/2004 2:18:27 PM

# EXHIBIT G

**EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.**
120 S. LaSalle Street, 18th floor
Chicago, Illinois  60603-3403
(312) 739-4200
(800) 644-4673
(312) 419-0379 (FAX)
Email:  edcombs@aol.com
www.edcombs.com

April 21, 2006

BY CERTIFIED MAIL

Argent Mortgage Company, LLC
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

AMC  Mortgage Services, Inc.
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

> Re:    Notice of rescission, claim and lien, Bryan L. Eson and Karen M.
>          Eson, 15441 Michaele Drive, Oak Forest, IL 60452,  loan of May 24,
>          2004

Ladies/Gentlemen:

Each of the above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than Argent Mortgage Company, LLC or AMC Mortgage Services, Inc., please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on April 21, 2006.

_____
Daniel A. Edelman

EXHIBIT H

0058275090

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when □ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or □ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | □ VA   □ Conventional   □ Other: | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | □ FHA   □ FmHA | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | □ Fixed Rate   □ Other (explain): |
|---|---|---|---|---|
| $174,000.00 | 6.900 % | 360 | | □ GPM   X ARM (type): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) | | No. of Units |
|---|---|---|
| 15441 MICHAELE DRIVE, OAK FOREST, IL 60452 | | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| | 1940 |

| Purpose of Loan | □ Purchase   □ Construction   □ Other (explain): | Property will be: | X Primary Residence   □ Secondary Residence   □ Investment |
|---|---|---|---|
| | X Refinance   □ Construction-Permanent | | |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | | | | | |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements   □ made   □ to be made |
|---|---|---|---|---|
| 1999 | $0.00 | $ 165,000.00 | Refi-Cash Out | Cost: $ 0.00 |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in |
|---|---|---|
| KAREN H ESON and BRYAN L ESON, Husband and Wife, Tenants By | | X Fee Simple |
| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) | | □ Leasehold (show expiration date) |

### III. BORROWER INFORMATION

| | Borrower | | Co-Borrower |
|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | | Co-Borrower's Name (include Jr. or Sr. if applicable) | |
| KAREN H ESON | | BRYAN L ESON | |

| Social Security Number | Home Phone (incl. area code) | Age | Yrs. School | Social Security Number | Home Phone (incl. area code) | Age | Yrs. School |
|---|---|---|---|---|---|---|---|
| | | 36 | 14 | | | 38 | 14 |

| X Married   □ Unmarried (include single, divorced, widowed)   □ Separated | Dependents (not listed by Co-Borrower) no. 0   ages | X Married   □ Unmarried (include single, divorced, widowed)   □ Separated | Dependents (not listed by Borrower) no. 0   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) X Own □ Rent 5 No. Yrs. | Present Address (street, city, state, ZIP) X Own □ Rent 5 No. Yrs. |
|---|---|
| 15441 MICHAEL DRIVE | 15441 MICHAEL DRIVE |
| OAK FOREST, IL 60452 | OAK FOREST, IL 60452 |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, ZIP) □ Own □ Rent No. Yrs. | Former Address (street, city, ZIP) □ Own □ Rent No. Yrs. |
|---|---|
| | |

| Former Address (street, city, ZIP) □ Own □ Rent No. Yrs. | Former Address (street, city, ZIP) □ Own □ Rent No. Yrs. |
|---|---|
| | |

### IV. EMPLOYMENT INFORMATION

| | Borrower | | | Co-Borrower | |
|---|---|---|---|---|---|
| Name & Address of Employer | □ Self Employed | Yrs. on this job | Name & Address of Employer | □ Self Employed | Yrs. on this job |
| ELECTRO-MOTIVE | | 12 | HI-JACK PRODUCTS | | 5 |
| 9301 W. 55TH ST. | | Yrs. employed in this line of work/profession | 3111 W. 16TH ST. | | Yrs. employed in this line of work/profession |
| LAGRANGE, IL 60525 | | 12 | HAZELCREST, IL 60429 | | 18 |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |
| ADMINISTRATIVE ASSISTANT | (708)387-5990 | | MAINTENCE TECHNICIAN | (708)596-5200 | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | □ Self Employed | Dates (from - to) | Name & Address of Employer | □ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer | □ Self Employed | Dates (from - to) | Name & Address of Employer | □ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Borrower's Signature | Date | | VMP MORTGAGE FORMS - (800)521-7291 | Freddie Mac Form 65 10/92 Fannie Mae Form 1003 10/92 |
|---|---|---|---|---|
| X Karen M Eson | 5/24/04 | -21 (9210).07 | | |
| Co-Borrower's Signature | Date | Borrower's cell phone | Borrower's pager number | |
| X Bryan L Eson | 5-24-04 | Co-Borrower's cell phone | Co-Borrower's pager number | |

Page 1 of 4

0058275090

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 3,739.17 | $ 3,005.08 | $ 6,744.25 | Rent | $ 0.00 | |
| Overtime | | | | First Mortgage (P&I) | 1,618.00 | 1,145.97 |
| Bonuses | | | | Other Financing (P&I) | 362.00 | 0.00 |
| Commissions | | | | Hazard Insurance | 0.00 | 89.14 |
| Dividends/Interest | | | | Real Estate Taxes | 0.00 | 287.29 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 3,739.17 | $ 3,005.08 | $ 6,744.25 | Total | $ 1,980.00 | $ 1,522.40 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| Describe Other Income | Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| B/C | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [X] Jointly [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | LIABILITIES | | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
| | | Name and address of Company | | $ Pmt./Mos. | $ |
| List checking and savings accounts below | | *** SEE ADDENDUM *** | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | | | | |
| | | Acct. no. | | | |
| | | Name and address of Company | | $ Pmt./Mos. | $ |
| Acct. no. | $ | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. | | | |
| | | Name and address of Company | | $ Pmt./Mos. | $ |
| Acct. no. | $ | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. | | | |
| | | Name and address of Company | | $ Pmt./Mos. | $ |
| Acct. no. | $ | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. | | | |
| | | Name and address of Company | | $ Pmt./Mos. | $ |
| Acct. no. | $ | | | | |
| Stocks & Bonds (Company name/number & description) | | | | | |
| | | Acct. no. | | | |
| | | Name and address of Company | | $ Pmt./Mos. | $ |
| Life insurance net cash value | $ 0.00 | | | | |
| Face amount: $ 0.00 | | | | | |
| Subtotal Liquid Assets | $ 0.00 | | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 215,000.00 | Acct. no. | | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | | $ Pmt./Mos. | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | | |
| Automobiles owned (make and year) | $ | | | | |
| | | Acct. no. | | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | | $ | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | | 0.00 | |
| | | | | 0.00 | |
| | | Total Monthly Payments | | 809.94 | |
| Total Assets a. | $ 215,000.00 | Net Worth (a minus b) => | $ 189,289.00 | Total Liabilities b. | $ 25,711.00 |

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| x Karen M Ban 5/24/09 | | x Dan L. Gar. 5-24-09 | |

Fannie Mae Form 1003 10/92
Freddie Mac Form 65 10/92

Page 2 of 4

MB-21 (92101.07)

0058275090

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 15441 MICHAEL DRIVE OAK FOREST, IL 60452 | H SFR | 215000 | 154000 | 0 | 1618 | 0 | 0 |
| 15441 MICHAEL DRIVE OAK FOREST, IL 60452 | | 0 | 10460 | | 362 | 0 | 0 |
| | | | | | | | |
| Totals | | 215000 | 164460 | 0 | 1980 | 0 | 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

Alternate Name | Creditor Name | Account Number

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 0.00 |
| e. Estimated prepaid items | -59.16 |
| f. Estimated closing costs | 4,856.00 |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 0.00 |
| i. Total costs (add items a through h) | 4,796.84 |
| j. Subordinate financing | 0.00 |
| k. Borrower's closing costs paid by Seller | 0.00 |
| l. Other Credits | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 174,000.00 |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | 174,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -169,203.16 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes No | Co-Borrower Yes No |
|---|---|---|
| a. Are there any outstanding judgments against you? | X | X |
| b. Have you been declared bankrupt within the past 7 years? | X | X |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | X | X |
| d. Are you a party to a lawsuit? | X | X |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | X | X |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | X | X |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | X | X |
| h. Is any part of the down payment borrowed? | X | X |
| i. Are you a co-maker or endorser on a note? | X | X |
| j. Are you a U.S. citizen? | X | X |
| k. Are you a permanent resident alien? | X | X |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | X |
| m. Have you had an ownership interest in a property in the last three years? | X | X |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | PR |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | SP |

## IX. ACKNOWLEDGMENT AND AGREEMENT

The undersigned specifically acknowledge(s) and agree(s) that: (1) the loan requested by this application will be secured by a first mortgage or deed of trust on the property described herein; (2) the property will not be used for any illegal or prohibited purpose or use; (3) all statements made in this application are made for the purpose of obtaining the loan indicated herein; (4) occupation of the property will be as indicated above; (5) verification or reverification of any information contained in the application may be made at any time by the Lender, its agents, successors and assigns, either directly or through a credit reporting agency, from any source named in this application, and the original copy of this application will be retained by the Lender, even if the loan is not approved; (6) the Lender, its agents, successors and assigns will rely on the information contained in the application and I/we have a continuing obligation to amend and/or supplement the information provided in this application if any of the material facts which I/we have represented herein should change prior to closing; (7) in the event my/our payments on the loan indicated in this application become delinquent, the Lender, its agents, successors and assigns, may, in addition to all their other rights and remedies, report my/our name(s) and account information to a credit reporting agency; (8) ownership of the loan may be transferred to successor or assign of the Lender without notice to me and/or the administration of the loan account may be transferred to an agent, successor or assign of the Lender with prior notice to me; (9) the Lender, its agents, successors and assigns make no representations or warranties, express or implied, to the Borrower(s) regarding the property, the condition of the property, or the value of the property.

Certification: I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X Karen M Esm | 5/24/04 | X Dean L Esm | 5-24-04 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

**BORROWER** I do not wish to furnish this information
Race/National Origin:
American Indian or Alaskan Native | Asian or Pacific Islander | White, not of Hispanic origin
Black, not of Hispanic origin | Hispanic
Other (specify)
Sex: X Female | Male

**CO-BORROWER** I do not wish to furnish this information
Race/National Origin:
American Indian or Alaskan Native | Asian or Pacific Islander | White, not of Hispanic origin
Black, not of Hispanic origin | Hispanic
Other (specify)
Sex: Female | X Male

| To be Completed by Interviewer | Interviewer's Name (print or type) ALISON LEVINE | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Interviewer's Signature | A American Financial Group Inc |
| face-to-face interview | | 1239 W Hadison Av 2nd floor |
| X by mail | Interviewer's Phone Number (incl. area code) | Chicago, IL 60607 |
| by telephone | (312)491-9911 | |

0050275090

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:  ESON, KAREN M | Agency Case Number: |
|---|---|---|
| | Co-Borrower:  ESON, BRYAN L | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | | Date | Co-Borrower's Signature: | | Date |
|---|---|---|---|---|---|
| X _Karen M Eson_ | | 5/24/04 | X _Bryan P Eson_ | | 5-24-04 |

MW-21 (9210).07  Page 4 of 4  Fannie Mae Form 1003 10/92  Freddie Mac Form 65 10/92