**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY BUSH and DEBORAH BUSH, | ) | |
| | ) | 07 C 321 |
| Plaintiffs, | ) | |
| | ) | Originally 5:06-cv-184 (W.D. Mich.) |
| v. | ) | |
| | ) | Transferred to Judge Aspen for |
| AMERIQUEST MORTGAGE COMPANY, | ) | pretrial proceedings under MDL |
| DEUTSCHE BANK NATIONAL TRUST | ) | #1715, Lead Case #05 C 7097 |
| COMPANY, N.A., AMERIQUEST MORTGAGE | ) | |
| SECURITIES, INC., under Asset Backed Pass | ) | |
| Through Certificates, Series 2005-R10 Under the | ) | |
| Pooling and Servicing Agreement Dated as of | ) | |
| November 1, 2005, Without Recourse, | ) | |
| AMERICAN HOME MORTGAGE SERVICING, | ) | |
| INC., and DOES 1-5, | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

**INTRODUCTION**

1.　　　Plaintiffs Jeffrey Bush and Deborah Bush bring this action against a "subprime" mortgage lender and its affiliates to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, and to recover damages under state law.

**JURISDICTION AND VENUE**

2.　　　This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 1367 (supplemental jurisdiction), and 15 U.S.C. §1640 (TILA).　Defendants transact business in the District and are deemed to reside here.

1

## PARTIES

3. Plaintiffs Jeffrey Bush and Deborah Bush own and reside in a single family home at 522 Cayuga, Benton Harbor, MI, 49022.

4. Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823 or 200 W. Adams, Chicago, IL 60603.

5. Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6. Defendant Ameriquest Mortgage Company made more than 26 loans per year.

7. Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8. During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

9. Defendant Deutsche Bank National Trust Company, N.A., is a federally chartered bank located at 60 Wall Street, New York, NY 10005. On information and belief, it holds legal title to plaintiffs' loan, as trustee.

10. Defendant Ameriquest Mortgage Securities, Inc., an affiliate of

2

Ameriquest Mortgage Company, is a foreign corporation which transacts business in Michigan. It is the beneficial owner of some loans originated by Ameriquest Mortgage Company, including plaintiffs.' It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

11. Defendant American Home Mortgage Services, Inc. is a foreign corporation which does business in Illinois and Michigan. Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604. It services some loans originated by Ameriquest Mortgage Company, including plaintiffs', and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

## FACTS RELATING TO PLAINTIFFS

12. Plaintiffs are ordinary consumers. The Bushes' home is the first one they have owned. They purchased it in 2003 with a Veterans Administration-backed loan. Mr. Bush is an honorably-discharged, disabled Vietnam veteran. He is decorated with a Bronze Star and a Purple Heart for his service to his country.

13. Prior to October 18, 2005, Ameriquest repeatedly solicited plaintiffs by phone for a refinance mortgage loan. At all relevant times, an Ameriquest employee by the name of Ronald Sanford ("Ron") communicated with plaintiffs.

14. Plaintiffs then applied for the loan with Ameriquest Mortgage Company through Ron.

15. Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

16. Plaintiffs' main reason for refinancing was to consolidate and payoff debts, especially the larger balances they owed to AT&T and Citibank. Plaintiffs explained this to

Ron.

17.     Ameriquest closed the loan in plaintiffs' home on Oct. 18, 2005. Ameriquest's closer showed up unannounced at about 7:00 or 8:00 in the evening. She then rushed the plaintiffs through the documents before departing. Plaintiffs received one set of documents at closing, and inexplicably another set was mailed to them later.

18.     The following are documents relating to the loan:

    a.     A note, <u>Exhibit A</u>;

    b.     A mortgage, <u>Exhibit B</u>;

    c.     A settlement statement, <u>Exhibit C</u>;

    d.     A Truth in Lending statement, <u>Exhibit D</u>;

    e.     A list of "items to be paid off from loan proceeds," <u>Exhibit E</u>;

    f.     "Itemization of settlement charges," <u>Exhibit F</u>;

    g.     The three-day notice of right to cancel required by the Federal Reserve Board, <u>Exhibit G</u>. All copies delivered to plaintiffs were incomplete, as indicated.

    h.     A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, <u>Exhibit H</u>.

19.     Ameriquest charged plaintiffs a notary fee of $300 (<u>Exhibit C</u>, line 1106), in violation of Michigan state law (see below).

20.     Ameriquest also charged plaintiffs a "loan discount" fee of $3,819. <u>Exhibit C</u>, line 802.

21.     However, on information and belief, plaintiffs did not receive a "discounted" interest rate.

22.     Ameriquest did not, in fact, pay off the debts that plaintiffs most wanted and needed to be paid off.

23.     In connection with the loan, Ameriquest arranged for an artificially and fraudulently inflated appraisal of plaintiffs' home.

24.     After closing, plaintiffs discovered that the typed, pre-printed loan application prepared by Ameriquest and provided to plaintiffs at closing, Exhibit I, states that the value of plaintiffs' real property is $110,000.  Ron and/or Ameriquest inserted this false information in the loan application, representing thereby that plaintiffs qualified for the loan.

25.     Exhibit J, the appraisal report prepared by Joel Nanzer and JBN appraisal Corp. and signed by Nanzer on October 18, 2004, the day as closing, indicates a value of $112,000.  Plaintiffs did not receive a copy of this report until August, 2006.  The cover letter sent with the report states it is confidential and purports to release all claims against AMC and its affiliates.  Exhibit J.

26.     No appraisal inspector ever set foot inside plaintiffs' home.

27.     Prior to closing, when Ron asked Mr. Bush what he thought his home was worth, Mr. Bush told him $90,000.  Plaintiffs had purchased the home in 2003 for $85,000.

28.     Ameriquest conspired with Nanzer in advance to arrange for and obtain an appraised value that would support the amount that Ameriquest wanted to loan to plaintiffs.  This was done for the purpose of increasing Ron's commission, Ameriquest's points and fees, interest income and profits and to perpetuate Nanzer's frequent business with Ameriquest.

29.     Further, Ameriquest gave plaintiffs a higher interest rate than they had with their previous mortgagee.  About a month before closing, when Ron told plaintiffs over the

phone that Ameriquest was going to increase the interest rate for their loan to over 8%, he also told them that they could refinance a year later and receive the lower interest rate that he had promised them initially, which was about 6%.

30.     However, Ameriquest and Nanzer's inflated appraisal may mean that plaintiffs are prevented from refinancing out of their Ameriquest loan.

31.     The adjustable interest rate Ameriquest gave plaintiffs can climb as high as 14.5% (Exhibit A).  Plaintiffs' interest rate can increase by as much as 2% at the first change date in November, 2007.  (Id.)  Thereafter, plaintiffs' rate can increase by 1% in each six-month period. (Id.)  The rate can never go lower than 8.5%.  (Id.).

32.     The combined effect of the inflated appraisal and the adjustable interest rate is especially vicious:  Ameriquest has effectively trapped plaintiffs in a loan that is increasingly unaffordable, threatening the loss of their home.

33.     Plaintiffs were later directed to pay AMC, and then to Citi Residential Lending, Inc.  Subsequently, plaintiffs were directed to pay American Home Mortgage Servicing, Inc.

34.     On information and belief, Ameriquest Mortgage Securities, Inc., owns plaintiffs' loan.  Defendant Deutsche Bank holds title to plaintiff's loan as trustee, under Asset Backed Pass Through Certificates, Series 2005-R10 Under the Pooling and Servicing Agreement Dated as of November 1, 2005, Without Recourse.

35.     In the event Ameriquest Mortgage Securities, Inc. or Deutsche Bank National Trust Company, N.A. does not own plaintiffs' loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

6

## COUNT I - TRUTH IN LENDING ACT

36.     Plaintiffs incorporate paragraphs 1-34.

37.     This claim is against all defendants

## RIGHT TO RESCIND

38.     Because the transaction was secured by plaintiffs' home, and was not entered

into for purposes of the initial acquisition or construction of that home, it was subject to the right to

cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

> **(a) Consumer's right to rescind.**
>
> **(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**
>
> **(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**
>
> **(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**
>
> **(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

## GROUNDS FOR RESCISSION

39.     In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

40.     All copies of the federal notice of right to cancel delivered to plaintiffs were incomplete in that the transaction and cancellation dates were not filled in.

41.     Next, the delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory

three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

42. Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

43. Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

44. Notice of rescission has been given to defendants. A copy is attached as Exhibit K.

45. The loan has not been rescinded.

46. Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

47. 15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

a. A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

b. A judgment indicating what amounts, if any, plaintiffs owe defendants taking into account the inflated appraisal and the difficulty it may pose for plaintiffs' ability to tender;

9

    c.      Statutory damages for the underlying disclosure violation;

    d.      If appropriate, statutory damages for failure to rescind;

    e.      Attorney's fees, litigation expenses and costs; and

    f.      Such other or further relief as the Court deems appropriate.

## COUNT II – MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

48.    Plaintiffs incorporate paragraphs 1–35.  This claim is against Ameriquest.

49.    Ameriquest engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by charging a notary fee of $300.  This violates MCL §55.285, which provides:

> **The fee charged by a notary public for performing a notarial act shall not be more than $10.00 for any individual transaction or notarial act.  A notary public shall either conspicuously display a sign or expressly advise a person concerning the fee amount to be charged for a notarial act before the notary public performs the act.  Before the notary public commences to travel in order to perform a notarial act, the notary public and client may agree concerning a separate travel fee to be charged by the notary public for traveling to perform then notarial act.**

50.    Ameriquest engaged in deceit by charging plaintiffs an excessive notary fee.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against Ameriquest for:

    a.      A declaratory judgment, MCL §445.1681(1)(a);

    b.      Injunctive relief, MCL §445.1681(1)(b);

    c.      Appropriate damages, MCL §445.1681(1)(c);

    d.      Attorney's fees, litigation expenses and costs of suit; and

e.      Such other and further relief as the Court deems proper.

## COUNT III – MICHIGAN MORTGAGE BROKERS, LENDERS AND SERVICERS LENDING ACT

51.      Plaintiffs incorporate paragraphs 1-35.  This claim is against Ameriquest Mortgage Company.

52.      Ameriquest engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by

a.      Fraudulently inserting an inflated value for plaintiffs' property on the plaintiffs' loan application;

b.      Misrepresenting plaintiffs' ability to qualify for the mortgage loan by misrepresenting the value of the home that would secure payment of the loan; and

d.      Arranging and conspiring with Nanzer to fraudulently inflate the appraised value of plaintiffs' home in order to conceal the fact that it falsified the value of the property on its loan application; and

e.      Misrepresenting to plaintiffs that they could refinance out of the high-interest rate loan after one year when Ameriquest knew that, because of the inflated appraisal, refinancing would likely be impossible;

53.      Plaintiffs were induced to close a $100,000 loan with Ameriquest by means of these misrepresentations.

54.      Defendant Ameriquest made the misrepresentations in the course of trade and commerce.

55.      Defendant Ameriquest made the misrepresentations for the purpose of

inducing plaintiffs' reliance, in the form of having them take out the loan.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against Ameriquest for:

a.       A declaratory judgment, MCL §445.1681(1)(a);

b.       Injunctive relief, MCL §445.1681(1)(b);

c.       Appropriate damages, MCL §445.1681(1)(c)

d.       Attorney's fees, litigation expenses and costs of suit;

e.       Such other and further relief as the Court deems proper.

## COUNT IV – COMMON LAW FRAUD

56.      Plaintiffs incorporate paragraphs 1-35.

57.      Ameriquest represented that plaintiffs qualified for the loan because of the appraised value of plaintiffs' property.

.      58.      Ameriquest fraudulently inflated the value of plaintiffs' property and, therefore, the representation that plaintiffs qualified for the loan was also false and fraudulent.

59.      The value of plaintiffs' property was material to the terms of their transaction with Ameriquest.

60.      When Ameriquest inserted the false property value in the its loan application and arranged for Nanzer to reach a comparable result, Ameriqust knew that these representations of the appraised value were false.

61.      Ameriquest made the representations with the intent that they would be acted upon by plaintiffs.

62.      In reliance on Ameriquest's representations, plaintiffs closed on the loan with

12

Ameriquest.

63.     As a result of Ameriquest's inflated appraised value, plaintiffs have been injured in that they have been and will continue to be overcharged and are unable to refinance with another company.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against defendant for:

a.     Actual and compensatory damages;

b.     Punitive damages; and

c.     Such other relief as the Court deems appropriate.

## COUNT V - DAMAGES RESULTING FROM CIVIL CONSPIRACY

64.     Plaintiffs incorporate paragraphs 1-35.  This claim is against Ameriquest.

65.     Ameriquest combined and conspired with Nanzer to arrange for and produce a fraudulent, appraised value for plaintiffs' property.

66.     Defendant took concerted and overt actions to accomplish this fraudulent purpose.

67.     Among other things, defendant conspired - out of excessive concern for its own profits - to misrepresent, conceal and suppress the actual market value of plaintiffs' property.

68.     Plaintiffs were damaged as a result of defendants' conspiracy.  The inflated appraisal has resulted in them being overcharged and prevents them from refinancing with a more reputable company.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor of and

13

against defendant for:

a.      Actual damages;

b.      Incidental, consequential and special damages;

d.      Costs of litigation and expenses; and

e.      Such other or further relief as this Court deems appropriate.

## COUNT VI  – BREACH OF CONTRACT

69.     Plaintiffs incorporate paragraphs 1-35.

70.     This claim is against Ameriquest only.

71.     Defendant Ameriquest contracted and undertook to provide a discounted interest rate if plaintiff paid a loan discount fee.

72.     Plaintiffs paid the fee but, on information and belief, did not receive a discounted rate.  Exhibt C Line 802.

73.     Ameriquest thereby breached its agreement.

74.     Plaintiffs were thereby damaged.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant for:

a.      Appropriate damages;

b.      Costs.

c.      Such other or further relief as the Court deems appropriate.


s/Daniel A. Edelman
Daniel A. Edelman

14

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury.

s/Daniel A. Edelman
Daniel A. Edelman

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on August 11, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that true and correct copies were additionally sent via email or by U.S. Mail to those parties without email addresses.

Bernard E. LeSage
blesage@buchalter.com

Mark D. van der Laan
Dykema Gossett PLLC
300 Ottawa Ave. NW
Suite 700
Grand Rapids, MI 49503

American Home Mortgage Servicing, Inc.
c/o Registered Agent
C.T. Corporation System
208 S. LaSalle St.
Suite 814
Chicago, IL 60604

s/ Daniel A. Edelman
Daniel A. Edelman

15

# EXHIBIT A

Loan Number: 0136367901 - 5649

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.**

October 18, 2005
Date

Orange
City

CA
State

522 Cayuga, Benton Harbor, MI 49022
Property Address

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ **100,000.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Ameriquest Mortgage Company.**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **8.500** %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on **December 1, 2005** .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, **November 1, 2035** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my payments at: **505 City Parkway West, Suite 100, Orange, CA 92868**

or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ **768.92.** This amount may change.
### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of, **November, 2007** and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage point(s) **(6.000%)** to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.



0000013636790103004603 01

Initials:

Loan Number: 0136367901 - 5649

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.500 %** or less than **8.500%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **1.000%)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.500 %** or less than **8.500 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Prepayment Made Three (3) year(s) After the Date of this Note**

If I make a prepayment commencing on or after the Three (3) year anniversary of the date of this Note, I may make that prepayment, in full or in part, without the imposition of a prepayment charge by the Lender.

**(B) Prepayment Made Within Three (3) year(s) of the Date of this Note**

I agree to pay Lender a prepayment charge if I make a prepayment before the Three (3) year(s) anniversary of the date this Note is executed. The prepayment charge I will pay will be equal to one percent (1%) on the amount by which the total prepayment(s) within any 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

**(C) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(D) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and the Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D)  No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials: _____



0000013636790100304460302

201-2MI (Rev. 07/03)

2 of 3

10/18/2005 10:25:15 AM

Loan Number: 0136367901 - 5649

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
Borrower   JEFFREY BUSH

 _____(Seal)
Borrower   DEBORAH BUSH

_____(Seal)
Borrower

_____(Seal)
Borrower

0000013636790100300460303

201-3MI (Rev 07/03)

10/18/2005 10:23:13 AM

# EXHIBIT B

# MORTGAGE

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated October 18, 2005
together with all Riders to this document.
(B) "Borrower" is JEFFREY BUSH and DEBORAH BUSH, Husband and Wife

Borrower's address is 522 CAYUGA, BENTON HARBOR,MI 49022
. Borrower is the mortgagor under this Security Instrument.

**MICHIGAN**-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT          Form 3023 1/01
0136367901-5649

10/18/2005 10:25:15

**AM6MI** (0401)

Page 1 of 16                          Initials: _____

VMP Mortgage Solutions, Inc. (800)521-7291

0000013636790103014341701

**(C) "Lender"** is `Ameriquest Mortgage Company`

Lender is a `Corporation`
organized and existing under the laws of `Delaware`
Lender's address is `1100 Town and Country Road, Suite 200  Orange, CA 92868`

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated `October 18, 2005`
The Note states that Borrower owes Lender `one hundred thousand and 00/100`
                                                                                Dollars
(U.S. $ `100,000.00`      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than `November 1, 2035`
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:_____

AM6MI (0401)                            Page 2 of 15                               Form 3023 1/01

`0136367901-5649`

`10/18/2005 10:25:15`



0000013636790103013417 02

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the `County`                                                          [Type of Recording Jurisdiction]
of `BERRIEN`                                                    [Name of Recording Jurisdiction]:
`Legal Description Attached Hereto and Made a Part Hereof.`

Parcel ID Number: `11-18-7450-0019-00-9`                which currently has the address of
`522 Cayuga`                                                                                [Street]
`Benton Harbor`                                               [City], Michigan `49022`          [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials:_____

AM6MI (0401)                          Page 3 of 16                          Form 3023 1/01

0136367901-5649

10/18/2005 10:25:15



0000013636790103013441703

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

0136367901-5649

10/18/2005 10:25:15



0000013636790103013417O4

for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

AM6MI (0401)                                   Page 5 of 16                    Initials:_____      Form 3023 1/01

0136367901 - 5649

10/18/2005 10:25:15



0000013636790103013417 05

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and

0136367901-5649

10/18/2005 10:25:15



0000013636790103013417O6

Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Initials: _____

AM6MI (0401)                                           Page 7 of 16                                    Form 3023 1/01

0136367901-5649

10/18/2005 10:25:15



0000013636790103013411707

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward

Initials: _____

AM6MI (0401)            Page 8 of 16                         Form 3023 1/01

0136367901-5649

10/18/2005 10:25:15



0000001363679010301341708

the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Initials: _____

AM6MI (0401)　　　　　　　　　　　　Page 9 of 16　　　　　　　　　　　　Form 3023 1/01

0136367901-5649

10/18/2005 10:25:15



00000136367901030134 1709

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Initials: _____

AM6MI (0401)  Page 10 of 16  Form 3023 1/01

0136367901-5649

10/18/2005 10:25:15



0000013636790103013417l0

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

AM6MI (0401)  Page 11 of 16  Form 3023 1/01

0136367901-5649

10/18/2005 10:25:15



0000013636790103013341711

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

0136367901 - 5649

10/18/2005 10:25:15


0000013636790103013417 12

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous

Initials: _____

AM6MI (0401)          Page 13 of 16                    Form 3023 1/01

0136367901-5649

10/18/2005 10:25:15



0000013636790103013441713

Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

0136367901-5649

10/18/2005 10:25:15



0000013636790103013417114

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          JEFFREY BUSH                -Borrower


_____          _____ (Seal)
                                          DEBORAH BUSH                -Borrower


_____ (Seal)          _____ (Seal)
            -Borrower                                                 -Borrower


_____ (Seal)          _____ (Seal)
            -Borrower                                                 -Borrower


_____ (Seal)          _____ (Seal)
            -Borrower                                                 -Borrower

0136367901-5649

10/18/2005 10:25:15


0000013636790103013341715

**STATE OF MICHIGAN,**                    County ss:

Acknowledged before me in _____ County,
Michigan, on _____ by
      Day/Month/Year

_____

_____

_____


_____
Notary Public, State of Michgan,
County of
My Commission Expires
Acting in the County of


This instrument was prepared By:
    Ameriquest Mortgage Company
    Cathie Jones
    2350 Green Rd., #160,Ann Arbor, MI 48105



0000013636790130134171 6

400-16MI (12/03)          Page 16 of 16          0136367901 - 5649

BORROWER NAME:

LOAN NUMBER:   0136367901 - 5649

# LEGAL DESCRIPTION

LGL3LTR (09/03)

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 18th day of October , 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

522 Cayuga, Benton Harbor, MI 49022
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **8.500 %**. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of November, 2007 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials_____

Loan Number: 0136367901 - 5649



0000013636790103021503 01

10/18/2005 10:25:15 AM

610-1 (Rev 1/01)

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage points ( **6.000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.500% or less than 8.500%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 14.500)% or less than 8.500)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number:  0136367901 - 5649



0000013636790010302150302

610-2 (Rev 1/01)

10/18/2005 10:25:15 AM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.


_____ (Seal)   _____ (Seal)
Borrower JEFFREY BUSH                       Borrower DEBORAH BUSH



_____ (Seal)   _____ (Seal)
Borrower                                   Borrower



Loan Number:  0136367901 - 5649



0000013636790103021505303

610-3 (Rev 1/01)                    Page 3 of 3                    10/18/2005 10:25:15 AM

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 18th day of October , 2005   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

522 Cayuga, Benton Harbor, MI  49022

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

   **ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  **8.500 %.** The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The interest rate I will pay may change on the first day of  November, 2007  , and on that day every  sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.   The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0136367901 - 5649



0000013635790103022150301

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage points ( **6.000 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.500%** **or less than 8.500%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 14.500)% or less than 8.500)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number: 0136367901 - 5649



0000013636790103021503 02

10/18/2005 10:25:15 AM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
Borrower JEFFREY BUSH                Borrower DEBORAH BUSH

_____ (Seal)    _____ (Seal)
Borrower                             Borrower

Loan Number: 0136367901 - 5649


0000013636790103022150303

# EXHIBIT C

**A. Settlement Statement**

U.S. Department of Housing and
Urban Development

OMB No. 2502-0265

| B. TYPE OF LOAN · | | | |
|---|---|---|---|
| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 05MI16047 | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items mark-
ed '(p.o.c.)' were paid outside the closing; they are shown here for informational purposes and are not included in the totals. 'Adjustments for
Items Unpaid By Seller' are based on estimated amounts, and are subject to adjustment by Borrower(s) and Seller(s) when actual amounts
become available.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Jeffrey Bush and Deborah Bush | | Ameriquest Mortgage Company |
| | | 2350 GREEN RD STE 160 |
| | | ANN ARBOR, MI  48105-1572 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 522 Cayuga | Nations Title Agency Of Michigan | |
| Benton Harbor, MI 49022 | Place of Settlement | I. Settlement Date |
| Berrien County | 5062 Lovers Lane | 10/18/05 |
| | Portage, MI 49002 | Disbursement Date |
| | | 10/25/05 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. | | 402. | |
| 103. Settlement charges to borrower (line 1400) | 16,543.19 | 403. | |
| 104. PAYOFF to WELLS FARGO HOME MORTGAGE | 78,283.63 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. | | 406. | |
| 107. | | 407. | |
| 108. | | 408. | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| .20. Gross Amount Due From Borrower | 94,826.82 | 420. Gross Amount Due To Seller | |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due To Seller | |
| 201. Deposit or earnest money | | 501. Deposit or earnest money | |
| 202. Principal amount of new loan(s) | 100,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of 1st mtg loan | |
| 205. | | 505. Payoff of 2nd mtg loan | |
| 206. | | 506. Payoff of 3rd mtg loan | |
| 207. · | | 507. | |
| 208. | | 508. | |
| 209. · | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. . | | 510. | |
| 211. | | 511. | |
| 212. · | | 512. | |
| 213. · | | 513. · | |
| 214. | | 514. · | |
| 215. | | 515. · | |
| 216. | | 516. · | |
| 217. · | | 517. | |
| 218. | | 518. · | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 100,000.00 | 520. Total Reduction Amount Due Seller | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross amount due from borrower (line 120) | 94,826.82 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 100,000.00 | 602. Less reductions in amt. due seller (line 520) | |
| 303. Cash        To Borrower | 5,173.18 | 603. Cash        To Seller | 0.00 |

**THIS IS IMPORTANT TAX INFORMATION AND IS BEING FURNISHED TO THE INTERNAL REVENUE SERVICE. IF YOU
ARE REQUIRED TO FILE A RETURN, A NEGLIGENCE PENALTY OR OTHER SANCTION WILL BE IMPOSED ON YOU IF
THIS ITEM IS REQUIRED TO BE REPORTED AND THE IRS DETERMINES THAT IT HAS NOT BEEN REPORTED.**

HUD-1 (3-86)

| L. Settlement Charges | POC | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| **700. Total Sales/Broker's Commission based on price $** | | | |
| 701. $ | | | |
| 702. $ | | | |
| 703. $ | | | |
| 704. Commission paid at settlement | | | |
| **Items Payable In Connection With Loan** | | | |
| 801. Loan Origination Fee % | | 3,819.00 | |
| 802. Loan Discount 3.819% to Ameriquest Mortgage Company | | 450.00 | |
| 803. Appraisal Fee to Ameriquest Mortgage Company | | 70.00 | |
| 804. TAX SERVICE FEE to Ameriquest Mortgage Company | | 9.00 | |
| 805. FLOOD SEARCH FEE to Ameriquest Mortgage Company | | 626.00 | |
| 806. PROCESSING FEE to Ameriquest Mortgage Company | | 239.00 | |
| 807. ADMIN FEE to Ameriquest Mortgage Company | | 360.00 | |
| 808. APPLICATION FEE to Ameriquest Mortgage Company | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| **900. Items Required By Lender To Be Paid In Advance** | | | |
| 901. Interest from 10/25/05 to 11/1/05 @ 23.29 /day | | 163.03 | |
| 902. Mortgage Insurance Premium for months to | | | |
| 903. Hazard Insurance Premium for months to AAA | | 115.66 | |
| 904. Flood Insurance Premium for months to | | | |
| 905. months to | | | |
| **1000. Reserves Deposited With Lender** | | | |
| 1001. Hazard Insurance months @ $ per month | | | |
| 1002. Mortgage Insurance months @ $ per month | | | |
| 1003. Flood Insurance months @ $ per month | | | |
| 1004. City Taxes months @ $ per month | | | |
| 1005. County Taxes months @ $ per month | | | |
| 1006. Condo H/A Dues months @ $ per month | | | |
| 1007. Special Assessments months @ $ per month | | | |
| 1008. Aggregate Adjustment Amount months @ $ per month | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or Closing Fee to Nations Title Agency Of Michigan, Inc. | | 150.00 | |
| 1102. | | | |
| 1103. COURIER FEE to T | | 85.00 | |
| 04. | | | |
| 5. | | | |
| 1106. Notary Fees to MOBILE SIGNING | | 300.00 | |
| 1107. | | | |
| 1108. Title Insurance to Nations Title Agency Of Michigan, Inc. | | 445.50 | |
| 1109. Lender's Coverage: $ FEE: | | | |
| 1110. Owner's Coverage: $ FEE: | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording Fees: Deed: Mortgage: 71.00 Release: | | 71.00 | |
| 1202. City/County/stamps: Deed: Mortgage: | | | |
| 1203. State tax/stamps: Deed: Mortgage: | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. Addtional Settlement Charges** | | | |
| 1301. PAYMENTS to BERRIEN TCHR | | 2,088.00 | |
| 1302. PAYMENTS to CBUSASEARS | | 416.00 | |
| 1303. PAYMENTS to CHEMICAL BANK SHORELINE | | 2,904.00 | |
| 1304. PAYMENTS to GEMB/MEIJER DC | | 614.00 | |
| 1305. PAYMENTS to CITI | | 462.00 | |
| 1306. PAYMENTS to FIRST RESC | | 3,144.00 | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | 16,543.19 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____     _____
Jeffrey Bush

_____     _____
Deborah Bush

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

*Sara Bergstrand*                          10/18/05
Nations Title Agency Of Michigan          Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.          File #:  05MI16047

# EXHIBIT D

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Ameriquest Mortgage Company
2350 Green Rd., #160
Ann Arbor, MI 48105
(734)996-8699

[ ] Preliminary    [X] Final

Broker License:

Borrowers: JEFFREY BUSH    DEBORAH BUSH

Type of Loan:  ADJUSTABLE RATE
Date:  October 18, 2005

Address:     522 CAYUGA
City/State/Zip:  BENTON HARBOR,MI 49022

Loan Number: 0136367901 - 5649

Property:    522 Cayuga, Benton Harbor, MI  49022

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 10.659    % | $ 226,958.46 | $ 94,178.97 | $ 321,137.43 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $768.92 | 12/01/2005 | | | |
| 335 | $900.88 | 12/01/2007 | | | |
| 1 | $888.55 | 11/01/2035 | | | |

VARIABLE RATE FEATURE:
[X] Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:     You are giving a security interest in the property located at: 522 Cayuga, Benton Harbor, MI  49022

ASSUMPTION:    Someone buying this property    [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES:    If a payment is late, you will be charged  5.000%  of the overdue payment .

PREPAYMENT: If you pay off your loan early, you
[X] may    [ ] will not    have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____    _____    _____
orrower JEFFREY BUSH    Date    Borrower DEBORAH BUSH    Date

_____    _____    _____    _____
Borrower    Date    Borrower    Date

TIL1 (Rev. 7/01)   
0000013636790103057501C1

ORIGINAL COPY

10/18/2005 10:25:15 AM

### TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Ameriquest Mortgage Company
2350 Green Rd., #160
Ann Arbor, MI 48105
(734)996-8699

[ ] Preliminary    [X] Final

Broker License:

Borrowers: JEFFREY BUSH    DEBORAH BUSH

Type of Loan: ADJUSTABLE RATE
Date: October 18, 2005

Address:    522 CAYUGA
City/State/Zip:    BENTON HARBOR, MI 49022

Loan Number: 0136367901 - 5649

Property:    522 Cayuga, Benton Harbor, MI 49022

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 10.659 % | $ 226,958.46 | $ 94,178.97 | $ 321,137.43 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $768.92 | 12/01/2005 | | | |
| 335 | $900.88 | 12/01/2007 | | | |
| 1 | $888.55 | 11/01/2035 | | | |

VARIABLE RATE FEATURE:
[X] Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at: 522 Cayuga, Benton Harbor, MI 49022

ASSUMPTION:    Someone buying this property    [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES:    If a payment is late, you will be charged 5.000% of the overdue payment .

PREPAYMENT:    If you pay off your loan early, you
[X] may    [ ] will not    have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____    _____    _____
Borrower JEFFREY BUSH    Date    Borrower DEBORAH BUSH    Date

_____    _____    _____    _____
Borrower    Date    Borrower    Date

TIL1 (Rev. 7/01)

0000013636790100357501101

**BORROWER COPY**

10/18/2005 10:25:15 AM

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER:Ameriquest Mortgage Company
2350 Green Rd., #160
Ann Arbor, MI 48105
(734)996-8699

[ ] Preliminary   [X] Final

Broker License:

Borrowers:JEFFREY BUSH    DEBORAH BUSH

Type of Loan: ADJUSTABLE RATE
Date: October 18, 2005

Address:    522 CAYUGA
City/State/Zip:  BENTON HARBOR,MI 49022

Loan Number: 0136367901 - 5649

Property:   522 Cayuga, Benton Harbor, MI  49022

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 10.659 % | $ 226,958.46 | $ 94,178.97 | $ 321,137.43 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $768.92 | 12/01/2005 | | | |
| 335 | $900.88 | 12/01/2007 | | | |
| 1 | $888.55 | 11/01/2035 | | | |

VARIABLE RATE FEATURE:
[X]  Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at: 522 Cayuga, Benton Harbor, MI  49022

ASSUMPTION:  Someone buying this property  [X]  cannot assume the remaining balance due under original terms.
[ ]  may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES:   If a payment is late, you will be charged  5.000%  of the overdue payment .

PREPAYMENT:  If you pay off your loan early, you
[X] may   [ ] will not   have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____    _____
orrower:JEFFREY BUSH            Date      BorrowerDEBORAH BUSH            Date

_____    _____
Borrower            Date      Borrower            Date

TIL1 (Rev. 7/01)          0000013636790103075901      **BORROWER COPY**

10/18/2005 10:23:13 AM

# EXHIBIT E

## ITEMS TO BE PAID OFF FROM LOAN PROCEEDS

Borrower : JEFFREY BUSH
DEBORAH BUSH

Loan Number : 0136367901 - 5649

| Payee | | Amount |
|---|---|---|
| BERRIEN TCHR | (W) | $2,098.00 |
| CBUSASEARS | (W) | $418.00 |
| CHEMICAL BANK SHORELIN | (W) | $2,904.00 |
| GEMB/MEIJER DC | (W) | $614.00 |
| CITI | (W) | $462.00 |
| WELLS FARGO HOME MORTG | (W) | $78,283.63 |
| FIRST RESC | (W) | $3,144.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Total Wire: $94,263.97

Loan Amount: 100,000.00

Funds Held By Lender:

Deposit at Escrow/Title: $0.00

Borrower Proceeds: (W)$5,173.18

—

(W) = Included in Wire

**IMPORTANT: THE DATE OF SETTLEMENT MUST EQUAL THE CLOSING DATE.**

Title Company Representative Signature          Date



000001363679010307430707

# EXHIBIT F

## CLOSING INSTRUCTIONS
## ITEMIZATION OF SETTLEMENT CHARGES

| Title Company/Attorney | Title Officer/Attorney | Phone Number | Order Number |
|---|---|---|---|
| NATIONS TITLE AGENCY OF MICHIGAN | CHRIS VAN WINKLE | (517)323-0739 | 05ml16047 |

| Borrower(s) | Property Address |
|---|---|
| JEFFREY BUSH  DEBORAH BUSH | 522 Cayuga |
| | Benton Harbor        MI        49022 |
| | Loan Number: 0136367901 |

FROM: Ameriquest Mortgage Company - Ann Arbor, MI        Phone No. **(734)996-8699**        Fax **(734)996-9455**
          Branch Name                                              Branch Phone No.                        Branch Fax Number

BELOW IS A LIST OF ALL SETTLEMENT CHARGES AND DISBURSEMENTS APPLICABLE TO THIS LOAN. YOU MUST USE THESE FIGURES TO PREPARE YOUR SETTLEMENT STATEMENT. YOU CANNOT DEVIATE FROM THESE FIGURES WITHOUT PRIOR WRITTEN AUTHORIZATION FROM VICE PRESIDENT OF LOAN OPERATIONS AND/OR ITS DIRECTORS . IMPORTANT: THE DATE OF SETTLEMENT MUST EQUAL THE CLOSING DATE.

| LINE NO. ON SETTLEMENT STATEMENT | PAYEE | | AMOUNT |
|---|---|---|---|
| 801. Loan origination fee     % to | | | |
| 802. Loan discount  3.819  %  to  Ameriquest Mortgage Company | | | $3,819.00 |
| 803. Apprsl/Prop Val to Reimbursed to Lender | | | $450.00 |
| 804. Credit Report fee | | | |
| 805. Inspection fee | | | |
| 808. Yield Spread Premium to | | | |
| 809. | | | |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | | | $70.00 |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | | | $9.00 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | | | $626.00 |
| 813.Admin to Ameriquest Mortgage Company | | | $239.00 |
| 814. Doc. Prep. Fee to | | | |
| 815. Credit Report Fee to | | | |
| 816. Origination Fee     % to | | | |
| 817. Application Fee to  Ameriquest Mortgage Company | | | $360.00 |
| 818. Underwriting Fee to | | | |
| 819. Service Provider Fee to | | | |
| 820. Processing Fee  to | | | |
| 821. Underwriting Fee to | | | |
| 822. Appraisal Fee to | | | |
| 901. Interest from 10/25/2005  to  11/01/2005  @ $23.29 per day | | | $163.03 |
| 902. Mortgage insurance premium for          months to | | | |
| 903. Hazard ins prem to  AAA | | (W) | $115.66 |
| 904. Flood Ins prem  to | | | |
| 1001. Hazard insurance     months @ $     per month | | | |
| 1002. Mortgage insurance     months @ $     per month | | | |
| 1003. Earthquake Ins     months @ $     per month | | | |
| 1004. County prop. taxes     months @ $     per month | | | |
| 1005. Annual assess.     months @ $     per month | | | |
| 1006. Flood     months @ $     per month | | | |
| 1007. Windstorm Ins     months @ $     per month | | | |
| 1008. | | | |
| 1101. Settlement or closing fee  to  NATIONS TITLE | | (W) | $150.00 |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to  MOBILE SIGNING | | (W) | $300.00 |
| 1107. Attorney's fees to | | | |
| 1108. Title insurance to  NATIONS TITLE AGENCY OF | | (W) | $445.50 |
| 1109. Lender's coverage | | | |
| 1110. Owner's coverage          $ | | | |
| 1111. Settlement/Disbursement fee to | | | |
| 1112. Escrow Fee to | | | |
| 1201. Recording fees | | (W) | $71.00 |
| 1202. City/county tax/stamps | | | |
| 1203. State tax/ stamps | | | |
| 1204. State specific fee | | | |
| 1301. Demand to | | | |
| 1302. Pest Inspection to | | | |
| 1303. Survey Fee | | | |
| 1304. Staff Appraiser Fee | | | |
| 1305. Reconveyance Fee to | | | |
| 1306. | | | |
| 1307. Property Val Fee to | | | |
| 1308. Courier Fee | | (W) | $85.00 |

*Any amounts appearing on these lines are prepaid finance charges and cannot be increased or added once loan documents have been prepared unless new loan documents are generated.



0000013636790100074307 06

_____                    _____
Title Company Representative Signature              Date

# EXHIBIT G

## NOTICE OF RIGHT TO CANCEL

LENDER:  Ameriquest Mortgage Company

DATE:  October 18, 2005
LOAN NO.:  0136367901 - 5649
TYPE:  ADJUSTABLE RATE

BORROWER(S): JEFFREY BUSH        DEBORAH BUSH

ADDRESS:       522 CAYUGA
CITY/STATE/ZIP:  BENTON HARBOR,MI 49022

PROPERTY:  522 Cayuga
                 Benton Harbor, MI  49022

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

    | ENTER DOCUMENT SIGNING DATE |
    |---|
    | _____ |

    ;

    or
2.  The date you received your Truth in Lending disclosures;
    or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: (714)634-3494
FAX:     (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
|---|
| _____ |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE                                                    DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____          _____
BORROWER/OWNER JEFFREY BUSH          Date          BORROWER/OWNER  DEBORAH BUSH          Date

_____          _____
BORROWER/OWNER                                   Date          BORROWER/OWNER                                   Date

1004-NRC (Rev 11/03)

00000136367901040005010 1

**BORROWER COPY**

10/18/2005 10:25:15 AM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   October 18, 2005
LOAN NO.:   0136367901 - 5649
TYPE:   ADJUSTABLE RATE

BORROWER(S): JEFFREY BUSH      DEBORAH BUSH

ADDRESS:      522 CAYUGA
CITY/STATE/ZIP:   BENTON HARBOR,MI 49022

PROPERTY:   522 Cayuga
            Benton Harbor, MI  49022

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

> ENTER DOCUMENT SIGNING DATE
>
> _____

;

or

2.   The date you received your Truth in Lending disclosures;
     or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company
1600 S Douglass Rd
Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:     **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

> ENTER FINAL DATE TO CANCEL
>
> _____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE                                          DATE _____

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____              _____
BORROWER/OWNER  JEFFREY BUSH          Date      BORROWER/OWNER  DEBORAH BUSH          Date

_____              _____
BORROWER/OWNER                         Date      BORROWER/OWNER                         Date

1064-NRC (Rev 11/03)

0000013636790104000500101

**BORROWER COPY**

10/18/2005 10:25:15 AM

## NOTICE OF RIGHT TO CANCEL

'NDER:   Ameriquest Mortgage Company

DATE:   October 18, 2005
LOAN NO.:   0136367901 - 5649
TYPE:   ADJUSTABLE RATE

BORROWER(S): JEFFREY BUSH       DEBORAH BUSH

ADDRESS:       522 CAYUGA
CITY/STATE/ZIP:   BENTON HARBOR,MI 49022

PROPERTY:   522 Cayuga
            Benton Harbor, MI  49022

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

   **ENTER DOCUMENT SIGNING DATE**
   _____   ;

   or

2.   The date you received your Truth in Lending disclosures;

   or

3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:   **FUNDING**
PHONE:   **(714)634-3494**
FAX:       **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**
_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____               _____
SIGNATURE                                                   DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____       Date        _____       Date
BORROWER/OWNER JEFFREY BUSH                   BORROWER/OWNER  DEBORAH BUSH

_____       Date        _____       Date
BORROWER/OWNER                                 BORROWER/OWNER



1664-NRC (Rev 11/03)
0000013636790104000050101

**LENDER COPY**

10/18/2005 10:25:15 AM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   October 18, 2005
LOAN NO.:   0136367901 - 5649
TYPE:   ADJUSTABLE RATE

BORROWER(S): JEFFREY BUSH     DEBORAH BUSH

ADDRESS:     522 CAYUGA
CITY/STATE/ZIP:   BENTON HARBOR,MI 49022

PROPERTY:   522 Cayuga
            Benton Harbor,  MI  49022

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

    **ENTER DOCUMENT SIGNING DATE**
    _____      ;

    or
2.  The date you received your Truth in Lending disclosures;
    or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:    **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**
_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE                                               DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____                      _____
BORROWER/OWNER JEFFREY BUSH          Date      BORROWER/OWNER  DEBORAH BUSH          Date

_____                      _____
BORROWER/OWNER                       Date      BORROWER/OWNER                        Date

1064-NRC (Rev 11/03)

0000013636790104000050101

**BORROWER COPY**

10/18/2005 10:25:15 AM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   October 18, 2005
LOAN NO.:   0136367901 - 5649
TYPE:   ADJUSTABLE RATE

BORROWER(S): JEFFREY BUSH        DEBORAH BUSH

ADDRESS:        522 CAYUGA
CITY/STATE/ZIP:    BENTON HARBOR,MI 49022

PROPERTY:    522 Cayuga
            Benton Harbor, MI  49022

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
|---|
| _____ |

or

2.   The date you received your Truth in Lending disclosures;
or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:      **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
|---|
| _____ |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____                    _____
SIGNATURE                                          DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

| | |
|---|---|
| BORROWER/OWNER JEFFREY BUSH                     Date | BORROWER/OWNER  DEBORAH BUSH                     Date |
| BORROWER/OWNER                                         Date | BORROWER/OWNER                                         Date |

1064-NRC (Rev 11/03)

0000013636790104000050101

**BORROWER COPY**

10/18/2005 10:25:15 AM

## NOTICE OF RIGHT TO CANCEL

:NDER:   Ameriquest Mortgage Company

DATE:  October 18, 2005
LOAN NO.:  0136367901 - 5649
TYPE:   ADJUSTABLE RATE

BORROWER(S): JEFFREY BUSH    DEBORAH BUSH

ADDRESS:     522 CAYUGA
CITY/STATE/ZIP:   BENTON HARBOR,MI 49022

PROPERTY:   522 Cayuga
                 Benton Harbor, MI  49022

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

_____  ;

      or
2.   The date you received your Truth in Lending disclosures;
      or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE:  **(714)634-3494**
FAX:      **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____          _____
SIGNATURE                                               DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____          _____
BORROWER/OWNER  JEFFREY BUSH          Date          BORROWER/OWNER  DEBORAH BUSH          Date

_____          _____
BORROWER/OWNER                    Date          BORROWER/OWNER                    Date

1064-NRC (Rev 11/03)

0000013636790104000050101

**BORROWER COPY**

10/18/2005 10:23:13 AM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   October 18, 2005
LOAN NO.:   0136367901 - 5649
TYPE:   ADJUSTABLE RATE

BORROWER(S): JEFFREY BUSH        DEBORAH BUSH

ADDRESS:         522 CAYUGA
CITY/STATE/ZIP:    BENTON HARBOR,MI 49022

PROPERTY:   522 Cayuga
Benton Harbor,  MI   49022

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
| _____ |

;

or
2.   The date you received your Truth in Lending disclosures;
or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:   **FUNDING**
PHONE:  (714)634-3494
FAX:     (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
| _____ |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE

_____
DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____       _____
BORROWER/OWNER JEFFREY BUSH    Date    BORROWER/OWNER DEBORAH BUSH    Date

_____       _____
BORROWER/OWNER                 Date    BORROWER/OWNER                 Date

1664-NRC (Rev 11/03)

0000013536379010400050101

**BORROWER COPY**

10/18/2005 10:23:13 AM

## NOTICE OF RIGHT TO CANCEL

ENDER:   Ameriquest Mortgage Company

DATE:   October 18, 2005
LOAN NO.:   0136367901 - 5649
TYPE:   ADJUSTABLE RATE

BORROWER(S): JEFFREY BUSH      DEBORAH BUSH

ADDRESS:      522 CAYUGA
CITY/STATE/ZIP:   BENTON HARBOR,MI 49022

PROPERTY:   522 Cayuga
            Benton Harbor, MI  49022

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
|  _____  |

;

or

2.   The date you received your Truth in Lending disclosures;
     or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:     **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
|  _____  |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE

_____
DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____          _____
BORROWER/OWNER JEFFREY BUSH     Date      BORROWER/OWNER  DEBORAH BUSH     Date

_____          _____
BORROWER/OWNER                  Date      BORROWER/OWNER                   Date


1064-NRC (Rev 11/03)
0000013636750104000050101

**BORROWER COPY**

10/18/2005 10:23:13 AM

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   October 18, 2005
LOAN NO.:   0136367901 - 5649
TYPE:   ADJUSTABLE RATE

BORROWER(S): JEFFREY BUSH     DEBORAH BUSH

ADDRESS:      522 CAYUGA
CITY/STATE/ZIP:   BENTON HARBOR,MI 49022

PROPERTY:  522 Cayuga
              Benton Harbor, MI  49022

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is ☐ **ENTER DOCUMENT SIGNING DATE** ☐ ;
    _____
    or
2.  The date you received your Truth in Lending disclosures;
    or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**          ATTN:  **FUNDING**
**1600 S Douglass Rd**                   PHONE: **(714)634-3494**
**Anaheim, CA 92806**                    FAX:    **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must     ☐ **ENTER FINAL DATE TO CANCEL** ☐
send the notice no later than MIDNIGHT of        _____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____                         _____
SIGNATURE                                          DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____ _____        _____ _____
BORROWER/OWNER JEFFREY BUSH   Date        BORROWER/OWNER  DEBORAH BUSH   Date

_____ _____        _____ _____
BORROWER/OWNER               Date        BORROWER/OWNER               Date

1064-NRC (Rev 11/03)
0000013636790104000050101

**BORROWER COPY**

10/18/2005 10:23:13 AM

# EXHIBIT H

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0136367901 - 5649          Borrower(s): JEFFREY BUSH
Date:  October 18, 2005                          DEBORAH BUSH

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.**  This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make.  To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.**  No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends.  You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan.  The written statement must be signed and dated by any one borrower.  Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____
Borrower/Owner  JEFFREY BUSH                     Date

_____          _____
Borrower/Owner  DEBORAH BUSH                     Date

_____          _____
Borrower/Owner                                          Date

_____          _____
Borrower/Owner                                          Date

## REQUEST TO CANCEL
**I/We want to cancel loan #**_____.

_____          _____
Borrower/Owner Signature                          Date


0000013636790104220101

859 (10/00)

10/18/2005 10:23:13 AM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0136367901 - 5649      Borrower(s): JEFFREY BUSH

Date:  October 18, 2005                     DEBORAH BUSH

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.**  This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make.  To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.**  No money will be disbursed before 10:00 a.m. on the first business day after this period expires.  Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends.  You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan.  The written statement must be signed and dated by any one borrower.  Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.


_____     _____

Borrower/Owner  JEFFREY BUSH                Date


_____     _____

Borrower/Owner  DEBORAH BUSH              Date


_____     _____

Borrower/Owner                           Date


_____     _____

Borrower/Owner                           Date


---

## REQUEST TO CANCEL

**I/We want to cancel loan #**_____.

_____     _____

Borrower/Owner Signature                    Date

---



0000013636790104042201011

850 (10/00)

10/18/2005 10:23:13 AM

## BORROWER COPY

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0136367901 - 5649          Borrower(s): JEFFREY BUSH

Date: October 18, 2005                               DEBORAH BUSH

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____

Borrower/Owner  JEFFREY BUSH          Date

_____          _____

Borrower/Owner  DEBORAH BUSH          Date

_____          _____

Borrower/Owner          Date

_____          _____

Borrower/Owner          Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____          _____

Borrower/Owner Signature          Date

---



0000013636790104042201O1

850 (10/00)

10/18/2005 10:23:13 AM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0136367901 - 5649    Borrower(s): JEFFREY BUSH
Date: October 18, 2005                     DEBORAH BUSH

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1600 S Douglass Rd Anaheim, CA 92806
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____   _____
Borrower/Owner  JEFFREY BUSH           Date

_____   _____
Borrower/Owner  DEBORAH BUSH        Date

_____   _____
Borrower/Owner                         Date

_____   _____
Borrower/Owner                         Date

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____   _____
Borrower/Owner Signature              Date



0000013636790104220101

850 (10/00)

10/18/2005 10:25:15 AM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0136367901 - 5649     Borrower(s): JEFFREY BUSH

Date: October 18, 2005                      DEBORAH BUSH

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

        Ameriquest Mortgage Company
        1600 S Douglass Rd Anaheim, CA 92806
        ATTN: Funding Department
        Phone: (714)541-9960
        Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____    _____

Borrower/Owner  JEFFREY BUSH          Date

_____    _____

Borrower/Owner  DEBORAH BUSH        Date

_____    _____

Borrower/Owner                    Date

_____    _____

Borrower/Owner                    Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____    _____

Borrower/Owner Signature            Date

---



0000013636790104042201 01

850 (10/00)

10/18/2005 10:25:15 AM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0136367901 - 5649          Borrower(s): JEFFREY BUSH
Date: October 18, 2005                                    DEBORAH BUSH

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.**  This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make.  To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.**  No money will be disbursed before 10:00 a.m. on the first business day after this period expires.  Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends.  You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan.  The written statement must be signed and dated by any one borrower.  Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____
Borrower/Owner  JEFFREY BUSH                      Date

_____          _____
Borrower/Owner  DEBORAH BUSH                    Date

_____          _____
Borrower/Owner                                              Date

_____          _____
Borrower/Owner                                              Date

---

## REQUEST TO CANCEL
I/We want to cancel loan #_____.

_____          _____
Borrower/Owner Signature                          Date

---


0000013636790104042020101

850 (10/00)

10/18/2005 10:25:15 AM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0136367901 - 5649     Borrower(s): JEFFREY BUSH
Date: October 18, 2005                              DEBORAH BUSH

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1600 S Douglass Rd Anaheim, CA 92806
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____
Borrower/Owner   JEFFREY BUSH                           Date

_____          _____
Borrower/Owner   DEBORAH BUSH                         Date

_____          _____
Borrower/Owner                                                    Date

_____          _____
Borrower/Owner                                                    Date

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____          _____
Borrower/Owner Signature                                   Date

---



000001363679010404220101

850 (10/00)

10/18/2005 10:25:15 AM

**BORROWER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0136367901 - 5649      Borrower(s): JEFFREY BUSH

Date: October 18, 2005                       DEBORAH BUSH

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

       Ameriquest Mortgage Company
       1600 S Douglass Rd Anaheim, CA 92806
       ATTN: Funding Department
       Phone: (714)541-9960
       Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____     _____
Borrower/Owner  JEFFREY BUSH                   Date

_____     _____
Borrower/Owner  DEBORAH BUSH            Date

_____     _____
Borrower/Owner                               Date

_____     _____
Borrower/Owner                               Date

---

## REQUEST TO CANCEL

I/We want to cancel loan # _____.

_____     _____
Borrower/Owner Signature                Date



0000013636790104042201001

850 (10/00)

10/18/2005 10:25:15 AM

**LENDER COPY**

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0136367901 - 5649        Borrower(s): JEFFREY BUSH
Date: October 18, 2005                     DEBORAH BUSH

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

        Ameriquest Mortgage Company
        1600 S Douglass Rd Anaheim, CA 92806
        ATTN: Funding Department
        Phone: (714)541-9960
        Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.


_____     _____
Borrower/Owner  JEFFREY BUSH        Date


_____     _____
Borrower/Owner  DEBORAH BUSH      Date


_____     _____
Borrower/Owner                   Date


_____     _____
Borrower/Owner                   Date


---

## REQUEST TO CANCEL

**I/We want to cancel loan #**_____.

_____     _____
Borrower/Owner Signature            Date

---



0000013636790104042201 01

850 (10/00)

10/18/2005 10:23:13 AM

**BORROWER COPY**

# EXHIBIT I

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

Mortgage Applied for: [X] VA [ ] Conventional [ ] Other (explain): [ ] FHA [ ] USDA/Rural Housing Service

Agency Case Number | Lender Case Number

Amount $100,000.00 | Interest Rate 8.500 % | No. of Months 360 | Amortization Type: [ ] Fixed Rate [ ] Other (explain): [ ] GPM [ ] ARM (type):

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, & ZIP) 522 Cayuga, Benton Harbor, HI 49022 | No. of Units 1

Legal Description of Subject Property (attach description if necessary) | Year Built 1955

Purpose of Loan [ ] Purchase [ ] Construction [ ] Other (explain): [X] Refinance [ ] Construction-Permanent | Property will be: [X] Primary Residence [ ] Secondary Residence [ ] Investment

Complete this line if construction or construction-permanent loan.
Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $

Complete this line if this is a refinance loan.
Year Acquired 2001 | Original Cost $80,000.00 | Amount Existing Liens $ 77,000.00 | Purpose of Refinance | Describe Improvements [ ] made [ ] to be made Cost: $ 0.00

Title will be held in what Name(s) JEFFREY BUSH and DEBORAH BUSH, Husband and Wife | Manner in which Title will be held | Estate will be held in: [X] Fee Simple [ ] Leasehold (show expiration date)

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name | JEFFREY BUSH | DEBORAH BUSH |

Borrower's Name (include Jr. or Sr. if applicable) JEFFREY BUSH | Co-Borrower's Name (include Jr. or Sr. if applicable) DEBORAH BUSH

Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School 12 || Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School 12

[X] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Co-Borrower) no. 0 ages || [X] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Borrower) no. 0 ages

Present Address (street, city, state, ZIP) [X] Own [ ] Rent 3 No. Yrs. | 22 CAYUGA BENTON HARBOR,MI 49022 || Present Address (street, city, state, ZIP) [X] Own [ ] Rent 3 No. Yrs. | 522 CAYUGA BENTON HARBOR,MI 49022

Mailing Address, if different from Present Address || Mailing Address, if different from Present Address

If residing at present address for less than two years, complete the following:
Former Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs. || Former Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs.

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
Name & Address of Employer City of St Joseph [ ] Self Employed | Yrs. on this job 12 / Yrs. employed in this line of work/profession 12 || Name & Address of Employer RETIRED [ ] Self Employed | Yrs. on this job / Yrs. employed in this line of work/profession

Position/Title/Type of Business METER READER | Business Phone (incl. area code) (269)983-6431 || Position/Title/Type of Business | Business Phone (incl. area code)

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

Name & Address of Employer [ ] Self Employed | Dates (from - to) / Monthly Income $ || Name & Address of Employer [ ] Self Employed | Dates (from - to) / Monthly Income $

Position/Title/Type of Business | Business Phone (incl. area code) || Position/Title/Type of Business | Business Phone (incl. area code)

Name & Address of Employer [ ] Self Employed | Dates (from - to) / Monthly Income $ || Name & Address of Employer [ ] Self Employed | Dates (from - to) / Monthly Income $

Position/Title/Type of Business | Business Phone (incl. area code) || Position/Title/Type of Business | Business Phone (incl. area code)

0136367901

Redacted

Initials: _____ | Borrower's cell | Borrower's pager | Co-Borrower's cell | Co-Borrower's pager

0000013636790106059908 01

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | 2,838.44 | 0.00 | 2,838.44 | Rent | 0.00 | |
| Overtime | 0.00 | 0.00 | 0.00 | First Mortgage (P&I) | 628.00 | 768.92 |
| Bonuses | 0.00 | 0.00 | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | 0.00 | 0.00 | 0.00 | Hazard Insurance | 57.83 | 57.83 |
| Dividends/Interest | 0.00 | 0.00 | 0.00 | Real Estate Taxes | 83.47 | 83.47 |
| Net Rental Income | 0.00 | 0.00 | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 644.52 | 644.52 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 2,838.44 | $ 644.52 | $ 3,482.96 | Total | $ 769.30 | $ 910.22 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| | *** SEE ADDENDUM *** | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [ X ] Not Jointly

| ASSETS   Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | LIABILITIES | | |
| | | Name and address of Company | $ Payment/Months | $ |
| List checking and savings accounts below | | *** SEE ADDENDUM *** | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Vested 401k Retirement - Aggregated | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 5,064.57 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Checking/Savings - Aggregated | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Vested 401k Retirement - Aggregated | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Checking/Savings - Aggregated | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/ number & description) | $ | | | |
| /0 | 0.00 | | | |
| /0 | 0.00 | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 5,064.57 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 110,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 676.00 | |
| Total Assets a. | $ 115,064.57 | Net Worth (a minus b) ▶ $ 79,720.57 | Total Liabilities b. | $ 35,344.00 |

0136367901

Initials: _____

Page 2 of 4

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

0000013636790106059900802

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 522 Cayuga<br>Benton Harbor, MI 49022 | H  SFR | $ 110000 | $ 77336 | $ 0 | $ 628 | $ 141 | $ 0 |
| | | | | | | | |
| | | | | | | | |
| Totals | $ 110000 | $ 77336 | $ 0 | $ 628 | $ 141 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ 0.00 |
| b. | Alterations, improvements, repairs | 0.00 |
| c. | Land (if acquired separately) | 0.00 |
| d. | Refinance (incl. debts to be paid off) | 0.00 |
| e. | Estimated prepaid items | 2,002.03 |
| f. | Estimated closing costs | 1,082.16 |
| g. | PMI, MIP, Funding Fee | 0.00 |
| h. | Discount (if Borrower will pay) | 3,819.00 |
| i. | Total costs (add items a through h) | 6,903.19 |
| j. | Subordinate financing | 0.00 |
| k. | Borrower's closing costs paid by Seller | 0.00 |
| l. | Other Credits (explain) | |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 100,000.00 |
| n. | PMI, MIP, Funding Fee financed | 0.00 |
| o. | Loan amount (add m & n) | 100,000.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -93,096.81 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | | Borrower |  | Co-Borrower |  |
|---|---|---|---|---|---|
| | | Yes | No | Yes | No |
| a. | Are there any outstanding judgments against you? | | X | | X |
| b. | Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. | Are you a party to a lawsuit? | | X | | X |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | X |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | X |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. | Is any part of the down payment borrowed? | | X | | X |
| i. | Are you a co-maker or endorser on a note? | | X | | X |
| j. | Are you a U.S. citizen? | X | | X | |
| k. | Are you a permanent resident alien? | | X | | X |
| l. | Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | X | |
| m. | Have you had an ownership interest in a property in the last three years? | X | | X | |
| | (1) What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| | (2) How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | SP | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information. | CO-BORROWER ☐ I do not wish to furnish this information. |
|---|---|
| Ethnicity: ☐ Hispanic or Latino   X Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino   X Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander   X White | Race: ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander   X White |
| Sex: ☐ Female   X Male | Sex: X Female   ☐ Male |

| To be Completed by Interviewer<br>This application was taken by:<br>☐ Face-to-face interview<br>☐ Mail<br>X Telephone<br>☐ Internet | Interviewer's Name (print or type)<br>Ronald Sanford<br><br>Interviewer's Signature                     Date<br><br>Interviewer's Phone Number (incl. area code)<br>(734) 996-8699 | Name and Address of Interviewer's Employer<br><br>2350 Green Rd., #160<br>Ann Arbor, MI 48105 |

0136367901



0000013636790106059590803

Page 3 of 4

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: BUSH, JEFFREY | Agency Case Number: |
|---|---|---|
| | Co-Borrower: BUSH, DEBORAH | Lender Case Number: |

We fully understand that it is a *Federal crime punishable by* fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

0136367901

-21N (0305)

Page 4 of 4

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

0000013636790106056990804

# EXHIBIT J



P.O. Box 11000, Santa Ana, CA 92711-1000
Toll Free (800) 430-5262
www.myamcloan.com

August 29, 2006


Jeffrey Bush
Deborah Bush
522 Cayuga
Benton Harbor, MI 49022-


Re:  Loan No: 0136367901
     Property: 522 Cayuga
              Benton Harbor MI 49022


Dear Homeowner(s):

As requested, enclosed is a copy of the Appraisal Report on the above
referenced property. The Appraisal Report is being sent to you with the
following terms and conditions. If you are unable or unwilling to comply
with all of the conditions set forth below, please return the Appraisal
Report to:

               AMC Mortgage Services, Inc.
                    P.O. Box 11000
                  Santa Ana, CA 92711-1100
          Attention:  Customer Care Department


1.  The Appraisal Report is to be used solely for the purpose of
    evaluating your property in connection with your loan.

2.  You understand, acknowledge, and agree that the Appraisal Report is
    being provided by AMC Mortgage Services (AMC) without any
    representations or warranties as to its contents.

3.  You understand, acknowledge, and agree that intervening circumstances
    may have rendered the information and assumptions contained
    in the Appraisal Report obsolete, incomplete, or even misleading.

4.  You understand, acknowledge, and agree that the Appraisal Report was
    prepared for the exclusive use of AMC, and that subsequent
    distribution was not contemplated when the Appraisal Report was
    commissioned, prepared, or delivered.

5.  You covenant and agree not to seek any damages or redress or to make
    any claims for damages, costs, expenses, or liabilities of any kind
    against the appraiser or arising out of your use of the Appraisal
    Report.

SC002/006/NG1

Federal Law requires us to notify you that we are acting as a debt collector. If you are currently in a bankruptcy or have
received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes
only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

Also doing business as Delaware AMC Mortgage Services, Inc., in the states of Texas, Rhode Island, and New Hampshire.





P.O. Box 11000, Santa Ana, CA 92711-1000
Toll Free (800) 430-5262
www.myamcloan.com

Appraisal Report Request Letter
Page 2

6. You covenant and agree to indemnify, defend, and hold AMC, its
   shareholders, officers, directors, employees, affiliates, and agents
   harmless from and against any claims, costs, expenses, damages, or
   liabilities of any kind including reasonable attorney's fees incurred
   AMC resulting from or arising out of your use of the Appraisal
   Report.

7. You covenant and agree to keep the Appraisal Report confidential and
   not disclose, distribute, disseminate, copy, or otherwise reproduce
   or release the Appraisal Report or its contents to any person except
   as is strictly necessary for the evaluation or understanding of the
   Appraisal Report, in any manner to any person without first obtaining
   a written agreement of confidentiality similar in scope to this
   letter.

For information on your home loan, visit www.myamcloan.com. If you have
any additional questions or concerns, please contact Customer Care at
(800) 430-5262, Monday through Friday, 5:00 a.m. to 6:00 p.m., Pacific
Time.

Please keep this letter with your other loan records.

Sincerely,

Customer Care Department


SC002/006/NG1

Federal Law requires us to notify you that we are acting as a debt collector. If you are currently in a bankruptcy or have
received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes
only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.
Also doing business as Delaware AMC Mortgage Services, Inc., in the states of Texas, Rhode Island, and New Hampshire.



# APPRAISAL:



- [ ]  Acknowledgment of Conditional Loan Consummation
- [ ]  Appraisal Review
- [ ]  Permits, (if applicable)
- [ ]  Authorization to Fund with Withholds (including all Withhold Documentation, if applicable)
- [ ]  Survey
- [ ]  Termite Report
- [ ]  Addendums
- [ ]  442 with Original Photos
- [ ]  Original Appraisal with Original Photos

2350 Green Rd., #160
Ann Arbor, MI 48105

| Property Address: | Date: |
|---|---|
| 522 Cayuga<br>Benton Harbor, MI 49022 | October 18, 2005 |

You have the right to a copy of the appraisal/property valuation report used in connection with your application for credit. If you wish a copy, please write to us at the mailing address we have provided. We must hear from you no later than 90 days after we notify you about the action taken on your credit application or you withdraw your application.

Contact: Branch Manager

Lender/Broker: Ameriquest Mortgage Company

Address: 2350 Green Rd., #160

Ann Arbor, MI 48105

Telephone: (734)996-8699

Borrower JEFFREY BUSH    10-18-05 Date

Borrower DEBORAH BUSH    10-18-05 Date

Borrower _____ Date

Borrower _____ Date

000001363679011004460101

apprdicl (Rev. 3/03)

JERA APPRAISAL CORP
3310 DEVONWOOD HILLS SUITE C
GRAND RAPIDS, MI 49526

Telephone Number: (616)363-0430    Fax Number: (616)363-0439

| | |
|---|---|
| INVOICE NUMBER | 64905 |
| DATE | 10/17/2005 |

TO:

AMERIQUEST MORTGAGE CORPORATION
1100 W TOWN AND COUNTRY RD
ORANGE, CA 92868

Telephone Number:          Fax Number:
Alternate Number:          E-Mail:

| REFERENCE | |
|---|---|
| Internal Order #: | 0051970-131104291 |
| Lender Case #: | 0136367001 |
| Client File #: | 0136367001 |
| Main File # on form: | 64905 |
| Other File # on form: | |
| Federal Tax ID: | |
| Employer ID: | |

## DESCRIPTION

Lender: AMERIQUEST MORTGAGE CORPORATION    Client:
Purchaser/Borrower: JEFF BRUCH
Property Address: 622 Cayuga Rd
City: BENTON HARBOR
County: BERRIEN          State: MI          Zip: 49022-5604
Legal Description: Napier To Miami To Cayuga Rd

| FEES | AMOUNT |
|---|---|
| 1004 APPRAISAL | 450.00 |
| | |
| **SUBTOTAL** | 450.00 |

| PAYMENTS | AMOUNT |
|---|---|
| Check #:          Date:          Description: | |
| Check #:          Date:          Description: | |
| Check #:          Date:          Description: | |
| **SUBTOTAL** | |
| **TOTAL DUE** | $        450.00 |

Form NIV5 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE
JERA Appraisal Corp

## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
622 Cayuga Rd
Naplor To Miami To Cayuga Rd
DENTON HARBOR, MI 49022-6004

**FOR:**
AMERIQUEST MORTGAGE CORPORATION
1100 W TOWN AND COUNTRY RD
ORANGE, CA 92868

**AS OF:**
10-14-05

**BY:**
JOEL NANZER

# SUMMARY OF SALIENT FEATURES

| | |
|---|---|
| Subject Address | 622 Cayuga Rd |
| Legal Description | Naylor To Miami To Cayuga Rd |
| City | BENTON HARBOR |
| County | BERRIEN |
| State | MI |
| Zip Code | 49022-5604 |
| Census Tract | 0007.00 |
| Map Reference | SEE LOCATION MAP |

| | |
|---|---|
| Sale Price | $ REFINANCE |
| Date of Sale | N/A |

| | |
|---|---|
| Borrower / Client | JEFF BRUSH |
| Lender | AMERIQUEST MORTGAGE CORPORATION |

| | |
|---|---|
| Size (Square Feet) | 1,040 |
| Price per Square Foot | $ |
| Location | SUBURBAN |
| Age | 60 |
| Condition | AVERAGE |
| Total Rooms | 6 |
| Bedrooms | 3 |
| Baths | 1 |

| | |
|---|---|
| Appraiser | JOEL NANZER |
| Date of Appraised Value | 10-14-05 |

| | |
|---|---|
| Final Estimate of Value | $ 112,000 |

# UNIFORM RESIDENTIAL APPRAISAL REPORT

| | | | | File No. |
|---|---|---|---|---|
| Property rights appraised | ☒ Fee Simple | ☐ Leasehold | Project Type ☐ PUD ☐ Condominium (HUD/VA only) | HOA $ N/A |
| Neighborhood or Project Name | | | Map Reference SEE LOCATION MAP | Census Tract 0097.00 |
| Sale Price $ REFINANCE | Date of Sale N/A | Description and $ amount of loan charges/concessions to be paid by seller N/A | | |
| Lender/Client AMERIQUEST MORTGAGE CORPORATION | Address 1100 W TOWN AND COUNTRY RD, ORANGE, CA 92868 | | | |
| Appraiser JOEL MANZER | Address 3316 DEVONWOOD DRIVE SUITE C, GRAND RAPIDS, MI 49525 | | | |

| Location | ☒ Urban | ☐ Suburban | ☐ Rural | Predominant occupancy | Single family housing PRICE $(000) | AGE (yrs) | Present land use % | Land use change |
|---|---|---|---|---|---|---|---|---|
| Built up | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | ☒ Owner | Low NEW | | One family 80 | ☒ Not likely ☐ Likely |
| Growth rate | ☐ Rapid | ☒ Stable | ☐ Slow | ☐ Tenant | High 100+ | | 2-4 family 5 | ☒ In process |
| Property values | ☒ Increasing | ☐ Stable | ☐ Declining | ☐ Vacant (0-5%) | Predominant | | Multi-family 0 | To: |
| Demand/supply | ☐ Shortage | ☒ In balance | ☐ Over supply | ☐ Vacant (over 5%) | | | Commercial 15 | |
| Marketing time | ☐ Under 3 mos. | ☒ 3-6 mos. | ☐ Over 6 mos. | | | | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: BENTON HARBOR AREA; CITY OF BENTON HARBOR

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):
THE SUBJECT IS LOCATED IN THE BENTON HARBOR AREA. THE NEIGHBORHOOD IS TYPIFIED BY MANY EXISTING HOMES, SOME RENTAL PROPERTIES AND SOME COMMERCIAL PROPERTIES. THERE STILL EXISTS SOME VACANT LAND WHICH IS TYPICALLY PURCHASED FOR RESIDENTIAL CONSTRUCTION. HOMES IN THE NEIGHBORHOOD VARY IN SIZE, STYLE AND AGE AND APPEAR TO BE ADEQUATELY MAINTAINED. ACCESS TO SCHOOLS IS BY BUS. EMPLOYMENT AND SHOPPING CENTERS ARE LOCAL. COMMUTING DISTANCES ARE NOT CONSIDERED ADVERSE.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):
THE MARKET SHOWS THERE IS AMPLE DEMAND FOR THE SUPPLY OF HOMES BEING OFFERED FOR SALE IN THE SUBJECT AREA. MARKET TRENDS ALSO SHOW THAT PROPERTIES IN THE SUBJECT AREA HAVE INCREASED IN VALUE OVER THE PAST YEAR.

Project Information for PUDs (if applicable) -- Is the developer/builder in control of the Home Owners' Association (HOA)? ☐ Yes ☒ No
Approximate total number of units in the subject project N/A   Approximate total number of units for sale in the subject project N/A
Describe common elements and recreational facilities: N/A

| Dimensions 70X134 | | Topography LEVEL |
|---|---|---|
| Site area 9,380 | Corner Lot ☐ Yes ☒ No | Size 70X134 |
| Specific zoning classification and description RESIDENTIAL | | Shape RECTANGULAR |
| Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | Drainage APPEARS ADEQUATE |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | | View RESIDENTIAL |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | Landscaping AVERAGE |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | PAVED | ☒ | | Driveway Surface CONCRETE |
| Gas | ☒ | | Curb/gutter | CONCRETE | ☒ | | Apparent easements NORMAL UTILITIES |
| Water | ☒ | | Sidewalk | CONCRETE | ☒ | | FEMA Special Flood Hazard Area ☐ Yes ☒ No |
| Sanitary sewer | ☒ | | Street lights | ELECTRIC | ☒ | | FEMA Zone C   Map Date 01/18/1980 |
| Storm sewer | ☒ | | Alley | NONE | | | FEMA Map No. 2600460005A |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): NONE

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units 1 | Foundation CONCRETE | Slab NONE | Area Sq. Ft. 1,000 | Roof UNK ☐ |
| No. of Stories 1 | Exterior Walls VINYL | Crawl Space NONE | % Finished 95% | Ceiling UNK ☐ |
| Type (Det./Att.) DETACHED | Roof Surface SHINGLES | Basement YES | Ceiling OPEN JOIST | Walls UNK ☐ |
| Design (Style) RANCH | Gutters & Dwnspts. ALUMINUM | Sump Pump NO | Walls PANEL | Floor UNK ☐ |
| Existing/Proposed EXISTING | Window Type DBL HUNG | Dampness NONE NOTED | Floor CRT,CRPT | None ☐ |
| Age (Yrs.) 80 | Storm/Screens YES | Settlement NONE NOTED | Outside Entry NO | Unknown ☐ |
| Effective Age (Yrs.) 10 | Manufactured House NO | Infestation NONE NOTED | | ASSUMED ADEQUATE |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | 1,000 |
| Level 1 | | 1 | 1 | 1 | | | | 3 | 1 | | | 1,040 |
| Level 2 | | | | | | | | | | | | |

Finished area above grade contains:  6 Rooms;  3 Bedroom(s);  1 Bath(s);  1,040 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: 1 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | CRPT,WD,TL,VINYL/A | Type FA | Refrigerator ☐ | None ☒ | Fireplace(s) # NONE ☐ | None ☐ |
| Walls | DRYWALL/AVG | Fuel GAS | Range/Oven ☐ | Stairs ☐ | Patio YES ☒ | Garage # of cars |
| Trim/Finish | WOOD,STAINED/AVG | Condition AVERAGE | Disposal ☐ | Drop Stair ☐ | Deck NO ☐ | Attached YES |
| Bath Floor | VINYL/AVG | COOLING | Dishwasher ☐ | Scuttle ☐ | Porch NONE ☐ | Detached ☐ |
| Bath Wainscot | FIBERGLASS/AVG | Central NONE | Fan/Hood ☐ | Floor ☐ | Fence BY FENCE ☐ | Built-In ☐ |
| Doors | WOOD/METAL/AVG | Other NONE | Microwave ☐ | Heated ☐ | Pool NONE ☐ | Carport ☐ |
| | | Condition N/A | Washer/Dryer ☐ | Finished ☐ | | Driveway 2+ CARS |

Additional features (special energy efficient items, etc.): NONE

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: THE SUBJECT IS IN AVERAGE PHYSICAL CONDITION. NO FUNCTIONAL DEPRECIATION WAS NOTED. NO EXTERNAL DEPRECIATION WAS NOTED.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: NONE

Freddie Mac Form 70 6/93     PAGE 1 OF 2     Fannie Mae Form 1004 6/93

Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

| | | | | MARSHALL RESIDENTIAL COST BOOK, M. MEANS SQUARE FOOT |
|---|---|---|---|---|
| | Dwelling | Sq. Ft. @ $ | = $ | 10,000 |
| | Garage/Carport 368 | Sq. Ft. @ $ 15.00 | = $ | 5,520 |
| | Total Estimated Cost New | | = $ | 88,720 |
| | Less Physical Functional External | | | |
| | Depreciation 10,457 | | = $ | 10,457 |
| | Depreciated Value of Improvements | | = $ | 82,303 |
| | "As-is" Value of Site Improvements | | = $ | 5,000 |
| | INDICATED VALUE BY COST APPROACH | | = $ | 112,203 |

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 622 Cayuga Rd BENTON HARBOR | 1291 MIAMI CT. BENTON HARBOR | | 1850 HEATH CT. BENTON HARBOR | | 465 ONONDAGA BENTON HARBOR | |
| Proximity to Subject | | 0.12 miles | | 0.03 miles | | 0.09 miles | |
| Sales Price | $ REFINANCE | $ 110,000 | | $ 114,000 | | $ 110,000 | |
| Price/Gross Living Area | $ | $ 83.14 | | $ 87.69 | | $ 110.40 | |
| Data and/or Verification Source | INSPECTION PUBLIC RECORDS | MLS DATA PUBLIC RECORDS | | MLS DATA PUBLIC RECORDS | | MLS DATA PUBLIC RECORDS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Sales or Financing Concessions | | CONVENTIONAL NONE NOTED | | CONVENTIONAL NONE NOTED | | CONVENTIONAL NONE NOTED | |
| Date of Sale/Time | | 04-29-05 | | 08-16-05 | | 12-17-04 | |
| Location | SUBURBAN | SIMILAR | | SIMILAR | | SIMILAR | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 70X134 | 70X130 | | 70X134 | | 60X130 | |
| View | RESIDENTIAL | SIMILAR | | SIMILAR | | SIMILAR | |
| Design and Appeal | RANCH | RANCH/SIMILAR | | RANCH/SIMILAR | | RANCH/SIMILAR | |
| Quality of Construction | AVERAGE | SIMILAR | | SIMILAR | | SIMILAR | |
| Age | 60 | 60 | | 60 | | 65 | |
| Condition | AVERAGE | SIMILAR | | SIMILAR | | SIMILAR | |
| Above Grade | Total | Bdrms | Baths | Total | Bdrms | Baths |
| Room Count | 6 | 3 | 1 | 6 | 3 | 1 | | 4 | 2 | 1 | +1,000 | 6 | 3 | 1 | |
| Gross Living Area | 1,040 Sq. Ft. | 1,323 Sq. Ft. | −2,830 | 1,302 Sq. Ft. | +2,620 | 1,060 Sq. Ft. | |
| Basement & Finished Rooms Below Grade | FULL UP FIN RR | FULL UP FIN RR | | FULL/NOT FIN NONE | +1,000 | FULL UP FIN DEN | |
| Functional Utility | TYPICAL | SIMILAR | | SIMILAR | | SIMILAR | |
| Heating/Cooling | GAS,FA/NONE | GAS,FA/NONE | | GAS,FA/NONE | | GAS,FA/AC | −1,500 |
| Energy Efficient Items | TYPICAL | SIMILAR | | SIMILAR | | SIMILAR | |
| Garage/Carport | 1 CAR GARAGE | 1 CAR GARAGE | | 1 CAR GARAGE | | 2 CAR GARAGE | −1,500 |
| Porch, Patio, Deck, Fireplace(s), etc. | PATIO | DECK | | DECK 1 FIREPLACE | −500 | DECK,CVD PRCH 1 FIREPLACE | −1,000 −500 |
| Fence, Pool, etc. | BY FENCE | NONE | +500 | BY FENCE | | BY FENCE | |
| Net Adj. (total) | | ☐+ ☒− $ | 2,330 | ☒+ ☐− $ | 4,120 | ☐+ ☒− $ | 4,500 |
| Adjusted Sales Price of Comparable | | $ | 107,670 | $ | 118,120 | $ | 111,500 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): THE ADJUSTMENTS FOR THE DIFFERENCES IN SQ. FT. AMOUNTS, FOR AMOUNTS OVER 200 SQ. FT, WERE MADE AT $10.00 PER SQ. FT.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | NONE NOTED | NONE NOTED | NONE NOTED | NONE NOTED |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within year of the date of appraisal: NONE

| INDICATED VALUE BY SALES COMPARISON APPROACH | | | | $ | 112,000 |
|---|---|---|---|---|---|
| INDICATED VALUE BY INCOME APPROACH (if Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ | | | | | N/A |

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans & specifications.
Conditions of Appraisal: NONE

Final Reconciliation: THE INCOME APPROACH TO VALUE IS NOT APPLICABLE TO THIS APPRAISAL. THE COST APPROACH TO VALUE AND THE MARKET APPROACH TO VALUE SUPPORT EACH OTHER. THE MARKET APPROACH IS GIVEN THE MOST WEIGHT IN THIS APPRAISAL.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA Form 1004B (Revised 06/93 ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 10-14-05
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 112,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature | Signature ☐ Did ☐ Did Not |
| Name JOEL NAHZER | Name Inspect Property |
| Date Report Signed October 18, 2005 | Date Report Signed |
| State Certification # | State | State Certification # | State |
| Or State License # 1201007073 | State MI | Or State License # | State |

| Freddie Mac Form 70 6/93 | PAGE 2 OF 2 | Fannie Mae Form 1004 6-93 |
|---|---|---|

Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# EXHIBIT K

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.

**120 S. LaSalle Street, 18th floor**
**Chicago, Illinois 60603-3403**
**(312) 739-4200**
**(800) 644-4673**
**(312) 419-0379 (FAX)**
Email: edcombs@aol.com
www.edcombs.com

September 7, 2006

**BY CERTIFIED MAIL**

Ameriquest Mortgage Company
c/o registered agent
National Registered Agents, Inc.
712 Abbott Road
East Lansing, MI 48823

AMC Mortgage Services, Inc.
c/o registered agent
National Registered Agents, Inc.
712 Abbott Road
East Lansing, MI 48823

Ameriquest Mortgage Securities, Inc.
1100 Town & Country Road, Suite 1100
Orange, CA 92868

Re:  Notice of rescission, claim and lien, Jeffrey Bush and Deborah Bush,
522 Cayuga, Benton Harbor, MI 49022, loan of Oct. 18, 2005

Ladies/Gentlemen:

The above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than Ameriquest Mortgage Company or Ameriquest Mortgage Securities, Inc., please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on September 7, 2006.

_____

Daniel A. Edelman