IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHERRY K. BLACKBURN and<br>JOSEPH FRANK BLACKBURN, | ) | Case No. 07 C 309 |
| | ) | |
| Plaintiffs, | ) | (Originally 06 C 1086 (S.D. Ind.)) |
| | ) | |
| vs. | ) | |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY,<br>JPMC SPECIALTY MORTGAGE, LLC, f/k/a<br>WM SPECIALTY MORTGAGE, LLC, AMC<br>MORTGAGE SERVICES, INC., CHASE<br>HOME FINANCE, LLC, and DOES 1-5, | ) | (Transferred to Judge Aspen for Pretrial<br>proceedings under MDL #1715, Lead Case #05<br>C 07097) |
| Defendants. | ) | |

CHASE HOME FINANCE, LLC'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant, Chase Home Finance, LLC ("Chase"), by its undersigned attorneys, responds

to Plaintiffs' Second Amended Complaint as follows:

INTRODUCTION

1.     Sherry K. Blackburn and Joseph Frank Blackburn bring this action against a
"subprime" mortgage lender and its affiliates to rescind a mortgage and collect damages for
violation of the Truth in Lending Act, 15 U.S.c. §1601 et seq. ("TILA"), implementing Federal
Reserve Board Regulation Z, 12 C.F.R. part 226 and state laws.

ANSWER:     Chase admits that Plaintiffs bring this action seeking the requested relief.

Chase denies that it is an "affiliate" of Ameriquest Mortgage Company, denies any wrongdoing,

and denies that Plaintiffs are entitled to any relief as to Chase.  Chase lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations contained in

this paragraph and therefore denies those allegations.

JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general
federal question), 1337 (interstate commerce), 1367 (supplemental jurisdiction) and 15 U.S.C.
§1640 (TILA).  Defendants transact business in the District and are deemed to reside here.

ANSWER: Chase admits the allegations contained in the first sentence of this paragraph. Chase admits that it transacts business within the Northern District of Illinois. Chase lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph and therefore denies those allegations.

PARTIES

3. Plaintiffs Sherry K. Blackburn and Joseph Frank Blackburn ("the Blackburns") are married and jointly own and reside in a home at 8968 Sunglow Court, Indianapolis, IN 46231.

ANSWER: Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

4. Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Indiana. Its registered agent is National Registered Agents, Inc., located at 320 Meridian Street, Indianapolis, IN 46204 or 200 W. Adams, Chicago, IL 60606.

ANSWER: Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

5. Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

ANSWER: Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

6. Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

ANSWER: Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

7. Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

ANSWER: Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

8.      During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

ANSWER:      Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

9.      Defendant AMC Mortgage Services, Inc. ("AMC") is a foreign corporation which does business in Indiana.  It is an affiliate of Ameriquest.  Its registered agent is National Registered Agents, Inc., located at 320 Meridian Street, Indianapolis, IN 46204 or 200 W. Adams, Chicago, IL 60606.

ANSWER:      Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

10.     Defendant AMC Mortgage Services, Inc., serviced loans originated by Ameriquest Mortgage Company, and claimed an interest in such loans, including the right to receive payments thereunder.  It is joined as a necessary party.

ANSWER:      Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

11.     Defendant Chase Home Finance, LLC is a foreign corporation which does business in Illinois and Indiana.  Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

ANSWER:      Chase admits the allegations of this paragraph.

12.     Defendant Chase Home Finance, LLC services some loans originated by Ameriquest Mortgage Company, including plaintiffs', and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

ANSWER:      Chase admits that it services some loans originated by Ameriquest Mortgage Company, including plaintiffs' loan.  Chase admits that as servicer it has an interest in plaintiffs' loan, including the right to receive payments under the loan.  Chase further admits that in this action, plaintiffs purport to join Chase as a necessary party.  Chase denies the remaining allegations of this paragraph.

13.     Defendant JPMC Specialty Mortgage, LLC, formerly known as WM Specialty Mortgage, LLC, is a foreign corporation which transacts business in Illinois and Indiana. It holds legal title to some loans originated by Ameriquest Mortgage Company, including plaintiffs'. Its registered agent is Corporation Service Company, located at 84 State St., Boston, MA 02109.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

## FACTS RELATING TO PLAINTIFFS

14.     Prior to November 19, 2004, the Blackburns applied for a mortgage with Ameriquest Mortgage Company.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

15.     The Blackburns needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

16.     The following are documents relating to the loan:

a.     A borrower's acknowledgment of final loan terms, Exhibit A;

b.     A note, Exhibit B;

c.     A mortgage, Exhibit C;

d.     A settlement statement, Exhibit D;

e.     A Truth in Lending statement, Exhibit E;

f.     The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit F;

g.     A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, Exhibit G;

h.     A uniform residential loan application, Exhibit H;

i.     A document entitled "Understanding your options regarding interest rates and discount points," Exhibit I;

j.      A good faith estimate, <u>Exhibit J</u>; and

k.      A November 24, 2004 appraisal generated by Ameriquest using Valuesure software, <u>Exhibit K</u>, ("Ameriquest appraisal").

<u>ANSWER</u>:      Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

17.     In determining the Blackburns' eligibility for a loan, Ameriquest appraised the value of the Blackburns' house at $222,000.00 - approximately $70,000.00 more than the average value of homes in the Blackburns' neighborhood - and then doubled this value, creating a total net worth of $414,616.00. <u>Exhibit H</u>, page 2. Using this figure, Ameriquest represented to the Blackburns that they qualified for a $194,250.00 loan. <u>Exhibit A</u>.

<u>ANSWER</u>:      Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

18.     A few days before the closing, a female agent from Ameriquest's Indianapolis office spoke to Ms. Blackburn on the phone and represented that the monthly payment would be approximately $1,200.00, with escrow payments for taxes and insurance included.

<u>ANSWER</u>:      Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

19.     At closing, the same agent who had quoted the $1,200.00 monthly payment informed the Blackburns that there had been a "big mistake" and that the monthly payment would be $1,845.88, over $600.00 more than the quote.

<u>ANSWER</u>:      Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

20.     The loan was closed at the Blackburns' home on November 19, 2004. The female agent who had been dealing with the Blackburns was present, but she did not provide the Blackburns with a business card or her contact information. A male agent from the Indianapolis Ameriquest office was also present, and similarly neglected to provide a business card.

<u>ANSWER</u>:      Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

21.     At the closing, the female agent told the Blackburns that they had a twenty-year mortgage at 7.65%, and that they would be able to "lock-in" their interest rate within two years. Ms. Blackburn protested that she did not want an adjustable-rate mortgage. The agent reassured

Ms. Blackburn that she did not need to worry and that they would be able to "lock-in" a *lower* fixed rate before two years had passed. The Blackburns were assured "beyond a doubt" that they would be able to "lock-in" a lower interest rate before the interest rate became adjustable. The Blackburns, unwilling to accept an adjustable rate mortgage, were repeatedly assured that their mortgage would be fixed-rate and that the interest rate would be "locked-in" before it increased.

ANSWER:    Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

22.    On March 7, 2006, Ms. Blackburn emailed AMC to see how she could "lock-in" the interest rate, as Ameriquest had represented she could.

ANSWER:    Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

23.    AMC responded: "Please contact out Refinance Department at (866) 783-7576, Monday through Friday, 9:00 a.m. to 6:00 p.m., Pacific Time."

ANSWER:    Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

24.    The "lock-in" feature that Ameriquest had used to sell the Blackburns on an adjustable-rate mortgage was nothing more than a refinance. This was not communicated to the Blackburns at the November 19, 2004 closing.

ANSWER:    Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

25.    The Blackburns were not given a copy of their appraisal at the closing.

ANSWER:    Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

26.    On November 24, 2004, five days after the closing of the Blackburns' loan, Ameriquest produced a fraudulent appraisal of the Blackburns' home using Valuesure software. See the "Order Date" and "Inspection Date" on Exhibit K. Ameriquest's appraisal valued the Blackburns' house at $222,000.00.

ANSWER:    Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

6

27.     Ameriquest's appraisal notes that the Blackburns' house has zero bedrooms, zero bathrooms, zero living area and an "assessed value" of $127,000.00. <u>Exhibit K</u>.

<u>ANSWER</u>:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

28.     Ameriquest's appraisal lists the "borrower est of value" as $222,000.00. This is precisely the figure that Ameriquest had "estimated" on the Blackburns' loan application approximately a week earlier. The Blackburns did not at any time make an estimate of their house's value to Ameriquest

<u>ANSWER</u>:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

29.     Ameriquest's appraisal does note that the Blackburns' house "conforms to neighborhood," but also asserts that "No comparable properties are available for submitted address." <u>Exhibit K</u>.

<u>ANSWER</u>:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

30.     Ameriquest inflated the value of the Blackburns' house in order to increase its own points and fees, interest and profits.

<u>ANSWER</u>:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

31.     On November 19, 2004, Ameriquest charged the Blackburns a $200.00 appraisal fee for an appraisal that had not been conducted, as indicated on <u>Exhibit D</u> and <u>Exhibit K</u>.

<u>ANSWER</u>:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

32.     The Blackburns were later directed to make payments to AMC Mortgage Services, Inc., then to Citi Residential Lending, Inc., and most recently to Chase Home Finance, LLC.

<u>ANSWER</u>:     Chase admits that it services plaintiffs' loan. Chase lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

7

33.     Approximately a year after the closing, in February 2006, Ms. Blackburn learned that she could order a copy of the Ameriquest appraisal from AMC's website. It was only then that the Blackburns discovered their home had been grossly overappraised at $222,000.00 on November 24, 2004.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

34.     The Blackburns then contacted an attorney specializing in real estate, Nick Tillema. Mr. Tillema informed the Blackburns that homes in their neighborhood appraise for $130,000.00 - $150,000.00.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

35.     On March 13, 2006, the Blackburns filed a complaint against Ameriquest with the Attorney General of Indiana. Exhibit L.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

36.     A month later, in April 2006, Ms. Blackburn called AMC and spoke to an agent named Lisa about the possibility of refinancing. Lisa told Ms. Blackburn that AMC would schedule another appraisal so that they could refinance before the interest rate increased.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

37.     AMC arranged for an appraiser to conduct a current appraisal on the Blackburns' house. Daniel McCaslin, a licensed broker/appraiser, appraised the Blackburns' house at $134,000.00 on March 11,2006. Exhibit M. This figure was a whopping $88,000.00 less than the Ameriquest appraisal, even though Mr. McCaslin's appraisal accounted for the house's four bedrooms and 2.5 bathrooms and Ameriquest's appraisal did not.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

38.     On April 19, 2006, in response to Ms. Blackburn's complaint that had been filed with the Attorney General, Ameriquest offered the Blackburns a modification of terms, including a 6.99% fixed-rate mortgage for the remainder of the loan and a remaining principal balance of $188,847.20 as of April 18, 2006, to respond to the issues raised in Ms. Blackburn's complaint.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

39.     The Blackburns declined Ameriquest's offer for a modification of terms.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

40.     Also in connection with the November 19, 2004 loan, the Blackburns were charged a "loan discount" of $7,379.56, or 3.799% of the principal.  Exhibit D.  This was in addition to an appraisal fee of $200.00, a property value fee of $125.00, a tax related service fee of $70.00, a flood search fee of $16.00, a lenders processing fee of $626.00, a lenders admin fee of $239.00 and an application fee of $360.00.  All of these charges were retained by Ameriquest from the loan proceeds.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

41.     Ameriquest agreed and represented at the closing, by means of a standard form document (Exhibit I), that the retention of the "loan discount" from the loan proceeds was in exchange for a reduction in the interest rate.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

42.     This understanding and representation was false.  In fact, the interest rate was not reduced, but was increased, as shown by Exhibit A.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

43.     On information and belief, JPMC Mortgage Specialty, formerly known as WM Specialty Mortgage, LLC, owns plaintiffs' loan.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

44.     In the event JPMC Mortgage Specialty, formerly known as WM Specialty Mortgage, LLC, does not own plaintiffs' loan (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

45.     In addition, defendants Ameriquest and AMC Mortgage Services, Inc., have a pattern and practice of retaliating against its customers who exercise their rights under federal credit protection statutes by filing, in order to assert their rights in good faith, a lawsuit against Ameriquest and its affiliates.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

46.     Once a customer files suit, his/her account is "flagged," access to his or her on-line account is blocked, and he or she can no longer make payments <u>via</u> on line.  In addition, in many cases, AMC simply stops sending monthly statements to the customer

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

47.     After plaintiffs filed suit, Ameriquest and/or AMC stopped sending them monthly statements.  They did not receive a single statement from approximately July, 2006, until Chase Home Finance, LLC became their servicer in February, 2009.

ANSWER:     Chase admits that it currently services plaintiffs' loans and that it sends them statements.  Chase lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

48.     All such servicing problems are the direct result of plaintiffs having filed suit against defendants.  Customers who do not file lawsuits do not experience these types of problems at all, to the same extent or with the same degree of regularity.

ANSWER:     Chase denies that plaintiffs have had any servicing problems in connection with Chase's servicing of their loan.  Chase lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

## COUNT I - TRUTH IN LENDING ACT

49.     Plaintiffs incorporate paragraphs 1-48.

ANSWER:     Chase incorporates its answers to paragraphs 1-48 as if fully set forth herein.

50.     Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**

**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind.  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(2) The consumer's right to rescind the transaction.**

**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(4) The effects of rescission, as described in paragraph (d) of this section.**

**(5) The date the rescission period expires ....**

**(f) Exempt transactions. The right to rescind does not apply to the following:**

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations that "the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home " and that the transaction "was subject to the right to cancel provided by 15 U.S.C. § 1635 and 12 C.F.R. §226.23."  Chase admits that the remainder of this paragraph quotes a portion of 12 C.F.R. §226.23, but denies that it is a complete quotation of this section and denies the remainder of this paragraph to the extent that it is inconsistent with 15 U.S.C. § 1635 and 12 C.F.R. §226.23.

## GROUND FOR RESCISSION

51.     In connection with the loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the reasons stated below.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

52.     Only one of the federal notices of right to cancel provided to plaintiffs were completed, instead of the four required.  See Exhibit F.

ANSWER:     Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

53. The delivery of two different notices of right to cancel is confusing and obfuscatory, and does not constitute clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of § 1635.

ANSWER: Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

54. Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long.

ANSWER: Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

55. Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

ANSWER: Chase lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph.

56. Notice of rescission has been given to defendants. A copy is attached as Exhibit N.

ANSWER: Chase denies that it received the document attached as Exhibit N except as an attachment to this complaint. Chase lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in this paragraph.

57. The loan has not been rescinded.

ANSWER: Chase admits the allegations of this paragraph.

58. Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

ANSWER: Chase admits that this paragraph purports to summarize 15 U.S.C. §1641(c), but denies that this paragraph completely and accurately describes the law of assignee liability under TILA and 15 U.S.C. §1641(c).

59. 15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

<u>ANSWER</u>: Chase admits that this paragraph contains a quotation from 15 U.S.C. §1635(g), but denies that this paragraph to the extent that it is inconsistent with 15 U.S.C. §1635(g).

## COUNT II - INDIANA DECEPTIVE CONSUMER SALES ACT

Chase states that the allegations contained in Count II of this complaint are not directed against it and, therefore, Chase makes no answer to these allegations. To the extent that an answer is required, Chase denies any wrongdoing, denies that Plaintiffs are entitled to any relief against Chase, and states that it has insufficient knowledge to form a belief as to the truth of the allegations contained in Count II this complaint.

## COUNT III - COMMON LAW FRAUD

Chase states that the allegations contained in Count III of this complaint are not directed against it and, therefore, Chase makes no answer to these allegations. To the extent that an answer is required, Chase denies any wrongdoing, denies that Plaintiffs are entitled to any relief against Chase, and states that it has insufficient knowledge to form a belief as to the truth of the allegations contained in Count III this complaint.

## COUNT IV -B INDIANA DECEPTIVE CONSUMER SALES ACT

Chase states that the allegations contained in Count IV-B of this complaint are not directed against it and, therefore, Chase makes no answer to these allegations. To the extent that an answer is required, Chase denies any wrongdoing, denies that Plaintiffs are entitled to any

relief against Chase, and states that it has insufficient knowledge to form a belief as to the truth of the allegations contained in Count IV-B this complaint.

COUNT V - COMMON LAW FRAUD

Chase states that the allegations contained in Count V of this complaint are not directed against it and, therefore, Chase makes no answer to these allegations. To the extent that an answer is required, Chase denies any wrongdoing, denies that Plaintiffs are entitled to any relief against Chase, and states that it has insufficient knowledge to form a belief as to the truth of the allegations contained in Count V this complaint.

COUNT VI - INDIANA DECEPTIVE CONSUMER SALES ACT

Chase states that the allegations contained in Count VI of this complaint are not directed against it and, therefore, Chase makes no answer to these allegations. To the extent that an answer is required, Chase denies any wrongdoing, denies that Plaintiffs are entitled to any relief against Chase, and states that it has insufficient knowledge to form a belief as to the truth of the allegations contained in Count VI this complaint.

COUNT VII – COMMON LAW FRAUD

Chase states that the allegations contained in Count VII of this complaint are not directed against it and, therefore, Chase makes no answer to these allegations. To the extent that an answer is required, Chase denies any wrongdoing, denies that Plaintiffs are entitled to any relief against Chase, and states that it has insufficient knowledge to form a belief as to the truth of the allegations contained in Count VII this complaint.

15

## COUNT VIII – INDIANA DECEPTIVE CONSUMER SALES ACT

Chase states that the allegations contained in Count VIII of this complaint are not directed against it and, therefore, Chase makes no answer to these allegations. To the extent that an answer is required, Chase denies any wrongdoing, denies that Plaintiffs are entitled to any relief against Chase, and states that it has insufficient knowledge to form a belief as to the truth of the allegations contained in Count VIII this complaint.

## COUNT IX – BREACH OF CONTRACT

Chase states that the allegations contained in Count IX of this complaint are not directed against it and, therefore, Chase makes no answer to these allegations. To the extent that an answer is required, Chase denies any wrongdoing, denies that Plaintiffs are entitled to any relief against Chase, and states that it has insufficient knowledge to form a belief as to the truth of the allegations contained in Count IX this complaint.

## COUNT XI – INDIANA DECEPTIVE CONSUMER SALES ACT

Chase states that the allegations contained in Count XI of this complaint are not directed against it and, therefore, Chase makes no answer to these allegations. To the extent that an answer is required, Chase denies any wrongdoing, denies that Plaintiffs are entitled to any relief against Chase, and states that it has insufficient knowledge to form a belief as to the truth of the allegations contained in Count XI this complaint.

## COUNT XII – ECOA

Chase states that the allegations contained in Count XII of this complaint are not directed against it and, therefore, Chase makes no answer to these allegations. To the extent that an answer is required, Chase denies any wrongdoing, denies that Plaintiffs are entitled to any relief against Chase, and states that it has insufficient knowledge to form a belief as to the truth of the allegations contained in Count XII this complaint.

## CHASE HOME FINANCE, LLC'S
## AFFIRMATIVE DEFENSES

Defendant, Chase Home Finance, LLC, ("Chase") states as follows for its affirmative defenses:

1.     Plaintiffs' claims are barred by the applicable statutes of limitation.

2.     Plaintiffs' claims are barred against Chase because Chase is solely the servicer of Plaintiffs' loan and not liable under TILA.

3.     Chase reserves the right to assert additional affirmative defenses disclosed during discovery.

WHEREFORE, Defendant, Chase Home Finance, LLC respectfully requests that the Court enter an order dismissing Plaintiffs' Second Amended Complaint, with prejudice, and awarding any other relief the Court deems proper under the circumstances.

Date:   August 28, 2009                          CHASE HOME FINANCE, LLC

By:    /s/ Michael G. Salemi
                                                        One of its attorneys

Stephen R. Meinertzhagen
Michael G. Salemi
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
Telephone:     (312) 840-7000
Facsimile:      (312) 840-7900

CERTIFICATE OF SERVICE

The undersigned, an attorney, on oath, deposes and states that on this 28th day of August, 2009, a true and correct copy of the foregoing Answer and Affirmative Defenses to Plaintiffs' Amended Complaint was filed electronically. Notice of this filing will be sent to all attorneys who have registered for electronic filing via the Court's ECF system.

_____ /s/ Michael G. Salemi _____
Michael G. Salemi