**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SUZETTE ADDISON, | ) | |
| | ) | 1:06-cv-4728 |
| Plaintiff, | ) | |
| | ) | Originally Case #06 C 654 (E.D. WI) |
| v. | ) | |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | Transferred to Judge Aspen for |
| DEUTSCHE BANK NATIONAL TRUST | ) | pretrial proceedings under MDL |
| COMPANY, as Trustee of AMERIQUEST | ) | #1715, Lead Case # 05 C 7097 |
| MORTGAGE SECURITIES, INC., Asset Backed | ) | |
| Pass Through Certificates, Series 2005-R3 Under | ) | |
| the Pooling and Servicing Agreement Dated as of | ) | |
| April 1, 2005, Without Recourse; AMERICAN | ) | |
| HOME MORTGAGE SERVICING, INC., and | ) | |
| DOES 1-5, | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

**INTRODUCTION**

1.     Plaintiff Suzette Addison brings this action against a "subprime" mortgage lender and its affiliates to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

**JURISDICTION AND VENUE**

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA).  Defendants transact business in the District and are deemed to reside here.

**PARTIES**

3.     Plaintiff Suzette Addison owns and resides in a two-flat at 4961 North 47th

1

Street, Milwaukee, WI 53218.

4.      Defendant Ameriquest Mortgage Company is a foreign corporation which maintains offices in and does business in Wisconsin. Its registered agent and office are National Registered Agents, 901 S. Whitney Way, Madison, WI 53711, or 200 W. Adams, Chicago, IL 60606.

5.      Defendant Ameriquest Mortgage Company is engaged in the business of originating "subprime" mortgages.

6.      Defendant Ameriquest Mortgage Company makes more than 26 loans per year.

7.      Defendant Ameriquest Mortgage Company is a "creditor" as defined in TILA and Regulation Z.

8.      During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

9.      Defendant Deutsche Bank National Trust Company, N.A., is a federally chartered bank located at 60 Wall Street, New York, NY 10005. On information and belief, it holds legal title to plaintiff's loan, as trustee.

10.     Defendant Ameriquest Mortgage Securities, Inc., an affiliate of Ameriquest Mortgage Company, is a foreign corporation which transacts business in Wisconsin. It holds legal title to loans originated by Ameriquest Mortgage Company. It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

11.     Defendant American Home Mortgage Servicing, Inc. is a foreign corporation which does business in Illinois and Wisconsin.  Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

12.     Defendant American Home Mortgage Servicing, Inc. services some loans originated by Ameriquest Mortgage Company, including plaintiff's, and claims an interest in such loans, including the right to receive payments thereunder.  It is joined as a necessary party.

### FACTS RELATING TO PLAINTIFF

13.     Prior to July 31,  2004, plaintiff applied for a mortgage with Ameriquest Mortgage Company.

14.     Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes, including a prior mortgage loan held by Chase Manhattan Mortgage.

15.     The loan was closed on August 6, 2004.

16.     The following are documents relating to the August 6, 2004 loan:

a.     A note in the principal amount of $67,500 and with a fixed interest rate of 11.2%, Exhibit A;

b.     A mortgage, Exhibit B;

c.     A settlement statement, Exhibit C;

d.     A list of items to be paid off from loan proceeds, Exhibit D;

e.     A summary of debts and disbursements, Exhibit E;

f.     An itemization of settlement charges, Exhibit F;

g.     A Truth in Lending disclosure statement, Exhibit G;

3

h.     The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit H; and

i.     A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, Exhibit I.

17.     In connection with the August 6, 2004 loan, plaintiff was charged a "loan discount" of $124.87. Exhibit F, line 802.

18.     Ameriquest undertook and represented, in the document attached as Exhibit X and delivered to plaintiff at the closing, that the payment of a "loan discount" would reduce plaintiff's interest rate.

19.     On information and belief, plaintiff did not receive a discounted rate.

20.     Plaintiff did not receive the loan documents relating to the August 6, 2004 loan on August 6, 2004.  Instead, they were sent to her in a Federal Express package later.  Exhibit J is a copy of the Federal Express package.

21.     The payoff amount on plaintiff's existing mortgage with Chase Manhattan Mortgage was not definitely known by Ameriquest at the August 6, 2004 closing.

22.      It was the policy and practice of Ameriquest, when paying off loans held by competitors such as Chase Manhattan Mortgage, to not obtain a payoff statement.  On information and belief, the reason for this policy and practice was that Ameriquest's rates were higher than necessary and Ameriquest did not want the existing lender to quote a lower rate.

23.     Instead, Ameriquest would make an internal estimate of the payoff amount on a "competitor payoff worksheet."

24.     The "competitor payoff worksheet" for plaintiff's August 2004 loan is

4

attached as <u>Exhibit K</u>.

       25.     The August 6, 2004 loan was transferred by Ameriquest to a related entity, AMC Mortgage Services, as evidenced by <u>Exhibit L</u>.

       26.     Ameriquest then induced plaintiff to refinance and enter into another loan, which was closed on February 3, 2005. This loan had an adjustable rate.

       27.     Prior to February 3, 2005, Ameriquest or its agent performed or arranged for an appraisal on plaintiff's residence and property.

       28.     On information and belief, the appraisal of plaintiff's residence and property resulted in an appraised value of approximately $133,000. Plaintiff was not provided with an appraisal report or instructions on how to request one.

       29.     However, the pre-typed loan application that Ameriquest or its agent prepared lists the appraised value of plaintiff's property as $140,000  <u>Exhibit Z</u>, section VI.

       30.     On information and belief, the actual market value of plaintiff's home was approximately $125,000.

       31.     Additionally, the pre-typed loan application that Ameriquest prepared lists the year acquired and original cost of plaintiff's home as 1998 and $78,000, respectively. <u>Exhibit Z</u>, section II.

       32.     In fact, plaintiff's home was purchased in 1995 for $45,000.

       33.     On information and belief, the reported appraised value, year acquired, and original cost of plaintiff's property were substantially and artificially inflated by Ameriquest, for the purpose of increasing the loan amount plaintiff would qualify for, which ultimately increased  the lender's profits, as further detailed below.

34.    The following are documents relating to the loan closed Feb. 3, 2005:

a.    A note in the principal amount of $96,000, <u>Exhibit M</u>;

b.    A mortgage, <u>Exhibit N</u>;

c.    Two different settlement statements, one provided on Feb. 3, 2005 (<u>Exhibit O</u>) and one provided on Feb. 7, 2005 (<u>Exhibit P</u>);

d.    A list of items to be paid off from loan proceeds, <u>Exhibit Q</u>;

e.    A summary of debts and disbursements, <u>Exhibit R</u>;

f.    An itemization of settlement charges, <u>Exhibit S</u>;

g.    A Truth in Lending disclosure statement, <u>Exhibit T</u>;

h.    The three-day notice of right to cancel required by the Federal Reserve Board, <u>Exhibit U</u>.  The purported expiration date was Feb. 7, 2005;

i.    A purported "one week" notice of right to cancel used solely by Ameriquest and related companies, <u>Exhibit V</u>.

35.    Because the disbursements made from the loan were not agreed upon until Feb. 7, 2005, the actual consummation date of the loan was Feb. 7, 2005, not Feb. 3, 2005, and all disclosure documents and notices of right to cancel issued in connection with the loan were misdated.  Indeed, the FRB notice (<u>Exhibit U</u>) stated that the cancellation period expired on Feb. 7, 2005, the date the actual terms of the loan were first made known to plaintiff.  The actual disbursements are a material term of any loan whose purpose is refinancing or debt consolidation.

36.    In addition, the three-day notice was prepared using the wrong form. Specifically, it was prepared using FRB Form H-8 when FRB Form H-9 should have been used. FRB Form H-9 is the form for use in transactions in which a loan made by Ameriquest is refinanced

6

by Ameriquest. Form H-8 is used when a loan made by another lender is refinanced by Ameriquest.

37.     In connection with the February 3, 2005 loan, plaintiff was charged a "loan discount" of $694.08. Exhibit S, line 802.

38.     Ameriquest undertook and represented, in the document attached as Exhibit Y and delivered to plaintiff at the closing, that the payment of a "loan discount" would reduce plaintiff's interest rate.

39.     On information and belief, plaintiff did not receive a discounted rate.

40.     Plaintiff was later directed to make payments to AMC Mortgage Services, Inc., and then Citi Residential Lending, Inc. Subsequently, plaintiff was directed to make payments to American Home Mortgage Servicing, Inc.

41.     On information and belief, Deutsche Bank National Trust Company, N.A. holds legal title to plaintiffs' loan, as Trustee. Ameriquest Mortgage Securities, Inc., is the beneficial owner of plaintiffs' loan under Asset Backed Pass Through Certificates, Series 2005-R3 Under the Pooling and Servicing Agreement Dated as of April 1, 2005, Without Recourse.

42.     In the event that Ameriquest Mortgage Securities, Inc., does not own plaintiffs' loan or Deutsche Bank National Trust Company, N.A. does not hold title, (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## COUNT I - TRUTH IN LENDING ACT

43.     Plaintiff incorporates paragraphs 1-42. This claim is against all defendants.

## RIGHT TO RESCIND

44.     Because the August 2004 transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject

to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**

**(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

**(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(1) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(2) The consumer's right to rescind the transaction.**

**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(4) The effects of rescission, as described in paragraph (d) of this section.**

**(5) The date the rescission period expires. . . .**

**(f) Exempt transactions. The right to rescind does not apply to the following:**

**(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

**(2) A credit plan in which a state agency is a creditor.**

45.     The February 2005 loan was also subject to the right to cancel, but only as to the new funds provided.

## GROUNDS FOR RESCISSION

46.     In connection with the August 2004 loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiff's right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23,  or the required financial disclosures, in violation of 15 U.S.C. §1637 and 12 C.F.R. §226.18, for (without limitation) the following reasons:

a.     Plaintiff did not receive the loan documents relating to the August 6, 2004 loan on August 6, 2004.

b.     The delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

47.     Furthermore, the "one week" cancellation notice is misleading, as

9

the period given is actually only six days long. Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

48.     In connection with the February 2005 loan, Ameriquest Mortgage Company failed to provide the required disclosures of the plaintiff's right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, or the required financial disclosures, in violation of 15 U.S.C. §1637 and 12 C.F.R. §226.18, for (without limitation) the following reasons:

a.     Because the terms of the loan were not agreed upon until Feb. 7, 2005, all loan documents, including the financial disclosures and the notices of right to cancel, are misdated.

b.     The three-day notice was prepared using the wrong form. Specifically, it was prepared using FRB Form H-8 when FRB Form H-9 should have been used. FRB Form H-9 is the form for use in transactions in which a loan made by Ameriquest is refinanced by Ameriquest. Form H-8 is used when a loan made by another lender is refinanced by Ameriquest.

c.     The delivery of two different notices of right to cancel is confusing and obfuscatory, resulting in lack of clear and conspicuous disclosure of the right to cancel. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

d.     Furthermore, the "one week" cancellation notice is misleading, as the period given is actually only six days long. Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

49.     Plaintiff seeks rescission of both the August, 2004, and the February,

10

2005, loan transactions. Plaintiff is entitled to rescind the August, 2004, loan even though it was refinanced.

50.     Notice of rescission has been given to defendants. A copy is attached as Exhibit W.

51.     The loan has not been rescinded.

52.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

53.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a.     TILA rescission of both transactions, including the cash equivalent of rescission for the August, 2004 transaction;

b.     A judgment voiding plaintiff's current mortgage, capable of recordation in the public records, and binding on defendants;

c.     Statutory damages for all underlying disclosure violations;

d.     If appropriate, statutory damages for failure to rescind after notice was sent;

e.     Attorney's fees, litigation expenses and costs;

f.     Such other or further relief as the Court deems appropriate.

11

## COUNT II - COMMON LAW FRAUD

54.     Plaintiffs incorporate ¶¶ 1-42 above.  This claim is against Ameriquest.

55.     Defendant represented to plaintiff, based upon what they reported was the existing value of her home, that she qualified for a certain loan amount.  Ameriquest charged her points and fees and other interest based upon the loan amount supported by its appraised value.

56.     These representations were a material term of defendant's transaction with plaintiff.

57.     Defendant's representations were false and fraudulent because they were based upon a materially false representation of the value of plaintiff's home.

58.     Defendant made these representations intentionally, with knowledge and/or reckless ignorance of its falsity.

59.     Alternatively, defendant's conduct was willful.

60.     Defendant's representations caused plaintiff to rely on the misrepresentations to her detriment.

61.     Plaintiff's reliance was justifiable.

62.     Substantial punitive damages are warranted.

WHEREFORE, plaintiff requests that the Court enter judgment in her favor and against defendants for:

        a.     actual and compensatory damages;

        b.     punitive damages; and

        c.     Such other or further relief as the Court deems appropriate.

## COUNT III- BREACH OF CONTRACT

63.     Plaintiff incorporates paragraphs 1-42. This claim is against Ameriquest.

64.     In connection with the August 6, 2004 loan, defendant Ameriquest contracted and undertook to provide a discounted interest rate if plaintiff paid a loan discount fee. Exhibit X.

65.     Plaintiff paid a $124.87 "loan discount" fee (Exhibit C, line 802, and Exhibit F, line 802) but did not receive a discounted rate.

66.     Ameriquest thereby breached its agreement.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendant for:

        a.      Appropriate damages;

        b.      Costs;

        c.      Such other or further relief as the Court deems appropriate.

## COUNT IV- BREACH OF CONTRACT

67.     Plaintiff incorporates paragraphs 1-42. This claim is against Ameriquest.

68.     In connection with the February 3, 2005 loan, defendant Ameriquest contracted and undertook to provide a discounted interest rate if plaintiff paid a loan discount fee. Exhibit Y.

69.     Plaintiff paid a $694.08 "loan discount" fee (Exhibit S, line 802) but did not receive a discounted rate.

70.     Ameriquest thereby breached its agreement.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff

and against defendant for:

> a.      Appropriate damages;
>
> b.      Costs;
>
> c.      Such other or further relief as the Court deems appropriate.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **JURY DEMAND**

Plaintiff demands trial by jury.

s/ Daniel A. Edelman
Daniel A. Edelman

14

## CERTIFICATE OF SERVICE

       I, Daniel A. Edelman, hereby certify that on September 3, 2009, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that true and correct copies were additionally sent via email or by U.S. Mail to those parties without email addresses.

Kenneth R. Nowakowski
knowakowski@whdlaw.com

Bernard E. LeSage
blesage@buchalter.com

Edward J. Heiser, Jr.
Whyte Hirschboeck Dudek SC
555 East Wells Street
Suite 1900
Milwaukee, WI 53202-3819

American Home Mortgage Servicing, Inc.
c/o Registered Agent
C.T. Corporation System
208 S. LaSalle St.
Suite 814
Chicago, IL 60604

                                            s/ Daniel A. Edelman
                                            Daniel A. Edelman