**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION<br><br>―――――――――――――――――――――――<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen) |

**OPPOSITION TO MOTION TO DISMISS FIFTH AMENDED CONSOLIDATED
THIRD-PARTY COMPLAINT**

**I.     INTRODUCTION**

Just over two years ago, Ameriquest and Argent (the "Third-Party Plaintiffs") filed a consolidated Third-Party Complaint, asserting claims against a variety of Third-Party Defendants who are responsible for much of the conduct alleged in the individual Opt-Out cases. Among the named Third-Party Defendants are agents hired to close loans, independent mortgage brokers who sold Argent loans, and insurance companies which provided title insurance and additional security to the Third-Party Plaintiffs via the issuance of "Closing Protection Letters."[1]

Since the original Third-Party Complaint was filed, Third-Party Plaintiffs sought, and were granted, leave to amend several times in order to add or correctly identify third parties, such that the operative pleading is now the Fifth Amended Third-Party Complaint (the "FATPC"). In the interim, the Third-Party Defendants filed a motion to dismiss, which was ruled on by the Court on October 14, 2008.[2] In a detailed order (Docket No. 2455), the Court held that Third-Party Plaintiffs had properly stated a claim for breach of contract, but could not maintain their claims for equitable indemnity and contribution. The Court also granted the motion to dismiss

---

[1] The majority of the Opt-Out Cases contain a claim for rescission based on an alleged deficiency in the Notice of Right to Cancel forms which were provided to the borrowers at the closing. The Third-Party Plaintiffs deny that the NORTC's were defective. However, in the event that a trier of fact determines otherwise, the responsibility for this lies with the Third-Party Defendants, who either performed the closing, hired the closing agent, or insured that the closing would be done properly, and in compliance with state and federal law.

[2] For convenience of reference, a copy of the October 14, 2008 Order is attached as Exhibit A to this Opposition.

with respect to the claims for negligence, without prejudice. Third-Party Plaintiffs promptly amended their pleading to conform to the requirements of the Court's order, and to add new parties based primarily on cases which have recently been transferred to the MDL.

The Third-Party Defendants have now filed another Motion to Dismiss, raising many of the very same issues with respect to the FATPC. As set forth in detail below, in light of the allegations in the FATPC, the applicable law, and the earlier orders issued by this Court, the motion to dismiss must be denied. Specifically:

- Third-Party Defendants argue that the Supreme Court's recent decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) supports a dismissal of the claims for breach of contract in the FATPC. In fact, the Court already ruled on this issue, and held that the Third-Party Plaintiffs have adequately stated a claim for breach of contract. The Court applied the correct legal standard in its earlier Order; this standard is unchanged by the *Iqbal* ruling.

- Third-Party Defendants argue that there can be no claim for negligence because the FATPC fails to allege the existence of any "extra-contractual duties." In fact, the FATPC contains detailed allegations which demonstrate that the Third-Party Defendants held themselves out as having a particular expertise in closing loans in compliance with federal and state law, and that the Third-Party Plaintiffs justifiably relied on this apparent expertise, to their detriment.

- Third-Party Defendants argue that the claims for negligence and negligent misrepresentation in the FATPC are barred by the economic loss doctrine. Yet where, as here, the defendants were "suppliers of commercial information," the economic loss doctrine is inapplicable. In any event, this issue is not properly resolved on a motion to dismiss, because it requires a case-by-case analysis of the applicable facts and the law in at least 24 different states.

The Third-Party Defendants have spent more than two years contesting the pleadings in this case. It is time for the parties to move on to discovery, mediation, and other pretrial matters. Accordingly, the Third-Party Plaintiffs respectfully request that the Court deny the Motion to Dismiss, and order the Third-Party Defendants to answer the FATPC forthwith.

## II. THE FATPC STATES CLAIMS FOR BREACH OF CONTRACT

Third-Party Defendants' lead argument is that the FATPC fails to state a claim for breach of contract under the, allegedly, heightened federal pleading standard set forth by the Supreme Court in the recent case of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

In fact, this is little more than an improper motion for reconsideration, as the Court has already considered, *and denied*, Third-Party Defendants' motion to dismiss with respect to claims for breach of contract. The Court's October 14, 2008 Order [Docket No. 2455] contains a detailed discussion of the very same arguments which the Third-Party Defendants are making, once again, in the instant motion: (i) that the applicable contracts are not described with enough detail; (ii) that the allegations regarding the breach of contract are "conclusory;" and (iii) that FRCP, Rule 8 requires a more detailed description of the alleged involvement by the Third-Party Defendants, and the conduct underlying the breach. The Court's conclusion, after considering the applicable law and the allegations in the Third-Party Complaint was as follows:

> The allegations of the Third-Party Complaint are sufficient to give Third-Party Defendants fair notice of the contract actions against them and enable them to conduct meaningful investigations into such claims and possible defenses. *Twombly*, 127 S. Ct. at 1964 (requiring only that the complaint set out enough detail to give defendant "fair notice" of a plausible claim). Accordingly, we deny Third-Party Defendants' motion with respect to the contract claims.

October 18, 2008 Order at pp. 6-7. As discussed below, the applicable law in this matter has not changed since the Supreme Court's decision in *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007). Moreover, the claims for breach of contract in the FATPC are pled with the same degree of specificity as the claims for breach of contract in the Second Amended Third-Party Complaint, which was the subject of the Court's October 14, 2008 Order. Accordingly, the Third-Party Defendants are, in essence, asking the Court to reconsider its earlier Order absent any new facts or law. Under these circumstances, motions for reconsideration are routinely denied by courts in

the Northern District of Illinois. *See e.g., Jose Luis R. v. Joliet Twp. High Sch. Dist. 204*, 2002 U.S. Dist. LEXIS 19631, *2 (N.D. Ill 2002) ("Motions to reconsider are not at the disposal of parties who want to rehash old arguments"); *Sullivan v. William A. Randolph, Inc.*, 2006 U.S. Dist. LEXIS 2385, * 10 (N.D. Ill 2006) (Denying motion for reconsideration where "Plaintiffs have not even ventured to allege that the court's supposed error was a manifest error of law"); *Rosenthal v. Barnhart*, 2005 U.S. Dist. LEXIS 443, *3 (N.D. Ill 2005) (holding that "motions for reconsideration are reserved for presenting new evidence or arguments or arguing that the court committed a manifest error of law").

Third-Party Defendants' reliance on the holding in *Iqbal* as new law, which would justify a different conclusion than the one already reached by the Court in its October 14, 2008 Order, is misplaced. The principal holding in *Iqbal* was that the pleading standard set forth in *Twombly* applies to "all civil actions" brought in federal court, not merely to antitrust cases. *Iqbal*, 129 S. Ct. at 1953.[3]

Had the Court in the instant case applied a standard at odds with the holding in *Twombly* in ruling on the original motion to dismiss, the *Iqbal* decision may well have justified a fresh look at this issue. However, in its October 14, 2008 Order, this Court correctly applied *Twombly* and, in fact, expressly cited the *Twombly* case five times. *See* October 14, 2008 Order at pp. 3, 4, 5 and 7. In particular, this Court acknowledged the core holding in *Twombly*, that a motion to dismiss under Rule 12(b)(6) may be granted if a complaint "lacks enough facts to state a claim to relief that is plausible on its face." October 14, 2008 Order, p. 3, *citing* Twombly, 127 S. Ct. at 1974. Applying this standard, the Court considered the allegations underlying the Third-Party Plaintiffs' breach of contract claims, and ruled that the allegations were sufficient because the Third-Party Complaint had "enough detail to give defendant 'fair notice' of a plausible claim." October 14, 2008 Order, p. 7, *citing* Twombly, 127 S. Ct. at 1964. Thus, the Court properly

---

[3] The *Twombly* standard, reiterated in *Iqbal*, is as follows: "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a clam to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

denied the motion to dismiss, with respect to the breach of contract claims.

The Court applied the proper legal standard in its original Order, and the holding in *Iqbal* does not provide a basis to change the Court's conclusion. Accordingly, the Third-Party Defendants' motion to dismiss the breach of contract claims should, once again, be denied.

**III.     THE FATPC PROPERLY ALLEGES CLAIMS AGAINST THE TITLE UNDERWRITERS**

Third-Party Defendants argue that the claims asserted against the "Title Underwriters" in the FATPC should be dismissed because (1) these are new claims which were not contained in prior versions of the Third-Party Complaint; and (2) the FATPC, allegedly, lacks sufficient allegations to establish "what contractual duties the title underwrites owe to the Third-Party Plaintiffs." Motion at pp. 6-7. These arguments are flawed.

The Third-Party Plaintiffs previously alleged claims against certain Title Underwriters in the First Amended Third-Party Complaint as well as the Second Amended Third-Party Complaint—the same version which, the Court held in its October 14, 2008 Order, properly stated a claim for breach of contract. *See e.g.*, Second Amended Third-Party Complaint at ¶ 3. These claims were premised on the existence of "Closing Protection Letters" which were issued from the named Title Underwriters to Third-Party Plaintiffs. *Id.* at ¶ 15. The Third-Party Plaintiffs have named significantly more "Title Underwriters" as defendants in the FATPC than in previous versions Third-Party Complaint because: (1) dozens of new cases have been added to this MDL proceeding since the filing of the Second Amended Third-Party Complaint (February 11, 2008), thus giving rise to more third-party claims; and (2) Ameriquest and Argent have located additional documents, including Closing Protection Letters, which properly serve as the basis for claims against additional Title Underwriters.[4] Given that the Court has already held that the Third-Party Complaint properly states a claim against the Title Underwriters, the mere fact that a *greater number* of Title Underwriters are named in the FATPC is not a basis for a

---

[4] While the Title Underwriters lament the fact that they are being named in several hundred cases, the fact is that these same companies issued title policies and Closing Protection Letters covering *several thousand* Ameriquest and Argent loans.

motion to dismiss.

The FATPC also contains more than enough detail to support claims against the Title Underwriters. Specifically, Third-Party Defendants allege that:

> The Title Defendants also issued "Closing Protection Letters", among other documents, whereby the Title Underwriters agreed to reimburse the lenders for actual loss incurred by the lenders in connection with the closings conducted by the Closing Agents and/or Title Companies including the failure of the Closing Agent and/or Title Companies to comply with the lender's written closing instructions, as well as acts of fraud or dishonesty by the Closing Agent and/or Title Companies in the handling of the lender's funds or documents in connection with a closing.
>
> The Title Underwriters also issued final title policies whereby the Title Underwriters insure the validity and lien priority of the mortgages provided to Ameriquest, Town & Country and Argent.

FATPC, at ¶¶ 11-12. In their moving papers, the Third-Party Defendants argue that the allegations in the FATPC are insufficient to state a claim because some of the named Title Underwriters were not involved in the actual closing of the loans in question. Motion at p. 7. This fact, even if true, would not absolve the Title Underwriters of liability. As the above-quoted allegations make clear, the Title Underwriters specifically warranted that the closing would be handled properly and, in exchange for a fee, assumed responsibility for any alleged deficiencies that might occur in the closing. This is a regular practice in the title insurance industry, and Closing Protection Letters, such as the ones at issue here, have consistently been held enforceable by courts nationwide. *See e.g.*, *Lawyers Title Insurance Corporation v. New Freedom Mortgage Corporation*, 288 Ga. App. 642 (Georgia 2007) (affirming judgment in favor of mortgage lender against title company which issued closing protection letter); *Wall St. Mortg. Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, 2008 U.S. Dist. LEXIS 40855, *15 (E.D.

Mich. 2008) (holding that closing protection letters are "an integral part of the title insurance business" and "a fiduciary duty necessarily arises as a result of the closing protection letter"). [5]

Third-Party Defendants also argue that the FATPC does not contain enough detail about the alleged contracts as between the Third-Party Plaintiffs and the Title Underwriters. In fact, this claim is plead with the exact same specificity as the other breach of contract claims alleged by the Third-Party Plaintiffs—a level of specificity that the Court has already held to be acceptable. Moreover, pursuant to the parties' stipulation, Third-Party Plaintiffs are in the process of producing copies of the Closing Instructions, Closing Protection Letters and related documents to those Third-Party Defendants who so request them. Accordingly, the argument that the Title Underwriters lack sufficient information to be adequately apprised of the claims against them is wholly without merit.[6]

## IV. THE FATPC PROPERLY PLEADS A CLAIM FOR NEGLIGENCE

The Third-Party Defendants contend that the claim for negligence fails because the FATPC contains only vague allegations regarding industry standards, and that such allegations fail to establish an extra-contractual duty. A simple review of the FATPC shows that this argument is wrong, and that the allegations in the FATPC are more than sufficient to put the Third-Party Defendants on notice of the negligence claim, as required by FRCP, Rule 8.

The FATPC alleges various general duties assumed and/or owed by the Title Defendants to the Third-Party Plaintiffs. These include:

- Supervising all aspects of the escrow, title and closing (*Id.* at ¶ 17)

---

[5] *See also*, *Netbank v. Williams*, 2007 U.S. Dist. LEXIS 61904 (E.D. Mo. 2007) (denying motion to dismiss where the complaint alleged that certain closing protection letters required the title company to reimburse the lender for losses incurred in connection with the closings); *GE Mortg. Servs., LLC v. Lawyers Title Ins. Corp.*, 2006 U.S. Dist. LEXIS 15111, *4 (N.D. Ga. 2006) (denying motion to dismiss, and holding that "an actual controversy exists between the parties as to whether LTIC must indemnify GEMS pursuant to the terms of a closing protection letter").

[6] Third-Party Defendants' argument that they cannot identify the contracts between the Title Underwriters and the Third-Party Plaintiffs is curious given their argument, elsewhere in the Motion to Dismiss, that the economic loss rule bars any claim for negligence. The economic loss rule is applicable only where the relationship between the plaintiff and defendant is governed *by a contract*. It is simply not credible for the Third-Party Defendants to argue, on the one hand, that they are aware of no contract and, on the other hand, that claims for negligence are barred by the economic loss rule.

- Communicating knowledge of material facts which might materially affect Third-Party Plaintiffs' interest in the transactions (*Id.*)

- Disclosing whether the transaction was in compliance with all written and oral instructions (*Id.*)

- Exercising care in procuring and providing material information; and

- Acting in accordance with industry standards as closing agents for the loans (*Id.* at ¶ 30)

As for the Broker Defendants, the Third-Party Plaintiffs specifically allege that these defendants owed a duty to provide:

- Truthful and accurate information related to the borrowers' loan applications and eligibility (*Id.* at ¶ 22)

- proper handling of the closing of plaintiffs' loan, by, *inter alia,* not omitting any material facts related to plaintiffs' loan application and eligibility for the loan and verifying that loan closing documents were accurate and truthful (*Id.*)

- services and act in accordance with standards of care applicable to professionals providing mortgage loan brokerage services in connection with the negotiation, preparation of materials and closing of the loans (*Id.* at ¶¶ 67-68).

These allegations are more than sufficient to support a claim that the Title Defendants and Broker Defendants owed duties to close the loans in accordance with the ordinary skill and standard of care applicable to their professions outside of any contractual relationship between the parties. Indeed, even if there were no written contracts between the parties, the Third-Party Defendants who are the lawyers, title companies, escrow companies and/or mortgage brokers who were hired to close the loans or broker the loans, and whose business it was to perform such services, would have to perform those services within the standard of care for that industry.[7] More specific, individual allegations would be impractical given that the Court ordered the Third-Party Plaintiffs to file one consolidated complaint against all of the Third-Party Defendants. *See* March 16, 2007 Order (Docket No. 615); *Choi v. Chase Manhattan Mortgage*

---

[7] In addition, courts have held that a breach of a contractual duty supports a negligence claim against professionals such as a title company and an escrow holder. *See e.g., Common Wealth Ins. Systems, Inc. v. Kersten*, 40 Cal.App.3d 1014, 1030-31 (1974) (escrow company); *Banville v. Schmidt*, 37 Cal.App.3d 92, 106 (1974) (title company/escrow company).

*Co.*, 63 F.Supp.2d 874, 889 (N.D. Ill. 1999) (holding that plaintiff properly pled a claim in tort for damages arising from defendants' alleged mismanagement of a mortgage escrow account).

## V. THE ECONOMIC LOSS RULE DOES NOT BAR THIRD-PARTY PLAINTIFFS' NEGLIGENCE CLAIMS

Citing only to Illinois law, the Third-Party Defendants incorrectly claim that the economic loss doctrine bars any claim for negligence because there is no extra-contractual relationship, and the Third-Party Plaintiffs, allegedly, have only suffered economic loss. This argument is an oversimplification. When properly analyzed, it is clear that the economic loss doctrine does not bar the negligence claims against the Third-Party Defendants.

First, even Illinois law recognizes an exception to the economic loss rule for professional negligence claims against attorneys and accountants. *Brogan v. Mitchell Int'l, Inc.,* 181 Ill.2d 178, 183-84 (1998); *Congregation of the Passion v. Touche Ross & Co.*, 159 Ill.2d 137, 163-65 (1994) (declining to apply the economic loss rule in the context of an accountant malpractice case because an accountant owes the extra-contractual duty to observe reasonable professional competence independently of any contract, and analogizing the accountant-client relationship to the attorney-client relationship). In fact, the Third-Party Defendants expressly concede the existence of the professional negligence exception for attorneys and accountants. *See* Motion at p. 10 citing to *Bank One v. Trammell Crow Servs.* 2003 U.S. Dist. LEXIS 23120 at *11-12 (N.D. Ill. 2003). Since many of the Third-Party Defendants named in this action are attorneys whose practice it is to close loan transactions, at a minimum the negligence claims against such attorneys cannot be dismissed by virtue of the economic loss rule.

Moreover, as plead in the FATPC, the professional title companies, escrow companies and mortgage brokers who close these loans should also be held to a professional, industry standard of care in performing this function, just like the attorneys who do so. Even the Northern District of Illinois has observed that a persuasive analogical argument can be made that a defendant's professional escrow services are more like "wise counsel" (*i.e.* attorneys) than a product such as a blueprint created by an architect or engineer because they require expertise and

judgment. *Choi v. Chase Manhattan Mortgage Co.*, 63 F.Supp.2d 874, 890 (N.D. Ill. 1999) (holding that the "perimeter of the economic loss doctrine is particularly fuzzy when it comes to claims against defendants who provide professional financial services").

Second, the Third-Party Defendants oversimplify by failing to analyze other states' law regarding the economic loss rule. *See* Motion, pp. 8-9. Illinois substantive law cannot be applied to each and every Opt-Out case. This Court, as the transferee Court in an MDL proceeding, should apply a choice of law analysis which in this case may lead to the result that the substantive law of each transferor state should apply to each individual case. *See In re Air Crash Near Peixoto de Azeveda,* Brazil, 574 F.Supp.2d 272, 289 (E.D.N.Y. 2008) ("In multi-district litigations, the transferee court applies the substantive state law, including the choice of law rules, of the transferor forum).[8]

Other states have held that defendants similar to the type of defendants involved here (*e.g.* attorneys, title/escrow companies and mortgage brokers) can be held liable for professional negligence in loan closings. At a minimum, other state courts have held that title companies, escrow companies and mortgage brokers are held to the same standard as an attorney in preparing deeds of trust, mortgages and other loan closing documents. Where these defendants are held to the same standard as an attorney in closing loan transactions, it follows that they, like attorneys, should fall into the professional negligence exception to the economic loss rule.

While a survey of the economic loss rule in all 50 states in not possible in this Opposition, the following examples are illustrative. In *North Carolina Federal Savings and Loan Ass'n v. Ray*, 95 N.C.App. 317, 321 (1989), the North Carolina Court of Appeals affirmed the trial court's legal conclusion that an attorney was professionally negligent in closing a

---

[8] *See also*, *In re Prempro Products Liability Litigation,* 2008 U.S. Dist. LEXIS 29201 at *13 (E.D. Ark. 2008) (in case transferred from Illinois, Court applied the state choice of law rules of the transferor court to determine which substantive liability law should apply); *In re Live Concert Antitrust Litigation,* 247 F.R.D. 98, 103 (C.D. Cal. 2007) ( ". . . in diversity cases, the law of the transferor district follows the case to the transferee district. Where the claim or defense arises under federal law . . . the transferee judge should consider whether to apply the law of the transferee circuit or that of the transferor court's circuit); *In re Wal-Mart Wage and Hour Employment Practices Litigation*, 490 F.Supp.2d 1091, 1101 (2007) (where the central question is a substantive question of state law, the transferee court in multi-district litigation applies the law of the state in which the transferor court sits).

construction loan for the savings association. In *Allen v. Webb*, 87 Nev. 261, 268 (1971), the Court held that under Nevada law, an escrow agent who prepared documents owed a duty to record the documents or advise the owners when they failed to do so. And in *Andersen v. Northwest Bonded Escrows, Inc.*, 4 Wash.App. 754, 757 (1971) the Court held that the preparation of a promissory note, warranty deed, mortgage and escrow instructions constituted the practice of law, reasoning that an escrow company's actions cannot be differentiated from those which would have been rendered in a law office by a practicing attorney.

Still other states are unwilling to apply the economic loss doctrine such that it abrogates all professional negligence claims, especially at the pleading stage. *See, e.g. Jackowski v. Borchelt*, 209 P. 3d 514, 520 (Wash.App. Div. 2 2009) (In a case involving the negligence of a real estate broker, the court stated "we are not willing . . . to preclude all recovery for economic loss against professional agents, as to do so would be to abrogate professional malpractice claims for all cases not involving physical harm"); *Moransais v. Heathman*, 744 So.2d 973, 983-84 (Fla. 1999) (holding that the economic loss rule does not bar a cause of action against a professional for his or her negligence even though the damages are purely economic in nature).

Based upon the foregoing, this Court cannot dismiss the negligence claims against the attorney defendants since they fall under the professional negligence exception to the economic loss rule. Further, this Court should not dismiss the negligence claims against the title companies, escrow companies and mortgage brokers given that precedent from this district has found that these defendants may be held to the same standard of care as an attorney closing loans. This is especially true since states differ in how they apply the economic loss rule to professionals and professional negligence.

VI. **THE ECONOMIC LOSS DOCTRINE DOES NOT BAR THIRD-PARTY PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIMS**

Contrary to the Third-Party Defendants' assertions, the economic loss rule does not bar the negligent misrepresentation claims because Third-Party Plaintiffs have sufficiently plead facts to establish that the supplier of commercial information exception applies here. Again,

Third-Party Defendants attempt to oversimplify the analysis by citing only to Illinois case law. However, as shown below, even under Illinois case law, the FATPC pleads sufficient facts, at least at the pleading stage, to establish that the Third-Party Defendants fall under the supplier of commercial information exception to the economic loss rule.

### A. Even Under Illinois Law the Negligent Misrepresentation Claim Survives

In Illinois, negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in business transactions is an exception to the economic loss rule. *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 88 (1982); *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill.App.3d 18, 24 (1999). Under Illinois law, to state a claim based upon the negligent misrepresentation exception to the economic loss rule, the plaintiff must plead facts that (1) defendant is in the business of supplying information for the guidance of others in their business dealings; (2) defendant provided information that constitutes a misrepresentation; and (3) defendant supplied the information for guidance in the plaintiff's business dealings. *Tolan*, 308 Ill.App.3d at 27. In determining whether this exception applies, "courts must undertake a 'precise, case-specific inquiry.'" *Id.*

The Motion inexplicably fails to discuss the Illinois Supreme Court's test for determining whether a defendant is in the business of supplying information for the guidance of others in their business transactions, and simply makes the blanket statement that "it is clear that the Third-Party Defendants are not in the business of 'supplying information' for the guidance of Third-Party Plaintiffs." [Motion, p. 10]. The Illinois test for determining whether a defendant is in the business of supplying information for the guidance of others is whether the end product of the relationship between plaintiff and defendant is a tangible object which could be readily described in a contract or whether it is intangible. If the intended result of the plaintiff-defendant relationship is for the defendant to create a product, a tangible thing, then the defendant will not fit into the "business of supplying information' negligent misrepresentation exception." *MW Mftr, Inc. v. Friedman Corp.*, 1998 U.S. Dist. LEXIS 11309 at *12 (N.D. Ill. 1998).

Applying this standard to the case at bar, it is clear that (1) the Third-Party Defendants are suppliers of commercial information for the guidance of others such as the Third-Party Plaintiffs; and (2) in the course of their dealings with Third-Party Plaintiffs', the Third-Party Defendants made misrepresentations upon which the Third-Party Plaintiffs' relied to their detriment. Accordingly, the negligent misrepresentation claim is proper.

**B.      Under Illinois Law, the Economic Loss Rule Does Not Bar the Negligent Misrepresentation Claims against the Mortgage Broker and Attorney Third-Party Defendants**

The United States District Court for the Northern District of Illinois has already held that the economic loss rule does *not* bar a negligent misrepresentation claim against a mortgage broker. *See Ivanhoe Financial, Inc. v. Highland Banc Corp*, 2004 U.S. Dist. LEXIS 2966, * 15 (N.D. Ill. 2004). Similarly, the Illinois Supreme Court has held that for attorneys and accountants, the economic loss rule does not bar a negligent misrepresentation claim. *See Congreg. of the Passion v. Touche Ross & Company* 159 Ill.3d 137, 163-165 (1994).

Illinois courts have described the analysis of whether a defendant is a supplier of commercial information for the guidance of others as a continuum, with pure information providers such as accountants, attorneys, mortgage brokers, insurance brokers, stockbrokers, real estate brokers, and termite inspectors at the intangible end, and manufacturers of computers and software, manufacturers of product of any type at the tangible end. *Tolan,* 308 Ill.App.3d at 28 29. For information providers, the "product provided" includes information about the financial market or financial advice. The value of the services lies in the analytical work. *Id.*

Under this test, the title companies and escrow companies who were engaged to close loans for Ameriquest fall within the "supplier of information for the guidance of others" exception to the economic loss rule. Each of these defendants were engaged to provide financial services in the form of closing loans and providing Third-Party Plaintiffs with information and advice (upon which Third-Party Plaintiffs relied) regarding whether these loans were procedurally proper and should be funded. Like the services provided by the mortgage broker in *Ivanhoe Financial* and the attorneys discussed in *Congregation of the Passion*, these services are

not "tangible." Rather, they fall along the continuum of enterprises far closer to "pure information providers." Indeed, according to the facts alleged in the FATPC, the title companies and escrow companies provided the same services as the mortgage brokers and attorneys. As such, the negligent misrepresentation exception to the economic loss rule applies.

C. **The Issue of Whether the Economic Loss Rule Applies Should Not Be Decided at the Pleading Stage**

As regards the title companies and escrow companies, to the extent the Court is unsure whether the supplier of commercial information exception applies, the Court should defer that decision until later in the case. For example, in the *Dahm* case (which the Third-Party Defendants cite in their Motion) the Northern District of Illinois held that the inquiry into whether a defendant falls into the negligent misrepresentation exception to the economic loss rule "generally requires further factual development than is available at the [Rule 12(b)(6) motion] stage." *Dahm v. First American Title Insur. Co.,* 2008 U.S. Dist. LEXIS 28836 at *9 (N.D. Ill. 2008).[9] The need for a case-by-case inquiry is particularly evident in the instant MDL proceeding, which involves hundreds of Third-Party Defendants from 24 different states.

D. **States Interpret the Economic Loss Rule Differently**

As discussed above, this Court will likely have to apply the substantive law of the transferor state to determine whether the economic loss rule applies in each case and circumstance at issue in this MDL Opt-Out proceeding. Other than mentioning in Exhibit "A" to the Motion that various states have the economic loss rule, Third-Party Defendants fail to discuss whether all states have the same analysis and standards as Illinois law.

In fact, states do not universally follow Illinois law in applying the economic loss rule and the exceptions thereto. For example, Florida also has a negligent misrepresentation

---

[9] *See also*, *Dvore v. Casmay*, 2008 WL 4427467 at *6 (N.D. Ill. 2008) (". . . the resolution of the legal question in each case (i.e. whether the supplier of commercial information exception applies) frequently will turn on circumstances that are peculiar to that case."); *Bank One, Oklahoma, N.A. v. Trammell Crow Svcs., Inc.* 2003 WL 23019173 at *4 (N.D. Ill. 2003) (the determination of whether the exception applies requires "a precise, case-specific inquiry."); *Tolan and Son, Inc. v. KLLM Architects, Inc.* (1999) 308 Ill.App.3d 18, 29 (it is "particularly critical to scrutinize the precise information and transaction involved in each case" when deciding whether the negligent misrepresentation exception applies to the economic loss rule in any given set of circumstances).

exception to the economic loss rule, and has stated that the economic loss rule was "never intended to bar well-established common law causes of action, such as those for neglect in providing professional services." *Moransais v. Heathman,* 744 So.2d 973, 983 (Fla. 1999). Rather, the rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts. *Id.* In other states, courts focus not on whether the defendant was in the business of providing information for the guidance of others, but rather on whether the plaintiff and defendant are in privity of contract.[10] Thus, even if Third-Party Defendants were correct that Illinois law bars the negligent misrepresentation claims (and, as explained above, they are not), this result does not follow in every jurisdiction.

## VII. CONCLUSION

For the reasons set forth above, Third-Party Plaintiffs respectfully request that the Court deny the Motion, and order the Third-Party Defendants to answer the FATPC forthwith.

DATED: September 4, 2009

Respectfully submitted,

By: /s/ Thomas J. Wiegand

*Attorneys for Argent Mortgage Company LLC*

Thomas J. Wiegand
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

By: /s/ Bernard E. LeSage

*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; and Ameriquest Mortgage Securities, Inc.*

Bernard E. LeSage, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

---

[10] *See e.g. Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir. 1995); *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 480 (9th Cir. 1995) (applying Arizona law); *Bailey Farms, Inc. v. Nor-Am Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994) (applying Michigan law); *South Carolina Elec. & Gas Co. v. Westinghouse Elec. Corp.*, 826 F.Supp. 1549, 1557 (D.S.C. 1993) (applying North Carolina law): *Malta Constr. Co. v. Henningson, Durham & Richardson, Inc.*, 694 F.Supp. 902, 906 (N.D. Ga. 1988).

BN 4353736v2                                   15

## **CERTIFICATE OF SERVICE**

      I, Bernard E. LeSage, hereby certify that on this 4th day of September 2009, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                                           By: /s/  Bernard E. LeSage