# EXHIBIT N

Jun 19 05 03:19a     SARAH CHUMELY                    248 945 7105              P.29

# MORTGAGE

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated April 23, 2004                    ,
together with all Riders to this document.
(B) "Borrower" is Sarah Chaumley

Borrower's address is 19461 GOLDWIN ST, SOUTHFIELD,MI 48075
. Borrower is the mortgagor under this Security Instrument.

MICHIGAN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3023 1/01
0078232485 - 5536

04/29/2004 12:33:08

AM6MI (0310)

Page 1 of 16                    Initials: _____

VMP Mortgage Solutions (800)521-7291

000000: E232485030134170 1

(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware
Lender's address is 1100 Town and Country Road, Suite 200  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated April 29, 2004
The Note states that Borrower owes Lender one hundred fifty-five thousand seven
hundred and 00/100                                                                    Dollars
(U.S. $ 155,700.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than June 1, 2034
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:_____

AM6MI (0310)                                    Page 2 of 16                                    Form 3023 1/01

0078232485 - 5536

04/29/2004 12:33:08



000000782324850301341702

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

AM6MI (0310)  Page 4 of 16  Initials: _____  Form 3023 1/01

0078232485 - 5536

04/29/2004  12:33:08



00000078232485030134170400

for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

0078232485 - 5536

04/29/2004 12:33:08



0000007823248503013417705

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and

Initials: _____

0078232485 · 5536

04/29/2004  12:33:08



0000007823248503011341706

Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Initials:_____

0078232485 - 5536

04/29/2004 12:33:08



0000078232485030131417707

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward

Initials:_____

0078232485 - 5536

04/29/2004  12:33:08



0000007823248503013417708

the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreement will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Initials: _____

AM6MI (0310)          Page 9 of 16          Form 3023 1/01

0078232485 -5536

04/29/2004 12:33:08


0000007823485030134709

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Initials:_____

AM6MI (0310)                    Page 10 of 16                    Form 3023 1/01

0078232485 - 5536

04/29/2004  12:33:08



**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

AM6MI (0310)                         Page 11 of 16                         Form 3023 1/01

0078232485 - 5536

04/29/2004  12:33:08


0000007823248503013417 11

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,



00000078232485030013417712

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous

Initials:_____

0078232485 -5536

04/29/2004  12:33:08


0000007823248503013417 13

Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

Initials: _____

AM6MI (0310)          Page 14 of 16          Form 3023 1/01

0078232485 - 5536

04/29/2004  12:33:08



0000007823248503013417I4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                Sarah Chaumley                 -Borrower


_____          _____ (Seal)
                                                                               -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower


AM6MI (0310)                          Page 15 of 16                    Form 3023 1/01

0078232485-5536

04/29/2004 12:33:08



0000007823248503013417I5

**STATE OF MICHIGAN,**                    County ss:

Acknowledged before me in _____ County,
Michigan, on _____ _____ by
 _____ Day/Month/Year

_____ _____

_____ _____

_____ _____

_____

Notary Public, State of Michgan,
County of
My Commission Expires
Acting in the County of

This instrument was prepared By:

    Ameriquest Mortgage Company

    Jennifer Yang

    28400 Northwestern Hwy., # 105, Southfield, MI 48034



0000007823248503013417 16

400-16MI (12/03)          Page 16 of 18          0078232485 - 5536

04/29/2004 12:33:08 PM

BORROWER NAME:

LOAN NUMBER:  0078232485 - 5536

## LEGAL DESCRIPTION

00000078232485030134 1717

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 29th day of April , 2004   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

19461 GOLDWIN ST, SOUTHFIELD, MI 48075
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  7.600 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
  **(A) Change Dates**
The interest rate I will pay may change on the first day of  June, 2006  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

  **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number: 0078232485 - 5536



**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.600% or less than 7.600%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( 1.000 %) from the rate of interest I have been paying for the preceding  six months. My interest rate will never be greater than 13.600)% or less than 7.600)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number:  0078232485 - 5536



0000007 82324850302150302

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)  _____ (Seal)
Borrower Sarah Chaumley                  Borrower


_____ (Seal)  _____ (Seal)
Borrower                                 Borrower


Loan Number:  0078232485 - 5536



0000007823248503021503 03

04/29/2004 12:33:08 PM

610-3 (Rev 1/01)

# EXHIBIT O

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491

WLI

| Name & Address of Borrower: | Name & Address of Lender: |
|---|---|
| Sarah Cheasley | Ameriquest Mortgage Company |
| | 28400 Northwestern Hwy., # 105 |
| 19461 GOLDWIN ST   SOUTHFIELD, MI 48075 | Southfield, MI 48034 |
| Property Location: (if different from above) | Settlement Agent: NORTHWEST TITLE & ESCROW CORP. |
| 19461 GOLDWIN ST, SOUTHFIELD, MI 48075 | Place of Settlement: 4255 WHITE BEAR PARKWAY, #1300A  SAINT PAUL, MN 55110 |

| L.  Settlement Charges | | | Loan Number: 0078232485 - 5536 | | Settlement Date: Estimated 05/05/2004 |
|---|---|---|---|---|---|
| 800. Items Payable in Connection with Loan | | | M.  Disbursement to Others | | |
| 801. Loan origination fee     % to | | | | | |
| 802. Loan discount  3.814 % to  Ameriquest Mortgage Company | $5,938.40 | | 1501. CAPITAL ONE BANK | (W) | $942.00 |
| 803. Apprsl/Prop Val to Reimbursed to Lender | $350.00 | | 1502. HHLD BANK | (W) | $1,513.00 |
| 804. Credit report to | | | 1503. CAPITAL ONE BANK | (W) | $503.00 |
| 805. Inspection fee to | | | 1504. WASHINGTON MUTUAL BA | (W) | $123,696.38 |
| 806. | | | | | |
| 807. | | | 1505. G M A C | (W) | $12,603.00 |
| 808. Yield Spread Premium to | | | 1506. AMERICREDIT | (W) | $3,281.00 |
| 809. | | | 1507. DIRECT MERCHANTS BAN | (W) | $1,709.00 |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | $70.00 | | 1508. CAPITAL ONE BANK | (W) | $538.00 |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | | 1509. | | |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $626.00 | | | | |
| 813. Admin to Ameriquest Mortgage Company | $239.00 | | 1510. | | |
| 814. Doc. Prep. Fee to | | | | | |
| 815. Credit Report Fee to | | | 1511. | | |
| 816. Origination Fee     % to | | | | | |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | | 1512. | | |
| 818. Underwriting Fee to | | | 1513. | | |
| 819. Service Provider Fee to | | | | | |
| 820. Processing Fee to | | | 1514. | | |
| 821. Underwriting Fee to | | | | | |
| 822. Appraisal Fee to | | | 1515. | | |
| 900. Items Required by Lender to be Paid in Advance | | | | | |
| 901. Interest from 05/06/2004 to 06/01/2004 @ $32.42 per day | $842.92 | | 1520. TOTAL DISBURSED (enter on line 1603) | | $144,585.38 |
| 902. Mortgage insurance premium for     months to | | | | | |
| 903. Hazard ins prem to | $0.00 | | Total Wire:   $147,257.68 | | |
| 904. Flood Ins prem to | | | | | |
| 1000. Reserves Deposited with Lender | | | | | |
| 1001. Hazard insurance   months @ $   per month | | | | | |
| 1002. Mortgage insurance   months @ $   per month | | | | | |
| 1003. Earthquake Ins   months @ $   per month | | | | | |
| 1004. County prop. taxes   months @ $   per month | | | | | |
| 1005. Annual assess.   months @ $   per month | | | | | |
| 1006. Flood   months @ $   per month | | | | | |
| 1007. Windstorm Ins   months @ $   per month | | | | | |
| 1008. | | | | | |
| 1100. Title Charges | | | | | |
| 1101. Settlement or closing fee to  NORTHWEST TITLE & | $300.00 | | | | |
| 1102. Abstract or title search to | | | | | |
| 1103. Title examination to | | | | | |
| 1104. Title insurance binder to | | | | | |
| 1105. Document preparation to | | | | | |
| 1106. Notary fees to  DIVERSIFIED BUSINESS ALLIANCE | $400.00 | | | | |
| 1107. Attorney's fees to | | | | | |
| 1108. Title insurance to  NORTHWEST TITLE & ESCROW | $100.00 | | | | |
| 1109. Lender's coverage | $100.00 | | | | |
| 1110. Owner's coverage   $ | | | | | |
| 1111. Settlement/Disbursement fee to | | | | | |
| 1112. Escrow Fee to | | | | | |
| 1200. Government Recording and Transfer Charges | | | | | |
| 1201. Recording fees | $100.00 | | N.  NET SETTLEMENT | | |
| 1202. City/county tax/stamps | | | | | |
| 1203. State tax/ stamps | | | 1600. Loan Amount | | 155,700.00 |
| 1204. State specific fee | | | | | |
| 1205. State specific fee. | | | 1601. Plus Cash/Check from Borrower | | |
| 1300. Additional Settlement Charges | | | | | |
| 1301. Demand to | | | 1602. Minus Total Settlement Charges (line 1400) | | $9,342.32 |
| 1302. Pest Inspection to | | | | | |
| 1303. Survey Fee | | | 1603. Minus Total Disbursements to Others (line 1520) | | $144,585.38 |
| 1304. Staff Appraiser Fee | | | | | |
| 1305. Reconveyance Fee to | | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | | $1,772.30 |
| 1306. | | | | | |
| 1307. Property Val Fee to | | | | | |
| 1308. Courier Fee | | | | | |
| 1400. Total Settlement Charges (enter on line 1602) | $9,342.32 | | | | |

Borrower(s) Signature(s):

X _____

Approved for Funding By: _____   Approved: _____   Branch:  Southfield, MI 48034

000000782324850305170201

# EXHIBIT P

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER:Ameriquest Mortgage Company
28400 Northwestern Hwy., # 105
Southfield, MI 48034
(248)353-4285

☐ Preliminary    ☒ Final

Broker License:

Borrowers:Sarah Chaumley

Type of Loan: ADJUSTABLE RATE
Date: April 29, 2004

Address:      19461 GOLDWIN ST
City/State/Zip:  SOUTHFIELD,MI 48075

Loan Number: 0078232485 - 5536

Property:    19461 GOLDWIN ST, SOUTHFIELD, MI 48075

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.146 % | $ 248,859.68 | $ 146,907.68 | $ 395,767.36 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $1,099.36 | 07/01/2004 | | | |
| 1 | $1,097.12 | 06/01/2034 | | | |

VARIABLE RATE FEATURE:
☒ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at 19461 GOLDWIN ST, SOUTHFIELD, MI 48075

ASSUMPTION:   Someone buying this property ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:   You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

LATE CHARGES:  If a payment is late, you will be charged 5.000% of the overdue payment .

PREPAYMENT: If you pay off your loan early, you
☒ may   ☐ will not   have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower:Sarah Chaumley _____ Date _____    Borrower _____ Date _____

Borrower _____ Date _____    Borrower _____ Date _____

TIL1 (Rev 7/01)   0000007823248603057501201   **BORROWER COPY**

04/29/2004 12:33:08 PM

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER:Ameriquest Mortgage Company
28400 Northwestern Hwy., # 105
Southfield, MI 48034
(248)353-4285

| | Preliminary | [X] | Final |

Broker License:

Borrowers:Sarah Chaurnley

Type of Loan: ADJUSTABLE RATE
Date: April 29, 2004

Address: 19461 GOLDWIN ST
City/State/Zip: SOUTHFIELD,MI 48075

Loan Number: 0078232485 - 5536

Property: 19461 GOLDWIN ST, SOUTHFIELD, MI 48075

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.146 % | $ 248,859.68 | $ 146,907.68 | $ 395,767.36 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $1,099.36 | 07/01/2004 | | | |
| 1 | $1,097.12 | 06/01/2034 | | | |

VARIABLE RATE FEATURE:
[X] Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 19461 GOLDWIN ST, SOUTHFIELD, MI 48075

ASSUMPTION: Someone buying this property
[X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE: You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

LATE CHARGES: If a payment is late, you will be charged 5.000% of the overdue payment .

PREPAYMENT: If you pay off your loan early, you
[X] may [ ] will not have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____
Borrower Sarah Chaurnley        Date

_____
Borrower        Date

_____
Borrower        Date

_____
Borrower        Date

TIL1 (Rev. 7/01)

ORIGINAL COPY

04/29/2004 12:33:08 PM

# EXHIBIT Q

**Ameriquest Mortgage Company**

**Summary of Debts and Disbursements**
(Refinance Loans Only)

Date:  April 29, 2004
Branch:
Southfield, MI

*19*

Borrower: Sarah Chaumley

Loan Number:  0078232485 - 5536

| Fees | | |
|---|---|---|
| | 3.814 | |
| Loan Discount Fee | | $5,938.40 |
| Lender Retained  Fees | | $1,311.00 |
| Prepaid Interest | | $842.92 |
| Fees Paid to Others | | $1,250.00 |

Short to Close

Total Payoffs                    $144,585.38

Cash to Borrower          $1,772.30

Total Points & Fees                    $9,342.32

| CREDITORS DEBTS | BALANCE | PAYOFFS | PAYMENTS |
|---|---|---|---|
| AMEX | | $942.00 | |
| CAPITAL ONE BANK | | $1,513.00 | |
| HHLD BANK | | $503.00 | |
| CAPITAL ONE BANK | | $123,696.38 | |
| WASHINGTON MUTUAL BA | | | |
| WAMU8NK | | $12,603.00 | |
| G M A C | $229.00 | | $10.00 |
| PROVIDIAN | $658.00 | | $15.00 |
| CBUSASEARS | | $3,281.00 | |
| AMERICREDIT | | $1,709.00 | |
| DIRECT MERCHANTS BAN | | $338.00 | |
| CAPITAL ONE BANK | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

C00000078232485B204790101

Total Payments:                    $25.00

# EXHIBIT R

## NOTICE OF RIGHT TO CANCEL

LENDER: Ameriquest Mortgage Company

DATE: April 29, 2004
LOAN NO.: 0078232485 - 5536
TYPE: ADJUSTABLE RATE

BORROWER(S): Sarah Chaumley

ADDRESS: 19461 GOLDWIN ST
CITY/STATE/ZIP: SOUTHFIELD,MI 48075

PROPERTY: 19461 GOLDWIN ST
SOUTHFIELD, MI 48075

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

   **ENTER DOCUMENT SIGNING DATE**

   _____ ;

   or
2. The date you received your Truth in Lending disclosures;
   or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200
Orange, CA 92868

ATTN: FUNDING
PHONE: (714)541-9960
FAX: (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**

_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____          _____
SIGNATURE                                    DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____ _____      _____ _____
BORROWER/OWNER Sarah Chaumley        Date          BORROWER/OWNER                        Date

_____ _____      _____ _____
BORROWER/OWNER                        Date          BORROWER/OWNER                        Date


0000078232485040005010

1664-NRC (Rev 11/00)

**LENDER COPY**

04/29/2004 12:33:08 PM

# NOTICE OF RIGHT TO CANCEL

LENDER: Ameriquest Mortgage Company

DATE: April 29, 2004
LOAN NO.: 0078232485 - 5536
TYPE: ADJUSTABLE RATE

BORROWER(S): Sarah Chaumley

ADDRESS: 19461 GOLDWIN ST
CITY/STATE/ZIP: SOUTHFIELD,MI 48075

PROPERTY: 19461 GOLDWIN ST
SOUTHFIELD, MI 48075

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
|  |

or
2. The date you received your Truth in Lending disclosures;
or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200
Orange, CA 92868

ATTN: FUNDING
PHONE: (714)541-9960
FAX: (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
|  |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____          _____
SIGNATURE                                               DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____          Date          _____          Date
BORROWER/OWNER Sarah Chaumley                              BORROWER/OWNER

_____          Date          _____          Date
BORROWER/OWNER                                              BORROWER/OWNER

1000-NRC (Rev 11/03)
0000007823248504000500101

**BORROWER COPY**

04/29/2004 12:33:08 PM

## NOTICE OF RIGHT TO CANCEL

LENDER: Ameriquest Mortgage Company

DATE: April 29, 2004
LOAN NO.: 0078232485 - 5536
TYPE: ADJUSTABLE RATE

BORROWER(S): Sarah Chaumley

ADDRESS: 19461 GOLDWIN ST
CITY/STATE/ZIP: SOUTHFIELD,MI 48075

PROPERTY: 19461 GOLDWIN ST
SOUTHFIELD, MI 48075

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

    | ENTER DOCUMENT SIGNING DATE |
    |---|

    ;

    or

2. The date you received your Truth in Lending disclosures;
    or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200
Orange, CA 92868

ATTN: FUNDING
PHONE: (714)541-9960
FAX: (800)664-2256

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
|---|

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____     _____
SIGNATURE                                        DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____          Date          _____          Date
BORROWER/OWNER Sarah Chaumley                    BORROWER/OWNER

_____          Date          _____          Date
BORROWER/OWNER                                    BORROWER/OWNER


1064-NRC (Rev 11/00)
0000007823248S04000501C1

**BORROWER COPY**

04/29/2004 12:33:08 PM

# EXHIBIT S

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0078232485 - 5536          Borrower(s): Sarah Chaumley

Date: April 29, 2004

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200  Orange, CA 92868
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____
Borrower/Owner  Sarah Chaumley            Date

_____          _____
Borrower/Owner                            Date

_____          _____
Borrower/Owner                            Date

_____          _____
Borrower/Owner                            Date

---

## REQUEST TO CANCEL

I/We want to cancel loan # _____.

_____          _____
Borrower/Owner Signature                  Date



0000007823248504042201G1

BS0 (10/00)

04/29/2004 12:33:08 PM

**BORROWER COPY**

*3 /*

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0078232485 - 5536          Borrower(s): Sarah Chaumley
Date: April 29, 2004

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1100 Town and Country Road, Suite 200  Orange, CA 92868
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____          _____
Borrower/Owner  Sarah Chaumley                    Date

_____          _____
Borrower/Owner                                             Date

_____          _____
Borrower/Owner                                             Date

_____          _____
Borrower/Owner                                             Date

---

**REQUEST TO CANCEL**

I/We want to cancel loan #_____.

_____          _____
Borrower/Owner Signature                           Date


0000007823248504042220101

850 (10/00)

04/29/2004 12:33:08 PM

### LENDER COPY

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0078232485 - 5506       Borrower(s): Sarah Chaumley

Date: April 29, 2004

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200  Orange, CA 92868
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

_____        _____
Borrower/Owner  Sarah Chaumley                    Date

_____        _____
Borrower/Owner                                              Date

_____        _____
Borrower/Owner                                              Date

_____        _____
Borrower/Owner                                              Date

| **REQUEST TO CANCEL** |
| --- |
| I/We want to cancel loan #_____. |
| _____   _____
Borrower/Owner Signature                      Date |



0000007823248504042201 01

850 (10/00)

04/29/2004 12:33:08 PM

**BORROWER COPY**

# EXHIBIT T

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower" as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☒ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☒ Conventional ☐ Other (explain): ☐ FHA ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number 0078232485 |

| Amount $155,700.00 | Interest Rate 7.600 % | No. of Months 360 | Amortization Type: ☐ Fixed Rate ☒ ARM (type): ☐ GPM ☐ Other (explain): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units 1 |

19461 GOLDWIN ST, SOUTHFIELD, MI 48075

| Legal Description of Subject Property (attach description if necessary) | Year Built 1950 |

| Purpose of Loan | ☐ Purchase ☐ Construction ☐ Other (explain): ☒ Refinance ☐ Construction-Permanent | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |

Complete this line if this is a refinance loan.

| Year Acquired 1991 | Original Cost $122,000.00 | Amount Existing Liens $ 0.00 | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made Cost: $ 0.00 |

| Title will be held in what Name(s) Sarah Chaunley | Manner in which Title will be held | Estate will be held in ☒ Fee Simple ☐ Leasehold (show expiration date) |

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) Sarah Chaunley | Co-Borrower's Name (include Jr. or Sr. if applicable) | |
| Social Security Number | Home Phone (incl. area code) (248)945-7105 | DOB(MM/DD/YYYY) 12/03/1942 | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. Schol |
| ☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0 ages | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages |
| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 13 No. Yrs. | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
| 19461 GOLDWIN ST SOUTHFIELD, MI 48075 | |
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. 19461 GOLDWIN SOUTHFIELD, MI 48075 | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer ☐ Self Employed Pension | Yrs. on this job 2 | Name & Address of Employer ☐ Self Employed | Yrs. on this job |
| | Yrs. employed in this line of work/profession | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business None | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

0078232485

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4

Initials: _____

| | |
|---|---|
| Borrower's cell | Borrower's pager |
| Co-Borrower's cell | Co-Borrower's pager |

VMP Mortgage Solutions (800)521-7291

0000007823248500059906001



## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income * | $ 0.00 | | $ 0.00 | Rent | $ 0.00 | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 1,159.00 | $ 1,099.36 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 100.00 | 100.00 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 219.40 | 219.40 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (Before completing, see the notice in "describe other income," below) | 2,999.76 | 0.00 | 2,999.76 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 2,999.76 | 0.00 | $ 2,999.76 | Total | 1,478.40 | $ 1,418.76 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | | Monthly Amount |
|---|---|---|---|
| B | | | $ 0.00 |
| B | | | 2,999.76 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that a spouse also.

Completed ☐ Jointly [ X ] Not Jointly

| ASSETS  Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary, indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| | | Name and address of Company | $ Payment/Months | |
| List checking and savings accounts below | | *** SEE ADDENDUM *** | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/number & description) /0 | $ 0.00 | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 0.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 165,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 25.00 | |
| Total Assets a. | $ 165,000.00 | Net Worth $ 164,113.00 | Total Liabilities b. | $ 887.00 |

0078232485

-21N (0309)

Freddie Mac Form 65 01
Fannie Mae Form 1003 01

**VI. ASSETS AND LIABILITIES (cont.)**

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending s ale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 19461 Goldwin Southfield,MI 48075 | H | SFR | $ 165000 | $ 0 | $ 0 | $ 1159 | $ 319 | $ 0 |
| | | | | | | | | |
| | Totals | | $ 165000 | $ 0 | $ 0 | $ 1159 | $ 319 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

**VII. DETAILS OF TRANSACTION**

| | | |
|---|---|---|
| a. | Purchase price | $ 0.00 |
| b. | Alterations, improvements, repairs | 0.00 |
| c. | Land (if acquired separately) | 0.00 |
| d. | Refinance (incl. debts to be paid off) | 144,883.00 |
| e. | Estimated prepaid items | 298.20 |
| f. | Estimated closing costs | 2,448.00 |
| g. | PMI, MIP, Funding Fee | 0.00 |
| h. | Discount (if Borrower will pay) | 6,228.00 |
| i. | Total costs (add items a through h) | 153,857.20 |
| j. | Subordinate financing | 0.00 |
| k. | Borrower's closing costs paid by Seller | 0.00 |
| l. | Other Credits (explain) | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 155,700.00 |
| n. | PMI, MIP, Funding Fee financed | 0.00 |
| o. | Loan amount (add m & n) | 155,700.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -1,842.80 |

**VIII. DECLARATIONS**

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

**IX. ACKNOWLEDGMENT AND AGREEMENT**

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

**X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES**

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

**BORROWER** ☐ I do not wish to furnish this information.

| | |
|---|---|
| Ethnicity: | ☐ Hispanic or Latino ☒ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☒ White |
| Sex: | ☐ Female ☒ Male |

**CO-BORROWER** ☐ I do not wish to furnish this information.

| | |
|---|---|
| Ethnicity: | ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| Sex: | ☐ Female ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) Janie Hasouras | Name and Address of Interviewer's Employer |
|---|---|---|
| ☐ Face-to-face interview | Interviewer's Signature | 28400 Northwestern Hwy.. # 105 |
| ☐ Mail | Date | Southfield,MI 48034 |
| ☒ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | (248)353-4285 | |

0078232485

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>Chaumley, Sarah<br>Co-Borrower: | Agency Case Number:<br><br>Lender Case Number:<br>0078232485 |
|---|---|---|

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above fa es applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

0078232485

Page 4 of 4

Freddie Mac Form 65 0
Fannie Mae Form 1003 0

# EXHIBIT U




## AMC
### MORTGAGE SERVICES

P.O. Box 11000, Santa Ana, CA 92711-1000
Toll Free (800) 430-5262
www.myamcloan.com

July 10, 2006

Sarah Chaumley
19461 Goldwin St.
Southfield, MI 48075

Re:                    Copy of Appraisal
Loan Number:           0078132485
Property Address:      19461 Goldwin St.
                       Southfield, MI 78075

Dear Ms. Chaumley:

We are sending the Appraisal to you under the following terms and conditions. If you are unable or unwilling to comply with all of the conditions set forth below, please return the Appraisal to:

AMC Mortgage Services, Inc.
Customer Care
P.O. Box 11000
Santa Ana, CA 92711-1000

1.  The Appraisal is to be used solely for the purpose of evaluating your property in connection with your loan.

2.  You understand, acknowledge, and agree that the Appraisal is being provided by AMC Mortgage Services (AMC) without any representations or warranties as to its contents.

3.  You understand, acknowledge, and agree that intervening circumstances may have rendered the information and assumptions contained in the Appraisal obsolete, incomplete or even misleading.

4.  You understand, acknowledge, and agree that the Appraisal was prepared for the exclusive use of AMC, and that subsequent distribution was not contemplated when the Appraisal was commissioned, prepared, or delivered.







P.O. Box 11000, Santa Ana, CA 92711-1000
Toll Free (800) 430-5262
www.myamcloan.com

5.  You covenant and agree not to seek any damages or redress or to make any claims for damages, costs, expenses, or liabilities of any kind against the appraiser arising out of your use of the Appraisal.

6.  You covenant and agree to indemnify, defend, and hold AMC, its shareholders, officers, directors, employees, affiliates, and agents harmless from and against any claims, costs, expenses, damages, or liabilities of any kind including reasonable attorney's fees incurred by AMC resulting from or arising out of your use of the Appraisal.

7.  You covenant and agree to keep the Appraisal confidential and not disclose, distribute, disseminate, copy, or otherwise reproduce or release the Appraisal or its contents to any person except as is strictly necessary for the evaluation or understanding of the Appraisal, in any manner to any person without first obtaining a written agreement of confidentiality similar in scope to this letter.

Please keep this letter with your other loan records.

If you have any additional questions or concerns, please contact Customer Care at (800) 430-5262, Monday through Friday, 5:00 a.m. to 6:00 p.m., Pacific Time.

Sincerely,

AMC Mortgage Services

C8T/053182/CJ3217Q



Summary Appraisal Report

# UNIFORM RESIDENTIAL APPRAISAL REPORT
File No. goldwin19

**Property Description**

| | | | | | |
|---|---|---|---|---|---|
| Property Address | 19461 Goldwin | City Southfield | State MI | Zip Code 48075 | |
| Legal Description Sec 23 Lots 280 & 281 Evershire | | | County Oakland | | |
| Assessor's Parcel No. 2423377002 | | Tax Year 2003 | R.E. Taxes $ 2,693.00 | Special Assessments $ 0.00 | |
| Borrower Chaumley | Current Owner Chaumley | | Occupant [X] Owner | Tenant | Vacant |
| Property rights appraised [X] Fee Simple | Leasehold | Project Type | PUD Condominium (HUD/VA only) | HOA$ 0.00 /Mo. | |
| Neighborhood or Project Name Evershire | | | Map Reference 24-23 | Census Tract 1615 | |
| Sale Price $ Refinance | Date of Sale N/A | Description and $ amount of loan charges/concessions to be paid by seller N/A | | | |
| Lender/Client Ameriquest | | Address 28400 Northwestern Hwy, Southfield, MI 48035 | | | |
| Appraiser Nicole Davis | | Address 6178 Dexter, Romulus, MI 48174 | | | |

| Location | Urban | [X] Suburban | Rural | Predominant occupancy | Single family housing | Present land use % | Land use change |
|---|---|---|---|---|---|---|---|
| Built up | [X] Over 75% | 25-75% | Under 25% | | PRICE $(000) AGE (yrs) | One family 95% | [X] Not likely Likely |
| Growth rate | Rapid | [X] Stable | Slow | [X] Owner | 85 Low 20 | 2-4 family | In process |
| Property values | Increasing | [X] Stable | Declining | Tenant | 190 High 65 | Multi-family | To: |
| Demand/supply | Shortage | [X] In balance | Over supply | Vacant (0-5%) | Predominant | Commercial 5% | |
| Marketing time | [X] Under 3 mos. | 3-6 mos. | Over 6 mos. | Vacant (over 5%) | 175 37 | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.
Neighborhood boundaries and characteristics: North of Ten Mile, South of 11 Mile, East of Evergreen and West of Southfield Rd

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):
Subject area is comprised of primarily single family residences mixed in style and age. All forms of normal neighborhood amenities such as schools, places of worship and employment centers are within close proximity to the area. No adverse conditions noted. Commercial usage is noted along main roadways, with no adverse affect.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time
- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):
Conventional financing is readily available at acceptable rates. Local market conditions indicate a balanced supply/demand of homes, with a typical marketing time of under 3 months. FHA/VA, Land Contract and Cash sales are sometimes utilized as alternative forms of financing with no adverse affect on value or marketability.

Project Information for PUDs (if applicable) - Is the developer/builder in control of the Home Owners' Association (HOA)?    YES  [X] NO
Approximate total number of units in the subject project N/A          Approximate total number of units for sale in the subject project N/A
Describe common elements and recreational facilities: N/A

| | | |
|---|---|---|
| Dimensions 80x135 | Topography | Level at grade |
| Site area 10800 Sq.Ft. | Corner Lot Yes [X] No | Size | Typical for Area |
| Specific zoning classification and description R-1 Single Family Residential | Shape | Rectangular |
| Zoning compliance [X] Legal  Legal nonconforming (Grandfathered use)  Illegal  No zoning | Drainage | Appears Adequate |
| Highest & best use as improved: [X] Present use  Other use (explain) | View | Residential |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity | [X] | | Street | Concrete | [X] | |
| Gas | [X] | | Curb/gutter | Concrete | [X] | |
| Water | [X] | | Sidewalk | Concrete | [X] | |
| Sanitary sewer | [X] | | Street lights | Pole Hung | [X] | |
| Storm sewer | [X] | | Alley | None | | |

| | |
|---|---|
| Landscaping | Typical for area |
| Driveway Surface | Concrete |
| Apparent easements | Normal Utility |
| FEMA Special Flood Hazard Area  Yes [X] No | |
| FEMA Zone C  Map Date 09-28-79 | |
| FEMA Map No. 260179000S B | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): Site is typical for area in size and appeal with no readily apparent adverse easements or encroachments noted.

| GENERAL DESCRIPTION | | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|
| No. of Units | 1 | Foundation | Concrete | Slab | None | Area Sq.Ft. | 1078.69 | Roof | |
| No. of Stories | 1 | Exterior Walls | Brick | Crawl Space | None | % Finished | 50% | Ceiling Cncld | [X] |
| Type (Det./Att.) | Detached | Roof Surface | Asph Shingle | Basement | Yes | Ceiling | Drop Tilet | Walls Cncld | [X] |
| Design (Style) | Ranch | Gutters & Dwnspts. | Aluminum | Sump Pump | None | Walls | Concrete | Floor | |
| Existing/Proposed | Existing | Window Type | Vinyl | Dampness | None noted | Floor | Tile | None | |
| Age (Yrs.) | 37 | Storm/Screens | Aluminum | Settlement | at time of | Outside Entry | None | Unknown | |
| Effective Age (Yrs.) | 10 | Manufactured House No | | Infestation | inspection | | | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq.Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | X | | X | | 1,079 |
| Level 1 | 1 | 1 | 1 | 1 | | | | 3 | 1 | | | 1,279 |
| Level 2 | | | | | | | | | | | | 0 |

Finished area above grade contains:        6 Rooms;        3 Bedroom(s);        1 Bath(s);        1,279 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Hardwd/Crpt/Vinyl | Type | FWA | Refrigerator | | None | [X] | Fireplace(s) # | | None | [X] |
| Walls | Plaster | Fuel | Gas | Range/Oven | | Stairs | | Patio Concrete | [X] | Garage | # of cars |
| Trim/Finish | Wd painted | Condition Average | | Disposal | [X] | Drop Stair | | Deck | | Attached | |
| Bath Floor | Vinyl | COOLING | | Dishwasher | | Scuttle | | Porch Concrete | [X] | Detached | 1 |
| Bath Wainscot | Vinyl | Central Yes | | Fan/Hood | | Floor | | Fence | | Built-In | |
| Doors | Solid Core | Other N/A | | Microwave | | Heated | | Pool | | Carport | |
| Avg cond/Avg quality | | Condition Average | | Washer/Dryer | | Finished | | | | Driveway Adeq | |

Additional features (special energy efficient items, etc.): Subject has been adequately maintained and has typical features and amenities for its market area. The subject has a porch, patio and 1 car garage. No value given to personal property.

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction remodeling/additions, etc.: See Attached...

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: At time of inspection, there were no adverse environmental conditions noted.

12

Summary Appraisal Report

## UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. goldwin19

| Valuation Section | | | | |
|---|---|---|---|---|
| ESTIMATED SITE VALUE . . . . . . . . . . . . . . . = $ | | 20,000 | Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): | |

**ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS:**

| | | | |
|---|---|---|---|
| Dwelling 1,279 Sq. Ft. @ $ 110.00 = $ | 140,690 | Cost figures are taken from Marshall and Swift Residential |
| Bsmt. 1079 Sq. Ft. @ $ 60.00 = $ | 64,740 | Cost Handbook with local multiplier rounded. The Cost |
| | | Approach is not given equal weight due to the lower land |
| Garage/Carport 0 Sq. Ft. @ $ 20.00 = $ | 0 | values in the area and the difficulty in measuring |
| Total Estimated Cost New . . . . . . . . . . . = $ | 205,430 | accumulated depreciation. Based on 20 years effective age, |
| Less D Physical Functional External | | remaining economic life is estimated to be 40 years. |
| Depreciation $18,343 Est. Remaining Econ. Life = $ 18,343 | | |
| Depreciated Value of Improvements . . . . . . . = $ | 187,087 | |
| "As-Is" Value of Site Improvements . . . . . . . = $ | 15,000 | |
| INDICATED VALUE BY COST APPROACH . . . . . . . = $ | 222,100 | |

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| | 19461 Goldwin | 25 125 Grand Concourse | 19431 Hilton | 18196 Goldwin |
| Address Southfield | | Southfield | Southfield | Southfield |
| Proximity to Subject | | 5 Blocks west | 2 Blocks South | Same Street east |
| Sales Price | $ Refinance | $ 189,000 | $ 155,000 | $ 169,000 |
| Price/Gross Liv. Area | $ 0.00 Ø | $ 112.23 Ø | $ 151.96 Ø | $ 106.89 Ø |
| Data and/or | Assessor/ | Assessor/Ext. Inspection | Assessor/Ext. Inspection | Assessor/Ext. Inspection |
| Verification Sources | Inspection | MLS# 23005844 | MLS# 24004493 | MLS# 23089409 |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing | N/A | Conventional | | Conventional | | Conventional | |
| Concessions | N/A | N/A | | N/A | | N/A | |
| Date of Sale/Time | N/A | 2003/05/02 | | 2004/03/08 | | 2003/12/01 | |
| Location | Suburban | Suburban/Avg | | Suburban/Avg. | | Suburban/Avg |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple |
| Site | 80x135 | 64-130 | | 60x145 | | 59x135 |
| View | Residential/Avg | Residential/Avg | | Residential/Avg | | Residential/Avg |
| Design and Appeal | 1 Story/Avg | 1 Story/Avg | | 1 Story/Avg | | 2 Story/Avg |
| Quality of Construction | Brick/Avg | Brick/Wd/Avg | | Brick/Alm/Avg | | Brick/Avg |
| Age | A 37 E 10 | A 43 E 10 | | A 38 E 10 | | A 33 E 10 |
| Condition | Average | Average | | Average | | Average |
| Above Grade | Total 6 Bdrms 3 Baths 1.00 | Total 6 Bdrms 3 Baths 2.00 | -1,000 | Total 6 Bdrms 3 Baths 1.00 | | Total 7 Bdrms 3 Baths 1.50 | -500 |
| Room Count | | | | | | | |
| Gross Living Area | 1,279 Sq.Ft. | 1,684 Sq.Ft. | -2,000 | 1,020 Sq.Ft. | 1,300 | 1,584 Sq.Ft. | -1,500 |
| Basement & Finished | Basement | Basement | | Basement | | Basement | |
| Rooms Below Grade | Part-Finished | Part-Finished | | Part-Finished | | Unfinished | 1,000 |
| Functional Utility | 3 Bedroom/Avg | 3 Bedroom/Avg | | 3 Bedroom/Avg | | 3 Bedroom/Avg | |
| Heating/Cooling | FWA /C-Air | FWA /C-Air | | FWA /C-Air | | FWA /C-Air | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 1 Car Garage | 2 Car Garage | -1,000 | 2 Car Garage | 1,000 | 2 Car Garage | -1,000 |
| Porch, Patio, Deck, | Porch,Patio | Porch,Patio | | Porch, Deck | | Porch,Patio | |
| Fireplace(s), etc. | No Fireplace | No Fireplace | | No Fireplace | | 1 Fireplace | -500 |
| Fence, Pool, etc. | | | | | | | |
| Net Adj. (total) | | [X] + $ | 4,000 | [X] + $ | 2,300 | [X] + $ | 2,500 |
| Adjusted Sales Price | | Gross 2.1% | | Gross 1.5% | | Gross 2.7% | |
| of Comparable | | Net 2.1% $ 185,000 | | Net 1.5% $ 157,300 | | Net 1.5% $ 166,500 | |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): See Attached...

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data | No other sales | No other sales | No other sales | No other sales |
| Source for prior sales | during the past | during the past | during the past | during the past |
| within year of appraisal | 36 months | 12 months | 12 months | 12 months |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal. The subject property is not currently listed or under contract. Sales History consists of no activity within a 36 month time .No purchase agreement was provided to the appraiser

| | | |
|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH . . . . . . . . . . . . . . . . . . . = $ | | 160,000 |
| INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ | | 0 |

This appraisal is made [X] "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans and specifications.

Conditions of Appraisal: See Attached...

Final Reconciliation: The greatest weight is given to the Sales Comparison Approach as the data is extracted directly from the marketplace. The Cost Approach lends limited support. The Income Approach is not relevant due to the lack of reliable rental data in this owner occupied area.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 6/93 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 2004/05/04 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 160,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | |
|---|---|---|
| Signature | Signature Fanny Clay | [X] Did ☐ Did Not Inspect Property |
| Name Nicole Davis | Name Fanny Clay | |
| Date Report Signed 05/11/2004 | Date Report Signed 05/11/2004 | |
| State Certification # | State Certification # | State MI |
| Or State License # 1201069704 State MI | Or State License # 1201002775 | State MI |

Freddie Mac Form 70 8-93

Produced using ACI software, 800.234.8727 www.aciweb.com

Fannie Mae Form 1004 3-93

Real Estate Experts & Appraisers

Summary Appraisal Report

## UNIFORM RESIDENTIAL APPRAISAL REPORT

Supplemental Valuation Section     File No. goldwin19

| ITEM | SUBJECT | COMPARABLE NO. 4 | | COMPARABLE NO. 5 | | COMPARABLE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 19461 Goldwin | 19220 Alta Vista Dr | | | | | |
| | Southfield | Southfield | | | | | |
| Proximity to Subject | | 6 Blocks northeast | | | | | |
| Sales Price | $ Refinance | $ 185,000 | | $ | | $ | |
| Price/Gross Liv. Area | $ 0.00 | $ 110.18 | | $ | | $ | |
| Data and/or | Assessor/ | Assessor/Ext. Inspection | | | | | |
| Verification Sources | Inspection | MLS# 23021729 | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sales or Financing | N/A | Conventional | | | | | |
| Concessions | N/A | Nbr. | | | | | |
| Date of Sale/Time | N/A | 2003/08/07 | | | | | |
| Location | Suburban | Suburban/Avg | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 80x135 | 65x135 | | | | | |
| View | Residential/ Avg | Residential/ Avg | | | | | |
| Design and Appeal | 1 Story/ Avg | 1 Story/ Avg | | | | | |
| Quality of Construction | Brick/Avg | Brick/Avg | | | | | |
| Age | A 37 E 10 | A 40 E 10 | | | | | |
| Condition | Average | Average | | | | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 6 3 1.00 | 7 3 2.50 | -2,000 | | | | |
| Gross Living Area | 1,279 Sq.Ft. | 1,879 Sq.Ft. | -2,000 | Sq.Ft. | | Sq.Ft. | |
| Basement & Finished | Basement | Basement | -5,000 | | | | |
| Rooms Below Grade | Part-Finished | Part Finished | -1,000 | | | | |
| Functional Utility | 3 Bedroom/Avg | 3 Bedroom/Avg | | | | | |
| Heating/Cooling | FWA /C-Air | FWA /C-Air | | | | | |
| Energy Efficient Items | Standard | Standard | | | | | |
| Garage/Carport | 1 Car Garage | 2 Car Garage | -1,000 | | | | |
| Porch, Patio, Deck, | Porch,Patio | Porch,Patio | | | | | |
| Fireplace(s), etc. | No Fireplace | 1 Fireplace | -500 | | | | |
| Fence, Pool, etc. | | | | | | | |
| Net Adj. (total) | | [ - ] [X] + $ | 11,500 | [X] + [ ] - $ | 0 | [X] + [ ] - $ | 0 |
| Adjusted Sales Price | | Gross 6.22% | | Gross 0.0% | | Gross 0.0% | |
| of Comparable | | Net 3.82% $ | 173,500 | Net 0.0% $ | 0 | Net 0.0% $ | 0 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.):

| ITEM | SUBJECT | COMPARABLE NO. 4 | COMPARABLE NO. 5 | COMPARABLE NO. 6 |
|---|---|---|---|---|
| Date, Price and Data | No other sales | No other sales | | |
| Source for prior sales | during the past | during the past | | |
| within year of appraisal | 36 months | 12 months | | |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:

4

COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: Chaumley | File No.: goldwin19 |
| Property Address: 19461 Goldwin | Case No.: |
| City: Southfield | State: MI    Zip: 48075 |
| Lender: Ameriquest | |



COMPARABLE SALE #1

25425 Grand Concourse
Southfield
Sale Date: 2003/05/02
Sale Price: $ 169,000



COMPARABLE SALE #2

19431 Hilton
Southfield
Sale Date: 2004/03/08
Sale Price: $ 155,000



COMPARABLE SALE #3

18196 Goldwin
Southfield
Sale Date: 2003/12/01
Sale Price: $ 169,000

## COMPARABLE PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Borrower: Chaumley | File No.: goldwin19 | |
| Property Address: 19461 Goldwin | Case No.: | |
| City: Southfield | State: MI | Zip: 48075 |
| Lender: Ameriquest | | |



**COMPARABLE SALE #4**

18220 Alta Vista Dr
Southfield
Sale Date: 2003/08/07
Sale Price: $ 185,000



**COMPARABLE SALE #5**

Sale Date:
Sale Price: $



**COMPARABLE SALE #6**

Sale Date:
Sale Price: $



FLOORPLAN

| Borrower: Chaumley | | File No.: goldwin19 | |
|---|---|---|---|
| Property Address: 19461 Goldwin | | Case No.: | |
| City: Southfield | State: MI | | Zip: 48075 |
| Lender: Ameriquest | | | |

## Main Floor



Bedroom      Kitchen

Bedroom

Dining Room

Bath

Bedroom    Living Room

31.9'

40.1'

# Ranch w/ Basement

Sketch by Apex IV Windows™

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Totals |
| GLA1 | Main Floor | 1279.19 | 1279.19 |
| BSMT | Basement | 1078.69 | 1078.69 |
| | | | |
| | TOTAL LIVABLE | (rounded) | 1279 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| Main Floor | | |
| 31.9 x | 40.1 | 1279.19 |
| | | |
| 1 Area Total (rounded) | | 1279 |

LOCATION MAP

| | File No.: goldwin19 |
| | Case No.: |
| Borrower: Chaumley | | |
| Property Address: 19451 Goldwin | State: MI | Zip: 48075 |
| City: Southfield | | |
| Lender: Ameriquest | | |





File No. goldwin19

**APPRAISERS CERTIFICATION** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to , or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or is favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

ADDRESS OF PROPERTY APPRAISED:   19461 Goldwin. Southfield, MI 48075

| APPRAISER: | SUPERVISORY APPRAISER (only if required) |
|---|---|
| Signature: | Signature: Fanny Clay |
| Name: Nicole Davis | Name: Fanny Clay |
| Date Signed: 05/11/2004 | Date Signed: 05/11/2004 |
| State Certification #: | State Certification #: |
| or State License #: 1201069704 | or State License #: 1201002775 |
| State: MI | State: MI |
| Expiration Date of Certification or License: | Expiration Date of Certification or License: |
| | [X] Did   [ ] Did Not Inspect Property |

ADDENDUM                          File No.  goldwin19

SCOPE OF THE APPRAISAL:  The scope of the appraisal encompasses the necessary research and analysis to prepare a report in accordance with the intended use. Subject property data was based on the physical inspection of the property's interior and exterior, and any plans or specifications provided.

Additional data was compiled from public records, Multi-List service, or other identified sources. The original source of the comparable sales is shown in the 'Data Source' section in the market grid, along with any additional source, available. Comparables were inspected on the exterior and through public records. The data and sources are considered reliable, however when conflicting information was present, the source deemed the most reliable has been utilized. Data believed to be unreliable was not included in this report.

Flood data was verified using maps provided by the Federal Emergency Management Agency; National Flood Insurance programs.

APPRAISER COMPETENCY:  I certify that I am qualified and competent by training, knowledge, and experience to perform this appraisal. Appraisers are required to be licensed and are regulated by the Michigan Department of Commerce, P.O. Box 30018, Lansing, Michigan 48909.

## Condition of Improvements
No functional obsolescence is noted. Exterior inspection noted no external obsolescence. Physical depreciation is based on 1% per effective year.

Page 1 of the URAR under "kitchen equipment" states NONE, as there are NO appliances that are built-in which would be considered in this appraisal report. Any appliances that are in the kitchen are free-standing, non built-in items of personal property that are not given value in the appraisal report. NONE in this column cannot be construed to mean that there is no kitchen, as the room count in the section above shows a kitchen, as does the floorplan/sketch addendum included with the appraisal. Previous appraisals on homes with no built-in kitchen equipment shown no marking in the kitchen equipment area of the appraisal which the underwriter(s) thought we inadvertently omitted/left blank. Instead, the appraisal shows "NONE" in that area of the appraisal.

## Comments on Sales Comparison
After adjustments, all comparables are considered in the final estimate of value. All comparables are relevant for close proximity Comp # 1 and 2 used for similar foundation. Comp # 1,2,3 used for non masonry construction. Comp # 1, 2, 4 used for similar style. Effective ages assigned were based on general condition of the dwelling, taking into consideration any updating and maintenance performed or lack thereof.

The subject is located in a stable area which has had few relevant recorded sales within the past twelve months. In order to utilize the most relevant comparables, it became necessary to exceed the six month guideline for comps #1 and 4. Exceeding this guidelines will have an adverse affect on the value or marketability of the subject property.

## Conditions of Appraisal
All sales confirmed closed. All data assumed to be accurate. This is a summary appraisal report prepared in accordance with the Uniform Standards of Professional Appraisal Practice. GRM is not used due to the lack of reliable rental data in this owner occupied area. This appraisal is prepared as a Summary Appraisal report under USPAP.

The appraisal is not a home inspection report and should not be relied upon to report the condition of the property being appraised.



File No. goldwin19

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers is own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the Appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc. ) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc. ) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated ) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

# EXHIBIT V

3

**COUNTRYWIDE HOME LOANS, INC.**

DATE: 07/13/2006
APPLICANT: Sarah Chaumley

MAILING ADDRESS: 19461 Goldwin St
                 Southfield, MI 48075
Re: Application #: 2119667832
    Loan Program: NC-F B/C 30Yr
    Case #:
    Property Address: 19461 Goldwin St
                      Southfield, MI 48075

Branch #: 678
39209 W. Six Mile Rd. Ste 203
Livonia, MI 48152
Phone: (888)343-7827
Br Fax No.:

## NOTICE OF ACTION TAKEN

Thank you for selecting
COUNTRYWIDE HOME LOANS, INC.

to assist you with your real estate financing needs. After careful consideration of your application we are unable to approve your request at this time. The reason(s) for our decision are:

COLLATERAL : INSUFFICIENT PROPERTY VALUE.

Please take a moment to review our Regulatory Disclosure information, which is set forth on the following page. This information is provided to inform you of your rights as a consumer.

We regret that we are unable to grant your request at this time. Many applicants who are not approved initially are able to resolve the issues causing the application denial and can obtain a home loan at a later time. We hope that you will consider us for your future financial needs. Should you have any questions or if you can provide any additional information that might assist us in re-evaluating your request, please contact us.

**COUNTRYWIDE HOME LOANS, INC.**

FHA/VA/CONV
◆ Notice of Action Taken
1C134-XX (09/04)(d)

Page 1 of 2





4

Re: Application #: 2119667832
Loan Program: NC-F B/C 30Yr
Case #:
Property Address: 19461 Goldwin St
                 Southfield, MI 48075
Date: 07/13/2006

## REGULATORY DISCLOSURE PAGE

[X] Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

Name: LANDSAFE
Address: 1515 Walnut Grove
          Rosemead, CA 91770
Toll Free Number: (800)447-1692

[ ] Our credit decision was based in whole or in part on information obtained from an affiliate or from an outside source other than a consumer reporting agency. Under the Fair Credit Reporting Act, you have the right to make a written request, no later than 60 days after you receive this notice, for disclosure of the nature of this information.

If you have any questions regarding this notice, you may contact:

Name: **COUNTRYWIDE HOME LOANS, INC.**

Address: 39209 W. Six Mile Rd. Ste 203
            Livonia, MI 48152
Phone Number: (888) 343-7827

NOTICE: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the
Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580

# EXHIBIT W

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☒ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | 0066806142 |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☒ Fixed Rate  ☐ Other (explain): |
|---|---|---|---|---|
| $176,000.00 | 7.990 % | 360 | | ☐ GPM  ☒ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 22660 CANDACE DR, Rockwood, MI 48173 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| | 1956 |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☒ Refinance  ☐ Construction-Permanent | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements  ☐ made  ☐ to be made |
|---|---|---|---|---|
| 2002 | $145,500.00 | $ 0.00 | | Cost: $ 0.00 |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| Ernest P Burgess, A Married Man | | ☒ Fee Simple  ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| |

## III. BORROWER INFORMATION

| | Borrower | | Co-Borrower |
|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | | Co-Borrower's Name (include Jr. or Sr. if applicable) | |
| Ernest P Burgess | | | |

| Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| ███████ | | | | | | | |

| ☒ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower)  no. 0  ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower)  no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☒ Own  ☐ Rent  2  No. Yrs. | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|
| 22660 Candace Dr | |
| Rockwood,MI 48173 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|
| 22660 CANDACE DR | |
| ROCKWOOD,MI 48173 | |

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower |
|---|---|---|---|
| Name & Address of Employer  ☐ Self Employed | Yrs. on this job | Name & Address of Employer  ☐ Self Employed | Yrs. on this job |
| Mechanical Woman | 5 | | |
| | Yrs. employed in this line of work/profession | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. areacode) | Position/Title/Type of Business | Business Phone (incl. areacode) |
|---|---|---|---|
| MASTER TECH | (419) 389-9992 | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income  $ | | Monthly Income  $ |

| Position/Title/Type of Business | Business Phone (incl. areacode) | Position/Title/Type of Business | Business Phone (incl. areacode) |
|---|---|---|---|
| | | | |

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income  $ | | Monthly Income  $ |

| Position/Title/Type of Business | Business Phone (incl. areacode) | Position/Title/Type of Business | Business Phone (incl. areacode) |
|---|---|---|---|
| | | | |

66806142

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4

Initials: E.B.

| ☐ Borrower's cell | ☐ Borrower's pager |
|---|---|
| ☐ Co-Borrower's cell | ☐ Co-Borrower's pager |

VMP ®-21N (0306)       VMP Mortgage Solutions (800)521-7291

0000006680614206059905 01

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 6,092.67 | | $ 6,092.67 | Rent | $ 0.00 | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 1,028.00 | 1,290.20 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 62.50 | 62.50 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 150.00 | 150.00 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 6,092.67 | | $ 6,092.67 | Total | $ 1,240.50 | $ 1,502.70 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income** Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | | $ 0.00 |
| B | | 0.00 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | *** SEE ADDENDUM *** | | |
| Vested 401k Retirement - Aggregated | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Checking/Savings - Aggregated | $ | | | |
| | | Acct. no. | | |
| Acct. no. | $ 1,400.00 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) /0 | $ 0.00 | | | |
| | | Acct. no. | | |
| Life insurance net cash value | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Face amount $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 1,400.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 185,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 1,173.29 | |
| Total Assets a. | $ 186,400.00 | Net Worth (a minus b) ▶ $ 139,467.00 | Total Liabilities b. | $ 46,933.00 |

0066806142

Initials: E.B.

Page 2 of 4

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

VMP-21N (0305)

0000006680614206059905502

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2660 CANDACE DR<br>ockwood, HI 48173 | H | SFR | $ 185000 | $ 133546 | $ 0 | $ 1028 | $ 313 | $ 0 |
| | | | | | | | | |
| | | | | | | | | |
| | | Totals | $ 185000 | $ 133546 | $ 0 | $ 1028 | $ 313 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ 0.00 |
| b. | Alterations, improvements, repairs | 0.00 |
| c. | Land (if acquired separately) | 0.00 |
| d. | Refinance (incl. debts to be paid off) | 142,938.21 |
| e. | Estimated prepaid items | 383.10 |
| f. | Estimated closing costs | 2,448.00 |
| g. | PMI, MIP, Funding Fee | 0.00 |
| h. | Discount (if Borrower will pay) | 7,105.00 |
| i. | Total costs (add items a through h) | 152,874.31 |
| j. | Subordinate financing | 0.00 |
| k. | Borrower's closing costs paid by Seller | 0.00 |
| l. | Other Credits (explain) | |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 176,000.00 |
| | PMI, MIP, Funding Fee financed | 0.00 |
| o. | Loan amount (add m & n) | 176,000.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -23,125.69 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|
| | | Yes | No | Yes | No |
| a. | Are there any outstanding judgments against you? | | X | | |
| b. | Have you been declared bankrupt within the past 7 years? | X | | | |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | X | | | |
| d. | Are you a party to a lawsuit? | | X | | |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. | Is any part of the down payment borrowed? | | X | | |
| i. | Are you a co-maker or endorser on a note? | | X | | |
| j. | Are you a U.S. citizen? | X | | | |
| k. | Are you a permanent resident alien? | X | | | |
| l. | Do you intend to occupy the property as your primary residence? If "Yes," complete question below. | X | | | |
| m. | Have you had an ownership interest in a property in the last three years? | | | | |
| | (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| | (2) How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and, Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X *Ernest P Burgess* | 1-9-04 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information. | CO-BORROWER | ☐ I do not wish to furnish this information. |
|---|---|---|---|
| **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino | | **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino | |
| **Race:** ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | | **Race:** ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | |
| **Sex:** ☐ Female ☒ Male | | **Sex:** ☐ Female ☐ Male | |

| To be Completed by Interviewer<br>This application was taken by: | Interviewer's Name (print or type)<br>Duane Gibson II | Name and Address of Interviewer's Employer<br>Ameriquest Mortgage Company. |
|---|---|---|
| ☐ Face-to-face interview<br>☐ Mail<br>☐ Telephone<br>☐ Internet | Interviewer's Signature | Date | 20600 Eureka Rd., # 518<br>Taylor,MI 48180 |
| | Interviewer's Phone Number (incl. area code)<br>(714) 541-9960 | |

0068806142

VMD-21N (0305)



Page 3 of 4

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

### Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>Burgess, Ernest P | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number:<br>0066806142 |



I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature:<br>X *Ernest P Burgess* | Date<br>1-9-04 |
|---|---|---|---|

0066806142

 -21N (0305)



0000006680614206059905O4

Page 4 of 4

Freddie Mac Form 65 01/04<br>Fannie Mae Form 1003 01/04