**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | Centralized before The Honorable Marvin E. Aspen |

**THIRD-PARTY DEFENDANTS' REPLY MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
FIFTH AMENDED CONSOLIDATED THIRD-PARTY COMPLAINT**

Third-Party Defendants, through their undersigned Liaison Counsel, submit this consolidated Reply Memorandum of Law in Support of their Motion to Dismiss the Fifth Amended Consolidated Third-Party Complaint pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

In their Fifth Amended Consolidated Third Party Complaint (the "FATPC"), Third-Party Plaintiffs have cast a considerably broader net than in their previous complaints, including dozens of additional cases and hundreds of additional claims against the Third-Party Defendants. While their net has broadened, however, so has their theory of liability, which is now so vague that the claims cannot survive under federal notice pleading standards. First, the breach of contract claims do not give fair notice to the Third-Party Defendants because Third-Party Plaintiffs conflate the distinct groups within the Third-Party Defendants as well as the different types of contracts that Third-Party Plaintiffs allegedly had with those groups. Second, the negligence claims are based solely on the duties that arose out of those contracts and therefore must fail under the economic loss doctrine. Third, the new negligent misrepresentation claims are also subject to that doctrine and do not fit

within any of its exceptions.  For the following reasons, Third-Party Plaintiffs have failed to state a claim under Fed. R. Civ. P. 8 and 12(b)(6), and after multiple failed attempts, the FATPC should now be dismissed in its entirety, with prejudice.

**I.  The Drastic Expansion of the Fifth Amended Consolidated Third Party Complaint Makes Clear that Third-Party Plaintiffs' Breach of Contract Claims Do Not Satisfy the Pleading Requirements of <u>Iqbal</u> and <u>Bell Atlantic</u>.**

      A.  The Breach of Contract Claims Lack Sufficient Specificity as to All Third-Party Defendants.

For the purposes of this Motion to Dismiss, it is not necessary to determine whether <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), raised the pleading standard above the bar set by <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 556 (2007), thereby warranting what Third-Party Plaintiffs characterize as a "reconsideration" of their breach of contract claims. As Third-Party Plaintiffs themselves point out, they have added "dozens" of new cases to the FATPC, and hundreds of new claims against "significantly more" Third-Party Defendants as were involved in the Second Amended Consolidated Third-Party Complaint (the "SATPC"). Opposition to Motion to Dismiss Fifth Amended Consolidated Third-Party Complaint (the "Opposition"), at 5.  The facts are now substantively different than they were in the SATPC, which is the complaint that this Court addressed in its Memorandum Opinion and Order of October 14, 2008 (the "October 2008 Order").  In fact, reference to Exhibit A of the FATPC versus Exhibit A of the SATPC shows that the new Exhibit A is just shy of twice as long as the old version (123 pages instead of 62 pages), and that the FATPC now involves approximately 300 Third-Party Defendants and close to 2,000 loan transactions.

The drastic expansion of Third-Party Plaintiffs' theory of liability and the addition of claims against title underwriters for *every transaction* that is the subject of the

FATPC illuminates the fact that Third-Party Plaintiffs are using this MDL proceeding as a way to avoid the pleading requirements of Iqbal and Bell Atlantic. The FATPC conflates the distinct groups within the Third-Party Defendants, each of which had different responsibilities with regard to the thousands of loan closings involved, and fails to recognize the differences between the various types of contracts that Third-Party Plaintiffs had with members of those groups. Third-Party Plaintiffs in one breath allege that *all* of the "Title Defendants," including the Title Underwriters, conducted the loan closings (FATPC ¶ 10), but in the next recognize that the Title Underwriters might not have done so (FATPC ¶ 11). Third-Party Plaintiffs similarly blur the distinctions between the contracts they had with the Closing Agents and Title Companies, see FATPC ¶ 10, and the nature of closing protection letters generally issued by Title Underwriters, see ¶ 11; they allege that *all* of the Third-Party Defendants' agreements with Third-Party Plaintiffs required them to close loans in accordance with Third-Party Plaintiffs' instructions (including providing the Notice of Right to Cancel forms), FATPC ¶¶ 14, 26, when that was clearly not the case for the Closing Protection Letters. See FATPC ¶ 11.

Despite these vague and generalized allegations regarding the obligations of the Third-Party Defendants and the terms of their contracts, it is notable that the Third-Party Plaintiffs have not alleged that the contracts between the parties were identical. They have not attached a single example contract to the FATPC for the Court or the parties to evaluate or quoted any exemplary provisions of contracts. Instead, Third-Party Plaintiffs have simply asked the Court to accept their *ipse dixit* assertion that every one of the hundreds of contracts that allegedly existed between the parties made all of the Third-Party Defendants liable for providing the forms in question to the Plaintiffs. Moreover, because it is now apparent that

the Third-Party Plaintiffs are alleging that multiple contracts were involved in each transaction, FATPC ¶¶ 10, 15, it is no longer the case that Exhibit A identifies at least a date for each of the agreements with the Third-Party Defendants or that Ameriquest has identified at least one substantive term common to all contracts. Consequently, it is no longer true that the Third-Party Defendants have fair notice of what the claims are and enough information to prepare their defenses. <u>Compare</u> October 2008 Order at 5-6.

Third-Party Plaintiffs do not argue that the Panel on Multi-District Litigation's consolidation of this case as a MDL relaxes the applicable pleading standards. <u>See</u> 15 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice & Procedure, § 3867 (West 2009) ("the fact that a pretrial motion is decided in the transferee forum rather than the transferor court should not produce a difference in how the issue raised by the particular motion is resolved."). They do, however, argue that "specific, individual allegations would be impractical." Opposition at 8. Impracticality, however, is not a license to cast a broader net than is permitted by Rule 8 and by <u>Iqbal</u> and <u>Bell Atlantic</u>. The FATPC's breach of contract claims, as they currently stand, no longer meet the standard set by those cases and should be dismissed in their entireties.

> B. The Breach of Contract Claims Lack Necessary Specificity as to the Title Underwriters in Particular.

The treatment of the Title Underwriters in the FATPC is especially problematic and highlights the reasons why the Third-Party Plaintiffs' breach of contract claims cannot go forward as plead. As the Third-Party Plaintiffs recognize at times, Title Underwriters generally do not close loans themselves, but instead play the different role of issuing insurance policies that insure the validity of titles and lien priority of mortgages.

FATPC ¶ 12. In certain circumstances, when they or their agents or related companies are responsible for closing loans, Title Underwriters may also issue a "closing protection letter," agreeing to indemnify the mortgagee for errors made during the closings. See FATPC ¶ 11; see, e.g., Lawyers Title Ins. Corp. v. Dearborn Title Corp., 993 F. Supp. 1159, 1160 (N.D. Ill. 1998) (title underwriter issued closing protection letters for closings conducted by its agent). However, when neither they nor any associated entity were responsible for the closings, Title Underwriters would have no basis on which to issue a closing protection letter guaranteeing a transaction's validity or assuming liability for an unrelated entity over which they had no control. Therefore, Third-Party Plaintiffs cannot merely lump the Title Underwriters together with the entities that actually closed loans pursuant to specific instructions from the Third-Party Plaintiffs, because that was not the Title Underwriters' role and that was not the subject of their agreements. See Bank One v. Trammel Crow Servs., Inc., 2003 U.S. Dist. LEXIS 23120, *7 (N.D. Ill. Dec. 22, 2003) ("The Contract itself serves as a basis for analysis for the claims against TCS because it was a party to the Contract, but it cannot do the same for Trammel Crow Company [because it was not a party]. . . . Although only notice pleading is required, the complaint must make Trammel Crow Company aware of what forms the basis for the claims against it.").

Moreover, Third-Party Plaintiffs appear to be merely assuming without a specific basis to believe that a closing protection letter was issued in connection with every single transaction listed in Exhibit A. FATPC ¶ 15 ("On information and belief, Closing Protection Letters were issued for each loan listed in Exhibits A and B hereto."). Third-Party Plaintiffs are apparently not in possession of a Closing Protection Letter for each transaction for which they have alleged that a Title Underwriter is liable. Significantly, unlike the

alleged agreements with the Third-Party Defendants that closed the loans, which are at least identified by date in Exhibit A to the FATPC, the closing protection letters are not identified by any means at all.  Therefore, these claims are decidedly not "plead with the exact same specificity as the other breach of contract claims alleged by the Third-Party Plaintiffs," see Opposition at 7, October 2008 Order at 5.  Third-Party Plaintiffs cannot use the MDL device to rope Title Underwriters into this case without providing a legally sufficient basis to do so under Rule 8, Iqbal, and Bell Atlantic, which they have thus far failed to do.

**II.      Third-Party Plaintiffs' Negligence Claims are Barred by the Economic Loss Doctrine Because They Fail to Allege that Third-Party Defendants had any Extra-Contractual Duties.**

In this Court's October 2008 Order, it held that Third-Party Plaintiffs had not alleged any duties on the part of Third-Party Defendants outside of the contractual duties that arose when the Third-Party Defendants agreed to close loans for the Third-Party Plaintiffs, and therefore it dismissed Third-Party Plaintiffs' negligence claims as barred by the economic loss doctrine.  October 2008 Order at 8-9.  While Third-Party Plaintiffs have attempted in the FATPC to flesh out and elaborate upon the duties that they allege Third-Party Defendants owed them, the fact remains that these are still the *same* duties as allegedly arose under the contracts between the parties: to close loans and provide all the necessary documentation and information related to the closing to the Plaintiffs and the Third-Party Plaintiffs.  Additionally, Third-Party Plaintiffs have not shown that their negligence claims fall into the exception to the economic loss doctrine that can apply to attorneys and accountants when those professionals are giving advice to their clients.

"The economic-loss doctrine bars negligence claims based on the failure to perform contractual obligations. . . .  The duty to administer the terms of the contract in a

reasonable way is controlled by the terms of the contract and the obligations, including the duty of good faith and fair dealing, imposed under contract law." LaSalle Bank Nat'l Ass'n v. Paramont Props., 588 F. Supp. 2d 840, 852 (N.D. Ill. 2008) (citing Prime Leasing, Inc. v. Kendig, 773 N.E.2d 84, 94 (Ill. App. Ct. 2002)); Trammel Crow, 2003 U.S. Dist. LEXIS at *11 ("The economic loss doctrine covers service contracts, and in this context prevents tort claims 'where the duty of the party performing the service is defined by the contract that he executes with his client.'") (quoting Congregation of the Passion, Holy Cross Province v. Touche Ross & Co., 636 N.E.2d 503, 514 (Ill. 1994)).

Therefore, Third-Party Plaintiffs must allege an *extracontractual* duty in order to recover under negligence law – and that extracontractual duty must be one that is recognized under the applicable state law. See Paramont Props., 588 F. Supp. 2d at 852. This they have not and cannot do. Below is a comparison of the alleged duties and contractual obligations that form the bases of the negligence and breach of contract claims:

| **Negligence** | **Breach of Contract** |
|---|---|
| "The general duties assumed and/or owed by the Title Defendants included [the duty to] . . . supervise all aspects of the escrow, title and closing processes for [Third-Party Plaintiffs'] loans" FATPC ¶ 17. | "the Title Defendants agreed to close [Third-Party Plaintiffs'] loans" FATPC ¶ 10. |
| ". . . to properly prepare, execute, and deliver necessary closing documents" FATPC ¶ 17. | "the Title Defendants warranted . . . that they would comply with [Third-Party Plaintiffs'] instructions including . . . accurately complete [necessary closing documents]" FATPC ¶ 14. |
| ". . . to communicate . . . material facts [in connection with the closings, and to] "disclose . . . whether the transaction was in compliance with all written and oral instructions . . . and copies of all documents were provided to the borrowers" FATPC ¶ 17. | "The contracts required . . . that each of the Title Defendants would provide accurate and complete information at the closing of plaintiffs' loans" FATPC ¶ 26. |

In fact, at one point Third-Party Plaintiffs specifically state that if the necessary forms were not provided to the plaintiffs, "these failures are attributable to the conduct of the Title Defendant(s) and in breach of the duties owed to [Third-Party Plaintiffs] pursuant to their *general duties of care* **and** pursuant to the *terms of the agreements* [between the parties]." FATPC ¶ 18 (emphasis added). Moreover, the addition of a general obligation to "exercise care in [performing the above duties]," FATPC ¶ 17, cannot make a negligence claim out of a breach of contract claim, because that would swallow the economic loss doctrine. The parties defined the terms of their relationship in the contracts that they allegedly entered into, and Third-Party Plaintiffs have not and cannot allege any additional, legally-recognized duties that arose on the part of the Third-Party Defendants in addition to those contractual obligations. See Congregation of the Passion, 636 N.E.2d at 514.[1]

Third-Party Defendants argue that their negligence claims are not barred because they fall into the professional negligence exception to the economic loss doctrine. They point out that some of the Third-Party Defendants are attorneys, and that the rest of them should be treated the same way because they are all performing the same function – closing loans. As discussed below, the professional negligence exception has been limited to attorneys and accountants only, and courts have specifically declined to extend it to real estate service providers. Its purposes would not be served by extending it to the Third-Party

---

[1] In footnote 6 of their Opposition, Third-Party Plaintiffs argue that the Title Underwriters cannot argue for dismissal on the basis of Third-Party Plaintiffs' failure to identify the applicable contracts and at the same time argue that recovery is barred under the economic loss doctrine because of the existence of those contracts. This argument is misdirected, because as shown above, the duties that the Third-Party Plaintiffs are alleging in fact *arose out of the alleged contracts*. If there was no contract between the Third-Party Plaintiffs and the Title Underwriters, there would also be no basis on which to allege that they had any duties to close loans.

Defendants in this case, because they were not performing services analogous to the services in professional negligence cases, and because contract law is better suited to protect the Third-Party Plaintiffs against their alleged losses. This Court, sitting in diversity jurisdiction and interpreting Illinois law, must construe the professional negligence exception narrowly. Dahm v. First Am. Title Ins. Co., 2008 U.S. Dist. LEXIS 28836, *7 (N.D. Ill. April 9, 2008).[2]

The Supreme Court of Illinois discussed the purpose behind the attorney-accountant exception to the economic loss doctrine in Congregation of the Passion, 636 N.E.2d at 515. An attorney or an accountant's obligations can not be adequately spelled out in a contract because those professionals must be allowed to make certain decisions independently, and their knowledge and expertise cannot be memorialized in contract terms. Id. They typically have obligations that arise outside of their contracts, such as rules of professional responsibility. Id. The Court did reference the difference between a tangible product and an intangible one, but emphasized that the underlying distinction is that when it comes to attorneys and accountants, "the value of the services rendered lies in the ideas behind the documents, not in the documents themselves." Id. at 515.

---

[2] As a preliminary matter, Third-Party Plaintiffs' reliance on this exception is yet another example of their attempts to use the MDL device as a means to obfuscate their pleading obligations. The fact that some Third-Party Defendants may be attorneys certainly cannot mean that the claims against all Third-Party Defendants should fall into the professional negligence exception to the economic loss doctrine. Third-Party Plaintiffs do not endeavor to identify for the Court which Third-Party Defendants are attorneys and which are not. Moreover, in order to apply the exception, Third-Party Plaintiffs should have to show that even if some Third-Party Defendants are attorneys by training, they were actually engaging in the practice of law by closing loans. The FATPC does not allege that the Third-Party Defendants were acting as counsel to Third-Party Plaintiffs. Instead, it alleges that Third-Party Defendants were required to follow Third-Party Plaintiffs' specific instructions, using standard forms and disclosures. Other than the failure to provide those forms or to communicate their failure to do so, Third-Party Plaintiffs do not allege any omissions on the part of Third-Party Defendants, and especially do not allege that Third-Party Defendants gave negligent legal advice.

As has been discussed, the attorney-accountant exception has been limited to those particular professions, and has specifically not been extended to real estate service providers. "[T]he profession of real estate service providers does not have an established tradition of tort claims, nor is the relationship directly analogous to attorneys or accountants." Bank One, 2003 U.S. Dist. LEXIS at *12. As applied to this case, that limitation is reasonable, because the breaches alleged here are the failure to (1) follow specific instructions for closing loans and (2) provide certain forms in connection with those closings. This is in contrast to a general instruction to an attorney or an accountant to act in the best interests of their client to achieve a general goal. Third-Party Plaintiffs could and did spell out their desired services in the alleged contracts, as they have stated in the FATPC. Moreover, the value in the documents that Third-Party Defendants allegedly were responsible for was not in the ideas behind those documents; the documents in question were standardized forms.

Third-Party Plaintiffs' citation to Choi v. Chase Manhattan Mortgage Co., 63 F. Supp. 2d 874, 890 (N.D. Ill. 1999), is not persuasive because their quote from that case (that escrow services are like "wise counsel") is taken out of context. That case in fact recognized that the appropriate analysis was whether contract law was better suited to protect the plaintiffs against the losses they alleged. Id. Because the parties there had not sufficiently addressed the issue, the court deferred a decision until summary judgment. Id. at 886. Here, however, it is clear that the alleged contracts between the parties are better suited to address Third-Party Plaintiffs' potential losses, because there is no allegation that Third-Party Defendants had any responsibilities that arose independently of those contracts. See Bank One, 2003 U.S. Dist. LEXIS at *12 (dismissing plaintiffs' negligence claims against

real estate service providers based on the economic loss doctrine and the fact that "the relationship between the parties *was well detailed in the Contract*.") (emphasis added).

Third-Party Plaintiffs suggest that this Court "should apply a choice of law analysis which in this case may lead to the result that the substantive law of each transferor state should apply to each individual case." Opposition at 10. They then refer to a handful of cases from other jurisdictions that they allege stand for the proposition that closing agents owe a duty of care. Opposition at 10-11. It is not this Court's burden, however, to engage in a choice of law analysis without any input from the parties and then to conduct a 50-state survey to determine whether each of Third-Party Plaintiffs' claims could survive under its home state's law. Econ. Folding Box Corp. v. Anchor Frozen Foods Corp., 515 F.3d 718, 720-21 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them."). Instead, under Iqbal and Bell Atlantic, as discussed above, it is Third-Party Plaintiffs' burden to state a claim under applicable law. So far, they have merely suggested that there may be a claim in other states and that they will figure it out later. That is not sufficient, just as it would not be if these cases had not been consolidated for the purposes of pretrial proceedings.

## III. Third-Party Plaintiffs' Negligent Misrepresentation Claims are Also Barred by the Economic Loss Doctrine, and Do Not Fit Into the Supplier of Commercial Information Exception.

Third-Party Plaintiffs argue that their negligent misrepresentation claim survives the application of the economic loss doctrine because it fits in the "supplier of commercial information exception." For this exception to apply, "[a] defendant must be 'in the business of supplying information for the guidance of others in their business transactions,' and the end result of the relationship must be an intangible object which could

not be described in a contract." <u>Bank One</u>, 2003 U.S. Dist. LEXIS at *13-14. This exception is the other side of the same coin as the professional negligence exception discussed above. <u>Bank One</u>, 2003 U.S. Dist. LEXIS at *9 n.6 (noting the similarity between the two concepts). Like the professional negligence exception, this exception must be construed narrowly. <u>Dahm</u>, 2008 U.S. Dist. LEXIS 28836, *7.

In this Court's October 2008 Order, it noted that Third-Party Plaintiffs were proposing to state a claim for negligent misrepresentation, with the misrepresentation being that Third-Party Defendants would deliver compliant disclosures. <u>See</u> October 2008 Order at 9 n.7. The Court denied their request for leave to add such a claim at that time, saying that "the purported misrepresentation appears to be a matter of law." <u>Id</u>. In the FATPC, Third-Party Plaintiffs' allegations of misrepresentations in the FATPC are not substantively distinguishable from the proposed misrepresentation that has already been rejected by the Court. Third-Party Plaintiffs allege the following:

> 39. The Title Defendants made false representations of fact to [Third-Party Plaintiffs] by, among other things, representing to [Third-Party Plaintiffs] that all closing, title, and escrow documents were properly prepared, executed and delivered and that the transactions were completed in accordance with instructions. Among other things, Title Defendants reported that the Notices of Right to Cancel were properly prepared and executed, and that a correct number of copies were delivered. In the event that plaintiffs' allegations are proved true, such reports by Title Defendants were misrepresentations of fact.

This is simply an elaboration on a representation that they would "deliver compliant disclosures." Accordingly, this Court's initial impression was correct, and the negligent misrepresentation claims should be dismissed because they allege misrepresentations of law.

In any event, it is apparent from the contrast between the alleged role played by the Third-Party Defendants in this case and the common roles played by attorneys, accountants, and other pure information providers, that Third-Party Plaintiffs' claims do not fall within the supplier of information exception. Third-Party Defendants' primary alleged responsibility was to close loans and provide certain designated forms to the plaintiffs. Under Bank One, this is something that could be – and Third-Party Plaintiffs allege was – specifically contracted for. There is no argument that it was so amorphous or indescribable that it could not be specified in the agreements that the parties entered into. The *only* alleged misrepresentation is that the Third-Party Defendants told the Third-Party Plaintiffs that they had complied with these instructions when they in fact had not. That is nothing like the legal or financial advice at issue in cases where the courts apply the supplier of information exception. See, e.g., Congregation of the Passion, 636 N.E.2d at 514-15.

A notable absence from Third-Party Plaintiffs' Opposition is any discussion of the Illinois Supreme Court's decision in First Midwest Bank, N.A. v. Stewart Title Guar. Co., 843 N.E.2d 327, 335-336 (Ill. 2006), which held that a title insurer was not in the business of supplying information when it issued a title commitment or a policy of title insurance, and accordingly the negligent misrepresentation exception (aka the supplier of commercial information exception) did not apply. In that case, the lender sued the title insurance company when it found out that there was a restrictive covenant on the mortgaged property only after having lent the money to the mortgagor. Id. at 330-31. The lender alleged that the title insurer "failed to include in either the title commitment or the title insurance policy the existence of restrictive covenants which encumbered title to [the property]." Id. at 335. The Court rejected this argument, finding that in issuing a title commitment or a title insurance

-13-

policy, it was not the title insurance company's purpose or obligation to disclose all encumbrances on the title. Id. at 341. The Court held, "a title insurer is not in the business of supplying information when it issues a title commitment or a policy of title insurance and, accordingly, the negligent misrepresentation exception to the *Moorman* doctrine [the economic loss doctrine] does not apply. The scope of a title insurer's liability is properly defined by contract." Id. at 336.

Third-Party Plaintiffs instead cite M W Mfrs., Inc. v. Friedman Corp., 1998 U.S. Dist. LEXIS 11309, *12 (N.D. Ill. July 16, 1998), for the proposition that the appropriate test for whether a defendant is "supplying information" under this exception is "whether the end product of the relationship between the parties is a tangible object (i.e., a product) which could readily be described in a contract or whether it is intangible," and Tolan and Son, Inc. v. KLLM Architects, Inc., 719 N.E.2d 288, 296-297 (Ill. App. Ct. 1999), for the proposition that the appropriate analysis is to look at the range of possible defendants (and the information they provide) as a continuum. Under both of these cases, however, Third-Party Defendants should still not be considered suppliers of commercial information. Under M W Mfrs., the end product of the parties' relationship could be and was described in the alleged contracts that they entered into. Under Tolan, the court instructed that for cases between pure information providers (e.g., attorneys) and pure non-information providers (e.g., manufacturers), courts should "scrutinize the precise information and transaction involved in each case." 719 N.E.2d at 298. Here, the only information allegedly involved is whether the Third-Party Defendants appropriately followed instructions. Therefore, as a matter of law, Third-Party Defendants should not be considered to be in the business of supplying commercial information to Third-Party Plaintiffs. Instead, they were allegedly in

the business of closing loans, and any information provided to the Third-Party Plaintiffs was incidental to the transactions.

Finally, the application of the information supplier exception to a mortgage broker in Ivanhoe Fin., Inc. v. Highland Banc Corp., 2004 U.S. Dist. LEXIS 2966 (N.D. Ill. Feb. 25, 2004), is distinguishable from this case. In Ivanhoe, the defendant mortgage broker was accused of knowingly, or at least negligently, submitting false *information* regarding the salaries of potential borrowers and the value of the properties they wished to buy to the plaintiff lender. 2004 U.S. Dist. LEXIS at *17. The plaintiff acted on that information and issued loans to the borrowers. Id. at *2-3. The Court noted that the mortgage broker's "entire role under the contract was to supply plaintiff with information to enable it to determine whether to fund various loans." Id. at *14 n.2. The information conveyed was not merely whether the mortgage broker had complied with that term, but instead was itself a fraudulent misrepresentation of the underlying facts.

Finally, for the same reasons as discussed above with regard to Third-Party Plaintiffs' negligence claims, the possibility that other states' laws could possibly be more favorable to their claims, without more, cannot be a basis for the claims to go forward here.

## IV.    Conclusion

For the reasons stated in this Reply as well as in Third-Party Defendants' Memorandum of Law in Support of their Motion to Dismiss Fifth Amended Consolidated Third-Party Complaint, Third-Party Defendants respectfully request that, pursuant to Fed. R. Civ. P. 12(b)(6), the Court grant their Motion to Dismiss the Fifth Amended Consolidated Third-Party Complaint in its entirety.

Dated:   October 2, 2009                    By: /s/ David Chizewer
                                            *Liaison Counsel for Third-Party*
                                            *Defendants and counsel for National*
                                            *Real Estate Information Services, Inc.*

                                            David J. Chizewer
                                            Steven A. Levy
                                            Kathryn B. Walter
                                            GOLDBERG KOHN BELL BLACK
                                              ROSENBLOOM & MORITZ, LTD.
                                            55 East Monroe Street
                                            Suite 3300
                                            Chicago, Illinois  60603
                                            Telephone (312) 201-4000
                                            Facsimile (312) 332-2196

## <u>CERTIFICATE OF SERVICE</u>

I, David J. Chizewer, hereby certify that on this 2nd day of October, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  David J. Chizewer