**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTENA BLAIN and THOMAS B. BLAIN, | ) | 07 C 124 (N.D.Ill.) |
| | ) | |
| Plaintiffs, | ) | Originally 5:00-cv-00170RHB |
| | ) | (W.D.MI) |
| v. | ) | |
| | ) | Transferred for pre-trial proceedings |
| ARGENT MORTGAGE COMPANY, L.L.C.; | ) | to MDL No. 1715 |
| AMERIQUEST MORTGAGE COMPANY, | ) | Lead Case No. 05 C 7097 |
| GOLDMAN SACHS MORTGAGE COMPANY, | ) | |
| BAC HOME LOANS SERVICING, L.P, and | ) | |
| DOES 1-5, | ) | Judge Marvin E. Aspen |
| | ) | |
| Defendants. | ) | **DEMAND FOR JURY TRIAL** |

<u>**FIFTH AMENDED COMPLAINT**</u>

<u>**INTRODUCTION**</u>

1.      Plaintiffs Christena Blain and Thomas B. Blain bring this action against a

"subprime" mortgage lender and its affiliates and successors to secure relief, including rescission,

for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing

Federal Reserve Board Regulation Z, 12 C.F.R. part 226, and the Equal Credit Opportunity Act,

15 U.S.C. §1691 et seq. ("ECOA").

<u>**JURISDICTION AND VENUE**</u>

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331

(general federal question), 1337 (interstate commerce), and 15 U.S.C. §§1640 (TILA) and 1691e

(ECOA).

3.      Defendants do business in the District and are deemed to reside here.  In

1

addition, the multi-district litigation proceeding involving Ameriquest and Argent is pending here.  Venue is therefore proper under 28 U.S.C. §1391(c).

## PARTIES

4.     Plaintiffs Christena Blain and Thomas B. Blain are husband and wife and own and reside in a single family  home located at 10417 Cooley Lake Road, Commerce Township, MI  48382.

5.     Defendant Argent Mortgage Company, L.L.C. ("Argent") is a foreign corporation which maintains offices in and does business in Michigan.  Its registered agent and office are National Registered Agents, 712 Abbott Road, East Lansing, MI 48823, or 200 W. Adams, Chicago, IL 60606.

6.     Defendant Argent is engaged in the business of originating "subprime" mortgages.

7.     Defendant Argent makes more than 26 loans per year.

8.     Defendant Argent is a "creditor" as defined in TILA and Regulation Z.

9.     Defendant Argent is an affiliate of Ameriquest Mortgage Company.

10.     Defendant Ameriquest Mortgage Company is a foreign corporation which does business in Michigan.   Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823, or 200 W. Adams, Chicago, IL 60606.

11.     During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period.  Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States.  During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same

2

period in 2003.

12.    Defendant Goldman Sachs Mortgage Company is a New York partnership which transacts business in Michigan. It holds legal title to some loans originated by Ameriquest Mortgage Company, including plaintiffs'. Its process address is The Partnership, One New York Plaza, 37th Floor, General Counsel, New York, NY 10004.

13.    Defendant BAC Home Loans Servicing, L.P. is a foreign limited partnership which transacts business in Michigan and Illinois. Its registered agent and office is C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604. It claims an interest in plaintiffs' loan, including the right to receive payments thereunder. It is joined as a necessary party.

14.    In the event Goldman Sachs does not own plaintiffs' loan, the owners are named as Does 1-5.

## FACTS RELATING TO PLAINTIFFS

15.    In February 2004, plaintiffs applied for a mortgage, through a broker, American Elite Financial, for a mortgage with Argent. The application was processed by the Rolling Meadows, Illinois office of Argent.

16.    Because American Elite received a yield spread premium from Argent (Exhibit C, line 808 and Exhibit D, line 807), its actions are attributable to Argent.

17.    Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

18.    On information and belief, at all relevant times, plaintiffs spoke with American Elite employee Alicia Doederlein.

19.    During the initial phone conversation, plaintiffs requested a thirty-year

3

fixed mortgage rate. Throughout the application process, Ms. Doederlein assured plaintiffs that they would receive a fixed rate.

20.     In February, 2004, American Elite mailed plaintiffs preliminary documents to sign and fax back. One of these documents was a loan application stating that plaintiffs' property was valued at $170,000. Exhibit J. Plaintiff Thomas Blain and Ms. Doederlein both signed this application Feburary 17, 2004.

21.     The same day, Ms. Doederlein prepared a loan application stating that plaintiffs' property was valued at $183,000. Exhibit K. This amount was substantially and artificially inflated. On information and belief, plaintiffs never received a copy of Exhibit K until it was produced as discovery in this lawsuit. Only Ms. Doederlein's signature appears on Exhibit K.

22.     Prior to March 9, 2004, Ms. Doederlein and/or American Elite Financial arranged for an appraisal of plaintiffs' residence and property.

23.     Ms. Doederlein then informed plaintiffs by telephone that this appraisal had come in too low, and that American Elite Financial would arrange a new appraisal for a second opinion. Plaintiffs were not provided with a copy of this appraisal or with the standard disclosure notice of how to request it.

24.     Ms. Doederlein and American Elite then arranged for a second appraisal to be performed by Accurate Appraisal Group, Inc.

25.     Accurate Appraisal Group, Inc. performed another appraisal at plaintiffs' residence on or about March 9, 2004 and prepared a written appraisal report on March 9, 2004. A copy of this appraisal is attached as Exhibit L.

4

26.     According to Accurate Appraisal Group, Inc.'s report, the appraised value of plaintiffs' home was exactly $183,000.  Exhibit L.

27.     Ms. Doederlein then informed plaintiffs by telephone that the second appraisal had come in at $183,000, and that this was high enough to close the loan.

28.     An employee of Argent Mortgage Company, on information and belief Pedro Alvarado, performed a review of the appraisal and found it to be reasonable.  Exhibit M.

29.     Plaintiff Christena Blain requested a copy of her this appraisal report several times over the telephone, both before and after closing.  Each person she spoke to claimed that they didn't have her appraisal on file and gave her other phone numbers to call.  Plaintiffs never received a copy of their appraisal until it was produced as discovery in this lawsuit.

30.     The principal amount of the loan was $173,500.  On information and belief, this is more than the home is actually worth.

31.     Most reputable lenders will not make a loan that exceeds 80% of the value of the home ("LTV"), at least not without also imposing expensive private mortgage insurance ("PMI").

32.     On information and belief, American Elite, Ms. Doederlein, and Accurate Appraisals, Inc. conspired to produce a fraudulent, inflated appraisal of plaintiffs' property, for the purpose of increasing the amount for which the plaintiffs' qualified and increasing the broker's fees and the lender's points, interest and profits.

33.     On March 9, 2004, Argent prepared a Good Faith Estimate confirming that plaintiffs would receive a fixed-rate loan.  Exhibit N.

34.     The loan was closed on March 16, 2004.

35.     The following are documents relating to the loan:

    a.     A note, <u>Exhibit A</u>.  Only Mr. Blain signed the note.

    b.     A mortgage, <u>Exhibit B</u>.  Both Mr. and Mrs. Blain signed the mortgage.

    c.     Two different  settlement statements, with different numbers, <u>Exhibits C and D</u>.

    d.     The official Federal Reserve Board notice of right to cancel, <u>Exhibit E</u>.   Of the five copies of <u>Exhibit E</u> furnished to plaintiffs, three  were incomplete, as indicated.

    e.     A Truth in Lending disclosure statement, <u>Exhibit F</u>.

36.     Immediately prior to closing, Argent changed plaintiffs' terms to an adjustable rate.  Plaintiffs were not informed of the change.  They assumed that they were signing the same fixed rate that they had discussed and for which they had received a Good Faith Estimate. <u>Exhibit N</u>.

37.     Plaintiffs did not realize that they had entered into an adjustable rate until they received their first statement, two month after closing.

38.     Since then, plaintiffs have attempted to refinance again several times. Each of these attempts has been rejected.

39.     Immediately after the closing plaintiffs were notified to make payments to Ameriquest.  (<u>Exhibit G</u>)

40.     Ameriquest Mortgage Company claims or claimed an interest in plaintiffs' loan, including the right to receive payments under it.

41.     Plaintiffs were later directed to pay Countrywide.  Then, in May 2009, plaintiffs began receiving statements from BAC Home Loans Servicing, L.P.

42.     On information and belief, plaintiffs' loan is owned by Goldman Sachs Mortgage Company.

## COUNT I – TRUTH IN LENDING ACT

43.     Plaintiffs incorporate paragraphs 1-42.  This claim is against all defendants.

44.     In order to give consumer borrowers the opportunity to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three days of receiving notice of their right to rescind, whichever is later.  More specifically, the statute, provides that:

> **Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.**  (15 U.S.C. § 1635(a)).

45.     To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction.  More specifically, the statute provides:

> **When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission.  Within 20 days after receipt of a notice of rescission, the**

**creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.** (15 U.S.C. § 1635(b).)

46.     To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> **The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.** (15 U.S.C. § 1635(a).)

47.     Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. The regulation restates the statutory rescission right, 12 C.F.R. § 226.23(a), and requires that the creditor "deliver" to each person entitled to rescind "two copies" of a document that "clearly and conspicuously disclose" 12 C.F.R. § 226.23(b)(1) the borrower's rescission rights.

48.     More specifically, the regulation provides:

> **In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

> **(i) The retention or acquisition of a security interest in the consumer's principal dwelling.**

> **(ii) The consumer's right to rescind the transaction.**

> **(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(iv) The effects of rescission, as described in paragraph (d) of this section.**

**(v) The date the rescission period expires.**  (12 C.F.R. § 226.23(b)(1).)

<u>**DEFECTIVE NATURE OF DISCLOSURES**</u>

49.     In connection with the plaintiffs' loan, Argent failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, and failed to provide the required financial disclosures,  in violation of 15 U.S.C. §1638 and 12 C.F.R. §226.18, for (without limitation) the following reasons:

<u>**Incomplete / Insufficient Notices**</u>

50.     Three of the five official Notice of Right to Cancel forms delivered to plaintiffs did not set forth any date on the rescission period expired, a violation of 12 C.F.R. § 226.23(b)(1)(v), when four complete copies (two to each plaintiff) were required.

<u>**Notices Confusing Where Less Than All Owners Are Obligated**</u>

51.     <u>Exhibit E</u> is inherently confusing with respect to who has a right to cancel in a case in which less than all of the persons signing the mortgage sign the note.  The confusing portions were added by Ameriquest to the official Federal Reserve Board text.

52.     The top of <u>Exhibit E</u> has only Mr. Blain's name on it, and is addressed to "borrower(s)."  The text is addressed to "You," which is reasonably interpreted as applying to the individual whose name appears directly above.  The bottom of the form states that "Each borrower" has the right to cancel, which is reasonably interpreted as meaning the persons named as "borrower(s)" at the top of the document.  While there are signature lines for both plaintiffs at the bottom of the form, they are there described as "Borrower/ Owner," which presumably means

9

something different than just "borrower."

53.     The statute gives not only each person obligated to repay the loan but each person who resides in and has an ownership interest in the property the right to cancel, and requires a notice that unequivocally tells each such person that they have the right to cancel.

54.     Notice of rescission has been given to defendants.  A copy is attached as Exhibit H.

55.     The loan has not been rescinded.

56.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

57.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

a.     A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

b.     Statutory damages for the underlying disclosure violation;

c.     If appropriate, statutory damages for failure to rescind;

d.     Attorney's fees, litigation expenses and costs; and

e.     Such other or further relief as the Court deems appropriate.

10

## COUNT II – EQUAL CREDIT OPPORTUNITY ACT

58.     Christena  Blain incorporates paragraphs 1-57.

59.     This claim is against Argent.

60.     On information and belief, the majority of the instances in which less than all owners of the property sign a note in favor of defendant are where a husband and wife own the property and only the husband signs the note.

61.     On information and belief, it is defendant's practice, if the wife does not have an income and/or her credit score is no better than the husband's, to prepare the loan documents in this manner.

62.     Defendant's practice thus impairs and obfuscates the cancellation rights of women, and married women particularly, because of their gender and marital status, in violation of the ECOA's prohibition against discrimination on such bases.

WHEREFORE, plaintiff Christena Blain requests that the Court enter judgment in favor of plaintiff  and against defendant for:

a.     Appropriate statutory and punitive damages;

b.     Attorney's fees, litigation expenses and costs.

c.     Such other or further relief as the Court deems appropriate.

## COUNT III – MICHIGAN MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

63.     Plaintiffs incorporate paragraphs 1-42.  This claim is against Argent.

64.     Argent engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b) by engaging in "bait and switch" practices, by promising

11

plaintiffs a fixed interest rate after obtaining sufficient financial information to provide an accurate quote, then switching plaintiffs to an adjustable interest rate at the closing.

65.     Plaintiffs were induced to transact with Argent by means of this misrepresentation.

66.     Defendant Argent made the representation in the course of trade and commerce.

67.     Defendant Argent made the representations for the purpose of inducing reliance, in the form of plaintiffs transacting with Argent.

68.     Plaintiffs were injured by Argent's misrepresentations.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against defendant for:

      a.     A declaratory judgment, MCL §445.1681(1)(a);

      b.     Injunctive relief, MCL §445.1681(1)(b);

      c.     Appropriate damages, MCL §445.1681(1)(c);

      d.     Attorney's fees, litigation expenses and costs of suit; and

      e.     Such other and further relief as the Court deems proper.

## COUNT IV – MICHIGAN MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

69.     Plaintiffs incorporate paragraphs 1-42.  This claim is against Argent.

70.     Defendant engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b) by producing and conspiring with American Elite, Alicia Doederlein, and Accurate Appraisals, Inc. to produce an inflated, fraudulent appraisal of

plaintiffs' property, in order to make it look like plaintiffs qualified for a higher loan amount and, thereby, to increase their own fees, commissions and profits.

71. Plaintiffs were induced to transact with Argent and sign for a mortgage with a high loan-to-value ratio by means of the misrepresentation that, based on the property value, they qualified for the loan.

72. Defendant made the representation in the course of trade and commerce.

73. Defendant made the representation for the purpose of inducing reliance, in the form of plaintiffs borrowing a higher principal.

74. Plaintiffs were injured by defendants' misrepresentations.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against defendants for:

      a.     A declaratory judgment, MCL §445.1681(1)(a);

      b.     Injunctive relief, MCL §445.1681(1)(b);

      c.     Appropriate damages, MCL §445.1681(1)(c);

      d.     Attorney's fees, litigation expenses and costs of suit;

      e.     Such other and further relief as the Court deems proper.

### COUNT V – COMMON LAW FRAUD

75. Plaintiffs incorporate paragraphs 1-42. This claim is against Argent.

76. Defendant represented that plaintiffs qualified for the loan based on the appraised value of plaintiffs' property.

77. Defendant fraudulently inflated the value of plaintiffs' property. Therefore, the representations that plaintiffs qualified for the loan and could afford it were also

false and fraudulent.

78.     The value of plaintiffs' property was information that was material to the terms of their transaction with defendants.

79.     At the time defendant falsified the property value, they knew that this representation was false.  Alternatively, they became aware of the false information before closing and/or ratified it later.

80.     Defendant made the representations with the intent that they would be acted upon by plaintiffs.

81.     In reliance on defendants' representations, plaintiffs closed on the loan with Argent.

82.     As a result of Ameriquest's inflated appraised value, plaintiffs have been injured in that they have been and will continue to be overcharged and are unable to refinance with another company.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against defendant for:

    a.     Actual and compensatory damages;

    b.     Punitive damages; and

    c.     Such other relief as the Court deems appropriate.

**COUNT VI - DAMAGES RESULTING FROM CIVIL CONSPIRACY**

83.     Plaintiffs incorporate paragraphs 1-42.  This claim is against Argent.

84      Defendant combined and conspired with American Elite Financial, Alicia Doederlein, and Accurate Appraisals, Inc. to arrange for and produce a fraudulent, appraised

14

value for plaintiffs' property.

85.     Defendant took concerted and overt actions to accomplish this fraudulent purpose.

86.     Among other things, defendants conspired - out of excessive concern for their own fees, commissions and profits - to misrepresent, conceal and suppress the actual market value of plaintiffs' property.  They wanted to ensure that the loan would be approved, closed and funded.

87.     Plaintiffs were damaged as a result of defendants' conspiracy.  They are struggling to afford the monthly payments, and the inflated appraisal has resulted in them being overcharged and prevents them from refinancing with a more reputable company.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor of and against defendant for:

a.     Actual damages;

b.     Incidental, consequential and special damages;

d.     Costs of litigation and expenses; and

e.     Such other or further relief as this Court deems appropriate.


s/ Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor

Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury.

s/ Daniel A. Edelman
Daniel A. Edelman

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on October 6, 2009, a correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that copies were sent by U.S. mail to parties without e-mail addresses.

Mark D. van der Laan
Dykema Gossett PLLC
300 Ottawa Ave. NW
Suite 700
Grand Rapids, MI 49503

Brian Clark Summerfield
Bodman LLP
1901 St. Antoine St.
6th Floor at Ford Field
Detroit, MI 48226

Bernard E. LeSage
blesage@buchalter.com

BAC Home Loans Servicing, LP
c/o Registered Agent
C.T. Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

s/ Daniel A. Edelman
Daniel A. Edelman

16

EXHIBIT A

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

March 16, 2004
Date

Rolling Meadows
City

IL
State

10417 COOLEY LAKE RD, COMMERCE TOWNSHIP, MI 48382
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 173,500.00  (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is  **Argent Mortgage Company, LLC.**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  **6.600 %.**  This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   May 1, 2004 .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, **April 1, 2034** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at   **505 City Parkway West, Suite 100, Orange, CA 92868**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,108.08 .  This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of,  **April, 2006**   and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  **four and one-half** percentage point(s) (4.500%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:_____

6.000 %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) 1.000% from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.600 % or less than 6.600 %.

### (E) Effective Date of Changes
My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5. PREPAYMENT PRIVILEGE
I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section.  A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

#### (A) Prepayment Made Three (3) year(s) After the Date of this Note
If I make a prepayment commencing on or after the Three (3) year anniversary of the date of this Note, I may make that prepayment, in full or in part, without the imposition of a prepayment charge by the Lender.

#### (B) Prepayment Made Within Three (3) year(s) of the Date of this Note
I agree to pay Lender a prepayment charge if I make a prepayment before the Three (3) year(s) anniversary of the date this Note is executed.  The prepayment charge I will pay will be equal to one percent (1%) on the amount by which the total prepayment(s) within any 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

#### (C) Application of Funds
I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

#### (D) Monthly Payments
If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and the Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

### 6. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me.  If a refund reduces the principal, the reduction will be treated as a partial prepayment.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED
#### (A) Late Charges for Overdue Payment
If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 5.000% of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

#### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.  The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

#### (D) No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials:_____
03/16/2004 10:45:02 AM

Loan Number: 0057018558 - 9703

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)           _____ (Seal)
Borrower   THOMAS B. BLAIN                          Borrower

_____ (Seal)           _____ (Seal)
Borrower                                            Borrower

# EXHIBIT B

# MORTGAGE

Return To:

Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 16, 2004 together with all Riders to this document.

(B) "Borrower" is THOMAS B. BLAIN and CHRISTENA BLAIN, Husband and Wife

Borrower's address is 10417 COOLEY LAKE RD, COMMERCE TOWNSHIP, MI 48382
. Borrower is the mortgagor under this Security Instrument.
0057018558 - 9703

MICHIGAN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3023 1/01

-6(MI) (0005)

Page 1 of 15          Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

03/16/2004 10:45:02

(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware
Lender's address is One City Boulevard West Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated March 16, 2004
The Note states that Borrower owes Lender one hundred seventy-three thousand five hundred and 00/100 Dollars
(U.S. $173,500.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2034
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

0057018558-9703
Initials:_____

-6(MI) (0005)
Page 2 of 15     03/16/2004 10:45:02     Form 3023 1/01

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County                                    [Type of Recording Jurisdiction]
of OAKLAND                                    [Name of Recording Jurisdiction]:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 1703201074                              which currently has the address of
10417 COOLEY LAKE RD                                                        [Street]
COMMERCE TOWNSHIP                              [City], Michigan 48382          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

                                              0057018558 - 9703
                                                   Initials:_____
-6(MI) (0005)            Page 3 of 15       03/16/2004 10:45:02  Form 3023 1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any;

0057018558 - 9703
Initials: 

(c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.



Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

0057018558 - 9703

Initials:_____

-6(MI) (0005)                    Page 6 of 15     03/16/2004  10:45:02          Form 3023  1/01

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

0057018558 - 9703

Initials: _____

-6(MI) (0005)   Page 7 of 15   03/16/2004 10:45:02   Form 3023 1/01

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

0057018558 - 9703

Initials:

-6(MI) (0005)                    Page 8 of 15      03/16/2004  10:45:02      Form 3023 1/01

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if

0057018558 - 9703

Initials: _____

-6(MI) (0005)      Page 9 of 15     03/16/2004 10:45:02     Form 3023 1/01

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly

notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any

0057018558 - 9703
Initials: _____


-6(MI) (0005)

Page 12 of 15   03/16/2004 10:45:02    Form 3023 1/01

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

0057018558 - 9703

Initials: _____

 -6(MI) (0005)

Page 13 of 15   03/16/2004 10:45:02   Form 3023 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          THOMAS B. BLAIN            -Borrower

_____          _____ (Seal)
                                          CHRISTENA BLAIN            -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                 -Borrower

0057018558 - 9703

-6(MI) (0005)          Page 14 of 15     03/16/2004 10:45:02  Form 3023 1/01

STATE OF MICHIGAN,    County ss:

The foregoing instrument was acknowledged before me this_____ by
Day/Month/Year

_____

_____

_____

My Commission Expires:

_____
Notary Public

_____ County, Michigan

Prepared By:   Argent Mortgage Company, LLC
David Dickson
2550 Golf Road, East Tower, 10th Floor, Rolling Meadows, IL 60008



03/16/2004 10:45:02 AM

## ADJUSTABLE RATE RIDER

### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 16th day of March , 2004   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:  '

   10417 COOLEY LAKE RD, COMMERCE TOWNSHIP, MI  48382
                                  [Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of  6.600 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

### 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The interest rate I will pay may change on the first day of  April, 2006  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

#### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index.   The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0057018558 - 9703

610-1 (Rev 1/01)                         Page 1 of 3

03/16/2004 10:45:02 AM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **four and one-half** percentage points ( **4.500 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.600% or less than 6.600%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One( 1.000 %)** from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.600)% or less than 6.600)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property"** means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number: 0057018558 - 9703

810-2 (Rev 1/01)                    Page 2 of 3

03/16/2004 10:45:02 AM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)   _____ (Seal)
Borrower THOMAS B. BLAIN                    Borrower CHRISTENA BLAIN

_____ (Seal)   _____ (Seal)
Borrower                                    Borrower

Loan Number: 0057018558 - 9703

510-3 (Rev 1/01)                    Page 3 of 3

                                            03/16/2004 10:45:02 AM

# EXHIBIT C

| Settlement Statement Optional Form for Transactions without Sellers | U.S. Department of Housing and Urban Development | OMB Approval No. 2502-0491 WLI |
|---|---|---|

| Name & Address of Borrower: THOMAS B. BLAIN | Name & Address of Lender: Argent Mortgage Company, LLC |
|---|---|
| 10417 COOLEY LAKE RD    COMMERCE TOWNSHIP,MI 48382 | 2550 Golf Road, East Tower, 10th Floor Rolling Meadows, IL 60008 |
| Property Location: (if different from above) | Settlement Agent: SEARCH2CLOSE |
| 10417 COOLEY LAKE RD, COMMERCE TOWNSHIP, MI  48382 | Place of Settlement: 3000 CORPORATE EXCHANGE DR STE 401 Columbus,OH 43231 |

| L. Settlement Charges | | Loan Number: 0057018558 - 9703 | Settlement Date: Estimated 03/22/2004 |
|---|---|---|---|

| 800. Items Payable in Connection with Loan | |
|---|---|
| 801. Loan origination fee    % to | |
| 802. Loan discount    % to | |
| 803. Apprsl/Prep Val to ACCURATE APPRAISAL GROUP | $275.00 |
| 804. Credit report to | |
| 805. Inspection fee to | |
| 806. | |
| 807. | |
| 808. Yield Spread Premium to AMERICAN ELITE FINANCIAL    *L $1,735.00 | |
| 809. | |
| 810. Tax Related Service Fee to  Argent Mortgage Company, | $70.00 |
| 811. Flood Search Fee to  Argent Mortgage Company, LLC | $16.00 |
| 812. Lenders Processing Fee to | |
| 813.Admin to Argent Mortgage Company, LLC | $175.00 |
| 814. Doc. Prep. Fee to | |
| 815. Credit Report Fee to | $0.00 |
| 816. Origination Fee  1.500  % to  American Elite Financial Inc | $2,602.50 |
| 817. Application Fee to | |
| 818. Underwriting Fee to | |
| 819. Service Provider Fee to | |
| 820. Processing Fee  to  AMERICAN ELITE FINANCIAL | $850.00 |
| 821. Underwriting Fee to  Argent Mortgage Company, LLC | $375.00 |
| 822. Appraisal Fee to | |
| 900. Items Required by Lender to be Paid in Advance | |
| 901. Interest from 03/22/2004  to  04/01/2004  @  $31.37  per day | $313.70 |
| 902. Mortgage insurance premium for         months to | |
| 903. Hazard ins prem  to | $0.00 |
| 904. Flood Ins prem  to | |
| 1000. Reserves Deposited with Lender | |
| 1001. Hazard insurance    months @ $    per month | |
| 1002. Mortgage insurance    months @ $    per month | |
| 1003. Earthquake Ins    months @ $    per month | |
| 1004. County prop. taxes    months @ $    per month | |
| 1005. Annual assess.    months @ $    per month | |
| 1006. Flood    months @ $    per month | |
| 1007. Windstorm Ins    months @ $    per month | |
| 1008. | |
| 1100. Title Charges | |
| 1101. Settlement or closing fee to  SEARCH2CLOSE | $600.00 |
| 1102. Abstract or title search to | |
| 1103. Title examination to | |
| 1104. Title insurance binder to | |
| 1105. Document preparation to | |
| 1106. Notary fees to | |
| 1107. Attorney's fees to | |
| 1108. Title insurance to  SEARCH2CLOSE | $425.00 |
| 1109. Lender's coverage      $ | |
| 1110. Owner's coverage      $ | |
| 1111. Settlement/Disbursement fee to  SEARCH2CLOSE | $145.00 |
| 1112. Escrow Fee to | |
| 1200. Government Recording and Transfer Charges | |
| 1201. Recording fees | |
| 1202. City/county tax/stamps | |
| 1203. State tax/ stamps | |
| 1204. State specific fee | |
| 1205. State specific fee | |
| 1300. Additional Settlement Charges | |
| 1301. Demand to | |
| 1302. Pest Inspection to | |
| 1303. Survey Fee | |
| 1304. Misc Fees | $115.00 |
| 1305. Reconveyance Fee to | |
| 1306. | |
| 1307. Apprsl/Prop Val Fee to | |
| 1308. Courier Fee | $45.00 |
| 1400. Total Settlement Charges (enter on line 1602) | $6,007.20 |

| M. Disbursement to Others | | |
|---|---|---|
| 1501. HOME COMING FUNDING NE    (W) | | $166,538.80 |
| 1502. | | |
| 1503. | | |
| 1504. | | |
| 1505. | | |
| 1506. | | |
| 1507. | | |
| 1508. | | |
| 1509. | | |
| 1510. | | |
| 1511. | | |
| 1512. | | |
| 1513. | | |
| 1514. | | |
| 1515. | | |
| 1520. TOTAL DISBURSED (enter on line 1603) | | $166,538.80 |

Total Wire:    $174,285.30

L = Lender Paid

| N. NET SETTLEMENT | |
|---|---|
| 1600. Loan Amount | 173,500.00 |
| 1601. Plus Cash/Check from Borrower | |
| 1602. Minus Total Settlement Charges (line 1400) | $6,007.20 |
| 1603. Minus Total Disbursements to Others (line 1520) | $166,538.80 |
| 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | $954.00 |

Borrower(s) Signature(s):

X

# EXHIBIT D

| NAME AND ADDRESS OF BORROWER: | NAME AND ADDRESS OF LENDER: |
|---|---|
| THOMAS B. BLAIN<br>10417 COOLEY LAKE RD<br>COMMERCE TWP., MI 48382 | ARGENT MORTGAGE CO., LLC ISAOA |

| PROPERTY LOCATION: | SETTLEMENT AGENT: SEARCH2CLOSE |
|---|---|
| 10417 COOLEY LAKE RD<br>COMMERCE TWP., MI 48382<br>OAKLAND County, Michigan: | PLACE OF SETTLEMENT: 5000 Corporate Exchange Drive, Suite 401<br>Columbus, OH 43231 |
| | SETTLEMENT DATE: March 16, 2004    Disbursed:03/22/04 |
| | LOAN NUMBER: 0057012556-9703 |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | 1601. PAYMENT ON ACCOUNT | |
| 801. Loan Origination Fee 1.4424% to AMERICAN ELITE FINANCIAL | 2,502.50 | | |
| 802. Loan Discount    % to | | 1602. PAYMENT ON ACCOUNT | |
| 803. Appraisal Fee    to ACCURATE APPRAISAL GROUP | 275.00 | | |
| 804. Credit Report    to | | 1503. PAYMENT ON ACCOUNT | |
| 805. Lender's Inspection Fee    to | | | |
| 806. Mortgage Ins. App. Fee    to | | 1504. PAYMENT ON ACCOUNT | |
| 807. YIELDSPREAD PREMIUM    to AMERICAN ELITE FINANCIAL   POC $1,735.00) | | | |
| 808. TAX RELATED SERVICE FEE to ARGENT MORTGAGE CO., LLC IS | 70.00 | 1505. PAYMENT ON ACCOUNT | |
| 809. FLOOD SEARCH FEE    to ARGENT MORTGAGE CO., LLC IS | 16.00 | | |
| 810. ADMIN FEE    to ARGENT MORTGAGE CO., LLC IS | 175.00 | 1506. PAYMENT ON ACCOUNT | |
| 811. PROCESSING FEE    to AMERICAN ELITE FINANCIAL | 500.00 | | |
| 812. UNDERWRITING FEE    to ARGENT MORTGAGE CO., LLC IS | 375.00 | 1507. PAYMENT ON ACCOUNT | |
| 813. | | | |
| 814. | | 1508. PAYMENT ON ACCOUNT | |
| 815. | | | |
| 816. | | 1509. PAYMENT ON ACCOUNT | |
| 817. | | | |
| 818. | | 1510. PAYMENT ON ACCOUNT | |
| 819. | | | |
| 820. | | 1511. PAYMENT ON ACCOUNT | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest 03/22/04 to 04/01/04 @ $ 31.370000/day | 313.70 | 1512. COUNTY TAXES | |
| 902. Mortgage Insurance Prem for    months to | | | |
| 903. Hazard Insurance Prem for 1.0 yr to | | 1513. Payoff first mortgage    to<br>HOMECOMINGS FINA | 166,720.37 |
| 904. | | 1514. | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | |
| 1001. Hazard Insurance    months @ $    per month | | 1520. TOTAL DISBURSED<br>(enter on line 1603) | 166,720.37 |
| 1002. Mortgage Insurance    months @ $    per month | | | |
| 1003. City/Town Taxes    months @ $    per month | | | |
| 1004. County Taxes    months @ $    per month | | | |
| 1005. Assessments    months @ $    per month | | | |
| 1006.    months @ $    per month | | | |
| 1008.    months @ $    per month | 0.00 | | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement Fee    to SEARCH2CLOSE | 400.00 | | |
| 1102. Title Search    to | | | |
| 1103. DISBURSEMENT FEE    to SEARCH2CLOSE | 125.00 | | |
| 1104. TAX SERVICE FEE    to SEARCH2CLOSE | 25.00 | | |
| 1105. Document Prep.    to | | | |
| 1106. Notary Fees    to | | | |
| 1107. Deed Prep    to LARRY BAISDEN | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance    to SEARCH2CLOSE | 424.50 | | |
| (includes above item numbers: ) | | | |
| 1109. Lender's Coverage $ 173,500.00    424.50 | | | |
| 1110. Owner's Coverage $ | | | |
| 1111. EPA ENDORSEMENT | | | |
| 1112. COMPREHENSIVE ENDORS | | N. NET SETTLEMENT | |
| 1113. SURVEY COVERAGE | | | |
| 1114. SHIPPING AND HANDLING F to SEARCH2CLOSE | 45.00 | 1600. Loan Amount | $ 173,500.00 |
| 1115. WIRE FEE    to SEARCH2CLOSE | 20.00 | | |
| 1116. FILING FEE    to SEARCH2CLOSE | 30.00 | 1601. Plus Cash/Check from<br>Borrower | $ 0.00 |
| 1117. | | | |
| 1118. | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | 1602. Minus Total Settlement<br>Charges (line 1400) | $ 5,806.70 |
| 1201. Recording Fees: Mortgage $    Releases $ | | | |
| 1202. City/County Tax/Stamps: Mortgage $ | | 1603. Minus Total Disbursements<br>to Others (line 1620) | $ 166,720.37 |
| 1203. State Tax/Stamps: Mortgage $ | | | |
| 1204. | | | |
| 1205. | | 1604. Equals Disbursements to | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | Borrower (after expiration | |
| 1301. Survey | | of any applicable rescission | |
| 1302. Pest Inspection | | period required by law) | $ 972.93 |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on line 1602) | 5,806.70 | | |

Certified to be a true copy.

Form HUD-1A (2/94) ref. RESPA

# EXHIBIT E

# NOTICE OF RIGHT TO CANCEL

LENDER:  Argent Mortgage Company, LLC

DATE:  March 16, 2004
LOAN NO.:  0057018558 - 9703
TYPE:  ADJUSTABLE RATE

BORROWER(S): THOMAS B. BLAIN

ADDRESS:  10417 COOLEY LAKE RD
CITY/STATE/ZIP:  COMMERCE TOWNSHIP,MI 48382

PROPERTY:  10417 COOLEY LAKE RD
COMMERCE TOWNSHIP,  MI  48382

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

; or

2.  The date you received your Truth in Lending disclosures; or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
3 Park Plaza
Irvine, CA 92614

ATTN:  FUNDING
PHONE: (800)-561-4072
FAX:     (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____          _____
SIGNATURE                                          DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____          _____
BORROWER/OWNER THOMAS B. BLAIN          Date          BORROWER/OWNER CHRISTENA BLAIN

_____          _____
BORROWER/OWNER          Date          BORROWER/OWNER

03/16/2004 10:45:02 A

LENDER COPY

## NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: March 16, 2004
LOAN NO.: 0057018558 - 9703
TYPE: ADJUSTABLE RATE

BORROWER(S): THOMAS B. BLAIN

ADDRESS: 10417 COOLEY LAKE RD
CITY/STATE/ZIP: COMMERCE TOWNSHIP,MI 48382

PROPERTY: 10417 COOLEY LAKE RD
COMMERCE TOWNSHIP, MI 48382

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

3-16-04

; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
3 Park Plaza
Irvine, CA 92614

ATTN: FUNDING
PHONE: (800)-561-4072
FAX: (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

3-19-04

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____       _____
SIGNATURE                                          DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_Thomas B Bl__ 3-16-04         _Christena Blain_ 3/16/04
BORROWER/OWNER THOMAS B. BLAIN   Date      BORROWER/OWNER CHRISTENA BLAIN   Date

_____   _____    _____   _____
BORROWER/OWNER                     Date       BORROWER/OWNER                     Date

1064-NRC (Rev 6/99)

BORROWER COPY

03/16/2004 10:45:02 AM

# NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: March 16, 2004
LOAN NO.: 0057018558 - 9703
TYPE: ADJUSTABLE RATE

BORROWER(S): THOMAS B. BLAIN

ADDRESS: 10417 COOLEY LAKE RD
CITY/STATE/ZIP: COMMERCE TOWNSHIP,MI 48382

PROPERTY: 10417 COOLEY LAKE RD
COMMERCE TOWNSHIP, MI 48382

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
| 3-16-04 |

; or

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
3 Park Plaza
Irvine, CA 92614

ATTN: FUNDING
PHONE: (800)-561-4072
FAX: (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
| 3-19-04 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____          _____
SIGNATURE                                        DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_Thomas B Bl___  3-16-03
BORROWER/OWNER THOMAS B. BLAIN          Date

_Christena Blain_  3/16/04
BORROWER/OWNER CHRISTENA BLAIN          Date

_____          _____
BORROWER/OWNER          Date          BORROWER/OWNER          Date

1664-NRC (Rev 6/99)          **BORROWER COPY**          03/16/2004 10:45:02 AM

# NOTICE OF RIGHT TO CANCEL

LENDER: Argent Mortgage Company, LLC

DATE: March 16, 2004
LOAN NO.: 0057018558 - 9703
TYPE: ADJUSTABLE RATE

BORROWER(S): THOMAS B. BLAIN

ADDRESS: 10417 COOLEY LAKE RD
CITY/STATE/ZIP: COMMERCE TOWNSHIP,MI 48382

PROPERTY: 10417 COOLEY LAKE RD
COMMERCE TOWNSHIP, MI 48382

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1. The date of the transaction, which is    ENTER DOCUMENT SIGNING DATE                    ; or
   _____

2. The date you received your Truth in Lending disclosures; or
3. The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC
3 Park Plaza
Irvine, CA 92614

ATTN: FUNDING
PHONE: (800)-561-4072
FAX: (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL
_____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____          _____
SIGNATURE                                 DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____   _____          _____   _____
BORROWER/OWNER THOMAS B. BLAIN       Date             BORROWER/OWNER CHRISTENA BLAIN         Date

_____   _____          _____   _____
BORROWER/OWNER                       Date             BORROWER/OWNER                         Date

1064-NRC (Rev 6/99)                          **BORROWER COPY**                          03/16/2004 10:45:02 AM

# NOTICE OF RIGHT TO CANCEL

LENDER:  Argent Mortgage Company, LLC

DATE:  March 16, 2004
LOAN NO.:  0057018558 - 9703
TYPE:  ADJUSTABLE RATE

BORROWER(S): THOMAS B. BLAIN

ADDRESS:        10417 COOLEY LAKE RD
CITY/STATE/ZIP:  COMMERCE TOWNSHIP,MI 48382

PROPERTY:  10417 COOLEY LAKE RD
              COMMERCE TOWNSHIP, MI  48382

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE

; or

2.  The date you received your Truth in Lending disclosures; or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Argent Mortgage Company, LLC**
**3 Park Plaza**
**Irvine, CA 92614**

ATTN:  FUNDING
PHONE: (800)-561-4072
FAX:    (714)-347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____
SIGNATURE                                         DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____        Date        _____        Date
BORROWER/OWNER THOMAS B. BLAIN                          BORROWER/OWNER CHRISTENA BLAIN

_____        Date        _____        Date
BORROWER/OWNER                                          BORROWER/OWNER

1064-NRC (Rev 6/99)

BORROWER COPY

03/16/2004 10:45:02 AM

EXHIBIT F

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary  ☒ Final

LENDER: Argent Mortgage Company, LLC
2550 Golf Road, East Tower, 10th Floor
Rolling Meadows, IL 60008
(800)369-5117

Broker License: FL 2154

Borrowers: THOMAS B. BLAIN

Type of Loan: ADJUSTABLE RATE
Date: March 16, 2004

Address: 10417 COOLEY LAKE RD
City/State/Zip: COMMERCE TOWNSHIP, MI 48382

Loan Number: 0057018558 - 9703

Property: 10417 COOLEY LAKE RD, COMMERCE TOWNSHIP, MI 48382

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 6.884 % | $ 230,708.16 | $ 168,192.80 | $ 398,900.96 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $1,108.08 | 05/01/2004 | | | |
| 335 | $1,108.08 | 05/01/2006 | | | |
| 1 | $1,100.24 | 04/01/2034 | | | |

VARIABLE RATE FEATURE:
☒ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 10417 COOLEY LAKE RD, COMMERCE TOWNSHIP, MI 48382

ASSUMPTION: Someone buying this property ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE: You may obtain property insurance from anyone you want that is acceptable to Argent Mortgage Company, LLC

LATE CHARGES: If a payment is late, you will be charged 5.000% of the overdue payment .

PREPAYMENT: If you pay off your loan early, you
☒ may ☐ will not have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

Borrower THOMAS B. BLAIN _____ Date _____

Borrower CHRISTENA BLAIN _____ Date _____

Borrower _____ Date _____

Borrower _____ Date _____

# EXHIBIT G

JOINT NOTIFICATION LETTER
NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

THOMAS B. BLAIN                                    re: Loan Number 0057018558-9703
10417 COOLEY LAKE RD
COMMERCE TOWNSHIP, MI 48382

   re: Property located at 10417 COOLEY LAKE RD, COMMERCE TOWNSHIP, MI  48382

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you is being assigned, sold or transferred from Argent Mortgage Company, LLC to Ameriquest Mortgage Company, effective March 16, 2004 .

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your Lender either send you this notice at least 15 days before the effective date of transfer, or provide it to you at closing.  Your new servicer must also send you this notice no later than 15 days after the effective date of the transfer or after the closing.

Your Lender is Argent Mortgage Company, LLC.  If you have any questions relating to the transfer of servicing from your Lender, call the Lender at the following toll free number: (888)311-4721 between 8:00 am and 5:00 pm (Pacific Time).

Your new servicer will be **Ameriquest Mortgage Company** .

The business address for your new servicer is:

| CORRESPONDENCE | PAYMENTS |
| --- | --- |
| P.O. Box 14131, | P.O. Box 51382, |
| Orange, CA 92863-1530 | Los Angeles, CA |

The toll-free telephone number of your new servicer is (800)430-5262. If you have any questions relating to the transfer of servicing to your new servicer, call Customer Service between 7:00 a.m. and 6:00 p.m. Pacific Time, Monday through Friday.

Your next loan payment is due on 05/01/2004.  Send all payments on your loan to your new servicer.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

   During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your Lender before its due date may not be treated by the new loan servicer as late, and a fee may not be imposed on you.

   Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of receipt of your request.  A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.  If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:  Ameriquest Mortgage Company P.O. Box 14131,  Orange, CA 92863-1530 .

   Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute.  During this 60-business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.  However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

   A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

   Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.  You should seek legal advice if you believe your rights have been violated.

LENDER: Argent Mortgage Company, LLC            March 16, 2004 _____
                                                               Date

NEW SERVICER:  Ameriquest Mortgage Company      March 16, 2004 _____
                                                               Date

Service3 Left (7/02)

# EXHIBIT H



AMERIQUEST™
MORTGAGE COMPANY

March 23, 2004

Thomas B Blain
10417 Cooley Lake Rd
Commerce Township, MI 48382-3637

I,I.,II,,II,,II,I,I,I,I,I,I,I,,I,,I,I,,II,,I,I,,I,II,,,II,,I,I

Loan Number: 0057018558

JOINT NOTIFICATION LETTER

NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you is being assigned, sold or transferred from Argent Mortgage Company, LLC to Ameriquest Mortgage Company, effective 03/22/04.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your Lender either send you this notice at least 15 days before the effective date of transfer, or provide it to you at closing. Your new servicer must also send you this notice no later than 15 days after the effective date of transfer or after the closing.

Your Lender is Argent Mortgage Company, LLC. If you have any questions relating to the transfer of servicing from your Lender, call the Lender at the following toll free number: (888) 311-4721 between 8:00 a.m. and 5:00 p.m. Pacific Time, Monday through Friday.

Your new servicer will be Ameriquest Mortgage Company.

The business address for your new servicer is:

CORRESPONDENCE
PO Box 11000
Santa Ana, CA 92711-1000

PAYMENTS
PO Box 51

# EXHIBIT I

17690

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th floor
Chicago, Illinois 60603-3403
(312) 739-4200
(800) 644-4673
(312) 419-0379 (FAX)
Email: edcombs@aol.com
www.edcombs.com

August 29, 2006

BY CERTIFIED MAIL

Argent Mortgage Company, L.L.C.
c/o registered agent
National Registered Agents
712 Abbott Road
East Lansing, MI 48823

Ameriquest Mortgage Company
c/o registered agent
National Registered Agents
712 Abbott Road
East Lansing, MI 48823

Countrywide Home Loans, Inc.
c/o registered agent
Prentice-Hall Corporation System, Inc.
601 Abbott Road
East Lansing, MI 48823

Re:   Notice of rescission, claim and lien, Christena Blain, Thomas B.
Blain, 10417 Cooley Lake Road, Commerce Township, MI 48382,
loan of March 16, 2004

Ladies/Gentlemen:

Each of the above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than Ameriquest Mortgage Company or Ameriquest Mortgage Securities, Inc., please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on August 29, 2006.

_____
Daniel A. Edelman

# EXHIBIT J

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☐ FHA | ☑ Conventional ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number: |
|---|---|---|---|---|---|

| Amount $ 178,000 | Interest Rate 6.750 % | No. of Months 360/360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☐ Other (explain): ☑ ARM (type): 2/28 |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) 10417 Cooley Lake RD, Commerce Township, MI 48382 County: Oakland | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) | Year Built 1971 |
|---|---|

| Purpose of Loan | ☐ Purchase ☑ Refinance ☐ Construction ☐ Construction-Permanent | ☐ Other (explain): | Property will be: ☑ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 2001 | Original Cost $ 145,000 | Amount Existing Liens $ 160,000 | Purpose of Refinance Limited Cash-Out Rate/Term | Describe Improvements ☐ made ☐ to be made Cost $ |
|---|---|---|---|---|

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| Borrower's Name (include Jr. or Sr. if applicable) Thomas Blain | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School 12 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☑ Married ☐ Unmarried (include single, ☐ Separated divorced, widowed) | Dependents (not listed by Co-Borrower) no. 0 ages | ☐ Married ☐ Unmarried (include single, ☐ Separated divorced, widowed) | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent 3 No. Yrs. 10417 Cooley Lake RD Commerce Township, MI 48382 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer Chrysler | ☐ Self Employed Yrs. on this job 10 yr(s) 0 mth(s) Yrs. employed in this line of work/profession 10 | Name & Address of Employer | ☐ Self Employed Yrs. on this job Yrs. employed in this line of work/profession |
| Position/Title/Type of Business Housekeeper | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

FROM : MR RON'S MARKET          FAX NO. : 2487363755          Feb. 17 2004 04:39AM  P2

OO-ECLG0029821

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 4,666.00 | $ | $ 4,666.00 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | $ | 1,102.62 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 22.00 |
| Dividends/Interest | | | | Real Estate Taxes | | 200.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 4,666.00 | $ | $ 4,666.00 | Total | $ | $ 1,324.62 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income** *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☑ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | | |
| | | **LIABILITIES** | | $ Payment/Months | |
| List checking and savings accounts below | | | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company HOMECOME FIN 2711 N HASKELL DALLAS, TX 75204 | | $ Payment/Months $ | |
| | | Acct. no. 436081040 | | * (1,292) | 102,000 |
| Acct. no. | $ | Name and address of Company HHLD BANK PO BOX 15524 WILMINGTON, DE 19850 | | $ Payment/Months $ | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. 770807100228113 | | 132 | 6,891 |
| Acct. no. | $ | Name and address of Company PARK DANSAN PO BOX 248 113 N 3RD AVE GASTONIA, NC 28053 | | $ Payment/Months $ | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. 102424370 | | 0 | 312 |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months $ | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. | | | |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months $ | |
| Stocks & Bonds (Company name/ number & description) | $ | | | | |
| | | Acct. no. | | | |
| | | Name and address of Company | | $ Payment/Months $ | |
| Life insurance net cash value | $ | | | | |
| Face amount: $ | | | | | |
| Subtotal Liquid Assets | | Acct. no. | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 170,000 | Name and address of Company | | $ Payment/Months $ | |
| Vested interest in retirement fund | $ | | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | | $ | |
| Other Assets (itemize) | $ | | | | |
| | | Job Related Expense (child care, union dues, etc.) | | $ | |
| | | Total Monthly Payments | | $ 132 | |
| Total Assets a. | $ 170,000 | Net Worth (a minus b) ► $ | 857 | Total Liabilities b. | $ 169,143 |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp2.frm 01/04

Page 2 of 4

Fannie Mae Form 1003   01/04

OO-ECLG0029822

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 10417 Cooley Lake RD Commerce Township, MI 48382 | SFR | $ 170,000 | $ 160,000 | $ | $ 1,292 | $ 222 | $ |
| Totals | | $ 170,000 | $ 160,000 | $ | $ 1,292 | $ 222 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

**VII. DETAILS OF TRANSACTION** / **VIII. DECLARATIONS**

| | | | | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|---|---|
| | | | If you answer "yes" to any questions a through i, please use continuation sheet for explanation. | | Yes | No | Yes | No |
| a. Purchase price | $ | | | | | | | |
| b. Alterations, improvements, repairs | | | a. Are there any outstanding judgments against you? | | ☐ | ☑ | ☐ | ☐ |
| c. Land (if acquired separately) | | | b. Have you been declared bankrupt within the past 7 years? | | ☐ | ☑ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | 162,000.00 | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | ☐ | ☑ | ☐ | ☐ |
| e. Estimated prepaid items | 314.38 | | | | | | | |
| f. Estimated closing costs | 7,285.00 | | d. Are you a party to a lawsuit? | | ☐ | ☑ | ☐ | ☐ |
| g. PMI, MIP, Funding Fee | | | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | ☐ | ☑ | ☐ | ☐ |
| h. Discount (if Borrower will pay) | | | | | | | | |
| i. Total costs (add items a through h) | 169,599.38 | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | ☐ | ☑ | ☐ | ☐ |
| j. Subordinate financing | | | | | | | | |
| k. Borrower's closing costs paid by Seller | | | g. Are you obligated to pay alimony, child support, or separate maintenance? | | ☐ | ☑ | ☐ | ☐ |
| l. Other Credits (explain) | | | h. Is any part of the down payment borrowed? | | ☐ | ☑ | ☐ | ☐ |
| | | | i. Are you a co-maker or endorser on a note? | | ☐ | ☑ | ☐ | ☐ |
| | | | j. Are you a U.S. citizen? | | ☑ | ☐ | ☐ | ☐ |
| | | | k. Are you a permanent resident alien? | | ☐ | ☑ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 170,000.00 | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question below. | | ☑ | ☐ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | | | m. Have you had an ownership interest in a property in the last three years? | | ☑ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) | 170,000.00 | | (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | | | PR | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | (400.62) | | (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | SP | | |

**IX. ACKNOWLEDGEMENT AND AGREEMENT**

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature X | Date | Co-Borrower's Signature X | Date |
|---|---|---|---|
| Thomas B Blm | 12-17-04 | | |

**X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES**

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☑ I do not wish to furnish this information | | | CO-BORROWER ☐ I do not wish to furnish this information | | |
|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native ☐ Native Hawaiian or Other Pacific Islander | ☐ Asian ☐ White | ☐ Black or African American | Race: | ☐ American Indian or Alaska Native ☐ Native Hawaiian or Other Pacific Islander | ☐ Asian ☐ White | ☐ Black or African American |
| Sex: | ☐ Female | ☑ Male | Sex: | ☐ Female | ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) Alicia Doederlein | Name and Address of Interviewer's Employer American Elite Financial |
|---|---|---|
| ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Signature _Alicia Doederlein_ Date 2-17-04 Interviewer's Phone Number (incl. area code) 734-283-4927 | One Heritage Place Suite 320 Southgate, MI 48195 (P) 734-283-4927 (F) 734-282-6273 |

Freddie Mac Form 65    01/04
Calyx Form 1003 Loanapp3.frm 01/04

Page 3 of 4

Fannie Mae Form 1003   01/04

OO-ECLG0029823

## Continuation Sheet - Residential Loan Application

| | |
|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: **Thomas Blain** |
| | Co-Borrower: |
| | Agency Case Number: |
| | Lender Case Number: |

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X *Thomas R Bl* | 2-17-04 | X | |

Freddie Mac Form 65    01/04
CALYX Form 1003 Lnapt4ast.frm 01/04

Page 4 of 4

Fannie Mae Form 1003    01/04

OO-ECLG0029824

# EXHIBIT K

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | [ ] VA [x] Conventional [ ] FHA [x] USDA/Rural Housing Service | [ ] Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|

| Amount $ 173,500 | Interest Rate 6.600 % | No. of Months 360/360 | Amortization Type: | [ ] Fixed Rate [ ] GPM | [ ] Other (explain): [x] ARM (type): 2/28 |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) 10417 Cooley Lake RD, Commerce Township, MI 48382 County: Oakland | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) | Year Built 1971 |
|---|---|

| Purpose of Loan | [ ] Purchase [ ] Construction [x] Refinance [ ] Construction-Permanent | [ ] Other (explain): | Property will be: [x] Primary Residence [ ] Secondary Residence [ ] Investment |
|---|---|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired 2001 | Original Cost $ 145,000 | Amount Existing Liens $ 160,000 | Purpose of Refinance Limited Cash-Out Rate/Term | Describe Improvements [ ] made [ ] to be made Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: [x] Fee Simple [ ] Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | Thomas Blain | |
| Social Security Number | | |
| Home Phone (incl. area code) | | |
| DOB (MM/DD/YYYY) | | |
| Yrs. School | 12 | |
| Marital Status | [x] Married [ ] Separated [ ] Unmarried (include single, divorced, widowed) | [ ] Married [ ] Separated [ ] Unmarried (include single, divorced, widowed) |
| Dependents (not listed by Co-Borrower) | no. 0 ages | no. ages |
| Present Address (street, city, state, ZIP) | [x] Own [ ] Rent 3 No. Yrs. 10417 Cooley Lake RD Commerce Township, MI 48382 | [ ] Own [ ] Rent No. Yrs. |
| Mailing Address, if different from Present Address | | |

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) | [ ] Own [ ] Rent No. Yrs. | Former Address (street, city, state, ZIP) | [ ] Own [ ] Rent No. Yrs. |
|---|---|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer | Daimler Chrysler Corporation 1000 Chrysler Drive Auburn Hills, MI 48326 | [ ] Self Employed Yrs. on this job 10 yr(s) 0 mth(s) Yrs. employed in this line of work/profession 10 | Name & Address of Employer | [ ] Self Employed Yrs. on this job Yrs. employed in this line of work/profession |
| Position/Title/Type of Business | Housekeeper | Business Phone (incl. area code) 248-944-0386 | Position/Title/Type of Business | Business Phone (incl. area code) |

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer | [ ] Self Employed | Dates (from-to) | Name & Address of Employer | [ ] Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer | [ ] Self Employed | Dates (from-to) | Name & Address of Employer | [ ] Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp1.fm 01/04

Fannie Mae Form 1003   01/04

OO-ECLG0029815

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 4,427.00 | $ | $ 4,427.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | $ 1,108.07 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 63.58 |
| Dividends/Interest | | | | Real Estate Taxes | | 200.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 4,427.00 | $ | $ 4,427.00 | Total | $ | $ 1,371.65 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   **Notice:** Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly  ☑ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by | $ | | | |
| | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| *List checking and savings accounts below* | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | HOMECOME FIN 2711 N HASKELL DALLAS, TX 75204 | | |
| | | Acct. no. 436081640 | * (1,232) | 166,539 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | HHLD BANK PO BOX 15524 WILMINGTON, DE 19850 | | |
| | | Acct. no. 770507100228113 | 132 | 6,931 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | PARK DANIAN PO BOX 248 113 N 3RD AVE GASTONIA, NC 28053 | | |
| | | Acct. no. 102424370 | 0 | 312 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/ number & description) | $ | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: | $ | | | |
| Subtotal Liquid Assets | $ | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 183,000 | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | |
| | | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 132 | |
| Total Assets a. | $ 183,000 | Net Worth (a minus b) ▶ $ | 9,318 | Total Liabilities b. | $ | 173,682 |

OO-ECLG0029816

## Continuation Sheet/Residential Loan Application

| | |
|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: **Thomas Blain** |
| | Co-Borrower: |

| Agency Case Number: |
|---|
| Lender Case Number: |

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | | X | |

OO-ECLG0029817

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 10447 Cooley Lake RD Commerce Township, MI 48382 | SFR | $ 183,000 | $ 160,000 | $ | $ 1,202 | $ 222 | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 183,000 | $ 160,000 | $ | $ 1,202 | $ 222 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 166,539.88 |
| e. Estimated prepaid items | 313.73 |
| f. Estimated closing costs | 6,287.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 173,139.73 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 173,500.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 173,500.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | (360.27) |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U.S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | | | PR | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | SP | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☑ I do not wish to furnish this information | CO-BORROWER ☐ I do not wish to furnish this information |
|---|---|
| Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| Sex: ☐ Female ☑ Male | Sex: ☐ Female ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) Alicia Dendellan | Name and Address of Interviewer's Employer American Eagle Financial One Heritage Place Suite 320 Southgate, MI 48195 (P) 734-283-4927 (F) 734-282-6273 |
|---|---|---|
| This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Signature *Alicia C. Dendellan* Date 2-17-04 | |
| | Interviewer's Phone Number (incl. area code) 734-283-4927 | |

OO-ECLG0029818

# EXHIBIT L

Accurate Appraisal Group, Inc.

**UNIFORM RESIDENTIAL APPRAISAL REPORT**     File No. 0112

| | |
|---|---|
| Property Address 10417 Cooley Lake Rd. | City Commerce Twp.   State MI   Zip Code 48382-3637 |
| Legal Description See Beginning Addendum | County Oakland |
| Assessor's Parcel No. 1703201074 | Tax Year 2003   R.E. Taxes $ 1,914.28   Special Assessments $ N/K |
| Borrower Blain | Current Owner Same    Occupant: [X] Owner   Tenant   Vacant |
| Property rights appraised [X] Fee Simple   Leasehold   Project Type   PUD   Condominium (HUD/VA only)   HOA$   None /Mo. |
| Neighborhood or Project Name Muskoka Park | Map Reference MLS # 02171   Census Tract 1340 |
| Sale Price $ Refinance    Date of Sale N/A    Description and $ amount of loan charges/concessions to be paid by seller N/A |
| Lender/Client American Elite Financial, Inc. | Address One Heritage Place Suite 320 Southgate, MI. 48195 |
| Appraiser Michael R. Stuart | Address 27697 Pickford St. Livonia, MI. 48152 |

| Location | [X] Urban | [X] Suburban | Rural | Predominant occupancy | Single family housing | | Present land use % | Land use change |
|---|---|---|---|---|---|---|---|---|
| | | | | | PRICE $(000) | AGE (yrs) | | |
| Built up | Over 75% | [X] 25-75% | Under 25% | | Low | 90% One family | [X] Not likely | Likely |
| Growth rate | Rapid | [X] Stable | Slow | [X] Owner 95% | 90 Low | 6% 2-4 family | In process | |
| Property values | Increasing | [X] Stable | Declining | Tenant | 400+ High | 70 1% Multi-family | To: N/A | |
| Demand/supply | Shortage | [X] In balance | Over supply | Vacant (0-5%) | Predominant | 1% Commercial | 4% | |
| Marketing time | Under 3 mos. | [X] 3-6 mos. | Over 6 mos. | Vacant (over 5%) | 175 | 35 | | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: North of Wise Rd. ; South of Elizabeth Lake Rd. ; East of Bogie Lake Rd. ; West of Carroll Lake Rd.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): Subject area is primarily single family residences mixed in style and age. All forms of normal amenities such as schools, places of worship, shopping and employment centers are within proximity to the area. Commercial usage noted along main roadways with no adverse affect.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time — such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): Conventional financing is readily available at acceptable rates. Local market conditions indicate a balanced supply/ demand with a typical marketing time of 3-6 months. Comparables that utilize FHA, VA and Land Contract financing are sometimes utilized with no adverse affect on marketing times and value as stated in the report.

| | |
|---|---|
| Project Information for PUDs (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)?   YES   NO | |
| Approximate total number of units in the subject project N/A    Approximate total number of units for sale in the subject project N/A | |
| Describe common elements and recreational facilities: N/A | |

| | | | |
|---|---|---|---|
| Dimensions 75' X 300' | | Topography | Basically Level |
| Site area 22500 Sq.Ft. | Corner Lot   Yes [X] No | Size | Typical for area |
| Specific zoning classification and description Single family Residential | | Shape | Rectangular |
| Zoning compliance [X] Legal   Legal nonconforming (Grandfathered use)   Illegal   No zoning | | Drainage | Appears adequate |
| Highest & best use as improved: [X] Present use   Other use (explain) | | View | Residential/Main Road |
| Utilities    Public    Other | Off-site Improvements   Type    Public   Private | Landscaping | Typical |
| Electricity [X] | Street Asphalt    [X] | Driveway Surface | Concrete |
| Gas [X] | Curb/gutter None    | Apparent easements | None apparent |
| Water    Well | Sidewalk None    | FEMA Special Flood Hazard Area   Yes [X] No | |
| Sanitary sewer   Septic | Street lights None    | FEMA Zone B    Map Date 03/16/81 | |
| Storm sewer [X] | Alley None    | FEMA Map No. 2604730005 B | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): Site is typical in size and appeal. No readily apparent adverse easements or encroachments noted.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units 1 | Foundation Concr't / Block | Slab None | Area Sq.Ft. 0 | Roof Cncld* [X] |
| No. of Stories 1 | Exterior Walls Aluminum | Crawl Space Yes | % Finished N/A | Ceiling Cncld* [X] |
| Type (Det./Att.) Detached | Roof Surface Asph.Shin. | Basement None | Ceiling N/A | Walls Cncld* [X] |
| Design (Style) Ranch | Gutters & Dwnspts. Aluminum | Sump Pump None | Walls N/A | Floor Cncld* [X] |
| Existing/Proposed Existing | Window Type Vinyl Sl. | Dampness None noted | Floor N/A | None |
| Age (Yrs.) 33 | Storm/Screens Yes/Yes | Settlement None noted | Outside Entry None | Unknown |
| Effective Age (Yrs.) 15 | Manufactured House No | Infestation None noted | | *Assumed Adeq. |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq.Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | 0 |
| Level 1 | | 1 | | 1 | | | | 3 | 1F | X | | 1,107 |
| Level 2 | | | | | | | | | | | | 0 |

Finished area above grade contains:   5 Rooms;   3 Bedroom(s);   1F Bath(s);   1,107 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | KITCHEN EQUIP. | ATTIC | AMENITIES | CAR STORAGE: |
|---|---|---|---|---|---|---|
| Floors | Carpet/Vinyl | Type FA | Refrigerator [X] | None | Fireplace(s) # 0 | None [X] |
| Walls | Drywall | Fuel Gas | Range/Oven [X] | Stairs | Patio None | Garage # of cars |
| Trim/Finish | Painted | Condition Ave. | Disposal [X] | Drop Stair | Deck Wood [X] | Attached 2 |
| Bath Floor | Vinyl | COOLING | Dishwasher [X] | Scuttle | Porch Masonry [X] | Detached |
| Bath Wainscot | Ceramic Tile | Central None | Fan/Hood [X] | Floor | Fence None | Built-in |
| Doors | Hollow | Other None | Microwave [X] | Heated | Pool None | Carport |
| Ave. Quality/Ave. Condition | | Condition N/A | Washer/Dryer | Finished | | Driveway 2+ |

Additional features (special energy efficient items, etc.): Subject has typical features and amenities for its market area. No value given to personal property (ie. non built in appliances, above ground pools).

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: Subject has been adequately maintained over it's life. No delayed maintenance noted. No functional obsolescence noted. Exterior obsolescence noted in the Cost Approach. Subject property is located on a Res./Main Rd.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: None noted at time of inspection.

PAGE 1 OF 2

Freddie Mac Form 70   6-93      Producedusing ACI software, 800.234.8727 www.aciweb.com      Fannie Mae Form 1004   6-93

OO-ECLG0029743

Accurate Appraisal Group, Inc.

## UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. 0112

**Valuation Section**

| | |
|---|---|
| ESTIMATED SITE VALUE ........................................ = $ | 54,000 |

ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS:

| | | | | |
|---|---|---|---|---|
| Dwelling | 1,107 Sq. Ft. @ $ 121.00 | = $ | 133,947 | |
| Crawl Inc. Abv. | Sq. Ft. @ $ 15.00 | = $ | 0 | |
| Inc. Above | | | | |
| Garage/Carport | 480 Sq. Ft. @ $ 14.00 | = $ | 6,720 | |
| Total Estimated Cost New | | = $ | 140,667 | |
| Less 100 Physical | Functional | External | | |
| Depreciation 15% | -$55,000 | = $ | 16,100 | |
| Depreciated Value of Improvements | | = $ | 124,567 | |
| "As-is" Value of Site Improvements | | = $ | 5,000 | |
| INDICATED VALUE BY COST APPROACH | | = $ | 183,600 | |

Comments on Cost Approach (such as, source of cost estimate, site value, square feet calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): Cost figures from Marshall and Swift Residential Handbook with local multiplier rounded.

Base on the subjects current effective age of 15 years, anticipated remaining economic life projected to be 35 years.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Address | 10417 Cooley Lake Rd. Commerce Twp. | 1972 Porlock St. Commerce Twp. | 5691 Carroll Lake Rd. Commerce Twp. | 4774 Halbord St. Commerce Twp. |
| Proximity to Subject | | 1/2 Mile | 1/2 Mile | 1 Mile |
| Sales Price | $ Refinance | $ 195,000 | $ 169,000 | $ 182,000 |
| Price/Gross Liv. Area | $ 0.00 | $ 117.47 | $ 149.16 | $ 121.17 |
| Data and/or | Assessor / | Assessor/ Exterior Inspection | Assessor/ Exterior Inspection | Assessor/ Exterior Inspection |
| Verification Sources | Inspection | MLS #23042677 | MLS #23125078 | MLS #23042346 |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing Concessions | | Conventional None | | Conventional None | | Conventional None | |
| Date of Sale/Time | | Closed-02/2004 | | Closed-02/2003 | | Closed-06/2003 | |
| Location | Suburban/Ave. | Suburban/Ave. | | Suburban/Ave. | | Suburban/Ave. | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 75' X 300' | 78'/Lk/Rvr/Prv. | | 166' X 130' | | 96' X 104' | |
| View | Ros/Man/Canl Frnt | Ros./Lk/Rvr/Prv. | +10,000 | Ros./Mn/Lk./Rvr. | +10,000 | Ros./Lk./Rvr./Prv. | +10,000 |
| Design and Appeal | Ranch/Ave. | Ranch/Ave. | | Ranch/Ave. | | Ranch/Ave. | |
| Quality of Construction | Aluminum/Ave. | Vinyl/Brick/Ave. | -2,500 | Wood/Brick/Ave. | -2,500 | Wood/Brick/Ave. | -2,500 |
| Age | 33A/15E | 44A/15 E | | 18A/10E | | 25A/15 E | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 15 5 3 1F | 5 3 2F | -2,000 | 5 3 1F | | 6 3 2F | -2,000 |
| Gross Living Area | 1,107 Sq. Ft. | 1,660 Sq. Ft. | -8,500 | 1,133 Sq. Ft. | = | 1,502 Sq. Ft. | -6,000 |
| Basement & Finished | Crawl | Slab | | Basement | -5,000 | Slab | |
| Rooms Below Grade | None | None | | Unfinished | | None | |
| Functional Utility | 3 Bedroom/Ave. | 3 Bedroom/Ave. | | 3 Bedroom/Ave. | | 3 Bedroom/Ave. | |
| Heating/Cooling | GFA | GFA-A/C | -1,500 | GFA-A/C | -1,500 | GFA-A/C | -1,500 |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | None | +10,000 | 2 Car Garage | |
| Porch, Patio, Deck, | Porch/Deck | Porch/Patio | +2,000 | Porch, Deck | | Porch | +3,000 |
| Fireplace(s), etc. | None | 1-Fireplace | -500 | None | | None | |
| Fence, Pool, etc. | None | None | | None | | None | |
| | None | None | | None | | None | |
| Net Adj. (total) | | [ ] [X] [ ] $ 3,000 | | [X] [ ] [ ] $ 11,000 | | [X] [ ] [ ] $ 1,000 | |
| Adjusted Sales Price of Comparable | | $ 192,000 | | $ 180,000 | | $ 183,000 | |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): All adjustments have been made. All comparables utilized and given equal weight. All comparables relevant for style and functional utility. All comps have been adjusted for view. The subject property is on a 300' Ft. deep lot, on a canal front which funnels into Fox Lake. Expanding distance guideline (1Mile) does not impact the estimated value or marketing times as stated in the report. Effective ages assigned are based on general condition of dwellings and taking into consideration any updating and general maintenance performed.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | No other sales during prior 3 years. | No other sales during prior year. | No other sales during prior year. | No other sales during prior year. |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one-year of the date of appraisal: The subject is not currently listed or under contract.

| | | |
|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH ........................................ $ | 183,000 | |
| INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A | = $ | N/A |

This appraisal is made [X] "as is" [ ] subject to the repairs, alterations, inspections or conditions listed below [ ] subject to completion per plans and specifications.

Conditions of Appraisal: See Attached Addendum.

Final Reconciliation: The greatest weight is placed on the Sales Comparison Approach as the data is extracted directly from the marketplace. The Income Approach is not deemed relevant in this predominately owner occupied area. The Cost Approach lends support.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 6/93 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 03/09/2004 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 183,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): |
|---|---|
| Signature | Signature [ ] Did [ ] Did Not |
| Name Michael R. Stuart | Name Inspect Property |
| Date Report Signed 03/12/2004 | Date Report Signed |
| State Certification # | State | State Certification # | State |
| Or State License # 1201007462 | State MI | Or State License # | State |

Freddie Mac Form 70 6-93 Produced using ACI software, 800.234.8727 www.aciweb.com

&lt;your company name here&gt;

Fannie Mae Form 1004 6-93

OO-ECLG0029744

**Thumbnails**  File No. 0112



Subject Front View

Title



Subject Rear View



Subject Street Scene



Sales Comp. 1



Sales Comp. 2



Sales Comp. 3



Location Map

OO-ECLG0029745

File No. 0112

**APPRAISERS CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to , or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for those adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** 10417 Cooley Lake Rd., Commerce Twp., MI 48382-3637

| APPRAISER: | SUPERVISORY APPRAISER (only if required) |
|---|---|
| Signature: _Michael R. Stuart_ | Signature: _____ |
| Name: Michael R. Stuart | Name: _____ |
| Date Signed: 03/12/2004 | Date Signed: _____ |
| State Certification #: _____ | State Certification #: _____ |
| or State License #: 1201007462 | or State License #: _____ |
| State: _____ | State: _____ |
| Expiration Date of Certification or License: 07/31/2004 | Expiration Date of Certification or License: _____ |
| | ☐ Did  ☐ Did Not Inspect Property |

1201007462

Freddie Mac Form 439 6-93     Page 2 of 2     Fannie Mae Form 1004B 6-93

OO-ECLG0029746



File No. 0112

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the Appraiser's judgment.

### STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc. ) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc. ) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated ) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Freddie Mac Form 439 6-93                                    Page 1 of 2                                    Fannie Mae Form 1004B 6-93

OO-ECLG0029747

**LOCATION MAP**

| Borrower: Blain | | File No.: 0112 | |
|---|---|---|---|
| Property Address: 10417 Cooley Lake Rd. | | Case No.: | |
| City: Commerce Twp. | State: MI | | Zip: 48382-3637 |
| Lender: American Elite Financial, Inc. | | | |



OO-ECLG0029748

## COMPARABLE PROPERTY PHOTO ADDENDUM



| Borrower: Blain | | | File No.: 0112 | |
| Address: 10417 Cooley Lake Rd. | | | Case No.: | |
| City: Commerce Twp. | St: MI | Zip: 48382-3637 | Lender: American Elite Financial, Inc. | |



**COMPARABLE SALE #1**

1972 Portlock St.
Commerce Twp.
Sale Date: Closed-06/2003
Sale Price: $ 195,000



**COMPARABLE SALE #2**

5591 Carroll Lake Rd.
Commerce Twp.
Sale Date: Closed-02/2004
Sale Price: $ 169,000



**COMPARABLE SALE #3**

4774 Halberd St.
Commerce Twp.
Sale Date: Closed-06/2003
Sale Price: $ 182,000

OO-ECLG0029749

FLOORPLAN

| | |
|---|---|
| Borrower: Blain | File No.: 0112 |
| Property Address: 10417 Cooley Lake Rd. | Case No.: |
| City: Commerce Twp. | State: MI | Zip: 48382-3637 |
| Lender: American Elite Financial, Inc. | |



Ranch / Crawl

Sketch by Apex IV Windows™

OO-ECLG0029750

**SUBJECT PROPERTY PHOTO ADDENDUM**

| | | | |
|---|---|---|---|
| Borrower: Blain | | File No.: 0112 | |
| Address: 10417 Cooley Lake Rd. | | Case No.: | |
| City: Commerce Twp. | St: MI | Zip: 48382-3637 | Lender: American Elite Financial, Inc. |



**FRONT VIEW OF SUBJECT PROPERTY**

Appraised Date: March 9, 2004
Appraised Value: $ 183,000

**REAR VIEW OF SUBJECT PROPERTY**

**STREET SCENE**

OO-ECLG0029751

ADDENDUM

| | |
|---|---|
| Borrower: Blain | File No.: 0112 |
| Property Address: 10417 Cooley Lake Rd. | Case No.: |
| City: Commerce Twp. | State: M   Zip: 48382-3837 |
| Lender: American Elite Financial, Inc. | |

LEGAL DESCRIPTION :
T2N, R8E, SEC 3 MUSKOKA PARK E 1/2 OF LOT 24 & ALL OF LOT 25, ALSO LOT 59 & E 1/2 OF LOT 60

**Conditions of Appraisal**
All sales confirmed closed and verified with assessor.

The Appraisal report is prepared as a summary appraisal report under Uniform Standards of Professional Appraisal Practice (USPAP).

The American National Standards Institute, Inc. (ANSI) Standard Z765 is the standard utilized in determining the gross living area of the subject and the comparables.

At the appraiser's discretion, a digital photo or photos provided by the real estate multiple listing service or the appraiser's own data base may be utilized in the report. All comparables utilized in the report have had an exterior (street) inspection by the appraiser.

Digital signatures are on occasion utilized to sign the report. Digital signatures are password protected and hence are secure. Further digital signatures are as legally binding and carry the same weight as the traditional signature.

Appraisers are required to be licensed and are regulated by the Michigan Department of Licensing and Regulation, P.O. Box 30018, Lansing, Michigan 48909.

The value estimate in this report is based on the assumption that the property is not negatively affected the existence of hazardous substances of detrimental environmental conditions. The appraiser is not in expert in this field. Additional investigation may reveal detrimental environmental conditions that could impact value and marketability.

The sole intended user of this report is the client.

OO-ECLG0029752

Accurate Appraisal Group, Inc.
[248] 777-2222

File No. 0112

********* INVOICE *********

File Number: 0112

American Elite Financial, Inc.
One Heritage Place Suite 329
Southgate, Mi. 48195

Borrower :        Blain

Invoice # :       0112
Order Date :      03/05/2004
Reference/Case # :

10417 Cooley Lake Rd.
Commerce Twp., MI 48382-3637

| | | |
|---|---|---|
| Appraisal Single Family-1004 | $ | 275.00 |
| | $ | |
| | $ | |
| | $ | |
| Invoice Total | $ | 275.00 |
| State Sales Tax @ | $ | 0.00 |
| Deposit | ($ | ) |
| Deposit | ($ | ) |
| Amount Due | $ | 275.00 |

Terms:   Due Upon Receipt

**Mail Checks To Accurate Appraisal Group**
27697 Pickford, Livonia, MI. 48152

OO-ECLG0029753

Accurate Appraisal Group, Inc.
[248] 777-2222

File No. 0112

American Elite Financial, Inc.
One Heritage Place Suite 320 Southgate, MI, 48195

File Number:  0112

In accordance with your request, I have personally inspected and appraised the real property at:

10417 Cooley Lake Rd.
Commerce Twp., MI 48382-3637

The purpose of this appraisal is to estimate the market value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the estimated market value of the property as of  March 9, 2004          is:

$183,000
One Hundred Eighty-Three Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final estimate of value, descriptive photographs, limiting conditions and appropriate certifications.

Michael R. Stuart
1201007452

OO-ECLG0029754

Accurate Appraisal Group, Inc.
[248] 777-2222

File No. 0112

### APPRAISAL OF



### LOCATED AT:

10417 Cooley Lake Rd.
Commerce Twp., MI 48382-3637

### FOR:

American Elite Financial, Inc.
One Heritage Place Suite 320 Southgate, MI. 48195

### BORROWER:

Blain

### AS OF:

March 9, 2004

### BY:

Michael R. Stuart
1201007462

OO-ECLG0029755

# EXHIBIT M

0057018558.xls

**ARGENT MORTGAGE COMPANY**
**APPRAISAL OPERATIONS**

| | | | |
|---|---|---|---|
| Loan No. | 0057018558 | Property Rights: | Fee simple |
| Property Address: | 10417 Cooley Lake Rd. | Property Type: | SFR |
| City: | Commerce Township | Borrower: | Blain |
| State: | MI | Assessor's Parcel Number: | 1703201074 |
| Zip: | 48382 | Mortgage Broker Name: | American Elite |
| County: | Oakland | Orig. Report Effective Date: | 03/09/2004 |
| Appraiser's Name: | Michael R. Stuart | Date of Review: | 03/15/2004 |
| Estimated Value: | $183,000 | Ind. Fee Reviewer: | |
| AMC Reviewer: | Pedro Alvarado | Log Number: | 3700 |
| | | Account Manager: | Haley C. |
| | | Team #: | 3B |
| | | Appraisal Coordinator: | PETER G. |

| Description | Acceptable | Unacceptable | Remarks: |
|---|:---:|:---:|---|
| **SUBJECT REVIEW ANALYSIS** | | | |
| 1. Property Address | X | | |
| 2. Legal Description | X | | |
| 3. Tax Year | X | | |
| 4. R.E. Taxes | X | | |
| 5. Lender Name/Address | X | | |
| 6. Appraiser Name/Address | X | | |
| **NEIGHBORHOOD REVIEW ANALYSIS** | | | |
| 7. Location | X | | |
| 8. Built up | X | | |
| 9. Growth rate | X | | |
| 10. Property Values | X | | |
| 11. Property Value Range | X | | |
| 12. Age range | X | | |
| 13. Present land use | X | | |
| 14. Land use change | X | | |
| 15. Neighborhood bounds | X | | |
| 16. Factors affecting marketability | X | | |
| 17. Market conditions | X | | |
| 18. Marketing time | X | | |
| 19. Concessions/trends | X | | |
| 20. Typical financing | X | | |
| **PLANNED UNIT DEVELOPMENT REVIEW** | | | |
| 21. Planned Unit Devel info (if applicable) | X | | |
| **SITE REVIEW ANALYSIS** | | | |
| 22. Site dimensions | X | | |
| 23. Specific zoning & description | X | | |
| 24. Zoning compliance | X | | |
| 25. Highest & Best Use | X | | |
| 26. Site description | X | | |
| 27. Utilities | X | | |
| 28. Off site improvements | X | | |
| 29. FEMA flood information | X | | |
| 30. Comment, easement/encroachment | X | | |
| **IMPROVEMENT REVIEW ANALYSIS** | | | |
| 31. General description | X | | |
| 32. Exterior Description | X | | |
| 33. Foundation | X | | |
| 34. Basement | X | | |
| 35. Room count section | X | | |
| 36. Above grade square footage | X | | |
| 37. Additional features | X | | |
| 38. Condition of improvements | X | | |
| 39. Environmental comments | X | | |
| **COST APPROACH REVIEW ANALYSIS** | | | |
| 40. Estimated site value | X | | |
| 41. Estimated reproduction cost | X | | |
| 42. Physical Depreciation | X | | |
| 43. Functional Depreciation | X | | |
| 44. External Depreciation | X | | |
| 45. Building dimensions | X | | |
| 46. Building Calculations | X | | |
| 47. Methodology land/physical deprec. | X | | |
| 48. Cost source/remaining economic life | X | | |

OO-ECLG0029740

Loan Number: 0057018558                    Borrower:  Blain

**COMPARABLE SALES ANALYSIS:**

| | Acceptable | Unacceptable | Sale # 1 | Sale # 2 | Sale # 3 | Sale # 4 |
|---|---|---|---|---|---|---|
| 49. Proximity to subject | X | | | | | |
| 50. Sales price accurate | X | | | | | |
| 51. Date | X | | | | | |
| 52. Location | X | | | | | |
| 53. Leasehold/fee | X | | | | | |
| 54. Site | X | | | | | |
| 55. View | X | | | | | |
| 56. Design & Appeal | X | | | | | |
| 57. Quality of Construction | X | | | | | |
| 58. Age | X | | | | | |
| 59. Condition | X | | | | | |
| 60. Room count | X | | | | | |
| 61. Gross Living Area | X | | | | | |
| 62. Basement/below grade | X | | | | | |
| 63. Functional Utility | X | | | | | |
| 64. Heating/Cooling | X | | | | | |
| 65. Energy Efficient Items | X | | | | | |
| 66. Garage/carport | X | | | | | |
| 67. Porch Patio Deck | X | | | | | |
| 68. Fireplace | X | | | | | |
| 69. Additional features | X | | | | | |
| 70. Net adjustments | X | | | | | |
| 71. Gross adjustments | X | | | | | |
| 72. Sale history | X | | | | | |
| 73. Final value estimate | X | | | | | |

**Reviewer's Summary/Comments**

Based on the sales presented in the appraisal report along with other sales considered by the reviewer, the appraiser's opinion of value $183,000 is reasonable.

1.  The appraiser has provided similar, proximate comps that support the value as well as demonstrate marketability.
2.  Additional data has been added that further support the appraised value.
3.  The appraiser failed to report the subjects prior transfer within 36 months which occurred on 12/5/01 for $156,500.

The following sales were considered by the reviewer:

| Street Address | Sales Price | Closed | GLA Sq. Ft. | Built | Distance |
|---|---|---|---|---|---|
| 649 Coloma | $176,000 | 12/03 | 1,066 | 1975 | 0.3 |
| 1470 Bathgate St. | $177,000 | 07/03 | 1,300 | 1971 | 0.6 |
| 1172 Sugden Lake Rd. | $189,000 | 06/03 | 949 | 1958 | 0.8 |

The intended use of this review is to assist Argent Mortgage Company in making an internal business decision regarding a mortgage loan transaction. The purpose of the review is to assess the reasonableness of the original appraiser's value opinion, to develop my own value opinion and determine the appraisal report's compliance with USPAP. I have performed a desk review of an appraisal report on the property noted in this review done by:
Michael R. Stuart dated 3/9/2004

The real property interest appraised, the date of this review and additional information required in S.R. 3 -1(b) / 3 -2(b) is noted in the heading of this appraisal review report. I have not inspected the subject property and/or the comparables. Subject property and comparable data information presented in the report was verified by me, if data was available. Attached on this review is an addendum with the *Scope of Appraisal Review and Review Certification* .

**Subject To The Following Conditions:**

Sales price: $ _N/A_     Appraiser's value: $ _183,000_     Reviewer's recommendation: $ _183,000_

Reviewer's Signature:  _____     Date:   3/15/2004
Pedro Alvarado

Desk Review                                                    Page 2

OO-ECLG0029741

**SCOPE OF REVIEW:** The scope of this review is limited to the information being provided by the original appraiser; form an opinion as to the apparent adequacy and relevance of the data and the propriety of any adjustments to the data; form an opinion as the appropriateness of the appraisal methods and techniques used and develop the reasons for any disagreement; form an opinion as to whether the analyses, opinions, and conclusions in the report under review are appropriate and reasonable, and develop the reasons for any disagreement.

## CERTICATION AND STATEMENT OF LIMITING CONDITIONS

**CERTIFICATION:** The Reviewer certifies and agrees that, to the best of his/her knowledge and belief:

1. The facts and data reported by the Reviewer and used in the review process are true and correct.

2. The analyses, opinions, and conclusions in this review report are limited only the by the assumptions and limiting conditions stated in this review report, and are my personal, unbiased professional analyses, opinions, and conclusions.

3. Unless stated elsewhere, I have no present or prospective interest in the property that is subject of this report and I have no personal interest or bias with respect to the parties involved.

4. My compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in, or the use of, this review report.

5. My analyses, opinions, and conclusions were developed and this review report was prepared in conformity with the Uniform Standards of Professional Appraisal Practice.

6. Unless stated elsewhere in this report, I did not personally inspect the subject property, either interior or exterior, of the report under review.

7. No one provided significant professional assistance to the person signing this review report.

**CONTINGENT AND LIMITING CONDITIONS:** The certification of the Reviewer appearing in the review report is subject to the following conditions and to such other specific and limiting conditions as are set forth by the Reviewer in the review report.

1. The Reviewer assumes no responsibility for matters of a legal nature affecting the property which is the subject of this review or the title thereto, nor does the Reviewer render any opinion as to the title, which is assumed to be good and marketable.

2. The Reviewer is not required to give testimony or appear in court because of having made the review, unless arrangements have been previously made therefor.

3. The Reviewer assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The Reviewer assumes no responsibility for such conditions, or for engineering which might be required to discover such factors.

4. Information, estimates, and opinions furnished to the Reviewer, and contained in the review report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished the Reviewer can be assumed by the Reviewer.

5. Disclosure of the contents of the report is governed by the Uniform Standards of Professional Appraisal Practice and the Bylaws and Regulations of the professional appraisal organizations with which the appraiser is affiliated.

6. Neither all, nor any part of the content of the review report, or copy thereof (including the conclusions of the review, the identity of the Reviewer, professional designations, reference to any professional appraisal organizations, or the firm with which the Reviewer is connected), shall be used for any purposes by anyone but the client specified in the review report, its successors and assigns, professional appraisal organizations, any state or federally approved financial institution, any department, agency, or instrumentality of the United States of any state or the District of Columbia, without the previous written consent and approval of the Reviewer.

7. No change of any item in the review report shall be made by anyone other than the Reviewer and the Reviewer shall have no responsibility for any such unauthorized change.

Reviewer: _Pedro J. Alvarado_     Date: 3/15/04

Reviewer's Certificate number: 156.0001425     State: IL

Reviewer Cert Expiry Date: 09/30/2005

OO-ECLG0029742

# EXHIBIT N

# GOOD FAITH ESTIMATE

Loan Number   0057018558 - 9703
Lender:   Argent Mortgage Company, LLC

Sales Price:   0.00
Base Loan Amount:   173,500.00
Total Loan Amount:   173,500.00
Type of Loan:   FIXED RATE
Date Prepared:   March 9, 2004

Address: 2550 Golf Road, East Tower, 10th Floor
          Rolling Meadows, IL 60008
Applicant(s):   THOMAS BLAIN

Rate: 6.650 %          Term:   360 Months
Broker:   American Elite Financial Inc

Property Address: 10417 COOLEY LAKE RD
          COMMERCE TOWNSHIP, MI 48382

One Heritage Place - Ste 320, Southgate, MI 48195

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - the actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A Settlement Statement that you will be receiving at settlement. The HUD-1 or HUD-1A Settlement Statement will show you the actual cost for items paid at settlement. The loan terms and fees may change based on the information gathered during the underwriting and loan approval process or as a result of negotiations between you and the Lender.

" L" designates those costs to be paid outside of closing by Lender.   "S" designates those costs to be paid by Seller   * Paid Outside of Closing

| 800 ITEMS PAYABLE IN CONNECTION WITH LOAN: | | 1100 TITLE CHARGES: | |
|---|---|---|---|
| 801 Loan Origination Fee ( %) | | 1101 Settlement or Closing Fee $325.00 to $350.00 | |
| 802 Loan Discount Fee ( %) | | 1102 Abstract or Title Search to | $236.00 |
| 803 Appraisal/Property Valuation | $300.00 | 1103 Title Examination | |
| 804 Credit Report to to $ | | 1104 Title Insurance Binder | |
| 805 Lender's Inspection Fee | | 1105 Document Preparation Fee | |
| 806 Mortgage Insurance Application Fee | | 1106 Notary Fees | |
| 807 Assumption Fee | | 1107 Attorney Fees | |
| 808 Yield Spread Premium to Broker | | 1108 Title Insurance $300.00 to $500.00 | $400.00 |
| 809 | | 1109 | |
| 810 Tax Related Service Fee | $70.00 | 1110 | |
| 811 Flood Search Fee | $16.00 | 1111 Settlement/Disbursement Fee | |
| 812 Lender's Processing Fee | | 1112 Escrow Fee | |
| 813 Admin to Argent Mortgage Company, | $175.00 | | |
| 814 Doc Prep Fee to | | | |
| 815 Credit Report Fee paid to Broker | | 1200 GOVERNMENT RECORDING AND TRANSFER CHARGES: | |
| 816 Origination Fee to broker (1.000 %) | $1,735.00 | 1201 Recording Fees: | $50.00 |
| 817 Application Fee to | | 1202 City/County Tax/Stamps: | |
| 818 Underwriting Fee to Broker | | 1203 | |
| 819 Service Provider Fee to | | 1204 | |
| 820 Processing Fee to Broker | | 1205 | |
| 821 Underwriting Fee to Lender | $375.00 | | |
| 900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | |
| 901 Interest for 10 days @ $31.61 per day | $316.10 | | |
| 902 Mortgage Ins Premium | | | |
| 903 Hazard Ins. Premium | | 1300 ADDITIONAL SETTLEMENT CHARGES: | |
| 904 Flood Ins. Premium | | 1301 Demand | |
| 1000 RESERVES DEPOSITED WITH LENDER: | | 1302 Pest Inspection | |
| 1001 Haz Ins Prem       months @ $ | | 1303 Survey | |
| 1002 Mortgage Ins       months @ $ | | 1304 Misc Fees | |
| 1003 Earthquake Ins       months @ $ | | 1305 Reconveyance Fee | |
| 1004 City Prop Taxes       months @ $ | | 1306 | |
| 1005 Annual Assmts       months @ $ | | 1307 Apprs/Prop Val Fee to | |
| 1006 Flood Ins       months @ $ | | 1308 Courier Fee | |
| 1007 Windstorm Ins       months @ $ | | TOTAL ESTIMATED SETTLEMENT CHARGES: | $3,667.10 |
| 1008 | | TOTAL SETTLEMENT CHARGES PAID BY LENDER | $0.00 |
| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | TOTAL ESTIMATED MONTHLY PAYMENT | |
| Down payment | | Principal & Interest | $1,113.81 |
| Est. Closing Costs | $3,351.00 | Real Estate Taxes | |
| Est. Prepaid Items/Reserves | $316.10 | Flood & Hazard Insurance | |
| OTHER - POC Borrower | $0.00 | Mortgage Insurance | |
| TOTAL EST. FUNDS NEEDED TO CLOSE | $3,667.10 | TOTAL MONTHLY PAYMENT | $1,113.81 |
| TOTAL FEES PAID BY LENDER | $0.00 | | |

THIS SECTION TO BE COMPLETED BY LENDER ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED. Use of the particular provider is required and the estimate is based on charges of the provider. If a particular provider is not mentioned, a provider will be required from a lender approved list.

| ITEM - NAME OF PROVIDER | ADDRESS OF PROVIDER | TELEPHONE | NATURE OF RELATIONSHIP |
|---|---|---|---|
| 803 Appraisal Repeated Use | | | Unaffiliated/Repeated Use |
| 804 Credit Repeated Use | | | Unaffiliated/Repeated Use |
| 810 Fidelity National Tax Service | 468 N. Rosemead Blvd., Pasadena, CA 91107 | 800-969-9724 | Unaffiliated/Used 100%/Tax |
| 811 First American Flood Data Service | 11902 Burnet Rd. Ste 200, Austin, TX 78758 | 800-447-1772 | Unaffiliated/Used 100%/Flood |
| 1101 Closing Agent Repeated Use | | | Unaffiliated/Repeated Use |
| 1108 Title Company Repeated Use | | | Unaffiliated/Repeated Use |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs", and the Consumer Handbook on ARM Mortgages, if applicable.

| Applicant THOMAS BLAIN | Date | Applicant | Date |
|---|---|---|---|
| | | | |
| Applicant | Date | Applicant | Date |

GFE (Rev. 11/03)