# EXHIBIT F

## ITEMS TO BE PAID OFF FROM LOAN PROCEEDS

rower :   Michele M Montgomery
          Mark A. Montgomery                    Close Date:              09/17/2004


Loan Number :   0093481703 - 5653

| Payee | | Amount |
|---|---|---|
| DISCOVER FIN | (W) | $11,484.00 |
| OPTION ONE | (W) | $118,818.66 |
| CITIBANK MC | (W) | $10,408.00 |
| Trv Bnk Pl / Citfin | (W) | $2,490.00 |
| LAFCU-C.U. | (W) | $24,881.48 |

Total Wire:   $171,970.67

Loan Amount:           183,500.00         L = Lender Paid

Cash/Check from
Borrower:

Borrower Proceeds:     $2,870.78

                                  Estimated Funding Date:       09/24/2004


Title Company Representative Signature      Date       Print Date:    09/17/2004      06:35AM

895-7UNV  (2/2004)

000000534817030307430707

# EXHIBIT G

## CLOSING INSTRUCTIONS
### ITEMIZATION OF SETTLEMENT CHARGES

| Title Company/Attorney | Title Officer/Attorney | Phone Number | Order Number |
|---|---|---|---|
| DEVON TITLE | STEPHEN J. SMITH | (517)381-4898 | 610560 |

| rrower(s) | Property Address |
|---|---|
| ichele M Montgomery  Mark A. Montgomery | 1799 GLASS DR |
| | Charlotte            MI        48813 |
| | Loan Number: 0093481703 |

FROM: Ameriquest Mortgage Company - East Lansing, MI  Phone No. (517)381-0324        Fax (517)251-0454
          Branch Name                                        Branch Phone No.                   Branch Fax Number

BELOW IS A LIST OF ALL SETTLEMENT CHARGES AND DISBURSEMENTS APPLICABLE TO THIS LOAN. YOU MUST USE THESE FIGURES TO PREPARE YOUR SETTLEMENT STATEMENT. YOU CANNOT DEVIATE FROM THESE FIGURES WITHOUT PRIOR WRITTEN AUTHORIZATION FROM VICE PRESIDENT OF LOAN OPERATIONS AND/OR ITS DIRECTORS .

| LINE NO. ON SETTLEMENT STATEMENT | PAYEE | AMOUNT |
|---|---|---|
| 801. Loan origination fee      % to | | |
| 802. Loan discount  4.773  % to  Ameriquest Mortgage Company | | $8,758.46 |
| 803. Apprsl/Prop Val to Reimbursed to Lender | | $450.00 |
| 808. Yield Spread Premium to | | |
| 809. | | $70.00 |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | | $16.00 |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | | $626.00 |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | | $239.00 |
| 813.Admin to Ameriquest Mortgage Company | | |
| 814. Doc. Prep. Fee to | | |
| 815. Credit Report Fee to | | |
| 816.  Origination Fee      % to | | $350.00 |
| 817. Application Fee to  Ameriquest Mortgage Company | | |
| 818. Underwriting Fee to | | |
| 819. Service Provider Fee to | | |
| 820. Processing Fee  to | | |
| 821. Underwriting Fee to | | |
| 822. Appraisal Fee to | | |
| 901. Interest from 09/24/2004  to 10/01/2004  @  $35.95 per day | | $251.65 |
| 902. Mortgage insurance premium for        months to | | $0.00 |
| 903. Hazard ins prem to | | |
| 904. Flood Ins prem to | | $480.78 |
| 1001. Hazard insurance  9  months @ $  53.42  per month | | |
| 1002. Mortgage insurance     months @ $     per month | | |
| 1003. Earthquake Ins     months @ $     per month | | $1,295.19 |
| 1004. County prop. taxes  9  months @ $  143.91  per month | | |
| 1005. Annual assess.  months @ $     per month | | |
| 1006. Flood    months @ $     per month | | |
| 1007. Windstorm Ins    months @ $      per month | | |
| 1008. | | |
| 1101. Settlement or closing fee to | *L  $450.00 *   $0.00 | $0.00 |
| 1102. Abstract or title search to | | |
| 1103. Title examination to | | |
| 1105. Document preparation to | | |
| 1106. Notary fees to | | |
| 1107. Attorney's fees to | | |
| 1108. Title Insurance to  DEVON TITLE | *L  $361.75 *   $0.00 | $0.00 |
| 1109. Lender's coverage | | |
| 1110. Owner's coverage          $ | $0.00 | |
| 1111. Settlement/Disbursement fee to | *L  $50.00 *   $0.00 | $0.00 |
| 1112. Escrow Fee to | | |
| 1201. Recording fees | *L  $71.00 *   $0.00 | $0.00 |
| 1202. City/county tax/stamps | | |
| 1203. State tax/ stamps | | |
| 1204. State specific fee | | |
| 1301. Demand to | | |
| 1302. Pest Inspection to | | |
| 1303. Survey Fee | | |
| 1304. Staff Appraiser Fee to | | |
| 1305.  Reconveyance Fee to | | |
| 1306. | | |
| 1307. Property Val Fee to | | |
| 1308. Courier Fee | *L  $85.00 *   $0.00 | $0.00 |

Any amounts appearing on these lines are prepaid finance charges and cannot be increased or added once loan documents have been prepared unless new loan documents are generated.



_____                    _____
Title Company Representative Signature              Date

# EXHIBIT H

**Ameriquest Mortgage Company**

## Summary of Debts and Disbursements
(Refinance Loans Only)

Borrower: Michele M Montgomery    Mark A. Montgomery

Date: September 17, 2004
Branch:
East Lansing, MI

Loan Number: 0093481703 - 5653

### Fees

| | | |
|---|---|---|
| Loan Discount Fee | 4.773 | $8,758.46 |
| Lender Retained Fees | | $1,311.00 |
| Prepaid Interest | | $251.65 |
| Fees Paid to Others | | $2,225.97 |

Short to Close

Total Payoffs    $168,082.14

Cash to Borrower    $2,870.78

Total Points & Fees    **$12,547.08**

| CREDITORS DEBTS | BALANCE | PAYOFFS | PAYMENTS |
|---|---|---|---|
| CAPITAL 1 BK RECOVERY | $413.00 | | $30.00 |
| DISCOVER FIN | | $11,484.00 | |
| CITIFINANCIA | $7,485.00 | | $221.00 |
| LAFCU-C.U. | $5,883.00 | | $117.00 |
| L J ROSS & ASSOCIATE | $65.00 | | $1.95 |
| GMAC | $20,934.00 | | $583.00 |
| CAPITAL 1 BK RECOVERY | $279.00 | | $15.00 |
| OPTION ONE | | $118,818.66 | |
| L J ROSS & ASSOCIATE | $65.00 | | $1.95 |
| L J ROSS & ASSOCIATE | $55.00 | | $1.65 |
| MID MICHIGAN CREDIT BU | $38.00 | | $1.14 |
| L J ROSS & ASSOCIATE | $49.00 | | $1.47 |
| MONEY RECOVERY NATIONW | $40.00 | | $1.20 |
| CITIBANK MC | | $10,408.00 | |
| Trv Bnk Pl / Citfin | | $2,490.00 | |
| CBUSASEARS | $5,401.00 | | $56.00 |
| CBCS | $110.00 | | $4.00 |
| LAFCU-C.U. | $17,719.00 | | $452.00 |
| HH/ART VAN | $1,500.00 | | $45.00 |
| L J ROSS & ASSOCIATE | $82.00 | | $2.46 |
| L J ROSS & ASSOCIATE | $62.00 | | $1.86 |
| LAFCU-C.U. | | $24,881.48 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |


0000009348170302004790101

Total Payments:    $1,536.68

D&D (Rev.01/02)

# EXHIBIT I

## NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   September 17, 2004
LOAN NO.:   0093481703 - 5653
TYPE:   ADJUSTABLE RATE

BORROWER(S): Michele M Montgomery        Mark A. Montgomery

ADDRESS:        1799 GLASS DR
CITY/STATE/ZIP:   Charlotte,MI 48813

PROPERTY:   1799 GLASS DR
            Charlotte, MI  48813

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

> **ENTER DOCUMENT SIGNING DATE**
>
> 9 | 17 | 04

1.   The date of the transaction, which is

or

2.   The date you received your Truth in Lending disclosures;

or

3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your ___er, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:      **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

> **ENTER FINAL DATE TO CANCEL**
>
> 9 | 21 | 04

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____        _____
SIGNATURE                                    DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____        Date        _____        Date
BORROWER/OWNER Michele M Montgomery                BORROWER/OWNER  Mark A. Montgomery

_____        Date        _____        Date
BORROWER/OWNER                                     BORROWER/OWNER

1064-NRC (Rev 01/04)
0000009348170304000050101

**BORROWER COPY**

09/16/2004 5:17:37 PM

# EXHIBIT J

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0093481703 - 5653    Borrower(s): Michele M Montgomery

Date: September 17, 2004              Mark A. Montgomery

**You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason.** This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, **we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.** No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1600 S Douglass Rd Anaheim, CA 92806
ATTN: Funding Department
Phone: (714)541-9960
Fax: (800)664-2256

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

| | |
|---|---|
| _____ | _____ |
| Borrower/Owner  Michele M Montgomery | Date |
| | |
| _____ | _____ |
| Borrower/Owner  Mark A. Montgomery | Date |
| | |
| _____ | _____ |
| Borrower/Owner | Date |
| | |
| _____ | _____ |
| Borrower/Owner | Date |

---

## REQUEST TO CANCEL

I/We want to cancel loan #_____.

_____    _____

Borrower/Owner Signature          Date

---



0000009348170304042201 01

850 (10/00)

09/16/2004 5:17:37 PM

**BORROWER COPY**

# EXHIBIT K

File No. 6051970-130485469 Page #1

# RESIDENTIAL APPRAISAL REPORT



# APPRAISAL ONE

## OF MICHIGAN, INC.

## WWW.APPRAISALONEOFMICHIGAN.COM

| | |
|---|---|
| **Property Location:** | 1799 Glass Dr<br>See attached addenda.<br>Charlotte, MI 48813-8739 |
| **Borrower:** | Michele Montgomery |
| **Client:** | AMC_East Lansing<br>325 E. Grand River Ave. Suite #255<br>East Lansing, MI 48823 |
| **Effective Date:** | September 11, 2004 |
| **Prepared By:** | Michele K. Ramon |

Appraisal One of Michigan
127 E. Scott St.
Grand Ledge, MI 48837

Appraisal One of Michigan

No. 6051970-130485469   Page #2

DPO/MKR

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. 6051970-130485469

**Property Description**

| | |
|---|---|
| Property Address 1799 Glass Dr | City Charlotte | State MI | Zip Code 48813-8739 |
| Legal Description See attached addenda. | | | |
| Assessor's Parcel No. 070 032 200 175 00 | Tax Year 2003/4 | R.E. Taxes $ 1,653.91 | Special Assessments $ 0.00 |
| Borrower Michele Montgomery | Current Owner Montgomery | Occupant ☒ Owner ☐ Tenant ☐ Vacant |
| Property rights appraised ☒ Fee Simple ☐ Leasehold | Project Type ☐ PUD ☐ Condominium (HUD/VA only) | HOA $ N/A | /Mo. |
| Neighborhood or Project Name N/A | Map Reference Benton Township | Census Tract 0206.00 |
| Sale Price $ Refinance | Date of Sale N/A | Description and $ amount of loan charges/concessions to be paid by seller N/A |
| Lender/Client AMC  East Lansing | Address 325 E. Grand River Ave, Suite #255 East Lansing, MI 48823 |
| Appraiser Michele K. Ramon | Address 127 E. Scott - Grand Ledge, MI 48837 |

| Location ☐ Urban ☒ Suburban ☐ Rural | Predominant occupancy | Single family housing | Present land use % | Land use change |
|---|---|---|---|---|
| Built up ☐ Over 75% ☒ 25-75% ☐ Under 25% | ☒ Owner 90 | PRICE $(000) | AGE (yrs) | One family 75 | ☒ Not likely ☐ Likely |
| Growth rate ☐ Rapid ☒ Stable ☐ Slow | ☐ Tenant | 71 Low 1 New | 2-4 family 5 | ☐ In process |
| Property values ☐ Increasing ☒ Stable ☐ Declining | ☐ Vacant (0-5%) | 273 High 100 | Multi-family 5 | To: |
| Demand/supply ☐ Shortage ☒ In balance ☐ Over supply | ☒ Vacant (over 5%) | Predominant | Commercial 5 | |
| Marketing time ☐ Under 3 mos. ☒ 3-6 mos. ☐ Over 6 mos. | | 165 25 | Vacant 10 | |

Note:  Race and the racial composition of the neighborhood are not appraisal factors.
Neighborhood boundaries and characteristics:  The subject is bordered to the north by McConnell Hwy, to the south by Packard Hwy, to the east by I-69, and to the west by Benton Rd.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.):
There are no apparent adverse factors which would affect the marketability of the subject property.  Properties surrounding the subject property are consistent in style, condition and amenities. The subject property is situated in the Charlotte School District and is close to employment, shopping and recreation.  The market is very stable in this area.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time — such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.):
There is ample mortgage money available through local lending institutions.  Property values appear to be stable.  Marketing times are generally less than one hundred and fifty days.

| Project Information for PUDs (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? | | ☐ Yes ☒ No |
|---|---|---|
| Approximate total number of units in the subject project N/a | Approximate total number of units for sale in the subject project N/a |
| Describe common elements and recreational facilities: N/a | |

| | |
|---|---|
| Dimensions  290 X 380 | Topography Level to sloping |
| Site area 110,200 / 2.53 Acres | Corner Lot ☐ Yes ☒ No | Size Typical for area |
| Specific zoning classification and description Agricultural | Shape Rectangular |
| Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | Drainage Appears Adequate |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | View Average |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | Landscaping Typical |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street Asphalt | | ☒ | | Driveway Surface Concrete |
| Gas | ☒ | | Curb/gutter None | | | | Apparent easements None |
| Water | | ☒ Well | Sidewalk None | | | | FEMA Special Flood Hazard Area ☐ Yes ☒ No |
| Sanitary sewer | | ☒ Septic | Street lights None | | | | FEMA Zone n/a Map Date n/a |
| Storm sewer | | ☒ None | Alley None | | | | FEMA Map No. Not Mapped |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.):  No readily apparent adverse easements or encroachments apparent at the time of inspection.  Well and septic are common in this market area.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units One | Foundation Block | Slab None | Area Sq. Ft. 1,092 | Roof CNCLD ☐ |
| No. of Stories One | Exterior Walls Vinyl | Crawl Space None | % Finished 85% | Ceiling CNCLD ☐ |
| Type (Det./Att.) Detached | Roof Surface Asphalt Shingle | Basement Full | Ceiling Open/Drywall | Walls CNCLD ☐ |
| Design (Style) Ranch | Gutters & Dwnspts. Aluminum | Sump Pump Yes | Walls Drywall | Floor CNCLD ☐ |
| Existing/Proposed Existing | Window Type Vinyl/DH/Case | Dampness None Noted | Floor Wood/Carpet | None ☐ |
| Age (Yrs.) 17 | Storm/Screens Yes | Settlement None Noted | Outside Entry Yes | Unknown ☐ |
| Effective Age (Yrs.) 5 | Manufactured House No | Infestation None Noted | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | Bar Area | 1,092 |
| Level 1 | 1 | 1 | 1 | 1 | | 1 | | 3 | 2.0 | | | 1,092 |
| Level 2 | | | | | | | | | | | | |

Finished area above grade contains:  6 Rooms;  3 Bedroom(s);  2 Bath(s);  1,092 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING Yes | KITCHEN EQUIP. | ATTIC | AMENITIES | CAR STORAGE: |
|---|---|---|---|---|---|---|
| Floors | Car/Vin/Ceramic/Avg. | Type WFA | Refrigerator ☒ P | None ☐ | Fireplace(s) # None ☐ | None ☐ |
| Walls | Drywall/Avg | Fuel Gas | Range/Oven ☒ P | Stairs ☐ | Patio Concrete ☒ | Garage # of cars |
| Trim/Finish | Wood/Paint/Stain/Avg | Condition Avg. | Disposal ☐ | Drop Stair ☐ | Deck Wood ☒ | Attached 2-Car ☒ |
| Bath Floor | Vinyl/Avg | COOLING Yes | Dishwasher ☒ | Scuttle ☒ | Porch Front ☒ | Detached ☐ |
| Bath Wainscot | Fiberglass/Avg | Central Yes | Fan/Hood ☒ | Floor ☐ | Fence None ☐ | Built-In ☐ |
| Doors | Wood/HC/Avg | Other None | Microwave ☒ P | Heated ☐ | Pool None ☐ | Carport ☐ |
| | | Condition Avg. | Washer/Dryer ☒ P | Finished ☐ | | Driveway 2+ ☒ |

Additional features (special energy efficient items, etc.):  Subject is a three bedroom ranch with two baths, full finished walkout basement and a 32 X 48 pole barn. Subject has one hundred amp electrical service and a forty gallon gas water heater.

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.:  The subject appears to be in overall average condition.  The quality of construction is considered  average, no measurable functional or external obsolescence was noted.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property:  The appraiser observed no forms of adverse environmental conditions which would negatively impact the market value of the property being appraised.

Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

No. 6051970-130485469 Page #3
DPO/MKR

# UNIFORM RESIDENTIAL APPRAISAL REPORT
File No. 6051970-130485469

**Valuation Section**

**COST APPROACH**

| | | | |
|---|---|---|---|
| ESTIMATED SITE VALUE | = $ | 60,000 | |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | | |
| Dwelling 1,092 Sq. Ft @ $ 85.00 = $ | | 92,820 | |
| 1,092 Sq. Ft @ $ 20.00 = $ | | 21,840 | |
| Miscellaneous Improvements | | 40,000 | |
| Garage/Carport 480 Sq. Ft @ $ 10.00 = | | 4,800 | |
| Total Estimated Cost New | = $ | 159,460 | |
| Less Physical Functional External | | | |
| Depreciation 12,262 | = $ | 12,282 | |
| Depreciated Value of Improvements | = $ | 147,198 | |
| "As-is" Value of Site Improvements | = $ | 7,000 | |
| INDICATED VALUE BY COST APPROACH | = $ | 214,198 | |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): The Replacement cost of the home is based on builder prices for similar construction in the area and the Marshall Swift publication. Physical depreciation is based on the age life method of calculating depreciation. No functional or external depreciation was noted. The estimated remaining life is 40 years.

**SALES COMPARISON ANALYSIS**

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1799 Glass Dr Charlotte, MI 48813 | 2041 Island Hwy Charlotte, MI 48813 | | 2730 N Otto Charlotte, MI 48813 | | 2469 Packard Hwy Charlotte, MI 48813 | |
| Proximity to Subject | | 2.66 miles | | 0.19 miles | | 1.78 miles | |
| Sales Price | Refinance | $ | 219,000 | $ | 228,900 | $ | 178,000 |
| Price/Gross Living Area | | $ 200.55 ⊕ | | $ 159.51 ⊕ | | $ 136.92 ⊕ | |
| Data and/or Verification Source | Inspection Public Records | MLS#90861 | | MLS Public Records | | MLS#91473 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Sales or Financing Concessions | | Conventional None Noted | 0 | Conventional None Noted | 0 | Conventional Seller Concession | −19,000 |
| Date of Sale/Time | | 11/2003 | 0 | 3/2004 | 0 | 1/2004 | 0 |
| Location | Suburban | Suburban | 0 | Suburban | 0 | Suburban | 0 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | 0 | Fee Simple | 0 | Fee Simple | 0 |
| Site | 2.53 Acres | 10.0 Acres | −7,500 | 10.0 Acres | −7,500 | 1.0 Acre | +1,500 |
| View | Average | Average | 0 | Average | 0 | Average | 0 |
| Design and Appeal | Ranch/Avg. | Bi-Level/Avg. | 0 | Ranch/Avg. | 0 | 2 Story/Avg. | 0 |
| Quality of Construction | Vinyl/Avg. | Brick/Vinyl/Avg. | −500 | Aluminum/Avg. | +1,000 | Vinyl/Avg. | 0 |
| Age | 17 | 24 | 0 | 25 | 0 | 6 | −2,000 |
| Condition | Average | Average | 0 | Average | 0 | Average | 0 |
| Above Grade | Total :Bdrms :Baths | Total :Bdrms :Baths | | Total :Bdrms :Baths | | Total :Bdrms :Baths | |
| Room Count | 6 : 3 : 2 | 6 : 3 : 1 | +1,000 | 8 : 3 : 2 | 0 | 6 : 3 : 2 | 0 |
| Gross Living Area | 1,092 Sq. Ft. | 1,092 Sq. Ft. | 0 | 1,435 Sq. Ft. | −5,100 | 1,300 Sq. Ft. | −3,100 |
| Basement & Finished Rooms Below Grade | Full/Walkout Partially Finished | Full Partially Finished | +2,500 | Partial/Walkout Partially Finished | +2,000 | Full Not Finished | +1,500 +3,500 |
| Functional Utility | Typical | Typical | 0 | Typical | 0 | Typical | 0 |
| Heating/Cooling | WFA/Central | WFA/Central | 0 | WFA/Central | 0 | WFA/Central | 0 |
| Energy Efficient Items | Typical | Typical | 0 | Typical | 0 | Typical | 0 |
| Garage/Carport | 2-Car/Attached | 2-Car/Attached | 0 | 2-Car/Attached | 0 | 2-Car/Attached | 0 |
| Porch, Patio, Deck, Fireplace(s), etc. | Deck/Pat/Porch None | Porch/Deck None | +1,000 | Patio/Deck Two Fireplaces | +1,000 −2,000 | Deck None | +2,000 0 |
| Fence, Pool, etc. | None Pole Barn | None Pole Barn | 0 | None Horse Barn/Pole Barn | −2,000 | None | +4,000 |
| Net Adj. (total) | | + ☒ − $ | 3,500 | + ☒ − $ | 12,600 | + ☒ − $ | 11,600 |
| Adjusted Sales Price of Comparable | | $ | 215,500 | $ | 216,300 | $ | 166,400 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): See attached addenda.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | Per MLS no sale taken place in the past 3 years. | No other noted sales in the past 12 months, per MLS | No other noted sales in the past 12 months, per MLS | No other noted sales in the past 12 months, per MLS |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: There has been no prior sale of this subject in the past thirty six months and there is no current sale pending or option on the subject property.

INDICATED VALUE BY SALES COMPARISON APPROACH ... $ 216,000

INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ N/A

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans & specifications.

Conditions of Appraisal: See attached addenda.

**RECONCILIATION**

Final Reconciliation: All approaches to value have been considered. The market data approach has been relied on most heavily and was supported by the cost approach. The income approach was considered, but not utilized because the typical buyer will occupy the subject property.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA Form 1004B (Revised 6/93 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF September 11, 2004 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 216,000

APPRAISER: Michele K. Ramon
Signature _Michele K. Ramon_
Name Michele K. Ramon
Date Report Signed September 11, 2004
State Certification # State MI
Or State License # 1201007215 State MI

SUPERVISORY APPRAISER (ONLY IF REQUIRED):
Signature
Name
Date Report Signed
State Certification # State
Or State License # State
☐ Did ☐ Did Not Inspect Property

Freddie Mac Form 70 6/93          PAGE 2 OF 2          Fannie Mae Form 1004 6-93

Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Supplemental Addendum

File No. 6051970-130485469    No. 6051970-130485469 Page #4

| Borrower/Client | Michele Montgomery | | | |
|---|---|---|---|---|
| Property Address | 1799 Glass Dr | | | |
| City | Charlotte | County 045 | State MI | Zip Code 48813-8739 |
| Lender | AMC East Lansing | | | |

**• URAR: Sales Comparison Comments**

The subject and comparables bare in the Charlotte School District. All comparables are similar to subject in style and utility. Sales comparable #1, #3 and #4 are older sales than desired but is still considered a good indicator of value. The appraiser searched the MLS and city records for other comparables more pertinent in time of sale. No other sales more pertinent in time were found. The comparables as shown are the best comparables available to substantiate the value of the subject.

In this Michigan community, it is no uncommon for comparable sales to be further than five miles from the subject. This condition should not be considered negative regarding the subjects marketability. Sales comparable #4 is further than desired. Appraiser searched the market for comparables closer to the subject and no comparables were found.

Square footage is adjusted at $15 per square foot for amounts that exceed the subject sq ft by +-100 ft. Acreage was adjusted at $1000 per acre. Car storage was adjusted at $1000 per car. All other adjustments are common to, and recognized by the market.

Limited Real Estate Appraiser, David P. Osypczuk, limited license #1201069289, expiration date 07/31/2005, assisted in the inspection of the subject property and the development of the appraisal report.

Appraiser must be licensed and regulated by the Department of Consumer & Industry Services. PO Box 30018 - Lansing, MI

Appraiser certifies that the appraisal conforms to the Uniform Standards of Professional Appraisal Practice (USPAP) adopted by the Appraisal Standards Board of The Appraisal Foundation. Except that the departure provision of USPAP does not apply.

**• URAR: Conditions of Appraisal**

Market value was estimated in fee simple title. Assuming no outstanding liens which could affect the marketability of the property. All sales were given similar consideration. This appraisal is for the purposes of determining collateral for a non-federally related transaction. Any other use of this appraisal is prohibited without written permission from the appraiser as it could be misleading to the user.

This document is sent "as is." The appraiser is not responsible for any alteration of the appraisal once the file has been sent. Any changes made subsequent to the sending of the file nullifies the conclusions set forth in this appraisal.

If specific arrangements have been made before hand to appear or testify in court, the fee shall be accrued hourly, at a rate of $250.00 per hour, including drive time and shall be billed regardless of whether the appraiser appears or testifies in court.

Billing shall be for a minimum of one hour and thereafter shall be billed in half hour (1/2 hour) increments.

**• URAR: Legal Description**

COMM 1620 FT S & 870 FT W OF NE COR SEC 32 W 290 FT S 380 FT E 290 FT N 380FT TO BEG. SEC 32T3NR4W. BENTON TWP.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> *Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Appraisal One of Michigan
Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**  1799 Glass Dr, Charlotte, MI 48813-8739

**APPRAISER:**

Signature:  *Michele K. Ramon*
Name:  Michele K. Ramon
Date Signed:  September 11, 2004
State Certification #:
or State License #:  1201007215
State:  MI
Expiration Date of Certification or License:  07/31/2005

**SUPERVISORY APPRAISER (only if required):**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____

☐ Did    ☐ Did Not Inspect Property

no. 6051970-130485469 Page #7

## Subject Photo Page

| | | | | |
|---|---|---|---|---|
| Borrower/Client Michele Montgomery | | | | |
| Property Address 1799 Glass Dr | | | | |
| City Charlotte | County 045 | State MI | Zip Code 48813-8739 | |
| Lender AMC East Lansing | | | | |



**Subject Front**

| | |
|---|---|
| 1799 Glass Dr | |
| Sales Price | Refinance |
| Gross Living Area | 1,092 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Suburban |
| View | Average |
| Site | 2.53 Acres |
| Quality | Vinyl/Avg. |
| Age | 17 |



**Subject Rear**



**Subject Street**

Form PIC3x5.SR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

No. 6051970-130485469 Page #8

**Building Sketch (Page - 1)**

| | | | | |
|---|---|---|---|---|
| Borrower/Client Michele Montgomery | | | | |
| Property Address 1799 Glass Dr | | | | |
| City Charlotte | County 045 | | State MI | Zip Code 48813-8739 |
| Lender AMC East Lansing | | | | |



Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 1092.00 | 1092.00 |
| P/P | Deck | 280.00 | |
| | Patio | 36.00 | |
| | Porch | 20.00 | 336.00 |
| GAR | Garage | 480.00 | 480.00 |
| | TOTAL LIVABLE (rounded) | | 1092 |

| LIVING AREA BREAKDOWN | |
|---|---|
| Breakdown | Subtotals |
| First Floor | |
| 26.0 x 42.0 | 1092.00 |
| 1 Calculation Total (rounded) | 1092 |



No. 6051970-130485469 Page #9

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | Michele Montgomery |
| Property Address | 1799 Glass Dr |
| City Charlotte | County O45    State MI    Zip Code 48813-8739 |
| Lender AMC East Lansing | |



### Comparable 1
2041 Island Hwy

| | |
|---|---|
| Prox. to Subject | 2.66 miles |
| Sale Price | 219,000 |
| Gross Living Area | 1,092 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1 |
| Location | Suburban |
| View | Average |
| Site | 10.0 Acres |
| Quality | Brick/Vinyl/Avg. |
| Age | 24 |



### Comparable 2
2730 N Otto

| | |
|---|---|
| Prox. to Subject | 0.19 miles |
| Sale Price | 228,900 |
| Gross Living Area | 1,435 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Suburban |
| View | Average |
| Site | 10.0 Acres |
| Quality | Aluminum/Avg. |
| Age | 25 |



### Comparable 3
2469 Packard Hwy

| | |
|---|---|
| Prox. to Subject | 1.78 miles |
| Sale Price | 178,000 |
| Gross Living Area | 1,300 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Suburban |
| View | Average |
| Site | 1.0 Acre |
| Quality | Vinyl/Avg. |
| Age | 6 |



## Location Map

| Borrower/Client | Michele Montgomery | | | | |
|---|---|---|---|---|---|
| Property Address | 1799 Glass Dr | | | | |
| City | Charlotte | County | 045 | State | MI |
| Lender | AMC East Lansing | | | Zip Code | 48813-8739 |



# EXHIBIT L



# APPRAISAL OF



A Single Family Residence

## LOCATED AT:

1799 Glass Drive
Charlotte, MI 48813

## FOR:

1st. National Mortgage
6427 Centurion Drive  Ste. 150  Lansing, MI 48917

## BORROWER:

Mark & Michelle Montgomery

## AS OF:

February 13, 2003

## BY:

Angela K. Oberlin
State Licensed Real Estate Appraiser



Attn: Carlos Gonzales

1st. National Mortgage
6427 Centurion Drive   Ste. 150   Lansing, MI  48917

File Number:   3080

In accordance with your request, I have personally inspected and appraised the real property at:

1799 Glass Drive
Charlotte, MI 48813

The purpose of this appraisal is to estimate the market value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the estimated market value of the property as of   February 13, 2003        is:

$160,000
One Hundred Sixty Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final estimate of value, descriptive photographs, limiting conditions and appropriate certifications.

Sincerely,

Angela K. Oberlin
State Licensed Real Estate Appraiser

| | | | |
|---|---|---|---|
| Sale Price $ **Refinance** | Date of Sale **N/A** | Description and $ amount of loan charges/concessions to be paid by seller **N/A** | |
| Lender/Client **1st. National Mortgage** | | Address **6427 Centurion Drive  Ste. 150  Lansing, MI 48917** | |
| Appraiser **Angela K. Oberlin** | | Address **2450 Renfrew Way  Lansing, MI  48911** | |

| | | | | | | Single family housing | | Present land use % | Land use change |
|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban | [ ] Suburban | [X] Rural | **Predominant occupancy** | | PRICE $(000) / AGE (yrs) | | One family 15% | [X] Not likely [ ] Likely |
| Built up | [ ] Over 75% | [X] 25-75% | [ ] Under 25% | [X] Owner | | 70 Low / New | | 2-4 family | [ ] In process |
| Growth rate | [ ] Rapid | [X] Stable | [ ] Slow | [ ] Tenant | | 275+ High / 100+ | | Multi-family | To: |
| Property values | [X] Increasing | [ ] Stable | [ ] Declining | [ ] Vacant (0-5%) | | Predominant | | Commercial | |
| Demand/supply | [ ] Shortage | [X] In balance | [ ] Over supply | [ ] Vacant (over 5%) | | 150 / 35 | | (Agric. ) 85% | |
| Marketing time | [ ] Under 3 mos. | [X] 3-6 mos. | [ ] Over 6 mos. | | | | | | |

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

Neighborhood boundaries and characteristics: The neighborhood boundaries are Vermontville Highway to the north, Columbia Highway (extended) to the south, Perkey Road (extended) to the east and Hubbard Road (extended) to the west.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): The subject is located in Benton Township. The subject is located in a neighborhood with a variety of style and value range homes. Maintenance of properties appear good. The primary support center for this area is Lansing, approximately 12+/- miles to the northeast. Charlotte Public Schools service this area with bus service available. Freeway access is located within 2+/- miles. No adverse conditions were noted.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time - - such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): Market condition within the subject neighborhood appear to be stable with an adequate supply of homes listed for sale. Conventional financing is the most prevalent with government insured financing also common. Financing concessions are uncommon in this market area.

Project Information for PUDs (If applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)?  [ ] YES  [ ] NO
Approximate total number of units in the subject project _____    Approximate total number of units for sale in the subject project _____
Describe common elements and recreational facilities:

| | | | |
|---|---|---|---|
| Dimensions **290' X 380'** | | Topography | Slopes to front & rear |
| Site area **110200 Sq.Ft.** | Corner Lot [ ] Yes [X] No | Size | Typical for area |
| Specific zoning classification and description **Residential** | | Shape | Rectangular |
| Zoning compliance [X] Legal [ ] Legal nonconforming (Grandfathered use) [ ] Illegal [ ] No zoning | | Drainage | Appears adequate |
| Highest & best use as improved: [X] Present use [ ] Other use (explain) | | View | Residential |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Street | Gravel | [X] | | Landscaping | Typical |
| Gas | [X] | | Curb/gutter | None | | | Driveway Surface | Concrete |
| Water | | Private Well | Sidewalk | None | | | Apparent easements | None Apparent |
| Sanitary sewer | | Private Sewer | Street lights | None | | | FEMA Special Flood Hazard Area [ ] Yes [ ] No | |
| Storm sewer | | None | Alley | None | | | FEMA Zone ____ Map Date ____ | |
| | | | | | | | FEMA Map No. Not Mapped By FEMA | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): The subject is located on 3+/- acres and is typical of rural/residential sites having well and septic. No adverse conditions, easements, or encroachments are known to exist.

| GENERAL DESCRIPTION | | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|
| No. of Units | 1 | Foundation | Concrete Blk. | Slab | No | Area Sq.Ft. | 1152.7500 | Roof | [ ] |
| No. of Stories | 1 | Exterior Walls | Vinyl | Crawl Space | No | % Finished | 75% | Ceiling | [ ] |
| Type (Det./Att.) | Detached | Roof Surface | Asphalt Shin. | Basement | Full | Ceiling | Tile | Walls | [ ] |
| Design (Style) | Ranch | Gutters & Dwnspts. | Aluminum | Sump Pump | Yes | Walls | Drywall | Floor | [ ] |
| Existing/Proposed | Existing | Window Type | Csmt./D.H. | Dampness | None Noted | Floor | Concrete | None | [ ] |
| Age (Yrs.) | 1987 | Storm/Screens | Insulated/Yes | Settlement | None Noted | Outside Entry | Yes | Unknown | [X] |
| Effective Age (Yrs.) | 5 | Manufactured House No | | Infestation | None Noted | | | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq.Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | 1 | | | | | | 1,153 |
| Level 1 | 1 | 1 | 1 | 1 | | | | 3 | 2 | | | 1,153 |
| Level 2 | | | | | | | | | | | | |

Finished area above grade contains: 6 Rooms; 3 Bedroom(s); 2 Bath(s); 1,153 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Cpt./Cer./Vin./Avg. | Type | FWA | Refrigerator | [P] | None | [ ] | Fireplace(s) # 1 | [X] | None [ ] | |
| Walls | Drywall/Avg. | Fuel | Gas | Range/Oven | [P] | Stairs | [ ] | Patio | [ ] | Garage | # of cars |
| Trim/Finish | Paint/Stain/Avg. | Condition | Avg. | Disposal | [ ] | Drop Stair | [ ] | Deck Rear | [X] | Attached | 2 Car |
| Bath Floor | Vinyl/Avg. | COOLING | | Dishwasher | [X] | Scuttle | [ ] | Porch Front | [X] | Detached | |
| Bath Wainscot | Fiberglass/Avg. | Central | Yes | Fan/Hood | [X] | Floor | [ ] | Fence | [ ] | Built-In | |
| Doors | 6 Panel H.C./Avg. | Other | No | Microwave | [ ] | Heated | [ ] | Pool | [ ] | Carport | |
| | | Condition | Avg. | Washer/Dryer | [ ] | Finished | [ ] | Pole Barn | [X] | Driveway | 8 |

Additional features (special energy efficient items, etc.): See Attached Addendum.

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction remodeling/additions, etc.: The subject is in average overall condition and shows normal wear for it's age. No external or functional depreciation was observed. There are newer windows, floor coverings, trim, central air, air cleaner and humidifier on furnace and exterior fixtures.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the

**COST APPROACH**

| | | | |
|---|---|---|---|
| Total Estimated Cost New | = $ 137,065 | | |
| Less 65 Physical / Functional / External | Est. Remaining Econ. Life: 60 | | |
| Depreciation $11,365 | = $ 11,365 | | |
| Depreciated Value of Improvements | = $ 125,700 | | |
| "As-Is" Value of Site Improvements Well/Septic/Drive | = $ 10,000 | | |
| INDICATED VALUE BY COST APPROACH | = $ 165,700 | | |

recent sales. The estimate of accrued depreciation is based on an effective age/life relationship and /or depreciation tables. Both methods are deemed to properly and accurately measure depreciation in the market.

| ITEM | SUBJECT | COMPARABLE NO. 1 | +(-)$ Adjustment | COMPARABLE NO. 2 | +(-)$ Adjustment | COMPARABLE NO. 3 | +(-)$ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 1799 Glass Drive Charlotte | 371 N. Stine Charlotte | | 7950 Mulliken Charlotte | | 1385 Chester Charlotte | |
| Proximity to Subject | | Approximately 4.5 Miles | | Approximately 5 Miles | | Approximately 4.5 Miles | |
| Sales Price | Refinance | $ 150,000 | | $ 144,000 | | $ 140,900 | |
| Price/Gross Liv. Area | $ 0.00 | $ 124.38 | | $ 116.13 | | $ 129.03 | |
| Data and/or Verification Sources | Inspection | MLS #72875 | | MLS #73863 | | MLS #74042 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sales or Financing Concessions | N/A | Conventional None Noted | | Cash None Noted | | Conventional None Noted | |
| Date of Sale/Time | N/A | 07/25/2002 | | 06/27/2002 | | 05/31/2002 | |
| Location | Rural/Avg. | Rural/Sim. | | Rural/Sim. | | Rural/Sim. | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 2.52 Acres/Avg. | 1.51 Acres/Inf. | 2,000 | 2.18 Acres/Inf. | 700 | 2.0 Acres/Inf. | 1,000 |
| View | Residential/Avg. | Residential/Avg. | | Residential/Avg. | | Residential/Avg. | |
| Design and Appeal | Ranch | Ranch | | Ranch | | Ranch | |
| Quality of Construction | Average | Similar | | Similar | | Similar | |
| Age | 1987 | 1995 | | 1996 | | 1998 | |
| Condition | Average | Similar | | Similar | | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | 2,000 | Total Bdrms Baths | |
| Room Count | 6 / 3 / 2.00 | 5 / 3 / 2.00 | | 5 / 2 / 1.00 | 2,000 | 6 / 3 / 1.00 | 2,000 |
| Gross Living Area | 1,153 Sq.Ft. | 1,206 Sq.Ft. | -1,100 | 1,240 Sq.Ft. | -1,700 | 1,092 Sq.Ft. | 1,200 |
| Basement & Finished Rooms Below Grade | Full Basement Family Room | Full Basement Fm.Rm./1Bed | -2,000 | Full Basement Unfinished/Inf. | 3,000 | Full Basement Unfinished/Inf. | 3,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Gas FWA/C.Air | Gas FWA/C.Air | | Gas FWA/C.Air | | Gas FWA/C.Air | |
| Energy Efficient Items | Standard Pkg. | Standard Pkg. | | Standard Pkg. | | Standard Pkg. | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | No Garage | 5,000 |
| Porch, Patio, Deck, Fireplace(s), etc. | Porch/Deck 1 Fireplace | Porch/Patio/Deck 1 Fireplace | Similar | Porch/Patio/Deck No Fireplace | 1,500 | Porch/Inf. No Fireplace | 500 / 1,500 |
| Fence, Pool, etc. | Pole Barn | None | 8,000 | None | 6,000 | None | 8,000 |
| Kitchen Equip. | Typical | Typical | | Typical | | Typical | |
| Net Adj. (total) | | [X] + $ | 6,900 | [X] + $ | 15,500 | [X] + $ | 22,200 |
| Adjusted Sales Price of Comparable | | Gross 8.7% Net 4.6% $ | 156,900 | Gross 13.1% Net 10.8% $ | 159,500 | Gross 15.8% Net 15.8% $ | 163,100 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): The subject property is typical of many homes within the neighborhood. The sales selected were similar style homes within the competing market area of the subject. Adjustments were made for dissimilarities. The sales selected were considered the best and most recent sales available. No time adjustments were warranted. All three comparables were located on smaller sites and were adjusted upward. Comparable three had a slightly higher net adjustment than desired, however, is considered a good indicator of value.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | None Owner/MLS | None MLS Record | None MLS Record | None MLS Record |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: See attached multi-purpose supplemental addendum.

INDICATED VALUE BY SALES COMPARISON APPROACH ............ $ 160,000

INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ N/A /Mo. x Gross Rent Multiplier N/A = $ N/A

This appraisal is made [X] "as is" [ ] subject to the repairs, alterations, inspections or conditions listed below [ ] subject to completion per plans and specifications.

Conditions of Appraisal: This appraisal is made "as is".

Final Reconciliation: Most weight was given to the Sales Comparison Analysis in estimating final market value. The Cost Approach indicated a similar value range supporting the value conclusion. As most homes in this area are owner occupied, not rented, the Income Approach was omitted.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 6/93 ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF 02/13/2003 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 160,000

APPRAISER:
Signature *Angela K. Oberlin*
Name Angela R. Oberlin
Date Report Signed 02/17/2003

SUPERVISORY APPRAISER (ONLY IF REQUIRED):
Signature
Name
Date Report Signed
[ ] Did [ ] Did Not Inspect Property

**Legal Description**
Commencing 1,620 feet south and 870 feet west of the northeast corner of section 32, west 290 feet, south 380 feet, east 290 feet, north 380 feet to beginning of section 32, T3N, R4W, Benton Township.

**Additional Features**
The subject is a three bedroom ranch with two bathrooms. There are two ceiling fans, living room with bay window, dining room with slider to rear deck, living room, dining room and kitchen with vaulted ceilings, bathroom off master bedroom, water softener, partially finished basement with one day window and a 32' X 48' pole barn with electric and three car entry.

## Appraisal Addendum:

THIS REPORTS PHOTOS AND SIGNATURES ARE DIGITALLY ELECTRONICALLY GENERATED AND ARE TO BE CONSIDERED AS ORIGINALS.

I. PURPOSE OF THE APPRAISAL. The purpose of this report is to estimate the market value of the subject property, as defines herein. The estimate of market value is to be used solely by the client as a basis for lending decisions or portfolio management.

II. SCOPE OF THE APPRAISAL. The following steps were followed in arriving at the final estimate of value included in the appraisal report of the subject property:
1. An investigation was made to determine market trends, influences and other significant factors pertinent to the subject property.
2. A physical appraisal inspection of the neighborhood was performed.
3. A physical inspection of the property was performed. Although due diligence was exercised while at the subject property, the Appraiser is NOT an expert in such matters as pest control, structural engineering, hazardous waste or construction, etc., and no warranty is given or implied as to these or other elements outside of analysis of market data subject to their findings.
4. A more detailed review of the collected data was then performed with the most relevant factors extracted and considered. Improved and land sales were examined and confirmed closed from material provided by one or more service(s) that obtain information from public records. Market factors were weighted and their influence on the subject property was determined. A highest and best use analysis was done on the subject property.
5. A review and analysis of appropriate land and improved property sales data and an analysis of the subject improvements relative to depreciation and obsolescence estimates.
6. A search of appropriate rental information including rents, expenses, sales, and gross rent multpliers.
7. The appraisal report was then completed in accordance with standards dictated by THE APPRAISAL FOUNDATION in the UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICES (USPAP). The report included sufficient data and information needed to lead a reader to a similar conclusion of market value.
8. The appraisal report was then delivered to the client, which constituted the completion of the assignment.

APPRAISAL PRACTICES (USPAP). As adopted by the Appraisal Standards Board of the Appraisal Foundation as of August 9, 1990. THIS APPRAISAL IS CONSIDERED A SUMMARY APPRAISAL REPORT PREPARED UNDER USPAP.

III. COMPETENCY OF THE APPRAISER. Unless otherwise noted in writing, the Appraiser had done similar assignments and has the knowledge and experience to complete this assignment competently.

IV. SALES HISTORY. The marketing history of the subject was researched for at least three years. Unless otherwise noted in the appraisal report, the subject property has not been listed, sold, or transferred in the past thirty six months.

V. RENTS AND VACANCIES. Unless otherwise noted in the appraisal report, the subject property is currently owner occupied.

VI. TREND ANALYSIS. Real estate prices have been changing due to current economic conditions, and local trends. It is reasonable to assume that this same trend would apply to the subject. Still the average marketing time typically varies between 90-180 days for residences within the county provided the property is competitively priced and properly marketed.

VII. DEDUCTIONS AND DISCOUNTS. In keeping with the USPAP, any financing concessions that influence the selling price of a comparable sale were addressed and accounted for to result in a market value of the subject property that is free of discounts, deductions, or other selling concessions.

VIII. PROHIBITED INFLUENCES. The appraisal assignment was not based upon a requested minimum valuation, specific valuation or approval of a loan, employment of the appraiser was not conditioned upon the appraisal producing a specific value. Neither employment nor compensation are based upon approval of any related loan application.

IX. SELF CONTAINMENT. This appraisal report is intended to be a self-contained document containing all information necessary to enable a reader to understand the appraiser's opinion. any third party studies referred to, such as pest control, structural, soils, or hazardous materials have been verified by the appraiser as to their existence, to the extent the assumptions, and conclusions are used. If not included with the report, they are maintained with our file, and are available upon request of the client.

X. PERSONAL PROPERTY. Any personal property involved in the transaction have been excluded from the valuation of the real property. Should a transaction which includes personal property of sufficient value to affect the market value of the real property be evident, a separate assessment of the personal property fixtures of intangible items will be included with the report as a separate valuation.

XI. THREE APPROACHES TO VALUE. The appraiser has made a reasonable effort to apply the three recognized approaches to value. Most single-family residences are purchased for owner occupancy and as such the INCOME APPROACH does not generally reflect the highest and best use of the property and is not generally a relevant indicator of market value. The use of the INCOME APPROACH to value will only be used:
1. At the request of the client for non-owner occupied units.
2. When sufficient market evidence exists in neighborhood to indicate that rental properties or investor purchases are typical, measurable, and their analysis adds to the relevancy and reliability of the appraisal process.

XII. Highest and best use conclusions are developed by analyzing and correlation that which is legally permissible, physically possible economically feasible and which produces the greatest return.

I CERTIFY TO THE BEST OF MY KNOWLEDGE AND BELIEF:

The statements and facts contained in this report are true and correct. The reported analysis, opinions, and conclusions are limited only by the reported assumptions and limited conditions, and are my personal unbiased professional analysis, opinions, and conclusions.

Unless otherwise noted in this report, I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved. My compensation is not contingent on an action or event resulting from the analysis, opinions or conclusions in, or the use of, this report.

I have made a personal inspection of the real estate that is the subject of this report. No one provided significant professional assistance to the person signing this report, unless otherwise stated herein.

This appraisal is for no purpose other than property valuation as limited by the scope of the assignment as stated in this report, and the appraisers are neither qualified nor attempting to go beyond that narrow scope. The reader should aware that there are also inherent limitations to the accuracy of the information and analysis contained in this report, it is critically important to read this entire section to understand these limitations.

## INTENDED USER (CLIENT)
This appraisal report is prepared for the the sole and exclusive use of the lender (as stated within the report), to assist with the mortgage lending decision. The appraiser is not a home inspector. This report should not be relied upon to disclose any conditions present in the subject property. The appraisal report does guarantee that the property is free of defects. A professional home inspection is recommended. No third parties are authorized to rely upon this report without the express written consent of the appraiser.

## APPRAISAL IS NOT A SURVEY
It is assumed that the utilization of the land and improvements is within the boundaries of the property lines of the property described and that there are no encroachments or trespass unless noted in the report. No survey of the property has been made by the appraiser and no responsibility is assumed in connection with such matters. Any maps, plats, legal descriptions or drawings reproduced and included in this report are intended only for the purpose of showing spatial relationships or giving a general idea of the property description. The reliability of information contained in any such map, description or drawing is assumed by the appraiser and cannot be guaranteed to be correct. A surveyor should be consulted if there is any concern on boundaries, setbacks, encroachments, legal description or other survey matters.

## APPRAISAL IS NOT A LEGAL OPINION
### Title and Boundaries
No responsibility is assumed for matters of a legal nature that affects the title to the property nor is an opinion of title rendered. The value is given without regard to questions of title, boundaries, encumbrances or encroachments. We are not usually provided with information regarding the title or legal description and, in any event, we neither made a detailed examination of it nor do we give any legal opinion concerning it.

### Zoning
The appraisers have tried to use the most recently available zoning maps to determine the zoning of the subject property. However, no notification is given to the appraiser when zoning changes. Zoning may be different than that stated and may severely limit the possible use of the property. If a property is a legal non-conforming use, it may not be able to have continued residential use if fully or partially destroyed or vacated for any length of time. Zoning has only been checked as it relates to the highest and best use section of this report and any significant question regarding zoning should be addressed to local zoning or land use officials.

## APPRAISAL IS NOT AN ENGINEERING OR PROPERTY INSPECTION REPORT
Structural Problems May Be Present. The reader of this appraisal should understand that purchasing a home entails a certain amount of risk. Properties may have latent problems that are not detectable at the time of the sale or at the time it is appraised. Many properties have hidden problems or may develop structural problems after the sale.

The appraisal should not be considered a report on the physical items that are a part of this property. Although the appraisal may contain information about the physical items being appraised (including their adequacy and/or condition), it should be clearly understood that this information is only used as a general guide for property valuation and not intended to be used to evaluate the condition or adequacy of the subject property.

The observed condition of the foundation, roof, exterior walls, interior walls, floors, heating systems, plumbing, insulation, electrical service and all mechanicals and construction is based on casual inspection only and no detailed inspection was made.

Although the appraiser may hold builders licenses, he or she was not acting in the capacity as a building inspector during the performance of this appraisal. The appraiser is not acting as a professional engineer, builder, surveyor or other inspector and professionals should be consulted if there are any questions as to the condition of the subject property.

### Building Codes
We have not checked for building code violations and the subject property may not conform to current building codes. It is assumed in this report that all buildings meet applicable codes.

### Wells and Septic Systems
Well and septic systems are common to many rural or suburban areas and usually provide adequate water and waste removal. However, well failure and septic failure involve substantial costs. Failure of the well and/or septic systems can cause sickness, birth defects and serious health problems. The marketability of the house will be affected by the failure of the well and/or septic system and serious financial loss may result. A water analysis and test of the septic system is considered a standard practice in the course of a real estate sale and is the sole responsibility of the owner or borrower as the appraiser is not a professional in this area. Even if there is water at the house and waste appears to be removed, the well or septic systems may not have continued access to these systems and the property value could be severely impacted. Our appraised value assumes that these systems are functional and adequate and located on the subject site.

## PRESENCE OF HAZARDOUS MATERIALS
The presence of hazardous substances, including without limitation asbestos, polychlorinated biphenyls, petroleum leakage or other chemicals, which may or may not be present on or near the subject property, or other environmental conditions were not called to the attention of the appraiser at the time of the valuation or inspection. The appraiser is not qualified to test for any hazardous substance and has no knowledge of the existence of such materials on or near the subject property.

If any hazardous material contamination exists, they may affect the value of the subject property to the point that the cost of cleanup far exceeds the value of the property. This appraisal is predicted on the assumption that there is no condition on or near the subject property that would cause a loss in value. No responsibility is assumed for any hazardous substance contamination that may exist on or near the subject and the client is urged to get a professional inspection if there are questions in this area. Below are detailed some more common problems found in residential homes. This is not a complete list but further details these problems.

### Mold

The appraiser is not home or environmental inspector. The appraiser provides an opinion or value. He makes no assurances nor guarantee that the property is free of defects or environmental problems. The appraiser preforms an inspection of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. A professional home inspection or environmental inspection is recommended.

The appraiser is not qualified to determine the cause of the mold, type of mold or whether the mold might pose any risk to the property or its inhabitants. Additional inspection by a qualified professional is recommended.

**Lead Based Paint**
Lead is found in many homes constructed prior to 1978. Especially in those built or painted before 1960. The use of older paint on new homes may result in finding lead in even very new houses. Lead is found in moving parts of windows and doors, lead based paint, soils next to the exterior of buildings that may have been painted with lead based paint or had such paint recently stripped, and in pipes and solder used for drinking water supply.

Lead poisoning can cause serious health problems including nervous system damage and even death. Children and women of childbearing age are most at risk from lead poisoning. The appraiser cannot detect whether a property has lead present on or in it and is not trained to detect or remediate lead. The detection of lead in a property can only be done by a qualified firm or laboratory. The full responsibility for lead or any hazardous substance lies with the client or user of this report.

**Radon**
Radon is a cancer-causing radioactive gas. It occurs naturally and may seep into houses via the basement. Abnormally high concentrations of Radon in a house may affect the marketability of the house. High levels of radon concentration may cause sickness or even cancer. The appraiser is not a professional at radon detection. Elite Appraisal Service, Inc., therefore, recommends each home appraised receive a simple commercial test to measure Radon levels. It can be run by any detection firm and if the results are positive, correction is recommended. The responsibility for detection or remediation of radon lies with the property owner.

**APPRAISAL IS MADE WITH LIMITED DATA**
Appraisal reports are technical documents addressed to the specific needs of clients. In most cases, appraisals are made for mortgage companies and/or banks whose use for this report may be wholly different than that of the casual reader. Therefore, the reader should understand that this report was made with a limited amount of data and limited ability to verify certain information.

Information was verified when possible through public records, multi-listing services, real estate agents and exterior inspection. This includes verification that the comparables are actually closed sales and the transactions are arms length. No verification technique is one-hundred percent accurate but the appraiser has made the assumption that all data is accurate as reported. From time to time, the indicated sizes of comparables shown in available sources such as MLS services or listing sheets appears to be incorrect based on the appraisers professional experience. If the size used in the MLS sheets does not correlate with other known data, the appraiser may use other methods to determine the size of comparables. These include assessors sheets, physical inspection and use of interior room measurements along with a multiplier to depict size based on exterior measurements. The deviation of comparable size from published sizes only indicated an attempt at higher accuracy in the final report. However, there are many times that the exact size and features found in comparables cannot be confirmed except by an exterior inspection from the street. We have used three or more comparables in this report to eliminate the limited data associated with any single comparables.

While no factors we believe to be significant but known to the client have been knowingly withheld, it is always possible that we have information of significance which may be important to others but which, based on the original scope of this appraisal for mortgage or other purposes, was not included in the report to the client. A mortgage company or other professional client may not require data that may be important if the report is to be used for decision making outside the scope of the report. No decision should be made that is outside the scope of this report without first contacting the appraiser in writing for further clarification.

**Financing Considerations**
The appraised value assumes a sale under typical conventional mortgage financing in which no closing costs or other fees were paid by the seller. If the subject property did have closing costs paid by the seller, the appraiser nonetheless valued the property for a sale unaffected by such factors. Because of this, comparables sold under conventional financing need no adjustment. Sales with other than typical financing were adjusted based on the affect that such terms would have had on the sale price of the individual comparable. Many times, no premium is paid for other forms of financing even if points are paid by the seller.

**Appraisals Subject to Completion**
Based on USPAP - SR 1-4 (H), "...the appraiser should appraise proposed improvements only after examining, and having available for future examination: 1) Plans, specifications and other documents that clearly identify the scope of the improvements; 2) Evidence indicating the probable time of completion of the proposed improvements...."

Based on this, the appraiser has retained in our files a complete set of the plans and specifications used to value the subject. The appraisal, if made subject to completion, is based solely on the plans provided to us. Many times, properties are not constructed as originally planned. We have tried to determine if the property was actually built as proposed. The value is made only based on the original plans and specifications provided and the final inspection will not indicate changes made between conception and completion. A new appraisal should be commissioned if substantial changes have taken place in the construction of the home from the time the plans were submitted to the appraiser. The sole responsibility for determining this lies with the property owner and/or the client for this report.

**SCOPE OF APPRAISAL**
(Process of Collecting, Confirming and Reporting Data)

The subject property was inspected by the appraiser as of the date of valuation unless otherwise noted. Photographs, field measurements and neighborhood information was obtained on that and subsequent days from the owners. Further information was based on interviews with Realtors, Assessors data and exterior inspection of the comparables.

Research on sales history was provided to the appraiser by investigating the Multiple Listing Records and examining documents registered with the County Register of Deeds. The appraiser takes no responsibility for factors relating to marketable title of the subject.

Regional, City and Neighborhood data were based on information available in the Elite Appraisal Service Inc., files and obtained from the local Chamber of Commerce and the Michigan Statistical Abstract. Further neighborhood and area data was based on a physical inspection of the neighborhood. Comparable sales and rental data was obtained from area assessors, use of PACE and area Multi-List data and the appraisers in-house data bank. This data was verified with the participants involved in the transactions whenever possible and personal inspections were made of the exterior of all comparables used in this report.

The highest and best use section of this report relied on the above cited data. Also, data was available to the appraiser based on a thorough investigation of the uses permissible by current zoning and those found in surrounding properties. After assembling and analyzing the data defines in this scope of appraisal, a final estimate of market value was made as set forth in this report.

**LICENSING**
Appraisers are required to be licensed and are regulated by the Michigan Department of Commerce, P.O. Box 30018, Lansing, Michigan 48909.

I certify that the use of this report is subject to the requirements of the Appraisal Institute relating to review by it's duly authorized representatives.

**PROPERTY RIGHTS APPRAISED**
Ownership in real property consists of a bundle of rights. Knowing exactly which rights are under consideration is fundamental to the value of the property in question. The appraiser has provided an estimate of market value of only the fee simple interest because the subject is not bound by a long term lease. A definition for fee simple interest is found below. No fractional interest or estates are noted or analyzes in the appraisal other than fee simple estate.

**DEFINITION OF FEE SIMPLE ESTATE**
Absolute ownership unencumbered by any other interest or estate subject only to the four powers of government.

This Multi-Purpose Supplemental Addendum for Federally Related Transactions was designed to provide the appraiser with a convenient way to comply with the current appraisal standards and requirements of the Federal Deposit Insurance Corporation (FDIC), the Office of the Comptroller of Currency (OCC), The Office of Thrift Supervision (OTS), the Resolution Trust Corporation (RTC) and the Federal Reserve.

**This Multi-Purpose Supplemental Addendum is for use with any appraisal. Only those statements which have been checked by the appraiser apply to the property being appraised.**

### [X] PURPOSE & FUNCTION OF APPRAISAL

The purpose of the appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender in evaluating the subject property for lending purposes. This is a federally related transaction.

### [X] EXTENT OF APPRAISAL PROCESS

[X] The appraisal is based on the information gathered by the appraiser from public records, other identified sources. Inspection of the subject property and neighborhood, and selection of comparable sales within the subject market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available. The original source is presented first. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

[X] The Reproduction Cost is based on __Marshall & Swift Residential Cost Handbook and__ supplemented by the appraiser's knowledge of the local market.

[X] Physical depreciation is based on the estimated effective age of the subject property. Functional and/or external depreciation, if present, is specifically addressed in the appraisal report or other addenda. In estimating the site value, the appraiser has relied on personal knowledge of the local market. This knowledge is based on prior and/or current analysis of site sales and/or abstraction of site values from sales of improved properties.

[X] The subject property is located in an area of primarily owner-occupied single family residences and the Income Approach is not considered to be meaningful. For this reason, the Income Approach was not used.

[ ] The Estimated Market Rent and Gross Rent Multiplier utilized in the Income Approach are based on the appraiser's knowledge of the subject market area. The rental knowledge is based on prior and/or current rental rate surveys of residential properties. The Gross Rent Multiplier is based on prior and/or current analysis of prices and market rates for residential properties.

[ ] For income producing properties, actual rents, vacancies and expenses have been reported and analyzed. They have been used to project future rents, vacancies and expenses.

### [X] SUBJECT PROPERTY OFFERING INFORMATION

According to __the home owner__ _____ the subject property;
[X] **has not been offered** for sale in the past __36__ months or __3__ years.
[ ] **is currently offered** for sale for $ _____
[ ] **was offered** for sale within the past _____ months or _____ years.
[ ] Offering information **was considered** in the final reconciliation of value.
[ ] Offering information **was not considered** in the final reconciliation of value.
[ ] Offering information **was not available.** The reasons for unavailability and the steps taken by the appraiser are explained later in this addendum.

### [X] SALES HISTORY OF SUBJECT PROPERTY

According to __the home owner__ _____ the subject property;
[X] **has not transferred** in the past __36__ months or __3__ years.
[ ] **has transferred** in the past _____ months or _____ years.
[ ] All prior sales which have occurred in the past _____ months or _____ years are listed below and reconciled to the appraised value, either in the body of the report or in the addenda.

| Date | Sales Price | Document # | Seller | Buyer |
|---|---|---|---|---|
| | | | | |
| | | | | |

### [X] FEMA FLOOD HAZARD DATA

[ ] Subject property **is not located in** a FEMA Special Flood Hazard Area.
[ ] Subject property **is located in** a FEMA Special Flood Hazard Area.

| Zone | FEMA Map/Panel# | Map Date | Name of Community |
|---|---|---|---|
| | Not Mapped By FEMA | | |

[X] The community **does not participate** in the National Flood Insurance Program.
[ ] The community **does participate** in the National Flood Insurance Program.
[ ] It is covered by a **regular** program.
[ ] It is covered by an **emergency** program.

FW-70M
December 1992

Forms & Worms Inc., 315 Whitney Ave. New Haven, CT 06511 All Rights Reserved
This form reproduced with permission on the ACI Development RapidForms system (800) 234-8727

☐ The contract and/or escrow instructions **were reviewed.** The following summarizes the contract:

| Contract Date | Amendment Date | Contract Price | Seller |
|---|---|---|---|
| | | | |

☐ The contract indicated that personal property **was not included** in the sale.
☐ The contract indicated that personal property **was included.** It consisted of _____
Estimated contributory value is $ _____

☐ Personal property **was not included** in the final value estimate.
☐ Personal property **was included** in the final value estimate.
☐ The contract indicated **no financing concessions** or other incentives.
☐ The contract indicated **the following concessions** or incentives: _____

☐ If concessions or incentives exist, the comparables were checked for similar concessions and appropriate adjustments were made, if applicable, so that the final value conclusion is in compliance with the Market Value defined herein.

## ☒ MARKET OVERVIEW   Include an explanation of current market conditions and trends.

__3-6__ months is considered a reasonable marketing period for the subject property based on __the Greater Lansing Association of Realtors__

## ☒ ADDITIONAL CERTIFICATION

The Appraiser certifies and agrees that:

(1) Their analyses, opinions and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice ("USPAP"), and in accordance with the regulations developed by the Lender's Federal Regulatory Agency as required by FIRREA, except that the Departure Provisions of the USPAP do not apply.

(2) Their compensation is not contingent upon the reporting of predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.

(3) This appraisal assignment was not based on the requested minimum valuation, a specific valuation, or the approval of a loan.

## ☒ ADDITIONAL (ENVIRONMENTAL) LIMITING CONDITIONS

The value estimated is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions unless otherwise stated in this report. The appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively unless otherwise stated in this report. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous substances or detrimental environmental conditions on or around the property that would negatively affect its value.

## ☐ ADDITIONAL COMMENTS

## ☒ APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION

Appraiser's Signature _Angela K. Oberlin_   Effective Date 02/13/2003   Date Prepared 02/13/2003
Appraiser's Name (print) Angela K. Oberlin   Phone # ( 517 ) 694-2440
State MI   ☒ License   ☐ Residential Certification ☐   Certification # 1201007190   Tax ID # 38-3510183

## ☐ CO-SIGNING APPRAISER'S CERTIFICATION

☐ The co-signing appraiser **has personally inspected** the subject property, both inside and out, and has made an exterior inspection of all comparable sales listed in the report. The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the contents of the report including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing appraiser

☐ The co-signing appraiser **has not personally inspected** the interior of the subject property and:
**has not inspected** the exterior of the subject property and all comparable sales listed in the report.
**has inspected** the exterior of the subject property and all comparable sales listed in the report.
☐ The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the contents of the report, including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing appraiser with the exception of the certification regarding physical inspections. The above describes a level of inspection performed by the co-signing appraiser.

☐ The co-signing appraiser's level of inspection, involvement in the appraisal process and certification are covered elsewhere in the addenda section of this appraisal.

## ☐ CO-SIGNING APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION

Appraiser's Signature _____   ☐ Trainee   ☐ Review   ☐ Other
Appraiser's Name (print) _____   SS # _____
State _____ ☐ License   ☐ Certified Residential ☐   Certification # _____

*Only those items checked (X) below apply to this report.*

## PURPOSE, FUNCTION AND INTENDED USE OF THE APPRAISAL

[X] The purpose of the appraisal is to provide an opinion of market value of the subject property as defined in this report, on behalf of the appraisal company facilitating the assignment for the referenced client as the intended user of the report. The *only* function of the appraisal is to assist the client mentioned in this report in evaluating the subject property for lending purposes. The use of this appraisal by anyone other than the stated intended user, or for any other use than the stated intended use, is prohibited.

[ ] The purpose of the appraisal is to provide an opinion of market value of the subject property, as defined in this report, on behalf of the appraisal company facilitating the assignment for the referenced client as the intended user of this report. The *only* function of the appraisal is to assist the client mentioned in this report in evaluating the subject property Real Estate Owned (REO) purposes. The use of this appraisal by anyone other than the stated intended user, or for any other use than the stated intended use, is prohibited.

[ ] The purpose of this appraisal is to _____, on behalf of the appraisal company facilitating the assignment for the referenced client as the intended user of this report. The only function of the appraisal is to assist the client mentioned in this report in evaluating the subject property for _____. The use of this appraisal by anyone other than the stated intended user, or for any other use than the stated intended use, is prohibited.

## TYPE OF APPRAISAL AND APPRAISAL REPORT

[X] This is a __Complete__ Appraisal written in a __Summary__ Report format and the USPAP Departure Rule has *not* been invoked.

[ ] This is a Limited Appraisal written in a _____ Report format and the USPAP Departure Rule *has* been invoked as disclosed in the body and addenda of the report. The client has agreed that a Limited Appraisal is sufficient for its purposes.

## SCOPE (EXTENT) OF REPORT

[X] The appraisal is based on the information gathered by the appraiser from public records, other identified sources, inspection of the subject property and neighborhood, and selection of comparable sales, listings, and/or rentals within the subject market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available. The original source is presented first. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion. The extent of analysis applied to this assignment may be further imparted within the report, the Appraiser's Certification below and/or any other Statement of Limiting Conditions and Appraiser's Certification such as may be utilized the Freddie Mac form 439 or Fannie Mae form 1004b (dated 6/93), when applicable.

## MARKETING TIME AND EXPOSURE TIME FOR THE SUBJECT PROPERTY

[X] A reasonable marketing time for the subject property is __1-180__ day(s) utilizing market conditions pertinent to the appraisal assignment.

[X] A reasonable exposure time for the subject property is __1-180__ day(s).

## APPRAISER'S CERTIFICATION

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- I have no present or prospective interest in the property that is the subject of this report, and no personal interest with respect to the parties involved, unless otherwise stated within the report.
- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
- I have [X] or have not [ ] made a personal inspection of the property that is the subject of this report. (if more than one person signs this report, this certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraisal property.)
- No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant professional assistance must be stated.)

  *NOTE: In the case of any conflict with a client provided certification (i.e., Fannie Mae or Freddie Mac), this revised certification shall take precedence.*

- **Supervisory Appraiser's Certification:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 2-7 and 9 on the second page of Freddie Mac Form 439 6-93/Fannie Mae Form 1004B 6-93, or the third page of Form 2055, and am taking full responsibility for the appraisal report.

## APPRAISER'S AND SUPERVISORY APPRAISER'S SIGNATURE

APPRAISER:

Signature: *Angela K. Oberlin*
Name: Angela K. Oberlin
Date the Report was Signed: 02/17/2003
State Certification #: _____
or State License #: 1201007190
State: MI
Expiration Date of Certification or License: 07/31/2004

SUPERVISORY APPRAISER (only if required):

Signature: _____
Name: _____
Date the Report was Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: February 13, 2003
Appraised Value: $ 160,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**



Pole Barn





