**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. | ) | |
| MORTGAGE LENDING PRACTICES | ) | |
| LITIGATION | ) | MDL No. 1715 |
| | ) | |
| _____ ) | | Lead Case No. 05-cv-07097 |
| | ) | |
| THIS DOCUMENT RELATES TO THE | ) | |
| FOLLOWING INDIVIDUAL ACTIONS: | ) | Centralized before Judge |
| | ) | Marvin E. Aspen |
| *Furgeson v. Ameriquest Mortg. Co., 04 C 7627,* | ) | |
| *Salazar v. Ameriquest Mortg. Co., 05 C 4162,* | ) | |
| *Smith v. Ameriquest Mortg Co., 05 C 648,* | ) | |
| *Jimenez v. Ameriquest Mortg. Co., 05 C 1009,* | ) | |
| *Treadwell v. Ameriquest Mortg. Co., 05 C 1078,* | ) | |
| *Key v. Ameriquest Mortg. Co., 05 CV 1077,* | ) | |
| *Wertepny v. Ameriquest Mortg. Co., 05 CV 1402,* | ) | |
| *Harris v. Ameriquest Mortg. Co., 05 CV 4025,* | ) | |
| *Mills v. Ameriquest Mortg. Co., 05 CV 3976, and* | ) | |
| *Pintsak v. Ameriquest Mortg. Co., 05 CV 5035.* | ) | |
| *Barboza, et al. v. Ameriquest Mortg. Co.,* | ) | |
| *    06 cv 3125,* | ) | |
| *Olynciw, et al. v. Ameriquest Mortg. Co.,* | ) | |
| *    06 cv 2467,* | ) | |
| *Cue, et al. v. Ameriquest Mortg. Co., 06 cv 2468,* | ) | |
| *Sullivan, et al. v. Ameriquest Mortg. Co.,* | ) | |
| *    06 cv 2471,* | ) | |
| *Greene, et al. v. Ameriquest Mortg. Co., 06 cv 1733,* | ) | |
| *Osten, et al. v. Ameriquest Mortg. Co., 06 cv 4032,* | ) | |
| *Steinmiller v. Ameriquest Mortg. Co., 06 cv 2469,* | ) | |
| *Sweeten v. Argent Mortg. Co., LLC, 06 cv 2470,* | ) | |
| *Robinson v. Argent Mortg. Co., LLC, 06 cv 3126,* | ) | |
| *Cadette v. Ameriquest Mortg. Co., 06 cv 6753,* | ) | |
| *Vega v. Ameriquest Mortg. Co., 06 cv 129,* | ) | |
| *Hess v. Ameriquest Mortg. Co., 08 CV 01858* | ) | |
| *Walrod v. Ameriquest Mortg. Co., 08 CV 00742* | ) | |
| *Young v. Ameriquest Mortg. Co., 08 CV 00741* | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

This memorandum of law is submitted in support of all plaintiffs (collectively, "plaintiffs")

in the following cases, all of which are part of Ameriquest MDL # 1715:

*Furgeson v. Ameriquest, et al.*, 04 C 7627 (N.D. Ill.)
*Salazar v.  Ameriquest, et al.*, 05 C 4162 (N.D. Ill.)
*Smith & Yanong v.  Ameriquest, et al.*, 05 C 648 (N.D. Ill.)
*Jimenez v. Ameriquest, et al.*, 05 C 1009 (N.D. Ill.)
*Key v. Ameriquest, et al.*, 05 C 1077 (N.D. Ill.)
*Treadwell v. Ameriquest, et al.*, 05 C 1078 (N.D. Ill.)
*Wertepny v. Ameriquest, et al.*, 05 C 1402 (N.D. Ill.)
*Mills v. Ameriquest, et al.*, 05 C 3976 (N.D. Ill.)
*Harris v. Ameriquest, et al.*, 05 C 4025 (N.D. Ill.)
*Pintsak v. Ameriquest, et al.*, 05 C 5035 (N.D. Ill.)
*Barboza, et al. v. Ameriquest Mortg. Co.*, 06 cv 3125 (N.D. Ill.)
*Olynciw, et al. v. Ameriquest Mortg. Co.*, 06 cv 2467 (N.D. Ill.)
*Cue, et al. v. Ameriquest Mortg. Co.*, 06 cv 2468 (N.D. Ill.)
*Sullivan, et al. v. Ameriquest Mortg. Co.*, 06 cv 2471 (N.D. Ill.)
*Greene, et al. v. Ameriquest Mortg. Co.*, 06 cv 1733 (N.D. Ill.)
*Osten, et al. v. Ameriquest Mortg. Co.*, 06 cv 4032 (N.D. Ill.)
*Steinmiller v. Ameriquest Mortg. Co.*, 06 cv 2469 (N.D. Ill.)
*Sweeten v. Argent Mortg. Co., LLC*, 06 cv 2470 (N.D. Ill.)
*Robinson v. Argent Mortg. Co., LLC*, 06 cv 3126 (N.D. Ill.)
*Cadette v. Ameriquest Mortg. Co.*, 06 cv 6753 (N.D. Ill.)
*Vega v. Ameriquest Mortg. Co.*, 06 cv 129 (N.D. Ill.)
*Hess v. Ameriquest, et al.*, 08 C  01858 (N.D. Ill.)
*Walrod v. Ameriquest, et al.*, 08 C 00742 (N.D. Ill.)
*Young v. Ameriquest, et al.*, 08 C 00741 (N.D. Ill.)

The Seventh Circuit decided *Hamm v. Ameriquest Mortgage Corp.*, 506 F.3d 525 (7th. Cir.

2007) on October 17, 2007.  Ameriquest Mortgage Securities, Inc. then filed a petition for writ of

certiorari on Jan. 15, 2008, which the Supreme Court denied on March 24, 2008.  2008 U.S. LEXIS

2714 (U.S. Mar. 24, 2008).  In *Hamm*, the court held that Ameriquest Mortgage Company's

("Ameriquest") TILA disclosure form violates the Truth in Lending Act ("TILA") because it does

not explicitly state the payment period terms.  Id. at 527, 531.  The issue decided in *Hamm* is the

basis of the claims in all of the above-listed cases.

## BACKGROUND

Plaintiffs filed their actions against Ameriquest to rescind their mortgages and recover statutory damages for violating the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA") and implementing Federal Reserve Board ("FRB") Regulation Z, 12 C.F.R. part 226.

In their Motion for Summary Judgment, plaintiffs assert a single ground for rescission and statutory damages: Ameriquest presented and provided them with Truth In Lending Disclosure Statements that failed to fully disclose the repayment schedules or the due dates of payments under the loans. (Plaintiff's Statement of Material Facts ("SMF"), ¶¶ 5-7). The specific requirements for proper disclosure of the payment schedules are set forth explicitly at 15 U.S.C. § 1638(a)(6), 12 C.F.R. § 226.18(g) and FRB Commentary on Regulation Z, [12 C.F.R. part 226 Supp. I] par. 18(g)4. These provisions required Ameriquest to either disclose the "due dates" of all payments under the loans or to specify "the period of payments," such as "monthly" or "bi-monthly." Ameriquest did neither.

This is the very issue the Seventh Circuit ruled on in *Hamm*, in which the court held that Ameriquest's TILA Disclosure form violates TILA because it does not explicitly state the payment period terms. 506 F.3d at 531. For the reasons set for forth below and because the Seventh Circuit's ruling in *Hamm* is controlling of this issue, plaintiffs move this court for summary judgment on liability.

## STATEMENT OF FACTS

Plaintiffs obtained mortgage loans from defendant Ameriquest. (SMF, ¶ 2). Their loans were secured by mortgages on their respective homes. (SMF, ¶ 3). At their closings, Ameriquest presented plaintiffs with, among other documents, TILA Disclosure Statements. (SMF, ¶¶ 5).

The TILA Disclosure Statements that Ameriquest provided to plaintiffs state merely

3

that "payments shall be due beginning" on specified dates. These statements also state the total number of payments due under the loans and the due dates of the final payments. (SMF, ¶ 5). The forms clearly and plainly do not state: the time interval or period in which each payment under the loans is due; that payments under the loans are due "monthly"; or, the due dates of each payment under the loan. (SMF, ¶¶ 6-7).

Each plaintiff sent notice of their intent to rescind their loans to Ameriquest (SMF, ¶ 8). Ameriquest has not rescinded any of the loans. (SMF, ¶ 9).

Plaintiffs Smith & Yanong (05 cv 648), Key (05 cv 1077), Treadwell (05 cv 1078), Wertepny (05 cv 1402), Sweeten (06 cv 2470), Osten (06 cv 4032), Stripling (06 cv 2471), Fournier (06 cv 2471), Muro (06 cv 1733), Roberts (06 cv 4032), Robinson (06 cv 3126), Steinmiller (06 cv 2469), Greene (06 cv 1733), Cue (06 cv 2468), Sibley (06 cv 2471), Cadette (06 cv 6753), Booth (06 cv 2467), Holmes (06 cv 3125), Griffin (06 cv 2468), Iwanczenko (06 cv 3125), Hack (06 cv 1733), Olynciw, (06 cv 2467), Vega (06 cv 129), Potter (06 cv 2467), Sullivan & Bathin (06 cv 2471), and Dell (06 cv 2468) have refinanced their Ameriquest loans. (SMF ¶ 40, 51, 57, 63, 92, 98, 105, 112, 126, 133, 139, 146, 160, 167, 174, 181, 188, 195, 201, 209, 216, 223, 230, 237, 244, and 257). The other plaintiffs' loans remain outstanding.

The relevant creditors or assignees of plaintiffs' loans are:

1. *Furgeson*, 04 C 7627: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC. (SMF ¶ 29).

2. *Salazar*, 05 C 4162: Deutsche Bank National Trust Co., as trustee of Ameriquest Mortgage Securities, Inc., Quest Trust 2003-X2 Asset-backed Pass-through Certificates, Series 2003-X2. (SMF ¶ 34).

3. *Smith & Yanong*, 05 C 648: Deutsche Bank National Trust Co., as trustee for Ameriquest Mortgage Loan Trust 2002-A, Freddie Mac Structured Pass-Through Certificates, Series T39 Closing March 18, 2002. (SMF ¶ 39).

4. *Jimenez*, 05 C 1009: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC. (SMF ¶ 45).

5.    *Key*, 05 C 1077: Deutsche Bank National Trust Co., as trustee of Ameriquest Mortgage Securities, Inc., Series 2002-B, Asset-backed Certificates, under the Pooling & Servicing Agreement Dated as of June 1, 2002.  (SMF ¶ 56).

6.    *Treadwell*, 05 C 1078: Deutsche Bank National Trust Co., as trustee of Ameriquest Mortgage Securities, Inc., Asset-backed Pass-through Certificates, Series 2003-X2, under the Pooling & Servicing Agreement Dated as of June 1, 2003.  (SMF ¶ 50).

7.    *Wertepny*, 05 C 1402: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC.  (SMF ¶ 62).

8.    *Mills*, 05 C 3976: Deutsche Bank National Trust Co., as trustee of Ameriquest Mortgage Securities, Asset-backed Pass-through Certificates, Series 2002-4, under the Pooling & Servicing Agreement dated as of November 1, 2002.  (SMF ¶ 73).

9.    *Harris*, 05 C 4025: Deutsche Bank National Trust Co., as trustee of Ameriquest Mortgage Securities, Asset-backed Pass-through Certificates, Series 2003-X1, under the Pooling & Servicing Agreement Dated as of January 1, 2003.  (SMF ¶ 68).

10.   *Pintsak*, 05 C 5035: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC.  (SMF ¶ 78).

11.   *Barboza,* 06 cv 3125: Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-7, Under the Pooling & Servicing Agreement dated as of July 1,2003, Without Recourse. (SMF ¶ 85).

12.   *Booth,* 06 cv 2467: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC.  (SMF ¶ 189).

13.   *Olynciw,* 06 cv 2467: Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2002-D, Under the Pooling & Servicing Agreement dated as of December I, 2002, Without Recourse.  (SMF ¶ 224).

14.   *Potter*, 06 cv 2467: Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-8, Under the Pooling & Servicing Agreement dated as of August 1,2003, Without Recourse.  (SMF ¶ 238).

15.   *Iwanczenko*, 06 cv 3125: Deutsche Bank National Trust Company, as Trustee of Ameriquest MortgageSecurities, Inc., Asset-Backed Pass Through Certificates, Series 2003-2, Under the Pooling & Servicing Agreement dated as of February 1,2003, Without Recourse.  (SMF ¶ 210).

16.   *Jones*, 06 cv 3125: Deutsche Bank National Trust Company as Trustee of Ameriquest

Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-8, Under the Pooling & Servicing Agreement dated as of August 1,2003, Without Recourse. (SMF ¶ 154).

17.   *Holmes,* 06 cv 3125: Deutsche Bank National Trust Company as Trustee of Ameriquest MortgageSecurities, Inc., Asset-Backed Pass Through Certificates, Series 2003-4, Under the Pooling & Servicing Agreement dated as of April 1,2003, Without Recourse. (SMF ¶ 196).

18.   *Cue*, 06 cv 2468: Deutsche Bank National Trust Company as Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-1, Under the Pooling & Servicing Agreement dated as of February 1,2003, Without Recourse. (SMF ¶ 168).

19.   *Dell*, 06 cv 2468: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC. (SMF ¶ 258).

20.   *Griffin*, 06 cv 2468: Deutsche Bank National Trust Company as Trustee of Ameriquest Mortgage Securities, Inc., 2 Asset-Backed Pass Through Certificates, Series 2003-8, Under the Pooling & Servicing Agreement dated as of August 1,2003, Without Recourse. (SMF ¶ 203).

21.   *Fournier*, 06 cv 2471: Deutsche Bank National Trust Company as Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-6, Under the Pooling & Servicing Agreement dated as of May 1, 2003, Without Recourse. (SMF ¶ 113).

22.   *Sibley*, 06 cv 2471: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC. (SMF ¶ 175).

23.   *Stripling*, 06 cv 2471: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC. (SMF ¶ 106).

24.   *Sullivan & Bathin*, 06 cv 2471: Deutsche Bank National Trust Company, as Trustee of Ameriquest MortgageSecurities, Inc., Asset-Backed Pass Through Certificates, Series 2003-7, Under the Pooling & Servicing Agreement dated as of July I, 2003, Without Recourse. (SMF ¶ 245).

25.   *Kobialka*, 06 cv 1733: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC. (SMF ¶ 251).

26.   *Lehan*, 06 cv 1733: Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-8, Under the Pooling & Servicing Agreement dated as of August 1,2003, Without Recourse. (SMF ¶ 120).

27.   *Hack*, 06 cv 1733: Deutsche Bank National Trust Company, as Trustee of

Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-1, Under the Pooling & Servicing Agreement dated as of February 1,2003, Without Recourse.  (SMF ¶ 271).

28.    *Greene*, 06 cv 1733: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC.  (SMF ¶ 161).

29.    *Osten*, 06 cv 4032: Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-7, Under the Pooling & Servicing Agreement dated as of July 1, 2003, Without Recourse.  (SMF ¶ 99).

30.    *Roberts*, 06 cv 4032: JPMC Specialty Mortgage, LLC, f/k/a WM Specialty Mortgage, LLC.  (SMF ¶ 134).

31.    *Steinmiller*, 06 cv 2469: Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-6, Under the Pooling & Servicing Agreement dated as of May 1, 2003, Without Recourse.  (SMF ¶ 147).

32.    *Sweeten,* 06 cv 2470: Deutsche Bank National Trust Company, as Trustee of Argent Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-AR2, Under the Pooling & Servicing Agreement dated as of May 1, 2003, Without Recourse. (SMF ¶ 92).

33.    *Robinson,* 06 cv 3126: Deutsche Bank National Trust Company, as Trustee of Argent Securities, Inc., Asset-Backed Pass Through Certificates, Series 2003-AR3, Under the Pooling & Servicing Agreement dated as of June 1, 2003, Without Recourse. (SMF ¶ 140).

34.    *Cadette*, 06 cv 6753: Deutsche Bank National Trust Company, as Trustee of Ameriquest Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2004-R5.  (SMF ¶ 182).

35.    *Vega*, 06 cv 129: Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates, Series 2004-Rll, Under the Pooling & Servicing Agreement dated as of December I, 2004, Without Recourse.  (SMF ¶ 231).

36.    *Muro,* (06 cv 1733): Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc., Asset-Backed Pass Through Certificates Series 2003-8.  (SMF ¶ 127).

37.    *Hess*, 08 cv 1858:  Deutsche Bank National Trust Company.  (SMF ¶ 264).

38.    *Walrod*, 08 cv 742:  Deutsche Bank National Trust Company.  (SMF ¶ 271).

39.    *Young,* 08 cv 741:  Deutsche Bank National Trust Company.  (SMF ¶ 277).

The servicers of Plaintiffs' loans are Chase Home Finance, LLC and American Home Mortgage Servicing, Inc.

## SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Hunt v. Cromartie*, 526 U.S. 541, 549 (1999) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)).

TILA cases are frequently ideally suited for summary judgment because they turn on the sufficiency of disclosure documents.  *Rodash v. AIB Mortgage Co.*, 108 F.3d 1325 (11th Cir. 1997).  Borrowers need not show reliance or injury to establish liability under TILA.  *Brown v. Marquette S. & L. Ass'n*, 686 F.2d 608, 614 (7th Cir. 1982).  Rather, the statute imposes strict liability on lenders, without regard to whether the creditor's failure to comply was intentional or negligent.  *In re Steinbrecher*, 110 B.R. at 161 (TILA imposes "strict liability").

More precisely, TILA cases are ideal for summary judgment because an objective standard is used to determine violations of TILA's disclosure requirements.  "[I]t is unnecessary to inquire as to the deception or misunderstanding of particular consumers."  *Zamarippa v. Cy's Car Sales, Inc*., 674 F.2d 877 (11th Cir. 1982); *Diaz v. Westgate Lincoln Mercury, Inc*., 1994 U.S. Dist. LEXIS 16300 (N.D. Ill. Nov. 7, 1994) (Pallmeyer, M. J.) ("Subjective matters, such as the plaintiff's actual reliance, deception or misunderstanding with respect to the creditor's printed document, generally are not required elements of [TILA] claims.").  Thus, the sole issue before this Court is the sufficiency of the TILA Disclosure Statement Ameriquest provided to plaintiffs at their loan

closings.

# **THE TRUTH IN LENDING ACT**

A.    **General TILA Disclosure Requirements**

TILA was enacted for the purpose of requiring every creditor extending credit to consumers in the United States to compute and state the cost of that credit in a precise, uniform manner, thereby enabling consumers to compare the cost of credit from various lenders by simply comparing several key numbers.  Congress "decided to effectively adopt a new national loan vocabulary that means the same in every contract in every state." *Mason v. General Fin. Corp*., 542 F.2d 1226, 1233 (4th Cir. 1976).  "The legislative history [of TILA] makes crystal clear that lack of uniformity in the disclosure of the cost of credit was one of the major evils to be remedied by the Act." *Id*. at 1231.

TILA and Regulation Z accordingly require disclosure of several key credit terms, computed in the precise manner prescribed by the Regulation and using precise terminology. "[S]trict compliance with the required disclosures and terminology is required." *Smith v. No. 2 Galesburg Crown Fin. Corp*., 615 F.2d 407, 416-17 (7th Cir. 1980).

TILA is remedial legislation designed to eliminate impediments to the informed use of credit. *Mourning v. Family Pubs. Service, Inc*., 411 U.S. 356, 364-365, 377 (1973). "Since the Act is a remedial statute designed to protect borrowers who are viewed as not on an equal footing with lenders, either in bargaining for credit terms or in knowledge of credit provisions, it is to be liberally construed in favor of borrowers."  *In re Steinbrecher*, 110 B.R. 155, 161 (Bankr. E.D. Pa. 1990); accord, *Davis v. Werne*, 673 F.2d 866, 869 (5th Cir. 1982).

"Moreover, any violation of TILA, regardless of the technical nature of the violation, must result in a finding of liability against the lender.  Such a strict assessment of damages by courts was intended by Congress to create a 'private attorney general' scheme of enforcement which would

obviate the need for a large federal bureaucracy to perform such a task." *In re Steinbrecher*, 110 B.R. at 161 (internal citations omitted).

**B.      The Right to Rescind**

TILA and implementing Federal Reserve Board Regulation Z afford special protection for homeowners who use their homes to secure extensions of credit entered into for purposes other than the acquisition of the home.  15 U.S.C. § 1635 and 12 C.F.R. § 226.23 give the homeowner the right to rescind such a loan transaction.  Section § 1635 (a) provides:

**(a) Disclosure of obligor's right to rescind**

**. . . [I]n the case of any consumer credit transaction in which a security interest, including any such interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later. . . The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. . .** (emphasis added).

Section 226.23(a) of Regulation Z states, in relevant part:

**(a) Consumer's right to rescind.**
**. . .**
**(3) . . . If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. . . [15 U.S.C. §1635(f)]**

**(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(1) The retention or acquisition of a security interest in the consumer's**

**principal dwelling.**

**(2) The consumer's right to rescind the transaction.**

**(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(4) The effects of rescission, as described in paragraph (d) of this section.**

**(5) The date the rescission period expires. . . .**

If a creditor fails to deliver a material disclosure or the required notice of right to cancel, under 12 C.F.R. § 226.23(a)(3) the consumer's right to rescind is automatically extended from three days to three years. The "material" disclosures of a credit transaction are explicitly stated at 15 U.S.C. § 1602(u) and 12 C.F.R. § 226.23(a)(3). One of the "material" disclosures defined here is disclosure of "the due dates or periods of payments scheduled to repay the indebtedness." 15 U.S.C. § 1602(u).

Consumers maintain the right to rescind even after paying off the subject loans, as long as the borrowers pay off the loans after they provide notice of their right to rescind and the lenders fail to comply. *See Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 765-766 ("We . . . hold that the remedies associated with rescission remain available even after the subject loan has been paid off.").

Additionally, the right to rescind not only applies against the original creditor, but also against any assignee, provided the violation is apparent on the face of the disclosure statement and the assignment was voluntary. 15 U.S.C. § 1641(a) and (c); *Lippner v. Deutsche Bank Nat'l Trust Co.*, 544 F. Supp. 2d 695, 703 (N.D. Ill. 2008). Failing to disclose the payment schedule is a facial violation. 15 U.S.C. § 1641(a); *Lippner*, 544 F. Supp. 2d at 704. Thus, assignees are liable for rescission claims.

## ARGUMENT

## I.    AMERIQUEST VIOLATED TILA'S EXPRESS REQUIREMENTS BY FAILING TO FULLY AND COMPLETELY DISCLOSE THE PAYMENT SCHEDULES.

Ameriquest failed to fully and completely disclose the payment schedule for plaintiffs' loans in the manner that is explicitly required by TILA.  TILA requires the disclosure of very precise information relating to a consumer's payments.  Under TILA, a "creditor shall disclose... [t]he number, amount, and due dates or period of payments scheduled to repay the total of payments."  15 U.S.C. § 1638(a)(6).

Regulation Z, which implements TILA, states that a creditor must disclose a payment schedule describing "[t]he number, amounts, and timing of payments scheduled to repay the obligation."  12 C.F.R. § 226.18(g).

Further, the FRB Commentary on Regulation Z provides even more explicit and specific guidance for creditors for properly disclosing the timing of payments:

> **Section 226.18(g) requires creditors to disclose the timing of payments.  To meet this requirement creditors may list all of the payment due dates.  They also have the option of specifying the period of payments scheduled to repay the obligation.  As a general rule, creditors that choose this option must disclose the payment intervals or frequency, such as "monthly" or "bi-weekly," and the calendar date that the beginning payment is due.**

12 C.F.R. pt. 226, Supp. I (2005).

The FRB interpretation is authoritative and dispositive of the issue.  The "[FRB] staff opinions construing the Act or Regulation [Z implementing the Act] should be dispositive" unless they are "demonstratively irrational."  *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980).

Thus, TILA's requirements about what information the creditor must disclose concerning the timing of payments are very simple: the creditor has the choice of disclosing either

the "due dates" of all payments or "the period of payments"; and, creditors that choose to disclose

the period of payments must disclose the time intervals or frequency of payments, e.g., "monthly."

In these cases, the TILA Disclosure Statements that Ameriquest provided to plaintiffs

(SMF, ¶ 5-7) plainly violated TILA in that they failed to disclose and specify either (1) the due date

of each payment under the loan (except for the first and last payments) or (2) the period, interval or

frequency with which each payment is due. *Hamm*, 506 F.3d at 531.  For example, if Ameriquest

had simply inserted the term "monthly" after the word "due" in the phrase "PAYMENTS ARE DUE

BEGINNING," no violation would exist.

As stated above, because the payment schedule is a material term of plaintiffs' credit

transactions with Ameriquest, Ameriquest's failure to properly disclose it gives rise to an extended

right to rescind for plaintiffs.

## II.    PLAINTIFFS MAY RESCIND AND RECOVER AGAINST DEFENDANTS.

### A.    Plaintiffs may rescind and recover against any assignee.

Plaintiffs are entitled to rescind against "any assignee." 15 U.S.C. § 1641(c); *Lippner*,

544 F. Supp. 2d at 703-04.  Only plaintiffs Smith & Yanong (No. 05 C 648), Key (No. 05 C 1077),

Treadwell (No. 05 C 1078), Wertepny (No. 05 C 1402), Sweeten (06 cv 2470), Osten (06 cv 4032),

Stripling (06 cv 2471), Fournier (06 cv 2471), Muro (06 cv 1733), Roberts (06 cv 4032), Robinson

(06 cv 3126), Steinmiller (06 cv 2469), Greene (06 cv 1733), Cue (06 cv 2468), Sibley (06 cv 2471),

Cadette (06 cv 6753), Booth (06 cv 2467), Holmes (06 cv 3125), Griffin (06 cv 2468) , Iwanczenko

(06 cv 3125), Hack (06 cv 1733), Olynciw, (06 cv 2467), Vega (06 cv 129), Potter (06 cv 2467),

Sullivan & Bathin (06 cv 2471), and Dell (06 cv 2468) have refinanced their Ameriquest loans.

(SMF ¶ 27, 38, 50, 80, 87, 94, 101, 115, 122, 128, 135, 149, 156, 163, 170, 177, 184, 191, 198, 205,

212, 219, 226, 233, and 246).

Plaintiffs—some of whom have refinanced their loans after they filed suit—are now

13

entitled to rescission or to recover the equivalent of rescission, as well as statutory damages and attorney's fees.  As stated above, when a creditor fails to disclose a material term of a credit transaction in a clear and conspicuous manner, the borrower has an extended (three-year) right to rescind.  15 U.S.C. § 1602 (u) and 12 C.F.R. § 226.23(a)(3).

Finally, the failure of a creditor or assignee to honor the exercise of the right to rescind is also a violation of TILA that entitles the borrower to statutory damages.  *Fairbanks Capital Corp. v. Jenkins*, 225 F. Supp.2d 910 (N.D. Ill. 2002).  In this case, Ameriquest refused to rescind plaintiffs' loans (SMF, ¶ 9). As a result, the loans were never rescinded.  Therefore, they are also entitled to statutory damages in the amount of $2,000 for this separate violation.

Plaintiffs rights to statutory damages are also valid against any assignee.  *Lippner*, 544 F. Supp. 2d at 704 (citing *Fairbanks*).  This right further extends to attorney's fees.  *Id.*

B.  **Plaintiffs' payoffs of their Ameriquest loans do not preclude recovery on their TILA rescission claims.**

Plaintiffs Smith & Yanong's, Key's, Treadwells', Wertepnys', Sweetens', Ostens', Stripling's, Fournier's, Muro's, Roberts', Robinson's, Steinmillers', Greene's, Cue's, Sibley's, Cadettes', Booth's, Holmes', Griffins', Iwanczenkos', Hacks', Olynciws', Vegas', Potters', Sullivan & Bathin's, and Dell's payoffs or refinancing of their loans did not terminate their right to rescind the loans.  *Handy*, 464 F.3d 760, 765-66 (7th Cir. 2006) (citing *Barrett v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 877 (6th Cir. 2006)).  In *Handy*, the court stated "that the remedies associated with rescission remain available even after the subject loan has been paid off."  *Id.*

## CONCLUSION

For the reasons stated above, the Court should hold that (a) Defendants are liable for violating TILA, and (b) that plaintiffs are entitled to recover from Ameriquest (1) the difference

14

between the amount of their payoff to Ameriquest and the amount they would have paid, had the loan been rescinded, (2) statutory damages for defendants' refusal to rescind, and (3) plaintiffs' attorneys' fees and costs.

Respectfully submitted,

s/ Catherine A. Ceko
Catherine A. Ceko

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. La Salle Street, 18th Floor
Chicago, Illinois, 60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Catherine Ceko, hereby certify that on October 20, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.  Notice will also be sent by U.S. Mail to parties that do not have access to the Court's electronic filing system.

s/ Catherine A. Ceko
Catherine A. Ceko

*Attorneys for Plaintiffs*
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)