# APPENDIX 1

Case: 1:05-cv-07097 Document #: 3172-2 Filed: 10/20/09 Page 2 of 82 PageID #:36307

FURGESON vs. AMERIQUEST                    MARIE ELAINE FURGESON, 08/26/05

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


MARIE FURGESON, formerly known      )
as, MARIE HENDERSON,                )
                                    )
                  Plaintiff,        )
                                    )
            vs.                     )   No.  04 C 7627
                                    )
AMERIQUEST MORTGAGE CORPORATION;    )
WASHINGTON MUTUAL BANK, FA, and     )
JOHN DOES 1-10;                     )
                                    )
                  Defendants.       )



        The deposition of MARIE ELAINE FURGESON, called

by the Defendants for examination, taken pursuant to

the Federal Rules of Civil Procedure of the United

States District Courts pertaining to the taking of

depositions, taken before MARGARET R. BEDDARD, a

Notary Public within and for the County of Kane,

State of Illinois, and a Certified Shorthand Reporter

of said state, at Suite 350, 224 South Michigan

Avenue, Chicago, Illinois, on the 26th day of August,

A.D. 2005, at 10:50 a.m.

RIQUEST URGESON vs. AMERIQUEST — MARIE ELAINE FURGESON, 08/26/05

**Page 10**

1 church organization, or is that with a government?
2   A. No.  I was not legally married, so it was
3 annulled instead of a divorce.
4   Q. Okay.  So that was a proceeding that was
5 filed with a court?
6   A. Yes.
7   Q. When were you born, Ms. Furgeson?
8   A. 3-26-1953.
9   Q. And do you have any children?
10   A. Yes.
11   Q. How many?
12   A. Three.
13   Q. And what are their names and ages?
14   A. Richard Lee.  He's 34.  Elizabeth's 30.
15 Melody is 29.
16   Q. Okay.  And do any of them currently reside
17 with you?
18   A. No.
19   Q. Did any of them reside with you in 2003?
20   A. No.
21   Q. You said you reside in Springfield,
22 Illinois; is that correct?
23   A. Yes.
24   Q. At the address of 2016 South 14th Street?

**Page 11**

1   A. Yes.
2   Q. And how long have you lived there?
3   A. I would say 19 years.
4   Q. 19 years.
5      Is this a property you own?
6   A. I am buying it.
7   Q. I'm sorry?
8   A. I am buying it.
9   Q. You don't own it presently?
10   A. No.
11   Q. Who owns it?
12   A. The bank.
13   Q. The bank owns the property?  Are you being
14 serious, or are you trying to be funny?
15   A. No.
16   Q. I'm just asking.
17   A. Ameriquest Mortgage Company.
18   Q. How do they own the property in your mind?
19   A. That it's not -- The contract's not over
20 with where I would get the deed.
21   Q. Okay.  When you moved into the house --
22      It's a house; is that correct?
23   A. Yes.
24   Q. Is it a multi-unit dwelling or a

**Page 12**

1 single-unit?
2   A. Single.
3   Q. Okay.  When you moved into it 19 years
4 ago --
5      So that would be 1986?
6   A. I believe '83.
7   Q. Okay.  1983.
8      Did you buy it from somebody then?
9   A. Yes.  It was Pat Mays.
10   Q. Who?
11   A. I think it was Mays.
12   Q. M-a-y-s?
13   A. Yes.
14   Q. All right.  And did you buy it by yourself
15 or with somebody else?
16   A. Myself.
17   Q. Okay.  And were you married in 1983?
18   A. No.
19   Q. As long as you've lived in this house have
20 you been the only person who's been the owner of it?
21   A. Yes.
22   Q. Other than a bank that you've talked about?
23   A. Yes.
24   Q. Or other financial institution?

**Page 13**

1   A. Yes.
2   Q. Okay.  Is this the only house you've owned?
3   A. A mobile home.
4   Q. Do you have a mobile home now, or you had
5 one before then?
6   A. No.  I have one.
7   Q. You have a mobile home now?
8   A. Yes.
9   Q. Okay.  And where is that mobile home?
10   A. In Springfield, Illinois.
11   Q. And what's its address?
12   A. 1039 North Edmond.
13   Q. Okay.  Is that a street?
14   A. Yes.
15   Q. Okay.  And is there a zip code there?
16   A. 62702.
17   Q. And is that mobile home -- Who lives there?
18   A. My sister lives there at the moment.
19   Q. Does she pay you rent?
20   A. Yes.
21   Q. When did you buy this mobile home?
22   A. About -- Probably two years ago.  Probably
23 two years ago maybe.
24   Q. And who did you buy it from?

RIQUEST/FURGESON vs. AMERIQUEST — MARIE ELAINE FURGESON, 08/26/05

## Page 42

1  A. Monthly.
2  Q. Again, you did this written calculation of
3 how much your take-home pay was, what your expenses
4 were, then you added the sofa expense to it, and you
5 figured out that you still took in more money than
6 you were paying out?
7  MR. HOFELD: Is that a question?
8  MR. LEDSKY: Yes.
9  THE WITNESS: Yes.
10 BY MR. LEDSKY:
11  Q. I'm not trying to put words in your mouth,
12 Ms. Furgeson. I'm just trying to summarize what it
13 is you told me before about how you wrote things down
14 to make these calculations.
15  Is that right?
16  A. Yes.
17  Q. Okay. You said that when you bought your
18 house on 14th Street your loan was with Marine Bank;
19 is that right?
20  A. I believe so, yes.
21  Q. Okay. And do you remember the terms of
22 that loan?
23  A. 30 years. The payments were 474, I
24 believe.

## Page 43

1  Q. And how often were they due?
2  A. Monthly.
3  Q. And do you remember what the interest rate
4 was?
5  A. 7 something.
6  Q. Now, you said you bought the house in 1983;
7 is that right?
8  A. Yes.
9  Q. Are you still paying Marine Bank?
10  A. No.
11  Q. When did you stop paying Marine Bank?
12  A. I don't know.
13  Q. Did you get a loan with another entity?
14  A. Yes.
15  Q. Okay. And who was that entity?
16  A. I don't remember.
17  Q. Do you know what the word "refinance"
18 means?
19  A. Yes.
20  Q. What does that mean in your mind?
21  A. Having your loan calculated to reduce your
22 payments for a shorter period of time.
23  Q. Okay. There are times where people decide
24 to pay off a current loan by taking out another loan,

## Page 44

1 and that second loan pays off the first loan. That's
2 what I understand to be a refinance.
3  Is that what you meant by your answer?
4  A. And consolidate your bills.
5  Q. You can consolidate bills as well, right?
6  A. Yes.
7  Q. Did you at some point in time take out a
8 second loan to pay off the Marine Bank loan?
9  A. Yes.
10  Q. Okay. And do you remember who that lender
11 was?
12  A. No.
13  Q. Okay. Did you -- Why did you decide to do
14 that?
15  A. I don't know at that point.
16  Q. Do you remember when it was?
17  A. No.
18  Q. Did you consolidate other debt? Were you
19 trying to get a lower payment on the present loan?
20 Had interest rates gone down? Do you remember
21 anything that was your thinking about --
22  A. The interest rates were lower.
23  Q. The interest rates were lower?
24  A. Yes.

## Page 45

1  Q. And so how would -- Why would that have
2 prompted you to refinance?
3  A. Because I was wanting to consolidate my
4 other bills that I had.
5  Q. And did you understand that if the interest
6 rates were lower that your payment would be lower?
7  A. Yes.
8  Q. Okay. And that was a motivating factor to
9 take out another loan?
10  A. Yes.
11  Q. Okay. And did -- This second loan, was the
12 interest rate lower than the first loan?
13  A. Yes.
14  Q. You made sure of that?
15  A. Yes.
16  Q. Okay. And did you ever refinance that
17 loan -- that second loan?
18  A. I believe to Ameriquest.
19  Q. To Ameriquest?
20  A. Yes.
21  Q. So Ameriquest is the third loan you've had
22 for your house?
23  A. Yes.
24  Q. Okay. And do you remember what prompted

# APPENDIX 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIE FURGESON, formerly known as, )
MARIE HENDERSON, )
     )
         Plaintiff, )
     )
     vs. )    No. 04 C 7627
     )
AMERIQUEST MORTGAGE CORPORATION, )    Judge Manning
WASHINGTON MUTUAL BANK, FA, and )
JOHN DOES 1-10, )
     )
         Defendants. )

## DEFENDANT AMERIQUEST MORTGAGE COMPANY'S
## ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Ameriquest Mortgage Company ("Ameriquest"), by its attorneys, responds to

Plaintiff's Second Amended Complaint as follows:

1.     Plaintiff Maria (sic) Furgeson brings this action against a "subprime" mortgage
lender to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"),
and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

    **ANSWER:**     Ameriquest admits that Plaintiff has filed a lawsuit against it. Ameriquest

objects to the term "subprime" as vague. Ameriquest is without knowledge or information

sufficient to form a belief as to the truth of the intended characterization of the term "subprime."

Ameriquest denies all remaining allegations in Paragraph 1. Ameriquest specifically denies that it

violated the Truth in Lending Act, 15 U.S.C. § 1601, or implementing Federal Reserve Board

Regulation Z, 12 C.F.R. part 226.

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal
question), and 1337 (interstate commerce), and 15 U.S.C. § 1640 (TILA). Defendants do business in
the District and are deemed to reside here.

**ANSWER:** Ameriquest does not contest subject matter jurisdiction or personal jurisdiction. Ameriquest reserves the right to contest venue. Ameriquest denies any remaining allegations in Paragraph 2.

3. Plaintiff owns and resides in a home at 2016 South 14th Street, Springfield, IL 62702.

**ANSWER:** Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3.

4. Defendant Ameriquest Mortgage Corporation (hereinafter "Ameriquest") is a foreign corporation that does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, Illinois. It is engaged in the business of originating and servicing "subprime" mortgages.

**ANSWER:** Ameriquest admits that it is a corporation incorporated in a state other than Illinois and that it does business in Illinois. Ameriquest denies the remaining allegations in the first sentence of Paragraph 4. Ameriquest admits the allegations in the second sentence of Paragraph 4. Ameriquest objects to the term "subprime" as vague. Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the intended characterization of the term "subprime." Ameriquest admits that it engaged in the business of originating loans secured by mortgages. Ameriquest denies the remaining allegations in Paragraph 4.

5. Defendant Washington Mutual Bank, FA ("hereinafter "WAMU") is a bank which does business in Illinois. It has offices at 311 S. Wacker Drive, Chicago, IL 60606, among many other locations in the Chicago metropolitan area. It is in the business of acquiring and holding sub-prime mortgage loans.

**ANSWER:** Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.

6. Defendants John Does 1-10 are any persons or entities other than Ameriquest and WAMU that have, or claim to have, an interest in or rights under the loan that is the subject of this action.

**ANSWER:** Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6.

7.      On March 21, 2003, plaintiff obtained a $60,400 mortgage loan from Ameriquest Mortgage Corporation.  Most of the loan proceeds were used for personal, family or household purposes – refinancing of prior debts obtained for that purpose.

**ANSWER:**      Ameriquest admits that Plaintiff obtained a loan, with a principal amount of $60,400, secured by a mortgage, from Ameriquest.  Ameriquest denies the remaining allegations in the first sentence of Paragraph 7.  Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 7.

8.      In connection with the transaction, plaintiff signed or received the following documents:

  a.      A note, a copy of which is attached hereto as Exhibit A;

  b.      A mortgage, Exhibit B;

  c.      A settlement statement on form HUD-1A, Exhibit C;

  d.      A Truth in Lending disclosure statement, Exhibit D;

  e.      Multiple copies of a notice of right to cancel within three days, Exhibit E; and

  f.      Multiple copies of an Ameriquest form entitled "One Week Cancellation Period," Exhibit G.

**ANSWER:**      Ameriquest objects to the allegations in Paragraph 8 as vague.  Ameriquest admits that, in connection with Plaintiff's loan transaction with Ameriquest, Plaintiff signed a note, a mortgage, a settlement statement, a Truth in Lending disclosure statement, various copies of a notice of right to cancel, and a document entitled "one week cancellation period."  Ameriquest affirmatively states that Exhibits A, B, C, D, E, and G appear to be unsigned, incomplete, cut-off copies of a portion of the documents received by Plaintiff.  Ameriquest denies the remaining allegations in Paragraph 8.

9.      Subsequently, Ameriquest assigned the loan to defendant WAMU.  Ameriquest retained the servicing of the loan.

**ANSWER:** Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 9. Ameriquest admits the allegations in the second sentence of Paragraph 9.

10. On information and belief, WAMU is the current assignee of the loan.

**ANSWER:** Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10.

11. Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. § 1635 and 12 C.F.R. § 226.23. Section 226.23 provides:

(a) <u>Consumer's right to rescind.</u>

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section. [fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, [fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. § 1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

4

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u>  The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. § 1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

<u>ANSWER:</u>   Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations that the transaction was secured by plaintiff's home.  Ameriquest denies that 12 C.F.R. § 226.23(f)(2) states "(2) A credit plan in which a stage agency is a creditor." Ameriquest admits that the remaining allegations in Paragraph 11 contain a portion of the text of 12 C.F.R. § 226.23.  Ameriquest denies the allegations in Paragraph 11 insofar as they purport to make any allegation of wrongdoing by Ameriquest under said statute.  Ameriquest denies the remaining allegations in Paragraph 11.

12.    Plaintiff was given a notice of the right to cancel that only allowed two business days after March 21, 2003 to cancel, instead of three.

<u>ANSWER:</u>   Ameriquest denies the allegations in Paragraph 12.

13.    In addition, the payment schedule on <u>Exhibit D</u> is not properly disclosed.

<u>ANSWER:</u>   Ameriquest denies the allegations in Paragraph 13.

14.    Finally, <u>Exhibit G</u> detracts from and obfuscates <u>Exhibit E</u>.  The provision of <u>Exhibit E</u> suggests that the consumer has seven days to rescind under TILA, which is not the case.  The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees, or the procedural protections of § 1635.  It also provides for a

5

different method of counting days and requires actual receipt of the notice by Ameriquest within the specified time.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 14.

15.     As a result, plaintiff is entitled to rescind for three years.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 15.

16.     Plaintiff has given notice to plaintiff's election to rescind.  Exhibit F.

**ANSWER:**     Ameriquest denies that Plaintiff has given proper or timely notice of any intention to rescind the subject loan.  Ameriquest denies that it is required to rescind the subject loan.  Ameriquest denies any remaining allegations in Paragraph 16.

17.     Under 15 U.S.C. § 1641, plaintiff is entitled to assert the right to rescind against any assignee of the loan.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 17.

18.     15 U.S.C. § 1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

**ANSWER:**     Ameriquest admits that the allegations in Paragraph 18 contain the text of 15 U.S.C. § 1635(g).  Ameriquest denies the allegations in Paragraph 18 insofar as they purport to make any allegation of wrongdoing by Ameriquest under said statute.  Ameriquest denies the remaining allegations in Paragraph 18.

19.     Plaintiff incorporates ¶¶ 1-15.

**ANSWER:**     Ameriquest incorporates by reference its answers to Paragraphs 1 - 15 above as its answers to Paragraph 19.

20.     The loan made to plaintiff violated TILA.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 20.

## AFFIRMATIVE DEFENSES

Defendant Ameriquest states as its affirmative defenses as follows:

1.     Plaintiff's claim for statutory damages, costs, and attorney's fees for any alleged underlying Truth in Lending Act violation is barred by the one-year statute of limitations for statutory damages, costs and attorney's fees under the Truth in Lending Act.

2.     If Ameriquest committed the alleged violation, such violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

3.     Plaintiff's purported cause of action fails to state a claim upon which relief may be granted.

4.     If it should be deemed that Plaintiff is entitled to rescission, any obligation on the part of Ameriquest to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiff's reimbursement or other return to Ameriquest of all funds disbursed on Plaintiff's behalf in connection with the subject mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other rules of law or equity.  Any obligation on the part of Ameriquest to rescind and to release any lien is conditioned upon Plaintiff reimbursing or otherwise returning all funds disbursed on her behalf to Ameriquest in connection with the subject loan, less any finance charges.

WHEREFORE, Defendant Ameriquest Mortgage Company requests that this Court enter judgment in its favor and against Plaintiff, Marie Furgeson, formerly known as Marie Henderson, award Ameriquest Mortgage Company its costs, and provide such further and additional relief as it deems just and appropriate.

Dated: July 19, 2005

**AMERIQUEST MORTGAGE COMPANY,**
**Defendant**

_____

One of its attorneys

Craig A. Varga
Jonathan N. Ledsky
Jaime S. Roginski-Kord
Varga Berger Ledsky Hayes & Casey
A Professional Corporation
224 South Michigan Avenue
Suite 350
Chicago, Illinois 60604-2507
(312) 341-9400

## CERTIFICATE OF SERVICE

Jonathan N. Ledsky, an attorney, hereby certifies that a true and correct copy of the

foregoing, **Defendant Ameriquest Mortgage Company's Answer to Plaintiff's Second**

**Amended Complaint**, was served upon:

Al Hofeld, Jr.
Edelman, Combs, Latturner
   & Goodwin, LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois 60603

by placing same in the United States mail chute located at 224 South Michigan Avenue, Chicago,

Illinois 60604, properly addressed and postage fully prepaid, this 19th day of July, 2005, on or before

the hour of 5:00 p.m.

_____
Jonathan N. Ledsky

Shared/Ortega/Pleadings/AMQ-Furgeson Answer to Second Amended Complaint

# APPENDIX 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARIE FURGESON, formerly known as, )
MARIE HENDERSON )
                                      )       04 C 7627
            Plaintiff, )
                                        )       Judge Blanche M. Manning
       v. )
                                          )       Magistrate Judge Denlow
AMERIQUEST MORTGAGE CORPORATION; )
WASHINGTON MUTUAL BANK, FA, )
and JOHN DOES 1-10; )
                                        )       **JURY DEMANDED**
            Defendants. )

## SECOND AMENDED COMPLAINT

## INTRODUCTION

1.      Plaintiff Maria Furgeson brings this action against a "subprime" mortgage lender to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), and 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants do business in the District and are deemed to reside here.

## PARTIES

3.      Plaintiff owns and resides in a home at 2016 South 14th Street, Springfield, IL 62702.

4.      Defendant Ameriquest Mortgage Corporation (hereinafter "Ameriquest") is

1

a foreign corporation that does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, Illinois. It is engaged in the business of originating and servicing "subprime" mortgages.

      5.      Defendant Washington Mutual Bank, FA ("hereinafter "WAMU") is a bank which does business in Illinois. It has offices at 311 S. Wacker Drive, Chicago, IL 60606, among many other locations in the Chicago metropolitan area. It is in the business of acquiring and holding sub-prime mortgage loans.

      6.      Defendants John Does 1-10 are any persons or entities other than Ameriquest and WAMU that have, or claim to have, an interest in or rights under the loan that is the subject of this action.

## FACTS RELATING TO PLAINTIFF

      7.      On March 21, 2003, plaintiff obtained a $60,400 mortgage loan from Ameriquest Mortgage Corporation. Most of the loan proceeds were used for personal, family or household purposes – refinancing of prior debts obtained for that purpose.

      8.      In connection with the transaction, plaintiff signed or received the following documents:

           a.      A note, a copy of which is attached hereto as Exhibit A;

           b.      A mortgage, Exhibit B;

           c.      A settlement statement on form HUD-1A, Exhibit C,

           d.      A Truth in Lending disclosure statement, Exhibit D;

           e.      Multiple copies of a notice of right to cancel within three days, Exhibit E; and

2

f.    Multiple copies of an Ameriquest form entitled "One Week Cancellation Period," Exhibit G.

9.    Subsequently, Ameriquest assigned the loan to defendant WAMU. Ameriquest retained the servicing of the loan.

10.    On information and belief, WAMU is the current assignee of the loan.

## RIGHT TO RESCIND

11.    Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

**(a) Consumer's right to rescind.**

**(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

**(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

**(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f)**

3

of the Act.  [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

<u>GROUNDS FOR RESCISSION</u>

12.    Plaintiff was given a notice of the right to cancel that only allowed two business days after March 21, 2003 to cancel, instead of three.

13.    In addition, the payment schedule on <u>Exhibit D</u> is not properly disclosed.

14.    Finally, <u>Exhibit G</u> detracts from and obfuscates <u>Exhibit E</u>.  The provision

4

of <u>Exhibit E</u> suggests that the consumer has seven days to rescind under TILA, which is not the case. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees, or the procedural protections of §1635. It also provides for a different method of counting days and requires actual receipt of the notice by Ameriquest within the specified time.

15.     As a result, plaintiff is entitled to rescind for three years.

16.     Plaintiff has given notice of plaintiff's election to rescind. <u>Exhibit F.</u>

17.     Under 15 U.S.C. §1641, plaintiff is entitled to assert the right to rescind against any assignee of the loan.

18.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

<u>**COUNT I -- TILA CLAIM**</u>

19.     Plaintiff incorporates ¶¶ 1-15.

20.     The loan made to plaintiff violated TILA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

a.     A judgment voiding plaintiff's mortgage, capable of recordation in the public records, and binding on all defendants;

5

b.   Statutory damages for the underlying disclosure violation;

c.   If appropriate, statutory damages for failure to rescind against

Ameriquest;

d.   Attorney's fees, litigation expenses and costs.

e.   Such other or further relief as the Court deems appropriate.

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
   & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

I:\case\ameriquest-furgeson13.134\pleading\SecondAmndCmplt.wpd

6

# EXHIBIT A

Loan No. 0044556546 - 5555

# FIXED RATE NOTE

March 21, 2003                    Orange                    CA
[Date]                           [City]                    [State]

2016 S. 14TH ST., SPRINGFIELD, IL 62702
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 60,400.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is   Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  7.650 %.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
    (A)  Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    May 1, 2003.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    April 1, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:  505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

    (B)  Amount of Monthly Payments
My monthly payments will be in the amount of U.S. $428.55.

**4. BORROWER'S RIGHT TO PREPAY**
I may repay this Note at any time without a penalty.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
    (A)  Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of  fifteen  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    (B)  Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
        Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials:_____

03/20/2003 9:08:25 AM

Loan No. 0D44556546 - 5555

(D)   No Waiver by Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.
(E)   Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to
be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.
Those expenses include, for example, reasonable attorney's fees.

**7.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the
Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the
Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different
address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made
in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of
this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of
a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note
Holder may enforce its rights under this Note against each person individually or against all of us together. This means
that any one of us may be required to Pay all of the amounts owed under this Note.

**9.  WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor"
means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the
Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same
date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I
make in this Note. That Security Instrument describes how and under what conditions I may be required to make
immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
     Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it
is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person)
without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured
by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the
date of this Security Instrument.
     If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a
period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums
secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender
may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

Borrower:   MARIE E. HENDERSON                _____(Seal)         Borrower: _____(Seal)
SSN: ▨▨▨▨▨▨▨▨▨                                                            SSN:

Borrower: _____(Seal)                              Borrower: _____(Seal)
SSN:                                                                     SSN:

Initials:_____

2 of 2                                        03/20/2003 9:08:28 AM

# EXHIBIT B

Return To:

Ameriquest Mortgage Company
P.O. Box 11507,
Santa Ana, CA 92711

Prepared By:Ameriquest Mortgage Company

Alesia Buchmann
10733 Sunset Office Dr., #
260,St. Louis, MO 63127

────────────────────[Space Above This Line For Recording Data]────────────────────

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is datedMarch 21, 2003
together with all Riders to this document.
(B) "Borrower" isMARIE E. HENDERSON

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

0044556546 -5555

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014  1/01

-6(IL) (0005)
Page 1 of 15          Initials:_____          03/20/2003 9:08:26 AM
      VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 1100 Town and Country Road, Suite 200 Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated March 21, 2003
The Note states that Borrower owes Lender sixty thousand four hundred and 00/100
                                                                            Dollars
(U.S. $60,400.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 1, 2033
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider             ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider        ☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

0044556546 - 5555
Initials: _____

VMP -6(IL) (0005)    Page 2 of 15    03/20/2003 9:08:26    Form 3014 1/01

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following- described property located in the County [Type of Recording Jurisdiction] of SANGAMON                                                [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 22-03-257-012                   which currently has the address of
2016 S. 14TH ST.                                                        [Street]
SPRINGFIELD                               [City], Illinois 62702       [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0044556546-5555

Initials: _____

-6(IL) (0005)                          Page 3 of 15   03/20/2003 9:08:26 AM Form 3014   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0044556546 -5555

Initials:_____



due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

0044556546 -5555

Initials _____

 -6(IL) (9904) 01          Page 5 of 15          03/20/2003 9:08:26          Form 3014   3/99

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0044556546 - 5555
Initials:_____

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0044556546 - 5555

Initials:_____

ⓜ -6(IL) (0005)    Page 10 of 15    03/20/2003 9:08:26    Form 3014  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0044556546 - 5555

Initials _____

 -6(IL) (0005)    Page 11 of 15    03/20/2003 9:08:26    Form 3014   1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
MARIE E. HENDERSON                 -Borrower

_____

_____ (Seal)
                                   -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                                  -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                                  -Borrower

_____ (Seal)     _____ (Seal)
                     -Borrower                                  -Borrower

0044556546-5555

-6(IL) (0005)          Page 14 of 15   03/20/2003  9:08:26 AM   Form 3014   1/01

# EXHIBIT C

Settlement Statement
Optional Frm for
Tran\_actions without Sellers

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491

WLI

| Name & Address of Borrower: | Name & Address of Lender: |
|---|---|
| MARIE E. HENDERSON | Ameriquest Mortgage Company |
| | 10733 Sunset Office Dr., # 260 |
| 2016 S. 14TH ST.   SPRINGFIELD, IL 62702 | St. Louis, MO 63127 |
| Property Location: (if different from above) | Settlement Agent |
| 2016 S. 14TH ST., SPRINGFIELD, IL 62702 | Place of Settlement: |

### L.   Settlement Charges

| 800. Items Payable in Connection with Loan | | M.   Disbursement to Others | | |
|---|---|---|---|---|
| 801. Loan origination fee    % to | | | | |
| 802. Loan discount  1.875  % to  Ameriquest Mortgage Company | | Loan Number:  0044556546 - 5555 | Settlement Date: Estimated  03/28/2003 | |
| 803. Appraisal fee to  ALLEN APPRAISAL | $1,132.50 | | | |
| 804. Credit report to | $250.00 | 1501.  CITI | (W) | $2,127.00 |
| 805. Inspection fee to | | | | |
| 806. | | 1502.  HOMEQ | (W) | $13,707.00 |
| 807. | | | | |
| 808. Yield Spread Premium to | | 1503.  HOMEQ | (W) | $38,300.00 |
| 809. | | | | |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | | 1504.  UNVL/CITI | (W) | $1,690.00 |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $70.00 | | | |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $16.00 | 1505. | | |
| 813. Admin to Ameriquest Mortgage Company | $526.00 | | | |
| 814. Doc. Prep. Fee to | $239.00 | 1506. | | |
| 815. Credit Report Fee to | | | | |
| 816. Origination Fee   % to | | 1507. | | |
| 817. Application Fee to  Ameriquest Mortgage Company | | | | |
| 818. Underwriting Fee to | $360.00 | 1508. | | |
| 819. Service Provider Fee to | | | | |
| 820. Processing Fee to | | 1509. | | |
| 821. Underwriting Fee to | | | | |
| 822. Apprsl/Prop Eval Fee to | | 1510. | | |
| **900. Items Required by Lender to be Paid in Advance** | | 1511. | | |
| 901. Interest from  03/28/2003  to  04/01/2003  @ $12.66 per day | $50.64 | | | |
| 902. Mortgage Insurance premium for        months to | | 1512. | | |
| 903. Hazard Ins prem to | | | | |
| 904. Flood Ins prem to | | 1513. | | |
| **1000. Reserves Deposited with Lender** | | | | |
| 1001. Hazard Insurance 4  months @ $ 40.50 per month | $162.00 | 1514. | | |
| 1002. Mortgage Insurance     months @ $     per month | | | | |
| 1003. City property taxes     months @ $     per month | | 1515. | | |
| 1004. County prop. taxes 4 months @ $  59.54 per month | | | | |
| 1005. Annual assess.    months @ $     per month | $238.16 | | | |
| 1006. Flood     months @ $     per month | | 1520. TOTAL DISBURSED (enter on line 1603) | | $55,824.00 |
| 1007.            months @ $        per month | | | | |
| 1008. | | | | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee to  A-INTEGRITY | | | | |
| 1102. Abstract or title search to  NORTHWEST TITLE AND | $200.00 | | | |
| 1103. Title examination to | $150.00 | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | Total Wire:     $57,055.70 | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| 1108. Title insurance to  NORTHWEST TITLE AND | $355.00 | | | |
| 1109. Lender's coverage      $ | | | | |
| 1110. Owner's coverage      $ | | | | |
| 1111. Settlement/Disbursement fee to  NORTHWEST TITLE | | | | |
| 1112. Escrow Fee to | $175.00 | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Recording fees | | | | |
| 1202. City/county tax/stamps | $136.00 | **N.   NET SETTLEMENT** | | |
| 1203. State tax/ stamps | | | | |
| 1204. State specific fee | | 1600. Loan Amount | | 60,400.00 |
| 1205. State specific fee | | | | |
| **1300. Additional Settlement Charges** | | 1601. Plus Cash/Check from Borrower | | |
| 1301. Demand to | | | | |
| 1302. Pest Inspection to | | 1602. Minus Total Settlement Charges (line 1400) | | $4,200.30 |
| . Survey Fee | | | | |
| Reconveyance Fee to | | 1603. Minus Total Disbursements to Others (line 1520) | | $55,824.00 |
| 1305. Courier Fee | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | | $375.70 |
| | $40.00 | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | $4,200.30 | | | |

Borrower(s) Signature(s):

X

Public reporting burden        for this collection of information is estimated to average 0.35 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Reports Management Officer, Office of Information Policies and Systems, U.S. Department of Housing and Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget, Paperwork Reduction Project (2502-0491), Washington, D.C. 20503. Do not send this completed form to either of these addressees.

## Instructions for completing form HUD-1A

**Note:** This form is issued under authority of the Real Estate Settlement Procedures Act (RESPA). 12 U.S.C. 2601 et seq. The regulation for RESPA is Regulation X, codified as 24 CFR 3500, and administered by the Department of Housing and Urban Development (HUD), Regulation Z referred to in the next paragraph is the regulation implementing the Truth in Lending Act (TILA), 15 U.S.C. 1601 et seq. and codified as 12 CFR part 226.

HUD-1A is an optional form that may be used for refinancing and subordinate lien federally related mortgage loans, as well as for any other one-party transaction that does not involve the transfer of title to residential real property. The HUD-1 form may also be used for such transactions, by utilizing the borrower's side of the HUD-1 and following the relevant parts of the instructions set forth in Appendix A of Regulation X. The use of either the HUD-1 or HUD-1A is not mandatory for open-end lines of credit (home-equity plans), as long as the provisions of Regulation Z are followed.

### Background

The HUD-1A settlement statement is to be used as a statement of actual charges and adjustments to be given to the borrower at settlement. The instructions for completion of the HUD-1A are for the benefit of settlement agent who prepares the statement; the instructions are not a part of the statement and need not be transmitted to the borrower. There is no objection to using the HUD-1A in transactions in which it is not required, and its use in open-end lines of credit transactions (home-equity plans) is encouraged. It may not be used as a substitute for a HUD-1 in any transaction in which there is a transfer of title and a first lien is taken as security.

Refer to the "definitions" section of Regulation X for specific definitions of terms used in these instructions.

### General Instructions

Information and amounts may be filled in by typewriter, hand printing, computer printing, or any other method producing clear and legible results. Additional pages may be attached to the HUD-1A for the inclusion of customary recitals and information used locally for settlements or if there are insufficient lines on the HUD-1A.

The settlement agent shall complete the HUD-1A to itemize all charges imposed upon the borrower by the lender, whether to be paid at settlement or outside of settlement, and any other charges that the borrower will pay for at settlement. In the case of "no cost" or "no point" loans, these charges include any payments the lender will make to affiliated or independent settlement service providers relating to this settlement. These charges shall be included on the HUD-1A, but marked "P.O.C." for "paid outside of closing," and shall not be used in computing totals. Such charges also include indirect payments or back-funded payments to mortgage brokers that arise from the settlement transaction. When used, "P.O.C." should be placed in the appropriate lines next to the identified item, *not in the columns themselves*.

Blank lines are provided in Section L for any additional settlement charges. Blank lines are also provided in Section M for recipients of all or portions of loan proceeds. The names of the recipients of settlement charges in Section L and the names of the recipients of the loan proceeds in Section M should be set forth on the blank lines.

### Line item instructions

The identification information at the top of the HUD-1A should be completed as follows:

The borrower's name and address is entered in the space provided. If the property securing the loan is different from the borrower's address, the address or other location information on the property should be entered in the space provided. The loan number is the lender's identification number for the loan. The settlement date is the date of settlement in accordance with §3500.2 of Regulation X, not the end of any applicable rescission period. The name and address of the lender should be entered in the space provided.

**Section L. Settlement Charges.** This section of the HUD-1A is similar to section L of the HUD-1, with the deletion of lines 700 through 704, relating to real estate broker commissions. The instructions for filling out the HUD-1 as set forth in Appendix A of Regulation X proved additional information regarding Section L, if needed.

**Line 1400** in the HUD-1A is for the total settlement charges charged to the borrower. Enter this total on line 1602 as well. This total should include Section L amounts from additional pages, if any are attached to this HUD-1A.

**Section M. Disbursement to Others.** This section is used to list payees, other than the borrower, of all or portions of the loan proceeds (including the lender, if the loan is paying off a prior loan made by the same lender), when the payee will be paid directly out of the settlement proceeds. It is not used to list payees of settlement charges, nor to list funds disbursed directly to the borrower, even if the lender knows the borrower's intended use of the funds.

For example, in a refinancing transaction, the loan proceeds are used to pay off an existing loan. The name of the lender for the loan being paid off and the pay-off balance would be entered in Section M. In a home improvement transaction when the proceeds are to be paid to the home improvement contractor, the name of the contractor and the amount paid to the contractor would be entered in Section M. In a consolidation loan, or when part of the loan proceeds is used to pay off other creditors, the name of each creditor and the amount paid to that creditor would be entered in Section M. If the proceeds are to be given directly to the borrower and the borrower will use the proceeds to pay off existing obligations, this would not be reflected in Section M.

**Section N. Net Settlement.** Line 1600 normally sets forth the principal amount of the loan as it appears on the related note for this loan. In the event this form is used for an open-ended home equity line whose approved amount is greater than the initial amount advanced at settlement, the amount shown on Line 1600 will be the loan amount advanced at settlement. Line 1601 is used for all settlement charges that are both included in the totals for lines 1400 and 1602 and are not financed as part of the principal amount of the loan. This is the amount normally received by the lender from the borrower at settlement, which would occur when some or all of the settlement charges were paid in cash by the borrower at settlement, instead of being financed as part of the principal amount of the loan. Failure to include any such amount in line 1601 will result in an error in the amount calculated on line 1604. P.O.C. amounts should not be included in line 1601.

Line 1602 is the total amount from line 1400.
Line 1603 is the total amount from line 1520.
Line 1604 is the amount disbursed to the borrower. This is determined by adding together the amounts for lines 1600 and 1601, and then subtracting any amounts listed on lines 1602 and 1603.

# EXHIBIT D

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Ameriquest Mortgage Company
10733 Sunset Office Dr., # 260
St. Louis, MO 63127
(314)821-9393

[ ] Preliminary      [X] Final

Borrowers: MARIE E. HENDERSON

Broker License:

Address:      2016 S. 14TH ST.
City/State/Zip:  SPRINGFIELD, IL 62702

Type of Loan: FIXED RATE
Date:  March 21, 2003

Loan Number: 0044556546 - 5555

Property:  2016 S. 14TH ST., SPRINGFIELD, IL 62702

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.157 % | $ 96,782.49 | $ 57,490.86 | $ 154,273.35 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $428.55 | 05/01/2003 | | | |
| 1 | $423.90 | 04/01/2033 | | | |

VARIABLE RATE FEATURE:
[ ] Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:  You are giving a security interest in the property located at: 2016 S. 14TH ST., SPRINGFIELD, IL 62702

ASSUMPTION:  Someone buying this property [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:  You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES:  If a payment is late, you will be charged  5.000%  of the overdue payment .

PREPAYMENT:  If you pay off your loan early, you
[ ] may  [X] will not  have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

's hereby acknowledge reading and receiving a complete copy of this disclosure.

_____
ower MARIE E. HENDERSON                        Date          Borrower                                    Date

_____
Borrower                                       Date          Borrower                                    Date

TIL1 (Rev. 7/01)          **Borrower Copy**

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER: Ameriquest Mortgage Company
10733 Sunset Office Dr., # 260
St. Louis, MO 63127
(314)821-9393

[ ] Preliminary   [X] Final

Borrowers: MARIE E. HENDERSON

Broker License:

Type of Loan:  FIXED RATE
Date:  March 21, 2003

Address:      2016 S. 14TH ST.
City/State/Zip:  SPRINGFIELD, IL 62702

Loan Number:  0044556546 - 5555

Property:   2016 S. 14TH ST., SPRINGFIELD, IL 62702

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.157 % | $ 96,782.49 | $ 57,490.86 | $ 154,273.35 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $428.55 | 05/01/2003 | | | |
| 1 | $423.90 | 04/01/2033 | | | |

**VARIABLE RATE FEATURE:**
[ ] Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**  You are giving a security interest in the property located at: 2016 S. 14TH ST., SPRINGFIELD, IL 62702

**ASSUMPTION:**  Someone buying this property  [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**  You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

**LATE CHARGES:**  If a payment is late, you will be charged  5.000%  of the overdue payment.

**PREPAYMENT:**  If you pay off your loan early, you
[ ] may   [X] will not   have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

We hereby acknowledge reading and receiving a complete copy of this disclosure.

| Borrower MARIE E. HENDERSON | Date | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

Original

# EXHIBIT E

# NOTICE OF RIGHT TO CANCEL

LENDER:    Ameriquest Mortgage Company

DATE:   March 21, 2003
LOAN NO.:   0044556546 - 5555
TYPE:   FIXED RATE

BORROWER(S): MARIE E. HENDERSON

ADDRESS:    2016 S. 14TH ST.
CITY/STATE/ZIP:   SPRINGFIELD, IL 62702

PROPERTY:   2016 S. 14TH ST.
            SPRINGFIELD, IL 62702

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

ENTER DOCUMENT SIGNING DATE
03/28/03

; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200
Orange, CA 92868

ATTN:  FUNDING
PHONE:  (714)541-9960
FAX:    (714)245-0857

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

ENTER FINAL DATE TO CANCEL
03/24/03

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____
SIGNATURE

_____
DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____
BORROWER/OWNER MARIE E. HENDERSON    Date

_____
BORROWER/OWNER    Date

_____
BORROWER/OWNER    Date

_____
BORROWER/OWNER    Date

1004-NRC (Rev 6/99)

LENDER COPY

03/20/2003 9:07:59 AM

# EXHIBIT G

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0044556546 - 5555          Borrower(s): MARIE E. HENDERSON

Date: March 21, 2003

You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason. This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you. No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

> Ameriquest Mortgage Company
> 1100 Town and Country Road, Suite 200   Orange, CA 92868
>
> ATTN: Funding Department
> Phone: (714)541-9960
> Fax: (714)245-0857

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

Borrower/Owner  MARIE E. HENDERSON _____     Date _____

Borrower/Owner _____     Date _____

Borrower/Owner _____     Date _____

Borrower/Owner _____     Date _____

---

## REQUEST TO CANCEL

I/We want to cancel loan # _____.

Borrower/Owner Signature _____     Date _____

650 (10/00)                     BORROWER COPY                     03/20/2003 9:08:26 AM

# ONE WEEK CANCELLATION PERIOD

Loan Number: 0044556546 - 5555          Borrower(s): MARIE E. HENDERSON

Date: March 21, 2003

You have the right under Federal or state law to three (3) business days during which you can cancel your loan for any reason. This right is described in the Notice of Right to Cancel you have received today.

Ameriquest Mortgage Company believes that a loan secured by your home is one of the most important financial decisions you can make. To give you more time to study your loan documents, obtain independent advice and/or shop for a loan that you believe suits you better, we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you. No money will be disbursed before 10:00 a.m. on the first business day after this period expires. Business days are Monday through Friday, excluding federal legal holidays.

For example, if your loan closes on a Tuesday, you could cancel from that Tuesday through midnight of the following Monday.

If you want to cancel, you must do so in writing and we must receive your request before midnight on the day the cancellation period ends. You may cancel by signing and dating in the request to cancel box below or by using any other written statement that provides your loan number and states your desire to cancel your loan. The written statement must be signed and dated by any one borrower. Your request must be delivered to:

Ameriquest Mortgage Company
1100 Town and Country Road, Suite 200   Orange, CA 92868

ATTN: Funding Department
Phone: (714)541-9960
Fax: (714)245-0857

When you sign below, it means that you have received and read a copy of this notice and you understand what is printed above.

I/We hereby acknowledge receiving a copy of this notice on the date signed below.

Borrower/Owner  MARIE E. HENDERSON _____      _____ Date

Borrower/Owner _____      _____ Date

Borrower/Owner _____      _____ Date

Borrower/Owner _____      _____ Date

---

## REQUEST TO CANCEL

I/We want to cancel loan # _____

Borrower/Owner Signature _____      _____ Date

# APPENDIX 4

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email: edcombs@aol.com
### www.edcombs.com
November 9, 2004

**BY MESSENGER**

Ameriquest Mortgage Corporation
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

            Re:    Notice of rescission, claim and lien, Maria Furgeson, 2016 South 14th Street, Springfield, IL 62702.

Ladies/ Gentlemen:

        The above client hereby gives notice that she rescinds the above loan for noncompliance with the Truth in Lending Act, including without limitation provision of a misdated notice of the right to cancel.

        Please be further advised that we have been retained by the above client to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

        If you claim that the owner of the loan is other than yourself, please identify the owner pursuant to 15 U.S.C. §1641(d).

        Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

                        Sincerely,

                        Daniel A. Edelman

cc: client

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on November 9, 2004.

_____
Daniel A. Edelman

# APPENDIX 5

## DECLARATION OF MICHAEL J. ASCHENBRENER

I declare under penalty of perjury under the laws of the United States and Illinois that the foregoing is true and correct:

1.     On February 7, 2008, Sarah Andrus of Buchalter Nemer sent a list of borrowers represented by Edelman, Combs, Latturner & Goodwin, LLC ("ECL&G") and the relevant holders/investors of those borrowers' loans to a now former ECL&G attorney, Al F. Hofeld, Jr. via email.

2.     This list identified several loans as being owned by Washington Mutual Bank.

3.     Karen Stevenson, counsel for WM Specialty Mortgage, LLC, informed me in April 2008 that all loans on the above-referenced list held by Washington Mutual Bank are actually held by WM Specialty Mortgage, LLC and that all "Washington Mutual Bank" entries on the list should state "WM Specialty Mortgage, LLC."

4.     Attached to this declaration and incorporated by reference is a true and correct copy of a forward of the email from Sarah Andrus to Al F. Hofeld, Jr. and the above-referenced list, which was included as an attachment to Ms. Andrus' email.


Executed this 8th day of August, 2008.

Michael J. Aschenbrener

## Michael Aschenbrener

| | |
|---|---|
| **From:** | Al Hofeld |
| **Sent:** | Friday, February 08, 2008 9:10 AM |
| **To:** | Aziza Khatoon |
| **Cc:** | Tara Goodwin; Cathleen M. Combs; Michael Aschenbrener; Alana J. Parvey |
| **Subject:** | FW: Ameriquest/MDL |
| **Attachments:** | Investor Info - Edelman.pdf |

A,

Here's a new list of our clients' loans' investors.   I've not exaimed it closely yet, but it looks like there's new information here.  Please save to TM in 16124 and log and file the hard copy.

Thanks a lot,

Al

---

**From:** Andrus, Sarah [mailto:SANDRUS@buchalter.com]
**Sent:** Thursday, February 07, 2008 5:50 PM
**To:** Al Hofeld
**Subject:** Ameriquest/MDL

Al:  Following the recent conference calls and correspondence among counsel in the above referenced action, attached please find data related to your clients' respective loans.  Additional information to follow.  Thanks - Sarah

Sarah K. Andrus
Buchalter Nemer
1000 Wilshire Blvd., Fifteenth Floor
Los Angeles, CA 90017
Direct Dial:  (213) 891-5145
Facsimile:   (213) 896-0400

For policies governing this e-mail please see www.buchalter.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

8/8/2008

*Edelman*

| LOAN NO. | PLAINTIFFS | Investor | Trustee if applicable |
|---|---|---|---|
| 0069529667 | Adams Glenn | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R9 | Deutsche Bank National Trust Company |
| 0069529667 | Adams Laverne | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R9 | Deutsche Bank National Trust Company |
| 0108022369 | Addison Suzette | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R3 | Deutsche Bank National Trust Company |
| 0103988804 | Adkins James | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2005-R2 | Deutsche Bank National Trust Company |
| 0103988804 | Adkins Sherry | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2005-R2 | Deutsche Bank National Trust Company |
| 0136200888 | Albarran Virginia | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R11 | Deutsche Bank National Trust Company |
| 0136721065 | Almond Christopher | Ameriquest Mortgage Securities Inc Asset-Backed Pass Through Certificates Series 2006-R1 | Deutsche Bank National Trust Company |
| 0083573527 | Anderson Dean | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-MCW1 | Wells Fargo Bank N. A. |
| 0038885547 | Anderson Dean | Washington Mutual Bank | N/A |
| 0083573527 | Anderson Diane | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-MCW1 | Wells Fargo Bank N. A. |
| 0038885547 | Anderson Diane | Washington Mutual Bank | N/A |
| 0120808688 | Anthony Derek | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R6 | Deutsche Bank National Trust Company |
| 0120808688 | Anthony Patrina | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R6 | Deutsche Bank National Trust Company |
| 0106588627 | Archer Carlos | Household Finance | N/A |
| 0106588627 | Archer Carolyn | Household Finance | N/A |
| 0120067921 | Balark Eric | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R4 | Deutsche Bank National Trust Company |
| 0099058448 | Battle Mary | GMAC/RFC | N/A |
| 0067116327 | Beane Robert | Ameriquest Funding II LLC | N/A |
| 0067116327 | Beane Virginia | Ameriquest Funding II LLC | N/A |
| 0073073751 | Belfeld Marianne | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2005-WCW1 | Wells Fargo Bank N. A. |
| 0073073751 | Belfeld Stuart | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2005-WCW1 | Wells Fargo Bank N. A. |
| 0132542861 | Belford Dennis | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R10 | Deutsche Bank National Trust Company |
| 0104425285 | Bergquist Sandra | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R4 | Deutsche Bank National Trust Company |
| 0103670881 | Besterfield James | Washington Mutual Bank | N/A |

1

*Edelman*

| 0109840405 | Billings Jacob | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R4 | Deutsche Bank National Trust Company |
|---|---|---|---|
| 0109840405 | Billings Taylor | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R4 | Deutsche Bank National Trust Company |
| 0061763652 | Black David | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-WHQ1 | Wells Fargo Bank N. A. |
| 0061763652 | Black Rose | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-WHQ1 | Wells Fargo Bank N. A. |
| 0100784800 | Blackburn Joseph | Washington Mutual Bank | N/A |
| 0100784800 | Blackburn Sherry | Washington Mutual Bank | N/A |
| 0057018558 | Blain Christena | Goldman Sachs Mortgage | N/A |
| 0057018558 | Blain Thomas | Goldman Sachs Mortgage | N/A |
| 0125259507 | Booher Steven | Citigroup Global Markets | N/A |
| 0133341487 | Bothwell Cheryl | Ameriquest Funding II LLC | N/A |
| 0133341487 | Bothwell Terry | Ameriquest Funding II LLC | N/A |
| 0056719271 | Bowden Brenda | Washington Mutual Bank | N/A |
| 0056719271 | Bowden Darron | Washington Mutual Bank | N/A |
| 0086694684 | Bricker Antony | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R9 | Deutsche Bank National Trust Company |
| 0086694684 | Bricker Michelle | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R9 | Deutsche Bank National Trust Company |
| 0100645704 | Britt Robert | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R1 | Deutsche Bank National Trust Company |
| 0100645704 | Britt Tammy | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R1 | Deutsche Bank National Trust Company |
| 0069107308 | Brown Calvin | Washington Mutual Bank | N/A |
| 0069107308 | Brown Dora | Washington Mutual Bank | N/A |
| 0101981686 | Brown Kenneth | Merrill Lynch (Cendant) | N/A |
| 0101981686 | Brown Monica | Merrill Lynch (Cendant) | N/A |
| 0083227264 | Buckner Jacqueline | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2004-R8 | Deutsche Bank National Trust Company |
| 0070729785 | Bumpers Elizabeth | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2004-R4 | Deutsche Bank National Trust Company |
| 0070729785 | Bumpers Henry | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2004-R4 | Deutsche Bank National Trust Company |
| 0066806142 | Burgess Ernest | Washington Mutual Bank | N/A |
| 0066806142 | Burgess Peggy | Washington Mutual Bank | N/A |
| 0113169981 | Burris Brett | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R4 | Deutsche Bank National Trust Company |
| 0113169981 | Burris Christine | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R4 | Deutsche Bank National Trust Company |
| 0099195083 | Campau Kathryn | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R1 | Deutsche Bank National Trust Company |
| 0099195083 | Campau Thomas | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R1 | Deutsche Bank National Trust Company |

*Edelman*

| 0077170405 | Carney Veronica | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2004-R6 | Deutsche Bank National Trust Company |
|---|---|---|---|
| 0128413408 | Carter Evie | Washington Mutual Bank | N/A |
| 0128413408 | Carter James | Washington Mutual Bank | N/A |
| 0078232485 | Chaumley Sarah | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-MCW1 | Wells Fargo Bank N. A. |
| 0123866485 | Childres Beverly | Washington Mutual Bank | N/A |
| 0106221526 | Churchill Dale | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R5 | Deutsche Bank National Trust Company |
| 0106221526 | Churchill Kelley | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R5 | Deutsche Bank National Trust Company |
| 0112275508 | Clarke Christopher | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R5 | Deutsche Bank National Trust Company |
| 0112275508 | Clarke Karie | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R5 | Deutsche Bank National Trust Company |
| 0091830208 | Clay Mildred | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R10 | Deutsche Bank National Trust Company |
| 0126406008 | Cole Brenda | Citigroup Global Markets | N/A |
| 0126406008 | Cole Robert | Citigroup Global Markets | N/A |
| 0061679734 | Conner Cherie | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-MHQ1 | Wells Fargo Bank N. A. |
| 0061679734 | Conner Douglas | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-MHQ1 | Wells Fargo Bank N. A. |
| 0059459719 | Cowles Terry | Washington Mutual Bank | N/A |
| 0059459719 | Cowles Thelma | Washington Mutual Bank | N/A |
| 0103541462 | Daege Jonathan | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R1 | Deutsche Bank National Trust Company |
| 0100970763 | Davis Donya | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R1 | Deutsche Bank National Trust Company |
| 0061470613 | Davis Janice | Argent Securities Inc Asset Backed Pass Through Certificates Series 2004-W11 | Deutsche Bank National Trust Company |
| 0061470613 | Davis Michael | Argent Securities Inc Asset Backed Pass Through Certificates Series 2004-W11 | Deutsche Bank National Trust Company |
| 0100970763 | Davis Sonja | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R1 | Deutsche Bank National Trust Company |
| 0091594127 | Diggins Janet | Washington Mutual Bank | N/A |
| 0088403308 | Doolittle Babette | Washington Mutual Bank | N/A |
| 0088403308 | Doolittle Edward | Washington Mutual Bank | N/A |
| 0135511566 | Duchene David John | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R11 | Deutsche Bank National Trust Company |
| 0120485628 | Dumas Brenda | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R6 | Deutsche Bank National Trust Company |

*Edelman*

| 0120485628 | Dumas Floyd | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R6 | Deutsche Bank National Trust Company |
|---|---|---|---|
| 0137860185 | Dussia Lori Ann | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R11 | Deutsche Bank National Trust Company |
| 0069203305 | Eggert John | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R3 | Deutsche Bank National Trust Company |
| 0058275090 | Eson Bryan | Washington Mutual Bank | N/A |
| 0058275090 | Eson Karen | Washington Mutual Bank | N/A |
| 0050472182 | Everhart Margie | Argent Securities Inc Asset-Backed Pass Through Certificates Series 2003-W3 | Deutsche Bank National Trust Company |
| 0050472182 | Everhart Terry | Argent Securities Inc Asset-Backed Pass Through Certificates Series 2003-W3 | Deutsche Bank National Trust Company |
| 0073138604 | Filian Alicia Margarita | Washington Mutual Bank | N/A |
| 0073138604 | Filian Carlos | Washington Mutual Bank | N/A |
| 0067486308 | Fleming Byron | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R8 | Deutsche Bank National Trust Company |
| 0067486308 | Fleming Vicki | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R8 | Deutsche Bank National Trust Company |
| 0102233269 | Fonseca Cliff | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R3 | Deutsche Bank National Trust Company |
| 0102233269 | Fonseca Debora | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R3 | Deutsche Bank National Trust Company |
| 0054559836 | Foster Charles | Argent Securities Inc Asset Backed Pass Through Certificates Series 2004-W1 | Deutsche Bank National Trust Company |
| 0093095602 | Freeberg Marianne | Household Finance | N/A |
| 0093095602 | Freeberg Oscar | Household Finance | N/A |
| 0087251104 | Frost Karleen | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R10 | Deutsche Bank National Trust Company |
| 0056296155 | Garcia Nancy | Argent Securities Inc Asset-Backed Pass Through Certificate Series 2004-W5 | Deutsche Bank National Trust Company |
| 0128455003 | Gillespie Cindy | Washington Mutual Bank | N/A |
| 0140424961 | Goods Tammy | Ameriquest Mortgage Securities Inc Asset-Backed Pass Through Certificates Series 2006-R1 | Deutsche Bank National Trust Company |
| 0116230202 | Gould Jason | Washington Mutual Bank | N/A |
| 0055758171 | Grabs Fredrich | Washington Mutual Bank | N/A |
| 0072308471 | Gray Lamar | Lehman Brothers Bank | N/A |
| 0072308471 | Gray Verna Joyce | Lehman Brothers Bank | N/A |
| 0055169775 | Green Viola | Argent Securities Inc Asset-Backed Pass Through Certificate Series 2004-W5 | Deutsche Bank National Trust Company |
| 0119883924 | Guydon Kevin | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R6 | Deutsche Bank National Trust Company |
| 0119883924 | Guydon Rita | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R6 | Deutsche Bank National Trust Company |

*Edelman*

| 0037122983 | Harris Castella Williams | Ameriquest Mortgage Securities Inc Quest Trust 2003 X1 Asset Backed Pass Through Certificates Series 2003-X1 | Deutsche Bank National Trust Company |
|---|---|---|---|
| 0078473709 | Harris Melissa | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R7 | Deutsche Bank National Trust Company |
| 0111248043 | Harris Norman | Bear Sterns Mortgage Cap/Amresco | N/A |
| 0111248043 | Harris Sandra | Bear Sterns Mortgage Cap/Amresco | N/A |
| 0114642309 | Hawkins Nile | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R5 | Deutsche Bank National Trust Company |
| 0138967062 | Hayden Nancy | Ameriquest Mortgage Securities Inc Quest Trust 2006 X1 Asset Backed Certificates Pass Through Series 2006-X1 | Deutsche Bank National Trust Company |
| 0138967062 | Hayden Terry | Ameriquest Mortgage Securities Inc Quest Trust 2006 X1 Asset Backed Certificates Pass Through Series 2006-X1 | Deutsche Bank National Trust Company |
| 0074193848 | Haynes Dana | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-X3 | Deutsche Bank National Trust Company |
| 0066454836 | Heard Glories | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2005-WHQ1 | Wells Fargo Bank N. A. |
| 0066454836 | Heard Renza | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2005-WHQ1 | Wells Fargo Bank N. A. |
| 0044556546 | Henderson Marie (Furgeson) | Washington Mutual Bank | N/A |
| 0069293702 | Hodor Steven | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R3 | Deutsche Bank National Trust Company |
| 0069293702 | Hodor Valerie | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R3 | Deutsche Bank National Trust Company |
| 0095230520 | Holzmeister Michael | Merrill Lynch (Cendant) | N/A |
| 0095230520 | Holzmeister Michael | Merrill Lynch (Cendant) | N/A |
| 0095230520 | Holzmeister Michael | Merrill Lynch (Cendant) | N/A |
| 0121966626 | Horne Mary Ann | Washington Mutual Bank | N/A |
| 0071058671 | Howze Tregg | Park Place Securities, Inc Asset Backed Pass Through Certificates Series PPSI 2005-WHQ2 | Wells Fargo Bank N. A. |
| 0071058671 | Howze Wanda | Park Place Securities, Inc Asset Backed Pass Through Certificates Series PPSI 2005-WHQ2 | Wells Fargo Bank N. A. |
| 0095977864 | Igaz Connie | WASHINGTON MUTUAL BANK | N/A |
| 0095977864 | Igaz Connie | Washington Mutual Bank | N/A |
| 0095977864 | Igaz Michael | WASHINGTON MUTUAL BANK | N/A |
| 0095977864 | Igaz Michael | Washington Mutual Bank | N/A |
| 0080810195 | Ishmael Babatunde | Park Place Securities, Inc Asset Backed Pass Through Certificates Series PPSI 2005-WHQ4 | Wells Fargo Bank N. A. |
| 0080810195 | Ishmael Seidat | Park Place Securities, Inc Asset Backed Pass Through Certificates Series PPSI 2005-WHQ4 | Wells Fargo Bank N. A. |
| 0123705501 | Jeffress Pamela | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R7 | Deutsche Bank National Trust Company |

*Edelman*

| 0123705501 | Jeffress Scott | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R7 | Deutsche Bank National Trust Company |
|---|---|---|---|
| 0054647052 | Jenkins Deborah H. | Argent Securities Inc Asset Backed Pass Through Certificates Series 2004-W1 | Deutsche Bank National Trust Company |
| 0060542834 | Jiles Velma Jean | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-WCW2 | Wells Fargo Bank N. A. |
| 0041552258 | Jimenez Melinda | Washington Mutual Bank | N/A |
| 0041552258 | Jimenez Nelson | Washington Mutual Bank | N/A |
| 0075128322 | Johnson Andrew | Household Finance | N/A |
| 0075128322 | Johnson Barbara | Household Finance | N/A |
| 0105748222 | Johnson Karen | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2005-R2 | Deutsche Bank National Trust Company |
| 0061001616 | Johnson Lisa | Argent Securities Inc Asset Backed Pass Through Certificates Series 2004-W10 | Deutsche Bank National Trust Company |
| 0061001616 | Johnson Philip | Argent Securities Inc Asset Backed Pass Through Certificates Series 2004-W10 | Deutsche Bank National Trust Company |
| 0105748222 | Johnson Stanley | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2005-R2 | Deutsche Bank National Trust Company |
| 0101022929 | Jones Monica | GMAC/RFC | N/A |
| 0100101245 | Jude Bobby | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2004-R12 | Deutsche Bank National Trust Company |
| 0100101245 | Jude Kellie | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2004-R12 | Deutsche Bank National Trust Company |
| 0111659884 | Kanter Alan | Bear Sterns Mortgage Cap/Amresco | N/A |
| 0111659884 | Kanter Jane | Bear Sterns Mortgage Cap/Amresco | N/A |
| 0128708765 | Karlin David | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R9 | Deutsche Bank National Trust Company |
| 0035972652 | Key Earl | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2002-B | Deutsche Bank National Trust Company |
| 0088302120 | King Christina | Washington Mutual Bank | N/A |
| 0088302120 | King Christopher | Washington Mutual Bank | N/A |
| 0071655781 | Kosla Christine | Household Finance | N/A |
| 0071655781 | Kosla Joseph | Household Finance | N/A |
| 0074193848 | Krise George | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-X3 | Deutsche Bank National Trust Company |
| 0075414789 | Kukla Mike | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2004-R5 | Deutsche Bank National Trust Company |
| 0053583357 | Landgren David | ARSI Asset Backed Pass Through Certificates Series 2004-W6 | Deutsche Bank National Trust Company |
| 0087789384 | Leclerc Renee | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-MHQ1 | Wells Fargo Bank N. A. |
| 0123800567 | Lehr Mark | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R7 | Deutsche Bank National Trust Company |
| 0123800567 | Lehr Patricia | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R7 | Deutsche Bank National Trust Company |

6

*Edelman*

| 0129516969 | Lewis Patrick | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R9 | Deutsche Bank National Trust Company |
|---|---|---|---|
| 0129516969 | Lewis Violata | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R9 | Deutsche Bank National Trust Company |
| 0089427223 | Luedtke Christine | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R10 | Deutsche Bank National Trust Company |
| 0089427223 | Luedtke Roger | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R10 | Deutsche Bank National Trust Company |
| 0106171549 | Lurry-Payne Angela | Household Finance | N/A |
| 0108082066 | Magliano Judith | Washington Mutual Bank | N/A |
| 0108082066 | Magliano Mike | Washington Mutual Bank | N/A |
| 0075090514 | Manier Marlon | Park Place Securities, Inc Asset Backed Pass Through Certificates Series PPSI 2005-WHQ3 | Wells Fargo Bank N. A. |
| 0075090514 | Manier Tanya | Park Place Securities, Inc Asset Backed Pass Through Certificates Series PPSI 2005-WHQ3 | Wells Fargo Bank N. A. |
| 0125579425 | Martin Christine | Washington Mutual Bank | N/A |
| 0051521664 | Martin Johnny | Washington Mutual Bank | N/A |
| 0125579425 | Martin Norman | Washington Mutual Bank | N/A |
| 0129118782 | Martinez Arturo | Washington Mutual Bank | N/A |
| 0129118782 | Martinez Maria | Washington Mutual Bank | N/A |
| 0048603070 | McGowan Sandra | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2003-13 | Deutsche Bank National Trust Company |
| 0124524000 | McKimmy Angelique | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R7 | Deutsche Bank National Trust Company |
| 0124524000 | McKimmy Ernie | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R7 | Deutsche Bank National Trust Company |
| 0120067921 | McMiller Michelle | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R4 | Deutsche Bank National Trust Company |
| 0110926862 | Mikowski Joseph | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R3 | Deutsche Bank National Trust Company |
| 0110926862 | Mikowski Patricia | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R3 | Deutsche Bank National Trust Company |
| 0081183584 | Miller Benjamin | Washington Mutual Bank | N/A |
| 0081183584 | Miller Katherine | Washington Mutual Bank | N/A |
| 0037658861 | Mills Delois | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2002-4 | Deutsche Bank National Trust Company |
| 0093481703 | Montgomery Michele | Ameriquest Mortgage Securities, Inc Quest Trust 2005 X1 Asset Backed Certificate Series 2005-X1 | Deutsche Bank National Trust Company |
| 0131789505 | Nauracy Geraldine | CitiGroup Global Markets | N/A |
| 0131789505 | Nauracy Joseph | CitiGroup Global Markets | N/A |
| 0136721065 | Nelson Derek | Ameriquest Mortgage Securities Inc Asset-Backed Pass Through Certificates Series 2006-R1 | Deutsche Bank National Trust Company |
| 0116493081 | Nimox Yvonne | Credit Suisse First Boston/Wilshire | N/A |
| 0103758769 | Onesimus Joseph | Washington Mutual Bank | N/A |

*Edelman*

| 0103758769 | Onesimus Myra | Washington Mutual Bank | N/A |
|---|---|---|---|
| 0058164559 | Orrison Joel | Goldman Sachs Mortgage | N/A |
| 0058164559 | Orrison Lana | Goldman Sachs Mortgage | N/A |
| 0121966626 | Parker Ann | Washington Mutual Bank | N/A |
| 0077265684 | Parker Carolyn | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R7 | Deutsche Bank National Trust Company |
| 0077265684 | Parker Randy | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R7 | Deutsche Bank National Trust Company |
| 0089538086 | Patterson Estelle | Washington Mutual Bank | N/A |
| 0077652568 | Pena Eddy | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2004-R6 | Deutsche Bank National Trust Company |
| 0080833403 | Perez Consuelo | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R8 | Deutsche Bank National Trust Company |
| 0080833403 | Perez Juan | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R8 | Deutsche Bank National Trust Company |
| 0096677760 | Perry Judy | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2005-R2 | Deutsche Bank National Trust Company |
| 0082139486 | Pierce Jennifer | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2004-R12 | Deutsche Bank National Trust Company |
| 0082139486 | Pierce Michael | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2004-R12 | Deutsche Bank National Trust Company |
| 0040430480 | Pintsak Sandra | Washington Mutual Bank | N/A |
| 0040430480 | Pintsak William | Washington Mutual Bank | N/A |
| 0048177695 | Polydoros Betty | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2003-8 | Deutsche Bank National Trust Company |
| 0048177695 | Polydoros Spyros | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2003-8 | Deutsche Bank National Trust Company |
| 0100699602 | Preimesberger Deborah | GMAC/RFC | N/A |
| 0100699602 | Preimesberger Jack | GMAC/RFC | N/A |
| 0053390431 | Purdy-Roth Katrina | Argent Securities Inc Asset Backed Pass Through Certificates Series 2003-W8 | Deutsche Bank National Trust Company |
| 0099940140 | Rehbock Charles | Household Finance | N/A |
| 0099940200 | Rehbock Linda | Household Finance | N/A |
| 0072915200 | Robinson Sheree | Washington Mutual Bank | N/A |
| 0106137409 | Rocco Joseph | Washington Mutual Bank | N/A |
| 0106137409 | Rocco Nancy | Washington Mutual Bank | N/A |
| 0136200888 | Rodriguez Jose | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2005-R11 | Deutsche Bank National Trust Company |
| 0108036468 | Rodriguez Jose | Bear Stearns Mortgage Cap/Amresco | N/A |
| 0108036468 | Rodriguez Lynore | Bear Stearns Mortgage Cap/Amresco | N/A |
| 0067302992 | Roelofs Donald | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-WWF1 | Wells Fargo Bank N. A. |
| 0067302992 | Roelofs Kathy | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-WWF1 | Wells Fargo Bank N. A. |
| 0070124870 | Roop Christopher | Bear Stearns Mortgage Cap/Amresco | N/A |

8

*Edelman*

| 0070124870 | Roop Sarah | Bear Sterns Mortgage Cap/Amresco | N/A |
|---|---|---|---|
| 0087266128 | Rosemon Everett | Washington Mutual Bank | N/A |
| 0087266128 | Rosemon Grundia | Washington Mutual Bank | N/A |
| 0053390431 | Roth Jerry | Argent Securities Inc Asset Backed Pass Through Certificates Series 2003-W8 | Deutsche Bank National Trust Company |
| 0113819841 | Rowan Cecilia | CBASS SERVICE RELEASE | N/A |
| 0036302156 | Salazar Guadalupe | Ameriquest Mortgage Securities Inc Quest Trust 2003-X2 Asset Backed Pass Through Certificates Series 2003-X2 | Deutsche Bank National Trust Company |
| 0036302156 | Salazar Sergio | Ameriquest Mortgage Securities Inc Quest Trust 2003-X2 Asset Backed Pass Through Certificates Series 2003-X2 | Deutsche Bank National Trust Company |
| 0073754558 | Salinas Jose | Park Place Securities, Inc Asset Backed Pass Through Certificates Series PPSI 2005-WHQ3 | Wells Fargo Bank N. A. |
| 0073754558 | Salinas Juanita | Park Place Securities, Inc Asset Backed Pass Through Certificates Series PPSI 2005-WHQ3 | Wells Fargo Bank N. A. |
| 0073754558 | Salinas Ruth | Park Place Securities, Inc Asset Backed Pass Through Certificates Series PPSI 2005-WHQ3 | Wells Fargo Bank N. A. |
| 0055344253 | Scott Kenneth | Argent Securities Inc Asset Backed Pass Through Certificates Series 2004-W8 | Deutsche Bank National Trust Company |
| 0055344253 | Scott Marcey | Argent Securities Inc Asset Backed Pass Through Certificates Series 2004-W8 | Deutsche Bank National Trust Company |
| 0061852901 | Seger Deanna | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2003-11 | Deutsche Bank National Trust Company |
| 0061852901 | Seger John | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2003-11 | Deutsche Bank National Trust Company |
| 0080223985 | Shepard Barbara | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R7 | Deutsche Bank National Trust Company |
| 0080223985 | Shepard Terrance | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R7 | Deutsche Bank National Trust Company |
| 0073752909 | Skanes Barbara | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2004-R5 | Deutsche Bank National Trust Company |
| 0123161606 | Smith Cindy | Merrill Lynch (Cendant) | N/A |
| 0090978966 | Smith Edward | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R10 | Deutsche Bank National Trust Company |
| 0090978966 | Smith Gail | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R10 | Deutsche Bank National Trust Company |
| 0099274144 | Smith King | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2004-R12 | Deutsche Bank National Trust Company |
| 0123161606 | Smith Randall | Merrill Lynch (Cendant) | N/A |
| 0067947606 | Stratford Christina | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R3 | Deutsche Bank National Trust Company |
| 0067947606 | Stratford Samuel | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R3 | Deutsche Bank National Trust Company |
| 0065682601 | Sturgis Don | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R3 | Deutsche Bank National Trust Company |

*Edelman*

| 0083808840 | Sutton Daniel | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R8 | Deutsche Bank National Trust Company |
|---|---|---|---|
| 0083808840 | Sutton Jeanie | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R8 | Deutsche Bank National Trust Company |
| 0057161507 | Talley Cheryl | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2003-13 | Deutsche Bank National Trust Company |
| 0057161507 | Talley Terry | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2003-13 | Deutsche Bank National Trust Company |
| 0119859346 | Thompson Ira | Washington Mutual Bank | N/A |
| 0114692502 | Thompson Kenneth | Washington Mutual Bank | N/A |
| 0114692502 | Thompson Linda | Washington Mutual Bank | N/A |
| 0088499686 | Titus-Ashford Jacqueline | Washington Mutual Bank | N/A |
| 0039506936 | Treadwell Genelle | Ameriquest Mortgage Securities Inc Quest Trust 2003-X2 Asset Backed Pass Through Certificates Series 2003-X2 | Deutsche Bank National Trust Company |
| 0039506936 | Treadwell Gilbert | Ameriquest Mortgage Securities Inc Quest Trust 2003-X2 Asset Backed Pass Through Certificates Series 2003-X2 | Deutsche Bank National Trust Company |
| 0065099228 | VanderPol Trudy | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2004-R1 | Deutsche Bank National Trust Company |
| 0065099228 | VanderPol William | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2004-R1 | Deutsche Bank National Trust Company |
| 0130589427 | Vincer Daniel | CitiGroup Global Markets | N/A |
| 0055924302 | Vitti Sharon | Ameriquest Mortgage Securities, Inc Asset-Backed Pass Through Certificates Series 2003-11 | Deutsche Bank National Trust Company |
| 0103541462 | Walczak-Daege Tara | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R1 | Deutsche Bank National Trust Company |
| 0118684869 | Walker Betty | Washington Mutual Bank | N/A |
| 0118684869 | Walker Tyrone | Washington Mutual Bank | N/A |
| 0089620124 | Walsh Keith | Washington Mutual Bank | N/A |
| 0089620124 | Walsh Yvonne | Washington Mutual Bank | N/A |
| 0101022929 | Washington Everett | GMAC/RFC | N/A |
| 0043996610 | Washington Rochelle | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2003-6 | Deutsche Bank National Trust Company |
| 0043996610 | Washington Sydney | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2003-6 | Deutsche Bank National Trust Company |
| 0071265540 | Wayland Clarence | Ameriquest Mortgage Securities Inc Quest Trust 2004 X2 Asset Backed Pass Through Certificates Series 2004-X2 | Deutsche Bank National Trust Company |
| 0087201323 | Wayne Robert | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R10 | Deutsche Bank National Trust Company |
| 0087201323 | Wayne Twila | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R10 | Deutsche Bank National Trust Company |
| 0047675335 | Wertepny Brett | Washington Mutual Bank | N/A |
| 0047675335 | Wertepny Yvonne | Washington Mutual Bank | N/A |

*Edelman*

| 0083329847 | Whitsett Shalese | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R8 | Deutsche Bank National Trust Company |
|---|---|---|---|
| 0075658724 | Wildermuth Thomas | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R7 | Deutsche Bank National Trust Company |
| 0075658724 | Wildermuth Victoria | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R7 | Deutsche Bank National Trust Company |
| 0127314060 | Williams Jesstin | Washington Mutual Bank | N/A |
| 0127314060 | Williams Yvette | Washington Mutual Bank | N/A |
| 0061504098 | Wilson Kurt | Citifinancial | N/A |
| 0061504098 | Wilson Teresa | Citifinancial | N/A |
| 0121331342 | Winters Joe | Ameriquest Mortgage Securities, Inc Asset Backed Pass Through Certificates Series 2005-R4 | Deutsche Bank National Trust Company |
| 0082579582 | Wisniewski Joseph | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-MCW1 | Wells Fargo Bank N. A. |
| 0082579582 | Wisniewski Tasha | Park Place Securities, Inc Asset Backed Pass Through Certificates Series 2004-MCW1 | Wells Fargo Bank N. A. |
| 0099058448 | Wright Evelyn | GMAC/RFC | N/A |
| 0085868602 | Wright Kim | Ameriquest Mortgage Securities Inc Asset Backed Pass Through Certificates Series 2004-R9 | Deutsche Bank National Trust Company |
| 0038877080 | Zarate Ramon | Ameriquest Funding II LLC | N/A |

# APPENDIX 6

## DECLARATION OF SERGIO & GUADALUPE SALAZAR

We, Sergio A. Salazar and Guadalupe Salazar, declare under penalty of perjury that the foregoing is true and correct:

1.    We reside at 3800 Marshall Court, Bellwood, Illinois 60104.

2.    This is our primary residence.

3.    On May 28, 2002, we obtained a loan from Ameriquest Mortgage Company that was secured by a mortgage on our home at 3800 Marshall Court, Bellwood, Illinois.

4.    The mortgage loan of May 28, 2002 was entered into for the purpose of refinancing an existing loan, not for an original purchase or construction.

Executed: this 11th day of August, 2008.


_____
Sergio Salazar

_____
Guadalupe Salazar

# APPENDIX 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SERGIO A. SALAZAR and ) 
GUADALUPE SALAZAR, )
            )
            Plaintiffs, )     No. 05 C 4162
            )
        v. )     Judge Ronald Guzman
            )
AMERIQUEST MORTGAGE COMPANY )
and DEUTSCHE BANK NATIONAL TRUST, )
            )
            Defendants. )

DEFENDANT AMERIQUEST MORTGAGE COMPANY'S
ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

Defendant Ameriquest Mortgage Company ("Ameriquest"), by its attorneys, answers

Plaintiffs' third amended complaint as follows:

1.     Plaintiffs Sergio A. Salazar and Guadalupe Salazar bring this action to rescind a
mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), as
amended by the Home Ownership & Equity Protection Act of 1994, 15 U.S.C. §§ 1602 (aa) and
1639 ("HOEPA") and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226,
and to recover damages for consumer fraud.

**ANSWER:**     Ameriquest admits that Plaintiffs have filed a lawsuit against it.

Ameriquest denies all remaining allegations in Paragraph 1. Ameriquest specifically denies that it

violated the Truth in Lending Act, the Home Ownership & Equity Protection Act of 1994, the

Federal Reserve Board Regulation Z, or the Illinois Consumer Fraud Act.

2.     The U.S. District Court has subject matter jurisdiction under 28 U.S.C. §§1331
(general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA) and 1367
(supplemental jurisdiction).

**ANSWER:**     Ameriquest does not contest subject matter jurisdiction, personal

jurisdiction, or venue. Ameriquest denies any remaining allegations in Paragraph 2.

3.     Defendant does business in the District and is deemed to reside here.

**ANSWER:**    Ameriquest admits that it does business in the District.  Ameriquest

denies the remaining allegations in Paragraph 3.

4.    A version of this action was previously filed as an adversary proceeding in <u>In re</u>
<u>Sergio A. Salazar and Guadalupe Salazar</u>, 04 B 47538 (N.D. Ill. Br.).  On July 7, 2005, the
bankruptcy case was dismissed without prejudice as to the adversary complaint.

**ANSWER:**    Ameriquest admits that Plaintiffs filed an adversary complaint within

their bankruptcy proceeding and that, on July 7, 2005, Plaintiffs' bankruptcy proceeding was

dismissed.  Ameriquest denies the remaining allegations in Paragraph 4.

5.    Plaintiffs own and reside in a home at 3800 Marshall Court, Bellwood, IL 60104.

**ANSWER:**    Ameriquest is without knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 5.

6.    Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign
corporation which maintains offices in and does business in Illinois.

**ANSWER:**    Ameriquest admits that it is a corporation, that it is incorporated in a

state other than Illinois, and that it maintains offices and does business in Illinois.  Ameriquest

denies any remaining allegations in Paragraph 6.

7.    Ameriquest's registered agent and office are National Registered Agents, 200 W.
Adams, Chicago, IL 60606.

**ANSWER:**    Ameriquest admits that its registered agent is National Registered Agents,

Inc., which has offices at 200 West Adams, Chicago, Illinois.  Ameriquest denies any remaining

allegations in Paragraph 7.

8.    Ameriquest is engaged in the business of originating "subprime" mortgages and
makes more than 26 loans per year.

**ANSWER:**    Ameriquest objects to the term "subprime" as vague.  Ameriquest is

without knowledge or information sufficient to form a belief as to the truth of the intended

characterization of "subprime."  Ameriquest admits that it engaged in the business of originating

loans secured by mortgages and that, during the relevant time period of Plaintiffs' loan, it

2

originated more than 26 loans per year. Ameriquest denies any remaining allegations in

Paragraph 8.

9.       Defendant Deutsche Bank National Trust ("Deutsche Bank") is a foreign corporation with its headquarters at 60 Wall Street, New York, NY 10005. It does business in Illinois. It is engaged in the business of buying "subprime" mortgage loans on Illinois properties.

**ANSWER:**   Ameriquest is without knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 9.

10.      Prior to May 28, 2002, plaintiffs were referred to Ameriquest by a debt collector.

**ANSWER:**   Ameriquest is without knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 10.

11.      A few days later, plaintiffs received a letter from Ameriquest asking them to contact Carlos Rayas, then branch manager of Ameriquest's branch office at 1020 31st Street, #218, Downer's Grove, Illinois.

**ANSWER:**   Ameriquest objects to the allegations in Paragraph 11 as vague.

Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the

allegations in Paragraph 11.

12.      Plaintiffs called Mr. Rayas, who quickly arranged a loan for them on behalf of Ameriquest.

**ANSWER:**   Ameriquest denies the allegations in Paragraph 12.

13.      When plaintiffs called Ameriquest to ask why the closing was scheduled so quickly, they were told that they were at risk for losing their home.

**ANSWER:**   Ameriquest denies the allegations in Paragraph 13.

14.      Ameriquest closed the loan on or about May 28, 2002 at Ameriquest's office. Present at the closing were Mr. Rayas and plaintiffs.

**ANSWER:**   Ameriquest admits that Plaintiffs signed the loan and disclosure

documents on May 28, 2002 at one of Ameriquest's branch offices. Ameriquest denies the

remaining allegations in Paragraph 14.

3

15.    At closing, plaintiffs noticed that the interest rate on the note had been increased above what they were previously told it would be. See <u>Exhibit A</u>. When they asked why, Mr. Rayas told them not to worry and that the interest rate would go down in time. In fact, the Adjustable Rate Note that plaintiffs signed at closing provides that the interest rate on the loan will "never be... less than 10.99%," which was the initial rate in the note. <u>Exhibit B.</u>, p. 2, ¶D. The rate can go as high as 16.99%.

**ANSWER:**    Ameriquest admits that Plaintiffs received and signed at the loan closing

a document entitled "borrower's acknowledgement of final loan terms." Ameriquest admits that

Exhibit A is a copy, smaller in size than the original, of the borrower's acknowledgement of final

loan terms. Ameriquest admits that the adjustable rate note Plaintiffs received and signed

disclosed that the interest rate would not adjust lower than 10.99%, the initial interest rate, or

adjust higher, under certain specified circumstances, than 16.99%. Ameriquest admits that

Exhibit B is a copy, smaller in size than the original, of Plaintiffs' adjustable rate note.

Ameriquest denies the remaining allegations in Paragraph 15.

16.    Plaintiffs were rushed through the closing. Mr. Rayas did not provide any explanation of the loan documents to plaintiffs.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 16.

17.    At closing, plaintiffs signed or received the following documents relating to the loan:

      a.    a note, a true and accurate copy of which (except for the 8 1/2 x 11 size) is attached as <u>Exhibit B;</u>

      b.    a mortgage, <u>Exhibit C;</u>

      c.    a Truth in Lending disclosure statement, <u>Exhibit D;</u>

      d.    two different notices of right to cancel, <u>Exhibits E and F</u>. Plaintiffs were given only a single copy of the federal notice of right to cancel, <u>Exhibit E</u>.

      e.    The first of two settlement statements, <u>Exhibit H</u>, which does not in fact reflect the actual disbursements Ameriquest or its closing agent would later make.

**ANSWER:**    Ameriquest objects to the allegations in Paragraph 17 as vague.

Ameriquest admits that Plaintiffs entered into a loan with Ameriquest. Ameriquest admits that,

4

in connection with the loan transaction, Plaintiffs received and signed a note, mortgage, a Truth in Lending disclosure statement, several copies of a notice of right to cancel, several copies of a document entitled "one week cancellation period," and a settlement statement. Ameriquest admits that Exhibits B and D are, respectively, poor copies, smaller in size than the originals, of the note and Truth in Lending disclosure statement. Ameriquest affirmatively states that Exhibit C appears to be an incomplete copy of the mortgage. Ameriquest admits that Exhibit E appears to be a poor, cut-off copy, of the notice of right to cancel. Ameriquest affirmatively states that Exhibit F appears to be a poor, cut-off copy of the one week cancellation period form. Ameriquest denies that Plaintiffs received only one copy of the notice of right to cancel. Ameriquest denies that Exhibits E and F constitute two different notices of right to cancel. Ameriquest denies the remaining allegations in Paragraph 17.

18.     Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debts incurred for such purposes.

**ANSWER:**     Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.

19.     Plaintiffs were supposed to receive $4,584.00 in cash from the loan proceeds, as indicated on Exhibit G. Subsequent to closing, plaintiffs received a check for under $200.00. On information and belief, the balance was not disbursed to plaintiffs or for their benefit.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 19.

20.     The loan was not in fact disbursed as shown on Exhibit H.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 20.

21.     The debts and amounts to be paid from the loan were later changed as shown on a second settlement statement, Exhibit I, which is not signed by plaintiffs.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 21.

22.     Previously, on or about May 28, 2002, plaintiffs were given a document entitled "Summary of Debts and Disbursements," Exhibit G. The debts and amounts to be paid on Exhibit G do not correspond with those listed Exhibit I.

5

**ANSWER:**    Ameriquest admits that Plaintiffs received a document entitled "summary of debts and disbursements." Ameriquest admits that Exhibit G appears to be a poor, cut-off copy, smaller in size than the original, of the summary of debts and disbursements. Ameriquest denies the remaining allegations in Paragraph 22.

## COUNT I - TILA

23.    Plaintiffs incorporate paragraphs 1-22 above.

**ANSWER:**    Ameriquest incorporates its answers to paragraphs 1-22 above as its answer to Paragraph 23.

24.    The TILA disclosures made to plaintiffs were grossly deficient in multiple ways, as set forth below.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 24.

25.    The "points and fees" on the loan exceed the 8% threshold that triggers application of HOEPA. 15 U.S.C. §1602(aa) and 12 C.F.R. 226 Supp. I, par. 32(a)(1)(ii).

**ANSWER:**    Ameriquest denies the allegations in Paragraph 25.

26.    Defendant did not give plaintiffs the advance disclosures that are required by HOEPA for a HOEPA loan.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 26.

27.    On information and belief, defendant Deutsche Bank is the current owner of plaintiffs' loan.

**ANSWER:**    Ameriquest admits that Deutsche Bank National Trust Company is the present holder of Plaintiffs' loan. Ameriquest denies any remaining allegations in Paragraph 27.

28.    Because the transaction was secured by plaintiffs' home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

(a)    <u>Consumer's right to rescind.</u>

(1)    In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall

6

have the right to rescind the transaction, except for transaction described in paragraph (f) of this section.[fn]47

(2)    To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication.  Notice is considered given when mailed, when filed or telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3)    The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last.  If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.  In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4)    When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b)    Notice of right to rescind.  In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind.  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1)    The retention or acquisition of a security interest in the consumer's principal dwelling.

(2)    The consumer's right to rescind the transaction.

(3)    How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4)    The effects of rescission, as described in paragraph (d) of this section.

(5)    The date the rescission period expires . . .

(f)    Exempt transactions.  The right to rescind does not apply to the following:

(1)    A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2)     **A credit plan in which a state agency is a creditor.**

**ANSWER:**     Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations that the transaction was secured by Plaintiffs' home. Ameriquest denies that 12 C.F.R. § 226.23(f)(2) states "(2) A credit plan in which a stage agency is a creditor." Ameriquest admits that the remaining allegations in Paragraph 28 contain a portion of the text of 12 C.F.R. § 226.23. Ameriquest denies the allegations of Paragraph 28 insofar as they purport to make any allegation of wrongdoing by Ameriquest under the statute. Ameriquest denies the remaining allegations in Paragraph 28.

29.     Plaintiffs were not given accurate financial disclosures on the TILA Disclosure Statement, Exhibit D, in violation of 15 U.S.C. §1638 and 12 C.F.R. 226.18. The APR, finance charge and amount financed were grossly understated, in excess of TILA's applicable tolerance.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 29.

30.     Plaintiffs were not given the advance disclosures required for a HOEPA loan, in violation of 15 U.S.C. §1639 and 12 C.F.R. §226.32(c).

**ANSWER:**     Ameriquest denies the allegations in Paragraph 30.

31.     The payment schedule is not fully and completely disclosed on Exhibit D, in violation of 15 U.S.C. §1638 and 12 C.F.R. §226.28.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 24.

32.     Because the terms of the deal were not settled until after May 28, 2002, 2004, the "consummation" of the loan did not occur until after November 28, 2002, and, consequently, all of the Truth in Lending disclosures and notices of cancellation rights delivered to plaintiffs were misdated.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 24.

33.     Plaintiffs, both of whom signed the mortgage (Exhibit C), were given only a single copy of the federal notice of right to cancel, Exhibit E, in violation of 12 C.F.R. § 226.23(b), which requires delivery of two copies per mortgagor.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 24.

34.     Exhibit F detracts from and obfuscates Exhibit E, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23. Exhibit F suggests that the consumer has seven days to rescind

under TILA, which is not the case. The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees, or the procedural protections of §1635. It also provides for a different method of counting days and requires actual receipt of the notice by Ameriquest within the specified time.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 24.

35.    15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

**ANSWER:**    Ameriquest admits that the allegations in Paragraph 30 contain the text of 15 U.S.C. § 1635(g). Ameriquest denies the allegations of Paragraph 30 insofar as they purport to make any allegation of wrongdoing by Ameriquest under the statute. Ameriquest denies the remaining allegations in Paragraph 35.

36.    Plaintiffs gave defendant Ameriquest proper notice of exercise of their right to rescind on January 31, 2005, when plaintiffs served a summons and a copy of the adversary complaint in the bankruptcy proceeding upon defendant's registered agent in Chicago.

**ANSWER:**    Ameriquest admits that Plaintiffs served a summons and a copy of the adversary complaint in Plaintiffs' bankruptcy proceeding on Ameriquest's registered agent in Chicago, Illinois. Ameriquest denies that Plaintiffs properly sought to rescind the loan and denies that Plaintiffs have any right to rescind the loan. Ameriquest denies the remaining allegations in Paragraph 36.

37.    The loan has not been rescinded.

**ANSWER:**    Ameriquest denies that Plaintiffs properly sought to rescind the loan and denies that Plaintiffs have any right to rescind the loan. Ameriquest admits that the loan has not been rescinded. Ameriquest denies the remaining allegations in Paragraph 37.

## AFFIRMATIVE DEFENSES

Defendant Ameriquest states as its affirmative defenses as follows:

1.     Plaintiffs' claims for rescission, statutory damages, costs, and attorney's fees for any alleged underlying Truth in Lending Act violation are barred by the three-year statute of limitations for rescission and the one-year statute of limitations for statutory damages, costs and attorney's fees under the Truth in Lending Act.

2.     Plaintiffs' purported cause of action fails to state a claim upon which relief may be granted.

3.     If it should be deemed that Plaintiffs are entitled to rescission, any obligation on the part of Ameriquest to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiffs' reimbursement or other return to Ameriquest of all funds disbursed on Plaintiffs' behalf in connection with the subject mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other rules of law or equity. Any obligation on the part of Ameriquest to rescind and to release any lien is conditioned upon Plaintiffs reimbursing or otherwise returning all funds disbursed on their behalf to Ameriquest in connection with the subject loan, less any finance charges.

WHEREFORE, Defendant Ameriquest Mortgage Company requests that this Court enter judgment in its favor and against Plaintiffs, Sergio A. Salazar and Guadalupe Salazar, award Ameriquest Mortgage Company its costs, and provide such further and additional relief as it deems just and appropriate.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

38.     Plaintiffs incorporate ¶¶ 1-37 above. This claim is against Ameriquest.

**ANSWER:**     Ameriquest incorporates its answers to Paragraphs 1-37 above as its answer to Paragraph 38.

39.    Defendant violated §2 of the Consumer Fraud Act, 815 ILCS 505/2, by (1) misrepresenting the finance charge, amount financed and annual percentage rate and (2) misinforming plaintiffs that they would lose their home if they did not refinance, which was not true, and (3) misinforming plaintiffs that the interest rate would go down when, in fact, it could only go up.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 24.

40.    Defendant engaged in such conduct in the course of trade and commerce.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 24.

41.    Defendant engaged in such conduct for the purpose of inducing reliance by plaintiffs, in the form of signing the loan documents, which plaintiffs did.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 24.

42.    Plaintiffs were damaged as a result, in that (1) they did not receive the $4,584.00 cash they were supposed to receive from the loan proceeds and (2) they were unnecessary refinanced, paid points and fees and received an exorbitant interest rate.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 24.

## AFFIRMATIVE DEFENSES

Defendant Ameriquest states as its affirmative defenses as follows:

1.    Plaintiffs' claims are barred by the three-year statute of limitations.

2.    Plaintiffs' purported cause of action fails to state a claim upon which relief may be granted.

3.    If it should be deemed that Plaintiffs are entitled to rescission, any obligation on the part of Ameriquest to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiffs' reimbursement or other return to Ameriquest of all funds disbursed on Plaintiffs' behalf in connection with the subject mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other rules of law or equity.  Any obligation on the part of Ameriquest to rescind and to release any lien is

11

conditioned upon Plaintiffs reimbursing or otherwise returning all funds disbursed on their

behalf to Ameriquest in connection with the subject loan, less any finance charges.

WHEREFORE, Defendant Ameriquest Mortgage Company requests that this Court

enter judgment in its favor and against Plaintiffs, Sergio A. Salazar and Guadalupe Salazar, award

Ameriquest Mortgage Company its costs, and provide such further and additional relief as it

deems just and appropriate.

Dated:  March 29, 2006                        Respectfully submitted,

                                              AMERIQUEST MORTGAGE COMPANY,
                                              Defendant


                                              By: s/Jonathan N. Ledsky
                                                  One of Its Attorneys

Craig A. Varga
Jonathan N. Ledsky
Jaime S. Roginski-Kord
Varga Berger Ledsky Hayes & Casey
224 South Michigan Avenue, Suite 350
Chicago, Illinois  60604
(312) 341-9400

## CERTIFICATE OF SERVICE

I, Jonathan N. Ledsky, an attorney, hereby certify that a true and correct copy of the

foregoing **Defendant Ameriquest Mortgage Company's Answer to Plaintiffs' Third**

**Amended Complaint** was served electronically upon all counsel of record by the filing of said

document through the Court's electronic filing system this 29th day of March, 2006.

Cathleen M. Combs (ccombs@edcombs.com)

Albert F. Hofeld (ahofeld@edcombs.com)

Daniel A. Edelman (courtecl@aol.com, dedelman@edcombs.com)

James Latturner (jlatturner@edcombs.com)


By:/Jonathan N. Ledsky