# APPENDIX 37

# 'ARGA BERGER LEDSKY HAYES & CASEY
.·. A PROFESSIONAL CORPORATION

## ATTORNEYS AT LAW

SANTA FE BUILDING
224 SOUTH MICHIGAN AVENUE
SUITE 350
CHICAGO, ILLINOIS 60604-2507

TELEPHONE: 312-341-9400
FACSIMILE: 312-341-2900

March 9, 2005

JONATHAN N. LEDSKY
(312) 341-9840

jledsky@vblhc.com

## VIA FACSIMILE & U.S. MAIL

Mr. Al Hofeld
Edelman, Combs, Latturner & Goodwin, LLC
120 South LaSalle Street
18th Floor
Chicago, Illinois  60603

Re:  Notice of rescission, claim, and lien on behalf of Brett and Yvonne Wertepny,
2063 Craig Drive, Des Plaines, Illinois 60018,
Ameriquest Mortgage Company loan dated March 8, 2002

Dear Al:

We are in receipt of your law firm's letter served on the registered agent of our client, Ameriquest Mortgage Company ("Ameriquest"). The letter seeks rescission of a loan made by Ameriquest to Brett and Yvonne Wertepny.

The letter asserts, as the basis of the rescission demand, "noncompliance with the Truth in Lending Act," and nothing more. The letter, conspicuously, omits any identification of how you contend Ameriquest has failed to comply with the Truth in Lending Act. Typically, your law firm's letters seeking rescission on behalf of a particular borrower identify the alleged violations of the Truth in Lending Act. Without such a statement in your rescission letter on behalf of Brett and Yvonne Wertepny, Ameriquest cannot evaluate the bona fides of the rescission demand. Please advise us as to the basis of the rescission request on behalf of Brett and Yvonne Wertepny. We will, then, immediately communicate Ameriquest's position regarding the rescission request. Thank you.

Very truly yours,

Jonathan N. Ledsky

# APPENDIX 38

Doc#: 0615113030 Fee: $26.50
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 05/31/2006 08:10 AM Pg: 1 of 1

Recording Requested & Prepared By:
**LANDAMERICA**
**P.O. BOX 25088**
**SANTA ANA, CA 92799**
**KIM ANH LE** (LAND AM)

And When Recorded Mail To:
**LANDAMERICA**
**P.O. BOX 25088**
**SANTA ANA, CA 92799**

Loan#: 0047675335    RLS#: 597563     +

## SATISFACTION OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS: that the undersigned, holder of a certain mortgage, whose parties, dates and recording information are below, does hereby acknowledge that it has received full payment and satisfaction of the same. Accordingly, the County Recorder is hereby authorized and directed to discharge the same upon the record of said mortgage.
Original Mortgagor: **YVONNE WERTEPNY SINGLE WOMAN AND BRETT WERTEPNY, IN JOINT TENANCY**
Original Mortgagee: **AMERIQUEST MORTGAGE COMPANY**
Mortgage Dated: **MAY 08, 2003**
Recorded on: **JUNE 18, 2003** as Instrument No. **0316919168** in Book No. — at Page No. —
Property Address: **2063 EAST CRAIG DRIVE, DES PLAINES, IL 60018-0000**
County of **COOK**, State of **ILLINOIS**
PIN# **09-33-408-009**
Legal Description: **LOT 7, IN BLOCK 4, IN TOWN IMPROVEMENT CORPORATION'S DES PLAINES COUNTRYSIDE, A SUBDIVISION IN THE WEST HALF OF THE SOUTH EAST QUARTER OF SECTION 33, TOWNSHIP 41 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**
IN WITNESS WHEREOF, THE UNDERSIGNED, BY THE OFFICER DULY AUTHORIZED, HAS DULY EXECUTED THE FOREGOING INSTRUMENT ON **APRIL 30, 2006**
**AMERIQUEST MORTGAGE COMPANY**

By: _____
    **JEFF L. HEMPHILL, VICE PRESIDENT**

State of     **CALIFORNIA**              }
County of   **ORANGE**                   } ss.

On **APRIL 30, 2006**, before me, **IRIS B JENKINS**, a Notary Public, personally appeared **JEFF L. HEMPHILL** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
(Notary Name): **IRIS B JENKINS**

IRIS B. JENKINS
Comm. # 1449616
NOTARY PUBLIC-CALIFORNIA
Orange County
My Comm. Expires Nov.4, 2007

Doc#. 0610421111 fee: $46.00
Date: 04/14/2006 03:04 PM Pg: 1 of 7
Cook County Recorder of Deeds
*RHSP FEE $10.00 Applied

This document was prepared by:
Diane Delia
First American
1228 Euclid Avenue, 4th Floor
Cleveland, OH 44115
When recorded, please return to:
First American
1228 Euclid Avenue, 4th Floor
Cleveland, OH 44115

———— State of Illinois ————  ———— Space Above This Line For Recording Data ————

# MORTGAGE

Order #:     9135630
ALS #: 511281492

(With Future Advance Clause)    22

1. DATE AND PARTIES. The date of this Mortgage (Security Instrument) is 03/23/2006 .............................. and the parties, their addresses and tax identification numbers, if required, are as follows:

   MORTGAGOR: YVONNE WERTEPNY AND BRETT WERTEPNY

   **UNMARRIED**                                **UNMARRIED**

   LENDER:     U.S. Bank, National Association N.D.
               4325 17th Avenue S.W.
               Fargo, ND 58103

2. CONVEYANCE. For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys, mortgages and warrants to Lender the following described property:

   The real estate mortgage herein is described in Exhibit "A" which is attached hereto and hereby incorporated herein by reference.

   The property is located in COOK .......................... at 2063 E CRAIG DR ..................................
                                    (County)
   .........................................., DES PLAINES ................................., Illinois 60018 ............
         (Address)                            (City)                                  (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. SECURED DEBT AND FUTURE ADVANCES. The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

ILLINOIS - MORTGAGE (NOT FOR FNMA, FHLMC, FHA OR VA USE)                    9135630
_ 1994 Bankers Systems, Inc., St. Cloud, MN  Form FS-RE-MTG-IL 1/28/99  6096AD  7/99        *(page 1 of 6)*

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

4. PAYMENTS. Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

5. PRIOR SECURITY INTERESTS. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

6. CLAIMS AGAINST TITLE. Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

7. DUE ON SALE OR ENCUMBRANCE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

8. PROPERTY CONDITION, ALTERATIONS AND INSPECTION. Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for

9135630
*(page 2 of 6)*

BW   J.W.

the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

9. AUTHORITY TO PERFORM. If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

10. ASSIGNMENT OF LEASES AND RENTS. Mortgagor irrevocably grants, bargains, sells, conveys and warrants to Lender as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Mortgagor will promptly provide Lender with true and correct copies of all existing and future Leases. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default under the terms of this Security Instrument.

Mortgagor agrees that this assignment is immediately effective after default between the parties to this Security Instrument and effective as to third parties on the recording of the Security Instrument, and this assignment will remain effective during any period of redemption by the Mortgagor until the Secured Debt is satisfied. Mortgagor agrees that Lender may take actual possession of the property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Mortgagor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Mortgagor will endorse and deliver to Lender any payment of Rents in Mortgagor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Mortgagor warrants that no default exists under the Leases or any applicable landlord/tenant law. Mortgagor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

11. LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS. Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

12. DEFAULT. Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

13. REMEDIES ON DEFAULT. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. Upon default, Lender shall have the right, without declaring the whole indebtedness due and payable, to foreclose against all or part of the Property. This Mortgage shall continue as a lien on any part of the Property not sold on foreclosure.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum

9135630

*(page 3 of 6)*

in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

14. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS. Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

15. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

   C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

   D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

16. CONDEMNATION. Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

17. INSURANCE. Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

1994 Bankers Systems, Inc., St. Cloud, MN Form FS-RE-MTG-IL 1/28/99 6096AD 1/99

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

18. ESCROW FOR TAXES AND INSURANCE. If otherwise provided in a separate agreement, Mortgagor may be required to pay to Lender funds for taxes and insurance in escrow.

19. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

20. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND. All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

21. APPLICABLE LAW; SEVERABILITY; INTERPRETATION. This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

22. NOTICE. Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

23. WAIVERS. Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property.

9135630
(page 5 of 6)

1994 Bankers Systems, Inc., St. Cloud, MN Form FS-RE-MTG-IL 1/28/99 6096AD 1/99

24. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 200,000.00 .............................. . This limitation of amount does not include interest, attorneys fees, and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

25. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ Line of Credit. The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ Construction Loan. This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ Fixture Filing. Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ Riders. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
  ☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ..................................................

☐ Additional Terms.

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

_Brett W_ 3-23-06 _Yvonne Wertepny_ 3-23-06
(Signature) BRETT WERTEPNY    (Date)  (Signature) YVONNE WERTEPNY    (Date)

ACKNOWLEDGMENT:
STATE OF .Illinois................., COUNTY OF .COOK...............................} ss.
(Individual) This instrument was acknowledged before me this .23rd.... day of .March 2006....................
by BRETT WERTEPNY AND YVONNE WERTEPNY.................................................
My commission expires:
(Seal)
03/04/09      _Jessica Eldridge_.................
(Notary Public)
JESSICA ELDRIDGE

OFFICIAL SEAL
JESSICA ELDRIDGE
Notary Public - State of Illinois
My Commission Expires Mar. 4, 2009

9135630

1994 Bankers Systems, Inc., St. Cloud, MN  Form FS-RE-MTG-IL  1/28/98  6096AD  1/99        *(page 6 of 6)*

EXHIBIT A

SITUATED IN COUNTY OF COOK AND STATE OF ILLINOIS:

LOT 7 IN BLOCK 4 IN TOWN IMPROVEMENT CORPORATION'S DES
PLAINES COUNTRYSIDE, A SUBDIVISION IN THE WEST 1/2 OF THE
SOUTH EAST 1/4 OF SECTION 33, TOWNSHIP 41 NORTH, RANGE 12
EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY,
ILLINOS.


Permanent Parcel Number:  09-33-408-009
YVONNE WERTEPNY AND BRETT WERTEPNY
NOT IN TENANCY IN COMMON, BUT IN JOINT TENANCY

2063 EAST CRAIG DRIVE, DES PLAINES IL 60018
Loan Reference Number  :  20060761605041/511281492
First American Order No:  9135630
Identifier: FIRST AMERICAN LENDERS ADVANTAGE

WERTEPNY
9135630

FIRST AMERICAN LENDERS ADVANTAGE
MORTGAGE

# APPENDIX 39

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CASTELLA WILLIAMS HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05 C 4025 |
| vs. | ) | |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | Judge Der-Yeghiayan |
| AMC MORTGAGE SERVICES, INC., | ) | |
| and JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RULE 26(a)(1) DISCLOSURES

Defendants Ameriquest Mortgage Company and AMC Mortgage Services, Inc. (collectively "Defendants"), by their attorneys, submit their Rule 26(a)(1) disclosures:

(A) The name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information:

**Response:** Defendants direct Plaintiff to the persons identified in the documents produced in conjunction with these Rule 26(a)(1) disclosures.

(B) A copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings:

**Response:** Defendants produce documents with Bates-stamped Nos. A 0001 – A 0199.

(C) A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of the injuries suffered:

**Response:** Defendants claim no damages.

(D)     For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**Response:**     Defendants did not purchase insurance affording coverage for the defense of this lawsuit, other than the purchase of title insurance policy coincident with the loan transaction.

Dated:  October 28 2005

AMERIQUEST MORTGAGE COMPANY and
AMC MORTGAGE SERVICE, INC.,
**Defendants**

By:_____
                One of their Attorneys

Craig A. Varga
Jonathan N. Ledsky
Jaime S. Roginski-Kord
Varga Berger Ledsky Hayes & Casey
A Professional Corporation
224 South Michigan Avenue
Suite 350
Chicago, Illinois  60604
(312) 341-9400
(312) 341-2900 (facsimile)

## CERTIFICATE OF SERVICE

I, Jonathan N. Ledsky, an attorney, hereby certifies that a true and correct copy of the foregoing **Defendants' Rule 26(a)(1) Disclosures** was served upon:

Al Hofeld
Edelman, Combs, Latturner & Goodwin, LLC
120 South LaSalle Street
18th Floor
Chicago, Illinois  60603

by placing same in the United States mail chute located at 224 South Michigan Avenue, Chicago, Illinois 60604, properly addressed and postage fully prepaid this 28 day of October, 2005, on or before the hour of 5:00 p.m.

_____
Jonathan N. Ledsky

2

**AMERIQUEST MORTGAGE COMPANY**

*Pleese Rush To Underwriting*

**Wholesale Lending Division**
**Loan Submission Transmittal**

DATE __6/26/02__

Account Executive: Bessie Palmer    Phone: (866) 345-6334 x3320   Fax: (877) 438-1285
Account Manager: Arthur Barrera    Phone: _____

| | |
|---|---|
| Borrower(s) Castella Harris | Escrow Co. |
| Subject 6922 S. Winchester | Phone: |
| Address: Chicago, IL 60636 | Fax: |
| Broker Co.: SAB mortgage | Contact: |
| Address: 8719 S. Richmond | Title Co. |
| Phone: (773) 726-7950 | Phone: |
| Fax: | Fax: |
| Contact: Stephen A. Better | Contact: |

Mortgage History:
(Last 12 mos) 3 X 30, 3 X 60, 2 X 90, 3 X 120+

☐ Complete Package
☑ Copy Package (No Appraisal)

Approved Broker ☐ Yes ☐ No
If yes, #

Bankruptcy or Notice of Default
___ > 36 mos ___ Last 36 mos ___ Last 24 mos
___ Last 12 mos ___ Not Currently ___ Currently

☑ Broker supplied tri-merge
☑ AMC to pull tri-merge
☐ Single Bureau

| PROGRAM | FICO | TERMS | LOAN PROGRAM | PRE-PAY |
|---|---|---|---|---|
| ☑ PRIME ADVANTAGE | Borrower 530 | Rate 13% | ☑ 2/28 Fixed/ARM | ☐ None |
| ☐ LTV ADVANTAGE | Co-Borrower | Margin ____ | ☐ 2/18 Fixed/ARM | ☑ 2 Year |
| ☐ BIG SCORE | | Loan Amount $ 49,500 | ☐ 2/13 Fixed/ARM | ☐ 3 Year |
| | | Appraised Value $ 90,000 | ☐ 30/30 Fixed | ☐ 4 Year |
| | | LTV 55% | ☐ 20/20 Fixed | ☐ 5 Year (Max) |
| | | CLTV | ☐ 15/16 Fixed | |

| DOC TYPE | LOAN PURPOSE | PROPERTY TYPE | OCCUPANCY | SECONDARY FINANCING |
|---|---|---|---|---|
| ☑ Full | ☐ Purchase | ☐ SFR   ☑ 2 Units | ☑ Owner Occupied | Amount $ _____ |
| ☐ Limited | ☑ Refi R/T | ☐ PUD   ☐ 3-4 Units | ☐ Second Home | Monthly Payment $ _____ |
| ☐ Stated | ☑ Refi C/O | ☐ Manufactured ☐ Condo | ☐ Non-Owner | Maturity Date _____ |
| | | PROPERTY LOCATION | | Rate _____ |
| | | ☐ Rural ☐ Standard | | |

| PURCHASE | | REFINANCE | | |
|---|---|---|---|---|
| Price $ _____ | | MORTGAGES / LIENS TO BE PAID | | |
| Down $ _____ | | 1st _____ | $ _____ | |
| VOD $ _____ | | 2nd _____ | $ _____ | |
| Carry $ _____ | | Other _____ | $ _____ | |
| Source of Down Payment _____ | | Other _____ | $ _____ | |

| | Remit to AMC | Remit to Broker | Total Charge To Applicant |
|---|---|---|---|
| Loan Origination Fee | N/A | ( %) $ | |
| Loan Discount Fee | ( %) $ | N/A | |
| Underwriting Fee | $375.00 | | |
| Administration Fee | $175.00 | N/A | |
| Application Fee | N/A | | |
| Processing Fee | N/A | | |
| Prem. Yield Adj. Fee | N/A | ( %) $ | |
| TOTAL | $ | $ | $ |

Maximum fees paid to broker $1000.00 excluding points and third party service providers fees

**SERVICE PROVIDER FEES TO BE INCLUDED ON GOOD FAITH ESTIMATE**

| FEE | COST | POC | REMIT TO: (If applicable) |
|---|---|---|---|
| Appraisal Fee | _____ | Y or N | |
| Credit Report Fee | _____ | Y or N | |
| Notary Fee | _____ | Y or N | |
| Flood Search Fee | $16.00 | | Ameriquest Mortgage (on behalf of third party) |
| Tax Service Fee | $70.00 | | Ameriquest Mortgage (on behalf of third party) |
| TOTAL | | | |

Submission Comments: _____

Revised: 12/10/01

TIRED OF MANUAL PRICING? INSTANT PREQUALS ONLINE

A.0007

Return To:

Ameriquest Mortgage Company
P.O. Box 11507
Santa Ana, CA 92711

I CERTIFY THAT THIS IS A TRUE
AND EXACT COPY OF ORIGINAL, AS
EXECUTED _____ DATE
LAW TITLE INSURANCE CO., INC.

Prepared By:Ameriquest Mortgage Company

Not Assigned
8 Skyline Drive,Hawthorne,
NY 10532

WE HEREBY CERTIFY THIS
TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL.
BY: _____
AMERIQUEST MORTGAGE COMPANY

—————————[Space Above This Line For Recording Data]—————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 8, 2002 together with all Riders to this document.
(B) "Borrower" is CASTELLA WILLIAMS HARRIS

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

0037122983 - 9701

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3014 1/01

-6(IL) (0005)
Page 1 of 15          Initials:_____
VMP MORTGAGE FORMS - (800)521-7291

07/09/2002 7:04:44 AM

*C.H.*

10-Jul-2002 12:54pm    From-          T-814  P.005  F-617

A.0023

Lender's address is 1100 Town and Country Rd, Ste 900
Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated July 8, 2002
The Note states that Borrower owes Lender forty-nine thousand five hundred and 00/100

(U.S. $49,500.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than August 1, 2032

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

0037122983 - 9701

Initials: _____

-6(IL) (0005)     Page 2 of 15     07/09/2002 7:04:44     Form 3014   1/01

C.H.

A.0024

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the County [Type of Recording Jurisdiction] of COOK [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 20194160200000      which currently has the address of
6922 SOUTH WINCHESTER      [Street]
CHICAGO      [City], Illinois 60636      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. 0037122983 - 9701

Initials: 

-6(IL) (0005)      Page 3 of 15      07/09/2002 7:04:44 AM      Form 3014 1/01

C. H.

10-Jul-2002 12:55pm      From-      T-814 P.007 F-517

A 0025

06/24/2002  05:38  17882929831        HOMEOWNERS FIRST/AB           PAGE  13

Law Title Insurance Company, Inc.

Commitment Number: 143777M

SCHEDULE C

PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

LOT 9 IN THE SUBDIVISION OF LOTS 1, 2, 3, 4 AND 5 IN BLOCK 2 IN B.M. BAKER'S SUBDIVISION OF THE
NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 19, TOWNHIP 38
NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

ALTA Commitment                                    (143777.PFD/143777M/5)
Schedule C

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds For Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0037122983 - 9701

Initials: _____

-6(IL) (0005)                     Page 4 of 15          07/09/2002 7:04:44     Form 3014  1/01

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

A 0029

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0037122983 - 9701

Initials _____

-6(IL) (0005)    Page 7 of 15    07/09/2002 7:04:44    Form 3014  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

0037122983 - 9701

Page 8 of 16     07/09/2002 7:04:44     Form 3014   1/01

A.0031

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

0037122983 - 9701

Initials:

-6(IL) (0005)    Page 8 of 15    07/09/2002  7:04:44    Form 3014  1/01

A 0032

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0037122983 - 9701
Initials: _____
-6(IL) (0005)          Page 10 of 15     07/09/2002 7:04:44     Form 3014  1/01

*C. H*

1-814  P.014/074  F-617                                        From-                10-Jul-2002  12:07pm

A 0033

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0037122983 - 9701

Initials:

@D -6(IL) (0005)                Page 11 of 16          07/09/2002 7:04:44        Form 3014  1/01

*C.H.*

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0037122983 - 9701
Initials:

-6(IL) (0005)

Page 12 of 15    07/09/2002 7:04:44    Form 3014   1/01

*C.H.*

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

0037122983 - 9701

Initials _____

-6(IL) (0005)    Page 13 of 15    07/09/2002 7:04:44    Form 3014  1/01

From Ameriquest Mortgage    08:43    Jul-08-02    T-633    P.002/080    F-346

A 0036

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     *Castella Williams Harris*     (Seal)
                              CASTELLA WILLIAMS HARRIS      -Borrower

_____     _____     (Seal)
                                                            -Borrower

_____ (Seal)     _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)     _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)     _____ (Seal)
                    -Borrower                            -Borrower

0037122983 - 9701

-6(IL) (0005)          Page 14 of 16    07/09/2002  7:04:44 AM   Form 3014  1/01

A 0037

07/18/2002 11:48 FAX 708 747 6025     LAW TITLE MATTESON                    004/014

STATE OF ILLINOIS,                County ss:    *Will*

I, *The Undersigned*                                            a Notary
Public in and for said county and in said state, hereby certify that

*Castella Williams Harris*

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing
instrument, appeared before me this day in person, and acknowledged that he/she/they signed
and delivered the said instrument as his/her/their free and voluntary act, for the uses and
purposes therein set forth.

   Given under my hand and official seal of this    *9th , July 2002*

My Commission Expires:                          *Tinish Unice Mills*

                                                Notary Public

┌─────────────────────────────────────┐
│            OFFICIAL SEAL              │
│          TINISH UNICE MILLS           │
│   NOTARY PUBLIC - STATE OF ILLINOIS   │
│  MY COMMISSION EXPIRES APRIL 18, 2006 │
└─────────────────────────────────────┘

400-16IL (4/01)          Page 15 of 16          0037122983 - 9701
                                                07/09/2002 7:04:44 AM

A 0038



WE HEREBY CERTIFY THIS
TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL
BY:_____
AMERIQUEST MORTGAGE COMPANY

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published In the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 8th day of July , 2002 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Ameriquest Mortgage Company (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

8922 SOUTH WINCHESTER, CHICAGO, IL 60636
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 11.000 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of August, 2004 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials _C.H._

Loan Number: 0037122983 - 9701

610-1 (Rev 1/01)                    Page 1 of 3

07/09/2002 7:04:44 AM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding six and one-half percentage points ( 6.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.000% or less than 11.000%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 17.000% or less than 11.000%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials _C.H_

Loan Number: 0037122983 - 9701

A 0040

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Castella William Harris_ (Seal)          _____ (Seal)
Borrower CASTELLA WILLIAMS HARRIS          Borrower

_____ (Seal)          _____ (Seal)
Borrower          Borrower

Loan Number: 0037122983 - 9701

Page 3 of 3

07/09/2002 7:04:44 AM

WE HEREBY CERTIFY THIS.
TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL
BY: _____
AMERIQUEST MORTGAGE COMPANY

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 8th day of July, 2002 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Ameriquest Mortgage Company

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
6922 SOUTH WINCHESTER, CHICAGO, IL 60636

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

0037122983

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Initials _____
Page 1 of 4                                          Form 3170 1/01
VMP-57R (0008)     VMP MORTGAGE FORMS - (800)521-7291     07/09/2002 7:04:44 AM

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

07/09/2002 7:04:44 AM
0037722983

Initials: [signature]

57R (0008)                    Page 2 of 4                    Form 3170 1/01

A 0043

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

1. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

07/09/2002 7:04:44 AM

0027122983

Initials: _____    Form 3170 1/01

57R (0008)                    Page 3 of 4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_Castella Williams Harris_ (Seal)
CASTELLA WILLIAMS HARRIS        -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

0037122983

@-57R (0008)                Page 4 of 4         Form 3170 1/01
                                                07/09/2002 7:04:44 AM

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

☐ Preliminary     ☒ Final

LENDER: Ameriquest Mortgage Company
8 Skyline Drive
Hawthorne, NY 10532
866-345-6334

Borrowers: CASTELLA WILLIAMS HARRIS

Type of Loan:  ADJUSTABLE RATE
Date:  July 8, 2002

Address:     6922 SOUTH WINCHESTER
City/State/Zip:   CHICAGO,IL 60636

Loan Number:  0037122983 - 9701

Property:   6922 SOUTH WINCHESTER, CHICAGO, IL  60636

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 11.600   % | $ 122,744.18 | $ 46,935.60 | $ 169,679.78 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $471.41 | 09/01/2002 | | | |
| 1 | $443.59 | 08/01/2032 | | | |

VARIABLE RATE FEATURE:
☒ Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:     You are giving a security interest in the property located at:  6922 SOUTH WINCHESTER, CHICAGO, IL  60636

ASSUMPTION:   Someone buying this property   ☒ cannot assume the remaining balance due under original terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:     You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES:   If a payment is late, you will be charged  6.000%  of the overdue payment .

PREPAYMENT:  If you pay off your loan early, you
☒ may     ☐ will not   have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Castella Williams Harris_    7/8/02
Borrower CASTELLA WILLIAMS HARRIS     Date      Borrower      Date

Borrower      Date      Borrower      Date

**Borrower Copy**

TIL1 (Rev. 7/01)

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Preliminary ☐    Final ☒

LENDER: Ameriquest Mortgage Company
8 Skyline Drive
Hawthorne, NY 10532
866-345-6334

Borrowers: CASTELLA WILLIAMS HARRIS

Type of Loan:  ADJUSTABLE RATE
Date:  July 8, 2002

Address:    6922 SOUTH WINCHESTER
City/State/Zip:  CHICAGO, IL 60636

Loan Number:  0037122983 - 9701

Property:    6922 SOUTH WINCHESTER, CHICAGO, IL 60636

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 11.800  % | $  122,744.18 | $  46,935.60 | $  169,679.78 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $471.41 | 09/01/2002 | | | |
| 1 | $443.59 | 08/01/2032 | | | |

VARIABLE RATE FEATURE:
☒ Your loan has a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at: 6922 SOUTH WINCHESTER, CHICAGO, IL 60636

ASSUMPTION:  Someone buying this property  ☒  cannot assume the remaining balance due under original terms.
☐  may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:    You may obtain property insurance from anyone you want that is acceptable to Ameriquest Mortgage Company

LATE CHARGES:  If a payment is late, you will be charged  6.000%  of the overdue payment .

PREPAYMENT:  If you pay off your loan early, you
☒ may  ☐ will not  have to pay a penalty.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Castella Williams Harris_  7/9/02
Borrower CASTELLA WILLIAMS HARRIS       Date       Borrower       Date

Borrower       Date       Borrower       Date

TIL1 (Rev. 7/01)

**Original**

A 0047

OMB NO. 2502-0265

| A. | B. TYPE OF LOAN: |
|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | 1. ☐FHA  2. ☐FmHA  3. ☒CONV. UNINS.  4. ☐VA  5. ☐CONV. INS. |
| **SETTLEMENT STATEMENT** | 6. FILE NUMBER: 143777M    7. LOAN NUMBER: 0037122983-9701 |
| | 8. MORTGAGE INS CASE NUMBER: |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*    1.0   2/03    (143777M,PO/143777M/)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| CASTELLA WILLIAMS HARRIS<br>6922 SOUTH WINCHESTER<br>CHICAGO, IL 60636 | | AMERIQUEST MORTGAGE COMPANY<br>8 SKYLINE DRIVE<br>HAWTHORNE, NY 10532 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT:    36-3871344 | I. SETTLEMENT DATE: |
|---|---|---|
| 6922 SOUTH WINCHESTER<br>CHICAGO, IL 60636<br>COOK County, Illinois<br>0037122983-9701 | Law Title Insurance Company, Inc.<br><br>PLACE OF SETTLEMENT<br>4747 Lincoln Mall Drive, Suite 604<br>Matteson, IL 60443 | July 9, 2002<br><br>Disburse:07/15/02 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 17,091.33 | 403. | |
| 104. Payoff First Mortgage to FAIRBANKS CAPITAL CORP. | 28,930.11 | 404. | |
| 105. Payoff Second Mortgage | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes    to | | 406. City/Town Taxes    to | |
| 107. County Taxes    to | | 407. County Taxes    to | |
| 108. Assessments    to | | 408. Assessments    to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 46,021.44 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 49,500.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes    to | | 510. City/Town Taxes    to | |
| 211. County Taxes    to | | 511. County Taxes    to | |
| 212. Assessments    to | | 512. Assessments    to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 49,500.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 46,021.44 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 49,500.00 ) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| **303. CASH ( FROM ) ( X TO ) BORROWER** | 3,478.56 | **603. CASH ( TO )( FROM ) SELLER** | 0.00 |

Page 2

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700. TOTAL COMMISSION** Based on Price $ @ % | | | |
| *Division of Commission (line 700) as Follows:* | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. | to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee 1.0000 % | to SAB MORTGAGE | 495.00 | ✓ |
| 802. Loan Discount 1.0000 % | to AMERIQUEST MORTGAGE COMPANY | 495.00 | ✓ |
| 803. Appraisal Fee | to PAUL T. DEMOS | 500.00 | ✓ |
| 804. Credit Report | to ADVANTAGE CREDIT | 40.00 | ✓ |
| 805. PROCESSING FEE | to SAB MORTGAGE | 100.00 | ✓ |
| 806. Mortgage Ins. App. Fee | to | | |
| 807. ADMIN FEE | to AMERIQUEST MORTGAGE COMPANY | 175.00 | ✓ |
| 808. BROKER FEE | | | |
| 809. TAX SERVICE FEE | to AMERIQUEST MORTGAGE COMPANY | 70.00 | ✓ |
| 810. FLOOD CERTIFICATION FEE | to AMERIQUEST MORTGAGE COMPANY | 16.00 | ✓ |
| 811. UNDERWRITING FEE | to AMERIQUEST MORTGAGE COMPANY | 375.00 | ✓ |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 07/12/02 to 08/01/02 @ $ 14.920000/day ( 20 days %) | | 298.40 | ✓ |
| 902. Mortgage Insurance Premium for months to | | | |
| 903. Hazard Insurance Premium for 1.0 years to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance | months @ $ per month | | |
| 1002. Mortgage Insurance | months @ $ per month | | |
| 1003. City/Town Taxes | months @ $ per month | | |
| 1004. County Taxes | months @ $ per month | | |
| 1005. Assessments | months @ $ per month | | |
| 1006. | months @ $ per month | | |
| 1007. | months @ $ per month | | |
| 1008. | months @ $ per month | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee | to Law Title Insurance Company, Inc. | 210.00 | ✓ |
| 1102. T.I SET UP | to Law Title Insurance Company, Inc. | 125.00 | ✓ |
| 1103. Title Examination | to | | |
| 1104. Title Insurance Binder | to | | |
| 1105. Document Preparation | to | | |
| 1106. Notary Fees | to | | |
| 1107. Attorney's Fees | to | ) | |
| (includes above item numbers: | | | |
| 1108. Title Insurance | to Law Title Insurance Company | 586.00 | ✓ |
| (includes above item numbers: | | ) | |
| 1109. Lender's Coverage | $ | | |
| 1110. Owner's Coverage | $ | | |
| 1111. Overnight courier for payoff | to Law Title Insurance Company, Inc. | 40.00 | ✓ |
| 1112. EPA/LOC NOTE ENDORSEMENT | to Law Title Insurance Company, Inc. | 160.00 | ✓ |
| 1113. LATER DATE | to Law Title Insurance Company, Inc. | 70.00 | ✓ |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $ ; Mortgage $ 51.50; Releases $ 23.50 | | 75.00 | |
| 1202. City/County Tax/Stamps:Deed ; Mortgage | | | |
| 1203. State Tax/Stamps: Revenue Stamps ; Mortgage | | | |
| 1204. City Transfer Tax | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey | to | | |
| 1302. Pest Inspection | to | | |
| 1303. PAYMENT | to BENFCL/HFC | 1,924.00 | ✓ |
| 1304. PAYMENT | to PEOPLES GAS LIGHT | 1,691.00 | ✓ |
| 1305. See addt'l disb. exhibit | to | 9,645.03 | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | 17,091.33 | |

Certified to be a true copy.

( 143777M / 143777M / 1 )

 

(143777M.PFD/143777M/T)

## ADDITIONAL DISBURSEMENTS EXHIBIT

**Borrower:** CASTELLA WILLIAMS HARRIS
**Lender:** AMERIQUEST MORTGAGE COMPANY
**Settlement Agent:** Law Title Insurance Company, Inc.
(708)747-5513
**Place of Settlement:** 4747 Lincoln Mall Drive, Suite 604
Matteson, IL 60443
**Settlement Date:** July 9, 2002
**Disbursement Date:** July 15, 2002
**Property Location:** 6922 SOUTH WINCHESTER
CHICAGO, IL 60636
COOK County, Illinois
0037122983-9701

| PAYEE/DESCRIPTION | NOTE/REF NO | BORROWER | SELLER |
|---|---|---|---|
| COOK COUNTY COLLECTOR<br>1ST INSTALLMENT 2001 TAXES | | 688.93 | |
| LAW TITLE INSURANCE COMPANY, INC.<br>TI 1999 & 2000 OPEN ITEM | | 3,957.00 | |
| AM & M CORPORATION<br>PAYMENT | | 5,000.00 | |
| Total Additional Disbursements shown on Line 1305 | | $ 9,645.93 | $ 0.00 |

A 0050

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

Borrower: CASTELLA WILLIAMS HARRIS
Lender: AMERIQUEST MORTGAGE COMPANY
Settlement Agent: Law Title Insurance Company, Inc.
(708)747-5513
Place of Settlement: 4747 Lincoln Mall Drive, Suite 604
Matteson, IL 60443
Settlement Date: July 9, 2002
Disbursement Date: July 15, 2002
Property Location: 6922 SOUTH WINCHESTER
CHICAGO, IL 60636
COOK County, Illinois
0037122983-9701

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

CASTELLA WILLIAMS HARRIS

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Law Title Insurance Company, Inc.
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(143777M.PFD/143777M/5)

07/16/2002 11:49 FAX 708 747 6025          LAW TITLE MATTESON                    Ø007/014
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  2/8
⌐ 7/16/02 11:50        f(630) 717 7538           Law Title        ⌐ Curtis→Tish

## Law Title Insurance Company, Inc.

Commitment Number: 143777M

### SCHEDULE A

1. Effective Date:  June 12, 2002

2. Policy (or Policies) to be issued:                                                  Amount
   (a) Owner's Policy        ( ALTA Own. Policy (10/17/92)        )                        $
       Proposed Insured:

   (b) Loan Policy           ( ALTA Loan Policy (10/17/92)        )                $ 49,500.00
       Proposed Insured:
       AMERIQUEST MORTGAGE, its successors and/or assigns as their respective
       interests may appear.

   (c)                       (                                    )                        $
       Proposed Insured:

3. The estate or interest in the land described or referred to in this Commitment and covered herein is:

   Fee Simple

4. Title to the Fee Simple estate or interest in said land at the effective dated hereof is vested in:

   CASTELLA WILLIAMS HARRIS

5. The land referred to in this Commitment is described as follows:

   SEE SCHEDULE C ATTACHED HERETO

   For Information only: 6922 SOUTH WINCHESTER, CHICAGO, IL 60636

ISSUED BY: LAW TITLE INSURANCE COMPANY, INC.
Authorized Agent For: Fidelity National Title Insurance Company
Refer inquires to the Title Department
Law Title Insurance Company, Inc.
1300 Iroquois Drive, Suite 210
Naperville, IL 60563                                    By: _____
(630)717-7600                                               Authorized Officer or Agent

ALTA Commitment                                              Valid Only if Schedule B and
Schedule A (10/6/82)                                         Cover are Attached
                                                            (143777.PFD/143777M/8)

A.0153