# APPENDIX 40

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CASTELLA WILLIAMS HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05 C 4025 |
| | ) | |
| AMERIQUEST MORTGAGE COMPANY, | ) | Judge Der-Yeghiayan |
| AMC MORTGAGE SERVICES, INC., | ) | |
| and DEUTSCHE BANK TRUST SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT AMERIQUEST MORTGAGE COMPANY'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

Defendant Ameriquest Mortgage Company ("Ameriquest"), by its attorneys, answers Plaintiff's amended complaint as follows:

1.     Plaintiff Castella Williams Harris brings this action against a "subprime" mortgage lender and others to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

**ANSWER:**    Ameriquest admits that Plaintiff has filed a lawsuit against it. Ameriquest

objects to the term "subprime" as vague. Ameriquest is without knowledge or information

sufficient to form a belief as to the truth of the intended characterization of the term "subprime."

Ameriquest denies all remaining allegations in Paragraph 1. Ameriquest specifically denies that it

violated the Truth in Lending Act, 15 U.S.C. § 1601, or implementing Federal Reserve Board

Regulation Z, 12 C.F.R. part 226.

2.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), and 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants do business in the District and are deemed to reside here.

**ANSWER:**    Ameriquest does not contest subject matter jurisdiction, personal jurisdiction,

or venue. Ameriquest denies any remaining allegations in Paragraph 2.

3.     Plaintiff owns and resides in a home at 6922 S. Winchester, Chicago, IL 60636.

**ANSWER:**     Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and, therefore, denies same.

4.     Defendant Ameriquest Mortgage Company (hereinafter "Ameriquest") is foreign corporation which maintains offices in and does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606. It is engaged in the business of originating "subprime" mortgages and makes more than 26 loans per year.

**ANSWER:**     Ameriquest admits that it is a corporation incorporated in a state other than Illinois, that it maintains offices and does business in Illinois, and that its registered agent is National Registered Agents, Inc., which has offices at 200 West Adams, Chicago, Illinois 60606. Ameriquest objects to the term "subprime" as vague. Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the intended characterization of the term "subprime." Ameriquest admits that it is engaged in the business of originating loans, secured by mortgages, and that, during the relevant time period of Plaintiff's loan, originated more than 26 loans per year. Ameriquest denies the remaining allegations in Paragraph 4.

5.     Defendant AMC Mortgage Services, Inc., formerly known as Ameriquest Newco, Inc., is a Delaware corporation that does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606. It is an affiliate of Ameriquest.

**ANSWER:**     Ameriquest admits the allegations in the first sentence of Paragraph 5. Ameriquest admits that Ameriquest Mortgage Services, Inc.'s registered agent is National Registered Agents, Inc., which has offices at 200 West Adams Street, Chicago, Illinois 60606. Ameriquest objects to the term "affiliate" as vague. Ameriquest affirmatively states that AMC Mortgage Services, Inc. and Ameriquest are sister companies. Ameriquest denies the remaining allegations in Paragraph 5.

6.     Defendant Deutsche Bank Trust Services is operated by Deutsche Bank National Trust Company ("Deutsche Bank"). Deutsche Bank is a foreign corporation with its headquarters at 60 Wall Street, New York, NY 10005. It does business in Illinois. It is engaged in the business of buying mortgage loans on Illinois properties.

**ANSWER:**     Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and, therefore, denies same.

7.     Prior to July 8, 2002, plaintiff applied for a loan from Ameriquest.

**ANSWER:**     Ameriquest admits the allegations in Paragraph 7.

8.     Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

**ANSWER:**     Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and, therefore, denies same.

9.     The loan was closed on or about July 8, 2002.

**ANSWER:**     Ameriquest objects to the allegations as vague.  Ameriquest denies the allegations in Paragraph 9.

10.     Immediately prior to the closing, plaintiff was informed that the loan terms were being altered to her detriment, as set forth in Exhibit A.

**ANSWER:**     Ameriquest denies the allegations in Paragraph 10.

11.     On or about July 8, 2002, plaintiff signed or received the following documents relating to the loan, among others:

a.     An adjustable rate mortgage, a copy of which is attached as Exhibit B;

b.     A Truth in Lending disclosure statement, Exhibit C;

c.     Several incomplete copies of the TILA notice of right to cancel, Exhibit D; and

d.     A settlement statement on form HUD-1, Exhibit E.

**ANSWER:**     Ameriquest objects tot the allegations in Paragraph 11 as vague.  Ameriquest admits that Plaintiff entered into a loan with Ameriquest.  Ameriquest admits that Plaintiff, coincident with Plaintiff's loan, received and signed a mortgage, a Truth in Lending disclosure statement, several copies of a notice of right to cancel, and a settlement statement.  Ameriquest denies that Exhibits B, C, D, and E are, respectively, true and accurate copies of the mortgage, the

Truth in Lending disclosure statement, the several copies of the notice of right to cancel, and the

settlement statement received and signed by Plaintiff. Ameriquest denies that Plaintiff received

incomplete copies of the notice of right to cancel. Ameriquest denies the remaining allegations in

Paragraph 11.

12.    Plaintiff has been instructed to make payments to AMC Mortgage Services, Inc. (Exhibit F), which claims the right to receive payments under the loan or otherwise claims an interest in it.

**ANSWER:**    Ameriquest admits that Plaintiff received instructions to make payments to

AMC Mortgage Services, Inc. and that AMC Mortgage Services, Inc., as servicer for Plaintiff's loan,

may receive payments from Plaintiff on behalf of the holder of the loan. Ameriquest denies the

remaining allegations in Paragraph 12.

13.    Plaintiff's loan has been assigned to Deutsche Bank Trust Services, which is the present holder or owner of plaintiff's loan.

**ANSWER:**    Ameriquest admits that Deutsche Bank National Trust Company is the

present holder of Plaintiff's loan. Ameriquest denies any remaining allegations in Paragraph 13.

14.    Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

(a) **Consumer's right to rescind.**

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section. [fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material

4

disclosures,[fn]48 whichever occurs last.  If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.  In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) Notice of right to rescind.  In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind.  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires. . . .

(f) Exempt transactions.  The right to rescind does not apply to the following:

(1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2) A credit plan in which a state agency is a creditor.

ANSWER:    Ameriquest is without knowledge or information sufficient to form a belief as to the truth of the allegations that the transaction was secured by Plaintiff's home.  Ameriquest denies that 12 C.F.R. §226.23(f)(2) states "(2) A credit plan in which a state agency is a creditor." Ameriquest admits that the remaining allegations in Paragraph 14 contain a portion of the text of 12 C.F.R. § 226.23.  Ameriquest denies the allegations of Paragraph 14 insofar as they purport to make

5

any allegation of wrongdoing by Ameriquest under said statute. Ameriquest denies the remaining allegations in Paragraph 14.

15.    The TILA notices of right to cancel furnished to plaintiff were incomplete.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 15.

16.    The payment schedule is not fully and completely disclosed on Exhibit C.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 16.

17.    The failure to fully and completely disclose the payment schedule violates 15 U.S.C. § 1638 and 12 C.F.R. § 226-28.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 17.

18.    The provision of incomplete notices of right to cancel violates 15 U.S.C. § 1635 and 12 C.F.R. § 226.23.

**ANSWER:**    Ameriquest denies the allegations in Paragraph 18.

19.    15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

**ANSWER:**    Ameriquest admits that the allegations in Paragraph 19 contain the text of 15 U.S.C. §1635(g). Ameriquest denies the allegations in Paragraph 19 insofar as they purport to make any allegation of wrongdoing by Ameriquest under said statute. Ameriquest denies the remaining allegations in Paragraph 19.

20.    Plaintiff further requests an accounting of the loan proceeds and her payments, as she has been notified at various times that Ameriquest has made payments of taxes and insurance, which plaintiff believes may be incorrect.

**ANSWER:**    Ameriquest objects to Paragraph 20 as vague and as violative of pleading requirements. Ameriquest denies the allegations in Paragraph 20.

21.    On June 13, 2005, plaintiff sent notice of her intent to rescind. A copy is attached hereto as Exhibit G.

**ANSWER:**    Ameriquest denies that Plaintiff properly sought to rescind the loan and denies that Plaintiff has any right to rescind the loan.  Ameriquest denies any remaining allegations in Paragraph 21.

22.    Defendant received plaintiff's notice but refused to rescind her loan.  See <u>Exhibit H</u>.

**ANSWER:**    Ameriquest denies that Plaintiff properly sought to rescind the loan and denies that Plaintiff has any right to rescind the loan.  Ameriquest admits that the loan has not been rescinded.  Ameriquest denies the remaining allegations in Paragraph 22.

23.    TILA's three-year statute of limitations was tolled by the filing on July 1, 2005, of <u>Williams v. Ameriquest Mortgage Co.</u>, 05 CV 6189 (S.D.N.Y.).  Ms. Harris is a member of the TILA rescission class in the <u>Williams</u> case.  See <u>American Pipe & Constr. Co. V. Utah</u>, 414 U.S. 538, 552-53 (1974)("the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class...."); <u>Crown, Cork & Seal Co. v. Parker</u>, 462 U.S. 345, 350-52 (1983)("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied....").

**ANSWER:**    Ameriquest denies the allegations in Paragraph 23.

## AFFIRMATIVE DEFENSES

Defendant Ameriquest states as its affirmative defenses as follows:

1.    Plaintiff's claims for rescission, statutory damages, costs, and attorney's fees for any alleged underlying Truth in Lending Act violation are barred by the three-year statute of limitations for rescission and the one-year statute of limitations for statutory damages, costs and attorney's fees under the Truth in Lending Act.

2.    Plaintiff's purported cause of action fails to state a claim upon which relief may be granted.

3.    If it should be deemed that Plaintiff is entitled to rescission, any obligation on the part of the holder of the loan to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiff's reimbursement or other return to the holder of the loan of all funds disbursed on Plaintiff's behalf in connection with the subject

7

mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other rules of law

or equity.  Any obligation on the part of the holder of the loan to rescind and to release any lien is

conditioned upon Plaintiff reimbursing or otherwise returning all funds disbursed on her behalf to

the holder of the loan in connection with the subject loan, less any finance charges.

WHEREFORE, Defendant Ameriquest Mortgage Company requests that this Court enter

judgment in its favor and against Plaintiff, Castella Williams Harris, award Ameriquest Mortgage

Company its costs, and provide such further and additional relief as it deems just and appropriate.

Dated:  February 7, 2006                    Respectfully submitted,

                                            **AMERIQUEST MORTGAGE COMPANY,**
                                            **Defendant**


                                            By:  s/Jonathan N. Ledsky
                                                     One of Its Attorneys


Craig A. Varga
Jonathan N. Ledsky
Jaime S. Roginski-Kord
VARGA BERGER LEDSKY HAYES & CASEY
224 South Michigan Avenue, Suite 350
Chicago, Illinois  60604
(312) 341-9400

## CERTIFICATE OF SERVICE

Jonathan N. Ledsky an attorney hereby certifies that a true and correct copy of the

foregoing, **Defendant Ameriquest Mortgage Company's Answer to Plaintiff's Amended**

**Complaint,** was served electronically via CM/ECF e-Filing upon:

> Al Hofeld
> Edelman Combs Latturner & Goodwin LLC
> 120 S. LaSalle Street, 18th Floor
> Chicago, IL  60606

this 7th day of February, 2006, on or before the hour of 5:00 p.m.

s/Jonathan N. Ledsky

# APPENDIX 41

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
### Chicago, Illinois  60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email:  edcombs@aol.com
### www.edcombs.com

**BY MESSENGER**

Ameriquest Mortgage Corporation
c/o registered agent
National Registered Agents
200 W. Adams
Chicago, IL 60606

           Re:    Notice of rescission, claim and lien, Castella Williams Harris, 6922
                     S. Winchester, Chicago, IL 60636, loan of July 8, 2002

Ladies/ Gentlemen:

        The above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

        Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

        If you claim that the owner of the loan is other than yourself, please identify the owner pursuant to 15 U.S.C. §1641(d).

        Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

                         Sincerely,

                         Daniel A. Edelman

cc: client

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on June 13, 2005.

_____

Daniel A. Edelman

I:\case\ameriquest14.673\pleading\demand.wpd

2

# APPENDIX 42

# VARGA BERGER LEDSKY HAYES & CASEY
PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

SANTA FE BUILDING
224 SOUTH MICHIGAN AVENUE
SUITE 350
CHICAGO, ILLINOIS 60604-2535

TELEPHONE: 312-341-9400
FACSIMILE: 312-341-2900

June 29, 2005

JONATHAN N. LEDSKY
(312) 341-9840

jledsky@vblhc.com

**VIA FACSIMILE & U.S. MAIL**

Mr. Al Hofeld
Edelman, Combs, Latturner & Goodwin, LLC
120 South LaSalle Street
18th Floor
Chicago, Illinois 60603

> Re: Notice of rescission, claim, and lien on behalf of Castella Williams Harris,
> 5922 South Winchester, Chicago, IL 60636,
> Ameriquest Mortgage Company loan dated July 8, 2002

Dear Al:

    We are in receipt of your law firm's letter served on the registered agent of our client, Ameriquest Mortgage Company ("Ameriquest"). The letter seeks rescission of a loan made by Ameriquest to Castella Williams Harris.

    The letter asserts, as the basis of the rescission demand, "noncompliance with the Truth in Lending Act," and nothing more. The letter, conspicuously, omits any identification of how you contend Ameriquest has failed to comply with the Truth in Lending Act. Typically, your law firm's letters seeking rescission on behalf of a particular borrower identify the alleged violations of the Truth in Lending Act. Without such a statement in your rescission letter on behalf of Castella Williams Harris, Ameriquest cannot evaluate the bona fides of the rescission demand. Please advise us as to the basis of the rescission request on behalf of Castella Williams Harris. We will, then, immediately communicate Ameriquest's position regarding the rescission request. Thank you.

Very truly yours,

Jonathan N. Ledsky

JNL:sto

# APPENDIX 43

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DELOIS MILLS,                                  )
                                               )
                    Plaintiff,                 )
                                               )
          vs.                                  )      No. 05 C 3976
                                               )
AMERIQUEST MORTGAGE COMPANY,                   )      Judge Leinenweber
AMC MORTGAGE SERVICES, INC.,                   )
and JOHN DOES 1-10,                            )
                                               )
                    Defendants.                )

## DEFENDANTS' RULE 26(a)(1) DISCLOSURES

Defendants, Ameriquest Mortgage Company and AMC Mortgage Services, Inc.

("Defendants"), by their attorneys, submit their Rule 26(a)(1) disclosures:

(A)     The name and, if known, the address and telephone number of each individual likely
to have discoverable information relevant to disputed facts alleged with particularity in the pleadings,
identifying the subjects of the information:

**Response:**     Defendants direct Plaintiff to the persons identified in the documents

produced in conjunction with these Rule 26(a)(1) disclosures.

(B)     A copy of, or a description by category and location of, all documents, data
compilations, and tangible things in the possession, custody, or control of the party that are relevant
to disputed facts alleged with particularity in the pleadings:

**Response:**     Defendants produce documents with Bates-stamped Nos. A-00001 –

A-00149.

(C)     A computation of any category of damages claimed by the disclosing party, making
available for inspection and copying as under Rule 34 the documents or other evidentiary material,
not privileged or protected from disclosure, on which such computation is based, including materials
bearing on the nature and extent of the injuries suffered:

**Response:**     Defendants claim no damages.

(D)     For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

    **Response:**     Defendants did not purchase insurance, other than a title insurance policy,

affording Defendants coverage for the defense of this lawsuit.

Dated:  February 3, 2006
                    **AMERIQUEST MORTGAGE COMPANY,
and AMC MORTGAGE SERVICES, INC.,
Defendants**

                    By:_____
                            One of their Attorneys

Craig A. Varga
Jonathan N. Ledsky
Jaime S. Roginski-Kord
Varga Berger Ledsky Hayes & Casey
A Professional Corporation
224 South Michigan Avenue
Suite 350
Chicago, Illinois  60604
(312) 341-9400

## CERTIFICATE OF SERVICE

    I, Jonathan N. Ledsky, an attorney, hereby certify that a true and correct copy of the

foregoing **Defendants' Rule 26(a)(1) Disclosures** was served upon:

Al Hofeld
Edelman, Combs, Latturner & Goodwin, LLC
120 South LaSalle Street
18th Floor
Chicago, Illinois  60603

by placing same in the United States mail chute located at 224 South Michigan Avenue, Chicago,

Illinois 60604, properly addressed and postage fully prepaid, this 3rd day of February, 2006, on or

before the hour of 5:00 p.m.

                    _____
                    Jonathan N. Ledsky

Return To:

Ameriquest Mortgage Company
  P.O. Box 11507
Santa Ana, CA 92711

Prepared By:Ameriquest Mortgage Company

Shannon Presley
9501 W. 144th Place, #
302,Orland Park, IL 60462

--------------------[Space Above This Line For Recording Data]--------------------

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 23, 2002 ,
together with all Riders to this document.
(B) "Borrower" is

Delois E. Mills and Crosby Mills, Wife and Husband, Tenants by Entirety.

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

0037658861 - 5530

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3014  1/01

-6(IL) (0005)
Page 1 of 15          Initials: _DWM_
VMP MORTGAGE FORMS - (800)521-7291.        07/23/2002  8:39:13 AM

Lender's address is   1100 Town and Country Road, Suite 200 Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated July 23, 2002
The Note states that Borrower owes Lender eighty-five thousand five hundred and
00/100                                                                                    Dollars
(U.S. $85,500.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than August 1, 2032
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider        ☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

                                                       0037858861 - 5530
                                                       Initials:
-6(IL) (0005)                  Page 2 of 15     07/23/2002 8:39:13   Form 3014  1/01

A-00005

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the County [Type of Recording Jurisdiction] of COOK [Name of Recording Jurisdiction]:

Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: which currently has the address of
12449 South Elizabeth Street [Street]
RIVERDALE [City], Illinois 60827 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0037658861 - 5530
Initials
-6(IL) (0005) Page 3 of 15 07/23/2002 8:39:13 AM Form 3014 1/01

A-00006

RI135271   Page 5 of 6

### Appendix A — Legal Description

**LOT 24 IN BLOCK 8 IN W.F. KAISER AND COMPANY'S FAIRLAND SUBDIVISION OF THE EAST 1/2 OF THE NORTHEAST 1/4 OF THE SOUTHWEST 1/4 AND NORTHWEST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 29, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.**

Commonly known as:  **12449 SOUTH ELIZABETH STREET**
                    **CALUMET PARK, IL  60827**

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0037659863 5530
Initials: _BWTC_

-6(IL) (0005)                    Page 4 of 15        07/23/2002  8:39:13        Form 3014   1/01

C.M.

Smp

A-00008

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

0037688847/5530
Initials: _____

07/23/2002  8:39:13       Form 3014   3/99

-6(IL) (9904).01                Page 6 of 15

A-00009

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0037 ~ 5530
Initials: _____

-6(IL) (0005)          Page 9 of 16          07/23/2002 8:39:13          Form 3014  1/01

C.M.

Smp

A-00010

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may ·file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property, and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

0037 _____ 5530
Initials: _____

-6(IL) (0005)        Page 7 of 16        07/23/2002 8:39:13        Form 3014  1/01

A-00011

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

0037689861 5530
Initials: _LWM_

-6(IL) (0005)          Page 8 of 15          07/23/2002 8:39:13          Form 3014  1/01

_C.M._

_SMP_

A-00012

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

0037685761 5536
Initials: _DWM_
C.M.
ƆMP

⟨logo⟩ -6(IL) (0005)          Page 9 of 16          07/23/2002 6:39:13          Form 3014  1/01

A-00013

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0037658861 - 5530
Initials: _____

-6(IL) (0005)       Page 10 of 15    07/23/2002 9:39:13    Form 3014  1/01

A-00014

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0037658861 - 5530

Initials:

C.M.

A-00015

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0037656961 - 5530
Initials: _____

-6(IL) (0005)        Page 12 of 15        07/23/2002 8:39:13    Form 3014  1/01

*C.M.*

A-00016

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

0037658861 - 5530
Initials:
-6(IL) (0005)       Page 13 of 15       07/23/2002 8:39:13    Form 3014  1/01

A-00017

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _Delois Waymon Mills_ (Seal) 7-23-02
                              Delois Waymon Mills          -Borrower

_____     _Crosby Mills_____ (Seal)
                              Crosby Mills                 -Borrower

_____ (Seal)      _____ (Seal)
                 -Borrower                      -Borrower

_____ (Seal)      _____ (Seal)
                 -Borrower                      -Borrower

_____ (Seal)      _____ (Seal)
                 -Borrower                      -Borrower

0037658861 - 5530

-6(IL) (0005)          Page 14 of 15  07/23/2002  8:39:13 AM  Form 3014  1/01

A-00018

STATE OF ILLINOIS, County ss: Cook

I, _Sandra Clausen_ a Notary
Public in and for said county and in said state, hereby certify that

_Debis Wayman Mills_

_Crosby O Mills_

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing
instrument, appeared before me this day in person, and acknowledged that he/she/they signed
and delivered the said instrument as his/her/their free and voluntary act, for the uses and
purposes therein set forth.

Given under my hand and official seal of this _23 DAY of July 2002_

My Commission Expires: _3-14-06_  _Sandra Clausen_
                                    Notary Public



OFFICIAL SEAL
SANDRA CLAUSEN
Notary Public - State of Illinois
My Commission Expires Mar 14, 2006

A-00019

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

[ ] Preliminary     [X] Final

LENDER: Ameriquest Mortgage Company
9501 W. 144th Place, # 302
Orland Park, IL 60462
(708)403-0400

Borrowers: Delois Waymon Mills     Crosby Mills

Type of Loan: FIXED RATE
Date: July 23, 2002

Address:       12449 South Elizabeth Street
City/State/Zip:  RIVERDALE, IL 60827

Loan Number: 0037658861 ~ 5530

Property:   12449 South Elizabeth Street, RIVERDALE, IL 60827

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.723 % | $ 128,375.26 | $ 81,590.04 | $ 209,965.30 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 359 | $583.27 | 09/01/2002 | | | |
| 1 | $571.37 | 08/01/2032 | | | |

**VARIABLE RATE FEATURE:**
[ ] Your loan has a variable rate feature . Disclosures about the variable rate feature have been provided to you earlier.

SECURITY:   You are giving a security interest in the property located at: 12449 South Elizabeth Street, RIVERDALE, IL 60827

ASSUMPTION:   Someone buying this property   [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

PROPERTY INSURANCE:   You may obtain property insurance from anyone you want that is acceptable to
Ameriquest Mortgage Company

LATE CHARGES:   If a payment is late, you will be charged  5.000%  of the overdue payment .

PREPAYMENT:   If you pay off your loan early, you
[ ] may   [X] will not   have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Delois Waymon Mills_  7-23-02
Borrower Delois Waymon Mills          Date

_Crosby Mills_  7-23-02
Borrower Crosby Mills          Date

_____          _____
Borrower          Date          Borrower          Date

**Original**

TIL1 (Rev 7/01)                        07/23/2002 8:39:13 AM

A-00020

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Urban Development

OMB Approval No. 2502-0491
WLI

| Name & Address of Borrower: | Name & Address of Lender: |
|---|---|
| Delois Waymon Mills    Crosby Mills | Ameriquest Mortgage Company |
| | 9601 W. 144th Place, # 302 |
| 12449 South Elizabeth Street    RIVERDALE, IL 60827 | Orland Park, IL 60462 |
| Property Location: (if different from above) | Settlement Agent: |
| 12449 South Elizabeth Street, RIVERDALE, IL  60827 | Place of Settlement: |

**L.  Settlement Charges**

Loan Number: 0037658861 - 5530

Settlement Date:

| 800. Items Payable in Connection with Loan | | **M.  Disbursement to Others** | |
|---|---|---|---|
| 801. Loan origination fee     % to | | | |
| 802. Loan discount  3.000  % to  Ameriquest Mortgage Company | $2,565.00 | | |
| 803. Appraisal fee to  Dan Laroche | $350.00 | 1501. NATIONAL CITY MORTGAGE          (W) | $80,077.00 |
| 804. Credit report to | | | |
| 805. Inspection fee to | | 1502. | |
| 806. | | | |
| 807. | | 1503. | |
| 808. Yield Spread Premium to | | | |
| 809. | | 1504. | |
| 810. Tax Related Service Fee to  Ameriquest Mortgage | $70.00 | | |
| 811. Flood Search Fee to  Ameriquest Mortgage Company | $16.00 | 1505. | |
| 812. Lenders Processing Fee to  Ameriquest Mortgage | $626.00 | | |
| 813. Admin to Ameriquest Mortgage Company | $239.00 | 1506. | |
| 814. Doc. Prep. Fee to | | | |
| 815. Credit Report Fee to | | 1507. | |
| 816.  Origination Fee     % to | | | |
| 817. Application Fee to  Ameriquest Mortgage Company | $360.00 | 1508. | |
| 818. Underwriting Fee to | | | |
| 819. Service Provider Fee to | | 1509. | |
| 820. Processing Fee to | | | |
| 821. Underwriting Fee to | | 1510. | |
| 822. Appraisal Fee to | | | |
| **900.  Items Required by Lender to be Paid in Advance** | | 1511. | |
| 901. Interest from 07/30/2002 to 08/01/2002 @ $16.98 per day | $33.96 | | |
| 902. Mortgage insurance premium for     months to | | 1512. | |
| 903. Hazard insurance premium to | | | |
| 904. Flood insurance premium to | | 1513. | |
| **1000. Reserves Deposited with Lender** | | 1514. | |
| 1001. Hazard insurance     months @ $    per month | | | |
| 1002. Mortgage insurance     months @ $    per month | | 1515. | |
| 1003. City property taxes     months @ $    per month | | | |
| 1004. County prop. taxes  2  months @ $  116.67  per month | $233.34 | | |
| 1005. Annual assess.     months @ $    per month | | 1520. TOTAL DISBURSED (enter on line 1603) | $80,077.00 |
| 1006. Flood     months @ $    per month | | | |
| 1007.         months @ $      per month | | | |
| 1008. | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | Total Wire:      $81,356.70 | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to | | | |
| 1108. Title Insurance to  Residential Title | $750.00 | | |
| 1109. Lender's coverage       $ | | | |
| 1110. Owner's coverage       $ | | | |
| 1111. Settlement/Disbursement fee to | | | |
| 1112. Escrow Fee to | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording fees | $100.00 | **N.  NET SETTLEMENT** | |
| 1202. City/county tax/stamps | | | |
| 1203. State tax/stamps | | | |
| 1204. State specific fee | | | |
| 1205. State specific fee | | 1600. Loan Amount | 85,500.00 |
| **1300. Additional Settlement Charges** | | 1601. Plus Cash/Check from Borrower | |
| 1301. Demand to | | | |
| 1302. Pest Inspection to | | 1602. Minus Total Settlement Charges (line 1400) | $5,343.30 |
| 1303. Survey Fee to | | | |
| 1304. | | 1603. Minus Total Disbursements to Others (line 1520) | $80,077.00 |
| 1305. Reconveyance Fee to | | | |
| 1306. | | 1604. Equals Disbursements to Borrower (after expiration of any applicable rescission period) | $79.70 |
| 1307. | | | |
| 1308. Courier Fee | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | $5,343.30 | | |

Borrower(s) Signature(s):

*Delois J. Waymon Mills*  7-23-02        *Crosby Mills*

Approved for Funding By:          Approved:          Branch:  Orland Park, IL 60462

A-00021

Public reporting burden for this collection of information is estimated to average 0.35 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Reports Management Officer, Office of Information Policies and Systems, U.S. Department of Housing and Urban Development, Washington, D.C. 20410-3600 and to the Office of Management and Budget, Paperwork Reduction Project (2502-0491), Washington, D.C. 20503. Do not send this completed form to either of these addressees.

## Instructions for completing form HUD-1A

Note: *This form is issued under authority of the Real Estate Settlement Procedures Act (RESPA). 12 U.S.C. 2601 et seq. The regulation for RESPA is Regulation X, codified as 24 CFR 3500, and administered by the Department of Housing and Urban Development (HUD). Regulation Z referred to in the next paragraph is the regulation implementing the Truth in Lending Act (TILA), 15 U.S.C. 1601 et seq. and codified as 12 CFR part 226.*

HUD-1A is an optional form that may be used for refinancing and subordinate lien federally related mortgage loans, as well as for any other one-party transaction that does not involve the transfer of title to residential real property. The HUD-1 form *may also be* used for such transactions, by utilizing the borrower's side of the HUD-1 and following the relevant parts of the instructions set forth in Appendix A of Regulation X. The use of either the HUD-1 or HUD-1A is not mandatory for open-end lines of credit (home-equity plans), as long as the provisions of Regulation Z are followed.

### Background

The HUD-1A settlement statement is to be used as a statement of actual charges and adjustments to be given to the borrower at settlement. The instructions for completion of the HUD-1A are for the benefit of the settlement agent who prepares the statement; the instructions are not a part of the statement and need not be transmitted to the borrower. There is no objection to using the HUD-1A *in transactions in which it is not* required, and its use in open-end lines of credit transactions (home-equity plans) is encouraged. It may not be used as a substitute for a HUD-1 in any transaction in which there is a transfer of title and a first lien is taken as security.

Refer to the "definitions" section of Regulation X for specific definitions of terms used in these instructions.

### General Instructions

Information and amounts may be *filled in by typewriter,* hand printing, computer printing, or any other method producing clear and legible results. Additional pages may be attached to the HUD-1A for the inclusion of customary recitals and information used locally for settlements or if there are insufficient lines on the HUD-1A.

The settlement agent shall complete the HUD-1A to itemize all charges imposed upon the borrower by the lender, whether to be paid at settlement or outside of settlement, and any other charges that the borrower will pay for at settlement. In the case of "no cost" or "no point" loans, these charges include any payments the lender will make to affiliated or independent settlement service providers relating to this settlement. These charges shall be included on the HUD-1A, but marked "P.O.C." for "paid outside of closing", and shall not be used in computing totals. Such charges also include indirect payments or back-funded payments to mortgage brokers that arise from this settlement transaction. When used, "P.O.C." should be placed in the appropriate lines next to the identified item, *not in the columns themselves.*

Blank lines are provided in Section L for any additional settlement charges. Blank lines are also provided in Section M for recipients of all or portions of the loan proceeds. The names of the recipients of the settlement charges in Section L and the names of the recipients of the loan proceeds in Section M should be set forth on the blank lines.

### Line Item Instructions

The identification information at the top of the HUD-1A should be completed as follows:

The borrower's name and address is entered in the space provided. If the property securing the loan is different from the borrower's address, the address or other location information on the property should be entered in the space provided. The loan number is the lender's identification number for the loan. The settlement date is the date of settlement in accordance with §3500.2 of Regulation X, not the end of any applicable rescission period. The name and address of the lender should be entered in the space provided.

**Section L. Settlement Charges.** This section of the HUD-1A is similar to section L of the HUD-1, with the deletion of lines 700 through 704, relating to real estate broker commissions. The instructions for filling out the HUD-1 as set forth in Appendix A of Regulation X proved additional information regarding Section L, if needed.

Line 1400 in the HUD-1A is *for the total settlement* charges charged to the borrower. Enter this total on line 1602 as well. *This total should include Section L amounts* from additional pages, if any are attached to this HUD-1A.

**Section M. Disbursement to Others.** This section is used to list payees, other than the borrower, of all or portions of the loan proceeds (including the lender, if the loan is paying off a prior loan made by the same lender), when the payee will be paid directly out of the settlement proceeds. *It is not used to list payees of settlement* charges, nor to list funds disbursed directly to the borrower, *even if the lender knows the borrower's* intended use of the funds.

For example, in a refinancing transaction, the loan proceeds are used to pay off an existing loan. *The name* of the lender for the loan being paid off and the pay-off balance would be entered in Section M. In a home improvement transaction when the proceeds are to be paid to the home improvement contractor, the name of the contractor and the amount paid to the contractor would be entered in Section M. In a consolidation loan, or when part of the loan proceeds is used to pay off other creditors, the name of each creditor and the amount paid to that creditor would be entered in Section M. If the proceeds are to be given directly to the borrower and the borrower will use the proceeds to pay off existing obligations, this would not be reflected in Section M.

**Section N. Net Settlement.** Line 1600 normally sets forth the principal amount of the loan as it appears on the related note for this loan. In the event this form is used for an open-ended home equity line whose approved amount is greater than the initial amount advanced at settlement, the amount shown on Line 1600 will be the loan amount advanced at settlement. Line 1601 is used for all settlement charges that are both included in the totals for lines 1400 and 1602 and are not financed as part of the principal amount of the loan. This is the amount normally received by the lender from the borrower at settlement, which would occur when some or all of the settlement charges were paid in cash by the borrower at settlement, instead of being financed as part of the principal amount of the loan. Failure to include any such amount in line 1601 will result in an error in the amount calculated on line 1604. P.O.C. amounts should not be included in line 1601.

Line 1602 is the total amount from line 1400.
Line 1603 is the total amount from line 1520.
Line 1604 is the amount disbursed to the borrower. This is determined by adding together the amounts for lines 1600 and 1601, and then subtracting any amounts listed on lines 1602 and 1603.

Loan Number: 0037658861 - 5530        Branch: Orland Park, IL 60462

HUD1A1 (Rev. 6/00)

A-00022

From: RTS  630-620-9855  To: SANDY                    Date: 7/24/02  Time: 6:01:26 PM                    Page 2 of 7



# Commonwealth Land Title Insurance Company



## Residential Title Services, Inc.

| Title Department | 1910 South Highland – Suite 202 | Closing Department |
|---|---|---|
| Fax: (630) 620-9855 | Lombard, Illinois | Fax: (630) 620-2419 E- |
| mail: orders.Lombard@rtstitle.com | Phone: (630) 620-4400 | E-mail: docs.lombard@rtstitle.com |

### COMMITMENT FOR TITLE INSURANCE

SCHEDULE A

File No.: RI135271

1.  Effective Date: 07/16/2002 at 8:00 a.m.

2.  Policy to be issued:                                  Policy Amount

    i.    ALTA Loan Policy – 10/17/1992                   $85,000.00

    Proposed Insured:

    AMERIQUEST MORTGAGE COMPANY, its respective successors and/or assigns, as their interests
    may appear

3.  The estate or interest in the land described or referred to in the Commitment and covered herein is FEE SIMPLE
    and is at the effective date hereof vested in:

    CROSBY MILLS AND DELOIS E. MILLS, HUSBAND AND WIFE AS TENANTS BY THE
    ENTIRETY

4.  The land referred to in this Commitment is situated in the County of COOK, State of Illinois, and described as
    follows:

    See Appendix "A" for Legal Description

Residential Title Services, Inc.
Agent of Commonwealth Land Title Insurance Company

By: _____
       Richard Stallworth
       Authorized Officer or Agent

This commitment is invalid unless the insuring provisions and schedules A and B are attached.

A-00124

# APPENDIX 44

## DECLARATION OF DELOIS MILLS

I, Delois Mills, declare under penalty of perjury that the foregoing is true and correct:

1.  I reside at 12449 S. Elizabeth, Calumet Park, IL 60827.

2.  This is my primary residence.

3.  On July 23, 2002, my late husband and I obtained a loan from Ameriquest Mortgage Company that was secured by a mortgage on my home at 12449 S. Elizabeth, Calumet Park, IL.

4.  The mortgage loan of July 23, 2002 was entered into for the purpose of refinancing an existing loan, not for an original purchase or construction.

Executed: this _31_ day of _July_, 2008.

_Delois Mills_
Delois Mills

# APPENDIX 45

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: | |
| *Delois Mills v. Ameriquest Mortgage Company, et al.*; Case No. 05CV03976 | |

### DEFENDANT AMERIQUEST MORTGAGE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT

Defendant Ameriquest Mortgage Company ("Defendant"), by and through its attorneys, answers Plaintiff Delois Mills ("Plaintiff") Second Amended Complaint as follows.

### INTRODUCTION

1.    Plaintiff Delois Mills brings this action against a "subprime" mortgage lender to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226.

**ANSWER:    The Complaint speaks for itself, and Defendant is not required to admit or deny Plaintiff's characterization of her Complaint.**

### JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA).  Defendant does business in the District and is deemed to reside here.

**ANSWER:    Defendant admits that it has transacted business in this judicial district.  The remaining allegations in this paragraph constitute a legal conclusion, which Defendant is not required to admit or deny.**

- 1 -

## PARTIES

3.     Plaintiff owns and resides in a home at 12449 S. Elizabeth, Calumet Park, IL 60827.

**ANSWER:     Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, and on that basis denies each and every allegation contained therein.**

4.     Defendant Ameriquest Mortgage Company ("Ameriquest") is a foreign corporation which maintains offices in and does business in Illinois.  Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606. It is engaged in the business of originating "subprime" mortgages and makes more than 26 loans per year.

**ANSWER:     Defendant admits that Ameriquest Mortgage Company has done business in Illinois, has previously maintained an office in Illinois and that its registered agent is National Registered Agents.  Defendant admits that Ameriquest Mortgage Company originates loans.  Defendant objects to the term "subprime" as vague.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the intended characterization of the term "subprime."  Defendant admits that it makes more than 26 loans per year.**

5.     Defendant AMC Mortgage Services, Inc. {"AMC") is a foreign corporation which does business in Illinois. Its registered agent and office are National Registered Agents, 200 W. Adams, Chicago, IL 60606.

**ANSWER:     Defendant admits that AMC Mortgage Services, Inc. has done business in Illinois, and that its registered agent is National Registered Agents.**

6.     Defendant Deutsche Bank National Trust Company, N.A., is a federally chartered bank located at 60 Wall Street, New York, NY 10005.  On information and belief, it holds legal title to plaintiffs' loan, as trustee.

**ANSWER:     Defendants lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 6, and on that basis denies those allegations.**

- 2 -

7.      Defendant Ameriquest Mortgage Securities, Inc., an affiliate of Ameriquest Mortgage Company, is a foreign corporation which transacts business in Michigan. It is the beneficial owner of some loans originated by Ameriquest Mortgage Company, including plaintiff's. It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

**ANSWER:**      **Defendant admits that Ameriquest Mortgage Securities, Inc. is a corporation incorporated in a state other than Illinois, that Ameriquest Mortgage Securities, Inc. holds title to certain loans originated by Ameriquest Mortgage Company, and that Ameriquest Mortgage Securities, Inc. is located at 1100 Town & Country Road, Suite 1100, Orange, California 92868. Defendant denies the remaining allegations in Paragraph 7.**

### FACTS RELATING TO PLAINTIFF

8.      On or about July 23, 2002, plaintiff and her now-deceased husband obtained a mortgage loan from Ameriquest.

**ANSWER:**      **Defendant admits to the allegations of Paragraph 8.**

9.      Plaintiff needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

**ANSWER:**      **Defendants lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 6, and on that basis denies those allegations.**

10.      In connection with the loan, defendant Ameriquest failed to provide all notices and proper disclosures required by TILA.

**ANSWER:**      **Defendant denies the allegations of Paragraph 10.**

11.      Ameriquest did not provide any federal notices of the right to cancel to plaintiff at her closing or anytime thereafter. They were simply omitted from the closing documents that were provided to plaintiff, in violation of 15 U.S.C. §1635 and 12 C.F.R. § 226.23(b).

**ANSWER:**      **Defendant denies the allegations of Paragraph 11.**

12.      In addition, Ameriquest did not provide plaintiff with full disclosure of the payment schedule on the Truth In Lending Disclosure Statement, as required by 15 U.S.C.

- 3 -

§ 1638(a)(6), 12 C.F.R. §226.18(8) and FRB Commentary on Regulation Z, par. 18(g)4,

12 C.F.R. part 226, Supp. I.

**ANSWER:**      **Defendant denies the allegations of Paragraph 12.**

13.      Furthermore, Ameriquest charged plaintiff a "loan discount" fee of $2,565.  See

Exhibit B, line 802.

**ANSWER:**      **Exhibit B speaks for itself, and Defendant is not required to admit or deny
Plaintiff's characterization of this document.  Defendant denies that this
document constitutes the entire loan file and that the document constitutes
the fully integrated loan agreement with Plaintiff.  Defendants lacks
sufficient information to form a belief as to the truth of the remaining
allegations in Paragraph 13, and on that basis denies those allegations.**

14.      However, on information and belief, plaintiff did not receive a discounted interest

rate.

**ANSWER:**      **Defendants lacks sufficient information to form a belief as to the truth of the
allegations in Paragraph 14, and on that basis denies those allegations.**

15.      Plaintiff has since been instructed to pay AMC.

**ANSWER:**      **Defendants lacks sufficient information to form a belief as to the truth of the
allegations in Paragraph 15, and on that basis denies those allegations.**

16.      On information and belief, Deutsche Bank National Trust Company, N.A. holds

legal title to plaintiffs' loan, as Trustee. Ameriquest Mortgage Securities, Inc., is the beneficial

owner of plaintiffs' loan under Asset Backed Pass-Through Certificates, Series 2002-4 under the

Pooling & Servicing Agreement dated as of November 1, 2002, Without Recourse.

**ANSWER:**      **Defendants lacks sufficient information to form a belief as to the truth of the
allegations in Paragraph 16, and on that basis denies those allegations.**

17.      In the event that Ameriquest Mortgage Securities, Inc., does not own plaintiff's

loan or Deutsche Bank National Trust Company, N.A. does not hold title, (actual ownership is

rarely if ever shown of record), the actual owners are named as Does 1-5.

- 4 -

**ANSWER:**    Defendants lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 17, and on that basis denies those allegations.

## COUNT I - TILA

18.    Plaintiff incorporates paragraphs 1-17. This claim is against all defendants.

**ANSWER:**    Defendant incorporates its responses to Paragraphs 1-17. The Complaint speaks for itself, and Defendant is not required to admit or deny Plaintiff's characterization of her Complaint.

## RIGHT TO RESCIND

19.    Because the transaction was secured by plaintiff's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. § 1635 and 12 C.F.R. §226.23. Section 226.23 provides:

>    (a)    **Consumer's right to rescind.**
>
>    (1)    In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section. [fn]47
>
>    (2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.
>
>    (3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, de livery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, [fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

- 5 -

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b)     Notice of right to rescind.  In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1)     The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section. (5) The date the rescission period expires....

(f)     Exempt transactions.  The right to rescind does not apply to the following:

(1)     A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].

(2)     A credit plan in which a state agency is a creditor.

ANSWER:     This paragraph states a legal conclusion which Defendant is not required to admit or deny.

20.     Plaintiff is entitled to rescind against "any assignee." 15 U.S.C. § 1641(c).

ANSWER:     This paragraph states a legal conclusion which Defendant is not required to admit or deny.

21.     Plaintiff has given proper notice of her rescission of the loan.

ANSWER:     Defendant denies that Plaintiff has a right to rescind the loan nor has she properly rescinded the loan.

22.     The loan has not been rescinded.

- 6 -

**ANSWER:**     **Defendant admits to the allegations of Paragraph 22.**

### COUNT II – BREACH OF CONTRACT

23.     Plaintiff incorporates paragraphs 1-18.

**ANSWER:**     **Defendant incorporates its responses to Paragraphs 1-17.**

24.     This claim is against Ameriquest Mortgage Company.

**ANSWER:**     **The Complaint speaks for itself, and Defendant is not required to admit or deny Plaintiff's characterization of her Complaint.**

25.     Defendant undertook and contracted to lower plaintiffs interest rate if plaintiff paid a loan discount fee.

**ANSWER:**     **Defendants lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 25, and on that basis denies those allegations.**

26.     Plaintiff paid a loan discount of $2,565.  Exhibit B, line 802.

**ANSWER:**     **Exhibit B speaks for itself, and Defendant is not required to admit or deny Plaintiff's characterization of this document.  Defendant denies that this document constitutes the entire loan file and that the document constitutes the fully integrated loan agreement with Plaintiff.  Defendants lacks sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 26, and on that basis denies those allegations.**

27.     Defendant failed to lower plaintiff's interest rate,

**ANSWER:**     **Defendant denies the allegations of Paragraph 27.**

28.     Defendant thereby breached its contract.

**ANSWER:**     **Defendant denies the allegations of Paragraph 28.**

29.     Plaintiff was damaged as a result.

**ANSWER:**     **Defendant denies the allegations of Paragraph 29.**

- 7 -

## AFFIRMATIVE DEFENSES

1.      Plaintiff's purported causes of action fail to state a claims upon which relief may be granted.

2.      Plaintiff's claims are barred by the applicable statute of limitations.

3.      Plaintiff's claims are barred in whole or in part under the doctrine of estoppel, laches and/or waiver.

4.      Plaintiff's claims are barred in whole or in part, on the ground that if any law was violated in any manner whatsoever, such violation, if any, was a direct and proximate result of the intervening and superseding actions on the part of other parties and/or persons or entities and not Defendant, and any such intervening or superseding action of said parties and/or persons or entities bars Plaintiff's recovery.

5.      Defendant alleges that at all times relevant to this action Defendant acted within the course and scope of reasonable commercial standards and legitimate business transactions.

6.      Plaintiff's claims are barred in whole or in part, because Plaintiff would be unjustly enriched if allowed to recover on the Complaint.

7.      Defendant alleges that no officer, director, or managing agent of Defendant ratified the conduct alleged by Plaintiff.

8.      Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel.

9.      Plaintiff's claims are barred in whole or in part, because Plaintiff misrepresented their credit, income or other information association with obtaining the loan.

10.     Plaintiff's claims are barred or limited because pursuant to 15 U.S.C. § 1640(c) the violations alleged were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

11.     Plaintiff is not entitled to rescind the mortgage loan under the Truth in Lending Act, or to obtain any statutory damages because all required disclosures and notices were

- 8 -

accurately and timely made, and even if the disclosures were inaccurate, the inaccuracies are within the applicable tolerances.

12.    Plaintiff is not entitled to statutory damages, or actual damages for failure to rescind, because no alleged disclosure error is apparent on the face of the disclosure documents.

13.    If it should be deemed that Plaintiff is entitled to rescission, any obligation on the part of the holder of the loan to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiff's reimbursement or other return to the holder of the loan of all funds disbursed on Plaintiff's behalf in connection with the subject mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other rules of law or equity.  Any obligation on the part of the holder of the loan to rescind and to release any lien is conditioned upon Plaintiff reimbursing or otherwise returning all funds disbursed on their behalf to the holder of the loan in connection with the subject loan, less any finance charges.

14.    Defendant alleges that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses. Defendant reserves its right to file an amended answer asserting additional defenses, and/or to file a counter or cross-complaint in the event that discovery indicates that either is appropriate.

WHEREFORE, Defendant requests that this Court enter judgment in its favor and against Plaintiff, award Defendant its costs, and provide such further and additional relief as it deems just and appropriate.

Respectfully submitted,

DATED:  September 6, 2007

By: /s/ Bernard E. LeSage
    *Attorneys for Ameriquest Mortgage
    Company*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

- 9 -

### CERTIFICATE OF SERVICE

I, Bernard E. LeSage, hereby certify that on this 6th day of September 2007, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: _____ /s/  Bernard E. LeSage _____

- 10 -