**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. ) <br> MORTGAGE LENDING PRACTICES ) <br> LITIGATION ) <br> ) <br> _____) <br> ) <br> THIS DOCUMENT RELATES TO THE ) <br> FOLLOWING INDIVIDUAL ACTIONS: ) <br> ) <br> *Furgeson v. Ameriquest Mortg. Co., 04 C 7627,* ) <br> *Salazar v. Ameriquest Mortg. Co., 05 C 4162,* ) <br> *Smith v. Ameriquest Mortg Co., 05 C 648,* ) <br> *Jimenez v. Ameriquest Mortg. Co., 05 C 1009,* ) <br> *Treadwell v. Ameriquest Mortg. Co., 05 C 1078,* ) <br> *Key v. Ameriquest Mortg. Co., 05 CV 1077,* ) <br> *Wertepny v. Ameriquest Mortg. Co., 05 CV 1402,* ) <br> *Harris v. Ameriquest Mortg. Co., 05 CV 4025,* ) <br> *Mills v. Ameriquest Mortg. Co., 05 CV 3976, and* ) <br> *Pintsak v. Ameriquest Mortg. Co., 05 CV 5035.* ) <br> *Barboza, et al. v. Ameriquest Mortg. Co.,* ) <br>   *06 cv 3125,* ) <br> *Olynciw, et al. v. Ameriquest Mortg. Co.,* ) <br>   *06 cv 2467,* ) <br> *Cue, et al. v. Ameriquest Mortg. Co., 06 cv 2468,* ) <br> *Sullivan, et al. v. Ameriquest Mortg. Co.,* ) <br>   *06 cv 2471,* ) <br> *Greene, et al. v. Ameriquest Mortg. Co., 06 cv 1733,*) <br> *Osten, et al. v. Ameriquest Mortg. Co., 06 cv 4032,* ) <br> *Steinmiller v. Ameriquest Mortg. Co., 06 cv 2469,* ) <br> *Sweeten v. Argent Mortg. Co., LLC, 06 cv 2470,* ) <br> *Robinson v. Argent Mortg. Co., LLC, 06 cv 3126,* ) <br> *Cadette v. Ameriquest Mortg. Co., 06 cv 6753,* ) <br> *Vega v. Ameriquest Mortg. Co., 07 cv 129,* ) <br> *Hess v. Ameriquest Mortg. Co., 08 CV 01858* ) <br> *Walrod v. Ameriquest Mortg. Co., 08 CV 00742* ) <br> *Young v. Ameriquest Mortg. Co., 08 CV 00741* ) | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> Centralized before Judge <br> Marvin E. Aspen |

**CERTAIN OPT-OUT PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
CERTAIN OPT-OUT PLAINTIFFS' SUMMARY JUDGMENT MOTION**

1

## **INTRODUCTION**

In their Motion for Summary Judgment, plaintiffs assert a single ground for rescission and statutory damages: Ameriquest presented and provided them with Truth In Lending Disclosure Statements that failed to fully disclose the repayment schedules or the due dates of payments under the loans. The specific requirements for proper disclosure of the payment schedules are set forth explicitly at 15 U.S.C. § 1638(a)(6), 12 C.F.R. § 226.18(g) and FRB Commentary on Regulation Z, [12 C.F.R. part 226 Supp. I] par. 18(g)4. These provisions required Ameriquest to either disclose the "due dates" of all payments under the loans or to specify "the period of payments," such as "monthly" or "bi-monthly." Ameriquest did neither. This is the very issue that the Seventh Circuit ruled on **two years ago** in *Hamm v. Ameriquest Mortgage Corp.*, 506 F.3d 525 (7th. Cir. 2007) , in which the court held that Ameriquest's TILA Disclosure form violates TILA because it does not explicitly state the payment period terms. *Id*. at 531.

Despite defendants' contentions to the contrary, Plaintiffs filed their summary judgment motion not to gain an advantage in an allegedly "upcoming mediation" but, rather, to achieve disposition on claims filed as many as **five years ago**.[1] As this Court was informed over six

---

[1] Plaintiff Furgeson's complaint was filed November 23, 2004. The Salazars' complaint was filed January 28, 2005. Smith and Yanong's complaint was filed February 3, 2005. The Jimenezes' complaint was filed Feburary 18, 2005. The Treadwells' and Key's complaints were filed February 23, 2005. Wertepny's complaint was filed March 9, 2005. Harris's complaint was filed July 12, 2005. Mills's complaint was filed July 8, 2005. The Pintsaks' complaint was filed August 31, 2005. The Cadettes' complaint was filed September 5, 2006. The Ostens' and the Roberts' complaint was filed March 21, 2006. The Sweetens' complaint was filed January 23, 2006. Vega's complaint was filed October 12, 2006. Robinson's complaint was transferred to N.D. Ill. on May 24, 2006. Greene, the Hacks', the Kobialkas', Lehan, and Muro's complaint was transferred to the N.D. Ill. on March 24, 2006. The Steinmillers' complaint and Booth, the Olynciws', and the Potters' complaint were transferred to the N.D. Ill. on May 3, 2006. Cue, Dell, and the Griffins' complaint was transferred to the N.D. Ill. on May 8, 2006. Bathin and Sullivan's, Fourneir, Sibley, and Stripling's complaint was transferred to the N.D. Ill. on May 9, 2006. The Barbozas', the

months ago,[2] "there are no additional mediation dates scheduled, because the mediators and the parties have concluded that no meaningful progress can be achieved unless the third party defendants are able to make a meaningful contribution..." Therefore, "Cognizant that no progress can be made in the mediation at this time, the ICSC, Ameriquest, and Argent submitted a joint stipulation and proposed amended scheduling order." The scheduling order contemplated both discovery and the filing of summary judgment motions. *Id..*, p. 2.

Subsequently, the Court was informed that Mediation would occur, but only after several events occurred, stating specifically that mediation would not occur until "if the Third-Party Defendants' [sic] have sought leave to file a Sixth Amended Third Party Complaint, the Court's ruling on any motion to dismiss that pleading." Joint Discovery Plan and [Proposed] Scheduling Order, dkt 3077, Exhibit A. Thus the mediation is anything but "upcoming." It is dependant on indefinite events set far into the future, and Plaintiffs who have already been waiting several years for justice should not have to continue to wait based upon some speculative future occurrence.

Moreover, Contrary to Defendants' assertions, extensive discovery is not necessary to decide Plaintiffs' motions. In fact, extensive discovery already occurred in many of the cases before the MDL was created and in the context of the MDL.[3] The only questions are whether a TILA

---

Holmeses', the Iwanczenkos', and the Joneses' complaint was transferred to the N.D. Ill. on May 24, 2006. The Hesses' complaint was transferred to the N.D. Ill. on March 24, 2008. The Walrods' complaint and the Youngs' complaint were transferred to the N.D. Ill. on January 28, 2008.

[2] Individual Claimants Steering Committee's Status Report, dated May 12, 2009, p. 1.

[3] All of the Edelman, Combs, Latturner & Goodwin (ECLG) plaintiffs have previously produced the entire contents of their closing files that are within their possession. (*See* Exhibit B, declaration of Cathleen M. Combs). Plaintiff Marie Furgeson produced 26(a)(1) disclosures on March 1, 2005, responded to the defendants' interrogatories on May 20, 2005, and was deposed by the defendants on August 26, 2005. Plaintiffs Sergio and Guadalupe Salazar produced 26(a)(1)

violation occurred and whether Plaintiffs are entitled to rescission. Further, Defendants assert that the Motion is both premature and untimely. It is neither. Defendants' Motion to Strike Certain Opt-Out Plaintiffs' Summary Judgment Motion should be denied because it is without merit and Plaintiffs' motion is proper.

## II. THE MOTION IS PROPER AND WILL NOT REQUIRE EXTENSIVE DISCOVERY

Defendants assert that the motion should be stricken because the TILA claims asserted by Plaintiffs will require "an in-depth case by case factual inquiry." (*See* Mot. Strike, p. 3). This is not so. The only questions at issue are whether Defendants violated TILA - by not disclosing on Plaintiffs' TILA disclosures the "due dates" of all payments under the loans or specifying "the period of payments," such as "monthly" or "bi-monthly" - and whether Plaintiffs are eligible for rescission. However, these inquires are hardly "in-depth."

Whether a TILA disclosure violated the law by not stating the payment periods and whether the loan was taken for consumer purposes is easily verifiable from the closing documents

---

disclosures and responded to the defendants' interrogatories on February 28, 2006, and they were deposed by the defendants on March 21 and 22, 2006. Plaintiffs Eric Smith, Guillermina Yanong, and Castella Williams Harris produced 26(a)(1) disclosures and responded to the defendants' interrogatories on October 24, 2005; Smith and Yanong also produced supplemental documents February 15, 2007, and Harris was deposed by the defendants on March 30, 2006. Plaintiffs Nelson Jimenez, Melinda Jimenez, and Brett Wertepny produced 26(a)(1) disclosures and responded to the defendants' interrogatories on August 15, 2005; the defendants deposed Nelson Jimenez on March 20, 2005, Melinda Jimenez on September 1, 2005, Brett Wertepny on August 29, 2005, and now-deceased plaintiff Yvonne Wertepny on November 11, 2005. Plaintiffs Gilbert Treadwell, Genelle Treadwell, and Earl Key produced 26(a)(1) disclosures and responded to the defendants' interrogatories on October 25, 2005. Plaintiff Delois Mills produced 26(a)(1) disclosures on February 3, 2006 and responded to the defendants' interrogatories on February 10, 2006. Plaintiffs William and Sandra Pintsak produced 26(a)(1) disclosures on February 14, 2006 and responded to the defendants' interrogatories on February 15, 2006.

4

and loan files, which are in Defendants' possession. Thus, Defendants' argument asserting the need for discovery on the payment statement claim has no merit, as everything they need to respond to Plaintiffs' motion is in their possession.

Further, the payment period claim brought by plaintiffs may be properly decided on a summary judgment motion, as the Seventh Circuit affirmed in *Hamm*, 506 F.3d 525 (7th Cir. 2007). In that case, the Seventh Circuit affirmed the district court's granting of summary judgment for the plaintiff on the payment period claim. *Id*. Thus, such a claim is not improperly brought in a Summary Judgment.

Defendants base their contentions that rescission claims require extensive individualized discovery on two cases, *McKenna v. First Horizon Home Loan Corp.*, 475 f.3d 718 (1st Cir. 2007), and *Andrews v. Chevy Chase Bank*, 454 F.3d 570 (7th Cir. 2008). However, both of these cases were brought as class actions. There, not only would one have to prove the legal claim, but also that the bases for class certification have been met. This is hardly analogous to the individual rescission claims being brought forth by certain opt-out plaintiffs in the instant case. Here, the issues are purely legal and are straightforward:(1) was TILA violated because Plaintiffs received TILA disclosures forms not properly listing the payment periods and (2) is the remedy of rescission available.

Despite being part of a multi-district litigation, these claims are still individual rescission claims brought forth by individuals, not as a Class case. The sheer number of Plaintiffs is no reason to penalize them by barring them from a resolution of their claims via summary judgment.

Defendants state that "without the benefit of hardly any discovery and on a few days

notice, Defendants are able to demonstrate that these Opt-Out Plaintiffs are typically unable to prevail on their claims." (*See* Mot. Strike, p. 3).[4] Defendants bring up the issue of several Plaintiffs

---

[4] Further, several factual allegations raised by Defendants are incorrect or misleading. Defendant's stated that Melinda and Nelson Jiminez did not disclose their claim against Ameriquest in their bankruptcy petition. (Mtn. Strike, p. 4). Melinda and Nelson Jiminez filed a Chapter 13 bankruptcy, but the creditors were notified of the claim, and the proceeds are to go to the creditors. Their Chapter 13 Plan was amended to reflect this on August 31, 2009. *See* Exhibit C.

Defendants quote Guadalupe Salazar's deposition transcript where she stated that the loans proceeds of her refinance with Ameriquest were for "business debts that I owed." (Mtn. Strike, Exhibit 11). In Plaintiff Guadalupe Salazar's deposition, she was referring to a debt she owed to a business, not a debt owed in connection with a business of her own. *See* Declaration of Guadalupe Salazar, attached as Exhibit D.

Defendants state that Plaintiff Brett Wertepny "operated a machine shop at the property." (Mtn. Strike, p. 5). Mr. Wertepny's business is in fact registered at his home, but his home is his principal residence and he does not meet with clients or conduct the substance of his business at his home. *See* Declaration of Brett Wertepny, attached as Exhibit E, and deposition of Brett Wertepny, attached as Exhibit F.

Defendants assert that Plaintiff Castella Harris Jones has a hair salon at her residence. (Mtn. Strike, p. 5). She does not. Ms. Harris Jones cuts hair on a contract basis for other business at their premises. *See* Declaration of Castella Harris Jones, attached as Exhibit G.

Regarding Footnote 2 of Defendant's Motion to Strike, the rescission letter sent to Ameriquest Mortgage Company on behalf of Avalon and Selman Cadette (*See* Exhibit H, page 45) clearly stated that the loan was entered into with Ameriquest Mortgage Company on or about April 20, 2004. Ameriquest had notice of this letter and responded to same. Their allegation that the closing date occurred on July 17, 2002 is both mysterious and unfounded. Plaintiffs presume that the Defendants have confused these clients with a separate loan transaction that does not apply in this case. Either way, the Defendants' assertion – that the Cadettes failed to rescind their mortgage within three years of closing – is incorrect. For the same reasons, Defendants are also in error in their assertion regarding Ismael Vega. The rescission letter sent on Mr. Vega's behalf (*See* Exhibit H, page 47) clearly stated a closing date of on or around September 23, 2004 - which was well within three years from when the rescission letter was sent.

Ruth Kobialka died June 29, 2004. Stanley Kobialka - her son - was named as the administrator of her estate and acts in that capacity. A motion for order to substitute Stanley Kobialka as administrator of the estate of Ruth Kobialka was filed on or around November 9, 2005, and is attached as Exhibit I.

Plaintiff Edward Kobialka also died while litigation was pending. The administrator of his estate is Edward Kobialka, Jr. - his son. Edward Kobialka, Sr. died in January of 2008. The probate decree is attached as Exhibit J. Plaintiffs are in the process of preparing a motion for order to substitute Edward Kobialka, Jr. for Edward Kobialka, Sr. in the relevant action and expect to file it shortly.

Furthermore, it is true that Ruth Kobialka died seven months before the rescission letter was

allegedly filing bankruptcy and not listing their claims in the bankruptcy petition. However, this only impacts who owns the rights to the proceeds from the pending suits, not whether the suits are proper. Further, this information is a matter of public record. What is further confusing about Defendants' contention is why Defendants feel that their ability to "demonstrate that these Opt-Out Plaintiffs are typically unable to prevail on their claims" is an appropriate basis for a motion to strike the summary judgment motion. Defendants clearly feel that they can respond to Plaintiff's motion, and so they should do so. In fact, Defendants launch into several different purported explanations as to why particular Plaintiffs are not entitled to Summary Judgment and state that "additional discovery will undoubtedly yield additional plaintiff-specific defenses." (*See* Mot. Strike, p. 3). All Defendants are proving is that they feel they can prepare an adequate response to the motion. Thus, they should do so instead of wasting the Court's time with a frivolous motion to strike.

### III. PLAINTIFFS' MOTION IS TIMELY

Defendants state that "motions for summary judgment in advance of the mediation were not contemplated by the parties' agreed upon scheduling order and the time to renew the prior motion, within 45 days of December 12, 2008, has long passed." (Mot. Strike, p. 3). Defendants also assert that after the December 2008 status and until the summary judgment motion was filed, the subject was "seemingly dropped." (Mot. Strike, p. 1). None of these contentions are true. Plaintiffs always intended to re-file their motion for summary judgment and made that intention repeatedly known to defendants and the Court through various motions and joint stipulations that

---

sent. However, since her husband – Edward Kobialka, Sr. who was a co-plaintiff in the action at the time of her death - was also named on the complaint and in the rescission letter, the timing of her death is not of the consequence claimed by the defendants. Furthermore, Edward Kobialka, Sr. owned the property at the time the rescission letter was sent.

were filed and proposed Orders that were entered from January 23, 2009 up through July 23, 2009. (*See* Exhibits K-R, dkts. 2598, 2608, 2716, 2745, 2885, 2931, 2933, and 2957, respectively). At no time did Plaintiffs ever express any intention other than to re-file their motion. Defendants' characterization to the contrary is simply false.

Further, the summary judgment motion was filed on behalf of all Plaintiffs who had the payment period, or *Hamm*, claim at issue in the motion. The motion was not brought by the plaintiffs' steering committee because not all MDL Plaintiffs assert this claim in their complaints. However, Plaintiffs' counsel sent notice to all persons on the service list they compiled which, to their best of their knowledge, includes all MDL plaintiffs or counsel. (*See* Exhibit S, Declaration of Catherine A. Ceko). Additionally, Plaintiffs on whose behalf this motion is filed include Plaintiffs represented by the Chair of the committee.[5]

## IV. MEDIATION IS NOT IMMINENT AND SHOULD NOT PREVENT PLAINTIFFS FROM SEEKING SUMMARY JUDGMENT

Additionally, the "upcoming" mediation that Defendants reference has yet to be scheduled. Three mediation sessions took place in 2008.[6] No progress was made at these mediation sessions. The only settlement offer made at that time or since (aside from a limited number of loan

---

[5] Dan Blinn is counsel for Plaintiffs Benjamin R. Barboza, Manuel R. Barboza, Sallie L. Booth, Avalon Cadette, Selma Cadette, Willie Mae Cue, Simon A. Dell, Nadejda Fournier, Samuel Greene, Jr., Nicholas E. Griffin, Ann M. Griffin, Richard F, Hack, Jr., Denise L. Hack, Edward Kobialka, Ruth Kobialka, Dennis A. Holmes, Brenda L. Holmes, John W. Iwanczenko, Sr., Maryann E. Iwanczenko, Kyle A Jones, Kathleen D. Jones, Timothy Lehan, Robert A. Muro, Michael Olynciw, Michael Osten, Maria Osten, Lisa Potter, John Potter, Mark A. Roberts, Nancy I.E. Roberts, Nadine Robinson, Lorraine P. Sibley, Kelly Steinmiller, Gary W. Steinmiller, Constance Stripling, David M. Sullivan, Drucie Bathin, Kenneth F. Sweeten, Jr., Elizabeth Sweeten, Ismael Vega.

[6] On March 6, 2008, May 7, 2008, and August 13, 2008.

modification offers) was a nuisance-value offer, regardless of the type or nature of the claims asserted. The next mediation sessions were scheduled for February 18 - 20 of this year. However, these sessions were cancelled within the first hour due to the mediator's belief that no meaningful progress could occur at that time. The last substantive step taken toward actually scheduling mediation was a conference call that the parties had with the mediator on April 18, 2009, at which time all parties decided that no mediation would be productive at that time.

There is no reason for Plaintiffs with a claim that the Seventh Circuit has affirmed as proper on Summary Judgment to let their claims continue to sit until the occurrence of a mediation that has been cancelled twice and is of yet not rescheduled. This is especially the case where Court has explicitly granted Plaintiffs leave to file summary judgment motions on purely legal issues, which, as explained above, this issue is one.

Further, the current allegedly "upcoming" mediation will occur only after several events take place, including "if the Third-Party Defendants' [sic] have sought leave to file a Sixth Amended Third Party Complaint, the Court's ruling on any motion to dismiss that pleading." Joint Discovery Plan and [Proposed] Scheduling Order, dkt 3077, Exhibit A. Thus the mediation is anything but "upcoming." It is dependant on indefinite events set far into the future, and Plaintiffs who have already been waiting several years for justice should not have to continue to wait based upon some speculative future occurrence. While Plaintiffs remain hopeful that mediation may possibly benefit those who do not have a claim suitable to be brought upon summary judgment prior to when mediation may finally occur, those with claims that can be disposed of immediately should not have justice delayed any further than it already has been.

V.   **CONCLUSION**

For the reasons stated above, this Court should deny Defendants' Motion to Strike Certain Opt-Out Plaintiffs' Summary Judgment Motion.

>                             Respectfully submitted,
>
>                             s/ Catherine A. Ceko
>                             Catherine A. Ceko

Daniel A. Edelman
Cathleen M. Combs
Tara L. Goodwin
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. La Salle Street, 18th Floor
Chicago, Illinois, 60603
(312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

        I, Catherine Ceko, hereby certify that on November 20, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Notice will also be sent by U.S. Mail to parties that do not have access to the Court's electronic filing system.

        s/ Catherine A. Ceko
        Catherine A. Ceko

*Attorneys for Plaintiffs*
Daniel A. Edelman
Cathleen M. Combs
Tara L. Goodwin
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)