**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |

THIS DOCUMENT RELATES TO THE
FOLLOWING INDIVIDUAL ACTIONS:

*Furgeson v. Ameriquest Mortg. Co. et al., 04-cv-7627,*
*Salazar v. Ameriquest Mortg. Co. et al., 05-cv-4162,*
*Smith v. Ameriquest Mortg. Co. et al., 05-cv-648,*
*Jimenez v. Ameriquest Mortg. Co. et al., 05-cv-1009,*
*Treadwell v. Ameriquest Mortg. Co. et al., 05-cv-1078,*
*Key v. Ameriquest Mortg. Co. et al., 05-cv-1077,*
*Wertepny v. Ameriquest Mortg. Co. et al., 05-cv-1402,*
*Harris v. Ameriquest Mortg. Co. et al., 05-cv-4025,*
*Mills v. Ameriquest Mortg. Co. et al., 05-cv-3976 and,*
*Pintsak v. Ameriquest Mortg. Co. et al., 05-cv-5035.*
*Barboza, et al. v. Ameriquest Mortg. Co., 06 cv 3125,*
*Olynciw, et al. v. Ameriquest Mortg. Co., 06 cv 2467,*
*Cue, et al. v. Ameriquest Mortg. Co., 06 cv 2468,*
*Sullivan, et al. v. Ameriquest Mortg. Co., 06 cv 2471,*
*Greene, et al. v. Ameriquest Mortg. Co., 06 cv 1733,*
*Osten, et al. v. Ameriquest Mortg. Co., 06 cv 4032,*
*Steinmiller v. Ameriquest Mortg. Co., 06 cv 2469,*
*Sweeten v. Argent Mortg. Co., LLC, 06 cv 2470,*
*Robinson v. Argent Mortg. Co., LLC, 06 cv 3126,*
*Cadette v. Ameriquest Mortg. Co., 06 cv 6753,*
*Vega v. Ameriquest Mortg. Co., 06 cv 129,*
*Hess v. Ameriquest Mortg. Co. 08 cv 01858*
*Walrod v. Ameriquest Mortg. Co. 08 cv 00742, and*
*Young v. Ameriquest Mortg. Co. 08 cv 00741*

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE CERTAIN OPT-OUT
PLAINTIFFS' SUMMARY JUDGMENT MOTION**

**I. INTRODUCTION**

This Court has ordered that parties may only file summary judgment motions "based on

purely legal, global issues." (Dkt. 2553) The pending Motion for Summary Judgment

("Motion") does not; nor does Plaintiffs' Opposition to this Motion to Strike rebut this material

1

defect in the Motion. The Opposition effectively concedes this point and instead tacitly requests that the Court reconsider its prior order just as the Opt-Out Plaintiffs asked when seeking reconsideration the last time the subject was addressed before the Court. *See* Ex. 1, pp. 16:1-24; 18:2-7. As this Court has explained, factually-based motions for summary judgment are more appropriate for the transferor courts, and this Court has the discretion to so determine. Otherwise, this Court will be inundated with motions for summary judgment from plaintiffs, defendants, and third-party defendants arising out of each of the 1400 pending Opt-Out Plaintiffs' claims.

In particular, the pending Motion requires a determination of the following plaintiff specific factual issues:

- **Because rescission is an equitable remedy, whether rescission is appropriate under the particular circumstances of each Plaintiff, and if so, under what conditions.  (*See* Section II.A.).**

- **Because a number of Plaintiffs failed to disclose their claims as an asset in their bankruptcy actions or belatedly claimed they were worth a fraction of their current claims, whether the doctrine of judicial estoppel requires the dismissal of those Plaintiffs' claims and whether Plaintiffs have standing to pursue those claims.  (*See* Section II.B.).**

- **For some of the deceased Plaintiffs, who has standing to pursue their claims and send rescission letters, if anyone.  (*See* Section II.C.).**

- **Because six Plaintiffs are thus far unable to produce any evidence of a letter rescinding their loan (notwithstanding a representation in the Motion that rescission letters were attached to the Motion), whether they sufficiently rescinded their loan.  (*See* Section II.D.).**

- **Whether 34 Plaintiffs' rescission letters purportedly rescinding loans for a specific reason are sufficient to rescind loans for a completely different reason.  (*See* Section II.D.).**

- **Whether 40 Plaintiffs' claims are barred by the one year or three year statute of limitations.  (*See* Section II.D.).**

Moreover, each of the claims of the 63 moving parties with 39 loans will require a substantial amount of discovery, which defendants have a right to conduct before being required to oppose the Motion. This has not yet occurred through no fault of Defendants, and creates a

2

significant problem at this time, because all of the parties have agreed to stay discovery except for limited document production reasonably required for the parties to participate in mediation.

If mediation is ultimately unsuccessful, the parties will have sufficient time to take all necessary discovery and file dispositive motions because there are presently no deadlines set on either subject.

## II. THE OPPOSITION FAILS TO SHOW THAT THE MOTION FOR SUMMARY JUDGMENT COMPLIES WITH THE COURT'S ORDER REQUIRING PURELY LEGAL ISSUES

The Opposition only superficially discusses whether the Motion violates the Court's requirement that any motions for summary judgment be limited to "purely legal, global issues." Instead, the Opposition tacitly requests that the Court reconsider its previous orders establishing that limitation.

As discussed in further detail below, Plaintiffs' bare assertions that there are no factual issues for determination are unsupported and untrue. In order for any Plaintiff to prevail on summary judgment, there are many issues of material fact subject to dispute beyond whether or not that plaintiff received a Truth in Lending disclosure statement that complied with TILA.

### A. The Opposition Does Not Rebut That Rescission Requires A Factually Detailed Analysis To Determine The Equities

#### 1. The Factual Analysis Necessary To Establish A Right To Rescission Is Not Limited To Class Actions As Plaintiffs Argue

Plaintiffs' Motion requests the Court to grant summary judgment for the 63 opt-out plaintiffs on the remedy of rescission and claims that "that plaintiffs are entitled to recover from Ameriquest (1) the difference between the amount of their payoff to Ameriquest and the amount they would have paid, had the loan been rescinded." (Dkt. 3172, p. 14-15.) Courts have long held that in TILA cases rescission is an equitable remedy to be granted only when the balancing of the equities shows that it is appropriate based on the individual facts of the case. *See* Motion to Strike at pp. 3-4 (discussing three non-class action cases applying an equitable analysis to

whether rescission should be allowed, and if so, under what circumstances). This analysis is not limited to class actions. *Id.*

Any balancing of the equities, including analysis of a borrower's ability to repay the loan amount, is fact-intensive. *See, e.g., American Mortgage Network v. Shelton,* 486 F.3d 815 (4th Cir. 2007); *Byron v. EMC Mortgage Corp.*, No. 3:09-cv-197, 2009 U.S. Dist. LEXIS 69589, *12 (D.Va. August 10, 2009) (denying rescission because inequitable to allow rescission for hypertechnical violation).

Although the Motion to Strike discusses individual actions in which courts have engaged in a detailed factual analysis to determine the appropriateness of rescission, the Opposition ignores those cases in an effort to argue that the factual analysis is only required in class actions. *See* Opp. at 5. That argument is misguided and unsupported by any legal authority. It further ignores that the Court's discretion in fashioning an equitable remedy was codified in 1980. *See* U.S.C. 1635(b) ("The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.").

### 2. Plaintiffs' Ability To Tender The Loan Proceeds Back To Ameriquest Will Be A Factual Issue For Many Of The Moving Plaintiffs

Twenty Plaintiffs seek to rescind their Ameriquest mortgage and consequently void its security interest. As a result, if rescission is granted, Ameriquest or its assignee will become an unsecured creditor unless Plaintiffs are able to tender the loan principal back to Ameriquest at the time of rescission. Recognizing the "stark inequity" of rescission unless a plaintiff is able to return a lender to the status quo, courts typically deny rescission absent a showing of plaintiffs' ability to tender the principal loan balance. *Yamamoto v. Bank of New York,* 329 F.3d 1167, 1173 (9th Cir. 2003) (upholding dismissal of TILA claim because plaintiff unable to tender); *American Mortgage Network, Inc. v. Shelton,* 486 F.3d 815, 821 (4th Cir. 2007) (upholding dismissal of TILA claim on summary judgment because "[o]nce the trial judge ... determined that [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate.").

4

As a result, the Complaints at issue typically allege Plaintiffs' willingness and ability to tender the loan proceeds. *See, e.g,* Case No. 1:06-cv-02469, Dkt. 42-3, ¶3. The Motion, however, does not contain any evidentiary support that any Plaintiffs have the ability or willingness to tender the loan proceeds back to the lender. Tendering the loan proceeds back to Ameriquest is not even contemplated in the Plaintiffs' requested remedy. (Dkt. 3172, p. 14-15.) Similarly, there is no mention of the Plaintiffs' ability to tender in the Opposition. Ignoring the issue does not negate its existence. This is but one of many examples of Plaintiffs' flawed effort to show that there are no factual issues necessitating a case by case analysis.

### B.    The Opposition Misconstrues The Doctrine Of Judicial Estoppel

Plaintiffs claim that judicial estoppel is a non-issue. Without citing any authority, the Opposition erroneously argues that judicial estoppel only "impacts who owns the rights to the proceeds from the pendings suits, not whether the suits are proper." Opp. at 7.

#### 1.    The Doctrine of Judicial Estoppel May Bar the Claims of All Plaintiffs Who Filed Bankruptcy Without Disclosing the Claim

In the context of bankruptcy, the Seventh Circuit has held that judicial estoppel requires the dismissal of a plaintiff's claim to prevent a debtor from obtaining an unfair advantage by inconsistently asserting that a cause of action does not exist, but later seeking to recover on the same claim. *See Cannon-Stokes v. Potter,* 453 F.3d 446, 447-48 (7th Cir. 2006) (ruling that "a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends."); *Calvin v. Potter*, No. 07C3056, 2009 U.S. Dist. LEXIS 73862, (N.D. Ill. August 20, 2009) (applying judicial estoppel to dismiss plaintiffs' claims because claim not disclosed before the court approved a Chapter 13 plan).

#### 2.    Factual Analysis Is Required To Apply Doctrine Of Judicial Estoppel

Although Plaintiffs claim that an analysis of facts is not required for judicial estoppel, each of the nine Plaintiffs faced with this issue will undoubtedly argue that the totality of the surrounding factual circumstances behind their respective non-disclosures justifies avoiding

5

estoppel because their non-disclosures were unintentional, caused no harm, and were not their fault. *See, e.g., Ajaka v. Brooksamerica Mortgage Corp.*, 453 F.3d 1339 (11th Cir. 2006) (ruling that judicial estoppel not warranted because it was unintentional and not prejudicial).

### 3. Plaintiffs Fail In Their Attempt To Show That Judicial Estoppel Is Not An Issue

Plaintiffs argue that Ameriquest has misconstrued facts to make its judicial estoppel argument, but it is Plaintiffs who have done so. Either way, a determination of the issue requires a weighing of facts. First, Plaintiffs' Opposition fails to mention seven of the nine Plaintiffs already known to be subject to judicial estoppel. For the two that are mentioned, Plaintiffs allege Nelson and Melinda Jimenez filed Chapter 13 and later disclosed their claims so judicial estoppel is not at issue. However, Melinda Jimenez filed Chapter 7 in March 2008 and obtained a discharge soon thereafter without disclosing her TILA claim. Nelson Jimenez was granted an order confirming his Chapter 13 plan well before he disclosed his TILA claim and when he eventually disclosed his claim, it was specifically noted that he did not disclose his claim earlier. Both of their claims are subject to the doctrine of judicial estoppel. *See, e.g., Calvin v. Potter*, *supra* (barring claim because not disclosed before Chapter 13 plan confirmed).

### C. Plaintiffs Ignore That Lacking Standing to Pursue Claims Vitiates Subject Matter Jurisdiction

As discussed in the Motion to Strike, at least nine of the Plaintiffs have filed for bankruptcy protection and, as a result, probably lack standing to bring this lawsuit in their personal capacities. Under section 541 of the Bankruptcy Code, all of a debtor's property, including legal claims, becomes part of the bankruptcy estate at the time the petition is filed. *See* 11 U.S.C. § 541(a)(1); *Cannon-Stokes*, supra, 453 F.3d at 448 (7th Cir. 2006) ("the estate in bankruptcy, not the debtor owns all pre-bankruptcy claims..."). Further, an individual may not sue to enforce claims on her own behalf unless the trustee has abandoned the claims. *Biesek v. Soo Line R.R.*, 440 F.3d 410, 413 (7th Cir. 2006). Moreover, if a legal claim is not scheduled or otherwise administered by the time the bankruptcy is closed, it forever remains the

6

property of the estate, and the trustee remains the real party in interest. *See* 11 U.S.C. 554(d). Thus, absent evidence that their TILA claims reverted to them (and there is none in the Motion), the Plaintiffs who filed bankruptcy lack standing to litigate their claims against Ameriquest on their own behalf. *See, e.g., Ball v. Nationscredit Financial Serv. Co.*, 207 B.R. 869, 872, (Bankr. N.D. Ill. 1997) (granting motion to dismiss for lack of standing because when claim not initially disclosed only trustee had standing).

It is also unclear who has standing or is the real party in interest for certain Plaintiffs who are known to be deceased. For one known deceased Plaintiff, Edward Kobialka, although Plaintiffs represent the appropriate motion will be filed to assert a purported legal representative's standing (Opposition at p. 6, fn. 4), because nothing has been filed, there is a standing issue. Standing is essential to subject matter jurisdiction and must be present through each stage of litigation. When standing is not present at any stage of the litigation, the action should be dismissed. U.S. Const. Art. III, §2; Fed. R. Civ. Proc. 12(h)(3).

**D.     The Opposition Fails To Rebut That The Existence And Sufficiency Of The Letters Demanding Rescission And Statute Of Limitations Are At Issue**

Plaintiffs' Motion for Summary Judgment glosses over issues regarding the sufficiency of their rescission notices--many of the alleged letters rescinding the loans either (1) do not exist or (2) are predicated exclusively on an alleged TILA violation other than the missing payment period alleged now. The Motion contends that rescission letters were sent for six Plaintiffs, but the support for that allegation has nothing to do with the rescission letter. *See* Motion to Strike, p. 5, fn. 2, Dkt. 3175. Defendants raised the absence of the letters in the Motion to Strike and asked Plaintiffs' counsel for copies of the letters. None have been received for the six Plaintiffs and apparently none ever existed. *See* Ex. 2. These same six Plaintiffs have loans originated in 2002 and 2003, but did not file a complaint until late 2007 or 2008. Thus, the one year and three year statute of limitations is also at issue for these Plaintiffs.

Rescission letters were not attached to the Motion for 34 other Plaintiffs seemingly because their rescission letters are defective in that the letters purport to rescind a loan

7

exclusively for alleged TILA violations that have no relation to the alleged TILA violation which is the subject of the Motion. The letters raise missing or incomplete Notice of Right to Cancel forms instead of the alleged missing payment period on the disclosure statement now raised by the Motion. Similarly, the complaints for these 34 Plaintiffs do not raise any allegation which would encompass the alleged TILA missing payment period violation raised by the Motion. *See, e.g,* Case No. 1:06-cv-02469, Dkt. 42-3, ¶1. As a result, issues relating to the sufficiency of their notices of rescission and the statute of limitations are disputed for all of these 34 Plaintiffs' claims as well.

### E. The Opposition Fails To Rebut That There Are Multiple Factual Issues Necessary To Determine Whether The Truth In Lending Act Applies

The Opposition ironically includes at least three factually based Affidavits from Plaintiffs to argue that no disputed factual issues will arise from the Motion. Even without the ability to cross-examine these Plaintiffs yet about their Affidavits, various statements are suspect. For example, both the Castella Williams Harris Affidavit and the Brett Wertepny Affidavit only discuss how the subject real property is being used at present, not its use at the relevant time – when they obtained a loan. Moreover, the Harris Affidavit is self-contradictory. At paragraph 1 she admits she has a hair salon named Stella's Hair Salon, but in paragraph 3 states she only cuts hair at other people's businesses. Again, her statement regarding her use of the property is only made in the present tense. Even what Harris states lacks credibility in this context because she maintains an internet directory for her business identifying her residence address as the place of business for Stella's Hair Salon.

Adding to the complexity of the relevant factual issues, it appears that 34 of the Plaintiffs are residents of Connecticut, which is one of five states which have been exempted from the TILA.[1] The applicability of the Connecticut Truth In Lending Act has not been mentioned in the

---

[1] Connecticut's Truth-in-Lending statute, *Conn. Gen. Stat.* § 36a-675, et seq., not the rescission provision of the federal TILA, 15 U.S.C. § 1635, governs rescission of a Connecticut mortgage refinancing transaction. *See Ives v. W.T. Grant Co.,* 522 F.2d 749, 753-54 (2d Cir. 1975) (observing that except for §§ 1640 and 1641 of the federal TILA, Connecticut was granted an exemption from the federal TILA). *See also Belini v. Washington Mutual Bank,* 412 F.3d 17, 20 (1st Cir. 2005) ("In [Connecticut], as to certain

8

Motion. An analysis of that state statute and cases construing it may lead to completely different conclusions, including the adequacy of Ameriquest's disclosure statements to Connecticut borrowers.

## III. THE OPPOSITION FAILS TO ADDRESS HOW THE MOTION FOR SUMMARY JUDGMENT CAN GO FORWARD GIVEN THAT DISCOVERY IS STAYED ALTHOUGH DISCOVERY IS NECESSARY

The Opposition infers that significant discovery has taken place. That is incorrect. The only support for that argument (Opposition at p. 3, fn. 2) is that the Edelman firms' Plaintiffs, a small portion of the moving Plaintiffs, have provided initial disclosures and their loan documents and a few of them have had their depositions taken and responded to relatively few and basic interrogatories. No other moving Plaintiff has even provided their basic loan documents despite a stipulation for an exchange of loan documents.

Little discovery has taken place because the parties have been attempting to settle all the Opt-Out cases instead of engaging in extensive discovery needed to fully evaluate the Opt-Out Plaintiffs' cases. (*See* Dkt. 3077, limiting discovery to the exchange of documents until the mediation.) Before substantively responding to the Motion, Defendants must be given a fair opportunity to conduct discovery. If necessary, Defendants will propound interrogatories and requests for production of documents, followed by a deposition of each Plaintiff on the above and other factual issues, which Defendants expect would yield additional evidence to oppose the Motion.

---

TILA requirements the federal provisions have no force ..."). Connecticut is one of only five states for which the Board of Governors of the Federal Reserve Board has exempted certain credit transactions from the federal TILA. *See* 12 C.F.R. Pt. 226, Supp. I.

9

## IV.   CONCLUSION

While Ameriquest appreciates the desire to expediently resolve the Opt-Out cases, the parties entered into a stipulation to allow that to happen in an orderly fashion, initially with settlement efforts through mediation, following limited discovery and a ruling on the Third-Party Defendants' motion to dismiss. There is no reason to now abandon that schedule and allow a small percentage of Opt-Out Plaintiffs to insist on rulings on their own factually specific issues, resulting in chaos instead of an orderly procedure for the management of the Opt-Out cases. Accordingly, Defendants request that the Motion be stricken.

DATED: December 7, 2009                    Respectfully submitted,

                                           By: /s/ Randall L. Manvitz

                                           *Attorneys for Ameriquest Mortgage Company, et al.*

                                           Randall L. Manvitz (admitted *pro hac vice*)
                                           BUCHALTER NEMER
                                           333 Market Street, Suite 2500
                                           San Francisco, CA 94105
                                           Telephone: (415) 760-0900
                                           Facsimile: (415) 227-0070

10

## **CERTIFICATE OF SERVICE**

I, Randall L. Manvitz, hereby certify that on this 7th day of December 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Randall L. Manvitz

11

# EXHIBIT 1

1

```
 1            IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3    IN RE                        ) Lead Docket No. 05 C 7097
                                   ) MDL No. 1715
 4    AMERIQUEST MORTGAGE COMPANY, )
                                   )
 5                                 ) Chicago, Illinois
                                   ) December 19, 2008
 6                                 ) 11:00 o'clock a.m.

 7            TRANSCRIPT OF PROCEEDINGS - STATUS
          BEFORE THE HONORABLE MARVIN E. ASPEN
 8
      APPEARANCES:
 9

10    For the Plaintiffs:    MR. GARY KLEIN
                             MR. MARVIN MILLER
11                           MS. CATHLEEN COMBS
                             MS. TARA L. GOODWIN
12                           MR. DANIEL MARK HARRIS
                             MR. ANTHONY VALACH
13                           MR. TERRY A. SMILJANICH
                             MS. RACHEL GEMAN, by phone
14                           MS. SHENNAN KAVANAGH, by phone

15
      For the Defendants:    MR. BERNARD E. LeSAGE
16                           MS. LAURIE S. FULTON
                             MS. STEPHANIE M. ZIMDAHL
17                           MR. WILLIAM R. BROWN
                             MS. CATHLEEN M. COMBS
18                           MS. TARA L. GOODWIN
                             MR. KEITH R. VERGES
19                           MR. DANIEL MARK HARRIS
                             MR. ANTHONY VALACH
20                           MR. WILLIAM SPIELBERGER
                             MR. DONALD P. ECKLER
21                           MR. ALAN SALPETER
                             MR. THOMAS M. CRAWFORD
22                           MR. RAM NATARAJAN
                             MR. GERALD J. SRAMEK
23                           MS. ANNA C. SCHUMAKER
                             MR. CHARLES S. OFSTEIN
24                           MR. STEVEN M. SANDLER
                             MR. TERRY A. SMILJANICH
25                           MR. THOMAS J. WIEGAND
                             MR. JOHN L. ROPIEQUET
```

2

1   APPEARANCES (Cont'd):

2
    For the Defendants:          MS. KATHERINE M. DONAT
3                                MR. GARY T. JANSEN
                                 MR. LEE M. WEISZ
4                                MS. LINDA B. DUBNOW
                                 MR. JAMES V. HART
5                                MR. CRAIG A. VARGA
                                 MS. KERRY D. NELSON
6                                MS. EMILY K. LASHLEY
                                 MR. GEORGE K. FLYNN
7                                MR. DAVID A. WARD

8
    Court Reporter:              MR. JOSEPH RICKHOFF
9                                Official Court Reporter
                                 219 S. Dearborn St., Suite 1232
10                               Chicago, Illinois  60604
                                 (312) 435-5562
11

12              * * * * * * * * * * * * * * * * * *

13                       PROCEEDINGS RECORDED BY
                         MECHANICAL STENOGRAPHY
14                  TRANSCRIPT PRODUCED BY COMPUTER

15

16

17

18

19

20

21

22

23

24

25

16

1          THE COURT:  But the intent was still to try to settle
2    those cases; is that correct?

3          MS. COMBS:  We hope so.

4          THE COURT:  Am I missing something?

5          MS. GOODWIN:  Well, your Honor gave us 45 days to
6    refile our summary judgment motion and have everyone else
7    join, and we're trying to get clarification on what procedure
8    you want us to use for the other people who join us.

9          THE COURT:  I am not going to rule on 169 summary
10   judgment motions.  You can file what you want.  I am not even
11   going to brief it at this point, if you want to file motions.
12   I am going to rule on any global motions --

13         MS. GOODWIN:  That's what we're talking about.

14         THE COURT:  -- that you file.  Motions that are going
15   to -- any motion that will impact all the cases.  I am not
16   going to look at individual fact differences that may relate
17   to the individual cases.

18         So, if you can file one global motion, that is fine,
19   and I will look at it.  And if I think it is helpful to
20   resolve it in this case and if I can resolve it, I will do
21   that.  But it is not my intent to -- it defeats the whole idea
22   of an MDL for me to take all these cases and decide individual
23   fact- specific motions for summary judgment as to each
24   individual case.

25         MS. COMBS:  I understand your point, your Honor.

1  What we're talking about is one legal issue that has already
2  been resolved by the Seventh Circuit. The only question that
3  in order to present it, we feel we should at least make
4  assertions on using an affidavit: The client received the
5  disclosures, the client had a residential mortgage; and,
6  therefore, we're entitled to, you know, summary judgment in
7  our favor.

8          That then raises -- we have attached factual
9  questions, but I don't -- I don't -- think they'll be
10  disputed. That is how we were proposing to go ahead.

11          I don't see how you could decide the legal issue
12  without having the factual underpinning for it, and that's all
13  we're talking about.

14          MR. LeSAGE: Your Honor, just to add, I'm not
15  confused about your Court's order of December 12. I read it
16  this morning. It addresses these two summary judgments which
17  they're referring to right now. And you made a thorough
18  analysis. And what they're trying to do, I think, is re-argue
19  your rulings. I think your rulings are clear on the December
20  12th order.

21          MS. GOODWIN: I think our question is: What do we
22  submit -- you asked us to have people join our motion. What
23  do you want us to submit on behalf of those other people?
24  Because we've already submitted what we submitted. Do you
25  want all those other people to have a statement of material

1   facts or an affidavit or not, is our question.

2   THE COURT: If all the people that you represent

3   participate in a joint motion and the facts are not disputed

4   or you anticipate that Ameriquest is going to agree to those

5   facts, then I do not have a fact situation before me. I am

6   not dealing with individual cases. I am dealing with a global

7   issue, and I am perfectly happy to do that.

8   MS. COMBS: Okay. All right.

9   And, then, finally, with respect to discovery, it's

10  not stayed with regard to the individual opt-out actions. We

11  have been doing some limited discovery just to establish

12  ownership information so we can amend the complaint so we've

13  got the parties before you. And, then, title company

14  information. We're just trying to get the documents from the

15  title company because all of these are --

16  THE COURT: Yes, other than that limited --

17  MS. COMBS: That's all we're doing.

18  THE COURT: -- discovery.

19  MS. COMBS: That's all we're doing.

20  THE COURT: Again, I think as long as we are working

21  on a process that has a good chance of resolving this case, we

22  should stay any other motions other than the ones we have

23  talked about and any other discovery other than the

24  identity-type discovery you are talking about.

25  MR. LeSAGE: We agree, your Honor. We'll submit a

# EXHIBIT 2

## Manvitz, Randall L.

**From:** Manvitz, Randall L.
**Sent:** Friday, December 04, 2009 10:36 AM
**To:** 'Richard Black'
**Cc:** Manvitz, Randall L.
**Subject:** RE: In Re: Ameriquest MDL - Rescission Letters For Opt-Out Plaintiffs Hess, Walrod, Young

Richard,

We still do not have any indication that any rescission letters exist concerning plaintiffs Hess, Walrod, and Young. The absence of those letters has been at issue for three weeks now. You said you would provide a more complete response on November 24 or 25, but have not. The only reasonable conclusion is that the Hess, Walrod, and Young rescission letters do not exist.

As I mentioned in my voice message, we will be finalizing a Reply today or tomorrow for filing before the Monday deadline. If you have not provided the rescission letters by today or at least offered some evidence that they exist, we will have to assume that there are no such rescission letters and will inform the court of the same.

We look forward to hearing from you on this immediately so we can be sure that we are providing the Court the most accurate information. I will be available all day today.

Randall Manvitz | Sr. Counsel | **BuchalterNemer**, A Professional Corporation | 333 Market Street, 25th Floor | San Francisco, CA 94105-2126 | Direct Dial: (415) 227-3644 | Direct Fax: (415) 904-3102 | Switchboard: (415) 227-0900 | rmanvitz@buchalter.com | www.buchalter.com

---

**From:** Richard Black [mailto:black-law@comcast.net]
**Sent:** Wednesday, November 25, 2009 3:52 AM
**To:** Manvitz, Randall L.
**Subject:** Re: In Re: Ameriquest MDL - Rescission Letters For Opt-Out Plaintiffs Hess, Walrod, Young

Hello Randall: I am out of the office over the holiday and will return to the office on monday. I will follow up with you on monday. Please call my office at 616-396-3998 in Holland, Michigan next week if you have not had a response from me on these cases. By the way Randall, what steps can be taken at this point on behalf of these clients to modify mortgages? These cases have been tied up in the MDL for years. thank you. Richard Black, 283 Howard Ave., Holland, Michigan.
On Nov 24, 2009, at 2:50 PM, Manvitz, Randall L. wrote:

Richard,

We look forward to hearing from you soon. We have been waiting for information concerning the letters for weeks now so if the letters exist, please provide them by tomorrow.

Randall Manvitz | Sr. Counsel | **BuchalterNemer**, A Professional Corporation | 333 Market Street, 25th Floor | San Francisco, CA 94105-2126 | Direct Dial: (415) 227-3644 | Direct Fax: (415) 904-3102 | Switchboard: (415) 227-0900 | rmanvitz@buchalter.com | www.buchalter.com

12/7/2009

**From:** Richard Black [mailto:black-law@comcast.net]
**Sent:** Monday, November 23, 2009 12:31 PM
**To:** Manvitz, Randall L.
**Subject:** Re: In Re: Ameriquest MDL - Rescission Letters For Opt-Out Plaintiffs Hess, Walrod, Young

Hello Randall. I cannot give you a more complete response until tuesday or wednesday. These clients did send the letters by certified mail and they were returned as not accepted. I will make an effort over the next two days to have the clients send to me copies of the non accepted return receipts. thank you. Richard Black, Attorney. 616-396-3998.
On Nov 23, 2009, at 3:26 PM, Manvitz, Randall L. wrote:

Richard,

It appears that rescission letters were not sent regarding plaintiffs Robert and Melissa Hess, James and Teresa Walrod, or Bryan and Jill Young. If that is correct, we request that you confirm the same by tomorrow. If rescission letters were sent, please let me know and forward them to me.

We look forward to hearing from you.

Randall Manvitz | Sr. Counsel | **BuchalterNemer**, A Professional Corporation | 333 Market Street, 25th Floor | San Francisco, CA 94105-2126 | Direct Dial: (415) 227-3644 | Direct Fax: (415) 904-3102 | Switchboard: (415) 227-0900 | rmanvitz@buchalter.com | www.buchalter.com

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing this e-mail, please see http://www.buchalter.com/bt/index.php?option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.**

Notice To Recipient: This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message and any and all duplicates of this message from your system. Thank you in advance for your cooperation. For additional policies governing

this e-mail, please see http://www.buchalter.com/bt/index.php?
option=com_content&task=view&id=151&Itemid=129.

**IRS Circular 230 Disclosure: In order to comply with requirements imposed
by the Internal Revenue Service, we inform you that any U.S. tax advice
contained in this communication (including any attachments) is not intended
to be used, and cannot be used, for the purpose of (i) avoiding penalties
under the Internal Revenue Code or (ii) promoting, marketing, or
recommending to another party any transaction or matter addressed herein.**