# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br>Lead Case No. 05-cv-07097<br><br>Centralized before the<br>Honorable Marvin E. Aspen |

## BORROWERS' FIRST AMENDED
## AND CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs, by their attorneys, hereby consolidate the complaints filed in the following actions:

*Barber v. Ameriquest Capital Corp.*, Case No. 04-CV-01296 (TJC-TEM), U.S. District Court for the Middle District of Florida;

*Becker v. J.M. Closing Services, Inc., et al.*, Case No. 1:06-cv-02810 (RDB), U.S. District Court for the District of Maryland;

*Brown v. Ameriquest Capital Corp.*, Case No. SACV05-285 (AHS), U.S. District Court for the Central District of California;

*Boudin v. ATM Holdings, Inc., D/B/A ATM Corp. of America and Ameriquest et al.*, 1:07-cv-00018, U.S. District Court for the Southern District of Alabama;

*Campbell v. Ross v. Ameriquest Mortgage Co.*, Case No. 05-CV-00107 (WLS), U.S. District Court for the Middle District of Georgia;

*Capasso v. Ameriquest Mortgage Co.*, Case No. 06-CV-01221 (JCL), U.S. District Court for the District of New Jersey;

*Carlson v. Ameriquest Mortgage Co.*, Case No. 06-CV-03129 (PAM), U.S. District Court for the District of Minnesota;

*D'Ambrogi v. Ameriquest Mortgage Co.*, Case No. 05-CV-04427 (CMR), U.S. District Court for the Eastern District of Pennsylvania;

*Doherty v. Town & Country Credit Corp.*, Case No. 05-CV-00589 (JRT), U.S. District Court for the District of Minnesota.

*Graham, et al. v. Ameriquest Mortgage Co., Argent Mortgage Co., et al., 4:06-40195, U.S. District Court for the District of Massachusetts.*

*Harless v. Ameriquest Mortgage Co.*, Case No. 06-CV-1391 (SEB-VSS), U.S. District Court for the Southern District of Indiana;

*Harless v. Ameriquest Mortgage Co.*, Case No. 06-CV-0695 (LJM), U.S. District Court for the Southern District of Indiana;

*Hines, et al. v. Ameriquest Mortgage Co.*, Case No. 4 06-CV-133, U.S. District Court for the Northern District of Georgia;

*Jewell v. Ameriquest Mortgage Co.*, Case No. 06-CV-00269, U.S. District Court for the Northern District of Illinois;

*Jones v. Ameriquest Mortgage Co.*, Case No. 07-AP-1079 (MAM-ALS), U.S. Bankruptcy Court for the Southern District of Alabama;

*Juillerat v. Ameriquest Mortgage Co.*, Case No. 8:05-CV-01117 (DOC), U.S. District Court for the Central District of California;

*Kahrer v. Ameriquest Mortgage Co.*, Case No. CIV.A.05-391, U.S. District Court for the Western District of Pennsylvania;

*Knox v. Ameriquest Mortgage Co.*, Case No. C 05 00240 (SC), U.S. District Court for the Northern District of California;

*Madrazo v. Ameriquest Mortgage Co.*, Case No. CV 05 3987 (BRK), U.S. District Court for the Eastern District of New York;

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

*Montanez v. Ameriquest Mortgage Co.*, Case No. 06 CV 10244 (RWZ), U.S. District Court for the District of Massachusetts;

*Murphy v. Ameriquest Mortgage Co.*, Case No. 04-CV-12651 (RWZ), U.S. District Court for the District of Massachusetts;

*Russell v. Ameriquest Mortgage Co.*, Case No. 06-CV-401 (TLS-APR) U.S. District Court for the Northern District of Indiana;

*Sanchez v. Argent Mortgage Co.*, Case No. SACV07-984 CJC, U.S. District Court for the Central District of California;

*Saunders v. Ameriquest Mortgage Co.*, Case No. 5-CV-01126 (CAB), U.S. District Court for the Northern District of Ohio;

*Stadaker, et al. v. Ameriquest Mortgage Co.*, Case No. 3:07-CV-00409, U.S. District Court for the Middle District of Tennessee;

*Ungar v. Ameriquest Mortgage Co.*, Case No. 05 CIV 01849 (JDW), U.S. District Court for the Middle District of Florida;

*Valdes v. Ameriquest Mortgage Co.*, Case No. RG05236537, Alameda County Superior Court;

*Williams v. Ameriquest Mortgage Co.*, Case No. 05 CV 6189 (LTS), U. S. District Court for the Southern District of New York; and

*Williams v. Ameriquest Mortgage Co.*, Case No. 05-CV-01036 (EAK), U.S. District Court for the Middle District of Florida.

By this consolidation, the allegations in each of these complaints are intended to be preserved as if reasserted and alleged herein. Plaintiffs allege the following upon information and belief based, among other things, upon the investigation made by Plaintiffs by and through their attorneys:

## INTRODUCTION

1.      Plaintiffs bring this class action on behalf of themselves, and five nationwide classes of similarly-situated individuals (the "Class") as described in the paragraphs set forth herein.

2.      This case involves the actions of Defendants Ameriquest Mortgage Company ("AMC") and its subsidiaries, affiliates and agents (together, "Ameriquest"). Ameriquest originates and services residential mortgage loans.

3.      Ameriquest has engaged in uniform unfair, unconscionable, deceptive and unlawful commercial practices in soliciting, closing, and servicing residential mortgage transactions nationwide.

4.      According to the 2003 and 2004 Mortgage Market Statistical Annuals, Ameriquest was the third largest subprime lender by volume during the period October 1999 through December 2003, with $61.8 billion in total originations during the period. Based on estimates from Ameriquest's securitization-filing, Ameriquest has risen to be the top "direct to consumer" subprime mortgage originator in the United States and originated an estimated $16.84 billion in loans for the first 6 months of 2004, representing a 76% rise over the same period in 2003. This growth has occurred as a result of Ameriquest's unfair and predatory practices, alleged herein.

5.      Ameriquest ceased doing business in 2007, and stopped originating new loans at that time.

6.      Ameriquest targeted consumers for predatory, "subprime" home loans and induces borrowers to enter into unfair and deceptive residential mortgages without regard for the homeowners' interests or ability to pay. By its predatory loan practices, Ameriquest engages in a persistent "bait and switch" scheme through which it lures borrowers with promises of favorable interest rates, monthly payments and/or loan terms, and then switches the terms at closing to less favorable ones.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

7.     Plaintiffs and the Class members whose loans were financed by Ameriquest each received a loan which, to their surprise, contained one or more of the following unfavorable terms:  (a) confusing and unfair variable interest rate structure which provides only for an increase and not decrease in the borrower's interest rate; (b) a misleading charge for "discount points" or a "discount fee" often totaling thousands of dollars added to the principal of the loan, although Ameriquest provided no "discount" to the interest rate; (c) prepayment penalty that hinders borrowers from refinancing on better terms with other lenders; and (d) duplicative and excessive costs and closing fees in amounts designed to strip home equity and prevent borrowers from refinancing without incurring high costs.

8.     Ameriquest also routinely failed to provide required disclosures, including the statutorily mandated Notice of Right to Cancel, and/or circumvents statutory protections by failing to leave a true copy of completed loan documents in borrowers' possession so that borrowers cannot review the loan terms.

9.     When borrowers inquired at closing about why they had not received their loans on the promised terms, they were typically promised early refinancing on more favorable terms.  That promise was false, either because no refinance was made or because the available refinance is not on more favorable terms.  If a refinance was offered by Ameriquest, it involved an additional set of expensive duplicate and unnecessary closing fees.

10.     Borrowers whose loans were serviced by Ameriquest were subject to a distinct - but similarly common, illegal, and unfair – scheme as Ameriquest's loan-financing scheme: Ameriquest routinely sought to collect, and did collect, various fees, costs, and charges that were not legally due under the mortgage contracts, it mishandled payments made by borrowers, and engaged in unlawful collection practices, breaching the mortgage loan terms.

11.     Ameriquest's unfair practices allow Ameriquest to profit by leaving borrowers with a three-way Hobson's choice.  Either the borrower could 1) choose to remain in a loan with unacceptable terms; 2) find another lender offering better terms and pay Ameriquest a substantial and unjustified prepayment penalty while losing equity on additional closing costs; or

3) refinance with Ameriquest and thereby provide Ameriquest with an opportunity to capitalize the points and closing costs from the first loan while charging another set of points and/or closing costs in an equal or larger amount.

12.     By the practices described in this Complaint, Ameriquest violated numerous federal and state laws.

13.     These federal laws include, for example, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m(a), the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d), the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*.

14.     These state laws include, but are not limited to, the common law of contract and equity, state predatory lending laws, and the consumer protection laws of the State of California (where Ameriquest is based and from where the scheme originated) or, alternatively, the various states' consumer protection and deceptive and unfair trade practices acts.

15.     By virtue of this conduct, Plaintiffs and the Class have been harmed and continue to incur damages and suffer harm.  Through this action, Plaintiffs seek, on behalf of themselves and all others similarly situated, damages, restitution, a declaration of the right to rescind, attorneys fees, costs, and any other relief the Court deems proper.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 1640(e), 1681p, 1691p, and 2614.

17.     This Court also has original jurisdiction over the state-law claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) there are 100 or more members in the proposed classes; (2) many Plaintiffs and Class members have a different citizenship from the Defendants; and (3) the claims of the proposed Class members exceed $5,000,000 in the aggregate.  In addition, this Court has supplemental

jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state-law claims because those claims and the federal law claims derive from a common nucleus of operative facts.

      18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that Defendants transact substantial business in this district, and pursuant to the transfer order of the Judicial Panel on Multidistrict Litigation.

**PARTIES**

I.    **PLAINTIFFS**

      19.    Individual and Representative Plaintiffs George and Crisella Barber are residents of Lake City, Florida, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

      20.    Individual and Representative Plaintiff Debra Holloway is a resident of Tampa, Florida, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

      21.    Individual and Representative Plaintiff Laurence Osten is a resident of Fort Wright, Florida, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

      22.    Individual and Representative Plaintiff Barbara Ann Becker is a resident of Baltimore, Maryland, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

      23.    Individual and Representative Plaintiff Tonya Summer Brown is a resident of Stone Mountain, Georgia, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

      24.    Individual and Representative Plaintiff Guadalupe Hernandez is a resident of Brownsville, Texas, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

25.    Individual and Representative Plaintiffs Kevin and Maria Cusanelli are residents of Hamden, Connecticut, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

26.    Individual and Representative Plaintiff Johnnie Ross is a resident of Albany, Georgia, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

27.    Individual and Representative Plaintiff Charles Meadows is a resident of Sparks, Georgia, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

28.    Individual and Representative Plaintiffs Joseph and Nicole Riggins are residents of Valdosta, Georgia, and have been victims of Ameriquest's practices during the period covered by this consolidated action

29.    Individual and Representative Plaintiff Kerri Capasso is a resident of New Milford, New Jersey, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

30.    Individual and Representative Plaintiffs Raymond and Rebecca Carlson are residents of St. Paul, Minnesota, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

31.    Individual and Representative Plaintiff Patrick Galvan is a resident of Saginaw, Michigan, and has been a victim of Ameriquest's practices during the period covered by this consolidated action (during which time he resided in St. Paul, Minnesota).

32.    Individual and Representative Plaintiffs Robert and Debra Peabody are residents of St. Paul, Minnesota, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

33.    Individual and Representative Plaintiffs Michele and Craig D'Ambrogi are residents of Hanover, Pennsylvania, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

34.     Individual and Representative Plaintiffs Kathryn and William Birkholz are residents of West Middlesex, Pennsylvania, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

35.     Individual and Representative Plaintiffs Thomas B. and Elvie Doherty are residents of Minneapolis, Minnesota, and have been victims of Town & Country's practices during the period covered by this consolidated action.

36.     Individual and Representative Plaintiff Mary Harless is a resident of Anderson, Indiana, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

37.     Individual and Representative Plaintiffs James and Jennifer Jewell are residents of Springfield, Ohio, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

38.     Individual and Representative Plaintiff Deborah Juillerat is a resident of Golden Valley, Minnesota, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

39.     Individual and Representative Plaintiff Karen M. Kahrer is a resident of New Castle, Pennsylvania, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

40.     Individual and Representative Plaintiffs Nona and Albert Knox are residents of East Palo Alto, California, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

41.     Individual and Representative Plaintiff Maria Torres is a resident of East Palo Alto, California, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

42.     Individual and Representative Plaintiffs Heladio and Maria Arellanes are residents of Richmond, California, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

43.    Individual and Representative Plaintiff Richard A. Madrazo is a resident of Staten Island, New York, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

44.    Individual and Representative Plaintiff Yamal Montanez is a resident of Chicopee, Massachusetts, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

45.    Individual and Representative Plaintiffs Isabelle M. and David R. Murphy are residents of Plympton, Massachusetts, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

46.    Individual and Representative Plaintiff Lynn Gay is a resident of Bridgewater, Massachusetts, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

47.    Individual and Representative Plaintiffs David M. and Janet Wakefield are residents of Wareham, Massachusetts, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

48.    Individual and Representative Plaintiffs Frank and Martha White are residents of Mattapam, Massachusetts, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

49.    Individual and Representative Plaintiff Harriet Holder is a resident of Mattapan, Massachusetts, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

50.    Individual and Representative Plaintiff Pegi Saunders is a resident of Maple Heights, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

51.    Individual and Representative Plaintiffs Matthew and Tracey Lloyd are residents of Oakwood Village, Ohio, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

52.     Individual and Representative Plaintiff Dorothy Stevens is a resident of Shaker Heights, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

53.     Individual and Representative Plaintiffs Aris and Ricardo Gay are residents of Cleveland Heights, Ohio, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

54.     Individual and Representative Plaintiff Jeraldine Wolf is a resident of Cleveland Cuyahoga County, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

55.     Individual and Representative Plaintiff Brittney Smith is a resident of Cleveland Cuyahoga County, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

56.     Individual and Representative Plaintiffs Paris Paul and Lynda M.T. Paul are residents of Chagrin Falls Geauga County, Ohio, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

57.     Individual and Representative Plaintiff Portia Mims Harris is a resident of Cleveland Cuyahoga County, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

58.     Individual and Representative Plaintiff Nicole McCorkle is a resident of Cleveland Cuyahoga County, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

59.     Individual and Representative Plaintiffs James Gray and Ruth Gray are residents of South Euclid Cuyahoga County, Ohio, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

60.     Individual and Representative Plaintiff Yvette Campell is a resident of Cleveland Cuyahoga County, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

61.    Individual and Representative Plaintiff Daisy Moblin is a resident of Cleveland Cuyahoga County, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

62.    Individual and Representative Plaintiff Veronica Thomas is a resident of Cleveland Cuyahoga County, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

63.    Individual and Representative Plaintiff Elmore James, Jr. is a resident of Oakwood Cuyahoga County, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

64.    Individual and Representative Plaintiff Catherine Chaney is a resident of Cleveland Cuyahoga County, Ohio, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

65.    Individual and Representative Plaintiff Steven H. Ungar is a resident of Venice, Florida, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

66.    Individual and Representative Plaintiff Cheryl Williams is a resident of New York, New York, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

67.    Individual and Representative Plaintiff Duval Naughton is a resident of Brooklyn, New York, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

68.    Individual and Representative Plaintiff Latonya and Dwayne Williams are residents of St. Petersburg, Florida and have been victims of Ameriquest's practices during the period covered by this consolidated action.

69.    Individual and Representative Plaintiff William F. and Daisybel Tolbert are residents of St. Petersburg, Florida, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

70.     Individual and Representative Plaintiffs Timothy and Francis Adamowicz are residents of Wilmington, Delaware, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

71.     Individual and Representative Plaintiff Christopher Bourassa is a resident of New Bedford, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

72.     Individual and Representative Plaintiff Venitra Brown is a resident of Waldorf, Maryland and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

73.     Individual and Representative Plaintiffs Edrick and Debra Centeno are residents of Las Vegas, Nevada and have been victims of Ameriquest's practices during the period covered by this consolidated action.

74.     Individual and Representative Plaintiff Vaughn DeBold is a resident of Cocoa, Florida and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

75.     Individual and Representative Plaintiffs Gregory and Marcell DeMeo are residents of Wakefield, Massachusetts and have been victims of Ameriquest's practices during the period covered by this consolidated action.

76.     Individual and Representative Plaintiff James Devlin is a resident of Plymouth, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

77.     Individual and Representative Plaintiffs Timothy and Cynthia Dion are residents of Bridgewater, Massachusetts and have been victims of Ameriquest's practices during the period covered by this consolidated action.

78.     Individual and Representative Plaintiff Karen Dudeck is a resident of South Boston, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

79.     Individual and Representative Plaintiff Christopher Gabrielli is a resident of Marlborough, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

80.     Individual and Representative Plaintiff Patricia Masson is a resident of Tyngsboro, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

81.     Individual and Representative Plaintiffs John and Kathleen O'Callaghan are residents of Quincy, Massachusetts and have been victims of Ameriquest's practices during the period covered by this consolidated action.

82.     Individual and Representative Plaintiff Glen Powell is a resident of Cambridge, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

83.     Individual and Representative Plaintiff Michele Powell is a resident of Worcester, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

84.     Individual and Representative Plaintiff Michael Russo is a resident of Leominster, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

85.     Individual and Representative Plaintiff Kenneth Sawyer is a resident of Sharon, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

86.     Individual and Representative Plaintiffs Frank and Linda Shea are residents of Methuen, Massachusetts and have been victims of Ameriquest's practices during the period covered by this consolidated action.

87.     Individual and Representative Plaintiffs Scott Ventola and Steven Bourassa are residents of Princeton, Massachusetts and have been victims of Ameriquest's practices during the period covered by this consolidated action.

88.     Individual and Representative Plaintiff Joshua Wilgoren is a resident of Framingham, Massachusetts and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

89.     Individual and Representative Plaintiffs David and Kelly Graham are residents of Westminster, Massachusetts, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

90.     Individual and Representative Plaintiff Arthur Brian Boudin is a resident of Alabama, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

91.     Individual and Representative Plaintiffs Dean and Donna Hines are residents of Bartow County, Georgia, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

92.     Individual and Representative Plaintiffs Katheryn and Philip Cheek are residents of Bartow County, Georgia, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

93.     Individual and Representative Plaintiff Victor Sanchez is a resident of Phoenix, Arizona, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

94.     Individual and Representative Plaintiff Porter Stadaker is a resident of Nashville, Tennessee, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

95.     Individual and Representative Plaintiff Lee Dunbar is a resident of Omaha, Nebraska, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

96.     Individual and Representative Plaintiff Darrell Powe is a resident of Heidelburg, Mississippi, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

97.     Individual and Representative Plaintiff Raymond Thomas is a resident of Fort Worth, Texas, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

98.     Individual and Representative Plaintiff Radamas Delgado is a resident of Groveland, Florida, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

99.     Individual and Representative Plaintiff Theresa Diaz is a resident of Tampa, Florida, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

100.     Individual and Representative Plaintiff Dave Henry is a resident of Covington, Georgia, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

101.     Individual and Representative Plaintiff Anna Mendoza is a resident of Lancaster, California, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

102.     Individual and Representative Plaintiff Frank Mendez is a resident of Browley, California, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

103.     Individual and Representative Plaintiff Sari Boycee is a resident of Paso Robles, California, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

104.     Individual and Representative Plaintiff Evelyn Williams is a resident of Stockton, California, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

105.     Individual and Representative Plaintiff Andre R. Apodaca is a resident of Clovis, California, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

106.    Individual and Representative Plaintiff Joann Jones is a resident of Mobile, Alabama, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

107.    Individual and Representative Plaintiff Monty Nicole Russell is a resident of Lake County, Indiana, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

108.    Individual and Representative Plaintiff Mary Lige' is a resident of Lake County, Indiana, and has been a victim of Ameriquest's practices during the period covered by this consolidated action.

109.    Individual and Representative Plaintiffs David and Kathleen MacDowell are residents of Dracut, Massachusetts, and have been victims of Ameriquest's practices during the period covered by this consolidated action.

## II.    <u>DEFENDANTS</u>

110.    Defendant Ameriquest Mortgage Company ("AMC") is a privately-held Delaware corporation that has its principal place of business in California.  AMC is the nation's largest privately held sub-prime lender, with more than 270 offices nationwide.

111.    Defendant ACC Capital Holdings Corporation is a privately-held Delaware corporation that has its principal place of business in California.  It is the owner of AMC and other Ameriquest entities, as set forth below.

112.    Defendant AMC Mortgage Services, Inc. is a Delaware corporation with its principal place of business in California.  It is a wholly-owned subsidiary of ACC Capital Holdings Corporation.  It services many of the loans originated by AMC.

113.    Defendant Ameriquest Mortgage Securities, Inc. is a Delaware corporation with a principal place of business in California.  It holds legal title to many of the loans originated by AMC.

114.    Defendant Town & Country Credit Corporation is a Delaware corporation with a principal place of business in California. Town and Country is a wholly owned subsidiary of ACC Capital Holdings Corporation.

115.    Defendant Argent Mortgage Co., LLC is a Delaware company with a principal place of business in California. Argent is a wholly-owned subsidiary of ACC Capital Holdings Corporation.

116.    Defendant Olympus Mortgage Co, NKA Bedford Home Loans, Inc. is a Delaware company with a principal place of business in California.

117.    Collectively, AMC, ACC Capital Holdings Corporation, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., Town & Country Credit Corp., Argent Mortgage Co., LLC, and Olympus are referred to as "Ameriquest" or "Ameriquest Entities" or "Defendants."

## III.    <u>AGENCY/JOINT VENTURE</u>

118.    At all times herein mentioned, Defendants, both individually and collectively, and affiliates not herein named, are and were agents or joint venturers of each of the other Defendants, and in doing the acts alleged herein were acting within the course and scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

119.    Argent, as a wholesale lender, underwrites and funds loans through flow lenders, which act as its agents. Argent provides model loan documents to its flow lenders, and is the lender in these transactions.

120.    Ameriquest controlled the actions of all the Defendants and of each of them by a program of centralized policy-making, policy dissemination, and training, emanating from central offices in California.

121.    Ameriquest has also implemented centralized decision-making and policy control by and through its overlapping officers.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

## IV.    AIDING AND ABETTING

122.    Defendants, and each of the lending subsidiaries, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs and the Classes.  In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## V.    CONSPIRACY

123.    Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein.  The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of was, *inter alia*, to financially benefit Defendants at the expense of Plaintiffs by engaging in fraudulent activities.  Defendants accomplished their conspiracy, common enterprise, and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein.  Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof.  Defendants' wrongful acts include, *inter alia*, all of the acts that each of them are alleged to have committed in furtherance of the wrongful conduct complained of herein.

124.    Plaintiffs are informed and believe that the above-described conspiracy is ongoing, making it pointless for Plaintiffs to allege when the last overt act of the conspiracy occurred.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

# FACTUAL BACKGROUND

I.    **AMERIQUEST'S COMMON PATTERN AND PRACTICE OF UNFAIR, UNLAWFUL, AND DECEPTIVE PRACTICES IN CONNECTION WITH MORTGAGE LOAN FINANCING**

125.    Ameriquest has engaged in and continues to engage in a uniform common plan and scheme to prey upon unsuspecting consumers by routinely causing borrowers to enter into residential loans with unfavorable terms, misleading and inappropriate "discount" fees, high and adjustable interest rates, prepayment penalties, and excessive loan principal compared to equity and ability to pay.

A.    **Bait and Switch Practices of Ameriquest**

126.    Ameriquest engaged in "bait and switch" tactics in its residential loan transactions. Ameriquest systematically baited customers into residential mortgage loan transactions with promises of fixed interest rates, low interest rates, low or no fees, lower monthly payments compared to then current payments, no prepayment penalties, and/or the existence or absence of particular terms.

127.    When the paperwork was presented to customers for signature at closing, the terms are contrary to the terms promised. Due to the complexity of the paperwork, hurried closings, and improper disclosure procedures, borrowers were often unaware that the terms of the mortgage documents did not match Ameriquest's prior representations.

128.    This practice went hand in hand with Ameriquest's uniform practice of failing to make statutory disclosures and misrepresenting or concealing loan terms, as well as its aggressive and unfair sales tactics. While each practice is separately unlawful and unfair, in tandem these practices allowed Ameriquest systematically to close loans that benefit Ameriquest to the detriment and misfortune of Plaintiffs and the Class.

129.    After presenting new or different loan terms, if the borrower became aware of the changes, Ameriquest engaged in scare and pressure tactics to cause customers to proceed with the transaction anyway. Ameriquest further used their borrowers' concern about loan terms in the initial transaction as an opportunity to bait the hook for a second loan, by

promising an early refinancing on better terms. The refinance loans then capitalized finance charges, provided an excuse for new and additional points and other closing costs and provided an opportunity for Ameriquest to reap other additional hidden profits at their borrowers' expense.

130.    Ameriquest misled the borrowers into signing loan documents without reading them by misrepresenting their contents and telling borrowers there is no need or time to read them and pressuring them to "just sign the papers."

**B.    Ameriquest's Failure to Provide Proper Disclosures**

131.    Ameriquest also failed totimely to deliver copies of various loan papers, including required disclosures under the Truth in Lending Act, until after the loan is consummated. This prevented consumers from understanding the loan terms, including most importantly, the true cost of the loan.

132.    When the disclosures were provided, they were often inaccurate, misleading, incomplete, or otherwise not in compliance with statutory requirements.

133.    Ameriquest had a uniform practice of removing certain documents, such as those relating to the prepayment penalty, before presenting the documents to the customer for signing. For this reason and others, customers were systematically denied any meaningful opportunity to discover that the terms on the final documents do not match the prior representations.

134.    At closing, Ameriquest also routinely presented and compelled borrowers to sign acknowledgments of various events, including acknowledgements concerning last-minute changes in loan terms that are inconsistent with previous oral representations, and disclosures that are otherwise not compliance with Ameriquest's legal obligations to borrowers.

**C.    Ameriquest's Scheme Relating to Discount Points**

135.    Up to February 3, 2003, Ameriquest charged and collected discount points without providing a discount interest rate. Because these points were calculated as a percentage of the total amount of the loan, discount points typically cost the consumer thousands or tens of thousands of dollars.

136.    On and after February 3, 2003, Ameriquest provided an unspecified rate discount whenever it charged and collected discount points. However, because Ameriquest never specifically discloses the amount of the rate discount being provided, it was impossible for its customers to determine whether the rate discount is reasonable consideration for the substantial cost of the discount points.

137.    When Ameriquest marketed and sold its loans to new customers, it never informed them that the quoted loan amount will be reduced by the substantial cost of discount points. The discount points were therefore hidden until closing.

138.    Ameriquest often encouraged its customers to refinance quickly, but failed to inform those customers that discount points in the previously loan would be capitalized upon refinancing (so that interest was due thereon) and that a new set of discount points would be charged. This hidden impact of refinancing was a substantial benefit to Ameriquest and a substantial cost to its refinance customers.

### D.    Ameriquest's Scheme Relating to Settlement Charges

139.    During the time period covered by this action, certain of the Ameriquest entities, including without limitation, Argent, made loans in the wholesale channel through mortgage brokers.

140.    Ameriquest charged excessive settlement charges that were denominated in Ameriquest record as prepaid finance charges and that were not disclosed or not disclosed adequately.

### E.    Ameriquest's Sales and Marketing Scheme

141.    Ameriquest had a business practice of using oppressive and unfair marketing techniques to prey upon homeowners nationwide.

142.    Ameriquest targeted and hired loan officers, called account executives ("AEs"), that had little to no experience in the mortgage lending industry. Ameriquest then trained and encouraged its AEs to engage in any conduct necessary to close the greatest number of loans as quickly as possible and to maximize the total loan principal.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

143.    Under Ameriquest's loan closing system, the actual terms that may ultimately have been available to a particular customer were not accessible by an AE until at or around the time of closing. AE's were thus required to make promises to customers about loan terms that had no basis other than the AE's perception of what was necessary to keep the borrower on the sales hook until the loan is closed.

144.    AEs across the country receive daily leads on new customers that were generated by software at Ameriquest's Orange, California, headquarters. These leads targeted homeowners who were carrying both a mortgage and significant credit card and/or other consumer debt; persons who had mobile home mortgages; persons with less than perfect credit; and other financially-vulnerable persons. These homeowners were solicited through repeated mailers, telephone calls, and/or personal visits by Ameriquest sales personnel, all inviting them to consolidate their debts or to obtain money for expenses, with false and misleading promises of more favorable loan terms and/or reduced monthly payments. Ameriquest profited by obtaining high fees upfront and high interest rates in the interim, and often by selling its loan portfolios to other companies.

145.    Ameriquest systematically trained its sales personnel through standardized sales presentations (videos) developed under the control of Ameriquest's corporate headquarters in Orange, California as well as by use of the movie "Boiler Room" which depicts unethical and illegal high-pressure sales practices by a securities brokerage firm. These videos demonstrate high-pressure mortgage sales, while failing to train employees on the legal requirements and regulations for mortgage lending.

146.    Ameriquest also trained its sales personnel to routinely rush borrowers through the lengthy, complex documentation of the regulated closing process so as to divert the borrowers' attention from the documented terms of the loans. Moreover, Ameriquest trained its Account Executives to overcome objections raised by borrowers at closing by such tactics as threatening delay or cancellation of the closing, asserting that rates will increase, claiming that other lenders will foreclose or repossess property, offering immediate cash pending the closing

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

of the loan, and by assuring borrowers that they can refinance with better terms after improving their credit score, without disclosing that they could be subject to the prepayment penalty, higher interest rates and other fees if they did so.

147.    At all times relevant to this action, Ameriquest's uniform and fundamental business strategy with respect to the sale of home-secured loans was to:

a.    uniformly hold out to all prospective customers, through the use of misleading promotions and material omissions regarding loan terms, that refinancing and/or consolidating their debts with Ameriquest will be beneficial and will save them money when in fact it will not;

b.    employ aggressive, misleading, and unfair high-pressure sales tactics to obfuscate loan terms both prior to closing and at closing, if and when customers question loan terms, in order to force the customers to close the loan;

c.    force borrowers into mortgage loan that include one or more of the following terms: (1) a high and/or mis-disclosed adjustable interest rate; (2) a "discount" fee that does not lower the interest rate; (3) excessive closing fees; and/or (4) a prepayment penalty provision;

d.    sell loans to these homeowners in amounts so high in relation to the value of their homes that the resulting debt-to-value ratio (coupled with prepayment penalties and other restrictions) effectively strips their homes of equity and prevents the borrowers from refinancing their loans with Ameriquest's competitors, often by inflating appraisal values or the borrowers' income or asset statements; and

e.    engage in "flipping," or aggressive solicitation of targeted borrowers, including existing Ameriquest customers, to refinance existing loans without significant benefit to the homeowner, thus generating additional debt, capitalizing previously charged points and fees, incorporating new and excessive costs and fees into the principal of the loan, and often increasing the borrower's interest rate.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

148.     Because Ameriquest profited from the origination and "flipping" of loans, and the subsequent sale of those loans to investment bankers and others as assets for mortgage-based securities, Ameriquest had little concern for the actual risk that the loans might default or with the continued profitability of the loans after origination, except to the extent that Ameriquest can induce existing borrowers to borrow more.

149.     Ameriquest unfairly and deceptively has held out its mortgage loans as sound financial transactions that will save borrowers money.  Ameriquest failed to disclose prior to closing and/or intentionally obfuscates and/or conceals before and at closing the following:

a.     required TILA disclosures clearly and conspicuously, in a form that borrowers can understand, at or before the time the loan is consummated, in order to mislead consumers as to the true terms and costs of their loan transactions;

b.     the high and/or adjustable interest rates charged on its loans, as well as the risks associated with adjustable rate mortgage ("ARM") loans;

c.     the high and deceptive "discount" fees and closing fees routinely added to the loan principal;

d.     the fact that, under 15 U.S.C. § 1635(a), 12 C.F.R. § 226.23(b)(1), borrowers have the right to rescind certain transactions up to three days following the consummation of the transaction or the delivery of the information and disclosures required by statute;

e.     the existence of a prepayment penalty, and that such prepayment penalty would make refinancing impossible and/or highly unfavorable for the borrower; and

f.     the fact that far from saving borrowers money (as Ameriquest systematically claims), the Ameriquest loans, increase the total amount of debt outstanding, exacerbate overall interest obligations, and place vulnerable borrowers at high risk of foreclosure.

150.     In addition, Ameriquest routinely failed to provide required disclosures to borrowers prior to closing — including, but not limited to, the HUD-1 statement, Notice of Right

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

to Cancel, a "good faith" Good Faith Estimate, settlement process information booklet and other disclosures required under TILA — ensuring that borrowers have no meaningful opportunity to review them or to learn the true terms and costs of their loan transactions.

    **F.**    **Ameriquest's Compensation System**

    151.    Ameriquest designed its compensation system to reward its AEs for "upselling" customers' loans, providing incentives for AEs aggressively to increase the amounts loaned to the maximum permitted by Ameriquest's underwriting goals, irrespective of the amounts requested by borrowers or supported by the actual value of the home. The effect of these "upsells" has been to "close the back door" on Ameriquest's customers by making loans that cannot be refinanced by Ameriquest's competitors.

    152.    Ameriquest's compensation scheme also rewarded AEs based on quantity of loans closed per month. The minimum monthly quotas rose consistently over time, reaching levels that are significantly higher than the number of loans closed by sales personnel at other companies. Given that Ameriquest's AEs had to reach the minimum quotas in order to be paid at any reasonable rate, and that the quotas are very high, Ameriquest's policy all but ensures that its AEs will, as trained by Ameriquest, systematically engage in unfair and deceptive tactics to meet company quotas, with company knowledge of this widespread practice.

**II.**    **AMERIQUEST'S COMMON PATTERN AND PRACTICE OF UNFAIR, UNLAWFUL, AND DECEPTIVE PRACTICES IN CONNECTION WITH MORTGAGE LOAN SERVICING**

    153.    Ameriquest, in the servicing of residential loans originated by Ameriquest or others, mishandled borrowers' mortgage payments, unlawfully demanded amounts that were not due under the threat of foreclosure, force-places insurance on properties it knew or should know to be insured, and fails to timely or properly credit payments received, resulting in late charges, delinquencies or default.

    154.    Ameriquest failed to deliver timely payoff information to subsequent lenders and improperly accounts for monies held in escrow.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

155.    Ameriquest routinely demanded prepayment penalties in amounts that exceed the amount due under their loan agreements.

156.    Ameriquest routinely and systematically treated borrowers as if they were in default on their loans even though borrowers have timely and sufficiently tendered mortgage payments or have otherwise complied with mortgage requirements.

157.    Ameriquest has also routinely engaged in improper debt collection practices.

158.    Ameriquest regularly failed to properly credit homeowners' loan payments in the manner set forth by contract and/or relevant bankruptcy laws interfering with and undermining the ability of borrowers to keep current on their payments and/or proceed with bankruptcy.

## CLASS ACTION ALLEGATIONS

159.    The Class Period is from December 14, 2001, to the present unless otherwise stated.  Excluded from all classes are individuals who have previously released claims in contract or in tort, individually or as a member of a class action (such as class members in *Ricci v Ameriquest Mortgate Co.*, Civil File No. 05-2546 (State of Minnesota, Hennepin County) and *Pierceall v. Ameriquest*, Judicial Council Coordination Proceeding No. 4162 (Superior Court of the State of California, San Mateo County)), or by accepting a benefit in the 2006 settlement between Ameriquest Mortgage Co. and various state Attorneys General ("Attorneys General Settlement").  Also excluded are the Ameriquest Entities, their parents, subsidiaries, and affiliates, officers and directors of the Ameriquest Entities or any entities in which the Ameriquest Entities have a controlling interest, and the legal representatives, successors, or assigns of such excluded persons.

## I.    TILA RESCISSION CLASS

160.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), and (b)(3) on their own behalf and on the behalf of all other members of the class described below.

161.    Plaintiffs seek certification of a nationwide class of borrowers who:

a.    presently own, or during the Class Period owned, property (including mobile homes) in the United States; and

b.    entered into a mortgage loan transactions relating to such property with the Ameriquest Entities or its predecessors at any time on or after February 8, 2003, or, for residents of Massachusetts, at any time on or after February 8, 2002, and who have requested rescission of their loans pursuant to applicable provisions of TILA or state disclosure laws.

162.    The Representative Plaintiffs of the TILA Class are referred to herein as the "TILA Plaintiffs."

163.    The members of the TILA Class are so numerous and geographically dispersed across the country that joinder of all members is impracticable. While the exact number of Class members is unknown to the Plaintiffs at this time, Plaintiffs believe that there are at least hundreds of TILA Class members. Detailed information on the Class can be ascertained through appropriate discovery and from records maintained by Ameriquest.

164.    The TILA Plaintiffs' claims are typical of the claims of the members of the TILA Class, as the TILA Plaintiffs and all other members of the TILA Class entered into transactions that were subject to the TILA-provided right to cancel and were injured based on Ameriquest's conduct.

165.    The TILA Plaintiffs will fairly and adequately represent and protect the interests of the members of the TILA Class and have retained counsel competent and experienced in class action and consumer litigation.

166.    Common questions of law and fact exist as to all members of the TILA Class and predominate over any questions affecting solely individual members of the Class. Among these common questions of law and fact common are:

a.    Whether Ameriquest is a creditor within the meaning of TILA and whether the transactions between TILA Class members and Ameriquest were "consumer credit"

transactions as defined by TILA and Regulation Z, 15 U.S.C. § 1602(h) and 12 C.F.R.

§ 226.2(a)(12) and(17).

    b.  Whether the transactions between TILA Class members and

Ameriquest were "closed end" credit transactions;

    c.  Whether Ameriquest had a common practice of failing to provide

required disclosures under TILA;

    d.  Whether Ameriquest had a common practice of providing deficient

disclosures under TILA;

    e.  Whether Ameriquest failed to honor proper rescissions as required

by 15 U.S.C. § 1635(h); and

    f.  Whether the TILA Plaintiffs and Class members are entitled to

statutory damages.

    167.  A class action is superior to other available methods for the fair and

efficient adjudication of Ameriquest's uniform unlawful practices because joinder of all

members is impracticable.  Prosecution of separate actions by individual TILA Class members

would create an inherent risk of inconsistent and varying adjudications.  There are no significant

difficulties in managing this TILA Class as a class action.

## II. THE BAIT AND SWITCH CLASS

    168.  Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P.

23(a), (b)(1), and (b)(3) on their own behalf and on the behalf of all other members of the class

described below.

    169.  Plaintiffs seek certification of a nationwide class of borrowers who:

    a.  presently own, or during the Class Period owned, property

(including mobile homes) in the United States, and

    b.  entered into a retail mortgage loan transaction during the Class

Period relating to such property with any Ameriquest Entity or its predecessors and meet one or

more of the following criteria:

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

      i.     loan records establish a final disclosed annual percentage rate that is at least 0.9% higher (as calculated pursuant to TILA) and the disclosed annual percentage rate (calculated pursuant to TILA) contained in preclosing written disclosures made to the borrower;

      ii.     loan records establish that the borrower received a loan containing a prepayment penalty, but preclosing written disclosures made to the borrower described a loan without a prepayment penalty; or

      iii.     loan records establish that the borrower received a loan containing a variable rate, but preclosing written disclosures made to the borrower described a loan containing a fixed rate.

170.    The Bait and Switch Plaintiffs' claims are typical of the claims of the members of the Bait and Switch Class, as the Bait and Switch Plaintiffs and all other members of the Bait and Switch Class were offered a different interest rate at closing than in earlier disclosures and sustained damages arising out of the same wrongful conduct by Ameriquest.

171.    The Bait and Switch Plaintiffs will fairly and adequately represent and protect the interests of the members of the Bait and Switch Class and have retained counsel competent and experienced in class action and consumer litigation.

172.    Common questions of law and fact exist as to all members of the Bait and Switch Class and predominate over any questions affecting solely individual members of the Class. Among these common questions of law and fact common are:

      a.     Whether borrowers were offered different interest rates before closing as during closing;

      b.     Whether Ameriquest intended to switched mortgage loan terms at closings;

      c.     Whether Ameriquest failed to provide Notices of Adverse Actions when it engaged in its bait-and-switch scheme;

      d.     Whether Ameriquest has violated ECOA;

e.    Whether Ameriquest has violated the FCRA;

f.    Whether Ameriquest has breached its contracts with borrowers;

g.    Whether the bait-and-switch scheme violates state laws;

h.    The proper measure of damages and other relief for the Bait and Switch Class.

173.    A class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices because joinder of all members is impracticable. Prosecution of separate actions by individual Bait and Switch Class members would create an inherent risk of inconsistent and varying adjudications. There are no significant difficulties in managing this Bait and Switch class as a class action.

## III.   <u>DISCOUNT POINTS CLASS</u>

174.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), and (b)(3) on their own behalf and on the behalf of all other members of the class described below.

175.    Plaintiffs seek certification of a nationwide class of borrowers who

a.    presently own, or during the Class Period owned, property (including mobile homes) in the United States;

b.    entered into a retail mortgage loan transaction during the Class Period relating to such property with the Ameriquest Entities; and

c.    either entered into loans;

i.    made after December 14, 2001, and before February 3, 2003, on which they had to pay discount points in any amount; or

ii.    made on or after February 3, 2003 on which they had to pay at least three discount points.

176.    The Representative Plaintiffs of the Discount Points Class are referred to herein as the "Discount Points Plaintiffs."

177. The members of the Discount Points Class are so numerous and geographically dispersed across the country that joinder of all members is impracticable. While the exact number of Class members is unknown to the Plaintiffs at this time, Plaintiffs believe that there are at least thousands of Discount Points Class members. Detailed information on the Class can be ascertained through appropriate discovery and from records maintained by Ameriquest.

178. The Discount Points Plaintiffs' claims are typical of the claims of the members of the Discount Points Class, as the Discount Points Plaintiffs and all other members of the Discount Points Class paid discount fees or charges and sustained damages arising out of the same wrongful conduct by Ameriquest.

179. The Discount Points Plaintiffs will fairly and adequately represent and protect the interests of the members of the Discount Points Class and have retained counsel competent and experienced in class action and consumer litigation.

180. Common questions of law and fact exist as to all members of the Discount Points Class and predominate over any questions affecting solely individual members of the Class. Among these common questions of law and fact common are:

    a.    Whether borrowers paid discount fees or charges;

    b.    Whether Ameriquest disclosed the loan discount associated with payment of the fee;

    c.    Whether Ameriquest had a common policy and practice of promising borrowers that they would receive consideration in exchange for the payment of these discounts fees;

    d.    Whether Ameriquest had a common practice of depriving borrowers of consideration in exchange for the payment of discount fees;

    e.    Whether Ameriquest failed to offer borrowers an alternative loan without the loan discount fees for the purpose of allowing borrowers to decide whether the loan discount was acceptable;

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

f.    Whether Ameriquest has breached contracts with borrowers by charging discount points;

g.    Whether Ameriquest has been unjustly enriched;

h.    Whether Ameriquest has violated state laws; and

i.    The proper measure of damages and other relief for the Discount Points Class.

181.    A class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices because joinder of all members is impracticable.  Prosecution of separate actions by individual Discount Points Class members would create an inherent risk of inconsistent and varying adjudications.  There are no significant difficulties in managing this Discount Points Class as a class action.

## IV.    WHOLESALE BORROWER CLASS

182.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), and (b)(3) on their own behalf and on the behalf of all other members of the class described below.

183.    Plaintiffs seek certification of a nationwide class of borrowers who:

a.    presently own , or during the Class Period owned, property (including mobile homes) in the United States;

b.    entered into a wholesale mortgage loan transaction during the Class Period relating to such property with any Ameriquest Entity or its predecessors;

c.    paid fees to a loan broker in connection with a mortgage loan; and

d.    paid an amount constituting more than 3% of their funded loan amount in settlement charges to the Ameriquest Entity or a mortgage broker.

184.    For purposed of this definition, settlement charges includes all fees paid to the Ameriquest Entity, a mortgage broker or a third party settlement service provider at or about the time of the origination of the loan and which are denominated as prepaid finance charges.

185.    The members of the wholesale borrower class are so numerous and geographically disbursed across the country that joinder of all members is impracticable. Detailed information can be ascertained from records maintained by defendants.

186.    The Plaintiffs' claims are typical of the claims of the members of the Class, as the Plaintiffs and all other members of the Class sustained damages arising out of the same wrongful conduct.

187.    The Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in class action and consumer litigation.

188.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members.  Among these common questions of law and fact common are:

> a.    Whether the Defendants had a common practice of assessing the settlement charges;

> b.    Whether the settlement charges were in violation of loan agreements and/or unjustly enriched the Defendants;

> c.    The appropriate remedies.

189.    A class action is superior to other available methods for the fair and efficient adjudication of the unlawful practices because joinder of all members is impracticable and prosecution of separate actions would create a risk of inconsistent and varying adjudications. There are no significant difficulties in managing this Class as a class action.

## V.    LOAN SERVICING CLASS

190.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(1), and (b)(3) on their own behalf and on the behalf of all other members of the class described below.

191.    Plaintiffs seek certification of a nationwide class of borrowers who

        a.      presently own or during the class period owned property (including mobile homes) in the United States;

        b.      entered into a mortgage loan transaction relating to such property that was serviced by Ameriquest Entity during the Class Period; and

        c.      paid default and delinquency fees or costs in an amount in excess of a total of $1,000.  These fees and costs include fees denominated as late, legal, phone pay NSF, bad check NSF, appraisal and inspection fees and recoverable corporate advance.

192.    The members of the Servicing Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to the Servicing Plaintiffs at this time, Plaintiffs believe that there are tens of thousands of Servicing Class members.  Detailed information on the Class can be ascertained through appropriate discovery and from records maintained by Ameriquest.

193.    The Servicing Plaintiffs' claims are typical of the claims of the members of the Servicing Class, as the Servicing Plaintiffs and all other members of the Servicing Class sustained damages arising out of the same wrongful conduct by Ameriquest.

194.    The Servicing Plaintiffs will fairly and adequately represent and protect the interests of the members of the Servicing Class and have retained counsel competent and experienced in class action and consumer litigation.

195.    A class action is superior to other available methods for the fair and efficient adjudication of Ameriquest's uniform unlawful practices because joinder of all members is impracticable.  Prosecution of separate actions by individual Servicing Class members would create an inherent risk of inconsistent and varying adjudications.  There are no significant difficulties in managing this Servicing class as a class action.

196.    Common questions of law and fact exist as to all members of the Servicing Class and predominate over any questions affecting solely individual Servicing members.  Among these common questions of law and fact common are:

a.     Whether the Ameriquest Entities have engaged in a common course of deceptive, misleading, or unfair conduct, including the acts and practices identified herein in the servicing of loans collateralized by real property and in collecting alleged debts in connection with these loans;

b.     Whether Ameriquest has engaged in a uniform practice of assessing improper late fees;

c.     Whether Ameriquest has improperly and illegally charged customers for force-placed insurance products;

d.     Whether Ameriquest engaged in unlawful collection practices and/or has unfairly initiated collections proceedings;

e.     Whether Ameriquest has systematically misapplied customer payments;

f.     Whether Ameriquest has breached contracts with customers;

g.     Whether Ameriquest has been unjustly enriched;

h.     Whether Servicing Plaintiffs and Servicing Class members are entitled to the injunctive and equitable relief requested herein; and

i.     Whether Servicing Plaintiffs and Servicing Class members have sustained damages, and the proper measure of damages.

## TOLLING OF STATUTES OF LIMITATIONS BY FRAUDULENT CONCEALMENT

197.     Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein, including but not limited to Defendants' practices of concealing that they would not, despite promises, refinance loans.  Despite exercising reasonable diligence, Plaintiffs and members of the Class could not have discovered, did not discover, and were prevented from discovering, the wrongdoing complained of herein.

198.    In the alternative, the Defendants should be estopped from relying on any statutes of limitations.  The Defendants have been under a continuing duty to disclose the true character, nature, and quality of their loan origination and servicing practices.  The Defendants owed Plaintiffs and other members of the Class an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

## CAUSES OF ACTION

### COUNT I
### (Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601)
### (By the TILA Plaintiffs on Behalf of Themselves and the TILA Class as Against the Ameriquest Entities)

199.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

200.    The Ameriquest entities are creditors within the meaning of the TILA and Regulation Z, 15 U.S.C. §1602(f) and 12 C.F.R. §226.2(a)(17).

201.    Each of the transactions between the TILA Plaintiffs and the TILA Class and the Ameriquest entities is a "consumer credit" transaction as defined in the TILA and Regulation Z. 15 U.S.C. §1602(h) and 12 C.F.R. §226.2(a)(12).

202.    Each of the transactions between the TILA Plaintiffs and the TILA Class and the Ameriquest entities is a "closed end" credit transaction, as that term is defined in 12 C.F.R. §226.2(10), and is subject to the requirements for such transactions set forth in 15 U.S.C. §1638 and 12 C.F.R. §226.17 through 226.34.

203.    Because each of the transactions between the TILA Plaintiffs and the TILA Class and the Ameriquest entities was secured by the Plaintiffs' homes, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.

204.    In connection with each of Plaintiffs' loan transactions, the Ameriquest entities failed to provide statutorily mandated material disclosures pursuant to 15 U.S.C. §§ 1635, 1638 and 12 C.F.R. §§ 226.18, 226.23.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

205.    In addition, Argent fails to provide the third parties whose loans it underwrites and fund with instructions about how to properly complete the notice of right to cancel. Argent routinely fails to instruct these flow lenders on how to complete the notice of right to cancel, as required by law. Argent's flow lenders ultimately fail to complete the loan documents as required by law.

206.    The disclosures were and are deficient for one or more of the following reasons:

a.    The Notice of Right to Cancel form not include the date the rescission period expires as required by 12 C.F.R. § 226.23(b)(1)(v); and/or

b.    The Notice of Right to Cancel form, in violation of 12 C.F.R. § 226.23(b)(2), was a general model rescission form promulgated by the Federal Reserve Board [H-8], even though the transactions required the use of form [H-9];

c.    The Notice of Right to Cancel form was contradicted by a "One Week Cancellation" form such that the actual expiration period for the right to cancel was not clearly and conspicuously disclosed; and/or

d.    The Truth-in-Lending disclosure form did not include the word "monthly" in the description of the timing of the scheduled payments in violation of 15 U.S.C. § 1638(a)(6);

e.    The disclosures were not clear and conspicuous because they were contradicted by other information provided at the time of the borrowers' loan transactions including, without limitation, information about non-refundable finance charges; and/or

f.    The disclosures were not provided until after the loan was consummated.

207.    By providing incorrect Notices of Right to Cancel, the Ameriquest entities misinformed the TILA Plaintiffs and the TILA Class about the effects of rescission and/or the deadline for exercising the right to cancel.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

208.    Failure to provide the required disclosures enlarges the rescission period up to three years from the date of the loan transaction. 15 U.S.C. § 1635(a), (f); 12 C.F.R. § 226.23(a)(3).  In Massachusetts, failure to provide the required disclosures enlarges the rescission period up to four years from the date of the loan transaction.  M.G.L. c. 140D § 10(a), (f), 209 C.M.R. § 32,23(1)(c).

209.    The TILA Rescission Plaintiffs timely and properly rescinded their loans pursuant to 15 U.S.C. § 1635(a) and Ameriquest failed to honor that rescission pursuant to 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d).

210.    The TILA Plaintiffs and the TILA Class are entitled to damages, costs and attorney's fees pursuant to 15 U.S.C. § 1640(a)(2).

## COUNT II
### (Violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(b))
### (By the Bait and Switch Plaintiffs on Behalf of Themselves and the Bait and Switch Class as Against Ameriquest)

211.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

212.    Ameriquest is a creditor within the meaning of 15 U.S.C. § 1691a(e).

213.    The Bait and Switch Plaintiffs and Class were applicants within the meaning of 15 U.S.C. § 1691a(b).

214.    Ameriquest violated 15 U.S.C. § 1691(d) as to Bait and Switch Plaintiffs and the Bait and Switch Class in that it did not provide them with the notice of adverse action as required by the provision when Ameriquest refused to grant credit to the Bait and Switch Plaintiffs and the Bait and Switch Class on the terms requested, but pursuant to its bait and switch tactics, provided substantially different terms.

215.    As a result of Ameriquest's conduct, Bait and Switch Plaintiffs and the Bait and Switch Class have suffered actual damages, and are entitled to recover such actual damages as well as punitive damages, equitable and declaratory relief, costs and attorney fees.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

## COUNT III
### (Violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(m))
### (By the Bait and Switch Plaintiffs on Behalf of Themselves and
### the Bait and Switch Class as Against Ameriquest)

216.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

217.    Ameriquest is a user of consumer reports from consumer reporting agencies, in connection with the extension of credit to consumers, for purposes of 15 U.S.C. § 1681a.

218.    Ameriquest's failure to provide credit on the terms in initially promised to the Bait and Switch Plaintiffs and the Bait and Switch Class, and to instead offer credit at less favorable more costly terms, constituted an adverse action, pursuant to 15 U.S.C. § 1681a(k).

219.    The adverse action taken by Ameriquest was based wholly or partly on information contained in a consumer report, or alternatively was based on information obtained from a person other than a consumer reporting agency, bearing upon the credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living of the Bait and Switch Plaintiffs and the Bait and Switch Class members.

220.    Ameriquest failed to provide notices of adverse action to each of the Bait and Switch Plaintiffs and the Bait and Switch Class members as required by 15 U.S.C. § 1681m(a).

221.    In the alternative, Ameriquest violated the FCRA by failing to provide adverse action notices which provided an accurate or meaningful description of the basis for such adverse taken, or which otherwise fail to comply with FCRA.

222.    Ameriquest's failure to comply with 15 U.S.C. § 1681m(a) was willful or, in the alternative, was negligent.

223.    The Bait and Switch Plaintiffs and the Bait and Switch Class members suffered damages as a result of Ameriquest's failure.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

## COUNT IV
### (Unjust Enrichment)
### (By All Representative Plaintiffs on Behalf of Themselves and
### All Classes as Against Ameriquest)

224.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

225.    By its wrongful acts and omissions, including but not limited to making and servicing predatory and unfair mortgage loans described herein, Ameriquest has been unjustly enriched at the expense of Plaintiffs and the Class, and thus Plaintiffs and the Class have been unjustly deprived.

226.    By reason of the foregoing, Plaintiffs and the members of the Class seek restitution from Ameriquest, and an order of this Court disgorging all profits, benefits, and other compensation obtained by Ameriquest from its wrongful conduct.

## COUNT V
### (Breach of Contract)
### (By the Discount Points Plaintiffs on Behalf of Themselves and
### the Discount Points Class as Against Ameriquest)

227.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

228.    Ameriquest formed contracts with prospective borrowers by charging loan discount fees in exchange for providing a discounted interest rate.

229.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

230.    Ameriquest formed contracts with prospective borrowers by charging loan discount fees in exchange for providing a discounted interest rate.  Ameriquest then failed to provide the required discount.

231.    Ameriquest also provided loan documents describing a "par" rate loan as one bearing an initial rate which is equal to an "index" rate, plus a "margin."

232.    These same documents identify the "index," most commonly, as the "average of the London Interbank Offered Rate (LIBOR) for six month dollar denominated deposits in the London market" and the "margin" as a specified number of percentage points.

233.    The Discount Points Plaintiffs and Members of the Discount Points Class received loans at interest rates which were at or above Ameriquest's "par rate," even though each loan involved substantial payments for a rate discount.

234.    By failing to provide agreed-upon discounted interest rates, Ameriquest breached the contracts, causing damages.

235.    Ameriquest's breach of contract is in violation of the common law of contract of the State of California, from where the contracts originated, and/or the contract laws in every state in which Ameriquest does business.

236.    As a result of Ameriquest's breach of contract, the Discount Points Plaintiffs and the members of the Discount Point Class have suffered and continue to suffer damages in an amount to be determined according to proof at time of trial.

237.    By failing to provide agreed-upon discounted interest rates, Ameriquest breached the contracts, causing damages.

238.    Ameriquest's breach of contract is in violation of the common law of contract of the State of California, from where the contracts originated, and/or the contract laws in every state in which Ameriquest does business.

239.    As a result of Ameriquest's breach of contract, the Discount Points Plaintiffs and the members of the Discount Points Class have suffered and continue to suffer damages in an amount to be determined according to proof at time of trial.

**COUNT VI**
**(Breach of Contract)**
**(By the Bait and Switch Plaintiffs on Behalf of Themselves and**
**the Bait and Switch Class as Against Ameriquest)**

240.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

241.    Ameriquest formed implied, oral, and/or unilateral contracts with prospective borrowers by common offering terms to prospective borrowers prior to closing.

242.    By delivering different terms at closing than the ones initially promised, Ameriquest breached the contracts, causing damage.

243.    Ameriquest's breach of contract is in violation of the common law of contract of the State of California, from where the contracts originated, and/or the contract laws in every state in which Ameriquest does business.

244.    As a result of Ameriquest's breach of contract, the Bait and Switch Plaintiffs and the members of the Bait and Switch Class have suffered and continue to suffer damages in an amount to be determined according to proof at time of trial.

## COUNT VII
### (Breach of Contract)
### (By the Servicing Plaintiffs on Behalf of Themselves and the Servicing Class as Against Ameriquest)

245.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

246.    Ameriquest serviced the Servicing Plaintiffs' loans.

247.    The Servicing Plaintiffs and the Servicing Class had loan agreements that set forth dates by which monthly principal and interest payments were due, dates providing a grace period before the end of which late fees could not be assessed, and other payment and fee terms including, without limitation, provisions regarding hazard insurance and prepayment penalties.

248.    The Servicing Plaintiffs and the Servicing Class satisfied their obligations by making timely payments of principal and interest on their loans and by properly maintaining hazard insurance on their property.

249.    By charging fees that were not authorized by the loan contracts, such as late fees on payments that were not late, insurance premiums on properties that were already insured, and prepayment penalties that were not due, and/or by failing to apply payments,

Ameriquest breached its contracts with the Servicing Plaintiffs and the Servicing Class, and prevented them from keeping current on their payments and/or (where applicable) to proceed with bankruptcy.

250.    Ameriquest's breach of contract is in violation of the common law of contract of the State of California, from where the contracts originated, and/or the contract laws in every state in which Ameriquest does business.  All conditions precedent to the filing of this action have been satisfied or waived or would be futile based on Ameriquest's pattern and practice of unlawful conduct in the servicing of mortgage loans.

251.    As a result of Ameriquest's breach of contract, the Servicing Plaintiffs and the members of the Servicing Class have suffered and continue to suffer damages in an amount to be determined according to proof at time of trial.

**COUNT VIII**
**(Breach of Contract)**
**(By the Wholesale Borrowers Plaintiffs on Behalf of Themselves and
the Wholesale Borrower Class as Against the Ameriquest Entities)**

252.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

253.    The Wholesale Borrower Plaintiffs and the Wholesale Borrower Class allege that their total prepaid finance charges were improper and not permitted by the relevant agreements between them and their loan brokers, in that they allege duplication of work and payment for work that was not performed.

254.    By assessing charges that were not authorized by the loan contracts, such as charges for work that was not done, Ameriquest breached its contracts with the Wholesale Borrower Plaintiffs and the Wholesale Borrower Class.

255.    Ameriquest's breach of contract is in violation of the common law of contract of the State of California, from where the contracts originated, and/or the contract laws in every state in which Ameriquest does business.  All conditions precedent to the filing of this

-44-

action have been satisfied or waived or would be futile based on Ameriquest's pattern and practice of unlawful conduct.

256.    As a result of Ameriquest's breach of contract, the Wholesale Borrower Plaintiffs and the members of the Wholesale Borrower Class have suffered and continue to suffer damages in an amount to be determined according to proof at time of trial.

## COUNT IX
### (Breach of the Covenant of Good Faith and Fair Dealing)
### (By All Plaintiffs with a Breach of Contract Claim as Against Ameriquest)

257.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

258.    All contracts between Plaintiffs and members of the Classes on one hand, and Ameriquest on the other, included a duty of good faith and fair dealing.  Pursuant to an implied covenant in the subject contracts, Ameriquest had a duty not to do anything which would deprive the borrowers of the benefits of those contracts, and had a duty to do everything that the contracts presupposed each of the parties would do to accomplish the purpose or purposes of the subject contracts.

259.    Ameriquest acted in breach of the implied covenant of good faith and fair dealing, and their duties thereunder.

260.    As a result of Ameriquest's wrongful conduct, the Discount Points, Bait and Switch, and Servicing Plaintiffs and members of the Discount Points, Bait and Switch, and Servicing Class and Classes have suffered and continue to suffer economic losses and other damages, all in an amount to be determined according to proof at time of trial, including attorney fees and reasonable costs.

## COUNT X
### (Declaratory and Injunctive Relief)
### (By All Representative Plaintiffs on Behalf of Themselves and
### All Class Members as Against the Defendants)

261.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

262.    On each cause of action stated above, Plaintiffs and the Class will be irreparably injured in the future by the Defendants' misconduct.

263.    Plaintiffs, on behalf of themselves and all Class members, seek a judgment declaring that the Defendants must cease the activities described herein, provide Class Members with the opportunity to rescind their loans, and provide for adequate procedures and policies for the immediate and complete refund of the improper charges and insurance premiums unlawfully assessed, as well as the proper allocation of misapplied payments.

264.    Plaintiffs and the Class members do not have a plain, adequate, speedy, or complete remedy at law to address the wrongs alleged in this Complaint, and will suffer irreparable injury as a result of the Defendants' misconduct unless injunctive and declaratory relief is granted.

265.    By reason of the foregoing, Plaintiffs and the Class members are entitled to declaratory and injunctive relief as set forth herein.

**COUNT XI**
**(Unfair, Unlawful, and Deceptive Business Acts and/or**
**Practices In Violation of California Business & Professions Code §§ 17200 *et seq*.)**
**(By All Representative Plaintiffs on Behalf of Themselves and**
**all Class Members as Against Ameriquest)**

266.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

267.    This cause of action is brought by all Plaintiffs on behalf of a nationwide Class as against the Ameriquest Entities, each of which is based in California.

268.    All of the conduct at issue in the Complaint either occurred in California by virtue of the centralized business practices of Ameriquest or was based in policies and procedures that originated from Ameriquest's home offices in California.

269.    California Business & Professions Code §§ 17200 *et seq*. prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

270.    The Ameriquest Entities engaged in unlawful, unfair or fraudulent business acts and practices in violation of California Business & Professions Code §§ 17200, *et*

*seq.*, by engaging in such unlawful conduct as: (a) engaging in aggressive "bait and switch" financing solicitation practices in which they promise certain terms and offer other, less advantageous terms at loan closings; (b) misleading consumers with loans that contain confusing interest variable interest rate structures; (c) providing loans with charges for "discount" fees or points either in exchange for rate discounts that were not provided or for rate discounts that were provided without sufficient information to allow consumers to evaluate the cost of the fees or points; (d) requiring and collecting excessive, improper, or illegal prepayment penalties, and duplicative/excess closing costs; (e) failing to provide statutorily-mandated Notice of Right to Cancel or providing borrowers with a copy of the required disclosures only after the loan documents were signed; (f) falsely promising early refinancing options or providing early refinancing on terms that stripped equity from consumers' property; (g) assessing improper or excessive fees in violation of loan contracts or applicable federal laws; (h) failing to make disclosures required under the Real Estate Settlement Procedures Act; (i) improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees; (j) misapplying or failing to apply customer payments; (k) force placing insurance on properties that already have insurance coverage; (l) violating its contractual obligations; and (m) failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed.

  271. The Ameriquest Entities' conduct is unlawful in that it is in violation of one or more of such statutes and regulations as, for example, (a) California Civil Code §2954.4 (providing that a late charge may not be imposed on any installment within ten days of its due date); (b) the Truth in Lending Act; (c) the Fair Credit Reporting Act; and (d) the Equal Credit Opportunity Act.

  272. The foregoing acts and practices are also unfair and/or fraudulent within the meaning of § 17200 in that they are likely to mislead the public as to the amounts actually owed on their loans, and in that they force customers to pay amounts they do not actually owe under threat of losing their homes.

273.    The foregoing acts and practices have caused substantial harm to the Plaintiffs, the general public, and the members of the Classes.

274.    By reason of the foregoing, the Ameriquest Entities have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to the Plaintiffs, the general public, and the members of the Classes, and/or be enjoined from continuing in such practices pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

**COUNT XII**
**(Unfair or Deceptive Acts or Practices in Violation of**
**California Civil Code §§ 1750 *et seq.*)**
**(By All Representative Plaintiffs on Behalf of Themselves and**
**All Class Members as Against Ameriquest)**

275.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

276.    This cause of action is brought by all Plaintiffs on behalf of a nationwide Class as against the Ameriquest Entities.

277.    All of the conduct at issue in the Complaint either occurred in California by virtue of the centralized business practices of Ameriquest or was based in policies and procedures that originated from Ameriquest's home offices in California.

278.    By its wrongful conduct as alleged herein, Ameriquest has created, engaged in and/or participated in unfair practices, in violation of the Consumers Legal Remedies Act, California Civil code sections 1750 *et seq.*

279.    Ameriquest has engaged in unfair or deceptive acts or practices intended to result in the sale of their goods and services in violation of California Civil Code §§1750 *et seq.*, including but not limited to:  (a) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, characteristics, status, affiliation, or connection which he or she does not have, in violation of section 1770(a)(5); and (b) that a transaction confers or invokes rights, remedies, or obligations which it does not have or involve, or which are

-48-

prohibited by law, in violation of section 1770(a)(14); and (c) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, in violation of section 1770(a)(16).

280.    Pursuant to § 1780, Plaintiffs and members of the Classes seek to enjoin Ameriquest from engaging in their unfair practices as alleged herein.

281.    Ameriquest has previously been put on notice within the meaning of Cal. Civ. Code § 1782 of its alleged violations of the CLRA through, for example, the CLRA allegations in the *Knox v. American Mortgage Co.* complaint filed on January 14, 2005. Notwithstanding this notice, Ameriquest did not remedy the alleged violations of the CLRA within 30 days after service of the *Knox* complaint, and has not remedied the alleged violation. As such, Plaintiffs and Class members are entitled to seek and recover actual damages, punitive damages and any other relief which this Court deems proper against Ameriquest.

282.    As a proximate result of Ameriquest's violations of the CLRA, Plaintiffs and the Class have suffered damages.

283.    Many Class members, as Ameriquest knows or should know, are seniors and/or persons with disabilities as those terms are defined in Civil Code § 1761(f) and (g).  Said Class members have suffered substantial economic and other damages resulting from Ameriquest's unlawful conduct, including the loss of assets essential to the health and welfare of the seniors and persons with disabilities.  The seniors and persons with disabilities are substantially more vulnerable than other members of the public to Ameriquest's unlawful conduct due to their age, poor health or infirmity, impaired understanding and/or disability. Accordingly, pursuant to Civil Code § 1780, these seniors and persons with disabilities are entitled to up to $5,000 in addition to the other damages otherwise available under California state law, including punitive damages.

284.    The actions described above constitute unlawful, unfair and/or defective acts or practices within the meaning of the Consumer Legal Remedies Act.  The Plaintiffs and the Class Members are entitled to actual damages, statutory damages, punitive damages,

restitution and disgorgement of any funds received that was a result of the acts and omissions complained of herein and injunctive relief to prevent the use or employment by Ameriquest of the practices alleged herein, along with costs, attorney's fees and any other relief which the Court deems proper.

### COUNT XIII
**(Violation of State Consumer Protection and Unfair and Deceptive Trade Practices Acts)**
**(By All Representative Plaintiffs on Behalf of Themselves and**
**All Class Members as Against Ameriquest)**

285.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs.

286.    In the alternative to a nationwide class under the California Consumer Legal Remedies Act and Section 17200 of the California Business and Professions Code, the Representative Plaintiffs assert a claim arising under each state's consumer protection act and/or unfair and deceptive trade practices act.

287.    By its wrongful conduct as alleged herein, Ameriquest has created, engaged in and/or participated in unfair practices, in violation of each state's consumer protection or deceptive trade practices statutes, and its mortgage lending acts,  including but not limited to such statutes in the states where the named plaintiffs in this action reside (such as the Connecticut Unfair Trade Practices Act, § 42-110a; the Florida Deceptive Trade Practices Act, § 501.201; the Florida Mortgage Lending Act, § 494.0025; the Georgia Fair Lending Act,), Ga. Code Ann. § 7-6A-1 *et seq.*; the Maryland Consumer Protection Act, § 13-101; the Massachusetts General Law, chap. 93.A; the Minnesota Deceptive Trade Practices Act, Minn. Stat. §§ 58.13 and 325D, F; the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1; the New York General Business Law, § 349; the Ohio Consumer Sales Practices Act, § 1345.01; and the Pennsylvania Consumer Protection Law, 73 P.S. § 201-1).

288.    Ameriquest committed the actions described herein knowingly.

289.    Ameriquest's practices caused damage.

290.      Plaintiffs and Class Members are entitled to, as applicable, actual damages, statutory damages, punitive damages, rescission, restitution and disgorgement of any funds received that was a result of the acts and omissions complained of herein and injunctive relief to prevent the use or employment by Ameriquest of the practices alleged herein, along with costs, attorney's fees and any other relief which the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the Classes and the Classes, request judgment and relief as follows, against all Defendants jointly and severally according to proof:

a.      Certification of the case as a class action on behalf of the proposed Classes and designation of Plaintiffs as representatives of the Classes and their counsel of record as Class Counsel;

b.      Restitution, reformation of contract and disgorgement according to proof;

c.      Rescission and/or an opportunity to rescind;

d.      Declaratory and injunctive relief against Ameriquest to prevent future wrongful conduct;

e.      Actual, compensatory, statutory, treble, exemplary and/or punitive damages according to proof;

f.      Prejudgment interest at the maximum legal rate;

g.      Costs of the proceedings herein;

h.      Reasonable attorneys' fees;

i.      An accounting and for judgment on that accounting;

j.      The imposition of a constructive trust on all funds obtained by each and every defendant as a result of the improper conduct as alleged in this Class Action Complaint, and;

k.      All such other and further relief as the Court deems just and proper.

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

## JURY TRIAL DEMANDED

Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs demand a trial by jury for all claims so triable.

Respectfully submitted,

Dated:  December 4, 2009

By:  _/s/ Kelly M. Dermody_
      Kelly M. Dermody

Kelly M. Dermody (CA Bar No. 171716)
LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Rachel Geman (NY Bar No. RG 0998)
LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

By:  _/s/ Jill H. Bowman_
    Jill H. Bowman

Jill H. Bowman
Terry A. Smiljanich
JAMES, HOYER, NEWCOMER &
    SMILJANICH, P.A.
One Urban Center, Suite 550
4830 West Kennedy Boulevard
Tampa, FL  33609
Telephone: (813) 286-4100
Facsimile:  (813) 286-4174

By:  _/s/ Gary Klein_
    Gary Klein

Gary Klein
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA  02111-2810
Telephone:  (617) 357-5500 ext. 15
Facsimile:  (617) 357-5030

_Plaintiffs' Co-Lead Counsel_

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

By:    /s/ Marvin A. Miller
       Marvin A. Miller

Marvin A. Miller
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: (312) 332-2400
Facsimile: (312) 676-2676

*Plaintiffs' Liaison Counsel*

Samuel H. Rudman (SR-7957)
Evan J. Kaufman (EJK-8042)
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173

Michael D. Donovan
DONOVAN SEARLES LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile: (215) 732-8060

William H. Crowder (20102)
CROWDER TESKE, PLLP
222 South Ninth Street, Suite 3210
Minneapolis, MN 55402
Telephone: (612) 746-1558
Facsimile: (651) 846-5339

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

*Executive Committee*

For the Plaintiffs in

*Barber v. Ameriquest Capital Corp.*

W. Roderick Bowdoin  (FBN 172237)
DARBY PEELE BOWDOIN & PAYNE
P.O. Drawer 1707
Lake City, FL  32056
Telephone:  (386) 752-4120
Facsimile:  (386) 755-4569

Douglas Bowdoin  (FBN 310360)
DOUGLAS BOWDOIN, P.A.
P.O. Box 2254
Orlando, FL  32802-2254
Telephone:  (407) 422-0025
Facsimile:  (407) 843-2448

J. Craig Bourne  (FBN 999466)
1520 East Livingston Street
Orlando, FL  32801
Telephone:  (407) 894-6750
Facsimile:  (407) 894-4735

Elizabeth J. Cabraser
Kelly M. Dermody
Rachel Geman  (RG 0998)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

and

250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Laurence Tien
BAILEY, PERRIN & BAILEY
440 Louisiana, Suite 2100
Houston, TX 77002
Telephone:  (713) 425-7240
Facsimile:  (713) 425-7101

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

| | |
|---|---|
| For the Plaintiffs in<br><br>*Becker v. J.M. Closing Services, Inc., et al.* | Richard S. Gordon<br>Martin E. Wolf<br>QUINN, GORDON & WOLF, CHTD.<br>102 W. Pennsylvania Avenue, Suite 402<br>Towson, MD 21204<br>Telephone: (410) 825-2300<br><br>Nevett Steele, Jr.<br>Phillip Robinson<br>CIVIL JUSTICE, INC.<br>520 West Fayette Street<br>Baltimore, MD 21201<br>Telephone: (415) 706-0174 |
| For the Plaintiffs in<br><br>*Brown v. Ameriquest Capital Corp.* | Jill H. Bowman<br>Terry A. Smiljanich<br>JAMES, HOYER, NEWCOMER &<br>SMILJANICH, P.A.<br>4830 W. Kennedy Blvd.<br>Urban Center One, Suite 550<br>Tampa, FL 33609<br>Telephone: (813) 286-4100<br>Facsimile: (813) 286-4174<br><br>Jonathan A. Boynton<br>KIRBY NOONAN LANCE & HOGE, LLP<br>One America Plaza<br>600 W. Broadway, Suite 1100<br>San Diego, CA 92101-3387<br>Telephone: (619) 231-8666<br>Facsimile: 619/231-9593 |

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

For the Plaintiffs in

*Campbell v. Ameriquest Mortgage Co.*

Ralph Scoccimaro  (GBN 631525)
Jimmie H. Brown  (GBN 088134)
BROWN & SCOCCIMARO, P.C.
P.O. Box 1646
Albany, GA  31702
Telephone:  (229) 432-9310
Facsimile:  (229) 436-6302

Bryan A. Vroon  (GBN 729086)
John W. Crongeyer  (GBN 197267)
VROON & CRONGEYER, LLP
1718 Peachtree Street, Suite 1088
Atlanta, GA  30309
Telephone:  (404) 607-6710
Facsimile:  (404) 607-6711

For the Plaintiffs in

*Capasso v. Ameriquest Mortgage Co.*

Samuel H. Rudman  (SR-7957)
Evan J. Kaufman  (EJK-8042)
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
Facsimile:  (631) 367-1173

John T. Whipple
Sean Mack (SM 2016)
PASHMAN STEIN
Court Plaza South
21 Main Street
Hackensack, NY  07601-7054
Telephone:  (201) 488-8200
Facsimile:  (201) 488-5556

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

For the Plaintiffs in

*Carlson v. Ameriquest Mortgage Co.*

William H. Crowder  (20102)
Susan Ford Bedor  (154702)
Gregory L. Paulson  (34517)
CROWDER, BEDOR & PAULSON, LLP
555 West Seventh Street, Suite 201
St. Paul, MN  55201
Telephone:  (651) 225-8330
Facsimile:  (651) 204-2134


Richard J. Fuller  (32669)
1700 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
Telephone: (612) 339-4295 /
          (612) 341-1209
Facsimile:  (612) 339-3161

For the Plaintiffs in

*D'Ambrogi v. Ameriquest Mortgage Co.*

Stephen G. Burns
Andrew S. Kasmen
BURNS & KASMEN
The Pavilion, Suite A-51
261 Old York Road
Jenkintown, PA  19046
Telephone:  (215) 517-5800


David S. Markun  (Of Counsel)
MARKUN, ZUSMAN & COMPTON LLP
17383 West Sunset Blvd., Suite A380
Pacific Palisades, CA  90272
Telephone:  (310) 454-5900


Edward S. Zusman
Kevin K. Eng
MARKUN, ZUSMAN & COMPTON LLP
465 California Street, 5th Floor
San Francisco, CA  94104
Telephone:  (415) 438-4515

For the Plaintiffs in

*Doherty v. Town & Country Credit Corp.*

Richard J. Fuller  (32669)
1700 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
Telephone: (612) 339-4295
          (612) 341-1209
Facsimile:  (612) 339-3161

For the Plaintiffs in

*Harless v. Ameriquest Mortgage Co.*

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

Daniel Harris
Anthony Valach
THE LAW OFFICES OF DANIEL
HARRIS
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 960-1802

For the Plaintiffs in

*Jewell v. Ameriquest Mortgage Co.*

Daniel Harris
Anthony Valach
THE LAW OFFICES OF DANIEL HARRIS
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 960-1802

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC.
120 S. La Salle Street, 18th Floor
Chicago, IL 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

For the Plaintiffs in

*Juillerat v. Ameriquest Mortgage Co.*

Michael D. Donovan
DONOVAN SEARLES LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone:  (215) 732-6067
Facsimile:  (215) 732-8060

Matthew J. Zevin  (SBN 170736)
STANLEY, MANDEL & IOLA, L.L.P.
550 West "C" Street, Suite 1600
San Diego, CA  92101
Telephone:  (619) 235-5306
Facsimile:  (815) 377-8419

Marc R. Stanley
Roger L. Mandel
Martin Woodward
STANLEY, MANDEL & IOLA, L.L.P.
3100 Monticello Avenue, Suite 750
Dallas, TX  75205
Telephone:  (214) 443-4300
Facsimile:  (214) 443-0358

Andrew S. Kierstead
LAW OFFICE OF ANDREW S. KIERSTEAD
1001 S.W. Fifth Avenue, Suite 1100
Portland, OR  97204
Telephone:  (508) 224-6246
Facsimile:  (508) 224-4356

For the Plaintiffs in

*Kahrer v. Ameriquest Mortgage Co.*

Gary F. Lynch  (PA ID No. 56887)
R. Bruce Carlson  (PA ID No. 56617)
CARLSON LYNCH LTD
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA  16107
Telephone:  (724) 656-1555

A. Hoyt Rowell, III
Daniel O. Myers
RICHARDSON PATRICK WESTBROOK
& BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC  29464

For the Plaintiffs in

*Knox v. Ameriquest Mortgage Co.*

Emmett C. Stanton  (CSB No. 83930)
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  (650) 988-8500
Facsimile:  (650) 938-5200

Bryan A. Kohm  (CSB No. 233276)
FENWICK & WEST LLP
275 Battery Street, 16th Floor
San Francisco, CA  94111
Telephone:  (415) 875-2300
Facsimile:  (415) 281-1350

Shirley Hochhausen  (CSB No. 145619)
COMMUNITY LEGAL SERVICES IN
EAST PALO ALTO
2117-B University Avenue
East Palo Alto, CA  94303
Telephone:  (650) 326-6440
Facsimile:  (650) 326-9722

For the Plaintiffs in

*Madrazo v. Ameriquest Mortgage Co.*

Samuel H. Rudman  (SR-7957)
Evan J. Kaufman  (EJK-8042)
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
Facsimile:  (631) 367-1173

For the Plaintiffs in

*Montanez v. Ameriquest Mortgage Co.*

Samuel H. Rudman  (SR-7957)
Evan J. Kaufman  (EJK-8042)
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
Facsimile:  (631) 367-1173

Thomas G. Shapiro  (BBO #454680)
Theodore M. Hess-Mahan  (BBO #557109)
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA  02109
Telephone:  (617) 439-3939
Facsimile:  (617) 439-0134

For the Plaintiffs in

*Murphy v. Ameriquest Mortgage Co.*

Gary Klein  (BBO #560769)
Shennan Kavanagh  (BBO #655174)
RODDY KLEIN & RYAN
727 Atlantic Avenue, 2nd Floor
Boston, MA  02111-2810
Telephone:  (617) 357-5500 ext. 15
Facsimile:  (617) 357-5030

For the Plaintiffs in

*Saunders v. Ameriquest Mortgage Co.*

George L. Forbes  (0010716)
614 W. Superior Avenue, Suite 700
Cleveland, OH  44113-1318
Telephone:  (216) 696-7170
Facsimile:  (216) 696-8076

Gary Cook  (0021240)
A.R. Abdoulkarim  (0022173)
27801 Euclid Avenue, Suite 640
Euclid, OH  44132
Telephone:  (216) 261-8839
Facsimile:  (216) 261-8840

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

For the Plaintiffs in

*Ungar v. Ameriquest Mortgage Co.*

Samuel H. Rudman  (SR-7957)
Evan J. Kaufman  (EJK-8042)
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
Facsimile:  (631) 367-1173

David J. George  (FBN 0898570)
Robert J. Robbins  (FBN 0572233)
Stuart A. Davidson  (FBN 0084824)
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432
Telephone:  (561) 750-3000
Facsimile:  (561) 750-3364

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

For the Plaintiffs in

*Cheryl Williams v. Ameriquest*
*Mortgage Co.*

Elizabeth J. Cabraser
Kelly M. Dermody
Rachel Geman  (RG 0998)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

and

250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Gary Klein
Shennan Kavanagh
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA  02111-2810
Telephone:  (617) 357-5500 ext. 15
Facsimile:   (617) 357-5030

Laurence Tien
BAILEY, PERRIN & BAILEY
440 Louisiana, Suite 2100
Houston, TX  77002
Telephone:  (713) 425-7240
Facsimile:   (713) 425-7101

For the Plaintiffs in

*Latonya Williams v. Ameriquest Mortgage Co.*

Gary Klein  (BBO #560769)
RODDY KLEIN & RYAN
727 Atlantic Avenue, 2nd Floor
Boston, MA  02111-2810
Telephone:  (617) 357-5500 ext. 15
Facsimile:  (617) 357-5030

Theresa I. Wigginton  (FBN 070490)
915 Oakfield Drive, Suite F
Brandon, FL  33511
Telephone:  (813) 653-2992
Facsimile:  (813) 655-7082

For the Plaintiffs in

*Boudin v. Residential Essentials LLC,
D/B/A ATM Corp. of America and
Ameriquest Mortgage Co.*

EARL P. UNDERWOOD, JR. (UNDEE6591)
Law Offices of Earl P. Underwood, Jr.
Post Office Box 969
Fairhope, AL  36533
Telephone:  (251) 990-5558
Facsimile:  (251) 990-0626

For the Plaintiffs in

*Hines, et al. v. Ameriquest Mortgage Co.*

Bryan A. Vroon (Georgia SBN 729086)
bvroon@vclawfirm.com
John W. Crongeyer (Georgia SBN 197267)
jcrongeyer@vclawfirm.com
VROON & CRONGEYER, LLP
1230 Peachtree Street, Suite 2450
Atlanta, GA  30309
Telephone:  (404) 607-6710
Facsimile:  (404) 647-b711

Ralph Scoccimaro (Georgia SBN 631525)
Jimmie Brown (Georgia SBN 088134)
BROWN & SCOCCIMARO, P.C .
P.O. Box 5513
Rome, GA  30162-5513
Telephone:  (706) 291-8853
Facsimile:  (706) 234-3574

Robert M. Brinson (GA SBN 082900)
bbrinson brinson-askew.com
J. Anderson Davis (GA SBN 211077)
adavis@brinson-askew.com
A. Franklin Beacham III (GA SBN 043743)
fbeacham@brinson-askew.com
BRINSON ASKEW, BERRY, SEIGLER,
RICHARDSON & DAVIS, LLP
P.O. Box 1646
Albany, GA  31702
Telephone:  (229} 432-9310
Facsimile:  (229) 436-6302

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

For the Plaintiffs in

*Sanchez v. Argent Mortgage Co.*

Andrew S. Friedman (seeking Pro Hac Vice)
Wendy J. Harrison (CA SBN 151090)
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2901 North Central Avenue, Suite 1000
Phoenix, AZ 85012
Telephone: (602) 274-1100

Mark A. Chavez (CA SBN 90858)
CHAVEZ & GERTLER, L.L.P.
42 Miller Avenue
Mill Valley, CA 94941
Telephone: (415) 381-5588

John Stoia (CA SBN 141757)
Ted Pintar (CA SBN 131372)
COUGHLIN, STOIA, GELLER, RUDMAN
& ROBINS, LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058

For the Plaintiffs in

*Stadaker, et al. v. Ameriquest Mortgage Co.*

Jill H. Bowman
Terry A. Smiljanich
JAMES, HOYER, NEWCOMER &
SMILJANICH, P.A.
One Urban Centre, Suite 550
4830 West Kennedy Boulevard
Tampa, FL 33609-2589
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

B. J. Wade (#5182)
bwade@gewwlaw.com
Lewis W. Lyons (#24577)
llyons@gewwlaw.com
ewallis@gewwlaw.com
Edwin E. Wallis, III (#23950)
GLASSMAN, EDWARDS, WADE &
WYATT, P.C.
26 North Second Street
Memphis, TN 38103
Telephone: (901) 527-4673
Facsimile: (901) 521-0940

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

For the Plaintiffs in

*Valdes v. Ameriquest Mortgage Co.*

Christopher P. Seefer (201197)
D. Cameron Baker (1544320)
Jacqueline E. Mottek (124448)
S. Ashar Ahmed (256711)
COUGLIN STOIA GELLER RUDMAN &
ROBBINS LLP
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
    -and-
Timothy G. Blood (149343)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
    -and-
Samuel H. Rudman
Evan J. Kaufman
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173

MDL NO. 1715
BORROWERS 1ST AMENDED & CONSOLIDATED
CLASS ACTION COMPLAINT

For the Plaintiffs in

*Jones v. Ameriquest Mortgage Co.*

John W. Sharbrough, III
THE SHARBROUGH LAW FIRM
P.O. Box 966
Mobile, AL  36602-0996
Telephone:  (251) 432-1413
Facsimile:  (251) 432-5297
-and-
Arthur P. Clarke
aclarke3@bellsouth.net
Attorney at Law
P.O. Box 1666
Mobile, AL  36633-1666
-and-
Richard H. Gill
George W. Walker, III
COPELAND, FRANCO, SCREWS
& GILL, P.A.
P.O. Box 347
Montgomery, AL  36101-0347
Telephone:  (334) 834-1180
Facsimile:  (334) 834-3172
-and-
C. Knox McLaney, III
MCLANEY & DEBRAY, PC
P.O. Box 4276
Montgomery, AL  36101-4276
Telephone:  (334) 265-1282
Facsimile:  (334) 265-2319

For the Plaintiffs in

*Russell v. Ameriquest Mortgage Co.*

Robert E. Stochel
HOFFMAN & STOCHEL
1 Professional Center, Suite 306
Crown Point, IN  46307
Telephone:  (219) 662-0165
Facsimile:  (219) 662-2151
-and-
Glenn S. Vician
BOWMAN HEINTZ BOSCIA & VICIAN
8605 Broadway
Merrillville, IN  46410
Telephone:  (219) 769-6671
Facsimile:  (219) 738-3044