UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) | MDL No. 1715 Lead Case No. 05-7097 |
| AMERIQUEST MORTGAGE CO., a Delaware Corporation; TOWN & COUNTRY CREDIT CORPORATION, a Delaware corporation; and ARGENT MORTGAGE COMPANY LLC, a Delaware limited liability company, | ) ) ) ) ) ) ) ) | |
|       **Defendants/Third-Party Plaintiffs,** | ) ) ) | Centralized before the Honorable Marvin E. Aspen |
| v. | ) ) | |
| NORTHWEST TITLE AND ESCROW CORPORATION, a Minnesota corporation; et al., | ) ) ) ) | |
|       **Third-Party Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

      Presently before us is Third-Party Defendants' Motion to Dismiss the Fifth Amended Consolidated Third-Party Complaint (Dkt. No. 2978), filed on July 31, 2009. As with earlier iterations of the Fifth Amended Consolidated Third-Party Complaint ("Complaint"), Ameriquest Mortgage Co. ("AMC"), Town & Country Credit Corporation ("T&C") and Argent Mortgage Company LLC ("Argent") (collectively, "Ameriquest") contend that Third-Party Defendants breached their contracts with Ameriquest and engaged in negligent conduct. Ameriquest claims that Third-Party Defendants—a group consisting of closing agents, title companies, title

underwriters and mortgage brokers—are wholly responsible for any violations of the Truth In Lending Act ("TILA"), as asserted against Ameriquest by the individual borrower plaintiffs identified in Exhibits A and B of the Complaint. Ameriquest primarily seeks monetary damages as a remedy for Third-Party Defendants' breaches, negligent conduct and negligent misrepresentations. For the reasons set forth below, we grant the motion in part and deny it in part.

**BACKGROUND**

According to the Complaint, Ameriquest and each of the Title Defendants[1] (Closing Agents, Title Companies and Title Underwriters) "entered into an agreement wherein the Title Defendants agreed to close . . . loans in exchange for consideration to be paid from the loan proceeds." (Compl. ¶ 10.) These agreements "took various forms including . . . Escrow Lending Instructions, Closing Agent Agreements and Closing Instructions." (*Id.*) The Title Defendants also issued Closing Protection Letters on Title Underwriter letterhead, "whereby the Title Underwriters agreed to reimburse the lenders for actual loss incurred by the lenders in connection with the closings" conducted by the Closing Agents or Title Companies, including any failures to comply with closing instructions or any acts of fraud or dishonesty perpetrated by the Closing Agents or Title Companies. (*Id.* ¶¶ 4, 11.) In executing these agreements, the Title Defendants "warranted, among other things, that they would comply with Ameriquest's . . .

---

[1] In addition to the claims against the Title Defendants, Argent asserts claims for breach of contract, negligence and negligent misrepresentation against the Broker Defendants. (Compl. ¶¶ 19–23, 51–56, 66–72, 81–88.) Although these claims are somewhat different given the nature of the relationships between Argent and Third-Party Defendants, the allegations parallel those against the Title Defendants. (*Id.*) Like the parties, we decline to discuss the Broker Defendant claims separately. Accordingly, although we explicitly address only the Title Defendant claims, our holding applies to both groups.

instructions," including instructions to properly complete borrowers' Notice of Right to Cancel forms ("NORTC"), to distribute a sufficient number of copies thereof, and to have each borrower sign TILA disclosures. (*Id.* ¶ 14; *see id.* ¶ 26.) Ameriquest alleges that, if the plaintiffs' claims are successful, the Title Defendants breached their contracts.

Ameriquest further alleges that, in addition to their contractual obligations, Title Defendants had independent duties to act reasonably and "in accordance with the standards of care generally applicable to professionals rendering services of those types." (*Id.* ¶ 16.) More specifically, Ameriquest claims that Title Defendants had general duties to, *inter alia*, (1) supervise all aspects of the escrow, title and closing processes, including execution and delivery of necessary closing documents; (2) communicate and disclose "all facts that might materially affect Ameriquest's . . . interests in the transactions"; (3) inform Ameriquest "whether the transaction was in compliance with all written and oral instructions" and certify to the proper execution and delivery of closing documents; and (4) "exercise care in procuring and providing material information and documents," especially where Ameriquest intended to rely on such information. (*Id.* ¶ 17.) Ameriquest alleges that, to the extent that plaintiffs' claims are proven true, the Title Defendants breached their duties "by failing to adequately supervise the loan closing process," and failing to disclose information to Ameriquest. (*Id.* ¶¶ 32–34.) As a result, by their negligence the Title Defendants induced Ameriquest to fund loans it otherwise would not have funded. (*Id.* ¶ 35.)

In addition to the contract and negligence claims, Ameriquest brings a cause of action for negligent misrepresentation. Ameriquest alleges that the Title Defendants made false representations of fact, by reporting that they had properly prepared, executed and delivered

closing documents, including NORTCs, and otherwise complied with Ameriquest's closing instructions. (*Id.* ¶ 39.) Title Defendants also concealed material facts from Ameriquest by, for example, failing to report that NORTCs had not been properly prepared, executed and delivered. (*Id.* ¶ 40.) Ameriquest relied on these misrepresentations and consequently funded loans that it otherwise would not have funded. (*Id.* ¶ 44.)

In response to the Complaint, Third-Party Defendants filed the present motion to dismiss. Third-Party Defendants contend that Ameriquest failed to adequately plead the breach of contract claims in light of the Supreme Court's decision in *Ashcroft v. Iqbal*. 129 S. Ct. 1937 (2009). (Mem. at 4–6; Reply at 2–4.) They take particular issue with the allegations against recently-added Title Underwriters. (Mem. at 6–8; Reply at 4–6.) They further contend that the negligence claim must be dismissed, for a second time,[2] because Ameriquest has not identified any extracontractual duty owed by Third-Party Defendants and, moreover, that all tort claims are barred by the economic loss doctrine as interpreted under Illinois law. (Mem. at 8–13; Reply at 6–15.) We address each argument in turn below.

## STANDARD OF REVIEW

A motion to dismiss is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, a court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[2] On October 14, 2008, we granted in part Third-Party Defendants' earlier Rule 12(b)(6) motion and dismissed Ameriquest's negligence claims because they had failed to allege an extracontractual duty. *In re Ameriquest Mortgage Co. Lending Practices Litig.*, 589 F. Supp. 2d 987, 990–91 (N.D. Ill. Oct. 14, 2008) [hereinafter *Ameriquest I*].

570, 127 S. Ct. 1955, 1974 (2007); *see Iqbal*, 129 S. Ct. at 1949–50 (extending *Twombly* from antitrust to litigation generally and stating that a court's determination "whether a complaint states a plausible claim for relief will . . . be a context-specific task")*; Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776–77 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although a sufficient complaint thus need not give "detailed factual allegations," it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65; *see Iqbal*, 127 S. Ct. at 1949 (similarly noting that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *Killingsworth*, 507 F.3d at 618–19. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quotation omitted); *see also* Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 127 S. Ct. at 1949–50; *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602–03 (7th Cir. 2009); *Brooks*, 578 F.3d at 581; *Thompson v. Ill. Dep't. of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

## ANALYSIS

### A. Contract Claims

Third-Party Defendants contend that the First, Fourth and Fifth causes of action should be dismissed because Ameriquest has not met the requirements of Rule 8 and *Iqbal*, particularly

with respect to the Title Underwriters. (Mem. at 5–6; Reply at 1–6.) We agree with Ameriquest, however, that *Iqbal*'s extension of *Twombly* does not warrant dismissal.

Although Third-Party Defendants insist that Ameriquest's allegations lack factual specificity, (Mem. at 5–6), neither Rule 8, nor *Iqbal*, requires such particularity for a breach of contract claim. *See Iqbal*, 129 S. Ct. at 1949 (holding that "the pleading standard Rule 8 announces does not require detailed factual allegations," although "it demands more than unadorned . . . accusation"); *Brooks*, 578 F.3d at 581 (stating that *Iqbal* applied *Twombly*'s "plausibility requirement across the board" and "admonish[ed] plaintiffs who merely parrot the . . . language of the claims they are pleading"); *see also Cooney v. Rossiter*, 58 F.3d 967, 971 (7th Cir. 2009) (interpreting *Iqbal* and explaining that whether allegations are plausible depends on the type of claim brought, which might "raise the bar" in a complex, conspiracy or other special circumstance). Indeed, the Seventh Circuit recently reiterated that "[o]ur system operates on a notice pleading standard; *Twombly* and its progeny do not change this fact." *Bissessur*, 581 F.3d at 603. As set forth in *Twombly*, of course, plaintiffs cannot simply plead conclusions—"legal conclusions . . . must be supported by factual allegations," which in turn must "give rise to an entitlement to relief." *Iqbal*, 127 S. Ct. at 1949–50; *see Twombly*, 550 U.S. 544 at 555–557, 127 S. Ct. 1955, 1964–66; *Bissessur*, 581 F.3d at 602–03; *Brooks*, 578 F.3d at 581. And although Third-Party Defendants contend that Ameriquest has pled mere conclusions, a fair reading of the Complaint shows otherwise.

As with previous versions of the Complaint—including the Second Amended Third-Party Complaint ("SATPC"), which we held to be sufficient—Ameriquest attached two exhibits that identify critical information, including: (1) the names of the relevant borrower plaintiffs who

sued Ameriquest; (2) the case information for those underlying suits; (3) the Title Defendant(s) involved in the disputed transactions; (4) the relevant Title Underwriter; and (5) the approximate date of the agreement(s) between the Third-Party Defendants and AMC, T&C or Argent. (Compl., Exs. A and B.) Thus, for example, Exhibit A states that borrowers Glenn and Laverne Adams sued Ameriquest for claims arising from a transaction handled by Title Defendant Northwest Title and Escrow Corporation and Title Underwriter American Pioneer Insurance Title, pursuant to their February 9, 2004 agreement or agreements with AMC and/or Argent.[3] (*Id.*, Ex. A at 1.)

As to the substance of these contracts, the Complaint states that the Title Defendants, which by definition also includes the Title Underwriters, "agreed to close . . . loans in exchange for consideration to be paid from the loans." (Compl. ¶ 10.) They agreed to provide accurate NORTCs and copies thereof to borrowers at their closings, as well as other necessary information. (*Id.* ¶¶ 26, 48.) To the extent that they failed to do so, they breached the valid and enforceable agreements to Ameriquest's detriment.[4] (*Id.* ¶¶ 13, 25, 27–28, 47, 49–50.)

---

[3] We reasonably infer from the Complaint and the exhibits that, where there is more than one agreement with Third-Party Defendants for each mortgage transaction, the approximate date of the agreements—including Escrow Lending Instructions, Closing Agent Agreements, Closing Instructions, Closing Protection Letters and/or Mortgage Broker Agreements—is the same.

[4] Ameriquest alleges that the Title Underwriters are further bound by the Closing Protection Letters, in which they "agreed to reimburse the lenders for actual loss incurred by the lenders in connection with the closings" conducted by the Closing Agents or Title Companies, including any failures to comply with closing instructions or any acts of fraud or dishonesty perpetrated by the Closing Agents or Title Companies. (*Id.* ¶¶ 4, 11.) Thus, according to Ameriquest, even if the Title Underwriters did not personally close a loan, they may be liable for misconduct related to the closing. (Opp'n at 6.)

Ameriquest further claims that, per its instructions, Closing Protection Letters were issued for each pertinent loan. (*Id.* ¶ 15.) Third-Party Defendants deny this allegation and further argue that Ameriquest is "merely assuming" the existence of these letters, which they

For the reasons discussed in *Ameriquest I*, these allegations are sufficient to state a claim for breach of contract under Illinois law. 589 F. Supp. 2d at 990–91 (reviewing elements of a contract action and denying motion to dismiss contract claims). The Complaint puts Third-Party Defendants on notice of the approximate date of the agreements and the parties thereto, the underlying mortgages and related lawsuits, other defendants involved, the type of consideration offered by Ameriquest, the relevant promises made to Ameriquest, the nature of the alleged breaches and the resulting injuries to Ameriquest. *Cf. Bissessur*, 581 F.3d at 603 (affirming dismissal of plaintiff's implied breach of contract claim where he alleged only conclusions). These allegations thus constitute more than "threadbare recitals of a cause of action," *Iqbal*, 127 S. Ct. at 1949, and—contrary to Third-Party Defendants' implication—we would ask no more of a plaintiff pursuing a case against one defendant as we ask of Ameriquest here. The Complaint describes contractual obligations and violations that rise above the speculative level and, as we held before, enables Third-Party Defendants to conduct a meaningful investigation into these claims and possible defenses. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (requiring only that

---

apparently do not possess in all instances. (Reply at 5; *see also* Compl. ¶ 15 ("On information and belief, some Title Defendants deny that a Closing Protection [L]etter was issued and deny that any contractual obligations exist.").) Ameriquest may plead such an allegation on information and belief, however, particularly where Third-Party Defendants may know best whether the letters exist. *See Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005); *Teksystems, Inc. v. Modis, Inc.*, No. 08 C 5476, 2008 WL 5155720, at *3–4 (N.D. Ill. Dec. 5, 2008) (drawing inference that contract existed where plaintiff alleged that defendant signed an employment agreement when hired, but could not locate a copy thereof); *see also* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004) ("Pleading on information and belief is an . . . essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject.") The factual dispute as to whether Third-Party Defendants executed these letters in accordance with Ameriquest's instruction is for another day.

the complaint set out enough detail to give defendant "fair notice" of a plausible claim).

Moreover, despite Third-Party Defendants' protestations, Ameriquest is not required to attach a copy of any agreement to the Complaint, nor must they directly quote therefrom. *See Memorylink Corp. v. Motorola, Inc.*, No. 08 C 3301, 2009 WL 464338, at *12 (N.D. Ill. Feb. 23, 2009) ("[A] party in federal court is not required to attach the operative contract to the complaint."); *Arnold v. Janssen Pharm.*, *Inc.*, 215 F. Supp. 2d 951, 962 (N.D. Ill. 2002) ("[F]ederal courts, unlike Illinois state courts, do not require that critical documents be attached to the complaint."). Given the nature of this case, we ordered Ameriquest to avoid such an overwhelming, individualized approach, so it is no surprise that they elected to proceed with two summary charts rather than attach voluminous exhibits.

Nor does this approach run afoul of Rule 8. As we stated before, "Ameriquest has identified at least one substantive term, allegedly common to all contracts, supporting its breach of contract claims." *Ameriquest I*, 589 F. Supp. 2d at 991. Third-Party Defendants may decry our willingness to accept Ameriquest's "assertion that every one of the hundreds of contracts that allegedly existed between the parties made all of the Third-Party Defendants liable." (Reply at 3.) But that is precisely our role at the 12(b)(6) stage. Ameriquest has not alleged a legal conclusion; they have alleged an entirely plausible fact—namely, that each of the agreements described in Exhibits A and B expressly required Third-Party Defendants to deliver NORTCs and other information on behalf of Ameriquest at loan closings—and we must accept that fact as true. Ameriquest claims that Third-Party Defendants failed to comply with this common contractual duty, giving rise to the underlying borrower lawsuits, and these allegations allow us "to draw the reasonable inference that [Third-Party Defendants are] liable for the misconduct

alleged." *Iqbal*, 129 S. Ct. at 1949. We thus deny the motion to dismiss as to the contract claims.

### B. Negligence

Third-Party Defendants contend that the Second, Sixth and Seventh causes of action fail because Ameriquest has not sufficiently alleged an extracontractual duty in support of the negligence claims. (Mem. at 8–9.) As we discussed in *Ameriquest I*, "[d]uty is a question of whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." 589 F. Supp. 2d at 992 (quoting *Adams v. N. Ill. Gas Co.*, 211 Ill. 2d 32, 47, 809 N.E. 2d 1248, 1257 (Ill. 2004)). Although Ameriquest attempted to broaden the scope of Third-Party Defendants' alleged duties in the most recent Complaint, these allegations compel the same result: dismissal.

Ameriquest contends that Third-Party Defendants are bound by "general duties," (Opp'n at 7), and "industry standards," without differentiating these obligations from their contractual duties or identifying the "industry standards" at issue. (*See, e.g.*, Compl. ¶ 30.) The Complaint states that Third-Party Defendants had duties to communicate information to Ameriquest, supervise and otherwise handle loan closings, exercise care in procuring and providing material information and generally "act with ordinary skill and care required of professionals . . . performing their closing, title, escrow and underwriter duties." (*Id.*; *see also id.* ¶¶ 31–34, 58–63, 67–69.) These claims, however, are no more than a veneer on the alleged contractual duties and cannot make out an independent negligence claim.

Moreover, even if Ameriquest had sufficiently defined Third-Party Defendants'

extracontractual duties, any such obligation "must also be a duty recognized by Illinois law." *LaSalle Bank Nat'l Ass'n v. Paramount Props.*, 588 F. Supp. 2d 840, 852 (N. D. Ill. 2008) (citing *Congregation of the Passion v. Touche Ross & Co.*, 159 Ill.2d 137, 164, 636 N.E.2d 503, 514–15 (Ill. 1994) (allowing claim for professional negligence against accountants in part because "[t]ort law has traditionally afforded an avenue of recovery for accountant malpractice")); *see also Whitley v. Taylor Bean & Whitacker Mortgage Corp.*, 607 F. Supp. 2d 885, 902 (N.D. Ill. 2009) (noting that "it is the law which, in the end, must say what is legally required" (quoting *Shank v. Fields*, 373 Ill. App. 3d 290, 296, 869 N.E.2d 261, 269 (4th Dist. 2007)); *Bank One, Okla., N.A. v. Trammell Crow Servs., Inc.*, No. 03 C 3624, 2003 WL 23019173, at *3 (N.D. Ill. Dec. 23, 2003) (dismissing professional negligence claim against real estate service providers where that profession "does not have an established tradition of tort claims"). Ameriquest has not identified any legal authority, from any jurisdiction, imposing such duties on Third-Party Defendants.[5] Indeed, based on our reading of the Complaint and relevant authorities, Third-Party Defendants would have no such obligations but for the alleged contracts establishing their relationships with Ameriquest.[6] In short, while the negligence claims might suffice in form, they lack substance.

---

[5] Ameriquest cites to *Choi v. Chase Manhattan Mortgage Company*, 63 F. Supp. 2d 874, 889 (N.D. Ill. 1999), for the proposition that a plaintiff could properly plead "a claim in tort damages arising from defendants' alleged mismanagement of a mortgage escrow account." (Opp'n at 8–9.) There, however, the court held that, based on plaintiffs' allegations, defendants potentially could be liable under a contract theory or for breach of fiduciary duty. *Choi*, 63 F. Supp. 2d at 885–86 (concluding that "at least for pleading purposes, the Chois have adequately alleged an *extracontractual fiduciary duty* on the part of those entities responsible for managing the escrow fund") (emphasis added). The holding in *Choi* is thus irrelevant for these circumstances, as Ameriquest has not alleged that Third-Party Defendants undertook a fiduciary duty in conducting the mortgage transactions.

[6] Although Ameriquest suggests in its briefs that certain Third-Party Defendants who are attorneys would owe independent duties to Ameriquest, the Complaint does not state a claim for

-11-

### C. Negligent Misrepresentation

To state a claim for negligent misrepresentation under Illinois law,[7] a plaintiff must allege: (1) "a false statement of material fact;" (2) "intention to induce the other party to act;" (3) "action by the other party in reliance on the truth of the statement[];"(4) "damage to the other party resulting from such reliance;" and (5) "the defendant's own carelessness or negligence in ascertaining the truth of the statement." *Kopley Group V, L.P. v. Sheridan Edgewater Props., Ltd.*, 376 Ill. App. 3d 1006, 1017, 876 N.E.2d 218, 228 (1st Dist. 2007); *see also ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 852 (N.D. Ill. 2008); *Guar. Residential Lending, Inc. v. Int'l Mortgage Ctr., Inc.*, 305 F. Supp. 2d 846, 863 (N.D. Ill. 2004); *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334–35, 843 N.E.2d 327, 332 (Ill. 2006). In addition, "[a] successful plaintiff must plead . . . that defendant owes a duty to the plaintiff to

---

legal malpractice. To plead an action for legal malpractice in Illinois, Ameriquest must allege: (1) the existence of an attorney-client relationship that imposes a duty on the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause; and (4) damages. *Smart v. Local 702 IBEW*, 562 F.3d 798, 810 (7th Cir. 2009) (quoting *Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969, 974–75, 841 N.E.2d 465, 470–71 (1st Dist. 2005)); *Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1034 (N.D. Ill. 2009). Ameriquest identifies numerous attorneys in its Exhibits A and B to the Complaint but has not argued that these individuals entered into attorney-client relationships with Ameriquest entities. While Ameriquest alleges that these attorney defendants closed loans for Ameriquest, it has not alleged that Third-Party Defendants were engaged in the practice of law as representatives of Ameriquest.

[7] For purposes of this analysis, we shall use Illinois law to set forth the elements of a negligent misrepresentation claim. As both parties recognize, ultimate resolution of this claim necessitates a choice-of-law analysis. (Mot. at 9 n.2; Opp'n at 10–11; Sur-Reply at 2; Sur-Resp. at 1–2.) As discussed further in the text to follow, it would be inappropriate for us to conduct such an analysis at this time. Moreover, neither party has articulated which states are at issue and whether their laws differ from Illinois' interpretation of this particular tort. Nonetheless, this failing does not render the entire Complaint speculative; rather, this is simply a question we cannot yet decide.

communicate accurate information." *Kopley Group V, L.P.*, 376 Ill. App. 3d at 1017, 876 N.E.2d at 228; *see ABN AMRO, Inc.*, 595 F. Supp. 2d at 852; *Guar. Residential Lending, Inc.*, 305 F. Supp. 2d at 863; *First Midwest Bank, N.A.*, 218 Ill. 2d at 334–35, 843 N.E.2d at 332*; Bd. of Educ. of City of Chi. v. A,C & S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591 (Ill. 1989). "There is generally no duty unless the defendant is in the business of providing information for the guidance of others in business dealings." *Guar. Residential Lending, Inc.*, 305 F. Supp. 2d at 863; *First Midwest Bank, N.A.*, 218 Ill. 2d at 335, 843 N.E.2d at 332; *see Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 125 F.3d 468, 475 (7th Cir. 1997); *Rankow v. First Chi. Corp.*, 870 F.2d 356, 360–61 (7th Cir. 1989); *Bank One*, *Okla., N.A.*, 2003 WL 23019173, at *3.

Thus, in evaluating this claim, the critical question is whether Third-Party Defendants owed Ameriquest a duty to communicate accurate information, which in turn requires us to determine whether, as a matter of law, Third-Party Defendants are "in the business of providing information for the guidance of others in business dealings." *Guar. Residential Lending, Inc.*, 305 F. Supp. 2d at 863. The importance of this issue is readily apparent upon reading the many opinions addressing this type of claim—as might be expected, nearly all of these decisions hinge on the legal question of duty, rather than any other question of pleading or proof. *See, e.g.*, *ABN AMRO, Inc.*, 595 F. Supp. 2d at 851–54; *Guar. Residential Lending, Inc.*, 305 F. Supp. 2d at 863; *Bank One*, *Okla., N.A.*, 2003 WL 23019173, at *3–4; *First Midwest Bank, N.A.*, 218 Ill. 2d at 335–41, 843 N.E.2d at 332–36. Nonetheless, we cannot resolve this question at this stage of the litigation, on the bare record before us. As has often been said, the existence of such a duty requires a "precise, case-specific inquiry," which we simply cannot undertake at this juncture. *Rankow*, 870 F.2d at 361; *see Orix Credit Alliance, Inc.*, 125 F.3d at 475; *AMRO, Inc.*, 595 F.

Supp. 2d at 852; *Guar. Residential Lending, Inc.*, 305 F. Supp. 2d at 863. We are in no position to determine the legal duties of Third-Party Defendants, who held varying roles in thousands of transactions, or to evaluate the common laws of more than twenty states,[8] none of which have been specifically identified by either party. The Complaint alleges the existence of a duty to communicate accurate information and further analysis would "require[] a more thorough examination of the facts than can be performed on the pleadings alone." *ABN AMRO, Inc.*, 595 F. Supp. 2d at 854 (internal citation omitted); *cf. First Midwest Bank, N.A.*, 218 Ill. 2d at 335–341, 843 N.E.2d at 332–36 (concluding that a title insurer was not "in the business of supplying information" at the summary judgment stage, with the benefit of discovery and full briefing on the issue, including a particularly helpful *amicus* brief). Accordingly, we leave this question for another day (and potentially the transferor court) and turn to consider whether Ameriquest has sufficiently pled the other elements of negligent misrepresentation.

As to the first element, Ameriquest claims that Third-Party Defendants "made false representations of fact . . . by, among other things, representing . . . that all closing, title and escrow documents were properly prepared, executed and delivered and that the transactions were completed in accordance with instructions." (Compl. ¶ 39; *see also id.* ¶¶ 74, 82.) Ameriquest also alleges that Third-Party Defendants "misrepresented facts by concealing material facts" known to them, including their failures to properly prepare, execute and deliver closing documents. (*Id.* ¶¶ 40, 75, 83.) We find these allegations sufficient for Third-Party Defendants to understand their alleged misconduct and mount a defense. *See Twombly*, 550 U.S. at 555, 127

---

[8] According to Ameriquest, this proceeding "involves hundreds of Third-Party Defendants from 24 different states." (Opp'n at 14.)

S. Ct. at 1964.

In their reply, however, Third-Party Defendants suggest that these alleged misrepresentations constitute misrepresentations of law, rather than of material fact. (Reply at 12–13.) Third-Party Defendants point to our *Ameriquest I* opinion for support, arguing that the present allegations "are not substantively distinguishable from the proposed misrepresentation that has already been rejected." (*Id.* at 12.) To the contrary, however, the Complaint alleges that Third-Party Defendants misled Ameriquest by reporting that they had complied with Ameriquest's instructions when in fact they neglected to do so. The Complaint does not allege that Third-Party Defendants misled Ameriquest by reporting their compliance with "TILA and related statutes," as alleged in the SATPC. (2d Am. Complaint ¶ 25; *see id.* ¶¶ 24–25, 48–49 (claiming that Third-Party Defendants "had a duty to follow any and all federal and state laws relating to required disclosures in connection with mortgage loans," including TILA).) As a result, the misrepresentations described in the Complaint "relate to present or pre-existing facts," *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1041–42 (N.D. Ill. 2003), as opposed to an "expression of opinion," *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 309, 773 N.E.2d 84, 92 (1st Dist. 2002) (internal citation omitted). In other words, this Complaint does not imply, as did the SATPC, that Ameriquest relied on Third-Party Defendants for an opinion about the legality of the documents or closing process.

We similarly find that Ameriquest has adequately pled the remaining elements of a negligent misrepresentation claim. Ameriquest alleges that Third-Party Defendants intentionally induced Ameriquest to fund the borrowers' loans, which then resulted in compensation to Third-

Party Defendants. (Compl. ¶¶ 10, 43, 78, 86.) Ameriquest states that it justifiably relied on Third-Party Defendants misrepresentations and consequently funded the loans, to their detriment. (*Id.* ¶¶ 44–45, 79–80, 87–88.) The Complaint also provides that Third-Party Defendants were careless or negligent in ascertaining the truth of their statements, yet allegedly assured Ameriquest that the documents had been properly completed and delivered according to Ameriquest's instructions. (*Id.* ¶¶ 41, 76, 84.) Accordingly, we deny Third-Party Defendants' motion to dismiss as to the negligent misrepresentation claims.

## CONCLUSION

For the reasons set forth above, we grant the motion to dismiss the Second, Sixth and Seventh causes of action, for negligence, and otherwise deny the motion. It is so ordered.

                                                 Honorable Marvin E. Aspen
                                                 U.S. District Court Judge

Dated: January 19, 2010