IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) ) ) ) ) ) ) | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO ALL ACTIONS | | |

NOW COME Frank L. Platzar and Wendy L. Platzar, husband and wife, who reside at 37348 Arthur St. Willoughby Ohio 44094, ("Objectors") who received a Class Action Settlement Notice ("Notice") from Ameriquest Mortgage Co. and who are members of the Class, by and through the undersigned counsel, and hereby file these objections to the Proposed Settlement. The Objectors are in the "Bait and Switch" subclass. A copy of their Claim form is attached hereto as an Exhibit.

**NOTICE OF INTENT TO APPEAR**

Objectors hereby notify this Honorable Court that they will appear, through counsel, at the Fairness Hearing currently scheduled for April 15, 2010 at 10:30 AM before the Honorable Marvin E. Aspen in Courtroom #2658 at the United States District Courthouse 219 S. Dearborn Street, Chicago IL 60604.

1

## SUMMARY OF OBJECTIONS

The proposed Settlement Agreement is not fair, reasonable or adequate for several reasons. Chief among them is the fact that Class Counsel is requesting up to thirty-three and one-third percent (33.3%) of the Class Settlement Amount for their fees and expenses. The Class Settlement Amount is $22,000,000. Therefore, the fee request is for $7.33 million. This is objected to because 1) the percentage is too great for a settlement of this size, 2) Class Counsel has not submitted their time records so there is no way to know whether or not the requested fee is fair and reasonable and 3) this is a "claims-made" settlement and the fee should not be determined until after all of the claims have been filed and a report has been made to the Court. Class Counsel claims that "they have expended more that that amount [$7.33 million] in time and costs on this litigation" Notice at ¶5 (A) (4) but there is currently no way for the Class and this Honorable Court to be positive of that claim.

1. **VIOLATION OF FED. R. CIV. P. 23(h)**

The Notice provided that any objections to the Settlement were to be filed on or before February 22, 2010. However, the fee petition (Motion for Fees) had not yet been filed as of such date. Therefore, Objector is in the logically impossible and untenable position of being obligated to respond to a Motion **before** the Motion has even been filed. Clearly, this is impossible and is a violation of Fed. R. Civ. P 23(h).

Fed.R.Civ.P. Rule 23(h) provides:

(h) Attorney's Fees and Nontaxable Costs.

In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

2

(1) A claim for an award must be <u>made by motion</u> under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. <u>Notice of the motion must be</u> served on all parties and, for motions by class counsel, <u>directed to class members in a reasonable manner.</u>
(2) <u>A class member</u>, or a party from whom payment is sought, <u>may object</u> to the motion.
(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D) (emphasis added).

This Rule has three elements or conditions precedent to having a hearing on a fee request: 1) the request for fees must be by motion; 2) notice of the motion must be directed to class members in a reasonable manner; and 3) class members must have an opportunity to object. As of the date of this filing, no such Motion had been filed, so obviously no notice of the motion has been directed to the Class members at all, let alone in a "reasonable manner." Therefore, Objectors reserve the right to file a response to the Motion by way of Supplemental Objections within the applicable time period after the Motion is filed.

## 2. THE COURT SHOULD AWAIT CLAIMS DATA BEFORE AWARDING FEES

This is a "Claims-made" settlement, and this Honorable Court should not award fees until such time as it has received a report documenting the amount of claims made and how much of the fund will be distributed to Class Members. Even though it appears that ALL class members received direct notice of the settlement, the number who will take the time to complete and file their claims forms is currently unknown. Based on anecdotal historical evidence, it is doubtful if more than 7-10% of those eligible will actually file a claim. This Honorable Court should wait to award attorneys' fees until such time as it has had a chance to review the claims actually made to assure itself that the attorneys' fees are reasonably related to the actual benefit received by the Class. This would be in keeping several cases in other jurisdictions and with the Federal Judicial Center's "Pocket Guide" for managing class action litigation.

3

"*Managing Class Action Litigation: A Pocket Guide for Judges, 2nd Ed,* Barabara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2009 at 28 argues that the best way to determine appropriate attorneys' fees is to wait until after the redemption period has ended and the value of the benefits to the Class can be established by calculating class members' **actual use.** *Id*. Federal courts have generally followed the Federal Judicial Center guidelines and endeavored to accurately value claims-made settlements when awarding attorney's fees. They do not simply use the amount made available to the class when calculating attorneys' fees, but wait for the claims to come in and calculate the fee based upon the amount actually paid out to the class members. *See e.g., In re Compact Disc Minimum Advertised Price Litig.*, 370 F. Supp. 2d 320 (D. Me. 2005) (awarding attorney's fees of 30% of value of redeemed coupons, which was 30% of claimed lodestar). *See also In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar):

> The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem UPS Vouchers is known… "Particularly where the common benefits are in the form of discounts, coupons, options or declaratory or injunctive relief, estimates of the value or even the existence of a common fund may be unreliable, rendering application of any percentage-of-recovery approach inappropriate. Where there is no secondary market for coupon redemption, the judge can conclude that the stated value of the coupons … does not provide a sufficiently firm foundation to support a fee award…"

*In re Excess Value Ins. Coverage Litig.,* 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. 2004) at *58 (quoting Manual for Complex Litigation § 14.121). The Court proceeded to wait until the end of the redemption period to award fees. Counsel had estimated the value of the coupon voucher program at $205 to $265 Million and requested a fee of approximately 10% of this amount. The actual value of vouchers redeemed was only $4.8 million, or only 2.4% of the

original estimate. Based upon the actual redemption, the fees requested by class counsel was **280% greater** than the actually value of the redeemed coupons. The court awarded counsel $2.4 Million in fees. This Court should wait until it receives a report on actual redemption before awarding fees. Although this is not a coupon case, the principle of waiting until the benefit to the Class is ascertained is the same.

In *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040 (N.D. Cal. 2008), the court confronted the task of valuing a settlement for the purpose of awarding attorney's fees and stated that "Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained" *Id*. at *20-28. This court went on to award class counsel a fee of $325,000, or 25% of the value of claimed settlement benefits plus attorney's fees, a figure that was approximately one-third of class counsel's claimed lodestar. See also *Managing Class Action Litigation*: *A Pocket Guide for Judges.*

This was the procedure followed by the Honorable Richard Berman in one of the most instructive pre-CAFA cases, *In re: Excess Value Insurance Coverage Litig., No. M-21-84, MDL-1339 (S.D.N.Y. Nov.2, 2005).* The Court therein pointed out that under CAFA, 28 U.S.C. § 1712 (a), the attorneys' fee award is to be based upon the value to members of the Class of coupons actually redeemed. It therefore waited There are many other examples of the courts rejecting coupon settlements and/or the attorneys' fees requested in those cases. For example, in In re: General Motors Corp. Pickup Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3d Cir. 1995), cert. denied, 516 U.S. 824 (1996), the court rejected a settlement (seeking $4 million in attorneys fees) which offered $1,000 coupons for the purchase of a new truck. In Maffei v. Alert Cable TV of North Carolina, 342 S.E.2d 867, 872 (N.C. Sup. 1986), class

certification was denied where the 29-cent relief was worth less than the cost of postage and stationery for submitting a claim.

The Deadline for filing claims in this case is March 9, 2010, so a report should be ready by the time of the Fairness Hearing. Therefore, this Honorable Court is urged to analyze the report for the Settlement Administrator before awarding fees to determine how much benefit, and how many dollars the Class actually received, as opposed to how much went to Class Counsel, how much to the class representatives, and how much to *cy pres. See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 190 (D. Me. 2003). *See also In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) (face value of coupons not valuation of settlement; using data from other coupons settlements to project coupon utilization rate). At that time, the Court should award no more than twenty-five percent (25%) of the amount actually claimed by class members; no matter what the size of the fund, thirty-three percent (33%) is not justified.

### 3. CLEAR SAILING

Defendant agreed that it would not contest any "reasonable award" of attorneys' fees and costs. Settlement Agreement IV (B) (4) (Docket no. 3247). However, this agreement should not be afforded any weight by this Court, and is clearly not binding on this Court. "[A]ny award of attorney's fees to class counsel must be reasonable in comparison to the benefits conferred on the class through counsel's efforts." *Scardelletti v. DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002) (citations omitted); *see also Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 453 (10th Cir. 1988). Class Counsel has not shown that the requested fee is reasonable or justified when compared to the benefits conferred on the Class through counsel's efforts.

"Clear sailing provisions ... represent *prima facie* evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious ethical concerns for lawyers representing the class. Both courts and commentators have expressed apprehension that a plaintiff's counsel may be accepting a lower settlement for the class in exchange for a generous and non-adversarial treatment of fees." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul.L.Rev. 813, 815 (2003) (advocating *per se* ban on clear sailing clauses). The Fifth Circuit has stated that "A district court is not bound by the agreement of the parties as to the amount of attorneys' fees. In fixing the amount of attorneys' fees the court must, of course, take all [appropriate] criteria into account, including the difficulty of the case and the uncertainty of recovery. [The Court] is not, however, merely to ratify a pre-arranged compact." *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir. 1980). Therefore, the Court should disregard the "clear sailing" provision and do its own analysis of the Fee Request (once it is submitted.)

4. Objectors respectfully adopt and incorporate into these Objections all other well-taken, timely filed Objections that are not inconsistent with these Objections.

5. The Class members have a legally protectable interest in this litigation. That interest will be impacted by the proposed settlement agreement, particularly the legal fees that are proposed to be paid.

6. These Objections, presented to the Court as a matter of right, are properly and timely filed by the Objectors. All of the legally required prerequisites material to these Objections have been met.

WHEREFORE, Objectors respectfully request that this Court:

A. Upon proper hearing, sustain these Objections;

B. Continue the issue of attorneys' fees and expense reimbursement for a subsequent hearing;

C. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement and the requested attorneys' fees and expenses.

Respectfully submitted,

__/s/ Edward F. Siegel_____
Edward F. Siegel (Ohio Bar 0012912)
27600 Chagrin Blvd. #340
Cleveland Ohio 44122
Voice: (216) 831-3424
Fax:   (216) 831-6584
e-mail: efsiegel@efs-law.com
(pro hac vice pending)

Edward W. Cochran
(Ohio Bar no. 0032942)
20030 Marchmont Rd.
Cleveland Ohio 44122
Tel:   (216) 751-5546
Fax:   (216) 751-6630
edwardcochran@wowway.com

Sam P. Cannata (Ohio Bar no. 0078621)
9555 Vista Way Ste. 200
Garfield Hts., Ohio 44125
Voice:        (216)  587-0900
E-mail:       scannata@snider-cannata.com

Co-counsel for Objectors

CERTIFICATE OF SERVICE

The foregoing objections were filed with the Court's electronic system on February 22, 2010 and were by such system served on all other counsel of record.

_____/s/Edward F. Siegel_