## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO: | |
| *Scott Jeffress, et al. v. Ameriquest Mortgage Company, et al.*; Case No. 06 C 3423 | |

### DEFENDANT DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE'S ANSWER AND AFFIRMATIVE DEFENSES TO THIRD AMENDED COMPLAINT

Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE ("Defendant"), by and through its attorneys, answers Plaintiffs SCOTT JEFFRESS and PAMELA JEFFRESS' ("Plaintiffs") Third Amended Complaint ("Complaint") as follows.

### THIRD AMENDED COMPLAINT

### INTRODUCTION

1.      Plaintiffs bring this action against Ameriquest Mortgage Company and an affiliate to secure redress for predatory practices in making residential mortgage loans.  Plaintiffs allege violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq. ("ECOA").

**ANSWER:     Defendant specifically denies that it violated the Truth in Lending Act, 15 U.S.C. §1601, et seq. or the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq.  Defendant denies any remaining allegations of paragraph 1.**

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §§1640 (TILA) and 1691e (ECOA).

**ANSWER:     Defendant does not dispute subject matter jurisdiction.**

3.      Each defendant does business in the District and is deemed to reside here.

**ANSWER:     Defendant does not dispute venue.  Defendant is a national banking association with a place of business at 1761 East St. Andrew Place, Santa Ana, California 92705.  Defendant has an office in the State of Illinois. Defendant denies any remaining allegations of Paragraph 3 as they relate to this Defendant.  As to any other defendant, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 and on that basis denies such allegations.**

## PARTIES

4.      Plaintiffs Scott Jeffress and Pamela Jeffress are husband and wife and reside in a home which they own at 3320 Willowdale Road, Portage, Indiana 46368, in Porter County.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4 and on that basis denies such allegations.**

5.      Defendant Ameriquest Mortgage Company ("Ameriquest") is a Delaware corporation with its principal offices in California.  It maintains offices in and does business in Indiana as well as Illinois.  Its registered agent and office are National Registered Agents, Inc., 320 Meridian St., Indianapolis, IN 46204, or 200 W. Adams, Chicago, IL 60606.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 and on that basis denies such allegations.**

6.      Defendant Ameriquest is engaged in the business of originating "subprime" mortgages.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6 and on that basis denies such allegations.

7.     Defendant Ameriquest makes more than 26 loans per year.  It is a "creditor" as defined in TILA.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 and on that basis denies such allegations.

8.     During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period.  Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States.  During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 and on that basis denies such allegations.

9.     Defendant AMC Mortgage Services, Inc. ("AMC") is a Delaware corporation with its principal place of business in California.  It does business in Indiana as well as Illinois. Its registered agent and office are National Registered Agents, Inc., 320 Meridian St., Indianapolis, IN 46204, or 200 W. Adams, Chicago, IL 60606.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 and on that basis denies such allegations.

10.     Defendant AMC serviced loans originated by Ameriquest.  Borrowers such as plaintiffs were directed to make payments to AMC, which claimed, among other interests, the right to payments under plaintiffs' loans.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 and on that basis denies such allegations.

11.     Defendant Deutsche Bank National Trust Company, N.A., is a federally chartered bank located at 60 Wall Street, New York, NY 10005.  On information and belief it holds legal title to plaintiffs' loans, as trustee.

**ANSWER:     Defendant admits that it is a national banking association with a place of business at 1761 East St. Andrew Place, Santa Ana, California 92705. Defendant admits that it is trustee for Ameriquest Mortgage Securities, Inc. Asset-Backed Pass-Through Certificates, Series 2005-R7, under the Pooling and Servicing Agreement dated as of August 1, 2005, which includes the Plaintiffs' loan.  Defendant denies any remaining allegations of paragraph 11.**

12.     Defendant Ameriquest Mortgage Securities, Inc., an affiliate of Ameriquest Mortgage Company, is a foreign corporation which transacts business in Indiana.  It is the beneficial owner of some loans originated by Ameriquest Mortgage Company, including plaintiffs'.  It is located at 1100 Town & Country Road, Suite 1100, Orange, CA 92868.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12 and on that basis denies such allegations.**

13.     Defendant American Home Mortgage Servicing, Inc. is a foreign corporation which does business in Illinois and Indiana.  Its registered agent and office are C.T. Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 and on that basis denies such allegations.**

14.     Defendant American Home Mortgage Servicing, Inc. services some loans originated by Ameriquest Mortgage Company, including plaintiff's, and claims an interest in such loans, including the right to receive payments thereunder.  It is joined as a necessary party.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 and on that basis denies such allegations.**

15. Defendants John Does 1-100 are other persons, as yet unknown to plaintiffs, that own or claim interests in plaintiffs' mortgage loans.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 and on that basis denies such allegations.**

### DEFENDANTS' PRACTICES

16. Ameriquest targets consumers for predatory, "subprime" loans.  Ameriquest engages in a "bait and switch" scheme through which it lures borrowers with promises of favorable interest rates, monthly payments and/or loan terms, and then switches the terms at closing to less favorable ones.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 and on that basis denies such allegations.**

17. Ameriquest holds itself out, in advertising, as a mortgage company that can quickly arrange for and close mortgage refinancings in short order—with terms quoted over the phone in as little as one business day, loan documents sent to a borrower shortly thereafter, and a closing taking place in a matter of weeks.  These refinancings are most often completed for the purpose of "cashing out" equity built up in consumers' houses, in order to retire personal debts (on credit card accounts or other loans) or receive money for major personal expenses.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 and on that basis denies such allegations.**

18. In a mailing, Ameriquest promises that "your Ameriquest personal mortgage specialist will work with you to custom-tailor a loan with the terms and rates that work best for you" that Ameriquest "can tell you how much you qualify for in about a day," and that "we'll even do the paperwork for you!" Another advertising letter sent to homeowners by Ameriquest reiterates this information, stating specifically that "we'll give you an answer in about 24 hours." A third advertising letter states that an Ameriquest representative "will work with you—one-on-

one, start to finish—to custom-tailor a loan with terms and rates that work for you.  We'll even do the paperwork.  You can get a decision as soon as the next business day and your loan could be funded in as little as 30 days."

**ANSWER**:     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 and on that basis denies such allegations.**

19.     A DVD Ameriquest sends to homeowners contains a thirty-minute "infomercial" style program.  This includes several statements from Mary Jo Shelton, Ameriquest's vice-president for branch operations.  Specifically, Ms. Shelton claims that Ameriquest employees are "trained to find ways to say yes, instead of no," and that Ameriquest wants to "create a lending solution that works for you, based on your needs and your situation." The DVD also states that an Ameriquest agent "will fill out the forms based on the information you provide.  You'll be able to review the documents, and then sign." The infomercial also states that an Ameriquest agent would be with the borrower from the start of the refinancing process to the finish.  Finally, the infomercial amplifies statements made in the mailing, emphasizing that a closing would usually take place in a matter of weeks, and stating specifically that "we can close your loan in days, not months."

**ANSWER**:     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 and on that basis denies such allegations.**

20.     Ameriquest uses these representations as part of a scheme to systematically bait customers into residential mortgage loan transactions with promises of fixed interest rates, low interest rates, low or no fees, lower monthly payments compared to then current payments, no prepayment penalties, and/or the existence or absence of particular terms.  When the paperwork is presented to customers for signature at closing, the terms are contrary to the terms promised. Frequently, borrowers are unaware that the terms of the mortgage documents do not match Ameriquest's prior representations.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 and on that basis denies such allegations.**

21.     After presenting new or different loan terms, if the borrower becomes aware of the changes, Ameriquest engages in scare and pressure tactics to cause customers to proceed with the transaction anyway. Ameriquest further uses their borrowers' concern about loan terms in the initial transaction as an opportunity to bait the hook for a second loan, by promising an early refinancing on better terms. The refinance loans then capitalize finance charges, provide an excuse for new and additional points and other closing costs and provide an opportunity for Ameriquest to reap other additional hidden profits at their borrowers' expense.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 and on that basis denies such allegations.**

22.     Ameriquest misleads the borrowers into signing loan documents without reading them by misrepresenting their contents and telling borrowers there is no need or time to read them and pressuring them to "just sign the papers."

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 and on that basis denies such allegations.**

23.     While Ameriquest purports to provide a three-day right of rescission, it fails to provide notice of this right in the legally mandated form with full information about the legal deadline for cancellation. In many cases, Ameriquest fails to timely provide the legally required copies of the appropriate cancellation forms.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 and on that basis denies such allegations.**

24.     Ameriquest also fails to timely deliver copies of various loan papers, including required disclosures under the Truth in Lending Act, until after the loan is consummated. This

prevents consumers from understanding the loan terms, including most importantly, the true cost of the loan.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 and on that basis denies such allegations.**

25.     Ameriquest also has a uniform practice of removing certain documents, such as those relating to the prepayment penalty, before presenting the documents to the customer for signing.  For this reason and others, customers are systematically denied any meaningful opportunity to discover that there terms on the final documents do not match the prior representations.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 and on that basis denies such allegations.**

26.     Ameriquest trains and encourages its loan officers, called Account Executives, to engage in any conduct necessary to close the greatest number of loans as quickly as possible and to maximize the total loan principal.  Ameriquest Account Executives receive daily leads on new customers that are generated by software at Ameriquest's Orange, California, headquarters. These leads target homeowners who are carrying both a mortgage and significant credit card and/or other consumer debt; persons who have mobile home mortgages; persons with less than perfect credit; and other financially-vulnerable persons.  These homeowners are solicited through repeated mailers, telephone calls, and/or personal visits by Ameriquest sales personnel, all inviting them to consolidate their debts or to obtain money for expenses, with false and misleading promises of more favorable loan terms and/or reduced monthly payments. Ameriquest profits by obtaining high fees upfront and high interest rates in the interim and often by selling its loan portfolios to other companies.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26 and on that basis denies such allegations.**

27.     Ameriquest systematically trains its sales personnel through standardized sales presentations (videos) developed under the control of corporate headquarters in Orange, California, as well as by use of the movie "Boiler Room" which depicts unethical and illegal high- pressure sales practices by a securities brokerage firm.  These videos demonstrate high-pressure mortgage sales, while failing to train employees on the legal requirements and regulations for mortgage lending.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 and on that basis denies such allegations.**

28.     Ameriquest also trains its sales personnel to routinely rush borrowers through the lengthy, complex documentation of the regulated closing process so as to divert the borrowers' attention from the documented terms of the loan.  Moreover, Ameriquest trains its Account Executives to overcome objections raised by borrowers at closing by offering immediate cash pending the closing of the loan and by assuring borrowers that they can refinance with better terms after improving their credit score, without disclosing that they could be subject to the prepayment penalty, higher interest rates and other fees if they did so.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28 and on that basis denies such allegations.**

29.     At all times relevant to this action, Ameriquest's uniform and fundamental business strategy with respect to the sale of home-secured loans has been to uniformly hold out to all prospective customers, through the use of misleading promotions and material omissions regarding loan terms, that refinancing and/or consolidating their debts with Ameriquest will be beneficial and will save them money when, in fact, it will not.  In addition, Ameriquest employs aggressive, misleading, and unfair high-pressure sales tactics to obfuscate loan terms both prior to closing and at closing, if and when customers question loan terms, in order to force the customers to close the loan.  Ameriquest makes loans in amounts so high in relation to the value

of their homes that the resulting loan-to-value ratio (coupled with prepayment penalties and other restrictions) effectively strips their homes of equity and prevents the borrowers from refinancing their loans with Ameriquest's competitors.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29 and on that basis denies such allegations.**

30.     Because Ameriquest profits from the origination and "flipping" of loans and the subsequent sale of those loans to investment bankers and others as assets for mortgage-based securities, Ameriquest has little concern for the actual risk that the loans might default or with the continued profitability of the loans after origination, except to the extent that Ameriquest can induce existing customers to refinance again and borrow more.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30 and on that basis denies such allegations.**

31.     Ameriquest routinely fails to provide required disclosures to borrowers prior to closing – including, but not limited to, the HUD-1 statement, Notice of Right to Cancel, a "good faith" Good Faith Estimate, settlement process information booklet and other disclosures required under TILA, thereby ensuring that borrowers have no meaningful opportunity to review them or to learn the true terms and costs of their loan transactions.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31 and on that basis denies such allegations.**

32.     Ameriquest has designed its compensation system to reward its Account Executives for "upselling" customers' loans, providing incentives for Account Executives to aggressively sell products in order to increase the amounts loaned to the maximum permitted by Ameriquest's underwriting goals, irrespective of the amounts requested by borrowers or supported by the actual value of the home.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 and on that basis denies such allegations.**

33.     Ameriquest's compensation scheme also rewards Account Executives based on quantity of loans closed per month.  The minimum monthly quotas have risen consistently over time, reaching levels that are significantly higher than the number of loans closed by sales personnel at other mortgage companies.  Given that Ameriquest's Account Executives must reach the minimum quotas in order to be paid at any reasonable rate and that the quotas are very high, Ameriquest's policy all but ensures that its Account Executives will systematically engage in unfair and deceptive tactics to meet company quotas, with company knowledge of this widespread practice.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 and on that basis denies such allegations.**

34.     A recent report in the Los Angeles Times described allegations made against Ameriquest for various predatory mortgage practices, allegations that were supported by statements made by former Ameriquest employees.  Ameriquest specifically uses telemarketing-style operations to make "cold calls" to homeowners offering to refinance their houses, with intense pressure put on Ameriquest employees to bring in business; a failure to constantly bring in business would result, according to Mark Bomchill, a former Ameriquest employee, in an employee's termination.  Kenneth Kendall, another former Ameriquest employee, reported that Ameriquest does engage in the bait-and-switch scheme alleged here; specifically, he stated in the Los Angeles Times article that Ameriquest employees are trained to "promise certain interest rates and fees, only to change those rates at the time of the closing."

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 and on that basis denies such allegations.**

35. Mr. Kendall's statement was made in connection with a lawsuit in California, Pierceall v. Ameriquest Mortgage Company, et al, No. 415620 (San Mateo Co. Super. Ct.) Mr. Kendall specifically said that "he was given a script of things to say to customers over the telephone," and that, "at our branch, only management had the authority to control the price modeling matrix, which was used to set rates and points. If the rates and points did not offer enough profit for Ameriquest, the loan application was put through again, until the rates and points were more favorable to Ameriquest. At the instruction of management, I along with other Ameriquest employees were encouraged to use 'bait' and 'switch' tactics. Employees would promise certain interest rates and fees, only to change those rates and fees at the time of closing."

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35 and on that basis denies such allegations.**

36. On information and belief, in the California litigation, Ameriquest acknowledged that in some states 40% of its customers had their annual percentage rates increased between the Good Faith Estimate and closing, and 34% had their note rates increased between the Good Faith Estimate and closing. (If the points and fees are increased but the note rate is not, only the annual percentage rate would be increased.)

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 36 and on that basis denies such allegations.**

37. Ameriquest utilizes a confusing and unfair variable interest rate structure, which provides only for an increase and not a decrease in the borrower's interest rate.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 37 and on that basis denies such allegations.**

38. Ameriquest has a misleading charge for "discount points" or a "discount fee," amounting to hundreds or thousands of dollars added to the loan principal. However, Ameriquest does not, in fact, "discount" the interest rate in exchange for this fee.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 and on that basis denies such allegations.**

39.     Ameriquest regularly imposes a prepayment penalty for the purpose and with the effect of preventing borrowers from refinancing on better terms with other lenders.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 and on that basis denies such allegations.**

40.     Ameriquest imposes duplicative and excessive costs and closing fees in amounts designed to strip home equity and prevent borrowers from refinancing without incurring high costs.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 and on that basis denies such allegations.**

41.     Ameriquest routinely fails to provide required disclosures, including required financial disclosures and the statutorily mandated notice of right to cancel, and circumvents statutory protections by failing to leave a true copy of completed loan documents in borrowers' possession with the effect that borrowers cannot review the loan terms.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 and on that basis denies such allegations.**

42.     Finally, defendant AMC Mortgage Services, Inc., has a pattern and practice of retaliating against its customers who exercise their rights under federal credit protection statutes by filing, in good faith, a lawsuit against Ameriquest and its affiliates.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 and on that basis denies such allegations.**

43.     Once a customer files suit, his/her account is "flagged," access to his or her on-line account is blocked, and he or she can no longer make payments via on line.  In addition, in many cases, AMC stops sending monthly statements to the customer.

**ANSWER:**     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 and on that basis denies such allegations.**

44.     Next, when the customer calls AMC to inquire, they are no longer permitted to deal with a customer representative; they are informed that they must deal with the president's office, and their call is routed to the same.  Similarly, if they discover on-line that their account has been frozen, they are directed to call the President's office.  Customers then have a very difficult time getting through to anyone at the president's office.  Each time they call to inquire about their account or to make a payment, it takes between 15-60 minutes to get someone on the line.  Often, their call is dropped before they reach anyone but after they have waited for several minutes, and they have no choice but to call back and start the waiting period over.

**ANSWER:**     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44 and on that basis denies such allegations.**

45.     When the customer finally gets someone on the line, they are often informed that their account has been flagged because of their lawsuit and that the only way they can make a payment is over the phone, i.e., "check-by-phone" (debiting a checking account) and that they will be charged a $10.00 fee for making the payment this way.  In fact, customers are then charged the $10.00 fee for making their payment in the only manner AMC permits due to their suit.

**ANSWER:**     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45 and on that basis denies such allegations.**

46.     Under TILA, when a loan is secured by the borrower's home, and was not entered into for purposes of the initial acquisition or construction of that home, it is subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23.  Section 226.23 provides:

    a.    **Consumer's right to rescind.**

        **(1)     In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47**

        **(2)     To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.**

        **(3)     The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last.  If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.   In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]**

        **(4)     When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.**

    b.    **Notice of right to rescind.  In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind.  The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

        **(1)     The retention or acquisition of a security interest in the consumer's principal dwelling.**

        **(2)     The consumer's right to rescind the transaction.**

(3)     **How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

(4)     **The effects of rescission, as described in paragraph (d) of this section.**

(5)     **The date the rescission period expires. . . .**

c.     **<u>Exempt transactions</u>.  The right to rescind does not apply to the following:**

(1)     **A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].**

(2)     **A credit plan in which a state agency is a creditor.**

**<u>ANSWER</u>:**    **Because this paragraph states legal conclusions, no answer is required.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

47.     When borrowers inquire at closing about why they are not receiving their loans on the promised terms, they are often promised early refinancing on more favorable terms.

**<u>ANSWER</u>:**    **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47 and on that basis denies such allegations.**

48.     By failing to disclose prior to the loan closing that the borrower would not receive loans on the terms originally promised, Ameriquest violated the ECOA, 15 U.S.C. §1691d.

**<u>ANSWER</u>:**    **Because this paragraph states legal conclusions, no answer is required.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

49.     By failing to give borrowers complete and accurate information about their right to cancel the loan, Ameriquest violated TILA and Regulation Z, 15 U.S.C. § 1635 and 12 C.F.R. §226.23.

**ANSWER:** Because this paragraph states legal conclusions, no answer is required. If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.

50. By "flagging" the accounts of customers who file lawsuits against them, making them wait an inordinate amount of time to speak with a representative, ceasing to send them statements, limiting them to one method of payment for which they are then charged extra, treating them rudely and by other retaliatory conduct, defendants Ameriquest and AMC violated and continue to violate 15 U.S.C. § 1691(a)(3) and 12 C. F. R. § 202.2(z).

**ANSWER:** Because this paragraph states legal conclusions, no answer is required. If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.

51. As a result, plaintiffs and the members of the class described below have been harmed and continue to incur damages and suffer harm. Plaintiffs seek rescission, damages, restitution, a declaration of the right to rescind, attorneys fees, costs, and any other relief the Court deems proper.

**ANSWER:** Because this paragraph states legal conclusions, no answer is required. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.

## FACTS RELATING TO SCOTT JEFFRESS AND PAMELA JEFFRESS

52. Prior to June 21, 2005, Scott Jeffress and Pamela Jeffress were solicited for a refinance mortgage loan by Ameriquest.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52 and on that basis denies such allegations.

53. During the initial phone contacts with plaintiffs Scott Jeffress and Pamela Jeffress, Ameriquest's representative were promised an approximately 6.5% loan with lower payments than their current loan.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 53 and on that basis denies such allegations.**

54. During the initial communications with plaintiffs Scott Jeffress and Pamela Jeffress, Ameriquest obtained comprehensive financial information from or concerning plaintiffs, including information about their income, employment, property value, current mortgage loan, debts, and credit - information that was sufficient to underwrite a loan.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54 and on that basis denies such allegations.**

55. Plaintiffs Scott Jeffress and Pamela Jeffress needed and used the loan for personal, family or household purposes, namely, refinancing of prior debts incurred for such purposes.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 55 and on that basis denies such allegations.**

56. On or about June 21, 2005, Ameriquest closed the loan.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56 and on that basis denies such allegations.**

57. Immediately prior to the closing, the terms of the loan were changed to the detriment of Scott Jeffress and Pamela Jeffress. The annual percentage rate was increased from 9.261% to 10.145%. The initial interest rate was changed from 6.990% to 8.990%. The margin which governed future rate changes was increased from 6% to 6.25%. The monthly payments were now higher than on plaintiffs' prior loan rather than lower. These changed terms were reflected on Exhibit A.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57 and on that basis denies such allegations.**

58.     Scott Jeffress asked at closing why his interest rate had risen.  His loan officer, Willie Haddad, answered that the 8.99% figure was for Ameriquest's internal records, and that the Jeffresses should ignore it.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58 and on that basis denies such allegations.**

59.     The Jeffresses felt rushed to close.  Scott Jeffress was working in downtown Chicago until 5:00 pm, and closing took place in Ameriquest's office in Schererville, IN, which closed at 6:00.  Haddad introduced the Jeffresses to a female closing agent they hadn't met before and then left.  The closing agent pointed out where to sign but did not explain any of the documents.  The Jeffresses trusted Haddad, and didn't have a chance to review the documents more carefully until after closing.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59 and on that basis denies such allegations.**

60.     Among the documents presented to plaintiffs for signature at closing was a pre-printed loan applications that Haddad and/or Ameriquest had prepared in advance, Exhibit G. (The highly sensitive, personal information has been redacted from these documents for the public record.)

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60 and on that basis denies such allegations.**

61.     The applications state that the Jeffresses' monthly income was $4,783.70.

**ANSWER:     The referenced document speaks for itself; therefore no answer is required. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

62.     It also states that the Jeffresses' house was built in 1975, and that the Jeffresses had purchased the house for $120,000.

**ANSWER:     The referenced document speaks for itself; therefore no answer is required. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

63.     These statements were false.  In fact, the Jeffresses' monthly income was only approximately $3,800.  Their house was built in 1967, and the Jeffresses purchased the house for only $80,000.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 63 and on that basis denies such allegations.**

64.     Plaintiffs provided truthful and accurate information concerning their income and assets to Ameriquest, including supporting documentation.  Plaintiffs did not learn about the misinformation on their loan applications until after contacting their current attorneys.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 64 and on that basis denies such allegations.**

65.     Haddad and/or Ameriquest falsified the information in order to make it look like plaintiffs qualified for the loan, so that they could get their fees and commission.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 65 and on that basis denies such allegations.**

66.     On information and belief, in connection with this loan, Ameriquest or its agent performed or arranged for an appraisal of plaintiffs' property.  The appraisal report is attached as Exhibit H.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 66 and on that basis denies such allegations.**

67.     Pamela Jeffress observed that the appraiser that came to their home parked in front and did not leave his vehicle.

**ANSWER:**     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 67 and on that basis denies such allegations.**

68.     During closing, Haddad also told the Jeffresses that the appraised value of their home was $140,000.  However, <u>Exhibit H</u> actually lists the Jeffresses' appraised value as $147,500.

**ANSWER:**     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 68 and on that basis denies such allegations.**

69.     On information and belief, the house is worth significantly less.

**ANSWER:**     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 69 and on that basis denies such allegations.**

70.     Only four years earlier, American General Finance had appraised the Jeffresses' home at $110,000.  The Jeffresses were surprised that the price had risen so significantly, but they trusted Haddad.

**ANSWER:**     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 70 and on that basis denies such allegations.**

71.     The Jeffresses were not provided with a copy of their appraisal report.

**ANSWER:**     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71 and on that basis denies such allegations.**

72.     After obtaining current counsel, Scott Jeffress called Ameriquest to request a copy of his appraisal report.  The Ameriquest employee who answered told Mr. Jeffress that he only

had ninety days after closing in which to get a free copy of his appraisal report, and that if he wanted it now Ameriquest would charge several hundred dollars.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 72 and on that basis denies such allegations.**

73.     On information and belief, Ameriquest or its agent intentionally produced a fraudulent, inflated appraisal of plaintiffs' property, for the purpose of increasing the amount for which the plaintiffs' qualified and increasing the broker's fees and the lender's points, interest and profits.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 73 and on that basis denies such allegations.**

74.     The principal amount of the loan was $132,750, which is greater than the likely actual value of the home.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 74 and on that basis denies such allegations.**

75.     Most reputable lenders will not make a loan that exceeds 80% of the value of the home ("LTV"), at least not without also imposing expensive private mortgage insurance ("PMI").

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 75 and on that basis denies such allegations.**

76.     Furthermore, plaintiffs Scott Jeffress and Pamela Jeffress were charged a "loan discount" fee of $4,678.11 (3.52% of the principal amount of the loan), but their interest rate was increased rather than decreased.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 76 and on that basis denies such allegations.**

77.     Other fees charged included a $70 tax related fee, a $9 flood search fee, a $626 processing fee, a $239 warehouse fee, and a $360 "application fee" (deducted from the loan proceeds).  See Exhibit B.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77 and on that basis denies such allegations.**

78.     Ameriquest delivered to plaintiffs only one completed federal notice of right to cancel, instead of the four required by TILA (i.e., two per mortgagor).

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78 and on that basis denies such allegations.**

79.     Plaintiffs Scott Jeffress and Pamela Jeffress received two, different and inconsistent notices of right to cancel, the three-day notice required by TILA (Exhibit C) and a "one week" notice created and used only by Ameriquest (Exhibit D).

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 79 and on that basis denies such allegations.**

80.     Exhibit D is a form document regularly used by Ameriquest in the class members' transactions.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 80 and on that basis denies such allegations.**

81.     The "one week" notice detracts from and obfuscates the required notice in that it suggests that the consumer has one week to rescind under TILA, which is not the case.  The provision of an ostensibly longer rescission period may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of §1635.

**ANSWER:** **Because this paragraph states legal conclusions, no answer is required. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

82.     Furthermore, it is misnamed, because it only gives six days to cancel, not a week. Ameriquest's own staff finds it necessary to prepare on a monthly basis a list of cancellation period expiration dates.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 82 and on that basis denies such allegations.**

83.     The provision of inconsistent and confusing notices of right to cancel violates 15 U.S.C. §1635 and 12 C.F.R. §226.23.

**ANSWER:** **Because this paragraph states legal conclusions, no answer is required. If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

84.     The loan imposed a prepayment penalty. See note, attached as Exhibit E, and mortgage, Exhibit F.

**ANSWER:** **The referenced document speaks for itself; therefore no answer is required. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

85.     The Jeffresses were directed to make payments to AMC Mortgage Services, Inc., and then to Citi Residential Lending, Inc., and subsequently to American Home Mortgage Servicing, Inc.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 85 and on that basis denies such allegations.**

86.     After Scott and Pamela Jeffress filed this lawsuit, defendant AMC stopped sending them monthly statements.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 86 and on that basis denies such allegations.**

87.     Before filing suit, plaintiffs made their monthly payments on line.  After filing suit, Ameriquest and/or AMC froze their access to their on-line account, and an on-line message directed them to call the President's office.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 87 and on that basis denies such allegations.**

88.     After the lawsuit was filed, defendant AMC only permitted and permits plaintiffs to make their payments via "check-by-phone," and AMC has charged them an extra fee each time plaintiffs have made a payment.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 88 and on that basis denies such allegations.**

89.     In order to make a payment, plaintiffs have to call the President's office at Ameriquest and wait several minutes before a representative will speak with them.  On information and belief, these phone calls are recorded.

**ANSWER:     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 89 and on that basis denies such allegations.**

90.     On information and belief, Deutsche Bank National Trust Company, N.A. holds legal title to Scott and Pamela Jeffress's loan, as Trustee.  Ameriquest Mortgage Securities, Inc., is the beneficial owner of plaintiffs' loan under Asset Backed Pass Through Certificates, Series 2005-R7 Under the Pooling and Servicing Agreement Dated as of August 1, 2005, Without Recourse.

**ANSWER:** **Defendant admits that it is trustee for Ameriquest Mortgage Securities, Inc. Asset-Backed Pass-Through Certificates, Series 2005-R7, under the Pooling and Servicing Agreement dated as of August 1, 2005, which includes the Plaintiffs' loan. Defendant denies the remaining allegations in paragraph 90.**

91.    In the event that Ameriquest Mortgage Securities, Inc., does not own plaintiffs' loan or Deutsche Bank National Trust Company, N.A. does not hold title, (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-100.

**ANSWER:** **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 91 and on that basis denies such allegations.**

## COUNT I – TILA

92.    Plaintiffs Scott Jeffress and Pamela Jeffress incorporate all preceding paragraphs by reference.

**ANSWER:** **Defendant incorporates its answers to all preceding paragraphs in response to this paragraph.**

93.    Defendant Ameriquest Mortgage Company violated TILA and Regulation Z by failing to provide notices of right to cancel that were clear, conspicuous or consistent with the forms and regulations of the Federal Reserve Board.

**ANSWER:** **Because this paragraph states legal conclusions, no answer is required. If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

94.    Plaintiffs are entitled to rescind their loans and to recover statutory damages.

**ANSWER:** **Because this paragraph states legal conclusions, no answer is required. If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

a.    A judgment voiding plaintiffs' mortgages, capable of recordation in the public records;

b. Statutory damages for failure to rescind;

c. Attorney's fees, litigation expenses and costs of suit;

d. Such other or further relief as the Court deems proper.

**ANSWER:** **Because this paragraph states legal conclusions, no answer is required.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

## COUNT II - ECOA

95. Plaintiffs Scott Jeffress and Pamela Jeffress incorporate all preceding paragraphs by reference.

**ANSWER:** **Defendant incorporates its answers to all preceding paragraphs in response to this paragraph.**

96. Plaintiffs Scott Jeffress and Pamela Jeffress were applicants within the meaning of 15 U.S.C. §1691a(b) and Regulation B (which defines "applicant" to include persons who have received credit).

**ANSWER:** **Because this paragraph states legal conclusions, no answer is required.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

97. Ameriquest violated 15 U.S.C. §1691(d) by refusing to grant credit to plaintiffs Scott Jeffress and Pamela Jeffress on the terms requested and/or promised and failing to provide plaintiffs with written notices of adverse action, within 30 days of application, stating the specific reasons for such action.

**ANSWER:** **Because this paragraph states legal conclusions, no answer is required.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

98. As a result of Ameriquest's conduct, plaintiffs Scott Jeffress and Pamela Jeffress have suffered actual damages, and are entitled to recover such actual damages as well as punitive damages, equitable and declaratory relief, costs and attorney fees.

**ANSWER:**     **Because this paragraph states legal conclusions, no answer is required.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

    a.    Actual and statutory and punitive damages according to proof;

    b.    Reasonable attorneys' fees and costs; and

    c.    Such other and further relief the court deems proper and just.

**ANSWER:**     **Because this paragraph states legal conclusions, no answer is required.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

## COUNT III - ECOA

99.     Plaintiffs Scott Jeffress and Pamela Jeffress incorporate all preceding paragraphs by reference.  Their claims under this Count are against defendants Ameriquest and AMC.

**ANSWER:**     **Because Count III is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant incorporates its answers to all preceding paragraphs in response to this paragraph.**

100.     Plaintiffs were applicants within the meaning of 15 U.S.C. §1691a(b).

**ANSWER:**     **Because Count III is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 100 and on that basis denies such allegations.**

101.     By filing this lawsuit in good faith pursuant to the Consumer Credit Protection Act, plaintiffs were and are engaged in a statutorily protected activity.

**ANSWER:**     **Because Count III is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 101 and on that basis denies such allegations.**

102.    As a result of filing this lawsuit, plaintiffs have suffered and continue to suffer adverse actions at the hands of defendants.  Ameriquest and AMC have, in ways detailed above and in other ways, taken retaliatory action against these and other plaintiffs and their accounts.  These actions constitute "an unfavorable change in the terms of an account that does not affect all or a substantial portion of a class of the creditor's accounts." 12 C.F.R. § 202.2 (c)(1)(ii).

**ANSWER:    Because Count III is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 102 and on that basis denies such allegations.**

103.    A direct causal connection exists between plaintiffs' filing suit and defendants' subsequent treatment of their accounts, as detailed above.

**ANSWER:    Because Count III is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 103 and on that basis denies such allegations.**

104.    Plaintiffs were current and have remained current on their accounts throughout the time of defendants' adverse actions.

**ANSWER:    Because Count III is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 104 and on that basis denies such allegations.**

105.    As a result of defendants' conduct, plaintiffs have suffered actual damages and are entitled to recover actual damages as well as statutory damages, punitive damages, equitable and declaratory relief, costs and attorney fees.

**ANSWER:    Because Count III is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 105 and on that basis denies such allegations.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

a.  Actual and statutory and punitive damages according to proof;

b.  Reasonable attorneys' fees and costs;

c.  Injunctive relief, if the practices complained of do not cease immediately; and

d.  Such other and further relief the court deems proper and just.

**ANSWER:  Because Count III is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

## COUNT IV – BREACH OF CONTRACT

106.  Plaintiffs incorporate all preceding paragraphs by reference.  This claim is against Ameriquest only.

**ANSWER:  Because Count IV is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant incorporates its answers to all preceding paragraphs in response to this paragraph.**

107.  Defendant Ameriquest contracted and undertook to provide a discounted interest rate if plaintiffs paid a loan discount fee.

**ANSWER:  Because Count IV is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 107 and on that basis denies such allegations.**

108.  However, no plaintiff received a discounted rate.

**ANSWER:  Because Count IV is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 108 and on that basis denies such allegations.**

109.  Ameriquest thereby breached its agreement.

**ANSWER:**    **Because Count IV is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 109 and on that basis denies such allegations.**

110.    Plaintiffs were damaged as a result.

**ANSWER:**    **Because Count IV is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 110 and on that basis denies such allegations.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendant for:

    a.    Appropriate damages;

    b.    Costs.

    c.    Such other or further relief as the Court deems appropriate.

**ANSWER:**    **Because Count IV is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

### COUNT V – INDIANA DECEPTIVE CONSUMER SALES ACT

111.    Plaintiffs Scott Jeffress and Pamela Jeffress incorporate all preceding paragraphs by reference. This claim is against Ameriquest only.

**ANSWER:**    **Because Count V is directed at Defendants other than Deutsche Bank, no answer is required. If an answer is required, Defendant incorporates its answers to all preceding paragraphs in response to this paragraph.**

112.    Ameriquest engaged in fraud, deceit and material misrepresentation, in violation of Indiana Deceptive Consumer Sales Act, Burns Ind. Code Ann. § 24-5-0.5-2 et seq. by engaging in "bait and switch" practices, by promising the Jeffresses 6.99% fixed interest rate

after obtaining sufficient financial information to provide an accurate quote, then switching

plaintiffs to a 8.99% fixed interest rate at the closing.

> **ANSWER:** **Because Count V is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 112 and on that basis denies such allegations.**

113. The Jeffresses were induced to transact with Ameriquest by means of this misrepresentation.

> **ANSWER:** **Because Count V is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 113 and on that basis denies such allegations.**

114. These acts and representations were deceptive as to the subject matter of a consumer transaction, i.e., the terms of the loan and the cost of the loan.

> **ANSWER:** **Because Count V is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 114 and on that basis denies such allegations.**

115. Ameriquest has not cured or offered to cure its deceptive acts and representations.

> **ANSWER:** **Because Count V is directed at Defendants other than Deutsche Bank, no answer is required. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 115 and on that basis denies such allegations.**

116. Ameriquest's act and representations are incurable deceptive acts and misrepresentations.

> **ANSWER:** **Because Count V is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without**

knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 116 and on that basis denies such allegations.

117.    Ameriquest's deceptive acts and misrepresentations were willful.

**ANSWER:**    **Because Count V is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 117 and on that basis denies such allegations.**

118.    The Jeffresses suffered actual damages as the proximate result of Ameriquest's deceptive acts and representations. § 24-5-0.5-4(a).

**ANSWER:**    **Because Count V is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 118 and on that basis denies such allegations.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

a.    Actual damages;

b.    Increased damages for willful conduct;

c.    A voiding or limiting of Ameriquest's note and mortgage with the Jeffresses and Ms. Goods.

d.    Restitution;

e.    Attorney's fees, costs and litigation expenses; and

f.    Any other or further relief that the Court deems just.

**ANSWER:**    **Because Count V is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

## COUNT VI – INDIANA DECEPTIVE CONSUMER SALES ACT

119.    Plaintiffs incorporate all preceding paragraphs by reference.  This claim is against Ameriquest only.

**ANSWER:    Because Count VI is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant incorporates its answers to all preceding paragraphs in response to this paragraph.**

120.    Defendants engaged in fraud, deceit and material misrepresentation, in violation of the Indiana Deceptive Consumer Sales Act, Burns Ind. Code Ann. § 24-5-0.5-2 et seq. by producing and conspiring to produce an inflated, fraudulent appraisal of the Jeffresses' property, in order to make it look like plaintiffs qualified for a higher loan amounts and, thereby, to increase their own fees, commissions and profits.

**ANSWER:    Because Count VI is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 120 and on that basis denies such allegations.**

121.    The Jeffresses were induced to transact with Ameriquest and sign for a mortgage with a high loan-to-value ratio by means of the misrepresentation that, based on the property value, they qualified for the loans.

**ANSWER:    Because Count VI is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 121 and on that basis denies such allegations.**

122.    This representation was deceptive as to the subject matter of a consumer transaction, i.e., the terms of the loans, the cost of the loans, and whether the Jeffresses in fact qualified for the loan.

**ANSWER:    Because Count VI is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without**

**knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 122 and on that basis denies such allegations.**

123. Ameriquest has not cured or offered to cure its deceptive representation.

**ANSWER:** **Because Count VI is directed at Defendants other than Deutsche Bank, no answer is required. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 123 and on that basis denies such allegations.**

124. Ameriquest's representation is an incurable misrepresentation.

**ANSWER:** **Because Count VI is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 124 and on that basis denies such allegations.**

125. Ameriquest's deceptive act was willful.

**ANSWER:** **Because Count VI is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 125 and on that basis denies such allegations.**

126. The Jeffresses suffered actual damages as the proximate result of Ameriquest's deceptive act and representation. § 24-5-0.5-4(a). Ameriquest's misrepresentation of plaintiffs' loan-to-value ratio caused the Jeffresses to enter a loan transaction with Ameriquest for which they did not qualify. Consequently, they are effectively "trapped" in their current mortgage.

**ANSWER:** **Because Count VI is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 126 and on that basis denies such allegations.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

a.　　Actual damages;

b.　　Increased damages for willful conduct;

c.　　A voiding or limiting of Ameriquest's note and mortgage with the Jeffresses and Ms. Goods.

d.　　Restitution;

e.　　Attorney's fees, costs and litigation expenses; and

f.　　Any other or further relief that the Court deems just.

**ANSWER:　Because Count VI is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

## COUNT VII – INDIANA DECEPTIVE CONSUMER SALES ACT

127.　　Plaintiffs Scott Jeffress, Pamela Jeffress, incorporate all preceding paragraphs by reference.  This claim is against Ameriquest only.

**ANSWER:　Because Count VII is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant incorporates its answers to all preceding paragraphs in response to this paragraph.**

128.　　Defendants engaged in fraud, deceit and material misrepresentation, in violation of the Indiana Deceptive Consumer Sales Act, Burns Ind. Code Ann. § 24-5-0.5-2 et seq. by falsely inflating information about the Jeffresses' income in order to make it appear that plaintiffs qualified for a higher loan amount and, thereby, to increase their own fees, commissions and profits.

**ANSWER:　Because Count VII is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 128 and on that basis denies such allegations.**

129.    The Jeffresses were induced to transact with Ameriquest and sign for mortgages by means of the misrepresentation that, based on their income, they qualified for the loans.

**ANSWER:**    **Because Count VII is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 129 and on that basis denies such allegations.**

130.    This representation was deceptive as to the subject matter of a consumer transaction, i.e., the terms of the loan, the cost of the loan, and whether the Jeffresses in fact qualified for the loan.

**ANSWER:**    **Because Count VII is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 130 and on that basis denies such allegations.**

131.    Ameriquest has not cured or offered to cure its deceptive representations.

**ANSWER:**    **Because Count VII is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 131 and on that basis denies such allegations.**

132.    Ameriquest's representation is an incurable misrepresentations.

**ANSWER:**    **Because Count VII is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 132 and on that basis denies such allegations.**

133.    Ameriquest's deceptive act was willful.

**ANSWER:**    **Because Count VII is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 133 and on that basis denies such allegations.**

134.    The Jeffresses suffered actual damages as the proximate result of Ameriquest's deceptive act and representation. § 24-5-0.5-4(a).

**ANSWER:**    **Because Count VII is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 134 and on that basis denies such allegations.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against Ameriquest for:

    a.    Actual damages;

    b.    Increased damages for willful conduct;

    c.    A voiding or limiting of Ameriquest's note and mortgage with the Jeffresses and Ms. Goods.

    d.    Restitution;

    e.    Attorney's fees, costs and litigation expenses; and

    f.    Any other or further relief that the Court deems just.

**ANSWER:**    **Because Count VII is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

## COUNT VIII – COMMON LAW FRAUD

135.    Plaintiffs incorporate all preceding paragraphs by reference.  This claim is against Ameriquest only.

**ANSWER:**    **Because Count VIII is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant incorporates its answers to all preceding paragraphs in response to this paragraph.**

136.    Defendant represented that plaintiffs qualified for the loan based on the appraised value of plaintiffs' property and the amount of their income.

**ANSWER:**    **Because Count VIII is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant is without**

**knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 136 and on that basis denies such allegations.**

137.    Defendant fraudulently inflated the value of plaintiffs' property and the amount of their income.  Therefore, the representations that plaintiffs qualified for the loan and could afford it were also false and fraudulent.

**ANSWER:    Because Count VIII is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 137 and on that basis denies such allegations.**

138.    The value of plaintiffs' property and the amount of their income was information that was material to the terms of their transaction with defendant.

**ANSWER:    Because Count VIII is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 138 and on that basis denies such allegations.**

139.    At the time defendant falsified the property value and income information, it knew that these representations were false.

**ANSWER:    Because Count VIII is directed at Defendants other than Deutsche Bank, no answer is required.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 139 and on that basis denies such allegations.**

140.    Defendant made the representations with the intent that they would be acted upon by plaintiffs.

**ANSWER:    Because Count VIII is directed at Defendants other than Deutsche Bank, no answer is required.  Further, no answer is required because this paragraph states a legal conclusion.  If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 140 and on that basis denies such allegations.**

141.    In reliance on defendant's representations, plaintiffs closed on the loan.

**ANSWER:** **Because Count VIII is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 141 and on that basis denies such allegations.**

142.     As a result of Ameriquest's inflated appraised value, plaintiffs have been injured in that they have been and will continue to be overcharged and are unable to refinance with another company.

**ANSWER:** **Because Count VIII is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 142 and on that basis denies such allegations.**

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against defendant for:

       a.     Actual and compensatory damages;

       b.     Punitive damages; and

       c.     Such other relief as the Court deems appropriate.

**ANSWER:** **Because Count VIII is directed at Defendants other than Deutsche Bank, no answer is required. Further, no answer is required because this paragraph states a legal conclusion. If an answer is required, Defendant denies any wrongdoing and denies any liability to Plaintiffs.**

## AFFIRMATIVE DEFENSES

1.     Plaintiffs' purported cause of action fails to state a claim upon which relief may be granted.

2.     Plaintiffs' claims are barred by the applicable statute of limitations.

3.     Plaintiffs' claims are barred in whole or in part under the doctrine of estoppel, laches and/or waiver.

4.     Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands.

5.     Plaintiffs' claims are barred by the applicable statute of frauds.

6.     Plaintiffs' claims are barred in whole or in part because they have failed to mitigate their damages.

7.     Plaintiffs' claims are barred, in whole or in part, because each and every purported cause of action is uncertain.

8.     Plaintiffs' claims are barred, in whole or in part, because any acts or failure to act on the part of Defendant were excused by the actions of Plaintiffs or others.

9.     Plaintiffs' claims are barred in whole or in part, on the ground that if Plaintiffs were damaged or a statute was violated in any manner whatsoever, such damage or violation, if any, was a direct and proximate result of the intervening and superseding actions on the part of other parties and/or persons or entities and not Defendant, and any such intervening or superseding action of said parties and/or persons or entities bars Plaintiffs' recovery.

10.     Plaintiffs, by their knowledge, statements and/or conduct, have consented and/or acquiesced to the alleged acts and/or omissions of Defendant described in the Complaint.

11.     As to each cause of action, Defendant is entitled to an offset.

12.     Plaintiffs' claims are barred in whole or in part, because Defendant has committed no act or omission causing any damage to Plaintiffs.

13.     Plaintiffs' claims are barred in whole or in part, because Plaintiffs expressly, ostensibly and/or implicitly authorized or ratified the transactions at issue.

14.     Plaintiffs' claims are barred in whole or in part, because Plaintiff would be unjustly enriched if allowed to recover on the Complaint.

15.     Plaintiff's claims are barred in whole or in part, because they are a member of a prior settlement or class that released some or all claims alleged by Plaintiffs.

16.     Defendant alleges that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses. Defendant reserves its right to file an amended answer asserting additional defenses, and/or to file a counter or cross-complaint in the event that discovery indicates that either is appropriate.

## PRAYER

Defendant prays this court to:

1.     Dismiss Plaintiffs' Complaint;

2.     Enter Judgment for Defendant and against Plaintiffs in this action;

3.     Award Defendant its costs of suit; and

4.     Grant Defendant any and all further and additional relief as it deems just and appropriate.

Respectfully submitted,

DATED:   April 8, 2010                    By:  /s/ Bernard E. LeSage
                                               *Attorneys for Deutsche Bank National*
                                               *Trust Company, as Trustee*

                                          Bernard E. LeSage, Esq.
                                          Sarah K. Andrus, Esq.
                                          BUCHALTER NEMER, a P.C.
                                          1000 Wilshire Boulevard, Suite 1500
                                          Los Angeles, CA 90017-2457
                                          Telephone: (213) 891-0700
                                          Facsimile: (213) 896-0400

CERTIFICATE OF SERVICE

I, Bernard E. LeSage, hereby certify that on this 8th day of April, 2010, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: _____/s/  Bernard E. LeSage_____

IN RE AMERIQUEST CO. MORTGAGE LENDING PRACTICES LITIGATION
MDL No. 1715
Lead Case No. 05-cv-07097

**SERVICE LIST**

Alexander Edward Sklavos
Law Offices of Alexander E. Sklavos, PC
1 Old Country Road
Suite 200
Carle Place, NY 11514

Alexandra van Nes Dolger
Day Berry and Howard LLP
One Canterbury Green
Stamford, CT 06901

Cheryl Talley
1577 Deer Path Lane
Franklin Grove, IL 61031

Cynthia Casteel
705 9th Street, NW
Huntsville, AL 35805

Daniel J Whitaker
113 Daventry Drive
Calera, AL 35040

David J. Tarpley
Legal Aid Society of Middle Tennessee
300 Deaderick Street
Nashville, TN 37201

Estella Byrd
910 Woodall Lane
Huntsville, AL 35816

Gregory Day
6345 Stablewood Way
Lithonia, GA 30058

Jackie Champion
1372 Myrick Road
Elmore, AL 36025

John Cseh
12800 Shaker Boulevard , Suite U12
Cleveland, OH 44120

John J. McDonough
Cozen O'Connor
45 Broadway, Suite 1600
New York, NY 10006

John M. Gambrel
Gambrel & Wilder Law Offices, PLLC
1222 1/2 N. Main St., Suite 2
London, KY 40741

John Robert King
Law Office of John King
3409 N. 10th Street, Suite 100
McAllen, TX 78601

Jonathan Lee Riches
#40948-018
Lexington
P. 0. Box 14500
Lexington, KY 40512

Joseph Abruscato
607 East Barksdale Drive
Mobile, AL 36606

Joseph E. Nealon
The Law Office of Joseph E. Nealon
45 Lyman Street, Suite 28
Westborough, MA 01581

Janice Long
2400 Scarlette Lane, Southeast
Conyers, GA 30013

Lisa Parker
425 Water Street
Prattville, AL 36067

IN RE AMERIQUEST CO. MORTGAGE LENDING PRACTICES LITIGATION
MDL No. 1715
Lead Case No. 05-cv-07097

**SERVICE LIST (cont.)**

Michael Swistak
Swistak and Levine, P.C.
304445 Northwest Highway
Farmington, MI 48334-3174

Michael S. Deck
Law Office of John King
3409 N. 10th Street
McAllen, TX 78501

Richard P. Colbert
Day, Berry & Howard
One Canterbury Green
Stamford, CT 06901-2047

Robert W. Smyth , Jr.
Donohue, Brown, Mathewson & Smyth
140 South Dearborn Street
Suite 700
Chicago, IL 60603

Steven S. Elliott
12 E. Exchange Street
8th Floor
Akron, OH 44310

Walter J. Manning
1260 Greenwich Avenue
Warwick, RI 02886

William Champion
1372 Myrick Road
Elmore, AL 36025