IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Hon. Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO:<br><br>BORROWER CLASS PLAINTIFFS' ACTIONS | |

**MEMORANDUM IN SUPPORT OF AWARD OF ATTORNEYS' FEES AND EXPENSES AND APPROVAL OF NAMED PLAINTIFFS' SERVICE AWARDS**

**INTRODUCTION**

The settlement of this complex mortgage lending MDL was the result of years of investigation, litigation and mediated settlement negotiations conducted by Co-Lead Counsel and scores of experienced class action attorneys across the country beginning in 2004. More than seven hundred thousand borrowers are involved. Class counsel prosecuted this case while the subprime mortgage lending industry crashed, with substantial litigation risk. The defense was tirelessly aggressive. The benefits provided for under the Settlement provide meaningful relief to borrowers who otherwise have little chance of any recovery. As detailed below, the attorneys' fees, expenses and service awards for the Named Plaintiffs are fair and reasonable and should be approved.

Class Plaintiffs ask this Court to award attorneys' fees and expenses in the amount of $7.33 million (plus accrued interest) to Class Counsel representing 33.3% of the $22 million fund. Fees in the range of one-third of the common fund are routinely awarded in the Seventh Circuit and are eminently reasonable here for reason including that:

- 28 class action cases were consolidated in this Court by the Judicial Panel on Multidistrict Litigation; Joint Declaration of Counsel ("Joint Decl.") at ¶ 13.
- the case was aggressively litigated over a period of more than five years, Joint Decl. at ¶ 120.
- That Plaintiffs' counsel, as a group, expended more than $12 million dollars in time and expenses; Bowman Omnibus Declaration ("Bowman Omnibus Decl.") at ¶ 4. and
- Fees will be divided among the more than more than 35 law firms that participated in the underlying class litigation. Bowman Omnibus Decl. Ex.'s A-S.

More than 712,000 Class Members were notified of the requested fee and expense award and no class member with proper standing objected.[1] For the reasons stated herein, Plaintiffs' conservative request for an award of fees and expenses in the amount of $ 7.33 million plus interest accrued thereon should be granted.

Class Plaintiffs also request that the Court approve service fees of $7,500 for each of the Named Plaintiffs (co-owners being treated as a single Plaintiff). Such awards are reasonable in light of the long duration of the case and the significant risk taken and the contributions made byoeach of the Named Plaintiffs to the litigation of this matter. No objections to the proposed service awards were received.

    **I.    THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE WELL BELOW COUNSELS' COLLECTIVE LODESTAR AND ARE FAIR AND REASONABLE IN THE CIRCUMSTANCES.**

---

[1] The only objection, that of Steven and Patricia Dye, is negated by the fact that they also opted out and therefore lacked standing to make the objection as their interests will not be affected by the Court's ruling on fees. See Section I.C, *supra*.

### A. Class Counsels' Extensive Litigation and Mediation Efforts Exceed the Value of the Fees Requested

Class Counsels' extensive litigation and mediation efforts resulted in more than $12 million dollars in time and expenses being reasonably expended by all Class Counsel to ultimately achieve the Settlement presented to this Court. Bowman Omnibus Decl. at ¶ 4. Such extensive efforts were required and reasonable given the complexity of this MDL proceeding and the complications associated with resolving 28 class actions from around the country against a set of operationally and financially deteriorating Defendants. Notably, the Settlement was reached only after three years of hard-fought litigation followed by two years of extensive arms-length mediation with the reputable JAMS mediator Hon. Daniel Weinstein (Ret.). Indeed, in the words of the Honorable Daniel Weinstein (Ret.), the actions resolved by the Settlement "presented legal, factual and practical issues as complicated as any that I have ever encountered." Weinstein Decl. at ¶ 3. The extensive work performed by Class Counsel is described in detail in the Joint Declaration of Lead Counsel and includes, but is not limited to, the following:

- Presuit conferences with clients and extensive presuit investigations of Ameriquest practices; Joint Decl. at ¶¶ 8-10, 13.

- Filing of cases and discovery and development of cases prior to the creation of the MDL; Joint Decl. at ¶ 9, 13, 82.

- Motion Practice to protect the rescission rights of borrowers who were provided with incomplete or incorrect notices of right to cancel; Joint Decl. at ¶¶ 66-68.

- Negotiation and Establishment of a Standstill Agreement protecting the rescission rights of borrowers and staying certain pending foreclosures; Joint Decl. at ¶¶ 69-

70.

- Negotiations expanding the Standstill Agreement to protect dozens of additional borrowers throughout the proceeding; Joint Decl. at ¶ 71.

- Extensive Legal and factual evaluation of claims filed in 28 unique class action complaints for consolidation in the Borrowers' Consolidated Class Action Complaint ("CCAC"); Joint Decl. at ¶¶ 13-22.

- Extensive legal research and briefing in prevailing against Ameriquest's Motion to Dismiss the CCAC; Joint Decl. at ¶¶72-74.

- Creation and development of litigation plans, including extensive written discovery; Joint Decl. at ¶¶ 75-77.

- Obtaining documentary evidence through formal discovery requests, FOIA request; and independent investigations; Joint Decl. at ¶¶ 75-77, 82-83.

- Review of hundreds of thousands of pages of paper documents, including loan documents, policies and procedures, and several terabytes of computerized data; Joint Decl. at ¶ 77.

- Taking of 15 depositions, including depositions of Ameriquest employees, officers, directors, and managing agents; Joint Decl. at ¶ 78.

- Subpoenaing and obtaining testimony from Ameriquest's former Presidents and CEOs, Kirk Langs and Wayne Lee, as well as other former Ameriquest employees; Joint Decl. at ¶ 78 .

- Engaging in dozens of discovery conferences and substantial discoveyr practice; Joint Decl. at ¶¶ 79-80.

- Conducting informal discovery, including interviewing borrowers, former

Ameriquest employees, loan brokers, settlement service providers, and appraisers; Joint Decl. at ¶ 83.

- Gathering information and evidence and seeking leave to amend the CCAC to join Roland Arnall, Ameriquest's founder as a Defendant; Joint Decl. at ¶ 86

- Filing pleadings opposing Roland Arnalls' Motion to Dismiss; Joint Decl at ¶ 87.

- Gathering information and evaluating the impact of Ameriquest's deteriorating operations and financial condition on an on-going basis; Joint Decl. at ¶¶ 84-85, 93.

- Selection of the mediator retired San Francisco Superior Court Judge Daniel Weinstein, at JAMS in San Francisco, California and development of mediation materials and briefs; Joint Decl. at ¶ 88; Weinstein Decl. at ¶ 4.

- Preparation and attendance at 12 in person mediation conferences in San Francisco and New York over a two and one half year period; and preparation and attendance at dozens of mediation phone conferences; Joint Decl. at ¶ 90; Weinstein Decl. at ¶ 4.

- Engaging in dozens of hours of in-person meetings and telephone conferences between just the parties in furtherance of the mediation process; Joint Decl. at ¶ 91; Weinstein Decl. at ¶ 5.

- Obtaining and reviewing substantial information about the deteriorating economic condition of Ameriquest and related companies and the nature and timing of transfers into and out of the Ameriquest companies; Joint Decl. at ¶ 93.

- Reviewing various formally and informally obtained information about the liability of certain third party entities, including without limitation, Roland and Dawn Arnall;

5

Joint Decl. at ¶ 94.

- Evaluating legal theories including fraudulent transfers claims against the Arnalls and other persons and corporations; Joint Decl. at ¶ 94.

- Reviewing considerable information about Ameriquest's assets, insurance policies, and revenue projections; Joint Decl. at ¶ 84.

- Engaging non-party servicers in the mediation process who held current portfolios of Ameriquest originated loans; Joint Decl. at ¶ 95.

- Reaching an agreement in principal in May 2009 concerning the economic terms of a Settlement for the Class contingent on additional data review, development of a process for identifying class members from available data and development of a Distribution Plan that considered the relative harm suffered by class members and the strengths and weaknesses of the claims of members of each class; Joint Decl. at ¶ 96.

- Work with data and experts in the development of Distribution Plan; Joint Decl. at ¶¶ 112-119.

- Preparation of Settlement Documents and Motions and Briefs in support of Preliminary Approval; Joint Decl. at ¶ 124.

- Compliance with the Preliminary Approval Order; Joint Decl. at ¶ 26.

- Preparation of all Final Approval Papers, compliance with the Distribution Plan and on-going work with class members. Joint Decl. at ¶ 122.

Against this backdrop, the attorneys' fees requested, which are well below the lodestar amount even without the anticipated additional work to come, are modest and eminently reasonable. The major expenses in this litigation included, without limitation, mediator fees, expert fees, deposition costs and travel costs for court hearings and depositions. It was

necessary to incur these expenses for the proper prosecution of this case.

### B. The Requested Fees and Expenses Meet the Seventh Circuit's Standards for Approval

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Gaskill v. Gordon,* 160 F.3d 361, 362 (7th Cir. 1998); *Florin v. Nationsbank, N.A.,* 34 F.3d 560, 566 (7th Cir. 1994); *In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) *("Cont'l I"); In re Cont'l Ill. Sec. Litig.,* 985 F.2d 867, 868 (7th Cir. 1993); *Kendrick v. Atcor, Inc.,* 1988 U.S. Dist. LEXIS 8389 (N.D. Ill. 1988). In *Taubenfeld v. Aon Corp.,* 415 F.3d 597 (7th Cir. 2005), the Seventh Circuit provided guidance for the award of attorneys' fees in a securities class action:

> "[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." Although it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante,* courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions.

*Id.* at 599 (citation omitted). In affirming an award of fees equaling 30% of the $7.25 million settlement fund plus expenses, the *Aon* court considered, among other things, the following factors: (1) "awards made by courts in other class actions" which "amount[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Id.* at 600. In considering a fee request, the court must do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th

7

Cir. 2001). As discussed below, 33% of the Cash Settlement Fund which includes expenses in this case is the most appropriate method to "recreate the market" given the nature and scope of the Litigation, the time spent and expenses incurred in its prosecution and the substantial result achieved for the Class.

Here, in seeking the Court's application of the percentage-of-the-fund approach to awarding attorneys' fees, as opposed a lodestar approach, Class Counsel takes the most conservative approach given that the time and expenses expended by Class Counsel totaling $12,033,990.00 grossly exceeds the requested amount. Notably, "The decision of whether to use a percentage method remains in the discretion of the district court." *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975 (7th Cir. 1991). However, Class Counsel recognizes that "'[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class,' particularly where that percentage of the benefit approach replicates the market." *Cooper v. IBM Pers. Pension Plan,* No. 99-829, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005). The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *See Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).

In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff,* 786 F.2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 333 (3d Cir. 1998). If this case were an individual case, the customary fee arrangement would be contingent, on the percentage basis, and in the range of 331/3% to 40% of the recovery. *See Kirchoff* at 323 (observing that "40% is the customary fee

in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Limited Partnership v. Price Waterhouse, LLP,* 2001 WL 1568856 at *4 (N.D. Ill 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding class counsel the requested one-third of the common fund); *Phemister v. Harcourt Brace Jovanovich, Inc.,* No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40–41 (N.D. Ill. Sept. 14, 1984) ("Contingent fee arrangements in non-class action damage lawsuits use the simple method of paying the attorney a percentage of what is recovered for the client. The more the recovery, the more the fee. The percentages agreed upon vary, with one-third being particularly common."); *In re Prudential-Bache Energy Income P'ships Sec. Litig.,* MDL No. 888, 1994 U.S. Dist. LEXIS 6621, at *4 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases."); *In re Shell Oil Refinery,* 155 F.R.D. 552, 571 (E.D. La. 1993) ("The customary contingency fee is between 33 1/3% and 40%.").

Additionally, "[T]here are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin,* 34 F.3d at 566.

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,* 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Cont'l I,* 962 F.2d at 573 (noting that it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon,* 942 F. Supp. 382, 386 (N.D. Ill. 1996).

9

This District has noted that "the Seventh Circuit strongly endorsed the percentage method of computing appropriate fee awards in class action common fund cases." *See Goldsmith v. Tech. Solutions Co.,* 1995 U.S. Dist. LEXIS 15093, *24 (N.D. Ill. 1995) (other citations omitted) (approving 33.33% fee award), *citing In the Matter of Cont 'l Ill. Sec. Litig.,* 985 F.2d 867 (7th Cir. 1993). This District has also recognized that a fee award of "33 1/3% is in fact in line with that which has, in previous cases, been approved," and "[t]hirty three percent appears to be in line with what attorneys are able to command on the open market in arm's length negotiations with their clients." *Id.* at 26–27. Notably, in *In re Abbott Laboratories Securities litigation,* 1995 WL 792083, *1 and *11 (N.D. Ill. July 3, 1995) (J. Aspen) this Court recognized the appropriateness of a fee of nearly 1/3 of the common fund in complex litigation and the historic approval of such fees in the 7th Circuit. See *also In re Lithotripsy Antitrust Litig.,* 2000 U.S.Dist. LEXIS 8143, **6-7 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of the attorneys' fee awards in class-action anti-trust lawsuits."); *In re Spyglass, Inc. Sec. Litig.,* No. 99-c-5 12 (N.D. Ill. March 24, 2000) and *In re Spyglass, Inc. Sec. Litig.,* No. 99-cv-0512 (N.D. Ill. May 31, 2000) (33% fee award approved); *Rehm v. Eagel Fin. Corp.,* 1998 U.S. Dist. LEXIS 20015 (N.D. Ill. Dec. 8, 1998) (approving 33.3% fee request), *aff'd Rehm v. EagelFin. Corp.,* No. 96-2455 (N.D. Ill. Dec. 8, 1998) ("the 7th Circuit Court of Appeals, as well as the majority of other circuit courts have approved the use of the percentage of the fund method to award attorneys' fees in class action/common fund cases");; *see* <u>*also*</u> *Taubenfeld v. Aon Corp.,* 415 F.3d 597,598, 600 (7th Cir. 2005) (affirming fee award of 33.3%). *See also* Ex. A, Chart of Securities Class Actions awarding fees of 33.3% of the Settlement Fund.

The requested one-third fee award here also comports with similar fees awarded by

district courts in class actions in other circuits. *See, e.g.*, *In re Marsh ERISA litigation,* 2010 WL 451028 (S.D. N.Y. Jan. 29, 2010) ("The requested fee of $11,665,500 represents one-third of the recovery and about 87.6% of the lodestar. It is fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere."); *In Re Marine Hose Antitrust Litigation,* Jan. 13, 2010, 07-cv-21613 (Master Docket No. 08-MDL-1888 S.D. FL.) (found "that the percentage of the fund methods is appropriate for calculating attorneys' fees . . ." and awarded 33% (the amount requested) of the principal amount of the Settlement Fund and accrued interest.); *cf.* Gaskill, 942 F. Supp. at 388 (N.D. Ill.) (38% award).

Both the market based percentage approach and the lodestar cross-check support the reasonableness of this request. To date, Co-Lead Class Counsel alone has expended over 14,813.10 hours of professional time on this case to date. Bowman Omnibus Decl. at Ex.'s A-C. The total lodestar value of this time, and the additional time of all Class Counsel, is $11,243,050.41. Bowman Omnibus Decl. at ¶ 4. Each of Plaintiffs' Class Counsel has executed declarations attesting to their respective firm's and co-counsel's firm's services rendered and the lodestar and expenses which are submitted to the Court this same date. Bowman Omnibus Decl. at Ex.'s A-S. Moreover, Co-Lead counsel each anticipate that their firms will spend at least 100 additional hours of time managing the remainder of the settlement process even in the absence of any appeals. Bowman Omnibus Decl. at Ex.'s A-C. Class Counsels' lodestar in this complex multi-district class action far exceeds their fee request demonstrating the conservative nature of the request and its eminent reasonableness.

Finally, Class Counsel's request for 33.3% of the common fund covers litigation expenses as well as fees which is unusual in a common fund award. Typically, class counsel

seeks the payment of litigation expenses over and above a percentage award for attorneys' fees. Here, again, taking a more conservative approach than is required under this Circuit's precedent, Class Counsel proposes to absorb the expenses of litigation as a part of the 33.3% common fund fee award requested. *See Great Neck Capital*, 212 F.R.D. at 412. ("The paying arms length market typically reimburses lawyers for expenses . . .") *citing In re Synthroid*, 264 F.3d 722; *Spicer*, 844 F. Supp. At 1256 (granting expenses award). While engaging in the strategic litigation and investigation described in the memorandum in support of final approval and in the Joint Declaration of Counsel, Class Counsel incurred reasonable and necessary expenses exceeding $790,939.65. Bowman Omnibus Declaration at ¶ 4. Accordingly, this Court's reasonable award to Class Counsel of $7.33 million with accrued interest for attorneys' fees and expenses will actually result in a "fee award" of less than 30% of the common fund, and represent only 65% of Class Counsels' lodestar.

### C. No Class Member Articulated Any Legally or Factually Relevant Objection to the Attorneys' Fees and Expenses Requested

As noted in the memorandum in support of final approval of the Settlement, out of over 712,000 Class Members, only one objection to counsel fees and costs, that of Steven and Patricia Dye, is even arguably pending. *See* Plaintiffs' Memorandum in Support of Final Approval of Settlement,[2] The Dye objection, to the extent it addresses attorneys' fees, was filed by Class Members also seeking exclusion. *See* Martin Decl. Ex. C. Those Class Members seeking exclusion lack standing to object. See *Carnegie v. Household Int'l, Inc.*, 445 F. Supp. 2d 1032, 1035 (N.D. Ill. 2006) (finding that an individual who was not a class member lacked standing to contest the settlement) (citing Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989)); see also *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993) (holding that those who opt out of a

---

[2] The objections filed by Frank and Wendy Platzar, Terrell Beard, Lesia Beard, Jeannine Schweinberg and Jeffrey Parra were withdrawn. See Docket Nos. 3481, 3483, 3486, 3487, 3488.

class action lack standing to object to the settlement, because those who fully preserve their legal rights by excluding themselves from a class action settlement cannot challenge an order approving an agreement resolving the legal rights of others). Regardless, the Dyes offer no legal or factual basis for their position opposing the requested fees short of speculation and conjecture about the work performed. Such objection, to the extent it can fairly be read as one here, is readily addressed by the Joint Declaration of Co-Lead Counsel, which sets forth the substantial work performed, and the Bowman Omnibus Declaration attaching information regarding the thousands of hours invested by the MDL class action firms in litigating this case. Moreover, this objection is especially meritless here, where Class Counsels' request for attorneys' fees and expenses not only is far short of their collective lodestar, but also falls well within the range customarily approved in this Circuit .

Based on the foregoing, the Court should grant Class Plaintiffs' request for attorneys' fees (inclusive of expenses) in the amount $7.33 million (plus accrued interest) or 33.3 % of the Settlement Fund.

## II. THE COURT SHOULD ALSO APPROVE THE REQUESTED SERVICE AWARDS

Class Counsel requests that the Court approve service awards in the amount of $7,500 for the Named Plaintiffs in the consolidated cases (filing co-owners being treated as a single Plaintiff). The Notice informed the Class of this request and no objections to proposed service awards were received.

Courts have approved service awards on the basis that Named Plaintiffs in class actions take risks and perform services for the benefit of the Class. *See* Albert Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.). Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce

him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." *In re Cont'l*, 962 F.2d 571. Since *In re Cont'l*, service awards for named plaintiffs in class actions have been regularly granted and upheld in this Circuit. *See Cook,* 142 F.3d 1016 (7th Cir. 1998). The Named Plaintiffs here invested time and energy working with counsel, assisting them in understanding the nature of Ameriquest's conduct, and carried to their potential detriment and the benefit of the Class the substantial risk of non-recovery as Ameriquest ceased lending operations and went out of business during the pendency of the class cases. For their willingness to continue to represent the Class in such circumstances and for their ultimately fruitful efforts on behalf of the Class, the Named Plaintiffs have each earned the requested service award. Joint Decl. at ¶ 123.

### III.  CONCLUSION

Based on the foregoing and based on the matters also presented to this Court in Plaintiffs' Memorandum in Support of Final Approval of Settlement, Class Plaintiffs respectfully request that this Court approve their request for an award of attorneys fees and expenses in the amount of $ 7.33 million plus accrued interest and approve the award of service fees to named Plaintiffs as set forth herein.

Dated: April 8, 2010                                                                 Respectfully submitted,


*/s/Gary Klein*                                                                          */s/Kelly M. Dermody*
Gary Klein                                                                                 Kelly M. Dermody
Shennan Kavanagh                                                             LIEF, CABRASER, HEIMANN &
RODDY KLEIN & RYAN                                                    BERNSTEIN, LLP
727 Atlantic Ave., 2nd Floor                                          275 Battery Street, 29th Floor
Boston MA  0211                                                                    San Francisco, CA  94111-3339
Telephone: (617) 357-5500                                                 Telephone (415) 956-1000

                Rachel Geman
                LIEF, CABRASER, HEIMANN &
                BERNSTEIN, LLP
                250 Hudson Street, 8th Floor
                New York, NY  10013-1423
                Telephone: (212) 355-9500


*s/Jill Bowman*
Jill Bowman
Terry Smiljanich
JAMES HOYER NEWCOMER SMILJANICH
One Urban Centre, Suite 550
4830 West Kennedy Blvd.
Tampa, FL  33609-2589
Telephone:  (813) 286-4100

           *Plaintiffs' Co-Lead Counsel*

Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  (312) 332-3400

*Plaintiffs' Liaison Counsel*