# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Hon. Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO: | |
| BORROWER CLASS PLAINTIFFS' ACTIONS | |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY BORROWER PLAINTIFFS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR APPROVAL OF PAYMENT OF ATTORNEYS' FEES, COSTS AND SERVICE PAYMENT TO CLASS REPRESENTATIVES

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF THE CASE......................................................................... 2

III.   THE TERMS OF THE SETTLEMENT ......................................................... 4

    A.    Economic Relief.................................................................................... 4

         1.    Settlement Fund ......................................................................... 4

         2.    Distribution Plan And Settlement Payments................................ 4

         3.    Foreclosure Prevention Services.................................................. 6

         4.    Cy Pres ....................................................................................... 7

    B.    Notice And Administration................................................................... 7

    C.    Opt Out Opportunity And Right to Object ............................................. 8

    D.    Release ................................................................................................. 9

    E.    Named Plaintiffs' Service Payments, Attorneys' Fees and
         Expenses ............................................................................................. 9

IV.   THE SETTLEMENT SHOULD BE APPROVED IN ALL RESPECTS ........... 10

    A.    The Settlement Is Fair, Reasonable And Adequate ................................. 11

         1.    Application of the Armstrong Factors Shows The
              Settlement Is Fair, Reasonable And Adequate ............................ 12

                a.    The Settlement Offers Substantial Benefit To All
                    Settlement Class Members, Especially When
                    Balanced Against Strength of the Case for Plaintiffs
                    on the Merits ................................................................. 12

                b.    The Settlement is Especially Appropriate Given
                    Ameriquest's Limited Ability to Pay............................... 13

                c.    The Complexity, Length and Expense of Protracted
                    Litigation Makes The Instant Action Appropriate
                    For Settlement................................................................ 14

                d.    The Reaction Of The Class Has Been Positive................ 16

                  e.    The Filed Objections Are Resolved In Whole Or In
                      Part.  To The Extent They Are Not, They Are Non-
                      Meritorious And Unsupported By The Record................ 17

                f.    The Settlement Negotiations Were Conducted at
                    Arm's Length................................................................. 19

- i -

**TABLE OF CONTENTS**
**(continued)**

Page

g.    Co-Lead Class Counsel Believe That The Settlement Is Fair, Reasonable And In The Best Interest Of Settlement Class Members ........................... 20

h.    The Parties Have Conducted Extensive Discovery and Have Vigorously Litigated and Negotiated This Case ........................................................................... 20

2.    All Class Members Were Given Proper And Reasonable Notice .......................................................................... 21

3.    The Distribution Plan Is Fair and Adequate Because Class Members' Payments Are Based on the Relative Value of Their Respective Claims ............................................ 22

B.    Each Settlement Class Meets Rule 23's Criteria And Can Be Certified For Settlement Purposes ........................................... 24

V.    CONCLUSION .................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Andrews v. Chevy Chase Bank,*
    545 F.3d 570 (7th Cir. 2008) ................................................. 16

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
    616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by*
    *Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998)............................. passim

*Berger v. Xerox Ret. Income Guar. Plan,*
    231 F. Supp. 2d 804 (S.D. Ill. 2002)....................................... 14

*Boggess v. Hogan,*
    410 F. Supp. 433 (N.D. Ill. 1975) ......................................... 10

*Carnegie v. Household Int'l, Inc.,*
    445 F. Supp. 2d 1032 (N.D. Ill. 2006) ..................................... 19

*Cook v. McCarron,*
    1997 U.S. Dist. LEXIS 1090 (N.D. Ill. Jan. 22, 1997) ........................ 13

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) .............................................. 14

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
    768 F.2d 884 (7th Cir. 1985), *cert. denied,*
    478 U.S. 1004 (1986)..................................................... 10

*Follansbee v. Discover Fin. Servs.,*
    2000 U.S. Dist. LEXIS 8724 (N.D. Ill. June 14, 2000) ........................ 10

*Fontana v. Elrod,*
    802 F.2d 729 (7th Cir. 1987) ............................................. 21

*Goldsmith v. Tech. Solutions Co.,*
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)................... 10, 12, 14

*Gould v. Alleco, Inc.,*
    883 F.2d 281 (4th Cir. 1989) ............................................. 19

*Hamm v. Ameriquest Mortgage Co.,*
    Nos. 05-3984, 06-3086, 2007 WL 3010973 (7th Cir. Oct. 17, 2007) .................... 16

# TABLE OF AUTHORITIES
## (continued)

Page

*Handy v. Anchor Mortgage Corp.*,
464 F.3d 760 (7th Cir. Sept. 29, 2006) ................................................................. 16

*Hispanics United of DuPage County, et al. v. Vill. of Addison*,
988 F. Supp. 1130 (N.D. Ill. 1997) ................................................................. 10, 12

*In re Agent Orange Prod. Liab. Litig.*,
818 F.2d 179 (2d Cir. 1987) ................................................................. 23

*In re Brand Name Prescription Drugs Antitrust Litig.*,
No. 94 C 897, 1999 WL 639173 (N.D. Ill. Aug. 17, 1999) ................................................................. 24

*In re McDonald's French Fries Litig.*,
257 F.R.D. 669 (N.D. Ill. 2009) ................................................................. 16

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................................................. 10

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*,
117 F. 3d 721 (2d Cir. 1997) ................................................................. 23

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ................................................................. 10, 12, 20

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ................................................................. 17, 22

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank and Trust Co. of Chicago*,
834 F.2d 677 (7th Cir. 1987) ................................................................. 19

*Mayfield v. Barr*,
985 F.2d 1090 (D.C. Cir. 1993) ................................................................. 19

*Meyenburg v. Exxon Mobile Corp.*,
2006 U.S. Dist. LEXIS 97057 (S.D. Ill. 2006) ................................................................. 17, 20

*Mirfasihi v. Fleet Mortg. Corp.*,
450 F. 3d 745 (7th Cir. 2006) ................................................................. 23

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ................................................................. 21

## TABLE OF AUTHORITIES
### (continued)

Page

*Purnell v. Sheriff of Cook County,*
    2009 U.S. Dist. LEXIS 37302 (N.D.Ill. May 4, 2009) ........................................................... 21

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
    2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001) ........................................................ 12

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006) ..................................................................................................... 2

*Weigner v. City of New York,*
    852 F.2d 646 (2d Cir. 1988) ...................................................................................................... 21

### OTHER AUTHORITIES

http://www.nhschicago.org/Gateway/ (last viewed April 2, 2010) ............................................. 6

John Collins Rudolf, *Judges' Frustration Grows With Mortgage Servicers*, N. Y. TIMES,
    Sept. 4, 2009, at B1, *available at* http://www.nytimes.com/
    2009/09/04/business/economy/04wells.html ........................................................................ 13

### RULES

Fed. R. Civ. P.
    23 ............................................................................................................................................. 22
    23(c) ......................................................................................................................................... 21
    23(c)(2) .................................................................................................................................... 21
    23(c)(2)(B) ................................................................................................................................. 7
    23(e) ........................................................................................................................................ 10
    23(e)(1)(C) ............................................................................................................................... 11

### TREATISES

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2005)
    § 10.16 ....................................................................................................................................... 7
    § 11.41 ............................................................................................................................... 10, 12
    § 11.42 ..................................................................................................................................... 19
    § 11.47 ..................................................................................................................................... 20
    § 11.50 ..................................................................................................................................... 15
    § 12.35 ..................................................................................................................................... 22

*Manual for Complex Litigation* (West 1977) § 1.46 ................................................................. 11

*Moore's Federal Practice* P 23.80(4) (2d Ed. 1978) ................................................................. 12

## I.  __INTRODUCTION__

Plaintiffs respectfully submit this memorandum and the accompanying declarations of Co-Lead Class Counsel,[1] and Judge Daniel H. Weinstein (Ret.), to demonstrate that this Court should grant Plaintiffs' motion for final approval of the settlement of this Class action.[2]  The parties' settlement agreement ("Settlement") (Docket No. 3247), now submitted to the Court for final approval, resolves 28 class actions consolidated in this MDL proceeding against Ameriquest Mortgage Company and affiliated entities (collectively, "Ameriquest") for alleged predatory mortgage lending and servicing practices.  The Settlement includes a $22 million Settlement Fund that provides for class member payments and foreclosure prevention counseling services by a national non-profit organization.

The parties reached this resolution after three years of hard-fought litigation followed by two years of extensive arms-length mediation with the reputable JAMS mediator Hon. Daniel Weinstein (Ret.).  Nearly 170,000 class members have filed claims and only two *pro se* pleadings that may constitute objections remain pending. See Affidavit of Settlement Administrator Concerning Notification ¶ 10 [hereinafter Rust Aff.] (Docket No. 3495); Declaration of Annika K. Martin [hereinafter Martin Decl.].  For the reasons discussed below, none of the objections have support in the record or arguable merit.

In evaluating the fairness of a proposed class action settlement, the most important factor the Seventh Circuit considers is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement.  *Synfuel Techs., Inc. v. DHL Express*

---

[1] Appended to Co-Lead Counsel's declaration are additional declarations of Plaintiffs' experts John J. Szobocsan and Professor Patricia A. McCoy.

[2] Plaintiffs' request for approval of attorneys' fees and costs, and for service awards for the Named Plaintiffs, is addressed in Plaintiffs' separately-filed Memorandum in Support of Award of Attorneys' Fees and Expenses and Approval of Named Plaintiffs' Service Awards.

*(USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (citations omitted).  While the Class Plaintiffs

believe that they would have succeeded at class certification and on the merits of their claims at

trial, Ameriquest's deteriorated financial condition created a significant risk that they would not

be able to collect a judgment. See Declaration of Diane Tiberend Regarding Financial Condition

of the Settling Defendants [hereinafter Tiberend Decl.] (confidential document filed for *in*

*camera* review).

   The relief provided here, payments from the Settlement Fund coupled with

foreclosure prevention services, is appropriately tailored to the unfair mortgage lending and

servicing claims raised in Class Plaintiffs' pleadings.  It also satisfies the standards of fairness

promulgated by the Seventh Circuit and the Federal Rules of Civil Procedure.  Moreover, the

fact that limited unsupported objections and relatively few requests for exclusion were filed

supports final approval.  Accordingly, the Court should grant final approval here.

## II. STATEMENT OF THE CASE

   Beginning in 2004, numerous class and individual actions against Ameriquest

Mortgage Company and its affiliated entities ("Ameriquest") were being filed across the country.

The cases were at various litigation stages, with some deep into the discovery process, when the

Judicial Panel on Multidistrict Litigation ("JPML") consolidated and transferred them into MDL

1715 on December 14, 2005. A detailed history of the formation of MDL 1715 is contained in

the Joint Declaration of Co-Lead Class Counsel for Plaintiffs in Support of Final Approval of

Class Action Settlement ¶¶ 8-12 [hereinafter Joint Decl.].

   MDL 1715 now includes 28 class actions against Ameriquest – filed by more than

35 law firms -- challenging a variety of alleged predatory lending and servicing practices. The

most prevalent claims in the consolidated cases include violations of the Truth in Lending Act,

bait and switch practices, improper charging of "discount points," excessive charging of

- 2 -

settlement costs, and servicing overcharges of default related fees and costs. Joint Decl. ¶¶ 13-21 (listing Class Plaintiffs' claims in the Consolidated Actions, Consolidated Class Action Complaint [hereinafter CCAC] and First Amended and Consolidated Class Action Complaint [hereinafter FACC]). Ameriquest denies all of Class Plaintiffs' claims. However, all 28 cases will be resolved if the Settlement is finally approved.

Court-appointed Co-Lead Class Counsel, consisting of the law firms of Roddy Klein & Ryan, Lieff, Cabraser, Heimann & Bernstein, LLP and James, Hoyer, Newcomer & Smiljanich, along with the Executive Committee, liaison counsel and class counsel involved in the transferred class cases have been vigorously prosecuting MDL 1715 for more than five years. Counsel's efforts over that period of time are set forth in detail in their Joint Declaration together with a thorough litigation history of the case, therefore they are only summarized here. Joint Decl. ¶¶ 2-97.

Among other litigation achievements, Co-Lead Class Counsel defeated Ameriquest's motion to dismiss, obtained a temporary injunction requiring Ameriquest to send notice to borrowers in foreclosure advising them of possible rescission rights, and reached a Standstill Stipulation that stayed certain pending foreclosure proceedings on Ameriquest borrowers. Joint Decl. ¶¶ 66-74. Throughout the case, Co-Lead Class Counsel and Ameriquest engaged in substantial and hard-fought motion practice. Joint Decl. ¶¶ 66-68, 86-87 (discussing, among others, motions for provisional class certification and to compel Plaintiffs to amend the CCAC to include individual claims). Co-Lead Class Counsel obtained a significant amount of discovery prior to commencing settlement negotiations, including 200,000 pages of documents, several terabytes of computerized data about class member loan files, and testimony from approximately 15 depositions. A comprehensive discussion of the discovery process and the

- 3 -

types and amount of discovery obtained is contained in the Joint Declaration at ¶¶ 76-84. Formal and informal discovery continued during settlement negotiations. Joint Decl. ¶¶ 93-95.

After three years of litigation and discovery, the parties ultimately engaged a highly reputable mediator, retired San Francisco Superior Court Judge Daniel Weinstein, at JAMS in San Francisco, California, to assist them in exploring a possible settlement of the case. Joint Decl. ¶¶ 88. The parties engaged in arm's length settlement negotiations for two-and-a-half years before ultimately reaching the Settlement currently before the Court for final approval. The history of the parties' settlement negotiations is set forth in the Joint Declaration at ¶¶ 88-97.

## III.   THE TERMS OF THE SETTLEMENT

### A.   Economic Relief

#### 1.   Settlement Fund

The Settlement provides a monetary fund of $22 million ("Settlement Fund"), which will be used for settlement payments to class members, foreclosure prevention services, notice and claims administration costs, service awards to Named Plaintiffs, and attorneys' fees and costs approved by the Court.  The Settlement Fund will not be used to pay any costs associated with resolving any other case or matter not resolved by the Settlement.  Ameriquest will contribute these funds in three lump sum payments, two of which have already been made with the remaining payment due just following Final Approval on the terms set forth in the Settlement Agreement.  No part of the Settlement Fund will revert to Ameriquest unless the Settlement does not become final.  After final approval, interest accumulated on the $22 million will augment the fund for the benefit of the Class.

#### 2.   Distribution Plan And Settlement Payments

Co-Lead Class Counsel have consulted with experts and have carefully evaluated and compared the strengths, weaknesses, and relative merits of the claims of the several classes.

- 4 -

*See* Declaration of John J. Szobocsan [hereinafter Szobocsan Decl.] (Exhibit 3 to Joint Decl.); Report of Patricia A. McCoy in Support of Settlement and Distribution Plan [hereinafter McCoy Decl.] (Exhibit 4 to Joint Decl.); and Declaration of Judge Daniel H. Weinstein (Ret.) in Support of Motion for Preliminary Approval of Settlement [hereinafter Weinstein Decl.] (Docket No. 3505). Based on these evaluations, Co-Lead Class Counsel developed a Distribution Plan to divide the economic relief available to class members in a way that recognizes the relative value of their claims. A copy of the Distribution Plan is attached to the Settlement as Exhibit 1. Joint Decl., Ex. A (Settlement Agreement), Ex. 1 (Distribution Plan).

Under Class Plaintiffs' proposed Distribution Plan, the entire balance of the Settlement Fund (after deduction of notice and administration costs, attorneys' fees, Named Plaintiffs' Service Awards and foreclosure prevention services costs) will be divided *pro rata* and paid to Settlement Class Members who make timely and valid claims. Joint Decl., Ex. 1 (Distribution Plan ¶ 4(a)). Each allowed claim will be assigned a payment amount based on the ratio between the number of points available on the claim (under a payment formula) and the total number of points assigned to all timely valid claims. *Id.*

The payment formula is based on Ameriquest's loan level account data, which Class Plaintiffs' experts have used to calculate average putative damages. Szoboscan Decl.; Joint Decl., Ex. 1 (Distribution Plan ¶ 4(c)). Class Plaintiffs' experts have also estimated the likelihood of recovery of damages on the legal theories available to members of each class. *See* McCoy Decl. The number of points assigned to each claim will be based on average putative damages associated with claims in that class, multiplied by the likelihood of recovery. Joint Decl., Ex. 1 (Distribution Plan ¶ 4(c)). Each claim will be assigned points based on this formula for each class for which the claimant is a member.

### 3.    Foreclosure Prevention Services

In addition to settlement payments, $200,000 of the Settlement Fund will be used to provide foreclosure prevention counseling services to eligible class members. Joint Decl., Ex. 1 (Distribution Plan ¶ 3). Class Plaintiffs have designated Neighborhood Housing Services of Chicago ("NHS") to provide loan modification counseling to Settlement Class Members who currently have Ameriquest-originated loans being serviced by a third party and who are sixty days or more delinquent in their payments. *Id.* NHS, a nonprofit organization established in 1975, is a charter member of NeighborWorks America®, a network of 230 organizations across the United States that provide assistance to homeowners. NHS has extensive experience in providing effective foreclosure prevention counseling; for years, it has offered these kinds of services to homeowners in Chicago and across the country.[3]

The foreclosure prevention services will be provided by telephone through a toll-free number on a national basis. Joint Decl., Ex. A, Ex. 1 (Distribution Plan ¶ 3). Foreclosure prevention counselors will provide the following services to eligible Settlement Class Members:

- communicate with class members about the servicer-specific loan modification options available to them, including options under the Home Affordable Modification Program ("HAMP"); and/or

- facilitate foreclosure avoidance by providing options counseling to homeowners who are delinquent on their mortgages; and/or

- act as an intermediary between Settlement Class Members and their respective loan servicers to ensure that all applications for loss mitigation relief are accurate and complete and submitted properly to servicing entities under the servicing entities' respective guidelines; and/or

- assist class members with any follow up issues that may arise in connection with their loss mitigation applications.

NHS's foreclosure prevention counseling services will be available to class

---

[3] *See* http://www.nhschicago.org/Gateway/ (last viewed April 2, 2010).

members through the earlier of one year or the time their funding is fully expended on counseling services. *Id.*

### 4. *Cy Pres*

Any amounts left over in the Settlement Fund will be donated to one or more charities by way of an award in the nature of *cy pres*. Joint Decl., Ex. A (Settlement ¶ IV(D)). It is well-recognized that when unclaimed funds remain unallocated, the unclaimed portion may be distributed for the indirect benefit of the Class under *cy pres* principles. *See* 3 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 10.16 (4th ed. 2005).

The cy pres recipient(s) will be submitted for approval by the Court. However, because the Distribution Plan contemplates the distribution of the entire fund on a *pro rata* basis to class members, the parties anticipate that the *cy pres* award will be minimal, largely consisting of uncashed distribution checks and residue associated with payment of interest after distribution. Joint Decl. ¶ 110.

### B. Notice And Administration

The notice methodology the parties proposed is commonly approved for national class action settlements and complies with Fed. R. Civ. P. 23(c)(2)(B). *See* Section IV(A)(2), *infra*. The Notice, along with a claim form, was mailed by first class mail to the Settlement Class Members at their last known addresses from Ameriquest's records. Joint Decl., Ex. A (Settlement ¶ X(C)(a)); *see also* Rust Aff. ¶ 5. True and correct copies of Class Plaintiffs' proposed Mailed Notice and Claim Form are attached to the Settlement as Exhibits 3 and 7, respectively.

Ameriquest's records are the best available source of Settlement Class Members' addresses because Ameriquest originated the mortgage loans at issue in this action on Settlement Class Members residences. The Settlement Administrator promptly re-mailed any notices

- 7 -

returned by the Post Office with a forwarding address. Rust Aff. ¶ 5; *see also* Joint Decl., Ex. A (Settlement ¶ X(C)(d)).

The parties also provided publication notice through one notice published in the nationally-distributed publications *Parade* and *USA Today*. Rust Aff. ¶ 6; *see also* Joint Decl., Ex. A (Settlement ¶ X(C)(c)). A true and correct copy of the Class Plaintiffs' proposed Publication Notice is attached to the Settlement as Exhibit 4. In addition, the Settlement Administrator and each Co-Lead Class Counsel provided a link on its website to a central site maintained by the Settlement Administrator, where to obtain downloadable and printable copies of the Settlement Agreement, the Notice and the Claim Form can be found. Joint Decl., Ex. A (Settlement ¶ X(C)(b)); *see also* Rust Aff. ¶ 7.

### C. Opt Out Opportunity And Right to Object

After receiving notice, Class Plaintiffs had an opportunity to exclude themselves from the Settlement or to object to its approval. Joint Decl., Ex. A (Settlement ¶¶ XI, XII).

The deadlines for filing opt out requests and objections were conspicuously listed in the mailed and publication notices, as well as on the websites of the Settlement Administrator and Co-Lead Class Counsel. *See* Joint Decl., Ex. 3 (Mailed Notice) at *1-2. The process for filing exclusions and objections was also explained in the mail and publication notices and the websites. *Id*. With regard to objections, the notices informed putative Settlement Class Members that the Final Approval Hearing will be the only opportunity for them to appear and have their objections be heard. Joint Decl., Ex. A (Settlement ¶ XII(C)), Ex. 3 (Mailed Notice) at *8. The Notices also informed Settlement Class Members who choose to participate in the Settlement that they will be bound by the release. Joint Decl., Ex. A (Settlement ¶¶ XI(D)), Ex. 3 (Mailed Notice) at *7. Less than 100 class members opted out in response to the Settlement. The balance of the opt outs occurred prior to Settlement under terms approved by

- 8 -

the Court in its initial order organizing the MDL.

    **D.**    <u>**Release**</u>

        The release is appropriately tailored to the claims raised in the FACC.  In exchange for Settlement benefits, participating Settlement Class Members will release Ameriquest and its affiliated entities from all claims, causes of actions, or liabilities which they may or did have during the Class Period that relate to or arise from the matters that were alleged or asserted, or could have been alleged or asserted in the FACC and/or the Consolidated Actions. Joint Decl., Ex. A (Settlement ¶ VIII(A)).

        Importantly, the release will have no effect on any statutory or common law foreclosure claims and defenses that borrowers may raise in response to an actual or threatened judicial or non-judicial foreclosure of any loan originated by Ameriquest or one of its affiliates. Joint Decl., Ex. A (Settlement ¶ VIII(C)).

    **E.**    <u>**Named Plaintiffs' Service Payments, Attorneys' Fees and Expenses**</u>

        If approved by the Court, named plaintiffs will receive an additional $7500 per loan (plus interest accrued thereon from the date interest begins to accrue for the benefit of the Settlement Fund) in recognition of the service performed for the benefit of the Class.  Joint Decl., Ex. A (Settlement ¶ XVII(B)).

        If approved by the Court, Counsel will be paid an amount up to $7.33 million (inclusive of expenses) including accrued interest, subject to Court approval.  Joint Decl., Ex. A (Settlement ¶ XVII(A)).  Fees will be split among the more than 35 law firms that had active pending class actions against Ameriquest and who have considered and support this Settlement. The reasons for approval of the requested attorneys fees, expenses and service awards are discussed in a separate memorandum of law filed this same date.

## IV. THE SETTLEMENT SHOULD BE APPROVED IN ALL RESPECTS

A class action cannot be compromised or settled without the approval of the Court. Fed. R. Civ. P. 23(e). It is well recognized that "federal courts naturally favor the settlement of class action litigation." *Follansbee v. Discover Fin. Servs.*, 2000 U.S. Dist. LEXIS 8724 (N.D. Ill. June 14, 2000) (citing *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)); *see also Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ; *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986).

When evaluating whether to approve a class action settlement, the court's inquiry is limited to the consideration of whether the proposed settlement is fair, reasonable, and adequate. *See Isby*, 75 F.3d at 1196. This court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

Furthermore, "[t]here is usually an initial presumption of fairness when a proposed class settlement is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." 4 *Newberg, supra*, § 11.41; *see also Hispanics United of DuPage County, et al. v. Vill. of Addison*, 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997) ("A strong presumption of fairness attaches to the proposed settlement when it is shown to be the result of this type of a negotiating process.") (citation omitted); *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *3 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

863055.7

The Settlement will produce substantial benefits for the Class. The value of these benefits is enhanced by the fact that they will be provided to class members now, without the delay, burden and risks of further litigation. This is especially important given that Ameriquest is no longer doing business. Moreover, the Class has a well-defined community of interests in that there are common questions of law and fact among its members, class representatives with claims typical of the Class, and class representatives who adequately represent the Class.

This Court conditionally certified the Classes for settlement purposes only in its December 8, 2009 Order of Preliminary Approval of Class Action Settlement. In that Order the Court noted that the Settlement "appears fair, reasonable and adequate" and recognized the appropriateness of this action for class certification for purposes of settlement. (Order of Preliminary Approval of Class Action Settlement at 2 (Docket No. 3255) [hereinafter Preliminary Approval Order.] The present motion seeks a final Order from this Court certifying the Class and approving the Settlement.

A. __The Settlement Is Fair, Reasonable And Adequate__

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion."

In determining whether to approve the proposed settlement the court should consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the reaction of the members of the class to the settlement; (6) the presence of collusion in reaching a settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *Armstrong*, 616 F.2d at 314 (*citing Manual for Complex Litigation* § 1.46, at 56 (West 1977) *and* 3B *Moore's Federal Practice* P 23.80(4) at 23-521 (2d

Ed. 1978); *see also Isby*, 75 F.3d at 1199; *Hispanics United*, 988 F. Supp. at 1150; *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 6, 2001); *Goldsmith*, 1995 WL 17009594, at *3.

1. **Application of the *Armstrong* Factors Shows The Settlement Is Fair, Reasonable And Adequate**

   a. **The Settlement Offers Substantial Benefit To All Settlement Class Members, Especially When Balanced Against Strength of the Case for Plaintiffs on the Merits**

The first and most important *Armstrong* factor weighs the benefits of the settlement against the strength of the plaintiffs' case on the merits. *Armstrong*, 616 F.2d at 314, 322-23.

Though the Class Plaintiffs believe their claims are meritorious, they recognize that ultimate success on the merits is by no means assured. Plaintiffs are also aware of the inherent risks of complex litigation, the inherent delays, and the desirability of obtaining prompt and effective relief for the Class. "By their very nature, because of the uncertainties of outcome, difficulties of proof, and length of litigation, class action suits lend themselves readily to compromise." 4 *Newberg*, *supra*, § 11.41 (citations omitted). Especially when balanced against these risks and uncertainties, the economic relief afforded by the Settlement confers a significant benefit on the Class.

The Settlement Fund will be used for payments to Settlement Class Members (based on the Distribution Plan explained below), notice and claims administration costs, service awards to named Plaintiffs and reasonable attorneys' fees and costs approved by the Court. Joint Decl., Ex. A (Settlement ¶ IV). It provides a significant benefit to the Settlement Class Members because individual homeowners are unlikely to spend the time and money necessary to recover their alleged damages from a defunct company. Additionally, a significant number of Class

- 12 -

members are likely to be unaware that their rights may have been violated.

In addition to this monetary consideration, NHS, a nationally recognized and experienced housing counseling service organization, will provide counseling to class members who are still in their Ameriquest-originated loans who need foreclosure and loan modification assistance. *See* Section III(A)(3), *supra*. This service is a much-needed benefit, as Ameriquest has transferred the servicing of the Class members' loans several times and many borrowers do not have established relationships with their new servicers. Moreover, it has been widely publicized that homeowners are experiencing great difficulty communicating with their mortgage servicers about loan modification options and foreclosure avoidance.[4] Therefore, the housing counseling services available to Class members trying to keep current on their loans substantially bolsters the economic relief under the Settlement.

The significant economic benefit to the Classes, coupled with the foreclosure prevention services, balanced against the merits of the Plaintiffs' case, demonstrate that the proposed Settlement is fair, reasonable, and appropriate.

### b.     The Settlement is Especially Appropriate Given Ameriquest's Limited Ability to Pay

The defendant's ability to pay is also factor to consider in determining whether to approve a settlement. *Armstrong*, 616 F.2d at 314; *see also Cook v. McCarron*, 1997 U.S. Dist. LEXIS 1090 (N.D. Ill. Jan. 22, 1997) (granting final approval of settlement and noting in its analysis that continued litigation would diminish the source of funds the defendant had available

---

[4] *E.g.,* John Collins Rudolf, *Judges' Frustration Grows With Mortgage Servicers*, N. Y. TIMES, Sept. 4, 2009, at B1, *available at* http://www.nytimes.com/2009/09/04/business/economy/04wells.html (quoting a bankruptcy judge who ordered a Wells Fargo senior executive to attend a bankruptcy hearing to explain why the company denied a loan modification to a debtor. Judge Haines lamented that debtors' problems applying for loan modifications are "[t]he kind of story I . . . and other bankruptcy judges around the country are hearing over and over and over again.").

- 13 -

for any judgment in the case). Although Ameriquest was once one of America's leading wholesale lenders, the company ceased doing business in 2007 and no longer has significant assets to pay a judgment. *See* Tiberend Decl. (filed under seal). Throughout the litigation, Co-Lead Counsel investigated whether class members had viable claims against additional parties owners, investors, servicers and transferrees, but ultimately concluded that such claims would not be feasible.[5] Joint Decl. at ¶¶ 94, 95.

The economic relief provided under the Settlement, which consists of a $22 million Settlement Fund, is substantial in light of Ameriquest's financial condition at the time of settlement as described in the Tiberend declaration. Joint Decl. ¶ 93; Tiberend Decl. "It is well-settled that the recovery in a class action settlement may amount to less than the potential recovery by the class." *Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804, 820 (S.D. Ill. 2002); *Goldsmith*, 1995 WL 17009594, at *5 (approving settlement with a monetary fund representing a portion of the damages that could reasonably have been proven for the class); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."). Because continued litigation of this action will only decrease the amount of money available for a judgment in this case, this Settlement is likely the only viable way Class members will receive relief here.

### c. The Complexity, Length and Expense of Protracted Litigation Makes The Instant Action Appropriate For Settlement

The third factor listed by the *Armstrong* court in determining whether to approve the settlement was the "complexity, length and expense" of further litigation. *Armstrong*, 616 F.2d at

---

[5] Instead, claims against servicers, loan purchasers and investors, including those for loan modification relief, are preserved by the Settlement in the event of foreclosure. Settlement ¶ VIII.C.

314, 324-25. For this reason, too, settlement of this particular case is appropriate.

As an initial matter, this litigation has already been lengthy -- with a docket consisting of over 3,500 entries -- and expensive. For example, Co-Lead Class Counsel and Ameriquest engaged in a vigorous and costly discovery process. Co-Lead Class Counsel took numerous depositions requiring travel to Southern California. Ameriquest produced tens of thousands of documents consisting of hundreds of thousands of pages and volumes of electronic data. *See* Joint Decl. ¶¶ 77-78. Co-Lead Class Counsel also interviewed numerous Ameriquest borrowers and former Ameriquest employees, many of whom provided valuable information as "whistle-blowers." In addition, Co-Lead Counsel interviewed numerous appraisers, loan brokers and settlement service providers who provided valuable information about Ameriquest's formal and informal lending practices. Joint Decl. ¶ 83.

Significant resources have been necessary to properly prosecute this case. Indeed, in addition to three law firms acting as Co-Lead Counsel, the Court appointed an Executive Committee to assist in representing the Class Plaintiffs. Further litigation of this case would create an unnecessary burden on the parties and the Court and, in light of the risk discussed above, would not result in greater benefit to the Class than the Settlement provides.

Most importantly, the fact that Ameriquest is out of business presents a significant risk that Class Plaintiffs would not be able to collect a judgment even if they prevailed at trial, which is uncertain. 4 *Newberg*, *supra*, § 11.50 ("[c]ollectibility of a judgment is also a factor bearing on the reasonableness of a settlement in relation to the defendants' ability to withstand a greater one.") (citations omitted). Although Class Plaintiffs believe their claims are valid, they understand that success on the merits is by no means assured and that this Settlement would resolve the conflicts underlying this class action without the necessity, time and expense of a protracted

- 15 -

trial. For example, the Seventh Circuit's *Andrews* decision foreclosed Class Plaintiffs' ability to certify a class of borrowers with TILA rescission rights they have not exercised. *See Andrews v. Chevy Chase Bank*, 545 F.3d 570 (7th Cir. 2008). In addition, while some Seventh Circuit decisions during the course of the litigation supported Class Plaintiffs' claims,[6] other decisions illustrate the risk Class Plaintiffs would have faced in further litigation, particularly at the class certification stage.[7] Moreover, the JPML transferred a variety of class actions raising multiple and sometimes inconsistent legal theories, complicating the possibility of certifying a uniform class of borrowers.

The value of the benefits Class members will receive under this Settlement is enhanced by the fact that the benefits will be provided now, without the delay, burden and risks of further litigation. In particular, the housing counseling services available under the Settlement will create more value to the Class the sooner they are instituted, as many individuals are at the risk of foreclosure.

### d. The Reaction Of The Class Has Been Positive

Another factor considered by the *Armstrong* court is the amount of opposition to the settlement. *Armstrong*, 616 F.2d at 314. Here there has been an overwhelming positive reaction to the Settlement by the Class, and opposition has been minimal. Nearly 170,000[8] class

---

[6] *See, e.g., Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. Sept. 29, 2006) (holding that use of the wrong form of notice of right to cancel fails to meet the requirements of the TILA and therefore gives rise to an extended right to rescind); *Hamm v. Ameriquest Mortgage Co.*, Nos. 05-3984, 06-3086, 2007 WL 3010973 (7th Cir. Oct. 17, 2007) (holding that failing to explicitly state the payment period in a TILA disclosure and providing an overshadowing one week rescission right notice along with the TILA mandated three-day rescission right notice violates the TILA).

[7] *See, e.g., In re McDonald's French Fries Litig.*, 257 F.R.D. 669, 673-74 (N.D. Ill. 2009) (refusing to certify national class, noting that numerous courts in the 7th Circuit have found material conflicts among the fifty states' laws raised in the litigation and have denied class certification).

[8] Approximately 4,200 of the claims at issue were received after the claims deadline. Rust Aff. ¶

---

members have filed claims for benefits under the Settlement. Rust Aff. ¶ 10.

By contrast, there were fewer than 100 exclusions in response to the Settlement.[9] Rust Aff. ¶ 9. As described below, there are, at most, two pending objections to the Settlement. Martin Decl. Those objections have been resolved in whole, or in part, by providing the objectors the primary relief requested based on a fair reading of their pleadings. *Id.*

Requests for exclusion and objections represent just over one hundredth of one percent of the 712,000 class members covered by the Settlement. By contrast, claimants represent nearly 24% of class members. This is, by any measure, an overwhelmingly positive reaction to the Settlement. The sheer volume of Class members who filed claim forms indicating that they want to participate in the Settlement, in contrast to the minimal opposition to the Settlement, contributes to a conclusion that the Settlement is fair and reasonable. *See Meyenburg v. Exxon Mobile Corp.,* 2006 U.S. Dist. LEXIS 97057, at *18-19 (S.D. Ill. 2006) (finding 50 opt-outs and 6 objectors in a nationwide class action to be a "miniscule" number and that such overwhelming support by the Class is strong evidence of the fairness of the settlement); *see also Mangone v. First USA Bank,* 206 F.R.D. 222, 227 (S.D. Ill. 2001) (same).

      **e.**     **The Filed Objections Are Resolved In Whole Or In Part. To The Extent They Are Not, They Are Non-Meritorious And Unsupported By The Record.**

A related factor considered by the Armstrong court is the amount of opposition to

---

10. Most of the late claims arose because of forwarding delays associated with receipt of returned mail through the postal system. Rust Aff. ¶ 5. Those issues will be addressed by the parties in a separate motion seeking leave to accept the late claims.

[9] Although there are 442 total requests for exclusion from the Settlement (Rust Aff. ¶ 9, Exh. A), most of them were confirmations of exclusion requests that had been made prior to announcement of the Settlement, under procedures authorized by the Court in its case management orders. Thus, at least 342 of the requests for exclusion cannot be considered reactions to the Settlement, because the Class members had already requested exclusion. Indeed, some of the persons excluding themselves have sought to opt back in to the Settlement – an issue that will be dealt with by the parties in a separate motion.

the settlement. *Armstrong*, 616 F.2d at 314. All of the attorney-filed objections − those of Frank and Wendy Platzar, Terrell and Lesia Beard, Jeanine Schweinberg and Jeffrey Parra − have been withdrawn. No consideration was provided for those withdrawals. *See* Docket Nos. 3418, 3429, 3431, 3462, 3475, 3494.

Two *pro se* applicants submitted papers to the court seeking clarification regarding their status or to request exclusion or to object. *See* Martin Decl., Ex. A, Ex. B, Ex. C. The two *pro se* submissions filed by Marty Green, seeking clarification regarding his status as a Class member and to file a claim, have already been resolved, in part, by the Court (Docket No. 3502).[10] To the extent if any, that it is not resolved (Docket No. 3504), Mr. Green's pleading offers no support or even a coherent basis for objection and should be overruled as frivolous.

In the other *pro se* submission, Steven and Patricia Dye requested exclusion from the Class and objected to the Settlement, mostly based on issues outside the scope of the agreement or the lawsuit.[11] Martin Decl., Ex. C. The Dye objection should also be overruled on the merits because it consists of nothing more than conclusory statements that lack support in the record. In addition, Mr. Dye does not have standing to object to the Settlement. Per his own request for exclusion, Mr. Dye is now on the Settlement Administrator's list of class members

---

[10] Martin Decl., Ex. A. Co-Lead Class Counsel has contacted Mr. Green and confirmed for him that he is a class member, and that the Court has granted his request to file a late claim. Martin Decl. ¶ 7. Mr. Green stated that he chose not to file a claim. *Id.*

[11] The Dye objection alleges that Ameriquest forged Fannie Mae loan forms with Steven Dye's signature, and suggests that AIG, Citibank and Deutsche Bank had a joint scheme to defraud taxpayers. Martin Decl., Ex. B. Co-lead Counsel cannot address these issues here as no support was provided. Moreover, some of these issues could only be appropriate for non-class treatment. The Dye objection also suggests that private assets such as non-party Roland Arnall's Colorado vacation home be sold and the proceeds added to the Settlement fund. *Id.* Co-Lead Counsel did evaluate the possibility of fraudulent transfer liability of the Arnalls. They concluded that such claims were infeasible, particularly after the death of Ambassador Arnall. Joint Decl. ¶ 94. To the extent the Dye objection touches on attorneys' fees, that issue is addressed separately in Plaintiffs' Memorandum in Support of Award of Attorneys' Fees and Expenses and Approval of Named Plaintiffs' Service Awards.

863055.7

who have opted out of the Settlement and is therefore no longer a class member. Rust Aff.,
Ex. A; Martin Decl., Ex. C. Because Mr. Dye has requested exclusion from the Class, he no
longer has standing to object. *See Carnegie v. Household Int'l, Inc.*, 445 F. Supp. 2d 1032, 1035
(N.D. Ill. 2006) (finding that an individual who was not a class member lacked standing to
contest the settlement) (*citing Gould v. Alleco, Inc.,* 883 F.2d 281, 284 (4th Cir. 1989)); *see also
Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993) (holding that those who opt out of a
class action lack standing to object to the settlement, because those who fully preserve their legal
rights by excluding themselves from a class action settlement cannot challenge an order
approving an agreement resolving the legal rights of others).  Accordingly, Mr. Dye's objections
should be overruled.

   The absence of any meaningful objections is thus another factor that militates for
settlement approval here.

    **f.**   **The Settlement Negotiations Were Conducted at Arm's Length**

   The next *Armstrong* factor listed concerns the presence of any collusion in
reaching a settlement.  *Armstrong*, 616 F.2d at 314, 325. The requirement that a settlement be
fair is designed to protect against collusion among the parties.  *Mars Steel Corp. v. Cont'l Ill.
Nat'l Bank and Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) (approved settlement
upon finding of no "hanky-panky" in negotiations).  There usually is an initial presumption that a
proposed settlement is fair and reasonable when it was the result of arm's-length negotiations.  4
*Newberg*, *supra*, § 11.42.  Here, the Settlement was negotiated at arm's-length and in good faith
by all parties involved.

   The three-year duration of the litigation, followed by two years of highly
contested settlement negotiations, the excellent result for the Class in light of the company's
financial condition and in spite of the significant procedural and substantive hurdles Class

Plaintiffs faced, the hard-fought, arms-length course of negotiations, and the participation of the

Honorable Daniel Weinstein (Ret.), an experienced mediator, are all indicia of the non-collusive

nature of the Settlement. *See* Weinstein Decl.; Joint Decl. ¶¶ 88-97.

> ### g.    Co-Lead Class Counsel Believe That The Settlement Is Fair, Reasonable And In The Best Interest Of Settlement Class Members

The *Armstrong* court also considered the "opinion of competent counsel" in favor of

the settlement. *Armstrong*, 616 F.2d at 314, 325. The opinion of experienced class action counsel,

with substantial experience in litigation of similar size and scope, is an important consideration.

*See* 4 *Newberg*, *supra*, § 11.47 (citations omitted); *see also Meyenburg,* 2006 U.S. Dist. LEXIS

97057, at *17-18; *Isby,* 75 F.3d at 1200.  Counsel have set forth their considered judgment

regarding the fairness of the relief provided by settlement in the Declarations of Co-Lead Class

Counsel in Support of Plaintiffs' Motion for Preliminary Approval (Docket Nos. 3250-2, 3250-3,

3250-4).  *See also* Joint Decl. ¶ 7.

Here, the proposed Settlement is the product of extensive, adversarial, arm's-

length negotiations conducted by counsel experienced in class action litigation, and specifically

experienced in litigating consumer fraud cases.  As discussed above, in light of the company's

financial condition, the proposed Settlement offers the Settlement Class a substantial portion of

the relief sought and that which could be obtained at trial.  Thus, in counsel's view, the proposed

Settlement is fair, reasonable and in the best interest of the Settlement Class.

> ### h.    The Parties Have Conducted Extensive Discovery and Have Vigorously Litigated and Negotiated This Case

The *Armstrong* court lastly listed the "stage of the proceedings and the amount of

discovery completed" as a factor in evaluating the settlement.  *Armstrong*, 616 F.2d at 314, 325.

As discussed in Section II, *supra*, the three-year litigation was lengthy, hard fought and involved

heavy motion practice. *See also* Joint Decl. ¶¶ 79-81, Ex. A (Settlement ¶ II). The discovery process was thorough and included both formal and informal discovery. *Id.* The parties were well apprised of the strengths and weaknesses of their claims and defenses at the time they entered into settlement negotiations. Joint Decl. ¶ 85; Weinstein Decl. Co-Lead Class Counsel continued to obtain information relevant to their case during the settlement negotiations, such as information relating to Ameriquest's financial condition. Joint Decl. ¶ 93. Co-Lead Class Counsel have also obtained confirmatory discovery about Ameriquest's current financial condition. *See* Tiberend Decl. (filed under seal).

For all the reasons just described, this Settlement is fair, reasonable and adequate when considered in the context of the factors outlined by the *Armstrong* court. Moreover, as discussed below, the appropriateness of the Notice and the fairness of the Distribution Plan also support the approval of the Settlement.

## 2. <u>All Class Members Were Given Proper And Reasonable Notice</u>

The Settlement provided more than adequate notice in satisfaction of Fed. R. Civ. P. 23(c). Under Rule 23(c)(2), individual notice must be given to class members "who can be identified through reasonable effort," and others must be given "the best notice practicable under the circumstances." What matters is whether the parties "acted reasonably in selecting means likely to inform persons affected, not whether each [class member] actually received notice.[12] *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988); *accord Purnell v. Sheriff of Cook County*, 2009 U.S. Dist. LEXIS 37302, at *7-8 (N.D.Ill. May 4, 2009) (citing *Fontana v. Elrod*, 802 F.2d 729, 731 (7th Cir. 1987)).

Here, the notice provided was entirely reasonable under the circumstances. This

---

[12] The Rule coincides with the requirements of due process, as set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).

Court approved the form, substance and method of notice, finding that it constituted the best notice practicable under the circumstances. *See* Preliminary Approval Order at 4 (Docket No. 3255). To mail and publish notice, counsel retained an experienced firm, Rust Consulting, Inc., as third-party Settlement Administrator. *See* Rust Aff. ¶ 2.

Rust Consulting worked closely with Plaintiffs' Counsel to develop a comprehensive notice program to reach the greatest possible number of affected consumers. In accordance with the Court's Order of Preliminary Approval, Rust Consulting sent individual notice, including the Proof of Claim form, by first class mail to the approximately 713,438 identified class members. Rust Aff. ¶ 5. Second, a summary notice of the Settlement was published in *Parade* on January 3, 2010 and in *USA Today* on January 4, 2010. Rust Aff. ¶ 6. As required by the Court, notice was mailed no later than 30 days after the entry of the Order of Preliminary Approval. *See* Preliminary Approval Order at 4 (Docket No. 3255). Re-mailings were accomplished as expeditiously as possible in light of postal delays. Rust Aff. ¶ 5.

The content of the notice satisfies due process and Rule 23 in that it clearly outlines the nature of the case and the remedies offered by the Settlement, and provides clear, conspicuous and repeated notice of the Class member's rights to object or request exclusion from the Settlement. *See Mangone*, 206 F.R.D. 222.

3.     **The Distribution Plan Is Fair and Adequate Because Class Members' Payments Are Based on the Relative Value of Their Respective Claims**

The Distribution Plan Class Plaintiffs propose is fair, reasonable and adequate. *See* 4 *Newberg*, *supra*, § 12.35 (approval of distribution plan of a Settlement fund is "governed by the same standards of review applicable to approval of the settlement as a whole: [it] must be fair, reasonable and adequate.") (quotation and citations omitted). "As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is

reasonable." *Id.* It is also appropriate to factor in the likelihood of success of Class members' respective claims in calculating a payment formula. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 183 (2d Cir. 1987). A distribution plan is adequate if counsel has properly apprised themselves on the merits of the claims and the distribution plan reflects this information. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997), *aff'd*, 117 F. 3d 721 (2d Cir. 1997).

Class Plaintiffs' proposed *pro rata* Distribution Plan fits squarely within these parameters. First, it considers the type of claim and extent of the damages. The value of each Settlement Class Member's claim will be based on average putative damages associated with claims in that class multiplied by the claims' likelihood of recovery. Joint Decl., Ex. 1 (Distribution Plan ¶ 4(c)). Settlement Class Members' allowed claims will be assigned a payment amount. *Id.* ¶ 4(a). The payment amounts will be based on the ratio between the number of points available on the claim under a formula and the total number of points assigned to all timely valid claims. *Id.* Next, Co-Lead Class Counsel formulated the Distribution Plan based on expert evaluation of the likelihood of success of each claim. *Id.*

Co-Lead Class Counsel thus carefully evaluated, with the help of experts, the relative value of claims in different classes in order to assign proper values in the distribution plan. *See Mirfasihi v. Fleet Mortg. Corp.*, 450 F. 3d 745, 750-751 (7th Cir. 2006).

Finally, Co-Lead Class Counsel litigated this case for three years and conducted substantial discovery such that they are well apprised of the merits of Class Plaintiffs' claims. *See* Section II, *supra*. The Northern District of Illinois has endorsed the type of *pro rata* distribution method Class Plaintiffs propose here:

> [Defendant] possesses data for millions of brand name prescription
> drug purchases for the time period in question, including

- 23 -

> information on 99% of the class members, and represented to us
> that it is capable of measuring each class member's drug purchases
> as a percentage of all class members' purchases for the relevant
> time period. We think this method will provide the most accurate
> measure of the damages suffered by each class member and, for
> this reason, we endorse the pro rata distribution method.

*In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1999 WL 639173, at *4

(N.D. Ill. Aug. 17, 1999).

      For all of these reasons, the Distribution Plan is fair, reasonable and adequate.

### B. Each Settlement Class Meets Rule 23's Criteria And Can Be Certified For Settlement Purposes

      This Court's preliminary approval order granted class certification for settlement

purposes. Preliminary Approval Order at 2, 5. No party or Class Member has objected to

certification for settlement purposes here. Nothing has changed since the Court's order that

would make the Class un-certifiable or that changes the bases on which it may be certified. For

these reasons, Plaintiffs will not repeat the discussion of the reasons making certification of a

settlement class appropriate here. *See* Memorandum in Support of Motion for Preliminary

Approval of Settlement Agreement at 25-33 (Docket No. 3250-2).

      The Settlement thus meets all criteria for final approval.

## V. CONCLUSION

      For the foregoing reasons, Class Plaintiffs respectfully request that this Court

finally approve the Settlement as fair, reasonable and adequate, and finally certify the Settlement

Classes as defined in the Order for Preliminary Approval.

863055.7

Dated:  April 8, 2010                          Respectfully submitted,


| /s/ Gary Klein | /s/ Kelly M. Dermody |
|---|---|
| Gary Klein | Kelly M. Dermody |

Gary Klein                                     Kelly M. Dermody
Shennan Kavanagh                               LIEFF, CABRASER, HEIMANN &
RODDY KLEIN & RYAN                               BERNSTEIN, LLP
727 Atlantic Ave., 2nd Floor                   275 Battery Street, 29th Floor
Boston, MA 02111                               San Francisco, CA  94111-3339
Telephone:  (617) 357-5500                     Telephone:  (415) 956-1000

                                               Rachel Geman
                                               LIEFF, CABRASER, HEIMANN &
                                                 BERNSTEIN, LLP
                                               250 Hudson Street, 8th Floor
                                               New York, NY  10013-1413
                                               Telephone:  (212) 355-9500


| /s/ Jill Bowman |
|---|
| Jill Bowman |

Jill Bowman
Terry Smiljanich
JAMES HOYER NEWCOMER SMILJANICH
One Urban Centre, Suite 550
4830 West Kennedy Blvd.
Tampa, FL  33609-2589
Telephone:  (813) 286-4100


*Plaintiffs' Co-Lead Counsel*


Marvin A. Miller
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  (312) 332-3400

*Plaintiffs' Liaison Counsel*

- 25 -