|    |                                                                                                                    |
|----|--------------------------------------------------------------------------------------------------------------------|
| 1  | IN THE UNITED STATES DISTRICT COURT                                                                                |
|    | NORTHERN DISTRICT OF ILLINOIS                                                                                      |
| 2  | EASTERN DIVISION                                                                                                   |
| 3  |                                                                                                                    |
| 4  | IN RE:  AMERIQUEST MORTGAGE            )  Docket No. 05 C 7097                                                      |
|    | COMPANY, MORTGAGE LENDING PRACTICES   )                                                                            |
| 5  | LITIGATION                            )                                                                            |
| 6  |                                       )                                                                            |
|    |                                       )                                                                            |
| 7  |                                       )  Chicago, Illinois                                                         |
|    |                                       )  April 15, 2010                                                           |
| 8  |                                       )  10:30 o'clock a.m.                                                        |
| 9  |                                                                                                                    |
|    | TRANSCRIPT OF PROCEEDINGS - FAIRNESS HEARING                                                                       |
| 10 | BEFORE THE HONORABLE MARVIN E. ASPEN                                                                               |
| 11 |                                                                                                                    |
|    | APPEARANCES:                                                                                                       |
| 12 |                                                                                                                    |
| 13 | For the Plaintiffs:  RODDY KLEIN & RYAN                                                                            |
|    |                      BY:  MR. GARY EDWARD KLEIN                                                                    |
| 14 |                      727 Atlantic Avenue, 2nd Floor                                                                |
|    |                      Boston, MA  02111                                                                            |
| 15 |                      (617) 357-5500                                                                               |
| 16 |                      MILLER LAW LLC                                                                               |
|    |                      BY:  MR. MARVIN ALAN MILLER                                                                   |
| 17 |                      115 South LaSalle Street, Suite 2910                                                          |
|    |                      Chicago, IL  60603                                                                           |
| 18 |                      (312) 332-3400                                                                               |
| 19 |                      LEIFF CABRASER HEIMANN & BERNSTEIN                                                            |
|    |                      BY:  MS. KELLY M. DERMODY                                                                     |
| 20 |                      275 Battery Street                                                                           |
|    |                      30th Floor Embarcadero Ctr. West                                                             |
| 21 |                      San Francisco, CA  94111                                                                     |
|    |                      (415) 956-1000                                                                               |
| 22 |                                                                                                                    |
|    |                      JAMES HOYER NEWCOMER & SMILJANICH, P.A.                                                       |
| 23 |                      BY:  MR. JAMES NEWCOMER                                                                       |
|    |                           MS. JILL HENNIGER BOWMAN                                                                 |
| 24 |                           MS. SHENNAN KAVANAUGH                                                                    |
|    |                      4830 West Kennedy Boulevard                                                                   |
| 25 |                      Tampa, FL  33609                                                                             |
|    |                      (813) 286-4174                                                                               |

```
1    APPEARANCES (Cont'd):

2    For the Defendants:    BUCHALTER NEMER
                            BY:  MR. BERNARD E. LeSAGE
3                           1000 Wilshire Boulevard, Suite 1500
                            Los Angeles, CA  90017
4                           (213) 891-5230

5                           VARGA, BERGER, LEDSKY, HAYES & CASEY
                            BY:  CRAIG ALLEN VARGA
6                           224 South Michigan Avenue, Suite 350
                            Chicago, IL  60604
7                           (312) 341-9400

8
                            WINSTON & STRAWN LLP
9                           BY:  MR. THOMAS JOSEPH WIEGAND
                            35 West Wacker Drive
10                          Chicago, IL  60601
                            (312) 558-5600
11

12                          DYKEMA GOSSETT PLLC
                            BY:  MS. MICHELLE BACHER FISHER
13                          10 South Wacker Drive, Suite 2300
                            Chicago, IL  60606
14                          (312) 627-2573

15

16

17

18

19

20

21

22

23   Court Reporter:        MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                            Official Court Reporter
24                          219 S. Dearborn Street, Suite 1854-B
                            Chicago, Illinois  60604
25                          (312) 435-5639
```

1    (The following proceedings were had in open court:)

2         THE CLERK:  05 C 7097, Ameriquest Mortgage.

3         MR. KLEIN:  Gary Klein, your Honor, Roddy Klein &

4    Ryan for the plaintiffs.  With me are other counsel for the

5    plaintiffs, Kelly Dermody, Jill Bowman, James Newcomer, Marvin

6    Miller,  who I am sure you know, and Shennan Kavanaugh.

7         THE COURT:  Good morning.

8         MR. LeSAGE:  Good morning, your Honor; Bernard LeSage

9    from Buchalter Nemer for the defendants.  And with me for

10   defendants are Craig Varga, Tom Wiegand.

11        MS. FISHER:  Good morning, your Honor; Michelle

12   Fisher, new counsel for Ameriquest.

13        THE COURT:  Good morning.  Well, we are here for a

14   fairness hearing, and I take it there are no objections to the

15   proposed order; is that correct?

16        MR. KLEIN:  Your Honor, we heard during the process

17   for objections from two individuals who filed objections that

18   may or may not be ultimately recognizable as objections.  The

19   first one was a matter raised by an individual named Marty

20   Green, who --

21        THE COURT:  Is Mr. Green here today?

22        Apparently not, okay.

23        MR. KLEIN:  And I believe you ruled on a portion of

24   that, and we were requesting in the final approval order that

25   you overrule the balance on the merits.

1     THE COURT:  Right.

2     MR. KLEIN:  Another objection was filed but it has

3  not been docketed on behalf of Steven and Patricia Die

4  (phonetic), two individuals who raised objections but provided

5  no support for them in the record.

6     THE COURT:  Are Mr. and Mrs. Die here?  Apparently

7  not.

8     Your proposed order covers that as well?

9     MR. KLEIN:  It does, your Honor.  It overrules that

10  objection on the merits as well.

11     THE COURT:  Okay.

12     MR. KLEIN:  I understand that there are some

13  individuals in the courtroom who wish to address the court.

14  These are not individuals that we heard from.  They did not

15  file objections within the time for filing objections under

16  the court's order and notice process.  However, I understand

17  that they do wish to address the court.  I have no idea what

18  they are going to address the court about.

19     THE COURT:  Any individuals who want to address the

20  court?

21     MR. PEMBERTON:  Yes, your Honor.

22     THE COURT:  Sure.  Come on up, sir.

23     Why don't you tell me your name and tell me how you

24  are involved in this case.

25     MR. PEMBERTON:  My name is Paul Pemberton,

1   P-e-m-b-e-r-t-o-n.

2              THE COURT:  Okay.

3              MR. PEMBERTON:  I received notice of the class action

4   suit, but I received notice two days after the time set for

5   objection or to opt out, and with my interests having to be

6   signed away or waived, if I became a participant in this case,

7   I just wanted to make an objection to that.

8              THE COURT:  An objection to the late notice?

9              MR. PEMBERTON:  To the late notice and --

10             THE COURT:  And how about to the settlement?  Have

11  you had a chance to look at that?

12             MR. PEMBERTON:  Well, no, I did not get a chance to

13  look at that, and I don't know if you are making a decision

14  today, but if counsel would at least give me the time and

15  opportunity to look at it.

16             THE COURT:  Sure.  I will give you seven days to file

17  any objections you like.

18             MR. PEMBERTON:  Thank you very much.

19             THE COURT:  Sure.  Yes, sir.

20             MR. HILL:  Good morning, your Honor.

21             THE COURT:  Come on up.

22             MR. HILL:  My name is Willie Hill.  I received a

23  notice back in January about the hearing this morning for the

24  Ameriquest settlement.  Originally I was from Argent Mortgage.

25  Ameriquest somehow refinanced, and there was, you know, a

1    higher interest rates and everything, so I just wanted to be

2    here to see what would be the settlement.

3           THE COURT:  Sure.  You are welcome to come here as a

4    spectator.  Do you have any objections to what we are doing

5    today?

6           MR. HILL:  No.  I have no objections.

7           THE COURT:  Nice to see you.

8           MR. HILL:  Nice to see you.  Thank you.

9           THE COURT:  Anybody else?

10           MR. COLLINS:  Good morning, Judge.

11           THE COURT:  Good morning.

12           MR. COLLINS:  My name is Monroe Collins.  I received

13    the notice from the court system asking me to show here today

14    in regard to Ameriquest's Mortgage oversight or something of

15    the kind.  I was a class member to receive settlement and I am

16    not quite sure how this whole procedure works out, but I am

17    here because I was requested to be here today.

18           THE COURT:  Are you objecting to the settlement?

19           MR. COLLINS:  No, I am not.

20           THE COURT:  Okay.  Well, we are glad to have you

21    here.  You are going to see exactly how it works out.

22           MR. COLLINS:  Thank you.  So I should stick around?

23           THE COURT:  Sure.  You are welcome.

24           MR. COLLINS:  Thank you.

25           THE COURT:  Anybody else?

1        Yes, ma'am.

2        MS. TIFFAY:  It good morning, your Honor.

3        THE COURT:  Good morning.

4        MS. TIFFAY:  My name is Brenda Moran Tiffay,

5    T-i-f-f-a-y.  I have a settlement, but I wanted to be here

6    this morning to express my views to this court.

7        THE COURT:  Sure.

8        THE WITNESS:  Your Honor, I am a former commissioner

9    for the Illinois Supreme Court, a non-lawyer commissioner,

10   public commissioner, and wanted to express the devastation

11   that Argent has had on me individually.  I tried to refinance

12   my home, I am a disabled widow, and the loan turned out to be

13   totally fraudulent.  I could not get an attorney to represent

14   me.  I couldn't get the case dismissed.  I am still fighting

15   in this battle.  I am -- I will shortly be homeless because of

16   this fraudulent activity.  I don't believe this court should

17   allow Argent or any other conspirators to hide under these

18   national banks.

19       THE COURT:  You haven't filed any objections I take

20   it?

21       MS. TIFFAY:  I have not filed any objections, but I

22   just want to express my objection to the settlement.

23       THE COURT:  Well, I appreciate your views.  If you

24   want to file a formal objection, I am going to give you seven

25   days to do it as I did -- was it Mr. Pemberton?

1        MS. TIFFAY:  I opted out.

2        THE COURT:  You opted out, all right.

3        MS. TIFFAY:  I opted out of the settlement.

4        THE COURT:  Thank you.  I do appreciate your views.

5        MS. TIFFAY:  Thank you.

6        THE COURT:  Anyone else?

7        All right.  I will let the parties respond to Mr.

8    Pemberton's filing, if, in fact, he does file anything within

9    seven days.

10       All right.  Let's proceed.  I will be happy to hear

11   from the attorneys for the settling parties.

12       MR. KLEIN:  Your Honor, we made a substantial written

13   record and it's not my intention to go through all of the

14   elements to establish the settlement here in open court.  I

15   obviously am here to answer any questions you have, and I will

16   put a couple of brief statements on the record.

17       THE COURT:  Put your statements on the record because

18   I do have some things that I won't say concerned about, but I

19   want to talk to you about, and I think to complete the record,

20   I am going to ask you to give me very short written responses

21   to some of my views, which I will send out formally to you.

22       MR. KLEIN:  Sure, your Honor.

23       This is an uncontested motion for final approval as

24   we have discussed.  It would resolve, if approved, 28 class

25   actions that are pending under the egis of the MDL.  It is a

1  $22 million settlement with opportunities for class members to
2  obtain foreclosure prevention counseling, if they are still in
3  their homes.  That counseling would be conducted through a
4  Chicago-based organization that has national capacity for
5  counseling, NHS of Chicago.

6        The settlement meets all of the Armstrong factors for
7  final approval.  I will mention just briefly the most
8  important reasons for approval of the settlement.

9        The first one is that it's an excellent result from
10  the circumstances.  The defendant here went out of business in
11  2007 during this litigation and they have been in a
12  deteriorating financial condition since.  That is supported in
13  the record by the declaration of Diane Tiberty (phonetic),
14  which was submitted to you under seal earlier this week.

15        In addition, the settlement is deserving of final
16  approval because of reaction of the class.  170,000
17  individuals in the class filed claims in this matter and
18  clearly want to be paid.  On the other hand, only 425
19  individuals have opted out, but only a hundred of those 425
20  opt outs were in response to the settlement; that is, 325 or
21  so had occurred before the settlement was even submitted for
22  approval to the Court; that is, the group of opt outs who were
23  pursuing individual litigation in the context of the MDL.

24        In addition, your Honor, there were no significant
25  objections, to the extent there were any objections, with any

1  meat to them at all.  Those have been resolved and withdrawn,
2  and there has been no consideration for the withdrawal of
3  those objections.

4          The litigation history and background in connection
5  with this matter is set out at some length in a joint
6  declaration of counsel, which is docket number 3506.  I am not
7  going to go into the entire history of litigation.  However,
8  there was a very substantial and hard-fought three-and-a-half
9  year period during which the parties contested every issue.
10 There was hard-fought discovery.  We have taken more than 15
11 depositions, we have had more than 200,000 of pages of
12 documents produced, and we have had several terabytes of data
13 so that we were able to review the underlying loan account to
14 evaluate the claims here.

15         One of the issues in this particular MDL, your Honor,
16 is that the 28 cases that were transferred here all included
17 different claims raised in different parts of the country.  In
18 many cases, under a variety of state law.  One of the
19 challenges for us as lead counsel has been to harmonize the
20 various legal theories that are brought in these 28 cases and
21 to create a set of viable classes, all of which is set forth
22 at some length in our final approval papers.

23         What that meant is that there were lawyers all over
24 the country working on these matters, some cases for years
25 before the cases were transferred here, so that as I

1   transition the presentation to the attorneys' fees issues, ask

2   that the Court recognize that the substantial amount of load

3   here was not all generated before this court.  It was

4   generated by 50 law firms in a variety of jurisdictions before

5   the cases were transferred on a variety of matters.

6           I also want to mention that this is not an MDL where

7   there was an initially filed case and then 27 copycat actions

8   filed around the country.  These are very individual actions

9   alleging a variety of different types of facts and alleging

10  claims under a variety of legal theories therefor making the

11  work that was performed by counsel across the country

12  necessary and appropriate in the circumstances.

13          I also want to mention that this case was in

14  mediation for just over two years with a very, very highly

15  skilled and prominent mediator; that is, Judge Daniel

16  Weinstein of JAMS in San Francisco.  He has submitted a

17  declaration which I think supports approval of the settlement

18  here establishing -- that goes into some of the issues raised

19  during mediation.  Among the things, a big portion of the

20  mediation involved plaintiffs' efforts to try to identify

21  other sources of money to get the settlement pool as high as

22  it is, and we have done what I think we needed to do in terms

23  of evaluating whether there were investors, for example, or

24  other individuals who might have liability here.

25          You may remember that earlier on in the case, we

1    attempted to join Roland Arnall, who was the principal of

2    Ameriquest who was then appointed ambassador to the

3    Netherlands.  At the time he attempted to join the case, he

4    was the ambassador to the Netherlands.  We have looked into at

5    some length the possibility of pursuing actions against

6    Ambassador Arnall and, unfortunately, against his estate,

7    because he passed away during our mediation session.  What

8    that means is that we looked at the possibility of bringing

9    those actions to see if there was a potential for increasing

10   the size of the fund here, and after substantial discussion

11   and additional discovery, some formal, some informal, we

12   concluded that those claims were not legally or factually

13   viable.

14          In terms of the fees here, if that's a source of

15   concern, your Honor, we have requested one third of the

16   settlement fund inclusive of costs; that is, that the amount

17   that we are requesting does not have an element where costs

18   would be paid on top.  When you take the costs out of the

19   equation, what we are asking for here for attorneys' fees is

20   just under 30 percent of the entire settlement fund.

21          The other important aspect of our written

22   presentation on attorneys' fees is our load star information,

23   and our load star exceeds $12 million.  We are asking for a

24   fee that is just under 60 percent of counsels' load star, and

25   what that means, of course, is counsel who worked on this

1    case, in some cases for as long as five and a half years,

2    would ultimately be paid less than they invested in this case.

3    We obviously would prefer -- and our interests throughout this

4    process were totally aligned with all the class members.  It

5    has always been in our interest to generate a pot as high as

6    is possible.  And, in fact, our -- the fact that we are taking

7    -- that we are making an application for less than our load

8    star is an important factor in approving the fees as

9    requested.

10        Briefly, your Honor, I would mention the service fees

11   here.  There are about 70 plaintiffs in this action.  Many of

12   them worked very closely with class counsel on their

13   individual cases, many of them performed services in this case

14   before the transfer of this matter to the MDL, and each of

15   them is deserving of this $7500 payment for service in

16   connection with the case.

17        THE COURT:  You are talking about the class

18   representatives?

19        MR. KLEIN:  Class representatives, yes.

20        THE COURT:  How many are there altogether?

21        MR. KLEIN:  Approximately 70, your Honor.

22        THE COURT:  Okay.  And I am interested in what kind

23   of services they performed.

24        MR. KLEIN:  There are some of them who had their

25   depositions taken, both in state court proceedings and in

1   federal proceedings over time.  Many of the individuals worked

2   very closely with class counsel to develop facts relevant to

3   this case.  Some of the class representatives assisted us in

4   identifying individuals who provided important informal

5   discovery on these matters -- that is, former employees of

6   Ameriquest -- and many of the plaintiffs were involved

7   literally at every step of the decisionmaking process.

8        I know, for example, that my firm -- unfortunately, I

9   can't speak to services performed by clients of some of the

10  other firms in this case, but I know that the folks who were

11  my clients were consulted regularly, attended meetings about

12  different issues that arose during the settlement, and

13  attended a meeting or participated in a conference call at

14  which they spent a lot of time evaluating what counsel had

15  done here and offering suggestions and ultimately approving

16  the settlement as it was put together.

17       THE COURT:  Okay.

18       MR. KLEIN:  The final approval order we have

19  presented you with does a number of things.  Obviously, it

20  overrules the objections on the merits, to the extent that

21  they haven't already been addressed by the court.  It does

22  award the fees in the amount that we requested, inclusive of

23  costs.  It approves the service awards.  It confirms the opt

24  outs, the 425.  The list of 425 opt outs is attached to the

25  order that we had submitted to you, and it dismisses the first

1  -- the first amended consolidated complaint with prejudice and

2  would therefore end the class action as part of the MDL.

3          We are prepared to address any questions you might

4  have.

5          THE COURT:  I have some comments, but I want to hear

6  from the other side first.

7          MR. KLEIN:  Sure.

8          MR. LeSAGE:  Good morning, your Honor.

9          THE COURT:  Good morning.

10         MR. LeSAGE:  Defendants really don't have anything to

11  add to plaintiffs' presentation.  I think the important

12  aspects of this case, at least from the defendants'

13  perspective, is that there is no admission of liability.  The

14  defendants, however, are concerned to make sure that we

15  resolve all outstanding claims, and as part of that, we have

16  done our level best to achieve that.  The documents and the

17  statements of plaintiffs' counsel reflect the difficulty that

18  we had with the individuality of many of the claims, the

19  multitude of lawsuits pending from all over the United States.

20         Defendants really appreciate this court's guidance

21  and wisdom and patience throughout this process.  We have been

22  attempting to resolve this since December of '05, and without

23  this court's assistance, we wouldn't be where we are here

24  today.

25         THE COURT:  I am not sure that's the case, but I

1  accept your kind words anyway.

2      MR. LeSAGE:  Thank you.

3      THE COURT:  I will say that you have done a marvelous

4  job, and I really appreciate the good faith efforts on both

5  sides in terms of reaching a conclusion in the mediation

6  process and certainly the fine work of Judge Weinstein, who I

7  know is as competent as you have described.

8      I do approve in principle the settlement, but I am

9  not going to finally approve it, because in terms of my own

10 due diligence, I have a few questions or perhaps supplemental

11 submissions I'd like you to put in the record in some form

12 which will give me some comfort in terms of signing a final

13 order.

14     You mentioned the class representatives.  I am

15 interested in knowing, to the extent you can -- and I am not

16 talking about long pages of documentation.  It seems to me

17 that all the class representatives are getting the same thing,

18 and if it's truly for services of class representative rather

19 than a bonus to put someone's name on a complaint, I'd like to

20 know what each of them did, all 70.  And, again, I am not

21 concerned about long documentation and making more work for

22 you, but I would like to have some idea as to what each of the

23 class representatives did.

24     I am also -- I also think that on the face of it,

25 your attorneys' fees request is certainly a fair one.  Before

1   I get to that, I would be interested in your best guesstimate

2   as to what each of the individual members of the class are

3   going to receive or you anticipate they are going to receive

4   in the settlement.  Yes.

5           MR. KLEIN:  I'm sorry, do you mean in the settlement

6   as a distribution?

7           THE COURT:  In distribution, I'm sorry.

8           MR. KLEIN:  Do you mean the class representatives --

9           THE COURT:  Yes.

10           MR. KLEIN:  -- or the class members?

11           THE COURT:  Class members.

12           MR. KLEIN:  I can address that.  You know, there is a

13   formal distribution plan.  Everyone will not receive the same

14   amount of money.

15           THE COURT:  I understand that.

16           MR. KLEIN:  And we can give you an average obviously

17   which is fairly simple to calculate.

18           THE COURT:  That's exactly what I am talking about.

19           MR. KLEIN:  And that average is going to be about $80

20   a class member.

21           THE COURT:  And is there going to be much variation?

22           MR. KLEIN:  There is going to be some variation.  The

23   distribution plan was very carefully crafted based on loan

24   account data.  We hired an expert to review the account data

25   and evaluate the average damages associated with each type of

1    claim and a second expert who looked at the claims and

2    evaluated the likelihood of success on the merits of claims in

3    the various classes.  So we have tried to calibrate what each

4    member will receive in a way that recognizes the damages

5    associated with their claims, and we think that that's

6    required under the Seventh Circuit case law.

7            THE COURT:  That's helpful, which only, you know,

8    reinforces my concern that we fully document that the class

9    representatives have performed services that justify the very

10   substantial fee that they are receiving vis-a-vis the

11   distribution to the ordinary class members.

12           MR. KLEIN:  That's fine, your Honor.  We will do

13   that.  Let me add one more comment, if it's okay --

14           THE COURT:  Sure.

15           MR. KLEIN:  -- on the record, which is that many of

16   the class representatives, if not all of them, are individuals

17   whose homes were at risk during the entire period of this

18   litigation.  Early on in the litigation, you may remember we

19   did obtain a stay that prevented foreclosure, but all of the

20   class members have been living with this case and the

21   consequences of this case for a very long time and the risk

22   associated with --

23           THE COURT:  I am not suggesting that at the end of

24   the day, they are not going to get what you have requested.

25   Just do what I have asked you to do.

1     MR. KLEIN:  We will.

2     THE COURT:  Okay.  As to the attorneys' fees,

3  certainly the reduction of your fee as compared with the load

4  star, and considering that the expenses are coming out of the

5  fee which is considerably less than the load star, on the

6  surface is very fair.  I would like to find out a little bit

7  more about the load star.  The documentation of the attorneys'

8  work is very uneven in terms of what you have submitted from

9  very, very careful documentation to a kind of careless

10  submission.  And I think there ought to be a minimal standard

11  in the record as to that documentation, and I will give you an

12  order asking for a little supplement as to that.

13     I am also concerned that -- concern is a very strong

14  word; I don't mean to say that.  I also -- it's always a red

15  flag when an amount of attorneys' fees is submitted without

16  any division as to how it's going to be distributed among the

17  attorneys.  This is particularly a red flag when, as I

18  indicated earlier, the documentation as to what the attorneys

19  did is not as careful as it really should be.  So I am

20  interested also as to how you're going to distribute the net

21  attorneys' fees after expenses.  I don't expect you to tell me

22  now, but that will be part of the order that you are going to

23  receive.  Okay?

24     MR. KLEIN:  Your Honor, I just -- because I don't

25  want to leave here unclear about what you are going to be

1   looking for --

2         THE COURT: When you get my order, it will be very

3   clear.

4         MR. KLEIN: -- I was going to ask, is the order going

5   to be specific about the kind of documentation you want --

6         THE COURT: Exactly.

7         MR. KLEIN: -- in connection --

8         THE COURT: Exactly. Be very specific.

9         MR. KLEIN: The other thing I want to add to the

10   record is that the issues among counsel in terms of

11   distribution of fees are very complicated as you can imagine.

12   There are a lot of attorneys involved, a lot of law firms, a

13   lot of law firms, some of them think they did more than we

14   think they did, others of them did more than we understand,

15   but we spent a lot of time working through the issues about

16   distribution to make sure from our perspective, based on what

17   we saw during the MDL and based on our review of their

18   pleadings, that they were fair.

19         I am a little bit concerned about an order, if you

20   are going to -- if you enter an order that might lead to a set

21   of fights on issues that we believe to be resolved. If there

22   is a way for you to review that material either in camera or

23   to give us an order that perhaps gives us some room to explain

24   to you why we divided and how we divided the fees out the way

25   we did, I would prefer that.

1          THE COURT:  Absolutely.  You are going to do both.

2    It will be in camera and you can put any kind of preamble you

3    want.

4          MR. KLEIN:  Okay.

5          THE COURT:  I want a very simple answer to my

6    question.  I don't -- I don't want to give you a lot of busy

7    work.  I am asking you for things that you should know

8    already.  Okay?

9          MR. KLEIN:  I am sure we do.

10         THE COURT:  And you can put any kind of preamble you

11   want to.

12         MR. KLEIN:  Thank you.

13         THE COURT:  All right.  Is there anything else we

14   ought to talk about?

15         I do want you to respond to the one late objection,

16   which I have permitted, the oral objection, if, in fact, it is

17   filed within seven days, and I will ask you to -- I will have

18   my order out to you either today or tomorrow, and I am going

19   to ask that you respond to it.  And certainly, defendants, if

20   you feel it's pertinent for to you respond, you may do so as

21   well.  Defendants will be copied by June 1st, and then I will

22   issue my order shortly thereafter.  Will that give you enough

23   time?

24         MR. KLEIN:  Yes, your Honor.

25         THE COURT:  Or do you want a little more time?

1          MR. KLEIN:  No, we obviously would like to get this

2   wrapped up.

3          THE COURT:  That's why I gave you a short date.

4          MR. KLEIN:  Thank you.

5          THE COURT:  Anything else?

6          MR. KLEIN:  Nothing from plaintiffs.

7          MR. LeSAGE:  Thank you very much, your Honor.

8          THE COURT:  Thank you.

9      (Which were all the proceedings had in the above-entitled

10   cause on the day and date aforesaid.)

11      I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
12

13   _____            _____
     Carolyn R. Cox                     Date
     Official Court Reporter
14   Northern District of Illinois

15   /s/Carolyn R. Cox, CSR, RPR, CRR

16

17

18

19

20

21

22

23

24

25