# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead case No. 05-7097 |
| THIS DOCUMENT RELATES TO:<br><br>CHRISTOPHER & PEGGY NEUBECK and SAMUEL & KIMBERLY KIRK v. AMERIQUEST MORTGAGE COMPANY, AMC MORTGAGE SECURITIES, INC., CITIGROUP GLOBAL MARKETS, and DEUTSCHE BANK NATIONAL TRUST COMPANY in its own capacity and as Trustee for the following trust:  Ameriquest Mortgage Securities Inc., Asset Backed Pass Through Certificates, Series 2005-R11; AMERIQUEST MORTGAGE SECURITIES, INC. ASSET BACKED PASS THROUGH CERTIFICATES, SERIES 2005-R11 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF DECEMBER 1, 2005 WITHOUT RECOURSE;<br>(Case No. 08-cv-795 N.D. Ill.) | Centralized before the Honorable Marvin E. Aspen<br><br><br>JURY TRIAL DEMAND |

## AMENDED COMPLAINT

### INTRODUCTION

1. Plaintiffs seek rescission of their mortgage transactions pursuant to 15 U.S.C. § 1635. Plaintiffs also charge defendants with violation of applicable state law.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claim under the Truth in Lending Act arises under federal law. This Court has supplemental jurisdiction over plaintiffs' claim under state law

pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

## PARTIES

4.     In 2006, plaintiffs Christopher and Peggy Neubeck decided that they wanted to refinance their existing mortgage to get a lower interest rate and to pay off some debt.  At the time, the interest rate on the Neubecks' mortgage was around 9.5%.  Mr. Neubeck began speaking with a representative from Ameriquest who said that he could give the Neubecks a 30 year fixed rated mortgage with an interest rate of 8%.  Mr. Neubeck was also told that the fees charged in association with the loan would be minimal.  In fact, the Neubecks obtained a $179,000 adjustable rate loan from Ameriquest on June 1, 2006 that had initial interest rate of 8.250% and could increase to 14.250%.  Also, the Neubecks were charged $10,335.58 in points and fees to obtain the loan, of which $8,196.08 went directly to Ameriquest.  The Neubecks have since refinanced their mortgage and now have a mortgage with an interest rate of 9.75%.

5.     In 2005, plaintiffs Samuel and Kimberly Kirk spoke to an Ameriquest representative about refinancing their existing mortgage to pay off some credit card bills.  The Ameriquest representative told Mrs. Kirk about a credit repair program and that he would be able to get the Kirks an mortgage with an initial fixed rate of 6.5% that would adjust after three years.  The Kirks were later told by the representative that the rate would be 6.7% and later 6.99%.  The Kirks obtained a $167,197.00 adjustable rate loan from Ameriquest Mortgage Company that closed on October 7, 2005.  The loan had an initial interest rate of 6.990% and could increase to 12.990%  The Kirks paid $12,658.18 in points and fees to obtain the loan, of which $9,287.19 went to Ameriquest.  Also, the Kirks were not told about the pre-payment penalty that they

would be charged if their were to refinance their loan within three years of this transactions.

6. Defendant Ameriquest Mortgage Company originated plaintiffs' mortgages and in connection with those refinancing transactions and took a security interests in plaintiffs' homes. The company's main offices are in Orange, California, but it does business in this district.

7. Defendant Ameriquest Mortgage Securities, Inc. is an indirect wholly-owned subsidiary of Ameriquest Mortgage Company.

8. CitiGroup Global Markets is the assignee of the Neubeck loan.

9. Defendant Deutsche Bank National Trust Company, in its own capacity or in its capacity as a trustee, is or was an assignee of the Kirk mortgage and does business in this district.

10. Defendant Deutsche Bank National Trust Company, either in its own capacity or as trustee for various trusts, has been an assignee of various mortgages originated by Ameriquest. The relevant trust for the Kirk loan has been identified as: Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2005-R11 Under The Pooling and Servicing Agreement Dated As of December 1, 2005, Without Recourse. That same trust is are also being sued directly, as permitted by Rule 17(b) of the Federal Rules of Civil Procedure.

### COUNT I - TRUTH IN LENDING ACT VIOLATION

11. Plaintiffs incorporate paragraphs one through ten above.

12. Ameriquest's disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

### REGULATORY FRAMEWORK

13. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various

credit terms available to them and avoid the uninformed use of credit.

14. Accordingly, the Board of Governors of the Federal Reserve System promulgated Regulation Z to implement the TILA. 12 C.F.R. § 226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. § § 226.18, 226.22, 226.5.

15. Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. § 226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. § 226.18(g)(1).

16. The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the

Board, of his intention to do so.

15 U.S.C. § 1635(a).

17. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

18. To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

19. Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. § 226.23(a)(1).

20. The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose[]" the consumer's rescission rights. See 12 C.F.R. § 226.23(b)(1).

21. More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> > (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
> >
> > (ii) The consumer's right to rescind the transaction.
> >
> > (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
> >
> > (iv) The effects of rescission, as described in paragraph (d) of this section.
> >
> > (v) The date the rescission period expires

12 C.F.R. § 226.23(b)(1).

22. Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

> When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. § 226.23(d)(1).

23. Subparagraph (d)(2) states:

> Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. § 226.23(d)(2).

24. The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. 12 C.F.R. Part 226, Supp. I, para. 23(d)(2)-1.

25. Moreover, under the statute, any consumer who has a right to rescind a mortgage refinancing transaction under 15 U.S.C. § 1635 "may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c).

## DEFECTIVE DISCLOSURES

26. Ameriquest did not comply with its disclosure obligations under the Truth in Lending Act in connection with the Neubeck mortgage refinancing transaction. The Notice of Right to Cancel forms that were delivered to the Neubecks were on an H-8 form, instead of an H-9 form, in violation of 12 C.F.R. § 226.23(b)(2) and did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v). Also, the Neubecks were given a form which said they would owe either $350 or $207 for an appraisal fee if they backed out of the deal, which misrepresented the effects of rescission in violation of 12 C.F.R. § 226.23(b)(1)(iv). Accordingly, the Neubecks sent a rescission notice to Ameriquest and Deutsche Bank on August 13, 2008.

27. Ameriquest did not comply with its disclosure obligations under the Truth in Lending Act in connection with the Kirk refinancing transaction. The Kirks only received two Notice of Right to Cancel forms, rather than two for each of them as required by 12 C.F.R. § 226.23(b)(1). Also, the Notice of Right to Cancel forms delivered at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1)(v). Accordingly, the Kirks sent a rescission notice to Ameriquest and Deutsche Bank on June 26, 2008.

28. Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12

C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

29. Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs seeks rescission of the mortgage transactions.

30. Within twenty days of receiving the rescission notice, defendants should have released their security interest in plaintiffs' homes and paid back to plaintiffs any money or property that plaintiffs have paid to them in connection with the loan. See 12 C.F.R. § 226.23(d)(2). Defendants have not done either.

31. Defendants' failure to honor the rescission request is a violation of the Truth in Lending Act. Plaintiffs are entitled to rescission plus statutory damages and other relief.

## COUNT II - VIOLATION OF STATE LAW

32. Plaintiffs incorporate paragraphs one through ten above.

33. In connection with trade or commerce, Ameriquest made false and misleading statements to plaintiffs intending to induce reliance. More specifically, Ameriquest engaged in a bait and switch by baiting plaintiff into the mortgage transaction by offering a relatively favorable set of terms and then switching at the closing to more expensive terms.

34. Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under applicable state law.

35. Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them injury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a. canceling the appropriate defendants' security interest in plaintiffs' home and ordering defendants to provide plaintiffs with the money to which plaintiffs are entitled to under

12 C.F.R. § 226.23(d)(2);

     b.     awarding plaintiffs actual damages proximately caused by defendants' failure to comply with 12 C.F.R. § 226.23(d)(2);

     c.     awarding appropriate statutory damages;

     d.     ordering defendants to pay costs, penalties, and attorneys fees;

     e.     awarding plaintiffs actual and punitive damages;

     f.     granting such other relief as the Court deems just and proper.

Respectfully submitted by:

s/ Anthony P. Valach, Jr
Counsel for the Plaintiffs

THE LAW OFFICES OF DANIEL HARRIS
Anthony Valach
Daniel Harris
150 N. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone: (312) 960-1802
Facsimile: (312) 960-1936
lawofficedh@yahoo.com