**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROSE J. BLACK and  DAVID E. BLACK, SR., | ) | |
| | ) | |
| Plaintiffs, | ) | 06 C 4418 |
| | ) | |
| v. | ) | Judge Lefkow |
| | ) | |
| ARGENT MORTGAGE COMPANY, LLC, | ) | Transferred to Judge Aspen for |
| HOMEQ SERVICING CORPORATION; | ) | pretrial proceedings under MDL |
| WELLS FARGO BANK, N.A., PARK PLACE | ) | #1715, Lead Case # 05 C 7097 |
| SECURITIES, INC., Asset Backed Pass Through | ) | |
| Certificates, Series 2004-WHQ1 under the Pooling | ) | |
| and Servicing Agreement dated as of September 1, | ) | |
| 2004; OCWEN LOAN SERVICING, LLC; | ) | |
| and DOES 1-5, | ) | |
| | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT

### INTRODUCTION

1.      Plaintiffs Rose J. Black and David E. Black, Sr. bring this action against a "subprime" mortgage lender to secure relief, including rescission, for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, and  the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq. ("ECOA").

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §§1640 (TILA) and 1691e (ECOA).

3.      Defendants do business in the District and are deemed to reside here.

1

Venue is therefore proper under 28 U.S.C. §1391(c).

**PARTIES**

4.      Plaintiffs Rose J. Black and David E. Black, Sr., are husband and wife and own and reside in a single family home located at 415 Helen, Third City, MI 48135.

5.      Defendant Argent Mortgage Company, LLC is a foreign corporation which maintains offices in and does business in Illinois.  Its registered agent and office are National Registered Agents, Inc., 200 W. Adams, Chicago, IL 60606.

6.      Defendant Argent Mortgage Company, LLC is engaged in the business of originating "subprime" mortgages.

7.      Defendant Argent Mortgage Company, LLC makes more than 26 loans per year.

8.      Defendant Argent Mortgage Company, LLC is a "creditor" as defined in TILA and Regulation Z.

9.      Defendant HomEq Servicing Corporation is a foreign corporation which transacts business in Illinois.  Its registered agent and office are Illinois Corporation Service Co., 801 Adlai Stevenson Drive,   Springfield, IL 62703-4261.  HomEq claimed the right to payments under plaintiffs' loan.

10.      Defendant Ocwen Loan Servicing, LLC is a foreign limited liability company which transacts business in Illinois and Michigan.  Its registered agent and office are Illinois Corporation Service Co.,  801 Adlai Stevenson Drive, Springfield, IL 62703-4261. Ocwen claims the right to payments under plaintiffs' loan and is a necessary party.

11.      Defendant Wells Fargo Bank, N.A., ("Wells Fargo") is a Maryland

corporation that does business in Illinois.  It has offices at 9062 Old Annapolis Road, Columbia, MD 21045-1951.  It is in the business of, among other things, buying and holding ownership rights to loans originated by defendant Argent.

12.     Defendant Park Place Securities, Inc., is a Delaware corporation which transacts business in Michigan.  It is the beneficial owner of some loans originated by Argent Mortgage Company, including plaintiffs.'  Its registered agent is National Registered Agents, Inc., located at 2030 Main St., Suite 1030, Irvine, CA 92614.

13.     In the event Wells Fargo does not own plaintiffs' loan, the owners are named as Does 1-5.

## FACTS RELATING TO PLAINTIFFS

14.     Prior to August 12, 2004, plaintiffs applied for a mortgage with Argent Mortgage Company, LLC.

15.     Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

16.     The loan was closed on August 12, 2004.  However, the terms were changed on August 17, 2004, after the closing.

17.     Immediately prior to the closing, plaintiffs were informed that the loan terms were being altered to their detriment, as set forth on Exhibit A.

18.     The following are documents  relating to the loan:

a.     A note, Exhibit B.  Only David E. Black, Sr. signed the note.

b.     A mortgage, Exhibit C.  Both Rose J. Black and David E. Black, Sr. signed the  mortgage.

3

        c.     Two settlement statements, one dated August 12, 2004, <u>Exhibit D</u>, and one dated August 17, 2004, <u>Exhibit E</u>.

        d.     A Truth in Lending disclosure statement, <u>Exhibit F</u>.

        e.     The official Federal Reserve Board notice of right to cancel, <u>Exhibit G</u>.

19.     Prior to closing, Argent or its agent arranged for an appraisal of plaintiffs' property.

20.     Plaintiffs never saw an appraiser come to inspect the property, nor did they receive a copy of the appraisal report or information on how to obtain one.

21.     On the pre-typed loan application prepared by Argent, plaintiffs' property is appraised at $167,500. <u>Exhibit I</u>, section VI. This appraisal value was substantially and artificially inflated.

22.     On information and belief, other houses in plaintiffs' neighborhood had a listed market value of $140,000 at the time of plaintiffs' refinancing.

23.     Additionally, on the pre-typed loan application prepared by Argent, Mr. Black's monthly income is listed as $6,918.75. <u>Exhibit I</u>, section V.

24.     This statement was false. Mr. Black's monthly income was $5,500 per month.

25.     Plaintiffs provided truthful and accurate information concerning their income to Argent, including supporting documentation. Plaintiffs did not learn about the inflated income on the loan application until after contacting his current attorneys.

26.     Also, on the pre-typed loan application prepared by Argent, plaintiffs' property is listed as being acquired by plaintiffs in 1987. Exhibit I, section II.

27.     On information and belief, plaintiffs purchased the property in 1989.

28.     Argent intended to falsify the value of plaintiffs' home, Mr. Black's income, and the year plaintiffs purchased their home on the application it prepared.  It did so in order to increase the loan amount for which plaintiffs appeared to qualify; this, in turn, increased the lender's "points and fees," interest income and profits - the amount of each of which is to a substantial degree determined by the size of the loan.

29.     Argent then arranged to have plaintiffs sign the application containing false information at closing.  The application was one of scores of documents and hundreds of pages of documents presented to plaintiffs at closing.  Plaintiffs could not possibly have reviewed each for accuracy at that time.

30.     Finally, the disbursements on the two settlement statements are different. The actual consummation occurred when plaintiffs received the statement dated August 17, 2004 and proceeded with the loan.

31.     Plaintiffs were later directed to make payments to HomEq Servicing Corporation, and then subsequently to Ocwen Loan Servicing, LLC.

32.     After plaintiffs filed suit, Argent and/or HomEq stopped sending them monthly statements.  They received their last statement in approximately October, 2006. Plaintiffs called HomEq to inquire, and the HomEq employees who answered the phone simply said they would "look into it."

33.     In 2006, plaintiffs mailed HomEq a check for their monthly payment as

usual.  HomEq mailed it back to them, without explanation.

34.     All such servicing problems are the direct result of plaintiffs having filed suit against defendants.  Customers who do not file lawsuits do not experience these types of problems at all, to the same extent or with the same degree of regularity.

35.     On information and belief, Wells Fargo Bank, N.A., holds legal title to plaintiffs' loan, as trustee.  Park Place Securities, Inc., is the beneficial owner of plaintiffs' loan under Asset Backed Pass Through Certificates, Series 2004-WHQ1 under the Pooling and Servicing Agreement dated as of September 1, 2004.

36.     In the event Park Place Securities, Inc., does not own plaintiffs' loan or Wells Fargo Bank, N.A. does not hold title, (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

## COUNT I – TILA

37.     Plaintiffs incorporate paragraphs 1-36.

38.     In order to give consumer borrowers the opportunity to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three days of receiving notice of their right to rescind, whichever is later.  More specifically, the statute, provides that:

> **Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and**

**rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.** (15 U.S.C. § 1635(a)).

39.     To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

**When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.** (15 U.S.C. § 1635(b).)

40.     To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

**The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.** (15 U.S.C. § 1635(a).)

41.     Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. The regulation restates the statutory rescission right, 12 C.F.R. § 226.23(a), and requires that the creditor "deliver" to each person entitled to rescind "two copies" of a document that "clearly and conspicuously disclose" 12 C.F.R. § 226.23(b)(1) the borrower's rescission rights.

42.     More specifically, the regulation provides:

7

**In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(i) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(ii) The consumer's right to rescind the transaction.**

**(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(iv) The effects of rescission, as described in paragraph (d) of this section.**

**(v) The date the rescission period expires.** (12 C.F.R. § 226.23(b)(1).)

## DEFECTIVE NATURE OF DISCLOSURES

43.     In connection with the plaintiffs' loan, Argent Mortgage Company, L.L.C. failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, and the financial disclosures, required by 15 U.S.C. §1638 and 12 C.F.R. §226.18, for (without limitation) the following reasons:

### Notices Confusing Where Less Than All Owners Are Obligated

44.     Exhibit E is inherently confusing with respect to who has a right to cancel in a case in which less than all of the persons signing the mortgage sign the note. The confusing portions were added by Argent to the official Federal Reserve Board text.

45.     The top of Exhibit E has only Mr. Black's name on it, and is addressed to "borrower(s)." The text is addressed to "You," which is reasonably interpreted as applying to the individual whose name appears directly above. The bottom of the form states that "Each borrower" has the right to cancel, which is reasonably interpreted as meaning the persons named

8

as "borrower(s)" at the top of the document.  While there are signature lines for both plaintiffs at the bottom of the form, they are there described as "Borrower/ Owner," which presumably means something different than just "borrower."

46.    The statute gives not only each person obligated to repay the loan but each person who resides in and has an ownership interest in the property the right to cancel, and requires a notice that unequivocally tells each such person that they have the right to cancel.

### Misdating

47.    Since the final loan terms were not agreed upon until plaintiffs received the August 17, 2004 settlement statement and elected to proceed with the loan, all of the documents are misdated, and the rescission period was misdescribed.

48.    Notice of rescission has been given to defendants.  A copy is attached as Exhibit H.

49.    The loan has not been rescinded.

50.    Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

51.    15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

a.  A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

b.  Statutory damages for the underlying disclosure violation;

c.  If appropriate, statutory damages for failure to rescind;

d.  Attorney's fees, litigation expenses and costs.

e.  Such other or further relief as the Court deems appropriate.

## COUNT II – ECOA

52.  Mrs. Black incorporates paragraphs 1-51.

53.  This claim is against Argent.

54.  On information and belief, the majority of the instances in which less than all owners of the property sign a note in favor of defendant are where a husband and wife own the property and only the husband signs the note.

55.  On information and belief, it is defendant's practice, if the wife does not have an income and/or her credit score is no better than the husband's, to prepare the loan documents in this manner.

56.  Defendant's practice thus impairs and obfuscates the cancellation rights of women, and married women particularly, because of their gender and marital status, in violation of the ECOA's prohibition against discrimination on such bases.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendant for:

a.  Appropriate statutory and punitive damages;

b.  Attorney's fees, litigation expenses and costs.

10

c.  Such other or further relief as the Court deems appropriate.

### COUNT III – MICHIGAN MORTGAGE BROKERS, LENDERS AND SERVICERS LENDING ACT

57.  Plaintiffs incorporate paragraphs 1-36.  This claim is against  Argent Mortgage Company.

58.  Argent engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by fraudulently putting an inflated value of plaintiffs' property on the loan application.

59.  Argent engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by misrepresenting plaintiffs' ability to qualify for the mortgage loan and the value of the dwelling that secured payment of the mortgage loan.

60.  On August 12, 2004, Argent represented that the plaintiffs qualified for a $142,375 loan and plaintiffs were induced to close with Argent by means of this misrepresentation.

61.  Defendant Argent made the representation in the course of trade and commerce.

62.  Defendant Argent made the representation for the purpose of inducing reliance, in the form of the plaintiffs securing a $142,375 loan for which they did not qualify, in order to increase the broker's commission and the lender's points and fees, interest and profits.

63.  Plaintiffs have suffered an injury as a result of defendants' misrepresentations.  Their options for refinancing with reputable mortgage companies have been severely limited by defendants' actions.

64.  Argent engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by misrepresenting Mr. Black's monthly income.

11

65.     Plaintiffs were induced to close with Argent by means of these misrepresentations.

66.     Defendant Argent made the representation in the course of trade and commerce.

67.     Defendant Argent made the representation for the purpose of inducing reliance, in the form of the plaintiffs securing a $142,375 loan for which they did not qualify, in order to increase the broker's commission and the lender's points and fees, interest and profits.

68.     Plaintiffs have suffered an injury as a result of defendants' misrepresentations.

WHEREFORE, the Court should enter judgment in favor of the plaintiffs and against Argent for:

a.      A declaratory judgment, MCL §445.1681(1)(a);

b.      Injunctive relief, MCL §445.1681(1)(b);

c.      Appropriate damages, MCL §445.1681(1)(c)

d.      Attorney's fees, litigation expenses and costs of suit; and

e.      Such other and further relief as the Court deems proper.

## **COUNT IV - ECOA**

69.     Plaintiffs incorporate ¶¶ 1-36 above. This claim is against defendants Argent and HomEq.

70.     Plaintiffs were applicants within the meaning of 15 U.S.C. §1691a(b) and Regulation B (which defines "applicant" to include persons who have received credit).

71.     By filing this lawsuit in good faith pursuant to the Consumer Credit

Protection Act, plaintiffs were and are engaged in a statutorily protected activity.

72. As a result of filing this lawsuit, plaintiffs have suffered and continue to suffer adverse actions at the hands of defendants. Argent and HomEq have, in ways detailed above and in other ways, taken retaliatory action against these and other plaintiffs and their accounts. These actions constitute "an unfavorable change in the terms of an account that does not affect all or a substantial portion of a class of the creditor's accounts." 12 C.F.R. § 202.2 (c)(1)(ii).

73. A direct causal connection exists between plaintiffs' filing suit and defendants' subsequent treatment of their accounts, as detailed above.

74. As a result of defendants' conduct, plaintiffs have suffered actual damages and are entitled to recover actual damages as well as statutory damages, punitive damages, equitable and declaratory relief, costs and attorney fees.

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

a. Actual and statutory and punitive damages according to proof;

b Reasonable attorneys' fees and costs;

c. Injunctive relief, if the practices complained of have not ceased or do not cease immediately; and

d. Such other and further relief the court deems proper and just.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman

13

Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## **JURY DEMAND**

Plaintiffs demand trial by jury.

s/ Daniel A. Edelman
Daniel A. Edelman

## <u>CERTIFICATE OF SERVICE</u>

       I, Daniel A. Edelman, hereby certify that on August 20, 2010, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.  I also certify that a copy was sent by U.S. mail to parties without email addresses.

| | |
|---|---|
| Bernard E. LeSage<br>blesage@buchatler.com | Ocwen Loan Servicing, LLC<br>c/o Registered Agent<br>Illinois Corporation Service Co. |
| Jonathan N. Ledsky<br>jledsky@vbhlc.com | 801 Adlai Stevenson Drive<br>Springfield, IL 62703-4261. |
| Craig Allen Varga<br>cvarga@vbhlc.com | |
| Renee Lynn Zipprich<br>rzipprich@dykema.com | |
| Richard Eric Gottlieb<br>rgottlieb@dykema.com | |

<u>s/ Daniel A. Edelman</u>
Daniel A. Edelman

T:\17654\Pleading\3rd Amended Complaint_Pleading.WPD

15

# EXHIBIT A

Argent Mortgage Company, LLC
2550 Golf Road, East Tower, 10th Floor
Rolling Meadows, IL 60008

(800)369-5117

## BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

DAVID E BLACK, Sr.

Date: August 12, 2004

Notice: [X] Delivered   [ ] Mailed

Loan Number: 0061763652 - 9703

Description of Credit Request:

415 HELEN ST
GARDEN CITY,MI 48135

[X] 1st Trust Deed/Mortgage   [ ] 2nd Trust Deed/Mortgage

[ ] Other: _____

Property Address: 415 HELEN ST

GARDEN CITY,  MI 48135                County of WAYNE

### TYPE OF TRANSACTION:

[ ] Purchase      [X] Refinance      Other _____

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [ ] Fixed Rate Loan  [X] Adjustable Rate Loan | [ ] Fixed Rate Loan  [X] Adjustable Rate Loan |
| Amount Financed:  $ 141,222.30 | Amount Financed:  $ 135,698.43 * |
| Settlement Charges: $ 1,902.70 (Includes all Prepaid Finance Charges) | Settlement Charges: $ 11,689.97 * (Includes all Prepaid Finance Charges) |
| Loan Amount:  $ 142,375.00 | Loan Amount:  $   142,375.00 |
| Annual Percentage Rate: 7.937          % | Annual Percentage Rate: 8.344          %* |
| Term:          360 | Term:          360 |
| Initial Interest Rate: 7.350          % | Initial Interest Rate:  7.350          % |
| Margin:      6.000          % | Margin:      6.000          % |
| Prepayment Penalty:   [X] YES   [ ] NO | Prepayment Penalty:   [X] YES   [ ] NO |

Borrower(s) and  Argent Mortgage Company, LLC hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

Borrower  DAVID E BLACK, Sr.                    Date          Borrower                                          Date

Borrower                                          Date          Borrower                                          Date

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

' Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the ıs of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.

STMTCO (Rev. 3/99)

# EXHIBIT B

Loan Number: 0061763652 - 9703

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

| August 12, 2004 | Rolling Meadows | IL |
|---|---|---|
| Date | City | State |

415 HELEN ST, GARDEN CITY, MI 48135
Property Address

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ **142,375.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Argent Mortgage Company, LLC.**

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **7.350 %**. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
   **(A) Time and Place of Payments**
   I will pay principal and interest by making payments every month.
   I will make my monthly payments on the first day of each month beginning on **October 1, 2004** .
   I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, **September 1, 2034** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my payments at: **505 City Parkway West, Suite 100, Orange, CA 92868**

   or at a different place if required by the Note Holder.
   **(B) Amount of My Initial Monthly Payments**
   Each of my initial monthly payments will be in the amount of U.S. $ **980.93**. This amount may change.
   **(C) Monthly Payment Changes**
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
   The interest rate I will pay may change on the first day of, **September, 2006** and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
   **(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
   If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
   **(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage point(s) **(6.000%)** to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:_____

Loan Number: 0061763652 - 9703

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.350** % or less than **7.350%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **1.000%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.350** % or less than **7.350** %.

**´E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Prepayment Made Three (3) year(s) After the Date of this Note**

If I make a prepayment commencing on or after the Three (3) year anniversary of the date of this Note, I may make that prepayment, in full or in part, without the imposition of a prepayment charge by the Lender.

**(B) Prepayment Made Within Three (3) year(s) of the Date of this Note**

I agree to pay Lender a prepayment charge if I make a prepayment before the Three (3) year(s) anniversary of the date this Note is executed. The prepayment charge I will pay will be equal to one percent (1%) on the amount by which the total prepayment(s) within any 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

**(C) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives first to pay any prepayment charge and next in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(D) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and the Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

Initials:_____

08/12/2004 10:52:58 AM

Loan Number: 0061763652 - 9703

9.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.  **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.  **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
Borrower   DAVID E BLACK, Sr.                    Borrower

_____(Seal)          _____(Seal)
Borrower                                         Borrower

# EXHIBIT C

# MORTGAGE

Return To:

Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated August 12, 2004
together with all Riders to this document.
(B) "Borrower" is DAVID E BLACK, Sr. and ROSE J BLACK, His Wife

Borrower's address is 415 HELEN ST, GARDEN CITY,MI 48135
. Borrower is the mortgagor under this Security Instrument.

MICHIGAN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3023 1/01

0061763652 - 9703

AM6MI (0310)

Page 1 of 16                        Initials:_____          08/12/2004 10:52:58

VMP Mortgage Solutions (800)521-7291

(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware
Lender's address is One City Boulevard West   Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated August 12, 2004
The Note states that Borrower owes Lender one hundred forty-two thousand three
hundred seventy-five and 00/100                                          Dollars
(U.S. $ 142,375.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than September 1, 2034          .

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials:_____

AM6MI (0310)                          Page 2 of 16                          Form 3023 1/01

0061763652 - 9703

08/12/2004 10:52:58

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County                                      [Type of Recording Jurisdiction]
of WAYNE                                      [Name of Recording Jurisdiction]:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 35015020365000                          which currently has the address of
415 HELEN ST                                                           [Street]
GARDEN CITY                                     [City], Michigan 48135          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials:_____

AM6MI (0310)                          Page 3 of 16                          Form 3023 1/01

0061763652 - 9703

08/12/2004 10:52:58

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

0061763652 - 9703

08/12/2004 10:52:58

for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials:_____

AM6MI (0310)                    Page 5 of 16                    Form 3023 1/01

0061763652 - 9703

08/12/2004 10:52:58

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and

Initials:_____

0061763652 - 9703

08/12/2004 10:52:58

Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Initials:_____

AM6MI (0310)                      Page 7 of 16                      Form 3023 1/01

0061763652 - 9703

08/12/2004 10:52:58

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward

Initials: _____

AM6MI (0310)                    Page 8 of 16                    Form 3023 1/01

0061763652 - 9703

08/12/2004 10:52:58

the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Initials:_____

AM6MI (0310)                          Page 9 of 16                          Form 3023 1/01

0061763652 - 9703

08/12/2004  10:52:58

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

Initials:_____

0061763652 - 9703

08/12/2004 10:52:58

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials:_____

AM6MI (0310)                           Page 11 of 16                           Form 3023 1/01

0061763652 - 9703

08/12/2004 10:52:58

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

Initials: _____

AM6MI (0310)                    Page 12 of 16                    Form 3023 1/01

0061763652 - 9703

08/12/2004 10:52:58

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous

Initials: _____

AM6MI (0310)                          Page 13 of 16                          Form 3023 1/01

0061763652 - 9703

08/12/2004 10:52:58

Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

Initials:_____

AM6MI (0310)                          Page 14 of 16                          Form 3023 1/01

0061763652 - 9703

08/12/2004 10:52:58

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          DAVID E BLACK, Sr.          -Borrower


_____          _____ (Seal)
                                                                      -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                     -Borrower


0061763652

AM6MI (0310)                    Page 15 of 16                    Form 3023 1/01


08/12/2004 10:52:58

STATE OF MICHIGAN,       County ss:

Acknowledged before me in _____ County,
Michigan, on _____ by
           Day/Month/Year

_____

_____

_____


_____
Notary Public, State of Michgan,
County of
My Commission Expires
Acting in the County of


This instrument was prepared By:
      Argent Mortgage Company, LLC
      Haley Clark
      2550 Golf Road, East Tower, 10th Floor, Rolling Meadows, IL 60008



# ADJUSTABLE RATE RIDER

### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 12th day of August , 2004   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

415 HELEN ST, GARDEN CITY, MI  48135

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of   7.350 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of  September, 2006  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index.   The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials_____

Loan Number:  0061763652 - 9703

08/12/2004 10:52:58 AM

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.350% or less than 7.350%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.350)% or less than 7.350)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials_____

Loan Number: 0061763652 - 9703

08/12/2004 10:52:58 AM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)   _____ (Seal)
Borrower DAVID E BLACK, Sr.          Borrower ROSE J BLACK

_____ (Seal)   _____ (Seal)
Borrower                        Borrower

Loan Number: 0061763652 - 9703

08/12/2004 10:52:58 AM

# EXHIBIT D

HUD-1A  OMB NO. 2502-0491

| A. | U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT |
|---|---|

### SETTLEMENT STATEMENT
Optional Form for Transactions without Sellers

| NAME AND ADDRESS OF BORROWER: | NAME AND ADDRESS OF LENDER: |
|---|---|
| DAVID E. BLACK, SR. AND SE J. BLACK HIS WIFE , HELEN ST. GARDEN CITY, MI 48135 | ARGENT MORTGAGE CO., LLC ISAOA 2550 GOLF ROAD EAST TOWER 10TH FLOOR ROLLING MEADOWS, IL 60008 |

| PROPERTY LOCATION: | SETTLEMENT AGENT: | SEARCH2CLOSE | |
|---|---|---|---|
| 415 HELEN ST. GARDEN CITY, MI 48135 Wayne County, Michigan | PLACE OF SETTLEMENT: 3000 Corporate Exchange Drive, Suite 401 Columbus, OH 43231 | | |
| | SETTLEMENT DATE: | August 12, 2004 | Disburse:08/17/04 |
| | LOAN NUMBER: | 0051763852-9703 | |

| I. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | | |
|---|---|---|---|---|
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | 1501. SUMMER 2004 TAXES to GARDEN CITY TREASU | | 1,518.99 |
| 801. Loan Origination Fee  3.0030% to AMERICAN ELITE FINANCIAL | 4,275.52 | 1502. PAYMENT ON ACCOUNT | | |
| 802. Loan Discount                        % to | | | | |
| 803. Appraisal Fee          to HERITAGE  PROPERTIES | 275.00 | 1503. PAYMENT ON ACCOUNT | | |
| 804. Credit Report          to | | | | |
| 805. YIELDSPREAD PREMIUM  to AMERICAN ELITE FINANCIAL    POC:B1423.75 | | 1504. PAYMENT ON ACCOUNT | | |
| 806. TAX RELATED SERVICE FEE to ARGENT MORTGAGE CO., LLC IS | 70.00 | | | |
| 807. FLOOD SEARCH FEE       to ARGENT MORTGAGE CO., LLC IS | 16.00 | 1505. PAYMENT ON ACCOUNT | | |
| 808. ADMIN FEE             to ARGENT MORTGAGE CO., LLC IS | 175.00 | | | |
| 809. PROCESSING FEE         to AMERICAN ELITE FINANCIAL | 950.00 | 1506. PAYMENT ON ACCOUNT | | |
| 810. UNDERWRITING FEE       to ARGENT MORTGAGE CO., LLC IS | 375.00 | | | |
| 811. | | 1507. PAYMENT ON ACCOUNT | | |
| 812. | | | | |
| 813. | | 1508. PAYMENT ON ACCOUNT | | |
| 814. | | | | |
| 815. | | 1509. PAYMENT ON ACCOUNT | | |
| 816. | | | | |
| 817. | | 1510. PAYMENT ON ACCOUNT | | |
| 818. | | | | |
| 819. | | 1511. PAYMENT ON ACCOUNT | | |
| 820. | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | 1512. COUNTY TAXES | | |
| 901. Interest  08/17/04  to  09/01/04  @ $        28.67000/day | 430.05 | | | |
| 902. Mortgage Insurance Premium for           months to | | 1513. Payoff first mortgage to HOMECOMING FINAN | | 115,836.24 |
| 903. Hazard Insurance Prem for      1.0 yr to ALLSTATE INSURANCE | 3,456.00 | | | |
| 904. | | 1514. | | |
| 905. | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | 1520. TOTAL DISBURSED | | 117,355.23 |
| 1001. Hazard Insurance   1.000 months @ $   144.00 per month | 144.00 | (enter on line 1603) | | |
| 1002. Mortgage Insurance       months @ $        per month | | | | |
| 1. City/Town Taxes         months @ $        per month | | | | |
| 4. County Taxes   4.000 months @ $   172.10 per month | 688.40 | | | |
| 1005. Assessments          months @ $        per month | | | | |
| 1006.                     months @ $        per month | | | | |
| 1008.                     months @ $        per month | 0.00 | | | |
| 1100. TITLE CHARGES | | | | |
| 1101. Settlement Fee        to SEARCH2CLOSE | 400.00 | | | |
| 1102. Title Search          to | | | | |
| 1103. DISBURSEMENT FEE      to SEARCH2CLOSE | 125.00 | | | |
| 1104. TAX SERVICE FEE       to SEARCH2CLOSE | 25.00 | | | |
| 1105. Document Prep.        to | | | | |
| 1106. Notary Fees           to | | | | |
| 1107. Deed Prep             to LARRY BAISDEN | | | | |
| (includes above item numbers:                    ) | | | | |
| 1108. Title Insurance       to SEARCH2CLOSE | 370.25 | | | |
| (includes above item numbers:                    ) | | N. NET SETTLEMENT | | |
| 1109. Lender's Coverage   $      142,375.00      370.25 | | | | |
| 1110. Owner's Coverage    $ | | | | |
| 1111. EPA ENDORSEMENT       TICOR TITLE INSURANCE COMPA  POC:B0.00 | | | | |
| 1112. COMPREHENSIVE ENDORS   TICOR TITLE INSURANCE COMPA  POC:B0.00 | | N. NET SETTLEMENT | | |
| 1113. ARM ENDORSEMENT       TICOR TITLE INSURANCE COMPA  POC:B0.00 | | | | |
| 1114. SHIPPING AND HANDLING F to SEARCH2CLOSE | 45.00 | 1600. Loan Amount | $ | 142,375.00 |
| 1115. WIRE FEE             to SEARCH2CLOSE | 20.00 | | | |
| 1116. FILING FEE           to SEARCH2CLOSE | 90.00 | | | |
| 1117. | | 1601. Plus Cash/Check from Borrower | $ | 0.00 |
| 1118. | | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | 1602. Minus Total Settlement Charges (line 1400) | $ | 11,930.22 |
| 1201. Recording fees: Mortgage $      ; Releases $ | | | | |
| 1202. City/County Tax/Stamps:     Mortgage       $ | | | | |
| 1203. State Tax/Stamps:           Mortgage       $ | | 1603. Minus Total Disbursements to Others (line 1520) | $ | 117,355.23 |
| 1204. | | | | |
| 1205. | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | 1604. Equals Disbursements to Borrower (after expiration | | |
| 1301. Survey | | of any applicable rescission | | |
| 1302. Pest Inspection | | period required by law) | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | $ | 13,089.55 |
| 1400. TOTAL SETTLEMENT CHARGES  (enter on line 1602) | 11,930.22 | | | |

Certified to be a true copy.

HUD-1A OMB NO. 2502-0491

| A. | U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT |
|---|---|

## SETTLEMENT STATEMENT
Optional Form for Transactions without Sellers

| NAME AND ADDRESS OF BORROWER: | NAME AND ADDRESS OF LENDER: |
|---|---|
| DAVID E. BLACK, SR. AND<br>HELEN J. BLACK HIS WIFE<br>.   HELEN ST.<br>.RDEN CITY, MI 48135 | ARGENT MORTGAGE CO., LLC ISAOA<br>2550 GOLF ROAD EAST TOWER 10TH FLOOR<br>ROLLING MEADOWS, IL 60008 |

| PROPERTY LOCATION: | SETTLEMENT AGENT: | SEARCH2CLOSE |
|---|---|---|
| 415 HELEN ST.<br>GARDEN CITY, MI 48135<br>Wayne County, Michigan | PLACE OF SETTLEMENT: 3000 Corporate Exchange Drive, Suite 401<br>Columbus, OH 43231 | |
| | SETTLEMENT DATE: August 12, 2004   Disburse:08/17/04 | |
| | LOAN NUMBER: 0061763852-9703 | |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | 1501. SUMMER 2004 TAXES       to | |
| 801. Loan Origination Fee  3.0030% to AMERICAN ELITE FINANCIAL | 4,275.52 | GARDEN CITY TREASU | 1,518.99 |
| 802. Loan Discount            % to | | 1502. PAYMENT ON ACCOUNT | |
| 803. Appraisal Fee            to HERITAGE  PROPERTIES | 275.00 | | |
| 804. Credit Report            to | | 1503. PAYMENT ON ACCOUNT | |
| 805. YIELDSPREAD PREMIUM       to AMERICAN ELITE FINANCIAL      POC:B1423.75 | | | |
| 806. TAX RELATED SERVICE FEE to ARGENT MORTGAGE CO., LLC IS | 70.00 | 1504. PAYMENT ON ACCOUNT | |
| 807. FLOOD SEARCH FEE          to ARGENT MORTGAGE CO., LLC IS | 16.00 | | |
| 808. ADMIN FEE                 to ARGENT MORTGAGE CO., LLC IS | 175.00 | 1505. PAYMENT ON ACCOUNT | |
| 809. PROCESSING FEE            to AMERICAN ELITE FINANCIAL | 950.00 | | |
| 810. UNDERWRITING FEE          to ARGENT MORTGAGE CO., LLC IS | 375.00 | 1506. PAYMENT ON ACCOUNT | |
| 811. | | | |
| 812. | | 1507. PAYMENT ON ACCOUNT | |
| 813. | | | |
| 814.                          . | | 1508. PAYMENT ON ACCOUNT | |
| 815. | | | |
| 816. | | 1509. PAYMENT ON ACCOUNT | |
| 817. | | | |
| 818.                        . | | 1510. PAYMENT ON ACCOUNT | |
| 819. | | | |
| 820. | | 1511. PAYMENT ON ACCOUNT | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest  08/17/04  to  09/01/04    @ $       28.670000/day | 430.05 | 1512. COUNTY TAXES | |
| 902. Mortgage Insurance Premifor         months to | | | |
| 903. Hazard Insurance Prem for     1.0 yr to ALLSTATE INSURANCE | 3,456.00 | 1513. Payoff first mortgage          to | |
| 904. | | HOMECOMING FINAN | 115,836.24 |
| 905. | | 1514. | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | |
| 1001. Hazard Insurance     1.000 months @ $    144.00 per month | 144.00 | 1520.  TOTAL DISBURSED | 117,355.23 |
| 1002. Mortgage Insurance         months @ $          per month | | (enter on line 1603) | |
| County Town Taxes          months @ $          per month | | | |
| County Taxes            4.000 months @ $    172.10 per month | 688.40 | | |
| 1005. Assessments               months @ $          per month | | | |
| 1006.                           months @ $          per month | | | |
| 1007.                           months @ $          per month | | | |
| 1008.                           months @ $          per month | 0.00 | | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement Fee            to SEARCH2CLOSE | 400.00 | | |
| 1102. Title Search              to | | | |
| 1103. DISBURSEMENT FEE          to SEARCH2CLOSE | 125.00 | | |
| 1104. TAX SERVICE FEE           to SEARCH2CLOSE | 25.00 | | |
| 1105. Document Prep.            to | | | |
| 1106. Notary Fees              to | | | |
| 1107. Deed Prep                to LARRY BAISDEN | | | |
| (includes above item numbers:                          ) | | | |
| 1108. Title Insurance           to SEARCH2CLOSE | 370.25 | | |
| (includes above item numbers:                          ) | | | |
| 1109. Lender's Coverage      $        142,375.00         370.25 | | | |
| 1110. Owner's Coverage       $ | | | |
| 1111. EPA ENDORSEMENT          . TICOR TITLE INSURANCE COMPA  POC:B0.00 | | N.    NET SETTLEMENT | |
| 1112. COMPREHENSIVE ENDORS      TICOR TITLE INSURANCE COMPA  POC:B0.00 | | | |
| 1113. ARM ENDORSEMENT           TICOR TITLE INSURANCE COMPA  POC:B0.00 | | | |
| 1114. SHIPPING AND HANDLING F to SEARCH2CLOSE | 45.00 | 1600.  Loan Amount | $     142,375.00 |
| 1115. WIRE FEE                 to SEARCH2CLOSE | 20.00 | | |
| 1116. FILING FEE               to SEARCH2CLOSE | 90.00 | | |
| 1117. | | 1601.  Plus Cash/Check from | $              0.00 |
| 1118. | | Borrower | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording fees: Mortgage $        ; Releases $ | | 1602.  Minus Total Settlement | $       11,930.22 |
| 1202. City/County Tax/Stamps:   Mortgage      $ | | Charges (line 1400) | |
| 1203. State Tax/Stamps:       Mortgage        $ | | | |
| 1204. | | 1603.  Minus Total Disbursements | $     117,355.23 |
| 1205. | | to Others (line 1520) | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | 1604.  Equals Disbursements to | |
| 1303. | | Borrower (after expiration | |
| 1304. | | of any applicable rescission | |
| 1305. | | period required by law) | $       13,089.55 |
| 1400. TOTAL SETTLEMENT CHARGES (enter on line 1602) | 11,930.22 | | |

Certified to be a true copy.

# EXHIBIT E

Settlement Statement
Optional Form for
Transactions without Sellers

U.S. Department of Housing
and Air Development

OMB Approval No. 2502-0491

WLI

| | | |
|---|---|---|
| Name & Address of Borrower:<br>DAVID E BLACK, Sr. | Name & Address of Lender:<br>Argent Mortgage Company, LLC | |
| | 2550 Golf Road, East Tower, 10th Floor | |
| | Rolling Meadows, IL 60008 | |
| 415 HELEN ST   GARDEN CITY,MI 48135 | Settlement Agent: SEARCH 2 CLOSE | |
| Property Location: (if different from above) | | |
| :LEN ST, GARDEN CITY, MI  48135 | Place of Settlement: 3000 CORPORATE EXCHANGE<br>Columbus,OH 43231 | |

| L.   Settlement Charges | | Loan Number:<br>0061763652 - 9703 | Settlement Date:Estimated<br>08/17/2004 | |
|---|---|---|---|---|
| 800. Items Payable in Connection with Loan | | | | |
| 801. Loan origination fee    % to | | M.   Disbursement to Others | | |
| 802. Loan discount    % to | | | | |
| 803. Apprsl/Prop Val to HERITAGE PROPERTIES | $275.00 | 1501.<br>HOME COMING FUNDING NE    (W) | | $115,024.80 |
| 804. Credit report to | | | | |
| 805. Inspection fee to | | 1502.<br>2004 SUMMER TAXES DUE    (W) | | $1,518.99 |
| 806. | | | | |
| 807. | | 1503. | | |
| 808. Yield Spread Premium to AMERICAN ELITE    *L $1,423.75 | | | | |
| 809. | | 1504. | | |
| 810. Tax Related Service Fee to  Argent Mortgage Company, | $70.00 | | | |
| 811. Flood Search Fee to  Argent Mortgage Company, LLC | $16.00 | 1505. | | |
| 812. Lenders Processing Fee to | | | | |
| 813.Admin to Argent Mortgage Company, LLC | $175.00 | 1506. | | |
| 814. Doc. Prep. Fee to | | | | |
| 815. Credit Report Fee to | $0.00 | 1507. | | |
| 816. Origination Fee  3.003 % to  AMERICAN ELITE | $4,275.52 | | | |
| 817. Application Fee to | | 1508. | | |
| 818. Underwriting Fee to | | | | |
| 819. Service Provider Fee to | | 1509. | | |
| 820. Processing Fee to  AMERICAN ELITE | $950.00 | | | |
| 821. Underwriting Fee to  Argent Mortgage Company, LLC | $375.00 | 1510. | | |
| 822. Appraisal Fee to | | | | |
| 900. Items Required by Lender to be Paid in Advance | | 1511. | | |
| 901. Interest from 08/17/2004  to 09/01/2004  @  $28.67  per day | $430.05 | | | |
| 902. Mortgage insurance premium for    months to | | 1512. | | |
| 903. Hazard ins prem  to  ALLSTATE INSURANCE | $3,456.00 | | | |
| 904. Flood Ins prem to | | 1513. | | |
| 1000. Reserves Deposited with Lender | | | | |
| Hazard insurance  1  months @ $  144.00  per month | $144.00 | 1514. | | |
| Mortgage insurance    months @ $    per month | | | | |
| 1003. Earthquake Ins    months @ $    per month | | 1515. | | |
| 1004. County prop. taxes  4  months @ $  172.10  per month | $688.40 | | | |
| 1005. Annual assess.    months @ $    per month | | 1520. TOTAL DISBURSED (enter on line 1603) | | $116,543.79 |
| 1006. Flood    months @ $    per month | | | | |
| 1007. Windstorm Ins    months @ $    per month | | | | |
| 1008. | | | | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee to  SEARCH 2 CLOSE | $350.00 | | | |
| 1102. Abstract or title search to | | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | | | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| 1108. Title insurance to  SEARCH 2 CLOSE | $400.00 | Total Wire:    $141,900.30 | | |
| 1109. Lender's coverage    $ | | | | |
| 1110. Owner's coverage    $ | | | | |
| 1111. Settlement/Disbursement fee to | | | | |
| 1112. Escrow Fee to | | L = Lender Paid | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Recording fees | $50.00 | | | |
| 1202. City/county tax/stamps | | N.  NET SETTLEMENT | | |
| 1203. State tax/ stamps | | | | |
| 1204. State specific fee | | 1600. Loan Amount | | 142,375.00 |
| 1205. State specific fee | | | | |
| 1300. Additional Settlement Charges | | 1601. Plus Cash/Check from Borrower | | |
| 1301. Demand to | | | | |
| 1302. Pest Inspection to | | 1602. Minus Total Settlement Charges<br>(line 1400) | | $11,689.97 |
| 1303. Survey Fee | | | | |
| 1304. Misc fees | | 1603. Minus Total Disbursements to Others<br>(line 1520) | | $116,543.79 |
| 1305. Reconveyance Fee to | | | | |
| ... Apprsl/Prop Val Fee to | | 1604. Equals Disbursements to Borrower<br>(after expiration of any applicable rescission<br>period) | | $14,141.24 |
| 1308. Courier Fee | $35.00 | | | |
| 1400. Total Settlement Charges (enter on line 1602) | $11,689.97 | | | |

Borrower(s) Signature(s):

X

Approved for Funding By:            Approved:            Branch:  Rolling Meadows, IL 60008

# EXHIBIT F

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

[ ] Preliminary    [X] Final

LENDER: Argent Mortgage Company, LLC
2550 Golf Road, East Tower, 10th Floor
Rolling Meadows, IL 60008
(800)369-5117

Broker License: FL 2154

Borrowers: DAVID E BLACK, Sr.

Type of Loan:  ADJUSTABLE RATE
Date:  August 12, 2004

Address:       415 HELEN ST
City/State/Zip: GARDEN CITY, MI 48135

Loan Number:  0061763652 - 9703

Property:      415 HELEN ST, GARDEN CITY, MI  48135

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.344 % | $ 238,033.71 | $ 135,698.43 | $ 373,732.14 |

YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 24 | $980.93 | 10/01/2004 | | | |
| 335 | $1,042.25 | 10/01/2006 | | | |
| 1 | $1,036.07 | 09/01/2034 | | | |

**VARIABLE RATE FEATURE:**
[X]  Your loan has a variable rate feature .  Disclosures about the variable rate feature have been provided to you earlier.

**SECURITY:**    You are giving a security interest in the property located at:  415 HELEN ST, GARDEN CITY, MI  48135

**ASSUMPTION:**   Someone buying this property  [X] cannot assume the remaining balance due under original terms.
[ ] may assume, subject to lender's conditions, the remaining balance due under original terms.

**PROPERTY INSURANCE:**    You may obtain property insurance from anyone you want that is acceptable to Argent Mortgage Company, LLC

**LATE CHARGES:**   If a payment is late, you will be charged  5.000%  of the overdue payment .

**PREPAYMENT:**   If you pay off your loan early, you
[X] may     [ ] will not      have to pay a penalty.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_____   _____        _____   _____
Borrower DAVID E BLACK, Sr.       Date            Borrower ROSE J BLACK              Date

_____   _____        _____   _____
Borrower                          Date            Borrower                          Date

# EXHIBIT G

## NOTICE OF RIGHT TO CANCEL

LENDER:   Argent Mortgage Company, LLC

DATE:   August 12, 2004
LOAN NO.:   0061763652 - 9703
TYPE:   ADJUSTABLE RATE

BORROWER(S): DAVID E BLACK, Sr.

ADDRESS:        415 HELEN ST
CITY/STATE/ZIP:   GARDEN CITY,MI 48135

PROPERTY:   415 HELEN ST
              GARDEN CITY,  MI  48135

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

| DOCUMENT SIGNING DATE |
|---|
| 08/12/2004 |

1.   The date of the transaction, which is _____ ; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Argent Mortgage Company, LLC**
**3 Park Plaza**
**Irvine, CA 92614**

ATTN:  FUNDING
PHONE: (800)561-4072
FAX:     (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

| FINAL DATE TO CANCEL |
|---|
| 08/16/2004 |

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____                    _____
SIGNATURE                                          DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____     _____     _____     _____
BORROWER/OWNER DAVID E BLACK, Sr.   Date     BORROWER/OWNER ROSE J BLACK        Date

_____     _____     _____     _____
BORROWER/OWNER                       Date     BORROWER/OWNER                        Date

1064-NRC (Rev 6/99)                                                          08/12/2004 10:52:58 AM

## NOTICE OF RIGHT TO CANCEL

\|DER:   Argent Mortgage Company, LLC

DATE:   August 12, 2004
LOAN NO.:   0061763652 - 9703
TYPE:   ADJUSTABLE RATE

BORROWER(S): DAVID E BLACK, Sr.

ADDRESS:        415 HELEN ST
CITY/STATE/ZIP:   GARDEN CITY,MI 48135

PROPERTY:   415 HELEN ST
                    GARDEN CITY,  MI  48135

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

| DOCUMENT SIGNING DATE |
| --- |
| 08/12/2004 |

1.    The date of the transaction, which is                                                                    ; or

2.    The date you received your Truth in Lending disclosures; or
3.    The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

.OW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Argent Mortgage Company, LLC**
**3 Park Plaza**
**Irvine, CA 92614**

ATTN:  FUNDING
PHONE: (800)561-4072
FAX:      (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

| FINAL DATE TO CANCEL |
| --- |
| 08/16/2004 |

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

_____                    _____
SIGNATURE                                                          DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____      ____      _____      ____
\|RROWER/OWNER  DAVID E BLACK, Sr.        Date        BORROWER/OWNER ROSE J BLACK        Date

_____      ____      _____      ____
BORROWER/OWNER                            Date        BORROWER/OWNER                            Date

1064-NRC (Rev 6/99)                                                                        08/12/2004 10:52:58 AM

## NOTICE OF RIGHT TO CANCEL

NDER:   Argent Mortgage Company, LLC

DATE:   August 12, 2004
LOAN NO.:   0061763652 - 9703
TYPE:   ADJUSTABLE RATE

BORROWER(S): DAVID E BLACK, Sr.

ADDRESS:       415 HELEN ST
CITY/STATE/ZIP:   GARDEN CITY,MI 48135

PROPERTY:   415 HELEN ST
                    GARDEN CITY,  MI  48135

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.    The date of the transaction, which is

| DOCUMENT SIGNING DATE |
| --- |
| 08/12/2004 |

; or

2.   The date you received your Truth in Lending disclosures; or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

OW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Argent Mortgage Company, LLC          ATTN:  FUNDING
3 Park Plaza                                          PHONE: (800)561-4072
Irvine, CA 92614                                    FAX:     (714)347-1575

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

| FINAL DATE TO CANCEL |
| --- |
| 08/16/2004 |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
I WISH TO CANCEL

_____                    _____
SIGNATURE                                                          DATE

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

_____          _____          _____          _____
ROWER/OWNER DAVID E BLACK, Sr.          Date          BORROWER/OWNER ROSE J BLACK                 Date

_____          _____          _____          _____
BORROWER/OWNER                                    Date          BORROWER/OWNER                                    Date

1064-NRC (Rev 6/99)                                                                            08/12/2004 10:52:58 AM

# EXHIBIT H

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
## Chicago, Illinois 60603-3403
## (312) 739-4200
## (800) 644-4673
## (312) 419-0379 (FAX)
## Email: edcombs@aol.com
## www.edcombs.com

August 16, 2006

Argent Mortgage Company, L.L.C.
c/o registered agent
National Registered Agents, Inc.
200 W. Adams
Chicago, IL 60606

HomEq Servicing Corporation
c/o registered agent
Illinois Corporation Service Co.
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

                Re:    Notice of rescission, claim and lien, Rose J. Black, David E. Black, Sr., 415 Helen, Third City, MI 48135, loan of August 12-17, 2004

Ladies/Gentlemen:

        The above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

        Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

        If you claim that the owner of the loan is other than Argent Mortgage Company, L.L.C. or HomEq Servicing Corporation, please identify the owner pursuant to 15 U.S.C. §1641(d).

        Finally, please provide an account history so that we may compute the appropriate amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on August 16, 2006.

_____
Daniel A. Edelman

# EXHIBIT I

0061763652

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☐ FHA | ☐ Conventional ☐ FmHA | ☐ Other: | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☐ Other (explain): ☒ ARM (type): |
|---|---|---|---|---|---|
| $ 142,375.00 | 7.350 % | 360 | | | |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) | No. of Units |
|---|---|
| 415 HELEN ST, GARDEN CITY, MI 48135 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| | 1956 |

| Purpose of Loan | ☐ Purchase ☒ Refinance | ☐ Construction ☐ Construction-Permanent | ☐ Other (explain): | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| 1987 | $70,000.00 | $ 0.00 | Refi-Cash Out | Cost: $ 0.00 |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| DAVID E BLACK, Sr. and ROSE J BLACK, His Wife | | ☒ Fee Simple ☐ Leasehold (show expiration date) |

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| DAVID E BLACK, Sr. | |

| Social Security Number | Home Phone (incl. area code) | Age 46 | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | Age | Yrs. School |
|---|---|---|---|---|---|---|---|
| ▇▇▇▇▇ | | | | | | | |

| ☒ Married ☐ Separated | ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 0 ages | ☐ Married ☐ Separated | ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent 17 No. Yrs. | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|
| 415 HELEN ST | |
| GARDEN CITY, MI 48135 | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer ☐ Self Employed | Yrs. on this job | Name & Address of Employer ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| | Yrs. employed in this line of work/profession | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Borrower's Signature: X | Date | VMP -21 (9210).07 | VMP MORTGAGE FORMS - (800)521-7291 | Freddie Mac Form 65 10/92 Fannie Mae Form 1003 10/92 |
|---|---|---|---|---|

| Co-Borrower's Signature: X | Date | Borrower's cell phone | Borrower's pager number |
|---|---|---|---|
| Page 1 of 4 | | Co-Borrower's cell phone | Co-Borrower's pager number |

0061763652

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 0.00 | $ | $ 0.00 | Rent | $ 0.00 | |
| Overtime | | | | First Mortgage (P&I) | 1,148.00 | 980.93 |
| Bonuses | | | | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | | | | Hazard Insurance | 144.00 | 144.00 |
| Dividends/Interest | | | | Real Estate Taxes | 172.10 | 172.10 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | 0.00 | 0.00 |
| | 6,918.75 | | 6,918.75 | Other: | 0.00 | 0.00 |
| Total | $ 6,918.75 | $ | $ 6,918.75 | Total | $ 1,464.10 | 1,297.03 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| B | | $ 6,918.75 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | LIABILITIES | Monthly Pmt. & Mos. Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | Name and address of Company | $ Pmt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | *** SEE ADDENDUM *** | | |
| | | Acct. no. | | |
| Acct. no. | $ 500.00 | Name and address of Company | $ Pmt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 500.00 | Name and address of Company | $ Pmt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Pmt./Mos. | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Pmt./Mos. | $ |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Pmt./Mos. | $ |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | Acct. no. | | |
| Subtotal Liquid Assets | $ 1,000.00 | Name and address of Company | $ Pmt./Mos. | $ |
| Real estate owned (enter market value from schedule of real estate owned) | $ 167,500.00 | | | |
| Vested interest in retirement fund | $ 0.00 | Acct. no. | | |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | Name and address of Company | $ Pmt./Mos. | $ |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | |
| | | Job Related Expense (child care, union dues, etc.) | $ 0.00 | |
| Total Assets a. | $ 168,500.00 | Total Monthly Payments | $ 1,061.00 | |
| | | Net Worth ▶ 151,903.00 | Total Liabilities b. | $ 16,597.00 |

Borrower's Signature:   Date   Co-Borrower's Signature:   Date

X   X

Page 2 of 4   ⑤21 (9210).07

Fannie Mae Form 1003 10/92
Freddie Mac Form 65 10/92

0061763652

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 415 HELEN ST GARDEN CITY,MI 48135 | H | SFR | $ 167500 | $ 115025 | $ 0 | $ 1148 | $ 316 | $ 0 |
| | | | $ | $ | $ | $ | $ | $ |
| | | | $ | $ | $ | $ | $ | $ |
| | Totals | | $ 167500 | $ 115025 | $ 0 | $ 1148 | $ 316 | $ 0 |

**List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):**

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ 0.00 |
| b. | Alterations, improvements, repairs | 0.00 |
| c. | Land (if acquired separately) | 0.00 |
| d. | Refinance (incl. debts to be paid off) | 0.00 |
| e. | Estimated prepaid items | 286.70 |
| f. | Estimated closing costs | 1,616.00 |
| g. | PMI, MIP, Funding Fee | 0.00 |
| h. | Discount (if Borrower will pay) | 0.00 |
| i. | Total costs (add items a through h) | 1,902.70 |
| j. | Subordinate financing | |
| k. | Borrower's closing costs paid by Seller | 1,423.75 |
| l. | Other Credits (explain) | |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 142,375.00 |
| n. | PMI, MIP, Funding Fee financed | 0.00 |
| o. | Loan amount (add m & n) | 142,375.00 |
| p. | Cash from/ to Borrower (subtract j, k, l & o from i) | -141,896.05 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|---|
| a. | Are there any outstanding judgments against you? | | X | | |
| b. | Have you been declared bankrupt within the past 7 years? | | X | | |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. | Are you a party to a lawsuit? | | X | | |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. | Is any part of the down payment borrowed? | | X | | |
| i. | Are you a co-maker or endorser on a note? | | X | | |
| j. | Are you a U.S. citizen? | X | | | |
| k. | Are you a permanent resident alien? | | X | | |
| l. | Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. | Have you had an ownership interest in a property in the last three years? | X | | | |
| | (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| | (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

The undersigned specifically acknowledge(s) and agree(s) that: (1) the loan requested by this application will be secured by a first mortgage or deed of trust on the property described herein; (2) the property will not be used for any illegal or prohibited purpose or use; (3) all statements made in this application are made for the purpose of obtaining the loan indicated herein; (4) occupation of the property will be as indicated above; (5) verification or reverification of any information contained in the application may be made at any time by the Lender, its agents, successors and assigns, either directly or through a credit reporting agency, from any source named in this application, and the original copy of this application will be retained by the Lender, even if the loan is not approved; (6) the Lender, its agents, successors and assigns will rely on the information contained in the application and I/we have a continuing obligation to amend and/or supplement the information provided in this application if any of the material facts which I/we have represented herein should change prior to closing; (7) in the event my/our payments on the loan indicated in this application become delinquent, the Lender, its agents, successors and assigns, may, in addition to all their other rights and remedies, report my/our name(s) and account information to a credit reporting agency; (8) ownership of the loan may be transferred to successor or assign of the Lender without notice to me and/or the administration of the loan account may be transferred to an agent, successor or assign of the Lender with prior notice to me; (9) the Lender, its agents, successors and assigns make no representations or warranties, express or implied, to the Borrower(s) regarding the property, the condition of the property, or the value of the property.
**Certification:** I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq, and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| Race/National Origin: | ☐ I do not wish to furnish this information ☐ American Indian or Alaskan Native ☐ Asian or Pacific Islander ☐ White, not of Hispanic origin ☐ Black, not of Hispanic origin ☐ Hispanic ☐ Other (specify) | Race/National Origin: | ☐ I do not wish to furnish this information ☐ American Indian or Alaskan Native ☐ Asian or Pacific Islander ☐ White, not of Hispanic origin ☐ Black, not of Hispanic origin ☐ Hispanic ☐ Other (specify) |
| Sex: | ☐ Female ☒ Male | Sex: | ☐ Female ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) JASON MERTA | Name and Address of Interviewer's Employer American Elite Financial Inc One Heritage Place - Ste 320 Southgate,MI 48195 |
|---|---|---|
| ☐ face-to-face interview ☐ by mail ☒ by telephone | Interviewer's Signature | |
| | Date | |
| | Interviewer's Phone Number (incl. area code) (734)283-4927 | |

**Continuation Sheet/Residential Loan Application**

0061763652

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark **B** for Borrower or **C** for Co-Borrower. | Borrower:<br>BLACK Sr., DAVID E<br>Co-Borrower: | Agency Case Number:<br><br>Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X | Date | Co-Borrower's Signature:<br>X | Date |

-21 (9210).07

Page 4 of 4

Fannie Mae Form 1003 10/92<br>Freddie Mac Form 65 10/92