# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **WILLIAM YEAMAN** and **PAMELA YEAMAN**, <br><br> Plaintiffs, <br><br> v. <br><br> **AMERICAN HOME MORTGAGE SERVICING, INC.**, a Delaware corporation; **AMERIQUEST MORTGAGE COMPANY**, a Delaware corporation; **AMC MORTGAGE SERVICES, INC.**, a Delaware corporation; **DEUTSCHE BANK NATIONAL TRUST COMPANY**, a national trust company; and, **DOES 1-5**, <br><br> Defendants. | No. 06 cv 6967 <br><br> Transferred to Judge Aspen for pretrial proceedings under MDL No. 1715, Lead Case No. 05 cv 7097 |

## FIRST AMENDED COMPLAINT

Now Comes WILLIAM YEAMAN and PAMELA YEAMAN, by and through their attorney, Lloyd Brooks, to file this Complaint against AMERICAN HOME MORTGAGE SERVICING, INC., AMERIQUEST MORTGAGE COMPANY, AMC MORTGAGE SERVICES, INC., and DEUTSCHE BANK NATIONAL TRUST COMPANY as follows:

### Nature of the Action

1.  Plaintiffs bring this action against a subprime mortgage lender and its affiliates for rescission and damages pursuant to the federal Truth In Lending Act for the lender's failure to clearly and conspicuously disclose the borrower's right to cancel a mortgage loan. Plaintiffs also brings a state law cause of action against the mortgage lender for its unfair and deceptive practice of falsifying information in connection with the loan in order to increase the amount loaned to Plaintiff.

**Parties**

2.   Plaintiffs William Yeaman ("Mr. Yeaman") and Pamela Yeaman ("Ms. Yeaman") are husband and wife and reside in a single family home which they own at 1016 S. Mitchell Ave., Arlington Heights, IL 60005. Mr. And Mrs. Yeaman jointly purchased the home in January, 2002.

3.   Defendant **American Home Mortgage Servicing, Inc.** ("AHMSI") is a Delaware corporation with its principal offices located in Coppell, Texas and does business in Illinois. AHMSI is engaged in the business of dealing in and servicing "subprime" mortgages. AHMSI has an interest in and services the loan that is the subject of this complaint.

4.   Defendant **Ameriquest Mortgage Company** ("Ameriquest") is a Delaware corporation with its principal offices located in Orange, California and maintains offices in and does business in Illinois. Ameriquest is engaged in the business of originating "subprime" mortgages. Ameriquest makes more than 26 loans per year.

5.   Defendant **AMC Mortgage Services, Inc.** ("AMC") is a Delaware corporation with its principal place of business located in Orange, California and does business in Illinois.

6.   AMC is an affiliate of Ameriquest. AMC services loans originated by Ameriquest and claims an interest in such loans, including the right to receive payments thereunder. It is joined as a necessary party.

7.   Defendant **Deutsche Bank National Trust Company**, as trustee for Ameriquest Mortgage Securities Inc., Asset –Backed Pass Through

Certificates, Series 2004-R1 ("Deutsche Bank") is a national trust company with its principal offices located in Santa Ana, California. Subsequent to the original filing of this action, Deutsche Bank purportedly obtained an interest in the subject loan.

## Jurisdiction and Venue

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this action arises under the laws of the United States. This Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367 as they are so related to Plaintiff's federal cause of action that it forms the same case and controversy.

9. This Court has jurisdiction over the defendants who are all doing business in this State and has availed themselves of this State's benefits and protections.

10. Venue is proper in this Court as defendants reside within this judicial district and a substantial portion of the events giving rise to this action occurred within this judicial district.

## Facts Common To All Counts

11. In the late fall of 2003, plaintiffs applied for a mortgage with Ameriquest. During the over-the-phone application process, Mr. Yeaman spoke with an Ameriquest agent, Ken Skwierczynski ("Ken"), who completed the application.

12. Mr. Yeaman wanted his wife, Mrs. Yeaman, to be a borrower on the mortgage since she owned and resided in the home. Ken, however, said that Mrs. Yeaman would be unable to be a co-borrower on the loan.

3

13. The loan was procured in Mr. Yeaman's name only and only Mr. Yeaman executed the Note and Mortgage in connection with the loan. All documents in connection with Mr. Yeaman's loan were directed only to Mr. Yeaman, even though his wife co-owned and resided in the property.

14. The loan was closed on December 22, 2003.

15. The following are documents relating to the loan:

   a. A note, Exhibit A, attached to this pleading.
   b. A Truth in Lending statement, See Exhibit B, attached to this pleading.
   c. The three-day notice of right to cancel required by the Federal Reserve Board, See Exhibit C, attached to this pleading.
   d. A document entitled "One Week Cancellation Period", See Exhibit D, attached to this pleading.
   e. A document entitled "Understanding Your Loan", Exhibit E.

16. Mr. Yeaman was later directed to make payments to AMC.

17. Subsequently, Plaintiffs were informed that Deutsche Bank obtained an interest in their loan. In the event Deutsche Bank does not own Mr. Yeaman's loan, the actual owners are named as Does 1-5.

**Count I**
**Claim for Damages, Rescission and Other Relief**
**<u>Arising from Violations of the Truth In Lending Act</u>**

18. Plaintiffs reallege paragraphs 1 - 17 as though each was fully realleged herein.

19. On or about December 6, 2003, Mr. Yeaman was notified by Ameriquest in an Application Disclosure that he was required to pay $325 for an "appraisal/property valuation fee." It was represented that this amount "is

refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." See Exhibit F, attached to this pleading.

20. Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

21. Because this transaction was secured by Plaintiffs' home and was not entered into for purposes of its initial purchase or construction, the loan was made subject to Plaintiffs' rescission rights pursuant to the Truth In Lending Act, 12 U.S.C. §1635, and implementing Federal Reserve Board Regulation Z, 12 C.F.R. Part 226.

22. Regulation Z reads in pertinent part:

> §226.23
>
> **(a)** *Consumer's right to rescind.*
>
> (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.
>
> (2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.
>
> (3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years later consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(1) of the Act.
>
> *(b)Notice* **of** *right to rescind:*
>
> (1) In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in section 226.36(b)). The notice

shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this section.

(v) The date the rescission period expires.

**(d)** *Effects of rescission.*

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section.

(4) When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

23. TILA provides in pertinent part:

15 U.S.C.§1640

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of-

(1) any actual damage sustained by such person as a result of the failure;

(2)(A) (iii) in the case of an individual action relating to a credit transaction not under an

open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000;

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.

### **Grounds for Rescission**

24. No TILA disclosures were provided to Ms. Yeaman.

25. The failure to provide Mrs. Yeaman with any disclosures for the subject loan extended Plaintiffs' right to cancel the subject loan to three years after the consummation of the loan.

26. Ameriquest misrepresented the effects of rescission by indicating the $325 Appraisal/Property Valuation Fee was refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal. Quite to contrary, TILA requires the refund of all money or property paid to any party in connection with the loan transaction.

27. Ameriquest's misrepresentation of the effects of the rescission clouds and confuses Plaintiffs' right to clear and conspicuous notice of their right to cancel the loan, extending Plaintiffs' right to cancel for three years.

28. Mr. Yeaman was provided two documents, one labeled "Understanding Your Loan" and the other "One Week Cancellation Period" that each contain language that purports to limit or indicate to the reader that their right to cancel the loan within the three day period is limited.

29. The "One Week" cancellation further confuses the right to cancel because it may cause a consumer to delay past the statutory three days, without recognizing that the extended period is purely contractual, without benefit of TILA damages, attorney's fees or the procedural protections of § 1635. Furthermore the "One Week" cancellation notice is misleading, as the period given is actually only six days long.

30. The provision of a document that conflicts with the required Notice of Right to Cancel violates TILA and gives rise to an extended right to rescind the Note and Mortgage, which extends to any assignee.

31. A borrower who rescinds is entitled to do so without financial penalty. By collecting fees in advance (appraisal fee in this instance) and representing that the fees would only be returned if "the loan is denied or withdrawn prior the Lender ordering the appraisal/property," Ameriquest wrongfully interfered with the borrowers right to cancel.

32. Plaintiffs have exercised their right to rescind the loan. See Exhibit G.

33. More than 20 days passed since the cancellation of Mr. Yeaman's loan and none of the defendants properly responded to the cancellation of the subject loan.

34. After the notice of the cancellation was sent Mr. Yeaman made payments on the now cancelled loan to repay any tender obligation that may remain.

35. AMC previously claimed to have an interest in the subject Note and Mortgage and a right to collect payments from Mr. Yeaman on the subject loan. In connection with that claim, AMC has collected significant sums of money from Mr. Yeaman and made reports to credit reporting bureau regarding the payment history on the loan.

36. AHMSI and Deutsche Bank currently claim to have an interest in the subject Note and Mortgage and a right to collect payments from Mr.

Yeaman on the subject loan. It is believed that AHMSI and Deutsche Bank obtained their interest in Mr. Yeaman's loan after the election to cancel was made and after this action was originally filed.

37. AHMSI and Deutsche Bank have actual notice of Plaintiffs' election to cancel the subject loan, prior to or at the time they obtained an interest in the loan.

38. AHMSI has recently refused to take Mr. Yeaman's payments and instead threatened foreclosure on Plaintiffs' home.

39. On information and belief, AHMSI has been reporting adverse information to credit bureaus regarding the history of payments on Mr. Yeaman's now cancelled loan account, including the period of time after Plaintiffs' cancelled the subject loan.

WHEREFORE WILLIAM YEAMAN and PAMELA YEAMAN respectfully request that the Court enter judgment in their favor and against defendants for a judgment, capable of recordation in public records, voiding the subject mortgage; statutory damages for the underlying failure to provide Plaintiffs with the proper disclosure or right to cancel the transaction; statutory damages for the defendants' failure to honor Plaintiffs' request for rescission; an order requiring deletion of all adverse credit information relating to the loan; an award of Plaintiffs' attorney's fees and costs of this action; and, such other relief as this Court deems just and appropriate.

**Count II**
**Violation of Illinois Consumer Fraud Act**

40. Plaintiffs reallege paragraphs 1 - 17 as though each was fully realleged herein.

41. Ken quoted Mr. Yeaman many different interest rates, loan amounts, and changed the terms numerous times prior to the closing.

42. Ameriquest closed the loan in its hectic office. Ameriquest was not prepared when clients arrived at the appointed time. The Ameriquest employee explained that they were running late and also had other closings after plaintiffs' closing. Plaintiffs were then rushed through their closing. They were presented with a stack of paper consisting of scores of documents and hundreds of printed pages. The Ameriquest employee simply named each document, pointed and had plaintiffs sign. He explained nothing or very little.

43. Plaintiffs glanced at some of the documents. They asked one question but were made to feel inferior. Under these circumstances, plaintiffs did not review all of the closing documents at that time, including the final loan application Ameriquest prepared. They also had been through closings before and had no apparent reason to suspect any fraud.

44. Later, plaintiffs noticed that Ameriquest had falsified material information on the typed, pre-printed loan application that plaintiffs received at that time.

45. Ameriquest fraudulently increased Mr. Yeaman's aggregate checking and savings account information. During the application process, Mr. Yeaman gave Ameriquest their yearly bank statements from 2002, which

totaled approximately $3,310. Ameriquest, however, fraudulently increased this amount to $83,000 on his application. See Exhibit H, attached to this pleading.

46. Mr. Yeaman also provided his paycheck stubs, but Ameriquest dramatically overstated his gross monthly income on the loan application it prepared. See Exhibit H.

47. Ameriquest also falsified the amount of stocks and bonds Mr. Yeaman owned on the application. Ameriquest reported that they owned $41,000 in stocks and bonds, when in actuality he owned several hundred dollars worth at the most. See Exhibit H.

48. Ameriquest also falsified the value of plaintiffs' property on the loan application, listing the value of plaintiffs' real estate at $420,000.

49. On information and belief, plaintiffs' home was actually only worth $385,000 at the time of closing.

50. Indeed, two days before closing, an Ameriquest staff appraiser completed a report stating that the home was worth only $390,000. Ameriquest ignored this inconvenient finding in the interest of basing the loan amount on the higher, fabricated value.

51. Based on the fraudulent information about plaintiffs' liquid assets and the value of their real estate, Ameriquest represented that Mr. Yeaman qualified for a $295,000 loan.

52. Ameriquest falsified these amounts on the application, in order to increase the loan amount for which the plaintiff qualified. This increased Ameriquest's commissions, points and fees, interest income and profits.

53. The Illinois Consumer Fraud and Deceptive Business Practices Act reads in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

54. Ameriquest:

   a. fraudulently inflated Mr. Yeaman's assets, specifically his aggregate checking and savings account worth as well as his stocks and bonds.
   b. fraudulently inflated and misrepresenting the value of Plaintiff's home on Ameriquest's loan application;
   c. misrepresenting Mr. Yeaman's ability to qualify for the mortgage loan.

55. Ameriquest's conduct was unfair and deceptive to Mr. Yeaman and used in the course of its trade as a mortgage lender.

56. Ameriquest acted with the intent that Mr. Yeaman rely upon its conduct in executing documents at the December 22, 2003 closing and to induce Mr. Yeaman to secure a $295,000 loan for which did not qualify, in order to increase its commissions, points and fees, interest and profits.

WHEREFORE WILLIAM YEAMAN prays upon this Court to enter a judgment in his favor and against AMERIQUEST MORTGAGE COMPANY and award his actual damages in an amount to be proven at trial, enjoin it

requiring it to disgorge any and all proceeds and profits received in the subject transaction, his attorney's fees, costs to bring this action, and other further relief as the Court deems equitable and proper.

                                                    Respectfully Submitted,

                                                    _____/s/ Lloyd Brooks_____

State Bar No. 6271994
Lloyd J. Brooks
**THE BROOKS LAW FIRM**
18110 Dixie Highway, Suite 2N
Homewood, Illinois 60430
(708) 841-8000 Telephone
(708) 841-8080 Facsimile
E-mail: lloyd.brooks@thebrooksfirm.com
*Attorneys for William and Pamela Yeaman*

### Jury Demand

Plaintiffs demand trial by jury.

_____/s/ Lloyd Brooks_____