**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. | ) | |
| MORTGAGE LENDING PRACTICES | ) | MDL No. 1715 |
| | ) | |
| _____ | ) | Lead Case No. 05 C 7097 |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| Camille J. Grubek v. Argent Mortgage, et al., | ) | Centralized before The |
| Case No. 06 C 2639 (N.D. Ill.) | ) | Honorable Marvin E. Aspen |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO WMC'S MOTION**
**TO DISMISS AND IN RESPONSE TO WMC'S MOTION TO**
**MODIFY THE STATUTORY RESCISSION PROCEDURES**

**INTRODUCTION**

Plaintiff, Camille Gburek, respectfully submits this memorandum in opposition to WMC's motion to modify statutory rescission procedures and dismiss this case if plaintiff fails to tender to WMC the amount of money it arbitrarily demands by October 8, 2010. As explained more fully below, the motion should be denied for at least three reasons:

First, there is no justification for dismissing plaintiff's claim. Under TILA and Regulation Z, unless a court modifies the statutory rescission procedures, a creditor is required to cancel its lien and return all finance charges before the borrower is required to tender the loan proceeds. See *Velazquez v. HomeAmerican Credit, Inc.*, 254 F.Supp. 2d 1043, 1045, (N.D. Ill. 2003) ("the statute and the regulations are explicit that the consumer need not return money or property to the creditor until *after* the creditor has fulfilled its obligations under the statute" to cancel the lien and return all finance charges)(emphasis on original). In this case, there is no modification order and defendant

has not performed its rescission obligations. Therefore, plaintiff's duty to tender has not yet been triggered.

Second, defendant's modification request is premature. Plaintiff is seeking rescission of four loan transactions in this case and a related case in the MDL. She is also pursuing state law claims related to each transaction plus damages based on defendants' failure to rescind within the time limits prescribed by TILA. Although WMC holds two loans that plaintiff seeks to rescind, it is only offering to credit plaintiff with the finance charges from one of those transactions, which is far less than her total entitlement sought in the case and less than the amount sought against WMC. Further, the fact that WMC has not agreed to rescind the second loan on the property drastically hinders plaintiff's ability to tender any amount. Before addressing how TILA rescission procedures should be modified, this Court should determine how much plaintiff deserves in total credits. As the Federal Reserve Board has made clear:

> Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property.

12 C.F.R. Pt. 226, Supp. I, Paragraph 23(d)(4), Official Staff Commentary. See also *In Re Armstrong*, 288 B.R. 404, 431 (Bkrtcy. E.D. Pa. 2003) (damages due to debtor on UDAP and breach of contract claims "factored into the Debtor's tender requirement"); *Williams v. Saxon Mortgage Company*, 2008 U.S. Dist. LEXIS 131 at *26 (S.D. Ala. January 2, 2008) (determining tender amount first is the "sensible, efficient methodology" whereas creditor's request to modify rescission procedures first "is putting the cart before the horse").

Third, by demanding immediate payment in full, WMC is trying to take unfair advantage of its own four year delay in honoring plaintiff's rescission requests and the intervening collapse of the mortgage and real estate market. This misuse of the modification procedure to subvert the rescission remedy should not be allowed. See *Williams v. Homestake Mortg. Co.*, 968 F.2d 1137, 1142 (11th Cir. 1992) (in modifying rescission procedures "the district court should consider traditional equitable notions" and ensure that "rescission must also maintain its vitality as an enforcement tool"); 12 C.F.R. Pt. 226, Supp. I, Paragraph 23(d)(4), Official Staff Commentary (judicial modification does "not affect a consumer's substantive right to rescind and to have the loan amount adjusted accordingly").

A more beneficial approach for all parties would be a modification whereby after all of plaintiff's claims are resolved, plaintiff is given a reasonable time to pay off the net loan proceeds (i.e. the monies advanced to her minus all the monies due to her under TILA) in monthly installments and defendants' lien on plaintiff's home remains in place until plaintiff has repaid her net loan proceeds in full. This modification would give defendants more protection than they enjoy under the procedures spelled out in TILA itself (whereby the lien is lifted immediately) and would be consistent with TILA, the Official Staff Commentary of the Federal Reserve Board and relevant case law. See *Williams v. Homestake Mortg. Co.*, 968 F.2d at 1142 n. 9 ("The amended statute gives the courts the authority to restructure these loans"); *Consumer Solutions REO, LLC v. Hillery*, 2010 WL 1222739, *1 (N.D. Cal 2009) ("courts have crafted rescission terms whereby a debtor is allowed to repay loan proceeds over a reasonable period of time - and sometimes even interest free"); *Shepard v. Quality Siding & Window Factory, Inc.*, 730

F.Supp. 1295 (D.Del. 1990) (TILA rescission plaintiff allowed to repay the net loan proceeds of $11,361.58 in monthly installments of $199); *Mayfield v. Vanguard Sav. & Loan Ass'n*, 710 F.Supp. 143 (E.D. Pa. 1989) (TILA rescission plaintiff to pay off the net loan proceeds of $16,113.62 in monthly installments of $171); *In Re Dawson*, 411 B.R. 1, 42 (Bkrtcy. D. Col. 2008) ("Some courts permit a borrower to repay the net loan proceeds in installments"); *In Re Sterten*, 352 B.R. 380 (Bkrtcy. E.D. Pa. 2006) (TILA rescission plaintiff allowed to repay net loan proceeds, plus future interest calculated at 6.36%, in equal installment payments of $790 over 32 months), *reversed on other grounds* (i.e. finding no TILA violation), 479 F.Supp. 2d 479 (E.D. Pa. 2007).

## I.   **BACKGROUND**

Plaintiff is a 68 year old woman who owns a home in Park Ridge, Illinois.  In the first half of the last decade, Ameriquest, Argent and WMC induced her -- through misrepresentations and bad advice -- into repeatedly refinancing the mortgage on her home. As a result of these transactions -- which were accompanied by violations of the Truth in Lending Act -- plaintiff was charged more than $200,000 in refinancing fees and prepayment penalties, including a $75,000 pre-payment penalty for a loan that gave her a six month teaser rate and then adjusted upward to an interest rate level that was higher than her prior loan. As a consequence of these predatory deals, plaintiff was left with a mortgage she could not afford.

In 2006, plaintiff filed suit in this Court to rescind three of her mortgage refinancing transactions based on defendants' failure to comply with TILA. The complaints also alleged state law claims against Ameriquest, Argent and WMC, seeking compensatory and punitive damages.   The cases were transferred into the MDL

proceedings before this Court and then lay dormant, mainly because Ameriquest asked this Court to hold off adjudicating the claims of MDL plaintiffs while Ameriquest tried to work out settlements.

Recently, one of the defendants, WMC, offered to partially rescind a portion of the most recent of plaintiff's mortgages (but not the other mortgage transactions) if she tendered some uncalculated amount. The loan WMC proposes to rescind was part of a loan transaction whereby WMC provide two loans and recorded two liens.  Although plaintiff has sought to rescind both WMC loans, WMC has only offered to rescind one of these loans, which would effectively prevent plaintiff from refinancing or selling the property.

When plaintiff did not respond to this request, WMC filed a motion with this Court, demanding that plaintiff's rescission claim be dismissed if she did not tender some uncalculated amount demanded by WMC by October 8, 2010.

## II.  <u>PLAINTIFF'S RESCISSION CLAIM SHOULD NOT BE DISMISSED</u>

The motion to dismiss plaintiff's rescission claim should be denied. The Truth in Lending Act is quite clear that, absent judicial modification of statutory rescission procedures, the debtor has no duty to tender the loan proceeds until the creditor first performs its rescission obligations of cancelling the lien and refunding any finance charges paid by the borrower. More specifically, the law provides:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain

possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. * * * The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b).

In this case, defendants have not cancelled their lien on plaintiff's home or returned the finance charges. Nor has there been any judicial modification order. Consequently, plaintiff's duty to tender the loan proceeds has not been triggered. There is no reason to dismiss her rescission claim. See *Lippner v. Deutsche Bank Nat. Trust Co.*, 544 F.Supp. 2d 695, 702 (N.D. Ill. 2008) (denying motion to dismiss based on plaintiff's failure to tender; "TILA clearly requires that the creditor satisfy its obligations relating to rescission *prior* to any obligation by the obligor to pay the balance of the loan" * * * "The issue of whether Lippner can satisfy her rescission obligations will not arise until Defendants have completed their obligations pursuant to TILA"); *Velazquez*, 254 F.Supp. 2d 1043, 1047 (denying motion to dismiss based on creditor's pre-suit offer to rescind if the debtor returned the loan proceeds, since the creditor "blatantly conditioned its performance on Velazquez' return of the money, something it plainly is not permitted to do under the law").

Moreover, plaintiff's ability to tender, in the amounts and at the times ordered by this Court, is an issue which should be addressed later, when there is a full factual record and a number of preliminary issues have been decided. See *McGinnis v. GMAC Mortgage Corporation*, 2010 U.S. Dist. LEXIS 90286, *13 (D. Utah August 27, 2010) ("courts have generally waited until the summary judgment stage to determine whether a borrower has the ability to fulfill the tender requirement"); *Williams v. Saxon Mortgage*

6

*Company*, 2008 U.S. Dist. LEXIS 131, *23 (refusing to dismiss plaintiffs' rescission claims "based on inchoate, undeveloped fears that they might prove unable to repay the HLC loan if rescission is ordered").

Plaintiff's case should not be dismissed based on speculation that she might be unable to comply with a modification order that this Court has not yet even entered, let alone formulated. *Consumer Solutions REO, LLC*, 2010 WL 1222739, *2 (refusing to dismiss TILA claim based on debtor's alleged inability to pay in part because "whether Ms. Hillery is unable or unwilling to tender the loan proceeds may be informed in part by what rescission terms the Court ultimately deems appropriate"); *Jones v. Rees-Max, LLC*, 514 F.Supp.2d 1139, 1146 (D. Minn. 2007) ("it is within this Court's discretion to allow the debtor a reasonable time to pay the mortgage amount. ... Given the discretion within which the Court may condition the right to rescission, it is not necessary that the Joneses demonstrate they have the means to secure the necessary financing at this point in time").

### III.   <u>NET LOAN PROCEEDS SHOULD BE CALCULATED FIRST</u>

This Court has authority to modify the statutory rescission procedures so as to prevent inequity to the creditor.  One possibility would be to leave defendants' lien in place until plaintiff has paid what she owes (after netting out what is owed to her) and giving plaintiff a reasonable time to make those payments.

But before addressing the particulars of a repayment plan, this Court should first determine how much money plaintiff is owed on her various claims, including her state law claims and claim to rescind the second WMC loan, so that those amounts can be credited against her loan balance to determine an appropriate tender amount. See 12 C.F.R. Pt. 226, Supp. I, Paragraph 23(d)(4), Official Staff Commentary ("Where the

consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property").

This calculation should take into account all the claims that plaintiff has brought in this litigation -- not just the one rescission claim that defendants are now willing to settle but also the several other claims that defendants are continuing to ignore. See *In Re White*, 374 B.R. 257, 263 (Bkrtcy. D.Kan. 2007) (loan balance reduced for purposes of tender from more than $100,000 to less than $20,000; court went beyond cancellation of finance charges to give the debtor credit for "damages caused [the creditor's] failure to properly close the loan"); *In Re Armstrong*, 288 B.R. 404, 431 (Bkrtcy. E.D. Pa. 2003) (damages due to debtor on UDAP and breach of contract claims "factored into the Debtor's tender requirement").

Of course, litigation and evaluation of plaintiff's claims would be a departure from the normal practice in this MDL. But, there is no equitable alternative. If defendants are going to litigate about what they are owed, then plaintiff should have a fair opportunity to litigate about what she is owed -- so that her entitlement can be netted against defendants' claim to arrive at an equitable tender amount (which plaintiff expects to be substantially lower than what defendants are now demanding).

Litigation in this MDL ought to be a two way street. It would be unfair if defendants were free to litigate those issues that work to their advantage -- such as equitable modification of statutory rescission procedures -- while plaintiffs were effectively prevented from litigating those issues -- such as their underlying claims -- that work to plaintiffs' advantage.

8

Another reason to decide the appropriate tender amount first is that defendants' request for modification of statutory rescission procedures cannot be decided in a vacuum. The appropriateness of a particular payment plan will depend -- at least to some extent -- on how much money is owed. Consequently, the normal procedure is for a court to determine first how much the plaintiff owes -- after crediting her with the amounts owed to her -- before deciding what sort of payment plan she must follow. See *Williams v. Saxon Mortgage Company*, 2008 U.S. Dist. LEXIS 131 at \*26 (deferring ruling on request to modify rescission procedures until after trial; "HLC is putting the cart before the horse by asking the Court to make an advisory ruling on a hypothetical question that may never be presented" \*\*\* tender amount is normally determined first and the "Court perceives no reason to deviate from that sensible, efficient methodology").

Because valuation of plaintiff's claims would essentially require a trial on their merits, it would probably be more efficient to postpone this determination -- and the modification of statutory rescission procedures -- until after plaintiff's claims have been adjudicated. That was the procedure followed in the *Williams v. Saxon Mortgage Company*, *White* and *Armstrong* cases, cited above.

## IV. PLAINTIFF SHOULD BE ALLOWED A REASONABLE TIME TO REPAY HER NET LOAN PROCEEDS IN AFFORDABLE MONTHLY INSTALLMENTS

Once this Court determines how much plaintiff owes, plaintiff respectfully requests that she be allowed a reasonable time to repay that amount in affordable monthly

installments. Defendants' lien on plaintiff's home would remain in force until plaintiff has repaid the net loan proceeds in full.[1]

This type of modification is well within this Court's authority under the discretion provided by the 1980 amendments to TILA. See *Williams v. Homestake Mortg. Co.*, 968 F.2d 1137, 1142 (11th Cir. 1992) ("a court may impose conditions that run with the voiding of a creditor's security interest upon terms that would be equitable and just to the parties in view of all surrounding circumstances"); *id.* at 1142 n.9 ("The amended statute gives the courts the authority to restructure these loans" * * * "District courts might consider the requiring of the execution of substitute security instruments").

The proposed modification would give defendants much more protection than they enjoy under the statutory procedures. Defendants would not have to refund money to plaintiff but rather could credit it against her existing loan balance. Moreover, their lien on the plaintiff's home would remain in place until the net loan proceeds are repaid in full.

Thus, the proposed modification would protect defendants against the type of inequity that the 1980 amendments to TILA were designed to deal with; namely, the possibility that the creditor will fully perform all of its rescission obligations and then never receive repayment of the net loan proceeds (or the underlying collateral, since the loan is no longer secured). See *Brown v. National Permanent Fed. Sav. & Loan Ass'n.*,

---

[1]    The exact installment plan is best decided after the total tender amount has been determined. Another possibility, if plaintiff decides that she does not want to keep the property, would be to give plaintiff a reasonable time to sell her home and to keep defendants' lien in place until the tender amount has been repaid. See e.g. *In re Dawson*, 411 B.R. 1 (Bkrtcy. D.Col. 2008) (where there was no evidence that the TILA plaintiff could repay the net loan proceeds even in monthly installments, the plaintiff was given 18 months to sell her home); *In Re White*, 374 B.R. 257 (Bkrtcy. D.Kan. 2007) (debtor given one year to repay tender amount); *F.D.I.C. v. Hughes Development Co., Inc.*, 684 F.Supp. 616, 626 (D.Minn. 1988) (requiring tender of adjusted principal in one year).

683 F.2d 444, 448 (D.C. Cir. 1982) ("when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due"); S.Rep. No. 368, 96th Cong. 2d Sess. 29 (1980), reprinted in 1980 U.S.C.C.A.N. 236, 265 ("the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required by the act").

By contrast, defendants' plan -- that TILA claims be dismissed if rescission plaintiffs are unable to pay off the entire loan balance immediately -- is inequitable. Defendants are trying to use today's tight credit standards for subprime borrowers and the poor real estate market as a way to get rid of rescission claims with no remedy whatsoever for the debtor. Besides being unfair, this is inconsistent with statutory policy. See *Williams v. Homestake Mortg. Co.*, 968 F.2d at 1140 ("because rescission is such a painless remedy under the statute ... it acts as an important enforcement tool, insuring creditor compliance with TILA's disclosure requirements"); *id*. at 1142 ("While the goal [of a modification order] should always be to 'restor[e] the parties to the status quo ante,' ... rescission must also maintain its vitality as an enforcement tool'). See also *Rowland v. Magna Millikin Bank of Decatur, N.A.*, 812 F.Supp. 875, 878 (C.D. Ill. 1992) (TILA "must be liberally construed in favor of the consumer")

Plaintiff's proposed modification is also supported by case law. For example, in *In Re Sterten*, 352 B.R. 380 (Bkrtcy. E.D. Pa. 2006), the court modified the statutory rescission procedure by (1) calculating a repayment amount equal to the amount of money advanced by the creditor minus the finance charges paid by the debtor and the

11

statutory damages due the debtor under TILA; (2) requiring the borrower to pay off the repayment amount, plus interest calculated at a rate of 6.36%, in equal installment payments of $790 over 302 months; and (3) permitting the creditor to retain the lien until the repayment amount plus interest was fully paid.

The Court justified allowing the borrower a reasonable time to pay off the repayment amount as follows:

> Generally, given the broad discretion that courts have exercised under 15 U.S.C. § 1635(b) and, in particular, the fact that the common judicial practice of deferring a creditor's duty to terminate its security interest until the consumer has tendered the money or property received in a rescinded transaction is itself a modification of the presumptive rescission process set forth in the statute in order to protect the interests of the creditor, I find the concept of permitting a consumer a reasonable time frame to repay the creditor while the creditor retains the security interest it acquired in the rescinded transaction to be a balanced, equitable approach.

*Id.* at 387 (footnote omitted).

The Court justified the particular payment schedule it ordered, explaining:

> I find the terms described above equitable because they provide the Debtor with a realistic opportunity to satisfy the Repayment Obligation and fulfill her statutory repayment obligation under TILA. Simultaneously, the terms simulate the long term lending relationship to which the parties had agreed and thus, should not be burdensome or oppressive to Option One, particularly since Option One will retain its lien position.

*Id.* at 390.

Similarly, in *Shepard*, 730 F.Supp. 1295, the court allowed the TILA rescission plaintiff to repay the net loan proceeds of $11,361.58 in monthly installments of $199, explaining: "[s]ince Shepard argued in her brief that she thought her payments were going to be $199 per month ... and the Cash Agreement gives that amount as the estimated payment figure ... the Court finds that it would be most equitable to allow Shepard to pay for the siding at that monthly rate." *Id.* at 1308. See also *Jones v. Rees-*

*Max, L.L.C.*, 514 F.Supp.2d 1139, 1146 (D. Minn. 2007) ("it is within this Court's discretion to allow the debtor a reasonable time to pay the mortgage amount");

Likewise, in *Mayfield*, 710 F.Supp. 143, the court allowed the TILA rescission plaintiff to pay off the net loan proceeds of $16,113.62 over time: "in view of the Congressional purpose of restoring the parties to the status quo ante, I will order plaintiff to repay such amount to defendant at $171.00 per month, which was the amount of her monthly mortgage payments prior to the two loan transactions." *Id.* at 149. See also *Bookhart v. Mid-Penn Consumer Discount Co.*, 559 F.Supp. 208 (E.D. Pa. 1983) (permitting consumer to repay $3,412.20 in monthly installments of $15); *In Re Bell*, 314 B.R. 54, 62 (Bkrtcy. E.D. Pa. 2004) ("the Debtor should have a reasonable time for repayment" * * * "If the parties cannot agree upon the amount of the Debtor's repayment obligation and a reasonable repayment schedule, it is the Court's intention to fix the amount and repayment schedule").

Following these precedents -- rather than dismissing plaintiff's case because she cannot find refinancing in today's market -- would promote the Federal Reserve Board's goal that judicial modification "not affect a consumer's substantive right to rescind and to have the loan amount adjusted accordingly." 12 C.F.R. Pt. 226, Supp. I, Paragraph 23(d)(4), Official Staff Commentary. See also *Swanson v. Bank of America, N.A.*, 559 F.3d 653, 655 (7th Cir. 2009) ("the Board's commentary ... is authoritative if within the bounds of reasonableness").

Another important consideration favoring the proposed modification (once the tender amount is determined) is the timing of defendants' motion. Rather than offering rescission in May 2006 when this suit was filed and when refinancing was readily

13

available, defendants waited four years. In the interim, the mortgage and real estate market collapsed. Credit standards tightened. As a result, it is now much more difficult for borrowers such as plaintiff to pay off their net loan proceeds without selling their homes, and even that can take some time.

By demanding payment in short order, and asking that plaintiff's claim be dismissed for her failure to meet that demand, defendants are trying to take advantage of the prejudice caused plaintiff by defendants' own delay and by their failure to offer rescission within the 20 day time limits prescribed by TILA. Defendants should not be allowed to profit in this way from their own wrongdoing. Plaintiff should not lose her rights because defendants did not comply with TILA's rescission requirements within the time period required by law.

In fashioning an equitable modification of TILA rescission procedures, "the district court should consider traditional equitable notions ...." *Williams v. Homestead Mortg. Co.*, 968 F.2d at 1142. One of those notions is the concept of laches, which "operates as a bar upon the assertion of a party's rights when that party has unreasonably delayed in asserting its rights so as to cause prejudice to the adverse party." *Lake Caryonah Imp. Ass'n v. Pulte Home Corp.*, 903 F.2d 505, 509 (7th Cir. 1990).

Plaintiff is not arguing that defendants be denied equitable modification altogether. But the changes in the mortgage and real estate market while defendants illegally denied plaintiff's rescission request -- and the prejudice that plaintiff would suffer as a result of those changes if defendants' demand for immediate tender were enforced -- provides yet another reason for adopting the payment schedule equitable

modification employed in *Stertner*, *Shepard* and *Mayfield* once the tender amount has been determined.

## V.     **CONCLUSION**

Because of the foregoing, defendant's motion should be denied. Instead, plaintiff respectfully requests that this Court set a procedure and schedule for adjudicating plaintiff's claims to determine the appropriate tender amount and, after that has been determined, a procedure and schedule for adjudicating an appropriate payment plan.


                                             Respectfully submitted,


                                        By: /s/   Keith J. Keogh

        Keith J. Keogh
        Ainat Margalit
        KEOGH LAW, LTD.
        101 N. Wacker Dr., Suite 605
        Chicago, Il 60606
        312.726.1092/ 312.726.1093 (fax)
        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2010October 6, 2010, I caused a true and correct copy of the foregoing to be served upon the attorneys of record via the ECF system for the Northern District of Illinois.

By: /s/ <u>Keith J. Keogh</u>

16