UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead case No. 05-7097 |
| ——————————————— | Centralized before the Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: | |
| PAMELA BROWN, HARVEY CLARK, CLINT & CHRISTI DORN, MICHAEL & LORI GRUHLKE, STEVEN STEELE & DAWN PEIL v. AMERIQUEST MORTGAGE COMPANY, AMC MORTGAGE SERVICES, INC., AMERIQUEST MORTGAGE SECURITIES, INC., ACC CAPITAL HOLDINDGS CORPORATION, BARCLAYS CAPITAL REAL ESTATE, INC., D/B/A HOMEEQ SERVICING, DEUTSCHE BANK NATIONAL TRUST COMPANY, in its own capacity and as Trustee for the following trusts: Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates Series 2005-R6 Under The Pooling and Servicing Agreement Dated as of July 1, 2005 Without Recourse; Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates Series 2006-R1 Under The Pooling and Servicing Agreement Dated as of February 1, 2006 Without Recourse; AMERIQUEST MORTGAGE SECURITIES, INC. ASSET BACKED PASS THROUGH CERTIFICATES SERIES 2005-R6 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF JULY 1, 2005 WITHOUT RECOURSE; AMERIQUEST MORTGAGE SECURITIES, INC. ASSET BACKED PASS THROUGH CERTIFICATES SERIES 2006-R1 UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF FEBRUARY 1, 2006 WITHOUT RECOURSE; US BANK NATIONAL ASSOCIATION, in its own capacity and as Trustee for STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-AR1; STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2005-AR1 (Case No.: 07-cv-4890, N.D. Ill.) | JURY TRIAL DEMAND |

# THIRD AMENDED COMPLAINT

## INTRODUCTION

1. Plaintiffs charge defendants with failure to honor valid rescission requests in violation of 15 U.S.C. § 1635. Plaintiffs also charge defendants Ameriquest Mortgage Company, AMC Mortgage Services, Inc. and Deutsche Bank National Trust Company with violation of applicable state law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claims under the Truth in Lending Act arise under federal law. This Court has supplemental jurisdiction over plaintiffs' claims under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

## PARTIES

4. Plaintiffs are homeowners who refinanced their mortgages in transactions with Ameriquest Mortgage Company.

5. Defendant Ameriquest Mortgage Company originated plaintiffs' mortgages. In connection with those refinancing transactions, Ameriquest Mortgage Company took security interests in plaintiffs' homes. Ameriquest Mortgage Company also did business in this District.

6. Defendant AMC Mortgage Services, Inc. at one point serviced plaintiffs' mortgages that were originated by Ameriquest and did business in this District.

7. Defendant Ameriquest Mortgage Securities, Inc. holds or held legal or beneficial title to the mortgage loans originated by Ameriquest at issue in this lawsuit.

8. Defendant ACC Capital Holdings Corporation is the parent company for Ameriquest Mortgage Company and AMC Mortgage Services, Inc.

9. Defendant Deutsche Bank National Trust Company, either in its own capacity or as trustee for various trusts, has been an assignee of various mortgages originated by Ameriquest. The relevant trusts, for purposes of this case, are Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates Series 2005-R6 Under the Pooling and Servicing Agreement Dated As of July 1, 2005 Without Recourse (Brown and Clark loans) and Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates Series 2006-R1 Under the Pooling and Servicing Agreement Dated As of February 1, 2006 Without Recourse (Steele/Peil loan). Those same trusts are also being sued directly, as permitted by Rule 17(b) of the Federal Rules of Civil Procedure.

10. Defendant US Bank National Association, either in its own capacity or as trustee for the following trust: Structured Asset Securities Corporation Mortgage Pass Through Certificates, Series 2005-ARI Under Securitization Servicing Agreement Dated as of November 1, 2005 is the assignee of the Dorn loan. The same trust is also being sued directly, as permitted by Rule 17(b) of the Federal Rules of Civil Procedure.

11. Defendant Barclays Capital Real Estate, Inc., d/b/a HomeEq Servicing services the mortgage of plaintiffs Clint and Christi Dorn.

12. Plaintiffs are informed and believe that, at all times herein mentioned, defendants Ameriquest Mortgage Company, AMC Mortgage Services, Inc. Ameriquest Mortgage Securities, Inc., ACC Capital Holdings Corporation and Deutsche Bank National Trust Company were agents, co-conspirators, joint tortfeasors, joint venturers, and/or alter egos of each other defendant. In doing the things alleged herein, each defendant was acting within the course and scope of said agency, conspiracy, contract, and/or joint venture with the direction, advance knowledge, authorization, acquiescence, and/or subsequent ratification of each and every remaining defendant. Each defendant was put in a position and so enabled by the remaining defendant to do the things hereinafter alleged. Each

defendant had the knowledge of and agreed to the objective and course of action hereinafter alleged, and each defendant conspired with and aided and abetted each other defendant in achieving that objective and pursuing that course of action.

13. Whenever reference is made in this complaint to any act, deed or transaction of any defendant corporation, or any other defendant business entity, such allegations shall be deemed to mean that the officers, directors, agents or employees of said defendant authorized, acted and did such acts in behalf of said defendant while actively engaged in the management, direction or control of its affairs and while acting within the course and scope of their employment.

14. Whenever reference is made in this complaint to any act of any defendant, such allegation shall be deemed to mean the act of each defendant, acting individually, jointly and severally.

15. At all times relevant herein, defendants, and each of them, were the agents of each of the other defendants and in doing the things alleged herein were acting within the course and scope of said agency.

## COUNT ONE -- TRUTH IN LENDING ACT

16. Plaintiffs incorporate paragraphs one through fifteen above.

17. Ameriquest's disclosures to plaintiffs in connection with plaintiffs' mortgage refinancing transactions did not comply with the requirements of the Truth in Lending Act. More specifically, the disclosures were deficient in the following ways:

### Pamela Brown

18. First, Ameriquest did not deliver two Notice of Right to Cancel forms to plaintiff. Second, the Notice of Right to Cancel form delivered to plaintiff at the closing left blank the date that the rescission period expired, a violation of 12 C.F.R. § 226.23(b)(1)(v). Third, Ameriquest gave checks to plaintiff at the closing, thereby improperly disbursing

4

funds prior to the expiration of the rescission period, in violation of 12 C.F.R. § 226.23(c). Fourth, plaintiff was given two documents, both entitled APPLICATION DISCLOSURE, one of which indicated that she would owe $300 if she backed out of the deal after the Lender ordered the appraisal/property valuation, while the other indicated that she would owe $400 if she backed out of the deal after the Lender ordered the appraisal/property valuation. Both statements were misrepresentations which violated 12 C.F.R. § 226.23(b)(1)(iv). Fifth, Ameriquest misled plaintiff as to whether her interest rate was likely to increase, a misrepresentation that violated 12 C.F.R. § 226.18.

### Harvey Clark

19. First, the Notice of Right to Cancel forms given to Harvey Clark at the closing did not set forth the date that the rescission period expired, a violation of 12 C.F.R. § 226.23(b)(1)(v). Second, Ameriquest told Mr. Clark that he would have to pay $500 if he backed out of the deal, thereby misrepresenting plaintiff's rescission rights and making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv). Third, Ameriquest misled Mr. Clark as to the interest rate he would be charged in violation of 12 C.F.R. § 226.18.

### Dorn

20. Ameriquest gave the Dorns a document entitled APPLICATION DISCLOSURE which stated that they were being charged $400 for an appraisal and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." This statement contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's

5

commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv). Second, Ameriquest paid more to a prior lender than the amount actually owed. The overpayment should have been classified as a finance charge. As a result, the finance charge and APR were materially understated on the Truth in Lending Act disclosure. Third, Ameriquest misled the Dorns as to the possibility of refinancing out of the Ameriquest mortgage before the interest rate increased, thereby effectively misleading plaintiffs as to the existence of a variable interest rate on their loan in violation of 12 C.F.R. § 226.18.

### Gruhlke

21. First, on the Notice of Right to Cancel forms that were given to the Gruhlkes at the closing, there is no date filled in for the expiration of the rescission period, a violation of 12 C.F.R. § 226.23(b)(1)(v). Second, Ameriquest misled plaintiffs as to their interest rate and the possibility of refinancing in 18 months, thereby violating 12 C.F.R. § 226.18. Third, Ameriquest told Mr. Gruhlke that he would have to pay a $75 notary fee if he did not sign the loan papers, thereby misrepresenting plaintiffs' rescission rights and making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

### Steele/Peil

22. First, the Notice of Right to Cancel forms that were delivered to Steven Steele and Dawn Peil at the closing did not set forth the date that the rescission period expired, which is a violation of 12 C.F.R. § 226.23(b)(1). Second, plaintiffs' transaction was not

consummated on November 18, 2005 because Ameriquest told plaintiffs that the terms of the deal would be changed afterwards. Therefore, even if Ameriquest had disclosed a date that the rescission period expired based on a November 18, 2005 consummation date, that supposed expiration date would have been incorrect. Third, Ameriquest misled plaintiffs Steele and Peil as to the possibility of refinancing out of the Ameriquest mortgage before the interest rate increased, which effectively misled plaintiffs as to the existence of a variable interest rate on their loan in violation of 12 C.F.R. § 226.18.

23. Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

24. Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs sent rescission notices to Ameriquest and to the defendants who owned and serviced their respective mortgages. Defendants did not honor the rescission requests as required by federal law. Plaintiffs are entitled to rescission of their mortgage transactions plus other relief.

**COUNT TWO**
**FALSE ADVERTISING / UNFAIR AND DECEPTIVE ACTS AND PRACTICES**

25. Plaintiffs incorporate paragraphs one through fifteen above.

26. In connection with trade or commerce, Ameriquest engaged in false advertising and engaged in unfair and deceptive acts and practices in violation of State laws (including common law doctrines) which prohibit bait and switch sales practices. More specifically, as detailed below, Ameriquest baited plaintiffs into mortgage transactions by offering relatively favorable terms and then switched to more expensive terms. This misconduct

7

has caused damage to plaintiffs. More specifically:

### Pamela Brown

27. Plaintiff Pamela Brown owns a home in Lincoln Park Michigan, where she lives with her son, daughter and granddaughter. Ms. Brown works in an accounts receivable department. In or about April 2005, plaintiff spoke repeatedly on the telephone to an Ameriquest representative about refinancing the mortgage on her home. The Ameriquest representative told plaintiff that the best program he had for her involved an adjustable rate mortgage. Plaintiff said that she did not want an adjustable rate loan because she did not want to get stuck with a high interest rate. The Ameriquest representative told plaintiff not to worry because he would put her in a program where in two years time she could refinance and get into a better rate. The Ameriquest representative also said that if the market interest rate went down in the future, plaintiff's rate would go down as well. Ameriquest prepared papers for a loan of $114,000.00 with an initial interest rate of 9.850%, which could go up to as high as 15.850%, depending on changes on the LIBOR rate but under no circumstances could go below 9.850%. Ameriquest charged plaintiff $9,515.28 in fees and points for this loan, including a 5% "Loan Discount Fee". The closing took place on April 27, 2005 at plaintiff's home. A closing agent brought the papers and told plaintiff where to sign and where to initial the documents. The closer could not answer plaintiff's questions and went through the documents so quickly that plaintiff only had time to skim them. The closing lasted about 30 minutes. At the end, the closer gave checks to plaintiffs and told her "we're all set." Plaintiff has since tried to refinance her mortgage, but has not been successful. Ameriquest did not return her calls. In or about April 2007, Defendant AMC Mortgage Services sent a letter to plaintiff informing her that her mortgage interest rate would be increased to 11.850%.

8

**Harvey Clark**

28. Plaintiff Harvey Clark, a handyman, owns a home in Lake Havasu City, Arizona, where he lives with his son. In or about December 2004, plaintiff decided to refinance his home mortgage in order to raise money to improve his home. Mr. Clark spoke on the telephone to a representative of Ameriquest. The Ameriquest representative promised Mr. Clark a mortgage with an initial interest rate of 5.3% or 5.5%, but Ameriquest gave Mr. Clark a mortgage with an initial interest rate of 6.55%. Also, the Ameriquest representative misled Mr. Clark as to his rights by telling him that there was a good faith requirement such that if Mr. Clark backed out of the deal after Ameriquest started working on it, then Mr. Clark would owe Ameriquest $500.

**Dorn**

29. Plaintiff Clint Dorn is a juvenile detention supervisor. Plaintiff Christi Dorn is a special education teacher. Mr. and Mrs. Dorn own a home in Toledo, Ohio, where they live with their two children. In or about May 2005, Mr. Dorn spoke repeatedly on the telephone to an Ameriquest representative named Chuck Miller about refinancing the mortgage on their home. Ameriquest sent an appraiser to the Dorns' home and afterwards said that the home appraised for a little over $123,000. Mr. Miller offered an adjustable rate loan of approximately $110,000 and told Mr. Dorn that in two years (before the rate adjusted upwards) Mr. Dorn could refinance and the interest rate would either go up or go down depending on what Mr. Dorn's credit score was and whether Mr. Dorn had been making his mortgage payments. However, the Dorns have not been able to refinance as promised because the value of their home is much less than the amount represented by Ameriquest. For example, one prospective lender did a comparison appraisal on the Dorns' home and concluded that it was only worth something like $80,000, less than the amount owed on the mortgage and much less than the amount that Ameriquest told the Dorns their home was worth.

### Gruhlke

30. Plaintiffs Michael and Lorie Gruhlke own a home in Idaho Falls, Idaho, where they live with their daughter. Mr. Gruhlke spent 22 years in the Navy before retiring as a senior chief petty officer. He now works as a purchasing agent for Anheuser Busch. Mrs. Gruhlke works as a part time food service technician for the local school district. In early 2006, the Gruhlkes decided to refinance the mortgage on their home in order to consolidate a first and second mortgage. In or about March 2006, Mr. Gruhlke contacted Ameriquest and spoke repeatedly on the telephone to an Ameriquest representative. Michael Gruhlke was told that the initial interest rate on his mortgage loan would be 6%, instead it was 6.99%. Mr. Gruhlke was told the closing costs would be around $4,000 or $5,000, instead the Gruhlkes were charged $9,796.43 in fees and points. The Ameriquest representative assured Mr. Gruhlke that he would be able to refinance the loan after 18 months (before the rate adjusted upward) to a fixed rate mortgage at a lower rate. But in fact, early refinancing was not possible because of a substantial prepayment penalty if the loan were repaid in the first three years and because the value of Gruhlkes' home is less than the amount of their loan.

### Steven Steele and Dawn Peil

31. Plaintiff Steven Steele is a construction worker. His wife, Dawn Peil, is a medical assistant. They own a home in Oconto, Wisconsin where they live with their two children. In 2005, plaintiffs decided to refinance the mortgage on their home in order to pay for repairs to the house and to pay off some personal debts. In or about November 2005, plaintiffs spoke repeatedly on the telephone to a representative of Ameriquest. Plaintiffs were promised an initial interest rate of 8%, but instead their initial interest rate turned out to be 10.4%. Plaintiffs were promised cash out of about $15,000, but in fact their cash out turned out to be only $7,054.11. Plaintiffs were told that they would be able to refinance at a lower rate in approximately six months, but in fact when plaintiffs contacted Ameriquest about refinancing at a lower rate, Ameriquest was not interested.

10

32. Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under applicable state law.

33. Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them injury.

34. Ameriquest's violation of plaintiffs' rights is part of a pattern and practice of illegal behavior by Ameriquest. Defendants AMC Mortgage Services and Deutsche Bank Trust Company knowingly aided and abetted this illegal behavior by Ameriquest, and knowingly participated in an illegal conspiracy and joint venture with Ameriquest, and are therefore also liable to plaintiffs.

## COUNT THREE – NEGLIGENCE

35. Plaintiffs incorporate paragraphs one through fifteen and twenty-seven through thirty-four above.

36. Because of a lack of due care, Ameriquest made false and misleading representations to plaintiffs upon which plaintiffs justifiably and detrimentally relied. More specifically, Ameriquest baited plaintiffs into mortgage transactions by offering relatively favorable terms and then switched to more expensive terms. This misconduct has caused damage to plaintiffs. The other defendants, AMC Mortgage Services, Inc. Ameriquest Mortgage Securities, Inc., ACC Capital Holdings and Deutsche Bank National Trust Company, are jointly responsible because Ameriquest was acting as their agent and/or co-venturer.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

    a.    canceling the appropriate defendants' security interests in the appropriate plaintiffs' homes and ordering those defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

    b.    awarding appropriate statutory damages against defendants Ameriquest Mortgage Company, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., ACC Capital

11

Holdings Corporation and Deutsche Bank National Trust Company;

 c. awarding plaintiffs costs, penalties, and attorneys fees;

 d. awarding plaintiffs actual and punitive damages against defendants Ameriquest Mortgage Company, AMC Mortgage Services, Inc., Ameriquest Mortgage Securities, Inc., ACC Capital Holdings Corporation and Deutsche Bank National Trust Company

 e. granting such other relief as the Court deems just and proper.


Date: October 21, 2010   Respectfully submitted by:

          /s/ Anthony P. Valach, Jr.
          Counsel for the Plaintiffs

          THE LAW OFFICES OF DANIEL HARRIS
          Daniel Harris
          Anthony Valach
          150 N. Wacker Dr., Suite 3000
          Chicago, IL 60606
          Telephone: (312) 960-1802
          Facsimile: (312) 960-1936
          lawofficedh@yahoo.com
          anthonyvalach@sbcglobal.net