**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05 C 7097 |
| THIS DOCUMENT RELATES TO: | |
| *Camille J. Gburek v. Argent Mortgage, et al.,* Case No. 06 C 2639 (N.D. Ill.) | Centralized before The Honorable Marvin E. Aspen |

**REPLY IN SUPPORT OF DEFENDANT WMC MORTGAGE, LLC'S
MOTION TO ESTABLISH ALTERNATE PROCEDURES FOR
RESCISSION CLAIMED BY PLAINTIFF UNDER 15 U.S.C. § 1635
AND TO REQUIRE PLAINTIFF TO PROCEED WITH RESCISSION**

Defendant WMC Mortgage, LLC, as successor in interest to WMC Mortgage Corp. ("WMC"), by and through its attorneys, Dykema Gossett PLLC, hereby submits its reply in support of WMC's Motion to Establish Alternate Procedures for Rescission Claimed by Plaintiff and to Require Plaintiff to Proceed with Rescission (the "Motion," *Gburek* Dkt. No. 76 and MDL Dkt. No. 3718).

## INTRODUCTION

Plaintiff, Camille J. Gburek ("Plaintiff") has made a demand for rescission in Count IV of the Complaint. *Gburek* Dkt. No. 1 ("Compl."), at 12. Despite WMC's offer to rescind the one loan that it currently owns, Plaintiff has failed to provide any assurances that she is ready, willing and able to rescind. Instead of providing assurance of *any* ability to the rescission amounts, Plaintiff suggests the parties proceed with significant litigation and a loan modification with a payment plan despite her allegations that she was unable to make any payments at all. Because Plaintiff cannot provide any assurances that she is able to rescind, the Court should modify the statutory rescission procedures to require Plaintiff to tender the non-rescindable portions of her

loans to WMC before WMC releases its lien.  If Plaintiff cannot do so, Count IV should be dismissed as moot.

## ARGUMENT

### I.    THE COURT SHOULD DISMISS THE DEMAND FOR RESCISSION IF PLAINTIFF FAILS TO TENDER THE LOAN PROCEEDS IN ACCORDANCE WITH THE MODIFIED RESCISSION PROCEDURES.

Plaintiff fails to address WMC's argument that the rescission procedures should be modified.  Given Plaintiff's stated position that she never made even one mortgage payment to WMC, that the loan is in foreclosure, that she cannot afford repayment of the loan, and that she failed to respond in any way to WMC's request for assurance that she could pay the rescission amount, WMC, to protect itself, has requested that the Court alter the rescission procedures to require Plaintiff to tender the non-rescindable portions of the loan before WMC is required to release its security interest or return money to Plaintiff.  Compl., ¶¶ 70(a), 74; Memorandum in Support of WMC's Motion ("WMC Mem.," *Gburek* Dkt. No. 77 and MDL Dkt. No. 3719), at 2. Plaintiff responds, circularly, that unless the Court modifies the procedures, Plaintiff has no duty to tender unless the lien is cancelled first.  Pl.'s Memorandum in Opposition ("Opp'n," MDL Dkt. No. 3756), at 5.  While that is true, WMC is *asking* the Court to modify the procedures given Plaintiff's lack of financial resources to pay.  Arguing that the procedures have not yet been modified is not responsive and non-sensical.

Plaintiff makes another irrelevant argument, that her ability to tender the rescission amount should be made after preliminary issues have been decided.  Opp'n, at 6.  She fails to state what those preliminary issues are.  Moreover, she claims that her inability to pay is speculative despite alleging in her Complaint that "plaintiff could not afford to make a single payment" to WMC and failing to respond to WMC's two written requests for assurance of payment.  Compl., ¶ 74; WMC Mem. Exs. 1-2.  Modification is appropriate where a borrower

2

cannot provide any assurance of her ability to repay the non-rescindable portions of her loan. *See Hasan v. BNC Mortgage, Inc.,* No. 04 C 6987, slip op. at 2-3 (N.D. Ill. July 12, 2005) (Ex. 3 to WMC Mem.). Here, modification is appropriate because Plaintiff has alleged that she could not even make the first mortgage payment and has provided nothing to show she has any income at all at the present time to make any payments. She offers nothing in her response to even suggest that she can afford any repayment. Instead she claims that she should not have to comply with a modification order that has not yet been entered. Opp'n, at 7. Again, her reasoning is circular. The Court cannot enter a modification order without knowing whether Plaintiff can afford to pay anything. Given her claims that she could not make even one payment, her ability to repay anything is in question and, accordingly, WMC has asked that the Court to alter the procedures so that Plaintiff pays before WMC tenders. This will avoid, for instance, WMC releasing its security interest before Plaintiff pays and Plaintiff then declaring bankruptcy, leaving WMC with no collateralized interest.

Plaintiff's response entirely fails to address these concerns. The Court has discretion to modify rescission, but Plaintiff has provided no reason for the Court not to modify based on her apparent inability to re-pay. Where a plaintiff is unable to tender loan proceeds, rescission is inappropriate. *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 820-21 (4th Cir. 2007). WMC should not be forced to spend money litigating and defending against rescission claims for several more years where those claims can never be fulfilled due to Plaintiff's lack of financial resources, and while Plaintiff lives in the house at WMC's expense without ever making a single payment. The purpose of TILA is not to permit the debtor to indefinitely extend the loan without interest. *Id*. at 821. In *Shelton*, the debtors acknowledged that they had no ability to pay and, in the year after they provided notice of rescission, they failed to make any

payments of principal or interest. *Id.* Once the court reviewed the debtors' ability to pay and determined that the debtors were unable to tender any rescission amount, the remedy of rescission was inappropriate. *Id.* Here, Plaintiff has provided no assurance that she can pay for any rescission amount given her claim that she could not make even one mortgage payment. Compl., ¶ 74. The Court should set a deadline for Plaintiff to provide assurance that she can tender the rescission amount and to then tender it, and if Plaintiff fails to tender the loan proceeds by the Court's deadline, *then* the TILA claim should be dismissed as moot. If Plaintiff has no resources to rescind, then her rescission claim fails.

## II.    THE TENDER AMOUNT SHOULD BE BASED ON THE AMOUNT DUE UNDER THE LOANS

WMC does not dispute that before Plaintiff can tender the non-rescindable amounts of her loans, that amount must be determined. The calculation is simple: the current principal – interest paid – fees paid at closing = rescission amount. WMC calculated this amount in the first letter it sent to Plaintiff ($474,672.90), contrary to Plaintiff's claim that WMC has demanded an uncalculated amount, and the calculation is straightforward given that Plaintiff never paid any interest or made any payments on the loan at all. WMC Mem. Ex. 1; Opp'n, at 5.

Plaintiff fails to provide support for her claim that this calculation should take into account her alleged TILA damages or state law claims or rescission of other loans that WMC does not own. Opp'n, at 8. In other words, Plaintiff wants to maintain a rescission claim—for which she has provided no evidence of her ability to repay —so that she can use it as a set-off for possible awards she might receive on her state law claims. Plaintiff goes even further and refers to "several other claims" she contends WMC has ignored. Opp'n, at 8. However, Plaintiff has only two claims against WMC in this lawsuit: one for rescission and one under Illinois'

Consumer Fraud Act. Compl., Counts IV and V. WMC is not responsible for claims against other defendants and it cannot rescind loans it does not own.

Plaintiff relies heavily on *Williams v. Saxon Mortgage, Co.*, Civil Action No. 06-0799-WS-B, 2008 WL 45739 (S.D. Ala. Jan. 2, 2008), but that case is distinguishable. The *Williams* Court noted that in exercising discretion over whether and how to modify the rescission procedures, courts "should consider traditional equitable notions, including such factors as the severity of [the lender]'s TILA violations and whether [the borrower] has the ability to repay the principal amount." *Id.* at *4 (citation and internal quotation marks omitted). The *Williams* Court then examined those factors, and required that the plaintiffs provide an adequate showing of their ability to repay the loan if rescinded by providing an affidavit confirming their full-time employment, the property's appraised value, and that the plaintiffs were working with the lender to catch up on the missed payments. *Id.* at *5. The *Williams* Court further found that the alleged TILA violations against the lender included systematic omissions of mandatory disclosures of inflated fees and facially unlawful pay-on-demand and prepayment penalty features as opposed to mere technicalities. *Id.* at *6.

In contrast, Plaintiff's only TILA allegation against WMC is that she received an incomplete notice of right to cancel. Compl., ¶ 63. She does not deny that her only alleged notice of rescission is her rescission claim in her Complaint and has provided nothing to show that she ever gave any other notice of rescission; thus, she has only set forth a claim for rescission, not an actual notice of rescission. *See Dawson v. Thomas (In re Dawson)*, 411 B.R. 1, 40-41 (D.D.C. 2008) (lender not obligated to rescind where only notice of rescission was demand in complaint) (citing *Shelton*). Regarding her ability to repay, Plaintiff has provided nothing to show that she has any income at all. She alleges in her Complaint that she was unable

to make even one payment and it has been five years since she re-financed: she offers no evidence that her circumstances have since changed in the slightes. Opp'n, at 4. This case is nothing like *Williams*. In fact, the *Williams* Court recognized several important rescission principles that Plaintiff conveniently glosses over and which WMC raised in its Motion. "Rescission of a loan transaction generally requires that both parties be restored to their respective *ex ante* positions." 2008 WL 45739, at *2. It does not, as Plaintiff suggests, rule that a trial on the merits is required. Opp'n, at 9. "Unquestionably, [w]hen a borrower rescinds a loan, he or she must return the money borrowed." *Williams*, 2008 WL 45739, at *3 (quoting *In re Porter*, 961 F.2d 1066, 1077 (3d Cir. 1992)) (internal quotation marks omitted). Plaintiff cannot demand rescission and then back-pedal when WMC requests some assurances that she is able to return the money borrowed, given her admitted inability to make any payments.

Plaintiff further argues that all of her claims should be set-off against her rescission demand, but her Consumer Fraud Act claim is unrelated to her rescission. Nothing prevents her from pursuing that state law claim once she has either rescinded or dismissed her rescission claim. But forcing WMC to litigate the rescission claim where Plaintiff is unable to provide any assurance that she can repay any rescindable amounts is inequitable. *See Dawson*, 411 B.R. at 41 (TILA is an equitable doctrine subject to equitable considerations). Plaintiff also argues that it would be inequitable for her not to have a chance to litigate her rescission claim. Opp'n, at 9. This misses the point. Litigating the rescission claim is inequitable if Plaintiff has no means to repay any rescindable amount. *Dawson*, 411 B.R. at 42 (return of non-rescindable loan amount ordered before lender terminated security interest where plaintiff could only pay if she sold the house). Plaintiff's position would allow her to drag the litigation out and continue avoiding

payments indefinitely, to WMC's detriment. That, too, is an inequitable approach. Accordingly, WMC has requested that a deadline be set for her to tender the non-rescindable loan amounts.

The other cases cited by Plaintiff are irrelevant. In both *In re Armstrong*, 288 B.R. 404 (Bankr. E.D. Pa. 2003), and *In re White*, 374 B.R. 257 (Bankr. D. Kan. 2007), out of state bankruptcy courts decided, after trial, to reduce the tender amount by damages already awarded on the other claims. Those opinions do not suggest that a court is *required* to wait until after trial to determine the procedures of rescission where the plaintiff has indicated that she has no means to repay any amounts.

## III. PLAINTIFF'S REQUEST FOR A LOAN MODIFICATION SHOULD BE DENIED.

Plaintiff's loan modification proposal runs against her demand for rescission and, as argued above, is inequitable to WMC. Under Plaintiff's modification plan, she would take even more time (in addition to the four years she has already taken to litigate this matter) to try her tenuous rescission claim, and then have the Court set up a payment plan, giving her what will likely be an indefinite number of years before she makes any payment at all. Plaintiff has already lived in the house for five years without making a single payment and has provided nothing to indicate that she has any income to make any payments at all. Forging WMC to continue footing the bill for Plaintiff to occupy the house *and* pay to litigate her TILA claim through trial is hardly equitable or justified.

Plaintiff cites several cases in which courts ordered payment plans but her opposition fails to provide the essential link between those authorities and Plaintiff's rescission claim: is Plaintiff even financially capable of making any payments at all? Unlike here, in each case Plaintiff cites, the borrower previously made payment to the lender and the courts had some indication that they could continue making payments.

7

Plaintiff claims that it would be unfair for her claim for rescission to be dismissed at a time when she cannot find refinancing, but any delay is a result of Plaintiff's inaction. Plaintiff defaulted on her loan to WMC immediately. She admits that refinancing was "readily available" in May 2006 (Opp'n, at 13-14), but she never bothered to refinance. Rather than attempting to refinance, she continued to miss payments and then filed suit against WMC. She seeks rescission in the Complaint, but claims she will suffer prejudice if the Court orders rescission. Her Response essentially admits that although she has requested rescission, but that she does not have the interest or means to rescind. Because Plaintiff cannot tender the non-rescindable loan amounts to WMC, her claim for rescission should be dismissed as moot.

## CONCLUSION

For the forgoing reasons, this Court should alter the rescission procedure under 15 U.S.C. § 1635 to require Plaintiff to tender all non-rescindable loan amounts before WMC is required to release its security interest in the property or return any monies to Plaintiff, require Plaintiff to tender all non-rescindable loan amounts to WMC, and if Plaintiff fails to do so, dismiss Count IV of Plaintiff's Complaint as moot.

Dated: October 21, 2010            Respectfully submitted,

                                              **WMC Mortgage, LLC as successor in interest to WMC Mortgage Corp.**

                                              By:   s/ Amy R. Jonker
                                                     Patrick T. Stanton (pstanton@dykema.com)
                                                     Amy R. Jonker (ajonker@dykema.com)
                                                     DYKEMA GOSSETT PLLC
                                                     10 South Wacker Drive, Suite 2300
                                                     Chicago, IL 60606
                                                     Phone: 312-876-1700
                                                     Fax:    312-627-2302

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2010, I electronically filed the foregoing **Reply in Support of Defendant WMC's Motion to Establish Alternate Procedures for Rescission Claimed by Plaintiff Under 15 U.S.C. § 1635 and to Require Plaintiff to Proceed with Rescission** with the Clerk of the Court using the CM/ECF system, which sent electronic notification of the filing on the same day to all counsel of record, including:

                        Keith J. Keogh (keith@keoghlaw.com)
                        Ainat Margalit (amargalit@keoghlaw.com)

                                           s/ Amy R. Jonker

CHICAGO\3064747.2
ID\ABEN - 104143/0001

9