1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3    IN RE                        ) Lead Docket No. 05 C 7097
                                   ) MDL No. 1715
 4      AMERIQUEST MORTGAGE COMPANY,  )
                                   )
 5                                 ) Chicago, Illinois
                                   ) December 19, 2008
 6                                 ) 11:00 o'clock a.m.

 7              TRANSCRIPT OF PROCEEDINGS - STATUS
              BEFORE THE HONORABLE MARVIN E. ASPEN
 8
      APPEARANCES:
 9

10    For the Plaintiffs:        MR. GARY KLEIN
                                 MR. MARVIN MILLER
11                               MS. CATHLEEN COMBS
                                 MS. TARA L. GOODWIN
12                               MR. DANIEL MARK HARRIS
                                 MR. ANTHONY VALACH
13                               MR. TERRY A. SMILJANICH
                                 MS. RACHEL GEMAN, by phone
14                               MS. SHENNAN KAVANAGH, by phone

15
      For the Defendants:       MR. BERNARD E. LeSAGE
16                              MS. LAURIE S. FULTON
                                MS. STEPHANIE M. ZIMDAHL
17                              MR. WILLIAM R. BROWN
                                MS. CATHLEEN M. COMBS
18                              MS. TARA L. GOODWIN
                                MR. KEITH R. VERGES
19                              MR. DANIEL MARK HARRIS
                                MR. ANTHONY VALACH
20                              MR. WILLIAM SPIELBERGER
                                MR. DONALD P. ECKLER
21                              MR. ALAN SALPETER
                                MR. THOMAS M. CRAWFORD
22                              MR. RAM NATARAJAN
                                MR. GERALD J. SRAMEK
23                              MS. ANNA C. SCHUMAKER
                                MR. CHARLES S. OFSTEIN
24                              MR. STEVEN M. SANDLER
                                MR. TERRY A. SMILJANICH
25                              MR. THOMAS J. WIEGAND
                                MR. JOHN L. ROPIEQUET
```

1    APPEARANCES (Cont'd):

2

     For the Defendants:        MS. KATHERINE M. DONAT
3                               MR. GARY T. JANSEN
                                MR. LEE M. WEISZ
4                               MS. LINDA B. DUBNOW
                                MR. JAMES V. HART
5                               MR. CRAIG A. VARGA
                                MS. KERRY D. NELSON
6                               MS. EMILY K. LASHLEY
                                MR. GEORGE K. FLYNN
7                               MR. DAVID A. WARD

8

     Court Reporter:           MR. JOSEPH RICKHOFF
9                              Official Court Reporter
                               219 S. Dearborn St., Suite 1232
10                             Chicago, Illinois  60604
                               (312) 435-5562
11

12              *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

13                       PROCEEDINGS RECORDED BY
                         MECHANICAL STENOGRAPHY
14                  TRANSCRIPT PRODUCED BY COMPUTER

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE CLERK:  05 C 7097, In Re Ameriquest Mortgage
 2    Company.
 3              THE COURT:  Good morning.
 4              I am going to let you identify yourselves for the
 5    record, but I think that would take about a half an hour if we
 6    did that.  So, maybe at the end of the proceedings, you can
 7    give your names to the court reporter, but please identify
 8    yourselves when you address the Court and let me know who you
 9    represent.
10              First of all, I should tell you what my wife told me
11    to tell you.  My wife was born and raised in Honolulu, and she
12    says that I should apologize to all you out-of-towners because
13    it is cruel and unusual punishment to bring all of you to
14    Chicago on a December day.  She said this before the big
15    snowstorm today.
16              I do apologize.  By the luck of the draw, you came at
17    a very bad time of the year here, and I hope that you can get
18    out of town and you do not have any problems afterwards.  If
19    not, just stay and listen to the local news.  There is a lot
20    of interesting stories about the governor.
21              (Laughter.)
22              THE COURT:  You get the local flavor of the city.
23              (Laughter.)
24              THE COURT:
25              I have a rather scripted agenda.  And the reason I am
```

1    doing that is because otherwise, I think we could get into

2    kind of a rather unstructured dialogue about all the

3    ramifications of the case and each side would be telling me

4    how great their case is and how uncooperative the other

5    parties have been.

6         So, I take that as a given.

7         (Laughter.)

8         THE COURT:  Each of you who address me, I am going to

9    assume that your case is a terrific one and that your opponent

10   has not been as forthcoming as you would like the opponent to

11   be.  So, none of you have to tell me that.  Okay?

12        I would like to deal with this case in the order that

13   I think makes sense in terms of administrative.  I think you

14   have gleaned from what I have said before, from some of the

15   orders that I have entered, that my goal is to do my job and

16   help you do your job in the most efficient and financially

17   responsible way that we can.  Responsible not only to the

18   court's assets, but to those of your clients.

19        With that in mind, the first issue I want to address

20   is No. 1 on our agenda, the status of the non-borrower and

21   borrower class actions.

22        And bear in my mind that I have read carefully your

23   submissions.  So, I think it might be appropriate for

24   representatives of the non-borrower and borrower classes and

25   for the defendant to -- if you want to supplement briefly and

1    give me your thoughts as to where we are going, and then I

2    will give you mine.

3            MR. KLEIN:  Good morning, your Honor, Gary Klein.

4    I'm in from Boston, so your apology was unnecessary.  It is

5    actually snowing harder in Boston than it is in Chicago today.

6            I'm pleased to report that after a year of

7    mediation -- which was difficult and torturous under the

8    supervision of Judge Weinstein at JAMS in San Francisco -- we

9    have reached a tentative settlement of both the borrower and

10   non-borrower class actions.  We anticipate being able to sign

11   a term sheet in the first week of January with Judge

12   Weinstein's continued supervision.  We are still working on

13   some of the important terms.  All of the details are not done.

14   But I do believe that if things go as we planned, that we will

15   be able to move forward with a settlement in the early part of

16   next year.

17           Is that a fair summary?

18           MR. LeSAGE:  Good morning, your Honor, Bernard LeSage

19   of the Buchalter firm representing the Ameriquest-related

20   defendants.  And I come from California, but it was a

21   beautiful -- the snow is beautiful to me.  So, I appreciate

22   the opportunity.

23           And I concur --

24           (Laughter.)

25           MR. LeSAGE:  I concur with Gary that we are close to

1     a settlement.  There are still some important issues to hammer

2     out, and we're vigorously pursuing those.

3          THE COURT:  So, with that in mind, what we ought to

4     do is a couple things:  Number one, continue the stay as far

5     as discovery is concerned; and, also, if we informally had a

6     stay as to filing of any other pretrial motions or any other

7     papers, we ought to have a stay as far as that is concerned,

8     as well.

9          And I would like your suggestion as to when we ought

10    to have a status date to see -- hopefully, for you to tell me

11    that everything has been accomplished.

12          MR. KLEIN:  We discussed the issue with Judge

13    Weinstein in a conference call yesterday, your Honor.  And the

14    parties agree that it would be appropriate to have a status

15    conference the week of January 26th.  At that point, we would

16    either be able to report that we've reached a settlement and

17    set up a schedule for preliminary approval of the settlement;

18    or, if we have not been able to reach a settlement, if the

19    discussions have fallen apart, we would ask for dates and

20    deadlines for further litigation, your Honor.

21          THE COURT:  Should we set a status date before the

22    Court here, do you think?  Would that be appropriate?

23          MR. KLEIN:  I think it would be appropriate if

24    parties were planning to come in.  I think we would certainly

25    be willing to let you know if things had been resolved, in one

1    direction or another, and perhaps you'd be able to take the

2    conference off.  I think if we had a date, what we could do is

3    cancel it if it became unnecessary by events.

4            THE COURT:  What kind of date are you proposing?

5            MR. KLEIN:  Any date the week of January 26th that's

6    convenient to the Court.

7            THE COURT:  January 26th, I am going to be in -- I am

8    going to be in Honolulu January 26th.

9            (Laughter.)

10           THE COURT:  Would you like to meet there?

11           (Laughter.)

12           THE COURT:  Actually, it is closer to California.

13           MR. KLEIN:  Would the Court entertain the possibility

14   of a telephone conference that week?

15           THE COURT:  Yes, but why do we not do this:  Why do I

16   not set it down for a February date.  Okay?  If there is any

17   reason to meet earlier by telephone or if you want to fly into

18   Honolulu, we can borrow a courthouse there and meet there.

19           How about February 19th at 11:00 o'clock?  Is that

20   still a good time?

21           MR. KLEIN:  Yes, your Honor.

22           MR. LeSAGE:  Yes, your Honor.

23           THE COURT:  Okay.

24           MR. KLEIN:  Does that mean the Honolulu option is off

25   the table?

```
 1                (Laughter.)

 2                THE COURT:  No, it is not.  I would love to see you

 3    in Honolulu.  I will take you to my favorite local restaurant.

 4                (Laughter.)

 5                MS. GOODWIN:  Your Honor, I believe the opt-out cases

 6    are set for a mediation on that date.  So, Bernie might be

 7    busy.

 8                MR. LeSAGE:  Yes, your Honor.  That's February 18, 19

 9    and 20th we have --

10                THE COURT:  How about the 26th, then?

11                MR. LeSAGE:  That would be better, your Honor.

12                THE COURT:  All right.  Let us do it the 26th.

13                THE COURT REPORTER:  Counsel, name please?

14                MS. GOODWIN:  Tara Goodwin for the Individual Claim

15    Steering Committee.

16                THE COURT:  Thank you.

17                All right.  Well, thank you very much.  I will see

18    you then.  And, by all means, you know, if there is any reason

19    we should meet or do anything beforehand, let me know.

20                MR. KLEIN:  Thank you, your Honor.

21                MR. LeSAGE:  Your Honor, I could also resolve Issue

22    No. 4 on your agenda because they are intricately tied into

23    borrower and non-borrower class --

24                THE COURT:  Sure.

25                MR. LeSAGE:  -- and everything --
```

```
 1              THE COURT:  Let us do that.
 2              Is anybody else here on -- that is the credit
 3   reporting agency and third-party action.  Anybody here?
 4              Why do you not step up, also, please.
 5              MS. FULTON:  Good morning, your Honor, Laurie Fulton
 6   from Williams & Connolly on behalf of ChoicePoint.
 7              THE COURT:  Good morning.
 8              MS. ZIMDAHL:  Good morning, your Honor, Stephanie
 9   Zimdahl from Barack, Ferrazzano on behalf of Equifax.
10              MR. BROWN:  Good morning, Judge, William Brown,
11   Schuckit & Associates, on behalf of the third-party defendants
12   TransUnion Corporation and TransUnion, LLC.
13              THE COURT:  Okay.
14              MR. LeSAGE:  Good morning, again, your Honor, Bernard
15   LeSage of the Buchalter firm representing the Ameriquest-
16   related defendants.
17              MS. FULTON:  On behalf of the third-party CRA
18   defendants, we submitted our status report.
19              THE COURT:  Yes.
20              MS. FULTON:  Based upon the understanding we have
21   that the non-borrower plaintiffs are likely to dismiss their
22   class action, we believe that the class action -- third-party
23   class action -- brought by Ameriquest against the CRA
24   defendants should also be dismissed at that time.  It is
25   entirely derivative of the non-borrower claims under the Fair
```

```
 1   Credit Reporting Act "firm offer of credit" part of the
 2   statute.
 3           MR. LeSAGE:  Your Honor, that's accurate.
 4           THE COURT:  Okay.  Fine.  If you want to come back on
 5   the 26th, you can.  If you want to participate by phone, you
 6   can do that, as well.
 7           MS. FULTON:  Thank you, your Honor.  We'll, of
 8   course, be watching the docket to see whether we need to file
 9   anything before then.
10           THE COURT:  Yes.  Do not do anything like that.
11           MS. FULTON:  We will not.  There's a stay in effect.
12           THE COURT:  Thank you.
13           MS. FULTON:  Thank you.
14           MR. BROWN:  Thank you, your Honor.
15           MS. ZIMDAHL:  Thank you, your Honor.
16           THE COURT:  All right.  Let us go on to Item No. 2,
17   which I appreciate is also related to Item No. 3.  I am sorry
18   -- yes, Item No. 2, the opt-out individual actions.  Let us
19   talk about those.  And, then, I assume that that is going to
20   impact the consolidated third-party action, as well.
21           MS. COMBS:  Good morning, your Honor, Cathleen Combs
22   and Tara Goodwin on behalf of the opt-out plaintiffs.
23           MR. HARRIS:  Daniel Harris and Anthony Valach also on
24   behalf of opt-out plaintiffs.
25           MR. LeSAGE:  Good morning, again, your Honor, Bernard
```

1   LeSage on behalf of the Ameriquest-related defendants.

2          MS. GOODWIN:  We have been asked to apologize that

3   Dan Blinn and Charles Delbaum, who are the head of that

4   committee, aren't here today.  It was a bad day for them to

5   fly out.  So, they asked us to pass that on to you.

6          THE COURT:  Where are they flying from?

7          MS. GOODWIN:  Boston.

8          MS. COMBS:  Oh, well.

9          Your Honor, with respect -- as Ms. Goodwin mentioned

10  to you before, we have mediations starting February 18th, 19th

11  and 20th.  Bernie has now laid out a matrix and we're going to

12  try to deal with cases individually.  We're still dickering

13  about who should go first, but that's --

14         THE COURT:  What impact is that going to have on the

15  other cases?

16         MS. COMBS:  These are --

17         THE COURT:  Or what hoped impact?

18         MS. COMBS:  They would be settled individually.

19         THE COURT:  How many cases are we talking about all

20  together?

21         MR. LeSAGE:  Your Honor --

22         MS. GOODWIN:  55.

23         MR. LeSAGE:  -- I have those numbers, if I can sort

24  of run through them for you.

25         THE COURT:  Sure.

12

1          MR. LeSAGE:  They're in our papers, as well, on Pages

2    2 and 9.

3          We have a total number of 498 --

4          THE COURT:  Right.

5          MR. LeSAGE:  -- opt-out cases we have settled

6    officially.  And dismissals in some of these have been

7    entered.  Others will be entered shortly of 63 of those.

8          We have approximately 50 cases which should be

9    dismissed pursuant to settlements -- prior settlements -- with

10   the Attorney General.  And we have about 156 cases which are

11   currently, in one stage or another, going through the

12   potential for a loan modification to settle -- help settle --

13   those cases.

14         If you added all those up, we have in works of

15   settlement -- of one form or another -- 239 cases or

16   thereabouts, roughly speaking.  Some of these cases have more

17   than one plaintiff.  So, these numbers are a little deceptive

18   from that standpoint.

19         But the concept now is, based upon what we have done

20   with Judge O'Connell and with the plaintiffs, is that it would

21   be best to start taking the remainder of these cases one at a

22   time.  So, what we've done is provided a matrix which would

23   allow as many participants -- the cases with the most number

24   of parties -- to go first and associate it with those that

25   have attorneys that are related so we can run down as many as

 1    we can.

 2            I've sent out a matrix of 55 cases, and there's been

 3    a request for additional dates in March, which we will

 4    accommodate.  And if we can get more cases settled on those

 5    three days with Judge O'Connell, we will.  And, certainly, the

 6    expectation might be if we get some of these settled, it might

 7    be a template for other settlements.  So, that's currently the

 8    30,000-foot plan with regard to the mediation.

 9            THE COURT:  106 individual settlements has created a

10    nice annuity for Judge O'Connell.

11            (Laughter.)

12            MR. LeSAGE:  He has been very effective, your Honor.

13    He's worth every penny of that.

14            THE COURT:  I am sure he has.  I am sure he has.  As

15    has Dan Weinstein.

16            MR. LeSAGE:  Yes.  He's done an outstanding job.

17            MS. COMBS:  The next issue, your Honor, is the

18    pretrial motions.  You did rule on our summary judgment

19    motions in effect instructing us to bring in anybody who has

20    similar claims.  We did have some questions for you, based on

21    your order.

22            Our summary judgment motions, of course, are

23    factually based, although we are asserting that the only

24    factual basis for them is -- the only question is -- whether

25    or not the individual plaintiff received a copy of the Truth

1    in Lending disclosures and whether or not it's a residential

2    mortgage.  We believe that those facts should be placed before

3    the Court, and they -- we presume they -- will not be

4    contested.

5            But for purposes of bringing it -- and we would

6    submit an affidavit from our clients to that, and we have.

7    And we would suggest, then, that the people who want to join

8    in would also put in a simple affidavit that says -- and

9    attaches the Truth in Lending disclosures, and states -- that

10   this was a residential mortgage.  I think those are the only

11   factual questions for purposes of a partial summary judgment.

12           Then the question, of course, is:  What are the

13   recision damages?  And we would suggest, but we want some

14   guidance from the -- or we would ask the Court -- that once

15   you have ruled on the issue and if we prevail, that for

16   purposes of determining the individual recision damages, they

17   be sent back to the local courts.

18           Is that what you had in mind or --

19           MR. LeSAGE:  Your Honor, the defendants are not

20   confused by your December the 12th order.  I thought it was

21   very well laid out.  It addressed all of those issues which

22   have been now re-raised this morning.  And despite the

23   statements that maybe defendants will agree with them, some of

24   those positions we would, some we wouldn't.

25           So, your suggestion was -- or I think part of your

1  December 12th order was -- file an appropriate motion after

2  following the procedures you set forth in a detailed minute

3  order and you'll address it at that point in time, after

4  everybody's had an opportunity to file their reply opposition

5  papers and reply papers.

6       MS. GOODWIN:  I think we may be talking about two

7  different issues right here because we're not talking about

8  our issue we raised about opting -- getting people out of the

9  MDL.  What we're talking about is summary judgment where you

10 asked to have everybody join.

11      THE COURT:  Nobody is going to get out of MDL at this

12 point.

13      MS. GOODWIN:  Right.  And that's not what she was

14 talking about.

15      MS. COMBS:  What I'm suggesting is that we want --

16 you said that no factual issues should be raised.  Well, in

17 order to get a summary judgment, we would be asserting there's

18 no genuine issue of material fact, but it's fact based.

19      THE COURT:  If the case is not settled -- you are

20 talking about two different tracks now, right?

21      MS. COMBS:  Right, because, in fact, we're only going

22 to be going ahead on 50 cases that are unrelated to these

23 narrow summary judgment issues that we're talking about.

24 Those are going ahead.  These are cases that are somewhere

25 down the pike, but have a very narrow --

16

1          THE COURT:  But the intent was still to try to settle

2    those cases; is that correct?

3          MS. COMBS:  We hope so.

4          THE COURT:  Am I missing something?

5          MS. GOODWIN:  Well, your Honor gave us 45 days to

6    refile our summary judgment motion and have everyone else

7    join, and we're trying to get clarification on what procedure

8    you want us to use for the other people who join us.

9          THE COURT:  I am not going to rule on 169 summary

10   judgment motions.  You can file what you want.  I am not even

11   going to brief it at this point, if you want to file motions.

12   I am going to rule on any global motions --

13         MS. GOODWIN:  That's what we're talking about.

14         THE COURT:  -- that you file.  Motions that are going

15   to -- any motion that will impact all the cases.  I am not

16   going to look at individual fact differences that may relate

17   to the individual cases.

18          So, if you can file one global motion, that is fine,

19   and I will look at it.  And if I think it is helpful to

20   resolve it in this case and if I can resolve it, I will do

21   that.  But it is not my intent to -- it defeats the whole idea

22   of an MDL for me to take all these cases and decide individual

23   fact- specific motions for summary judgment as to each

24   individual case.

25         MS. COMBS:  I understand your point, your Honor.

1   What we're talking about is one legal issue that has already

2   been resolved by the Seventh Circuit.  The only question that

3   in order to present it, we feel we should at least make

4   assertions on using an affidavit:  The client received the

5   disclosures, the client had a residential mortgage; and,

6   therefore, we're entitled to, you know, summary judgment in

7   our favor.

8          That then raises -- we have attached factual

9   questions, but I don't -- I don't -- think they'll be

10  disputed.  That is how we were proposing to go ahead.

11         I don't see how you could decide the legal issue

12  without having the factual underpinning for it, and that's all

13  we're talking about.

14         MR. LeSAGE:  Your Honor, just to add, I'm not

15  confused about your Court's order of December 12.  I read it

16  this morning.  It addresses these two summary judgments which

17  they're referring to right now.  And you made a thorough

18  analysis.  And what they're trying to do, I think, is re-argue

19  your rulings.  I think your rulings are clear on the December

20  12th order.

21         MS. GOODWIN:  I think our question is:  What do we

22  submit -- you asked us to have people join our motion.  What

23  do you want us to submit on behalf of those other people?

24  Because we've already submitted what we submitted.  Do you

25  want all those other people to have a statement of material

1    facts or an affidavit or not, is our question.

2            THE COURT:  If all the people that you represent

3    participate in a joint motion and the facts are not disputed

4    or you anticipate that Ameriquest is going to agree to those

5    facts, then I do not have a fact situation before me.  I am

6    not dealing with individual cases.  I am dealing with a global

7    issue, and I am perfectly happy to do that.

8            MS. COMBS:  Okay.  All right.

9            And, then, finally, with respect to discovery, it's

10   not stayed with regard to the individual opt-out actions.  We

11   have been doing some limited discovery just to establish

12   ownership information so we can amend the complaint so we've

13   got the parties before you.  And, then, title company

14   information.  We're just trying to get the documents from the

15   title company because all of these are --

16           THE COURT:  Yes, other than that limited --

17           MS. COMBS:  That's all we're doing.

18           THE COURT:  -- discovery.

19           MS. COMBS:  That's all we're doing.

20           THE COURT:  Again, I think as long as we are working

21   on a process that has a good chance of resolving this case, we

22   should stay any other motions other than the ones we have

23   talked about and any other discovery other than the

24   identity-type discovery you are talking about.

25           MR. LeSAGE:  We agree, your Honor.  We'll submit a

1   stipulation in that regard that would accommodate everyone's

2   concerns from all sides of the opt-out.

3            THE COURT:  Fine.

4            MS. COMBS:  Okay.  Thank you very much, your Honor.

5            MR. LeSAGE:  Thank you, your Honor.

6            THE COURT:  I think that concludes our agenda.

7            MR. LeSAGE:  I think it does, your Honor.

8            THE COURT:  Thank you very much.

9            And, again, I appreciate you all coming.  And I

10  cannot guarantee good weather in February, but hopefully we

11  will have some good news that will make up for any kind of

12  weather we have.

13           MR. VERGES:  Your Honor, Keith Verges here, liaison

14  counsel for the third-party defendants.  We haven't said

15  anything so far in an effort to cooperate with everybody, but

16  there are a couple of issues that we'd like to raise vis-a-vis

17  both mediation and responsive pleadings, as the Court

18  requested.  And one of them relates to the proposed further

19  amendment of the third-party complaint.

20           I understand from Mr. LeSage's submission that they

21  plan to try and cure their negligence allegations and

22  re-allege negligence and maybe add additional claims.  We've

23  met extensively with the third-party defendants' counsel, and

24  one area in which we are extremely hampered in both responsive

25  pleadings and in bringing any further dispositive motions --

1   namely, global motions to dismiss, that might affect the

2   brokers, closers, underwriters or everyone -- is the operative

3   contract documents.

4          We understand that the Court has ruled that the

5   allegation in the confines of the difficulties of doing a

6   consolidated complaint relating to obligations on Notices of

7   Right to Cancel passed muster after our first round of motions

8   to dismiss.  But for a next round of motions to dismiss and,

9   frankly, for mediation, the third-party defendants believe

10  that it is imperative that they know exactly what the universe

11  of the contract terms or contract documents are.

12         We think that the contract documents are comprised

13  entirely of three basic documents.  There would be -- and

14  they're not always in every case, but the universe would be --

15  the title insurance policy, itself; any closing instructions;

16  and, any closing protection letter.  We're at least operating

17  under that assumption.

18         We'd prefer not to operate under any assumption and

19  require that the defendants/third-party plaintiffs, when they

20  submit any further amended motion or proposed amended

21  complaint, be required to include some type of schedule that

22  will identify for the third-party defendants what the contract

23  documents are so that we know conclusively what they are.

24         Again, for two reasons.  The mediations are set to

25  have 50 of them in three days.  They're going to go very rapid

```
 1   fire, and it's not going to be helpful or easy for the third-
 2   party defendants if they're presented with those documents for
 3   the first time at mediation.  We think we need to have them in
 4   advance of mediation, and not everybody does.
 5            THE COURT:  Yes.
 6            MR. VERGES:  And, secondly, a number of the third-
 7   party defendants would very much like to bring motions to
 8   dismiss.  And we now have until April to do so; but, without
 9   those contract documents, we can't bring a 12(b)(6) motion
10   challenging whether or not we have obligations under the
11   contracts.  And we think that would be important for resolving
12   global issues and mediation.
13            THE COURT:  Well, you have two issues you are talking
14   about.  One is limited discovery, and the other is the motions
15   to dismiss.
16            Do you want to comment on that?
17            MR. LeSAGE:  Yes, your Honor.
18            Nothing that I've said so far would restrict the
19   limited discovery.  I think what we talked about, in
20   connection with the discovery aspect, is postponing the
21   drop-dead deadline date, such as disclosure of expert
22   witnesses -- which I would propose a stipulation which I'll
23   share with Mr. Verges and the plaintiffs' counsel and come up
24   with a solution that works for them.  Nothing in the interim
25   will preclude that.
```

1          We've been offering --

2          THE COURT:  You will give them all the documents they

3    need well before the mediation date?

4          MR. LeSAGE:  Absolutely.  Because without that, I

5    agree --

6          THE COURT:  Okay.

7          MR. LeSAGE:  -- that there's little chance.

8          And the mediation is a matrix.  Our matrix is a

9    suggested matrix which the third-party defendants have not yet

10   had an opportunity to comment on.  They are going to comment

11   on that -- that is, to restructure whatever order it is -- as

12   well as the third-party opt-out plaintiffs are going to do the

13   same.

14         So, we're in the process of picking the order, which,

15   I think, will solve a lot of these problems, as well.

16         THE COURT:  Okay.

17         MR. VERGES:  Yeah.  This is Keith Verges, again.

18         We're cooperating with Mr. LeSage, and we'll work on

19   the details of exactly how -- the structure of the mediation.

20         But to put a finer point on it -- at least to seek

21   clarification from the Court -- as we view it, the contract

22   documents, there are two approaches to take and we would

23   prefer one of the two.  One approach is that the third-party

24   plaintiffs are required to include in their schedule an

25   identification of what the contracts are.  That would enable

1    us, in the confines of a Rule 12(b)(6) motion, as opposed to

2    waiting for some period of discovery to occur and bring a Rule

3    56 motion, to present those in our motions to dismiss.  And we

4    really think that they should be obligated to do at least

5    that.

6            THE COURT:  You are talking about in the event you do

7    not settle the case?

8            MR. VERGES:  In the event that we don't settle the

9    case.

10           THE COURT:  In the event that you do not settle the

11   case, let us worry about it at that time.  All right?

12           And, again, the motions that I am going to hear are

13   not going to be 150 individual motions to dismiss.  It is

14   going to be a global motion to dismiss.  Okay?

15           MR. VERGES:  Correct, your Honor.  And that's what we

16   want to bring.  We just want to make sure that we don't go

17   outside the pleading, which we're concerned we'd have to if

18   they don't identify the contracts within the pleading.

19           THE COURT:  All right.

20           Why do you not -- as I said, there are two parts to

21   this, and I think we have resolved the discovery part.  You

22   will get all the materials that you need prior to the

23   mediation session.

24           So, let us see how the mediation session goes.  And,

25   then, if there is any need for you to file a global 12(b)(6)

1    motion, we will set up a schedule when we meet, again.  All

2    right?

3            MS. GOODWIN:  We did want to just clarify as far as

4    getting discovery we need for the mediation, Bernie mentioned

5    us staying discovery.  The opt-out plaintiffs also have some

6    limited discovery we may need, like payment histories someone

7    brought up to me.  And I wanted to just clarify that he will

8    produce that, that --

9            THE COURT:  Have you ever asked him before?

10           MS. GOODWIN:  I just want to Bernie to confirm.  We

11   said we would agree to the stay --

12           THE COURT:  I am always bemused that lawyers who deal

13   with each other on a regular basis for the first time before

14   the Court are asking questions you really should have asked a

15   long time ago.  I mean, if there is a problem of him not being

16   forthcoming and giving you the material you need, by all means

17   I will address it.

18           MR. HARRIS:  Your Honor --

19           THE COURT:  You never even asked him.

20           MR. HARRIS:  Your Honor, we've asked for it.  He's

21   given it to us.  We just want to make sure that the limited

22   stay didn't preclude something that we had already agreed he

23   was producing to us and has been in good faith.

24           THE COURT:  It does not.

25           MR. HARRIS:  Great.

 1              THE COURT:  It does not.

 2              MR. HARRIS:  Thank you.

 3              MS. GOODWIN:  And we also wanted to clarify will the

 4    January 26th status also address the opt-out plaintiffs -- or

 5    the February 26th?

 6              THE COURT:  February 26th.

 7              MS. GOODWIN:  We're hoping that it would, to keep

 8    some pressure --

 9              THE COURT:  Sure, sure.

10              MS. GOODWIN:  -- on this.

11              THE COURT:  Absolutely.

12              MS. GOODWIN:  Thank you.

13              THE COURT:  Everybody can come.

14              (Laughter.)

15              THE COURT:  You all come.

16              MS. GOODWIN:  Okay.

17              THE COURT:  Thank you.

18              MR. LeSAGE:  Thank you, your Honor.

19              MS. GOODWIN:  Thank you, your Honor.

20              MR. HARRIS:  Thank you, your Honor.

21              THE COURT:  Thank you very much.

22                        *    *    *    *    *

23    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.
24

25    /s/ Joseph Rickhoff                    January 13, 2009
      Official Court Reporter