# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |

## AMERIQUEST MORTGAGE COMPANY'S OPPOSITION AND OBJECTION TO MOTION TO DEEM AN ALASKA STATE COURT ACTION AS NOT PART OF THE MULTIDISTRICT LITIGATION, OR, TO ALLOW LATE FILED NOTICE TO OPT OUT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  RELEVANT FACTUAL BACKGROUND ...................................................... 2

III.  ARGUMENT ...................................................................................................... 6

   A.  Ellis and His Attorney Do Not Explain Why His More than Sixth-Month Delay in Seeking An Extension of Time to Opt Out is Due to 'Excusable Neglect.' ...................... 6

      1.  Ellis's Motion for Extension Does Not Meet Federal Civil Rule 7(b)(1) Standards ...... 6

      2.  Neither Ellis nor his Attorney Demonstrate That The Delay Was Caused by Excusable Neglect ............................................................................................. 7

   B.  The Settlement Notice Sent to Ellis Satisfied the Requirements of Due Process ............. 10

   C.  Ellis Is a Member of the TILA Rescission Class ............................................................. 14

   D.  Ellis's Arguments Regarding Alaska Discovery Rules Are Irrelevant ............................ 15

   E.  Ameriquest Did Not Violate MDL Rules ........................................................................ 17

IV.  CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. City of Chicago,*
  828 F. Supp. 543 (N.D. Ill. 1993) ............................................................... 6

*Beaufort Concrete Co. v. Atlantic States Constr. Co.,*
  352 F.2d 460 (5th Cir. 1965) ...................................................................... 7

*Boggess v. Hogan,*
  410 F.Supp. 433 (N.D. Ill. 1975) ............................................................... 10

*Brannon v. Household Intern. Inc.,*
  236 Fed. Appx. 285 (9th Cir. 2007) ........................................................... 9

*Burns v. Elrod,*
  757 F.2d 151 (7th Cir. 1985) ...................................................................... 11

*Cornelius v. La Croix,*
  631 F. Supp. 610 (E.D. Wis. 1986) ......................................................... 8, 9

*Crum v. Vincent,*
  493 F.3d 988 (8th Cir. 2007) ...................................................................... 13

*Dusenbery v. United States,*
  534 U.S. 161 (2002) ............................................................................ 11, 13

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156; 40 L.Ed.2d 732, 94 S.Ct. 2140 (1974) .................................. 11

*Fontana v. Elrod,*
  826 F.2d 729, (7th Cir. 1987) ............................................................... 11, 12

*Grilli v. Metropolitan Life Ins. Co., Inc.,*
  78 F.3d 1533 (11th Cir. 1996) .............................................................. 8, 9

*Hallman v. Pa. Life Ins. Co.,*
  536 F. Supp. 745 (N.D. Ala. 1982) ............................................................. 12

*In re Adelphia Communications Corp. Securities & Derivatives Litigation,*
  271 Fed. Appx. 41 (2d Cir. 2008) ............................................................... 8

*In re System Software Associates, Inc. Securities Litigation,*
  2000 U.S. Dist LEXIS 3071 (E.D. Ill. March 8, 2000) .................................. 10

*In re Viatron Computer Sys. Corp. Litig.,*
  614 F.2d 11 (1st Cir. 1980) ......................................................................... 12

*In re VMS Securities Litigation,*
  145 F.R.D. 458 (N.D. Ill. 1992) .................................................................. 6

## TABLE OF AUTHORITIES (continued)

Page(s)

*Jones v. Flowers,*
    547 U.S. 220 (2006).................................................................................. 11, 13

*Jones v. Union Pacific R. Co.,*
    302 F.3d 735 (7th Cir. 2002) ............................................................................. 7

*Key v. Gillette Co.,*
    90 F.R.D. 606 (D. Mass.1981)........................................................................ 12

*Lewis v. City of St. Louis,*
    607 F. Supp. 614 (E.D. Mo. 1985) ................................................................ 13

*Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago,*
    120 F.R.D. 51 (N.D. Ill. 1988)..................................................................... 7, 8

*Mennonite Bd. Of Missions v. Adams,*
    462 U.S. 791 (1983).................................................................................. 11, 13

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950).................................................................................. 11, 13

*Powell v. Starwalt,*
    866 F.2d 964 (7th Cir. 1989) ........................................................................ 8, 9

*Reppert v. Marvin Lumber and Cedar Co., Inc.,*
    359 F.3d 53 (1st Cir. 2004) ........................................................................... 12

*Sere v. Bd. of Tr. of the Univ. of Ill.,*
    852 F.2d 285 (7th Cir.1988) ............................................................................ 7

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir.1994) ............................................................................ 9

*Tulsa Professional Collection Services, Inc. v. Pope,*
    485 U.S. 478 (1988).................................................................................. 11, 13

*Weigner v. City of New York,*
    852 F.2d 646 (2d Cir. 1988) .......................................................................... 12

*Weinstein v. Albright,*
    261 F.3d 127 (2d Cir. 2001) .......................................................................... 12

**Statutes**

Federal Rules of Civil Procedure 6(b) ...................................................................... 7
Federal Rule of Civil Procedure23(b)(1) ............................................................... 11
Federal Rules of  Civil Procedure 6(b)(2)................................................................. 7
Federal Civil Rule 7(b)(1)........................................................................................ 6
Federal Rule of Civil Procedure 23 ......................................................................... 6
Federal Rule of Civil Procedure 23(b)(3) .............................................................. 11
Federal Rule of Civil Procedure 6(b)(1)(B)........................................................... 6, 7

## TABLE OF AUTHORITIES (continued)

**Page(s)**

**Other Authorities**

4B Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1165, at 532 (3d ed. 2002) ................................................... 6

Ameriquest Mortgage Company ("Ameriquest") hereby files its Opposition to Donald and Kewanna Ellis's Motion to Deem an Alaska State Court Action As Not Part of the Multidistrict Litigation, or, to Allow Late-Filed Notice to Opt Out (the "Motion"). At the outset, Ameriquest objects to the Motion and states that it should be denied on procedural grounds, as the Motion refers to Exhibits A through D (which allegedly contain supporting affidavits), none of which are attached to, or filed with the Motion. Ameriquest's substantive opposition to the Motion follows.

## I.      INTRODUCTION

Donald Ellis ("Ellis") is a member of the class of mortgage borrowers that settled their disputes with Ameriquest and certain affiliates in Multidistrict Litigation No. 1715 (the "MDL").[1] Ellis received personally addressed mailed notice of the settlement, in addition to this Court's approved publication notice of the settlement, and was notified that one of the terms of the settlement would be the release of all claims relating to the mortgage secured by Ellis' broker from Argent Mortgage Company, LLC ("Argent"), one of the Ameriquest affiliates involved in the MDL. Ellis, like all other class members, was provided timely notice and the explicit opportunity to opt out of the class, but did not. On June 29, 2010, this Court approved the Consolidated Class Settlement (the "Settlement"), found that mailed and published notice to the class members were adequate, and that the Settlement was otherwise fair, adequate, reasonable, and not a product of collusion. [See Final Order and Judgment, Docket #3628] This Court specifically found the Settlement was in the best interest of the parties, including Mr. Ellis. [See Final Order and Judgment, Docket #3628]

Now, without citing a single legal theory or authority, Ellis seeks to opt out of the class long after the deadline has passed and settlement proceeds distributed, or alternatively, for the Court to find that his Alaska-based lawsuit is not "part of the Multidistrict Litigation." Ellis and

---

[1] Although in the Alaskan lawsuit Kewanna Ellis is a Plaintiff, she is not a borrower of Argent (i.e. the loan documents were only signed by Donald Ellis). See Declaration of David T. McGee ¶ 5,. Accordingly, Kewanna Ellis is not a class member and has no basis to bring this Motion.

Ellis' attorney admittedly have known about the MDL for at least six months,[2] but have chosen not to file anything with the MDL Court until now. Among other defects, Ellis has also failed to demonstrate that this more than six month delay is due to excusable neglect, or to provide any other explanation for this delay.

Consequently, Ellis' tardy and post class distribution request to opt out of the MDL Settlement should be denied, and he should be bound by the terms of the Settlement. Allowing Ellis to opt out now would possibly invite multiple similar requests (from class members who, like Ellis, ostensibly are not satisfied with the Settlement payments they received). Moreover, as detailed herein, Ellis is not at all deserving of such relief, as he is not in any way a typical borrower misled by alleged predatory lending practices.

## II.    RELEVANT FACTUAL BACKGROUND

In 2005 Donald Ellis' broker negotiated two loans from Argent[3]—an 80% note and a 20% note—which were used to finance the acquisition of a fully leased out duplex  property located at 521 Bitterroot Circle, Anchorage, Alaska (the "Property").[4]  However, these loans were not typical residential mortgage refinances because the Property is a fully leased out duplex, and Ellis' plan was to buy and "flip" an income generating property.[5]  In order to obtain the two loans from Argent, Ellis or his broker necessarily misled Argent on the mortgage loan application.  Among other atypical terms, Ellis put no money down and arranged for a $45,000 cashback payment that would be used to pay mortgage payments for up to three years.[6]  Ellis

---

[2] McGee Decl. ¶ 3.

[3] Argent was a residential wholesale lender.  This means that Ellis obtained the loans from Argent through the use of a mortgage broker.  The mortgage  broker represents the borrower (in this case, Ellis) in the loan transactions, and searches from among several lenders for the best deal for the borrower.  In a wholesale lending context, the borrower does not have direct contact with the lender.  Rather, the borrower's contact is the mortgage broker who, in turn, deals with the lender.

[4] *See* Complaint in Alaska State Court action ("Alaska Complaint"); Exhibit "1" to Argent's Memorandum Supporting Motion for Summary Judgment; Request for Judicial Notice ("RJN") Exhibit "A".

[5] Deposition of Donald Ellis, attached as Exhibit 5 to McGee Decl., at pp. 33-34, 71.

[6] D. Ellis Depo.at pp. 32-33, attached as Exhibit "5" to McGee Decl..

therefore made no loan payments from his own funds, while continuing to collect monthly rent checks from his two tenants of more than $2,000 per month.[7] After the housing marked crashed, Ellis defaulted on his mortgage and sued Argent instead, without ever making a mortgage payment that was not paid for by either the cashback payment or with rental income. In other words, he never made a single payment out of his own pocket.

On July 1, 2008, Ellis' attorney sent a letter to Argent requesting rescission of the loan based on an alleged violation of the Truth in Lending Act ("TILA").[8]Later that month, Ellis filed a complaint against Argent. seeking rescission of the loan under TILA, and seeking to quiet title to the Property.[9] The Court granted, in part, Argent's motion for summary judgment and dismissed Ellis's claim for rescission under TILA after Ellis did not oppose that part of Argent's motion.[10] Ellis then filed a Second Amended Complaint in June, 2009, alleging a violation of the Alaska Unfair Trade Practices Act, negligence, vicarious liability for and negligent supervision of Alaska State Mortgage Company, violation of the Equal Credit Opportunity Act, quiet title, and rescission.[11] Each of these claims relates to Ellis' borrowing of two loans from Argent.

Sometime in January 2010, Ellis received via first class mail a personally addressed notice from the United States District Court for the Northern District of Illinois informing him that he was a member of a class that had reached a class action Settlement.[12] The notice identified Argent as one of the settling defendants, and explained, among other terms approved by this Court, the nature of the pending action:

---

[7] D. Ellis Depo. at pp. 13-14.

[8] McGee Decl. ¶ 4.

[9] Alaska Complaint, Exhibit "1"; Exhibit "A" to RJN. .

[10] See Alaska Court Order attached as Exhibit "2" to RJN Exhibit "A"

[11] See Alaska Second Amended Complaint attached as Exhibit "3" to RJN Exhibit "A"

[12] See Affidavit of Amy Lake, Docket #3495, para. 5; See also RJN Exhibit "A": Class Action Settlement Notice, Attached to Affidavit of Scott Fenwick, Exhibit 4.

> The Class Action lawsuit was brought against Ameriquest for alleged improper mortgage lending and mortgage loan servicing activities in violation of numerous federal and state laws, including the Truth in Lending Act ("TILA"), breach of contract, unjust enrichment, and state Consumer Protection and Deceptive Trade Practices Acts. Ameriquest denies all allegations made against it, denies that its lending or loan servicing practices violated any law, and denies that it financially harmed any of its customers.[13]

The notice presented the terms of the Settlement, including that class members would receive Settlement payments and foreclosure prevention services, and that in return class members would "release all known or unknown claims against Ameriquest and related parties."[14] The notice informed class members that they could opt out of the Settlement if they so chose, but if they did not, they would be bound by the terms of the Settlement.[15] Class members were notified by nationwide published notice and were also directed to a website where they could receive access to complete and detailed information on the Settlement, which states that the Settlement releases:

> all claims, causes of actions, or liabilities of which any and all Releasing Parties may or did have during the Class Period, including without limitation, in contract, in tort (including but not limited to personal injury, and emotional distress and RICO claims), statute, regulation, or common law, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as part of a class of claims or claims on behalf of the general public, whether known or unknown, suspected or unsuspected, threatened, asserted or unasserted, actual or contingent, liquidated or unliquidated, that relate to or arise from the matters that were alleged or asserted, or could have been alleged or asserted.[16]

Class members were also directed to a toll free telephone number with an interactive voice response containing an approved scripted settlement summary.[17]Class members were also

---

[13] *Id.* at 2.

[14] *Id.* at 4-6.

[15] *Id.* at 1, 6-7.

[16] See Affidavit of Amy Lake, Docket #3495, paras. 5-8; *See also* RJN Exhibit "A": Settlement Agreement, Attached to Affidavit of Scott Fenwick, Exhibit 4 at p. 15.

[17] Affidavit of Amy Lake, Docket #3495, para. 8.

provided a chance to appear and be heard at a fairness hearing.[18]

This Court approved the Settlement notice, and caused the Settlement notice to be sent to all class members.[19] The notice was sent in accordance with the Court's directions, and was sent to all class members, including Ellis, via first class mail to their last known address.[20] A notice was sent to Ellis at Ellis' home address: 521 Bitterroot in Anchorage, Alaska.[21] Notice of the Settlement was also published in *Parade Magazine* on January 10, 2010, and in *USA Today* on January 11, 2010.[22] Ellis did not opt out.[23] On June 29, 2010, the Settlement was approved by the Court.[24]

Shortly after the Settlement was finalized, on August 2, 2010, Argent notified Ellis through Ellis' attorney that it intended to enforce the terms of the Settlement as affirmative defenses to Ellis' claims.[25] Argent then moved the Alaska state court for summary judgment on the basis that Ellis' claims were precluded by the class action under theories of res judicata and release. Ellis opposed. Ellis claimed, *inter alia*, that he had not received the Settlement notice and that he was not a proper member of the settling class. At oral argument, the Alaska court ruled that Ellis had been adequately notified pursuant to the U.S. District Court's directions.[26] But before the court could provide a written decision on the remainder of Argent's motion, Ellis requested—and received—a continuance to allow Ellis to seek relief from the U.S. District Court. The Alaska court also allowed Ellis to amend his complaint once again. Ellis's current

---

[18] Exhibit "A" to RJN, Affidavit of Scott Fenwick, Exhibit 4, Settlement Notice at p. 7

[19] *Id.* at 8. *See also* Order of Preliminary Approval of Class Action Settlement, Docket #3255.

[20] Exhibit "A" to RJN: Fenwick Affidavit ¶ 5; Affidavit of Amy Lake (Docket #3495), para. 5.

[21] *Id.*

[22] Exhibit "A" to RJN: Fenwick Affidavit ¶ 4; Affidavit of Amy Lake (Docket #3495) para. 6. .

[23] Exhibit "A" to RJN: Fenwick Affidavit ¶ 6, Exhibit 4. See also Exh. A to Final Court Order and Judgment, (Docket #3628)

[24] Final Order and Judgment (Docket #3628).

[25] McGee Decl. ¶ 3; Supplemental Rule 26 Disclosures, Exhibit "1".

[26] McGee Decl. ¶ 6; Log Notes of Alaska Superior Court hearings on December 21, 2010 (at p. 4), and December 29, 2010 (at p. 2).

complaint contains claims against Alaska State Mortgage Company (his mortgage broker), Jason

Wooten (his loan officer), Citi Residential Lending, CR Title Services, Inc., Greenwich Capitol

Financial Products, Inc., Deutsche Bank National Trust Company, Litton Loan Servicing,

Soundview Home Loan Trust, Real Time Resolutions, Inc., and several other individuals.  Ellis

is also known to have already settled claims in this case against Alyeska Title Guaranty Agency

(his title insurer), and Vista Real Estate, Inc. (his realtor).[27]

The present motion follows.

## III.  ARGUMENT

### A.  Ellis and His Attorney Do Not Explain Why His More than Sixth-Month Delay in Seeking An Extension of Time to Opt Out is Due to 'Excusable Neglect.'

#### 1.  Ellis's Motion for Extension Does Not Meet Federal Civil Rule 7(b)(1) Standards

Pursuant to Federal Rule of Civil Procedure 23, "a plaintiff belonging to a class must opt

out of a class action; otherwise, he or she will be bound by the judgment in the case."[28]  Here,

even though Ellis did not opt out pursuant to Rule 23, Ellis seeks relief from this Court without

citing any civil rule or supporting legal authority, or stating with particularity the grounds for

seeking the order.

Ellis' request "to allow late filed notice to opt out" is really a motion under Federal Rule

of Civil Procedure 6(b)(1)(B) for an extension of time to file an opt-out notice after the February

22, 2010, deadline, the standard for which is "excusable neglect."  Such motions, however,

"should be made upon formal application for an order in compliance with the provisions of Rule

7(b)(1) relating to motions."[29]  Because Rule 7(b)(1) "requires that the application state with

---

[27]  Exhibit "A" to RJN:  Third Amended Complaint.

[28]  *Allen v. City of Chicago*, 828 F. Supp. 543, 557 (N.D. Ill. 1993)

[29]  4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1165, at 532 (3d ed. 2002) (citing *In re VMS Securities Litigation*, 145 F.R.D. 458, 462-63 (N.D. Ill. 1992) (*affirmed in part, vacated and remanded in part on other grounds*, 21 F.3d 139 (7th Cir. 1994)).

particularity the grounds therefor, the movant must allege the facts constituting excusable neglect and the mere assertion of excusable neglect unsupported by facts has been held to be insufficient."[30] Ellis does not even attempt a showing of excusable neglect. For that reason alone, Ellis has waived the right to argue that the Motion is supported by excusable neglect.[31]

### 2.    Neither Ellis nor his Attorney Demonstrate That The Delay Was Caused by Excusable Neglect.

Even if Ellis' arguments are not waived and the Motion receives consideration, the applicable law is still against Ellis. "The standard for granting an enlargement of time after the expiration of the specified period is 'excusable neglect.' A finding of excusable neglect under [Rule 6(b)] requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period."[32] Ellis fails to cite this standard, and has made no showing of excusable neglect.

Indeed, the facts admitted by Ellis demonstrate *inexcusable* neglect on Ellis' part. Even if one accepts that Ellis did not receive the initial Settlement notice in January 2010, Ellis and his attorney *did* receive actual notice on August 2, 2010, when Argent supplemented its discovery responses.[33] Ellis offers no good cause for why he waited an additional six months—until February 4, 2011—before petitioning this Court for leave to opt out after the deadline. Ellis's motion should have been submitted in August, when Ellis contends he and his counsel learned about the MDL settlement. But six months passed since Ellis admits he obtained actual knowledge of the MDL Settlement, and yet there is no explanation for Ellis' dilatory pace and six months of inactivity. Perhaps Ellis made a tactical decision to remain in Alaska state court,

---

[30] *Id.* (citing *Beaufort Concrete Co. v. Atlantic States Constr. Co.*, 352 F.2d 460, 462 (5th Cir. 1965)).

[31] *See Jones v. Union Pacific R. Co.*, 302 F.3d 735, 741 (7th Cir. 2002) (citing *Sere v. Bd. of Tr. of the Univ. of Ill.*, 852 F.2d 285, 287 (7th Cir.1988) ("We consistently and evenhandedly have applied the waiver doctrine when appellants have failed to raise an issue in their opening brief.")).

[32] *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 120 F.R.D. 51, 52 (N.D. Ill. 1988) (citing then-Fed. R. Civ. P. 6(b)(2), now 6(b)(1)(B)).

[33] McGee Decl. ¶ 3.

but tactical decisions are not good cause.[34]   Perhaps Ellis was unfamiliar with the federal rules, but this too is not good cause.[35]   It is also insufficient to state that the six month delay was an accident: "inadvertence will not support a finding of excusable neglect."[36]   Ellis and his attorney knew about the MDL, but simply did nothing about it.

Courts have been especially hesitant to find excusable neglect in cases similar to Ellis', where the movant has waited such a lengthy time before filing a request for extension of time.  A good example comes from the Second Circuit Court of Appeals, where a party discovered the existence of the class action settlement after the opt-out deadline had passed, but then waited an additional month to file its request for extension of time.[37]   The court rejected the request because the one-month delay after receiving actual notice was not justified by excusable neglect.[38]   The same facts are present here, except Ellis waited *six* months to file his request after he admits receiving actual knowledge.  Compare these findings to a case from this Court, where a petitioner was allowed to opt out, but only because the petitioner learned about the class action the day before it was certified, and then promptly filed a request for extension of time just 10 days later.[39]   The Court found 10 days to be reasonable; six months is not.  Ellis' additional six-month delay was inexcusable, and Ellis has offered no excuse.

In another example, the Ninth Circuit Court of Appeals rejected an application to extend the opt-out period when the party's excuse for a nine-month delay after learning of the class

---

[34]   *See Grilli v. Metropolitan Life Ins. Co., Inc.*, 78 F.3d 1533, 1538 (11th Cir. 1996).

[35]   *See Powell v. Starwalt*, 866 F.2d 964, 965 (7th Cir. 1989).

[36]   *Cornelius v. La Croix*, 631 F. Supp. 610, 622 (E.D. Wis. 1986) (*affirmed in part, reversed in part on other grounds*, 838 F.2d 207 (7th Cir. 1988)).

[37]   *In re Adelphia Communications Corp. Securities & Derivatives Litigation*, 271 Fed. Appx. 41, 44 (2d Cir. 2008).

[38]   *Id.* ("Elkmont did not demonstrate excusable neglect because, despite the fact it was aware of the settlement only one day after the opt out deadline, it still waited a full month to file its motion for an extension of time.").

[39]   *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 120 F.R.D. 51, 52 (N.D. Ill. 1988).

action was the party's attempt to find local counsel.[40] The Eleventh Circuit Court rejected a requested extension when the failure to act earlier was the result of a tactical decision, and therefore not excusable neglect.[41] As stated above, courts have also rejected applications for extensions of time when long delays were caused by tactical decisions,[42] unfamiliarity with the federal rules,[43] or inadvertence by the movant's counsel.[44] Ellis, again, has not even made an attempt to argue that the delay in filing this request was caused by excusable neglect. But even if Ellis did, the six-month delay from the time Ellis received actual notice of the MDL is inexcusable, and the request to opt-out should be denied.

   To allow an extension of time for Ellis would cause substantial prejudice to Ameriquest and the other settling defendants. The parties to the MDL Settlement have invested significant time and resources to resolve claims like the one brought by Ellis with the expectation that with the resolution would come finality. The Settlement has been finalized, and the Settlement checks have been sent. Ellis, as an identified member of the Settlement class, should not be allowed to circumvent the class action settlement process just because he is dissatisfied with the amount of that Settlement, or thinks that the Alaska state court will award him more. To allow Ellis to opt out now would possibly invite multiple similar requests from people who also are not satisfied with the Settlement payments they received, which, in turn, could effectively dismantle the class Settlement the parties reached and this Court approved.

---

[40] *Brannon v. Household Intern. Inc.*, 236 Fed. Appx. 285, 287 (9th Cir. 2007) (citing *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir.1994) (holding that district court should consider how quickly the belated opt out request was made once notice was received)).

[41] *Grilli v. Metropolitan Life Ins. Co., Inc.*, 78 F.3d 1533, 1538 (11th Cir. 1996).

[42] *See Grilli v. Metropolitan Life Ins. Co., Inc.*, 78 F.3d 1533, 1538 (11th Cir. 1996).

[43] *See Powell v. Starwalt*, 866 F.2d 964, 965 (7th Cir. 1989).

[44] *Cornelius v. La Croix*, 631 F. Supp. 610, 622 (E.D. Wis. 1986) (*affirmed in part, reversed in part on other grounds*, 838 F.2d 207 (7th Cir. 1988)).

**B.      The Settlement Notice Sent to Ellis Satisfied the Requirements of Due Process.**

Adequate notice was provided to Ellis when the U.S. District Court sent the Settlement Notice to Ellis's home address by first class mail.[45]  Notice of the Settlement was also published in *Parade Magazine* on January 10, 2010, and in *USA Today* on January 11, 2010.[46]  In his Motion, Ellis argues that he did not receive notice of the Settlement.  (Motion at 4-5.)  Ellis also concedes, however, that the "law is against them" on this topic, and indeed, courts have unanimously rejected this excuse.

Notice of the borrower class Settlement was sent to all members of the settling class, including Ellis, via first class mail to their last known address.   A notice was sent to Ellis at his home address: 521 Bitterroot in Anchorage, Alaska, in January 2010.  This method of notification satisfies the requirements of the Court approved Settlement agreement.

In a class action settlement, due process requires that absent plaintiffs receive notice as well as an opportunity to be heard . . . 'The notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . Further, due process requires that an absent plaintiff be provided with the opportunity to opt out of the proposed class."[47]

However actual notice is not required.  Courts in the Seventh Circuit agree that notice of class action settlement by first class mail is constitutionally sufficient.  As the Northern District of Illinois states in *Boggess v. Hogan*,[48]

---

[45]  Affidavit of Amy Lake, Docket #3495, para. 5; Order of Preliminary Approval of Class Action Settlement, Docket #3255; Exhibit "A" to RJN::  Settlement Notice; Fenwick Affidavit.

[46]  Exhibit "A" to RJN:  Fenwick Affidavit ¶ 4; Affidavit of Amy Lake, Docket #3495, para. 6. .

[47]  *In re System Software Associates, Inc. Securities Litigation*, 2000 U.S. Dist LEXIS 3071 (E.D. Ill. March 8, 2000) [citations omitted].

[48]  *Boggess v. Hogan*, 410 F.Supp. 433, 442 (N.D. Ill. 1975):

"The Federal Rules of Civil Procedure do not require that notices of a proposed settlement be published. Rather, notices of compromises are to be furnished class members and shareholders 'in such a manner as the court directs . . . The United States Supreme Court has stated that individualized notice by mail to the last known address best satisfies the requirements of notice in class action contests."[49]

For the borrower class Settlement, the class was certified pursuant to Rule 23(b)(1) and 23(b)(3) of the Federal Rules of Civil Procedure. This Court found that notice by mail to the class members' last known address was adequate.[50] No more is required. Ellis cannot now be heard to complain that he did not actually receive the notice.

The case of *Fontana v. Elrod*[51] is instructive. In *Fontana*, former employees of the Cook County Sheriff's Office, were members of the class certified in a case entitled: *Burns v. Elrod*. Their petition to file a late claim in the class settlement in *Burns v. Elrod* was denied on the ground that the notice of the class of the settlement had been adequate.[52] The employees commenced a new class action on behalf of former employees of the Sheriff's Office who were not included in or did not receive notice of the settlement in *Burns*. The district court dismissed the complaint, and the Seventh Circuit affirmed.

In deciding *Fontana*, the Seventh Circuit noted that:

"While the notice must be adequate, it is not necessary that each member of the class actually receive that notice. 'An absent class member will be bound by any judgment that is entered if appropriate notice is given, even though that individual never actually received

---

[49] *Id. Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-74; 40 L.Ed.2d 732, 94 S.Ct. 2140 (1974)." *See also, Jones v. Flowers,* 547 U.S. 220, 226 (2006) (citing *Dusenbery v. United States*, 534 U.S. 161, 169 (2002); *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490 (1988); *Mennonite Bd. Of Missions v. Adams*, 462 U.S. 791, 798 (1983); *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 318-19 (1950).*

[50] Final Order and Judgment (Docket #3628)

[51] *Fontana v. Elrod*, 826 F.2d 729, (7th Cir. 1987)

[52] *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).

notice." [53]

The lower court in the *Fontana* case stated the principle and the rationale for it succinctly:

". . . due process, in a class action, does not require actual notice. Otherwise nothing could ever come to an end. Plaintiffs could combine the tolling of the class action and the lack of actual notice to extend the time for bringing a claim forever." [54]

Other Circuits agree that notice of class action settlement by first class mail and by publication is Constitutionally sufficient. The Second Circuit Court of Appeals states:
"proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each affected person actually received notice.

Furthermore, under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their rights are in jeopardy."[55]

The First Circuit says:

"Individual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice," but "it is the court's duty to ensure that the notice ordered is reasonably calculated to reach the absent class members."[56]

---

[53] *Fontana*, 826 F.2d at 732.

[54] *Fontana v. Elrod*, 1986 U.S. Dist. LEXIS 26262 at * 8 (N.D. Ill. April 25, 1986).

[55] *Weinstein v. Albright*, 261 F.3d 127, 135 n.7 (2d Cir. 2001) (quoting *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)) (internal quotes, citations, brackets, and ellipses removed).

[56] *Reppert v. Marvin Lumber and Cedar Co., Inc.*, 359 F.3d 53, 56 (1st Cir. 2004) (citing *Hallman v. Pa. Life Ins. Co.*, 536 F. Supp. 745, 748-49 (N.D. Ala. 1982); *In re Viatron Computer Sys. Corp. Litig.*, 614 F.2d 11, 13 (1st Cir. 1980); *Key v. Gillette Co.*, 90 F.R.D. 606, 612 (D. Mass.1981).

The Eighth Circuit holds that due process "does not require a showing by the State that an interested party received actual notice, and notice by mail is ordinarily presumed to be constitutionally sufficient."[57]  In examining due process requirements, the United States Supreme Court has "ample precedent condoning notice by mail,"[58] and it has stated that "our cases have never required actual notice."[59]

The United States Supreme Court has rejected the premise that the federal court must make the "heroic efforts" required "to assure that a particular piece of mail reaches a particular individual."[60]  Instead the Court has held that the relevant determination is whether "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[61]

Ellis asks the Court to reject decades of United States Supreme Court, Seventh Circuit and Federal Circuit law without providing any citations showing that such a rejection would be supported by this Court.  The fact that the notice was sent to Ellis is sufficient to satisfy the notice requirement, and as a matter of law the Court should find that Ellis was notified.

This rule makes sense because the alternative would lead to absurd results, preventing class action settlements from ever achieving finality.  A class member who is upset with the final settlement would only have to say that he never received the notice, and the settling parties would be right back where they started, relitigating the same issues that had been resolved in the settlement.  Class action settlements would never occur if the parties had to worry

---

[57] *Crum v. Vincent*, 493 F.3d 988, 993 (8th Cir. 2007).  *See also Lewis v. City of St. Louis*, 607 F. Supp. 614, 617 (E.D. Mo. 1985) ("Personal service constitutes actual notice and notice by mail is designed to ensure actual notice and thereby satisfies minimal requirements of due process.").

[58] *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (citing *Dusenbery v. United States*, 534 U.S. 161, 169 (2002); *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490 (1988); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318-19 (1950).

[59] *Dusenbery v. United States*, 534 U.S. 161, 171 (2002).

[60] *Id.* at 170.

[61] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

about repeatedly fighting battles against plaintiffs who merely claim the mail never arrived.

To require evidence of receipt of the notice, as Ellis suggests, would burden all courts and strip the class action process of all effectiveness. Class actions exist to conserve resources, and allow commonly situated plaintiffs to pursue shared claims together. Defendants are motivated to settle class action lawsuits so they can resolve disputes once and for all. But no class action lawsuit would ever settle if there was no guarantee of finality; there can be no guarantee of finality if individual plaintiffs can skirt the consequences of settlement by simply claiming they did not receive the settlement notice—a claim that could never be verified. Ellis is essentially arguing to short-circuit the entire class action system. The mailing of the notice was reasonably calculated to provide Ellis with actual notice, thereby meeting all legal requirements of settlement notification.[62] He was properly notified, and he has missed the opportunity to opt out. He should not be permitted to opt out now.

### C. Ellis Is a Member of the TILA Rescission Class.

Ellis also argues that he is not a member of any of the settling classes (Motion at 5), but this contention is refuted by the documents provided by Ellis. The TILA Rescission Class "is a nationwide class of borrowers who at any time on or after February 8, 2003, have actually requested rescission in writing of their loans pursuant to applicable provisions of the Truth in Lending Act."[63] Ellis requested rescission of the loans under TILA in a July 1, 2008, letter.[64] This establishes Ellis as s member of the TILA Rescission Class. It is important to note that in identifying the class members of the TILA Rescission Class, the criteria used was whether the borrower sent a written rescission request. The parties did not make an evaluation regarding

---

[62] Ellis argues as an aside that "Knowing that Don Ellis was represented by counsel, Argent should have sent notice to his attorney." (Motion at 5.) Ellis omits that Argent is not the party that sent the settlement notice, but instead it was the U.S. District Court and its agency, Rust Consulting. The notice did not come from Argent, and so it was appropriate—and constitutionally sufficient—to send the notice to Ellis's home address.

[63] RJN Exhibit "A": Exhibit 1 of Fenwick Affidavit.

[64] *See* Plaintiff's documents labeled 000140-142, attached to Affidavit of David McGee at Exhibit 2.

whether the rescission request was meritorious under TILA. Accordingly, the fact that Ellis abandoned these TILA claims earlier in the Alaska case against Argent does not affect Ellis' status in the class.

Further, it is insignificant that Ellis's remaining claims against Argent "are all based on Common Law and Alaska State statutory claims" (Motion at 5). The class is defined as a group of borrowers who attempted by letter to rescind their loan under TILA, and Ellis meets that definition.

The facts indicate that Ellis qualified for the Wholesale Borrower Class as well. The Settlement Notice states that the Wholesale Borrower Class "is a nationwide class of borrowers who paid an amount constituting more than 3% of their funded loan amount in settlement charges to [Argent] or a mortgage broker."[65] The Settlement Agreement further explains the definition of the class.[66] Ellis would qualify for this class because Ellis paid $12,855.67 in settlement charges, which is more than 3% of the loan amount.[67] (3% of $370,000 is $11,100.)

**D.    Ellis's Arguments Regarding Alaska Discovery Rules Are Irrelevant.**

Ellis tries to muddy the landscape by arguing that Argent did not timely raise the affirmative defenses of res judicata and release. (Motion at 3-4.) Ellis's contentions that Argent did not properly supplement its Rule 26 disclosures are irrelevant to the key issues before this Court, which have been discussed above. Disputes over Alaska discovery rules are a matter for Alaska courts to resolve, and they have no bearing on the issue to be resolved by this Court: whether Ellis was properly notified of the MDL Settlement, and whether the law permits him to opt out after the deadline has passed.

That being said, Ellis's accusations that Argent was "dishonorable" are flatly false. The class action Settlement was only approved by the U.S. District Court on June 29, 2010.[68] Until

---

[65]  RJN Exhibit "A":  Exhibit 1 of Fenwick Affidavit.

[66]  RJN Exhibit "A":  Exhibit 2 of Fenwick Affidavit.

[67]  *See* Settlement Statement, lines 103 and 1400, Plaintiff's documents numbered 000001-000002, attached to McGee Decl as Exhibit "3"..

[68]  *See* Court Order, Docket #3628.

then, the defenses of res judicata and release did not exist and were not yet ripe, and therefore could not be pled. Argent notified Ellis of the defenses on August 2, 2010—within a reasonable time from when the defenses became ripe. Ellis was notified more than five weeks before certain discovery deadlines were set to pass, and so has had ample time to react as necessary. Until the defenses were ripe, Argent believed Ellis had been notified of his rights in the MDL via the Settlement notice sent by the U.S. District Court. And even if it is true that Ellis had not received notice before August 2, the further delay in not filing this motion until February 2011 is unexplained and inexcusable.

Ellis further argues that his "Alaska claims are different from those in the MDL class action," and "[n]one of the claims in the MDL have to do with the Alaska State Unfair Trade Practices Act or Alaska State Law" (Motion at 4), but this too is incorrect. As stated above, the MDL Settlement notice explicitly applies to claims like those alleged by Ellis.

> The Class Action lawsuit was brought against Ameriquest for alleged improper mortgage lending and mortgage loan servicing activities in violation of numerous federal **and state laws**, including the Truth in Lending Act ("TILA"), breach of contract, unjust enrichment, and **state Consumer Protection and Deceptive Trade Practices Acts**.[69]

Further, the Settlement agreement states that it releases:

> all claims, causes of actions, or liabilities of which any and all Releasing Parties may or did have during the Class Period, including without limitation, in contract, in **tort** (including but not limited to personal injury, and emotional distress and RICO claims), statute, regulation, or **common law**, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as part of a class of claims or claims on behalf of the general public, whether known or unknown, suspected or unsuspected, threatened, asserted or unasserted, actual or contingent, liquidated or unliquidated, that relate to or arise from the matters that were alleged or asserted, or could have been alleged or asserted.[70]

---

[69] *See* RJN Exhibit "A": Class Action Settlement Notice, Attached to Affidavit of Scott Fenwick, Exhibit 2 (emphasis added).

[70] See RJN Exhibit "A": Settlement Agreement, Attached to Affidavit of Scott Fenwick, Exhibit 4 at p. 15 (emphasis added).

The released claims clearly include causes of action under the Alaska Unfair Trade Practices Act, or common law torts. All of Ellis's claims were released in the MDL Settlement. His arguments to the contrary are simply a red herring, and not supported by the plain language of the Settlement.

### E.    Ameriquest Did Not Violate MDL Rules

Ellis next argues that his case is not properly joined in the MDL (Motion at 3.) This is another red herring, as Ellis cites no case law that supports this position. In fact, the only cases that could be joined in the MDL proceedings were cases taking place in federal courts.

Jurisdictional issues do not prevent the MDL settlement from precluding Ellis's claims, however. The terms of the Settlement clearly apply to all members of the class, regardless of whether their individual state actions were joined in the MDL proceeding. As a member of the class, Ellis has released his claims against Argent and Ameriquest; further, his claims are precluded by the doctrine of res judicata.

### IV.    CONCLUSION

For the foregoing reasons and authorities, Ameriquest respectfully requests that this Court deny the Motion in its entirety.

DATED: February 28, 2011                    Respectfully submitted,

By: /s/ Bernard E. LeSage
*Attorneys for Ameriquest Mortgage Company*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
(213) 891-0700/(213) 896-0400 (fax)

## CERTIFICATE OF SERVICE

I, Bernard E. LeSage, hereby certify that on this 28th day of February 2011, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. I further certify that a true and correct copy of the foregoing document was sent via U.S. Mail to the addressees on the attached Service List. I also certify that a hard copy was served via certified and regular mail to:

Christopher and Bleu Thompson
9828 NW 15th Street
Pembroke Pines, FL 33024


Parties may access this filing through the Court's system.

By: /s/  Bernard E. LeSage

IN RE AMERIQUEST CO. MORTGAGE LENDING PRACTICES LITIGATION
MDL No. 1715
Lead Case No. 05-cv-07097

## SERVICE LIST

Alexander Edward Sklavos
Law Offices of Alexander E. Sklavos, PC
1 Old Country Road
Suite 200
Carle Place, NY 11514

Alexandra van Nes Dolger
Day Berry and Howard LLP
One Canterbury Green
Stamford, CT 06901

Cheryl Talley
1577 Deer Path Lane
Franklin Grove, IL 61031

Cynthia Casteel
705 9th Street, NW
Huntsville, AL 35805

Daniel J Whitaker
113 Daventry Drive
Calera, AL 35040

David J. Tarpley
Legal Aid Society of Middle Tennessee
300 Deaderick Street
Nashville, TN 37201

Estella Byrd
910 Woodall Lane
Huntsville, AL 35816

Gregory Day
6345 Stablewood Way
Lithonia, GA 30058

Jackie Champion
1372 Myrick Road
Elmore, AL 36025

John Cseh
12800 Shaker Boulevard , Suite U12
Cleveland, OH 44120

John J. McDonough
Cozen O'Connor
45 Broadway, Suite 1600
New York, NY 10006

John M. Gambrel
Gambrel & Wilder Law Offices, PLLC
1222 1/2 N. Main St., Suite 2
London, KY 40741

John Robert King
Law Office of John King
3409 N. 10th Street, Suite 100
McAllen, TX 78601

Jonathan Lee Riches
#40948-018
Lexington
P. 0. Box 14500
Lexington, KY 40512

Joseph Abruscato
607 East Barksdale Drive
Mobile, AL 36606

Joseph E. Nealon
The Law Office of Joseph E. Nealon
45 Lyman Street, Suite 28
Westborough, MA 01581

Janice Long
2400 Scarlette Lane, Southeast
Conyers, GA 30013

Lisa Parker
425 Water Street
Prattville, AL 36067

IN RE AMERIQUEST CO. MORTGAGE LENDING PRACTICES LITIGATION
MDL No. 1715
Lead Case No. 05-cv-07097

## SERVICE LIST (cont.)

Michael Swistak
Swistak and Levine, P.C.
304445 Northwest Highway
Farmington, MI 48334-3174

Michael S. Deck
Law Office of John King
3409 N. 10th Street
McAllen, TX 78501

Richard P. Colbert
Day, Berry & Howard
One Canterbury Green
Stamford, CT 06901-2047

Robert W. Smyth , Jr.
Donohue, Brown, Mathewson & Smyth
140 South Dearborn Street
Suite 700
Chicago, IL 60603

David McGee, Esq.
Dorsey & Whitney LLP
1031 West Fourth Avenue, Suite 600
Anchorage, AK 99501

Steven S. Elliott
12 E. Exchange Street
8th Floor
Akron, OH 44310

Walter J. Manning
1260 Greenwich Avenue
Warwick, RI 02886

William Champion
1372 Myrick Road
Elmore, AL 36025

Tim Dooley
Law Office of Tim Dooley
921 West Sixth Avenue, Suite 200
Anchorage, Alaska 99501