## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: | |
| *Terry et. al. v. Ameriquest Mortgage Company, et. al.;* Case No. 08-2475 | |

## MOTION FOR REASSIGNMENT

### I.  INTRODUCTION

Ameriquest requests reassignment of *Terry, et. al., v. Ameriquest Mortgage Company, et. al.,* case no. 08-CV-2475, pending before the Honorable Edmond E. Chang, to the MDL.  Now that Plaintiffs' claims have been settled, the only claims remaining in *Terry* are the third-party claims, mainly the 22 claims by Ameriquest *et. al.* based on closing protection letters – indemnity agreements – against Ticor/Fidelity.[1]  *See* Third Party Complaint, *Terry* Dkt 137.  Because there are 292 of the same claims against Ticor/Fidelity pending in the MDL, reassignment of this case to the MDL will: (1) allow for coordinated discovery; (2) alleviate

---

[1]  Ticor was recently merged into Chicago Title and no longer exists according to recent testimony.  Ticor is within the Fidelity National Group, multiple brands of title insurance companies operated under the Fidelity National Financial umbrella of companies centrally operated in Jacksonville, Florida.  All claims and underwriting are handled by the parent company, Fidelity.  The Fidelity brands who are defendants in the MDL include Chicago Title, Chicago Title of Michigan, Commonwealth Land Title, Fidelity National Title Company, Fidelity National Title Insurance Co., Fidelity National Title Insurance Company of New York, American Pioneer Title Insurance Company, Lawyers Title Insurance Corp., Security Union Title Insurance Company, Ticor Title Insurance Co., and Transnation Title Insurance Co.  All of the employees who had any involvement with closing protection letters for the Illinois Ticor transactions testified that they are actually Fidelity employees and are involved with multiple Fidelity brands.  Fidelity and its various title insurance brands also have overlapping executives and management.

BN 9374154v3

numerous discovery disputes; (3) allow one judge to rule on discovery issues and motions for summary judgment instead of two; and (4) eliminate the possibility of conflicting or competing motions or orders.

There are a host of discovery objections by Ticor/Fidelity that have brought discovery to a stand-still. As a result of Ticor placing so many limitations on the scope of discovery about closing protection letter practices and the interpretation of the standard indemnity language, virtually no substantive information has been provided. Ticor claims that its agents' authority to issue multi-transaction closing protection letters was limited by its parent, Fidelity. It also claims that the multi-transaction closing protection letter form issued from its own website are void. Ex. 1 (Ticor's Amended Responses to Ameriquest's Special Interrogatories at Nos. 3, 4, 24).

Discovery into assertions has been blocked. Ticor's person most knowledgeable about multi-transaction closing protection letters testified that he had never seen one and thus could not substantively testify about them in his corporate capacity except to state the company's position. Ex. 4 (Deposition of David Scott). Ticor will not designate a person knowledgeable about multi-transaction letters. Fidelity refuses to participate in discovery and has filed seriatim motions for protective order seeking to quash person most knowledgeable depositions about multi-transaction closing protection letters, three depositions of persons knowledgeable about its practices, and a subpoena for documents about closing protection letters. *Terry* Dkt. Nos. 572, 586, and 718.

In sharp contrast to Ticor's arguments and testimony, a Fidelity executive recently testified that Fidelity/Ticor upper management place no limitations on the authority to issue multi-transaction closing protection letters and always use the ALTA multi-transaction letter

form. And Ticor has not produced any evidence of a limitation of agent authority. To avoid further inquiry, Fidelity recently filed a motion for protective order seeking to prevent further discovery from Fidelity, whether by document request or deposition. *Terry* Dkt. No. 718. Ticor refuses to allow discovery into the contradictory practices and admissions of Fidelity and the Fidelity National Title Group. The motion for protective order also prevents inquiry into training materials that explain that the Fidelity National Title Group's issuing agents may issue multi-transaction closing protection letters in essentially the same form as at issue in the 314 claims against Fidelity and its thirteen brands within the Fidelity National Title Group. *Id.* at 5.

Many of Ticor's issuing agents are defendants in the MDL including the two issuing agents at issue in *Terry*. By coordinating discovery, their testimony will reveal whether the two issuing agents were rogue agents acting without authorization, as Ticor suggests. Alternatively, the issuing agents properly issued closing protection letters but Ticor is just not recognizing them to avoid paying claims.

Because the MDL involves similar claims against Fidelity and its thirteen brands within the Fidelity National Title Group such as Ticor, the objections as to the breadth of discovery requests will be resolved simply by transferring the matter to the MDL and allowing Ameriquest to inquire as to the broader range of practices and contradictory positions taken by Ticor and its sister companies, all operated and controlled by Fidelity out of their national headquarters in Jacksonville, Florida.

Likewise, because these are standard form contracts, a prior interpretation by the Fidelity National Title Group may be relevant to show that Ticor's interpretation of the indemnity language in this litigation is made-up for purposes of denying the claim. Judge Coar has already

3

BN 9374154v3

ruled that the standard form closing protection letter is ambiguous, in effect overruling Ticor's objection to discovery about the meaning of the standard language. [March 18, 2009 Transcript of Proceedings Before the Hon. David H. Coar at 8:14-12:5]. Coordinated discovery into the interpretations of the standard language by Fidelity and its sister companies in the MDL is necessary.

Summary judgment motions should resolve the issue of whether there is coverage under the standard form indemnity agreements applicable to each of the 314 claims. It is more efficient for one judge to rule on the interpretation of the language of the closing protection letters versus two. Thus, all of the conditions for reassignment under Local Rule 40.4(b) have been met:

- (1) both cases are pending in this Court;
- (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;
- (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and
- (4) the cases are susceptible of disposition in a single proceeding.

## II.   STATUS OF THE TERRY CASE

Discovery in *Terry* was initially stayed while the parties attended mediation. During the stay, Plaintiffs and Ameriquest settled all claims, and Ameriquest settled third-party claims against First American Title Company. But settlement efforts between Ameriquest and Ticor/Fidelity have thus far failed. Ticor/Fidelity deny that any valid closing protection letters exist and argue that the standard form multi-transaction closing protection letters issued by them are either void or not intended to be multi-transaction despite being ALTA multi-transaction letters.

Recent discovery belies those claims:

4

- Ticor denies that any multi-transaction closing protection letters were issued to Ameriquest. But under threat of a motion to compel, it finally produced some letters and data showing that letters had been issued. *See e.g.,* Ex. 2.

- Ticor witnesses testified that its agents were not allowed to issue multi-transaction letters: only Fidelity executives in Jacksonville, Florida could issue them. *See generally,* Exs. 3 and 4 (Depositions of Michael Hardecopf and David Scott). Likewise, Ticor responded to interrogatories and claimed that its issuing agents were not "authorized to issue blanket closing protection letters." Ex. 1 (Response to Interrogatory Nos. 3, 4). Ticor witnesses testified that authorization was rare or never given. Ex. 3. But a Fidelity executive recently testified that Fidelity/Ticor upper management has not placed *any restrictions* on any issuing agent's authority to issue multi-transaction letters. He identified the Fidelity/Ticor standard form closing protection letter as the form that the Fidelity family of title companies have been using as a multi-transaction letter since at least 2005. Ex. 5 at 22:25-23:22, 61:4-63:24; Ex. 6. The letter is essentially the same as the Fidelity/Ticor closing protection letters which Ticor claims are void and are not multi-transaction. Fidelity has filed a motion for protective order to shield it from any further discovery and Ticor also seeks a protective order preventing discovery on this topic. *Terry* Dkt. No. 718.

- Ticor scoffs at the assertion that leaving a blank in a regarding line of a closing protection letter confirms that it was a multi-transaction letter. Ticor claims that a regarding line proves that a letter was intended to be limited to a single-

transaction. *See e.g.*, Ex. 1 at Interrogatory No. 24 ("The form closing protection letter also included a "Borrower Reference/File Number" reference above the text, putting any reader on notice that this letter was intended for a specific borrower or file."). But Ticor/Fidelity's training materials, although not produced in discovery, were discovered on the internet. The training materials instruct issuing agents that the regarding line ***should be left blank*** to show that it is a multi-transaction or blanket letter. Ex. 7. That nationwide instruction concerns essentially the same form of the letter used by every title underwriter including Ticor and all Fidelity brands since 1986. See Exs. 2, 6, 8, and 10. If Fidelity's instruction shows a Fidelity or industry practice, then the closing protection letters issued by Ticor with blank regarding lines are unquestionably multi-transaction. *See* Ex. 8. To avoid further inquiry into blank regarding lines, Ticor seeks a protective order to block three depositions and any further inquiry into the training materials. Ex. 7; *see also, Terry* Dkt. No. 718 at 5.

- Recently, a Fidelity executive admitted that the standard form letter used by Ticor/Fidelity is actually a multi-transaction form and to the best of his knowledge, the letter has never been rejected as a multi-transactional form. Ex. 5 at 22:25-23:22, 61:4-63:24, 171:13-172:20. His testimony confirms the need for Fidelity-wide discovery. He testified that Fidelity will not recognize the multi-transaction letter form as multi-transaction unless it determines from looking at all the circumstances that it was intended to be multi-transaction. He testified that you would have to look at the historical practices and desires of the issuing agent

BN 9374154v3

and lender or confer with them to determine intent and agrees that looking at all of the data showing closing protection letter practices would be helpful. *Id.* at 46:22-47:13, 47:21-48:11, 68:14-69:15, 171:13-172:20, 175:22-176:4. Although Ticor claims that an address in the regarding line shows that it is a specific transaction letter, the Fidelity executive states would look into additional information before making a conclusive determination. *Id.* at 171:13-172:20. But Ticor refuses to produce the Excel spreadsheets which show how frequently its issuing agents left the regarding line blank and will not even produce the data related to Ameriquest closing protection letters to show the practices of its various issuing agents in Illinois and across the country. The limited data that was produced shows the Ameriquest letters were intended to be blanket.

Fidelity-wide discovery into the aforementioned issues is necessary for the 22 Terry claims and the 292 claims in the MDL. But discovery into Ticor/Fidelity's closing protection letter practices came to a stand-still on June 27, 2011. Ticor and Fidelity filed a motion for protective order arguing that discovery requests and deposition examination into such topics as Ticor's nationwide instruction about how to complete multi-transaction closing protection letters by leaving the regarding line blanket violates the MDL stay on discovery. *Terry* Dkt. No. 718. Ticor contends that discovery requests into anything but Ticor's Illinois 2004 and 2005 practices for two issuing agents is an attempted end-run around this Court's discovery stay and should be quashed. *Id.* at 1, 11. Although Ticor's witnesses have identified the parent entity, Fidelity, as controlling Ticor's closing protection letters practices including underwriting and claims, Fidelity has objected to responding to <u>any</u> discovery pursuant to subpoena or producing 30(b)(6)

7

witnesses. *Id.* at 5. While Ticor claims that it wants discovery in the MDL to proceed, its refusal to agree to it shows otherwise and that this is just an excuse to limit discovery in *Terry. Id.*

Discovery will remain in its infancy until Ticor/Fidelity's objections are overruled. A briefing schedule has been set for Ameriquest's motion to compel and Ticor/Fidelity's motion for protective order with a hearing on July 28, 2011. Because the MDL involves a nationwide scope, broader time range for the loans at issue, all of Fidelity's thirteen title company brands, and numerous Ticor/Fidelity issuing agents, Ticor's objections should disappear.

There are no real obstacles to the transfer. There is one pending motion to dismiss in the Terry matter, similar to the motion to dismiss by Fidelity/Ticor this Court already ruled upon in the MDL. Judge Chang asked if a ruling on that motion would alleviate Ticor's objection to reassignment and the answer was "no." Ticor contends that discovery is stayed in the MDL until mediation proceedings have been completed. But Ameriquest has already explained that it considers mediation proceedings with Ticor/Fidelity to have been completed and agrees that these parties should participate in discovery in the MDL. Ticor/Fidelity on the other hand will not make that agreement, seeking rather to use the stay as an excuse to avoid transfer.

## III.   FACTUAL BACKGROUND OF THE CLAIMS AND DISCOVERY ISSUES REGARDING CLOSING PROTECTION LETTERS

Since its promulgation by the American Land Title Association (ALTA) in 1986, Fidelity and its thirteen brands of title companies, including Ticor, have used the ALTA standard form agreement as their closing protection letter with only slight modifications. *See, e.g.*, Ex. 9 (the ALTA multi-transaction/blanket form) and Exs. 2, 6, 8, and 10 (various Fidelity/Ticor/Landamerica forms with the same standard language). The closing protection letter is an indemnity agreement relied upon by Ameriquest in Terry and the MDL as a basis for

8

recovery against Ticor/Fidelity.

As is typical in the industry, Ameriquest required that Ticor/Fidelity provide a closing protection letter for every Ameriquest loan pursuant to its uniform written closing instructions. Ticor/Fidelity admit that they practically always issued closing protection letters --- 98% of the time -- and often did so in a format called a blanket closing protection letter. A blanket closing protection letter applies to every subsequent loan transaction for years into the future. *See* Exs. 2, 6, 8, 10 (using plural "closings" and "real estate transactions"). In contrast, the ALTA single transaction form states that it applies only to a single transaction. Ex. 11 (ALTA single-transaction form); Ex. 12 (Ticor single-transaction form). Fidelity/Ticor use the single transaction form when they want to limit the closing protection letter to one particular transaction. *Id.*

For all 22 loans in the Terry matter and apparently for 292 loans in the MDL, Ticor/Fidelity deny issuing any *valid* closing protection letters and has relied on that assertion to avoid producing multi-transaction letters. Ticor/Fidelity argue that: (1) the format of closing protection letters issued by its agents was unauthorized (although it came from the Ticor/Fidelity website); (2) its agents did not have the authority to issue multi-transaction closing protection letters (although one Fidelity executive testified to the opposite); and, or (3) no applicable closing protection letters exist because Ticor/Fidelity rejects its ALTA multi-transaction form as applying to multiple transactions. Ticor/Fidelity claim that although it almost always used an ALTA standard form **multi-transaction** closing protection letter, they do not treat the letters as multi-transaction. Instead, Ticor asserts in this litigation, for the first time ever, that the ALTA multi-transaction letters only apply to a single transaction regardless of the multi-transaction

9

language unless Ticor/Fidelity determines that their agent *intended* the letter to be multi-transaction. Ex. 5 at 61:4-63:24. To make that determination, Ticor/Fidelity assert that they have to look beyond the closing protection letter to look at all the circumstances surrounding the issuance of the letter.

Ticor/Fidelity cannot point to a single document which suggests they are not just making the argument up for this litigation. No writing exists which shows that they have used this interpretation in the past or told their agents or lenders that multi-transaction closing protection letters do not apply to multi-transactions. Nonetheless, Ticor/Fidelity use this argument to deny that closing protection letters exist for the 314 claims at issue.

Ticor also argues that the standard form language should be interpreted such that Ameriquest's losses are not covered. Judge Coar disagreed with Ticor's interpretation of the plain language of the closing protection letter and ruled that it was ambiguous. [March 18, 2009 Transcript of Proceedings Before the Hon. David H. Coar at 8:14-12:5].

## IV.    REASONS WHY THE TRANSFER PROMOTES JUDICIAL ECONOMY

The interpretation of the indemnity language of the closing protection letters and whether there is coverage for the underlying plaintiffs' claim are common issues and may be appropriate for summary judgment. Likewise, implied and actual authority of the issuing agents to issue closing protection letters and the appropriate form of the letters are common issues. Because the interpretation and agent authority issues in the action at bar will also have to be determined in the MDL, it would be prudent to determine them once by a single court instead of piecemeal.

Likewise, the benefits of coordinating discovery also encourage the transfer of this matter to the MDL. Discovery will be the same for the 22 closing protection letters in the matter at bar as the 292 pending in the MDL. In particular, Ameriquest seeks discovery concerning

10

Ticor/Fidelity's practices concerning multi-transaction closing protection letters. The discovery is necessary to rebut Ticor/Fidelity's various assertions denying that authorized closing protection letters exist notwithstanding their admissions that: (1) closing protection letters are issued by their agents for practically all loans; (2) it appears that multi-transaction closing protection letters were issued; and (3) Ticor/Fidelity training materials found on the internet inform their agents to provide multi-transaction letters consistent with those received by Ameriquest. Ticor/Fidelity's interpretation of the language of the standard forms is also at issue.

Significant discovery battles have erupted and will soon be before Judge Chang because Ticor seeks to prevent Third-Party Plaintiffs from looking at the big picture practices of the Fidelity brand of companies. By attempting to limit discovery into the practices exclusively in Illinois and exclusively for Ticor and two issuing agents, Ticor attempts to avoid the inconsistent positions that it has taken for other states, at other times, on overlapping web-based systems for issuing letters, and for other brands.

Further showing the need for broader discovery, Fidelity/Ticor management in Jacksonville recently testified that it has not placed any restrictions on the issuance of blanket closing protection letters and issuing agents can generate them at will, without anyone's approval. In sharp contrast, the Illinois Ticor manager claims that they are forbidden except in the rare circumstance in which Fidelity senior management in Jacksonville issues them. *See* Ex. 3 (Depo. of Hardecopf). The Ticor person most knowledgeable testified similarly: that only Fidelity's corporate underwriting group in Jacksonville could take requests and generate multi-transaction letters. *See* Ex. 4 (Depo. of Ticor 30(b)(6) witness David Scott.). The multi-transaction closing protection form used tens of thousands of times by Illinois Ticor belies that

11

BN 9374154v3

assertion in addition to the Fidelity/Ticor instructions found on the internet that inform issuing agents how to issue a blanket closing protection letter without any prior approval.

Fidelity management in Jacksonville also recently testified that he would have to analyze the practices of each issuing agent and language used in each letter's regarding line to determine if the issuing agent intended to have their multi-transaction form used for multi-transactions. An analysis of Fidelity's industry-wide practices to show how multi-transaction letters are completed is apparently necessary according to Fidelity.

Ticor's person most knowledgeable concerning multi-transaction closing protection letters testified that he, acting as Ticor, had **never seen a blanket closing protection letter** and therefore could not identify those multi-transaction letters that were placed in front of him. Ex. 4 at 224:4-226:12. But Fidelity/Ticor's standard form letter is a multi-transaction letter form. Transferring this matter to the MDL should resolve those discovery issues because Ticor/Fidelity will not be able to assert that their broader practices are not relevant. Fidelity/Ticor, the issuing agents, and Ameriquest all utilized standard form closing protection letters for loan closings on a nationwide basis, not just in Illinois. Coordinated discovery on a nationwide level is necessary to show the parties' intent, authority, and interpretation of the language of the standard form closing protection letters.

A motion to reassign this matter was previously filed by a now dismissed Third-Party Defendant, First American Title Insurance Company ("First American"). Ticor did not oppose the motion to reassign. Plaintiffs did oppose the motion to reassign but they are no longer parties to this action. Third-Party Plaintiffs noted that the motion was premature because certain defendants who were not parties to the MDL had pending dispositive motions so claims against

12

them should not be transferred until it was determined whether they were in the case or out. *See* Motion to Reassign [MDL Dkt. No. 2676], Opposition [MDL Dkt. No. 2709], and Reply to Opposition [MDL Dkt. No. 2720]. Those parties have now been dismissed and the case is now ripe to be transferred.

Previously, this Court denied First American's motion to reassign, without prejudice, on the grounds that the motion failed to satisfy the requirements of L.R. 40.4(b) and because at that time there were a number of fully briefed substantive motions. Minute Entry [MDL Dkt. No. 2916]. Notably, the fully briefed substantive motions referred to by the parties in the motion to reassign pleading would have, and did, result in the complete dismissal of certain defendants. *See* March 18, 2009 Hrg. Transcript.

Circumstances are now changed as the settling of Plaintiffs' claims has resulted in the dismissal of (i) the defendants not named in the MDL and (ii) the unique fraudulent conveyance cause of action, leaving only the third-party claims which are identical to those already pending in the MDL. Moreover, many of the pending substantive motions were resolved prior to the settlement with Plaintiffs or were made moot by the settlement. Further, while there remain motions to dismiss the Third-Party Complaint, those motions having been pending for over two years and the issues raised are similar to those already reviewed and ruled upon by this Court in the MDL.[2] There is no prejudice to Third-Party Defendants to have their pending motions decided by this Court versus Judge Chang and reassigning this matter into the MDL will eliminate the possibility of conflicting or competing motions or orders.

Ticor has advised Third-Party Plaintiffs that it objects to reassignment of this case into the MDL on the grounds that discovery would be unduly delayed in the MDL as the result of the

---

[2] Ticor, Joan Pridgeon and Jackie Vasquez have motions to dismiss that have been pending since early 2009.

BN 9374154v3

stay in discovery that the MDL parties agreed to while mediation was pending. *See* Joint Discovery Plan and Scheduling Order [MDL Dkt. No. 3268, attached as Ex. 13]. But this is a made-up impediment. Third-Party Plaintiffs agree that discovery between the parties at issue here should continue in the MDL and Third-Party Plaintiffs would stipulate to the same before this Court and would also informally agree that discovery should continue while this Court is considering the stipulation. Further, the discovery stay in the MDL ceases at the conclusion of mediation. Mediation with Ticor was unsuccessful and has been concluded.

Ticor also objects to transfer into the MDL on the grounds that its partial motion to dismiss is pending. Unlike, the other defendants who filed motions to dismiss which, if granted, would get them out of the case completely, Ticor has filed an answer to some of the causes of action in the Third-Party Complaint so even if Ticor's motion to dismiss is granted, it will still remain a party to the case. Moreover, as set forth above, a ruling by this Court on Ticor's motion to dismiss will eliminate the possibility of competing motions or orders. Further, Ticor previously had no objection to the motion to reassign filed by First American even though its motion to dismiss was also pending at that time. Given that this Court has previously addressed similar issues with the same parties, it is more efficient to transfer the Third-Party claims into the MDL.

## V. THIRD-PARTY DEFENDANT HELEN MITCHELL-CARTER'S POSITION

Third-Party Defendant Helen Mitchell-Carter agrees to the reassignment of the Third-Party Claims into the MDL.

## VI. THIRD-PARTY DEFENDANT JOAN PRIDGEON'S POSITION

Third-Party Defendant Joan Pridgeon agrees to the reassignment of the Third-Party Claims into the MDL.

14

BN 9374154v3

## VII.   THIRD-PARTY DEFENDANT MICHAEL SMITH'S POSITION

Third-Party Defendant Michael Smith agrees to the reassignment of the Third-Party Claims into the MDL.

## VIII.   THIRD-PARTY DEFENDANT JACKIE VASQUEZ'S POSITION

Third-Party Defendant Jackie Vasquez has no objection to the reassignment of the Third-Party Claims into the MDL.

Dated: July 1, 2011                By:    /s/ Randall Manvitz
                                          *Attorneys for Third-Party Plaintiffs*

                                          Randall Manvitz, Esq.
                                          Joanne N. Davies, Esq.
                                          BUCHALTER NEMER,
                                          A Professional Corporation
                                          18400 Von Karman Avenue, Suite 800
                                          Irvine, CA 92612
                                          Telephone: (949) 224-6221
                                          Facsimile: (949) 720-0182

15

BN 9374154v3

## CERTIFICATE OF SERVICE

I, Randall Manvitz, hereby certify that on this 1st day of July 2011, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Pro Se Third Party Defendants Joan M. Pridgeon, Michael Smith and Isiah P. Ward who do not received the ECF notice will be served by mail on July 1, 2011.

/s/ Randall Manvitz

16

BN 9374154v3

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Rose Terry, et al.,                          )
                                             )
            Plaintiffs,                      )      No. 08-cv-02475
                                             )
v.                                           )      Judge Coar
                                             )
Ameriquest Mortgage Company, et al.,         )      Magistrate Judge Mason
                                             )
            Defendants.                      )

**THIRD-PARTY DEFENDANT TICOR TITLE INSURANCE COMPANY'S AMENDED
RESPONSES AND OBJECTIONS TO AMERIQUEST MORTGAGE COMPANY'S
<u>FIRST SET OF INTERROGATORIES</u>**

Third-party defendant Ticor Title Insurance Company ("Ticor"), by and through its

counsel of record, hereby asserts its objections and responses to third-party plaintiff Ameriquest

Mortgage Company's ("Ameriquest") first set of interrogatories as follows:

<u>GENERAL OBJECTIONS</u>

1.      Ticor objects to Ameriquest's interrogatories to the extent that they purport to

impose obligations upon Ticor other than those imposed by the Federal Rules of Civil Procedure.

2.      Ticor objects to the definition of "you" and "your" in these requests because those

definitions are vague, overbroad, and encompasses persons or entities not within Ticor's control.

Ticor's responses to these interrogatories are limited to Ticor Title Insurance Company.

3.      Ticor objects to these interrogatories to  the extent that they are not subject to any

time or date restriction or limitation.

4.      Ticor's answers to these interrogatories are provided without prejudice to its right

to supplement its answers pursuant to these discovery requests.

by Ticor to Ameriquest, including some of the documents found between TICOR0000159-TICOR0000253.

**INTERROGATORY NO. 3:**

Identify all facts, including all related Documents, Persons having knowledge of such facts, and Communications, that constitute the basis for Your contention that Tristar was not Your agent during the years 2005 and 2006 for loan closings and issuing closing protection letters.

**ANSWER:** In addition to the General Objections stated above, Ticor objects to this interrogatory on the ground that it seeks an improper legal opinion. Subject to and without waiving this objection or the General Objections stated above, Ticor states that the scope of Tristar's agency is set forth in the agency agreement between it and Ticor. That agency agreement did not appoint Tristar to act as Ticor's agent when Tristar closed loans. Ticor further states that it never contended that Tristar was not authorized to issue transaction specific closing protection letters. Rather Ticor contends that Tristar was not authorized to issue blanket closing protection letters and contends that Tristar did not issue closing protection letters in connection with the Loans.

**INTERROGATORY NO. 4:**

Identify all facts, including all related Documents, Persons having knowledge of such facts, and Communications, that constitute the basis for Your contention that Northwest was not Your agent during the years 2005 and 2006 for loan closings and issuing closing protection letters.

**ANSWER:** In addition to the General Objections stated above, Ticor objects to this interrogatory on the ground that it seeks an improper legal opinion. Subject to and without waiving this objection or the General Objections stated above, Ticor states that the scope of Northwest Title's agency is set forth in the agency agreement between it and Ticor. That agency agreement did not appoint Northwest Title to act as Ticor's agent when Northwest Title closed loans. Ticor further states that it never contended that Northwest Title was not authorized to

3

issue transaction specific closing protection letters. Rather Ticor contends that Northwest Title was not authorized to issue blanket closing protection letters and contends that Northwest Title did not issue closing protection letters in connection with the Loans.

**INTERROGATORY NO. 5:**

Identify all facts, including all related Documents, Persons having knowledge of such facts , and Communications, that Tristar was not authorized to issue a closing protection letter pursuant to Ameriquest's closing instructions for the Loans.

**ANSWER:** In addition to the General Objections stated above, Ticor objects to this interrogatory on the ground that it seeks an improper legal opinion. Subject to and without waiving this objection or the General Objections stated above, Ticor states that it does not contend that Tristar lacked authority to issue transaction specific closing protection letters in connection with the Loans. Rather, Ticor contends that Tristar did not issue transaction specific closing protection letters in connection with the Loans.

**INTERROGATORY NO. 6:**

Identify all Communications in which Ticor or its related entities have previously stated that a closing protection letter does not cover a loss arising out of an agent's failure to follow closing instructions that results in a violation of a truth in lending law.

**ANSWER:** In addition to the General Objections stated above, Ticor objects to this interrogatory on the ground that it is overbroad, seeks information that is neither material, relevant, nor reasonably calculated to lead to the discovery of admissible evidence. Ticor further objects to this interrogatory to the extent that it purports to require Ticor to answer on behalf of unspecified "related entities." Ticor also objects to this interrogatory on the ground that it imposes an undue burden upon Ticor by purporting to require Ticor to review thousands of claim files, thousands of litigation files, and correspondence throughout the corporation to identify the requested information.

4

**ANSWER:** In addition to the General Objection stated above, Ticor objects to this interrogatory on the ground that it seeks an improper legal opinion. Ticor further objects to this interrogatory on the ground that it is overbroad and seeks information that is neither material, relevant, or reasonably calculated to lead to the discovery of admissible evidence. Ticor also objects to this interrogatory on the ground that it imposes an undue burden upon Ticor by purporting to require Ticor to review thousands of claim files, thousands of litigation files, and correspondence throughout the corporation to identify the requested information. Ticor further states that the basis of its interpretation of the alleged closing protection letters is set forth in its motion for summary judgment and supporting documents.

**INTERROGATORY NO. 24:**

Identify all facts, including all related Documents, Persons having knowledge of such facts, and Communications, that support Your contention that the closing protection letter, a copy of which is attached hereto as Exhibit "A", is not binding on Ticor as a global closing protection letter.

**ANSWER:** Subject to and without waiving any of the General Objections stated above, Ticor states that the document attached to these interrogatories as Exhibit A was generated using the website Ticor made available to its issuing agents to generate transaction specific closing protection letters. One of the required fields that issuing agents had to populate was the "Borrower Reference/File Number" field. The information for this field would be specific to each individual loan. The form closing protection letter also included a "Borrower Reference/File Number" reference above the text, putting any reader on notice that this letter was intended for a specific borrower or file. Further, the data produced by Ticor to Ameriquest regarding closing protection letters issued by Tristar shows that there were subsequent transaction-specific closing protection letters issued by Tristar to Ameriquest – letters that would have been unnecessary had the document attached to these interrogatories as Exhibit A been a

12

global closing protection letter. Finally, the document attached to these interrogatories as Exhibit A been a global closing protection letter is dated October 18, 2005, which post-dates 11 of the 15 loans at issue. Therefore, the document attached to these interrogatories as Exhibit A could not apply to these 11 loans.

**INTERROGATORY NO. 25:**

Identify any Communication in which Ticor has reprimanded an employee or agent for generating, drafting or issuing a closing protection letter which does not have a field completed specifying that the closing protection letter is limited to a specific loan transaction such as the borrower reference number and for each Communication, state whether it was before or after Ticor was informed of a potential claim under the closing protection letter.

**ANSWER:** Subject to and without waiving any of the General Objections stated above, Ticor states that there were approximately four to five times when it became aware that an issuing agent was issuing incomplete closing protection letters. When Ticor became aware of this, it told the issuing agent to stop doing so and to make sure it issued only complete closing protection letters. Ticor does not currently know the identity of these issuing agents, the dates of these communications, or whether any claims were made under the closing protection letters at issue.

**INTERROGATORY NO. 26:**

Identify all Ticor employees who supervised Tristar or Northwest at any time from 2003 to 2006.

**ANSWER:** In addition to the General Objections stated above, Ticor objects to this interrogatory on the ground that the term "supervised" is vague. Subject to and without waiving this objection or any of the General Objections stated above, Ticor states that to the extent that any of its employees exercised any supervision over Tristar or Northwest Title in Illinois, it states that those employees were David Scott, Michael Hardecopf, and James Vesely.

13

I, David Scott, declare under penalty of perjury under the laws of the United States of America as more specifically provided by 28 U.S.C. § 1746, that I have read Ticor's answers to Ameriquest Mortgage Company's AMENDED FIRST SET OF INTERROGATORIES and believe the same to be true and correct to the best of my knowledge, information, and belief.

Dated: February 11, 2010

David Scott

EXHIBIT   2



# Ticor Title Insurance Company

203 N. LaSalle
Chicago, IL 60601
Phone (800)543-7641
Fax (630)896-9902

This faxed transmittal Insured Closing Letter is considered equivalent to an original and no further copy will be mailed.

**DATE:** Tuesday, May 24, 2005

**TO:** Ameriquest Mortgage Company
2056 Westing Court, Suite 110
Naperville, IL 60563

**RE:** Tristar Title LLC
1301 West 22nd Street, Suite 1
Oak Brook, IL 60523
Attn: Kelly Sleeter
FAX: 630 954-0004

Attention: Tim Garity

Dear Sir/Madam:

When title insurance of Ticor Title Insurance Company (the "Company") is specified for your protection in connection with closings of real estate transactions in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by an Issuing Agent (an agent authorized to issue title insurance for the Company) or an Approved Attorney (an attorney upon whose certification of title the Company issues title insurance) and when such loss arises out of:

1. Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or

2. Negligence of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closings.

If you are a lender protected under the foregoing paragraph, your borrower in connection with a loan secured by a mortgage on a one to four family dwelling shall be protected as if this letter were addressed to your borrower.

## Conditions and Exclusions

A. The Company will not be liable to you for loss arising out of:

1. Failure of the Issuing Agent or Approved Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except as shall result from failure of the Issuing Agent or the Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

TICOR0001778
CONFIDENTIAL

3. Mechanics' and materialmen's liens in connection with your purchase or lease or construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B. If the closing is to be conducted by an Issuing Agent or Approved Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Issuing Agent or Approved Attorney.

C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Approved Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E. Claims shall be made promptly to the Company at its principal state office at 330 Naperville Road, Suite 101, Wheaton, Illinois 60187, or its principal office at 171 North Clark Street, Chicago, Illinois 60601. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F. The protection herein offered does not extend to real property transactions in the states of Florida, Iowa, New Jersey, Nebraska, Kansas, New Mexico, New York and Texas. Insured closing letters have been regulated under the laws of those states.

The protection herein offered will be effective and will continue until cancelled by Ticor Title Insurance Company.

Any previous insured closing service letter or similar agreement is hereby cancelled except as to closings of your real estate transactions regarding which you have previously sent (or within 30 days hereafter will send) written closing instructions to the Issuing Agent or Approved Attorney.

Yours truly,
Ticor Title Insurance Company

Resident Vice President
Illinois Agency Services

TICOR0001779
CONFIDENTIAL

# EXHIBIT 3

```
              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

ROSE TERRY, et al.,              )
                                 )
              Plaintiffs,        )
                                 )
     vs.                         )   No. 08 CV 2475
                                 )
AMERIQUEST MORTGAGE COMPANY,     )
et al.,                          )
                                 )
              Defendants.        )
```

        The videotaped deposition of MICHAEL

HARDECOPF, called by the Defendant for

examination, taken pursuant to the Federal Rules

of Civil Procedure of the United States District

Courts pertaining to the taking of depositions,

taken before Marianne Nee, a Certified Shorthand

Reporter of the State of Illinois, CSR License

No. 84-2341, taken at 35 West Wacker Drive,

Suite 4600, Chicago, Illinois, on January 21,

2010, at 9:21 a.m.

                                              Page 1

Hardecopf, Michael                    1/21/2010

1      Q    And is there -- are you familiar with

2  the term blanket closing protection letter?

3      A    I've heard that term.

4      Q    Is there any limitation in the cheat

5  sheet concerning the agent providing blanket

6  closing protection letters?

7      A    No.

8      Q    Do you know of any information provided

9  to an agent concerning -- let me make that a

10  little more specific.  In your -- strike that.

11          In your role as agency rep for the

12  State of Illinois, were you aware of any

13  limitation on agents providing blanket closing

14  protection letters?

15      A    Yes.

16      Q    And what was that?

17      A    It was company policy that that was not

18  allowed.

19      Q    And what's the basis for that, for your

20  statement?

21      A    They have to be approved at a senior

22  level and we don't issue them locally.

23      Q    And that was the -- that was Ticor's

24  policy?

Page 56

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


ROSE TERRY, et al.,                    )

      Plaintiffs,                    )

        vs.                          )   No. 08 CV 2475

AMERIQUEST MORTGAGE COMPANY,           )

et al.,                                )

      Defendants.                    )


        Videotaped Deposition of DAVID SCOTT,

taken before GREG S. WEILAND, CSR, RPR, pursuant to

Rule 30(b)(6) of the Federal Rules of Civil

Procedure for the United States District Court

pertaining to the taking of depositions, at

Suite 3700, 180 North Stetson Avenue, in the City of

Chicago, Cook County, Illinois, commencing at 9:08

o'clock a.m., on the 3rd day of February, 2010.


VOLUME 1

PAGE 1 - 197

1    that if you revised the base form of the closing

2    protection letter and customized it for a situation,

3    would you have saved that customized closing

4    protection letter as a different document that you

5    would have maintained?

6         A.   As I said, only, in my case, only if I

7    thought that we may get a request for -- a second

8    request for the same revision.

9         Q.   Okay.

10        A.   We didn't save an electronic copy of every

11   one that we sent out.

12        Q.   Okay.  You also mentioned that the

13   Fidelity National Financial Corporate Underwriting

14   department would issue closing protection letters on

15   behalf of Ticor during the 2004 to 2006 time period;

16   is that correct?

17        A.   Yes, that's correct.

18        Q.   What is the process by and which closing

19   protection letters were issued on behalf of Ticor

20   from the Corporate Underwriting department?

21        A.   My understanding of it is that if a

22   operation -- are we still restricting ourselves to

23   Illinois, or anywhere?  Well, I'll say anywhere.

24             If a field operation somewhere in the

25   country received a request for a closing protection

Page 89

1   letter for instance in the form of a blanket letter
2   or a global letter or a master letter or also even a
3   transaction-specific letter but revised in such a
4   substantial way that, for instance, Mike or I would
5   say, you know -- you know, normally our first answer
6   to that kind of a question would just be no.  If we
7   got a request from an agent and they said we wanted
8   to -- we wanted -- we have a lender that wants to
9   delete the third paragraph of the closing protection
10  letter, we'd say no.
11          Then if they said they really want to make
12  a request for this, then we would refer either the
13  agent or the lender, and I'm assuming this is --
14  that a similar process happens in the rest of the
15  country, we would refer the agent or the lender to
16  Corporate Underwriting, and we would tell them this
17  kind of request has to be approved through Corporate
18  Underwriting.
19          I don't really have a lot of specifics
20  about what Corporate Underwriting's process is
21  beyond just the assumption that someone in Corporate
22  Underwriting reviews the request, determines it to
23  either be acceptable or not, and if it's acceptable,
24  then I would presume they'd produce a letter in
25  somewhat the same fashion that Mike or I would at

Page 90

1    the local level.

2         Q.    You don't have any specific knowledge as

3    to what Ticor's -- strike that.

4              As you sit here today, you don't have any

5    specific knowledge as to what Corporate

6    Underwriting's process is for issuing closing

7    protection letters relating to Ticor during the 2004

8    to 2006 time period?

9         A.    No.

10        Q.    You don't know whether they produce a

11   letter by making changes to a Word document or going

12   onto a website, correct?

13        A.    No, I don't.

14        Q.    The other system that we discussed was

15   agentTRAX.

16             I believe that's the last option that you

17   described as being available during the 2004 to 2006

18   time period for creating closing protection letters,

19   correct?

20        A.    Correct.

21        Q.    And agentTRAX came into existence at Ticor

22   in February of 2006?

23        A.    I believe that is correct, yes.

24        Q.    Was agentTRAX just a new name for the

25   Ticor Title Illinois website, or was it a completely

Page  91

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


ROSE TERRY, et al.,                    )

       Plaintiffs,               )

       vs.                       )   No. 08 CV 2475

AMERIQUEST MORTGAGE COMPANY, )

et al.,                                )

       Defendants.               )


      Continued Videotaped Deposition of

DAVID SCOTT, taken before GREG S. WEILAND, CSR, RPR,

pursuant to Rule 30(b)(6) of the Federal Rules of

Civil Procedure for the United States District Court

pertaining to the taking of depositions, at

Suite 3700, 180 North Stetson Avenue, in the City of

Chicago, Cook County, Illinois, commencing at 9:14

o'clock a.m., on the 4th day of February, 2010.


          VOLUME 2

        PAGE 198 - 374

1      A.   Correct.

2      Q.   Does Ticor allow its issuing agents to

3   issue blanket CPLs off of the agentTRAX website?

4          MR. FOWERBAUGH:  I'm going to object on

5   the grounds that, one, it's beyond the geographic

6   scope.  You're asking about Ticor without limit to

7   the State of Illinois.

8          THE WITNESS:  I would say that on this

9   agentTRAX system, the system appears to allow agents

10  throughout the country the option of issuing closing

11  protection -- blanket closing protection letters

12  subject to state regulatory restrictions and

13  underwriting procedures.

14  BY MS. DAVIES:

15     Q.   And Ticor testified yesterday that it's

16  not aware in the State of Illinois of any

17  restrictions on an issuing agent to issue a closing

18  protection letter in a form that's blanket, correct?

19         MR. FOWERBAUGH:  Objection, misstates his

20  prior testimony.

21         THE WITNESS:  In the State of Illinois, in

22  the State of Illinois, requests for closing

23  protection letters -- requests for blanket closing

24  protection letters, the procedure is to refer those

25  requests to Corporate Underwriting.

1   understanding of the position of Ticor Title in

2   Illinois is that letters generated from that website

3   are transaction-specific.

4       Q.   You are sitting here today as Ticor's

5   corporate representative, correct?

6       A.   Uh-huh.

7       MR. FOWERBAUGH:  You have to say yes or

8   no.

9       THE WITNESS:  Yes.

10  BY MS. DAVIES:

11      Q.   And you've never seen what a form blanket

12  closing protection letter looks like, correct?

13      A.   Correct.

14      Q.   And --

15      MR. FOWERBAUGH:  Could I just -- I would

16  like to take a break, but obviously if you want to

17  follow this, but I would like to take a break.

18      MS. DAVIES:  Yes, if I could just finish

19  my line of questioning.

20  BY MS. DAVIES:

21      Q.   And you have no ability in your experience

22  to make a determination as to whether a closing

23  protection letter is a blanket closing protection

24  letter or a transaction-specific closing protection

25  letter because you have no basis for comparison,

1    correct?

2        A.    I've testified that I have never seen a

3    blanket closing protection letter.

4        Q.    Is the answer to my question yes?

5        A.    Yes.

6        Q.    If any of the closing protection letters

7    issued by TriStar Title to Ameriquest Mortgage

8    Company prior to any of the loans at issue in the

9    litigation where TriStar was involved were blanket

10   closing protection letters, wouldn't those letters

11   cover the loans?

12            MR. FOWERBAUGH:  Objection, calls for

13   speculation.

14            THE WITNESS:  Restate that, please.

15   BY MS. DAVIES:

16       Q.    Do you want me to reread it, or are you

17   not --

18       A.    No, just reread it is fine.

19       Q.    If any of the closing protection letters

20   issued by TriStar Title to Ameriquest Mortgage

21   Company prior to any of the loans at issue in the

22   litigation where TriStar was involved were blanket

23   closing protection letters, wouldn't those letters

24   cover the loans?

25            MR. FOWERBAUGH:  Again, calls for

1    speculation.

2          THE WITNESS:  Well, again, I would say

3    it's Ticor's position that closing protection

4    letters generated from the Ticor Title Illinois

5    website are transaction-specific.  These letters

6    were generated from that website.

7          If you -- if we assume for argument's

8    purposes that if any of the letters were blanket

9    closing protection letters, then would the letters

10   issued prior to Ameriquest Mortgage loans in

11   question, would they apply to those loans, then I

12   would say yes.

13   BY MS. DAVIES:

14      Q.   And you're able to determine by reviewing

15   the CPL data for TriStar on Exhibit 12 that closing

16   protection letters were issued to Ameriquest prior

17   to the loan transactions, correct, at issue in this

18   litigation?

19      A.   There were closing protection letters in

20   these two sets of data issued to Ameriquest Mortgage

21   prior to the loans in question.

22      Q.   And when you say "two sets of data,"

23   you're referring to for Northwest Title Insurance

24   Company, there were closing protection letters

25   issued by Northwest to Ameriquest prior to the loans

Page 226

# EXHIBIT 5

Alex Ricks

1        This is the deposition of Alex Joseph Ricks

2    taken in the case of Rose Terry, et al., plaintiffs,

3    versus Ameriquest Mortgage Company, et al., defendants.

4        Present and appearing on behalf Ameriquest

5    Mortgage Company, et al., is Randall L. Manvitz.  And

6    present and appearing on behalf of third-party defendant

7    Ticor Title Insurance Company is Albert E. Fowerbaugh,

8    Jr.

9        Also present is the videographer, Shawn Lane.

10   This deposition is being taken at First Choice Reporting

11   & Video Services, 233 East Bay Street, Suite 912,

12   Jacksonville, Florida.  9:05

13       VIDEOGRAPHER:  We are now on the record in the

14   matter of Rose Terry et al. versus Ameriquest

15   Mortgage Company et al.  Today's date is June 16th,

16   2011.  And the time is approximately 9:05 a.m.

17   This is the video recorded deposition of Alex

18   Joseph Ricks being taken at 233 East Bay Street,

19   Jacksonville, Florida.  My name is Shawn Lane and I

20   am the camera operator and our court reporter today

21   is Bobbie Umstead.  We are both representing

22   Merrill Legal Solutions, located at 135 Main

23   Street, San Francisco, California.

24       Will counsel please introduce themselves for

25   the record.

Alex Ricks Final                                        6/16/2011

1    was -- that's been used for the Trax system?

2        A    It's the same form as the standard company

3    form.

4        Q    So Fidelity uses the same form for a blanket

5    closing protection letter as the standard form that's

6    used on essentially a nationwide basis?

7            MR. FOWERBAUGH:  Objection, misstates

8        testimony.

9    BY MR. MANVITZ:

10       Q    Well, let me restate it.  I see your

11   confusion.

12       A    (Nodding head.)

13       Q    And if you don't understand the question, just

14   let me know.

15       A    (Nodding head.)

16       Q    Fidelity uses the same form to be a blanket

17   closing protection letter as the standard closing

18   protection letter that's used on a nationwide basis?

19       A    The standard letter that's used and -- and

20   we're going to agree that this doesn't include filed or

21   promulgated form states?

22       Q    Yes.

23       A    The standard company form is used in all

24   states for both blanket and transactional letters.

25       Q    So the standard closing protection letter form

untitled                    Unsigned                    Page  22

Alex Ricks Final                                    6/16/2011

1   is a blanket closing protection letter form?

2        A    Well, the form is a form. It's how it's used,

3   how it's completed, which determines whether it's

4   transactional or blanket.

5        Q    And how does its completion determine?

6        A    If you put in transaction-specific information

7   like the name and address of the borrower and the loan

8   number and so forth, then it's a transactional letter.

9   If instead of putting in transactional information you

10  put in a generic designation like all transactions, then

11  it becomes a blanket letter for that particular agent in

12  favor of that particular lender.

13       Q    Has that practice of using the same form but

14  having it be used in two different ways as a blanket and

15  a transaction specific been the practice at Fidelity

16  since you started in 2003?

17       A    It has been the practice since the Trax system

18  was rolled out. I don't know what the practice was

19  prior to that time.

20       Q    So beginning in 2005, that was the practice at

21  Fidelity?

22       A    Yes.

23       Q    Where is it that you -- were you involved in

24  setting up the Trax system so that it used the same form

25  for blanket and transaction specific?

Alex Ricks Final                                         6/16/2011

1      to them, then you can't really say that they

2      violated anything.

3      BY MR. MANVITZ:

4          Q   Has Fidelity ever in the time that you've

5      worked there informed issuing agents that they should

6      not leave a blank in the regarding line space?

7          A   Not to my knowledge.

8          Q   Has Fidelity ever in the course of your

9      employment ever informed lenders that Fidelity would not

10     recognize a CPL as blanket if there's a blank in the

11     regarding line?

12         A   Not to my knowledge.

13         Q   Has Fidelity ever informed anyone, to the best

14     of your knowledge, that it would not recognize a CPL as

15     blanket when there's a blank in the regarding line other

16     than this case?

17         A   Not to my knowledge.

18         Q   Is there -- has Fidelity ever informed anyone

19     that it would not recognize the CPL 21, standard CPL

20     letter form as a blanket?

21         MR. FOWERBAUGH:  Objection, foundation.

22         THE WITNESS:  No, not to my knowledge.

23     BY MR. MANVITZ:

24         Q   Has Fidelity ever taken the position other

25     than in this case that the standard CPL letter or CPL 21

Alex Ricks Final                                      6/16/2011

1    form is not applicable as a blanket?

2        MR. FOWERBAUGH:  Would you read his question

3    back, assuming he finished it.

4        (Question read by reporter.)

5        MR. FOWERBAUGH:  Objection, foundation.

6        THE WITNESS:  I don't know that they've taken

7    the position one way or another as to the nature of

8    the letter with any person.

9    BY MR. MANVITZ:

10       Q    In this case?

11       A    In any case.  I mean, at any time.  I don't

12   know that there's been any type of formal taking of a

13   position.

14       Q    Has Fidelity ever taken the position that the

15   standard CPL letter is not applicable as a blanket CPL?

16       MR. FOWERBAUGH:  Objection, foundation.  Asked

17   and answered.

18       THE WITNESS:  No, not to my knowledge.

19   BY MR. MANVITZ:

20       Q    Has Fidelity ever taken the position that a

21   CPL letter in the form of the standard CPL letter in all

22   respects other than the regarding line is not a blanket?

23       MR. FOWERBAUGH:  Objection, you've asked this

24   before and it's also quite vague.

25       THE WITNESS:  But once again, I don't know of

1    Fidelity ever taking any kind of formal position

2    with regard to the letter in the broad sense.  I

3    mean, we've addressed questions from agents as to

4    how to create a blanket letter.  But there's been

5    no formal across-the-board position one way or the

6    other.

7  BY MR. MANVITZ:

8      Q    Has Fidelity ever alleged that a CPL letter

9  that has the body of CPL 21 and the only difference is

10  the regarding line is not a blanket?

11      A    Not to my knowledge.

12      Q    If Fidelity wanted a form that only applied to

13  a specific transaction, why didn't it use a form similar

14  to the ALTA-specific CPL?

15      A    Well, as I previously indicated, Fidelity

16  doesn't initiate the request for any type of particular

17  form.  We have a form that we've adopted as our standard

18  form to be used in multiple situations.  And depending

19  on the requests of the lender, the form gets generated

20  in a certain way.

21      Q    Doesn't Fidelity want its forms to be clear?

22      MR. FOWERBAUGH:  Objection, argumentative.

23  Lack of foundation.

24      THE WITNESS:  We believe the form is clear.

25  BY MR. MANVITZ:

Alex Ricks Final                                6/16/2011

1          MR. FOWERBAUGH:  Objection, asked and

2      answered.

3          THE WITNESS:  You mean if the re line is left

4      blank, does that signify that the letter is

5      intended to be a blanket letter?

6   BY MR. MANVITZ:

7      Q    Correct.

8      A    Not necessarily.  It could just mean that the

9   transaction information was omitted.

10     Q    So as I understand your testimony, the re line

11  has no significance to you in indicating whether --

12  strike that.

13         As I understand your testimony, the -- a blank

14  regarding line has no significance to you in indicating

15  whether the CPL 21 standard form is intended to be --

16  was intended to be used as a blanket?

17         MR. FOWERBAUGH:  Objection, vague.  Misstates

18     prior testimony.  Compound.

19         THE WITNESS:  A blank re line is not decisive

20     as to whether the letter is transactional or

21     blanket.

22  BY MR. MANVITZ:

23     Q    What else would you need to look at to

24  determine whether a CPL with a blank regarding line was

25  intended to be blanket?

untitled                    Unsigned                    Page 46

Alex Ricks Final                                        6/16/2011

1        MR. FOWERBAUGH:  Objection, asked and

2    answered.

3        THE WITNESS:  I would need to know what the

4    intent of the person preparing the letter was, what

5    the transaction was and what the expectation of the

6    lender was who received the letter.

7    BY MR. MANVITZ:

8        Q    And what information would you look at to

9    determine that information?

10       A    I don't know that there's anything that you

11   look at.  I think you would make inquiry of whoever

12   generated the letter and the lender who was expecting to

13   receive it.

14       Q    So in your view, you can't tell whether the

15   standard CPL 21 form with the blank regarding line is a

16   blanket or not from the face of the document?

17       MR. FOWERBAUGH:  Objection, asked and

18   answered.

19       THE WITNESS:  That is correct.

20   BY MR. MANVITZ:

21       Q    Would it -- if you didn't have access to the

22   issuing agent, would it be helpful to look at the

23   issuing agent's practices with respect to issuing

24   blanket closing protection letters to make that

25   determination of whether a CPL with a blank regarding

untitled                    Unsigned                    Page  47

Alex Ricks Final                                          6/16/2011

1    line was intended to be blanket?

2         MR. FOWERBAUGH:  Objection, vague.

3         THE WITNESS:  If by "practices" you mean

4    looking at a collection of letters that the agent

5    might have issued, it might indicate a pattern.

6    But without knowing what the thought process was

7    behind that pattern, I don't know that it would be

8    conclusive.

9    BY MR. MANVITZ:

10        Q    But it would be helpful.

11        A    It could be helpful.

12        Q    So in analyzing whether, when -- strike that.

13             When Fidelity has a closing protection letter

14   with a blank regarding line, in order to determine if it

15   will be recognized as a blanket, what does it do?

16        MR. FOWERBAUGH:  Objection as to scope and

17        time frame.

18             Answer if you can.

19   BY MR. MANVITZ:

20        Q    Let me rephrase it.  How does -- when Fidelity

21   has a closing protection letter with a blank regarding

22   line, how does it determine whether it's a valid blanket

23   closing protection letter?

24        MR. FOWERBAUGH:  Same objections.

25        THE WITNESS:  I'm not sure.  And in what

Alex Ricks Final                                    6/16/2011

1    blanket letter if it said blanket transaction or blanket

2    letter or something.

3        Q    You'd be more inclined to believe, but that

4    wouldn't be determinative for you?

5        A    No, because blanket -- I mean, it suggests

6    blanket letter.  But I don't know what the person had in

7    mind when they typed in blanket without further

8    elaboration.  I mean, all transactions is very specific.

9    It says "all transactions."  Blanket ...

10       Q    So if it said -- so if the CPL standard form

11   said blanket, you would still need to inquire of the

12   issuing agent lender as to what they meant?

13       A    I would want to, yes.

14       Q    And if the re line -- if there was no property

15   address on the standard CPL letter and the re line said

16   general, would that be determinative for you that the

17   CPL was intended to be blanket?

18       A    No.

19       Q    Why not?

20       A    Because once again, general could mean a

21   variety of things.  It could be the first name of a road

22   or any number of things.

23       Q    So if it just said general, that would not be

24   determinative for you?

25       A    No.

Alex Ricks Final                                    6/16/2011

1      Q    And so you could probably quickly look up and

2   determine whether general -- whether there was a General

3   Road in the issuing state.  Once you've done that and

4   determined that general didn't mean road, would that be

5   determinative for you?

6          MR. FOWERBAUGH:  Objection, hypothetical.

7      Vague.

8          THE WITNESS:  No, because general could also

9      be the name of a person.  General could be, you

10     know, a misspelling of something else.  It could be

11     any number of things.

12  BY MR. MANVITZ:

13     Q    So you'd have to speak to the lender and

14  issuing agent to determine the intent?

15     A    I would want to do that, yes.

16         MR. MANVITZ:  Do we need to change tapes?

17         VIDEOGRAPHER:  Yes.  This concludes disk

18     number one in the deposition of Alex Ricks.  The

19     time is approximately 11:09 a.m.  We are off the

20     record.

21         (Off-the-record discussion.)

22         VIDEOGRAPHER:  This is the beginning of disk

23     No. 2 in the deposition of Alex Ricks.  The time is

24     approximately 11:12 a.m. and we are on the record.

25  BY MR. MANVITZ:

untitled                    Unsigned                    Page 69

Alex Ricks Final                                6/16/2011

1    generating those letters pursuant to faxed or e-mailed

2    or phoned-in requests or there were web sites where

3    people could actually go on and generate -- where agents

4    could go on and generate letters.

5        Q    And for the web sites, where did the form

6    closing protection letters come from?

7        A    They would have been provided by the local

8    operations through local counsel.

9            (Thereupon, Exhibit No. 7 was marked for

10   identification.)

11           THE WITNESS:  (Examining document.)

12   BY MR. MANVITZ:

13       Q    You've been handed what's been marked as

14   Exhibit 7.  Is Exhibit 7 a blanket closing protection

15   letter?

16       A    No.  Given it contains a borrower reference

17   and file number I would say it was transactional.

18       Q    And you would feel no need to speak to the

19   lender or issuing agent in making that determination;

20   correct?

21       A    Correct.

22       Q    And Fidelity would not confer with the issuing

23   agent or lender in making that determination that this

24   is a not a blanket closing protection letter; correct?

25           MR. FOWERBAUGH:  Objection, lack of

untitled                    Unsigned                    Page  171

Alex Ricks Final                                 6/16/2011

1      foundation.

2          THE WITNESS:  That I can't say.  I mean, if

3      there were a claim with regard to this letter I'm

4      sure whoever was handling the claim would confer

5      with the agent to find out all the surrounding

6      facts and circumstances.  I'm just saying that it

7      looks to me like it's a transactional letter.

8   BY MR. MANVITZ:

9      Q   But in order to make that determination you

10  would need to speak to the lender and the issuing agent

11  to determine their intent?

12         MR. FOWERBAUGH:  Objection, misstates

13     testimony.

14         THE WITNESS:  If I wanted to verify my belief,

15     then, yes, I would contact the agent and look at

16     the closing instructions and, you know, just make

17     general inquiry.

18  BY MR. MANVITZ:

19     Q   And talk to the lender?

20     A   And probably talk to the lender too.

21         (Thereupon, Exhibit No. 8 was marked for

22     identification.)

23         THE WITNESS:  (Examining document.)

24  BY MR. MANVITZ:

25     Q   You've been handed what's been marked as

untitled                    Unsigned                Page  172

1    Exhibit 8, formerly marked as Scott 20, closing

2    protection letter dated October 18, 2005.  Do you have

3    any reason to believe that this is not a blanket closing

4    protection letter?

5        MR. FOWERBAUGH:  I'm sorry.  Would you read

6        that question back.

7    BY MR. MANVITZ:

8        Q    Do you have any reason to believe that this is

9    not a blanket closing protection letter?

10        A    Well, in the presence of the borrower

11    reference file number field, it indicates that there is

12    a possibility that information was omitted.  So it might

13    or might not be a blanket letter.

14        Q    You say information was omitted.  Are you

15    saying information was omitted intentionally?

16        A    I'm not saying information was omitted.  I'm

17    saying information could have been omitted so you don't

18    know until you make further inquiry.

19        Q    And you see a period in the borrower reference

20    file number?

21        A    Uh-huh (affirmative).

22        MR. FOWERBAUGH:  You have to say "yes" or

23        "no."

24        THE WITNESS:  Yes.

25    BY MR. MANVITZ:

Alex Ricks Final                                    6/16/2011

1      Q    If that was done on a regular basis by this

2    issuing agent, would that suggest to you that it was

3    left blank intentionally?

4         MR. FOWERBAUGH:  Objection, vague as to

5    "regular basis" or whatever phrasing you used and

6    assumes facts not in evidence.

7         But you can answer if you can.

8         THE WITNESS:  Well, no, it wouldn't suggest to

9    me that it was left blank intentionally.  Because

10   if you were going to leave it blank, you'd leave it

11   blank.  You wouldn't put in a period.

12   BY MR. MANVITZ:

13      Q    Does the period under borrower reference file

14   number suggest to you that it was intentionally not

15   completed?

16      A    Intentionally not completed?

17         MR. FOWERBAUGH:  Objection, vague.

18         THE WITNESS:  No, not necessarily.  I mean, to

19   me, until you said that to me, it suggests that

20   somebody started completing it and maybe due to a

21   computer malfunction or some other issue the

22   information didn't display properly.  I mean, if

23   you were not going to complete the field, you would

24   just leave it blank.  I don't know why you would

25   put a period in it.

Alex Ricks Final                                    6/16/2011

1    BY MR. MANVITZ:

2        Q    And if the system required for some mark to be

3    made, that would be a reason why there's a period;

4    right?

5        MR. FOWERBAUGH:  Objection.

6        THE WITNESS:  Might be.

7        MR. FOWERBAUGH:  Calls for speculation.

8        THE WITNESS:  Yes, it could be.

9    BY MR. MANVITZ:

10       Q    And if this was done on a regular basis by the

11   issuing agent, that would suggest to you that it was

12   intentional?

13       MR. FOWERBAUGH:  Objection to the phrase

14   "regular basis" as being vague and assumes facts

15   not in evidence.

16       THE WITNESS:  Well, it really has to be put in

17   context.  Because if, you know, 189 out of 200 were

18   done this way, then, yeah.  But if 189 out of

19   200,000 were done this way, then, no.  It's hard to

20   know.

21   BY MR. MANVITZ:

22       Q    So you'd have to analyze the data?

23       A    In order to determine what was intended by

24   this period, I would start by talking with the agent.

25       Q    And if the agent didn't have information,

untitled                    Unsigned                    Page 175

Alex Ricks Final                                      6/16/2011

1   another way you could do it is by analyzing the data as

2   to what they've done in the past, their practices?

3       A   And the data and analysis of the data would be

4   helpful, but ...

5       Q   If you're not able to speak to the issuing

6   agent, is there any other way to determine the intent of

7   the issuing agent other than analyzing the data as to

8   what they've done in the past that you can think of?

9       A   I don't know that analyzing the data

10  necessarily tells you the intent of the agent.  As I

11  indicated, it would be helpful.  But I would also make

12  inquiry of the lender and look at the files in question.

13      Q   The data concerning what closing protection

14  letters had been issued on Ticor's system would show you

15  whether using the period was a common practice to

16  signify a blanket closing protection letter?

17      MR. FOWERBAUGH:  Objection to -- vague as to

18  "common practice," also as to lack of foundation.

19      THE WITNESS:  Not being familiar with the

20  Ticor system I can't say for certain.  But, yes, it

21  would be indicative of what the agent was doing.

22      (Thereupon, Exhibit No. 9 was marked for

23  identification.)

24      THE WITNESS:  (Examining document.)

25  BY MR. MANVITZ:

untitled                    Unsigned                    Page  176

Alex Ricks Final

6/16/2011

1    BY MR. MANVITZ:

2        Q   Well, what if it just said blanket?

3            MR. FOWERBAUGH:  Objection, you asked that

4    line of questions this morning.

5            THE WITNESS:  Exactly.  We -- and blanket

6    is -- I don't know what blanket means by itself.

7    BY MR. MANVITZ:

8        Q   Because it could be somebody's name?

9        A   Somebody's name, name of a street, part of an

10   incomplete word.  I don't know.

11       Q   So a blanket in a regarding line would not be

12   sufficient for you?

13       A   Not to form a definitive conclusion by itself,

14   no.

15       Q   Just so I have this clear.  So a lender would

16   not be able to rely on Fidelity accepting CPL 21 with

17   blanket in the regarding line because in your opinion

18   blanket could mean something else?

19           MR. FOWERBAUGH:  Objection, calls for

20   speculation.  Lack of foundation.

21           THE WITNESS:  Whether a lender chooses to rely

22   on it or not is their decision.  Whether we would

23   consider it a blanket closing protection letter

24   would depend on all the facts and circumstances,

25   because blanket by itself is ambiguous,

untitled                        Unsigned                        Page  209

Alex Ricks Final                                              6/16/2011

1        inconclusive.

2    BY MR. MANVITZ:

3        Q   So a lender shouldn't rely on the phrase, on

4    the term blanket in a regarding line because it doesn't

5    know if -- it would not know if Fidelity would accept

6    it?

7        MR. FOWERBAUGH: Objection, calls for

8    speculation. Lack of foundation. Asked and

9    answered.

10       THE WITNESS: I wouldn't begin to advise a

11   lender what to rely on or not rely on. They have

12   their own counsel for that.

13   BY MR. MANVITZ:

14       Q   Has there ever been a discussion amongst the

15   Fidelity brands, an internal discussion, that would

16   suggest the failure to complete a regarding line with an

17   "all transactions" phrase or similar terminology would

18   cause the CPL 21 form not to be recognized as a blanket?

19       MR. FOWERBAUGH: Would you please read that

20   question back?

21       (Question read by reporter.)

22       MR. FOWERBAUGH: Objection, lack of

23   foundation.

24       THE WITNESS: I know of no such discussion

25   among the brands.

# EXHIBIT 6

10/20/2005  15:11    7177350668          MIDDLE ATLANTIC                    PAGE  19/33



# TICOR TITLE INSURANCE COMPANY

ATTENTION :
AmeriQuest Mortgage Company
Its successors and/or assigns

1013 Center Road, Suite 405
Wilmington, DE 19805

RE:

To Whom It May Concern:

DATE: 10/19/2005
ISSUING AGENT OR APPROVED ATTORNEY:

Middle Atlantic Settlement Services, LLC
1817 Olde Homestead Lane, Ste. 204
Lancaster, PA 17601-

When title insurance of Ticor Title Insurance Company (Company) is specified for your protection in connection with closings of real estate transactions in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by an Issuing Agent (an agent authorized to issue title insurance for the Company) or an Approved Attorney (an attorney who has been certified by the Company to perform title examinations and settlement services) and when such loss arises out of:

1. Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of such title documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or

2. Fraud of said Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closings to the extent such fraud or dishonesty affects the status of the title to said interest in land, or the validity, enforceability or priority of the lien of said mortgage on said interest in land.

If you are a lender protected under the foregoing paragraph, your borrower in connection with a loan secured by a mortgage on a one to four family dwelling shall be protected as if this letter were addressed to your borrower.

Conditions and Exclusions

A.  The Company will not be liable to you for loss arising out of:
    1. Failure of an Issuing Agent or Approved Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.
    2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or the Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.
    3. Mechanics and materialmens liens in connection with your purchase or lease or construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.
B.  If the closing is to be conducted by an Issuing Agent or Approved Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Issuing Agent or Approved Attorney.
C.  When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.
D.  The Issuing Agent or Approved Attorney is not the Companys agent for the purpose of providing closing services. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Approved Attorney shall be limited to the protection provided by this letter, which does not include liability for loss resulting from the fraud or bad faith of any party to a real estate transaction other than an Issuing Agent or Approved Attorney, the lack of creditworthiness of any borrower connected with a real estate transaction or the failure of any collateral to adequately secure a loan connected with a real estate transaction. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.
E.  Claims shall be made promptly to the Company at its principal office at P.O. Box 45023 Jacksonville, Florida 32232-5023. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

Your delivery of funds or documents to an Issuing Agent or Approved Attorney for a closing covered by this letter shall constitute your agreement to the terms and conditions herein stated.

Any previous closing protection letter or similar agreement is hereby cancelled except as to closings of your real estate transactions regarding which you have previously sent or within 30 days hereafter send written closing instructions to the Issuing Agent or Approved Attorney.

Ticor Title Insurance Company

By:

Louis Reich, VP Senior Underwriting Counsel



EXHIBIT
Scott 36
30 (b)(6) 2/4/10
FISGRAD 800-631-6989

# EXHIBIT 7



http://www.agenttrax.com/menu/main/default.aspx

File Edit View Favorites Tools Help

default

agentTRAX User: demo@fnf... Edit Profile

FIDELITY National Title Group

Hello Demo Account

Welcome! FNTG is proud to bring you online tools to enhance and improve your business through technology. We welcome your feedback and suggestions at agentTrax@fnf.com or by calling our Help Desk at 800-586-0031.

AgentTRAX Enhancements Effective Friday July 17, 2009

**JacketTRAX:** The policy number will no longer be available in the jackets awaiting creation section because the policy is not valid until the creation process is completed by clicking the "Create Jackets" button. The policy number will be available on the printed policy and through the policy search functionality once the creation process is completed.

**LetterTRAX:** The CPL Blanket radio button will only available to the agents in the closing state of Louisiana. For those closings states where a blanket CPL (meaning no transaction information is needed on the letter) is accepted, leave the Re: Agent File # field blanket to complete your letter. The states with state specific forms will have the applicable forms and radio buttons available to them on the creation page.

**Patriot Search:** In our continuing efforts to provide you the tools you need where you need them, we have made the Patriot Search application available to you in your application list below. Patriot Search provides the means to ensure compliance of FNF's policy that prohibits doing business of any kind with targeted governments and organizations, as well as individuals, groups and entities identified on the OFAC SDN List.

**RESPA Rules Webcast:** There is a webcast presentation that covers the effects of the new RESPA rules available for you to view by clicking on the link The Effects of the New RESPA Rules. All of the handouts discussed in the recorded webcast session are available while you are viewing the session. In the Handouts box, click on the handout and then click on Save To My Computer and download to your computer.

FNF Privacy Statement | jacketTRAX | jacketTRAX User Manual | Lender Authorization

Done

FNTG - Windows Int | Microsoft Exchange | Camtasia Studio

Internet | Protected Mode: On | 100%

00:17 / 09:34

EXHIBIT
Scott 24
30(b)(6) 2/3/10
PENGAD 800-631-6989

http://www.agenttrax.com/downloads/Training%20Videos/LetterTRAX/letterTRAX.html

1/29/201

# EXHIBIT 8

 **Ticor Title Insurance Company**

203 N. LaSalle
Chicago, IL 60601
Phone (800)543-7641
Fax (630)896-9902

This faxed transmittal Closing Protection Letter is considered equivalent to an original and no further copy will be mailed.

DATE: Tuesday, October 18, 2005

TO: AMERIQUEST MORTGAGE COMPANY          RE: Tristar Title LLC
                                              1301 West 22nd Street, Suites 101 & 505
.. 92856                                       Oak Brook, IL 60523
FAX: .                                         Attn: Kelly Slecter
                                              FAX: 630 954-0004

Attention: CLOSING LETTERS

Borrower Reference/File Number: .

Dear Sir/Madam:

When title insurance of Ticor Title Insurance Company (the "Company") is specified for your protection in connection with closings of real estate transactions in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land. the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by an Issuing Agent (an agent authorized to issue title insurance for the Company) or an Approved Attorney (an attorney upon whose certification of title the Company issues title insurance) and when such loss arises out of:

    1.  Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or

    2.  Negligence of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closings.

If you are a lender protected under the foregoing paragraph, your borrower in connection with a loan secured by a mortgage on a one to four family dwelling shall be protected as if this letter were addressed to your borrower.

Conditions and Exclusions

    A.  The Company will not be liable to you for loss arising out of:

        1.  Failure of the Issuing Agent or Approved Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

        2.  Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except as shall result from failure of the Issuing Agent or the Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

    3.   Mechanics' and materialmen's liens in connection with your purchase or lease or construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B.    If the closing is to be conducted by an Issuing Agent or Approved Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Issuing Agent or Approved Attorney.

C.    When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D.    Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Approved Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E.    Claims shall be made promptly to the Company at its principal state office at 330 Naperville Road, Suite 101, Wheaton, Illinois 60187, or its principal office at 171 North Clark Street, Chicago, Illinois 60601. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F.    The protection herein offered does not extend to real property transactions in the states of Florida, Iowa, New Jersey, Nebraska, Kansas, New Mexico, New York and Texas. Closing Protection letters have been regulated under the laws of those states.

The protection herein offered will be effective and will continue until cancelled by Ticor Title Insurance Company.

Any previous insured closing service letter or similar agreement is hereby cancelled except as to closings of your real estate transactions regarding which you have previously sent (or within 30 days hereafter will send) written closing instructions to the Issuing Agent or Approved Attorney.

Yours truly,
Ticor Title Insurance Company

*Michael L. Hardegger*

Resident Vice President
Illinois Agency Services

# EXHIBIT 9



BLANK TITLE INSURANCE COMPANY

Name and Address of Addressee

Date:

Re:  Closing Protection Letter

Dear      :

When title insurance of Blank Title Insurance Company is specified for
your protection in connection with closings of real estate transactions in
which you are to be the lessee or purchaser of an interest in land or a lender
secured by a mortgage (including any other security instrument) of an interest
in land, the Company, subject to the Conditions and Exclusions set forth
below, hereby agrees to reimburse you for actual loss incurred by you in
connection with such closings when conducted by an Issuing Agent (an agent
authorized to issue title insurance for the Company) or an Approved Attorney
(an attorney upon whose certification of title the Company issues title
insurance) and when such loss arises out of:

1.  Failure of the Issuing Agent or Approved Attorney to comply with
    your written closing instructions to the extent that they relate
    to (a) the status of the title to said interest in land or the
    validity, enforceability and priority of the lien of said mortgage
    on said interest in land, including the obtaining of documents and
    the disbursement of funds necessary to establish such status of
    title or lien, or (b) the obtaining of any other document,
    specifically required by you, but not to the extent that said
    instructions require a determination of the validity,
    enforceability or effectiveness of such other document, or (c) the
    collection and payment of funds due you, or

2.  Fraud or dishonesty of the Issuing Agent or Approved Attorney in
    handling your funds or documents in connection with such closings.

If you are a lender protected under the foregoing paragraph, your
borrower in connection with a loan secured by a mortgage on a one to four
family dwelling shall be protected as if this letter were addressed to your
borrower.

Conditions and Exclusions

A.  The Company will not be liable to you for loss arising out of:

1.  Failure of the Approved Attorney to comply with your closing
    instructions which require title insurance protection
    inconsistent with that set forth in the title insurance
    binder or commitment issued by the Company.  Instructions
    which require the removal of specific exceptions to title or
    compliance with the requirements contained in said binder or

I

American Land Title Association

Closing Protection Letter & Explanation
Revised 3/27/87
Section VI-2

commitment shall not be deemed to be inconsistent.

2.  Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such shall result from failure of the Issuing Agent or the Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3.  Mechanics' and materialmen's liens in connection with your purchase or lease or construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B.  If the closing is to be conducted by an Approved Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Approved Attorney.

C.  When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed.  Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D.  Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Approved Attorney shall be limited to the protection provided by this letter.  However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E.  Claims shall be made promptly to the Company at its principal office at
    .  When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F.  The protection herein offered does not extend to real property transactions in .

The protection herein offered will be effective upon receipt by the Company of your acceptance in writing, which may be made on the enclosed copy hereof and will continue until cancelled by written notice from the Company.

Any previous insured closing service letter or similar agreement is hereby cancelled except as to closings of your real estate transactions

2

regarding which you have previously sent or within 30 days hereafter send
written closing instructions to the Issuing Agent or Approved Attorney.


                                            BLANK TITLE INSURANCE COMPANY

                                            BY:


                                            (Title)

Accepted: _____ , 2000


By:
                    (Title)

        (The name of a particular issuing agent or approved attorney may be inserted in lieu of reference to Issuing Agent or
        Approved Attorney contained in this letter and the words "Underwritten Title Company" may be inserted in lieu of
        Issuing Agent)

3

# EXHIBIT 10

 FIDELITY NATIONAL TITLE INSURANCE COMPANY

ATTENTION:
AmeriQuest Mortgage Company
its successors and/or assigns

1100 Town and Country Rd , #200
Orange, CA 92868

RE:

DATE: 10/5/2005
ISSUING AGENT OR APPROVED ATTORNEY:

Law Office of George T. Crowley
304 Cambridge Road, Suite 202
Woburn, MA 01801-

To Whom It May Concern:

When title insurance of Fidelity National Title Insurance Company (Company) is specified for your protection in connection with closings of  real estate transactions in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by an Issuing Agent (an agent authorized to issue title insurance for the Company) or an Approved Attorney (an attorney who has been certified by the Company to perform title examinations and settlement services) and when such loss arises out of:

1.  Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a)  the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of such title documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the  validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or

2.  Fraud of said Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closings to the extent such fraud or dishonesty affects the status of the title to said interest in land, or the validity, enforceability or priority of the lien of said mortgage on said interest in land.

If you are a lender protected under the foregoing paragraph, your borrower in connection with a loan secured by a mortgage on a one to four  family dwelling shall be protected as if this letter were addressed to your borrower.

Conditions and Exclusions

A.  The Company will not be liable to you for loss arising out of:

1.  Failure of an Issuing Agent or Approved Attorney to comply with your closing instructions which require title insurance  protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company.  Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed  to be inconsistent.

2.  Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency  or suspension, except such as shall result from failure of the Issuing Agent or the Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3.  Mechanics and materialmens  liens in connection with your purchase or lease or construction loan transactions, except to the  extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the  Company.

B.  If the closing is to be conducted by an Issuing Agent or Approved Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Issuing Agent or Approved Attorney.

C.  When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed.  Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of  subrogation.

D.  The Issuing Agent or Approved Attorney is not the Companys agent for the purpose of providing closing services.  Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Approved Attorney shall be limited to the protection provided by this letter, which does not include liability for loss resulting from the fraud or bad faith of any party to a real estate transaction other than an Issuing Agent or Approved Attorney, the lack of creditworthiness of any borrower connected with a real estate transaction or the failure of any collateral to adequately secure a loan connected with a real estate transaction. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E.  Claims shall be made promptly to the Company at its principal office at P.O. Box 45023 Jacksonville, Florida 32232-5023.  When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such  prejudice.

Your delivery of funds or documents to an Issuing Agent or Approved Attorney for a closing covered by this letter shall constitute your agreement to the terms and conditions herein  stated.

Any previous closing protection letter or similar agreement is hereby cancelled except as to closings of your real estate transactions regarding which you have previously sent or within 30 days hereafter send written closing instructions to the Issuing Agent or Approved  Attorney.

Fidelity National Title Insurance Company

By:

Robin Smith VP, Title Administration



# TICOR TITLE INSURANCE COMPANY
## OF FLORIDA

Attention: Closing Dept.
Lender's Address:
Ameriquest Mortgage Company
1100 Town and Country Road, Ste 200
Orange, CA 92868

August 3, 2005
ISSUING AGENT OR APPROVED ATTORNEY
First Merit Settlement Services, Inc.
1340 Brighton Road
Beaver, PA 15009-9238

Re:

To Whom It May Concern:

When title insurance of Ticor Title Insurance Company Of Florida (Company) is specified for your protection in connection with closings of real estate transactions in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by an Issuing Agent (an agent authorized to issue title insurance for the Company) or an Approved Attorney (an attorney who has been certified by the Company to perform title examinations and settlement services) and when such loss arises out of:

1. Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of such title documents and the disbursement of funds necessary to establish such status of title or lien. or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you. or

2. Fraud of said Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closings to the extent such fraud or dishonesty affects the status of the title to said interest in land. or the validity, enforceability or priority of the lien of said mortgage on said interest in land.

If you are a lender protected under the foregoing paragraph, your borrower in connection with a loan secured by a mortgage on a one to four family dwelling shall be protected as if this letter were addressed to your borrower.

Conditions and Exclusions

A.  The Company will not be liable to you for loss arising out of:

1. Failure of an Issuing Agent or Approved Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension. except such as shall result from failure of the Issuing Agent or the Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3. Mechanics and materialmens liens in connection with your purchase or lease or construction loan transactions. except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B.  If the closing is to be conducted by an Issuing Agent or Approved Attorney. a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Issuing Agent or Approved Attorney.

C.  When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D.  The Issuing Agent or Approved Attorney is not the Company's agent for the purpose of providing closing services. Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Approved Attorney shall by limited to the protection provided by this letter, which does not include liability for loss resulting from the fraud or bad faith of any party to a real estate transaction other than an Issuing Agent or Approved Attorney. the lack of creditworthiness of any borrower connected with a real estate transaction or the failure of any collateral to adequately secure a loan connected with a real estate transaction. However. this letter shall not affect the protection afforded by a title insurance binder. commitment or policy of the Company.

E.  Claims shall be made promptly to the Company at its principal office at P.O. Box 45023 Jacksonville. Florida 32232-5023. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

Your delivery of funds or documents to an Issuing Agent or Approved Attorney for a closing covered by this letter shall constitute your agreement to the terms and conditions herein stated.

Any previous closing protection letter or similar agreement is hereby cancelled except as to closings of your real estate transactions regarding which you have previously sent or within 30 days hereafter send written closing instructions to the Issuing Agent or Approved Attorney.

Ticor Title Insurance Company Of Florida

By:

George Daniels, SVP Chief Underwriting Counsel

LETTER ID: 2005.4.28.10.54.14124
750 Holiday Drive, 6th Floor Foster Plaza Bldg. 9 - Pittsburgh - PA - 15220- - Telephone (412) 920-4700 - Fax (412) 920-4701
STANDARD CPL LETTER (CPL-21)

(IN)



140 E. Washington Street
Indianapolis, IN 46204
317-633-2933
Fax 317-633-6275

Date: October 14, 2005

To: Ameriquest Mortgage Company
1100 Town and Country Rd.
Orange, CA 92868

Re: Closing Protection Letter for Title First 400 Agency, LLC
Contact: Lisa Himes
555 S. Front Street
Columbus, OH 43215

When the above referenced company is specified in connection with closing of real estate transactions in which you are the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, and such interest is the subject of a title insurance policy issued by this Company, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closing, when such closings are conducted by the above referenced company and where such loss arises out of:

A. Failing of the above referenced company to comply with your written closing instructions to the extent that they relate to (1) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including obtaining of such documents as are necessary to establish such status of title or lien, or (2) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (3) the collection and payment of funds due you, or

B. Fraud or dishonesty of the above referenced company in handling your funds or documents in connection with such closing.

If you are a lender protected under the foregoing paragraph, your borrower in connection with the loan secured by a mortgage on a one to four family dwelling shall be protected as if this letter were addressed to your borrower.

Conditions and Exclusions:

A. The Company will not be liable to you for loss arising out of:
   1. Failure of the above referenced company to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal, subordination, rewording of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.
   2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except as shall result from failure of the above referenced company to comply with your written closing instructions to deposit the funds in a bank which you designate by name.
   3. Mechanics' and materialmen's liens in connection with your purchase or lease or construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.
B. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.
C. Any liability of the Company for loss incurred by you in connection with closing of real estate transactions by the above referenced company shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.
D. Claims shall be made promptly to the Company at its principal office at 101 Gateway Centre Parkway, Gateway One, Richmond, VA 23235. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

Any previous insured closing service letter or similar agreement is hereby canceled except as to closings of your real estate transactions regarding which you have previously sent or within thirty (30) days hereafter send written closing instructions to the above referenced company.

Countersigned:

LAWYERS TITLE INSURANCE CORPORATION

By: _____
Authorized Officer or Agent

By: _____
Bryan D. Steckler
Area Agency Manager

Closing Protection Letter
Form 1167-39

**ORIGINAL**

B-AMQ0169156

 **LandAmerica Lawyers Title**

Lawyers Title Insurance Corporation
101 Gateway Centre Parkway
Richmond, VA 23235
phone: 804 267-8000
www.landam.com

August 15, 2005

Ameriquest
10600 White Rock, Suite 200
Rancho Cordova, CA 95670

Re:     Closing Protection Letter

Ladies and Gentlemen:

We are enclosing our Closing Protection Letter in which this service is being offered to you in connection with any of your real estate transactions which may be closed by our Issuing Agents or Approved Attorneys.

This service will be furnished without additional charge. It will only be necessary for you to accept the service by signing the copy of the letter and returning it to us in order for the coverage to become effective.

You will note that the enclosed letter provides protection regarding the closings of any of our Issuing Agents and Approved Attorneys except in the excluded jurisdictions in this letter. You may rely on an assurance from any Branch Office of the Company advising that a particular firm or individual is an Issuing Agent of this Company. You may also rely on an assurance (which may be made on the face of a binder or commitment) from any Issuing Agent or Branch Office advising that a particular law firm or individual attorney is on our list of Approved Attorneys.

LandAmerica OneStop, Inc. – "Branch Office"
600 Clubhouse Drive
Suite 400
Moon Township, PA 15108

Sincerely,

Sheila Kagi
Insured Closing Service
Administrator

cc:     Aaron Miller / 412-507-2378



**LandAmerica**
**Lawyers Title**

Lawyers Title Insurance Corporation
101 Gateway Centre Parkway
Richmond, VA 23235
phone: 804 267-8000
www.landam.com

Direct Dial (804)267-8152
Fax (804)267-8826

August 15, 2005

Ameriquest

Re: Closing Protection Letter

When title insurance of Lawyers Title Insurance Corporation is specified for your protection in connection with closings of real estate transactions in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by an Issuing Agent (an agent authorized to issue title insurance for the Company) or an Approved Attorney (an attorney upon whose certification of title the Company issues title insurance) and when such loss arises out of:

1.  Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or

2.  Fraud or dishonesty of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closings.

If you are a lender protected under the foregoing paragraph, your borrower in connection with a loan secured by a mortgage on a one-to-four family dwelling shall be protected as if this letter were addressed to your borrower.

<u>Conditions and Exclusions</u>

A. The Company will not be liable to you for loss arising out of:

1.  Failure of the Approved Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title, or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2.  Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or the Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3.  Mechanics' and materialmen's liens in connection with your purchase or lease or construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

Page 2

B.  If the closing is to be conducted by an Approved Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Approved Attorney.

C.  When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D.  Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Approved Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E.  Claims shall be made promptly to the Company at its principal office at P.O. Box 27567, Richmond, Virginia 23261. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F.  The protection herein offered does not extend to real property transactions in the States of Florida, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Texas, North Carolina, Vermont and Virginia.

The protection herein offered will be effective upon receipt by the Company of your acceptance in writing, which may be made on the enclosed copy hereof and will continue until cancelled by written notice from the Company.

Any previous Insured Closing Service letter or similar agreement is hereby cancelled, except as to closings of your real estate transactions regarding which you have previously sent (or within 30 days hereafter send) written closing instructions to the Issuing Agent or Approved Attorney.

LAWYERS TITLE INSURANCE CORPORATION

Sandra A. Bray
Insured Closing Service Supervisor
and Assistant Secretary

Accepted: _____, 20_____

Ameriquest

By _____     _____
                                              Title

_____
Please Print Name of Individual Signing Above

ALTA Closing Protection Letter



COMMONWEALTH LAND TITLE INSURANCE COMPANY
11 Light Street, Suite 500 Baltimore, MD 21202
(410) 752-7070 / FAX (410) 752-7043
77 S. Washington Street, Suite 305 Rockville, MD 20850
(301) 424-3577 / FAX (301) 424-3860

October 14, 2005

Ameriquest Mortgage Company

PO Box 11056
Orange , CA 92856

RE:   Closing Protection Letter

**Issuing Agent:** Custom Title & Escrow, Inc.
7201 Wisconsin Ave, Suite 650
Bethesda, MD 20814
Contact: Seth G. Levine
Phone: 301-251-0075 Fax: 240-597-0225

**File No.:**
**Borrower:**
**Premises:**

Ladies and Gentlemen:

When title insurance of Commonwealth Land Title Insurance Company is specified for your protection in connection with closings of real estate transactions in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by an Issuing Agent (an agent authorized to issue title insurance for the Company) or an Approved Attorney (an attorney upon whose certification of title the Company issues title insurance ) and when such loss arises out of:

1.   Failure of the Issuing Agent or Approved Attorney to comply with your written closings instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such document, or (c) the collection and payment of funds due you, or

2.   Fraud or dishonesty of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closings.

If you are a lender protected under the foregoing paragraph, your borrower in connection with a loan secured by a mortgage on a one-to-four family dwelling shall be protected as if this letter were addressed to your borrower.

Conditions and Exclusions

A.   The Company will not be liable to you for loss arising out of:

1.   Failure of the Approved Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

B-AMQ0168475

2.   Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or the Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3.   Mechanics' and materialmen's liens in connection with your purchase or lease or construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B.   If the closing is to be conducted by an Approved Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Approved Attorney.

C.   When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D.   Any liability of the Company for loss incurred by you in connection with closings of real estate transactions by an Issuing Agent or Approved Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

E.   Claims shall be made promptly to the Company at its principal office at P.O. Box 27567, Richmond, Virginia 23261. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

F.   The protections herein offered does not extend to real property transactions in the States of Florida, Iowa, New Hampshire, New Jersey, New Mexico, New York, Pennsylvania, Texas, Vermont and Virginia.

Any previous Insured Closing Service letter or similar agreement is hereby canceled, except as to closings of your real estate transactions regarding which you have previously sent (or within 30 days hereafter send) written closing instructions to the Issuing Agent or Approved Attorney.

*COMMONWEALTH LAND TITLE INSURANCE CORPORATION*

Peter Smith
Vice President & Maryland Agency Manager

NT/nc

*ALTA Closing Protection Letter*

B-AMQ0168476



*140 E. WASHINGTON STREET | Indianapolis, IN 46204*
*317-635-1931 | fax 317-635-6375*

**LandAmerica**
**Transnation**

Date: 10/02/2003

To: Argent Mortgage Company, LLC
It's Successors and/or Assigns As Their Interest May Appear
2550 W. Golf Road East Tower 9th Floor
Rolling Meadow, IL 60008

Attention:

Re:

Commitment/Case No.:

When the above referenced company is specified in connection with closing of real estate transactions in which you are the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, and such interest is the subject of a title insurance policy issued by this Company, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closing, when such closings are conducted by the above referenced company and when such loss arises out of:

A.  Failing of the above referenced company to comply with your written closing instructions to the extent that they relate to (1) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including obtaining of such documents as are necessary to establish such status of title or lien, or (2) the obtaining of any other document, specifically required by you, but not to the extent that said instructions restore a determination of the validity, enforceability or effectiveness of such other document, or (3) the collection and payment of funds due you, or

B.  Fraud or dishonesty of the above referenced company in handling your funds or documents in connection with such closing.

If you are a lender protected under the foregoing paragraph, your borrower in connection with the loan secured by a mortgage on a one to four family dwelling shall be protected as if this letter were addressed to your borrower.

Conditions and Exclusions:

A.  The Company will not be liable to you for loss arising out of:
  1.  Failure of the above referenced company to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal, subordination, rewording of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.
  2.  Loss or impairment of your funds in the course of collection or while on deposit with a bank, due to bank failure, insolvency or suspension, except as such result from failure of the above referenced company to comply with your written closing instructions to deposit the funds in a bank which you designate by name.
  3.  Mechanics' and materialmen's liens in connection with your purchase or lease or construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.
B.  When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for each reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.
C.  Any liability of the Company for loss incurred by you in connection with closing of real estate transactions by the above referenced company shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.
D.  Claims shall be made promptly to the Company at its principal office at 101 Gateway Centre Parkway, Gateway One, Richmond, VA 23235. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

Any previous issued closing services letter or similar agreement is hereby canceled except as to closings of your real estate transactions regarding which you have previously sent or within thirty (30) days hereafter send written closing instructions to the above referenced company.

Countersigned: ARCHER LAND TITLE, INC.                    TRANSNATION TITLE INSURANCE COMPANY
*See Attached Schedule A for List of Offices

By: _____                              By: _____
Authorized Officer or Agent                                  Bryan D. Swelzer, Agency Manager

Closing Protection Letter
Form 1197-38                                ORIGINAL

OO-FCLG003057

# EXHIBIT 11

American Land Title Association

Closing Protection Letter—Single Transaction Limited Liability
Adopted 10/17/98
Section VI-2(c)

## BLANK TITLE INSURANCE COMPANY



Name and Address of Addressee:

Date:

Name of Issuing Agent or Approved Attorney (hereafter. "Issuing Agent" or "Approved Attorney", as the case may require):

*[Identity of settlement agent and status as either Issuing Agent or Approved Attorney appears here.]*

Transaction (hereafter. "the Real Estate Transaction"):

Re:  Closing Protection Letter

Dear:

      You have requested title insurance of Blank Title Insurance Company  for your protection in connection with the closing of the Real Estate Transaction conducted by the Issuing Agent or the Approved Attorney [and] in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land.  If the aggregate of all funds you transmit to the Issuing Agent or Approved Attorney for the Real Estate Transaction does not exceed $_____. the Company. subject to the Conditions and Exclusions set forth below. hereby agrees to reimburse you for actual loss incurred by you in connection with such closing when conducted by the Issuing Agent  or  Approved Attorney  and when such loss arises out of:

1.     Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity. enforceability and priority of the lien of said mortgage on said interest in land. including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien. or (b) the obtaining of any other document. specifically required by you. but not to the extent that said instructions require a determination of the validity. enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you. or

2.     Fraud or dishonesty of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closing.

      If you are a lender protected under the foregoing paragraph. your borrower in connection with a loan secured by a mortgage on a one-to-four family dwelling shall be protected as if this letter were addressed to your borrower.

Conditions and Exclusions

A.     The Company will not be liable to you for loss arising out of:

1.     Failure of the Approved Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company.  Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.

2.     Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure.

1

American Land Title Association

Closing Protection Letter—Single Transaction Limited Liability
Adopted 10/17/98
Section VI-2(c)

insolvency or suspension, except as shall result from failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

3.      Mechanics' and materialmen's liens in connection with the Real Estate Transaction if it is a purchase or lease or construction loan transaction, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.

B.      If the closing is conducted by an Approved Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Approved Attorney.

C.      When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

D.      The protection herein offered shall not extend to the actions of the Issuing Agent or Approved Attorney if the aggregate of all funds you transmit to the Issuing Agent or Approved Attorney for the Real Estate Transaction exceeds the amount set forth on the first page of this letter and the Company shall have no liability for the mishandling of all or any part of such funds by the Issuing Agent or Approved Attorney except pursuant to an express written agreement between you and the Company made with reference to the Real Estate Transaction.

E.      Any liability of the Company for loss incurred by you in connection with the closing of the Real Estate Transaction by the Issuing Agent or Approved Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of the Company.

F.      Claims shall be made promptly to the Company at its principal office at _____. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.

     The protection herein offered will be effective upon receipt by the Company of your acceptance of the terms of this letter in writing, which may be made on the enclosed copy hereof, or by your transmission of documents or funds to the Agent or Approved Attorney for the Real Estate Transaction subsequent to your receipt of this letter, which will constitute such acceptance, and will continue unless canceled by written notice from the Company. Cancellation shall not extinguish the obligation of the Company hereunder with respect to acts or omissions of the Issuing Agent or Approved Attorney occurring prior thereto.

     Any previous insured closing service letter or similar agreement is hereby canceled with respect to the Real Estate Transaction.

Accepted: ____(Date)_____

By: _____
                              (Title)

BLANK TITLE INSURANCE COMPANY

BY: _____
                              (Title)

(The words "Underwritten Title Company" may be inserted in lieu of Issuing Agent)

2

# EXHIBIT 12

　
10/20/2005  15:11    7177350668                    MIDDLE ATLANTIC                    PAGE  20/33

 

# TICOR TITLE INSURANCE COMPANY

ATTENTION:                                          DATE:10/19/2005
Ameriquest Mortgage Company                         ISSUING AGENT OR APPROVED ATTORNEY:
its successors and/or assigns

9000 Brooktree Road Suite 150                       Middle Atlantic Settlement Services, LLC
Wexford, PA 15090                                   1817 Olde Homestead Lane, Ste. 204
                                                    Lancaster, PA 17601-
RE:

To whom it may concern:

When title insurance of Ticor Title Insurance Company (Company) is specified for your protection in connection with the closing of the above described real estate transaction (the Closing) in which you are to be a lender secured by a mortgage of an interest in land, the Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with the Closing when conducted by the above named Issuing Agent (an agent authorized to issue title insurance for the Company) or the above named Approved Attorney (an attorney upon whose certification of title the Company issues title insurance) and when such loss arises out of:

1.  Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such title or lien; or (b) the collection and payment of funds due you; or

2.  Fraud or misapplication of the Issuing Agent or Approved Attorney in handling your funds in connection with the matters set forth in numbered paragraph 1 above.

Conditions and Exclusions

A.  The Company will not be liable to you for loss arising out of:
    1.  Failure of the Approved Attorney to comply with your closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent.
    2.  Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of the Issuing Agent or the Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.
    3.  Mechanics' and materialmen's liens in connection with a construction loan transaction, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the Company.
B.  If the Closing is to be conducted by an Approved Attorney, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Approved Attorney.
C.  Should the Company reimburse you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property held you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.
D.  Any liability of the Company for loss incurred by you in connection with the Closing by an Issuing Agent or Approved Attorney shall be limited solely to the protection provided by this letter.
E.  Liability under this letter is limited to the amount of the policy of title insurance to be issued, and any payment of loss under this letter shall constitute a payment under the policy.
F.  Claims shall be made promptly to the Company at its office at P.O. Box 45023 Jacksonville, Florida 32232-5023. When the failure to give prompt notice shall prejudice the Company, then liability of the Company hereunder shall be reduced to the extent of such prejudice.
G.  The Company shall not be liable hereunder unless notice of claim in writing is received by the Company within one year from the date of the Closing.
H.  This letter does not appoint the above named Approved Attorney, if any, as an agent of the Company.
I.   The scope and effect of this Letter is limited to a single transaction, which is the Closing on the commitment or binder referenced in the caption.

                                                    Ticor Title Insurance Company

                                                    By:

                                                    Paul Petersen, VP Senior Staff Underwriter

                    LETTER ID: 2005.10.19.15.16.127998
750 Holiday Drive, 5th Floor/Foster Plaza Bldg. 9 - Pittsburgh - PA - 15220- - Telephone (412) 920-4700 - Fax (412) 920-4701
                    PENNSYLVANIA SPECIFIC CPL LETTER (CPL-16)



EXHIBIT
Scott 35
30(b)(6) 2/4/10
PENGAD 800-631-6989

# EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. ) | Lead Case No. 05 C 7097 |
| MORTGAGE LENDING PRACTICES LITIGATION ) | |
| ———————————————————— ) | |
| ) | |
| THIS DOCUMENT RELATES TO ALL ACTIONS ) | Centralized before |
| ———————————————————— ) | The Hon. Marvin E. Aspen |

## JOINT DISCOVERY PLAN AND
## SCHEDULING ORDER

A conference of the parties was conducted pursuant to Federal Rule of Civil Procedure 26(f) and this Court's July 23, 2009 Order, and attended by (a) members of the Steering Committees for the Opt-Out Plaintiffs; (b) members of the Steering Committee for the Third-Party Defendants, including Liaison Counsel for the Third-Party Defendants; and (c) counsel for the Defendants, (collectively "Representative Counsel"). In accordance with Rule 26(f), the parties hereby submit the following Joint Discovery Plan and Proposed Scheduling Order and request that this Court enter an Order Adopting the Joint Discovery Plan and Proposed Scheduling Order.

1.    **Discovery.**

(a)    Each Opt-Out Plaintiffs' claim centers in large part on the closing documents for the home mortgage loan which each Opt-Out Plaintiff seeks to rescind (the "Loan Documents"). The relevant Loan Documents at issue may be in the possession, custody, or control of any of the Opt-Out Plaintiff(s), the Defendant(s), and/or the Third-Party Defendant(s). In addition

BN 4346319v1                                                                to

the timing and protocols for the exchange of the Loan Documents between the Defendants and the Third-Party Defendants which are set forth in this Court's July 23, 2009 order, the parties have agreed to exchange the Loan Documents in their respective possession, custody or control.

(b)      With respect to each opt-out claim, each Opt-Out Plaintiff who has not already done so shall have thirty (30) days from the date of this Scheduling Order to produce to the Defendants any Loan Documents in the Opt-Out Plaintiffs possession, custody, or control. Within fourteen (14) days of receipt of an Opt-Out Plaintiffs Loan Documents, or at the time set forth in the Court's July 23, 2009 order, whichever is later, the Defendant(s) shall provide the relevant Third-Party Defendant(s) with a copy of the Opt-Out Plaintiffs Loan Documents. Within twenty-eight (28) days of receipt of an Opt-Out Plaintiffs Loan Documents from that Opt-Out Plaintiff, Defendants shall produce to each Opt-Out Plaintiff who so requests copies of the relevant Loan Documents in its possession, as well as the Loan Documents, if any, that have been produced by that time by the relevant Third-Party Defendant(s). If Defendants receive Loan Documents from the relevant Third Party Defendant(s) at a later time, they shall produce them to that Opt-Out Plaintiff within fourteen (14) days of receipt from the Third-Party Defendant(s). (The timing and protocols for the exchange of the Loan Documents between the Defendants and the Third-Party Defendants, as well as for an exchange of any agreements between the Defendants and the Third-Party Defendants which those parties believe may govern the rights and obligations at issue, is governed by this Court's July 23, 2009 Order.) In addition, within 30 days of a

request for the same, the Defendants shall produce to the Opt-Out Plaintiffs such additional documents that the Opt-Out Plaintiffs reasonably require in order to prepare for, and participate in, the forthcoming mediation(s), provided that such documents are in Defendants' possession, custody, or control and not otherwise privileged.

(c)     With respect to each Opt-Out Plaintiffs claim, within fourteen (14) days of completion of the document exchange contemplated in this Court's July 23, 2009 Order, the Third-Party Plaintiffs shall identify to each Third-Party Defendant, by Bates number, any and all contracts upon which its claim against that Third-Party Defendant is based. Within fourteen (14) days of receipt of that information, (and without conceding that the documents identified by the Defendants constitute a "contract" between the parties), the Third-Party Defendant(s) shall identify by Bates number any contract(s) or agreement(s) with the Third-Party Defendants relating to the corresponding plaintiffs or plaintiffs' loan.

(d)     The exchange described in Sections (b) and (c) above and in this Court's July 23, 2009 Order shall satisfy each party's obligations under Federal Rule of Civil Procedure 26(a). No other discovery shall be conducted in this MDL proceeding with respect to Plaintiffs' opt-out claims and the corresponding Third Party claims, until the completion of mediation proceedings, as set forth in Section 2 below.

2.     **Mediation.**  As soon as practicable, after all of the following events have occurred:  (i) this Court has ruled on the Third-Party Defendants' Motion to Dismiss Fifth Amended Consolidated Third-Party Complaint; (ii) at least 100 Opt-Out Plaintiffs have

provided to the Defendants and the corresponding Third-Party Defendant(s) a numerical computation of the value of his or her rescission claim; (iii) the Defendant(s) have disclosed to the Third-Party Defendants the terms of any class action settlement, or the class action has been otherwise resolved; (iv) the time has passed for the Defendants to add any new Third-Party Claims; and (v) if the Third-Party Defendants' have sought leave to file a Sixth Amended Third-Party Complaint, the Court's ruling on any motion to dismiss that pleading; the parties, through their Representative Counsel, shall participate in a mediation designed to devise a procedure for settling the Opt-Out Plaintiffs' claims in a systematic way. Within twenty-one (21) days of the date of this Scheduling Order the parties, through their Representative Counsel, may provide to each other their proposal as to how such mediation should be structured.

WHEREFORE, the parties request that this Court enter an Order Adopting the Joint Discovery Plan.

Dated: September 2 , 2009

By: Charles M. Delbaum

*Attorneys for Certain Opt-Out Plaintiffs*
Charles M. Delbaum
National Consumer Law Center
10th Floor
77 Summer Street
Boston, Massachusetts 01220
(617) 266-0313

Dated: September 2, 2009
*Attorneys for Certain Opt-Out Plaintiffs*

By Daniel S. Blinn

Daniel S. Blinn Consumer Law Group
Suite 512
35 Cold Spring Road
Rocky Hill, Connecticut 06067

(860) 571-0408

Dated: September 2, 2009                By Thomas J. Wiegand _____
*Attorneys for Argent Mortgage Company, LLC*

                                        Thomas J. Wiegand
                                        Winston & Strawn LLP
                                        35 West Wacker Drive
                                        Chicago, Illinois 60601-9703
                                        (312) 558-5947

Dated: September 2, 2009                By _ Bernard E. LeSage _____
*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; Ameriquest Mortgage Securities, Inc.; CitiFinancial Mortgage; CitiResidential Lending Inc.; Deutsche Bank National Trust Company, as Trustee; HSBC Mortgage Services Inc.; GMAC ResCap; Barclays Capital; US Bank, Litton Loan Servicing; Merrill Lynch Credit Corp.; Wells Fargo Bank, as Trustee; WMSpecialty Mortgage LLC; Countrywide; Wilshire Credit Corp., and Bank of NY Trust Co.*

                                        Bernard E. LeSage
                                        Sarah K. Andrus
                                        Buckalter Nemer, a Professional Corporation
                                        Suite 1500
                                        1000 Wilshire Boulevard
                                        Los Angeles, California 90017-2457
                                        (213) 891-5230

September 2 , 2009                      By: David J. Chizewer
                                        *Liaison Counsel for Third-Party Defendants*

                                        David J. Chizewer
                                        Goldberg Kohn Bell Black
                                        Rosenbloom & Moritz, Ltd.
                                        Suite 3300
                                        55 East Monroe Street
                                        Chicago, Illinois 60603
                                        (312) 201-3938

**IT IS SO ORDERED.**

_Morton Denlow_

The Honorable Morton Denlow

Dated: 12/14/2009