2/3/2010 Scott, David (30(b)(6) Vol. I)

1        IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF ILLINOIS

3           EASTERN DIVISION

4

5   ROSE TERRY, et al.,    )

6      Plaintiffs,   )

7      vs.     ) No. 08 CV 2475

8   AMERIQUEST MORTGAGE COMPANY, )

9   et al.,      )

10     Defendants.   )

11

12      Videotaped Deposition of DAVID SCOTT,

13  taken before GREG S. WEILAND, CSR, RPR, pursuant to

14  Rule 30(b)(6) of the Federal Rules of Civil

15  Procedure for the United States District Court

16  pertaining to the taking of depositions, at

17  Suite 3700, 180 North Stetson Avenue, in the City of

18  Chicago, Cook County, Illinois, commencing at 9:08

19  o'clock a.m., on the 3rd day of February, 2010.

20

21        VOLUME 1

22        PAGE 1 - 197

23

24

25

1    that if you revised the base form of the closing

2    protection letter and customized it for a situation,

3    would you have saved that customized closing

4    protection letter as a different document that you

5    would have maintained?

6        A.   As I said, only, in my case, only if I

7    thought that we may get a request for -- a second

8    request for the same revision.

9        Q.   Okay.

10       A.   We didn't save an electronic copy of every

11   one that we sent out.

12       Q.   Okay.  You also mentioned that the

13   Fidelity National Financial Corporate Underwriting

14   department would issue closing protection letters on

15   behalf of Ticor during the 2004 to 2006 time period;

16   is that correct?

17       A.   Yes, that's correct.

18       Q.   What is the process by and which closing

19   protection letters were issued on behalf of Ticor

20   from the Corporate Underwriting department?

21       A.   My understanding of it is that if a

22   operation -- are we still restricting ourselves to

23   Illinois, or anywhere?  Well, I'll say anywhere.

24           If a field operation somewhere in the

25   country received a request for a closing protection

1    letter for instance in the form of a blanket letter

2    or a global letter or a master letter or also even a

3    transaction-specific letter but revised in such a

4    substantial way that, for instance, Mike or I would

5    say, you know -- you know, normally our first answer

6    to that kind of a question would just be no.  If we

7    got a request from an agent and they said we wanted

8    to -- we wanted -- we have a lender that wants to

9    delete the third paragraph of the closing protection

10   letter, we'd say no.

11        Then if they said they really want to make

12   a request for this, then we would refer either the

13   agent or the lender, and I'm assuming this is --

14   that a similar process happens in the rest of the

15   country, we would refer the agent or the lender to

16   Corporate Underwriting, and we would tell them this

17   kind of request has to be approved through Corporate

18   Underwriting.

19        I don't really have a lot of specifics

20   about what Corporate Underwriting's process is

21   beyond just the assumption that someone in Corporate

22   Underwriting reviews the request, determines it to

23   either be acceptable or not, and if it's acceptable,

24   then I would presume they'd produce a letter in

25   somewhat the same fashion that Mike or I would at

**2/3/2010  Scott, David (30(b)(6) Vol. I)**

1    in form, correct?

2        MR. FOWERBAUGH:  That's not the same

3    question you asked before, so I think it's

4    misstating his prior testimony.  Your prior question

5    involved Illinois law.  Your now question is more

6    broad.

7        THE WITNESS:  I am not aware of any

8    restrictions relative to blanket closing protection

9    letters applied by Illinois law.  My understanding

10    based on my conversations with local underwriting

11    counsel is that closing protection letters -- is

12    that requests for closing protection letters are to

13    be -- requests for blanket closing protection

14    letters are to be directed through Corporate

15    Underwriting.

16    BY MS. DAVIES:

17    Q.  As you sit here today, do you know whether

18    an issuing agent in Illinois could go onto agentTRAX

19    and issue a closing protection letter leaving the Re

20    or Agent File Number field blank and whether Ticor

21    would consider that to be a blanket closing

22    protection letter?

23        MR. FOWERBAUGH:  Objection, beyond the

24    scope and compound.

25        THE WITNESS:  My understanding as we sit

2/4/2010  Scott, David (30(b)(6) Vol. II)

```
 1            IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF ILLINOIS

 3                  EASTERN DIVISION

 4

 5   ROSE TERRY, et al.,        )

 6          Plaintiffs,      )

 7          vs.           ) No. 08 CV 2475

 8   AMERIQUEST MORTGAGE COMPANY, )

 9   et al.,               )

10          Defendants.      )

11

12          Continued Videotaped Deposition of

13   DAVID SCOTT, taken before GREG S. WEILAND, CSR, RPR,

14   pursuant to Rule 30(b)(6) of the Federal Rules of

15   Civil Procedure for the United States District Court

16   pertaining to the taking of depositions, at

17   Suite 3700, 180 North Stetson Avenue, in the City of

18   Chicago, Cook County, Illinois, commencing at 9:14

19   o'clock a.m., on the 4th day of February, 2010.

20

21              VOLUME 2

22              PAGE 198 - 374

23

24

25
```

**2/4/2010  Scott, David (30(b)(6) Vol. II)**

1        The document previously marked as Scott

2    Exhibit 16, which has a Bates number of TICOR1751

3    through 1752, is based on a template effective

4    July 28, 2004.

5        The document marked as Scott Exhibit 17

6    with Bates numbers TICOR1753 through 1754 is

7    generated on a template that has an effective date

8    of November 8, 2004.

9        The document marked, excuse me, as Scott

10    Exhibit 19 with Bates numbers TICOR1755 through 1756

11    have a -- is a letter generated on a template with

12    an effective date of July -- I'm sorry, January 4,

13    2005.

14        The document previously marked as Scott

15    Exhibit 20 with Bates numbers TICOR1757 through 1759

16    is a letter generated on a template with an

17    effective date of September 8, 2005.

18        The document previously marked as Scott

19    Exhibit 21 with Bates numbers TICOR1760 through 1762

20    is a letter generated on a template with an

21    effective date of February 21, 2006.

22        And the document previously marked as

23    Scott Exhibit 22 is a -- with Bates number 1763

24    through 1765 is a letter generated on a template

25    with an effective date of April 16, 2006, and that

207

1    template was effective through the end of 2006, and

2    current information shows that template was

3    effective through June 24, 2008.

4         And I would again just preface that these

5    are letters generated by Ticor for Illinois

6    transactions.

7    BY MS. DAVIES:

8      Q.  Mr. Scott, does Ticor adopt the

9    representations made by its counsel as to the

10   effective dates of the templates produced in this

11   litigation?

12     A.  Yes.

13     Q.  Okay.  I'm just sure your counsel didn't

14   want to be a witness in the future, so I thought it

15   was important that Ticor itself adopt those

16   representations.

17        Would you please turn to previously marked

18   Exhibit Number 16, a letter dated August 24th,

19   2004, and if you would turn to Exhibit Number 9,

20   Bates number 1748.

21        If you see midway down the page, there's a

22   reference to Ameriquest and a creation date of a

23   closing protection letter of September 28, 2004.

24     A.  Yes.

25     Q.  Is it Ticor's testimony today that Exhibit

**2/4/2010  Scott, David (30(b)(6) Vol. II)**

1      A.  Correct.

2      Q.  Does Ticor allow its issuing agents to

3    issue blanket CPLs off of the agentTRAX website?

4         MR. FOWERBAUGH:  I'm going to object on

5    the grounds that, one, it's beyond the geographic

6    scope.  You're asking about Ticor without limit to

7    the State of Illinois.

8         THE WITNESS:  I would say that on this

9    agentTRAX system, the system appears to allow agents

10   throughout the country the option of issuing closing

11   protection -- blanket closing protection letters

12   subject to state regulatory restrictions and

13   underwriting procedures.

14   BY MS. DAVIES:

15     Q.  And Ticor testified yesterday that it's

16   not aware in the State of Illinois of any

17   restrictions on an issuing agent to issue a closing

18   protection letter in a form that's blanket, correct?

19        MR. FOWERBAUGH:  Objection, misstates his

20   prior testimony.

21        THE WITNESS:  In the State of Illinois, in

22   the State of Illinois, requests for closing

23   protection letters -- requests for blanket closing

24   protection letters, the procedure is to refer those

25   requests to Corporate Underwriting.

216

1     BY MS. DAVIES:

2         Q.  Is there anything -- strike that.

3             Is there anything in the letterTRAX user

4     manual that would direct an issuing agent in

5     Illinois to go to Corporate Underwriting if they

6     wanted to obtain a blanket closing protection

7     letter?

8         A.  Not to my knowledge.

9         Q.  You can set Exhibit Number 26 aside.

10            If the agentTRAX system as made available

11    to issuing agents in Illinois allowed issuing agents

12    to issue blanket closing protection letters, would

13    it be Ticor's position that that is authorized by

14    Ticor in the State of Illinois?

15            MR. FOWERBAUGH:  Objection, calls for

16    speculation.

17            THE WITNESS:  Well, again, I would say

18    that Ticor's position in the State of Illinois is

19    that requests for blanket closing protection letters

20    procedurally are referred to Corporate Underwriting.

21    BY MS. DAVIES:

22        Q.  Is Ticor aware of any communication or

23    instruction that it's provided to issuing agents in

24    Illinois that would say regardless of what agentTRAX

25    may allow you to do, if you want a blanket closing

217

2/4/2010  Scott, David (30(b)(6) Vol. II)

1    protection letter, you need to go to Corporate

2    Underwriting?

3        MR. FOWERBAUGH:  Objection, asked and

4    answered in prior days.

5        THE WITNESS:  I'm not aware of any such

6    communication.

7    BY MS. DAVIES:

8        Q.  In the course of preparing for your

9    deposition, were you made aware of the loans that

10   are at issue in this particular litigation?

11       MR. FOWERBAUGH:  Objection, vague.

12       But answer if you can.

13       THE WITNESS:  Only by reading the

14   materials which identified the loans.  I believe I

15   saw information relative to borrowers' names, loan

16   numbers, the title agent's file numbers, and other

17   than being made aware of the general subject of the

18   litigation, that would be the extent of my knowledge

19   relative to each specific loan.

20   BY MS. DAVIES:

21       Q.  Did Ticor perform any analysis to

22   determine whether any of the closing protection

23   letters that were issued by Northwest covered any of

24   the loans in the litigation that involved Northwest

25   Title?

**2/4/2010  Scott, David (30(b)(6) Vol. II)**

1      A.  Yes.

2      Q.  And who conducted that analysis?

3      A.  I did.

4      Q.  Okay.  And did Ticor also conduct an

5  analysis to determine whether any of the closing

6  protection letters issued by TriStar to Ameriquest

7  on behalf of Ticor covered any of the loans at issue

8  in the litigation?

9      A.  Yes.

10      Q.  So if I use the term "loans at issue in

11  the litigation," you'll understand those to mean the

12  loans that you were made aware of and the list,

13  et cetera, correct?

14      A.  Yes.

15      Q.  When you conducted your review to

16  determine whether any of the closing protection

17  letters issued by Northwest Title covered any of the

18  loans at issue in the litigation, what did you

19  determine?

20      A.  The determination was that there were no

21  closing protection letters issued in connection with

22  any of the specific loans in question.

23      Q.  And what steps did you go through in order

24  to conduct your analysis of whether there were any

25  applicable closing protection letters in connection

2/4/2010  Scott, David (30(b)(6) Vol. II)

1    with the loans related to Northwest in this

2    litigation?

3        A.   For each of the sets of data, for the data

4    produced for Northwest Title & Escrow and for the

5    data produced for TriStar Title, we conducted a

6    search based on the lender's name and then made a

7    cross-reference for any letters issued in the name

8    of Ameriquest Mortgage Company or any of the

9    variations of that name.  We cross-referenced that

10   information against the -- each of the title

11   companies' file numbers, also each of the borrowers'

12   names and also by the date of the transaction to

13   determine if there was any data that corresponded to

14   those original sets of data.

15        And relative to file numbers, borrower

16   names, there were some borrower names that were

17   common names that I believe we had a couple of

18   matches on.  Those matches were then cross-checked

19   against title company file numbers and found not to

20   be corresponding.  And I believe in two instances

21   there were letters issued that would have reflected

22   similar dates, but again, the other data on the

23   letters appeared to eliminate the possibility that

24   those were letters issued in connection with the

25   specific loan transactions.

220

2/4/2010  Scott, David (30(b)(6) Vol. II)

1      Q.  Okay.  But as we established earlier,

2   because you don't know what a blanket closing

3   protection letter looks like, you would have no way

4   yourself to determine whether a template that you

5   were looking at was consistent with a blanket

6   closing protection letter template or a

7   transaction-specific closing letter template,

8   correct?

9      A.  Well, and I believe that my answer to that

10  was that the letter was generated from the Illinois

11  Ticor Title website, and my understanding of Ticor

12  Title's Corporate Underwriting procedures in

13  Illinois was that blanket closing protection letters

14  were to be approved by Corporate Underwriting, and

15  our Corporate Underwriting department -- our

16  Corporate Underwriting department had stated that

17  there have been no blanket closing protection

18  letters issued to Ameriquest.

19     Q.  So other than someone telling you that no

20  blanket closing protection letters were issued, you

21  have no way yourself of reviewing a closing

22  protection letter to determine independently whether

23  it's a blanket closing protection letter or not,

24  correct?

25        MR. FOWERBAUGH:  Well, I'm going to

**2/4/2010  Scott, David (30(b)(6) Vol. II)**

1    BY MS. DAVIES:

2        Q.   And Exhibit Number 36 is largely similar

3    to Exhibit Number 20, correct?

4        MR. FOWERBAUGH:  Objection, asked and

5    answered.

6        THE WITNESS:  Correct.

7    BY MS. DAVIES:

8        Q.   But Ticor -- strike that.

9        Isn't Exhibit 20, the closing protection

10   letter issued to Ameriquest on October 8th, 2005,

11   by TriStar Title on behalf of Ticor Title Insurance

12   Company, also a blanket closing protection letter?

13       MR. FOWERBAUGH:  Objection, asked and

14   answered.  You asked this at least a day or so ago.

15       THE WITNESS:  In my capacity as an

16   individual, it is my belief that the --

17       MR. FOWERBAUGH:  Just -- I don't want to

18   interrupt, but since this is a Ticor Illinois

19   closing protection letter, you need to answer in the

20   corporate capacity.

21       THE WITNESS:  All right.  It is -- it's

22   Ticor Title's position that closing protection

23   letters generated on the Ticor Title -- on the

24   Illinois Ticor Title website, including

25   Exhibit Scott 20, are transaction-specific letters

2/4/2010  Scott, David (30(b)(6) Vol. II)

1      and that blanket closing protection letters,

2      requests for blanket closing protection letters

3      according to the underwriting policy of Ticor in

4      Illinois were to be directed to Corporate

5      Underwriting.

6      BY MS. DAVIES:

7         Q.  So even though you concede in your

8      individual capacity that Exhibit 36, which was

9      issued one day after Exhibit 20, is a blanket

10     closing protection letter, you are going to continue

11     to testify as Ticor's designated representative that

12     Exhibit 20, which is nearly identical in form, is

13     not a blanket closing protection letter?

14        MR. FOWERBAUGH:  Objection, asked and

15     answered.

16        THE WITNESS:  Yes.

17     BY MS. DAVIES:

18        Q.  And you believe that's reasonable?

19        MR. FOWERBAUGH:  Objection, argumentative,

20     beyond the scope of the deposition topic.

21        THE WITNESS:  Yes.

22        MS. DAVIES:  Let's take a break for lunch.

23        THE VIDEOGRAPHER:  Going off the record,

24     this marks the end of Tape Number 2, Volume 2, in

25     the deposition of David Scott.  Going off the record

**2/5/2010  Scott, David (30(b)(6) Vol. III)**

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF ILLINOIS

3               EASTERN DIVISION

4

5    ROSE TERRY, et al.,          )

6          Plaintiffs,       )

7          vs.           ) No. 08 CV 2475

8    AMERIQUEST MORTGAGE COMPANY, )

9    et al.,               )

10         Defendants.       )

11

12            Continued Videotaped Deposition of

13   DAVID SCOTT, taken before GREG S. WEILAND, CSR, RPR,

14   pursuant to Rule 30(b)(6) of the Federal Rules of

15   Civil Procedure for the United States District Court

16   pertaining to the taking of depositions, at

17   Suite 3700, 180 North Stetson Avenue, in the City of

18   Chicago, Cook County, Illinois, commencing at 9:09

19   o'clock a.m., on the 5th day of February, 2010.

20

21            VOLUME 3

22            PAGE 375 - 479

23

24

25

2/5/2010  Scott, David (30(b)(6) Vol. III)

1    Insurance Company.

2        MR. HARRIS:  Daniel Harris for Plaintiffs.

3        THE VIDEOGRAPHER:  Would the court

4    reporter please swear in the witness.

5            (Witness sworn.)

6        THE VIDEOGRAPHER:  Please proceed.

7

8            DAVID SCOTT

9    after being first duly sworn, testified as follows:

10        FURTHER CONTINUED EXAMINATION

11   BY MS. DAVIES:

12    Q.  Good morning, Mr. Scott.

13    A.  Good morning.

14    Q.  Your counsel advised me before we started

15   that there are some corrections that you wanted to

16   make to your testimony that you've given at least at

17   some point during the last few days as a 30(b)(6)

18   witness for Ticor.

19    A.  That's correct.  The corrections I would

20   like to make all relate to questions relative to the

21   agentTRAX system.  I had indicated previously that

22   the agentTRAX system was rolled out for operation in

23   February of 2006.  The correct date for that was

24   February of 2005.

25        I have also learned since my previous

1          And I believe -- I don't know if counsel

2     has questions for you.

3          MR. FOWERBAUGH:  Well, we will address

4     those other issues as they arise.

5          Can we just take a few minutes, and then I

6     may just have a couple of follow-up questions.

7          MS. DAVIES:  Certainly.

8          THE VIDEOGRAPHER:  Going off the record at

9     12:52 p.m.

10              (Whereupon, an off-the-record

11               discussion was held.)

12          THE VIDEOGRAPHER:  Going back on the

13     record at 12:58 p.m.

14          Please proceed.

15          MR. FOWERBAUGH:  I have just a few

16     follow-up questions.

17

18              FURTHER EXAMINATION

19     BY MR. FOWERBAUGH:

20       Q.  Mr. Scott, first of all, we've spent a

21     great deal of time looking at various data regarding

22     closing protection letters issued by Northwest Title

23     and TriStar, and I just have a couple questions on

24     that.

25              Were any Ticor closing protection letters

2/5/2010  Scott, David (30(b)(6) Vol. III)

1    issued to Ameriquest by TriStar using the agentTRAX

2    system?

3        A.  No.

4        Q.  How do you know?

5        A.  We asked for data from the agentTRAX

6    system administrator, and there were no such

7    letters.

8        Q.  Were any Ticor closing protection letters

9    issued to Ameriquest by Northwest Title using the

10    agentTRAX system?

11        A.  No.

12        Q.  And again, how do you know?

13        A.  We asked the agentTRAX administrator for

14    data relative to such letters, and there were none

15    found.

16        Q.  Okay.  You were asked a number of

17    questions regarding Ticor's and others' underwriting

18    guidelines regarding global protection letters.

19        A.  Correct.

20        Q.  My question --

21        MS. DAVIES:  Objection, misstates prior

22    questioning.

23        MR. FOWERBAUGH:  Okay, whatever.

24    BY MR. FOWERBAUGH:

25        Q.  Other than the documents you looked at,

**2/5/2010  Scott, David (30(b)(6) Vol. III)**

1     does Ticor have any other restrictions on the

2     issuance of closing protection letters that relate

3     to or apply to more than one closing transaction?

4         A.   Ticor Title's -- Ticor Title's -- Ticor

5     Title in Illinois, the underwriting requirement for

6     Ticor Title in Illinois is that any closing

7     protection letters other than transaction-specific

8     closing protection letters are to be approved by

9     Corporate Underwriting.

10        Q.   And that's something you've previously

11    testified to during the course of your corporate and

12    personal deposition?

13        A.   That's correct.

14        Q.   Okay.  The last set of questions I have

15    relate to your -- the quality file review that we

16    looked at in Scott 44, and if you could take that.

17            In particular, if we could go to the one

18    relating to the Vasquez file which you were asked

19    at, which appears on TICOR16.  I think it's the

20    fourth page in.

21            And again, focusing on just the part of

22    this page relating to the questions relating to

23    escrow/closing, and specifically you in the Vasquez

24    review, the question "Were instructions requirements

25    met," you checked yes, correct?