IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen) |
| THIS DOCUMENT RELATES TO:<br>*Peterson v. Argent Mortgage Company, LLC et al.,*<br>1:08-cv-07281, N.D. Ill. | |

## DEFENDANT ARGENT MORTGAGE COMPANY, LLC'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Argent Mortgage Company, LLC ("Argent"), by and through its attorneys, Buchalter Nemer, A Professional Corporation, submits this statement of material facts pursuant to Local Rule 56.1 as there is no genuine issue as to these facts thereby entitling Argent to judgment as a matter of law.

1. On August 11, 2005, Plaintiff Cedric Peterson ("Plaintiff" or "Mr. Peterson") entered into a mortgage loan transaction with Argent to refinance his home by executing an Adjustable Rate Note bearing loan number 0084967512, for the amount of $727,500.00 (the "Loan"). [Affidavit of Ree Klein, ¶ 3, Ex. 1.; Affidavit of Amy Lake ("Lake Aff.") ¶ , Ex. 1 (Signed Claim Form).]

2. On August 11, 2005, Plaintiff secured the Loan against the real property located at 9345 Rocky Lane, Orangevale, California 95662 (the "Property") by executing a deed of trust in favor of Argent for $727,500.00. [Request for Judicial Notice ("RJN"), Ex. 1 (Deed of Trust).] On August 24, 2005, the Deed of Trust was recorded by Sacramento County Recorder's Office in Book 20050824, Page 0339. [RJN, Ex. 1 (Deed of Trust).]

3. On August 11, 2005, Plaintiff owned, and still owns the Property. [RJN, Ex. 1 (Deed of Trust).]

4. Plaintiff has been in default on his mortgage since on or before October 17, 2006. [RJN, Ex. 2 (Notice of Default).] On October 18, 2006, a notice of default was recorded by

Sacramento County Recorder's Office in Book 20061018, Page 1472 because as of October 17, 2006 Plaintiff was in default under the Loan and Deed of Trust in the amount of $25,225.28. [RJN, Ex. 2 (Notice of Default).]

5. On August 19, 2008, Plaintiff filed a Complaint For Rescission Under 15 U.S.C. § 1635 ("Complaint") alleging a single cause of action under the federal Truth in Lending Act ("TILA") in the Los Angeles Superior Court, Central District, Case No. BC 396593 ("Peterson Case"). [RJN, Ex. 3 (Complaint).] The Complaint named Argent, Deutsche Bank National Trust Company, and Does 1 to 10 as defendants. [RJN, Ex. 3 (Complaint).]

6. On September 24, 2008, counsel for Argent filed a Notice of Removal of Action Under 28 U.S.C. Sections 1441(B) & 1446 in the United States District Court, Central District of California. [RJN, Ex. 4 (Notice of Removal); Dkt. Nos. 1-5 in Case No. 2:08-cv-6302.]

7. The Peterson Case was removed to the United States District Court, Central District of California on September 24, 2008 and assigned federal Case No. 2:08-cv-6302. [RJN, Ex. 4 (Notice of Removal); Dkt. Nos. 1-5 in Case No. 2:08-cv-6302.]

8. On October 1, 2008, Argent filed its answer to Plaintiff's complaint. [RJN, Ex. 5 (Answer); Dkt. No. 7 in Case No. 2:08-cv-6302.]

9. On December 18, 2008, the United States Judicial Panel on Multidistrict Litigation issued a Conditional Transfer Order transferring Case No. 2:08-cv-6302 from the Central District of California to the Northern District of Illinois and assigning the case to the Honorable Marvin E. Aspen. [RJN, Ex. 6 (Conditional Transfer Order); Dkt. No. 14 in Case No. 1:08-cv-07281.] The Conditional Transfer Order became effective on January 5, 2009. [RJN, Ex. 6 (Conditional Transfer Order); Dkt. No. 14 in Case No. 1:08-cv-07281.]

10. The Peterson Case was transferred into the Multidistrict Litigation identified as: *In re: Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*, Lead Case No. 05CV07097—MDL No. 1715 (the "MDL"). [RJN, Ex. 6 (Conditional Transfer Order); Dkt. No. 14 in Case No. 1:08-cv-07281.]

11. Plaintiff did not oppose the transfer of his case into the MDL. [*See* RJN, 11 (Court's Docket).]

2

12. On December 4, 2009, the Plaintiffs and Settling Defendants entered a Settlement Agreement[1]. [RJN, Ex. 7 (Settlement Agreement); Dkt. No. 3506-2.]

13. On December 8, 2009, the Court approved the Settlement Agreement by Preliminary Approval Order. [RJN, Ex. 8 (Preliminary Approval Order); Dkt. No. 3251.]

14. On April 15, 2010, the Court held a fairness hearing, at which time all interested parties could be heard in support of and in opposition to the proposed Settlement Agreement. [RJN, Ex. 9 (Final Order and Judgment), page 2; Dkt. No. 3628.]

15. Plaintiff raised no objection at any time before or during the fairness hearing. [RJN, Ex. 9 (Final Order and Judgment), pages 4-6, ¶ 5; Dkt. No. 3628; *see* RJN, 11 (Court's Docket).]

16. On June 29, 2010, the Court issued its Final Order and Judgment in the MDL approving the proposed Settlement Agreement with all borrowers class plaintiffs. [RJN, Ex. 9 (Final Order and Judgment); Dkt. No. 3628.]

17. In the Final Order and Judgment, the Court "determined that the Notice given to members of the Settlement Classes fully and accurately informed members of each Settlement Class of all material elements of the proposed settlement and constituted valid, due and sufficient notice to all members of the Settlement Classes consistent with all applicable requirements." [RJN, Ex. 9 (Final Order and Judgment), page 4, ¶ 3; Dkt. No. 3628.]

18. The Court adjudged that "[a]ll Settlement Class members who are not listed on Exhibit A shall, to the extent provided by the Settlement Agreement, conclusively be deemed to have released and discharged their claims to the extent provided in the Settlement Agreement." [RJN, Ex. 9 (Final Order and Judgment), page 7, ¶ 9; Dkt. No. 3628.]

19. Plaintiff Cedric Peterson's name is not listed on Exhibit A to the Final Order and Judgment. [RJN, Ex. 9 (Final Order and Judgment), Exhibit A; Dkt. No. 3628.]

20. The Settlement Agreement approved by final order of this Court includes five (5) settlement classes. Section VI.A of the Settlement Agreement provides, in relevant part: the "'TILA Rescission Class'. . . consists of a nationwide class of Borrowers . . . who: (a) presently own, or during the Class Period owned, property (including mobile homes) in the United States and (b) entered into a mortgage loan transaction relating to such property with any settling

---

[1] Capitalized terms shall have the same meaning as used in the Settlement Agreement filed as Dkt. No. 3502-2 and the Court's Final Order and Judgment filed as Dkt. No. 3628.

defendant or its predecessor at any time on or after February 8, 2003, . . . and who have requested rescission of their loans pursuant to applicable provisions of TILA or state disclosure laws on or before the date of the Settlement Agreement[.]"[RJN, Ex. 7 (Settlement Agreement), page 10, Section VI.A; Dkt. No. 3506-2.]

21. The Settlement Agreement defines the Releasing Parties as: "all members and Named Representatives of any Settlement Class who have not and do not validly exclude themselves from the Settlement under procedures set forth in Section XI of this Agreement whether or not they submit a claim, receive or accept any benefit, or cash any check in connection with the Settlement." [RJN, Ex. 7 (Settlement Agreement), page 14, Section VI.C; Dkt. No. 3506-2.]

22. The Settlement Agreement included the following release of claims:

> [Argent] . . . shall be released from all claims, causes of actions, or liabilities of which any and all Releasing Parties may or did have during the Class Period, including without limitation, in contract, in tort (including but not limited to personal injury, and emotional distress and RICO claims), statute, regulation, or common law, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as part of a class of claims or claims on behalf of the general public, whether known or unknown, suspected or unsuspected, threatened, asserted or unasserted, actual or contingent, liquidated or unliquidated, that relate to or arise from the matters that were alleged or asserted, or could have been alleged or asserted in the FACC and/or the Consolidated Actions (collectively "Released Claims"). Without limiting the foregoing, the Released Claims specifically extend to claims that the Releasing Parties do not know or suspect to exist in their favor as of the Final Approval Date. Releasing Parties, on behalf of themselves individually and in their representative capacities acknowledge, and all Releasing Parties are deemed to acknowledge that they are aware that any of them may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally and forever all Released Claims, and in furtherance of such intention, the release of the Released Claims will be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.

[RJN, Ex. 7 (Settlement Agreement), page 15, Section VIII.A; Dkt. No. 3506-2.]

23. On January 8, 2010, the court-approved settlement administrator, Rust Consulting, Inc. ("Rust Consulting"), mailed written notice addressed to Plaintiff Cedric

4

Peterson at P.O. Box 1165 Orangevale, California 95662.[2] [Affidavit of Amy Lake ("Lake Aff.") ¶ , Ex. 1 (Signed Claim Form).] [Lake Aff. ¶ 9.]

24.     On January 16, 2010, Rust Consulting received a signed claim form from Cedric Peterson requesting compensation as part of the court-approved Settlement Agreement. [Lake Aff. ¶ 10, Ex. 1.] By signing the claim form, Mr. Peterson affirmed and admitted that he entered into a mortgage loan transaction relating to the Property. [Lake Aff. ¶ 10, Ex. 1.]

25.     Rust Consulting did not receive any notice, written or otherwise, from Plaintiff Cedric Peterson requesting exclusion from the class settlement. [Lake Aff. ¶ 12.]

26.     On October 15, 2010, Rust Consulting caused settlement check number 118022 to be mailed to Plaintiff Cedric Peterson in the amount owed under the terms of the Settlement Agreement. [Lake Aff. ¶ 11, Ex. 3.]

27.     On or before October 20, 2010, Plaintiff cashed settlement check number 118022 and the check cleared the bank. [Lake Aff. ¶ 11, Ex. 3.]

28.     The Settlement Agreement permitted notice by mail, publication in a newspaper and magazine, and on a website. [RJN, Ex. 7 (Settlement Agreement), Section X.; Lake Aff. ¶ 8.]

29.     Notice was published on January 3, 2010 in Parade magazine and on January 4, 2010 in USA Today newspaper. [RJN, Ex. 7 (Settlement Agreement), Section X.; Lake Aff. ¶ 8.]

30.     The settlement information was also included on a website: www.AmeriquestMDLSettlement.com. [RJN, Ex. 7 (Settlement Agreement); Lake Aff. ¶ 8.]

31.     The claim form mailed to Plaintiff on January 8, 2010, stated: "[Y]OU WILL NEVERTHELESS BE SUBJECT TO THE RELEASE DESCRIBED IN THE NOTICE UNLESS YOU EXCLUDE YOURSELF FROM THE SETTLEMENT." [Lake Aff. ¶ 9, Ex. 1 (emphasis in original).]

32.     Plaintiff did not opt out of the settlement class and the period of time to opt out has passed. [RJN, Ex. 7 (Settlement Agreement); RJN, Ex. 9 (Judgment); RJN, Ex. 10 (Opt Out List); Lake Aff. ¶¶ 12, 13; *see* RJN, 11, Dkt. No.4341 (Ellis Order).]

/ / /

/ / /

/ / /

---

[2] This was the most current address in the national change of address database for Mr. Peterson at the time notice was mailed.

33. On or about October 11, 2011, counsel for Argent mailed a letter to Mr. Peterson's counsel requesting that this case be dismissed by joint stipulation of dismissal. Plaintiff's counsel, who has since withdrawn, would not agree to the stipulation and Plaintiff has not responded or agreed to dismiss this case by joint stipulation. [*See* RJN, Ex. 11 (Letter Dated October 11, 2011 Requesting Joint Stipulation of Dismissal).]

Respectfully submitted,

DATED: January 27, 2012

By:/s/ Bernard E. LeSage

*Attorneys for Argent Mortgage Company, LLC*

Bernard E. LeSage, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

BN 10882845v1