# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05 CV 07097 |
| THIS DOCUMENT RELATES TO: | (Centralized before the Honorable Marvin E. Aspen) |
| *Rose Terry, et al. v. Ameriquest Mortgage Company, et al.*, Case No. 08 CV 02475 (N.D. Ill.) | Magistrate Judge Morton Denlow |
| Ameriquest Mortgage Company, et al., | |
| Third-Party Plaintiffs, | |
| v. | |
| First American Title Insurance Company, et al., | |
| Third-Party Defendants. | |

## TICOR TITLE INSURANCE COMPANY'S
## MOTION TO COMPEL RULE 30(b)(6) TESTIMONY

Third-party defendant Ticor Title Insurance Company ("Ticor") hereby moves, pursuant to Fed. R. Civ. P. 37(a)(3)(B)(ii) and Local Rule 37.2, that third-party plaintiff Ameriquest Mortgage Company ("Ameriquest") be ordered to produce a corporate representative to testify pursuant to Rule 30(b)(6) concerning Topics 1-8 of the "closing companies" deposition notice served on May 23, 2012. As described more fully below, after consultation by telephone and good-faith attempts to resolve differences, the parties were unable to reach an accord.

**I.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

   **A.    Procedural Background**

On July 26, 2012, Judge Aspen granted Ameriquest's Motion for Reassignment to

transfer this case from Judge Chang's calendar to Judge Aspen's calendar. (July 26, 2012, Order, attached as Ex. 1.) Judge Aspen's order specified that the parties should continue with discovery as ordered by Judge Chang. (*Id*.) Judge Chang previously ordered the parties to complete all fact discovery by August 31, 2012. (*See* March 13, 2012, Order, attached as Ex. 2.) To date, the parties have engaged in extensive fact discovery, including the production of documents, responses to interrogatories, and depositions. On May 23, 2012, Ticor served Ameriquest with two Rule 30(b)(6) deposition notices. Ticor subsequently attempted to resolve Ameriquest's extensive objections to the topics set forth in those notices. Ticor brings this motion to compel Ameriquest to provide a corporate representative to testify about Topic Nos. 1-8 of the "closing companies" notice, which are relevant to Ameriquest's claims against Ticor.

  **B.**  **The Third-Party Complaint**

Third-party plaintiff Ameriquest's claims against Ticor arise out of the claims asserted against Ameriquest by 13 of the plaintiffs in this action in connection with their 15 mortgage loans. Plaintiffs seek, *inter alia*, damages from Ameriquest based on Ameriquest's alleged violation of the Illinois Consumer Fraud Act and the Truth-in-Lending Act. Ameriquest's third-party complaint seeks, among other things, contractual indemnity from Ticor, the title insurance underwriter that issued title insurance policies for each of the relevant loans. Ameriquest's claims against Ticor are based on closing protection letters allegedly issued by the two title insurance agents that closed the relevant loans, Tristar Title LLC ("Tristar") and Northwest Title & Escrow Corporation ("Northwest Title").

  **C.**  **Ticor's Rule 30(b)(6) Deposition Notices**

On May 23, 2012, Ticor served Ameriquest with two Rule 30(b)(6) deposition notices. (*See* Deposition Notices, attached as Exs. 3 and 4.) One notice contained 10 topics concerning "closing companies" and the other notice contained 18 topics concerning "closing protection

letters." (*See id.*) On June 15, 2012, Ameriquest objected to—and refused to produce a witness to testify about—25 of the 28 topics. (*See* Responses to Deposition Notices, attached as Exs. 5 and 6.)

Throughout July, counsel for Ticor and Ameriquest met and conferred about Ameriquest's objections, including a telephone conference on July 2 and the exchange of numerous letters. (*See* Meet-and-Confer Correspondence, attached as Group Ex. 7.) As a result of those negotiations, Ticor agreed to withdraw four topics and to limit the scope of other topics and Ameriquest agreed to provide a corporate representative to testify about 16 of the 24 remaining topics. (*See id.*) But the parties are at an impasse on the scope of the remaining eight topics, Topic Nos. 1-8 of the "closing companies" notice. (*Id*. at 7-17 through 7-21.)  Those topics seek testimony concerning:

- Agreements between Ameriquest and the relevant title insurance agents, Tristar and Northwest Title, concerning the relevant loans (Topic Nos. 1-4);
- Instructions from Ameriquest to Tristar and Northwest Title concerning the relevant loans (Topics 5-6); and
- Investigations and audits conducted by Ameriquest to determine whether Tristar and Northwest Title were complying with Ameriquest's instructions concerning the relevant loans (Topic Nos. 7-8).

(Ex. 3.) Ameriquest refuses to produce a corporate representative to testify about those topics, even after Ticor agreed to limit the scope of Request Nos. 1-6. (Ex. 7 at 7-17 through 7-21.) Instead, Ameriquest seeks to unilaterally limit the scope of Request Nos. 1-4 to "formal written agreements" and Request Nos. 5-8 to "written Closing Instructions." (*Id*. at 7-9 through 7-11, 7-19 through 7-21.)  But Ameriquest's proposed limitations are not acceptable to Ticor because they would exclude potentially relevant information.

Set forth below are the topics, including the limitations acceptable to Ticor, Ameriquest refuses to provide a corporate representative to testify about from the "closing companies" notice:

> **Topic Nos. 1 and 2** – Any non-transaction specific agreement in force between January 1, 2005, and February 21, 2006, between Ameriquest and Tristar [or between January 1, 2005, and March 21, 2006, between Ameriquest and Northwest Title] relating to any closing service provided by Tristar applicable to any of the Loans, but excluding loan-specific accommodations such as agreements to use a certain fax number, provide a title policy by a certain date, have a closing completed by a holiday weekend, or to meet for lunch.
>
> **Topic Nos. 3 and 4** – Any agreement between Ameriquest and Tristar [or Northwest Title] relating to any closing service provided by Tristar as to any of the Loans, but excluding loan-specific accommodations such as agreements to use a certain fax number, provide a title policy by a certain date, have a closing completed by a holiday weekend, or to meet for lunch.
>
> **Topic Nos. 5 and 6** – Any instructions, including any Closing Instructions, given to Tristar [or Northwest Title] by Ameriquest regarding the closing of any of the Loans, but excluding loan-specific accommodations such as instructions to use a certain fax number, provide a title policy by a certain date, or to have a closing completed by a holiday weekend.
>
> **Topic No. 7 and 8** – Any investigation, review, or audit conducted by, or on behalf of, Ameriquest to determine whether Tristar [or Northwest Title] complied with Ameriquest's instructions regarding the closing of any of the Loans.

## II. ARGUMENT

### A. The Court Should Compel Ameriquest to Provide a Corporate Representative to Testify About Ameriquest's Agreements with—and Instructions to—Tristar and Northwest Title.

Deposition Topic Nos. 1-6 seek testimony about Ameriquest's agreements with, and instructions to, Tristar and Northwest Title concerning the relevant loans. Those agreements and instructions are relevant to many issues in the case. For instance, the parties dispute on whose behalf Tristar and Northwest Title closed the relevant loans. Specifically, Ticor disagrees with Ameriquest's contention that Tristar and Northwest Title "were acting as Ticor's agents in closing the Loans." (*See* Ameriquest's Opp'n to Mot. for S.J. at 9-10, relevant excerpts of which

4

are attached as Ex. 8.) Information concerning Ameriquest's agreements with, and instructions to, Tristar and Northwest Title is likely to lead to admissible evidence showing that Tristar and Northwest Title closed the plaintiffs' loans as *Ameriquest's* agent. Similarly, testimony about Ameriquest's instructions to Tristar and Northwest Title is also relevant to Ameriquest's allegation that "Ameriquest and [Tristar and Northwest Title] entered into the Closing Instructions wherein [Tristar and Northwest Title] agreed to indemnify Ameriquest for any losses incurred as a result of [Tristar or Northwest Title's] closing of the loans." (Third-Party Compl., attached as Ex. 9, ¶ 44.)

Indeed, Ameriquest does not dispute that Topic Nos. 1-6 seek relevant information. Rather, Ameriquest complains that the topics are "too broad" and "unduly burdensome." Specifically, Ameriquest protests that "the only way" that it can determine whether there are other agreements or instructions is to "search its entire electronic database which is located on disaster recovery back-up tapes." (Ex. 7 at 7-15 through 7-16.) Ameriquest also objects that the requests are too burdensome because they would require a witness to be prepared about loan-specific accommodations "such as whether two persons agree to use a certain fax number because one fax machine is not working; agree to provide a title policy [sic] a certain date; agree to have a closing completed by a holiday weekend; or simply agree to meet for lunch." (*Id*. at 7-10, 7-20.)

Neither of Ameriquest's complaints is tenable. First, Ameriquest's concern that the topics require it to restore disaster recovery back-up tapes to prepare its witness to testify about these topics is unfounded. While Ameriquest's Rule 30(b)(6) witness is certainly required to obtain the information "known or reasonably available to the organization," 7 MOORE'S FEDERAL PRACTICE §30.25[3], 30-66.1 (3d ed. 2012), that would not require back-up tape

5

restoration unless Ameriquest had reason to believe those tapes contained relevant information that is not obtainable elsewhere. And if Ameriquest knew that to be the case, it should be required to provide that information. On the other hand, if Ameriquest's reasonable investigation uncovered no reason for Ameriquest to believe that the back-up tapes contained such information, it need not restore them. Second, Ameriquest's concern about the need to educate its witness about loan-specific accommodations is equally misplaced because Ticor agreed to limit the requests so that they exclude the loan-specific accommodations Ameriquest is concerned about, including the ones listed in Ameriquest's letter.[1] (Ex. 7 at 7-13.)

Moreover, Ameriquest's proposal to limit the requests to "formal written agreements" and "written Closing Instructions" is unacceptable because it would make the requests too narrow and could potentially exclude relevant evidence. In addition, the term "formal written agreements" is too vague and could intentionally, or unintentionally, be interpreted to exclude relevant information. Accordingly, the Court should compel Ameriquest to produce a corporate representative prepared to testify about Topic Nos. 1-6, as set forth above.

### B. The Court Should Compel Ameriquest to Produce a Corporate Representative to Testify About its Investigations into Tristar and Northwest Title's Compliance with Ameriquest's Instructions.

Deposition Topic Nos. 7-8 seek testimony concerning Ameriquest's investigations, reviews, or audits concerning Tristar and Northwest Title's compliance with Ameriquest's instructions regarding the closing of any relevant loan. Information sought by those topics is relevant to, *inter alia*, paragraph 57 of Ameriquest's third-party complaint, wherein Ameriquest alleges that it reasonably relied on representations made by Tristar and Northwest Title. (Ex. 7 at 7-4 through 7-8; Ex. 9.) Testimony about the steps Ameriquest took to ensure that Tristar and Northwest Title were accurately and uniformly following Ameriquest's instructions are certainly

---

[1] Ticor also agreed to limit the scope and time frame of Request Nos. 1-2. (Ex. 7 at 7-6.)

relevant to assessing the reasonableness of Ameriquest's alleged reliance on Tristar's and Northwest Title's representations. (Ex. 7 at 7-4 through 7-8.) The information sought by Topic Nos. 7-8 is also relevant to the agency dispute described more fully above.

Again, Ameriquest does not dispute that Topic Nos. 7-8 seek relevant information. Instead, Ameriquest complains that the topics are "too vague" and that they would require a "prohibitively expensive fishing expedition." (*Id*. at 7-20.) Ameriquest proposed to limit the topics to the "Closing Instructions document contained in each loan file." (*Id.*) But Ticor is entitled to know whether Ameriquest investigated Tristar's and Northwest Title's compliance with *any* instruction concerning the relevant loans. Thus, Ameriquest's proposed limitation is too narrow and could exclude relevant information. Requiring Ameriquest to conduct a reasonable, good-faith investigation to gather the responsive information known or reasonably available to Ameriquest on these topics is neither too broad nor unduly burdensome. Accordingly, the Court should compel Ameriquest to produce a corporate representative to testify about Topic Nos. 7-8.

### III. CONCLUSION

For the above-stated reasons, the Court should grant Ticor's motion and order Ameriquest to produce a corporate representative to testify pursuant to Rule 30(b)(6) about Topic Nos. 1-8 of the "closing companies" notice, as set forth above.

Dated: August 1, 2012

                                        TICOR TITLE INSURANCE COMPANY

                                        By: s/ Andrew D. Shapiro
                                                  One of Its Attorneys

Albert E. Fowerbaugh, Jr.
Andrew D. Shapiro
James E. Sojoodi
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street
Suite 1800
Chicago, IL 60602-4257
Phone: (312) 444-9660
Fax: (312) 444-9287

**CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that a true copy of the preceding document was served on August 1, 2012 on all counsel of record, in accordance with FED. R. CIV. P. 5, Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers, and served on the following persons by United States mail on August 1, 2012:

    Joan M. Pridgeon
    448 West Englewood Street
    Chicago, IL  60621

    Isiah P. Ward
    303 Waterford Dr.
    Willowbrook, IL  60527-5463

                                                      s/ Andrew D. Shapiro

495013