# Exhibit 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ROSE TERRY, et al.<br><br>                    Plaintiffs,<br><br>vs.<br><br>AMERIQUEST MORTGAGE COMPANY,<br>et al.<br>                    Defendants. | **Case No.: 08CV2475**<br><br>Honorable David H. Coar<br><br>Magistrate Judge Michael T. Mason |

## THIRD-PARTY PLAINTIFFS' OPPOSITION TO TICOR TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................................. 1

II.    STATEMENT OF FACTS ............................................................................... 1

III.   STANDARD ON MOTION FOR SUMMARY JUDGMENT ......................... 3

IV.    LEGAL ARGUMENTS AND AUTHORITIES ............................................... 4

       A.     Blanket Closing Protection Letters Were Issued That Cover Each of the
              Loan Closings ...................................................................................... 4

       B.     Plaintiffs Assert Claims Arising From the Acts Of Ticor's Agents. .... 5

       C.     The CPLs Require That Ticor Reimburse Ameriquest And Its Assignees
              For Losses Caused by Tristar's and Northwest's Acts And Omissions ..... 5

              1.     Paragraph 1:  Loss arising out of issuing agent's failure to comply
                     with Ameriquest's closing instructions relating to the validity and
                     enforceability of lien ................................................................. 7

              2.     Paragraph 2: Loss arising out of negligence of the issuing agent in
                     handling Ameriquest's documents ............................................ 9

       D.     Outside of the CPLs, Ticor Is Liable Under Agency Law ................... 9

              1.     Tristar and Northwest had actual authority to close the Loans ........ 10

              2.     Tristar and Northwest had apparent authority to conduct the
                     closings ...................................................................................... 12

       E.     Assignees Have Standing To Enforce The Closing Protections Letters .............. 14

V.     REQUEST FOR ADDITIONAL TIME PURSUANT TO 56(F) ................................... 14

VI.    CONCLUSION ............................................................................................... 15

BN 5283828v6

TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Am. Nat. Bank and Trust Co. v. Columbus-Cuneo-Cabrini Med. Ctr.*
    154 Ill.2d 347, 609 N.E.2d 285 (1992) ................................................................ 10

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ....................................................................................................... 3

*Andrews v. Chevy Chase Bank*
    545 F.3d 570 (7th Cir. 2008) ................................................................................... 7

*Bailey v. Edward Hines Lumber Co.*
    308 Ill.App.3d 58, 719 N.E.2d 178 (1999) ......................................................... 10

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ....................................................................................................... 3

*Coldwell Banker Relocation Servs. v. TRW Title Ins. Co.*
    74 F.3d 1243 (8th Cir. 1996) ................................................................................. 13

*Elmore v. Blume*
    31 Ill.App.3d 643, 334 N.E.2d 431 (1975) ......................................................... 13

*Gilbert v. Sycamore Mun. Hospital*
    156 Ill. 2d 511, 622 N.E.2d 788 (1993) ............................................................. 10

*Goka v. Bobbitt*
    862 F.2d 646 (7th Cir. 1988) ..................................................................................... 4

*Kaporovskiy v. Grecian Delight Foods, Inc.*
    338 Ill.App.3d 206, 787 N.E.2d 268 (2003) ...................................................... 10

*Lawyers Title Ins. Corp. v. Dearborn Title Corp.*
    904 F.Supp. 818 (N.D.Ill. 1995) ............................................................................ 13

*Meyerson v. Lawyers Title Ins. Corp.*
    39 A.D.2d 190, 333 N.Y.S.2d 33 (1972) .............................................................. 13

*Patrick Media Group, Inc. v DuPage Water Com'n*
    258 Ill.App.3d 1068, 630 N.E.2d 958 (1994) .................................................... 14

BN 5283828v9

## TABLE OF AUTHORITIES
### (continued)

Page

*RTC Mortg. Trust 1994 N-1 v. Fidelity Nat. Title Ins. Co.*
   58 F.Supp.2d 503 (D.N.J. 1999) ........................................................................... 13

*Sears Mortg. Corp. v. Rose*
   134 N.J. 326, 634 A.2d 74 (1993) ........................................................................ 12

*Stonecrafters, Inc. v. Wholesaler Life Ins. Brokerage, Inc.*
   393 Ill.App.3d 951, 915 N.E.2d 51 (2009) ......................................................... 14

*Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*
   05-CV-73709-DT, 2008 WL 2157046, *8-9
   (E.D.Mich. May 22, 2008) ............................................................................ 11, 12

**Statutes**

15 United States Code § 1635 ............................................................................... 7
Federal Rule of Civil Procedure 56(c) ................................................................. 3
Federal Rule of Civil Procedure 56(f) ................................................................ 14

**Treatises**

*Title Insurance Law, Title Insurers' Liability for Escrow and Closing Services*
   Joyce Palomar, Sept. 2009 ......................................................................... passim

BN 5283828v9

## I.     INTRODUCTION.

Ticor's Motion for Summary Judgment ("Motion") must be denied as there are disputed issues of material fact which preclude summary judgment as a matter of law:

- Pursuant to written closing instructions, Ticor's agents were responsible for closing Plaintiffs' loans.

- Plaintiffs allege that the loan closings were improperly conducted.

- Pursuant to written indemnification agreements, Ticor is liable as it agreed to indemnify Ameriquest and its assignees for any losses if Ticor's agents' improperly conducted the loan closings.

- As indemnity agreements are freely assignable, Ticor is liable to any subsequent assignee.

- Ticor is also liable to Ameriquest under principles of agency.

Ticor is liable to Ameriquest and/or its assignees for losses suffered as a result of the acts of omissions of Ticor's issuing agents. Ticor's Motion claiming the contrary should be denied.

## II.     STATEMENT OF FACTS.

Ticor has tried a variety of tactics to avoid its written indemnity agreements to reimburse Ameriquest and its assignees for losses arising out of loan closings handled by Ticor's issuing agents, Tristar Title, LLC ("Tristar") and Northwest Title & Escrow Corp. ("Northwest"). Statement of Additional Facts ("SAF") SAF ¶ 1, 8-19. Ticor issues indemnity agreements to lenders 98% of the time when its issuing agents conduct the loan closings. SAF ¶ 5. In the title industry, these indemnity agreements are referred to as "closing protection letters" or "CPLs" for short. CPLs indemnify lenders for losses arising out of an issuing agent's failure to follow the lender's closing instructions or properly handle the lender's funds or documents. Lenders require CPLs in connection with their loan closings because title insurance underwriters, such as Ticor, have significant financial resources whereas issuing agents are often small local operations. *See Title Insurance Law*, *Title Insurers' Liability for Escrow and Closing Services*, § 20:11, Joyce Palomar, Sept. 2009 ("*Palomar*").

A blanket or master CPL covers all closings handled by the issuing agent ("blanket CPL"). A single-transaction CPL limits coverage to a single specific closing. Blanket CPLs are

the industry standard.  SAF ¶ 6.  As confirmed by the drafter of the standard CPL form, the American Land Title Association ("ALTA"), as well as Shari Nestor, an Escrow Professional who has worked in the title industry for over thirty years, the form CPLs used by Ticor in Illinois, and provided to Ameriquest, are blanket CPLs.  SAF ¶ 8-19.  Thus, once Ticor issued a blanket CPL to Ameriquest, it covered all future loan closings.  *Id.*

When Tristar and Northwest conducted the closings of Plaintiffs' loans (the "Loans") blanket CPLs had been issued by Ticor to Ameriquest.  SAF ¶ 19.  Ticor initially denied that it issued any CPLs to Ameriquest that would cover the Loans.  SAF ¶ 8.  Thirty days <u>after</u> filing the Motion, however, Ticor finally produced CPL logs showing it issued blanket CPLs to Ameriquest for Tristar.  SAF ¶ 9.  At that time, Ticor denied having any CPL logs showing it issued any CPLs to Ameriquest for Northwest.  *Id.*  It was not until after Ameriquest confronted Ticor with contrary evidence that Ticor finally produced CPL logs confirming it issued CPLs to Ameriquest for Northwest.  SAF ¶ 10.  Ticor's CPL logs prove the assertion in the Third-Party Complaint that CPLs were issued which apply to each Loan.  SAF ¶ 11, 19.

Surprisingly, in its Motion Ticor pretends that it only issued one CPL to Ameriquest for Tristar and claims Ameriquest only relies on one CPL, ignoring the allegations in the complaint. Motion, pg. 5.  Ticor's CPL logs reveal that it issued numerous blanket CPLs to Ameriquest relating to Tristar beginning in September 2003 and continuing through April 2006, many of which were issued well before any of the Loans were closed by Tristar.  SAF ¶ 19.  With regard to Northwest, Ticor completely ignores its CPL logs showing that blanket CPLs were issued to Ameriquest.  Instead it chases a red herring; the CPL issued by its sister company, American Pioneer n/k/a Ticor Title Insurance Company of Florida.  Motion pgs. 11-13.  This discussion has no relevance here as the CPL logs produced post-Motion reveal that Ticor itself (*i.e.* the right Ticor) issued blanket CPLs to Ameriquest in April and September 2004 for Northwest.  SAF ¶ 10.  Perhaps prompted by a burdened conscience, Ticor states that for purpose of its Motion "[t]his Court need not address [the] issue" of whether CPLs were issued which cover all of the

Loans. Motion, pg. 2, fn. 3. Ameriquest agrees that this is a nonissue for the reason that blanket CPLs exist which cover all the Loans. SAF ¶ 19.

Next, Ticor tries to distance itself from its issuing agents' improper acts by incorrectly stating that Plaintiffs' Illinois Consumer Fraud Act ("ICFA") claims arise solely from Ameriquest's acts. Motion, pg. 7. Almost all Plaintiffs allege that Ticor's issuing agents, Tristar and Northwest violated ICFA by rushing them through, and/or making false statements to them at the loan closings. SAF ¶¶ 23, 24. Plaintiffs also assert claims under the Truth-In-Lending Act ("TILA") for Tristar's and Northwest's mishandling of Notices of Right to Cancel ("NORTC") and other loan documents at the closings. SAF ¶ 20. The remedy sought by Plaintiffs under TILA is rescission of the mortgages – in essence voiding the mortgage and lien. SAF ¶ 21. Under the blanket CPLs Ticor is liable to Ameriquest and its assignees for these acts.

Without any substantive analysis or supporting authority, Ticor takes the position that it has no duty to reimburse Ameriquest under the CPLs for Plaintiffs' TILA claims. Motion, pgs. 9-11. Ticor's position is directly contradicted by the plain language of the CPL and also ALTA's interpretation of CPL coverage. SAF ¶ 25. Furthermore, Professor Debra Stark, a nationally recognized real estate professor of the John Marshall Law School, confirms that Ticor's position is incorrect; CPLs do cover TILA claims. SAF ¶ 26. Ticor is also liable to Ameriquest and its assignees under basic principal/agent theories. Finally, under Illinois contract law CPLs are freely assignable to, and enforceable by, assignees. For all of the foregoing reasons, Ticor's Motion must be denied.

## III.    STANDARD ON MOTION FOR SUMMARY JUDGMENT.

Summary judgment is improper unless the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(c). All evidence must be viewed in the light most favorable to the non-moving parties. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Here, Ticor bears the initial burden of identifying the portions of the record that demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Ticor cannot meet its burden by "identif[ying] only those portions of the record which support [their] position ... [when] there exists evidence to the contrary of which defendant [is] aware," but must contemplate the entire record. *Goka v. Bobbitt,* 862 F.2d 646, 650 (7th Cir. 1988).

IV.     **LEGAL ARGUMENTS AND AUTHORITIES.**

    A.     <u>Blanket Closing Protection Letters Were Issued That Cover Each of the Loan Closings.</u>

       Blanket CPLs are the industry standard. SAF ¶ 6. Once a blanket CPL is issued, it covers all future transactions. *Id.* Although Ticor contends no CPLs were issued, during the deposition of its 30(b)(6) witness concerning the CPLs at issue and restrictions on blanket CPLs, Ticor all but admitted that it had issued blanket CPLs which covered all of the loan closings. To try to avoid making admissions concerning blanket CPLs, Ticor's 30(b)(6) witness professed to be unfamiliar with blanket CPLs, having never seen one, despite their prevalence in the industry and a 30(b)(6) witnesses' duty to become knowledgeable. After being shown numerous blanket CPLs and the ALTA form blanket CPLs which are the same as the CPLs at issue, to avoid a company admission that the CPLs are blanket, Ticor de-designated its 30(b)(6) corporate representative. The witness confirmed that the form of the CPLs at issue were blanket CPLs. SAF ¶¶ 12-14, 16.

       Ticor's admissions show the frivolity of its refusal to produce the CPLs until the last few weeks under the guise that they did not apply. Ticor admits: (1) the CPLs at issue in this litigation apply to all of the transactions assuming they are blanket CPLs, SAF ¶ 4; (2) the CPLs at issue are the same as blanket CPLs used by Ticor, Ticor's parent entity, Fidelity National Financial, other major underwriters, and the ALTA form blanket CPL and they use the plural for closings and real estate transactions, SAF ¶¶ 12-14; (3) in contrast, Ticor's single-transaction CPL expressly states that it applies to a single transaction and uses the singular of closing, SAF ¶ 15; (4) the plain language of the CPLs shows that they are blanket CPLs, SAF ¶ 13; (5) the only reason Ticor denies that they are blanket CPLs is because someone in underwriting (who Ticor

BN 5283828v6

failed to produce) told the 30(b)(6) representative that blanket CPLs needed special authorization, SAF ¶¶ 16, 17; (6) there would be no way for a lender to know that blanket CPLs were not authorized, SAF ¶ 18; (7) Ticor did not restrict its issuing agents from issuing blanket CPLs, SAF ¶¶2, 3; and (8) Ticor's websites for the issuance of CPLs did not have any restrictions on the issuance of blanket CPLs.  SAF ¶ 2.

      **B.**     **Plaintiffs Assert Claims Arising From the Acts Of Ticor's Agents.**

Plaintiffs are asserting TILA and ICFA claims arising from the acts of Ticor's issuing agents.  All Plaintiffs assert TILA rescission claims for Tristar's and Northwest's mishandling of NORTCs and sometimes other loan documents.  Plaintiffs' allege that their NORTCs had blank dates and/or they were not given the correct number of copies.  SAF ¶ 20.  Pursuant to Ameriquest's written closing instructions, it was the responsibility of Ticor's issuing agents, Tristar and Northwest, to fill-in the proper dates and provide the correct number of copies.  SAF ¶ 22.  Their failure to do so is the direct source of Plaintiffs' alleged injury.  SAF ¶ 21.  Plaintiffs also contend that Tristar and Northwest violated ICFA by rushing them through their respective closings so as to prevent them from reviewing their final loan terms.  SAF ¶ 22.  Some Plaintiffs are also asserting ICFA claims based on alleged deceptive statements made by Tristar to Plaintiffs at the loan closing.  SAF ¶ 24.  It is disingenuous for Ticor to provide a partial picture for this Court to consider.  The full picture reveals that Ticor's argument that all of Plaintiffs' claims are solely attributable to Ameriquest is contrary to the facts and should be rejected.

      **C.**     **The CPLs Require That Ticor Reimburse Ameriquest And Its Assignees For Losses Caused by Tristar's and Northwest's Acts And Omissions.**

The CPLs issued by Ticor indemnify Ameriquest and its assignees for certain losses arising from the closing.  By issuing the CPLs to Ameriquest Ticor agreed to provide the financial backing of the world's largest title insurer to encourage lenders, such as Ameriquest, to use Tristar's and Northwest's services.  *See Palomar,* § 20:11.  Specifically Ticor agreed to reimburse Ameriquest for losses arising out of the:

1.   Failure of [Ticor's] Issuing Agent [Tristar or Northwest] to **comply with [Ameriquest's] written closing instructions** to the extent that they **relate to (a) … the validity, enforceability and priority of the lien of said mortgage** on said interest of land, **including the obtaining of documents … necessary to establish such status of title or lien**, or (b) the obtaining **of any of any other document** specifically required by [Ameriquest]…, or

2.   **Negligence** of the Issuing Agent [Tristar or Northwest] **in handling** [Ameriquest's] funds or **documents** in connection with such closings. SAF ¶ 19.

Plaintiffs' claims fall squarely within the coverage afforded to Ameriquest under the CPLs. SAF ¶¶ 25-29.  Now, instead of providing the contracted coverage, Ticor raises baseless arguments in an attempt to avoid coverage.  However, Ticor is well aware that the claims at issue gave rise to its duty to indemnify.  In its annual report filed with the SEC, Ticor and its parent company explained their exposure to Ameriquest for claims for TILA violations arising out of its issuing agents' failure to provide NORTC forms to borrowers. Fidelity National Financial, Inc., March 2, 2009, Form 10-K, *http://www.investor.fnf.com/sec.cfm?CIK=1331875&DocType=Annual&Year=*, page 25.  Yet, inexplicably, Plaintiffs' various TILA rescission claims, which are also the same claims Ticor and its counsel, Albert Fowerbaugh, are dealing with in the Ameriquest Multi-District Litigation matter, are not addressed in the Motion at all.  Rescission is not mentioned once.   *In re Ameriquest Mtg. Co. Mtg. Lending Practices Litigation,* MDL No. 1715, Dkt. 3311 (N.D. Ill.).

Furthermore, Ticor, sans any supporting authority, concludes that TILA claims are excluded from the protections afforded under paragraph 1 of the CPL.  Ticor is wrong.  TILA claims are covered.  Ticor avoids discussing paragraph 2 of the CPL claiming it is not at issue in the Third-Party Complaint.  Motion at p. 6, fn.6.  Third-Party Plaintiffs disagree and note that paragraph 2 is directly quoted in the Complaint.  Dkt 137, ¶ 42.  If Ticor had a persuasive argument for the lack of coverage, it would have identified all of the phrases at issue in the CPL and substantively addressed Plaintiffs' claims and the coverage issues.  It failed to do so because it cannot do so.  Each of these issues are addressed in detail below:

BN 5283828v1

      1.      **Paragraph 1:  Loss arising out of issuing agent's failure to comply with Ameriquest's closing instructions relating to the validity and enforceability of lien.**

Coverage exists under paragraph 1 as Plaintiffs' TILA rescission claims are based on the assertion that they did not receive the correct number of copies of the NORTC at the closing or that the expiration dates were not completed.  SAF ¶ 19.  Because rescission may make a lien invalid, unenforceable, and without priority, it obviously "relates to the validity, enforceability, and priority of the lien."  SAF ¶ 19.

First, Ameriquest's "written closing instructions" required that Tristar and Northwest provide two dated and signed copies of the NORTC to each Plaintiff:

> All blanks must be completed or amended prior to signature. . . . **You must provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-In-Lending Disclosure Statement.**  SAF ¶ 22.

Second, Plaintiffs' allegations that this was not done forms the basis for their TILA claims for rescission.  SAF ¶¶ 20, 21; *see* 15 U.S.C. § 1635.  Thus, if Plaintiffs prevail, the mortgage and all of its accompanying obligations, past and present, are null, void and unenforceable – the same as if the mortgage was never recorded as a lien.

Third, under the terms of the CPL, there is coverage because any loss suffered by Ameriquest arising from Plaintiffs' claims would arise out of the "failure of [Tristar or Northwest] to comply with [Ameriquest's] written closing instructions" and [Ameriquest's closing instructions] at issue specifically related to "(a) … the validity, enforceability and priority of the lien of said mortgage on said interest of land, including the obtaining of documents … necessary to establish such status of title or lien, or (b) the obtaining of any of any other document specifically required by [Ameriquest] …," *i.e.* if Tristar and Northwest failed to provide completed NORTCs to Plaintiffs under TILA, the mortgages may be voidable.  *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 573 (7th Cir. 2008).

Finally, contrary to Ticor's claim, the exclusion provided for in paragraph A.1. of the CPL does not bar coverage for Plaintiffs' TILA claims.  As discussed more thoroughly below,

paragraph A.1 excludes from coverage the failure of an issuing agent to comply with a lender's closing instructions when the closing instructions "require title <u>insurance</u> protection inconsistent with" the title insurance policy binder or commitment.  SAF ¶ 19.  The exclusion does not apply here because Ameriquest's closing instructions do not require any modification of the "title insurance protection."  SAF ¶¶ 25, 26, 28, 29.

Ticor's provides no support for its argument.  Instead, it cites two cases which state that CPLs are "concomitant" (i.e. associated or affiliated) with the title policy.  Those cases are meaningless.  Of course CPLs are concomitant with the title policy – in order for a CPL to apply to a loan closing, a title policy must be purchased from the title underwriter issuing the CPL per the terms of the CPL.  Just because they are "associated" with the same transaction does not mean that the exclusions and limitations of the title policy are incorporated into the CPL.  If that was intended, Ticor's CPLs would include language saying that all exclusions in the title policy apply to the CPL.  Ticor did not do that – instead it chose to follow the ALTA standard exclusion which only applies to closing instructions which request modifications to the insurance binder or commitment, which did not happen here.  SAF ¶ 25.

The reason the exclusion in paragraph A.1. exists is because title underwriters do not believe issuing agents are sophisticated enough to make changes to the standard form title policy.  ALTA explains the limited scope of paragraph A.1. (it was later revised to name both issuing agents and approved attorneys):

> Item A.1 of the Conditions and Exclusions excludes liability when the addressee, after insurance of a binder or commitment, issues instructions to an approved attorney requiring title insurance coverage different from the coverage committed for in the binder or commitment. The approved attorneys, unlike issuing agents, may not be knowledgeable regarding title insurance underwriting and should not be in a position to, in effect, commit for additional coverage by closing the transaction. The title insurer should be requested to amend the binder or commitment prior to closing. However, instructions relating to removal of specific exceptions or compliance with requirements are covered.  SAF ¶ 25.

The ALTA explanation makes clear that the exclusion has nothing to do with limiting coverage for TILA violations which arise from the acts of Ticor's issuing agents.

Additionally, if Ticor were correct, there would be no reason for the CPL to include any exclusions which are already in the title policy. But the CPL expressly excludes mechanic's liens which are already excluded in the title policy. SAF ¶ 26. A leading treatise on the subject of CPLs explains that CPL coverage is not limited to the title policy, noting that the CPL has no limits to monetary coverage for a loss whereas the title policy has express limits. *Palomar*, § 20:16. Again, if Ticor were correct in its interpretation, the monetary limits of the title policy would necessarily be included in the CPL through paragraph A.1. Palomar dispels that argument. Further, Professor Stark explains that Ticor is simply misreading the exclusion. SAF ¶ 26; *see also* Palomar at 20:13. Accordingly, other underwriters have paid claims based on TILA rescission losses. SAF ¶ 29. Similarly, Ticor's Agency Managers, could not identify A.1. as providing any exception for TILA claims. SAF ¶ 28. If they do not interpret the exception as Ticor now does, it is apparent that the language does not mean what Ticor claims it to mean. As such, if Tristar and Northwest failed to follow Ameriquest's closing instructions, indemnity is required as a matter of law.

   2.   **Paragraph 2: Loss arising out of negligence of the issuing agent in handling Ameriquest's documents.**

Paragraph 2 of the CPL also requires Ticor to reimburse Ameriquest and its assignees for Tristar's and Northwest's alleged TILA violations. Tristar and Northwest signed Ameriquest's closing instructions and a closing affidavit stating that they would and did provide the required NORTC forms and loan documents to Plaintiffs. If it is ultimately proven that Plaintiffs were not provided with the NORTC forms or loan documents, Tristar and Northwest were negligent in handling the forms and loan documents and coverage should be provided as a matter of law.

Ticor's failure to address coverage under paragraph 2 directly shows its inability to rationally support its denial of coverage.

   D.   **Outside of the CPLs, Ticor Is Liable Under Agency Law.**

As discussed above, Plaintiffs are asserting claims that are attributable to the acts of Tristar and Northwest. SAF ¶¶ 20, 23, 24. Given that Tristar and Northwest were acting as

BN 5283828v6

Ticor's agents in closing the Loans, Ticor, as the principal, can be held accountable for Tristar's and Northwest's misconduct under agency law. *Gilbert v. Sycamore Mun. Hospital,* 156 Ill. 2d 511, 523, 622 N.E.2d 788 (1993). As a result, Third-Party Plaintiffs have the right to pursue equitable indemnity and contribution claims against Ticor. *See Am. Nat. Bank and Trust Co. v. Columbus-Cuneo-Cabrini Med. Ctr.,* 154 Ill.2d 347, 351, 609 N.E.2d 285 (1992) (holding that equitable indemnity rests on the injustice in allowing an active tortfeasor to escape liability at the unilateral choice of the plaintiff); *Bailey v. Edward Hines Lumber Co.*, 308 Ill.App.3d 58, 61, 719 N.E.2d 178 (1999) (finding that the basis for a third-party defendant's obligation to contribute is its liability to the original plaintiff).

Agency can be established a number of ways. An agent's authority may be either actual or apparent, and actual authority may be either express or implied. *Kaporovskiy v. Grecian Delight Foods, Inc.,* 338 Ill.App.3d 206, 210, 787 N.E.2d 268 (2003).

### 1.    Tristar and Northwest had actual authority to close the Loans.

Tristar and Northwest had express authority to conduct the closings of Ameriquest's loan pursuant to their respective Issuing Agency Agreement with Ticor. Within their Agreements, Tristar and Northwest were authorized to promote and transact "a title insurance business in the State of Illinois." SAF ¶ 30. Under Illinois law, the term "title insurance business" is not limited to just issuance of title policies. Instead, "title insurance business" includes the "handling of escrows, settlements, or closings." 215 ILCS 155/3(1)(B)(iii).[1] Moreover, there is no provision within the Agreements that provides that closing duties are outside of the scope of the Agreements. Rather, the Agreements clearly contemplate that Tristar and Northwest would conduct closings given that Tristar and Northwest were expressly required to indemnify Ticor for improper closings. SAF ¶ 31.

This is consistent with the understanding of Ticor and its agents when they filed their "Applications for Registration of a Title Insurance Agent" with the Illinois Department of

---

[1] The term "title insurance business" also includes "issuing insured closing letters or closing protection letters." 215 ILCS 155/3(1)(B)(vii).

BN 5283828v6

Financial Institutions.  A party cannot hold itself out as a title insurance agent unless "duly registered by a title insurance company with the Secretary." 215 ILCS 155/16(a).  Thus, "[e]ach application for registration shall be ... prepared in duplicate by each title insurance company which the agent represents." 215 ILCS 155/16(b).  In their applications, Tristar and Northwest clearly represented that they would be providing services on behalf of Ticor not only for purposes of preparing "Title Commitment and Policy," but also for "Escrow" and "Closing" purposes.  SAF ¶ 31.  Ticor ratified the applications and submitted them to the Illinois Department of Financial and Professional Regulations for registration.  SAF ¶ 32.

Given Illinois' regulations and Ticor's Applications for Registration, it is disingenuous for Ticor to now claim that it did not authorize Tristar and Northwest to conduct closings on its behalf.  This was the understanding of Michael J. Rooney, the current supervisor of the Title Insurance Section of the Department of Financial and Professional Regulations, Division of Financial Institutions, when he stated that:

> Thus, in Illinois, if a title insurance agent is duly registered by a title insurer and authorized by it to act as an escrow agent, it may be that the title insurer would not be permitted to deny that the agent so registered and authorized to act as an escrow agent was acting on behalf of the title insurer.  Michael J. Rooney, Beyond The Title Insurance Policy: Protecting Sellers of Illinois Real Estate, Illinois State Bar Association Newsletter, September 2009, Volume 55, No. 1.

The fact that Tristar and Northwest were conducting closing was fully known to Ticor. SAF ¶ 33.  Thus, even if conducting closings was not expressly stated in the Issuing Agency Agreements, the parties' conduct modified the scope of their respective agency relationship. This is consistent with the evidence submitted by Ticor, and the District Court's findings in another action, *Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, 05-CV-73709-DT, 2008 WL 2157046, *8-9 (E.D.Mich. May 22, 2008).  In that particular action, the Court found that even though Ticor's Issuing Agency Agreement expressly excluded the agent from conducting closings on behalf of Ticor, "clear and convincing evidence was presented by Powsner [Ticor's agency manager] establishing that the parties had modified this limitation through their course of

- 11 -

conduct."[2]  *Id.*  The Court went on to conclude that because "closings were such an integral part of [the agent's] business, [the agent] necessarily conducted closings within the scope of its agency relationship with Ticor."  *Id.*

This is also consistent with Ticor's understanding of Tristar's role when it first established the relationship.  SAF ¶ 34.  In addition to the Application discussed above, after determining whether Tristar met Ticor's criteria David Scott, Ticor's Illinois Agency Representative, issued a New Agent Recommendation for Ticor's consideration.  Scott explained that Tristar "would examine title, prepare commitments, close transactions, and prepare and issue policies," and would be "an escrow-closing Agent."  SAF ¶ 35.

Closings were clearly a part of Tristar's and Northwest's business, which Ticor was fully aware of, and was used to promote Ticor's title insurance business.  Thus, Tristar and Northwest were acting within the scope of their actual agency relationship when they conducted closings on behalf of Ticor and, therefore, Ticor is liable for their alleged bad acts.

### 2.    Tristar and Northwest had apparent authority to conduct the closings

The elements of apparent authority are:  (1) the principal, or agent, acted in a manner that would lead a reasonable person to conclude that the individual was an agent; (2) where the acts of the agent create the appearance of authority, the principal consented to or knowingly acquiesced in the agent's exercised of authority; and (3) based on the actions of the principal and agent, the third person justifiably and detrimentally relied on the agent's apparent authority."  *Gilbert*, 156 Ill.2d at 525.  Here, Ticor knowingly permitted Tristar and Northwest to conduct the closings on Ticor' behalf, or held them out as possessing the authority to conduct the closings.

*First*, Tristar and Northwest were issuing agents for Ticor's title policies.  SAF ¶ 36. When a lender uses a title underwriter's issuing agent for closings and title insurance, the issuing agent is the title underwriter's agent for both of those activities and the title underwriter is liable for the agent's malfeasance.  *Sears Mortg. Corp. v. Rose*, 134 N.J. 326, 344-45, 634 A.2d 74, 82-

---

[2] Unlike the agreement at issue in *Ticor v. Nat'l Abstract Agency, Inc*, the Issuing Agency Agreements for Tristar and Northwest do not include an express limitation.

BN 5283828v6

83 (1993) (finding it significant that the closing agent was designated as an "approved" agent by the title insurer, which indicated that the closing agent was the title insurer's agent for purposes of closing the transaction); *Meyerson v. Lawyers Title Ins. Corp.*, 39 A.D.2d 190, 191-92, 333 N.Y.S.2d 33 (1972) (holding that although no CPL was issued, the title insurer was liable for the fraud of an attorney it had identified as an "approved attorney").

*Second*, by Ticor's issuance of the CPLs, Tristar and Northwest became its agent for purposes of the closing. SAF ¶ 19. In a CPL, Ticor contractually assumes liability for its agent's fraud, dishonesty, failure to follow escrow instructions, etc. *Palomar*, § 20:17; *see also* 215 ILCS 155/3(13). Numerous cases have found that CPLs can be used to support an agent's apparent authority to act for the title insurer in closing the transaction. *RTC Mortg. Trust 1994 N-1 v. Fidelity Nat. Title Ins. Co.*, 58 F.Supp.2d 503, 538-40 (D.N.J. 1999) (holding that "it cannot be reasonably disputed that [the title insurance company's] Closing Protection Letter conveyed to [plaintiff] that [closing agent] possessed 'apparent authority' to [close transaction]" even if the CPL was expired or unenforceable); *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 904 F.Supp. 818, 823 (N.D.Ill. 1995) (finding that a lender, upon receiving a CPL, could believe that the named issuing agent was an escrow agent for the title insurance company despite the fact that the issuing agency agreement excluded escrow activities from the scope of the agency relationship).

*Third*, Ticor's ratified the agency relationship by allowing Tristar and Northwest to continue closing loans. In *Coldwell Banker Relocation Servs. v. TRW Title Ins. Co.*, 74 F.3d 1243 (8th Cir. 1996), the title underwriter contracted with an attorney-agent to issue title policies. The agency agreement between the parties did not include closing services. Ultimately, the attorney-agent's theft of escrow funds prompted the underlying lawsuit. The Court found the title underwriter liable for the attorney-agent's conduct given that it continued to employ the attorney-agent despite its knowledge that he regularly performed closings where the title policy was to be issued. *See Elmore v. Blume,* 31 Ill.App.3d 643, 647, 334 N.E.2d 431 (1975) (holding that an agent's authority may be presumed from silence of the alleged principal).

In sum, all these factors establish without any dispute that Ticor held both Tristar and Northwest out as its agents for loan closings and Ticor is estopped from arguing otherwise. Ticor presents no facts contesting agency and disputed facts exist requiring denial of this Motion.

       **E.**      **<u>Assignees Have Standing To Enforce The Closing Protections Letters</u>.**

Ticor argues in its Motion that Ameriquest's assignees lack standing to enforce the CPLs given that they are not third-party beneficiaries under the CPLs. Ticor's argument misses the mark completely. The CPL logs show that Ticor issued CPLs that on their face state that they were issued to Ameriquest and its successors and assigns, although much of the language is cut-off in the log. SAF ¶ 19. Additionally, Illinois courts have held that contract rights are freely assignable by either party. *Patrick Media Group, Inc. v DuPage Water Com'n,* 258 Ill.App.3d 1068, 1078, 630 N.E.2d 958 (1994). Moreover, a party's right to indemnify can be assigned. *Stonecrafters, Inc. v. Wholesaler Life Ins. Brokerage, Inc.*, 393 Ill.App.3d 951, 960, 915 N.E.2d 51 (2009). The leading treatise on CPLs states that CPLs should be freely assignable and that the inclusion of the assignee in the definition of "insured" under the title policy should extend to include assignees under the CPL. *Palomar,* § 20:14. Significantly, Ticor has not cited to any case where a court has held that indemnification agreements are not assignable nor can it do so. Ameriquest's assignees can assert rights under the CPLs against Ticor.

**V.**      **REQUEST FOR ADDITIONAL TIME PURSUANT TO 56(F).**

In addition to the disputed facts necessitating the denial of the Motion, assuming arguendo the evidence in support of this Opposition is not itself sufficient, outstanding discovery concerning the same issues raised in this Motion also requires the denial or deferral of the Motion until completion of discovery. FED. R. CIV. P. 56(f). Ameriquest propounded discovery seeking Ticor's and its parent companies' prior statements concerning the scope of coverage of CPLs because Ticor has argued positions which Ticor or others in the title insurance industry previously took the opposite position, thus raising the issue of estoppel. SAF ¶¶ 26, 29. Shortly after Ameriquest's counsel explained that it would file a motion to compel on these issues, Ticor filed a motion for protective order staying the discovery, which will not be fully briefed until

March 8, 2010.[3]   Dkt. 574; Dkt. 575; Ameriquest's 56(f) Affidavit, ¶ 3 ("Affidavit").   As explained further in the Affidavit, if the Court disagrees with Ameriquest's interpretation of the CPLs, discovery into prior inconsistent statements about the interpretation will show that Ticor's assertions do not comport with the title industry's and its own interpretation of the CPL which will defeat the Motion.

**VI.      CONCLUSION.**

Based upon the foregoing, Third-Party Plaintiffs respectfully request that this Court deny Ticor's Motion for Summary Judgment in its entirety.

DATED:  February 16, 2010                        Respectfully submitted,

                                                 By: /s/  Joanne N. Davies
                                                 *Attorneys for Third-Party Plaintiffs*
                                                 Joanne N. Davies (admitted *pro hac vice*)
                                                 Buchalter Nemer
                                                 18400 Von Karman Ave., Ste. 800
                                                 Irvine, California 92612-0514
                                                 Telephone: (949) 760-1121
                                                 Facsimile:  (949) 720-0182

---

[3] Notably, Ticor, failed to mention to the Court that it had waived its objections to the interrogatories at issue by refusing to respond in a timely manner. FED. R. CIV. P. 34(b)(4).

## CERTIFICATE OF SERVICE

I, Joanne N. Davies, hereby certify that on this 16th day of February 2010, a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Pro Se Third Party Defendants Joan M. Pridgeon, Michael Smith and Isiah P. Ward, and James S. Schreier, Esq. and Eric P. Early, Esq., who do not receive the Notices of Electronic Filing will be served by mail.

By:  _____/s/ Joanne N. Davies_____

BN 5283828v6