# Exhibit 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSE TERRY, TERRY WATT & ROY PARNELL, JOHANNA GUYTON, LUISA & JORGE BOLO, SELVIN & BEATRICE QUIRE, JUAN BAEZ & CRUZ RIVERA, JULIE NORADIN, ANANAIS & ETHEL COLISTER, MICHAEL COX & SUSAN LAWRENCE, RAMSES FAVELA, WENCES GARCIA & MARIA LARA, ELIZABETH HILL, ALFREDO & ANA VELIA JAIME, DENISE & CAREY LEE, DARYL MONSON, LAWRENCE MUELLER, BENJAMIN NEELEY, JOHN & CONSTANCE PUGA, JAMES SHEW, and HAROLD WELLS,<br><br>        Plaintiffs<br><br>vs.<br><br>AMERIQUEST MORTGAGE COMPANY, AMERIQUEST CAPITAL CORPORATION, ACC CAPITAL HOLDINGS, INC., AMERIQUEST MORTGAGE SECURITIES, INC., ARGENT SECURITIES, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, THE ROLAND AND DAWN ARNALL LIVING TRUST, THE ESTATE OF ROLAND ARNALL, DAWN ARNALL, WAYNE LEE, CITIFINANCIAL, CITIGROUP, CITIMORGAGE, GREENWICH CAPITAL, WM SPECIALTY MORTGAGE, LLC, CREDIT SUISSE FINANCIAL CORPORATION, and DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE,<br><br>        Defendants.<br><br>AMERIQUEST MORTGAGE COMPANY; AMERIQUEST MORTGAGE SECURITIES, INC.; CITIGROUP GLOBAL MARKETS REALTY CORP., erroneously sued as CITIGROUP GLOBAL MARKETS, INC.; CITIFINANCIAL MORTGAGE COMPANY, INC. n/k/a CITIMORTGAGE, INC.; DEUTSCHE | Case No.: 08CV2475<br><br>**THIRD-PARTY COMPLAINT** |

1

BN 2576020v1

BANK NATIONAL TRUST COMPANY, AS
TRUSTEE OF AMERIQUEST MORTGAGE
SECURITIES, INC., ASSET BACKED PASSED
THROUGH CERTIFICATES 2005-R6;
DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE OF AMERIQUEST
MORTGAGE SECURITIES, INC., ASSET
BACKED PASSED THROUGH CERTIFICATES
2005-R7; DEUTSCHE BANK NATIONAL
TRUST COMPANY, AS TRUSTEE OF
AMERIQUEST MORTGAGE SECURITIES,
INC., ASSET BACKED PASSED THROUGH
CERTIFICATES 2005-R9; DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE
OF AMERIQUEST MORTGAGE SECURITIES,
INC., ASSET BACKED PASSED THROUGH
CERTIFICATES 2005-R10; DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE
OF AMERIQUEST MORTGAGE SECURITIES,
INC., ASSET BACKED PASSED THROUGH
CERTIFICATES 2006-R1; GREENWICH
CAPITAL FINANCIAL PRODUCTS, INC.; and
WM SPECIALTY MORTGAGE, LLC n/k/a JPMC
SPECIALTY MORTGAGE LLC,

    Third-Party Plaintiffs,

  v.

FIRST AMERICAN TITLE INSURANCE
COMPANY, TICOR TITLE INSURANCE
COMPANY, LENDERS FIRST CHOICE,
NORTHWEST TITLE & ESCROW
CORPORATION, TRISTAR TITLE, LLC,
ANGELA BARTUCCI, VINCENT L. DAVIS,
CESAR GAITAN, DONNA M. JACOBS, KILEY
KING, LYNNE A. LOVE, TIA M. MARTIN,
HELEN F. MITCHELL-CARTER, JOAN M.
PRIDGEON, MICHAEL R. SMITH, MELISSA
THOMAS, JACKIE VASQUEZ, ISIAH P. WARD,
and DOES 1-50 inclusive,

    Third-Party Defendants.

2

BN 2576020v1

## THIRD-PARTY COMPLAINT

Ameriquest Mortgage Company, Ameriquest Mortgage Securities, Inc., Citigroup Global Markets Realty Corp. erroneously sued as CitiGroup Global Markets, Inc., CitiFinancial Mortgage Company, Inc. now known as CitiMortgage, Inc., Deutsche Bank National Trust Company, as Trustee of the named Trusts, Greenwich Capital Financial Products, Inc., and WM Specialty Mortgage, LLC now known as JPMC Specialty Mortgage LLC, allege as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, because this case relates to claims arising under the Truth and Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA").

2.     Venue is proper in this judicial district pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, because the third-party complainants' claims against the third-party defendants named herein arise directly out of claims asserted by Plaintiffs in the underlying case currently pending before this Court.

## THE PARTIES

### *Third-Party Plaintiffs*

3.     Ameriquest Mortgage Company ("Ameriquest") is a Delaware company with its principal place of business in Orange, California.

4.     Ameriquest Mortgage Securities, Inc. ("AMSI") is a Delaware corporation with its principal place of business in Orange, California.

5.     Citigroup Global Markets Realty Corp. erroneously sued as CitiGroup Global Markets, Inc. ("Citigroup") is a New York corporation with its principal place of business in New York, New York.

6.     CitiFinancial Mortgage Company, Inc. now known as CitiMortgage, Inc. ("CitiMortgage") is a New York corporation with its principal place of business in St. Louis, Missouri.

BN 2576020v1

7.      Deutsche Bank National Trust Company, in its capacity as Trustee of the named Trusts, ("Deutsche, as Trustee") is a national banking association with its principal place of business in Santa Ana, California.

8.      Greenwich Capital Financial Products, Inc. ("Greenwich") is a Delaware corporation with its principal place of business in Greenwich, Connecticut.

9.      WM Specialty Mortgage, LLC now known as JPMC Specialty Mortgage LLC ("JPMC Specialty") is a Delaware limited liability company with its principal place of business in Seattle, Washington.

10.     AMSI, Citigroup, CitiMortgage, Deutsche, as Trustee, Greenwich, and JPMC Specialty are assignees of the loans at issue. AMSI, Citigroup, CitiMortgage, Deutsche, as Trustee, Greenwich, and JPMC Specialty are also intended third-party beneficiaries under the agreements given that the contracts were made for their benefit in that the contracting parties were aware that the mortgage loans would later be sold. Collectively, AMSI, Citigroup, CitiMortgage, Deutsche, as Trustee, Greenwich, and JPMC Specialty are referred hereinafter as the "Assignees." Ameriquest and the Assignees are collectively referred hereinafter as "Third-Party Complainants."

## *Title Insurance Underwriters*

11.     Third-Party Complainants are informed and believe, and thereon allege, that third-party defendant First American Title Insurance Company ("First American") is a corporation authorized to conduct business in the State of Illinois.

12.     Third-Party Complainants are informed and believe, and thereon allege, that third-party defendant Ticor Title Insurance Company ("Ticor") is a corporation authorized to conduct business in the State of Illinois. Collectively, First American and Ticor are referred hereinafter as the "Title Insurance Underwriters."

BN 2576020v1

*Closing Services Companies*

13.    Third-Party Complainants are informed and believe, and thereon allege, that third-party defendant Lenders First Choice ("Lenders Choice") is a California corporation authorized to conduct business in the State of Illinois.

14.    Third-Party Complainants are informed and believe, and thereon allege, that third-party defendant Northwest Title & Escrow Corporation ("Northwest") is a Minnesota corporation authorized to conduct business in the State of Illinois.

15.    Third-Party Complainants are informed and believe, and thereon allege, that third-party defendant Tristar Title, LLC ("Tristar") is an Illinois limited liability company authorized to conduct business in the State of Illinois.  Collectively, Lenders Choice, Northwest, and Tristar are referred hereinafter as the "Closing Services Companies."

*Closing Agents*

16.    Third-Party Complainants are informed and believe, and thereon allege, that third-party defendants Angela Bartucci, Vincent L. Davis, Cesar Gaitan, Donna M. Jacobs, Kiley King, Lynne A. Love, Tia M. Martin, Helen F. Mitchell-Carter, Joan M. Pridgeon, Michael R. Smith, Melissa Thomas, Jackie Vasquez, and Isiah P. Ward (collectively, the "Closing Agents") are notary publics and settlement services providers authorized to conduct business in the State of Illinois and residents of the State of Illinois.

17.    Third-Party Complainants are ignorant of the true names and capacities, whether individual, corporate, associate, employee, agent or otherwise, of third-party defendant Does 1 though 50, inclusive, and therefore sue said third-party defendants by such fictitious names. Third-Party Complainants are informed and believe and thereon allege that each of the third-party defendants designated herein as a fictitiously named third-party defendant is, in some manner, responsible for the events and happenings referred to, and caused the damage to Third-Party Complainants as herein alleged.  Third-Party Complainants will amend their Third-Party Complaint to allege the true names and capacities of those third-party defendants when such information is ascertained.

BN 2576020v1

## GENERAL ALLEGATIONS

### *Allegations as to the Title Insurance Companies*

18.    On or about October 14, 2005, First American entered into an agreement with Ameriquest wherein First American agreed to reimburse Ameriquest for any actual losses incurred by Ameriquest in connection with any closings conducted by Lenders Choice ("First American Closing Protection Agreement").

19.    On or about October 18, 2005, Ticor entered into an agreement with Ameriquest wherein Ticor agreed to reimburse Ameriquest for any actual losses incurred by Ameriquest in connection with any closings conducted by Tristar ("Ticor Closing Protection Agreement). The First American Closing Protection Agreement and Ticor Closing Protection Agreement are collectively referred to hereinafter as "Closing Protection Agreements."

20.    Third-Party Complainants are informed and believe, and thereon allege, that on or about the date each loan closed, the Title Insurance Underwriters issued Closing Protection Letters in the form authorized by the American Land Title Association ("ALTA Closing Protection Letters") for each loan where the Title Insurance Underwriters issued the preliminary title commitments and final title policies. The ALTA Closing Protection Letters provide that the Title Insurance Underwriters agree to reimburse Ameriquest for any actual losses incurred by Ameriquest in connection with any closings conducted by the Closing Services Companies.

### *Allegations as to the Closing Services Companies*

21.    On or about the date each loan closed, Ameriquest and the Closing Services Companies entered into an agreement wherein Ameriquest retained the Closing Services Companies as independent "closing agents" (the "Closing Instructions").

22.    Pursuant to the Closing Instructions, the Closing Services Companies agreed to assist Ameriquest in closing home mortgage loans for Ameriquest borrowers. The Closing Services Companies' duties included, among other things, providing Ameriquest's borrowers with the appropriate paperwork and disclosures for their home loans.

BN 2576020v1

*Allegations as to the Closing Agents*

23.     Third-Party Complainants are informed and believe, and thereon allege, that the Closing Services Companies retained the services of the Closing Agents to conduct the closing of Plaintiffs' loans.

24.     Third-Party Complainants are further informed and believe, and thereon allege, that the Closing Agents are either employees or agents of the Closing Services Companies.

25.     Following the closing of Plaintiffs' loans, the Closing Agents executed a closing agent affidavit confirming, *inter alia*, that all loan documents were properly signed, dated and notarized, that the rescission notice was properly filled in, and that copies of all documents were given to the Ameriquest borrowers (the "Closing Affidavits").

**The Underlying Lawsuit**

26.     On or about April 30, 2008, Plaintiffs filed a lawsuit against the Third-Party Complainants in the United States District Court for the Northern District of Illinois (the "Lawsuit"). The Lawsuit alleges, among other things, that the Third-Party Complainants violated TILA by, among other things, (1) failing to provide Plaintiffs with a proper Notice of Right to Cancel, (2) failing to make the required disclosures regarding Plaintiffs' loan, as required by TILA, and (3) failing to adequately notify Plaintiffs of their right to rescind the loan. The Lawsuit further alleged that Third-Party Complainants violated the Illinois Consumer Fraud Act by initially providing Plaintiffs with favorable loan terms and then providing different loan terms at closing and/or failing to disclose Plaintiffs' loan terms at closing.

27.     All of the claims alleged against the Third-Party Complainants relate to duties that should have been carried out by the Closing Services Companies and Closing Agents pursuant to the Closing Instructions between Ameriquest and the Closing Services Companies. Thus, to the extent that Plaintiffs' allegations are true, this is attributable to the conduct of the Closing Services Companies and Closing Agents.

28.     In addition, the Title Insurance Underwriters are obligated under their respective Closing Protection Agreements and ALTA Closing Protection Letters to reimburse Third-Party

BN 2576020v1

Complainants for any actual losses incurred by Third-Party Complainants in connection with closings.

29.    Pursuant to the agreements of the parties, and principals of equity, the Third-Party Complainants have made a demand on the Title Insurance Underwriters and Closing Services Companies that they agree to indemnify the Third-Party Complainants for any and all damages that the Third-Party Complainants suffer in connection with the Lawsuit. To date, neither the Title Insurance Underwriters nor Closing Services Companies have indemnified the Third-Party Complainants in any amount.

## Count I

### (Breach of Contract—Against the Closing Services Companies)

30.    Third-Party Complainants incorporate and re-allege all prior allegations of this Third-Party Complaint as though fully set forth herein.

31.    This count is asserted by the Third-Party Complainants against the Closing Services Companies. The parties' relationship to each loan transaction is detailed in a chart attached as Exhibit "A."

32.    Ameriquest and the Closing Services Companies entered into valid and enforceable Closing Instructions on or about the date of each loan closing.

33.    By executing the Closing Instructions, the Closing Services Companies agreed, among other things, that the Closing Services Companies would (1) "close the transaction in strict accordance with these Closing Instructions," (2) ensure that "[a]ll Truth in Lending Disclosures [are] signed prior to the Note, Mortgage, or other legal documents," (3) properly calculate and insert the dates in the Notice of Right Cancel form, (4) "provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement," and (5) provide each Borrower with "one (1) copy of all documents required by the Lender or [Closing Services Companies] to be signed by the Borrower," unless more than one (1) copy was required by the Closing Instructions.

BN 2576020v1

34.     Furthermore, by executing the Closing Instructions, the Closing Services Companies agreed to ensure that "[a]n Insured Closing Protection Letter in the form authorized by the American Land Title Association ("ALTA") [was] issued in connection with the closing and settlement of any loan closing through a title insurance agent or title insurance company authorized to do business in the State of IL."

35.     The Closing Services Companies also agreed that they would "be made liable for losses incurred by [Ameriquest], as a result of the [Closing Services Companies'] closing a loan with knowledge that errors were contained in any documents or instructions."

36.     Third-Party Complainants have performed all obligations and promises required on their part to be performed in accordance with the Closing Instructions, except for any obligations which may have been excused by the Closing Services Companies and/or which Third-Party Complainants may have been prevented from performing by the acts or omissions of the Closing Services Companies.

37.     In the event that the allegations in the Lawsuit are proven to be true, the Closing Services Companies breached their Closing Instructions with Ameriquest by failing to fully comply with their obligations.

38.     Third-Party Complainants have suffered damages as a direct result of Closing Services Companies' acts and/or omissions in an amount according to proof, but in no event less than any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to Plaintiffs against Third-Party Complainants in connection with the Lawsuit. Third-Party Complainants have also suffered damages to their reputation and goodwill as a direct result of the Closing Services Companies' conduct, in an amount to be proven at trial.

<u>Count II</u>

(Contractual Indemnity—Against the Title Insurance Underwriters,

Closing Services Companies, and Does 1 through 50)

39.     Third-Party Complainants incorporate and re-allege all prior allegations of this Third-Party Complaint as though fully set forth herein.

BN 2576020v1

40.     This count is asserted by the Third-Party Complainants against the Title Insurance Underwriters and Closing Services Companies.  The parties' relationship to each loan transaction is detailed in a chart attached as Exhibit "A."

41.     Ameriquest and the Title Insurance Underwriters entered into Closing Protection Agreements whereby the Title Insurance Underwriters agreed to reimburse Ameriquest for any actual losses incurred by Ameriquest with any closings conducted by Lenders Choice and Tristar.

42.     Specifically, the Title Insurance Underwriters agreed to reimburse Ameriquest for actual losses arising out of the (1) "failure of the [Closing Services Company] to comply with written closing instruction to the extent that they relate to . . . (b) the obtaining of any other document, specifically required by you;" and (2) "[n]egligence of the [Closing Services Company] in handling your . . . documents in connection with such closings."

43.     Third-Party Complainants are informed and believe, and thereon allege, that on or about the date each loan closed, the Title Insurance Underwriters issued Closing Protection Letters in the form authorized by the American Land Title Association ("ALTA Closing Protection Letters") for each loan where the Title Insurance Underwriters issued the preliminary title commitments and final title policies.  The ALTA Closing Protection Letters provide that the Title Insurance Underwriters agree to reimburse Ameriquest for any actual losses incurred by Ameriquest in connection with any closings conducted by the Closing Services Companies.

44.     Likewise, Ameriquest and the Closing Services Companies entered into the Closing Instructions wherein the Closing Services Companies agreed to indemnify Ameriquest for any losses incurred as a result of the Closing Services Companies' closing of the loans.

45.     In the event that Plaintiffs' allegations in the Lawsuit are found to be true by a trier of fact, any loss that Third-Party Complainants suffer in connection with the Lawsuit including, but not limited to, any judgment, settlement, attorneys' fees, costs, or other equitable relief, is directly attributable to the conduct of the Closing Services Companies at the closing of the Plaintiffs' loans.

BN 2576020v1

46.    Pursuant to the Closing Protection Agreements, ALTA Closing Protection Letters, and the Closing Instructions, Third-Party Complainants are entitled to indemnification from the Title Insurance Underwriters and Closing Services Companies in an amount sufficient to reimburse Third-Party Complainants for any judgment, settlement, attorneys' fees, costs, or other equitable relief that Third-Party Complainants suffer in connection with the Lawsuit.

### Count III

### (Equitable Indemnity—Against the Closing Services Companies, Closing Agents, and Does 1 through 50)

47.    Third-Party Complainants incorporate and re-allege all prior allegations of this Third-Party Complaint as though fully set forth herein.

48.    This count is asserted by the Third-Party Complainants against the Closing Services Companies and Closing Agents. The parties' relationship to each loan transaction is detailed in a chart attached as Exhibit "A."

49.    In the event that Plaintiffs' allegations in the Lawsuit are found to be true by a trier of fact, any loss that Third-Party Complainants suffer in connection with the Lawsuit including, but not limited to, any judgment, settlement, attorneys' fees, costs, or other equitable relief, is directly attributable to the conduct of the Closing Services Companies and Closing Agents. But for the Closing Services Companies' and Closing Agents' failure to fulfill their obligations, including, but not limited to, providing Plaintiffs with full and complete disclosures regarding their Ameriquest loan, Third-Party Complainants would not have suffered damages in connection with the Lawsuit.

50.    Third-Party Complainants reasonably relied on promises made by the Closing Services Companies and Closing Agents. In particular, Third-Party Complainants relied on the Closing Services Companies' and Closing Agents' representations that they would assiduously fulfill their obligations including, but not limited to, in preparing any and all closing documents and presenting the same to Ameriquest's borrowers, and as confirmed in the Closing Affidavits.

BN 2576020v1

51.     Thus, to the extent that Plaintiffs' allegations are true, Third-Party Complainants did not know, and had no reason to know, that the Closing Services Companies and Closing Agents would not fulfill their obligations including, but not limited to, in preparing any and all closing documents and presenting the same to Plaintiffs.

52.     Under principals of equity, Third-Party Complainants are entitled to indemnification from the Closing Services Companies and Closing Agents in an amount sufficient to reimburse Third-Party Complainants for any judgment, settlement, attorneys' fees, costs, or other equitable relief that Third-Party Complainants suffer in connection with the Lawsuit.

## Count IV

### (Contribution—Against the Title Insurance Underwriters, Closing Services Companies, Closing Agents, and Does 1 through 50)

53.     Third-Party Complainants incorporate and re-allege all prior allegations of this Third-Party Complaint as though fully set forth herein.

54.     This count is asserted by the Third-Party Complainants against the Title Insurance Underwriters, Closing Services Companies, and Closing Agents.  The parties' relationship to each loan transaction is detailed in a chart attached as Exhibit "A."

55.     In the event that Plaintiffs' allegations in the Lawsuit are found to be true by a trier of fact, any loss that Third-Party Complainants suffer in connection with the Lawsuit including, but not limited to, any judgment, settlement, attorneys' fees, costs, or other equitable relief, is directly attributable to the conduct of the Closing Services Companies and the Closing Agents at the closing of Plaintiffs' loans.  But for the Closing Services Companies' and Closing Agents' failure to fulfill their obligations, including, but not limited to, providing Plaintiffs with full and complete disclosures regarding their Ameriquest loan, Third-Party Complainants would not have suffered damages in connection with the Lawsuit.

56.     The Closing Protection Agreements and ALTA Closing Protection Letters further provide that the Title Insurance Underwriters would reimburse Ameriquest for any actual losses

incurred by Ameriquest in connection with closings performed by the Closing Services Companies.

57.    Third-Party Complainants reasonably relied on the promises and representations made by the Closing Services Companies and the Closing Agents.  In particular, Third-Party Complainants relied on the Closing Services Companies' and Closing Agents' representations that they would assiduously fulfill their obligations including, but not limited to, in preparing any and all closing documents and presenting the same to Ameriquest's borrowers, and as confirmed in the Closing Affidavits.

58.    Thus, to the extent that Plaintiffs' allegations are true, Third-Party Complainants did not know, and had no reason to know, that the Closing Services Companies and Closing Agents would not fulfill their obligations including, but not limited to, in preparing any and all closing documents and presenting the same to Plaintiffs.

59.    Under principals of equity, Third-Party Complainants are entitled to contribution from the Title Insurance Underwriters, Closing Services Companies, and Closing Agents in an amount sufficient to reimburse Third-Party Complainants for any judgment, settlement, attorneys' fees, costs, or other equitable relief that Third-Party Complainants suffer in connection with the Lawsuit.

**Count V**

**(Negligence—Against the Closing Services Companies, Closing Agents,**

**and Does 1 through 50)**

60.    Ameriquest incorporates and re-alleges paragraphs 1 through 29 of this Third-Party Complaint as though fully set forth herein.

61.    This count is asserted by Ameriquest against the Closing Services Companies and Closing Agents.

62.    The Closing Services Companies and Closing Agents had a duty to further Ameriquest's interests, and to avoid conduct which could expose Ameriquest to legal action. Ameriquest gave each of the Closing Services Companies and Closing Agents all the documents

BN 2576020v1

necessary to close each borrower's respective loan. The Closing Services Companies and Closing Agents represented and warranted that they were familiar with their obligations to properly close the loans and would properly prepare any and all closing documents and presenting the same to Ameriquest's borrowers. Ameriquest relied on these representations and warranties and, without them, would not have paid the Closing Services Companies and Closing Agents a fee to close loans for Ameriquest.

63.    Based on their representations and warranties to Ameriquest, each of the Closing Services Companies and Closing Agents also had a duty to properly prepare any and all closing documents and presenting the same to Ameriquest's borrowers.

64.    In the event that the allegations in the Lawsuit are proven to be true, then the Closing Services Companies and Closing Agents breached this duty.

65.    Ameriquest was unaware of and could not have discovered any negligence by the Closing Services Companies and Closing Agents before Plaintiffs filed their Complaint on or about April 30, 2008.

66.    As a direct result of the Closing Services Companies' and Closing Agents' negligence, Ameriquest has suffered damages in an amount to be proven at trial, but in no event less than any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to Plaintiffs against Ameriquest in connection with the Lawsuit.

**Count VI**

**(Negligent Misrepresentation—Against the Closing Services Companies, Closing Agents and Does 1 through 50)**

67.    Ameriquest incorporates and re-alleges paragraph 1 through 29 of this Third-Party Complaint as though fully set forth herein.

68.    This count is asserted by Ameriquest against the Closing Services Companies and Closing Agents.

BN 2576020v1

69.    The Closing Services Companies and Closing Agents represented to Ameriquest that they would provide Ameriquest's borrowers with the appropriate disclosures regarding their loans.

70.    At the time the Closing Services Companies and Closing Agents made this representation, the Closing Services Companies and Closing Agents knew, or should have known, that it was materially false. In particular, to the extent that Plaintiffs' allegations are true, the Closing Services Companies and Closing Agents had no intention of providing complete and accurate disclosures to Ameriquest's borrowers.

71.    The Closing Services Companies and Closing Agents made this representation, and others, with the intention to induce Ameriquest to enter into an agreement with them and to continue using their services, wherein the Closing Services Companies and Closing Agents would receive compensation from Ameriquest or others.

72.    Ameriquest relied on the Closing Services Companies' and Closing Agents' representations when it employed the Closing Services Companies and/or Closing Agents for the closing of its loans.

73.    In the event that the allegations in the Lawsuit are proven to be true, then the Closing Services Companies' and Closing Agents' representations to Ameriquest were false in that they did not provide true and complete disclosures to Plaintiffs.

74.    As a direct and proximate cause of the Closing Services Companies' and Closing Agents' false representations, Ameriquest has suffered damages including, but not limited to, any damages that it suffers in connection with the Lawsuit.

### Count VII

**(Fraud—Against the Closing Services Companies, Closing Agents, and Does 1 through 50)**

75.    Ameriquest incorporates and re-alleges paragraphs 1 through 59 of this Third-Party Complaint as though fully set forth herein.

76.    This count is asserted by Ameriquest against the Closing Services Companies and Closing Agents.

15

77.    The Closing Services Companies and Closing Agents represented to Ameriquest that they would provide Ameriquest's borrowers with the appropriate disclosures regarding their loans.

78.    At the time the Closing Services Companies and Closing Agents made this representation, the representation was false and the Closing Services Companies and Closing Agents knew that it was materially false. In particular, to the extent that Plaintiffs' allegations are true, the Closing Services Companies and Closing Agents had no intention of providing complete and accurate disclosures to Ameriquest's borrowers.

79.    The Closing Services Companies and Closing Agents made this representation, and others, with the intention to induce Ameriquest to enter into an agreement with the Closing Services Companies and Closing Agents, wherein the Closing Services Companies and Closing Agents would receive compensation from Ameriquest.

80.    Ameriquest relied on the Closing Services Companies' and Closing Agents' representations when it employed it as a closing agent.

81.    In the event that the allegations in the Lawsuit are proven to be true, then the Closing Services Companies' and Closing Agents' representations to Ameriquest were false in that they did not provide true and complete disclosures to Plaintiffs.

82.    As a direct and proximate cause of the Closing Services Companies' and Closing Agents' false representations, Ameriquest has suffered damages including, but not limited to, any damages that it suffers in connection with the Lawsuit.

### Count VIII

**(Declaratory Relief—Against the Title Insurance Underwriters,**

**Closing Services Companies, and Does 1 through 50)**

83.    Third-Party Complainants incorporate and re-allege all prior allegations of this Complaint as though fully set forth herein.

84.    This count is asserted by the Third-Party Complainants against the Title Insurance Underwriters and Closing Services Companies. The parties' relationship to each loan transaction is detailed in a chart attached as Exhibit "A."

85.    An actual and present controversy has arisen between Third-Party Complainants and the Title Insurance Underwriters and Closing Services Companies regarding the Title Insurance Underwriters' and Closing Services Companies' duty to indemnify Third-Party Complainants in connection with the Lawsuit. In particular, Third-Party Complainants contend that the Title Insurance Underwriters and Closing Services Companies are required to indemnify Third-Party Complainants for any judgment, settlement, attorneys' fees, costs, or other equitable relief that is awarded to Plaintiffs against Third-Party Complainants in connection with the Lawsuit. However, the Title Insurance Underwriters and Closing Services Companies have not indemnified Third-Party Complainants in any amount.

86.    Accordingly, Third-Party Complainants seek a declaratory judgment from this Court setting forth the obligations of the Title Insurance Underwriters and Closing Services Companies to indemnify Third-Party Complainants in connection with the Lawsuit.

WHEREFORE, Third-Party Complainants pray for judgment against the Title Insurance Underwriters, Closing Services Companies, and Closing Agents as follows:

1.    For monetary damages in an amount according to proof at trial, but no less than is sufficient to indemnify Third-Party Complainants for any and all damages that Third-Party Complainants incur in connection with the Lawsuit including, but not limited to, any judgment, settlement, attorneys' fees, costs, or other equitable relief that Plaintiffs are awarded as against Third-Party Complainants and their affiliates;

2.    For contribution in an amount according to proof at trial, but no less than is sufficient to compensate Third-Party Complainants for any and all damages that Third-Party Complainants incur in connection with the Lawsuit including, but not limited to, any judgment, settlement, attorneys' fees, costs, or other equitable relief that Plaintiffs are awarded as against Third-Party Complainants and their affiliates;

BN 2576020v1

3.    For a declaratory judgment stating that the Title Insurance Underwriters and Closing Services Companies are required to indemnify Third-Party Complainants for any and all damages that Third-Party Complainants suffer in connection with the Lawsuit;

4.    For actual damages;

5.    For punitive damages;

6.    For their reasonable attorneys' fees and costs of suit; and

7.    For such other relief as the Court may deem just and proper.

DATED:  January 23, 2009                Respectfully submitted,

                                        By:____/s/ Joanne N. Davies_____
                                        *Attorneys for* Ameriquest Mortgage Company,
                                        Ameriquest Mortgage Securities, Inc., Citigroup
                                        Global Markets Realty Corp. erroneously sued as
                                        CitiGroup Global Markets, Inc., CitiFinancial
                                        Mortgage Company, Inc. n/k/a CitiMortgage, Inc.,
                                        Deutsche Bank National Trust Company, as
                                        Trustee of the named Trusts, Greenwich Capital
                                        Financial Products, Inc., and WM Specialty
                                        Mortgage, LLC n/k/a JPMC Specialty Mortgage
                                        LLC

                                        Joanne N. Davies (admitted *pro hac vice*)
                                        Buchalter Nemer
                                        18400 Von Karman Ave., Ste. 800
                                        Irvine, California 92612-0514
                                        Telephone: (949) 760-1121
                                        Facsimile:  (949) 720-0182

18

BN 2576020v1