IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO:<br><br>*Rose Terry, et al. v. Ameriquest Mortgage Company, et al.*, 08-cv-2475, N.D. Ill | (Centralized before The Honorable Marvin E. Aspen)<br><br>Assigned to Magistrate Judge Morton Denlow |

### AMERIQUEST'S OPPOSITION TO TICOR'S MOTION TO COMPEL

**I.  INTRODUCTION**

As background, at the December 2010 settlement conference before Magistrate Judge Morton Denlow the *Terry* Plaintiffs settled their claims against Ameriquest and its assignees. What remains in the *Terry* case are Ameriquest and its assignees' third-party claims against title underwriter, Ticor Title, and its agents Tristar Title and Northwest Title, who were responsible for ensuring that Plaintiffs' loans were properly closed. Last week Judge Aspen granted Ameriquest's motion to reassign this case into the MDL. There is currently an August 31, 2012 discovery cut-off date in the *Terry* matter but Judge Chang indicated he may allow additional discovery on claims beyond the cutoff date depending on what Ameriquest learns at the deposition of Ticor's 30(b)(6) witness on the claims process for closing protection letters.

With regard to the pending motion to compel, Ticor makes much ado about nothing. Ameriquest agreed to produce a 30(b)(6) witness for 24 out of 28 "areas of interest" and 4 others were withdrawn by Ticor. For the 8 topics at issue, Ameriquest agreed to produce a witness about a narrower scope of the topics and sought Ticor's assistance in further defining the topics because the so-called "areas of interest" were not defined with reasonable particularity, encompassed huge amounts of irrelevant information, and would require a massively expensive fishing expedition. Ameriquest sought Ticor's acknowledgement that an expensive fishing

1

expedition was not sought, but Ticor just responds that Ameriquest has to bear the burden and "go fish" for evidence of oral, informal, and irrelevant "agreements" or any oral, informal, and irrelevant instructions about a closing.

In its motion, Ticor softens its stance and suggests that Ameriquest may not have to incur such an expense. But until it withdraws its demands that Ameriquest search the ocean for irrelevant information and delineates a 30(b)(6) topic with "reasonable particularity" which is not overly broad in scope, its motion should be denied.

On an unrelated topic, Ameriquest requests the Court's assistance in compelling Ticor to produce Claudia Graham for deposition. Ticor has explained that it will not cooperate in any additional discovery without a court order.

## II. TICOR'S MOTION SHOULD BE DENIED: THE FEDERAL RULES OF CIVIL PROCEDURE DO NOT REQUIRE SUCH A BURDENSOME FISHING EXPEDITION

### A. "Area of Interest" Nos. 1-6: Any Agreement About Any Subject Regardless of Relevance

Ticor seeks to compel Ameriquest to produce a witness about "Areas of Interest" 1 to 6 about any "agreement," formal or informal, written or oral, about any subject matter between Ameriquest and the title companies. This is an improper 30(b)(6) request because it fails the reasonable particularity standard and encompasses wholly irrelevant topics. "[T]he requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049 (7th Cir. 2000) quoting *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D.Minn. 2000).

The undefined term "agreement" is problematic because Ticor contends it wants a witness to investigate and be prepared to address every type of potential agreement - such as whether two persons agree to use a certain fax number or agree to provide title policies within a certain number of days. One can imagine lots of informal agreements, written or oral, that have no relevance to this matter. And to find evidence of irrelevant agreements, other than asking two

2

witnesses who are going to be deposed by Ameriquest and its current few remaining employees, Ameriquest will have restore back-up tapes and search of emails for any reference to a theoretically possible oral or informal agreement having nothing to do with this case. This is a cost-prohibitive fishing expedition, costing hundreds of thousands to millions of dollars.[1]

To remedy the deficiency, Ameriquest agreed to produce a witness about (1) any agreement Ticor identified in advance of the deposition; (2) any executed contract – a formal written agreement; and (3) anything that could be reasonably construed as an agreement that could be found in any of the loan or closing files for the loans at issue. This includes the written Closing Instructions for each loan; Closing Agent Affidavit for each loan; closing protection letter applicable to each loan; and title insurance policy for each loan. Ameriquest does not have employees with knowledge of any other agreements other than those it agreed to testify about.

But if Ticor wants to identify additional agreements, the information is also available to Ticor. Ticor could contact its agents and gather the same information from them, if it has not already done so, and Ticor also has the Tristar files in its possession.

Further, Ameriquest has made available two witnesses for deposition who could have knowledge about some informal agreement or the lack thereof: the former Director of Vendor Relations and Vice President of Compliance from the relevant time period. Those depositions will take place on the dates Ticor requested – August 21 and 22. If they know about some informal agreement or the absence of agreements, they can testify to it at that time and an additional 30(b)(6) deposition on the topic is not warranted. And some of the subject matter is covered by **14** other topics for which Ameriquest will produce a 30(b)(6) witness such as policies and practices about agreements called closing protection letters, communications between Ameriquest and the title companies about closing protection letters and instructions related thereto. *See* Ex. 1, Notice of Deposition Regarding Closing Protection Letters, Areas of Inquiry Nos. 1 to 14.

---

[1] Ameriquest is unable to provide a declaration of burden on 3 days' notice but the burden of restoring and searching its back-up tapes for similar information has already been before Judge Mason. *See* Ex. 2.

The Motion repeatedly proclaims that the relevance of "agreements" is undisputed. Motion at 5, 7. This is simply false. *See* Ex. 3, (objections to Topics 1 to 8 based on relevance, overbreadth, and burden); Ex. 4, (Ameriquest's 7/11/12 letter discussing overbreadth and lack of relevance); Ex. 5, (Ameriquest's 7/25/12 letter ("the 30(b)(6) notice would require an unduly burdensome restoration of back-up tapes and search of emails for any reference to a theoretically possible oral or informal agreement having nothing to do with this case.")). Ticor does not meet burden of showing the relevance of any of the requested information beyond what Ameriquest already agreed to provide.

Ticor's insistence that Ameriquest incur the expense of searching for evidence of agreements is hypocritical and contradicts Ticor's recent assertions to Judge Chang that the *Terry* matter is too small to require incurring any significant expense and its refusal to conduct any extensive search of its own electronic records.

The court is required by Fed. R. Civ. P. 26(b)(2)(C)(I) to limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if the burden of the proposed discovery "outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Such a limitation is warranted here.

### B. "Area of Interest" Nos. 7-8: Any "Instruction" About Any Subject Regardless of Relevance

Areas of Inquiry 7 and 8 have the same defects with an added layer of burden. Ticor seeks a witness to testify about any review of the title companies' compliance with "any instruction" regarding the closing of the loans. (Emphasis in Motion to Compel at p. 7). The problematic phrase is "any instruction." Although Ticor contends that the relevance of "any instruction" regarding the closing is not disputed, that is simply false. As referenced above, the parties have been discussing the relevance and overbreadth of the request for quite some time.

4

BN 12116222v2

Ticor contends closing instructions are relevant and cites to the complaint but the complaint references the same "Closing Instructions" which Ameriquest is willing to testify about. Searching for any random instruction about a closing such as to send the title policy to a certain fax number or by a certain date would be unduly burdensome. No one could know about such an instruction and the only method of finding it would be looking at the loan or closing file (which have already been produced) or searching restoring back-up tapes and searching through emails for the off-chance that there is some instruction about a loan closing.

To remedy the deficiency, Ameriquest agreed to produce a witness about (1) the written Closing Instructions which accompany each loan; and (2) any other closing instruction that Ticor identifies in advance of the deposition. But Ticor contends that is not enough. Because their request fails the reasonable particularity requirement, seeks irrelevant information, and would require an unduly burdensome search, it should be denied.

### III. DEPOSITION OF CLAUDIA GRAHAM

In 2010, Ameriquest propounded a 30(b)(6) deposition notice about Ticor/Fidelity's claims process for closing protection letters and the interpretation of whether a letter is applicable to a single transaction or multiple transactions – a core issue of the case. Ticor sought a protective order and was successful until Judge Chang recently compelled Ticor/Fidelity to produce a 30(b)(6) witness and respond to an interrogatory on the topic. Ex. 6, 7/19/12 Transcript at 10. Because Ticor has been dragging its feet on the scheduling of the 30(b)(6) witness claiming that it was unable to find a witness and ignored the deadline for the interrogatory,[2] Ameriquest found a knowledgeable Ticor witness, Claudia Graham. Ex. 7 (7/31/12 email from Ticor). Ms. Graham recently testified on the closing protection letter claims process for Illinois as a 30(b)(6) witness for Ticor/Fidelity. Ex. 8 (excerpts of deposition). Accordingly, Ameriquest has requested that Ticor cooperate in scheduling her deposition as a percipient witness and has agreed to take her deposition near her residence in Jacksonville,

---

[2] After Ameriquest explained that it would raise their failure to comply with Judge Chang's order to the Court, Ticor states that they will let us know an available date and city sometime early the week of August 6.

5

BN 12116222v2

Florida, Fidelity's headquarters and the likely location of Ticor's 30(b)(6) witnesses. Because Ticor's counsel has repeatedly stated that they will not agree to *any* additional discovery without a court order, Ameriquest conferred with Ticor's counsel by email on August 1 and phone on August 2, seeking confirmation that they will agree to produce her. Ticor will not and argues that because Judge Chang's order does not state she has to be produced, they will not.

Judge Chang's order in no way precludes her from being deposed and her testimony is obviously relevant. Ticor should be compelled to cooperate in scheduling her deposition without further delay.

Ticor objects to having the deposition of Claudia Graham raised to the Court on short notice and instead, wants to delay having this issue heard by the Court by requiring a deposition notice to be served and then Ticor to subsequently object. There is no reason for the delay. This is a simple issue, and Ticor should be able to explain any defenses to scheduling the deposition of Claudia Graham at the hearing. However, if the Court agrees that the dispute should be heard on additional notice, the issue should be heard on August 8 to avoid a significant delay in light of the August 31 discovery cutoff.

## IV.     CONCLUSION

For the foregoing reasons, Ticor's motion should be denied, and Claudia Graham ordered to appear for deposition.

DATED: August 3, 2012                                Respectfully submitted,

By: /s/ Randall L. Manvitz
*Attorneys for Ameriquest Mortgage Company*

Randall L. Manvitz, Esq. (admitted *pro hac vice*)
BUCHALTER NEMER
55 Second Street, 17th Floor
San Francisco, California 94105
Telephone: (415) 227-0900
Facsimile: (415) 227-0770

BN 12116222v2

## CERTIFICATE OF SERVICE

I, Randall Manvitz, hereby certify that on this 3rd day of August 2012, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Randall Manvitz

BN 12116222v2