# EXHIBIT 6

```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION

ROSE TERRY, et al.,                )
                                   )
              Plaintiffs,          )
                                   )
     vs.                           )
                                   )
AMERIQUEST MORTGAGE COMPANY,       )
et al.,                            )
                                   )
              Defendants.          )  No. 08 CV 02475
-----------------------------------)
AMERIQUEST MORTGAGE COMPANY,       )  Chicago, Illinois
et al.,                            )  July 19, 2012
                                   )  11:00 o'clock a.m.
     Third-Party Plaintiffs,       )
                                   )
     vs.                           )
                                   )
FIRST AMERICAN TITLE INSURANCE     )
COMPANY, et al.,                   )
                                   )
     Third-Party Defendants.       )
```

            TRANSCRIPT OF PROCEEDINGS - MOTION
         BEFORE THE HONORABLE JUDGE EDMOND E. CHANG

APPEARANCES:

For the Third-Party          MS. JOANNE N. DAVIES
Plaintiffs:                  BUCHALTER NEMER
                             18400 Von Karman Avenue
                             Irvine, California 92612
                             949-760-1121
                             jdavies@buchalter.com


For the Third-Party          MR. ALBERT E. FOWERBAUGH, JR.
Defendant, Ticor             MR. JAMES E. SOJOODI
Title Insurance              MR. ALEX KILES
Company:                     BUTLER, RUBIN, SALTARELLI & BOYD
                             70 West Madison Street
                             Chicago, Illinois 60602
                             312-696-4440
                             afowerbaugh@butlerrubin.com

| | | |
|---|---|---|
| 1 | Court Reporter: | FEDERAL OFFICIAL COURT REPORTER |
| 2 | | MS. KRISTA BURGESON |
| | | 219 South Dearborn Street |
| 3 | | Chicago, Illinois 60604 |
| | | 312-435-5567 |
| 4 | | krista_burgeson@ilnd.uscourts.gov |

```
 1            THE CLERK:  08 C 2475, Terry versus Ameriquest
 2   Mortgage.
 3            MS. DAVIES:  Good morning, your Honor, or good
 4   afternoon, I should say.  Joanne Davies, D-a-v-i-e-s,
 5   appearing on behalf of third party plaintiffs.
 6            MR. FOWERBAUGH:  Good morning, your Honor.  Albert
 7   Fowerbaugh, F-o-w-e-r-b-a-u-g-h, on behalf of Ticor.  And with
 8   me are my colleagues, James Sojoodi, S-o-j-o-o-d-i, and our
 9   summer associate, Alex Kiles, K-i-l-e-s, if he is permitted to
10   stand up with us.
11            THE COURT:  Sure, and good morning to you all.
12            So let's see, let's first -- I think the two motions
13   are related that are up today.  I have read the filings, so
14   let me ask a few questions.
15            So Cole, Drake, and Walker have all been deposed; is
16   that right?
17            MS. DAVIES:  That is correct, your Honor.
18            THE COURT:  Okay.
19            And with regard to the policies, the local policies
20   of the Illinois agents in this time period, I will call it
21   time period for now, 2003 to 2006, so who would be a 30(b)(6)
22   witness as to how Illinois, not nationwide, but Illinois
23   closing letters were generated for blanket, not global,
24   blanket protection letters in Illinois from 2003 to 2006?  Do
25   you know who that is?
```

1  MR. FOWERBAUGH: Well, with regard to the Ticor brand
2  in Illinois during that time, that would be David Scott, who
3  already testified on that topic as Ticor's 30(b)(6)
4  representative.
5  As to the other brands, I don't know who, if anyone,
6  would have -- we would have to find someone who could either
7  -- either has personal knowledge or through an investigation
8  determine what those policies and practices were, if they
9  could be discovered.
10 Now, we have, in fact, produced some documents from
11 Chicago Title in Illinois during that time, so we could --
12 there would be someone, but I can't tell you the identity of
13 that person as we are standing here.
14 THE COURT: Okay.
15 And the -- and so the protection letters that
16 Ameriquest says were blanket letters, or multi transaction
17 letters, that were issued under the Ticor brand by Northwest
18 and Tri-Star, was it?
19 MS. DAVIES: Correct, your Honor.
20 MR. FOWERBAUGH: (Nodding head.)
21 THE COURT: But it is accurate to say that the
22 plaintiff's position, or the letters that the plaintiffs are
23 relying on were issued by those two agents under the Ticor
24 brand?
25 MS. DAVIES: They were issued, yes, using the Ticor,

```
 1  Illinois, web site.
 2          However, I would say that there is another company,
 3  Security Union, that also used either that web site or a
 4  companion web site for issuing closing protection letters.
 5          So, there would be information that would presumably
 6  relate to blanket closing protection letters that would go
 7  beyond the Ticor brand.
 8          MR. FOWERBAUGH: Although Security Union is not
 9  alleged to have had any involvement in any of the loans at
10  issue in this lawsuit. The title policies were also issued by
11  Ticor, and the alleged closing protection letters were all
12  issued by Ticor, not Security Union.
13          MS. DAVIES: I agree, and that is not what I am
14  arguing.
15          I am simply making the point that another company
16  used either that exact web site or a companion web site when
17  their agents issued closing protection letters, which would be
18  relevant to understanding for purposes of this case.
19          THE COURT: Okay.
20          The next question I have is with regards to the
21  claims process. Now the -- I mean, I think -- having to
22  depose Scott, Cole, Walker, and Drake at this point, that is
23  on the formation of -- you have tried that way to get at the
24  formation of multi transaction letters. So let's -- let me --
25  let's focus for a moment on the back end of the process, which
```

1  would be the claims process.
2  Now, Ticor is concerned about having to review, you
3  know, 288,000 files, and I can understand that burden. So let
4  me set that aside for a moment.
5  Would you be able to identify or have a 30(b)(6)
6  witness become knowledgeable about claims handling policies in
7  Illinois for 2005 and 2006, okay, that is to say a witness who
8  could be deposed on -- and maybe there are document requests
9  to this as well, but how a claims handler, right, who gets a
10 claim in from a client, and says, we need to receive indemnity
11 on this particular loan, and how -- what policy would govern a
12 claims handler who would sit down and say, all right, well, I
13 need to figure out whether this loan is covered, and what
14 steps that claims handler would take and -- or what policy the
15 claims handler would follow in determining whether or not the
16 letter was a single transaction letter or a multiple
17 transaction letter?
18 MR. FOWERBAUGH: We have gone through some paper
19 discovery, if you will, on this topic several years ago, and
20 the only documents we have been able to find anywhere related
21 to this topic is the Fidelity claims manual, which we -- and
22 we have produced that portion of the claims manual and its
23 revisions through -- from at least 2005 through 2007. That
24 has been produced to Ameriquest. And I have a copy here.
25 But my recollection, and I have looked at it just

1  before coming over here, that claims manual does not address
2  those issues.  I am not aware of any kind of set policy as to
3  addressing what your issue is.  I mean, I believe that these
4  issues are, you know, assigned to a claims attorney, and the
5  claims attorney will then either with or without benefit of
6  outside counsel, just determine how the case claims should be
7  handled.
8       Whether someone can actually say, here are the
9  policies and practices for how to handle a claim involving a
10 closing protection letter, with or even without those time and
11 location parameters, I am -- I don't know if we could get
12 anything -- anyone educated or even -- even if there is such a
13 thing that would say other than, the claims were assigned to a
14 claims attorney, and they, then, figure out the issues based
15 on the facts and applicable State law.
16      MS. DAVIES:  Your Honor, if I may.
17      The one thing we do have in this case is we have an
18 example in the Freedom Mortgage versus Burnham case where the
19 exact CPO that is at issue here was determined to be multi
20 transactional.
21      MR. FOWERBAUGH:  That is not true.
22      MS. DAVIES:  Well, from what it appears, from what we
23 have reviewed in the litigation.  We have never heard from
24 Mr. Fowerbaugh that he contests that point, either in the
25 opposition or otherwise.

1    MR. FOWERBAUGH:  In Freedom Mortgage they refer and
2 attach a copy of the plaintiff's allegations, that doesn't
3 mean that is what the determination was.  And the reason why
4 we do not address that in our response is because you
5 instructed us not to because the Freedom Mortgage is the
6 subject of discovery requests served on Ticor after the motion
7 to compel was filed, the subject of their fourth set of
8 document requests served June 27th, a couple hours after we
9 got the motion to compel, and the subject of a couple of
10 interrogatories in Ameriquest Mortgage's second set of
11 interrogatories, which is the subject of their motion for
12 leave.
13    MS. DAVIES:  Your Honor, my point is they have
14 received claims on letters that are directly at issue in this
15 litigation and have reviewed those, made evaluations as to the
16 scope of the coverage, and they should be able to prepare a
17 witness to speak to that process so that we can understand
18 what their position is.
19    THE COURT:  Okay.
20    Having reviewed the request and the attachment
21 thereto, here is how I am going to rule.
22    I think in light of the depositions that have already
23 taken place, and the additional burden it would place on Ticor
24 to produce further letters and spread sheets that have been
25 requested, I think Ameriquest has sufficient discovery on the

formation of the -- of what would be considered blanket protection letters.

I think you have concessions at this point, you being Ameriquest, that this -- whether or not a letter was a blanket or single transaction was before AgentTrax, a matter of local agent practice.

And so based on the prior Judge's ruling, it is going to be up to the jury to decide whether the letters that have been issued were multi transaction or not, and I don't think that there is going to be a global policy that can be, you know, referred to.

Now, you are going to be -- Ameriquest will be able to argue, either through motions in limine or right to the jury, that there ought to be adverse inferences drawn from the lack of a policy, a corporatewide policy, and to the extent that the defendant wants to argue that there were agents who were acting outside of some authorized policy, I will certainly consider motions in limine to bar that kind of argument based on contract principals and respondeat superior principals and -- because we typically bind a principal to an agent's conduct, even if the principal wouldn't have authorized the agent to take that contract, so long as the agent was acting within the scope of the principal agent relationship.

So I will certainly take arguments into account that

1   the defense will not be permitted to argue that the agents
2   were acting outside the bounds of what the principal had
3   intended, and the defense will be able to respond to that all
4   before the trial occurs.
5           Now, that is as to the formation. I do think though
6   that in the time left in discovery, which is about a month and
7   a half, that to the extent that the defendant has been served
8   with discovery as to the claims process, in a limited way at
9   least as a first step the defendant should respond, and here
10  is what I mean.
11          I don't -- I am not ordering the production of all
12  these claims files or a review of all these claims files, but
13  instead, the defendant should make available as best it can a
14  representative who can testify as to any claims handling
15  policies that these claims attorneys had to follow. If it is
16  not in a manual, maybe it was in -- if it is not in the
17  Fidelity manual, perhaps on a more local basis there was some
18  policy or practice that was followed by claims attorneys in
19  reviewing claims and determining whether or not they were
20  covered by a multi transaction letter. And this is for in
21  Illinois in the time period 2005 to 2006.
22          So I am not saying that the plaintiff gets to serve
23  notices of deposition on every claims attorney. No. It is a
24  30(b)(6) witness that has to become familiar as much and as
25  best as possible. Maybe the answer will come back that they,

1  again, didn't have a policy, and then you will be able to
2  argue to the jury that that has some relevancy to Ameriquest's
3  position that, well, then, the clients should have been --
4  were reasonable in assuming that a letter that didn't have a
5  specific loan was a multi transaction letter, okay?  So it may
6  have some evidentiary relevancy if the answer is they don't
7  have a policy, but it doesn't sound like the defense has yet
8  tried to focus in on Illinois, 2005 to 2006, a policy that
9  the claims attorneys were following, you know, sitting down,
10 they get a claim, okay, I am looking at the file, how do I
11 now determine whether this was a multi transaction letter or
12 not.
13         So that back end process, I think, might yield some
14 productive information, and so that discovery is authorized.
15         To the extent that Ameriquest has a complaint that
16 Drake and Walker did not produce documents, what -- the only
17 thing that -- the only request that Ticor and Fidelity need
18 respond to are -- and it sounds like the time isn't up yet on
19 some of these, those requests are still pending, you ought to
20 respond to the requests so long as they fit within what I have
21 described so far with regard to the claims process.
22         So any of the additional -- the 12 additional
23 interrogatories that are directed at the claims process, or
24 any previous interrogatories and document requests that are
25 directed at the claims process policy that I have described,

those should be answered, and if they are not quite due yet, then they are due when the 30 days is expired.

I do want to make clear that when I talk about the claims process policy discovery that I am authorizing that I am authorizing discovery of that policy and practice in that 2005 or 2006 -- and 2006 time period that was actually in place. Okay? So what I mean by that is I want to make clear that even if the defendant now, or even then, believed that there was some prior approval necessary, or that this claims practice or policy was wrong, you know, in some way, that the senior executives would not have agreed with it, the plaintiff is entitled -- Ameriquest is entitled to discover what was actually occurring.

So I just want to make sure that we don't get hung up on that kind of technicality like, well, that policy or practice was wrong, it was not correct, they were mistaken, that is not a basis to cut off discovery on this topic.

What we are looking for is what was actually in place, even if there is some legal argument that, well, that was just wrong, you should disregard that, we will get to that at some point later in the case when we get to the substantive motions, but for now, Ameriquest is entitled to figure out what was actually happening if there was, in fact, a policy or practice that the claims attorneys were following.

With regard to the actual loss discovery, we are

1  going to waive substantive motions on that. This discovery
2  process is what happens when parol evidence is used to
3  interpret a contract. I want to get substantive motions on
4  this actual loss issue before I authorize any discovery on
5  it.
6       So this August 31st date when it closes and then
7  substantive motions come in and we have motion practice on
8  what is the meaning of actual loss, and whether attorney's
9  fees comes into that, is encompassed by that term, if I at
10 that time conclude that there is some ambiguity I will, heaven
11 forgive me, reopen discovery on that limited issue, but you
12 know, right now, I am not convinced that there is sufficient
13 ambiguity that I can't just decide that as a matter of
14 contract interpretation without introducing evidence beyond
15 the four corners of the letter, of the agreement itself. So
16 hold off on discovery on actual loss.
17      Then depending on what this claims process policy and
18 practice discovery yields, I will consider moving the date
19 back some to just have additional follow up on this point,
20 hopefully you can still get it done by August 31st, but like I
21 said, I will be flexible if it seems like it is productive and
22 there is some follow up needed. Hopefully it is not needed.
23      Now, I realize I haven't gone interrogatory by
24 interrogatory, and so on, but I hope that this is clear enough
25 so that you know what is authorized and what is not.

1       Do you want to clarify anything?
2       MS. DAVIES: Yes, your Honor, if I might just ask a
3  clarifying question.
4       I understand from the beginning of your discussion
5  that when it comes to getting actual documents, exemplar multi
6  transactional closing protection letters, that that is an
7  issue that we can bring up later with respect to motions in
8  limine in terms of them being able to argue that the agents
9  were somehow acting outside the course and scope of what they
10 were allowed to do.
11      I guess the one clarity point I wasn't sure on, we
12 had talked earlier at the hearing about whether Ticor could
13 get somebody knowledgeable to talk about Illinois multi
14 transactional closing protection letter practices and I --
15      THE COURT: I think you have exhausted that, because
16 Cole, Walker, and Drake have testified, Scott testified
17 earlier, and I think now that I have looked at all of these
18 excerpts and so on, what is clear, relatively speaking, is
19 that this was -- this being what is a multi transaction
20 letter, was left to local discretion, and that you now have
21 what at least Mr. Scott has testified is the template for
22 all closing protection letters. So they are locked in on
23 that.
24      And actually, in reading the excerpts closely, I
25 don't think it is very easy at all for Ticor to punch into a

1  computer and have them print out all closing protection
2  letters that are multi transaction letters.  I think that that
3  is not what Drake was saying, that it is easy to do.  I think
4  what she was saying is if I ask the data people, the systems
5  people, to printout all the letters, they can printout all the
6  letters, but they can't tell you whether they are multi
7  transaction letters or not, and to printout all of these
8  thousands of letters, beyond what you have already got
9  already, because I think you have quite a lot, is not
10 productive discovery at this point, and it would be much
11 more burdensome.
12         I think you have got the answers that you can, and
13 they are not actually very bad for you, I think, in terms of
14 the answers you have gotten, and now the last road that I
15 think I will allow you to travel on is the back end to see if
16 there is anything else you can get from the claims handling
17 side of things, but without getting into this massive review
18 of all these different files.
19         It might be -- and when I say follow up to the claims
20 handling part of it, I have in mind potentially another
21 30(b)(6) deposition of a records custodian, you know, what are
22 these claims -- how have these claims files been stored and
23 how accessible are they, whether there might be some notations
24 in some data base as to what claims were paid on a multi
25 transaction basis.

1         Look, you can shake your head and --
2         MR. FOWERBAUGH: Well, the affidavit we gave in the
3    prior motion dealt with the fact that there are no data bases
4    that allow you to identify even what claims were made under
5    closing protection letters, let alone multi transaction.
6         THE COURT: And so that might be the answer. But it
7    wouldn't be the first time that in a deposition, upcoming
8    30(b)(6) deposition on a claims handling policy, some
9    information comes out that then causes us to take another
10   turn.
11        Just getting back to your original question, I think
12   you are done on the -- on any more 30(b)(6) witnesses as to
13   the formation of the protection letters.
14        MS. DAVIES: Thank you, your Honor. I just wasn't
15   clear on that.
16        THE COURT: And that is perfectly fine to ask. Like
17   I said, I didn't go through on a document by document request
18   basis or interrogatory by interrogatory basis. I think it is
19   more important that you get this ruling, and then you can move
20   forward knowing what my ruling is in these general terms.
21        Any other clarifications that you need?
22        MR. FOWERBAUGH: I didn't believe so, your Honor.
23        MS. DAVIES: No, and thank you, your Honor.
24        THE COURT: All right.
25        So the motions are granted and denied in part based

```
 1  on what I have said.
 2          I would like to set a status in early September,
 3  after the -- after what is now the close date of August the
 4  31st.
 5          MR. FOWERBAUGH:  May I go back to the table and get
 6  my calendar?
 7          THE COURT:  Yes.
 8          THE CLERK:  September 5th at 9:30.
 9          THE COURT:  If a dispute does arise, you can just
10  bring it to my attention again in the form of a motion and I
11  will resolve it if you can't come to some agreement before
12  that date.
13          MR. FOWERBAUGH:  And that was September 5th, your
14  Honor?
15          THE CLERK:  September 5th, yes.
16          THE COURT:  At 9:30.
17          MR. FOWERBAUGH:  Okay.
18          THE COURT:  Anything else for today?
19          MS. DAVIES:  No, thank you.
20          MR. FOWERBAUGH:  No, thank you.
21          THE COURT:  Thank you.
22          (Proceedings concluded.)
23
24
25
```

1  C E R T I F I C A T E
2
3
4     I certify that the foregoing is a correct transcript
5  from the record of proceedings in the above-entitled matter.
6
7  /s/Krista Burgeson, CSR, RMR, CRR     July 29, 2012
   Federal Official Court Reporter      Date
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25