# EXHIBIT 8

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FREEDOM MORTGAGE CORPORATION,      )
                                   )
         Plaintiff,                )
                                   )
    -vs-                           ) No. 03 C 6508
                                   )
BURNHAM MORTGAGE, INC., EXETER     )
TITLE COMPANY, TICOR TITLE         )
INSURANCE COMPANY, JAMES C.        )
PEDDLE, DERRICK DAVIS, ERIC C.     )
VEHOVC, MARKET VALUE APPRAISAL,    )
INC., MAYA N. JORDAN, LARRY D.     )
BURKS, KEVIN R. BRISKER, JOHN      )
JEFFREY HLAVA, ADAM BAT, ADAM      )
BUTAR, ZBIGNIEW RYMARZ, WALDEMAR   )
FLORKIEWICZ, DOROTHY SPANN,        )
CHARLENE ADAMS, KUBA JASNY a/k/a   )
GROSZ PIOTR, BARBARA ODRZYWOSKA,   )
MAREK MAKA a/k/a LESZEK            )
DOBROWSKI, BOGDAN PAWLAK,          )
KRYSTIAN ZEBROWSKI, and PIOTR      )
ULOSZONEKIC,                       )
                                   )
         Defendants.               )

Deposition of CLAUDIA GRAHAM, taken before ELISABETH COLLOPY, CSR, RPR, and Notary Public, pursuant to the Federal Rules of Civil Procedure for the United States Courts pertaining to the taking of depositions for the purpose of discovery, at Suite 1100, 55 West Monroe Street, Chicago, Illinois, commencing at 12:00 p.m., on the 17th day of March, 2011.

1  THE VIDEOGRAPHER: Will the court reporter
2  please identify herself and swear in the witness.
3  (Whereupon the witness was
4  duly sworn.)
5  CLAUDIA GRAHAM,
6  called as a witness herein, having been first duly
7  sworn, was examined and testified as follows:
8  EXAMINATION
9  BY MR. DRESSLER:
10  Q. Good morning. We're here on a
11  deposition in the case of Freedom Mortgage versus
12  Burnham Mortgage, et al. It's my understanding
13  you've been designated as a 30(b)(6) witness. Do
14  you have any physical limitations, hearing,
15  eyesight, or are you on any medication that would
16  influence your testimony here today?
17  A. No.
18  Q. Have you been deposed before?
19  A. Yes, I have.
20  Q. So you understand the general ground
21  rules. Let me just go over them very, very quickly.
22  We can only one of us speak at one time so that the
23  court reporter can take it down. The goal here is
24  not to trick you or create any uncertainty in your

Page 7

1  deposition testimony; so if you don't understand
2  something, please let me know. If you do answer a
3  question, I'll assume that you do understand the
4  question.
5           If you would state your name for
6  the record and your address?
7       A.   My name is Claudia Martin Graham. My
8  address is 6311 Witherington Lake Court in
9  Jacksonville, Florida.
10      Q.   I'd like to talk to you a little bit
11 about your background. Can you give me a narrative
12 about how you've arrived at the seat that you've
13 arrived at?
14      A.   I am a licensed Illinois attorney.
15 After 17 years of teaching junior high, I went to
16 law school. After graduating from Loyola University
17 in Chicago, I worked for the Cook County State's
18 Attorney's Office. I also worked for Schiller,
19 DuCanto & Fleck, a divorce firm; and I worked for
20 the Law Office of Rodney Slutsky, a small firm that
21 dealt with real estate taxation, tax sales and tax
22 deeds.
23           Then I went to Chicago Title
24 Insurance Company. I went to the claims department,

Page 28

1  for example, there was some sort of an intervening
2  lien, something -- another company or a lien that
3  would take priority over the mortgage. So once
4  again, I have to defer to the facts. But that might
5  require a payout.
6        Q.  Does Ticor maintain an internal record
7  of some sort that it uses to determine whether or
8  not a certain set of facts was negligent, therefore,
9  requiring a payout under the closing protection
10 letter?
11        MS. ANDERSEN:  Objection, vague.
12 BY THE WITNESS:
13        A.  Well, when we open a claim, if it's
14 strictly under a closing protection letter, we
15 might -- we indicate that in some way. I can't
16 speak to the facts about maintaining the records. I
17 know the company keeps records on all claims that
18 are made, how many are made fraud and forgery, how
19 many on bad searching. But I cannot -- I believe
20 that they must somewhere have records on that.
21 BY MR. DRESSLER:
22        Q.  So when a claim is made, who at Ticor
23 determines whether there was negligence on and,
24 thus, triggering the requirement to pay any actual

Page 36

1  usually do print out the agency agreements for all
2  our claims made from agents.
3       Q.  So fair to say that you're at least
4  familiar with the agency agreements, but you don't
5  actually negotiate --
6       A.  Absolutely not.
7       Q.  How do you make your coverage
8  determinations?  Can you go -- explain to me the
9  process by which you make a coverage determination?
10 I understand that your testimony was that it's
11 really -- those determinations are made within your
12 department, your attorneys and paralegals.
13      A.  Correct.
14      MS. ANDERSEN:  I want to object to the word
15 coverage to the extent relates to the closing
16 protection letter.  It think coverage is really more
17 an appropriate word for the policy as opposed to --
18      THE WITNESS:  Correct.
19      MR. DRESSLER:  Let me rephrase that.  Thank
20 you, Barbara.
21      MS. ANDERSEN:  Okay.
22 BY MR. DRESSLER:
23      Q.  Claims determination, whether or not to
24 pay a claim, and let's -- since we're here on the

1  closing protection letter, let's be specific. What
2  do you do to determine whether or not to make a
3  determination on a claim under a closing protection
4  letter?
5       A.  Well, first of all, you get a good
6  handle on the facts. You look at the documents
7  they're talking about and you try to understand
8  whether or not the agent truly had the duty that the
9  claimant is talking about in the claim letter. So
10 once you have a handle on the facts and the duty
11 that they're talking about, you go to the closing
12 protection letter and you try to put one and one
13 together and wind up with two. Sometimes you wind
14 up with four. And it's not the responsibility of
15 the agent to do particular things.
16      Q.  Where would one find the duties of one
17 of your agents?
18      MS. ANDERSEN:  Relative to closing protection
19 letter?
20      MR. DRESSLER:  Yes. Thank you, Barbara.
21      THE WITNESS:  Are you asking if there is a
22 document where they can go to?
23 BY MR. DRESSLER:
24      Q.  My understanding is your analysis was