IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> (Centralized before The Honorable Marvin E. Aspen) <br><br> Assigned to Magistrate Judge Morton Denlow |

## AMERIQUEST'S MOTION TO COMPEL DISCOVERY RE: FIDELITY AGREEMENTS

BN 12347388v1

I.  **INTRODUCTION**

In its August 31, 2012 Status Conference Statement, Fidelity claimed that all discovery is stayed in the MDL, relying on two orders of Judge Denlow. *See* Dkt. 5065, Fidelity's Status Conference Statement at p. 4 citing Dkt. Nos. 2957 and 3268. In light of the benefits of having Judge Denlow interpret his own orders and rule on any objections before his retirement, beginning on August 31, 2012, Ameriquest repeatedly requested that Fidelity confer about its objection and any other objections to the first set of requests for production and interrogatories propounded upon Fidelity in the MDL. The requests to confer about the objections have been ignored in an attempt to avoid Judge Denlow from ruling on them. Fidelity finally responded to the requests for a telephone conference but refused to be available to confer until the afternoon of September 18, after the deadline to file this motion to compel. The discovery games that have plagued this litigation continue.

The objections should be overruled and Fidelity should be ordered to provide the requested discovery by a date certain.

II.  **FACTUAL BACKGROUND**

   A.  **Background of Discovery and Claims at Issue**

With settlement efforts at an impasse, Ameriquest propounded its first set of discovery requests (seven categories) and first set of interrogatories (two interrogatories) to the Fidelity entities. Ex. 1. Fidelity objects to providing any discovery it has not already provided, as explained below. See Ex. 2 (objections to discovery). Ameriquest's third-party claims of breach of contract and negligent misrepresentation against the Fidelity defendants are based on the underlying plaintiffs' claims of improprieties related to the loan closings. Accordingly, the discovery at issue seeks agreements between Ameriquest and the Fidelity defendants with a focus on closing protection letters that apply to the loans at issue for the over 300 borrowers' claims involving the Fidelity entities as well as agreements between the Fidelity defendants and the title companies who closed the loans.

1

The parties have engaged in similar discovery concerning the same claims at issue in the *Terry v. Ameriquest* matter recently transferred to the MDL for coordinated discovery but on a much smaller scale with one title underwriter, Ticor Title, and 22 borrower's claims. *See Terry*, Case No. 1:08-CV-2475, Dkt. No. 782 (order granting Ameriquest's motion for reassignment for coordinated discovery, Dkt. 4348). Discovery obtained in *Terry* about agreements and closing protection letters provides a road map for finding similar information from a broader group of Fidelity entities, different jurisdictions, and varying title companies. *Id.* The benefits of this coordinated discovery were the basis for reassignment. *Id.*

Ameriquest also uncovered a ruse in *Terry* which Fidelity also uses in the MDL and tries to continue here by precluding discovery into its multi-transaction or "blanket" closing protection letter practices, as explained below. By way of background, Fidelity and all other title underwriters provide closing protection letters to indemnify lenders against losses related to loan closings. Because the letters are provided for practically every loan, title insurers often use multi-transaction or "blanket" letters which apply to all future loan closings instead of issuing the same letter for every transaction. A thorough explanation of multi-transaction closing protection letter practices and supporting exhibits is contained in Ameriquest's Reply Re: Motion for Reassignment, Dkt. No. 4389. Ameriquest required the issuance of a multi-transaction letter before it would do business with a title company although the files have not been located.

In the MDL, Fidelity was required pursuant to stipulated order to identify closing protection letters that applied to the loans. Dkt. 3268, Joint Discovery Plan and Scheduling Order, at Section 1(c). Knowing that Ameriquest did not have access to the closing protection letters, Fidelity claimed that few, if any, closing protection letters had been issued to Ameriquest with respect to the loans at issue and then it tried to block the discovery to disprove its assertion.

To support Fidelity's now exposed falsehood, Fidelity executives claimed that the closing protection letter Fidelity used as a multi-transaction letter was really a single-transaction letter. The first Fidelity executive deposed in *Terry* testified that Fidelity did not allow multi-transaction letters without special approval from one or two high-level Fidelity executives. He

2

testified that he checked, there was no approval, and therefore no multi-transaction closing protection letters had been issued -- case closed. Fidelity also prevailed on a motion for protective order to preclude the deposition of Lori Drake, the head of training for Fidelity's nationwide system for issuing closing protection letters. Later, Judge Chang reconsidered after receiving additional information about Drake and Fidelity's contentions, which he labeled as "muddy." Fidelity tried to preclude Drake from testifying because they knew she would sharply contradict the Fidelity executives and would testify in accord with Ameriquest's contention that multi-transaction letters were often issued, no approval was required, and that a closing protection letter without transaction specific information was a multi-transaction letter.

Since Drake started in 2005 as the person in charge of training for Fidelity's closing protection letter website, her group responded to about 20,000 calls per year from agents and employees asking how to issue multi-transaction letters. Ex. 3. They were trained that they could issue them without any approval required and simply by leaving out transaction specific information on the standard closing protection letter form available on the Fidelity website. *Id.* In accord, her group posted an instruction on the Fidelity closing protection letter website which explained how to issue multi-transaction closing protection letters in the same manner. Not a single person suggested her group's practice was wrong until a Fidelity executive talked to her in 2011 in advance of his deposition. *Id.* Fidelity's counsel also repeatedly tried to block discovery into the website and training materials because they knew it sharply contradicted their core contentions.

With its experience in *Terry*, Ameriquest knows the categories of documents necessary to defeat Fidelity's contention that no multi-transaction closing protection letters exist. And Fidelity knows that it needs to avoid providing the same discovery that it produced in *Terry* to continue its argument that no closing protection letters exist in the MDL. So here, in response to every request for production and interrogatory about multi-transaction closing protection letters, Fidelity refuses to provide the requested information or documents and instead, disingenuously states that it will produce or identify the closing protection letters applicable to the loans – a task

3

it was already required to perform and claimed there were none. Dkt. 3268, Joint Discovery Plan and Scheduling Order, at Section 1(c). For example, Ameriquest's two interrogatories seek the identity of exemplar multi-transaction forms and an explanation of any procedures for their issuance such as an approval process. Instead of simply identifying the exemplar forms and how they were issued, Fidelity refuses to identify them and instead, states it will identify the closing protection letters applicable to the loans. We already know Fidelity contends no closing protection letters apply to the loans so that response just tries to dodge the request for specific information. Fidelity provides the same non-responsive statement in response to all requests about multi-transaction letters. *See* Ex. 2, Response to RFP No. 1, 3, 4 and Interrogatory Nos. 1 and 2.

In *Terry*, Judge Chang admonished Fidelity's counsel not to rely on arguments about what a multi-transaction looks like in order to withhold letters that could be multi-transaction. But now Fidelity is trying to continue this same ruse in the MDL.

**B.     Specific Discovery Requests**

The discovery at issue seeks the basics for a breach of contract and negligent misrepresentation claim. Request No. 1 and the two interrogatories seek exemplar forms of multi-transaction closing protection letters and an explanation how they were issued. The same type of information discovered in *Terry* shows that Ameriquest was provided with multi-transaction letters contradicting Fidelity's claims. Request No. 3 seeks multi-transaction closing protection letters which pre-date the loans. Request No. 4 seeks spreadsheets of data from Fidelity's closing protection letter database which is designed to track and allow re-printing of all closing protection letters generated on Fidelity's various websites. Spreadsheets of data produced in *Terry* shows that multi-transaction letters were generated on Fidelity's website, contradicting Fidelity's claims that no such letters were issued. This data will show closing protection letters issued without transaction-specific information. Request No. 5 seeks agreements between Ameriquest and the defendants. Recently, Fidelity pursued a motion to compel for agreements before Judge Denlow, in *Terry*. Ironically, Fidelity objects to producing

the same information. Request No. 6 seeks agreements between the underwriter defendants and title company defendants. The underwriters and title companies always entered into agency agreements and potentially other agreements. Request No. 7 seeks folders maintained by Fidelity about the title company defendants. Fidelity produced all of its audit files and agent files in the *Terry* matter which reflect their status as agents.

### C. Fidelity's General Objections

Fidelity contends that no further discovery is allowed outside of what has already been ordered, based on two orders of Judge Denlow. *See* Dkt. 5065, Fidelity's Status Conference Statement at p. 4 citing Dkt. Nos. 2957 and 3268. *See* Ex. 2, Fidelity Response to Request for Production, General Objection No. 6 (incorporated into each response); Ex 2, Fidelity Response to Interrogatories, General Objection No. 5 (incorporated into each response). Dkt. No. 2957 outlines a process for the parties to exchange loan files and for the parties to identify closing protection letters it believes are applicable to the loans. The procedure for the exchange of information does not preclude discovery as Fidelity contends, it provides a procedure to exchange discovery before mediation.

Fidelity also contends objects to the temporal scope of the requests, January 1, 2000 to December 31, 2005 but multi-transactional closing protection letters necessarily pre-date the loans at issue, often times by many years. The loans were originated from 2001 to December 2005. These objections should be overruled.

### D. Fidelity's Additional Objections

Fidelity contends that it would be unduly burdensome to search legacy databases for closing protection letters but no information is provided that suggests there would be any undue burden. Similar data was provided in *Terry*. Given that the databases are specifically designed to track closing protection letters issued on Fidelity's websites, there is a Fidelity group whose purpose it is to provide closing protection letter data pulls, and Fidelity witnesses have testified to the ease of searching databases for closing protection letter data and the frequency that it is

done in the normal course of business, this objection is unsupported. Ex. 3 (Depo. of Drake); Ex. 4 (Depo. of Walker).

Fidelity objects to Interrogatory No. 1 to producing "information that AMC already possesses or that has been previously provided in the litigation." This objection should be overruled so Fidelity does not withhold information under the guise that Ameriquest already possesses the information. If Ameriquest had the information, it would not be the subject of a discovery request.

Fidelity seems to contend that it would be unduly burdensome to produce closing protection letters regarding any loan for which Ameriquest identified as having an applicable closing protection letter. Disclosures about applicable closing protection letters and other agreements were part of a preliminary exchange of information without the benefit of any discovery from Fidelity. It was never intended to preclude discovery into applicable closing protection letters.

Fidelity provides a litany of other objections that are not worthy of comment. If Fidelity intends to rely on any other objections to withhold information, it should address the objections at the hearing.

### III. STATEMENT OF COMPLIANCE WITH RULE 37.2

Pursuant to Local Rule 37.2, Ameriquest makes the following statement of efforts to reach an accord. Because of the volume of claims at issue, at the time the discovery was propounded, Ameriquest volunteered to Fidelity that an extension of time to produce documents and substantively respond to the interrogatories was agreeable, but that the parties should resolve any objections in advance of the extension. Fidelity did not respond.

Instead, Fidelity tipped its hand that it would not provide *any* responsive documents or information to Ameriquest in its August 31, 2012 Status Conference Statement. Dkt. 5065.

On August 31, 2012, Ameriquest informed Fidelity that its objection was wrong and requested that they confer immediately and explained that the objection would be raised before Judge Denlow on September 12 if not resolved in advance. Ex. 5 (email string). Fidelity refused

to confer about it or even agree to a date to confer despite numerous requests. *Id.* Instead of conferring, Fidelity tried to run out the clock and refused to communicate about the objections until September 18 in an effort to avoid having the issue heard before September 19, the last scheduled hearing date before Judge Denlow's retirement. *Id.* After Fidelity's counsel declined to discuss its statement that discovery was stayed until Fidelity responded to the outstanding discovery, Ameriquest's counsel repeatedly requested Fidelity's counsel to confer about the objections no later than September 13 or 14 so that there was adequate time for the objection to be raised before Judge Denlow on September 19. Ameriquest attempted to set up a conference call and left a voice message for Fidelity at the proposed time. *Id.* The call was never returned. Fidelity's counsel ignored the requests.

Because Fidelity has agreed to discuss its objections on the afternoon of September 18, if any issues are resolved during that conference call, the Court will be informed immediately.

## IV. CONCLUSION

For the aforementioned reasons, Ameriquest's motion to compel should be granted.

DATED: September 17, 2012            Respectfully submitted,

By: /s/ Randall L. Manvitz
*Attorneys for Third-Party Plaintiffs*

Randall Manvitz, Esq. (admitted *pro hac vice*)
Joanne N. Davies (admitted *pro hac vice*)
BUCHALTER NEMER,
A Professional Corporation
333 Market Street, 25th Floor
San Francisco, CA 94105
Telephone: (415) 227-0900
Facsimile: (415) 227-0770