# EXHIBIT J

Argent Mortgage Company, LLC
2550 Golf Road, East Tower Floor #10
Rolling Meadows, IL 60008

(847)640-0116

## BORROWER'S ACKNOWLEDGMENT OF FINAL LOAN TERMS

Date: May 29, 2003

Notice: [X] Delivered ☐ Mailed

Loan Number: ▮▮▮▮▮▮▮

Description of Credit Request:

[X] 1st Trust Deed/Mortgage ☐ 2nd Trust Deed/Mortgage

☐ Other:

Property Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**TYPE OF TRANSACTION:**

[X] Purchase ☐ Refinance Other

| ORIGINAL LOAN TERMS REQUESTED | FINAL LOAN TERMS: |
|---|---|
| [X] Fixed Rate Loan ☐ Adjustable Rate Loan | [X] Fixed Rate Loan ☐ Adjustable Rate Loan |
| Amount Financed: $ ▮▮▮▮ | Amount Financed: $ ▮▮▮▮ * |
| Settlement Charges: $ ▮▮▮▮ (Includes all Prepaid Finance Charges) | Settlement Charges: $ ▮▮▮▮ * (Includes all Prepaid Finance Charges) |
| Loan Amount: $ ▮▮▮▮ | Loan Amount: $ ▮▮▮▮ |
| Annual Percentage Rate: ▮▮▮ % | Annual Percentage Rate: ▮▮▮ %* |
| Term: ▮▮ | Term: ▮▮ |
| Initial Interest Rate: ▮▮ % | Initial Interest Rate: ▮▮ % |
| Margin: ▮▮▮ % | Margin: ▮▮▮ % |
| Prepayment Penalty: [X] YES ☐ NO | Prepayment Penalty: [X] YES ☐ NO |

Borrower(s) and Argent Mortgage Company, LLC hereby acknowledge that "Final Loan Terms" stated above are based exclusively on information, statements, and representations (all material facts) which have been provided by the borrower(s) which the Lender has relied upon to make this acknowledgement. These "Final Loan Terms" may change prior to loan settlement if Lender subsequently determines or becomes aware of any changes in these material facts. Borrower(s) also acknowledges that if the "Final Loan Terms" change due to a change of material facts, that Lender may require new loan documents to be executed by the borrower(s).

Borrower ▮▮▮▮▮▮▮▮▮▮▮

Borrower _____ Date _____

Borrower _____ Date _____

Borrower _____ Date _____

*These amounts may change due to any final adjustments made to the prepaid interest amount collected on your loan at funding.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any rights under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is: FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY, ROOM 4037, WASHINGTON DC, 20580.

STMTCO (Rev. 3/99)

| Loan Number: | | Branch: | Division 03 - Reg 05 Sales |
| Borrower(s): | █████████ | Loan Coordinator: | Not Assigned |
| | | Account Executive: | Kathleen Kasnik |
| | | Loan Orig Officer: | |

**Subject Property**
**Address:** ████████████████████

## LOAN SUMMARY

| Program: | 30 Year Fixed -Prime Advantage | 1st TD Loan Amount: | $ |
| Program Code: | 371 | 2nd TD Loan Amount: | $ |
| Lien: | First Mortgage | LTV/CLTV: | |
| Term: | 360 | Sales Price: | $ |
| Purpose: | Purchase | Exception: | |

| Start Rate: | ████ | Prepay Term: | | Document Type: | Stated |
| Margin: | ████ | Cash Out: | $ | Occupancy: | Owner Occupied |
| Index: | | Payment Savings: | $ | Property Type: | SFR |

| Discount Pts: | % $ | | PYA: | ███ $████ |
| Origination Pts: | % $███ | | | |

| Subordinate Financing: | $ ████ | Revenue Factor: | ████ |
| | | Revenue Amount: | $ ████ |

## CREDIT AND CAPACITY

| Credit Grade: | ███ | Qualifying Credit Score: | ███ |
| Investor Credit Grade: | | Debt Ratio: | ████ |

| Total Mortgage Lates: | ___ x 30 | ___ x 60 | ___ x 90 | ___ x 120 |
| Total Rental Lates: | ___ x 30 | ___ x 60 | ___ x 90 | ___ x 120 |

| ___ Bankruptcy | Discharged/Dismissed Date: | BK Type: |
| ___ NOD | Rescind Date: | |

| Combined Monthly Income: $ ████ | Gross Net Disposable: | $ ████ |
| | Net Disposable: | $ ████ |

## COLLATERAL

| Appraised Value: | $ ████ | (First) | Branch Evaluation Value: | $ ████ |
| Appraised Value: | | (Second) | Corp Review Value: | $ |
| Cost To Cure: | $0.00 | | Withhold Amount: | $0.00 |

## CONDITIONS

| ID: | Status: | Date: | Category: | Description: |
|---|---|---|---|---|
| 3018 | Satisfied | 05/27/2003 | Appraisal | Aprsl w/orig. signatures & photos dtd w/in 90days of funding, $xxx value- EMAIL OK |
| 0 | Satisfied | 05/29/2003 | Broker | 24 MO CHAIN OF TITLE |
| 3020 | Satisfied | 05/29/2003 | Broker | Orig. Handwritten signed & dtd by brwr |
| 3021 | Satisfied | 05/27/2003 | Escrow/Title | Prelim TITLE dtd w/in 90days of funding w/plat map, legal desc. & appl endrsmnts- W/ UTD TAX SEARCH |
| 3029 | Satisfied | 05/28/2003 | Escrow/Title | Haz. Ins., Flood Ins.(if appl) & proof 6mos. paid; 12 mos.if purch |
| 3042 | Satisfied | 05/27/2003 | Appraisal | Aprsl Rvw suprtng $165000 value w/all subj to's cleared, if any |
| 3043 | Satisfied | 05/29/2003 | Lender | Subj. to complete lender file audit(credit, capacity to pay & collateral) |
| 3038 | Satisfied | 05/29/2003 | Escrow/Title | Final HUD-1 w/all payoffs & fees per AMCs in docs & HUD1 |
| 3023 | Satisfied | 05/29/2003 | Income | Copy of current business license |
| 3026 | Satisfied | 05/27/2003 | Broker | LOEs for credit inquiries (90 days), derogs & cash out, signed by borrower(s) |
| 3032 | Satisfied | 05/29/2003 | Income | Handwritten income letter signed & dtd by brwr detailing all income sources |
| 0 | Satisfied | 05/29/2003 | Broker | FUNDER MUST OBTAIN COPY OF CHECK BROUGHT TO CLOSING EVIDENCING 5% SOURCE OF FUNDS |
| 3040 | Satisfied | 05/29/2003 | Broker | Grant Deed reflecting brwr(s) names & vesting to match Argent's D.O.T. |

| INITIAL APPROVAL | | | LAST APPROVAL | | |
|---|---|---|---|---|---|
| Submitted By: | Ursula McGregory | Date: 05/03/2003 | Submitted By: | Jeffrey Lawson | Date: 05/30/2003 |
| Level 1: | | Date: | Level 1: | | Date: |
| Level 2: | | Date: | Level 2: | Jeffrey Lawson | Date: 05/30/2003 |
| Level 3: | Ursula McGregory | Date: 05/03/2003 | Level 3: | | Date: |
| Level 4: | | Date: | Level 4: | | Date: |

APPROVAL (11/00)          CONFIDENTIAL          1 of 2          05/30/2003 8:13:53 AM

EXHIBIT K

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

**Pegi Saunders**
5215 Thomas Street
Maple Heights, Ohio 44137

**Matthew Lloyd and Tracey Lloyd**
husband and wife
23413 High Road
Oakwood Village, Ohio 44146

**Dorothy Stevens**
18306 Scottsdale Blvd.
Shaker Heights, Ohio 44122

**Aris Gay and Ricardo Gay**
3376 Kildare Road
Cleveland Hts.., Ohio 44118

**Jeraldine Wolfe**
10701 Elmarge Avenue
Cleveland, Ohio 44105

**Brittney Smith**
3321 E. 146th Street
Cleveland, Ohio

**Paris Paul, and Lynda M.T. Paul**
husband and wife
16759 Medina Street
Chagrin Falls, Ohio 44022

**Portia Mims Harris**
12421 Benham
Cleveland, Ohio 44105

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: 1:05CV1126

Judge Boyko

**AMENDED**
**CLASS ACTION COMPLAINT**
**(TRIAL BY JURY DEMANDED)**

---

Representative Plaintiffs, Pegi Saunders, Matthew Lloyd, Tracey Lloyd, Dorothy Stevens, Aris Gay, Ricardo Gay, Jeraldine Wolfe, Brittney Smith, Paris Paul, Linda M. T. Paul, Portia Mims Harris, Nicole McCorkle, James Gray, and Ruth Gray, Yvette Campbell, Daisy Moblin, Veronica Thomas, Elmore James Jr., and Catherine Chaney (the "Representative Plaintiffs") named above, through their attorneys, Gary Cook, , Scott Schooler, and George L. Forbes file this Complaint against Defendants and allege as follows:

**Nicole McCorkle**
1046 E. 146th Street
Cleveland, Ohio 44110

**James Gray and Ruth Gray**
husband and wife
3852 Princeton Blvd.
South Euclid, Ohio 44121

**Yvette Campbell**
6310-6311 Carl Avenue
Cleveland, Ohio 44103

**Daisy Moblin**
3448 E. 149th Kinsman
Cleveland, Ohio 44120

**Veronica Thomas**
11320 Lardet Avenue
Cleveland, Ohio 44104

**Elmore James Jr.**
7227 Lynbrook Drive
Oakwood, Ohio 44146

**Catherine Chaney**
3932 E. 190th Street
Cleveland, Ohio 44122

on behalf of themselves and all others
similarly situated

        **Plaintiffs,**

   **v.**

**AmeriQuest Mortgage Company**
Serve c/o Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886

    **and**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2

**AmeriQuest Capital Holding Corporation**  )
  c/o Reed, Smith  )
435 Sixth Avenue  )
Pittsburgh, PA 45219-1886  )
                                 )
      and  )
                                 )
**AmeriQuest Mortgage Securities**  )
c/o National Registered Etc.  )
145 Baker Street  )
Marion, Ohio 43302  )
      and  )
                                 )
**Argent Mortgage Company**  )
c/o National Registered Etc.  )
145 Baker Street  )
Marion, Ohio 43302  )
                                 )
      and  )
                                 )
**Long Beach Acceptance Corporation**  )
c/o National Registered Etc.  )
145 Baker Street  )
Marion, Ohio 43302  )
      and  )
                                 )
**Town & Country Credit**  )
c/o National Registered Etc.  )
145 Baker Street  )
Marion, Ohio 43302  )
                                 )
                          **Defendants.**  )

**Introductory Statement**

1.      This is a class action seeking relief from various predatory lending and loan servicing practices engaged in as a course of business conduct by Defendants AmeriQuest Mortgage Company, AmeriQuest Capital Holdings Corporation, AmeriQuest Mortgage Securities, Argent Mortgage Company, Long Beach Acceptance Corporation, and Town & Country Credit. In the customary course of

3

their business operations, the Defendants, individually and collectively,, in conjunction with various mortgage originators, pursue unsophisticated borrowers such as, the Representative Plaintiffs, and entrap them with exploitive home equity loans, charge them illegal and exploitive fees, refuse to credit their payments, and then pursue foreclosure actions against them.

**Jurisdiction and Venue**

2.      This Court has original jurisdiction in this case, pursuant to 28 U.S.C. because the claims in this Complaint arise under; the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 *et seq.*, ("FDCPA"); the Fair Credit Reporting Act ("FCRA"), and 15 U.S.C. Section 1681, *et seq.*; Sections 6 and 16 of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. Section 2605 and 2614 and Ohio common law..

3.      Venue is proper in this matter because Cuyahoga County, Ohio and Geauga County, Ohio are the counties in which (a) the Defendants conducted the activity that gave rise to the claim for relief; (b) the real estate which is the subject of this action are situated here; and (c) the Representative Plaintiffs reside in said counties.

**The Defendants**

4.      The Defendants AmeriQuest Mortgage Company, AmeriQuest Mortgage Securities, Long Beach Acceptance Corporation , Town & Country Credit Town & Country Credit, are Delaware corporations licensed to do business in Ohio.   The Defendants, AmeriQuest Mortgage Company, AmeriQuest Mortgage Securities, Long Beach Acceptance Corporation , Town & Country Credit Town & Country Credit are wholly-owned subsidiaries of AmeriQuest Holdings, AmeriQuest Holdings , AmeriQuest Mortgage Company, AmeriQuest Mortgage Securities, Long Beach Acceptance Corporation

4

, Town & Country Credit Town & Country Credit are individually and collectively, responsible for all loan originating, servicing and collection practices alleged in this complaint.

5.    AmeriQuest Holdings, AmeriQuest Mortgage Company, AmeriQuest Mortgage Securities, Long Beach Acceptance Corporation , Town & Country Credit Town & Country Credit either transacts or have transacted business in Ohio.

6.    AmeriQuest Holdings AmeriQuest Mortgage Company, AmeriQuest Mortgage Securities, Long Beach Acceptance Corporation , Town & Country Credit Town & Country Credit are corporations with their principal place of business in California and is responsible for all loan servicing and collection practices alleged.

7.    AmeriQuest Mortgage, AmeriQuest Mortgage Company, AmeriQuest Mortgage Securities, Long Beach Acceptance Corporation , Town & Country Credit Town & Country Credit are "debt collectors" as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

8.    AmeriQuest Mortgage, AmeriQuest Mortgage Company, AmeriQuest Mortgage Securities, Long Beach Acceptance Corporation , Town & Country Credit Town & Country Credit are "persons" as that term is defined by Section 3(5) of RESPA, 12 U.S.C. § 2602(5), and subject to the requirements of RESPA and Regulation X promulgated there under.

9.    In connection with the servicing and collection of mortgage loans, AmeriQuest Mortgage, AmeriQuest Mortgage Company, AmeriQuest Mortgage Securities, Long Beach Acceptance Corporation, Town & Country Credit Town & Country Credit, individually and collectively, furnish information to consumer reporting agencies. As such, AmeriQuest Mortgage is subject to Section 623 of FCRA, 15 U.S.C. Section 1681s-2, which imposes a series of duties and prohibitions upon any person or entity that furnishes information to a consumer credit reporting agency.

5

**The Representative Plaintiffs**

34. (a) The Representative Plaintiff Pegi Saunders is a resident of Maple Heights, Cuyahoga County, Ohio;

(b) The Representative Plaintiffs, Matthew Lloyd and Tracey Lloyd are residents of Oakwood Village, Cuyahoga County, Ohio;

(c) The Representative Plaintiff, Dorothy Stevens is a resident of Shaker Heights, Cuyahoga County, Ohio;

(d) The Representative Plaintiffs, Aris Gay and Ricardo Gay are residents of Cleveland Heights, Cuyahoga County, Ohio;

(e) The Representative Plaintiff, Jeraldine Wolfe is a resident of Cleveland Cuyahoga County, Ohio;

(f) The Representative Plaintiff, Brittney Smith is a resident of Cleveland Cuyahoga County, Ohio;

(g) The Representatives Plaintiffs, Paris Paul and Lynda M.T. Paul are residents of Chagrin Falls Geauga County, Ohio;

(h) The Representative Plaintiff, Portia Mims Harris is a resident of Cleveland Cuyahoga County, Ohio;

( i ) The Representative Plaintiff, Nicole McCorkle is a resident of Cleveland Cuyahoga County, Ohio;

(j) The Representative Plaintiffs, James Gray and Ruth Gray are residents of South Euclid Cuyahoga County, Ohio;

6

(k)    The Representative Plaintiff Yvette Campbell is a resident of Cleveland Cuyahoga County, Ohio;

(l)    The Representative Plaintiff Daisy Moblin is a resident of Cleveland Cuyahoga County, Ohio;

(m)    The Representative Plaintiff Veronica Thomas is a resident of Cleveland Cuyahoga County, Ohio;

(n)    The Representative Plaintiff Elmore James, Jr. is a resident of Oakwood Cuyahoga County, Ohio, and

(o)    The Representative Plaintiff Catherine Chaney is a resident of Cleveland Cuyahoga County, Ohio.

**Class Allegations**

a.    **Class Definition**

35.    The Representative Plaintiffs bring the claims herein set forth on behalf of a class consisting, of all individuals who satisfy the following criteria:

a.    They are residents of the State of Ohio.

b.    Their loans were originated and/or serviced by the Defendants, individually and collectively, at some time during the four years prior the filing of this action.

c.    They were sent written notice that their respective mortgage loans were in default or were contacted by the Defendants, individually and collectively, by telephone or other means in default or were contacted by the Defendants, individually and collectively, by telephone or other means as part of an effort by the Defendants, individually and collectively, to collect such mortgage loans.

7

**b.    The class is so numerous that joinder of all members is impractical**

36.    The class has, on information and belief, several thousand members, spread throughout Ohio, making joinder of all members impracticable.

**c.    There are questions of law and fact common to members of the class**

37.    There are questions of law and fact common to the members of the class, which questions predominate over any questions affecting only individual class members. The principal questions are:

a.    Whether the Defendants, individually and collectively, are debt collectors with respect to the loans they acquired the right to collect;

b.    Whether the Defendants', individually and collectively, loan servicing practices and policies violate CSPA, FDCPA, FCRA, RESPA, and Ohio common law; and

c.    Whether the Defendants, individually and collectively, in their practice of originating and servicing mortgages, committed the alleged violations and/or whether they failed to perform required statutory and common law obligations in an appropriate manner.

38.    The essential fact issues that link all putative class members and the Representative Plaintiffs are whether the Defendants', individually and collectively, customary practices violate various provisions of each of CSPA, FDCPA, FCRA, RESPA, and Ohio common law. In reference to the representative plaintiffs who both originated and serviced their mortgages with the defendants certain federal, state, and common law statutes prohibit the illegal practices of the defendants, both individually and/or collectively

39.    All of the claims in the present case arise from the same nucleus of operative facts.

40.    Each of the Representative Plaintiffs alleges that the Defendants, individually and collectively, failed to give statutorily required notices and disclosures., failed to verify the amount of the debt when

8

51. As a mortgage originator and/or servicer, the Defendants, individually and collectively, originate mortgage loans. Further, they collect and processes loan payments from borrowers on behalf of the owner of the mortgage loans. Typically, the mortgage loans that are originated and/or serviced are held in a real estate investment trust ("REIT") whose investment units are traded for the benefit of the investors owning the REIT, whose investment units are traded on the secondary market. For the benefit of the investors owing the REIT, Defendants individually and collectively, are paid a servicing fee by the REIT based on the unpaid principal balance of the loans in the REIT.

52. The Defendants individually and collectively also profit from myriad fees that it charges borrowers/consumers on the loans that they originate and service. Many of the fees and charges that Defendants individually and collectively assesses and collects are illegal or excessive or both.

53. The Defendants individually and collectively operate in a manner that utilizes unconscionable practices designed to maximize illegal and excessive charges and fees. These unconscionable practices apply both individually and/or collectively to the defendants,

54. In the course and conduct of their loan origination, servicing and collection activities Defendants and/or their authorized representatives as standard business practices, have failed to properly post payments received from the Representative Plaintiffs in a timely manner and they have assessed late fees and other charges as a result.

55. The Defendants, individually and collectively, and/or its agents, actions have caused and are likely to cause substantial continuing, injury to the Representative Plaintiffs.

56. In the course and conduct of its loan originating, servicing and collection activities, the Defendants individually and collectively, in numerous instances, have represented, expressly or by implication that the Representative Plaintiffs owe the amounts specified in their communications.

11

48.     The class action is a superior means of adjudicating the claims of class members because the claims of individual class members may be too insignificant to provide an adequate incentive (in light of the cost and expense involved) for them to assert their individual rights.

49.     The prosecution of separate actions by the members of the class would create a risk of:

A.      Inconsistent or varying adjudications with respect to the individual members of the class, which would establish incompatible standards of conduct for the Defendants; or

B.      Adjudication with respect to individual members of the class, would as a practical matter, be dispositive of the interests of the class members not parties to the adjudication and would substantially impair or impede the ability of the non-party class members to protect their interests.

**Factual Allegations**

a.      **The Defendants' Business Practices**

50.     The Defendants, individually and collectively, together with their respective affiliates and subsidiaries, operate as part of a common enterprise and they are financial services companies specializing in the acquisition, servicing, and collection of mortgage loans, primarily in the "subprime" market. The "subprime" market is comprised of persons who are considered to be greater credit risks than persons considered to be part of the preferred or typical market for credit and includes disproportionate numbers of persons from lower-income or minority neighborhoods. The Defendants, individually and collectively, are a part of the mortgage industry's largest services in the "subprime" market, managing a portfolio that totals almost $100 billion, they originate and/or service over one million mortgage loans.

10

such verification was requested, and attempted to collect or collected fees and costs they were not legally entitled to collect.

**d.      The Representative Plaintiffs' claims are typical of the claims of other class members**

41.      The Representative Plaintiffs' claims arise from a common course of conduct of the Defendants that impacts all members of the class in a similar manner.

42.      The Defendants', origination impacted those representative plaintiff who originated their loan with the defendants.  The servicing practices impacted all class members in a similar manner.

**e.      The Representative Plaintiffs are adequate class representatives**

43.      The Representative Plaintiffs are all members of the class defined herein. They have been injured by the practices complained of, and their claims for damages do not conflict with the claims of unnamed class members.

44.      The Representative Plaintiffs are vigorously represented by competent counsel and will fairly and adequately represent and protect the interests of the class.

45.      The Representative Plaintiffs' interests are aligned with the interests of the unnamed class members. In pursing their own claims, the Representative Plaintiffs will advance the interests of the unnamed class members and will fairly and adequately represent the members of the class.

**f.      This action is properly maintainable under Federal Civil Rule 23(b)(3), because all prerequisites of the rule are satisfied.**

46.      The questions of fact and law common to class members predominate over questions affecting individual class members.

47.      This case involves violations of FDCPA for which Congress provided a statutory right of class certification.

9

57.     On numerous occasions, the Representative Plaintiffs did not owe the amounts that have been specified in said communications.  The Representative Plaintiffs did not owe the amounts specified because, (a) fees included in the amounts specified were a result of the Defendants, individually and collectively,, failure to properly post payments; (b) fees included in the amounts specified are not allowed under the mortgage loan agreements or permitted by law, and/or (c) the amounts have been calculated incorrectly by the Defendants, individually and collectively,.

58.     In the course and conduct of its loan servicing and collection activities, the Defendants, individually and collectively, have represented, expressly or by implication, that fees assessed and collected were (a) allowed under the applicable mortgage loan agreements, and (b) permitted by law.

59.     On numerous occasions, the fees assessed and collected by the Defendants, individually and collectively, were (a) not allowed under the applicable mortgage loan agreement contracts, and (b) not permitted by law. Further in many instances the defendants failed to make the appropriate statutory disclosures. .

60.     Defendants, individually and collectively, actions have caused and are likely to cause substantial continuing injury to the Representative Plaintiffs.

61.     As both a direct and proximate result of the Defendants practices regarding charges and fees, the borrowers/consumers are forced into foreclosure.

62.     Defendants, individually and collectively, operate schemes designed so that they will profit from these foreclosures and capture any equity the borrowers/consumers may have in the foreclosed property.

12

**b.    Scheme to maximize charges in reference to origination and servicing practices**

63.    Defendants, individually and collectively, operate schemes designed to maximize the fees and assessments imposed on borrowing consumers relative to the origination of the mortgage loans. Defendants, individually and collectively, operates schemes designed to maximize "late charges" imposed on borrowers/consumers. The mortgage loans serviced by them have due dates for payments and grace periods of time after which a loan payment is due but before the end of which a late fee may be assessed. In many instances, they receive and deposit the borrowers/consumers timely-made payment, but do not promptly post the payment to the borrowers/consumers account so that they may add late fees or additional interest to the borrowers/consumers account for failing to make their payments "on time."

64.    In many instances, Defendants, individually and collectively, pyramid late fees, *i.e.*, it charges more than one late fee for a single delinquency. In other instances, they charge late fees after a loan has been accelerated and there are no monthly payments due. As a result of these practices, borrowers/consumers fall further behind on their scheduled mortgage payments, according to the Defendants records.

65.    Once an impermissible fee is then posted to the account, even if it is disputed by the borrower/consumer, the loan is "in default" or "delinquent" under Defendants, individually and collectively, practices. Once these consumers loans are categorized as "in default" or "delinquent," Defendants, individually and collectively, charge other unwarranted fees, including fees for unnecessary or bogus property inspections, broker's price opinions and attorneys' fees.

66.    Fraudulent late charges provide Defendants, individually and collectively, with a pretext to engage in other unfair and unconscionable practices. Once a late fee is imposed, subsequent agreed

13

upon payments from the mortgagor are posted as partial payments because of the late fees, or the payments are not posted at all but instead the payment is held in a "suspense account." These practices are then repeated several times over the ensuing months.

**c.      Schemes to impose illegal and fraudulent fees and charges**

67.      The Defendants, individually and collectively, also operate in a manner designed to maximize illegal, unfair and unconscionable fees and charges it calls "corporate advances." These "corporate advances" include fees for property inspections, demand letters, broker's price opinions, foreclosure fees, and attorney fees.

68.      These "corporate advances" are then added to the loan balance, and Defendants, individually and collectively, profit from interest charged on the advances.

69.      The Defendants, individually and collectively, monthly billing statements do not itemize these corporate advances for consumers.

70.      These charges and attorneys fees that the Defendants, individually and collectively, impose on debtors are illegal under Ohio law.

71.      When borrowers/consumers request the amount of money necessary to "reinstate" (*i.e.*, bring their account current) or payoff their loan, the Defendants, individually and collectively, demands often contain fees that have been assessed by the Defendants, individually and collectively,, including fees for property inspections, broker's price opinions, demand letters, payoff quotes, attorneys' fees, and prepayment penalties.

**d.      Forced Placed Insurance**

72.      The Defendants, individually and collectively, also milk additional compensation from the consumers in the form of commissions or other designations, when it "force places" casualty

insurance on borrowers/consumers homes. Under the terms of mortgage loans serviced by the Defendants, borrowers/consumers are required to maintain homeowners/fire (and, in some cases, flood) insurance on their homes. The Defendants, individually and collectively, "advance" money to the borrowers/consumers to pay for casualty insurance that it places on the borrowers/consumers home when, according to the Defendants, individually and collectively,, the consumer has allowed the insurance to lapse, or the consumer has not provided proof that the insurance has not lapsed.

73.     Force placed insurance is much more expensive than insurance purchased by the borrowers/consumers. In addition, the Defendants, individually and collectively, charge the borrowers/consumers interest on the money advanced for force placed insurance.

74.     The Defendants, individually and collectively, have improperly force placed casualty insurance on borrowers/consumers homes, including on borrowers/consumers who the Defendants knew or should have known already had insurance in place. As a result of the premiums for the force placed insurance, borrowers/consumers regular mortgage payments have been deemed insufficient, the loan placed in default status, and fees improperly assessed by the Defendants.

**e.     Abusive debt collection practices**

75.     In collecting late payments, Defendants, individually and collectively, use aggressive practices that threaten consumers with continuing collection calls, a negative credit rating, additional fees, and even foreclosure, to obtain consumers' agreement to forbearance agreements or other workout solutions that demand the "total amount due."

76.     The total amount due includes all mortgage loan payments due and all fees assessed by the Defendants. The Defendants collectors are trained not to give the consumer a breakdown of the fees,

but to insist upon the total amount due immediately and discourage consumer disputes and questions about fees.

77.     The Defendants standard forbearance agreement requires consumers to pay all fees assessed by the Defendants, and also to waive any and all claims they might have against the Defendants.

78.     When consumers dispute any aspect of their loan servicing, such as the timely posting of their payments, fees, force placed insurance or inaccurate credit reporting, in many instances the Defendants have failed to timely and adequately acknowledge, investigate and respond to the complaint.

79.     In many instances, as a result of the Defendants failure to post borrowers/consumers mortgage payments to their accounts in a timely manner, the Defendants have made payments late for casualty insurance, property taxes and other charges from escrow accounts, and borrowers/consumers consequently are assessed unwarranted late fees and related charges. This practice puts borrowers/consumers into delinquency, creates the need for consumers to pay additional money for taxes and insurance, and harms their credit ratings. In many instances, the Defendants failure to pay premiums for casualty insurance has resulted in lapse of coverage and then the imposition of force-placed insurance at higher costs to borrowers/consumers.

**f.     Unconscionable foreclosure practices**

80.     As part of its collection practices, the Defendants, individually and collectively, threaten the mortgagor with foreclosure and more charges. The Defendants contact the borrowers/consumers and claim that hundreds or thousands (usually $2,000 to $4,000) must be paid immediately or the borrowers/consumers home will be sold.  Many victims pay the extortionate charges to save their homes, but the fraudulent pattern simply begins again in the next payment cycle.

16

81. During the period of the pre-foreclosure dispute, the Defendants illegally add anywhere from hundreds to thousands of dollars to the actual amount due. The Defendants add amounts never contemplated by the original loan documents and illegal under state law.

82. When the consumer requests a written accounting of her or his payments and charges, the Defendants eventually send the victim a document called an "activity statement." These statements are incomprehensible and even the Defendants, individually and collectively, own employees explain them differently each time.

83. Regardless of how much money the victimized borrowers/consumers send to the Defendants, the outcome is almost always the same. The Defendants, individually and collectively, cashes the checks and then makes new and additional demands under threat of foreclosure. Well into the fraud in some cases, the Defendants mail a "forbearance agreement" to the victimized consumer. That document offers to allow the consumer to "pay late fees and other fees" under an "extended payment plan." Included in the "plan" is a paragraph that absolves the Defendants, individually and collectively, of any and all claims that the consumer may have "now or in the future."

84. Many unsophisticated homeowners - under duress and desperate to save the homes that they, their children, or even their elderly parents reside in - sign the totally one-sided "forbearance agreement". Often, within days the Defendants, individually and collectively, declare the "forbearance agreement" to be in default, even though it is not.

85. Without competent legal representation, the typical borrower/consumer defaults in the foreclosure proceedings that the Defendants file. The Defendants, individually and collectively, or their associates are the only bidders on the property, and all of the equity ultimately accrues to the Defendants and their "REO" (Real Estate Owned) partners.

17

86. Upon foreclosure, the Defendants, individually and collectively, collects ridiculously exorbitant legal fees, "property-preservation: fees, late-fees, broker fees, appraisal fees, "pre-payment-penalty" fees, and any other illegal fees they can invent to help assure that in excess of the entire amount of the mortgagor's equity is taken. The Defendants then often launders the property through a series of REO portfolios that they own or control, in an effort to create the appearance that the Defendants actually "lost thousands of dollars" on the foreclosure.

**Allegations with respect to Representative Plaintiffs**

87. All of the Representative Plaintiffs have loans that were serviced by the Defendants, individually and collectively,

88. In the case of each of the Representative Plaintiffs, the Defendants, individually and collectively, committed some or the entire unlawful, deceptive and unconscionable loan origination and servicing practices.

89. In the case of each of the Representative Plaintiffs, the Defendants, individually and collectively, failed to promptly post timely payment and then assessed the Representative Plaintiffs with unwarranted late charges.

90. In the case of each of the Representative Plaintiffs, the Defendants, individually and collectively, charged more than one late fee for a single delinquency and otherwise pyramided late charge(s).

91. In the case of each of the Representative Plaintiffs, the Defendants, individually and collectively, posted payments made by the Representative Plaintiffs as partial payments that were posted to "suspense accounts".

18

92.    The Defendants, individually and collectively, also charged each of the Representative Plaintiffs fees called "corporate advances".

93.    The Defendants, individually and collectively, also charged or attempted to charge each of the Representative Plaintiffs illegal fees as a condition to reinstatement of their supposedly defaulted mortgages.

94.    In some cases, the Defendants, individually and collectively, force placed insurance on the Representative Plaintiffs. This insurance was unnecessary or purchased at exorbitant premiums.

95.    In addition, in the case of each of the Representative Plaintiffs, the Defendants, individually and collectively, charged interest on sums it claimed to have advanced on behalf of the Representative Plaintiffs.

96.    In the case of each of the Representative Plaintiffs, the Defendants, individually and collectively, engaged in abusive debt collection practices.

97.    Among other things, each of the Representative Plaintiffs were subjected by the Defendants, individually and collectively, to numerous and harassing contacts, the Defendants, individually and collectively, also failed to promptly verify amounts due, failed to resolve disputes, and failed to make the required disclosures in connection with its debt collection activities.

**98. THE FOLLOWING CLAIMS APPLY TO THE ILLEGAL MORTGAGE LOAN ORIGINATION PRACTICES OF THE DEFENDANTS AND/OR THEIR AUTHORIZED AGENTS, AND REPRESENTATIVES (COLLECTIVELY REPRESENTATIVES).**

## COUNT ONE

**Home Equity Protection Act**

99.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

100.    In 1994, Congress passed high rate home equity loan protections designed to prevent predatory lending practices targeted at the vulnerable consumers. Codified at 15 USC Section 1639 et. seq., this law is known as the Home Ownership Equity Protection Act ("HOEPA") and covers certain high interest or high closing cost loans. Rather than create a ceiling for interest rates on these loans, HOEPA requires the lenders to make certain disclosures and prohibits certain loan terms. In the event of noncompliance, HOEPA imposes civil liability on the lenders for rescission and statutory and actual damages.

101.    Each of the Representative Plaintiffs is a "consumer" and the Defendants, individually and collectively, are "creditors" as defined by HOEPA.  In the mortgage transactions at issue, each of the Representative Plaintiffs was required to pay excessive fees, expenses and costs, which exceeded more than 10% of the amount financed.  The transactions between each of the Representative Plaintiffs and the Defendants, individually and collectively, are, therefore, subject to HOEPA.

102.    Pursuant to HOEPA, and specifically 15 USC Section 1639(a)(1)(b), the Defendants, individually and collectively, were required to make the following disclosures to each of the

20

Representative Plaintiffs conspicuously and in writing no later than three days prior to the date their respective loan transactions were consummated:

> "You are not required to complete this agreement merely because you received these disclosures or have signed a loan application.
>
> If you obtain this loan, the lender will have a mortgage on your home. You could lose your home and any money you have put into it if you do not meet your obligation under the loan."

103.    The Defendants, individually and collectively, was required to make the foregoing disclosure to each of the Representative Plaintiffs no later than three days prior to the closing of the transaction.

104.    The Defendants, individually and collectively, violated HOEPA with respect to each of the Representative Plaintiffs by various acts and omissions, including but not limited to the following: a) failing to make the foregoing disclosure in a conspicuous fashion; b) failing to file documents canceling the resulting mortgage within three days of each of the Representative Plaintiffs rescission; and c) upon information and belief, engaging in a pattern or practice of extending credit to the consumers, in this instance the Representative Plaintiffs, without regard to their respective ability to repay in violation of 15 USC Section 1639 (h) and/or (f).

105.    By virtue of the Defendants, individually and collectively, violations of HOEPA, each of the Representative Plaintiffs have a right to rescind the transactions and did rescind, pursuant to 15 USC §1635. Moreover, this Complaint constitutes each of the Representative Plaintiffs additional notice of rescission of the note and mortgage. Therefore, under 15 USC Section1635 and Section 1640 or use Section 1640(a)(1)(3) and (4), the Defendants, individually and collectively, is liable to each of the Representative Plaintiffs for: a) rescission of the applicable mortgage loan transaction; b) termination of

21

the mortgage and security interest in the property created under said transaction; c) return of any money or property paid by each of the Representative Plaintiffs to anyone in connection with the transaction; d) twice the finance charge paid or applied in connection with the transaction; e) the right to retain proceeds; and f) actual damages in an amount to be determined at trial, including attorney fees.

## COUNT TWO

**Truth In Lending**

106. The Representative Plaintiffs incorporate by reference preceding paragraph as though fully pleaded whereat.

107. The Defendants, individually and collectively, are "creditors" as defined in the Truth-In-Lending Act, 15 U.S.C. Section 1602(f) and 12 C.F.R. Section 226.2(a)(17).

108. Each of the transactions between each of the Representative Plaintiffs and the Defendants, individually and collectively, are "consumer credit transactions" as that term is defined in the Truth-In-Lending ("TILA") 15 U.S.C. Section 1602(h) and 12 C.F.R. Section 226.2(a).

109. Each of the transactions between each of the Representative Plaintiffs and the Defendants, individually and collectively, are "closed end" transactions, as that term is defined in 12 C.F.R. Section 226.21(10), and is subject to the requirements for such transactions set forth in 15 U.S.C. Section 1638 and 12 C.F.R. Section 226.17 through Section 226.34.

110. Each of the transactions between each of the Representative Plaintiffs and the Defendants, individually and collectively, is a transaction in which a security interest was taken in each of the Representative Plaintiffs principal residence.

22

111.    The Defendants, individually and collectively, failed to include in the finance charges shown on the Truth-in-Lending Disclosure Statement certain charges, which, upon information and belief, were imposed on each of the Representative Plaintiffs by the Defendants, individually and collectively, incident to the extension of credit as required by 15 U.S.C. Section 1605 and Regulation Z Section 226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. §1601 et. seq., regulation Z Section 226.18(d).

112.    By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed amounts for the annual percentage rate, The Defendants, individually and collectively, is in violation of 15 U.S.C. Section 1601 et. seq., regulation Z Section 226.18(c).

113.    The Defendants, individually and collectively, failure to provide the required disclosures gives rise to his or her respective continuing right of rescission on the part of each of the Representative Plaintiffs. Each of the Representative Plaintiffs has elected to rescind his or her respective transaction, which rescissions the Defendants, individually and collectively, has failed to honor.

114.    This Complaint constitutes an additional notice of rescission to the Defendants, individually and collectively, by each of the Representative Plaintiffs.

## COUNT THREE

**Violation of Ohio's Mortgage Broker's Act**

115.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

116.    The Defendants, individually and collectively, (in that they acted as its own broker), is a "mortgage broker" as defined in Ohio Revised Code Section 1322.01 (E), and, therefore, ARE subject to the requirements of Ohio Revised Code Section 1322.01 et. seq. Not withstanding its mortgage broker

23

status, the Defendants, individually and collectively, knowingly concealed information, which federal statutes and regulations required it to be disclose to its clients, I. e., the Representative Plaintiffs.

117. The Defendants, individually and collectively, have entered into mortgage transactions with each of the Representative Plaintiffs knowing that he or she would not be able to repay his or her loan obligation in full due to the debt to income ratio and other information shown on their respective loan applications.

118. The Defendants, individually and collectively, fraudulently induced each of the Representative Plaintiffs, into signing a note and mortgage that included an unconscionable loan total with the knowledge that such a requirement is contrary to applicable law and public policy.

119. The Defendants, individually and collectively, concealments and misrepresentations were made maliciously, with knowledge of their falsity.

120. Each of the Representative Plaintiffs justifiably relied upon the Defendants, individually and collectively, false and fraudulent representations in making their respective mortgage loan agreements.

121. As a result of the frauds perpetrated by the Defendants, individually and collectively, each of the Representative Plaintiffs is entitled to damages in an amount that he or she is unable to determine at this time but is an amount believed to be at least Five Hundred Thousand Dollars $500,000.00 in each instance by each of the Representative Plaintiffs.

122. As a result of the Defendants, individually and collectively, violations of Ohio Revised Code Section 1322.07(B) (C), the Defendants, individually and collectively, are liable to each of the Representative Plaintiffs, pursuant to Ohio Revised Code Section 1322.11 for damages in an amount to be

24

determined at trial pursuant to O.R.C. Section 1322.00(A) (1-3) and a statutory injunction prohibiting such violations pursuant to O.R.C. Section 1322.11(B) (A).

## COUNT FOUR

**Breach of Fiduciary Duty**

123. The Representative Plaintiffs incorporate by reference each preceding paragraph as though, fully pleaded whereat.

124. A fiduciary relationship is one in which special confidence and trust, are placed in the integrity and fidelity of another, and there is a resulting position of superiority or influence.

125. The Defendants, individually and collectively, had a fiduciary relationship with each of the Representative Plaintiffs in that each of the Representative Plaintiffs contracted the Defendants, individually and/or collectively, to provide mortgage loan origination and services, which necessarily involved the duty of representing each of the Representative Plaintiffs best interests throughout the mortgage transaction.

126. The Defendants, individually and collectively, breached its fiduciary duties by arranging a mortgage loan on financing terms that in each instance were contrary to each of the Representative Plaintiffs, interests.

127. As a direct and proximate result of the actions of the Defendants, individually and collectively, each of the Representative Plaintiffs has suffered financial and emotional injury in an amount not yet ascertainable, at this time but an amount believed to be at least Five Hundred Thousand Dollars $500,000.00 in each instance by each of the Representative Plaintiffs.

128. The actions of the Defendants, individually and collectively, constitute the tort of the breach of fiduciary duty.

25

129.    These actions were taken with malice, ill will, and reckless indifference toward each of the Representative Plaintiffs.  Therefore, each of the Representative Plaintiffs, are entitled to receive actual, compensatory and punitive damages including attorney fees.

## COUNT FIVE

**Real Estate Settlement Procedures Act**

130.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

131.    As a mortgage lender, the Defendants, individually and collectively, is subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA") contained at 12 USC Section 2601 et. seq.

132.    In violation of 12 USC Section 2607, and in connection with the respective mortgage loans made to each of the Representative Plaintiffs, the Defendants, individually and collectively, accepted fees for providing real estate settlement services when in fact those fees were for charges unrelated to real estate settlement services.

133.    As a result of violating RESPA, and pursuant to 12 USC Section 2607(d)(2), the Defendants, individually and collectively, is liable to each of the Representative Plaintiffs in an amount equal to three times the amount of charges paid for the settlement services by each of the Representative Plaintiffs.

**REAL ESTATE SETTLEMENT PROCEDURES ACT VIOLATIONS**

## COUNT SIX

**Violation of 12 U.S.C. Section 2605**

134.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

135.    In numerous instances, in connection with the servicing of mortgage loans and the administration of escrow accounts of the Representative Plaintiffs, the Defendants, individually and collectively, has violated the requirement of Section 6 of RESPA, and 12 U.S.C. Section 2605, specifically including the failure to:

      a.  promptly post payments received from the Representative Plaintiffs in a timely manner;

      b.  timely apply payments to principal and interest on the Representative Plaintiff's accounts;

      c.  make timely payments of escrow funds for casualty insurance premiums and property taxes, and

      d.  timely and adequately acknowledge, investigate and respond to the Representative Plaintiffs' qualified written requests for information about the servicing of their loans and escrow accounts.

## COUNT SEVEN

**Negligent and Intentional Misrepresentations**

136.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

137.    During the course of the Defendants, individually and collectively, dealings with each of the Representative Plaintiffs, the Defendants, individually and collectively, entered into a relationship of trust and confidence with each of the Representative Plaintiffs.

138.    The Defendants, individually and collectively, and its representatives, jointly and severally, made negligent and intentional misrepresentations to each of the Representative Plaintiffs on which the Representative Plaintiffs reasonably relied. Further, the Defendants, individually and collectively, were negligent in dealing with each of the Representative Plaintiffs. The Defendants, individually and collectively, negligence included but was not limited to the following: a) the Defendants, individually and collectively, failed to advise Representative Plaintiffs that the Defendants, individually and collectively, would receive substantial fees in connection with their respective transactions; b) by providing the Representative Plaintiffs with inaccurate and improper advice as to maximizing the value of the Representative Plaintiffs' respective properties; c) failing to fully and completely disclose and explain the history and details of the Defendants, individually and collectively, relationship with all parties to each transaction and d) by otherwise failing to take the utmost and/or reasonable care, caution, and diligence to protect the best interests of each of the Representative Plaintiffs.

139.    Throughout the course of the Defendants collective and individual relationship with each of the Representative Plaintiffs, the Defendants acted with the sole motivation of increasing their fees and compensation and with intentional and malicious disregard for each of the Representative Plaintiffs best interests.

140.    As a direct and proximate result of the Defendants collective and individual negligence and negligent misrepresentations each of the Representative Plaintiffs have suffered damages in an amount, which, is not presently quantified with certainty but which will be proven at trial.

28

## COUNT EIGHT

**Civil Conspiracy**

141.　The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

142.　In connection with the applications for, and consummation of, and the collection and servicing of the respective mortgages and loans made with each of the Representative Plaintiffs, the Defendants, individually and collectively, acted with malice, ill will and reckless indifference toward each of the Representative Plaintiffs in concert with each other via a joint venture or conspiracy for the common purpose of accruing economic gains for themselves at the expense and detriment of each of the Representative Plaintiffs.

143.　Each of the Representative Plaintiffs was in fact injured as a direct and proximate result of this malicious combination, which, *inter alia*, committed acts of fraud and breach of fiduciary obligation. As a result, each of the Representative Plaintiffs are entitled to an award of actual, compensatory, and punitive damages in an amount to be proven at trial against the Defendants, individually and collectively,.

## COUNT NINE

**Civil RICO**

144.　The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

145.　The Defendants, individually and collectively, and its representatives are "persons" as defined in Ohio Revised Code §2923.31 (G).

29

146.    The Defendants, individually and collectively, became a member of a conspiracy with its representatives demonstrated by actions and words, an agreement to conduct and participate, directly or indirectly, in the affairs of an enterprise through a pattern of corrupt activity.

147.    As a direct and proximate result of the conduct of the Defendants, individually and collectively, each of the Representative Plaintiffs has suffered damages in an amount that cannot presently be quantified with certainty but which will be proven at trial.

## COUNT TEN

**Breach of Contract**

148.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

149.    Based on the terms of the written agreements, the Defendants, individually and collectively, were contractually obligated to provide each of the Representative Plaintiffs a statutorily legal loans and services as promised.  The Defendants collective and individual failure to comply with this contractual obligation constitutes a breach of contract.

150.    Based on the breach of contract by the Defendants, individually and collectively,, each of the Representative Plaintiffs have been damaged in an amount that she or he is unable to determine with specificity at this time but which will be proven at trial.

## COUNT ELEVEN

**Fraudulent Misrepresentations**

151.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

152.    The Defendants, individually and collectively, knowingly concealed from each of the Representative Plaintiffs information which federal statutes and regulations require to be disclosed to them.

153.    The Defendants, individually and collectively, entered into the mortgage loan transactions with each of the Representative Plaintiffs knowing that he or she would not be able to repay his or her obligation in full.

154.    The Defendants collective and individual concealments and misrepresentations were made maliciously and negligently, and in the case of the misrepresentations, with knowledge of their falsity.

155.    Each of the Representative Plaintiffs justifiably and detrimentally relied upon all of The Defendants collective and individual false and fraudulent representations in entering into their respective loan agreements.

156.    If the Representative Plaintiffs had had knowledge of the falsity of the Defendants, individually and collectively, representations, they would not have relied upon those representations. Further, if the Representative Plaintiffs had had knowledge of the falsity of the Defendants, individually and collectively, representations they would not have completed their respective transactions by signing for the unconscionable notes and mortgages applicable in each instance

31

157.    As a result of the fraudulent and unconscionable loan practices perpetrated by the Defendants, individually and collectively,, each of the Representative Plaintiffs are entitled to damages in an amount that he or she is unable to determine with specificity at this time but is an amount believed to be at least Five Hundred Thousand $500,000.00 in each instance by each of the Representative Plaintiffs.

**COMMON LAW CLAIMS**

## COUNT TWELVE

**Breach of Duty of Good Faith and Fair Dealing**

158.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

159.    The Defendants, individually and collectively, have breached its duty to each of the Representative Plaintiffs of good faith and fair dealing implied by every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of their contract.

160.    The Defendants, individually and collectively, as a matter of intentions and planned business practices, breaches its duty by:

        a.   refusing to timely credit payments to the Representative Plaintiffs' respective accounts so as to create late fees and a deficiency and after a large deficiency, moving to foreclose on each of the Representative Plaintiffs home;

        b.   assessing unauthorized charges;

        c.   illegally accelerating notes; and

        d.   pursuing foreclosure in lieu of other legal remedies.

## COUNT THIRTEEN

**Negligent Misrepresentation and Intentional Infliction of Emotional Distress**

161.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

162.    During the course of the Defendants collective and individual dealings with each of the Representative Plaintiffs, the Defendants, individually and collectively, negligently and/or intentionally, by its acts and/or omissions, made material misrepresentations of fact, and was negligent in a number of instances, including but not limited to, stating that the Representative Plaintiffs were obligated to pay amounts that were improperly or illegally accessed.

*163.    THE FOLLOWING CLAIMS APPLY TO THE MORTGAGE LOAN SERVICING PRACTICES OF THE DEFENDANTS AND/OR THEIR AUTHORIZED AGENTS AND/OR THEIR AUTHORIZED REPRESENTATIVES (COLLECTIVELY REPRESENTATIVES).*

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

## COUNT FOURTEEN

**Using False and Deceptive Means to Collect Debts**

164.    The Representative Plaintiffs incorporated by reference each preceding paragraph as though fully pleaded whereat.

165.    On numerous occasions, in connection with the collection of debts that were in default when obtained by the Defendants, individually and collectively,, including those of the Representative

33

Plaintiffs the Defendants, individually and collectively, have used false, deceptive or misleading representations or means, in violation of Section 807 of the FDCPA, and 15 U.S.C. Section 1692e, including but not limited to:

      (a)    Falsely representing the character, amount, or legal status of a debt, or any services rendered or compensation which may be lawfully received by a debt collector for collection of a debt, in violation of Sections 807(2) (A) and (B) of the FDCPA, and 15 U.S.C. Section 1692e (2) (A) and (B).

      (b)    Communicating or threatening to communicate to any persons credit information which is known or which should be false, including the communicate thaticate that a disputed debt is disputed, in violation of Section 807(8) of the FDCPA, 15 U.S.C. Section 1692e (8), and

      (c)    Using false representations or deceptive means to collect or attempt to collect a debt or to obtain the information concerning a consumer in violation of Section 807(10) of the FDCPA, 15 U.S.C. Section 1692e (10).

166.    The acts and practices alleged above are unfair and deceptive acts and practices.

167.    On numerous occasions, in connection with the collection of debts that were in default when obtained by the Defendants, individually and collectively,, including those of the Representative Plaintiffs, the Defendants, individually and collectively, has used unfair or unconscionable means to collect or attempt to collect a debt, including but not limited to collecting amounts (including any interest, fee, charge, or expense incidental to the principal obligation) not authorized by the agreement creating the debt or permitted by law in violation of Section 808(I) of the FDCPA, and 15 U.S.C. Section 1692f(1).

## COUNT FIFTEEN

**Failure to Provide Required Notices and Disclaimers**

168.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat

34

169.    On numerous occasions, in connection with the collection of debts that were in default when obtained by the Defendants, individually and collectively,, the Defendants, individually and collectively, have failed to notify each of the Representative Plaintiffs of his or her right to dispute and obtain verification of his or her debt and to obtain the name of the original creditor, either in the initial communication with each of the Representative Plaintiffs by the Defendants, individually and collectively,, or within five days thereafter, in violation of Section 809(a) of the FDCPA, and 15 U.S.C. Section 1692g(a).

## VIOLATION OF THE FAIR CREDIT REPORTING ACT

### COUNT SIXTEEN

**Furnishing Inaccurate Information to Credit Reporting Agencies**

170.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

171.    In numerous instances, in the course and conduct of its business the Defendants, individually and collectively, has furnished information relating to the Representative Plaintiffs to a consumer credit reporting agency when the Defendants, individually and collectively, knew or consciously avoided knowing that the information was inaccurate, and when the Defendants, individually and collectively, had not, clearly and conspicuously, specified to the Representative Plaintiffs an address for mailing notices disputing said information.

### COUNT SEVENTEEN

**Failure to Correct Inaccurate Reporting**

172.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

173.    The Defendants, individually and collectively, regularly and in the ordinary course of its business has furnished information to one or more consumer credit reporting agencies about its transactions or experiences with the Representative Plaintiffs, and thus must comply with the provision of Section 623(a)(2) of the FCRA, and 15 U.S.C. Section 1681s-2(a)(2).

174.    In numerous instances in which the Defendants, individually and collectively, has furnished to a consumer reporting agency information regarding the Representative Plaintiffs, the information that the Defendants, individually and collectively, has determined to be complete and accurate, is not complete and accurate. The Defendants, individually and collectively, has failed to promptly notify the consumer credit agency of that determination and provide to the agency any corrections to that information, or any additional information that was necessary to make the information provided by the Defendants, individually and collectively, to the agency complete and accurate, and the Defendants, individually and collectively, has thereafter furnished to the agency information that remained incomplete and inaccurate.

175.    The act and practices alleged whereat constitute violations of Section 623(a) (2) of the FCRA, and 15 U.S.C. Section 1681s-2(a) (2).

## COUNT EIGHTEEN

**Real Estate Settlement Procedures Act**

176.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

177.    As a mortgage lender, the Defendants, individually and collectively, is subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA") contained at 12 USC Section 2601 et. seq.

36

178.     In violation of 12 USC Section 2607, and in connection with the respective mortgage loans made to each of the Representative Plaintiffs, the Defendants, individually and collectively, accepted fees for providing real estate settlement services when in fact those fees were for charges unrelated to the real estate settlement services.

179.     As a result of violating RESPA, and pursuant to 12 USC Section 2607(d)(2), the Defendants, individually and collectively, is liable to each of the Representative Plaintiffs in an amount equal to three times the amount of charges paid for the settlement services by each of the Representative Plaintiffs.

## COUNT NINETEEN

**Negligent and Intentional Misrepresentations**

180.     The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

181.     During the course of the Defendants collective and individual dealings with the Representative Plaintiffs, the Defendants, individually and collectively, entered into a relationship of trust and confidence with the Representative Plaintiffs.

182.     The Defendants, individually and collectively, and its representatives, jointly and severally, made negligent and intentional misrepresentations to the Representative Plaintiffs on which the Representative Plaintiffs reasonably relied. Further, the Defendants, individually and collectively, were negligent in dealing with the Representative Plaintiffs.   The Defendants collective and individual negligence included but was not limited to the following: a) the Defendants, individually and collectively, failed to advise the Representative Plaintiffs that the Defendants, individually and collectively, would receive substantial fees in connection with their respective transactions; b) by providing the

Representative Plaintiffs with inaccurate and improper advice as to maximizing the value of the Representative Plaintiffs' respective properties; c) by failing to fully and completely disclose and explain the history and details of the Defendants collective and individual relationship with all parties to each transaction, and d) by otherwise failing to take the utmost and/or reasonable care, caution, and diligence to protect the best interests of each of the Representative Plaintiffs.

183.    Throughout the course of the Defendants collective and individual relationship with each of the Representative Plaintiffs, the Defendants acted with the sole motivation of increasing their fees and compensation and with intentional and malicious disregard for each of the Representative Plaintiffs best interests.

184.    As a direct and proximate result of the Defendants collective and individual negligence and negligent misrepresentations each of the Representative Plaintiffs have suffered damages in an amount, which, is not presently quantified with certainty but which will be proven at trial.

## COUNT TWENTY

**Civil Conspiracy**

185.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

186.    In connection with the applications for, and consummation of, and the collection and servicing of the respective mortgages and loans made with each of the Representative Plaintiffs, the Defendants, individually and collectively, acted with malice, ill will and reckless indifference toward each of the Representative Plaintiffs in concert with each other via a joint venture or conspiracy for the common purpose of accruing economic gains for themselves at the expense and detriment of each of the Representative Plaintiffs.

38

187.    Each of the Representative Plaintiffs was in fact injured as a direct and proximate result of this malicious combination, which, *inter alia*, committed acts of fraud and breach of fiduciary obligation.    As a result, each of the Representative Plaintiffs are entitled to an award of actual, compensatory, and punitive damages in an amount to be proven at trial against the Defendants, individually and collectively,.

## COUNT TWENTY-ONE

**Civil RICO**

188.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

189.    The Defendants, individually and collectively, and its representatives are "persons" as defined in Ohio Revised Code Section 2923.31 (G).

190.    The Defendants, individually and collectively, became a member of a conspiracy with its representatives demonstrated by actions and words, an agreement to conduct and participate, directly or indirectly, in the affairs of an enterprise through a pattern of corrupt activity.

191.    As a direct and proximate result of the conduct of the Defendants, individually and collectively, each of the Representative Plaintiffs has suffered damages in an amount that cannot presently be quantified with certainty but which will be proven at trial.

## COUNT TWENTY-TWO

**Breach of Contract**

192.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

39

193.    Based on the terms of the written agreements, the Defendants, individually and collectively, were contractually obligated to provide each of the Representative Plaintiffs a statutorily legal loan and services as promised.  The Defendants collective and individual failure to comply with this contractual obligation constitutes a breach of contract.

194.    Based on the breach of contract by the Defendants, individually and collectively, each of the Representative Plaintiffs has been damaged in an amount that he or she is unable to determine with specificity at this time but which will be proven at trial.

## COUNT TWENTY-THREE

**Fraudulent Misrepresentations**

195.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

196.    The Defendants, individually and collectively, knowingly concealed from each of the Representative Plaintiffs information which federal statutes and regulations required to be disclosed to them.

197.    The Defendants, individually and collectively, entered into the mortgage loan transactions with each of the Representative Plaintiffs knowing that each of the Representative Plaintiffs would not be able to repay his or her obligation in full.

198.    The Defendants collective and individual concealments and misrepresentations were made maliciously and negligently, and in the case of the misrepresentations, with knowledge of their falsity.

40

199.     Each of the Representative Plaintiffs justifiably and detrimentally relied upon all of the Defendants, individually and collectively, false and fraudulent representations in entering into their respective loan agreements.

200.     If the Representative Plaintiffs had had knowledge of the falsity of the Defendants collective and individual representations, they would not have relied upon those representations. Further, if the Representative Plaintiffs had had knowledge of the falsity of the Defendants collective and individual representations they would not have completed their respective transactions by signing for the unconscionable notes and mortgages applicable in each instance

201.     As a result of the fraudulent and unconscionable loan practices perpetrated by The Defendants, individually and collectively,, each of the Representative Plaintiff are entitled to damages in an amount that he or she is unable to determine with specificity at this time but is an amount believed to be at least Five Hundred Thousand $500,000.00 in each instance by each of the Representative Plaintiffs.

**REAL ESTATE SETTLEMENT PROCEDURES ACT VIOLATIONS**

## COUNTY TWENTY-FOUR

**Violation of 12 U.S.C. Section 2605**

202.     The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

203.     In numerous instances, in connection with the servicing of mortgage loans and the administration of escrow accounts of the Representative Plaintiffs, the Defendants, individually and collectively, has violated the requirement of Section 6 of RESPA, and 12 U.S.C. Section 2605, specifically including the failure to:

        a.   promptly post payments received from each of the Representative Plaintiffs' in a timely manner;

b.  timely apply payments to the principal and interest on each of the Representative Plaintiffs' accounts;

c.  make timely payments of escrow funds for the casualty insurance premiums and property taxes, and

d.  timely and adequately acknowledge, investigate and respond to the Representative Plaintiffs' qualified written requests for information about the servicing of their loans and escrow accounts.

## COMMON LAW CLAIMS

### COUNT TWENTY-FIVE

**Breach of Duty of Good Faith and Fair Dealing**

204.    The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

205.    The Defendants, individually and collectively, has breached its duty to the Representative Plaintiffs of good faith and fair dealing implied by every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of their contract.

206.    The Defendants, individually and collectively, as a matter of intentions and planned business practices, breaches its duty by:

a.  refusing to timely credit payments to the Representative Plaintiffs respective accounts so as to create late fees and a deficiency and after a large deficiency, moving to foreclose on each Representative Plaintiffs home;

b.  assessing unauthorized charges;

c.  illegally accelerating notes; and

d.  pursuing foreclosure in lieu of other legal remedies.

42

## COUNT TWENTY-SIX

**Negligent Misrepresentation and Intentional Infliction of Emotional Distress**

207. The Representative Plaintiffs incorporate by reference each preceding paragraph as though fully pleaded whereat.

208. During the course of the Defendants collective and individual dealings with each of the Representative Plaintiffs, the Defendants, individually and collectively, negligently and/or intentionally, by its acts and/or omissions, made material misrepresentations of fact, and was negligent in a number of instances, including but not limited to, stating that the Representative Plaintiffs were obligated to pay amounts that were improperly or illegally accessed.

**WHEREFORE**, the Representative Plaintiffs, individually and on behalf of the proposed class, pray for judgment against AmeriQuest Mortgage Company, AmeriQuest Capital Holding Corporation, AmeriQuest Mortgage Securities, Argent Mortgage Company, Long Beach Acceptance Corporation, and Town and Country Credit, jointly and severally, in an amount, per each Representative Plaintiff and class member, that is not presently quantified with certainty, but at least equals Five Hundred Thousand Dollars ($500,000.00), or such other amounts that will be proven at trial, for costs, for reasonable attorney fees, and for whatever other relief the Court deems appropriate under the circumstances.

43

Respectfully submitted,

GEORGE L. FORBES, ESQ. (0010716)
614 W. Superior Avenue, Suite 700
Cleveland, Ohio 44113-1318
(216) 696-7170
(216) 696-8076 (Fax)

GARY COOK, ESQ. (0021240)
A. R. ABDOULKARIM, ESQ. (0022173)
27801 Euclid Avenue, Suite 640
Euclid, Ohio 44132
(216) 261-8839
(216) 261-8840 (Fax)

Attorneys for Representatives Plaintiffs

## JURY DEMAND

Representative Plaintiffs hereby demand a trial by jury in this case and request the maximum number of jurors allowed by law.

GARY COOK (0021240)
A. R. ABDOULKARIM (0022173)
GEORGE L. FORBES (0010716)

44

## **CERTIFICATE OF SERVICE**

A true and accurate copy of this amended complaint was served on all counsel of record by electronically filing system of the United States District Court of the Northern District of Ohio on the 22nd day of September 2005 and upon the new party defendants by certified U.S. mail at the address of the Ohio Statutory Agent for each new party defendant.

_____

GARY COOK