IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen)<br><br>Assigned to Magistrate Judge Daniel Martin |

**AMERIQUEST'S OPPOSITION TO MOTION TO DISMISS MDL**

BN 12495438v5

**I.      INTRODUCTION**

The purpose of the Motion is transparent. After sitting back while Third-Party Plaintiffs Ameriquest Mortgage Company, Town & Country Credit Corporation, and Argent Mortgage Company, LLC (collectively "Ameriquest") worked arduously with borrower plaintiffs to resolve their claims, which claims, if true, were the responsibility of Third-Party Defendants or their agents, Third-Party Defendants the Fidelity Entities ("Fidelity"), Mortgage Information Services, Inc. ("MIS"), Northwest Title & Escrow ("Northwest"), and Superior Closing Services ("Superior") now seek to disband the MDL for the obvious goal of increasing the expense and burden for Ameriquest to pursue its claims against them. Disbanding the MDL at this point will not result in increased judicial economy or efficiency because what is now being handled by one court will be spread-out across the nation to hundreds of judges. Further, the efficiency gained via the MDL through coordinated common discovery and rulings on global issues will be lost.

The Motion fails on numerous grounds. First, just three months ago, Fidelity, who is facing the largest number of claims against it by Ameriquest, argued against the transfer of the *Terry v. Ameriquest* matter (08-cv-2475) into the MDL and essentially raised the same arguments made here. These arguments were soundly rejected by this Court and nothing has changed since then. Second, the Motion claims that this Court no longer has subject matter jurisdiction because Ameriquest settled the federal TILA claims brought by borrower plaintiffs (which TILA claims are the underlying basis for claims against the Third-Party Defendants) but the Motion fails to analyze the factors for exercising supplemental jurisdiction over state claims in an MDL context. Instead the Motion cites single plaintiff and defendant cases, a far cry from the complexities and efficiencies promoted by the MDL, and ignores MDL case law which is clear that disbanding the MDL is not appropriate at this time.

Finally, Third-Party Defendants claim, without any factual support or analysis, that discovery has been completed on common issues and argue that a suggestion of remand is appropriate. Hypocritically, Third-Party Defendants are contemporaneously relying on an objection that *all* discovery is stayed, not just uncommon discovery, to try to preclude *the start* of

any discovery about common issues. Discovery against Third-Party Defendants is in its infancy in the MDL and, as recognized by the Court previously, there are many common issues and legal arguments that can most efficiently be handled in the MDL. Accordingly, this Motion should be denied.

## II. SUMMARY OF ARGUMENT

Fidelity previously and exhaustively made many of the same arguments in this Motion to the Court, and the Court ruled against Fidelity in July 2012. Following 395 pages of briefs and exhibits that focused on the commonality of factual issues surrounding the third-party defendants, policies and practices for loan closings and the issuance and interpretation of closing protection letters, the Court ruled that discovery into third-party defendants' closing protection letter practices and interpretation should take place in the MDL for the MDL claims along with the 15 claims in *Terry*. The underlying TILA claims in *Terry* had been settled so all that remained was the common third-party state law claims. Because of the common discovery appropriate for the MDL, the Court rejected Fidelity's contentions that discovery in the MDL should be stayed until the disbandment of the MDL and further found the MDL was the appropriate forum for summary judgment motions concerning common third-party issues. *See* Ex. A, *Terry v. Ameriquest* ("*Terry*"), Dkt. 782 (Order); Ex. B, Dkt. 4389 at 1 to 3 (Ameriquest Reply); See Ex. C, Dkt. 4367 at 2-3, 6-9, 12, 14-15 (Ticor/Fidelity Opp.).

> Ameriquest convincingly argues that reassignment would preserve judicial resources, as only one judge need address the common claims and defenses present in both cases, which focus on indemnity language and closing protection letters entered into between the parties. **Reassignment would also make the most of coordinated discovery – already underway in Terry but relevant to the similar claims in the MDL – into the practices of third-party defendants, including their interpretations of the indemnity language.** Although Ticor/Fidelity insists that some individualized discovery will still be necessary, (Opp'n at 10–11), the need for such discovery has not disqualified other cases from reassignment in the past.
>
> As to the fourth element, Ameriquest contends that these cases are susceptible to disposition in a single proceeding—likely a summary judgment motion addressing the coverage of the indemnity language allegedly common to the hundreds of matters covered by Terry and the MDL. (Reply at 12.) To the contrary, Ticor/Fidelity contends that there are numerous case-specific differences (i.e., affirmative defenses) that prevent such a disposition. (Opp'n at 12.) For

2

example, Ticor/Fidelity claims that some of the closing protection letters in the MDL have language excluding coverage for TILA damages, an issue not present in Terry. In addition, there is an affirmative defense applicable in certain states that may not be argued in Terry. Ameriquest acknowledges the existence of case-specific defenses but argues that those questions would not prevent us from resolving the common issues that apply to more than one Terry or MDL loan. (Reply at 12.) We again agree with Ameriquest. **Given the similarity of the claims between Terry and the MDL, resolution of any common claims in a single proceeding will promote efficiency, economy, and consistency.**

Here, the commonality of factual and legal issues is readily apparent in light of the underlying plaintiffs' allegations that the loan closings handled by the three moving third-party defendant title companies and underwriters' issuing agents were botched over 400 times by failing to provide the same notice of right to cancel form: 80, 88, and 57 closings at issue were handled by MIS, Superior and Northwest, respectively. Further, Fidelity agreed to indemnify Ameriquest pursuant to closing protection letters for over 300 claims at issue, but now contends the letters are unauthorized or were never issued, although the title company defendants who issued them seem to disagree.

Fidelity will not accept the Court's rejection of its arguments and one month later made the exact same argument in Fidelity's August 2012 Status Conference Statement. *Compare* Ex. A, *Terry*, Dkt. 782 (Order) *with* Dkt. 5086 and Ex. C, Dkt. 4367 (Ticor/Fidelity Opp.).

In order to get a second bite at the apple, Fidelity has re-framed the issue as a request to have the Court use its discretion to dismiss supplemental jurisdiction claims and disband the MDL. Fidelity tries to take a back-seat in the Motion, but it is readily apparent that Fidelity and the other Third-Party Defendants hastily filed this motion to try to avoid responding to the common discovery Ameriquest propounded and had informed the Court in its Status Conference Statement that it would propound to the moving parties. *See* Dkt. 5069.

Ameriquest has expended significant sums of money and considerable effort to settle the 30 class actions and over 2000 individual lawsuits which were predominantly based on allegations that the Third-Party Defendants or their issuing agents did not properly handle the Notice of Right to Cancel forms during the loan closing. The moving-parties did not contribute a penny to the settlements although each agreed to properly handle the notice of right to cancel

3

forms or in the case of Fidelity, indemnify Ameriquest pursuant to closing protection letters for its agents' failure to properly handle the notice of right to cancel forms. The moving parties seek to use Ameriquest's settlement efforts against it to argue that there is no more value to the MDL now that many of the underlying claims have been resolved.

The Motion fails to address the repercussions of dismissing the third-party claims pending before this Court and transferring the rest to other federal courts because the result would be chaotic and the antithesis of the purpose of the MDL. Although Ameriquest has settled a lot of cases, 39 plaintiffs have pending TILA claims with related third-party claims against the moving parties, and there are at last count an estimated 125 plaintiffs with pending TILA claims with related third-party claims. So even if all of the requested relief is granted, moving parties' actions will be litigated 39 times in the MDL and third-party defendants' actions will be litigated about 125 times in federal courts. Unlike the typical matter where the court declines to exercise supplemental jurisdiction over remaining state claims when the federal claim has been dismissed and the federal courts no longer have any involvement, here, the result would just be a duplication of effort by hundreds of state and federal courts.

Instead of coordinated pre-trial discovery and summary judgment motions, hundreds of state and federal courts around the nation would be tasked with handling the exact same pre-trial issues. The MDL caselaw is clear – remand is not appropriate when the MDL procedure continues to promote judicial efficiency, convenience, and consistency. The Court recently determined that the MDL continues to promote these values and coordinated discovery should proceed. Accordingly, the Motion should be denied.

### III. STATEMENT OF FACTS

#### A. History Of The MDL Discovery Orders And Title Defendants' Refusal To Participate In Any MDL Discovery

The MDL was formed because of the common factual issues surrounding, *inter alia*, the loan closings and thousands of claims have been included in the MDL with allegations that the Notice of Right to Cancel forms were not handled appropriately. Ex. D, MDL Transfer Order.

The panel explained that "Centralization under Section 1407 is necessary in order to eliminate the duplicative discovery; prevent inconsistent pretrial rulings … and conserve the resources of the parties, their counsel, and the judiciary." The closings were handled by the title companies MIS, Superior, and Northwest. Fidelity, the only non-settling title insurer in the MDL, issued closing protection letters indemnifying Ameriquest for losses for the title companies' failure to properly handle documents at the closing.

In 2008, this Court ordered the parties to participate in limited, informal discovery to facilitate the mediation. Dkt. 1958. The parties then entered into a stipulated order in July 2009 for the exchange of loan documents and staying all other discovery until the Rule 26(f) Conference scheduled soon thereafter. Dkt. 3268, p. 3 para. 3. The Joint Discovery Plan and Scheduling Order of December 14, 2009 sets forth a schedule for the exchange of agreements and loan documents by Third-Party Plaintiffs and Third-Party Defendants. See Dkt. 3268 (b) and (d). Further, mediation was scheduled after the Court denied the pending motions to dismiss the breach of contract and negligent misrepresentation claims. The discovery limitations expressly expired at "**the completion of mediation proceedings**" with Third-Party Defendants. Dkt. 3268, p. 3 para (d).

On July 26, 2012, the Court rejected Fidelity's assertions that discovery concerning third-party loan closing and closing protection letter policies and practices is not appropriate for the MDL. Ex. A, *Terry,* Dkt. 782. With mediation having failed and the Joint Discovery Plan and Scheduling Order allowing further discovery after mediation, Ameriquest propounded discovery on Fidelity and MIS. Exs. E and F. And Ameriquest explained in its Status Conference Statement that it would also propound discovery on the remaining moving parties Northwest and Superior. Dkt. 5069.

Fidelity merely objected to the discovery and asserted that there is a discovery stay. On September 17, 2012, Ameriquest filed a motion to compel before Judge Denlow seeking to overrule Fidelity's objection that discovery is stayed. Dkt. 5082. At the hearing, Fidelity's counsel raised the same arguments that the Court rejected in July 2012, specifically that the

5

individual variances of the closing protection letters should preclude discovery in the MDL. *See* Ex. G, September 20, 2012 Hearing Transcript at 13:11-14:23. Judge Denlow informed the parties that Judge Aspen should control the scope of discovery in the MDL and informed the parties to raise the issue before Judge Aspen. *Id. at* 15:15-19, 17:24-18:8. Third-Party Defendants filed the motion at bar in an effort to raise the issue in a different context instead of responding to a motion to compel.

        B.        Overview Of Common Discovery At Issue

**Fidelity Entities:** In accord with the recently approved topics of discovery in the MDL, Ameriquest propounded a single set of two interrogatories and seven requests for production encompassing all of the Ameriquest Mortgage Company claims involving Fidelity to identify exemplar multi-transaction closing protection letter forms and determine policies and procedures for their issuance for each entity and state at issue. Although Fidelity claims allowing this common discovery will result in an avalanche of motions being filed before this Court, Fidelity's only remaining objection is that the requests seek information about a five-year period (the time period of the loans), an issue that can easily be resolved by Judge Martin with one order if the parties cannot resolve the issue on their own.

**MIS:** As a preliminary matter, Ameriquest seeks discovery into MIS's closing practices and procedures including confirmation that MIS handled the loan closings or had an agency relationship with the person who handled the loan closing. See Ex. F. This discovery is common – MIS signed a uniform closing agent affidavit and closing instructions for the majority of the loan closings at issue. Ameriquest also seeks documents which should be in a closing file – documents about the borrower's loan closing to the extent these have not already been produced. The parties agreed that MIS could wait to serve any objections to the discovery until the Court rules on this Motion because the parties expect that resolution of this motion will resolve the objection.

**Northwest, Superior, and Other Closing Companies:** There has not been any formal discovery with these moving parties. Coordinated discovery for each of these entities will

6

include basic discovery about policies and procedures for loan closings and the issuance of Fidelity closing protection letters and the role of the title companies and their agents in the closings. Similar discovery will be propounded to other closing companies involved in a large volume of claims: there are 11 other closing companies with between 10 and 58 claims.

## IV. THE COURT HAS SUBJECT MATTER JURISDICTION

A fundamental defect with the Motion is that it acts as if there were no federal claims remaining in the MDL. But there are 39 TILA claims pending in cases involving the moving parties and around 125 TILA claims pending in cases involving third-party claims. The Court's discretion to dismiss claims under 28 U.S.C. 1367(c)(3) ("the district court has dismissed all claims over which it has original jurisdiction") does not apply to these cases, and they will litigated in the federal court system.

Also, the test for determining whether a court should retain supplemental jurisdiction after settlement of an underlying federal claim follows the analysis for determining whether to transfer the cases to multi-district proceedings and the same analysis for a suggestion of remand. As explained below, the interests of judicial economy, convenience, fairness, and comity all weigh heavily in favor of retaining the MDL.

### A. The Values Of "Judicial Economy, Convenience, Fairness, And Comity"

The Supreme Court has declared that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon University v. Cohill* (1988) 484 U.S. 343, 350. "[T]he doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.*

Relying on Supreme Court precedent and Section 1367(c), the Seventh Circuit has confirmed that a "…district court is not required to relinquish jurisdiction over supplemental state-law claims just because it has dismissed the federal claim before trial. The decision

7

whether to relinquish or retain is committed to the district judge's discretion." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 589 F.3d 881, 883 (7th Cir. 2009) *citing* 28 U.S.C. § 1367(c)(3). Indeed, "[t]he district court has **broad discretion** in deciding whether to retain supplemental claims*." See, e.g.*, *Hansen v. Board of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 608-09 (7th Cir. 2008) (discussing wide discretion to analyze "judicial economy, convenience, fairness, and comity") (emphasis added); *Timm v. Mead Corp.*, 32 F.3d 273, 276-77 (7th Cir.1994) (same).

The "presumption" that the district court should relinquish jurisdiction if the federal claims drop out before trial derives from the assumption that "[s]ubstantial judicial and party resources will probably not have been expended on the litigation, and so the economies from retaining jurisdiction over the state-law claims will be slight." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). The Seventh Circuit has expressly cautioned that the presumption is not a rigid rule. *Id.* (finding "That is in general rather than in every case, however, […] **which is why it's a presumption and not a rule**.") (emphasis added)(citations omitted). "The rationale of the supplemental jurisdiction is economy in litigation, and so a relinquishment of it that clearly disserved economy would be a candidate for reversal." *Id*. at 906.

The Seventh Circuit has "…recognized that the interest in judicial economy compels a court to retain jurisdiction over state claims when substantial resources already have been committed to deciding them..." *Taflinger v. U.S. Swimming, Inc.*, 435 Fed.Appx. 559, 561-62 (7th Cir. 2011). *In re Repository Technologies, Inc.* 601 F.3d 710, 727 (7th Cir. 2010) is instructive of the analysis whether to retain jurisdiction. The Seventh Circuit held that it was an abuse of discretion to dismiss a case in which the federal judiciary had invested a significant amount of time and the state claims were entangled with the dismissed federal claims such that a state court would have to analyze the federal claims and voluminous record to determine the state claims. *Id*. The court explained that by dismissing such a case, it would be doing a

8

disservice to the already burdened Illinois state courts and it was not a case involving "very little federal judicial investment." *Id.* at 1251.

>B.   **MDL Courts Retain Supplemental Jurisdiction Instead of Scattering Hundreds of Cases To Other Courts**

MDL courts often recognize the importance of their role in pre-trial management of hundreds of cases to alleviate the burden on the state and federal judicial systems and parties. It would defeat the purpose of multi-district litigation if MDL courts just dismissed all of the cases for lack of supplemental jurisdiction only to have them re-filed in hundreds of state and federal courts around the nation. One MDL court provides a thorough discussion of the analysis whether to retain jurisdiction over state law claims. In *In re Ford Motor Co. Ignition Switch Products Liability Litigation*, 19 F.Supp.2d 263 (D.N.J. 1998), the court explained that the same reasons transferring cases to an MDL determine whether to retain supplemental jurisdiction in an MDL:

> At the present stage in the instant litigation, this evaluation comes out in favor of maintaining supplemental jurisdiction. It is unquestionably the case that the values of economy, convenience, and fairness all weigh in favor of the exercise of supplemental jurisdiction. Indeed, it is noteworthy that these very same factors were weighed by the MDL Panel in determining whether to transfer these cases to this court for consolidated pretrial proceedings. *See* 28 U.S.C. § 1407 (providing that civil actions involving common questions of fact may be transferred for coordinated or consolidated pretrial proceedings upon the panel's determination that the transfer will be for "the convenience of the parties and witnesses and will promote the just and efficient conduct of [the] actions") (emphasis added). Since the MDL Panel made that determination, circumstances have not changed in any way that would alter this analysis. *Id*. at 269-70.
>
> **It is a tautology that it is more economical and convenient for the parties to conduct pretrial proceedings before one court, in which discovery can be coordinated, and issues common to each case can be resolved in a consolidated fashion.**

*Id.; see also In re Nigeria Charter Flights Contract Litigation* (E.D.N.Y. 2007) 520 F.Supp.2d 447, 470-71 (finding that "Here, the parties have been litigating in federal court for several years, and discovery has taken place. A dismissal on jurisdictional grounds at this juncture would frustrate the goals of judicial economy, convenience, and fairness.") (citations omitted); *see also Grispino v. New England Mut. Life Ins. Co.*, 358 F.3d 16, 19 (1st Cir. 2004)

9

(upholding retention of jurisdiction in MDL of state law claims with dismissed federal law claims because of the court's familiarity with the same type of claims from its long-standing involvement).

Third-Party Defendants merely rely on *single* claim cases such as *Farmer v. Ameriquest* to argue that this Court should exercise its discretion to dismiss *all* of the cases. As the Court may recall, Farmer voluntarily dismissed her TILA claim because it was time-barred, and she requested that her matter be *transferred back* to New Jersey state court as she was not making any common claims against Ameriquest. There were no third-party claims pending in *Farmer*. *Farmer* is simply not analogous to a request to dismiss all of the MDL cases. As discussed below, the repercussions of dismissal would be enormous and completely counter to the purpose of the MDL.

### C. The Values Of "Judicial Economy, Convenience, Fairness, And Comity" Would Be Defeated By Scattering The Cases To State And Federal Courts Around The Nation

The Motion requests that the Court scatter over 700 cases to the wind without a single citation to an analogous case or any analysis of the repercussions of the dismissal or benefits. An analysis of the two scenarios follows.

**Option 1 – Retaining The MDL:** The Court has already described the benefits of one judge handling pre-trial proceedings with respect to the third-party claims as promoting judicial economy, efficiency, and consistency. *See* Ex. A, Dkt. 782. One judge will rule on any common discovery issues and a few global summary judgment motions instead of the same discovery issues and summary judgment motions being raised in hundreds of federal and state court around the nation. The benefits are so obvious that the Motion does not even try to substantively address them or the Court's recent ruling explaining the benefits. The reasons for retaining the MDL are more apparent when viewed light of the alternative proposed by Third-Party Defendants.

**Option 2 – Disbanding The MDL:** If all of the MDL cases are dismissed and cases with pending TILA claim are transferred to other federal courts, the burden placed on the parties

and judicial system will be enormous. After many years of litigating with Third-Party Defendants, the process starts over: (1) attorneys around the nation will have to be hired; (2) new complaints drafted; (3) hundreds of parties have to be located and served; (4) Third-Party Defendants will argue they get to file new motions to dismiss; (5) about 50 cases do not have a state savings statute for the dismissed federal cases so the moving parties will claim they are barred by the statute of limitations; (6) hundreds of courts around the nation will be faced with learning about the history of the MDL in order to handle the pre-trial procedures; (7) hundreds of courts will be ruling on the exact same discovery disputes; (8) hundreds of courts will be tasked with learning about the same closing practices and closing protection letter practices; (9) hundreds of courts will be deciding joinder and venue arguments; (10) hundreds of courts will be ruling on hundreds of summary judgment motions about the same thing; (11) hundreds of settlement conferences will take place; (12) hundreds of discovery battles will take place over whether a single claims is sufficient in size to justify the requested discovery which was a constant battle with Fidelity in *Terry*; (13) state courts will be tasked with analyzing TILA and the reasonableness of attorneys' fees expended in the MDL in defense of the TILA claims; (14) witnesses will have to deposed multiple times which will be exacerbated because Fidelity will argue that a deposition of one entity employee is not binding on any one of the 14 others Fidelity entities; and (15) Ameriquest witnesses will be deposed time and time again about the same thing.

    **1.**  ***Judicial Economy, Efficiency, and Consistency.*** It is beyond reasonable dispute that these factors weigh heavily in favor of the continuation of the MDL, and the Motion fails to meet its burden of showing otherwise. One court with years of experience can address any issues that arise much easier than hundreds of courts who will hear the background of the case for the first time and have to try to get up to speed for each discovery issue. A review of the discovery propounded to Fidelity and MIS shows how discovery can be coordinated so that any objections can be raised to Magistrate Martin with no additional burden than the 125 cases that will remain in the federal court system, typically in the Northern District

11

of Illinois.[1]  *See* Exs. E and F.  A few discovery requests encompass over four hundred cases. Coordinated discovery forces the parties to work together because they will be before one district court judge and magistrate with knowledge about the case instead of the Third-Party Defendants having an incentive to try to argue each discovery issue anew to increase the burden of litigation.

Coordinated depositions can take place on the common issues of closing and closing protection letter practices and interpretations, with percipient and 30(b)(6) witnesses appearing once on a variety of topics instead of repeatedly.  The Court has already agreed that the cases are susceptible to disposition in the MDL such as summary judgment motion on the indemnity language of the closing protection letters.  Ex. A, *Terry*, Dkt. No. 782.  Likewise, the title company issues are well-positioned for a global summary judgment motion as each title company executed the same Closing Agent Affidavit and Closing Instructions which require them to verify that the Notice of Right to Cancel forms were appropriately handled.

The Motion overstates the practical effect on the federal courts.  Even if the Court were to dismiss all of the cases that no longer have a federal claim or other jurisdictional basis,[2] the practical effect would not decrease the burdens posed on the Northern District of Illinois – it would just require a duplication of effort by state and federal courts around the nation.  All of the moving parties and all of the same issues will be handled by the Northern District of Illinois, the only practical effect from the Motion is that hundreds of other courts will also be doing the same judicial work.

      **2.**    ***Convenience.***  Convenience weighs heavily towards retaining the MDL. There are no "convenience" benefits gained by dispersing the cases.  The inconvenience of

---

[1] The Motion assumes that the "settlement pending" category of cases means they are settled and requests that the Court dismiss them.  These cases are far from settled – the settlement pending cases are cases in which the parties hope to reach a settlement involving a loan modification with third-parties.  This process takes months of multiple party negotiations, of which, these Third-Party Defendants refuse to contribute a penny.

2 The presence of diversity jurisdiction precludes the Court from dismissing the great majority of the claims.  If the Court is inclined to dismiss any claims for lack of subject matter jurisdiction, Ameriquest seeks leave to amend the complaint to include allegations of diversity jurisdiction.  *See* Ex. H,  Affidavit of Manvitz concerning the allegations of diversity jurisdiction.  *See* 28 U.S.C. § 1653.

spreading these cases to federal and state courts around the nation is obvious. It is much more convenient for the parties to have one court handling pre-trial issues instead of hundreds. The burden on the parties hiring counsel around the nation to handle the exact same issues would be significant.

        **3.**    *Fairness.* Fairness heavily weighs towards retaining jurisdiction. It would be unfair to Ameriquest after it settled many of the cases without any assistance from Third-Party Defendants to use the settlements against them to avoid indemnity and contribution. No good deed goes unpunished is the only policy furthered by the requested relief. It would set a terrible precedent for future MDL actions if responsible parties could refuse to contribute to settlements and then be rewarded for their recalcitrance by having the claims against them dismissed. No one would step-up to the plate and fund a settlement because the result would be that the ability to recover from other responsible parties would be taken away.

        The only alleged unfairness is that because answers have not been filed, issues they would otherwise concede in their answers are still subject to discovery. *See* Motion at 13-15. This is another self-imposed unfairness — if they want to concede something, no one is stopping them. Concessions are often made in correspondence or discovery responses. Further, nothing is preventing them from filing an answer except their own request to be excused from filing answers. Dkt. 5101. The prior argument for not answering the complaint was that they were ordered to file as sub-groups such as underwriters and title companies and they would be forced to cross-claim against each other. *Id.* There are no longer sub-groups and answers could be filed if so desired.

        The motion suggests that it is not unfair to dismiss the cases because there are state saving statutes which will result in the claims not being dismissed for statute of limitations. Motion at 10. But many states at issue either do not have a savings statute or do not have one that could apply here: Alabama, California, Florida, Minnesota, South Carolina, and

13

Washington.*³*  The Motion is trying to set up Third-Party Defendants' next round of arguments before the state courts that the dismissed claims are barred by the statute of limitations based on an argument that supplemental jurisdiction was not appropriate so the federal 30-day tolling statute does not apply.

   **4.**  *Comity.*  Comity is not furthered by dumping cases on state courts, as explained above.  Comity especially weighs in favor of retaining jurisdiction because the Motion does not identify any novel or complex area of state law which is better left for state courts to decide.  To the contrary, if the MDL is disbanded, state courts would be left to interpret TILA.

**V. A SUGGESTION OF REMAND IS NOT APPROPRIATE BECAUSE THE BENEFITS OF THE MDL CONTINUE**

  The standards for a court to remand a matter prior to the completion of discovery are often summarized as follows:

> The Panel will remand an action prior to the completion of pretrial proceedings "only upon a showing of good cause."  Further, the party seeking remand has the burden of establishing that such remand is warranted.  When deciding whether to issue a suggestion of remand to the MDL Panel, "a transferee court is guided by the standards for remand the Panel uses."  "The exercise of that discretion generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL."  "Remand is inappropriate ... when continued consolidation will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." (citations omitted).

*Chau v. Aviva Life and Annuity Co,* 2011 WL 1990446 (N.D. Tex. 2011); see also *In re Express Scripts, Inc.,* 2010 WL 5149270 (E.D. Mo. 2010) ("Generally, in cases where remand has been deemed appropriate, there was no efficiency gain to be had by keeping the case before the transferee court.")

  Relying on an Indiana district court opinion from 2001, Third Party Defendants suggest that remand "may be warranted" if the remaining discovery is "case-specific."  Motion at p. 12; *citing In re Bridgestone/Firestone, Inc., ATX, ATX II, and Wilderness Tires Products Liability*

---

³ *See Peterson v. BMI Refractories*, 132 F.3d 1405 at fn. 17 (11th Cir. 1998) (explaining that Alabama does not have a savings statute); Cal. Civ. Proc. § 355; *HCA Health Services of Florida, Inc. v. Hillman*, 906 So.2d 1094 (Fla.App. 2 Dist. 2004) (noting that "unlike the majority of states, Florida has chosen not to adopt a 'savings statute'"); Minn. Stat. § 541.18.

*Litigation*, 128 F.Supp.2d 1196, 1197 (S.D. Ind. 2001). This narrow approach has been rejected. In *In re Wilson*, 451 F.3d 161, 169 (3d Cir. 2006) the parties sought remand on the ground "…that generic liability discovery concluded years [prior] […] and that MDL treatment is unnecessary when remaining discovery is case specific." The Third Circuit held that " 'a proceeding that relates only to a single individual's case or claim can nonetheless be coordinated,' as coordination can be found even if common issues are present only in relation to cases that have already been terminated." *Id*. at 170 *quoting In re Patenaude*, 210 F.3d 135, 143 (3d Cir. 2000). "Moreover, '[t]o be coordinated, it is not necessary that common issues are being contemporaneously addressed' or that 'any one issue be common to all cases, so long as issues 'overlap.'" *Id.* The Third Circuit specifically rejected the moving parties' attempt "…to equate the completion of common discovery with the end of 'coordinated or consolidated' proceedings" and held that the "overlapping issues" in discovery did not "necessarily need to touch the [moving parties'] cases." *Id*. at 170. As explained previously, a significant amount of common discovery remains. *See also Terry* Dkt. 782.

## VI. CONCLUSION

The policy reasons for the Court determining that Fidelity's claims should be consolidated in the MDL for coordinated discovery and summary judgment motions are exponentially implicated by the requested abandonment of the MDL. Because the benefits of coordinated pre-trial proceedings are readily apparent, the requested relief should be denied.

DATED: October 17, 2012          Respectfully submitted,

By: /s/ Randall L. Manvitz
*Attorneys for Third-Party Plaintiffs*
Randall Manvitz, Esq. (admitted *pro hac vice*)
BUCHALTER NEMER,
A Professional Corporation
333 Market Street, 25th Floor
San Francisco, CA 94105
Telephone: (415) 227-0900

15