# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO:<br><br>*Terry et. al. v. Ameriquest Mortgage Company, et. al.*; Case No. 08-2475 | |

### AMERIQUEST'S REPLY TO TICOR TITLE'S OPPOSITION TO MOTION FOR REASSIGNMENT

**I.    INTRODUCTION**

Ticor fails to identify any persuasive reason why the 22 claims against it in *Terry*, and the 292 identical claims against Ticor, Fidelity, and the Fidelity-related brands in the MDL should not be coordinated together in the MDL. Instead, Ticor spends pages providing a misleading statement of facts as a foundation for its claims that **"there is no common discovery"** between the 22 and 292 cases. However, contrary to Ticor's assertion a significant number of Ameriquest's claims in the MDL involve the exact same parties and issues:

- 144 MDL Plaintiffs' claims (90 loans) involve Ticor Title Insurance Company.

    ➤ 69 of those MDL Plaintiffs' claims (41 loans) involve the same third-party defendant Tristar Title Insurance Company as the issuing/closing agent.

    ➤ 18 of those MDL Plaintiffs' claims (10 loans) involve the same third party defendant Northwest Title Insurance Company as the issuing/closing agent. Northwest is also a third-party defendant issuing agent in the MDL for 101 MDL Plaintiffs claims, most of them involving Ticor of Florida formerly known as American Pioneer.

- 308 is the collective number of Plaintiffs' claims involving Ticor, Tristar Title, and Northwest Title.

Additionally, even Ticor's own recitation of facts shows there are common disputed issues for discovery and common issues ideally postured for motions for summary judgment because the exact same form of closing protection letters are at issue for the 22 claims in *Terry* and most of the MDL claims. For example,

- The September 19, 2003 closing protection letter completed by Tristar and generated from Ticor's website applies to all future loans involving Ticor, Ameriquest, and Tristar (the majority of the 22 *Terry* plaintiffs and 69 of the MDL plaintiffs). If the letter is valid for one claim, it will be valid for all of the claims.

- The April 30, 2004 closing protection letter completed by Northwest and generated from Ticor's website applies to all future loans involving Ticor, Ameriquest, and Northwest (some of the *Terry* plaintiffs and 18 of the MDL plaintiffs). The exact same issues apply for all of the plaintiffs' claims.

- The same indemnity language is used in all 314 Fidelity-related closing protection letters and also apparently to the letters applying to the other 500-plus claims in the MDL. Thus, discovery into the interpretation of paragraph A.1 and a finding of coverage pursuant to that paragraph will have universal application for all claims.

- The same title industry practices concerning the implied, apparent, and actual authority to issue multi-transaction closing protection letters applies to all 314 Fidelity-related claims and if any other third-party defendant makes the same argument, those additional claims.

- The title industry practices concerning whether leaving a blank in a regarding line voids a multi-transaction letter has universal application to all of the 314 Fidelity related-claims in the MDL and if any other third-party defendant makes the same argument, those additional claims.

- Although Ticor claims leaving a blank in a regarding line would only be an accident, its training materials inform its agents to leave a blank in a regarding line for multi-transactional letters. Ticor suggests that the two of the two agents in *Terry* were rogue agents by utilizing this practice of leaving blanks in the regarding line. Numerous closing protection letters provided by title underwriters representing over 90% of the title industry suggest that this was an industry standard practice. *See* Ex. 1 (First American Title, Landamerica/Commonwealth, Chicago Title, Old Republic, United General, Stewart Title; Landamerica/Lawyer's Title, Ticor of Florida (all using blank regarding lines or insertion of phrase "closing protection letter"); *see also* Ex. 2 (Northwest Title closing protection letter with a blank regarding line for American Pioneer n/k/a

2

>Ticor of Florida, a MDL third-party defendant for 42 Plaintiffs' claims); Ex. 3 ( Ticor blank regarding line letter from an agent not in the Terry matter).

This Court will already be ruling on the exact same issues in the MDL as presented in *Terry*. It makes more sense for one judge to rule on the issues instead of two, or as Ticor suggests, a different judge for each of the 200-plus separate Fidelity-related cases. Accordingly, the requirements of Local Rule 40.4(b) have been satisfied and support the reassignment of *Terry* into the MDL.

## II.   FACTUAL BACKGROUND OF CLOSING PROTECTION LETTER CLAIMS

To set the record straight about Ameriquest's claims, the following is short explanation:

It is the industry standard to issue multi-transaction closing protection letters – indemnity agreements which apply to all future loans. *See e.g.* Ex. 1 (referencing plural "closing of real estate transactions") versus Ex. 4 (closing protection letter limited to a specific transaction); Ex. 5 (expert witness report). Fidelity's agents have testified that closing protection letters are provided 98% of the time. Ex. 6 (Depo. of Powsner). Furthermore, Fidelity's belatedly produced claims manual confirms that multi-transaction letters are "usually" provided. For almost all of the transactions in the MDL, Ticor and the other Fidelity brands used the ALTA standard form multi-transaction letter. And although Fidelity admits that it authorizes all agents to use the multi-transaction letter, Ticor/Fidelity contend that for Ameriquest, the closing protection letters are void. Thus, they will not recognize multi-transaction closing protection letters for any of the 292 claims in the MDL or the 22 claims in *Terry*.

The plain language of the multi-transaction letters apply to any future loan transactions. *See e.g.*, Ex. 7. Thus, the same letter may apply for hundreds or thousands of future loan transactions.

Ticor's data shows that Ticor first issued Ameriquest a multi-transaction letter on

3

BN 9605576v3

September 19, 2003 through Tristar Title and April 30, 2004 through Northwest Title with periodic updated re-issuances to Ameriquest.[1] Ex. 8 These letters did not have any place for borrower-specific information and were issued in the same form as the May 24, 2005 multi-transaction letter which has a regarding line with the title company's information information. *See* Ex. 7, 9 (Tristar-Ticor; Northwest-Ticor). Ticor claims these letters are void for various frivolous and unsupported reasons including because the regarding line or borrower reference column is blank or has a "." or that multi-transaction letters were simply forbidden. Not only does leaving a blank regarding line appear to be an industry practice for valid multi-transaction closing protection letters, Fidelity's unproduced training materials inform its agents to leave the regarding line blank to signify that a letter is multi-transaction also known as "blanket."[2] Ex. 10 *See* Ex. 1 (showing various title insurers following the same practice of leaving blanks in the regarding line or using general information such as "closing protection letter").

Both Tristar and Northwest, the two issuing agents in *Terry*, used the same practice of leaving blanks or a "." in the regarding line for multi-transaction closing protection letters. *See* Ex. 8, 11. Ticor suggests both were rogue agents but a broader look at the practices of the hundreds of issuing agents in the MDL will confirm that this was an accepted practice by Ticor and Fidelity and the title industry. *See* Ex. 1. In other words, although Fidelity claims their training materials allowing the practice were "erroneous," broader discovery will show their

---

[1] The opposition claims that Ameriquest relies on only one multi-transaction closing protection letter. This is a gross mischaracterization of the claims and the discovery to date. The data shows that several multi-transaction closing protection letters were provided by Northwest and Tristar, despite Ticor's claims otherwise. Ticor simply withheld them from production until faced with a motion to compel. Ticor repeatedly argues that Ameriquest's assertions about multi-transaction closing protection letters are a "new theory made-up specifically for *Terry*." This is simply false. Immediately after the complaint was filed, in April 2009, Ameriquest propounded discovery seeking all multi-transaction letters for Ameriquest and all Ameriquest closing protection letters. Ticor denied having *any* multi-transaction letters and did not produce the allegedly void multi-transaction letters or the data showing they had been generated until much later – some after the January 2010 PMK depositions about multi-transaction letters.

[2] Ticor seeks a protective order to prevent any discovery into the memo or training materials incorporating the memo. Without any explanation for the training materials that directly contradict their arguments, Ticor just claims they are "erroneous." But they are still in use even today as they have been for at least three years.

4

BN 9605576v3

training materials are more believable than their defenses in this litigation. Broader discovery should confirm that a multi-transaction letter applies to multi-transactions regardless of information inserted into a regarding line. An industry expert explains that specific information in a regarding line was sometimes added to help lenders' be able to confirm that a current and valid closing protection letter exists for a particular loan and does not change the application of the letter to multi-transactions. *See* Ex. 5. Fidelity admits that specific information in the regarding line was only because lenders wanted it.

Each plaintiff in *Terry* and many of the plaintiffs in the MDL allege that they signed a Notice of Right to Cancel form but were not provided with two copies or their copy was mis-dated allowing them to void the lien under the Truth-In-Lending Act. Ameriquests's closing instructions specifically require Fidelity/Ticor's agent to appropriately date and distribute the Notice of Right to Cancel forms. Thus, the standard indemnity language of all of the closing protection letters requires indemnification. The closing protection letters indemnify for losses "arising out of" the:

> "1. Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to ... enforceability and priority of the lien..." [This language is found in all closing protection letters]
>
> 2. Negligence of the Issuing Agent or Approved Attorney in handling your ... documents in connection with such closings." [This language appears to be in all Ticor closing protection letters applicable to over 100 loans. Some other closing protection letters refer to fraud or dishonesty in addition to or instead of negligence.

Because of the commonality of the closing protection letters and underlying allegations, the 314 cases in the MDL are ripe for summary judgment just like many insurance coverage disputes. Just as Ticor claims it will move for summary judgment on commonly situated claims, Ameriquest will group the *Terry* claims into identically situated claims in one summary judgment motion. Thus, the cases are "susceptible to disposition in a single proceeding." *See*

5

L.R. 40.4(b).

### III. COMMON ISSUES FOR DISCOVERY

Ticor's assertions that there are **"no common issues for discovery"** is wholly unsupported. Industry practices as well as Fidelity and Ticor-wide practices are of utmost importance concerning Ticor's assertions that its agents did not have any actual, implied, or apparent authority to issue multi-transaction closing protection letters. Because there are only four major underwriters in the title industry with Fidelity garnering over 90% of the market, discovery in the MDL will show the title industries practices.

#### A. Many Of The MDL Claims Are Mirror Images Of The *Terry* Claims

Not only are there common issues for discovery, but the exact same discovery issues are present in both cases. Eighty-eight MDL claims involve the same issuing agents (Tristar and Northwest), Ticor, the exact same closing protection letters at issue in *Terry*, and the same blank regarding line which Ticor claims voids the multi-transaction closing protection letters.

#### B. The Remaining MDL Claims Involve The Standard Language Of The Closing Protection Letters

The indemnity language of the closing protection letters is almost universally the same, as quoted above. Ticor claims its closing protection letters varied but does not provide persuasive support. The witness relied on by the Opposition to make the assertion of differing policies and practices for differing Fidelity brands and differing states denies having any involvement with blanket closing protection letters until late 2004 or early 2005 until the single nationwide multi-transaction letter was provided. He admits he would not know if common forms or information were provided to each brand. Ex. 12 (Depo. of Ricks). Accompanying this reply are closing protection letters from Ticor, Chicago Title, American Pioneer k/n/a Ticor of Florida, and Commonwealth showing that the letters are essentially the same. Exs. 1, 2, 3, 7, 9.

6

Those entities make up over 80 percent of the Fidelity claims. Fidelity attaches closing protection letters from two companies that were not Fidelity entities at the time of the *Terry* loans. *See* p. 7 citing Ex. J and K (Landamerica companies). None of the *Terry* closing protection letters have any of the additional clauses referenced by Fidelity. The single paragraph inserted in some closing protection letters to shorten the statute of limitations is at most applicable to less than 10 percent of the 314 loans. Moreover, it is not applicable to the 305 MDL plaintiffs' claims involving Ticor, Tristar or Northwest or the 22 *Terry* claims. This nuance does not destroy the commonality of discovery into the meaning of the other terms and industry practices concerning multi-transaction letters or the commonality of issues suited for summary judgment. In sum, the minor additions are meaningless to reassignment.

### C. Common And Industry Wide Practices For Multi-Transaction Letters

The custom and practices of Fidelity's subsidiaries and issuing agents are relevant to show the industry standards for apparent, implied, and actual authority concerning the issuance of multi-transaction closing protection letters and the practices Fidelity claims are void or "would put any lender on notice" that the letter was accidentally left incomplete instead of intentionally left blank because the letter was not specific to a single transaction. Expert testimony confirms these are nationwide title industry practices. Each of the 314 claims requires discovery into the title industry practices and whether the multi-transaction letters were really prohibited and generated by rogue agents, as Ticor suggests. Or alternatively, many of the issuing agents in the MDL followed the same practice with the acquiescence of Ticor/Fidelity like at the present time. See Ex. 1. Because the title underwriters, title companies and lender all operated on a nationwide basis, their knowledge of accepted practices must be analyzed on a nationwide basis, especially since Ticor admits no one ever proactively informed agents or lenders about prohibitions on multi-transaction letters and there is nothing in writing to suggest

that anyone could have figured it out.

Similarly, discovery into the title industries' interpretations of the closing protection letters is also common. Ticor's citation to minor differences in a few of the closing protection letters in the MDL does not change that the standard language of the *Terry* closing protection letters applies to all of the 292 MDL claims – and the exact same letter applies to 88 of the MDL claims. And the reason for the modifications to the standard ALTA closing protection letter should be the subject of common discovery because it allows an exploration of the drafting history and choice of language for each of the letters.

Fidelity claims that it is irrelevant if the custom and practice of the title industry and all of Fidelity's subsidiaries was to authorize and utilize multi-transaction closing protection letters in the form it now claims is void in all states at all times other than 2004 and 2005 in Illinois and for all entities other than Ticor. It appears to be the case that the practices Fidelity/Ticor argues were disallowed in *Terry* were authorized in practically all other states at all other times since at least the early 2000's. Essentially, Fidelity/Ticor reject the notion that their credibility can be challenged by an inquiry into contradictory assertions and practices anywhere other than myopically looking at what it claims were the undocumented prohibitions for the *Terry loans*.

### D. Ticor's Red-Herring About Agentrax

Ticor attempts to pigeonhole the only discovery issue in *Terry* as about Agentrax. But Agentrax is only one of eight discovery issues addressed in the motion to compel. *See Terry* Dkt. No.731 at p. 10. For example, the motion seeks to: (1) overrule objections limiting discovery to only Illinois, only Ticor, and only involving the particular issuing agents; (2) overrule objections to having the drafter of various Ticor/Fidelity closing protection letters appear for deposition; (3) overrule objections to having Ticor identify persons with knowledge about their alleged multi-transaction policy; (4) overrule objections to documents interpreting the

8

language of the closing protection letters; and (5) overrule the objection that any overlap between the MDL and *Terry* precludes discovery in *Terry*.

Fidelity/Ticor have various websites for its agents to complete closing protection letters. Two Fidelity subsidiaries, Ticor and MDL third-party defendant Security Union shared the website that generated the Ameriquest closing protection letters produced by Ticor in *Terry*. Agentrax was copyrighted in 2004 and contemporaneously used on a nationwide basis by Fidelity and its subsidiaries at the same time of many of the loan closings in *Terry*. Northwest Title, one of the *Terry* parties, had access to, and used Agenttrax during the relevant time period.

Agentrax has been insightful because while Fidelity and Ticor witnesses have claimed that multi-transaction closing protection letters are forbidden and rare, even today, publicly available information on Agentrax shows that as of 2004, Fidelity expressly allowed multi-transaction closing protection letters to be issued by its agents at-will. The communications to issuing agents on the various websites is relevant to their understanding concerning their authority when issuing closing protection letters from Ticor/Fidelity. Further, Fidelity published a memo and a training video on a nationwide basis training its agents to issue multi-transaction closing protection letters by leaving the regarding line blank to signify that the letter is multi-transaction letter whereas Fidelity claims a blank just shows carelessness and not an intent to leave a regarding line blank. Ex. 10. Thus, the information found on the publicly available portion of Agentrax directly contradicts Ticor's testimony in this case. Fidelity will not allow any inquiry into that assertion.

To avoid discovery into Agentrax or those training materials, Ticor filed a motion for protective order seeking to preclude any discovery into the topic. It is not surprising that they do not want discovery into those topics – it confirms there was a Fidelity-wide policy *allowing*

BN 9605576v3

agents to provide multi-transaction closing protection letters. It also confirms that there is an industry practice to leave the regarding line blank or generic to signify a multi-transaction letter versus leaving it blank by accident as Ticor argues.

Fidelity/Ticor make much ado that Agentrax was only used in 20% of the loans at issue. However, the 20% usage shows that Agentrax will be the subject of discovery in the MDL. Because it is relevant to all claims, Ameriquest should have the benefit of that discovery for the *Terry* claims.

### IV. TICOR'S ASSERTIONS THAT IT WANTS DISCOVERY ABOUT CASE SPECIFIC ISSUES DOES NOT WEIGH AGAINST TRANSFER

Ticor's assertions that it wants individual discovery does not weigh against transfer. This is not a real obstacle as Ameriquest has agreed to participate in discovery with Ticor in the MDL. Judge Denlow's order allows individual discovery in the MDL as soon as mediation is over which is now for Ameriquest and most plaintiffs and in a few months for the rest. Instead of really wanting discovery, Ticor just tries to claim that discovery cannot proceed at all in the MDL to attempt to avoid inquiry into its national practices.

### V. PENDING MOTIONS ARE NOT AN OBSTACLE

The four pending motions should not prohibit transfer. Two motions to dismiss are pending but Ticor informed Judge Chang that their resolution would not make any difference to Ticor's objection to the transfer. The other two pending motions concern Ticor and Fidelity's roadblocks to discovery concerning Fidelity and Ticor's closing protection letter practices which will be resolved by reassigning the matter into the MDL with broader discovery than Ticor will now allow.

### VI. REQUIREMENTS OF L.R. 40.4(B) HAVE BEEN ESTABLISHED

The requirements of L.R. 40.4(b) have been met. In sum:

10

(1)     *"both cases are pending in this Court"* -- Ticor does not contest this issue.

(2)     *"the handling of both cases by the same judge is likely to result in a substantial savings of judicial time and effort"* -- Because the MDL and *Terry* involve the same claims and defenses, one judge should handle them instead of two. Otherwise, each judge will decide the same discovery issues and summary judgment motions.

By reassigning the *Terry* matter to the MDL which involves a broad range of closings (2003 to 2007), nationwide practices, each of Fidelity's subsidiaries, and hundreds of title companies that agreed to provide closing protection letters to Ameriquest, Ameriquest can engage in broad discovery concerning the customs and practices of the title industry regarding the usage of multi-transaction letters. Ticor is unable to substantively contest that its objections to the breadth of discovery will dissipate in the MDL.

Reassigning the *Terry* matter will also allow coordinated discovery into the interpretation of the standard language used by the closing protection letters. Each of the closing protection letters use similar or the same indemnity language. Thus, an interpretation by Fidelity or its subsidiaries may be relevant as to how Ticor should interpret the language or how the industry interprets the language. Fidelity/Ticor contend that none of the underlying plaintiffs' claims are covered by the closing protection letters. Again, Ticor is unable to substantively contest that coordinated discovery about its prior interpretations will be more efficient than separate discovery requests and court rulings in all 314 cases.

(3)     *"the earlier case [the MDL] has not progressed to the point where designating a later filed case [Terry] as related would likely delay the proceedings in the earlier case substantially"* -- Ticor does not argue that the MDL would be delayed. The claim that the *Terry* matter would be delayed is not one of the requirements. Further, reassignment will ensure that

all of the 292 cases are expedited versus litigating the cases piecemeal which will only extend the resolution of all of the cases and waste judicial resources.

(4) *"the cases are susceptible to disposition in one proceeding"* -- Like many insurance coverage disputes, this one involving the equivalent of 314 copies of the same insurance policy, summary judgment should resolve all of the coverage issues. The *Terry* matter does not involve any novel issues that cannot be resolved on summary judgment with the other 314. Although Ticor claims there are some affirmative defenses to Ameriquest prevailing on summary judgment such as a statute of limitations, it fails to show that those arguments preclude this court from disposing of the cases or that the arguments even apply to more than one *Terry* loan.

Overall, Ticor is unable to rebut that each of the elements of L.R. 40.4(b) have been met and that there is any valid reason not to transfer the 22 claims against it with the 292 pending in the MDL.

## VII. CONCLUSION

Settlement discussions between Ameriquest and Fidelity and its subsidiaries have broken down because Fidelity/Ticor claim their standard form indemnity agreement is void and unauthorized. Although the standard form closing protection letter expressly applies to all future transactions, was drafted by ALTA to apply to all future transactions, was generated by Fidelity/Ticor's agents from Fidelity/Ticor websites, and is used by Fidelity/Ticor to apply to all future transactions, they will not recognize the letters issued to Ameriquest as applying to all future transactions. Fidelity/Ticor seeks to avoid indemnifying Ameriquest for all of the 22 claims in *Terry* and 292 claims in the MDL on that basis. In order to prove that valid closing protection letters exist to alleviate the roadblock to future settlement discussions, Ameriquest requests coordination of the matters.

BN 9605576v3

DATED: August 1, 2011        BUCHALTER NEMER
A Professional Corporation

By:    /s/ Randall L. Manvitz
       RANDALL L. MANVITZ
Attorneys for Third-Party Plaintiff Ameriquest
Mortgage Company

## CERTIFICATE OF SERVICE

I, Randall Manvitz, hereby certify that on this 1st day of August 2011, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Pro Se Third Party Defendants Joan M. Pridgeon, Michael Smith and Isiah P. Ward who do not received the ECF notice will be served by mail on August 1, 2011.

/s/ Randall Manvitz

BN 9605576v3