# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) MDL No. 1715 ) ) Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO THE FOLLOWING INDIVIDUAL ACTION: | ) ) ) (Centralized before the Honorable ) Marvin E. Aspen) |
| *Terry, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 08-2475 | ) ) ) |

## TICOR TITLE INSURANCE COMPANY'S OPPOSITION TO AMERIQUEST MORTGAGE COMPANY'S MOTION FOR REASSIGNMENT

### INTRODUCTION

This is the second time this Court has been asked to reassign the *Terry v. Ameriquest Mortgage Co.* case into this MDL action. In the first motion, third-party defendant First American Title Insurance Company asserted that the *Terry* case was "related" to the opt-out cases in this MDL proceeding because both matters involved the same claims. Dkt. No. 2676. At that time, Ameriquest Mortgage Company ("Ameriquest") opposed the motion,[1] arguing that there were a number of pending motions to dismiss and, as a result, reassigning the "Terry Action while the motions are pending may result in wasted judicial resources." This Court agreed and denied the motion to reassign because First American had not "convincingly explained why a transfer into the MDL would conserve judicial resources and why the cases could be resolved in a single disposition. ... In addition, we have routinely declined to accept cases into the Ameriquest MDL where fully-briefed substantive motions are pending, as in the *Terry* case."

---

[1] Ameriquest asserts that Ticor did not oppose the earlier motion to transfer. Motion, p. 12. That is a half-truth. Ticor took no position regarding that motion, neither opposing it nor joining in it.

Two years later, Ameriquest has changed its tune and now requests this Court to reassign the *Terry* case into this MDL action. Ameriquest offers only one substantive argument to support this request – that judicial resources will be saved because discovery in both matters overlap because the parent company of both Ticor Title Insurance Company ("Ticor") and the thirteen other third-party defendants in this MDL action, Fidelity National Financial ("Fidelity"), have a common system – agentTrax – for creating closing protection letters and use a common form of closing protection letter. This argument is both factually wrong and insufficient to justify reassignment of the *Terry* case into this proceeding. The closing protection letters at issue in the *Terry* case were generated by a system created for the use of Ticor's Illinois agents that *pre-dated* agentTrax. Indeed, the question of whether Ameriquest can obtain agentTrax-related discovery in the *Terry* case is the subject of Ticor's pending motion for protective order and Ameriquest's cross-motion to compel.

Discovery regarding agentTrax is not even common among the opt-out cases already part of this MDL action. Indeed, the facts show that of the 274 loans allegedly involving Fidelity companies, 222 (81%) could not have involved the agentTrax system either because those loans were closed before agentTrax existed or because the loans involve companies that were not at that time owned by Fidelity. Further, in order to defend themselves, Ticor and the other Fidelity companies will have to engage in case specific discovery from both Ameriquest and the individual plaintiffs – none of which can be done on a coordinated basis. Quite simply, reassigning the *Terry* case will not save any judicial resources.

Ameriquest has also failed to show that the *Terry* case and the MDL action can be resolved in a single proceeding, nor can they because there are significant factual differences between the various cases. Contrary to Ameriquest's assertion, there is no "standard" closing

protection letter form at issue. Rather, there are a number of varying forms used by the companies that have different provisions relevant to the claims in these cases. In addition, a number of Ticor's and Fidelity's defenses depend on case-specific facts.

Finally, this Court should deny the motion to reassign for the very reason Ameriquest advanced two years ago – four fully-briefed, motions to dismiss are pending in the *Terry* case.

## STATEMENT OF FACTS

### A. The *Terry v. Ameriquest* case

The claims for indemnification, contribution, and declaratory judgment brought against Ticor by Ameriquest in the *Terry* case arise out of the claims asserted against Ameriquest by twenty-two of the plaintiffs in connection with their fifteen mortgage loans.[2] These plaintiffs allege that Ameriquest violated the Illinois Consumer Fraud Act by misrepresenting to them the terms of their mortgage loans and violated the Truth-in-Lending Act ("TILA") by not complying with TILA's disclosure requirements, including using the wrong form for the Notice of Right to Cancel ("NORTC"), not listing all the property owners on the NORTC, and not giving them two completed copies of the NORTC.

Ameriquest in turn asserted third-party claims against those who allegedly were involved in the plaintiffs' loans, including: (i) the individuals who allegedly acted as both notary publics and settlement service providers, such as Isiah Ward, Joan Pridgeon, and Jackie Vasquez; (ii) the title insurance issuing agents that allegedly conducted the closings of these loans, including Tristar Title LLC ("Tristar") and Northwest Title & Escrow Corporation ("Northwest Title"); and (iii) the title insurance underwriters that issued title insurance policies to Ameriquest, including Ticor. Ameriquest does not allege that Ticor had any involvement in setting the terms

---

[2] Ameriquest's statement that the *Terry* case involves "22 claims" is incorrect. Motion, p. 1. Rather, those claims only involve 15 mortgage loans made to 22 of the plaintiffs.

3

of the plaintiffs' loans, communicating those terms to the plaintiffs, or in closing the plaintiffs' loans.

The sole basis of Ameriquest's claims against Ticor is its allegation that Ticor, through its issuing agents Tristar and Northwest Title, issued closing protection letters to Ameriquest under which Ticor agreed to reimburse Ameriquest for certain damages actually paid arising from a loss of priority, enforceability, or validity of Ameriquest's mortgage lien due to the issuing agent's failure to follow Ameriquest's written closing instructions. Specifically, Ameriquest alleges that on October 18, 2005, Ticor issued a closing protection letter that applied to all closings conducted thereafter by Tristar (a "blanket" letter) and that Ticor issued separate loan specific closing protection letters in connection with each of the plaintiffs' loans. *Terry* Third Party Complaint, ¶¶ 19, 20 (Exhibit A). Ameriquest produced a copy of the October 18, 2005 letter, but it has not produced copies of any of the other alleged closing protection letters. Indeed, neither Ameriquest's loan files, nor Tristar's and Northwest Title's closing files, contain copies of any closing protection letters.

The parties have already engaged in extensive discovery to determine whether Tristar and Northwest Title issued to Ameriquest loan-specific closing protection letters in connection with each of the loans at issue and whether the October 18, 2005 letter is a blanket letter. During the time these fifteen loans were made – April 2005 to March 2006 – Ticor provided its Illinois issuing agents, such as Tristar and Northwest Title, with access to a web-based system created by Ticor that permitted them to create and print out closing protection letters. The alleged October 18, 2005 closing protection letter was generated by this system. D. Scott 30(b)(6) Dep., pp. 207-208 (Exhibit B). Ticor has already produced to Ameriquest the data showing all 7,504 closing protection letters created by Tristar, and all 1,019 closing protection letters created by Northwest

4

Title, through this web site. These data show that none of the closing protection letters created by either Tristar or Northwest Title through Ticor's web system are applicable to, or were created in connection with, any of the plaintiffs' loans. *Id.*, pp. 218-20.

The testimony in the *Terry* case also shows that the October 18, 2005 closing protection letter is not a blanket letter but rather is a loan specific letter that was not properly prepared by Tristar. Instead of inputting the complete borrower reference or file number into that letter, Tristar merely typed a "." into the "Borrower Reference/File No.:" field and printed out that letter. Ticor's policy and practice in Illinois at that time was that closing protection letters created using this web site were only to be loan specific letters, and that any requests for the issuance of blanket letters had to be directed to, and approved by, corporate underwriting counsel. *Id.*, pp. 89-90, 181, 216, 231, 287-88, 467-68; M. Hardecopf Dep., pp. 56-57, 63, 106 (Exhibit C). Ticor did not issue any blanket letters to Ameriquest. D. Scott Dep., p. 167 (Exhibit D). In light of this evidence, the October 18, 2005 letter is simply a loan specific letter that applies to a single loan closed by Tristar on that day.

In light of the evidence refuting Ameriquest's allegations, Ameriquest asserted a new theory, apparently made up specifically for the *Terry* lawsuit, that *all* incomplete closing protection letters created by either Tristar or Northwest Title using Ticor's Illinois web system are "blanket" letters. In order to support this new theory, Ameriquest demanded extensive discovery from both Fidelity, Ticor's parent company, and Fidelity's other title insurance companies, regarding their practices relating to the issuance of blanket closing protection letters. Exhibits D, F. Specifically, Ameriquest seeks both documents and testimony regarding Fidelity's agentTrax system—the corporate-wide tool currently used to create closing protection letters. Ticor has objected to this discovery on the grounds of relevance and burden, in part

because neither Tristar nor Northwest Title created any closing protection letters for Ameriquest using the agentTrax system. Exhibit B, pp. 466-67. Thus, Ticor filed a motion for protective order to prevent discovery into these irrelevant topics, and that motion, along with Ameriquest's cross-motion to compel, is currently pending.

### B. The Claims against the Fidelity Companies in the *Ameriquest* MDL Action

In its Fifth-Amended Third Party Complaint, Ameriquest asserts a breach of contract claim[3] against each of the fourteen title insurance companies currently owned by Fidelity.[4] Ameriquest generally alleges that each of these companies issued closing protection letters "whereby the Title Underwriters agreed to reimburse the lenders for actual loss incurred by the lenders with the closings conducted by the Closing Agents and/or Title Companies …" Fifth Amended Third Party Complaint, ¶ 11. Ameriquest currently seeks indemnification from the Fidelity companies in connection with 205 opt-out cases involving 274 mortgage loans.[5]

Ameriquest argues that discovery amongst the various Fidelity companies in this MDL action can be coordinated with the discovery in the *Terry* action because under Fidelity's agentTrax, all of the Fidelity companies used a "standard form" closing protection letter and that Fidelity's standard practices for creating blanket letters, and its interpretation of those letters, will show that the defenses raised by Ticor in the *Terry* case were simply "made-up for purposes

---

[3] This Court dismissed Ameriquest's negligence claims and deferred the ruling on the motion to dismiss the negligent misrepresentation claim. Dkt. No. 3311, pp. 10-11, 14.

[4] These third-party defendants are: Alamo Title Insurance Company, American Pioneer Title Insurance Company, Chicago Title Company, Chicago Title Insurance Company, Chicago Title Insurance Company of Michigan, Commonwealth Land Title Company, Commonwealth Land Title Insurance Company, Fidelity National Title Company, Fidelity National Title Insurance Company, Fidelity National Title Insurance Company of New York, Lawyers Title Insurance Company, Security Union Title Insurance Company, Ticor Title Insurance Company, and Transnation Title Insurance Company.

[5] Ameriquest asserts that its third-party complaint encompasses 292 claims against Fidelity. Motion, p. 1. No explanation is given as to how Ameriquest arrived at that figure, but it is likely it includes proposed amendments to the Fifth-Amended Third-Party Complaint which this Court did not permit (Dkt. No. 3831) and actions lawsuits that are not included in either the Fifth-Amended Third-Party Complaint or the proposed Errata. Attached as Exhibit G is a complete list of all the cases included in the Fifth Amended Third-Party Complaint, with the deletions permitted by this Court, that allegedly involve the Fidelity companies.

of denying the claim." Motion, p. 3. This argument does not withstand scrutiny. First, as discussed above, neither Tristar nor Northwest Title used the agentTrax system to create any of the closing protection letters at issue in the *Terry* case. Rather, they used a Ticor-specific system that pre-dated agentTrax. It should not be surprising that there are different policies and practices regarding the issuance of blanket letters under different systems used by different companies at different times. Further, discovery regarding agentTrax is not even common among the cases already part of the MDL action because it was not used in connection with 222 of the 274 loans (81%) at issue. Therefore, agentTrax discovery is far from common across any significant portion of these loans.

Prior to February 2005, Fidelity had no corporate-wide system for creating closing protection letters. Instead, each of Fidelity's companies created their own systems for creating closing protection letters, and those systems differed not only between companies, but also within a company by location. A. Ricks Dep., pp. 88-89 (Exhibit H). Prior to agentTrax, there were no Fidelity-wide procedures with regard to closing protection letters nor was there a "standard" form of closing protection letter used by all the Fidelity companies. Rather, closing protection letter form was determined by the local operations and local underwriting counsel, not by Fidelity itself. *Id.* p. 170-71. The terms of these letters varied by both company and time. For example, the closing protection letter forms used by some of the Fidelity companies contain language expressly excluding liability for TILA-related damages. Exhibit I. Other forms impose time limits on Ameriquest to assert claims under those letters – some limit the time to one-year from the date of the closing of the loan (Exhibit J), others limit the time to 90 days from the discovery of the loss (Exhibit K). Others, such as the form used by Ticor in the *Terry* case,

7

provide that claims "shall be made promptly" and the failure to do so will reduce the issuer's liability "to the extent of such prejudice." Motion, Ex. 2, p. 2.

Starting in February 2005, Fidelity created agentTrax in part to move towards the use of a uniform closing protection letter form and a company-wide system to track those letters. Exhibit B, p. 384; Exhibit H, pp. 89-90. Under agentTrax, absent state-specific regulatory requirements, there is one form of closing protection letter used nationwide for both loan specific and blanket letters. In order for that form to be considered a loan specific letter, "you put in transaction specific information like the name and address of the borrower and the loan number and so forth" and to create a blanket letter "you put in a generic designation like all transactions ..." Exhibit H, pp. 22-23.

Although Fidelity's agentTrax system ultimately created a uniform practice regarding closing protection letters across the various Fidelity companies, that system was not used to create the alleged closing protection letters applicable to at least 222 of the 274 loans at issue in this action. AgentTrax could not have been used before it was created in February 2005. However, 176 of the 274 loans at issue in this MDL proceeding were closed *before* February 1, 2005 and thus predate agentTrax's existence. Exhibit L. In addition, the use of agentTrax was limited to Fidelity-owned companies. Prior to December 2008, Lawyers Title Insurance Company, Commonwealth Land Title Company, Commonwealth Land Title Insurance Company, and Transnation Title Insurance Company (collectively "LandAmerica Underwriters") were not owned by Fidelity but instead were wholly-owned subsidiaries of LandAmerica Financial Group, Inc. Exhibit M. As a result, closing protection letters issued by the LandAmerica Underwriters in connection with the 46 additional loans closed after February 2005 allegedly involving them could not have been created using agentTrax. Exhibit N.

## ARGUMENT

As this Court stated when it denied the earlier request to transfer the *Terry* case, the party seeking reassignment under Local Rule 40.4 is obligated to "specifically identify why *each* of the four conditions for reassignment under LR 40.4(b)" are met. Exhibit T (emphasis added). This rule states that a case can be reassigned only if: (i) both cases are pending in this Court; (ii) reassignment will likely result in a "substantial saving of judicial time and effort"; (iii) the earlier case has not progressed to the point that reassignment will cause substantial delay; and (iv) the "cases are susceptible of disposition in a single proceeding."

Although Ameriquest asserts that "all of the conditions for reassignment under Local Rule 40.4(b) have been met," Motion, p. 4, its motion fails to support that claim. Ameriquest's motion is devoted solely to the argument that reassignment of the *Terry* case would promote judicial economy. *Id.*, pp. 10-14. Ameriquest's failure to meet its burden of showing that all the requirements of Rule 40.4(b)(4) are satisfied is itself a sufficient basis for denying the motion. This Court should also deny Ameriquest's motion because transferring the *Terry* case will not result in any savings of judicial time or effort, and because there are a number of substantive motions pending in the *Terry* action.

## I. REASSIGNMENT OF THE *TERRY* CASE WOULD NOT RESULT IN A SUBSTANTIAL SAVINGS OF JUDICIAL TIME OR EFFORT.

Focusing only on the second condition of Local Rule 40.4(b), Ameriquest devotes its entire brief to arguing that reassignment of the *Terry* case would promote judicial economy. The principal thrust of this argument is that "Ameriquest seeks discovery [in the *Terry* case] concerning Ticor/Fidelity's practices concerning multi-transaction closing protection letters," and that because discovery "will be the same for the 22 closing protection letters in the [*Terry*

9

case] as the 292 pending in the MDL," reassignment is appropriate. Motion, pp. 10-11. Ameriquest's argument is wrong for several reasons.

First, this Court has issued two orders that currently preclude the discovery sought by Ameriquest. On July 23, 2009, Magistrate Judge Denlow ordered that the third-party defendants need only produce to Ameriquest "the particular loan file(s) at issue" and any agreements with third-party plaintiffs that governed the closing of the loan or loans at issue, and stayed all further discovery until the parties conducted a Rule 26(f) conference. Exhibit O, ¶ 3. Thereafter, Magistrate Judge Denlow issued the December 14, 2009 Joint Discovery Plan and Scheduling Order, which provided that "No other discovery shall be conducted in this MDL proceeding with respect to Plaintiffs' opt-out claims and the corresponding Third-Party claims until the completion of the mediation" of the plaintiffs' claim against Ameriquest. Exhibit P, ¶1(d). Ameriquest has reported that the mediations between it and the opt-out plaintiffs are scheduled to continue through at least September 14, 2011, (Dkt. No. 4261, ¶3), and thus no discovery sought by Ameriquest can take place until after that time.

Even if this Court were to permit discovery to move forward, there is no common discovery between the *Terry* case and the opt-out cases in the MDL action. The discovery that Ameriquest contends "will be the same" relates to agentTrax. However, discovery regarding agentTrax is not relevant in the *Terry* case because it was not used by either Tristar nor Northwest Title to create Ticor closing protection letters. Discovery regarding agentTrax is also not relevant for at least 222 of the 274 (81%) loans at issue in the MDL action because those loans either predate agentTrax or involve the LandAmerica Underwriters prior to the time they were acquired by Fidelity. Thus, even amongst the loans already in the MDL, there is no common discovery regarding closing protection letters. Rather, closing protection letter-related

discovery will vary by both third-party defendant and by the states in which each third-party defendant operated. Adding the *Terry* discovery to the mix will *not* provide any savings of judicial effort and time.

Ameriquest's "judicial economy" argument incorrectly assumes that the only discovery needed in the *Terry* and MDL action will be the "interpretation of the indemnity language of the closing protection letters." Motion, p. 10. This is simply wrong. Ticor and the other Fidelity entities will need to take discovery from Ameriquest and the plaintiffs in each of the opt-out cases in order to defend itself against Ameriquest's claims. For example, none of the alleged closing protection letters provide Ameriquest indemnification for its own acts or omissions and thus Fidelity will need to conduct discovery in each opt-out case to determine if it was *Ameriquest*, rather than the issuing agent, who committed the acts complained of by the plaintiffs. For example, in the *Terry* case, Ameriquest alleges that it was Tristar and Northwest Title that failed to properly complete and deliver the NORTC form. However, when deposed, plaintiffs Michael and Susan Cox testified that their loan was actually closed by Ameriquest, and thus it was Ameriquest's conduct that caused the alleged defects with the NORTC form. M. Cox Dep., pp. 61-63; S. Cox. Dep., pp. 103-105 (Exhibits Q, R). Likewise, Ticor will need to conduct discovery to determine if the alleged misconduct even took place. For example, in the *Terry* case, one of the plaintiffs alleged that he did not receive two copies of the NORTC form. However, at his deposition, he testified that he actually receive the required number of copies. S. Quire Dep., p. 26 (Exhibit S). Fidelity will need to take similar discovery in all of the opt-out cases in order to determine which factual defenses it can raise in each case.

If this Court permits Ameriquest to conduct unfettered discovery regarding the Fidelity companies' issuance of closing protection letters, then fairness requires this Court to also permit

11

the Fidelity companies to conduct the discovery they need in order to defend themselves against Ameriquest's claims. However, neither side's discovery will be "common" to both the *Terry* case and the loans in this proceeding. Rather, all this discovery will be specific to each of the fourteen third-party defendants and to the plaintiffs in each of the 222 cases.

## II. THE *TERRY* CASE IS NOT SUSCEPTIBLE OF DISPOSITION IN THE SAME PROCEEDING WITH ALL THE LOANS AT ISSUE IN THE MDL ACTION.

Conspicuously absent from Ameriquest's motion is any reference to Local Rule 40.4(b)(4), which requires that "the cases are susceptible of disposition in a single proceeding" before they can be reassigned. The reason for this omission is simple – numerous case-specific issues prevent the *Terry* case and the MDL action from being disposed of in a single proceeding.

One such case-specific difference is that the terms of the closing protection letters at issue in the MDL action are different from those in the *Terry* case. As discussed above, a number of the closing protection letters in the MDL action contain express language excluding coverage of TILA damages. When permitted, Fidelity will seek summary judgment in those cases based on that exclusion. However, that language is not in the closing protection letters at issue in the *Terry* case.[6] Likewise, a few states such as New York prohibit the issuance of closing protection letters and thus Fidelity will later move for summary judgment in those cases on that ground. That defense is not available to Ticor in the *Terry* case. Further, Fidelity will seek summary judgment in those cases where Ameriquest did not assert the claims under the closing protection letter within the explicit time limits. However, the alleged closing protection letters at issue in *Terry* do not contain similar language.

---

[6] Ticor denies that it is liable to Ameriquest in the *Terry* action for any TILA-related damages. Although the alleged closing protection letters in that case do not contain the specific clause present in other letters, Ticor has other defenses available to it arising from facts specific to each plaintiff.

12

Other case-specific differences precluding resolution of these actions in one proceeding arise from the varying allegations made by the plaintiffs and the actual facts learned through discovery. As shown above, in some cases the plaintiffs do not allege that any of Fidelity's issuing agents engaged in misconduct, and in other cases, the facts obtained through discovery will show that allegations of issuing agent misconduct are baseless. Fidelity will raise both arguments, but can only do so on a case-by-case basis. These defenses cannot all be raised in a single proceeding, and therefore reassignment of the *Terry* case to this action is not proper.

### III. THIS COURT SHOULD DENY THE MOTION BECAUSE FULLY-BRIEFED, SUBSTANTIVE MOTIONS ARE PENDING IN THE *TERRY* ACTION.

One of the grounds this Court relied upon in denying the prior motion to reassign the *Terry* case was that this Court "routinely declined to accept cases into the Ameriquest MDL where fully-briefed substantive motions are pending, as in the *Terry* case." Exhibit T, p. 2. That basis is equally valid today as there are a several substantive motions pending in the *Terry* case.

There are four fully-briefed motions to dismiss pending in the *Terry* case. In addition to Ticor's motion to dismiss Counts IV and VIII, third-party defendants Isiah Ward, Joan Pridgeon, and Jackie Vasquez all moved to dismiss Ameriquest's claims. Exhibit U. All four motions are awaiting ruling. Ameriquest relied on the presence of pending motions to dismiss when it opposed the earlier motion to reassign the *Terry* case. *See* Exhibit V, p. 3 ("Reassigning the *Terry* Action while the motions are pending may result in wasted judicial resources.") Ameriquest's about-face is apparently an argument it made up specifically for this lawsuit so that it get around the discovery limitations in the *Terry* case. In addition to these motions, two substantive discovery motions are pending in the *Terry* case and will have to be decided by this

13

Court if it grants the motion to reassign.[7] Thus, consistent with this Court's prior ruling on this very same motion, Ameriquest's motion for reassignment should be denied.

## IV. REASSIGNMENT OF THE *TERRY* CASE AT THIS LATE STAGE OF THE MDL ACTION WOULD ADVANCE NEITHER *TERRY* NOR THE MDL.

The Ameriquest MDL action commenced in 2005. Since then, significant progress has been made in this proceeding. For example, this Court has coordinated common discovery among the MDL parties, resolved common, non-state specific issues, and orchestrated settlement proceedings which have led to the resolution of many claims. Unfortunately, Ameriquest's claims against Ticor and Fidelity are not among those resolved, and are unlikely to be resolved given Ameriquest's prior settlement demands. Ameriquest admits as much in its Motion for Reassignment. Motion, p. 8 ("But Ameriquest has already explained that it considers mediation proceedings with Ticor/Fidelity to have been completed . . . .").

In light of the significant achievements this Court has obtained in resolving the common issues in the opt-out cases, it is unclear how much longer the MDL action will continue given that the global settlement efforts appear to be coming to an end, and the case- and state-specific issues appear to be the last remaining matters to resolve. This Court has already indicated that it will not decide specific state-law or case-specific factual issues in this MDL action. *See* Dkt. Nos. 3311, p. 14 ("We are in no position to determine the legal duties of Third-Party Defendants, who held varying roles in thousands of transactions, or to evaluate the common law of more than twenty states . . . . Accordingly, we leave this question for another day (and potentially the transferor court) . . . ."); 2553, p. 1 ("We will not be resolving unique factual disputes; summary judgment motions raising factual issues are not permitted and must be filed only before the transferor court, if and when remand occurs.") Accordingly, it would not appear to be a

---

[7] These discovery motions will be fully briefed by August 9, 2011.

judicious use of this Court's resources for the *Terry* case to be transferred to the MDL at this late juncture, given that the *Terry* case may be sent back to the transferor Court soon.

Indeed, if the *Terry* case is transferred to this Court, this Court would have to decide (a) the various motions to dismiss, (b) Ticor's motion for protective order, (c) Ameriquest's motion to compel, and (d) the various motions for summary judgment that Ticor and the other Fidelity companies will want to pursue. Further, Ticor and the Fidelity companies will be required to conduct case-specific discovery in the MDL action relating to *each* of the individual Plaintiff's claims against Ameriquest, as well as regarding the Fidelity company's varying policies and practices for issuing closing protection letters nationwide. It is exactly this type of individualized discovery that should be dealt with by each of the transferor Courts *after* the cases are sent back by this Court following conclusion of the MDL action. Accordingly, Ameriquest's Motion for Reassignment of the *Terry* case to the MDL should be denied.

## CONCLUSION

For the forgoing reasons, third-party defendant Ticor Title Insurance Company requests this Court to deny Ameriquest Mortgage Company's motion to reassign the *Terry* case into this proceeding.

TICOR TITLE INSURANCE COMPANY

By: /s/ Albert E. Fowerbaugh, Jr.
One of Its Attorneys

Albert E. Fowerbaugh, Jr.
Kevin J. Mueller
Thomas G. Ward
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, Illinois 60603
Phone: (312) 696-4440
Fax: (312) 896-9174