# EXHIBIT G

```
 1   TRANSCRIBED FROM DIGITAL RECORDING

 2                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 3                         EASTERN DIVISION

 4   IN RE AMERIQUEST MORTGAGE CO.        )   No. 05 C 7097
     MORTGAGE LENDING PRACTICES LITIGATION,)
 5                                         )   Chicago, Illinois
                                           )   September 20, 2012
 6   _____)   9:49 A.M.

 7              TRANSCRIPT OF PROCEEDINGS - Motion
        BEFORE THE HONORABLE MORTON DENLOW, Magistrate Judge
 8
     APPEARANCES:
 9
     For Third-Party Plaintiff  BUCHALTER NEMER
10   Ameriquest:                55 Second Street
                                Suite 1700
11                              San Francisco, California  94105
                                BY:  MR. RANDALL L. MANVITZ
12
     For Third-Party Defendant  BUTLER, RUBIN, SALTARELLI & BOYD LLP
13   Ticor:                     70 West Madison Street
                                Suite 1800
14                              Chicago, Illinois  60602
                                BY:  MR. ALBERT EDWIN FOWERBAUGH, JR.
15                                   MR. JAMES E. SOJOODI

16
                     PAMELA S. WARREN, CSR, RPR
17                      Official Court Reporter
                      219 South Dearborn Street
18                           Room 1928
                      Chicago, Illinois  60604
19                        (312) 294-8907

20   NOTE:  Please notify of correct speaker identification.
     FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS
21   UNINTELLIGIBLE.

22

23

24

25
```

```
 1         (Proceedings held in open court:)
 2              THE CLERK:  05 C 7097, In Re Ameriquest.
 3              THE COURT:  Good morning.  Please step forward.
 4    Please state your full names and spell your last names for the
 5    record.
 6              MR. MANVITZ:  Good morning, your Honor.  Raymond
 7    Manvitz for Ameriquest Mortgage Company.  M-a-n-v-i-t-z.
 8              MR. FOWERBAUGH:  Good morning, your Honor.  Albert
 9    Fowerbaugh, F-o-w-e-r-b-a-u-g-h, on behalf of the Fidelity
10    movants.
11              Also with me is my colleague Jim Sojoodi,
12    S-o-j-o-o-d-i.
13              THE COURT:  Okay.  So let me tell you where I see
14    things, and then you can take it from there.  When I had a
15    status the other day -- and you were not here, Mr. Fowerbaugh.
16              MR. FOWERBAUGH:  No.  I was unaware of that status.
17              THE COURT:  Yes.  There was a status on the pending
18    settlements.  Ms. Davies said, Judge, our mediation efforts are
19    over with as it relates to some of the third-party defendants,
20    and there has been a dispute as to whether in light of that
21    we can proceed with the discovery.
22              And I said, yeah, I agree that those discussions are
23    over.  And to the extent I stayed things, you know, there is no
24    reason for that stay to be in effect.
25              What I did not intend to do was to alter the landscape
```

1  in terms of the way things existed prior to the stay. In other
2  words, whatever the ground rules were that were in place at the
3  time things were stayed, I intended to go back to those ground
4  rules and nothing more.
5              I don't know whether that --
6              MR. FOWERBAUGH: Well, your Honor --
7              THE COURT: -- clarifies things or confuses things.
8              MR. FOWERBAUGH: Well, frankly, I'm not certain, but
9  I'm sure we can come to the clarification --
10             THE COURT: Yeah.
11             MR. FOWERBAUGH: -- point soon.
12             As part of the joint discovery plan proposed and
13 agreed to by all parties and signed by your Honor, I believe,
14 in December of 2009 --
15             THE COURT: Right.
16             MR. FOWERBAUGH: -- the scope of permitted discovery
17 vis-a-vis the third-party claims -- and this is as to all
18 third-party defendants, and this is just not a Fidelity-
19 specific issue.
20             THE COURT: Right, right. And that's why I am saying,
21 you know, I didn't intend to alter -- I didn't intend to alter
22 the landscape or vacate any of those earlier orders.
23             MR. FOWERBAUGH: Those -- those orders said
24 that -- and you have them, and I don't know if you got our
25 response yesterday.

1  THE COURT: I did receive your response, but, you
2  know, I didn't go into all the nitty-gritty attachments
3  (unintelligible).
4  MR. FOWERBAUGH: Well, there are -- some of the nitty-
5  gritty of the attachments are rather significant to these
6  issues.
7  THE COURT: Okay.
8  MR. FOWERBAUGH: Permitted discovery, the -- it
9  required the third-party defendants to produce, I am
10 paraphrasing, essentially the loan files and any agreements
11 that governed the closing of the loans. That language is
12 actually set forth in a July 2009 order which was entered and
13 agreed to by all the parties, signed by your Honor, and that
14 order governed while the parties conducted the Rule 26(f)
15 conference. The later joint discovery plan was entered as a
16 result of that joint discovery -- of that discovery
17 conference. And that later order incorporates the July order
18 as to the timing and scope of third-party discovery.
19 THE COURT: Uh-huh.
20 MR. FOWERBAUGH: So the landscape as of the entry of
21 the joint discovery plan by your Honor in December of 2009 was
22 that third-party defendants were required to produce loan files
23 and any agreements governing the closing of the loans at issue
24 in the fifth -- in the applicable third-party complaint, which
25 I believe at that time was the fifth amended third-party

```
 1   complaint because --
 2           THE COURT:  Yeah.
 3           MR. FOWERBAUGH:  That's fine.  We have no dispute with
 4   that.  And in fact, as we mentioned in our response, we
 5   produced, since the entry of that order, at least 13,000 pages
 6   of documents regarding the --
 7           THE COURT:  Okay.
 8           MR. FOWERBAUGH:  -- within that scope.  And our
 9   objections to the current discovery requests do not object to
10   producing those documents.
11           THE COURT:  Okay.  So let me turn to Mr. Manvitz for a
12   second and see whether he interpreted my action of the other
13   day as going beyond what I have just described I intended to
14   do.
15           MR. MANVITZ:  No, I understood that you were
16   continuing the status quo.
17           We have a disagreement about what the status quo is.
18   If you look at joint discovery plan --
19           THE COURT:  Okay.
20           MR. MANVITZ:  -- Docket 3268, it says -- it talks
21   about --
22           THE COURT:  Here, if you can refer to one of the
23   exhibits, it would be easier for me to look at than -- I have
24   both of your filings.
25           Here, I got it.  I think it is Exhibit 3 to
```

```
1   Mr. Fowerbaugh's.  Is that it, joint discovery plan and
2   scheduling order?
3           MR. MANVITZ:  Yes.
4           MR. FOWERBAUGH:  It is Exhibit 3 to my response, yes,
5   your Honor.
6           THE COURT:  Okay.  So --
7           MR. MANVITZ:  At page --
8           THE COURT:  Where is the disagreement?  Where is the
9   disagreement?
10          MR. MANVITZ:  At page 4 of 7 of that exhibit, it is --
11          THE COURT:  You know, when you printed it out, I think
12  it printed out differently.
13          MR. FOWERBAUGH:  6.
14          MR. MANVITZ:  If I may, I'll show my --
15          THE COURT:  Well, give me a -- well, just tell me what
16  paragraph.
17          MR. FOWERBAUGH:  These were -- I think paragraph 1D.
18          THE COURT:  1D, okay.  I can find it.  I can find it.
19          The exchange described in Sections B and C above and
20  in this Court's July 23, 2009, order, shall satisfy each
21  parties's obligations under Federal Rule of Civil Procedure
22  26(a).  No other discovery shall be conducted in this MDL
23  proceeding with respect to plaintiffs's opt-out claims and the
24  corresponding third-party claims until the completion of
25  mediation proceedings as set forth in Section 2 below.
```

1   MR. MANVITZ: Right.

2   THE COURT: Okay.

3   MR. MANVITZ: And I believe that's -- well, from our
4   perspective, at least with respect to Fidelity, mediation is
5   over. It has long been over --

6   THE COURT: Yeah.

7   MR. MANVITZ: -- and --

8   MR. FOWERBAUGH: Well, your Honor, first of all, the
9   mediation reference in Section 2 is not mediation as to the
10  third-party defendants, it is the mediation as to the opt-out
11  claims, in effect opt-out plaintiffs's claims.

12  If you actually look at section, paragraph 2, it talks
13  about the -- the parties shall participate in mediation
14  designed to devise a procedure for settling out opt-out
15  plaintiffs's claims in a systematic way.

16  There is a reason why the parties structured discovery
17  so that the -- there would be no further third-party discovery
18  while the -- all the mediations, including those as to the
19  plaintiffs, were going forward.

20  THE COURT: Okay.

21  MR. FOWERBAUGH: And there is no doubt --

22  THE COURT: Okay. Here's what -- what I'm going to
23  suggest.

24  MR. FOWERBAUGH: -- that mediations are still going
25  forward.

1     THE COURT: Here's what I am going to suggest. One --
2  you know, one of the issues that you raise, Mr. Fowerbaugh, was
3  you don't feel that there was a Rule 37 conference. Is that
4  correct?
5     MR. FOWERBAUGH: There was not.
6     THE COURT: Okay.
7     MR. MANVITZ: May I --
8     THE COURT: Okay. So I'm going to be sure that there
9  is one because I'm going to send you back to the conference
10 room to have your conference right now and come back at the end
11 of my call because I don't want that to be an impediment.
12    MR. FOWERBAUGH: Your Honor, I'm happy to do that, but
13 let me tell you right now we're not going to be able to
14 complete those discussions because my partner, Andy Shapiro,
15 who is -- if you look at my letter conveying our discovery
16 responses, we both -- he is going to have to deal with
17 responding to these discovery issues because I'm tied up in
18 depositions out of state all next month. He could not be here
19 today because, one, we didn't expect to hear -- be in here on a
20 date you normally did not hear motions.
21    THE COURT: Right.
22    MR. FOWERBAUGH: We were unaware this was being --
23 coming. He is in Cook County right now on dispositive
24 motions. He's -- so he can't -- he has to be part of those
25 discussions.

```
 1              THE COURT:  A part of which discussions?  I mean --
 2              MR. FOWERBAUGH:  30 -- Rule 37 discussions.
 3              THE COURT:  Well --
 4              MR. FOWERBAUGH:  Because he's going to be following up
 5    on all these matters.
 6              THE COURT:  Well, you have got a sharp lawyer standing
 7    next to you.  I mean, he's there for a reason, right?
 8              MR. FOWERBAUGH:  Well, he's here to make sure I don't
 9    screw up.
10              THE COURT:  Okay.  Well, you know, if you can't handle
11    it, he looks like he can handle it.  I mean, I want you to have
12    some discussions -- I mean, Mr. Manvitz flew in from
13    California, right?
14              MR. MANVITZ:  Correct.
15              THE COURT:  Okay.
16              MR. FOWERBAUGH:  I didn't see an excuse for flying in
17    under the -- under Rule 37 or the standing rules.
18              THE COURT:  Okay.
19              MR. MANVITZ:  If I can briefly address the Rule 37
20    issues --
21              THE COURT:  Yeah.
22              MR. MANVITZ:  -- because Mr. Fowerbaugh makes a
23    significant issue of it in his opposition.
24              On August 31 we filed a status conference statement.
25    We asked Mr. Fowerbaugh, will you meet and confer?  Will you
```

```
 1  pick up the phone immediately to talk about your objection that
 2  discovery is stayed?  He didn't do it.
 3          We continued.  I would say I even pestered
 4  Mr. Fowerbaugh repeatedly.  Eight emails.  I called him.  He
 5  didn't return my calls.
 6          Mr. Fowerbaugh --
 7          THE COURT:  You know --
 8          MR. MANVITZ:  -- this needs to be addressed --
 9          THE COURT:  You know --
10          MR. FOWERBAUGH:  Because my response is --
11          THE COURT:  Gentlemen, gentlemen, you are making
12  retirement look really good.
13          MR. FOWERBAUGH:  Well, that's --
14          THE COURT:  You're making retirement look really good.
15          MR. FOWERBAUGH:  -- I -- you know, mazel tov.
16          THE COURT:  Okay.  I'm going to suggest that you go
17  out there and talk a few minutes.  I'm going to bring you back
18  here at the end of the call and tell me what, if anything, you
19  could agree on.  Is the sun shining?  Okay.
20          MR. FOWERBAUGH:  Where?
21          THE COURT:  So you go out and talk.  You go out and
22  talk.  I'm going to bring you back at the end of the call.
23          MR. FOWERBAUGH:  Okay.
24          THE COURT:  And see what, if any, progress you can
25  make.
```

```
 1          (Whereupon the Court turned his attention to other matters
 2   on his call.)
 3          THE CLERK:  05 C 7097, In Re Ameriquest.
 4          THE COURT:  Okay.  So I'm glad you were able to work
 5   everything out.  It is just -- it is wonderful when, you know,
 6   real professionals have a chance to spend a few minutes with
 7   each other, how they are able to resolve all these things.
 8          So, Mr. Manvitz, let me hear from you first, and then
 9   I'll hear from Mr. Fowerbaugh.
10          MR. MANVITZ:  We did have a very productive
11   conference.  We were able to resolve a significant number of
12   issues.  There are issues raised in the brief about who the
13   appropriate -- what the appropriate claims are that are the
14   subject of discovery.  And there is a significant part of the
15   opposition that's geared towards that, and we were able to
16   resolve all those.  Let's see if I can put it on record if --
17          THE COURT:  Go ahead.
18          MR. MANVITZ:  -- that's appropriate.
19          We agree that the proper scope of the discovery with
20   respect to the claims are the claims that were -- that Judge
21   Aspen said were appropriate.  And so the -- I think there
22   is -- there's essentially 37 claims that were raised in the
23   opposition brief as being inappropriate.  We agree on, I think,
24   30 of those.  The parties are going to meet and confer about
25   the ones in between.
```

Case: 1:05-cv-07097 Document #: 5123-7 Filed: 10/17/12 Page 13 of 19 PageID #:49590

12


```
 1            THE COURT:  The other seven.
 2            MR. MANVITZ:  But I think we'll be able to work those
 3  out.
 4            We agree that if Ameriquest is not a party to a claim,
 5  that that claim should not be part of the discovery.  We don't
 6  think that they are in there, but, okay, we'll work that out.
 7            I think --
 8            MR. FOWERBAUGH:  That would be --
 9            MR. MANVITZ:  -- that covers it.
10            MR. FOWERBAUGH:  Yeah, that's -- that's the -- one of
11  the scope arguments we raise in our -- in the objections.  And
12  that would relate not only to the listing, the Exhibit A to the
13  document request, which lists the specific loans, but both
14  discovery requests include a defined chart that lists various
15  parties and states.  And if one looks at the population,
16  reduced population of loans, and that affects -- you know, if
17  it turns out that once you exclude these 30 to 37 loans, say
18  Lawyers Title no longer has any loans in the state of, say,
19  Rhode Island, then that chart would have to be amended
20  appropriately.  The chart sort of flows from that listing of
21  loans.
22            THE COURT:  Right.
23            MR. FOWERBAUGH:  But that -- that is assuming that
24  discovery beyond the scope of the December 2009 joint discovery
25  plan moves forward.  That issue has not been resolved.
```

1    MR. MANVITZ: So the discovery stage here has not been
2    resolved. And the other issue that has not been resolved is
3    the temporal scope. I don't know if you want to hear argument
4    about the temporal scope.
5    THE COURT: Well, here, I mean, what I want to do is
6    see if I can help you bring these third-party claims to
7    resolution in some way.
8    And I think, Mr. Fowerbaugh, is it your view that a
9    lot of this needs to be done outside of this Court back in the
10   issuing Courts? Is that what you are saying?
11   MR. FOWERBAUGH: Well, first of all, your Honor, I
12   believe that most of the issues as to how the third-party
13   claims are going to get resolved should be first addressed by
14   Judge Aspen. It is he who ordered that third-party defendants
15   not answer the fifth amended third-party complaint.
16   THE COURT: Uh-huh.
17   MR. FOWERBAUGH: Therefore we're not at issue on some
18   of these allegations. And as I mentioned in our response, and
19   I'll say here now, once we get to looking at all 281 loans and
20   looking at whether in our particular case there are closing
21   protection letters, either transaction specific or multi-
22   transactional, applying to those loans, it is likely that in
23   many instances we will not dispute the existence or
24   applicability of the letter. Because at this point in time,
25   this time period in which all these loans were involved in,

1  there were numerous different practices, and we have seen some
2  of the letters.  So we're not -- so once -- first of all, we
3  have to answer the allegation as to whether we even have a
4  closing protection letter applicable to each of these 281
5  loans.

6  There are also instances where we believe Judge Aspen,
7  because he wanted to conduct this in a coordinated non-case
8  specific manner, and he has made that clear several times, has
9  not allowed the parties to make any kind of case specific
10 dispositive motions that would obviate the need for certain
11 discovery.

12 I'll give you three examples of what we would do when
13 permitted.  There are a number of loans closed in the State of
14 New York.  New York has an insurance regulation prohibiting the
15 issuance of any closing protection letters.  So there could
16 be -- as a matter of law there will be no closing protection
17 letters for New York loans.  The policies at issue expressly
18 exclude any kind of damages, the title policies, arising out of
19 consumer fraud or Truth in Lending violations.  That means
20 there is no obligation to pay damages relating to the
21 plaintiffs's claims against Ameriquest under the title
22 policies.

23 Those are immediate motions to dismiss.
24 THE COURT:  Okay.
25 MR. FOWERBAUGH:  There are also states that promulgate

1  consumer closing protection letters that include express
2  exclusions of TILA and consumer fraud.  We would be moving to
3  dismiss on those.
4           Further --
5           THE COURT:  Before Judge Aspen --
6           MR. FOWERBAUGH:  Yes.
7           THE COURT:  -- or -- okay.
8           MR. FOWERBAUGH:  Well, he has --
9           THE COURT:  So -- so --
10          MR. FOWERBAUGH:  Well, he has not --
11          THE COURT:  Right.
12          MR. FOWERBAUGH:  -- allowed us to do this.
13          THE COURT:  Okay.  So --
14          MR. FOWERBAUGH:  So that would have -- at this time --
15          THE COURT:  Well, here is my thought.  Hang on one
16  second.  Hang on one second.  I mean, you know, I agree with
17  Mr. Fowerbaugh that ultimately Judge Aspen has to decide what
18  the scope of what he is prepared to do with these cases here
19  and what the scope of what he believes should be done in the
20  issuing or receiving Courts.
21          MR. MANVITZ:  May I --
22          THE COURT:  Okay.
23          MR. MANVITZ:  -- interject for a second?
24          THE COURT:  Yeah.  Well -- so, you know, I think, I
25  think to the extent that scope is an issue, I think scope will

1  follow what Judge Aspen believes needs to be done here.  And,
2  therefore, I think the more prudent thing to do -- and if there
3  is confusion about that -- because one thing is clear, as
4  between Ameriquest and Mr. Fowerbaugh's clients, the mediation
5  is over.  The mediation process is over.
6         To the extent that Mr. Fowerbaugh believes that what
7  Judge Aspen intended was to wait until all the mediations with
8  all the parties was over before he proceeds, that's one thing.
9         Do you have -- do you have any statuses before Judge
10 Aspen coming up?
11        MR. MANVITZ:  Actually we have an order from Judge
12 Aspen that addresses this very issue.  The -- I believe this
13 issue has already been briefed and resolved.  It is Docket
14 782.  Ameriquest moved to transfer the (unintelligible) cases
15 where we have had significant discovery about closing
16 protection letters for a very limited area, Illinois, two
17 years, one title insurer, and we moved to transfer those cases
18 to the MDL.  And the basis for transfer was coordinated
19 discovery about closing protection letters, about the very
20 issues that are in our discovery requests.  What were the
21 closing protection letters?  What was your process for closing
22 protection letters?  Where are the closing protection letters?
23 Very simple basic discovery.  This is a closing protection
24 letter case.  We want the closing protection letters.
25        So in the course of moving to transfer, Judge Aspen

1  ordered, yes, you get to transfer the case to the MDL, and the
2  reason we get to transfer the cases to the MDL is because
3  reassignment would make the most coordinated discovery already
4  underway in (unintelligible) but relevant to the similar claims
5  in the MDL, into the practices of third-party defendants,
6  including their interpretations of the indemnity language.

7  Although Ticor Fidelity insists that some
8  individualized discovery will still be necessary, the need for
9  such discovery has not disqualified other cases from
10 reassignment in the past.

11 Mr. Fowerbaugh made the same arguments that he is
12 making before you now in the motion to reassign and said, we
13 can't have coordinated discovery, it's -- there is this issue
14 and this issue, and Judge Aspen has already overruled that.

15 MR. FOWERBAUGH: Your Honor, he also ordered in there
16 discovery shall continue as ordered by Judge Chang. Judge
17 Chang has ordered all fact discovery closed by August 31st,
18 2012. There is no discovery, with one exception, a deposition
19 that was initially scheduled to complete before then that has
20 to be completed. There is no (unintelligible) discovery in the
21 MDL.

22 THE COURT: All right.

23 MR. MANVITZ: This order was July 26th, 2012.

24 THE COURT: Okay. Here's what I am going to do. I'm
25 going to deny the motion to compel without prejudice pending

1  either an agreement by the parties or proceeding before Judge
2  Aspen to clarify the scope of what is going to be done in the
3  MDL because the discovery will follow that scope. I -- you
4  know, I don't want to -- I think that's -- at this stage, I
5  mean, my primary involvement was in settling the cases, and I
6  settled lots of them. Didn't settle this part. But I think
7  the discovery needs to follow the scope of what's going to
8  happen. So that's my ruling.
9       MR. FOWERBAUGH: Thank you, your Honor.
10      MR. MANVITZ: Thank you, your Honor.
11      MR. FOWERBAUGH: And if we don't see you in the next
12 couple of weeks, good luck.
13      THE COURT: Thank you. And good luck to all of you.
14 You guys are going to need it.
15      (Laughter.)
16      THE COURT: Okay.
17      (Which concluded the proceedings in the above-entitled
18 matter.)

19                          CERTIFICATE

20      I HEREBY CERTIFY that the foregoing is a true, correct
   and complete transcript of the proceedings had at the hearing
21 of the aforementioned cause on the day and date hereof.

22
   /s/ Pamela S. Warren                    October 5, 2012
23 Official Court Reporter                       Date
   United States District Court
24 Northern District of Illinois
   Eastern Division
25