# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen) |

**AFFIDAVIT OF RANDALL L. MANVITZ IN SUPPORT OF OPPOSITION TO CERTAIN THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**

I, Randall L. Manvitz, declare as follows:

1.      I am an attorney duly licensed to practice law before all courts in the State of California and am Senior Counsel with the law firm of Buchalter Nemer, A Professional Corporation, attorneys for Ameriquest Mortgage Company ("Ameriquest"). I have been admitted pro hac vice in this matter. I make this Affidavit on my own personal knowledge, except for matters set forth herein on my information and belief, and as to those matters, I believe my information to be true and correct. If called as a witness, I could and would competently testify to the matters contained herein.

2.      I submit this Affidavit in support of Ameriquest's Opposition to Certain Third-Party Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for a Suggestion of Remand.

3.      If the court is inclined to dismiss the supplemental jurisdiction claims, Third-Party Plaintiffs seek leave to file a consolidated third-party complaint with allegations of diversity jurisdiction. On information and belief and based on the following documents below, diversity jurisdiction exists with respect to at least the third-party defendants with more than one claim at issue with the possible exception of one or two Fidelity-entities of the fourteen involved in this

action. If any third-party defendants are found not to be diverse, they can be removed from the complaint without any significant effect on the judicial economies of coordinated pre-trial proceedings in the MDL.

4.  Ameriquest Mortgage Company, Argent Mortgage Company, and Towne & Country Credit Corporation are Delaware corporations with their principal place of business in California. Based on the following attached records, Delaware and California are not the state of incorporation or principal place of business for the moving parties.

5.  The jurisdictional limit of $75,000 is met for each of the moving parties. The operative Third-Party Complaint seeks damages including all losses caused by the Third-Party Defendants. The closing protection letters at issue expressly indemnify the lender for all losses which includes all attorneys' fees expended in defending the underlying plaintiff's claim and protecting its lien status. Further, all damages against any defendant may be aggregated to reach the $75,000 limit. The losses exceed $75,000 per Third-Party Defendant.

6.  Attached hereto as Exhibit 1 is a true and correct copy of an exemplar of a Comprehensive Title Affidavit issued by Ticor Title Insurance Company stating that the state of incorporation is Connecticut.

7.  Attached hereto as Exhibit 2 is a true and correct copy of the Business Entity Detail for Ticor Title Insurance Company from the Florida Department of State website stating that the principal place of business is Florida.

8.  Attached hereto as Exhibit 3 is a true and correct copy of the Articles of Incorporation for Mortgage Information Services stating that the state of incorporation and principal place of business is Ohio.

9.  Attached hereto as Exhibit 4 is a true and correct copy of the Business Entity Detail for Superior Closing Services, LLC, from the Commercial Recording Division of the Connecticut Secretary of State website stating that the state of incorporation and principal place of business is Connecticut.

10.     Attached hereto as Exhibit 5 is a true and correct copy of the Business Entity Detail for Commonwealth Land Title Insurance Company from the National Association of Insurance Commissioner's website stating that the state of incorporation is Nebraska.

11.     Attached hereto as Exhibit 6 is a true and correct copy of a printout from the Commonwealth Land Title Insurance Company website stating that the principal place of business is Florida.

12.     Attached hereto as Exhibit 7 is a true and correct copy of an exemplar of a Commitment for Title Insurance issued by Lawyers Title Insurance Company stating that the state of incorporation is Nebraska.

13.     Attached hereto as Exhibit 8 is a true and correct copy of a printout from the Lawyers Title Insurance Company website stating that the principal place of business is Florida.

14.     Attached hereto as Exhibit 9 is a true and correct copy of an exemplar of a Commitment for Title Insurance issued by Chicago Title Insurance Company stating that the state of incorporation is Nebraska.

15.     Attached hereto as Exhibit 10 is a true and correct copy of the History webpage from the Chicago Title Insurance Company website stating the primary place of business is Illinois.

16.     Attached hereto as Exhibit 11 is a true and correct copy of an exemplar of a Title Insurance Policy issued by Alamo Title Insurance Company stating that the state of incorporation is Texas.

17.     Attached hereto as Exhibit 12 is a true and correct copy of Alamo Title Insurance Company's home webpage stating that the principal place of business is Texas.

18.     Attached hereto as Exhibit 13 is a true and correct copy of the Business Entity Detail for Anchor Title, LLC, from the Alabama Secretary of State website stating that the state of incorporation and principal place of business is Alabama.

19. Attached hereto as Exhibit 14 is true and correct copy of an exemplar title insurance policy issued by Transnation Title Insurance Company stating that the state of incorporation is Arizona.

20. Attached hereto as Exhibit 15 is a true and correct copy of the Insurer Detail for Transnation Title Insurance Company, printed from the California Department of Insurance website stating that the principal place of business is Virginia.

21. Attached hereto as Exhibit 16 is a true and correct copy of the Articles of Incorporation for Town & Country Land Title Agency stating that the state of incorporation and principal place of business is Ohio.

22. Attached hereto as Exhibit 17 is a true and correct copy of the Better Business Bureau listing for National Real Estate Information Services of New Jersey stating that the state of incorporation and principal place of business is New Jersey.

23. Attached hereto as Exhibit 18 is a true and correct copy of the relevant excerpts of Ticor Title Insurance Company of Florida's Annual Statement for the Year Ended December 31, 2006, listing the state of incorporation and principal place of business is Florida.

24. Attached hereto as Exhibit 19 is a true and correct copy of an exemplar title insurance policy issued by Fidelity National Title Insurance Company of New York stating that the state of incorporation is New York.

25. Attached hereto as Exhibit 20 is a true and correct copy of the Company Overview page for Fidelity National Title Insurance Company of New York Company from the Bloomberg Businessweek website stating that the principal place of business is New York.

26. Attached hereto as Exhibit 21 is a true and correct copy of an exemplar title insurance policy issued by American Pioneer Title Insurance Company stating that the state of incorporation is Florida.

27. Attached hereto as Exhibit 22 is a true and correct copy of an article entitled "Fidelity National Financial, Inc. Announces Acquisition of American Pioneer Title Insurance Company" stating that the principal place of business is Florida.

28.    Limited discovery may be necessary to determine some information for a diversity analysis.  Leave to engage in limited discovery for that purpose is requested if the court is inclined to dismiss cases based on a lack of subject matter jurisdiction.

29.    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on October 17, 2012, in San Francisco, California.

DATED:  October 17, 2012

Respectfully submitted,

By: /s/ Randall L. Manvitz
*Attorneys for Defendants Argent Mortgage Company, LLC, and AMC Mortgage Services, Inc.*

Randall L. Manvitz, Esq.
BUCHALTER NEMER
55 Second Street, Suite 1700
San Francisco, California 94105-3493
Telephone:  (415) 227-0900
Facsimile:  (415) 227-0770

## CERTIFICATE OF SERVICE

I, Randall L. Manvitz, hereby certify that on this 17th day of October 2012, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Randall L. Manvitz

## CERTIFICATE OF SERVICE

I, Randall L. Manvitz, hereby certify that on this 17th day of October 2012, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Randall L. Manvitz

# EXHIBIT 1

# TICOR TITLE INSURANCE COMPANY
## COMPREHENSIVE TITLE AFFIDAVIT

STATE OF CONNECTICUT )
                                        ) ss: East Haven
COUNTY OF New Haven )

The undersigned, being the owner(s) of property located in the Town of East Haven and State of Connecticut and known as 17 AKA 31 George Street, being duly sworn, hereby depose(s) and says (cross out any sections which do not apply):

■ **MECHANICS LIENS**
**NOTE:** If any work has been done within the past 90 days, even if paid for, please contact the Company. Do not modify this section.
1.   Within the last ninety (90) days, no person or firm has performed work or furnished any labor, service or materials in connection with the construction or repair of any buildings or improvements on the property, or in connection with work or services on the land itself (e.g. surveyor).

■ **TENANTS**
1.   There are no tenants or parties in possession of the property except:

■ **CONDOMINIUM**
1.   All common expense assessments and special assessments currently assessed against the premises have been paid.
2.   There is no "Right of First Refusal" or other restriction on the sale of the premises which has not been waived by the Association.

■ *HOMEOWNERS* **(Enhanced Coverage)**
**NOTE:** This section is used only in connection with the issuance of *Homeowners* (enhanced coverage) policies. If any statement is incorrect, do not modify this section. Please contact the Company.
1.   There have been no additional buildings constructed, or additions added to existing buildings, on the property within the past three (3) years.
2.   There have been no additional living units (e.g. apartments) created in the building(s) on the property in the past three (3) years.

■ **SURVEY UPDATE**
1.   I/We have examined a certain survey of the property made by _____ dated _____ and entitled, "_____."
2.   There have been no additional improvements constructed or exterior alterations made since the date of this survey and the survey reflects the current status of the property.

■ **AFFIDAVIT IN LIEU OF SURVEY**
**NOTE:** This section may be used to delete the survey exception ONLY for RESIDENTIAL MORTGAGE policies where there has been NO NEW CONSTRUCTION. Matters raised by this affidavit should be EXCEPTED in Schedule B.
1.   I/We are in possession of the property and are familiar with its physical characteristics.
2.   No buildings, fences or improvements on the property appear to extend onto neighboring property nor do buildings, fences or improvements on neighboring properties appear to extend onto the subject property.
3.   There are no mutual driveway, community wells or other facilities or improvements shared with other properties.
4.   There are no trails, roads, wires, pipes or other matters on the property owned or used by others.
5.   There are no lakes, streams or rivers on or crossing the property.
6.   The property adjoins and has access to a public highway.
7.   I/We know of no disputes or claims of others as to the property or its boundaries.

The undersigned makes this affidavit for the purpose of inducing the purchase and/or mortgaging of the property and to induce Stewart Title Insurance Company to issue its policy(ies) of title insurance on it, knowing that reliance is placed on the above statements.

_____
Kevin J Copeland

_____

Subscribed and sworn to before me this 31 day of December , 2003

_____
Notary Public
Commissioner of the Superior Court

BETH ANN SANSALONE
NOTARY PUBLIC
MY COMMISSION EXPIRES AUG. 31

Revised 3/01

## SHORT FORM RESIDENTIAL
## LOAN POLICY -- ONE-TO-FOUR FAMILY

Issued by
Ticor Title Insurance Company

## SCHEDULE A

| | | | |
|---|---|---|---|
| Amount of Insurance: | $ 138,200.00 | Premium: | $ 507.00 |
| File Number: | 2003122700 | Policy Number: | 74107-379176 |
| Loan Number: | 0065508947-5633 | Mortgage Amount: | $ 138,200.00 |
| Mortgage Date: | | Date of Policy: | January 12, 2004 at 01:42 PM |

or date of recording of insured
mortgage, whichever is later.

Name of Insured:

Ameriquest Mortgage Company, its successors and/or assigns, as their interests may appear

Name of Borrower(s):

Kevin J. Copeland 2/26/99

Property Address: 17 AKA 31 George Street
East Haven, CT
County and State: MyCounty Connecticut

The estate or interest in the land identified in this Schedule A and which is encumbered by the insured mortgage is Fee Simple and is at Date of Policy vested in the borrower(s) shown in the insured mortgage and named above.

The land referred to in this policy is described as set forth in the insured mortgage and is identified as the property address shown above.

This policy consists of page(s) unless an addendum is attached and indicated below:

[ ] Addendum attached     [ X ] No addendum attached

The ALTA endorsements indicated below are incorporated herein:

[ ] ENDORSEMENT 4  (Condominium) or                          [ ] ENDORSEMENT 4.1
[ ] ENDORSEMENT 5  (Planned Unit Development) or            [ ] ENDORSEMENT 5.1
[ X ] ENDORSEMENT 6  (Variable Rate)                        [ ] ENDORSEMENT 6.1
[ ] ENDORSEMENT 6.2 (Variable Rate--Negative Amortization)
[ ] ENDORSEMENT 7  (Manufactured Housing Unit)
[ X ] ENDORSEMENT 8.1 (Environmental Protection Lien) referring to the following state statute(s):

[ ] ENDORSEMENT 9  (Restrictions, Encroachments, Minerals)

LAW OFFICES OF WILLIAM A. SNIDER

By: _____

LAW OFFICES OF WILLIAM A. SNIDER

ALTA Short Form Residential Loan Policy
Schedule A (10/21/00)

(2003122700.PFD/2003122700/14)

Ticor Title Insurance Company

SUBJECT TO THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B BELOW, AND ANY ADDENDUM ATTACHED HERETO, TICOR TITLE INSURANCE COMPANY, A CONNECTICUT CORPORATION, HEREIN CALLED THE "COMPANY," HEREBY INSURES THE INSURED IN ACCORDANCE WITH AND SUBJECT TO THE TERMS, EXCLUSIONS, CONDITIONS AND STIPULATIONS SET FORTH IN THE AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (10-17-92), ALL OF WHICH ARE INCORPORATED HEREIN. ALL REFERENCES TO SCHEDULES A AND B SHALL REFER TO SCHEDULES A AND B OF THIS POLICY.

## SCHEDULE B
### EXCEPTIONS FROM COVERAGE AND
### AFFIRMATIVE INSURANCES

Except to the extent of the affirmative insurance set forth below, this policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Those taxes and special assessments which become due and payable subsequent to Date of Policy.

2. Covenants, conditions and restrictions, if any, appearing in the public records; however, this policy insures against loss or damage arising from:

   a. the violation of any covenants, conditions and restrictions on or prior to Date of Policy, except that this affirmative insurance does not extend to covenants, conditions and restrictions relating to environmental protection, unless a notice of a violation thereof has been recorded or filed in the public records and is not referenced in an addendum attached to this policy;

   b. a forfeiture or reversion of title from a future violation of any covenants, conditions and restrictions appearing in the public records, including any relating to environmental protection; and

   c. any provisions in any covenants, conditions and restrictions under which the lien of the insured mortgage can be extinguished, subordinated or impaired.

3. Any easements or servitudes appearing in the public records; however, this policy insures against loss or damage arising from (a) the encroachment, at Date of Policy, of the improvements on any easement; and (b) any interference with or damage to existing improvements, including lawns, shrubbery and trees, resulting from the use of the easements for the purposes granted or reserved.

4. Any lease, grant, exception or reservation of minerals or mineral rights appearing in the public records; however, this policy insures against loss or damage arising from: (a) any affect on or impairment of the use of the land for residential one-to-four family dwelling purposes by reason of such lease, grant, exception or reservation of minerals or mineral rights; and (b) any damage to existing improvements, including lawns, shrubbery and trees, resulting from the future exercise of any right to use the surface of the land for the extraction or development of the minerals or mineral rights so leased, granted, excepted or reserved. Nothing herein shall insure against loss or damage resulting from subsidence.

5. This policy insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance affecting the title that would have been disclosed by an accurate survey. The term "encroachment" includes encroachments of existing improvements located on the land onto adjoining land, and encroachments onto the land of existing improvements located on adjoining land.

ALTA Short Form Residential Loan Policy
Schedule B (10/21/00)

(2003122700.PFD/2003122700/14)

Ticor Title Insurance Company

## ADDENDUM TO SHORT FORM
## RESIDENTIAL LOAN POLICY

File Number:                                                    Addendum to Policy Number:
2003122700                                                     74107-379176

### SCHEDULE B (Continued)

IN ADDITION TO THE MATTERS SET FORTH ON SCHEDULE B OF THE POLICY TO WHICH THIS
ADDENDUM IS ATTACHED, THIS POLICY DOES NOT INSURE AGAINST LOSS OR DAMAGE BY REASON
OF THE FOLLOWING:

a.    Taxes on the Grand List of October 1, 2002 in the total annual amount of $1791.62. First half has been
      paid. Second half will become due and payable January 2004.

ALTA Short Form Residential Loan Policy
Addendum to Schedule B (10/21/00)

(2003122700.PFD/2003122700/14)

## ENDORSEMENT

Attached to Policy Number
74107-379176

Issued by
Ticor Title Insurance Company

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1. The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for changes in the rate of interest.

2. Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by the changes in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth in lending law.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto, except that the insurance afforded by this endorsement is not subject to Section 3(d) of the Exclusions From Coverage. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

LAW OFFICES OF WILLIAM A. SNIDER

By: _____
LAW OFFICES OF WILLIAM A. SNIDER

ALTA ENDORSEMENT - Form 6 (Variable Rate Mortgage)
(6/1/87)

(2003122700.PFD/2003122700/14)

**ENDORSEMENT**

Attached to Policy Number
74107-379176

Issued by
Ticor Title Insurance Company

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a) any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States District Court for the district in which the land is located, except as set forth in Schedule B; or

(b) any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

LAW OFFICES OF WILLIAM A. SNIDER

By: _____
LAW OFFICES OF WILLIAM A. SNIDER

ALTA ENDORSEMENT - Form 8.1
(Environmental Protection Lien)
(3/12/88)

(2003122700.PFD/2003122700/14)

**(c) Amount of Insurance.** The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

## 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

## 5. PROOF OF LOSS OR DAMAGE

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to

provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS: TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

**(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.**

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation

**(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.**

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs (b)(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 7. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

## 8. LIMITATION OF LIABILITY

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

## 9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

## 10. LIABILITY NONCUMULATIVE

It is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy to the insured owner.

## 11. PAYMENT OF LOSS

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

## 12. SUBROGATION UPON PAYMENT OR SETTLEMENT

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-Insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

## 13. ARBITRATION

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

## 15. SEVERABILITY

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

## 16. NOTICES, WHERE SENT

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at Ticor Title Insurance Company, Claims Department, P.O. Box 2233, Los Angeles, California 90051.

# EXHIBIT 2



**FLORIDA DEPARTMENT OF STATE**
**DIVISION OF CORPORATIONS**

| Home | Contact Us | E-Filing Services | Document Searches | Forms | Help |

Previous on List    Next on List    Return To List

Events    Name History

Entity Name Search

Submit

## Detail by Entity Name

### Foreign Profit Corporation

TICOR TITLE INSURANCE COMPANY

### Filing Information

| | |
|---|---|
| **Document Number** | 820736 |
| **FEI/EIN Number** | 952410872 |
| **Date Filed** | 09/21/1967 |
| **State** | CA |
| **Status** | INACTIVE |
| **Last Event** | WITHDRAWAL |
| **Event Date Filed** | 08/03/2010 |
| **Event Effective Date** | NONE |

### Principal Address

601 RIVERSIDE AVE
JACKSONVILLE FL 32204 US

Changed 03/16/2004

### Mailing Address

2510 N. REDHILL AVE.
C/O MADELINE BAREWALD
SANTA ANA CA 92705 US

Changed 04/17/2008

### Registered Agent Name & Address

None

FL US

Registered Agent Revoked: 08/03/2010

### Officer/Director Detail

**Name & Address**

Title CPD

QUIRK, RAYMOND R
601 RIVERSIDE AVE
JACKSONVILLE FL 32204 US

Title SVPT

MURPHY, DANIEL K
601 RIVERSIDE AVE.
JACKSONVILLE FL 32204 US

# EXHIBIT 3

G0814-1921



Department of State

# The State of Ohio

### Sherrod Brown
Secretary of State

768164

## ❧ Certificate ❧

It is hereby certified that the Secretary of State of Ohio has custody of the Records of Incorporation and Miscellaneous Filings; that said records show the filing and recording of. _____ARF MIS_____

_____ of:

| MORTGAGE INFORMATION SERVICES, INC. |



United States of America
State of Ohio
Office of the Secretary of State

Recorded on Roll ____G814____ at Frame ____1922____ of the Records of Incorporation and Miscellaneous Filings.

Witness my hand and the seal of the Secretary of State, at the City of Columbus, Ohio, this ____6TH____ day of ___MARCH__, A.D. 19__90__.

*Sherrod Brown*

**Sherrod Brown**
Secretary of State

SEC 0002

G0814-1922

pcm1230



APPROVED
By
Date 3/6/90
Amount $25.00

## ARTICLES OF INCORPORATION

### OF

### MORTGAGE INFORMATION SERVICES, INC.

The undersigned, desiring to form a corporation for profit under Sections 1701.01 to 1701.98, inclusive, of the Ohio Revised Code, does hereby certify:

FIRST:  The name of the corporation shall be Mortgage Information Services, Inc.

SECOND:  The place in the State of Ohio where the principal office of the corporation is to be located is Cleveland, Cuyahoga County, Ohio.

THIRD:  The purpose of the corporation is to engage in any lawful act or activity for which corporations may be formed under Sections 1701.01 to 1701.98, of the Ohio Revised Code.

FOURTH:  The number of shares which the corporation is authorized to have outstanding is One Thousand (1,000), all of which shall be Common Shares, without par value.

FIFTH:  No holder of shares of the corporation of any class shall be entitled as such, as a matter of right, to subscribe for or purchase shares of any class, now or hereafter authorized, or to subscribe for or purchase securities convertible into or exchangeable for shares of the corporation

G0814-1923

-2-

of to which shall be attached or appertain any warrants or
rights entitling the holder thereof to subscribe for or purchase
shares, except such rights of subscription or purchase, if any,
for such consideration and upon such terms and conditions as its
Board of Directors from time to time may determine.

SIXTH: Notwithstanding any provision of Ohio Revised
Code Sections 1701.01 to 1701.98, inclusive, now or hereafter in
force, requiring for the authorization or taking of any action
the vote or consent of the holders of shares entitling them to
exercise two-thirds or any other proportion of the voting power
of the corporation or of any class or classes of shares thereof,
such action, unless otherwise expressly required by law or these
Articles of Incorporation, may be authorized or taken by the
vote or consent of the holders of shares entitling them to
exercise a majority of the voting power of the corporation or of
such class or classes of shares thereof.

SEVENTH: To the extent permitted by law, the
corporation, by action of its Board of Directors, may purchase
or otherwise acquire shares of any class issued by it at such
times, for such consideration and upon such terms and conditions
as its Board of Directors may determine.

IN WITNESS WHEREOF, I have hereunto subscribed my name
this 5th day of March, 1990.

_Frank R. DeSantis_
Frank R. DeSantis, Incorporator

GC814-1920

-3-

## ORIGINAL APPOINTMENT OF AGENT

    The undersigned Incorporator of Mortgage Information Services, Inc. hereby appoints CT Corporation System, a corporation which has a business address in the State of Ohio, as the Agent upon which any process, notice or demand required cr permitted by statute to be served upon the corporation may be served. Its complete address is 815 Superior Avenue, N.E., Cleveland, Cuyahoga County, Ohio 44114.

Frank R. DeSantis, Incorporator

# EXHIBIT 4

# Business Inquiry

🏠 HOME   ❓ HELP

**Business Inquiry**

| | | |
|---|---|---|
| ◉ | Search by Name: | Superior Closing Services, LLC |
| ○ | Search by Business Id: | |
| ○ | Search by Filing Number: | |
| | Number of Records per page: | 25 ▼ |

Search   Reset

The wild card search can be done on Business names using the asterisk symbol *.
Example: Search for business name **Hartford***.
Result: All businesses with business name starting **Hartford** will be displayed.

# Business Inquiry

 HOME     HELP

### Business Inquiry Result

**Searched on:** SUPERIOR CLOSING SERVICES, LLC

Total Number of Matches: **1**      Page: 1 of 1

| # | Business Name | Business Id | Status | Address |
|---|---|---|---|---|
| 1 | SUPERIOR CLOSING SERVICES, LLC | 0698143 | Dissolved | 185 PLAINS ROAD, SUITE 208E, MILFORD, CT, 06460 |

Previous   Next   Back

## Business Inquiry

 HOME   HELP

### Business Inquiry Details

|  |  |  |  |
|---|---|---|---|
| Business Name: | **SUPERIOR CLOSING SERVICES, LLC** | Business Id: | **0698143** |
| Business Address: | **185 PLAINS ROAD, SUITE 208E, MILFORD, CT, 06460** | Mailing Address: | **185 PLAINS ROAD, SUITE 208E, MILFORD, CT, 06460** |
| Citizenship/State Inc: | **Domestic/CT** | Last Report Year: | **2007** |
| Business Type: | **Domestic Limited Liability Company** | Business Status: | **Dissolved** |
| Date Inc/Register: | **Dec 05, 2001** |  |  |

### Principals

| Name/Title: | Business Address: | Residence Address: |
|---|---|---|
| GEORGE T HOLLER IV  MEMBER | 185 PLAINS ROAD, SUITE 208E, MILFORD, CT, 06460 | 19 WOODHEAD DRIVE, MILFORD, CT, 06460 |

### Business Summary

|  |  |
|---|---|
| Agent Name: | **TERRY POWERS** |
| Agent Business Address: | **32 CENTRAL AVE, MILFORD, CT, 06460** |
| Agent Residence Address: | **32 CENTRAL AVE, MILFORD, CT, 06460** |

[View Filing History]  [View Name History]  [View Shares]

[Back]

# EXHIBIT 5



HOME | ABOUT THE NAIC | EMPLOYMENT | HELP | CONTACT US

[Search box] Search

STATES & JURISDICTION MAP | COMMITTEES & ACTIVITIES | MARKETS/INVESTMENT ANALYSIS | MEMBERS & REGULATORS

**Consumer Information Source**      COMPANY SEARCH | HOW TO FILE A COMPLAINT | HELP

*Finding an insurance company can be a challenge.* The NAIC's **Consumer Information Source (CIS)** provides information about insurance companies you can use *BEFORE* purchasing insurance. Using the input fields in the right-hand column of this page, you can access key information about insurance companies, including closed insurance complaints, licensing information and key financial data.

### File an Insurance Complaint
Do you have a specific problem with an insurance company, broker, agent or adjuster? File a complaint with your state insurance department.

### Do You Suspect Fraud?
Use The Online Fraud Reporting System (OFRS) to report suspected fraudulent activities to your state agency.

### Download Key Financial Statement Data
Use **InsData** to access electronic copies of company financial data in PDF format. Choose from a company's key financials, full annual statement, and/or quarterly statements. The first five downloads are free.

### Get More Information
The **NAIC** and state insurance regulators are committed to helping every American be a smarter insurance consumer. Our award-winning **Insure U** education program provides tips and special considerations on a variety of insurance issues. Available in English and Spanish, Insure U also provides insurance information specifically for small business owners. Visit **www.insureUonline.org** to learn more.

### Aggregate Consumer Complaint Reports — *last updated 9/24/2012*

In addition to company-specific information, the NAIC produces reports combining data submitted by state insurance departments. These reports (at right) provide information about common closed complaints by reason and type of insurance, as well as how the complaints were resolved.

**Company Search for Complaint and Financial Information**

**Company Name or Company Code**
*

[input field]

**Business Type:**
[All ▼]

[ Find a Company ]



*Global Receivership Information Database*

GRID is a voluntary database provided by the state insurance departments to report information on insurer receiverships for consumers, claimants, and guaranty funds.

**Most Common Complaints by Reason for Complaint**

**Most Common Complaints by Type of Insurance**

**Most Common Complaints by Disposition**

HOME | STAFFNET | EMPLOYMENT | CONTACTS | HELP | SITE MAP | COPYRIGHT & REPRINT INFO | PRIVACY STATEMENT

© 1991 - 2012 National Association of Insurance Commissioners. All rights reserved.

## Company Search Look-up

**NAIC Consumer Information Source** (https://eapps.naic.org/cis/)

**CLOSE**

| COMPANY DEMOGRAPHICS | | | |
|---|---|---|---|
| **Company Name:** | Commonwealth Land Title Insurance Company | **FEIN:** | 23-1253755 |
| **State of Incorporation:** | NEBRASKA | **Incorporation Date:** 04/11/1929 | **Issue Date:** 07/27/1961 |
| **Company #:** | 2014 | **NAIC #:** 50083 | |
| **NAIC Group #:** | 670 | **NAIC Group Name:** | Fidelity National Financial Grp |
| **Domicile Type :** | Foreign | **Company Type:** TITLE | |
| **Status:** | Active | | |
| **Effective Date:** | 07/27/1961 | | |

**Please select by clicking the appropriate link for additional information:**

| Company Address | Line of Business | Company Contacts | Company Name Change History | Company Merger History |
|---|---|---|---|---|

# EXHIBIT 6



| Home | Title Info | Info Library | Find An Office | Consumers | CLTICec | About Us | Contact Us |

---

## Corporate Office

**Commonwealth Land Title**
601 Riverside Avenue
Jacksonville, FL 32204
(888) 866-3684

## Contact Us

If your message is regarding a business issue please click on the link to the appropriate department in the list below.

**Please do not use these forms for marketing solicitations.**

| | |
|---|---|
| **Agency** | (888) 866-3684 |
| **Commercial Services** | (888) 866-3684 |
| **Escrow/Settlement** | (888) 934-3354 |
| **Global Solutions** | (888) 934-3354 |
| **Home Warranty** | (800) 862-6837 |
| **Human Resources** | (800) 815-3969 |
| **Investor Relations** | (888) 934-3354 |
| **National Builder Services** | (949) 622-4912 |
| **Property & Casualty Insurance** | (888) 333-2120 |
| **Sales & Marketing** | (888) 934-3354 |
| **IPX 1031 Exchange** | (888) 771-1031 |
| **Title** | **Click for phone** |
| **UCCPlus Insurance** | (877) 892-5474 |
| **Corporate Communications** | (888) 934-3354 |
| Legal | |
| **Jacksonville Claims Center** | (877) 862-9111 |
| **Omaha Claims Center** | (877) 737-6521 |
| **Legal** | (888) 934-3354 |
| **Underwriting** | (888) 934-3354 |
| Webmaster | |

Note: Please use the following email address to report website issues or to suggest additional features for the website only.

**Webmaster**

Copyright © 2009 Commonwealth Land Title Insurance Company. All Rights Reserved.   OFAC SDN Search  |  Privacy Policy  |  Webmaster Contact

*The statements made on this web page and any page that follows within the Commonwealth Land Title Insurance Company website are not intended, and shall not be construed to expressly or impliedly issue or deliver any form of written guaranty, affirmation, indemnification, or certification of any fact, insurance coverage or conclusion of law.

# EXHIBIT 7

# COMMITMENT FOR TITLE INSURANCE

### Issued by



**LAWYERS TITLE INSURANCE CORPORATION, a Nebraska corporation ("Company")**, for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedules A and B and to the Conditions of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate 180 days after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request.

**IN WITNESS WHEREOF**, the Company has caused this Commitment to be signed with the facsimile signatures of its President and Secretary and sealed as required by its By-Laws.

VA6938
HOI - LTIC - Roanoke
310 First Street, Ste 1210
Roanoke , VA 24019
Tel:(000) 000-0000
Fax:(000) 000-0000

**LAWYERS TITLE INSURANCE CORPORATION**

By:

ATTEST

President

Secretary

SEAL

Countersigned: _____
Authorized Signatory

## CONDITIONS

1. The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2. If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions.

3. Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4. This Commitment is a contract to issue one or more title insurance policies and is not an abstract of title or a report of the condition of title. Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

# EXHIBIT 8



Home | Title Info | Info Library | Find An Office | Consumers | LTICec | About Us | Contact Us

**Corporate Office**

**Lawyers Title**
601 Riverside Avenue
Jacksonville, FL 32204
(888) 866-3684

## Contact Us

If your message is regarding a business issue please click on the link to the appropriate department in the list below.

Please do not use these forms for marketing solicitations.

| | |
|---|---|
| **Agency** | (888) 866-3684 |
| **Commercial Services** | (888) 866-3684 |
| **Escrow/Settlement** | (888) 934-3354 |
| **Global Solutions** | (888) 934-3354 |
| **Home Warranty** | (800) 862-6837 |
| **Human Resources** | (800) 815-3969 |
| **Investor Relations** | (888) 934-3354 |
| **National Builder Services** | (949) 622-4912 |
| **Property & Casualty Insurance** | (888) 333-2120 |
| **Sales & Marketing** | (888) 934-3354 |
| **IPX 1031 Exchange** | (888) 771-1031 |
| **Title** | **Click for phone** |
| **UCCPlus Insurance** | (877) 892-5474 |
| **Corporate Communications** | (888) 934-3354 |
| **Legal** | |
| **Jacksonville Claims Center** | (877) 862-9111 |
| **Omaha Claims Center** | (877) 737-6521 |
| **Legal** | (888) 934-3354 |
| **Underwriting** | (888) 934-3354 |
| **Webmaster** | |

Note: Please use the following email address to report website issues or to suggest additional features for the website only.

**Webmaster**

Copyright © 2009 Lawyers Title. All Rights Reserved.

OFAC SDN Search | Privacy Policy | Webmaster Contact

*The statements made on this web page and any page that follows within the Lawyers Title website are not intended, and shall not be construed to expressly or impliedly issue or deliver any form of written guaranty, affirmation, indemnification, or certification of any fact, insurance coverage or conclusion of law.

# EXHIBIT 9

27280415 -
St. Joseph, MO

| American Land Title Association | Commitment |
|---|---|

REV #1 - 11.7.07

### COMMITMENT FOR TITLE INSURANCE

Issued by

# CHICAGO TITLE INSURANCE COMPANY

CHICAGO TITLE INSURANCE COMPANY, a Nebraska corporation ("Company"), for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedules A and B and to the Conditions of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate 6 months after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request

IN WITNESS WHEREOF, Chicago Title Insurance Company has caused its corporate name and seal to be affixed by its duly authorized officers on the date shown in Schedule A.

Issued by:
CHICAGO TITLE INSURANCE COMPANY
106 W. 11th St. Suite 1800
Kansas City, Missouri 64105
(816) 421-5040

**Chicago Title Insurance Company**

President

Secretary

06C1 6/06 KMS

ALTA Commitment - 2006

# EXHIBIT 10

Case: 1:05-cv-07097 Document #: 5123-8 Filed: 10/17/12 Page 42 of 72 PageID #:49638




In 1992, Chicago Title and Trust Co. and Chicago Title Insurance Co. moved their corporate headquarters to the new Chicago Title and Trust Center, located at 171 N. Clark St. in Chicago. The 50-story post-modern edifice is located on a historic parcel of property, the site of the city's first city hall and municipal courthouse and one of its predecessor companies.

**Moving Forward**

In 1995, the company restructured its financial services businesses under a new name: Alleghany Asset Management Inc. Alleghany Asset provides mutual fund and investment management and advisory services and is composed of Montag & Caldwell, Inc. (Atlanta), The Chicago Trust Co. (also established in 1995) and Chicago Deferred Exchange Corp. Alleghany Asset has total assets under management in excess of $21.3 billion.

During 1997, CT&T celebrated its 150 year anniversary. Our company was honored by the city of Chicago and the Illinois State Historical Society, as well as the state of Indiana and others.

In October of 1997, CTT introduced CastleLink, the company's single source mortgage service for major national mortgage lenders.

On December 17, 1997 Alleghany Corp. announced its intention to establish the title insurance and real estate-related services businesses conducted by CT&T as an independent, publicly traded company through a spin-off to Alleghany stockholders.

On June 17th this spin off was complete and Chicago Title Corporation became independent, publicly traded company with the ticker symbol "CTZ". For the full year 1998, we achieved record financial performance, with all market sectors contributing to these results.

Being a public company we continued to grow through our many acquisitions. We announced 10 acquisitions in 1998 and early 1999. This included a number of companies that broaden our presence with national originators and servicers. In 1998, we acquired Universal Mortgage Services Inc., now known as Chicago Title Field Services, which provides property inspection, preservation and maintenance services nationwide. Shortly thereafter, we entered the business of providing foreclosure and reconveyance services with the acquisition of California-based Consolidated Reconveyance Co.

The acquisition of Westfall & Company, a mortgage servicing company, further enhanced the servicing sector of the residential mortgage business. We also acquired two of the largest and most experienced escrow providers in California, Escondido Escrow and Ranch & Coast Escrow. The former is also one of the leading timeshare escrow organizations in the nation.

1847
1997
BUILDING FOR THE NEXT 150 YEARS
Chicago Title and Trust Family of Companies

Our title agency acquisitions were deliberately focused on growth markets with higher-than-average housing turnover rates, including United Title of Nevada, which has operations throughout the state, and Yuma Title and Trust Co., one of the leading title agencies in Yuma County, Arizona. In early 1999, we completed three other significant acquisitions when we purchased Phoenix-based Security Title, the largest independent agency in Arizona, as well as Blue Ridge Title of Charlottesville, Virginia and Island Title of Oak Harbor, Washington.

Another source of strategic growth is alliances. Again, only a national company with our scope and resources is a candidate for the kind of activities that will let us penetrate markets in new ways. At year-end 1998, we announced a new strategic alliance with Cendant Corporation. Chicago Title will have a preferred relationship facilitating title insurance transactions for Cendant's COLDWELL BANKER®, Century 21®, and ERA®, franchises and their clients. Also in 1998, Chicago Title Credit Services signed a letter of intent with Trans Union to enter into an affiliation arrangement through which Trans Union and its affiliates may use our merged credit reports.

Chicago Title Corporation achieved a major milestone in 1999 when it signed a definitive agreement on August 1 to be acquired by Fidelity National Financial, Inc., creating the pre-eminent company in the title insurance industry. The historic merger was finalized in March 20, 2000.

The strategic rationale for this merger was one of superlatives. Fidelity and Chicago Title have nationally recognized and respected brand names, a history of quality service, and excellent financial performance. The combined organization is the largest in the industry in terms of revenues, profits, market share, assets and claims-paying reserves.

Furthermore, the combined company is the largest title insurer and provider of real estate related products and services in the world; distinguished by an unsurpassed distribution system comprised of over 1,000 offices and 7,000 agents, leading market share in excess of 30%, geographic diversity, complementary business mixes and the strongest financial position in the industry.

Fidelity National Financial, Inc. (NYSE:FNF), is a leading provider of title insurance, specialty insurance, claims management services and information services. FNF is one of the nation's largest title insurance companies through its title insurance underwriters - Fidelity National Title, Chicago Title, Ticor Title, Security Union Title and Alamo Title - that issue approximately 28 percent of all

title insurance policies in the United States. FNF also provides flood insurance, personal lines insurance and home warranty insurance through its specialty insurance business. FNF also is a leading provider of outsourced claims management services to large corporate and public sector entities through its minority-owned subsidiary, Sedgwick CMS. FNF is also a leading information services company in the human resource, retail and transportation markets through another minority-owned subsidiary, Ceridian Corporation. More information about FNF can be found at www.fnf.com.

## And we look forward to the journey ahead.



Copyright © 2010 Chicago Title. All Rights Reserved

Other Languages:  Spanish  •  Korean  •  Chinese  •  Vietnamese

OFAC SDN Search  |  Privacy  |  Webmaster

*The statements made on this web page and any page that follows within the Chicago Title website are not intended, and shall not be construed to expressly or impliedly issue or deliver any form of written guaranty, affirmation, indemnification, or certification of any fact, insurance coverage or conclusion of law.

# EXHIBIT 11

# MORTGAGEE POLICY OF TITLE INSURANCE
## Issued By

**POLICY NUMBER** **33-49-93-** 230506

 Alamo Title Insurance

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, ALAMO TITLE INSURANCE, a Texas corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the Insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

2. Any defect in or lien or encumbrance on the title;

3. Lack of a right of access to and from the land;

4. The invalidity or unenforceability of the lien of the insured mortgage upon the title;

5. The priority of any lien or encumbrance over the lien of the insured mortgage;

6. Lack of priority of the lien of the insured mortgage over any statutory or constitutional mechanic's, contractor's or materialman's lien for labor or material having its inception on or before Date of Policy;

7. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens;

8. Lack of good and indefeasible title.

The Company also will pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*Alamo Title Insurance*

ATTEST

President

Secretary

# EXHIBIT 12



## Alamo Title Company.



### OFFICE LOCATOR



State:
[Select]

County:
[Select]

Operation:
[Select]

Submit

### RATE CALCULATOR



As a service to our customers, we've added rate calculators to our site in order to provide you an idea of possible costs for your transaction.

**Click here for details**

### GFE CALCULATOR



Good Faith Estimator
**Get an estimate**

Alamo Title is built on a rock solid foundation -- we have an established, successful history of writing title policies since 1922.

Our goal is to continue to raise the level of service to our core title agents and their customers. Just one of the ways Alamo Title continues to grow and succeed.

### ATI AGENTS



### NEWS

**Foot Traffic: Oak Park Association of REALTORS® (Chicago, IL)**
**Irish Bill Could Prevent Thousands Of Foreclosures**
**10/10/2012 Mortgage Applications Decrease in Latest MBA Weekly Survey A»**
**PennyMac Mortgage Rains Down More Than Pennies**
**Property Flipping Gaining Momentum in 2012**

More...

### ABOUT US

The predecessor to Alamo Title Insurance, Alamo Abstract and Title Company, was formed in 1922 in San Antonio, Texas. Since that time, Alamo Title has prospered, weathering fluctuations in the economy while enjoying sustained, consistent growth and profitability.

More...

### LANGUAGES

Spanish
Korean
Chinese
Vietnamese

We are a proud company, comprised of dedicated and talented individuals who have the desire and knowledge to succeed. The heart of our company is over 220 dedicated agents providing quality service throughout Texas and New Mexico. Nearing eight decades of continuous service, Alamo Title Insurance has earned its place in industry history, a position of distinction and respect.

Our industry has undergone great changes and the use of "ratings" has become a necessity for acceptability and marketability. Alamo far exceeds the minimum acceptable ratings required by the Federal National Mortgage Association (FNMA).

More...

Copyright © 2010 Alamo Title. All Rights Reserved
OFAC SDN Search | Privacy | Webmaster

Other Languages  Spanish • Korean • Chinese • Vietnamese

*The statements made on this web page and any page that follows within the Alamo Title website are not intended, and shall not be construed to expressly or impliedly issue or deliver any form of written guaranty, affirmation, indemnification, or certification of any fact, insurance coverage or conclusion of law

# EXHIBIT 13

Business Entity Details



Home    Government Records    Business Entities    Search    Details

## Business Entity Details

| Anchor Title L.L.C. | |
|---|---|
| Entity ID Number | 699 - 953 |
| Entity Type | Domestic Limited Liability Company |
| Principal Address | ORANGE BEACH, AL |
| Principal Mailing Address | Not Provided |
| Status | Exists |
| Place of Formation | Baldwin County |
| Formation Date | 4-28-2004 |
| Registered Agent Name | NASH, JOY B |
| Registered Office Street Address | 27195 SAILFISH DR<br>ORANGE BEACH, AL 36561 |
| Registered Office Mailing Address | Not Provided |
| Nature of Business | REAL PROPERTY TITLE INSURANCE AGENCY |
| Capital Authorized | |
| Capital Paid In | |
| Members | |
| Member Name | NASH, JOY B |
| Member Street Address | Not Provided |
| Member Mailing Address | Not Provided |
| Scanned Documents | |
| Click here to purchase copies. | |
| Document Date / Type / Pages | 4-28-2004    Articles of Formation    1 pg. |

Browse Results        New Search

P.O. Box 5616
Montgomery, AL 36103-5616

Alabama Directory | Media | Online Services | Alabama.gov
Statements/Policies | Alerts | Survey/Comments | Feeds | Contact Us

Phone: (334) 242-7200
Fax: (334) 242-4993

# EXHIBIT 14

# LOAN POLICY OF TITLE INSURANCE

Issued by **Transnation Title Insurance Company**

*Loan No. 5777#8350* (handwritten)

*Davis, Deborah J.* (handwritten)

**POLICY NUMBER**

**F52-0308032.**

 **LandAmerica Transnation**

*Transnation Title Insurance Company is a member of the LandAmerica family of title insurance underwriters.*

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, TRANSNATION TITLE INSURANCE COMPANY, an Arizona corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, TRANSNATION TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**TRANSNATION TITLE INSURANCE COMPANY**

Attest: *Wm. Chadwick Perrine*

Secretary



By: *Janet A. Alpert*

President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulations (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

NM 2      PA 20
ALTA Loan Policy (10/17/92)
Face Page
**Form 1191-54A**

**ORIGINAL**

Valid only if Schedules A and B and Cover are attached

# EXHIBIT 15



California Organized Investment Network (COIN)

Insurer Detail

**Company Name and Address:**
Transnation Title Insurance Company
5600 COX ROAD
GLEN ALLEN,VA 23060

**COIN Investment Contact:**
Lisa McKenna
5600 Cox Road
Glen Allen ,VA 23060
**Phone:** (804) 267-8407
**Fax:** (804) 267-8845

**Additional Information on the Company**:
Company Type: TI - Title
NAIC Company #: 50012
NAIC Group #: 0099
NAIC Group Name: Landamerica Grp
State of Domicile: NE

| | |
|---|---|
| Total Premiums: | $0 |
| California Premiums: | $0 |
| Total Invested Assets: | $0 |
| Total Capital and Surplus: | $0 |

[ Investment Policies ]  [ Return to Search Results ]  [ Show All Investments ]

| COIN Qualifying Investments Aggregated by Extent of Social Benefit | Quantity | Amount |
|---|---|---|
| Other Qualifying Investment | 2 | $2,140,410 |
| **Total COIN-Qualifying Investments Reported:** | **2** | **$2,140,410** |

| COIN Qualifying Investments Aggregated by Investment Category/NAIC Schedule | Quantity | Amount |
|---|---|---|
| D - Bonds | 2 | $2,140,410 |
| **Total COIN-Qualifying Investments Reported:** | **2** | **$2,140,410** |

| COIN Qualifying Investments Aggregated by Type of Investment | Quantity | Amount |
|---|---|---|
| Bonds - Healthcare or Comm Svc for LMI | 1 | $1,074,290 |
| Bonds - Redevelopment Agency | 1 | $1,066,120 |
| **Total COIN-Qualifying Investments Reported:** | **2** | **$2,140,410** |

Revised - 09/12/2011 11:07:48.    Copyright © California Department of Insurance

# EXHIBIT 16



# The State of Ohio

05564-0105

### Bob Taft

### Secretary of State

947715

## ❧ Certificate ❧

It is hereby certified that the Secretary of State of Ohio has custody of the Records of Incorporation and Miscellaneous

Filings; that said records show the filing and recording of:    ARF

of:

     TOWN & COUNTRY LAND TITLE AGENCY, INC.



**United States of America**
**State of Ohio**
**Office of the Secretary of State**

Recorded on Roll 5564 at Frame 0106     of
the Records of Incorporation and Miscellaneous Filings.

Witness my hand and the seal of the Secretary of State at

Columbus, Ohio, this   8TH day of   JULY     .

A.D. 19 96   .

*Bob Taft*
**Bob Taft**
Secretary of State

**ARTICLES OF INCORPORATION**

**OF**

**TOWN & COUNTRY LAND TITLE AGENCY, INC.**

APPROVED

By ...........................

Date ........................

Account ...................

The undersigned, who is a citizen of the United States, desiring to form a Corporation for profit under Chapter 1701 of the Ohio Revised Code, does hereby certify:

**FIRST:** That the name of said Corporation shall be Town & Country Land Title Agency, Inc.

**SECOND:** That the place where its principal office is to be located is: 121 1/2 W. Third St., Greenville, Darke County, Ohio.

**THIRD:** That the purposes for which this Corporation is formed are:
To engage in any lawful act or activity for which a corporation may be formed under Sections 1701.01 to 1701.98, inclusive, of the Ohio Revised Code including to conduct the business of a title insurance agency.

**FOURTH:** The number of shares that this Corporation is authorized to have outstanding is 750 total shares: including 375 Class A (voting) common shares and 375 Class B (non-voting) preferred shares.

**FIFTH:** The amount of stated capital which the Corporation shall begin business is $10,000.00.

**SIXTH:** The Board of Directors is hereby authorized to vary the amount of working capital of the Corporation, to determine whether any, and if any, what part of its surplus, however created or arising, shall be used or disposed of or declared in dividends or paid shareholders and without action by the shareholders, to use and apply such surplus or any part thereof, at any time, or from time to time, in the purchase or acquisition of such of the shares of any class of voting or non-voting stock, bonds, debentures, notes, warrants, obligations, evidences of indebtedness of this Corporation, or any other Corporation to such extent or amount and in such manner and upon such terms as the Board of Directors shall deem expedient.

**SEVENTH:** Every shareholder or stockholder, before selling such stock belonging to him or her, shall offer to sell the same to the corporation at the fair book value of such stock at the time such offer is made, and in case of disagreement as to what such book value is at such time, such matter in dispute shall be arbitrated.

**EIGHTH:** A director of this Corporation shall not be disqualified, by his office, from dealing or contracting with the Corporation as a vendor, purchaser, employee, agent, or otherwise, nor shall any transaction or contract or acts of this Corporation be void or voidable or in any way affected or invalidated by reason of the fact that any director or any firm of which any director of this Corporation has a member or any Corporation in which any director of this Corporation is a shareholder or director is, in any way, interested in such transaction, contract or act, provided, that the fact that such director or such firm or such Corporation is so interested shall be disclosed or shall be known to the Board of Directors or such members thereof as shall be present at any meeting of the Board of Directors, at which time, such contract or transaction or act shall be taken, nor shall any director be accountable or responsible to the Corporation for or in respect to any such transaction or contract or act of this

Corporation, or for any gains or profits realized by him by reason of the fact that he or any firm of which he is a member or any Corporation of which he is a shareholder or director is interested in such transaction or contract or act and any such director may be counted in determining the existence of a quorum at any meeting of the Board of Directors of this Corporation which shall authorize or take action in respect to any contract, transaction or act and may vote there at to authorize, ratify, or approve any such contract or transaction or act with like force and effect as if he, or any firm of which he is a member, or any Corporation of which he is a shareholder or director, were not interested in such transaction or contract or act.

NINTH:     (A)  The Corporation may indemnify or agree to indemnify any officer or employee or a former, officer or employee or any person who is serving at the request of this Corporation as an, officer or employee of another Corporation (whether nonprofit or for profit) against expenses actually and necessarily incurred by him in connection with the defense of any pending or threatened action, suit or proceeding, criminal or civil, to which he is or may be made a party by reason of being or having been such officer or employee, provided: (1)  he is adjudicated or determined not to have been negligent or guilty of misconduct in the performance of his duties to this Corporation of which he is the, officer or employee, (2) he is determined to have acted in good faith in what he reasonably believes to be the best interest of this Corporation, and (3) in any matter, subject of a criminal action, suit or proceeding, he is determined to have had no reasonable cause to believe that his conduct was unlawful.

(B)  The Corporation may, by any agreement or by resolution adopted by voting members at a meeting held for such purposes by affirmative vote of the majority of the voting members present, if a quorum is present, indemnify or agree to indemnify such officer or employee against expenses, judgments, decrees, fines, penalties or amounts paid in settlement in connection with the defense of any pending or threatened action, suit or proceeding, criminal or civil, to which such officer or employee is or may be made a party by reason of being such officer or employee, provided that a determination is made by the shareholders in accordance with the manner set forth in paragraph (A) hereof (1) that such officer, or employee was not, and has not been adjudicated to have been negligent or guilty of misconduct in the performance of his duty to this Corporation of which he is an officer or employee, (2) that he acted in good faith in what he reasonably believed to be the best interest of this Corporation, and (3) that in any matter the subject of criminal action, suit or proceeding, he has no reasonable cause to believe that his conduct was unlawful.

(C)  This indemnification provision shall not be deemed to be exclusive of any other rights to which such officer or employee may be entitled under the Code of Regulations, any agreement, any insurance purchased by the Corporation, vote of the members or otherwise.

IN WITNESS WHEREOF, I have hereunto set my hand this 3rd day of July, 1996.

SCOTT D. RUDNICK

# EXHIBIT 17



**Better Business Bureau®**

BBB serving BBB of New Jersey

## BBB BUSINESS REVIEW

**THIS BUSINESS IS NOT BBB ACCREDITED**

**National Real Estate Information Service Of NJ Inc**

Phone: (888) 263-5872

Fax: (888) 263-5873
401 Route 70 East  Suite 210, Cherry Hill, NJ 08034



**On a scale of A+ to F**
Reason for Rating
BBB Ratings System Overview

*BBB Business Reviews may not be reproduced for sales or promotional purposes.*

### BBB Accreditation

This business is not BBB accredited.

Businesses are under no obligation to seek BBB accreditation, and some businesses are not accredited because they have not sought BBB accreditation.

To be accredited by BBB, a business must apply for accreditation and BBB must determine that the business meets BBB accreditation standards, which include a commitment to make a good faith effort to resolve any consumer complaints. BBB Accredited Businesses must pay a fee for accreditation review/monitoring and for support of BBB services to the public.

### Reason for Rating

BBB rating is based on 16 factors. Get the details about the factors considered.

Factors that *raised* the rating for National Real Estate Information Service Of NJ Inc include:

    Length of time business has been operating.
    No complaints filed with BBB.
    BBB has sufficient background information on this business.

### Customer Complaints Summary

0 complaints closed with BBB in last 3 years | 0 closed in last 12 months

| Complaint Type | Total Closed Complaints |
|---|---|
| Advertising/Sales Issues | 0 |
| Billing/Collection Issues | 0 |
| Delivery Issues | 0 |
| Guarantee/Warranty Issues | 0 |
| Problems with Product/Service | 0 |
| **Total Closed Complaints** | **0** |

### Government Actions

BBB knows of no significant government actions involving National Real Estate Information Service Of NJ Inc.

National Real Estate Information Service Of NJ-Online Review | Title Companies & Agents in Cherry H...

Case 1:05-cv-07097 Document # 5123-8 Filed: 10/17/12 Page 60 of 72 PageID #:49656

What government actions does BBB report on?

## Advertising Review

BBB has nothing to report concerning National Real Estate Information Service Of NJ Inc's advertising at this time.

What is BBB Advertising Review?

## Additional Information

BBB file opened: May 29, 2001
Business started: 06/09/1997
Business incorporated: 06/01/1997 in NJ

**Type of Entity**
Corporation

**Business Management**
Mr. Shawn J O'Mara, President

**Contact Information**
Principal: Mr. Shawn J O'Mara, President

**Business Category**
Title Companies & Agents



Map data ©2012 Google



© 2012 Better Business Bureau®, Inc.

BBB serving BBB of New Jersey

# EXHIBIT 18

### ANNUAL STATEMENT

OF THE

**Ticor Title**

**Insurance Company**

**of Florida**

of _____ **Jacksonville**

in the state of _____ **Florida**

### TO THE

**Insurance Department**

OF THE

### STATE OF

**FOR THE YEAR ENDED**
**December 31, 2006**

TITLE

**2006**

TITLE INSURANCE COMPANIES - ASSOCIATION EDITION



51535200620100100

# ANNUAL STATEMENT

**For the Year Ended December 31, 2006**
OF THE CONDITION AND AFFAIRS OF THE

**Ticor Title Insurance Company of Florida**

NAIC Group Code___0670___ ___0670___ NAIC Company Code___51535___ Employer's ID Number___59-1971665___
(Current Period) (Prior Period)

Organized under the Laws of _____FL_____ , State of Domicile or Port of Entry _FL_

Country of Domicile ___US___

Incorporated/Organized: ___February 4, 1980___ Commenced Business: ___February 27, 1980___

Statutory Home Office: ___601 Riverside Avenue___ ___Jacksonville, FL___ ___32204___

Main Administrative Office: ___601 Riverside Ave___ ___Jacksonville, FL___ ___32204___ ___904-854-8100___

Mail Address: ___601 Riverside Ave___ ___Jacksonville, FL___ ___32204___

Primary Location of Books and Records: ___601 Riverside Avenue___ ___Jacksonville, FL___ ___32204___ ___904-854-8100___

Internet Website Address: ___www.fntg.com___

Statutory Statement Contact: ___Jan R. Wilson___ ___904-854-8100___

___jan.wilson@fnf.com___ ___904-357-1066___
(E-Mail Address) (Fax Number)

Policyowner Relations Contact: ___Kevin Chiarello 17911 Von Karman Suite 300___ ___Irvine, CA___ ___92614___ ___949-622-4338___

## OFFICERS

| | Name | Title |
|---|---|---|
| 1. | Raymond Randall Quirk | President & Chief Operating Officer |
| 2. | Todd Chilveny Johnson | SVP & Corporate Secretary |
| 3. | Anthony John Park | EVP & Chief Financial Officer |

### Vice-Presidents

| Name | Title | Name | Title |
|---|---|---|---|
| Christopher (NMN) Abbinante | EVP | Raymond Michael Cavanagh | EVP |
| Edward John Dewey | EVP | Patrick Gerard Farenga | SVP & Treasurer |
| Peter Tadeusz Sadowski | EVP | Alan Lynn Stinson | EVP |

### DIRECTORS OR TRUSTEES

| | | | |
|---|---|---|---|
| Christopher (NMN) Abbinante | William Patrick Foley II | Erika (NMN) Meinhardt | Anthony John Park |
| Raymond Randall Quirk | | | |

State of ___Florida___
County of ___Duval___ ss

The officers of this reporting entity being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC Annual Statement Instructions and Accounting Practices and Procedures manual except to the extent that: (1) state law may differ, or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively. Furthermore, the scope of this attestation by the described officers also includes the related corresponding electronic filing with the NAIC, when required, that is an exact copy (except for formatting differences due to electronic filing) of the enclosed statement. The electronic filing may be requested by various regulators in lieu of or in addition to the enclosed statement.

| (Signature) | (Signature) | (Signature) |
|---|---|---|
| Raymond Randall Quirk | Todd Chilveny Johnson | Anthony John Park |
| (Printed Name) | (Printed Name) | (Printed Name) |
| 1. | 2. | 3. |
| President & Chief Operating Officer | SVP & Corporate Secretary | EVP & Chief Financial Officer |
| (Title) | (Title) | (Title) |

Subscribed and sworn to before me this

_____ day of _____ , 2007

a. Is this an original filing? YES | X | NO | |

b. If no: 1. State the amendment number ...............

2. Date filed ...............

3. Number of pages attached ...............

# EXHIBIT 19



3926 28 45

**Loan Policy of Title Insurance**

# Fidelity National Title Insurance Company
## of New York
A Stock Company

**POLICY NUMBER** 5412 – 2718891

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, a New York corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:*

1. *Title to the estate or interest described in Schedule A being vested other than as stated therein;*
2. *Any defect in or lien or encumbrance on the title;*
3. *Unmarketability of the title;*
4. *Lack of a right of access to and from the land;*
5. *The invalidity or unenforceability of the lien of the insured mortgage upon the title;*
6. *The priority of any lien or encumbrance over the lien of the insured mortgage;*
7. *Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:*
   a. *arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or*
   b. *arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;*
8. *The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.*

*The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.*

*IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.*

FIDELITY NATIONAL TITLE INSURANCE COMPANY
OF NEW YORK

Countersigned _Stephen Weeman_
**Authorized Signature**
**(PLEASE PRINT NAME)**

SEAL

By: _____ President

Attest: _Charles H. Wimer_
Secretary

# EXHIBIT 20

Fidelity National Title Company Overview | Case 1:05-cv-07097 Document #:5123-8 Filed: 10/17/12 Page: 67 of 72 PageID #:49663 ivestig/business development research agency/books.plaza/snapshot.a...

Snapshot                                    People

### Company Overview

Fidelity National Title Insurance Company of New York provides title insurance, underwriting, escrow and closing services. Its clientele includes residential, commercial and industrial clients, lenders, developers, attorneys, real estate professionals and consumers. The company is based in New York, New York. Fidelity National Title Insurance Company of New York operates as a subsidiary of Fidelity National Title Insurance Company.

### Key Executives For Fidelity National Title Insurance Company Of New York

Fidelity National Title Insurance Company of New York does not have any Key Executives recorded.

2 Park Avenue
Suite 300
New York,
NY 10016-5675

United States

Phone:  212-481-5858
Fax:    212-481-8747
www.fntic.com

### Similar Private Companies By Industry

| Company Name | Region |
|---|---|
| MGIS Property & Casualty Insurance Services, Inc. | United States |
| Rezilient Direct Corporation | United States |
| Augusta Mutual Insurance Co. | United States |
| ASG Risk Management Inc. | United States |
| Capital Mutual Insurance Company | United States |

### Recent Private Companies Transactions

| Type Date | Target |
|---|---|
| No transactions available in the past 12 months. | |

**Report Data Issue**

# EXHIBIT 21

POLICY NO.
LP-11-1338-win03-5325tn

AMERICAN LAND TITLE ASSOCIATION
LOAN POLICY 10-17-92

## LOAN POLICY OF TITLE INSURANCE

### ISSUED BY

# AMERICAN PIONEER
# TITLE INSURANCE COMPANY

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, AMERICAN PIONEER TITLE INSURANCE COMPANY, a Florida corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

2. Any defect in or lien or encumbrance on the title;

3. Unmarketability of the title;

4. Lack of a right of access to and from the land;

5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;

6. The priority of any lien or encumbrance over the lien of the insured mortgage;

7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:

    (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or

    (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;

8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*IN WITNESS WHEREOF:* AMERICAN PIONEER TITLE INSURANCE COMPANY has caused this policy to be signed and sealed as of the Date of Policy shown in Schedule A, the policy to become valid when countersigned by an authorized signatory.

Issued by:

Network Closing Services, Inc.
7651-A Ashley Park Ct., # 401
Orlando, FL 32835

AMERICAN PIONEER TITLE INSURANCE COMPANY

By: *Roy W. Lassiter*

President

Attest: *George P. Daniels*

Secretary

**THIS POLICY SUBJECT TO ARBITRATION PROVISIONS**

LP-11

# EXHIBIT 22



# Fidelity National Financial, Inc. Announces Acquisition of American Pioneer Title Insurance Company

Jacksonville, Fla. -- (October 27, 2003) -- Fidelity National Financial, Inc. (NYSE:FNF), a Fortune 500 provider of products and outsourced services and solutions to financial institutions and the real estate industry, today announced that it has signed a definitive agreement to acquire American Pioneer Title Insurance Company ("APTIC"), a wholly-owned subsidiary of The PMI Group, Inc. The timing of the closing of the transaction is dependent on the receipt of necessary regulatory approvals. The transaction will be immediately accretive to earnings for FNF.

APTIC is a 45-state licensed title insurance underwriter with significant agency operations and computerized title plant assets in the state of Florida. APTIC will operate under FNF's Ticor Title brand, strengthening Ticor as a competitive national brand with strong direct and agency operations and a total revenue base of more than $800 million. APTIC's Florida title plant assets in 45 counties, including all of the major metropolitan areas, will provide FNF with comprehensive title plant coverage in the state of Florida. FNF should ultimately be able to save at least $5 million in annual costs previously paid to third parties in Florida for the title information necessary to conduct a title search and ultimately issue a title insurance policy.

APTIC also has been a pioneer in the sale of automation software to county recorder's offices through its subsidiary Aptitude Solutions. Aptitude Solutions software products provide scanning technology to reduce paper flow, management of the internal flow of imaged documents through the recording process, electronic digital stamping, workflow tools, electronic recording, digital archiving and electronic recording of court case documents.

"The APTIC acquisition vaults FNF to the number one market share position in the state of Florida, with $321 million in pro forma 2002 title premiums and 28% market share," said Chairman and Chief Executive Officer William P. Foley, II. "We will own the number one market share position in each of the four states, California, Texas, Florida and New York, that produce nearly 50% of all title insurance premiums in the country. This also contributes significantly to our strategy of growing the Ticor brand to give us three truly national title brands in Fidelity National Title, Chicago Title and Ticor Title. The comprehensive Florida title plant assets will allow FNF to reduce our reliance on third party providers of title information in Florida. The Aptitude Solutions software solution for county recorders is still in its early stages and provides a potential growth opportunity outside of the state of Florida. While we are committed to growing the outsourced transaction processing revenue and thus the recurring revenue and earnings streams of the company, this acquisition signals our commitment to continue to strengthen our number one position in our core title insurance business through strategic acquisitions."

Fidelity National Financial, Inc., number 326 on the Fortune 500, is a provider of products and outsourced services and solutions to financial institutions and the real estate industry. The Company had total revenue of $5.7 billion and earned more than $665 million in the first nine months of 2003, with cash flow from operations of nearly $984 million for that same period. FNF is one of the world's largest providers of information-based technology solutions and processing services to financial institutions and the mortgage and financial services industries through its subsidiary Fidelity Information Services, Inc. Fidelity Information Services processes nearly 50

percent of all U. S. residential mortgages, with balances exceeding $2.5 trillion, has processing and technology relationships with 46 of the top 50 U. S. banks and has clients in more than 50 countries who rely on its processing and outsourcing products and services. More than 34 percent of the total dollar volume of all outstanding consumer loans in the country is processed on Fidelity Information Services software applications. Additionally, FNF is the nation's largest title insurance company and also provides other real estate-related services such as escrow, flood and tax certifications with life of loan monitoring, merged credit reporting, property valuations and appraisals, default management, relocation services, flood, homeowners and home warranty insurance, exchange intermediary services, mortgage loan aggregation and fulfillment, multiple listing services software, mortgage loan origination software, collateral scoring analytics and real property data. More information about the FNF family of companies can be found at www.fnf.com and www.fidelityinfoservices.com.

This press release contains statements related to future events and expectations and, as such, constitutes forward-looking statements. These forward-looking statements are subject to known and unknown risks, uncertainties and other factors that may cause actual results, performance or achievements of the Company to be different from those expressed or implied above. The Company expressly disclaims any duty to update or revise forward-looking statements. The risks and uncertainties which forward-looking statements are subject to include, but are not limited to, the effect of governmental regulations, the economy, competition and other risks detailed from time to time in the "Management's Discussion and Analysis" section of the Company's Form 10-K and other reports and filings with the Securities and Exchange Commission.

SOURCE: Fidelity National Financial, Inc.

CONTACT: Daniel Kennedy Murphy, Senior Vice President, Finance and Investor Relations, 904-854-8120, dkmurphy@fnf.com