**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: AMERIQUEST MORTGAGE CO. | ) | MDL No. 1715 |
| MORTGAGE LENDING PRACTICES | ) | Lead Case No. 05-CV-7097 |
| LITIGATION | ) | |
| | ) | Centralized before the |
| | ) | Honorable Marvin E. Aspen |

**CERTAIN THIRD-PARTY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO DISMISS AND FOR A SUGGESTION OF REMAND**

**INTRODUCTION**

Ameriquest's response to the present motion calculably avoids the most significant issue raised in the Moving Third-Party Defendants' motion: this MDL proceeding cannot continue on its present course unless the third-party defendants have an opportunity to mount a meaningful defense, *i.e.*, to assert (and have adjudicated) specific defenses for each of the hundreds of third-party claims brought by Ameriquest. Instead of addressing that issue, Ameriquest urges the Court to maintain the status quo under the illusory argument that the Court must address certain "common" issues. At root, Ameriquest's proposal represents a cynical approach that seems based on the belief that, if Ameriquest can force the third-party defendants to participate in litigation long enough (and force them to spend enough on legal fees), then Ameriquest can compel settlements – regardless of whether its third-party claims have merit. This Court should not endorse that approach.

*First*, the Court should not be under any illusions about Ameriquest's claims of "common" discovery and "common" issues. The discovery propounded by Ameriquest is not "common." As the Court can see for itself, it is case-specific discovery that seeks information and documents relating to hundreds of individual transactions. (*See* Mot. at Ex. I thereto [Dkt. 5101-3 and 5101-4]) Similarly, although Ameriquest repeatedly refers to "common" issues, in

the entirety of its response, it only identifies one such issue: whether closing protection letters create an indemnity obligation. Even that lone issue, however, is not "common." Far from it. At best, that issue impacts only one of the four sets of Moving Third-Party Defendants (*i.e.*, Fidelity), and even as to them the issues of the existence, terms, and scope of those letters is not common but rather turns upon applicable state law and underwriter-specific policies that varied by state and changed over time. The other three (MIS, Superior, and Northwest) are "closers," not underwriters. In short, Ameriquest's claims of "common" issues are vastly exaggerated.

*Second*, Ameriquest fails to explain how this Court (with its limited resources) can plausibly handle the many case-specific issues that will arise if Ameriquest's third-party claims proceed to litigation (a process that would involve hundreds of claims, discovery, choice-of-law issues, third-party discovery aimed at non-Illinois residents, etc.). Indeed, this Court has already stated that it will not address many case-specific matters, such as motions to dismiss Ameriquest's negligent misrepresentation claim, and case-specific motions for summary judgment.

Ameriquest's only suggestion on this point appears to be that the Court structure the MDL so that "common" issues are resolved first, and "case-specific" issues are resolved later. On the surface, that might have some appeal. But closer scrutiny reveals that it is fundamentally flawed and unfair. In practice, Ameriquest's plan looks like this: (1) the third-party defendants are compelled to participate in expensive and burdensome discovery; (2) the third-party defendants are compelled to respond to "global" motions for summary judgment; **and then** (3) the individual cases can be remanded to permit the third-party defendants to assert (for the very first time) why they should never have been sued in the first place. The Court should not let that happen, because it would undermine the basic tenets of due process afforded all litigants.

The Moving Third-Party Defendants have already been defendants for five years without being able to assert any specific defenses or arguments for dismissal. If the Court has any doubts about the unfairness of that posture, it need only examine the supposed "contract" that is the sole basis for 27 of Ameriquest's claims against MIS. [*See* dkt. 5101 at 13; dkt. 5101-6, 5101-7, 5101-8, 5101-9] That document (Exhibit M to the motion [Dkt. 5101-9]) is plainly not a "contract" between MIS and Ameriquest, and is limited, by its terms, to four states where *none* of the MIS transactions occurred. (*See* Ex. E hereto) Currently, MIS is precluded from seeking dismissal on those grounds. In its response, Ameriquest does not even attempt to explain why it sued MIS on the dubious basis of that document. Instead, Ameriquest simply suggests that MIS should be permitted to seek dismissal of those 27 claims *after* MIS participates in full discovery and briefing on "common" issues. With respect, that sounds like a "hanging, followed by a first class trial."

*Third*, in its response, Ameriquest recites a "parade of horribles" that will ensue if its third-party claims are litigated on a case-by-case basis.[1] [Dkt. 5123 at 11-12] Ameriquest's predications are misguided. Ameriquest correctly notes that litigating its third-party claims will involve case-specific dispositive motions, case-specific affirmative defenses, case-specific discovery and choice-of-law issues, and the potential retention of new local counsel. However, Ameriquest is wrong when it suggests that such efforts can be avoided by maintaining the status quo in this MDL. All of those things are going to happen regardless of whether those claims are litigated in state or federal court, in Chicago or elsewhere.

---

[1] Ameriquest states that there are only 39 pending TILA claims that involve third-party claims against the Moving Third-Party Defendants. [Dkt. 5123 at 5] With respect, remanding 39 cases to various federal courts is a far cry from the "plague of locusts" that Ameriquest makes it out to be.

The question before the Court is not "if" those things will happen, but "when" and "where" those things should happen. This Court cannot try these cases, and has previously indicated that it does not intend to adjudicate case-specific dispositive motions. [*See* dkt. 2553, p.1; 3311; 3503] That means these cases will inevitably be remanded for significant pre-trial and trial proceedings (which may require retention of new counsel, etc.). It seems clear that the courts that will eventually handle dispositive motions and trials are better equipped to handle the remaining pre-trial proceedings. This makes sense based both on judicial resources (this Court has limited resources, and no subpoena power over out-of-state witnesses) and judicial familiarity (*e.g.*, with local state law issues).

*Fourth*, Ameriquest makes the dubious argument that dismissal or remand would be "unfair" to Ameriquest because the third-party defendants should be forced to compensate Ameriquest for its work in settling the claims brought against Ameriquest. [Dkt. 5123 at 2, 15] With respect, the Moving Third-Party Defendants do not owe any debt of gratitude (or contribution to settlement) to Ameriquest. For the past five years, Ameriquest has maintained dubious claims against the Moving Third-Party Defendants. Ameriquest has seemingly made no substantive efforts to prove or disprove the veracity of the claims at issue, and has settled the vast majority of these underlying claims with release language expressly denying any fault. "Fairness" in any digestible form would dictate that Ameriquest serve up some indicia of liability other than its blanket assertion of, "if we had to pay, then you have to pay."

## ARGUMENT

### I. Ameriquest Has Not Responded To Many Of The Moving Third-Party Defendants' Arguments.

At the outset, it is instructive to consider what is *not* disputed by Ameriquest. Ameriquest's unwillingness (or, more likely, its inability) to respond to the Moving Third-Party

4

Defendants' points demonstrates the weakness of its position.

*First*, Ameriquest does not dispute the accuracy of the tables (Exhibits A-D) attached to Moving Third-Party Defendants' motion. [*See* dkt. 5101-1 at 1-35] Those tables detail which cases and claims have settled, and demonstrate – conclusively – that the vast majority of federal-law claims (*i.e.*, the TILA claims) have now been resolved. They provide a roadmap for determining which cases should be dismissed for lack of subject-matter jurisdiction.[2]

*Second*, Ameriquest has not provided any response to the Moving Third-Party Defendants' argument that they have a due process right to *timely* answer and defend the claims asserted against them on a case-by-case basis. Notably, Ameriquest simply ignores this argument altogether. Ameriquest never explains why it would be fair to require the Moving Third-Party Defendants to participate in expensive discovery before they are permitted to file individualized motions to dismiss.

## II. *Terry* Is A Poor Model To Influence Further Proceedings In This Case.

Ameriquest attempts to dodge the issues raised in the Moving Third-Party Defendants' motion by directing this Court to the *Terry* case and suggesting that this Court has "already ruled" on those issues. On this point, Ameriquest is wrong.

*First*, *Terry* is readily distinguishable from the third-party claims in the MDL. As the Court may recall, *Terry* was filed in 2008, and was litigated on a stand-alone basis (*i.e.*, not as part of the MDL proceeding) before Judge Chang before being reassigned to this Court in late 2011. In *Terry*, Ameriquest filed a complaint that included specific allegations about the third-

---

[2] Several cases have settled since Moving Third-Party Defendants filed their motion. For the Court's convenience, Moving Third-Party Defendants have attached red-lined versions of Motion Exhibits B-D (*i.e.*, the Fidelity, Superior and Northwest exhibits) reflecting the changes since they filed their motion. (*See* Exs. B1-D1 hereto) Exhibit A (*i.e.*, the MIS exhibit) has not changed. [Dkt. 5101-1 at 1-7]

party defendant in that case (Ticor).  In response, Ticor filed an individualized answer and motion to dismiss.[3]  (By contrast, in the MDL, Ameriquest has made only general allegations, and the third-party defendants have not filed case-specific answers or motions to dismiss).  In addition, in *Terry*, the parties engaged in extensive fact discovery regarding the transactions at issue, which has now been completed.  In the MDL, no such discovery has occurred.  Thus, when *Terry* came to this Court, it was in a very different procedural posture than the third-party claims asserted by Ameriquest in the FATPC.

***Second***, the two issues raised in Moving Third-Party Defendants' motion were ***not*** raised by Ticor when *Terry* was transferred to this Court.  Ticor did not assert that this Court should dismiss *Terry* for lack of subject-matter jurisdiction.  Nor did Ticor assert that this Court should issue a suggestion of remand to the MDL Panel.  Indeed, Ticor could ***not*** have raised that issue, because *Terry* was not (and is not) part of the MDL.  Thus, there was nothing to remand.  Instead, Ticor only addressed the issue raised by Ameriquest's motion to reassign – whether the requirements of Local Rule 40.4 were met so as to permit the reassignment of the *Terry* case to this Court.  Since the reassignment, *Terry* has neither been consolidated with another case in the MDL under Fed. R. Civ. P. 42(a) nor added to MDL-1715 by the MDL Panel.

Undeterred by those obvious distinctions, Ameriquest nonetheless claims that when it reassigned the *Terry* case, this Court held that doing so "would also make the most of coordinated discovery" between the *Terry* case and the MDL proceedings and as such, this Court should retain supplemental jurisdiction in order to continue to conduct coordinated discovery.  [Dkt. 5123 at 2 (quoting dkt. 5029 at 2)]  However, all fact discovery in the *Terry* case has *long been completed* and thus there can be no coordinated discovery between these cases.  On March

---

[3] Ticor moved to dismiss the equitable contribution and declaratory judgment claims, which this Court denied, without prejudice, when it ordered the reassignment to this Court.  [Dkt. 5029 at 2]

12, 2012, four months before the *Terry* case was reassigned, Judge Chang ordered that all fact discovery be completed by August 31, 2012. [N.D. Ill. Case No. 08-2475 Dkt. 760] When this Court reassigned the *Terry* case, it ordered that the "parties shall continue with discovery as ordered by Judge Chang." [Dkt. 5029 at 1] Thus, the August 31, 2012 fact discovery cut-off was unaffected by the reassignment. That deadline has long since passed. Since no more fact discovery can be taken in the *Terry* case,[4] Ameriquest's argument that the motion should be denied to allow this "coordinated discovery" to continue is simply without any merit.

The differences between the *Terry* case and all the other MDL cases are striking. They are the result of the *Terry* case being litigated for several years *outside* of the MDL proceeding. As such, Ameriquest's reliance on the *Terry* case in arguing how this Court should handle all the other MDL cases is akin to comparing a butterfly to caterpillars. Rather, if anything, this Court should look to its ruling in *Farmer v. Ameriquest Mortgage Co.*, 2011 WL 3021229 (N.D. Ill. Jul. 22, 2011). [*See* dkt. 4370] In that case, like all the other MDL cases, there was limited case-specific discovery, limited motion practice, and this Court had "not spent time familiarizing [itself] with the state law applicable to the remaining claims or the facts pertinent thereto." *Farmer*, 2011 WL 3021229 at *3.[5] [Dkt. 4370 at 6] As a result, this Court declined to exercise supplemental jurisdiction and dismissed the case so that it could be re-filed in state court. *Id.* at *2-*3. [Dkt. 4370 at 4-6] This Court should follow that example and do the same with the third-party state-law claims still pending before it.

---

[4] There is one deposition that was noticed prior to the August 31, 2012 deadline that has not yet been completed due to scheduling issues.

[5] Likewise, this Court has not spent time familiarizing itself with the factual and legal issues in the *Terry* case, as it was only recently transferred to this Court.

7

**III.     This Court Should Not Exercise Supplemental Jurisdiction Over The Claims In The FATPC.**

   **A.     The Analysis For Determining Whether To Exercise Supplemental Jurisdiction Is The Same In MDL and Non-MDL Cases.**

Ameriquest does not dispute – because it cannot – that federal question jurisdiction is lacking in the vast majority of the cases involving the Moving Third-Party Defendants.[6] Similarly, Ameriquest does not dispute – because it cannot – the well-established presumption (as recognized by this Court in *Farmer*) that state-law claims should be dismissed if the federal-law claims are resolved before trial. *See, e.g., Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) ("[T]he sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims.").

Instead, Ameriquest suggests that the rules governing supplemental jurisdiction are somehow "different" in MDL cases. On this point, Ameriquest is simply wrong. Ameriquest does not cite any authority to suggest that the analysis under 28 U.S.C. § 1367 is different in an MDL case. In fact, 28 U.S.C. § 1367(c) does not contain an exception for MDL cases:

   (c)    The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

      (1)    the claim raises a novel or complex issue of State law,

      (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

      (3)    the district court has dismissed all claims over which it has original jurisdiction,

---

[6] Ameriquest suggests that diversity jurisdiction might exist over some of its claims, and has submitted an affidavit from its trial counsel suggesting that Ameriquest could meet the $75,000 jurisdictional minimum by aggregating its claims. That affidavit of support does not provide a sufficient basis for exercising subject-matter jurisdiction. It is vague and conclusory. Moreover, Ameriquest cannot meet the jurisdictional minimum by aggregating its claims. *See, e.g., Middle Tenn. News Co., Inc. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001).

8

>> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Ameriquest also fails to cite any authority holding that the presumption of dismissal upon resolution of federal-law claims does ***not*** apply in MDL cases. Indeed, this Court's ruling in *Farmer* (which was an MDL case) states just the opposite. *See Farmer*, 2011 WL 3021229 at *2-*3. [Dkt. 4370 at 4-6]

A close review of the cases cited by Ameriquest shows that the analysis under 28 U.S.C. § 1367 (and the presumption against retaining supplemental jurisdiction) is the same – regardless of whether a case is part of an MDL or not. The holdings in those cases were the result of factors not present in this case. Specifically, the courts exercised supplemental jurisdiction in those cases because they had already devoted substantial time to addressing the merits of the parties' claims.

- Discovery on the state-law claims had already been completed or substantially completed. *See, e.g., Taflinger v. U.S. Swimming, Inc.*, 435 Fed. Appx. 559 (7th Cir. 2011); *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599 (7th Cir. 2008) ("noting that judicial economy is rarely a good reason to retain jurisdiction when a case is dismissed on the pleadings, before discovery even begins"); *see also In re Nigeria Charter Flights Contract Litigation*, 520 F. Supp. 2d 447 (E.D.N.Y. 2007) (retaining jurisdiction because, *inter alia*, discovery had already taken place).

- The federal court had already adjudicated some of the state-law claims or the state-law claims were ready for *immediate* adjudication. *See, e.g., Taflinger*, 435 Fed. Appx. 559; *cf. Timm v. Mead Corp.*, 32 F.3d 273 (7th Cir. 1994) (upholding retention of jurisdiction for such reason).

- The dispatched federal claims and remaining state-law claims were so entangled that the rejection of the federal claims was likely a *de facto* rejection of the state-law claims. *See, e.g., In re Repository Tech., Inc.*, 601 F.3d 710 (7th Cir. 2010); *cf. Grispino v. New England Mut. Life Ins. Co.*, 358 F.3d 16 (1st Cir. 2004) (upholding retention of supplemental jurisdiction because handling other MDL cases gave district court significant familiarity with issues).

As this Court noted in *Farmer*, those factors are not present here: discovery has barely

commenced, the merits of the state-law claims have not been addressed on any level, and the state-law third-party claims are not entangled with the plaintiffs' TILA claims. *See Farmer*, 2011 WL 3021229 at *2-*3. [Dkt. 4370 at 4-6]

In addition, this MDL case is fundamentally different from the MDL cases cited by Ameriquest. Cases such as *Ford Ignition Switch* and *In re Wilson* were product liability cases. In those cases, thousands of plaintiffs asserted virtually identical claims against a small group of defendants. *See In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 19 F. Supp. 2d 263 (D.N.J. 1998), *In re Wilson*, 451 F.3d 161 (3d Cir. 2006). Because those cases involved uniform manufacturing processes, uniform products, uniform (alleged) defects, uniform marketing materials (and, in *In re Wilson*, uniform medical causational issues), there was ample ground for "common" discovery and dispositive motion practice.

This case is a far cry from *Ford Ignition Switch* and *In re Wilson*. For starters, virtually all of the TILA claims against Ameriquest have settled, leaving only the third-party claims. (Put simply, the "shape" of this case was an hourglass, with many plaintiffs suing Ameriquest, and Ameriquest, in turn, suing many third-party defendants. The top half of that hourglass is now empty.) Unlike *Ford Ignition Switch* and *In re Wilson* (where the plaintiffs filed complaints with individualized factual allegations, which were *then* transferred into the MDL), the current third-party claims are generic in nature. Ameriquest has never leveled specific allegations or articulated specific grounds for liability in support of its third-party claims. Finally (and most importantly), this case does not involve a mass-produced product. The claims in the FATPC involve numerous different loan transactions, each of which involved different plaintiffs, closers, agents, brokers and underwriters. Although the nature of the claims is similar, liability in any particular transaction is not going to turn on a "common issue" (such as "was the ignition switch

in the 1991 Bronco unreasonably dangerous" or "did Wyeth's diet pills create an unreasonable risk of heart failure"). *See In re Ford Ignition Switch*, 19 F. Supp. 2d 263, *In re Wilson*, 451 F.3d 161. Rather, liability in any given case is going to turn on the evidence relating to the specific closing (*e.g.*, who handled the closing, were the proper forms available, were they properly filled out, were they presented to the borrowers, were confusing statements made by any parties present, etc.). Such issues are not ripe for "common" discovery or resolution.

### B. The Posture Of This Case Favors Relinquishing Supplemental Jurisdiction.

A federal court's discretion to retain supplemental jurisdiction under § 1367(c)(3) has been described narrowly by the Seventh Circuit:

> [The *Wright* court] identified three situations in which jurisdiction over supplemental claims should be retained even though the federal claims have dropped out: where the statute of limitations would bar the refiling of the supplemental claims in state court (in fact section 1367(d) explicitly toll the statute of limitations for 30 days after dismissal of a supplemental claim, to allow the plaintiff to refile the claim in state court without being time-barred); where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided.

*Garrity*, 479 F.3d at 906-07; *see also RWJ Mgmt. Co., Inc. v. BP Prod. N.A., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012). As Moving Third-Party Defendants explain in their motion, none of these circumstances fits the situation currently before the Court.

*First*, Ameriquest's claim that it will be prejudiced by the expiration of statutes of limitations in several states (including Alabama, California and Washington) is just plain wrong. Ameriquest has not identified even a single claim that may be subject to dismissal because of this issue. Not even one. Thus, Ameriquest's concern is purely speculative. Moreover, Ameriquest is wrong on the law. Ameriquest is protected by 28 U.S.C. § 1367(d), which tolls state statutes of limitation with respect to pendent claims in federal cases. Section 1367(d) is "the assurance

11

that state-law claims asserted under § 1367(a) will not become time barred while pending in federal court." *Jinks v. Richland County, S.C.*, 538 U.S. 456, 464 (2003). The Alabama Supreme Court has recently recognized the pre-emptive effect of § 1367(d), and held that Alabama's statutes of limitations are tolled by the pendency of a federal court case. *See, e.g., Roden v. Wright*, 611 So. 2d 333, 333 (Ala. 1992); *cf. Rester v. McWane, Inc.*, 962 So. 2d 183, 186 (Ala. 2007). In addition, the other states identified by Ameriquest utilize equitable tolling even in the absence of savings statutes.[7] Thus, even without § 1367, Ameriquest is protected. Finally, even if Ameriquest were correct on the law (and it is not), its speculative concern would implicate only 59 of the hundreds of claims involving the Moving Third-Party Defendants. That hardly provides a basis for denying the motion in its entirety.

| STATE | MIS | FIDELITY | SUPERIOR | NORTWEST |
|---|---|---|---|---|
| AL | 3 | 26 | 8 | 6 |
| CA | 0 | 2 | 0 | 0 |
| FL | 1 | 3 | 1 | 0 |
| MN | 0 | 1 | 0 | 5 |
| SC | 0 | 1 | 0 | 0 |
| WA | 0 | 2 | 0 | 0 |

***Second***, Ameriquest cannot rely on "judicial economy" to justify this Court's exercise of supplemental jurisdiction. Moving Third-Party Defendants acknowledge that the exercise of supplemental jurisdiction may be appropriate where "substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided." *See Garrity*, 479 F.3d at 906-07. Contrary to Ameriquest's argument, in this case, this factor strongly favors declining to exercise jurisdiction because the

---

[7] *See, e.g.*, *Addison v. State of Cal.*, 578 P.2d 941, 943-44 (Cal. 1978); *Machules v. Dept. of Admin.*, 523 So. 2d 1132, 1133-34 (Fla. 1988); *Hooper v. Ebenezer Sr. Serv. & Rehab. Center*, 687 S.E.2d 29, 32 (S.C. 2009); *St. Paul, M. & M. Ry. Co. v. Olson*, 91 N.W. 294, 296 (Minn. 1902).

12

Court's approach thus far has been to use the MDL as a forum for mediation. By design, very little has been done to litigate the merits of the parties' claims (including the third-party claims). Indeed, this Court noted as much in the *Farmer* ruling. *See Farmer*, 2011 WL 3021229 at *2-*3. [Dkt. 4370 at 4-6]

***Third***, comity favors dismissal. Other than a bald statement that "the Motion does not identify any novel or complex area of state law which is better left for state courts to decide," Ameriquest has made no substantive argument that its claims do not invoke complex state-law issues. [*See* dkt. 5123 at 15] Instead, Ameriquest proffers the misleading contention that "if the MDL is disbanded, state courts would be left to interpret TILA." (*Id.*) That is simply wrong. The reason why this Court should not exercise supplemental jurisdiction is because the TILA claims in nearly all the cases have been dismissed. All that remains are state-law breach of contract and tort claims.

## IV. This Court Should Suggest Remand To The Transferor Courts Of All Cases Still A Part Of The MDL.

Remand of MDL cases to the appropriate transferor courts is a matter of "when" not "if." Every MDL case reaches a juncture at which the Panel must remand back to the transferor court. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36-37 (1998). Even before an MDL case reaches this point of departure, the Panel has the discretion to remand back to a transferor court and any clear abuse of this discretion may lead to the issuance of a writ of mandamus. *See In re Patenaude*, 210 F.3d 135 (3d Cir. 2000). The applicable statute even goes so far as to provide "that the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded." *See* 28 U.S.C. § 1407(a). Additionally, the Panel places "great weight" on suggestions of remand from district courts. *Patenaude,* 210 F.3d at 141. As the *Manual for Complex Litigation*

13

explains:

> Section 1407 directs the Panel to remand, after appropriate pretrial proceedings, actions not filed or terminated in the transferee court to the respective transferor courts for further proceedings and trial. When this should be done will depend on the circumstances of the litigation. In some cases, remands have been ordered relatively early, while substantial discovery remained to be done; in others, virtually all discovery had been completed and the cases were ready for trial at the time of remand to the transferor districts. Some of the constituent cases may be remanded, while others are retained for further centralized pretrial proceedings.

*Manual for Complex Litigation* (4th) § 20.133. The Panel's discretion to remand in such a situation "generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL" and "[t]he Panel has discretion to remand, for example, when everything that remains to be done is case-specific." *In re Bridgestone/Firestone, Inc. ATX, ATX II & Wilderness Tires Prods. Liab. Litg.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001).

In this case, the current MDL posture has produced a deadlock: Ameriquest's third-party claims must proceed to litigation (which necessitates individualized responsive pleadings), but the consolidated nature of the MDL makes it difficult (if not impossible) for this Court to fully consider and rule upon the sheer volume of the motions that will likely be filed. In short, if there is any benefit to the MDL when looked at as a whole (and not just from Ameriquest's point of view), it is far outweighed by the burdens it is causing.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein and in their motion, Moving Third-Party Defendants respectfully move this Court pursuant to Rule 12(b)(1) to dismiss the third-party claims for which the underlying federal claims have been dismissed, and to issue a suggestion of remand to the MDL Panel for any cases as to which the third-party claims are not dismissed.

Dated: October 31, 2012                                Respectfully submitted,

        /s/Timothy D. Elliott
        Timothy D. Elliott (ARDC 6237023)
        RATHJE & WOODWARD, LLC
        300 East Roosevelt Rd., Suite 300
        Wheaton, IL 60187
        Telephone: (630) 668-8500
        *Attorneys for Mortgage Information Services*

        /s/ Wayne Holstad
        4501 Allendale Drive
        St. Paul, MN 55127
        Telephone: (651) 287-9821
        *Attorney for the Northwest Third-Party Defendants*

        /s/Christopher H. Murphy
        Cozen O'Connor
        333 West Wacker Drive, Suite 1900
        Chicago, Illinois 60606
        Telephone: (312) 382.3155
        *Attorney for Superior Third Party Defendants*

        /s/Albert E. Fowerbaugh, Jr.
        Butler Rubin Saltarelli & Boyd LLP
        70 West Madison Street, Ste. 1800
        Chicago, IL  60602-4257
        Telephone:  (312) 696-4440
        *Attorney for Fidelity Third Party Defendants*

**CERTIFICATE OF SERVICE**

       I certify that on the 31st day of October, 2012, the foregoing Certain Third-Party Defendants' Reply in Support of Their Motion to Dismiss and for a Suggestion of Remand was filed electronically. Notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    /s/ Timothy D. Elliott
Timothy D. Elliott (ARDC 6237023)
RATHJE & WOODWARD, LLC
300 East Roosevelt Rd., Suite 300
Wheaton, IL 60187
Telephone: (630) 668-8500