# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) MDL No. 1715 ) Lead Case No. 05-CV-7097 ) ) Centralized before the ) Honorable Marvin E. Aspen |

**CERTAIN THIRD-PARTY DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR A SUGGESTION OF REMAND**

Third-Party Defendants Mortgage Information Services, Inc. ("MIS"), the Fidelity Third-Party Defendants,[1] the Superior Third-Party Defendants,[2] and the Northwest Third-Party Defendants[3] (collectively referred to herein as the "Moving Third-Party Defendants") respectfully move this Court: (1) pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss certain third-party claims asserted against them for lack of subject matter jurisdiction; and (2) pursuant to R.P.J.P.M.L. Rule 10.1 to issue a suggestion of remand to the Judicial Panel on Multidistrict Litigation ("MDL Panel") with respect to any remaining third-party claims against them.

**INTRODUCTION**

In February 2010, liaison counsel for the third-party defendants filed a motion (Dkt. 3410) which asked this Court to remand the Opt-Out Plaintiffs' cases to the transferor courts. That motion was prompted by the considerable difficulty associated with filing answers (and affirmative defenses, and individualized motions to dismiss) with respect to the generalized

---

[1] The "Fidelity Third-Party Defendants" are Alamo Title Ins. Co., Am. Pioneer Title Ins. Co., Chicago Title Co., Chicago Title Ins. Co., Chicago Title Ins. Co. of Mich., Commonwealth Land Title Co., Commonwealth Land Title Ins. Co., Fidelity Nat'l Title Co., Fidelity Nat'l Title Ins. Co., Fidelity Nat'l Title Ins. Co. of NY, Lawyers Title Ins. Co., Sec. Union Title Ins. Co., Ticor Title Ins. Co. and Transnat'l Title Ins. Co.
[2] The "Superior Third-Party Defendants" are Superior Closing Serv., LLC, Heights Title Agency, Inc., Battersby Title, Inc., Colonial Title & Escrow Inc., Nat'l Real Estate Info. Serv. of NJ, Towne & Country Land Title Agency, Inc., Taylor Abstract Co., Title-Tech Networks, Anchor Title, and Equititle.
[3] The "Northwest Third-Party Defendants" are Northwest Title and Escrow Corp. and CloseNet, LLC.

allegations in the Fifth Amended Consolidated Third-Party Complaint ("FATPC"). On April 7, 2010, this Court partially granted that motion. The Court stayed any obligation to answer the FATPC, and took the request for remand under advisement. (Dkt. 3503; Ex. G hereto) At the time, the mediation process in this case was just beginning. Presumably, the Court took the remand issue under advisement because it wanted the mediation process to run its course.

Much has changed since April 2010, and the Moving Third-Party Defendants now respectfully submit that the Court should (and, in fact, must) now address the issue it took under advisement in April 2010. By all accounts, the mediation process in these cases is winding down, and the Court must now chart a course for future proceedings in these cases. Indeed, Judge Denlow noted as much in a recent order denying a motion by Ameriquest to compel discovery from the Fidelity Third-Party Defendants. (Dkt. 5090) Therein, Judge Denlow noted that further discovery on third-party claims should be delayed

> to permit the parties in this MDL to clarify the scope of proceedings either by agreement or by submitting a motion to Judge Aspen. The scope of discovery should be consistent with the scope of the third-party proceedings that Judge Aspen will allow to take place in this court.

The Moving Third-Party Defendants bring this motion because it is clear that Ameriquest's remaining third-party claims cannot be litigated in this MDL proceeding. The simple truth is that the mediation process has dramatically altered the landscape in these cases. The vast majority of claims against Ameriquest and Argent have been settled and dismissed. Ameriquest has advised the Court that it has settled 29 borrower class actions and 1488 Opt-Out Plaintiff claims. (Dkt. 5069) As a result, the balance of this MDL has shifted. Before mediation, the vast majority of the claims before this Court were federal law TILA claims asserted against Ameriquest and Argent. Now, the vast majority of the claims before this Court

are state-law third-party claims stemming from loan transactions in at least 28 different states. That shift has important repercussions with respect to the continued viability of this MDL case.

***First***, in the vast majority of cases, the only remaining claims are state-law third-party claims. In those cases, there does not appear to be any continuing viable claim to federal subject matter jurisdiction. *See In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, No. 05-CV-7097, 2011 WL 3021229 (N.D. Ill. July 22, 2011) (dismissing opt-out plaintiff Rita Farmer's case once all federal law claims were resolved) ("*Farmer/Ameriquest*").

***Second***, because any future proceedings will involve case-specific pleading, motion practice and discovery, the remaining cases should be remanded to the transferor courts. Those courts are typically (but not always) located in the state where the disputed loan transactions occurred. Accordingly, they are presumably in a better position to adjudicate state law issues, supervise case-specific discovery, and compel discovery from third parties (such as title companies, banks, notaries, and now-dismissed borrower plaintiffs).

## FACTUAL AND PROCEDURAL BACKGROUND

### The MDL

This MDL action was initiated in December 2005, and was occasioned by the filing of hundreds of lawsuits under the Truth In Lending Act against the Ameriquest entities. The actions transferred into this MDL included several class actions and hundreds of opt-out claims filed by individual borrowers. When the MDL was initiated, Ameriquest had not yet asserted the third-party claims at issue. The order creating this MDL did not address third-party claims.

### Ameriquest And Argent Assert Third-Party Claims *En Masse*

In July 2007, Ameriquest and Argent filed a consolidated third-party complaint. (Dkt. 551) That third-party complaint consisted of a generic set of allegations that purported to state

claims against various parties (*e.g.*, title insurers, closing agents, brokers, attorneys) who had participated in the loan transactions that formed the basis of the claims asserted against Ameriquest and Argent. The third-party complaint included a spreadsheet that listed each loan transaction and the third-party defendants who were being sued in connection with those transactions. (Dkt. 551) Ameriquest and Argent claimed that the allegations in the consolidated complaint were generally applicable to every third-party defendant and every transaction.

Ameriquest and Argent subsequently filed four amended consolidated third-party complaints. In each complaint, they added additional transactions and, in some instances, added additional defendants for previously-identified transactions. The operative complaint at this time is the FATPC, which was filed on June 23, 2009. (Dkt. 2319) The FATPC contains only state law claims. It does not contain any federal law claims, and it does not allege the existence of diversity jurisdiction. With respect to subject matter jurisdiction, the FATPC simply states that jurisdiction is proper under Federal Rule of Civil Procedure 14. (Dkt. 2319 at ¶ 8)

In mid-2009, the third-party defendants objected to Ameriquest's ever-evolving and ever-expanding third-party claims. In response, this Court set a September 18, 2009 deadline for Ameriquest to add any new parties or transactions to the FATPC. (Dkt. 2312) That deadline has now come and gone, and Ameriquest is now barred from adding new parties or transactions beyond those already identified in the FATPC.

**The Court Permits The Third-Party Claims To Proceed On A Consolidated Basis**

In late 2007, several of the third-party defendants (including Northwest) began to file consolidated answers to the consolidated third-party complaint. (Dk. 1656) February 11, 2008, this Court issued an order clarifying how Ameriquest's third-party claims would proceed. (Dkt. 1958) In that order, the Court: (1) ordered the third-party defendants to participate in mediation;

4

(2) ordered the parties to participate in "limited, informal discovery to facilitate the mediation;" (3) denied Ameriquest's request that the third-party defendants be bound by prior discovery orders; (4) ordered the third-party defendants to organize themselves and nominate a liaison counsel; (5) ordered the third-party defendants to "file a single, consolidated motion to dismiss based on TILA defenses; and (6) indicated that the third-party defendants could file an additional round of consolidated motions at a later date. (*Id.* at 4-5) The Court concluded that "[i]n light of the pending mediation and anticipated motions to dismiss, we decline to set more specific parameters for discovery in the third-party action." (*Id.* at 5)

Pursuant to the Court's order, the third-party defendants filed consolidated motions to dismiss with respect to two of the five consolidated third-party complaints (the others were superseded by amendment). On October 14, 2008, this Court partially granted a motion to dismiss Ameriquest's Second Amended Consolidated Third-Party Complaint. On January 19, 2010, the Court partially granted a motion to dismiss the FATPC. (Dkt. 3311)

- **Count I.** The Court declined to dismiss Ameriquest's breach of contract claim, and held that Ameriquest was not required to specifically identify every contract at issue.

- **Count II.** The Court dismissed Ameriquest's negligence claim because Ameriquest failed to identify a non-contractual duty owed by the third-party defendants.

- **Count III.** The Court declined to dismiss Ameriquest's negligent misrepresentation claim. The Court acknowledged the economic loss rule (prevalent in many states) and various exceptions thereto (recognized in various states), and found that the application of the rule and exceptions needed to be conducted on a case-by-case basis.

**The Court Stays The Third-Party Defendants' Obligation To Answer The FATPC And Reserves Ruling On The Third-Party Defendants' Motion To Remand**

After the Court's January 19, 2010 ruling on the motion to dismiss the FATPC, the third-party defendants faced the prospect of filing answers to Counts I and III of the FATPC. In February 2010, liaison counsel for the third-party defendants filed a motion (Dkt. 3410) which

5

asked this Court to remand these cases before requiring the third-party defendants to answer or otherwise respond to the FATPC.[4] On April 7, 2010, this Court partially granted the third-party defendants' motion. (Dkt. 3503; *see* Ex. H) The Court stayed any obligation to answer the FATPC, and took the request for remand under advisement pending mediation.

### Most Of The Plaintiffs' Claims Are Resolved Through Mediation

For much of 2010, 2011 and 2012, this MDL has provided a forum for mediation. Mediation has been largely successful with respect to the claims against the Ameriquest entities. The vast majority of those claims have now been settled and dismissed. As a result, the vast majority of the claims before this Court (and, in many individual cases, the *only* claims before the Court) are state-law third-party claims against the third-party defendants.

- In the FATPC, Ameriquest named MIS as a third-party defendant in connection with 94 different transactions (which occurred in 15 different states). Ameriquest has now settled the claims against it in 86 of the 92 remaining transactions.[5] For those 86 loan transactions, the only remaining claims are state-law third party claims.

- In the FATPC, Ameriquest named the Superior Third-Party Defendants as third-party defendants in connection with 94 transactions (in nine different states). Ameriquest has now settled the claims against it with respect to 87 of those transactions. For those 87 transactions, the only remaining claims are state-law third party claims.

- Ameriquest sued the Fidelity Third-Party Defendants in connection with 281 transactions (in 24 states). Ameriquest has settled the claims against it in 252 of those transactions. For those 252 transactions, the sole remaining claims are state-law third party claims.

- Ameriquest named the Northwest Third-Party Defendants as third-party defendants in connection with 58 transactions (in 5 states). Ameriquest has now settled the claims against it in 51 of the 57 remaining transactions.[6] As to those 51 transactions, the state-law third party claims are the only claims remaining.

---

[4] For the Court's convenience, the Moving Third-Party Defendants are attaching copies of the original motion, and the reply in support as Exhibits E and G hereto. Rather than repeat the arguments stated therein, they adopt and incorporate them by reference herein. Ameriquest's response is attached as Ex. F.
[5] One case, *Wertepny v. Ameriquest*, No. 05-CV-1402, was transferred out of the MDL. Another claim, *Champion v. Ameriquest,* No. 08-CV-3960, was removed pursuant to an errata notice. (Dkt. 3597, 3831) Thus, 92 claims are now pending against MIS.
[6] One case, *Ferguson v. Ameriquest,* No. 04-cv-7627, was transferred out of the MDL. (Dkt. 3500)

(*See* Exs. A-D hereto) In the FATPC, Ameriquest claims that its "damages" on its third-party claims are the amounts it paid to resolve the claims asserted against it. (Dkt. 2913) The Moving Third-Party Defendants have been informed by Ameriquest that it has settled the claims against it for substantially less than $75,000 per claim.

### Discovery To Date

To date, very little discovery has occurred with respect to the third-party claims. In July 2009, Judge Denlow ordered Ameriquest to exchange loan files and "contracts" with any third-party defendants who requested such an exchange, and ordered the parties to conduct a Rule 26(f) conference. (Dkt. 2957) On December 14, 2009, Judge Denlow ruled that, with the exception of those limited exchanges, "no other discovery shall be conducted in this MDL proceeding with respect to Plaintiffs' opt-out claims and the corresponding Third Party claims, until the completion of mediation proceedings." (Dkt. 3268 at 3)

Despite that order, in August 2012, Ameriquest began to serve case-specific discovery requests on some of the Moving Third-Party Defendants. (*See* Ex. I) The Fidelity Third-Party Defendants served limited responses (which, they believed, were consistent with Judge Denlow's prior orders). Ameriquest moved to compel. On September 20, 2012, Judge Denlow denied that motion and stated that further discovery should proceed only after this Court established the scope of future litigation in the MDL with respect to third-party claims. (Dkt. 5090)

### ARGUMENT

I.  **This Court Should Decline To Exercise Supplemental Jurisdiction Over The Claims In The FATPC And Dismiss Them For Lack Of Subject-Matter Jurisdiction.**

Ameriquest's third-party claims arise under state law. There is no federal question jurisdiction over those claims, and Ameriquest has not alleged (because it cannot allege) diversity jurisdiction. The FATPC alleges that jurisdiction is based on Fed. R. Civ. P. 14.

However, that rule does not address subject matter jurisdiction. Thus, the only basis for federal jurisdiction is supplemental jurisdiction under 28 U.S.C. § 1367. However, supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997) (internal citations omitted). Under Section 1367(c):

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction . . . .

28 U.S.C. § 1367. Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction a federal court should consider and weigh in each case, ***and at every stage of the litigation***, the values of judicial economy, convenience, fairness and comity." *Int'l College of Surgeons*, 522 U.S. at 173 (emphasis added; internal citations omitted). In short, courts must re-examine the exercise of supplemental jurisdiction throughout the course of a lawsuit to ensure its continued propriety.

Section 1367 does not vest courts with unlimited discretion. In fact, far from it. The parameters of a court's discretion under section 1367 are well-defined. As this Court noted in the *Farmer/Ameriquest* decision, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." 2011 WL 3021229 at *3 (citing *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)). Indeed, the Seventh Circuit has repeatedly emphasized, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co., Inc. v.*

*BP Prod. N.A., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (internal citations omitted).[7] This presumption is "based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co., Inc.*, 672 F.3d at 479 (internal citations omitted).

The Seventh Circuit has identified three circumstances under which this presumption may be rebutted: (1) where the statute of limitations has run on a pendent claim, precluding the filing of a separate state court suit; (2) where substantial judicial resources have already been committed so that sending the case to another court will cause a substantial duplication of effort; and (3) when it is absolutely clear how the pendent claims can be decided. *Id.* at 480 (citing *Sharp Elec. Corp.*, 578 F.3d at 514-15). None of those circumstances are present in this case. Quite the opposite: the factors identified in Section 1367(c) and by the Seventh Circuit all favor declining the exercise of supplemental jurisdiction in instances where a borrower's TILA claim has been dismissed and the only claims left are state-law third-party claims. (*See* Exs. A-D and claims noted as "settled" thereon)

***First***, as set forth in Exhibits A-D, the TILA claims against Ameriquest have been dismissed in the vast majority of the transactions in which the Moving Third-Party Defendants are being sued. In those instances, the only claims before this Court are state-law claims, and no basis for subject matter jurisdiction (other than supplemental jurisdiction) exists.

***Second***, Ameriquest's claims do not present narrow, simple, or well-settled questions of state law. Those claims arise under the laws of at least 28 states. (*See* Exs. A-D) If this Court retains jurisdiction, it will have to deal with varying case law, statutes, pleading elements, burdens of proof, and choice-of-law rules for each cause of action in each state, including the following:

---

[7] *See also Sharp Elec. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009); *Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008); *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008); *Miller Aviation v. Milwaukee Cty. Bd. of Super.*, 273 F.3d 722, 731 (7th Cir. 2001); *Wentzka v. Gellman*, 991 F.2d 423, 425 (7th Cir. 1993); *Manor Healthcare Corp. v. Guzzo*, 894 F.2d 919, 922 (7th Cir. 1990).

- Indiana does not generally recognize the tort of negligent misrepresentation. *See Jim Barna Log Sys. Midwest, Inc. v. General Cas. Ins. Co. of Wisc.*, 791 N.E.2d 816, 830 (Ind. App. Ct. 2003). There are limited exceptions to this general rule, such as certain contractual professional relationships (*e.g.*, brokers and attorneys), *Essex v. Ryan*, 446 N.E.2d 368, 370-71 (Ind. App. Ct. 1983). Whether Indiana would allow Ameriquest's negligent misrepresentation claim to stand is doubtful.

- Under New York law, a plaintiff in a negligent misrepresentation case must allege the existence "of a special or privity-like relationship imposing a duty on the defendant." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011). The presiding court will have to determine whether Ameriquest's allegations suffice to establish a "privity-like relationship" under New York law.

- Ohio and Georgia have not permitted negligent misrepresentation claims (at least to date) based on omissions. *See Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 889 N.E.2d 1066, 1077 (Ohio App. 2008); *Home Depot U.S.A., Inc. v. Wabash Nat'l Corp.*, 724 S.E.2d 53, 60-63 (Ga. App. 2012). Ameriquest's claim is based (at least in part) on omissions. The presiding court will have to determine whether it will be permitted in those states.

Retention of supplemental jurisdiction by this Court would require it to wade through such state law issues and ascertain what each state court would do.

***Third***, dismissal will not prejudice Ameriquest with respect to limitations periods. That is because Illinois (and other jurisdictions) toll the limitations period during the pendency of a federal court suit. *See* 735 ILCS 5/13-207; *Davis*, 534 F.3d at 654; Ind. C. § 34-11-8-1; *see Torres v. Parkview Foods*, 468 N.E.2d 580, 582 (Ind. App. 1984); Ga. Code § 9-2-61; *Fontanella v. Marcucci*, 877 A.2d 828, 834 (Conn. App. 2005).[8]

***Fourth***, declining to exercise jurisdiction will not create duplicative work for the new court(s). To be sure, the third-party claims have been before this Court (in some instances) for five years. During that time, the Court has issued hundreds of orders, and the parties have submitted countless motions. However, "[e]valuating considerations of judicial effort is not just

---

[8] The Moving Third-Party Defendants believe that some of Ameriquest's third-party claims were untimely when they were originally filed in this Court. However, the Moving Third-Party Defendants do not believe that Ameriquest will face any ***additional*** statutes of limitations challenges by virtue of a dismissal by this Court.

a matter of toting up months or motions or the page counts of judicial orders." *RWJ Mgmt. Co., Inc.*, 672 F.3d at 481. In this case, the vast majority of the Court's (and parties') efforts have been devoted to mediating, settling and dismissing various claims. By design, this Court has avoided delving into the merits of Ameriquest's third-party claims, and has declined to rule on various legal issues that might require a case-by-case analysis. (*See* Dkt. 3311, 3503)

When this Court dismissed the Rita Farmer case from this MDL, it noted that "[w]e have not spent time familiarizing ourselves with the state law applicable to the remaining claims or the facts pertinent thereto. Accordingly, remanding this case would further the interests of judicial economy, as well as comity." *Farmer/Ameriquest*, 2011 WL 3021229 at *3. The Moving Third-Party Defendants respectfully submit that the Court's statements in *Farmer/Ameriquest* are equally true here. There has been almost no case-specific discovery or motion practice before this Court with respect to the third-party claims. If these cases are dismissed and re-filed, the new court(s) are unlikely to duplicate work or effort already incurred on the third-party claims.

***Fifth***, because the parties are not yet at issue and because discovery is just beginning, this is not a case where it "is absolutely clear" how the third-party claims against the Moving Third-Party Defendants should be resolved.

## II. Any Claims Not Dismissed Should Be Remanded To The Transferor Courts.

As set forth above, many of the individual cases in this MDL have been settled. It is clear, however, that there are certain claims (including those asserted against the Moving Third-Party Defendants) that are *not* likely to be settled. So the question now becomes: how (and where) should Ameriquest's remaining third-party claims be litigated. For the reasons set forth herein, the clear answer is that if they are not dismissed, they should be remanded.

The "power to remand a case to the transferor [court] lies solely" with the MDL Panel. *In re Bridgestone/Firestone, Inc. ATX, ATX II and Wilderness Tires Prods. Liab. Litig.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001). The MDL Panel has "consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate." *In re Managed Care Litig.*, 416 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006); R.P.J.P.M.L. 7.6(d), 199 F.R.D. 425 (2001) (rev. Dec. 1, 2009).

"In determining whether to issue a suggestion for remand to the Panel, [courts are] guided by the standards for remand employed by the Panel." *In re Bridgestone*, 128 F. Supp. 2d at 1197. Where pretrial proceedings in the MDL have not been concluded, "the question of whether remand is nevertheless appropriate is left to the discretion of the Panel." *Id.* "The exercise of that discretion generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL." *Id.* "The Panel has discretion to remand, for example, when everything that remains to be done is case-specific." *Id.* For example, if remaining discovery to be conducted is "core" discovery, a suggestion of remand is not appropriate. However, if the remaining discovery is case-specific, then a suggestion of remand may be warranted. *See id.* at 1198.

The next step with respect to the claims against the Moving Third-Party Defendants is not further mediation; it is litigation on the merits of each individual claim. Indeed, Ameriquest has already begun serving case-specific discovery requests on the Moving Third-Party Defendants. (*See* Ex. I) Ameriquest is also asking for an aggressive schedule that calls for an April 30, 2013 fact discovery cutoff, and a May 31, 2013 deadline for motions for summary judgment. (Dkt. 5069 at 5) Thus, as Judge Denlow noted, this is the appropriate time to address the scope of future proceedings with respect to third-party claims.

A.  **The Third-Party Claims Cannot Proceed Without Case-Specific Pleading.**

These cases cannot proceed further without affording the Moving Third-Party Defendants an opportunity to file case-specific answers or motions to dismiss the FATPC. Indeed, the Moving Third-Party Defendants have been involved in this case since 2007 – *i.e. for nearly five years* – without ever being able to file case-specific pleadings or assert case-specific defenses or arguments. This is highly prejudicial, because many of the claims against the Third-Party Defendants are utterly meritless. Two examples make the point.

- Third-Party Defendant Heights Title was named as a third-party defendant for one loan transaction, that of plaintiff Dorothy Stevens. Stevens was a borrower class representative in *Saunders v. Ameriquest*, 05-CV-1126 (N.D. Ohio). The third-party claim against Heights Title fails for several reasons. *First*, the allegations in the complaint were all related to servicing and origination. (*See* Ex. J) *Second*, upon information and belief, Stevens opted-in to the class settlement. Class claims are not recoverable against the Third-Party Defendants. *Third*, the Stevens loan was a purchase transaction, not a refinance. (*See* Ex. K) That is fatal because Ameriquest's third-party claims hinge on claims for rescission under TILA. However, rescission is not an available remedy in a *purchase* transaction.

- Ameriquest claims that MIS breached its "contract" with Ameriquest with respect to 92 different transactions. In response to an order from this Court, Ameriquest produced its alleged "contract" for each transaction. (*See* Ex. L) Ameriquest disclosed that its "contract" with MIS for 88 transactions (and its sole contract with MIS for 27 of those transactions) was the document attached hereto as Exhibit M. Exhibit M is plainly not a "contract" between MIS and Ameriquest. Not even close. MIS is not a signatory to that document, and the document is limited to transactions in Iowa, Minnesota, Missouri and Wisconsin. (*See* Ex. M at 3) *None* of the 92 remaining MIS transactions occurred in those four states.

To date, the Moving Third-Party Defendants have not been able to bring such deficiencies to the Court's attention, or secure dismissal based upon those deficiencies.

Ameriquest now wants to proceed to case-specific fact discovery (thus forcing the Moving Third-Party Defendants to incur additional significant legal fees) without affording the Moving Third-Party Defendants an opportunity to provide an answer and defenses (under Fed. R. Civ. P. 8) or test the validity of the claims asserted against them (under Fed. R. Civ. P. 12).

13

That proposal is not fair to the Moving Third-Party Defendants. It deprives them of due process, is not consistent with the Rules of Civil Procedure, and is not consistent with 28 U.S.C. § 1407 (which calls for MDL proceedings to "promote the just and efficient conduct" of actions).

"The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him *and opportunity to meet it*." *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976) (internal quotation omitted) (emphasis added). "The Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465 (2000). "The purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (citing *Greene v. Emersons, Ltd.*, 86 F.R.D. 66, 73 (S.D.N.Y. 1980). The Seventh Circuit has stated, "[i]f the allegations of a complaint fail to establish the requisite elements of the cause of action, our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility." *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 553 (7th Cir. 1980); *see also Rutman Wine Co.*, 829 F.2d at 738 ("[I]t is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery.").

As discussed in the third-party defendants' February 2010 motion (*see* Ex. E hereto), it is impossible for the Moving Third-Party Defendants to file a consolidated answer. Rule 8(b) requires a party answering a pleading to "state in short and plain terms its defenses to each claim asserted against it...and admit or deny the allegations against it by an opposing party" and a "denial must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8. In responding to a pleading, a party *must* affirmatively state any avoidance or affirmative defense. Fed. R. Civ.

P. 8(c)(1) (emphasis added). The Moving Third-Party Defendants cannot comply with those obligations if they are required to file consolidated answers.

### B. Any Further Discovery In These Cases Will Necessarily Be Case-Specific.

Any future discovery will necessarily reach the issues in each individual case. That is conclusively demonstrated by Ameriquest's recently-served discovery, which demands that MIS produce detailed information and documents for 89 individual transactions.

- **Interrogatory No. 1**. "For each of the loans listed on Ex. A [which lists 89 loans], Identify all facts, including all related Documents, Persons having knowledge of such facts, and Communications upon which You rely in support of Your contention (if any) that [MIS] did not participate in dating or distributing the Notice of Right to Cancel form." (*See* Ex. I at 4)

- **Request for Production No. 1** "Any and all Documents Relating To the loans in Ex. A [which lists 89 transactions] including but not limited to computer records, communications about scheduling the closing, timesheets, invoices, closing files and loan files." (*See* Ex. I at 15)

Such case-specific discovery will swamp this Court, because Ameriquest has asserted hundreds of claims against the Moving Third-Party Defendants, and the Moving Third-Party Defendants may have unique factual and legal defenses and positions with respect to each claim. Discovery will reflect those differences. The Court will inevitably be required to handle numerous case specific motions, and address case-specific factual and legal issues.

### CONCLUSION

WHEREFORE, for the reasons set forth herein, the Moving Third-Party Defendants respectfully move this Court pursuant to Rule 12(b)(1) to dismiss the third-party claims identified as "settled" on Exhibits A-D hereto, and to issue a suggestion of remand to the MDL Panel that any cases as to which the third-party claims are not dismissed.

Dated: September 24, 2012　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/Timothy D. Elliott
　　　　　　　　　　　　　　　　　　　　Timothy D. Elliott (ARDC 6237023)
　　　　　　　　　　　　　　　　　　　　RATHJE & WOODWARD, LLC
　　　　　　　　　　　　　　　　　　　　300 East Roosevelt Rd., Suite 300
　　　　　　　　　　　　　　　　　　　　Wheaton, IL 60187
　　　　　　　　　　　　　　　　　　　　Telephone: (630) 668-8500
　　　　　　　　　　　　　　　　　　　　*Attorneys for Mortgage Information Services*

　　　　　　　　　　　　　　　　　　　　/s/ Wayne Holstad
　　　　　　　　　　　　　　　　　　　　4501 Allendale Drive
　　　　　　　　　　　　　　　　　　　　St. Paul, MN 55127
　　　　　　　　　　　　　　　　　　　　Telephone: (651) 287-9821
　　　　　　　　　　　　　　　　　　　　*Attorney for the Northwest Third-Party Defendants*

　　　　　　　　　　　　　　　　　　　　/s/Christopher H. Murphy
　　　　　　　　　　　　　　　　　　　　Cozen O'Connor
　　　　　　　　　　　　　　　　　　　　333 West Wacker Drive, Suite 1900
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　　Telephone: (312) 382.3155
　　　　　　　　　　　　　　　　　　　　*Attorney for Superior Third Party Defendants*

　　　　　　　　　　　　　　　　　　　　/s/Albert E. Fowerbaugh, Jr.
　　　　　　　　　　　　　　　　　　　　Butler Rubin Saltarelli & Boyd LLP
　　　　　　　　　　　　　　　　　　　　70 West Madison Street, Ste. 1800
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60602-4257
　　　　　　　　　　　　　　　　　　　　Telephone: (312) 696-4440
　　　　　　　　　　　　　　　　　　　　*Attorney for Fidelity Third Party Defendants*

## CERTIFICATE OF SERVICE

I certify that on the 24th day of September, 2012, the foregoing Motion to Dismiss for Lack of Subject Matter Jurisdiction And for A Suggestion of Remand was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

/s/ Timothy D. Elliott
Timothy D. Elliott (ARDC 6237023)
RATHJE & WOODWARD, LLC
300 East Roosevelt Rd., Suite 300
Wheaton, IL 60187
Telephone: (630) 668-8500