**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO: | (Centralized before The Honorable Marvin E. Aspen) |
| *Arthur Coleman and Ethelyn Coleman v. Ameriquest Mortgage, et al.* Case No. 07-cv-2459 N.D. Ill. | Magistrate Judge Daniel G. Martin |

**DEFENDANT AMERIQUEST MORTGAGE COMPANY'S MOTION TO COMPEL
PLAINTIFFS ARTHUR AND ETHELYN COLEMAN TO APPEAR AT DEPOSITION**

**I.      INTRODUCTION**

Ameriquest moves to compel plaintiffs Arthur and Ethelyn Coleman ("Plaintiffs") to appear for a second deposition. Plaintiffs were deposed in February 2012 but withheld 150 pages of loan documents until ten days ago and need to be deposed about the newly produced documents. Plaintiffs' counsel offers no explanation why these documents were not produced in response to Ameriquest's September 2011 requests for production or following Judge Denlow's order compelling production [MDL Dkt. 4552], and Plaintiffs' counsel admits their office has had these documents from the beginning of the litigation. Whether not producing the documents was strategic or inadvertent, Defendants and Third-Party Defendant should be allowed to depose Plaintiffs about these documents now that they have fundamentally altered the factual circumstances of their claims. More specifically, the loan documents received by Plaintiffs at the loan closing and how Plaintiffs retained the loan documents after the loan closing is both the focal point of Plaintiffs' pending motion for summary judgment and directly relevant to Ameriquest's defenses against Plaintiffs' claims. For Plaintiffs to prevail on their Truth-In-Lending Act claims they must rebut the presumption of delivery created by their written acknowledgment of receipt of the required forms. Plaintiffs document retention and storage practices is a key issues that courts focus on when deciding whether Plaintiffs have satisfied their

1

burden of overcoming the presumption. This is why Plaintiffs belated production of over 150 pages of documents which were maintained separately from documents that were produced for the same loan raises significant questions that go to the heart of Plaintiffs' claims and support Ameriquest's defenses. As a result, Ameriquest should be allowed to depose Plaintiffs.

## II.     FACTUAL BACKGROUND

Plaintiffs entered into residential mortgage loans with Ameriquest in 2004 and 2005. Plaintiffs seek hundreds of thousands of dollars in damages based on their Truth-In-Lending Act ("TILA") claims. In support of their claims, Plaintiffs allege that they did not receive four Notice of Right to Cancel forms appropriately completed with dates filled-in at the time of the closing of their 2004 and 2005 loans. At the time of each loan closing, Plaintiffs executed an acknowledgement that they received the appropriate number of Notice of Right to Cancel forms in accordance with TILA. To avoid their acknowledgement, Plaintiffs contend that they can prove that they did not receive the appropriate forms because they meticulously maintained all of the loan documents received at the closing and cannot locate the appropriate forms now. Indiv. Dkt. 21 (motion for summary judgment). Not surprisingly, Plaintiffs want to avoid testifying about these, as explained below.

On September 2011, Ameriquest propounded document requests seeking all documents related to Ameriquest and all documents received at each loan closing. MDL Dkt. 4539, Ex. 7. Because Plaintiffs ignored Ameriquest's requests for production, and ignored multiple meet and confer communications from Ameriquest's counsel requesting that Plaintiffs simply respond, Ameriquest was forced to file a motion to compel Plaintiffs' responses. MDL Dkt. 4539. On December 21, 2011, Judge Denlow granted Ameriquest's motion to compel [MDL Dkt. 4552] and ordered Plaintiffs to produce responsive documents by January 4, 2012. For the 2005 loan, Plaintiffs produced Coleman 1 to 150.

In February 2012, Plaintiffs were deposed in Peoria, Illinois, near the Plaintiffs' residence. Plaintiffs agreed to bring the originals of all of the documents received at the loan closing. They brought the originals of Coleman 1 to 150. Defendants and Third-Party

Defendant Ticor Title Insurance deposed Plaintiffs. Plaintiffs were not deposed about the newly produced documents because their existence was unknown. Instead, for the 2005 loan, the deposition focused on the documents which Plaintiffs alleged they received at the loan closing.

On May 18, 2012, Plaintiffs filed a summary judgment motion arguing that they are entitled to summary judgment (and hundreds of thousands of dollars) because they can show by undisputed material facts that they did not receive the Notice of Right to Cancel forms because they pristinely and securely kept their loan documents together. Plaintiffs submitted an affidavit stating that they already produced to Defendants all documents received at the loan closing. At the time of the affidavit, Plaintiffs had only produced Coleman 1 to 150 concerning their 2005 loan, including two 2005 Notice of Right to Cancel forms. Indiv. Dkt. 22-2, ¶¶ 19-23. Plaintiffs conclude that because the four copies of the Notice of Right to Cancel form were not in the document production and could not have been misplaced or destroyed because of their pristine record keeping practices, they should prevail as a matter of undisputed fact.

Ameriquest's counsel suspected Plaintiffs were not telling the truth about whether they had produced all of their documents from the 2005 closing. Recently, Ameriquest's counsel requested that Plaintiffs produce Bates labeled copies of the documents received at the loan closing, as Plaintiffs had agreed to do in February 2012. Plaintiffs' counsel did not respond to three e-mails and three voicemails about the topic. On March 22, 2013, Ameriquest moved to extend the time to oppose the motion for summary judgment to allow the parties to meet and confer to confirm that Plaintiffs had produced all documents related to Ameriquest. The Motion was granted by Judge Aspen on March 25, 2013. Indiv. Dkt. 28.

On April 2, 2013, Plaintiffs produced a second package of the 2005 loan documents, Coleman 511-660, intermixed in a 816 page re-production of documents. There was no indication that these were newly produced documents. Plaintiffs will not explain why these were not produced in response to the 2011 document request or following Judge Denlow granting the motion to compel production of these documents in December 2011. MDL Dkt. 4552.

The belated production of documents from the 2005 loan closing gives rise to a number of questions about Plaintiffs document retention and storage practices that Ameriquest was unable to ask at the prior deposition because it was completely unaware of these two separately maintained stacks of documents relating to the 2005 closing. The newly produced documents also give rise to other areas of inquiry that Ameriquest's counsel did not know existed because he was unaware of the true scope of Plaintiffs' records.

Because of the importance of these newly produced documents, Ameriquest requested that Plaintiffs appear for deposition in the place of their choosing, Peoria or Chicago. Ameriquest agreed not to seek reimbursement for the additional expense of the second deposition *if* Plaintiffs voluntarily appeared. Plaintiffs declined the offer.

### III. ARGUMENT

The newly produced second package of loan documents is highly relevant to Plaintiffs' motion for summary judgment and claims for damages and accordingly, they should be ordered to appear for deposition. This belated production is extremely significant. First, it allegedly constitutes half of the documents provided at the 2005 loan closing. The existence of a previously unmentioned second package of loan documents raises a plethora of deposition topics concerning the first and second package of loan documents and modifies the focus of the examination of Plaintiffs. Plaintiffs were previously examined about their document retention practices concerning the first package but now the foundational facts have significantly changed about what they kept, apparently how the documents were kept, the organization of the two packages of loan documents, and what they remember about the documents within the second package of loan documents.

Second, the newly produced documents contain multiple copies of the Notice of Right to Cancel form: the same form which is the focus of Plaintiffs' TILA claim, some signed and not signed, as well as new Federal Express shipping labels and multiple duplicate copies of documents previously produced. Plaintiffs claim they did not receive four copies of the Notice of Right to Cancel form. Now that they have produced more copies, deposition testimony to

4

explore their recollection of the various notice of right to cancel forms is essential. Plaintiffs also agreed to execute an affidavit confirming that they have produced all documents related to Ameriquest. They have not done so which suggests that there are other documents which have not been produced.

Plaintiffs' counsel argues that the second package of loan documents contains duplicates of the first package so the deposition would be irrelevant. Ameriquest offered that if they really believed the second loan package is irrelevant, Plaintiffs should stipulate not to use it in the litigation. Ex. 1. But Plaintiffs want to have their cake and eat it too: Plaintiffs want to use the newly produced documents but refuse to be deposed about them. Plaintiffs also argue that the deposition will not be helpful to Ameriquest but Ameriquest's counsel believes otherwise.

Plaintiffs also argue that the sole purpose of the deposition is to harass the Plaintiffs but appearing for deposition in your hometown can hardly be said to be harassing. If Plaintiffs and their counsel are burdened by appearing for deposition, it's their own fault. The documents should have been produced years ago as part of their initial disclosures, responses to the document requests, and in response to Judge Denlow's order granting the motion to compel. MDL Dkt. 4552. Plaintiffs' counsel blames an unnamed former administrative assistant who allegedly overlooked them the night before the deposition, but they offer no excuse for not producing them previously at the time of the document requests and order compelling production. Plaintiffs' burden is much less than counsel for Ameriquest and Ticor Title who both have agreed to travel to Peoria, once again, for the convenience of the Plaintiffs.

Ameriquest requests that the Court require that Plaintiffs and/or their counsel be required to reimburse Ameriquest a total of $500 which is de minimis compared to the attorneys' fees for filing this motion, appearing at the hearing, and traveling to the deposition. Additionally, Plaintiffs should pay for the court reporter fees for the second deposition. *See*, Fed. R. Civ. Proc. 37(b)(2) (allowing sanctions for disobedience with court order "as are just"); 37(b)(4) (providing sanctions for motion to compel discovery); 30(d)(3) (approving sanctions if court finds impediment or obstructing the "fair examination of the opponent").

**IV.     RULE 37.2 STATEMENT**

Despite the best efforts of Ameriquest to informally resolve the issues without resorting to court intervention, Plaintiffs refuse to appear for deposition. Counsel responsible for trial of the case on behalf of Ameriquest, Randall Manvitz, made several good faith attempts by telephone and by written correspondence to convince Mr. Brooks to agree to produce his clients for deposition. Ameriquest's counsel complied with L.R. 37.2 per the following good faith efforts to communicate with Plaintiffs' counsel, to no avail.

1.     On April 5, 2013, after discovering that Plaintiffs March 2013 "re-production of documents" contained 150 **new** pages of production, Ameriquest's counsel asked Plaintiffs' counsel to agree to Plaintiffs' deposition by e-mail and asked Plaintiffs' counsel to confer by telephone. Ex. 2. Ameriquest's counsel then called and spoke to Plaintiffs' counsel, Charles Howell, but Plaintiffs' counsel was not prepared to discuss it by telephone. Counsel for Plaintiffs sent a short e-mail (Ex. 3) but has been unwilling to discuss the issues by telephone, at no fault of Ameriquest's counsel.

2.     On April 8, 2013, counsel for Ameriquest sent two e-mails to Plaintiffs' counsel again reiterating the need for the depositions and addressing Plaintiffs' counsel's written arguments, and again, requested a telephone conference. Ex. 1. Counsel for Ameriquest called Plaintiffs' counsel again on April 8, 2013 but no one answered the phone and the call has never been returned.

3.     On April 9, 2013, counsel for Plaintiffs responded by letter. Ex. 4. Instead of calling Ameriquest's counsel as requested, Plaintiffs' counsel stated that Ameriquest's counsel should call them but they will not answer the phone or return phone calls. Ameriquest's counsel called again when Mr. Brooks said he would be available, to no avail. Plaintiffs' counsel will not return phone calls.

4.     On April 11, 2013 at 1:48 p.m. CST, Ameriquest's counsel again tried to reach Plaintiffs' counsel by telephone, there was no answer and there was no method of leaving a voicemail with Plaintiffs' counsel. Ameriquest's counsel followed up by sending an email to

6

Plaintiffs' counsel at 2:21 p.m. asking for a return phone call. Plaintiffs' counsel never called back and will not return phone calls.

## V.   CONCLUSION

Defendants and Third-Party Defendants should not be punished for Plaintiffs' strategic or inadvertent withholding of these crucial documents. Plaintiffs should be ordered to appear for deposition on May 13, 2013 at 10:00 a.m. in Peoria or Chicago and reimburse Ameriquest $500 for having to bring this Motion and additionally pay for the court reporter for the second deposition.

DATED: April 12, 2013                    Respectfully submitted,

By: /s/ Randall Manvitz
*Attorneys for Defendant* Ameriquest Mortgage Company

Randall L. Manvitz (admitted *pro hac vice*)
Buchalter Nemer
55 Second Street, Suite 1700
San Francisco, California 94105
Telephone: (415) 227-0900
Facsimile: (415) 227-0770

7

**CERTIFICATE OF SERVICE**

I, Joanne N. Davies, hereby certify that on this 12th day of April 2013, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Joanne N. Davies

BN 13723966v2