**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE AMERIQUEST MORTGAGE COMPANY** | } | |
| **MORTGAGE  LENDING PRACTICES LITIGATION** | } | Centralized before Judge Marvin E. Aspen |
| | } | |
| THIS DOCUMENT RELATES TO | } | MDL No. 1715 |
| | } | |
| *Arthur and Ethelyn Coleman v. Ameriquest* | } | Lead Case No. 05 cv 07097 |
| *Mortgage Company, et al.*, 07 cv 2459 (N.D. Ill.) | } | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'**
**MOTION TO COMPEL DEPOSITIONS**

Now Comes Plaintiffs ARTHUR COLEMAN and ETHELYN COLEMAN, by

and through their attorneys, The Brooks Law Firm, to respond in opposition to

Defendants' motion to compel second depositions of Plaintiffs as follows:

**Summary of Argument**

1.      Defendants are attempting to manufacture an issue where none exists

for purpose of harassing the Plaintiffs and further delay these proceedings.

Defendants request for a second round to what has already been exhaustive

depositions should be denied there is no relevant area of inquiry Defendants could

seek. The documents Defendants intend to inquire about are redundant of

documents produced prior to the depositions and offer no additional boost to either

Plaintiffs' arguments or Defendants' potential defenses to the pending motion for

summary judgment.

2.      Plaintiffs filed this action seeking rescission of two home loans (one

originated in October 2004 and the other in November 2005). Plaintiffs have alleged

that every NORTC they were given was "blank". Moreover, in connection with the

2005 Loan, Plaintiffs were given H-8 form (general) NORTCs where they were

undisputedly entitled to H-9 forms (original creditor refinance). Additionally,

Plaintiffs were provided with a "One Week Cancellation" and "Understanding Your Loan" forms that materially confused and obfuscated their unconditional right to cancel as provided by the federal Truth In Lending Act. The documents recently produced, which only relate to the 2005 loan, have no bearing on Plaintiffs' identified legal claims or any defense raised by Defendants.

**Relevant Factual and Procedural Background**

3.       Plaintiffs moved for summary judgment on some of their claims, asserting there is no admissible evidence they were given NORTCs that contained the date of the subject transactions as well as the date their right to cancel was to expire. See Docket Nos. 19, 20. Furthermore, for the 2005 Loan, Plaintiffs also allege they were only given H-8 forms of the NORTC when H-9 forms were required, since the 2005 Loan was used to pay off the 2004 Loan also made by Ameriquest. Additionally, Plaintiffs show that their right to cancel was interfered with by Defendants' provision of two form documents entitled "One Week Cancellation" and "Understanding Your Loan".

4.       In attempting respond to Defendants multiple requests for documents, Plaintiff's counsel discovered that a certain set of documents were not previously produced to Defendants. However, the unproduced documents are almost exclusively additional copies of documents that were previously produced.[1] For instance, there are some additional copies of the "Understanding Your Loan" form as well as additional copies of "blank" H-8 forms of the NORTC for the 2005 loan.

---

[1]       Ameriquest does not dispute the documents were virtually all additional copies of previously produced documents.

Although, the documents relate to Plaintiffs' claims. The fact that there are additional copies of these forms in Plaintiffs' possession is no cause for additional depositions. It is the language and appearance of the documents that is important. Plaintiffs have already appeared for over 13 hours of depositions where in they were very clear that they did not alter any documents they received from closing.[2] What else could Defendants inquire that would be relevant to the newly produced documents. Therefore, Plaintiffs' counsel's oversight is *de minimus* harm to Defendants and their case.

5.     On April 3, 2013 Defendants' counsel, during a telephone conversation with Plaintiffs' counsel, inquired about the origin of the newly produced documents and whether Plaintiffs had recently located or provided the documents. Plaintiffs' counsel informed Defense Counsel that the documents have not been in the possession of the Plaintiffs since 2007. Instead, the documents were in Plaintiffs' counsel's office, but mistakenly overlooked as being previously produced.

6.     Defense Counsel then inquired, via e-mail, about whether the Plaintiffs would appear for a second deposition concerning the newly produced documents.

7.     Plaintiffs' Counsel immediately  responded that same day indicating that he was unclear what relevant inquiry could be made at a second round of

---

[2]     The videotaped depositions of Arthur Coleman took place over two days, with the testimony filling over 336 pages of transcripts and almost nine hours of tape. The deposition of Ethelyn Coleman was over 120 pages of testimony and over 4 1/2 hours in length.

depositions, but invited Defense Counsel to provide some basis for the request for further consideration.

8.     On April 8, 2013, Defense Counsel again wrote back demanding the second round of depositions, but was unable to cite any meritorious argument for a second round of depositions. A copy of the attorneys' e-mails are attached as Exhibit A.

9.     The next day, Plaintiffs' counsel responded, by letter, to the April 8, 2013 e-mail indicating that no relevant area of inquiry had been outlined to support a request for second round  of depositions. A copy of the April 9, 2013 letter is attached hereto as Exhibit B.

10.     Defendants now file a motion with this Court to compel a second round of depositions and for $500 plus the costs of a court reporter for the purpose of conducting the second round of depositions.  However, Defendants' motion continues to fail to set forth even one valid ground for the Plaintiff to be present for a second round of depositions.

**ARGUMENT**

11.     The Plaintiffs should not be required to appear for a second round of depositions. Defendants have already testified about every relevant area of inquiry that Defendants sought, including their record keeping practices. In order to convince this Court to side with them, Defendants mischaracterize Plaintiffs' claim and the factual history of the case.

12.     Defendants attempt to convince the Court that this case is all about Plaintiffs' so called "meticulous record keeping".  To bootstrap this argument,

Defendants argue that the issue is whether Plaintiffs received four copies of a NORTC. On the contrary, Plaintiffs' claim is based upon the information (or lack thereof) found on the notices they received. Plaintiffs have plead (and proven) that every copy of a NORTC they were given was "blank", meaning no information was found on them as to the start of the transaction or the expiration of their right to cancel. Thus, it is irrelevant how many copies of a NORTC was given to Plaintiff, if they were all "blank". *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699 (9th Cir. 1986).

13.     Moreover, the subject documents all relate to the 2005 Loan there appears to be no dispute that Plaintiffs received only H-8 forms of the NORTC. However, TILA and Regulation Z required Ameriquest to deliver H-9 forms to the Colemans, since the 2005 loan was a refinance of the 2004 Ameriquest loan to the Colemans. The delivery of H-8 NORTC forms to the Colemans for the 2005 Loan is a violation of TILA and extended the Colemans' right to rescission. 12 C.F.R. §1026.23(b)(2) ("the creditor shall provide the appropriate model form . . ."). Courts have held that the provision of the wrong model form extends the right to rescission. *Porter v. Mid-Penn Consumer Discount*, 961 F.2d 1066 (3rd Cir. 1992). In fact, this Court previously based injunctive relief against Ameriquest on the basis of evidence it was supplying its borrowers with the wrong model forms. *In Re Ameriquest Mortgage Co.*, 2006 WL 1525661 (N.D. Ill. May 30 2006).

14.     In discovery Ameriquest has produced its version of the loan file, which only includes a H-8 form. See Exhibit C. There is no assertion by Ameriquest that it

gave Plaintiffs H-9 forms. Thus, there is no presumption Ameriquest delivered to the Colemans a H-9 form. Therefore, Plaintiffs "meticulous" record keeping does not come into play where Ameriquest doesn't offer evidence a H-9 form was delivered. All of the NORTCs found within the 150 pages that Defendants cry about are H-8 forms and thus, there continues to be no evidence that Plaintiffs ever received any H-9 forms whatsoever. No question Defendants could ask at a second round of depositions is going to address this issue.

15.     Alternatively, even if an unrebutted presumption arose that Plaintiffs received four H-9 forms for the 2005 Loan, Plaintiffs would still be entitled to summary judgment. The provision of both H-8 and H-9 forms simultaneously violates TILA. *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006). Again, there are no topics of inquiry Defendants could make at a second deposition relating to the contested documents that disturbs the inevitable nature of the claims made here.

16.     Defendants last gasp is its argument that there has been no explanation of why the documents were produced late. On the contrary, even Defendants concede they received Plaintiffs' counsel correspondence, fully explaining the oversight that occurred on counsel's part, not Plaintiffs.

17.     Plaintiffs' counsel has already indicated to Defendants that to the extent Defendants believe the late production by counsel raises an issue, then the matter is already set. There is no further information from Plaintiffs that would assist. There will be no dispute from Plaintiffs that the subject documents were not

6

produced until April 2, 2013 after sitting in Plaintiffs' counsels drawers since the very beginning of the litigation in 2007. Whatever argument Defendants want to make, they cannot argue that it was "Plaintiffs document retention and storage practices" at issue.

18.     Defendants are simply making a mountain out of a mole hill to avoid having to respond to the pending motion for summary judgment and to harass the Plaintiffs. Defendants assert there is no harassment because the depositions will take place near Plaintiffs' home. However, the harassment is sitting for another set of depositions that will certainly go on for hours. Particularly here, where Mr. Coleman has already sat for nearly nine hours of deposition and Mrs. Coleman has sat for almost 5 hours.[3]

19.     The meritless nature of this request is underlined by Defendants' silence as to the nature of the questions that might be asked. The Defendants assert there is a "plethora" of deposition topics concerning the documents in this case that might arise at the second round of depositions. However, when pushed by Plaintiffs for the identity of even one such area, Defendants could only cite the vague assertion of inquiry into Plaintiffs' record keeping practices. However, this subject was thoroughly covered during the first round of depositions and the production of the subject documents (through no fault or involvement of Plaintiffs) will not change any response to Defendants' earlier inquiries.  Defendants do not cite even one of the "plethora" of topics it now claims exists.

---

[3]     Ameriquest has failed to address what basis it has for seeking additional time to depose Mr. Coleman beyond the 7 hours permitted by Fed. R. Civ. Pro. Rule 30(d).

20.     Additionally, even if Defendants were to now cite some relevant area of inquiry, this Court should not punish Plaintiffs as they asked for some good faith idea of the area of inquiries that would arise and Defendants failed to cite one. Additionally, there is no time left under the Rules for Ameriquest to use at a deposition for these issues.

21.     On a related note, Plaintiffs' Counsel feels compelled to respond to the inference left by Defendants' motion that Plaintiffs were unwilling to respond to Defendants' inquiries. On the contrary, Plaintiffs' counsel has been very open to discussing the grounds for this present motion. First, on the same date Defendants first sought a second deposition, Plaintiffs' Counsel responded in writing seeking some basis for the request so that the request could be fully considered. Next, on April 8, 2013 Ameriquest first made known its argument for a second round of depositions. The very next day, Plaintiffs' counsel responded (in a two page letter) to fully explain their position on why the depositions were inappropriate. On April 11, 2013 Defense Counsel attempted to reach Plaintiffs counsel via e-mail and telephone. The very next day on April 12, 2013 Plaintiffs' counsel returned the telephone call and only reached Defense Counsel's voice mail. Hours later, Plaintiffs' counsel received, via e-mail, Defendants' motion.

22.     As this narrative makes clear, Plaintiffs have been open and upfront about discussing the merits of this motion with Defense Counsel. To the extent, Defendants' motion asserts otherwise, it is off base. Nonetheless, it does appear that the parties are at odds on this issue and need the Court's assistance in determining

what the scope of Defendants' rights (if any) to conduct a second round of depositions. Plaintiffs welcome this Court's participation in moving this matter forward.

## Conclusion

For all of the reasons stated herein, Plaintiffs respectfully request this Court deny Defendants' motion to compel a second round of depositions of the Plaintiffs.

Respectfully Submitted by:

 /s/ Lloyd Brooks
One of Plaintiffs' Attorneys

Lloyd Brooks – State Bar No. 6271994
Charles Howell – State Bar No. 6298445
**THE BROOKS LAW FIRM**
4747 Lincoln Mall Drive, Suite 410
Matteson, Illinois 60443
(708) 841-8000 Telephone
(708) 841-8080 Facsimile
E-mail: lloyd.brooks@thebrooksfirm.com
***Attorneys for Plaintiffs***