IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO: *Arthur Coleman and Ethelyn Coleman v. Ameriquest Mortgage, et al.* Case No. 07-cv-2459 N.D. Ill. | (Centralized before The Honorable Marvin E. Aspen) Magistrate Judge Daniel G. Martin |

**DEFENDANT AMERIQUEST MORTGAGE COMPANY'S REPLY IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS ARTHUR AND ETHELYN COLEMAN TO APPEAR AT DEPOSITION**

Instead of addressing the issues raised in the Motion to Compel directly, the Opposition brief throws out a number of red-herrings and false assertions to obfuscate Defendants' need for a second deposition following Plaintiffs' belated and mysterious production of a second package of loan documents.

*First,* the Opposition pretends that Plaintiffs' records keeping is not at issue in the litigation and is just an excuse for deposition testimony to harass the Plaintiffs. The Opposition ignores that Plaintiffs' summary judgment motion focuses on this very issue -- alleged meticulous record-keeping -- as Plaintiffs' foundation for their contention that they did not receive four dated copies of the Notice of Right to Cancel form in 2005 because they can't find them now. *See* Motion at 3. Plaintiffs' "**material**" undisputed facts in support of their Motion for Summary Judgment on this TILA claim are four paragraphs of "**material**" facts about their meticulous record-keeping practices. *See* Indiv. Dkt. 22-2, ¶¶ 19-23; Fed. R. Civ. Proc. Rule 56.

The focus on record-keeping practices for TILA claims based on missing Notice of Right to Cancel forms is not something made-up by Ameriquest as Plaintiffs' counsel argues. Courts around the nation are focusing on a plaintiff's record keeping practices for a plaintiffs' claim (such as the Colemans') that their records show that they did not receive four copies of a dated NORTC form because they do not have them now. *See e.g., Giza v. Amcap Mortg,* 458 B.R. 1, 28-29 (Bankr. D.Mass. 2011) (discussing the "Folder" or "Sealed Envelope" record-keeping arguments).

1

Here, the production of a completely separate package of loan documents goes right to the heart of the "Sealed Envelope" argument because the documents apparently were not maintained together.

*Second,* the Opposition ignores or glosses over the other stated reasons for the second deposition. The new production apparently changes the foundation of what documents were retained by the Colemans and thus, the necessary deposition focus changes. Plaintiffs refuse to stipulate not to use the documents in the litigation so Ameriquest's counsel should be able to determine what Plaintiffs will state under oath about the second package of loan documents before trial such as how it affects their memory of the events in 2005; when they received them; how they received them; what they did with them; how they became separated from the first package of loan documents; how often they were handled; what documents were removed from the second package of loan documents and why; their interaction with the people on the shipping labels; when they were provided to counsel; and on and on.

As another example, following the new production, Plaintiffs now seem to argue that they can prove they did not receive a sufficient number of dated copies because they received many undated copies. At the time of the first deposition, Plaintiffs only had two undated copies. Now they claim to have ten so the argument is worthy of inquiring about. Affirmative defenses are more relevant now whereas they would have been a waste of time before. For example, Plaintiffs are witnesses to the procedures of the closer and a bona fide error is a basis for an affirmative defense under TILA. *See* 15 U.S.C. §1640(c).

**Third,** the Opposition engages in a classic straw-man argument. It argues vehemently that further deposition is irrelevant by introducing arguments not mentioned in the Motion to Compel in order to knock them down. The Opposition spends pages and pages claiming deposition testimony is not necessary for TILA claims based on H-8 versus H-9 forms and other TILA claims based a One-Week Cancellation and Understanding Your Loan form. *See* Opp. ¶¶ 2, 3, 4, 13-15. But these claims are never mentioned in the Motion to Compel because no one is claiming that further deposition testimony is necessary for those claims.

**Fourth,** the Opposition does not provide any detailed explanation about the background of these newly produced second set of loan documents and why they were not produced earlier. The Opposition argues that they informed Ameriquest why these documents were not produced previously, but the referenced letter merely blames an administrative assistant for not producing

2

them at the deposition. *See* Opp. at ¶16 referencing Ex. 2 (4/9/13 letter from Brooks). As explained in the Motion to Compel, to date, Plaintiffs have not explained why the second set of loan documents were not produced when Judge Denlow ordered them to be produced. The Opposition suggests that they were recently produced in the ordinary course of business in response to outstanding documents requests from 2011 as if the Court were to forget that the document production was prompted by Judge Aspen's recent order delaying the opposition of the motion for summary judgment after being informed about document issues concerning the NORTC claim. *See* Motion at 3. Also, the Opposition fails to mention the affidavit Plaintiffs agreed to provide weeks ago confirming that all documents related to Ameriquest have been produced. *See* Motion at 5. Plaintiffs' counsel has been noticeably silent about the promised affidavit. Apparently, Plaintiffs will produce other documents after the hearing because they will not provide the affidavit now.

**Fifth,** throughout the Opposition, Plaintiffs grossly exaggerate the amount of time on the record for the prior depositions. *See* p. 3 and fn. 2 (claiming over 13 hours) and p. 7 (suggesting the Colemans were deposed for three days and almost 14 hours). The Colemans were deposed over the course of two consecutive days. The first day, Ethelyn Coleman was deposed for 2 hours and 57 minutes followed immediately by Arthur Coleman for 1 hour and 55 minutes because he was already present at the location of the deposition. The next day, Arthur Coleman was deposed for 5 hours 37 minutes, for a total of 7 hours and 32 minutes. The bulk of Arthur's deposition was walking him through his varied bait and switch fraud claims for his two loans, his contentions that the documents in his possession had been somehow altered, and inventorying the original documents Plaintiffs brought to the deposition because Plaintiffs' counsel did not bring copies.

**Sixth,** Plaintiffs seek to avoid sanctions by claiming they were very responsive to requests for a teleconference. Mr. Brooks claims he called "hours" before receiving the brief. Opp. at p. 8 para. 21 (last sentence). This is another exaggeration. Plaintiffs' counsel finally called 19 minutes before the brief was electronically filed and while Ameriquest's counsel was on a flight and had already finalized the brief for filing. The call was eight days after repeatedly being requested for a return call; eight days after his associate said Mr. Brooks was the only one who could address the issue; and two days after the date Mr. Brooks had been informed the Motion to Compel would be filed. Plaintiffs' counsel is aware of the Rule 37.2 requirement for a

3

verbal meet and confer and has a long history of attempting to delay discovery motions by refusing to pick up the phone.

### CONCLUSION

Defendants should be provided the opportunity to examine Plaintiffs about their loan documents: the most fundamental issue in the litigation. Defendants would not undertake the significant effort and expense of deposing Plaintiffs again unless they believed it was worthwhile. Defendants believe it will be worthwhile.

DATED: April 16, 2013                              Respectfully submitted,

By: /s/ Randall Manvitz
*Attorneys for Defendant* Ameriquest Mortgage Company

Randall L. Manvitz (admitted *pro hac vice*)
Buchalter Nemer
55 Second Street, Suite 1700
San Francisco, California 94105
Telephone: (415) 227-0900
Facsimile: (415) 227-0770

## CERTIFICATE OF SERVICE

I, Joanne N. Davies, hereby certify that on this 16th day of April 2013, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Joanne N. Davies

BN 13763285v2