UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) ) | MDL No. 1715 Lead Case No. 05-7097 |
| AMERIQUEST MORTGAGE CO., a Delaware Corporation; TOWN & COUNTRY CREDIT CORPORATION, a Delaware corporation; and ARGENT MORTGAGE COMPANY LLC, a Delaware limited liability company, | ) ) ) ) ) ) ) ) | |
| Defendants/Third-Party Plaintiffs, | ) ) ) | Centralized before the Honorable Marvin E. Aspen |
| v. | ) ) | |
| NORTHWEST TITLE AND ESCROW CORPORATION, a Minnesota corporation; et al., | ) ) ) ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us is Certain Third-Party Defendants'[1] Motion to Dismiss for Lack of Subject Matter Jurisdiction and for a Suggestion of Remand (Dkt. No. 5101). Third-Party Defendants ask us to dismiss the Fifth Amended Third-Party Complaint ("FATPC")

---

[1] The "Certain Third-Party Defendants" who filed this motion are: Mortgage Information Services, Inc. ("MIS"), the Fidelity Third-Party Defendants ("Fidelity," including roughly 14 different corporate entities), the Superior Third-Party Defendants (including roughly 10 different corporate entities), and the Northwest Third-Party Defendants (including two corporate entities). Another subset of Third-Party Defendants, the "Moving Third-Party Defendants" joined in the pending motion and filed a separate reply in support thereof, which we have considered. (Dkt. Nos. 5106, 5131.) We refer to all of these defendants collectively as "Third-Party Defendants."

(Dkt. No. 2913) with respect to the many cases where Third-Party Plaintiffs[2] settled the underlying federal claims with the plaintiffs. Third-Party Defendants contend that we should decline to exercise supplemental jurisdiction over these cases now that the federal claims are gone. With respect to all other third-party claims, Third-Party Defendants ask that we suggest to the Judicial Panel on Multidistrict Litigation ("Panel") that it remand these remaining cases to the transferor courts. In short, Third-Party Defendants request that we disband the consolidated third-party action. As set forth below, we deny the motion.

**BACKGROUND**

The third-party action was not part of the MDL as assigned to us in 2005 but logically arose during the course of the MDL proceedings. In the FATPC, filed in July 2009, Ameriquest alleges that Third-Party Defendants—a group consisting of closing agents, title companies, title underwriters and mortgage brokers—are responsible for any violations of the Truth In Lending Act ("TILA"), as asserted against Ameriquest by the hundreds of thousands of borrower-plaintiffs in the underlying individual and class actions that spawned the MDL. Ameriquest contends that Third-Party Defendants breached their contracts with Ameriquest and engaged in negligent misrepresentation in connection with the closings of the mortgage loans with the borrower-plaintiffs. *See, e.g.*, *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, No. 05 C 7097, 2010 WL 290493, at *1–4, 6–7 (N.D. Ill. Jan. 19, 2010).

Over the past several years, Ameriquest has settled thousands of borrower-plaintiff claims, as part of both class and individual actions. As Third-Party Defendants rightly point out,

---

[2] The Third-Party Plaintiffs are Ameriquest Mortgage Co. ("AMC"), Town & Country Credit Corporation ("T&C") and Argent Mortgage Company LLC ("Argent"), who we shall refer to collectively as "Ameriquest."

Ameriquest settled many (though not all) of the original borrower-plaintiff federal claims, and, in such cases, only the related third-party claims remain. Because the third-party action involves exclusively state-law claims, Third-Party Defendants contend that we should decline to exercise supplemental jurisdiction over these claims and release them from the MDL. Ameriquest opposes the motion on several grounds, not all of which require our attention.[3] Primarily, Ameriquest argues that we have supplemental jurisdiction and should retain the entire third-party action because common discovery remains outstanding. (Opp'n at 1–2, 6–9.)

As both parties explain in greater detail in their briefs, and in prior filings, Ameriquest and Third-Party Defendants have debated the proper scope of discovery in the third-party action for quite some time. (Mem. at 7, 15; Opp'n at 5–7, 11, 14–15; Certain Third-Party Defs.' Reply at 1–2.) In our July 26, 2012 order accepting the *Terry v. Ameriquest Mortgage Company* case as related to the MDL, we concluded that the reassignment would "make the most of coordinated discovery . . . into the practices of the third-party defendants, including their interpretations of the indemnity language" and closing protection letters. (7/26/12 Order, Case No. 08 C 2475, Ind. Dkt. No. 782.) Following that order, Ameriquest served discovery requests on Fidelity and MIS, focusing on both individual cases and some broader issues. When Third-Party Defendants objected to the scope of that discovery, Ameriquest filed a motion to compel discovery, which

---

[3] For example, Ameriquest's statute of limitations argument overlooks 28 U.S.C. § 1367(d)'s savings clause, which would enable it to refile any state claims in state court within 30 days. *See Jinks v. Richland Cty., S.C.*, 538 U.S. 456, 458–59 123 S. Ct. 1667, 1668–70 (2003); *Hopkins v. White*, 292 F. App'x 497, 500 (7th Cir. 2008). We also need not address Ameriquest's claim that it could replead the action to allege diversity jurisdiction. (Opp'n at 12 n.2, 14.)

was heard by Magistrate Judge Denlow.[4]  Although the parties were able to resolve many of their disputes before Judge Denlow, the ultimate question about the scope of discovery was left open. Judge Denlow orally denied Ameriquest's motion to compel "without prejudice pending either an agreement by the parties or proceeding before Judge Aspen to clarify the scope of what is going to be done in the MDL because the discovery will follow that scope."  (9/20/12 Tr. of Hrg. at 17–18, Dkt. No. 5123-7.)  He added in a related minute entry that "[t]he scope of discovery should be consistent with the scope of the third party proceedings that Judge Aspen will allow to take place in this court."  (9/20/12 Min. Entry, Dkt. No. 5090.)  Third-Party Defendants then filed the present motion.

**STANDARD OF REVIEW**

A district court may retain supplemental jurisdiction over state law claims even after it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  The Supreme Court has recognized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139 (1966); *see also Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727–28 (7th Cir. 1998); *Kevin's Towing, Inc. v. Thomas*, 217 F. Supp. 2d 903, 910 (N.D. Ill. 2002).  Accordingly, the choice under § 1367(c)(3) "is committed to [our] judgment" and is reviewed "only for an abuse of discretion."  *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012); *Whitely v. Moravec*, 635 F.3d 308, 311 (7th Cir. 2011) (emphasizing our discretion under the statute to relinquish or exercise supplemental jurisdiction).  In deciding whether to exercise

---

[4] Judge Denlow retired at the end of 2012.  Magistrate Judge Daniel G. Martin is now assigned to this MDL to handle discovery disputes and settlement negotiations.  (Dkt. No. 5107.)

supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619 (1988); *see also City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, 118 S. Ct. 523, 534 (1997); *Kennedy*, 140 F.3d at 727–28.

Generally speaking, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994); *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008); *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). Under such circumstances, the balancing of "judicial economy, convenience, fairness and comity . . . will point to declining to exercise [supplemental] jurisdiction." *Wright*, 29 F.3d at 1252; *see Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (explaining that, in that event, "the economies from retaining jurisdiction . . . will be slight"). This general presumption arises because "a[t] that point, respect for the state's interest in applying its own law, along with the state's greater expertise in applying state law, become paramount concerns." *Kennedy*, 140 F.3d at 728 (citing *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989)); *RWJ Mgmt Co., Inc.*, 672 F.3d at 479 (noting the concern over "federal intrusion into areas of purely state law").

Nonetheless, "[t]he presumption is rebuttable." *RWJ Mgmt Co., Inc.*, 672 F.3d at 479; *Williams Elecs. Games, Inc.*, 479 F.3d at 907. The Seventh Circuit has articulated three specific exceptions to this general presumption. *Wright*, 29 F.3d at 1251–52; *see Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008); *Williams*, 509 F.3d at 404. The presumption may be overcome,

and pendent jurisdiction appropriately retained, if "any of the following three circumstances exist: (1) the state law claims may not be re-filed because a statute of limitations has expired, (2) substantial judicial resources have been expended on the state claims, or (3) it is clearly apparent how the state claims are to be decided." *Dargis*, 526 F.3d at 990; *Williams*, 509 F.3d at 404.

## ANALYSIS

### A. Supplemental Jurisdiction

As a preliminary matter, the parties do not dispute that we have supplemental jurisdiction over the third-party action. Indeed, we find that the third-party action is unquestionably related to the claims raised in the MDL actions such "that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *see Gibbs*, 383 U.S. at 72, 86 S. Ct. at 1138. For example, the FATPC alleges that Third-Party Defendants contracted to close loans for Ameriquest and, in so doing, agreed (but failed) to follow Ameriquest's instructions about the delivery to borrower-plaintiffs of the Notice of Right to Cancel forms ("NORTCs") required by TILA. (*See, e.g.*, FATPC ¶ 14; *see id.* ¶ 26.) Aside from the parties' disputes about the terms of any alleged contracts and the details of the alleged negligent misrepresentations, the third-party claims plainly "derive from a common nucleus of operative facts" shared with the claims stemming from the allegedly botched closings at issue in MDL. *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quoting *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)); *Gibbs*, 383 U.S. at 72, 86 S. Ct. at 1138. According to the FATPC, for example, if the borrower-plaintiffs did not sign or receive copies of their NORTCs or other materials, as alleged in the MDL, Third-Party Defendants bear responsibility for those failings. (*See, e.g.,*

FATPC ¶¶ 13, 25, 27–28, 47, 49–50.)

The question before us, then, is not whether we have supplemental jurisdiction over the third-party action—we do—but whether we should continue to exercise it over third-party claims lacking a federal element.[5] Third-Party Defendants contend that the general presumption in favor of dismissal, pursuant to § 1367©, applies under these circumstances. (Mem. at 7–11.) Moreover, they argue that none of the three exceptions to that general presumption warrant our further exercise of supplemental jurisdiction. (*Id.*)

While we recognize that the three exceptions do not apply neatly here,[6] we nonetheless conclude that the general presumption does not bind us. For starters, we find that the purpose of the presumption has little relevance to this case, with its somewhat unique procedural posture. The general presumption arises because, once the federal claims dissipate, we defer to the states to interpret their laws and to resolve state-law matters on their merits. *Kennedy*, 140 F.3d at 728; *Wright*, 29 F.3d at 1251–52. In the context of this MDL, however, our goal here is not the ultimate resolution of state-law claims on their merits. We focus on pretrial matters. *See* 28 U.S.C. § 1407(a) (authorizing transfer "for coordinated or consolidated pretrial proceedings"). As a transferee court—particularly a transferee court disinclined to entertain case-specific

---

[5] Of course, we have original jurisdiction over all cases where underlying federal claims remain.

[6] The first (statute of limitations) and third (obvious resolution to state claims) exceptions do not apply on the facts before us. The second exception supports exercising supplemental jurisdiction where "substantial judicial resources have been expended on the state claims." *Dargis*, 526 F.3d at 990; *Williams*, 509 F.3d at 404. Though not necessary to today's ruling, we add that judicial resources have been expended on the state claims, to the extent appropriate in this MDL to date. Through the MDL, we have become familiar with the history of the parties, their claims, their discovery disputes, and their settlement negotiations, and this institutional knowledge does not lack value.

-7-

motions—we may never reach the merits of the state-law claims present in the third-party cases. Because comity is not yet a paramount concern given the status of the MDL, *Kennedy*, 140 F.3d at 728, the presumption in favor of dismissal lacks its usual grip.

More importantly, the presumption is just that. It is not a rule, and it is not applicable in every case. *Williams Elecs. Games, Inc.*, 479 F.3d at 907; *Timm v. Mead Corp.*, 32 F.3d 273, 277(7th Cir. 1994); *see also CropLife Am., Inc. v. City of Madison*, 432 F.3d 732, 734 ("[R]elinquishment in such circumstances is not mandatory."). Our "[d]iscretion to remand implies a power to retain jurisdiction for good reasons." *Whitely*, 635 F.3d at 311; *see* 28 U.S.C. § 1367© (stating that we "may decline to exercise supplemental jurisdiction" in such cases but not mandating that result). "So long as an arguable balance of the above mentioned factors [of judicial economy, convenience, fairness, and comity] points in the direction of the district court's discretionary determination whether or not to exercise jurisdiction, that decision, being discretionary, will not be disturbed." *Timm*, 32 F.3d at 277; *City of Chi.*, 522 U.S. at 173, 118 S. Ct. at 534; *Kennedy*, 140 F.3d at 727–28. Supplemental jurisdiction thus "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ.*, 484 U.S. at 350, 108 S. Ct. at 619; *City of Chi.*, 522 U.S. at 173, 118 S. Ct. at 534; *see also* Charles A. Wright & Arthur Miller, 13D *Federal Practice & Procedure* § 3567.3 (3d ed. 2008).

Here, we find "good reasons" to retain supplemental jurisdiction over the third-party action. *Whitely*, 635 F.3d at 311. As practical matter, we have original jurisdiction over quite a few of these claims. It makes little sense to relinquish one set of the third-party cases (those without federal claims), while keeping the others. The MDL may prove useful in all of these

cases due to their common elements, regardless of whether the underlying claims have been resolved. In other words, the similarity or dissimilarity of the third-party cases, so far as we can tell at this time, does not turn superficially on whether Ameriquest previously settled with the borrower-plaintiffs.

Most importantly, judicial economy and convenience to the parties favor retaining jurisdiction over the third-party claims in the MDL, at least for now. Despite Third-Party Defendants' insistence, we perceive the need for common discovery in this MDL. As we indicated in our July 26, 2012 order accepting the *Terry* case as related, the MDL exists to "make the most of coordinated discovery . . . relevant to the similar claims in the MDL . . . into the practices of the third-party defendants, including their interpretations of the indemnity language." (7/26/12 Order at 2.) Third-Party Defendants have objected to Ameriquest's attempts at common discovery, but that opposition does not affect our analysis. Indeed, we are in a much better position to evaluate the necessity and scope of any broader, non-case-specific discovery than a transferor or state court. Moreover, common discovery need not be common to every claim and every Third-Party Defendant to be worthwhile. Conducting discovery within the MDL on topics shared among even a meaningful subset of Third-Party Defendants furthers economy, convenience, consistency, and fairness.

Relatedly, to the extent that the parties can assert common claims or defenses on the third-party action on the whole, or in useful subgroups, "only one judge need address" those arguments. (*Id.*) Our handling of any common issues will also promote efficiency, economy, fairness, and consistency. To put it bluntly, these cases are part of the MDL, and they should remain here until we are confident that we have exhausted its utility. As Third-Party Defendants

suggest, that day may not be far off. But as discussed earlier, we are not at the point in this particular MDL where comity overrides the potential for economy and efficiency.

While our decision to exercise jurisdiction over the third-party claims will ensure efficiency, consistency, and economy, Third-Party Defendants argue that further detaining them here is unfair. As Third-Party Defendants point out, they have not yet had an opportunity to assert individualized defenses to the FATPC. Mediation has concluded unsuccessfully, and these remaining third-party claims must be litigated. Once the litigation phase begins in earnest, Third-Party Defendants will be permitted to raise individual defenses and file individual motions—whether here or elsewhere. The most prudent course at this juncture, however, is for the parties to maximize the MDL over the next few months to conduct common discovery and raise any truly global dispositive issues, if any can be asserted.

As discussed above, we exercise our discretion to retain supplemental jurisdiction over the third-party claims that no longer have an underlying federal component. Based on our assessment of the issues and the status of the MDL, holding on to these claims for further pretrial proceedings "most sensibly accommodates [the] range of concerns and values" posed by the circumstances. *Carnegie-Mellon Univ.*, 484 U.S. at 350, 108 S. Ct. at 619; *City of Chi.*, 522 U.S. at 173, 118 S. Ct. at 534.

### B. Suggestion of Remand

For identical reasons, we also deny Third-Party Defendants' request for a suggestion of remand as to the third-party cases with remaining federal claims. As we have explained elsewhere, the "power to remand a case to the transferor lies solely" with the Panel. *In re Bridgestone/Firestone, Inc., ATX, ATX II, and Wilderness Tires Prods. Liab. Litig.*, 128 F. Supp.

2d 1196, 1197 (S.D. Ind. 2001); *see, e.g.*, *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, No. 05 C 7097, 2010 WL 1418399, at *1 (N.D. Ill. Apr. 6, 2010). The Panel, however, gives great weight to the suggestion of a transferee judge that remand is warranted, "an indication that he perceives his role under Section 1407 to have ended." *In re Holiday Magic Sec. and Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977) (citing *In re Air Crash Disaster Near Dayton, Ohio*, 386 F. Supp. 908, 909 (J.P.M.L. 1975)); *see In re Managed Care Litig.*, 416 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006). "Remand is inappropriate . . . when continued consolidation will 'eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.'" *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 668 (S.D. Tex. 2005) (citing *In re Heritage Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002) (internal citation omitted)). Consistent with these principles, a suggestion of remand would be appropriate where only case-specific discovery remains. *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d at 1198.

Supplemental jurisdiction and the maintenance of an MDL are guided by the same considerations: judicial economy, convenience, and fairness. *See Gibbs*, 383 U.S. at 726, 86 S. Ct. at 1139; *Wright*, 29 F.3d at 1251; *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 688 (S.D. Tex. 2005); *see also* 28 U.S.C. § 1407(a) (stating that the MDL "proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"). Although the time for a suggestion of remand on the third-party action draws closer, the MDL continues to serve these purposes. As discussed above, and to further these purposes, we will not relinquish the third-party action until all common discovery and (if any) motion practice are resolved.

To that end, the parties should confer as to what specific discovery remains and are to conclude non-case-specific discovery by January 31, 2014. Discovery disputes should be presented to Magistrate Judge Martin and he is authorized to resolve any such discovery disputes and adjust the parties' timetable if necessary. Once the foregoing process is complete, we will revisit Third-Party Defendants' request for a suggestion of remand to the Panel. If we are confident at that time that the MDL no longer serves its purposes, a suggestion of remand will follow with respect to the entire third-party action.

## CONCLUSION

For the reasons set forth above, we deny Third-Party Defendants' motion and exercise our discretion to retain supplemental jurisdiction over the claims asserted in the FATPC. The parties are to cooperate fully to expeditiously complete outstanding common discovery. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: September 3, 2013