**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION <br><br> _____ <br><br> THIS DOCUMENT RELATES TO ALL ACTIONS | MDL No. 1715 <br><br> Lead Case No. 05-cv-07097 <br><br> (Centralized before The Honorable Marvin E. Aspen) <br><br> Magistrate Judge Daniel G. Martin |

**STATUS REPORT OF THE AMERIQUEST DEFENDANTS FOR FEBRUARY 20, 2014
STATUS CONFERENCE BEFORE MAGISTRATE JUDGE DANIEL G. MARTIN**

The Ameriquest Defendants respectfully submit the following Status Report in connection with the status conference scheduled to take place on February 20, 2014 at 10:00 a.m. before Magistrate Judge Daniel G. Martin.

The status report will address the pending issues in the following order:

1. Status of opt-out plaintiffs' cases against the Ameriquest Defendants;

2. Status of mediation with opt-out plaintiffs' and third-party defendants; and

3. Status of discovery regarding third-party claims.

I. **STATUS OF OPT-OUT PLAINTIFFS' CASES**

A. **Cases Dismissed or Dismissal Pending Since Last Status Hearing:** **6 opt-out cases** (involving **8 opt-out plaintiffs**) have been dismissed or dismissals will soon be filed since the last status hearing.

B. **Remaining Cases:** **28 opt-out cases** (involving **46 opt-out plaintiffs**) remain. Below is a breakdown of the remaining cases.

C. **Cases Where Settlement Agreements Have Been Or Shortly Will Be Circulated:** there are **8 opt-out** cases involving **11 opt-out plaintiffs** where settlement agreements have been or shortly will be circulated for signature.

1

D.  **Cases Where Settlement Negotiations Are In Progress:** there are **10 opt-out cases** involving **17 opt-out plaintiffs** where settlement negotiations are in progress. These are often cases where opt-out plaintiffs are seeking loan modifications, deeds in lieu, or consent foreclosures from the loan servicers and the loan servicers are either waiting for additional documentation from opt-out plaintiffs or are in the process of reviewing opt-out plaintiffs' requests.

E.  **Active Cases:** The Ameriquest Defendants are engaged in discovery with respect to the remaining cases.

II. **STATUS OF MEDIATION WITH OPT-OUT PLAINTIFFS AND THIRD-PARTY DEFENDANTS**

A.  **Brooks Firm Mediation:** on February 13, 2014, the Ameirquest Defendants and Lloyd Brooks, counsel for a number of opt-out plaintiffs, attended mediation before Judge Donald O'Connell (ret.). Through the mediation the parties were able to reach settlement on **5 opt-out** cases involving **7 opt-out plaintiffs**. Furthermore, settlement negotiations are continuing with respect to **1 opt-out case** involving **2 opt-out plaintiffs**.

B.  **Superior Third-Party Defendants:** the Ameriquest Defendants and Superior Third-Party Defendants (approx. 10 different corporate entities with third-party claims involving approximately **91 loans** in 9 states) tentatively agreed to participate in mediation on February 26, 2014 before Judge O'Connell. The mediation has since been continued but the parties are working towards rescheduling.

III. **STATUS OF DISCOVERY REGARDING THIRD-PARTY CLAIMS**

Third-Party Plaintiffs request a 90-day extension of the current discovery deadline because of the breadth of discovery at issue with third-party claims involving **407 loans**. Most of the Third-Party Defendants have agreed to the extension of the discovery deadline including, *Superior Third-Party Defendants* (approx. 10 different corporate entities) with claims involving approximately **91 loans** in 9 states, *Mortgage Information Services, Inc. Defendants* with claims involve approximately **70 loans** in 11 states, and the *Einbinder Third-Party Defendants* (5

different parties) with claims involving **6 loans.**[1] The exception is the *Fidelity Entities Third-Party Defendants* (approx. 14 different corporate entities) with claims involving approximately **253 loans** for properties located in 21 states who despite not being finished with document production and still working on providing revised discovery responses are only agreeable to an unworkable limited extension.

### A. Overview of Issues Regarding the Fidelity Entities' Discovery Responses

The Fidelity Entities have no basis to object to the requested extension and their objection is an attempt to run-out-the-clock on discovery while dragging their feet on providing responsive information and documents. On August 2012, Third-Party Plaintiffs propounded its first set of interrogatories and requests for production. The Fidelity Entities merely objected and refused to respond based on the contention that discovery is stayed in the MDL. On September 2013, Judge Aspen overruled the Fidelity Entities' contention that discovery was stayed and ordered the Fidelity Entities to participate in discovery. [Dkt. 5346]. Third-Party Plaintiffs propounded a second set of discovery requests in November 2013. For both the first and second sets of discovery, the Fidelity Entities have repeatedly stated a need to delay substantively responding to discovery because of the breadth of the discovery issues and problems they are having identifying knowledgeable witnesses and locating documents. The discovery requests information about the Fidelity Entities' practices for 32 combinations of states and Fidelity brands. So far, the Fidelity Entities have delayed providing substantive responses for many of the discovery requests for about six months since Judge Aspen overruled their objections and to date, they are still unable to provide a date certain by which they will be able to confirm they have concluded their investigation so that they can substantively respond or state that they are unable to determine the information.

---

[1] The *Einbinder Third-Party Defendants* stipulated to an extension to March 31, 2014 [Dkt. 5420] which was entered by the Court [Dkt. 5424].

15720424.2

Third-Party Plaintiffs claim that the Fidelity Entities issued blanket closing protection letters which covered multiple loan transactions closed by the Fidelity Entities and/or their authorized agents. The Fidelity Entities common defense is that unless Third-Party Plaintiffs were provided with a closing protection letter that references a specific transaction they have no indemnification obligations and that their standard closing protection letters do not cover multiple transactions. Accordingly, Third-Party Plaintiffs propounded discovery against the Fidelity Entities on topics relating to their practices for the issuance of blanket closing protection letters.

In August 2012 Ameriquest propounded two interrogatories on the Fidelity Entities seeking the identification by Bates number(s) of each form of Blanket Closing Protection Letters used by the Fidelity Entities in relevant states (rog. no. 1); and a description of how the Fidelity Entities would issue Blanket Closing Protection Letters in the relevant states (rog. no. 2). These first two interrogatories which go to the heart of the Fidelity Entities' defenses have yet to be fully substantively responded to by the Fidelity Entities. The Fidelity Entities' counsel has repeatedly stated that they would be providing supplemental responses in lieu of their rote objections but they needed additional time because of the breadth of information requested. Prior timelines by which they were to fully respond have not been met but the Fidelity Entities' counsel has reported having significant problems finding witnesses and documents necessary to substantively respond. While the Fidelity Entities have stated that they will be providing supplemental responses to some of the discovery by the end of February/early March, Ameriquest does not know whether that will include full responses to these outstanding interrogatories.

In November 2013, Ameriquest propounded a second set of interrogatories requesting that the Fidelity Entities describe their systems for generating and maintaining closing protection letters (rog. no. 14); and identifying persons responsible for establishing policies or procedures for determining whether or not a closing protection letter relates to a single-transaction or multiple transaction (rog. 2). The Fidelity Entities responded with rote objections but agreed to

provide a supplemental response to these and other interrogatories by the end of February/early March. If they are not able to find the information needed to fully respond, they have also agreed to state that in their response. The Fidelity Entities have also stated that they expect to be producing additional documents.

The Fidelity Entities also state they need more time to inform Third-Party Plaintiffs whether they will rely on their objections and refuse to respond to certain discovery or substantively respond. A motion to compel will be filed as soon as the issues in dispute are confirmed.

Once the Fidelity Entities conclude their investigation and substantively respond to the discovery and finally identify witnesses to its defenses, Third-Party Plaintiffs expect that multiple depositions around the nation will be necessary and likely additional written discovery to determine other Fidelity Entities' defenses that remain.

B. **The Fidelity Entities' Refusal To Agree To a General Extension**

Third-Party Plaintiffs have met and conferred with the Fidelity Entities in an effort to come to an agreement on an extension for discovery. However, the Fidelity Entities have said they will only agree to an extension to allow the Third-Party Plaintiffs to follow-up on discovery responses that Third-Party Plaintiffs have already served and for a limited period, less than 60 days after they finally identify their first witness. This limited extension would jam the Third-Party Defendants with the sole purpose of giving Fidelity a strategic advantage caused by its own five-month delay. Third-Party Plaintiffs need the 90-day extension in order to be able to propound additional discovery and take depositions in order to follow-up to the prior discovery and be able to ensure that it has obtained discovery on all of Fidelity's common defenses. Once the preliminary set of discovery responses is received, Third-Party Plaintiffs intend to depose a 30(b)(6) witness on Third-Party Plaintiffs various common defenses. Witnesses often reveal other documents, information, other witnesses, and other sources of information that were not previously provided requiring that additional requests for production be served.

A 90-day extension is a conservative estimate of the amount of time necessary and roughly corresponds to the next status conference before Judge Aspen.

                                                  Respectfully submitted,

Dated: February 18, 2014       By: /s/ Joanne N. Davies
                                                *Attorneys for the Ameriquest Defendants*

                                                Joanne N. Davies
                                                BUCHALTER NEMER,
                                                A Professional Corporation
                                                18400 Von Karman Avenue, Suite 800
                                                Irvine, CA 92612
                                                Telephone: (949) 760-1121
                                                Facsimile: (949) 720-0182

                                                Randall L. Manvitz, Esq.
                                                Telephone: (415) 227-3644
                                                Facsimile: (415) 227-0700

15720424.2

## CERTIFICATE OF SERVICE

I, Joanne N. Davies, hereby certify that on this 18th day of February 2014, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Joanne N. Davies

15720424.2