**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION<br>_____<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen)<br><br>Magistrate Judge Daniel G. Martin |

**SUPPLEMENTAL STATUS REPORT OF THE AMERIQUEST DEFENDANTS FOR MAY 29, 2014 STATUS CONFERENCE BEFORE THE HONORABLE MARVIN E. ASPEN**

The Ameriquest Defendants respectfully submit the following Supplemental Status Report in response to the Status Report of the Fidelity Third-Party Defendants [Dkt. 5462] in connection with the status conference scheduled to take place on May 29, 2014 at 11:00 a.m. before the Honorable Marvin E. Aspen and pursuant to this Court's Order of January 13, 2014 [Dkt. 5427].

**I.  STATUS OF DISCOVERY WITH FIDELITY**

The Fidelity Third-Party Defendants' request for the termination of discovery should be denied for three reasons.

**A.  Fidelity Recently Responded To Discovery Pending Since Summer 2012 Disclosing Spoliation Of All Core Documents**

*First,* Fidelity's request to terminate discovery is a thinly-veiled ruse to try to run out the clock on discovery into its closing protection letter practices while at the same time, apparently destroying the closing protection letter documents it fought to hide.

By way of background, the closing protection letters are indemnity agreements that Fidelity issued to indemnify Third-Party Plaintiffs for losses arising from the loan closings by Fidelity's title company agents. *See Terry v. Ameriquest*, 08CV02475 ("*Terry*"), Dkt. 731. Third-Party Plaintiffs contend that Fidelity issued blanket closing protection letters meaning that

one letter applied to future transactions instead of a single transaction. Fidelity has typically argued that its letters only cover a single transaction but Fidelity's position has repeatedly been shown to be unsupported. *See Terry* Dkt. 731, 737, 771, MDL Dkt. 4389. Discovery into Fidelity's closing protection letter practices has long been at issue. In 2009, this Court ordered the parties involved in the third-party claims to exchange any contracts at issue in their possession. Also in 2009, Ameriquest subpoenaed Fidelity's data memorializing the blanket closing protection letters that had been issued. Also, Ameriquest propounded its first set of interrogatories and requests for production in the MDL in August 2012 seeking that information. As the Court previously ruled, one of the central issues for discovery in the MDL is Fidelity's closing protection letter practices and the interpretation of the closing protection letters. Order, *Terry*, Dkt. 782; Order, MDL Dkt. 5346 at 3, 9.

The closing protection letters were typically generated via Fidelity websites which allowed Fidelity through its title agents to complete the form letter with addressee information and sometimes a regarding line. The purpose of the closing protection letter websites was to memorialize closing protection letters that had been issued and allow them to be re-printed if lost or needed to be reproduced. Each closing protection letter that had been issued during the history of the website was maintained as data on a spreadsheet showing the date of issuance and any language added to the form letter such as the addressee ("Closing Protection Letter Database Spreadsheet"). *See* Ex. 1 (sample spreadsheet from Ticor-Illinois), previously attached at MDL *Dkt. 4389-8*. Recreating a closing protection letter should be as simple as reviewing the Closing Protection Letter Database Spreadsheet and the form of closing protection letter used so the initial discovery has focused on obtaining those two foundational types of documents. Fidelity has fought for seven years to try to hide this basic information and only now reports they have been destroyed or lost.

Fidelity has avoided discovery into its closing protection letter practices for years by asserting objection after objection to avoid discovery. First Fidelity filed two motions for protective order. *See Terry v. Ameriquest*, 08CV02475, Dkts. 572, 586, 2/4/10 and 2/19/10

2

16181609v1

(Fidelity and Ticor motions for protective order re: data of closing protections that had been issued). Then Fidelity claimed discovery was stayed in *Terry* because of the MDL and filed another motion for protective order and objected to other discovery requiring a motion to compel. *See Terry* Dkts. 718, 731, 759, 6/27/2011 to 3/8/2012 (Fidelity motion for protective order re: closing protection letters because discovery was purportedly stayed and Ameriquest's motion to compel and Judge Chang order). Then another motion to compel was required to force Fidelity to participate in discovery. See *Terry* Dkts. 771, 774, 781, 6/27/2012 to 7/19/2012 (Ameriquest's motion to compel, Fidelity's opposition, Judge Chang's order).

In *Terry*, Ameriquest obtained for one Fidelity entity (Ticor) and one state (Illinois): (1) the form closing protection letters, and (2) the Closing Protection Letter Database Spreadsheet memorializing how each closing protection letter had been issued from approximately 2003 to 2006. *See e.g.* Ex. 1 (spreadsheet of data from Ticor-Illinois)*; see e.g.,* MDL Dkt. 4389-7 (Ticor-Illinois closing protection letter form). These documents have repeatedly been before the Court to show the Court the nature of the common dispute over the interpretation of the closing protection letters and the roadmap for the same discovery in the MDL on a much broader scale. *See* MDL Dkt. 4389-8.

In the MDL, there are 28 Fidelity subsidiary and state combinations other than the Ticor-Illinois documents obtained in *Terry* so the same core discovery was sought again in the MDL. Fidelity objected that discovery was stayed and refused to substantively respond. MDL Dkts. 5082, 9/17/12 (Ameriquest's motion to overrule Fidelity's objection that discovery stayed). Judge Denlow orally ruled that the parties should raise the issue with Judge Aspen to determine the scope of discovery in the MDL. MDL Dkt. No. 5123-7, 9/20/12, Tr. of Hrg. at 17–18. Four days later, Fidelity tried to avoid having the matter being decided by Judge Aspen by preemptively filing a motion to disband the MDL, claiming that the Court did not have jurisdiction over Third-Party Defendant issues. Dkt. 5101, 9/24/12 (Fidelity motion). The Court overruled Fidelity's "motion to disband the consolidated third-party action" and ruled that the common issues presented by Ameriquest's first set of interrogatories and requests for production

16181609v1

– closing protection letters - should proceed in the MDL.  9/3/13 Order, MDL Dkt.  5346 at p. 3, 9.

Now, Fidelity has tried a different tactic to avoid participating in discovery about its closing protection letter practices and producing the Closing Protection Letter Database Spreadsheets and form closing protection letters which will establish that blanket closing protection letters were issued to Ameriquest.  Fidelity tried to run out the clock by delaying providing its substantive responses to Ameriquest's first set of discovery pending since August 2012 until mid-March 2014.  Since the Court's denial of the motion to disband the third-party consolidated action in September 2013, Fidelity's counsel repeatedly explained that they were working diligently on collecting (1) the spreadsheets of closing protection letter data which memorialize the closing protection letters that had been issued, (2) exemplar closing protection letters for each brand and state at issue, and (3) information on the process for issuance of the letters, typically a web-site specifically for completing the form letters and memorializing their issuance to allow them to be reprinted in the future.  Third-Party Plaintiffs patiently waited because Fidelity's counsel repeatedly stated they needed more time because of the breadth of information at issue.  Finally, on March 10, 2014, Fidelity revealed that it is "**unable to locate**" its Closing Protection Letter Database Spreadsheets for essentially all of the 28 of 29 Fidelity company and state combinations and also are unable to locate a single example of a closing protection letter for most states and brands although they were utilized for practically every loan closing for years.  Ex. 2 (Response to Ameriquest Interrogatory Set One, No. 2.)

While Fidelity has been fighting tooth and nail to avoid discovery into the spoliated records in *Terry* and the MDL, the documents were apparently being destroyed.  This has serious implications for this litigation and will require a significant amount of follow-up discovery concerning spoliation.  Third-Party Plaintiffs need time for follow-up discovery such as depositions and written discovery to determine what happened to the spoliated documents and when, document preservation efforts, the existence of back-up data, and searches for the documents.  Ameriquest has requested that Fidelity identify a date and location for a 30(b)(6)

deposition and an explanation concerning what happened to the Closing Protection Letter Database Spreadsheets and form closing protection letters. No response has been received. Additionally, if all of the information concerning closing protection letters has been destroyed, follow-up discovery is necessary to obtain testimony about the form of the destroyed closing protection letters from Fidelity employees who should have knowledge about these forms that they used in their normal course of business.

Additionally, on March 10, 2014, Fidelity finally disclosed 43 names of persons who provided information in response to the interrogatories about Fidelity's blanket closing protection letter practices and a short statement of its blanket closing protection letter practices for 28 states and brands although much of the requested information is missing. Ex. 3. Follow-up discovery and potentially motion practice will be necessary to determine the necessary details avoided in Fidelity's responses to Ameriquest's two sets of interrogatories and requests for production. Thereafter, at least some of the 43 witnesses will need to be deposed along with others who appear to have more knowledge but were not identified.

### B. Fidelity Just Propounded Huge Quantities Of Discovery To Ameriquest And Ameriquest Should Be Given The Same Consideration Of Time

*Second,* an extension of the discovery cut-off is also necessary because Fidelity just propounded extremely broad interrogatories and requests for production on Third-Party Plaintiffs concerning 291 cases and every title agent. See Ex. 4. Fidelity took twenty months to respond to Ameriquest's requests including seven after the Court overruled Fidelity's objections. Third-Party Plaintiffs should be granted the consideration of a similar time frame to respond.

### C. Status Of Discovery With Third-Party Defendants Other Than Fidelity

*Third,* Third-Party Defendants other than Fidelity agree that an extension of discovery is necessary. The two next largest Third-Party Defendants by number of loans have agreed to an extension of the cut-off. Discovery from Mortgage Information Services ("MIS") with 70 loans in 11 states was delayed because its counsel suffered from a serious medical issue and needed to take some time off. Also, MIS just located a large number of documents it intended to produce

5

16181609v1

years ago and produced over 3,000 pages on April 24, 2014. It still needs to respond to interrogatories and document requests pending since November 2013 but their counsel has needed some time to recover from his medical condition and gather information. Once MIS responds, follow-up depositions are necessary as well as presumably follow-up discovery. MIS has agreed to a reasonable extension of the discovery cut-off and wants to wait until Third-Party Plaintiffs have been able to review its latest responses to determine a reasonable amount of time.

Superior Closing Services with 91 loans in 9 states also wants a reasonable extension of the discovery cut-off. The parties have been trying to schedule mediation for the last few months but mediation has been hindered by an adjustor being called to military duty overseas and now a new adjustor has been assigned to the case. The parties recently agreed to a mediation date of June 25, 2014 before the Honorable Donald P. O'Connell (ret.). The parties have agreed to hold off on further discovery until mediation occurs.

## II. CONCLUSION

Third-Party Plaintiffs respectfully request that this Court continue to allow third-party discovery to proceed in the MDL under the supervision of Magistrate Judge Daniel Martin and deny the Fidelity Third-Party Defendants' request to terminate discovery.

Respectfully submitted,

Dated: April 29, 2014

By: /s/ Joanne N. Davies
*Attorneys for the Ameriquest Defendants*

Joanne N. Davies
BUCHALTER NEMER,
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
Telephone: (949) 760-1121
Facsimile: (949) 720-0182

Randall L. Manvitz, Esq.
Telephone: (415) 227-3644
Facsimile: (415) 227-0700

6

16181609v1

**CERTIFICATE OF SERVICE**

I, Joanne N. Davies, hereby certify that on this 29th day of April 2014, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Joanne N. Davies

16181609v1